UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED   *   MDL No. 2047
DRYWALL PRODUCTS LIABILITY    *
LITIGATION                    *
                              *
THIS DOCUMENT RELATES TO:     *   JUDGE FALLON
                              *
ALL CASES                     *
                              *   MAGISTRATE WILKINSON

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

DALE F. CLOUTIER

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for Cloutier Brothers, Inc., ("Cloutier Brothers"), and as such, has personal knowledge of the following based on his review of records maintained by Cloutier Brothers in the regular course of business.

2. Cloutier Brothers is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Palm Beach County, Florida.

3. Cloutier Brothers is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.


EXHIBIT "A"

Case 2:09-md-02047-EEF-MBN   Document 11039-5   Filed 11/02/11   Page 2 of 14

Sep 13 11 02:57p    CLOUTIER BROTHERS, INC.                    561-790-1575          p.2
SEP-08-11 THU 03:39 PM   KREBS FARLEY & PELLETERI    FAX NO. 5042983582              P. 04

4. Cloutier Brothers has never built a residence in the State of Louisiana nor had any contracts or subcontracts with companies located in Louisiana.

5. Cloutier Brothers has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Cloutier Brothers does not have an agent for service of process in Louisiana.

7. Cloutier Brothers does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Cloutier Brothers does not solicit business in Louisiana or ever transacted business in Louisiana.

9. Cloutier Brothers has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Cloutier Brothers does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Cloutier Brothers has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Cloutier Brothers never anticipated it would be haled into court in Louisiana.

_____   _____
                                DALE F. CLOUTIER

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 13 DAY OF SEPTEMBER, 2011.

_____
NOTARY PUBLIC
Daniel Fumero

DANIEL A. FUMERO
MY COMMISSION # DD 809277
EXPIRES: August 31, 2012
Bonded Thru Notary Public Underwriters

2

## Residential Sale and Purchase Contract
FLORIDA ASSOCIATION OF REALTORS®

**1. SALE AND PURCHASE:** Donna R Lang____ LLC _____ ("Seller")
and _Philomena ?  Balance  Baker C._____ ("Buyer")
agree to sell and buy on the terms and conditions specified below the property described as:
Address: _____ S.W. ____ Newton St _____
Port St Lucie  FL ____ 34953 _____ County: St Lucie
Legal Description: Port St Lucie Section 32B - SWS 2247 Lot 7
(Block) _____ Tax ID No: _____
together with all existing improvements and attached items, including fixtures, built-in furnishings, major appliances (including but not limited to range(s), refrigerator(s), dishwasher(s), washer(s), and dryer(s), __ (#) ceiling fans (if left blank, all ceiling fans), light fixtures, attached wall-to-wall carpeting, rods, draperies and other window treatments as of Effective Date. The only other items included in the purchase are: _____

The following attached items are excluded from the purchase: ___ see attached _____

The real and personal property described above as included in the purchase is referred to as the "Property." Personal property listed in this Contract is included in the purchase price, has no contributory value and is being left for Seller's convenience.

### PRICE AND FINANCING

**2. PURCHASE PRICE:**  $ 205,500 _____ payable by Buyer in U.S. currency as follows:
(a) $ 1000 _____ Deposit received (checks are subject to clearance) on _____
    _____ for delivery to _____ ("Escrow Agent")
          Signature                              Name of Company
    (Address of Escrow Agent) _____
    (Phone # of Escrow Agent) _____
(b) $ 9000 _____ Additional deposit to be delivered to Escrow Agent by __12/3/07__
                 or ___ days from Effective Date. (10 days if left blank)
(c) $ 195,000 __ Total financing (see Paragraph 3 below) (express as a dollar amount or percentage)
(d) $ _____  Other: _____
(e) $ 35,500 __  Balance to close (not including Buyer's closing costs, prepaid liens and prorations). All funds paid at closing must be paid by locally drawn cashier's check, official bank check, or wired funds.

**3. FINANCING:** (Check as applicable) ☐ (a) Buyer will pay cash for the Property with no financing contingency.
☐ (b) Buyer will apply for new ☐ conventional ☐ FHA ☐ VA financing specified in paragraph 2(c) at the prevailing interest rate and loan costs based on Buyer's creditworthiness (the "Financing") within ___ days from Effective Date (5 days if left blank) and provide Seller with either a written Financing commitment or approval letter ("Commitment") or written notice that Buyer is unable to obtain a Commitment within ___ days from Effective Date the earlier of 30 days after the Effective Date or 5 days prior to Closing Date if left blank ("Commitment Period"). Buyer will keep Seller and Broker fully informed about loan application status, progress and Commitment issues and authorizes the mortgage broker and lender to disclose all such information to Seller and Broker. If, after using diligence and good faith, Buyer is unable to provide the Commitment and provides Seller with written notice that Buyer is unable to obtain a Commitment within the Commitment Period, either party may cancel this Contract and Buyer's deposit will be refunded. Buyer's failure to provide Seller with written notice that Buyer is unable to obtain a Commitment within the Commitment Period will result in forfeiture of Buyer's deposit. Once Buyer provides the Commitment to Seller, the financing contingency is waived and Seller will be entitled to retain the deposits if the transaction does not close by the Closing Date unless (1) the Property appraises below the purchase price and either the parties cannot agree on a new purchase price or Buyer elects not to proceed, (2) the property related conditions of the Commitment have not been met (except when such conditions are waived by other provisions of this Contract); or (3) another provision of this Contract provides for cancellation.

