UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON (L) |
| ALL CASES | * * * | MAGISTRATE WILKINSON (4) |

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

Wyman Stokes

who, being duly sworn, upon his oath deposed and stated as follows:

1. He was the President for Wyman Stokes Builder, Inc. ("Wyman Stokes Builder"), and as such, has personal knowledge of the following based on his review of records maintained by Wyman Stokes Builder in the regular course of business.

2. Wyman Stokes Builder was a corporation organized and existing under the laws of the State of Florida and had its principal place of business in Lee County, Florida.

3. Wyman Stokes Builder's became an inactive Florida corporation on October 30, 2009.

4. Wyman Stokes Builder was a home builder that contracted with third party vendors for the construction of single-family homes and/or sold completed single-family homes.

5. Wyman Stokes Builder never built a residence in the State of Louisiana.

6. Wyman Stokes Builder was never licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.


EXHIBIT "A"

7. Wyman Stokes Builder never had an agent for service of process in Louisiana.

8. Wyman Stokes Builder never had any bank accounts in Louisiana nor owned any property in Louisiana.

9. Wyman Stokes Builder never solicited business in Louisiana.

10. Wyman Stokes Builder never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

11. Wyman Stokes Builder never maintained an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

12. Consequently, Wyman Stokes Builder never anticipated it would be haled into court in Louisiana.

_____
WYMAN STOKES

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 28TH DAY OF April, 2010 2011
_____
NOTARY PUBLIC

NOTARY PUBLIC-STATE OF FLORIDA
Saraswattie Howard
Commission # DD995692
Expires: MAY 25, 2014
BONDED THRU ATLANTIC BONDING CO., INC.

# WYMAN STOKES BUILDER, INC.
## CITRUS CREEK AT VERANDAH
### LOT PURCHASE AND CONSTRUCTION CONTRACT

DATED: _February 23rd_, 2006

CONTRACT for lot purchase and new construction between
Name _(Alan & Kathryn Feld) ALAN S. FELD & KATHRYN BOLLINGER FELD_
Address _1224 Willowbrook Drive Potomac, MD 20854_
hereinafter referred to as "BUYER" and WYMAN STOKES BUILDER, INC., 12951 METRO PARKWAY, SUITE 8, FORT MYERS, FLORIDA 33912 hereinafter referred to as "SELLER", "BUILDER" or "CONTRACTOR" for construction of a Single Family Residence and lot purchase in Citrus Creek at Verandah.

Buyer to Purchase: VERANDAH UNIT ELEVEN, LOT _22_, BLOCK B,

Street Address: _13506_ Citrus Creek Court, Fort Myers, Florida 33905

Contractor to build the _Hamlin_ Model

In consideration whereof, Seller agrees to convey title to the Buyer by general warranty deed, free and clear of all liens and encumbrances except: Taxes and assessments for year of closing, restrictions and easements shown on the plat or of record, and zoning, restrictions, prohibitions and other requirements imposed by governmental authority.

_SEE ADDENDUM_ Taxes, insurance, interest, assessments, rents and other expenses or revenues of said Property shall be paid or pro-rated **as of the closing date.** In the event the title shall be proven to be unmerchantable, the Seller shall have a reasonable period of time after notification thereof within which to cure defects in title, and this sale shall be closed within 15 days after notice of such curing to the Buyer. Upon Seller's failure to correct unmerchantability, the earnest money deposit shall be returned to the Buyer upon demand, and all rights and liabilities arising hereunder shall terminate, or upon request of the Buyer, Seller shall deliver the title to Buyer in its existing condition.

Time is of the essence in this agreement. Subject to the aforesaid curative period, this sale shall be closed on or before ~~February 20,~~ _March 23_ 2006, otherwise, the earnest money deposit shall be retained by the Seller as liquidated and agreed damages, and the parties hereto shall be relieved of all obligations hereunder. In the event that this sale shall not close on said date, subject to the aforesaid curative period, by reason of Seller's default, Buyer may seek return of the earnest money deposit and shall have no other remedies at law or in equity.

Buyer shall pay up to one and a half percent (1.5%) of the full purchase price for title insurance and documentary stamps. Seller shall pay the amount in excess of one and a half

Buyer's Initials _ASF_ _KBF_

EXHIBIT "B"

6. BUILDER warrants and represents to BUYER as follows:
    A. That BUILDER is a properly licensed building contractor.
    B. That BUILDER will engage only subcontractors that are properly licensed in their respective trades.
    C. That BUILDER is a Florida Corporation in good standing.
    D. That BUILDER will complete construction in a good workmanlike manner. BUILDER shall guarantee for a period of one year from issue of the Certificate of occupancy, against defective materials and workmanship. This guarantee includes, without limitations, the building, roof, plumbing, electrical system and the heating, ventilation and air conditioning system.

