UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: LAURA HAYA, et al. vs. | * * * * | JUDGE FALLON (L) |
| TAISHAN GYPSUM CO., LTD. et al Case No. 11-1077 | * * * | MAG. WILKINSON (4) |

**RADD BUILDERS, INC.'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

Defendant Radd Builders, Inc. ("Radd Builders"), through undersigned counsel, making a special appearance solely for the purpose of the instant motion to dismiss, moves this court for an Order dismissing the claims of plaintiffs under Rule 12(b) for the reasons stated herein. Alternatively, Radd Builders prays this court to transfer venue to the Middle District of Florida pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404 in the interest of justice.

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    THIS ACTION MUST BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL
JURISDICTION OVER RADD BUILDERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    MINIMUM CONTACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    SPECIFIC JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.    GENERAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.    THE ALLEGED NATIONAL CLASS ACTION HAS NO EFFECT ON
PERSONAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.    PLAINTIFFS' OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
RELIEF CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.    THE ECONOMIC LOSS RULE BARS PLAINTIFFS' TORT CLAIMS COUNTS
I, II, III, XI, XII AND XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.    PLAINTIFFS' NEGLIGENCE ALLEGATIONS (COUNT I) ARE FALSE AND
IMPROPERLY PLEADED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        C.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR NEGLIGENCE PER SE
(COUNT II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        D.    PLAINTIFFS HAVE NO CLAIM IN STRICT LIABILITY (COUNT III) . . . 18

        E.    PLAINTIFFS CANNOT MAINTAIN WARRANTY CLAIM
(COUNTS IV & VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1.   As a Non-Contracting Plaintiff Yut Siong Chan
     Cannot Maintain a Warranty Claim of Any Kind
     Because Chan Was Not in Privity of Contract with
     Radd Builders.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.   The Warranty Claims Asserted By the Sparkman
     Plaintiffs Are Foreclosed by the Plain Language of
     Their Contract with Radd Builders  . . . . . . . . . . . . . . 20

3.   Plaintiffs cannot maintain a claim for breach of
     warranty of merchantability or of fitness for a
     particular purpose  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

F.   Plaintiffs' Breach of Contract Claim (Count VII) Must be
     Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

G.   Plaintiffs Cannot State a Claim for Private Nuisance
     (Count XI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

H.   Plaintiffs Cannot Bring a Claim for Unjust Enrichment
     (Count XII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

I.   The Omnibus Complaint Fails to State a Claim Under
     Florida's Deceptive and Unfair Trade Practices Act (Count
     XIII). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

J.   Plaintiffs' Claim for Equitable Relief and Medical
     Monitoring (Count XIV) Cannot go Forward Against Radd
     Builders  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

III.   Alternatively, This Action Should be Transferred to the
       Southern District of Florida Pursuant to 28 U.S.C. § 1404 & 1406 .
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## BACKGROUND

Plaintiffs directly filed this purported class action complaint against hundreds of named defendants, including Radd Builders, in the United States District Court for the Eastern District of Louisiana invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act 28 U.S.C. § 1711 *et seq.* ("CAFA").

In the Omnibus Complaint, David and Elizabeth Sparkman and Chinese national Yut Siong Chan (collectively "Plaintiffs") allege that Radd Builders built their houses and, directly or through agents, installed defective drywall in those dwellings, resulting in harm and damage to them. (Complaint, Exhibit A, ¶86 and 669). For the following reasons, Plaintiffs' Complaint should be dismissed.

## ARGUMENT

I.   **THIS ACTION MUST BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER RADD BUILDERS.**

Radd Builders is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Hillsborough County, Florida. (See Affidavit of Walter M. Radd ("Aff") at ¶2, attached hereto as Exhibit "A".) Radd Builders is a Florida homebuilder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes. (Aff. ¶3). Radd Builders has never built a residence in the state of Louisiana or had any contracts or subcontracts with companies located in Louisiana. (Aff. ¶4). Radd Builders has never been licensed or registered to do business in Louisiana, nor has Radd Builders ever had any offices or

4

employees in Louisiana. (Aff. ¶5). Radd Builders does not have an agent for service of process in Louisiana. (Aff. ¶6). Radd Builders does not have any bank accounts in Louisiana or own any property in Louisiana. (Aff. ¶7). Radd Builders does not solicit business in Louisiana and has never transacted business in Louisiana. (Aff. ¶8). Additionally, Radd Builders has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana. (Aff. ¶9). Radd Builders does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the state of Louisiana. (Aff. ¶10). Radd Builders has never received any business from any contacts in Louisiana, whether individual customers, or business customers. (Aff. ¶11). Moreover, neither of the plaintiffs making allegations against Radd Builders reside in Louisiana. Consequently, Radd Builders never anticipated it would be haled into court in Louisiana. (Aff. ¶12).

