UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**THIS DOCUMENT RELATES TO:  All Cases**

PEOPLE'S REPUBLIC OF CHINA
CITY OF TAI'AN

<u>**DECLARATION OF JIA TONGCHUN**</u>

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

I, JIA TONGCHUN, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1.      I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts.  My native language is Chinese.  I do not understand, speak, read, or write English.  I signed a Chinese version of this Declaration as well as the English version of this Declaration after it was translated for me by a translator with the law firm of Hogan Lovells International LLP ("Hogan Lovells").

2.      I am Chairman of the Board and General Manager of Taishan Gypsum Co., Ltd. ("TG").

1

3.     I understand that this Court issued an Order dated September 9, 2011, wherein TG and Tai'an Taishan Plasterboard Co., Ltd. ("TTP") were ordered to take certain actions in relation to personal jurisdiction discovery. A Chinese-speaking attorney with Hogan Lovells has explained to me in detail the contents of the Court's Order, as well as the actions that TG and TTP have been ordered to undertake with respect to its discovery obligations. I understand these obligations, and have taken a number of steps to ensure that TG and TTP are fully compliant with the Court's Order.

4.     Between October 19 and October 20, 2011, two attorneys from Hogan Lovells visited TG. While there, the Hogan Lovells attorneys had full access to any TG and TTP personnel or physical and electronic files they identified as potentially containing documents within the scope of the Court's September 9 Order (the "Order"). As a result of these document search activities, described below in more detail, TG and TTP are now producing all of the additional responsive documents they have located.

**DISCOVERY REGARDING AFFILIATED COMPANIES**

5.     In accordance with the Order, TG and TTP have searched for and are producing the additional documents in its possession, custody or control related to TG's relationship with BNBM, and other entities upstream and downstream to BNBM ("Other Entities"). For purposes of this category of documents, TG and TTP searched for documents related to the time period between 2005 and 2008, which encompasses and extends beyond the time period in which either TG or TTP produced or sold drywall cut to dimensions commonly used in the U.S.

6.     Neither TG nor TTP communicated with BNBM on a regular basis. TG and TTP rarely, if ever, communicated with the Other Entities. The personnel at TG who had contact with BNBM were

2

limited primarily to personnel in the TG finance department, Zhang Jianchun and me. BNBM had no role in the day-to-day operations of TG or TTP.

7.     Prior to the Order, TG and TTP produced their entire corporate registry files which included any documents related to communications with BNBM. The corporate registry files did not reflect any communications with the Other Entities. During October 2011, the attorneys from Hogan Lovells conducted the following additional searches for documents and materials related to TG and TTP's relationship with BNBM or Other Entities:

    a.    The personal internet e-mail accounts of:
1.    Jia Tongchun, TG's General Manager (email address: thbmjtc@163.com);
2.    Zhang Jianchun, TG's Secretary of the Board of Directors (email address: zjcth001@163.com);
3.    Wang Lifeng, TG's Top Deputy Manager of Finance Department (email address: thwlf@126.com);
4.    Yang Jun, TG Deputy Manager of Finance Department (email address: sdtayj@163.com);
5.    Peng Shiliang, TTP's General Manager (email address: thlcpsl@126.com);
6.    Song Qinghai, TTP's Production Manager (email address: soh8811966@163.com);
7.    Fu Tinghuan, Peng Wenlong's direct supervisor (email address: futinghuan111@163.com);
8.    Yuan Yamin, TG's International Trade sales representative (email address: sdth2008@hotmail.com)
9.    You Zedong, TG's International Trade sales representative (email address: thbm0897@163.com).

    b.    Zhang Jianchun's office and files, as the Secretary of the Board of Directors;
    c.    Jia Tongchun's office and files;
    d.    Wang Lifeng's office and files;
    e.    The TG legal department's office and files.

8.     The document searches described in the previous paragraph yielded approximately 112 pages of additional documents related to TG or TTP's relationship with BNBM. These documents included financial statements and reports and e-mails. This relatively modest number of additional

3

documents was expected.  Apart from periodic reports, discussed more fully below, TG and BNBM mostly communicated by telephone.

9.      The additional responsive documents that TG and TTP are producing include all financial information that TG provided to BNBM from 2005 through 2008.  In addition, TG is producing the written reports provided to TG's shareholders (including BNBM) at the TG shareholders' annual meetings during this period.

