# WYMAN STOKES BUILDER, INC.
# CITRUS CREEK AT VERANDAH
## LOT PURCHASE AND CONSTRUCTION CONTRACT

DATED: _____February 23_____, 2006   *(DG/KG)*

CONTRACT for lot purchase and new construction between

Name _Glenn & Kay Groves_

Address _10804 Lockland Road  Potomac, MD 20854_,

hereinafter referred to as "BUYER" and WYMAN STOKES BUILDER, INC., 12951 METRO PARKWAY, SUITE 8, FORT MYERS, FLORIDA 33912 hereinafter referred to as "SELLER", "BUILDER" or "CONTRACTOR" for construction of a Single Family Residence and lot purchase in Citrus Creek at Verandah.

Buyer to Purchase: VERANDAH UNIT ELEVEN, LOT _19_, BLOCK B,

Street Address: _1354b_ Citrus Creek Court, Fort Myers, Florida 33905

Contractor to build the _Hamlin_ Model

    In consideration whereof, Seller agrees to convey title to the Buyer by general warranty deed, free and clear of all liens and encumbrances except: Taxes and assessments for year of closing, restrictions and easements shown on the plat or of record, and zoning, restrictions, prohibitions and other requirements imposed by governmental authority.

    *SEE ADDENDUM DG/KG*  Taxes, insurance, interest, assessments, rents and other expenses or revenues of said Property shall be paid or pro-rated as of the closing date. In the event the title shall be proven to be unmerchantable, the Seller shall have a reasonable period of time after notification thereof within which to cure defects in title, and this sale shall be closed within 15 days after notice of such curing to the Buyer. Upon Seller's failure to correct unmerchantability, the earnest money deposit shall be returned to the Buyer upon demand, and all rights and liabilities arising hereunder shall terminate, or upon request of the Buyer, Seller shall deliver the title to Buyer in its existing condition.

    Time is of the essence in this agreement. *DG/KG* Subject to the aforesaid curative period, this sale shall be closed on or before _MAR 23 06_ 2006, otherwise, the earnest money deposit shall be retained by the Seller as liquidated and agreed damages, and the parties hereto shall be relieved of all obligations hereunder. In the event that this sale shall not close on said date, *DG/KG* subject to the aforesaid curative period, by reason of Seller's default, Buyer may seek return of the earnest money deposit and shall have no other remedies at law or in equity.

    Buyer shall pay up to one and a half percent (1.5%) of the full purchase price for title insurance and documentary stamps. Seller shall pay the amount in excess of one and a half

Buyer's Initials _DG  mKG_

EXHIBIT "D"  tabbies

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 5

6. BUILDER warrants and represents to BUYER as follows:
   A. That BUILDER is a properly licensed building contractor.

   B. That BUILDER will engage only subcontractors that are properly licensed in their respective trades.

   C. That BUILDER is a Florida Corporation in good standing.

   D. That BUILDER will complete construction in a good workmanlike manner. BUILDER shall guarantee for a period of one year from issue of the Certificate of occupancy, against defective materials and workmanship. This guarantee includes, without limitations, the building, roof, plumbing, electrical system and the heating, ventilation and air conditioning system.

The foregoing warranties and guarantees do not cover non-structural settlement cracks, fading and/or discoloration of paint or wood, or pitting or imperfections that may result from normal settling, normal shrinkage or drying out, or which may result from the negligence, abuse or lack of normal maintenance by BUYER. The foregoing warranties and guarantees also exclude consequential damages.

BUILDER shall assign to BUYER all warranties applicable to the premises received from suppliers, subcontractors and material men, and any other warranties pertaining to the premises, appliances, fixtures and systems. All workmanship shall conform to the guidelines found in the publication *Residential Construction Performance Guidelines - For Professional Builders and Remodelers,* National Association of Home Builders, 1996. If an item is not covered in that publication, standard industry practice shall govern.

7. PURCHASE PRICE: BUYER will pay CONTRACTOR the sum of $ 633,725. XX (U.S. Dollars) in the following manner:

   A. 10% down payment due at Contract by check subject to collection $ 63,372. XX

   Less Initial $10,000 reservation deposit $ N/A

   Balance of Down Payment payable to **Fidelity National Title Ins.** $ 570,353. XX

   B. BUYER OR BUYER's lender to fund a total of 25% of total purchase price to the BUILDER when title is conveyed to the BUYER.

   C. BUYER or BUYER's lender will fund 10% of the balance of the contract at lot acquisition as a construction deposit.

   D. Contract balance shall be paid on the construction progress in accordance with the draw schedule approved by BUYER's lending institution. In the event that owner is not financing construction through a lending institution, the draw schedule set

Buyer's Initials ____ mkg

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 3

IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 689.26, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST.   ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT.   BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

VERANDAH WEST COMMUNITY DEVELOPMENT DISTRICT MAY IMPOSE AND LEVY TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY.   THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT, AND ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT.   THESE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND ALL OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS, AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY THE LAW. THE GOLF CLUB IN VERANDAH IS A PRIVATE MEMBERS' ONLY FACILITY TO WHICH PURCHASING A LOT DOES NOT PROVIDE A RIGHT OF ACCESS OR USE.

### SALES DISCLOSURE TO
### PROSPECTIVE BUYERS

Upon the closing of the purchase of your home, additional costs may be borne by you in the form of closing costs.  A list of the known major cost items are:

1.   Survey ($650.00)
2.   Insurance
3.   Service Fee (or Origination Fee) on any New Mortgage
4.   Intangible Tax
5.   Documentary Stamps on New Note
6.   Documentary Stamps on Deed
7.   Title Insurance
8.   Recording Fees on Mortgage and Deed
9.   Credit Report
10.   Mortgage Company's Attorney Fees
11.   Appraisal Fee
12.   Real Estate Tax Proration
13.   Community Mailbox ($615.00)

Buyer's Initials

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 4

Buyers acknowledge (by checking line) that they have:

    *DD/kg* Received a copy of the Homeowners Manual, which includes all recorded documents for Verandah and Citrus Creek

WHEREAS, the BUYER will be the OWNER in fee simple of certain premises described above and hereinafter called the "**BUILDING SITE or PROPERTY**" and BUYER desires BUILDER to construct a certain building on the premises.

NOW THEREFORE, for and in consideration of the mutual promises herein contained, the parties agree to as follows:

1.     BUILDER shall construct upon the building site a building and related improvements in accordance with the Plans prepared by Sater Group. The residence will have craftsmanship equal to or better than that used in the two model homes in Orangetree Bend at Verandah.

2.     Subject to the provisions of this Agreement. The BUILDER agrees to use its best effort to deliver the completed residence specified herein with 270 days (9 months) from the date of permit or from the date of the Notice of Commencement, whichever occurs last. All times stated herein are of the essence.

3.     BUYER shall grant the BUILDER exclusive possession of the PROPERTY during the course of construction and until the BUILDER is paid in full in accordance with the terms of this CONTRACT. BUILDER shall deliver possession back to BUYER when construction is completed and BUILDER has been paid in full. BUYER shall not occupy or permit others to occupy the property until BUILDER has delivered possession back to BUYER. BUYER may visit the property for purpose of inspection, but shall not direct or interfere with workers or subcontractors.

*See Add. DD/kg*

4.     BUILDER shall provide general administration of construction and shall be BUYER'S representative. BUILDER shall be responsible for arranging and coordinating the work and supervision and inspection of progress. BUILDER may perform the work with BUILDER'S own forces and may subcontract portions of or all of the work at BUILDER'S sole discretion.

5.     If the price or any part thereof is to be financed by a third party loan, this contract is conditioned upon BUYER obtaining a firm commitment for the loan within 10 days. Should BUYER not obtain such loan within 10 days, either party may rescind this CONTRACT, provided however, that BUILDER shall be reimbursed by BUYER for any costs incurred by BUILDER for design fees, clearing and filling, permit application, and etc. BUYER shall close on loan by *March 23* 2006.

Buyer's Initials *DD mkg*

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 6

forth on Exhibit B shall apply. Any payment not made within 5 days of the date requested by BUILDER without cause shall accrue interest at the highest rate allowable under Florida law from the date of the request. The BUYER hereby waives the right to have the deposit held in escrow pursuant to Florida law.

