# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

LAURA HAYA, DANIEL HAYA AND IRENE
HAYA, individually, behalf of all others,
similarly situated, et al.,

        Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A
SHANDONG TAIHE DONGXIN CO., LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; QINHUANGDAO TAISHAN BUILDING
MATERIALS CO., LTD. A/K/A QINHUANG
DAO TAISHAN BUILDING MATERIALS CO.,
LTD., et al.,

        Defendants.

CASE NO.: 11-1077
SECT. L MAG. 2

_____/

## DEFENDANT J. HELM CONSTRUCTION, INC.'S CROSS CLAIM

COMES NOW Defendant/Cross-Plaintiff, J. Helm Construction, Inc. ("**J. Helm**"), by

and through its undersigned counsel, and alleges for its Cross-Claim[1] against Defendants/Cross-

Defendants Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. ("**TG**"), Taian

Taishan Plasterboard Co., Ltd. ("**TTP**"), and Qinhuangdao Taishan Building Materials Co., Ltd.

a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd. ("**QTBM**") (collectively, the

---

[1]     Plaintiffs commenced this action on May 10, 2011 by filing Plaintiffs' Amended
Omnibus Class Action Complaint (Omni IX) in this cause. Plaintiffs twice amended the
Complaint. Thus, the operative complaint is the Second Amended Complaint, (referred to herein
as the "Complaint"). J. Helm moved to dismiss the claims against it in the Second Amended
Complaint. These Cross-Claims are therefore being brought to the extent all claims against J.
Helm are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims
against J. Helm are not dismissed with prejudice, J. Helm also expressly reserves the right to
raise any and all available defenses and to respond to the Complaint accordingly.

"**Taishan Cross-Claim Defendants**"), Banner Supply Co. ("**Banner Supply Co.**"), and Banner Supply Company Port St. Lucie, LLC ("**Banner Port St. Lucie**"), as follows:

### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against J. Helm.

3.      J. Helm was and is a Florida corporation doing business in Palm Beach County, Florida, where this cause of action arose.   At all material times, J. Helm was a builder of residential homes in Palm Beach County.

4.      J. Helm has been named as a defendant in the above-styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by J. Helm in the construction of their homes was defective and caused damages to Plaintiffs.

5.      J. Helm denies any liability owing to Plaintiffs or to any such class of plaintiffs, should a class be certified.

6.      TG, TTP, QTBM, Banner Supply Co. and Banner Port St. Lucie (collectively, the "Cross-Claim Defendants") have also been named as defendants in the above-styled action.  J. Helm adopts and incorporates, as if fully set forth herein, paragraphs 9-13 and Exhibit B ¶¶ 23 and 25 of the Complaint, identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper

{20937082.2}

venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant

Cross-Claim and over the Cross-Claim Defendants.

### General Allegations

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes

were built using defective drywall designed, manufactured and processed in China, and that

builders, such as J. Helm, are liable for damages to Plaintiffs.[2]

10.     Plaintiffs allege that the drywall installed in their homes (the **"Homes"**) has a

noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to

other property within the Homes, including, but not limited to, wiring, plumbing, appliances and

Plaintiffs' personal property (the "**Other Property**").

11.     Plaintiffs further allege that the drywall contained in their Homes was

manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of

the Cross-Claim Defendants.

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they

have suffered personal injuries.

13.     In connection with the construction of certain homes in Palm Beach County, J.

Helm purchased drywall that was installed in the Homes directly from Banner Supply Co. and/or

Banner Port St. Lucie (together, "**Banner**").

14.     At all material times, Banner knew that the drywall purchased for the Homes was

going to be used to construct residential homes.  Banner knew that J. Helm required and

---

[2]      The named class Plaintiffs and other members of the putative class have asserted claims against J. Helm in this Action, as well as other actions in the state and federal courts.  The damages sought by J. Helm in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class plaintiff and any other member of the putative class in any and all state and federal courts.

expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.*, safe and fit for use in the construction of residential homes.

15.     Upon information and belief, Banner also procured drywall that was installed in the Homes from the Taishan Cross-Claim Defendants, who were manufacturing drywall to be exported to the United States. At all material times, the Taishan Cross-Claim Defendants knew that such drywall was going to be used in the construction of residential homes.

16.     Upon information and belief, in mid-to-late Fall of 2006, Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by one of its Chinese manufacturers emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

17.     Upon information and belief, Banner also conducted tests of the drywall installed in certain South Florida residential homes.

18.     Upon information and belief, Banner did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

19.     Upon information and belief, in a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Banner entered into a confidential settlement agreement with one of its Chinese manufacturers in January of 2007 (the "**Secret Agreement**").

20.     The Secret Agreement stipulated that the Chinese manufacturer would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

21.     The Secret Agreement purposefully kept consumers, such as J. Helm and other builders, contractors and installers, in the dark about the problems with the drywall.  As such, J. Helm did not know and was not made aware of the problems with the drywall.

22.     The drywall manufactured, exported, imported, distributed and/or sold by Banner for use in the construction of the Homes was not altered and/or otherwise substantively changed by J. Helm.

23.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by J. Helm, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

24.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than J. Helm, to know of the drywall's applications, performance, and dangers.

25.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, distributing and/or

selling the defective drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages to Plaintiffs.

26. Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the gypsum drywall product purchased by J. Helm for installation in the Homes.

27. Moreover, J. Helm did not know and was never informed by any of the Cross-Claim Defendants or any other entity that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

28. Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to J. Helm in responding to Plaintiffs' concerns and defending the actions filed by Plaintiffs. Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

29. All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

### COUNT 1 – COMMON LAW INDEMNITY
#### (Against Taishan Gypsum Co., Ltd.)

30. J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

31. In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

32.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

33.     J. Helm is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

34.     J. Helm is entirely without fault for the injuries alleged by Plaintiffs.

35.     Any injuries suffered by Plaintiffs were due to the acts or omissions of TG.

36.     A special relationship existed between TG and J. Helm such that any liability imposed upon J. Helm in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TG.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, TG is wholly to blame for Plaintiffs' injuries.

37.     As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TG to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

38.     If J. Helm is found to be liable to Plaintiffs, TG is liable to J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against J. Helm in this action and/or any other

action brought by Plaintiffs against J. Helm, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

WHEREFORE, J. Helm demands judgment for indemnity in its favor against Taishan Gypsum Co., Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taishan Gypsum Co., Ltd.)

