UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE MANUFACTURED          *   Docket 09-MD-2047
        DRYWALL PRODUCTS              *
        LIABILITY LITIGATION          *   November 16, 2011
                                      *
This Document Relates to All Cases    *   2:00 p.m.
* * * * * * * * * * * * * * * * * * *


STATUS CONFERENCE BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiffs: | Herman Herman Katz & Cotlar<br>BY:  RUSS M. HERMAN, ESQ.<br>820 O'Keefe Avenue<br>New Orleans, Louisiana 70113 |
| For the Defendants: | Frilot, LLC<br>BY:  KERRY J. MILLER, ESQ.<br>1100 Poydras Street, Suite 3700<br>New Orleans, Louisiana 70163 |
| Also Participating: | Dawn M. Barrios, Esq.<br>Gregory J. Wallance, Esq.<br>Bruce W. Steckler, Esq.<br>Hilarie Bass, Esq. |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-406<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography using computer-aided transcription software.

| | |
|---|---|
| 1 | **PROCEEDINGS** |
| 2 | **November 16, 2011** |
| 3 | **THE COURT:** Be seated, please.  Good afternoon, |
| 4 | ladies and gentlemen. |
| 5 | Call the case, please. |
| 6 | **THE DEPUTY CLERK:** MDL 2047, In Re: Chinese |
| 7 | Manufactured Drywall Products Liability Litigation. |
| 8 | **THE COURT:** Counsel make their appearance for the |
| 9 | record, liaison counsel for each side. |
| 10 | **MR. MILLER:** May it please the Court.  Good |
| 11 | afternoon, Your Honor.  Kerry Miller on behalf of the defense |
| 12 | steering committee. |
| 13 | **MR. HERMAN:** May it please the Court.  Good |
| 14 | afternoon, Judge Fallon.  Russ Herman on behalf of the |
| 15 | plaintiffs' steering committee and plaintiffs. |
| 16 | **THE COURT:** Please use the microphones.  We have 350 |
| 17 | people on the line who are monitoring this conference. |
| 18 | I met with the liaison lead counsel a moment ago |
| 19 | to discuss with them the agenda.  I'll take the agenda in the |
| 20 | order in which it was presented to me. |
| 21 | Pretrial orders, anything on that? |
| 22 | **MR. HERMAN:** Good morning, Judge Fallon.  On pretrial |
| 23 | orders, PTO 25 was entered on November 3, the deadlines for |
| 24 | plaintiff profile forms and defendant fact sheets.  With regard |
| 25 | to plaintiffs, your order worked some magic through our office |

1   and Dawn Barrios' office.
2                962 plaintiff profile forms were submitted by
3   November 15.  We understand there are only about 60
4   outstanding.  That's a total of 9,557 plaintiff profile forms,
5   which gives us a fairly accurate number of Chinese Drywall
6   occupied or unoccupied properties that are plaintiffs in the
7   cases before Your Honor.
8            **THE COURT:**  Let me say a word about that.  The
9   challenge with cases in which there are thousands and thousands
10  of people is that we can't use the same discovery mechanism.
11  It just takes too long.  We don't use interrogatories.  That
12  just takes too long.  What we try to do is get something like a
13  profile form for each side, the plaintiff profile form and the
14  defendant profile form.  They fill in the profile forms and
15  send them in, and we have a couple weeks in which they should
16  do that.  That gets the discovery moving rather quickly from
17  each side.
18                I have to be serious about the profile forms.
19  If the profile forms do not come in, then I dismiss the case.
20  Before I do that, however, I alert people that I'm going to be
21  dismissing the case or at least rule to show cause why the case
22  should not be dismissed for failure to follow the Court's
23  order.  We did so in this particular case because there were
24  delinquent profile forms perhaps on both sides.
25                In this case the unusual factor is that often

