**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL No. 02047
      PRODUCTS LIABILITY LITIGATION          SECTION L

THIS DOCUMENT RELATES TO:          JUDGE FALLON

DANIEL ABREU, individually, and on
behalf of all others similarly situated,

         Plaintiffs,

v.

GEBRUEDER KNAUF
VERWALTUNGSGESELLSCHAFT, KG;
KNAUF INTERNATIONAL GmbH; KNAUF
INSULATION GmbH; KNAUF UK GMBH;
KNAUF GIPS KG; KNAUF PLASTERBOARD
(TIANJIN) CO., LTD.; KNAUF
PLASTERBOARD (WUHU), CO., LTD.;
GUANGDONG KNAUF NEW BUILDING
LTD.,
         Defendants.

CASE NO.: 11-252
_____/

**DEFENDANT WOODLAND ENTERPRISES, INC.,**
**CROSS CLAIM AND THIRD PARTY COMPLAINT**

     COMES   NOW   Defendant/Cross-Claimant   and   Third-Party-Plaintiff,   Woodland

Enterprises, Inc., ("**Woodland**"), by and through its undersigned counsel, and alleges for its

Cross-Claim[1] against Defendants/Cross-Defendants Knauf Gips KG ("**Knauf Gips**"), Knauf

---

[1]    Plaintiffs commenced this action on February 7, 2011 by filing an Omnibus Class Action
Complaint (Omni VIII) in this cause, (referred to herein as the "Complaint"). In response, Woodland
moved to dismiss the claims against it in the Complaint. These Cross-Claims are therefore being brought
to the extent all claims against Woodland are not dismissed in their entirety with prejudice. In the event
all of Plaintiffs' claims against Woodland are not dismissed with prejudice, Woodland also expressly
reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

Plasterboard (Tianjin) Co. Ltd. ("**Knauf Tianjin**"), Knauf Plasterboard (Wuhu) Co. Ltd. ("**Knauf Wuhu**"), Knauf Insulation GmbH a/k/a Knauf Insulation USA ("**Knauf USA**"), Guangdong Knauf New Building Products Co., Ltd. ("**Knauf Guangdong**"), Gebrueder Knauf Verwaltungsgesellschaft, K.G., ("**Gebrueder Knauf**"), Knauf International GmbH ("**Knauf International**"), Knauf UK GMBH ("**Knauf UK**"), (collectively, the "**Knauf Cross-Claim Defendants**"), Banner Supply Co. ("**Banner Supply Co.**") and Banner Supply Company Port St. Lucie, LLC ("**Banner St. Lucie**"), and alleges for its Third-Party Complaint against La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**"), La Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), and Triple "E" Corporation ("**Triple E**"), as follows:

### CROSS-CLAIMS AGAINST THE KNAUF CROSS-CLAIM DEFENDANTS, BANNER SUPPLY CO. AND BANNER ST. LUCIE

#### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Woodland.

3.      Woodland was and is a Florida corporation doing business in St. Lucie County, Florida, where this cause of action arose.  At all material times, Woodland was a builder of residential homes in St. Lucie County.

4.      Woodland has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Woodland denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      The Knauf Cross-Claim Defendants, Banner Supply Co. and Banner St. Lucie (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above styled action.  Woodland adopts and incorporates, as if fully set forth herein, paragraphs 288-297, 301 and 304 of the Complaint, identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendants.

<u>General Allegations</u>

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.[2]

10.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "**Other Property**").

---

[2]      The named class Plaintiffs and other members of the putative class have asserted claims against Woodland in this Action, as well as other actions in the state and federal courts.  The damages sought by Woodland in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     In connection with the construction of certain homes in St. Lucie County, Triple E, a drywall installer, installed drywall in the Homes.

14.     Upon information and belief, Triple E procured drywall that was installed in the Homes from Banner Supply Co. and/or Banner St. Lucie (together, **"Banner"**).

15.     At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner knew that Woodland was a foreseeable user of the drywall and that Woodland required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.,* safe and fit for use in the construction of residential homes.

16.     Upon information and belief, Banner procured drywall that was installed in the Homes from an import-export specialist, LS Trading and/or LS Enterprise (together, "**La Suprema**"), who procured the drywall from the manufacturer, the Knauf Cross-Claim Defendants.

17.     Upon information and belief, at all material times, the Knauf Cross-Claim Defendants knew or should have known that such drywall was going to be used in the construction of residential homes

18.     Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured,

mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Gips' agent and/or subsidiary, Knauf Tianjin, emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

19.     Knauf Tianjin consulted with Knauf Gips about the drywall complaints.

20.     Hans-Ulrich Hummel, head of research and development for Knauf Gips in Germany was aware of the "big problems" with Knauf boards from China, and investigated complaints of noxious odors being emitted by the drywall.

21.     Upon information and belief, Knauf Tianjin and/or Knauf Gips conducted their own tests of the drywall and advised their customer that the drywall was "smelly."

22.     Upon information and belief, Knauf Tianjin and Knauf Gips did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

23.     Upon information and belief, Knauf Gips and Knauf Tianjin were concerned about the potential fallout if the problems with the drywall product became widely known. In a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Knauf Tianjin entered into a confidential settlement agreement with Banner in January of 2007 (the "**Secret Agreement**").

24.     The Secret Agreement stipulated that Knauf Tianjin would take back all of Banner's unsold drywall, pay for storing it, and replace Banner's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

25. While Knauf Tianjin recalled the drywall product for Banner, it did not recall or take back the product from its other customers, nor did it warn them of the defective nature of the drywall.

26. Upon information and belief, Knauf Tianjin entered into the Secret Agreement to buy the silence of Banner and conceal defects in the drywall from consumers. The Secret Agreement purposefully kept consumers, such as Woodland and other builders, contractors and installers, in the dark about the problems with the drywall. The Secret Agreement acknowledged that if Banner broke its promise to remain silent, Knauf Tianjin could be irreparably harmed.

27. Woodland did not know and was not made aware of the problems with the drywall alleged by Plaintiffs. The drywall manufactured, exported, imported, distributed and/or sold by Banner and/or the Knauf Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

28. For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Woodland, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein. In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

29. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all

{22615889;2}

material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Woodland to know, of the drywall's applications, performance, and dangers.

30.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing, and/or selling the defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages to Plaintiffs.

31.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product purchased by Woodland through its installer for installation in the Homes.

32.     Moreover, Woodland did not know and was never informed by any of the Cross-Claim Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.

33.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Woodland in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

34.     Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

35.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

### COUNT 1 – VICARIOUS LIABILITY
### (Against Knauf Gips)

36.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

37.     This is an action for vicarious liability against Knauf Gips for the negligence and other wrongful acts of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and/or Knauf International.

38.     Among other things, Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International are involved in the manufacturing and sale of drywall.  Upon information and belief, they are actual agents and/or apparent agents of Knauf Gips.

39.     Upon information and belief, at all material times, Knauf Gips was a family-owned German company extensively involved in the plasterboard market in Germany, the United Kingdom, France, China, and the United States, among others.  Indeed, the Court of European Justice of the European Union in an action between Knauf Gips and the European Commission has found that Knauf Gips and other subsidiaries dealing in gypsum products owned by the Knauf family (the "Knauf Group") constitute one "economic unit" in the area of competition law, and that Knauf Gips should be responsible for all activities of the Knauf Group.

40.     Upon information and belief, at all material times, Knauf Gips had an apparent or actual partnership with, or an ownership interest in, Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International.

41.     Upon information and belief, Knauf Gips supervised, monitored, and/or otherwise

{22615889;2}

exercised control and/or had a right to exercise control over the operations of Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International, and their agents, apparent agents, and employees, including the manufacturing, distribution, marketing, and/or sale of their drywall products. Moreover, upon information and belief, Knauf Gips is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International.

42.     Upon information and belief, at all material times, Knauf Gips was closely involved in the management of Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International, and their agents, apparent agents, and employees – overseeing quality control, finding raw materials and dealing with rising concerns over defective drywall.

43.     By way of its apparent or actual partnership and/or exercise of control over the conduct and operations of Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International, Knauf Gips acknowledged that Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International would act on its behalf as its actual and/or apparent agent(s).

44.     Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International accepted the undertaking to act on Knauf Gips' behalf.

45.     As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and/or other wrongful conduct of its actual and/or apparent agents, Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and Knauf International, as further alleged herein.

46. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Knauf UK Gebrueder Knauf, and/or Knauf International's wrongful conduct directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips', Knauf Tianjin, Knauf Wuhu, Knauf USA, Knauf Guangdong, Gebrueder Knauf, Knauf UK and/or Knauf International's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 2 – COMMON LAW INDEMNITY
### (Against Knauf Tianjin and Knauf Gips)

47. Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

48. Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

49. Upon information and belief, Knauf Tianjin, among other things, manufactured,

{22615889;2}

mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

50.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

51.     Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

52.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

53.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Tianjin and/or Knauf Gips.

54.     A special relationship existed between Knauf Tianjin and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Tianjin and/or Knauf Gips.   To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was defective, Knauf Tianjin and Knauf Gips are wholly to blame for Plaintiffs' injuries.

55.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf

Tianjin and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

56.     If Woodland is found to be liable to Plaintiffs, Knauf Tianjin and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 3 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Tianjin and Knauf Gips)

57.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

58.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

59.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

{22615889;2}

12

60.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

61.     Plaintiffs, in the Complaint, allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

62.     Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Tianjin and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

63.     Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

64.     To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Tianjin and/or Knauf Gips for its/their pro rata share of the liability.

65.     Knauf Tianjin and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further

relief as this Court deems just and proper.

## COUNT 4 – EQUITABLE SUBROGATION
### (Against Knauf Tianjin and Knauf Gips)

66.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

67.     This is an action, stated in the alternative, for equitable subrogation.

68.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

69.     Upon information and belief, Knauf Tianjin, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

70.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

71.     Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

72.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

73.     To the extent that Woodland is required to pay damages for any fault of Knauf Tianjin and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Tianjin and/or Knauf Gips under equitable principles

{22615889;2}

14

for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

74.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 5 – NEGLIGENCE
### (Against Knauf Tianjin and Knauf Gips)

75.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

76.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

77.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

78.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

{22615889;2}

packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

79.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Tianjin and/or Knauf Gips.

80.    Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

81.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

82.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

83.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

84.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting

under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

85.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

86.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

87.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

88.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

89.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

90.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

91.     Knauf Tianjin and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Tianjin and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

92.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the

Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

93.     To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate warning of such danger.

94.     Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

95.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Tianjin and/or

Knauf Gips knew or reasonably should have known.

96.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in Knauf Tianjin's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

97.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Tianjin and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Tianjin and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

98.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Tianjin's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Tianjin and Knauf Gips)

99.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

100.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

101.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

102.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

103.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips.

104.     To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips was

{22615889;2}

defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Tianjin and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

105.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, Knauf Tianjin and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Tianjin and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

106.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

107.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Tianjin and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

108.   A warning could have been effectively communicated to consumers such as

Woodland and acted on by them.

109.   At all material times, Knauf Tianjin and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's and/or Knauf Gips' drywall product in residential construction.

110.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in Knauf Tianjin's and/or Knauf Gips' position would have provided a post-sale warning.

111.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Tianjin's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and

proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY
#### (Against Knauf Tianjin and Knauf Gips)

112.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

113.     Upon information and belief, at all material times, Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

114.     Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

115.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in distributing, placing into the stream of commerce and/or selling drywall.

116.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

117.     Knauf Tianjin and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

118.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the

{22615889;2}

Other Property in the Homes.

