# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

ROBERT W. BLOCK, III, individually,
and on behalf of all others similarly situated,
et. al,

        Plaintiffs,

v.

GEBRUEDER KNAUF
VERWALTUNGSGESELLSCHAFT, KG;
KNAUF INTERNATIONAL GmbH; KNAUF
INSULATION GmbH; KNAUF UK GMBH;
KNAUF AMF GMBH & CO. KG; KNAUF DO
BRASIL LTD.; PT KNAUF GYPSUM
INDONESIA; KNAUF GIPS KG; KNAUF
PLASTERBOARD (TIANJIN) CO., LTD.;
KNAUF PLASTERBOARD (WUHU), CO.,
LTD.; GUANGDONG KNAUF NEW
BUILDING MATERIAL PRODUCTS CO.,
LTD., et. al,

        Defendants.

CASE NO.: 11-1363
SECT. L MAG. 2

---

## MEMORANDUM OF LAW IN SUPPORT OF ROBERT/CHARLES BUILDERS, INC.'S MOTION TO DISMISS WITH PREJUDICE THE CLAIMS BROUGHT AGAINST IT IN THE BLOCK OMNIBUS  CLASS ACTION COMPLAINT (OMNI X)

Defendant Robert/Charles Builders, Inc. ("RCB"), hereby files its Memorandum of Law in Support of Robert/Charles Builders, Inc.'s Motion to Dismiss with Prejudice the Claims Brought Against it in the Block Omnibus Class Action Complaint (Omni X) (the "Motion").

## I. INTRODUCTION

Plaintiffs John and Rachel Bernstein ("Plaintiffs") have named RCB, a Florida contractor that helped construct their home, as a defendant in the Block Omnibus Class Action Complaint (Omni X) (the "Omnibus Complaint") even though there is absolutely no evidence that RCB did anything wrong.  This is a products liability case.  A contractor like RCB, who had nothing to do

with the manufacture, marketing or distribution of the product in question, simply does not belong in the lawsuit.

Nonetheless, Plaintiffs have asserted a laundry list of generic common law and statutory claims against RCB in what can best be characterized as an unfocused shotgun pleading. Every one of Plaintiffs' claims against RCB is fatally defective. All of them should be dismissed with prejudice pursuant to Rule 12(b)(6).

## I. BACKGROUND

### A.     Plaintiffs' Allegations Against RCB.

Plaintiffs allege the following ten claims[1] against RCB: Negligence (Count I, ¶¶ 50-57); Negligence Per Se (Count II, ¶¶ 58-64); Strict Liability (Count III, ¶¶ 65-82); Breach of Express and/or Implied Warranties (Count IV, ¶¶ 83-90); Breach of Implied Warranty of Habitability (Count VI, ¶¶ 103-109); Breach of Contract (Count VII, ¶¶ 110-113); Private Nuisance (Count XI, ¶¶ 145-151); Unjust Enrichment (Count XII, ¶¶ 152-155); Violation of Florida's Deceptive and Unfair Trade Practices Act (Count XIII, ¶¶ 156-160); and Equitable and Injunctive Relief

---

[1]     There are fourteen Counts in the Omnibus Complaint, but only ten of them arguably apply to RCB. The four remaining Counts do not. Specifically, Count V (for breach of warranty under Florida's condominium code) does not apply to RCB because Plaintiffs purchased a residential home, not condominium. Cmplt. ¶¶ 91-102. Count VIII applies to "Louisiana Builders Only," and no one disputes that RCB resides in Florida. *Id.* ¶¶ 114-120; Exh. B at ¶ 18 (page 2 of 29). Count IX ("Redhibition – by Louisiana Plaintiffs"), which requires a showing that the allegedly defective product—here, drywall—failed for its intended purpose, is barred by this Court's prior determination that the drywall is "serving its intended structural purpose." *See* Order & Reasons at 23; *Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). Moreover this claim does not apply because the claims are Florida-based. Finally, Count X (Louisiana Products Liability Act) applies solely to "Manufacturing" or "Distributor" Defendants, *see id.* at ¶¶ 131-144, whereas the Omnibus Complaint identifies RCB as a "Builder" Defendant, *see id.* Exh. B at ¶ 221 (page 23 of 29).

and Medical Monitoring (Count XIV, ¶¶ 161-173).  Each of these claims is governed by and arises under the law of Florida.[2]

Several Florida courts have already dismissed several of these claims, founded on nearly identical allegations of Florida homeowners, for failure to state a claim under Florida law.  *See Bennett v. Centerline Homes, Inc.*, No. 2009 CA 014458 (Fla. 15th Jud. Cir., Nov. 5, 2010) (the "Fla. 15th Cir. Omnibus Order") (dismissing private nuisance claims brought by homeowners for allegedly defective Chinese drywall); *accord In re: Chinese Drywall Litig.*, No. 10- 28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) ("Fla. 17th Cir. Order) (dismissing a private nuisance claim based on defective drywall: "This Court finds Judge Kelley's ruling [in the *Bennett* case] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case."); *see also Bennett v. Centerline Homes, Inc.*, No. 2009 CA 014458 (Fla. 15th Jud. Cir., March 18, 2011) (the "Fla. 15th Cir. Second Omnibus Order") (dismissing, on an omnibus basis, all plaintiffs' negligence claims "based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall" where there was no "actual or implied notice of the defect"); *Mackoff v. Upjohn-Delray L.P., et al.*, No. 502009 CA 039290 (Fla. 15th Jud. Cir. Oct. 4, 2011) (the "Fla. 15th Cir. Third Omnibus Order") (applying the reasoning in Fla. 15th Cir. Second Omnibus Order to dismiss  negligence claims against installers); *Bissoon v. Centerline Homes*

---

[2]     Because Plaintiffs are asserting their claims against RCB directly in the Eastern District of Louisiana – rather than filing in a Florida court and having the matter transferred to this forum – this Court should apply the choice-of-law rules of Louisiana.  *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 n.6 (5th Cir. 1981).  Under Louisiana's choice-of-law rules, Florida has, by far, the most significant relationship with the dispute.  Plaintiffs' alleged drywall injuries occurred in Florida, the subject property is located in Florida, and RCB resides in Florida.  *See* Cmplt. ¶ 679; *Gulf States Utilities Co. v. NEI Peebles Elec. Prods., Inc.*, 819 F. Supp. 538, 552-53 (M.D. La. 1993) (discussing Louisiana choice of law factors and statutes).  Florida substantive law therefore governs each of Plaintiffs' claims against RCB.

