UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * MDL No. 09-2047 |
| | * |
| | * JUDGE: FALLON |
| THIS DOCUMENT RELATES TO | * |
| David Gross, et al. v. Knauf Gips, KG, et al. | * |
| Case No. 09-cv-6690 (L)(2) | * |
| | * |

* * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF
STEELER INC.'S MOTION TO DISMISS
FOR LACK OF PLAINTIFF**

MAY IT PLEASE THE COURT:

**I.   INTRODUCTION**

Steeler, Inc. ("Steeler") has filed a Motion to Dismiss for Lack of Plaintiff (Doc. #10195) because no plaintiff has asserted that Steeler supplied their Chinese drywall. Steeler is located in Seattle, Washington. No claimant or litigant in any jurisdiction has asserted such a claim.

The Fifth Circuit has spoken clearly on this issue in *Audler v. CBC Innovis*, 519 F.3d 239 (5th Cir. 2008). Class action representatives (such as those in *Gross*) may not merely champion the rights of others. Such plaintiffs lack standing and their complaint presents no case or controversy as to the defendant whose alleged acts have harmed no named plaintiff.

The PCS's Opposition to Steeler's Motion (Doc. #11541) offers no response to the controlling case law cited by Steeler. In a nutshell, the PSC claims it need not identify any plaintiff who asserts Steeler supplied their drywall, citing cases which pertain to the liability

of manufacturers whose fungible products cannot be identified as to source. These cases have no application to Steeler. Nor do they eliminate the requirement of standing.

Because no plaintiff has asserted a claim against it, Steeler should be dismissed.

## II. SUMMARY OF THE ALLEGATIONS OF THE COMPLAINTS

In the Original and Amended *Gross* Complaints (Doc. 366) 3 Louisiana homeowners filed a Class Action against 91 defendants who were alleged to have designed, manufactured, exported, imported, distributed, delivered, supplied, or sold defective Chinese manufactured drywall which had caused damage to putative class members throughout the United States. Thereafter, Mary Ann Benes and Ruben Jaen filed Class Action Complaints in Intervention in the *Gross* litigation adding over 350 additional defendants. (Docs. #2187, #5580).

The Complaints assert that the plaintiffs cannot identify the manufacturer(s) of their defective drywall due to lack of identifiable markings which effectively conceal the identity of manufacturers. Plaintiffs state that 400 plus defendants are liable under the theory of industry-wide alternative or market share liability. Plaintiffs' causes of action are allegedly based upon negligence, negligence *per se*, strict liability, private nuisance, negligent discharge, unjust enrichment, violations of consumer protection acts, equitable and injunctive relief for medical monitoring, breach of implied and express warranties, breach of contract, violations of the Louisiana New Home Warranty Act, redhibition and violations of the Louisiana Products Liability Act.

The **sole** allegation against Steeler is that it was a supplier of drywall and "on

information and belief" it supplied the drywall at issue in *Gross*.[1] The allegations of concealment of identity clearly relate only to manufacturers whose products were not properly marked.[2]

### III. ARGUMENT

The PSC's Opposition asserts incorrectly that Steeler admits it supplied Chinese drywall installed in plaintiffs' homes. Which plaintiffs' homes? The PSC has not named one. Although Steeler has admitted that it sold drywall manufactured by the Chinese company Pingyi Baier Building Materials Co., Ltd., that company's drywall **was tested by the U. S. Consumer Products Safety Commission and found to have no detectable emissions of hydrogen sulfide**, said to cause plaintiffs' damages[3]

In support of their claim against Steeler, the PSC cites three irrelevant cases, involving the liability of manufacturers, not suppliers such as Steeler.

In *Sindell v. Abbott Laboratories*, 607 P. 2d 924 (Cal. 1980), women whose mothers took diethylstilbestrol (DES) during pregnancy sued 11 drug manufacturers for birth defects caused by DES. Because of the passage of 30-40 years, the women were unable to identify the particular defendant who manufactured the DES taken by an identifiable plaintiff's mother. Under those particular circumstances, the Supreme Court of California stated:

---

[1] Amended Gross Complaint (Doc. #366 at p. 30).

[2] There are no factual allegations relative to Steeler concealing its identity. Moreover, the case law regarding alternative / market share liability relates solely to manufacturers whose products cannot be identified as the cause of plaintiffs' harm.

