# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES AND | JUDGE FALLON MAG. JUDGE WILKINSON |
| *Payton, et al. v. Knauf Gips, KG, et al.* Case No. 2:09-cv-07628 (E.D. La.) | |
| *Gross, et al. v. Knauf Gips, KG, et al.* Case No. 2:09-cv-06690 (E.D. La.) | |
| *Rogers, et al. v. Knauf Gips, KG, et al.* Case No. 2:10-cv-00362 (E.D. La.) | |
| *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 2:11-cv-00252 (E.D. La.) | |
| *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-1363 (E.D. La.) | |
| *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-2349 (E.D. La.) | |
| *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-3023 (E.D. La.) | |
| *Vickers, et al. v. Knauf Gips KG, et al.* Case No. 2:09-cv-04117 (E.D. La.) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION OF
PROPOSED SETTLEMENT CLASS COUNSEL, THE PSC, AND THE KNAUF
DEFENDANTS FOR AN ORDER:  (1) PRELIMINARILY APPROVING THE KNAUF
SETTLEMENT; (2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS;
(3) ISSUING CLASS NOTICE; (4) SCHEDULING A FAIRNESS HEARING;
AND (5) STAYING CLAIMS AGAINST THE KNAUF DEFENDANTS**

This Memorandum of Law[1] is submitted by proposed Settlement Class Counsel, the Court-appointed Plaintiffs' Steering Committee (the "PSC") and Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia (collectively, the "Knauf Defendants") in support of their Joint Motion an Order:

(1)     Preliminarily Approving the Knauf Settlement;

(2)     Conditionally Certifying a Settlement Class pursuant to FEDERAL RULES OF CIVIL PROCEDURE 23(a), 23(b)(3) and 23(e);

(3)     Issuing Class Notice;

(4)     Scheduling a Fairness Hearing; and

(5)     Staying claims against the Knauf Defendants and claims against any Defendant involving KPT Chinese Drywall.

The Parties seek entry of an Order[2] finding preliminarily that:  (1) the Knauf Settlement is fair, reasonable and adequate; (2) the requirements for conditionally certifying a Settlement Class under Rule 23(a) and Rule 23(b)(3) have been met; and (3) notifying Class Members of the terms of the Knauf Settlement and of their rights in connection therewith is warranted.

In addition, the Parties respectfully request that the Court:  (1) approve the form of Class

---

[1]  Capitalized terms used in this Memorandum of Law shall have the same meaning as those defined in the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047, dated December 20, 2011 (the "Knauf Settlement"), attached hereto as Exhibit "A."

[2]  The "Preliminary Approval Order" is attached hereto as Exhibit "B."

Notice described in the Notice of Pendency and Proposed Settlement of Knauf Class Action[3]; (2)

schedule a fairness hearing to determine whether the Knauf Settlement should be given final

approval ("Fairness Hearing"); and (3) establish dates for the dissemination of the Class Notice,

the submission of requests for exclusion from and objections to the Settlement and other relevant

deadlines.

I.   **INTRODUCTION**

  A.   **The Knauf Settlement Class**

The proposed global settlement now before the Court for preliminary approval is intended

to resolve claims made in filed actions, which arose out of KPT Chinese Drywall installed in

properties in the United States.  The Settlement defines "KPT Chinese Drywall" as "any and all

drywall products manufactured, sold, marketed, distributed, and/or supplied by KPT and which

are alleged to be defective."[4]  KPT Chinese Drywall does not include drywall products,

manufactured, sold, marketed, distributed, and/or supplied by any Knauf Defendant other than

KPT.  KPT Chinese Drywall bears the marking "TIANJIN CHINA."  Plaintiffs with drywall

bearing the lower-case "TianJin China" marking will be eligible for Settlement benefits only on

certain conditions specified in the Settlement.[5]

The Knauf Settlement establishes two funds – a "Remediation Fund" and an "Other Loss

Fund" for the benefit of a settlement class consisting of:  "All persons or entities who, as of the

December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (*i.e.*, not an absent class

---

[3]  The Class Notice is attached hereto as Exhibit "C."

[4]  Settlement Agreement, Section 1.25.

[5]  Settlement Agreement, Sections 1.25.1 & 4.9.

member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit."[6]   The Knauf Settlement Class has three subclasses:  (1) the Residential Owner Subclass; (2) the Commercial Owner Subclass; and (3) the Tenant Subclass.  The Subclasses are defined as follows:

(1)      **The Residential Owner Subclass** consists of:

All members of the Class who are owners of and reside or have resided in Affected Property ("Residential Owners").  The Residential Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall.  The Residential Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties in a Short Sale to avoid foreclosure.

(2)      **The Commercial Owner Subclass** consists of:

All members of the Class who are owners of Affected Property for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business and who do not reside in the Affected Property ("Commercial Owners").  The Commercial Owner Subclass shall not include Owners, other than Mortgagees, who acquired Affected Properties through foreclosure with knowledge that the properties contained KPT Chinese Drywall, except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties in a Short Sale to avoid

---

[6]   The following persons or entities are members of the Class only for the purpose of obtaining benefits under the Other Loss Fund, but not for the purpose of obtaining benefits under the Remediation Fund, as those Class Members' Remediation Claims have been or will be resolved outside this Settlement: (i) any person or entity which has settled claims against the Knauf Defendants under the Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall ("Pilot Program") by executing both the Work Authorization and Release as defined in the Pilot Program, whose Affected Property has been or will be remediated under the Pilot Program; (ii) any person or entity whose Affected Property has been remediated under a Major Builder Settlement Agreement; and (iii) any person or entity whose Affected Property has been remediated under a settlement with a Builder or Supplier (including claims assigned by Class Members that were later settled by the assignee).

foreclosure.[7]

(3)     **The Tenant Subclass** consists of:

All members of the Class who rent Affected Property.

The Knauf Settlement Class includes Multiple Unit Property Governing Bodies to the extent that any unit(s) of a Multiple Unit Property is the subject of a filed lawsuit in the Litigation.

B.      **Settlement Benefits**

This global settlement is intended to provide Remediation Fund benefits and Other Loss Fund benefits to the Class in order to resolve all claims arising out of KPT Chinese Drywall.

1.      **Remediation Fund Benefits**

The Knauf Defendants have agreed to make an initial deposit of $200 million into the Remediation Fund, and additional deposits in increments of $50 million each time the balance of the fund is reduced to $25 million.  Additional funds may also be deposited into the Remediation Fund.

