UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL<br>           PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047<br><br>SECTION:  L |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| _____/ | |

**THE HOMEBUILDERS' STEERING COMMITTEE'S RESPONSE TO JOINT
MOTION OF PROPOSED SETTLEMENT CLASS COUNSEL, THE PSC, AND THE
KNAUF DEFENDANTS FOR AN ORDER: (1) PRELIMINARILY APPROVING THE
KNAUF SETTLEMENT; (2) CONDITIONALLY CERTIFYING A SETTLEMENT
CLASS; (3) ISSUING CLASS NOTICE; (4) SCHEDULING A FAIRNESS HEARING;
AND (5) STAYING CLAIMS AGAINST THE KNAUF DEFENDANTS**

The Homebuilders' Steering Committee hereby submits the Homebuilders' response to the Joint Motion of Proposed Settlement Class Counsel, The PSC, and the Knauf Defendants for an Order: (1) Preliminarily Approving the Knauf Settlement; (2) Conditionally Certifying a Settlement Class; (3) Issuing Class Notice; (4) Scheduling a Fairness Hearing; and (5) Staying Claims Against the Knauf Defendants ("Motion to Approve Knauf Settlement") [D.E. 12061-3], and in support thereof states as follows:

**Introduction**

On December 20, 2011, the Plaintiffs' Steering Committee ("PSC") and Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT"); Knauf Plasterboard (Wuhu) Co., Ltd.; Guandong Knauf New Building Material Products Co., Ltd.; Knauf Gips KG; Gebr. Knauf Verwaltungsgesellschaft, KG; Knauf International GmbH; Knauf Insulation GmbH; Knauf UK GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltda.; and PT Knauf Gypsum Indonesia (collectively, the "Knauf Defendants"), jointly filed their Motion to Approve Knauf Settlement, asking this Court to approve the "Settlement Agreement Regarding Claims Against the Knauf

Defendants in MDL No. 2047" (the "Proposed Knauf Settlement").  The Proposed Knauf Settlement, in a very broad sense, is intended to resolve all claims arising from filed actions that relate to the presence of drywall manufactured by KPT in properties in the United States, Proposed Knauf Settlement, §1.1.2, but is fully contingent on literally hundreds of parties and their insurers entering into a "Prospective Insurer Agreement" with yet-to-be-negotiated terms at some unknown date in the future.   Proposed Knauf Settlement, §2.1.  To ask parties to make opt-out decisions on the Proposed Knauf Settlement before that Prospective Insurer Agreement is negotiated and presented to the parties is simply unfair and unreasonable.

In what has become an all too common occurrence in this MDL, the PSC has purported to reach a settlement that could significantly impact the rights of many parties, including the Homebuilders, without inviting these parties to the negotiation table.  As a result of the failure to involve Homebuilders in these discussions, there are a number of ambiguities, inconsistencies, and unanswered questions in the Proposed Knauf Settlement.  Had the PSC and the Knauf Defendants invited the Homebuilders to participate in this process, many, if not all, of these issues could have been addressed before the settlement agreement was finalized.

Through conversations with both the PSC and counsel for the Knauf Defendants, the Homebuilders have attempted to clarify the intended meaning of a few of the more significant ambiguous provisions in the Proposed Knauf Settlement.  Although the time to lodge formal objections to the Proposed Knauf Settlement will not occur for several months--in connection with a final fairness hearing on the Proposed Knauf Settlement--the Homebuilders file this response to identify and clarify some of those ambiguities.  It is simply not possible at this early stage to consider and address how this Proposed Knauf Settlement will impact each of the

individual Homebuilders in their own unique way, especially given the uncertainties created by the Prospective Insurer Agreement that is only in the infant stages of the negotiation progress.[1]

## Argument

As this Court is aware, the Homebuilders have been instrumental in developing the overall framework for understanding the issues related to defective Chinese-manufactured Drywall ("Chinese Drywall") and its effects on homes, establishing the proper scope of repair work to address and eliminate the effects of Chinese Drywall, and resolving claims with their homeowners and others in the chain of supply of the Chinese Drywall.  To date, the Homebuilders have repaired hundreds, if not thousands, of homes containing Chinese Drywall. Indeed, many Homebuilders began repairing homes long before the PSC was appointed by this Court--and in many cases even before this MDL was created--with no assurances of ever recouping any monies from those ultimately responsible for the KPT drywall discovered in these homes.

