# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES AND | JUDGE FALLON MAG. JUDGE WILKINSON |

*Payton, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-07628 (E.D. La.)**

*Gross, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-06690 (E.D. La.)**

*Rogers, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:10-cv-00362 (E.D. La.)**

*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 2:11-cv-00252 (E.D. La.)**

*Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-1363 (E.D. La.)**

*Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-2349 (E.D. La.)**

*Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-3023 (E.D. La.)**

*Vickers, et al. v. Knauf Gips KG, et al.*
**Case No. 2:09-cv-04117 (E.D. La.)**

# OMNIBUS RESPONSE OF PROPOSED SETTLEMENT CLASS COUNSEL, THE PSC, AND THE KNAUF DEFENDANTS TO THE OBJECTIONS TO THEIR JOINT MOTION FOR AN ORDER:  (1) PRELIMINARILY APPROVING THE KNAUF SETTLEMENT; (2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS; (3) ISSUING CLASS NOTICE; (4) SCHEDULING A FAIRNESS HEARING; AND (5) STAYING CLAIMS AGAINST THE KNAUF DEFENDANTS

I.    **INTRODUCTION**

On December 20, 2011, the Court-appointed Plaintiffs' Steering Committee (the "PSC") finalized an unprecedented global class action settlement agreement with the Knauf Defendants[1] that will provide complete remediation benefits for thousands of homeowners and commercial owners of property containing KPT Chinese Drywall.  The Settlement will compensate these owners as well as tenants who rent property containing KPT Chinese Drywall for certain economic losses, personal property damage and bodily injury claims.  The Settlement Class includes all Residential Owners, Commercial Owners, and Tenants who alleged KPT Chinese Drywall claims in filed actions in the Litigation as of December 9, 2011.  The Settlement Class does not include builders, developers, suppliers, installers, importers, distributors or their insurers.

The Knauf Settlement creates an uncapped Remediation Fund (with an initial deposit by the Knauf Defendants of $200 million, plus additional deposits as necessary) designed to provide complete remediation benefits and/or cash payments to Residential and Commercial Owners of property damaged by KPT Chinese Drywall.  The Knauf Settlement also creates an Other Loss Fund of $30 million (plus additional deposits of 50% of the net amounts recovered from insurers to settle KPT Chinese Drywall claims under a Prospective Insurance Agreement that is being negotiated) to compensate Residential Owners, Commercial Owners and Tenants for alternative living expenses, certain economic losses, such as carrying costs and lost equity resulting from foreclosures and short sales, personal property damage and bodily injury claims.  Finally, the

---

[1]  The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

Knauf Settlement, upon Court approval, will create a fund of $160 million for attorneys' fees and costs, including individual Class Members' inspection costs.

A condition precedent to the Knauf Settlement is the finalization of the Prospective Insurance Agreement.[2]  It is anticipated that the final Fairness Hearing on the Knauf Settlement will take place at the same time as the fairness hearing on this Insurance Agreement and that Knauf Class Members will be given an opportunity to review and assess the agreement prior to the end of the opt-out/objection period.  The structure for the global settlement of KPT Chinese Drywall claims against the Knauf Defendants necessarily involves the additional settlements of KPT Chinese Drywall claims against Banner, InEx, L&W, remediating builders, insurers for non-remediating builders and installers.  Many of these building blocks for a global resolution of KPT Chinese Drywall claims are already in place or in the process of being finalized.

•       The Banner class settlement, which creates a fund of $53,081,572.30 for the benefit of "all persons or entities with claims against the Banner Supply Co. and/or its insurers arising from, or otherwise related to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner," was preliminarily approved by the Court on August 11, 2011.[3]  Notice of the Banner settlement has been disseminated to the Banner class, and the Parties intend for the fairness hearing on the Banner settlement to take place at the same time as the Knauf Fairness Hearing.[4]

•       The InEx class settlement, which creates a fund of $8 million of primary insurance

_____

[2]  Settlement Agreement, Section 2.1.

[3]  Rec. Doc. No. 10064.

[4]  *See* Rec. Doc. No. 11910.

and assigns to the class the right to pursue an additional $72 million of excess insurance from The North River Insurance Company ("North River") for the benefit of "all persons or entities with claims against InEx and/or its primary insurers arising from, or otherwise related to, Chinese Drywall sold, marketed, distributed and/or supplied by InEx," was preliminarily approved by the Court on May 13, 2011.[5]  Notice of the InEx settlement has been disseminated to the InEx class, and the Parties intend for the fairness hearing on the InEx settlement to take place at the same time as the Knauf Fairness Hearing.[6]

•       A class settlement of Chinese Drywall claims against L&W Supply Company will be finalized in the near future.

