## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES AND | JUDGE FALLON MAG. JUDGE WILKINSON |
| *Payton, et al. v. Knauf Gips, KG, et al.* Case No. 2:09-cv-07628 (E.D. La.) | |
| *Gross, et al. v. Knauf Gips, KG, et al.* Case No. 2:09-cv-06690 (E.D. La.) | |
| *Rogers, et al. v. Knauf Gips, KG, et al.* Case No. 2:10-cv-00362 (E.D. La.) | |
| *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 2:11-cv-00252 (E.D. La.) | |
| *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-1363 (E.D. La.) | |
| *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-2349 (E.D. La.) | |
| *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-3023 (E.D. La.) | |
| *Vickers, et al. v. Knauf Gips KG, et al.* Case No. 2:09-cv-04117 (E.D. La.) | |

### ORDER PRELIMINARILY APPROVING KNAUF SETTLEMENT, CONDITIONALLY CERTIFYING A KNAUF SETTLEMENT CLASS, ISSUING CLASS NOTICE, SCHEDULING A SETTLEMENT FAIRNESS HEARING, AND STAYING CLAIMS AS TO THE KNAUF DEFENDANTS[1]

---

[1]Capitalized terms used in this Order have the same meaning as those defined in the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047, dated

Before the Court is the Joint Motion of Proposed Settlement Class Counsel, the Plaintiffs' Steering Committee ("PSC"), and the Knauf Defendants[2] for an Order: (1) Preliminarily Approving the Knauf Settlement; (2) Conditionally Certifying a Settlement Class; (3) Issuing Class Notice; (4) Scheduling a Fairness Hearing; and (5) Staying Claims Against the Knauf Defendants (R. Doc. 12061). These parties seek entry of an order finding preliminarily that: (1) the Knauf Settlement is fair, reasonable and adequate; (2) the requirements for conditionally certifying a Settlement Class under Rule 23(a) and Rule 23(b)(3) have been met; and (3) notifying Class Members of the terms of the Knauf Settlement and of their rights in connection therewith is warranted. In addition, these parties request that the Court: (1) approve the form of Class Notice described in the Notice of Pendency and Proposed Settlement of Knauf Class Action; (2) schedule a fairness hearing to determine whether the Knauf Settlement should be given final approval ("Fairness Hearing"); and (3) establish dates for the dissemination of the Class Notice, the submission of requests for exclusion from and objections to the Settlement and other relevant deadlines. The Court received briefing and heard oral arguments on this Motion, and is now ready to rule. For the following reasons, IT IS ORDERED that this Motion is

---

December 20, 2011 (the "Knauf Settlement"), attached as Exhibit A to the Memorandum of Law in Support of the Joint Motion for an Order (1) Preliminarily Approving the Knauf Settlement; (2) Conditionally Certifying a Settlement Class; (3) Issuing Class Notice; (4) Scheduling a Fairness Hearing; and (5) Staying Claims as to the Knauf Defendants.

[2]The Knauf Defendants include: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"); Knauf Plasterboard (Wuhu) Co., Ltd.; Guangdong Knauf New Building Material Products Co., Ltd.; Knauf Gips KG; Gebr. Knauf Verwaltungsgesellschaft KG; Knauf International GmbH; Knauf Insulation GmbH ("KI"); Knauf UK GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltda.; and PT Knauf Gypsum Indonesia.

GRANTED.

## I.      LITIGATION BACKGROUND

The present litigation arises from alleged property damage and personal injuries caused by the presence of Chinese drywall in residential and commercial properties.

Hurricanes Katrina and Rita devastated the Gulf Coast in 2005, coinciding with a boom in new construction, all contributing to a shortage of drywall for the construction and reconstruction of buildings in the United States.  As a result, from approximately 2005 to 2008, Chinese drywall was exported to the United States, changing hands in the chain of commerce, and ultimately installed in thousands of homes and buildings in the U.S., primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems.

In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, as well as some homebuilders who repaired these properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, who were involved

with the Chinese drywall in the affected properties, as well as their insurers and the insurers of property owners. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to this Court, the U.S. District for the Eastern District of Louisiana, for coordinated and consolidated proceedings.

Since the inception of MDL 2047, approximately two-and-a-half years ago: numerous cases have been consolidated, containing thousands of claims; the Court has presided over monthly status conferences, hearings, and bellwether trials; it has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, manufacturers; it has issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated several mediations; and more than 12,000 record documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases. With regard to the bellwether trials and default judgment proceedings, the Court has issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of corrosive gasses, requiring remediation of properties containing this drywall, and issued a remediation protocol for doing so.

The first notable breakthrough towards resolving the MDL litigation came in October 2010, when the PSC and the Knauf entities, manufacturers of Chinese drywall, entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. In addition to the Knauf entities, a number of defendants in the chain-of-commerce,

4

contributed funds to the program. The pilot program has since been implemented, with homes being added to and completed on a regular basis since early spring 2011.

The second notable breakthrough occurred in the spring of 2011 with the Interior Exterior Settlement Agreement and the Court's Preliminary Approval thereof. Interior Exterior is a supplier of Chinese drywall. This Agreement provides for the tendering of all of Interior Exterior's primary insurance proceeds, in amount of $8,000,000, for the benefit of a national class with claims against Interior Exterior involving Chinese drywall.

