UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

Laura Haya, et al. v. Taishan Gypsum Co., Ltd. f/k/a
Shandong Taihe Dongxin Co., Ltd., et al.
Civil Action No. 11-1077

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ..

MDL NO. 2:09-md-2047

SECTION: L MAG 2

JUDGE FALLON
MAG. JUDGE WILKINSON

## DEFENDANT STANDARD PACIFIC OF SOUTH FLORIDA GP, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Standard Pacific of South Florida GP, Inc. ("Standard Pacific"), by and

through undersigned counsel, appearing solely for purposes of this Motion to Dismiss, pursuant

to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves this

Court for an Order dismissing the Omnibus Class Action Complaint (IX), as amended, with

prejudice, on the grounds set forth in the following memorandum of law.

## INTRODUCTION

Plaintiffs' Amended Omnibus Class Action Complaint (IX) was filed with the Court on

May 10, 2011. (Doc. No. 8781.)[1] This action was directly filed in the United States District

Court for the Eastern District of Louisiana.  Over 900 Plaintiffs have sued hundreds of

Defendants, alleging that Defendants designed, manufactured, imported, distributed, delivered,

supplied, marketed, inspected, installed, or sold allegedly defective Chinese drywall.

(Complaint, pp. 1-2.)  Plaintiffs maintain that this action is properly brought in federal court

---

[1] Although a Second Amended Omnibus Class Action Complaint was filed on September 27, 2011, no additional
Plaintiffs asserted claims against Standard Pacific.  (Doc. No. 10732.)

pursuant to 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* *Id.* at ¶ 1.

Plaintiffs' Amended Omnibus Class Action Complaint contains no allegations whatsoever to support jurisdiction within the State of Louisiana over Standard Pacific. No basis, in fact, exists to require Standard Pacific to defend this lawsuit in Louisiana. Only one Plaintiff, Kelli Patterson, appears to be suing Standard Pacific. (Doc. 8781-1, p. 78.) The Complaint alleges, however, that Ms. Patterson resides in Florida -- not Louisiana. In addition, Exhibit B to the Amended Complaint correctly identifies Standard Pacific as being incorporated in Delaware with its principal place of business located at 9900 SW 107th Avenue, Miami, Florida 33176. (Doc. No. 8781-3 at p. 23.) Because there is no basis to assert personal jurisdiction over Standard Pacific in this case, it must be dismissed.

Alternatively, dismissal is appropriate for failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs' Complaint contains nothing more than "threadbare recitals," lumping all Defendants together. None of Plaintiffs' claims state causes of action against Standard Pacific.

## **LEGAL ARGUMENT**

### I. **THIS CASE MUST BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER STANDARD PACIFIC.**

The burden is on the plaintiff to establish jurisdiction when challenged by the defendant. *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1138 (5th Cir. 1980), citing *Product Promotions v. Cousteau*, 495 F.2d 483 (5th Cir. 1974). In order to establish personal jurisdiction over a non-resident defendant, a plaintiff must prove both that the state's long-arm statute confers jurisdiction and that the exercise of jurisdiction does not violate federal due process requirements. *Id.*

A.    **Standard Pacific Must be Dismissed as a Defendant Under Louisiana's Long-Arm Statute and Applicable Federal Law.**

"In diversity actions ... the law of the forum state, subject to the constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants." *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 396 (5th Cir. 2001) citing *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 n.15 (5th Cir. 1988) and *Stuart v. Spademan*, 772 F. 2d 1185, 1189 (5th Cir. 1985). Louisiana's Long-Arm Statute, *La. R.S. 13:3201 (A) & (B)*, describes the circumstances under which a Louisiana court may exercise personal jurisdiction over a non-resident defendant such as Standard Pacific. The long-arm statute provides that a court "may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." *La. R.S. 13:3201(B)*.

Thus, *La. R.S. 13:3201 (B)* insures that long-arm jurisdiction of a Louisiana court extends to the limits permitted by the due process clause of the Fourteenth Amendment. *Superior Supply Co. v. Associated Pipe & Supply Co.*, 515 So. 2d 790, 792 (La. 1987). In *Superior Supply*, the Court stated that under "the express terms of the present long-arm statute, the sole inquiry into jurisdiction into a nonresident is a one-step analysis of the constitutional due process requirements. If the assertion of jurisdiction meets the constitutional requirements of due process, jurisdiction is authorized under the long-arm statute." *Id. Petroleum Helicopters, Inc. v. AVCO Corp.*, 513 So. 2d 1188, 1192 (La. 1987); see also *Puckett v. Advance Sports, Inc.*, No. 2009 CA 0507, 2009 WL 3430283 (La. App. 1 Cir. Oct. 26, 2009) at 4; *Thomas v. Kennedy*, 75 Fed. Appx. 281, 283 (5th Cir. 2003). Under this framework, the Court need only look to due process requirements to find jurisdiction lacking in this case.

