UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * | MDL NO. 2047<br><br>SECTION "L" |
| THIS DOCUMENT RELATES TO | * | JUDGE FALLON |
| Hobbie, et al.<br>v.<br>RCR Holdings II, L.L.C., et al. | *<br><br>* | MAG. JUDGE WILKINSON |
| Case No. 10-1113 | * | |

\*  \*  \*  \*  \*  \*  \*

### PRECISION DRYWALL, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

COMES NOW the Defendant, Precision Drywall, Inc. ("Precision"), by and through its undersigned attorneys, which, pursuant to Fed. R. Civ. Pro., Rule 12(b)(6) and for the reasons discussed below, requests that the court issue an order dismissing Counts I ("Strict Liability"), II ("Negligence - Property Damage"), III ("Alternative Pleading of Breach of Warranty of Fitness") and VI ("Nuisance") of the Plaintiffs' Second Amended Class Action Complaint ("Complaint").

## FACTS

Plaintiffs are owners of individual condominium units in a complex known as "Vila Lago" ("Project"), who allege damages from the installation of allegedly defective Chinese drywall in the Plaintiffs class members' respective condominium units. The construction of the Project began

in 2005 and a certificate of occupancy was issued January 26, 2007.[1] In or about 2009, Plaintiffs suspected that the building may contain Chinese drywall, which plaintiffs allege has caused damage to the individual units in the Project. On or about Plaintiffs sued Precision as the installer of the drywall, along with several other parties involved in the construction and sale of the Project.[2]

## STANDARD OF REVIEW

To survive Fed. R. Civ. Proc. Rule 12(b)(6), dismissal motion, a plaintiff must allege more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."[3] A complaint is insufficient if it includes only "naked assertions devoid of further factual enhancement."[4] While the court views allegations of the complaint in the light most favorable to the plaintiff, takes plaintiff's allegations to be true, and accepts all reasonable inferences therefrom, the plaintiff must provide "enough facts to state a claim that is plausible **on its face**."[5] The complaint's "[f]actual allegations must be enough to raise a right to relief above the

---

[1] See Complaint at Paragraphs 138 and 139.

[2] See Complaint at Paragraphs 155(a) and 168.

[3] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

[4] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotations omitted).

[5] Bell Atl. Corp., 550 U.S. at 570 (emphasis added).

2

speculative level."[6]  More simply, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts" will subject a complaint to dismissal.[7]

Factual allegations do not need to be in detail, but do demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."[8] Sheer possibility that the defendant acted unlawfully does not state a facially plausible claim for relief.[9]  In addition, Fed. R. Civ. Proc. Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.[10]

In this multi-district litigation, this Court, as the transferee court, applies the law of the transferor courts.[11]  Because this matter was transferred to this Court from a Florida District Court in Florida, the laws of Florida should apply to each of the issues presented.

### THE ENTIRE COMPLAINT

In each of the Counts, the Plaintiffs have improperly commingled claims against all of the Defendants. As the court said in Aspsoft, Inc. v. WebClay:

---

[6] Id.

[7] Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

[8] Ashcroft, 129 S. Ct. at 1949 (2009).

[9] Waters Edge Living, LLC v. Rsui Indem. Co., 355 Fed. Appx. 318, 2009 U.S. App. LEXIS 26426, 2009 WL 4366031 at *3 (11th Cir. 2009) (citing Ashcroft, 129 S. Ct. at 1949).

[10] Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

[11] In re Chinese Manufactured Drywall Products Liability Litigation, 680 F.Supp.2d 780, 782 (E.D. La. 2010) (citing In re Masonite Corp. Hardboard Siding Prods. Liab. Litig., 170 F.R.D. 417, 442 (E.D. La. 1997)).

> Count I of Plaintiffs Amended Complaint impermissibly commingles separate and distinct claims against multiple Defendants . . ..[12]

That's precisely the situation in the Precision case. The Complaint in its entirety fails to state any proper causes of action against Precision. The Plaintiffs should be required to separately allege their causes of action against each individual defendant. The Complaint further improperly realleges the allegations of preceding Counts in subsequent Counts.

