UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED   DRYWALL PRODUCTS     LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO: | ) ) | SECTION: L |
| Hobbie, et al.  v. RCR Holdings II, LLC, et al., | ) ) ) | JUDGE FALLON |
| No. 10-1113 | ) ) ) | MAG. JUDGE WILKINSON |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT
COASTAL CONSTRUCTION OF SOUTH FLORIDA, INC.**

Plaintiff Wendy Lee Hobbie, on behalf of herself and the 181 named plaintiffs on the Second Amended Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 (E.D.LA.) (collectively, "Plaintiffs"), representing a total of 131 condominiums, by and through the undersigned counsel, hereby file this Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment, and in support thereof state the following:

**INTRODUCTION**

Plaintiffs file this motion pursuant to this Court's Scheduling Order dated July 15, 2011 ("Scheduling Order") entered in the above-captioned *Hobbie* case.  *See* Doc. #9847.  The Scheduling Order originated as a result of two failed mediations and the desire of this Court and the parties to surmount the issues that kept them from resolving the Plaintiffs' claims.  The parties in this action voluntarily participated in a mediation before Richard O. Kingrea on February 15-16, 2011, in Miami, Florida.  By order of this Court, the mediation was continued in

1

New Orleans, Louisiana, on March 22, 2011.  The mediation did not result in the resolution of this matter and the parties have been at an impasse ever since, despite subsequent settlement discussions.  It was clear from the outcome of the mediation that Coastal would not settle this case until it could resolve its issues regarding the liability of Coastal unique to this litigation, namely, whether it owes a duty in tort to the plaintiffs or is otherwise liable to the Plaintiffs' under the Florida Building Code.  In order to resolve Coastal's roadblocks to settlement, this Court entered the Scheduling Order, providing for discovery and setting a briefing schedule on these very issues.[1]  Pursuant to the Scheduling Order allowing the parties to file motions related to these issues, Plaintiffs file this Motion for Partial Summary Judgment on their Florida Building Code claim.  Plaintiffs concurrently file a separate motion to strike certain of Coastal's affirmative defenses relating to the economic loss rule, strict liability, and breach of warranty of fitness.

This action arises out of defective drywall that was manufactured in China (hereafter "Chinese drywall"), distributed throughout the United States, and installed into newly constructed Florida homes built by Defendant, Coastal Construction of South Florida, Inc., d/b/a Coastal Condominiums (hereafter "Coastal"), causing homes like Plaintiffs to suffer from both an unbearable sulfur stench and the breakdown of electrical and mechanical components of real and personal property.  This litigation was brought in 2009 in Florida state court and was styled *Wendy Lee Hobbie et al. v. RCR Holdings, II, LLC, Coastal Construction of South Florida d/b/a Coastal Condominiums, et al.*, Case No. 50 2009CA032471 (Cir. Ct. Palm Beach County). The

---

[1] In particular, the Court allowed the parties to conduct discovery on the following issues and claims: (1) the economic loss rule; (2) strict liability; (3) breach of warranty of fitness; (4) violations of the Florida Building Code; (5) claims or defenses raised in RCR Holdings II's Third Party Complaint Against Arch Insurance Co., for breach of contract; (6) the identity of plaintiffs and potential plaintiffs, as well as the residency and citizenship status thereof; and (7) the identity of the manufacturer of the drywall located within the residences subject to this case.  *See* Scheduling Order, p. 1.

action was removed to federal court under the Class Action Fairness Act. The district court *sua sponte* transferred the action to the instant MDL proceedings.

There are no genuine issues of material fact as to Plaintiffs' Florida Building Code claim, and therefore, judgment should be ordered for Plaintiffs as a matter of law. In support hereof, the following is respectfully submitted.

## BACKGROUND

The facts supporting this motion are set forth, with citations to the record, in the Plaintiffs' Statement of Uncontested Facts, and will only be briefly stated here.

In or about 2005 through 2007, Coastal built residential condominiums ("Residences") in Boynton Beach, Florida in a development called Villa Lago. *See* Second Amended Complaint,[2] ¶ 138; Statement of Uncontested Facts, at ¶ 1 ("SUC") filed concurrently herewith. Villa Lago is part of a large mixed use development project known as Renaissance Commons. Sec. Am. Compl. ¶ 139.

