**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | ) | |
|      DRYWALL PRODUCTS | ) | MDL NO. 2047 |
|      LIABILITY LITIGATION | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | SECTION: L |
| | ) | |
| Hobbie, et al.  v. | ) | JUDGE FALLON |
| RCR Holdings II, LLC, et al., | ) | |
| | ) | |
| No. 10-1113 | ) | |
| | ) | MAG. JUDGE WILKINSON |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
AFFIRMATIVE DEFENSES ASSERTED IN DEFENDANT, COASTAL
CONSTRUCTION OF SOUTH FLORIDA, INC.'S, ANSWER**

Plaintiff Wendy Lee Hobbie, on behalf of herself and the 181 named plaintiffs on

the Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 (E.D.

La.) (collectively, "Plaintiffs"), representing a total of 131 condominium units, by and

through the undersigned counsel, hereby file this Memorandum in Support of Plaintiffs'

Motion to Strike Defendant Coastal Construction of South Florida, Inc.'s Affirmative

Defenses Asserted in its Answer, and in support thereof state the following:

**INTRODUCTION**

This action arises out of defective drywall that was manufactured in China

("Chinese drywall"), distributed throughout the United States, and installed into newly

constructed Florida homes and multiple unit properties built by Defendant, Coastal

Construction of South Florida, Inc., d/b/a Coastal Condominiums ("Coastal"), causing

homeowners like Plaintiffs to suffer from both an unbearable sulfur stench and the

breakdown of electrical and mechanical components of real and personal property.

Plaintiffs file this motion pursuant to this Court's Scheduling Order dated July 15, 2011 ("Scheduling Order") entered in the above-captioned *Hobbie* case. *See* Doc. #9847. The Scheduling Order originated as a result of two failed mediations and the desire of this Court and the parties to surmount the issues that kept them from resolving the Plaintiffs' claims. The parties in this action voluntarily participated in a mediation before Richard O. Kingrea on February 15-16, 2011, in Miami, Florida. By order of this Court, the mediation was continued in New Orleans, Louisiana, on March 22, 2011. The mediation did not result in the resolution of this matter and the parties have been at an impasse ever since, despite subsequent settlement discussions. It was clear from the outcome of the mediation that Coastal would not settle this case until it could resolve its issues regarding the liability of Coastal unique to this litigation, namely, whether it owes a duty in tort to the Plaintiffs or is otherwise liable to the Plaintiffs' under the Florida Building Code. In order to resolve Coastal's roadblocks to settlement, this Court entered the Scheduling Order, providing for discovery and setting a briefing schedule on these very issues.[1] Pursuant to the Scheduling Order, Plaintiffs file this Motion to Strike Coastal's Affirmative Defenses relating to the economic loss rule, breach of implied warranty of fitness, and strict liability. Plaintiffs concurrently file a separate Motion for Partial Summary Judgment on their Florida Building Code claim.

---

[1] In particular, the Court allowed the parties to conduct discovery on the following issues and claims: (1) the economic loss rule; (2) strict liability; (3) breach of warranty of fitness; (4) violations of the Florida Building Code; (5) claims or defenses raised in RCR Holdings II's Third Party Complaint Against Arch Insurance Co., for breach of contract; (6) the identity of plaintiffs and potential plaintiffs, as well as the residency and citizenship status thereof; and (7) the identity of the manufacturer of the drywall located within the residences subject to this case. *See* Scheduling Order.

Plaintiffs' Second Amended Class Action Complaint[2] adequately alleges a cause of action against Coastal for negligence, nuisance, breach of implied warranty of fitness and strict liability. Therefore, Coastal's affirmative defenses alleged in paragraphs 29 through 34 of its Answer and Affirmative Defenses[3] filed on March 8, 2010 ("Coastal Answer") should be stricken. These defenses inject irrelevant or immaterial issues, assert defenses that are insufficient as a matter of law, and/or would prejudice Plaintiffs by threatening an undue broadening of the issues. Furthermore, because there are no genuine issues of material fact as to Plaintiffs' Florida Building Code claim, Plaintiffs' Motion for Partial Summary Judgment, filed concurrently herewith, should be granted. In support hereof, the following is respectfully submitted.

