

Aug  2 2011
9:35AM

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY,
FLORIDA

IN RE:
CHINESE DRYWALL LITIGATION:

CASE NO.: CACE11-90,000 (01)

*This Relates to:*
**All Cases.**

_____/

## OMNIBUS ORDER ON INSTALLER DEFENDANTS' AMICUS BRIEF IN RESPONSE TO PLAINTFF/HOMEOWNERS' CLAIMS (DEFENDANT/INSTALLERS' OMINUBUS MOTION TO DISMISS PLAINTIFF/HOMEOWNERS' OMNIBUS HAMBURG COMPLAINT[1])

**THIS CAUSE** came before the Court on Monday, July 25, 2011, upon Installer

Defendants' Amicus Brief in Response to Plaintiff/Homeowner's Claims (Defendant/Installers

Omnibus Motion to Dismiss Plaintiff/Homeowners' Omnibus Hamburg Complaint), Plaintiffs'

Response to Defendant Installers' Omnibus Motion to Dismiss Plaintiffs' Complaint, and

Installer Defendants' reply.  Having reviewed the motion, heard argument of counsel, including

the **parties' agreement that there is no privity of contract between the Defendant/Installers**

**and Plaintiff/Homeowners**, and being otherwise and being otherwise advised in these premises,

the Court addresses the omnibus issues, and finds and decides as follows:

Defendant/Installers raise six legal bases for dismissal of Plaintiffs/Homeowners'

Omnibus Complaint, as follows:  (1) Plaintiff/Homeowners' claim for strict liability should be

dismissed because strict liability does not apply to structural improvements to real property; (2)

Plaintiff/Homeowners' claim for strict liability should be dismissed because strict liability does

not apply to Defendant/Installers since they are providers of a service, not a product; and, are not

in the chain of distribution; (3) Plaintiff/Homeowners' claim for strict liability should be

---

[1] Plaintiff/Homeowners' Omnibus Complaint is <u>Richard A. Hamburg et al. v. Sixty Fifth and One LLC, et al.</u>, case
number CACE10-11665.

dismissed because strict liability is barred by the economic loss rule (herein "ELR"); (4) Plaintiff/Homeowners' claim for negligence must be dismissed as a matter of law because they are unable to state a cause of action; (5) Plaintiff/Homeowners' claim for breach of implied warranties must be dismissed because there is no privity of contract; and (6) Plaintiff/Homeowners' claim for private nuisance should be dismissed because the installation of an alleged defective product does not give rise to such a cause of action.

## I. Plaintiff/Homeowners' claim for strict liability should be dismissed because strict liability does not apply to structural improvements to real property

Defendant/Installers maintain that the defective Chinese Drywall is a structural improvement to the affected homes, and argue that strict liability does not apply to such improvements. Plaintiff/Homeowners counter that the allegations in their Omnibus Complaint do not make claims of a failure of the defective Chinese Drywall itself, but rather that the drywall is unreasonably dangerous and poses an unreasonable risk of harm to persons and property. In *Federal Insurance Co. v. Bonded Lightning Protection System, Inc.*, 07-80767-CIV, 2008 WL 5111260 (S.D. Fla. 2008), the District Court recognized that:

> Additionally, Florida law recognizes an exception to the rule that strict liability does not apply to improvements to real property, i.e., "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.*, 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).

Although the *Federal Insurance* Court was dealing with a manufacturer, the District Court went on to explain that the doctrine has been expanded by in Florida to others in the chain of distribution, as follows:

> In *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976), the Florida Supreme Court adopted the doctrine of strict liability as set forth in section 402A of the

2

American Law Institute Restatement (Second) of Torts. As summarized by the court, "strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *West*, 336 So.2d at 86 (emphasis added). This doctrine has since been expanded "to others in the distributive chain including retailers, wholesalers, and distributors." *Plaza v. Fisher Development, Inc.*, 971 So.2d 918, 920 (Fla. 3d DCA 2007), quoting *Samuel Friedland Family Enters. v. Amoroso*, 630 So.2d 1067, 1068 (Fla. 1994). Id. at *4.

