Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**This Document Relates to All Cases**

## ORDER & REASONS

Before the Court are two motions involving application of the economic loss rule to tort claims for economic damages brought under Florida, Alabama, Mississippi, and Louisiana law. These motions are, (1) Distributor Defendants' Motion to Dismiss or, Alternatively, to Strike Plaintiffs' Claims for Economic Damages (Rec. Doc. No. 295), and (2) Manufacturer Defendants' Joinder in Distributors' Rule 12(b)(6) Motion to Dismiss or, Alternatively, to Strike Plaintiffs' Tort Claims for Economic Damages (Rec. Doc. No. 304). For the following reasons, these Motions are DENIED.

**I.    BACKGROUND**

This case involves claims for damages allegedly resulting from the manufacturing, exportation, importation, distribution, sale, and installation of defective Chinese drywall. In the aftermath of Hurricanes Katrina and Rita, rebuilding put a strain on U.S. building supplies, including drywall. As a result, drywall manufactured in China was imported into the U.S. and used in the construction and refurbishing of homes in the Gulf Coast area and elsewhere. Sometime after installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses and the corrosion of appliances and certain other components of their homes. Some homeowners also began to complain of headaches, nosebleeds, difficulty breathing and

other physical afflictions believed to be caused by the Chinese drywall.  Accordingly,

homeowners began to file suit in both federal and state courts against homebuilders, installers,

realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were

involved with the Chinese drywall.  Because of the commonality of facts in the various cases,

this litigation was designated as multidistrict litigation.  Pursuant to a Transfer Order from the

United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases

involving Chinese drywall were consolidated for pretrial proceedings in the U.S. District Court,

Eastern District of Louisiana.  The state cases which could not be removed remain where filed,

with Florida, Louisiana, Alabama, Mississippi, Virginia, and North Carolina having the most

Chinese drywall cases to date.

 Many of the same issues are implicated in Chinese drywall cases pending in federal and

state courts.  One such issue is the application of the economic loss rule ("ELR") which is

involved in motions before the MDL Court and the Florida State Courts.   The MDL and Florida

State Courts held a consolidated hearing on November 13, 2009, to address the role of the

Florida ELR as it applies in the Chinese drywall cases.  On November 19, 2009, the MDL Court

held a hearing to address the role of the Alabama, Mississippi, and Louisiana ELRs as they apply

in the MDL cases.  After hearing oral argument, reviewing the briefs submitted by the parties,

and considering the applicable law, the Court is now ready to rule on this issue.

 The ELR is a judicially created doctrine which prevents a plaintiff from bringing tort

claims for economic losses when the only damage alleged is to a product caused by the product

itself.  *See E. River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871-75

(1986); *see also Indem. Ins. Co. of N. Am. v. Am. Aviation*, 891 So. 2d 532, 536-41 (Fla. 2004).

However, the doctrine does not bar tort claims for economic losses for damage cause by the

product to "other property" or for personal injuries. *See id.* In order to determine whether the

ELR applies to bar the tort claims of the Plaintiffs in the instant matter, the Court will first

address the arguments raised by the parties in their briefs and oral arguments, and then it will

consider the arguments and applicable case law in relation to the instant matter. The Court now

turns to the Motions.

## II.     PRESENT MOTIONS

### A.     Distributor Defendants' Motion to Dismiss or, Alternatively, to Strike Plaintiffs' Claims for Economic Damages

Distributor Defendants filed a Motion to Dismiss or, Alternatively, to Strike

Plaintiffs' Claims for Economic Damages alleging that all, or a substantial majority of Plaintiffs'

claims subject to Florida law, are barred by the Florida ELR. Rec. Doc. No. 295. The

Distributors limit their Motion to Plaintiffs' property damage claims against them based upon

tort theories of recovery. The Distributors argue that the ELR limits tort recovery to personal

injury and/or damage to "other property," barring any recovery for economic damages such as

injury to the product, repair costs, inspection costs, relocation costs, and diminution in value.

In support of their Motion, the Distributors largely rely upon the Florida Supreme Court's

decision in *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244

(Fla. 1993). They cite *Casa Clara's* definition of the ELR as "prohibit[ing] tort recovery when a

product damages itself, causing economic loss, but does not cause personal injury or damage to

any property other than itself." *Id.* at 1246. *Casa Clara* held that the ELR barred plaintiff

homeowners' tort claims for economic losses caused by crumbling, cracking concrete used to

construct their homes on the basis that the homes plaintiffs purchased were the "product" and the

concrete was an integral part of the product-home which only damaged itself. *Id.* at 1246-48.

The Distributors read *Casa Clara* as supporting their argument that,

> In the case of building products used in home construction, 'the product' is the home itself, or that product (in its completed state) purchased by the consumer, so that the Economic Loss Rule prohibits any recovery in tort for economic damages to the finished product purchased by Plaintiffs, i.e. the home, by an allegedly defective component of the finished product. Brief of Distributor Defendants at 5, *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-2047 (E.D. La. Sept. 28, 2009).

Specifically, they define the "product" in the present matter as the purchased home and the Chinese drywall as a component of that product, and thus argue that the economic damages caused by the drywall are only to the product itself, not to "other property" or to persons in that home. The Distributors also note that the court in *Casa Clara* acknowledged that homeowners are a sympathetic and appealing class, but still went on to hold that the ELR barred the homeowners' tort claims for economic damages. *Casa Clara*, 620 So. 2d at 1246-47.

Additionally, the Distributors claim that the Florida Supreme Court's more recent decision in *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004), reaffirms *Casa Clara* and the continuing vitality of the ELR. The Distributors also cite the following cases in support of their Motion: *Fishman v. Bolt*, 666 So. 2d 273 (Fla. Dist. Ct. App. 1996), which held the ELR precluded tort recovery for damages caused by a defective seawall to a pool, patio, and home because such were not "other property;" *In re Masonite Corp. Hardboard Siding Products Liability Litigation*, 21 F.Supp.2d 593 (E.D. La. 1998), which held that damage caused by defective siding is not "other property" but rather part of the finished product and thus tort recovery would be barred by the ELR; and *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734 (11th Cir. 1995), which held the ELR precluded tort damages where chemicals in plywood used for roofing rendered the roof defective because the roof was not "other property."

With regard to tort claims brought by Plaintiffs against Distributors under Alabama law, Distributors argue that the ELR bars tort claims for damage to a product caused by the product itself. Distributors cite *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671 (Ala. 1989), as evidence that Alabama has adopted the ELR. In *Lloyd Wood*, the court held that the ELR barred tort damages caused by a front-end loader because no damage to other property or personal injuries occurred, the only damage was to the front-loader itself. *Id.* at 672. Distributors contend *Lloyd Wood* is analogous to the instant matter. Distributors cite *Wellcraft Marine, a Division of Genmar Industries, Inc. v. Zarzour*, 577 So. 2d 414, 418 (Ala. 1990), for the Alabama Supreme Court's conclusion that the ELR applies to products sold to consumers and commercial buyers alike and its refusal to adopt a distinction under the doctrine between the two. Distributors also rely on the Eastern District's application of Alabama's ELR in *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 2008 U.S. Dist. LEXIS 103249 (E.D. La. Dec. 12, 2008), to support their Motion. In *FEMA Trailer*, plaintiffs alleged property damage to the trailers in which they lived and personal injuries resulting from high levels of formaldehyde in the trailers. The Eastern District held that plaintiffs' property damage tort claims for economic losses were barred by the ELR. *Id.* at *58.

With regard to Mississippi law, Distributors argue that Plaintiffs' claims arising out of negligence and strict liability are barred by the ELR. Distributors cite *Progressive Insurance Co. v. Monaco Coach Corp.*, 2006 WL 839520, at *3 (S.D. Miss. Mar. 29, 2006), as evidence that Mississippi has adopted the ELR. Distributors argue that Plaintiffs have no tort claims for damage caused by the drywall to their homes because under *State Farm Mutual Automobile Insurance Co. v. Ford Motor Co.*, 736 So. 2d 384, 388 (Miss. Ct. App. 1999), component parts are not "other property" for purposes of the ELR; rather, they are integrated parts of a whole.

Distributors analogize *Progressive Insurance* to the instant case on the basis that *Progressive Insurance* involved a motor home and the court concluded that the motor home was the product and any damage to the motor home caused by its component parts, such a refrigerator or electrical system could not constitute "other property" under the ELR. *Progressive Insurance,* 2006 WL 839520 at *3 n.3.

Distributors do not make any arguments regarding applicability of the ELR under Louisiana law.

On oral argument, Distributors clarified that their Motion does not apply to the tort claims of Plaintiffs who purchased Chinese drywall and subsequently installed it into their homes, but only to the tort claims of Plaintiffs who purchased homes already containing Chinese drywall.

