**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

LAURA HAYA, DANIEL HAYA AND IRENE          CASE NO.: 11-1077
HAYA, individually, behalf of all others,          SECT. L MAG. 2
similarly situated, et al.,

        Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A
SHANDONG TAIHE DONGXIN CO., LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; QINHUANGDAO TAISHAN
MATERIALS CO., LTD. A/K/A QINHUANG
DAO TAISHAN BUILDING MATERIALS CO.,
LTD., et al.,

        Defendants.

_____/

## <u>DEFENDANT WOODLAND ENTERPRISES, INC.'S,<br>CROSS CLAIM AND THIRD PARTY COMPLAINT</u>

    COMES NOW Defendant/Cross-Claimant and Third-Party-Plaintiff, Woodland

Enterprises, Inc., ("**Woodland**"), by and through its undersigned counsel, and alleges for its

Cross-Claim[1] against Defendants/Cross-Defendants Taishan Gypsum Co., Ltd., f/k/a Shandong

Taihe Dongxin Co., Ltd. ("**TG**"), Taian Taishan Plasterboard Co., Ltd. ("**TTP**"), and

Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building

Materials Co., Ltd. ("**QTBM**") (collectively, the "**Taishan Cross-Claim Defendants**"), Banner

---

[1]    Plaintiffs commenced this action on May 10, 2011 by filing Plaintiffs' Amended Omnibus Class Action Complaint (Omni IX) in this cause. Plaintiffs twice amended the Complaint. Thus, the operative Complaint is the Second Amended Complaint (referred to herein as the "Complaint"). In response, Woodland moved to dismiss the claims against it in the Complaint. These Cross-Claims are therefore being brought to the extent all claims against Woodland are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Woodland are not dismissed with prejudice, Woodland also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

{22818396;2}

Supply Co. ("**Banner Supply Co.**") and Banner Supply Company Port St. Lucie, LLC ("**Banner St. Lucie**"), and alleges for its Third-Party Complaint against Triple "E" Corporation ("**Triple E**"), as follows:

**CROSS-CLAIMS AGAINST THE TAISHAN CROSS-CLAIM DEFENDANTS, BANNER SUPPLY CO. AND BANNER ST. LUCIE**

**The Parties, Jurisdiction and Venue**

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Woodland.

3.      Woodland was and is a Florida corporation doing business in Palm Beach County, Florida, where this cause of action arose.  At all material times, Woodland was a builder of residential homes in Palm Beach County.

4.      Woodland has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Woodland denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      The Taishan Cross-Claim Defendants, Banner Supply Co. and Banner St. Lucie (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above styled action.  Woodland adopts and incorporates, as if fully set forth herein, paragraphs 9-13 of the Complaint and Exhibit B ¶¶ 23 and 26 identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

{22818396;2}

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendants.

### General Allegations

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.[2]

10.      Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "**Other Property**").

11.      Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.      Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.      In connection with the construction of certain homes in Palm Beach County, Triple E "**Triple E**"), a drywall installer, installed drywall in the Homes. Upon information and belief, Triple E procured drywall that was installed in the Homes from Banner Supply Co. and/or Banner St. Lucie (together, "**Banner**").

---

[2]      The named class Plaintiffs and other members of the putative class have asserted claims against Woodland in this Action, as well as other actions in the state and federal courts.  The damages sought by Woodland in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{22818396;2}

14.     At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner knew that Woodland was a foreseeable user of the drywall and that Woodland required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.,* safe and fit for use in the construction of residential homes.

15.     Upon information and belief, Banner procured drywall that was installed in the Homes from the Taishan Cross-Claim Defendants, who were manufacturing drywall to be exported to the United States. At all material times, the Taishan Cross-Claim Defendants knew that such drywall was going to be used in the construction of residential homes.

16.     Upon information and belief, in mid-to-late Fall of 2006, Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by one of its Chinese manufacturers emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

17.     Upon information and belief, Banner conducted tests of the drywall installed in certain South Florida residential homes.

18.     Upon information and belief, Banner did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

19.     Upon information and belief, in a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Banner entered into a confidential settlement agreement with one of its Chinese manufacturers in January of 2007 (the "**Secret Agreement**").

20.     The Secret Agreement stipulated that the Chinese manufacturer would take back all of Banner's unsold drywall, pay for storing it, and replace Banner's inventory of Chinese

{22818396;2}

drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

21.     The Secret Agreement purposefully kept consumers, such as Woodland and other builders, contractors and installers, in the dark about the problems with the drywall.  As such, Woodland did not know and was not made aware of the problems with the drywall.

22.     The drywall manufactured, exported, imported, distributed and/or sold by the Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

23.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Woodland, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

24.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Woodland to know, of the drywall's applications, performance, and dangers.

25.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous

and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, importing, distributing, and/or selling the defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages to Plaintiffs.

26.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product purchased by Woodland through its installer for installation in the Homes.

27.     Moreover, Woodland did not know and was never informed by any of the Cross-Claim Defendants or any other entity that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.

28.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Woodland in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

29.     Additionally, the Cross-Claim Defendants' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

30.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

### COUNT 1 – COMMON LAW INDEMNITY
### (Against Taishan Gypsum Co., Ltd.)

31.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30

{22818396;2}

6

above as if fully set forth herein.

32.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

33.     Upon information and belief, TG, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

34.     Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

35.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

36.     Any injuries suffered by Plaintiffs were due to the acts or omissions of TG.

37.     A special relationship existed between TG and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TG.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, TG is wholly to blame for Plaintiffs' injuries.

38.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TG to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

{22818396;2}

39.     If Woodland is found to be liable to Plaintiffs, TG is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Taishan Gypsum Co., Ltd. for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Taishan Gypsum Co., Ltd.)**

40.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

41.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

42.     Upon information and belief, TG, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall installed in the Homes.

43.     Plaintiffs, in the Complaint, allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

44.     Without admitting any liability or damages to Plaintiffs, should Woodland be

{22818396;2}

8

found liable, TG would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

45.     Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

46.     To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against TG for its pro rata share of the liability.

47.     TG should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Taishan Gypsum Co., Ltd. for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
**(Against Taishan Gypsum Co., Ltd.)**

48.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

49.     This is an action, stated in the alternative, for equitable subrogation.

50.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

51.     Upon information and belief, TG, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed

{22818396;2}

9

into the stream of commerce, and/or sold drywall that was installed in the Homes.

