# EXHIBIT A

INSTR # 2011000095502, Doc Type JUD, Pages 11, Recorded 04/21/2011 at 03:09 PM,
Charlie Green, Lee County Clerk of Circuit Court,  Deputy Clerk ERECORD

4/21/2011 12:58 PM Filed Lee County Clerk of Court

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

Case Number: 10-CA-002840

FCCI COMMERCIAL INSURANCE
COMPANY,
      Plaintiff,

v.

AL BROTHERS, INC.,
      Defendant.                  /

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

     This matter comes before this court on a Motion for Summary Judgment filed by FCCI

Commercial Insurance Company (FCCI) on January 14, 2011. Upon Consideration of the Motion,

the pertinent portions of the record, and oral argument by both sides heard in open Court on April

11, 2011, the Court enters the following Order.

### I.    Factual and Procedural Background

     This is a declaratory judgment action to determine insurance coverage for personal injury

and property damage allegedly resulting from the use of defective Chinese drywall. FCCI filed a

declaratory judgment action on July 15, 2010, and amended it on September 16, 2010, seeking a

declaration from this Court that FCCI does not owe a duty to defend or indemnify AL Brothers, Inc.

(hereinafter "AL Brothers") under any insurance policy(ies) FCCI issued to AL Brothers with

respect to actions relating to claims arising from allegedly defective Chinese drywall. When

comparing the pending underlying complaints to the plain language of the FCCI policies, it is clear

that all underlying claims are not insured by or are excluded by language in the FCCI policies.

Accordingly, as a matter of law, FCCI does not owe a duty to defend and indemnify AL Brothers in

connection with any claim alleging defective Chinese drywall.

### A.    Underlying actions

AL Brothers has been named as a defendant in the following underlying actions: 1) *Sean and Beth Payton, et al. v. Knauf GIPS KG, Residential Drywall, et al.*, USDC, EDLA, Case No. 2:09-cv-07628-EEF-JCW ("*Payton*"); 2) *Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public, Residential Drywall, et al.*, USDC, EDLA, Case No. 2:10-cv-00361-EEF-JCW ("*Wiltz*"); and 3) *Joyce W. Rogers, et al. v. Knauf GIPS KG, et al.* (Class Action), USDC, EDLA, Case No.: 2:10cv00362, ("*Rogers*"). The plaintiffs in the underlying actions allege AL Brothers is liable for damages resulting from the installation of allegedly defective Chinese drywall. (See *Payton* Complaint, p. 487, ¶ 2523; *Wiltz* Complaint, p. 143, ¶ 705; *Rogers* Complaint, p. 133, ¶ 662.)

The underlying actions allege that AL Brothers installed defective Chinese drywall that emitted sulfides and other noxious gases (or "off-gases"). (See *Payton* Complaint, p. 506 ¶ 2611; *Wiltz* Complaint, p. 151, ¶ 724; *Rogers* Complaint, p. 137, ¶ 681.) The plaintiffs in the underlying actions allege that the sulfides and other noxious gases have caused corrosion and damage to personal property such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances, and other metal surfaces and property and that exposure to sulfide and other noxious gases caused bodily injury. (See *Payton* Complaint, p. 506, ¶ 2612-13; *Wiltz* Complaint, pp. 151-152, ¶ 743-44; *Rogers* Complaint, p. 137-38, ¶ 682-83.) The underlying actions seek damages against AL Brothers for the costs of inspection, the cost to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes, and personal property, and diminution of property value. (See *Payton* Complaint, p. 507, ¶ 2619; *Wiltz* Complaint, p. 153, ¶ 750; *Rogers* Complaint, p. 138-39, ¶ 689.) Some plaintiffs in the underlying actions also claim damages for injuries as a result of allergic reactions, coughing, sinus and throat infection, eye

irritation, respiratory problems, and other health problems.  (See *Payton* Complaint, p. 503 ¶ 2613; *Wiltz* complaint, p. 152, ¶ 744; *Rogers* Complaint, p.137-38 ¶ 683.)

**B.    Current dispute**

FCCI issued two General Liability insurance policies to AL Brothers that are at issue: policy number GL 0001705-3, effective 04/01/2005 through 04/01/2006; and policy number GL 0001705-4, effective 04/01/2006 through 04/01/2007.  Each of the FCCI policies GL 0001705-3 and GL 0001705-4 issued to AL Brothers contains a Total Pollution Exclusion Endorsement Form CG2149 09/99.

The FCCI policies GL 0001705-3 and GL 0001705-4 issued to AL Brothers each contain the following Total Pollution Exclusion, CG 21 49 09 99:

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time . . . .

FCCI policies GL 0001705-3 and GL 0001705-4 define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  AL Brothers is seeking coverage for the claims in the underlying actions.  FCCI claims it has no duty to

defend AL Brothers in the actions against it because the injuries and damages from the Chinese

drywall fall under the policies' Pollution Exclusion. AL Brothers argues that the excessive amounts

of sulfides and excess gases that compromise the drywall in question are not "pollutants," and

therefore FCCI must defend AL Brothers in the underlying actions and eventually indemnify it.

This Court finds that the compounds released by the sulfides and other excess gases are

pollutants within the meaning of the policy and the Pollution Exclusion does apply.

## II.   Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment

is an appropriate vehicle for resolution of this issue. See Nationwide Mutual Fire Ins. Co. v. Royal,

558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008). The party moving for summary judgment has the

initial burden of demonstrating the nonexistence of material issues of fact. Lenhal Realty, Inc. v.

Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). If the moving

party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the

party opposing the motion to establish that there is a dispute of fact. See Landers v. Milton, 370 So.

2d 368 (Fla. 1979). If there are no disputed issues as to any material fact, the court may decide the

issue by summary judgment. See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App.

1971); Fla. R. Civ. P. 1.510.

## III.   Analysis

### A.   Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action

because the policies were executed in Florida, issued and delivered in Florida to a Florida insured,

and the homes upon which AL Brothers allegedly installed drywall were located in Florida. See

State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). AL Brothers is a dissolved

Florida Corporation that was exclusively located in and doing business in Florida. At all material times, AL Brothers installed drywall in Florida. The claims in the underlying actions arise out of the alleged exposure to drywall installed by AL Brothers in properties located in Florida. AL Brothers does not dispute the application of Florida law to this matter.

### B.    Duty to Defend

FCCI asserts that it does not have a duty to defend AL Brothers in the underlying actions because the compounds and sulfide gases being released from the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusion. When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured." Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where the allegations show that coverage does not exist or a policy exclusion applies. Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also, Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify"). As such, this Court need not look further than the underlying pleadings and the FCCI policies to render a determination that FCCI does not have a duty to defend AL Brothers. The plaintiffs in the underlying actions all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusion in the FCCI

policies issued to AL Brothers. Therefore, FCCI does not have a duty to defend or indemnify AL Brothers in any claim arising out of any allegation that AL Brothers installed allegedly defective Chinese drywall.

**C.    Pollution Exclusion**

The Total Pollution Exclusion contained in the General Liability policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99.) Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The claims in the underlying actions arise solely from damage or injury resulting from the release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total Pollution Endorsement. The underlying plaintiffs have also sought relief in the form of a demand that AL Brothers monitor, remove, contain, treat, or respond to the Pollutants. This specific request is also precluded by the Total Pollution Exclusion.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically

- 6 -

identical to the one in AI. Brothers' policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. See, e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators, Inc.v. Tampa Housing Authority, 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law). Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion. The

underlying actions allege that the sulfide gases were emitted from defective drywall resulting in their bodily injury or damage to their property. (See e.g., *Rogers* Complaint, p. 137-38, ¶ 681-84.)

The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions. See *Auto Owners Ins. Co. v. City of Tampa Housing Authority*, 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); *West American Ins. Co. v. Band & Desenberg*, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also *Deni*, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with

the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139

(citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990)

("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not

defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")).  In

assessing the application of the pollution exclusion, Florida courts have defined these terms as they

are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular

effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139, (quoting

Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue

fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by

contact with addition of something . . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New

World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indemnity Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F.

Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded

coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid

while on the insured's premises.  Id. at 1320.  The court, citing Deni, rejected the idea that the

pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained

undefined.  Id. at 1323-24.  In determining whether something was an "irritant or contaminant"

within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a

substance is an irritant or contaminant, 'the court should look to see if a disputed substance is

alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" Id.

at 1324 (quoting Nova, 424 F. Supp. 2d at 1325).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined

under the FCCI policies, Florida courts have continually rejected the assertion that the terms are

ambiguous. As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying actions, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the Total Pollution Exclusion. Without the presence of these gases, no irritation or contamination would have occurred. Because the underlying actions plainly alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

Finally, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. General Fidelity Ins. Co. v. Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. decided March 24, 2011) and Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010). The General Fidelity Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy, and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowners policy. Although neither case is binding upon this Court, this Court does find both persuasive. In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Thus the injuries and damages sustained from the drywall are within the policies' Total Pollution Exclusion. FCCI has no duty to defend or indemnify AL Brothers, Inc. Accordingly, summary judgment is warranted.

Case 2:09-md-02047-EEF-MBN   Document 12237-2   Filed 01/20/12   Page 12 of 138

## IV.    Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**.  The Court hereby enters a final judgment in favor of FCCI and against AL Brothers as follows:

1.    FCCI does not owe a duty to defend or indemnify AL Brothers in the underlying actions (*Payton, Wiltz,* and *Rogers*) or any similar case alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2.    Any damages alleged in the underlying actions are precluded from coverage by the unambiguous language of the Total Pollution Exclusion.

3.    There is no coverage available to AL Brothers under the FCCI policies.

**IT IS SO ORDERED**

April _____ 19 _____ , 2011

Judge Michael T. McHugh

- 11 -

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

FCCI COMMERCIAL INSURANCE
COMPANY,
     Plaintiff,                         Case Number:  10-CA-2841

v.

*Copy*

OCEAN CONSTRUCTION, INC.
     Defendant.                     /

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on a Motion for Summary Judgment filed by FCCI Commercial Insurance Company (FCCI) on January 12, 2011.  Upon Consideration of the Motion, the pertinent portions of the record, and oral argument heard in open Court on June 6, 2011, the Court enters the following Order.

**I.**     **Factual and Procedural Background**

This is a declaratory judgment action to determine insurance coverage for personal injury and property damage allegedly resulting from the use of defective Chinese drywall.  FCCI filed a declaratory judgment action on July 14, 2010 seeking a declaration from this Court that FCCI does not owe a duty to defend or indemnify Ocean Construction, Inc. (hereinafter "Ocean") under any insurance policy(ies) FCCI issued to Ocean with respect to actions relating to claims arising from allegedly defective Chinese drywall.  When comparing the pending underlying complaint to the plain language of the FCCI policies, it is clear that all underlying claims are excluded by language in the FCCI policies and are not insured by the FCCI policies.  Accordingly, as a matter of law, FCCI does not owe a duty to defend and indemnify Ocean in connection with any claim alleging defective Chinese drywall.

A.   **Underlying Actions**

Ocean has been named as a defendant in *Lennar Homes, LLC f/k/a Lennar Homes, Inc. and U.S. Home Corporation v. Knauf GIPS KG, et al.*, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, 09-07901 CA 23.   In the *Lennar* action the plaintiffs allege that while working as a subcontractor for Lennar, Ocean installed defective and deficient Chinese drywall that has damaged and corroded a number of items in homes built by Lennar, breaching its contract with Lennar.  The *Lennar* plaintiffs further allege they have incurred damages from the installation of the allegedly defective Chinese drywall.  (See *Lennar* complaint.)

The *Lennar* action alleges three causes of action against Ocean:  Breach of Express Warranty, Breach of Implied Warranty, and Breach of Contract.  (See *Lennar* Complaint.)  *Lennar* alleges that the drywall Ocean installed is defective and, through testing, has shown to contaminate material and property in the homes. (See *Lennar* Complaint, p.12-16, ¶¶ 44-64.)  The plaintiffs in the underlying action allege that the drywall has caused corrosion and damage to personal property such as HVAC coils, certain electrical and plumbing components, and other affected materials and items.  (See *Lennar* Complaint, p.13, ¶¶ 51-51.)  The *Lennar* suit seeks damages against Ocean for breach of contract, including the costs of fully remediating and repairing the affected homes, which includes replacing the defective gypsum drywall and repairing or replacing the damaged Other Property in the affected homes. (See *Lennar* Complaint, p. 88 ¶ 526).  *Lennar* also seeks damages for costs associated with relocating its homeowners to temporary housing, damages for loss of goodwill and reputation, and other fees.  (See *Lennar* Complaint, p 89, ¶ 534.)  The *Lennar* plaintiffs have not alleged bodily injury damages. (See *Lennar* Complaint, p 14, ¶ 55.)

**B.     Current Dispute**

FCCI issued several commercial insurance policies to Ocean for which Ocean claims coverage may apply.   FCCI issued the following Commercial Package policies that include Commercial General Liability coverage which is at issue:

Policy Number CPP0003352-1 (effective 02/01/2004 through 02/1/2005)

Policy Number CPP0004403-1 (effective 02/01/2005 through 02/01/2006)

Policy Number CPP0004403-2 (effective 02/01/2006 through 02/01/2007)

Each of the Commercial General Liability policies (CGL), CPP0003352-1, CPP0004403-1, and CPP0004403-2, contain the following insuring agreement:

> SECTION I – COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1.     Insuring Agreement
>
> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> b.     This insurance applies to "bodily injury" and "property damage" only if:
> (1)     The "bodily injury" or "property damage" is caused by an "occurrence"…
> (2)     The "bodily     injury"     or     "property     damage occurs during the policy period; and
> (3)     prior to the policy period no insured (or employee authorized by you knew, prior to the policy period, that the "bodily injury" or "property damage" occurred.
>
> (emphasis added)

Occurrence is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Each of the policies also includes an exclusion for Contractual Liability that provides:

> 2. Exclusions
> This insurance does not apply to
> . . .
> b. Contractual Liability
> "Bodily Injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability In a contract or agreement.

Each of the Commercial General Liability policies (CGL), CPP0003352-1, CPP0004403-1, and CPP0004403-2, contains a Total Pollution Exclusion Endorsement Form CG2149 09/99:

> TOTAL POLLUTION EXCLUSION ENDORSEMENT
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:
>
> This insurance does not apply to:
>
> f. Pollution
>
> > (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time
> >
> > (2) Any loss, cost or expense arising out of any
> >
> > > a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," or
> > > . . . .

"Pollutant" is defined under the policies as follows:

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

FCCI also issued the following Commercial Umbrella policies to Ocean that are at issue:

Policy Number UMB0002069-1 (effective 02/01/2004 through 02/01/2005)

Policy Number UMB0002793-1 (effective 02/01/2005 through 02/01/2006)

Policy Number UMB0002793-2 (effective 02/01/2006 through 02/01/02007)

The Commercial Umbrella policies contain the following insuring agreement:

We will pay on behalf of the insured those sums in excess of the Self Insured Retention that the insured becomes legally obligated to pay as damages because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury to      which this insurance applies.

"Occurrence" is defined in relevant part under the policies as follows:

An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in Bodily Injury or Property Damage, or . . .

Also, each of the Commercial Umbrella policies contains Endorsement UMB 066 (02-99),

Pollution Exclusion—Total:

COMMERCIAL UMBRELLA LIABILITY

UMB 066 (02-99)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
POLLUTION EXCLUSION – TOTAL

This endorsement modifies Insurance provided under the following

COMMERCIAL UMBRELLA LIABILITY POLICY
Exclusion g under paragraph 1, C - Exclusions (section I - Coverage) is deleted and replaced by the follows
g        To Pollution

(1) Bodily Injury or Property Damage which would not have occurred In whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants at any time . . .

"Pollutant" is defined under the policy as:

P      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste   Waste includes materials to be recycled, reconditioned or reclaimed

Ocean is seeking coverage for the claims in the underlying action.  FCCI claims it has no duty to defend Ocean in the *Lennar* action against it because an occurrence has not been alleged for which there is coverage under the Ocean policies.  This Court finds that the allegations of Breach of Contract and Breach of Warranty against Ocean are not occurrences as defined under the FCCI policies and thus there is no coverage for Ocean under the policies.

This Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policies and the Pollution Exclusions apply.

## II.      Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue.  See Nationwide Mut. Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008).  The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact.  Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993).  If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact.  See Landers v. Milton, 370 So. 2d 368 (Fla. 1979).  If there are no disputed issues as to any material fact, the court may decide the

issue by summary judgment. See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

## III.    Analysis

### A.    Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida and were issued and delivered in Florida to a Florida insured. See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). Ocean is exclusively located in Florida. At all material times, Ocean installed drywall in Florida. The claims in the underlying action arise out of the alleged exposure to drywall installed by Ocean in properties located in Florida.

### B.    Duty to Defend

FCCI asserts that it does not have a duty to defend Ocean in the underlying actions because an occurrence has not been alleged and because of the Contractual Liability Exclusion. FCCI also asserts it has no duty to defend Ocean because the compounds and sulfide gases being released from the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusions. When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured." Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where the *allegations show that coverage does not exist or a policy exclusion applies.* Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D.

Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify"). As such, this Court need not look further than the underlying pleadings and the FCCI policies to render a determination on the duty to defend as a matter of law in this matter. The allegations against Ocean, for Breach of Contract and Breach of Warranty do not fit the definition of occurrence under the policy and are therefore not covered under the FCCI policies. Further, the plaintiffs in the underlying actions all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusions in the FCCI policies issued to Ocean. Therefore, FCCI does not have a duty to defend or indemnify Ocean in any claim arising out of any allegation that Ocean installed allegedly defective Chinese drywall.

