UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br>ALL CASES AND<br><br>*Payton, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:09-cv-07628 (E.D. La.)<br><br>*Gross, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:09-cv-06690 (E.D. La.)<br><br>*Rogers, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:10-cv-00362 (E.D. La.)<br><br>*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 2:11-cv-00252 (E.D. La.)<br><br>*Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-1363 (E.D. La.)<br><br>*Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-2349 (E.D. La.)<br><br>*Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-3023 (E.D. La.)<br><br>*Vickers, et al. v. Knauf Gips KG, et al.*<br>Case No. 2:09-cv-04117 (E.D. La.) | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**JOINT RESPONSE OF SETTLING PARTIES TO OBJECTIONS OF
VARIOUS UNIDENTIFIED STATE COURT PLAINTIFFS AND CERTAIN
BUILDERS TO THE STAY OF CLAIMS INVOLVING KPT CHINESE DRYWALL**

I.      **INTRODUCTION**

On January 10, 2012, this Court granted preliminary approval to the class action Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047, dated

December 20, 2011 (the "Knauf Settlement").[1] The Court provisionally certified a Knauf Settlement Class consisting of: "All persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (*i.e.*, not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit."  Preliminary Approval Order at 25.  In order to provide Class Members with an opportunity to evaluate the Settlement, participate therein, object thereto or opt out altogether, the Court ordered that the Settlement Agreement be posted on the Court's MDL 2047 website, that individual notice be mailed to Class Members and their counsel, that Class Members be afforded an opt-out objection period, and that a final fairness hearing take place on June 20-21, 2012.  In the interim, the Court stayed "all cases involving KPT Chinese Drywall filed on or before December 9, 2011, whether or not a Knauf Defendant is a party to the case." *Id*. at 28.

The Knauf Settlement is intended to resolve all claims made by Residential Owners, Commercial Owners and Tenants in filed actions, which arise out of KPT Chinese Drywall installed in properties in the United States.  This class settlement with a manufacturer of Chinese drywall is a major building block in a series of settlements designed to achieve complete resolution of this litigation affecting thousands of homeowners.  Earlier, in October, 2010, the Court approved the KPT Pilot Program entered into with the Knauf Defendants for the remediation of KPT properties.[2]  In May and August, 2011, class settlements with suppliers of

---

[1] Preliminary Approval Order [Rec. Doc. No. 12138].

[2] *See* Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall, published on the Court's MDL 2047 website at:
http://www.laed.uscourts.gov/drywall/DemonstrationRemediationAgreement.pdf.

2

Chinese drywall – Interior/Exterior ("InEx") and Banner, respectively – were preliminarily approved by the Court and await final approval.[3] Stays of litigation against Banner and InEx have been in place since preliminary approval of those settlements and dissemination of notice to class members.[4] The Parties anticipate that a class settlement with L&W Supply Co., another supplier of Chinese drywall, will be finalized shortly. Further, a Prospective Insurance Settlement with the insurers of defendants in the supply chain, which is being negotiated with the support of a mediator, should be culminated in the spring of this year. All of these settlements are interrelated to the extent they involve KPT Chinese Drywall claims. Thus, the Knauf stay is important to preserve and protect each of the settlements that already achieved preliminary approval as well as to support the successful resolution of ongoing insurance settlement negotiations/mediations.

As part of the Preliminary Approval Order, the Court permitted interested parties to file an objection to the Knauf stay on or before January 16, 2012. Attorneys VM DIAZ & PARTNERS, LLC ("Diaz"), Roberts & Durkee PA ("Durkee") and Milstein Adelman LLP ("Milstein") filed a limited objection to the stay on behalf of various unidentified state court plaintiffs.[5] Builder-Defendants Southern Homes, LLC, Tallow Creek, LLC, and Springhill, LLC ("Southern Homes") filed an objection to the stay that mirrors the objection they made with respect to the InEx class settlement.[6] Finally, Builder-Defendants, Lennar,[7] G.L. Homes,[8] and Meritage[9] (all represented

---

[3] The Court preliminarily approved the InEx class settlement on May 13, 2011 [Rec. Doc. No. 8818] and the Banner class settlement on August 11, 2011 [Rec. Doc. No. 10064].

[4] *Id.*; *see also In re Chinese-Manufactured Drywall Litig.*, 2011 WL 2313866 at *1 (E.D. La. Jun. 9, 2011).

