1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3

4

5  IN RE:  CHINESE MANUFACTURED        *   Docket 09-MD-2047
           DRYWALL PRODUCTS            *
6          LIABILITY LITIGATION        *   March 23, 2011
                                       *
7  This Document Relates to All Cases  *   9:00 a.m.
   * * * * * * * * * * * * * * * * * * *

8

9

10               MOTION HEARING BEFORE THE
                 HONORABLE ELDON E. FALLON
11               UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14  For the Plaintiffs:          Levin, Fishbein, Sedran & Berman
                                 BY:  ARNOLD LEVIN, ESQ.
15                               BY:  FRED LONGER, ESQ.
                                 510 Walnut Street, Suite 500
16                               Philadelphia, Pennsylvania 19106

17

18
    For Knauf Entities:          Kaye Scholer
19                               BY:  STEVEN GLICKSTEIN, ESQ.
                                 425 Park Avenue
20                               New York, New York 10022-3598

21

22
    For Banner:                  Weinberg, Wheeler, Hudgins,
23                                 Gunn & Dial
                                 BY:  NICHOLAS PANAYOTOPOULOS, ESQ.
24                               BY:  MICHAEL SEXTON, ESQ.
                                 3344 Peachtree Road
25                               Suite 2400
                                 Atlanta, Georgia  30326

1    <u>APPEARANCES CONTINUED</u>

2    For The Mitchell Company:    Cunningham Bounds, LLC
                                  BY:  STEVEN L. NICHOLAS, ESQ.
3                                 1601 Dauphin Street
                                  Mobile, Alabama 36604
4

5
     For Interior Exterior:      Galloway, Johnson, Tompkins,
6                                Burr & Smith
                                 BY:  BENJAMIN GRAU, ESQ.
7                                701 Poydras Street
                                 Suite 4040
8                                New Orleans, Louisiana 70130

9

10   For Landmark American:      Deutsch, Kerrigan & Stiles
                                  BY:  JUDY BURNTHORNE, ESQ.
11                                BY:  MELISSA SWABACKER, ESQ.
                                  755 Magazine Street
12                                New Orleans, Louisiana 70130

13

14
     For North River:           Thompson Coe
15                              BY:  KEVIN RISLEY, ESQ.
                                One Riverway
16                              Suite 1600
                                Houston, Texas   77056
17

18

19   For Taylor Morrison:       Sivyer, Barlow & Watson, P.A.
                                 BY:  NEAL A. SIVYER, ESQ.
20                               401 East Jackson Street
                                 Suite 2225
21                               Tampa, Florida   33602

22

23

24

25

1    <u>APPEARANCES CONTINUED:</u>

2    For National Surety:          Jones, Walker, Waechter,
                                      Poitevent, Carrère & Denègre
3                                  BY:  GARY RUSSO, ESQ.
                                   BY:  MEGAN DONOHUE, ESQ.
4                                  201 St. Charles Avenue
                                   50th Floor
5                                  New Orleans, Louisiana 70170

6

7

8    For F. Vicinio:              Rumberger, Kirk & Caldwell
                                   BY:  ROBERT FITZSIMMONS, ESQ.
9                                  80 S.W. 8th Street
                                   Suite 3000
10                                 Miami, Florida  33101

11

12

13   Official Court Reporter:     Jodi Simcox, RMR, FCRR
                                   500 Poydras Street
14                                 Room B-406
                                   New Orleans, Louisiana 70130
15                                 (504) 589-7780

16

17

18
     Proceedings recorded by mechanical stenography, transcript
19   produced by computer.

20

21

22

23

24

25

<u>**PROCEEDINGS**</u>

**(March 23, 2011)**

* * * *

 4    **THE DEPUTY CLERK:**  All rise.

 5    **THE COURT:**  Be seated, please.  I've a number of

 6 motions before me.  I'll take them in the following order.

 7 First, the plaintiff Rookery Parks Estate's motion to compel

 8 mediation of all claims against defendant Knauf, Master

 9 Builders of Florida and F. Vicinio & Company, record document

10 7501.

11            Anything from the parties on that?

12    **MR. LEVIN:**  I don't think so, Judge.

13    **THE COURT:**  It seems to me --

14    **MR. LEVIN:**  Mr. Gonzales is here.  We'd like the

15 mediation to see whether this one goes better than any other

16 one we've had.

