1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  CHINESE MANUFACTURED      *    Docket 09-MD-2047
             DRYWALL PRODUCTS          *
6            LIABILITY LITIGATION      *    March 23, 2011
                                       *
7    This Document Relates to All Cases  *    9:00 a.m.
     * * * * * * * * * * * * * * * * * *

8

9

10                  STATUS CONFERENCE BEFORE THE
                      HONORABLE ELDON E. FALLON
11                 UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14
     For the Plaintiffs:         Herman Herman Katz & Cotlar
15                               BY:  RUSS M. HERMAN, ESQ.
                                 BY:  LEONARD A. DAVIS, ESQ.
16                               820 O'Keefe Avenue
                                 New Orleans, Louisiana 70113
17

18
                                 Levin, Fishbein, Sedran & Berman
19                               BY:  ARNOLD LEVIN, ESQ.
                                 BY:  FRED LONGER, ESQ.
20                               510 Walnut Street, Suite 500
                                 Philadelphia, Pennsylvania 19106
21

22

23   For Knauf Entities:         Frilot, LLC
                                 BY:  KERRY J. MILLER, ESQ.
24                               1100 Poydras Street, Suite 3700
                                 New Orleans, Louisiana 70163
25

1   APPEARANCES CONTINUED:

2   For Knauf Entities:              Kaye Scholer
                                     BY:  GREGORY J. WALLANCE, ESQ.
3                                    BY:  STEVEN GLICKSTEIN, ESQ.
                                     425 Park Avenue
4                                    New York, New York 10022-3598

5

6

7   For Taishan Gypsum               Hogan Lovells, LLP
    and Taishan Plasterboard:        BY:  FRANK T. SPANO, ESQ.
8                                    875 Third Avenue
                                     New York, New York 10022

9

10

11

12  For the Homebuilders:            Stone Pigman Walther,
                                        Wittmann & Hutchinson
                                     BY:  PHILLIP WITTMANN, ESQ.
13                                   546 Carondelet Street
                                     New Orleans, Louisiana 70130

14

15

16

17  For the Insurers:                Barrasso, Usdin, Kupperman,
                                        Freeman & Sarver
                                     BY:  JUDY BARRASSO, ESQ.
18                                   909 Poydras Street
                                     24th Floor
19                                   New Orleans, Louisiana  70112

20

21  For Banner:                      Weinberg, Wheeler, Hudgins,
                                        Gunn & Dial
22                                   BY:  NICHOLAS PANAYOTOPOULOS, ESQ.
                                     3344 Peachtree Road
23                                   Suite 2400
                                     Atlanta, Georgia  30326

24

25

JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1    <u>APPEARANCES CONTINUED</u>:

2    For State/Federal              Barrios, Kingsdorf & Casteix, LLP
     Committee:                     BY:  DAWN M. BARRIOS, ESQ.
3                                   701 Poydras Street
                                    Suite 3650
4                                   New Orleans, Louisiana 70139

5

6
     Official Court Reporter:      Jodi Simcox, RMR, FCRR
7                                   500 Poydras Street
                                    Room B-406
8                                   New Orleans, Louisiana 70130
                                    (504) 589-7778
9

10

11

12   Proceedings recorded by mechanical stenography, transcript

13   produced by computer.

14

15

16

17

18

19

20

21

22

23

24

25

4

1                          <u>PROCEEDINGS</u>

2                       (March 23, 2011)

3              THE DEPUTY CLERK:  All rise.

4              THE COURT:  Be seated, please.  Good morning, ladies

5     and gentlemen.  Call the case, please.

6              THE DEPUTY CLERK:  MDL-2047, *In re:  Chinese drywall.*

7              THE COURT:  Counsel, make their appearance for the

8     record.

9              MR. MILLER:  Good morning, Your Honor, Kerry Miller

10    on behalf of the Defense Steering Committee.

11             MR. HERMAN:  Good morning, Judge Fallon.  Russ Herman

12    on behalf of Plaintiffs' Steering Committee, with a point of

13    personal privilege:  Thirty years ago he was wise, he's even

14    wiser today and just as quick.  We want to wish lead counsel

15    for plaintiffs' a happy birthday.  Happy birthday, Arnie.

16             MR. LEVIN:  Thank you.  If Phil Wittmann's here, I

17    believe he's the only one older than I am.

18             MR. WITTMANN:  He still labors under that

19    misimpression.

20             THE COURT:  Okay.  I met with liaison and lead

21    counsel.  I apologize for being late, but our meeting lasted

22    longer than I expected it or scheduled it to meet.  We'll take

23    up the proposed agenda in the order in which it's presented.

24             Pretrial Orders, anything on that?

25             MR. HERMAN:  Nothing new on the Pretrial Orders, Your

1  Honor.

2                  On roman numeral II, Property Inspections,

3  nothing new.

