IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 09-2047<br><br>SECTION L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL CASES | MAG. JUDGE WILKINSON |

### DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S RESPONSE TO PLAINTIFF STEERING COMMITTEE'S MOTION TO LIFT STAYS

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendant The North River Insurance Company ("North River") opposes the Plaintiffs' Steering Committee's ("PSC") Motion to Lift Stays (the "Motion")[1] that asks the Court to lift two previous stays entered by the Court in Pre-Trial Order No. 1H and in the May 13, 2011 Preliminary Approval Order pertaining to the settlement agreement involving North River's insured, Interior Exterior Building Supply, L.P. ("Interior Exterior").  North River opposes the Motion for three reasons:

♦ The Motion is premature because, at this time, Interior Exterior has not assigned any claims to Plaintiffs and Interior Exterior's primary insurers, Arch Insurance Company ("Arch") and Liberty Mutual Insurance Company ("Liberty Mutual"), have not exhausted their policies. Allowing claims to proceed against North River now would also require Interior Exterior, Arch, and Liberty to be involved in the litigation.  The PSC's counsel has previously represented to the Court that, under the terms of the Interior Exterior settlement agreement, claims against North River cannot go forward until that settlement is completed.  It makes no sense for the Court to

---

[1] See Document #12459.

lift the stay in favor of the PSC to proceed with litigation on claims the PSC does not have a present right to prosecute and may never have a right to prosecute.

♦ The Motion is premature because, under the pending Knauf Defendants' settlement agreement, the plaintiffs who may have claims against North River (or who may obtain such claims if the Interior Exterior settlement agreement is approved) will assign those claims to the Knauf Defendants. It is neither logical nor efficient to lift stays in favor of parties who are prepared to assign away any interest they may have in claims against North River. If the Court grants the relief requested by the PSC, and if the Court approves the pending settlements with Interior Exterior and the Knauf Defendants, many plaintiffs will have no claims against North River. It makes no sense and would be very inefficient to force North River to litigate against parties who may have no justiciable interests in those claims six months from now.

♦ The relief requested by the PSC will not allow any significant amount of claims against North River to proceed because the vast majority of claims involving North River are also subject to the particular stay that this Court recently entered pertaining to the Knauf Defendants' settlement agreement. Even if the two stays identified by the PSC are lifted, litigation will still be stayed by the Court's order relating to the Knauf Defendants because the PSC has requested no relief from that stay. When the claims against North River are litigated, it will be North River's position that it has claims against the Knauf Defendants that should be litigated at the same time. The efficient use of judicial resources dictates that all of those claims be tried in a single proceeding rather than on a piecemeal basis.

North River is eager to resolve the claims against it and its claims against the Knauf Defendants and Taishan. North River has been prevented from proceeding by the stays entered by the Court, and the Court has previously denied one request by North River to lift the relevant stays to allow North River to proceed against the Knauf Defendants. See Document # 8325. It

makes no sense, however, to lift the stay to allow claims involving North River while the Interior Exterior and the Knauf Defendants' settlement agreements remain pending. Those proposed settlements involve two assignments of claims against North River. The rulings by the Court on those proposed settlements could result in two assignments of claims against North River: once from Interior Exterior to the settlement class members, and again from settlement class members to the Knauf Defendants. That means if the Court approves those settlements – and the PSC has requested that the Court do that right now – the party or parties who have the right to prosecute claims against North River right now will most likely not be the party or parties who will have the right to prosecute those same claims a few months from now. Rather than lifting the stay to allow plaintiffs who (1) do not currently have the right to assert claims against North River and (2) have asked the Court to allow them to assign any claims they obtain to somebody else, the better approach is to leave the stays in place until the settlement dust settles and the real parties in interest are determined.

This Court has worked diligently to enable this multidistrict litigation proceeding to go forward in a smooth, efficient, and rational matter. The PSC, whose announced goal is to assign away the vast majority of the settlement class members' claims against North River (including claims they presently do not have), has shown no justification for abandoning that approach and rushing into a new phase of the proceeding that will most likely be a waste of time. Judicial efficiency, proper use of the parties' resources, and basic fairness dictate that the Court should proceed to resolve the pending class settlement motions. Once that is done, and it is determined who has the right to prosecute which claims, it will make sense to go forward on remains claims in the MDL. The PSC's motion to lift stays is inconsistent with the Court's prior approach, is illogical in light of the proposed assignment of claims the PSC has asked the Court to approve, and will only resolve in unnecessary expense.

