```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3
      IN RE: CHINESE-MANUFACTURED)
 4    DRYWALL PRODUCTS           )
      LIABILITY                  )
 5    LITIGATION                 )
                                 ) CIVIL DOCKET NO. 09-MD-2047-EEF-JCW
 6                               ) SECTION "L"
                                 ) NEW ORLEANS, LOUISIANA
 7                               ) THURSDAY, FEBRUARY 23, 2012
                                 ) 9:00 A.M.
 8    THIS DOCUMENT RELATES TO:  )
                                 )
 9    ROBERT C. PATE, AS         )
      TRUSTEE FOR THE CHINESE    )
10    DRYWALL TRUST              )
                                 )
11    vs.                        )
                                 )
12    AMERICAN INTERNATIONAL     )
      SPECIALTY LINES INSURANCE  )
13    COMPANY, FCCI COMMERCIAL   )
      INSURANCE COMPANY, FCCI    )
14    INSURANCE COMPANY, ET AL   )
                                 )
15    2:09-CV-07791 (E.D. LA.)   )
      ****************************

16

17            TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

18           HEARD BEFORE THE HONORABLE ELDON E. FALLON

19                   UNITED STATES DISTRICT JUDGE

20

21    OFFICIAL COURT REPORTER:        SUSAN A. ZIELIE, RPR, FCRR
                                      United States District Court
22                                    Eastern District of Louisiana
                                      500 Poydras Street, Room HB406
23                                    New Orleans, La 70130
                                      susan_zielie@laed.uscourts.gov
24                                    504.589.7781

25    Proceedings Recorded By Mechanical Stenography.  Transcript
      Produced By Computer Aided Transcription.
```

```
 1   APPEARANCES:

 2

 3   For the Plaintiffs'              HERMAN HERMAN KATZ & COTLAR
     Steering Committee:              BY:  RUSS M. HERMAN, ESQ.
 4                                    BY:  LEONARD A. DAVIS, ESQ.
                                      820 O'Keefe Avenue
 5                                    New Orleans LA 70113
                                      504.581.4892
 6                                    rwestenfeld@hhk.com

 7                                    LEMMON LAW FIRM
                                      BY:  ANDREW LEMMON, ESQ.
 8                                    650 Poydras Street
                                      Suite 2335
 9                                    New Orleans LA 70130
                                      504.581.5644
10                                    andrew@lemmonlawfirm.com

11

     For the Plaintiffs:             LEVIN, FISHBEIN, SEDRAN & BERMAN
12                                    BY:  ARNOLD LEVIN, ESQ.
                                      510 Walnut Street, Suite 500
13                                    Philadelphia PA 19106
                                      877.882.1011
14                                    alevin@lfsblaw.com

15

     For the Defendant:              Frilot, LLC
16                                    BY:  KERRY J. MILLER, ESQ.
                                      Energy Centre
17                                    1100 Poydras Street
                                      Suite 3700
18                                    New Orleans LA 70163
                                      504.599.8000
19                                    kmiller@frilot.com

20

     For Defendant Knauf:            KAYE SCHOLER
21                                    BY:  STEVEN GLICKSTEIN, ESQ.
                                      425 Park Avenue
22                                    New York NY 10022-3598
                                      212.836.8000
23                                    sglickstein@kayescholer.com

24

25
```

```
 1    APPEARANCES:

 2


 3    For Insurer Steering Committee:  BARRIOS, KINGSDORF & CASTEIX
                                       BRUCE KINGSDORF, ESQ.
 4                                     701 Poydras Street
                                       Suite 3600
 5                                     New Orleans LA 70163
                                       504.524.3300
 6                                     bkingsdorf@bkc-law.com

 7
      For Home Builders:              STONE PIGMAN
 8                                     BY:  DOROTHY H. WIMBERLY, ESQ.
                                       546 Carondelet Street
 9                                     New Orleans LA 70130
                                       504.593.0849
10                                     dwimberly@stonepigman.com

11
      For North River:                THOMPSON COE
12                                     BY:  KEVIN RISLEY, ESQ.
                                       One Riverway
13                                     Suite 1600
                                       Houston TX 77056
14                                     713.403.8295
                                       krisley@thompsoncoe.com

15


16


17    Also Present:                   DANIEL J. BALHOFF, ESQ.

18


19


20


21


22


23


24


25
```

```
 1              NEW ORLEANS, LOUISIANA; THURSDAY, FEBRUARY 23, 2012

 2                             9:00 A.M.

 3           THE COURT:  Good morning, ladies and gentlemen.

 4           THE CLERK:  MDL 2047, in re:  Chinese Manufactured

 5   Drywall Products liability litigation.

 6           THE COURT:  Counsel make their appearances for the

 7   record, please.

 8           MR. MILLER:  Good morning, Your Honor.  Kerry Miller on

 9   behalf of the Defense Steering Committee.

10           MR. HERMAN:  May it please the Court, good morning,

11   Judge Fallon.  Russ Herman for the Plaintiff's Steering

12   Committee.

13           THE COURT:  Please use the microphones.  We have

14   several hundred people on the phone.

15               I met with liaison and lead counsel a moment ago

16   to discuss the agenda with them.  I'll take it in the following

17   order.

18               Pretrial orders, anything on that?

19           MR. HERMAN:  Your Honor, under item No. 1, there's

20   nothing new.

21           THE COURT:  I know we have an order of preservation of

22   evidence that was entered just recently.

23               Any state court trial settings that we need to

24   talk about?

25           MR. HERMAN:  Dawn isn't here but, her partner is here
```

