# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047 SECTION: L |
| THIS DOCUMENT RELATES TO ALL CASES | JUDGE FALLON MAG. JUDGE WILKINSON |

_____/

### BANNER AND CHARTIS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO JOIN THE PSC'S MOTION TO COMPEL AND FOR COSTS/SANCTIONS AGAINST CNBM (USA) CORP.

Banner Supply Company; Banner Supply Company Fort Myers, LLC; Banner Supply Company Tampa, LLC; Banner Supply Company Pompano, LLC; and Banner Supply International, LLC (collectively "Banner") and Chartis Select Insurance Company, Chartis Specialty Insurance Company (formerly known as "American Specialty Lines Insurance Company"), Illinois National Insurance Co., The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa. (collectively "Chartis"), by and through counsel, respectfully file this Memorandum in Support of their Motion to Join the Plaintiffs' Steering Committee's Motion to Compel and for Costs/Sanctions (Rec. Doc. No. 12641).

On December 20, 2011, the PSC filed a Notice of Oral and Videotaped Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) of CNBM (USA) Corp. (hereinafter "CNBM (USA)"). Banner and Chartis filed Cross-Notices of the same, attached hereto as Exhibit A and Exhibit B respectively. Any motion Banner and/or Chartis would file regarding CNBM (USA)'s deposition and improper conduct would be similar to that filed by the PSC. In an effort to preserve judicial

time and resources, Banner and Chartis join and adopt the arguments set forth by the PSC in its respective Motions and Memoranda in Support as if set forth herein. *See* (Rec. Doc. No. 12641).

Similar to the PSC, attorneys for Banner and Chartis were in Beverly Hills, California, on February 22, 2012, prepared and waiting to commence the properly noticed 30(b)(6) deposition at which CNBM (USA) failed to appear. Since then, the attorneys for Banner and Chartis made several attempts to reach CNBM (USA) at the last known phone number without any success. Further, Banner and Chartis attorneys attempted to contact CNBM (USA) by U.S. mail and e-mail, but have not received any response. (*See* letter and email dated March 7, 2012, attached hereto as Exhibit C).

Banner and Chartis incurred costs, including airfare, lodging and meals in attending the CNBM (USA) 30(b)(6) deposition. In light of its failure to appear, CNBM (USA) should be ordered to produce the requested documents and a corporate representative to appear at a 30(b)(6) oral and videotaped deposition at a date and time to be determined by the Court. In addition, Banner and Chartis are entitled to recover fees and expenses, including, but not limited to, attorneys' fees, airfare, lodging and other travel expenses, incurred in connection with the February 22, 2012, deposition at which CNBM (USA) failed to appear.

Respectfully submitted, this 12th day of March, 2012.

**WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC**

*/s/ Shubhra R. Mashelkar*
**SHUBHRA R. MASHELKAR, ESQ.**
Georgia Bar Number:  475388
3344 Peachtree Road, Suite 2400
Atlanta, GA  30326
Telephone (404) 876-2700
smashelkar@wwhgd.com
***Counsel for Banner Supply Company; Banner Supply
Company Fort Myers, LLC; Banner Supply Company
Tampa, LLC; Banner Supply Company Pompano, LLC;
and Banner Supply International, LLC.***

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Jane M. Byrne*
**JANE M. BYRNE, ESQ.**
New York Bar Number: JB6748
51 Madison Avenue, 22nd Floor
New York, NY  10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
janebyrne@quinnemanuel.com
***Counsel for American Home Assurance Company,
Chartis Select Insurance Company, Chartis Specialty
Insurance Company, Illinois National Insurance
Company, The Insurance Company of the State of
Pennsylvania, Lexington Insurance Company and
National Union Fire Insurance Company of Pittsburgh,
Pa.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Banner and Chartis' Motion to Join the PSC's Motion to Compel and for Costs/Sanctions Against CNBM (USA) has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 12th day of March, 2012.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

/s/ Shubhra R. Mashelkar
**SHUBHRA R. MASHELKAR, ESQ.**

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2047<br>)<br>) SECTION:  L<br>)<br>) |
| THIS DOCUMENT RELATES TO: | )<br>) JUDGE FALLON |
| ALL CASES | ) MAG. JUDE WILKINSON<br>)<br>) |

**CROSS-NOTICE OF ORAL AND VIDEOTAPED DEPOSITION
PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:    CNBM (USA) Corp.
       Via Registered Agent: Lina Zhang
       650 Camino De Gloria
       Walnut, California 91789

**PLEASE TAKE NOTICE** Banner Supply Company; Banner Supply Company Fort Myers, LLC; Banner Supply Company Tampa, LLC; Banner Supply Company Pompano, LLC; and Banner Supply International, LLC (collectively "Banner" or "Banner Supply Entities") will take the oral and videotaped deposition of CNBM (USA) Corp. beginning on Wednesday, February 22, 2012 at 10:00 a.m. (Pacific Standard Time) at The Beverly Wilshire Hotel in Beverly Hills located at 9500 Wilshire Boulevard, Beverly Hills, California 90212 or at another location mutually agreed upon by the parties.

