**PROPOSED ALLOCATION PLAN - BANNER MDL SETTLEMENT**
**(Final Version - March 9, 2012)**

Allocation Committee (the "Committee"):

| | |
|---|---|
| Arnold Levin | Hilarie Bass |
| Russ Herman | Neal Sivyer |
| Ervin A. Gonzalez | Dorothy Wimberly |
| Michael Ryan | Charlie Long |
| Bruce Steckler | Vanessa Serrano |

Other Participants:

| | |
|---|---|
| Kerry Miller | Mark Salky |
| Steven Glickstein | Minor Pipes |
| Nicholas Panayotopolous | |
| Michael Sexton | |
| Michael Peterson | |

The Committee and Other Participants recommend the following allocation protocol:

**1. Eligibility.** To be eligible for an allocation of Settlement Funds, an Affected Property of a Banner Class Member must contain or have contained defective Chinese-manufactured drywall ("CDW") supplied by one or more of the Banner entities. Any person or entity that previously has settled with Banner for an Affected Property is not eligible to receive an allocation of settlement funds for that same Affected Property.

**2. Gross Settlement Amount.** The Settlement Funds available for allocation and distribution is $53,081,572.30 ("Gross Settlement Amount").

**3. Set Aside for Attorneys' Fees and Costs.** The parties recognize that the final determination of entitlement to attorneys' fees and costs, and the amount of any such award, shall be made by Judge Eldon E. Fallon. Pending a determination of the entitlement to and amount of any awards of attorneys' fees and costs, the parties agree to set aside a portion of the Gross Settlement Amount to satisfy any such awards. Thirty-two percent (32%) of the Gross Settlement Amount, or $16,986,103.14, shall initially be set aside for an award of attorneys' fees ("Attorneys' Fees Set Aside"). An additional fund in the amount of $2,000,000 shall be set aside for an award for the reimbursement of reasonable expenses, including the cost of notice advanced by the Plaintiffs' Steering Committee and the cost of administering the allocation of Settlement Funds ("Cost Set Aside"). Collectively, these two set asides shall be referred to as the "Attorneys' Fees and Cost Set Aside". The remaining funds of the Gross Settlement Amount, or $34,095,469.16, shall be referred to as the "Initial Monies Available for Distribution."

For those Affected Properties that have been repaired by builders that have actively pursued this litigation seeking recovery from the Gross Settlement Amount, the maximum allowable

1

award of attorneys' fees from the Attorneys' Fees Set Aside shall be ten percent (10%) ("Ten Percent Properties") pursuant to Paragraph 14.7 of the Banner Settlement Agreement.  For all other Affected Properties, the maximum allowable award of attorneys' fees from the Attorneys' Fees Set Aside shall be thirty-two percent (32%) ("Thirty-Two Percent Properties").  All parties reserve their rights to object to or oppose any motions or petition seeking an award of attorneys' fees and costs for any Affected Property.[1]

Following the submission of all claims forms, a determination will be made of the Affected Properties that comprise the Ten Percent Properties and those that comprise the Thirty-Two Percent Properties.  For the Ten Percent Properties, there will be a procedure for a return of the twenty-two percent overage (which amount reflects the difference between the thirty-two percent set aside and the ten percent maximum allowable award of attorneys' fees for those properties) for distribution only to those Ten Percent Properties.  A similar procedure shall be established for the return of the difference between the Attorneys' Fees and Costs Set Aside and the amount ultimately awarded as attorneys' fees and costs on the Ten Percent Properties and the Thirty-Two Percent Properties.  The differences to be returned pursuant to this paragraph shall be referred to herein as the "Applicable Overages."  These procedures shall ensure that any Class Members subject to lower fees will get a larger distribution than Class Members subject to higher fees, so that each Class Member will receive the precise net distribution to which that Class Member is entitled after deducting the applicable award of attorneys' fees and costs attributable to each Affected Property for that Class Member.

**4.  Repair and Relocation Damage Set Aside.**  Ninety-five percent (95%) of the Initial Monies Available for Distribution shall be set aside to compensate or reimburse Banner Class Members for "Repair and Relocation Damages"[2] ("Repair and Relocation Damage Set Aside").  The Special Master shall make appropriate distributions of the Applicable Overages as additional or supplemental compensation for Repair and Relocation Damages in such a manner to implement the intent described in the third paragraph of section 3 above.

**5.  Bodily Injury and Personal Property Set Aside.**  Five percent (5%) of the Initial Monies Available for Distribution shall be set aside to compensate or reimburse Banner Class Members for alleged bodily injury ("Bodily Injury Set Aside") and "Personal Property

---

[1]     There remains a dispute as to whether ten percent (10%) or thirty-two percent (32%) should ultimately be set aside for Affected Homes that were repaired by a homebuilder that did not actively pursue litigation.  The parties agree to submit this for resolution by Judge Fallon as soon as possible if and when the Banner settlement receives final approval.

