```
 1                    UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF LOUISIANA

 3
     IN RE: CHINESE-MANUFACTURED )
 4   DRYWALL PRODUCTS             )
     LIABILITY                    )
 5   LITIGATION                   )
                                  ) CIVIL DOCKET NO. 09-MD-2047-EEF-JCW
 6                                ) SECTION "L"
                                  ) NEW ORLEANS, LOUISIANA
 7                                ) WEDNESDAY, JANUARY 4, 2012
                                  ) 9:00 A.M.
 8   THIS DOCUMENT RELATES TO:    )
                                  )
 9   ROBERT C. PATE, AS TRUSTEE   )
     FOR THE CHINESE DRYWALL      )
10   TRUST                        )
                                  )
11   vs.                          )
                                  )
12   AMERICAN INTERNATIONAL       )
     SPECIALTY LINES INSURANCE    )
13   COMPANY, FCCI COMMERCIAL     )
     INSURANCE COMPANY, FCCI      )
14   INSURANCE COMPANY, ET AL     )
                                  )
15   2:09-CV-07791 (E.D. LA.)     )
     ****************************

16

17            TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

18          HEARD BEFORE THE HONORABLE ELDON E. FALLON

19                  UNITED STATES DISTRICT JUDGE

20

21   OFFICIAL COURT REPORTER:        SUSAN A. ZIELIE, RPR, FCRR
                                     United States District Court
22                                   Eastern District of Louisiana
                                     500 Poydras Street, Room HB406
23                                   New Orleans, La 70130
                                     susan_zielie@laed.uscourts.gov
24                                   504.589.7781

25   Proceedings Recorded By Mechanical Stenography.  Transcript
     Produced By Computer Aided Transcription.
```

```
 1

 2    APPEARANCES:

 3

 4    For the Plaintiffs'            HERMAN HERMAN KATZ & COTLAR
      Steering Committee:            BY:  RUSS HERMAN, ESQ.
 5                                   820 O'keefe Avenue
                                     New Orleans LA 70113
 6                                   504.581.6024

 7    For the Plaintiffs:           LEVIN, FISHBEIN, SEDRAN & BERMAN
                                     BY:  ARNOLD LEVIN, ESQ.
 8                                   510 Walnut Street, Suite 500
                                     Philadelphia PA 19106
 9                                   877.882.1011

10    For the Defendant:             Frilot, LLC
                                     BY:  KERRY J. MILLER, ESQ.
11                                   Energy Centre
                                     1100 Poydras Street
12                                   Suite 3700
                                     New Orleans LA 70163
13                                   504.599.8000

14    For Defendant Knauf:           KAYE SCHOLER
                                     BY:  STEVEN GLICKSTEIN, ESQ.
15                                   425 Park Avenue
                                     New York NY 10022-3598
16                                   212.836.8000

17

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES:

 2

 3   For Home Builders:          GREENBERG TRAURIG
                                 BY:  HILARIE BASS, ESQ.
 4                               1221 Brickell Avenue
                                 #22-1840
 5                               Miami FL 33131-3224
                                 305.579.0745
 6
     For Northriver:            THOMPSON COE
 7                               BY:  RODRIGO (DIEGO) GARCIA, ESQ.
                                 One Riverway
 8                               Suite 1600
                                 Houston TX 77056
 9                               713.403.8206

10   For Banner:                WEINBERG WHEELER HUDGINS GUNN
                                    & DIAL
11                               NICHOLAS PANAYOTOPOULOS, ESQ.
                                 3344 Peachtree Road
12                               Suite 2400
                                 Atlanta GA 30326
13                               404.876.2700

14   For Home Depot:            KING & SPALDING
                                 BY:  S. STEWART HASKINS, II, ESQ.
15                               1180 Peachtree Street NE
                                 Atlanta GA 30309-3521
16                               shaskins@kslaw.com
                                 404.572.4687
17

18   Also Present:              MATTHEW CLARK, ESQ.

19

20

21

22

23

24

25
```

1          NEW ORLEANS, LOUISIANA; WEDNESDAY, DECEMBER 4, 2012

2                          9:00 A.M.

3                    (COURT CALLED TO ORDER)

4          THE CLERK:  MDL No. 2047, in re:  Chinese Manufactured

5     Drywall Products Liability Litigation.

6          THE COURT:  Counsel make their appearance for the

7     record.

8          MR. HERMAN:  May it please the Court, good morning,

9     Judge Fallon.  Russ Herman for the plaintiffs.

10         MR. MILLER:  Good morning, Your Honor.  Kerry Miller on

11    behalf of the Knauf defendants.

12         THE COURT:  Today, I have before me a joint motion of

13    the proposed settlement submitted by class counsel, Plaintiff's

14    Steering Committee and Knauf defendants, for an order seeking the

15    preliminary approval of a global Knauf settlement, conditional

16    certification of the settlement class and issuing of class

17    notice, a scheduling on the fairness hearing, and also there's a

18    motion to stay all proceedings.

19         By way of background, the proposed global class

20    settlement agreement before the Court is intended to resolve

21    claims made and filed in actions which arose out of the KPT

22    Chinese drywall installed in properties throughout the United

23    States.  The settlement agreement defines the KPT Chinese drywall

24    as, quote:  Any and all drywall products manufactured, sold,

25    marketed, distributed and/or supplied by KPT which are alleged to

1    be defective.

2           The settlement agreement class includes all persons or

3    entities who, as of December the 9th, 2011, filed a lawsuit in

4    the litigation as a named plaintiff asserting claims arising from

5    or otherwise related to the KPT Chinese drywall whether or not

6    the Knauf defendants are named in the suit.

