Confidential - Subject to Further Confidentiality Review

 1          whether it's the same.

 2               THE WITNESS:  Not the same.

 3     BY MR. MEUNIER:

 4          Q.    How different?

 5               THE COURT:  More or less?

 6               THE WITNESS:  Because TTP

 7          had stopped its operations at the

 8          time, the salary that I received

 9          was less than when it was operated

10          normally.

11     BY MR. MEUNIER:

12          Q.    Is it true you have kept an

13     office at TTP?

14          A.    You mean right now?

15          Q.    As of April 6, 2011, is it

16     true you still kept an office at TTP?

17          A.    Right now, the people

18     left -- I'm sorry.

19               Right now, the people that

20     remained in TTP still is working there.

21          Q.    But you are no longer

22     employed by TTP; is that true?

23          A.    According to TTP's company

24     law, the election is to be held every

Confidential - Subject to Further Confidentiality Review

```
 1    three years.  But there was no election

 2    after three years, but I am still the

 3    legal person of TTP.

 4            Q.     You are today an employee of

 5    Taishan Gypsum, true?

 6            A.     Yes, I am right now an

 7    employee of Taishan Gypsum.

 8            Q.     And your entire salary is

 9    paid by Taishan Gypsum, true?

10            A.     My current salary is paid by

11    the company located in Shanxi, Lucheng.

12            Q.     Which company is that, sir?

13            A.     That's a subsidiary of TG

14    located in Shandong, Liaocheng to produce

15    paper-faced gypsum board.

16            Q.     That is a different

17    subsidiary than TTP, true?

18            A.     Correct.  This is only a

19    branch company.

20            Q.     What is the name of that

21    company?

22            A.     Shanxi Lucheng Taishan

23    Gypsum.  Shanxi Lucheng Taishan Gypsum,

24    Lucheng branch office.
```

Confidential - Subject to Further Confidentiality Review

1        Q.    But even though you are an

2    employee of Taishan Gypsum and your

3    salary is paid by a different subsidiary

4    of Taishan Gypsum, it is true that you

5    still keep an office at TTP?  Is that

6    true?

7        A.    Where is it?

8        Q.    Do you still keep an office

9    at a TTP location, sir?

10       A.    TTP has office.

11       Q.    And you still have an office

12   at that location, don't you?

13       A.    Which location?

14       Q.    At the location of TTP.  At

15   any location of TTP, is it true that you

16   have an office?

17       A.    I have my own office in TTP.

18       Q.    So, you have an office at

19   TTP, and you also have an office at the

20   Taishan Gypsum factory in Lucheng,

21   correct?

22       A.    Correct.

23       Q.    Tell me the percentages of

24   time you spend at those two offices.  How

Confidential - Subject to Further Confidentiality Review

```
 1    much at one office versus the other?

 2         A.    Because TTP had stopped its

 3    production and business and it does not

 4    have much business right now, and also

 5    there were remaining personnels working

 6    at TTP.  Therefore, my time is basically

 7    being spent at the office in Shanxi,

 8    Lucheng branch office.

 9         Q.    But you do spend some time

10    at the TTP office, don't you?

11         A.    I basically do not stay at

12    TTP.

13         Q.    But you keep an office there

14    and do go there sometimes, don't you, Mr.

15    Peng?

16         A.    Because there are still

17    remaining people work at the office right

18    now, if there is any issue, we

19    communicate through telephone.  My main

20    job right now is at Lucheng's branch

21    office.

22         Q.    But you still hold the title

23    of director or manager of TTP, don't you?

24                MR. CYR:  Objection.
```

Confidential - Subject to Further Confidentiality Review

```
 1              THE COURT:  What's the basis
 2         of the objection?  Asked and
 3         answered?
 4              MR. CYR:  And I recommend
 5         that the interpreter not interpret
 6         my statement.
 7              THE COURT:  Right.
 8              MR. CYR:  I believe that
 9         he's testified that he terminated
10         his position at TTP in April of
11         2009.  The record is clear about
12         that.  What the record is not
13         clear about, in my opinion, is
14         that he continues to hold the
15         position of, quote, legal
16         representative, closed quote, of
17         TTP today, and that has been the
18         misunderstanding during your
19         dialogue during the last five
20         minutes.
21              MR. MEUNIER:  Well, I'll
22         change my question based on
23         counsel's direction, Judge.
24    BY MR. MEUNIER:
```

