Confidential - Subject to Further Confidentiality Review

1    Trading Company, Peng Wenlong is the Peng

2    you were referring to.  Correct?

3          A.    Mr. Peng nor I were aware of

4    the agreement that is written on top over

5    there.  But it was not like what you have

6    just said, meant.

7          Q.    My question is whether Mr.

8    Peng Wenlong was the individual that you

9    meant when you said you were aware of the

10   agreement with Oriental Trading Company?

11         A.    Yes.  Yes, the person that

12   was aware of that agreement together with

13   me was Mr. Peng Wenlong.

14         Q.    Mr. Che, you had

15   communications with Ivan Gonima, the

16   principal of Oriental Trading Company, as

17   late as May 27, 2010; is that correct?

18         A.    I don't recall clearly about

19   that.

20         Q.    Do you recall having e-mails

21   sent to Mr. Ivan Gonima providing

22   quotations for gypsum board, metal studs,

23   metal track screws and joining tape on

24   behalf of Taishan Gypsum Company?

Confidential - Subject to Further Confidentiality Review

```
 1          A.    I don't remember clearly
 2   about that.
 3          Q.    Is your e-mail address still
 4   SDTH818@163.com?
 5          A.    Yes.
 6          Q.    And is your MSN address
 7   wuyu374@hotmail.com?
 8          A.    Yes.
 9               MR. GONZALEZ:  Your Honor,
10          at this time I'd like to use this
11          document, which I'm showing to you
12          I guess in an in camera capacity
13          at this point.
14               THE INTERPRETER:
15          Interpreter clarification, what do
16          you mean, in camera capacity?
17               MR. GONZALEZ:  It's not for
18          the witness.
19               THE INTERPRETER:  Okay.
20               THE COURT:  All right.
21          Impeachment.
22               MR. GONZALEZ:  May I use it,
23          Your Honor?
24               THE COURT:  Yes.
```

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. GONZALEZ:

 2            Q.    Let me show you what's been

 3    marked as Che-4 to your deposition.

 4                         -   -   -

 5                 (Deposition Exhibit No.

 6            Che-4, E-mail in Chinese dated May

 7            27, 2010 with attachment, 2 pages,

 8            was marked for identification.)

 9                         -   -   -

10    BY MR. GONZALEZ:

11            Q.    That is an e-mail from you.

12    Correct, sir?

13            A.    Yes.

14            Q.    It says, "From," and that's

15    your name in Chinese, Che Gang?

16            A.    Correct.

17            Q.    And you sent it to Ivan

18    Gonima.  Correct?

19            A.    That's what it appears to

20    be.

21            Q.    And it has a quotation.

22    Right?

23            A.    Whatever appears here is

24    accurate.
```

Confidential - Subject to Further Confidentiality Review

1      Q.     The attachment is a

2  quotation on behalf of Taishan Gypsum

3  Company.  Correct?

4      A.     If this is indeed the

5  attachment from this, then this is

6  correct.

7      Q.     All right, sir.

8             And the date on the e-mail

9  is May 27, 2010.  Correct?

10     A.     It is May.  Then that's it.

11     Q.     And at that time, when you

12  sent this e-mail, you worked for Taishan.

13  Correct?

14     A.     In the year 2010, I already

15  worked for TG.

16     Q.     TG?

17     A.     TG.

18     Q.     You didn't work for anybody

19  else at that time?

20     A.     No.

21     Q.     And you have --

22            The quotation you provided

23  was for gypsum board, metal studs, metal

24  tracks, screws and joining tape.

Confidential - Subject to Further Confidentiality Review

1   Correct?

2          A.     These are all the requests

3   of the client.

4          Q.     These are products that

5   Taishan Gypsum sells.  Correct?

6          A.     In this period of time, we

7   could sell these products at Taishan

8   Gypsum.

9          Q.     In fact, you prepared this

10  quotation of -- for Taishan Gypsum

11  Company, didn't you?

12         A.     Let me explain.

13         Q.     Well, sir, with all due

14  respect, you can explain, but you need to

15  answer my question first.

16                You prepared this quotation

17  on behalf of Taishan Gypsum.  Right, sir?

18         A.     The explanation I'm going to

19  explain is answer to question.

20                THE COURT:  Wait, wait.

21                THE WITNESS:  Do you want to

22         know --

23                THE COURT:  You can explain

24         it.  Go ahead.  Answer the

Confidential - Subject to Further Confidentiality Review

