Confidential - Subject to Further Confidentiality Review

1        Q.    How about in 2008, do you

2   know, same question, I'm sorry, as to

3   2007?

4        A.    Neither do I know that.  I'm

5   a seller, not a buyer.

6        Q.    For 2005 for TG while you

7   worked there, do you know if the

8   materials that were used to make drywall

9   by TG in 2005 came from the Luneng mine?

10             MR. SPANO:  Objection.  I

11        feel we're clearly going into the

12        merits here.  Mining and

13        manufacturing has nothing to do

14        with the question of personal

15        jurisdiction.

16             THE COURT:  I think that's a

17        valid objection.  Overrule it -- I

18        mean, I'll sustain it.

19             MR. GONZALEZ:  And that

20        would be true for any questions so

21        related, Your Honor?

22             THE COURT:  Yeah.  I think

23        that that's -- unless it's tied to

24        jurisdiction, these depositions

Confidential - Subject to Further Confidentiality Review

1          are limited to jurisdiction.

2                    MR. GONZALEZ:  All right.

3          Let me take a shot at it, Judge.

4                    THE COURT:  Go ahead.

5    BY MR. GONZALEZ:

6          Q.     Do you know if in 2005

7    materials that were used by TG to

8    manufacture drywall that ultimately ended

9    up in the United States of America came

10   from the Luneng mine?

11         A.     I don't know.  The same

12   opinion I provided to you earlier.  I'm

13   only a salesperson.

14         Q.     Would your answer be the

15   same for all years 2005, 2006, 2007 and

16   2008?

17         A.     I work for different

18   companies in different years.  You have

19   to define that.  But the thing is, I'm

20   only a salesperson.  I sell gypsum board.

21   I do not purchase gypsum board.  So I'm

22   not aware of these.  I would not have had

23   the contact with these matters.

24         Q.     Are you aware of any

Confidential - Subject to Further Confidentiality Review

```
 1      investigation by the United States

 2      Consumer Product Safety Commission

 3      regarding the Luneng mine?

 4           A.    Can you repeat that again?

 5           Q.    Are you aware of any

 6      investigation by the United States

 7      Consumer Protection service group of the

 8      Luneng mine?  I'm sorry.  Let me rephrase

 9      that.

10                 Are you aware of any

11      investigation by the Consumer Product

12      Safety Commission involving the Luneng

13      mine?

14           A.    I don't know.

15           Q.    Are you aware of any

16      investigation by any United States

17      individual or entity of the Luneng mine?

18           A.    I don't know.

19           Q.    Do you know Yamin Yuan?

20      Pronunciation is probably wrong,

21      Y-A-M-I-N, first name.  I guess that's

22      the last name.  And the first name

23      Y-U-A-N.  Yamin Yuan?

24           A.    Yes.
```

Confidential - Subject to Further Confidentiality Review

```
 1          Q.     And tell us who he is?

 2          A.     Yuan Yamin should be our

 3   colleague in TG.

 4          Q.     Was he a salesperson also?

 5          A.     Yes.

 6          Q.     He currently works at TG

 7   with you in sales?

 8          A.     Yes.

 9          Q.     And before that, he worked

10   at TTP with you in sales.  Correct?

11          A.     No.

12          Q.     Has he always worked at TG

13   in sales, as far as you know?

14          A.     If my memory is correct,

15   when he joined, the TTP should have

16   already stopped its operation.

17          Q.     Do you know Mr. Li Zhizhen?

18   And I will he spell it.  First name, L-I,

19   second name, Z-H-I-Z-E-N?  Z-H-I-Z-E-N,

20   Z-H-I-Z-E-N, Z-H-I-Z-H-E-N.

21          A.     I have not heard of such

22   name, according to the translation.

23                 THE INTERPRETER:  Could you

24          write it for me, please?
```

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. GONZALEZ:  My
 2           handwriting is probably worse than
 3           my pronunciation, but you are
 4           forewarned.
 5                    Can you understand that?  My
 6           writing, I mean.
 7                    THE INTERPRETER:  Yeah.
 8   BY MR. GONZALEZ:
 9           Q.    Do you know this person?
10           A.    Yes.
11           Q.    Does he work with you at TG
12   currently?
13           A.    Yes.
14           Q.    Did he work with you at TTP
15   before he worked at TG?
16           A.    That I don't remember
17   clearly, but --
18                    THE INTERPRETER:
19           Interpreter clarify gender.
20                    THE WITNESS:  But whether he
21           worked before in TG, I don't
22           recall.  However, I've never
23           worked with him in TTP, which
24           means that he never been to TTP.
```

Confidential - Subject to Further Confidentiality Review

