Confidential - Subject to Further Confidentiality Review

1    his request.  We produced according to

2    the request of the customer.

3           Q.     But you knew that he wanted

4    those colors because they are the colors

5    of the American flag.  True?

6           A.     We did according to his

7    request.

8           Q.     But you knew he wanted those

9    colors because they are the colors of the

10   American flag.

11                 Is that true?

12          A.     Whatever states in the

13   e-mail, then that's what it is, because

14   you have not yet translated for me

15   sentence by sentence.  But you can point

16   out for me which sentence you're

17   referring to.

18          Q.     I'm not going to go over

19   that e-mail again.  It was done

20   yesterday.  But I now want to refer you

21   to the instant messaging document again.

22   And I will read first for the record and

23   then ask the translator to provide the

24   Chinese to you, starting at the bottom of

Confidential - Subject to Further Confidentiality Review

1  page 6, date and time entry, February 25,

2  2007, 8:30:48 p.m.

3  Ivan. "It is very important

4  for me to make sure you have this file

5  and the design for the tape showing the

6  right colors."

7  Mr. Che Gang. "Another

8  question we want to confirm is that the

9  blue color of DUN logo is the same as the

10  background of letter D."

11  Ivan. "Yes sir, it is the

12  same."

13  "So now you have it? I

14  mean, you can see the tape with all the

15  colors?"

16  Mr. Che Gang. "It appears a

17  little lighter than background of D."

18  Ivan. "We want to use BLUE

19  RED and WHITE because those are the

20  colors of the American Flag."

21  "Yes I know. We had that

22  problem because we scanned the DUN logo

23  from the catalog you gave us. Because of

24  that it appears lighter."

Confidential - Subject to Further Confidentiality Review

```
 1                  Mr. Che Gang.  "You mean
 2     besides color white, we have color of
 3     blue, red and black, no others...?"
 4                  Ivan.  "Yes sir, you got it
 5     right."  In caps, "BLUE and," in caps,
 6     "RED from the American Flag plus," in
 7     caps, "WHITE and," in caps, "BLACK.  That
 8     is it; no more colors."
 9                  "Do you think we have it
10     right now or do you have another
11     question?"
12                  Mr. Che Gang.  "We will ask
13     the tape factory to design the bonding
14     tape as your requirements, and then let
15     you check it."
16                  Aside from you suggesting
17     that some other employee besides you
18     pretended to be you in sending these
19     instant messages, do you have any other
20     factual reason to dispute that this is
21     what you and Mr. Gonima said?
22                  MR. SPANO:  I object to the
23          form, it mischaracterizes the
24          testimony.
```

Confidential - Subject to Further Confidentiality Review

```
 1              THE COURT:  He's under
 2         cross.  I'll allow it.
 3              THE INTERPRETER:  Where is
 4         the start of the e-mail, please?
 5              MR. MEUNIER:  2/25/07 at
 6         8:30:48.  That's on page 6.
 7              THE INTERPRETER:  Thank you.
 8              Just one moment, please.
 9         Where is ending of the reading?
10              MR. EUGENE CHEN:  There
11         should be one more.
12              MR. MEUNIER:  Ended at
13         2/25/2007, 8:41:50.
14              Mr. Che Gang.  "We will ask
15         the tape factory," et cetera.
16              THE WITNESS:  From the
17         document itself, it is only to
18         discuss and to confirm a design
19         pattern of Mr. Irvine.  We were
20         just trying to meet client's
21         requirement.
22    BY MR. MEUNIER:
23         Q.    Do you have any reason to
24    disagree that that was the conversation
```

Confidential - Subject to Further Confidentiality Review

1    with Mr. Gonima, aside from suggesting

2    that someone else pretended to be you?

3         A.    It's not somebody pretended

4    to be me.  It is somebody did that in my

5    replacement, perhaps at the time I was

6    not in the office.  We're talking about

7    the content now.

8         Q.    As a sales employee of TTP

9    and TG, did you use a company computer

10   for all of your e-mails and instant

11   messaging?

12        A.    I did use company's

13   computer.  However, all the e-mail

14   accounts belong to ourself.

15        Q.    Did you save all of your

16   e-mails that you sent or received using a

17   company computer as a sales employee of

18   TTP and TG?

19        A.    Not necessarily.  Some of

20   the data -- some of the data were lost

21   because of reinstallation of computer.

22   And sometimes the e-mail accounts were

23   our private accounts, the accounts that

24   we applied ourselves.  The storage space

Confidential - Subject to Further Confidentiality Review

1    in the e-mail was rather small.  When the

2    space was not sufficient, we would delete

3    the older e-mails.

