Confidential - Subject to Further Confidentiality Review

```
 1    in China in order to support his company

 2    to compete in the USA market.  Correct?

 3         A.    This is only to express that

 4    we would like the customer to place new

 5    orders as soon as possible, but we did

 6    not know whether the reality was so.  We

 7    didn't care where the customer's markets

 8    were located.  Perhaps in Hong Kong.

 9    Perhaps in inland China.  This is only a

10    formality way of expression.

11         Q.    You told us earlier that a

12    new company was created at some point to

13    manufacture the metal studs.

14              Do you recall that?

15         A.    I don't recall.

16         Q.    Excuse me.

17              I show you a document Bates

18    number TG 21997, which I have marked as

19    Che Exhibit 29.

20                   -  -  -

21              (Deposition Exhibit No.

22    Che-29, E-mail dated July 14,

23    2007, Bates stamped TG 0021997,

24    was marked for identification.)
```

Confidential - Subject to Further Confidentiality Review

```
 1                    -  -  -

 2    BY MR. MEUNIER:

 3         Q.    This is an e-mail of July

 4    14, 2007 from you to Joe Weiss at OEG.

 5    Correct?

 6         A.    Yes.

 7         Q.    In the second to last

 8    paragraph, you told him the following:

 9    "Another thing is that our group set up a

10    new company, Taian Jindun Building

11    Material Co., Ltd which will be

12    especially for the business of metal

13    stud."

14              Who did you mean by our

15    group?

16         A.    It does not specify here.

17    In fact, they said in the earlier stage,

18    we purchased the steel stud from Jindun

19    company to sell it to OEG.  But later,

20    because we had no profit in the

21    operation, so we can only ask OEG to deal

22    directly with Jindun company.  But we

23    were embarrassed to tell the customer

24    that in the earlier stage, we actually
```

Confidential - Subject to Further Confidentiality Review

1     purchased from the company and sold it to

2     them.   Therefore, we use this kind of way

3     to indirectly express what we needed to

4     express.

5          Q.    Yes.  But in the next

6     sentence you say, "So we will sign the

7     contract and make all the paperwork under

8     the name of Taian Jindun Building

9     Material Co., Ltd."  Correct?

10          A.    The expression meant at the

11     time because we could not operate that

12     way anymore, so we would want the

13     personnel in Jindun company to deal

14     directly with them, but the salespeople

15     in Jindun did not speak English at all.

16     Their English was not even as good as

17     mine.  Therefore, we had to operate that

18     on their behalf.

19          Q.    In the paragraph above the

20     one we've been reading from you, you

21     suggested to Mr. Weiss that he change

22     shipping companies.  Is that true?

23          A.    Can you translate this

24     paragraph for me?

Confidential - Subject to Further Confidentiality Review

```
 1          Q.    I will read the second to
 2     last sentence.
 3                "And in fact OOCI ship is
 4     just two or three days before than ZIM.
 5     So we suggest changing the container to
 6     ZIM shipping."
 7                These were the shipping
 8     companies that took the product over the
 9     ocean from China to America.  Correct?
10          A.    I don't know, because what I
11     was trying to express was only that.
12     There was a shipping company that could
13     have more volume while the other shipping
14     company did not agree that we could put
15     more products in it.  In order to put
16     more of my products in it, so I suggested
17     him to change to another shipping
18     company.  I didn't pay attention to the
19     destination of the product.
20          Q.    But it was shipping over the
21     ocean from China to the customer.
22     Correct?
23          A.    It was handled by the
24     client, I believe.  I only found the
```

Confidential - Subject to Further Confidentiality Review

 1    shipping agent, that Miss somebody.

 2         Q.    Are these shipping

 3    companies, companies that handled the

 4    shipment of product from China to the

 5    customer?

 6         A.    From the e-mail, this

 7    Sheila, the lady, should be the shipping

 8    agent of the customer.

 9         Q.    And you say the reason you

10    recommended to this American customer

11    that they change shipping companies was

12    so that your company could put more

13    product on the ship.  Right?

14         A.    What does it mean in the

15    beginning of the paragraph, did it mean

16    to change the shipping company to this

17    one or did it mean to cancel the shipping

18    company?

