Confidential - Subject to Further Confidentiality Review

1   of delivery.

2         Q.      Did TTP ship the drywall it

3   sold to TOV to New York?

4         A.      We did not make this

5   shipment arrangement.

6         Q.      Did TTP ship the drywall it

7   sold to TOV to any location in the USA?

8         A.      No.

9         Q.      Did TTP ever receive any

10  information regarding whether TOV resold

11  any of the drywall it purchased from TTP?

12        A.      No.

13        Q.      Did TOV indicate to TTP

14  where the drywall it was purchasing was

15  going to be used?

16        A.      No.

17        Q.      Did B America ever indicate

18  to TTP where the drywall it was

19  purchasing from TTP was going to be used?

20        A.      No.

21        Q.      Did TTP sell metal studs to

22  TOV?

23        A.      In my recollection, it was

24  showed -- it was sold to OEG after the

Confidential - Subject to Further Confidentiality Review

```
 1    change of name.  I'm not very sure about

 2    that.

 3         Q.    Okay.

 4               Assuming TTP sold the studs

 5    to OEG, what were the terms of those

 6    sales as they related to shipment?

 7         A.    It's also the term of FOB

 8    Chinese port.

 9         Q.    Did TTP ship any of the

10    metal studs it sold to OEG to any

11    location in the USA?

12         A.    No.

13         Q.    Did TG or TTP ever sell

14    metal studs to any other company that

15    indicated it was from the United States?

16         A.    Can you repeat it?

17               Any other company?  No.

18         Q.    Were all the metal studs

19    that TTP sold to OEG manufactured by

20    Jindun?

21         A.    Yes, as far as I can

22    remember.

23         Q.    And at the time that Jindun

24    manufactured the metal studs that TTP
```

Confidential - Subject to Further Confidentiality Review

1  sold to OEG, was it a subsidiary of --

2  was -- withdrawn.

3            In 2006 and 2007, was Jindun

4  a subsidiary of TG?

5       A.    What was Jindun?  I didn't

6  hear very clearly of the last part of the

7  translation.

8            THE INTERPRETER:  May the

9            interpreter repeat the

10           interpretation?

11           MR. SPANO:  Yes, please.

12           THE WITNESS:  I'm not very

13           sure about that.

14 BY MR. SPANO:

15       Q.    I'm showing you what was

16 marked earlier as Che Exhibit Number 18.

17           Do you recall answering

18 questions earlier about the drywall

19 samples sent to Mr. Bo Zhou, Bo Zhou?

20       A.    I remember that I did answer

21 this question earlier.

22       Q.    After TTP sent the samples

23 to Bo Zhou, did he buy any drywall?

24       A.    I don't recall he bought our

Confidential - Subject to Further Confidentiality Review

1    product.

2         Q.    Did TG or TTP ever send

3    drywall to any customer or potential

4    customer that didn't actually ask for it

5    beforehand?

6              MR. MEUNIER:  Objection to

7         form, Your Honor, unless it's made

8         clear that we're talking about

9         drywall samples.

10             MR. SPANO:  I misspoke.

11        That's what I meant to say.  I'll

12        ask again.

13             THE COURT:  All right.

14   BY MR. SPANO:

15        Q.    Regarding drywall samples

16   provided to customers, did TG or TTP ever

17   send them out to anyone who didn't ask

18   for them first?

19        A.    In my recollection, no.

20             MR. SPANO:  Tender the

21        witness, Your Honor.

22             THE COURT:  Any redirect,

23        Ervin?

24             MR. GONZALEZ:  Yes.

Confidential - Subject to Further Confidentiality Review

```
1        Briefly, Your Honor.  Hopefully

2    briefly.

3             THE WITNESS:  Can I take a

4    break?

5             THE COURT:  You need a break

6    or are you --

7             THE WITNESS:  How much

8    longer?

9             MR. GONZALEZ:  Short.

10            THE WITNESS:  My neck cannot

11   take it anymore.

12            MR. MEUNIER:  I will have a

13   little bit too, Judge.

14            THE WITNESS:  If you have

15   too many questions, you have to

16   wait.

17            VIDEOTAPE TECHNICIAN:  We're

18   going off the record at 5:27.

19                 -   -   -

20            (A recess was taken from

21   5:27 p.m. to 5:33 p.m.)

22                 -   -   -

23            VIDEOTAPE TECHNICIAN:  We're

24   back on the video record at 5:33.
```

