**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL CASES AND | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE TAISHAN'S ERRATA SHEETS**

### I.      INTRODUCTION.

The recent jurisdictional depositions of the Taishan entities in Hong Kong have been a source of considerable difficulty and conflict. The Plaintiffs' Steering Committee ("PSC") does not need to detail all the efforts that went into taking jurisdiction depositions in Hong Kong during the week of January 9, 2012, as the Court has heard numerous motions, read briefs, conducted many status conferences and issued Orders setting forth much of the background. While Plaintiffs would like to believe that Taishan is genuinely participating in a process designed to facilitate the search for truth, it is increasingly clear that Taishan is and has been engaged in purposeful conduct designed to obstruct these proceedings and thwart the Federal Rules of Civil Procedure. Taishan, now blatantly, seeks to accomplish wholesale changes to the deposition testimony of its Rule 30(b)(6) witnesses and other witnesses inconsistent with Taishan's limited right to correct transcription errors. Plaintiffs respectfully submit that this type of insubordination should not be tolerated by the Court. Such gamesmanship warrants that the errata sheets be stricken and that sanctions be imposed.

## II.     FACTS.

### A.     Taishan Has Deliberately Thwarted These Proceedings.

Taishan has engaged in conduct designed to delay these proceedings since the very early stages of this litigation.  After being served with the complaint in *Germano v. Taishan Gypsum Co., Ltd.*, No. 09-6687, Taishan failed to enter an appearance and allowed itself to be held in preliminary default pursuant to an order dated November 20, 2009.  *See* document # 487.  After the entry of the preliminary default, Taishan failed to take any action and instead allowed the parties and the Court to engage in a time consuming and expensive proceedings to determine the appropriate damages with respect to the preliminary default.  Only after a full trial and after the proceedings were fully concluded and the Court issued a detailed Findings of Fact & Conclusions of Law regarding the problems caused by Taishan's Chinese drywall, remediation protocol for properties with Taishan's Chinese drywall, and a calculation of damages with respect to Taishan's Chinese drywall did Taishan enter an appearance in this litigation.

Taishan has continued to hinder these proceeding by, amongst other things, refusing to accept service of process.  Taishan has instead insisted that Plaintiffs serve all complaints consistent with the Hague Convention.  Taishan's insistence in this regard has delayed service of process by as much as a year and has caused the Plaintiffs' Steering Committee ("PSC") to incur hundreds of thousands of dollars in translation and other service costs.  Taishan's obstruction has continued in the realm of jurisdictional discovery which began in earnest in the fall of 2010.  Numerous status conferences, hearings, motions, and rulings have arisen in this discovery.

With respect to the jurisdictional depositions of Taishan, the difficulties are well documented and very familiar to the Court.  In April 2011, Rule 30(b)(6) depositions of Wenglong Peng, Tongchun Jia, and Jianchun Zhang were conducted in Hong Kong.  These depositions were the

2

subject of considerable conflict between counsel, witnesses, and interpreters, as well as translation problems and speaking objections, which made it impossible for the Court to use these depositions for purposes of determining the jurisdictional issues before the Court.  After hearing from the parties, the Court determined the first round of jurisdictional depositions were useless and ordered a second round of depositions to obtain appropriate jurisdictional discovery from Taishan.  The Court specifically addressed the depositions in the June 9, 2011 status conference where it stated: "The parties proceeded to Hong Kong to take the depositions.  As I mentioned at the last conference, I had an opportunity to look over the transcripts of the depositions, and I didn't feel that the transcripts were helpful to either side....  I didn't feel that the discovery that was taken was of help to me.  I got to know the interpreters a lot.  I understood their conflicts and their discussions and all of the complaints about dialect and things of that sort, which were interesting.  I heard from the lawyers.  The colloquy of the lawyers went on and on.  Every once in a while I got a sentence that was helpful to me.  I put those sentences together and it barely made a page of the thousand or so pages of the depositions.  It was in between, and it was almost like finding a pearl in a sack of oysters.  I had to root and root and root, and then it was so small that I couldn't do anything with it.  So, unfortunately, I see no alternative but to take another look at this."

The Court summed it up at the May 26, 2011 status conference when it stated: "the depositions that are taken are no help to me in that.  It's just a blank hole.  I mean, you've taken depositions but the depositions were of no value."

In order to prevent the same sort of problems that occurred in the first round of jurisdictional depositions, the Court appointed a 706 expert, *see* document # 11533, and the Honorable Eldon E. Fallon took the extraordinary measure of traveling to Hong Kong to preside over the depositions so

all objections could be immediately ruled upon.[1]

The second round of jurisdictional depositions commenced on January 9, 2012 in Hong Kong. The transcripts of these depositions are attached hereto as Exhibits "A" (Tongchun Jia deposition from January 9, 2012); "B" (Tongchun Jia deposition from January 10, 2012); "C" (Tinghuan Fu deposition from January 10, 2012); "D"[2] (Shiliang Peng deposition from January 11, 2012); "E" (Gang Che deposition from January 11, 2012); "F" (Gang Che deposition from January 12, 2012); and "G" (Wenlong Peng deposition from January 13, 2012). On March 15, 2012, following the conclusion of these depositions and after requesting additional time, Taishan submitted errata sheets for each of these depositions which seek to alter the meaning of much of the deposition testimony. Copies of the March 15, 2012 cover letter from Courtney Colligan and the errata sheets are attached hereto as Exhibit "H". These errata sheets go far beyond correcting transcription errors, are improper, and should be stricken by the Court.

