# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

1. **Parties.**

The Parties to this Confidential Settlement Agreement and Release ("Settlement Agreement") are:

   a. USG Corporation and L&W Supply Corporation, including all of their past, present, and future parents, subsidiaries, affiliates, controlling persons, officers, directors, employees, agents, servants, counsel, predecessors, successors, and assigns (collectively "**L&W**"), and

   b. Knauf Plasterboard (Tianjin) Co., Ltd. ("**KPT**"), Knauf Plasterboard (Wuhu) Co. Ltd., Knauf Plasterboard (Dongguan) Co, Ltd., Guandong Knauf New Building Material Product Co. Ltd., Knauf International GmbH, Knauf Insulation GmbH (referred to in MDL 2047 as Knauf Insulation USA), Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft, PT.Knauf Gypsum Indonesia, and Knauf Gips KG (collectively "**Knauf**").

2. **Summary.**

   a. This Settlement Agreement sets forth the Parties' rights and obligations with regard to the resolution of certain claims arising from KPT Drywall (as defined below). Claims have been asserted against L&W in connection with KPT Drywall sold by L&W and installed in Homes in the Florida region. L&W has, in turn, asserted claims against Knauf, the manufacturer, seeking indemnification and reimbursement for the claims brought against L&W. Knauf and L&W have agreed that certain claims against L&W related to KPT Drywall will be resolved pursuant to the terms and conditions



herein and that the maximum contribution of L&W per Home toward the resolution of these claims will be $7.00 per square foot Under Air (as defined below).

b. Defined terms used in this Settlement Agreement:

   i. **"KPT Drywall"** means drywall manufactured by Knauf Plasterboard (Tianjin) Co., Ltd.

   ii. **"KPT Drywall Claims"** means all claims asserted, now or in the future, whether or not in litigation, against L&W for KPT Drywall sold by L&W and installed in Homes or for which L&W is otherwise alleged to be liable. KPT Drywall Claims includes claims for damages, compensatory and/or punitive and/or other, contribution or indemnity, penalties, costs, expenses, attorneys' fees, and interest, pre-judgment and/or post-judgment, injunctive relief, and any other request for relief in connection with KPT Drywall.

   iii. **"Homes"** refers both to residences and to any other structures, including commercial buildings, where KPT Drywall is or was installed.

   iv. **"Under Air"** refers to the under air area of a Home as determined by Moss & Associates LLC, Flexible Builders, Inc., or other responsible contractor pursuant to the methodology set forth in the Demonstration Remediation Agreement.

   v. **"Demonstration Remediation Agreement"** refers to the separate "Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall," which was entered on or around October 15, 2010, in *In re Chinese Manufactured Drywall Products Liability Litigation, MDL No. 2047.*

   vi. **"Class Settlement"** refers to any settlement that involves a class of claimants and that includes KPT Drywall Claims or claims relating to KPT Drywall, including without limitation any settlement of a class that includes KPT Drywall Claims in the multi-district litigation *In re Chinese Manufactured Drywall Products Liability Litigation, MDL No. 2047*, or any other federal or state court litigation involving a class that includes KPT Drywall Claims.

c. By entering into this Settlement Agreement, neither L&W nor Knauf make any admission of liability of any kind, and both L&W and Knauf hereby expressly deny any fault or liability to each other or to any other person or entity other than as set forth in this Settlement Agreement. The parties are entering this Settlement



Agreement solely to avoid the uncertainty, burden, and expense of further litigation regarding the specific claims that are the subject of this settlement agreement.

d. It is not the intent of the Parties that this Settlement Agreement applies to claims arising from Homes that contain defective Chinese drywall other than KPT Drywall; therefore, the parties agree that the allocation of responsibility for claims arising from such Homes can be renegotiated (on a Home by Home basis) if the demolition process on such a Home demonstrates the presence of defective Chinese drywall other than KPT Drywall.

3. **Homes Covered by the Demonstration Remediation Agreement.**

KPT Drywall Claims relating to Homes that are remediated pursuant to the Demonstration Remediation Agreement shall be subject to the terms of that agreement. L&W shall be considered an Other Participating Company under the Demonstration Remediation Agreement. As provided by the terms of the Demonstration Remediation Agreement, the Parties shall execute a Confidential Settlement Agreement and Release, attached as Exhibit [1] to this Settlement Agreement. L&W's contribution, as provided in section 1 of that Confidential Settlement Agreement and Release (Exhibit [1]), shall be limited to $7.00 per square foot Under Air per Home and only for those Homes where the KPT Drywall was sold by L&W and installed in that Home.

