**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE:  CHINESE-MANUFACTURED** | * | **MDL NO. 09-2047** |
| **DRYWALL PRODUCTS LIABILITY** | * | |
| **LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| | * | |
| **THIS DOCUMENT RELATES TO** | * | |
| **ALL CASES** | * | **MAG. JUDGE WILKINSON** |
| | * | |

**MEMORANDUM IN SUPPORT OF
MOTION OF THE NORTH RIVER INSURANCE COMPANY
TO LIFT STAYS AS TO THE KNAUF ENTITIES AND
INTERIOR/EXTERIOR BUILDING SUPPLY COMPANY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

On March 19, 2012, the Court lifted "the stay in this matter" to allow the Plaintiffs'

Steering Committee ("PSC") "to proceed against The North River Insurance Company in these

proceedings."  Based on that ruling, Defendant The North River Insurance Company ("North

River"), through undersigned counsel, asks that the existing stays in favor of Certain Knauf

Entities ("Knauf")[1] and Interior/Exterior Building Supply Company ("INEX") be lifted in part so

that North River can fully litigate the claims against it in a unified proceeding rather than being

forced to litigate in multiple piecemeal proceedings.  Controlling substantive law, judicial

economy, and fundamental fairness require that North River should not be singled out by having

the stay lifted against it alone; the corresponding stays that restrict North River from asserting

---

[1] "Certain Knauf Entities" refers to Knauf International GmbH, Knauf Insulation GmbH a/k/a Knauf USA, Knauf
GIPS KG, Knauf Plasterboard (Wuhu) Co., Ltd., and Knauf Plasterboard (Tianjin) Co., Ltd.

defenses and the potential liability of other responsible and necessary parties must also be lifted

to allow this litigation to proceed in a rational and equitable manner.


## I.  THE CLAIMS INVOLVING NORTH RIVER

Out of the many different lawsuits pending in this MDL proceeding, North River has

been named as a Defendant in only two class action complaints.  In the first suit, *Silva v. Arch*

*Ins. Co., et al.*, Case No. 09-08034,[2] Plaintiffs Stephen and Isas Silva have asserted a direct

action claim against INEX, North River, and four other liability insurers for INEX.  The Silvas

allege that they bought defective Chinese-manufactured drywall from INEX and seek a

declaration that coverage under the various policies issued to INEX provides coverage with

"respect to Interior Exterior's liability for any and all damages or other remedies to which

Plaintiffs and/or other class members may be entitled under Louisiana law."  The Silvas also

seek certification of a class on behalf of all citizens of Louisiana who purchased Chinese-

manufactured drywall from INEX, either directly or indirectly, from Jan. 1, 2005, through Dec.

31, 2009.

The second suit, *Amato v. Liberty Mutual Insurance Co., et al.*, Case No. 10-932, was

originally filed as a Class Action Complaint in this Court in 2010.  The Plaintiffs in that action

appear to be the owners of 421 pieces of residential property in Louisiana, Florida, Virginia,

Mississippi, and Alabama.  They have asserted claims against approximately 190 different

defendants, based on allegations that the Plaintiffs purchased defective Chinese-manufactured

drywall that was installed in the Plaintiffs' properties.  The *Amato* Plaintiffs allege that they are

pursuing nationwide class actions against the manufacturers, distributors, suppliers, importers,

---

[2] The *Silva* suit was originally filed in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, in December 2009 and was removed to this Court.

exporters, brokers, builders, developers, contractors, and installers of the Chinese-manufactured drywall located in their homes and have asserted claims for negligence, strict liability, breach of warranty, breach of contract, unjust enrichment, nuisance, violations of the Louisiana New Home Warranty Act, redhibition, negligent discharge of a corrosive substance, and violation of consumer protection acts.   The *Amato* Plaintiffs are seeking declaratory relief "mandating coverage by the respective Insurance Company Defendants for all damages and remedies under the pertinent insurance policies for the Underlying Claims for which the Insured Defendants are liable."   In addition, a proposed subclass of the Plaintiffs have asserted direct action claims against North River and other insurers under Louisiana Revised Statute 22:1269.[3]

There is no allegation in either the *Silva* or *Amato* Lawsuits that North River was involved in the manufacture, distribution, sale, or installation of Chinese-manufactured drywall. Instead, the only basis for liability asserted against North River is that North River provided liability insurance to INEX.  INEX is a named defendant in both the *Silva* and *Amato* Lawsuits.