### CLOSING

**4. CLOSING DATE; OCCUPANCY:** Unless the Closing Date is specifically extended by the Buyer and Seller or by any other provision in this Contract, the Closing Date shall prevail over all other time periods including, but not limited to, inspection and financing periods. This Contract will be closed on __1/31/14__, 200__ ("Closing Date") at the time established by the closing agent, by which time Seller will (a) have removed all personal items and trash from the Property and swept the Property clean and (b) deliver the deed, occupancy and possession, along with all keys, garage door openers and access codes, to Buyer. If on Closing Date insurance underwriting is suspended, Buyer may postpone closing up to 5 days after the insurance suspension is lifted. If this transaction does not close for any reason, Buyer will immediately return all Seller-provided title evidence, surveys, association documents and other items.

Buyer (__) (__) and Seller (DC) (__) acknowledge receipt of a copy of this page, which is Page 1 of 5 Pages.
PNR-0  4/07   ©2006  Florida Association of Realtors®   All Rights Reserved

55  **5. CLOSING PROCEDURE; COSTS:** Closing will take place in the county where the Property is located and may be conducted by
56  mail or electronic means. If title insurance insures Buyer for title defects arising between the title binder effective date and recording
57  of Buyer's deed, closing agent will disburse at closing the net sale proceeds to Seller and brokerage fees to Broker as per
58  Paragraph 19. In addition to other expenses provided in this Contract, Seller and Buyer will pay the costs indicated below.
59  (a) Seller Costs:
60  Taxes and surtaxes on the deed
61  Recording fees for documents needed to cure title
62* Other: _____
63* Seller will pay up to $____0____ or __0__% (1.5% if left blank) of the purchase price for repairs to warranted items ("Repair
64* Limit"); and up to $____0____ or __0__% (1.5% if left blank) of the purchase price for wood-destroying organism treatment
65* and repairs ("WDO Repair Limit"); and up to $____0____ or __0__% (1.5% if left blank) of the purchase price for costs
66  associated with closing out open permits and obtaining required permits for unpermitted existing improvements ("Permit Limit").
67  (b) Buyer Costs:
68  Taxes and recording fees on notes and mortgages
69  Recording fees on the deed and financing statements
70  Loan expenses
71  Lender's title policy
72  Inspections
73  Survey
74  Flood insurance, homeowner insurance, hazard insurance
75* Other: _____
76  (c) Title Evidence and Insurance: Check (1) or (2):
77* ☒(1) The title evidence will be a Paragraph 10(a)(1) owner's title insurance commitment. ☒ Seller will select the title agent
78* and will pay for the owner's title policy, search, examination and related charges or ☐ Buyer will select the title agent and pay
79* for the owner's title policy, search, examination and related charges or ☐ Buyer will select the title agent and Seller will pay
80  for the owner's title policy, search, examination and related charges.
81* ☐ (2) Seller will provide an abstract as specified in Paragraph 10(a)(2) as title evidence. ☐ Seller ☐ Buyer will pay for the
82  owner's title policy and select the title agent. Seller will pay fees for title searches prior to closing, including tax search and
83  lien search fees, and Buyer will pay fees for title searches after closing (if any), title examination fees and closing fees.
84  (d) Prorations: The following items will be made current (if applicable) and prorated as of the day before Closing Date: real
85  estate taxes, interest, bonds, assessments, association fees, insurance, rents and other current expenses and revenues of the
86  Property. If taxes and assessments for the current year cannot be determined, taxes shall be prorated on the basis of taxes for
87  the preceding year as of the day before Closing Date and shall be computed and readjusted when the current taxes are
88  determined with adjustment for exemptions and improvements. If there are completed improvements on the Property by
89  January 1 of the year of the Closing Date, which improvements were not in existence on January 1 of the prior year, taxes shall
90  be prorated based on the prior year's millage and at an equitable assessment to be agreed upon by the parties prior to Closing
91  Date, failing which, request will be made to the County Property Appraiser for an informal assessment taking into consideration
92  available exemptions. If the County Property Appraiser is unable or unwilling to perform an informal assessment prior to Closing
93  Date, Buyer and Seller will split the cost of a private appraiser to perform an assessment prior to Closing Date. Nothing in this
94  paragraph shall act to extend the Closing Date. This provision shall survive closing.
95  (e) Special Assessment by Public Body: Regarding special assessments imposed by a public body, Seller will pay (i) the full
96  amount of liens that are certified, confirmed and ratified before closing and (ii) the amount of the last estimate of the assessment
97  if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing, and Buyer will pay
98* all other amounts. If special assessments may be paid in installments ☐ Buyer ☒ Seller (if left blank, Buyer) shall pay
99  installments due after closing. If Seller is checked, Seller will pay the assessment in full prior to or at the time of closing. Public
100 body does not include a Homeowner Association or Condominium Association.
101 (f) Tax Withholding: Buyer and Seller will comply with the Foreign Investment in Real Property Tax Act, which may require
102 Seller to provide additional cash at closing if Seller is a "foreign person" as defined by federal law.
103* (g) Home Warranty: ☐ Buyer ☐ Seller ☒ N/A will pay for a home warranty plan issued by _____ at a
104* cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical
105 systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement period.