The foregoing warranties and guarantees do not cover non-structural settlement cracks, fading and/or discoloration of paint or wood, or pitting or imperfections that may result from normal settling, normal shrinkage or drying out, or which may result from the negligence, abuse or lack of normal maintenance by BUYER. The foregoing warranties and guarantees also exclude consequential damages.

BUILDER shall assign to BUYER all warranties applicable to the premises received from suppliers, subcontractors and material men, and any other warranties pertaining to the premises, appliances, fixtures and systems. All workmanship shall conform to the guidelines found in the publication *Residential Construction Performance Guidelines - For Professional Builders and Remodelers,* National Association of Home Builders, 1996. If an item is not covered in that publication, standard industry practice shall govern.

7. PURCHASE PRICE: BUYER will pay CONTRACTOR the sum of $ ~~635,925~~ 633,725.00 (U.S. Dollars) in the following manner:

    A. 10% down payment due at Contract by check subject to collection $ 63372 ~~63,700~~

    Less Initial $10,000 reservation deposit $ N/A

    Balance of Down Payment payable to **Fidelity National Title Ins.** $ ~~568,678~~ 570,353

    B. BUYER OR BUYER's lender to fund a total of 25% of total purchase price to the BUILDER when title is conveyed to the BUYER.

    C. BUYER or BUYER's lender will fund 10% of the balance of the contract at lot acquisition as a construction deposit.

    D. Contract balance shall be paid on the construction progress in accordance with the draw schedule approved by BUYER's lending institution. In the event that owner is not financing construction through a lending institution, the draw schedule set

Buyer's Initials _AF_ _VH_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 2

percent (1.5%) for title insurance and documentary stamps on the deed. Buyer shall pay all other costs in excess of said amounts. Buyer shall pay all costs associated with obtaining Buyer's mortgage, including mortgagee title insurance.

This Agreement shall be binding upon both parties, the Seller and the Buyer, their heirs or executors. Neither this Agreement nor any notice hereof shall be recorded in any public records.

Buyer acknowledges receipt from Seller of the **Sales Disclosure to Prospective Buyers.** *SEE ADDENDA*
Buyer acknowledges receipt from Verandah Realty of all **Disclosure Related to this Lot Purchase.**

**Seller discloses to Buyer that an emergency vehicle access must be provided from Buckingham Road and that Seller intends to install a locked fence.**

SELLER DOES NOT EXPRESSLY OR IMPLIEDLY WARRANT HABITABILITY OF SOIL OR SUB-SURFACE CONDITIONS OF THE SUBJECT PROPERTY. BUYER EXPRESSLY ASSUMES THE RISK OF ANY AND ALL LOSS OR DAMAGE TO THE SUBJECT PROPERTY CAUSED BY SOIL OR SUB-SURFACE CONDITIONS, WHETHER OR NOT ANY SUCH ADVERSE CONDITION COULD HAVE BEEN DISCOVERED PRIOR TO THE CLOSING BY APPROPRIATE TESTING.

BUYER HAS PERSONALLY INSPECTED THE PROPERTY TO BE PURCHASED PRIOR TO THE EXECUTION OF THIS AGREEMENT.

Florida law requires the following disclosure to be given to the purchaser of property in this State. Seller has made no independent inspection of the Property to determine the presence of conditions which may result in radon gas; however, Seller is not aware of any such condition. Certain building methods and materials have been proven to reduce the possibility of radon gas entering the building.

> RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

By: _____
    Patricia L. Stokes
Title: Vice President, Wyman Stokes Builder, Inc.

THE POTENTIAL BUYER SHOULD NOT EXECUTE THE CONTRACT OR AGREEMENT UNTIL THEY HAVE RECEIVED AND READ THE DISCLOSURE SUMMARY REQUIRED BY SECTION 689.26, FLORIDA STATUTES.

Buyer's Initials _____ _____

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 3

IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 689.26, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST.  ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

VERANDAH WEST COMMUNITY DEVELOPMENT DISTRICT MAY IMPOSE AND LEVY TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY. THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT, AND ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT. THESE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND ALL OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS, AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY THE LAW. THE GOLF CLUB IN VERANDAH IS A PRIVATE MEMBERS' ONLY FACILITY TO WHICH PURCHASING A LOT DOES NOT PROVIDE A RIGHT OF ACCESS OR USE.