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish *in personam* jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir.1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985); *Kelvin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). In resolving a jurisdictional issue, the court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits and any part of the record. *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir.1992). The allegations of the complaint are taken as true except to the extent that they are contradicted by defendant's

affidavits. *Wyatt v. Kaplan*, 686 F.2d 276, 282-83 n. 13 (5th Cir.1982) (*citing Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n. 3 (5th Cir.1977)).

In a diversity matter, a federal court may exercise jurisdiction over a nonresident defendant only (1) if the state long-arm statute confers personal jurisdiction over that defendant and (2) if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir.1993) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Mink v. AAAA Development, L.L.C.*, 190 F.3d 333, 335 (5th Cir. 1999); and *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383, 385 (5th Cir. 1989).

Under Louisiana's long-arm statute:

A.  A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from one of the following activities performed by the nonresident:
(1)  Transacting any business in this state;
(2)  Contracting to supply services or things in this state;
(3)  Causing injury or damage by an offense or quasi offense committed through and act or omission in this state;
(4)  Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

*La. R.S. 13:3201(A)*. Louisiana's long-arm statute allows jurisdiction over a nonresident to the fullest limits permitted under the Due Process Clause of the Fourteenth Amendment consistent with "the Constitution of this state and the Constitution of the United States." *La.*

6

*R.S. 13:3201*(B); *Ruppert v. Geo. Kellett & Sons*, 996 So. 2d 501, 505 (La. App. 5th Cir

2008) (*citing Superior Supply Co. v. Assoc. Pipe and Supply Co.*, 515 So. 2d 790, 792 (La.

1987)); *Tsaoussidis v. State Farm Mutual Auto. Ins. Co.*, 2009 WL 3448133 (5th Cir. 2009).

As such, "under the express terms of the present long-arm statute, the sole inquiry into

jurisdiction is a one-step analysis of the constitutional due process requirements." *Ruppert*,

996 So. 2d at 505-06; *See also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir.

1990) ("the exercise of jurisdiction [over a non-resident defendant] ... must comport with

norms imposed by the due process clause of the fourteenth amendment.").

## A.   MINIMUM CONTACTS

The Due Process Clause of the Fourteenth Amendment limits the Court's power to

assert personal jurisdiction over a nonresident by guaranteeing that no federal court may

assume jurisdiction over a non-resident defendant unless the defendant has meaningful

"contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

319, 66 S. Ct. 154, 90 L. Ed. 95 (1945), *Helicopteros Nacionales de Colombia, S.A. v. Hall*,

466 U.S. 408, 413-14 (1994).   Jurisdiction may be general or specific. When a defendant's

contacts with the forum state are "continuous and systematic" with the forum state, the court

may exercise "general" jurisdiction over any action brought against that defendant.

*Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.9, 415 (1984).   Where contacts are

less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or

related to the defendant's contacts with the forum." *Id.* at 414 n.8.   Here, this Court cannot

maintain personal jurisdiction–general or specific–over Radd Builders as it has <u>absolutely</u> <u>no contacts</u> with the forum state of Louisiana.

### B. SPECIFIC JURISDICTION

In the event a defendant has relatively few contacts, the court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 & n.8. The Fifth Circuit has adopted a three step inquiry in determining whether it may exercise specific jurisdiction over a nonresident defendant:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed it self of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Burger King*, 471 U.S. 462, 474 (1985).