10.     TG is also producing all available quarterly, mid-year and annual audited financial figures provided to BNBM for 2005 through 2008.  TTP did not send reports to BNBM.

11.     TG holds one official shareholders' meeting and one official directors' meeting per year, as well as additional ad hoc directors' and shareholders' meetings.  TG searched for but did not locate any additional documents related to TG directors' meetings or shareholders' meetings where BNBM was discussed.  Most important strategic issues such as major investments are discussed first at directors' meetings, and then, if necessary, board resolutions are submitted at the shareholders' meeting for approval.  Hogan Lovells searched for and TG is producing all board resolutions and shareholder resolutions discussing BNBM that have been located.

12.     Neither TG nor TTP located any documents reflecting reports to China National Building Materials Co., Ltd. ("CNBM") or Other Entities during 2005 through 2008.

**Documents in the Possession, Custody or Control of BNBM**

13.     In accordance with the Order, TG has attempted to obtain certain additional documents that may relate to TG's relationship with BNBM directly from BNBM, including BNBM's annual reports, BNBM's government filings, BNBM's foreign government filings, BNBM's organizational charts, and BNBM's board minutes.  TG does not have any of these documents in its possession.

4

14.    On October 10, 2011, on behalf of TG, I sent a letter to Wang Bin, Chairman of the Board of Directors of BNBM, and Chen Yu, General Manager of BNBM, describing the Court's Order and listing the categories of documents sought, and requesting that BNBM produce such documents within 30 days of receipt of the letter.  A true and correct copy of my October 10 letter is attached hereto as **Exhibit A**.  To date, BNBM has not responded to TG's letter or otherwise communicated with TG regarding its document request.

15.    On November 5, 2011, I further contacted Chen Yu of BNBM by telephone to try and persuade BNBM to produce documents that have been ordered by the Court.  Mr. Chen said that BNBM would not be able to produce the documents to TG.

16.    BNBM is a shareholder of TG.  The two companies are independent legal entities incorporated under the laws of the People's Republic of China ("PRC").  Other than BNBM's status as a shareholder of TG, the two companies share no other legal relationship under PRC law.  It is my understanding that under Chinese law, TG has no ability or right to obtain access to BNBM's documents, files, or records.  Further, it is my understanding that BNBM's internal procedures and corporate governance documents do not provide for a subsidiary to obtain BNBM's documents, files or records.

5

## ADDITIONAL SEARCHES OF ELECTRONIC SOURCES

17.     In accordance with the Order, TG and TTP expanded its prior searches for electronically stored information ("ESI") responsive to the plaintiffs' prior document requests or within the scope of the Order.

18.     During their visit in October 2011, the Hogan Lovells attorneys searched the computers and personal internet e-mail accounts of TG's and TTP's supervisory employees and directors for additional responsive documents:

      a.    All of TG's supervisory directors and Secretary of the Board of Directors:
          1.    Jia Tongchun;
          2.    Zhang Jianchun;
      b.    Emails and files of members of TG's Finance Department:
          3.    Wang Lifeng;
          4.    Yang Jun;
      c.    Emails and files of supervisors of TG's and TTP's Sales Departments:
          5.    Fu Tinghuan
          6.    Song Qinghai
          7.    Peng Shiliang
      d.    Emails and files of members of TG's International Trade Department:
          8.    Yuan Yamin
          9.    You Zedong

19.     These searches yielded approximately 19 pages of additional responsive documents, including e-mails.  The relatively small number of additional documents located is due the following factors:

      A.    TG and TTP have already produced 25,564 pages of documents in response to the plaintiffs' requests for documents, including approximately 4,700 pages of e-mails.

      B.    Neither TG nor TTP have a company-wide e-mail system or server.  Thus, e-mail searches were limited to those employees who used personal internet e-mail accounts for business purposes.  As a rule, TG employees did not store e-mails

locally on the hard drives of their computers.  Hogan Lovells confirmed this by also searching the employees' hard drives.

C.    TG or TTP employees involved in sales may have had documents such as product pictures, introductions to products and form contracts produced on their computers prior to when they were replaced in 2009.  No such documents were found on their current computers.

D.    During 2005 through 2008, TTP executives, Song Qinghai and Peng Shiliang, did not use email.  Thus, there are no responsive e-mails from them.