8.      Construction to be completed within the time set forth in Paragraph No. 2, herein unless delayed by strikes, act of God, material or labor shortages, or other causes beyond control of CONTRACTOR. Closing and settlement of the CONTRACT shall be within five (5) days of notice by the BUILDER to the BUYER that the premises are ready for occupancy and the Certificate of Occupancy has been obtained and CONTRACTOR has given BUYER an Affidavit of "No Liens" and other documents and releases as required by Section 713.06 (3) (d), Florida Mechanics Lien Law. BUYER shall not unreasonably delay closing due to minor corrections or touchup work that does not interfere with occupancy. Said minor work shall be listed on a Compliance List, signed by the BUYER and BUILDER and will be scheduled to be completed within thirty (30) days of the date of the Compliance List. It is understood that certain "punch list" items may remain at the time of final settlement, and such items will be promptly and responsibly handled by the CONTRACTOR as a warranty item. It is further understood, additional items may arise during the warranty period, which may be added to the original list. Notwithstanding, final settlement will take place without such lists and such lists will be honored in accordance with the terms of the warranty. Whereas this written assurance is provided, the BUYER shall not be entitled to hold-backs or escrows, pending completion of "punch list" or warranty items.

*see Addendum* 9.      Expenses of temporary electric service during construction will be borne by the BUILDER. This CONTRACT has included back-to-back power hookups. Any additional fees JA/MK charged by the power company to bring power to the home will be paid by the BUYER.

10.     This agreement shall be binding upon the heirs, executors, administrators, and assigns of the parties. Neither party shall assign this CONTRACT without the prior written consent of the other party.

11.     In any arbitration or litigation between the parties arising from the CONTRACT, the prevailing party shall be awarded its reasonable attorney's fees, including bankruptcies and appeals against the non-prevailing party.

12.     The price set forth above is based upon BUILDER having immediate access to the PROPERTY. It is further based upon the BUILDER being authorized to commence construction within thirty (30) days from the date hereof and thereafter being able to prosecute the work continuously until completion. The price and time of performance shall be subject to adjustment if BUILDER is not authorized to begin construction within thirty (30) days, if BUILDER is prevented from prosecuting the work continuously, or if unforeseen site conditions, including sub-surface conditions or the absence of temporary utilities delay commencement and prosecution of the work or if any governmental authority requires additions or changes to the plan or

Buyer's Initials _XXX_ _mkg_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 7

specifications. BUYER agrees to promptly make selections of materials and finishes upon request by BUILDER. In the event BUYER unreasonably delays in making such selections, the price and time of performance shall be subject to adjustments. The price and time of performance may, at the **BUILDERS** sole discretion, be adjusted for abnormal and spontaneous increases in the cost of materials and/or labor resulting from hurricanes, tornadoes, floods, civil disorder, labor disputes or other events beyond the control of **BUILDER**.

13.     A waiver of a breach of any of the terms or conditions hereof shall not be construed as a waiver of any subsequent breach. Any consent to delay in the performance of CONTRACTOR of any obligations shall be applicable only to the particular transaction to which it relates, and it shall not be applicable to any other obligations or transactions. Delay in the enforcement of any remedy in the event of a breach of any term or condition hereof, or in the exercise by either party of any right hereunder, shall be construed as a waiver.

14.     The BUYER may terminate this CONTRACT prior to its completion and without prejudice to any other remedy BUYER may have, in the event CONTRACTOR files bankruptcy, becomes insolvent, or defaults in performance of any provision herein or fails to carry out the construction in accordance with the provisions of this CONTRACT, the plans and specifications after receipt of five (5) days written notice of same from BUYER.

15.     CONSTRUCTION INDUSTRIES RECOVERY FUND: Payment may be available from the Construction Industries Recovery Fund if you lose money on a project performed under contract, where the loss results from specified violations of Florida Law by a state licensed contractor. For information about the Recovery Fund and filing a claim, contact the Florida Construction Industry Licensing Board at the following telephone number and address:

Construction Industry Licensing Board:     Phone:  850-487-1395
1940 North Monroe Street, Northwood Centre
Tallahassee, Florida 32399

# ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT

# AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY

Buyer's Initials

SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS OR NEGLECTS TO MAKE OTHER LEGALLY REQUIRED PAYMENTS, THE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY. FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX AND IT IS RECOMMENDED THAT WHENEVER A SPECIFIC PROBLEM ARISES, YOU CONSULT AN ATTORNEY.

16.    This CONTRACT constitutes the entire agreement between the parties and supersedes any prior oral negotiations or representations.  This CONTRACT may only be modified or amended in writing signed by the parties.

17.    Any notice or other communications required or permitted hereunder shall be sufficiently given if sent by registered or certified mail, postage prepaid, return receipt, addressed to the parties at the addresses shown herein, or at such other address as may be furnished in writing by either party to the other, and shall be deemed to have been given as of the date so deposited in the United States mail.

18.    This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

19.    **CDD Disclosure.** Verandah West Community Development District may impose and levy taxes or assessments, or both taxes and assessments on this property. These taxes and assessments pay the construction, operation and maintenance costs of certain public facilities and services of the district and are set annually by the governing board of the district.   These taxes and assessments are in addition to county and all other local governmental taxes and assessments and all other taxes and assessments provided by law.

Buyer's Initials _____

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 9

**WYMAN STOKES BUILDER, INC.**

_____, BUYER

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
SOCIAL SECURITY NUMBER

_____, BUYER

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
SOCIAL SECURITY NUMBER

_____
B. WYMAN STOKES, PRESIDENT OR
PATRICIA L. STOKES, VICE PRESIDENT

Buyer's Initials _____

# WYMAN STOKES BUILDER, INC.

***** OPTION ADDENDUM *****

Date: 2/23/06 _DS/Kg_
Original Contract Date: 2/23/06 _DS/Kg_
Community: **CITRUS CREEK**
Lot # 79   Glenn & Kay Groves
Buyer(s): _____
Sales Representative: **MARY TIPPIT**

Model: Hamlin
Elevation: Traditional
Garage: ☒FL  ☐SL  ☒R  ☐L
(Except Hamlin)

| Design Change | Description | Check Desired Item(s) | Additional Investment |
|---|---|---|---|
| **STRUCTURAL** | | | |
| 1. Increase Front Setback _____ feet @ 225 L.F. | * Subject to Builder Approval | | |
| 2. Screened Lanai Expansion (without pool) | 12' x 34' | | $ 12,850.00 |
| 3. Screened Expansion / with pool - Off Master (Clementine or Hamlin only) | Add approximately 14' to length | ✓ | $ 6,450.00 |
| 4. Outdoor Fireplace with TV Recess | | ✓ | $ 9,100.00 |
| 5. Gas Stub Out Only for Grill | * | ✓ | $ 650.00 |
| 6. Optional Bath at Study for Hamlin Only (Note: No Closet In Study; Drop Zone" @ Utility | | ✓ | $ 9,500.00 |
| 7. Note: Glass Shower Enclosure at Optional Bath   Hall | | | $ 960.00 |
| 8. Garage Extension:  ☐ 2' | | | $ 5,850.00 |
|     ☐ 4' | | | $ 11,700.00 |
| **POOL/SPA** | | | |
| 1. Pool  ☒B  ☐C | With 750 sq. ft. screen enclosure, paver deck and pool alarm | ✓ | $ 51,200.00 |
| 2. Spa / Heater (available with pool only)  ☒B | | ✓ | $ 14,350.00 |
| 3. Aqualink | Note: locate spa @ | | $ 3,680.00 |
| 4. Gas Heater (with pool when spa not selected) | Rear left corner of Pool | | $ 4,200.00 |
| **DOORS/WINDOWS** | | | |
| 1. 8' Pocket Door @ Guest Hallway | | ✓ | $ 750.00 |
| **TRIM/MOULDING** | | | |
| 1. 7 ¼" Crown Moulding in the perimeter of Foyer, Great Room, Dining Room & Kitchen | | ✓ | $ 3,300.00 |
| 2. 7 ¼" Crown Moulding in the Master Suite & Bath | | ✓ | $ 2,100.00 |
| 3. 7 ¼" Crown Moulding in Study | | ✓ | $ 1,000.00 |
| **ELECTRICAL** | | | |
| 1. Keyless Garage Door Opener | | ✓ | $ 100.00 |
| 2. Extended Electric Service (When Opposite Garage) | | | $ 1,830.00 |
| 3. Pre-wire for Surround Sound | | ✓ | $ 800.00 |
| 4. Pre-wire for a Pair of Speakers and 1 Volume Control | | | $ 325.00 |

**TOTAL OPTIONS:** $ 99,625.—

**Option Deposit due with this Addendum:** $ 9,962.

NO ITEMS CAN BE ADDED OR DELETED TO HOME AFTER THE OPTION ADDENDUM HAS BEEN EXECUTED.   THIS ADDENDUM IS NOT VALID WITHOUT ALL SIGNATURES.