39.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

40.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

41.   Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

42.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defects in the drywall contained in the Homes.

43.   Without admitting any liability or damages to Plaintiffs, should J. Helm be found liable, TG would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

44.    J. Helm has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

45.    To the extent that any common liability is found with respect to J. Helm, J. Helm hereby asserts its right of contribution against TG for its pro rata share of the liability.

46.    TG should be required to repay J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, J. Helm is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against J. Helm, in excess of its pro rata share of any common liability.

**WHEREFORE**, J. Helm demands that judgment be entered against Taishan Gypsum Co., Ltd. for its pro rata share of the liability, if any, found against J. Helm in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
### (Against Taishan Gypsum Co., Ltd.)

47.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

48.    This is an action, stated in the alternative, for equitable subrogation.

49.    Plaintiffs in the Complaint allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

50.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

51.     J. Helm is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

52.     Without admitting any liability or damages to Plaintiffs, J. Helm is not primarily liable for any liability to the Plaintiffs.

53.     To the extent that J. Helm is required to pay damages for any fault of TG to protect its own interests, and not as a volunteer, J. Helm would be entitled to reimbursement from TG under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

54.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, J. Helm demands judgment in its favor and against Taishan Gypsum Co., Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – NEGLIGENCE
**(Against Taishan Gypsum Co., Ltd.)**

55.     J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

56.     Plaintiffs in the Complaint allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

57.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

58.     J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TG.

59.     TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TG owed J. Helm a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of J. Helm's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

60.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

61.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to J. Helm by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

62.     To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

63.     To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose J. Helm to substantial liability and damages. If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to J. Helm would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

64.     Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by TG's breaches of the duty of care owed to J. Helm, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  TG's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 5 – NEGLIGENT FAILURE TO WARN
### (Against Taishan Gypsum Co., Ltd.)

65.     J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

66.     In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

67.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

68.     J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

69.     TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TG owed J. Helm a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as J. Helm about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as J. Helm about any problems or dangers in using the drywall for residential construction.

70.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

71.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that unless it warned J. Helm of the risk of using the drywall, J. Helm would suffer harm. However, TG failed to provide an adequate warning of such danger.

72.   J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, J. Helm had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

73.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to J. Helm by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as J. Helm about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as J. Helm about any problems or

dangers in using the drywall for residential construction, about which TG knew or reasonably should have known.

74.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

75.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose J. Helm to substantial liability and damages. If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TG would or could have foreseen that damages to J. Helm would ensue as a result of failing to disclose and/or warn of drywall defects.

76.     Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by TG's breaches of the duty of care, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  TG's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taishan Gypsum Co., Ltd.)

77.     J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

78.     Plaintiffs in the Complaint allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

79.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

80.     J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

81.     To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TG's control and/or was sold to J. Helm, TG knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

{20937082;2}

82.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  TG breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

83.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

84.     Consumers, such as J. Helm, to whom a warning might have been provided, could have been identified by TG and could reasonably be assumed to be unaware of the risk of harm.

85.     A warning could have been effectively communicated to consumers such as J. Helm and acted on by them.

86.     At all material times, TG stood in a better position than J. Helm to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that J. Helm was unaware of potential dangers and/or risk of harm associated with the use of TG's drywall product in residential construction.

87.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in TG's position would have provided a post-sale warning.

88.     Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by TG's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  TG's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 7 – STRICT PRODUCTS LIABILITY
### (Against Taishan Gypsum Co., Ltd.)

89.     J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

90.     Upon information and belief, at all material times TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

91.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

92.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

93.    TG expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

94.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

95.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TG directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and

attorneys' fees incurred by J. Helm in defending against these claims. TG's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taishan Gypsum Co., Ltd.)

96.     J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

97.     Upon information and belief, at all material times TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

98.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

99.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

100.    TG expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

101.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

102.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TG was required to provide a warning. However, TG failed to provide an adequate warning of such danger.

103.   J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

104.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TG failed to warn J. Helm of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, J. Helm had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

105.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's failure to adequately warn of the drywall's

unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. TG's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Taishan Gypsum Co., Ltd.)

106.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

107.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

108.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

109.    At all material times, J. Helm was a person and a consumer of drywall as defined under FDUTPA.

110.  At all material times, TG engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as J. Helm.

111.  Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

112.  At the time TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, TG represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

113.  In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

114.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, TG knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

115.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from TG's deceptive

and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

116.   To the extent Plaintiffs are successful in proving their claims, TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 28 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

117.   TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as J. Helm acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after

it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

118.   TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as J. Helm.

119.   To the extent Plaintiffs are successful in proving their claims, J. Helm did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TG's violations of FDUTPA directly and proximately caused and/or exposed J. Helm to substantial liability and actual damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  TG's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 10 – UNJUST ENRICHMENT
**(Against Taishan Gypsum Co., Ltd.)**

120.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

121.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

122.   Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

123.   TG received money from J. Helm as payment for the defective drywall installed in the Homes.

124.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, J. Helm conferred a benefit, *i.e.*, funds and profit, to TG, which had knowledge thereof.

125.   TG voluntarily accepted and retained the benefit conferred upon it by J. Helm.

126.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.

127.   The circumstances described herein under which TG profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for TG to retain those funds and profits.

128.   J. Helm has no adequate remedy at law.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 11 – COMMON LAW INDEMNITY
### (Against Taian Taishan Plasterboard Co., Ltd.)

129.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

130.   Plaintiffs in the Complaint allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

131.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

132.   J. Helm is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

133.   J. Helm is entirely without fault for the injuries alleged by Plaintiffs.

134.   Any injuries suffered by Plaintiffs were due to the acts or omissions of TTP.

135.   A special relationship existed between TTP and J. Helm such that any liability imposed upon J. Helm in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TTP.   To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, TTP is wholly to blame for Plaintiffs' injuries.

136.   As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TTP to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

137.   If J. Helm is found to be liable to Plaintiffs, TTP is liable to J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

**WHEREFORE**, J. Helm demands judgment for indemnity in its favor against Taian Taishan Plasterboard Co., Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

## COUNT 12 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taian Taishan Plasterboard Co., Ltd.)

138.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

139.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

140.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

141.    Plaintiffs, in the Complaint, allege various claims against J. Helm for damages caused by defects in the drywall contained in the Homes.