1  times in cases of this sort, you have one or two or three
2  defendants.  In this case we have 1,000 defendants.  So we have
3  a potential census of plaintiffs of about 30,000, but we have
4  1,000 defendants.  That's the challenge in this particular
5  case.  We need profile forms for each side, and that's what we
6  are talking about at this time.
7             State court trial settings.
8         **MR. HERMAN:**  Your Honor, with respect to roman
9  numeral II and roman numeral V, state/federal coordination, all
10 of the state court trial settings are listed, but Ms. Barrios
11 does have a report to make to Your Honor, if she would step up
12 now.
13        **MS. BARRIOS:**  Thank you, Mr. Herman.
14             Your Honor, I draw your attention to the *Staggs*
15 case which Judge Bernard Silver had set to begin the week of
16 December 5 in Tampa.  I had extensive conversations with both
17 plaintiffs' counsel and defense counsel, and I understand
18 Ms. Dorothy Wimberly has as well.
19             Mr. Neal Sivyer has a relationship with the
20 judge and the parties and would just ask that perhaps you could
21 speak with us after the hearing or in a telephone conference at
22 your convenience.
23        **THE COURT:**  I will.  I did touch base with Judge
24 Silver to alert him to the fact that we were concerned about
25 the early trial dates.  I'll be back in touch with him shortly,

1  I'm sure.
2           I've been very fortunate in this case to have
3  some outstanding state court judges to rely on and work with as
4  colleagues in this particular matter.  A lot of these cases are
5  positioned and placed in state court and they are not able to
6  be removed because of a lack of diversity.  We are trying to
7  coordinate as best we can so the litigants can profit from it.
8           It makes no sense in taking the same deposition
9  15 or 20 times.  The deposition is taken hopefully one time and
10 can be used in 15 or 16 cases, so I think it's to the benefit
11 of all.  If we do get to the need for *Daubert* hearings, I
12 always invite the state judges to participate in the *Daubert*
13 hearing, either in person or by phone, so that we can do that
14 one time so they don't have to replicate the *Daubert* hearings.
15           **MS. BARRIOS:**  Yes, Your Honor.  I just want to also
16 mention the remands are current through CTO 22 on the disc, and
17 the disc that I'm providing you and defense counsel has all the
18 state court judges and their contact information.
19           **THE COURT:**  Thank you very much.
20           **MR. HERMAN:**  May it please the Court.  Lead counsel
21 Arnold Levin and PSC member Bruce Steckler remind me that in
22 addition to the 9,557 profile forms, some of those forms
23 reflect multiple units.  For example, WCI is 400 units, and
24 there are commercial units and condo units that may be on one
25 profile form.  So the inventory before Your Honor of claimants

1  actually exceeds 10,000 and approaches 11,000.
2             Your Honor, with respect to the next item,
3  insurance issues, there are none.  With respect to roman
4  numeral IV, Ms. Wimberly will address that.
5        **THE COURT:**  Anything on that?
6        **MS. WIMBERLY:**  Nothing new, Your Honor.
7        **MR. HERMAN:**  Your Honor, with respect to
8  state/federal coordination, roman numeral V, Ms. Barrios has
9  addressed it.  With respect to omnibus class action complaints,
10 there are none at this time.  Plaintiffs' motions to establish
11 a plaintiffs' litigation fee and expense fund, nothing new,
12 Your Honor.
13            Pilot program, nothing new, but I know that
14 Mr. Wallance is here on behalf of Knauf.  He may have a report
15 regarding the pilot program, roman numeral VIII, and remediated
16 homes, roman numeral X.  I haven't had a chance to talk with
17 Greg.
18       **MR. WALLANCE:**  Good afternoon, Your Honor.  Gregory
19 Wallance, Kaye Scholer, for the Knauf defendants.
20            As of the end of November, we will have 172
21 homes either fully remediated or in remediation.  Another 60
22 homeowners have signed work authorizations, and those homes
23 will be starting as soon as we can get all of the permits and
24 so forth lined up.  The 172 homes and the 60 homes I just
25 described, including those homes, we have turned over to Moss