119.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Tianjin and Knauf Gips)

120.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

121.   Upon information and belief, at all material times. Knauf Tianjin and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or

selling drywall of the type contained in the Homes.

122.    Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

123.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

124.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips, Knauf Tianjin and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

125.    Knauf Tianjin and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

126.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

127.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Tianjin and/or Knauf Gips was required to provide a warning. However, Knauf Tianjin and/or Knauf Gips failed to provide an adequate

warning of such danger.

128.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

129.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Tianjin and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

130.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

{22615889;2}

Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 10
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf Tianjin and Knauf Gips)

131.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

132.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

133.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

134.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

135.    At all material times, Knauf Tianjin engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

136.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

137.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce

and/or selling such drywall.

138.    At the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Tianjin and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

139.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

140.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

141.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Tianjin's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing,

{22615889;2}

labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

142.   To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

143.   To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction. A reasonable consumer would also presume that the manufacturer of such drywall would disclose

and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

144.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

145.   To the extent Plaintiffs are successful in proving their claims, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Tianjin's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court

may deem just and proper.

### <u>COUNT 11 – UNJUST ENRICHMENT</u>
**(Against Knauf Tianjin and Knauf Gips)**

146.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

147.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

148.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

149.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

150.    Knauf Tianjin and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

151.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Tianjin and/or Knauf Gips, which had knowledge thereof.

152.    Knauf Tianjin and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

153.    To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and

proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

154.    The circumstances described herein under which Knauf Tianjin and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Tianjin and/or Knauf Gips to retain those funds and profits.

155.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 12 – FRAUDULENT CONCEALMENT
### (Against Knauf Tianjin and Knauf Gips)

156.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

157.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

158.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Tianjin's

conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

159. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Tianjin and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes, Knauf Tianjin and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

160. As such, Knauf Tianjin and/or Knauf Gips had a duty to reveal any such knowledge.

161. Upon information and belief, Knauf Tianjin and/or Knauf Gips failed to disclose and actively concealed drywall defects for the purpose of inducing consumers such as Woodland to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's and/or Knauf Gips' expense.

162. Knauf Tianjin and/or Knauf Gips had superior knowledge not readily available to Woodland that the drywall was defective and/or not fit for use in the construction of a residential home, which could not have been discovered by Woodland by way of ordinary observation.

163. Knauf Tianjin and/or Knauf Gips having superior knowledge of the defective nature of the drywall knowingly, deliberately and/or intentionally failed to disclose and actively concealed the drywall's defective nature and used artifice to sell the drywall product.

{22615889;2}

164.     Knauf Tianjin employed artifice to sell the drywall product by entering into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Woodland and other customers of Banner.

165.     Woodland purchased drywall for Woodland from Banner for the construction of the Homes. By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed information that caused Woodland to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to use the drywall product sold by Banner in the construction of the Homes.

166.     Woodland relied on Knauf Tianjin and/or Knauf Gips as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended.  The terms of the Secret Agreement foreclosed Woodland from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

167.     By failing to disclose and actively concealing that the drywall Knauf Tianjin and/or Knauf Gips manufactured, designed, distributed, and/or sold emitted foul or noxious odors and/or gases, and/or was not fit for the ordinary purpose for which it was intended, Knauf Tianjin and/or Knauf Gips conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of a residential home.

168.     Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

169.     If Woodland had known about the matters concealed by Knauf Tianjin and/or

Knauf Gips, Woodland would not have purchased and used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin and/or Knauf Gips for installation in residential homes and/or Woodland would have demanded replacement of the drywall at Knauf Tianjin's expense.

170.    Knauf Tianjin and/or Knauf Gips engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[3]

171.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Tianjin's and/or Knauf Gips' fraudulent concealment of the defective nature of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at

---

[3]      Woodland reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for fraudulent concealment.

trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<h2 style="text-align:center"><b>COUNT 13</b><br><b>COMMON LAW AIDING AND ABETTING FRAUDULENT CONCEALMENT</b><br><b>(Against Knauf Gips)</b></h2>

172. Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and and 157, 159 through 169 above as if fully set forth herein.

173. This is an action, stated in the alternative, for common law aiding and abetting fraudulent concealment against Knauf Gips.

174. Knauf Gips was generally and specifically aware that Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects breached a duty to foreseeable consumers, such as Woodland, to reveal such knowledge.

175. Knauf Gips was generally and specifically aware of the nature of the harm that would be incurred by consumers such as Woodland by virtue of Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

176. Knauf Gips knowingly and substantially aided, abetted, advised or encouraged Knauf Tianjin's active concealment of actual and/or potential and/or perceived drywall defects.

177. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Gips' aiding and abetting a fraudulent concealment directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this

action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

178.    Knauf Gips engaged in the acts described above with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[4]

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 14
### CIVIL CONSPIRACY TO FRAUDULENTLY CONCEAL A DEFECTIVE PRODUCT
**(Against Knauf Gips and Knauf Tianjin)**

179.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

180.    This is an action, stated in the alternative, for civil conspiracy to fraudulently conceal a defective product.

181.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

182.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin.

---

[4]      Woodland reserves its right to claim exemplary and/or punitive damages against Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for common law aiding and abetting.

{22615889;2}

183.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, upon information and belief, Knauf Tianjin failed to disclose and actively concealed actual and/or potential and/or perceived drywall defects for the purpose of inducing consumers such as Woodland to continue to purchase and use the drywall product and/or to prevent such consumers from demanding that drywall already purchased and/or installed in residential homes be replaced at Knauf Tianjin's expense.

184.   Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew some of Banner's customers had complained that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin emitted a very bad sulfurous odor.

185.   Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or agreed to a scheme to conceal defects in the drywall from consumers, such as Woodland (the "Concealment Scheme").

186.   Upon information and belief, Knauf Gips and/or Knauf Tianjin investigated the complaints of odors and tested the drywall.

187.   After conducting tests of the drywall, Knauf Tianjin and/or Knauf Gips advised Banner the drywall was safe and met regulatory standards.

188.   In furtherance of the Concealment Scheme, Knauf Tianjin employed artifice to sell its drywall by entering into the Secret Agreement with Banner to conceal from Woodland and other customers of Banner "perceived or actual smell or health risks" related to the drywall.

189.   By entering into the Secret Agreement with Banner, Knauf Tianjin suppressed

information that caused Woodland to remain ignorant about any perceived or actual defects and to believe that it had all available information necessary to purchase and/or use the drywall product in the construction of the Homes.

190.    Woodland relied on Knauf Tianjin as the manufacturer of the drywall to disclose any facts indicating the drywall was not fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.   The terms of the Secret Agreement foreclosed Woodland from having an equal opportunity to become reasonably informed of the fact that such defects were associated with the drywall.

191.    By failing to disclose and actively concealing that the drywall emitted foul or noxious odors and/or gases, and/or was defective, Knauf Tianjin conveyed the misleading impression that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

192.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of residential homes.

193.    If Woodland had known about the matters concealed by Knauf Tianjin and Knauf Gips, Woodland would not have purchased and/or used the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Tianjin for installation in residential homes and/or Woodland would have demanded replacement of the drywall at Knauf Tianjin's expense.

194.    Knauf Gips and Knauf Tianjin engaged in the Concealment Scheme with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the

rights of others.[5]

195.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Concealment Scheme directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 15
### CIVIL CONSPIRACY: WILLFUL FAILURE TO WARN
### (Against Knauf Gips and Knauf Tianjin)

196.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

197.   This is an action, stated in the alternative, for civil conspiracy premised on a willful failure to issue a post-sale warning.

---

[5]      Woodland reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy to fraudulently conceal a defective product.

198.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

199.    Upon information and belief, Knauf Tianjin manufactured, mined, designed, produced, marketed, sold, distributed, and/or supplied drywall that was installed in the Homes.

200.    Woodland was a foreseeable user of the drywall being manufactured, mined, designed, produced, made, marketed, sold, distributed and/or supplied by Knauf Tianjin.

201.    Knauf Tianjin, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.

202.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, marketed, sold, supplied, and/or delivered by Knauf Tianjin was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Tianjin's control and/or was sold to Woodland, Knauf Tianjin knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

203.    Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips and Knauf Tianjin knew that some of Banner's customers had complained that the drywall manufactured by Knauf Tianjin emitted a very bad sulfurous odor.

204.    Upon information and belief, Knauf Tianjin and Knauf Gips engaged in and/or

agreed to an intentional and willful scheme not to warn consumers who had already purchased Knauf Tianjin's drywall product about actual or perceived defects in the drywall product (the "Scheme Not to Warn").

205.    Upon information and belief, Knauf Tianjin and/or Knauf Gips investigated the complaints of odors and tested the drywall.

206.    Upon information and belief, and in furtherance of the Scheme Not to Warn, Knauf Tianjin and/or Knauf Gips did not properly investigate potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product and thereby breached the duty owed to Woodland to properly investigate the drywall's potential dangers and risks.

207.    Upon information and belief, after Knauf Tianjin and/or Knauf Gips conducted tests of the drywall, and to further the Scheme Not to Warn, Knauf Tianjin entered into the Secret Agreement with Banner to conceal "perceived or actual smell or health risks" related to the drywall from Woodland and other customers of Banner.

208.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or was not safe and fit for use in the construction of a residential home, and therefore Knauf Tianjin was in breach of the duty to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall in residential construction.

209.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

210.    Consumers, such as Woodland, to whom a warning might have been provided

could have been identified by Knauf Tianjin and could reasonably be assumed to be unaware of the risk of harm.

211.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

212.    At all material times, Knauf Tianjin stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Tianjin's drywall product in residential construction.

213.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, distributor, seller and/or supplier in Knauf Tianjin's position would have provided a post-sale warning.

214.    Knauf Gips' and Knauf Tianjin's individual and collective failure to warn as set forth above was wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to consumers of the drywall product, such as Woodland. Knauf Gips and Knauf Tianjin engaged in the Scheme Not to Warn with oppression, fraud or malice, and acted wantonly, willfully and with reckless indifference to the rights of others.[6]

215.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Scheme Not to Warn directly and proximately caused and/or exposed Woodland to substantial liability and damages to Plaintiffs, including but not limited to

---

[6]    Woodland reserves its right to claim exemplary and/or punitive damages against Knauf Tianjin and Knauf Gips until such time as it makes a proper showing to the Court as to its right to such damages based on its claim for civil conspiracy premised on a willful failure to issue a post-sale warning.

any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs. Knauf Gips' and Knauf Tianjin's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Tianjin) Co. Ltd. and Knauf Gips KG, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – COMMON LAW INDEMNITY
### (Against Knauf Wuhu and Knauf Gips)

216.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

217.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

218.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

219.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

220.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

221.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

222.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Wuhu and/or Knauf Gips.

223.    A special relationship existed between Knauf Wuhu and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Wuhu and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims as more fully alleged in the Complaint, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

224.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Wuhu and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e*., safe and fit for use in the construction of residential homes.

225.    If Woodland is found to be liable to Plaintiffs, Knauf Wuhu and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland,

including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.  Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Woodland, including, but not limited to, Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 17 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Knauf Wuhu and Knauf Gips)**

226.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

227.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

228.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

229.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

230.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

231.    Without admitting any liability or damages to Plaintiffs, should Woodland be

found liable, Knauf Wuhu and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

232.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

233.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Wuhu and/or Knauf Gips for its/their pro rata share of the liability.

234.    Knauf Wuhu and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 18 – EQUITABLE SUBROGATION
### (Against Knauf Wuhu and Knauf Gips)

235.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

236.    This is an action, stated in the alternative, for equitable subrogation.

237.    Plaintiffs in the Complaint allege various claims against Woodland for damages

caused by defective drywall contained in the Homes.