*Construction, Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) ("Fla. 19th Cir. Order") (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions"); *Pisaris-Henderson v. Douglas B. Francis et al.*, Case No. 09-CA-001280 (Fla. 20th Jud. Cir., Sept. 9, 2009) ("Fla. 20th Cir. Order") (granting subcontractor's motion to dismiss based on Economic Loss Rule).  These orders are attached as Composite Exhibit 1.

## I. ARGUMENT

### A.    The Governing Legal Standard.

A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the Complaint, even if proved true, would not entitle the plaintiff to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12.  Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions." *Id.* at 555. (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In the same vein, a complaint should be dismissed if it constitutes nothing more than a "shotgun pleading," in which each count incorporates all preceding paragraphs.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

### B.    Plaintiffs' Causes of Action Against RCB Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.

Each of the causes of action asserted against RCB should be dismissed pursuant to Rule 12(b)(6) because none of them states a claim for which relief can be granted.

1.      **Plaintiffs' tort claims (Counts I, II, III, XI, XII, and XIV) are barred in whole or in part by the economic loss rule.**

Florida's Economic Loss Rule ("ELR") precludes Plaintiffs from doing exactly what they are attempting to do here: sue in tort for purely economic losses. Florida courts have defined economic loss in this context as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." MDL No. 2047 Order & Reasons (Jan. 13, 2010) at 22.[3]

In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking only such economic damages, the ELR barred their tort claims against the supplier. *Id.* at 1246-48.

*Casa Clara* has since been applied by a Florida state court to a drywall dispute very much like this one. The court in *Pisaris-Henderson*, granted a subcontractor's motion to dismiss the plaintiff-homeowners' negligence claim pursuant to the ELR. *See* Fla. 20th Cir. Order. Although the plaintiffs had allegedly purchased a home containing defective Chinese-manufactured drywall, the court held that they could not recover economic losses resulting from that drywall – that is, they could not recover for damages to the home itself, "including, but not limited to, portions of the HVAC system and copper wiring throughout the subject residence." *See* Fla. 20th

---

[3]      The Court's January 13, 2010 "MDL No. 2047 Order & Reasons" (*In re Chinese Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 794-95 (E.D. La. 2010)) applies by its terms to all drywall MDL cases pending before the Court, including this one.

Cir. Order ¶ 1.  Rather, the court in *Pisaris-Henderson* held the plaintiffs were limited to pursuing damages to "other property" that had not been integrated into their home.  *Id.*

The same reasoning applies here.  Plaintiffs cannot recover purely economic losses in tort based on their allegedly defective drywall.  As a matter of law, the ELR limits them to recovering non-economic losses (e.g., for personal injury) and damages to property other than the drywall (or the house) itself.[4]  *See Casa Clara*, 620 So. 2d at 1247-48.  Plaintiffs must therefore replead their tort claims to seek only non-economic losses.  *Cf.* Cmplt. ¶ 57 (alleging that plaintiffs incurred general "damages" on negligence count).

## 2.  Plaintiffs' negligence allegations (Count I) are false and improperly pled.

Plaintiffs' negligence claims (Count I) illustrate why RCB does not belong in this lawsuit.  The Omnibus Complaint alleges that RCB somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling" the drywall in question.  Cmplt. ¶ 51.  The Complaint further alleges that RCB had a duty to provide Plaintiffs with certain warnings about the drywall.  *Id.* ¶ 54.  However, at least one Florida court has already concluded that there is no "general duty to inspect or test the Chinese manufactured drywall for a latent defect, or to warn homeowners of the existence of a latent defect in the drywall" and that the drywall is not "inherently dangerous."  *See* Fla. 15th Cir. Second Omnibus Order (dismissing, on an omnibus basis, all plaintiffs' negligence claims "based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall" where

---

[4]     Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses.  The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  Order & Reasons at 19-20.

there was no "actual or implied notice of the defect").[5]  This ruling is soundly based on Florida law as explained in detail below.

As an initial matter, Plaintiffs' claim of negligence is false because RCB did not "design," "manufacture," or "import" any drywall.  Yet even assuming the truth of these specious allegations, they fail to state a claim.  To state a negligence claim, a plaintiff must plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached.  *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (Florida law) ("Failure to establish any one of these elements is fatal to the plaintiff's case.").  Plaintiffs can allege neither prerequisite.

RCB owed no duty of care with respect to Plaintiffs' drywall.  Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a contractor like RCB – have a duty to inspect or warn <u>only</u> when the product is considered "inherently dangerous."  *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.").  Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[6]  *See* Fla. 15th Cir. Second Omnibus Order at

---

[5]     In the Fla. 15th Cir. Second Omnibus Order, the court was addressing a builder, not installer, motion to dismiss.  However, in *Mackoff,* the court dismissed a negligence claim against an installer based on the reasoning in the Fla. 15th Cir. Second Omnibus Order.  *See* Fla. 15th Cir. Third Omnibus Order.