[3] May 25, 2010 U. S. Consumer Products Safety Commission Release at www.cpsc.gov.

> In our contemporary complex industrialized society, advances in science and technology create fungible goods which may harm consumers and which cannot be traced to any specific producer. The response of the courts can be either to adhere rigidly to prior doctrine, denying recovery to those injured by such products, or to fashion remedies to meet these changing needs. Just as Justice Traynor in his landmark concurring opinion in *Escola v. Coca Cola Bottling Company*, (1944) 24 Cal.2d 453, 467-468, 150 P.2d 436, recognized that **in an era of mass production and complex marketing methods the traditional standard of negligence was insufficient to govern the obligations of manufacturer to consumer, so should we acknowledge that some adaptation of the rules or causation and liability may be appropriate in these recurring circumstances. . . . The manufacturer is in the best position to discover and guard against defects in its products and to warn of harmful effects; thus, holding it liable for defects and failure to warn of harmful effects will provide an incentive to product safety**. (Citations omitted.) (Emphasis added.)[4]

The *Sindell* court then held that each of the 11 DES manufacturers would be held liable based on its market share, unless it could show it could not have made the product which caused plaintiff's injuries.

*Smith v. Cutter Biological, Inc.*, 823 P.2d 717 (Hawaii 1991), cited by the PSC, is another irrelevant suit against manufacturers. In *Smith*, the plaintiffs were unable to identify which of 4 manufacturers had distributed tainted blood products which caused plaintiffs to contract AIDS. The Supreme Court of Hawaii applied the alternative liability / market share theory recognized by *Sindell*, holding that it was equitable and fair to utilize this theory in large part because there were a minimal number of manufacturers and thus the market was definable.

---

[4] *Sindell* at pp. 610-611.

Clearly, neither *Sindell* or *Smith* support the PSC's claim against Steeler, a supplier who had no role in the manufacture of Chinese drywall.

Note also that the market described in the *Gross* Complaints is "100% of the relevant market for the sale, distribution, exporting, importing, supplying and/or marketing of the defective Chinese drywall at issue in this litigation.[5] The PSC sheds no light on the meaning of "relevant market." *Sindell* and *Smith* involved a very small number of defendants (11 and 4). Contrast these cases to *Gross*, which names over 400 defendants. Even if Steeler was a manufacturer (which it is not) the sheer number of defendants and possible markets render the market share liability approach untenable.

Finally, the PSC cites *Starling v. Seaboard Coast Line R. Co.*, 533 F. Supp. 183 (S.D. Ga. 1982). Again, the case has no application here. *Starling* involved a suit against asbestos manufacturers in which plaintiffs sought to apply the market share liability theory. The court rejected the theory because it was not supported by Georgia law. The Court did uphold the sufficiency of the plaintiffs' fraud pleadings, where they alleged asbestos manufacturers had made false representations to insulation worker/plaintiffs regarding the dangers of asbestos exposure with the intent of inducing the workers to continue to use asbestos products and that as a result, the workers relied upon the misrepresentations and suffered harm from the asbestos products.

Here there are no allegations or facts (nor could there be) to show that Steeler manufactured any product or made false statements with intent to induce any plaintiff to act, with resulting reliance by the plaintiff and harm.

---

[5] Original *Gross* Complaint at paragraph 112; amended *Gross* Complaint at paragraph 147.

## IV. CONCLUSION

Steeler does not belong in litigation brought by plaintiffs who make no claim against it. The PSC's alternative / market share liability theory does nothing to satisfy the requirement that a plaintiff must have a personal stake in the litigation. Here no plaintiff has such a stake and therefore Steeler should be dismissed.

Respectfully submitted,

_____
Daniel J. Caruso (03941) (T.A.)
Herman J. Hoffmann (06899)
Betty F. Mullin (09818)
Simon Peragine Smith & Redfearn L.L.P.
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030
Fax: (504) 569-2999

Attorneys for Steeler, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Reply Memorandum in Support of Steeler's Motion to Dismiss for Lack of Plaintiff has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of December, 2011.

_____
Betty F. Mullin

N:\DATA\N\44805001\pleadings\reply to opposition.wpd