•      For example, 50% of net amounts (after payment of attorneys' fees and costs and after allocation between KPT Chinese Drywall and Non-KPT Chinese Drywall) recovered from both the Prospective Insurance Settlement,[8] which is a separate agreement that is to be negotiated between the PSC and the Knauf Defendants on the one hand, and the insurers for Other Releasees[9] on the other, and from Excluded Releasees[10] and/or their insurers will also be

_____

[7]  Residential Owners and Commercial Owners are referred to jointly as "Owners."

[8]  *See* Settlement Agreement, Section 1.54.  It is anticipated that the fairness hearing on the Prospective Insurer Agreement will take place at the same time as the Fairness Hearing on this Settlement.

[9]  Other Releasee is defined as "any person or entity that supplied, installed or facilitated and/or assisted in such supply or installation of KPT Chinese Drywall, including but not limited to, Banner, InEx, L&W, Importers, Suppliers, Builders, Developers, General Contractors, Installers, Realtors,

deposited into the Remediation Fund for purposes of providing remediation benefits to Class Members.[11]

    •    Further, each Participating Class Member will assign his/her claims (to the extent that they relate to KPT Chinese Drywall) to any net recovery under the InEx Class Settlement,[12] the Banner Class Settlement,[13] and/or the Prospective L&W Class Settlement[14] to the Knauf Defendants, if not already assigned.  Any net amounts recovered from the InEx, Banner and

---

Subcontractors, and Subsuppliers which purchased or received KPT Chinese Drywall from a Supplier, used Chinese Drywall sold, marketed, distributed and/or supplied by a Supplier in the construction of Affected Property, or sold or marketed Affected Property containing KPT Chinese Drywall, and all of their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers and all predecessors and successors, assigns, or legal representatives, except for Excluded Releasees."  Settlement Agreement, Section 1.48.

   [10]  Excluded Releasee is defined as "any person or entity eligible to be an Other Releasee that does not participate in the Prospective Insurer Agreement or otherwise settle with the PSC and the Knauf Defendants.  An Excluded Releasee can also be an Other Releasee."  Settlement Agreement, Section 1.12.

   [11]  The remaining 50% of net amounts recovered from the Prospective Insurance Agreement and from the Excluded Releasees will be deposited into the Other Loss Fund.  *See infra* at 9.

   [12]  On May 13, 2011, the Court preliminarily approved the InEx Class Settlement, which creates a fund of $8 million, consisting of all primary insurance available to Interior Exterior Building Supply, L.P. ("InEx"), for the benefit of all persons or entities with claims against InEx and/or its primary insurers arising from, or otherwise related to, Chinese Drywall sold, marketed, distributed and/or supplied by InEx.  The InEx settlement also assigns to the class the right to pursue an additional $72 million of excess insurance from The North River Insurance Company.  (Rec. Doc. No. 8818).  It is anticipated that the final fairness hearing on the InEx settlement will take place at the same time as the Fairness Hearing on this Settlement.

   [13]  On August 11, 2011, the Court preliminarily approved the Banner Class Settlement, which creates a fund of $53,081,572.30 for the benefit of all persons or entities with claims against the Banner Supply Co. and/or its insurers arising from, or otherwise related to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner.  (Rec. Doc. No. 10064).  An allocation committee was appointed by the Court to recommend procedures for allocation of settlement funds and proofs of claim.  *Id*.  It is anticipated that the final fairness hearing on the Banner settlement will take place at the same time as the Fairness Hearing for this Settlement.

   [14]  The Prospective L&W Class Settlement is a class action settlement to be negotiated by the PSC, the Knauf Defendants and L&W Supply Co. ("L&W").  It is anticipated that the fairness hearing on the L&W Class Settlement will take place at the same time as the Fairness Hearing for this Settlement.

Prospective L&W Class Settlements based on such assignments will also be deposited into the Remediation Fund, for purposes of providing remediation benefits to the individual KPT Property Owner involved.

• **<u>There is no cap on the Remediation Fund</u>**.

Residential KPT Property Owners and Commercial KPT Property Owners have three available options for remediation benefits: (1) they may elect to have their properties completely remediated pursuant to the Settlement's Remediation Protocol (Exhibit F to the Settlement Agreement); (2) they may self-remediate their Affected Property and be compensated for those costs under the Settlement; or (3) they may receive a discounted cash-out payment if they choose not to remediate their property. Mixed Property Owners[15] may elect either the self-remediation option or the cash-out payment.

    a.     *Option 1: Program Contractor Remediation Option*

The purpose of the Program Contractor Remediation Option under the Knauf Settlement is to make Residential and Commercial KPT Property Owners whole within a three-month period by completely remediating their Affected Property damaged by KPT Chinese Drywall. The remediation work performed pursuant to Option 1 of the Settlement will remove on a cost-effective basis all standard drywall, problem drywall-related odors, and contamination caused by

---

[15] Mixed Property Owners (Settlement Agreement, Sections 1.34 & 1.35) own Affected Properties in which the KPT Drywall Percentage is less than or equal to 90%. All Owners must submit proof of KPT Chinese Drywall in their property, which will be inspected to confirm the presence and determine the percentage of KPT Chinese Drywall in the property in comparison to the total amount of reactive Chinese drywall. That percentage will be rounded to the next highest 10% increment (the "KPT Drywall Percentage"). If the KPT Chinese Drywall Percentage exceeds 90%, the Class Member is entitled to full benefits. If the property is a "Mixed Property," *i.e.*, the KPT Chinese Drywall Percentage is less than or equal to 90%, the benefits will be discounted so the Class Member receives the benefit amount multiplied by the KPT Drywall Percentage. If the property has no KPT Chinese Drywall, the claim will be rejected.

the drywall, including corrosion, tarnishing and pitting, in order to leave the KPT Property with the same construction quality and finishes, including remediating any damage to the quality and finishes that was caused by the drywall, as existed prior to the start of the remediation work.[16]

Residential KPT Property Owners will also receive from the Remediation Fund a Lump Sum Payment of either $8.50 or $10 per square foot depending on the size of the Affected Property.  The purpose of the Lump Sum Payment is to compensate the Residential KPT Property Owner for Other Covered Expenses, which include reimbursement for all alternative living expenses, personal property damage, maintenance costs, including utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses, incurred by the Residential KPT Property Owner during the remediation process.  Commercial Owners are not entitled to a Lump Sum Payment.