The PSC and the Knauf Defendants have now submitted the Proposed Knauf Settlement for preliminary approval.  This settlement purports to resolve all claims arising from filed actions that relate to the presence of drywall manufactured by KPT in properties in the United States, including claims involving the Homebuilders.  Preliminary approval is premature at this time, however, because, by its own terms, the Proposed Knauf Settlement hinges entirely on the subsequent negotiation and execution of a separate "Prospective Insurer Agreement." Proposed Knauf Settlement, §2.1.  Initial discussions with all proposed parties have not yet even begun on this Prospective Insurer Agreement, which the PSC and Knauf Defendants suggest will require releases by all parties of all claims "arising from KPT Chinese Drywall."  Until significant

---

[1] By filing this response, the individual Homebuilders do not waive, and explicitly reserve, their rights to object to, or opt out of, the Proposed Knauf Settlement pursuant to Sections 8 and 9 thereof within the time frame ultimately established by the Court.

progress is made on the Prospective Insurer Agreement, it is premature to approve, even preliminarily, the Proposed Knauf Settlement.

In addition, through a preliminary review of the Proposed Knauf Settlement, the Homebuilders have identified a few significant ambiguities that require clarification by the PSC and the Knauf Defendants. The Homebuilders will attempt to address some of those here.

First, Sections 1.48 and 4.8 of the Proposed Knauf Settlement, among other provisions, could arguably be interpreted as requiring Homebuilders to deposit amounts received from their insurance carriers into the Remediation Fund. Certain Homebuilders have expended tens of millions of dollars repairing homes containing Chinese Drywall, including KPT drywall, and have recovered, are in negotiations to recover, or may in the future engage in negotiations to recover, some portion of this tremendous expense from their insurers. It would be preposterous to suggest that these Homebuilders should be required to deposit these insurance proceeds, which they have received as reimbursement for their performing extensive repairs, to a Remediation Fund to offset some of the costs Knauf will be required to expend remediating homes under the terms of the Proposed Knauf Settlement.[2] However, through conversations with both the PSC and counsel for the Knauf Defendants, the Homebuilders understand that the PSC and the Knauf Defendants do not intend for the Proposed Knauf Settlement to affect or disturb existing or prospective insurer agreements between Homebuilders and their insurers.

Second, Section 4.8.2 of the Proposed Knauf Settlement appears to require that certain amounts recovered by Participating Class Members from the Banner, INEX, or prospective L&W settlements be deposited into the Remediation Fund. This language could arguably be interpreted as requiring the Homebuilders to assign to Knauf amounts they might otherwise be

---

[2]   In addition, certain insurance settlements with homebuilders may include a provision for reimbursement for expenses incurred in connection with the future repair of homes. The Knauf Defendants should not be entitled to the benefit of those monies either unless the Knauf Defendants perform the repair work.

entitled to recover, or may have already recovered, from the Banner, INEX, or prospective L&W settlements. The PSC and counsel for the Knauf Defendants have each confirmed that the Proposed Knauf Settlement was not intended to impact any amounts the Homebuilders have recovered or might be entitled to recover from the Banner, INEX or prospective L&W Settlements, either directly or as assignees of their homeowners' claims.

Third, Section 14.3 of the Proposed Knauf Settlement contemplates that the attorneys' fees provisions in the Proposed Knauf Settlement will "supersede and replace the attorneys' fees and costs arrangements" in other agreements, which could be read to include separate settlement agreements that certain Homebuilders have reached with the Knauf Defendants, and could be read to alter in some way the existing attorneys' fees provisions in the pending Banner and INEX class settlements. The PSC and counsel for the Knauf Defendants have confirmed that the PSC is not seeking attorneys' fees on the separate settlements that certain Homebuilders may have reached with the Knauf Defendants, and have clarified that the existing attorneys' fees provisions in the pending Banner and INEX settlements remain unaffected by Section 14.3 of the Proposed Knauf Settlement. The PSC will continue to seek, for example, an attorneys' fee of 10% of the amounts recovered by homebuilders that are "actively litigating" their claims under the attorneys' fee provision of the pending Banner settlement and an even higher percentage of amounts recovered by homebuilders that are not "actively litigating" these claims. The intent of Section 14.3 of the Proposed Knauf Settlement is for the PSC to seek an attorneys' fee on homes that will be repaired under the Proposed Knauf Settlement or that have been or will be repaired under the Pilot Program or the Major Builder Settlement Agreement. The Homebuilders continue to aggressively object to any claims by the PSC for an allocation of amounts the Homebuilders recover through separate settlement agreements that the PSC had absolutely no

role in negotiating or effecting.