•       The remediating builders have entered into settlements with the Knauf Defendants via the Major Builder Agreement.[7]

•       The Prospective Insurance Agreement that is being negotiated with certain insurers of parties in the supply chain will be finalized in the near future.

It is important to cement each block of the overall, global settlement structure when it is ready in order to provide support for the next building blocks, and to prevent the prior blocks from crumbling.  The Knauf Settlement Agreement is the foundation for the entire structure, and is by far the largest portion of the settlement of KPT Chinese Drywall claims.  The best assurance that the Banner and InEx agreements will stay in place – and the best assurance of the timely completion of the North River portion of InEx settlement, and of the L&W class settlement and

---

[5]  Rec. Doc. No. 8818.

[6]  *See* Rec. Doc. No. 11911.

[7]  *See* Settlement Agreement, Section 1.33.

4

the Prospective Insurer Agreement is the preliminary approval of the Knauf Agreement.  If any class member – as opposed to a non-class member – feels that the opt-out and objection deadlines of the Knauf Agreement need to be extended to accommodate the other pieces of this settlement, that can be addressed if and when such a request is made, but that should not hold up preliminary approval of the Knauf Agreement, which is the centerpiece for global resolution.

The Parties have filed a Joint Motion for an Order:  (1) Preliminarily Approving the Knauf Settlement; (2) Conditionally Certifying a Settlement Class pursuant to FEDERAL RULES OF CIVIL PROCEDURE 23(a), 23(b)(3) and 23(e); (3) Issuing Class Notice; (4) Scheduling a Fairness Hearing; and (5) Staying Claims Against the Knauf Defendants and Claims Against any Defendant involving KPT Chinese Drywall.[8]

## II.   OBJECTIONS TO THE KNAUF SETTLEMENT

The Court scheduled a hearing on the Joint Motion for preliminary approval of the Knauf Settlement for January 4, 2012, and permitted the filing of objections thereto on or before December 28, 2011.[9]  Out of thousands of Knauf Class Members, all of whom are represented by or have access to counsel in filed Omnibus and individual actions,[10] not a single objection was filed by any residential homeowner, commercial building owner or tenant in the Litigation.  In other words, **no Knauf Class Member has objected to preliminary approval of the Knauf**

---

[8]  Rec. Doc. No. 12080.

[9]  Rec. Doc. No. 12065.

[10]  On November 22, 2011, the Court appointed Robert M. Johnston as the curator for *pro se* litigants in the MDL pursuant to Fed.R.Civ.P. 53 and the Court's inherent authority [Rec. Doc. No. 11327].  Mr. Johnston's duties include "[e]xplaining to *pro se* claimants the important deadlines in the settlement agreements and their options regarding prosecution of their claims, including whether to participate in the class settlements or not." *Id*. at 2.

5

**Settlement**.

In response to the Court's order, only seven separate objections were lodged. The following non-settling co-defendants in the Litigation filed objections to preliminary approval: (1) Southern Homes[11]; (2) Home Depot USA, Inc. ("Home Depot")[12]; (3) Centerline[13] and Cornerstone,[14] jointly; (4) 84 Lumber Company[15]; and (5) North River.[16] In addition, one defendant that settled its claims in the Litigation as part of a separate but related class action, Banner Supply Co., filed a response and opposition that primarily seeks clarification of certain points.[17] Finally, the Homebuilders' Steering Committee ("HBSC"), which is not even a party in the Litigation,[18] filed a response that does not raise any substantive objections but rather attempts

---

[11] Builder-Defendants Southern Homes, LLC, Tallow Creek, LLC, and Springhill, LLC (collectively, "Southern Homes") filed a joint objection [Rec. Doc. No. 12090].

[12] Rec. Doc. No. 12096.

[13] Builder-Defendants Centerline Homes, Inc., Centerline Homes Construction, Inc., Completed Communities II, LLC, Centerline Homes at Georgetown, LLC, Centerline Homes at Delray, Inc., and Briella Townhomes, LLC (collectively, "Centerline") filed a joint objection with Cornerstone [Rec. Doc. No. 19093], joining in and adopting the objection of the Homebuilders' Steering Committee.