The third notable breakthrough occurred in the summer of 2011, with the Banner Settlement Agreement and the Court's Preliminary Approval thereof. The Banner entities are also suppliers of Chinese drywall. The proposed Banner Settlement Agreement provides $54,475,558.30, less sums already paid or committed to pending and prior settlements, for the benefit of a nationwide class consisting of all persons or entities with claims, known and unknown, against Banner, arising from, or otherwise related to Chinese drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner.

## II.    SETTLEMENT AGREEMENT

The proposed global class Settlement Agreement before the Court is intended to resolve claims made in filed actions which arise out of KPT Chinese drywall installed in properties in the United States. *See* (R. Doc. 12061-5). The Settlement Agreement defines "KPT Chinese Drywall" as "any and all drywall products manufactured, sold, marketed, distributed, and/or supplied by KPT and which are alleged to be defective. *Id.*

The Settlement Agreement class includes: "All persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (i.e. not an absent class member)

5

asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the

Knauf Defendants are named parties to the lawsuit." *Id.* The Class is then divided into three

subclasses: (1) Residential Owners Subclass, (2) Commercial Owner Subclass, and (3) Tenant

Subclass. *Id.* The Residential Owners Subclass consists of:

> All members of the Class who are owners of and residents of and reside or have resided
> in Affected Property ("Residential Owners"). The Residential Owners Subclass shall not
> include Owners, other than Mortgagees, who purchased Affected Properties with
> knowledge that the properties contained KPT Chinese Drywall. The Residential Owner
> Subclass also shall not include Owners who sold or otherwise disposed of Affected
> Properties except for former Owners who lost Affected Properties due to foreclosure or
> sold Affected Properties in a Short Sale to avoid foreclosure. *Id.*

The Commercial Owner Subclass consists of:

> All members of the Class who are owners of Affected Property for the purpose of selling
> or renting the Affected Property or using the Affected Property to conduct a business and
> who do not reside in the Affected property ("Commercial Owners"). The Commercial
> Owner Subclass shall not include Owners, other than Mortgagees, who acquired Affected
> Properties through foreclosure with knowledge that the properties contained KPT Chinese
> Drywall, except for former owners who lost Affected Properties due to foreclosure or sold
> Affected Properties in a Short Sale to avoid foreclosure. *Id.*

The Tenant Subclass consists of: "All members of the Class who rent Affected Property." *Id.*

The Settlement Agreement establishes two funds for the benefit of class members: (1) a

Remediation Fund, and (2) an Other Loss Fund. The Remediation fund is uncapped, with the

Knauf Defendants making an initial deposit of $200 million and additional deposits of $50

million each time the balance of the fund is reduced to $25 million. *Id.* Additional funds may be

deposited into the Remediation Fund from, for example, 50% of the Prospective Insurance

Settlement funds, and net amounts recovered from the InEx, Banner, and Prospective L&W

Class Settlements. *See id.*

The Residential Owners and Commercial Owners have three available options for remediation

6

benefits: (1) they may elect to have their properties completely remediated pursuant to the Settlement's Remediation Protocol; (2) they may self-remediate their Affected Property and be compensated for those costs under the Settlement; or (3) they may receive a discounted cash-out payment if they choose not to remediate their property. *Id.* Mixed Property Owners may elect either the self-remediation option or the cash-out payment. *Id.* The Remediation Protocol option will make owners whole within a three-month period by completely remediating their Affected Property to its former state prior to the installation of KPT Chinese drywall. *Id.* Residential Owners will also receive a lump sum payment of either $8.50 or $10.00 per square foot depending on the size of the property. *Id.* The purpose of this payment is to compensate for Other Covered Expenses, which include the following incurred during remediation: alternative living expenses, personal property damage, maintenance costs, utility bills, insurance, property taxes, landscaping, moving, and storage. *Id.*

Under the second option, self-remediation, Residential Owners and Commercial Owners may elect to self-remediate their Affected Properties and a cash payment will be made to the Owner's chosen contractor. *Id.* For mixed properties, the payment will be discounted by multiplying the payment by the KPT Drywall Percentage. *Id.*

Under the third option, all Owners may select a discounted, cash-out payment, but must comply with certain disclosure requirements. *Id.*

With regard to the Other Loss Fund, a fixed fund, the Knauf Defendants will deposit $30 million and 50% of the net proceeds from the Prospective Insurance Settlement and Excluded Releasees. *Id.* This Fund provides additional benefits to Class Members for economic losses depending upon the Subclass. *Id.* Residential Owners may be entitled to: (1) reimbursement of

alternative living expenses arising from the need to vacate prior to remediation, and/or (2)

recover of economic losses from foreclosures and short sales. Commercial Owners may be

entitled to: (1) economic loss, for at most three months, for the inability to use or rent the

Affected Property during remediation; (2) reimbursement for carrying costs arising from the

inability to sell Affected Properties; and/or (3) lost equity due to foreclosure or short sales. *Id.*

Tenants may seek compensation for moving expenses and/or personal property damage. *Id.* The