Minimum contacts supporting personal jurisdiction can arise in two separate ways in the due process analysis. First, minimum contacts can be found to exist under "specific" jurisdiction when a cause of action arises out of a defendant's purposeful contacts with the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). Where a cause of action does not arise out of the foreign defendant's purposeful contacts with the forum, however, due process requires that the defendant have engaged in "continuous and systemic contacts" in the forum to support the exercise of "general" jurisdiction over that defendant. *Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 786 (5th Cir. 1990); *Helicopteros*, 466 U.S. at 415 n. 9. With respect to general jurisdiction, contacts of a more extensive quality and nature are required. *Asarco*, 912 F.2d at 786.

Standard Pacific has no contacts whatsoever with Louisiana either related or unrelated to this lawsuit. Nor does the Amended Omnibus Class Action Complaint allege any such contacts. As a result, taken in turn, neither specific nor general jurisdiction is appropriate here.

    1.     <u>Standard Pacific Is Not Subject to Specific Jurisdiction in this Court Because Plaintiffs' Causes of Action Do Not Arise Out of Standard Pacific's Contacts with Louisiana.</u>

In order to exercise specific jurisdiction over an out-of-state defendant, the defendant must have "purposefully directed" its activities at residents of the forum . . . and the litigation must have resulted from alleged injuries that "arise out of or relate to" those activities. *Stuart*, 722 F.2d at 1190, citing *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2182 (1985). The Amended Omnibus Complaint makes no allegations whatsoever supporting jurisdiction over Standard Pacific in Louisiana. In fact, the only activities Plaintiffs cite that relate to Standard Pacific are contacts to Florida—not Louisiana. (Doc. No. 8781-3, p. 23.)

4

The Amended Omnibus Class Action Complaint is brought by over 900 Plaintiffs. Only one Plaintiff, however, is attempting to allege claims against Standard Pacific. The sole Plaintiff proceeding against Standard Pacific is identified as Kelli Patterson, residing at 622 SW 147th Terrace, Pembroke Pines, Florida 33027. (Doc. 8781-1, p. 78.)

Exhibit B to Plaintiffs' Amended Omnibus Complaint correctly alleges that the principal place of business for Standard Pacific is located in Florida. (Doc. No. 8781-3, p. 23.) Indeed, Standard Pacific only does business within the State of Florida. Standard Pacific has never transacted business, been involved in any business activities, entered into contracts, owned real estate, conducted meetings, maintained a corporate presence, telephone number, tax identification number, employees or agents in Louisiana. *See* Pelletz Declaration, ¶¶ 3-9.[2]

As set forth in the accompanying Declaration of David Pelletz, Standard Pacific builds residential homes in only one state -- Florida. *See* Pelletz Declaration, ¶ 3. The Amended Complaint identifies only one Plaintiff, Kelli Patterson, as attempting to allege claims against Standard Pacific. (Doc. 8781-1, p. 78.) Ms. Patterson, however, resides in Florida -- not Louisiana. Thus, the sole Plaintiff purporting to bring claims against Standard Pacific has sued with respect to a single home built by Standard Pacific in Florida, not Louisiana. This makes perfect sense, of course, given that Standard Pacific builds homes exclusively in Florida.

Plaintiffs have not, and cannot, establish that specific jurisdiction is appropriate against Standard Pacific. The single home at issue with respect to Standard Pacific was built in the State of Florida. Thus, the claims contained in the Amended Omnibus Class Action Complaint clearly did not arise out of any specific contact between Standard Pacific and Louisiana, and specific jurisdiction is therefore inappropriate.

---

[2] The declaration of David Pelletz is being filed concurrently herewith and is cited herein as "Pelletz Declaration." Mr. Pelletz is the President of Standard Pacific of South Florida GP, Inc.

**2.**     **Standard Pacific Is Not Subject to General Jurisdiction Because it Has Not Engaged in Continuous and Systemic Contact With Louisiana.**

Likewise, Standard Pacific does not have sufficient minimum contacts with Louisiana to subject it to general jurisdiction.   In order to comply with due process requirements, a corporation must have sufficient contacts with the forum state to subject it to personal jurisdiction. *Helicopteros*, 466 U.S. at 414. Those contacts must be sufficiently "systemic and continuous" to support general jurisdiction. *Stuart*, 772 F.2d at 1191, citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contracts between a Defendant and forum." *Olagues v. Kousharian*, 557 F.Supp 2d 731 (E.D. La. 2008).