## COUNT I - STRICT LIABILITY

Count I of the Complaint attempts to sets forth a claim for strict products liability against Precision.[13] This count should be properly dismissed for two reasons:

- drywall -- Chinese or domestic -- is more appropriately considered a structural improvement and not a product; and,

- Precision is a service provider, not a provider of a product, and is not in the chain of distribution.[14]

---

[12] Aspsoft, Inc. v. WebClay, 983 So.2d 761, 766 (Fla. 5th DCA 2008).

[13] See Complaint at Paragraphs 165 - 176.

[14] Plaintiffs readily admit in the Complaint that Precision is a "drywall installer" and only installed alleged Chinese Drywall on the Project. Id. at Paragraphs 126 and 167, respectively.

4

### A. Strict Liability does not apply to Structural Improvements of Real Property.

Florida courts have expressly declined to extend the principals of strict liability to apply to structural improvements to real estate.[15] Rather, Florida courts do not find structural improvements to be products at all.[16]

In this case, the drywall was incorporated into the Project as a structural improvement to real property -- the condominium units. Considering the voluminous supporting Florida case law, this Court should apply the structural improvement principle to the allegations in the Complaint and dismiss the strict liability claims as a dispositive issue of law.[17]

---

[15] See Plaza v. Fisher Development, Inc., 971 So. 2d 918 (Fla. 3d DCA 2007); Neumann v. Davis Water & Waste, Inc., 433 So. 2d 559 (Fla. 2d DCA 1983) ("We decline to extend the strict liability principal of West v. Caterpillar Tractor Co., Inc., 336 So. 2d 80 (Fla. 1976), to structural improvements to real estate"); Pamperin v. Interlake Companies, Inc., 634 So. 2d 1137 (Fla. 1st DCA 1994) ("structural improvements to real property are generally not considered products for purposes of products liability actions."); Easterday v. Masiello, 518 So. 2d 260, 261 (Fla. 1988) (in affirming dismissal of a wrongful death action against architects and engineers alleging theories of negligence and strict liability following decedent's hanging at a jail facility, the Supreme Court of Florida stated "[i]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate"); Jackson v. L.A.W. Contracting Corp., 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) ("the summary judgment in favor of the contractor on the theory of strict liability was proper because the concept of strict liability applies to consumer products and does not apply to improvements to real property"); Edward M. Chadbourne, Inc. v. Vaughn, 491 So. 2d 551, 553 (Fla. 1986) ("We find that the public road Chadbourne constructed is not a product for purposes of the application of strict liability").

[16] Plaza v. Fisher Development, Inc., 971 So.2d 918 (Fla. 3rd DCA 2007); Federal Insurance Company v. Bonded Lightening Protection Systems, Inc., 2008 WL 5111260 (S.D. Fla.).

[17] See, Plaza, 971 So.2d 918 (rejecting claims against distributor of defective conveyor belt); Neumann, 433 So. 2d at 561(affirming dismissal of strict liability

5

**B.     Strict liability does not apply to Precision because it is only a service provider and was not within the chain of distribution.**

There are no allegations that Precision was a manufacturer, distributor, or seller of the drywall. Rather the Complaint only alleges that Precision was the "installer" -- a service provider. "[S]trict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."[18] Although the doctrine of strict liability has been expanded to include "others in the distributive chain including retailers, wholesalers, and distributors,"[19] Precision still

---

        claims against the installer of treatment tank in sewage facility as "integral part" of the facility); Easterday, 518 So.2d 260 (holding that jail facility was not product for purposes of strict liability); Craft v. Wet 'N Wild, Inc., 489 So. 2d 1221 (Fla. 5th DCA 1986) (declining to apply strict liability to water slide in amusement park built of soil and poured concrete); and, Foreline Security Corp. v. Scott, 871 So. 2d 906 (Fla. 5th DCA 2004) (rejecting contention that a security system installed in a bank is a "product" and not a "structural improvement").