In or about 2009, Plaintiffs detected sulfur odors in their Residences, observed corrosion of pipes, wiring, metal finishes and fixtures, and experienced failure of electronic products. SUC, at ¶ 2. Plaintiffs also observed damages to personal property, including damage to computers and televisions. *Id*. Upon further investigation and testing, Plaintiffs determined that their Residences were built with drywall manufactured in China. *See* Inspection Reports, Exhibit C to the Declaration of Ray Burroughs, January 12, 2012, filed as Exhibit 1 to Plaintiffs' SUC ("Burroughs Decl."). The material composition of the Chinese drywall renders it inferior to American-made drywall and unfit for ordinary use in residential construction. SUC, at ¶ 3. Unlike American-made drywall, the Chinese drywall emits several sulfur compounds, including carbon disulfide, carbonyl sulfur, and hydrogen sulfide, which are extremely hazardous and are

---

[2] *See* Notice of Removal, March 20, 2010, No. 2:10-cv-1113, Ex. 1-2 ("Sec. Am. Compl.") (CTO-16).

known to cause serious health problems such as those experienced by Plaintiffs. *Id*. When combined with heat and moisture in the air, the Chinese drywall off gasses hazardous materials and compounds, which is known to corrode copper and other metals. *Id*.

The Chinese drywall in the Residences has and will continue to pose risk of harm to Plaintiffs and their Residences as well as Plaintiffs' personal property. *See generally In re Chinese Manufactured Drywall Products Liab. Litig.*, 706 F. Supp. 2d 655 (E.D. La. 2010).[3] As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damages and injuries, including but not limited to: economic damages, including alternative living arrangements, damage to real and personal property such as jewelry, appliances and fixtures, diminution in value, lost rental income, loss of use, loss of credit and other economic damages; attorneys' fees and expenses; and court and/or administrative costs. SUC, at ¶ 2; Sec. Am. Compl., at ¶ 151.

## ARGUMENT

**I.  THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' BUILDING CODE VIOLATION CLAIM.**

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Initially, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322-323; *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986). Next, the nonmoving party must come forward with competent evidentiary materials establishing a genuine fact issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). However, "[n]either 'conclusory allegations' nor

---

[3] The opinion contains this Court's findings of fact and conclusions of law relating to Chinese drywall.

'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

### A. It is Undisputed that Florida Law Provides a Private Cause of Action to Any Person Damaged as a Result of a Violation of the Florida Building Code.

Section 553.84, Florida Statutes, provides a private cause of action to any person "damaged as a result of a violation of . . . the Florida Building Code . . . against the person or party who committed the violation." Fla. Stat. 553.84.[4] The Building Code that applies to Plaintiffs' claims is the 2001 Florida Building Code, with 2003 Revisions ("Building Code"), as the effective dates of those codes coincide with the dates that the building permit applications for Plaintiffs' Residences were received by the City of Boynton Beach Building Department.[5] *See* Fla. Stat. 553.73(6) (2003); Burroughs Decl., ¶¶ 9-10. The very purpose of the Building Code is "to be remedial and [it] shall be construed to secure the beneficial interests and purposes thereof, which are public safety, health and general welfare . . . and safety to life and property from fire and other hazards attributed to the built environment. . . ." Section 101.3.1 Building Code.

Under the Building Code, it is a builder's obligation to ensure that the materials it uses in the building of homes conforms to the standards set forth in the Building Code and other applicable standards of safety. Burroughs Decl., ¶ 19. The Building Code requires that if a builder intends to use any materials not specifically allowed, it may do so as long as such

---

[4] As the Economic Loss Rule does not defeat Plaintiffs' tort claims, as discussed in detail in Plaintiffs' Motion to Strike Affirmative Defenses Asserted in Defendant Coastal Construction of South Florida, Inc.'s Answer, filed concurrently herewith, nor does it preclude a statutory cause of action for violation of the Building Code under section 553.84, Florida Statutes. *Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.*, 753 So.2d 1219, 1227 (Fla. 1999) (it is clear from the unambiguous language used by the Florida Legislature in its statutory remedy for a building code violation that the judicially created economic loss rule cannot abrogate this statutory cause of action).
[5] The applicable building code is determined by the date the building permit application is received by the City of Boynton Beach Building Department. *See* Fla. Stat. § 553.73(6); Burroughs Decl., ¶ 9. The building permit application is shown as received on February 22, 2005, so therefore, the 2001 Florida Building Code, with 2003 revisions applies to the Residences. *See* Exhibit B to Burroughs Decl., City of Boynton Beach, Department of Development, Building Division, Permit Application, Feb. 22, 2005 and Burroughs Decl., ¶ 9.

"alternative material" has been reviewed by the building official. Section 103.7.1 of the Building Code, entitled "Alternative materials and methods" provides:

> The provisions of the technical codes are not intended to prevent the use of any material . . . not specifically prescribed by them, provided any such alternate has been reviewed by the building official. The building official shall approve any such alternate, provided the building official finds that the alternate for the purpose intended is at least the equivalent of that prescribed in the technical codes in quality, strength, effectiveness, fire resistance, durability and safety.