## FACTS

In or about 2005 through 2007, Coastal built residential condominiums ("Residences") in Boynton Beach, Florida in a development called Villa Lago. *See* Sec. Am. Compl., ¶ 138. In or about 2009, Plaintiffs detected sulfur odors in their Residences, observed corrosion of pipes, wiring, metal finishes and fixtures, and experienced failure of electronic products. *Id.* ¶ 140. Plaintiffs also observed damages to personal property, including damage to computers and televisions. *Id.* Upon further investigation and testing, Plaintiffs determined that their Residences were built with drywall manufactured in China. *Id.* ¶ 141. The material composition of the Chinese drywall renders it inferior to American-made drywall and unfit for ordinary use in residential construction. *Id.* ¶ 142. Unlike American-made drywall, the Chinese drywall emits several sulfur

---

[2] *See* Notice of Removal, March 20, 2010, No. 2:10-cv-1113, Ex. 1-2 ("Sec. Am. Compl.") (CTO-16).

[3] *See* Defendant Coastal Construction of South Florida, Inc.'s Answer and Affirmative Defenses, March 8, 2010, Case. No. 50 2009CA032471 (Cir. Ct. Palm Beach County) ("Coastal's Answer") Ex. 1, hereto.

compounds, including carbon disulfide, carbonyl sulfur, and hydrogen sulfide, which are extremely hazardous and are known to cause serious health problems such as those experienced by Plaintiffs. *Id*. ¶¶ 143, 145. When combined with heat and moisture in the air, the Chinese drywall off gasses hazardous materials and compounds, which is known to corrode copper and other metals. *Id*. ¶ 148.

The Chinese drywall in the Residences has and will continue to cause damage to Plaintiffs' Residences, the common elements of Villa Lago, and Plaintiffs' personal property. *Id*. ¶ 150. As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damages and injuries, including but not limited to: economic damages, including alternative living arrangements, damage to real and personal property such as jewelry, appliances and fixtures, diminution in value, lost rental income, loss of use, loss of credit and other economic damages; attorneys' fees and expenses; and court and/or administrative costs. *Id*. ¶ 151.

This litigation was brought in 2009 in Florida state court and was styled *Wendy Lee Hobbie, et al. v. RCR Holdings, II, LLC, Coastal Construction of South Florida d/b/a Coastal Condominiums, et al.*, Case No. 50 2009CA032471. The action was removed to federal court under the Class Action Fairness Act. The district court *sua sponte* transferred the action to the instant MDL proceedings.

## ARGUMENT

### I.     COASTAL'S AFFIRMATIVE DEFENSES SHOULD BE STRICKEN.

Pursuant to Federal Rule of Civil Procedure 12(f), "Upon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A

defendant "must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced." *Abene v. Jaybar, LLC*, No. 11-143, 2011 WL 2847436, at * 6 (E.D. La. July 14, 2011) (citing *Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir. 1999)).   Accordingly, where a pleading fails to include the elements of a defense, or allege some set of facts that would support that defense, that defense should be stricken.   *See, e.g., Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir. 1982) (motions to strike are proper where defense is insufficient as a matter of law).

> **A.    COASTAL'S AFFIRMATIVE DEFENSES SHOULD BE STRICKEN BECAUSE THE ECONOMIC LOSS RULE DOES NOT BAR PLAINTIFFS' TORT CLAIMS.**

The Economic Loss Rule ("ELR") is intended to distinguish between claims sounding in tort and those expressing contractual warranty claims when defective products are found to only injure themselves.   As an affirmative defense, Coastal argues that the ELR bars Plaintiffs from recovering damages related to the repair or replacement of their homes as these damages are economic losses for which recovery in tort is unavailable.   *See* Coastal's Answer, ¶ 30.   Coastal further argues that the Chinese drywall is an integrated component of the "product" purchased by Plaintiffs and any claimed damages relating to repair or replacement of the homes or the integral components thereof are recoverable only via contract remedies against those parties in privity with Plaintiffs.   *See id.* ¶¶ 31, 32.   However, the ELR is inapplicable in the instant matter because Plaintiffs are seeking to recover non-economic losses.   Plaintiffs are not alleging that the drywall has failed to serve its intended purpose or that it is structurally inferior.

Instead, its defects go beyond disappointed economic expectations, causing non-economic losses which justify access to tort remedies.