As Plaintiff/Homeowners have pled damages to property which resulted directly from the alleged defective product and that the alleged defective product (the Chinese Drywall) was placed on the market for sale to the Plaintiff/Homeowners by Defendant/Installers, Plaintiff/Homeowners have stated a claim for strict liability which survives Defendant/Installers' motion to dismiss based upon the inapplicability of strict liability to structural improvements to real property. Therefore, Defendant/Installers' motion to dismiss is denied.

## II. Plaintiff/Homeowners' claim for strict liability should be dismissed because strict liability does not apply to Defendant/Installers since they are providers of a service, not a product; and, are not in the chain of distribution

Defendant/Installers contend that Plaintiff/Homeowners' case of action under strict liability should be dismissed because, as a products liability based claim, it is not available against Defendant/Installers, who is in the chain of distribution.   Here, in the Omnibus Complaint, Plaintiffs/Homeowners' pleadings allege that Defendant/Installers purchased, distributed and supplied the alleged defective Chinese Drywall.   At the hearing, Defendant/Installers concede the purchase and supply as a part of the installation of the defective Chinese Drywall.  Plaintiff/Homeowners have attached invoices showing sales of the defective Chinese Drywall from the installers which was installed in the affected home.

In *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976), the Florida Supreme Court adopted the doctrine of strict liability as set forth in section 402A of the American Law Institute

3

Restatement (Second) of Torts.   The Court explained that, "strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *West*, 336 So. 2d at 86.  Since that time, this doctrine has been expanded "to others in the distributive chain including retailers, wholesalers, and distributors." *Plaza v. Fisher Development, Inc.*, 971 So. 2d 918, 920 (Fla. 3d DCA 2007), quoting *Samuel Friedland Family Enters. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994).   As it appears that Plaintiff/Homeowners have alleged that Defendant/Installers are in the chain of distribution, Defendant/Installers motion to dismiss is denied.

### III. Plaintiff/Homeowners' claim for strict liability should be dismissed because strict liability is barred by the economic loss rule (herein "ELR")

Defendant/Installers argue that Plaintiff/Homeowners claims sounding in strict liability should be barred by the ELR, which prohibits tort recovery when a product damages itself. Here, Plaintiff/Homeowners do not contend that the work performed by the Defendant/Installers under the contract failed to meet an acceptable standard of workmanship or that the product (the defective Chinese Drywall) does not do what it was designed to do.  Plaintiff/Homeowners are not simply seeking "disappointed economic expectations" which are usually contemplated by contract law.  Instead, as alleged in the Omnibus Complaint, Plaintiffs maintain that, due to the unreasonable and inherent dangerousness of the defective Chinese Drywall, that the Installers, and anyone else who profits from the sale of the defective Chinese Drywall, is strictly liable in tort for the resulting injuries to them. *See Samuel Friedland Family Enterprises v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994)(explaining that, "[t]he underlying basis for the doctrine of strict liability is that those entities within a product's distributive chain 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should

4

bear the financial burden of even an undetectable product defect.' *North Miami General Hosp., Inc. v. Goldberg*, 520 So.2d 650, 651 (Fla. 3d DCA 1988). Those entities are in a better position to ensure the safety of the products they market, to insure against defects in those products, and to spread the cost of any injuries resulting from a defect.").

The damages Plaintiff/Homeowners seek due to the defective Chinese Drywall and the hydrogen sulfide it emits could not have been foreseen or predicted by the Plaintiff/Homeowners as the drywall was manufactured, selected and installed in the their homes. In *A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397, 399 (Fla.1973), the Florida Supreme Court explained that "[p]rivity is a theoretical device of the common law that recognizes limitation of liability commensurate with compensation for contractual acceptance of risk. The sharpness of its contours blurs when brought into contact with modern concepts of tort liability." Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. *See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).

The parties agree there is no contractual privity between the Defendant/Installers and the Plaintiff/Homeowners. As such, there was no ability to contract away unforeseeable or even unforeseeable damages.

In their Omnibus Complaint, the Plaintiff/Homeowners have alleged harm beyond mere disappointed economic expectation, namely that the alleged defective Chinese Drywall is unreasonably and inherently dangerousness and that the damages caused by the presence of it in their homes was neither foreseen, nor contemplated, Plaintiff/Homeowners have stated a claim for strict liability which survives Defendant/Installers' motion to dismiss based upon contractual privity and strict liability. Accordingly, Defendant/Installers' motion to dismiss is denied.