### B. Manufacturer Defendants' Joinder in Distributors' Rule 12(b)(6) Motion to Dismiss or, Alternatively, to Strike Plaintiffs' Tort Claims for Economic Damages

Manufacturer Defendants Knauf Plasterboard (Tianjin) Co. LTD, Knauf Plasterboard (Wuhu) Co., Ltd., and Knauf Gips KG submitted a Joinder in the Distributors' Rule 12(b)(6) Motion to Dismiss or, Alternatively, to Strike the Plaintiffs' Tort Claims for Economic Damages. Rec. Doc. No. 304. The Joinder is directed solely to Plaintiffs' property damage claims against Manufacturer Defendants premised upon tort theories of recovery pursuant to the laws of Florida, Alabama, Mississippi and Louisiana. The Manufacturers argue that the ELR is applied to manufacturers and distributors in the same way in all jurisdictions, and thus conclude that claims against them should be dismissed for the same reasons outlined in the Distributors' Motion.

With regard to Louisiana law, Manufacturers argue that Plaintiffs' claims for economic

damages arising out of tort claims are barred by the ELR. Manufacturers argue that the statutory scheme in Louisiana shows clear support for the ELR. Manufacturers reason that the comments of Article 3545 of the Louisiana Civil Code which governs choice of law conflicts in products liability state that "[t]his Article applies to any injury caused by a product, rather than to the product itself. The latter type of damage is likely to be characterized as contractual in nature and thus would be governed by the Title on conventional obligations." *Id.*, cmt, (a). Manufacturers further argue that the Louisiana Products Liability Act ("LPLA"), which provides the exclusive theories of liability for manufacturers in products liability cases, also supports application of the ELR in Louisiana. Manufacturers base this argument upon the LPLA's definition of damages as "including damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that the [the Civil Code Articles in redhibition] do not allow recovery for such damage or economic loss." La. Rev. Stat. Ann. § 9:2800.53(5). Manufacturers conclude then that since Louisiana's redhibition statutes allow for recovery of economic damages, the LPLA does not.

On oral argument, Manufacturers clarified that their Motion does not apply to the tort claims of Plaintiffs who purchased and subsequently installed Chinese drywall into their homes, as contrasted with the tort claims of Plaintiffs who purchased homes already containing Chinese drywall.

### C.   PSC's Joint Response to the Distributor & Manufacturer Defendants' Motion to Dismiss or, Alternatively, to Strike Plaintiffs' Tort Claims for Economic Damages

The Plaintiffs Steering Committee ("PSC") filed a Joint Response in opposition to the Distributor and Manufacturers' Motions. Rec. Doc. No. 374. The PSC argues that the ELR does not bar homeowners from recovering damages arising out of the legal duties imposed upon

manufacturers and distributors in tort.  The PSC supports its argument by examining the public

policy reasons for the ELR and factually distinguishing the instant matter from those cases which

applied the ELR.  The PSC argues that the ELR was created to prevent plaintiffs from receiving

tort remedies as a result of disappointed economic expectations and circumventing the

contractual bargain they struck when allocating foreseeable risks.  The PSC points out that the

instant matter does not involve these concerns.  Rather, the PSC claims that the instant matter

presents the unprecedented failure of a product which is alleged to be causing a serious risk of

hazard to safety and health, a classic case to which tort remedies apply.

 The PSC characterizes the holding in *Casa Clara* as applying the ELR only to situations

in which there is a diminution in value of the product because it is inferior in quality and does

not work for the general purposes for which it was manufactured and sold.  The PSC

distinguishes *Casa Clara* from the present matter, arguing that Chinese drywall is not inferior in

quality because it is properly holding up the walls in the Plaintiffs' homes, the general purpose

for which it is sold, unlike the defective concrete in *Casa Clara* which fails to work for its

general purpose of providing a stable foundation for a home.

 The PSC also challenges the Defendants' reliance upon *Casa Clara*, 620 So. 2d 1244,

because *Casa Clara* predates *Indemnity Insurance* and another Florida Supreme Court case,

*Comptech International, Inc. v. Milam Commerce Park, Ltd.*, 735 So. 2d 1219 (Fla. 1999), both

of which limited the broad application of the ELR as endorsed by *Casa Clara*.  Specifically, the

PSC argues that the "other property" exception to the ELR has been relaxed since *Casa Clara* to

include most of the damages claimed by Plaintiffs in the instant matter.

 With regard to Plaintiffs' claims for tort damages under Alabama law, the PSC argues

that the ELR does not apply.  The PSC distinguishes the Alabama cases relied upon by the

Defendants as factually dissimilar to the instant matter. The PSC also cites *Lloyd Wood,* 543 So.
2d 671 (Ala. 1989), for the conclusion that the ELR applies to bar economic loss tort claims
between commercial parties only.

With regard to Mississippi law, the PSC argues that the ELR does not apply to bar
Plaintiffs' tort claims against Defendants. The PSC distinguishes the Mississippi cases relied
upon the Defendants as involving damages to the product itself only, while the instant matter
involves damages to more than the product itself, including personal injuries.

With regard to Plaintiffs' tort claims under Louisiana law, the PSC argues that Louisiana
does not recognize the ELR and thus Plaintiffs' tort claims under Louisiana law are not barred by
the ELR. The PSC claims that the LPLA "includes damages to the product itself and economic
loss arising from a deficiency in or loss of use of the product" to the extent that such recovery for
damage or economic loss is not provided for under the law of Redhibition. La. Rev. Stat. Ann. §
9:2800.53(5). The PSC further argues that Redhibition imposes on a "good faith" seller the
responsibility to repair, remedy or correct the defect, La. Civ. Code Ann. art. 2531, and imposes
upon a manufacturer or "bad faith" seller liability for "the return of the price with interest from
the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale
and those incurred for preservation of the thing, and also for damages and reasonable attorneys
fees." La. Civ. Code Ann. art. 2545.

Additionally, the PSC analogizes the instant matter to products liability cases involving
asbestos, arguing that Chinese drywall and asbestos are similar materials because they both
threaten health and cause damage to other property. The PSC cites four cases involving tort
claims for damage caused by asbestos, all which held that the ELR did not bar such claims.
These cases are: *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir. 1987); *Tioga*

*Public School District #15 of Williams County v. United States Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993); *Detroit Board of Education v. Celotex Corp.*, 196 Mich.App. 694 (Mich. Ct. App. 1992); *Town of Hooksett School District v. W.R. Grace & Co.*, 617 F.Supp. 126 (D.N.H. 1984).

**D.  HSC's Response to the Distributor Defendants' Motion to Dismiss, or Alternatively, to Strike Plaintiffs' Claims for Economic Damages & the Manufacturer Defendants' Joinder in the Distributor Defendants' Motion**

The Homebuilders Steering Committee ("HSC") filed a Response to the Distributor Defendants' Motion to Dismiss, or Alternatively, to Strike Plaintiffs' Claims for Economic Damages, and the Manufacturer Defendants' Joinder in the Distributor Defendants' Motion. Rec. Doc. No. 381. The HSC's limits its Response to Plaintiffs' tort claims under Florida law only.

First, the HSC argues that Plaintiff homeowners' property damage claims against the homebuilders are limited by the ELR to breach of contract or breach of warranty since the homeowners and homebuilders have written contracts relating to the purchase of homes containing Chinese drywall. The HSC cites *Indemnity Insurance* and *Casa Clara* to support its claim that the contractual privity ELR bars any tort claims by plaintiff homeowners absent an allegation of wrongdoing independent of the breach of contract, personal injury, or damage to "other property."

Second, the HSC challenges the reliance of the PSC upon case law involving the application of the ELR to asbestos-related property damage tort claims, as unsupported by Florida law and as involving a harm that was recognized in the scientific field and known by the manufacturer, unlike the unrecognized and unforeseeable harm posed by Chinese drywall. The HSC also notes that these cases did not involve tort claims of plaintiffs against homebuilders.

Third, the HSC argues that, with respect to any tort claims by the homebuilders against

the distributors and manufacturers, the homebuilders stand in a different position than the plaintiff homeowners because they did not purchase completed homes. Under *Casa Clara*, the HSC argues that the definition of what constitutes the "product" and "other property" under the ELR turns on what the plaintiff purchased, which would necessarily be different between a homebuilder plaintiff and a homeowner plaintiff. Further, the HSC claims that a determination of these definitions for the homebuilders entails a fact-intensive inquiry which is premature on a motion to dismiss.

Fourth, the HSC argues that the ELR does not bar its members' claims for indemnity, equitable subrogation or statutory claims against the manufacturers and suppliers.

At this point, it is appropriate to consider the standard of review and applicable law.