52.     Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

53.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

54.     To the extent that Woodland is required to pay damages for any fault of TG to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from TG under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

55.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Taishan Gypsum Co., Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – NEGLIGENCE
**(Against Taishan Gypsum Co., Ltd.)**

56.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

{22818396;2}

57.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

58.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

59.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TG.

60.    TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TG owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

61.    Without admitting any liability or damages to Plaintiffs, to the extent

{22818396;2}

11

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

62.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

63.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

64.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably

{22818396;2}

12

should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages.  If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

65.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by TG's breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. TG's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – NEGLIGENT FAILURE TO WARN
**(Against Taishan Gypsum Co., Ltd.)**

66.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

{22818396;2}

67.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

68.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

69.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

70.     TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TG owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold TG or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

71.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

{22818396;2}

14

72.     To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, TG failed to provide an adequate warning of such danger.

73.     Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

74.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which TG knew or reasonably should have known.

75.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

76.     To the extent Plaintiffs are successful in proving that drywall was defective,

{22818396;2}

15

unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TG would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

77.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by TG's breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   TG's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – BREACH OF POST-SALE DUTY TO WARN
**(Against Taishan Gypsum Co., Ltd.)**

78.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

79.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{22818396;2}

16

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

80.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

81.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

82.     To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TG's control and/or was sold to Woodland, TG knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

83.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as alleged in the Complaint, TG, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   TG breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

{22818396;2}

84. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

85. Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by TG and could reasonably be assumed to be unaware of the risk of harm.

86. A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

87. At all material times, TG stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of TG's drywall product in residential construction.

88. To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller TG's position would have provided a post-sale warning.

89. Without admitting any liability or damages to Plaintiffs, Woodland was damaged by TG's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as

{22818396;2}

reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. TG's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – STRICT PRODUCTS LIABILITY
### (Against Taishan Gypsum Co., Ltd.)

90.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

91.     Upon information and belief, at all material times, TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

92.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

93.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

94.     TG expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

{22818396;2}

95.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

96.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TG directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  TG's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8– STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Taishan Gypsum Co., Ltd.)

97.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

98.     Upon information and belief, at all material times. TG was in the business of

{22818396;2}

20

manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

99.    TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

100.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

101.    TG expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

102.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

103.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TG was required to provide a warning. However, TG failed to provide an adequate warning of such danger.

104.    Woodland did not know, had no reason to believe, and was never informed

{22818396;2}

that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

105. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TG failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

106. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. TG's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{22818396;2}

<u>COUNT 9 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR</u>
<u>TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.</u>
(Against Taishan Gypsum Co., Ltd.)

107.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

108.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

109.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

110.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

111.   At all material times, TG engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

112.   Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

113.   At the time TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, TG represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

114.   Plaintiffs in the Complaint allege various claims against Woodland for damages

{22818396;2}

23

grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

115.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, TG knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

116.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from TG's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

117.   To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or

{22818396;2}

its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 29 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

118.    To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

119.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially

injurious to consumers, such as Woodland.

120.    To the extent Plaintiffs are successful in proving their claims, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TG's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  TG's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 10 – UNJUST ENRICHMENT
### (Against Taishan Gypsum Co., Ltd.)

121.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

122.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

123.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

124.    TG received money from Woodland as payment for the defective drywall

{22818396;2}

26

installed in the Home.

125.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to TG, which had knowledge thereof.

126.    TG voluntarily accepted and retained the benefit conferred upon it by Woodland.

127.    To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

128.    The circumstances described herein under which TG profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for TG to retain those funds and profits.

129.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taishan Gypsum Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{22818396;2}

<u>COUNT 11 – COMMON LAW INDEMNITY</u>
**(Against Taian Taishan Plasterboard Co., Ltd.)**

130.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

131.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

132.    Upon information and belief, TTP, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

133.    Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

134.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

135.    Any injuries suffered by Plaintiffs were due to the acts or omissions of TTP.

136.    A special relationship existed between TTP and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TTP.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, TTP is wholly to blame for Plaintiffs' injuries.

137.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TTP to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute,

{22818396;2}

28

place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

138. If Woodland is found to be liable to Plaintiffs, TTP is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Taian Taishan Plasterboard Co., Ltd. for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 12 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taian Taishan Plasterboard Co., Ltd)

139. Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

140. This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

141. Upon information and belief, TTP, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

142. Plaintiffs in the Complaint allege various claims against Woodland for damages

{22818396;2}

caused by defects in the drywall contained in the Homes.

143.   Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, TTP would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

144.   Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

145.   To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against TTP for its/their pro rata share of the liability.

146.   TTP should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Taian Taishan Plasterboard Co., Ltd for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 13 – EQUITABLE SUBROGATION
**(Against Taian Taishan Plasterboard Co., Ltd.)**

147.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

148.   This is an action, stated in the alternative, for equitable subrogation.

{22818396;2}

149.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

150.     Upon information and belief, TTP, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall installed in the Homes.

151.     Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

152.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

153.     To the extent that Woodland is required to pay damages for any fault of TTP to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from TTP under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

154.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Taian Taishan Plasterboard Co., Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together

{22818396;2}

31

with any such other relief as this Court deems just and proper.

<u>**COUNT 14 – NEGLIGENCE**</u>
**(Against Taian Taishan Plasterboard Co., Ltd.)**

155.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

156.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

157.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

158.    Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TTP.

159.    TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate

{22818396;2}

testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

160.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

161.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

162.   To the extent Plaintiffs are successful in proving that drywall was defective,

{22818396;2}

33

unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

163.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages.  If TTP had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

164.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by TTP's breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  TTP's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

{22818396;2}

34

Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 15 – NEGLIGENT FAILURE TO WARN**
**(Against Taian Taishan Plasterboard Co., Ltd.)**

165.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

166.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

167.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

168.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

169.   TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

{22818396;2}

170.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

171.    To the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that unless it warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, TTP failed to provide an adequate warning of such danger.

172.    Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

173.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any

{22818396;2}

36

problems or dangers in using the drywall for residential construction, about which TTP knew or reasonably should have known.

174.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in TTP's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

175.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If TTP had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TTP would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

176.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by TTP's breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. TTP's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

{22818396;2}

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taian Taishan Plasterboard Co., Ltd.)