### C. No Occurrence Alleged

The FCCI policies require that in order for Ocean to be covered under the policies, "property damage" must be caused by an "occurrence" as defined by the policy. The definition of occurrence requires that any damage that occurred must be accidental and not caused by intentional conduct in order to be covered. Florida courts have stated that "accident" under a typical commercial general liability policy means injuries or damage neither expected nor intended from the standpoint of the insured. See State Farm Fire & Cas. Co. v. CTC Development Corp, 720 So. 2d 1072, 1076 (1998).

FCCI argues that the *Lennar* suit does not allege a recognized occurrence under Florida law that would trigger coverage of Ocean under its policies. FCCI claims that Breach of Contract and

Breach of Warranty claims are not considered occurrences, and therefore are not covered under the FCCI policies.

This Court agrees that a breach of contract claim does not constitute an "occurrence" as required by a CGL policy. See Auto-Owners Ins. co. v. Pozzi Window Co., 984 So.2d 1241 (2008). Thus, the allegation of breach of contract in the *Lennar* complaint is not an occurrence under the policies. Breach of warranty claims are not considered occurrences under CGL policies because such claims are not caused by an "accident." See Auto-Owners Ins. co. v. Pozzi Window Co., 984 So.2d 1241 (2008); Armstrong v. Land & Marine Applicators, Inc., 463 So.2d 1327 (La.App. 5 Cir., 1984); Kema Steel, Inc. v. Home Ins. Co., 153 Ariz. 315 (Ariz.App. 1986); Weedo v. Stone-E-Brick, 405 A.2d 788 (N.J. 1979) (holding breach of express and implied warranties are contract actions); Yegge v. Integrity Mut. Ins. Co., 534 N.W.2d 100 (Iowa 1995) (holding that the claims against the builder did not allege an "occurrence" under liability policy since breach of contract, breach of express warranty, breach of implied warranty and fraud claims did not involve accidental conduct and were economic damages).

The Court finds there is no "occurrence" alleged in the *Lennar* complaint for which Ocean is responsible. The allegations of breach of contract, breach of express warranty, and breach of implied warranty against Ocean are not occurrences under the policies. Therefore, summary judgment is proper in this matter.

**D.    Contractual Liability Exclusion**

The *Lennar* complaint alleges negligence on the part of various parties (Taishan, BNBM, etc) but does not allege negligence on the part of Ocean. The only claims against Ocean are for "Breach of Contract" (Count LXIII), "Breach of Express Warranty" (Count LXIV), and "Breach of

Implied Warranty" (Count LXV).  Obviously, the allegations o f Count LXIII are excluded by the Contractual Liability Exclusion in the policies.

In looking at the claims for breach of express and implied warranty, there appears to be no published Florida appellate court decision on whether or not those claims are also excluded by the Contractual Liability Exclusion.

In looking at the cases from other jurisdictions, the majority of cases find that allegations of breach of warranty (express and implied) fall within the Contract Liability Exclusion.  The following cases provide examples:

> Cincinnati Ins. Co. v. Transport Graphics, Inc., Slip Copy, 2011 WL 2083960 (W.D.Mo., 2011) finds that "breach of contract and warranties are contractual in nature" and excluded.

> Hess v. Appleton Mfg. Co., 148 S.W. 179, 180 (Mo .Ct.App.1912) finds that "an action for a breach of warranty is founded on contract."

> Assurance Co. of America v. Admiral Ins. Co., Slip Copy, 2011 WL 1897589 (S.D.Ala., 2011) states that "Implied warranties are terms that are implied by law in a contract and would not exist apart from that contract. . . . The implied warranty at issue here would not exist were it not for the construction contract between Byrd Homes and Welch. . . . Coverage for count two is therefore also excluded by operation of the contractual liability exclusion of the Scottsdale policy."

> American Nat. Property and Cas. Co. v. Blocker, 165 F.Supp.2d 1288 (S.D.Ala., 2001) states that "any alleged liability for the breach of warranties claim necessarily depends upon the existence of the underlying contract."

> Ewing Const. Co., Inc. v. Amerisure Ins. Co., Slip Copy, 2011 WL 1627047 (S.D.Tex., 2011) finding that breach of warranty is excluded by the contractual liability exclusion.

> Global Gear & Mach. Co., Inc. v. Capitol Indem. Co., Slip Copy, 2010 WL 3341464, (W.D.Ky., 2010) holds that "a breach of an express or implied warranty flowing from the contract" is not covered.  "The Capitol insurance policy does not apply to 'property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.' Thus, Capitol does not owe a defense or indemnification with respect to Count I, Breach of Contracts, Count II, Breach of Express Warranties, or Count III, Breach of Implied Warranties."

> Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591 (C.A.3, 2009) holding that "Pennsylvania law does not recognize the applicability of a general liability

policy to breach of contract and breach of warranty claims" because of the contractual liability exclusion.

The Court finds these cases persuasive particularly in a case such as this one where there is absolutely no allegation that Ocean was in any way negligent. The only allegations against Ocean arise solely out of breach of contract, breach of implied warranty and breach of express warranty.

**E.    Pollution Exclusion**

The Total Pollution Exclusion contained in the General Liability policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99; UMB 066 0299) Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The claims in the underlying action arise solely from damage or injury resulting from the release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total Pollution Endorsements. The underlying plaintiffs have also sought relief in the form of a demand that Ocean monitor, remove, contain, treat, or respond to the Pollutants. This specific request is also precluded by the Total Pollution Exclusions.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in Ocean's policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. See, e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators, Inc.v. Tampa Housing Authority, 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law). see also General Fidelity Insurance Co. v. Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment,

D.E. 102) (citing <u>Deni</u>). In a recent ruling in <u>Foster</u>, the United States District for the Southern District of Florida, entered an Order granting General Fidelity Insurance Company's Motion for Summary Judgment on a claim alleging damages from allegedly defective Chinese Drywall applying Florida law to a total pollution exclusion. Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion. The underlying action alleges that the sulfide gases were emitted from defective drywall resulting damage to the property. The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions. See <u>Auto Owners Ins. Co. v. City of Tampa Housing Authority</u>, 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); <u>West American Ins. Co. v. Band & Desenberg</u>, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric

and other gases into the underlying plaintiffs' homes.  When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'"  Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant).  Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion.  See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")).  In assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indemnity Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises.  Id. at 1320.  The court, citing Deni, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined.  Id. at 1323-24.  In determining whether something was an "irritant or contaminant"

within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" Id. at 1324 (quoting Nova, 424 F. Supp. 2d at 1325). Likewise, the United States District for the Southern District of Florida has recently ruled in applying Florida law that the damages allegedly caused by defective Chinese drywall are excluded by a total pollution exclusion. See Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are ambiguous. As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying actions, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the pollution exclusions in Ocean's policies. Without the presence of these gases, no irritation or contamination would have occurred. Because the underlying actions plainly alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. General Fidelity Ins. Co. v. Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. decided March 24, 2011) and Travco Ins. Co.

- 15 -

v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010).  The General Fidelity Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowner's policy.  Although neither case is binding upon this Court, this Court does find both persuasive.  In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to a similar Florida State Trial Court decision involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall.  In FCCI v AL Brothers, Inc., Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number:  10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case.  The FCCI policies were identical in that case and in this case.  Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken), and even though it is also not binding upon this Court, this Court finds it to be persuasive and has adopted some of its language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions.  FCCI has no duty to defend or indemnify Ocean Construction, Inc.  Accordingly, summary judgment is warranted.

## IV.    Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**.  The Court hereby enters a final judgment in favor of FCCI and against Ocean as follows:

1.    FCCI does not owe a duty to defend or indemnify Ocean in the underlying action or any similar case alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2.    There is no covered "occurrence" alleged, as defined by the policies.

- 16 -

3.      Any damages alleged in the underlying actions are precluded from coverage by the

unambiguous language of the Total Pollution Exclusions.

4.      FCCI does not owe a duty to defend or indemnify Ocean in the *Lennar* suit or any

other complaint alleging breach of contract, breach of implied warranty, or breach of

express warranty.

5.      There is no coverage available to Ocean under any of the FCCI policies.

**IT IS SO ORDERED**

June _____, 2011

_____

Judge Lynn Gerald, Jr.
Lee County

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

FCCI COMMERCIAL INSURANCE
COMPANY,
    Plaintiff,                       Case Number: 10-29152 -18

v.

S.D. & ASSOCIATES, INC.,
    Defendant.                               /

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on a Motion for Summary Judgment filed by FCCI

Commercial Insurance Company (FCCI) on May 31, 2011. Upon Consideration of the Motion,

the pertinent portions of the record, and oral argument by both sides heard in open Court on July

20, 2011, the Court enters the following Order.

## I.    Factual and Procedural Background

This is a declaratory judgment action to determine insurance coverage for personal injury

and property damage allegedly resulting from the use of defective Chinese drywall. FCCI filed a

declaratory judgment action on July 15, 2010 seeking a declaration from this Court that FCCI

does not owe a duty to defend or indemnify S.D. & Associates, Inc. (hereinafter "S.D.") under

any insurance policy(ies) FCCI issued to S.D. with respect to actions relating to claims arising

from allegedly defective Chinese drywall. When comparing the pending underlying complaints

to the plain language of the FCCI policies, it is clear that all underlying claims are not insured by

or are excluded by language in the FCCI policies. Accordingly, as a matter of law, FCCI does

not owe a duty to defend and indemnify S.D. in connection with any claim alleging defective

Chinese drywall.

### A.    Underlying actions

S.D. has been named as a defendant in the following underlying actions: *Lennar Homes, LLC f/k/a Lennar Homes, Inc. and U.S. Home Corporation v. Knauf GIPS KG, et al.*, 09-07901 CA 23 ("*Lennar*") and *Justin Metzl, et al. v. Lennar Corporation, et al.*, 09-31980 CA 11 (S.D. is a third party defendant) ("*Metzl*")[1]. In the *Lennar* and *Metzl* actions the plaintiffs allege that while working as a subcontractor for Lennar, S.D. installed defective and deficient Chinese drywall that has damaged and corroded a number of items in homes built by Lennar, breaching its contract with Lennar. The plaintiffs further allege they have incurred damages from the installation of the allegedly defective Chinese drywall. (See *Lennar & Metzl* complaints.)

The *Lennar* action allege three causes of action against S.D.: Breach of Express Warranty, Breach of Implied Warranty, and Breach of Contract. (See *Lennar* Complaint.) The *Metzl* action alleges Breach of Express Warranty, Breach of Implied Warranty, Breach of Contract, Products Liability, Negligence, Common law Indemnity, and Contribution. (See *Metzl* Complaint.) The *Lennar* underlying action alleges that through scientific testing and analysis performed by Lennar's consultants it was determined that the " . . . unreasonably defective drywall, because of its defective nature, appears to be interacting with other conditions and elements, causing damage to other property within the Affected Homes . . ." (See *Lennar* First Amended Complaint, pp. 13, ¶ 51.)

The plaintiffs in the underlying actions allege that the defective drywall has caused damages to ". . . HVAC coils, certain electrical and plumbing components, certain appliances, certain other household items not originally delivered with the homes . . ." (See *Lennar* First

---

[1] When referring to *Metzl* throughout this brief Plaintiff is referring to Lennar Corporation; Lennar Homes, LLC; and U.S. Home Corporation's Third Party Complaint naming S.D. 09-31980 CA 42.

2

Amended Complaint, pp. 13, ¶ 51; *Metzl* Complaint, pp. 7-8, ¶ 23.) The underlying actions seek damages against S.D. to recover "all costs and expenses" including but not limited to, costs incurred for the repair and replacing of the defective drywall and the repairing and replacing of other damaged property, costs incurred in relocation of homeowners, loss of goodwill and reputation, and attorney's fees. (See *Lennar* First Amended Complaint, pp 120-121, ¶ 692 and 699; *Metzl* Complaint, p. 28, ¶ 137.) The plaintiffs have not alleged bodily injury damages. (See *Lennar* First Amended Complaint p 14, ¶ 54.)

**B.     Current Dispute**

FCCI issued four General Liability insurance policies to S.D. for which S.D. claims coverage may apply:

> Policy number GL 0003966-1 effective 01/07/2006 through 01/07/2007;
>
> Policy number GL 0003966-2 effective 01/07/2007 through 01/07/2008;
>
> Policy number GL 0003966-3 effective 01/07/2008 through 01/07/2009;
>
> Policy number GL 0003966-4 effective 01/07/2009 through 01/07/2010.

Each of the FCCI policies issued to S.D. contain the following insuring agreement:

> SECTION I – COVERAGES COVERAGE A BODILY INJURY AND
> PROPERTY DAMAGE LIABILITY
> 1.     Insuring Agreement
>
> a.     We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property
> damage" to which this insurance applies  We will have the right
> and duty to defend the insured against any "suit" seeking those
> damages  However, we will have no duty to defend the insured
> against any "suit" seeking damages for "bodily injury" or "property
> damage" to which this insurance does not apply  We may, at our
> discretion, investigate any "occurrence" and settle any claim or
> "suit" that may result. . .
>
> . . .

3

    b.     This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence"...

        (2)    The "bodily injury" or "property damage" occurs during the policy period, and

        (3)    Prior to the policy period no insured . . . and no "employee" authorized by you . . . knew, prior to the policy period, that the "bodily injury" or "property damage" occurred. . .

. . .

The FCCI policies issued to S.D. each contain the following relevant definitions:

SECTION V – DEFINITIONS

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions

"Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of use of that property All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or

b.     Loss of use of tangible property that is not physically injured All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it

The FCCI policies issued to S.D. each contain the following exclusion regarding damage to property:

    2.     Exclusions

        This insurance does not apply to:

        j.      Damage to Property

        "Property damage" to:

        (5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations, or

        (6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it

4

. . . .

> Paragraphs . . . (5) and (6) of this exclusion do not apply to liability assumed under a side-track agreement
>
> Paragraph (6) of this exclusion does not apply to "Property damage" included in the "products-completed operations hazard"

The FCCI policies issued to S.D. each contain the following exclusion regarding damage to "your product":

> 2.    **Exclusions**
>        This insurance does not apply to:
>
> k.    **Damage To Your Product**
>        "Property damage" to "your product" arising out of it or any part of it.

The FCCI policies issued to S.D. each contain the following exclusion regarding damage to "your work":

> 2.    **Exclusions**
>        This insurance does not apply to:
>
> l.    **Damage To Your Work**
>        "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"
>
>        This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor

The FCCI policies issued to S.D. each contain the following exclusion regarding damage to "impaired property":

> 2.    **Exclusions**
>        This insurance does not apply to:
>
> m.    **Damage To Impaired Property Or Property Not Physically Injured**

5

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work", or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use

The policy defines "your work" in the exclusions as follows:

"Your work":

a.    Means:

(1)    Work or operations performed by you or on your behalf, and

(2)    Materials, parts or equipment furnished in connection with such work or operations

b.    Includes

(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2)    The providing of or failure to provide warnings or instructions

The policy defines "your product" in the exclusions as follows:

"Your product":

a.    Means:

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by

(a)    You,

(b)    Others trading under your name, or

(c)    A person or organization whose business or assets you have acquired, and

(2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products

b.    Includes

(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

6

> (2) The providing of or failure to provide warnings or instructions
>
> c. Does not include vending machines or other property rented to or located for the use of others but not sold

The policy defines "impaired property" in the exclusions as follows:

> "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous, or
>
> b. You have failed to fulfill the terms of a contract or agreement,
>
> if such property can be restored to use by:
>
> a. The repair, replacement, adjustment or removal of "your product" or "your work", or
>
> b. Your fulfilling the terms of the contract or agreement

The FCCI policies issued to S.D. each contain the following Total Pollution Exclusion:

### TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:
This insurance does not apply to:

> f. Pollution
>
> > (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time
> >
> > (2) Any loss, cost or expense arising out of any
> > > a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in

7

> any way respond to, or assess the effects of "pollutants," or
>
> . . .

FCCI policies issued to S.D. each define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed"

S.D. is seeking coverage for the claims in the underlying action. FCCI claims it has no duty to defend S.D. in the *Lennar* or *Meltz* action against it because an occurrence has not been alleged for which there is coverage under the S.D. policies. This Court finds that the allegations of Breach of Contract, Breach of Warranty, and Products Liability against S.D. are not occurrences as defined under the FCCI policies, and thus there is no coverage for S.D. under the policies.

This Court also finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policies and the Total Pollution Exclusion applies..

## II.     Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue. See Nationwide Mut. Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008). The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact. Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact. See Landers v. Milton, 370 So. 2d 368 (Fla. 1979). If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment. See Ham v. Heintzelman's Ford,

8

Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

## III.   Analysis

### A.   Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida and were issued and delivered in Florida to a Florida insured. See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). S.D. is exclusively located in Florida. At all material times, S.D. installed drywall in Florida. The claims in the underlying action arise out of the alleged exposure to drywall installed by S.D. in properties located in Florida.

### B.   Duty to Defend

FCCI asserts that it does not have a duty to defend S.D. in the underlying actions because an occurrence has not been alleged and because of the Contractual Liability Exclusion. FCCI also asserts it has no duty to defend S.D. because the compounds and sulfide gases being released from the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusions. When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured." Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where the *allegations show that coverage does not exist or a policy exclusion applies.* Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. Nova Cas.