[5] Rec. Doc. Nos. 12183 & 12174, respectively.

[6] Rec. Doc. No. 12185. Southern Homes has also filed an Emergency Motion to Set Evidentiary Hearing to Determine Security [Rec. Doc. No. 12197]. The Settling Parties are filing a joint response in

by Hilarie Bass of Greenberg Traurig, PA) filed an objection that seeks clarification as to the reach of the stay.

The PSC, Settlement Class Counsel and the Knauf Defendants hereby respond jointly to the objections to the Knauf stay as follows.

### A. Various Unidentified State Court Plaintiffs

Attorneys Diaz, Durkee and Milstein filed identical one-page objections to the Court's order preliminarily approving the Knauf Settlement on behalf of various (unidentified) state court plaintiffs. However, they did not identify with any particularity any client with standing to object to the stay. The objections, therefore, are hypothetical and, on this basis alone, they should be rejected. Attorneys Diaz, Durkee and Milstein do not have independent standing as attorneys in this matter to object to the Knauf Settlement or the stay.

In any event, their objections are limited to the extent the Preliminary Approval Order "stays claims against state court defendants who are not participants in the settlement and in matters in which Knauf is not named as a party." Durkee & Milstein Obj. at 1; Diaz Obj. at 1.[10]

---

opposition to that motion.

[7] Lennar's objection is on behalf of Lennar Corporation, Lennar Homes, LLC f/k/a Lennar Homes, Inc., and U.S. Home Corporation, collectively [Rec. Doc. No. 12215].

[8] G.L. Homes' objection is on behalf of G.L. Building Corporation, G.L. Homes of Florida Corporation, G.L. Homes Limited Corporation, G.L. Homes of Boynton Beach Associates IX, Ltd., Boynton Beach Associates XVI, LLLP, Boynton Beach Associates XVI Corporation, Miramar Associates IV, LLP, Miramar IV Corporation, G.L. Homes of Davie Associates II, Ltd., G.L. Homes of Davie Associates III, Ltd., and G.L. Homes of Davie IV Corporation, collectively [Rec. Doc. No. 12213].

[9] Meritage's objection is on behalf of Meritage Homes of Florida, Inc. and Meritage Homes of Texas, LP, collectively [Rec. Doc. No. 12214].

[10] They also object to the Preliminary Approval Order to the extent it "would potentially impact, in any manner, rights of state court plaintiffs who have not yet had the opportunity, but may choose to opt-out of the settlement." *Id*.

The objecting attorneys have represented to the Settling Parties that they are not opposing a stay of litigation against the Knauf Defendants, Banner or InEx, or against any builders/installers whose insurers are participating in the insurance negotiations/mediations. Rather, they are interested in preserving their right to pursue claims involving KPT Chinese Drywall against parties other than the Knauf Defendants, Banner or InEx, if those other parties have announced they will not participate in the insurance negotiations ("non-participating insurers"). They also seek to pursue claims against defendants other than Banner or InEx, which involve Chinese drywall that was manufactured by Taishan Gypsum Co. Ltd. ("Taishan").

Toward that end, attorney Durkee has agreed to postpone the Banner state court trials scheduled for March and April, 2012. In the meantime, the parties have agreed to continue to meet and confer regarding the issue of whether a stay should be imposed in cases involving KPT Chinese Drywall, where non-KPT Chinese Drywall claims (Taishan board, *e.g.*) are also involved or where parties not participating in the Prospective Insurance Agreement are involved. Attorneys Diaz, Durkee and Milstein have requested that decision regarding the imposition of a stay of litigation under those circumstances be deferred pending further negotiations among the parties.

Given the limited nature of the objections, as represented by Diaz, Durkee and Milstein, the Settling Parties support the implementation of the Knauf stay as to claims involving KPT Chinese Drywall where the Knauf Defendants, Banner, InEx, L&W, remediating builders and/or builders/installers whose insurers are participating in the insurance settlement negotiations are defendants. The Settling Parties also support this Court reserving decision on whether the stay should apply to non-participating builders/installers involving either KPT or non-KPT drywall,

pending further discussions among the parties.