17    **THE COURT:**  Yes.  I'd like the parties to confer and

18 give me a date or dates and then I'll deal with it.

19    **MR. FITZSIMMONS:**  Your Honor, Bob Fitzsimmons on

20 behalf of F. Vicinio.  We don't have any objections to the

21 mediation.  It was just the date that they wanted to do it.

22    **THE COURT:**  Yes.  Just get together with them, Bob,

23 and get some dates that make sense to you all and then I'll put

24 it in the order.

25            The second motion is a motion to file

1    third-party demands against Knauf entities; North River

2    Insurance Company's motion for leave to file third-party claim,

3    that's record document 7705 and 7638; Landmark American

4    Insurance Company and National Surety Company's motion for

5    leave to file third-party complaints, that's record document

6    8085; and Interior's motion to lift the stay to file an answer

7    and affirmative defense to plaintiff's complaint and

8    third-party complaint against Knauf Group of Companies, that's

9    record document 8118.

10                    We ought to take those together.

11              **MR. RISLEY:**  Your Honor, Kevin Risley for North

12   River.  I think we filed the first motion, but, with the

13   Court's permission, we're going to let Interior Exterior take

14   the lead on this.

15              **THE COURT:**  Okay.

16              **MS. BURNTHORNE:**  Judge, Judy Burnthorne and my

17   partner Melissa Swabacker is here for Landmark American.

18              **THE COURT:**  Okay.

19              **MR. GRAU:**  Your Honor, Ben Grau for Interior

20   Exterior.

21              **MR. RUSSO:**  Good morning, Your Honor.  Gary Russo and

22   Megan Donohue on behalf of National Surety.

23              **MR. GRAU:**  Your Honor, the issue -- I know Your

24   Honor's read the briefs and is familiar with the issue.  It

25   really is whether or not the Knauf defendants will be actual

1   parties at the bellwether trial scheduled for July.  The

2   position they take is that their liability will be before the

3   jury whether or not they're a party or not because of the

4   comparative fault rules.

5            While we accept that, we feel that to really

6   fulfill the purpose of a bellwether trial and to test the

7   theories and to foster the goal of settlement, all of the

8   issues and all of Interior Exterior's theories really need to

9   be at issue before the jury, primarily that being the

10  pass-through liability.  The only way that issue is before the

11  jury is if Interior Exterior is allowed to bring its

12  third-party claim against the Knauf entities.

13           They make several objections to this.  First, on

14  the basis -- well, first let me raise the issue of whether or

15  not leave of court is even required for Interior Exterior to

16  file this third-party demand.

17           Under Rule 14, a third-party demand can be

18  filled as a matter of right within 14 days of an answer.

19  Interior Exterior just filed its answer or moved for leave --

20  moved to lift the stay to file its answer I believe on the 9th.

21  So certainly the third-party demand is within that.  And we

22  feel that under Rule 14, as a matter of right, we can bring a

23  third-party demand.

24           Secondly, as Your Honor's well aware of the

25  benefits of a bellwether trial, and these claims need to be

1  before the court in order to fulfill those obligations.  The

2  Knauf entities then complained that their presence at the trial

3  will somehow distract them from the pilot remediation program.

4  Your Honor, they're represented by very capable law firms,

5  three national law firms, in fact, and we see no reason why

6  their presence at a bellwether trial would somehow detract from

7  a pilot remediation program that is well under way.

8              Lastly, they somewhat -- well, they raised the

9  issue of service of process and claimed that delays would be

10  manifest as a result us trying to serve them.  First off, we

11  would suggest that they agreed to waive service of process.

12  They've done it on behalf of the PSC.

13          THE COURT:  But they haven't done it for anybody

14  else.  Their position is that they only did it for the PSC.  So

15  you're going to have to go through the Hague, they say, and it

16  will take 90 days and the case will be tried before you're even

17  service.

18          MR. GRAU:  Well, KPT has agreed to accept service of

19  process from Interior Exterior.  So that one Knauf entity would

20  certainly -- we would not have to go through the Hague.

21              Secondly, we would argue that their opposition

22  to the motions for leave and motion to lift the stay, as well

23  as their appearance at liability depositions to be used in the

24  bellwether trial, constitutes a waiver of any service of

25  process or jurisdictional objections that they have under

1    Rule 12(b).

2                   **THE COURT:**  Okay.