4                  Under Plaintiff and Defendant Profile Forms,

5  there was a motion filed for plaintiff profile forms, but it

6  was premature.  The date hadn't been expired.  Recently, Banner

7  has filed motions regarding profile forms which we're working

8  on and we need to meet and confer with those.

9            **THE COURT:**  Let me say something about the profile

10  forms.  The profile forms, as I've mentioned several times, is

11  a vehicle to obtain discovery and swap discovery that can move

12  the case along.  It's sort of a substitute, in a sense, for

13  some brief interrogatories.  The information gotten in the

14  profile forms is information that's going to be forthcoming.

15  It's going to be forthcoming through other devices.

16                  Regarding the other devices, the problem is that

17  takes more time.  So I create these profile forms and expect

18  people to fill them in and exchange them.  That's essential to

19  the process.  So I'm going to be concerned if somebody doesn't

20  do that.

21                  From plaintiffs' standpoint, if they don't do it

22  and the meet and confer is arranged and done and there's no

23  question that a certain amount had not been filled in, there's

24  no reason for it, then I'm going to set a rule to show cause

25  why those cases should not be dismissed for failure to comply

 1   with the Court's orders.

 2            I'll give these people an opportunity to come to

 3   court and say why they haven't done it.  But if they haven't

 4   done it because they've got other things to do, then they

 5   should not be in this litigation.  They should be doing those

 6   other things that are more important to them.  The same from

 7   the standpoint of the defendants.  So let's keep an eye on

 8   that.

 9            Preservation Order is the next issue.

10            **MR. HERMAN:**  Nothing new on that, Your Honor.

11            **THE COURT:**  How about State/Federal Coordination?

12            **MR. HERMAN:**  State/Federal Coordination, Ms. Barrios

13   is here.

14            **MS. BARRIOS:**  Thank you, Mr. Herman.  Good morning,

15   Your Honor.  Dawn Barrios for the State/Federal Committee.

16   I've prepared CDs again for this status conference.  We have

17   remands current through CTO No. 21.  I'd like to thank all

18   counsel who have been so kind as to continue to provide me with

19   state cases because it only gives Your Honor more information

20   that we're able to put on the CD.

21            There are two items of interest that occurred in

22   state court.  In *Proto versus Futura Group* out of Virginia,

23   there was service on Taishan recently.  And in a case in

24   Florida, *Walker versus Teacher Insurance Company*, in the

25   circuit court of the 13th Judicial District Court in

 1  Hillsborough County, the court held that a homeowner's

 2  insurance coverage did cover Chinese drywall damage.

 3              I'd like to give Your Honor's law clerk a copy

 4  of that along with the CD.

 5          **THE COURT:**  All right.  I invited several of the

 6  judges to participate by phone.  We have several hundred

 7  individuals on the line, many of whom are judges.  I appreciate

 8  the opportunity to work with them.  I'm trying to coordinate

 9  the case so that I don't interfere with their busy schedules

10  and also to get some input from them in various aspects of the

11  case, and if need be, if necessary, if asked to send them

12  anything that I might have.

13              I've also talked with some federal judges.  One

14  judge recently, Judge Davis from Virginia, and I had a

15  conversation and he's on board in the sense of he and I are

16  going to be coordinating our respective schedules and various

17  motions that both of us have on our dockets.

18              So I think, as I mentioned to the people in the

19  earlier meeting, the MDL is the area, is the place, is the

20  forum where we can bring some finality to this litigation.

21  Unlike many cases where you have one or two sides, this is a

22  multi-sided case.  I'm concerned that if a case is only in

23  state court and is resolved in state court, I'm not going to be

24  able to give anybody any finality, comfort, any judgments or

25  anything.

1          When I say that it's important because the

2     cross-claims and the potential cross-claims that those

3     individuals face, they won't have any resolution of them.  The

4     MDL, because I have everybody before me, I can give them some

5     comfort in final resolution and dismiss all of the claims that

6     have or may be filed against them.  So let's keep an eye on

7     that type of situation also.

8          The next issue, Motions in the MDL?

9          **MR. HERMAN:**  Your Honor, there are some motions in

10    the MDL.  Really, there's nothing new.  There are a number of

11    motions before Your Honor.

12         **THE COURT:**  Right.  I'll take up those motions at the

13    end of the conference.  We'll take a brief break and then come

14    back.  I have eight motions before me.  I've looked at the

15    material, I've read your briefs and I've looked at the cases

16    that you have cited to me, all of which have been helpful.

17         Discovery Issues?

18         **MR. HERMAN:**  There are some discovery issues

19    regarding Interior Exterior.  The PSC will be meeting with

20    Mr. Duplantier on Monday.  The Interior Exterior trial is still

21    set for July 18th.  There's a discovery issue regarding the

22    depositions in Germany that were scheduled and were postponed,

23    and the PSC has agreed not to oppose the rescheduling of those

24    depositions in Germany.  As soon as we get an order -- excuse

25    me, a notice, it will be available to be cross-noticed and

1    we'll attend.