For these reasons, explained more fully below, North River respectfully requests that this Court deny the PSC's Motion to lift the stays at this time.

## INTRODUCTION

North River was the umbrella insurer to Interior Exterior Building Supply, L.P. ("Interior Exterior") for several years, including the years in which Interior Exterior distributed Chinese-manufactured drywall manufactured by the Knauf Defendants and others.  Last April, Interior Exterior and its primary insurers, Liberty Mutual Insurance Company ("Liberty Mutual") and Arch Insurance Company ("Arch"), entered into a settlement agreement with the PSC that would resolve the PSC's claims against those entities if finally approved.  That settlement agreement reserved the rights of a putative settlement class to pursue any remaining claims against North River, as a non-settling defendant, in its capacity as Interior Exterior's insurer.  On May 13, 2011, this Court issued a Preliminary Approval Order concerning that settlement agreement.  Among other things, the Preliminary Approval Order stayed all litigation pertaining to Interior Exterior pending the settlement proceedings and further orders from this Court.  However, the Court has not held a final fairness hearing on that settlement agreement, and as such it remains unapproved and subject to amendment or non-approval.

On January 10, 2012, this Court issued a Preliminary Approval Order concerning a settlement agreement between the PSC and the Knauf Defendants.[2]  The settlement agreement between the PSC and the Knauf Defendants would, if implemented as currently written, result in the full remediation of the houses of all settlement class members, including class members who received KPT drywall distributed by Interior Exterior.  North River understands if the settlement

---

[2] North River understands that, for purposes of the proposed class settlement, the "Knauf Defendants" are defined as Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf GIPS KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AM GmbH & Co. KG, Knauf do Brazil Ltda., and PT Knauf Gypsum Indonesia.

agreement is approved, the Knauf Defendants would pay 100% of the remediation cost for any class member whose drywall was more than 80% KPT drywall, while paying a lesser percentage of the total remediation to those class members who have 80% or less KPT drywall in their house. Additionally, North River understands that the settlement requires the Knauf Defendants to establish a $30 million fund to resolve claims for bodily injury and consequential damages allegedly arising out of the installation of KPT drywall in these houses. This Court's Preliminary Approval Order also enters a very broad stay order enjoining any claim potentially involving any of the Knauf Defendants where KPT Chinese Drywall may be at issue. Page 28 of the Court's Order states in relevant part as follows:

> Except as provided in the following paragraph, Prosecution of the Litigation, the Omni Complaints and Related Actions against the Knauf Defendants shall be stayed pending the settlement proceedings and further Orders of the Court. *The stay will extend to all cases involving KPT Chinese Drywall filed on or before December 9, 2011, whether or not a Knauf Defendant is a party to the case, unless an objection is filed with the Court by January 16, 2012.* (emphasis added).[3]

## ARGUMENT

### I. THE PSC'S CLAIMS AGAINST NORTH RIVER WOULD BE PREMATURE

It would be premature for the Court to lift the stays described above as to the PSC's claims against North River because the Interior Exterior settlement has not yet been finally approved. Section 14.1 of the Interior Exterior settlement agreement states that, as to North River, "the PSC will amend the *Silva* actions, the *Amato* action, and/or file a new complaint against [North River], pursuant to the Assignment of Insurance and as authorized by the Court." The "Assignment of Insurance" refers to the purported assignment by Interior Exterior of its

---

[3] Order Preliminarily Approving Knauf Settlement, Conditionally Certifying a Knauf Settlement Class, Issuing Class Notice, Scheduling a Settlement Fairness Hearing, and Staying Claims as to the Knauf Defendants, *In re: Chinese-Manufactured Drywall Products Liability Litigation*, Case No. 2:09-MD-02047, Document # 12138 (filed January 10, 2012).

rights under the North River Policies to the PSC in the as-of-yet still unapproved Interior Exterior settlement agreement.  During the status conference in which the settlement agreement was announced, PSC counsel Arnold Levin informed the Court that the PSC could not take any action against North River until after the Interior Exterior settlement agreement was finally approved.