1    to advise the Court.

2         MR. KINGSDORF:  Bruce Kingsdorf, Your Honor, appearing

3    on behalf of Ms. Barrios.

4              All of the state court trial settings remain the

5    same as stated in the joint report except for one.  At the

6    bottom of page 5, the California setting, the Monks case, the

7    case has been settled at mediation.  There is a hearing before

8    the Court on March the 5th to iron out a few details.  And it's

9    expected at that time to be taken off the Court's docket for an

10   April trial.

11        THE COURT:  I do appreciate all of the help that the

12   state courts have given to us in this matter, and I hope we

13   haven't inconvenienced their dockets by asking them to move

14   their cases the several times that I've had to do that.  And I

15   do appreciate their cooperation.  It's been a great help to this

16   aspect of the case.

17        MR. KINGSDORF:  Thank you, Your Honor.

18             I'd also not that there are no cases past

19   conditional transfer order No. 25, there are no additional

20   remands.  And I do have disks to present to the Court as to the

21   current status.

22        THE COURT:  Good, okay.  Well, thank you very much.

23        MR. KINGSDORF:  I have one for Mr. Miller also.

24        THE COURT:  Good.

25             Anything on insurance issues?

1          MR. HERMAN:  Your Honor will be meeting with that after

2     the hearing today.

3               I do want to state for those on the phone that all

4     of Your Honor's pretrial orders, status conference reports,

5     transcripts, other relevant matter, can be accessed on the

6     Court's website at www.laed.uscourts.gov with a link directly

7     to, quote, drywall MDL, end quote.

8          THE COURT:  Just a word on the insurance.  The insurers

9     being invited to participate in the global resolution of the

10    matter, this should be their last opportunity to do that.  If

11    they want in, then I want them to participate.

12              If they feel that they do not want in, then what

13    I'm going to do is, when I'm advised of that, when it comes to

14    my attention, I'll then carve them out of the stay order and let

15    the cases proceed against them so that they can have some

16    finality, which they're entitled to.

17              And those insurers that are participating, of

18    course the stay order will be in effect and they can then

19    resolve any particular details that they have to resolve.

20              And also, I might say that, by participating in

21    this discussion, they are not waiving any of their rights or not

22    caving into the jurisdiction of the Court or anything of that

23    sort.

24              But those insurers who are not interested in

25    participating, the plaintiffs should go forward against them,

 1   and I'll carve them out of the stay order.