Pursuant to the Federal Rules of Civil Procedure 30(b)(6), CNBM (USA) Corp. shall designate and produce a representative or representatives, as may be required, to testify on behalf of CNBM (USA) Corp. concerning the topics identified in Schedule "A" attached hereto. Further, the deponent is requested to produce the documents identified in the attached Schedule "A" to which deposition questions will be asked.

| | |
|---|---|
| Primary Examiners: | Counsel for Banner |
| Videotaped Deposition: | Yes |
| Call-In Number: | 888-337-8218 |
| Participant Code: | 548696 |

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Federal Rules of Civil Procedure 28. The deposition will continue from day to day, excluding Sundays and court-recognized holidays, until the examination is complete.

Pursuant to directives provided at the status conference on May 27, 2010, a brief explanation of the subject matter expected at this deposition is as follows. This brief explanation is will full reservation of all rights by the noticing party, and is not intended to limit in any way the scope of the deposition noticed herein. Counsel should be aware that all matters may be discovered in the deposition beyond the following and that the following explanation is made solely in accordance with the directives provided at the status conference. This is an MDL "common" deposition of a Taishan importer/purchaser/supplier of drywall.

Respectfully submitted, this 10th day of February, 2012.

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Nicholas P. Panayotopoulos*
**NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**
Georgia Bar Number: 560679
3344 Peachtree Road, Suite 2400
Atlanta, GA 30326
Telephone (404)876-2700
npanayo@wwhgd.com
***Counsel for Banner Supply Company, Banner Supply Company Fort Myers, LLC; Banner Supply Company Tampa, LLC; Banner Supply Company Pompano, LLC; and Banner Supply International, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Cross-Notice of Oral and Videotaped Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) of CNBM (USA) Corp. has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail; and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, in accordance with the procedures established in MDL 2047, on this 10th day of February, 2012.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC


*/s/ Nicholas P. Panayotopoulos*
**NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**

## SCHEDULE A

## DEFINITIONS & INSTRUCTIONS

1.    Whenever used in this Request, the following terms shall have the following meanings:

(a)    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(b)    "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(c)    "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

(d)    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.   Documents shall include all drafts, including drafts with "track changes," and shall be deemed to be separate documents within the meaning of this term.

(e)    "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and

6

data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

        (f)    "Electronic media" means any magnetic or other storage media device used to record electronically stored information.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched

cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g)     "CPSC" means the Federal Consumer Product Safety Commission, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(h)     "EPA" means the Environmental Protection Agency, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(i)     "CDC" means Centers for Disease Control and Prevention's (CDC's) Division of Environmental Hazards and Health Effects within the National Center for Environmental Health (NCEH), any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(j)     "ATSDR" means Agency for Toxic Substances and Disease Registry, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(k)     "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(l)     "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(m)    "Including" or "includes" means including, without limitation.

(n)    "Defendant," "you," or "your" means each of the individual named Defendants to whom this set of discovery is directed, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

(o)    "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(p)    "Quality Assurance Methods" means the testing or other protocols used to ensure the ultimate quality and consistency of drywall, plasterboard, or wallboard, including, but not limited to, the stages of production at which tests were performed, if any; testing of raw materials used for production if any; specific types of testing performed, if any; and, periodic chemical composition tests on the final product, if any.

(q)    "Process Control" means the on-line or real-time measurements and corrective actions, processes and protocols used to ensure the proper operation of a manufacturing process for its drywall, including, but not limited to, the amounts, quantities and qualities of raw materials employed, the types of monitoring devices utilized, if any; the frequency with which measurement devices were calibrated, if ever;

9

and, the frequency of which production and measurement equipment was inspected for wear, corrosion, or other damage, if ever.

(r)     "Manufacturing Methods" mean the protocol or specifications for manufacturing drywall.

(s)     "Test" or "Tests" means all tests, inspections, checks, studies, evaluations, measurements, and analyses of drywall and the materials and compounds which make up the same, into or of the composition, chemical or physical properties, performance, life expectancy, and formulation thereof.

(t)     "Person" means any natural person or any business, legal, or governmental entity or association.

(u)     "Taishan" means Taian Taishan Plasterboard Co., Ltd., Taishan Gypsum Co., Ltd. and any of its parents, related entities, subsidiaries, agents and assigns.

2.     The following rules of construction apply to all discovery requests:

(a)     The terms "all" and "each" shall be construed as all and each;

(b)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c)     The use of the singular form of any word includes the plural and vice versa; and

(d)     Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.     Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your

10

possession, custody, or control between January 1, 2001 and the current date (the "Relevant Time Period").