[2]     The term "Repair and Relocation Damages" shall mean costs and expenses associated with the following:  (i) the removal of the CDW from the Affected Property and repairing or replacing affected building materials and fixtures in the Affected Property (the "repair work"); (ii) the relocation of the property owners' belongings (*i.e.*, moving expenses and storage-related expenses) during the repair work; and (iii) if necessary, obtaining comparable alternative living arrangements for the homeowners during the repair work.

Losses"[3] ("Personal Property Set Aside").  The amount of the Bodily Injury Set Aside shall not exceed four and one half percent of the Initial Monies Available for Distribution and the amount of the Personal Property Set Aside shall not exceed one-half of one percent of the Initial Monies Available for Distribution.  The Special Master shall make appropriate distributions of the Applicable Overages as additional or supplemental compensation for Bodily Injury and Personal Property Losses in such a manner to implement the intent described in the third paragraph of section 3 above.

**6.  Affected Property Allocation Per Square Foot.**  In order to allocate the Repair and Relocation Damage Set Aside among the Banner Class Members, the Special Master or Claims Administrator shall first compile claims information from the Banner Class Members by a date certain to determine:  (i) the total number of Banner-supplied Affected Properties that are entitled to an allocation of Banner Settlement Funds; and (ii) the total combined square footage under air of all such Affected Properties.  The Special Master or Claims Administrator shall then divide the total amount of Repair and Relocation Damage Set Aside by the total combined square footage under air of all Banner-supplied Affected Properties to determine the amount per square foot under air to allocate to each Affected Property ("Affected Property Allocation Per Square Foot").  (For example, assume that the Repair and Relocation Damage Set Aside is $35,000,000.00 and the total combined square footage under air equals 3,500,000 square feet.  The Affected Property Allocation Per Square Foot will be $10.00 per square foot under air.)[4]  In addition to any other requirements under the Banner Settlement Agreement, the Banner Class Members must submit proof satisfactory to the Special Master or Claims Administrator: (a) that the Affected Property contains CDW supplied by Banner; and (b) of the square footage under air of the Affected Property.  Any Banner Class Member who is also a Participating Class Member in the Knauf Class Settlement must comply with the qualifying procedures in Section 4.4 of the Knauf Class Settlement.  All Banner Class Members whether they are owners of unrepaired properties, owners who have repaired their own properties or assignees (legal or equitable) of owner's claims for repaired properties (*e.g.*, builders that have repaired the properties), shall be treated equally and shall be entitled to the same Affected Property Allocation Per Square Foot.  Additionally, Banner Class Members may also be entitled to a distribution of Applicable Overages that were initially withheld as a part of the Attorneys' Fees Set Aside, as provided in section 3 and 4 above.

**7.  Determination of Net Repair and Relocation Damages Distribution for Affected Property.**  After the Affected Property Allocation Per Square Foot is determined, the Special Master or Claims Administrator shall determine the net monies available for distribution in

---

[3]    The term "Personal Property Losses" shall mean alleged damages to the property owners' personal property, such as appliances (unless replaced as part of remediation), electronics, and other household items.

[4]    This example is designed only to show the mathematics of the formula; it is not an estimate of the amount of the combined square footage or of the Affected Property Allocation Per Square Foot.

connection with each Affected Property by multiplying the number of square feet in the Affected Property by the Affected Property Allocation Per Square Foot (the "Net Repair and Relocation Damages Distribution").  (A 2,000 per square foot house would be allocated $20,000 of Repair and Relocation Damages in the example discussed above.)