7           The settlement agreement in essence establishes two

8    funds for the benefit of the class members.  First, a remediation

9    fund; and, second, an other loss fund.

10          The remediation fund is uncapped, with the Knauf

11   defendants making an initial deposit of $200 million, and

12   additional deposits of $50 million each time the balance of the

13   fund is reduced to $25 million.  Additional funds may also be

14   deposited into the remediation fund.  For example, 50 percent of

15   the prospective insurance settlement funds and net amounts

16   recovered from IN/EX, Banner and prospective L&W class

17   settlements.

18          In essence, the remediation fund involves the

19   residential owners and commercial owners, and they have three

20   available options for remediating benefits.

21          First, they may elect to have their properties

22   completely remediated, pursuant to the settlement remediation

23   protocol which has been devised by the Court after hearing a

24   number of cases that were tried.

25          Second, they may self-remediate their affected

1    properties and be compensated for the cost under this settlement.

2           Third, they may receive a discounted cash opt-out

3    payment if they choose not to remediate their property.

4           The remediation protocol option is intended to make the

5    owners whole within a three month period by completely

6    remediating their affected properties to its former state prior

7    to the installation of KPT drywall.

8           Residential owners will also receive a lump sum payment

9    of either $8.50 or $10 per square foot, depending on the size of

10   the property.  The purpose of this payment is to compensate for

11   other covered expenses, which include the following incurred

12   during remediation, such as alternate living expenses, as many of

13   the people will have to in effect move out of their homes; their

14   personal property damage, maintenance cost, utility bills,

15   insurance, property taxes, landscaping, moving and storage.

16   That's what that fund is intended for.

17          The second option.  Under the second option, which is,

18   as I said, the self-remediation option, residential owners and

19   commercial owners may elect to self-remediate their affected

20   properties and a cash payment will be made to the owner's chosen

21   contractor.  Some of these individuals have contractors that they

22   have used to build their home in the first place and they want to

23   go back to that individual.  Some of them have their friends or

24   brothers-in-law who are contractors, and they want to use them.

25   So that's an option for those folks.

1          For mixed properties, the payment will be discounted by

2    multiplying the payment by the KPT drywall percentage.  There's a

3    certain percentage in these cases.  The cases, particularly in

4    Florida and to some extent in Louisiana, we've found that some of

5    them are completely KPT drywall, but some of them are not.  Some

6    of them are different percentages of the KPT drywall, and there's

7    an effort made to deal with those properties.

8          The third option, as I mentioned, the owners may select

9    a discounted cash payment, but they have to follow certain

10   disclosure requirements if they do that.

11         Now, with regard to the other loss fund, a fixed fund,

12   as I said, the first fund is not capped.  The other loss fund is

13   capped.  Knauf defendants have deposited or will deposit $30

14   million and 50 percent of the net proceeds from the prospective

15   insurance settlement in excluded releases.  This fund provides

16   additional benefits to class members for economic loss depending

17   on the subclass.

18         Residential owners, for example, may be entitled to

19   reimbursement of alternate living expenses arising from the need

20   to vacate prior to the remediation.

21         Or, two, to recover an economic loss from foreclosures

22   and short sales.  We have some of those.

23         Commercial owners may be entitled to economic loss for

24   at most three months for inability to use or to rent the affected

25   property during remediation.

1          Also reimbursement for carrying costs arising from

2     inability to sell the affected properties.

3          And, third, loss of equity due to foreclosures and short

4     sales.  Unfortunately, we do have some of those that occurred.

5          The tenants may seek compensation for moving expenses

6     and for personal property damage.

7          The other loss fund may also provide compensation for

8     bodily injury to residential owners and tenants, assuming they

9     can prove the connection there.

10         In addition to these funds, these two funds that I've

11    just spoken about, the settlement agreement also provides for

12    attorney fees.  The attorney fees do not come out of those funds.

13    The purpose of the settlement -- at least, the purpose of it, is

14    to provide full remediation and not take attorneys fees from that

15    full remediation, because it wouldn't be full remediation at that

16    point.  So the settlement agreement also provides for at least

17    $160 million in attorneys fees and costs, separate from the

18    compensation allotted to the prospective class members.

19         These fees will compensate the PSC, common benefit

20    counsel, proposed settlement class counsel and individually

21    retained plaintiff attorneys.

22         Also, the Knauf defendants will make an advanced payment

23    of $6 million nonrefundable for the shared costs of counsel.

24         The movants in this case presently ask for preliminary

25    approval of the settlement agreement on the basis they claim that

1    the agreement is in the best interest of the Knauf settlement

2    class members.  And the requirements of Rule 23, they say, have

3    been satisfied for at least a conditional certification of the

4    class.

5          Additionally, they take the position that the proposed

6    form and method of class notice, which they would intend to send

7    out, meets the requirements of Rule 23.

8          I have received objections to this preliminary approval.

9    Some of the objections are not objections as much as they are

10   opportunities to state their position and also to seek some

11   clarification.

12         I remind the parties, this is a very complex and

13   complicated proposal, and it's going to take perhaps some

14   tweaking.  Even if a conditional approval is made, it's going to

15   take some tweaking probably before any final approval can be

16   granted.

17         But, in any event, that's the proposal, that's the

18   motion.  I'll hear from the parties at this time.

19         Anything from the proponents?

20         MR. LEVIN:  The proponents would rather wait for the

21   objections and then reply.  I think it would be easier.