Confidential - Subject to Further Confidentiality Review

```
 1          Q.    Do you still hold a title

 2    with TTP today, namely, legal

 3    representative, is that true?

 4          A.    I am a legal person of TTP

 5    right now.

 6          Q.    That is why from time to

 7    time you have to talk on the phone or

 8    work with the people who remain at TTP?

 9    Is that true?

10          A.    Correct.

11          Q.    But your entire salary for

12    all work activity, including that, is

13    today paid by a different subsidiary of

14    Taishan Gypsum; isn't that true?

15          A.    Correct.

16          Q.    Do you sometimes refer to

17    this group of customers as the Taishan

18    Group?  Group of companies, rather, as

19    the Taishan Group?

20          A.    No.

21          Q.    Is it true, Mr. Peng, that

22    in July of 2006, TTP sold more than

23    11,000 pieces of gypsum board to a

24    company called Advanced Products or APIC
```

Confidential - Subject to Further Confidentiality Review

```
 1    for shipment to New Orleans, Louisiana in

 2    the United States of America?

 3          A.    I'm not sure about the

 4    English name of that company you just

 5    said.

 6          Q.    Have you ever heard of

 7    American -- I'm sorry -- Advanced

 8    Products or APIC Building Materials?

 9          A.    I don't recall the name of

10    these two companies.

11              MR. MEUNIER:  I show you a

12              document which has been stamped TG

13              20090, and I'll mark that as Peng

14              Number 4.  And the title of it is

15              "Taian Taishan Plasterboard

16              Company, Limited invoice."

17                    -  -  -

18              (Whereupon, Deposition

19              Exhibit Peng S.-4, Invoice dated

20              July 03, 2006, Bates stamped TG

21              0020090, was marked for

22              identification.)

23                    -  -  -

24    BY MR. MEUNIER:
```

Confidential - Subject to Further Confidentiality Review

1          Q.    Are you familiar with this

2     invoice form?

3          A.    I'm not familiar with this

4     invoice form.

5          Q.    Are you familiar with the

6     company Triax Trading & Logistics, LLC?

7          A.    I'm not familiar with this

8     name.

9               MR. MEUNIER: I show you

10              another document which I'll mark

11              as Peng Number 5, which is Bates

12              numbered 19366 entitled Taian

13              Taishan Plasterboard Company,

14              Limited "Packing List."

15                   -  -  -

16              (Whereupon, Deposition

17              Exhibit Peng S-5, Taian Taishan

18              Plasterboard Co., Ltd., Packing

19              List dated July 03, 2006, Bates

20              stamped TG 0019366, was marked for

21              identification.)

22                   -  -  -

23     BY MR. MEUNIER:

24          Q.    Are you familiar with this

Confidential - Subject to Further Confidentiality Review

1    form?

2              MR. CHEN:  I'm sorry,

3         Counsel.  I have in my binder it

4         goes from 19364 to 374.  You said

5         366?

6              MR. MEUNIER:  366.  Let me

7         state for the record for The Court

8         and for counsel that there does

9         appear to be duplicate stamping on

10        these documents.  For example, the

11        invoice I refer to of July 3, '06

12        is Bates Number 20090.  It's also

13        Bates numbered 19365.  They appear

14        to be the same documents.

15             MR. CYR:  Can I just see it?

16             MR. MEUNIER:  (Handing over

17        document.)

18             What I have marked as Fu --

19        I'm sorry, Peng Number 4 is

20        actually two Bates Numbers.  19365

21        and 20090.

22             And what I have marked as

23        Peng Number 5 is Bates numbered

24        19366, and I submit that it's

Confidential - Subject to Further Confidentiality Review

```
 1          clear they deal with the same

 2          transaction, which is what I

 3          intended to clarify.

 4   BY MR. MEUNIER:

 5          Q.   Mr. Peng, my question now

 6   is, are you familiar with the packing

 7   list form, which is Peng Number 5?

 8          A.   I'm not familiar with this

 9   document.

10          Q.   If both of the documents I'm

11   showing you, Peng 4 and 5, have the same

12   invoice number, which is SDTH0622, and

13   the same date of July 3, 2006, is it fair

14   to say they both deal with the same

15   transaction?

16          A.   I'm not clear about that.  I

17   can't be sure of that.

18          Q.   The invoice refers to a

19   quantity of 5,676 pieces of gypsum board

20   at a cost in US dollars of $4.25 each for

21   a total amount of $24,123 being shipped

22   from Qingdao to New Orleans, Louisiana.

23   Did TTP sell this gypsum board on July

24   3rd, 2006 as indicated on the invoice and
```

Confidential - Subject to Further Confidentiality Review

1  packing list?