```
 1          question.
 2              THE WITNESS:  -- what
 3          really -- what's going on?
 4              At the time we owed Oriental
 5          Trading Company $100,000 when I
 6          worked for TTP.  So all these was
 7          suggestions about how should we
 8          handle that $100,000.  So all
 9          these shipments you're seeing here
10          were suggestions about that issue.
11          Don't only look at the titles.
12   BY MR. GONZALEZ:
13          Q.    Thank you, sir.  That's very
14   helpful.
15              So what you're trying to do
16   is to pay your debt to Oriental Trading
17   through providing some goods as listed in
18   this invoice or quotation from Taishan
19   Gypsum; is that correct?
20          A.    I don't understand.
21          Q.    Why don't you tell me again
22   why it is that you are providing this
23   quotation to Ivan Gonima as a
24   representative of Oriental Trading as it
```

Confidential - Subject to Further Confidentiality Review

 1    relates to the $100,000 that TTP owed it?

 2         A.    The customer requested us to

 3    prepare this quotation, but as I reminded

 4    you earlier, do not only look at the

 5    title.

 6         Q.    Yes.  You were explaining to

 7    me how you were providing this

 8    information with respect to monies that

 9    were owed to Oriental Trading as a result

10    of transactions done with TTP.

11              Please explain exactly what

12    you meant by that.

13         A.    In this period of time, the

14    company where I worked at had already

15    become TG.  However, I had to handle the

16    money that I owed to him.  Therefore, as

17    I said earlier, do not only look at the

18    title.  This is only a form that I

19    randomly grabbed.  The content of it was

20    for the purpose of handling the $100 of

21    Oriental Trading Company.  This is a

22    fact.

23         Q.    $100,000.  Correct?

24         A.    Correct.

Confidential - Subject to Further Confidentiality Review

1          Q.     And it was owed by TTP.

2    Correct?

3          A.     Correct.

4          Q.     To Oriental Trading.

5    Correct?

6          A.     Correct.

7          Q.     And you recognize Ivan

8    Gonima as being part of Oriental Trading?

9          A.     He claimed to be.

10          Q.     You believed him?

11          A.     The fact reflected during

12    the whole process of operation, that he

13    should be the representative of Oriental

14    Trading Company.

15          Q.     All right, sir.

16                 Just so we're clear, when

17    you wrote here on the bottom your name,

18    Bill Che, that's your American name.

19    Right, sir?  Yes?

20          A.     Yes.

21          Q.     And you signed on behalf of

22    Taishan Gypsum Company.  Correct?

23          A.     Like I emphasized earlier --

24                 THE INTERPRETER:

Confidential - Subject to Further Confidentiality Review

```
 1          Interpreter clarification.
 2              THE WITNESS:  Like I
 3          emphasized earlier, the fact was
 4          for the purpose of the repayment.
 5          Do not keep on falling up on the
 6          frame.
 7  BY MR. GONZALEZ:
 8          Q.    When you worked for TTP,
 9  were you paid by TG?
10          A.    No.
11          Q.    Did you make more money if
12  you had more sales?
13          A.    You can say that.
14          Q.    Yes?
15          A.    Yes.
16          Q.    Did you have a commission or
17  bonus system?
18          A.    Commission?  If you talk
19  about commission in China, that's
20  illegal.
21          Q.    A bonus?
22          A.    We do have bonus.
23          Q.    And you have customers --
24              When you worked for TTP, you
```

Confidential - Subject to Further Confidentiality Review

1    had customers throughout the world?

2                    MR. SPANO:  Objection,

3            vague.

4                    THE COURT:  Give the dates.

5            Give the dates.  You said during

6            the time you worked.

7    BY MR. GONZALEZ:

8            Q.    Yes.  During the time you

9    worked for TTP, did you have customers

10   throughout the world?

11           A.    We only operate based on

12   deliver our products at the ports in

13   China.  As of whether the clients would

14   ship them to all over the world or not,

15   we wouldn't know about that.

16           Q.    My question is, do you know

17   whether you had clients all over the

18   world when you worked for TTP?

19           A.    Like I just answered, we

20   just delivered the goods at Chinese

21   ports.  And whether the customers are in

22   the big scope of all over the world, I

23   don't know that.

24           Q.    What countries do you have

Confidential - Subject to Further Confidentiality Review

1    customers in that you do know of when you

2    worked for TTP?

3         A.    I don't recall the

4    circumstance at that time.  But we only

5    deliver in Chinese ports for our

6    customers.  Therefore, we didn't care

7    where the customer went.

8         Q.    Did you have other customers

9    in the United States of America other

10   than Ivan Gonima, you?

11        A.    Me?

12        Q.    Yes, you personally.

13        A.    Some of my customers claim

14   to be American companies, but I had never

15   verified that fact.

16        Q.    What were their company

17   names?

18        A.    If you ask me to remember on

19   the spot, I couldn't.  Could you give me

20   a reminder?

21        Q.    Do you remember doing

22   business with Ivan Gonima from 2006

23   through 2010?

24        A.    Can you repeat the time?

Confidential - Subject to Further Confidentiality Review