```
 1            He worked at TG, but I don't
 2            recall when did he join TG.
 3   BY MR. GONZALEZ:
 4            Q.    And help me pronounce Mr.
 5   Li -- is it Li?
 6                 THE INTERPRETER:  Li.
 7   BY MR. GONZALEZ:
 8            Q.    Mr. Li's name correctly, Mr.
 9   Li Zhizhen?
10            A.    Zhizhen.
11            Q.    Really hard, Zhizhen.  Okay,
12   I'm sorry.
13                 Was he a salesperson?
14            A.    Yes.
15            Q.    How long did you take to
16   prepare for this deposition?
17            A.    How many days?  It has been
18   about four, five days.
19            Q.    How many hours per day?
20            A.    I'm not sure.  Sometimes
21   shorter, sometimes longer.
22            Q.    Eight, ten hours or less per
23   day?
24            A.    I'll have to calculate for
```

Confidential - Subject to Further Confidentiality Review

```
 1   you.

 2          Q.     Please do so.

 3          A.     Sometimes from around 9:00

 4   in the morning, about six, seven hours

 5   sometimes, and sometimes eight, nine

 6   hours.  If I cannot recollect memory of

 7   certain documents, I would have to go

 8   back to the hotel and lay in bed and

 9   think about it.  I don't know whether

10   that counts as part of preparation.

11          Q.     Yes.

12          A.     It's hard for me to

13   calculate.  After all, it is not my

14   normal work hour.

15          Q.     Sure.  And where did you do

16   the preparation, what city?

17          A.     After I got here.

18          Q.     In Hong Kong?

19          A.     Yes.

20          Q.     When did you arrive in Hong

21   Kong, the date?

22          A.     Where is my certificate?

23   Which day was that?

24          Q.     Well, today is the 12th of
```

Confidential - Subject to Further Confidentiality Review

1    January.

2          A.     Perhaps the 6th.  Perhaps

3    the 6th I entered.  I didn't pay

4    attention.

5          Q.    Did you meet with the

6    company's attorneys to go over the

7    documents?

8          A.     You mean the attorney in

9    Hogan Lovells?

10          Q.     Any of the company's

11    attorneys.  Did you meet with any of the

12    company's attorneys, whether they're from

13    China or the United States, in

14    preparation for your deposition?

15          A.     I met Hogan Lovells, Hogan

16    Lovells, attorney Hogan Lovells.

17          Q.     Did they work with you for

18    those four to five days in your

19    preparation for today's deposition?

20          A.     They helped me to refresh my

21    memory of these documents, and they

22    requested me to answer your question

23    truthfully.

24          Q.     Did they tell you to say

Confidential - Subject to Further Confidentiality Review

```
 1    that?  I'm sorry.  You're right.

 2                    MR. SPANO:  Objection.

 3                    THE COURT:  Sustain the

 4         objection.

 5                    MR. GONZALEZ:  I agree,

 6         Judge.  I withdraw it.  That was

 7         inappropriate.

 8                    THE COURT:  Do you have much

 9         more?

10                    MR. GONZALEZ:  Just a little

11         bit, Judge.

12                    THE COURT:  All right.

13    BY MR. GONZALEZ:

14         Q.    Did you meet with those

15    attorneys every day for those four to

16    five days to prepare?

17         A.    We meet every day.  But as

18    who we meet, each day is different.

19         Q.    Were you asked by your

20    supervisors to testify in this case at

21    TG?

22                    THE INTERPRETER:

23         Interpreter clarification.  When

24         you say supervisor, you mean
```

Confidential - Subject to Further Confidentiality Review

```
 1          supervisor as the manager or

 2          supervisor in the board of

 3          supervisors?

 4               MR. GONZALEZ:  His bosses.

 5               THE WITNESS:  The company

 6          asked me to come to testify.  I

 7          did not want to come because I

 8          never had such experience before.

 9          I think whenever we contact --

10          we're contacted with an attorney,

11          it's as if that we have committed

12          a crime.  So I'm very worried and

13          very afraid, but the company said

14          if I do not come, they would fire

15          me and they would sue me in the

16          courthouse.  So I had to do it.  I

17          had to come.  It's almost Chinese

18          New Year.  I had to come here.

19   BY MR. GONZALEZ:

20          Q.   Who at the company told you

21   that?