4         Q.    Did you save the instant

5    messaging from your work as a sales

6    employee of TTP and TG?

7         A.    TTP and what company?

8         Q.    TG.

9         A.    I did not do that purposely.

10        Q.    You did not save your

11   instant message material?

12        A.    I did not save it purposely.

13   Perhaps it automatically created a saved

14   version, but when I reinstall the

15   computer, they are all lost.  Therefore,

16   I don't have any memory of these

17   information.

18        Q.    Yesterday you were asked

19   about your instant message conversation

20   with Mr. Gonima in which you told him

21   your company could manufacture 10,000

22   sheets of drywall a day, 30,000 a month

23   using one production line.

24        A.    Where is it?

Confidential - Subject to Further Confidentiality Review

1           Q.     Let me finish the question

2      first.

3                  And that you could have

4      three production lines if necessary.

5                  Do you remember that

6      discussion yesterday?

7           A.     We did not discuss about

8      that yesterday.

9           Q.     Isn't it true, Mr. Che, that

10     you told Ivan Gonima that your company

11     could make 10,000 sheets of drywall in

12     one day in response to him telling you

13     that he needed millions of pieces of

14     drywall because construction was booming

15     in Las Vegas?  Is that true?

16          A.     I don't know where in the

17     document you're referring to.

18          Q.     Please refer to page 11 of

19     the instant message exhibit.  I will

20     begin reading at March 4, 2007,

21     8:35:45 p.m.

22                 Ivan.  "Did you receive my

23     e-mail about a client in Las Vegas?  I

24     need to talk to you urgently about that

Confidential - Subject to Further Confidentiality Review

```
 1    volume of sheets of drywall."

 2                    "I need to know what is the

 3    maximum number of sheets" (4 feet by

 4    8 feet by 1/2 inch) "you can supply us.

 5    That is what they need."

 6                    "I also need to know what is

 7    the best price you can give me for this

 8    volume.  We are talking about millions of

 9    units and we would have to sign a

10    contract with this buyer."

11                    "Construction is booming in

12    Las Vegas and they need millions of

13    pieces."

14                    "Please answer me when you

15    read this; I will be checking it because

16    I need an urgent answer."

17                    "Thanks."

18                    Mr. Che Gang.  4 feet by

19    8 feet by 1/2 inch "regular gypsum board

20    loading 980 sheets/40fcl by pallet, FOB

21    qingdao port price" US dollar 2.60 per

22    sheet.

23                    "This is the best price."

24                    "We can make 10000
```

Confidential - Subject to Further Confidentiality Review

1     sheets/one day."

2                Do you have any reason to

3     deny that this was the conversation you

4     had with Mr. Gonima?

5          A.    Let's not talk about the

6     same things we talked about before.

7     Let's only talk about the issues that is

8     reflected or here.  You can ask me

9     questions on that.

10         Q.    Sir, I will decide what

11    questions to ask you subject to the

12    judge's order.

13                Is that understood?

14         A.    I understand.

15         Q.    My question is, do you have

16    any reason to deny that that was the

17    conversation you had with Ivan Gonima?

18         A.    I also do not have any

19    reason to confirm that it's our

20    conversation.

21         Q.    After the October 2006

22    agreement with Oriental Trading for the

23    sale of gypsum board, you also discussed

24    with Mr. Gonima his company's purchase of

Confidential - Subject to Further Confidentiality Review

1    related products, such as metal studs,

2    screws and tape.  Is that true?

3          A.    That's not what it reflected

4    here.  Only gypsum board.

5          Q.    I'm not talking about --

6          A.    We are talking about here.

7          Q.    -- that part of the document

8    anymore.

9          A.    You're talking too fast.  I

10   can't follow.

11         Q.    Let's put that away.

12         A.    You just mentioned this, and

13   now you're changing to another subject.

14   I don't understand.

15         Q.    Yes.

16         A.    I'm sorry.

17         Q.    After the sole agency

18   agreement with Oriental Trading in

19   October of 2006 for the sale of gypsum

20   board under the Dun brand, you also

21   discussed with Mr. Gonima selling his

22   business products related to drywall such

23   as metal studs or frames, screws and

24   bonding tape.  Is that true?