19         Q.    It's your e-mail, Mr. Che.

20    You'll have to tell us.

21         A.    I don't recall.

22         Q.    Mr. Che, you were aware of

23    an economic crisis affecting the United

24    States in 2008, were you not?

Confidential - Subject to Further Confidentiality Review

```
 1        A.    I believe it affected the
 2   world.
 3        Q.    Isn't it true that you were
 4   not only aware of this crisis, but you
 5   were also aware that the United States
 6   government made payments to businesses
 7   which were called bailouts to address
 8   this crisis?
 9        A.    I can't confirm that.  I am
10   not sure.  I don't have a clear
11   recollection of that.
12        Q.    Isn't it true that in
13   February of 2009, your employer saw an
14   opportunity to sell more gypsum board and
15   metal studs in the United States after
16   these bailout plans were carried out?
17        A.    I don't recall.
18        Q.    I show you a document which
19   is Bates numbered TG 0021469 --
20                    -  -  -
21             (Deposition Exhibit No.
22        Che-30, E-mail with date in
23        Chinese, Bates stamped TG 0021469,
24        was marked for identification.)
```

Confidential - Subject to Further Confidentiality Review

```
 1                    -  -  -

 2   BY MR. MEUNIER:

 3        Q.    -- which I will mark as Che

 4   Exhibit Number 30, 21469.  This is an

 5   e-mail of February 23, 2009 from you to

 6   Joseph Weiss at OEG.  Is that true?

 7        A.    Yes.

 8        Q.    And in the second paragraph,

 9   second sentence, you wrote the following:

10   "As far as we know that your government

11   is carrying out many bailout plans.  And

12   the economic is turning better and

13   better.  We received several inquiries on

14   the gypsum board and metal studs from

15   U.S.  You are one of our first-ten

16   customers since we have a very good

17   cooperation record.  So we prefer to

18   restarting our U.S. business with you

19   rather than others."

20              You agree you wrote that to

21   Mr. Weiss in this e-mail of February 23,

22   2009.  Correct?

23        A.    It was an e-mail that I sent

24   on February the 23rd, 2009 to Joe.
```

Confidential - Subject to Further Confidentiality Review

1    Because my English is not good, I'd say

2    it's very poor, maybe I did not express

3    myself clearly.  I think the entire

4    document should be a document of

5    formality in order to sell.  I expressed

6    my willingness to follow up with my old

7    customers who have made purchase with us

8    before to ask whether they'd like to

9    continue to purchase our product.

10          Q.    You saw an opportunity to

11    renew business with OEG.  Correct?

12          A.    It's not that I saw an

13    opportunity, but in formality, I was only

14    greeting an old customer to see whether

15    he would still willing to purchase our

16    product.  I think this is only a

17    follow-up e-mail.

18          Q.    You wanted to restart your

19    US business.  True?

20          A.    Because at the time, my

21    handling with OEG was the term of FOB

22    Chinese port.  I didn't care which market

23    was he located at.  This was only a

24    greeting out of formality.  What I cared

Confidential - Subject to Further Confidentiality Review

1    about was whether he would purchase my

2    product.

3         Q.    The final business that I

4    want to talk to you about is American

5    Five Star.

6         A.    Can somebody get me a glass

7    of water?

8         Q.    Isn't it true there were

9    discussions between TTP and American Five

10   Star about American Five Star becoming

11   the exclusive distributor of TTP gypsum

12   board in the United States?

13        A.    It was a request of Five

14   Star Company requesting us to approve

15   them to be our agent.

16        Q.    I show you a document which

17   is Bates numbered 21242 and 43, which

18   I'll mark as Che Exhibit 31.

19                    - - -

20              (Deposition Exhibit No.

21        Che-31, E-mail dated June 7, 2007

22        with attachment, Bates stamped TG

23        0021242 and TG 0021243, was marked

24        for identification.)

Confidential - Subject to Further Confidentiality Review

```
 1                    -  -  -

 2   BY MR. MEUNIER:

 3        Q.     And I refer you to an e-mail

 4   of June 7, 2007 from Alan Fine, general

 5   manager, American Five Star Products, LLC

 6   to you.  And to be more correct, Mr. Fine

 7   addresses this e-mail to you and to Peng

 8   Wenlong; is that right?

 9        A.     Yes.

10        Q.     He thanks you "for meeting

11   with us today."

12               Do you recall meeting with

13   representatives of American Five Star

14   Products on June 7, 2007?

15        A.     I only remember that he

16   came.  I do not remember if not seeing

17   the date, the exact date of the meeting.

18        Q.     Who did you meet with

19   besides Mr. Fine?

20        A.     In my memory we call him

21   Alan.

22        Q.     Jorge Arevalo?

23        A.     Should be together with

24   Jorge.  I only know Jorge.
```