Confidential - Subject to Further Confidentiality Review

```
 1                      -   -   -

 2                   EXAMINATION

 3                      -   -   -

 4    BY MR. GONZALEZ:

 5          Q.    Good afternoon, Mr. Che.

 6    I'm going to show you Exhibit Number 1 to

 7    your deposition, Che-1.

 8                Can you confirm for me that

 9    the sole agency agreement is dated

10    October 20, 2006?

11          A.    That's what appears on the

12    document.

13          Q.    I'm going to show you what's

14    been marked as Exhibit 28 in the Jia

15    deposition.  This is the document that

16    refers to the labels for the Oriental

17    Trade Company's drywall purchase from TTP

18    that were going to be labeled Dun

19    Distributors that you discussed with your

20    attorney.

21                And you recall that

22    discussion with your attorney about that

23    document.  Correct?

24          A.    We did.
```

Confidential - Subject to Further Confidentiality Review

1          Q.     The date of the e-mails

2   discussing the labels that are going to

3   be used for Oriental Trade Company's

4   drywall purchase from TTP is February of

5   2007.  Right, sir?

6          A.     It says February the 25th,

7   2007.

8          Q.     And that is about November,

9   December, January, February, March, five

10  months after the date of Exhibit Number

11  1, the sole agency agreement.  Correct?

12         A.     Can you repeat that?

13         Q.     Yes.

14         The date of the e-mail

15  discussing the labeling that's going to

16  go on the drywall that will be labeled

17  Dun Drywall for OTC that was manufactured

18  by TTP is five months after the date of

19  the exclusive agency agreement.  Correct?

20             MR. SPANO:  Objection to

21         form, lack of foundation.

22             THE COURT:  Well, the

23         document itself --

24             It seems to me the document

Confidential - Subject to Further Confidentiality Review

```
 1          speaks for itself, so it's

 2          pointing out that one's in

 3          November and one's in March.

 4                MR. GONZALEZ:  October and

 5          February, Your Honor.

 6                THE COURT:  I'm sorry,

 7          October and February.

 8                MR. GONZALEZ:  Yes, sir.

 9                THE COURT:  So I could take

10          judicial notice that it's five

11          months.

12                MR. GONZALEZ:  Yes, Your

13          Honor.  I'll move to my next

14          point.

15     BY MR. GONZALEZ:

16          Q.    I'm going to show you

17     exhibit to your deposition Che Number 2.

18     And I'm turning it to page 917 Bates

19     stamp number.

20                I heard you state when your

21     lawyer was questioning you that you were

22     not aware what states the drywall that

23     was being purchased by Oriental Trade

24     Corporation or OTC from your company was
```

Confidential - Subject to Further Confidentiality Review

```
 1    going to be shipped in the United States.
 2                   Is that what you said
 3    before?
 4           A.    I said I was not sure.  I
 5    did not verify.
 6           Q.    To be clear, I believe what
 7    you said was that you were not aware of
 8    receiving any information from OTC with
 9    respect to where they were going to be
10    sending the drywall purchased from TTP;
11    is that correct?  Is that what you said?
12                   MR. SPANO:  Objection.  It
13           mischaracterizes the testimony.
14                   THE COURT:  Let's ask him --
15                   You have the character -- he
16           says that you misstated it.  You
17           used a couple of words that he
18           didn't.  So I would sustain the
19           objection.
20    BY MR. GONZALEZ:
21           Q.    Sir, do you agree with me
22    that you received an e-mail from Oriental
23    Trade Corporation indicating that they
24    were going to be sending product, drywall
```

Confidential - Subject to Further Confidentiality Review

1    product, from TTP to numerous cities in

2    the United States of America?  And for

3    time reference, we're referring to the

4    e-mail from Ivan Gonima dated April the

5    15th, 2007.  That e-mail was directed to

6    you.  Right, sir?

7              MR. SPANO:  I object to the

8          mischaracterization of the

9          document and mixing that in with a

10         question that simply asked him

11         whether he received the e-mail.  I

12         think the e-mail speaks for

13         itself.  It doesn't say anything

14         about Oriental Trading sending

15         drywall anywhere.  It's simply a

16         request for freight quotes, which

17         we've spent --

18             THE COURT:  Wait, wait,

19         wait.  Just a moment.

20             MR. SPANO:  -- which we

21         spent a long time talking about.

22             THE COURT:  Wait.  I

23         understand your objection.