### B. Taishan is Attempting to Substantively Alter The Deposition Testimony of Its Witnesses.

There are several instances where Taishan has attempted to substantively change its deposition testimony. For the convenience of the Court, Plaintiffs are providing several examples of Taishan's efforts to substantively alter the deposition testimony of its witnesses.

Taishan has attempted to make several substantive changes to the testimony of Jia Tongchun. Perhaps one of the more egregious examples of Taishan's attempt to alter Mr. Jia's testimony is its effot to alter his answer from a "no" to a "yes" (proposed change to testimony at page 612:18-19)

---

[1] The Court is in a very unique position to rule on the present motion since the presiding judge was present during the depositions and can rule on the credibility of the witnesses.

[2] Pages 99:5-111:15 have been redacted and are being submitted under seal pursuant to the Confidentiality Order as Exhibit "I" with this motion.

in response to the question about whether BNBM competes with Taishan for the sale of drywall. Mr. Jia's answer of "no" to this question supports Plaintiffs' argument that BNBM and Taishan are a single enterprise for purposes of piercing the corporate veil and attributing Taishan's jurisdictional contacts to BNBM. Had the deponent answered "yes" at the deposition, the Questioners would have furthered explored the witness's response and the topic that was the subject of questioning.

Taishan similarly attempts to alter Mr. Jia's testimony concerning the relationship between Taishan and TTP. In a portion of Mr. Jia's deposition discussing the staffing of TTP with Taishan employees, Mr. Jia testified that, "They personally agreed to work for TTP, as the board of directors hired them to work for TTP, and as a big shareholder, also agreed for them to work for TTP." *See* deposition of Jia Tongchun at pg. 844:5-9. Taishan now seeks to change this testimony to, "They made a personal decision and agreed to work for TTP. The board of directors of TTP decided to recruit them. As a large shareholder, I also supported them to work for TTP." Taishan's attempt to change this testimony in this manner is a clear effort to minimize its role in the staffing decisions of TTP. The original testimony clearly supports Plaintiffs' argument that Taishan and TTP are one and the same for purposes of piercing the corporate veil and evaluating jurisdictional contacts. This testimony is also inconsistent with Mr. Jia's subsequent testimony that his reference to "a big shareholder" refers to Taishan. *Id*. at 844:10-12. Again, had the witness answered as Taishan now wants the transcript to read, further questioning likely would have taken place.

Similarly, Taishan attempts to change Gang Che's testimony at four separate points (pages 21:20; 22:3; 28:11-12; and 28:17) regarding his move from Taishan to TTP. Again, the reason Taishan is seeking to change this testimony is to make it sounds as though Mr. Che made an independent decision to leave Taishan and to join TTP when the original testimony supported a finding that Taishan directed the change.

5

Taishan has also sought to substantively change Mr. Che's testimony concerning Taishan's efforts to market drywall to customers in the United States. There are several examples of where Taishan attempts to change Mr. Che's testimony in order to make it sound as though his marketing to customers in the United States was in accordance with uniform policies as opposed to being part of a deliberate decision by Taishan to direct business activities toward the United States. *See* Taishan's proposed changes to Mr. Che's testimony at pgs. 312:3-4; 323:10; 330:4-5.

Other egregious examples of where Taishan attempts to substantively alter the testimony of its witnesses include its attempt to change the January 10, 2012 testimony of Tinghuan Fu at pages 30:3; 34:9-15; 82:6; 115:10; and to change the January 11, 2012 testimony of Shiliang Peng at pages 70:14-17; 71:17-7; 106:9-107-10; and 108:20-109:1.[3]

### III.   ARGUMENT.

Taishan's errata sheets are just another attempt by Taishan to delay and otherwise thwart these proceedings. Plaintiffs have already traveled to Hong Kong on two occasions for the purpose of conducting jurisdictional depositions. If the changes that Taishan seeks to accomplish are allowed by the Court, a third round of jurisdictional depositions will be required since Plaintiffs will need to question the witnesses about the basis for the changes set forth in the errata sheets. Taishan is clearly seeking to substantively change its testimony in order to try to strengthen its litigation position after being questioned under oath with a 706 expert interpreter and the presiding judge overseeing the deposition. This should not be tolerated by the Court. *See Riley v. Ford Motor Co.*, 2011 WL 3157204, * 4 (S.D. Miss. July 26, 2011) (granting motion to strike certain errata changes

---

[3]  Plaintiffs have appending hereto correspondence from Taishan's counsel dated March 15, 2012 (Exhibit "H") attaching Errata Sheets for each of the five (5) deponents. The Errata Sheets reflect the changes requested by Taishan, as well as the purported reason. The PSC takes serious issue with the validity and purpose asserted by Taishan for the requested changes.

where changes appeared to be made for the purposes of strengthening opposition to motion to exclude certain expert testimony). Accordingly, the errata sheets should be stricken and sanctions should be imposed by the Court.