4. **Homes Covered by a Class Settlement.**

For those KPT Drywall Claims that are resolved through a Class Settlement, if any, Knauf agrees that L&W's sole obligation for all such claims shall be $7.00 per square foot Under Air for each Home that relates to a KPT Drywall Claim that is resolved through a Class



Settlement.[1] L&W's contribution of $7.00 per square foot Under Air shall be limited to those Homes where the KPT Drywall was sold by L&W and installed in that Home. Knauf will hold harmless L&W from all class or plaintiffs' counsels' legal fees, all costs of implementing or administering any Class Settlement, including but not limited to escrow costs, costs associated with providing notice of a Class Settlement, costs associated with investigating, verifying, or processing claims, incentive payments to representative plaintiffs, costs associated with obtaining certification of the settlement class and any appeals related to the class certification (including any attorneys' fees or costs related thereto), costs associated with any future injunctive and/or declaratory relief (including any attorneys' fees or costs related thereto), and costs associated with the creation of, or any loss in value, of any Class Settlement fund. Knauf will use its best efforts to incorporate a release of L&W from all bodily injury claims in any Class Settlement.[2] For each Home that relates to KPT Drywall Claims resolved through a Class Settlement, L&W will be obligated to make the $7.00 per square foot Under Air payment to Knauf within ten (10) days of the later of a) receipt of a written release of L&W from the KPT Drywall Claim for which payment is sought; and b) adequate documentation of the square footage Under Air. All KPT Drywall Claims not resolved through a Class Settlement (e.g. opt-outs) or under sections 3, 5, 6, or 7 of this Settlement Agreement will be resolved pursuant to Section 8 of this Settlement Agreement.

---

[1] The parties agree that they may mutually determine at a later date to utilize cash payments, instead of funding remediations, to resolve KPT Drywall Claims as part of a Class Settlement. Regardless of the consideration paid to resolve KPT Drywall Claims under a Class Settlement, whether a cash payment, funding a remediation, or otherwise, L&W's sole and total obligation to resolve KPT Drywall Claims under a Class Settlement shall be $7.00 per square foot Under Air for those Homes where the KPT Drywall was sold by L&W and installed in the Home.

[2] As used throughout this Settlement Agreement, "bodily injury" claims includes claims for medical monitoring.



5. **Other Remediated Homes.**[3]

There may be some claimants who do not agree to resolution of their KPT Drywall Claims under the Demonstration Remediation Agreement or Class Settlement, if any, but who do agree to resolve their KPT Drywall Claims through remediation of the Home. For those claimants (with the exception of the Homes listed in section 6, below), the Parties agree to the following:

    a. Knauf will be given an opportunity to inspect the Home prior to contracting for remediation of the Home and obtain a remediation estimate from Moss & Associates, LLC. or other responsible contractor(s).

    b. L&W may also obtain remediation estimate(s) from other responsible contractors, including Flexible Builders, Inc.

    c. The lowest responsible estimate will be accepted by Knauf, in its reasonable judgment, and the KPT Drywall Claims will be resolved by Knauf using its best efforts in a timely fashion, with all remediation costs and all other payments necessary to resolve the claims to be paid by Knauf. L&W will pay Knauf $7.00 per square foot Under Air upon the completion of the remediation of the Home and the presentation to L&W of the release as described in subsection d, below. The Parties agree that L&W's maximum contribution will be a total of $7.00 per square foot Under Air per Home and only for those Homes where the KPT Drywall was sold by L&W and installed in that Home.

    d. Knauf will obtain a release in favor of L&W from the claimant(s) relating to the remediated Home and will use Knauf's best efforts to include a release of bodily injury claims. The parties agree that Knauf's inability to obtain a release of bodily injury claims in no way extinguishes or modifies any rights or obligations granted or created in this Settlement Agreement. To the extent it can be reasonably obtained, the release will also include any and all persons or entities who furnished services for, or in any way facilitated or assisted in, the installation of drywall in the Home, including without limitation, any actual or potential defendants, including but not limited to, contractors, builders, suppliers, designers, real estate agents, hangers, and/or consultants.

    e. In exchange for the contribution as set forth in 5(c) and the other obligations set forth in this section, for the Homes remediated pursuant to this section 5, Knauf agrees to defend, indemnify and hold harmless L&W for all KPT Drywall Claims, including but not limited to

---

[3] Nothing in Section 5 is intended to alter or impact any bar order and accompanying judgment in any Class Settlement.



claims for plaintiffs' or claimants' attorneys' fees, but not including bodily injury claims. The Parties reserve their rights with regard to bodily injury claims.

      f.     Upon the completion of the remediation of the Home and the performance of all of Knauf's obligations under this section 5, L&W shall release Knauf from the KPT Drywall Claims relating to that Home with the exception of (i) bodily injury claims, or claims relating to bodily injury, and (ii) Knauf's obligations to defend, indemnify, and hold harmless.