North River has asserted claims for relief against Knauf.  Discovery has established that the greater part of the Chinese-manufactured drywall sold by INEX was manufactured by Knauf. The suit against Knauf is pending in this Court as Case No. 11-cv-01670.  North River has served Knauf, but the current stay has relieved Knauf from the obligation to file an answer.

The Court has previously issued orders staying all litigation involving INEX and Knauf pending the resolution of certain class settlements that are pending before the Court.

## II.  THE NORTH RIVER POLICIES

North River issued four relevant excess liability policies to INEX.  Each policy was in place for a period of one year.  Underlying each of the policies issued by North River was a primary liability policy with an aggregate limit of $2,000,000.  Those policies were issued by

---

[3] North River has also been named as a defendant in *Boutte v.  E. Jacob Construction*, et al., which involves only a single plaintiff.

either Arch Insurance Company or Liberty Mutual Insurance Company.  The available coverage under those policies has not yet exhausted.  Under Louisiana law, an excess insurer is not obligated to make any payment under its policy until the limits of available primary insurance has been exhausted.   *Lee v. USAA Casualty Insurance Co.*, 571 So.2d 127, 130 (La.1990); *Willwoods Cmty. v. Essex Ins. Co.*, 33 So.3d 1102, 1114 (La. App. 5 Cir. 2010); *Sherlock v. Ocean Salvage Corp.*, 785 So.2d 932, 936-37 (La. App. 4 Cir.2001).

## III.  THE RELATIONSHIP OF THE PARTIES

At this time, only Louisiana Plaintiffs have a direct claim against North River under the Louisiana Direct Action Statute.  Non-Louisiana Plaintiffs have no claim against North River, but they hope to obtain an assignment from INEX of its claims against North River under the proposed INEX class settlement also pending before this Court.  At the same time, however, all Plaintiffs hope to assign claims they may have to Knauf under the proposed Knauf class settlement also pending before this Court.  Therefore, if the Court does what the PSC has asked it to do by approving both settlements, Plaintiffs whose homes contain mostly or all Knauf board (comprising the great majority of potential plaintiffs against North River) will have no remaining claims to assert against North River.[4]  Given that a large number of the Plaintiffs represented by the PSC have no present claim against North River, and that the PSC wants all Plaintiffs to assign INEX-related claims to Knauf, it remains unclear to North River why the PSC wants to incur additional expenses to prosecute claims it does not have now and hopes it will not have in the near future.

Also at this time, INEX has not exhausted its primary insurance coverage provided by Arch and Liberty Mutual.   North River, as an excess carrier, presently has no indemnity

---

[4] North River recognizes that it is conceivable that some Plaintiffs may opt out of the Knauf settlement, thereby retaining potential claims against North River.  Given that the PSC is one of the proponents of the Knauf settlement, and is asking to be awarded at least $160,000,000 in attorney's fees under the Knauf settlement because it is such a good deal for all Plaintiffs, then Knauf opt-outs holding claims against North River should be exceedingly few in

obligation to INEX or to anyone who claims through INEX, either by the purported assignment (expressly disallowed by the policies) or by a right of direct action.  Once again, it is unclear to North River why the PSC wants to incur the burden and expense of litigating claims that are not presently mature. If the Court is going to authorize the PSC to proceed against North River, then the Court must also lift the stay to allow the participation of INEX and Knauf in the proceedings.

## IV.  INEX IS A NECESSARY PARTY TO LITIGATION AGAINST NORTH RIVER

Under the Louisiana Direct Action statute, La. Rev. Stat. 22:1269, a direct action by a claimant must normally be brought against both the insured and the insurer.  The only exceptions to this requirement are when:

1.  The insured is in bankruptcy or has been adjudged a bankrupt;

2.  The insured is insolvent;

3.  Service of citation or other process cannot be made on the insured;

4.  The cause of action arises from an offense or quasi-offense between children and their parents or between married persons;

5.  The insured is an uninsured motor carrier; or

6.  The insured is deceased.

*Id.* at 22:1269(B)(1).