106                                              **PROPERTY CONDITION**
107* **6. INSPECTION PERIODS:** Buyer will complete the inspections referenced in Paragraphs 7 and 8(a)(2) by _Nov 30, 2007_
108* _____ (the earlier of 10 days after the Effective Date or 5 days prior to Closing Date if left blank) ("Inspection Period");
109* the wood-destroying organism inspection by _Nov 30_, _2007_ (at least 5 days prior to closing, if left
110  blank); and the walk-through inspection on the day before Closing Date or any other time agreeable to the parties; and the
111* survey referenced in Paragraph 10(c) by _____ (at least 5 days prior to closing if left blank).
112* Buyer (_EB_) (_KE_) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.
FAR-9   4/07  ©2007  Florida Association of Realtors®  All Rights Reserved

Sep 15 10 03:59p    CLOUTIER BROTHERS, INC.                561-790-1575              p.3
2007-11-23 21:19    Realtorori        7728079009 >>    772 343 9603                  P 5/15

113  **7. REAL PROPERTY DISCLOSURES:** Seller represents that Seller does not know of any facts that materially affect the value
114  of the Property, including but not limited to violations of governmental laws, rules and regulations, other than those that Buyer
115  can readily observe or that are known by or have been disclosed to Buyer.
116  (a) **Energy Efficiency:** Buyer acknowledges receipt of the energy-efficiency information brochure required by Section 553.996,
117  Florida Statutes.
118  (b) **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient
119  quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and
120  state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be
121  obtained from your county public health unit. Buyer may, within the Inspection Period, have an appropriately licensed person
122  test the Property for radon. If the radon level exceeds acceptable EPA standards, Seller may choose to reduce the radon
123  level to an acceptable EPA level, failing which either party may cancel this Contract.
124  (c) **Flood Zone:** Buyer is advised to verify by survey, with the lender and with appropriate government agencies which flood
125  zone the Property is in, whether flood insurance is required and what restrictions apply to improving the Property and rebuilding
126  in the event of casualty. If the Property is in a Special Flood Hazard Area or Coastal High Hazard Area and the buildings are built
127  below the minimum flood elevation, Buyer may cancel this Contract by delivering written notice to Seller within 20 days from
128  Effective Date, failing which Buyer accepts the existing elevation of the buildings and zone designation of the Property.
129  (d) **Homeowners' Association:** If membership in a homeowners' association is mandatory, an association disclosure
130  summary is attached and incorporated into this Contract. **BUYER SHOULD NOT SIGN THIS CONTRACT UNTIL**
131  **BUYER HAS RECEIVED AND READ THE DISCLOSURE SUMMARY.**
132  (e) **PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY**
133  **TAXES AS THE AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT**
134  **TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE**
135  **PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING**
136  **VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.**
137  (f) **Mold:** Mold is part of the natural environment that, when accumulated in sufficient quantities, may present health risks to
138  susceptible persons. For more information, contact the county indoor air quality specialist or other appropriate professional.
139  (g) **Coastal Construction Control Line:** If any part of the Property lies seaward of the coastal construction control line as
140  defined in Section 161.053 of the Florida Statutes, Seller shall provide Buyer with an affidavit or survey as required by law
141  delineating the line's location on the Property, unless Buyer waives this requirement in writing. The Property being purchased
142  may be subject to coastal erosion and to federal, state, or local regulations that govern coastal property, including delineation
143  of the coastal construction control line, rigid coastal protection structures, beach nourishment, and the protection of marine
144  turtles. Additional information can be obtained from the Florida Department of Environmental Protection, including whether
145  there are significant erosion conditions associated with the shoreline of the Property being purchased.
146  ☐ Buyer waives the right to receive a CCCL affidavit or survey.

147  **8. MAINTENANCE, INSPECTIONS AND REPAIR:** Seller will keep the Property in the same condition from Effective Date until
148  closing, except for normal wear and tear ("Maintenance Requirement") and repairs required by this Contract. Seller will provide
149  access and utilities for Buyer's inspections. Buyer will repair all damages to the Property resulting from the inspections,
150  return the Property to its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its
151  completion. If Seller is unable to complete required repairs or treatments or meet the Maintenance Requirement prior to
152  closing, Seller will give Buyer a credit at closing for the cost of the repairs and maintenance Seller was obligated to perform. At
153  closing, Seller will assign all assignable repair and treatment contracts to Buyer and provide Buyer with paid receipts for all
154  work done on the Property pursuant to the terms of this Contract. At closing, Seller will provide Buyer with any written
155  documentation that all open permits have been closed out and that Seller has obtained required permits for improvements to
156  the Property.
157  (a) **Warranty, Inspections and Repair:**
158  (1) **Warranty:** Seller warrants that non-leased major appliances and heating, cooling, mechanical, electrical, security,
159  sprinkler, septic and plumbing systems, seawall, dock and pool equipment, if any, are and will be maintained in working
160  condition until closing; that the structures (including roofs, doors and windows) and pool, if any, are structurally sound
161  and watertight; and that torn or missing screens and missing roof tiles will be repaired or replaced. Seller warrants that
162  all open permits will be closed out and that Seller will obtain any required permits for improvements to the Property
163  prior to Closing Date. Seller does not warrant and is not required to repair cosmetic conditions, unless the cosmetic
164  condition resulted from a defect in a warranted item. Seller is not obligated to bring any item into compliance with
165  existing building code regulations unless necessary to repair a warranted item. "Working condition" means operating in
166  the manner in which the item was designed to operate and "cosmetic conditions" means aesthetic imperfections that
167  do not affect the working condition of the item, including pitted marcite; tears, worn spots and discoloration of floor
168  coverings/wallpapers/window treatments; nail holes, scratches, dents, scrapes, chips and caulking in bathroom
169  ceiling/walls/flooring/tile/fixtures/mirrors; cracked roof tiles; curling or worn shingles; and minor cracks in floor
170  tiles/windows/driveways/sidewalks/pool decks/garage and patio floors.
171  (2) **Professional Inspection:** Buyer may, at Buyer's expense, have warranted items inspected by a person who
172  specializes in and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida
173  license to repair and maintain the items inspected ("professional inspector"). Buyer must, within 5 days from the end of the
174  Inspection Period, deliver written notice of any items that are not in the condition warranted and a copy of the portion of