## SALES DISCLOSURE TO PROSPECTIVE BUYERS

Upon the closing of the purchase of your home, additional costs may be borne by you in the form of closing costs. A list of the known major cost items are:

1. Survey ($650.00)
2. Insurance
3. Service Fee (or Origination Fee) on any New Mortgage
4. Intangible Tax
5. Documentary Stamps on New Note
6. Documentary Stamps on Deed
7. Title Insurance
8. Recording Fees on Mortgage and Deed
9. Credit Report
10. Mortgage Company's Attorney Fees
11. Appraisal Fee
12. Real Estate Tax Proration
13. Community Mailbox ($615.00)

Buyer's Initials _ASP_ _LbK_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 4

Buyers acknowledge (by checking line) that they have:

    *[initialed]*    Received a copy of the Homeowners Manual, which includes all recorded documents for Verandah and Citrus Creek

WHEREAS, the BUYER will be the OWNER in fee simple of certain premises described above and hereinafter called the "BUILDING SITE or PROPERTY" and BUYER desires BUILDER to construct a certain building on the premises.

NOW THEREFORE, for and in consideration of the mutual promises herein contained, the parties agree to as follows:

1. BUILDER shall construct upon the building site a building and related improvements in accordance with the Plans prepared by Sater Group. The residence will have craftsmanship equal to or better than that used in the two model homes in Orangetree Bend at Verandah.

2. Subject to the provisions of this Agreement. The BUILDER agrees to use its best effort to deliver the completed residence specified herein with 270 days (9 months) from the date of permit or from the date of the Notice of Commencement, whichever occurs last. All times stated herein are of the essence.

3. BUYER shall grant the BUILDER exclusive possession of the PROPERTY during the course of construction and until the BUILDER is paid in full in accordance with the terms of this CONTRACT. BUILDER shall deliver possession back to BUYER when construction is completed and BUILDER has been paid in full. BUYER shall not occupy or permit others to occupy the property until BUILDER has delivered possession back to BUYER. BUYER may visit the property for purpose of inspection, but shall not direct or interfere with workers or subcontractors.

*SEE ADDENDUM* 4. BUILDER shall provide general administration of construction and shall be BUYER'S representative. BUILDER shall be responsible for arranging and coordinating the work and supervision and inspection of progress. BUILDER may perform the work with BUILDER'S own forces and may subcontract portions of or all of the work at BUILDER'S sole discretion.

5. If the price or any part thereof is to be financed by a third party loan, this contract is conditioned upon BUYER obtaining a firm commitment for the loan within 10 days. Should BUYER not obtain such loan within 10 days, either party may rescind this CONTRACT, provided however, that BUILDER shall be reimbursed by BUYER for any costs incurred by BUILDER for design fees, clearing and filling, permit application, and etc. BUYER shall close on loan by ~~February 28,~~ March 23, 2006.

Buyer's Initials _____  _____

forth on Exhibit B shall apply. Any payment not made within 5 days of the date requested by BUILDER without cause shall accrue interest at the highest rate allowable under Florida law from the date of the request. The BUYER hereby waives the right to have the deposit held in escrow pursuant to Florida law.

8. Construction to be completed within the time set forth in Paragraph No. 2, herein unless delayed by strikes, act of God, material or labor shortages, or other causes beyond control of CONTRACTOR. Closing and settlement of the CONTRACT shall be within five (5) days of notice by the BUILDER to the BUYER that the premises are ready for occupancy and the Certificate of Occupancy has been obtained and CONTRACTOR has given BUYER an Affidavit of "No Liens" and other documents and releases as required by Section 713.06 (3) (d), Florida Mechanics Lien Law. BUYER shall not unreasonably delay closing due to minor corrections or touchup work that does not interfere with occupancy. Said minor work shall be listed on a Compliance List, signed by the BUYER and BUILDER and will be scheduled to be completed within thirty (30) days of the date of the Compliance List. It is understood that certain "punch list" items may remain at the time of final settlement, and such items will be promptly and responsibly handled by the CONTRACTOR as a warranty item. It is further understood, additional items may arise during the warranty period, which may be added to the original list. Notwithstanding, final settlement will take place without such lists and such lists will be honored in accordance with the terms of the warranty. Whereas this written assurance is provided, the BUYER shall not be entitled to hold-backs or escrows, pending completion of "punch list" or warranty items.