The determination of whether a nonresident defendant has sufficient minimum contacts with the forum state to subject it to personal jurisdiction depends upon whether the nonresident has "purposefully availed" itself of the privilege of conducting business in the forum state..." *Hogue*, 2009 WL 2525751 at 4 (*citing Wilton Jones v. Touche Ross & Co.*, 556 So. 2d 67 (La. App. 4th Cir. 1989) (*quoting Hansen v Denckla*, 357 U.S. 235 (1958)); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996). The requirement

8

of "purposeful availment" ensures that the nonresident defendant will not be haled into a jurisdiction "solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person." *Asahi Metal Industry Co., Ltd.,* 480 U.S. at 102, at 475. Radd Builders has not committed any act whatsoever to show that it reasonably anticipates being haled into court in Louisiana, a forum in which it has absolutely no contacts.

The second portion of the analysis is whether Plaintiffs' cause of action arises out of or results from the defendant's forum related contacts. *Seiferth,* 472 F.3d at 271. Radd Builders is a Florida homebuilder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes. (Aff. ¶3). Radd Builders has never built a residence in the state of Louisiana or had any contracts or subcontracts with companies located in Louisiana. (Aff. ¶4). Radd Builders has never received any business from any contacts in Louisiana, whether individual customers, or business customers. (Aff. ¶11). Thus, it is impossible for Plaintiffs' claims to arise out of any forum related contacts of the Radd Builders.

Finally, the court must determine whether the exercise of personal jurisdiction is fair and reasonable. The factors of whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" are 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial

system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd.,* 480 U.S. at 113; *Cronin v. Washington Nat'l Ins. Co.,* 980 F.2d 663, 671 (11th Cir. 1993) (citing *Int'l Shoe Co.,* 326 U.S. at 316.))   The facts of this case make clear that exercise of personal jurisdiction over Radd Builders would offend traditional notions of fair play and substantial justice.

Litigating this case in Louisiana would not further any fundamental substantive social policies, or help to resolve the issues in a convenient and effective way.  None of the factors favor personal jurisdiction in Louisiana.  First, Radd Builders will incur a great financial burden to defend this suit in Louisiana about a Florida matter.  Second, this Court cannot have an interest in adjudicating Plaintiffs' claims, as the cause of action occurred in Florida alone – Louisiana's interest is cursory at best.  Third, since there is no connection between this dispute and Louisiana, litigating this claim in Louisiana would only create inconvenience and additional cost to the parties.  Lastly, while certain homeowners impacted by defective drywall reside in Louisiana, having this Court deciding issues between a Florida corporation and Florida citizens and a Chinese national over Florida property does not further social policies.  Forcing Radd Builders to travel from Florida in order to defend itself in this complex litigation outweighs any benefit.  There is simply no basis to bring Radd Builders into a Louisiana court to litigate matters best suited for Florida courts.  Such an outcome would offend "traditional notions of fair play and substantial justice."

C.   **GENERAL JURISDICTION**

Personal jurisdiction over a defendant that does not arise out of or relate to the

defendant's activities in the forum state is referred to as "general jurisdiction." *Helicopteros*

*Nacionales de Colombia, SA.,* 466 U.S. at 414 n.9.   For this court to exercise general

jurisdiction over Radd Builders, its contacts with Louisiana must be "continuous and

systematic." *Id.* at 808.  As Radd Builders has absolutely no contacts with Louisiana, under

no set of facts could they expect to be haled into a Louisiana court.

D.   **THE ALLEGED NATIONAL CLASS ACTION HAS NO EFFECT ON PERSONAL
     JURISDICTION.**

Plaintiffs allege jurisdiction by way of 28 U.S.C. § 1332(d)(2) and the Class Action

Fairness Act ("CAFA").  Plaintiffs' attempt to create a national class action has absolutely

no effect on whether or not this court may exercise personal jurisdiction.  *See In re Train*

*Derailment Near Amite La.,* 2004 U.S. Dist. LEXIS 1507 (E.D. La. Feb. 3, 2004)(holding

that a class certification failed to have any bearing on a defendant's motion to dismiss for lack

of personal jurisdiction. "The personal jurisdiction determination depends solely on the [the

defendant's] conduct in and contacts with the forum state.").  However, even if the court

were to hold that the national class action were to have an effect, this suit does not meet the

strict prerequisites for Rule 23. The large geographic scope creates an unprecedented and

unmanageable suit, thereby diluting any common issues of law or fact. *See Spence v. Glock,*

*Ges.m.b.H.,* 227 F.3d 308, 311 (5th Cir. 2000) (holding that because the laws of many

different states would apply, variations in the law "may swamp any common issues and

11

defeat predominance"); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (stating that where claims are to be adjudicated under the laws of the fifty states and multiple territories, "a single nationwide class is not manageable"); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1350 (7th Cir. 1995) (attempt to apply the law of different states made impossible the predominance of common questions and manageability requirements of Rule 23(b)(3)).