E.    There were no responsive e-mails or documents within the files or on the computer of Fu Tinghuan.

F.    The TG and TTP Sales Departments may have sometimes used MSN, QQ, mobile phone text messaging or other instant messaging to contact customers, although most such communications were by e-mail.  These forms of communications would have occurred on the employees' individual computers or personal devices with limited capacity for saving them.  Hogan Lovells attorneys searched the mobile telephones and instant messaging programs (such as QQ or MSN) of various members of the Sales Department (Peng Wenlong, Yuan Yamin, Che Gang and You Zedong) and confirmed that there is at the present time no responsive information on the employees' devices.

20.    We also contacted the third-party website design firm used by TG and confirmed that they had no documents or materials that TG and TTP have been asked to produce.

7

21.     The additional searches conducted by Hogan Lovells of TG and TTP's hard copy and electronic files also included searches for additional documents in any way related to marketing and sales efforts that may have related to the United States.  All additional documents falling within this category are being produced.

22.     Finally, in accordance with the Order, Hogan Lovells searched for additional documents related to VAT insofar as they might concern TG or TTP products that may have been transported to the U.S.  I understand that the Court has ordered TG and TTP to produce VAT-related documents.  Insofar as they might relate to sales of products that may have been transported to the U.S., TG was able to locate a copy of the license issued by the local authorities to TG for the tax exemption and is producing those additional documents.  TG also located additional VAT invoices and is producing those as well.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 16, 2011.


_____
Jia Tongchun
General Manager
Taishan Gypsum Co. Ltd.


8

路易斯安那州东部区
美国地区法院

关于：中国生产的石膏板产品责任诉讼　　＊　跨地区诉讼第 2047 号
　　　　　　　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　　　　　＊　第 L 部门
　　　　　　　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　　　　　＊　Eldon E. Fallon 法官
　　　　　　　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　　　　　＊　Joseph C. Wilkinson, Jr. 司法官
　　　　　　　　　　　　　　　　　　　＊

＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊

本文件涉及所有案件

中华人民共和国山东省泰安市

### 贾同春的声明

本声明系根据并依照《美国法典》第 28 卷第 1746 条发表。

本人贾同春，根据美利坚合众国法律项下的伪证处罚规定，声明以下陈述真实、准确：

1.　本人年龄超过十八（18）岁，有资格对本声明所述事宜作证，并且本人知悉该等事实。本人的母语为中文。本人不知晓英语，亦不掌握英语的口语、阅读和书写。本声明的中英文版本均经由本人签署，其中，英文版本系经霍金路伟律师事务所（"霍金路伟"）的译员翻译后经由本人签署。

2.　本人系泰山石膏股份有限公司（"泰山石膏"）的董事长兼总经理。

3.　本人知悉法院于2011年9月9日签发命令，要求泰山石膏和泰安市泰山纸面石膏板有限公司（"泰山纸面石膏板"）就属人管辖权披露采取特定行动。霍金路伟有一名说中文的律师已向本人详细解释法院命令的内容以及法院命令泰山石膏和泰山纸面石膏板就披露

义务所采取的行动。本人理解上述义务并已采取大量行动确保泰山石膏和泰山纸面石膏板全面遵守法院的命令。

4.　　2011年10月19日及20日，霍金路伟两名律师前往泰山石膏。期间，霍金路伟律师全面接触其确定可能拥有法院于9月9日签发的命令（"命令"）范围的文件的泰山石膏和泰山纸面石膏板人员或含有该等文件的书面和电子文档。通过下列文件检索（详见下文），泰山石膏和泰山纸面石膏板在本次出示其所收集到的所有额外回应文件。

**有关隶属公司的证据披露**

5.　　根据命令，泰山石膏和泰山纸面石膏板已检索其所拥有、保管或控制的与泰山石膏和北新建材之间的关系以及泰山石膏与北新建材上下游实体（"其他实体"）之间关系有关的额外文件，并在本次出示。为获取这一类别的文件，泰山石膏和泰山纸面石膏板检索了2005年至2008年期间有关的文件，该时段涵盖并超出了泰山石膏或泰山纸面石膏板生产或出售普遍在美国使用的尺寸的石膏板的时段。