_Glenn A. Groves_    2/23/06 _DS_
**PURCHASER**    **DATE**

_Margaret Kay Groves_    2/23/06 _KG_
**PURCHASER**    **DATE**

_P. Stokes_    3/1/06
**WYMAN STOKES BUILDER, INC.**    **DATE**

## MUST BE EXECUTED WITH CONTRACT - NO EXCEPTIONS

## WYMAN STOKES BUILDER, INC.
# CITRUS CREEK AT VERANDAH
## LOT PURCHASE AND CONSTRUCTION CONTRACT

### DATED: _2-15_ , 2006

CONTRACT for lot purchase and new construction between
Name _Alice i Horst Biedelman_
Address _Avenue Van Bee Laere 25  1170  Brussles Belgium_
hereinafter referred to as "BUYER" and WYMAN STOKES BUILDER, INC., 12951 METRO PARKWAY, SUITE 8, FORT MYERS, FLORIDA 33912 hereinafter referred to as "SELLER", "BUILDER" or "CONTRACTOR" for construction of a Single Family Residence and lot purchase in Citrus Creek at Verandah.

Buyer to Purchase: VERANDAH UNIT ELEVEN, LOT _31_ , BLOCK B,

Street Address: _BSK_ Citrus Creek Court, Fort Myers, Florida 33905

Contractor to build the _Clementine "B"_ Model

In consideration whereof, Seller agrees to convey title to the Buyer by general warranty deed, free and clear of all liens and encumbrances except: Taxes and assessments for year of closing, restrictions and easements shown on the plat or of record, and zoning, restrictions, prohibitions and other requirements imposed by governmental authority.

Taxes, insurance, interest, assessments, rents and other expenses or revenues of said Property shall be paid or pro-rated **as of the closing date**. In the event the title shall be proven to be unmerchantable, the Seller shall have a reasonable period of time after notification thereof within which to cure defects in title, and this sale shall be closed within 15 days after notice of such curing to the Buyer. Upon Seller's failure to correct unmerchantability, the earnest money deposit shall be returned to the Buyer upon demand, and all rights and liabilities arising hereunder shall terminate, or upon request of the Buyer, Seller shall deliver the title to Buyer in its existing condition.

Time is of the essence in this agreement. Subject to the aforesaid curative period, this sale shall be closed on or before _April 28,_ 2006, otherwise, the earnest money deposit shall be retained by the Seller as liquidated and agreed damages, and the parties hereto shall be relieved of all obligations hereunder. In the event that this sale shall not close on said date, subject to the aforesaid curative period, by reason of Seller's default, Buyer may seek return of the earnest money deposit and shall have no other remedies at law or in equity.

Buyer shall pay up to one and a half percent (1.5%) of the full purchase price for title insurance and documentary stamps. Seller shall pay the amount in excess of one and a half

Buyer's Initials _ABV_ _HB_

EXHIBIT
_"E"_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 2

percent (1.5%) for title insurance and documentary stamps on the deed. Buyer shall pay all other costs in excess of said amounts. Buyer shall pay all costs associated with obtaining Buyer's mortgage, including mortgagee title insurance.

This Agreement shall be binding upon both parties, the Seller and the Buyer, their heirs or executors. Neither this Agreement nor any notice hereof shall be recorded in any public records.

Buyer acknowledges receipt from Seller of the **Sales Disclosure to Prospective Buyers.** Buyer acknowledges receipt from Verandah Realty of all **Disclosure Related to this Lot Purchase.**

**Seller discloses to Buyer that an emergency vehicle access must be provided from Buckingham Road and that Seller intends to install a locked fence.**

SELLER DOES NOT EXPRESSLY OR IMPLIEDLY WARRANT HABITABILITY OF SOIL OR SUB-SURFACE CONDITIONS OF THE SUBJECT PROPERTY. BUYER EXPRESSLY ASSUMES THE RISK OF ANY AND ALL LOSS OR DAMAGE TO THE SUBJECT PROPERTY CAUSED BY SOIL OR SUB-SURFACE CONDITIONS, WHETHER OR NOT ANY SUCH ADVERSE CONDITION COULD HAVE BEEN DISCOVERED PRIOR TO THE CLOSING BY APPROPRIATE TESTING.

BUYER HAS PERSONALLY INSPECTED THE PROPERTY TO BE PURCHASED PRIOR TO THE EXECUTION OF THIS AGREEMENT.

Florida law requires the following disclosure to be given to the purchaser of property in this State. Seller has made no independent inspection of the Property to determine the presence of conditions which may result in radon gas; however, Seller is not aware of any such condition. Certain building methods and materials have been proven to reduce the possibility of radon gas entering the building.

RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

By: _____
                Patricia L. Stokes
Title: Vice President, Wyman Stokes Builder, Inc.

THE POTENTIAL BUYER SHOULD NOT EXECUTE THE CONTRACT OR AGREEMENT UNTIL THEY HAVE RECEIVED AND READ THE DISCLOSURE SUMMARY REQUIRED BY SECTION 689.26, FLORIDA STATUTES.

Buyer's Initials  A.B.    A.B.

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 3

IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 689.26, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

VERANDAH WEST COMMUNITY DEVELOPMENT DISTRICT MAY IMPOSE AND LEVY TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY. THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT, AND ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT. THESE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND ALL OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS, AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY THE LAW. THE GOLF CLUB IN VERANDAH IS A PRIVATE MEMBERS' ONLY FACILITY TO WHICH PURCHASING A LOT DOES NOT PROVIDE A RIGHT OF ACCESS OR USE.

### SALES DISCLOSURE TO
### PROSPECTIVE BUYERS

Upon the closing of the purchase of your home, additional costs may be borne by you in the form of closing costs. A list of the known major cost items are:

1. Survey ($650.00)
2. Insurance
3. Service Fee (or Origination Fee) on any New Mortgage
4. Intangible Tax
5. Documentary Stamps on New Note
6. Documentary Stamps on Deed
7. Title Insurance
8. Recording Fees on Mortgage and Deed
9. Credit Report
10. Mortgage Company's Attorney Fees
11. Appraisal Fee
12. Real Estate Tax Proration
13. Community Mailbox ($615.00)

Buyer's Initials _AB_ _HB_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 4

Buyers acknowledge (by checking line) that they have:

 Received a copy of the Homeowners Manual, which includes all recorded documents for Verandah and Citrus Creek

WHEREAS, the BUYER will be the OWNER in fee simple of certain premises described above and hereinafter called the **"BUILDING SITE or PROPERTY"** and BUYER desires BUILDER to construct a certain building on the premises.

NOW THEREFORE, for and in consideration of the mutual promises herein contained, the parties agree to as follows:

1.      BUILDER shall construct upon the building site a building and related improvements in accordance with the Plans prepared by Sater Group. The residence will have craftsmanship equal to or better than that used in the two model homes in Orangetree Bend at Verandah.

2.      Subject to the provisions of this Agreement. The BUILDER agrees to use its best effort to deliver the completed residence specified herein with 270 days (9 months) from the date of permit or from the date of the Notice of Commencement, whichever occurs last. All times stated herein are of the essence.

3.      BUYER shall grant the BUILDER exclusive possession of the PROPERTY during the course of construction and until the BUILDER is paid in full in accordance with the terms of this CONTRACT.    BUILDER shall deliver possession back to BUYER when construction is completed and BUILDER has been paid in full. BUYER shall not occupy or permit others to occupy the property until BUILDER has delivered possession back to BUYER. BUYER may visit the property for purpose of inspection, but shall not direct or interfere with workers or subcontractors.

4.      BUILDER shall provide general administration of construction and shall be BUYER'S representative. BUILDER shall be responsible for arranging and coordinating the work and supervision and inspection of progress. BUILDER may perform the work with BUILDER'S own forces and may subcontract portions of or all of the work at BUILDER'S sole discretion.

5.      If the price or any part thereof is to be financed by a third party loan, this contract is conditioned upon BUYER obtaining a firm commitment for the loan within 10 days. Should BUYER not obtain such loan within 10 days, either party may rescind this CONTRACT, provided however, that BUILDER shall be reimbursed by BUYER for any costs incurred by BUILDER for design fees, clearing and filling, permit application, and etc. BUYER shall close on loan by ~~February 28, 2006.~~ *April 28, 2006*

X _AB_   X _HB_          Buyer's Initials _AB_   _HB_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 5

6.  BUILDER warrants and represents to BUYER as follows:

    A.  That BUILDER is a properly licensed building contractor.

    B.  That BUILDER will engage only subcontractors that are properly licensed in their respective trades.

    C.  That BUILDER is a Florida Corporation in good standing.

    D.  That BUILDER will complete construction in a good workmanlike manner. BUILDER shall guarantee for a period of one year from issue of the Certificate of occupancy, against defective materials and workmanship. This guarantee includes, without limitations, the building, roof, plumbing, electrical system and the heating, ventilation and air conditioning system.