142.    Without admitting any liability or damages to Plaintiffs, should J. Helm be found liable, TTP would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

143.    J. Helm has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

144.    To the extent that any common liability is found with respect to J. Helm, J. Helm hereby asserts its right of contribution against TTP for its pro rata share of the liability.

145.    TTP should be required to repay J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, J. Helm is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against J. Helm, in excess of its pro rata share of any common liability.

{20937082;2}

**WHEREFORE**, J. Helm demands that judgment be entered against Taian Taishan Plasterboard Co., Ltd. for its pro rata share of the liability, if any, found against J. Helm in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

**COUNT 13 – EQUITABLE SUBROGATION**
**(Against Taian Taishan Plasterboard Co., Ltd.)**

146.     J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

147.     This is an action, stated in the alternative, for equitable subrogation.

148.     Plaintiffs in the Complaint allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

149.     Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

150.     J. Helm is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

151.     Without admitting any liability or damages to Plaintiffs, J. Helm is not primarily liable for any liability to the Plaintiffs.

152.     To the extent that J. Helm is required to pay damages for any fault of TTP to protect its own interests, and not as a volunteer, J. Helm would be entitled to reimbursement from TTP under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against J.

Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

153.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, J. Helm demands judgment in its favor and against Taian Taishan Plasterboard Co., Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 14 – NEGLIGENCE
### (Against Taian Taishan Plasterboard Co., Ltd.)

154.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

155.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

156.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

157.    J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TTP.

158.   TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed J. Helm a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of J. Helm's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

159.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

160.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to J. Helm by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensure that it was reasonably safe for its intended use, or reasonably

intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

161.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duties of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

162.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose J. Helm to substantial liability and damages.  If TTP had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to J. Helm would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

163.    Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by TTP's breaches of the duty of care owed to J. Helm, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. TTP's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 15 – NEGLIGENT FAILURE TO WARN
### (Against Taian Taishan Plasterboard Co., Ltd.)

164.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

165.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

166.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

167.    J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

168.    TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed J. Helm a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as J. Helm about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as J. Helm about any problems or dangers in using the drywall for residential construction.

169.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

170.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that unless it warned J. Helm of the risk of using the drywall, J. Helm would suffer harm.  However, TTP failed to provide an adequate warning of such danger.

171.   J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, J. Helm had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

172.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to J. Helm by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as J. Helm about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as J. Helm about any problems or dangers in using the drywall for residential construction, about which TTP knew or reasonably should have known.

173.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duty of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

174.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose J. Helm to substantial liability and damages. If TTP had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the

same circumstances would exert, TTP would or could have foreseen that damages to J. Helm would ensue as a result of failing to disclose and/or warn of drywall defects.

175.     Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by TTP's breaches of its duties of care, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  TTP's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taian Taishan Plasterboard Co., Ltd.)

176.     J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

177.     Plaintiffs in the Complaint allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

178.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

179.   J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

180.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TTP's control and/or was sold to J. Helm, TTP knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

181.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  TTP breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

182.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

183.   Consumers, such as J. Helm, to whom a warning might have been provided, could have been identified by TTP and could reasonably be assumed to be unaware of the risk of harm.

184.   A warning could have been effectively communicated to consumers such as J. Helm and acted on by them.

185.   At all material times, TTP stood in a better position than J. Helm to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that J. Helm was unaware of potential dangers and/or risk of harm associated with the use of TTP's drywall product in residential construction.

186.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in TTP's position would have provided a post-sale warning.

187.   Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by TTP's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  TTP's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

{20937082;2}

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 17 – STRICT PRODUCTS LIABILITY
### (Against Taian Taishan Plasterboard Co., Ltd.)

188.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

189.    Upon information and belief, at all material times TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

190.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

191.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

192.    TTP expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

193.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

194.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TTP directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  TTP's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 18 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taian Taishan Plasterboard Co., Ltd.)

195.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

196.   Upon information and belief, at all material times TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

197.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

198.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

199.   TTP expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

200.   Plaintiffs in the Complaint allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

201.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TTP was required to provide a warning. However, TTP failed to provide an adequate warning of such danger.

202.   J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

203.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TTP failed to warn J. Helm of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, J. Helm had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

204.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. TTP's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 19- VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Taian Taishan Plasterboard Co., Ltd.)

205.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

206.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

207.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

208.    At all material times, J. Helm was a person and a consumer of drywall as defined under FDUTPA.

209.    At all material times, TTP engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as J. Helm.

210.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

211.    At the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, TTP represented that the drywall was fit for the

ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

212.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

213.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, TTP knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

214.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from TTP's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

215.   To the extent Plaintiffs are successful in proving their claims, TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce

and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 28 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

216. TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as J. Helm acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

217. TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as J. Helm.

218.    To the extent Plaintiffs are successful in proving their claims, J. Helm did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TTP's violations of FDUTPA directly and proximately caused and/or exposed J. Helm to substantial liability and actual damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. TTP's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 20 – UNJUST ENRICHMENT
### (Against Taian Taishan Plasterboard Co., Ltd.)

219.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

220.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

221.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

222.    TTP received money from J. Helm as payment for the defective drywall installed in the Homes.

223.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, J. Helm conferred a benefit, *i.e.*, funds and profit, to TTP, which had knowledge thereof.

224.   TTP voluntarily accepted and retained the benefit conferred upon it by J. Helm.

225.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.

226.   The circumstances described herein, under which TTP profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall, make it inequitable for TTP to retain those funds and profits.

227.   J. Helm has no adequate remedy at law.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 21 – COMMON LAW INDEMNITY
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

228.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

229.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

230.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

231.    J. Helm is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by QTBM.

232.    J. Helm is entirely without fault for the injuries alleged by Plaintiffs.

233.    Any injuries suffered by Plaintiffs were due to the acts or omissions of QTBM.

234.    A special relationship existed between QTBM and J. Helm such that any liability imposed upon J. Helm in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to QTBM.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM was defective, QTBM is wholly to blame for Plaintiffs' injuries.

235.    As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of QTBM to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute,

place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

236.    If J. Helm is found to be liable to Plaintiffs, QTBM is liable to J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

**WHEREFORE**, J. Helm demands judgment for indemnity in its favor against Qinhuangdao Taishan Building Materials Co., Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 22 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

237.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

238.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

239.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

240.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defects in the drywall contained in the Homes.

241.    Without admitting any liability or damages to Plaintiffs, should J. Helm be found liable, QTBM would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

242.    J. Helm has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

243.    To the extent that any common liability is found with respect to J. Helm, J. Helm hereby asserts its right of contribution against QTBM for its pro rata share of the liability.