1  1,232 homes.  Moss has walked nearly 800 of those.  By that I
2  mean they have gone in with subcontractors to prepare scopes of
3  work that will then be sent to the homeowner for approval.  In
4  addition, currently 520 homes are in the inspection process;
5  that is, we are seeking to qualify those homes just as the
6  1,200 I referred to have been qualified.
7           As far as the already remediated homes project,
8  thanks to the efforts of a number of plaintiffs' counsel, we
9  have received a significant amount of additional information
10 about board composition, the condition of the home prior to
11 remediation, the scope of remediation that will hopefully allow
12 us to start putting together offers to those counsel and their
13 homeowners and start the process of resolving those.
14          As I have stressed, it's slow and it's not an
15 easy one, but getting the information is key.  We very much
16 appreciate the efforts of the PSC and its constituents in
17 helping us get that information.
18          **THE COURT:**  Thank you very much.  Just a word on
19 that.  This particular case, counsel tried something new.  We
20 tried about six bellwether cases early on, in the first three
21 months of the litigation, and this allowed us to hear from
22 various experts and to construct a protocol for dealing with
23 the remediation issues that these cases presented.  They're
24 from all over the Gulf South and the East Coast.
25          This protocol was helpful, but it was really at

1  a theoretical stage. It sounded good. It worked well from the
2  standpoint of the evidence, at least I felt it worked well, and
3  I put that in my opinions on a particular case. I wanted to
4  see whether or not we could step it out and put it in practice
5  and see how it worked in practice to see whether or not it had
6  to be tweaked or not.
7         The parties agreed with no strings attached,
8  everybody reserving all of their rights to object to the
9  issues, and a small pilot program of 50 or 60 homes was
10 undertaken using that particular protocol to see how it worked
11 in practice; in bricks and mortar, so to speak. It had to be
12 tweaked a bit, but by and large it survived, and then it was
13 extended and opened to anybody interested.
14        This stage in the game, we now are seeking to
15 monetize that particular program. A lot of discussion is going
16 on. This has been a stepped-in process. It's part of the
17 overall picture, and I think it gives the litigants an
18 opportunity to see how these things work in practice and to
19 price them out, so to speak. I think it's been helpful to the
20 overall process of resolution of the case. I appreciate all
21 the help of counsel in this regard.
22        **MR. HERMAN:** Your Honor, on behalf of plaintiffs, we
23 have requested Knauf provide us with all of the factual
24 information and statistical information on all of the houses
25 that Moss has inspected and remediated homes, and we expect to

1    receive that shortly.
2                Your Honor, the next item is at page 8.  It's
3    the term sheet agreement between the PSC and the Knauf entities
4    regarding settlements with home builders.  Counsel for the PSC,
5    Bruce Steckler, will report on that, Your Honor.  If I didn't
6    mention it, it's roman numeral IX.
7            **MR. STECKLER:**  Good afternoon, Your Honor.  Bruce
8    Steckler for the plaintiffs' steering committee.
9                The PSC is pleased to announce that we have
10   reached a settlement with Knauf on homes that have been
11   remediated by certain home builders, homes that are in the
12   process of being remediated by certain home builders, and homes
13   that are to be remediated by certain home builders.
14               We submitted this to the Court, I believe,
15   September 1 for the Court's approval.  It is our hope that this
16   will resolve close to 800 homes at the end of the day.  At this
17   point we have conferred with both counsel for Knauf and counsel
18   for the home builders steering committee and are unaware of any
19   objections at this time.
20           **THE COURT:**  As I usually do in these matters, I
21   create a Web site for the particular case.  I post everything
22   on the Web site, including the transcripts of these hearings,
23   so that everybody can look at the Web site and take a look at
24   all of the things that are going on.  They have access to all
25   of the material.