238.    Upon information and belief, Knauf Wuhu, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

239.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

240.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

241.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

242.    To the extent that Woodland is required to pay damages for any fault of Knauf Wuhu and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Wuhu and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims

{22615889;2}

brought by Plaintiffs.

243.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 19 – NEGLIGENCE
### (Against Knauf Wuhu and Knauf Gips)

244.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

245.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

246.   Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

247.   Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

248.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Wuhu and/or Knauf Gips.

249.   Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu

and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

250.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

251.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the

properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

252.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

253.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged by the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

254.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care owed to Woodland,

which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 20 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

255.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

256.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

257.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

258.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's

conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

259.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

260.   Knauf Wuhu and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Wuhu and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

261.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

262.   To the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or should have known that

unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

263.   Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

264.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Wuhu and/or Knauf Gips knew or reasonably should have known.

265.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Wuhu's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

266.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Wuhu and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Wuhu and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

267.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Wuhu's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{22615889;2}

## COUNT 21 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Wuhu and Knauf Gips)

268.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

269.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

270.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

271.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

272.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips.

273.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Wuhu's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Wuhu and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of

harm to persons or property.

274.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf Wuhu and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

275.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

276.    Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Wuhu and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

277.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

278.    At all material times, Knauf Wuhu and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of

harm associated with the use of Knauf Wuhu's and/or Knauf Gips' drywall product in residential construction.

279.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Wuhu's and/or Knauf Gips' position would have provided a post-sale warning.

280.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Wuhu's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 22 – STRICT PRODUCTS LIABILITY
**(Against Knauf Wuhu and Knauf Gips)**

281.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

{22615889;2}

282.     Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

283.     Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

284.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in distributing, placing into the stream of commerce and/or selling drywall.

285.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

286.     Knauf Wuhu and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

287.     Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

288.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed,

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 23 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf Wuhu and Knauf Gips)

289.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

290.    Upon information and belief, at all material times, Knauf Wuhu and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

291.    Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

{22615889;2}

292.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

293.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Wuhu and/or Knauf Gips, Knauf Wuhu and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

294.    Knauf Wuhu and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

295.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

296.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Wuhu and/or Knauf Gips was required to provide a warning. However, Knauf Wuhu and/or Knauf Gips failed to provide an adequate warning of such danger.

297.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

{22615889;2}

298.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Wuhu and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

299.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf  Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{22615889;2}

**COUNT 24**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Wuhu and Knauf Gips)**

300.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

301.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

302.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

303.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

304.    At all material times, Knauf Wuhu engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

305.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

306.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

307.     At the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed,

placed into the stream of commerce, and/or sold the drywall, Knauf Wuhu and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

308.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

309.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Wuhu and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Wuhu and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

310.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Wuhu's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential

construction.

311.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

312.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the

ordinary purpose for which drywall is used.

313.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

314.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Wuhu's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Wuhu's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at

{22615889;2}

trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 25 – UNJUST ENRICHMENT
### (Against Knauf Wuhu and Knauf Gips)

315.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

316.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

317.    Upon information and belief, Knauf Wuhu manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

318.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Wuhu's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

319.    Knauf Wuhu and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

320.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Wuhu and/or Knauf Gips, which had knowledge thereof.

321.    Knauf Wuhu and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

322.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Wuhu's and/or Knauf Gips' acts and omissions

in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

323.    The circumstances described herein under which Knauf Wuhu and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Wuhu and/or Knauf Gips to retain those funds and profits.

324.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Plasterboard (Wuhu) Co. Ltd. and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 26 – COMMON LAW INDEMNITY**
**(Against Knauf Guangdong and Knauf Gips)**

325.    Woodland reasserts and realleges the allegations in 1 through 35 and 38 through 45 above as if fully set forth herein.

326.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

327.    Upon information and belief, Knauf Guandong, among other things,

manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

328.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

329.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips.

330.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

331.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf Guandong and/or Knauf Gips.

332.    A special relationship existed between Knauf Guandong and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf Guandong and/or Knauf Gips.   To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

333.    As a result of the claims that have been filed against Woodland, Woodland has

{22615889;2}

incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf Guandong and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

334.   If Woodland is found to be liable to Plaintiffs, Knauf Guandong and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs. Knauf Guandong's and/or Knauf Gips' wrongful conduct also caused damages to Woodland, including, but not limited to, Woodland's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Guandong and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 27 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf Guandong and Knauf Gips)

335.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

336.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

{22615889;2}

337.    Upon information and belief, Knauf Guandong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,   placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

338.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

339.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

340.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf Guandong and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

341.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

342.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf Guandong and/or Knauf Gips for its/their pro rata share of the liability.

343.    Knauf Guandong and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of

Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

WHEREFORE, Woodland demands that judgment be entered against Knauf Guandong and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT 28 – EQUITABLE SUBROGATION
### (Against Knauf Guandong and Knauf Gips)

344.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

345.    This is an action, stated in the alternative, for equitable subrogation.

346.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

347.    Upon information and belief, Knauf Guandong, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

348.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

349.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips.

350.   Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

351.   To the extent that Woodland is required to pay damages for any fault of Knauf Guandong and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf Guandong and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

352.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Guandong and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 29 – NEGLIGENCE
### (Against Knauf Guandong and Knauf Gips)

353.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

354.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{22615889;2}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

355.    Upon information and belief, Knauf Guandong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

356.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

357.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf Guandong and/or Knauf Gips.

358.    Knauf Guandong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf Guandong and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its

{22615889;2}

foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

359.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

360.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

361.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, such breaches in Knauf Guandong's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

362.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf Guandong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

363.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Guandong's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Guandong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of

reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guandong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 30 – NEGLIGENT FAILURE TO WARN
### (Against Knauf Guandong and Knauf Gips)

364.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

365.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

366.    Upon information and belief, Knauf Guandong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

367.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

368.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips.

369.    Knauf Guandong and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf

{22615889;2}

Guandong and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

370. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

371. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf Guandong and/or Knauf Gips failed to provide an adequate warning of such danger.

372. Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had

every reason to expect that the product could be safely used in a residential home in the ordinary manner.

373.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf Guandong and/or Knauf Gips knew or reasonably should have known.

374.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf Guandong's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

375.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf Guandong and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf Guandong and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of

drywall defects.

376.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Guandong's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf Guandong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guandong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 31 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf Guandong and Knauf Gips)

377.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

378.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

379.    Upon information and belief, Knauf Guandong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the

stream of commerce, and/or sold drywall that was installed in the Homes.

380.     Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

381.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips.

382.     To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf Guandong's and/or Knauf Gips' control and/or was sold to Woodland, Knauf Guandong and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

383.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf Guandong and/or Knauf Gips breached that duty by failing to properly investigate any potential

dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

384.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

385.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf Guandong and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

386.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

387.   At all material times, Knauf Guandong and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf Guandong's and/or Knauf Gips' drywall product in residential construction.

388.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf Guandong's and/or Knauf Gips' position would have provided a post-sale warning.

389.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf Guandong's and/or Knauf Gips' breach of the post-sale duty to warn, which directly

and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Guandong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guandong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 32 – STRICT PRODUCTS LIABILITY
### (Against Knauf Guandong and Knauf Gips)

390.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

391.    Upon information and belief, at all material times. Knauf Guandong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

392.    Upon information and belief, Knauf Guandong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

393.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in distributing, placing into the stream of commerce and/or selling drywall.

{22615889;2}

394.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips, Knauf Guandong and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

395.   Knauf Guandong and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

396.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

397.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in

defending against these claims. Knauf Gips' and Knauf Guandong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guandong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 33 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Knauf Guandong and Knauf Gips)**

398.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

399.    Upon information and belief, at all material times. Knauf Guandong and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

400.    Knauf Guandong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

401.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

402.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf Guandong and/or Knauf Gips, Knauf Guandong and/or Knauf Gips

{22615889;2}

intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

403.    Knauf Guandong and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

404.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

405.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf Guandong and/or Knauf Gips was required to provide a warning. However, Knauf Guandong and/or Knauf Gips failed to provide an adequate warning of such danger.

406.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

407.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf Guandong and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but

not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

408.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf Guandong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guandong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 34**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf Guandong and Knauf Gips)**

409.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

410.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

411.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

412.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

413.    At all material times, Knauf Guandong engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

414.    Upon information and belief, Knauf Guandong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

415.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

416.     At the time Knauf Guandong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf Guandong and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

417.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

418.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf Guandong and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf Guandong and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

419.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf Guandong's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

420.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing,

{22615889;2}

labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

421.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

422.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing,

{22615889;2}

labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

423.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf Guandong's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf Guandong's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guandong and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 35 – UNJUST ENRICHMENT
### (Against Knauf Guandong and Knauf Gips)

424.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

{22615889;2}

425.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

426.    Upon information and belief, Knauf Guandong manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

427.    Upon information and belief, Knauf Gips is vicariously liable for Knauf Guandong's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

428.    Knauf Guandong and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

429.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf Guandong and/or Knauf Gips, which had knowledge thereof.

430.    Knauf Guandong and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

431.    To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf Guandong's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this

action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims.

432.   The circumstances described herein under which Knauf Guandong and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf Guandong and/or Knauf Gips to retain those funds and profits.

433.   Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Guandong and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – COMMON LAW INDEMNITY
**(Against Knauf USA and Knauf Gips)**

434.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

435.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

436.   Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

437.   Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

438.   Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

439.   Woodland is entirely without fault for the injuries alleged by Plaintiffs.

440.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf USA and/or Knauf Gips.

441.   A special relationship existed between Knauf USA and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf USA and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

442.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf USA and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

443.   If Woodland is found to be liable to Plaintiffs, Knauf USA and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland

in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf Insulation  GmbH  a/k/a  Knauf  Insulation  USA  and/or  Knauf  Gips  KG  for  damages  plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 37 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf USA and Knauf Gips)

444.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

445.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

446.    Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

447.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

448.    Plaintiffs in the Complaint allege various claims against Woodland for damages

caused by defects in the drywall contained in the Homes.

449.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf USA and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

450.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

451.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf USA and/or Knauf Gips for its/their pro rata share of the liability.

452.    Knauf USA and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 38– EQUITABLE SUBROGATION
### (Against Knauf USA and Knauf Gips)

453.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

454.     This is an action, stated in the alternative, for equitable subrogation.

455.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

456.     Upon information and belief, Knauf USA, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

457.     Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

458.     Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

459.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

460.     To the extent that Woodland is required to pay damages for any fault of Knauf USA and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf USA and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this

{22615889;2}

action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

461.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 39 – NEGLIGENCE
### (Against Knauf USA and Knauf Gips)

462.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

463.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

464.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

465.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

466.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf USA and/or Knauf Gips.

{22615889;2}

467.    Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

468.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

469.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably

safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

470.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

471.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

drywall.

472.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 40 – NEGLIGENT FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

473.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

474.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

475.    Upon information and belief, Knauf USA manufactured, mined, designed,

{22615889;2}

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

476.   Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

477.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

478.   Knauf USA and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf USA and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

479.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

480.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

481.    Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

482.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf USA and/or Knauf Gips knew or reasonably should have known.

483.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, such breaches in Knauf USA's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

484.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips knew or reasonably should have known its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages.   If Knauf USA and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf USA and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

485.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf USA's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be

{22615889;2}

determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 41 – BREACH OF POST-SALE DUTY TO WARN</u><br>
(Against Knauf USA and Knauf Gips)

486.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

487.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

488.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

489.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

490.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips.