[6]     "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category.  They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself."  *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted).  By way of illustration, Florida

{22697349;1}

pg. 2 ("Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous.").

In the same vein, RCB cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects. *See id.* (dismissing claims for negligence unless "plaintiffs can, in good faith, plead notice against an individual defendant"); *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991). The alleged defects in the drywall are plainly latent (*e.g.,* Cmplt. ¶¶ 25-26, 79), and the law is clear that, absent an "inherently dangerous" product or actual or implied knowledge – neither of which Plaintiffs can allege in "good faith" – Count I fails as a matter of law. The boilerplate, and wholly unsupported assertion that RCB "knew or should have known" that the drywall would "harm" Plaintiffs (*id.* ¶ 52) is a mere legal conclusion that cannot salvage a negligence claim, particularly one that flies in the face of basic principles of Florida law. *See* Fla. 15th Cir. Second Omnibus Order (requiring more specific allegations).

### 3.   Plaintiffs have not stated a claim for negligence per se (Count II).

Aside from being barred by the economic loss rule, Plaintiffs' negligence per se claim (Count II) is also poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular</u>

---

courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*., 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are <u>not</u> "inherently dangerous." Drywall would certainly not be an "inherently dangerous" product under Florida law.

type of injury." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se. First, they have not identified a statute that RCB allegedly violated, much less explained how that violation occurred. Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes" and "furnished the drywall in violation of ASTMC C 1396/C 1396M-069." Cmplt. ¶ 61. Plaintiffs, however, do not state how RCB or any of the other unspecified "Defendants" have violated this code. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that RCB allegedly violated are "designed to protect the general public rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiffs' negligence per se claim appears to be nothing more than a repackaged negligence claim. It should be summarily dismissed for that reason as well.

### 4. Plaintiffs cannot sue RCB in strict liability (Count III).

Plaintiffs' strict liability claim (Count III) is premised on the patently false assertion that RCB was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 66. Plaintiffs' Strict Liability claim is foreclosed by the economic loss rule and by at least two additional established principles of Florida law.

First and foremost, RCB cannot be sued in strict liability because it did not manufacturer

or distribute the allegedly defective drywall.  The Complaint itself identifies RCB as a "Builder," not a manufacturer or distributor.  Cmplt. Exh. B at ¶ 221 (page 23 of 29).[7]  Strict products liability is reserved for product manufactures and distributors; it does not apply to a contractor like RCB.  *See Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claims "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, even if Plaintiffs could sue a contractor in strict liability (and they cannot), the allegedly defective drywall is not a "product" for purposes of this particular tort.  *See* Fla. 19th Cir. Order at pg. 1-2 ("[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions").  Rather, under Florida strict liability law the drywall is considered a "structural improvement," as it was an integral part of Plaintiffs' home.  *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007).  "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate."  *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

---

7    Reference to RCB as a builder is incorrect.  RCB was the drywall subcontractor, not the builder.  Regardless, the point remains that RCB was not a manufacturer or distributor.

5.      **Plaintiffs cannot maintain a warranty claim (Counts IV & VI)**.

In Counts IV (Breach of Express and/or Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.[8] Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how RCB might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

First, and most fundamentally, Plaintiffs lack of privity with RCB dooms any warranty claim they might assert. It is axiomatic that a plaintiff suing in warranty "must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc.*, No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, *2 (M.D. Fla. Feb. 17, 2010) (same). Plaintiffs, however, never contracted with RCB. *T.W.M. v. Am. Med. Systems, Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (explaining concept of privity). Without a showing of contractual privity with RCB, Plaintiffs express and implied warranty claims cannot survive. *See, e.g.*, *Borchardt v. Mako Marine Intern., Inc.*, No. 08-61199-CIV, 2009 WL 3856678, *4 (S.D. Fla. Nov. 17 2009) (dismissing warranty claims where there was "no allegation … to establish that there [was] privity of contract").

Second, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by RCB. That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to

---

[8]      The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but redhibition requires a showing that the allegedly defective product—here, drywall—failed for its intended purpose. *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This theory is conclusively barred by this Court's prior determination that the drywall is "serving its intended structural purpose." MDL No. 2047 Order & Reasons at 23. Moreover, Plaintiffs' claims are Florida-based.

an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

RCB is not bound by any implied warranties because it is not considered a merchant under Florida warranty law. RCB contracts with its builder and developer clients to provide a service: drywall installation. Because the inclusion of drywall in Plaintiffs' homes was incidental to the contracting services that RCB rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances. *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts . . . typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, the claims for implied warranty of fitness for a particular purpose (Cmplt. ¶ 88) cannot survive because Plaintiffs cannot allege that the drywall in their home was unfit for a particular or unusual purpose different from that for which drywall is ordinarily used. The Court has already determined that "[t]he Chinese drywall stands just as any other functioning drywall, serving its intended structural purpose." MDL No. 2047 Order & Reasons at 23 (emphasis added); *id*. at 18 ("[T]he Chinese drywall in the instant matter is operating as intended[.]"). This

adjudicated fact is, by itself, fatal to the claim for breach of the implied warranty of fitness for a particular purpose.[9]

### 6.   Plaintiffs' breach of contract claims (Count VII) must be dismissed.

As noted *supra*, RCB was incorrectly identified as a builder in the Omnibus Complaint. RCB is a drywall subcontractor, not a builder.  Indeed, because RCB was not the builder of the home, RCB did not enter into building agreement or any other contract with the Plaintiffs.  As such, the Plaintiffs cannot maintain a claim for breach of contract (Count VII) for the simple reason that they never contracted with RCB.  "It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach."  *Cibran Enters., Inc. v. BP Prods. N.A., Inc.*, 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks and citation omitted); *Banco Ficohsa v. Aseguradora Hondurena, S.A.*, 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle).