Finally, in the event of a delay in the substantial completion of the remediation work within three months, Residential KPT Property Owners will be entitled to a Delay Payment from the Remediation Fund, as specified in the Settlement Agreement at Section 4.3.1.2.

### b.    *Option 2:  Self-Remediation Option*

Residential Owners and Commercial Owners may elect to self-remediate their Affected Properties, in which case the Remediation Fund will make a cash payment to the Owner's chosen contractor in order to have the Affected Property remediated.  Residential Owners will still receive the Lump Sum Payment under this scenario.

In the case of Mixed Property Owners, the cash payment to the chosen contractor will be discounted by multiplying the payment by the KPT Drywall Percentage.  For Mixed Property

---

[16] *See* Remediation Protocol, Exhibit F to the Settlement Agreement.

Residential Owners, the Lump Sum Payment will be similarly reduced.

### c.   *Option 3:  Cash-Out Option*

All Owners have a third option under the Settlement to select a discounted cash-out payment in the event they choose not to remediate their Affected Property.[17]  Under this Option, Class Members must comply with certain disclosure requirements.  *Id*.

### 2.   **Other Loss Fund Benefits**

The Knauf Defendants have agreed to make an initial deposit of <u>$30 million</u> into the Other Loss Fund.  In addition, 50% of net amounts recovered toward payment of claims related to KPT Chinese Drywall from both the Prospective Insurance Settlement and from Excluded Releasees will also be deposited into this fund.  <u>The Other Loss Fund is a capped fund</u>.

The <u>Other Loss Fund</u> will provide additional benefits to Class Members for economic losses, depending on the particular Subclass to which they belong and certain qualifying conditions.

•   Residential Owners may be entitled to:  (1) reimbursement of alternative living expenses arising from the need to vacate the Affected Property prior to remediation and/or (2) recovery of economic losses from foreclosures and short sales caused by KPT Chinese Drywall.

•   Commercial Owners may be entitled to:  (1) economic loss for a period not to exceed three months arising from the inability to use or rent the Affected Property during remediation, to the extent that these damages are not capable of mitigation and have not previously been reimbursed by insurance; (2) reimbursement of carrying costs (*i.e.*, interest expenses) arising from the inability to sell Affected Properties, to the extent that these damages

---

[17]  Settlement Agreement, Section 4.3.3.

are not capable of mitigation and have not previously been reimbursed by insurance; and/or (3)

lost equity due to foreclosure or short sales caused by KPT Chinese Drywall.

• Tenants may seek an award from the Other Loss Fund to compensate for moving

expenses if the Tenant is displaced by remediation work in the Affected Property and for personal

property damage, such as to jewelry and Tenant-owned appliances.

• The Settlement also provides a mechanism for Residential Owners and Tenants to

seek from the Other Loss Fund compensation for bodily injury allegedly caused by KPT Chinese

Drywall.

• The Other Loss Fund will not pay claims for stigma, injury to reputation, loss of

enjoyment of home, psychological or emotional injury, medical monitoring, injury to reputation,

credit rating loss, legal and accounting expenses, or loss of investment opportunity. Those claims

will be released without compensation.

### C. Attorneys' Fees

In addition to the Remediation Fund benefits and Other Loss Fund benefits provided under

the Settlement, the Knauf Defendants have agreed to pay separately $160 million in attorneys'

fees and costs, if approved by the Court, to compensate the PSC and valid and bona fide common

benefit counsel, proposed Settlement Class Counsel, and individually-retained Plaintiffs' attorneys

for: (i) all preparation and litigation work performed on behalf of any Participating Class Member

or the Class; (ii) this Settlement; (iii) the Pilot Program; (iv) the Major Builder Settlement

Agreements; (v) any agreement governing homes remediated prior to the Execution Date; and (vi)

any other previous settlement between the Knauf Defendants and any other party relating to

claims arising from KPT Chinese Drywall, unless attorneys' fees and reasonable costs have

already been separately addressed under such settlement.  Thus, <u>individual Class Members will not</u> <u>be responsible for payment of attorneys' fees or costs out of their recovery of benefits under the</u> <u>Settlement, except for recoveries on bodily injury claims, which is an additional significant benefit</u> <u>for Class Members</u>.

The reimbursement of costs under the Settlement includes but is not limited to Held Costs,[18] Shared Costs,[19] and Individual Participating Class Members' Costs limited to reasonable inspection costs.  Within two weeks of the Execution Date, the <u>Knauf Defendants will make an</u> <u>advance payment of $6 million (non-refundable)</u> to a Shared Costs Fund for costs incurred by the PSC, valid and bona fide common benefit counsel, Settlement Class Counsel, and individual retained counsel.

The obligation of the Knauf Defendants for attorneys' fees and costs is capped at $160 million, but if there is a surplus of funds remaining in the Other Loss Fund after all Approved Claims and Administrative Expenses have been accounted for, then that surplus may be used to offset post-Effective Date administrative legal fees and costs of Settlement Class Counsel, subject to Court approval.  Any additional funds remaining in the Other Loss Fund after payment of post-Effective Date fees and costs may be used to offset any deficiency in legal fees and costs of the PSC and valid and bona fide common benefit counsel, Settlement Class Counsel and individual retained counsel, subject to Court approval.[20]

---

[18]  Held Costs are defined by the Court in Pretrial Order No. 9.

[19]  Shared Costs are defined by the Court in Pretrial Order No. 9.

[20]  In addition to the attorneys' fees and costs paid by the Knauf Defendants under this Settlement, by separate petition to the Court in connection with the InEx Class Settlement, the PSC, common benefit attorneys, Settlement Class Counsel and privately retained attorneys (the "Petitioning Attorneys") are

(continued...)

The issue of attorneys' fees was negotiated by proposed Settlement Class Counsel separately and after all other material terms of the Knauf Settlement had already been resolved.[21]

\* \* \*

Proposed Settlement Class Counsel and the PSC believe that the Knauf Settlement is in the best interests of Class Members in view of a variety of factors, including the estimated damages suffered by the Class, as well as both the complexity of and risks attendant to Plaintiffs' demonstration that those damages were causally linked to the Knauf Defendants' alleged wrongdoing, and the delays inherent in litigating thousands of individual claims against the Knauf Defendants. The Knauf Defendants believe that the Settlement is a reasonable settlement of disputed claims. The Settlement was negotiated at arm's length over a period of many months.