Fourth, the Proposed Knauf Settlement introduces potential conflicts with regard to class membership. For example, the InEx and Banner settlements, as currently before the Court, are designed to resolve the claims of all persons or entities with claims against them. The Proposed Knauf Settlement, on the other hand, only applies to those claimants with a filed case as of December 9, 2011--a cutoff date that was not disclosed to the Homebuilders prior to the PSC's announcement of the terms of this Proposed Knauf Settlement. This inconsistency in class delineation creates a situation where certain repairing Homebuilders with assignments from homeowners are members of the InEx and/or Banner Settlement for homes that contain KPT drywall, but did not file an action against the Knauf Defendants as of December 9, 2011. Under the InEx and Banner settlements, these Homebuilders (or the homeowners) will be entitled to allocation of a portion of the Settlement Funds under those agreements, but under the Proposed Knauf Settlement, they are not. Yet the Proposed Knauf Settlement purports to require that Settlement Funds from the InEx and Banner Settlements attributable to homes with KPT drywall be deposited into the Remediation Fund. In addition to providing a windfall to the Knauf Defendants, this conflict is inconsistent with the terms of the InEx and Banner settlements and not addressed by the terms of the Proposed Knauf Settlement.

Fifth, the bar order contemplated by Section 12 of the Proposed Knauf Settlement Agreement is broadly defined in paragraph 12.1, but is significantly limited by the language in paragraph 12.2. Paragraph 12.1 purports to enjoin "any and all pending or future claims against the Knauf Defendants and Other Releasees arising from, or otherwise relating to KPT Chinese Drywall." This broad, sweeping provision would suggest that all claimants, regardless of whether they are "Participating Class Members" (but excluding Class Members that that opt-out

of the Proposed Knauf Settlement), would be forever enjoined from asserting claims against the Knauf Defendants.  However, paragraph 12.2 appears to narrow the reach of the bar order to enjoin only claims by "Participating Class Members" or claims by other entities or persons that arise out of the Participating Class Members' claims.  The Homebuilders understand that the bar order is, in fact, intended to be limited pursuant to the terms of paragraph 12.2, but this should be clarified by the PSC and the Knauf Defendants in advance of any deadlines for objections or opt-outs.  Moreover, the stay order contained in Paragraph 18 of the proposed Preliminary Approval Order is as unfairly broad as Paragraph 12.1 of the Proposed Knauf Settlement.  Paragraph 18 should be completely stricken.

Although the Homebuilders have received verbal clarification from both the PSC and counsel for the Knauf Defendants of their intentions regarding the majority of these issues, the Homebuilders request that the Proposed Knauf Settlement be modified to eliminate these ambiguities or, at a minimum, that the PSC and Knauf Defendants confirm their positions on these four issues in writing.  As the Homebuilders continue to analyze this Proposed Knauf Settlement, and as the parties begin to engage in negotiations over contingent side agreements, such as the Prospective Insurer Agreement, the Homebuilders may well have additional questions about and/or objections to the Proposed Knauf Settlement.  The Homebuilders request that the Court (i) defer ruling on the request for preliminary approval of the Proposed Knauf Settlement until agreement is reached, or at least significant progress is made, on the Prospective Insurer Agreement or, (ii) set the date for opt-outs and objections to the Proposed Knauf Settlement no sooner than 30 days following the filing and serving of the Prospective Insurer Agreement.

Dated: December 29, 2011               Respectfully submitted,

**STONE PIGMAN WALTHER WITTMANN**  
*Local Lead Counsel for the HSC*  
546 Carondelet Street  
New Orleans, LA 70130  
Telephone: (504) 593-0804  
Facsimile: (504) 593-0804  
E-mail: pwittmann@stonepigman.com

By:   */s/ Phillip A. Wittmann*  
     PHILLIP A. WITTMANN  
     Louisiana Bar No. 13625

**GREENBERG TRAURIG, P.A.**  
*Lead Counsel for the HSC*  
1221 Brickell Avenue  
Miami, Florida 33131  
Telephone: (305) 579-0500  
Facsimile: (305) 579-0717  
Email: bassh@gtlaw.com

By:   */s/ Hilarie Bass*  
     HILARIE BASS  
     Florida Bar No. 334323  
     MARK A. SALKY  
     Florida Bar No. 058221

**SIVYER BARLOW & WATSON**  
*Member of the HSC*  
100 S Ashley Drive, Suite 2150  
Tampa, FL 33602  
Telephone: (813) 221-4242  
Facsimile: (813) 227-8598  
Email: nsivyer@sbwlegal.com

By:   */s/ Neal Allen Sivyer*  
     NEAL A. SIVYER  
     Florida Bar No. 373745

**KING & SPALDING LLP**  
*Member of the HSC*  
1180 Peachtree Street, NE  
Atlanta, GA 30309  
Telephone: (404) 572-4600  
Facsimile: (404) 572-5100  
Email: kbuster@kslaw.com

By:   */s/ J Kevin Buster*  
     J. KEVIN BUSTER  
     Georgia Bar No. 099267

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 29, 2011, this document has been served on Plaintiffs' Liaison Counsel, Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., Homebuilders' Liaison Counsel, Dorothy Wimberly, Esq., and Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq., by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6.

/s/ Hilarie Bass
Hilarie Bass