[14] Builder-Defendants Cornerstone Group Construction, Inc., Boynton Village, LLC, and Hollywood Dixie Associates, LLC (collectively, "Cornerstone") filed a joint objection with Centerline [Rec. Doc. No. 19093]. *See* fn. 13, *supra*.

[15] Rec. Doc. No. 12087.

[16] Rec. Doc. No. 12088.

[17] Settling Defendants Banner Supply Company, Banner Supply Company Pompano, LLC, Banner Supply Company Fort Myers, LLC, Banner Supply Company Tampa, LLC, Banner Supply Company Port St. Lucie, LLC, and Banner Supply International, LLC (collectively, "Banner") filed a joint objection [Rec. Doc. No. 12085].

[18] The HBSC is a Court-appointed entity consisting of counsel for Homebuilders.

to identify some ambiguities.[19]  <u>None of these Objectors is a Knauf Class Member.  None of the</u> <u>Objectors has set forth any evidence of legal harm to their interests.</u>

Most of the Objectors do not raise any substantive arguments but complain that they did not have enough time to review the Agreement and there are too many contingencies in the Agreement (*i.e.*, the Prospective Insurance Agreement has not been finalized) in order to properly prepare a response. Distributor-Defendant 84 Lumber does not actually object to the Settlement, but asserts that it "is unable to determine whether it currently possesses any objection to the Agreement."[20]  The HBSC, joined by Centerline and Cornerstone, seeks clarification that its rights are not impacted adversely by the Settlement.  North River is concerned that the "Knauf settlement appears to be releasing claims asserted by North River against the Knauf Defendants without [its] consent."[21]  Southern Homes raises the same objections to a stay of litigation against KPT Chinese Drywall claims that it has on appeal to the Fifth Circuit with respect to the InEx settlement.  And, Banner seeks clarification about the rights of Banner class members, its claims against the Knauf Defendants and the requested stay of Litigation.

Most importantly, the Objectors have not shown any legal prejudice to their interests resulting from the Knauf Agreement.  Accordingly, all of the Objectors lack standing to object to preliminary approval of the Settlement, and, therefore, their objections should be summarily dismissed.  As discussed below, none of the objections presents valid grounds to halt the <u>preliminary</u> approval process.  The Parties submit that the Knauf Settlement easily satisfies the threshold for a preliminary fairness evaluation to warrant both the dissemination of notice to the class and the scheduling of a final fairness hearing

---

[19]  Rec. Doc. No. 12095.

[20]  84 Lumber Objection at 2.

[21]  North River Objection at 1.

where any objections on the merits may be heard.

This Omnibus Response addresses the preliminary approval objections to the Knauf Settlement, all of which were filed by entities that are not members of the putative class.

## III.   ARGUMENT

### A.   The Objectors Are Not Members of the Knauf Settlement Class and They Have No Standing to Object to Preliminary Approval.

#### 1.   The Knauf Settlement Class includes only Residential Owners, Commercial Owners and Tenants.

The Knauf Settlement Class consists of: "All persons or entities who, as of the December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (*i.e.*, not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit."[22]   The Knauf Settlement Class has three subclasses: (1) the Residential Owner Subclass; (2) the Commercial Owner Subclass; and (3) the Tenant Subclass, which are defined as follows:

(1)   **The Residential Owner Subclass** consists of:

All members of the Class who are owners of and reside or have resided in Affected Property ("Residential Owners"). The Residential Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall. The Residential Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for

---

[22]   Settlement Agreement, Section 1.1.2. The following persons or entities are members of the Knauf Class, but only for the purpose of obtaining benefits under the Other Loss Fund and *not* under the Remediation Fund, as those Class Members' Remediation Claims already have been or will be resolved outside the Settlement: (i) any Class Member who has settled claims against the Knauf Defendants under the Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall ("Pilot Program"); (ii) any Class Member whose Affected Property has been remediated under a Major Builder Settlement Agreement; and (iii) any Class Member whose Affected Property has been remediated under a settlement with a Builder or Supplier (including claims assigned by Class Members that were later settled by the assignee).

former owners who lost Affected Properties due to foreclosure or sold Affected Properties in a Short Sale to avoid foreclosure.

(2)     **The Commercial Owner Subclass** consists of:

All members of the Class who are owners of Affected Property for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business and who do not reside in the Affected Property ("Commercial Owners").  The Commercial Owner Subclass shall not include Owners, other than Mortgagees, who acquired Affected Properties through foreclosure with knowledge that the properties contained KPT Chinese Drywall, except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties in a Short Sale to avoid foreclosure.