Other Loss Fund may also provide compensation for bodily injury to Residential Owners and

Tenants. *Id.*

The Settlement Agreement also provides for $160 million in attorneys' fees and costs,

which is entirely separate from the compensation allotted for Class Members. *Id.* These fees

will compensate the PSC, common benefit counsel, proposed Settlement Class Counsel, and

individually-retained Plaintiffs' attorneys. *Id.* The costs may include held costs, shared costs,

and individual participating class members' costs limited to reasonable inspection costs. *Id.*

## III.   PRESENT MOTION

### A.   Movants

The Movants seek preliminary approval of the Settlement Agreement on the basis that the

Agreement is in the best interest of the Knauf settlement Class Members, especially considering

the estimated damages suffered by the Class, the complexity and risks of further litigation of the

Knauf claims, and the delays inherent in litigating all claims against the Knauf defendant. The

Movants note that the Settlement Agreement was negotiated at arm's length over a period of

many months. According to the Movants, the requirements of Rule 23 have been satisfied for

conditional certification of the Class, and the proposed form and method for class notice are

8

adequate and also satisfy the requirements of Rule 23.

**B.      Banner**

The Banner entities filed a Response and Objections to the Joint Motion.  (R. Doc. 12085).  At the outset, Banner states it has filed the Response and Objections merely to "clarify and confirm certain provisions on the Knauf settlement."  Banner raises five issues.  First, Banner clarifies that its claims against the Knauf defendants are not released by the Knauf settlement, absent further negotiations.

Second and similarly, Banner clarifies that the stay and bar orders requested by the Knauf defendants are limited to claims covered by the Settlement; that is, Banner's third-party claims against the Knauf defendants are not stayed or barred.  However, Banner is willing to negotiate with Knauf to postpone litigation on these third-party claims.

Third, Banner clarifies that claimants may opt-out of the Knauf Settlement while participating in the Banner settlement, and on this basis asks that Section 4.8.4 be amended to reflect this.  Banner argues that the PSC and Knauf cannot interfere with the Banner settlement agreement without agreement of Banner, which has not occurred.

Fourth, Banner argues that its right to claim offset of liabilities based upon amounts paid to claimants by the Knauf defendants is not limited by the Knauf settlement.

Fifth, Banner argues that Knauf may not use the Settlement to shield its assets in the United States from third parties.

**C.      84 Lumber Company**

84 Lumber Company filed a Response in opposition to the Joint Motion.  (R. Doc. 12087). 84 Lumber argues that the Knauf Settlement Agreement is incomplete and fails to

include vital information, and thus it is unable to determine whether it has any objection thereto. Specifically, 84 Lumber takes issue with the fact that it cannot determine whether it is a "Released Party" under the Agreement or an "Excluded Releasee," because as an entity alleged to have supplied and/or installed KPT Chinese drywall it would be a "Released Party" under the Agreement, unless it does not participate in the "Prospective Insurer Agreement," and then it would be an "Excluded Releasee." Because, the "Prospective Insurer Agreement" does not yet exist, 84 Lumber claims it is unable to determine at this time how it is defined under the Agreement.

### D.    North River

North River Insurance Company filed Objections to the Joint Motion. (R. Doc. 12088). First, it argues that it has not been provided adequate time to review the proposed Knauf Settlement Agreement. Second, North River argues that the Knauf Settlement Agreement improperly appears to be releasing indemnity and contribution claims asserted by North River against the Knauf Defendants without the consent of North River and without providing anything in exchange for the release of claims. Third, it argues that the Agreement improperly purports to assign contractual rights against North River to persons or entities who are not insureds under the policies issued by North River to Interior Exterior, in violation of the terms of the relevant policies. Fourth, it argues that there is insufficient information regarding the "Prospective Insurer Agreement."

### E.    Southern Homes

Defendants, Southern Homes, LLC, Tallow Creek, LLC, and Springhill, LLC (collectively "Southern Homes") filed Objections to the Joint Motion. (R. Doc. 12090).

Southern Homes objects to the Knauf Settlement Agreement to the extent it seeks to stay prosecution of Southern Homes' complaints against Knauf and other related entities and to bar Southern Homes from pursuing its statutory redhibitory rights against Knauf. It also adopts by reference: its memoranda filed in objection to the InEx settlement agreement, which is on appeal to the Fifth Circuit; its pending motion to set security; and its response to the motion to approve settlement of the Knauf entities with homebuilders.

### F.   Centerline

Centerline Homes, Inc., Centerline Homes Construction, Inc., Completed Communities II, LLC, Centerline Homes at Georgetown, LLC, Centerline Homes at Delray, Inc., Briella Townhomes, LLC, Cornerstone Group Construction, Inc., Boynton Village, LLC, and Hollywood Dixie Associates, LLC (collectively "Centerline"), filed a Response in opposition to the Joint Motion. (R. Doc. 12093). Centerline complains that the Knauf Settlement Agreement contains "too many contingencies, ambiguities and uncertainties...to make a reasonably informed decision about their position." It also adopts the Response filed by the Homebuilders' Steering Committee.