Standard Pacific is not incorporated in Louisiana and does not do business in Louisiana. *See* Pelletz Declaration, ¶¶ 3-4. It has no subsidiaries, employees, or officers within the State of Louisiana. *Id.* at ¶¶ 4-5. Nor has it contracted with any persons residing in Louisiana to act on its behalf with respect to marketing or promoting any of the homes built by Standard Pacific. *Id.* at ¶ 6. Standard Pacific has no branch office or comparable facility in Louisiana. *Id.* at ¶ 7. Likewise, Standard Pacific has no telephone listing, mailing address, bank account, or tangible personal or real property in Louisiana. *Id.* Standard Pacific does not direct any of its advertising specifically towards Louisiana residents, nor does it advertise in any publications that are directed specifically towards Louisiana residents. *Id.* at ¶ 8. No meetings of Standard Pacific's officers or employees have been held in Louisiana, and none of its officers or employees have attended business conferences or other similar functions on behalf of Standard Pacific within the State of Louisiana. *Id.* at ¶ 9.

The record therefore clearly indicates that Standard Pacific has not engaged in any contact—much less systemic and continuous contact—with Louisiana to subject it to jurisdiction here.

      **3.**      <u>**Subjecting Standard Pacific to Personal Jurisdiction in Louisiana Would Offend Traditional Notions of Fair Play and Substantial Justice.**</u>

Not only does Standard Pacific have insufficient minimum contacts with Louisiana to subject it to suit here, doing so would violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). The criteria of fairness requires that the Court consider "among other things, the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities." *Stuart*, 772 F.2d at 1191 citing *Southwest Offset, Inc. v. Hudco Publishing Co.*, 622 F.2d 149, 152 (5th Cir. 1980). "Nevertheless the fairness factors cannot themselves invest the court with jurisdiction over a nonresident when the minimum contacts analysis weighs against the exercise of jurisdiction." *Id.*

Once the Court determines that there are insufficient contacts between a defendant and the forum state to support the exercise of personal jurisdiction, as here, the Court need not consider the fairness requirement of the due process test because "the fairness prong cannot compensate or overcome the requirement of some minimum contacts with the forum state." *Stuart*, 772 F.2d at 1194 n. 7, quoting *Groden v. Ed Bowlin & Assocs., Inc.*, 733 F.2d 1149, 1150-51 (5th Cir. 1984). Because Standard Pacific has no contacts whatsoever with Louisiana, much less minimum contacts, the fairness prong is irrelevant to the due process analysis.

Even if Standard Pacific had any contacts whatsoever within the State of Louisiana, however, it would be unfair to subject it to jurisdiction in Louisiana. Although Louisiana may have an interest in this case as it pertains to other Defendants, it clearly does not have an interest as it pertains to Standard Pacific. Standard Pacific has done nothing to subject itself to jurisdiction here. The single home at issue with respect to this Standard Pacific is located in Florida. It would be entirely inconvenient and unfair for Standard Pacific to be forced to defend itself in this distant forum. The burden and expense of litigating this complex case in Louisiana, with the significant travel requirements in conjunction therewith, clearly outweigh any benefit in exercising jurisdiction over it.

**B.      The Status of This Case as a Class Action and a Multi-District Litigation Has No Effect on the Personal Jurisdiction Analysis.**

The requisite jurisdictional analysis set forth above does not change merely because Plaintiffs have opted to bring a class action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) & (d)(6). *See In re Train Derailment Near Amite, Louisiana, on October 12, 2002*, No. MDL 1531, 2004 WL 224573, at *1, 3 (E.d. La. Feb. 3, 2004) (holding that conversion from multi-district litigation to class action had no bearing on the personal jurisdiction determination, which "depends solely on the defendant['s] ... conduct in and contacts from the forum state"). *See also Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768, 777-81 (S.D. Ill. 2009) (applying ordinary jurisdictional analysis to claim under CAFA); *Baumkel v. Scotts Miracle-Gro Co.*, No. 08-14137, 2009 WL 3190477, at *1-4 (E.D. Mich. Sept. 28, 2009) (same). CAFA expands the subject matter jurisdiction of the federal courts, but does not affect personal jurisdiction. Indeed, Congress could not by mere statute deprive a defendant of its constitutional due process right not to be subject to the judgment of a forum with which it has established no meaningful contacts.

8

Similarly, as explained by the Judicial Panel on Multidistrict Litigation, multidistrict litigation does not deprive Defendants of any right entitled to judicial protection, nor has Congress given any indication that in enacting 28 U.S.C. § 1407 "it intended to expand the territorial limits of effective service." *In re Library Editions of Children's Books*, 299 F. Supp. 1139, 1142 (J.P.M.L. 1969); *accord In re Gypsum Wallboard,* 302 F. Supp. 794, 794 n. 1 (J.D.M.L. 1969). In the absence of specific or general jurisdiction, this Court may not assert personal jurisdiction over Standard Pacific.