[18]    Federal Ins. Co. v. Bonded Lightning Protection Systems, Inc., 2008 WL 5111260, *4 (S.D. Fla. 2008)(citing West v. Caterpillar Tractor Co., Inc., 336 So. 2d 80, 86 (Fla. 1976);. Ugaz v. American Airlines, Inc., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); and Jackson v. L.A.W. Contracting Corp., 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

[19]    Plaza v. Fisher Development, Inc., 971 So.2d 918 (Fla. 3d DCA 2007) (quoting Samuel Friedland Family Enters. v. Amoroso, 630 So. 2d 1067, 1068 (Fla. 1994); see, also, Mobley v. South Florida Beverage Corp., 500 So. 2d 292 (Fla. 3d DCA 1986) (retailers), review denied, 509 So.2d 1117 (Fla.1987); Visnoski v. J.C. Penney Co., 477 So.2d 29 (Fla. 2d DCA 1985) (distributors); Perry v. Luby Chevrolet, Inc., 446 So.2d 1150 (Fla. 3d DCA 1984) (retailers); Adobe Bldg. Centers, Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA) (retailers and wholesalers), review dismissed, 411 So.2d 380 (Fla. 1981).

does not fit into any of these categories and is not subject to the doctrine of strict liability under Florida law.

In Jackson, a Florida court held that the concept of strict liability did not apply against a contractor who only resurfaced a road with a defective product it did not manufacture. The court found that the contractor was a service provider for the improvement of real property and strict liability was not appropriate.[20]

Precision is more like the contractor in Jackson than a manufacturer, distributor or seller. Precision provided a service -- the installation of drywall. Without the drywall itself, Precision could not have provided its services. Precision is no more in the chain of distribution than a homebuilder and is more closely aligned with consumers. As the Florida Supreme Court explained in Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc.,"[t]hese homeowners bought finished products -- dwellings -- not the individual components of those dwellings."[21]

Accordingly, Count I should be dismissed or stricken because strict liability is a products liability cause of action that is not available against Precision.[22]

---

[20] Jackson, 481 So. 2d at 1292.

[21] Casa Clara Condominium Assoc. v. Charley Toppino and Sons, Inc., 620 So. 2d 1244, 1247 (Fla. 1993).

[22] Rose v. ADT Secunty Services, 989 So.2d 1244 (Fla. 1st DCA 2008); Juno Industries, Inc. v. Bielawski, 701 So.2d 1186 (Fla. 5th DCA 1997), Cintron v. Osmose Wood Preserving, Inc., 681 So.2d 859 (Fla. 5th DCA 1996); Lawrence v. Brendell Products, Inc., 619 So.2d 427 (Fla. 1st DCA 1993); Diversifed Products Corporation v. Faxon, 514 So.2d 1161 (Fla. 1st DCA 1987); and Visnoski v. J.C. Penney Company, 477 So.2d 29 (Fla. 2d DCA 1985).

7

### COUNT II - NEGLIGENCE - PROPERTY DAMAGE

Plaintiffs' negligence claims are premised on the unsupported and improper legal conclusions that Precision owed a duty to Plaintiffs to exercise reasonable care to inspect the drywall used in Plaintiffs' homes and to warn Plaintiffs of drywall that "could damage their property."[23] Florida laws do not impose such duties on parties in Precision's position -- that of an innocent installer. As such, there can be no breach of such duties and Plaintiffs' claims of negligence fail and must be dismissed.

To properly plead negligence in Florida, a plaintiff must show that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and, (3) the breach of that duty caused the plaintiff's damages.[24] "Under Florida law, the question of whether a duty is owed is linked to the concept of foreseeability."[25] "Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions."[26] "Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and forseeable risk of harming others."[27] Installing drywall in 2005 - 2007 simply did

---

[23] See Complaint at Paragraph 179.

[24] See Zivojinovich v. Barner, 525 F.3d 1059, 1067 (11th Cir. 2008) (citing Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)).

[25] Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1227 (Fla. 2010).

[26] McCain v. Florida Power Corp., 593 So. 2d 500, 503 (Fla. 1992).

[27] Id.

not create a foreseeable risk, particularly for the damages alleged by Plaintiffs. This very point was recognized in the holding of a recent Florida state court Chinese drywall case.[28]

As a matter of Florida law, Plaintiffs may not assert a negligence claim against Precision, the installer of the drywall, because Precision had no duty to protect plaintiff from an unknown and unforeseeable harm. The key words here are "unknown" and "foreseeable." In 2005 - 2007, it simply was not foreseeable that the alleged injuries or damages in the Complaint would result from the installation of drywall. Thus, under the facts and circumstances alleged in the Complaint, a legal duty did not arise because the alleged damages were not foreseeable. Precision cannot breach a duty that never existed; Plaintiffs' claim for negligence fails and should be dismissed as a matter of law.