The Building Code also requires that drywall must contain certain markings. The code section covering gypsum lath, wallboard and sheathing board, Section 703.5.3, requires that all gypsum wallboard shall comply with the provisions of ASTM C 36, Section 2503, and Table 2503. Section 703.5.3; Burroughs Decl., ¶12. The ASTM C 36, in turn, requires that the packaging and package marking contain the following:

> Unless otherwise required by the purchase agreement, each board or package shall have legibly marked thereon the following: the thickness, the name of the producer or supplier, the brand name (if any); and the ASTM designation for the product.

*See* ASTM C 36, Section 12.1. If any of these markings are not present on the drywall board, that drywall does not meet the Building Code requirement for gypsum board. Burroughs Decl., ¶ 14. If a builder, such as Coastal, intends to use drywall that does not meet the Building Code requirement for Gypsum board, they are obligated to seek approval from the building code official through the Alternative materials and methods provision of the Building Code. *Id.* at ¶ 17.

### B. It is Undisputed That Coastal Violated the Building Code When it Used Chinese Drywall in the Residences.

There are no material facts in dispute here. Coastal built the Residences that contained Chinese drywall in violation of the Building Code. It is uncontested that the drywall board used by Coastal did not contain the markings required by the Building Code. SUC at ¶¶ 8-13.

Inspections were conducted on all 131 of Plaintiffs' units. Some of these units were inspected more than once if a manufacturer stamp was not located on the first inspection, resulting in 154 inspection reports. These inspection reports contain pictures of the pieces of drywall that were inspected. *See, e.g.*, Inspection reports.

The inspection reports reveal that most of the inspected drywall does not contain the markings required by the Building Code. SUC, at ¶ 13; and Inspection reports. Plaintiffs' expert, Ray Burroughs,[6] reviewed these inspection reports, among other things, and determined that most of the inspected drywall did not have all the required markings. Burroughs Decl., ¶ 16. Further, testimony from representatives of importer La Suprema Enterprise – the supplier to Banner Supply of Pompano, who in turn supplied the Chinese drywall to Villa Lago – reveals that Chinese drywall rarely contained any identifying, let alone all of the markings required by the Building Code. SUC, at ¶¶ 8-12.

Coastal's use of gypsum board that was not properly marked required them to seek approval from the building code official through the alternative materials provision of the Building Code. Burroughs Decl., ¶¶ 17, 21. There is no dispute that Coastal did not seek approval from any building code official for use of this alternative material, the Chinese drywall. *Id.* at ¶ 22; Coastal's failure to seek the approval from the building code official for use of the Chinese drywall as an alternative material is a violation of the building code. *Id.* at ¶23. Therefore, there are no genuine issues of material fact that Coastal violated the Building Code pursuant to Florida Statute § 553.84.

---

[6] Mr. Burroughs worked at Leon County Building Inspection in Tallahassee, FL for over 25 years and from 1989 until he retired in 2009, he was the Director. *See* Burroughs Decl., ¶ 5.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant its Motion for Partial Summary Judgment on its claim for breach of the Florida Building Code.

DATED: January 17, 2012                                     Respectfully submitted,

/s/ Gary E. Mason
Gary E. Mason
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Suite 605
Washington, D.C.  20036
Telephone:  (202) 429-2290
Facsimile:  (202) 429-2294

Adam C. Linkhorst, Esq.
LINKHORST & HOCKIN P.A.
4495 Military Trail, Suite 106
Jupiter, Florida 33458
Email:  acl@floridahardhatlaw.com
Telephone:   561.626.8880  / 954.776.5990
Facsimile:  561.626.8885

Joel R. Rhine
RHINE LAW FIRM
314 Walnut Street, Suite 1000
Wilmington  NC  28401
Telephone:  (910) 772-9960
Facsimile:   (910) 772-9062

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
Telephone: (888) 981-0939
Facsimile: (919) 981-0199

Chris Coffin
PENDLEY BAUDIN & COFFIN, LP
Post Office Drawer 71
24110 Eden Street
Plaquemine, Louisiana 70765
Telephone:  (225) 687-6396

Stephen Mullins
LUCKEY & MULLINS
2016 Bienville Blvd
P.O. Box 990
Ocean Springs, MS 39564
Telephone: (228) 875-3175
Facsimile: (228) 872-4719

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and forgoing has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and email or hand delivery and email and upon all parties by electronically uploading same to Lexis Nexis File and Serve® in accordance with Pre-Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with procedures established in MDL 2047 on this 17th day of January, 2012.

/s/ Gary E. Mason
Gary E. Mason