In Florida, the ELR has been applied in two different circumstances: (1) when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract; or (2) when there is a defect in a product that causes damage to itself, causing economic loss, but does not cause personal injury or damage to any other property.[4]  *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.,* 891 So.2d 532, 536 (Fla. 2004).  Economic losses are defined as losses stemming from a product "inferior in quality" and which "does not work for the general purposes for which it was manufactured and sold."  *Casa Clara Condo. Ass'n., Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993).  To recover in tort and evade the reach of the economic loss rule, a plaintiff must show harm beyond mere disappointed expectations about the defective product. *Id.*

Here, Plaintiffs are not in a category of persons that the ELR intends to limit.  As this Court made clear in *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F. Supp. 2d 780, 792-795 (E.D. La. 2010), the Chinese drywall cases are readily distinguishable from other matters where the ELR has been found to bar tort claims of plaintiffs.  This is because the Chinese drywall litigation presents a unique factual scenario that does not implicate the products liability ELR.  The factual distinction lies in the nature of the defect and its impact, or lack thereof, on the product itself.

---

[4] Plaintiffs are not in privity of contract with Coastal.  *See* Deposition of Salvatore Reale, January 13, 2012 (Rough Draft), 72:10-73:21 ("Reale Depo.") (Ex. 2, hereto).  Therefore, the contractual privity ELR is inapplicable in this situation.  *See Indem. Ins.,* 891 So.2d at 536-537.

In making this factual distinction, this Court relied on *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). *See In re Chinese Manufactured Drywall,* 680 F. Supp. 2d at 792. In *East River*, charterers of supertankers brought suit against a turbine manufacturer seeking damages in tort for alleged design and manufacturing defects that caused the supertankers to malfunction on the high seas. 476 U.S. at 861. The substantive issue presented in *East River* was "whether a cause of action in tort is stated when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." *Id*. at 859.

The Court barred the plaintiff's tort remedies, characterizing the situation as one in which "the product has not met the customer's expectations" and "the customer has received insufficient product value." *Id.* at 872. While *East River* involved a non-operational product, this Court articulated the distinguishing features of the Chinese drywall cases:

> [T]he Chinese drywall . . . is operating as intended - as an interior wall and/or ceiling, a room divider, a shell for insulation and wiring, and a base for hanging various items, such as lighting fixtures and decorative items. It is not crumbling, deteriorating or failing to serve its intended purpose. The allegations involving the Chinese drywall are that it is contaminating the home by giving off noxious fumes which are corroding certain metal elements located within the property where the drywall is installed, and is causing health problems to the inhabitants of this property. Factually, this contrasts with defective turbines which ceased to run.

*In re Chinese Manufactured Drywall*, 680 F. Supp. 2d at 792. Unlike the defective turbines in *East River* that failed to provide workable supertankers, the Chinese drywall in the present case is functioning essentially as drywall, so "the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." *Id*. Instead, it is causing a

serious risk of hazard to safety and health, a classic case to which tort remedies should apply.[5]  Furthermore, unlike the plaintiffs in *East River*, the Plaintiffs here are not in privity with Coastal so they are not left with breach of contract and breach of warranty claims against Coastal if their tort claims are unavailable.[6]  *See id.* (noting same distinction from the holding in *East River*).

The Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida reached the same conclusion as this Court in its December 18, 2009 order Denying Defendants' Motion to Dismiss Plaintiffs' Tort Claim under the Economic Loss Rule.  *In re: Chinese Drywall Litig.*, No. 09-200,000-CA-42, 2009 WL 6408999 (Fla. Cir. Ct. Dec. 18, 2009).  In this Order, the court concluded:

> Unlike the crumbling concrete in *Casa Clara*, or the seawall that failed to withstand the sea in *Boldt*,[7] the drywall at issue here continues to perform its intended purpose and function. This includes providing the finish construction of interior walls, dividing open space throughout the home, providing an area within which to enclose insulation material and acting as an anchor for lighting fixtures. The purported off-gassing of sulfur-based compounds has not caused the drywall to fail at its general purpose and function. Instead, the off-gassing places the drywall into a category of products whose failure may have created an unreasonable risk of harm.

*Id.*  The court permitted the plaintiffs to maintain their tort claims and barred the applicability of the economic loss rule.  *Id.*

---

[5] *See* this Court's comparison between asbestos cases and the Chinese drywall litigation in *In Re Chinese Manufactured Drywall,* 680 F. Supp. 2d at 797-799.  "Like the Chinese drywall in question, asbestos continues to serve its intended structural and fire retardant purpose."  *Id.* at 797.  "However, it, like the Chinese drywall, emits gasses or material which has the potential to cause damage."  *Id.*  This Court considered these cases and agreed that they provide further support to its conclusion that the ELR does not bar Plaintiffs' tort claims.  *Id.* at 798.

[6] *See* Reale Depo., 72:10-73:21.