5

**IV. Plaintiff/Homeowners' claim for negligence must be dismissed as a matter of law because they are unable to state a cause of action**

Defendant/Installers maintain that Plaintiff/Homeowners' negligence claims based upon the premise that the Defendant/Installers owed a duty to Plaintiff/Homeowners' to exercise reasonable care in the inspection, testing and purchasing of the alleged defective Chinese Drywall must be dismissed for two reasons. First, Defendant/Installers contend that Plaintiff/Homeowners have failed to allege knowledge on the part of the Defendant/Installer; and second, Defendant/Installers owed no duty to Plaintiff/Homeowners to inspect the drywall for latent defects, unless the drywall was inherently dangerous.

No duty exists on behalf of the Defendant/Installers to inspect for a latent defect, absent some unusual circumstance. In their omnibus complaint, Plaintiff/Homeowners have alleged that the defective Chinese Drywall was imported from a foreign country with no proven track record in the United States. While this allegation alone, namely that the drywall came from a foreign source (China), would not in itself trigger a duty to inspect for a latent defect, Plaintiff/Homeowners also alleged that the Chinese Drywall had an abnormal smell, not characteristic of drywall, which could in fact create a duty to inspect or warn.

In their omnibus complaint, Plaintiff/Homeowners' have further alleged that the defective Chinese Drywall is inherently dangerous and identify it as the cause of certain physical symptoms, including headache, burning eyes, respiratory problems, and sore throat. If it is proven that the defective Chinese Drywall is inherently dangerous, then a duty would exist. *See Advance Chemical Company v. Harter*, 478 So. 2d 444. 447-48 (Fla. 1st DCA 1985)("[q]uestions of whether a product is inherently dangerous or has dangerous propensities and whether a manufacturer or distributor has a duty to warn under the circumstances are usually question of

6

fact for the jury.") Such factual issues are not susceptible to a motion to dismiss. As pled, upon

the four corners of the omnibus complaint, the motion to dismiss is denied.

## V. Plaintiff/Homeowners' claim for breach of implied warranties must be dismissed because there is no privity of contract

At the hearing, the parties conceded that a breach of implied warranty is based upon

section 718.203, Florida Statutes,[2] and is limited to Florida condominiums. Additionally, the

Omnibus Hamburg Complaint does not contain any claims under common law implied warranty.

In the absence of such a claim, the Court declines to rule on any such claims. Accordingly,

---

[2]  718.203 Warranties.

(1) The developer shall be deemed to have granted to the purchaser of each unit an implied warranty of fitness and merchantability for the purposes or uses intended as follows:

(a) As to each unit, a warranty for 3 years commencing with the completion of the building containing the unit.

(b) As to the personal property that is transferred with, or appurtenant to, each unit, a warranty which is for the same period as that provided by the manufacturer of the personal property, commencing with the date of closing of the purchase or the date of possession of the unit, whichever is earlier.

(c) As to all other improvements for the use of unit owners, a 3-year warranty commencing with the date of completion of the improvements.

(d) As to all other personal property for the use of unit owners, a warranty which shall be the same as that provided by the manufacturer of the personal property.

(e) As to the roof and structural components of a building or other improvements and as to mechanical, electrical, and plumbing elements serving improvements or a building, except mechanical elements serving only one unit, a warranty for a period beginning with the completion of construction of each building or improvement and continuing for 3 years thereafter or 1 year after owners other than the developer obtain control of the association, whichever occurs last, but in no event more than 5 years.

(f) As to all other property which is conveyed with a unit, a warranty to the initial purchaser of each unit for a period of 1 year from the date of closing of the purchase or the date of possession, whichever occurs first.

(2) The contractor, and all subcontractors and suppliers, grant to the developer and to the purchaser of each unit implied warranties of fitness as to the work performed or materials supplied by them as follows:

(a) For a period of 3 years from the date of completion of construction of a building or improvement, a warranty as to the roof and structural components of the building or improvement and mechanical and plumbing elements serving a building or an improvement, except mechanical elements serving only one unit.

(b) For a period of 1 year after completion of all construction, a warranty as to all other improvements and materials.