## III.   LAW & ANALYSIS

### A.   Standard of Review

#### 1.   Motion to Dismiss

Motions to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) are "viewed with disfavor and rarely granted." *Lowrey v. Texax A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)(quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches*

-11-

*Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  However, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, — U.S. —. —, 129 S.Ct. 1937, 1949 (2009).  Therefore, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### 2.   Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Such matter may be stricken upon motion made by a party or *sua sponte*.  Fed. R. Civ. P. 12(f). The action of striking a pleading "should be sparingly used by courts" because "it is a drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction of Excambia Country, Florida*, 306 F.2d 862, 868 (5th Cir. 1962)(quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).  Accordingly, a motion to strike should only be granted "when the pleading to be stricken has no possible relation to the controversy." *Id.*

### B.   Economic Loss Rule Jurisprudence

To put these issues in proper context it is helpful to review the origins and purpose of the ELR.  In this instance, as Holmes taught us "a page of history is worth a volume of logic." *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921).  The ELR has its genesis in maritime law and has since been considered in a variety of contexts, expanding its application to non-maritime matters.  There also currently exist numerous exceptions to the rule depending upon the factual

intricacies of each case. The difficulty in determining whether to apply the doctrine has been recognized by courts and scholars alike. *See* Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523 (2009); *see also* Charles R. Walker, *Moransais V. Heathman and the Florida Economic Loss Rule: Attempting to Leash the Tort-Eating Monster*, 52 Fla. L. Rev. 769 (2000); Paul J. Schwiep, *The Economic Loss Rule Outbreak: The Monster that Ate Commercial Torts*, 69 Fla. B.J. 34 (1995).

The United States Supreme Court first recognized the ELR in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), an admiralty case which raised the question of "whether a cause of action in tort is stated when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." *Id.* at 859. In *East River*, charterers of supertankers brought suit against a turbine manufacturer seeking damages in tort for alleged design and manufacturing defects which caused the supertankers to malfunction on the high seas. *Id.* at 861. The District Court and the Court of Appeals for the Third Circuit granted summary judgment in favor of the manufacturer. *Id.* at 862. The U.S. Supreme Court granted *certiorari*. *Id.*

The Court began its analysis by looking to the public policy concerns involved in products liability actions. In doing so the Court stated,

> Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty. It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort. We must determine whether a commercial product injuring itself is the kind of harm against which public policy requires manufacturers to protect, independent of any contractual obligation. *Id.* at 866 (citations omitted).

The Court considered a paradigmatic products-liability action as "one where a product 'reasonably certain to place life and limb in peril' distributed without reinspection, causes bodily

injury." *Id.*  It reasoned, in that situation, a "manufacturer is liable whether or not it is negligent

because 'public policy demands that responsibility be fixed wherever it will most effectively

reduce the hazards to life and health inherent in defective products that reach the market.'" *Id.*

It went on to recognize that this duty of care has been broadened to include protection against

property damage, but traditionally only where the defective product damages other property. *Id.*

at 867.  The Court concluded that the issue before it did not fit into this traditional duty of care

because the instant case involved a defective product which did not cause damage to 'other'

property since each supertanker's defectively designed turbine components damaged only the

turbine itself. *Id.*

The Court next considered the different approaches taken by courts in addressing whether

injury to a product itself may be brought in tort. *Id.*  It ultimately adopted an approach similar to

that in *Seely v. White Motor Co.*, 63 Cal.2d 9 (1965), and held "that a manufacturer in a

commercial relationship has no duty under either a negligence or strict products-liability theory

to prevent a product from injuring itself." *Id.* at 871.  It defined such damage as occurring where

"the product has not met the customer's expectations, or, in other words, that the customer has

received 'insufficient product value.'" *Id.*  The Court supported its holding by noting that where

damage is to a product itself, a customer is not left without a remedy, for he still has a claim for

breach of warranty or breach of contract. *Id.* at 872.  It then applied this rationale to the instant

case stating, "[c]ontract law, and the law of warranty in particular, is well suited to commercial

controversies of the sort involved in this case because the parties may set the terms of their own

agreements." *Id.* at 872-73.  The Court further reasoned, "[s]ince a commercial situation

generally does not involve large disparities in bargaining power, we see no reason to intrude into

the parties' allocation of the risk." *Id.* at 873.  The Court noted that the limitation on damages in

-14-

a contract action is a result of an agreement between the parties and in a warranty action derives from foreseeability and privity. *Id.* In contrast, in a products-liability action, damages are not limited in the same way because there is a duty to the public in general. *Id.*

Following *East River*, several states have adopted the ELR or some form of the doctrine, and/or modified their existing ELR.

### C.   Application of the ELR to the Instant Matter

In this multi-district litigation, the Court, as transferee court, applies the law of the transferor courts. *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 422 (E.D. La. 1997). Accordingly, with regard to the instant Motions, the Court applies the law of Florida, Alabama, Mississippi, and Louisiana to those cases transferred from district courts in each of these states.

From the origin of the ELR in *East River*, through its development in various states, including those involved in the instant Motions, it is clear that the ELR targets products which fail to meet a plaintiff's economic expectations, as distinguished from products which pose an unreasonable risk of harm to a plaintiff's property and health, but do not fail to meet their intended purpose. For this latter group, the ELR has no relevance. Moreover, the ELR is not applicable where there are claims that the defective product caused personal injury.

This is the same conclusion reached by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, which coordinated its Florida ELR hearing with the MDL Court's, in its Order Denying Defendants' Motions to Dismiss Plaintiffs' Tort Claim Under the Economic Loss Rule. *In re Chinese Drywall Litig.*, No. 09-200,000 (Fla. Cir. Ct. Dec. 18, 2009)(order denying motions to dismiss). In this Order, Judge Farina concluded

The purported off-gassing of sulfur-based compounds has not caused the drywall to fail

at its general purpose and function.  Instead, the off-gassing places the drywall into a category of products whose failure may have created an unreasonable risk of harm.  As such, the economic loss rule will not be employed to restrict the plaintiffs, and they are permitted to maintain their tort claims as currently alleged.  *Id.*

The Plaintiffs in the instant matter allege damage to their property and health as a result of allegedly defective Chinese-manufactured drywall.  *See e.g. Vickers v. Knauf Gips KG*, No. 09-4117 (E.D. La. 2009)(transferred to the MDL Court from the U.S. District Court, Southern District of Florida); *Leford v. Knauf Gips KG*, No. 09-4292 (E.D. La. 2009)(transferred to the MDL Court from the U.S. District Court, Northern District of Alabama); *Whitfield v. Knauf Gips KG*, No. 09-4324 (E.D. La. 2009)(transferred to the MDL Court from the U.S. District Court, Southern District of Mississippi); *Donaldson v. Knauf Gips KG*, No. 09-2981(E.D. La. 2009) (transferred to the MDL Court from the U.S. District Court, Eastern District of Louisiana). Plaintiffs allege the Chinese drywall in their homes emits sulfide gasses and/or other chemicals that cause corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items, as well as creates noxious, 'rotten egg-like' odors.  *See e.g.* Complaint, *Vickers v. Knauf Gips KG*, No. 09-4117(E.D. La. 2009); Complaint, *Leford v. Knauf Gips KG*, No. 09-4292 (E.D. La. 2009); Complaint, *Whitfield v. Knauf Gips KG*, No. 09-4324 (E.D. La. 2009); Complaint, *Donaldson v. Knauf Gips KG*, No. 09-2981 (E.D. La. 2009). Plaintiffs further allege that the Chinese drywall causes allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.  *Id.*  Plaintiffs contend that the numerous Defendants in the chain of supply are liable for negligence, negligence per se, strict liability, breach of the implied warranty of merchantibility, breach of implied warranty of fitness for a particular purpose, breach of express warranty, fraudulent misrepresentation, fraudulent concealment, breach of contract, private nuisance, vicarious

liability, and violation of the Deception and Unfair Trade Practices Act. *Id.* Plaintiffs seek

damages for the following: costs of inspections; costs of replacement and repair of the drywall,

components, electrical wiring, interior finishes, and personal property; diminution in value of

their properties, and personal injuries. *Id.* The Distributor and Manufacturer Defendants want to

dismiss the Plaintiffs' tort claims for economic losses to the extent they are for damage to the

"product" itself, that is, not for personal injuries or for damage to "other property."

The claims by Plaintiffs can be divided into two categories, (1) claims by Plaintiffs who

purchased their homes already containing Chinese drywall, and (2) claims by Plaintiffs who

purchased the Chinese drywall and subsequently installed it into their homes. Both the

Distributor and Manufacturer Defendants conceded on oral argument that their instant Motions

do not apply to the tort claims of Plaintiffs who purchased sheets of Chinese drywall, rather than

purchasing homes already containing the drywall. Transcript of Oral Argument at 18-19, *In re*

*Chinese Manufactured Drywall Prods. Liab. Litig.* (No. 09-md-2047)(November 19, 2009);

Transcript of Oral Argument at 7-8, 25–27, *In re Chinese Drywall*, In the Circuit Court of the

Eleventh Judicial Circuit in and for Miami-Dade County, Florida (No. 09-

200,000(42))(November 13, 2009). With regard to the latter type of claims, the Court holds that

the ELR does not bar Plaintiffs' tort claims for damages including economic losses. This

holding is consistent with the jurisprudence. *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino*

*& Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993), established that in order to determine the

"product" for purposes of the ELR, one must look to the product purchased by the plaintiff, not

the product sold by the defendant. The Florida Supreme Court, in applying this test, concluded

that when homeowners purchase finished homes, and not the individual components of those

homes, the finished homes constitute the "product." *Id.* at 1247; *see also*, *Pulte Home Corp. v.*

*Osmose Wood Preserving, Inc.*, 60 F.3d 734, 741-42 (11th Cir. 1995); *In re Masonite Corp.*

*Hardboard Siding Prods. Liab. Litig.*, 21 F.Supp.2d 593, 602 (E.D. La. 1998); *Progressive Ins.*

*Co. v. Monaco Coach Corp.*, 2006 WL 839520, *3 (S.D. Miss. Mar. 29, 2006). Accordingly, the

"product" for purposes of the ELR for those Plaintiffs in the instant matter who purchased sheets

of drywall is the drywall, not the completed homes. Thus, these Plaintiffs' tort claims for

economic losses are not barred by the ELR.