177.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

178.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

179.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

180.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

181.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TTP's control and/or was sold to Woodland, TTP knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

{22818396;2}

182.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   TTP breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

183.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

184.   Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by TTP and could reasonably be assumed to be unaware of the risk of harm.

185.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

186.   At all material times, TTP stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of TTP's drywall product in residential construction.

{22818396;2}

39

187.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in TTP's position would have provided a post-sale warning.

188.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by TTP's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. TTP's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 17 – STRICT PRODUCTS LIABILITY
### (Against Taian Taishan Plasterboard Co., Ltd.)

189.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

190.   Upon information and belief, at all material times, TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

{22818396;2}

191.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

192.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

193.   TTP expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

194.   Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

195.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable

{22818396;2}

costs and attorneys' fees incurred by Woodland in defending against these claims. TTP's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 18 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
**(Against Taian Taishan Plasterboard Co., Ltd.)**

196.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

197.    Upon information and belief, at all material times, TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

198.    TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

199.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

200.    TTP expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

{22818396;2}

42

201.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

202.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TTP was required to provide a warning. However, TTP failed to provide an adequate warning of such danger.

203.    Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

204.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TTP failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

205.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to

{22818396;2}

substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  TTP's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 19 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Taian Taishan Plasterboard Co., Ltd.)

206. Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

207. This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

208. The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

209. At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

210. At all material times, TTP engaged in trade or commerce by selling, advertising,

soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

211.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

212.   At the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, TTP represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

213.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

214.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, TTP knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

215.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{22818396;2}

45

the Complaint, Plaintiffs' claims arise from TTP's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

216.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall, was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 29 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

217.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit

{22818396;2}

for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

218.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

219.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TTP's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  TTP's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost

profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 20 – UNJUST ENRICHMENT
### (Against Taian Taishan Plasterboard Co., Ltd.)

220.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

221.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

222.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

223.    TTP received money from Woodland as payment for the defective drywall installed in the Home.

224.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to TTP, which had knowledge thereof.

225.    TTP voluntarily accepted and retained the benefit conferred upon it by Woodland.

226.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to

{22818396;2}

any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

227.   The circumstances described herein under which TTP profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for TTP to retain those funds and profits.

228.   Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Taian Taishan Plasterboard Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 21 – COMMON LAW INDEMNITY
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

229.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

230.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

231.   Upon information and belief, QTBM, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

232.   Woodland is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged,

{22818396;2}

49

advertised, distributed,  placed into the stream of commerce, and/or sold by QTBM.

233.   Woodland is entirely without fault for the injuries alleged by Plaintiffs.

234.   Any injuries suffered by Plaintiffs were due to the acts or omissions of QTBM.

235.   A special relationship existed between QTBM and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to QTBM.  To the extent that Plaintiffs are successful in proving their claims, the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM was defective and wholly to blame for Plaintiffs' injuries.

236.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of QTBM to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

237.   If Woodland is found to be liable to Plaintiffs, QTBM is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs. QTBM's wrongful conduct also caused

{22818396;2}

damages to Woodland, including, but not limited to, Woodland's loss of reputation, goodwill, and lost profits.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Qinhuangdao Taishan Building Materials Co., Ltd. for damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

<u>**COUNT 22 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31**</u>
**(Against Qinhuangdao Taishan Building Materials Co., Ltd.)**

238.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

239.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

240.   Upon information and belief, QTBM, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

241.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

242.   Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, QTBM would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

243.   Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

244.   To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against QTBM for its/their pro rata share of the liability.

{22818396;2}

245.   QTBM should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Qinhuangdao Taishan Building Materials Co., Ltd. for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 23 – EQUITABLE SUBROGATION
**(Against Qinhuangdao Taishan Building Materials Co., Ltd.)**

246.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

247.   This is an action, stated in the alternative, for equitable subrogation.

248.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

249.   Upon information and belief, QTBM, among other things, manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

250.   Woodland is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

{22818396;2}

251.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

252.    To the extent that Woodland is required to pay damages for any fault of QTBM to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from QTBM under equitable principles for any damages which are attributable to it/them related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

253.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 24 – NEGLIGENCE
**(Against Qinhuangdao Taishan Building Materials Co., Ltd.)**

254.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

255.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

256.    Upon information and belief, QTBM manufactured, mined, designed, produced,

{22818396;2}

made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

257. Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by QTBM.

258. QTBM had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property. As such, QTBM owed Woodland a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Woodland's customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to ensure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

259. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

260. Without admitting any liability or damages to Plaintiffs, to the extent

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM breached the duty of care owed to Woodland by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or ensuring that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

261.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in QTBM's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

262.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or reasonably should have known that its/their acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall would expose Woodland to substantial liability and damages. If QTBM had exercised that

{22818396;2}

degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it/they would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall.

263.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by QTBM's breaches of the duty of care owed to Woodland, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  QTBM's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 25 – NEGLIGENT FAILURE TO WARN
**(Against Qinhuangdao Taishan Building Materials Co., Ltd.)**

264.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

265.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the

{22818396;2}

56

Other Property in the Homes.

266.     Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold  drywall that was installed in the Homes.

267.     Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

268.     QTBM had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, QTBM owed Woodland a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM or disclose any adverse affects associated with the drywall; (ii) warn foreseeable consumers such as Woodland about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Woodland about any problems or dangers in using the drywall for residential construction.

269.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

270.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that unless it

{22818396;2}

57

warned Woodland of the risk of using the drywall, Woodland would suffer harm. However, QTBM failed to provide an adequate warning of such danger.

271.   Woodland did not know, had no reason to believe, and was never informed the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

272.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM breached the duty of care owed to Woodland by (i) failing to disclose any defects in the drywall materials which it/they knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers and/or users such as Woodland about any problems or dangers in using the drywall for residential construction, about which QTBM knew or reasonably should have known.

273.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in QTBM's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

274.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{22818396;2}

the Complaint, QTBM knew or reasonably should have known that its/their acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If QTBM had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, QTBM would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

275.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by QTBM's breaches of the duty of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. QTBM's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 26 – BREACH OF POST-SALE DUTY TO WARN
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

276.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

277.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{22818396;2}

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

278.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

279.   Woodland was a foreseeable user of the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

280.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left QTBM's control and/or was sold to Woodland, QTBM knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

281.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   QTBM breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such

{22818396;2}

risks.