9

Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also Wilson, 469 F. Supp.

2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify"). As such,

this Court need not look further than the underlying pleadings and the FCCI policies to render a

determination on the duty to defend as a matter of law in this matter. The allegations against

S.D. for Breach of Contract, Breach of Warranty and Products Liability do not fit the definition

of occurrence under the policy and are therefore not covered under the FCCI policies.

In addition, where a complaint is silent as to certain facts that are undisputed, the Court

may look outside the allegations of the Complaint to those undisputed facts in determining the

duty to defend. For example, in Nationwide Mut. Fire Ins. Co. v. Keen, 658 So. 2d 1101 (Fla.

4th DCA 1995) the Court held:

> Claimant argues that an ambiguity in the complaint requires a defense, citing
> Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810 (Fla. 1st DCA
> 1985). That may be true, but if uncontroverted evidence places the claim outside
> of coverage, and the claimant makes no attempt to plead the fact creating
> coverage or suggest the existence of evidence establishing coverage, we think the
> carrier is relieved of defending. Tennessee Corp. v. Lamb Bros. Constr. Co., 265
> So.2d 533 (Fla. 2d DCA 1972), may be an aberration, but it is founded on logic
> and fairness.

See, also Nateman v. Hartford Cas. Ins. Co., 544 So. 2d 1026 (Fla. 3d DCA 1989); Wilson v.

General Tavern, 469 F.Supp.2d 1214 (S.D. Fla. 2006); Underwriters at Lloyds v. STD Enterps.,

Inc., 395 F.Supp.2d 1142 (M.D. Fla. 2005).

It is undisputed that the plaintiffs in the underlying actions all allege that their damages

and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide

gases and additional chemicals. These claims are excluded by the clear and unambiguous

language of the Total Pollution Exclusions in the FCCI policies issued to S.D. Therefore, FCCI

does not have a duty to defend or indemnify S.D. in any claim arising out of any allegation that

S.D. installed allegedly defective Chinese drywall.

### C.     No Occurrence Alleged

The FCCI policies require that in order for S.D. to be covered under the policies, "property damage" must be caused by an "occurrence" as defined by the policy. The definition of occurrence requires that any damage that occurred must be accidental and not caused by intentional conduct in order to be covered. Florida courts have stated that "accident" under a typical commercial general liability policy means injuries or damage neither expected nor intended from the standpoint of the insured. See State Farm Fire & Cas. Co. v. CTC Dev. Corp, 720 So. 2d 1072, 1076 (1998).

FCCI argues that the *Lennar* and *Meltz* suits do not allege a recognized occurrence under Florida law that would trigger coverage of S.D. under its policies. FCCI claims that Breach of Contract, Breach of Warranty, and Products Liability claims are not considered occurrences, and therefore are not covered under the FCCI policies.

This Court agrees that a breach of contract claim does not constitute an "occurrence" as required by a CGL policy. See Auto-Owners Ins. co. v. Pozzi Window Co., 984 So.2d 1241 (2008). Thus, the allegation of breach of contract in the *Lennar* complaint is not an occurrence under the policies. Breach of warranty claims are not considered occurrences under CGL policies because such claims are not caused by an "accident." See Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241 (2008); Armstrong v. Land & Marine Applicators, Inc., 463 So.2d 1327 (La.App. 5 Cir., 1984); Kema Steel, Inc. v. Home Ins. Co., 153 Ariz. 315 (Ariz.App. 1986); Weedo v. Stone-E-Brick, 405 A.2d 788 (N.J. 1979) (holding breach of express and implied warranties are contract actions); Yegge v. Integrity Mut. Ins. Co., 534 N.W.2d 100 (Iowa 1995) (holding that the claims against the builder did not allege an "occurrence" under liability

11

policy since breach of contract, breach of express warranty, breach of implied warranty and fraud claims did not involve accidental conduct and were economic damages). A claim for products liability is essentially a breach of implied warranty claim so it is also not considered an "occurrence".

The Court finds there is no "occurrence" alleged in the *Lennar* and *Meltz* complaint for which S.D. is responsible. The allegations of breach of contract, breach of express warranty, breach of implied warranty, and products liability against S.D. are not occurrences under the policies. Therefore, summary judgment is proper in this matter.

### D.      Contractual Liability Exclusion

The claims against S.D. for "Breach of Contract" obviously are excluded by the Contractual Liability Exclusion in the policies.

In looking at the claims for breach of express and implied warranty (and products liability), there appears to be no published Florida appellate court decision on whether or not those claims are also excluded by the Contractual Liability Exclusion. FCCI has pointed to similar Florida Trial Court decisions involving the same FCCI policy form and the same underlying *Lennar* complaint. In <u>FCCI Commercial Ins. Co. v. Ocean Constr., Inc.</u>, Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Case Number 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, that was identical to the issue in this case and found that summary judgment was appropriate based, among other reasons, upon the Contractual Liability Exclusion. Most recently, on July 6, 2011, in <u>FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall</u>, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Case Number 10-CA-007389, Judge Becky A. Titus also analyzed the same claims against another installer, MDW, arising out of the same underlying *Lennar*

12

complaint.  As was done in Ocean, Judge Titus granted FCCI's Motion for Summary Judgment on the Contractual Liability Exclusion, amongst other reasons.

In looking at the cases from other jurisdictions, the majority of cases find that allegations of breach of warranty (express and implied) fall within the Contract Liability Exclusion.  The following cases provide examples:

> Cincinnati Ins. Co. v. Transport Graphics, Inc., Slip Copy, 2011 WL 2083960 (W.D.Mo., 2011) finds that "breach of contract and warranties are contractual in nature" and excluded.
>
> Hess v. Appleton Mfg. Co., 148 S.W. 179, 180 (Mo .Ct.App.1912) finds that "an action for a breach of warranty is founded on contract."
>
> Assurance Co. of Am. v. Admiral Ins. Co., Slip Copy, 2011 WL 1897589 (S.D.Ala., 2011) states that "Implied warranties are terms that are implied by law in a contract and would not exist apart from that contract. . . . The implied warranty at issue here would not exist were it not for the construction contract between Byrd Homes and Welch. . . . Coverage for count two is therefore also excluded by operation of the contractual liability exclusion of the Scottsdale policy."
>
> American Nat. Prop. & Cas. Co. v. Blocker, 165 F.Supp.2d 1288 (S.D.Ala., 2001) states that "any alleged liability for the breach of warranties claim necessarily depends upon the existence of the underlying contract."
>
> Ewing Constr. Co., Inc. v. Amerisure Ins. Co., Slip Copy, 2011 WL 1627047 (S.D.Tex., 2011) finding that breach of warranty is excluded by the contractual liability exclusion.
>
> Global Gear & Mach. Co., Inc. v. Capitol Indem. Co., Slip Copy, 2010 WL 3341464, (W.D.Ky., 2010) holds that "a breach of an express or implied warranty flowing from the contract" is not covered.  "The Capitol insurance policy does not apply to 'property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.'  Thus, Capitol does not owe a defense or indemnification with respect to Count I, Breach of Contracts, Count II, Breach of Express Warranties, or Count III, Breach of Implied Warranties."
>
> Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591 (C.A.3, 2009) holding that "Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims" because of

the contractual liability exclusion.

The Court finds these cases and Judge Gerald's and Titus' opinions persuasive

### E.    Pollution Exclusion

The Total Pollution Exclusion contained in the policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99) Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The claims in the underlying action arise solely from damage or injury resulting from the release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total Pollution Endorsements. The underlying plaintiffs have also sought relief in the form of a demand that S.D. monitor, remove, contain, treat, or respond to the Pollutants. This specific request is also precluded by the Total Pollution Exclusions.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies,

14

practically identical to the one in S.D.'s policies, were unambiguous and precluded coverage. <u>Id.</u> at 1138. Many other jurisdictions have addressed the same arguments as in the <u>Deni</u> briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. <u>See, e.g.,</u> <u>Economy Preferred Ins. Co. v. Grandadam</u>, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); <u>McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co.</u>, 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); <u>Tri County Serv. Co. v. Nationwide Mut. Ins. Co.</u>, 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the <u>Deni</u> decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. <u>See, e.g.,</u> <u>James River Ins. Co. v. Ground Down Eng'g Inc.</u>, 540 F.3d at 1275 (citing <u>Deni</u> in rejecting assertion that clearly written pollution exclusion is ambiguous); <u>Technical Coating Applicators, Inc.v. Tampa Hous. Auth.</u>, 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law). <u>See also</u> <u>General Fid. Ins. Co. v. Foster</u>, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing <u>Deni</u>). In a recent ruling in <u>Foster</u>, the United States District for the Southern District of Florida, entered an Order granting General Fidelity Insurance Company's Motion for Summary Judgment on a claim alleging damages from allegedly defective Chinese Drywall applying

15

Florida law to a total pollution exclusion. Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion. The underlying action alleges that the sulfide gases were emitted from defective drywall resulting damage to the property. The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions. See Auto Owners Ins. Co. v. City of Tampa Hous. Auth., 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); West Am. Ins. Co. v. Band & Desenberg, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly

16

thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")). In assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises. Id. at 1320. The court, citing Deni, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined. Id. at 1323-24. In determining whether something was an "irritant or contaminant" within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation'

17

or 'contamination.'" Id. at 1324 (quoting Nova, 424 F. Supp. 2d at 1325). Likewise, the United States District for the Southern District of Florida has recently ruled in applying Florida law that the damages allegedly caused by defective Chinese drywall are excluded by a total pollution exclusion. See Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are ambiguous. As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying action, the sulfide and other gases qualify as an "irritant" or "contaminant" for purposes of the pollution exclusions in S.D.'s policies. Without the presence of these gases, no irritation or contamination would have occurred. Because the underlying actions plainly alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. General Fid. Ins. Co. v. Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. decided March 24, 2011) and Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010). The General Fid. Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowner's policy. Although neither case

18

is binding upon this Court, this Court does find both persuasive.  In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to several similar Florida State Trial Court decision involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. In FCCI v. AL Bros., Inc., Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number:  10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case.  Also, in the same court, in FCCI Commercial Ins. Co. v. Ocean Constr., Inc., Case Number:  10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here. Judge Becky A. Titus also analyzed claims against an installer, MDW, analogous to the issues here, in FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Case Number 10-CA-007389.

The FCCI policies were identical in those cases and in this case.  Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken) Judge Gerald's Order dated June 6, 2011 (from which no appeal was taken), and Judge Titus' Order dated July 6, 2011, and even though they are not binding upon this Court, this Court finds these Orders to be persuasive and has adopted some of their language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions.  FCCI has no duty to defend or indemnify S.D. Construction, Inc. Accordingly, summary judgment is warranted.

## IV.   Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**.  The Court hereby enters a final judgment in favor of FCCI and against S.D. as follows:

1.   FCCI does not owe a duty to defend or indemnify S.D. in the underlying actions (*Lennar*, *Metz*) or any similar case alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2.   There is no covered "occurrence" alleged, as defined by the policies.

3.   Any damages alleged in the underlying actions are precluded from coverage by the unambiguous language of the Total Pollution Exclusions.

4.   FCCI does not owe a duty to defend or indemnify S.D. in the *Lennar* or *Metz* suits or any other complaint alleging breach of contract, breach of implied warranty, breach of express warranty, or products liability..

5.   There is no coverage available to S.D. under any of the FCCI policies.

**IT IS SO ORDERED**

July _____, 2011

_____
Judge Michele Towbin-Singer

MICHELE TOWBIN SINGER
JUL 2 0 20

20

IN THE CIRCUIT COURT OF THE
TWELFTH JUDICIAL CIRCUIT IN AND
FOR SARASOTA COUNTY, FLORIDA

FCCI COMMERCIAL INSURANCE
COMPANY,
      Plaintiff,

v.                                 Case Number:  10-CA-007389 NC

MDW DRYWALL, INC. f/k/a MCCOY
DRYWALL,
      Defendant.                           /

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on an Amended Motion for Summary Judgment filed by FCCI Commercial Insurance Company (FCCI) on March 30, 2011.  Upon Consideration of the Motion, the pertinent portions of the record, and oral argument by both sides heard in open Court on July 6, 2011, the Court enters the following Order.

**I.**     **Factual and Procedural Background**

This is a declaratory judgment action to determine insurance coverage for personal injury and property damage allegedly resulting from the use of defective Chinese drywall.  FCCI filed a declaratory judgment action on July 15, 2010, and amended it on August 6, 2010, seeking a declaration from this Court that FCCI does not owe a duty to defend or indemnify MDW Drywall, Inc. f/k/a McCoy Drywall (hereinafter "MDW") under any insurance policy(ies) FCCI issued to MDW with respect to actions relating to claims arising from allegedly defective Chinese drywall.  When comparing the pending underlying action to the plain language of the FCCI policies, it is clear that all underlying claims are not insured by or are excluded by language in the FCCI policies.  Accordingly, as a matter of law, FCCI does not owe a duty to defend and/or indemnify MDW in connection with any claim alleging defective Chinese drywall.

### A.    Underlying actions

MDW has been named as a defendant in *Lennar Homes, LLC f/k/a Lennar Homes, Inc. and U.S. Home Corporation v. Knauf GIPS KG, et al.*, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, 09-07901 CA 23.  In the *Lennar* action the plaintiffs allege that while working as a subcontractor for Lennar, MDW installed defective and deficient Chinese drywall that has damaged and corroded a number of items in homes built by Lennar, breaching its contract with Lennar.  The *Lennar* plaintiffs further allege they have incurred damages from the installation of the allegedly defective Chinese drywall.  (See *Lennar* complaint.)

The *Lennar* action alleges three causes of action against MDW: Breach of Express Warranty, Breach of Implied Warranty, and Breach of Contract.  (See *Lennar* Complaint.)  *Lennar* alleges that the drywall MDW installed is defective and, through testing, has shown to contaminate material and property in the homes. (See *Lennar* Complaint, p.12-16, ¶¶ 44-64.)  The plaintiffs in the underlying action allege that the drywall has caused corrosion and damage to personal property such as HVAC coils, certain electrical and plumbing components, and other affected materials and items. (See *Lennar* Complaint, p.13, ¶¶ 51-51.)  The *Lennar* suit seeks damages against MDW for breach of contract, including the costs of fully remediating and repairing the affected homes, which includes replacing the defective gypsum drywall and repairing or replacing the damaged Other Property in the affected homes. (See *Lennar* Complaint, p. 88 ¶ 526).  *Lennar* also seeks damages for costs associated with relocating its homeowners to temporary housing, damages for loss of goodwill and reputation, and other fees.  (See *Lennar* Complaint, p 89, ¶ 534.)  The *Lennar* plaintiffs have not alleged bodily injury damages. (See *Lennar* Complaint, p 14, ¶ 55.)

### B.    Current Dispute

FCCI issued two insurance policies to MDW for which MDW claims coverage may apply:

Policy Number CPP0004992-1 (effective 07/01/2005 through 07/01/2006); and

Policy Number CPP0006385-1 (effective 07/01/2006 through 04/21/2007)

Each of the FCCI policies CPP0004992-1 and CPP0006385-1 issued to MDW each contain

the following insuring agreement:

> SECTION I – COVERAGES COVERAGE A BODILY INJURY AND
> PROPERTY DAMAGE LIABILITY
> 1.    Insuring Agreement
>
> a.    We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property damage"
> to which this insurance applies. We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for "bodily injury" or "property damage" to
> which this insurance does not apply. We may, at our discretion,
> investigate any "occurrence" and settle any claim or "suit" that may
> result. . . .
>
> b.    This insurance applies to "bodily injury" and "property damage"
> only if:
> (1)    The "bodily injury" or "property damage" is caused by an
> "occurrence"...
> (2)    The    "bodily    injury"    or    "property    damage
> occurs during the policy period; and
> (3)    prior to the policy period no insured (or employee authorized
> by you knew, prior to the policy period, that the "bodily injury" or
> "property damage" occurred.

The FCCI policies CPP0004992-1 and CPP0006385-1 issued to MDW each contain the

following relevant definitions:

> SECTION V – DEFINITIONS
> "Bodily injury" means bodily injury, sickness or disease sustained by a
> person, including death resulting from any of these at any time.
>
> "Occurrence" means an accident, including continuous or repeated exposure
> to substantially the same general harmful conditions.
>
> "Property damage" means:

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The FCCI policies CPP0004992-1 and CPP0006385-1 issued to MDW each contain the following exclusion regarding damage to property:

  2.  Exclusions
    This insurance does not apply to:

    j.  Damage to Property

    "Property damage" to:
    (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
    (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    . . . .

    Paragraphs . . . (5) and (6) of this exclusion do not apply to liability assumed under a side-track agreement.

    Paragraph (6) of this exclusion does not apply to "Property damage" included in the "products-completed operations hazard".

The FCCI policies CPP0004992-1 and CPP0006385-1 issued to MDW each contain the following exclusion regarding damage to "your product":

  2.  Exclusions
    This insurance does not apply to:

    k.  Damage To Your Product
      "Property damage" to "your product" arising out of it or any part of it.

The FCCI policies CPP0004992-1 and CPP0006385-1 issued to MDW each contain the following exclusion regarding damage to "your work":

- 4 -

2.      Exclusions
        This insurance does not apply to:

        l.      Damage To Your Work
                "Property damage" to "your work" arising out of it or any
                part of it and included in the "products-completed operations
                hazard".