### B. Southern Homes

Southern Homes has objected to the stay order "for the same reasons [Southern Homes] objected to the stay orders issued by this Court in connection with preliminary approval of the INEX Settlement Agreement." Southern Homes Obj. at 2. Southern Homes has appealed the stay of litigation against InEx, and that appeal is now pending before the Fifth Circuit Court of Appeals, where briefing has just been completed. In any event, the interests of Southern Homes are not compromised by the Knauf Settlement or the stay, because Southern Homes will be released if a Class Member does not opt out of the Settlement, and its claims will not be compromised if the Class Member does opt out.

### C. Builder-Defendants Lennar, G.L. Homes, and Meritage

Builder-Defendants Lennar, G.L. Homes, and Meritage are not Class Members and, therefore, they lack standing to object to the Knauf stay. *Feder v. Electronic Data Systems, Corp.*, 248 Fed. Appx. 579, 580 (5th Cir. 2007); *Paterson v. Texas*, 308 F.3d 448, 451 (5th Cir. 2002). Nevertheless, these builders have objected to the stay to the extent it halts litigation involving other manufacturing defendants, such as Taishan Gypsum Co. Ltd., or pending coverage actions involving KPT Chinese Drywall. *E.g.*, Lennar Obj. at 2-3. The builders purport to be seeking clarification on these points. However, prior to the filing of their objections, the Settling Parties clarified for these builders' counsel that the stay does not apply to cases against Taishan. Additionally, although the stay was intended to cover mixed homes in order to protect Banner and the builders to the maximum extent from continued litigation pending final approval of the Knauf Settlement, the Settling Parties do not oppose lifting the stay (or modifying the stay)

6

to permit a claim against only Taishan, but not others in the supply chain, to go forward.

*   *   *

For the reasons set forth below, the stay of litigation involving KPT Chinese Drywall claims, where the Knauf Defendants, Banner, InEx, L&W, remediating builders and/or builders/installers whose insurers are participating in the insurance settlement negotiations are defendants, should be kept in place pending the final fairness hearing on the Knauf Settlement. Whether the stay should also be implemented in cases where non-participating insurers of defendants in the KPT Chinese Drywall supply chain are involved, should be deferred until the parties can meet and confer on this issue. Finally, in cases where Taishan only board is at issue, the stay should be lifted as to those claims.

## II.  ARGUMENT

### A.  This MDL Court Has Authority Under the All Writs Act to Stay All State Court Litigation Involving KPT Chinese Drywall Claims as Necessary in Aid of its Jurisdiction over the Knauf Settlement and These Complex Chinese Drywall Proceedings.

The Court's stay of state court litigation of KPT Chinese Drywall claims pending final approval of the Knauf Settlement is authorized by the All Writs Act, 28 U.S.C. § 1651. The Act provides that: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id*. Under the All Writs Act, this MDL Court has the power to protect its continuing jurisdiction over the complex Chinese drywall proceedings and ongoing global settlement efforts involving KPT Chinese Drywall from competing state court litigation that threatens to derail the achievements of the Court and that infringes upon the rights of class

members before the Court.  *See In re Chinese-Manufactured Drywall Litig.*, 2011 WL 2313866 at *1 (E.D. La. Jun. 9, 2011).

The Anti-Injunction Act, 28 U.S.C. § 2283, complementing the All Writs Act, also empowers the MDL Court to enjoin state court proceedings where "necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  Courts liberally invoke the "necessary in aid of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2nd Cir. 1985) (same); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982) (same); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990) (same); Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. Chi. L. Rev. 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory."); *In re Diet Drugs*, 282 F.3d 220, 235 (3rd Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court" – namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts....").

A stay of state court litigation involving KPT Chinese Drywall, whether or not the Knauf Defendants are named in the litigation, is appropriate to allow the federal court to "legitimately assert comprehensive control over complex litigation," *United States v. Int'l Brotherhood of*

*Teamsters*, 907 F.2d 277, 281 (2nd Cir. 1990), especially "where a federal court is on the verge of settling a complex matter, and state court proceedings undermine its ability to achieve that objective," *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2nd Cir. 1990).

In support of such a stay of competing litigation, the United States Supreme Court has long held that:

> It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is *in rem* the effect is to draw to the federal court the possession or control, actual or potential, of the *res*, and the exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached.