3                   **MR. RISLEY:**  Kevin Risley for North River.  Let me

4    just add that we agree that by appearing in the MDL and

5    specifically in the Knauf -- or the *Silva* and *Amato* cases,

6    service through the Hague is not required.  We've served their

7    counsel of record who's made the appearance in this case.

8                   But if they're right on that and we're wrong,

9    that's even more reason to go ahead and let us start the

10   service process now, so when the issues become active we're not

11   delayed 90 days in the future.  We can get the service; and if

12   they sit there for now, that's fine.  We avoid delay later on.

13                  **THE COURT:**  Okay.  I understand.  Anything from --

14                  **MS. BURNTHORNE:**  Judge, Judy Burnthorne for Landmark

15   American.

16                  We, similar to Interior Exterior, have a

17   procedural argument to make.  And I don't think it was all that

18   evident from the briefing, but Landmark American has pending a

19   12(b)(6) motion.  We have not filed an answer.  So we would

20   take the position that it would be our right to file a

21   third-party demand as part of an answer when it gets to that

22   point -- if it gets to that point.

23                  And the 12(b)(6) that we had filed was based on

24   an improper use of the direct action statute, and I don't think

25   it's been responded to or ruled on yet.

1          **THE COURT:**  Okay.  Anybody else?  I do understand

2     issue, so -- you have another?

3          **MS. DONOHUE:**  Your Honor, Megan Donohue on behalf of

4     National Surety.  We adopt what Ms. Burnthorne said.

5          **THE COURT:**  You adopt everything she said.

6               I understand the issue.  I don't need any

7     further discussion on it.  I'm going to deny the motion.

8               First off, I notice that North River has taken

9     that position, but North River hasn't expressed any interest in

10    participating in this process.  When they do participate in the

11    process, unfortunately, their participation is to delay the

12    process.  I am concerned about the delay that this would

13    create.

14               I also feel that it's not prejudicial to them

15    because in Louisiana you don't need a warm body to be assessed

16    fault.  They do it on empty chairs all the time.  So Knauf's

17    liability will be a part of those proceedings with or without

18    them present.

19               I'm concerned about the delay that third-party

20    claims would present.  They present claims, further discovery

21    would be necessary, problems with jurisdiction is present, and

22    problems of service are present.  For all of those reasons,

23    I'll deny the motion.

24               The next motion I have before me is the PSC's

25    motion for extension of time for service of process under Rule

1   4(m), that's record document 7750.

2                   Is there any problem with that?  Anybody have

3   any objection to that?

4                   I'll grant that motion.

5                   The next motion is Interior Exterior's motion to

6   dismiss the claims of certain plaintiffs who have failed to

7   produce profile forms pursuant to Federal Rule of Civil

8   Procedure 37(b), that's record document 8025; and the Banner

9   Supply Entities' motion to dismiss claims of plaintiffs who

10  completely failed to comply with discovery and this court's

11  order to file profile forms, and that's record document 7892.

12                  As I mentioned before, profile forms are an

13  essential process of this proceeding.  I use them in lieu of

14  interrogatories.  If I require profile forms and they're not

15  completed and not served, then it defeats the whole purpose.

16  So I will take an active role in making sure that profile forms

17  are filed.

18                  What I'd suggest is that the parties get

19  together and find out who has not answered, what profile forms

20  we're talking about.  There's some lack of meeting of the minds

21  at this point.  The plaintiffs take the position they have sent

22  them in or they're in the process.  I'm just uncertain about

23  what they are.

24                  But the way I propose doing it is if you all

25  meet and confer, give me a list of those people who have not

1    filed profile forms, I'll issue a rule to show cause why those
2    cases should not be dismissed for failure to follow the court
3    orders.  I'll give them an opportunity to come in, failing
4    which I'll dismiss their cases.
5            **MR. PANAYOTOPOULOS:**  Your Honor, Nick Panayotopoulos
6    for certain Banner Entities again.
7                We've spoken with Ms. Barrios and INEX and I
8    believe we've come to an agreement where we'll give them a
9    chance.  We'll talk again.  We've been talking.  What we'd like
10   to do, we'll meet before the next hearing and we'd like to have
11   the show cause hearing at the next hearing.  And the Court has
12   already said in the past a number of times, "Please submit the
13   profile forms or I will dismiss."  Hopefully, they'll all
14   comply by that time.
15           **THE COURT:**  Yes.  I hope they do.  It's a serious
16   situation because I want both sides to have that information.
17   That's why we're able to move the case faster.  Without that,
18   it bogs down.
19           **MR. PANAYOTOPOULOS:**  And the scope of the problem,
20   Your Honor, is pretty large.  Just for the Banner Entities, the
21   plaintiffs that have filed claims against Banner and the
22   properties involved out of approximately 1,300 over 200 we
23   estimated have not.  We're working through that.  We're going
24   to make it a little easier for them for condos so they don't
25   have to submit as many, but it's a pretty large problem, but