2                 With regard to Taishan depositions set in Hong

3    Kong, they're set, Your Honor, April 4th in Hong Kong.

4    Mr. Davis and the parties have worked out a stipulation they'd

5    like to read into the record, and Banner's counsel has

6    something to talk about regarding something.

7         **MR. PANAYOTOPOULOS:**  Your Honor, Nick Panayotopoulos

8    on behalf of certain Banner entities.

9                 As to the Knauf depos, Your Honor, we're

10   planning to proceed with those on the date scheduled unless

11   Knauf gives us some other dates that are more convenient for

12   them in the immediate near future.  If they do that, we'd be

13   happy to reschedule them for their convenience.  So that's our

14   position on that.

15        **THE COURT:**  Okay.

16        **MR. PANAYOTOPOULOS:**  And I believe the Court agrees

17   on it.

18        **THE COURT:**  Sure.

19        **MR. GLICKSTEIN:**  Your Honor, Steve Glickstein for

20   Knauf defendants.

21                 I think everyone agrees that the depositions

22   which -- that were postponed are without prejudice to

23   resetting.  Nobody is saying that the parties are not entitled

24   to take the depositions.  The depositions were postponed for a

25   good reason, and that is that the parties were focusing and

1   devoting their energies towards the settlement efforts that the

2   Court has encouraged, and there is no looming deadline that

3   necessitates the taking of the depositions at this time as

4   opposed to another time.

5             So we're not arguing about anybody's entitlement

6   to the depositions.  We're just having a debate as to whether

7   they need to be re-noticed at the present time or whether we

8   ought to let the settlement efforts play out and see if they

9   become necessary.

10            So, you know, we can -- you know, if it's what

11  Your Honor wants, we could set dates.  But it seems to me that

12  we ought to see the progress that we're making and set dates

13  when it becomes clear that the progress isn't happening.

14            The other concern we had is that there is a

15  disagreement among the various parties to the litigation as to

16  when the depositions should go forward.  I think the PSC and

17  the HSC concur with us that it would be better to defer the

18  depositions, we'll see whether they're necessary; and if they

19  become necessary, we'll take them.

20            Banner and its insurer Chartis and the Louisiana

21  Attorney General would prefer to take them now.  We certainly

22  don't want to be in a position where we're taking them once for

23  the benefit of Banner and Chartis and the State of Louisiana

24  and a second time for the benefit of the Plaintiffs' Steering

25  Committee and the HSC.

1           And so to the extent that other parties have

2    good reasons that they ought to be taken at a later date rather

3    than an earlier date, we certainly don't want to be caught in

4    the middle of that.  I don't see any prejudice to any party in

5    waiting to reschedule it until there is such time as something

6    pending and a deadline and they become necessary.  That's our

7    position.

8           **THE COURT:**  Okay.  Let me just speak on that.

9    There's no question in my mind that you have a right to take

10   the depositions.  There's no doubt about that.  The issue is

11   when.  I think that the best way of doing it is to have you,

12   Nick and Steve get together and talk about this and see whether

13   you all have a meeting of the minds.  If you don't, then I'll

14   come into it.

15          It makes sense to me that if settlement is

16   imminent or if settlement, even partially, is imminent that you

17   focus your attention on that.  But you all know better than I

18   at this stage whether or not you should take the depositions

19   now or later.  But I do feel that when they're taken, they

20   ought to be taken for everything.  I don't think it's fair to

21   have the defendant constantly having their depositions retaken

22   by various levels of the litigants.  It just seems to me that

23   that's inefficient.  So let's keep all of that in mind too.

24          **MR. HERMAN:**  May it please the Court, maybe I have

25   not made the PSC's position clear and I want to make it clear:

 1   I advised Nick and Banner that when they reached agreement or

 2   there were court-ordered dates, the PSC would participate and

 3   not oppose in any way the rescheduling of those dates.  We're

 4   willing to help coordinate with the homeowners -- the

 5   homebuilders and the other parties.  But we no longer feel that

 6   it's necessary for us to have an opposition to the resumption

 7   of those depositions.

 8            **THE COURT:**  Okay.

 9            **MR. PANAYOTOPOULOS:**  Your Honor, we appreciate the

10   PSC's cooperation in that regard, and that's great.  That's

11   what we want.  The problem has been, for example, one

12   deposition that got continued in October for five months now

13   we've been -- I think it was October or November, we've been

14   asking for a date to -- so that Banner has an opportunity to

15   ask those questions.  We can't get a date in the last five

16   months.  So for those depositions, all I've asked is I've said,

17   "If you want to reschedule, that's fine.  Just give us dates."