> THE COURT:  Let's look at the pleadings to see whether or not you need to amend against [North River] to bring them directly before the Court so that we can proceed with dispatch against [North River].
>
> MR LEVIN:  Your Honor, we will not have the ability to do that until after the fairness hearing.
>
> THE COURT:  Okay.
>
> MR. LEVIN:  Because that's part of the relief.
>
> THE COURT:  Okay.[4]

Presumably, Mr. Levin was referring to the limitation placed on the PSC by Section 14.1 of the Interior Exterior settlement agreement.  The parties to the Interior Exterior settlement agreement may move to amend the agreement, as they did recently in moving to amend the agreement to provide for the creation of an allocation committee.[5]  However, North River is not aware of any amendment to Paragraph 14.1 of the settlement agreement that would allow an action against North River to proceed prior to approval of the settlement agreement.

Nor would such litigation be a productive use of judicial resources, because until the Court finally approves the Interior Exterior settlement agreement, neither North River nor the PSC will know specifically which Interior Exterior class members will have any remaining

---

[4]  Transcript of Status Conference Proceedings Heard Before the Honorable Judge Eldon E. Fallon, United States District Judge, *In re:  Chinese-Manufactured Drywall Products Liability Litigation*, Case No. 2:09-MD-02047, April 26, 2011, at 6:12 – 21.

[5] Joint Motion to Substitute Amended Exhibit, *In re:  Chinese-Manufactured Drywall Products Liability Litigation*, Case No. 2:09-MD-02047, Document 12258 (filed January 24, 2012).

claims for which they have not been fully compensated.  For example, as discussed above, certain parties recently created an allocation committee to resolve disputes among themselves over how the funds paid towards the Interior Exterior settlement are to be distributed among the respective class members.  The work of that allocation committee may not be completed until March 5, 2012, with the Court resolving any further disputes after that.[6]  Even if the parties agree on an allocation plan that minimizes the number of opt-outs and objections to the Interior Exterior settlement agreement, the allocation plan would not be binding until this Court finally approves the Interior Exterior settlement agreement.  Until then, neither the PSC nor North River would know with certainty which claimants still had a compensable claim to assert.

Furthermore, if the PSC were to file an action against North River before the Court finally approves the Interior Exterior settlement agreement, such an action (presumably under the Louisiana Direct Action Statute) would also involve at a minimum Interior Exterior and likely Arch and Liberty Mutual as necessary parties.  The PSC's involvement of all of those parties in coverage litigation while those parties are supposed to be finalizing the Interior Exterior settlement agreement seems contrary to all of the settling parties' express intentions.

For these reasons, North River submits that it is premature to grant the PSC's Motion until after the Interior Exterior settlement agreement is finally approved.

## II.  THE PSC'S MOTION IS PREMATURE TO THE EXTENT IT PERTAINS TO CLAIMS TO BE RESOLVED BY THE PENDING KNAUF DEFENDANTS' SETTLEMENT AGREEMENT

Not only is the PSC's Motion premature because the Interior Exterior settlement agreement has not been finally approved, it also premature because of the now-pending Knauf Defendants' settlement agreement, which also remains to be approved.  If this Court approves

---

[6] *Stipulated Order Regarding Banner and INEX Allocation Plans and Opt Out and Objection Dates, In re: Chinese-Manufactured Drywall Products Liability Litigation*, Case No. 2:09-MD-02047, Document 12478 (filed February

the Knauf Defendants' settlement agreement in its current form, it seems likely that few Interior Exterior claimants would still have claims to assert against North River for uncompensated damages. Moreover, if the Court approves Knauf Defendants' settlement agreement, many of the class members will no longer be the real parties in interest to assert claims against North River. As part of the PSC's settlement agreement with the Knauf Defendants, the PSC agreed that the participating class members would assign to the Knauf Defendants the net recovery on their claims against other parties, including North River. Specifically, the agreement states:

> 4.8.2. Each participating Class Member shall assign his/her claims (to the extent that they relate to KPT Chinese Drywall) to any net recovery under the InEx, Banner and Prospective L&W Settlements to the Knauf Defendants, if not already assigned. Any amounts recovered from the InEx, Banner and Prospective L&W Settlements based on such assignments shall be deposited into the Remediation Fund, for purposes of providing Settlement benefits to the individual Participating Class Member(s) involved. . . .