 2                  Homebuilders fees and costs.

 3          MS. WIMBERLY:  Yes, Your Honor.  Dorothy Wimberly for

 4   the Homebuilders liaison counsel's office.

 5                  Yesterday, the Court entered a show cause order,

 6   it's record docket 12546, identifying those builders who have

 7   failed to comply with the Court's prior fee orders.

 8                  I would note that, unfortunately, despite our

 9   efforts to make certain that it was accurate, I have been

10   apprised of two errors on it, which we will be promptly

11   rectifying and removing, those people who had timely complied.

12                  But the only difference from what's in the joint

13   report regarding this is that the show cause order is set for

14   March 22nd, immediately following the monthly status conference.

15                  I would encourage counsel for all builders who are

16   identified on the exhibit attached to the order to please get in

17   touch with our office.  We will be able to provide you with the

18   amount that you are owed based upon the prior orders, the

19   necessary forms if you cannot locate them in the record, and

20   answer any questions and if special arrangements need to be made

21   for anyone.  We've done that for other builders.  But the

22   important thing is that you please contact our office so that we

23   can work through this and not burden the Court further.

24          THE COURT:  Okay.  All right.  Thank you very much.

25   And I encourage them to do so.

1          MR. HERMAN:  Your Honor, item No. V, state federal

2     coordination, Mr. Kingsdorf has the report.

3               First, I'd like to thank Mr. Kingsdorf and Ms.

4     Barrios for the job that they are doing with the Consumer

5     Product Safety Commission.  Mr. Kingsdorf will make that report.

6               I'm still frankly concerned on behalf of the PSC

7     that we still don't have the information about the CPSC.  The

8     arm of the United States Government denied access to the Leung

9     mines, which we feel is a paramount issue.

10              But Mr. Kingsdorf will speak as to the Consumer

11    Product Safety Commission.

12         MR. KINGSDORF:  Bruce Kingsdorf, Your Honor.

13              I had a lengthy conversation yesterday with

14    Melissa Hampshire representing the CPSC, and they have received

15    the PSC's appeal from the denial of the request for

16    documentation from the CPSC and they have lodged various

17    exemptions and exceptions to our request.

18              However, they have offered a compromise, Your

19    Honor, of an in-camera inspection by the Court of approximately

20    31,000 documents, which they will be compiling.  They have

21    advised that it will take 348 man hours to compile the

22    documentation.  I asked whether that was straight time,

23    overtime, one person, 100 people.  They really couldn't give me

24    an answer for that.  But it will apparently take a few weeks to

25    compile.

 1          They are concerned about disseminating the

 2   information which has some personal information, and there are

 3   certain requirements apparently of the CPSC that there be

 4   notification given to manufacturers and distributors of the

 5   product that complaints are made against.

 6          I advised that, because they were Chinese

 7   companies, it was nearly impossible to provide notice to the

 8   manufacturers.  Then they advised that they would have to

 9   provide to the distributors.  And I don't really know how that

10   will work, Your Honor.

11          But they are willing to do an in-camera inspection

12   under a protective order, and I have contact information so that

13   the Court can communicate directly.

14          THE COURT:  We've got to cut through this.  Just give

15   me the contact information, and I'll order them to give it to

16   the Court in-camera.  And I'll deal with the number or amounts

17   or whatever it is.  But give me the contact information so I can

18   get to it.

19          MR. KINGSDORF:  I have that.  Would you like me to give

20   it to your law clerk after the conference?

21          THE COURT:  Yes, great.

22          How about the omnibus class action complaints?

23          MR. LEVIN:  As of last night, Your Honor, we have

24   another one.  That's what's new.

25          THE COURT:  Plaintiff's motion to establish?

1      MR. HERMAN:  Nothing new, Your Honor.

2      THE COURT:  What about the pilot program, any report on

3  that?

4      MR. HERMAN:  It's proceeding very well.  We commend

5  Kaye Scholer on the process that they're doing, as well as the

6  contractor that they've chosen.  Things seem to be moving much

7  more smoothly.