4.       Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data.  Defendant shall produce a privilege log within 7 days after the production of documents for which privilege is asserted to apply.  For each document for which Defendant asserts a privilege applies, it must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2).   Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, Defendant shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5.      If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible.  In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows:  persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6.      This Request is directed to all documents within your possession, custody or control, or within the possession of any agent of Defendant, or within the possession of any entity associated with Defendant, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7.      Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8.      Documents shall be produced in their original language (e.g., Mandarin, German) and shall include any translations of such documents, whether such translations were performed prior to or subsequent to the date of these requests.

12

9.     This Request is intended to be consistent with the Federal Rules of Civil Procedure 26 and 34.   This Request is a continuing one and requires further and supplemental production by you as and whenever you acquire or create additional responsive documents after the time of the initial production hereunder.

10.     All hard copy documents and electronically stored information (ESI) produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.  With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format. Plaintiffs request that the parties meet and confer to discuss the timing and manner of Defendant's production in response to these requests.

11.     Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document (e.g., for ABC Defendant, Inc. "ABC001"; "ABC002").   No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter), and the Bates Number identified above.  The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

13

## DOCUMENTS TO BE PRODUCED

1.      All documents generated by, prepared for, reviewed by, received by, or concerning Chinese drywall or of problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

2.      For each year in which **CNBM (USA) Corp.** including any subsidiary or affiliate of **CNBM (USA) Corp.** designed, developed, tested, inspected, manufactured, marketed, sold, exported, or distributed Chinese drywall, all documents concerning the departmental and corporate organizational charts for the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the design, development, testing, inspection, manufacture, marketing, sale, export, or distribution of said Chinese drywall.

3.      All documents concerning any contracts or agreements with respect to Chinese drywall, including indemnity agreements, agreements to assume liability, agreements to assume the defense, and joint defense agreements made by **CNBM (USA) Corp.** insurers for **CNBM (USA) Corp.** or any other entities that may be financially affected by any of the claims asserted in this litigation, including but not limited to, Chinese drywall manufacturers, distributors, importers, exporters, brokers, retailers, builders, contractors, and installers.

4.      All documents concerning performance specifications and standards for Chinese drywall, whether such standards are set by **CNBM (USA) Corp.** professional, engineering, laboratory, or manufacturing organizations, or by governmental entities.

14

5.      All documents evidencing the amount of Chinese drywall purchased, exported, imported, brokered, stored, sold, and/or distributed by **CNBM (USA) Corp.** during the Relevant Time Period.

6.      All documents identifying the entity or entities from whom **CNBM (USA) Corp.** received, imported, or purchased Chinese drywall during the Relevant Time Period, including documents identifying direct manufacturer purchases and purchases through suppliers.

7.      All documents, including invoices, bills of lading, receipts, shipping documents, and customs documents, which relate to purchases, imports, and/or receipts of Chinese drywall during the Relevant Time Period.

8.      All documents, including sales orders, invoices, bills of lading, shipping documents, and customs documents, which relate to exports, sales, transfers, and distributions of Chinese drywall during the Relevant Time Period.

9.      All documents including sales orders, invoices, purchase orders, bills of lading, contracts, shipping documents, and customs documents, that relate to any transactions involving Chinese drywall with **CNBM (USA) Corp.** during the Relative Time Period.

10.     Promotional and/or marketing materials from manufacturers relating to any Chinese Drywall product.

11.     All communications during the Relevant Time Period by, from or between **CNBM (USA) Corp.** including its employees, agents, and or third-party consultants concerning Taishan's sales, exports, imports, purchase, shipping, storage, brokering, transfer, distribution or sale of Chinese drywall.

15

12.     All notices, claims, complaints, communications or documents of any kind among and/or between **CNBM (USA) Corp.** employees and/or employees of affiliate companies or consultants, and any property owners, homeowner's associations, co-op or condo boards, property managers, or tenants during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

13.     All communications between **CNBM (USA) Corp.** and any manufacturer, importer, exporter, purchasing agent, broker, distributor, and/or retailer of Chinese drywall during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

14.     All communications between **CNBM (USA) Corp.** and any other builder, purchaser, and/or contractor using Chinese drywall, or installer of Chinese drywall utilized by Defendant during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

16

15.     All communications between **CNBM (USA) Corp.** and any foreign or domestic governmental agency during the Relevant Time Period, including but not limited to the CPSC, EPA, CDC, and APSDR, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

16.     All documents provided to and any communications between **CNBM (USA) Corp.**  and any foreign or domestic governmental entity, body, department, division, agency, and/or representatives during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

17.     All documents relating to research, inspection, testing, analysis, or remediation done by or on behalf of **CNBM (USA) Corp.** relating to Chinese drywall.

18.     All documents relating to instructions, guidance, standard operating procedures, or policies relating to the inspection, testing, analyses, or remediation done by or on behalf of **CNBM (USA) Corp.** relating to the Chinese drywall that Defendant ordered, purchased, received, stored, sold, transferred, or distributed.

19.     All contracts and communications between **CNBM (USA) Corp..** and any third-party vendor or consultant relating to any research, inspection, testing, analysis, and remediation of Chinese drywall.