**8.  Beneficiary of  Net Repair and Relocation Damages Distribution.**  The Net Repair and Relocation Damages Distribution shall be distributed to the owner of each Affected Property unless: (i) the Affected Property has been repaired by a builder, in which case the builder that has repaired that Affected Property shall receive the entire Net Repair and Relocation Damages Distribution (under no circumstances shall a remediating builder be obligated to share any portion of their distribution with Knauf); (ii) the owner is a KPT Property Owner (as that term is defined in Paragraph 1.28 of the Knauf Settlement) obligated to assign the entire Net Repair and Relocation Damages Distribution for that Affected Property pursuant to Paragraph 4.8.2 of the Knauf Settlement; or (iii), the owner is a Mixed Property Owner (as that term is defined in Paragraph 1.35 of the Knauf Settlement) obligated to assign some portion of the Net Repair and Relocation Damages Distribution for that Affected Property pursuant to Paragraph 4.8.2 of the Knauf Settlement.  In the event (i) applies, the Net Repair and Relocation Damages Distribution for that Affected Property shall be transferred to the remediating builder which will not be obligated to assign any of that amount to the Remediation Fund created by the Knauf Settlement.  In the event (ii) applies, the Net Repair and Relocation Damages Distribution for that Affected Property shall be transferred to the Remediation Fund created by the Knauf Settlement (or if the Knauf Settlement is not finally approved, to the Escrow Fund established by the Pilot Program for those assignments that were made through participation in the Pilot Program).  In the event (iii) applies, the Net Repair and Relocation Damages Distribution for that Affected Property multiplied by the KPT Drywall Percentage (as defined in Paragraph 1.26 of the Knauf Settlement) shall be transferred to the Remediation Fund created by the Knauf Settlement and the remainder shall be transferred to the owner of that Affected Property.  Under no circumstances shall any Class Member (property owner or its assignee or any other Class Member) receive a Net Repair and Relocation Distribution for Repair and Relocation Related Expenses beyond their reasonable, actual out-of-pocket (or estimated, in the case of unrepaired properties), Repair and Relocation Related Expenses.  To the extent that an assignee of a Class Member has already received full compensation or reimbursement from others in the chain of distribution of the CDW for Repair and Relocation Related Expenses for an Affected Property (pursuant to another settlement or otherwise), that assignee may not receive an additional allocation under this settlement for Repair and Relocation Related Expenses for that same Affected Property.

**9.  Recovery Out of Bodily Injury or Personal Property Set Aside.**  All Class Members submitting claims for bodily injury from the Bodily Injury Set Aside or Personal Property Losses from the Personal Property Set Aside shall comply with a claims process similar to the process set forth in Paragraph 4.7 of the Knauf Settlement, whether or not that Class Member has claims arising out of KPT Drywall.  All Class Members with Affected Properties containing KPT Chinese Drywall (as that term is defined in Paragraph 1.25 of the Knauf Agreement) must, prior to seeking a distribution from the Bodily Injury Set Aside, first seek to recover such benefits from the Knauf Other Loss Fund described in Paragraph 4.6 of the Knauf Settlement.   All Class Members who participate in the Knauf Settlement

and receive the Lump Sum Payment defined in Paragraph 4.3.1.1. of the Knauf Settlement shall be precluded from receiving any distribution for Personal Property Losses from the Personal Property Set Aside.  If a Class Member with an Affected Property containing KPT Chinese Drywall has a claim for bodily injury that is rejected by the Special Master overseeing the Knauf Settlement's Other Loss Fund Claims Procedures, that Class Member shall be precluded from recovering from the Bodily Injury Set Aside.  If, on the other hand, a Class Member with an Affected Property containing KPT Chinese Drywall is able to recover some but not all of his/her alleged bodily injury damages from the Knauf Other Loss Fund, that Class Member shall then be entitled to an allocation from the Bodily Injury Set Aside.

**10. Distribution of Bodily Injury or Personal Property Set Aside.**  The Special Master or Claims Administrator shall determine the amount of approved bodily injury claims according to the standards set forth in Paragraph 4.7 of the Knauf Settlement.  If the amount of approved claims for bodily injury is less than the Bodily Injury Set Aside, the Special Master or Claims Administrator shall award each Class Member with an approved claim the full amount of their approved bodily injury claim.  If, on the other hand, the total amount of approved claims for bodily injury exceeds the total amount of the Bodily Injury Set Aside, the Special Master or Claims Administrator shall decrease the amount of each Class Members' approved claim for bodily injury on a pro-rata basis, and award each Class Member with an approved claim their pro-rata share.  The Personal Property Set Aside is available to Banner Class Members who do not receive compensation for personal property loss under the Pilot Program or the Knauf Settlement and who did not already release their claim against Banner for personal property loss.  If the amount of approved claims for Personal Property Losses is less than the Personal Property Set Aside, the Special Master or Claims Administrator shall award each Class Member with an approved claim the full amount of their approved Personal Property Losses claim.  If, on the other hand, the total amount of approved claims for Personal Property Losses exceeds the total amount of the Personal Property Set Aside, the Special Master or Claims Administrator shall decrease the amount of each Class Members' approved claim for Personal Property Losses on a pro-rata basis, and award each Class Member with an approved claim their pro-rata share.  Under no circumstances shall any Class Member receive a distribution for bodily injury or Personal Property Losses beyond their actual losses.

**11. Distribution of Unused Bodily Injury or Personal Property Set Aside.**  Any funds from the Bodily Injury Set Aside or Personal Property Set Aside that are not used to compensate a Banner Class Member for bodily injury or Personal Property Losses shall be transferred into a "Supplemental Repair and Relocation Distribution Fund" and distributed on a pro-rata, per square foot basis to all owners of Affected Properties or their assignees in the same manner as provided for in section 6 through 8 above.

*MIA 182,396,789v7 3-9-12*