22         THE COURT:  Probably, what would be helpful, if we had

23   the objection, and then the PSC would respond to each objection,

24   and then give the objector an opportunity to speak again also.

25   So let's have the objection first.

1          MS. BASS:  Good morning, Your Honor.  Hillary Bass on

2    behalf of the Home Builders' Steering Committee.

3          As noted in the recently-filed PSC response to those

4    filing objections to the entry of this conditional approval

5    order, this is one of a number of building blocks that is this

6    Court's effort to resolve all of the Chinese drywall disputes,

7    some of which obviously have already been preliminarily approved,

8    Banner and IN/EX; some of which are before you for the first time

9    today; and others, like the insurance agreement, are merely a

10   concept at this point, with much to be worked out.

11         But, because of the bulk of the parties have so many

12   multiple roles and have so many interrelated claims -- the Home

13   Builders are a perfect example of that.  We stand before you as a

14   plaintiff, as a defendant, and also as an assignee of the

15   homeowner claims seeking to recover the costs of remediation.

16   So, despite the fact that the PSC has objected to whether we have

17   standing, it is our view that we do fit within one of those

18   exceptions to class actions where our rights are being directly

19   affected, both by the nature of the releases and the bar here.

20         We have, as you know, had detailed conversations with

21   both the PSC and Knauf, trying to resolve some of ambiguities of

22   this agreement.  And we are happy to report, as stated in our

23   papers, that we do believe that many of the clarifications will

24   resolve many of the Home Builders' objections.

25         That being said, there are two things that we would ask

1   of Your Honor today.

2          First and foremost is that this insurance agreement,

3   that this entire Knauf-PSC settlement agreement, is dependant

4   upon, is at this point purely a concept.  We're going to meet

5   with Mediator Perry, we are going to be meeting with him today,

6   and we are hopeful that that would be resolved.

7          But it would be our view that any opt-out period or

8   objection date be triggered by the resolution of that proposed

9   insurance agreement.

10          To ask any party to make a decision about whether they

11   object or chose to opt-out of this class before they have a

12   thorough understanding of the insurance agreement that will help

13   fund this class action settlement and will provide for various

14   other issues relating to release and bar orders, we believe,

15   would be improper.

16          So we do not have an objection to this Court

17   preliminarily approving this settlement for the purpose of

18   getting the stay in effect for pending cases against Knauf.  But,

19   for the purpose of putting the parties on notice, we would ask

20   that the Court use the opt-out date and the objection date, and

21   select one that would be triggered by some timeframe following

22   resolution of that insurance agreement.

23          Secondly, as noted in our response, there are multiple

24   ambiguities in this agreement.  We certainly understand the

25   pressure these parties were under to put forth a very detailed

1  and multi-paged agreement.  But it does underscore the fact that,

2  as Your Honor noted, further negotiations are required to clarify

3  those ambiguities.  I'll just give you a few examples.

4       In Section 4.82, for example, it discusses that Knauf

5  related settlement proceeds of the Banner, IN/EX and L&W

6  settlement will be used to fund these two Knauf loss funds.

7       We have now obtained clarification that, despite the

8  fact the language does not indicate this is the case, that it is

9  the parties' objections to exclude from that monies that Home

10  Builders, as assignees of homeowners for homes they've prepared,

11  Home Builders would be entitled to those Banner proceeds.  That

12  money will be excluded.  That of course is not in this document.

13       Additionally, there is a provision in 148 and Section

14  4.8 relating to the use of insurance proceeds.  Similarly, there

15  is no exclusion for the money coming into the Knauf settlement

16  funds for monies that would go to Home Builders.

17       And a third example is Section 14.3 that describes also

18  that this agreement over and supercedes any existing Knauf

19  agreement regarding settlement of attorneys fees.  And of course

20  Knauf does have separate agreements with Home Builders that does

21  reference those attorney fees.  We have been told that, despite

22  the fact that language is not in there, it is not the intention

23  to supercede those separate agreements.

24       These are just examples of one of a number of many

25  clarifications, and what we would ask Your Honor to do in advance

```
1   of any final approval of this settlement is to have a PSC and
2   Knauf, if it doesn't require a full amendment of this paragraph
3   for purposes of this settlement agreement, at least enter into a
4   side agreement to clarify these ambiguities so the parties will
5   have certainty as to what this ambiguous language is intended to
6   cover.  And it's specifically relevant in light of all the
7   different moving parts of these other settlements, and the fact
8   the language does not make clear what is intended to be affected
9   in those other settlements and what is not.
10          So, subject to those two clarifications, Your Honor,
11  one, that we ask for the opt-out and objection date to be
12  triggered by the conclusion of the insurance agreement; and, two,
13  that the PSC and Knauf in fact enter into some type of writing
14  which gives the Home Builders the clarification that they
15  deserve, that this is not intended to affect other existing
16  agreements that they have entered with both these parties, we
17  have no objection to the conditional approval this morning, Your
18  Honor.
19          THE COURT:  Hear from the PSC.
20          MR. LEVIN:  Arnold Levin for the proposed class counsel
21  and the Plaintiff's Steering Committee.
22          There's not much I have to say, Your Honor.  It's all
23  been said in the brief as to conditional certification, et
24  cetera.
25          We do not believe the Home Builders have standing to
```

1    object to this settlement.  They are not part of it.  They're not

2    taking from the pot.  It's Omni plaintiffs only.

3         Nevertheless, everything that Ms. Bass said with regard

4    to the clarifications we made, we did not think they were

5    ambiguous.  I can assure her that paranoids do not have enemies

6    when it comes to the Knauf settlement.