2        A.    I'm sure the gypsum board

3  was sold, but I really am not sure about

4  the process.

5        Q.    Would you, though, as

6  director, approve the sale of TTP gypsum

7  board at that price to be shipped to New

8  Orleans, Louisiana in July of 2006?

9        A.    The price of gypsum board

10  was specifically discussed and determined

11  by the sales department.

12        Q.    And if the price was right,

13  it was okay that the board was being

14  shipped to New Orleans, Louisiana in the

15  United States, true?

16        A.    After the price was

17  determined, I am not sure where exactly

18  the gypsum board was shipped to.

19        Q.    But TTP authorized the

20  shipment of board purchased at this price

21  to New Orleans, Louisiana in the United

22  States, true?

23        A.    Our gypsum board, which is

24  the gypsum board that produced by TTP,

Confidential - Subject to Further Confidentiality Review

1    has always been delivered in China.

2    Whether it would be shipped to that

3    location or how was it shipped to that

4    location, I am not sure about the

5    process.

6         Q.    But from TTP's own sales

7    documents, including these invoices and

8    packing lists, TTP knew that the gypsum

9    board was being delivered to New Orleans,

10   Louisiana, correct?

11              MR. CYR:  Objection.

12              THE COURT:  Ask him about

13         the invoices.

14   BY MR. MEUNIER:

15         Q.    Do you agree the invoice and

16   packing list of your company, TTP at that

17   time, indicated that this gypsum board

18   being sold by TTP was being delivered to

19   New Orleans, Louisiana?

20         A.    Please repeat your question.

21              THE COURT:  Why don't you

22         read it back to him.

23   BY MR. MEUNIER:

24         Q.    You agree that the invoice

Confidential - Subject to Further Confidentiality Review

1   and packing list I'm showing you, which

2   are your company's invoice and packing

3   list, show that this gypsum board that

4   you sold was shipped to New Orleans,

5   Louisiana, true?

6           A.    Because TTP produced the

7   gypsum board.

8               THE COURT:  Let me see the

9           invoice.

10              THE WITNESS:  (Handing over

11          document.)

12              THE COURT:  The invoice

13          which is marked Exhibit Number 4,

14          which is invoice SDTH0622,

15          indicates that the material will

16          be delivered from -- is that O or

17          Q?

18              MR. MEUNIER:  Q.

19              THE COURT:  Q-I-N-G-D-A-O to

20          New Orleans, Louisiana.  It's

21          dated July 3rd, 2006.  Isn't that

22          correct, sir?

23              THE WITNESS:  The location

24          that is written on this invoice

Confidential - Subject to Further Confidentiality Review

```
 1              was marked by us according to the

 2              requirement of the customers.

 3   BY MR. MEUNIER:

 4         Q.    Did the company wish to make

 5   money from that sale?

 6              THE COURT:  Which company?

 7              MR. MEUNIER:  TTP.

 8              THE WITNESS:  As a

 9              manufacturing company, making

10              money is, of course, its main

11              purpose.

12   BY MR. MEUNIER:

13         Q.    And so TTP intended to make

14   money and did make money from the sale of

15   the gypsum board reflected on those

16   documents in front of you; is that true?

17         A.    To sell our paper-faced

18   gypsum board, we, of course, need to

19   concern about the cost and, of course,

20   the profit.

21              THE COURT:  I will take that

22              as an indication that the answer

23              is yes?

24              Now, I tell you again, sir,
```

Confidential - Subject to Further Confidentiality Review

```
1            you took an oath today to tell the

2            truth.  If I find that you did not

3            tell the truth intentionally, that

4            will be very bad for your company

5            as well as you.  Do you understand

6            that, sir?

7                 THE WITNESS:  I understand.

8                 THE COURT:  Any further

9            questions?

10                MR. MEUNIER:  Additional

11           documents, Your Honor.

12                     -   -   -

13                (Whereupon, Deposition

14           Exhibit Peng S-6, Taian Taishan

15           Plasterboard Co., Ltd., Invoice

16           dated July 20, 2006, Bates stamped

17           TG 00120091, and Deposition

18           Exhibit Peng S-7, Taian Taishan

19           Plasterboard Co., Ltd., Invoice

20           dated July 20, 2006, Bates stamped

21           TG 00120092, were marked for

22           identification.)

23                     -   -   -

24    BY MR. MEUNIER:
```