```
 1            Q.    Yes.   From --

 2                  Do you remember doing

 3      business with Ivan Gonima or his company,

 4      Oriental Trading, from October 2006

 5      through the summer of 2010?

 6                  MR. SPANO:   Objection to

 7            form, to the vagueness of "doing

 8            business."

 9                  THE COURT:   I don't think

10            that's vague.   I'll allow it.

11            Overrule the objection.

12                  THE WITNESS:   Please repeat.

13                  MR. GONZALEZ:   Could you

14            read it back for us, please.

15                  THE WITNESS:   I don't have a

16            clear recollection of the period.

17      BY MR. GONZALEZ:

18            Q.    How did you meet Mr. Gonima

19      or his business, Oriental Trading?

20            A.    Do you need my further

21      explanation?

22            Q.    I want to know how you first

23      met him.

24            A.    When I make my statements, I
```

Confidential - Subject to Further Confidentiality Review

1    may not be able to give you accurate

2    count as of time.  Approximately in 2006

3    a Chinese person called Wu Jiansong

4    self-claimed to be the representative of

5    a foreign company in China.  He expressed

6    his willingness of purchasing the

7    products of our company, afterwards, even

8    informed us in his e-mail saying that Wu

9    Jiansong represented his company.  And

10   then we were able to have the contact

11   with Oriental company.

12         Q.    How did you have contact

13   with Oriental Trading Company?

14         A.    Through e-mail.

15         Q.    Did you ever meet in person?

16         A.    He once came to visit our

17   plant.

18         Q.    Do you remember having

19   instant messaging conversations with Mr.

20   Gonima, back and forth?

21         A.    We had communication on MSN.

22         Q.    Can you tell us what instant

23   messaging means?

24         A.    I don't understand what you

Confidential - Subject to Further Confidentiality Review

1    mean by that.

2        Q.    Where you can send messages

3    back and forth instantly.  MSN?

4        A.    In my recollection, it has

5    always been the case that Mr. Irvine

6    would left a message for us on MSN.  When

7    we came to work, we would respond to his

8    messages.  It was as if e-mail

9    communications, because we had different

10    working hours.

11        Q.    I want to show you what

12    we'll mark as Exhibit Number 5 to the

13    deposition.

14                -   -   -

15          (Deposition Exhibit No.

16          Che-5, Printout of Instant

17          Messages, 41 pages, was marked for

18          identification.)

19                -   -   -

20    BY MR. GONZALEZ:

21        Q.    It purports to be MSN or

22    instant messaging between yourself and

23    Ivan Gonima.  And it is pages 2 through

24    41.

Confidential - Subject to Further Confidentiality Review

1              MR. SPANO:  May we have a

2        copy of the exhibit, please?

3              MR. GONZALEZ:  1 through 41,

4        I'm sorry.  Pages 1 through 41.

5    BY MR. GONZALEZ:

6        Q.    And you are referred to in

7    this document as "Mr. Che Gang."

8    Correct?

9        A.    That's what appears to be.

10        Q.    When you use MSN, is it

11    through a phone or is it through a

12    computer?

13        A.    Usually through a computer.

14        Q.    And you were very friendly

15    with Mr. Gonima.  Correct?  Ivan?

16        A.    Out of politeness.

17        Q.    You knew he was from Miami,

18    Florida?

19        A.    He claimed to be.

20        Q.    In fact, you even discussed

21    the fact that you would work on weekends,

22    on Saturdays and Sundays.  Right?

23        A.    Can you point out where is

24    it?

Confidential - Subject to Further Confidentiality Review

1        Q.    Do you remember having those

2    conversations?

3        A.    I don't recall.  I don't

4    recall.

5        Q.    Do you recall --

6              THE COURT:  Let's get to the

7         meat of it.  We're visiting now.

8              MR. GONZALEZ:  There's a

9         method to this, Your Honor, but

10        I'll get right to it.

11   BY MR. GONZALEZ:

12        Q.    Sir, if you could look at

13   page number 2.

14              On February 7, 2007, Mr.

15   Gonima is writing to you.  It's actually

16   from you, Che Gang, to Ivan Gonima.  "We

17   are ready for other products...  please

18   let us know the exact" dates "for

19   different products."

20              Do you remember sending

21   that?

22        A.    That's what appears to be in

23   here, but I don't recall.

24        Q.    The last entry dated

Confidential - Subject to Further Confidentiality Review