22          A.   Mr. Peng notified me.

23          Q.   Mr. Peng is the one that

24   shared his sentiments that you needed to
```

Confidential - Subject to Further Confidentiality Review

1    come for those reasons?

2          A.    They notified me in separate

3    occasions.  In the very beginning, the

4    company asked me to come, and I said, I'm

5    not going.  And I said, it has nothing

6    personal to do with me.  But they gave me

7    lots of pressure from different channels.

8    There was no way out.  I had to come.

9    But I'm really afraid in my heart,

10   because I've never seen so many lawyers

11   before.  This is my first time see a

12   judge, any judge.  This is my first time.

13         Q.    This is your only job

14   currently?

15         A.    What do you mean by that?

16         Q.    You don't work anywhere

17   else?

18         A.    No.  I only work in TG.

19         Q.    Your job is important to you

20   and your family?

21         A.    Correct.

22         Q.    And you're very loyal to

23   your company?

24         A.    Correct.

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. GONZALEZ:  Thank you,
 2         sir.  Thank you.  Appreciate it.
 3                    THE COURT:  15-minute break
 4         here.
 5                    MR. GONZALEZ:  I'm going to
 6         pass the witness, Your Honor.
 7                    THE COURT:  Okay.
 8                    VIDEOTAPE TECHNICIAN:  We're
 9         going off the record.  The time is
10         9:30.
11                         -   -   -
12              (A recess was taken from
13         9:30 a.m. to 9:43 a.m.)
14                         -   -   -
15                    VIDEOTAPE TECHNICIAN:  Going
16         back on the record.  The beginning
17         of Tape Number 2.  The time is
18         9:43.
19                         -   -   -
20                    EXAMINATION
21                         -   -   -
22    BY MR. MEUNIER:
23         Q.    Good morning, Mr. Che.
24         A.    Good morning.
```

Confidential - Subject to Further Confidentiality Review

```
 1           Q.    I want to begin my

 2    questioning by confirming on the record

 3    that you are appearing in yesterday and

 4    today's deposition not only as an

 5    individual witness but also as a witness

 6    designated by TG and TTP to testify on

 7    behalf of those companies regarding

 8    business dealings with Oriental Trading,

 9    Advanced Products and Triax Trading &

10    Logistics, American Five Star, TOV

11    Trading, and B America Corporation; is

12    that correct?

13               MR. SPANO:  To save time,

14         may I just confirm that for you?

15               MR. MEUNIER:  Yes.  Is that

16         confirmed?

17               MR. SPANO:  Yes, that's

18         correct.

19                    -  -  -

20               (Deposition Exhibit No.

21         Che-7, Re-Notice of Oral and

22         Videotaped Deposition Pursuant to

23         Fed. R. Civ. P. 30(b)(6), 17

24         pages, was marked for
```

Confidential - Subject to Further Confidentiality Review

```
 1              identification.)

 2                      -    -    -

 3    BY MR. MEUNIER:

 4         Q.     And I'd like to mark and

 5    attach as Che Exhibit Number 7 the notice

 6    of the deposition of Taishan Gypsum and

 7    TTP pursuant to Federal Rule of Civil

 8    Procedure 30(b)(6).  It's Document 11411

 9    filed in the record.

10              Mr. Che, were all of your

11    business dealings with the companies that

12    I just mentioned conducted while you were

13    employed by either TG or TTP?

14         A.     I'm sorry, I don't remember

15    all the companies that you just

16    mentioned.

17         Q.     That's fine, sir.  I'll

18    repeat them.

19              Were all of your business

20    dealings with Oriental Trading conducted

21    while you were an employee of either TTP

22    or TG?

23         A.     What do you mean by or?  You

24    mean both TTP and TG or either --
```

Confidential - Subject to Further Confidentiality Review

```
1          Q.     Either/or.  One or the
2     other.
3          A.     The majority of the business
4     dealings with Oriental was with TTP, and
5     later on after I came to TG, I helped to
6     handle the issue of $100,000.
7                 THE INTERPRETER:
8                 Interpreter clarification.
9                 THE WITNESS:  I think it is
10                something about honor, so I have
11                to handle that issue for the
12                customer.
13    BY MR. MEUNIER:
14         Q.     Were all of your business
15    dealings with Advanced Products and Triax
16    Trading & Logistics conducted while you
17    were an employee of either TG or TTP?
18         A.     What is the company before
19    Triax?
20         Q.     Advanced Products or APIC
21    Building Materials.
22         A.     Can I have the name?  I
23    don't know.
24                Are these the same company?
```

Confidential - Subject to Further Confidentiality Review

 1    I do have impression with Triax.

 2            Q.     You were also designated by

 3    your company to testify about dealings

 4    with Advanced Products.