Confidential - Subject to Further Confidentiality Review

```
1          A.    No.   First of all, because

2    Oriental company had exaggerated their

3    volume.   And upon the customer's request,

4    I signed that agreement with them.

5    However, the precondition for the

6    effectiveness of the contract is that it

7    has to be within a period of time that we

8    both agreed to sell certain volume of

9    gypsum board.   But in fact, during that

10   period of time, he did not sell anything

11   at all.   Therefore, that agreement is

12   invalid.   And also, after Jorge took the

13   agreement, he once promised to mail back

14   the original to us; however, we have

15   never received that, as far as I can

16   remember, and also, we did not find it in

17   our company's file.   Therefore, I'm even

18   more assured that the agreement is

19   invalid.   As of what you have said about

20   metal stud --

21              THE INTERPRETER:

22         Interpreter clarification.

23              THE WITNESS:   As what you

24         have mentioned, metal stud and
```

Confidential - Subject to Further Confidentiality Review

```
 1            screw, the discussion about these
 2            was for the purpose of returning
 3            and resolving the $100,000 that
 4            Oriental company would pay us.
 5            This has also been the same
 6            request that Oriental company
 7            expressed in multiple e-mails.
 8            That's a fact of this.
 9   BY MR. MEUNIER:
10            Q.    Are you finished?
11            A.    Yes.
12            Q.    Before giving Mr. Gonima
13   prices on metal frames and other
14   products, you wanted to know the price
15   levels for these products charged by
16   American manufacturers.  Isn't that true?
17            A.    I don't recall.
18            Q.    Please refer to page 20 of
19   the instant message document.  I will
20   read starting at the top of that page for
21   the date March 13, 2007, 9:22:47 p.m.
22                 Ivan.  "Any news on the
23   metal frame and other products?"
24                 Mr. Che Gang.  "At this
```

Confidential - Subject to Further Confidentiality Review

1   moment, the price of steel belt is

2   increasing, not steady."

3              "We want to offer you a

4   steady price for metal stud to you.

5              Ivan.  "But still I need to

6   have a price; our clients are asking for

7   a quote."

8              "I understand your point but

9   we have to compare with the american

10  manufacturers pricing."

11             "I think they are also

12  paying high price for the steel belt they

13  are" using.  Not suing, sorry.

14             Mr. Che Gang.  "Would you

15  please let us know the price level of

16  American manufacturers?"

17             Do you have any reason to

18  deny that this was the conversation you

19  had with Mr. Gonima?

20       A.    I can't be sure that I was

21  the person who said that.

22       Q.    Is it true that you provided

23  US customers not only shipping costs to

24  cross the ocean from China to the US but

Confidential - Subject to Further Confidentiality Review

1    also land transportation costs from US

2    ports to inland cities?

3          A.    Upon request of the

4    customers, I had only inquired some of

5    the prices of their requests.  But as of

6    where are they going, for me, it's

7    meaningless.

8          Q.    For example, you agreed to

9    give Mr. Gonima the cost of transporting

10   your company's drywall across land from

11   Miami, Florida to Orlando, Florida.  Is

12   that true?

13         A.    Where is it?

14         Q.    At page 25 of the instant

15   message document.  I will begin reading

16   at the bottom time entry.  Date entry is

17   April 14, 2007 at 10:34:42 p.m.

18               Ivan.  "I understan you will

19   ship the containers to Miami," Florida

20   "or could you give me a price up to

21   Orlando...including the land portion?"

22               Mr. Che Gang.  "Can he

23   operate the 40 container of 28-29 tons?"

24               Ivan.  "Yes, he can."

Confidential - Subject to Further Confidentiality Review

1                    "We already found a way to

2      solve that problem."

3                    Mr. Che Gang.  "Ok fine."

4                    Ivan.  "But if you can give

5      me a price from Qingdao to Orlando

6      directly I will consider your quote."

7                    Mr. Che Gang:  "Ok sir, I

8      will."

9                    Do you have any reason to

10     deny that that was your conversation with

11     Mr. Gonima?

12          A.    I can't confirm that.

13          Q.    Mr. Che, you learned that a

14     storm called Hurricane Katrina had caused

15     the destruction of property and the need

16     to rebuild some cities in the area of

17     that storm.  Is that true?

18          A.    I don't recall.

19          Q.    Please, on the same page

20     we've been reading from, which is page 26

21     of the instant message document, I'll

22     begin reading it on April 14, 2007 at

23     10:38:10 p.m.