Confidential - Subject to Further Confidentiality Review

```
 1          Q.    Is that the same Jorge that
 2    you dealt with in doing business with
 3    Oriental Trading?
 4          A.    Yes, that's him.
 5          Q.    He gets around?
 6          A.    And Jorge took Mr. Alan
 7    again came to visit our company.
 8          Q.    Mr. Fine tells you and Mr.
 9    Peng in this e-mail, "Attached is the
10    Certificate we discussed at the end of
11    the meeting."
12                Do you see that?
13          A.    That certificate?
14          Q.    Yes.  He refers to an
15    attachment of a certificate discussed at
16    the end of the meeting.  Correct?
17          A.    What was your question?
18          Q.    Look at the second page,
19    which is TG 21243, and you see a
20    certificate attached to Mr. Fine's e-mail
21    which states in the first paragraph that
22    TTP "certifies that American Five Star
23    Products LLC is its exclusive distributor
24    for all products sold under the Five Star
```

Confidential - Subject to Further Confidentiality Review

```
 1     brand in the United States."
 2               Do you see that?
 3          A.    Yes, I see it.
 4          Q.    Why were you and Mr. Peng
 5     willing to discuss with representatives
 6     of American Five Star at this meeting an
 7     agreement to make American Five Star the
 8     exclusive distributor for all TTP
 9     products sold in the US?
10          A.    He was the representative of
11     Five Star that asked us to become --
12     asked us to issue the certificate.  It
13     was them wanted to discuss with us.  We
14     could not just disregard our customer.
15          Q.    Why were you willing to
16     consider an agreement to make American
17     Five Star the exclusive distributor for
18     all of your products in the US?
19          A.    It was not our
20     consideration.  It was just the intention
21     of the customer which they wanted to
22     discuss with us.
23          Q.    But in fact, your boss
24     proposed a contract with American Five
```

Confidential - Subject to Further Confidentiality Review

```
 1    Star to make them the exclusive

 2    distributor after this e-mail.  Is that

 3    true?

 4           A.     I don't recall.

 5           Q.     I'll show you a document

 6    which is Bates numbered TG 21228 through

 7    21232.

 8                         -   -   -

 9                  (Deposition Exhibit No.

10           Che-32, E-mail dated June 20, 2007

11           with attachment, Bates stamped TG

12           0021228 through TG 0021232, was

13           marked for identification.)

14                         -   -   -

15    BY MR. MEUNIER:

16           Q.     I refer you to the first

17    page, 21228, which is an e-mail from Alan

18    Fine, American Five Star Products, to you

19    and Peng Wenlong in which he says, "Dear

20    Frank and Bill, Jorge forwarded to me the

21    proposed contract approved by your

22    boss-manager."

23                  Who was your boss manager

24    who made this proposed contract that
```

Confidential - Subject to Further Confidentiality Review

1    Jorge had forwarded?

2           A.    I don't know who did Jorge

3    refer to.

4           Q.    No, sir.  My question is,

5    who was your boss manager who gave Jorge

6    a proposed contract with American Five

7    Star?

8                 MR. SPANO:  Objection, no

9           foundation.

10                THE COURT:  Show him the

11          letter.

12                MR. MEUNIER:  He's got the

13          e-mail in front of him.  It says,

14          "Jorge forwarded to me the

15          proposed contract approved by your

16          boss-manager."

17                MR. SPANO:  And your

18          question said that the boss

19          manager gave Jorge a contract.