24             I'll overrule the objection.

Confidential - Subject to Further Confidentiality Review

```
 1              Let's go forward.

 2                   THE WITNESS:  Repeat it,

 3          please.

 4                   MR. GONZALEZ:  Can you read

 5          it back to him, please.

 6   BY MR. GONZALEZ:

 7          Q.     Do you agree with me that

 8   you received an e-mail from Oriental

 9   Trade Corporation indicating they were

10   going to be sending drywall product from

11   TTP to numerous cities in the United

12   States of America?  And for time

13   reference I'm referring to the e-mail

14   from Ivan Gonima dated April the 15th,

15   2007.

16          A.     I don't recall.

17          Q.     That's your name.  Right,

18   sir, Bill Cher, Che Gang?

19          A.     Yes.

20          Q.     Your memory was very good

21   when your lawyer was questioning you --

22                   THE COURT:  Wait.  Come on,

23          no comment.

24                   MR. SPANO:  I object to
```

Confidential - Subject to Further Confidentiality Review

```
 1          that.
 2                    THE COURT:  Yes.  I'll
 3          strike that.
 4                    MR. GONZALEZ:  I was going
 5          to ask about the preparation, Your
 6          Honor.  I will rephrase it.
 7                    THE COURT:  Rephrase it.
 8   BY MR. GONZALEZ:
 9          Q.    Was the reason that you were
10   able to recall dates and conversations
11   that happened in the past so clearly
12   during the examination you had with your
13   attorney because you reviewed the
14   documents last night with your lawyers?
15                    MR. SPANO:  Object to the
16          mischaracterization of the
17          testimony.
18                    THE COURT:  He's under
19          cross.  I'll allow it.
20                    THE WITNESS:  What do you
21          mean by that?
22   BY MR. GONZALEZ:
23          Q.    Did you last night go over
24   certain documents with your attorney to
```

Confidential - Subject to Further Confidentiality Review

```
 1    discuss your examination by your lawyer
 2    today?
 3                    MR. SPANO:  Object on
 4          privilege, Your Honor.
 5                    THE COURT:  He's not asking
 6          him what he discussed, just
 7          whether.  The privilege doesn't
 8          attach to that.  It's 501.
 9                    THE WITNESS:  What was your
10          question?
11                    MR. GONZALEZ:  May you read
12          it back, please?
13                    THE INTERPRETER:  Yes.
14                    THE WITNESS:  No.
15    BY MR. GONZALEZ:
16          Q.    All right, sir.
17          A.    I went to sleep.  Your
18    question is rather long -- rather long.
19    My brain is not really working right now.
20          Q.    Okay.  Maybe I can shorten
21    the questions.
22                    Paragraph number 2 of this
23    e-mail provided you and your company with
24    the following information with respect to
```

Confidential - Subject to Further Confidentiality Review

```
 1    OTC's intent on shipping product:
 2                    "Given that you are going to
 3    operate it I am going to need your actual
 4    ocean freight rates from Qingdao to
 5    different cities in the USA for a"
 6    40-foot "GP container.  Here is the list
 7    of cities I need so I can review my price
 8    lists," A through H, Gulfport,
 9    Mississippi; New Orleans, Louisiana; Long
10    Beach, California; Las Vegas, Nevada;
11    Savannah, Georgia; Atlanta, Georgia;
12    Charleston, South Carolina; Wilmington,
13    North Carolina and San Juan, Puerto Rico?
14         A.    You don't have to translate
15    that.  It's meaningless.
16         Q.    That was information that
17    was available to you with respect to the
18    cities that OTC was intending to send
19    product.  Correct?
20                    THE COURT:  Just a moment.
21                    MR. SPANO:  Object to the
22          first question.  Object to the
23          first question because it
24          contained a sidebar assertion of
```

Confidential - Subject to Further Confidentiality Review

1           Oriental Trading's intent that

2           appears nowhere in the document.

3           And object to the second question

4           because he asked the second

5           question before he had a chance to

6           answer the first question.

7                 MR. GONZALEZ:  The first

8           statement was not a question, it

9           was a preface to the question,

10          which was what he claims to be the

11          second question.  I prefaced it

12          with references to the e-mail, and

13          I asked a question with respect to

14          the e-mail.  So from an

15          evidentiary perspective, it would

16          be an infirm question had I not

17          properly set forth the predicate

18          for it.

19                THE COURT:  Let's first ask

20          him, did you receive this e-mail.

21   BY MR. GONZALEZ:

22          Q.    Sir, this e-mail indicates

23   that you received it.  Correct?