Although Fed. R. Civ. Proc. 30(e) allows a deponent to substantively change answers in a deposition, courts have restricted deponents from abusing the rule as a means of accomplishing extraordinary changes to their testimony. Rule 30(e) provides:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are <u>changes in form or substance</u>, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

FED. R. CIV. PROC. 30(e) (emphasis supplied).

In refusing to allow a deponent to change a "no" answer to a "yes" answer after a deposition, one district court reasoned:

> The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. <u>A deposition is not a take home exam.</u>

*Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) (emphasis supplied).[4]

The *Greenway* Court stated that the obvious purpose of Rule 30(e) was to correct typographical or transcriptional errors. *Id*. at 323. Other courts have followed this narrow reading

---

[4] *See Greenway*, 144 F.R.D. at 325 ("The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order.").

of Rule 30(e).  *See, e.g., Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224-25 (9th Cir. 2005) ("Rule 30(e) is to be used for corrective, and not contradictory, changes."); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) ("A change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription . . . .").[5]

Plaintiffs submit that this Court should follow this authority.  Taishan is seeking to modify the testimony of witnesses, many of whom are being held out as corporate representatives.  This status conveys that these witnesses have authority to bind Taishan in the area of inquiry in the Rule 30(b)(6) Notice.  Taishan should not be allowed to substantively alter the testimony of its witnesses merely because it is displeased after the deposition with the substance of their testimony.

Admittedly, this Court has discretion to interpret Rule 30(e) to allow substantive changes.  *See Reilly v. TXU Corp.*, 230 F.R.D. 486 (N.D. Tex. 2005).  However, allowing substantive changes comes with the remedies: (1) the deposition and the errata sheet are admissible at trial; and (2) the deponent must submit to a second deposition.  *Id*. at 491.  This is especially true where the changes materially alter the position of a party.  *Id*.

Magistrate Judge Joseph C. Wilkinson, Jr., of the Eastern District of Louisiana, recently imposed sanctions where a party sought to make these same type of "obnoxiously contradictory" changes to a Rule 30(b)(6) witness' earlier testimony.  *See Bolden, et. al. Federal Emergency Management Agency*, No. 06-4171 (E.D.La., Feb. 7, 2008) (ordering that original deposition and

---

[5] *See also Riley*, 2011 WL 3157204, * 4 (granting motion to strike certain errata changes where explanations for the changes were insufficient and changes appeared to be made for the purposes of strengthening opposition to motion to exclude expert testimony).

errata be filed into the record, that these materials be compared by the factfinder at trial and used for impeachment, and that FEMA must pay all expenses in connection with any further deposition of the Rule 30(b)(6) witness), attached hereto as Exhibit "J".

Plaintiffs submit that if the Court decides not to strike the errata sheets, then it should order that the depositions and the errata sheets come into evidence and order that Taishan produce each of the witnesses for additional depositions in New Orleans, all at Taishan's expense, and further that the Questioners be reimbursed for all expenses.

In the event this Court orders additional depositions of Taishan's 30(b)(6) witnesses, Plaintiffs do not want to encounter a situation where Taishan asserts attorney client privilege concerning the changed answers in the errata sheets. Taishan and its counsel should be ordered to immediately turn over to the PSC all documents and communications that have occurred by and between one another and any others since the taking of each of the Hong Kong depositions. The PSC is entitled to discover whatever communications took place between the Taishan entities (including its witnesses) and others that has led up to the proposed changes made in the Errata Sheets. If the changes in deposition testimony was discussed and/or caused, in any part, by communications with any attorney who represents Taishan, then all such communications should be discoverable and disclosed at this time.

This situation is analogous to when an attorney tries to coach a witness during a deposition. This type of conduct is not acceptable:

> A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness formulate answers. The witness comes to a deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness – not the lawyer

– who is a witness.

*Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993).

Finally, Plaintiffs request that the court set a hearing for the purpose of imposing additional sanctions, including awarding attorneys fees and costs for all of the time and efforts necessary to bring this motion, as well as any prior motion due to the disruptive conduct and delays caused by Taishan's actions.  Taishan's conduct was the sole reason for the filing of this motion.  Taishan has provided no meaningful reasons for its proposed changes to the deposition testimony.

## IV.   CONCLUSION.

For the reasons set forth in detail above, Plaintiffs respectfully request that the instant motion to strike Taishan's errata sheets be granted.

Respectfully submitted,

Dated: March 21, 2012

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
 Matthews, Martinez, Gonzales,
 Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
Daniel@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
119 Washington Avenue
Suite 402
Miami Beach, FL 33139
victor@diazpartners.com


## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com