**6.    Miscellaneous Homes.**

For the Homes identified below, the Parties agree that L&W may, but is not obligated to, arrange for remediation of those Homes by a responsible contractor, such as Flexible Builders, Inc. L&W will obtain a release of property damage claims against L&W and Knauf relating to KPT Drywall in the remediated Home, and L&W will use its best efforts to obtain a release of bodily injury claims. To the extent it can be reasonably obtained, the release will include any and all persons or entities who furnished services for, or in any way facilitated or assisted in, the installation of drywall in the Home, including without limitation, any actual or potential defendants, including but not limited to, contractors, builders, suppliers, designers, real estate agents, hangers, and/or consultants. Within thirty (30) days of completion of the remediation and payment by L&W of the remediation expenses and other costs associated with resolving the KPT Drywall Claim (excluding L&W's attorneys' fees), Knauf shall reimburse L&W for all such costs less $7.00 per square foot Under Air. Remediation estimates for these Homes are indicated in Exhibit [2] attached hereto. The Homes covered by this section are as follows and include those Homes that from time to time the Parties may agree in writing to add:

    a.    8706 Fort Socrum Village, Lakeland, FL
    b.    8770 Fort Socrum Village, Lakeland, FL
    c.    3153 Fort Socrum Village, Lakeland, FL
    d.    12490 SE 105th Ct., Belleview, FL
    e.    1448 Casey Avenue, Sebring, FL
    f.    161 Palm Avenue, Boca Grande, FL
    g.    9928 SW 56th Court, Ocala, FL



  h. 1831 Crayton Road, Naples, FL
  i. 8714 Fort Socrum Village, Lakeland, FL
  j. 3009 Fort Socrum Village, Lakeland, FL

In exchange for the $7.00 per square foot contribution described above and other obligations set forth in this section, for the Homes remediated pursuant to this section 6, Knauf agrees to defend, indemnify, and hold harmless L&W for all KPT Drywall Claims relating to those Homes, including claims for plaintiffs' or claimants' attorneys' fees, where applicable, but not including bodily injury claims. The Parties reserve their rights with regard to bodily injury claims. Upon the completion of the remediation of the Home and the performance of all of their obligations hereunder, L&W shall release Knauf from the KPT Drywall Claims relating to that Home with the exception of i) bodily injury claims, or claims relating to bodily injury and ii) Knauf's obligations to defend, indemnify, and hold harmless.

7. **Cash Settlements.**[4]

There may be some claimants with KPT Drywall Claims who do not agree to resolution of their claims under the Demonstration Remediation Agreement, or under the terms of sections 5 or 6 above, but who do agree to resolve their claims through a cash settlement. In such a situation, the Parties agree to the following:

  a. Knauf will negotiate and pay for the resolution of the KPT Drywall Claims related to such a Home.

  b. Knauf will obtain a release in favor of L&W from the claimant(s) and will use Knauf's best efforts to include a release of bodily injury claims. The parties agree that Knauf's inability to obtain a release of bodily injury claims in no way extinguishes or modifies any rights or obligations granted or created in this Settlement Agreement. To the extent it can be reasonably obtained, the release will also include any and all persons or entities who furnished services for, or in any way facilitated or assisted in, the installation of drywall in the Home,

---

[4] Nothing in Section 7 is intended to alter or impact any bar order and accompanying judgment in any Class Settlement.

including without limitation, any actual or potential defendants, including but not limited to, contractors, builders, suppliers, designers, real estate agents, hangers, and/or consultants.

   c. Upon presentation to L&W of the release as set forth in 7(b) above, L&W will pay Knauf $7.00 per square foot Under Air for the Home and release Knauf from the KPT Drywall Claims relating to that Home with the exception of (i) bodily injury claims, or claims relating to bodily injury, and (ii) Knauf's obligations to defend, indemnify, and hold harmless.

   d. In exchange for the contribution as set forth in 7(c) above and the other obligations set forth in this section, for the Homes resolved pursuant to this section 7, Knauf agrees to defend, indemnify and hold harmless L&W from any and all KPT Drywall Claims related to such a Home, whether from the current or future owners of the Home or any other party, including but not limited to claims for plaintiffs' or claimants' attorneys' fees, but not including bodily injury claims. The Parties reserve their rights with regard to bodily injury claims.