INEX does not fall into any of the statutory exceptions that would allow a claimant to maintain a direct action against North River without the inclusion of INEX in the suit.  To the contrary, INEX is already a party to the *Amato* and *Silva* Lawsuits, the only actions in which North River is named as a defendant.  If the Court intends to allow the PSC to prosecute claims against North River, then the Louisiana Direct Action statute requires that INEX be a party to the litigation.

---

number.  If there is a significant number of Plaintiffs who opt out of the Knauf settlement, then perhaps the proposed settlement is not as good as the PSC's request for attorney's fees would suggest.

Because INEX is a statutorily-required party to any direct action brought against North River arising out of claims involving North River, the Court must lift all stays that would preclude the involvement of INEX in claims asserted against North River.

## V.  KNAUF IS A NECESSARY AND PROPER
## PARTIES TO ANY CLAIMS AGAINST NORTH RIVER

The claims being asserted against North River arise out of the sale of Chinese-manufactured drywall by INEX.  Based on discovery that has occurred to date, the drywall sold by INEX was manufactured by Knauf or by one or more of the Taishan entities.[5]  North River has a pending action against Knauf.  Knauf has accepted the jurisdiction of this Court by asking the Court to approve a class settlement of claims against Knauf.

If there is any liability to INEX or North River arising out of the sale of drywall manufactured by Knauf, Louisiana law places the ultimate responsibility for that liability on Knauf as the manufacturer of that product.  North River brought its claims against Knauf to enforce its right to have that ultimate liability placed upon Knauf.  Regardless of what theory of recovery is asserted against INEX or North River, Knauf should be the party who bears ultimate responsibility for damages caused by a defective product Knauf manufactured and sold.  North River's claims against Knauf are already on file, and there is no just reason to make North River bear the burden and expense of litigating claims based on allegations of a defect in the Knauf drywall without including Knauf in those proceedings.

## VI.  LIFTING THE STAYS IN FAVOR OF KNAUF AND INEX
## IS NECESSARY TO AVOID INEFFICIENT PIECEMEAL LITIGATION

The Fifth Circuit has counseled that a "federal court should avoid duplicative or piecemeal litigation where possible." *The Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 391 (5th Cir. 2003).  *See also Kerr v. U.S. District Court*, 426 U.S. 394, 403 (1976) ("[I]t is in the interest of the fair and prompt administration of justice to discourage piecemeal

litigation"); *Roberts v. American Bank & Trust Co., Inc.*, 2011 WL 6670367 at \*18 (E. D. La. 2011) (in deciding whether to abstain from exercising jurisdiction, one of the factors a court should consider is whether abstention would avoid piecemeal litigation).

At the present time, North River finds itself in an extremely untenable position: the Court has lifted certain stays to allow the PSC to proceed against North River, but there are stays that remain in place that prevent North River from defending itself and from taking actions necessary to ensure that any eventual liability is borne by the responsible party or parties. If North River is denied the basic protections of Louisiana law that allow it to be subjected to direct action claims only if its insured is in the case, and basic precepts of product liability law that place the ultimate responsibility for a defectively-manufactured product on the entity responsible for the manufacture and sale of the product, North River will be stripped of the basic right to defend itself in a civil suit. Due process does not allow a party to be subject to civil liability while at the same time being denied the ability to defend itself, and due process will not allow a court to use stays in favor of some parties but not others, to divest a party of the ability to defend itself in a civil suit.

INEX and Knauf are proper and necessary parties to this action. The claims against North River do not arise out of conduct by North River; the claims arise out of allegations that manufacturers such as Knauf made and sold a defective product and that INEX distributed a defective product to consumers. This means that the potential for liability against North River for Knauf-manufactured board is wholly derivative of the liability of Knauf and INEX to the Plaintiffs. The liability of INEX to plaintiffs is denied and unproven at this time. If the claims against North River are in a posture that North River can be subjected to liability, then the same principle mandates that North River be allowed to assert claims arising out of the same acts and events against others. Fundamental fairness simply will not allow a court to protect some parties

---

[5] The Taishan Entities include Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd.

from liability by imposing a stay while at the same time subjecting others to liability for the acts of those parties being protected by the court.