175  Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.
FAR-9  4/07  © 2007  Florida Association of Realtors®  All Rights Reserved

176 inspector's written report dealing with such items to Seller. If Buyer fails to deliver timely written notice, Buyer waives
177 Seller's warranty and accepts the items listed in subparagraph (a) in their "as is" conditions, except that Seller must meet
178 the maintenance requirement.
179 (3) Repair: Seller will obtain repair estimates and is obligated only to make repairs necessary to bring warranted items
180 into the condition warranted, up to the Repair Limit. Seller may, within 5 days from receipt of Buyer's notice of items
181 that are not in the condition warranted, have a second inspection made by a professional inspector and will report
182 repair estimates to Buyer. If the first and second inspection reports differ and the parties cannot resolve the differences,
183 Buyer and Seller together will choose, and equally split the cost of, a third inspector, whose written report will be
184 binding on the parties. If the cost to repair warranted items equals or is less than the Repair Limit, Seller will have the
185 repairs made in a workmanlike manner by an appropriately licensed person. If the cost to repair warranted items
186 exceeds the Repair Limit, either party may cancel this Contract unless either party pays the excess or Buyer
187 designates which repairs to make at a total cost to Seller not exceeding the Repair Limit and accepts the balance of
188 the Property in its "as is" condition.
189 (4) Permits: Seller shall close out any open permits and remedy any violation of any governmental entity, including
190 but not limited to, obtaining any required permits for improvements to the Property, up to the Permit Limit, and with final
191 inspections completed no later than 5 days prior to Closing Date. If final inspections cannot be performed due to delays
192 by the governmental entity, Closing Date shall be extended for up to 10 days to complete such final inspections, failing
193 which, either party may cancel this Contract and Buyer's deposit shall be refunded. If the cost to close out open
194 permits or to remedy any violation of any governmental entity exceeds the Permit Limit, either party may cancel the
195 Contract unless either party pays the excess or Buyer accepts the Property in its "as is" condition and Seller credits
196 Buyer at closing the amount of the Permit Limit.
197 (b) Wood-Destroying Organisms: "Wood-destroying organism" means arthropod or plant life, including termites, powder-post
198 beetles, oldhouse borers and wood-decaying fungi, that damages or infests seasoned wood in a structure, excluding fences.
199 Buyer may, at Buyer's expense, have the Property inspected by a Florida-licensed pest control business to determine the
200 existence of past or present wood-destroying organism infestation and damage caused by infestation. If the inspector finds
201 evidence of infestation or damage, Buyer will deliver a copy of the inspector's written report to Seller within 5 days from the date
202 of the inspection. If Seller previously treated the Property for the type of wood-destroying organisms found, Seller does not have
203 to treat the Property again if (i) there is no visible live infestation, and (ii) Seller transfers to Buyer at closing a current full treatment
204 warranty for the type of wood-destroying organisms found. Otherwise, Seller will have 5 days from receipt of the inspector's
205 report to have reported damage estimated by a licensed building or general contractor and corrective treatment estimated by a
206 licensed pest control business. Seller will have treatments and repairs made by an appropriately licensed person at Seller's
207 expense up to the WDO Repair Limit. If the cost to treat and repair the Property exceeds the WDO Repair Limit, either party may
208 pay the excess, failing which either party may cancel this Contract by written notice to the other. If Buyer fails to timely deliver the
209 inspector's written report, Buyer accepts the Property "as is" with regard to wood-destroying organism infestation and damage,
210 subject to the maintenance requirement.
211 (c) Walk-through Inspection/Reinspection: Buyer, and/or Buyer's representative, may walk through the Property solely
212 to verify that Seller has made repairs required by this Contract, has met the Maintenance Requirement and has met
213 contractual obligations. If Buyer, and/or Buyer's representative, fails to conduct this inspection, Seller's repair obligations
214 and Maintenance Requirement will be deemed fulfilled.

215 9. RISK OF LOSS: If any portion of the Property is damaged by fire or other casualty before closing and can be restored by the
216 Closing Date or within 45 days after the Closing Date to substantially the same condition as it was on Effective Date, Seller,
217 will, at Seller's expense, restore the Property and deliver written notice to Buyer that Seller has completed the restoration, and
218 the parties will close the transaction on the later of: (1) Closing Date; or, (2) 10 days after Buyer's receipt of Seller's notice.
219 Seller will not be obligated to replace trees. If the restoration cannot be completed in time, Buyer may cancel this Contract
220 and Buyer's deposit shall be refunded, or Buyer may accept the Property "as is", and Seller will credit the deductible and
221 assign the insurance proceeds, if any, to Buyer at closing in such amounts as are (i) attributable to the Property and (ii) not yet
222 expended in restoring the Property to the same condition as it was on Effective Date.