SEE ADDENDUM
AF /hw/

9. Expenses of temporary electric service during construction will be borne by the BUILDER. This CONTRACT has included back-to-back power hookups. Any additional fees charged by the power company to bring power to the home will be paid by the BUYER.

10. This agreement shall be binding upon the heirs, executors, administrators, and assigns of the parties. Neither party shall assign this CONTRACT without the prior written consent of the other party.

11. In any arbitration or litigation between the parties arising from the CONTRACT, the prevailing party shall be awarded its reasonable attorney's fees, including bankruptcies and appeals against the non-prevailing party.

12. The price set forth above is based upon BUILDER having immediate access to the PROPERTY. It is further based upon the BUILDER being authorized to commence construction within thirty (30) days from the date hereof and thereafter being able to prosecute the work continuously until completion. The price and time of performance shall be subject to adjustment if BUILDER is not authorized to begin construction within thirty (30) days, if BUILDER is prevented from prosecuting the work continuously, or if unforeseen site conditions, including sub-surface conditions or the absence of temporary utilities delay commencement and prosecution of the work or if any governmental authority requires additions or changes to the plan or

Buyer's Initials AF /hw/

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 7

specifications. BUYER agrees to promptly make selections of materials and finishes upon request by BUILDER. In the event BUYER unreasonably delays in making such selections, the price and time of performance shall be subject to adjustments. The price and time of performance may, at the BUILDERS sole discretion, be adjusted for abnormal and spontaneous increases in the cost of materials and/or labor resulting from hurricanes, tornadoes, floods, civil disorder, labor disputes or other events beyond the control of BUILDER.

13. A waiver of a breach of any of the terms or conditions hereof shall not be construed as a waiver of any subsequent breach. Any consent to delay in the performance of CONTRACTOR of any obligations shall be applicable only to the particular transaction to which it relates, and it shall not be applicable to any other obligations or transactions. Delay in the enforcement of any remedy in the event of a breach of any term or condition hereof, or in the exercise by either party of any right hereunder, shall be construed as a waiver.

14. The BUYER may terminate this CONTRACT prior to its completion and without prejudice to any other remedy BUYER may have, in the event CONTRACTOR files bankruptcy, becomes insolvent, or defaults in performance of any provision herein or fails to carry out the construction in accordance with the provisions of this CONTRACT, the plans and specifications after receipt of five (5) days written notice of same from BUYER.

15. CONSTRUCTION INDUSTRIES RECOVERY FUND: Payment may be available from the Construction Industries Recovery Fund if you lose money on a project performed under contract, where the loss results from specified violations of Florida Law by a state licensed contractor. For information about the Recovery Fund and filing a claim, contact the Florida Construction Industry Licensing Board at the following telephone number and address:

Construction Industry Licensing Board:    Phone: 850-487-1395
1940 North Monroe Street, Northwood Centre
Tallahassee, Florida 32399

**ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT**

**AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY**

Buyer's Initials *ASF* *LW*

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 8

SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS OR NEGLECTS TO MAKE OTHER LEGALLY REQUIRED PAYMENTS, THE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY. FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX AND IT IS RECOMMENDED THAT WHENEVER A SPECIFIC PROBLEM ARISES, YOU CONSULT AN ATTORNEY.

16. This CONTRACT constitutes the entire agreement between the parties and supersedes any prior oral negotiations or representations. This CONTRACT may only be modified or amended in writing signed by the parties.

17. Any notice or other communications required or permitted hereunder shall be sufficiently given if sent by registered or certified mail, postage prepaid, return receipt, addressed to the parties at the addresses shown herein, or at such other address as may be furnished in writing by either party to the other, and shall be deemed to have been given as of the date so deposited in the United States mail.

18. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

19. CDD Disclosure. Verandah West Community Development District may impose and levy taxes or assessments, or both taxes and assessments on this property. These taxes and assessments pay the construction, operation and maintenance costs of certain public facilities and services of the district and are set annually by the governing board of the district. These taxes and assessments are in addition to county and all other local governmental taxes and assessments and all other taxes and assessments provided by law.

Buyer's Initials ASP VWP

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 9

_____
ALAN S. FELD, BUYER

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
SOCIAL SECURITY NUMBER

_____
, BUYER

115 38 4237
SOCIAL SECURITY NUMBER

**WYMAN STOKES BUILDER, INC.**

_____
B. WYMAN STOKES, PRESIDENT OR
PATRICIA L. STOKES, VICE PRESIDENT

Buyer's Initials _____ _____