Plaintiffs are attempting to use CAFA, the faulty contention of a nationwide class action, and the MDL proceedings to create a backdoor to manufacture personal jurisdiction in this matter. Plaintiffs have failed to satisfy their burden of proof in justifying the Court's exercise of specific or general jurisdiction over Radd Builders in this matter. Thus, this Honorable Court is without *in personam* jurisdiction and must dismiss Radd Builders.

## II.   PLAINTIFFS' OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Each of the causes of action asserted by Plaintiffs against Radd Builders should be dismissed pursuant to Civil Rule 12(b)(6) because none state a claim upon which relief can be granted.

### A.   THE ECONOMIC LOSS RULE BARS PLAINTIFFS' TORT CLAIMS, COUNTS I, II, III, XI, XII, AND XIV.

Plaintiffs' complaint alleges that Radd Builders is liable to them pursuant to several tort theories. All of these claims are barred by the Economic Loss Rule ("ELR"). The ELR prevents parties from circumventing contractual claims through tort. *Indemnity Ins. Co. of*

*North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536, & n.1 (Fla. 2004). In Florida, the ELR arises in two contexts: "(1) the contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself." (Doc 741 Order & Reasons (January 13, 2010) at 22 (Fallon)). This Court has explained how the contractual privity ELR applies to homebuilders like Radd Builders:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

*Id.* at 30 (citation omitted) (emphasis added). Underlying the contractual privity ELR is that "contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." *Indemnity Ins. Co.*, 891 So. 2d at 536-37.

The Sparkman Plaintiffs were in privity of contract with Radd Builders. See Exhibit B. The ELR intercepts each of the Sparkman Plaintiffs' tort claims because "the alleged duty breached is derived from the contractual relationship" between the parties. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1315 (S.D. Fla. 2002) (internal marks omitted). The basis for all of their tort claims is that Radd Builders allegedly built a dwelling with defective Chinese-manufactured drywall. Because the alleged wrong is derived from the parties' contractual relationship, it cannot give rise to a tort claim.

13

Furthermore, none of the Plaintiffs can sue in tort for economic losses. Florida courts have defined economic loss in this context as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." Order & Reasons at 22 (internal marks and citation omitted). In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier. *Id.* at 1246-48.

The same reasoning applies here. Regardless of whether they are in privity with Radd Builders, the products liability strand of the ELR bars Plaintiffs from suing Radd Builders in tort for purely economic losses. As a matter of law, the rule limits them to recovering *non-*economic losses (e.g., for personal injury) and damages to property other than the house itself.[1] *See Casa Clara*, 620 So. 2d at 1247-48. Plaintiffs must therefore replead their tort claims to seek only non-economic losses.

---

[1]      Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. This Court has found that "the drywall is functioning as intended, so the structural expectations of Plaintiffs with regard to the drywall are not disappointed." Order & Reasons at 19-20.

**B.**     **PLAINTIFFS' NEGLIGENCE ALLEGATIONS (COUNT I) ARE FALSE AND IMPROPERLY PLEADED.**

Plaintiffs' negligence claim (Count I) alleges that Radd Builders owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Complaint. ¶42. The Complaint further alleges that Radd Builders had a duty to provide Plaintiffs with warnings about the drywall. *Id.* ¶45.

Besides being precluded by the economic loss rule, these allegations are false. Radd Builders did not "design," "manufacture," or "import" any drywall. Even assuming the truth of these allegations, they do not state a claim for relief. Under Florida law, a negligence claim requires the plaintiff to plead and prove that the defendant owed a duty to the plaintiff, and that the duty was breached. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiffs can allege neither.

Radd Builders owed no duty of care with respect to Plaintiffs' drywall. Under Florida law, even manufacturers, retailers and distributors have a duty to inspect or warn only when the product is considered "inherently dangerous." *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). Drywall does not fit into the narrow "inherently

dangerous" category.[2]

Further, Radd Builders cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects. *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991). The alleged defects in the drywall are plainly "latent", and Radd Builders did not have actual or implied knowledge of any such alleged defects.