6.　　泰山石膏或泰山纸面石膏板均未与北新建材定期通讯。泰山石膏和泰山纸面石膏板亦甚少与其他实体通讯。与北新建材联系的泰山石膏员工主要限于泰山石膏财务部的员工、张建春和本人。北新建材并不参与泰山石膏或泰山纸面石膏板的日常运营。

7.　　在命令签发前，泰山石膏和泰山纸面石膏板已出示了其完整企业工商档案，其中包括与北新建材通讯有关的任何文件。企业工商档案并未反映与其他实体的任何通讯。2011年10月，霍金路伟的律师进一步进行了与泰山石膏和泰山纸面石膏板与北新建材或其他实体之间关系有关的文件和资料检索：

　　a.　　下列人等的个人因特网电子邮件账户：
　　　　1.　　贾同春，泰山石膏总经理（电子邮箱地址：thbmjtc@163.com）；

2.   张建春，泰山石膏董事会秘书（电子邮箱地址：zjcth001@163.com）；

3.   王力峰，泰山石膏的财务部常务副经理（电子邮箱地址：thwlf@126.com）；

4.   杨军，泰山石膏的财务部经理（电子邮箱地址：sdtayj@163.com）；

5.   彭世亮，泰山纸面石膏板总经理（电子邮箱地址：thlcpsl@126.com）；

6.   宋庆海，泰山纸面石膏板生产经理（电子邮箱地址：soh8811966@163.com）；

7.   付廷环，彭文龙的直接上司（电子邮箱地址：futinghuan111@163.com）；

8.   袁亚民，泰山石膏国际贸易部销售人员（电子邮箱地址：sdth2008@hotmail.com）；

9.   尤泽东，泰山石膏国际贸易部销售人员（电子邮箱地址：thbm0897@163.com）；

b.   董事会秘书张建春的办公室和文档；

c.   贾同春的办公室和文档；

d.   王力峰的办公室和文档；

e.   经泰山石膏法规部确认，不存在其他相关文件。

8.     上一段所述的文件搜索发现了长达约112页有关泰山石膏或泰山纸面石膏板与北新建材之间关系的额外文件。这些文件包括财务报表和报告及电子邮件。上述额外文件的相对适中数量在预料之中。除了定期报告（详见下文）之外，泰山石膏和北新建材主要通过电话沟通。

9.     泰山石膏和泰山纸面石膏板本次出示的额外回应文件包括泰山石膏自2005至2008年期间向北新建材提供的所有财务信息。此外，泰山石膏本次还出示了上述期间在泰山石膏年度股东大会上向泰山石膏的股东（包括北新建材）提供的书面报告。

10.    泰山石膏本次还出示2005年至2008年期间向北新建材提供的季度、半年度和年度经过审计的财务数据。泰山纸面石膏板未曾向北新建材发送报告。

11.    泰山石膏每年举行一次正式股东大会、一次正式董事会以及若干次临时股东会和若干次临时董事会。泰山石膏检索了与泰山石膏董事会或股东会相关的提到过北新建材的文件，但并未发现任何额外文件。重大投资事项等绝大多数重要战略事务都是首先在董事会议上讨论，如

有必要，则将形成的董事会决议提交股东大会批准。经霍金路伟检索后，泰山石膏本次出示了已被搜索到的所有讨论到北新建材的泰山石膏董事会决议和股东会决议。

12.  泰山石膏或泰山纸面石膏板均未发现任何反映其在2005年至2008年期间向中国建筑材料集团有限公司（"中国建材"）或其他实体汇报的文件。

**为北新建材所拥有、保管或控制的文件**

13.  依据命令，泰山石膏力图直接从北新建材处取得与泰山石膏和北新建材关系可能相关的部分额外文件，其中包括北新建材的年报、北新建材向政府提交的申报材料、北新建材向外国政府提交的申报材料、北新建材的组织结构图以及北新建材的董事会会议记录。泰山并不拥有任何该等文件。

14.  本人于2011年10月10日代表泰山石膏向北新建材董事会董事长王兵及北新建材总经理陈雨发出函件，说明法院的命令，列明所寻找文件类型，并要求北新建材在收到函件后三十日内出示该等文件。本人10月10日函件的真实、准确复本随附为**附件A**。迄今，北新建材尚未对泰山石膏的函件作出回复，亦未以其他方式就泰山石膏的文件要求与泰山石膏通讯。