The foregoing warranties and guarantees do not cover non-structural settlement cracks, fading and/or discoloration of paint or wood, or pitting or imperfections that may result from normal settling, normal shrinkage or drying out, or which may result from the negligence, abuse or lack of normal maintenance by BUYER. The foregoing warranties and guarantees also exclude consequential damages.

BUILDER shall assign to BUYER all warranties applicable to the premises received from suppliers, subcontractors and material men, and any other warranties pertaining to the premises, appliances, fixtures and systems. All workmanship shall conform to the guidelines found in the publication *Residential Construction Performance Guidelines - For Professional Builders and Remodelers,* National Association of Home Builders, 1996. If an item is not covered in that publication, standard industry practice shall govern.

7.  PURCHASE PRICE: BUYER will pay CONTRACTOR the sum of $ _57,605_ (U.S. Dollars) in the following manner:

    A.  10% down payment due at Contract by check subject to collection $ _57,160_ .50

        Less Initial $10,000 reservation deposit $ _____

        Balance of Down Payment payable to **Fidelity National Title Ins.** $ _514,444_ .50

    B.  BUYER OR BUYER's lender to fund a total of 25% of total purchase price to the BUILDER when title is conveyed to the BUYER.

    C.  BUYER or BUYER's lender will fund 10% of the balance of the contract at lot acquisition as a construction deposit.

    D.  Contract balance shall be paid on the construction progress in accordance with the draw schedule approved by BUYER's lending institution. In the event that owner is not financing construction through a lending institution, the draw schedule set

Buyer's Initials X _AB_ X _KB_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT

PAGE 6

forth on Exhibit B shall apply. Any payment not made within 5 days of the date requested by BUILDER without cause shall accrue interest at the highest rate allowable under Florida law from the date of the request. The BUYER hereby waives the right to have the deposit held in escrow pursuant to Florida law.

8.      Construction to be completed within the time set forth in Paragraph No. 2, herein unless delayed by strikes, act of God, material or labor shortages, or other causes beyond control of CONTRACTOR. Closing and settlement of the CONTRACT shall be within five (5) days of notice by the BUILDER to the BUYER that the premises are ready for occupancy and the Certificate of Occupancy has been obtained and CONTRACTOR has given BUYER an Affidavit of "No Liens" and other documents and releases as required by Section 713.06 (3) (d), Florida Mechanics Lien Law. BUYER shall not unreasonably delay closing due to minor corrections or touchup work that does not interfere with occupancy. Said minor work shall be listed on a Compliance List, signed by the BUYER and BUILDER and will be scheduled to be completed within thirty (30) days of the date of the Compliance List. It is understood that certain "punch list" items may remain at the time of final settlement, and such items will be promptly and responsibly handled by the CONTRACTOR as a warranty item. It is further understood, additional items may arise during the warranty period, which may be added to the original list. Notwithstanding, final settlement will take place without such lists and such lists will be honored in accordance with the terms of the warranty. Whereas this written assurance is provided, the BUYER shall not be entitled to hold-backs or escrows, pending completion of "punch list" or warranty items.

9.      Expenses of temporary electric service during construction will be borne by the BUILDER. This CONTRACT has included back-to-back power hookups. Any additional fees charged by the power company to bring power to the home will be paid by the BUYER.

10.     This agreement shall be binding upon the heirs, executors, administrators, and assigns of the parties. Neither party shall assign this CONTRACT without the prior written consent of the other party.

11.     In any arbitration or litigation between the parties arising from the CONTRACT, the prevailing party shall be awarded its reasonable attorney's fees, including bankruptcies and appeals against the non-prevailing party.

12.     The price set forth above is based upon BUILDER having immediate access to the PROPERTY. It is further based upon the BUILDER being authorized to commence construction within thirty (30) days from the date hereof and thereafter being able to prosecute the work continuously until completion. The price and time of performance shall be subject to adjustment if BUILDER is not authorized to begin construction within thirty (30) days, if BUILDER is prevented from prosecuting the work continuously, or if unforeseen site conditions, including sub-surface conditions or the absence of temporary utilities delay commencement and prosecution of the work or if any governmental authority requires additions or changes to the plan or

Buyer's Initials  *AB*    *HB*

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 7

specifications. BUYER agrees to promptly make selections of materials and finishes upon request by BUILDER. In the event BUYER unreasonably delays in making such selections, the price and time of performance shall be subject to adjustments. The price and time of performance may, at the BUILDERS sole discretion, be adjusted for abnormal and spontaneous increases in the cost of materials and/or labor resulting from hurricanes, tornadoes, floods, civil disorder, labor disputes or other events beyond the control of BUILDER.

13. A waiver of a breach of any of the terms or conditions hereof shall not be construed as a waiver of any subsequent breach. Any consent to delay in the performance of CONTRACTOR of any obligations shall be applicable only to the particular transaction to which it relates, and it shall not be applicable to any other obligations or transactions. Delay in the enforcement of any remedy in the event of a breach of any term or condition hereof, or in the exercise by either party of any right hereunder, shall be construed as a waiver.

14. The BUYER may terminate this CONTRACT prior to its completion and without prejudice to any other remedy BUYER may have, in the event CONTRACTOR files bankruptcy, becomes insolvent, or defaults in performance of any provision herein or fails to carry out the construction in accordance with the provisions of this CONTRACT, the plans and specifications after receipt of five (5) days written notice of same from BUYER.

15. CONSTRUCTION INDUSTRIES RECOVERY FUND: Payment may be available from the Construction Industries Recovery Fund if you lose money on a project performed under contract, where the loss results from specified violations of Florida Law by a state licensed contractor. For information about the Recovery Fund and filing a claim, contact the Florida Construction Industry Licensing Board at the following telephone number and address:

Construction Industry Licensing Board:   Phone:  850-487-1395
1940 North Monroe Street, Northwood Centre
Tallahassee, Florida 32399

ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT

AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY

Buyer's Initials _AB_ _HB_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 8

SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS OR NEGLECTS TO MAKE OTHER LEGALLY REQUIRED PAYMENTS, THE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY. FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX AND IT IS RECOMMENDED THAT WHENEVER A SPECIFIC PROBLEM ARISES, YOU CONSULT AN ATTORNEY.

16.     This CONTRACT constitutes the entire agreement between the parties and supersedes any prior oral negotiations or representations.  This CONTRACT may only be modified or amended in writing signed by the parties.

17.     Any notice or other communications required or permitted hereunder shall be sufficiently given if sent by registered or certified mail, postage prepaid, return receipt, addressed to the parties at the addresses shown herein, or at such other address as may be furnished in writing by either party to the other, and shall be deemed to have been given as of the date so deposited in the United States mail.

18.     This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

19.     **CDD Disclosure.**  Verandah West Community Development District may impose and levy taxes or assessments, or both taxes and assessments on this property. These taxes and assessments pay the construction, operation and maintenance costs of certain public facilities and services of the district and are set annually by the governing board of the district.   These taxes and assessments are in addition to county and all other local governmental taxes and assessments and all other taxes and assessments provided by law.

Buyer's Initials  _AB_     _KS_

CITRUS CREEK LOT PURCHASE AND CONSTRUCTION CONTRACT
PAGE 9

WYMAN STOKES BUILDER, INC.

_____, BUYER

B. WYMAN STOKES, PRESIDENT OR
PATRICIA L. STOKES, VICE PRESIDENT

_____
SOCIAL SECURITY NUMBER

_____, BUYER

_____
SOCIAL SECURITY NUMBER

Buyer's Initials _____ _____

# WYMAN STOKES BUILDER, INC.

## * * * * * OPTION ADDENDUM * * * * *

Date: _2-15-06_

Original Contract Date: _____

Community: **CITRUS CREEK**

Lot # _21_   Buyer(s): _Alice & Horst Breseeman_

Sales Representative: **MARY TIPPIT**

Model: _Clementina B_

Elevation: _____

Garage: ☒FL  ☐SL  ☒R  ☐L
(Except Hamlin)