244.    QTBM should be required to repay J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, J. Helm is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against J. Helm, in excess of its pro rata share of any common liability.

**WHEREFORE**, J. Helm demands that judgment be entered against Qinhuangdao Taishan Building Materials Co., Ltd. for its pro rata share of the liability, if any, found against J. Helm in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 23 – EQUITABLE SUBROGATION
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

245.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

246.    This is an action, stated in the alternative, for equitable subrogation.

247.   Plaintiffs in the Complaint allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

248.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

249.   J. Helm is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

250.   Without admitting any liability or damages to Plaintiffs, J. Helm is not primarily liable for any liability to the Plaintiffs.

251.   To the extent that J. Helm is required to pay damages for any fault of QTBM to protect its own interests, and not as a volunteer, J. Helm would be entitled to reimbursement from QTBM under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

252.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, J. Helm demands judgment in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 24 – NEGLIGENCE
**(Against Qinhuangdao Taishan Building Materials Co., Ltd.)**

253.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

254.    Plaintiffs in the Complaint allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

255.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

256.    J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by QTBM.

257.    QTBM had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, QTBM owed J. Helm a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of J. Helm's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of

commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

258.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

259.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM breached the duty of care owed to J. Helm by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing,

and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

260.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in QTBM's duty of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

261.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, QTBM knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose J. Helm to substantial liability and damages. If QTBM had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to J. Helm would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

262.    Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by QTBM's breaches of the duty of care owed to J. Helm, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as

reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. QTBM's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 25 – NEGLIGENT FAILURE TO WARN
**(Against Qinhuangdao Taishan Building Materials Co., Ltd.)**

263.     J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

264.     In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

265.     Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

266.     J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

267.     QTBM had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, QTBM owed J. Helm a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed

into the stream of commerce, and/or sold by QTBM or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as J. Helm about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as J. Helm about any problems or dangers in using the drywall for residential construction.

268.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

269.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that unless it warned J. Helm of the risk of using the drywall, J. Helm would suffer harm. However, QTBM failed to provide an adequate warning of such danger.

270.   J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.   Without a warning, J. Helm had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

271.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, QTBM breached the duty of care owed to J. Helm by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as J. Helm about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as J. Helm about any problems or dangers in using the drywall for residential construction, about which QTBM knew or reasonably should have known.

272.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in QTBM's duty of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

273.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, QTBM knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose J. Helm to substantial liability and damages. If QTBM had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, QTBM would or could have foreseen that damages to J. Helm would ensue as a result of failing to disclose and/or warn of drywall defects.

274.   Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by QTBM's breaches of the duty of care, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs

against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. QTBM's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 26 – BREACH OF POST-SALE DUTY TO WARN
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

275.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

276.   Plaintiffs in the Complaint allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

277.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

278.   J. Helm was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

279.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM was defective, unreasonably

dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left QTBM's control and/or was sold to J. Helm, QTBM knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

280.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, QTBM, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   QTBM breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

281.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

282.    Consumers, such as J. Helm, to whom a warning might have been provided, could have been identified by QTBM and could reasonably be assumed to be unaware of the risk of harm.

283.    A warning could have been effectively communicated to consumers such as J. Helm and acted on by them.

284.   At all material times, QTBM stood in a better position than J. Helm to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that J. Helm was unaware of potential dangers and/or risk of harm associated with the use of QTBM's drywall product in residential construction.

285.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in QTBM's position would have provided a post-sale warning.

286.   Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by QTBM's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.   QTBM's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 27 – STRICT PRODUCTS LIABILITY
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

287.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

{20937082;2}

288.   Upon information and belief, at all material times QTBM was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

289.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

290.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM, QTBM intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

291.   QTBM expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

292.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

293.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by QTBM directly and proximately caused and/or exposed

J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. QTBM's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 28 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

294.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

295.    Upon information and belief, at all material times QTBM was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

296.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

297.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce,

and/or sold by QTBM, QTBM intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

298.   QTBM expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

299.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

300.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which QTBM was required to provide a warning. However, QTBM failed to provide an adequate warning of such danger.

301.   J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

302.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because QTBM failed to warn J. Helm of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, J. Helm had no way of anticipating the drywall was defective and unreasonably

dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

303.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. QTBM's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 29 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

304.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

305.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

306.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

307.    At all material times, J. Helm was a person and a consumer of drywall as defined under FDUTPA.

308.    At all material times, QTBM engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as J. Helm.

309.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

310.    At the time QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, QTBM represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

311.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

312.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, at the time QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, QTBM knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

313.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from QTBM's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

314.   To the extent Plaintiffs are successful in proving their claims, QTBM's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 28 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

315.   QTBM's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to

deceive and/or mislead a consumer such as J. Helm acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

316.   QTBM's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its  failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as J. Helm.

317.   To the extent Plaintiffs are successful in proving their claims, J. Helm did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. QTBM's violations of FDUTPA directly and proximately caused and/or exposed J. Helm to substantial liability and actual damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  QTBM's wrongful

conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 30 – UNJUST ENRICHMENT
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

318.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

319.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

320.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

321.   QTBM received money from J. Helm as payment for the defective drywall installed in the Homes.

322.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, J. Helm conferred a benefit, *i.e.*, funds and profit, to QTBM, which had knowledge thereof.

323.   QTBM voluntarily accepted and retained the benefit conferred upon it by J. Helm.

324.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's acts and omissions in distributing, placing

into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.

325.    The circumstances described herein under which QTBM profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for QTBM to retain those funds and profits.

326.    J. Helm has no adequate remedy at law.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 31 – COMMON LAW INDEMNITY
### (Against Banner Supply Co.)

327.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

328.    Plaintiffs in the Complaint allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

329.    J. Helm is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Supply Co. J. Helm justifiably relied on Banner

Supply Co. to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

330.   J. Helm is entirely without fault for the injuries alleged by Plaintiffs.

331.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Supply Co.

332.   A special relationship existed between Banner Supply Co. and J. Helm such that any liability imposed upon J. Helm in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Supply Co.  J. Helm purchased drywall from Banner Supply Co. to be installed in the Homes.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Supply Co. was defective and wholly to blame for Plaintiffs' injuries.

333.   As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Supply Co. to distribute, supply and/or sell drywall fit for its intended purpose.