1            I did post this on the Web site to elicit any
2   comments, any suggestions, or any objections.  I didn't receive
3   an objection.  I received some documents that seem to discuss
4   the program.  There was some aspect to the document that needed
5   to change or be corrected and that was done, as I understand.
6   That was an observation that was made that is either withdrawn
7   or is not termed an objection.  I have not received any
8   objection.
9            Hilarie, do you want to speak on this?
10           **MS. BASS:**  Thank you, Your Honor.  Hilarie Bass on
11  behalf of the home builders steering committee.
12           As you know, many of the home builders did
13  initially have objections because we were not part of the
14  negotiation process.  Since then we had a separate set of
15  negotiations with Knauf, entering separate agreements to make
16  sure that home builders with existing agreements with Knauf
17  could continue to operate under those agreements consistent
18  with the terms of this new agreement.  So those home builders
19  have withdrawn their objections.
20           **THE COURT:**  Thank you very much.  I will take care of
21  the document.
22           Next item.
23           **MR. HERMAN:**  Your Honor, the PSC wishes to thank on
24  the record the home builders steering committee, Knauf, and the
25  builders who have entered into this agreement for their

1   cooperation.
2           The next issue, Your Honor, is class cert
3   hearings.  There is no issue at the present time.  With respect
4   to the Knauf defendants and the depositions that have been
5   taken of Knauf, there is no issue.
6           Judge Greene had a matter in Broward County set
7   for hearing on December 7.  I'm not able to speak to that, but
8   maybe Kerry is.  I understand that matter has either been
9   continued or is in the process of being continued.
10          **MR. MILLER:**  I think that's right, Your Honor.  I
11  think that that particular matter is in the process of being
12  put off.
13          **THE COURT:**  Okay.
14          **MR. HERMAN:**  Your Honor, within the status conference
15  report beginning at page 10, roman numeral XIII, pages 10, 11,
16  and 12, the issue of Taishan discovery is fleshed out.  The
17  parties would like to meet with Your Honor to discuss the
18  30(b)(6) issues deposition schedule, which is now set for
19  January 9, 2012, and which Your Honor will monitor in
20  Hong Kong.  We would like to meet with you to discuss those
21  issues following the status conference.
22          **THE COURT:**  Fine. Just a word on that.  There's
23  serious issues of jurisdiction in Taishan, and I'm looking at
24  them.  But in doing so, I recognize that there's some factual
25  discovery that needs to be conducted before I can really focus

1  completely on the jurisdictional issues involving Taishan.
2  　　　　　　　I suggested to counsel about six or seven months
3  ago that they get some 30(b)(6) depositions of Taishan
4  individuals in Hong Kong and give me the transcript so I could
5  take a look at it and see whether or not that was sufficient
6  for me to make the call on jurisdiction.
7  　　　　　　　I looked at the depositions.  Frankly, the
8  plaintiffs had their private expert, the defendants had their
9  expert, and there was a check expert that one of the parties
10 retained to check both of those individuals to see whether or
11 not they were translating properly.  In the transcript I got
12 more information about those interpreters than I did about the
13 witnesses.
14 　　　　　　　They would argue back and forth.  I recognize
15 that in the Chinese language, the same word can be used several
16 ways depending upon the emphasis placed on the word, but it
17 wasn't very helpful to me other than to give me some feeling
18 about interpreters.  They did a good job of arguing their
19 respective positions.  When they were finished, then the
20 attorneys generally argued.  Once in a while I heard from a
21 witness with a "yes" or a "no" or a "maybe," and it went on for
22 five days.
23 　　　　　　　I was a little concerned that that was not very
24 helpful to me and I couldn't really look at jurisdiction in any
25 thorough way.  I prevailed upon the parties to consider

1  retaking the depositions a second time.  They are going to do
2  that, and this time I'm going to go over.
3              I talked to the embassy, and they are giving me
4  names of an interpreter.  I've run it past the parties.  I'll
5  get their input.  Then I will make that individual a 706 expert
6  translator, and we'll take the depositions another time.  So
7  that's what we are talking about at this point.
8              Next item.
9         **MR. HERMAN:**  Next, Your Honor, Interior Exterior, the
10 opt-out dates were agreed to in terms of an extension.  An
11 extension of opt-out dates is being considered by Banner.  We
12 presented a motion on that to Your Honor.  As I understand it,
13 those parties who are involved in the Banner issues will meet
14 after the hearing today.
15        **THE COURT:**  Right.  Steve, I'm going to need you
16 input on that, your participation to see if we can put this to
17 rest.
18        **MR. HERMAN:**  The next issue is Venture Supply.
19 There's nothing new.  On plaintiff profile forms, which is
20 roman numeral XVII, Your Honor, we have already responded to
21 that.  With respect to roman numeral XVIII, frequently asked
22 questions, we finally did get a frequently asked question,
23 which has been answered.
24        **THE COURT:**  I have a section on the Web site called
25 Frequently Asked Questions so that a person, primarily a