491.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf USA's and/or Knauf Gips'

control and/or was sold to Woodland, Knauf USA and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

492. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. Knauf USA and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

493. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

494. Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf USA and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

495. A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

496. At all material times, Knauf USA and/or Knauf Gips stood in a better position

than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf USA's and/or Knauf Gips' drywall product in residential construction.

497.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf USA's and/or Knauf Gips' position would have provided a post-sale warning.

498.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf USA's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 42 – STRICT PRODUCTS LIABILITY
### (Against Knauf USA and Knauf Gips)

499.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

500.    Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

501.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

502.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in distributing, placing into the stream of commerce and/or selling drywall.

503.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

504.    Knauf USA and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

505.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

506.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 43 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf USA and Knauf Gips)

507.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

508.    Upon information and belief, at all material times. Knauf USA and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

509.   Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

510.   Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

511.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf USA and/or Knauf Gips, Knauf USA and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

512.   Knauf USA and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

513.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

514.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf USA and/or Knauf Gips was required to provide a warning. However, Knauf USA and/or Knauf Gips failed to provide an adequate warning of such danger.

515.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

516.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf USA and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

517.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf  USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be

determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 44**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Knauf USA and Knauf Gips)**

518.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

519.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

520.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

521.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

522.    At all material times, Knauf USA engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

523.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

524.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

{22615889;2}

525.   At the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf USA and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

526.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

527.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf USA and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf USA and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

528.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf USA's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of

{22615889;2}

commerce and/or selling defective drywall, and/or failing to disclose the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

529.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

530.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable

consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

531.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

532.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf USA's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf USA's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 45 – UNJUST ENRICHMENT
#### (Against Knauf USA and Knauf Gips)

533.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

534.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

535.    Upon information and belief, Knauf USA manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

536.    Upon information and belief, Knauf Gips is vicariously liable for Knauf USA's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

537.    Knauf USA and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

538.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf USA and/or Knauf Gips, which had knowledge thereof.

539.    Knauf USA and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

540.    To the extent Plaintiffs are successful in proving drywall in the Homes was

defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf USA's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

541.    The circumstances described herein under which Knauf USA and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf USA and/or Knauf Gips to retain those funds and profits.

542.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf Insulation GmbH a/k/a Knauf Insulation USA and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 46 – COMMON LAW INDEMNITY
### (Against Gebrueder Knauf and Knauf Gips)

543.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

544.    Plaintiffs in the Complaint allege various claims against Woodland for damages

caused by defective drywall contained in the Homes.

545.    Upon information and belief, Gebrueder Knauf, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

546.    Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

547.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Gebrueder Knauf and/or Knauf Gips.

548.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

549.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Gebrueder Knauf and/or Knauf Gips.

550.    A special relationship existed between Gebrueder Knauf and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Gebrueder Knauf and/or Knauf Gips.   To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Gebrueder Knauf

and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

551.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Gebrueder Knauf and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

552.    If Woodland is found to be liable to Plaintiffs, Gebrueder Knauf and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs, including, but not limited to, Woodland's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Gebrueder Knauf and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 47 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Gebrueder Knauf and Knauf Gips)

553.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

554.    This is an action, stated in the alternative, for contribution pursuant to Section

768.31, Florida Statutes.

555.   Upon information and belief, Gebrueder Knauf, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

556.   Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

557.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

558.   Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Gebrueder Knauf and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

559.   Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

560.   To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Gebrueder Knauf and/or Knauf Gips for its/their pro rata share of the liability.

561.   Gebrueder Knauf and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action

and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Gebrueder Knauf and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT 48 – EQUITABLE SUBROGATION
### (Against Gebrueder Knauf and Knauf Gips)

562.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

563.    This is an action, stated in the alternative, for equitable subrogation.

564.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

565.    Upon information and belief, Gebrueder Knauf, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

566.    Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

567.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the

{22615889;2}

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Gebrueder Knauf and/or Knauf Gips.

568.   Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

569.   To the extent that Woodland is required to pay damages for any fault of Gebrueder Knauf and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Gebrueder Knauf and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

570.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Gebrueder Knauf and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 49 – NEGLIGENCE
**(Against Gebrueder Knauf and Knauf Gips)**

571.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

572.   Plaintiffs in the Complaint allege various claims against Woodland for damages

{22615889;2}

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

573.    Upon information and belief, Gebrueder Knauf manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

574.    Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

575.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Gebrueder Knauf and/or Knauf Gips.

576.    Gebrueder Knauf and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Gebrueder Knauf and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of

the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

577.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

578.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

579.   To the extent Plaintiffs are successful in proving that drywall was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Gebrueder Knauf's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

580.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips knew or reasonably should have known its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Gebrueder Knauf and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

581.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Gebrueder Knauf's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Gebrueder Knauf's wrongful

conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Gebrueder Knauf and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 50 – NEGLIGENT FAILURE TO WARN
**(Against Gebrueder Knauf and Knauf Gips)**

582.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

583.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

584.    Upon information and belief, Gebrueder Knauf manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

585.    Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

586.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Gebrueder Knauf and/or Knauf Gips.

587.    Gebrueder Knauf and/or Knauf Gips had a duty to exercise reasonable care so that

{22615889;2}

its drywall product in the marketplace would not harm persons or property.  As such, Gebrueder Knauf and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Gebrueder Knauf and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

588.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

589.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Gebrueder Knauf and/or Knauf Gips failed to provide an adequate warning of such danger.

590.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning,

Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect the product could be safely used in a residential home in the ordinary manner.

591.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Gebrueder Knauf and/or Knauf Gips knew or reasonably should have known.

592.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Gebrueder Knauf's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

593.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Gebrueder Knauf and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Gebrueder Knauf and/or Knauf Gips would or could have

foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

594.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Gebrueder Knauf's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Gebrueder Knauf's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Gebrueder Knauf and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 51 – BREACH OF POST-SALE DUTY TO WARN
### (Against Gebrueder Knauf and Knauf Gips)

595.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

596.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

597.    Upon information and belief, Gebrueder Knauf manufactured, mined, designed,

{22615889;2}

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

598.     Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

599.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Gebrueder Knauf and/or Knauf Gips.

600.     To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Gebrueder Knauf and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Gebrueder Knauf's and/or Knauf Gips' control and/or was sold to Woodland, Gebrueder Knauf and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

601.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Gebrueder

Knauf and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

602. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

603. Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Gebrueder Knauf and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

604. A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

605. At all material times, Gebrueder Knauf and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Gebrueder Knauf's and/or Knauf Gips' drywall product in residential construction.

606. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Gebrueder Knauf's and/or Knauf Gips' position would have provided a post-sale warning.

607. Without admitting any liability or damages to Plaintiffs, Woodland was damaged

by Gebrueder Knauf's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Gebrueder Knauf's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Gebrueder Knauf and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 52 – STRICT PRODUCTS LIABILITY
### (Against Gebrueder Knauf and Knauf Gips)

608.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

609.    Upon information and belief, at all material times. Gebrueder Knauf and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

610.    Upon information and belief, Gebrueder Knauf manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

611.    Upon information and belief, Knauf Gips is vicariously liable for Gebrueder

{22615889;2}

Knauf's conduct in distributing, placing into the stream of commerce and/or selling drywall.

612.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Gebrueder Knauf and/or Knauf Gips, Gebrueder Knauf and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

613.    Gebrueder Knauf and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

614.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

615.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Gebrueder Knauf and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Gebrueder Knauf's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Gebrueder Knauf and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 53 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Gebrueder Knauf and Knauf Gips)

616.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

617.    Upon information and belief, at all material times. Gebrueder Knauf and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

618.    Gebrueder Knauf manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

619.    Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

620.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce,

{22615889;2}

and/or sold by Gebrueder Knauf and/or Knauf Gips, Gebrueder Knauf and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

621. Gebrueder Knauf and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

622. Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

623. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Gebrueder Knauf and/or Knauf Gips was required to provide a warning. However, Gebrueder Knauf and/or Knauf Gips failed to provide an adequate warning of such danger.

624. Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

625. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Gebrueder Knauf and/or Knauf Gips

failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

626.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Gebrueder Knauf's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Gebrueder Knauf and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 54
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Gebrueder Knauf and Knauf Gips)**

627.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

628.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

629.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

630.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

631.    At all material times, Gebrueder Knauf engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

632.    Upon information and belief, Gebrueder Knauf manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

633.    Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

634.     At the time Gebrueder Knauf and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Gebrueder Knauf and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

635.    Plaintiffs in the Complaint allege various claims against Woodland for damages

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

636.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Gebrueder Knauf and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Gebrueder Knauf and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

637.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Gebrueder Knauf's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

638.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's and/or Knauf Gips' unfair and

deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

639.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

640.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf and/or Knauf Gips' unfair and

deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

641.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Gebrueder Knauf's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Gebrueder Knauf's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Gebrueder Knauf and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 55 – UNJUST ENRICHMENT
### (Against Gebrueder Knauf and Knauf Gips)

642.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and

38 through 45 above as if fully set forth herein.

643.    Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

644.    Upon information and belief, Gebrueder Knauf manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

645.    Upon information and belief, Knauf Gips is vicariously liable for Gebrueder Knauf's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

646.    Gebrueder Knauf and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

647.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Gebrueder Knauf and/or Knauf Gips, which had knowledge thereof.

648.    Gebrueder Knauf and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

649.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Gebrueder Knauf's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of

Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

650.    The circumstances described herein under which Gebrueder Knauf and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Gebrueder Knauf and/or Knauf Gips to retain those funds and profits.

651.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Gebrueder Knauf and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 56 – COMMON LAW INDEMNITY
### (Against Knauf International and Knauf Gips)

652.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

653.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

654.    Upon information and belief, Knauf International, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

655.    Upon information and belief, Knauf Gips is vicariously liable for Knauf

International's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

656.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips.

657.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

658.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf International and/or Knauf Gips.

659.    A special relationship existed between Knauf International and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf International and/or Knauf Gips.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

660.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf International and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

661.    If Woodland is found to be liable to Plaintiffs, Knauf International and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs, including, but not limited to, Woodland's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf International and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 57 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf International and Knauf Gips)

662.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

663.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

664.    Upon information and belief, Knauf International, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

665.    Upon information and belief, Knauf Gips is vicariously liable for Knauf

{22615889;2}

International's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

666. Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

667. Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf International and/or Knauf Gips would also share in the liability to the extent its/their tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

668. Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

669. To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf International and/or Knauf Gips for its/their pro rata share of the liability.

670. Knauf International and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf International and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court

deems just and proper.

**COUNT 58 – EQUITABLE SUBROGATION**
**(Against Knauf International and Knauf Gips)**

671.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and

38 through 45 above as if fully set forth herein.

672.    This is an action, stated in the alternative, for equitable subrogation.

673.    Plaintiffs in the Complaint allege various claims against Woodland for damages

caused by defective drywall contained in the Homes.

674.    Upon information and belief, Knauf International, among other things,

manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed, placed into the stream of commerce, and/or sold drywall that was

installed in the Homes.

675.    Upon information and belief, Knauf Gips is vicariously liable for Knauf

International's conduct in manufacturing, mining, designing, producing, making, marketing,

testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or

selling drywall.

676.    Woodland is not and was not in the business of manufacturing, distributing or

selling drywall and had no reason to know or to suspect that there were problems with the

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International

and/or Knauf Gips.

677.    Without admitting any liability or damages to Plaintiffs, Woodland is not

primarily liable for any liability to the Plaintiffs.