### 7.   Plaintiffs cannot state a claim for private nuisance (Count XI).

Plaintiffs' private nuisance claim (Count XI) would fail even if they were not barred by the economic loss rule.  *See* Fla. 15th Cir. Omnibus Order at pg. 7 (dismissing all plaintiffs' private nuisance claims because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance"); *accord* Fla. 17th Cir. Order (dismissing a private nuisance claim based on defective drywall: "This Court finds Judge Kelley's ruling [in the *Bennett* case] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case.").  An action for private nuisance requires the claimant to establish an

---

[9]      *See Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976) (upholding dismissal of particular purpose warranty claim where plaintiff did not "allege a particular or unusual use different from the purpose for which the item sold was ordinarily used"); *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (dismissing implied warranty claim for same reason).

injury to his or her own property <u>in connection with the use of the real property of someone else</u>. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another."). However, Plaintiffs do not allege that their purported injuries resulted from real property owned by RCB. To the contrary, the nuisance claims are predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame. Cmplt. ¶ 146. That allegation simply does not state a claim for private nuisance. *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**8.    Plaintiffs cannot bring claims for unjust enrichment (Count XII).**

Plaintiffs cannot maintain an unjust enrichment claim. The elements of unjust enrichment are that "(1) <u>the plaintiff has conferred a benefit on the defendant</u>; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it." *Commerce Partnership 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Plaintiffs unjust enrichment claim stumbles on the first and fourth of these elements. The first element is not satisfied because the Plaintiffs cannot show that they "conferred a benefit" on RCB. In fact, the Plaintiffs never contracted with RCB, and never paid RCB a single dime to install drywall in their house. The Plaintiffs, in other words, did not "enrich" RCB in any sense.

As to the fourth element of unjust enrichment, there is nothing inequitable or unjust about permitting RCB to retain whatever benefit it received for its work on the home. After all, it cannot be disputed that RCB paid a third party (*i.e.*, a subcontractor, supplier or distributor) for the drywall in question. As the Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit</u>." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by*, *Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

Thus, Plaintiffs' claims for unjust enrichment are barred.

### 9. The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"). Cmplt. ¶ 157. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, <u>claims arising under the FDUTPA must be pled with particularity</u>." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D.

Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges <u>no specific facts</u> in support of Plaintiffs' FDUTPA claims.  *See* Cmplt. ¶¶ 156-160.  It does not identify a single instance in which RCB – by its words or conduct – deceived Plaintiffs or treated them unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Florida Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[10]

Plaintiffs' failure, however, is not merely one of pleading.  Their FDUTPA claims must be dismissed with prejudice because "actual damages" are simply not available to them.  *See*

---

[10]   Plaintiffs' FDUTPA claims would be inadequately pled even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

*Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because RCB provided services – namely, the contracting work on the houses – Plaintiffs can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that RCB actually provided and the services that RCB was required to provide. *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties") (citations omitted).

As a matter of law, Plaintiffs cannot make this showing. There is zero evidence – and Plaintiffs do not appear to suggest – that the manner in which RCB installed the drywall in the home was in any way responsible for the allegedly defective drywall. The quality of the installation is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." MDL No. 2047 Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claims with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of those claims. Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995). Count XIII must be dismissed for this reason as well.

10. **Plaintiffs' claims for equitable relief and medical monitoring (Count XIV) cannot go forward against RCB.**

Plaintiffs' final claims are for "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV). This hybrid, catchall-type claim seeks, among other things, an order that RCB "buy back or rescind" its contracts and "create, fund, and support a medical monitoring program." Cmplt. ¶ 164. These claims cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Because Plaintiffs' substantive claims are due for dismissal, so too are their derivative claims for injunctive relief. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support for an injunction, the Court should nevertheless dismiss the injunction claims because Plaintiffs have failed to state more than a conclusory allegation regarding the availability of an adequate legal remedy or how Plaintiffs would suffer irreparable harm. Injunctions under both federal and Florida law require these elements. *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted). Plaintiffs do not even attempt to explain how

the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate or why Plaintiffs should be entitled to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim. At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the cost of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Omnibus Complaint makes no attempt to properly allege these elements. Instead, Count XIV sets forth a series of legal conclusions—*e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct"—without a

shred of factual detail.  Plaintiffs fail to identify an actual medical condition that Plaintiffs have developed due to their drywall; nor do they identify a monitoring procedure for any supposed condition. Instead, the Complaint only states that "exposure <u>may</u> lead to serious health problems, diseases, and medical conditions" or an "increased <u>risk</u> of contracting a serious latent disease." Cmplt. ¶¶ 169, 171 (emphasis added).   Plaintiffs would have this Court speculate about a theoretical risk of undisclosed ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring.  It states a series of legal conclusions, and those "do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate).  The glaring deficiencies highlighted above make the final Count subject to dismissal on the pleadings.  *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

## II. CONCLUSION

WHEREFORE, for the reasons stated in the Motion and the foregoing Memorandum of Law, Defendant Robert/Charles Builders, Inc. respectfully requests that the Court enter an order dismissing the claims against it with prejudice pursuant to Fed. R. Civ. Pro. 12(b)(6), and awarding RCB its fees in defending this action pursuant to Florida's Deceptive and Unfair Trade Practices Act.