The Parties accordingly respectfully submit that the Knauf Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Fifth Circuit. Moreover, certification of the proposed Knauf Settlement Class is appropriate pursuant to FED. R. CIV. P. 23, and the proposed notice program specifying individual notice via first-class mail to all Class Members satisfies the requirements of due process. As set forth below, all

---

[20](...continued)
entitled to seek an award of attorneys' fees up to 32% of the InEx settlement, plus reimbursement of reasonable expenses. (Rec. Doc. No. 8628-3). In connection with the Banner Class Settlement, the Petitioning Attorneys are entitled to seek an award of attorneys' fees up to 32% of the Banner settlement, plus reimbursement of reasonable expenses, including the cost of notice. In Banner, the Petitioning Attorneys are also permitted to petition the Court for a fee of 10% from those entities who recover from the Banner settlement and are not represented by the PSC and who have private counsel and who have actively pursued the litigation. *See* http://www.laed.uscourts.gov/drywall/Orders/Prelimapp.or.Banner.pdf. The Petitioning Attorneys may also seek awards of attorneys' fees up to 32% of the funds recovered under the Prospective L&W Class Settlement and under the Prospective Insurer Agreement, plus reimbursement of reasonable expenses.

[21] *See Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978).

prerequisites for preliminary approval of the Knauf Settlement and conditional certification of the proposed Knauf Settlement Class have been met, and the Parties respectfully submit that their Joint Motion for Preliminary Approval of the Knauf Settlement should be granted.

## II.   BACKGROUND

### A.   The Chinese Drywall Litigation

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms. Beginning in the fall of 2005, hundreds of millions of square feet of Chinese Drywall were exported to the United States, sold to distributors and suppliers, resold to builders and installers, and installed in thousands of properties domestically, but primarily in Florida, Louisiana, Alabama, Mississippi, Texas and Virginia.[22]

Certain Governmental agencies found Chinese Drywall to be defective, allegedly causing property damage, including damage to electrical wiring, corrosion of pipes, and damage to or destruction of air-conditioners, refrigerators, HVAC systems, and other appliances.[23]  The Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC"), made various recommendations for the repair of properties impacted by Chinese Drywall, including the removal of problematic drywall,

---

[22]  The Gypsum Association reports that 320 million square feet of Chinese Drywall were imported from 2005-2007.  *See* Gypsum Association Comments, published at http://www.gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.  Knauf acknowledges in its manufacturer profile form that it exported 5,286,015 square meters (or 56,898,192 square feet) of board to the U.S. between 2005 and 2006.

[23]  *In re Chinese Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 706 F. Supp. 2d 655, 664-66 (E.D. La. 2010) (Findings of Fact and Conclusions of Law); *In re Chinese Manufactured Drywall Prods. Liab. Litig.* (*Hernandez*), 2010 WL 1710434, *8-9 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

fire safety alarm devices, electrical distribution components (including receptacles, switches and circuit breakers), gas service piping and fire suppression sprinkler systems.[24]

Further, some individuals have alleged that they suffered bodily injury as a result of exposure to Chinese Drywall.[25]  However, the CPSC and the Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence that exposure to Chinese Drywall causes any ill health effects.

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.[26]  Since the formation of this MDL more than 2 ½ years ago, thousands of claimants have participated in the PSC's omnibus class action complaints.  The Court has held regular monthly status conferences attended by hundreds of counsel and it has entered 25 separate Pretrial Orders, many with subparts, as well as scores of other orders and minute entries.[27]  To date, more than 12,000 entries have been recorded on the docket in this case.

This Court has worked tirelessly to manage the nationwide litigation of Chinese Drywall claims.  The Court's efforts have included the coordination and oversight of pretrial discovery and motion practice for thousands of individual cases as well as the Omni Complaint class actions filed

---

[24]  *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011, published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

[25]  Order appointing Special Master (Rec. Doc. No. 505) at 1.

[26]  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) (Rec. Doc. No. 1).

[27]  *E.g.*, Minute Entry, Dec. 2, 2010 (Rec. Doc. No. 6525).

in the MDL.[28]  In the myriad of lawsuits filed before this Court in this Chinese Drywall litigation,

dozens of motions have been filed by the parties on a variety of issues, including motions for class

certification in *Germano*, *Payton* (Knauf), and *Payton/Vickers, et al. v. Knauf Gips KG, et al.*,

Case No. 2:09-cv-04117 (E.D. La.), and motions for Florida and/or Louisiana Homeowners

classes for damages and/or declaratory relief,[29] numerous motions to intervene, motions for

default judgment, motions to dismiss for lack of personal jurisdiction, motions for summary

judgment, and a motion to establish a Plaintiffs' litigation expense fund.[30]

For purposes of coordination, consistency and global treatment of Chinese Drywall claims,

the Court has consulted with numerous state court judges and other federal judges also

overseeing Chinese Drywall litigation, including the Honorable Joseph Farina from the 11th

---

[28]  *See, e.g., Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.)
(Omnibus I, I(A), I(B), I(C)) (involving claims against the Knauf Defendants); *Wiltz, et al. v. Beijing New
Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A),
II(B), II(C)) (involving claims against non-Knauf manufacturers such as Taishan and BNBM); *Gross, et
al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A))
(asserting alternative liability theory against all known manufacturers for drywall that cannot be traced to a
particular manufacturer); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.)
(Omnibus IV, IV(A), IV(B), IV(C)) (involving claims against the Knauf Defendants); *Amato, et al. v.
Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al.
v. AAA Ins., et al.*, Case No. 2:10-cv-03070 (E.D. La.) (Omnibus VI); *Abel, et al. v. Taishan Gypsum Co.,
Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-cv-00080 (E.D. La) (Omnibus VII);
*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.)
(Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case
No. 2:11-cv-01077 (E.D. La.) (Omnibus IX); *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft,
KG, et al.*, Case No. 11-cv-1363 (E.D. La.) (Omnibus X); *Benoit, et al. v. Lafarge S.A., et al.*, Case No.
11-cv-1893 (E.D. La.) (Omnibus XI); *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et
al.*, Case No. 11-cv-2349 (E.D. La.) (Omnibus XII); *Cassidy, et al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-3023 (E.D. La.) (Omnibus XIV).

[29]  Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva, et al. v. Interior Exterior Building Supply, LP,
et al.* Case No. 09-08030 (E.D. La.)), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195
(*Vickers/Payton*), 8197 (*Payton*).

[30]  *See* Minute Entry at 24, Dec. 2, 2010 (Rec. Doc. No. 6525).