(3)     **The Tenant Subclass** consists of:

All members of the Class who rent Affected Property.

The Knauf Settlement Class includes Multiple Unit Property Governing Bodies to the extent that any unit(s) of a Multiple Unit Property is the subject of a filed lawsuit in the Litigation.

Significantly, the Knauf Settlement Class does **not** include any builders, developers, suppliers, installers, importers, distributors or insurers with KPT Chinese Drywall claims.  In this respect, the Knauf Settlement differs from the other class settlements reached in this MDL.

For example, the Banner class includes:  "All persons or entities with claims, known and unknown, against [Banner and its insurers] arising from, or otherwise related to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner."[23]  Thus, the Banner class necessarily includes builders, distributors, installers, etc., who have Chinese Drywall claims, known and unknown, against Banner and its insurers.

The InEx class includes:  "All persons or entities with claims, known and unknown, against the

---

[23]   *See* Banner Preliminary Approval Order, ¶ 3 [Rec. Doc. No. 10064].

Settling Defendants [defined as InEx, its primary insurers and subsuppliers, general contractors, subcontractors, installers, developers, and realtors who purchased or received Chinese Drywall from InEx], arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx."[24]   Builders are expressly excluded from the definition of Settling Defendants under the InEx Agreement, and, as a result, are included in the InEx class.[25]

In contrast, the Knauf Settlement Class does not include any builders, suppliers or distributors of KPT Chinese Drywall or their insurers, such as Objectors Home Depot, Centerline, Cornerstone, Southern Homes, 84 Lumber, Banner, or North River.  Said parties are not Class Members and they have no standing to object to this Settlement.[26]

>    **2.      Non-settling builders, suppliers, distributors, and insurers cannot show legal prejudice or harm to their rights with respect to any claims they may may have against the Knauf Defendants.**

It is well settled that non-class members, such as the Objectors here, have no standing to object to a class settlement.  The law is clear that "only class members have an interest in the settlement funds, and therefore only class members have standing to object to a settlement."  *Feder v. Electronic Data Systems, Corp.*, 248 Fed Appx. 579, 580 (5th Cir. 2007).  The reasoning for this is that "[a]nyone else lacks the requisite proof of injury necessary to establish the 'irreducible minimum' of standing."  *Id.*; *Paterson v. Texas*, 308 F.3d 448, 451 (5th Cir. 2002) (holding that the state of Texas lacked standing to object to class action settlement because it had not suffered an injury); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284

---

[24]   *See* InEx Preliminary Approval Order [Rec. Doc. No. 8818]; InEx Settlement Agreement, Sections 1.10, 1.30.

[25]   InEx Settlement Agreement, Section 1.10 ("Builders shall not be Downstream InEx Releasees.").

[26]   In the case of the HBSC, this objector is not even a party to the Litigation.

(4th Cir. 1989) (noting that "[t]he plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals"); *Tenn. Ass'n of Health Maintenance Orgs., Inc. v. Grier*, 262 F.3d 559, 566 (6th Cir. 2001) (holding that, under Fed. R. Civ. P. 23(e), non-class members do not have standing to object to alleged lack of notice given to class members); *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 923 (S.D.N.Y. 1991) (noting that only class members have standing to object to class settlement), *aff'd*, 960 F.2d 285 (2d Cir.1992); *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 974-75 (E.D. Tex. 2000) (noting that objector who failed to substantiate his membership in the class did not have "proper standing" to object to class action settlement); William B. Rubenstein, Alba Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11:55 (4th ed.) ("[A]s a general rule, only class members have standing to object to a proposed settlement.").

In particular, non-settling defendants have no standing to object to preliminary approval.  The general rule is that "a non-settling defendant . . . is not prejudiced by the settlement and therefore has no standing to complain about the settlement."  *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 172 (5th Cir. 1979), *cert. denied*, 452 U.S. 905 (1981); *Agretti v. ANR Freight System, Inc.*, 982 F.2d 242, 246 (7th Cir. 1992) ("a non-settling party does not have standing to object to a settlement between other parties."); *In re Vioxx Products Liability Litigation*, 388 Fed. Appx. 391, 395 (5th Cir. 2010) ("This court has recognized that, in the context of class settlements, non-settling parties generally have no standing to challenge the settlement.").  Specifically with respect to complex proceedings, "non-settling defendants in a multiple defendant litigation context have no standing to object to the fairness or adequacy of the settlement by other defendants."  2 NOCA § 11.54 (2d ed. 1985).  *See In re Viatron Computer Systems Corp. Litig.*, 614 F.2d 11, 14 (1st Cir.), *cert. denied*, 449 U.S. 826 (1980).