### G.   Homebuilders' Steering Committee

The Homebuilders' Steering Committee ("HSC") filed a Response in opposition to the Joint Motion. (R. Doc. 12095). The HSC first takes issue with the fact that the Knauf Settlement Agreement is contingent upon hundreds of parties and their insurers entering into the Prospective Insurer Agreement which has not yet been negotiated. The HSC requests that the Court defer ruling on preliminary approval until at least significant progress is made on the Prospective Insurer Agreement and to set the date for opt-outs and objections no sooner than 30

days after the Prospective Insurer Agreement is executed.

Additionally, the HSC complains that despite homebuilders' involvement in repairing homes and in the litigation, they were not involved in the settlement negotiations, which they argue has resulted in ambiguities, inconsistencies, and unanswered questions which could have been avoided had they been involved.

The HSC alleges a number of ambiguities in the Knauf Settlement Agreement, but states it has received assurances from the settling parties that such do not harm homebuilders' rights and now seeks clarification, in writing, from the settling parties. First, the HSC claims that Section 1.48 and 4.8 suggest that homebuilders are required to deposit amounts received from their insurance carriers into the Remediation Fund. Second, the HSC claims that Section 4.8.2 suggests homebuilders must deposit their recovery from the Banner, InEx, and L&W settlements into the Remediation Fund. Third, the HSC claims that Section 14.3 suggests that the attorneys' fees provisions in the Knauf Settlement Agreement will supercede the attorneys' fees provisions in separate settlement agreements between Knauf and homebuilders. Fourth, the HSC claims that the Knauf Settlement Agreement creates potential conflicts with class membership because it only includes already-filed actions while the Banner and InEx settlement classes include all putative class members, with or without filed claims. Fifth, the HSC is concerned that the bar order would bar claims of non-class members.

### H.    Home Depot

Home Depot U.S.A. filed a Response in opposition to the Joint Motion.  (R. Doc. 12096). Home Depot raises the following objections to preliminary approval: (1) it had insufficient time to review the Knauf Settlement Agreement, (2) the Knauf Settlement Agreement improperly

refers to agreements that have yet to be negotiated or finalized, (3) the Knauf Settlement Agreement is improper to the extent it purports to alter the terms of the InEx Settlement Agreement, (4) the Knauf Settlement Agreement is improper to the extent it purports to infringe on any legal rights of Home Depot, and (5) the bar order prejudices its rights.

**I.      Movants' Reply**

The Movants filed a Reply to all responses filed in opposition to their Motion. (R. Doc. 12101-2). Movants note that no Class Member has objected to preliminary approval of the Knauf Settlement Agreement. They argue that those parties who did file objections lack standing to do so because they have failed to demonstrate evidence of legal harm caused by preliminary approval of the Settlement Agreement. Additionally, the Movants argue that even if the objecting parties have standing to object, their objections should not halt preliminary approval of the Settlement Agreement and are properly raised at the final fairness hearing. Finally, the Movants agree to work with the objecting parties to resolve their issues and disputes prior to final approval of the Settlement Agreement.

**IV.    LAW & ANALYSIS**

**A.      Preliminary Fairness Evaluation**

While Federal Rule of Civil Procedure 23, governing class actions, does not expressly provide for a preliminary fairness evaluation, "[r]eview of a proposed class action settlement generally involves two hearings," the first of which is a "preliminary fairness evaluation" made by the Court. Manual for Complex Litigation (Fourth) § 21.632 (2004). Indeed, within the Fifth Circuit it is routine to conduct a preliminary fairness evaluation prior to the issuance of notice. *See e.g. Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2011); *In re Shell Oil*

*Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1997); *see also* Manual for Complex Litigation § 21.6

(4th ed. 2004)("The two-step process for evaluation of proposed settlements has been widely

embraced by the trial and appellate courts."). During this evaluation, the Court "should make a

preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at

least one of the subsections of Rule 23(b)." *Id.* Additionally, the Court "must make a preliminary

determination on the fairness, reasonableness, and adequacy of the settlement terms and must

direct the preparation of notice of the certification, proposed settlement, and date of the final

fairness hearing." *Id.* "At the stage of preliminary approval, the questions are simpler, and the

court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate

for final approval." Manual for Complex Litigation § 21.6; *see also In re OCA, Inc. Securities &*

*Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008). "The preliminary

hearing...is held to evaluate the likelihood that the Court would approve the settlement during its

second review stage, the full fairness hearing." *Cope v. Duggins*, 2001 WL 333102, at *1 (E.D.