Thus, this Court lacks personal jurisdiction over Standard Pacific. The Amended Omnibus Class Action Complaint must therefore be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## II.      PLAINTIFFS' AMENDED OMNIBUS CLASS ACTION COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

All counts in Plaintiffs' Amended Omnibus Class Action Complaint must also be dismissed as to Standard Pacific for failure to state claims upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face'." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007)). A pleading that offers "labels" and "conclusion" or a "formalistic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted.) Nor does a complaint suffice if it tenders "naked assertion[s] devoid of further factual enhancement." *Id.* (internal citations omitted.)

Here, Plaintiffs' Complaint contains nothing but "threadbare recitals" of the elements of the claims they allege. This is precisely the type of pleading that is held deficient under *Twombly* and *Iqbal*. Nothing in Plaintiffs' allegations put Standard Pacific on notice of Plaintiffs' claims as to it individually. Rather, the Complaint contains "threadbare" allegations,

lumping all Defendants together.  It must be dismissed for failure to state a claim, as set forth below.

**A.**     **Plaintiffs' Tort Claims (Counts I, II, III, XI, XII, and XIV) are Barred, in Whole or in Part, by the Economic Loss Rule.**

Plaintiffs are barred by the contractual privity economic loss rule from bringing tort claims against Standard Pacific.  This Court has already determined that homebuilders, like Standard Pacific, who have entered contracts with homeowners are protected by the economic loss rule from tort claims:

> The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contractor breach, and in other limited circumstances.  The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall.  Accordingly, **under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.**

MDL No. 2047 Order & Reasons (Jan. 13, 2010) at 30.[3]   (Internal citations omitted.) (Emphasis added.)

Like this Court, Florida courts presiding over Chinese drywall cases have also correctly applied the contractual privity economic loss rule to bar tort claims by homeowners against a defendant homebuilder.  *See Marlene Bennett v. Centerline Homes Inc., et al.,* No. 50 2009 CA 014458 (Fla. 15th Cir. Ct.) (Omnibus Order on Pending Motions to Dismiss, Nov. 10, 2010).[4]   The Omnibus Order on Pending Motions to Dismiss in *Bennett* is attached hereto as Exhibit 2.

In *Bennett*, the plaintiff homeowners sued the defendant homebuilders, suppliers and installers for allegedly defective Chinese drywall.  The plaintiffs sought both economic losses and personal injury.  The defendant homebuilders, suppliers, and installers moved to dismiss the

---

[3] The Court's January 13, 2010 Order & Reasons applies to all MDL drywall cases, and is attached as Exhibit 1.
[4] In some jurisdictions, including the one where *Bennett* was decided, Chinese drywall claims have been consolidated so that the presiding court can issue "omnibus orders" that are meant to apply to all similarly-situated litigants.

plaintiffs' tort claims under the economic loss rule. *Id.* at 1. The court granted the homebuilders' motion and dismissed the tort claims based on the contractual privity economic loss rule. *Id.* at 2 and 9.

As to the claims against the homebuilders, the court found that "the damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders." *Id.* at 3. Citing *Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004), the court then held that the "plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court." *Id.* at 3. Therefore, "[t]raditional contract damages must be applied to the economic losses suffered by the plaintiffs." *Id.* at 3. The *Bennett* court also held that none of the recognized exceptions to the rule apply where privity exists. *Id.* at 3. It further refused to "create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product." *Id.* at p. 3, fn. 1.[5]

The contractual privity economic loss rule clearly bars Plaintiffs' tort claims against Standard Pacific. The sole Plaintiff attempting to assert claims against Standard Pacific - Kelli Patterson - is in privity with Standard Pacific by virtue of the Purchase Contract she entered for the purchase of her home. As such, any economic losses sought by Ms. Patterson from the allegedly defective Chinese drywall arise out of the Purchase Contract she entered with Standard Pacific. Contract principles are therefore more appropriate to remedy Ms. Patterson's claims, and she should not be allowed to "circumvent the contractual agreement by making a claim for economic loss in tort [ ], in effect, seeking to obtain a better bargain than originally made."

---

[5] Indeed, Plaintiffs here assert similar allegations in their Complaint, alleging that the Chinese drywall is "unreasonably dangerous." *See* Complaint at ¶ 26. However, as the *Bennett* court recognized, such sweeping assertions are insufficient to take Plaintiffs' claims beyond the reach of the economic loss rules because mere "assertion that the drywall is an unreasonably dangerous product" will not create an exception to the contractual privity economic loss rule. *Bennett*, No. 50 2009 CA 014458, at p. 3 fn. 1.