Additionally supporting dismissal of Plaintiffs' negligence claims in this matter is Judge Kelley's decision in a Florida state court Chinese drywall matter, Bennett v. Centerline Homes, Inc.[29] In 2011 Bennett, Judge Kelley acknowledged that:

> Florida law does not impose a duty to inspect a product for a latent defect, or to warn others about a latent defect, unless the product is inherently dangerous. See Mendez v Honda Motor Co., 738 F.Supp. 481 (S.D. Fla. 1990); K-Mart Cmp. v.

---

[28] Federal Ins. Co. v. Bonded Lightning Protection Systems, Inc., 2008 WL 5111260, *4 (S.D. Fla. 2008)(citing West v. Caterpillar Tractor Co., Inc., 336 So. 2d 80, 86 (Fla. 1976);. Ugaz v. American Airlines, Inc., 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); Jackson v. L.A.W. Contracting Corp., 481 So. 2d 1290, 1291 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

[29] Bennett v. Centerline Homes, Inc., No. 09-CA-0114458, 15th Circuit Court, Palm Beach, Florida (March 18, 2011) (Kelley, J.) ("2011 Bennett"). See attached Exhibit "A."

Chairs, Inc., 506 So.2d 7, 8 n. 3 (Fla. 5th DCA 1987) (retailers have no duty to inspect for latent defects), review denied, 513 So.2d 1060 (Fla.l987); Dayton Tire and Rubber Co. v. Davis, 348 So.2d 575, 582 (Fla. 1st DCA 1977) (No duty to warn or inspect unless inherently dangerous.), quashed on other grounds, 358 So.2d 1339 (Fla.l978); Odum v. Gulf Tire and Supply Company, 196 F.Supp. 35 (N.D.Fla.l961). A product is inherently dangerous if it is "burdened with a latent danger which derives from the very nature of the article itself:" Tampa Drug Co. v. Wait, 103 So.2d 603, 608 (Fla.l958). **Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous**.[30]

In 2011 Bennett, Judge Kelley dismissed plaintiffs' negligence claims that were based on a "general duty to inspect, test or warn." Judge Kelley did, however, leave open the possibility that to the extent plaintiffs can, in good faith, plead notice or knowledge against an individual defendant in a specific case, such a claim **may** survive a motion to dismiss. As to Precision, the Complaint falls woefully short of these requirements of Florida law because no knowledge or notice by Precision is alleged; the claim should be dismissed.

Plaintiffs have failed to allege that, in 2005 - 2007 when the drywall was installed on the Project, Precision had any specific notice or knowledge of the alleged damages from the drywall. Plaintiffs have failed to even allege that such damages were foreseeable, much less known or "knowable." As such, plaintiffs allegation are insufficient and speculative and Plaintiffs' negligence claims should be dismissed as a matter of law.

---

[30] 2011 Bennett at p. 2 (emphasis added); See, also, Carter v. Hector Supply Co., 128 So.2d 390, 392 (Fla. 1961); Ryan v. Atlantic Fertilizer & Chemical Co., 515 So.2d 324, 326 (Fla. 3d DCA 1987); Skinner v. Volkswagen of America, Inc., 350 So.3d. 1122, 1123 (Fla. 3d DCA 1977).

## COUNT III - ALTERNATIVE PLEADING OF
## BREACH OF WARRANTY OF FITNESS

Plaintiffs again allege only that Precision installed the drywall.[31] Breach of warranty of fitness is not a proper legal theory against Precision, a drywall installer, who is not considered to be a merchant. Implied warranty theories are not applicable here because a contractor is considered a service provider, not a merchant. Lonnie D. Adams Building Contractor, Inc. v. O'Connor, is particularly on point.[32] In Adams, Adams purchased windows from a supplier and installed them in the Plaintiff's residence. The Court held that the implied warranties in the uniform commercial code were not applicable because "a contractor is viewed as a provider of services, not a merchant."[33] Similarly, in Sunshine-Jr. Stores, Inc. v. Autopump Services Company, Inc., which involves selling and installing new tanks and a canopy at a gas station after removing of the old tanks and canopy, the court recognized:

> [C]onstruction contracts are usually characterized as service contracts. [citation omitted]. The court points out that although construction contracts, (such as for houses and swimming pools), ? [sic] typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant' [citation omitted].[34]

---

[31] See Complaint at Paragraphs 155(a) and 168.