[7] *Fishman v. Boldt*, 666 So.2d 273 (Fla. Dist. Ct. App. 1996).

Coastal attempts to implicate the products liability ELR in the instant matter by arguing that the Chinese drywall is an integrated component of the "product" purchased by Plaintiffs and therefore Plaintiffs are barred from recovering in tort for any damages related to the repair or replacement of their homes.  *See* Coastal's Answer, ¶¶ 31, 32.  However, this Court considered the same argument and rejected it, distinguishing the unique facts involved in the drywall cases from those of the widely cited Florida Supreme Court decision of *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino and Sons, Inc.*, 620 So.2d 1244 (Fla. 1993).  *In re Chinese Manufactured Drywall*, 680 F. Supp. 2d at 793.  In *Casa Clara*, property owners brought tort claims against a concrete supplier after the concrete installed in their homes began to rust reinforcing steel, causing the concrete to crumble and break off.  620 So.2d at 1245.  The Florida Supreme Court held that the ELR barred plaintiff homeowners' tort claims for economic losses caused by crumbling, cracking concrete used to construct their homes on the basis that the homes plaintiffs purchased were the "product" and the concrete was an integral part of the product-home which only damaged itself.  *Id*. at 1246-1248.

According to this Court, there are notable factual discrepancies between the instant matter and *Casa Clara*:

> *Casa Clara* involved crumbling, cracking concrete which failed to serve its intended purpose as a support foundation for a building, while the Chinese drywall has and is currently serving its intended purpose as a room divider and wall anchor . . . The Chinese drywall is not structurally inferior drywall, nor does it fail to serve its intended structural purpose; rather, its defects go beyond disappointed economic expectations, causing harm which justifies access to tort remedies.

*In re Chinese Manufactured Drywall*, 680 F. Supp. 2d at 793.  In cases like *Casa Clara*, the defect in the product damaged the product itself.[8]  Unlike the defective concrete in *Casa Clara*, which failed to work for its general purpose of providing a stable foundation for a home, the Chinese drywall is satisfying its general purpose by properly holding up the walls in the Plaintiffs' homes.  Additionally, as noted by this Court, the instant matter involves more than disappointed economic expectations, it involves a hazard to health and property.[9]   *Id.* at 793.   Therefore, contrary to Coastal's assertions, the products liability ELR is not implicated in the instant matter because the defects in the Chinese drywall go beyond disappointed economic expectations, justifying access to tort remedies.

Against these facts and circumstances, the ELR does not bar Plaintiffs' claims because the suit is not for a defective product and the parties are not in privity of contract with Coastal.[10]   For the reasons set forth above, Coastal's affirmative defense that Plaintiffs' tort claims are barred by the ELR should be stricken.[11]

---

[8] *See Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734 (11th Cir. 1995).  In *Pulte*, the plywood failed to meet plaintiff's economic expectations because its "deterioration . . . destroyed the structural integrity of the roof."  *Id.* at 741.  The Eleventh Circuit relied on the ELR to bar plaintiff's tort claims. *Id.*

[9] *See also Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175 (D. Col. 2002).  In *Loughridge*, homeowners brought actions against a hose manufacturer and heating systems company for allegedly defective hoses incorporated into their heating systems.  *Id.* at 1180.  The Court held that the products ELR does not apply because the hoses did not become part of the realty and Plaintiffs alleged physical harm to their property other than just damage to the product.  *Id.* at 1184.

[10]  Many courts have also recognized the exception to the ELR for non-commercial, builder-homebuyer transactions, such as the one in the instant matter.  *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 850, 852 (6th Cir. 2002) (sophisticated business entities have "the knowledge, skill, and resources to develop and operate" complex commercial ventures while "most home-buyers do not have the expertise to ensure that the products used in building the home are defect-free"); *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 412 F. Supp. 2d 560, 562 (D.S.C. 2006) (noting that South Carolina has rejected the ELR in the homebuyer/builder context because "public policy further demands the imposition of a legal duty on a builder to refrain from constructing housing that he knows or should know will pose serious risks of physical harm") (citation omitted).  The court in *Lloyd Wood Coal Co. v. Clark Equip. Co.* recognized the economic loss rule appears to have limited its

### B. COASTAL'S AFFIRMATIVE DEFENSE THAT PRIVITY BARS PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED WARRANTY OF FITNESS SHOULD BE STRICKEN.