(3) "Completion of a building or improvement" means issuance of a certificate of occupancy for the entire building or improvement, or the equivalent authorization issued by the governmental body having jurisdiction, and in jurisdictions where no certificate of occupancy or equivalent authorization is issued, it means substantial completion of construction, finishing, and equipping of the building or improvement according to the plans and specifications.

(4) These warranties are conditioned upon routine maintenance being performed, unless the maintenance is an obligation of the developer or a developer-controlled association.

(5) The warranties provided by this section shall inure to the benefit of each owner and his or her successor owners and to the benefit of the developer.

(6) Nothing in this section affects a condominium as to which rights are established by contracts for sale of 10 percent or more of the units in the condominium by the developer to prospective unit owners prior to July 1, 1974, or as to condominium buildings on which construction has been commenced prior to July 1, 1974.

(7) Residential condominiums may be covered by an insured warranty program underwritten by a licensed insurance company registered in this state, provided that such warranty program meets the minimum requirements of this chapter; to the degree that such warranty program does not meet the minimum requirements of this chapter, such requirements shall apply.

Defendant/Installers' motion to dismiss is granted with prejudice as to any and all non-condominium residences, i.e. those residences not governed by section 718.203.

**VI. Plaintiff/Homeowners' claim for private nuisance should be dismissed because the installation of an alleged defective product does not give rise to such a cause of action**

Florida case law establishes the right of private nuisance to give the ability of a homeowner/landowner to protect their property rights from the unrestrained exercise of the property rights of another owner. *See Jones v. Trawick*, 75 So. 2d 785 (Fla. 1954); *Beckman v. Marshall*, 85 So. 2d 552 (Fla. 1956). Plaintiff/Homeowners, without the support of authority seek to expand this cause of action to a defective condition, inside of the Plaintiff's land (home) under the theory that the defect was delivered by others to the home, thereby causing this private nuisance. It is alleged that the nuisance caused Plaintiff/Homeowners a loss of use and enjoyment of their property.

The Court finds this theory to be unsupported by the law and grants the motion to dismiss with prejudice. For the foregoing reasons it is hereby

**ORDERED and ADJUDGED** that:

(1) Defendant/Installers' motion to dismiss Plaintiff/Homeowners' claim for strict liability because strict liability does not apply to structural improvements to real property is **DENIED**;

(2) Defendant/Installers' motion to dismiss Plaintiff/Homeowners' claim for strict liability because Defendant/Installers are providers of a service, not a product, and are not in the chain of distribution is **DENIED**;

(3) Defendant/Installers' motion to dismiss Plaintiff/Homeowners' claim for strict liability because strict liability is barred by the economic loss rule is hereby **DENIED**;

CASE NO.: CACE11-90,000 (01)

(4) Defendant/Installers' motion to dismiss Plaintiff/Homeowners' claim for negligence

is **DENIED**;

(5) Defendant/Installers' motion to dismiss Plaintiff/Homeowners' claim for breach of

implied warranties is **GRANTED with prejudice** as to all non-condominium residences as

governed by section 718.203, Florida Statues;

(6) Defendant/Installers' motion to dismiss Plaintiff/Homeowners' claim for private

nuisance is **GRANTED with prejudice**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this ___26___ day of

_____July_____, 2011.

Circuit Judge Charles M. Greene

Copies to:

Vanessa M. Serrano, Esq., One Financial Plaza, Suite 2700, Fort Lauderdale, FL  33394
Leslie Miller Tomczak, Esq., 350 East Las Olas Blvd., Fort Lauderdale, FL 33301-2229
Rocco Cafaro, Esq., P.O. Box 2231, Tampa, FL  33601-2231
Robert V. Fitzsimmon, Esq., Brickell Bayview Center, Suite 3000, 80 SW 8th Street, Miami, FL 33101
Todd R. Erenreich, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, Florida 33133
Michael P. Peterson, Esq., 8900 SW 117th Ave., C-104, Miami, FL  33186
Donald J. Hayden, Esq., 1111 Brickell Ave., Suite 1700, Miami, FL 33131
Michael J. Ryan, Esq., 12 SE 7th Street, Suite 801, Fort Lauderdale, FL  33301
Victor Diaz, Esq., 119 Washington Ave., Suite 402, Miami Beach, FL  33139

9