  With regard to the other category of claims, those by Plaintiffs who purchased homes

containing Chinese drywall, the Court will consider the jurisprudence of the ELR in Florida,

Alabama, Mississippi, and Louisiana, in order to determine whether these Plaintiffs' tort claims

for economic losses against the Manufacturer and Distributor Defendants are barred. Most

recent pronouncements on the application of the ELR look back to the U.S. Supreme Court's

adoption of the doctrine in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S.

858 (1986). *East River*, as discussed previously, involved defectively designed turbine

components on supertankers which caused only the turbines to malfunction. *Id.* at 867. The

Court characterized the situation as one in which "the product has not met the customer's

expectations" and "the customer has received 'insufficient product value.'" *Id.* The Court

justified barring plaintiff's tort remedy on the basis that plaintiff still had breach of warranty and

breach of contract remedies against the manufacturer, both of which the Court found appropriate

since the commercial parties had entered into an agreement, allocating risk, and the malfunction

was foreseeable. *Id.* at 871-72.

  In comparing the facts and rationale of *East River* to the instant matter, there are few

similarities. The instant matter does not involve a non-operational product like the turbines in

*East River*. Rather, the Chinese drywall in the instant matter is operating as intended-as an

interior wall and/or ceiling, a room divider, a shell for insulation and wiring, and a base for hanging various items, such as lighting fixtures and decorative items. It is not crumbling, deteriorating or failing to serve its intended purpose. The allegations involving the Chinese drywall are that it is contaminating the home by giving off noxious fumes which are corroding certain metal elements located within the property where the drywall is installed, and is causing health problems to the inhabitants of this property. Factually, this contrasts with defective turbines which ceased to run.

The rationale behind the Court's holding in *East River* is also inapposite to the instant matter. The Court in *East River* read the facts as involving disappointed economic expectations of a commercial party who had entered into a contract, thus allocating risks based on foreseeable consequences, and who had contract and breach of warranty actions against that party. Conversely, in the instant matter, the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed. Additionally, the Plaintiffs are not in privity with the Manufacturer and Distributor Defendants, so they, unlike the plaintiff in *East River*, are not left with breach of contract and breach of warranty actions against these defendants (except in Louisiana where by statute the purchaser or ultimate consumer does have breach of warranty claims against the manufacturer under the LPLA).

A similar analysis results when comparing the instant matter to Florida cases involving the ELR. The Florida Supreme Court adopted the ELR as characterized in *East River* in *Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So. 2d 899 (Fla. 1987). *Florida Power* involved a suit against a manufacturer for damage caused by steam generators that leaked. *Id.* at 900. The court held that the ELR barred tort claims for economic damages on the basis that the commercial parties involved could have protected their interests through contract and warranty

negotiation. *Id.* In *Florida Power,* the defect in the generators, the leaking, was preventing the

generators from achieving their purpose of producing energy; in contrast, the Chinese drywall in

the present case, as discussed above, is functioning essentially as drywall. Additionally, the

Plaintiffs in the instant matter, unlike in *Florida Power,* never had the opportunity to negotiate

with the Manufacturer or Distributor Defendants.

      The next major decision from the Florida Supreme Court on the ELR, and one that is

heavily relied upon by the Defendants, is *Casa Clara,* 620 So. 2d 1244. *Casa Clara* involved

tort claims by property owners against a concrete supplier after the concrete installed in their

homes, which contained a high-salt content, began to rust reinforcing steel causing the concrete

to crumble and break off. *Id.* at 1245. The Defendants analogize these facts to the instant matter

and ask that the Court reach the same conclusion as the Florida Supreme Court-that the

plaintiffs' tort claims are barred by the ELR. *Id.* at 1247. However, the Defendants fail to note

the factual discrepancies between the two cases. *Casa Clara* involved crumbling, cracking

concrete which failed serve its intended purpose as a support foundation for a building, while the

Chinese drywall has and is currently serving its intended purpose as a room divider and wall

anchor.

      Additionally, the rationale behind the decision in *Casa Clara* is inapplicable in the

instant matter. The Florida Supreme Court spent a great deal of time distinguishing economic

loss, which is barred by the ELR, and non-economic loss, which is not barred under the doctrine.

*Id.* at 1247. It defined economic loss as stemming from a product "inferior in quality" and which

"does not work for the general purposes for which it was manufactured and sold." *Id.* Also,

looking to *East River,* the court characterized economic loss as "disappointed economic

expectations" and added that recovery under tort requires "a showing of harm above and beyond

disappointed expectations." *Id.* The Chinese drywall is not structurally inferior drywall, nor does it fail to serve its intended structural purpose; rather, its defects go beyond disappointed economic expectations, causing harm which justifies access to tort remedies.

Furthermore, the policy reasons for barring the plaintiffs' tort claims in *Casa Clara* are not applicable in the instant matter. For example, the court in *Casa Clara* rejected plaintiffs' argument that holding them to contract remedies was unfair on the basis that their disappointed economic expectations implicate contract, and not tort, concerns. However, the instant matter, as discussed above, involves more than disappointed economic expectations, it involves a potential hazard to health and property. The court in *Casa Clara* also rejected the plaintiffs' argument that the ELR did not apply because of the mere possibility of the defective concrete exploding and causing physical injury, reasoning that actual injury must occur before a negligence action exists. However, in the instant matter, Plaintiffs have alleged actual physical injury as a result of the Chinese drywall in their homes, thus this rationale in *Casa Clara* is not applicable.

Finally, there is reason to question whether *Casa Clara* should be looked to for guidance in the present case. *Casa Clara* was a 4-3 decision with strongly dissenting opinions from Justice Shaw and Justice Barkett. Justice Shaw, for example, read the plaintiffs' complaints of the crumbling drywall as posing a danger of serious injury which is best addressed under tort law. *Id.* at 1248. On different grounds, Justice Barkett criticized the majority opinion for preventing a third-party, not in privity of contract, from tort remedies, when injury to that party is foreseeable. *Id.* Additionally, later decisions from the Florida Supreme Court have cast doubt on its decision in *Casa Clara*. For example, in *Moransais v. Heathman*, 744 So. 2d 973 (Fla. 1999), the court admitted that its decisions on the ELR "have not always been clear" and "have been the subject of legitimate criticism and commentary." *Id.* at 980. The court went on to name

*Casa Clara* as one of its decisions after *Florida Power & Light* which "appeared to expand the application of the [ELR] beyond its principled origins" and which "contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent." *Id.* Specifically, the court noted that *Casa Clara* was not unanimous, especially as to the characterization of "other property." *Id.* The Florida Supreme Court subsequently cited these same criticisms in *Comptech International, Inc. v. Milam Commerce Park, Ltd.*, 753 So. 2d 1291 (Fla. 1999).

More recently, in *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004), the Florida Supreme Court attempted to resolve the confusion surrounding application of the ELR. The court reaffirmed the definition of economic losses as "disappointed economic expectations," "diminution in value of the product because it is inferior in quality," "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." *Id.* at 536 n.1. The court then categorized the two different situations in which the ELR applies, (1) the contractual privity ELR where two parties are in contract, and (2) the products liability ELR where a defective product causes damage, but only to itself. *Id.* The court determined that the factual situation before it did not fit into either ELR category because the suit was not for a defective product, but rather for defective services, and the parties were not in privity of contract. *Id.* at 541. Accordingly, the court held that "cases that do not fall into either of the two categories articulated above should be decided on traditional negligence principles of duty, breach, and proximate cause." *Id.* at 543. The instant matter also does not fall into either of the enumerated categories, and thus, Plaintiffs' tort claims are not barred. The Plaintiffs are not in contractual privity with the Manufacturer or Distributor Defendants, nor, as discussed above, do the Plaintiffs' claims involve "economic losses" caused

by a defective product.