282.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

283.    Consumers, such as Woodland, to whom a warning might have been provided, could have been identified by QTBM and could reasonably be assumed to be unaware of the risk of harm.

284.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

285.    At all material times, QTBM stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of QTBM's drywall product in residential construction.

286.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable manufacturer, producer and/or seller in QTBM's position would have provided a post-sale warning.

287.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by QTBM's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for

{22818396;2}

61

the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. QTBM's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 27 – STRICT PRODUCTS LIABILITY
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

288.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

289.    Upon information and belief, at all material times. QTBM was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

290.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

291.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM, QTBM intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

292.    QTBM expected the drywall to reach Woodland and/or the Homes without

{22818396;2}

substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

293.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

294.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   QTBM's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 28 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
(Against Qinhuangdao Taishan Building Materials Co., Ltd.)

295.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30

{22818396;2}

above as if fully set forth herein.

296.    Upon information and belief, at all material times. QTBM was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling drywall of the type contained in the Homes.

297.    QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

298.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM, QTBM intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

299.    QTBM expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

300.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

301.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which QTBM was required to provide a warning.

{22818396;2}

However, QTBM failed to provide an adequate warning of such danger.

302.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

303.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because QTBM failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

304.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.   QTBM's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

{22818396;2}

Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 29 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ. (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

305.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

306.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

307.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

308.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

309.    At all material times, QTBM engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Woodland.

310.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold drywall that was installed in the Homes.

311.    At the time QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall, QTBM represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential

{22818396;2}

66

homes.

312.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

313.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, QTBM knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

314.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from QTBM's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or failing to disclose the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

315.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's unfair and deceptive conduct in manufacturing,

{22818396;2}

67

mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 29 herein constitutes unfair methods of competition unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

316.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective drywall, and/or its/their failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.  A reasonable consumer would also presume that the manufacturer of such drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which drywall is used.

317.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

{22818396;2}

68

advertising, distributing, placing into the stream of commerce and/or selling defective drywall and/or its/their failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

318.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. QTBM's violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  QTBM's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

WHEREFORE, Woodland demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 30 – UNJUST ENRICHMENT
### (Against Qinhuangdao Taishan Building Materials Co., Ltd.)

319.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

{22818396;2}

320.     Plaintiffs, in the Complaint, allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

321.     Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold drywall that was installed in the Homes.

322.     QTBM received money from Woodland as payment for the defective drywall installed in the Home.

323.     In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Home, Woodland conferred a benefit, *i.e.*, funds and profit, to QTBM, which had knowledge thereof.

324.     QTBM voluntarily accepted and retained the benefit conferred upon it by Woodland.

325.     To the extent Plaintiffs are successful in proving drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's acts and omissions in distributing, placing into the stream of commerce and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims.

326.     The circumstances described herein under which QTBM profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

{22818396;2}

advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for QTBM to retain those funds and profits.

327.   Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 31 – COMMON LAW INDEMNITY
**(Against Banner Supply Co.)**

328.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

329.   Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

330.   Woodland is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Supply Co. Woodland justifiably relied on Banner Supply Co. to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

331.   Woodland is entirely without fault for the injuries alleged by Plaintiffs.

332.   Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Supply Co.

333.   A special relationship existed between Banner Supply Co. and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Supply Co. Woodland purchased drywall from Banner Supply Co. to be installed in the Homes.  Moreover, to the extent that

{22818396;2}

Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Supply Co. was defective and wholly to blame for Plaintiffs' injuries.

334.   As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Supply Co. to distribute, supply and/or sell drywall fit for its intended purpose.

335.   If Woodland is found to be liable to Plaintiffs, Banner Supply Co. is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Banner Supply Co., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 32 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Banner Supply Co.)**

336.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

337.   This is an action, stated in the alternative, against Banner Supply Co. for contribution pursuant to Section 768.31, Florida Statutes.

338.   In the Complaint, Plaintiffs allege various claims against Woodland for damages

{22818396;2}

caused by defects in the drywall contained in the Homes.

339.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Banner Supply Co. would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

340.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

341.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Banner Supply Co. for its pro rata share of the liability.

342.    Banner Supply Co. should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Banner Supply Co. for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 33– EQUITABLE SUBROGATION
**(Against Banner Supply Co.)**

343.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

344.    This is an action, stated in the alternative, against Banner Supply Co. for equitable

{22818396;2}

subrogation.

345.    In the Complaint, Plaintiffs allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

346.    Woodland is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Supply Co.   Woodland justifiably relied on Banner Supply Co. to distribute, sell and/or supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

347.    Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

348.    To the extent that Woodland is required to pay damages for any fault of Banner Supply Co. to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Banner Supply Co. under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

349.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Banner Supply Co. for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

{22818396;2}

### COUNT 34 – NEGLIGENCE
### (Against Banner Supply Co.)

350.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

351.     In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

352.     Banner Supply Co. distributed, supplied and/or sold to Woodland the gypsum drywall that was installed in the Homes.

353.     As such, Banner Supply Co. owed Woodland a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

354.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

355.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{22818396;2}

75

the Complaint, Banner Supply Co. breached its duty of care to Woodland by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner Supply Co. sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Woodland with drywall that complied with all applicable building and industry standards.

356.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Supply Co.'s duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

357.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Woodland to substantial liability and damages. If Banner Supply Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

{22818396;2}

358.     Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner Supply Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other actions brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Cross-Claim Defendant, Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 35 – NEGLIGENT FAILURE TO WARN
### (Against Banner Supply Co.)

359.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

360.     In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

361.     Banner Supply Co. distributed, supplied and/or sold to Woodland the gypsum drywall that was installed in the Homes.

362.     As such, Banner Supply Co. owed Woodland a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold

{22818396;2}

and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Woodland about any dangers inherent in the drywall, and/or (iii) warn Woodland about any problems or dangers in using the drywall for residential construction.

363.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

364.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that unless it warned Woodland of the risk of using the drywall it distributed, sold, and/or supplied, Woodland would suffer harm. However, Banner Supply Co. failed to provide an adequate warning of such danger.

365.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

366.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. breached its duty of care to

{22818396;2}

Woodland by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Woodland about any dangers inherent in the drywall, and/or (iii) failing to warn Woodland about any problems or dangers in using the drywall for residential construction, about which Banner Supply Co. knew or reasonably should have known.