        This exclusion does not apply if the damaged work or the work out
        of which the damage arises was performed on your behalf by a
        subcontractor.

The FCCI policies CPP0004992-1 and CPP0006385-1 issued to MDW each contain the

following exclusion regarding damage to "impaired property":

2.      Exclusions
        This insurance does not apply to:

        m.      Damage To Impaired Property Or Property Not Physically
                Injured

                "Property damage" to "impaired property" or property that
                has not been physically injured, arising out of:
                (1)     A defect, deficiency, inadequacy or dangerous
                condition in "your product" or "your work"; or
                (2)     A delay or failure by you or anyone acting on your
                behalf to perform a contract or agreement in accordance with
                its terms.

        This exclusion does not apply to the loss of use of other property
        arising out of sudden and accidental physical injury to "your
        product" or "your work" after it has been put to its intended use.

The policy defines "your work" in the exclusions as follows:

"Your work":
a.      Means:
        (1)     Work or operations performed by you or on your behalf; and
        (2)     Materials, parts or equipment furnished in connection with
                such work or operations.
b.      Includes
        (1)     Warranties or representations made at any time with respect
                to the fitness, quality, durability, performance or use of "your
                work", and
        (2)     The providing of or failure to provide warnings or
                instructions

- 5 -

The policy defines "your product" in the exclusions as follows:

"Your product":
a.    Means:
    (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
        (a)    You;
        (b)    Others trading under your name; or
        (c)    A person or organization whose business or assets you have acquired; and
    (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
b.    Includes
    (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
    (2)    The providing of or failure to provide warnings or instructions.
c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

The policy defines "impaired property" in the exclusions as follows:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:
a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or
b.    Your fulfilling the terms of the contract or agreement.

The FCCI policies CPP0004992-1 and CPP0006385-1 issued to MDW each contain the following Total Pollution Exclusion:

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

- 6 -

Exclusion f. under Paragraph 2., Exclusions of Section I –
Coverage A – Bodily Injury And Property Damage Liability is
replaced by the following:
This insurance does not apply to:

f. Pollution

> (1) "Bodily injury" or "property damage" which would not
>     have occurred in whole or part but for the actual, alleged
>     or threatened discharge, dispersal, seepage, migration,
>     release or escape of "pollutants" at any time

> (2) Any loss, cost or expense arising out of any
>     > a) Request, demand, order or statutory or regulatory
>     >    requirement that any insured or others test for,
>     >    monitor, clean up, remove, contain, treat, detoxify
>     >    or neutralize, or in any way respond to, or assess
>     >    the effects of "pollutants," or
>     >    . . . .

FCCI policies CPP0004992-1 and CPP0006385-1 issued to MDW each define "pollutants"
as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot,
fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned
or reclaimed."

MDW is seeking coverage for the claims in the underlying action.  FCCI claims it has no
duty to defend MDW in the *Lennar* action against it because an occurrence has not been alleged for
which there is coverage under the MDW policies.  This Court finds that the allegations of Breach of
Contract and Breach of Warranty against MDW are not occurrences as defined under the FCCI
policies and thus there is no coverage for MDW under the policies.

This Court also finds that the compounds released by the sulfides and other excess gases are
pollutants within the meaning of the policies and the Pollution Exclusions apply.

## II.    Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue.  See Nationwide Mut. Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008).  The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact.  Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993).  If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact.  See Landers v. Milton, 370 So. 2d 368 (Fla. 1979).  If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment.  See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

## III.    Analysis

### A.    Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida and were issued and delivered in Florida to a Florida insured.  See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006).  MDW is exclusively located in Florida.  At all material times, MDW installed drywall in Florida.  The claims in the underlying action arise out of the alleged exposure to drywall installed by MDW in properties located in Florida.

### B.    Duty to Defend

FCCI asserts that it does not have a duty to defend MDW in the underlying actions because an occurrence has not been alleged and because of the Contractual Liability Exclusion.  FCCI also asserts it has no duty to defend MDW because the compounds and sulfide gases being released from

the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusions. When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured." Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where the *allegations show that coverage does not exist or a policy exclusion applies*. Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify"). As such, this Court need not look further than the underlying pleadings and the FCCI policies to render a determination on the duty to defend as a matter of law in this matter. The allegations against MDW for Breach of Contract and Breach of Warranty do not fit the definition of occurrence under the policy and are therefore not covered under the FCCI policies.

In addition, where a complaint is silent as to certain facts that are undisputed, the Court may look outside the allegations of the Complaint to those undisputed facts in determining the duty to defend. For example, in Nationwide Mut. Fire Ins. Co. v. Keen, 658 So. 2d 1101 (Fla. 4th DCA 1995) the Court held:

> Claimant argues that an ambiguity in the complaint requires a defense, citing Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810 (Fla. 1st DCA 1985). That may be true, but if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending. Tennessee Corp. v. Lamb Bros. Const. Co., 265 So.2d 533 (Fla. 2d DCA 1972), may be an aberration, but it is founded on logic and fairness.

See, also <u>Nateman v. Hartford Cas. Ins. Co.</u>, 544 So. 2d 1026 (Fla. 3d DCA 1989); <u>Wilson v. General Tavern,</u> 469 F.Supp.2d 1214 (S.D. Fla. 2006); <u>Underwriters at Lloyds v. STD Enterprises, Inc</u>, 395 F.Supp.2d 1142 (M.D. Fla. 2005).

It is undisputed that the plaintiffs in the underlying actions all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusions in the FCCI policies issued to MDW. Therefore, FCCI does not have a duty to defend or indemnify MDW in any claim arising out of any allegation that MDW installed allegedly defective Chinese drywall.

### C.   No Occurrence Alleged

The FCCI policies require that in order for MDW to be covered under the policies, "property damage" must be caused by an "occurrence" as defined by the policy. The definition of occurrence requires that any damage that occurred must be accidental and not caused by intentional conduct in order to be covered. Florida courts have stated that "accident" under a typical commercial general liability policy means injuries or damage neither expected nor intended from the standpoint of the insured. <u>See</u> <u>State Farm Fire & Cas. Co. v. CTC Development Corp</u>, 720 So. 2d 1072, 1076 (1998).

FCCI argues that the *Lennar* suit does not allege a recognized occurrence under Florida law that would trigger coverage of MDW under its policies. FCCI claims that Breach of Contract and Breach of Warranty claims are not considered occurrences, and therefore are not covered under the FCCI policies.

This Court agrees that a breach of contract claim does not constitute an "occurrence" as required by a CGL policy. <u>See</u> <u>Auto-Owners Ins. co. v. Pozzi Window Co.</u>, 984 So.2d 1241 (2008).

Thus, the allegation of breach of contract in the *Lennar* complaint is not an occurrence under the policies. Breach of warranty claims are not considered occurrences under CGL policies because such claims are not caused by an "accident." See Auto-Owners Ins. co. v. Pozzi Window Co., 984 So.2d 1241 (2008); Armstrong v. Land & Marine Applicators, Inc., 463 So.2d 1327 (La.App. 5 Cir., 1984); Kema Steel, Inc. v. Home Ins. Co., 153 Ariz. 315 (Ariz.App. 1986); Weedo v. Stone-E-Brick, 405 A.2d 788 (N.J. 1979) (holding breach of express and implied warranties are contract actions); Yegge v. Integrity Mut. Ins. Co., 534 N.W.2d 100 (Iowa 1995) (holding that the claims against the builder did not allege an "occurrence" under liability policy since breach of contract, breach of express warranty, breach of implied warranty and fraud claims did not involve accidental conduct and were economic damages).

The Court finds there is no "occurrence" alleged in the *Lennar* complaint for which MDW is responsible. The allegations of breach of contract, breach of express warranty, and breach of implied warranty against MDW are not occurrences under the policies. Therefore, summary judgment is proper in this matter.

**D.   Contractual Liability Exclusion**

The *Lennar* complaint alleges negligence on the part of various parties (Taishan, BNBM, etc.) but does not allege negligence on the part of MDW. The only claims against MDW are for "Breach of Contract" (Count LXIII), "Breach of Express Warranty" (Count LXIV), and "Breach of Implied Warranty" (Count LXV). Obviously, the allegations of Count LXIII are excluded by the Contractual Liability Exclusion in the policies.

In looking at the claims for breach of express and implied warranty, there appears to be no published Florida appellate court decision on whether or not those claims are also excluded by the Contractual Liability Exclusion. FCCI has pointed to a similar Florida Trial Court decision

involving the same FCCI policy form and the same underlying *Lennar* complaint.   In FCCI

Commercial Insurance Company v. Ocean Construction, Inc., Circuit Court of the Twentieth

Judicial Circuit in and for Lee County,Case Number 10-CA-2841, Judge Lynn Gerald Jr. also

analyzed claims against an installer, Ocean, that was identical to the issue in this case and found that

summary judgment was appropriate based, among other reasons, upon the Contractual Liability

Exclusion.

       In looking at the cases from other jurisdictions, the majority of cases find that allegations of

breach of warranty (express and implied) fall within the Contract Liability Exclusion.   The

following cases provide examples:

> Cincinnati Ins. Co. v. Transport Graphics, Inc., Slip Copy, 2011 WL 2083960
> (W.D.Mo., 2011) finds that "breach of contract and warranties are contractual in
> nature" and excluded.
>
> Hess v. Appleton Mfg. Co., 148 S.W. 179, 180 (Mo .Ct.App.1912) finds that "an
> action for a breach of warranty is founded on contract."
>
> Assurance Co. of America v. Admiral Ins. Co., Slip Copy, 2011 WL 1897589
> (S.D.Ala., 2011) states that "Implied warranties are terms that are implied by law in
> a contract and would not exist apart from that contract. . . . The implied warranty at
> issue here would not exist were it not for the construction contract between Byrd
> Homes and Welch. . . . Coverage for count two is therefore also excluded by
> operation of the contractual liability exclusion of the Scottsdale policy."
>
> American Nat. Property and Cas. Co. v. Blocker, 165 F.Supp.2d 1288 (S.D.Ala.,
> 2001) states that "any alleged liability for the breach of warranties claim necessarily
> depends upon the existence of the underlying contract."
>
> Ewing Const. Co., Inc. v. Amerisure Ins. Co., Slip Copy, 2011 WL 1627047
> (S.D.Tex., 2011) finding that breach of warranty is excluded by the contractual
> liability exclusion.
>
> Global Gear & Mach. Co., Inc. v. Capitol Indem. Co., Slip Copy, 2010 WL
> 3341464, (W.D.Ky., 2010) holds that "a breach of an express or implied warranty
> flowing from the contract" is not covered.   "The Capitol insurance policy does not
> apply to 'property damage for which the insured is obligated to pay damages by
> reason of the assumption of liability in a contract or agreement.'   Thus, Capitol does
> not owe a defense or indemnification with respect to Count I, Breach of Contracts,
> Count II, Breach of Express Warranties, or Count III, Breach of Implied
> Warranties."

> Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591 (C.A.3, 2009) holding that "Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims" because of the contractual liability exclusion.

The Court finds these cases and Judge Gerald's opinion persuasive particularly in a case such as this one where there is absolutely no allegation that MDW was in any way negligent. The only allegations against MDW arise solely out of breach of contract, breach of implied warranty and breach of express warranty.

### E.    Pollution Exclusion

The Total Pollution Exclusion contained in the policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99)  Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The claims in the underlying action arise solely from damage or injury resulting from the release of sulfide and other noxious gases.  This is clearly excluded from coverage by the Total Pollution Endorsements.  The underlying plaintiffs have also sought relief in the form of a demand that MDW monitor, remove, contain, treat, or respond to the Pollutants. This specific request is also precluded by the Total Pollution Exclusions.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

- 13 -

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in MDW's policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. See, e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators, Inc.v. Tampa Housing Authority, 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law). see also General Fidelity Insurance Co. v. Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment,

- 14 -

D.E. 102) (citing <u>Deni</u>).  In a recent ruling in <u>Foster</u>, the United States District for the Southern District of Florida, entered an Order granting General Fidelity Insurance Company's Motion for Summary Judgment on a claim alleging damages from allegedly defective Chinese Drywall applying Florida law to a total pollution exclusion.  Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion.  The underlying action alleges that the sulfide gases were emitted from defective drywall resulting damage to the property.  The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions.  See <u>Auto Owners Ins. Co. v. City of Tampa Housing Authority</u>, 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); <u>West American Ins. Co. v. Band & Desenberg</u>, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building).  It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall.  It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants."  There is no dispute that the Chinese drywall has released sulfuric

- 15 -

and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")). In assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indemnity Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises. Id. at 1320. The court, citing Deni, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined. Id. at 1323-24. In determining whether something was an "irritant or contaminant"

- 16 -

within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" Id. at 1324 (quoting Nova, 424 F. Supp. 2d at 1325).   Likewise, the United States District for the Southern District of Florida has recently ruled in applying Florida law that the damages allegedly caused by defective Chinese drywall are excluded by a total pollution exclusion.   See Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are ambiguous.   As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying action, the sulfide and other gases qualify as an "irritant" or "contaminant" for purposes of the pollution exclusions in MDW's policies.   Without the presence of these gases, no irritation or contamination would have occurred.   Because the underlying actions plainly alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall.   General Fidelity Ins. Co. v. Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. decided March 24, 2011) and   Travco Ins. Co.

- 17 -

v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010).  The General Fidelity Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowner's policy.  Although neither case is binding upon this Court, this Court does find both persuasive.  In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to two similar Florida State Trial Court decision involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. In FCCI v AL Brothers, Inc., Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number:  10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case.  Also, in the same court, in FCCI Commercial Insurance Company v. Ocean Construction, Inc., Case Number:  10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here.

The FCCI policies were identical in those cases and in this case.  Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken) and Judge Gerald's Order dated June 6, 2011, and even though they are not binding upon this Court, this Court finds these Orders to be persuasive and has adopted some of their language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions.  FCCI has no duty to defend or indemnify MDW Construction, Inc.  Accordingly, summary judgment is warranted.

## IV.    Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**.  The Court hereby enters a final judgment in favor of FCCI and against MDW as follows:

1.    FCCI does not owe a duty to defend or indemnify MDW in the underlying action (*Lennar*) or any similar case alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2.    There is no covered "occurrence" alleged, as defined by the policies.

3.    Any damages alleged in the underlying actions are precluded from coverage by the unambiguous language of the Total Pollution Exclusions.

4.    FCCI does not owe a duty to defend or indemnify MDW in the *Lennar* suit or any other complaint alleging breach of contract, breach of implied warranty, or breach of express warranty.

5.    There is no coverage available to MDW under any of the FCCI policies.

**IT IS SO ORDERED**

July ___6___, 2011

ORIGINAL SIGNED

JUL 0 6 2011

BECKY A. TITUS
CIRCUIT JUDGE

_____
Judge Charles E. Roberts
Sarasota County

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

FCCI ADVANTAGE INSURANCE
COMPANY,
       Plaintiff,

Case Number:  10-CA-002862-----

v.

GULFCOAST ENGINEERING, LLC,
       Defendant.
_____ /



RECEIVED
AUG 08 2011
By_____

## <u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

This matter comes before this court on a Motion for Summary Judgment filed by FCCI Advantage Insurance Company (FCCI) on May 31, 2011.  Upon Consideration of the Motion, the pertinent portions of the record, and oral argument heard in open Court on August 1, 2011, the Court enters the following Order.

**I.**    **Factual and Procedural Background**

This is a declaratory judgment action to determine insurance coverage for personal injury and property damage allegedly resulting from the use of allegedly defective Chinese drywall.  FCCI filed a declaratory judgment action on July 16, 2010, seeking a declaration from this Court that FCCI does not owe a duty to defend or indemnify Gulfcoast Engineering, LLC (hereinafter "Gulfcoast") under any insurance policy(ies) FCCI issued to Gulfcoast with respect to the action relating to claims arising from allegedly defective Chinese drywall.  When comparing the pending underlying complaint to the plain language of the FCCI policies, it is clear that all underlying claims are not insured by or are excluded by language in the FCCI policies.  Accordingly, as a matter of law, FCCI does not owe a duty to defend and indemnify Gulfcoast in connection with any claim alleging defective Chinese drywall.

## A.   Underlying action

Gulfcoast has been named as a defendant in the following underlying action: *Sean and Beth Payton, et al. v. Knauf GIPS KG, Residential Drywall, et al.*, USDC, EDLA, Case No. 2:09-cv-07628-EEF-JCW ("*Payton*").  The plaintiffs in the underlying action allege Gulfcoast is liable for damages resulting from the installation of allegedly defective Chinese drywall.  (See *Payton* Complaint, p. 494, ¶ 2555.)  Gulfcoast is seeking coverage for the claims in the underlying action. Gulfcoast does not dispute that it was named as a defendant contractor and installer of drywall in the *Payton* complaint nor does Gulfcoast dispute that the *Payton* complaint alleges it is liable for such damages. (See Requests to Admit dated June 21, 2011.)

*Payton* alleges that Gulfcoast installed defective Chinese drywall that emitted sulfides and other noxious gases (or "off-gases").  (See *Payton* Complaint, p. 506, ¶ 2611.)  Gulfcoast does not dispute that the *Payton* complaint makes such allegation. (See Requests to Admit dated June 21, 2011.)