*See Kline v. Burke Const. Co.*, 260 U.S. 226, 229 (1922).[11]  Thus, it is a bedrock principle of federal law that *in rem* proceedings are exclusive to the jurisdiction that first exercises jurisdiction over the same *res.*

The All Writs Act authorizes district courts overseeing settlements in complex MDLs to stay competing state court actions. *See, e.g., Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3rd Cir. 1993) (in complex class action/MDL where the court had expended substantial time and

---

[11] Courts have recognized that multidistrict litigation and class action proceedings are "analogous to *in rem* actions given their magnitude and complexity." *Joint E. & S. Dist. Asbestos*, 134 F.R.D. at 38; *Baldwin-United*, 770 F.2d at 337 (class action proceeding was "so far advanced that it was the virtual equivalent of a res over which the district judge required full control."); *Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered"); *Corrugated Container*, 659 F.2d at 1334-35 (injunction proper because "complicated antitrust action ... required a great deal of the district court's time and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the many parties.").

resources and global settlement was imminent, injunction prohibiting the prosecution of a competing state class action was affirmed, noting that foreign action "would be disruptive to the district court's ongoing settlement management[,]" "would jeopardize the settlement's fruition[,]" and would "present[] a likelihood that [class] members ... [would] be confused as to their membership status in the dueling law suits."); *Diet Drugs*, 282 F.3d at 235 (finding "the complexity of the case to be a substantial factor in justifying the injunction"); *Corrugated Container*, 659 F.2d at 1334 (upholding validity of injunction issued by district court overseeing multidistrict litigation against actions by same plaintiffs in state court, as necessary in aid of district court's jurisdiction); *Newby v. Enron Corp.*, 338 F.3d 467, 474-75 (5th Cir. 2003) (where "injunctions sought in state court threatened to interfere with the federal court's orderly handling of the massive federal litigation," All Writs Act properly invoked); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (to protect its discovery orders, federal court has "power under the All Writs Act" to enjoin state court litigation and "'to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction'"), *quoting United States v. New York Telephone*, 434 U.S. 159, 173 (1977); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992) (approving settlement barring competing actions in state court alleging claims similar to those in the federal action); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir. 1984) (provisionally approved settlement justifies injunction against competing state court cases); *In re Granada Partnership Sec. Litig.*, 803 F. Supp. 1236, 1246 (S.D. Tex. 1992) (enjoining "commencement, continuance and/or prosecution of any and all proceedings in federal or state court" by class members in connection with preliminary and final approval of class settlement);

*Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. at 37 ("An injunction of all proceedings is necessary to implement the terms of the settlement and to protect the court's jurisdiction over the class action.").

In *Baldwin-United*, a consolidated, multidistrict, class action involving more than 100 federal lawsuits, the Second Circuit upheld a broad injunction issued by the MDL court that prohibited any person with knowledge of the court's order from "commencing any action or proceeding" against any of the defendants (settling and non-settling) in the MDL that might "in any way affect the right of any plaintiff or purported class member in any proceeding under" the MDL. *Baldwin-United*, 770 F.2d at 331. Competing state actions were found to "frustrate the district court's efforts to craft a settlement" in that litigation. *Id*. at 337. Thus, in recognition of the "utility of the multidistrict forum [as] ideally suited to resolving ... broad claims," and in order to protect its ability to settle complex litigation, the court held that the All-Writs Act empowers an MDL court to issue an injunction against actions in state court "even before a federal judgment is reached...." *Id*. at 335, 337 & 338. *See also In re School Asbestos Litig.*, 1991 WL 61156, *1-*2 (E.D. Pa. Apr. 16, 1991), *aff'd mem.*, 950 F.2d 723 (3rd Cir. 1991) ("[W]here the potential for resolution is gaining momentum ... this court's ability to oversee a possible settlement would be 'seriously impaired' by the continuing litigation of parallel state actions....").

Thus, this Court's stay of state court litigation against the Knauf Defendants and all claims involving KPT Chinese Drywall is justified and necessary to the resolution of these Chinese drywall proceedings. Indeed, upon preliminary approval of the InEx settlement eight months ago, this Court held that a stay of claims against the settling defendant was proper:

> [T]he Court upholds the stay in the Preliminary Approval Order
> pursuant to its authority under the All Writs Act and the Anti-