1   when it comes to the entire litigation with a lot of profile
2   forms that are missing.
3                    And the problem is compounded by the fact that
4   the DSC served discovery in 2009 and 2010 and we've got no
5   responses except from the class reps.  So we're hoping that the
6   Court will address that issue as well.
7            **THE COURT:**  No, I understand, and I will address it.
8   That's an important issue.
9            **MR. PANAYOTOPOULOS:**  Thank you, Your Honor.
10           **THE COURT:**  Go ahead, Fred.
11           **MR. LONGER:**  Fred Longer, Your Honor.  Good morning.
12                    Our position is, and I appreciate Your Honor's
13   addressing this matter, we will meet and confer with counsel.
14   We hope to narrow down the issues.  And specifically the
15   plaintiffs, we need to get from everyone, so we're on the same
16   page, the counsel that are involved who represent these
17   individuals which has not been part of the motion and it's been
18   sort of hamstring the conferencing that we have.
19                    So that's one thing that we need to work on
20   going forward.  And I hope that counsel is willing to work with
21   us on that matter and provide that information to us or work
22   with us so that we can get that matter so that notice can go
23   out.
24                    What I heard from counsel for Banner is that he
25   wants the rule to show cause hearing to be next month.  I don't

1  know that that's going to be possible because notice has to go

2  out to those specific counsel and they haven't been identified

3  yet.

4          **THE COURT:**  Yes.  I don't know whether we can do it

5  as quickly as counsel would like.  But I would like you all to

6  meet and confer and get the names of the litigants and the

7  names of counsel so that we can have some record to show that

8  they've been notified so that they're given due process; and

9  when I dismiss their claims, their claims will be finished,

10  they won't have a claim that says, "Well, I didn't get due

11  process of law, therefore, my claim should be reinstated."

12          I want to give them that opportunity, because

13  once I dismiss them, they're going to be dismissed forever.

14  Now, having said that, the problem you have in cases of this

15  sort is that it's not unusual for a lawyer to have many, many

16  cases.  That lawyer gets the requests and because of logistics

17  involved, one or two or however many people fall through the

18  cracks and he's not aware of it or he doesn't get on it or he's

19  got other pots to stir, and so I have to give him notice.

20          Also, there's some pro se people who don't

21  understand what they have to do, and I'd like to give them an

22  opportunity to do this.  But I do want to follow-up on it.

23  That's the point that I need to make with you.  I want to

24  follow-up on it.  Let's get together and see what the problem

25  is and see if we can solve that issue by dealing with this.

1            **MR. LONGER:**  Your Honor, the PSC here has a lot of

2  familiarity with this process in the Vioxx litigation and

3  before and we know about the need to get notice to these

4  people, an appropriate certified notice, so that they are

5  apprised and that they will be subject to whatever orders Your

6  Honor does issue if they are delinquent going forward.

7            Thank you.

8            **THE COURT:**  I have two other motions.  I want to take

9  them up, and these motions I need some oral argument on it, and

10  I do want to write something on it so I won't be ruling from

11  the bench.

12            The sixth is the Mitchell Company's motion to

13  intervene in *Silva* and *Payton*, record documents 8143 and 8144.

14            **MR. NICHOLAS:**  Good morning, Your Honor.  Steve

15  Nicholas for the Mitchell Company.

16            **THE COURT:**  Good morning, Steve.

17            **MR. NICHOLAS:**  Your Honor, first a factual matter,

18  the PSC's response to the Mitchell Company's motion to

19  intervene indicates that Mitchell is a Taishan-centric

20  plaintiff.  That's really not true.  Mitchell is in the INEX

21  supply chain; they're in the Knauf supply chain.  They have

22  both Taishan houses and Knauf houses.

23            Your Honor, we've briefed the issue.  I'd like to

24  just address it from a practical standpoint with Your Honor.