18   And Knauf has just refused to provide a single date.

19            So we're fine with rescheduling them for their

20   convenience.  We just want to make sure that we have an

21   opportunity to do so.  We've already gone to trial without

22   having the benefit of these.  Knauf is fighting this court's

23   jurisdiction still, and we've got claims against Knauf that we

24   want to pursue.  So we appreciate the Court's indulgence and

25   we'll talk to the PSC about scheduling.

 1           **THE COURT:**  Yes.  Let's meet within the next ten

 2   days.  You all meet and then give me a report as to what you

 3   all have decided.  If you can't decide, tell me you can't

 4   decide and then I'll decide.

 5           **MR. PANAYOTOPOULOS:**  Thank you, Your Honor.

 6           **MR. DAVIS:**  Your Honor, with respect to Taishan

 7   depositions that are scheduled April the 4th, just to give the

 8   Court an update:  We've had discussions with counsel for

 9   Taishan and there is scheduled for tomorrow an interview with

10   the interpreter that the PSC has retained.  Taishan wants to

11   make sure that that interpreter can speak Mandarin and English.

12   So they're going forward with that discussion tomorrow.

13           The PSC secured a location because Taishan was

14   unable to provide a location for all the consecutive days.  So

15   we have a location.

16           We also have coordinated with one another with

17   respect to translated documents.  Quite a number of the

18   documents that were produced by Taishan are in a foreign

19   language.  So what we have agreed to between Taishan and the

20   PSC is that both the PSC and Taishan will provide translations

21   of Taishan-produced documents that each party has in their

22   possession, meaning each party may have gotten their own, and

23   we'll swap them with one another.  That will be done by Friday

24   at the latest.

25           With respect to supplements, because it is an

1    ongoing process, we've agreed that we will update one another

2    and provide those supplements as soon as possible.  Any

3    document that is produced by Taishan is fertile ground for the

4    deposition questioning whether or not that document is

5    transcribed or a transcription or interpretation is produced.

6              Both parties agree that we do not want delay in

7    the questioning of a witness and we'll use our best efforts to

8    move that process on.  And as a result, what we'll do is we'll

9    have at the deposition both the foreign language document as

10   well as the transcribed document or translated document and

11   we'll utilize them at the deposition.

12             Problems with translations or objections to

13   those translations, those that are being exchanged will be

14   provided as soon as possible, but in no event later than at

15   least the end of the month so that we can know if there's some

16   problems with the translations.

17             The only other item that I want to apprise the

18   Court of is that, I believe it was yesterday, we got another

19   rolling production from Taishan, although we thought that we

20   had everything.  But there were in excess of 400 pages that

21   came in, most of which are in a foreign language.  We're

22   hopeful that we now have everything that's being produced, at

23   least with respect to this production, so that we can have a

24   meaningful deposition.

25             We are concerned about that.  It's late

1    production, but we'll deal with that, do the best we can.  We

2    certainly expect that the three deponent witnesses that have

3    been put up by Taishan for each of the two companies will be

4    forthcoming and we won't have problems with the questioning.

5                    I know Your Honor has advised that Your Honor is

6    available if there are issues with respect to questioning

7    during that deposition.  We have coordinated with the

8    homebuilders and several other counsel who have advised that

9    they plan on appearing at the deposition.

10                   We will attempt to move that process along just

11   like we did with the Knauf foreign depositions so that everyone

12   has an opportunity to question.  And if, in fact, there are any

13   counsel who we haven't spoken with that plan on being in

14   attendance, if they'd contact me as soon as possible so that we

15   can coordinate that and get the schedule coordinated amongst

16   the various questioners, that would be very helpful.

17              **THE COURT:**  All right.  Let me know when you get a

18   little bit further down the line about when and time-wise so

19   that I can give you phone numbers that I can be reached at if

20   you do need me.

21                   Also, if there's a problem with the discussion

22   of the translation, if you get that to me relatively soon, I

23   have somebody on staff now that reads Mandarin, so we'll be

24   able to deal with it.  I hope there are not a lot of those

25   because we've got other things to do, but we can deal with that

 1    if it's necessary.

 2              **MR. HERMAN:**  May it please the Court, just one other

 3    issue.  If liaison counsel for the various cases in the

 4    litigation will notify us, we will provide them the

 5    translations we get as well as the translations we make in

 6    order to avoid any inconsistency and extra cost.

 7              **THE COURT:**  Okay.

 8              **MR. DAVIS:**  Thank you, Your Honor.

 9              **THE COURT:**  Thank you very much.

10              Freedom of Information Act, anything on that?

11              **MR. SPANO:**  Your Honor, Frank Spano for Taishan

12    Gypsum and Taishan Plasterboard.  I just want to comment

13    briefly on the agreement for the exchange of translations.

14              **THE COURT:**  Okay.