Accordingly, claimants who participate in both the Interior Exterior and Knauf settlement classes who may have claims against North River may pursue those claims, but any net recovery that those claimants obtain on those claims must be paid to the Knauf Defendants for deposit into the Remediation Fund. Given the prospective assignment, it would be a waste of this Court's judicial resources to require North River to litigate with claimants who, six months from now, either may no longer have claims to assert or may not be the real parties in interest, assuming that the Knauf Defendants' settlement agreement is approved on the current schedule.

## III.    THE PSC'S MOTION IS INEFFECTIVE BECAUSE IT IS INCOMPLETE

Finally, even if the PSC's Motion is not premature because the Interior Exterior and Knauf Defendants' settlement agreements have not been finalized, this Court should deny the PSC's Motion because the relief it seeks is ineffective. For reasons that the PSC fails to explain

---

10, 2012).

in its pleadings, the PSC has requested that this Court lift only its litigation stays entered as part of Pre-Trial Order No. 1H and the Preliminary Approval Order as to the Interior/Exterior settlement agreement. However, to the extent the PSC wishes to litigate with North River on behalf of Interior Exterior claimants whose homes include KPT drywall, the claims pertaining to the putative Knauf class members would remain stayed.

As explained in the Introduction, the Court's stay order as to the Knauf Defendants is very broad. The stay applies to any claim involving any house that contains any KPT drywall board. The stay also applies regardless of whether any of the Knauf Defendants are named parties to the litigation. The PSC did not object to the entry of the Knauf litigation stay prior to January 16, 2012 and did not move to lift the Knauf litigation stay as part of its Motion. Therefore, even if this Court grants the PSC the relief requested in the Motion, the PSC would be barred from proceeding against North River, Interior Exterior, any homebuilder or homebuilders, or any of Interior Exterior's downstream releasees on behalf of any claimant who has any KPT Chinese Drywall in his or her house unless or until this Court also lifts the Knauf litigation stay. And if, to accommodate the PSC, this Court lifts the Knauf litigation stay, North River will be forced at that time to prosecute against the Knauf Defendants any indemnification and/or contribution claims it possesses as Interior Exterior's subrogee.

## CONCLUSION

The PSC's Motion is premature, because it violates the terms of the Interior Exterior settlement agreement and appears likely to waste the Court's judicial resources pursuing relief for claimants who will be compensated, in whole or at least in part, by the Interior Exterior and Knauf Defendants settlement agreements if and/or when the Court approves them. Additionally, the PSC's Motion is ineffective to the extent it does not also seek to lift the litigation stay entered

by this Court as to the claimants who have KPT drywall board in their houses. For those reasons, North River respectfully requests that the Court deny the PSC's Motion at this time.

Respectfully submitted,

By:  /s *Eric B. Berger*

THOMPSON COE COUSINS & IRONS LLP
BRIAN S. MARTIN, ESQ.
KEVIN RISLEY, ESQ.
RODRIGO "DIEGO" GARCIA, JR., ESQ.
One Riverway, Suite 1600
Houston, Texas 77056
Phone: (713) 403-8206
Fax: (713) 403-8299
bmartin@thompsoncoe.com

-and-

LOBMAN, CARNAHAN, BATT, ANGELLE
& NADER, PLC

SIDNEY J. ANGELLE, ESQ.
La. Bar No. 1002
ERIC B. BERGER, ESQ.
La. Bar No. 26196
400 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
Phone: (504) 586-9292
Fax:    (504) 586-1290
sja@lcba-law.com
ebb@lcba-law.com

ATTORNEYS FOR THE NORTH RIVER
INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on February 17, 2012.

                                                    ____/s Eric B. Berger_____
                                                    ERIC B. BERGER