8           I don't have a report with me, but perhaps Steve

9  wants -- Steve Glickstein wants to address it.  I know that Mr.

10  Wallen sent in a report earlier this week, and there were I

11  think 1,200 to 1,400 residences in process.

12      MR. GLICKSTEIN:  Good morning, Your Honor.  Steve

13  Glickstein for Kaye Scholer and Knauf defendants.

14           I don't have anything, any statistics to add to

15  the written report, other than as Mr. Herman said things are

16  progressing through the system very well.  We are still

17  enrolling and are willing to enroll.  And any plaintiff's

18  counsel whose clients prefer not to wait until final approval of

19  the class action settlement to get their homes into the queue

20  can do so now.

21      THE COURT:  The terms sheet, anything on that?

22      MR. HERMAN:  Nothing new, Your Honor.

23      THE COURT:  This settlement, you've got to recognize

24  that it's not like the usual settlement where one side gets a

25  check and the other side gets a release.  There's going to be a

1    lot of implementation and work in order to put this matter

2    together.  And so at least the parties ought to be giving some

3    thought to that, as to a substructure that can be used.  And

4    I'll be talking with them about that at the appropriate time.

5                Anything from the Knauf defendants?

6                MR. HERMAN:  We continue to meet, that is the PSC, with

7    Knauf, particularly in so far as scheduling, implementing the

8    settlement.

9                Yesterday, representatives Mr. Miller, Mr.

10   Schonekas, Steve Glickstein, Arnold Levin and Leonard Davis and

11   I met for a couple of hours, and we've got a checklist that

12   we're working through.  And we believe we're making progress in

13   terms of further implementation of the settlement prior to final

14   approval by Your Honor.

15               And I might add at this point, we have discussions

16   with L&W this afternoon with Banner.  There have also been

17   discussions with Minor Pipes as regards those three potential

18   settlements, and we're making headway in connection with those.

19               THE COURT:  Any Taishan defendants, any report on that?

20               The Taishan defendants, as everybody knows, the

21   depositions went off in Hong Kong a month or so ago.  I was

22   present at them.  It consumed a week.  We started at 8:30 in the

23   morning on Monday, and went to 6:00 o'clock each day, in a

24   windowless room, and we finished up about 3:30 on Friday

25   afternoon.  And everybody left on Saturday morning to come back

```
 1    to the United States.

 2               I thought the depositions went well; there were

 3    only about maybe 15 objections throughout the week.  I ruled on

 4    them immediately, and we moved on.

 5               The witnesses were cooperative.  And the lawyers,

 6    of course, handled themselves very well, on both sides.

 7               I do appreciate the support of the two senators

 8    from Florida and the two senators from Louisiana and the two

 9    senators from Virginia.  I appreciate their help.  They wrote

10    letters to Taishan announcing that I would be there and looking

11    forward to my prompt return, and copies were sent to the state

12    department and the other individuals who were kind enough to

13    check on me periodically.  But things went well, and all of

14    those who participated did well.

15               We had a great interpreter.  The state department

16    was kind enough to give us some references.  We picked the

17    interpreter who was very good at her craft, and we didn't have

18    any other interpreters in the room.  I thought it was better

19    just to have one interpreter.  So I made her a 706 expert for

20    the Court, and so she was the interpreter for the litigation.  I

21    thought she did a splendid job, and I appreciate all of her

22    help.

23               The parties are completing their discovery on the

24    jurisdictional aspect of the case.  I think the plaintiffs had

25    maybe one or two witnesses on the west coast that they're going
```

1    to be deposing.  I've given them the schedule for briefing, and

2    I would intend to have oral argument on that motion in June,

3    middle of June.  And, hopefully, I can get my opinion out

4    shortly thereafter, and we'll see where we go from there.

5              MR. HERMAN:  Your Honor, if I may, I have a couple of

6    comments regarding Taishan.