17

20.     All documents and communications between **CNBM (USA) Corp..** and any insurer or its representative concerning any claims relating to Chinese drywall.

21.     All notices to any property owners and/or tenants, that their property and/or other properties contain Chinese drywall.

22.     All correspondence by and between Taian Taigao Trading Corp., Ltd. and **CNBM (USA) Corp..** relating to gypsum wall board.

23.     All correspondence, documents or communications relating to purchase orders, standards, complaints and problems with gypsum wall board during the relevant time period.

24.     All correspondence, documents or communications with any testing of Chinese manufactured drywall performed at your request.

25.     All correspondence, documents or communications with LaFarge during the relevant time period relating to Chinese drywall or gypsum board.

26.     All correspondence, documents or communications involving rebates, refunds or payments made to customers who made allegations regarding problem or defective Chinese drywall sold by you.

27.     Any documents relating to settlements or claims involving allegedly defective Chinese drywall.

## DEPOSITION TOPICS

Pursuant to Rule 30(b)(6), Defendant shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

A.    **Organization and Record-keeping**

1.    The corporate organization and structure of **CNBM (USA) Corp.**.

2.    Any entities with which **CNBM (USA) Corp.**is affiliated or has a financial interest in that was or is involved in the design, development, manufacture, promotion, export, import, brokerage, distribution, shipment, storage, sale, purchase, and/or installation of Chinese drywall during the Relevant Time Period.

3.    Any filings made by or on behalf of **CNBM (USA) Corp.**. to any state, federal, domestic, and/or foreign governmental agencies, departments, divisions, bodies, entities, or representatives during the Relevant Time Period.

4.    The nature of any and all of your transactions involving Chinese drywall during the Relevant Time Period.

5.    The identities of any entities involved in any way with your transactions involving Chinese drywall during the Relevant Time Period.

6.    The manufacturer and types of drywall product involved in your transactions in Chinese drywall during the Relevant Time Period.

7.    Any markings on the Chinese drywall product that you exported, imported, sold or brokered (e.g., lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period.

19

8.      The methods, locations, and standards employed in the storage of any and all Chinese drywall exported, imported, sold or brokered by you during the Relevant Time Period.

9.      The nature of every transaction between you and any Chinese drywall manufacturer including but not limited to all face-to-face, telephonic, e-mail, instant message, text message, and/or any other electronically transmitted communication.

10.     All travel by you to China including but not limited to trips to drywall manufactures and distributors located in China.

11.     Every contract entered into by you for the purchase of drywall manufactured in China including but not limited to the purchase of drywall from Shandong Taihe Dongxin Company, Taishan Gypsum Inc., Tai'an Taishan Plasterboard Co. Ltd., Beijing New Building Material Co., Ltd., BNBM of America, Inc., and any other drywall manufacturer.

12.     All communications between and among you and other importers and exporters of Chinese drywall regarding quality control, shipping, storage, and the purchase of drywall manufactured in China.

13.     Financial data relating to your transactions involving Chinese Drywall during the Relevant Time Period, including:

        a.  Sales data;
        b.  Shipping costs;
        c.  Storage costs;
        d.  Purchase costs; and
        e.  Refunds paid or received.

20

14.     Any product labeling, information, instructions, specifications, and/or warranties that you provided and/or received with any receipts or shipments of Chinese drywall during the Relevant Time Period.

15.     Any inspections, analyses, and/or compliance testing of Chinese drywall conducted by you or on your behalf in connection with your manufacture of Chinese drywall or transactions involving Chinese drywall during the Relevant Time Period.

16.     Any standards consulted, considered, or relied upon to determine the quality and characteristics of the drywall products subject to such inspections, analyses, and compliance testing.

17.     Any communications with trade associations, professional organizations, manufacturing organizations concerning the manufacture, storage, care, or use of Chinese Drywall.

18.     Any communications and/or reports of adverse health effects associated with exposure to Chinese drywall.

19.     Any policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and excess insurance policies relating to claims, and including the following information for each policy;

        a.      Insurer;
        b.      Dates policy in effect;
        c.      Policy Number;
        d.      Type of Policy;
        e.      Insurance Agent;
        f.      Policy Coverage Limits; and
        g.      Claims and Coverage issues.

21

20.     Any claims you have made on any insurance policies relating to your sale, installation, transfer, distribution or shipment of products identified herein, and including the following information for each claim:

      a.     Date;
      b.     Insurer;
      c.     Description of claim; and
      d.     Insurer's response to claim.
      e.     If in litigation:
          i.     Caption of Case; and
          ii.     Name and address of attorneys involved.

21.     Any settlement and release agreement entered into by you and any Chinese drywall manufacturer and all related communications or dealings.

22.     Any dealings or relationship with Taian Taigao Trading Corp., Ltd. and all intermediaries.

23.     All dealings and relationship with any testing company related to Chinese manufactured Drywall regarding gypsum board.