7         Specifically, in this settlement, the provision read as

8    a whole, comport with her now understanding of the settlement.

9         As to the Banner and IN/EX monies and insurance monies

10   and L&W monies and subsequent settlements, they only become a

11   ticket for admission to the Knauf settlement.  If you're not

12   taking from the Knauf settlement, those funds belong to whoever

13   those funds belong to with regard to the allocations in Banner

14   and IN/EX.  And we will be filing an allocation plan shortly with

15   regard to Banner.

16        We anticipate and hopefully, that, if we can accomplish

17   the insurance settlement in an expeditious fashion, that the

18   fairness hearing in this case will include Banner, IN/EX,

19   insurance, L&W and Knauf, so that all the moving parts will fit

20   together.  It's been a tough situation of getting all the moving

21   parts moving, and we're 80 percent there right now.

22        As to the opt-out period, I really leave that to Knauf

23   to address, because everybody in all of these settlements want to

24   know how many opt-outs they have before they move to the next

25   stage of the settlement.

1          We as the Plaintiff's Steering Committee would

2     accommodate all opt-out periods and all dates for opt-out periods

3     so long as we could hold the fairness hearing for everything at a

4     time that will be determined in the proposed insurance

5     settlement.  So perhaps Mr. Glickstein will deal with the opt-out

6     period.

7          Does the Court have any questions?

8          THE COURT:  No.

9          The thing that I remind everybody, though, that this is

10    a complicated program.  And it's complicated not only from the

11    standpoint of putting it down in words, but it's going to also be

12    complicated from the standpoint of carrying it out.  And I think

13    that, if we get to the point that it's preliminarily approved

14    before it's even finally approved, I'm going to have to meet with

15    the parties and get some kind of methodology for carrying out

16    this program.  It's not like the typical release where you get a

17    check and you sign a release.  It's something additional.  So

18    we're going to have to give some thought as to how it's carried

19    out and who is in charge of the various aspects of the carrying

20    out of the program.  Because, the devil's going to be in the

21    details of carrying it out, and we ought to have that down pretty

22    well before we focus on the final approval.

23          MR. LEVIN:  As to final approval.

24          But, as to preliminary approval, Your Honor, we would

25    suggest that --

 1          THE COURT:  We've got to get the notice out first.

 2          MR. LEVIN:  -- in the old days, we walked into the

 3    judge's chambers and the judge signed the order.  I think it's a

 4    good idea to have this hearing that Your Honor has scheduled.

 5    But we have to get the notice out, which is only by mail, to the

 6    class members so we can push the can down the road.

 7          THE COURT:  Yes.  I'm not taking about before the final

 8    approval.  I'm talking about before the preliminary approval.

 9          MR. LEVIN:  There's a lot of work to be done at that

10    period of time, Your Honor.

11          MR. GLICKSTEIN:  Good morning, Your Honor.  Steve

12    Glickstein on behalf of Knauf defendants.

13          I think it's just important to note how little is in

14    dispute between the Home Builders' Steering Committee and the PSE

15    and Knauf.

16          Ms. Bass says that she is not opposed to preliminary

17    approval of the settlement and to the entry of a stay.  The

18    objection would be to setting an opt-out date prior to the

19    completion of the prospective insurer agreement.

20          I would urge the Court to set an opt-out and objection

21    date; but, in recognition of the fact that when the prospective

22    insurer agreement is done, if there are requests at that time for

23    additional time in light of new information, Your Honor always

24    has discretion to address it then.

25          I think we need to get the process started of counsel

1  thinking and discussing with their clients this settlement, and I

2  believe that deferral of the notice will only serve ultimately to

3  delay things.

4       The Knauf settlement, we hope, will provide very

5  substantial momentum for the prospective insurer agreement to be

6  completed.  We are hopeful that it will also spur completion of

7  negotiations with Northriver and the IN/EX settlement, it will

8  hopefully result in negotiations between Knauf and Banner and

9  IN/EX concerning their disputes.  And I fear that putting things

10  on hold will only serve to take away the heat and the fire that

11  will require us ultimately to complete those sooner rather than

12  later.

13       If the prospective insurer agreement is not completed in

14  a timely way, and somebody comes to Your Honor and asks for more

15  time, I think the time to address that request is now.  But a

16  deadline is always a good thing to get the parties moving.  And

17  so I would urge Your Honor to set that deadline, subject always

18  to Your Honor's right to reconsider.

19       With respect to the ambiguities in the settlement, I

20  like to think that we had drafted it carefully and clearly.  But,

21  you know, things are always more clear to the folks that are

22  negotiating and drafting than perhaps those who are reading it

23  cold for the first time.

24       We have certainly spoken with Ms. Bass, and I believe

25  that we have satisfied her concerns.  We put those -- we've

1    confirmed in writing in our brief to the extent to which her

2    understandings are correct.  And, if at some point we need to

3    take those confirmations out of the brief and put them in another

4    piece of paper, it's not going to bother me.

5            So there's very little in dispute here.  It's really

6    only whether Your Honor sets the deadline, and I think Your Honor

7    ought to set the deadline.

8            THE COURT:  I see the wisdom in both sides.

9            I think that the Home Builders are correct, that it's

10   very difficult for them to evaluate whether or not to opt-out

11   without some understanding of the insurance agreement.  It's a

12   little bit amorphous now.

13           But I do see the wisdom in having a date.

14           But I'm going to move that date if it's not -- if it

15   presents a problem, because I do want the parties to understand

16   what their opportunities are before they decide whether or not to

17   opt-out.