Confidential - Subject to Further Confidentiality Review

1          Q.    Mr. Peng, I show you an

2     invoice which is Bates numbered TG 20091,

3     which I'll mark as Peng-6, and an invoice

4     Bates numbered 20092, which I'll mark as

5     Peng-7.  And I will ask you to confirm

6     that these invoices both refer to the

7     sale of 5,760 pieces of drywall at the

8     cost of $4.34 in US dollars on July 20,

9     2006 with shipment from Qingdao, China to

10    New Orleans, Louisiana.

11         A.    I don't understand English.

12    I don't understand.

13         Q.    If the documents I put in

14    front of you reflect the sale of over

15    5,000 pieces of drywall priced in US

16    dollars and being shipped to New Orleans,

17    Louisiana, do you have any reason, as you

18    sit here today, to deny that the

19    documents are accurate in reflecting that

20    information?

21         A.    I do not deny.

22         Q.    The prices of the gypsum

23    board per sheet or per piece are

24    different in the July 3rd and July 20

Confidential - Subject to Further Confidentiality Review

1    sales transactions reflected by these

2    invoices.  Can you explain why?

3             THE COURT:  Do you have much

4        more?

5             MR. MEUNIER:  Your Honor,

6        I'm afraid I do.  I probably have

7        another 45 minutes.  I'm sorry.

8        It's going a little slower than I

9        thought.

10            MR. CYR:  You're showing him

11       documents he's never seen before.

12            MR. MEUNIER:  He's the

13       director of the company.

14            MR. CYR:  It's you and the

15       Judge are in charge.

16            THE COURT:  Folks, no.  He's

17       not in charge.  I'm in charge.

18            MR. MEUNIER:  I have another

19       maybe 30 to 45 minutes.

20            THE COURT:  We'll take a

21       break in ten minutes, and then

22       we'll come back.

23   BY MR. MEUNIER:

24       Q.   Why were the prices

Confidential - Subject to Further Confidentiality Review

1    different in those invoices?

2          A.    The price of the gypsum

3    board sold is affected by volume, cost

4    and shipping distance.  Therefore, it has

5    some certain ups and downs in pricing.

6    The specific salespeople are in charge of

7    this operation.

8          Q.    Mr. Peng, I want to show you

9    a series of documents which are entitled

10   "Taian Shandong Province Special Invoice

11   for Export," which I'll mark as Peng-8 in

12   globo, Bates number TG 1657, 1658, 1661,

13   1663, 1664, 1665, 1666, 1667, 1668, 1669,

14   1670, 1680, 1681 and 1682.

15                      -  -  -

16                (Whereupon, Deposition

17          Exhibit Peng S.-8, Taian Shandong

18          Province Special Invoice for

19          Export, Bates number TG 0001657,

20          TG 0001658, TG 0001661, TG 0001663

21          through TG 0001670, and TG 0001680

22          through TG 0001682, was marked for

23          identification.)

24                      -  -  -

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. MEUNIER:

 2          Q.    Are you familiar with this

 3    form?

 4          A.    I have not seen these forms

 5    because I'm not a detailed financial

 6    personnel nor the detailed sales

 7    personnel.

 8          Q.    Do you deny that the forms

 9    all indicate that the exporter is Taian

10    Taishan Plasterboard Company, Limited?

11                MR. CYR:  Objection.

12                THE COURT:  Now, wait a

13          minute.  I sustain the objection.

14          They are what they are.  If he has

15          not seen them, how is he going to

16          testify about them?  They are what

17          they are.  This witness said he

18          hasn't seen them.

19    BY MR. MEUNIER:

20          Q.    Mr. Peng, were special forms

21    required by the local Shandong province

22    government for the export sale of gypsum

23    board by TTP?

24          A.    I'm not familiar in this
```

Confidential - Subject to Further Confidentiality Review

1   part, because I'm not the person detailly

2   operating the sales.

3               THE COURT REPORTER:

4           Detailed?

5               INTERPRETER:  Detailly

6           operating the sales.

7   BY MR. MEUNIER:

8           Q.    Although you're not familiar

9   with the details, Mr. Peng, you do know,

10  don't you, that the government required

11  special invoice for the export of gypsum

12  board by TTP?

13          A.    I don't know whether special

14  invoices were used, but I know it had to

15  be approved and recorded by the foreign

16  trading department.

17          Q.    And you do not deny, do you,

18  that between 2006 and 2007, TTP made

19  export sales of gypsum board for delivery

20  to the United States, to New Orleans,

21  Louisiana, to Miami, Florida, and to New

22  York, New York?  You don't deny that, do

23  you?

24              MR. CYR:  Objection.

Confidential - Subject to Further Confidentiality Review

```
 1                  THE COURT:  What's the

 2          basis, Joe?