```
 1    February 7, 2007, you're discussing
 2    setting up a long-term business
 3    relationship with Ivan Gonima offering
 4    the lowest prices?
 5              MR. SPANO:  Note my
 6         objection to the use of this
 7         exhibit that wasn't identified
 8         prior to the deposition in
 9         accordance with the Court's order.
10              THE COURT:  Was this used in
11         a deposition?
12              MR. GONZALEZ:  This was from
13         the deposition of Ivan Gonima,
14         Your Honor.  It's an exhibit to
15         it.
16              I'm sorry, Your Honor.  This
17         was a document that was provided
18         to the Court.
19              MR. DAVIS:  Your Honor, if I
20         may.  I'm sorry.
21              MR. GONZALEZ:  Yes, please.
22              MR. DAVIS:  Your Honor, if I
23         may, this was one of the documents
24         that was provided to you in
```

Confidential - Subject to Further Confidentiality Review

```
1              advance of the deposition for

2              impeachment purposes.  That's what

3              this document is.

4                     THE COURT:  Okay.

5                     You may continue.

6     BY MR. GONZALEZ:

7              Q.    Do you remember offering the

8     lowest prices to Mr. Gonima in order to

9     set up a long-term business relationship

10    with him?

11             A.    This is only out of

12    politeness.

13             Q.    All right, sir.

14                    But you wrote it.  Correct?

15             A.    I don't recall.

16             Q.    It's got on your name on

17    there, doesn't it, Che Gang?

18             A.    Because my MSN is always

19    online in my computer, it is also

20    possible that while I was not in the

21    company, someone else was chatting with

22    him, because no password was needed.

23             Q.    Here's what you said out of

24    politeness to Ivan.  "In order to set up
```

Confidential - Subject to Further Confidentiality Review

1    long term business relation, we will

2    offer you the lowest price."  You said

3    that out of politeness.  Right, sir?

4          A.    I think this is out of my

5    politeness.  Just like when I say you are

6    friend but this is the first time we met.

7          Q.    Page 3.  Ivan Gonima sends

8    you a message on February 7, 2007.  "As

9    you know American manufacturers are

10   lowering their prices."

11               And you respond within

12   seconds to Ivan.  "Yes, I see.  We need

13   to support each other."

14               That's what you wrote in

15   your response.  Right, sir?

16          A.    I'm not sure.

17          Q.    You're not sure if you said

18   that?

19          A.    Correct.  I don't recall.

20   It's like what I had explained to you

21   earlier.  My MSN has always been online

22   in my computer.  Perhaps it was not me

23   who was typing out that, because my

24   English is poor.

Confidential - Subject to Further Confidentiality Review

1       Q.      Where is your computer

2   located?  In your business at that time?

3       A.      In my office.  In my

4   company.

5       Q.      Your company, TTP?

6       A.      You have to look at the

7   time.

8       Q.      Time 1:02:26, February 7,

9   2007.  TTP?

10      A.      Yes.  The computer was in

11  TTP.

12      Q.      Page 4.  I'd like to address

13  your attention to the second entry from

14  Ivan to you.  "Last week on Tuesday we

15  made another 2 transfers from Miami.

16  Wachovia Bank for the last 2 proforma

17  invoices you sent me."

18              Do you recall those

19  transactions, sir?

20      A.      I don't recall.  That's what

21  it appears to be, but I don't recall.

22      Q.      Do you recall having

23  discussions about running weekly orders

24  for 20,000 sheets with Mr. Gonima?

Confidential - Subject to Further Confidentiality Review

```
 1   February 25, 2007, 8:06:26.

 2         A.    Who sent this?

 3         Q.    It says from Ivan to you,

 4   Mr. Che.  And it, quote, states, "Our

 5   goal is to have always weekly orders

 6   running for 20,000 sheets."  And your

 7   response within 3 minutes, on the same

 8   date, "Yes, we will try our best to

 9   prompt our business."

10               Do you recall that

11   discussion, sir?

12         A.    Should I explain to you

13   again?

14         Q.    Yes.  Do you recall that

15   discussion?

16         A.    My computer has -- had

17   always have MSN online.  I don't recall

18   this issue.  And I'm also not sure that I

19   said that.

20         Q.    So do you think somebody

21   walked into your computer and wrote to

22   Mr. Gonima and sent all these things out?

23         A.    I don't deny that, because

24   I'm not sure of that.
```

Confidential - Subject to Further Confidentiality Review

1        Q.      So who do you think did it?
2   A co-employee?  Who?
3        A.      I can't -- I cannot guess.
4        Q.      So somebody was in --
5        A.      Can I have a glass of water?
6                THE COURT:  Can somebody get
7        him a glass of water.
8                THE WITNESS:  Thank you.
9   BY MR. GONZALEZ:
10       Q.      Somebody pretending to be
11  you was using your MSN text messaging to
12  Mr. Gonima sending information about
13  sales that weren't you.  That's what
14  you're telling us?
15       A.      No.  I'd like to explain to
16  you again.  My computer was at my working
17  location.  My MSN has always been online.
18  Perhaps when I stepped out, the computer
19  was still there.  So MSN would show that
20  somebody was having a conversation.
21  Perhaps somebody from my office saw it
22  and responded to him.  The name that
23  appears to be my name and the customer's
24  name were only the fixed feature formed

Confidential - Subject to Further Confidentiality Review

1    on MSN.  Perhaps it was not Ivan who was

2    talking to us.  Therefore, I don't think

3    you can confirm anything based on that.

4              Q.    Page 12, please.  March 4,

5    2007.

6                    Where was your computer?

7    Was it in an office or was it in a work

8    area at that time?

9              A.    I don't understand your

10   question.  Please explain.

11             Q.    Where did you have your

12   computer, in an office, a private office,

13   or in a computer bank area?

14             A.    I'm not sure.

15             Q.    You're not sure if you had a

16   private office or if you worked in an

17   open area with a lot of different

18   computers, like here?

19             A.    First of all, I do not have

20   a private, individual office.  But MSN

21   can be signed on at any computer in any

22   place, as long as you download the MSN

23   tool.  It's been too long.  I cannot

24   verify clearly of what you've asked of

1    me.  I'm very sorry.  I'm very sorry.

2          Q.    I'd like you to look at page

3    12, the entry of March 4, 2007 at

4    10:25:51 from Ivan to Mr. Che Gang.

5    There's a discussion here about "MILLIONS

6    of sheets!"

7                Do you see that?

8                MR. SPANO:  Objection to

9          form.

10               THE WITNESS:  I don't

11         understand.

12   BY MR. GONZALEZ:

13         Q.    Do you see where it says,

14   "Yes but not that much...remember, this

15   client is talking about MILLIONS of

16   sheets"?

17               If you go a little further

18   down, you're providing him with the best

19   prices for the volume sales and you talk

20   about sending 10,000 sheets by seven

21   days.

22               My question is, do you

23   recall having those discussions with Mr.

24   Gonima?

Confidential - Subject to Further Confidentiality Review

```
1                MR. SPANO:  I object to this

2         question.  It's cherry picking

3         snippets of conversations and also

4         misquoting him.

5                THE COURT:  It's under

6         cross-examination.  I'll allow it.

7                Let me make a comment to --

8         let me make a comment.

9                I mention this to you,

10        because you should understand the

11        following.  I'm the judge who will

12        preside and is presiding over this

13        case.  I listen very closely to

14        the evidence and to the testimony,

15        and I'm trying to understand it.

16        It's important for me in doing

17        that to also determine the

18        credibility of the witness.  I

19        mention that to you because I'm

20        listening to what you're saying,

21        and I just want you to know that.

22        If you don't understand a

23        question, say it, and it will be

24        restated.  But I'm concerned about
```