 5                   Are you not familiar with

 6    that company?

 7            A.     I don't understand your

 8    handwriting.

 9                   Can you give me something

10    more formal, the name of the company in

11    the e-mails?  That would refresh my

12    memory.

13                   I know this, yes.

14            Q.     Were all of your dealings

15    with Advanced Products International

16    Corporation conducted while you were an

17    employee of either TTP or TG?

18            A.     Yes, while I worked for TTP.

19            Q.     Were all of your business

20    dealings with American Five Star

21    conducted while you were an employee of

22    either TG or TTP?

23            A.     Yes, TTP.

24            Q.     Were all of your business

Confidential - Subject to Further Confidentiality Review

```
 1    dealings with TOV Trading conducted while
 2    you were an employee of either TG or TTP?
 3         A.    Can you repeat that?
 4         Q.    Were all of your business
 5    dealings with TOV Trading conducted while
 6    you were an employee of either TG or TTP?
 7         A.    Yes.
 8         Q.    Were all of your business
 9    dealings with B America Corporation
10    conducted while you were an employee of
11    either TG or TTP?
12         A.    What are the companies?
13         Q.    B America Corporation.
14         A.    Yes.
15         Q.    And do you recall that TOV
16    Trading later became known as OEG, OEG?
17         A.    I remember.
18         Q.    And your dealings with OEG
19    were also conducted while you were an
20    employee of either TG or TTP.  Is that
21    true?
22         A.    I worked with OEG while I
23    was employed with TTP.  And later, I
24    helped them with some military
```

Confidential - Subject to Further Confidentiality Review

 1    construction projects.

 2         Q.    Now, yesterday you testified

 3    about your dealings with --

 4         A.    I said assisted with them.

 5         Q.    Yesterday, Mr. Che, you

 6    testified about your dealings with Jorge

 7    Arevalo, Ivan Gonima and Leonardo Guzman

 8    of Oriental Trading.

 9              Do you remember that?

10         A.    Who is Jorge?

11         Q.    Jorge.

12         A.    Oh, I know Jorge.

13         Q.    I was trying to give --

14         A.    I don't know who Jorge is.

15         Q.    So do you remember talking

16    about your dealings with Messrs. Arevalo,

17    Gonima and Guzman with Oriental Trading?

18         A.    I remember the names of

19    these people.  We had communications.

20         Q.    You recall that you first

21    met Mr. Arevalo and Mr. Gonima in 2006

22    when they visited the Shandong Taihe

23    Dongxin factory in Taian city, China.

24    True?

Confidential - Subject to Further Confidentiality Review

1          A.     Can you repeat?

2          Q.     Do you recall that you first

3    met Mr. Arevalo and Mr. Gonima --

4          A.     Stop.

5                 What are the names again?

6          Q.     Jorge Arevalo and Ivan

7    Gonima.

8          A.     In my memory, they did not

9    come together for the first time.

10         Q.     They came on separate

11   visits?

12         A.     They came together once, and

13   then they came separately also.  But I'm

14   not sure about the sequencing.

15         Q.     On these visits, did you

16   tour the Shandong Taihe Dongxin factory

17   in Taian city, China with them?

18         A.     Can you repeat that?

19         Q.     Did you tour the Shandong

20   Taihe Dongxin factory in Taian city,

21   China with them?

22         A.     In what time period?

23         Q.     When they visited you in

24   2006.

Confidential - Subject to Further Confidentiality Review

```
 1          A.     In year 2006, it must be TTP
 2     that they visited.
 3          Q.     Which factory would they
 4     have visited with you in 2006?
 5          A.     It must be TTP that they
 6     visited in the year 2006, because at the
 7     time I worked with TTP.
 8          Q.     What was the location of the
 9     factory?
10          A.     In our TTP's plant.  I've
11     already told you the detailed address
12     when I was being asked by the other
13     gentleman.
14          Q.     Do you recall during that
15     visit that these men asked if your
16     company was already selling drywall in
17     the United States?
18          A.     I don't have a clear
19     recollection of the details that happened
20     at that time.
21          Q.     Is it true you told them
22     that your company already had a drywall
23     customer or client in New York?
24          A.     I don't remember clearly the
```

Confidential - Subject to Further Confidentiality Review

```
 1    detailed content of our conversation, but

 2    you can use e-mail to -- for me to

 3    refresh my memory, but I really don't

 4    remember.  It's been too long.

 5         Q.    But you do not deny telling

 6    them at that time that you had a customer

 7    in New York, do you?

 8         A.    I had neither admitted nor

 9    denied, because I don't remember clearly

10    about that.

11         Q.    Do you recall telling Mr.

12    Gonima during the factory visit in 2006

13    that your company could print Oriental

14    Trading Company's bar code on the drywall

15    they ordered?

16         A.    I don't remember what

17    exactly I told him during -- in the

18    conversation, but during the preparation

19    of the deposition, with assistance of my

20    attorney, we reviewed some document, some

21    e-mail to be exact, that Mr. Irvine

22    designed the bar code himself and

23    requested us to put bar codes on the

24    products that he ordered.
```

Confidential - Subject to Further Confidentiality Review

1          Q.      And at his request, you

2     arranged to have that company's bar code

3     put on the drywall that they ordered.

4     True?

5          A.      Yes.   Upon their request.

6          Q.      Why did you agree to do

7     this, Mr. Che?

8          A.      Because at the time, Mr.

9     Irvine promised us that he would purchase

10    big volume of my product.   Because the

11    principle of our company is the more you

12    sell, the more bonus you get.   I believed

13    him.   But the fact is that he made an

14    exaggeration.   He only bought a little

15    bit of our product.

16         Q.      You wanted him to buy more,

17    didn't you?

18         A.      It doesn't matter who, as

19    long as that person buys my products, I

20    could get more bonuses.

21         Q.      You wanted Mr. Gonima and

22    his company, Oriental Trading, to buy

23    more drywall from your company, didn't

24    you?

Confidential - Subject to Further Confidentiality Review

1          A.     I hope that any company to

2    purchase more of our products.  It

3    doesn't matter who.  If you want, that's

4    fine, too.

5          Q.     If I want to buy drywall

6    from you today and take it back to New

7    Orleans, Louisiana, would you be happy to

8    make those arrangements with me?

9          A.     Don't tell me where you're

10   sending the goods to.  Just give me

11   money.  You can take it wherever you want

12   to.

13         Q.     You would be happy, on

14   behalf of your company --

15         A.     The issue is money.

16         Q.     -- to take my money for

17   drywall, no matter which city in the

18   United States of America I took the

19   drywall to.  Is that true?

20         A.     That's your problem.  I

21   don't care.  I don't care -- I only care

22   that you give me money.

23         Q.     And it wouldn't matter to

24   you which city in the United States I

Confidential - Subject to Further Confidentiality Review

```
1    took the drywall to; is that correct?

2           A.    That's your problem.

3           Q.    And you wouldn't care, would

4    you?

5           A.    That's your problem.

6           Q.    You would not care which

7    city I took it to in the United States?

8           A.    I don't care where would my

9    customer deliver our products to.  What

10   we do is only to give the products to the

11   customer in China.  The presumption is

12   that the customer pay us in full.

13          Q.    Now, when you put a bar code

14   on drywall that you are manufacturing for

15   a customer, does that help for the sales

16   transaction involving that drywall after

17   it reaches its destination?

18                MR. SPANO:  Objection to

19        form.

20                THE COURT:  What's the

21        problem, Frank?

22                MR. SPANO:  It's --

23                THE COURT:  I'm sorry?

24                MR. SPANO:  I think it's
```

Confidential - Subject to Further Confidentiality Review

1          very confusing.

2                  THE COURT:  Well, let's see

3          if the witness can answer.  I'll

4          overrule it if he can't.

5                  Can you answer the question,

6          sir?

7    BY MR. MEUNIER:

8          Q.    Repeat it?

9          A.    I don't quite understand

10   what you said.

11         Q.    I'll repeat the question.

12                When you put a bar code on

13   drywall that you are manufacturing for a

14   customer, does that bar code help with

15   the sales transaction when that drywall

16   is purchased after it reaches its

17   destination?

18                THE COURT:  I sustain the

19         objection to that.  How would he

20         know?

21   BY MR. MEUNIER:

22         Q.    Do you know what a bar code

23   is used for?

24         A.    What bar code are you