24                    Ivan.  "I will be waiting

Confidential - Subject to Further Confidentiality Review

```
 1    for your answer.  The quote from Qingdao

 2    to Gulfport is VERY," in caps, very,

 3    "important.  We have somebody asking us

 4    for 2,000,000" 4 feet by 8 feet by 1/2

 5    inch "sheets."

 6                   "These would be for the

 7    reconstruction of some cities destroyed

 8    by Hurricane Katrina."

 9                   Mr. Che Gang.  "Ok sir, I

10    will confirm it quickly, have a great

11    night!"

12                   Do you have any reason to

13    deny that that was the conversation you

14    had with Mr. Gonima?

15         A.    This is only a message sent

16    by the customer.  I really can't recall.

17    I also cannot confirm that it was indeed

18    me who was having a conversation with

19    him.

20         Q.    Yesterday you were shown a

21    series of e-mails Bates numbered TG 915

22    through TG 920.  It's marked as Che

23    Number 2.  And I want to again direct

24    your attention to Mr. Gonima's e-mail of
```

Confidential - Subject to Further Confidentiality Review

```
 1    April 15, 2007, starting on page TG 917.

 2                  In that e-mail, Mr. Gonima

 3    asked you for --

 4           A.    Which one?

 5           Q.    I just -- it's the e-mail

 6    from Ivan Gonima to the witness.  It's

 7    dated April 15, 2007, and it begins on

 8    the page which is Bates numbered TG 917.

 9           A.    This one?

10           Q.    Yes.

11                  In that e-mail, Mr. Gonima

12    asked you for ocean freight rates for

13    your company's drywall to be shipped to a

14    number of cities, which included eight

15    cities in the United States of America.

16    Is that true?

17           A.    This is only an e-mail in

18    which the customer asked me to help him

19    inquire about the shipping costs.

20           Q.    Yes, sir.

21                  But the fact is that you

22    then responded and gave him the requested

23    information for those cities, didn't you?

24           A.    I was only helping out the
```

Confidential - Subject to Further Confidentiality Review

```
 1    customer.  In fact, my operation was done

 2    still according to FOB Chinese port.

 3              Q.    I show you a document which

 4    is Bates numbered TG 913 to TG 914 and

 5    refer you to your e-mail to Oriental

 6    Trading dated April 17, 2007.

 7                    I think I'm going to give it

 8    a separate exhibit number.  It was not

 9    included in the other.

10                    MR. MEUNIER:  What's the

11              number?

12                    MR. SPANO:  913.

13                    MR. MEUNIER:  Yes, but it's

14              Che --

15                    MR. SPANO:  10.

16                    MR. MEUNIER:  Che Number 10.

17                         -   -   -

18                    (Deposition Exhibit No.

19              Che-10, E-mail chain, top one

20              dated 4/18/2007, Bates stamped TG

21              0000913 and TG 0000914, was marked

22              for identification.)

23                         -   -   -

24    BY MR. MEUNIER:
```

Confidential - Subject to Further Confidentiality Review

1         Q.    Is it true that in this

2    e-mail, in response to Mr. Gonima's

3    request, you provided shipping cost

4    information for eight cities in the

5    United States of America?

6         A.    Which e-mail are you talking

7    about?  The one on the bottom or the one

8    on the top?

9         Q.    Yes.  From Wuyu, sent

10   Tuesday April 17, 2007, 11:17 p.m.,

11   "Subject:...Shipping."

12         Is it true that in response

13   to Mr. Gonima's earlier e-mail, you

14   provided shipping cost information for

15   your company's drywall to be sent to

16   eight cities in the United States of

17   America?

18         A.    Is inquiry for shipping cost

19   stated in this e-mail on top?

20         Q.    No.  I suggest to you that

21   the list of the cities matches the list

22   of the cities in Mr. Gonima's e-mail to

23   you on April 14, 2007, which we just

24   looked at.

Confidential - Subject to Further Confidentiality Review

1              Do you see that, sir?

2         A.    He's the judge.  First of

3    all, I don't understand English very

4    well.  If I am shown like this, I don't

5    understand the context.  I'd like the

6    interpreter to explain to me content of

7    these e-mails.  Otherwise, I can't answer

8    the question.

9         Q.    When you are clear what

10   e-mail I'm referring you to --

11        A.    This one?

12        Q.    -- the interpreter will

13   translate for you.

14        A.    Okay.

15        Q.    In the e-mail from you dated

16   April 17, 2007, did you provide shipping

17   cost information for the same cities in

18   Mr. Gonima's e-mail to you of April 14,

19   2007?

20        A.    Yes.  Upon the request of

21   Mr. Ivan, I inquired the shipping costs

22   for him.  Mr. Ivan told me some of these

23   names.

24        Q.    Yes.

```
 1                  And you obtained shipping
 2    cost information for the following
 3    cities:  Gulfport, Mississippi; New
 4    Orleans, Louisiana; Long Beach,
 5    California; Las Vegas, Nevada; Savannah,
 6    Georgia; Atlanta, Georgia; Charleston,
 7    South Carolina; and Wilmington, North
 8    Carolina.  Eight cities in the United
 9    States.  True?
10           A.    I don't recall the details.
11    But according to the principle of our
12    operation in a company, usually when the
13    customer ask for our help for such
14    information, I would copy the ports in
15    question and send to a few shipping
16    companies and to have them fill out the
17    information, which are the prices, and
18    then copy it back, send it to the
19    customer.  As where the customer would
20    like to send it to, those were the
21    requirement of the customers.  For us,
22    it's all the same.  It doesn't matter
23    where they're sending to.  They could
24    send it to these places or Hong Kong or
```

Confidential - Subject to Further Confidentiality Review

1    China.  We were only providing help.   In

2    fact, the principle that our company

3    required of us was only to deliver in

4    China.

5          Q.    How did you obtain this

6    information?

7          A.    Shipping agent quoted the

8    information.

9          Q.    Explain the letters in the

10   parentheses after each of these cities?

11         A.    I don't understand that

12   either.

13         Q.    For example, Gulfport,

14   Mississippi, you put in parentheses "(CY

15   - DR)."

16               What does that stand for?

17         A.    I only copied that

18   information to the shipping agent, and

19   the shipping agent quoted the price and I

20   copied it back.  I did not pay special

21   attention to these.  I also don't

22   understand what he meant by that.

23         Q.    And is that also true for

24   the letters in parentheses after the

Confidential - Subject to Further Confidentiality Review

1    numbers, for example, "EMC," "APL," et

2    cetera?

3            A.    These are the shipping

4    agent's abbreviation.  That I know.  This

5    is something that we use often.

6            Q.    Las Vegas, Nevada is not a

7    port city, is it?

8            A.    I don't know.

9            Q.    But you provided shipping

10   costs for that city.  True?

11           A.    I don't know these

12   information.  I just copied it to the

13   shipping agency, and the shipping agent

14   provided the information back to me, I'll

15   copy it back to them.  What I can

16   understand are the pricings provided by

17   the shipping companies.  That's what it

18   is reflected here.

19           Q.    So some of the cost --

20               THE INTERPRETER:  One

21       moment, please.

22               MR. MEUNIER:  Oh, I'm sorry.

23               THE WITNESS:  What I could

24       understand was that in this part

Confidential - Subject to Further Confidentiality Review

1          are the name of the shipping

2          company and on this part were the

3          prices.  I didn't really pay

4          attention to the rest of them.  I

5          didn't understand either.

6    BY MR. MEUNIER:

7          Q.    Some of the cost

8    information, for example, in the case of

9    Las Vegas, Nevada, as far as you know,

10   involved land transportation costs as

11   well.  Is that true?

12         A.    I don't know.

13         Q.    Later Mr. Gonima asked you

14   to provide shipping cost information for

15   some additional cities in the United

16   States.  Is that true?

17         A.    Where is it?

18         Q.    I'm going to show you an

19   e-mail from Mr. Gonima to you dated May

20   10, 2007.  I've marked it as Che Number

21   11.

22                    -  -  -

23         (Deposition Exhibit No.

24   Che-11, E-mail dated 5/10/2007,

Confidential - Subject to Further Confidentiality Review

```
 1          Bates stamped TG 0000902, was

 2          marked for identification.)

 3                    -   -   -

 4               MR. SPANO:  What are the

 5     Bates?

 6               MR. MEUNIER:  Oh, I'm sorry.

 7     Bates number is TG 902.

 8               THE WITNESS:  What is your

 9     question?

10  BY MR. MEUNIER:

11          Q.    In this e-mail to you, Mr.

12  Gonima asked you to provide ocean freight

13  rates for drywall to four US cities --

14  actually, I'm sorry, five US cities as

15  follows:  West Palm Beach and Tampa,

16  Florida; Houston, in Texas; Norfolk, in

17  Virginia; Newark, in New Jersey.

18          A.    This is also upon the

19  request of Mr. Irvin, to have us to

20  assist him in inquiring the shipping

21  costs.

22          Q.    And you provided that

23  information to Mr. Gonima?

24          A.    There is no response here.
```