20          There's no suggestion that --

21                MR. MEUNIER:  "Jorge

22          fowarded" --

23                THE COURT:  Restate the

24          question.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. MEUNIER:
 2        Q.    The e-mail, the first
 3   sentence of the e-mail to you and Frank,
 4   you and Peng Wenlong, from Alan Fine,
 5   says, "Jorge forwarded to me," Alan Fine,
 6   "the proposed contract approved by your
 7   boss-manager."
 8             My question is, who was the
 9   boss manager who approved a proposed
10   contract and gave it to Jorge?
11        A.    I don't know who had agreed
12   such a proposed contract, so I don't know
13   who did Jorge refer to.  I think Jorge
14   was talking to Alan here.
15        Q.    Mr. Fine goes on in his
16   e-mail to you to say he understands "if
17   your company cannot make the full
18   agreement with the terms we discussed in
19   your office two weeks ago.  I have
20   submitted a new contract with some
21   clarifications and the most important
22   terms to us."
23             Do you see that?
24        A.    I see it.
```

Confidential - Subject to Further Confidentiality Review

1          Q.    Please look at the attached

2    document, which is entitled "Exclusive

3    Distribution Agreement" bearing the date

4    of June 21, 2007.

5               Is this the contract which

6    Alan Fine forwarded to you and Peng

7    Wenlong for your company, TTP, to

8    consider?

9          A.    I don't have a clear

10   recollection, but from what it appears to

11   be, that should be the case, because I do

12   not remember such an agreement was ever

13   signed.

14         Q.    If you look at the last

15   page, Mr. Che, which is 21232, there is a

16   signature by Alan Fine on behalf of

17   American Five Star Products.

18              Is it your testimony you

19   don't recall if TTP ever signed this

20   agreement?

21         A.    I don't recall.

22         Q.    Did you review the

23   agreement?

24         A.    No.

Confidential - Subject to Further Confidentiality Review

1          Q.     Who reviewed the agreement

2     on behalf of TTP?

3                      MR. SPANO:  Objection.

4                      MR. MEUNIER:  If anyone?

5          Will that solve it?

6                      THE COURT:  Just put "if

7          anyone."

8     BY MR. MEUNIER:

9          Q.     Who, if anyone, reviewed

10    this agreement on behalf of TTP?

11         A.     What were you asking or do

12    you mean if I'm seeing the document right

13    now?  Or actually, I just flipped the

14    page.  I did not really review the

15    document.

16         Q.     No, sir.  When this document

17    was forwarded with Mr. Fine's e-mail to

18    you and Peng Wenlong on June 20, 2007,

19    who, if anyone, on behalf of TTP reviewed

20    the agreement?

21         A.     I don't recall.

22         Q.     In principle, was TTP

23    opposed to the idea of making an

24    exclusive distribution agreement with

Confidential - Subject to Further Confidentiality Review

1    this American company?

2         A.    In my recollection, we did

3    not agree to sign this agreement with

4    them.

5         Q.    I understand that.

6              But did TTP object in

7    principle to the idea of an exclusive

8    distribution agreement with American Five

9    Star?

10        A.    I don't recall the

11   circumstance at that time.

12             Can I go to the restroom?

13             THE COURT:  It's time.

14             VIDEOTAPE TECHNICIAN:  We're

15        going off the record.  The time is

16        3:47.

17             THE COURT:  15-minute break.

18                  -   -   -

19             (A recess was taken from

20        3:47 p.m. to 4:02 p.m.)

21                  -   -   -

22             VIDEOTAPE TECHNICIAN:  Back

23        on the record at 4:02.

24             THE COURT:  Any further

Confidential - Subject to Further Confidentiality Review

```
 1          questions?

 2                  MR. MEUNIER:  I tender the

 3          witness.

 4                  THE COURT:  Anybody else

 5          questioning for cross?

 6                  Go ahead, Frank.  It's late

 7          in the day.

 8                      -  -  -

 9                  EXAMINATION

10                      -  -  -

11   BY MR. SPANO:

12          Q.    Good afternoon, Mr. Che.

13                Did TTP enter into any kind

14   of agreement with American Five Star for

15   that company to distribute its drywall?

16          A.    As far as I can remember,

17   that will be no.

18          Q.    Did TG or TTP ever sell any

19   drywall to American Five Star?

20          A.    In my recollection, no.

21          Q.    Do you recall the

22   circumstances of how Oriental Trading was

23   introduced to TTP?

24          A.    At the time Oriental Trading
```

Confidential - Subject to Further Confidentiality Review

```
 1    was -- first of all, Oriental Trading had

 2    a person in China whose name is Wu

 3    Jiansong who contacted us and expressed

 4    his willingness of purchasing our

 5    product.  And later Mr. Evan from

 6    Oriental Trading told me that Wu Jiansong

 7    was his representative in China.  We were

 8    able to contact Mr. Evan through Wu

 9    Jiansong.  And after that, Mr. Jorge, Mr.

10    Jorge from Oriental, again, through an

11    agent in Beijing came to our company to

12    visit.  And then he said he was also from

13    the Oriental company.  That was the

14    circumstance.

15         Q.    I'd like to mark an exhibit.

16    Can I borrow your stickers?

17              MR. MEUNIER:  Yes.

18                   -  -  -

19              (Deposition Exhibit No. Che

20         Defendant's-1, E-mail dated

21         8/30/2006, Bates stamped TG

22         0000575, was marked for

23         identification.)

24                   -  -  -
```

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. SPANO:
 2           Q.    We've marked as Defendant's
 3    Exhibit Che-1 Bates number TG 575.
 4                 Mr. Che, do you recognize
 5    this document as an e-mail from Ivan
 6    Gonima to you, cc Wu Jian Song, dated
 7    August 30, 2006?
 8           A.    Yes.
 9           Q.    I'd like to read the first
10    paragraph into the record and then ask
11    the translator to translate it for the
12    witness.
13                 MR. DAVIS:  Excuse me.  I
14           don't see the exhibit in the
15           binder that was provided.
16                 Was that provided?  Was that
17           document provided by defendants in
18           advance?
19                 MR. SPANO:  It may not have
20           been.
21                 MR. DAVIS:  I'm just not
22           aware of it.
23                 MR. SPANO:  I haven't
24           cross-checked.
```

Confidential - Subject to Further Confidentiality Review

```
 1              MR. DAVIS:  Can we get
 2         copies, please.
 3              And Your Honor, we object to
 4         the use of that document.
 5              THE COURT:  What's your view
 6         of it, Frank?
 7              MR. SPANO:  I actually think
 8         this document was marked by them
 9         by some different Bates number
10         already, and I was just trying to
11         save time not to go look through
12         the pile.
13              MR. DAVIS:  Subject to the
14         objection.
15              MR. SPANO:  If it's an
16         issue, I'll go through the pile.
17              MR. DAVIS:  Subject to the
18         objection.
19              THE COURT:  Go ahead.  Do
20         it.
21    BY MR. SPANO:
22         Q.    "My name is Ivan Gonima and
23    I am the Executive Vice-President of
24    Oriental Trading...based in Miami,
```

 1    Florida, USA.  Our China Office Manager,

 2    Mr. Wu Jian Song, has already contacted

 3    you about our interest in doing business

 4    with your company for importing drywall

 5    (Gypsum Board) to the USA."

 6              Does that paragraph that's

 7    been translated correctly reflect the

 8    circumstances of Oriental's Trading first

 9    introduction to TTP?

10        A.    It does say that Ivan Gonima

11    through his Chinese representative Wu

12    Jiansong to approach us and expressed

13    their intention of purchasing our

14    product.

15              MR. SPANO:  For the record,

16         I can now confirm we designated

17         this as an exhibit before the

18         deposition.

19    BY MR. SPANO:

20        Q.    Did TTP solicit any contact

21    with Oriental Trading before Oriental

22    Trading contacted TTP through their China

23    office manager?

24        A.    No.

Confidential - Subject to Further Confidentiality Review

1          Q.    Do you recall having

2    discussions with Oriental Trading's

3    representatives in China regarding

4    Oriental Trading distributing TTP's

5    drywall?

6          A.    Can you interpret again?

7                THE INTERPRETER:  Yes.

8                THE WITNESS:  I don't recall

9          very clearly about that.

10               THE COURT:  What are you

11         looking for?  Let me see if I can

12         help you.

13               MR. SPANO:  I'm looking for

14         Che-1, the exclusive agency

15         agreement.

16               MR. MEUNIER:  I have it.  It

17         was Jia-13.

18   BY MR. SPANO:

19         Q.    Could you please take a look

20   at this document, the sole agency

21   agreement, and let me know if it

22   refreshes your recollection regarding any

23   discussions you had with Oriental Trading

24   about their possibly distributing TTP's

Confidential - Subject to Further Confidentiality Review

1    drywall?

2           A.    I believe the agreement was

3    discussed with Jorge of Oriental Trading.

4           Q.    What were your discussions

5    with Jorge that led up to the signing of

6    this agreement?

7           A.    At the time Jorge came to

8    visit our plant, exaggerated on the fact

9    that he needed a big volume of our

10   product and asked to sign such an

11   agreement with us.  At the time, in order

12   to sell more product, we agreed on such

13   an agreement.  However, the precondition

14   for the effectiveness of this agreement

15   was that between November 2006 to --

16              THE INTERPRETER:  One

17         moment.

18              THE WITNESS: -- and February

19         2007, they had to purchase over

20         20,000 of gypsum board from us.

21         But in fact, during this period of

22         time, Oriental Trading did not

23         purchase any of our gypsum board.

24         And also, at the time Jorge took