24          A.    Yes.

Confidential - Subject to Further Confidentiality Review

1          Q.    All right, sir.

2                And it indicates numerous

3    cities in the United States to where the

4    product is intended to be sent.  Correct?

5                MR. SPANO:  Objection.

6                Continued mischaracterization of

7                the document.  There's not a word

8                in that e-mail about Oriental's

9                intent.  There's not a word about

10               sending drywall anywhere.

11   BY MR. GONZALEZ:

12         Q.    Is that right, sir?

13               MR. GONZALEZ:  I'm sorry, we

14               need a ruling from the Court.

15               THE COURT:  I sustain the

16               objection.  He received the

17               e-mail.  Let's leave it at that.

18   BY MR. GONZALEZ:

19         Q.    Now, if you can turn the

20   page to 918.  This is an e-mail that you

21   sent to Mr. Gonima.  Correct?

22         A.    This one?

23         Q.    Yes.

24         A.    Yes.

Confidential - Subject to Further Confidentiality Review

1          Q.     And in it you state, "We

2     indeed operated and are operating with a

3     28-29ton containers to export our

4     products to America.  And we can show 26"

5     to 26 -- "26-26.5ton on the bill and

6     packing list.  The ocean freight from

7     Qingdao to Miami and New York

8     is...2950-3000/40GP.  If you need, I can

9     operate it for you."

10                MR. GONZALEZ:  He doesn't

11          need to answer.  Thank you.

12                THE COURT:  One thing.  Do

13          we need -- what's the witness's

14          standpoint?  He said something

15          about that he's overly tired.

16          We've been here since 8:30.  I

17          don't mind trying to finish him,

18          but if he can't testify, I don't

19          want to -- if you can take a break

20          and come back and finish him.

21                MR.  MEUNIER:  I have a

22          short amount of time.

23                THE COURT:  Well, I leave it

24          up to the witness.

Confidential - Subject to Further Confidentiality Review

1        MR. SPANO:  Can I have a

2    word with him?

3        THE COURT:  Sure.

4        MR. SPANO:  Because I'm

5    concerned about his ability to

6    think at this point.

7        THE COURT:  Right.

8        VIDEOTAPE TECHNICIAN:  Going

9    off the record, the time is 5:49.

10            -  -  -

11       (A recess was taken from

12   5:49 p.m. to 5:53 p.m.)

13            -  -  -

14       THE COURT:  What do you want

15   to do, Frank?

16       MR. SPANO:  Mr. Che will

17   continue, and he will let us know

18   if he can't finish.

19       THE COURT:  Ervin, are you

20   done?

21       MR. GONZALEZ:  Yes, thank

22   you.

23       VIDEOTAPE TECHNICIAN:  Go

24   back on the video record.  The

Confidential - Subject to Further Confidentiality Review

```
 1              time is 5:53.

 2                      -  -  -

 3                  EXAMINATION

 4                      -  -  -

 5   BY MR. MEUNIER:

 6          Q.    Mr. Che, your attorney put

 7   into the record Ivan Gonima's e-mail to

 8   you of August 30, 2006.  It's TG 575 and

 9   it's been marked as Che Defendant-1.

10              Do you have that in front of

11   you?

12              Please look at this e-mail,

13   Mr. Che, and in particular the second

14   paragraph.

15              Mr. Gonima states at the

16   beginning of that paragraph, "I have been

17   already contacting some big customers of

18   us in order to offer them your product

19   and there is a lot of interest" in "it."

20              In less than two months --

21              Less than two months after

22   you received that e-mail, TTP signed an

23   agreement certifying Oriental Trading as

24   the exclusive agent to sell TTP's Dun
```

Confidential - Subject to Further Confidentiality Review

```
 1    brand in the United States.  Correct?
 2            A.    We signed this agreement on
 3    October the 20th.
 4            Q.    And you signed that
 5    agreement in order to sell more product.
 6    Isn't that correct?
 7            A.    The first reason for signing
 8    of the agreement was because Jorge
 9    exaggerated on his demand.  It was based
10    on his strong request.  Then we thought
11    that we could actually sell more product.
12    And there was a precondition.  And under
13    that precondition, the agreement was
14    entered.
15            Q.    Yes, sir.
16                  But TTP signed this
17    agreement with Oriental Trading in order
18    to sell more product in the United States
19    of America.  Isn't that true?
20            A.    We signed the agreement not
21    because we cared where the customer would
22    sell our product to.  We only wanted them
23    to buy our product.  I never cared about
24    the destination of the customers.
```

Confidential - Subject to Further Confidentiality Review

1          Q.    But you signed the agreement

2    for an exclusive agency to sell in the

3    United States, and you did that in order

4    to sell more product.  True?

5          A.    To sell more product is

6    correct.  But to sell it in America was a

7    request of the customer.

8          Q.    You have indicated that

9    Oriental Trading did not fulfill the

10   agreement to purchase no less than 20,000

11   sheets or no less than a million sheets.

12              Do you remember that

13   testimony?

14         A.    I remember I said that in a

15   time -- in a certain time frame.

16         Q.    Why were those important

17   conditions of the agreement?

18         A.    Through the condition we

19   intend to prove that the customer

20   actually did not exaggerate his demand.

21   If the customer could reach such a

22   condition which tells us that he did not

23   exaggerate his demand, he could then

24   purchase our product.  This agreement can

Confidential - Subject to Further Confidentiality Review

```
 1    only come into force under such

 2    condition.  This is a very important

 3    precondition.  We have precondition for

 4    any contract with any customer.

 5            Q.    So the volume of sales was

 6    important in this agency agreement with

 7    OTC?

 8            A.    The precondition is very

 9    important.

10            Q.    Can you identify a single

11    document in writing where TTP advised

12    Oriental Trading that it was not in

13    compliance with the sole agency

14    agreement?

15            A.    I don't remember we notified

16    them like this in written form, because

17    the document, the document that was taken

18    away by Jorge in my memory.  And

19    according to the file of the company, we

20    had never received the originals

21    supposedly to be mailed back to us.

22    Therefore, we thought that Jorge did not

23    even agreed with this agreement.

24            Q.    To your knowledge, Mr. Che,
```

Confidential - Subject to Further Confidentiality Review

```
 1    has TTP or TG before your testimony today

 2    ever announced the position that this

 3    agreement with OTC was violated by OTC?

 4            A.    This document, except that

 5    Mr. Peng and I had reviewed it before

 6    that, before our testimonies.  Perhaps

 7    you have showed it to other people.  But

 8    before we testified, only Mr. Peng and I

 9    were aware of it.  Therefore, we don't

10    think that this agreement was valid.  So

11    we did not need to notify them for they

12    did not mail back us the originals.  I

13    think this is the basic trust issue.

14                  What happened?

15            Q.    I'm looking for the profile

16    form that you were shown by your lawyer.

17                  Mr. Che, your attorney

18    referred you to page 2 of Exhibit A to

19    the TTP profile form, item number 9, and

20    asked you to tell the Court what the

21    marking was on drywall purchased by

22    Oriental Trading.

23                  Do you remember that?

24            A.    Item 9.
```

Confidential - Subject to Further Confidentiality Review

```
1            Q.    Item 9 and --

2            A.    That's not what it is.

3            Q.    It's page 2 of Exhibit A.

4                  MR. MEUNIER:  Is it a

5      different page for the Chinese

6      version, Frank?

7                  THE WITNESS:  I don't see

8      it.

9                  MR. SPANO:  I didn't refer

10     him to that.  It's not Oriental

11     Trading.

12 BY MR. MEUNIER:

13           Q.    Do you recall your testimony

14     that the Taishan marking was on Oriental

15     Trading drywall?

16           A.    No.

17           Q.    It was not, was it?

18           A.    I don't remember I testified

19     on that.

20           Q.    The Oriental Trading drywall

21     is shown in items 234 and 236 through

22     243; is that correct?

23           A.    Can you repeat the number?

24           Q.    Number 234.
```

Confidential - Subject to Further Confidentiality Review

```
 1              A.     Yes.

 2              Q.     And number 236 through 243?

 3              A.     Yes.

 4              Q.     Those are the Oriental

 5      Trading drywall purchases.  Correct?

 6              A.     Yes.

 7              Q.     And all of those had the Dun

 8      design on the tape.  Correct?

 9              A.     We manufactured the product

10      according to the design of Oriental

11      Trading Company.  This is only a marked

12      product.

13              Q.     And you agreed in all of

14      those cases that Mr. Gonima's request to

15      put the colors of the American flag, red,

16      white and blue, on the tape.  Correct?

17                     MR. SPANO:  Objection, asked

18              and answered.

19      BY MR. MEUNIER:

20              Q.     Is that correct?

21                     THE COURT:  Over the

22              objection, I'll allow you to

23              answer it.

24                     THE WITNESS:  Can you repeat
```