### 8. All Other KPT Drywall Claims.

There may be KPT Drywall Claims that are not resolved as provided under sections 3 through 7 of this Settlement Agreement, including, by way of example only, Class Settlement opt-outs, cross-claims, claims for attorneys' fees, claims for indemnification or contribution, or claims for damages in excess of the costs of remediation of the Home (collectively "All Other KPT Drywall Claims"). For All Other KPT Drywall Claims, upon L&W's written notice to Knauf of the claim(s), Knauf shall have the right and obligation to resolve such claims(s) and shall defend, indemnify, and hold harmless L&W for all such claims, including claims for plaintiffs' or claimants' attorneys' fees, but not including bodily injury claims. The Parties reserve their rights with regard to bodily injury claims. In exchange for Knauf's defense, indemnification, and hold harmless agreement, L&W will pay Knauf $7.00 per square foot Under Air for each Home that relates to the All Other KPT Drywall Claims at issue, except that L&W is not required to make an additional such payment for Homes where L&W's payment or contribution of $7.00 per square foot is already provided for in sections 4 through 7 of this Settlement Agreement, or for any other Homes that have already been remediated or are in the



process of remediation at the time of execution of this Settlement Agreement. L&W will make the required payment to Knauf within ten (10) days of the later of a) receipt of a written release of L&W from the All Other KPT Drywall Claim relating to that Home; and b) adequate documentation of the square footage Under Air. The Parties agree that, in any event, L&W's maximum contribution will be a total of $7.00 per square foot Under Air per Home to resolve KPT Drywall Claims and All Other KPT Drywall Claims.

9.  **Confidentiality.**

The Parties and their counsel, and every person employed or retained by them who has knowledge of any term of this Settlement Agreement, ("Restricted Persons"), shall keep strictly confidential and agree not to disclose to any other person or entity the specific terms of the Settlement Agreement, or any amount received by any owner of a remediated Home, or the amounts of money offered, demanded or discussed during the course of settlement negotiations regarding this Settlement Agreement (collectively, the "Confidential Information"), except as (a) required by law or court order, (b) necessary to enforce the terms of this Settlement Agreement, (c) required by public financial reporting obligations, or (d) necessary to obtain tax, legal, financial, or accounting advice or services, but such service providers shall, at the outset, be advised of this confidentiality obligation, and parties agree to disclose only that information that is absolutely necessary to receiving that tax, legal, financial, or accounting advice or service. The Parties further agree that the Confidential Information may be shared with their insurers as necessary in order to make claims or assert rights under their respective insurance policies, or as required by those policies; however, such insurers shall also be advised of this confidentiality obligation.



Except as permitted in the preceding paragraph, no Restricted Person shall offer in evidence in any civil, criminal, administrative or other action or proceeding, or otherwise publicly refer to any of the Confidential Information other than as may be necessary to consummate or enforce this Settlement Agreement. If the subject of such Confidential Information should arise in any legal proceedings, other than a proceeding to consummate or enforce this Settlement Agreement, the Restricted Persons will, to the extent possible, give the Parties notice and an opportunity to intervene and oppose, file under seal any documents disclosing the Confidential Information, and take all reasonable measures to ensure that it is kept confidential and that any disclosure thereof takes place *in camera.*

10. **Binding Effect.**

This Settlement Agreement shall be binding upon and shall inure to the benefit of the parties, their respective heirs, beneficiaries, personal representatives, successors, and assigns.

11. **Waiver.**

No waiver of any right of any of the Parties under this Settlement Agreement shall be effective unless such waiver is in writing and executed by such party and notice thereof is given to all other Parties.

12. **Further Assurances.**

Each of the Parties agrees to execute such further and additional documents, instruments, and writings as may be necessary, proper, required, desirable, or convenient for the purpose of fully effectuating the terms and provisions of this Settlement Agreement.



### 13. Severability.

If any portion or portions of this Agreement may be held by a court of competent jurisdiction to conflict with any federal, state, or local law, and as a result such portion or portions are declared to be invalid and of no force or effect in such jurisdiction, all remaining provisions of this Agreement shall otherwise remain in full force and effect and be construed as if such invalid portion or portions had not been included herein, unless such portion or portions are essential to this Agreement.

### 14. Capacity and Authority.

All parties entering into this Settlement Agreement have the capacity and authority to do so, and no third party has any rights which could affect the validity or legality of this Settlement Agreement.

### 15. Terms of Agreement Negotiated.

This Settlement Agreement has been negotiated and drafted by the Parties and their representatives. The parties to this Settlement Agreement represent and warrant that they have read and understand this Settlement Agreement and have had an opportunity to consult with their respective counsel concerning its legal effect. No rule of construction shall apply to this Settlement Agreement construing its provisions in favor of or against any Party.

### 16. Execution in Counterparts.

This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The

terms of this Settlement Agreement shall be effective only upon full execution of Settlement Agreement by the Parties.

### 17. Amendment or Modification.

This Settlement Agreement may be amended or modified only by a written instrument signed by all Parties.

### 18. Choice of Law.

The validity, construction, and interpretation of this Settlement Agreement, including all exhibits to the Settlement Agreement, shall be governed by the substantive laws of the State of Florida. The validity, construction, and interpretation of the Demonstration Remediation Agreement shall be governed by the choice of law provision, Section K, of the Demonstration Remediation Agreement.

### 19. Enforcement of this Settlement Agreement.

Knauf Plasterboard (Tianjin) Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH (referred to in MDL 2047 as Knauf Insulation USA), and Knauf Gips KG, and their respective successors and assigns, if any, consent to the jurisdiction of the United States District Court for the Eastern District of Louisiana, for any dispute arising from or relating to this Settlement Agreement. In the event that such court lacks subject matter jurisdiction or refuses or declines jurisdiction, each of the entities identified above consents to the jurisdiction of the United States District Court for the Southern District of Florida. All other jurisdictional defenses are reserved by Knauf and nothing in this Settlement Agreement is intended to prejudice the assertion in any forum against any party of those jurisdictional defenses, arguments, or rights.

20. **Exclusion of Lennar Homes.**

This Settlement Agreement does not apply to KPT Drywall Claims relating to those Homes that are a) the subject of the lawsuit filed by Lennar Homes, LLC, captioned *Lennar Homes, LLC v. Knauf Gips KG, et al.*, Case No. 09-07901 CA 42, in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida, and b) not resolved pursuant to sections 3 through 8 of this Settlement Agreement.

21. **Knauf's Indemnification, Defense, and Hold Harmless.**

References in sections 4, 5, 6, 7, and 8 of this Settlement Agreement to Knauf's obligation to indemnify, defend, and hold harmless L&W with regard to KPT Drywall Claims and All Other KPT Drywall Claims shall include the rights and obligations set forth in this section.

L&W shall cooperate in the defense of any claim for which indemnification is sought under this Settlement Agreement. Although Knauf shall have control of the defense of any action for which indemnification is sought, Knauf agrees to comply with the following requirements in connection with the conduct of the defense of any claim in which L&W has been named a party: (a) Knauf shall choose defense counsel that is satisfactory to L&W, in its reasonable judgment; (b) Knauf shall provide L&W with copies of all substantive pleadings prior to their filing and L&W shall be given the opportunity to provide comments to any such pleadings; (c) Knauf shall use all reasonable efforts to promptly provide L&W with copies of all discovery requests relating to L&W as soon as they are available to Knauf; (d) Knauf or its representatives will keep L&W informed of all material information pertaining to a claim; (e) Knauf shall inform L&W of the date of any mediation, arbitration, trial or settlement conference as soon as possible after it



receives such information; and (f) Knauf shall inform L&W of the outcome of any mediation, arbitration, motion, trial or settlement or any other matter from which appeal rights could arise.

L&W shall have the right, but not the obligation, to participate as it deems necessary in the handling, adjustment, or defense of any claim. If the claim is for property damage only and L&W reasonably determines that a defense or defenses are available to L&W that would create a conflict of interest for the counsel defending the claim, then L&W will be entitled to retain separate counsel of its choice at Knauf's expense. If the claim is for both property damage and bodily injury (about which the parties have reserved their rights), then L&W will be entitled to retain separate counsel of its choice whose fees will be allocated between the property damage claim(s) defense, which shall be Knauf's expense, and the bodily injury claim(s) defense, which shall be L&W's expense.

Knauf shall not enter into any settlement or compromise of the claim that would result in the admission of any liability by L&W, any financial liability on the part of L&W, or would subject L&W to injunctive relief without first obtaining L&W's prior written consent from a L&W authorized agent.

Should Knauf fail to assume its obligations hereunder within fourteen (14) days after notice from L&W of a KPT Drywall Claim for which indemnification and defense is sought, including its obligation to diligently pursue and pay for the defense of L&W, Knauf hereby agrees that L&W shall have the right, but not the obligation, to proceed on L&W's own behalf to so defend itself and thereafter Knauf shall be obligated to reimburse L&W for any and all costs and expenses (including attorneys' fees) incurred in connection with any such claim. If it is subsequently determined that KPT Drywall was not installed in a Home that is the subject of a KPT Drywall Claim covered under this Section, Knauf shall provide written notice to L&W that

Knauf's obligations under this Section no longer apply, and L&W will assume the defense of the claim.

Notwithstanding any other provision of this Section, Knauf shall not be required to indemnify, defend, or hold L&W harmless for liability to the extent such liability is determined by a court of final authority to be based on L&W's own gross negligence or intentional misrepresentation. Further, if it is subsequently determined that KPT Drywall was not installed in a Home that is the subject of a KPT Drywall Claim covered under this Section, Knauf shall provide written notice to L&W that Knauf's obligations under this Section no longer apply, and L&W will assume the defense of the claim.

22.     Security.

Knauf represents that Knauf Insulation GmbH is a corporate entity which is doing business in the United States with its U.S. corporate offices in Shelbyville, Indiana. Knauf further represents that Knauf Insulation GmbH owns substantially all of Knauf's assets in the United States. Knauf shall provide 10 business days notice to L&W of insolvency, bankruptcy, receivership, or any liquidation or disposition of all or substantially all of the U.S. assets of Knauf Insulation GmbH.

23.     Notices.

Any notice required by this Agreement shall be in writing and shall be deemed to have been properly given to a party (a) if hand-delivered, or if sent by fax, upon receipt, or (b) if delivered by overnight courier service, effective on the day following delivery to such courier service, or (c) if mailed by United States registered or certified mail, return receipt requested,

postage prepaid, effective three (3) days after deposit in the United States Mail, addressed to the address as the parties may designate pursuant to this Section:

**FOR L&W:**

Mary A. Martin
Vice President and Associate General Counsel
USG Corporation
550 W. Adams St.
Chicago, IL 60661-3676
Phone: (312) 436-5363
Fax: (312) 672-5363

with a copy to:

W. David Conner
Haynsworth Sinkler Boyd, P.A.
P.O. Box 2048
Greenville, SC 29602
Phone: 864-240-3226
Fax: 864-240-3300

**FOR KNAUF:**

Jörg Schanow
General Counsel
Knauf GIPS KG
Am Bahnhof 7, D-97346 Iphofen
Federal Republic of Germany
Phone: +49 (9323) 31-0
Fax: +49 (9323) 31-277

with a copy to:

Kerry J. Miller
Frilot L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, Louisiana 70163
Phone: (504) 599-8194
Fax: (504) 599-8145

IN WITNESS WHEREOF, the parties have read and understood the terms and conditions of this Settlement Agreement, agree to be bound by all of its provisions, and have executed this

Settlement Agreement on the date shown by their signatures below.

**L&W**

By: _____
Authorized Representative

Print Name: _____

Witness Signature                      Witness Signature

_____          _____
Printed Name                               Printed Name

_____          _____
Date                                             Date


**KNAUF**

By: _____
Authorized Representative

Print Name: _Grundler / Ingenillem_

Witness Signature                      Witness Signature
_[signature]_                                  _[signature]_

_____          _____
Printed Name                               Printed Name
_Alexander Schulz_                    _Daniel Gehl_

Date _4.3.2011_                         Date _4.3.2011_

Settlement Agreement on the date shown by their signatures below.

**L&W SUPPLY CORPORATION**

By: _Brenda Deely_ (signature)
Authorized Representative

Title: _CEO, L&W Supply Corporation_

Print Name: _Brendan Deely_

Dated: _3/17/2011_

**USG CORPORATION**

By: _Staley Ferguson_ (signature)
Authorized Representative

Title: _Exec Vice President and General Counsel_

Print Name: _Stanley L. Ferguson_

Dated: _3/17/2011_

**KNAUF**

By: _____
Authorized Representative

Title: _____

Print Name: _____

Dated: _____