North River's position is a very simple one: if the Court has decided that Plaintiffs can proceed against North River, then North River is entitled to litigate all claims that arise out of the conduct upon which liability is based, including claims that will impose ultimately liability upon truly-responsible parties. Because the present posture of the stays issued by the Court in this multidistrict litigation deprives North River of the right to fully defend itself, the stays presently in place in favor of INEX and Knauf should be lifted so that those claims can be resolved in full, rather than in a prolonged and piecemeal fashion.

## VII. LIFTING THE STAY AVOIDS CONSTITUTIONAL ISSUES

Although compressing a large number of claims into a single proceeding often leads to pressures to adopt "innovative" methods of resolving mass claims, a desire to resolve those claims efficiently cannot overcome each party's right to due process and a fair trial. In *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990), the Fifth Circuit considered a proposed trial plan in an asbestos class action suit which attempted to resolve more than 3000 claims through the trial of less than fifty claimants. The defendants challenged the trial procedure on the basis that the trial would effectively relieve plaintiffs of their common law burdens of proof. The Fifth Circuit found the trial plan to be such an abuse of discretion that the Fifth Circuit issued a writ of mandamus directing the trial court to vacate the plan.

The Fifth Circuit recognized that the concerns expressed by the defendants "find expression in [their] right to due process." *Id.* at 711. The district court's efforts to force resolution of a large number of claims resulted in a proposed trial procedure that "restates the dimensions of tort liability." *Id.* Under our system of federalism, it is the province of the states, through legislative action and the development of common law, to define the standards of tort liability, and federal courts sitting in diversity jurisdiction must "remain faithful" to state law and

the separation of powers between the judicial and legislative branches. *Id.* Federal courts cannot override the substantive requirements of state law through procedural shortcuts. *Id.* at 712. The Fifth Circuit issued a writ of mandamus because the procedure proposed by the district court "cannot go forward without changing [state] law and usurping legislative prerogatives, a step federal courts lack authority to take." *Id.*

North River recognizes that there are factual distinctions between what was proposed in *Fibreboard* and the current posture of this multidistrict litigation proceeding.[6] The principle, however, is the same. If the Court does not lift the stay to allow INEX and Knauf to be involved in the proceedings against North River, North River will be stripped of the procedural protections provided by the Louisiana Direct Action Statute as well as being denied the substantive right to assert claims against the responsible manufacturer. North River respectfully submits that this Court lacks the authority to make those changes in the controlling substantive law to provide the Plaintiffs' Steering Committee with a vehicle to proceed solely against North River.

## VIII. CONCLUSION

For the foregoing reasons, Defendant The North River Insurance Company asks that the existing stays in favor of Certain Knauf Entities and Interior/Exterior Building Supply Company be lifted.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

By: _____/s Eric B. Berger_____
      BRIAN S. MARTIN, ESQ.
      KEVIN RISLEY, ESQ.
      RODRIGO "DIEGO" GARCIA, JR., ESQ.
      One Riverway, Suite 1600

---

[6] North River wants to point out to the Court, however, that the proposed trial plan the Plaintiffs' Steering Committee has suggested in this case has many of the same infirmities as the trial plan proposed in *Fibreboard*. North River will address those issues at the appropriate time if it becomes necessary to do so.

Houston, Texas 77056
Phone: (713) 403-8206
Fax:  (713) 403-8299
bmartin@thompsoncoe.com

LOBMAN CARNAHAN BATT ANGELLE
& NADER, PLC

SIDNEY J. ANGELLE, ESQ.
La. Bar No. 1002
ERIC B. BERGER, ESQ.
La. Bar No. 26196
400 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
Phone: (504) 586-9292
Fax:   (504) 586-1290
sja@lcba-law.com
ebb@lcba-law.com

ATTORNEYS FOR THE NORTH RIVER
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on March 29, 2012.

_____/s Eric B. Berger_____
ERIC B. BERGER