223
## TITLE
224 10. TITLE: Seller will convey marketable title to the Property by statutory warranty deed or trustee, personal representative or
225 guardian deed as appropriate to Seller's status.
226 (a) Title Evidence: Title evidence will show legal access to the Property and marketable title of record in Seller in accordance with
227 current title standards adopted by the Florida Bar, subject only to the following title exceptions, none of which prevent residential
228 use of the Property: covenants, easements and restrictions of record; matters of plat; existing zoning and government regulations;
229 oil, gas and mineral rights of record if there is no right of entry; current taxes; mortgages that Buyer will assume; and
230 encumbrances that Seller will discharge at or before closing. Seller will, at least 2 days prior to closing, deliver to Buyer Seller's
231 choice of one of the following types of title evidence, which must be generally accepted in the county where the Property is located
232 (specify in Paragraph 5(c) the selected type). Seller will use option (1) in Palm Beach County and option (2) in Miami-Dade County.
233 (1) A title insurance commitment issued by a Florida-licensed title insurer in the amount of the purchase price and
234 subject only to title exceptions set forth in this Contract.
235 (2) An existing abstract of title from a reputable and existing abstract firm (if firm is not existing, then abstract must be
236 certified as correct by an existing firm) purporting to be an accurate synopsis of the instruments affecting title to the
237 Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.
FAR-9   4/07   © 2007   Florida Association of Realtors®   All Rights Reserved

238 Property recorded in the public records of the county where the Property is located and certified to Effective Date.
239 However, if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed
240 insurer as a base for reissuance of coverage. Seller will pay for copies of all policy exceptions and an update in a format
241 acceptable to Buyer's closing agent from the policy effective date and certified to Buyer or Buyer's closing agent,
242 together with copies of all documents recited in the prior policy and in the update. If a prior policy is not available to
243 Seller then (1) above will be the title evidence. Title evidence will be delivered no later than 10 days before Closing Date.
244 (b) Title Examination: Buyer will examine the title evidence and deliver written notice to Seller, within 5 days from receipt of
245 title evidence but no later than Closing Date, of any defects that make the title unmarketable. Seller will have 30 days from
246 receipt of Buyer's notice of defects ("Curative Period") to cure the defects at Seller's expense. If Seller cures the defects
247 within the Curative Period, Seller will deliver written notice to Buyer and the parties will close the transaction on Closing
248 Date or within 10 days from Buyer's receipt of Seller's notice if Closing Date has passed. If Seller is unable to cure the
249 defects within the Curative Period, Seller will deliver written notice to Buyer and Buyer will, within 10 days from receipt of
250 Seller's notice, either cancel this Contract or accept title with existing defects and close the transaction.
251 (c) Survey: Buyer may, at Buyer's expense, have the Property surveyed and deliver written notice to Seller, within 5 days from
252 receipt of survey but no later than closing, of any encroachments on the Property, encroachments by the Property's improvements
253 on other lands or deed restriction or zoning violations. Any such encroachment or violation will be treated in the same manner as a
254 title defect and Buyer's and Seller's obligations will be determined in accordance with subparagraph (b) above.

255
                                                   MISCELLANEOUS
256 **11. EFFECTIVE DATE; TIME; FORCE MAJEURE:**
257 (a) **Effective Date:** The "Effective Date" of this Contract is the date on which the last of the parties initials or signs and
258 delivers the final offer or counteroffer. Time is of the essence for all provisions of this Contract.
259 (b) **Time:** All time periods will be computed in business days (a "business day" is every calendar day except Saturday, Sunday
260 and national legal holidays). If any deadline falls on a Saturday, Sunday or national legal holiday, performance will be due the
261 next business day. All time periods will end at 5:00 p.m. local time (meaning in the county where the Property is
262 located) of the appropriate day.
263 (c) **Force Majeure:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to
264 each other for damages so long as the performance or non-performance of the obligation is delayed, caused or prevented
265 by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire,
266 unusual transportation delays, wars, insurrections and any other cause not reasonably within the control of the Buyer or
267 Seller and which by the exercise of due diligence the non-performing party is unable in whole or in part to prevent or
268 overcome. All time periods, including Closing Date, will be extended (not to exceed 30 days) for the period that the force
269 majeure or act of God is in place. In the event that such "act of God" or "force majeure" event continues beyond the 30
270 days in this sub-paragraph, either party may cancel the Contract by delivering written notice to the other and Buyer's
271 deposit shall be refunded.

272 **12. NOTICES:** All notices shall be in writing and will be delivered to the parties and Broker by mail, personal delivery or electronic
273 media. Except for the notices required by Paragraph 3 of this Contract, Buyer's failure to deliver timely written notice to
274 Seller, when such notice is required by this Contract, regarding any contingencies will render that contingency null and
275 void and the Contract will be construed as if the contingency did not exist. Any notice, document or item delivered to
276 or received by an attorney or licensee (including a transaction broker) representing a party will be as effective as if
277 delivered to or by that party.

278 **13. COMPLETE AGREEMENT:** This Contract is the entire agreement between Buyer and Seller. Except for brokerage
279 agreements, no prior or present agreements will bind Buyer, Seller or Broker unless incorporated into this Contract.
280 Modifications of this Contract will not be binding unless in writing, signed or initialed and delivered by the party to be bound.
281 Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically
282 or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms
283 inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or
284 unenforceable, all remaining provisions will continue to be fully effective. Buyer and Seller will use diligence and good faith in
285 performing all obligations under this Contract. This Contract will not be recorded in any public records.

286 **14. ASSIGNABILITY; PERSONS BOUND:** Buyer may not assign this Contract without Seller's written consent. The terms
287 "Buyer," "Seller," and "Broker" may be singular or plural. This Contract is binding on the heirs, administrators, executors,
288 personal representatives and assigns (if permitted) of Buyer, Seller and Broker.

289
                                            DEFAULT AND DISPUTE RESOLUTION
290 **15. DEFAULT:** (a) **Seller Default:** If for any reason other than failure of Seller to make Seller's title marketable after diligent effort, Seller
291 fails, refuses or neglects to perform this Contract, Buyer may choose to receive a return of Buyer's deposit without waiving the right to
292 seek damages or to seek specific performance as per Paragraph 16. Seller will also be liable to Broker for the full amount of the
293 brokerage fee. (b) **Buyer Default:** If Buyer fails to perform this Contract within the time specified, including timely payment of all deposits,
294 Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages or to seek specific performance as

295 Buyer (____)(____) and Seller (____)(____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.
FAR-9   4/07   © 2007   Florida Association of Realtors®   All Rights Reserved

296 per Paragraph 16; and Broker will, upon demand, receive 50% of all deposits paid and agreed to be paid (to be split equally among
297 Broker) up to the full amount of the brokerage fee.

298 **16. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims and other matters in
299 question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
300     (a) **Disputes concerning entitlement to deposits made and agreed to be made:** Buyer and Seller will have 30 days from the
301 date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent will
302 submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the Florida Real
303 Estate Commission ("FREC"). Buyer and Seller will be bound by any resulting award, judgment or order. A broker's
304 obligation under Chapter 475, FS and the FREC rules to timely notify the FREC of an escrow dispute and timely resolve the
305 escrow dispute through mediation, arbitration, interpleader or an escrow disbursement order, if the broker so chooses,
306 applies to brokers only and does not apply to title companies, attorneys or other escrow companies.
307     (b) **All other disputes:** Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to
308 resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration
309 in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not
310 provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact
311 and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the
312 Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real
313 estate licensee or firm named in Paragraph 19 will be submitted to arbitration only if the licensee's broker consents in
314 writing to become a party to the proceeding. This clause will survive closing.
315     (c) **Mediation and Arbitration; Expenses:** "Mediation" is a process in which parties attempt to resolve a dispute by
316 submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a
317 settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA") or
318 other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in
319 which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is
320 binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the
321 parties. Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally
322 split the arbitrators' fees and administrative fees of arbitration.

                                        **ESCROW AGENT AND BROKER**
324 **17. ESCROW AGENT:** Buyer and Seller authorize Escrow Agent to receive, deposit and hold funds and other items in escrow and,
325 subject to clearance, disburse them upon proper authorization and in accordance with Florida law and the terms of this Contract,
326 including disbursing brokerage fees. The parties agree that Escrow Agent will not be liable to any person for misdelivery of escrowed
327 items to Buyer or Seller, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence. If Escrow
328 Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing fees and costs from the deposit and will recover
329 reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in
330 favor of the prevailing party. All claims against Escrow Agent will be arbitrated, so long as Escrow Agent consents to arbitrate.

331 **18. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify all facts and representations that are
332 important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts, determining the
333 effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, the effect of property lying
334 partially or totally seaward of the coastal construction control line, etc.) and for tax, property condition, environmental and other
335 specialized advice. Buyer acknowledges that Broker does not reside in the Property and that all representations (oral, written or
336 otherwise) by Broker are based on Seller representations or public records. Buyer agrees to rely solely on Seller, professional
337 inspectors and governmental agencies for verification of the Property condition, square footage and facts that materially affect
338 Property value. Buyer and Seller respectively will pay all costs and expenses, including reasonable attorneys' fees at all levels,
339 incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from Buyer's or Seller's
340 misstatement or failure to perform contractual obligations. Buyer and Seller hold harmless and release Broker and Broker's officers,
341 directors, agents and employees from all liability for loss or damage based on (1) Buyer's or Seller's misstatement or failure to
342 perform contractual obligations; (2) Broker's performance, at Buyer's and/or Seller's request, of any task beyond the scope of
343 services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor; (3)
344 products or services provided by any vendor; and (4) expenses incurred by any vendor. Buyer and Seller each assume full
345 responsibility for selecting and compensating their respective vendors. This paragraph will not relieve Broker of statutory obligations.
346 For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

347 **19. BROKERS:** The licensee(s) and brokerage(s) named below are collectively referred to as "Broker." Instruction to Closing
348 Agent: Seller and Buyer direct closing agent to disburse at closing the full amount of the brokerage fees as specified in separate
349 brokerage agreements with the parties and cooperative agreements between the brokers, except to the extent Broker has
350 retained such fees from the escrowed funds. In the absence of such brokerage agreements, closing agent will disburse
351 brokerage fees as indicated below. This paragraph will not be used to modify any MLS or other offer of compensation made by
352 Seller or listing broker to cooperating brokers.

353 Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.
FAR-8   4/07   ©2007   Florida Association of Realtors®   All Rights Reserved

_____  _____
Selling Sales Associate/License No.          Selling Firm/Brokerage Fee (% or % of Purchase Price)

_____  Re/Max ICC Riverside
Listing Sales Associate/License No.          Listing Firm/Brokerage fee (% or % of Purchase Price)

**ADDENDA AND ADDITIONAL TERMS**

20. **ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this Contract (check if applicable):

- ☐ A. Condo. Assn.
- ☐ B. Homeowners' Assn.
- ☐ C. Seller Financing
- ☐ D. Mort. Assumption
- ☐ E. FHA Financing
- ☐ F. VA Financing
- ☐ G. New Mort. Rates
- ☑ H. As Is w/Right to Inspect
- ☐ I. Inspections
- ☐ J. Insulation Disclosure
- ☐ K. Pre-1978 Housing Stmt. (LBP)
- ☐ L. Insurance
- ☐ M. Housing Older Persons
- ☐ N. Lease purchase/Lease option
- ☐ O. Interest-Bearing Account
- ☐ P. Back-up Contract
- ☐ Q. Broker - Pers. Int. in Prop.
- ☐ R. Rentals
- ☐ S. Sale/Lease of Buyer's Property
- ☐ T. Rezoning
- ☐ U. Assignment
- ☐ V. Prop. Disclosure Stmt.
- ☐ W. PRPTA
- ☐ X. 1031 Exchange
- ☐ Y. Additional Clauses
- ☑ Other ___REMAX___
- ☐ Other _____

21. **ADDITIONAL TERMS:**

Buyer to purchase and install their own carpet and appliances there

Buyer _____ and Seller _____ acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

24 NOV 2007 18:14                   Realtorori                               page 2

411  This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

412
413  (Check if applicable: ☐ Buyer received a written real property disclosure statement from Seller before making this Offer.)
414  Buyer offers to purchase the Property on the above terms and conditions. Unless this Contract is signed by Seller and a copy
415  delivered to Buyer no later than __5:00__ ☐ a.m. ☒ p.m. on __11/24__, __2007__, this offer will be revoked
416  and Buyer's deposit refunded subject to clearance of funds.

## OFFER AND ACCEPTANCE

417
## COUNTER OFFER/REJECTION
418  ☐ Seller counters Buyer's offer (to accept the counter offer, Buyer must sign or initial the counter offered terms and deliver a copy
419  of the acceptance to Seller. Unless otherwise stated, the time for acceptance of any counteroffers shall be 2 days from the
420  date the counter is delivered. ☐ Seller rejects Buyer's offer.

421  Date: _11/23/07_    * Buyer: _[signature]_
422                        Print name: _Theomon Brault_

423  Date: _11/23/07_    * Buyer: _[signature]_
424  Phone: _____     Print name: _Regina Brault_
425  Fax: _____     Address: _100 S.W. 96th Terr.,_
426  E-mail: _____    _Pembroke Pines, Florida  33025_

427  Date: _11/26/07_    Seller: _Dale Cloutier_
428                       Print name: _Dale Cloutier_

429  Date: _____     Seller: _____
430  Phone: _____    Print name: _____
431  Fax: _____    Address: _____
432  E-mail: _____

433  | Effective Date: _____ (The date on which the last party signed or initialed and delivered the final offer or counteroffer.) |

434  Buyer (___)(___) and Seller (_X_)(___) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

The Florida Association of Realtors and local Board/Association of Realtors make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

FAR-9    4/07    © 2007    Florida Association of REALTORS®    All Rights Reserved

Sep 15 10 04:03p     CLOUTIER BROTHERS, INC.                561-790-1575           p.9
2007-1-23 21:21    Realtorori        7728079009 >>    772 343 9603                 P 12/15

1  The clause below will be Incorporated into the Contract between ___DNR Landwest___
2  and ___Anastacia Regina Scown___ _____ (Seller)
3  ___4847 SW McClellan St___ (Buyer) concerning the Property described as
4                                                                          only if initialed by all parties:

## PROPERTY

5  (__AR__)(__AS__) - (__DL__)( ___ ) H. **As Is With Right to Inspect:** This clause replaces Paragraphs 6 and 8 of the Contract but
6  does not modify or replace Paragraph 9. Paragraph 5(a) Repair, WDO and Permit Limits are 0%. Seller makes no warranties
7  other than marketability of title. Seller will keep the Property in the same condition from Effective Date until closing, except for
8  normal wear and tear ("Maintenance Requirement"), and will convey the Property in its "as is" condition with no obligation to
9  make any repairs. Buyer may, at Buyer's expense, by _____ ("Inspection Period") (within 10 days
10 from Effective Date if left blank) make any and all inspections of the Property. The inspection(s) will be by a person who
11 specializes in and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida license
12 to repair and maintain the items inspected. Buyer may cancel this Contract by delivering written notice to Seller within ___ days
13 (within 5 days if left blank) from the end of the Inspection Period if the cost of treatment and repairs estimated by Buyer's
14 inspector(s) is greater than $_____ ($250.00 if left blank) or if Buyer's inspection(s) reveal open permits or that
15 improvements have been made to the Property without required permits. For the cancellation to be effective, Buyer must include
16 in the written notice a copy of the portions of the inspector's written report dealing with the items to be repaired, and treatment
17 and repair estimates from the inspector or person(s) holding an appropriate Florida license to repair the items inspected or any
18 written documentation of open permit(s) or permit(s) that have not been obtained if a permit is required. Any conditions not
19 reported in a timely manner will be deemed acceptable to Buyer. If Buyer fails to timely conduct any inspection which Buyer is
20 entitled to make under this paragraph, Buyer waives the right to the inspection and accepts the Property "as is." Seller will
21 provide access and utilities for Buyer's inspections. Buyer will repair all damages to the Property resulting from the inspections
22 and return the Property to its pre-inspection condition. Buyer and/or Buyer's representative may, on the day before Closing Date
23 or any other time agreeable to the parties, walk through the Property solely to verify that Seller has fulfilled the Maintenance
24 Requirement and the contractual obligations.

25 Buyer (__AR__)(___) and Seller (__DL__)(___) acknowledge receipt of a copy of this page.
26 PARA-9   4/07   ©2007   Florida Association of Realtors®   All Rights Reserved

Page ___ of Addendum No. ___

Case 2:09-md-02047-EEF-MBN   Document 11039-5   Filed 11/02/11   Page 12 of 14

Sep 15 10 04:03p   CLOUTIER BROTHERS, INC.        561-790-1575        p.10
2007-11-23 21:22   Realtorori       7728079009 >>   772 343 9603      P 14/15

## Mold Inspection Addendum to Contract
FLORIDA ASSOCIATION OF REALTORS®

The following provisions are made a part of the Contract for Sale and Purchase or Residential Sale and Purchase Contract between __David R Lanfrest LLC__ _____(Seller) and __Algarnon & Regina Brown__ _____(Buyer) concerning the Property located at __4257 S.W. Mcclellan St. Palm City Fl 34990__

1. Buyer, at Buyer's expense, may have a qualified professional conduct an inspection of the Property for mold within __10__ days from the Effective Date ("Mold Inspection Period").

2. Buyer shall be responsible for prompt payment for such inspections and repair of damage to and restoration of the Property resulting from such inspections. This provision shall survive termination of the Contract.

3. In the event the mold inspection reveals a significant presence of mold in the Property, which requires professionals to remove the mold, at a cost which exceeds $ __100__ . Buyer may cancel the Contract by delivering written notice of such election no later than 48 hours after expiration of the Mold Inspection Period. If Buyer timely cancels the Contract, the deposits paid shall be immediately returned to Buyer and Buyer and Seller shall be released from further obligations under the Contract, except as provided in subparagraph 2 above.

4. If Buyer fails to conduct the inspection permitted in this Paragraph or having conducting such inspections, fails to timely notify the Seller of Buyer's intent to cancel this Contract or if the mold inspection does not reveal significant presence of mold in the Property which requires professional remediation to remove the mold, at a cost which exceeds the sum specified in Paragraph 3 above, Buyers may not terminate this Contract pursuant to this Addendum.

Seller: _Dale Clout_ (signature) / _Dale Cloutier_ (print)   Date: _11-26-07_

Seller: _____ (signature) / _____ (print)   Date: _____

Buyer: _[signature]_ (signature) / _Algernon Brown_ (print)   Date: _11-23-07_

Buyer: _Regina Brown_ (signature) / _Regina Brown_ (print)   Date: _11-23-07_

MIAC-1  Rev. 10/02  © 2002 Florida Association of Realtors®  All Rights Reserved
This software is licensed to [Kathy Slusser - RE/MAX Masterpiece Realty] www.transactiondesk.com. Instanet forms

Case 2:09-md-02047-EEF-MBN   Document 11039-5   Filed 11/02/11   Page 13 of 14

Sep 15 10 04:03p        CLOUTIER BROTHERS, INC.                561-790-1575                    p.11
2007-11-23 21:22    Realtorori        7728079009 >>    772 343 9603                         P. 15/15



**Masterpiece Realty**
916 SW Glenview Court
Port St. Lucie, FL 34953
Office: 772-340-2700/FAX: 772-344-1390

## SPECIAL CLAUSES

The Seller(s) disclose and the Buyer(s) is made aware that the City of Port St. Lucie is expanding water and sewer services throughout the city. Buyer acknowledges that the subject property is located in a special assessment district and is now or will be subject to a special assessment lien for certain improvements in that district. Buyer agrees to take title subject to and be solely responsible for payment or assumption of any assessment, connection fee (Capital Charge Agreement), transfer fee ($225 as of 1/1/06) or usage fee established whether or not said assessment is pending, certified, ratified, is confirmed prior to the date of closing, and the Buyer specifically releases the Seller of any requirement for payment on said special assessment with the specific understanding that this clause supersedes and controls over the provision set forth in standard M of the Contract for Sale and Purchase. In the event Buyer is using FHA/VA financing, all parties are made aware that property must be hooked to water and sewer and that the hookup can take 10-12 weeks.

**Release from liability:** If Buyer and/or Seller request Broker to perform any task which is beyond the scope of services regulated by Chapter 475, F.S., as amended, including referring, recommending or retaining a vendor to or on behalf of either party, then as consideration for Broker performing the task, Buyer and Seller hold Broker harmless and release Broker for all liability for loss or damage, whether caused by Broker's negligence or otherwise, in connection with (1) Broker's recommendation performance of the task (2) Broker's referral, or retention of any vendor, (3) services or products provided by any vendor, and (4) expenses incurred by any vendor unless Broker agrees, in writing and for valuable consideration, to accept liability for the task. Buyer and Seller each assume full responsibility for selecting and compensating vendors. For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

_____    Date 11/26/07
Seller

_____    Date _____
Seller

_____    Date 11/11/2007
Buyer

_____    Date 11/11/2007
Buyer



**RE/MAX Seller's Net Sheet**

SELLER'S NAME: D and R Landvest
PROPERTY ADDRESS: 4297 SW Mc Clellan
Port St Lucie, FL

SELLER'S CREDITS
  SALE PRICE ............................................................. $225,000
    TOTAL CREDITS ..................................................... $225,000

MONIES/DEBT OWED ON PROPERTY
  TOTAL PAYOFFS ....................................................... $0

    NET EQUITY IN PROPERTY (Total Credits minus Total Payoffs) .... $225,000

ESTIMATED SELLING CLOSING COSTS
  Brokerage Fee ......................................................... $13,500
  Owner's Title Insurance .............................................. 1,238
  State Doc Stamps on Deed ........................................... 1,575
  Real estate Processing Fee .......................................... 395
  Search Exam and Closing ............................................. 300
    APPROXIMATE TOTAL COSTS ....................................... $17,008

ESTIMATE OF SELLER'S PROCEEDS ................................ $207,992

The above information has been obtained from sources believed to be reliable. However, the data is for the information of parties only and is not warranted by this company as to the accuracy or completeness. All the data are estimated and are subject to change.

I HAVE READ THE ABOVE FIGURES AND ACKNOWLEDGE RECEIPT OF A COPY OF THIS FORM.

_Dale [signature]_

SELLER _____    SELLER _____

PRESENTED BY _____    DATE _____    PHONE NO. _____