Plaintiffs alleged defective drywall claim does not give rise to a negligence claim against Radd Builders. Absent an "inherently dangerous" product or actual or implied knowledge, Plaintiffs' negligence claim fails as a matter of law. The unsupported assertion that Radd Builders "knew or should have known" that the drywall would "harm" Plaintiffs (Complaint at ¶47) is nothing more than a legal conclusion, which cannot salvage a negligence claim.

---

[2]     "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category. They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted). By way of illustration, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co..*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are not "inherently dangerous." Drywall would not be an "inherently dangerous" product under Florida law.

## C.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR NEGLIGENCE PER SE (COUNT II).

Plaintiffs' negligence per se claim (Count II) should be dismissed because the Omnibus Complaint does not set forth the essential elements of this tort.  Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se for two reasons.  First, they have not identified a statute that Radd Builders allegedly violated.  The Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, violated "statutory duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes."  Complaint ¶52.  Plaintiffs do not provide how Radd Builders allegedly violated these "codes."  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage.  *Ashcroft*, 129 S.Ct. at 1949.

Further, because the "State and local Building Codes" that Radd Builders allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot establish negligence per se.  *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added).  Plaintiffs' negligence per se claim is merely a restated negligence claim, should be summarily dismissed as well.

17

## D.    PLAINTIFFS HAVE NO CLAIM IN STRICT LIABILITY (COUNT III).

Plaintiffs' strict liability claim (Count III) is based on the false premise that Radd Builders was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Complaint. ¶57. This theory is foreclosed by the economic loss rule and by Florida law.

Radd Builders cannot be sued in strict liability because it did not manufacture or distribute the allegedly defective drywall. The Complaint itself identifies Radd Builders as a "Builder." Complaint, at Exhibit B ¶159. Strict products liability is reserved for product manufacturers and distributors, and does not apply to a homebuilder. *See Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiffs could sue a contractor in strict liability, the allegedly defective drywall is not a "product" for purposes of this particular tort. Under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' home. *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007). "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems,*

*Inc.* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water and Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility). Given the foregoing, the Plaintiffs' strict liability claim must be dismissed.

E.   **PLAINTIFFS CANNOT MAINTAIN A WARRANTY CLAIM (COUNTS IV & VI).**

In Counts IV (Breach of Express Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties. These warranty claims should be dismissed for the following reasons.

1.   **AS A NON-CONTRACTING PLAINTIFF YUT SIONG CHAN CANNOT MAINTAIN A WARRANTY CLAIM OF ANY KIND BECAUSE CHAN WAS NOT IN PRIVITY OF CONTRACT WITH RADD BUILDERS.**

Plaintiff Chan's lack of privity with Radd Builders precludes any warranty claim that might be asserted. A plaintiff suing in warranty "must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. 4th DCA 2005). Plaintiff Chan never contracted with Radd Builders. Instead, Chan acquired the property from a third party. Without a showing of contractual privity with Radd Builders, the non-contracting Plaintiff Chan's express and implied warranty claims cannot survive. *See, Borchhardt v. Mako Marine Intern., Inc.*, 2009 WL 3856678, *4 (S.D. Fla. Nov. 17, 2009)(dismissing warranty claims where there was "no allegation ... to establish that there [was] privity of contract").

2.  **THE WARRANTY CLAIMS ASSERTED BY THE SPARKMAN PLAINTIFFS ARE FORECLOSED BY THE PLAIN LANGUAGE OF THEIR CONTRACT WITH RADD BUILDERS.**

Although the Sparkman Plaintiffs were in contractual privity with Radd Builders, their warranty claims also fail as a matter of law. The agreement expressly limits the duration of any builder's warranty to "one (1) year from certificate of occupancy," See Exhibit B. The Sparkman Plaintiffs have not alleged that they experienced a defect within the applicable one year warranty period. Thus, the Sparkman Plaintiffs' express warranty claims are barred by the terms of the warranty. *See Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009)(affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period")(Florida law).

3.  **PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR BREACH OF WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.**

Plaintiffs' implied warranty claims should be dismissed because the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Radd Builders. The implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor,* 714 So.2d 1178, 1179 (Fla 2d DCA1988).

Radd Builders is not bound by any implied warranties because it is not considered a merchant under Florida warranty law. Because the inclusion of drywall in Plaintiffs' structures was incidental to the construction services that Radd Builders rendered, the

implied warranties of merchantability and of fitness for a particular purpose do not apply. *See In re Sunshine-Jr. Stores, Inc.,* 240 B.R. 788, 794 (Bkrcty M.D. Fla. 1999)

Finally, the claim for implied warranty of fitness for a particular purpose cannot survive because this Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>." Order & Reasons at 23 (emphasis added). This adjudicated fact is fatal to the claim of breach of implied warranty of fitness for a particular purpose.

### F. PLAINTIFFS' BREACH OF CONTRACT CLAIM (COUNT VII) MUST BE DISMISSED.

The Non-Contracting Plaintiff Chan cannot maintain a claim for breach of contract because Chan never contracted with Radd Builders. Chan acquired the structure from a third party, leaving the only contractual remedy with that party. "It is elementary that a person not a party to nor in privity with a contract does not have the right to sue for its breach." *Cibran Enters., Inc. v. BP Prods. N.A., Inc.*, 365 F.Supp.2d 12141, 1251 (S.D. Fla. 2009).

Although the Sparkman Plaintiffs did contract with Radd Builders, they too have failed to allege a viable claim for breach of contract. The Omnibus Complaint states only that Radd Builders "contracted with the [Plaintiffs] to construct homes that would be free from defects." Complaint ¶102. This assertion is insufficient on its face, because it fails to identify the source of Radd Builders's alleged duty to construct a home "free from defects." If Plaintiffs hope to salvage their contract claim, they must "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-

21

cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached"). Until the Sparkman Plaintiffs revise their allegations, their breach of contract claim cannot survive.

### G. PLAINTIFFS CANNOT STATE A CLAIM FOR PRIVATE NUISANCE (COUNT XI).

An action for private nuisance requires the claimant to establish an injury to his or her own property in connection with the use of the real property of <u>someone else</u>. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another."). The Complaint does not allege that Plaintiffs' purported injuries resulted from real property owned by Radd Builders. To the contrary, the nuisance claim is predicated entirely on the allegation that "structures owned by Plaintiffs" are to blame. Complaint ¶ 137. This allegation does not state a claim for private nuisance. *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]"). Plaintiffs' claim for private nuisance must be dismissed.

**H.**   **PLAINTIFFS CANNOT BRING A CLAIM FOR UNJUST ENRICHMENT (COUNT XII).**

Plaintiffs' unjust enrichment claim (Count XII) fails for multiple reasons.  First the contract that the Sparkman Plaintiffs entered into with Radd Builders forecloses a quasi-contractual theory.  "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Where (as here) the plaintiff admits to the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").

The Non-Contracting Plaintiff Chan cannot maintain an unjust enrichment claim either.  The elements of an unjust enrichment claim are "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit incurred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997)(emphasis added).

Non-Contracting Plaintiff Chan's unjust enrichment claim cannot satisfy the first and fourth of these elements.  The first element is not satisfied because Chan cannot show that

he "conferred a benefit" on Radd Builders.  In fact, Chan did not pay Radd Builders a cent for the building of Chan's house, as it was obtained from a third party.  Chan, in other words, did not "enrich" Radd Builders in any sense.

As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting Radd Builders to retain whatever benefit it received for constructing the house currently owned by Chan.  Radd Builders paid a third party (subcontractor or distributor) for the drywall in question.  As the Florida appellate court explained in *Maloney v. Therm Alum Indus., Corp.*, 636 So.2d 767, 770 (Fla. 4th DCA 1994), "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit." *Id. overruled on other grounds by, Commerce Partnership*, 695 So.2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred").

Thus, not only is Chan's unjust enrichment claim barred because Chan did not "enrich" Radd Builders, it is precluded because whatever compensation Radd Builders received for the drywall was not retained "unjustly."

### I.   THE OMNIBUS COMPLAINT FAILS TO STATE A CLAIM UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (COUNT XIII).

Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA").  Complaint ¶ 148.  A FDUTPA claim comprises three distinct elements:  (1)

a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities). At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard as it alleges <u>no specific facts</u> in support of Plaintiffs' FDUTPA claim. It does not identify a single instance in which Radd Builders deceived Plaintiffs or treated them unfairly. Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b). *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[3]

Plaintiffs' failure, however, is not merely one of pleading. Their FDUTPA claim must be dismissed with prejudice because "actual damages" are not available to them. *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Radd Builders provided a completed home, Plaintiffs can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Radd Builders actually provided and the services that Radd Builders was required to provide. *See Collins v. Daimler-Chrysler Corp.*,

---

[3]      Plaintiffs' FDUTPA claim would be inadequately pleaded even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly'' and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiffs cannot make this showing. There is zero evidence that the manner in which Radd Builders <u>constructed</u> the houses was in any way responsible for the allegedly defective drywall. The quality of construction is simply not an issue in this lawsuit, particularly after this Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claim with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of their claim. Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995). Count XIII must be dismissed.

### J. PLAINTIFFS' CLAIM FOR EQUITABLE RELIEF AND MEDICAL MONITORING (COUNT XIV) CANNOT GO FORWARD AGAINST RADD BUILDERS.

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV). This catchall-type claim seeks, among other things, an order that

27

Radd Builders "buy back or rescind" its contract and "create, fund, and support a medical monitoring program." Complaint ¶155. This claim must be dismissed.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Since each of Plaintiffs' substantive claims must be dismissed, so too should their derivative claim for injunctive relief. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support to an injunction, the Court should dismiss the injunction claim because Plaintiffs have failed to allege an inadequate legal remedy or irreparable harm. Injunctions under both federal and Florida law require these elements. *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted). Plaintiffs do not explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most

28

notably, for "compensatory and statutory damages" – are inadequate and entitle them to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law even permits this cause of action. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five appellate courts in Florida) has expressly recognized a right to medical monitoring. It is unclear whether these Plaintiffs can pursue this peculiar legal theory.

The medical monitoring allegations in the Omnibus Complaint do not state an actionable claim. As articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the costs of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Omnibus Complaint does not properly allege these elements. Instead, Count XIV sets forth a series of legal conclusions – *e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct" – with no factual detail. Plaintiffs fail to identify, for example, any medical condition (latent or otherwise) supposedly caused by their drywall; nor do they identify a monitoring procedure for that supposed condition. Thus, Plaintiffs would have this Court speculate about their imaginary ailments and the means for monitoring them.

The Complaint does not state a claim for medical monitoring. Rather, it states a series of legal conclusions, and those "do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate). The deficiencies highlighted above make the final Count subject to dismissal, on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring ... is a separate cause of action with seven specific elements the plaintiffs must establish ..., including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct.

30

Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

Finally, the claims for medical monitoring asserted by the Sparkman Plaintiffs are prohibited by the economic loss rule, as they were in direct privity with Radd Builders. *See* Contract (Exhibit B).

## III.   ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404 & 1406.

In the alternative to dismissal, the Court may transfer this action to any district in which plaintiffs could have filed this action. 28 U.S.C. § 1404 provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

> (b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

> (c) A district court may order any civil action to be tried at any place within the division in which it is pending.

31

(d) As used in this section, the term "district court" includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.

Pursuant to 28 U.S.C. § 1406(a), the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Plaintiffs could have brought this action in the Middle District of Florida and Radd Builders requests this honorable court transfer the action against Radd Builders to the Middle District of Florida.

## CONCLUSION

For the reasons set forth above this Court should dismiss Plaintiffs complaint against Radd Builders or in the alternative transfer this action to the Middle District of Florida.

KREBS, FARLEY & PELLETERI, P.L.L.C.

*/s/ Charles B. Long*
CHARLES B. LONG (#22824)
THOMAS H. PEYTON (#32635)
400 Poydras Street, Suite 2500
New Orleans, Louisiana   70130
Telephone:   504-299-3570
Facsimile:   504-299-3582
E-mail:      clong@kfplaw.com
E-mail:      tpeyton@kfplaw.com
ATTORNEYS FOR DEFENDANT
RADD BUILDERS, INC.

32

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of November, 2011, this document has been served on Plaintiffs' Liaison Counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller by U.S. Mail and e-mail and e-mail upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/*Charles B. Long*
CHARLES B. LONG