15.  本人后又于2011年11月5日电话联络北新建材的陈雨，试图说服北新建材出示法院命令要求的文件。陈总经理回复北新建材无法向泰山石膏提供这些文件。

16.  北新建材是泰山石膏的股东。北新建材和泰山石膏均为依照中华人民共和国（"中国"）法律组建的独立法人实体。除北新建材是泰山石膏的股东外，这两家公司在中国法律项下再无其他法律关系。据本人理解，依照中国法律，泰山石膏既无能力亦无权利取得北新建材文件、文档或记录。另外，据本人理解，北新建材的内部程序及公司治理文件均未有子公司取得北新建材文件、文档或记录的规定。

**电子资源额外检索**

17.    依照命令，泰山石膏和泰山纸面石膏板扩大了其之前应原告之前文件要求或命令范围内的电子存储信息（"ESI"）的检索范围。

18.    在2011年10月访问期间，霍金路伟律师对泰山石膏和泰山纸面石膏板监管员工及董事的计算机及个人因特网电子邮件账户进行了检索，寻找额外回应文件：

  a. 泰山石膏所有承担管理职能的董事及董事会秘书：
    1. 贾同春
    2. 张建春
  b. 泰山石膏财务部人员的电子邮件和文档：
    3. 王力峰
    4. 杨军
  c. 泰山石膏和泰山纸面石膏板销售部主管的电子邮件和文档：
    5. 付廷环
    6. 宋庆海
    7. 彭世亮
  d. 泰山石膏国际贸易部销售人员的电子邮件和文档：
    8. 袁亚民
    9. 尤泽东

19.    该等检索产生了约19页额外回应文件，其中包括电子邮件。所发现额外文件数量较少的原因如下：

  A. 依照原告的文件提供要求，泰山石膏和泰山纸面石膏板已经出示了25,564页文件，其中包括约4,700页电子邮件。

  B. 泰山石膏和泰山纸面石膏板均无全公司统一的电子邮件系统或服务器。因此，电子邮件检索仅限于在业务中使用个人因特网电子邮件账户的员工。依照规定，泰山石膏雇员并不在计算机硬盘上存储电子邮件。霍金路伟还通过检索雇员的硬盘确认了这一点。

C. 泰山石膏或泰山纸面石膏板涉及销售业务的雇员可能拥有其计算机在2009年更换前所制作的产品图片、介绍和格式合同。他们当前计算机上并未发现该等文件。

D. 自2005年至2008年期间，泰山纸面石膏板的高管宋庆海和彭世亮并不使用电子邮件，因此并无两人的相应电子邮件。

E. 付廷环的文档或计算机中并无相应电子邮件或文件。

F. 尽管大部分该等通讯均通过电子邮件，泰山石膏和泰山纸面石膏板的销售部可能有时使用MSN、QQ、手机短信或其他即时联络手段联络客户。上述形式通讯发生在员工个人电脑或私人设备存储能力有限情况下。霍金路伟律师对销售部人员（彭文龙、袁亚民、车刚及尤泽东）的手机和即时联络程序（例如QQ、MSN）检索后确认，当前该等员工设备上并无相应信息。

20. 我们还联系了为泰山石膏提供网页设计服务的第三方设计公司，该第三方设计公司确认他们没有任何有关泰山石膏和泰山纸面石膏板被要求提供的相关文件或资料。

21. 霍金路伟对泰山石膏和泰山纸面石膏板的纸质文件及电子文档所进行的额外检索，还包括对任何可能涉及到与针对与美国相关的营销和销售举措相关的额外文件检索。所有属于这一类型的额外文件均在本次出示范围。

22. 最后，依照命令，霍金路伟检索了与泰山石膏或泰山纸面石膏板有可能被运到美国产品可能有关的增值税的相关额外文件。本人理解，法院已命令泰山石膏和泰山纸面石膏板出示增值税相关文件。由于增值税相关文件可能与有可能被运到美国的产品相关，泰山石膏找到当地有关政府部门向泰山石膏签发的免税许可的复本，并在本次出示该等额外文件。此外，泰山石膏还找到了额外的增值税发票，在本次出示该等额外增值税发票。

本人根据美利坚合众国法律项下的伪证处罚规定，声明上述内容真实、准确。

签署于 2011 年 11 月 16 日。

贾同春
泰山石膏股份有限公司
总经理