| Design Change | Description | Check Desired Item(s) | Additional Investment |
|---|---|---|---|
| **STRUCTURAL** | | | |
| 1. Increase Front Setback _____ feet @ 225 L.F. | * Subject to Builder Approval | | |
| 2. Screened Lanai Expansion (without pool) | 12' x 34' | | $ 12,850.00 |
| 3. Screened Expansion w/pool - Off Master | | X | $ 6,450.00 |
|    **Clementine / Hamlin Expansion** | | | |
|    Valencia Expansion | | | $ 10,450.00 |
| 4. Outdoor Fireplace with TV Recess | | X | $ 9,100.00 |
| 5. Gas Stub Out Only for Grill | | X | $ 650.00 |
| 6. Optional Bath at Study for Hamlin Only | | | $ 9,500.00 |
| 7. **Note:** Glass Shower Enclosure at Optional Bath | | | $ 960.00 |
| 8. Garage Extension: ☐ 2' | | | $ 5,850.00 |
|    ☐ 4' | | | $ 11,700.00 |
| **POOL/SPA** | | | |
| 1. Pool ☐A ☐B ☒C | With 750 sq. ft. screen enclosure, paver deck and pool alarm | X | $ 51,200.00 |
| 2. Spa / Heater (available with pool only) ☐A ☒B | | X | $ 14,350.00 |
| 3. Aqualink | | | $ 3,680.00 |
| 4. Gas Heater (with pool when spa not selected) | | | $ 4,200.00 |
| ~~See to~~ | | | |
| **DOORS/WINDOWS** | | | |
| 1. 8' Pocket Door @ Guest Hallway | | X | $ 750.00 |
| **TRIM/MOULDING** | | | |
| 1. 7 ¼" Crown Moulding in the perimeter of Foyer, Great Room, Dining Room & Kitchen | | X | $ 3,300.00 |
| 2. 7 ¼" Crown Moulding in the Master Suite & Bath | | | $ 2,100.00 |
| 3. 7 ¼" Crown Moulding in Study | | | $ 1,000.00 |
| **ELECTRICAL** | | | |
| 1. Keyless Garage Door Opener | | X | $ 100.00 |
| 2. Extended Electric Service (When Opposite Garage) | | X | $ 1,830.00 |
| 3. Pre-wire for Surround Sound | | X | $ 800.00 |
| 4. Pre-wire for a Pair of Speakers and 1 Volume Control | | X | $ 325.00 |

TOTAL OPTIONS: _82,405_

Option Deposit due with this Addendum: $ _8240.50_

NO ITEMS CAN BE ADDED OR DELETED TO HOME AFTER THE OPTION ADDENDUM HAS BEEN EXECUTED.  THIS ADDENDUM IS NOT VALID WITHOUT ALL SIGNATURES.

_Bresseeman_ _2-15-06_
PURCHASER        DATE

_____ _2-15-06_
PURCHASER        DATE

_____ _2/20/06_
WYMAN STOKES BUILDER, INC.        DATE

## MUST BE EXECUTED WITH CONTRACT - NO EXCEPTIONS



**EXHIBIT**
"F"

THIS FORM HAS BEEN APPROVED BY THE FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR

# Contract For Sale And Purchase
FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR

1*  PARTIES: _____ Wyman Stokes Builder Inc. _____ ("Seller"),
2*  and _____ Patricia A. Jackson _____ ("Buyer"),
3   hereby agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property (collectively "Property")
4   pursuant to the terms and conditions of this Contract for Sale and Purchase and any riders and addenda ("Contract"):
5   I.  DESCRIPTION:
6*      (a) Legal description of the Real Property located in_____ Lee _____ County, Florida: _____ 33905
7*      Verandah Unit Eleven DESC in INST #2005-42225
8*      (b) Street address, city, zip, of the Property:__ 13606  Citrus Creek Ct _____ Fort Myers, FL _____ 33905
9       (c) Personal Property includes existing range(s), refrigerator(s), dishwasher(s), ceiling fan(s), light fixture(s), and window treatment(s) unless
10      specifically excluded below.
11*     Other items included are: Pool Heater to be installed prior to closing _____
12* _____
13*     Items of Personal Property (and leased items, if any) excluded are: _____
14* _____

15* II. PURCHASE PRICE (U.S. currency): .................................................... $____510,000.00
16  PAYMENT:
17*     (a) Deposit held in escrow by Fidelity National Titl ("Escrow Agent") in the amount of (checks subject to clearance)  $___ 51,000.00
18*     Escrow Agent's address: 12595 New Brittany Blvd, Fort Myers, FL _____ Phone: 239-466-3212
19*     (b) Additional escrow deposit to be made to Escrow Agent within _____ days after Effective Date in the amount of ......... $_____
20*     (c) Financing in the amount of ("Loan Amount") see Paragraph IV below .............................. $_____
21*     (d) Other .......................................................................... $_____
22      (e) Balance to close by cash, wire transfer or LOCALLY DRAWN cashier's or official bank check(s), subject
23*     to adjustments or prorations .................................................... $____459,000.00

24  III. TIME FOR ACCEPTANCE OF OFFER AND COUNTEROFFERS; EFFECTIVE DATE:
25      (a) If this offer is not executed by and delivered to all parties OR FACT OF EXECUTION communicated in writing between the parties on or
26*     before _____ July 14, 2008 5PM _____, the deposit(s) will, at Buyer's option, be returned and this offer withdrawn. Unless other-
27      wise stated, the time for acceptance of any counteroffers shall be 2 days from the date the counteroffer is delivered.
28      (b) The date of Contract ("Effective Date") will be the date when the last one of the Buyer and Seller has signed or initialed this offer or the
29      final counteroffer. If such date is not otherwise set forth in this Contract, then the "Effective Date" shall be the date determined above for
30      acceptance of this offer or, if applicable, the final counteroffer.
31  IV. FINANCING:
32*     ⊔ (a) This is a cash transaction with no contingencies for financing;
33*     ⊔ (b) This Contract is contingent on Buyer obtaining written loan commitment which confirms underwriting loan approval for a loan to purchase
34*     the Property ("Loan Approval") within _____ days (if blank, then 30 days) after Effective Date ("Loan Approval Date") for (CHECK ONLY
35*     ONE): ⊔ a fixed; ⊔ an adjustable; or ⊔ a fixed or adjustable rate loan, in the Loan Amount (See Paragraph II.(c)) at an initial interest rate not to
36*     exceed _____%, and for a term of _____ years. Buyer will make application within _____ days (if blank, then 5 days) after Effective Date.
37      BUYER: Buyer shall use reasonable diligence to: obtain Loan Approval; notify Seller in writing of receipt of Loan Approval by Loan Approval
38      Date: satisfy terms of the Loan Approval; and close the loan. Loan Approval which requires a condition related to the sale of other property shall
39      not be deemed Loan Approval for purposes of this subparagraph. Buyer shall pay all loan expenses. Buyer authorizes the mortgage broker(s) and
40      lender(s) to disclose information regarding the conditions, status, and progress of loan application and Loan Approval to Seller, Seller's attorney,
41      real estate licensee(s), and Closing Agent.
42      SELLER: If Buyer does not deliver to Seller written notice of Loan Approval by Loan Approval Date, Seller may thereafter cancel this Contract by
43      delivering written notice ("Seller's Cancellation Notice") to Buyer, but not later than seven (7) days prior to Closing. Seller's Cancellation Notice shall
44      notify Buyer that Buyer has three (3) days to deliver to Seller written notice waiving this Financing contingency, or the Contract shall be cancelled.
45      DEPOSIT(S) (for purposes of this Financing Paragraph IV(b) only): If Buyer has used reasonable diligence but does not obtain Loan Approval
46      by Loan Approval Date, and thereafter either party elects to cancel this Contract, the deposit(s) shall be returned to Buyer. If Buyer obtains Loan
47      Approval or waives this Financing contingency, and thereafter the Contract does not close, then the deposit(s) shall be paid to Seller; provided how-
48      ever, if the failure to close is due to: (i) Seller's failure or refusal to close or Seller otherwise fails to meet the terms of the Contract, or (ii) Buyer's lender
49      fails to receive and approve an appraisal of the Property in an amount sufficient to meet the terms of the Loan Approval, then the deposit(s) shall be
50      returned to Buyer.
51*     ⊔ (c) Assumption of existing mortgage (see rider for terms); or
52*     ⊔ (d) Purchase money note and mortgage to Seller (see Standards B and K and riders; addenda; or special clauses for terms).
53* V.  TITLE EVIDENCE: At least ____ days (if blank, then 5 days) before Closing a title insurance commitment with legible copies of instruments listed as
54      exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see Standard A for terms) shall be obtained by:
55*     (CHECK ONLY ONE): ⊠(1) Seller, at Seller's expense and delivered to Buyer or Buyer's attorney; or
56*     ⊔ (2) Buyer at Buyer's expense.
57*     (CHECK HERE): ⊔ If an abstract of title is to be furnished instead of title insurance, and attach rider for terms.
58* VI. CLOSING DATE: This transaction shall be closed and the closing documents delivered on ___ August 15, 2008 ___ ("Closing"), unless
59      modified by other provisions of this Contract. In the event of extreme weather or other conditions or events constituting "force majeure", Closing will be
60      extended a reasonable time until: (i) restoration of utilities and other services essential to Closing, and (ii) availability of Hazard, Wind, Flood, or Homeowners'
61*     insurance. If such conditions continue more than _____ days (if blank, then 14 days) beyond Closing Date, then either party may cancel this Contract.

62 **VII. RESTRICTIONS; EASEMENTS; LIMITATIONS:** Seller shall convey marketable title subject to: comprehensive land use plans, zoning, restrictions,
63 prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivi-
64 sion; outstanding oil, gas and mineral rights of record without right of entry; unplatted public utility easements of record (located contiguous to real property
65 lines and not more than 10 feet in width as to the rear or front lines and 7 1/2 feet in width as to the side lines); taxes for year of Closing and subsequent years;
66 and assumed mortgages and purchase money mortgages, if any (if additional items, see addendum); provided, that there exists at Closing no violation of the
67* foregoing and none prevent use of the Property for _____ Residential _____ purpose(s).
68 **VIII. OCCUPANCY:** Seller shall deliver occupancy of Property to Buyer at time of Closing unless otherwise stated herein. If Property is intended
69 to be rented or occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant to Standard F.
70 If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from date of occupancy, shall be responsible and liable
71 for maintenance from that date, and shall be deemed to have accepted Property in its existing condition as of time of taking occupancy.
72 **IX. TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Typewritten or handwritten provisions, riders and addenda shall control all printed pro-
73 visions of this Contract in conflict with them.
74* **X. ASSIGNABILITY:** (CHECK ONLY ONE): Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☒ may
75* assign but not be released from liability under this Contract; or ☐ may not assign this Contract.
76 **XI. DISCLOSURES:**
77 (a) The Property may be subject to unpaid special assessment lien(s) imposed by a public body ("public body" does not include a
78 Condominium or Homeowners' Association). Such lien(s), if any, whether certified, confirmed and ratified, pending, or payable in installments,
79* as of Closing, shall be paid as follows: ☐ by Seller at closing ☒ by Buyer (if left blank, then Seller at Closing). If the amount of any
80 assessment to be paid by Seller has not been finally determined as of Closing, Seller shall be charged at Closing an amount equal to the
81 last estimate or assessment for the improvement by the public body.
82 (b) Radon is a naturally occurring radioactive gas that when accumulated in a building in sufficient quantities may present health risks to per-
83 sons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida.
84 Additional information regarding radon or radon testing may be obtained from your County Public Health unit.
85 (c) Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information
86 regarding mold, Buyer should contact an appropriate professional.
87 (d) Buyer acknowledges receipt of the Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.
88 (e) If the Real Property includes pre-1978 residential housing then a lead-based paint rider is mandatory.
89 (f) If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act, the parties shall comply with that Act.
90 (g) BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIA-
91 TION/COMMUNITY DISCLOSURE.
92 (h) PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT
93 OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNER-
94 SHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES.
95 IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
96 **XII. MAXIMUM REPAIR COSTS:** Seller shall not be responsible for payments in excess of:
97* (a) $_____ for treatment and repair under Standard D (if blank, then 1.5% of the Purchase Price).
98* (b) $_____ for repair and replacement under Standard N not caused by Wood Destroying Organisms (if blank, then 1.5% of the Purchase Price).
99* **XIII. HOME WARRANTY:** ☐ Seller ☐ Buyer ☒ N/A will pay for a home warranty plan issued by _____
100* at a cost not to exceed $_____
101 **XIV. RIDERS; ADDENDA; SPECIAL CLAUSES:** CHECK those riders which are applicable AND are attached to and made part of this Contract:
102* ☐ CONDOMINIUM ☐ VA/FHA ☒ HOMEOWNERS' ASSN. ☐ LEAD-BASED PAINT ☐ COASTAL CONSTRUCTION CONTROL LINE
103* ☐ INSULATION ☐ "AS IS" ☐ EVIDENCE OF TITLE (SOUTH FLORIDA CONTRACTS) ☐ Other Comprehensive Rider Provisions ☐ Addenda
104* Special Clause(s):
105*
106*
107*
108 **XV. STANDARDS FOR REAL ESTATE TRANSACTIONS ("Standards"):** Buyer and Seller acknowledge receipt of a copy of Standards A
109 through Y on the reverse side or attached, which are incorporated as part of this Contract.
110 THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.
111 THIS FORM HAS BEEN APPROVED BY THE FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR.
112 Approval does not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a particular transac-
113 tion. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.
114 AN ASTERISK(*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE COMPLETED.

115* *Patricia A. Jackson*          7-12-08
116 (BUYER)   Patricia A. Jackson          (DATE)          (SELLER)   Wyman Stokes Builder, Inc          (DATE)
117*
118 (BUYER)          (DATE)          (SELLER)          (DATE)
119* Buyers' address for purposes of notice _____          Sellers' address for purposes of notice _____
120* 5960   S. Meridian St.          12951   Metro Parkway St. 8
121 Marion, IN 46953          765-674-3457   Phone          Fort Myers, FL 33966          239-994-1421   Phone
122 **BROKERS:** The brokers (including cooperating brokers, if any) named below are the only brokers entitled to compensation in connection with
123 this Contract:
124* Name:          Bonita Bay Group Realty, Inc          Bonita Bay Group Realty, Inc.-Verandah
125          Cooperating Brokers, if any          Listing Broker

FAR/BAR-8   Rev. 9/07   © 2007   Florida Association of REALTORS® and The Florida Bar   All Rights Reserved   Page 2 of 4
This software is licensed to [Donald Newman - Bonita Bay Group Realty, Inc] www.transactiondesk.com.



**STANDARDS FOR REAL ESTATE TRANSACTIONS**

126
127 **A. TITLE INSURANCE:** The Title Commitment shall be issued by a Florida licensed title insurer agreeing to issue Buyer, upon recording of the deed to Buyer, an
128 owner's policy of title insurance in the amount of the purchase price, insuring Buyer's marketable title to the Real Property, subject only to matters contained in
129 Paragraph VII and those to be discharged by Seller at or before Closing. Marketable title shall be determined according to applicable Title Standards adopted by
130 authority of The Florida Bar and in accordance with law. Buyer shall have 5 days from date of receiving the Title Commitment to examine it, and if title is found defec-
131 tive, notify Seller in writing specifying defect(s) which render title unmarketable. Seller shall have 30 days from receipt of notice to remove the defects, failing which
132 Buyer shall, within 5 days after expiration of the 30 day period, deliver written notice to Seller either: (1) extending the time for a reasonable period not to exceed 120
133 days within which Seller shall use diligent effort to remove the defects; or (2) requesting a refund of deposit(s) paid which shall be returned to Buyer. If Buyer fails
134 so notify Seller, Buyer shall be deemed to have accepted the title as it then is. Seller shall, if title is found unmarketable, use diligent effort to correct defect(s) within
135 the time provided. If, after diligent effort, Seller is unable to timely correct the defects, Buyer shall either waive the defects, or receive a refund of deposit(s), thereby
136 releasing Buyer and Seller from all further obligations under this Contract. If Seller is to provide the Title Commitment and it is delivered to Buyer less than 5 days prior
137 to Closing, Buyer may extend Closing so that Buyer shall have up to 5 days from date of receipt to examine it in accordance with this Standard.
138 **B. PURCHASE MONEY MORTGAGE; SECURITY AGREEMENT TO SELLER:** A purchase money mortgage and mortgage note to Seller shall provide for a
139 30 day grace period in the event of default if a first mortgage and a 15 day grace period if a second or lesser mortgage; shall provide for right of prepayment
140 in whole or in part without penalty; shall permit acceleration in event of transfer of the Real Property; shall require all prior liens and encumbrances to be kept
141 in good standing; shall forbid modifications of, or future advances under, prior mortgage(s); shall require Buyer to maintain policies of insurance containing a
142 standard mortgagee clause covering all improvements located on the Real Property against fire and all perils included within the term "extended coverage
143 endorsements" and such other risks and perils as Seller may reasonably require, in an amount equal to their highest insurable value; and the mortgage, note
144 and security agreement shall be otherwise in form and content required by Seller, but Seller may only require clauses and coverage customarily found in mort
145 gages, mortgage notes and security agreements generally utilized by savings and loan institutions or state or national banks located in the county wherein the
146 Real Property is located. All Personal Property and leases being conveyed or assigned will, at Seller's option, be subject to the lien of a security agreement evi
147 denced by recorded or filed financing statements or certificates of title. If a balloon mortgage, the final payment will exceed the periodic payments thereon.
148 **C. SURVEY:** Buyer, at Buyer's expense, within time allowed to deliver evidence of title and to examine same, may have the Real Property surveyed and certified
149 by a registered Florida surveyor. If the survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, ease-
150 ments, lands of others or violate any restrictions, Contract covenants or applicable governmental regulations, the same shall constitute a title defect.
151 **D. WOOD DESTROYING ORGANISMS:** "Wood Destroying Organisms" (WDO) shall be deemed to include all wood destroying organisms required to be report
152 ed under the Florida Structural Pest Control Act, as amended. Buyer, at Buyer's expense, may have the Property inspected by a Florida Certified Pest Control Operator
153 ("Operator") within 20 days after the Effective Date to determine if there is any visible active WDO infestation or visible damage from WDO infestation, excluding fences.
154 If either or both are found, Buyer may within said 20 days (1) have cost of treatment of active infestation estimated by the Operator; (2) have all damage inspected
155 and cost of repair estimated by an appropriately licensed contractor; and (3) report such cost(s) to Seller in writing. If estimated costs exceed that amount, Buyer shall have the
156 WDO damage to be made and pay the costs thereof up to the amount provided in Paragraph XII(a). If estimated costs exceed that amount, Seller shall cause the treatment and repair of all
157 option of canceling this Contract by giving written notice to Seller within 20 days after the Effective Date, or Buyer may elect to proceed with the transaction and
158 receive a credit at Closing equal to the amount provided in Paragraph XII(a). If Buyer's lender requires an updated WDO report, then Buyer shall, at Buyer's expense,
159 have the opportunity to have the Property re-inspected for WDO infestation and have the cost of active infestation or new damage estimated and reported to Seller
160 in writing at least 10 days prior to Closing, and thereafter, Seller shall cause such treatment and repair to be made and pay the cost thereof; provided, Seller's total
161 obligation for treatment and repair costs required under both the first and second inspection shall not exceed the amount provided in Paragraph XII (a).
162 **E. INGRESS AND EGRESS:** Seller warrants and represents that there is ingress and egress to the Real Property sufficient for its intended use as described
163 in Paragraph VII hereof and title to the Real Property is insurable in accordance with Standard A without exception for lack of legal right of access.
164 **F. LEASES:** Seller shall, at least 10 days before Closing, furnish to Buyer copies of all written leases and estoppel letters from each tenant specifying the nature
165 and duration of the tenant's occupancy, rental rates, advanced rent and security deposits paid by tenant. If Seller is unable to obtain such letter from each ten
166 ant, the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact ten
167 ant to confirm such information. If the terms of the leases differ materially from Seller's representations, Buyer may terminate this Contract by delivering written
168 notice to Seller at least 5 days prior to Closing. Seller shall, at Closing, deliver and assign all original leases to Buyer.
169 **G. LIENS:** Seller shall furnish to Buyer at time of Closing an affidavit attesting to the absence, unless otherwise provided for herein, of any financing statement,
170 claims of lien or potential lienors known to Seller and further attesting that there have been no improvements or repairs to the Real Property for 90 days imme-
171 diately preceding date of Closing. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction
172 liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth the names of all such gen
173 eral contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a
174 construction lien or a claim for damages have been paid or will be paid at the Closing of this Contract.
175 **H. PLACE OF CLOSING:** Closing shall be held in the county wherein the Real Property is located at the office of the attorney or other closing agent ("Closing
176 Agent") designated by the party paying for title insurance, or, if no title insurance, designated by Seller.
177 **I. TIME:** Calendar days shall be used in computing time periods except periods of less than six (6) days, in which event Saturdays, Sundays and state or nation
178 al legal holidays shall be excluded. Any time periods provided for herein which shall end on a Saturday, Sunday, or a legal holiday shall extend to 5:00 p.m. of the
179 next business day. Time is of the essence in this Contract.
180 **J. CLOSING DOCUMENTS:** Seller shall furnish the deed, bill of sale, certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases,
181 tenant and mortgagee estoppel letters and corrective instruments. Buyer shall furnish mortgage, mortgage note, security agreement and financing statements.
182 **K. EXPENSES:** Documentary stamps on the deed and recording of corrective instruments shall be paid by Seller. All costs of Buyer's loan (whether obtained
183 from Seller or third party), including, but not limited to, documentary stamps and intangible tax on the purchase money mortgage and any mortgage assumed,
184 mortgagee title insurance commitment with related fees, and recording of purchase money mortgage to Seller, deed and financing statements shall be paid by
185 Buyer. Unless otherwise provided by law or rider to this Contract, charges for related closing services, title search, and closing fees (including preparation of
186 closing statement), shall be paid by the party responsible for furnishing the title evidence in accordance with Paragraph V.
187 **L. PRORATIONS; CREDITS:** Taxes, assessments, rent, interest, insurance and other expenses of the Property shall be prorated through the day before Closing.
188 Buyer shall have the option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased
189 or decreased as may be required by prorations to be made through day prior to Closing, or occupancy, if occupancy occurs before Closing. Advance rent and
190 security deposits will be credited to Buyer. Escrow deposits held by mortgagee will be credited to Seller. Taxes shall be prorated based on the current year's tax
191 with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs at a date when the current year's millage is not
192 fixed and current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not
193 available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improve-
194 ments were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed
195 upon between the parties; failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemp-
196 tions. A tax proration based on an estimate shall, at request of either party, be readjusted upon receipt of current year's tax bill.
197 **M. (RESERVED - purposely left blank)**
198 **N. INSPECTION AND REPAIR:** Seller warrants that the ceiling, roof (including the fascia and soffits), and exterior and interior walls, and foundation of the Property
199 do not have any visible evidence of leaks, water damage, or structural damage and that dockage, seawalls, septic tank, pool, all appliances, mechanical items,

## STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

200
201 heating, cooling, electrical, plumbing systems, and machinery are in Working Condition. The foregoing warranty shall be limited to the items specified unless
202 otherwise provided in an addendum. Buyer may inspect, or, at Buyer's expense, have a firm or individual specializing in home inspections and holding an
203 occupational license for such purpose (if required), or by an appropriately licensed Florida contractor, make inspections of, those items within 20 days after
204 the Effective Date. Buyer shall, prior to Buyer's occupancy but not more than 20 days after Effective Date, report in writing to Seller such items that do not
205 meet the above standards as to defects. Unless Buyer timely reports such defects, Buyer shall be deemed to have waived Seller's warranties as to defects
206 not reported. If repairs or replacements are required to comply with this Standard, Seller shall cause them to be made and shall pay up to the amount pro-
207 vided in Paragraph XII (b). Seller is not required to make repairs or replacements of a Cosmetic Condition unless caused by a defect Seller is responsible to
208 repair or replace. If the cost for such repair or replacement exceeds the amount provided in Paragraph XII (b), Buyer or Seller may elect to pay such excess,
209 failing which either party may cancel this Contract. If Seller is unable to correct the defects prior to Closing, the cost thereof shall be paid into escrow at Closing.
210 For purposes of this Contract: (1) "Working Condition" means operating in the manner in which the item was designed to operate; (2) "Cosmetic Condition"
211 means aesthetic imperfections that do not affect the Working Condition of the item, including, but not limited to: pitted marcite or other pool finishes; missing
212 or torn screens; fogged windows; tears, worn spots, or discoloration of floor coverings, wallpaper, or window treatments; nail holes, scratches, dents, scrapes,
213 chips or caulking in ceilings, walls, flooring, fixtures, or mirrors; and minor cracks in floors, tiles, windows, driveways, sidewalks, or pool decks; and (3) cracked
214 roof tiles, curling or worn shingles, or limited roof life shall not be considered defects Seller must repair or replace, so long as there is no evidence of actual
215 leaks or leakage or structural damage, but missing tiles will be Seller's responsibility to replace or repair.
216 O. RISK OF LOSS: If, after the Effective Date, the Property is damaged by fire or other casualty ("Casualty Loss") before Closing and cost of restoration
217 (which shall include the cost of pruning or removing damaged trees) does not exceed 1.5% of the Purchase Price, cost of restoration shall be an obligation
218 of Seller and Closing shall proceed pursuant to the terms of this Contract and if restoration is not completed as of Closing, restoration costs will be escrowed
219 at Closing. If the cost of restoration exceeds 1.5% of the Purchase Price, Buyer shall either take the Property as is, together with the 1.5% or receive a
220 refund of deposit(s) thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage
221 by casualty or other natural occurrence shall be the cost of pruning or removal.
222 P. CLOSING PROCEDURE: The deed shall be recorded upon clearance of funds. If the title agent insures adverse matters pursuant to Section 627.7841, F.S.,
223 as amended, the escrow and closing procedure required by this Standard shall be waived. Unless waived as set forth above the following closing procedures
224 shall apply: (1) all closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 5 days after Closing; (2) if Seller's title is rendered
225 unmarketable, through no fault of Buyer, Buyer shall, within the 5 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
226 of such notification to cure the defect; (3) if Seller fails to timely cure the defect, all deposits and closing funds shall, upon written demand by Buyer and within 5
227 days after demand, be returned to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and recon-
228 vey the Property by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund, Buyer shall take title as is, waiving all
229 rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
230 Q. ESCROW: Any Closing Agent or escrow agent (collectively "Agent") receiving funds or equivalent is authorized and agrees by acceptance of them to deposit
231 them promptly, hold same in escrow and, subject to clearance, disburse them in accordance with terms and conditions of this Contract. Failure of funds to clear
232 shall not excuse Buyer's performance. If in doubt as to Agent's duties or liabilities under the provisions of this Contract, Agent may, at Agent's option, continue to
233 hold the subject matter of this escrow until the parties hereto agree to its disbursement or until a judgment of a court of competent jurisdiction shall determine the
234 rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts
235 as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to
236 the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as
237 amended. Any suit between Buyer and Seller where Agent is made a party because of acting as Agent hereunder, or in any suit wherein Agent interpleads the sub-
238 ject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred with these amounts to be paid from and out of the escrowed funds or
239 equivalent and charged and awarded as court costs in favor of the prevailing party. The Agent shall not be liable to any party or person for misdelivery to Buyer or
240 Seller of items subject to this escrow, unless such misdelivery is due to willful breach of the provisions of this Contract or gross negligence of Agent.
241 R. ATTORNEY'S FEES; COSTS: In any litigation, including breach, enforcement or interpretation, arising out of this Contract, the prevailing party in such
242 litigation, which, for purposes of this Standard, shall include Seller, Buyer and any brokers acting in agency or nonagency relationships authorized by
243 Chapter 475, F.S., as amended, shall be entitled to recover from the non prevailing party reasonable attorney's fees, costs and expenses.
244 S. FAILURE OF PERFORMANCE: If Buyer fails to perform this Contract within the time specified, including payment of all deposits, the deposit(s) paid
245 by Buyer and deposit(s) agreed to be paid, may be recovered and retained by and for the account of Seller as agreed upon liquidated damages, consid-
246 eration for the execution of this Contract and in full settlement of any claims; whereupon, Buyer and Seller shall be relieved of all obligations under this
247 Contract; or Seller, at Seller's option, may proceed in equity to enforce Seller's rights under this Contract. If for any reason other than failure of Seller to
248 make Seller's title marketable after diligent effort, Seller fails, neglects or refuses to perform this Contract, Buyer may seek specific performance or elect
249 to receive the return of Buyer's deposit(s) without thereby waiving any action for damages resulting from Seller's breach.
250 T. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES: Neither this Contract nor any notice of it shall be recorded in any public
251 records. This Contract shall bind and inure to the benefit of the parties and their successors in interest. Whenever the context permits, singular shall include
252 plural and one gender shall include all. Notice and delivery given by or to the attorney or broker representing any party shall be as effective as if given by
253 or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic media. A legible facsimile or electronic (including
254 "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original.
255 U. CONVEYANCE: Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as
256 appropriate to the status of Seller, subject only to matters contained in Paragraph VII and those otherwise accepted by Buyer. Personal Property shall, at the
257 request of Buyer, be transferred by an absolute bill of sale with warranty of title, subject only to such matters as may be otherwise provided for herein.
258 V. OTHER AGREEMENTS: No prior or present agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No
259 modification to or change in this Contract shall be valid or binding upon the parties unless in writing and executed by the parties intended to be bound by it.
260 W. SELLER DISCLOSURE: There are no facts known to Seller materially affecting the value of the Property which are not readily observable by Buyer or
261 which have not been disclosed to Buyer.
262 X. PROPERTY MAINTENANCE; PROPERTY ACCESS; REPAIR STANDARDS; ASSIGNMENT OF CONTRACTS AND WARRANTIES: Seller shall
263 maintain the Property, including, but not limited to lawn, shrubbery, and pool in the condition existing as of Effective Date, ordinary wear and tear and
264 Casualty Loss excepted. Seller shall, upon reasonable notice, provide utilities service and access to the Property for appraisal and inspections, including
265 a walk-through prior to Closing, to confirm that all items of Personal Property are on the Real Property and, subject to the foregoing, that all required
266 repairs and replacements have been made, and that the Property has been maintained as required by this Standard. All repairs and replacements shall
267 be completed in a good and workmanlike manner, in accordance with all requirements of law, and shall consist of materials or items of quality, value,
268 capacity and performance comparable to, or better than, that existing as of the Effective Date. Seller will assign all assignable repair and treatment con-
269 tracts and warranties to Buyer at Closing.
270 Y. 1031 EXCHANGE: If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with Closing or deferred) with respect to the
271 Property under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the
272 Exchange, including the execution of documents; provided (1) the cooperating party shall incur no liability or expense related to the Exchange and (2) the
273 Closing shall not be contingent upon, nor extended or delayed by, such Exchange.



THIS FORM HAS BEEN APPROVED BY THE FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR

## Comprehensive Rider to the FAR/BAR Contract for Sale and Purchase
FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR



If initialed by all parties, the clause below will be incorporated into the FAR/BAR Contract for Sale and Purchase between

_____ Wyman Stokes Builder, Inc. _____ (Seller)
and _____ Patricia A. Jackson _____ (Buyer)
concerning the Property described as ___13606___ Citrus Creek Ct. Fort Myers, FL 33905 _____

### HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

Buyer's initials - Seller's initials: If to be made a part of the Contract.
(     )(     ) - - (     )(     )

IF THE DISCLOSURE SUMMARY REQUIRED BY CHAPTER 720, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.
BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.

Disclosure Summary For _____ Verandah Community Association _____
(Name of Community)

(a)  AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSO-CIATION ("ASSOCIATION").
(b)  THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCU-PANCY OF PROPERTIES IN THIS COMMUNITY.
(c)  YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $    2,262.00     PER     year     . YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $    0.00     PER    .
(d)  YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DIS-TRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
(e)  YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIA-TION COULD RESULT IN A LIEN ON YOUR PROPERTY.
(f)  THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILI-TIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $    0.00     PER    .
(g)  THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
(h)  THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PUR-CHASING PROPERTY.
(i)  THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

BUYER _Patricia A Jackson_ Date _7-12-08_ BUYER _____ Date_____
Patricia A. Jackson

FBCR-9   Rev. 9/07   © 2007   Florida Association of REALTORS® and The Florida Bar   All Rights Reserved
Page _____ of Comprehensive Rider to the FAR/BAR Contract for Sale and Purchase
This software is licensed to [Donald Newman - Bonita Bay Group Realty, Inc] www.transactiondesk.com.

THIS FORM HAS BEEN APPROVED BY THE FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR

## Comprehensive Rider to the FAR/BAR Contract for Sale and Purchase
FLORIDA ASSOCIATION OF REALTORS® AND THE FLORIDA BAR



If initialed by all parties, the clause below will be incorporated into the FAR/BAR Contract for Sale and Purchase between

_____ Wyman Stokes Builder, Inc. _____ (Seller)

and _____ Patricia A. Jackson _____ (Buyer)

concerning the Property described as ___ 13606   Citrus Creek Ct., Fort Myers, FL 33905 _____

### HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

Buyer's initials - Seller's initials: If to be made a part of the Contract.

(      ) (        ) - - (        ) (          )

IF THE DISCLOSURE SUMMARY REQUIRED BY CHAPTER 720, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.
BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.

Disclosure Summary For _____ Citrus Creek at Verandah Homeowner's Association ____ __ __

(Name of Community)

(a) AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSO- CIATION ("ASSOCIATION").

(b) THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCU- PANCY OF PROPERTIES IN THIS COMMUNITY.

(c) YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $   250.00   PER   month   . YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $___ __0.00   PER ____

(d) YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DIS- TRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.

(e) YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIA- TION COULD RESULT IN A LIEN ON YOUR PROPERTY.

(f) THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILI- TIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $ ___ __0.00 ____ PER ____

(g) THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.

(h) THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PUR- CHASING PROPERTY.

(i) THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

BUYER _Patricia A. Jackson_ Date _7-12-08_  BUYER _____ Date_____

Patricia A. Jackson

FBCR-9   Rev. 9/07   © 2007   Florida Association of REALTORS® and The Florida Bar   All Rights Reserved
Page _____ of Comprehensive Rider to the FAR/BAR Contract for Sale and Purchase

This software is licensed to [Donald Newman - Bonita Bay Group Realty, Inc] www.transactiondesk.com.