334.   If J. Helm is found to be liable to Plaintiffs, Banner Supply Co. is liable to J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

**WHEREFORE**, J. Helm demands judgment for indemnity in its favor against Banner Supply Co., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 32 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Banner Supply Co.)**

335.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

336.    This is an action, stated in the alternative, against Banner Supply Co. for contribution pursuant to Section 768.31, Florida Statutes.

337.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defects in the drywall contained in the Homes.

338.    Without admitting any liability or damages to Plaintiffs, should J. Helm be found liable, Banner Supply Co. would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

339.    J. Helm has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

340.    To the extent that any common liability is found with respect to J. Helm, J. Helm hereby asserts its right of contribution against Banner Supply Co. for its pro rata share of the liability.

341.    Banner Supply Co. should be required to repay J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, J. Helm is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims in this

action and/or any other action brought by Plaintiffs against J. Helm, in excess of its pro rata share of any common liability.

**WHEREFORE**, J. Helm demands that judgment be entered against Banner Supply Co. for its pro rata share of the liability, if any, found against J. Helm in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

<u>**COUNT 33 – EQUITABLE SUBROGATION**</u>
**(Against Banner Supply Co.)**

342.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

343.    This is an action, stated in the alternative, against Banner Supply Co. for equitable subrogation.

344.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

345.    J. Helm is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Supply Co.  J. Helm justifiably relied on Banner Supply Co. to distribute, sell and/or supply drywall that was fit for the ordinary purpose for which it was intended, i.e. safe and fit for use in the construction of residential homes.

346.    Without admitting any liability or damages to Plaintiffs, J. Helm is not primarily liable for any liability to the Plaintiffs.

347.    To the extent that J. Helm is required to pay damages for any fault of Banner Supply Co. to protect its own interests, and not as a volunteer, J. Helm would be entitled to reimbursement from Banner Supply Co. under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action

brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

348.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, J. Helm demands judgment in its favor and against Banner Supply Co. for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 34 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLA. STAT. § 672.314
### (Against Banner Supply Co.)

349.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

350.   This is an action against Banner Supply Co. for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

351.   J. Helm purchased drywall from Banner Supply Co. to be installed in the Homes. Banner Supply Co. knew that J. Helm required and expected the drywall it distributed, supplied and/or sold to be fit for the ordinary purpose for which it was intended, i.e. safe and fit for use in the construction of residential homes, and J. Helm justifiably relied on Banner Supply Co.'s skill and judgment to supply such drywall for the construction of residential homes.

352.   Pursuant to the relationship between the parties, Banner Supply Co. is deemed to have provided J. Helm with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Banner Supply Co.

353.    The drywall distributed, supplied and/or sold by Banner Supply Co. for use in the construction of the Homes was not altered and/or otherwise substantively changed by J. Helm.

354.    Pursuant to Fla. Stat. § 672.314 and/or common law, Banner Supply Co. warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, i.e. safe and fit for use in the construction of residential homes.

355.    Plaintiffs in the Complaint allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.  J. Helm denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and J. Helm is found liable to Plaintiffs, Banner Supply Co. breached the implied warranty of merchantability by distributing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

356.    As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Supply Co. to distribute, supply and/or sell drywall fit for its intended purpose, i.e., for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

357.   J. Helm timely notified Banner Supply Co. of the alleged defective gypsum drywall, but Banner Supply Co. has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** J. Helm demands judgment for damages in its favor and against Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 35 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Banner Supply Co.)

358.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

359.   This is an action against Banner Supply Co. for breach of the implied warranty of fitness.

360.   J. Helm purchased drywall from Banner Supply Co. to be installed in the Home.

361.   Banner Supply Co. knew that J. Helm required and expected the drywall that Banner Supply Co. distributed, supplied and/or sold to be safe and fit for use in the construction of residential homes.

362.   J. Helm justifiably relied on Banner Supply Co.'s skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

363.   Pursuant to the relationship between the parties, Banner Supply Co. is deemed to have provided J. Helm with an implied warranty of fitness as to the drywall materials distributed, supplied and/or sold by Banner Supply Co.

364.   The drywall distributed, supplied and/or sold by Banner Supply Co. for use in the construction of the Homes was not altered and/or otherwise substantively changed by J. Helm.

365.   Banner Supply Co. impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

366.   In the Complaint, Plaintiffs allege that the defective drywall in the Homes proximately caused their injuries.  J. Helm denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and J. Helm is found liable to Plaintiffs, Banner Supply Co. breached the implied warranty of fitness by distributing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

367.   As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Supply Co. to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. Banner Supply Co.'s wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

368.   J. Helm timely notified Banner Supply Co. of the defective gypsum drywall, but Banner Supply Co. has failed to repair or replace the defective gypsum drywall installed in the Homes.

**WHEREFORE,** J. Helm demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 36 – NEGLIGENCE
### (Against Banner Supply Co.)

369.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

370.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

371.   Banner Supply Co. distributed, supplied and/or sold to J. Helm the gypsum drywall that was installed in the Homes.

372.   As such, Banner Supply Co. owed J. Helm a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of J. Helm's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

373.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

374.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner

Supply Co. breached its duty of care to J. Helm by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner Supply Co. sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply J. Helm with drywall that complied with all applicable building and industry standards.

375.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Supply Co.'s duty of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

376.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose J. Helm to substantial liability and damages. If Banner Supply Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to J. Helm would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

{20937082;2}

377.    Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by Banner Supply Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other actions brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Cross Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 37 – NEGLIGENT FAILURE TO WARN
### (Against Banner Supply Co.)

378.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

379.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

380.    Banner Supply Co. distributed, supplied and/or sold to J. Helm the gypsum drywall that was installed in the Homes.

381.    As such, Banner Supply Co. owed J. Helm a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or

supplied or disclose any adverse effects associated with the drywall; (ii) warn J. Helm about any dangers inherent in the drywall, and/or (iii) warn J. Helm about any problems or dangers in using the drywall for residential construction.

382.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

383.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that unless it warned J. Helm of the risk of using the drywall it distributed, sold, and/or supplied, J. Helm would suffer harm. However, Banner Supply Co. failed to provide an adequate warning of such danger.

384.   J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, J. Helm had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

385.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. breached its duty of care to J. Helm by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which

it knew or reasonably should have known about; (ii) failing to warn J. Helm about any dangers inherent in the drywall, and/or (iii) failing to warn J. Helm about any problems or dangers in using the drywall for residential construction, about which Banner Supply Co. knew or reasonably should have known.

386.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Supply Co.'s duty of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

387.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose J. Helm to substantial liability and damages. If Banner Supply Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to J. Helm would ensue as a result of failing to disclose and/or warn of drywall defects.

388.   Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by Banner Supply Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. Banner Supply Co.'s

wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 38 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner Supply Co.)

389.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

390.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

391.    Banner Supply Co. distributed, sold and/or supplied to J. Helm the gypsum drywall that was installed in the Homes.

392.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Supply Co. was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Supply Co.'s control and/or was sold to J. Helm, Banner Supply Co. knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

393.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co., as the distributor, supplier and/or seller of the drywall, had a

duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner Supply Co. breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

394.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

395.   Consumers, such as J. Helm, to whom a warning might have been provided could have been identified by Banner Supply Co.

396.   A warning could have been effectively communicated to consumers such as J. Helm and acted on by them.

397.   At all material times, Banner Supply Co. stood in a better position than J. Helm to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that J. Helm was unaware of potential dangers and/or risk of harm associated with the use of Banner Supply Co.'s drywall product in residential construction.

398.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Supply Co.'s position would have provided a post-sale warning.

399.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous

and/or not reasonably safe for its intended use as more fully alleged in the Complaint, J. Helm was damaged by Banner Supply Co.'s breach of its post-sale duty to warn, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 39 – STRICT PRODUCTS LIABILITY
### (Against Banner Supply Co.)

400.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

401.    At all material times, Banner Supply Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

402.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co. to J. Helm.

403.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co., Banner Supply Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

{20937082;2}

86

404.     Banner Supply Co. expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

405.     In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

406.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Supply Co. directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 40 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Supply Co.)

407.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

408.    At all material times, Banner Supply Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

409.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Supply Co. to J. Helm.

410.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co., Banner Supply Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

411.    Banner Supply Co. expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

412.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

413.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Supply Co. was required to provide a warning. However, Banner Supply Co. failed to provide an adequate warning of such danger.

414.     J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

415.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Supply Co. failed to warn J. Helm of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, J. Helm had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

416.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 41 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Banner Supply Co.)

417.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

418.    This is an action for violation of §§ 501.201, et seq., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

419.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

420.    At all material times, J. Helm was a person and a consumer of drywall as defined under FDUTPA.

421.    At all material times, Banner Supply Co. engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as J. Helm.

422.    Banner Supply Co. advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

423.    At the time Banner Supply Co. advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Supply Co. represented that the drywall was fit for the ordinary

purpose for which it was intended, i.e. safe and fit for use in the construction of residential homes, and free from defects.

424.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

425.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Supply Co. sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Supply Co. knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

426.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner Supply Co.'s unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

427.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to

disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, as more specifically alleged in paragraphs 16-27, herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

428.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as J. Helm acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, i.e. safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

429.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as J. Helm.

430.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, J. Helm did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Supply Co.'s violations of FDUTPA directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Co., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 42 – UNJUST ENRICHMENT
### (Against Banner Supply Co.)

431.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

432.    This is an action, stated in the alternative, against Banner Supply Co. for unjust enrichment.

433.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

434.    Banner Supply Co. distributed, sold and/or supplied to J. Helm the gypsum drywall that was installed in the Homes.

{20937082;2}

93

435.   J. Helm paid Banner Supply Co. for supplying the drywall for the Homes.

436.   Banner Supply Co. received money from J. Helm as a result of J. Helm's purchases of defective drywall that was installed in the Homes.

437.   In delivering such payment, monies and/or funds to Banner Supply Co., J. Helm conferred a benefit, i.e., funds and profit, to Banner Supply Co., which had knowledge thereof.

438.   Banner Supply Co. voluntarily accepted and retained the benefit conferred upon it by J. Helm.

439.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.

440.   The circumstances described herein, under which Banner Supply Co. profited from selling and/or supplying defective drywall, make it inequitable for Banner Supply Co. to retain those funds and profits.

441.   J. Helm has no adequate remedy at law.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 43 – COMMON LAW INDEMNITY
### (Against Banner Supply Company Port St. Lucie, LLC)

442.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

443.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

444.    J. Helm is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Port St. Lucie.  J. Helm justifiably relied on Banner Port St. Lucie to supply drywall that was fit for the ordinary purpose for which it was intended, i.e. safe and fit for use in the construction of residential homes.

445.    J. Helm is entirely without fault for the injuries alleged by Plaintiffs.

446.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Port St. Lucie.

447.    A special relationship existed between Banner Port St. Lucie and J. Helm such that any liability imposed upon J. Helm in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Port St. Lucie.  J. Helm purchased drywall from Banner Port St. Lucie to be installed in the Homes.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Port St. Lucie was defective and wholly to blame for Plaintiffs' injuries.

448.    As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Port St. Lucie to supply drywall fit for its intended purpose, i.e., not unreasonably dangerous and fit for use in the construction of residential homes.

449.    If J. Helm is found to be liable to Plaintiffs, Banner Port St. Lucie is liable to J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

**WHEREFORE**, J. Helm demands judgment for indemnity in its favor against Banner Supply Company Port St. Lucie, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 44 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Supply Company Port St. Lucie, LLC)

450.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

451.    This is an action, stated in the alternative, against Banner Port St. Lucie for contribution pursuant to Section 768.31, Florida Statutes.

452.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defects in the drywall contained in the Homes.

453.    Without admitting any liability or damages to Plaintiffs, should J. Helm be found liable, Banner Port St. Lucie would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

{20937082;2}

454.   J. Helm has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

455.   To the extent that any common liability is found with respect to J. Helm, J. Helm hereby asserts its right of contribution against Banner Port St. Lucie for its pro rata share of the liability.

456.   Banner Port St. Lucie should be required to repay J. Helm for any loss, damages, costs, and expenses, including attorneys' fees, J. Helm is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against J. Helm, in excess of its pro rata share of any common liability.

**WHEREFORE**, J. Helm demands that judgment be entered against Banner Supply Company Port St. Lucie, LLC, for its pro rata share of the liability, if any, found against J. Helm in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 45 – EQUITABLE SUBROGATION
### (Against Banner Supply Company Port St. Lucie, LLC)

457.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

458.   This is an action, stated in the alternative, against Banner Port St. Lucie for equitable subrogation.

459.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.

460.    J. Helm is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Port St. Lucie. J. Helm justifiably relied on Banner Port St. Lucie to supply drywall that was fit for the ordinary purpose for which it was intended, i.e. not unreasonably dangerous and fit for use in the construction of residential homes.

461.    Without admitting any liability or damages to Plaintiffs, J. Helm is not primarily liable for any liability to the Plaintiffs.

462.    To the extent that J. Helm is required to pay damages for any fault of Banner Port St. Lucie to protect its own interests, and not as a volunteer, J. Helm would be entitled to reimbursement from Banner Port St. Lucie under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against J. Helm, including, without limitation, payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payments for the amount of any judgment entered against J. Helm and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against J. Helm, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against the claims brought by Plaintiffs.

463.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, J. Helm demands judgment in its favor and against Banner Supply Company Port St. Lucie, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 46 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### UNDER COMMON LAW AND/OR FLA. STAT. § 672.314
### (Against Banner Supply Company Port St. Lucie, LLC)

464. J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

465. This is an action against Banner Port St. Lucie for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

466. J. Helm purchased drywall from Banner Port St. Lucie to be installed in the Homes. Banner Port St. Lucie knew that J. Helm required and expected the drywall it distributed, supplied and/or sold to be fit for the ordinary purpose for which it was intended, i.e. safe and fit for use in the construction of residential homes, and J. Helm justifiably relied on Banner Port St. Lucie's skill and judgment to supply such drywall for the construction of a residential homes.

467. Pursuant to the relationship between the parties, Banner Port St. Lucie is deemed to have provided J. Helm with an implied warranty of merchantability as to the drywall materials sold and/or supplied by Banner Port St. Lucie.

468. The drywall distributed, supplied and/or sold by Banner Port St. Lucie for use in the construction of the Homes was not altered and/or otherwise substantively changed by J. Helm.

469. Pursuant to Fla. Stat. § 672.314 and/or common law, Banner Port St. Lucie warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, i.e. safe and fit for use in the construction of residential homes.

470.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages caused by defective drywall contained in the Homes.  J. Helm denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and J. Helm is found liable to Plaintiffs, Banner Port St. Lucie breached the implied warranty of merchantability by distributing, selling and/or supplying drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.  Banner Port St. Lucie's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

471.   As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Port St. Lucie to distribute, sell and/or supply drywall fit for its intended purpose, i.e., for use in the construction of residential homes.

472.   J. Helm timely notified Banner Port St. Lucie of the defective gypsum drywall, but Banner Port St. Lucie has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 47 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Banner Supply Company Port St. Lucie, LLC)

473.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

474.   This is an action against Banner Port St. Lucie for breach of the implied warranty of fitness.

475.   J. Helm purchased drywall from Banner Port St. Lucie to be installed in the Homes.

476.   Banner Port St. Lucie knew that J. Helm required and expected the drywall it sold and/or supplied to be safe and fit for use in the construction of residential homes.

477.   J. Helm justifiably relied on Banner Port St. Lucie's skill and judgment to supply drywall fit for the particular purpose of constructing residential homes.

478.   Pursuant to the relationship between the parties, Banner Port St. Lucie is deemed to have provided J. Helm with an implied warranty of fitness as to the drywall materials sold and/or supplied by Banner Port St. Lucie.

479.   The drywall sold and/or supplied by Banner Port St. Lucie for use in the construction of the Homes was not altered and/or otherwise substantively changed by J. Helm.

480.   Banner Port St. Lucie impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

481.   In the Complaint, Plaintiffs allege that the defective drywall in the Homes proximately caused their injuries.  J. Helm denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes was defective and not fit for the particular purpose for which the drywall was required and J. Helm is found liable to Plaintiffs, Banner Port St. Lucie breached the implied warranty of fitness by selling and/or supplying drywall that was defective and not reasonably fit for the use in the construction of residential homes.  Banner Port St. Lucie's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

482.    As a result of the claims that have been filed against J. Helm, J. Helm has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Port St. Lucie to sell and/or supply drywall fit for its intended purpose.

483.    J. Helm timely notified Banner Port St. Lucie of the defective gypsum drywall, but Banner Port St. Lucie has failed to repair or replace the defective gypsum drywall installed in the Homes.

**WHEREFORE,** J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 48 – NEGLIGENCE
### (Against Banner Supply Company Port St. Lucie, LLC)

484.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

485.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

486.    Banner Port St. Lucie distributed, sold and/or supplied to J. Helm the gypsum drywall that was installed in the Homes.

487.    As such, Banner Port St. Lucie owed J. Helm a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of J. Helm's customers; and, (ii) market, distribute, supply and/or

sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

488.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Port St. Lucie knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

489.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Port St. Lucie breached its duty of care to J. Helm by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damages alleged by Plaintiffs; and, (iv) failing to supply J. Helm with drywall that complied with all applicable building and industry standards.

490.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Port St. Lucie's duties of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

{20937082;2}

103

491.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying, and/or selling defective drywall would expose J. Helm to substantial liability and damages. If Banner Port St. Lucie had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to J. Helm would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

492.    Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by Banner Port St. Lucie's breaches of its duties of care, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.   Banner Port St. Lucie's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 49 – NEGLIGENT FAILURE TO WARN
### (Against Banner Supply Company Port St. Lucie, LLC)

493.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

494.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

495.    Banner Port St. Lucie distributed, sold and/or supplied to J. Helm the gypsum drywall that was installed in the Homes.

496.    As such, Banner Port St. Lucie owed J. Helm a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse effects associated with the drywall; (ii) warn J. Helm about any dangers inherent in the drywall, and/or (iii) warn J. Helm about any problems or dangers in using the drywall for residential construction.

497.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

498.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie knew or should have known that unless it warned J. Helm of the risk of using the drywall it distributed, sold, and/or supplied, J. Helm

would suffer harm. However, Banner Port St. Lucie failed to provide an adequate warning of such danger.

499.     J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.  Without a warning, J. Helm had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

500.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie breached its duties of care to J. Helm by (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn J. Helm about any dangers inherent in the drywall, and/or (iii) failing to warn J. Helm about any problems or dangers in using the drywall for residential construction, about which Banner Port St. Lucie knew or reasonably should have known.

501.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Port St. Lucie's duty of care were the direct and proximate cause of J. Helm's injuries, losses, and damages.

502.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie knew or reasonably should have known that its acts and

omissions in failing to disclose and/or warn of drywall defects would expose J. Helm to substantial liability and damages. If Banner Port St. Lucie had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to J. Helm would ensue as a result of failing to disclose and/or warn of drywall defects.

503.    Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by Banner Port St. Lucie's breaches of its duties of care, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Port St. Lucie's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 50 – BREACH OF THE POST-SALE DUTY TO WARN
**(Against Banner Supply Company Port St. Lucie, LLC)**

504.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

505.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

506.    Banner Port St. Lucie distributed, supplied and/or sold to J. Helm the gypsum drywall that was installed in the Homes.

507.    To the extent Plaintiffs are successful in proving that the drywall distributed, supplied, and/or sold by Banner Port St. Lucie was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Port St. Lucie's control and/or was sold to J. Helm, Banner Port St. Lucie knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

508.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie, as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner Port St. Lucie breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

509.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

510.    Consumers, such as J. Helm, to whom a warning might have been provided, could have been identified by Banner Port St. Lucie.

511.    A warning could have been effectively communicated to consumers such as J. Helm and acted on by them.

512.    At all material times, Banner Port St. Lucie stood in a better position than J. Helm to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that J. Helm was unaware of potential dangers and/or risk of harm associated with the use of Banner Port St. Lucie's drywall product in residential construction.

513.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Port St. Lucie's position would have provided a post-sale warning.

514.    Without admitting any liability or damages to Plaintiffs, J. Helm was damaged by Banner Port St. Lucie's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. Banner Port St. Lucie's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 51 – STRICT PRODUCTS LIABILITY
### (Against Banner Supply Company Port St. Lucie, LLC)

515.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

516.    At all material times, Banner Port St. Lucie was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

517.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Port St. Lucie to J. Helm.

518.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Port St. Lucie, Banner Port St. Lucie intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

519.    Banner Port St. Lucie expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

520.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

521.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more

fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Port St. Lucie directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Port St. Lucie's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

WHEREFORE, J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 52 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Supply Company Port St. Lucie, LLC)

522.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

523.    At all material times, Banner Port St. Lucie was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

524.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Port St. Lucie to J. Helm.

525.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Port St. Lucie, Banner Port St. Lucie intended that the drywall reach consumers and/or ultimate users of the drywall, such as J. Helm.

526.   Banner Port St. Lucie expected the gypsum drywall to reach J. Helm and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach J. Helm and/or the Homes without substantial change affecting that condition.

527.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

528.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Port St. Lucie was required to provide a warning.  However, Banner Port St. Lucie failed to provide an adequate warning of such danger.

529.   J. Helm did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

530.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Port St. Lucie failed to warn J. Helm of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, J. Helm had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

531.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.  Banner Port St. Lucie's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 53- VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Banner Supply Company Port St. Lucie, LLC)

532.   J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

533.   This is an action for violation of §§ 501.201, et seq., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

534.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

535.   At all material times, J. Helm was a person and a consumer of drywall as defined under FDUTPA.

536.   At all material times, Banner Port St. Lucie engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as J. Helm.

537.   Banner Port St. Lucie advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

538.   At the time Banner Port St. Lucie advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Port St. Lucie represented that the drywall was fit for the ordinary purpose for which it was intended, i.e. safe and fit for use in the construction of residential homes, and free from defects.

539.   In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

540.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Banner Port St. Lucie sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Port St. Lucie knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

541. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Banner Port St. Lucie's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

542. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, as more specifically alleged in paragraphs 16-27 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

543. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as J. Helm acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, i.e. safe and fit

for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

544.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie's unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as J. Helm.

545.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, J. Helm did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Port St. Lucie's violations of FDUTPA directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims. Banner Port St. Lucie's wrongful conduct also caused damages to J. Helm, including but not limited to J. Helm's loss of reputation, goodwill and lost profits.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

**COUNT 54 – UNJUST ENRICHMENT**
**(Against Banner Supply Company Port St. Lucie, LLC)**

546.    J. Helm reasserts and re-alleges the allegations in paragraphs 1 through 29 above as if fully set forth herein.

547.    In the Complaint, Plaintiffs allege various claims against J. Helm for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

548.    This is an action, stated in the alternative, against Banner Port St. Lucie for unjust enrichment.

549.    Banner Port St. Lucie distributed, supplied and/or sold to J. Helm the gypsum drywall that was installed in the Homes.

550.    J. Helm paid Banner Port St. Lucie money for selling and/or supplying drywall for the Homes.

551.    Banner Port St. Lucie received money from J. Helm as a result of J. Helm's purchases of defective drywall installed in the Homes.

552.    In delivering such payment, monies and/or funds to Banner Port St. Lucie, J. Helm conferred a benefit, i.e., funds and profit, to Banner Port St. Lucie, which had knowledge thereof.

553.    Banner Port St. Lucie voluntarily accepted and retained the benefit conferred upon it by J. Helm.

554.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Port St. Lucie's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed J. Helm to substantial liability and damages, including but not limited to any payments made or to be made on behalf of J. Helm to or on behalf of Plaintiffs, payment for the amount of any judgment entered against J. Helm in this action and/or any other action brought by Plaintiffs against J. Helm, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by J. Helm in defending against these claims.

555.   The circumstances described herein under which Banner Port St. Lucie profited from distributing, selling and/or supplying drywall make it inequitable for Banner Port St. Lucie to retain those funds and profits.

556.   J. Helm has no adequate remedy at law.

**WHEREFORE**, J. Helm demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross-Plaintiff, J. Helm Construction, Inc., and hereby demands a trial by jury as to all issues so triable as a matter of right.

Dated: November 21, 2011

Respectfully submitted,

**AKERMAN SENTERFITT**
BY: /s/ Michael A. Sayre
Valerie B. Greenberg, Esq. (Fla. Bar No. 026514)
Samantha Kavanaugh, Esq. (Fla. Bar No. 0194662)
Michael Sayre, Esq. (Fla. Bar No. 17607)
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095
Email: valerie.greenberg@akerman.com
        samantha.kavanaugh@akerman.com
        michael.sayre@akerman.com
*Attorneys for J. Helm Construction, Inc.*

*Co-Counsel for J. Helm Construction, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
Email: Brent.barriere@phelps.com
        Susie.morgan@phelps.com
        Skylar.rosenbloom@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that *Defendant J. Helm Construction Inc.'s Cross Claim* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 21st day of November, 2011.

/s/      Michael A. Sayre