nonlawyer but even lawyers can look at and get some information before they ask a question, see whether or not it's been asked before; and if it has been asked before more than three times, you will find an answer on that particular page of the Web site.

**MR. HERMAN:** Page 15, roman numeral XIX, Mr. Steckler for the PSC, Knauf's representative, and Hilarie Bass have already addressed that issue, Your Honor.

The last issue is *pro se* claimants. Your Honor has appointed Bob Johnston as an attorney for *pro se* claimants. We have met with Bob Johnston. He has received a copy of the pilot program and of settlements reached thus far. We will be setting up a meeting with Robert Johnston, Kerry Miller, or Kerry's partner/designee -- hopefully we will bring in somebody from Moss -- so that Bob Johnston can be fully apprised of the issues. He understands the complexity and understands that this is a different type of case than a pharmaceutical or personal injury.

**THE COURT:** In cases of this sort, because I post everything on the Web site and let the world take a look at it, you often have calls from individuals who do not have a lawyer. When it gets to about 20 or 30 a day, I think that it's appropriate to appoint a *pro se* curator who can talk to those individuals and explain it to them because that's what they really want. They want to know what's this all about, and they

1  have certain questions about various things.
2             Bob will talk to them and discuss any issues
3  that they have and give them some direction on what to do about
4  it.  He has done yeoman work in *Vioxx* and a couple of other
5  matters, and I'm confident that he will do his usual good job
6  in this case.
7             In accordance with the federal rules, however, I
8  give notice of that to the world that I'm thinking of
9  appointing Bob Johnston as a special master for *pro se* people
10 and invite any objections, scope out his work, tell you what
11 his duties are, responsibilities, and I post that on the web.
12 I have received no objection, so I will appoint him.
13         **MR. HERMAN:**  Yes, Your Honor.  In connection with
14 *pro se* claimants and questions up to this point, we wish to
15 compliment, all parties do, Your Honor's staff and particularly
16 Ms. Butler, who has had numerous inquiries of various sorts.
17            Your Honor has already issued a date for the
18 next status conference, December 15, 2011, at 9:00 a.m.
19         **THE COURT:**  To assist with travel, the date in
20 January is January 26 if that's available.  December 15 and
21 January 26.
22         **MR. HERMAN:**  Your Honor would like to see liaison
23 counsel at 8:30 on December 15?
24         **THE COURT:**  Yes.  I will meet with liaison counsel
25 first at 8:30, and then we start the meetings in general at

1  9:00.  I will post the number on the Web site for anybody who
2  wishes to appear.
3             On the telephone, in those 350, I do have
4  several judges who have been kind enough to monitor these
5  programs.  Their assistance has been invaluable to me.  I can
6  always rely upon them for their wisdom and suggestions, and I
7  traditionally do so.  So I do want to thank them for all of
8  their efforts in this case.  Thank you very much.  I'll see the
9  parties in chambers.
10            **THE DEPUTY CLERK:**  All rise.
11            (WHEREUPON the Court was in recess.)
12                              * * *
13                           **CERTIFICATE**
14            I, Toni Doyle Tusa, CCR, FCRR, Official Court
15  Reporter for the United States District Court, Eastern District
16  of Louisiana, do hereby certify that the foregoing is a true
17  and correct transcript, to the best of my ability and
18  understanding, from the record of the proceedings in the
19  above-entitled and numbered matter.
20
21
22                                   s/ Toni Doyle Tusa
                                     Toni Doyle Tusa, CCR, FCRR
23                                   Official Court Reporter
24
25