678.    To the extent that Woodland is required to pay damages for any fault of Knauf

148

International and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf International and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

679.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf International and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 59 – NEGLIGENCE
### (Against Knauf International and Knauf Gips)

680.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

681.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

682.    Upon information and belief, Knauf International manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

{22615889;2}

683.    Upon information and belief, Knauf Gips is vicariously liable for Knauf International's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

684.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf International and/or Knauf Gips.

685.    Knauf International and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf International and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

686.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, Knauf International and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

687.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

688.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf International's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

689.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International and/or Knauf Gips knew or reasonably should have known

that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf International and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

690.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf International's and/or Knauf Gips' breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf International's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf International and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**COUNT 60 – NEGLIGENT FAILURE TO WARN**</u>
**(Against Knauf International and Knauf Gips)**

691.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

692.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

693.    Upon information and belief, Knauf International manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

694.    Upon information and belief, Knauf Gips is vicariously liable for Knauf International's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

695.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips.

696.    Knauf International and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf International and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips or disclose any adverse affects associated with the

drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

697.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

698.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, Knauf International and/or Knauf Gips failed to provide an adequate warning of such danger.

699.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

700.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, Knauf International and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf International and/or Knauf Gips knew or reasonably should have known.

701.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf International's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

702.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf International and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf International and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

703.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf International's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and

damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf International's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf International and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 61 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf International and Knauf Gips)

704.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

705.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

706.     Upon information and belief, Knauf International manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

707.     Upon information and belief, Knauf Gips is vicariously liable for Knauf International's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or

selling drywall.

708.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips.

709.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf International's and/or Knauf Gips' control and/or was sold to Woodland, Knauf International and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

710.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International and/or Knauf Gips, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   Knauf International and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

711.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

712. Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf International and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

713. A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

714. At all material times, Knauf International and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf International's and/or Knauf Gips' drywall product in residential construction.

715. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in Knauf International's and/or Knauf Gips' position would have provided a post-sale warning.

716. Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf International's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf International's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf International and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 62 – STRICT PRODUCTS LIABILITY
**(Against Knauf International and Knauf Gips)**

717.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

718.    Upon information and belief, at all material times. Knauf International and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

719.    Upon information and belief, Knauf International manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

720.    Upon information and belief, Knauf Gips is vicariously liable for Knauf International's conduct in distributing, placing into the stream of commerce and/or selling drywall.

721.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips, Knauf International and/or Knauf Gips

intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

722.   Knauf International and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

723.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

724.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf International's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf International and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 63 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf International and Knauf Gips)

725.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

726.    Upon information and belief, at all material times. Knauf International and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

727.    Knauf International manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

728.    Upon information and belief, Knauf Gips is vicariously liable for Knauf International's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

729.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf International and/or Knauf Gips, Knauf International and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

730.    Knauf International and/or Knauf Gips expected the drywall to reach Woodland

{22615889;2}

and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

731.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

732.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf International and/or Knauf Gips was required to provide a warning. However, Knauf International and/or Knauf Gips failed to provide an adequate warning of such danger.

733.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

734.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf International and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

{22615889;2}

735.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   Knauf Gips' and Knauf International's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf International and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 64
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf International and Knauf Gips)

736.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45above as if fully set forth herein.

737.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

738.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

739.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

740.    At all material times, Knauf International engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

741.    Upon information and belief, Knauf International manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

742.    Upon information and belief, Knauf Gips is vicariously liable for Knauf International's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

743.     At the time Knauf International and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf International and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

744.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{22615889;2}

745.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf International and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf International and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

746.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf International's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

747.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably

dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

748.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

749.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective,

unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

750. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf International's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf International's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf International and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 65 – UNJUST ENRICHMENT
### (Against Knauf International and Knauf Gips)

751. Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

752. Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

753.   Upon information and belief, Knauf International manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

754.   Upon information and belief, Knauf Gips is vicariously liable for Knauf International's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

755.   Knauf International and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

756.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf International and/or Knauf Gips, which had knowledge thereof.

757.   Knauf International and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

758.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf International's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by

Woodland in defending against these claims.

759.     The circumstances described herein under which Knauf International and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for Knauf International and/or Knauf Gips to retain those funds and profits.

760.     Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf International and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 66 – COMMON LAW INDEMNITY
### (Against Knauf UK and Knauf Gips)

761.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

762.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

763.     Upon information and belief, Knauf UK, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

764.     Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

765.     Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the

drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips.

766.   Woodland is entirely without fault for the injuries alleged by Plaintiffs.

767.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Knauf UK and/or Knauf Gips.

768.   A special relationship existed between Knauf UK and/or Knauf Gips and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Knauf UK and/or Knauf Gips. To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips was defective and wholly to blame for Plaintiffs' injuries.

769.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Knauf UK and/or Knauf Gips to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

770.   If Woodland is found to be liable to Plaintiffs, Knauf UK and/or Knauf Gips is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland,

including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Knauf UK and/or Knauf Gips KG for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 67 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Knauf UK and Knauf Gips)

771.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

772.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

773.    Upon information and belief, Knauf UK, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

774.    Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

775.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

776.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Knauf UK and/or Knauf Gips would also share in the liability to the extent its/their

{22615889;2}

tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

777.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

778.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Knauf UK and/or Knauf Gips for its/their pro rata share of the liability.

779.    Knauf UK and/or Knauf Gips should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Knauf UK and/or Knauf Gips KG for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 68 – EQUITABLE SUBROGATION
(Against Knauf UK and Knauf Gips)

780.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

781.    This is an action, stated in the alternative, for equitable subrogation.

782.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

{22615889;2}

783.    Upon information and belief, Knauf UK, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

784.    Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

785.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips.

786.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

787.    To the extent that Woodland is required to pay damages for any fault of Knauf UK and/or Knauf Gips to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Knauf UK and/or Knauf Gips under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

788.    Such subrogation will not work any injustice to the rights of others.

{22615889;2}

**WHEREFORE**, Woodland demands judgment in its favor and against Knauf UK and/or Knauf Gips KG for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

**COUNT 69 – NEGLIGENCE**
**(Against Knauf UK and Knauf Gips)**

789.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

790.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

791.   Upon information and belief, Knauf UK manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

792.   Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

793.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by Knauf UK and/or Knauf Gips.

794.   Knauf UK and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, Knauf UK and/or Knauf Gips owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce

{22615889;2}

and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

795.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK and/or Knauf Gips knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

796.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK and/or Knauf Gips breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and

industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

797.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf UK's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

798.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If Knauf UK and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

799.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf UK's and/or Knauf Gips' breaches of the duty of care owed to Woodland,

which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf UK's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

WHEREFORE, Woodland demands judgment for damages in its favor and against Knauf UK and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 70 – NEGLIGENT FAILURE TO WARN
#### (Against Knauf UK and Knauf Gips)

800.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

801.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

802.    Upon information and belief, Knauf UK manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

803.    Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling,

{22615889;2}

packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

804. Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips.

805. Knauf UK and/or Knauf Gips had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property. As such, Knauf UK and/or Knauf Gips owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

806. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK and/or Knauf Gips knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

807. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK and/or Knauf Gips knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer

harm. However, Knauf UK and/or Knauf Gips failed to provide an adequate warning of such danger.

808.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

809.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK and/or Knauf Gips breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which Knauf UK and/or Knauf Gips knew or reasonably should have known.

810.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Knauf UK's and/or Knauf Gips' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

811.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, Knauf UK and/or Knauf Gips knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Knauf UK and/or Knauf Gips had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, Knauf UK and/or Knauf Gips would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

812.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf UK's and/or Knauf Gips' breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf UK's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf UK and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 71 – BREACH OF POST-SALE DUTY TO WARN
### (Against Knauf UK and Knauf Gips)

813.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

814.    Plaintiffs in the Complaint allege various claims against Woodland for damages

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

815.    Upon information and belief, Knauf UK manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

816.    Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

817.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips.

818.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Knauf UK's and/or Knauf Gips' control and/or was sold to Woodland, Knauf UK and/or Knauf Gips knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

819.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK and/or Knauf Gips, as the manufacturer of the drywall, had a duty of

reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Knauf UK and/or Knauf Gips breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

820.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

821.    Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by Knauf UK and/or Knauf Gips and could reasonably be assumed to be unaware of the risk of harm.

822.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

823.    At all material times, Knauf UK and/or Knauf Gips stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Knauf UK's and/or Knauf Gips' drywall product in residential construction.

824.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, a reasonable manufacturer, producer and/or seller in Knauf UK's and/or Knauf Gips' position would have provided a post-sale warning.

825.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Knauf UK's and/or Knauf Gips' breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf UK's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf UK and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 72 – STRICT PRODUCTS LIABILITY
**(Against Knauf UK and Knauf Gips)**

826.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

827.   Upon information and belief, at all material times. Knauf UK and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

828.   Upon information and belief, Knauf UK manufactured, mined, designed,

produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

829.    Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in distributing, placing into the stream of commerce and/or selling drywall.

830.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips, Knauf UK and/or Knauf Gips intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

831.    Knauf UK and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

832.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

833.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any

other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Knauf Gips' and Knauf UK's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf UK and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 73 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Knauf UK and Knauf Gips)

834.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

835.    Upon information and belief, at all material times. Knauf UK and/or Knauf Gips was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

836.    Knauf UK manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

837.    Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

838.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by Knauf UK and/or Knauf Gips, Knauf UK and/or Knauf Gips intended that the

drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

839.    Knauf UK and/or Knauf Gips expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

840.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

841.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Knauf UK and/or Knauf Gips was required to provide a warning. However, Knauf UK and/or Knauf Gips failed to provide an adequate warning of such danger.

842.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

843.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Knauf UK and/or Knauf Gips failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the

product could be safely used in a residential home in the ordinary manner.

844.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's and/or Knauf Gips' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf UK's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf UK and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 74
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Knauf UK and Knauf Gips)

845.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

846.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

847.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

848.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

849.   At all material times, Knauf UK engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

850.   Upon information and belief, Knauf UK manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

851.   Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling such drywall.

852.   At the time Knauf UK and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, Knauf UK and/or Knauf Gips represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

853.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

854.   Without admitting any liability or damages to Plaintiffs, to the extent

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time Knauf UK and/or Knauf Gips manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, Knauf UK and/or Knauf Gips knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

855.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Knauf UK's and/or Knauf Gips' deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

856.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically

alleged in paragraphs 17 - 27 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

857.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

858.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's and/or Knauf Gips' unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

859. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Knauf UK's and/or Knauf Gips' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Knauf Gips' and Knauf UK's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf UK and/or Knauf Gips KG in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 75 – UNJUST ENRICHMENT
### (Against Knauf UK and Knauf Gips)

860. Woodland reasserts and realleges the allegations in paragraphs 1 through 35 and 38 through 45 above as if fully set forth herein.

861. Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

862. Upon information and belief, Knauf UK manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

{22615889;2}

863.    Upon information and belief, Knauf Gips is vicariously liable for Knauf UK's conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

864.    Knauf UK and/or Knauf Gips received money from Woodland as payment for the defective drywall installed in the Home.

865.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to Knauf UK and/or Knauf Gips, which had knowledge thereof.

866.    Knauf UK and/or Knauf Gips voluntarily accepted and retained the benefit conferred upon it by Woodland.

867.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Knauf UK's and/or Knauf Gips' acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

868.    The circumstances described herein under which Knauf UK and/or Knauf Gips profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling

defective drywall make it inequitable for Knauf UK and/or Knauf Gips to retain those funds and profits.

869.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Knauf UK and/or Knauf Gips KG in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 76 – COMMON LAW INDEMNITY**
**(Against Banner Supply Co.)**

870.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

871.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

872.    Woodland is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Supply Co. Woodland justifiably relied on Banner Supply Co. to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

873.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

874.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Supply Co.

875.    A special relationship existed between Banner Supply Co. and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Supply Co. Woodland purchased drywall from Banner Supply Co. to be installed in the Homes.  Moreover, to the extent that

Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Supply Co. was defective and wholly to blame for Plaintiffs' injuries.

876.  As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Supply Co. to distribute, supply and/or sell drywall fit for its intended purpose.

877.  If Woodland is found to be liable to Plaintiffs, Banner Supply Co. is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Banner Supply Co., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 77 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Supply Co.)

878.  Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

879.  This is an action, stated in the alternative, against Banner Supply Co. for contribution pursuant to Section 768.31, Florida Statutes.

{22615889;2}

880.    In the Complaint, Plaintiffs allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

881.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Banner Supply Co. would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

882.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

883.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Banner Supply Co. for its pro rata share of the liability.

884.    Banner Supply Co. should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Banner Supply Co. for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 78– EQUITABLE SUBROGATION
### (Against Banner Supply Co.)

885.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

{22615889;2}

886.    This is an action, stated in the alternative, against Banner Supply Co. for equitable subrogation.

887.    In the Complaint, Plaintiffs allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

888.    Woodland is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Supply Co.   Woodland justifiably relied on Banner Supply Co. to distribute, sell and/or supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

889.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

890.    To the extent that Woodland is required to pay damages for any fault of Banner Supply Co. to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Banner Supply Co. under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

891.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Banner Supply Co. for equitable subrogation, as well as attorneys' fees, costs and interest, together with any

such other relief as this Court deems just and proper.

<u>COUNT 79 – NEGLIGENCE</u>
**(Against Banner Supply Co.)**

892.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

893.    In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

894.    Banner Supply Co. distributed, supplied and/or sold to Woodland the gypsum drywall that was installed in the Homes.

895.    As such, Banner Supply Co. owed Woodland a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

896.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

897.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

{22615889;2}

197

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. breached its duty of care to Woodland by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner Supply Co. sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Woodland with drywall that complied with all applicable building and industry standards.

898.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Supply Co.'s duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

899.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Woodland to substantial liability and damages. If Banner Supply Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, distributing, supplying

and/or selling defective drywall.

900.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner Supply Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other actions brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 80 – NEGLIGENT FAILURE TO WARN**
**(Against Banner Supply Co.)**

901.     Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

902.     In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

903.     Banner Supply Co. distributed, supplied and/or sold to Woodland the gypsum drywall that was installed in the Homes.

904.     As such, Banner Supply Co. owed Woodland a duty to, among other things,

{22615889;2}

exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Woodland about any dangers inherent in the drywall, and/or (iii) warn Woodland about any problems or dangers in using the drywall for residential construction.

905.  Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

906.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that unless it warned Woodland of the risk of using the drywall it distributed, sold, and/or supplied, Woodland would suffer harm. However, Banner Supply Co. failed to provide an adequate warning of such danger.

907.  Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

908.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, Banner Supply Co. breached its duty of care to Woodland by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn Woodland about any problems or dangers in using the drywall for residential construction, about which Banner Supply Co. knew or reasonably should have known.

909.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Supply Co.'s duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

910.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Banner Supply Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

911.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner Supply Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action

brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

      **WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 81 – BREACH OF THE POST-SALE DUTY TO WARN
**(Against Banner Supply Co.)**

912.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

913.    In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

914.    Banner Supply Co. distributed, sold and/or supplied to Woodland the gypsum drywall that was installed in the Homes.

915.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Supply Co. was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Supply Co.'s control and/or was sold to Woodland, Banner Supply Co. knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

916.    To the extent Plaintiffs are successful in proving that the drywall was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co., as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner Supply Co. breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

917.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

918.    Consumers, such as Woodland, to whom a warning might have been provided could have been identified by Banner Supply Co.

919.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

920.    At all material times, Banner Supply Co. stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Banner Supply Co.'s drywall product in residential construction.

921.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Supply Co.'s position would have provided a post-sale warning.

922.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland was damaged by Banner Supply Co.'s breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 82 – STRICT PRODUCTS LIABILITY
### (Against Banner Supply Co.)

923.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

924.   At all material times, Banner Supply Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

925.   At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co. to Woodland.

{22615889;2}

926.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co., Banner Supply Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

927.    Banner Supply Co. expected the gypsum drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

928.    In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

929.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Supply Co. directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

COUNT 83 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Banner Supply Co.)**

930.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

931.    At all material times, Banner Supply Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

932.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Supply Co. to Woodland.

933.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co., Banner Supply Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

934.    Banner Supply Co. expected the gypsum drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

935.    In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

936.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

construction involved a danger of which Banner Supply Co. was required to provide a warning. However, Banner Supply Co. failed to provide an adequate warning of such danger.

937.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

938.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Supply Co. failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

939.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill

and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 84 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
(Against Banner Supply Co.)

940.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

941.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

942.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

943.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

944.    At all material times, Banner Supply Co. engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

945.    Banner Supply Co. advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

946.    At the time Banner Supply Co. advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Supply Co. represented that the drywall was fit for the ordinary

purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and free from defects.

947.   In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

948.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Supply Co. sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Supply Co. knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

949.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner Supply Co.'s unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

950.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to

disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, as more specifically alleged in paragraphs 16-27, herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

951.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

952.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

953.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Supply Co.'s violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 85 – UNJUST ENRICHMENT
### (Against Banner Supply Co.)

954.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

955.    This is an action, stated in the alternative, against Banner Supply Co. for unjust enrichment.

956.    In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

957.    Banner Supply Co. distributed, sold and/or supplied to Woodland the gypsum

{22615889;2}

drywall that was installed in the Homes.

958.    Woodland paid Banner Supply Co. for supplying the drywall for the Homes.

959.    Banner Supply Co. received money from Woodland as a result of Woodland's purchases of defective drywall that was installed in the Homes.

960.    In delivering such payment, monies and/or funds to Banner Supply Co., Woodland conferred a benefit, *i.e.*, funds and profit, to Banner Supply Co., which had knowledge thereof.

961.    Banner Supply Co. voluntarily accepted and retained the benefit conferred upon it by Woodland.

962.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

963.    The circumstances described herein, under which Banner Supply Co. profited from selling and/or supplying defective drywall, make it inequitable for Banner Supply Co. to retain those funds and profits.

964.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 86 – COMMON LAW INDEMNITY**
**(Against Banner St. Lucie)**

965.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

966.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

967.    Woodland is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner St. Lucie.

968.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

969.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner St. Lucie.

970.    A special relationship existed between Banner St. Lucie and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner St. Lucie.  Woodland purchased drywall from Banner St. Lucie that was installed in the Homes.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner St. Lucie was defective and wholly to blame for Plaintiffs' injuries.

971.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner St. Lucie to distribute, supply and/or sell drywall fit for its intended purpose, *i.e*., safe and fit for use in the construction of residential homes.

{22615889;2}

972.    If Woodland is found to be liable to Plaintiffs, Banner St. Lucie is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Banner Supply Company Port St. Lucie, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 87 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner St. Lucie)

973.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

974.    This is an action, stated in the alternative, against Banner St. Lucie for contribution pursuant to Section 768.31, Florida Statutes.

975.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

976.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Banner St. Lucie would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

977.   Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

978.   To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Banner St. Lucie for its pro rata share of the liability.

979.   Banner St. Lucie should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Banner Supply Company Port St. Lucie, LLC, for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 88 – EQUITABLE SUBROGATION
### (Against Banner St. Lucie)

980.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

981.   This is an action, stated in the alternative, against Banner St. Lucie for equitable subrogation.

982.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

983.   Woodland is not and was not in the business of distributing, supplying and/or

{22615889;2}

selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner St. Lucie.

984.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

985.    To the extent that Woodland is required to pay damages for any fault of Banner St. Lucie to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Banner St. Lucie under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

986.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Banner Supply Company Port St. Lucie, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 89 – NEGLIGENCE
### (Against Banner St. Lucie)

987.    Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

988.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the

Other Property in the Homes.

989.    Banner St. Lucie distributed, supplied and/or sold to Woodland the drywall that was installed in the Homes.

990.    Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

991.    As such, Banner St. Lucie owed Woodland a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

992.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner St. Lucie knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

993.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner St. Lucie breached its duty of care to Woodland by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise

reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner St. Lucie sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Woodland with drywall that complied with all applicable building and industry standards.

994.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner St. Lucie's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

995.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Woodland to substantial liability and damages. If Banner St. Lucie had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

996.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner St. Lucie' breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment

for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 90 – NEGLIGENT FAILURE TO WARN
### (Against Banner St. Lucie)

997.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

998.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

999.   Banner St. Lucie distributed, supplied and/or sold to Woodland the drywall that was installed in the Homes.

1000.   Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

1001.   As such, Banner St. Lucie owed Woodland a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Woodland about any dangers inherent in the drywall, and/or (iii) warn Woodland about any problems or

dangers in using the drywall for residential construction.

1002. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

1003. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or should have known that unless it warned Woodland of the risk of using the drywall it distributed, sold, and/or supplied, Woodland would suffer harm. However, Banner St. Lucie failed to provide an adequate warning of such danger.

1004. Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1005. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie breached its duty of care to Woodland by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Woodland about any

dangers inherent in the drywall, and/or (iii) failing to warn Woodland about any problems or dangers in using the drywall for residential construction, about which Banner St. Lucie knew or reasonably should have known.

1006.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner St. Lucie' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

1007.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Banner St. Lucie had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

1008.  Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner St. Lucie' breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited

to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 91 – BREACH OF THE POST-SALE DUTY TO WARN
#### (Against Banner St. Lucie)

1009.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

1010.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1011.   Banner St. Lucie distributed, sold and/or supplied to Woodland the drywall that was installed in the Homes.

1012.   Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

1013.  To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner St. Lucie was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner St. Lucie' control and/or was sold to Woodland, Banner St. Lucie knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

1014.  To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, Banner St. Lucie as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner St. Lucie breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

1015.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

1016.   Consumers, such as Woodland, to whom a warning might have been provided could have been identified by Banner St. Lucie.

1017.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

1018.   At all material times, Banner St. Lucie stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Banner St. Lucie' drywall product in residential construction.

1019.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner St. Lucie' position would have provided a post-sale warning.

1020.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs

are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland was damaged by Banner St. Lucie' breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 92 – STRICT PRODUCTS LIABILITY
**(Against Banner St. Lucie)**

1021.  Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

1022.  At all material times, Banner St. Lucie was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

1023.  At all material times, the drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie to Woodland.

1024.  At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie. Banner St. Lucie intended that the drywall reach

consumers and/or ultimate users of the drywall, such as Woodland.

1025.  Banner St. Lucie expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1026.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1027.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner St. Lucie directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 93 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner St. Lucie)

1028.  Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

1029.  At all material times, Banner St. Lucie was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

1030.  At all material times, the drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner St. Lucie.

1031.  At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie, Banner St. Lucie intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

1032.  Banner St. Lucie expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

1033.  Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1034.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner St. Lucie was required to provide a warning. However, Banner St. Lucie failed to provide an adequate warning of such danger.

1035.  Woodland did not know, had no reason to believe, and was never informed

that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

1036.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner St. Lucie failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

1037.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 94 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against Banner St. Lucie)**

1038.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

1039.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

1040.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

1041.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

1042.   At all material times, Banner St. Lucie engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

1043.   Upon information and belief, Banner St. Lucie advertised, solicited, offered, distributed, supplied and/or sold the drywall that was installed in the Homes.

1044.   At the time Banner St. Lucie advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner St. Lucie represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

1045.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

1046. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner St. Lucie sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner St. Lucie knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

1047. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner St. Lucie' unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

1048.  To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall as more specifically alleged in paragraphs 18, 23 - 27 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices

within the meaning of FDUTPA.

1049.  To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

1050.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

1051.  To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is

entitled to its actual damages, plus attorneys' fees and court costs. Banner St. Lucie' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 95– UNJUST ENRICHMENT
### (Against Banner St. Lucie)

1052.   Woodland reasserts and realleges the allegations in paragraphs 1 through 35 above as if fully set forth herein.

1053.   This is an action, stated in the alternative, against Banner St. Lucie for unjust enrichment.

1054.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

1055.   Banner St. Lucie distributed, sold and/or supplied to Woodland the drywall that was installed in the Homes.

1056.   Banner St. Lucie received money from Woodland as a result of Woodland's

purchases of defective drywall installed in the Homes.

1057.   In delivering such payment, monies and/or funds to Banner St. Lucie, Woodland conferred a benefit, *i.e.*, funds and profit, to Banner St. Lucie, which had knowledge thereof.

1058.   Banner St. Lucie voluntarily accepted and retained the benefit conferred upon it by Woodland.

1059.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

1060.   The circumstances described herein under which Banner St. Lucie profited from selling and/or supplying drywall make it inequitable for Banner St. Lucie to retain those funds and profits.

1061.   Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{22615889;2}

## THIRD-PARTY COMPLAINT AGAINST LA SUPREMA TRADING, LA SUPREMA ENTERPRISE, AND TRIPLE E

### The Parties, Jurisdiction and Venue

1. This is an action for damages within the monetary jurisdiction of this Court.

2. The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Woodland.

3. Woodland was and is a Florida corporation doing business in St. Lucie County, Florida, where this cause of action arose.  At all material times, Woodland was a builder of residential homes in St. Lucie County.

4. Woodland has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Woodland in the construction of their homes was defective and caused damages to Plaintiffs.

5. Woodland denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6. Third-Party Defendant, **Triple** "**E**" **Corporation** ("**Triple E**"), is a Florida corporation having its principal place of business in Martin County, Florida. At all material times, Triple E supplied and installed allegedly defective drywall in the homes of the Plaintiffs in St. Lucie County, where this action arose.

7. Third-Party Defendant, La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**"), was a Florida corporation having its principal place of business in Maimi-Dade County, Florida. At all material times, LS Trading supplied the allegedly defective drywall that was installed in the homes of the Plaintiffs in St. Lucie County, where this action arose.

8. Third-Party Defendant,  La Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), was a Florida corporation having its principal place of business in Miami-

{22615889;2}

233

dade County, Florida. At all material times, LS Trading supplied the allegedly defective drywall that was installed in the homes of the Plaintiffs in St. Lucie County, where this action arose.

9.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

10.      Moreover, this Third-Party Claim arises from the same transactions or occurrences as Plaintiffs' action.   Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Third-Party Claim and over the instant Third-Party Defendants.

**General Allegations**

11.      As set forth in more detail in the Complaint, Plaintiffs allege that the Homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.[7]

12.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.

13.      Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "**Other Property**").

---

[7]      The named class Plaintiffs and other members of the putative class have asserted claims against Woodland in this Action, as well as other actions in the state and federal courts.  The damages sought by Woodland in this Third-party Complaint against LS Trading, LS Enterprise and Triple E include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

14.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

15.     In connection with the construction of homes in St. Lucie County, Woodland hired Triple E to furnish, supply, and/or install drywall in the Homes.

16.     At all material times, Triple E furnished, supplied and/or installed the drywall that was installed in the Homes.

17.     Triple E knew that Woodland required and expected the drywall it furnished, supplied and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

18.     Upon information and belief, Triple E procured drywall that was installed in the Homes from Banner Supply Co. ("Banner Supply Co.") and/or Banner Supply Company Port St. Lucie, LLC ("Banner St. Lucie"), a supplier of drywall.  Banner Supply Co. and Banner St. Lucie are together referred to herin as "Banner."

19.     Upon information and belief, Banner procured drywall that was installed in the Homes from an import-export specialist, LS Trading and/or LS Enterprise (together, "**La Suprema**").  At all material times, La Suprema knew or should have known that such drywall was going to be used in construction of residential homes.

20.     Plaintiffs allege that Knauf Gips KG ("Knauf Gips") and Knauf Plasterboard (Tianjin) Co. Ltd. ("Knauf Tianjin") manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce the drywall that was installed in the Homes.

21.     Upon information and belief, in mid-to-late Fall of 2006, Knauf Gips, Knauf Tianjin, and La Suprema knew that customers had raised concerns that the drywall

manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by Knauf Tianjin emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

22.     However, Woodland did not know and was not made aware of any problems with the drywall as alleged by Plaintiffs.

23.     The drywall exported, imported, distributed, furnished, supplied, and/or sold by La Suprema and Triple E (collectively, the "Third-Party Defendants") used in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

24.     For the purpose of this Third-Party Claim only, and not constituting an admission of the allegations or liability by Woodland, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

25.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Third-Party Defendants had greater knowledge, and/or stood in a better position than Woodland to know, of the drywall's applications, performance, and dangers.

26.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the

Third-Party Defendants' acts and omissions in distributing, furnishing, supplying, selling, and/or installing the defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages to Plaintiffs.

27.    Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product installed by Triple E in the Homes.

28.    Moreover, Woodland did not know and was never informed by any of the Third-Party Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.

29.    Consequently, Third-Party Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Woodland in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

30.    Additionally, Third-Party Defendants' wrongful conduct also caused damages to Woodland including but not limited to Woodland's loss of reputation, goodwill and lost profits.

31.    Woodland has hired the undersigned counsel and has agreed to pay a reasonable fee for its services.

32.    All conditions precedent to the filing of this Third-Party Complaint have been performed, excused, or otherwise waived.

<u>**COUNT 1 – COMMON LAW INDEMNITY**</u>
**(Against Triple E)**

33.     Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

34.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

35.     Woodland is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, supplied, furnished and/or sold by Triple E.

36.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

37.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Triple E, and not Woodland.

38.     A special relationship existed between Triple E and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Triple E.  Woodland hired Triple E to install drywall in the Homes. Moreover, to the extent that Plaintiffs are successful in proving their claims that the drywall was defective, said drywall was installed, supplied, furnished and/or sold by Triple E, and thus, Triple E is wholly to blame for Plaintiffs' injuries.

39.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to install and/or furnish drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

40.     If Woodland is found to be liable to Plaintiffs, Triple E is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought

by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

WHEREFORE, Woodland demands judgment for indemnity in its favor against Third-Party Defendant, Triple "E" Corporation, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 2 -  CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Triple E)

41.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

42.    This is an action, stated in the alternative, against Triple E for contribution pursuant to Fla Stat. § 768.31.

43.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

44.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Triple E would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

45.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

46.     To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Triple E for its pro rata share of the liability.

47.     Triple E should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Third-Party Defendant, Triple "E" Corporation, for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
### (Against Triple E)

48.     Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

49.     This is an action, stated in the alternative, against Triple E for equitable subrogation.

50.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

51.     Woodland is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, furnished, supplied and/or sold by Triple E.

52.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs, resulting from a judgment obtained by Plaintiffs.

53.     To the extent that Woodland is required to pay damages for any fault of Triple E to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Triple E under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

54.     Such subrogation will not work any injustice to the rights of others.

WHEREFORE, Woodland demands judgment against in its favor and against Third-Party Defendant, Triple "E" Corporation, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLORIDA STATUTE, SECTION 672.314
#### (Against Triple E)

55.     Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

56.     This is an action against Triple E for breach of the implied warranty of merchantability under the common law and/or Florida Statutes § 672.314.

{22615889;2}

57.     Woodland hired Triple E to furnish and/or install drywall in the Homes. Triple E knew that Woodland required and expected the drywall it furnished, supplied, sold and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Woodland justifiably relied on Triple E's skill and judgment to provide, supply and install such drywall in the Homes.

58.     Triple E, as the installer and/or seller of the drywall, warranted to Woodland that the drywall was reasonably fit for its ordinary use. Pursuant to the relationship between the parties, Triple E is deemed to have provided Woodland with an implied warranty of merchantability as to the drywall materials installed, furnished, supplied and/or sold by Triple E.

59.     The drywall furnished by Triple E for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

60.     Pursuant to Florida Statutes, Section 672.314 and/or common law, Triple E warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

61.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.  Woodland denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Woodland is found liable to Plaintiffs for the defective drywall in the Homes, Triple E breached the implied warranty of merchantability by installing, furnishing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

62.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to furnish, install, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

63.     Woodland timely notified Triple E of the defective drywall, but Triple E has failed to repair or replace the defective drywall.

**WHEREFORE,** Woodland demands judgment for damages against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Triple E)

64.     Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

65.     This is an action against Triple E for breach of the implied warranty of fitness.

66.     Woodland hired Triple E to furnish and/or install drywall in the Homes. Triple E knew that Woodland required and expected the drywall Triple E furnished, supplied, sold and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

67.     Woodland justifiably relied on Triple E's skill and judgment to furnish, supply, sell and/or install drywall fit for the particular purpose of constructing residential homes.

68.     Pursuant to the relationship between the parties, Triple E is deemed to have provided Woodland with an implied warranty of fitness as to the work performed and drywall materials furnished, supplied, sold and/or installed by Triple E.

69.     The drywall furnished, supplied and/or sold by Triple E for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

70.     Triple E impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

71.     Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Woodland denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Woodland is found liable to Plaintiffs, Triple E breached the implied warranty of fitness by furnishing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

72.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

73.     Woodland timely notified Triple E of the defective drywall, but Triple E has failed to repair or replace the defective drywall it furnished, supplied, sold and/or and installed in the Homes.

**WHEREFORE,** Woodland demands judgment for damages against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 6 – STRICT PRODUCTS LIABILITY
### (AgainstTriple E)

74.     Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

75.     Woodland hired Triple E to furnish and/or install drywall in the Homes.  Triple E furnished, supplied, sold and/or installed the drywall in the Homes

76.     At all material times, Triple E was in the business of furnishing, supplying, installing, and/or selling drywall of the type contained in the Homes.

77.     At all material times, the drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E in the regular course of business to Woodland.

78.     At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E, Triple E intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

79.     Triple E expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

80.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

81.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Triple E directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>**COUNT 7 – STRICT PRODUCTS LIABILITY FAILURE TO WARN**</u>
**(Against Triple E)**

82.     Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

83.     Woodland hired Triple E to furnish and/or install drywall in the Homes.  Triple E furnished, supplied, sold and/or installed the drywall in the Homes.

84.     At all material times, Triple E was in the business of furnishing, supplying, installing, and/or selling drywall of the type contained in the Homes.

85.     At all material times, the drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E in the regular course of business to Woodland.

86.     At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E, Triple E intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

87.     Triple E expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

88.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

89.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

construction involved a danger of which Triple E was required to provide a warning. However, Triple E failed to provide an adequate warning of such danger.

90.     Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

91.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Triple E failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

92.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 8 – BREACH OF CONTRACT</u>
**(Against Triple E)**

93.      Woodland reasserts and realleges the allegations in paragraphs 1 through 32, above as if fully set forth herein.

94.      Upon information and belief, in connection with the construction of residential homes in St. Lucie County, Woodland entered into an agreement with Triple E wherein Triple E agreed to (i) furnish labor, drywall materials, supervision and other things necessary to efficiently perform and timely complete drywall work in the Homes, (ii) perform its duties in a workmanlike manner; and, (iii) correct and/or reimburse Woodland for defective work not in compliance with the plans and specifications.

95.      In accordance with their agreement, Triple E knew that Woodland required and expected the drywall Triple E furnished, supplied and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

96.      Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

97.      Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, Triple E breached the material obligations of the parties' agreement by, among other things, furnishing and/or installing deficient and/or defective drywall.

98.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's acts and omissions in furnishing and/or installing defective drywall in the Homes directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims.

WHEREFORE, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 – UNJUST ENRICHMENT
### (Against Triple E)

99.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32, above as if fully set forth herein.

100.    This is an action, stated in the alternative, against Triple E for unjust enrichment.

101.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

102.    Triple E furnished, supplied, sold and/or installed the drywall that was installed in the Homes.

103.    Woodland paid Triple E for furnishing supplying, selling, and/or installing the drywall for the Homes.

{22615889;2}

104.    Triple E received money from Woodland as a result of Woodland's purchases of defective drywall installed in the Homes.

105.    In delivering such payment, monies and/or funds to Triple E, Woodland conferred a benefit, *i.e.*, funds and profit, to Triple E, which had knowledge thereof.

106.    Triple E voluntarily accepted and retained the benefit conferred upon it by Woodland.

107.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

108.    The circumstances described herein under which Triple E profited from selling and/or supplying drywall make it inequitable for Triple E to retain those funds and profits.

109.    Woodland has no adequate remedy at law.

WHEREFORE, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 10 – COMMON LAW INDEMNITY
### (Against La Suprema Trading Inc.)

110.   Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

111.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

112.   Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

113.   Woodland is entirely without fault for the injuries alleged by Plaintiffs.

114.   Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Trading.

115.   A special relationship existed between LS Trading and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Trading. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Trading was defective and wholly to blame for Plaintiffs' injuries.

116.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Trading to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

117.   If Woodland is found to be liable to Plaintiffs, LS Trading is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this

{22615889;2}

action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Third-Party Defendant, La Suprema Trading Inc., for damages plus attorneys' fees, interest and costs  as damages, and for such other relief as the Court deems just and proper.

### COUNT 11 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Trading, Inc.)

118.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

119.    This is an action, stated in the alternative, against LS Trading for contribution pursuant to Section 768.31, Florida Statutes.

120.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

121.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, LS Trading would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

122.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

123.   To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against LS Trading for its pro rata share of the liability.

124.   LS Trading should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Third-Party Defendant, La Suprema Trading Inc., for its pro rata share of the liability, if any, found against Woodland in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 12 – EQUITABLE SUBROGATION
### (Against La Suprema Trading Inc.)

125.   Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

126.   This is an action, stated in the alternative, against LS Trading for equitable subrogation.

127.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

{22615889;2}

128.     Woodland is not and was not in the business of manufacturing, distributing, or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

129.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

130.     To the extent that Woodland is required to pay damages for any fault of LS Trading to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from LS Trading under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

131.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Third-Party Defendant, La Suprema Trading Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 13 – NEGLIGENCE
### (Against La Suprema Trading Inc.)

132.     Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

133.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{22615889;2}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

134. Upon information and belief, LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

135. Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

136. As such, LS Trading owed Woodland a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers; and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

137. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

138. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Woodland by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all

applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

139.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

140.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Woodland to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

141.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for

the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 14 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Trading Inc.)

142.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

143.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

144.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

145.    Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

146.    As such, LS Trading owed Woodland a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn

{22615889;2}

foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

147.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

148.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that unless it warned foreseeable consumers such as Woodland of the risk of using the drywall it distributed, sold, and/or supplied, Woodland would suffer harm. However, LS Trading failed to provide an adequate warning of such danger.

149.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in  a residential home in the ordinary manner.

150.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Woodland by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably

should have known about; (ii) failing to warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction, about which LS Trading knew or reasonably should have known.

151.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

152.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

153.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS

{22615889;2}

Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 15– BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Trading Inc.)

154.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

155.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

156.    Upon information and belief, LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

157.    Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

158.    To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Trading was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Trading's control and/or was sold to Woodland, LS Trading knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

{22615889;2}

159.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Trading breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

160.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

161.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by LS Trading.

162.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

163.   At all material times, LS Trading stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of LS Trading's drywall product in residential construction.

164.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Trading's position would have provided a post-sale warning.

165.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Trading's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Trading Inc.)

166.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

167.    At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

168.    Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading.

169.   At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

170.   LS Trading expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

171.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

172.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Trading directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 17 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Trading Inc.)

173.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

174.    At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

175.    At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Trading.

176.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

177.    LS Trading expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

178.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

179.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

{22615889;2}

construction involved a danger of which LS Trading was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

180.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

181.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Trading failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

182.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 18**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against La Suprema Trading Inc.)**

183.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

184.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

185.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

186.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

187.    At all material times, LS Trading engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

188.    Upon information and belief, LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall that was installed in the Homes.

189.    At the time LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Trading represented that the drywall was fit for the ordinary

purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

190.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

191.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Trading imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Trading knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

192.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Trading's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

193.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in

importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, as more specifically alleged in paragraphs 19 - 22 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

194.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the   Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

195.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint. LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality

{22615889;2}

of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

196.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Trading's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS Trading's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 19 – UNJUST ENRICHMENT
### (Against La Suprema Trading, Inc.)

197.   Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

198.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

199.    LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

200.    LS Trading received money from Woodland as payment for the alleged defective drywall installed in the Homes.

201.    In delivering such payment, monies and/or funds to pay for the drywall that was installed in the Homes, Woodland conferred a benefit, *i.e.*, funds and profit, to LS Trading, which had knowledge thereof.

202.    LS Trading voluntarily accepted and retained the benefit conferred upon it by Woodland.

203.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

204.    The circumstances described herein under which LS Trading profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Trading to retain those funds and profits.

205.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**C**OUNT **20 – C**OMMON **L**AW **I**NDEMNITY
**(Against La Suprema Enterprise Inc.)**

206.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

207.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

208.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

209.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

210.    Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Enterprise.

211.    A special relationship existed between LS Enterprise and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Enterprise. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Enterprise was defective and wholly to blame for Plaintiffs' injuries.

212.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS

Enterprise to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

213.   If Woodland is found to be liable to Plaintiffs, LS Enterprise is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Third-Party Defendant, La Suprema Enterprise Inc., for damages plus attorneys' fees,  interest and costs  and for such other relief as the Court deems just and proper.

### COUNT 21 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Enterprise, Inc.)

214.   Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

215.   This is an action, stated in the alternative, against LS Enterprise for contribution pursuant to Section 768.31, Florida Statutes.

216.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

217.   Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, LS Enterprise would also share in the liability to extent its tortious acts or

{22615889;2}

omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

218.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

219.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against LS Enterprise for its pro rata share of the liability.

220.    LS Enterprise should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against La Suprema Enterprise Inc. for its pro rata share of the liability, if any, found against Woodland in this action, along with interest and costs, together with such other and further relief as this Court deems just and proper.

### COUNT 22 – EQUITABLE SUBROGATION
### (Against La Suprema Enterprise Inc.)

221.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

222.    This is an action, stated in the alternative, against LS Enterprise for equitable subrogation.

223.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

224.    Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

225.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

226.    To the extent that Woodland is required to pay damages for any fault of LS Enterprise to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from LS Enterprise under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

227.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Third-Party Defendant, La Suprema Enterprise Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 23 – NEGLIGENCE
### (Against La Suprema Enterprise Inc.)

228.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

{22615889;2}

229.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

230.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

231.    Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

232.    As such, LS Enterprise owed Woodland a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

233.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

234.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Woodland by among other things, (i)

{22615889;2}

failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Woodland with drywall that complied with all applicable building and industry standards.

235.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

236.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Woodland to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

237.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or

exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 24 – NEGLIGENT FAILURE TO WARN
**(Against La Suprema Enterprise Inc.)**

238.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

239.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

240.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

241.    Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

242.    As such, LS Enterprise owed Woodland a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold

{22615889;2}

and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

243. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

244. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that unless it warned foreseeable consumers such as Woodland of the risk of using the drywall it distributed, sold, and/or supplied, Woodland would suffer harm. However, LS Enterprise failed to provide an adequate warning of such danger.

245. Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

246. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Woodland by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction, about which LS Enterprise knew or reasonably should have known.

247.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

248.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

249.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action

brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 25 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Enterprise Inc.)

250.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

251.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

252.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

253.    Woodland was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

254.    To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Enterprise was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Enterprise's control and/or was sold to Woodland,

LS Enterprise knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

255.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   LS Enterprise breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

256.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

257.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by LS Enterprise.

258.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

259.   At all material times, LS Enterprise stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of LS Enterprise's drywall product in residential construction.

260.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Enterprise's position would have provided a post-sale warning.

261.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by LS Enterprise's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 26 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Enterprise)

262.     Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

263.     At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

264.     Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise.

{22615889;2}

265.   At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

266.   LS Enterprise expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

267.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

268.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Enterprise directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 27 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Enterprise)

269.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

270.    At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

271.    At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Enterprise.

272.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

273.    LS Enterprise expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

274.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

275.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

{22615889;2}

construction involved a danger of which LS Enterprise was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

276.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

277.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Enterprise failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

278.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 28**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against La Suprema Enterprise Inc.)**

279.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

280.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

281.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

282.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

283.    At all material times, LS Enterprise engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

284.    Upon information and belief, LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall that was installed in the Homes.

285.    At the time LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Enterprise represented that the drywall was fit for the

ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

286.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

287.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Enterprise imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Enterprise knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

288.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Enterprise's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

289.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Enterprise's unfair and deceptive conduct in

importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, as more specifically alleged in paragraphs 19 - 22 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

290.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

291.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint. LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics,

{22615889;2}

standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

292.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Enterprise's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Enterprise Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against La Suprema Enterprise Inc., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

## COUNT 29 – UNJUST ENRICHMENT
### (Against La Suprema Enterprise Inc.)

293.    Woodland reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

294.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

295.    LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

296.    LS Enterprise received money from Woodland as payment for drywall installed in the Homes.

297.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Woodland conferred a benefit, *i.e.*, funds and profit, to LS Enterprise, which had knowledge thereof.

298.    LS Enterprise voluntarily accepted and retained the benefit conferred upon it by Woodland.

299.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

{22615889;2}

300.    The circumstances described herein under which LS Enterprise profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Enterprise to retain those funds and profits.

301.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against La Suprema Enterprise Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross and Third-Party Plaintiff, Woodland Enterprises, Inc.

and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 28th day of November, 2011.

### AKERMAN SENTERFITT

BY: /s/      Stacy Bercun Bohm
   Stacy Bercun Bohm, Esq. (Fla. Bar No. 022462)
   Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
   Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
   Las Olas Centre II, Suite 1600
   350 East Las Olas Boulevard
   Fort Lauderdale, Florida 33301-2229
   Telephone: (954) 463-2700
    Telecopier: (954) 463-2224
   Email:  stacy.bohm@akerman.com
     valerie.greenberg@akerman.com
     leslie.tomczak@akerman.com

   *Attorneys for Woodland Enterprises, Inc.*

*Co-Counsel for Woodland Enterprises, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
   Susie.morgan@phelps.com
   Skylar.rosenbloom@phelps.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA  70163 (kmiller@frilot.com), by U.S. Mail and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 28th day of November, 2011.


                                        /s/      Stacy Bercun Bohm

{22615889;2}