Dated:  December 2, 2011             Respectfully submitted,


**AKERMAN SENTERFITT**


BY:  /s/ Michael A. Sayre _____
    Valerie B. Greenberg, Esq. (Fla. Bar No. 026514)
    Samantha J. Kavanaugh, Esq. (Fla. Bar No.0194662)
    Michael A. Sayre, Esq. (Fla. Bar No. 17607)
    One Southeast Third Avenue, 25th Floor
    Miami, FL  33131-1714
    Phone:  (305) 374-5600
    Fax:  (305) 374-5095
    Email:  valerie.greenberg@akerman.com
            samantha.kavanaugh@akerman.com
            michael.sayre@akerman.com


*Attorneys for Robert/Charles Builders, Inc.*

*Co-Counsel for Robert/Charles Builders, Inc.*
Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
        Susie.morgan@phelps.com
        Skylar.rosenbloom@phelps.com

{22697349;1}

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Memorandum of Law in Support of Robert/Charles Builders, Inc.'s Motion to Dismiss With Prejudice the Claims Brought Against it in the Block Class Action Complaint (Omni X)* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 2nd day of December, 2011.


/s/     Michael A. Sayre

# COMPOSITE EXHIBIT "1"



IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,

      Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

      Defendants.

_____/

CASE NO. 50 2009 CA 014458
Civil Division "AA" Chinese Drywall

## OMNIBUS ORDER ON PENDING MOTIONS TO DISMISS

The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance (joined by the Albanese-Popkin defendants); 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance (joined by certain installer defendants); 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

### Economic Loss Rule

The first issue for consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Supreme Court discussed at length the origins and application of the economic loss rule in *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).

1

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses.   Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits.  *Id.* at 536; *see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla. 1993).  These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations."  *Indemnity Insurance, id* at 536.

All of the parties here acknowledge that the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall.  Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal.  The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Supreme Court made clear in *Indemnity Insurance* that the economic loss rule applies in two distinct circumstances.  First, the rule applies to parties in contractual privity for matters arising out of the contract.  Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property.  Both applications of the rule must be examined here.

1.  <u>Contractual Privity Economic Loss Rule</u>

The defendant homebuilders assert that the plaintiff homeowners are barred from asserting tort claims for their economic losses based on the application of the contractual privity economic loss rule.  The Court agrees.

The Supreme Court in *Indemnity Insurance* explained the rational for application of the contractual privity economic loss rule as follows:

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Indemnity Insurance, id* at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule. Independent torts such as fraud in the inducement are not barred by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarrricenses, S.A.*, 685 So.2d 1238 (Fla. 1996). Claims for negligence in rendering professional services are not barred. *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999). Likewise, statutory claims are not barred by the economic loss rule. *Comptech Intern, Inc. v. Milan Commerce Park, Ltd.*, 753 So.2d 1219 (Fla. 1999).

None of the recognized exceptions apply here.[1] The damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders. Traditional contract damages must be applied to the economic losses suffered by the plaintiffs.

---

[1] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

2. Products Liability Economic Loss Rule

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity.    The rule applies when the product causes damage to itself, but causes no personal injury or damage to other property.   The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers – who are not in privity with the plaintiffs - are barred by the economic loss rule.  The Court holds that such claims are not barred.

It appears clear from the Supreme Court's discussion in *Indemnity Insurance* that application of the products liability economic loss rule is limited.  That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

The Court has considered the well-reasoned discussion of the economic loss rule in Judge Fallon's order in *In Re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780 (N.D. Louisiana 2010).   Judge Fallon traces the origins and history of the rule in Florida (and elsewhere) and discusses the application of the economic loss rule to non-privity defendants in the multi-district Chinese drywall litigation.

It is not necessary to repeat here the analysis of Judge Fallon in considering the application of the economic loss rule to non-privity defendants.   However, the Court will briefly address Judge Fallon's conclusion – a conclusion which this Court adopts.

Judge Fallon essentially concludes that the Chinese drywall at issue here presents a unique factual scenario that does implicate the products liability economic loss rule at

4

all.  The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

In cases like *Casa Clara*, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home.  Here, the alleged defect does not damage or affect the product (Chinese manufactured drywall) at all.

In defining the application of the products liability economic loss rule, the Supreme Court has stated that the rule is implicated where "there is a defect in a product that *causes damage to the product*, but causes no personal injury or damage to other property." *Indemnity Insurance, id.* 536  [emphasis added].   Here the alleged defect causes *no damage to the product* and causes *only* personal injury or damage to other property.  Under such unique circumstances, the Court agrees that the products liability economic loss rule does not apply.

<u>Private Nuisance</u>

The Court will next consider whether plaintiff can state a claim for private nuisance based on the allegation that the Chinese manufactured drywall is off-gassing causing a nuisance within the effected homes.   All defendants assert that the claim for private nuisance under such circumstances cannot be asserted.  The Court agrees with the defendants.

Florida law essentially defines nuisance as:

using one's property as to injure the land or some incorporeal right of one's neighbor... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it

5

generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

*Beckman v. Marshall*, 85 So. 2d 552, 554-55 (Fla. 1956) (approving and adopting the language of *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing *Windward Marina, L.L.C. v. City of Destin*, 743 So. 2d 635 (Fla. 1st DCA 1999). While this may be true, Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing *Reaver v. Martin Theatres of Florida, Inc.*, 52 So. 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in this case.

Plaintiffs rely heavily on the four-part test for proving the existence of a private nuisance purportedly established by the Court in *Beckman*. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in *Beckman*.

In fact, much of the instructive language in *Beckman* seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. *Beckman*, *id* at 555 ("no one has absolute freedom in the

6

use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). *Id.*

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. *See, e.g., Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); *Kotcher v. Santaniello*, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").

The only case which arguably supports plaintiffs' position, *Putnam v. Roudebush*, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that constituted a "permanent defect in the realty." However, private nuisance was not even a claim in the *Putnam* case. The Court's reference to the air conditioning being a nuisance was merely a descriptive reference, and not a statement of a legal claim.

Taken together, neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case. The Court concludes that plaintiffs' claims for private nuisance must be dismissed.

## Strict Liability

The defendant homebuilders have moved to dismiss the plaintiffs' strict liability claims. The homebuilders advance two grounds for dismissal. First, the homebuilder defendants assert that only manufacturers of the product and those in the chain of

7

distribution can be held strictly liable and they are neither.   Second, the defendant homebuilders assert that strict liability does not apply to improvements to real property. The Court will begin with the homebuilders' second argument.

The law in Florida appears to be well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products. *Plaza v. Fisher Development, Inc.*, 971 So.2d 918 (Fla. 3rd DCA 2007); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559 ( Fla. 2d DCA 1983) *see Easterday v. Masiello*, 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Plaintiffs argue that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.*, 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).   Plaintiffs conceded at oral argument that this exception has never been applied in a reported Florida case.   Indeed, the exception appears to be *dicta* in the cases that mention it.

Whether the exception advanced by the plaintiffs exists or not, it does not appear that the exception would apply to the defendant homebuilders in this case.   The exception appears to apply to the manufacturer of an allegedly defective product which

happens to be incorporated into the real property.    The defendant homebuilders did not manufacture the drywall at issue.

The defendant homebuilders also argue that only manufacturers, and those in the distributive chain of a product, can be held strictly liable.  Defendant homebuilders assert that they are not manufacturers and they are not within the distribution chain of the drywall at issue.  While the plaintiffs argue otherwise, the Court finds that the defendant homeowners' position has merit.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule.  The request of the defendant suppliers and installers (who lack privity with the plaintiffs) to dismiss the plaintiffs' tort claims based on the products liability economic loss rule is denied.   The plaintiffs' claim for private nuisance against all defendants is dismissed.  Likewise, the plaintiffs' claims for strict liability against the homebuilder defendants are dismissed.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this 5 day of November, 2010.

_r Kelly_

JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.



IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

IN RE: CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATON,
INC., and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and as
representatives of others similarly situated,
                  Plaintiffs,

CASE NO.: 10-28090 (12)

vs.

BANNER SUPPLY CO., et al.,
              Defendants.

HON. PETER M. WEINSTEIN

_____/

### ORDER ON DEFENDANT BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

THIS CAUSE came before the Court on Defendant Banner Supply Company Port St. Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint. The Court having considered same, having heard argument of counsel and being otherwise fully advised in premises, finds and decides as follows:

Plaintiffs filed the instant first amended class action complaint asserting claims for product liability; negligence; violations of the Florida Deceptive and Unfair Trade Practices Act (hereinafter FDUTPA); Private Nuisance; and equitable and injunctive relief. Defendant Banner Supply Company Port St. Luce LLC (hereinafter Banner PSL) is now moving to dismiss the first amended complaint arguing that it fails to comply with the requirements of Rule 1.220, Fla. R. Civ. P., fails to properly allege a cause of action for private nuisance, for violations of FDUTPA and for equitable and injunctive relief and for failure to comply with Rule 1.130, Fla. R. Civ. P.

Case No.:  10-28090(12)

in that plaintiffs have failed to attach documents necessary for Banner PSL to properly respond to the complaint.

Turning first to plaintiffs' claim for private nuisance, Banner PSL argues that plaintiffs cannot state a cause of action for private nuisance as a matter of law.  In the motion to dismiss, Banner PSL cites to a recent Omnibus Order on Pending Motion to Dismiss in the matter styled Marlene Bennett v. Centerline Homes, et. al., Case No. 50 2009 CA 014458, entered on November 5, 2010 by the Hon. Glenn Kelly of the Fifteenth Circuit Court.  In that case, Judge Kelley in a well reasoned order sets forth the well established law in Florida regarding private nuisances and states that "Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Id.* at 6 citing *Jones v. Trawick,* 75 So.2d 785, 785 (Fla. 1954).  "Florida law essentially define nuisance as using one's property as to injure the land or some incorporeal rights of one's neighbor. *Id.,* citing *Beckman v. Marshall,* 85 So.2d 552, 554 (Fla. 1956).  Plaintiff argues that there is an inherent weakness in Judge Kelley's ruling that the nuisance must come from outside the plaintiffs' land, that is the defective drywall did come from outside of plaintiffs' land and was delivered by Banner to the home. Plaintiffs argue that Banner PSL should have used its own property, the defective drywall, in a manner not to injure the plaintiffs.  This Court finds that it is plaintiffs' argument that has the inherent weakness based on this Court's interpretation of Florida law as it deals with private nuisance.  This Court finds Judge Kelley's ruling to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for

2

Case No.: 10-28090(12)

private nuisance in this case.[1]   Therefore, Banner PSL' motion to dismiss plaintiffs' claim for private nuisance will be granted.

Banner PSL's motion to dismiss is denied in all other respects.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Banner Supply Company Port St. Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint is GRANTED in Part as to Count IV for .Private Nuisance.   Count IV for Private Nuisance is hereby Dismissed with Prejudice.

DONE AND ORDERED in Chambers, Fort Lauderdale, Florida, this 24th   day of February, 2011.

PETER M. WEINSTEIN
CIRCUIT COURT JUDGE

Michael J. Ryan, Esq., Plaintiff's Liaison Counsel & Matthew Kotzen, Esq., Defendant's Liaison Counsel for distribution electronically through Lexis Nexis File & Serve

---

[1] Plaintiffs, in support of their opposition to the motion to dismiss argue that Judge Farina of the Eleventh Circuit, in the case of Seifert v. Banner Supply, Case No. 09-3887 CA 01(42), permitted the "Nuisance" count to go to the jury after a trial of the matter.  However, plaintiffs do not indicate whether, in fact, a motion to dismiss the "Nuisance" count ever presented to, or ruled on by Judge Farina. Therefore, plaintiff's reliance on that case is misplaced.



Mar 23 2011
11:58AM

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,

      Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

      Defendants.

_____/

CASE NO. 502009CA014458
Civil Division "AA" Chinese Drywall

### OMNIBUS ORDER ON PLAINTIFFS' NEGLIGENCE CLAIMS

    The court has under consideration the homebuilder defendants' Omnibus Motion to Dismiss Plaintiff Homeowners' Negligence Claims.  The installer and supplier defendants have each filed amicus briefs in support of the homebuilders' motion. The issue now before the court has been fully briefed, and was argued at the case management conference held on February 25, 2011.  Having reviewed the submissions of the parties, and having heard the argument of counsel, the court makes the following findings.

    The issue before the court is whether the plaintiffs can state a claim for negligence against any of the defendants (homebuilders, installers or suppliers).  Each class of defendant argues that a claim sounding in negligence is not available to the plaintiffs as there was no duty to protect the plaintiffs from an unknown and unforeseeable harm.   All parties concede that the issue of whether a duty exists in a negligence action is a question of law.  *Michael & Phillip, Inc. v. Sierra*, 776 So.2d 294, 296 (Fla. 4th DCA 2000).

    The court will first address whether there exists a general duty to inspect or test the Chinese manufactured drywall for a latent defect, or to warn homeowners of the existence of a latent defect in the drywall.  It appears clear that such a duty does not exist here.

1

Florida law does not impose a duty to inspect a product for a latent defect, or to warn others about a latent defect, unless the product is inherently dangerous. *See Mendez v Honda Motor Co.*, 738 F.Supp. 481 (S.D. Fla. 1990); *K-Mart Corp. v. Chairs, Inc.*, 506 So.2d 7, 8 n. 3 (Fla. 5th DCA 1987) (retailers have no duty to inspect for latent defects.), *review denied,* 513 So.2d 1060 (Fla.1987); *Dayton Tire and Rubber Co. v. Davis,* 348 So.2d 575, 582 (Fla. 1st DCA 1977) (No duty to warn or inspect unless inherently dangerous.), *quashed on other grounds,* 358 So.2d 1339 (Fla.1978); *Odum v. Gulf Tire and Supply Company,* 196 F.Supp. 35 (N.D.Fla.1961). A product is inherently dangerous if it is "burdened with a latent danger which derives from the very nature of the article itself." *Tampa Drug Co. v. Wait,* 103 So.2d 603, 608 (Fla.1958). Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous.

To the extent the plaintiffs seek to state a claim sounding in negligence based on a general duty to inspect, test or warn, such a claim is not available. However, this does not end the inquiry. The defendants, in any class, could be held liable in negligence if they had actual or implied notice of the defect in the Chinese manufactured drywall. *Carter v. Hector Supply Co.,* 128 So.2d 390, 392 (Fla. 1961); *Ryan v. Atlantic Fertilizer & Chemical Co.,* 515 So.2d 324, 326 (Fla. 3rd DCA 1987).

Notice must be determined on an individual, case by case, basis. The court cannot, therefore, hold that all negligence claims are barred on an omnibus basis. To the extent the plaintiffs can, in good faith, plead notice against an individual defendant in a specific case, such a claim will survive a motion to dismiss.

The court is cognizant of the fact that as to certain defendants, the plaintiffs have not pled notice.   If not amended, these claims will be dismissed.[1]   To the extent the plaintiffs have alleged notice in individual cases, negligence claims in these cases will survive dismissal at this stage.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the defendants' omnibus motion to dismiss the plaintiffs' negligence claims is granted, in part, and denied, in part.  Any claim based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall will be dismissed.  Claims based on actual or implied notice of the defect will not be dismissed.  This order is being entered on an omnibus basis and will be applied to individual cases as required.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this _18_ day of March, 2011

_____
JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

---

[1] In such cases, the Plaintiffs will need to determine whether there is a good faith basis to allege notice.

3



Oct 4 2011
1:26PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CHARLES AND ARLENE MACKOFF;

        Plaintiffs,

vs.

UPJOHN-DELRAY LIMITED PARTNERSHIP, a
Florida Limited Partnership; CENTERLINE
HOMES CONSTRUCTION INC., a Florida
Corporation; OCEAN COAST DRYWALL INC., a
Florida Corporation; L&W SUPPLY
CORPORATION d/b/a SEACOAST SUPPLY, a
Foreign Corporation; SHAMROCK BUILDING
MATERIALS INC d/b/a SHAMROCK TRADING,
a Foreign Corporation, and OVERSEAS
BUILDING SUPPLY L.C., a Florida Limited
Liability Company,

        Defendants.

CASE NO.:  502009 CA 039290 XXXX

CHINESE DRYWALL DIVISION

## ORDER ON O.C.D. OF S. FLORIDA, INC'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

      Comes now before the Court the Defendant's O.C.D. of S. Florida Inc's ("O.C.D") Motion to Dismiss Plaintiff's Third Amended Complaint. In support of this Motion, O.C.D. filed a written Motion to Dismiss dated March 17th, 2011, presented oral argument, and adopted all of the previous Omnibus arguments that have been made on behalf of Installers in Palm Beach County in the Chinese or defective drywall cases. Based on this hearing and the arguments presented, the Court hereby rules and it is hereby:

### ORDERED AND ADJUDGED:

1. O.C.D.'s Motion to Dismiss the strict liability count (Count III.A) is hereby DENIED. As grounds for this ruling, the Court adopts the same reasoning that is outlined in previous omnibus orders. O.C.D. will have 20 days to respond to the Fourth Amended complaint after it is filed and served (See paragraph 2).

2. O.C.D.'s Motion to Dismiss the Negligence count (Count III.B.) is hereby GRANTED with leave to amend.  Plaintiff has yet to plead that the Defendant 'knew or should have known' of the defect as is required by this Court's Omnibus Order on Negligence dated March 18, 2011.  Once the Plaintiff corrects this pleading deficiency and serves its amended complaint, O.C.D. will have 20 days to respond to the Fourth Amended Complaint.  When O.C.D. answers this Fourth Amended Complaint, all parties recognize that the issues outlined in this Motion to Dismiss will be preserved for appeal.  It is further stipulated that the only reason Plaintiffs did not alleged that the defective Chinese drywall was unreasonably dangerous is because of this Court's Negligence Order dated March 18, 2011 which found that Chinese drywall "cannot be categorized as inherently dangerous" and this issue is preserved for appeal.

3. O.C.D.'s Motion to Dismiss the Nuisance count (Count III.C.) is hereby GRANTED with prejudice (See previous omnibus ruling on nuisance).

4. O.C.D.'s Motion to Dismiss the Medical Monitoring count (Count III.D.) is DENIED as addressed by this Court's Order dated September 6, 2011.

  **DONE AND ORDERED** at West Palm Beach, Palm Beach County, Florida this
_4t_ day of October, 2011.

Honorable Glenn Kelley
Judge of the Circuit Court

Copies furnished to:
C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134
Vanessa M. Serrano, Esq., One Financial Plaza, Suite 2700, Fort Lauderdale, FL 33394
Susan J. Cole, Esq., 999 Ponce de Leon Blvd, Suite 710, Coral Gables, FL 33134
W. David Conner, Esq., P.O. Box 2048, Greenville, SC 29602
Edwin Mortell III, Esq., 416 Flamingo Avenue, Stuart, FL 34996
Helaine S. Goodner, Esq., Espirito Santo Plaza, 1395 Brickell Ave, 14th Floor, Miami, Florida 33131

IN THE CIRCUIT COURT OF THE 19TH
JUDICIAL CIRCUIT IN AND FOR
ST. LUCIE COUNTY, FLORIDA.

CASE NO. 562010CA001463

SURESH and OMA BISSOON,

       Plaintiffs,

v.

CENTERLINE HOMES CONSTRUCTION, INC.,
a Florida corporation; CENTERLINE PORT ST.
LUCIE LTD., a Florida Limited Partnership;
OCEAN COAST DRYWALL, INC., a Florida
Corporation; and BANNER SUPPLY COMPANY
PORT SAINT LUCIE, LLC, a Florida Limited
Liability Company,.

       Defendants,

_____

ORDER ON DEFENDANTS', CENTERLINE PORT ST. LUCIE, LTD.,
AND CENTERLINE HOMES CONSTRUCTION, INC.'s
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

THIS CAUSE, having come before the Court upon Defendants', Centerline Port St. Lucie

Ltd and Centerline Homes Construction, Inc.'s, Motion to Dismiss Plaintiffs' Second Amended

Complaint, and the Court having heard argument of counsel and being otherwise advised in

the premises, it is hereupon,

ORDERED and ADJUDGED that said motion be and the same is hereby granted in that

although Plaintiff's strict liability claims do allege defective product distribution, permanent



Broad and Cassel        3/31/2011 12:09    PAGE  7/7    RightFax

Improvements to real property are not products for purposes of products strict liability actions. These claims are dismissed.

Likewise the motion is granted because Plaintiff's private insurance claims do not state a cause of action against these defendants. These claims are also dismissed.

The motion is otherwise denied.

These defendants are permitted twenty (20) days to answer the Complaint.

DONE AND ORDERED in Chambers at Fort Pierce, Saint Lucie County, Florida this 2¹ᵗʰ day of March, 2011.

DWIGHT L. GEIGER, Circuit Judge

Copies furnished:
Vanessa M. Serrano, Esquire
C. David Durkee, Esquire

9/10/2009 2:56 PM Filed Lee County Clerk of Courts

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA                                                        CIVIL ACTION

CRAIG A. PISARIS-HENDERSON and
KELLY HENDERSON, Husband and Wife,

     Plaintiffs,

v.                                                        CASE NO. 09-CA-001280

DOUGLAS B. FRANCIS and DELACRUZ
DRYWALL PLASTERING & STUCCO,
INC., a Florida corporation,

     Defendants.
_____/

## ORDER

THIS CAUSE having come on before this Court upon Motion to Dismiss and

Motion to Strike Claim for Attorney's Fees of Defendant, DELACRUZ DRYWALL

PLASTERING & STUCCO, INC. (hereafter "DELACRUZ"), and the Court being

otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED as follows:

1.     Defendant DELACRUZ'S Motion to Dismiss Count III (Negligence) of the

Amended Complaint is denied to the extent that the count seeks damages to other

property, including, but not necessarily limited to, jewelry throughout the

residence.  Defendant's Motion to Dismiss is granted to the extent that Plaintiffs shall

not be entitled to pursue damages for any items which this Court determined are not

recoverable in its prior Order on Defendant's Motion to Dismiss Plaintiffs' Complaint,

including, but not limited to,  portions of the HVAC system and copper wiring throughout

the subject residence.

2.     Defendant DELACRUZ'S Motion to Strike Claim for Attorney's Fees is

granted without prejudice to Plaintiffs to pursue attorney's fees if Plaintiffs are able to later establish a legal basis for the recovery of such fees.

3.   Defendant DELACRUZ shall have twenty (20) days from the date hereof to plead in response to the Amended Complaint.

DONE AND ORDERED in Chambers at Fort Myers, Lee County, Florida, this _____ day of September, 2009.

_____
HONORABLE MICHAEL T. MCHUGH
Circuit Court Judge

Service of the foregoing Order has been made by U.S. Mail this ___ day of September, 2009, upon:

J. Matthew Belcastro, Esq.
Steven G. Koeppel, Esq.
Manuel Hiraldo, Esq.

By:_____
Judicial Assistant

- 2 -