Judicial Circuit Court of Florida (Dade County) and the Honorable Charles Greene from the 17th Judicial Circuit Court of Florida (Broward County).[31]  In coordination with these jurists, this MDL Court has strived to achieve finality in the resolution of this litigation.[32]

In order to accomplish its goals, the Court appointed the PSC and a Plaintiffs' Liaison Counsel ("PLC") to prepare and respond to pleadings and motions, engage in discovery, pretrial preparation, trial and settlement of cases, manage the MDL docket, establish and administer a document depository, communicate with individual Plaintiffs and their counsel, liaison with Defendants and attend court status conferences and hearings.[33]  The Court also appointed a Defendants' Liaison Counsel[34] and a Homebuilders and Installers Liaison Counsel[35] to assist in these efforts.  In November, 2009, the Court appointed a Special Master "to explore opportunities for an ultimate resolution of the instant matter as to any and all interested parties," recognizing that "some or all parties [we]re interested in exploring a global resolution of the matter as it affect[ed] them at th[at] stage of the proceeding."[36]  In March, 2010, the Court appointed State and Federal Coordination Committees "to assist the Court, litigants and judicial

---

[31]  *E.g.*, Transcript of Status Conference at 2:17-3:17, Oct. 14, 2010 (comments of J. Fallon praising "the help of state court judges:" "I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward."); Transcript of Status Conference at 7:5-17, Mar. 23, 2011.

[32]  Transcript of Status Conference at 7:19-25, Mar. 23, 2011.

[33]  *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman); Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs, Arnold Levin).

[34]  *See* Pretrial Order No. 4 (appointing Defendants' Liaison Counsel).

[35]  *See* Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel).

[36]  Order Appointing Special Master (Rec. Doc. No. 505 at 4).

system to facilitate coordination between this MDL and the various state court cases."[37]  And, the Court appointed an Insurer Steering Committee as well as Co-Lead Counsel for the First-Party Insurer Subcommittee.[38]

Through the vehicle of "Omni" complaints, the Court has assisted the parties in bringing all interested and affected entities into the Chinese Drywall litigation in a consistent, fair and judicious manner.[39]  Intervention Omni complaints have been filed on behalf of thousands of Plaintiffs suing more than a thousand Defendants, including the Knauf Defendants and other foreign Chinese Drywall manufacturers, including Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd.[40] ("Taishan"), BNBM and related entities, China National Building Materials Co., Ltd. and related entities, as well as numerous importers, builders, suppliers and installers of Chinese Drywall, their insurers and other Defendants.[41]  Absent the Omni complaints, few individual Plaintiffs, if any, would have been able to perfect service of process under the Hague Convention on the foreign manufacturers of the Chinese drywall installed in their properties.  The costs of translation of the complaints and service on these foreign Defendants exceeds $100,000 for each complaint in the litigation.  These Omni pleadings are intended to

---

[37]  *See* Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendants' State/Federal Committee).

[38]  *See* Pretrial Order No. 20 (appointing Insurer Steering Committee and Co-Lead Counsel for the First-Party Insurer Subcommittee).

[39]  *See* Transcript of Status Conference at 4-5, June 24, 2010 (recognizing that Omni complaints serve as a vehicle to "effectively and efficiently" serve more than 500 Defendants and to evaluate the "whole census").

[40]  On September 10, 2007, Shandong Taihe Dongxin Co., Ltd., which was a subsidiary company controlled by BNBM, changed its name to Taishan Gypsum Co., Ltd.

[41]  *See* fn. 28, *supra*.

close the circle of liability by engaging the insurers and the financiers of the Defendants directly in this litigation.  These efforts have aggregated the "mass" in this mass tort, which is contributing to resolve this litigation on a global basis.

In the spring of 2010, the Court resolved ten bellwether cases in Virginia and Louisiana.[42] After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the appropriate scope of remediation.  The Court found that Chinese Drywall "has to be remediated."[43]  These bellwether trials have served as a useful tool for all litigants involved in Chinese Drywall litigation, as well as the Court.[44]

In addition to these trial-set cases, the PSC has engaged in widespread jurisdictional and merits discovery of the Knauf Defendants.  The PSC has served extensive written discovery on all of the Defendants, reviewed tens of thousands of documents, taken depositions of myriad officers of the Knauf companies and the Taishan companies in Hong Kong, Germany, the United

---

[42]  *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case).  Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[43]  *Germano*, 706 F. Supp. 2d at 671.

[44]  *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (June 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar....  The reasons for acceptance by bench and bar are apparent.  If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

Kingdom and elsewhere.  The PSC has also taken discovery of other Defendants in various cities throughout the United States.  As a result of these painstaking efforts, the PSC contends that it has laid the foundation to establish liability and jurisdiction over these Defendants; however, the Knauf Defendants have asserted numerous defenses that raise questions about the collectibility of any judgment.

### B.     The KPT Pilot Program

Following the bellwether trials, the PSC entered into the Pilot Program with the Knauf Defendants for the remediation of homes containing drywall manufactured by KPT.  Pursuant to this Settlement, the scope of remediation of homes with KPT Chinese Drywall has proceeded in conformance with this Court's previous rulings set forth in the *Hernandez* trial, with the cost determined through the submission of contractor bids rather than through litigation.[45]  In addition to the Knauf Defendants, a number of suppliers and other Defendants have participated in this Pilot Program settlement.[46]

### C.     Reasons for the Knauf Settlement

The Knauf Settlement will provide a minimum of $200 million, plus additional sums as necessary, for Remediation benefits for Owners (consisting of remediation of Affected Properties and cash payments) to eligible Knauf Settlement Class Members.  In addition, 50% of the net Insurance Settlement monies and 50% of the net funds recovered from Excluded Releasees will be deposited into the Remediation Fund.  Further, net recoveries for Class Members participating in the Banner, InEx and L&W Class Settlements (to the extent they related to KPT Chinese

---

[45]  *See Hernandez* Findings of Fact; Transcript of Status Conference at 4:16-20, Oct. 14, 2010.

[46]  Transcript of Status Conference at 5:3-5, Oct. 14, 2010.

Drywall) will be assigned to the Knauf Defendants and deposited into the Remediation Fund.[47]
**There is no cap on the Remediation Fund**.

Eligible Class Members may elect to:  (1) have their Affected Properties remediated by the Knauf Defendants; (2) receive compensation to self-remediate their Affected Properties; or (3) receive a cash-out payment.

The Knauf Settlement will also provide $30 million, plus 50% of the net Insurance Settlement monies and 50% of the net funds recovered from Excluded Releasees, for Other Loss Fund benefits (consisting of alternative living expenses, economic losses, carrying costs, lost equity due to foreclosure or short sale, personal property damage, and bodily injury compensation) to eligible Knauf Settlement Class Members.  This is a significant recovery for Plaintiffs in light of, among other things, the procedural posture of the litigation, the range of estimates of damages to the Knauf Settlement Class, and all of the material factual information revealed during discovery and settlement negotiations.

Although proposed Settlement Class Counsel and the PSC believe in the merits of the case against the Knauf Defendants and in their ability to prevail, they recognize that Plaintiffs would face serious obstacles to establishing both liability and damages should the cases proceed to trial. For instance, the Knauf Defendants have argued that, as to KPT, China will not enforce judgments rendered in the United States.  They have also contended that this Court cannot exercise personal jurisdiction over the German Knauf Defendants, and even if there were jurisdiction, those Knauf entitites are separate from KPT and not liable for KPT Chinese Drywall.

---

[47]  In order for Banner, InEx and L&W Class Members to obtain benefits from the Knauf Settlement, they must also participate in those settlements, where appropriate, and assign their benefits under those settlements to the Knauf Defendants to the extent that they relate to KPT Chinese Drywall.

The Knauf Defendants claim that a United States judgment to the contrary would not be enforceable in Germany in any event.[48]  Further, the Knauf Defendants contend that Plaintiffs cannot establish causation for bodily injury damages and that it would be exceedingly difficult for Plaintiffs to prove that economic losses were caused by KPT Chinese Drywall rather than by the economic recession and collapse of the real estate market in 2008, which would materially reduce the potential range of damages.  Moreover, even if the cases against the Knauf Defendants were to proceed to trial, the Knauf Defendants would likely appeal any judgment favorable to the Class. Any post-appeal enforcement proceeding would likely have to be initiated in China and/or Germany, imposing a significant additional delay on the payment of any recovery to individual Knauf Settlement Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.

The Parties respectfully request that this motion be granted not only because, as will be set forth herein, public policy favors the settlement of complex class actions such as this, but because the Knauf Settlement is an excellent result for the Knauf Settlement Class.  It is fair, reasonable and adequate, and was negotiated at arm's length.  In light of the foregoing, it is respectfully requested that the Court enter an Order preliminarily approving the Knauf Settlement and conditionally certifying the Knauf Settlement Class and Subclasses.

---

[48]  The Knauf Defendants also contend that there is no basis for liability of KI, the only Knauf Defendant with United States assets.

III.   **ARGUMENT**

    A.   **The Knauf Settlement Is in the Best Interest of the Knauf
Settlement Class.**

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a

class action.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475

U.S. 717, 726 (1986).  In determining whether to approve the Knauf Settlement, the Court should

be guided by the strong judicial policy favoring pretrial settlement of complex class action

lawsuits.  *See, e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*,

559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843

(E.D. La. 2007) (Fallon, J.); *Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398, at *3

(E.D. La. Aug. 17, 2010) (Knowles, Mag. J.).[49]  This is, in part, because of the complexity and

size of class actions:

> Particularly in class action suits, there is an overriding public
> interest in favor of settlement. . . . It is common knowledge that
> class action suits have a well deserved reputation as being most
> complex.  The requirement that counsel for the class be experienced
> attests to the complexity of the class action. . . . In these days of
> increasing congestion within the federal court system, settlements
> contribute greatly to the efficient utilization of our scarce judicial
> resources.

*Cotton*, 559 F.2d at 1331 (citation omitted); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The

public interest favoring settlement is especially apparent in the class action context where claims

are complex and . . . could lead to years of protracted litigation and sky-rocketing expenses.").

---

[49]  "Federal Courts look with great favor upon the voluntary resolution of litigation through
settlement....  This rule has particular force regarding class action lawsuits."  *Airline Stewards &
Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

In addition:

> Complex litigation - like the instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions. . . . Although class action settlements require court approval, such approval is committed to the sound discretion of the district court.

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citations omitted).  Courts have recognized that certification of a class for settlement purposes is beneficial in resolving major class action disputes.  *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-77 (5th Cir. 1979).

The first step in determining whether to grant preliminary approval to a class settlement is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement."  *Cope v. Duggins*, 2001 WL 333102, *1 (E.D. La. Apr. 4, 2001) (Fallon, J.), *citing*, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995).  The Court must "evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing."  *Id*. In so doing, "the Court will examine the submitted materials and determine whether the proposed settlement appears fair on its face."  *Id*.; *see In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

At the preliminary stage, the Court's review is less stringent.  *See, e.g.*, *In re OCA, Inc. Sec. and Der. Litig.*, 2008 WL 4681369, *11 (E.D. La. Oct. 17, 2008) ("As this motion is for *preliminary* approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval."); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007); MANUEL FOR COMPLEX LITIGATION (FOURTH), § 21.63 (2004) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably

23

should not, engage in analysis as rigorous as is appropriate for final approval.").

As set forth above, the PSC and proposed Settlement Class Counsel arrived at an agreement in principal with the Knauf Defendants during arm's length negotiations. This Settlement was subsequently memorialized in the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047, submitted herewith. The Court may presume, therefore, that the proposed settlement is fair and reasonable, as it is the result of arm's length negotiations. *See Camp v. The Progressive Group*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004). The Knauf Settlement contains the material economic terms of the settlement, the manner and form of notice to be given to the Class, the contingencies or conditions to the settlement's final approval, and other terms.

The PSC and proposed Settlement Class Counsel possessed adequate information concerning the strengths and weaknesses of the Litigation against the Knauf Defendants after extensive document discovery and briefing on relevant motions. In addition, proposed Settlement Class Counsel, the Court-appointed PSC, its individual counsel members, and the PLC are highly competent counsel, all with many years of experience litigating complex class action and multidistrict cases. Finally, as explained above, the complexity, expense, uncertainty, and likely duration of the Litigation also militate in favor of consummating the settlement process. Therefore, proposed Settlement Class Counsel and the PSC respectfully submit that all of the above-cited circumstances support preliminary approval of the Knauf Settlement.

### B.   The Requirements of Rule 23 Have Been Met For Conditional Certification of the Knauf Settlement Class.

For purposes of conditionally certifying the Rule 23(b)(3) Settlement Class sought by the Parties, The MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 advises:

24

> If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).

Further, "[i]f there is a need for subclasses, the judge must define them and appoint counsel to represent them." *Id*. This comports with the Supreme Court's holding in *Amchem* that "[s]ettlement is relevant to a class certification," but the requirements of Rule 23(a) and 23(b)(3) must still be met. 521 U.S. at 619-20. However, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id*.

In this case, all of the requirements for Rule 23(a) have been met. Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Knauf Settlement Class.

### 1.   **Numerosity**

Thousands of Plaintiffs have filed suit against the Knauf Defendants alleging damages sustained as a result of the Knauf Defendants' involvement in the manufacture, marketing, sale

and distribution of KPT Chinese Drywall for installation in Affected Properties.  Under these

circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *Sullivan v. Chase Inv.*

*Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members "clearly

satisfies the numerosity requirement"); *see* William B. Rubenstein, Alba Conte, and Herbert B.

Newberg, 1 NEWBERG ON CLASS ACTIONS, § 3:3 (4th ed. 2010) ("Where the exact size of the

class is unknown but general knowledge and common sense indicate that it is large, the

numerosity requirement is satisfied.").

## 2. **Commonality**

The commonality requirement of Rule 23(a)(2) is met in this case.  The Judicial Panel on

Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the

commonality of facts in the various cases."[50]  Questions surrounding the effects of KPT Chinese

Drywall on Class Members and the damages caused by KPT Chinese Drywall are issues common

to all Plaintiffs, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442 U.S. 682,

701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the

class as a whole" and they "turn on questions of law applicable in the same manner to each

member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The

existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

of salient facts coupled with disparate legal remedies within the class."); 1 NEWBERG ON CLASS

ACTIONS § 3:1 ("Convenience, uniformity of decision, and judicial economy are achieved through

the class action device by litigating common issues only once on behalf of all class members.").

---

[50]  *Hernandez*, 2010 WL 1710434 at *1 (Findings of Fact).

26

3.    **Typicality**

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 1 NEWBERG ON CLASS ACTIONS § 3:13, *quoting*, *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). In other words, courts must determine "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Id.*, *quoting*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See*, *e.g.*, *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156-57 (1982). The typicality requirement has been liberally construed by the federal courts. *See*, *e.g.*, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Plaintiffs in this case is seeking money from the Knauf Defendants for the costs of remediation of KPT Chinese Drywall and other damages allegedly caused by KPT Chinese Drywall. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." 1 NEWBERG ON CLASS ACTIONS § 3:13. The proposed Class Representatives are Plaintiffs seeking to hold the Knauf Defendants liable for damages resulting from KPT Chinese Drywall installed in the Affected Properties in which they live and/or that they own. The proposed Subclass Representatives are Residential Owners, Commercial Owners or Tenants with claims that are typical of the other

Subclass Members in their respective Subclass.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that the named class representatives "not possess interests which are antagonistic to the interests of the class."  1 NEWBERG ON CLASS ACTIONS § 3:21.  Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted).  At this preliminary stage of the approval process, there is nothing to suggest that this requirement has not been met.  The named representatives are members of the Class and Subclass they seek to represent, and they do not possess any interests antagonistic to the Class or Subclass with respect to their claims against the Knauf Defendants. Moreover, proposed Settlement Class Counsel are members of the PSC, which was appointed by this Court after an application process to represent all Plaintiffs in the MDL, based on the attorneys' vast experience in class actions and multidistrict litigation.  The PSC conducted these class negotiations with the Knauf Defendants at arm's length, and will fairly and adequately represent the Class.  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

### 5.    Common Questions of Law and Fact Predominate

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  1 NEWBERG ON CLASS ACTIONS § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").  In this case it makes

eminent good sense to resolve the claims against the Knauf Defendants in this forum through the class action device.  The issues of the Knauf Defendants' liability for the manufacture of KPT Chinese Drywall predominate over any individual issues involving the Plaintiffs.  A class settlement will insure that funds are available to remediate the Plaintiffs' Affected Properties and provide compensation for other damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication.  Factors the Court may consider include:

(A)     the interest of members of the class in individually controlling the
        prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already
        commenced by or against members of the class;

(C)     the desirability or undesirability of concentrating the litigation of the claims
        in the particular forum; and

(D)     the difficulties likely to be encountered in the management of a class
        action.[51]

FED. R. CIV. P. 23(b)(3)(A)-(D).  Given the various suits pending against the Knauf Defendants in federal and state courts, approval of the Knauf Settlement and resolution of all KPT Chinese Drywall claims against the Knauf Defendants in this forum benefits all parties.

**C.     The Proposed Form and Method of Class Notice Is Adequate
         and Satisfies the Requirement of Rule 23.**

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class

---

[51] As stated earlier, any difficulties of management of this Class need not be considered.  *Amchem*, 521 U.S. at 620.

action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  The law is clear that individual notice by first-class mail is more than sufficient to meet the notice requirements of due process.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).

 In accordance with these legal parameters, the Parties have agreed to provide individual notice by first-class mail to all Class Members and their counsel.  The Parties are also requesting that the Knauf Settlement be posted on the District Court's Chinese Drywall MDL website.  The Court should approve the form and content of the proposed Notice of Pendency of and Proposed Class Action Knauf Settlement ("Notice").[52]  The Notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1).  The Notice objectively and neutrally apprises all Class Members of the nature of the action, the definition of the Class and Subclasses sought to be certified for purposes of the Settlement, the Class claims and issues, that Class Members may enter an appearance before the Court at the Fairness Hearing (in accordance with the procedures set forth in the Notice), that the Court will exclude from the Class any Class Member who opts out (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).  The Notice additionally discloses the date, time and location of the Fairness Hearing and the procedures and deadlines for the submission of objections to any aspect of the settlement.  These disclosures are complete and should be approved by the Court.  *See*, *e.g.*, *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194

---

[52]  Attached hereto as Exhibit "C."

F.R.D. 166, 175 (E.D. Pa. 2000).

Upon notification of the Knauf Settlement, Class Members have three choices:  (1) approve the Settlement and share in the settlement proceeds; (2) opt out of the Settlement, in which case they will not participate in the settlement recovery and will retain their individual claims against the Knauf Defendants; or (3) object to the Settlement, in which case they will nonetheless remain Class Members.  To participate in the Settlement, Class Members need do nothing at this time.  Class Members who wish to opt out of the Settlement must submit timely notice of their intent to opt out.  Class Members who wish to object to the Settlement must file and serve a notice of their intention to appear and object.  Objectors may submit a memorandum of law in opposition, as well as any admissible evidence relevant to the issues to be heard, provided that such Class Member has timely provided any and all papers in opposition to the Settlement upon which the objection may be based.  Objectors may also appear before the Court at the Fairness Hearing.  The Notice provides clear direction and instructions to Class Members regarding their options under the Knauf Settlement.

> **D.    The Court Should Preliminarily Approve the Knauf Settlement and Conditionally Certify the Settlement Class.**

Determining the fairness of the Knauf Settlement is left to the sound discretion of the Court, and an appellate court will not overturn the Court's decision absent a clear showing of abuse of that discretion.  *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982), *citing*, *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 218 (5th Cir. 1981); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978), *cert.*

*denied*, 439 U.S. 1115 (1979); *Cotton v. Hinton*, 559 F.2d at 1331; *Young v. Katz*, 447 F.2d 431,

432 (5th Cir. 1971); *see also In re U.S. Oil*, 694 F.2d at 493-94.  The Fifth Circuit has consistently

held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible

because they are a means of amicably resolving doubts and preventing lawsuits.'"  *Miller*, 559

F.2d at 428, *quoting*, *Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975).

Settlements of class actions are "particularly favored" and are not to be lightly rejected.  *Maher*,

714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843.  In the

case of class actions, the Fifth Circuit has held that "there is an overriding public interest in favor

of settlement," because such suits "have a well deserved reputation as being most complex."

*Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.

1976).

 Moreover, it is widely recognized that courts should exercise restraint in examining a

proposed settlement and should not "make a proponent of a proposed settlement justify each term

of settlement against a hypothetical or speculative measure of what concessions might have been

gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."

*Cotton*, 559 F.2d at 1330 (citation and quotation marks omitted).  In other words, in weighing the

benefits obtained by settlement against benefits dependent on the likelihood of recovery on the

merits, courts are not expected to balance the scales.  *See id.*  The very object of a compromise

"is to avoid the determination of sharply contested and dubious issues."  *Young v. Katz*, 447 F.2d

431, 433 (5th Cir. 1971).

 In addition, a court should not engage in a trial on the merits when considering the

propriety of a settlement:

  It cannot be overstated that neither the trial court in approving the

> settlement nor [the appellate court] in reviewing that approval have
> the right or the duty to reach any ultimate conclusions on the issues
> of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330, *quoting*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th

Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2nd Cir. 1974); *see also Murphy*

*Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but

instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed

settlement as compared to the alternative of litigation.").  The trial court is not required to decide

the merits of the action or substitute a different view of the merits for that of the parties or

counsel.  *Maher*, 714 F.2d at 455 n.31 ("In other words, in determining the fairness,

reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate

court on review, should reach ultimate conclusions on the issues of fact and law underlying the

dispute.").

     Where, as here, experienced counsel representing many interested parties have extensively

negotiated the Settlement at arm's length, a strong initial presumption is created that the

compromise is fair and reasonable.  *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th

Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large degree on the

judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.

*Reed v. GMC*, 703 F.2d at 175.  Thus, if experienced counsel determine that a settlement is in the

class's best interests, "the attorney's views must be accorded great weight."  *Pettway*, 576 F.2d at

1216; *see also OCA*, 2008 WL 4681369 at *11 (Where there is "no reason to doubt [the]

fairness" of the settlement and it "appears to fall within the range of possible approval, the court

should grant preliminary approval."); *In re Train Derailment Near Amite Louisiana on October*

*12, 2002*, 2006 WL 644494, *1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class

settlement negotiated at arm's length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

Moreover, the Court is not required at this point to make a determination as to whether the settlement should be finally approved.  As stated in the MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632:  "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Generally, "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  *Id*.  Although non-binding, the preliminary approval establishes "an initial presumption of fairness."  *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. Oct.15, 2009); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.25.

The Knauf Settlement before the Court is the product of extensive arm's length negotiations between counsel for the Parties, which culminated in a preliminary agreement.  The parties negotiated the terms of the Knauf Settlement in detail, and the parties each made concessions and won positions on difficult issues.  Therefore, the Settlement should be preliminarily approved.

At the Fairness Hearing, any Class Members who have timely filed and served a notice of intention to appear may voice any objections.  The Court can then consider the merits of the Settlement in light of any objections and determine whether to grant final approval of the Settlement.  At the Fairness Hearing, the Parties will have submitted briefs and other documents in support of the Settlement.  If the Court finds the Knauf Settlement to be fair and reasonable, the Court should enter a Final Judgment and Order of Dismissal with Prejudice, dismissing this

action with prejudice as to the Knauf Defendants and effecting a release of all claims against the Knauf Defendants as provided for in the Settlement Agreement.

## IV.   CONCLUSION

The Parties respectfully request that this Court find preliminarily that the Knauf Settlement is fair, reasonable and adequate, and that notification to Class Members of the terms of the Settlement and their rights in connection with the Settlement is warranted.  The Parties seek entry of an Order:  (1) preliminarily approving the Knauf Settlement; (2) conditionally certifying the Settlement Class as set forth in the Preliminary Approval Order; (3) approving the form of Notice to the Class; (4) scheduling the Fairness Hearing; and (5) staying claims against the Knauf Defendants and claims against any Defendant involving KPT Chinese Drywall.

Respectfully submitted,

Dated: December 20, 2011

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
 MATTHEWS, MARTINEZ, GONZALES,
 KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## PROPOSED SETTLEMENT CLASS COUNSEL

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

Russ M. Herman, Esquire (Bar No. 6819)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Rherman@hhkc.com

## PROPOSED SUBCLASS COUNSEL

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALES,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com
*Proposed Subclass Counsel for the
Residential Owner Subclass*

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com
*Proposed Subclass Counsel for the Tenant
Subclass*

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
  & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com
*Proposed Subclass Counsel for the
Commercial Owner Subclass*

**THE KNAUF DEFENDANTS**

Kerry J. Miller (Bar No. 24562)
Kyle A. Spaulding (Bar No. 29000)
Paul C. Thibodeaux (Bar No. 29446)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Phone:  (504) 599-8194
Fax:  (504) 599-8145
kmiller@frilot.com

Steven Glickstein
Gregory J. Wallance
Jay P. Mayesh
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Phone:  (212) 836-8485
Fax:  (212) 836-6485
sglickstein@kayescholer.com