The only exception to this rule occurs where the non-settling defendant can show "cognizable

11

prejudice to a legal relationship between it and the settling parties." *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1087 (3d Cir. 1980) (non-settling party may not object to settlement terms that do not affect its own rights); *In re School Asbestos Litigation*, 921 F.2d 1330, 1333 (3d Cir. 1990), *cert. denied*, 499 U.S. 976 (1991); *Utility Contractor's Ass'n of New Jersey v. Toops*, 507 F.2d 83, 85 (3d Cir. 1975) (non-settling parties have no standing to object to partial settlement where they demonstrated no interference with any legal relationship between them and the settling parties); *Alumax Mill Prods., Inc. v. Congress Fin. Corp. of Am.*, 912 F.2d 996, 1002 (8th Cir. 1990); *Waller v. Financial Corp. of Am.*, 828 F.2d 579, 582-83 (9th Cir. 1987); *New Mexico ex rel. Energy and Mineral Dep't v. United States Dep't of Interior*, 820 F.2d 441, 445 (D.C. Cir. 1987); *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1165 (5th Cir. 1985); *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983); *Beef Industry,* 607 F.2d at 172.

For example, where "the settlement agreement strips non-settling parties of rights to contribution or indemnity, or in some other manner results in 'plain legal prejudice' to a non-settling party," standing may be achieved. *Vioxx*, 388 Fed. Appx. at 395 (citations omitted); *Transam. Refining Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992); *Agretti*, 982 F.2d at 246-47; *Bass v. Phoenix Seadrill*, 749 F.2d at 1160 n.10 (stating that the court may consider "an attempt by a non-party to the settlement to void portions of the agreement that purport to affect the rights of non-settlors"). In this case, the Knauf Settlement contains judgment reduction provisions requiring Participating Class Members to "satisfy any judgment to the extent necessary (under applicable state law whether it be *pro rata*, *pro tanto* and/or set-off) to extinguish any claims for contribution, indemnity (common law or contractual), and/or

subrogation whether arising out of tort, contract or otherwise, by the other alleged tortfeasors."[27]  Thus, the non-settling defendants' rights against the Knauf Defendants are not prejudiced by the Agreement. *See School Asbestos Litig.*, 921 F.2d at 1333.

Courts have made clear that "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice."  *Agretti*, 982 F.2d at 247; *Vioxx*, 388 Fed. Appx. at 395; *Quad/Graphics*, 724 F.2d at 1233-34.  Here, the Objectors have only speculated that they might in some way be adversely impacted by the Knauf Settlement, but they have offered no evidence of any concrete harm.  Home Depot objects to the bar order "to the extent that it prejudices any right of Home Depot," but, as shown above, there is no prejudice to any of the Objectors from the bar order.[28]  Centerline and Cornerstone claim that "there are too many contingencies, ambiguities and uncertainties" in order for them "to make a reasonably informed decision" about the Settlement.[29]  Objector 84 Lumber asserts that it "is unable to determine whether it currently possesses any objection to the Agreement."[30]  The HBSC has suggested that the Knauf Settlement "could arguably be interpreted as requiring" builders to deposit their insurance monies and/or Banner or InEx recoveries into the Remediation Fund.[31]  However, the plain language of the Knauf Settlement Agreement demonstrates that there is no such requirement.  The obligations imposed under the Agreement affect only Participating Class Members, who are Residential Owners, Commercial Owners, and Tenants, and

---

[27]  Settlement Agreement, Sections 5.2.4, 5.2.5, 5.2.6.

[28]  Home Depot Objection at 3.

[29]  Centerline and Cornerstone Objection at 1.

[30]  84 Lumber Objection at 1.

[31]  HBSC Objection at 4-5.

not builders or other non-settling defendants.

The concerns of the HBSC and others do not rise to the level of any legal harm.  The Objectors plainly have not shown and cannot show any prejudice to their legal interests.  Therefore, they have no standing to object.

**B.    Banner's Concerns Should Not Halt the Preliminary Approval Process.**

In response to the Joint Motion for preliminary approval, Banner raises five issues that it wishes to "clarify and confirm" concerning the proposed Settlement.[32]  None of the issues should prevent the Court from preliminarily approving the proposed Settlement.  To the extent that any of the issues raised by Banner require clarification, the PSC and the Knauf Defendants will work with Banner's counsel to do so.

First, Banner seeks to "clarify and confirm that Banner's third-party claims will not be released absent further negotiations between the Knauf Defendants and Banner, as set forth in Section 4.8.6 of the Knauf Settlement."[33]  The Settlement Agreement does not contemplate a release of Banner's third-party claims absent negotiations between Banner and the Knauf Defendants.  Rather, as Banner acknowledges, Section 4.8.6 of the Settlement Agreement expressly contemplates negotiations with Banner toward a resolution of Banner's third-party claims and permits the Knauf Defendants to terminate the Settlement should such negotiations be unsuccessful.  It is hoped that the Banner-Knauf negotiations will be successful so that the Banner and Knauf class action settlements will be considered together as an integrated whole, as contemplated by the Knauf Settlement Agreement.

There is one scenario in which the Knauf Settlement would impact Banner's third-party claims,

---

[32]  Banner Objection at 2.

[33]  *Id.* at 3.

but not to the prejudice of Banner:  in the unlikely event that the Banner settlement does not become final and the Knauf Settlement does become final.  In that event, pursuant to the judgment reduction provision (Section 5.2.4), any Class Member who pursues a claim against Banner arising from KPT Chinese Drywall must reduce any judgment it obtains against Banner to extinguish claims for contribution, indemnity and/or subrogation.  *See School Asbestos Litig.*, 921 F.3d at 1333 (judgment reduction provision in "settlement agreement in this case specifically recognizes the existence of indemnification and contribution rights of non-settling defendants and the Order approving the settlement [which barred non-settling defendants from pursuing contribution or indemnity claims against settling defendants] contains no ruling purporting to limit any claims non-settling defendants may have").  Even in that scenario, however, Banner's direct claims against the Knauf Defendants for business interruption and reputational loss would be unaffected by the Knauf Settlement, absent a separate agreement between Banner and the Knauf Defendants.

Second, Banner contends that the stay of litigation against the Knauf Defendants requested by the Parties and the bar order described in Section 12.2.2 should not apply to Banner's third-party claims against the Knauf Defendants because Banner is not a Class Member or a party to the Settlement Agreement.[34]  This issue may be academic in the short term, since Banner has advised that it is willing to enter into a consensual short term stay to give Banner and the Knauf Defendants an opportunity to resolve their differences.  Nevertheless, a stay of Banner's third-party claims is justified as Banner itself will benefit from the requested stay in favor of the Knauf Defendants.  That is because the Class includes plaintiffs in all cases involving KPT Chinese Drywall regardless of whether a Knauf Defendant is a party.  As a result, entry of such a stay would stay all litigation arising from KPT Chinese Drywall claims against

---

[34] *Id.* at 3-4.

15

Banner - including pending trials against Banner in Florida state court.  Since there will be a stay of claims against Banner involving KPT Chinese Drywall, a stay of Banner's claims arising from KPT Chinese Drywall also is justified.  If litigation proceeds against Banner notwithstanding the stay, Banner can seek relief from the stay subject to the Knauf Defendants' right to consider their position based on the particular facts and circumstances.

Third, Banner seeks to clarify that claimants may participate in the Banner settlement and opt out of the Knauf Settlement.[35]  It is important to note that the composition of the Banner class is not identical to the Knauf Class.  There will be Banner class members who are not eligible to participate in the Knauf Settlement because they did not assert KPT Chinese Drywall claims, because they are not an Owner or Tenant and/or because they did not file an action as a named plaintiff in the Litigation on or before December 9, 2011.  For those Banner class members who are also in the Knauf Class, Section 4.8.2.1 of the Settlement Agreement requires that any Class Member who participates in the Knauf Settlement also participate in the Banner settlement.  In order to provide Knauf Class Members (*i.e.*, Residential and Commercial Owners) with complete remediation benefits, the Settlement provides a mechanism for them to assign their rights to recovery from the Banner and InEx settlements to Knauf to the extent they relate to KPT Chinese Drywall.  Banner and InEx class members are *not required* to participate in the Knauf Settlement, but if they choose to receive remediation benefits, they must remain in the Banner and InEx classes and assign their recoveries from those settlements (to the extent they relate to KPT Chinese Drywall) to Knauf or deposit those recoveries into the Remediation Fund.  This will eliminate any double recovery of remediation benefits for Class Members' properties containing KPT Chinese Drywall.

Fourth, Banner seeks to clarify that its right to claim offsets under Florida law to any judgment

---

[35]  *Id.*

entered against it in the amount of compensation paid by Knauf to the plaintiff who obtains such a judgment is not limited by the Settlement. The judgment reduction provision in Section 5.2.4 expressly provides that Banner would be entitled to claim such setoffs.

Fifth, Banner seeks to clarify that the Settlement will not be used to shield assets of Knauf Insulation in the United States from third parties. Nothing in the Settlement Agreement purports to do that. The Settlement Agreement provides that Knauf Insulation will grant a first-priority lien and security interest in certain Pledged Assets and Mortgaged Property to Settlement Class Counsel to secure the Knauf Defendants' payment obligations under the Settlement Agreement. Under Section 17.1.9, such Pledged Assets and Mortgaged Property cannot be used to satisfy the claims of any non-Class Member or Class Member who opts out of the Settlement. The lien and security interest in those assets and property will terminate when the Knauf Defendants make all required payments, after which they will no longer be Pledged Assets and Mortgaged Property and will be available to secure any judgment against Knauf Insulation, if a party can obtain a judgment against that entity. Moreover, nothing in the Agreement creates a security interest or otherwise impairs non-pledged assets of Knauf Insulation.[36]

## C.     The HBSC's Concerns Should Not Halt the Preliminary Approval Process.

In its response, the HBSC seeks "to identify and clarify some … ambiguities,"[37] many of which the HBSC already has discussed with the PSC and the Knauf Defendants. None of these issues should

---

[36] By contrast, the pledged Knauf Investment Assets are assets that are being brought into or acquired in the United States solely for the purpose of securing the Knauf Defendants' payment obligations under the Settlement Agreement. Those assets should not be available for any other purpose to any non-Class Member or Class Member who opts out of the Settlement. For that reason, Section 1.43(vi) provides that an Order and Judgment certifying the Settlement Class and approving the Settlement also will enjoin such individuals or entities from seeking to execute or otherwise exercise remedies against the Knauf Investment Assets.

[37] HBSC Objection at 2.

prevent the Court from preliminarily approving the proposed Settlement. To the extent that any of the issues raised by the HBSC requires clarification of the Settlement Agreement, the PSC and the Knauf Defendants will work with the HBSC's counsel to do so.

First, the HBSC seeks to clarify that the Settlement would not require builders that have remediated homes and have recovered insurance funds for that purpose to deposit those amounts into the Remediation Fund. As the HBSC reports, the PSC and the Knauf Defendants both have confirmed that the Settlement Agreement was not intended to achieve that result.[38]

Second, the HBSC seeks to clarify that the Settlement would not require builders that have remediated homes and have a claim to proceeds from the Banner, InEx and/or Prospective L&W settlements to assign those claims or otherwise deposit any such recoveries into the Remediation Fund. As the HBSC reports, the PSC and the Knauf Defendants both have confirmed that the Settlement Agreement was not intended to achieve that result.[39]

Third, the HBSC seeks to clarify the extent of the attorneys' fees provisions in Section 14 of the Settlement Agreement. As the HBSC reports, both the PSC and the Knauf Defendants have confirmed that the PSC is not seeking additional attorneys' fees on separate settlements that certain builders have reached with the Knauf Defendants and that Section 14 does not alter the attorneys' fees provisions in the

---

[38] *Id.* at 4.

[39] *Id.* at 5. While the Knauf Settlement does not impair any builder claims to the Banner, InEx and L&W settlements, neither does it guarantee a particular recovery to any builder. The allocation of the Banner, InEx and L&W settlements will be determined by the Court after input from the parties. Neither the PSC nor the builders nor the Knauf Defendants are waiving any position with respect to how the Banner, InEx, and L&W settlements should be allocated. The PSC and the Knauf Defendants are merely confirming that any amounts actually allocated by the Court to builders will not have to be deposited into the Knauf Settlement Remediation Fund.

Banner and InEx settlements.[40]

Fourth, the HBSC contends that a conflict arises because the Banner and InEx settlement classes include property owners who have not filed lawsuits, while the Knauf Settlement does not include property owners who have not filed lawsuits prior to December 9, 2011.[41]  This does not create any conflict.  The HBSC's contention is based on the incorrect premise that those property owners who have not filed lawsuits and who participate in the Banner and/or InEx settlements will have to deposit amounts allocated to them under the Banner and/or InEx settlements into the Remediation Fund.  But, under Section 4.8.2 only Participating Class Members in the Knauf Settlement will be required to assign their claims to recovery from the Banner and/or InEx settlements or deposit such funds into the Remediation Fund.  A non-Class Member who has not filed a claim on or before December 9, 2011, has no such obligation.

Fifth, the HBSC seeks to clarify that the provisions of Section 12.2 modify the language of Section 12.1 of the Settlement Agreement so that the bar order will apply to claims of Participating Class Members arising from or relating to KPT Chinese Drywall and claims by any entity or person arising out of the Participating Class Members' claims.  Both the PSC and the Knauf Defendants have confirmed that understanding.

However, the HBSC also requests that the Court strike paragraph 18 of the proposed Preliminary Approval Order.  That provision would impose a stay on "Prosecution of the Litigation, the Omni Complaints and Related Actions against the Knauf Defendants … pending the settlement proceedings and further Orders of the Court."  That proposed provision necessarily involves claims asserted by Class

---

[40]  *Id.*

[41]  *Id.* at 6.

Members arising from or related to KPT Chinese Drywall and claims by any entity or person arising from those claims.  As such, it is consistent with the intended stay order and is appropriate.

> **D.      Any Objections Addressing the Merits of the Settlement Fail to Raise an Impediment to Preliminary Approval.**

As set forth in the Joint Motion, the standard for preliminary approval is "whether the proposed settlement appears fair on its face."  *Cope v. Duggins*, 2001 WL 333102, *1 (E.D. La. Apr. 4, 2001) (Fallon, J.); *see also* Order Preliminarily Approving InEx Class Settlement, at 4 [Rec. Doc. No. 8818] ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.").  Thus, any merit-based objections addressing the scope of the bar order, release of claims, judgment reduction provisions, and the rights of opt-outs, for example, do not address the applicable standard.  Provided the Settlement purports to be the result of arm's length negotiations, free of collusion, and fair, reasonable and adequate on its face, it ought to be preliminarily approved so that notice may issue to the class for comment and/or objection.  Class Members will be given ample time to review the all aspects of the Settlement to determine their rights thereunder, including the right to opt out.  All potential objections to the adequacy of the Settlement may be addressed at length at the Fairness Hearing, which, under the terms of the Knauf Agreement, may not take place until the Prospective Insurance Agreement is final.[42]

The Settlement Agreement contemplates a minimum of 70 days from the time that Notice issues, for Class Members to object to, comment on, or opt out of the Settlement.[43]  No Objector has presented any sound basis for denying preliminary approval to the Settlement, the issuance of Class Notice, or the scheduling of a Fairness Hearing.

---

[42]  Settlement Agreement, Section 2.1.

[43]  *See* Settlement Agreement, Section 8.1.1; Proposed Preliminary Approval Order.

IV.    **CONCLUSION**

All of the Objections should be denied.  The Parties request that the Court:  (1) preliminarily approve the Knauf Settlement; (2) conditionally certify a Knauf Settlement Class and Subclasses as requested; (3) approve the Notice and order that it be disseminated to the Class; (4) schedule a final Fairness Hearing; and (5) stay litigation of KPT Chinese Drywall claims against the Knauf Defendants and other parties in the Litigation.

Respectfully submitted,

Dated: January 3, 2012

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALES,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
  ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
  & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**PROPOSED SETTLEMENT CLASS COUNSEL**

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

Russ M. Herman, Esquire (Bar No. 6819)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Rherman@hhkc.com

**PROPOSED SUBCLASS COUNSEL**

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALES,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com
*Proposed Subclass Counsel for the*
*Residential Owner Subclass*

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com
*Proposed Subclass Counsel for the Tenant*
*Subclass*

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
  & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com
*Proposed Subclass Counsel for the*
*Commercial Owner Subclass*

24

**THE KNAUF DEFENDANTS**

| | |
|---|---|
| Kerry J. Miller (Bar No. 24562) | Steven Glickstein |
| Kyle A. Spaulding (Bar No. 29000) | Gregory J. Wallance |
| Paul C. Thibodeaux (Bar No. 29446) | Jay P. Mayesh |
| FRILOT L.L.C. | KAYE SCHOLER LLP |
| 1100 Poydras Street, Suite 3700 | 425 Park Avenue |
| New Orleans, LA 70163 | New York, NY 10022 |
| Phone:  (504) 599-8194 | Phone:  (212) 836-8485 |
| Fax:  (504) 599-8145 | Fax:  (212) 836-6485 |
| kmiller@frilot.com | sglickstein@kayescholer.com |