La. Apr. 4, 2001)(citing Manual for Complex Litigation (Third) § 30.41 (1995)). "Counsel for

the class and the other settling parties bear the burden of persuasion that the proposed settlement

is fair, reasonable, and adequate." Manual for Complex Litigation (Fourth) § 21.631 (2004); *In re*

*Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006). "If the Court finds portions of

the proposed settlement problematic, it may indicate preliminary disapproval of the agreement

and recommend that the parties make certain revisions or modifications." *Id.*

**B.     Class Action Settlement Prior to Class Certification**

"Before an initial class ruling, a proposed class settlement may be effectuated by

stipulation of the parties agreeing to a temporary settlement class for purposes of settlement

14

only." William B. Rubinstein, Alba Conte, and Herbert B. Newberg, 4 Newberg on Class

Actions § 11:22 (4th ed. 2010). "[A]pproval of a classwide settlement invokes the requirements

of Rule 23(e)." *Id.* Rule 23(e) provides that "[t]he claims...of a certified class may be settled...or

compromised only with the court's approval." Fed. R. Civ. P. 23(e); *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 617 (1997). "Settlement class-cases certified as class actions solely for

settlement-can provide significant benefits to class members and enable the defendants to

achieve final resolution of multiple suits." Manual for Complex Litigation (Fourth) § 21.612

(2004). However, "[c]ourts have held that approval of settlement class actions under Rule 23(e)

requires closer judicial scrutiny than approval of settlements reached only after class certification

has been litigated through the adversary process." Manual for Complex Litigation (Fourth) §

21.612 (2004).

While "[s]ettlement is relevant to a class certification," as mentioned above, the criteria

of Rule 23, particularly that found in subsections (a) and (b), must still be satisfied. *Amchem*,

521 U.S. at 619-20. "Together subsection (a) and (b) requirements insure that a proposed class

has 'sufficient unity so that the absent class members can fairly be bound by decisions of the

class representatives.'" *In re FEMA Trailer*, 2008 WL 5423488, at *3 (quoting *Anchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591 (1997)). All of the requirements of Rule 23(a) are to be met,

which provide,

> One or more members of a class may sue or be sued as representative parties on behalf of
> all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> Fed. R. Civ. P. 23(a).

As this Court has previously recognized,

> The first two requirements focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed 'to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests.' *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008)(quoting *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Additionally, for class certification, at least one of the subsections of Rule 23(b) must be met. To satisfy this requirement, the Movants urge the Court to find subsection (b)(3) is satisfied by the proposed settlement agreement. This subsection provides,

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> -   -   -   -   -   -   -   -   -   -   -
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense or separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

"To succeed under Rule 23(b)(3), Plaintiffs must sufficiently demonstrate both predominance of common class issues and that the class action mechanism is the superior method of adjudicating the case." *In re FEMA Trailer*, 2008 WL 5423488, at *3 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623-24 (5th Cir. 1999)).

16

### C.     Rule 23 Criteria

Notably, none of the responses in opposition to the Motion raised any objections under the Rule 23 criteria.  Nonetheless, the Court will review the applicable law on Rule 23 for each criteria and summarize the Movants' positions thereon.

#### 1.     Numerosity

As cited above, Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To demonstrate numerosity, the [Movants] must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006)(quoting *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)).  Rule 23 does not provide a clear formula for determining whether the numerosity requirement has been met, thus Courts are to evaluate numerosity based upon the facts, circumstances, and context of the case.  1 Newberg on Class Actions § 3:3 (4th ed. 2010).  Indeed, "[t]here is enormous disparity among the decisions as to the threshold size of the class that will satisfy the Rule 23(a)(1) prerequisites." *Id.*  Although the plaintiff bears the burden of showing joinder is impracticable, "a good-faith estimate should be sufficient when the number of class members is not readily ascertainable," and the numerosity requirement "ordinarily receives only summary treatment...and has often gone uncontested." *Id.*  Plaintiffs must also satisfy numerosity for each proposed sub-class. *See In re FEMA Trailer*, 2008 WL 5423488, at *5.

The Movants argue that numerosity is easily satisfied because of the large number of potential claimants who may benefit from the Settlement Agreement.  The Court agrees and finds

17

that numerosity is satisfied for purposes of preliminary approval.

### 2. Commonality

As cited above, the commonality requirement under Rule 23(a)(2) requires for maintenance of a class action that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not require that all questions of law or fact raised in the litigation be common. The test or standard...is qualitative rather than quantitative." Rubinstein, 1 Newberg on Class Actions § 3:10; *see also In re FEMA Trailer*, 2008 WL 5423488, at *6. Indeed, "[t]he commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members." *In re Vioxx*, 239 F.R.D. at 459 (citing *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001)). The Rule 23(a)(2) commonality "requirement is easily met in most cases." *Id.*

Movants argue that commonality is also easily satisfied because the Judicial Panel on Multidistrict Litigation ordered the subject cases to be consolidated in the MDL based upon commonality of facts, and the factual and legal issues arising from KPT Chinese drywall are common to all claimants. The Court agrees and finds that commonality is satisfied for purposes of preliminary approval.

### 3. Typicality

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." Rubinstein, 1 Newberg on Class Actions § 3:13. "Thus, a plaintiff's claim is typical if it arises from the same event or

practice or course of conduct that gives rise to the claims or other claims members, and if his or

her claims are based on the same legal theory.  When it is alleged that the same unlawful conduct

was directed at or affected both the named plaintiff and the class sought to be represented, the

typicality requirement is usually met irrespective of varying fact patterns which underlie

individual claims.  However, this is not a foregone conclusion." *Id.*

Movants argue that typicality is satisfied because each of the plaintiffs is seeking money

from the Knauf defendants for the costs of remediation and other damages, and the proposed

Class and Subclass representatives have claims against KPT which are typical of all plaintiffs.

The Court agrees and finds that typicality is satisfied for purposes of preliminary approval.

### 4.    *Adequacy of Representation*

Rule 23(a)(4) requires for maintenance of a class action, that "the representative parties

will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The

purpose of this requirement is to protect the legal rights of absent class members.  First, the

representatives must not possess interests which are antagonistic to the interests of the class.

Second, the representatives' counsel must be qualified, experienced, and generally able to

conduct the litigation."  Rubinstein, 1 Newberg on Class Actions § 3:21; *see Gen. Telephone Co.

of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)("[T]he adequacy of representation

requirement...also raises concerns about the competency of class counsel and conflicts of

interest.").  With regard to the former, a court is to "look at the circumstances of the plaintiff

individually to determine if the plaintiff has any conflict with class members."  Rubinstein, 1

Newberg on Class Actions § 3:23.  "Only those material conflicts pertaining to the issues

common to the class will bar a class action."  *Id.*  As to the latter requirement, "courts consider

19

the competence and experience of class counsel, attributes which will most often be presumed in

the absence of proof to the contrary." *Id.* at § 24.

Movants argue that adequacy of representation is satisfied because the named

representatives do not possess interests antagonistic to class members, and the proposed

Settlement Class Counsel are members of the Plaintiffs' Steering Committee which were selected

by the Court based upon their expertise and experience.  The Court agrees and finds that

adequacy of representation is satisfied for purposes of preliminary approval.

5.      *Common Questions of Law & Fact Predominate*

Rule 23(b)(3) provides that a class action is maintainable if all the prerequisites of

subsection (a) are satisfied and "the court finds that the questions of law or fact common to the

members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy." Fed. R. Civ. P. 23(b)(3).  Factors for the Court to consider in its determination

include:

> (A) the class members' interests in individually controlling the prosecution or defense or
> separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or
> against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the
> particular forum; and
>
> (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

There is "considerable overlap" between commonality and the predominance of common

questions of law and fact, resulting in many courts handling both issues together.  Rubinstein, et

al., 2 Newberg on Class Actions § 4:22.  However, "the predominance test is 'far more

20

demanding' than the commonality test." *In re FEMA Trailer*, 2008 WL 5423488, at *12

(quoting *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005)). "To predominate,

common issues must form a significant part of individual cases." *In re Vioxx Prods. Liab. Litig.*,

239 F.R.D. 450, 460 (E.D. La. 2006)(citing *Mullen*, 186 F.3d at 626). "Judicial economy factors

and advantages over other methods for handling the litigation as a practical matter underlie the

predominance and superiority requirements for class actions certified under Rule 23(b)(3)."

Rubinstein, et al., 2 Newberg on Class Actions § 4:24.

Movants argue that common questions of law and fact predominate because the Knauf

defendants' liability predominates over any individual issues involving plaintiffs, and the

Settlement Agreement will insure that funds are available to remediate the Affected Properties.

The Court agrees and finds that predominance is satisfied for purposes of preliminary approval.

### D.      Fairness, Reasonableness & Adequacy

As noted above, the Court is also required to render a preliminary determination on the

fairness, reasonableness, and adequacy of the Knauf Settlement Agreement.  Though the

objections to the Joint Motion do not directly invoke these requirements, the Court will interpret

the non-Rule 23 objections as objections of this nature.  Upon review of these objections under

the applicable law, the Court finds that none raise obstacles to preliminary approval of the Knauf

Settlement Agreement.  This conclusion is particularly true given that no Class Members have

raised objections.  Assuming standing for the non-Class Member objections does exists, the

objections are comprised of mere clarification and comments, are not supported by the language

of the Settlement Agreement, or are premature and should be raised at the final fairness hearing.

With regard to the objections of uncertainty and/or ambiguity in the terms and language

of the Knauf Settlement Agreement, as noted in the briefing and at oral argument, the settling

parties have clarified that many of these concerns are inconsistent with is intended and/or stated

by the Settlement Agreement.  The settling parties also agreed that, if appropriate, they will

amend the language of the Settlement Agreement and/or enter into separate side agreements to

clarify alleged uncertainties and/or ambiguities.  The Court finds, therefore, that objections based

upon these concerns do not prevent preliminary approval.

   Most, if not all, of the objections are raised by parties with third-party claims against the

Knauf Defendants or other defendants lower in the chain-of-commerce from Knauf.

Accordingly, many are concerned regarding the Prospective Insurer Agreement and its effect on

releases.  The Knauf Settlement Agreement releases claims against all who constitute a

"Released Party."  A "Released Party" means the Knauf Defendants and the "Other Releasees."

The "Other Releasees" are

> [A]ny person or entity that supplied, installed or facilitated and/or assisted in such supply
> or installation of KPT Chinese Drywall, including but not limited to, Banner, InEx,
> L&W, Importers, Suppliers, Builders, Developers, General Contractors, Installers,
> Realtors, Subcontractors, and Subsuppliers which purchased or received KPT Chinese
> Drywall from a Supplier, used Chinese Drywall sold, marketed, distributed and/or
> supplied by a Supplier in the construction of Affected Property, or sold or marketed
> Affected Property containing KPT Chinese Drywall, and all of their past, present and
> future owners, partners, shareholders, officers, directors, agents, attorneys, employees,
> parents, associates, subsidiaries, divisions, affiliates, insurers and all predecessors and
> successors, assigns, or legal representatives, except for Excluded Releasees.  (R. Doc.
> 12061-5 § 1.48).

"Excluded Releasees" include "any person or entity eligible to be an Other Releasee that does not

participate in the Prospective Insurer Agreement or otherwise settle with the PSC and the Knauf

Defendants." *Id.* at § 1.12.  The "Prospective Insurer Agreement" is "an agreement negotiated,

or to be negotiated, between the PSC and the Knauf Defendants on the one hand, and the insurers

for Other Releasees (other than Banner, InEx and L&W) on the other." *Id.* at § 1.54.

Thus, based upon the foregoing, those defendants who were below the Knauf Defendants in the chain of commerce are released from liability to the Class, unless these lower-chain defendants' insurers fail to participate in the Prospective Insurer Agreement. Because the Prospective Insurer Agreement is not completed, the parties affected by this Agreement are unable to know their exact status under the terms of the Settlement Agreement. The Court recognizes the concerns presented by this current uncertainty, but also that the progress on the Prospective Insurer Agreement is already underway. The "prospective" status of the Prospective Insurer Agreement, however, does not pose sufficient fairness, reasonableness, and adequacy problems to prevent preliminary approval of the Knauf Settlement Agreement, unless as raised by several of the objecting parties, the Prospective Insurer Agreement is not completed prior to the opt-out and objections deadlines. The Court finds, at this time, it is not necessary to schedule these deadlines contingent upon the completion of the Prospective Insurer Agreement, but will entertain motions to continue these deadlines if this Agreement is not executed timely.

Finally, with regard to the concerns of objectors regarding their rights to pursue litigation against Knauf and defendants lower in the chain-of-commerce, the Court finds that clarification from the settling parties alleviates many of these concerns and for any remaining concerns, such should be addressed at the final fairness hearing, not at the preliminary approval stage.

### E.     Proposed Notice

Rule 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For a class certified under Rule 23(b)(3), as is sought here,

[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

      (I) the nature of the action;
      (ii) the definition of the class certified;
      (iii) the class claims, issues, or defenses;
      (iv) that a class member may enter an appearance through an attorney if the member so desires;
      (v) that the court will exclude from the class any member who requests exclusion;
      (vi) the time and manner for requesting exclusion; and
      (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Movants argue that the proposed form and method of Class Notice is adequate and satisfies the requirements of Rule 23. They note that they will be providing individual notice by first-class mail to all Class Members and their counsel, and the Settlement Agreement is posted on the Court's MDL website. Additionally, with regard to the form of the Notice, the Movants allege it is written in plain and straightforward language; it also objectively and neutrally apprises all Class Members on the nature of the action, the definition of Class and SubClasses, and relevant deadlines and restrictions, as well as the date and location for the final Fairness Hearing. There have been no objections filed regarding the proposed notice. The Court agrees with the Movants that the proposed notice is appropriate and in compliance with Rule 23.

## V.    CONCLUSION

IT IS ORDERED that the Knauf Settlement Agreement, including all exhibits attached thereto, is preliminarily approved by the Court as fair, reasonable and adequate, as negotiated and entered into at arm's length, in good faith, and free of collusion to the detriment of the Knauf Settlement Class, and as being within the range of possible judicial approval at a prospective Fairness Hearing. Accordingly, IT IS FURTHER ORDERED:

The following nationwide Knauf Settlement Class is conditionally certified and shall consist of: "All persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (*i.e.*, not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit."

The following Knauf Settlement Subclasses are conditionally certified:

(1)    **The Residential Owner Subclass** consists of:

All members of the Class who are owners of and reside or have resided in Affected Property ("Residential Owners"). The Residential Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall. The Residential Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties in a Short Sale to avoid foreclosure.

(2)    **The Commercial Owner Subclass** consists of:

All members of the Class who are owners of Affected Property for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business and who do not reside in the Affected Property ("Commercial Owners"). The Commercial Owner Subclass shall not include Owners, other than Mortgagees, who acquired Affected Properties through foreclosure with knowledge that the properties contained KPT Chinese Drywall, except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties in a Short Sale to avoid foreclosure.

(3)    **The Tenant Subclass** consists of:

All members of the Class who rent Affected Property.

The following Subclass representatives are appointed for each of the Knauf Settlement Subclasses:

25

    a.      The Residential Owner Subclass:  Dr. Stephen Roberts, Jennifer Roberts and Lawrence Sabesan.

    b.      The Commercial Owner Subclass:  Villas at Oak Hammock, LLC and Promenade at Tradition Community Association, Inc.

    c.      The Tenant Subclass:  Kristin Hagan.

Russ Herman and Arnold Levin are appointed as Settlement Class Counsel, and the Plaintiffs' Steering Committee ("PSC") are appointed as Of-Counsel.

Ervin A. Gonzalez is appointed as Subclass Counsel for the Residential Owner Subclass, Gerald E. Meunier is appointed as Subclass Counsel for the Commercial Owner Subclass, and Bruce William Steckler is appointed as Subclass Counsel for the Tenant Subclass

The opt-out procedure set forth in Section 8 of the Knauf Settlement is approved.

The procedure for lodging objections to the Knauf Settlement as set forth in Section 9 of the Knauf Settlement is approved.

The class notice attached to this Order is approved.

The protocol for dissemination of notice to Class Members as set forth in Section 7 of the Knauf Settlement is approved.

On or before, January 27, 2012, Settlement Class Counsel shall cause the class notice attached herein to be sent via first-class mail, postage prepaid to:  (I) all plaintiffs in the Litigation who, as of December 9, 2011, asserted claims arising from, or otherwise related to, KPT Chinese Drywall, (ii) all plaintiffs in the Omni complaints in MDL No. 2047 who, as of December 9, 2011, asserted claims arising from, or otherwise related to, KPT Chinese Drywall, (iii) all plaintiffs in all Related Actions who, as of December 9, 2011, asserted claims arising

from, or otherwise related to, KPT Chinese Drywall, (iv) all other class members, and (v) the counsel of all the foregoing. Where an attorney represents more than one Plaintiff or claimant with claims against the Knauf Defendants, it shall be sufficient to provide that attorney with a single copy of the notice. Notice to a Class Member's counsel of record shall constitute notice to the Class Member even if the Class Member does not receive independent notice.

The cost of Notice shall be paid by the Knauf Defendants.

The class notice shall be posted on the Court's Chinese Drywall MDL website so as to commence the Notice period.

Any Class Member wishing to opt out of the Settlement must notify Class Counsel, Arnold Levin (LEVIN, FISHBEIN, SEDRAN & BERMAN, 510 Walnut Street, Suite 500, Philadelphia, PA 19106) and Russ M. Herman (HERMAN, HERMAN, KATZ & COTLAR, LLP, 820 O'Keefe Avenue, New Orleans, LA 70113), and counsel for the Knauf Defendants, Kerry Miller (FRILOT L.L.C., 1100 Poydras Street, Suite 3700, New Orleans, LA 70163) in writing, within seventy (70) days after the last date to provide notice to the Class, *i.e.*, postmarked no later than April 6, 2012, which is the last day of the Opt-Out/Objection Period, of their intention to opt out of the Settlement. No opt out will be effective if filed earlier than 21 days after the last date to provide notice to the Class, *i.e.*, if filed before February 17, 2012. To be effective, the opt-out notice must set forth the full name and current address of the person electing to opt out and a sentence stating: "The undersigned hereby opts out of the Knauf Settlement Class in the Chinese Drywall Action." The opt-out notice must be signed by the individual Class Member.

All objections to the proposed Knauf Settlement shall be filed and served in compliance with Section 9 of the Knauf Settlement within seventy (70) days after the last date to provide

27

notice to the Class, *i.e.*, postmarked no later than April 6, 2012, or they will be deemed waived. All objections must be signed by the individual Class Member and by his or her counsel, if any.

The Settling Parties shall file any response to the objections or other papers in support of final approval of the Settlement on or before May 15, 2012.

A formal Fairness Hearing shall take place on the 20th day of June, 2012, beginning at 9:00 a.m., and continuing to June 21, 2012, if necessary, in order to consider comments on and objections to the proposed Knauf Settlement and to consider whether (a) to approve thereafter the class settlement as fair, reasonable and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure, (b) to finally certify the settlement class, and (c) to enter the Order and Judgment provided in paragraph 1.43 of the Knauf Settlement.

Except as provided in the following paragraph,  Prosecution of the Litigation, the Omni Complaints and Related Actions against the Knauf Defendants shall be stayed pending the settlement proceedings and further Orders of the Court. The stay will extend to all cases involving KPT Chinese Drywall filed on or before December 9, 2011, whether or not a Knauf Defendant is a party to the case, unless an objection is filed with the Court by January 16, 2012. If an objection is timely received, responses must be filed by January 23, 2012, and the Court will hear argument on the matter at the next status conference on January 26, 2012.

Banner is not subject to the stay in the preceding paragraph, as Banner and the Knauf Defendants have voluntarily agreed to a temporary postponement of litigation with respect to Banner's claims against the Knauf Defendants.  In light of that agreement, the portion of Banner's objection (Rec. Doc. 12085) asserting that the stay should not apply to Banner absent its consent is MOOT and each party's position on the issue is explicitly preserved.  Banner, as used in this

order, means Banner Supply Company; Banner Supply Company Pompano, LLC; Banner Supply

Company Fort Myers, LLC; Banner Supply Company Tampa, LLC; Banner Supply Company

Port St. Lucie, LLC; and Banner Supply International, LLC.

The parties have reserved all claims and defenses in the Litigation should the proposed

Knauf Settlement not become final for whatever reason.

The Knauf Defendants have reserved all defenses, including the right to contest

certification of the classes *de novo* should the proposed Knauf Settlement not become final for

whatever reason.  If the proposed settlement does not become final, the conditional certification

of the settlement class and subclasses will be null and void and the Litigation will proceed as if

there had been no settlement, conditional certification or notice.


This 10th day of January, 2012, at New Orleans, Louisiana

ELDON E. FALLON
United States District Court Judge

29