*Indemnity Ins. Co. of North Am.*, 891 So. 2d at 536.   Thus, the rulings entered by this Court, the *Bennett* court, and most importantly, the Florida Supreme Court in *Indemnity Insurance* should similarly govern here: **tort claims brought by Plaintiffs in privity with Standard Pacific are barred by the contractual privity economic loss rule and should be dismissed with prejudice.**

Precluding Plaintiffs (like Ms. Patterson) from asserting tort claims against Standard Pacific is also consistent with the policy behind the contractual privity economic loss rule.   As previously explained, the whole reason for the contractual privity economic loss rule is "to protect the integrity of the contract."   *Id.* at 538.   To allow Plaintiffs who are in privity with Standard Pacific to bring tort claims against it would completely undermine this policy.   Counts I, II, III, XI, XII, and XIV must therefore be dismissed.

**B.**     **Plaintiffs' Negligence Allegations (Count I) are False and Improperly Pled.**

Plaintiffs' negligence claim contained in Count I illustrates why Standard Pacific does not belong in this lawsuit.   The Amended Omnibus Complaint alleges that Standard Pacific somehow owed Plaintiffs a duty to exercise reasonable care in "designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, installing, marketing, and/or selling" the drywall in question.   (Complaint at ¶ 42.)   The Complaint goes on to further allege that Defendants had a duty to provide Plaintiffs with certain warnings about the drywall.   (*Id.* at ¶ 45.)   At least one Florida court, however, has already concluded that homebuilders have no "general duty to inspect or test the Chinese manufactured drywall for a latent defect, or to warn homeowners of the existence of a latent defect in the drywall" and that the drywall is not "inherently dangerous."   *See Bennett v. Centerline Homes, Inc.*., No. 2009 CA 014458 (Fla. 15th Jud. Cir., March 18, 2011) (the "Fla. 15th Cir. Second Omnibus Order") (attached as Exhibit 3)

(dismissing, on an omnibus basis, all plaintiffs' negligence claims "based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall" where there was no "actual or implied notice of the defect"). This ruling is soundly based on Florida law, as explained in detail below, and should apply here as well.

To state a negligence claim, a plaintiff must plead and prove (among other things) that the defendant owed a duty to the plaintiff, and that the duty was breached. *See Hansenfus v. Secord*, 962 F.2d 1556, 1560-61 (11th Cir. 1992) (applying Florida law, stating "Failure to establish any one of these elements is fatal to the plaintiff's case."). Plaintiffs can allege neither prerequisite here. Standard Pacific owed no duty of care with respect to Plaintiffs' drywall. Under Florida law, even manufacturers, retailers and distributors – all of whom arguably bear a *greater* responsibility toward their products than a builder like Standard Pacific – have a duty to inspect or warn **only** when the product is considered "inherently dangerous." *See O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim because manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. May 22, 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous.") Drywall obviously does not fit into the narrow "inherently dangerous" category, and the Omnibus Complaint does not allege otherwise.[6] *See* Fla. 15th Cir. Second Omnibus Order, Exhibit 3, at 2 ("Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous.").

---

[6] "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category. They include highly toxic materials, second hand guns and drugs.... In other words ... a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (internal citations omitted). By way of illustration, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are **not** "inherently dangerous." Drywall would certainly not be an "inherently dangerous" product under Florida law.

13

Second, Standard Pacific cannot be held liable in negligence for latent defects absent actual or implied knowledge of those defects. *See id.* (dismissing claims for negligence unless "plaintiffs can, in good faith, plead notice against an individual [builder]"). *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1991). The alleged defects in the drywall are plainly latent, and the law is clear that, absent any "inherently dangerous" product or actual or implied knowledge – neither of which Plaintiffs can allege in "good faith" – Count I fails as a matter of law. The boilerplate, and wholly unsupported assertion that Defendants "knew or should have known" that the drywall would "harm" Plaintiffs (Complaint at ¶ 43) is a mere legal conclusion that cannot salvage a negligence claim.

### C.   Plaintiffs Have Not Stated a Claim for Negligence Per Se (Count II).

Aside from being barred by the economic loss rule, Plaintiffs' negligence per se claim must also be dismissed because the Amended Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which established a duty to take precautions to protect a **particular class of persons** from a **particular type of injury**." *DeJesus v. Seaboard Coast Line RR. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se. First, they have not identified a statute that Standard Pacific allegedly violated, much less explained how that violation occurred. Rather, the Amended Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "duties," including "those imposed under the International Building

Code ('IBC') and other State and local Building Codes" and "furnished the drywall in violation of ASTMC C 1396/C 1396M-069." (Complaint at ¶ 52.) Plaintiffs, however, do not state how Standard Pacific, or any of the other unspecified "Defendants," have violated this code. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Standard Pacific allegedly violated are "designed to protect the **general public** rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). At brass tacks, Plaintiffs' negligence per se claim is nothing more than a garden-variety negligence claim and it should be dismissed for this reason as well.

**D.    Plaintiffs Have No Strict Liability Claim Against Standard Pacific.**

Plaintiffs' strict liability claim (Count III) is premised on the allegation that Standard Pacific was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." (Complaint at ¶ 57.) This allegation is incorrect as to Standard Pacific and precludes Plaintiffs' strict liability claim against it.

Standard Pacific cannot be sued under a strict liability theory because it did not manufacture or distribute the allegedly defective drywall. *See* Fla. 15th Cir. Omnibus Order, Exhibit 2, at 9 (dismissing all plaintiffs' claims of strict liability against builders because "the defendant homebuilders did not manufacture the drywall at issue"); *Bissoon v. Centerline Homes Construction, Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) (attached as Exhibit 4) (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims

15

do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions"). The Amended Omnibus Complaint itself identifies Standard Pacific as a "Builder." (Doc. 8781-3, p. 23.) Strict products liability, however, is reserved for product manufacturers and distributors – not homebuilders. *See Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claims "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Furthermore, the allegedly defective drywall is not a "product" for purposes of strict liability. *See* Fla. 15th Cir. Ominbus Order, Exhibit 2, at 8 ("The law in Florida appears well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products.") Rather, under Florida strict liability law, the drywall is considered a "structural improvement," since it is an integral part of Plaintiffs' homes. *See Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007). "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Federal Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008); *see Plaza*, 971 So. 2d at 924 (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as a structural improvement to real property); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

E.     **Plaintiffs Cannot Maintain A Warranty Claim (Counts IV & VI).**

In Counts IV (Breach of Express and/or Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs attempt to allege causes of action based on various express and implied warranties. Neither claim can be maintained against Standard Pacific.

The express and implied warranty claims must be dismissed with prejudice because the Purchase Contracts used by Standard Pacific disclaim all such warranties.   Specifically, paragraph six of the Purchase Contract is titled "WARRANTY" in capitals, and within it is the following disclaimer (similarly in all capital letters):

> THE ONLY WARRANTIES AFFORDED PURCHASER BY SELLER ARE THOSE DESCRIBED IN THE STANDARD BUILDER'S WARRANTY TO BE PROVIDED BY SELLER TO PURCHASER AT CLOSING.   ALL OTHER WARRANTIES (EXPRESS OR IMPLIED) OF ANY NATURE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY WAIVED AND DISCLAIMED BY PURCHASER.

*See* Purchase Contracts at ¶ 6 (emphasis in original Purchase Contracts for each Plaintiff).

Furthermore, the standard Builder's Warranty referenced in the quoted provisions above contain a separate and distinct section entitled "GENERAL WARRANTY PROVISIONS" in capitals.   There, paragraph seven of section D sets forth an unambiguous and conspicuous waiver of implied warranties in bold:

**7.** **Waiver of Implied Warranties – (Habitability,**
**Merchantability, Fitness for a Particular Purpose and/or Good**
**and Workmanlike Construction) – By receiving, and accepting**
**and/or agreeing to the BBWG Express Limited Warranty**
**including but not limited to the terms and conditions contained**
**herein, You hereby waive any and all other express or implied**
**warranties, including but not limited to any oral or written**
**representations or statements made by the builder or any other**
**implied warranty including but not limited to warranties of**
**habitability, merchantability, fitness for a particular purpose**
**and/or good and workmanlike construction. This waiver shall**
**not apply to the extent not permitted by the law of the state in**
**which the property is located.**

Warranty disclosures in contracts are valid under Florida law. *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties). Therefore, Plaintiffs' express and implied warranty claims are barred and must be dismissed.

**F.   Plaintiffs' Breach of Contract Claim (Count VII) Must be Dismissed.**

Plaintiffs have failed to allege a viable claim for breach of contract against Standard Pacific.   The Amended Omnibus Complaint states only that Defendants "contracted with [Plaintiffs] to construct homes that would be free of defects."   (Complaint at ¶ 102.)   This assertion is insufficient on its face, because it fails to identify the source of Standard Pacific's alleged duty to construct homes "free of defects."   To bring a breach of contract claim, Plaintiffs must, at the very least, "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Insurance Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

The "Omnibus" nature of the Complaint does not alleviate Plaintiffs' burden when attempting to state a cause of action.   Plaintiffs must base any breach of contract claim on the actual contract between the respective parties.   Plaintiffs' failure to do so requires dismissal of the breach of contract claim.

**G.   Plaintiffs Cannot State a Claim for Private Nuisance (Count XI).**

Plaintiffs' private nuisance claim (Count XI) would fail even if it was not barred by the economic loss rule. *See* Fla. 15th Cir. Omnibus Order, Exhibit 2, at 7 (dismissing all plaintiffs' private nuisance claims against homebuilders because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance"); *accord In re: Chinese Drywall Litig.*, No. 10-28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) (attached as Exhibit 5) (dismissing a private nuisance claim based on defective drywall: "This Court finds Judge Kelley's ruling [in the *Bennett* case] to be persuasive in his finding that neither the case

law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case.").

A private nuisance claim requires the claimant to establish an injury to his or her own property **in connection with the use of the real property of someone else**. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another.")  Plaintiffs, however, do not allege that any purported injuries resulted from real property owned by Standard Pacific.  To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame.  (Complaint at ¶ 137.)  That allegation simply does not state a claim for private nuisance. *See, e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the plaintiff's] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**H.     Plaintiffs Cannot Bring a Claim for Unjust Enrichment (Count XII).**

Plaintiffs' unjust enrichment claim (Count XII) fails for multiple reasons. First, any Plaintiff purporting to sue Standard Pacific -- including Ms. Patterson -- would have entered a Purchase Contract with Standard Pacific.  The Purchase Contracts foreclose a quasi-contractual theory.  "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *American Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Where (as here)

Plaintiffs admit to the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").[7]

In addition, Plaintiffs fails to allege a critical element of a claim for unjust enrichment – that any purposed enrichment be unjust. The elements of unjust enrichment are that "(1) **the plaintiff has conferred a benefit on the defendant**; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that **it would be inequitable for the defendant to retain the benefit** without paying fair value for it." *Commerce Partnership 8098 Ltd. V. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005). As to the fourth element, there is nothing inequitable or unjust about permitting Standard Pacific to retain whatever benefit it received for building homes. It has not, and cannot, be disputed that Standard Pacific paid third parties (*i.e.*, subcontractors, suppliers, and distributors) for the drywall in question. As a Florida appellate court explained in *Maloney v. Therm Alum Industries, Corp.*, "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, **if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit**." 636 So. 2d 767, 770 (Fla. 4th DCA 1994), *overruled on other grounds by, Commerce Partnership*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).

---

[7] Even if the existence of an express contract did not bar Plaintiffs' unjust enrichment claim against Standard Pacific, the economic loss rule would.

Thus, Plaintiffs' claim for unjust enrichment is barred.

**I.**     **The Amended Omnibus Complaint Fails to State a Claim Under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

Plaintiffs also attempt to allege a violation of "various Consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"). (Complaint at ¶148.)  A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Security Monitoring, Inc. v. Alarm One, Inc.,* No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, **claims arising under the FDUTPA must be pled with particularity**." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.,* No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Technologies, LLC v. Integra Luxtec, Inc.,* No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Amended Omnibus Complaint falls far short of this heightened standard. Indeed, it alleges **no specific facts** in support of Plaintiffs' FDUTPA claim. (*See* Complaint at ¶¶ 148-151.) It does not identify a single instance in which Standard Pacific - by its words or conduct - deceived Plaintiffs or treated them unfairly. Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b). *See Florida Digital Network, Inc. v. N. Telecom, Inc.,* No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic,* 2009 WL 722320, at *2 (same).[8]

Plaintiffs' failure, however, is not merely one of pleading. The FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to Plaintiffs. *See Rollins v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.,* No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Standard Pacific provided services - namely, the construction of homes - Plaintiffs can establish "actual damages" only by showing a difference between the "market value" of the services that Standard Pacific actually provided and the services that Standard Pacific was required to provide.[9] *See Collins v. Daimler-Chrysler Corp.,* 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in

---

[8] Plaintiffs' FDUTPA claim would be inadequately pled even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.,* No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).
[9] The same would hold true if Standard Pacific had delivered a "product"—*i.e.,* a completed home—rather than providing a "service." To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the home as delivered, and its market value in the condition in which it should have been delivered. *See Collins,* 894 So. 2d at 990.

which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties"). (citations omitted).

As a matter of law, Plaintiffs cannot make this showing.  There is zero evidence - and Plaintiffs do not appear to suggest - that the manner in which Standard Pacific **constructed** the homes was in any way responsible for the allegedly defective drywall.  The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." MDL No. 2047 Order & Reasons, Exhibit 1, at 18-19.

So even if Plaintiffs could conceivably replead the FDUTPA claim with the particularity demanded by Rule 9(b), Plaintiffs have no hope of establishing the "actual damages" component of that claim.  Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. American Med. Systems, Inc.,* 886 F. Supp. 842, 851 (N.D. Fla. 1995). Count XIII must be dismissed for this reason as well.

**J.**     **Plaintiffs' Claim for Equitable Relief and Medical Monitoring (Count XIV) Cannot Go Forward Against Standard Pacific.**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV).  This hybrid, catch-all type claim seeks, among other things, an order that Standard Pacific "buy back or rescind" the contract and "create, fund, and support a medical monitoring program." (Complaint at ¶155.)  This claim cannot survive.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Because Plaintiffs' substantive claims are due for dismissal, so too are their derivative claims for

injunctive relief. See, *e.g., Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support for an injunction, the Court should nevertheless dismiss the injunction claim because Plaintiffs have failed to state more than a conclusory allegation regarding the availability of an adequate legal remedy or how Plaintiffs would suffer irreparable harm. Injunctions under both federal and Florida law require these elements. See, *e.g., Tucker v. Citigroup Global Mkts. Inc.,* No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted).  Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in the Amended Omnibus Complaint - including, most notably, for "compensatory and statutory damages" - are inadequate or why Plaintiffs should be entitled to the extraordinary remedy of an injunction. See, *e.g., Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.,* 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly

recognized a right to medical monitoring. It is hardly clear, then, that Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Amended Omnibus Complaint do not state an actionable claim. At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co,* the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the cost of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Amended Omnibus Complaint makes no attempt to properly allege these elements. Instead, Count XIV sets forth a series of legal conclusions—*e.g.,* "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct"— without a shred of factual detail. (Complaint at ¶ 159.) The Complaint fails to identify an actual medical condition that Plaintiffs developed due to the drywall; nor does it identify a monitoring procedure for any supposed condition. Instead, the Complaint only states that "exposure **may** lead to serious health problems, diseases, and medical conditions" or an "increased **risk** of contracting a serious latent disease." (Complaint at ¶¶ 160 & 162.) (Emphasis added.) Plaintiffs would have this Court speculate about a theoretical risk of undisclosed ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring. It states a series of legal conclusions, and those "do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate). The glaring deficiencies highlighted above make the final Count subject to dismissal on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring ... is a separate cause of action with seven specific elements the plaintiffs must establish ..., including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").

Finally, Plaintiffs' claim for medical monitoring is intercepted by the economic loss rule, as any of the Plaintiffs asserting claims against Standard Pacific are in direct privity by virtue of the Purchase Contracts. The allegedly hazardous "exposures" upon which the medical monitoring claim is based was caused, according to the Amended Omnibus Complaint, by Standard Pacific's "negligent and otherwise tortious conduct." (Complaint at ¶ 159.) But the

contractual privity economic loss rule precludes Plaintiffs from circumventing the applicable contracts through allegations in tort.[10]

## **CONCLUSION**

In the Amended Omnibus Class Action Complaint, Plaintiffs failed to allege any grounds upon which this Court may exercise personal jurisdiction over Standard Pacific. The facts of this case and the Declaration of David Pelletz demonstrate that Standard Pacific has not engaged in any activity which would subject it to personal jurisdiction in Louisiana. For the foregoing reasons, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Amended Omnibus Class Action Complaint must be dismissed as to Defendant Standard Pacific of South Florida GP, Inc., based on the absence of personal jurisdiction. Alternatively, the Complaint must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ Rocco Cafaro
Rocco Cafaro, Florida Bar No. 507121
Lara J. Tibbals, Florida Bar No. 129054
HILL, WARD & HENDERSON, PA
101 East Kennedy Boulevard, Suite 3700
Tampa, Florida  33602-2231
Tel: (813) 221-3900
Fax: (813) 221-2900

Counsel for Standard Pacific of South Florida GP, Inc.

---

[10] While Plaintiffs have mechanically alleged the basic elements of a claim for medical monitoring, Standard Pacific disputes the availability of this unusual form of relief, particularly because the Amended Omnibus Complaint does not name a single medical condition caused by the allegedly defective drywall, let alone identify a medical procedure that could monitor or treat such condition. *See Petito v. A.H. Robins Co., Inc.,* 750 So. 2d 103, 106 (Fla. 3d DCA 1999) (setting forth seven elements for cause of action for medical monitoring).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and email or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of January, 2012.

/s/ Rocco Cafaro_____
Rocco Cafaro
Counsel for Standard Pacific of South Florida GP, Inc.

2648892v1