[32] Lonnie D. Adams Building Contractor, Inc. v. O'Connor, 714 So.3d 1178 (Fla. 2d DCA 1998).

[33] Id. at 1179.

[34] Sunshine-Jr. Stores, Inc. v. Autopump Services Company, Inc., 240 B.R. 788, 794 (M.D. Fla. 1999).

Even more importantly, to prevail on a claim for breach of warranty in Florida -- express or implied -- a plaintiff must be in privity of contract with the defendant.[35] The reasoning for the basic privity requirement is simple: "[a] warranty, whether express or implied, is fundamentally a contract."[36] There are no allegations in the Complaint, nor can there be, that Precision as the drywall installer, was in privity of contract with the Plaintiffs. Plaintiffs' breach of warranty claims should be dismissed on this dispositive issue of law.

## COUNT VI - NUISANCE

Plaintiffs have failed to state a claim for private nuisance based on the allegation that the Chinese-manufactured drywall off-gassing is causing a nuisance within the affected homes. Plaintiffs have failed to, and cannot, assert a claim for private nuisance under the alleged circumstances.

---

[35] See Ocana v. Ford Motor Co., 992 So. 2d 319, 325 (Fla. 3d DCA 2008) (Florida law requires privity of contract to maintain an action for breach of an implied warranty); Weiss v. Johansen, 898 So.2d 1009 (Fla. 4th DCA 2005) (citing T.W.M. v. Am. Med. Sys., Inc., 886 F.Supp. 842, 844 (N.D. Fla. 1995) (finding the recipient of allegedly defective product did not state a claim for breach of express warranty or breach of implied warranties of merchantability and fitness for a particular purpose absent any allegations that he purchased the product directly from the manufacturer or contracted with the manufacturer)); Federal Insurance Company v. Bonded Lightning Protection Systems, Inc., 2008 WL 5111260 at 7 (S.D. Fla.) (citing, inter alia, Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla. 1988); and West v. Caterpillar Tractor Co., 336 So. 3d 80 (Fla. 1976).

[36] T.W.M., 886 F. Supp at 844 (citations omitted).

In a recent decision at least one Florida state court has addressed this very issue as to nuisance claims brought on by Chinese drywall.[37] In 2010 Bennett, Judge Kelly summarized Florida nuisance law as:

> . . . using one's property as to injure the land or some incorporeal right of one's neighbor . . . The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that anyone is bound to use his property in such a manner as to not injure the property or rights of his neighbor. . . The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances. [38]

Judge Kelly's decision went on to find that Florida law recognizes the doctrine of private nuisance as essentially a mechanism that protects the property rights of one landowner from the unrestrained exercise of the property rights of another.[39] The 2010 Bennett decision also found that there were no cases that support the proposition that a nuisance may exist absent the defendant's exercise of its property rights.[40] Finally, after a review of the Florida cases, Judge Kelley found that neither the case law nor the policy underpinnings of the nuisance doctrine support a nuisance cause of action for off-gassing of Chinese drywall. As such, Judge Kelley dismissed the 2010 Bennett plaintiffs' claims for private nuisance.

---

[37] See Marlene Bennett v. Centerline Homes, No. 50 2009 CA 014458, 15th Circuit Court, Palm Beach, Florida (November 5, 2010) ("2010 Bennett") (Kelley, J.), attached as Exhibit "B."

[38] 2010 Bennett at p. 5 - 6 (citing Beckman v. Marshall, 85 So.2d 552, 554 - 555 (Fla. 1956)).

[39] Citing Jones v. Trawick, 75 So.2d 785, 787 (Fla. 1951).

[40] See e.g. Davey Compressor Co. v. City of Delray Beach, 639 So. 2d 595 (Fla. 1994).

13

The 2010 Bennett plaintiffs, just as the plaintiffs in this matter, alleged damages caused by their own real property. There was no allegation of damages from the property of another. The same is true here. While the allegations are somewhat ambiguous, the Plaintiffs are alleging that conditions in each of the units are creating a nuisance as to that particular unit. They do not allege that conditions in condominium unit "A" are creating a nuisance as to condominium unit "B." Such allegations are insufficient to support a nuisance claim and should be properly dismissed as a matter of law.

## ATTORNEY'S FEES

The Plaintiffs also include a prayer for attorney's fees. But, no basis has been pled to allow attorney's fees. The general rule is that "a court may only award attorney's fees when such fees are "expressly provided for by statute, rule, or contract."[41] Attorney's fees "cannot be awarded as a matter of equity."[42] Circumstances awarding attorney's fees do not exist in this matter. No statutory or contractual basis has been pled in the present case -- and non exists -- and, therefore, any claim or prayer for attorney's fees should be properly dismissed.

---

[41] Bane v. Bane, 775 SO.2d 938, 940 (Fla. 2000); Campbell v. Maze, 307 So.3d 234, 235 (Fla. 4th DCA 1975). See also, Dade County v. Pena, 664 So.2d 959 (Fla. 1995) and State Farm Fire & Casualty Co. v. Palma, 629 So.2d 830 (Fla. 1993), both of which recognize that Florida follows the "American Rule" that attorney's fees are awarded when authorized by statute or by agreement of the parties.

[42] Attorney's Title Ins. Fund, Inc. v. Landa-Posada, 984 So.2d 641, 643 (Fla. 3d DCA 2008).

## CONCLUSION

In summary, Counts I ("Strict Liability"), II ("Negligence - Property Damage"), III ("Alternative Pleading of Breach of Warranty of Fitness") and VI ("Nuisance") of the Complaint should be dismissed because:

- strict liability (Count I) does not apply to an improvement to real property, such as drywall, against anyone other than the manufacturer, or to someone within the chain of distribution -- Precision was neither;

- Plaintiffs' negligence claim (Count II) fails to allege a duty that Precision owed to the Plaintiffs for inspection or warning because in years 2005 through 2007 the resulting damages from the drywall were neither known nor foreseeable, and drywall is not an inherently dangerous product;

- Plaintiffs are not in privity with Precision so a breach of warranty claim (Count III) is not allowed under Florida law -- Precision was simply a service provider;

- Florida case law is clear: private nuisance (Count VI) is only applicable as to one land owner against another, so, as a matter of law, such claims against Precision, an installer, should be dismissed; and,

- Plaintiffs have prayed for attorney's fees in this matter, but have failed to plead any statute, law or other means to recover such fees.

Respectfully submitted,

/s/ Elizabeth L. Gordon
Lloyd N. Shields (La. Bar No. 12022)
Elizabeth L. Gordon (La. Bar No. 21619)
Andrew G. Vicknair (La. Bar No. 28448)
Adrian A. D'Arcy (La. Bar No. 29137)
Shields Mott Lund L.L.P.
650 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone: (504) 581-4445
Facsimile: (504) 584-4440
LNS@shieldsmottlund.com
elgordon@shieldsmottlund.com
agvicknair@shieldsmottlund.com
aad@shieldsmottlund.com

- and -

/s/Kieran F. O'Connor, Esq.
KIERAN F. O'CONNOR, ESQUIRE
Florida Bar No. 896829
koconnor@oconlaw.com
DEREK J. ANGELL, ESQUIRE
Florida Bar No. 73449
dangell@oconlaw.com
O'CONNOR & O'CONNOR, LLC
111 N. Orange Avenue, Suite 850
Orlando, Florida 32801
Telephone: (407) 843-2100
Facsimile: (407) 843-2061

Attorneys for Precision Drywall, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify the above and foregoing *Precision Drywall, Inc.'S Motion to Dismiss Plaintiff's Second Amended Complaint* has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, Suite 100, New Orleans, Louisiana 70113, rherman@hhkc.com, and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras Street, New Orleans, Louisiana 70163, kmiller@frilot.com, by U. S. Mail and upon all parties in this matter by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 in accordance with procedures established in MDL 2047, on this 17th day of January, 2012.

/s/ Elizabeth L. Gordon

62065-09\Pleadings\Motion to Dismiss.wpd