Plaintiffs bring this claim pursuant to Section 718.203(2) of Florida's Condominium Act, which provides statutory implied warranties for new condominiums. Coastal raises the affirmative defense that lack of privity bars Plaintiffs' claim for breach of implied warranty of fitness. *See* Coastal's Answer, ¶ 34. Contrary to Coastal's assertions, privity is not a requirement under Florida Statutes Section 718.203(2).

For a breach of implied warranty claim, privity is generally required in order to recover damages from the seller of a product. *Grovenor House, LLC v. E.I. Du Pont De Nemours & Co.*, No. 09-21698, 2010 WL 883647, at * 2 (S.D. Fla. March 8, 2010) (citation omitted). Under Florida law, however, a contractor of a condominium is statutorily required to "grant to . . . the purchaser of each [condominium] unit implied warranties of fitness as to the work performed or materials supplied by them."[12] Fla. Stat. § 718.203(2) (2006). "Under the plain language of Florida Statute section 718.203(2), privity . . . is *not required* to recover damages for the breach of the implied warranty created by this statute." *Grovenor*, 2010 WL 883647, at * 2 (emphasis added). This statutory implied warranty stands in contrast to the general rule, since ordinarily a contractor is not in privity with a condominium unit owner and implied warranties are

---

application only to disputes between commercial entities with equal bargaining power. 543 So.2d 671, 672 (Ala. 1989). In addition, the *East River* court spoke only in terms of commercial users. *Id*. at 673 (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. at 870).

[11] The ELR does not bar statutory causes of action, such as Plaintiffs' Florida Building Code claim. *See Comptech Intern., Inc. v. Milam Commerce Park, Ltd.*, 753 So.2d 1219, 1221 (Fla. 1999) ("[T]he economic loss rule cannot be used to eliminate a statutory cause of action.").

[12] The recognition of this warranty "comports with the idea that . . . competency of the work performed and quality of the materials supplied in constructing condominium buildings based upon the plans and specifications encompassed within the building contract are matters *within the control of the contractor*." *Leisure Resorts, Inc. v. Frank J. Rooney, Inc.*, 654 So.2d 911, 914 (Fla. 1995) (emphasis added).

typically not automatically extended to condominium purchasers. *See id.*, at * 2 (denying defendant's motion to dismiss breach of implied warranty claim); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 601 (E.D. La. 1998) ("[Section 718.203] imposes . . . certain implied warranties in favor of individual condominium unit owners.").

Here, Plaintiffs have alleged that they were the purchasers of the Residences and Coastal was the contractor of the Residences. These allegations are sufficient, under Florida law, to establish the existence of an implied warranty. Therefore, Coastal's affirmative defense that Plaintiffs do not have a proper claim for breach of implied warranty should be stricken.

### C.   COASTAL'S AFFIRMATIVE DEFENSE THAT THE DRYWALL IS NOT A PRODUCT UPON WHICH A STRICT LIABILITY CLAIM MAY BE BASED SHOULD BE STRICKEN.

Coastal raises an affirmative defense against Plaintiffs' strict liability claim, stating that the drywall at issue is not a product upon which a strict liability claim may be based because it is a structural improvement to real property. *See* Coastal's Answer, ¶ 29. Contrary to Coastal's assertions, Plaintiffs adequately allege a claim for damages under strict liability.

In *In re Chinese Drywall Litig.*, CACE 11-90,000(01) (Fla. Cir. Ct. Aug. 2, 2011),[13] the court sustained the plaintiffs' claim for strict liability for damages sustained by the Chinese drywall. *Id.* In denying the defendants' argument, which was based upon the inapplicability of strict liability to structural improvements to real property, the court

---

[13] Omnibus Order on Installer Defendants' Amicus Brief in Response to Plaintiff/Homeowner's Claims (Defendant/Installers' Omnibus Motion to Dismiss Plaintiff/Homeowners' Omnibus *Hamburg* Complaint) ("Omnibus Order") (Ex. 3, hereto).

relied on *Federal Insurance Co. v. Bonded Lightning Protection Sys., Inc*., No. 07-80767,

2008 WL 5111260 (S.D. Fla. Dec. 3, 2008):

> Florida law recognizes an exception to the rule that strict liability does not apply to improvements to real property, i.e. "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp*., 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc*., 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).

Omnibus Order, p. 2.  Although *Federal Insurance* dealt with a manufacturer, the District

Court went on to explain that the doctrine has been expanded to other parties in the chain

of distribution:

> In *West v. Caterpillar Tractor Co*., 336 So.2d 80 (Fla. 1976), the Florida Supreme Court adopted the doctrine of strict liability as set forth in section 402A of the American Law Institute Restatement (Second) of Torts. As summarized by the court, "strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *West*, 336 So.2d at 86. This doctrine has since been expanded "to others in the distributive chain including retailers, wholesalers, and distributors." *Plaza v. Fisher Dev., Inc*., 971 So.2d 918, 920 (Fla. 3d DCA 2007), quoting *Samuel Friedland Family Enters. v. Amoroso*, 630 So.2d 1067, 1068 (Fla. 1994).  *Fed. Ins.*, 2008 WL 5111260, at * 4.

*See* Omnibus Order, pp. 2-3. Judge Greene sustained Plaintiffs' strict liability claim on

the grounds "that Plaintiff/Homeowners have pled damages which resulted directly from

the alleged defective product."  *Id.,* p. 3.

Similarly, Plaintiffs in this matter do not make claims of a failure of the defective

Chinese drywall itself. Rather, Plaintiffs allege that the drywall is unreasonably

dangerous and poses an unreasonable risk of harm to persons and property.  *See* Sec. Am.

Compl., ¶¶ 166, 173.  Given that Plaintiffs' injuries resulted "not from the real property

as improved by the alleged defective product but directly from a defective product," *see Fed. Ins.*, 2008 WL 5111260, at * 5, Plaintiffs have adequately stated a claim for strict liability.

Moreover, Coastal is in the chain of distribution because it purchased, distributed and supplied the defective product. *See* Omnibus Order, pp. 3-4 (holding that Defendants were within the chain of distribution because they purchased, distributed, and supplied the Chinese drywall). Due to the unreasonable and inherent dangerousness of the defective Chinese drywall, Coastal, and anyone else who profits from the sale of the drywall, should be held strictly liable for any resulting injuries. *See also Samuel Friedland,* 630 So.2d at 1068 (explaining that, "[t]he underlying basis for the doctrine of strict liability is that those entities within a product's distributive chain 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect.' Those entities are in a better position to ensure the safety of the products they market, to insure against defects in those products, and to spread the cost of any injuries resulting from a defect.") (internal citations omitted). This is especially true given that Plaintiffs did not have the ability to contract away unforeseeable or even foreseeable damages. *See* Omnibus Order, p. 5.

Plaintiffs have adequately alleged a strict liability claim in connection with the Chinese drywall because the drywall itself is unreasonably and inherently dangerous. Given that Coastal falls within the chain of distribution, Coastal's affirmative defense that Plaintiffs do not have a proper claim for strict liability should be stricken.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant its Motion to Strike Coastal's Affirmative Defenses relating to the economic loss rule, breach of implied warranty of fitness, and strict liability.

DATED: January 17, 2012                      Respectfully submitted,

/s/ Gary E. Mason
Gary E. Mason
WHITFIELD BRYSON & MASON
LLP
1625 Massachusetts Ave., NW
Suite 605
Washington, D.C.  20036
Telephone:  (202) 429-2290
Facsimile:  (202) 429-2294

Adam C. Linkhorst, Esq.
LINKHORST & HOCKIN P.A.
4495 Military Trail, Suite 106
Jupiter, Florida 33458
Email:  acl@floridahardhatlaw.com
Telephone:   561.626.8880 /
954.776.5990
Facsimile:  561.626.8885

Joel R. Rhine
RHINE LAW FIRM
314 Walnut Street, Suite 1000
Wilmington  NC  28401
Telephone:  (910) 772-9960
Facsimile:   (910) 772-9062

Daniel K. Bryson
WHITFIELD BRYSON & MASON
LLP
900 W. Morgan St.
Raleigh, NC 27612
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

Chris Coffin
PENDLEY BAUDIN & COFFIN, LP

Post Office Drawer 71
24110 Eden Street
Plaquemine, Louisiana 70765
Telephone:  (225) 687-6396

Stephen Mullins
LUCKEY & MULLINS
2016 Bienville Blvd
P.O. Box 990
Ocean Springs, MS 39564
Telephone:  (228) 875-3175
Facsimile:   (228) 872-4719

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and forgoing has been served upon
Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry
Miller, by U.S. Mail and email or hand delivery and email and upon all parties by
electronically uploading same to Lexis Nexis File and Serve® in accordance with Pre-
Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court
of the United States District Court for the Eastern District of Louisiana by using the
CM/ECF System, which will send a notice of electronic filing in accordance with
procedures established in MDL 2047 on this 17th day of January, 2012.

/s/ Gary E. Mason
Gary E. Mason