The decisions by the U.S. Court of Appeals, Eleventh Circuit in *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734 (11th Cir. 1995), and the U.S. District Court, Eastern District of Louisiana in *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F.Supp.2d 593 (E.D. La. 1998), provide insight on whether the ELR should be applied in the instant case. *Pulte*, 60 F.3d at 736, involved a suit against a manufacturer of fire retardant which was applied to plywood used to construct roofs of townhouses and which caused the plywood to deteriorate, necessitating the removal of the roofs. The Eleventh Circuit held that the ELR applied to bar plaintiff's tort claims because the claims involved "disappointed economic expectations" and plaintiff failed to properly allocate the risk of such when it purchased the plywood. *Id.* at 741. In *Pulte*, the plywood failed to meet plaintiff's economic expectations because its "deterioration...destroyed the structural integrity of the roof." *Id.* This is not factually analogous to the instant matter. The Chinese drywall has not deteriorated the walls, making them structurally unsound; it is the exact opposite, the Chinese drywall stands just as any other functioning drywall, serving its intended structural purpose. Additionally, the Plaintiffs in the instant matter purchased their property with the Chinese drywall already installed, unlike the plaintiffs in *Pulte* who were homebuilders and could have inquired about the product when purchasing it and bargained for risks.

*In re Masonite*, 21 F.Supp.2d 593, involved defective siding on condominiums that rotted, buckled, and swelled. Although the plaintiff failed to allege tort claims, the court determined that if it had, such would be barred by the ELR because the damage constituted "foiled expectations" to which property owners should answer for their inadequate bargain. *Id.* at 602-03. The instant matter, again, differs factually in that the Chinese drywall is not rotting,

-23-

buckling, swelling, or reacting in any way similar to the siding in *In re Masonite*. Additionally, the damage to Plaintiffs' homes and health in the instant matter is not analogous to the mere "foiled expectations" of plaintiffs with defective siding which has caused no harm other than to the siding itself.

Application of Alabama's ELR to the instant matter results in the same conclusion as application of Florida's ELR-Plaintiffs' tort claims are not barred. Alabama adopted the ELR in *Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671 (Ala. 1989), to hold that tort claims for a defective front-end loader that caught fire were barred by the ELR. Subsequently, the Alabama Supreme Court applied the ELR to bar plaintiff's tort claims in *Wellcraft Marine, a Division of Genmar Industries, Inc. v. Zarzour*, 577 So. 2d 414 (Ala. 1990), where a boat was damaged as a result of manufacturing defects in the boat. More recently, the court addressed the ELR in *Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013 (Ala. 2002), which involved tort claims for economic losses as a result of the delamination of fiberglass panels on freight trailers. The court held that the ELR barred such claims because the only damage was to the panels themselves and "increased costs of doing business and customer displeasure are precisely the sorts of risks that can be considered before entering into a contract and that can be allocated in the contract." *Id.* at 1020. Each of these cases is factually distinguishable from the instant matter. In *Lloyd Wood*, the front-end loader was not performing as such because it caught fire, in *Wellcraft*, the boat was not operating because of defective parts in it, and in *Bay Lines*, the fiberglass panels on the trailers were no longer sufficiently protecting the trailers. In the instant matter, the Chinese drywall has not been destroyed, nor has it ceased to functioned for its intended purpose; rather, it is contaminating the health and homes of the Plaintiffs. Further, the instant matter goes beyond the concerns in *Bay Lines* of "increased costs of doing business" and

-24-

"customer displeasure," to concerns with the destruction of Plaintiffs' homes and the deterioration of Plaintiffs' health.

Although the Mississippi Supreme Court has yet to adopt the ELR, based on the case law from federal courts sitting in Mississippi and lower Mississippi state courts, the ELR does not apply to the instant matter to bar Plaintiffs' tort claims under Mississippi law.  The two cases in which the U.S. District Court, Southern District of Mississippi applied the ELR to bar plaintiff's tort claims were *Lee v. General Motors Corp.*, 950 F.Supp.170 (S.D. Miss. 1996), which involved lower safety specifications for fiberglass roofs in a certain brand of vehicle, and *Progressive Insurance Co. v. Monaco Coach Corp.*, 2006 WL 839520 (S.D. Miss. Mar. 29, 2006), which involved a fire in a motor home as a result of a defective water heater.  Neither of these cases is factually similar to the instant matter.  In *Lee*, plaintiffs did not allege any damages as a result of the lowered safety specifications, just that such may pose a danger; in the instant matter actual damages to Plaintiffs' homes and health have been sustained and plead.  In *Progressive Insurance*, the water heater ceased to function as such when it exploded and destroyed the motor home; in the instant matter the Chinese drywall has not broken down or combusted, it remains as installed.  This reasoning also applies when considering *State Farm Mutual Automobile Insurance Co. v. Ford Motor Co.*, 736 So. 2d 384 (Miss. Ct. App. 1999), in which the Mississippi Court of Appeals applied the ELR to bar tort claims for the destruction of a car a result of a leaky oil seal.  The oil seal ceased to function as intended when it began to leak, and destroyed the car in which it was installed; in contrast, the Chinese drywall continues to function as drywall while the items and persons around it become contaminated.

Louisiana does not recognize the ELR, nor does it recognize a doctrine sufficiently similar to enable the Court to conduct an ELR analysis for Plaintiffs' tort claims under Louisiana

law.  In fact, the Manufacturer Defendants conceded at oral argument that Louisiana does not

recognize the ELR as adopted in other states, and that tort damages for economic losses may be

recoverable by Plaintiffs under laws unique to Louisiana.  Transcript of Oral Argument at 20-21,

*In re Chinese Manufactured Drywall Prods. Liab. Litig.* (No. 09-md-2047)(November 19, 2009).

Accordingly, if Defendants desire to challenge Plaintiffs' tort claims under Louisiana law, such a

challenge will need to be brought on the basis of the Louisiana Products Liability Act,

redhibition, or other provisions unique to Louisiana law.

      The U.S. District Court, Eastern District of Louisiana addressed the application of

Alabama, Mississippi, and Louisiana's ELRs in *In re FEMA Trailer Formaldehyde Prods. Liab.*

*Litig.*, 2008 U.S. Dist. LEXIS 103249 (E.D. La. Dec. 12, 2008).  Because the facts of the case at

first glance appear similar to the instant matter the Court finds it appropriate to address.  *In re*

*FEMA Trailer* involved tort claims for property damage and personal injuries caused by

formaldehyde in trailers in which plaintiffs lived temporarily, but were owned by the U.S.

government.  The court applied the ELR to bar all non-personal injury claims of the plaintiffs

based on the laws of Alabama and Mississippi.  *Id.* at 59-53.  The facts are distinguishable from

the instant matter on the basis that the plaintiffs in *In re FEMA Trailer* were not the owners of

the trailers and the trailers failed to serve their intended purpose as a suitable dwelling because

they were emitting formaldehyde, while in the instant matter, Plaintiffs are the owners of their

homes and the drywall is serving its intended purpose.  Additionally, *In re FEMA Trailer* and the

instant matter involve entirely different chemicals, each with different properties and effects.

With regard to plaintiffs' torts claims under Louisiana law, the court in *In re FEMA Trailer*

declined to apply the ELR on the basis that plaintiffs may have remedies under Louisiana's

redhibition laws for economic losses.  *Id.* at *61-62.  This supports this Court's own conclusion

above that the ELR does not apply under Louisiana law to bar Plaintiffs' tort claims.

The PSC urges the Court to apply the same reasoning used in cases involving tort claims for economic losses as a result of asbestos fire-proofing in buildings to hold that the ELR does not apply to the instant matter. The Court has considered these asbestos cases and agrees that these cases provide further support to the conclusion that the ELR, under the laws of Florida, Alabama, Mississippi, and Louisiana, does not bar Plaintiffs' tort claims for economic losses. Like the Chinese drywall in question, asbestos continues to serve its intended structural and fire retardant purpose. However, it, like the Chinese drywall, emits gasses or material which has the potential to cause damage. Courts generally across the country have carved out an exception to the ELR for tort claims for economic losses involving asbestos. For example, the U.S. Court of Appeals, Fourth Circuit, in *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir. 1987), allowed plaintiffs to maintain a cause of action based on negligence under South Carolina law against a manufacturer of asbestos fireproofing which had been installed in a city hall. The Fourth Circuit, following the South Carolina Supreme Court and three U.S. District Courts sitting in South Carolina, distinguished the matter from *East River* and other South Carolina ELR jurisprudence. It reasoned,

> In both *East River* and *Watermark*, the defective products injured only themselves. There was no claim of injury to threat of injury to persons or to other property. By contrast, the injury that resulted from the installation of [asbestos] in this case is the contamination of the Greenville City Hall with asbestos fibers, which endanger the lives and health of the building's occupants. In our opinion, this is not the type of risk that is normally allocated between the parties to a contract by agreement, unlike the risk of malfunctioning turbines at issue in *East River* or the risk of faulty roofing shingles involved in *Watermark*. *Id.* at 977-78.

Similarly, the U.S. Court of Appeals for the Eighth Circuit in *Tioga Public School District #15 v. United States Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993), addressed whether,

under North Dakota law, a school district could bring tort claims for economic losses against a

plaster manufacturer to recover the cost of removing asbestos-containing plaster used to coat

school ceilings.  The Eighth Circuit held that, although the North Dakota Supreme Court had

adopted the ELR, the doctrine did not apply to the matter.  It reasoned that "the presence of

asbestos in Audicote and the resulting danger have nothing to do with the level of performance

of the product.  In fact, the evidence suggests that the Audicote, although encapsulated, is still

functioning well as acoustical plaster." *Id.* at 918.  The Eighth Circuit also noted the injury at

issue was "not simply an injury to the Audicote or to the school buildings," but "rather the injury

is the contamination of the Tioga school buildings by asbestos and the consequent health risk to

the buildings' occupants.  *Id.*  Additionally, the court noted that its decision was supported by the

"overwhelming majority of courts deciding the issue under the law of other states." *Id.* at 919.

The majority of lower courts addressing whether the ELR bars tort claims for economic

losses in asbestos cases also have held that the doctrine does not apply.  For example, the

Wisconsin Supreme Court in *Northridge Co. v. W.R. Grace & Co.*, 162 Wis.2d 918, 471 N.W.2d

179 (Wis. 1991), held that property owners whose buildings had been contaminated with

asbestos stated a valid tort claim for economic losses.  The court reasoned,

> The plaintiffs do not appear to assert in their tort counts in the complaint that the
> Monokote itself was inferior in quality or did not work for its intended purpose, the
> essence of a claim for economic loss.  The plaintiffs are not dissatisfied with the quality
> of the Monokote as a fireproofing material.  The plaintiffs' loss did not arise from
> deteriorate or insufficient product value.  The plaintiffs are not claiming damages
> because of injury to the product itself.
> The essence of the plaintiffs' claim is that Monokote releases toxic substances in the
> environment thereby causing damage to the building and a health hazard to its occupants.
> The plaintiffs claim that their property has been physically altered by the defendants'
> product, whether or not such alteration is outwardly visible. *Id.* at 937.

Numerous other state and federal courts presented with an almost identical issue reached similar

conclusions. *See 80 S. Eighth St. L.P. v. Carey-Canada, Inc.*, 486 N.W.2d 393 (Minn. 1992)(holding that the ELR did not bar the owner of a building with asbestos-containing fireproofing from suing the manufacturer under tort for economic losses); *see also Bd. of Educ. of City of Chicago v. A, C, & S, Inc.*, 546 N.E.2d 580 (Ill. 1989)(holding school districts sufficiently alleged causes of action in tort against suppliers of asbestos-containing materials); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513 (Mich.Ct.App. 1992), appeal denied, 512 N.W.2d 318 (Mich. 1993)(holding the proper remedy for city school board and public schools in class action suit against asbestos manufacturers and sellers was in tort rather than contract or the UCC); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F.Supp. 126 (D.N.H. 1984)(holding school district's negligence and strict liability claims against a company which sold and installed asbestos products were properly actionable in tort under New Hampshire law); *City of Manchester v. Nat. Gypsum Co.*, 637 F.Supp.646 (D.R.I. 1986)(holding city sufficiently alleged physical harm to its property to state claims for negligence and strict liability against manufacturers and sellers of asbestos products).

The facts of the instant matter are analogous to the facts in these, and the many other asbestos cases. The Chinese drywall has been installed in numerous homes and in each instance is functioning as drywall. This is similar to the asbestos fire-proofing which was installed in numerous building and functions as fire-proofing. Additionally, the Chinese drywall is releasing contaminates, causing damage to the building and those occupying the buildings, just as the asbestos. Accordingly, there exist the same bases for allowing tort claims for economic losses in the instant matter, as there are in the in the asbestos cases.

The Homebuilders in the instant matter stand in a unique position as both defendants, on the basis that they installed Chinese drywall into homes and sold these homes to the Plaintiffs,

and plaintiffs, on the basis that they have repaired many of the Plaintiffs' homes in exchange for an assignment of Plaintiffs' property damage claims and that they are the owners of homes containing Chinese drywall which they have not sold. The Homebuilders are not movants in the instant matter, but have provided briefs in response directed to Florida law only. Accordingly, the Court will provide general guidance on how Florida's ELR applies to both tort claims by Plaintiffs against the Homebuilders and tort claims by the Homebuilders against the Manufacturer and Distributor Defendants.

In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004). The contractual privity ELR provides that parties in privity of contract are barred from bringing a tort action for economic damage, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id.* at 536-37. The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing the Chinese drywall. Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs. However, this issue is not presently before the Court and thus it declines to draw any further conclusions with regard to Plaintiffs' claims against Homebuilders.

In their capacity as plaintiffs by virtue of assignment of the homeowner's property damage claims, the Homebuilders stand in the shoes of the Plaintiffs and accordingly have whatever rights the Plaintiffs would have against the Manufacturer and Distributor Defendants. *See In re Masonite Corp. Siding Prods Liab. Litig.*, 21 F.Supp.2d 593, 597-603 (E.D. La. 1998).

-30-

Therefore, the above conclusion reached by the Court that the ELR does not bar Plaintiffs' tort claims for economic losses under Florida law would apply to Homebuilders insofar as they have obtained a legitimate assignment of Plaintiffs' property damage claims.

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that (1) Distributor Defendants' Motion to Dismiss or, Alternatively, to Strike Plaintiffs' Claims for Economic Damages (Rec. Doc. No. 295), and (2) Manufacturer Defendants' Joinder in Distributors' Rule 12(b)(6) Motion to Dismiss or, Alternatively, to Strike Plaintiffs' Tort Claims for Economic Damages (Rec. Doc. No. 304) are DENIED.

New Orleans, Louisiana, this 13th day of January, 2010.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

Exhibit 2



IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,

        CASE NO. 50 2009 CA 014458
        Civil Division "AA" Chinese Drywall

      Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

      Defendants.

_____/

### OMNIBUS ORDER ON PENDING MOTIONS TO DISMISS

The Court has under consideration the following omnibus motions: 1) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Tort Claims Under the Economic Loss Rule and Claims for Private Nuisance (joined by the Albanese-Popkin defendants); 2) Banner Supply Company's Omnibus Opening Brief On Economic Loss Rule and Nuisance (joined by certain installer defendants); 3) Homebuilder Defendants Omnibus Motion to Dismiss Plaintiff Homeowners' Strict Liability Claims. The omnibus motions now before the Court have been fully briefed, and were argued at scheduled case management conferences. Having reviewed the submissions of the parties, and having heard the argument of counsel, the Court makes the following findings.

### Economic Loss Rule

The first issue for consideration is the application of Florida's economic loss rule to the tort claims asserted by the homeowner plaintiffs. The Supreme Court discussed at length the origins and application of the economic loss rule in *Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).

1

The economic loss rule is a limitation on tort claims where the damages suffered are economic losses.   Economic losses are defined as damages for inadequate value, costs of repair and replacement of defective products, or loss of profits.  *Id*. at 536; *see also, Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla. 1993).  These damages are also described as the loss of the "benefit of the bargain" or "disappointed economic expectations." *Indemnity Insurance, id* at 536.

All of the parties here acknowledge that the economic loss rule would not bar a claim for personal injury caused by defective Chinese manufactured drywall.  Therefore, to the extent that the plaintiff homeowners are suing in tort for personal injury, the economic loss rule does not apply and such claims are not subject to dismissal.  The issue is whether- and to what extent - the economic loss rule bars the recovery of economic damages in the pending Chinese drywall cases.

The Supreme Court made clear in *Indemnity Insurance* that the economic loss rule applies in two distinct circumstances.  First, the rule applies to parties in contractual privity for matters arising out of the contract.  Second, the rule applies to liability for a defective product that causes damage to the product, but causes no personal injury or damage to other property.  Both applications of the rule must be examined here.

1.  Contractual Privity Economic Loss Rule

The defendant homebuilders assert that the plaintiff homeowners are barred from asserting tort claims for their economic losses based on the application of the contractual privity economic loss rule.  The Court agrees.

The Supreme Court in *Indemnity Insurance* explained the rational for application of the contractual privity economic loss rule as follows:

2

A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Indemnity Insurance, id* at 536-537.

The plaintiffs' tort claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court.

There are recognized exceptions to application of the contractual privity economic loss rule. Independent torts such as fraud in the inducement are not barred by the economic loss rule. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla. 1996). Claims for negligence in rendering professional services are not barred. *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999). Likewise, statutory claims are not barred by the economic loss rule. *Comptech Intern, Inc. v. Milan Commerce Park, Ltd.*, 753 So.2d 1219 (Fla. 1999).

None of the recognized exceptions apply here.[1] The damages sought by the plaintiff homeowners arise out of the contracts they entered with the defendant homebuilders. Traditional contract damages must be applied to the economic losses suffered by the plaintiffs.

---

[1] It is clear that homeowners are not exempt from the application of the economic loss rule on public policy grounds. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla. 1993) (refusing to exempt homeowners from the economic loss rule despite their status as "an appealing, sympathetic class"). Moreover, the Court will not create an exception to the contractual privity economic loss rule based on an assertion that the drywall is an unreasonably dangerous product.

3

2. Products Liability Economic Loss Rule

The products liability economic loss rule applies in limited circumstances notwithstanding the absence of privity.   The rule applies when the product causes damage to itself, but causes no personal injury or damage to other property.   The issue here is whether the plaintiff homeowners' tort claims against the defendant suppliers and installers – who are not in privity with the plaintiffs - are barred by the economic loss rule.   The Court holds that such claims are not barred.

It appears clear from the Supreme Court's discussion in *Indemnity Insurance* that application of the products liability economic loss rule is limited.   That is to say, the Supreme Court made clear that the products liability economic loss rule should not be extended beyond its intended purpose, and the rule must only be applied in those limited circumstance where all elements necessary for its application have been satisfied.

The Court has considered the well-reasoned discussion of the economic loss rule in Judge Fallon's order in *In Re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780 (N.D. Louisiana 2010).   Judge Fallon traces the origins and history of the rule in Florida (and elsewhere) and discusses the application of the economic loss rule to non-privity defendants in the multi-district Chinese drywall litigation.

It is not necessary to repeat here the analysis of Judge Fallon in considering the application of the economic loss rule to non-privity defendants.   However, the Court will briefly address Judge Fallon's conclusion – a conclusion which this Court adopts.

Judge Fallon essentially concludes that the Chinese drywall at issue here presents a unique factual scenario that does implicate the products liability economic loss rule at

4

all. The factual distinction lies in the nature of the alleged defect and its impact, or lack thereof, on the product itself.

In cases like *Casa Clara*, the defect in the product damaged the product itself. The defect in the concrete caused the concrete to fail and, presumably, to damage other components of the home. Here, the alleged defect does not damage or affect the product (Chinese manufactured drywall) at all.

In defining the application of the products liability economic loss rule, the Supreme Court has stated that the rule is implicated where "there is a defect in a product that *causes damage to the product*, but causes no personal injury or damage to other property." *Indemnity Insurance, id.* 536 [emphasis added]. Here the alleged defect causes *no damage to the product* and causes *only* personal injury or damage to other property. Under such unique circumstances, the Court agrees that the products liability economic loss rule does not apply.

<u>Private Nuisance</u>

The Court will next consider whether plaintiff can state a claim for private nuisance based on the allegation that the Chinese manufactured drywall is off-gassing causing a nuisance within the effected homes. All defendants assert that the claim for private nuisance under such circumstances cannot be asserted. The Court agrees with the defendants.

Florida law essentially defines nuisance as:

> using one's property as to injure the land or some incorporeal right of one's neighbor.... The law of nuisance plays between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor... The law of private nuisance is a law of degree; it

5

generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances.

*Beckman v. Marshall*, 85 So. 2d 552, 554-55 (Fla. 1956) (approving and adopting the language of *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio Ct. App., 1947).

Plaintiffs assert that there is no exhaustive definition of what constitutes a nuisance citing *Windward Marina, L.L.C. v. City of Destin*, 743 So. 2d 635 (Fla. 1st DCA 1999). While this may be true, Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another") (citing *Reaver v. Martin Theatres of Florida, Inc.*, 52 So. 2d 682 (Fla. 1951). It seems clear that the underlying policy of private nuisance jurisprudence does not support the plaintiffs' application of the doctrine of private nuisance in this case.

Plaintiffs rely heavily on the four-part test for proving the existence of a private nuisance purportedly established by the Court in *Beckman*. According to the plaintiffs, none of the four components makes any mention of a requirement that a private nuisance must involve two landowners. However, such a roadmap for establishing a private nuisance is neither expressed nor implied by the Court in *Beckman*.

In fact, much of the instructive language in *Beckman* seems to contradict the plaintiffs' position that nuisance actions do not necessarily involve contemporaneous and proximate private land owners. *Beckman, id* at 555 ("no one has absolute freedom in the

6

use of his property, because he must be restrained in his use by the existence of equal rights of his neighbor to the use of his property."). *Id.*

Further, none of the cases plaintiffs rely on directly support the contention that a nuisance may exist absent a defendant's exercise of its property rights. *See, e.g., Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595 (Fla. 1994) (holding that a defendant who illegally disposed of a highly toxic solvent by dumping it onto the grounds at the rear of its facility created a nuisance because it contaminated plaintiff's water supply); *Kotcher v. Santaniello*, 438 So. 2d 440, 441 (Fla. 1983) (declining to reverse an injunctive order which was "principally predicated upon a determination that the appellants' conduct in keeping and training dogs for attack and security purposes constituted a nuisance in the residential neighborhood where all of the parties resided").

The only case which arguably supports plaintiffs' position, *Putnam v. Roudebush*, 352 So. 2d 908 (Fla. 2d DCA 1977), held that a noisy air conditioner was a "continuing nuisance" that constituted a "permanent defect in the realty." However, private nuisance was not even a claim in the *Putnam* case. The Court's reference to the air conditioning being a nuisance was merely a descriptive reference, and not a statement of a legal claim.

Taken together, neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case. The Court concludes that plaintiffs' claims for private nuisance must be dismissed.

## Strict Liability

The defendant homebuilders have moved to dismiss the plaintiffs' strict liability claims. The homebuilders advance two grounds for dismissal. First, the homebuilder defendants assert that only manufacturers of the product and those in the chain of

7

distribution can be held strictly liable and they are neither.  Second, the defendant homebuilders assert that strict liability does not apply to improvements to real property. The Court will begin with the homebuilders' second argument.

The law in Florida appears to be well settled that strict liability does not apply to improvements to real property as improvements to real property are not considered products.  *Plaza v. Fisher Development, Inc.*, 971 So.2d 918 (Fla. 3rd DCA 2007); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559 ( Fla. 2d DCA 1983) *see Easterday v. Masiello*, 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).

Plaintiffs argue that an exception exists with respect to improvements to real property "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); *Craft v. Wet 'N Wild, Inc.*, 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).  Plaintiffs conceded at oral argument that this exception has never been applied in a reported Florida case.  Indeed, the exception appears to be *dicta* in the cases that mention it.

Whether the exception advanced by the plaintiffs exists or not, it does not appear that the exception would apply to the defendant homebuilders in this case.    The exception appears to apply to the manufacturer of an allegedly defective product which

happens to be incorporated into the real property.   The defendant homebuilders did not manufacture the drywall at issue.

The defendant homebuilders also argue that only manufacturers, and those in the distributive chain of a product, can be held strictly liable.  Defendant homebuilders assert that they are not manufacturers and they are not within the distribution chain of the drywall at issue.  While the plaintiffs argue otherwise, the Court finds that the defendant homeowners' position has merit.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the plaintiff homeowners' tort claims against the defendant homeowners seeking economic losses are dismissed based on the privity economic loss rule.  The request of the defendant suppliers and installers (who lack privity with the plaintiffs) to dismiss the plaintiffs' tort claims based on the products liability economic loss rule is denied.   The plaintiffs' claim for private nuisance against all defendants is dismissed.  Likewise, the plaintiffs' claims for strict liability against the homebuilder defendants are dismissed.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this 5 day of November, 2010.

JUDGE GLENN D. KELLEY
CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

Exhibit 3



Mar 23 2011
11:58AM

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARLENE BENNETT,                           CASE NO. 502009CA014458
                                           Civil Division "AA" Chinese Drywall
     Plaintiff,

vs.

CENTERLINE HOMES INC., et al.,

     Defendants.
_____/

## OMNIBUS ORDER ON PLAINTIFFS' NEGLIGENCE CLAIMS

The court has under consideration the homebuilder defendants' Omnibus Motion to Dismiss Plaintiff Homeowners' Negligence Claims.  The installer and supplier defendants have each filed amicus briefs in support of the homebuilders' motion. The issue now before the court has been fully briefed, and was argued at the case management conference held on February 25, 2011.  Having reviewed the submissions of the parties, and having heard the argument of counsel, the court makes the following findings.

The issue before the court is whether the plaintiffs can state a claim for negligence against any of the defendants (homebuilders, installers or suppliers). Each class of defendant argues that a claim sounding in negligence is not available to the plaintiffs as there was no duty to protect the plaintiffs from an unknown and unforeseeable harm.  All parties concede that the issue of whether a duty exists in a negligence action is a question of law.  *Michael & Phillip, Inc. v. Sierra*, 776 So.2d 294, 296 (Fla. 4th DCA 2000).

The court will first address whether there exists a general duty to inspect or test the Chinese manufactured drywall for a latent defect, or to warn homeowners of the existence of a latent defect in the drywall.  It appears clear that such a duty does not exist here.

1

Florida law does not impose a duty to inspect a product for a latent defect, or to warn others about a latent defect, unless the product is inherently dangerous. *See Mendez v Honda Motor Co.*, 738 F.Supp. 481 (S.D. Fla. 1990); *K-Mart Corp. v. Chairs, Inc.*, 506 So.2d 7, 8 n. 3 (Fla. 5th DCA 1987) (retailers have no duty to inspect for latent defects.), *review denied*, 513 So.2d 1060 (Fla.1987); *Dayton Tire and Rubber Co. v. Davis*, 348 So.2d 575, 582 (Fla. 1st DCA 1977) (No duty to warn or inspect unless inherently dangerous.), *quashed on other grounds*, 358 So.2d 1339 (Fla.1978); *Odum v. Gulf Tire and Supply Company*, 196 F.Supp. 35 (N.D.Fla.1961).   A product is inherently dangerous if it is "burdened with a latent danger which derives from the very nature of the article itself." *Tampa Drug Co. v. Wait*, 103 So.2d 603, 608 (Fla.1958).   Chinese manufactured drywall, while apparently defective, cannot be categorized as inherently dangerous.

To the extent the plaintiffs seek to state a claim sounding in negligence based on a general duty to inspect, test or warn, such a claim is not available.  However, this does not end the inquiry. The defendants, in any class, could be held liable in negligence if they had actual or implied notice of the defect in the Chinese manufactured drywall.  *Carter v. Hector Supply Co.*, 128 So.2d 390, 392 (Fla. 1961); *Ryan v. Atlantic Fertilizer & Chemical Co.*, 515 So.2d 324, 326 (Fla. 3rd DCA 1987).

Notice must be determined on an individual, case by case, basis.   The court cannot, therefore, hold that all negligence claims are barred on an omnibus basis.   To the extent the plaintiffs can, in good faith, plead notice against an individual defendant in a specific case, such a claim will survive a motion to dismiss.

2

The court is cognizant of the fact that as to certain defendants, the plaintiffs have not pled notice.  If not amended, these claims will be dismissed.[1]  To the extent the plaintiffs have alleged notice in individual cases, negligence claims in these cases will survive dismissal at this stage.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the defendants' omnibus motion to dismiss the plaintiffs' negligence claims is granted, in part, and denied, in part.  Any claim based on a general duty to test or inspect for, or to warn of, a latent defect in Chinese manufactured drywall will be dismissed.  Claims based on actual or implied notice of the defect will not be dismissed.  This order is being entered on an omnibus basis and will be applied to individual cases as required.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida this _18_ day of March, 2011

                                                                        JUDGE GLENN D. KELLEY
                                                                        CIRCUIT COURT JUDGE

Copies furnished to:

Plaintiffs' Liaison Counsel, C. David Durkee, Esq., 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134; Defendants' Liaison Counsel, Todd R. Ehrenreich, Esq. and Michael A. Sexton, Esq., 2601 S. Bayshore Drive, Suite 850, Miami, FL 33133; and for distribution to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with the Electronic Service Order entered in this case.

---

[1] In such cases, the Plaintiffs will need to determine whether there is a good faith basis to allege notice.

3

Exhibit 4

IN THE CIRCUIT COURT OF THE 19TH
JUDICIAL CIRCUIT IN AND FOR
ST. LUCIE COUNTY, FLORIDA.

CASE NO. 562010CA001463

SURESH and OMA BISSOON,

        Plaintiffs,

v.

CENTERLINE HOMES CONSTRUCTION, INC.,
a Florida corporation; CENTERLINE PORT ST.
LUCIE LTD., a Florida Limited Partnership;
OCEAN COAST DRYWALL, INC., a Florida
Corporation; and BANNER SUPPLY COMPANY
PORT SAINT LUCIE, LLC, a Florida Limited
Liability Company,.

        Defendants,

ORDER ON DEFENDANTS', CENTERLINE PORT ST. LUCIE, LTD.,
AND CENTERLINE HOMES CONSTRUCTION, INC.'s
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

THIS CAUSE, having come before the Court upon Defendants', Centerline Port St. Lucie

Ltd and Centerline Homes Construction, Inc.'s, Motion to Dismiss Plaintiffs' Second Amended

Complaint, and the Court having heard argument of counsel and being otherwise advised in

the premises, it is hereupon,

ORDERED and ADJUDGED that said motion be and the same is hereby granted in that

although Plaintiff's strict liability claims do allege defective product distribution, permanent



Improvements to real property are not products for purposes of products strict liability actions. These claims are dismissed.

Likewise the motion is granted because Plaintiff's private insurance claims do not state a cause of action against these defendants. These claims are also dismissed.

The motion is otherwise denied.

These defendants are permitted twenty (20) days to answer the Complaint.

DONE AND ORDERED in Chambers at Fort Pierce, Saint Lucie County, Florida this 27th day of March, 2011.

DWIGHT L. GEIGER, Circuit Judge

Copies furnished:
Vanessa M. Serrano, Esquire
C. David Durkee, Esquire

Exhibit 5



IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

IN RE: CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;          CASE NO.:  10-28090 (12)
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATON,
INC., and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and as
representatives of others similarly situated,
                             Plaintiffs,

vs.

BANNER SUPPLY CO., et al.,               HON. PETER M. WEINSTEIN
                      Defendants.
_____/

ORDER ON DEFENDANT BANNER SUPPLY COMPANY
PORT ST. LUCIE, LLC'S MOTION TO DISMISS FIRST AMENDED
CLASS ACTION COMPLAINT

THIS CAUSE came before the Court on Defendant Banner Supply Company Port St.

Lucie, LLC's Motion to Dismiss First Amended Class Action Complaint.  The Court having

considered same, having heard argument of counsel and being otherwise fully advised in

premises, finds and decides as follows:

Plaintiffs filed the instant first amended class action complaint asserting claims for

product liability; negligence; violations of the Florida Deceptive and Unfair Trade Practices Act

(hereinafter FDUTPA); Private Nuisance; and equitable and injunctive relief.  Defendant Banner

Supply Company Port St. Luce LLC (hereinafter Banner PSL) is now moving to dismiss the first

amended complaint arguing that it fails to comply with the requirements of Rule 1.220, Fla. R.

Civ. P., fails to properly allege a cause of action for private nuisance, for violations of FDUTPA

and for equitable and injunctive relief and for failure to comply with Rule 1.130, Fla. R. Civ. P.

in that plaintiffs have failed to attach documents necessary for Banner PSL to properly respond to the complaint.

Turning first to plaintiffs' claim for private nuisance, Banner PSL argues that plaintiffs cannot state a cause of action for private nuisance as a matter of law. In the motion to dismiss, Banner PSL cites to a recent Omnibus Order on Pending Motion to Dismiss in the matter styled <u>Marlene Bennett v. Centerline Homes, et. al.</u>, Case No. 50 2009 CA 014458, entered on November 5, 2010 by the Hon. Glenn Kelly of the Fifteenth Circuit Court. In that case, Judge Kelley in a well reasoned order sets forth the well established law in Florida regarding private nuisances and states that "Florida law recognizes that the doctrine of private nuisance is essentially a mechanism which protects the property rights of one land owner from the unrestrained exercise of the property rights of another. *Id.* at 6 citing *Jones v. Trawick*, 75 So.2d 785, 785 (Fla. 1954). "Florida law essentially define nuisance as using one's property as to injure the land or some incorporeal rights of one's neighbor. *Id.*, citing *Beckman v. Marshall*, 85 So.2d 552, 554 (Fla. 1956). Plaintiff argues that there is an inherent weakness in Judge Kelley's ruling that the nuisance must come from outside the plaintiffs' land, that is the defective drywall did come from outside of plaintiffs' land and was delivered by Banner to the home. Plaintiffs argue that Banner PSL should have used its own property, the defective drywall, in a manner not to injure the plaintiffs. This Court finds that it is plaintiffs' argument that has the inherent weakness based on this Court's interpretation of Florida law as it deals with private nuisance. This Court finds Judge Kelley's ruling to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for

Case No.: 10-28090(12)

private nuisance in this case.[1]   Therefore, Banner PSL' motion to dismiss plaintiffs' claim for

private nuisance will be granted.

Banner PSL's motion to dismiss is denied in all other respects.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Banner Supply Company Port St. Lucie,

LLC's Motion to Dismiss First Amended Class Action Complaint is GRANTED in Part as to

Count IV for .Private Nuisance.   Count IV for Private Nuisance is hereby Dismissed with

Prejudice.

DONE AND ORDERED in Chambers, Fort Lauderdale, Florida, this 4th           day of

February, 2011.

PETER M. WEINSTEIN
CIRCUIT COURT JUDGE

PETER M. WEINSTEIN
FEB 0 4 2011
TRUE COPY

Michael J. Ryan, Esq., Plaintiff's Liaison Counsel & Matthew Kotzen, Esq., Defendant's Liaison
Counsel for distribution electronically through Lexis Nexis File & Serve

---

[1] Plaintiffs, in support of their opposition to the motion to dismiss argue that Judge Farina of the Eleventh Circuit, in
the case of Seifert v. Banner Supply, Case No. 09-3887 CA 01(42), permitted the "Nuisance" count to go to the jury
after a trial of the matter.  However, plaintiffs do not indicate whether, in fact, a motion to dismiss the "Nuisance"
count ever presented to, or ruled on by Judge Farina.  Therefore, plaintiff's reliance on that case is misplaced.

3