367.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Supply Co.'s duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

368.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Banner Supply Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

369.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner Supply Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as

{22818396;2}

reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – BREACH OF THE POST-SALE DUTY TO WARN
**(Against Banner Supply Co.)**

370.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

371.    In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

372.    Banner Supply Co. distributed, sold and/or supplied to Woodland the gypsum drywall that was installed in the Homes.

373.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Supply Co. was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Supply Co.'s control and/or was sold to Woodland, Banner Supply Co. knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

374.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{22818396;2}

the Complaint, Banner Supply Co., as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner Supply Co. breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

375.    To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

376.    Consumers, such as Woodland, to whom a warning might have been provided could have been identified by Banner Supply Co.

377.    A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

378.    At all material times, Banner Supply Co. stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Banner Supply Co.'s drywall product in residential construction.

379.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Supply Co.'s position would have provided a post-sale warning.

380.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs

are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland was damaged by Banner Supply Co.'s breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

WHEREFORE, Woodland demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 37 – STRICT PRODUCTS LIABILITY
### (Against Banner Supply Co.)

381.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

382.   At all material times, Banner Supply Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

383.   At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co. to Woodland.

384.   At the time said drywall was placed into the stream of commerce, distributed,

{22818396;2}

supplied and/or sold by Banner Supply Co., Banner Supply Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

385.    Banner Supply Co. expected the gypsum drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

386.    In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

387.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Supply Co. directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 38 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Banner Supply Co.)

388. Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

389. At all material times, Banner Supply Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

390. At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Supply Co. to Woodland.

391. At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co., Banner Supply Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

392. Banner Supply Co. expected the gypsum drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

393. In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

394. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

{22818396;2}

84

construction involved a danger of which Banner Supply Co. was required to provide a warning. However, Banner Supply Co. failed to provide an adequate warning of such danger.

395.   Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

396.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Supply Co. failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

397.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill

{22818396;2}

and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 39 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Banner Supply Co.)

398.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

399.    This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

400.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

401.    At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

402.    At all material times, Banner Supply Co. engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

403.    Banner Supply Co. advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

404.    At the time Banner Supply Co. advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Supply Co. represented that the drywall was fit for the ordinary

purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and free from defects.

405.   In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

406.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Supply Co. sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Supply Co. knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

407.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner Supply Co.'s unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

408.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to

{22818396;2}

disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, as more specifically alleged in paragraphs 9 - 29, herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

409.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

410.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

{22818396;2}

411.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Supply Co.'s violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Co., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 40 – UNJUST ENRICHMENT
**(Against Banner Supply Co.)**

412.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

413.    This is an action, stated in the alternative, against Banner Supply Co. for unjust enrichment.

414.    In the Complaint, Plaintiffs allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

415.    Banner Supply Co. distributed, sold and/or supplied to Woodland the gypsum

{22818396;2}

89

drywall that was installed in the Homes.

416. Woodland paid Banner Supply Co. for supplying the drywall for the Homes.

417. Banner Supply Co. received money from Woodland as a result of Woodland's purchases of defective drywall that was installed in the Homes.

418. In delivering such payment, monies and/or funds to Banner Supply Co., Woodland conferred a benefit, *i.e.*, funds and profit, to Banner Supply Co., which had knowledge thereof.

419. Banner Supply Co. voluntarily accepted and retained the benefit conferred upon it by Woodland.

420. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

421. The circumstances described herein, under which Banner Supply Co. profited from selling and/or supplying defective drywall, make it inequitable for Banner Supply Co. to retain those funds and profits.

422. Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against

{22818396;2}

Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 41 – COMMON LAW INDEMNITY</u>
**(Against Banner St. Lucie)**

423.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

424.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

425.    Woodland is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner St. Lucie.

426.    Woodland is entirely without fault for the injuries alleged by Plaintiffs.

427.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner St. Lucie.

428.    A special relationship existed between Banner St. Lucie and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner St. Lucie.  Woodland purchased drywall from Banner St. Lucie that was installed in the Homes.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner St. Lucie was defective and wholly to blame for Plaintiffs' injuries.

429.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner St. Lucie to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

{22818396;2}

430.    If Woodland is found to be liable to Plaintiffs, Banner St. Lucie is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Woodland demands judgment for indemnity in its favor against Banner Supply Company Port St. Lucie, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 42 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Banner St. Lucie)**

431.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

432.    This is an action, stated in the alternative, against Banner St. Lucie for contribution pursuant to Section 768.31, Florida Statutes.

433.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

434.    Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Banner St. Lucie would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

{22818396;2}

435.    Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

436.    To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Banner St. Lucie for its pro rata share of the liability.

437.    Banner St. Lucie should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Banner Supply Company Port St. Lucie, LLC, for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 43 – EQUITABLE SUBROGATION
### (Against Banner St. Lucie)

438.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

439.    This is an action, stated in the alternative, against Banner St. Lucie for equitable subrogation.

440.    Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

441.    Woodland is not and was not in the business of distributing, supplying and/or

selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner St. Lucie.

442.   Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs.

443.   To the extent that Woodland is required to pay damages for any fault of Banner St. Lucie to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Banner St. Lucie under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

444.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Woodland demands judgment in its favor and against Banner Supply Company Port St. Lucie, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 44 – NEGLIGENCE
### (Against Banner St. Lucie)

445.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

446.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the

{22818396;2}

Other Property in the Homes.

447.   Banner St. Lucie distributed, supplied and/or sold to Woodland the drywall that was installed in the Homes.

448.   Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

449.   As such, Banner St. Lucie owed Woodland a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Woodland's customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

450.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner St. Lucie knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

451.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner St. Lucie breached its duty of care to Woodland by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise

reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner St. Lucie sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Woodland with drywall that complied with all applicable building and industry standards.

452.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner St. Lucie's duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

453.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Woodland to substantial liability and damages. If Banner St. Lucie had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Woodland would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

454.   Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner St. Lucie' breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment

for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

WHEREFORE, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 45 – NEGLIGENT FAILURE TO WARN
**(Against Banner St. Lucie)**

455.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

456.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

457.   Banner St. Lucie distributed, supplied and/or sold to Woodland the drywall that was installed in the Homes.

458.   Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

459.   As such, Banner St. Lucie owed Woodland a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse affects associated with the drywall; (ii) warn Woodland about any dangers inherent in the drywall, and/or (iii) warn Woodland about any problems or

{22818396;2}

dangers in using the drywall for residential construction.

460. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

461. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or should have known that unless it warned Woodland of the risk of using the drywall it distributed, sold, and/or supplied, Woodland would suffer harm. However, Banner St. Lucie failed to provide an adequate warning of such danger.

462. Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

463. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie breached its duty of care to Woodland by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Woodland about any

dangers inherent in the drywall, and/or (iii) failing to warn Woodland about any problems or dangers in using the drywall for residential construction, about which Banner St. Lucie knew or reasonably should have known.

464.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner St. Lucie' duty of care were the direct and proximate cause of Woodland's injuries, losses, and damages.

465.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Woodland to substantial liability and damages. If Banner St. Lucie had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Woodland would ensue as a result of failing to disclose and/or warn of drywall defects.

466.    Without admitting any liability or damages to Plaintiffs, Woodland was damaged by Banner St. Lucie' breaches of its duties of care, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited

{22818396;2}

to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 46 – BREACH OF THE POST-SALE DUTY TO WARN
**(Against Banner St. Lucie)**

467.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

468.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

469.   Banner St. Lucie distributed, sold and/or supplied to Woodland the drywall that was installed in the Homes.

470.   Woodland was a foreseeable user of the drywall distributed supplied, and/or sold by Banner St. Lucie.

471.   To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner St. Lucie was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner St. Lucie' control and/or was sold to Woodland, Banner St. Lucie knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

472.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

{22818396;2}

100

the Complaint, Banner St. Lucie as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. Banner St. Lucie breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

473.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

474.   Consumers, such as Woodland, to whom a warning might have been provided could have been identified by Banner St. Lucie.

475.   A warning could have been effectively communicated to consumers such as Woodland and acted on by them.

476.   At all material times, Banner St. Lucie stood in a better position than Woodland to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Woodland was unaware of potential dangers and/or risk of harm associated with the use of Banner St. Lucie' drywall product in residential construction.

477.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner St. Lucie' position would have provided a post-sale warning.

478.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs

{22818396;2}

101

are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland was damaged by Banner St. Lucie' breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

WHEREFORE, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 47 – STRICT PRODUCTS LIABILITY
**(Against Banner St. Lucie)**

479.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

480.    At all material times, Banner St. Lucie was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

481.    At all material times, the drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie to Woodland.

482.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie. Banner St. Lucie intended that the drywall reach

{22818396;2}

consumers and/or ultimate users of the drywall, such as Woodland.

483.   Banner St. Lucie expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

484.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

485.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner St. Lucie directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{22818396;2}

<u>**COUNT 48 – STRICT PRODUCTS LIABILITY FAILURE TO WARN**</u>
**(Against Banner St. Lucie)**

486.     Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

487.     At all material times, Banner St. Lucie was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

488.     At all material times, the drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner St. Lucie.

489.     At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner St. Lucie, Banner St. Lucie intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

490.     Banner St. Lucie expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

491.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

492.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner St. Lucie was required to provide a warning. However, Banner St. Lucie failed to provide an adequate warning of such danger.

493.     Woodland did not know, had no reason to believe, and was never informed

that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

494.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner St. Lucie failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

495.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{22818396;2}

<u>**COUNT 49 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**</u>
<u>**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**</u>
**(Against Banner St. Lucie)**

496.   Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

497.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

498.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

499.   At all material times, Woodland was a person and a consumer of drywall as defined under FDUTPA.

500.   At all material times, Banner St. Lucie engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Woodland.

501.   Upon information and belief, Banner St. Lucie advertised, solicited, offered, distributed, supplied and/or sold the drywall that was installed in the Homes.

502.   At the time Banner St. Lucie advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner St. Lucie represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

503.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

{22818396;2}

106

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

504.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner St. Lucie sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner St. Lucie knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

505.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner St. Lucie' unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

506.   To the extent Plaintiffs are successful in proving that drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall as more specifically alleged in paragraphs 9 - 29 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within

{22818396;2}

the meaning of FDUTPA.

507.    To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Woodland acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

508.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Banner St. Lucie' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose the source, affiliation, origin, ingredients, characteristics, standards and quality of the drywall, *i.e.*, that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Woodland.

509.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Woodland did not get what it bargained for and is

{22818396;2}

entitled to its actual damages, plus attorneys' fees and court costs. Banner St. Lucie' violations of FDUTPA directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Banner St. Lucie' wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

WHEREFORE, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 50– UNJUST ENRICHMENT
#### (Against Banner St. Lucie)

510.    Woodland reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

511.    This is an action, stated in the alternative, against Banner St. Lucie for unjust enrichment.

512.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

513.    Banner St. Lucie distributed, sold and/or supplied to Woodland the drywall that was installed in the Homes.

514.    Banner St. Lucie received money from Woodland as a result of Woodland's

{22818396;2}

purchases of defective drywall installed in the Homes.

515.    In delivering such payment, monies and/or funds to Banner St. Lucie, Woodland conferred a benefit, *i.e.*, funds and profit, to Banner St. Lucie, which had knowledge thereof.

516.    Banner St. Lucie voluntarily accepted and retained the benefit conferred upon it by Woodland.

517.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner St. Lucie' acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

518.    The circumstances described herein under which Banner St. Lucie profited from selling and/or supplying drywall make it inequitable for Banner St. Lucie to retain those funds and profits.

519.    Woodland has no adequate remedy at law.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Banner Supply Company Port St. Lucie, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

{22818396;2}

### THIRD-PARTY COMPLAINT AGAINST TRIPLE E

### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Woodland.

3.      Woodland was and is a Florida corporation doing business in Palm Beach County, Florida, where this cause of action arose.  At all material times, Woodland was a builder of residential homes in Palm Beach County.

4.      Woodland has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Woodland in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Woodland denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      Third-Party Defendant, **Triple "E" Corporation** ("**Triple E**"), is a Florida corporation having its principal place of business in Martin County, Florida. At all material times, Triple E supplied and installed allegedly defective drywall in the homes of the Plaintiffs in Palm Beach County, where this action arose.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Third-Party Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Third-Party Claim and over the instant Third-Party Defendants.

{22818396;2}

**General Allegations**

9.     As set forth in more detail in the Complaint, Plaintiffs allege that the Homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.[3]

10.     As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Woodland is liable for damages to Plaintiffs.

11.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "**Other Property**").

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     In connection with the construction of homes in Palm Beach County, Woodland hired Triple E to furnish, supply, and/or install drywall in the Homes.

14.     At all material times, Triple E furnished, supplied and/or installed the drywall that was installed in the Homes.

15.     Triple E knew that Woodland required and expected the drywall it furnished, supplied and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

---

[3]     The named class Plaintiffs and other members of the putative class have asserted claims against Woodland in this Action, as well as other actions in the state and federal courts.  The damages sought by Woodland in this Third-party Complaint against Triple E include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{22818396;2}

16.     Woodland did not know and was not made aware of any problems with the drywall as alleged by Plaintiffs.

17.     The drywall furnished, supplied, and/or sold by Triple E and used in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

18.     For the purpose of this Third-Party Claim only, and not constituting an admission of the allegations or liability by Woodland, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

19.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, Triple E had greater knowledge, and/or stood in a better position than Woodland to know, of the drywall's applications, performance, and dangers.

20.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's acts and omissions in distributing, furnishing, supplying, selling, and/or installing the defective drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages to Plaintiffs.

21.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product installed by Triple E in the Homes.

22.     Moreover, Woodland did not know and was never informed by Triple E that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.

23.     Consequently, Triple E is liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Woodland in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

24.     Additionally, Triple E's wrongful conduct also caused damages to Woodland including but not limited to Woodland's loss of reputation, goodwill and lost profits.

25.     Woodland has hired the undersigned counsel and has agreed to pay a reasonable fee for its services.

26.     All conditions precedent to the filing of this Third-Party Complaint have been performed, excused, or otherwise waived.

### COUNT 1 – COMMON LAW INDEMNITY
**(Against Triple E)**

27.     Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

28.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

{22818396;2}

29.     Woodland is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, supplied, furnished and/or sold by Triple E.

30.     Woodland is entirely without fault for the injuries alleged by Plaintiffs.

31.     Any injuries suffered by Plaintiffs were due to the acts or omissions of Triple E, and not Woodland.

32.     A special relationship existed between Triple E and Woodland such that any liability imposed upon Woodland in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Triple E.  Woodland hired Triple E to install drywall in the Homes. Moreover, to the extent that Plaintiffs are successful in proving their claims that the drywall was defective, said drywall was installed, supplied, furnished and/or sold by Triple E, and thus, Triple E is wholly to blame for Plaintiffs' injuries.

33.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to install and/or furnish drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

34.     If Woodland is found to be liable to Plaintiffs, Triple E is liable to Woodland for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland, and/or the settlement of

{22818396;2}

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

WHEREFORE, Woodland demands judgment for indemnity in its favor against Third-Party Defendant, Triple "E" Corporation, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 2 - CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against Triple E)**

35.     Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

36.     This is an action, stated in the alternative, against Triple E for contribution pursuant to Fla Stat. § 768.31.

37.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defects in the drywall contained in the Homes.

38.     Without admitting any liability or damages to Plaintiffs, should Woodland be found liable, Triple E would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

39.     Woodland has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

40.     To the extent that any common liability is found with respect to Woodland, Woodland hereby asserts its right of contribution against Triple E for its pro rata share of the liability.

41.     Triple E should be required to repay Woodland for any loss, damages, costs, and expenses, including attorneys' fees, Woodland is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Woodland in this action and/or any other action

{22818396;2}

116

brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Woodland, in excess of its pro rata share of any common liability.

**WHEREFORE**, Woodland demands that judgment be entered against Third-Party Defendant, Triple "E" Corporation, for its pro rata share of the liability, if any, found against Woodland in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
### (Against Triple E)

42.     Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

43.     This is an action, stated in the alternative, against Triple E for equitable subrogation.

44.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.

45.     Woodland is not and was not in the business of installing, furnishing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall installed, furnished, supplied and/or sold by Triple E.

46.     Without admitting any liability or damages to Plaintiffs, Woodland is not primarily liable for any liability to the Plaintiffs, resulting from a judgment obtained by Plaintiffs.

47.     To the extent that Woodland is required to pay damages for any fault of Triple E to protect its own interests, and not as a volunteer, Woodland would be entitled to reimbursement from Triple E under equitable principles for any damages which are attributable to it related to

{22818396;2}

the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Woodland, including, without limitation, payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Woodland and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Woodland, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against the claims brought by Plaintiffs.

48.     Such subrogation will not work any injustice to the rights of others.

WHEREFORE, Woodland demands judgment against in its favor and against Third-Party Defendant, Triple "E" Corporation, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLORIDA STATUTE, SECTION 672.314 (Against Triple E)

49.     Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

50.     This is an action against Triple E for breach of the implied warranty of merchantability under the common law and/or Florida Statutes § 672.314.

51.     Woodland hired Triple E to furnish and/or install drywall in the Homes. Triple E knew that Woodland required and expected the drywall it furnished, supplied, sold and/or installed in the Homes to be fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and Woodland justifiably relied on Triple E's skill and judgment to provide, supply and install such drywall in the Homes.

52.     Triple E, as the installer and/or seller of the drywall, warranted to Woodland that the drywall was reasonably fit for its ordinary use. Pursuant to the relationship between the

{22818396;2}

118

parties, Triple E is deemed to have provided Woodland with an implied warranty of merchantability as to the drywall materials installed, furnished, supplied and/or sold by Triple E.

53.     The drywall furnished by Triple E for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

54.     Pursuant to Florida Statutes, Section 672.314 and/or common law, Triple E warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes.

55.     Plaintiffs in the Complaint allege various claims against Woodland for damages caused by defective drywall contained in the Homes.  Woodland denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Woodland is found liable to Plaintiffs for the defective drywall in the Homes, Triple E breached the implied warranty of merchantability by installing, furnishing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

56.     As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to furnish, install, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Triple E's wrongful

{22818396;2}

119

conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

57.     Woodland timely notified Triple E of the defective drywall, but Triple E has failed to repair or replace the defective drywall.

**WHEREFORE,** Woodland demands judgment for damages against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 5 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Triple E)

58.     Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

59.     This is an action against Triple E for breach of the implied warranty of fitness.

60.     Woodland hired Triple E to furnish and/or install drywall in the Homes. Triple E knew that Woodland required and expected the drywall Triple E furnished, supplied, sold and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

61.     Woodland justifiably relied on Triple E's skill and judgment to furnish, supply, sell and/or install drywall fit for the particular purpose of constructing residential homes.

62.     Pursuant to the relationship between the parties, Triple E is deemed to have provided Woodland with an implied warranty of fitness as to the work performed and drywall materials furnished, supplied, sold and/or installed by Triple E.

63.     The drywall furnished, supplied and/or sold by Triple E for use in the construction of the Homes was not altered and/or otherwise substantively changed by Woodland.

64.     Triple E impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

{22818396;2}

65.    Plaintiffs, in the Complaint, allege that the defective drywall in the Homes proximately caused their injuries.  Woodland denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Woodland is found liable to Plaintiffs, Triple E breached the implied warranty of fitness by furnishing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

66.    As a result of the claims that have been filed against Woodland, Woodland has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Triple E to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims. Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

67.    Woodland timely notified Triple E of the defective drywall, but Triple E has failed to repair or replace the defective drywall it furnished, supplied, sold and/or and installed in the Homes.

**WHEREFORE,** Woodland demands judgment for damages against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

{22818396;2}

## COUNT 6 – STRICT PRODUCTS LIABILITY
### (Against Triple E)

68.     Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

69.     Woodland hired Triple E to furnish and/or install drywall in the Homes.  Triple E furnished, supplied, sold and/or installed the drywall in the Homes

70.     At all material times, Triple E was in the business of furnishing, supplying, installing, and/or selling drywall of the type contained in the Homes.

71.     At all material times, the drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E in the regular course of business to Woodland.

72.     At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E, Triple E intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

73.     Triple E expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

74.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

75.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream

{22818396;2}

122

of commerce, supplied and/or sold by Triple E directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

 **WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
#### (Against Triple E)

 76. Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

 77. Woodland hired Triple E to furnish and/or install drywall in the Homes.  Triple E furnished, supplied, sold and/or installed the drywall in the Homes.

 78. At all material times, Triple E was in the business of furnishing, supplying, installing, and/or selling drywall of the type contained in the Homes.

 79. At all material times, the drywall contained in the Homes was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E in the regular course of business to Woodland.

{22818396;2}

80.     At the time said drywall was placed into the stream of commerce, furnished, supplied, installed and/or sold by Triple E, Triple E intended that the drywall reach consumers and/or ultimate users of the drywall, such as Woodland.

81.     Triple E expected the drywall to reach Woodland and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Woodland and/or the Homes without substantial change affecting that condition.

82.     Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

83.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Triple E was required to provide a warning. However, Triple E failed to provide an adequate warning of such danger.

84.     Woodland did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

85.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Triple E failed to warn Woodland of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Woodland had no way of anticipating that the drywall

{22818396;2}

124

could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

86.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.  Triple E's wrongful conduct also caused damages to Woodland, including but not limited to Woodland's loss of reputation, goodwill and lost profits.

**WHEREFORE**, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – BREACH OF CONTRACT
#### (Against Triple E)

87.     Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

88.     Upon information and belief, in connection with the construction of residential homes in St. Lucie County, Woodland entered into an agreement with Triple E wherein Triple E agreed to (i) furnish labor, drywall materials, supervision and other things necessary to efficiently perform and timely complete drywall work in the Homes, (ii) perform its duties in a

{22818396;2}

workmanlike manner; and, (iii) correct and/or reimburse Woodland for defective work not in compliance with the plans and specifications.

89.   In accordance with their agreement, Triple E knew that Woodland required and expected the drywall Triple E furnished, supplied and/or installed in the Homes to be safe and fit for use in the construction of residential homes.

90.   Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

91.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E breached the material obligations of the parties' agreement by, among other things, furnishing and/or installing deficient and/or defective drywall.

92.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's acts and omissions in furnishing and/or installing defective drywall in the Homes directly and proximately caused and/or exposed Woodland to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims.

{22818396;2}

WHEREFORE, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 9 – UNJUST ENRICHMENT**
**(Against Triple E)**

93.    Woodland reasserts and realleges the allegations in paragraphs 1 through 26 above as if fully set forth herein.

94.    This is an action, stated in the alternative, against Triple E for unjust enrichment.

95.    Plaintiffs in the Complaint allege various claims against Woodland for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

96.    Triple E furnished, supplied, sold and/or installed the drywall that was installed in the Homes.

97.    Woodland paid Triple E for furnishing supplying, selling, and/or installing the drywall for the Homes.

98.    Triple E received money from Woodland as a result of Woodland's purchases of defective drywall installed in the Homes.

99.    In delivering such payment, monies and/or funds to Triple E, Woodland conferred a benefit, *i.e.*, funds and profit, to Triple E, which had knowledge thereof.

100.    Triple E voluntarily accepted and retained the benefit conferred upon it by Woodland.

101.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Triple E's acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Woodland

{22818396;2}

127

to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Woodland to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Woodland in this action and/or any other action brought by Plaintiffs against Woodland, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Woodland in defending against these claims.

102.   The circumstances described herein under which Triple E profited from selling and/or supplying drywall make it inequitable for Triple E to retain those funds and profits.

103.   Woodland has no adequate remedy at law.

WHEREFORE, Woodland demands judgment for damages in its favor and against Third-Party Defendant, Triple "E" Corporation, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross and Third-Party Plaintiff, Woodland Enterprises, Inc. and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 19th day of January, 2012.

### AKERMAN SENTERFITT

BY: /s/     Stacy Bercun Bohm
Stacy Bercun Bohm, Esq. (Fla. Bar No. 022462)
Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Telecopier: (954) 463-2224
Email:  stacy.bohm@akerman.com
        valerie.greenberg@akerman.com
        leslie.tomczak@akerman.com

*Attorneys for Woodland Enterprises, Inc.*

{22818396;2}

128

*Co-Counsel for Woodland Enterprises, Inc.*

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
         Susie.morgan@phelps.com
         Skylar.rosenbloom@phelps.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA  70163 (kmiller@frilot.com), by U.S. Mail and e-mail <u>or</u> by hand delivery and email <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of January, 2012.


/s/      Stacy Bercun Bohm

{22818396;2}