The plaintiffs in the underlying action allege that the sulfides and other noxious gases have caused corrosion and damage to personal property such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances, and other metal surfaces and property and that exposure to sulfide and other noxious gases caused bodily injury.  (See *Payton* Complaint, p. 506, ¶¶ 2612-13.)  Gulfcoast does not dispute that the *Payton* complaint makes such allegation. (See Requests to Admit dated June 21, 2011.)

The underlying action seeks damages against Gulfcoast for the costs of inspection, the cost to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes, and personal property, and diminution of property value.  (See *Payton* Complaint, pp. 507-

508, ¶ 2619.) Gulfcoast does not dispute that the *Payton* complaint makes such allegation. (See Requests to Admit dated June 21, 2011.)

Some plaintiffs in the underlying action also claim damages for injuries as a result of allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems, and other health problems. (See *Payton* Complaint, p. 506, ¶ 2613.) Gulfcoast does not dispute that the *Payton* complaint makes such allegation. (See Requests to Admit dated June 21, 2011.)

**B.     Current dispute**

FCCI issued three General Liability insurance policies to Gulfcoast for which Gulfcoast claims coverage may apply:

Policy number CPP0008366-1, effective 05/08/2008 through 05/08/2009

Policy number CPP0008366-2, effective 05/08/2009 through 05/08/2010

Policy number CPP0008366-3, effective 05/08/2010 through 05/08/2011

Gulfcoast does not dispute the truth and accuracy of the policies attached to the declaratory judgment complaint or the policy number and effective date provided herein. (See Requests to Admit dated June 21, 2011.)

The FCCI policies CPP0008366-1, CPP0008366-2 and CPP0008366-3 issued to Gulfcoast each contain the following Total Pollution Exclusion, CG 21 49 09 99:

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f.      Pollution

.

> (1)   "Bodily injury" or "property damage" which would
> not have occurred in whole or part but for the actual,
> alleged or threatened discharge, dispersal, seepage,
> migration, release or escape of "pollutants" at any
> time
>
> (2)   Any loss, cost or expense arising out of any
>   a)   Request, demand, order or statutory or regulatory
>        requirement that any insured or others test for,
>        monitor, clean up, remove, contain, treat, detoxify
>        or neutralize, or in any way respond to, or assess
>        the effects of "pollutants",. . .
>   . . .

FCCI policies CPP0008366-1, CPP0008366-2, and CPP0008366-3 define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste Waste includes materials to be recycled, reconditioned or reclaimed."

Gulfcoast is seeking coverage for the claims in the underlying action.  Gulfcoast does not dispute that each of the policies contains a Total Pollution Exclusion Endorsement. (See Requests to Admit dated June 21, 2011.)

FCCI claims it has no duty to defend Gulfcoast in the action against it because the injuries and damages from the Chinese drywall fall under the policies' Pollution Exclusion.  This Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policy and the Pollution Exclusion does apply.

## II.   Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue.  See Nationwide Mutual Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008).  The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact.  Lenhal Realty, Inc. v.

Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact. See Landers v. Milton, 370 So. 2d 368 (Fla. 1979). If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment. See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

## III.   Analysis

### A.   Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida, issued and delivered in Florida to a Florida insured, and the homes upon which Gulfcoast allegedly installed drywall were located in Florida. See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). Gulfcoast is a dissolved Florida Corporation that was exclusively located in and doing business in Florida. At all material times, Gulfcoast installed drywall in Florida. The claims in the underlying action arise out of the alleged exposure to drywall installed by Gulfcoast in properties located in Florida. Gulfcoast does not dispute the application of Florida law to this matter.

### B.   Duty to Defend

FCCI asserts that it does not have a duty to defend Gulfcoast in the underlying action because the compounds and sulfide gases being released from the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusion. When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured." Philadephia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319,

1322 (S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where the allegations show that coverage does not exist or a policy exclusion applies. Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also, Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify"). As such, this Court need not look further than the underlying pleadings and the FCCI policies to render a determination that FCCI does not have a duty to defend Gulfcoast. The plaintiffs in the underlying action all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusion in the FCCI policies issued to Gulfcoast. Therefore, FCCI does not have a duty to defend or indemnify Gulfcoast in any claim arising out of any allegation that Gulfcoast installed allegedly defective Chinese drywall.

### C.    Pollution Exclusion

The Total Pollution Exclusion contained in the General Liability policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99.) Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The claims in the underlying action arise solely from damage or injury resulting from the release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total Pollution Endorsement. The underlying plaintiffs have also sought relief in the form of a demand that Gulfcoast monitor, remove, contain, treat, or respond to the Pollutants. This specific request is also precluded by the Total Pollution Exclusion.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in Gulfcoast' policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising

out of the release of pollutants").

Without exception, every Federal court applying Florida law since the <u>Deni</u> decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. <u>See</u>, e.g., <u>James River Ins. Co. v. Ground Down Eng'g Inc.</u>, 540 F.3d at 1275 (citing <u>Deni</u> in rejecting assertion that clearly written pollution exclusion is ambiguous); <u>Technical Coating Applicators, Inc. v. Tampa Hous. Auth.</u>, 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law). Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion. The underlying action alleges that the sulfide gases were emitted from defective drywall resulting in their bodily injury or damage to their property. (<u>See</u> e.g., <em>Rogers</em> Complaint, p. 137-38, ¶ 681-84.)

The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions. <u>See Auto Owners Ins. Co. v. City of Tampa Hous. Auth.</u>, 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); <u>West Am. Ins. Co. v. Band & Desenberg</u>, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant

dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant -- 'irritant' and 'contaminant' -- are not defined, the drafter of a policy need not define each word in the policy ad infinitum . . . ")). In assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F.

Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises. Id. at 1320. The court, citing Deni, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined. Id. at 1323-24. In determining whether something was an "irritant or contaminant" within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" Id. at 1324 (quoting Nova, 424 F. Supp. 2d at 1325).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are ambiguous. As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying action, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the Total Pollution Exclusion. Without the presence of these gases, no irritation or contamination would have occurred. Because the underlying action plainly alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. Gen. Fid. Ins. Co. v.

- 10 -

Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. FL decided March 24, 2011) and Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010).   The Gen. Fid. Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy, and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowners policy.  Although neither case is binding upon this Court, this Court does find both persuasive.  In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to several similar Florida State Trial Court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall.  In FCCI Commercial Ins. Co. v. AL Bros., Inc., Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number:  10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case.  Also, in the same court, in FCCI Commercial Ins. Co. v. Ocean Constr., Inc., Case Number:  10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here. Judge Becky A. Titus also analyzed claims against an installer, MDW, analogous to the issues here, in FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Case Number 10-CA-007389.  Lastly, in FCCI Commercial Ins. Co. v. S.D. & Assocs., Inc., in the Circuit Court of the Seventeenth Judicial circuit in and for Broward County, Case Number: 10-29152-18, Judge Michele Towbin-Singer analyzed the same exact claims against another installer, S.D. & Associates, Inc.

The FCCI policies were identical in those cases and in this case.  Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken) Judge Gerald's Order dated June 6, 2011 (from which no appeal was taken), Judge Titus' Order dated July 6, 2011, and Judge Towbin-Singer's Order dated July 20, 2011, and even though they are not binding upon this

Court, this Court finds these Orders to be persuasive and has adopted some of their language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions. FCCI has no duty to defend or indemnify Gulfcoast Engineering, LLC. Accordingly, summary judgment is warranted.

**IV.   Conclusion**

FCCI's Motion for Summary Judgment is hereby **GRANTED**. The Court hereby enters a final judgment in favor of FCCI and against Gulfcoast as follows:

1.    FCCI does not owe a duty to defend or indemnify Gulfcoast in the underlying action (*Payton*) or any similar case alleging bodily injury or property damage caused in whole or in part from allegedly defective Chinese drywall.

2.    Any damages alleged in the underlying action are precluded from coverage by the unambiguous language of the Total Pollution Exclusion.

3.    There is no coverage available to Gulfcoast under the FCCI policies.

**IT IS SO ORDERED this** ____ **day of August, 2011.**

/s/ Hon. Sherra Winesett
_____
Judge Sherra Winesett

Deborah Hamshare
Judicial Assistant

- 12 -

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR CHARLOTTE COUNTY, FLORIDA

FCCI COMMERCIAL INSURANCE
COMPANY,
   Plaintiff,        Case Number: 102979-CA

v.

SHIRLEY CONSTRUCTION AND
DRYWALL, INC.,
   Defendant.        /
_____

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on a Motion for Summary Judgment filed by FCCI

Commercial Insurance Company (FCCI) on May 31, 2011. Upon Consideration of the Motion, the

pertinent portions of the record, and oral argument heard in open Court on August 1, 2011, the

Court enters the following Order.

### I.  Factual and Procedural Background

This is a declaratory judgment action to determine insurance coverage for personal injury

and property damage allegedly resulting from the use of defective Chinese drywall. FCCI filed a

declaratory judgment action on July 15, 2010 seeking a declaration from this Court that FCCI does

not owe a duty to defend or indemnify Shirley Construction and Drywall, Inc. (hereinafter

"Shirley") under any insurance policy(ies) FCCI issued to Shirley with respect to claims arising

from allegedly defective Chinese drywall. The complaint was amended on December 1, 2010.

When comparing the claims to the plain language of the FCCI policies, it is clear that all underlying

claims are not insured by or are excluded by language in the FCCI policies. Accordingly, as a

matter of law, FCCI does not owe a duty to defend and indemnify Shirley in connection with any

claim alleging defective Chinese drywall.

### A.   Underlying Claims

The underlying claim alleges that Shirley installed defective Chinese drywall. (See May 29, 2009 Taylor Morrison claim Shirley tendered to FCCI, Exhibit "1" to Plaintiff's Motion for Summary Judgment. ("Taylor Morrison Claim").  Taylor Morrison alleges claims have been made against it relative to drywall provided and installed by Shirley in residences constructed under certain subcontract agreements.  The Taylor Morrison claim demands Shirley remedy any defects in material and workmanship and that Shirley assume the defense and indemnification of Taylor Morrison for any claims made against Taylor Morrison with respect to drywall provided and installed by Shirley.  Further, the Taylor Morrison claim demands reimbursement of expenses incurred by Taylor Morrison in responding to and defending claims made relative to drywall provided and installed by Shirley. (See Taylor Morrison Claim.)

### B.   Current Dispute

FCCI issued several commercial insurance policies to Shirley for which Shirley claims coverage may apply.  FCCI issued the following Commercial Package policies that include Commercial General Liability coverage which is at issue:

Policy number CPP0000591-4 effective 03/01/2005 through 03/01/2006;

Policy number CPP0000591-5 effective 03/01/2006 through 03/01/2007;

Policy number CPP0000591-6 effective 03/01/2007 through 03/01/2008;

Each of the FCCI Commercial Package Policies issued to Shirley contains the following insuring agreement:

> SECTION I – COVERAGES COVERAGE A BODILY INJURY AND
> PROPERTY DAMAGE LIABILITY
> 1.    Insuring Agreement
>
> > a.      We will pay those sums that the insured becomes legally
> > obligated to pay as damages because of "bodily injury" or

"property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence"…

    (2)    The "bodily injury" or "property damage" occurs during the policy period; and

    (3)    prior to the policy period no insured (or employee authorized by you knew, prior to the policy period, that the "bodily injury" or "property damage" occurred.

The FCCI policies issued to Shirley each also include the following relevant definitions:

SECTION V – DEFINITIONS
"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

The FCCI policies issued to Shirley each contain the following exclusion regarding damage to property:

2.    Exclusions

This insurance does not apply to:

- 3 -

j.      Damage to Property
"Property damage" to:

        (5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

        (6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraphs . . . (5) and (6) of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph (6) of this exclusion does not apply to "Property damage" included in the "products-completed operations hazard".

The FCCI policies issued to Shirley each contain the following exclusion regarding damage to "your product":

    2.      Exclusions
This insurance does not apply to:

        k.      Damage To Your Product
"Property damage" to "your product" arising out of it or any part of it.

The FCCI policies issued to Shirley each contain the following exclusion regarding damage to "your work":

    2.      Exclusions
This insurance does not apply to:

        l.      Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The FCCI policies issued to Shirley each contain the following exclusion regarding damage to "impaired property":

- 4 -

2.    Exclusions
This insurance does not apply to:

m.    Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The policies define "your work" in the exclusions as follows:

"Your work":
a.    Means:
(1)    Work or operations performed by you or on your behalf; and
(2)    Materials, parts or equipment furnished in connection with such work or operations.

b.    Includes
(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
(2)    The providing of or failure to provide warnings or instructions

The policies define "your product" in the exclusions as follows:

"Your product":
a.    Means:
(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(a)    You;
(b)    Others trading under your name; or
(c)    A person or organization whose business or assets you have acquired; and
(2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b.      Includes
          (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
          (2)    The providing of or failure to provide warnings or instructions.
   c.      Does not include vending machines or other property rented to or located for the use of others but not sold.

The policies define "impaired property" in the exclusions as follows:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:
a.      The repair, replacement, adjustment or removal of "your product" or "your work"; or
b.      Your fulfilling the terms of the contract or agreement.

The FCCI Commercial Package Policies issued to Shirley each contain the following Total Pollution Exclusion, CG 21 49 09 99:

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f.      Pollution

      (1)    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time

      (2)    Any loss, cost or expense arising out of any

a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants,". . .

. . .

The FCCI policies define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

FCCI also issued the following Commercial Umbrella policies to Shirley that are at issue:

Policy number UMB0004639-1 effective 09/15/2006 through 09/15/2007

Policy number UMB0004639-2 effective 09/15/2007 through 09/15/2008

The Commercial Umbrella policies contain the following insuring agreement:

We will pay on behalf of the insured those sums in excess of the Self Insured Retention that the insured becomes legally obligated to pay as damages because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury to     which this insurance applies.

"Occurrence" is defined in relevant part under the policies as follows:

An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in Bodily Injury or Property Damage, or . . .

Also, each of the Commercial Umbrella policies contains Endorsement UMB 066 (02-99), Pollution Exclusion—Total:

COMMERCIAL UMBRELLA LIABILITY

UMB 066 (02-99)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
POLLUTION EXCLUSION – TOTAL

This endorsement modifies Insurance provided under the following

COMMERCIAL UMBRELLA LIABILITY POLICY
Exclusion g under paragraph 1, C - Exclusions (section I - Coverage) is deleted and replaced by the follows

g    To Pollution

(1) Bodily Injury or Property Damage which would not have occurred In whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants at any time . . .

"Pollutant" is defined under the policy as:

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste   Waste includes materials to be recycled, reconditioned or reclaimed

Shirley is seeking coverage for the Taylor Morrison claim.  FCCI claims it has no duty to defend or indemnify Shirley for the Taylor Morrison claim because the injuries and damages from the Chinese drywall fall under the policies' Pollution Exclusion.  FCCI also argues that the excessive amounts of sulfides and excess gases that compromise the drywall in question are "pollutants," and therefore FCCI does not owe a duty to defend Shirley in the underlying actions nor is FCCI required to indemnify it.

This Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policies and the Total Pollution Exclusion applies.

**II.    Standard of Review**

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue.  See Nationwide Mut. Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008).  The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact.  Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993).  If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact.  See Landers v. Milton, 370 So.

- 8 -

2d 368 (Fla. 1979).  If there are no disputed issues as to any material fact, the court may decide the

issue by summary judgment.  See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App.

1971); Fla. R. Civ. P. 1.510.

### III.    Analysis

#### A.    Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action

because the policies were executed in Florida and were issued and delivered in Florida to a Florida

insured.  See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006).  Shirley is

exclusively located in Florida.  At all material times, Shirley installed drywall in Florida.  The

underlying claims arise out of the alleged exposure to drywall installed by Shirley in properties

located in Florida.

#### B.    Duty to Defend

FCCI asserts that it does not have a duty to defend Shirley in the underlying claim because

the compounds and sulfide gases being released from the defective drywall qualify as "pollutants,"

and the damages and injuries caused are excluded from coverage by the Pollution Exclusion.  FCCI

also asserts that it does not have a duty to defend Shirley against the underlying claim because the

claim alleges damages to the work and product of Shirley which is excluded by the business risk

exclusions and the impaired property exclusion.  When determining whether an insurer has a duty to

defend, a court "must look to the allegations contained within the four corners of the complaint in

the underlying action against insured."  Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.,

595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009).  A court should analyze the insurance policy's

language in light of the facts contained within the underlying complaint only.  Id. at 1322-23.  There

is no duty to defend where the allegations show that coverage does not exist or a policy exclusion

applies. <u>Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp.</u>, 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. <u>Nova Cas. Co. v. Waserstein</u>, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); <u>see also</u>, <u>Wilson</u>, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify").

In addition, where a claim is silent as to certain facts that are undisputed, the Court may look outside the allegations to those undisputed facts in determining the duty to defend. For example, in <u>Nationwide Mut. Fire Ins. Co. v. Keen</u>, 658 So. 2d 1101 (Fla. 4th DCA 1995) the Court held:

> Claimant argues that an ambiguity in the complaint requires a defense, citing <u>Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.</u>, 470 So.2d 810 (Fla. 1st DCA 1985). That may be true, but if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending. <u>Tennessee Corp. v. Lamb Bros. Constr. Co.</u>, 265 So.2d 533 (Fla. 2d DCA 1972), may be an aberration, but it is founded on logic and fairness.

<u>See, also</u> <u>Nateman v. Hartford Cas. Ins. Co.</u>, 544 So. 2d 1026 (Fla. 3d DCA 1989); <u>Wilson v. General Tavern</u>, 469 F.Supp.2d 1214 (S.D. Fla. 2006); <u>Underwriters at Lloyds v. STD Enterps., Inc.</u>, 395 F.Supp.2d 1142 (M.D. Fla. 2005). It is undisputed that the plaintiffs in the underlying claims all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusion in the FCCI policies issued to Shirley. Therefore, FCCI does not have a duty to defend or indemnify Shirley in any claim arising out of any allegation that Shirley installed allegedly defective Chinese drywall.

## C.     Pollution Exclusion

The Total Pollution Exclusion contained in the General Liability policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole

or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99; UMB 066 0299) Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The underlying claims arise solely from damage or injury resulting from the release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total Pollution Endorsements.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in Shirley's policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97

(1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. See, e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators, Inc. v. Tampa Hous. Auth., 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law); see also Gen. Fid. Ins. Co. v. Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni). In a recent ruling in Foster, the United States District for the Southern District of Florida, entered an Order granting General Fidelity Insurance Company's Motion for Summary Judgment on a claim alleging damages from allegedly defective Chinese Drywall applying Florida law to a total pollution exclusion. Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion. The underlying claims allege that the sulfide gases were emitted from defective drywall resulting damage to the property. The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal,

- 12 -

release, escape, seepage or migration," as defined under pollution exclusions. <u>See</u> <u>Auto Owners Ins.</u>
<u>Co. v. City of Tampa Hous. Auth.</u>, 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and
inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises
from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we
therefore agree with the district court that the exclusion clause bars coverage under the policy");
<u>West Am. Ins. Co. v. Band & Desenberg</u>, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion
at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system
transported air-borne contaminants into the insured's office building).  It is obvious in this matter
that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases
from the drywall.  It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and
discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are
"contaminants" and/or "irritants."  There is no dispute that the Chinese drywall has released sulfuric
and other gases into the underlying plaintiffs' homes.  When determining whether a substance
qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant,"
Florida courts look to whether the substance had a "particular effect commonly thought of as
'irritation' or 'contamination.'" <u>Nova Cas. Co. v. Waserstein</u>, 424 F. Supp. 2d 1325, 1334 (S.D.
Fla. 2006) (microbial agents as contaminant); <u>see also</u> <u>Deni</u>, 711 So.2d at 1139 (ammonia fumes as
irritant).  Florida courts have continually rejected attempts to find policy ambiguity associated with
the terms "irritant" and "contaminant" under a pollution exclusion. <u>See</u> <u>Deni</u>, 711 So. 2d at 1139
(citing <u>Titan Holding Syndicate, Inc. v. City of Keene</u>, 898 F.2d 265, 269 (1st Cir. 1990)
("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not
defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")).  In

assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises. Id. at 1320. The court, citing Deni, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined. Id. at 1323-24. In determining whether something was an "irritant or contaminant" within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" Id. at 1324 (quoting Nova, 424 F. Supp. 2d at 1325). Likewise, the United States District for the Southern District of Florida has recently ruled in applying Florida law that the damages allegedly caused by defective Chinese drywall are excluded by a total pollution exclusion. See Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are

- 14 -

ambiguous.   As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying claims, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the pollution exclusions in Shirley's policies.  Without the presence of these gases, no irritation or contamination would have occurred.  Because the underlying claims alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall.  <u>Gen. Fid. Ins. Co. v. Foster</u>, Case Number 09-80743-Civ, (U.S.D.C. S.D. FL decided March 24, 2011) and <u>Travco Ins. Co. v. Ward</u>, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010).   The <u>Gen. Fid. Ins. Co. v. Foster</u> case involved an identical pollution exclusion in a CGL policy and <u>Travco Ins. Co. v. Ward</u> involved a similar pollution exclusion in a homeowner's policy.  Although neither case is binding upon this Court, this Court does find both persuasive.  In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to several similar Florida State Trial Court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. In <u>FCCI Commercial Ins. Co. v. AL Bros., Inc.</u>, Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number: 10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case.  Also, in

the same court, in <u>FCCI Commercial Ins. Co. v. Ocean Constr., Inc.</u>, Case Number: 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here. Judge Becky A. Titus also analyzed claims against an installer, MDW, analogous to the issues here, in <u>FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall</u>, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Case Number 10-CA-007389. Lastly, in <u>FCCI Commercial Ins. Co. v. S.D. & Assocs., Inc.</u>, in the Circuit Court of the Seventeenth Judicial circuit in and for Broward County, Case Number: 10-29152-18, Judge Michele Towbin-Singer analyzed the same exact claims against another installer, S.D. & Associates, Inc.

The FCCI policies were identical in those cases and in this case. Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken) Judge Gerald's Order dated June 6, 2011 (from which no appeal was taken), Judge Titus' Order dated July 6, 2011, and Judge Towbin-Singer's Order dated July 20, 2011, and even though they are not binding upon this Court, this Court finds these Orders to be persuasive and has adopted some of their language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions. FCCI has no duty to defend or indemnify Shirley Construction and Drywall, Inc. Accordingly, summary judgment is warranted.

**D.    "Your work" and "Your product" exclusion**

The "your work" exclusion contained in the FCCI policies eliminates coverage for damage to the actual work completed by Shirley. <u>See Auto-Owners Ins. Co. v. Pozzi Window Co.</u>, 984 So.2d 1241 (Fla. 2008). A "your work" exclusion is one of the "business risk" exclusions. The purpose of "business risk exclusions" is to ensure liability for faulty or defective workmanship is properly allocated between the insurer and insured. <u>See LaMarche v. Shelby Mut. Ins. Co.</u>, 390 So. 2d 325, 326 (Fla. 1980). In addition to the fruit of an insured's labor, the "your work" exclusion

also applies to the materials an insured uses.  Thus, the FCCI policies exclude coverage for the claims against Shirley for the cost of tearing out and replacing drywall.  The Taylor Morrison claim is seeking damages for the cost to remove and replace the defective drywall.  (See Taylor Morrison claim.)  The installation of the drywall is the work product of Shirley.  Because under the "your work" exclusion, per Florida law, any costs associated with the repair and replacement of the defective drywall Shirley installed should be borne by Shirley, there is no coverage under the FCCI policy for any claim regarding the removal and replacement of the drywall.

A close relative to the "your work" exclusion that also eliminates coverage for Shirley is the "your product" exclusion.  The policy excludes "property damage" to "your product" "arising out of it or any part of it."  The language "arising out of it or any part of it" limits the scope of the exclusion to situations wherein the product itself is defective.  See Red Source Techs., Inc. v. Colony Nat'l Ins. Co., 914 So.2d 1006 (Fla. 4th DCA 2005).  Here, the Taylor Morrison claim asserts that the drywall itself is defective and damaged.  (See Taylor Morrison claim.)  As the policy states, there is no coverage for damage to the product itself.  Because Shirley handled and distributed the drywall as required by the exclusion, the drywall is considered "your product" under the exclusion.  As such, there is no coverage under the FCCI policy for any claim relating to the removal and replacement of the drywall.

Therefore, based on the above exclusions, FCCI does not owe a duty to defend or indemnify Shirley for these claims; summary judgment is warranted in this matter.

**E.      "Impaired property" exclusion**

The "impaired property" exclusion eliminates coverage for damage to property that has not been physically injured or for which the claimed damages are only for loss of use of that property. Furthermore, the exclusion bars coverage when the property can be restored to use by repair or

replacement of the policyholder's product or work.  <u>Transcont'l Ins. Co. v. Ice Sys. of Am., Inc.</u>, 847 F.Supp. 947 (M.D. Fla. 1994).  Essentially, this exclusion eliminates coverage for the costs of repairing or replacing the insured's defective work or product where it has not caused any physical injury but has merely rendered other property less valuable.

This exclusion, prevents an insured from making claims for the failure of its own product, and was applied in <u>Transcont'l Ins. Co. v. Ice Sys. of Am. Inc.</u>, 847 F. Supp. 947 (M.D. Fla.1994).  In <u>Transcontinental</u>, summary judgment was granted where the insured supplied portable ice rinks for a hockey exhibition under contract with the Tampa Bay Hockey Group.  The ice failed to properly freeze and was unplayable; the exhibition was cancelled; the Hockey Group sued.  The court granted summary declaratory judgment that the claims for economic loss due to the failure of the ice were encompassed within the impaired property exclusion as well as others; therefore, there was no coverage.  <u>Id</u>; <u>see also</u> <u>Harris Spec. Chems v. United States Fire Ins. Co.</u>, 2000 WL 34533982, *7 (M.D. Fla. 2000) (holding that "impaired property exclusion" applied to exclude coverage for cost to remove defective building sealant where removal did not harm any other part of building except occasional *de minimus* damage).

This exclusion also eliminates coverage for remediation costs asserted against Shirley.  <u>See</u>, <u>Dorchester Mut. Fire Ins. Co. v. First Kostas Corp.</u>, 731 N.E. 2d 569 (Mass. Ct. App. 2000) (finding there is no coverage for costs incurred when a painter's improper removal of lead paint prior to repainting allowed lead paint chips and fumes to enter the house).

The Taylor Morrison claim demands that Shirley remove the defective drywall so that the homes can be restored.  (<u>See</u> Taylor Morrison claim.)  The removal and replacement of the drywall will restore the use of the property to what it was prior to the installation of the defective drywall.

Therefore, the impaired property exclusion eliminates coverage for these claims.  As such, summary judgment is proper.

### IV.   Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**.  The Court hereby enters a final judgment in favor of FCCI and against Shirley as follows:

1.      FCCI does not owe a duty to defend or indemnify Shirley in the underlying claims or any similar claims or lawsuit alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2.      Any damages alleged in the underlying claims are precluded from coverage by the unambiguous language of the Total Pollution Exclusions.

3.      Any damages alleged to be caused by the work or product of Shirley is eliminated by the "your work," "your product," and/or the "impaired property" exclusion.

4.      FCCI does not owe a duty to defend or indemnify Shirley in any claim or lawsuit filed by Taylor Morrison contribution, indemnity, bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

5.      There is no coverage available to Shirley under any of the FCCI policies.

**IT IS SO ORDERED**

This $\underline{18^{th}}$ day of August, 2011

                                                    |S| George Richards
                                                    Judge George D. Richards

Copies furnished to:

Robert M. Darroch, Esq., Goodman McGuffey Lindsey & Johnson, LLP, 201 S. Orange Ave., Orlando, FL  32801
Shirley Construction and Drywall, Inc., 18440 Paulson Dr., Suite F, Port Charlotte, FL 33954

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

FCCI INSURANCE COMPANY,
    Plaintiff,

v.                                                                    Case No.: 10-CA-002850

S3 ENTERPRISES, INC.,
    Defendant.
_____/



## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO ABATE

This matter comes before this Court on a Motion for Summary Judgment filed by FCCI

Insurance Company (FCCI) on June 1, 2011. Upon Consideration of the Motion, the pertinent

portions of the record, and oral argument heard in open Court on September 6, 2011, the Court

denies Defendant's Motion to Abate enters the following Order.

### I.   Factual and Procedural Background

This is a declaratory judgment action to determine insurance coverage for personal injury

and property damage claims allegedly resulting from the use of defective Chinese drywall.  FCCI

filed a declaratory judgment action on July 16, 2010, and amended it on August 13, 2010,

seeking a declaration from this Court that FCCI does not owe a duty to defend or indemnify S3

Enterprises Inc. d/b/a Al Brothers Metal Framing & Drywall (hereinafter "S3") under any

insurance policies FCCI issued to S3 with respect to actions relating to claims arising from

allegedly defective Chinese drywall.  When comparing the complaints in the pending underlying

actions to the plain language of the FCCI policies, it is clear that all underlying claims are not

insured by or are excluded by language in the FCCI policies.  Accordingly, as a matter of law,

FCCI does not owe a duty to defend, indemnify, or otherwise cover S3 in connection with any

claim alleging defective Chinese drywall.

On August 31, 2011, Defendant filed a Motion to Abate pending the outcome of the General Fidelity v. Foster case referenced below. The Court denies Defendant's Motion to Abate.

### A.      Underlying actions

S3 has been named as a defendant in the following underlying actions: *Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public, Residential Drywall, et al.,* USDC, EDLA, Case No. 2:10-cv-00361-EEF-JCW ("*Wiltz*") and *Payton et al v. Knauf GIPS, et al.,* (Class Action - OMNI I) 2:09-cv-07628, ("*Payton*")[1]. The plaintiffs in the underlying actions allege S3 is liable for damages resulting from the installation of allegedly defective Chinese drywall. (See *Wiltz* Complaint, p. 149, ¶ 733; See *Payton* Complaint, pp. 1-2.)

The underlying actions allege that S3 installed defective Chinese drywall that emitted sulfides and other noxious gases (or "off-gases"). (See *Wiltz* Complaint, p. 151, ¶ 724; *Payton* Complaint, p. 506, ¶ 2611.) The underlying actions allege several causes of action against S3, among other defendants, including: Negligence, Negligence Per Se, Strict Liability, Breach of Express and/or Implied Warranties, Redhibition, Private Nuisance, Negligent Discharge of a Corrosive Substance, Unjust Enrichment, Violation of Consumer Protection Acts, Equitable and Injunctive Relief and Medical Monitoring. (See *Wiltz* Complaint, pp. 171-192, Counts I, II, III, IV, IX, XI, XII, XIII, XIV, XV, ¶ 705; see *Payton* Complaint, pp. 537-557, Counts I, II, III, IV, V, VI, VII, VIII, IX, X , XI, XII, XIII, XIV, XV, ¶¶ 2640-2770.)

---

[1] The original complaint filed by plaintiffs in *Payton et al v. Knauf GIPS, et al.,* (Class Action - OMNI I) 2:09-cv-07628 listed "53 Enterprises f/k/a A-1 Brothers, Inc." as a defendant (p 486, ¶ 2518). On May 17, 2010, Plaintiffs subsequently filed a motion to amend the complaint and dismiss certain defendants including "53 Enterprises f/k/a A-1 Brothers, Inc". (See p. 2 of Exhibit "G" of Plaintiffs Motion to Dismiss filed on May 17, 2010, (R. Doc 3121); Order granting *Payton's* amendment and dismissals entered May 18, 2010, R. Doc. 3160 ). Plaintiffs' Amended Complaint in *Payton* does not include S3 or "53 Enterprises f/k/a A-1 Brothers, Inc"; however, it appears that after *Payton's* amended complaint S3 entered filings in the matter (See S3's Second Ex-Parte Motion for Time to Submit Profile Forms filed on June 25, 2010); thus, out of an abundance of caution, we include references to *Payton's* original complaint herein.

The plaintiffs in the underlying actions allege that the sulfides and other noxious gases have caused corrosion and damage to personal property such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances, and other metal surfaces and property and that exposure to sulfide and other noxious gases caused bodily injury. (See *Wiltz* Complaint, pp. 151-52, ¶ 743-44; See *Payton* Complaint, p. 506, ¶ 2612.) The underlying actions seek damages against S3 for the costs of inspection, the cost to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes, and personal property, and diminution of property value. (See *Wiltz* Complaint, p. 153, ¶ 750; *Payton* Complaint, p. 507, ¶ 2619.) Some plaintiffs in the underlying actions also claim damages for injuries as a result of allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems, and other health problems. (See *Wiltz* complaint, p. 152, ¶ 744; *Payton* Complaint, p. 507, ¶ 2615.)

These facts do not appear in dispute and Defendant admits in its Response in Opposition to Plaintiff's Motion for Summary Judgment the underlying complaints "allege that S3 installed defective Chinese Drywall that emitted sulfides and other noxious gases (or "off-gasses"); that the sulfides and other noxious gases have caused corrosion and damages to personal property such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property and that exposure to sulfide and noxious gases cause bodily injury." (Defendant's Brief page 2).

**B.    Current dispute**

FCCI issued four General Liability insurance policies to S3 that are at issue:

Policy number GL 0004755-1 effective 10/05/2006 through 10/05/2007;

Policy number GL 0004755-2 effective 10/05/2007 through 10/05/2008;

Policy number GL 0004755-3 effective 10/05/2008 through 10/05/2009; and

Policy number GL 0004755-4 effective 10/05/2009 through 10/05/2010.

Each of the FCCI policies GL 0004755-1, GL 0004755-2, GL 0004755-3, and GL

0004755-4, issued to S3 contains the following insuring agreement:

> SECTION I – COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies  We will have the right and duty to defend the insured against any "suit" seeking those damages  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . .
>    b.    This insurance applies to "bodily injury" and "property damage" only if
>       (1)   The "bodily injury" or "property damage" is caused by an "occurrence". . .
>       (2)   The "bodily injury" or "property damage" occurs during the policy period, and
>       (3)   Prior to the policy period no insured . . . and no "employee" authorized by you . . . knew that the "bodily injury" or "property damage" had occurred.
>       . .

. . .

Each of the FCCI policies GL 0004755-1, GL 0004755-2, GL 0004755-3, and GL

0004755-4 issued to S3 contains the following Total Pollution Exclusion:

- 4 -

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f.   Pollution

(1)   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time

(2)   Any loss, cost or expense arising out of any

a)   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", or

. . .

"Pollutant" is defined under the policies as follows:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste    Waste includes materials to be recycled, reconditioned or reclaimed

S3 seeks coverage for the claims in the underlying actions. FCCI claims it has no duty to defend S3 because, among other reasons, the Total Pollution Exclusion eliminates all coverage. FCCI argues that the excessive amounts of sulfides and excess gases contained in the drywall in question are "pollutants," and therefore FCCI does not owe a duty to defend S3 in the underlying actions or indemnify S3 for any such claims.

- 5 -

This Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policies and the Pollution Exclusions apply.

## II.    Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue. See Nationwide Mut. Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008). The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact. Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact. See Landers v. Milton, 370 So. 2d 368 (Fla. 1979). If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment. See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. 4th DCA 1971); Fla. R. Civ. P. 1.510.

## III.    Analysis

### A.    Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida, issued and delivered in Florida to a Florida insured, and the homes upon which S3 allegedly installed drywall were located in Florida. See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). At all material times, S3 installed drywall in Florida. The claims in the underlying actions arise out of the alleged exposure to drywall installed by S3 in properties located in Florida. S3 does not dispute the application of Florida law to this matter.

**B.      Duty to Defend**

FCCI asserts that it does not have a duty to defend S3 for allegations of Breach of Express and/or Implied Warranties in the underlying actions because an occurrence has not been alleged and because of the Contractual Liability Exclusion in FCCI's policies.  FCCI also asserts it has no duty to defend S3 because the compounds and sulfide gases being released from the defective drywall qualify as "pollutants," and any and all of the damages and injuries claimed are excluded from coverage by the Pollution Exclusions.  When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured."  Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009).  A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only.  Id. at 1322-23.  There is no duty to defend where the allegations show that coverage does not exist or a policy exclusion applies.  Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006).  Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify.  Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify").  As such, this Court need not look further than the underlying pleadings and the FCCI policies to render a determination on the duty to defend as a matter of law in this matter.  The allegations against S3 for Breach of Express and/or Implied Warranty do not fit the definition of occurrence under the policy and are therefore not covered under the FCCI policies.

In addition, where a complaint is silent as to certain facts that are undisputed, the court

may look outside the allegations of the complaint to those undisputed facts in determining the duty to defend. For example, in <u>Nationwide Mut. Fire Ins. Co. v. Keen</u>, 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995) the court held:

> Claimant argues that an ambiguity in the complaint requires a defense, citing <u>Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.</u>, 470 So.2d 810 (Fla. 1st DCA 1985). That may be true, but if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending. <u>Tennessee Corp. v. Lamb Bros. Constr. Co.</u>, 265 So.2d 533 (Fla. 2d DCA 1972), may be an aberration, but it is founded on logic and fairness.

<u>See also</u>, <u>Nateman v. Hartford Cas. Ins. Co.</u>, 544 So. 2d 1026 (Fla. 3d DCA 1989); <u>Wilson v. General Tavern</u>, 469 F.Supp.2d 1214 (S.D. Fla. 2006); <u>Underwriters at Lloyds v. STD Enter., Inc</u>, 395 F.Supp.2d 1142 (M.D. Fla. 2005).

It is undisputed that the plaintiffs in the underlying actions allege that their damages and injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the pollution exclusions in the FCCI policies issued to S3. Therefore, FCCI does not have a duty to defend or indemnify S3 in any claim arising out of any allegation that S3 installed allegedly defective Chinese drywall.

## C.    Pollution Exclusion

The Total Pollution Exclusion contained in the policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99) Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that

any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99)

The claims in the underlying actions arise solely from damage or injury resulting from the release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total Pollution Endorsement. The underlying plaintiffs have also sought relief in the form of a demand that S3 monitor, remove, contain, treat, or respond to the Pollutants. This specific request is also precluded by the Total Pollution Exclusions.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in S3's policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as

- 9 -

clearly and unambiguously precluding coverage for claims arising from pollution."); <u>Tri County Serv. Co. v. Nationwide Mut. Ins. Co.</u>, 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the <u>Deni</u> decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. <u>See, e.g.,</u> <u>James River Ins. Co. v. Ground Down Eng'g Inc.</u>, 540 F.3d at 1275 (citing <u>Deni</u> in rejecting assertion that clearly written pollution exclusion is ambiguous); <u>Technical Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.</u>, 157 F.3d 843, 845-46 (11th Cir. 1998); <u>Auto Owners Ins. Co. v. City of Tampa Hous. Auth.</u>, 231 F.3d 1298, 1299 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law); <u>see also</u> <u>Gen. Fid. Ins. Co. v. Foster</u>, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing <u>Deni</u>). In a recent ruling in <u>Foster</u>, the United States District for the Southern District of Florida entered an Order granting General Fidelity Insurance Company's Motion for Summary Judgment on a claim alleging damages from allegedly defective Chinese Drywall applying Florida law to a total pollution exclusion. Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion based on the underlying complaints. The underlying actions allege that the sulfide gases were emitted from defective drywall resulting damage to the property. The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall,

are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions. See Auto Owners Ins. Co. v. City of Tampa Hous. Auth., 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); West Am. Ins. Co. v. Band & Desenberg, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall as alleged in the underlying complaints. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall is alleged to have released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant—

- 11 -

'irritant' and 'contaminant'—are not defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")).  In assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139 (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); "'Contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing *Webster's New World College Dictionary* 314 (4th ed. 2000)).

Recently, in Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises.  Id. at 1320.  The court, citing Deni, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined.  Id. at 1323-24.  In determining whether something was an "irritant or contaminant" within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" Id. at 1324 (quoting Nova, 424 F. Supp. 2d at 1325).  Likewise, the United States District for the Southern District of Florida, applying Florida, has recently ruled that the damages allegedly caused by defective Chinese drywall are excluded by a total pollution exclusion.  See Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are ambiguous. As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policies.

As alleged in the underlying action, the sulfide and other gases qualify as an "irritant" or "contaminant" for purposes of the pollution exclusions in S3's policies. Without the presence of these gases, no irritation or contamination would have occurred. Because the underlying actions plainly alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to three similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall: Gen. Fid. Ins. Co. v. Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. decided March 24, 2011); Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010); and CDC Builders, Inc. v. Amerisure Mut. Ins. Co., Number 10-21678-CIV-GOLD-GOODMAN, (U.S.D.C. S.D.Fla. decided August 16, 2011). The Foster and CDC Builders cases involved pollution exclusions in a CGL policy that were identical to the FCCI exclusion and Travco involved a similar pollution exclusion in a homeowner's policy. Although none of these cases is binding upon this Court, this Court does find them persuasive. In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI points to six (6) similar Florida state trial court decisions in its favor

involving the same pollution exclusion as in this case and involving similar claims arising out of allegedly defective Chinese drywall:

1.  In <u>FCCI v. AL Brothers, Inc.</u>, in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number: 10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers).  In fact, AL Brothers is a dissolved corporation that was acquired by S3.

2.  In <u>FCCI Commercial Ins. Co. v. Ocean Construction, Inc.</u>, Case Number: 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here.

3.  In <u>FCCI v. FCCI Commercial Ins. Co. v. MDW Drywall Inc. f/k/a McCoy Drywall</u>, in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, Case Number: 10-CA-007389, Judge Becky A. Titus analyzed a Chinese Drywall claim against an installer (MDW Drywall) very similar to the Defendant in this case.

4.  In <u>FCCI Commercial Ins. Co. v. S.D. & Assoc., Inc.</u>, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case Number: 10-29152-18, Judge Michele Towbin-Singer analyzed a Chinese Drywall claim against an installer (S.D. & Assoc.) very similar to the Defendant in this case.

5.  In <u>FCCI Commercial Ins. Co. v. Shirley Construction and Drywall, Inc.</u>, in the Circuit Court of the Twentieth Judicial Circuit in and for Charlotte County, Florida, Case Number 102979-CA, Judge George Richards analyzed a Chinese Drywall claim against an installer (Shirley) very similar to the Defendant in this case.

6.  In <u>FCCI Advantage Ins. Co. v. Gulfcoast Engineering, LLC</u>, in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number 10-CA-002862, Judge Sherra Winsett analyzed a Chinese Drywall claim against an engineering/architectural firm (Gulfcoast).

The pollution exclusion in the FCCI policies was identical in those cases and in this case. The Court reviewed the following orders from which no appeal was taken: Judge McHugh's Order dated April 21, 2011; Judge Gerald's Order dated June 6, 2011; Judge Titus's Order dated July 6, 2011; and Judge Towbin-Singer's Order dated July 20, 2011.  Even though these orders are not binding upon this Court, this Court finds these Orders to be persuasive and has adopted

- 14 -

some of their language.

Defendant argues this Court should follow the recent case of <u>Auto-Owners Insurance Co.</u> <u>v. American Building Materials, Inc.</u>, 2011 WL 1878236 (M.D. FL) .   The Court notes (and the Defendant's brief reiterates) that the pollution exclusion in <u>Auto-Owners</u> is different from the one in this case and the other cases cited above involving FCCI and Foster.  In <u>Auto-Owners</u>, the Pollution Exclusion was limited to pollutants released while the insureds "are performing operations".   FCCI's exclusion contains no such limitation.    As indicated in the published decision in <u>Auto-Owners</u>, that language is significant because it limits the exclusion "unequivocally" to the "present tense."

FCCI has no such limitation to the present tense.  Instead, FCCI's exclusion is extremely broad and applies to damage or injury "which would not have occurred in whole or part" due to the pollutant.   The exclusion uses the past tense, not the present tense.   The exclusion also broadly applies so long as the damage occurs in "whole or part" and therefore applies even if other causes may join with the pollutant to cause the damage.

Thus, this Court finds the injuries and damages sustained from the drywall fall within the policies' pollution exclusions and FCCI has no duty to defend or indemnify S3.  Accordingly, summary judgment is warranted.

## IV.   Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**.  The Court hereby enters a final judgment in favor of FCCI and against S3 as follows:

1.      FCCI does not owe a duty to defend or indemnify S3 in the underlying actions (*Wiltz* and *Payton*) or any similar case alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese-

manufactured drywall.

2.      The claims of breach of express and implied warranties are not covered "occurrences" as defined by the policies and are expressly excluded by the Contractual Liability Exclusion. FCCI does not owe a duty to defend or indemnify S3 in the *Wiltz* and *Payton* suits or any other complaint alleging breach of express and/or implied warranties.

3.      Any damages alleged in the underlying actions are precluded from coverage by the unambiguous language of the Total Pollution Exclusions.

4.      There is no coverage available to S3 under any of the FCCI policies.

**DONE AND ORDERED** in Lee County, Florida this _13_ day of September _____, 2011

/S/ J. Frank Porter
_____
HONORABLE J. FRANK PORTER
Circuit Court Judge, Lee County

Copies furnished to:

Robert M. Darroch, Esq.
William C. Merchant, Esq.

- 16 -

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT IN
AND FOR HILLSBOROUGH COUNTY,
FLORIDA

Case Number: 10-23495

FCCI COMMERCIAL INSURANCE
COMPANY and FCCI INSURANCE
COMPANY,
      Plaintiffs,

v.

RESIDENTIAL DRYWALL, INC.
      Defendant.                /

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on a Motion for Summary Judgment filed by FCCI Commercial Insurance Company and FCCI Insurance Company (collectively "FCCI") on July 13, 2011. Upon Consideration of the Motion, the pertinent portions of the record, and the Court otherwise being fully advised in the premises, the Court enters the following Order.

**I.**    **Factual and Procedural Background**

This is a declaratory judgment action to determine insurance coverage for personal injury and property damage allegedly resulting from the use of defective Chinese drywall. FCCI filed a declaratory judgment action on December 9, 2010 seeking a declaration from this Court that FCCI does not owe a duty to defend or indemnify Residential Drywall, Inc. (hereinafter "Residential") under any insurance policy(ies) FCCI issued to Residential with respect to actions relating to claims arising from allegedly defective Chinese drywall. When comparing the pending underlying lawsuits to the plain language of the FCCI policies, it is clear that all underlying claims are excluded by language in the FCCI policies and are not insured by the FCCI policies. Accordingly, as a matter

of law, FCCI does not owe a duty to defend and indemnify Residential in connection with any claim alleging defective Chinese drywall.

### A.   Underlying Actions

Residential has been named as a defendant in a number of underlying lawsuits arising from the alleged installation of defective Chinese manufactured drywall:

> *Sean and Beth Payton, et al., v. Knauf Gips KG, Residential Drywall, et al.*, in the United States District Court for the Eastern District of Louisiana, Case No. 2:09-cv-07628-EEF-JCW ("*Payton*");

> *Lennar Homes, LLC and U.S. Home Corp. v. Knauf Gips KG, Residential Drywall, et al.*, Eleventh Judicial Circuit for Miami-Dade County, Florida, Case No. 09-07901 CA 23 ("*Lennar*");

> *Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public Limited Co., Residential Drywall, et al.*, in the United States District Court for the Eastern District of Louisiana, Case No. 2:10-cv-00361-EEF-JCW ("*Wiltz*");

> *Maronda Homes, Inc. of Florida v. Residential Drywall, Inc.*, in the Thirteenth Judicial Circuit for Hillsborough County, Florida, Case No. 10-006976 ("*Maronda Homes I*");

> *Mary Anne Benes, et al. v. Knauf Gips KG, Residential Drywall, Inc., et al.* intervening in *Gross, et al. v. Knauf GIPS KG, et al.*, Case No.: 09-6690, in the U.S. District Court for the Eastern District of Louisiana ("*Benes*"); and

> *Maronda Homes, Inc. of Florida v. Residential Drywall, Inc.*, in the Thirteenth Judicial Circuit for Hillsborough County, FL, Case No. 09-10159 ("*Maronda Homes II*").

The plaintiffs in each of the underlying actions allege that Residential is liable for damages resulting from the installation of Chinese-manufactured drywall. (See *Payton* complaint, pp. 501-502, ¶ 2588; *Lennar* complaint, p. 12, ¶ 44; p. 16, ¶ 62; *Wiltz* complaint, p. 149, ¶ 731; p. 152, ¶ 745; *Maronda Homes I* complaint, p. 3, ¶ 21; *Benes* complaint, p. 277, ¶ 1406; *Maronda Homes II* complaint, pp. 4-5, ¶¶ 20-22.)  The underlying actions allege that Residential installed defective Chinese drywall.  Some of the underlying actions allege the drywall has emitted sulfides and other noxious gases (or "off-gases").  (See *Payton* Complaint, p. 506, ¶ 2611; *Wiltz* Complaint, p. 151, ¶

742; *Benes* complaint, p. 281, ¶ 1424.)  Further, some of the underlying actions allege that the drywall has interacted with other conditions and elements, including normal Florida humid weather conditions, to cause damage. (*Maronda Homes I* complaint, pp. 2-3, ¶ 11; *Maronda Homes II* complaint, p. 3, ¶ 12.)  The plaintiffs in the underlying actions further allege that the drywall has caused corrosion and damage to personal property such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property and that exposure to sulfide and other noxious gases caused bodily injury to some underlying plaintiffs.  (<u>See</u> *Payton* Complaint, p. 506, ¶ 2612; *Wiltz* Complaint, pp. 151-152, ¶¶ 743-44; <u>see also</u> *Lennar* complaint, p. 77, ¶ 467, *Maronda Homes I* complaint, pp.2-3, ¶¶ 11-13; *Benes* complaint, p. 281, ¶¶ 1425-27; *Maronda Homes II* complaint, p. 3, ¶¶ 11-13.)  The underlying actions seek damages against Residential, including the costs of inspection, the cost to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes, and personal property, and diminution of property value. (<u>See</u> *Payton* Complaint, pp. 507-508, ¶¶ 2618-2619; *Wiltz* Complaint, p. 153, ¶ 750;. <u>see also.</u> *Lennar* complaint, pp. 80-81 ¶ 486; *Maronda Homes I* complaint, p. 6, ¶ 29; *Benes* complaint, p. 282, ¶ 1432; *Maronda Homes II* complaint, p. 6, ¶ 30.)  Some plaintiffs in the underlying actions also claim damages for injuries as a result of allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health problems.  (<u>See</u> *Payton* Complaint, p. 508, ¶ 2620; *Wiltz* Complaint. p. 153, ¶ 751; *Benes* complaint, pp.281-82 ¶ 1428.)

  **B.      Current Dispute**

  FCCI issued several commercial insurance policies to Residential for which Residential claims coverage may apply.  FCCI issued the following Commercial Package policies that include Commercial General Liability coverage which is at issue:

- 3 -

Policy Number CPP 0005537-1, effective 11/09/2005 through 11/09/2006

Policy Number CPP 0005537-2, effective 11/09/2006 through 11/09/2007

Policy Number CPP 0007699-1, effective 11/09/2007 through 11/09/2008

Policy Number CPP 0007699-2, effective 11/09/2008 through 11/09/2009

Each of the policies contains the following insuring agreement:

> SECTION I – COVERAGES COVERAGE A BODILY INJURY AND
> PROPERTY DAMAGE LIABILITY
>
> 1.     Insuring Agreement
>
> a.    We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property damage"
> to which this insurance applies.  We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for "bodily injury" or "property damage" to
> which this insurance does not apply.  We may, at our discretion,
> investigate any "occurrence" and settle any claim or "suit" that may
> result. . . .
>
> b.    This insurance applies to "bodily injury" and "property damage"
> only if:
> (1)    The "bodily injury" or "property damage" is caused by an
> "occurrence"...
> (2)    The "bodily injury" or "property damage"
> occurs during the policy period; and
> (3)    prior to the policy period no insured (or employee authorized
> by you knew, prior to the policy period, that the "bodily injury" or
> "property damage" occurred.

The policies each contain the following relevant definitions:

> SECTION V – DEFINITIONS
> "Bodily injury" means bodily injury, sickness or disease sustained by a
> person, including death resulting from any of these at any time.
>
> "Occurrence" means an accident, including continuous or repeated exposure
> to substantially the same general harmful conditions.
>
> "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The policies each contain the following exclusion regarding damage to property:

    2.    Exclusions
        This insurance does not apply to:

        j.    Damage to Property

        "Property damage" to:
        (5)    That particular part of real property on which  you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
        (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

        . . . .

        Paragraphs . . . (5) and (6) of this exclusion do not apply to liability assumed under a side-track agreement.

        Paragraph (6) of this exclusion does not apply to "Property damage" included in the "products-completed operations hazard".

The policies each contain the following exclusion regarding damage to "your product":

    2.    Exclusions
        This insurance does not apply to:

        k.    Damage To Your Product
            "Property damage" to "your product" arising out of it or any part of it.

The policies each contain the following exclusion regarding damage to "your work":

    2.    Exclusions
        This insurance does not apply to:

l.   Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policies each contain the following exclusion regarding damage to "impaired property":

2.   Exclusions
This insurance does not apply to:

m.   Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The policy defines "your work" in the exclusions as follows:

"Your work":
a.   Means:
(1)   Work or operations performed by you or on your behalf; and
(2)   Materials, parts or equipment furnished in connection with such work or operations.
b.   Includes
(1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
(2)   The providing of or failure to provide warnings or instructions

The policy defines "your product" in the exclusions as follows:

"Your product":
a.   Means:

- 6 -

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
        (a)    You;
        (b)    Others trading under your name; or
        (c)    A person or organization whose business or assets you have acquired; and

(2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.    Includes
        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
        (2)    The providing of or failure to provide warnings or instructions.

c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

The policy defines "impaired property" in the exclusions as follows:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.    Your fulfilling the terms of the contract or agreement.

Each of the policies also include an exclusion for Contractual Liability that provides:

2.    Exclusions
        This insurance does not apply to
        . . .
        b. Contractual Liability
            "Bodily Injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability In a contract or agreement.

Each of the FCCI policies issued to Residential contains a Total Pollution Exclusion Endorsement Form CG2149 09/99.

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

    (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time

    (2) Any loss, cost or expense arising out of any

        a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," or

        . . . .

"Pollutant" is defined under the policies as follows:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed

FCCI also issued the following Commercial Umbrella policy to Residential that is at issue:

UMB 0008196-1, effective 12/15/2008 through 12/15/2009. The Commercial Umbrella

policies contain the following insuring agreement:

We will pay on behalf of the insured those sums in excess of the Self Insured Retention that the insured becomes legally obligated to pay as damages because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury to which this insurance applies.

- 8 -

"Occurrence" is defined in relevant part under the policies as follows:

> An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in Bodily Injury or Property Damage, or . . .

Also, the Commercial Liability Umbrella form UMB 001 (08 07) contains the following exclusion regarding pollution:

> 2     Exclusions
>
> This insurance does not apply to . . .
>
> I     Pollution
>
> > (1)     "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time, or
> >
> > (2)     "Pollution cost or expense"

"Pollutant" is defined under the policy as:

> 15     "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed

Residential is seeking coverage for the claims in the underlying actions. FCCI claims it has no duty to defend Residential in the actions against it because an occurrence has not been alleged for which there is coverage under the Residential policies. This Court finds that the allegations of Breach of Contract and Breach of Warranty against Residential are not occurrences as defined under the FCCI policies and thus there is no coverage for Residential under the policies. Further, this Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policies and the Pollution Exclusions apply.

## II.      Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue. See Nationwide Mut. Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008). The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact. Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact. See Landers v. Milton, 370 So. 2d 368 (Fla. 1979). If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment. See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

## III.     Analysis

### A.      Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida and were issued and delivered in Florida to a Florida insured. See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). Residential is exclusively located in Florida. At all material times, Residential installed drywall in Florida. The claims in the underlying action arise out of the alleged exposure to drywall installed by Residential in properties located in Florida.

### B.      Duty to Defend

FCCI asserts that it does not have a duty to defend Residential in the underlying actions because an occurrence has not been alleged and because of the Contractual Liability Exclusion. FCCI also asserts it has no duty to defend Residential because the compounds and sulfide gases

- 10 -

being released from the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusions. When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured." Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where the *allegations show that coverage does not exist or a policy exclusion applies.* Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify"). As such, this Court need not look further than the underlying pleadings and the FCCI policies to render a determination on the duty to defend as a matter of law in this matter. The allegations against Residential, for Breach of Contract and Breach of Warranty do not fit the definition of occurrence under the policy and are therefore not covered under the FCCI policies.

In addition, where a complaint is silent as to certain facts that are undisputed, the Court may look outside the allegations of the Complaint to those undisputed facts in determining the duty to defend. For example, in Nationwide Mut. Fire Ins. Co. v. Keen, 658 So. 2d 1101 (Fla. 4th DCA 1995) the Court held:

> Claimant argues that an ambiguity in the complaint requires a defense, citing Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810 (Fla. 1st DCA 1985). That may be true, but if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of

defending. <u>Tennessee Corp. v. Lamb Bros. Constr. Co.</u>, 265 So.2d 533 (Fla. 2d DCA 1972), may be an aberration, but it is founded on logic and fairness.

<u>See, also</u> <u>Nateman v. Hartford Cas. Ins. Co.</u>, 544 So. 1026 (Fla. 3d DCA 1989); <u>Wilson v. General Tavern</u>, 469 F.Supp.2d 1214 (S.D. Fla. 2006); <u>Underwriters at Lloyds v. STD Enterps., Inc</u>, 395 F.Supp.2d 1142 (M.D. Fla. 2005).

It is undisputed that the plaintiffs in the underlying actions all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusions in the FCCI policies issued to Residential. Therefore, FCCI does not have a duty to defend or indemnify Residential in any claim arising out of any allegation that Residential installed allegedly defective Chinese drywall.

### C.    No Occurrence Alleged

The FCCI policies require that in order for Residential to be covered under the policies, "property damage" must be caused by an "occurrence" as defined by the policy. The definition of occurrence requires that any damage that occurred must be accidental and not caused by intentional conduct in order to be covered. Florida courts have stated that "accident" under a typical commercial general liability policy means injuries or damage neither expected nor intended from the standpoint of the insured. <u>See</u> <u>State Farm Fire & Cas. Co. v. CTC Dev. Corp.</u>, 720 So. 2d 1072, 1076 (1998).

FCCI argues that the *Lennar* suit does not allege a recognized occurrence under Florida law that would trigger coverage of Residential under its policies. FCCI claims that Breach of Contract and Breach of Warranty claims are not considered occurrences, and therefore are not covered under the FCCI policies.

- 12 -

This Court agrees that these claims do not constitute an "occurrence" as required by a CGL policy. See Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241 (2008). Thus, the allegation of breach of contract in the *Lennar* complaint, as well as in the *Maronda Homes I* and *Maronda Homes II* complaints, is not an occurrence under the policies. Breach of warranty claims are not considered occurrences under CGL policies because such claims are not caused by an "accident." See Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241 (2008); Armstrong v. Land & Marine Applicators, Inc., 463 So.2d 1327 (La.App. 5 Cir., 1984); Kema Steel, Inc. v. Home Ins. Co., 153 Ariz. 315 (Ariz.App. 1986); Weedo v. Stone-E-Brick, 405 A.2d 788 (N.J. 1979) (holding breach of express and implied warranties are contract actions); Yegge v. Integrity Mut. Ins. Co., 534 N.W.2d 100 (Iowa 1995) (holding that the claims against the builder did not allege an "occurrence" under liability policy since breach of contract, breach of express warranty, breach of implied warranty and fraud claims did not involve accidental conduct and were economic damages).

The Court finds there is no "occurrence" alleged in the *Lennar* complaint for which Residential is responsible. Furthermore, the allegations of breach of contract, breach of express warranty, and breach of implied warranty in *Lennar*, *Maronda Homes I* and *Maronda Homes II* against Residential are not occurrences under the policies. Therefore, summary judgment is proper in this matter.

**D.  Contractual Liability Exclusion**

The *Lennar* complaint alleges negligence on the part of various parties (Taishan, BNBM, etc.) but does not allege negligence on the part of Residential. The only claims against Residential are for "Breach of Contract" (Count XLVIII), "Breach of Express Warranty" (Count XLIX), and "Breach of Implied Warranty" (Count L). Obviously, the allegations of Count XLVIII are excluded

by the Contractual Liability Exclusion in the policies.   The allegation of breach of contract in *Maronda Homes I* and *Maronda Homes II* are also excluded by the Contractual Liability Exclusion.

In looking at the claims for breach of express and implied warranty, there appears to be no published Florida appellate court decision on whether or not those claims are also excluded by the Contractual Liability Exclusion.   FCCI has pointed to a similar Florida Trial Court decision involving the same FCCI policy form and the same underlying *Lennar* complaint.   In <u>FCCI Commercial Ins. Co. v. Ocean Construction, Inc.</u>, Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Case Number 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, that was identical to the issue in this case and found that summary judgment was appropriate based, among other reasons, upon the Contractual Liability Exclusion.

In looking at the cases from other jurisdictions, the majority of cases find that allegations of breach of warranty (express and implied) fall within the Contract Liability Exclusion.   The following cases provide examples:

> <u>Cincinnati Ins. Co. v. Transport Graphics, Inc.</u>, Slip Copy, 2011 WL 2083960 (W.D.Mo., 2011) finds that "breach of contract and warranties are contractual in nature" and excluded.
>
> <u>Hess v. Appleton Mfg. Co.</u>, 148 S.W. 179, 180 (Mo .Ct.App.1912) finds that "an action for a breach of warranty is founded on contract."
>
> <u>Assurance Co. of Am. v. Admiral Ins. Co.</u>, Slip Copy, 2011 WL 1897589 (S.D.Ala., 2011) states that "Implied warranties are terms that are implied by law in a contract and would not exist apart from that contract. . . . The implied warranty at issue here would not exist were it not for the construction contract between Byrd Homes and Welch. . . . Coverage for count two is therefore also excluded by operation of the contractual liability exclusion of the Scottsdale policy."
>
> <u>American Nat. Prop. & Cas. Co. v. Blocker</u>, 165 F.Supp.2d 1288 (S.D.Ala., 2001) states that "any alleged liability for the breach of warranties claim necessarily depends upon the existence of the underlying contract."
>
> <u>Ewing Constr. Co., Inc. v. Amerisure Ins. Co.</u>, Slip Copy, 2011 WL 1627047 (S.D.Tex., 2011) finding that breach of warranty is excluded by the contractual liability exclusion.

Global Gear & Mach. Co., Inc. v. Capitol Indem. Co., Slip Copy, 2010 WL 3341464, (W.D.Ky., 2010) holds that "a breach of an express or implied warranty flowing from the contract" is not covered. "The Capitol insurance policy does not apply to 'property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.' Thus, Capitol does not owe a defense or indemnification with respect to Count I, Breach of Contracts, Count II, Breach of Express Warranties, or Count III, Breach of Implied Warranties."

Nationwide Mut. Ins. Co. v. CPB Int'l., Inc., 562 F.3d 591 (C.A.3, 2009) holding that "Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims" because of the contractual liability exclusion.

The Court finds these cases and Judge Gerald's opinion persuasive particularly in a case such as this one where there is absolutely no allegation that Residential was in any way negligent. The only allegations in *Lennar* against Residential arise solely out of breach of contract, breach of implied warranty and breach of express warranty.

**E.      Pollution Exclusion**

The Total Pollution Exclusion contained in the General Liability policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  (CG 21 49 09 99; UMB 066 0299)  Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'"  (CG 21 49 09 99.)

The claims in the underlying action arise solely from damage or injury resulting from the release of sulfide and other noxious gases.  This is clearly excluded from coverage by the Total Pollution Endorsements.  The underlying plaintiffs have also sought relief in the form of a demand

that Residential monitor, remove, contain, treat, or respond to the Pollutants.  This specific request is also precluded by the Total Pollution Exclusions.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits.  In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in Residential's policies, were unambiguous and precluded coverage.  Id. at 1138.  Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability.  See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total

- 16 -

Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary.  See, e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators, Inc. v. Tampa Hous. Auth., 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law); see also Gen. Fid. Ins. Co. v. Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni).  In a recent ruling in Foster, the United States District for the Southern District of Florida, entered an Order granting General Fidelity Insurance Company's Motion for Summary Judgment on a claim alleging damages from allegedly defective Chinese Drywall applying Florida law to a total pollution exclusion.  Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion.  The underlying action alleges that the sulfide gases were emitted from defective drywall resulting damage to the property.  The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions.  See Auto Owners Ins. Co. v. City of Tampa Hous. Auth., 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); West Am. Ins. Co. v. Band & Desenberg, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system

- 17 -

transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")). In assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

- 18 -

Recently, in <u>Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc.</u>, 595 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises.  <u>Id.</u> at 1320.  The court, citing <u>Deni</u>, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined.  <u>Id.</u> at 1323-24.  In determining whether something was an "irritant or contaminant" within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" <u>Id.</u> at 1324 (quoting <u>Nova</u>, 424 F. Supp. 2d at 1325).  Likewise, the United States District for the Southern District of Florida has recently ruled in applying Florida law that the damages allegedly caused by defective Chinese drywall are excluded by a total pollution exclusion.  <u>See</u> <u>Foster</u>, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing <u>Deni</u>).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are ambiguous.   As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying actions, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the pollution exclusions in Residential's policies.  Without the presence of these gases, no irritation or contamination would have occurred.  Because the underlying actions plainly alleged that the sulfide and other noxious gases emitted from the

drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. Gen. Fid. Ins. Co. v. Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. decided March 24, 2011) and Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010). The Gen. Fid. Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowner's policy. Although neither case is binding upon this Court, this Court does find both persuasive. In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to several similar Florida State Trial Court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. In FCCI Commercial Ins. Co. v. AL Bros., Inc., Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number: 10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case. Also, in the same court, in FCCI Commercial Ins. Co. v. Ocean Constr., Inc., Case Number: 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here. Judge Becky A. Titus also analyzed claims against an installer, MDW, analogous to the issues here, in FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Case Number 10-CA-007389. Lastly, in FCCI Commercial Ins. Co. v. S.D. & Associates., Inc., in the Circuit court of the Seventeenth Judicial

circuit in and for Broward County, Case Number: 10-29152-18, Judge Michele Towbin-Singer analyzed the same exact claims against another installer, S.D. & Associates, Inc.

The FCCI policies were identical in those cases and in this case. Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken) Judge Gerald's Order dated June 6, 2011 (from which no appeal was taken), Judge Titus' Order dated July 6, 2011, and Judge Towbin-Singer's Order dated July 20, 2011, and even though they are not binding upon this Court, this Court finds these Orders to be persuasive and has adopted some of their language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions. FCCI has no duty to defend or indemnify Residential Drywall, Inc. Accordingly, summary judgment is warranted.

## IV.     Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**. The Court hereby enters a final judgment in favor of FCCI and against Residential as follows:

1.     FCCI does not owe a duty to defend or indemnify Residential in the underlying actions (*Payton*, *Lennar*, *Wiltz*, *Maronda Homes I*, *Benes*, *Maronda Homes II*) or any similar case alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2.     There is no covered "occurrence" alleged in the complaints against the Defendant.

3.     Any damages alleged in the underlying actions are precluded from coverage by the unambiguous language of the Total Pollution Exclusions.

4.     FCCI does not owe a duty to defend or indemnify Residential in the *Payton*, *Lennar*, *Wiltz*, *Maronda Homes I*, *Benes*, *Maronda Homes II* suits or any other complaint

alleging breach of contract, breach of implied warranty, or breach of express warranty.

5.      There is no coverage available to Residential under any of the FCCI policies.

**IT IS SO ORDERED**

This ___ day of _____, 2011        ORIGINAL SIGNED

                                        SEP 07 2011

_____
Judge Richard A. Nielsen
Thirteenth Judicial Circuit
Hillsborough County

- 22 -

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA IN AND FOR PASCO COUNTY

FCCI COMMERCIAL INSURANCE )                    Case No. 512010CA005680
COMPANY,                    )
                            )
            Plaintiff,      )
                            )
vs.                         )
                            )
SWEDBERG ENTERPRISES, INC., d/b/a )
FLORIDA DRYWALL,            )
                            )
            Defendant.      )
_____)

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** coming on to be heard on the 22nd day of August, 2011, upon

the Plaintiff's Motion for Summary Judgment and the Court having heard argument of

counsel and being duly advised in the premises, it is therefore

**ORDERED AND ADJUDGED** that Plaintiff's motion is hereby granted and

Plaintiff has no duty to defend or indemnify Defendant, Swedberg Enterprises, Inc.,

d/b/a Florida Drywall, for any of the underlying claims outlined in the complaint.

**DONE AND ORDERED** in Chambers, at New Port Richey, Pasco County,

Florida, this _____ day of October, 2011.

ORIGINAL SIGNED

OCT 0 7 2011

W. LOWELL BRAY, JR.
CIRCUIT JUDGE
_____
W. Lowell Bray, Jr.
Circuit Judge

Copies forwarded to:
Robert M. Darroch, Esq.
James Campisi, Esq.


RECEIVED
OCT 12 2011
By 0520·0050.94