11

> Injunction Act's necessary in aid of jurisdiction exception. The Court finds that a conceptional *res* has been created in this MDL litigation, as evidenced by the complexity of the proceedings and claims, the fact the litigation has been underway for almost two years, and the substantial amount of effort and expense put into the litigation by the parties and Court alike. The MDL litigation, as it more specifically pertains to the present Motion, is sufficiently progressed: the parties have engaged in extensive discovery and depositions, a motion for class certification seeking to create a class with claims against InEx was filed and set for hearing, a trial against InEx was scheduled and a case management order issued, and most importantly, the InEx Settlement Agreement is a class action settlement agreement of the InEx-related claims, the Court has preliminarily approved this Agreement, and notice is in the process of issuance. Additionally, an actual *res* has been created now by the InEx Settlement Agreement which involves the tendering of all of InEx's primary insurance coverage. Because there is a possibility that [the objector]'s state court hearing and proceedings could affect and potentially disrupt the InEx Settlement Agreement and the *res* created thereby, these proceedings should be stayed. Notably, the stay is only temporary and contingent upon the successful final approval by the Court of the InEx Settlement Agreement; thus, in the case the Court does not give its final approval, [the objector] will then be free to pursue its state court case against InEx, and if the Agreement is finally approved then presumably [the objector] will benefit as a class member or choose to opt-out.

*Chinese Drywall*, 2011 WL 2313866 at *7. The Court's temporary stay of KPT Chinese Drywall claims and litigation against the Knauf Defendants, issued in conjunction with the preliminary approval of the Knauf Settlement, the issuance of notice thereof to Class Members, and the scheduling of a final fairness hearing, is likewise proper here.

### B. This MDL Court Has Inherent Authority to Manage its Affairs and Control its Docket Expeditiously.

Even beyond the All Writs Act and Rule 23, "[t]he concept that district courts exercise procedural authority outside the explicit language of the rules of civil procedure is not frequently documented, but valid nevertheless." *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871

12

F.2d 648, 651 (7th Cir. 1989).[12] Indeed, "a district court's ability to take action in a procedural context may be grounded in 'inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* at 651, *quoting Link v. Wabash R.R.*, 370 U.S. 626 (1962). Certainly, this Court is vested with the power to manage the resolution of this litigation.

The Supreme Court has held that "the inherent powers of federal courts are those which are necessary to the exercise of all others." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (internal quotation marks omitted). This, "[i]nherent authority remains the means by which district judges deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote the just, speedy, and inexpensive determination of every action." *G. Heileman*, 871 F.2d at 653.[13] Without this inherent authority, "the federal judiciary would be crippled." *In re Novak*, 932 F.2d 1397, 1403 (11th Cir. 1991). The Eleventh Circuit in *Novak*, explained "inherent power" as "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 1406, *quoting Link v. Wabash*, 370 U.S. at 630-31. This power is "essential to the administration of justice." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987) (quotation omitted).

In the present case, the Court's inherent power and control over the MDL litigation and

---

[12] *See* Federal Rule of Civil Procedure 83(b), providing that: "A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district court's local rules."

[13] In *G. Heileman*, the district court sanctioned the corporate defendant for failing to send a corporate representative to settlement conference as ordered. The Seventh Circuit held that the district court did not abuse its discretion by ordering a represented litigant to appear before it in person at the pretrial conference to discuss the posture and settlement of the case. *Id*. at 655.

the Knauf Settlement supports the imposition of a stay of litigation of all claims involving KPT Chinese Drywall regardless of whether a Knauf Defendant is a party to the suit.[14]

## III.     CONCLUSION

The stay of state court litigation involving KPT Chinese Drywall claims is a proper exercise of the Court's authority and is necessary to the culmination of the Knauf Class Settlement. The objections of Various State Court Plaintiffs and certain Builder-Defendants should therefore be denied, subject to the following exceptions. First, the imposition of a stay of claims against non-participating insurers of defendants in the KPT supply chain should be deferred pending further discussion among the parties. Second, the stay of claims involving Taishan board only should be permitted to proceed.

---

[14] In addition to the imposition of a stay, this Court has authority to ensure that no attorney actively represents conflicting interests with regard to the Settlement – *i.e.*, representing participating Class Members as well as objecting Class Members and/or opt-outs from the Settlement, who may cause the Knauf Defendants to walk away from the Settlement to the detriment of those who want to partake therefrom. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161-62 (3rd Cir. 1984), *cert. denied*, 472 U.S. 1008 (1985). It is well settled that "a client has a right to expect the loyalty of his attorney in the matter for which he is retained." *Id*. at 162; *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (attorney's duty of loyalty is "the most basic of counsel's duties"). That duty of loyalty is breached when individual counsel represents conflicting interests. *See Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006) ("An actual conflict [of interest] results when counsel actively represented conflicting interests.") (internal quotation marks omitted). In the event of a conflict, the Court may disqualify counsel, if necessary. *Corn Derivatives*, 748 F.2d at 161-62 (upholding the disqualification of counsel "where two clients retained the same law firm to file suit, and where, later, that law firm chose to represent one of those clients against the other in the course of the same litigation."). Additionally, the Court may provide separate notice of the conflict to the client/Class Members of that attorney so they may protect their rights. *See* Fed.R.Civ.P. 23(d)(1)(B)(i).

Respectfully submitted,

Dated: January 23, 2012 /s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Dawn M. Barrios | Daniel E. Becnel, Jr. |
| BARRIOS, KINGSDORF & CASTEIX, LLP | BECNEL LAW FIRM, LLC |
| 701 Poydras Street, Suite 3650 | P.O. Drawer H |
| New Orleans, LA 70139 | 106 W. Seventh Street |
| Phone: (504) 524-3300 | Reserve, LA 70084 |
| Fax: (504) 524-3313 | Phone: (985) 536-1186 |
| Barrios@bkc-law.com | Fax: (985) 536-6445 |
| | dbecnel@becnellaw.com |

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
 MATTHEWS, MARTINEZ, GONZALES,
 KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

| | |
|---|---|
| Daniel K. Bryson<br>WHITFIELD BRYSON & MASON LLP<br>900 W. Morgan Street<br>Raleigh, NC 27603<br>Phone: (919) 600-5000 | Richard J. Serpe, Esquire<br>LAW OFFICES OF RICHARD J. SERPE<br>Crown Center, Ste. 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com |

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Richard S. Lewis<br>HAUSFELD LLP<br>1700 K Street, NW, Suite 650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax: (202) 540-7201<br>rlewis@hausfeldllp.com | Andrew A. Lemmon<br>LEMMON LAW FIRM, LLC<br>P.O. Box 904<br>15058 River Road<br>Hahnville, LA 70057<br>Phone: (985) 783-6789<br>Fax: (985) 783-1333<br>andrew@lemmonlawfirm.com |

**SETTLEMENT CLASS COUNSEL**

| | |
|---|---|
| Arnold Levin<br>LEVIN, FISHBEIN, SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>Phone: (215) 592-1500<br>Fax: (215) 592-4663<br>Alevin@lfsblaw.com | Russ M. Herman, Esquire (Bar No. 6819)<br>HERMAN, HERMAN, KATZ & COTLAR, LLP<br>820 O'Keefe Avenue<br>New Orleans, LA 70113<br>Phone: (504) 581-4892<br>Fax: (504) 561-6024<br>Rherman@hhkc.com |

**SUBCLASS COUNSEL**

| | |
|---|---|
| Ervin A. Gonzalez<br>COLSON, HICKS, EIDSON, COLSON<br> MATTHEWS, MARTINEZ, GONZALES,<br> KALBAC & KANE<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Phone: (305) 476-7400<br>Fax: (305) 476-7444<br>Ervin@colson.com<br>*Proposed Subclass Counsel for the*<br>*Residential Owner Subclass* | Gerald E. Meunier<br>GAINSBURGH, BENJAMIN, DAVID, MEUNIER<br> & WARSHAUER, LLC<br>2800 Energy Centre, 1100 Poydras Street<br>New Orleans, LA 70163-2800<br>Phone: (504) 522-2304<br>Fax: (504) 528-9973<br>gmeunier@gainsben.com<br>*Proposed Subclass Counsel for the*<br>*Commercial Owner Subclass* |

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com
*Proposed Subclass Counsel for the Tenant Subclass*

## THE KNAUF DEFENDANTS

Kerry J. Miller (Bar No. 24562)
Kyle A. Spaulding (Bar No. 29000)
Paul C. Thibodeaux (Bar No. 29446)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Phone:  (504) 599-8194
Fax:  (504) 599-8145
kmiller@frilot.com

Steven Glickstein
Gregory J. Wallance
Jay P. Mayesh
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Phone:  (212) 836-8485
Fax:  (212) 836-6485
sglickstein@kayescholer.com