25  From the beginning of this litigation, we've been pointing out

1    to the Court that the homebuilders are claimants as well as

2    defendants.  In fact, we represent Mitchell and other

3    homebuilders only as plaintiffs, not as defendants.  I think

4    Your Honor's acknowledged that.

5            From a practical standpoint in a class action basis,

6    which is what the case we've proposed to intervene into, we

7    don't believe there's any practical way that those cases can

8    either be settled or tried and the conclusion of those cases be

9    meaningful without the inclusion of the homebuilders in that

10   process.

11           THE COURT:  Well, they take the position, though,

12   that you have your own cases and that you do have an economic

13   interest in this, but the Circuit says that economic interest

14   alone is not enough and that I have to balance that with the

15   delay.

16           Knauf takes the position that it would delay

17   matters because they're not going to admit to service of

18   process, so that will at least push it back 90 days; and at

19   that point, they also would then require some additional

20   discovery which would push it back longer.

21           How do you deal with those issues?

22           MR. NICHOLAS:  Well, Your Honor, Mitchell has service

23   over Knauf in its individual case.  In this class action case,

24   it has been filed from the very, very beginning.  We also do

25   take the position that to the extent Your Honor accepts an

 1    intervention complaint, we can serve counsel.  I don't think
 2    it's going to delay anything.
 3              We're not asking to get into the case and delay
 4    anything as far as a certification or anything else.  But it
 5    really comes down to a resolution, Your Honor, that is there
 6    any way to afford complete relief when if the homeowners, you
 7    know, settle their claims or retain cases against the
 8    homebuilders, the homebuilders then seek to recover that same
 9    thing back against the people upstream in the supply chain, in
10    this case notably INEX and Knauf.
11              So you end up with this circular process that
12    there's really no way to get a resolution until you resolve
13    everything at one time.
14              So we do have our own claims and those claims
15    can be adjudicated separately, but I don't see how there's any
16    way that you can get a resolution to the class action cases
17    that are pending without the inclusion of the homebuilders.
18         **THE COURT:**  What about their argument that you're
19    mostly involved in Taishan drywall and that this case is
20    against Knauf drywall?
21         **MR. NICHOLAS:**  Factually, that's just not of the
22    case, Your Honor.  If you look at our original complaint,
23    Mitchell Company has, in fact, more houses that are made with
24    or installed with Knauf INEX board than they did with Taishan
25    board.  So they have both.

1      **THE COURT:**  All right.  Let me hear from your

2  respondent.  Anybody?

3      **MR. GRAU:**  Ben Grau for Interior Exterior.  I think

4  Your Honor has hit the key issue, which is:  What interest does

5  the Mitchell Company have in the particular class action suit

6  in the *Silva* matter?  And the Fifth Circuit is clear that an

7  economic interest alone is not sufficient.

8      Frankly, that's the only interest that they've

9  raised here.  They complain that the *Silva* class matter, if it

10  goes forward, that the insurance proceeds of Interior Exterior

11  is at risk.  And while that may be true, that is not sufficient

12  interest for them to intervene in the case under established

13  Fifth Circuit authority.

14      **THE COURT:**  Of course, they would admit the *Edwards*

15  case.  But they also say that if they're not a part of it, all

16  of the funds will be depleted and they will then have an empty

17  judgment if ever they get one.

18      **MR. GRAU:**  Well, certainly, we would take the

19  position that all the funds will not be depleted.  But to the

20  extent that they were, that's an issue that's incumbent in any

21  litigation.  But the Fifth Circuit has made clear that simply

22  because there are multiple claims against a defendant that are

23  unrelated or that they're not -- that there's not a common

24  interest between the parties, and clearly there's not in this

25  case, then there's no reason to commingle those cases and allow

1   one party to intervene versus the other.

2           **THE COURT:**  Other than delay, how are you affected?

3           **MR. GRAU:**  Delay is the primary issue, Your Honor.

4   We've already, as Your Honor's well aware, are moving forward

5   with class certification and discovery.  We've inspected the

6   homes.  The Mitchell Company is not the builder for any of the

7   homebuilders of the class representatives in this case.

8           So we would have to start over with selecting

9   homes from the Mitchell Company and inspecting those homes.  We

10  would obviously have to conduct discovery related to

11  remediation of those homes to the extent that it's taken place,

12  as well as the other damage claims that the Mitchell Company

13  itself raises; and, frankly, it would make even the most

14  aggressive proposed scheduling order untenable.

15          **THE COURT:**  He says that he's got more Knauf drywall

16  than Taishan drywall.  I thought that there was an indication

17  that it was the opposite.

18          **MR. GRAU:**  Your Honor, unfortunately, perhaps the PSC

19  can speak to that issue better.  I'm just not aware of the

20  breakdown.  I do know that there's both Knauf and Taishan

21  involved in the Mitchell suit.

22          I would also point out that their proposed class

23  in the original matter involves six states, whereas obviously

24  the *Silva* case is limited to one state, being Louisiana.  So I

25  think we'd be talking about an expansion of the class.  That

1   wouldn't be appropriate and would create other issues with
2   respect to liability.
3           THE COURT:  Okay.
4           MR. LEVIN:  Arnold Levin.
5                   We disagree.  The pleadings show that they are
6   Taishan oriented.  But as a practical matter, it's our case.
7   They're really moving for consolidation of their case with our
8   case.  We anticipate, unlike INEX believes, getting everything
9   into a pot.  If we are successful in a class proceeding in
10  accomplishing that, there's going to have to be an allocation
11  proceeding; and if there is an allocation proceeding and they
12  believe that they're entitled to some of the funds, let them
13  come forward then and we'll deal with them.
14                  But it's very important that we not delay this
15  INEX trial.  This INEX trial is very important to the PSC and
16  to the homeowners with a Johnny-come-lately that comes into the
17  case or comes -- tries to get into the proceedings at this late
18  date for a cause of action that just doesn't fit with the class
19  action that we filed.
20                  But if there's something about funds and they're
21  afraid of absconding funds, we have an Article III judge,
22  there's an allocation proceeding afterwards, they're protected
23  if they need protection.
24          THE COURT:  All right.  Do you want to respond to
25  him?  He talked about that you're filing late.  I know you

1    filed within the court deadlines, but you have been present in

2    the case since the inception.  So, although you're within the

3    deadlines, undoubtedly, the issue that he raises is that you've

4    been around a long time and haven't done it.

5              **MR. NICHOLAS:**  I mean, Judge, I guess the issue if

6    this were simply a bellwether trial against INEX, we wouldn't

7    be trying to intervene into it.  But to the extent that what is

8    going on is an attempt to certify the case against INEX and to

9    do what Mr. Levin talks about, take all the money, and then let

10   people come in where they don't represent those people and then

11   have some kind of allocation I think doesn't comply with

12   Rule 23.

13             And really, if it's a question of timing, we can

14   deal with that.  But if there's going to be an attempt to

15   settle the INEX claims on a class-wide basis, which is now what

16   this is proposing to do, then we think we've been here from the

17   beginning proposing a class against INEX on behalf of the

18   builders, that we're entitled to press that issue on a

19   class-wide basis; and if we're only talking about settling --

20   resolving individual cases, that's not what I'm here about.

21             But if we're talking about a class-wide

22   resolution, I think it makes more sense to have somebody from

23   the builders at the table from the beginning to try to settle

24   this matter on a class-wide basis.  That's why we intervened.

25   Frankly, I thought that's what the purpose was, was to get

1   somebody who had standing to represent the builders to be able
2   to facilitate a class-wide resolution.
3         THE COURT:  Talk to me about the fact that your class
4   action involves multiple states, whereas this one involves one
5   state.  Do you see that being any problem?
6         MR. NICHOLAS:  You know, the fact that you can -- you
7   split it up and go state-by-state, if that's where we're headed
8   with this, then that's what we'll do.  I don't think it makes
9   any difference that the initial class action will be limited in
10  a subset of a bigger class.  We're not trying to change the
11  definition by stepping into the case.
12        But I think Your Honor can do it on a
13  state-by-state basis, if that's what Your Honor intends to do.
14        THE COURT:  All right.  I'll take this under
15  consideration and I'll deal with it.
16        The last motion is similar, the Taylor Morrison
17  Services and Taylor Woodrow Communities at Vasari's motion to
18  intervene, docket No. 8128; and then Completed Communities'
19  motion to intervene, docket 8131; and Lennar Corporation's
20  motion to intervene, docket 8135.
21        These, the difference is that some of the
22  parties stand in the shoes of the individuals.  Yes?
23        MR. LEVIN:  Sir, excuse me for interrupting, but I
24  think we can short change it.  We have no objection to this
25  motion.

1      **THE COURT:**  All right.

2      **MR. PANAYOTOPOULOS:**  Banner still does though.

3      **MR. SIVYER:**  Your Honor, Neal Sivyer, S-I-V-Y-E-R,

4  representing Taylor Morrison and speaking on behalf of the

5  intervening homebuilders.

6          Your Honor, as you just pointed out, we are, in

7  fact, the assignees of the homeowners.  We stand in exactly

8  their shoes.  As a matter of fact, during this proceeding some

9  of the homeowners that are plaintiffs have had their homes

10  repaired wherein we step into their shoes.

11         Unlike the last hearing, we do not have an

12  objection from the Plaintiff's Steering Committee.  The

13  Plaintiff's Steering Committee is in agreement with our

14  intervening.  Only Banner objects.  We are only trying to

15  intervene in the Banner case.  I would like to briefly address

16  each of Banner's objections.

17         The first one deals with the fact that they

18  believe we stand in different shoes or a different stead,

19  that's not true.  We simply step into the shoes of the

20  homeowners.

21         Secondly, Banner argues that additional

22  discovery will be required.  Not true.  We, the homebuilders,

23  have been negotiating with Banner for months and have provided

24  every single home, every inspection report, every address,

25  every dollar that we spent on that home.  And we've gone back

1    and forth and answered questions for months.

2              We would have to be deposed anyway, Your Honor,

3    because we are the only folks that have repaired homes.  We

4    would have to testify.  Our class representatives would be the

5    ones who would address the snowflake theory that Banner has,

6    that each home is different.  We will be able to show to the

7    Court homes in different communities, different sizes and

8    shapes and address how they're all repaired in a similar manner

9    and what the costs are.

10             The Court set a date for us to intervene.  We

11   complied with that date.  We obviously cannot have a resolution

12   of the class action case without the participation of the

13   homebuilders.  Banner suggests, for the first time, that we

14   ought to proceed separately in state court.  The Court knows

15   very well that Banner has taken the opposite position, that we

16   have to have everybody in front of Your Honor at once to get

17   the claims against Banner resolved.

18             What sense would it make for me to run over to

19   Hillsborough County and ask my judge to set our hearing in our

20   case first, or Lennar to do the same thing down in Dade County

21   to try to run to the courthouse first?  It would make no sense.

22             Your Honor, in terms of the financial resources,

23   Banner suggests there's a different standard, that some of the

24   homeowners don't have as much money as the homebuilders.  I

25   don't know what that has to do with anything.  But I would

1  remind the Court that the plaintiffs' representative is the

2  coach of the New Orleans Saints, and one of the other

3  plaintiffs is the lieutenant governor -- or former lieutenant

4  governor of the state of Florida.  So it depends.  We have

5  small homebuilders, large homebuilders, big plaintiffs, little

6  plaintiffs.  I don't think that has anything to do with a

7  qualification to intervene.

8              Your Honor, we will be very helpful in this

9  case.  We can have our class representatives available for

10 deposition immediately.  And we will be the ones presenting the

11 evidence, and almost like best friends from grade school, be

12 sitting next to the plaintiffs in this case.

13          **THE COURT:**  Thank you.  Let me hear from your

14 opponent.  Any opposition from Banner?

15              Okay.

16          **MR. SEXTON:**  Mike Sexton for Banner.

17              Your Honor, I think this is more a matter of

18 logistics than high-minded legal issues.  I think some

19 definition of terms and context are important at the outset.

20              First off, Banner's position in this situation

21 is in regards to a litigated class, not a settlement class.

22 For a contemplated settlement class, everybody is going to be

23 at the table so there can be complete peace accorded to

24 everyone.  Litigated class, that's something different.  Not

25 only a matter of practicality, but as a matter of law after the

1   U.S. Supreme Court decision in *AMCAP*.

2                Here, Your Honor has a motion under advisement

3   on the scheduling.  The class certification hearing is going to

4   go forward either June 27th or in August of this year.  In

5   order to have the homebuilders intervene, they have a number of

6   properties for which they say that they are assignees.  So we

7   need to know a little bit more detail about what the

8   homebuilders propose.  Does every one of those homes that

9   represents the assignor going to be a moving plaintiff?

10               Because we know, for example, *Vickers*, there's

11  about a dozen named class representatives.  In *Payton*, there's

12  about 348.  But there are only two people who are actually

13  movants on the motion for class certification, Diaz and

14  Dr. Roberts.

15               So do we need to then treat each one these homes

16  as a moving class representative?  I know from attending one of

17  the class representative inspections in Boynton Beach, Florida

18  last week, it's a very long and tedious process.  Do

19  homebuilders propose that we go through this tedious process

20  for hundreds of homes; or do we merely take the deposition of

21  the homebuilder when the homebuilder is there as an assignee?

22  What's more important to us is the assignor, the homes.

23               So if they're just saying that they want to be a

24  named class representative and they want a seat at the table,

25  that's fine.  We all want everybody at the table.  In fact,

1  there were 16 motions by other homeowners saying, "We just want

2  to participate in the settlement discussions."  Banner didn't

3  oppose that.

4           What we're saying is if we're going to move

5  forward on the PSC motion for class certification in August or,

6  God forbid June, then let's not expand the scope of discovery

7  exponentially by adding them to this case.

8           **THE COURT:**  He says it wouldn't expand it.  How do

9  you feel it would expand it by giving them an opportunity?  Why

10  would it expand it?

11          **MR. SEXTON:**  It would expand it, Your Honor, because,

12  again, if they're proposing to be movants as opposed to merely

13  named class representatives, for every movant you have to have

14  very detailed discovery for that movant.  Again, if they just

15  want to passively sit by and say, "Okay.  We are just going to

16  be named class representatives.  We'll participate in class

17  discovery," that's fine.

18          But if they're a movant -- well, first off,

19  let's see their motion for class certification.  If they are in

20  the same exact situation as the PSC -- and the class definition

21  in the PSC's motion of last September 21 says that they

22  represent all, I believe, all homeowners and renters who

23  received defective Chinese drywall -- if they are here as

24  assignees, then why do they have to be in the case?  Their

25  interests are adequately represented by the PSC.

1          There's no need to complicate an already

2    complicated situation.  We will need to propound discovery.

3    We've engaged in settlement discussions.  But as Your Honor may

4    be aware, the quantum of proof necessary in settlement

5    discussions is quite different than the quantum of proof in

6    class certification.

7          So the reference that, "Well, we have everything

8    we need," no.  We would like the crucible of the discovery

9    process to show what we need and what we want from the

10   homebuilders and not their representation that they've given us

11   enough for settlement discussions.  It does add a lot.  It

12   makes August untenable, Your Honor.

13         **THE COURT:**  Okay.

14         **MR. SIVYER:**  Very briefly, Your Honor.  Banner was

15   given a letter inviting them to inspect every single home we

16   repaired before we repaired it.  They've been given an

17   inspection report for every one of their homes that they've

18   addressed.  They have that already.  There's not going to be

19   additional delay.

20         While we certainly respect the Plaintiffs'

21   Steering Committee, they don't represent us.  We do stand in a

22   little different proof stead in the sense that we've repaired

23   our homes; they have not.  So we do desire to intervene as a

24   litigated or a settlement class.  And we believe to get full

25   resolution, the Court needs us to do that.

1          **MR. GLICKSTEIN:**  Very briefly, Your Honor.  Steven

2    Glickstein again for the Knauf defendants.

3               In our papers we indicated it wasn't clear from

4    the motions, because no intervention complaint had been

5    attached, whether the builders, be it Lennar, Taylor Morrison

6    or Centerline, were seeking to intervene against the Knauf

7    defendants.  I believe, informally, we've heard that the answer

8    is no.  But I'm just here to raise the question so that if my

9    understanding is incorrect somebody can come up and let me

10   know.

11          **MR. SIVYER:**  Your understanding is correct.

12          **THE COURT:**  Okay.  Folks, let me look at this again

13   and I'll come out with my opinion very shortly.

14               Thank you very much.  Court will stand in

15   recess.

16          **THE DEPUTY CLERK:**  Every one rise.

17          (WHEREUPON, the proceedings were concluded.)

18                              *****

19                          **CERTIFICATE**

20          I, Jodi Simcox, RMR, FCRR, Official Court Reporter
     for the United States District Court, Eastern District of
21   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
22   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

23

24
                         S/ Jodi Simcox, RMR, FCRR
25                       Jodi Simcox, RMR, FCRR
                         Official Court Reporter