15              **MR. SPANO:**  I want to confirm that as part of that

16    agreement, the PSC agrees that at a time -- at the time an

17    exhibit is marked at the deposition, if that exhibit has an

18    accompanying translation, it will be provided to the other

19    attorneys at that time so there's no delay while other

20    attorneys look to locate the translations.

21              **THE COURT:**  Right.

22              **MR. SPANO:**  The second thing that was part of our

23    proposal, and I just want to confirm is part of the agreement,

24    is that there's no waiver of the attorney/client or work

25    product privileges occasioned by this exchange of agreements.

1           And lastly, with regard to our supplemental

2    document production, we made an effort to make sure we had

3    produced everything that we said we were going to produce on

4    those topics and that is complete now.  So there won't be any

5    further production in advance of the deposition.

6           THE COURT:  That needs to be also understood, that

7    under the new 501 now you have grab-back privileges and you

8    have comfort that you're not waiving anything if you produce

9    something that you didn't mean to produce or whatever it is.

10   So I don't see this as waiving any privilege.

11          MR. DAVIS:  We have no problem producing those

12   translations at the deposition.  We just told counsel that the

13   one thing we are very concerned about, and many of the

14   deposition questioners are concerned about, is delay.

15          We realize that there are interpreters there and

16   we do not want that to be cause for any delay in this

17   questioning because it is a tedious process with the

18   interpreters.  We know how that is and we want to get through

19   these depositions as quick as possible because, quite frankly,

20   we don't think that the time allocated may be sufficient.  So

21   we have raised that issue previously.  We've advised counsel of

22   that.  So we really just want to move through this.

23          THE COURT:  Yes.  Let's try not to get hung up on

24   translations.  We don't want another Steinbeck's East of Eden

25   where they spend two chapters on discussing whether may or

 1   *might* was the word.

 2                The next, Freedom of Information Act.

 3           **MR. HERMAN:**  Nothing new, Your Honor.

 4           **THE COURT:**  The only thing from the public records or

 5   public institutions, I saw that CPSC came out with a report.

 6   They apparently have taken an issue with some of my findings.

 7   I have great respect for that group.  But they have to

 8   understand that the way that I went about establishing this

 9   protocol was that we tried about ten cases and we had the best

10   lawyers in the country put on the evidence in those cases.  We

11   had the best experts in the country come and testify about that

12   matter.

13                I listened to the evidence in the cauldron of a

14   trial, where all of us are familiar with those environs.  We

15   know that it's very hot and steamy in the cauldron of a trial

16   and what comes out of it generally is pure metal and it is very

17   significant when it comes from that institution.

18                So I'm firmly convinced that the protocol that

19   came out of those trials is the correct protocol.  It also is a

20   practical protocol.  The CPSC oftentimes focuses on immediacy,

21   whether there's an immediate threat of a problem; and they have

22   concluded that there's no immediate threat of a problem.

23                But I'm focused not only on the immediacy but

24   down the road apiece.  It makes no sense to me -- no sense to

25   me -- when the house is gutted, when there's nothing standing

1   but the studs, that the wiring, which the evidence is replete

2   that the coating is not sufficient to keep the gases out of it

3   and that there's evidence that there's usually corrosion under

4   the coating.

5                So it makes no sense to me to put the house back

6   together with the same wiring and in five years or three years

7   or two years or ten years even, the wiring goes bad, the house

8   burns down or something else happens.  Then the least you have

9   to do is to strip the house again.

10               It makes no sense to do it that way, and that's

11  what I found based on the evidence that I listened to for

12  weeks.  That's what I found and that's why I found it.  So

13  maybe their approach might be a little different and I wanted

14  to at least mention that in the record and explain my position.

15               Filings in the MDL, anything?

16          MR. HERMAN:  Your Honor, as we previously indicated

17  today, there's a July trial regarding Interior Exterior, that's

18  July 18th, in Your Honor's courtroom.  Anybody that wants

19  information can look at page 14, page 17 of Your Honor's status

20  conference report, which will be posted.

21               Under Filings in the MDL, nothing new.  We

22  continue to work on complaints of new Chinese drywall cases,

23  which will either be intervened or which will -- in existing

24  cases will be separate.

25          THE COURT:  Notices of Appearances, the next item on

1   the agenda.

2            **MR. HERMAN:**  Yes, Your Honor, there's nothing new

3   there.

4            **THE COURT:**  What about Insurance Issues?

5            **MR. HERMAN:**  We have had, since the last status

6   conference, numerous discussions with representatives of

7   insurers, L&W Supply.  David Conner, I saw earlier today, has

8   been involved in those discussions, both with Mr. Miller and

9   myself and Mr. Levin.  Numerous discussions with Interior

10  Exterior insurers.

11           Ms. Barrasso is liaison for insurers and the

12  individual insurers that insure basic coverage, the first level

13  of coverage, and those discussions have continued.  They've

14  been productive.  Mr. Nizialek has, on behalf of Interior

15  Exterior, has gathered us together at various times.  We've

16  also met with representatives of the insurers of Banner and

17  those discussions have proceeded very well.  So that in terms

18  of issues in the main what we are concerned with is moving the

19  case along.

20           Just one other comment and then I'll turn it

21  over to Ms. Barrasso.  The Tampa case that Ms. Barrios alluded

22  to in a recent decision regarding a -- a type of homeowners

23  policy is a state district court decision.  And as I understand

24  it, it's going to be working its way up through that state

25  court appellate system.

1        But it has a peculiar policy, different than the

2  policies we've been dealing with in the sense that it is an

3  all-risk policy that has certain verbiage that other policies

4  don't have.  I just wanted to point that out for the record.

5        **MS. BARRASSO:**  Judge, Judy Barrasso for the Insurers'

6  Steering Committee.

7        Just a couple of comments.  Mr. Herman is

8  correct and there have been various meetings that are ongoing

9  and those will continue.  Also, the Court had ordered a global

10  mediation for the commericial general liability insurers and

11  the homebuilders.  We now have met with the PSC, Homebuilders'

12  Steering Committee and our steering committee and we propose to

13  the Court that we meet with John Perry and try to come up with

14  some kind of orderly process for that mediation.  I think that

15  order's before you.

16        **THE COURT:**  Right.

17        **MS. BARRASSO:**  In addition, the Court had entered a

18  scheduling order regarding the filing of motions and briefing

19  for the CGL insurers.  I think some motions will be filed

20  tomorrow on the jurisdictional issue pursuant to that order.

21        Then, finally, Judge, pursuant to your rulings

22  on the homeowners' insurance claims, those claims against

23  insurers in the MDL, for the most part, have been dismissed

24  with prejudice, including the *Hernandez*, Omni VI.

25        Thank you, Judge.

1       **THE COURT:**  With regard to the insurers, I feel that
2   we're at the point now where you can evaluate the census of the
3   litigation.  That was a big issue, how many drywall homes were
4   involved, where they were located, things of that nature.  That
5   was the first hurdle that we had to get over.  I think we're
6   over that now.  We know where they are.  We know there are a
7   number and, therefore, you know, to some extent, your exposure
8   at least numbers-wise.

9               Then we're next focused on whether or not we
10  could get something from bellwether trials that would help
11  further; and the bellwether trials, both the contradictory
12  process and defaults, numbered about ten.  From those
13  bellwether trials, as I mentioned, a protocol was created.

14              The protocol at that point was theoretical; and
15  protocols oftentimes theoretically look great, they just don't
16  fly.  Until the Wright brothers got it off the ground, the
17  airplane was just a theory.  So we wanted to get this protocol
18  off the ground.  So what we did was to put some bricks and
19  mortar on it and use that protocol in the real-word atmosphere.
20  We'll hear later from counsel about how that's going.

21              But they're now remediating houses using that
22  particular protocol.  Hopefully, that will at this point give
23  you some idea as to the nature and scope of the risk.  And
24  while some of these issues of coverage have not been clarified
25  and not been ruled on, now's an opportunity to see whether or

 1   not the matter can be globally resolved at this level.

 2                    You know the exposure.  You can't evaluate

 3   totally your risk because there's some areas that haven't been

 4   solidified.  But that might be advantageous to the parties at

 5   this time.

 6                    So that's why I've urged counsel to take a look

 7   at it at this phase of the case to see whether or not they'd be

 8   interested in trying to resolve the matters.  That's what we're

 9   focused on at this point.

10                    Thank you.

11          **MS. BARRASSO:**  Thank you, Judge.

12          **THE COURT:**  Next, Service of Pleadings

13   Electronically, anything on that?

14          **MR. HERMAN:**  Nothing new on that, Your Honor.

15          **THE COURT:**  How about the Master Complaint?  Arnold?

16          **MR. LEVIN:**  Arnold Levin.

17                    It's like a broken record, we're not in a

18   position of a master complaint because cases are still coming

19   in to be filed in omnibus complaints.  We are moving on the --

20   omnibus complaints are being filed on a regular basis.  They're

21   bringing in new defendants and they're also against existing

22   manufacturing defendants.

23                    Knauf has agreed to accept service, which is

24   expediting the processing of the plaintiffs' claims so that

25   they can get back into their homes.  We still have a problem

1    with Taishan.  For some reason Taishan knows that we know how

2    to serve them because they've been served even though it takes

3    nine months and they won't accept the pleadings when they come

4    to their offices.  But they are served.  Taishan has now

5    entered appearance for two of the Taishan corporations.

6              Some of the upstream Taishan parents, downstream

7    subsidiaries have allowed defaults to be entered against them,

8    despite the fact that counsel who appears here for Taishan

9    argues they shouldn't have been sued but won't enter an

10   appearance so we can at least deal with it.

11             We have no choice but to utilize the Hague

12   proceedings.  No choice to have delays of nine months in

13   service.  I don't know what's to be gained by it, but I guess

14   they have their own agenda, and it certainly is an agenda.  But

15   I can assure them that we will continue to file against them.

16             THE COURT:  Okay.

17             MR. LEVIN:  And that takes us to Mr. Herman again.

18             THE COURT:  All right.

19             MR. HERMAN:  Your Honor, there is no special master's

20   report, I believe for today.  And with regard to Item XIX, it's

21   been addressed.  Your Honor continues to post Frequently Asked

22   Questions at www.laed.uscourts.gov/drywall/faq.htm.  We ask all

23   interested counsel and pro se's to please access the FAQs

24   before contacting liaison counsel for any of the parties.

25             Your Honor, in Item No. XXI, Matters Set for

1 Hearing, and I believe Your Honor's indicated that you want to

2 handle those after the status conference.

3         **THE COURT:** Right. Right. We'll take a brief break

4 and then I'll come back. Let's see. Motion to Establish A

5 Plaintiffs' Litigation Expense Fund.

6         I received from the plaintiff a motion to

7 establish a voluntary fund. There are apparently individuals

8 who want to resolve some of their cases and they wanted to

9 voluntarily deposit some money into the registry of the court.

10 I've created such a fund and it's a voluntary contribution made

11 by the parties.

12         **MR. LEVIN:** Your Honor, that was filed yesterday, and

13 I believe to the extent it has to be taken up, it will be taken

14 up at the next conference. It's not the mandatory fund, but

15 that's been filed. It's just that outside of the remediation

16 program cash has changed hands, or will change hands, and I

17 guess all counsel realize the commitment of the common benefit

18 fund.

19         We just wanted to do it before the Court in the

20 court's registry and not to be touched without order of the

21 Court. So that's the purpose of that.

22         **THE COURT:** Right, and it is a voluntary fund.

23         Mediation, we've talked a little bit about that.

24         Class Certification, I've talked about that, and

25 I'll be coming out with another order on that.

1          Pilot Program?

2          **MR. HERMAN:**  Your Honor, in terms of -- excuse me,

3   Your Honor.  In terms of mediation, I think all parties that is

4   involved in mediation want to acknowledge that Mr. Perry and

5   Mr. Kingrea have done an excellent job, and that all of the

6   parties are comfortable with the process of these mediators.

7          **THE COURT:**  We've had several meetings, actually

8   yesterday, and they're ongoing.  So I know they have some in

9   New York, but I've also entertained some of them here in court.

10  I think we're moving in the right direction on all of that.

11          Pilot Program?

12          **MR. HERMAN:**  Your Honor, the pilot program's ongoing

13  and I'm certain Mr. Wallance has his usual report.  Greg?

14          **MR. WALLANCE:**  Happy Birthday, Arnie.

15          Greg Wallance, Kaye Scholer, Knauf entities.

16          Your Honor, before I get to the pilot program

17  report, let me just say as far as the CPSC guidance that came

18  out, for purposes of the pilot program we are continuing to

19  remove all of the electrical wiring after the drywall is taken

20  down and replace it with new wiring.

21          As to the pilot program, when I was last here,

22  we reported to you that we had seven homes in remediation.

23  Today we have 30 in remediation.  In total there are 165 homes

24  moving through the program.  Interestingly, we had projected

25  three months to finish the first two homes that began on

 1   February 7th.  Those homes will actually be finished at the end
 2   of this week, which is 60 days, and that's a good sign I think
 3   for the utility and effectiveness of this process.
 4              As well, and we're particularly grateful for the
 5   cooperation of IMEX and L&W in assisting us in the pilot
 6   program.  They've been very, very helpful.  But pursuant to
 7   arrangements we've got, we are now seeking or reaching out to
 8   attorneys for up to 150 more homeowners, many in Florida, the
 9   west coast of Florida even some around Fort Lauderdale.
10              If we can make good progress with them, I think
11   you're going to see this ramp up very, very quickly.
12         THE COURT:  Great.  That's fine.  As I mentioned
13   before, the future of it is to get to the point where there are
14   enough homes -- and I don't know the number whether it's 100 or
15   200 or 300 or 50 or whatever it is -- but we ought to be able
16   to get to a particular number of homes where they can be
17   categorized and where the parties can then monetize the
18   remediation process so that we know how much it costs and the
19   individuals will be given an opportunity to accept funds or the
20   remediation work or some way of dealing with it in a little
21   more expedited manner.
22              We're not there yet, but that's hopefully where
23   we're going so that we can deal with it in that way.  Thank
24   you.
25         MR. WALLANCE:  Your Honor, we fully understand what

 1    Your Honor's objectives are and we're very focused on coming up
 2    with a way to address them.
 3              **THE COURT:**  Good.  Okay.
 4              **MR. HERMAN:**  Your Honor, may it please the Court, the
 5    PSC is going to meet and confer with Knauf.  Our issue is that
 6    if there are going to be another 130, 150 homes to be put on a
 7    list, that folks who are threatened with bankruptcy or
 8    eviction, under those circumstances, be given a priority, and
 9    we're certain that based on history Knauf's been very
10    responsive to that.
11              **THE COURT:**  All right.  Another item, Stipulation
12    Concerning Service of Process and Product Identification,
13    anything on that?
14              **MR. LONGER:**  Your Honor, we have been working to
15    address this matter with Taishan and we will report to the
16    Court as time goes by.
17              **THE COURT:**  All right.  It makes sense to me that we
18    do that sort of thing and get over that.
19                   Some new items on the agenda, Homebuilders' Fees
20    and Costs.  I issued an order creating a common benefit fund
21    for attorneys representing homebuilders.  The point person, if
22    you have any questions on that, is Dorothy Wimberly.  You can
23    call her and discuss it with her.  This is necessary.  I think
24    the liaison counsel for that group is doing a good job in
25    working through this issue.

1          These costs to me are clearly costs of defense

2   and that they should be forthcoming in accordance with my

3   order.  If anybody has any problems, questions, talk to Dorothy

4   Wimberly or bring it to my attention.

5          **MR. LONGER:**  Your Honor, there's one thing that I

6   neglected to mention, which was regarding Pretrial Order No.

7   10, which is the last item on the agenda.

8          **THE COURT:**  Yes.

9          **MR. LONGER:**  We have been meeting and conferring with

10  counsel for Taishan over the -- since the last status

11  conference.  And just last night, Taishan produced and filed

12  with the court a letter indicating the new interpretation of

13  the photo catalog that accompanies Pretrial Order No. 10.

14          We have been provided the copy of that this

15  morning and we've had a look at it.  It looks to be an order.

16  We don't think that there's -- we're going to go back and

17  actually review it more carefully.  But it seems to me that

18  that is an order and the Pretrial Order No. 10 and the photo

19  catalog therein needs to be updated or revised to address the

20  matters that are set forth in this letter.  And I suppose we'll

21  be meeting with Lexy Butler to address how to accomplish that.

22          **THE COURT:**  Right.  Let's meet and confer with

23  counsel first and then bring it to me in some form or fashion

24  and I'll deal with it.

25          **MR. HERMAN:**  Your Honor, for the benefit of attorneys

 1   who are representing individual homeowners, I do want to make

 2   or amplify one statement that Lead Counsel Levin stated:  The

 3   PSC is determined to spend $100,000 of service to make sure

 4   that Taishan is served.

 5               In the meantime, homeowners, particularly in

 6   Louisiana, Mississippi and Florida, who have suffered natural

 7   disasters, survived natural disasters are now facing in many

 8   instances bankruptcy and eviction and foreclosure in alleged

 9   Taishan properties that have been inspected and documented, and

10   the problem is ongoing, particularly when it takes $100,000

11   under the Hague and nine months to effect service.

12               We're mindful that the United States Supreme

13   Court has two matters before it relating to, in quote, foreign

14   corporations, end quote.  I make this statement because

15   Taishan's attorneys are present and I believe that all of us

16   are hopeful that Taishan's attorneys will communicate the

17   frustration and the difficulties that individual innocent

18   homeowners are continuing to suffer.

19               And I appreciate the opportunity to make these

20   remarks for the record.

21        THE COURT:  Yes.  I think everybody should know that

22   the problem with incurring costs that that is a cost to the

23   defense too and that it's recoverable in addition to any

24   recovery.  So oftentimes expenses of litigation in this form

25   and fashion could dwarf the amount recovered.  So you're

1  looking at not only rebuilding the home, but in addition a

2  substantial amount that was made necessary by the process, and

3  I don't think that makes a great deal of sense.

4           The next meeting will be on April the 26th and

5  then the following one is May 26th.

6           Okay.  Anything else from anyone out in the

7  audience or on the phone?

8           Okay.  Folks, I'll be back in ten minutes on the

9  motions.  Court will stand in recess.

10          **THE DEPUTY CLERK:**  Everyone rise.

11          (WHEREUPON, the proceedings were concluded.)

12                          *****

13                       <u>**CERTIFICATE**</u>

14          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

15  for the United States District Court, Eastern District of

16  Louisiana, do hereby certify that the foregoing is a true and

17  correct transcript, to the best of my ability and

18  understanding, from the record of the proceedings in the

19  above-entitled and numbered matter.

20

21

22                      <u>S/ Jodi Simcox, RMR, FCRR</u>
                       Jodi Simcox, RMR, FCRR
23                     Official Court Reporter

24

25