7                   Tom Owens, attorney for Taishan, met yesterday in

8    our offices with Leonard Davis to discuss certain issues,

9    including discovery issues.  And we appreciate Mr. Owens'

10   participation in that meeting.

11                  I'd be remiss if I did not, in connection with the

12   Hong Kong depositions, thank my partner Leonard Davis for

13   coordination, administration.  And Chris Seeger, Arnold Levin,

14   Jerry Meunier, Eric Gonzalez and others that went to Hong Kong.

15   And they also were supported by second chairs and a number of

16   PSC and non-profit PSC members that helped prepare for those

17   depositions.  And we thank Your Honor for making those

18   depositions move professionally and with substance.

19             THE COURT:  Interior/Exterior defendants, anything on

20   those?

21                  Banner defendants?

22             MR. HERMAN:  The Allocation Committee continues to

23   meet.  The deadline for report is March 5th, and there are

24   meetings scheduled for today.

25                  But, at page 14, the issue -- this is under XII,

```
 1    page 14, the issue of North River, excess insurer of INEX, the

 2    Court issued an order setting a hearing on motion to lift the

 3    stay today.  Would Your Honor like to hear that after

 4    conclusion, or now?

 5             THE COURT:  I can here it after.  We'll go into all of

 6    the motions at one time.

 7             MR. HERMAN:  XIII.  As I indicated, Your Honor, the

 8    Allocation Committee will be meeting again today.  I believe the

 9    meeting is either at 11:30 or noon, at Kerry Miller's office, as

10    there are other meetings scheduled.

11             THE COURT:  Anything new on Venture Supply?

12             MR. HERMAN:  Nothing new.

13             MR. LEVIN:  There's something new as of this morning.

14             Your Honor, you will receive today probably an

15    agreed-upon order by Venture's carriers to appoint John Perry as

16    a mediator with regard at least to two insurance policies

17    dealing with Venture and Porter Blaine.

18             THE COURT:  Okay.

19             MR. MILLER:  Your Honor, Kerry Miller.

20             Just one point of clarification on a point Russ

21    just made.  The Banner allocation is at my office 30 minutes

22    after this conference concludes.  So we're going to start there

23    30 minutes after.

24             It looks like we're moving pretty good, so I'm

25    guessing around 10:30.
```

1          THE COURT:  I met yesterday with Venture Supply, those

2   defendants, as well as representatives from the plaintiff's

3   committee.  And hopefully we'll be able to resolve some of those

4   issues.

5               Anything on profile forms, plaintiff/defendant

6   profile forms?

7          MR. HERMAN:  Your Honor, there's a motion set before

8   you today that Your Honor will hear following this status

9   conference schedule, and there are additional matters.

10         THE COURT:  Anything on pro se plaintiffs?

11         MR. HERMAN:  Mr. Johnston, Bob Johnston, isn't here

12  today.

13              He reported that there's nothing new from the last

14  written report that he submitted, Your Honor.

15         THE COURT:  Okay.  Other than the motions, anything

16  further from anybody?

17              The next meetings are March the 22nd, April the

18  26th, and I set May 17th as the meeting in May.

19              Let's take a five minute break and we'll come

20  back.  Court stands in recess.

21              (Proceedings in recess.)

22         THE COURT:  We have a couple of motions before us.

23              The omnibus motion for plaintiff's motion for

24  preliminary default judgment, the record document 12551.  We've

25  had a number of changes to it.

```
 1              MR. LEVIN:  Arnold Levin, Your Honor.

 2              Your Honor, last night, you received the third

 3   amended errata.  I think that will be the last amended errata,

 4   so it's an order for the Court to act on it.

 5              THE COURT:  I'm going to grant the preliminary default.

 6   I'll post those people on the website showing that I've entered

 7   a preliminary default.  And then I'll eventually, within a

 8   couple of weeks, set a time for dealing with the final permanent

 9   default to confirm the default.

10              I moved this motion at least three times.  Told

11   people even before the motion was filed that I was going to do

12   it.  Notwithstanding that, they haven't answered, they haven't

13   done anything to the case.  So they've been properly served, and

14   I've got to move them out of the case.  So I'll do so by

15   granting a default against them.  And, once the default is

16   confirmed, then you can act accordingly.

17              MR. LEVIN:  Thank you, Your Honor.

18              THE COURT:  The next item is objection to stay and

19   preliminary approval order of the Knauf settlement agreement,

20   that's docket 12138.

21              MR. GLICKSTEIN:  Steve Glickstein for the Knauf

22   defendants.

23              We have had several telephone conferences with the

24   objectors.  We are 99 percent toward agreed-upon order.  We have

25   a final telephone call scheduled for tomorrow.
```

```
 1                 I would ask that the Court just kick the motion.
 2   If for some reason that, unexpectedly, we don't have an
 3   agreed-upon order, probably we'd want to set it either
 4   telephonically or in person before the next status conference.
 5                 But I'm hopeful that we'll have an agreed-upon
 6   order.
 7             THE COURT:  Why don't you get to me within a week, let
 8   me know one way or another.
 9                 If not, then I'll set it on a date convenient with
10   everybody, and I'll do it on the phone.
11             MR. GLICKSTEIN:  Okay.
12             THE COURT:  Okay, thank you.
13                 Plaintiff's Steering Committee motion to compel or
14   to seek sanctions for certain defendants who have produced the
15   profile form, that's document No. 12435 and 12548.
16             MR. LEMMON:  Good morning, Your Honor.  Andrew Lemmon
17   on behalf of the PSC.
18                 Pursuant to various court orders and including
19   specifically pretrial order No. 25, the defendants were all
20   required to provide profile forms to both the PSC and to the
21   other liaison counsel.
22                 We filed an errata today.  We filed an exhibit
23   first with our motion, Exhibit A, for people who contacted us
24   with, you know, some information, some promise to provide us
25   information.
```

1          Exhibit B was people who provided nothing, we

2   haven't heard from at all.

3          We filed an errata last night that shows where

4   we've progressed with that.  We've gotten some more profile

5   forms in since we filed this originally.  We have some more

6   promises that we're going to get some more in.  So we're asking

7   the Court to enter an order to compel or sanctions against them

8   for failure to comply with the Court's order.

9          THE COURT:  Why don't you give me the list of people

10  who haven't complied, and then I'll issue an order finding them

11  in default, and I'll devise some penalties for it.

12         MR. LEMMON:  Okay.  Thank you, Your Honor.

13         THE COURT:  Thank you.

14         What about the lifting of the stay regarding

15  claims against North River?  That's 12459.

16         MR. LEVIN:  Arnold Levin again Your Honor.

17         We're to the point where delaying any action on

18  North River doesn't make any sense.  Everything else is moving

19  towards an ultimate resolution, at least on the Knauf side of

20  the ledger sheet and the downstream defendants and the carriers

21  on the Knauf side.

22         We have an entitlement to move against North River

23  if the INEX settlement is approved.  However, Mr. Herman has

24  schooled me on the Louisiana law; and, in the *Amato* case, we

25  have a direct action against the insurance carrier.

1          So it makes no sense to tread water and then start

2     the process in June or July, when we can begin to start the

3     process now.

4          If the stay is lifted, we can file some discovery,

5     but ask the defendants, North River -- and they don't have to

6     take action on that discovery right now.  Let's just discuss it,

7     and at the same time let's also discuss resolution.  And at

8     least we'll move that aspect of the case along.

9          THE COURT:  What's the other side of that?

10         MR. RISLEY:  Good morning, Your Honor.  Kevin Risley

11    for the North River Insurance Company.

12         The reason it doesn't make any sense to lift the

13    stay right now is because we have a moving picture in front of

14    us.  There's not just the INEX settlement but there's the Knauf

15    settlement.  If those are both approved, the PSC will end up

16    owning a very few number of claims, because what will be left is

17    the Taishan claims and maybe some mixed house claims.  So, why

18    lift a stay for a party that a few months from now may have no

19    interest in the claims at all?  It makes more sense to us to

20    figure out who has the right to sue us before we lift the stay

21    and go forward.

22         A second point is, even on the non-KPT houses,

23    there's a question of exhaustion.  There's $8 million of primary

24    coverage below us that right now is unimpaired.  It's supposed

25    to be paid as part of the underlying settlements; but, if those

 1   settlements are not approved, then there's still no exhaustion

 2   against us and the claims are not ripe.  There may be claims on

 3   file; but, until there's exhaustion, there's nothing to go

 4   forward on against us.  If we started a trial this afternoon,

 5   the Court would have to direct a verdict in our favor.  So why

 6   don't we get the exhaustion issues out of the way with the

 7   settlements and make sure those claims are ripe?

 8            THE COURT:  How do you do that without discovery?

 9            MR. RISLEY:  The discovery on exhaustion would be, if

10   the Court approves the Knauf settlement, it will be the position

11   of INEX and the primary carriers, they've paid their limits,

12   they're out.  So that wouldn't involve the discovery from us,

13   that involves the resolution of that settlement agreement.

14            Now, I would say this.  We have offered to sit

15   down and talk.  I heard the Court say that the insurers are

16   willing to participate in the global settlement within the next

17   couple weeks, I suspect.

18            It might make some sense then to put this off 30

19   days to see if those discussions go anywhere.  If they want to

20   send us the discovery now so we have it, that's fine.  But I

21   would rather not open the door until we know whether the

22   settlement talks will be fruitful or not.

23            One last point, Judge.  If Court is inclined to

24   lift the stay against us, we also have claims on file against

25   Knauf, which is the manufacturer.  We have similar claims

```
 1    against KPT.  I think it would be unfair and violation of due

 2    process to allow them to pursue the claims against us without us

 3    allowing those claims to be perused against a third party.  So,

 4    if the stay is lifted, it shouldn't be just against North River

 5    but also in favor of North River to pursue the claims it has.

 6    If we're going to get it done, let's get it done all at once.

 7              THE COURT:  Okay.  Let me hear the response.

 8              MR. LEVIN:  Sounds like a lawyer just made a statement,

 9    Your Honor.

10              We're in this courtroom, everybody is moving

11    towards resolution.  One of the ways to move towards resolution

12    is to have an active docket.  We've agreed not to take action

13    after the stay is lifted, if Your Honor does lift it, but we

14    want to be ready.  We certainly will speak with them.  But

15    there's no reason why we should have our hands tied with a stay

16    when we have a direct action against North River.  And, if they

17    have defenses to that action, they can raise them in that

18    action.  But we shouldn't be precluded from moving in that

19    direction.

20              THE COURT:  What's your position about opening

21    discovery against Knauf?  Or maybe I ought to ask Knauf that.

22              MR. GLICKSTEIN:  Steve Glickstein.

23              This actually came up during a prior argument.

24              First, Knauf, as Your Honor knows, has been

25    exhaustively discovered.  God knows how many of our witnesses
```

```
 1    have been deposed, but it's been over a dozen.
 2                    North River, I believe, has participated in that
 3    discovery.  And, if they haven't, they've had every opportunity
 4    to participate in that discovery.
 5                    Knauf, unlike North River, has stepped up to the
 6    plate and has offered a global deal.
 7                    Under Louisiana law, North River can, if they need
 8    to, try the empty chair and don't need to be in the case.
 9                    So, if the stay is lifted, there is no basis or
10    reason to lift the stay against Knauf in order to permit North
11    River to do whatever it needs to do at trial or in order to try
12    to allocate the fault.
13         MR. RISLEY:  Your Honor, if I could.
14                    The reasons that they offer now to lift the stay
15    were just as valid when the first stay was put in place with
16    their consent and when the Court put in the Knauf and INEX stays
17    that they asked for.  Those reasons haven't changed.
18                    But it would be the worst of all possible worlds,
19    and with all due respect an abuse of the discretion of the
20    Court, I believe, to allow us to be a defendant but not at the
21    same time assert claims.  Under the redhibition statute, we're
22    entitled to recover from the manufacturer.  The extent of that
23    discovery is based upon whether INEX was an innocent seller or
24    not.  But that's where we have an absolute right to assert those
25    claims in the same proceeding claims that are be asserted
```

```
 1   against us.
 2           THE COURT:  I do understand the issue.
 3               What I'm going to do is I'm going to keep the stay
 4   for two weeks, let you all talk.  Get back to the Court within a
 5   two-week period, and then I'll hear from all of you all to
 6   determine whether or not to lift the stay; and, if so, which
 7   aspect of the stay would be lifted on Knauf.  Let's do it that
 8   way.
 9           MR. RISLEY:  We'll do that.  Thank you, Your Honor.
10           THE COURT:  You have the responsibility to contact me
11   in two weeks.
12           MR. RISLEY:  We will do so.
13           MR. HERMAN:  May it please the Court, Your Honor, it
14   would be helpful if North River would file a motion and a brief
15   regarding the issue of lifting the stay as to Knauf so we can
16   respond formally.
17           THE COURT:  I don't know whether I'll do that or not.
18   But I'll give you two weeks.
19               Now, I hope I don't have to visit that situation,
20   because it seems to me that either you're in or you're out.  And
21   it's not only true with North River but it's true with all of
22   the insurers.  If you're interested in resolving the matter, I
23   want you to feel comfortable doing it.  If you're not interested
24   in it, then you've got to get on with your case.  You just can't
25   tread water the rest of the time.  I need everybody to focus and
```

1    tie up this aspect of the case so I can look at the other aspect

2    of the case, and that's what I'm trying to do.

3             MR. RISLEY:  Understood, Your Honor.

4             THE COURT:  Rule to show cause for installers, builders

5    and suppliers for failure to provide required confidential

6    affidavits.

7                  I know we have several people who haven't done

8    that.  Dan Balhoff is here as the special master.  And those who

9    have not supplied the confidential mediation affidavits have to

10   meet with him and talk it through.  Let me know who hasn't.  I'm

11   going to have to take action.

12                 You want to come forward?

13            MR. BALHOFF:  Yes, Your Honor.

14            THE COURT:  I don't see any downside on this.  I'm

15   dumbfounded as to why you haven't received the information.

16   They're confidential.  I don't need to know about it.  You just

17   need to know, frankly, what the coverage is.  What's the problem

18   there?

19            MR. BALHOFF:  I wish I knew what the problem was.  And,

20   actually, we've gotten a very good response, Your Honor.

21   Several hundred affidavits.

22                 There are approximately 250 defendants who have

23   not responded.  I don't know if some of those are defunct or

24   not.

25                 I think the point that we wanted to make today is

 1   today's the chance for absolution.  Anybody that is here, I will

 2   be -- if the Court is willing -- I will be here in the courtroom

 3   after you've concluded your proceedings today to receive

 4   affidavits from anyone that has them.  If you can produce them,

 5   we'll strike you off the list.  I will make a report to the

 6   Court, and I assume the Court will decide at that point whether

 7   and what sanctions to impose upon those who have not responded.

 8            THE COURT:  I'm going to have to impose some sanctions,

 9   so I'll give you one last opportunity to resolve the matter.  If

10   it's not resolved, then I'm going to have to act.  I'm not going

11   to be able to be just overlook it.  So let's get that done.

12            MR. BALHOFF:  Thank you, Your Honor.

13            THE COURT:  Thank you.

14                Any further motions that we have?  Anything else,

15   folks?

16            Thank you very much.  The court stands in recess.

17                (9:51 a.m., proceedings concluded.)

18

19                          CERTIFICATE

20

21       I, Susan A. Zielie, Official Court Reporter, do hereby
     certify that the foregoing transcript is correct.

22

23

24                          /S/ SUSAN A. ZIELIE, FCRR
                            _____
                                Susan A. Zielie, FCRR

25