24.     All dealings and relationship with LaFarge during the relevant time period relating to Chinese drywall or gypsum board.

25.     All documents produced in response to the subpoena and document request attached hereto as Schedule "A".

22

# EXHIBIT B

LEXINGTON FILE & SERVE
42601772
E-SERVICE
Feb 21 2012
3:10AM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) | MDL NO. 2047 |
| _____ | ) ) | SECTION: L |
| THIS DOCUMENT RELATES TO: | ) ) | |
| ALL CASES | ) ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| _____ | ) ) | |

**CROSS-NOTICE OF ORAL AND VIDEOTAPED**
**DEPOSITION OF CNBM (USA) CORP.**

TO:    ALL COUNSEL

**PLEASE TAKE NOTICE** that American Home Assurance Company, Chartis Select Insurance Company, Chartis Specialty Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa. (collectively, "Chartis") will take the deposition of CNBM (USA) Corp. on Tuesday, February 22, 2012 at 10:00 a.m. (Pacific Standard Time) at The Beverly Wilshire Hotel in Beverly Hills located at 9500 Wilshire Boulevard, Beverly Hills, California 90212, or at another location mutually agreed upon by the parties.

Pursuant to the Federal Rules of Civil Procedure 30(b)(6), CNBM (USA) Corp. shall designate and produce a representative or representatives, as may be required, to testify on behalf of CNBM (USA) Corp. concerning the topics identified in Schedule "A" attached hereto. Further, the deponent is requested to produce the documents identified in the attached Schedule A to which deposition questions will be asked.

| | |
|---|---|
| Primary Examiners: | Counsel for Chartis |
| Videotaped Depositions: | Yes |
| Call-In Number: | 888-337-8218 |
| | Participant Code: 548696 |

1

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is complete.

Pursuant to directives provided at the status conference on May 27, 2010, a brief explanation of the subject matter expected at this deposition is as follows. This brief explanation is with full reservation of all rights by the noticing party, and is not intended to limit in any way the scope of the deposition noticed herein. Counsel should be aware that all matters may be discovered in the deposition beyond the following and that the following explanation is made solely in accordance with the directives provided at the status conference. This is an MDL "common" deposition of a Taishan importer/purchaser/supplier of drywall.

Respectfully submitted this 21st day of February, 2012.

QUINN EMANUEL URQUHART &
SULLIVAN LLP

/s/ Jane Byrne
JANE BYRNE, ESQ.
New York Bar Number: JB6748
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
janebyrne@quinnemanuel.com

*Counsel for American Home Assurance Company, Chartis Select Insurance Company, Chartis Specialty Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa.*

2

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Cross-Notice of Oral and Videotaped Deposition of CNBM (USA) Corp. has been served on Plaintiffs' Liaison Counsel Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail; and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was previously electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, in accordance with the procedures established in MDL 2047, on this 21st day of February, 2012.

QUINN EMANUEL URQUHART
& SULLIVAN LLP


/s/ *Jane Byrne*
**JANE BYRNE, ESQ.**

**SCHEDULE A:**
**REQUEST FOR PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL**
**RULE OF CIVIL PROCEDURE 34**

**DEFINITIONS & INSTRUCTIONS**

1.      Whenever used in this Request, the following terms shall have the following meanings:

(a)      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(b)      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(c)      "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

(d)      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  Documents shall include all drafts, including drafts with "track changes," and shall be deemed to be separate documents within the meaning of this term.

(e)      "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  ESI includes, by way of example only, computer programs

4

(whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names"), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

        (f)    "Electronic media" means any magnetic or other storage media device used to record electronically stored information.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g)     "CPSC" means the Federal Consumer Product Safety Commission, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(h)     "EPA" means the Environmental Protection Agency, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(i)     "CDC" means Centers for Disease Control and Prevention's (CDC's) Division of Environmental Hazards and Health Effects within the National Center for Environmental Health (NCEH), any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(j)     "ATSDR" means Agency for Toxic Substances and Disease Registry, any committee, subcommittee or advisory committee thereto, and any person, employee or agent acting as a representative thereof.

(k)     "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(l)     "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(m)     "Including" or "includes" means including, without limitation.

(n)      "Defendant," "you," or "your" means each of the individual named Defendants to whom this set of discovery is directed, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

(o)      "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(p)      "Quality Assurance Methods" means the testing or other protocols used to ensure the ultimate quality and consistency of drywall, plasterboard, or wallboard, including, but not limited to, the stages of production at which tests were performed, if any; testing of raw materials used for production if any; specific types of testing performed, if any; and, periodic chemical composition tests on the final product, if any.

(q)      "Process Control" means the on-line or real-time measurements and corrective actions, processes and protocols used to ensure the proper operation of a manufacturing process for its drywall, including, but not limited to, the amounts, quantities and qualities of raw materials employed, the types of monitoring devices utilized, if any; the frequency with which measurement devices were calibrated, if ever; and, the frequency of which production and measurement equipment was inspected for wear, corrosion, or other damage, if ever.

(r)      "Manufacturing Methods" mean the protocol or specifications for manufacturing drywall.

(s)      "Test" or "Tests" means all tests, inspections, checks, studies, evaluations, measurements, and analyses of drywall and the materials and compounds which make up the

7

same, into or of the composition, chemical or physical properties, performance, life expectancy, and formulation thereof.

(t)    "Person" means any natural person or any business, legal, or governmental entity or association.

(u)    "Taishan" means Taian Taishan Plasterboard Co., Ltd., Taishan Gypsum Co., Ltd. and any of its parents, related entities, subsidiaries, agents and assigns.

2.    The following rules of construction apply to all discovery requests:

(a)    The terms "all" and "each" shall be construed as all and each;

(b)    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c)    The use of the singular form of any word includes the plural and vice versa; and

(d)    Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.    Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your possession, custody, or control between January 1, 2001 and the current date (the "Relevant Time Period").

4.    Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data. Defendant shall produce a privilege log within 7 days after the production of documents for which privilege is asserted to apply.  For each document for which Defendant asserts a privilege

8

applies, it must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (e.g., letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2).  Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, Defendant shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5.      If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible.  In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows: persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6.      This Request is directed to all documents within your possession, custody or control, or within the possession of any agent of Defendant, or within the possession of any entity associated with Defendant, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7.      Documents are to be produced in full and in their unexpurgated form.  Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8.      Documents shall be produced in their original language (e.g., Mandarin, German) and shall include any translations of such documents, whether such translations were performed prior to or subsequent to the date of these requests.

9.      This Request is intended to be consistent with the Federal Rules of Civil Procedure 26 and 34.  This Request is a continuing one and requires further and supplemental production by you as and whenever you acquire or create additional responsive documents after the time of the initial production hereunder.

10.     All hard copy documents and electronically stored information (ESI) produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.  With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format.  Plaintiffs request that the parties meet and confer to discuss the timing and manner of Defendant's production in response to these requests.

10

11.     Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document (e.g., for ABC Defendant, Inc. "ABC001"; "ABC002").  No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter), and the Bates Number identified above.  The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

## DOCUMENTS TO BE PRODUCED

1.     All documents generated by, prepared for, reviewed by, received by, or concerning Chinese drywall or of problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

2.     For each year in which CNBM (USA) Corp., including any subsidiary or affiliate of CNBM (USA) Corp. designed, developed, tested, inspected, manufactured, marketed, sold, exported, or distributed Chinese drywall, all documents concerning the departmental and corporate organizational charts for the individuals in those groups, departments, and teams with any responsibility or oversight of any aspect of the design, development, testing, inspection, manufacture, marketing, sale, export, or distribution of said Chinese drywall.

3.     All documents concerning any contracts or agreements with respect to Chinese drywall, including indemnity agreements, agreements to assume liability, agreements to assume the defense, and joint defense agreements made by CNBM (USA) Corp., insurers for CNBM (USA) Corp., or any other entities that may be financially affected by any of the claims asserted

11

in this litigation, including but not limited to, Chinese drywall manufacturers, distributors, importers, exporters, brokers, retailers, builders, contractors, and installers.

4.      All documents concerning performance specifications and standards for Chinese drywall, whether such standards are set by CNBM (USA) Corp., professional, engineering, laboratory, or manufacturing organizations, or by governmental entities.

5.      All documents evidencing the amount of Chinese drywall purchased, exported, imported, brokered, stored, sold, and/or distributed by CNBM (USA) Corp. during the Relevant Time Period.

6.      All documents identifying the entity or entities from whom CNBM (USA) Corp. received, imported, or purchased Chinese drywall during the Relevant Time Period, including documents identifying direct manufacturer purchases and purchases through suppliers.

7.      All documents, including invoices, bills of lading, receipts, shipping documents, and customs documents, which relate to purchases, imports, and/or receipts of Chinese drywall during the Relevant Time Period.

8.      All documents, including sales orders, invoices, bills of lading, shipping documents, and customs documents, which relate to exports, sales, transfers, and distributions of Chinese drywall during the Relevant Time Period.

9.      All documents including sales orders, invoices, purchase orders, bills of lading, contracts, shipping documents, and customs documents, that relate to any transactions involving Chinese drywall with CNBM (USA) Corp. during the Relative Time Period.

10.      Promotional and/or marketing materials from manufacturers relating to any Chinese Drywall product.

12

11.     All communications during the Relevant Time Period by, from or between CNBM (USA) Corp. including its employees, agents, and or third-party consultants concerning Taishan's sales, exports, imports, purchase, shipping, storage, brokering, transfer, distribution or sale of Chinese drywall.

12.     All notices, claims, complaints, communications or documents of any kind among and/or between CNBM (USA) Corp. employees and/or employees of affiliate companies or consultants, and any property owners, homeowner's associations, co-op or condo boards, property managers, or tenants during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

13.     All communications between CNBM (USA) Corp. and any manufacturer, importer, exporter, purchasing agent, broker, distributor, and/or retailer of Chinese drywall during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

14.     All communications between CNBM (USA) Corp. and any other builder, purchaser, and/or contractor using Chinese drywall, or installer of Chinese drywall utilized by Defendant during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

13

15.     All communications between CNBM (USA) Corp. and any foreign or domestic governmental agency during the Relevant Time Period, including but not limited to the CPSC, EPA, CDC, and APSDR, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

16.     All documents provided to and any communications between CNBM (USA) Corp. and any foreign or domestic governmental entity, body, department, division, agency, and/or representatives during the Relevant Time Period, concerning problems with the drywall, including any symptoms of the drywall's presence such as smells or odors, air conditioning unit or component replacement, corrosion of metals, electrical and/or plumbing systems or components, and any related health and safety concerns, issues, or claims.

17.     All documents relating to research, inspection, testing, analysis, or remediation done by or on behalf of CNBM (USA) Corp. relating to Chinese drywall.

18.     All documents relating to instructions, guidance, standard operating procedures, or policies relating to the inspection, testing, analyses, or remediation done by or on behalf of CNBM (USA) Corp. relating to the Chinese drywall that Defendant ordered, purchased, received, stored, sold, transferred, or distributed.

19.     All contracts and communications between CNBM (USA) Corp. and any third-party vendor or consultant relating to any research, inspection, testing, analysis, and remediation of Chinese drywall.

20.     All documents and communications between CNBM (USA) Corp. and any insurer or its representative concerning any claims relating to Chinese drywall.

14

21.     All notices to any property owners and/or tenants, that their property and/or other properties contain Chinese drywall.

22.     All correspondence by and between Taian Taigao Trading Corp., Ltd. and CNBM (USA) Corp. relating to gypsum wall board.

23.     All correspondence, documents or communications relating to purchase orders, standards, complaints and problems with gypsum wall board during the relevant time period.

24.     All correspondence, documents or communications with any testing of Chinese manufactured drywall performed at your request.

25.     All correspondence, documents or communications with LaFarge during the relevant time period relating to Chinese drywall or gypsum board.

26.     All correspondence, documents or communications involving rebates, refunds or payments made to customers who made allegations regarding problem or defective Chinese drywall sold by you.

27.     Any documents relating to settlements or claims involving allegedly defective Chinese drywall.

## DEPOSITION TOPICS

Pursuant to Rule 30(b)(6), Defendant shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:

A.     **Organization and Record-keeping**

1.     The corporate organization and structure of CNBM (USA) Corp..

2.     Any entities with which CNBM (USA) Corp. is affiliated or has a financial interest in that was or is involved in the design, development, manufacture, promotion, export,

15

import, brokerage, distribution, shipment, storage, sale, purchase, and/or installation of Chinese drywall during the Relevant Time Period.

3.      Any filings made by or on behalf of CNBM (USA) Corp. to any state, federal, domestic, and/or foreign governmental agencies, departments, divisions, bodies, entities, or representatives during the Relevant Time Period.

4.      The nature of any and all of your transactions involving Chinese drywall during the Relevant Time Period.

5.      The identities of any entities involved in any way with your transactions involving Chinese drywall during the Relevant Time Period.

6.      The manufacturer and types of drywall product involved in your transactions in Chinese drywall during the Relevant Time Period.

7.      Any markings on the Chinese drywall product that you exported, imported, sold or brokered (e.g., lot number, batch number, serial number, color markings, labeling, UPC codes, etc.) during the Relevant Time Period.

8.      he methods, locations, and standards employed in the storage of any and all Chinese drywall exported, imported, sold or brokered by you during the Relevant Time Period.

9.      The nature of every transaction between you and any Chinese drywall manufacturer including but not limited to all face-to-face, telephonic, e-mail, instant message, text message, and/or any other electronically transmitted communication.

10.     All travel by you to China including but not limited to trips to drywall manufactures and distributors located in China.

11.     Every contract entered into by you for the purchase of drywall manufactured in China including but not limited to the purchase of drywall from Shandong Taihe Dongxin

16

Company, Taishan Gypsum Inc., Tai'an Taishan Plasterboard Co. Ltd., Beijing New Building
Material Co., Ltd., BNBM of America, Inc., and any other drywall manufacturer.

     12.    All communications between and among you and other importers and exporters of
Chinese drywall regarding quality control, shipping, storage, and the purchase of drywall
manufactured in China.

     13.    Financial data relating to your transactions involving Chinese Drywall during the
Relevant Time Period, including:

       a.    Sales data;
       b.    Shipping costs;
       c.    Storage costs;
       d.    Purchase costs; and
       e.    Refunds paid or received.

     14.    Any product labeling, information, instructions, specifications, and/or warranties
that you provided and/or received with any receipts or shipments of Chinese drywall during the
Relevant Time Period.

     15.    Any inspections, analyses, and/or compliance testing of Chinese drywall
conducted by you or on your behalf in connection with your manufacture of Chinese drywall or
transactions involving Chinese drywall during the Relevant Time Period.

     16.    Any standards consulted, considered, or relied upon to determine the quality and
characteristics of the drywall products subject to such inspections, analyses, and compliance
testing.

     17.    Any communications with trade associations, professional organizations,
manufacturing organizations concerning the manufacture, storage, care, or use of Chinese
Drywall.

18.     Any communications and/or reports of adverse health effects associated with exposure to Chinese drywall.

19.     Any policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and excess insurance policies relating to claims, and including the following information for each policy;

        a.     Insurer;
        b.     Dates policy in effect;
        c.     Policy Number;
        d.     Type of Policy;
        e.     Insurance Agent;
        f.     Policy Coverage Limits; and
        g.     Claims and Coverage issues.

20.     Any claims you have made on any insurance policies relating to your sale, installation, transfer, distribution or shipment of products identified herein, and including the following information for each claim:

        a.     Date;
        b.     Insurer;
        c.     Description of claim; and
        d.     Insurer's response to claim.
        e.     If in litigation:
            i.     Caption of Case; and
            ii.     Name and address of attorneys involved.

21.     Any settlement and release agreement entered into by you and any Chinese drywall manufacturer and all related communications or dealings.

22.     Any dealings or relationship with Taian Taigao Trading Corp., Ltd. and all intermediaries.

18

23.     All dealings and relationship with any testing company related to Chinese manufactured Drywall regarding gypsum board.

24.     All dealings and relationship with LaFarge during the relevant time period relating to Chinese drywall or gypsum board.

25.     All documents produced in response to the subpoena and document request attached hereto as Schedule "A".

# EXHIBIT C

**Gragg, Joy P.**

| | |
|---|---|
| **From:** | Gragg, Joy P. |
| **Sent:** | Wednesday, March 07, 2012 11:14 AM |
| **To:** | 'linazhang@icnbm.com' |
| **Cc:** | Mashelkar, Shubhra |
| **Subject:** | CNBM USA Corporation |
| **Attachments:** | AT-24C-Canon2EE98D-QuickConnect-03072012-111137.pdf |

Please find attached correspondence from Shubhra Mashelkar.

Thank you.

This document was sent using eCopy PaperWorks. For more information about how you can eCopy paper documents, visit www.eCopy.com.



WEINBERG WHEELER
HUDGINS GUNN & DIAL

3344 Peachtree Road, NE          404.876.2700  Office          www.WWHGD.com
Suite 2400                       404.875.9433  Fax
Atlanta, GA 30326

**Shubhra R. Mashelkar**
smashelkar@wwhgd.com
Direct 404.591.9663

March 7, 2012

**Via U.S. Mail and Electronic Mail**
Ms. Lina Zhang                        Ms. Lina Zhang
CNBM USA CORPORATION                  CNBM USA CORPORATION
650 Camino De Gloria                  17800 Castleton St # 558
Walnut, CA 91789                      Industry, CA  91748
linazhang@icnbm.com

Dear Ms. Zhang:

As you are aware, the 30(b)(6) Deposition of CNBM (USA) Corp. in the Chinese Drywall Litigation was noticed by the Plaintiffs' Steering Committee and scheduled for February 22, 2012 in Beverly Hills, California. CNBM (USA) Corp. was properly served with a Subpoena in a Civil Case, a Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6), and a witness fee by and through Jinsong Zhang, its authorized agent for service. Certain Banner entities, as well as Chartis, cross-noticed the deposition.

On February 22, 2012, the attorneys for Certain Banner entities and Chartis traveled to Beverly Hills, California, prepared and waited to commence the deposition but no one from CNBM (USA) Corp. appeared for the deposition. A court reporter appeared, and the absence of CNBM (USA) Corp. was duly noted on the record.

The attorneys for Certain Banner entities and Chartis have made several attempts to reach you at the last known phone number for CNBM (USA) Corp. but without any success. This letter is our final attempt to get CNBM (USA) Corp. to agree to appear for a deposition and to reimburse us for all expenses and costs incurred as a result of CNBM (USA) Corp.'s failure to comply with the subpoena and to appear for the deposition.

In this regard, the Plaintiffs' Steering Committee has already filed a Motion to Compel and for Cost/Sanctions, which is to be heard by Judge Eldon Fallon, U.S. District Court Eastern District of Louisiana, on March 22, 2012. Certain Banner entities and Chartis have also initiated a motion to compel and sought applicable sanctions against CNBM (USA) Corp. However, if you respond promptly, we will either refrain from filing our motion or withdraw our motion in the event it has already been filed.

I appreciate your attention to this matter and look forward to hearing from you immediately.

Sincerely,

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

Shubhra R. Mashelkar/jpg

Shubhra R. Mashelkar

cc:   Clinton Dockery, Esq. (Chartis Attorney)

Atlanta    Las Vegas    Miami