18           And, with regard to the ambiguities, side agreements are

19   always helpful in this kind of thing.  I don't see any problem in

20   that.

21           Anyone else, any other objectors wish to speak?

22           MR. HASKINS:  Yes, Your Honor.

23           Good morning, Your Honor.  Stewart Haskins from King &

24   Spaulding for Home Depot.

25           THE COURT:  Okay.

1          MR. HASKINS:  Your Honor, first of all, I'd like to

2    start by saying that Home Depot would like to congratulate the

3    parties and the PSC and Knauf in particular for reaching this

4    settlement.  And our objection to the settlement is fairly

5    narrow.  But we just want to make sure that the parties haven't

6    cut too wide of a swab here in their haste and zeal to reach a

7    settlement.  Which I think everybody, including the Court,

8    recognizes is a positive development in the case.  But we're

9    afraid that some of those details which the Court referred to

10   earlier that the devil is in perhaps has a detrimental impact on

11   Home Depot's rights.

12          First, though, I want to very briefly address the

13   comments that were made by the setting parties in their reply in

14   support of the joint motion for preliminary approval which

15   suggests that parties like Home Depot do not have standing to

16   object to the preliminary approval of the settlement at this

17   time.  And, principally, their argument was that Home Depot

18   doesn't have the right to object to this settlement because it's

19   not a class member.

20          Certainly, we have no disagreement with that, Home Depot

21   is not a class member here.

22          But the settlement parties do concede that, if the

23   settlement impacts Home Depot's rights, and I think the term that

24   they use and the term that you used in the case, if there's plain

25   legal prejudice to a nonlegal settling party, and one example of

1    that which was given in the VIOXX litigation is where the

2    settlement strips a non-settling party of its indemnity rights.

3    And that is precisely the case that we have here, Your Honor.  At

4    least, the way that we read the settlement agreement.

5           If in fact that is the case, that is clearly plain legal

6    prejudice to Home Depot and would give us standing to object.

7           Now, the two types of objections that Home Depot has to

8    this preliminary approval of the joint motions here are really,

9    one is timing, because the settlement is premature because we

10   have some agreements, which we've already discussed.  And I think

11   the Court's already addressed that issue.  We'd simply echo the

12   comments that were made by Home Builders' counsel that we can't

13   really evaluate the fairness of the settlement, can't evaluate --

14   the parties, the Court or even the non-settling parties, like my

15   client, can't evaluate the settlement at this time, and we have

16   agreements that have yet to be reached.  And it sounds like Your

17   Honor is going to address that.

18          Home Depot's other objection, though, and the more

19   substantive one, is to the scope of the release and the

20   corresponding bar orders that the parties received here.  Because

21   Home Depot has contractual rights from to indemnity from two of

22   the parties here, L&W and Interior/Exterior.  Home Depot has made

23   written demands of indemnity from those parties.  Yet, certain

24   sections of the Knauf settlement agreement, at least as I read,

25   appear to try to release Home Depot's claims for indemnity,

1    including, for example, its right to reimbursement for attorney

2    fees in this case, and extinguish those claims.  And then, even

3    further, would bar Home Depot from prosecuting those claims later

4    on.

5         I could give Your Honor some examples of the provision

6    in the settlement agreement if that would be helpful.  But I

7    think, just from a big picture perspective, that is the basis of

8    our objection.  Because they have defined released parties in the

9    settlement agreement to include L&W and Interior/Exterior, they

10   have defined released claims to include claims for contribution

11   and indemnity.  And those claims are defined so broadly that they

12   would encompass claims that non-parties to the settlement

13   agreement would have, like my client Home Depot.

14        THE COURT:  But, if you get released, what is your

15   indemnity or what has happened before you were released?

16        MR. HASKINS:  As I read the settlement agreement, Your

17   Honor, the only release that Home Depot would have would be if

18   Home Depot participated or its insurers participated in the

19   settlement.  So the only way that we can participate and get a

20   release would be if we actually -- if our insurers contributed

21   funds.  At least, that's my understanding.

22        Of course, our rights to indemnity would flow the other

23   way.  Home Depot at that point should be getting indemnified from

24   L&W and Interior/Exterior.

25        Like I said, we've already made those demands upon L&W

1    and Interior/Exterior, and they have not been disputed.

2            And I think the settlement agreement then attempts to

3    take it one step further.  And, if you look at Section 12, they

4    ask this Court to enter a bar order which would enjoin Home Depot

5    from seeking those indemnity clauses.  And I think the exact

6    language is they ask the Court to enjoin all pending and future

7    claims against the Knauf defendants and the other releasees

8    arising from or relating to KPT Chinese drywall.

9            Now, Your Honor, perhaps it wasn't their intention.

10   And, certainly, from their reply, the reply that they supplied in

11   support of the joint motion, it appears that that was not their

12   intention.  But, at least, reading that plain language, it

13   certainly appears that they're asking the Court to bar folks like

14   Home Depot from prosecuting their claim for indemnity from L&W,

15   from Interior/Exterior and the other releases.

16           Now, if that wasn't their intent, then I think there's a

17   simple fix for that, but we simply just have to clarify that in

18   the agreement.  But that needs to be done before preliminary

19   approval.

20           If that was their intent, then I think that was clearly

21   the type of plain legal prejudice that would not only give us

22   standing, but I think it would be improper.  Knauf and the PSC

23   cannot agree contractually to alter the contract rights that Home

24   Depot has with Interior/Exterior or other vendor, frankly, that's

25   not a party to the agreement, and the Court should not approve or

 1   bless that even on a preliminary basis.

 2           THE COURT:  Okay.  Thank you.

 3           I'll hear from the PSC.

 4           MR. LEVIN:  Your Honor, we got a two-page brief from

 5   Home Depot's counsel, signed by five lawyers from King &

 6   Spalding, and no where in the brief did we hear the presentation

 7   that was made today.  That's why there's a fairness hearing.

 8   Could have been made.

 9           But the release here and the bar orders are stock

10   releases and bar orders in class action jurisprudence.  Nobody

11   outside of this settlement that's not a party to this settlement

12   is being prejudiced by any of the terms of these settlements.

13   Some are being protected by pro rata, pro tonto and setoffs in

14   terms of the release which reduces what the plaintiff could

15   recover against a non-settling defendant.

16           At the time of the fairness hearing, if counsel will

17   provide a brief with regard to what was stated today, we will

18   respond to it.

19           But we had -- you know, the boilerplate two pages didn't

20   warrant a response to what was said today.

21           But we are certain that our bar order and our releases

22   comport with the applicable jurisprudence, and these issues can

23   be taken up at the fairness hearing.

24           THE COURT:  You want to respond to that?

25           MR. HASKINS:  I guess, in defense of the folks who filed

```
 1    that, I would say that we didn't have very long to draft the more
 2    detailed brief that he would like.
 3             But, certainly, we would be happy to file a more lengthy
 4    response to outline not only our contractual rights of
 5    indemnification but how those are impacted by the scope of the
 6    release and the bar order in this case.
 7             THE COURT:  How do you see Home Depot being affected by
 8    this?
 9             MR. GLICKSTEIN:  To answer Your Honor's precise
10    question, I think it is they won't be getting a release.
11             Remember, the settlement has two categories of people in
12    the supply chain, those who are other releasees and those who are
13    excluded releasees.  You are an other releasee if your insurer
14    will participate in the prospective insurer agreement.  In which
15    case, if Home Depot's insurers do so, they will be other releasee
16    and will get the benefit of the settlement and they will get a
17    full release from all of the plaintiffs.  If they elect not to
18    participate in the agreement, then they are an excluded releasee.
19    And, if they are excluded releasees, then the plaintiff's full
20    rights against Home Depot are preserved and Home Depot's rights
21    against other folks are preserved.  So that's the architecture of
22    the agreement.
23             But I do think that that's really not an objection to
24    preliminary approval.  It's certainly something that can be
25    raised at the fairness hearing.  And I think the wisdom of doing
```

1   that is that many of these objections are going to become mooted.

2        We do know that there is a period of time where there

3   are going to be negotiations with the insurers for individuals in

4   the supply chain, like Home Depot.  And the hope and the

5   expectation and the belief is that we will get participation from

6   most everyone, and that all of these objections will be moot.

7        If, with respect to a particular entity in the supply

8   chain, they become not moot, I think the time to address them is

9   at the fairness hearing, in a concrete context, and we can really

10  evaluate what real claims are we talking about.  I think we'll be

11  able to satisfy Your Honor that third parties' rights have not

12  adversely been affected.

13       We do say, though, that in the settlement there's a

14  judgment reduction provision.  So if somebody goes after an

15  excluded releasee, plaintiff does, then they must reduce their

16  judgment against the excluded releasee to prove that the Knauf

17  defendants or another releasee is at fault.  So that the way it

18  works is that, to the extent that there is a release of those

19  claims, it's because the plaintiffs have to release those claims

20  even against an excluded releasee.

21       So, again, one can always imagine a lot of horribles at

22  the beginning of a process.  I don't really think there are any

23  horribles in the settlement.  I think the time to address these

24  things is at the end of the day when we'll deal with real issues

25  in concrete terms, rather than hypothetical issues as they exist

```
 1   now.
 2            MR. HERMAN:  May I be heard, Your Honor?
 3            THE COURT:  Yes.
 4            MR. HERMAN:  May it please the Court, Russ Herman on
 5   behalf of plaintiffs.
 6            Seems to me that King & Spalding has made a Pandora
 7   argument.  And it's not my intention to open Pandora's box or a
 8   can of worms.  However, to my knowledge, prior to checking,
 9   sitting there, Home Depot never filed a claim in the MDL.
10            Secondly, Your Honor, to my knowledge, Home Depot
11   originally indicated that they did not sell defective Chinese
12   drywall, although not in a status conference or in a writing.
13            Thirdly -- and it may be that the PSC's discovery hasn't
14   been as extensive as it should be -- but we found no billing
15   records showing that Knauf drywall was delivered to Home Depot.
16   And it strikes me that Home Depot may be -- may have elevated
17   itself to a target defendant, albeit by these remarks.  And none
18   of that should be taken into account in terms of a preliminary
19   approval.  But it certainly is a matter which the PSC would be
20   required to look into.
21            Lastly, if Home Depot is correct, then any exposure
22   which it might have to some 4,000 to 10,000 claimants would be
23   foreclosed by this settlement in the event that King & Spalding's
24   argument has merit.  Because the documents of settlement in terms
25   of releases would enure to Home Depot potentially, and we don't
```

 1    think any of these arguments should militate against a

 2    preliminary approval.  And, of course, the PSC now will pursue

 3    with vigor Home Depot's allegations and will meet in a

 4    meet-and-confer.

 5            THE COURT:  Anyone else?  You want to respond?

 6            MR. HASKINS:  Briefly, Your Honor.  Just let me respond

 7    to Mr. Herman's comments, because frankly I agree with everything

 8    that he said.  At least, most of it.

 9            Home Depot hasn't filed a claim in this case, because we

10    haven't been required to.  We have contractual rights which are

11    independent of any of the claims that exist in the class action,

12    the six class actions in which we've been named.  We have timely

13    served our claims for indemnity on those third parties with whom

14    Home Depot has contractual rights, Interior/Exterior, L&W and any

15    others.

16            Second, Mr. Herman is exactly right; that, in the

17    profile form that Home Depot submitted in this case, Home Depot

18    doesn't have any knowledge of selling any Chinese drywall.  In

19    fact, if any ever made it into the Home Depot, any isolated

20    incidents of any customer, it only could have come through L&W or

21    Interior/Exterior.  That is the basis for our claims of indemnity

22    from those companies.  But, to our knowledge, none ever did.

23    And, as Mr. Herman pointed out, neither Interior/Exterior nor L&W

24    have come forward with any records which show that they ever

25    delivered any Chinese drywall to Home Depot, and the PSC hasn't

1  come forward with any evidence that any Knauf drywall was ever

2  sold to Home Depot or sold by Home Depot.

3        So I would submit, Your Honor, that Home Depot should

4  simply be dismissed from this case, and that would eliminate any

5  of these concerns.  We don't think this we should have been in

6  the case in the first place.  But that would certainly eliminate

7  any objection that Home Depot would have.

8        Finally, with respect to the comments that were made by

9  Knauf's counsel, if that is correct, if what he said is Home

10  Depot is going to be an excluded releasee under the settlement

11  agreement if Home Depot's insurer doesn't participate -- which,

12  there's no need for Home Depot's insurer to participate because

13  there are no valid claim against Home Depot -- but, if that's the

14  case, what he said after that is very important.  Which is, that

15  Home Depot's rights vis-a-vis any third party will not be

16  affected.

17        And, if that is true, then we have no objection to the

18  settlement agreement.  But that needs to be clear.  Because the

19  scope of the Section 12 bar order seems to be broad enough to

20  prejudice Home Depot's rights against the other releasees, which

21  include the companies against Home Depot has indemnity rights.

22        THE COURT:  From the Court's standpoint, it seems that

23  your position is that you have no liability.  And so, if you have

24  no liability, it's hard to understand the significance of

25  indemnity rights.

1     But, assuming there's a potential of that, of preserving

2   your rights in the event something happens, it seems, as Knauf

3   counsel said, if you're not a part of the agreement, you're not

4   affected by the agreement, other than the fact that you might be

5   benefited by the agreement because in effect it knocks out any

6   claimant's claims, because they have no claims because they've

7   been totally remediated.  So their claims for remediation go

8   away.  So that's a benefit.

9     But, as I understand it, if you're not part of the

10  settlement, then you're an excluded -- you're excluded from it

11  and you're not affected by it.  At least, that was my

12  understanding of the settlement.

13     I'll look at it in view of some of your comments.

14     MR. HASKINS:  Thank you, Your Honor.

15     THE COURT:  Okay.  Any other objectors?

16     MR. GARCIA::  Your Honor --

17     THE COURT:  Yes.

18     MR. GARCIA:  Good morning, Your Honor.  Diego Garcia

19  here on behalf of the Northriver Insurance Company.

20     I won't belabor the points because some of them have

21  been raised previously.

22     Northriver's principal objection to the settlement

23  agreement, also is concerned about the scope of the bar order and

24  the release as to the Knauf defendants.  Northriver has asserted

25  a claim for indemnity and contribution against the Knauf

 1    defendants.  We perfected service last week through the Hague

 2    Convention seeking to recover damages, mostly attorney fees, that

 3    Northriver has incurred defending itself in various direct action

 4    lawsuits in the MDL proceeding and in various Louisiana state

 5    court proceedings.  And, when we read the agreement, we were also

 6    concerned, like Home Depot and the Home Builders, about the bar

 7    release and whether or not that could affect our third-party

 8    claims against the Knauf defendants.

 9            THE COURT:  Okay.

10            MR. LEVIN:  Northriver has finally spoken.

11            Northriver is the tail in the IN/EX settlement.  If the

12    Court grants final approval to the IN/EX settlement, then the PSC

13    class counsel on behalf of the class has the ability to pursue

14    Northriver to the tune of $72 million.

15            At this point, with everybody speaking to us, Northriver

16    is the cheese that stands alone.  And I believe that Northriver's

17    situation and whatever they have to say will be resolved and

18    dealt with at the IN/EX fairness hearing.

19            THE COURT:  Any comments?

20            MR. GLICKSTEIN:  I have nothing further, Your Honor.

21            THE COURT:  Anybody else from the objectors?

22            MR. PANAYOTOPOULOS:  Good morning, Your Honor.  Nick

23    Panayotopoulos on behalf certain Banner entities.

24            We filed certain objections, more like concerns, Your

25    Honor, and we'll stand on the brief on most of those.

1    The parties, the settling parties, have attempted to

2    address our concerns, and we're on the road of resolving, and I

3    believe we are pretty confident that we're going to resolve all

4    those.

5    The one issue that's a little different is the stay

6    order as it relates to Banner entities's claims against Knauf.

7    We've reached an agreement, I believe it was even before the

8    settlement was announced, with Knauf where, on our own, Banner

9    will reframe from proceeding with those claims.  And, therefore,

10   we believe that it's a moot point.  The stay order should not

11   address Banner's claims at this time, and the parties will

12   hopefully resolve this on their own on the long haul.  But, for

13   the time being, it's not an issue.

14   THE COURT:  Okay.  I'm happy to hear that, because it's

15   easier for the parties to agree to a stand-by provision.  And, if

16   something happens, I can always get involved in it.  So I won't

17   focus on the stay with regard to those claims.

18   MR. PANAYOTOPOULOS:  Thank you, Your Honor.

19   MR. CLARK:  Good morning, Your Honor, Matthew Clark on

20   behalf of Southern Homes.

21   We filed an objection basically adopting the objections

22   that we had previously filed with respect to the bar and stay

23   orders issued in connection with the IN/EX settlement agreement.

24   We have those same basic objections.  We'd like to adopt

25   the arguments and objections of Home Depot, Northriver and to the

 1    extent applicable also Banner.

 2          Southern Homes, I'd also like to point out that Southern

 3    Homes may be different from a lot of the other entities the PSC

 4    and Knauf has said lacks standing to object at this time because

 5    there's a very high likelihood that Southern Homes still owns

 6    homes that contains KPT board.  To that extent, I believe that

 7    they would fall within the class defined as commercial, for lack

 8    of a better term.  The commercial owner subclass.

 9          THE COURT:  Isn't that good for you?  I mean, isn't the

10    settlement good for you if you own the homes and the settlement

11    makes you whole?

12          MR. CLARK:  For those homes.

13          For the balance of the homes where Southern Homes has

14    been sued, which is largely all the homes that Southern Homes

15    built with Chinese drywall manufactured by KPT, it's not so good

16    because Southern Homes has its redhibition rights.  We've briefed

17    those to the Court, very much appreciate this opportunity to

18    again bring those up to the Court, but we won't belabor that.

19    It's already been briefed.

20          It's an issue of Southern Homes having those redhibition

21    rights, just like plaintiff homeowners have redhibition rights

22    against the Knauf entities.  And, while the settlement agreements

23    allows a certain amount of claimants within the redhibition

24    rights to proceed to prosecute their rights against Knauf, it

25    doesn't allow either, via stay and eventually bar orders.

1          THE COURT:  You feel comfortable representing both sides

2     of that nickel?  You are in favor of it for some portions of your

3     clients' interests and against it for other portions of your

4     clients' interests?

5          MR. CLARK:  Well, when I say we represent Southern

6     Homes, we represent a collection of builders.  Southern Homes is

7     like the moniker by which a lot of these other entities are

8     known, but we've got Telecreek, we've got Spring Hill and various

9     other entities that have filed their own individual claims

10    against Knauf entities and Louisiana state court, as Your Honor

11    knows.

12         So that would not be the case for each one of these

13    entities.  It may be the case for one, but certainly would not be

14    the case for all.

15         So, to that extent, there is a difference there, a

16    significant difference.

17         Aside from that standing issue, we'd also like to just

18    note that there's well documented case law, in fact, also

19    documented by the PSC and Knauf in their omnibus reply, saying

20    that non-settling parties may object to settlement terms that

21    affect their own rights.  That's the legal prejudice standard

22    that's been set out by several courts.  I believe it is addressed

23    in the VIOXX matter.

24         In addition to the cases that were cited in the omnibus

25    reply brief, Southern Homes had also cited some additional cases

1   when it began to object to the IN/EX settlement agreement and

2   preliminary approval of that, which we reference in our

3   memorandum of objection to this settlement agreement.  I believe

4   those are still in the Court record.  If not, we've got 564

5   F.Supp 1379 that's *In Re:  Mid-Atlantic Toyota; VIOXX*, as I

6   mentioned; *Agretti vs. A&R Freight System*, that's 982 F.2d 242.

7            Once again, thank you for the time.  It's always greatly

8   appreciated.

9            THE COURT:  Thank you.

10           Any response?

11           MR. LEVIN:  I'm at a loss.  I don't know what to say,

12   Your Honor, so maybe I should say nothing.

13           But they've filed an objection, they incorporated the

14   IN/EX objection that they made, the motion for security that they

15   made, and their response to the Home Builders' agreement.  That's

16   it.  That's what they've objected to.

17           The IN/EX materials are on appeal to the Fifth Circuit.

18   They've been fully briefed.  That's for the Fifth Circuit.

19           And I believe that -- I'm trying to understand the

20   objection and their standing argument.  They're not part of the

21   class.  Because, unlike IN/EX and Banner, and unlike the

22   prospective L&W and insurance settlement, there are no absent

23   class members in the Knauf settlement.

24           The Knauf settlement is composed of plaintiff's

25   litigation in the Omni complaints and in the states against

1    Knauf.  Plaintiffs, homeowners.

2          To my knowledge, Southern never authorized us to sue on

3    their behalf in the Omni complaints.  Rather, we were authorized

4    by plaintiffs in the Omni complaints to sue Southern.  So they

5    really have no standing.

6          And, more than that, I don't have anything to say.

7    Other than, if Your Honor has any questions, I'll attempt to

8    answer them.

9          THE COURT:  Anything from Knauf?

10          MR. GLICKSTEIN:  I have nothing to add, Your Honor.

11          THE COURT:  All right.

12          Any other objectors?  Any other objectors?

13          (No response.)

14          THE COURT:  Hearing none, I'll take the matter into

15    consideration, and I'll be writing my opinion on it very shortly.

16          Thank you very much.  Court stands in recess.

17          (9:57 a.m., Proceedings recessed.)

18

19

20

21

22

23

24

25

1

2                           CERTIFICATE

3

4

5          I, Susan A. Zielie, Official Court Reporter, do hereby
     certify that the foregoing transcript is correct.

6

7

8                          /S/ SUSAN A. ZIELIE, FCRR
                      _____
9                          Susan A. Zielie, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25