 3                  MR. CYR:  (Addressing the

 4          interpreter.)  Please don't

 5          interpret.

 6                  It just seems to me that

 7          it's going to be difficult in the

 8          translation to distinguish between

 9          not denying and actually knowing.

10          If you want to know if he knew

11          that, I think the better question

12          is whether or not he knew that.

13          I'm just afraid that you're going

14          to get a "yes" on don't deny.  I'm

15          not quite sure what it means.

16                  THE COURT:  Ask him about

17          knowing.  I think that's a

18          legitimate observation.  If this

19          witness knows, he knows.  If he

20          doesn't know, he doesn't.

21  BY MR. MEUNIER:

22                  Q.    Mr. Peng, do you know that

23  in 2006 and 2007, TTP, as reflected by

24  these invoices, sold gypsum board that
```

Confidential - Subject to Further Confidentiality Review

 1     was delivered to New Orleans, Louisiana,

 2     the USA, Miami, Florida, Miami/USA and

 3     New York?

 4          A.     All our gypsum boards were

 5     delivered in China.  Whether some other

 6     trading company had actually shipped them

 7     over there or how were they shipped over

 8     there, I'm not sure about that.

 9          Q.     But you don't deny that

10     forms that TTP may have filled out for

11     export purposes indicate the shipping

12     destinations in the United States that I

13     have mentioned?  You do not dispute that,

14     do you?

15          A.     Let me put it this way.

16     Reflected in this document, the exporting

17     enterprise name is TTP.  This is in

18     accordance with the fixed form of the

19     special invoice for export.  Customers

20     will tell us where did they want us to

21     ship the products to according to the

22     invoice, then we would write down the

23     destination on the invoice.  As of

24     whether it had indeed shipped to that

Confidential - Subject to Further Confidentiality Review

1    place, I am not sure.  Because this

2    belongs to customer's business secret,

3    therefore, we would neither ask nor

4    speculate.

5           Q.    Who filled out the

6    information on these forms?

7           A.    I'm not sure whether the

8    information on the form was filled out by

9    the financial department or the taxation

10   department.

11          Q.    But you would agree, all the

12   information on the forms was verified by

13   your company?

14          A.    This invoice does belong to

15   our company.

16                MR. MEUNIER:  Thank you,

17                sir.  I'll mark that as Peng

18                Number 8 in globo.

19                Your Honor, I have one final

20                area of questioning for this

21                witness which I think will take

22                about 30 minutes.  If The Court

23                would like me to do so after a

24                break, I will.

Confidential - Subject to Further Confidentiality Review

```
 1              THE COURT:  What's your

 2         situation, Joe?  Do you want to go

 3         on or you want to take a break.

 4              MR. CYR:  I'm going to need

 5         20 minutes if Your Honor allows

 6         it.  So, I guess it's just a

 7         question of whether you decide

 8         that we have an early lunch now or

 9         break for lunch at 1.  If you only

10         go a half hour, I can finish

11         before 1:00.

12              THE COURT:  I don't have any

13         problem.  You have to get out of

14         here.  That's why --

15              MR. CYR:  No, no, no.  I

16         don't have to get out of here this

17         afternoon, Judge.  It is tomorrow

18         morning.

19              MR. MEUNIER:  But if we

20         delay lunch, the witness could be

21         free.

22              MR. CYR:  Yeah, yeah.  That

23         would be great.

24              MR. MEUNIER:  I don't know
```

Confidential - Subject to Further Confidentiality Review

1        who else has questions, though.

2               MR. CYR:  So, if it's all

3        right with the Judge, we can --

4               THE COURT:  You want to

5        continue?  I don't have any

6        problem.

7               MR. CYR:  Continue until

8        1:00.

9               THE COURT:  Okay.  That's

10       fine.

11              THE VIDEOTAPE TECHNICIAN:  I

12       do need to change tape though.

13              THE COURT:  Let's change

14       tapes.

15              THE VIDEOTAPE TECHNICIAN:

16       Going off the record.  This is the

17       end of Tape Number 3.  The time is

18       12:05.

19                    -   -   -

20              (Whereupon, a recess was

21       taken from 12:05 p.m. until 12:20

22       p.m.)

23                    -   -   -

24              THE VIDEOTAPE TECHNICIAN: