# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:**<br>**ALL CASES AND** | **JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |
| *Payton, et al. v. Knauf Gips, KG, et al.*<br>**Case No. 09-cv-07628 (E.D. La.)** | |
| *Gross, et al. v. Knauf Gips, KG, et al.*<br>**Case No. 2:09-cv-06690 (E.D. La.)** | |
| *Rogers, et al. v. Knauf Gips, KG, et al.*<br>**Case No. 2:10-cv-00362 (E.D. La.)** | |
| *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>**Case No. 2:11-00252 (E.D. La.)** | |
| *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>**Case No. 11-cv-1363 (E.D. La.)** | |
| *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>**Case No. 11-cv-2349 (E.D. La.)** | |
| *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>**Case No. 11-cv-3023 (E.D. La.)** | |
| *Vickers, et al. v. Knauf Gips, KG, et al.*<br>**Case No. 2:09-cv-04117 (E.D. La.)** | |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR AN ORDER: (1) PRELIMINARILY APPROVING THE L&W CLASS SETTLEMENT; (2) CONDITIONALLY CERTIFYING AN L&W SETTLEMENT CLASS; (3) ISSUING CLASS NOTICE; (4) SCHEDULING A JOINT FAIRNESS HEARING; AND (5) STAYING CLAIMS AGAINST L&W, USG AND THE KNAUF DEFENDANTS

This Memorandum of Law is submitted by proposed L&W Class Counsel, the

Court-appointed Plaintiffs' Steering Committee ("PSC"), USG Corporation ("USG"), its

subsidiary L&W Supply Corporation ("L&W"), and the Knauf Defendants[1] (collectively, the "Settling Parties") in support of their Joint Motion for Preliminary Approval of the Class Action Settlement Agreement Regarding KPT Drywall Claims Against USG and L&W in MDL No. 2047 (the "L&W Settlement")[2] and Conditional Certification of an L&W Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e).  The Settling Parties seek entry of a Preliminary Approval Order[3] finding preliminarily that:  (1) the L&W Settlement is fair, reasonable and adequate; (2) the requirements for conditionally certifying an L&W Settlement Class under Rule 23(a) and Rule 23(b)(3) have been met; and (3) notifying the L&W Class Members of the terms of the L&W Settlement and of their rights in connection therewith is warranted.

In addition, the Settling Parties respectfully request that the Court:  (1) approve the form of Class notice described in the Notice of Pendency and Proposed Settlement of L&W Class Action (the "Notice")[4]; (2) schedule a joint fairness hearing to determine whether the L&W Settlement and the Knauf Class Settlement, preliminarily approved by the Court on January 10, 2012 [Rec. Doc. No. 12138], should be given final approval ("Settlement Fairness Hearing"); (3)

---

[1]  The "Knauf Defendants" are defined to mean all Knauf entities, including Knauf Gips KG, Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda, Gebruder Knauf Verwaltungsgesellschaft, KG, Knauf UK GmbH, and P.T. Knauf Gypsum Indonesia.  *See* Knauf Class Settlement, Section 1.1.1 [Rec. Doc. No. 12080-2]; L&W Settlement, Section 1.1.1.

[2]  The L&W Settlement Agreement is attached hereto as Exhibit "A."  Capitalized terms used in this Memorandum of Law have the same meaning as the same terms used in the L&W Settlement Agreement.

[3]  The "Preliminary Approval Order" is attached hereto as Exhibit "B."

[4]  The L&W Class Notice is attached hereto as Exhibit "C."

2

establish dates for the dissemination of the L&W Class notice, the submission of requests for exclusion from and objections to the L&W Settlement and other relevant deadlines; and (4) stay all claims against L&W, USG and the Knauf Defendants arising out of L&W Supplied KPT Chinese Drywall, consistent with the provisions of the stay order entered by the Court on March 2, 2012 [Rec. Doc. No. 12770].

## I.    INTRODUCTION

On January 10, 2012, this Court granted preliminary approval to a class action Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Class Settlement").[5]  The Knauf Class Settlement is intended to resolve all claims made by Residential Owners, Commercial Owners and Tenants in filed actions, which arise out of KPT Chinese Drywall installed in properties in the United States.  The Court provisionally certified a Knauf Settlement Class consisting of:  "All persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (*i.e.*, not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit."  Preliminary Approval Order at 25.[6]  In order to provide Knauf Class Members with an opportunity to evaluate the Knauf Class Settlement, participate therein, object thereto or opt out altogether, the Court ordered that the Knauf Class

---

[5]  Knauf Preliminary Approval Order [Rec. Doc. No. 12138].

[6]  Knauf Class Settlement, Section 1.25.  Under the Knauf Class Settlement, "KPT Chinese Drywall" is defined to include "any and all drywall products manufactured, sold, marketed, distributed, and/or supplied by KPT and which are alleged to be defective."  *Id.*  Drywall products that are "manufactured, sold, marketed, distributed, and /or supplied by any Knauf Defendant other than KPT" are excluded from the definition of KPT Chinese Drywall.  *Id.*

Settlement be posted on the Court's MDL 2047 website,[7] that individual notice be mailed to Knauf Class Members and their counsel, that Knauf Class Members be afforded an opt-out/objection period, and that a final fairness hearing take place on June 20-21, 2012.  *Id*. at 26-28.

The culmination of the class settlement with KPT, a manufacturer of Chinese drywall, was a major achievement in a series of interrelated settlements designed to achieve complete resolution of this Litigation affecting thousands of Owners of Affected Property in the Knauf/KPT supply chain.  Earlier, in October, 2010, the Court approved the "KPT Pilot Program" entered into with the Knauf Defendants for the remediation of KPT Properties.[8]  On May 13, 2011, a class settlement with Supplier-Defendant Interior/Exterior ("InEx") was preliminarily approved by the Court.[9]  Then, on August 11, 2011, another class settlement with Supplier-Defendant Banner Supply Co. ("Banner") was preliminarily approved by the Court.[10]  Notice of the InEx and Banner class settlements was disseminated, and they await final approval by the Court.  Stays of litigation against Banner and InEx are in place pending the fairness hearings on those settlements.[11]  In addition to the KPT Pilot Program, and the InEx, Banner and Knauf Class Settlements, a Prospective Insurance Settlement with the insurers of Defendants in

---

[7]  *See* http://www.laed.uscourts.gov/drywall/Settlements/12-21-11.kpt.global.settlement.pdf.

[8]  *See* Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall, published on the Court's MDL 2047 website at:
http://www.laed.uscourts.gov/drywall/DemonstrationRemediationAgreement.pdf.

[9]  Rec. Doc. No. 8818.

[10]  Rec. Doc. No. 10064.

[11]  Rec. Doc. Nos. 8818, 10064; *see also In re Chinese-Manufactured Drywall Litig*., 2011 WL 2313866 at *1 (E.D. La. Jun. 9, 2011).

the supply chain is being negotiated by the PSC with the support of a Court-appointed mediator. The Parties anticipate that this Insurance Class Settlement will be culminated shortly. All of these settlements are interrelated to the extent they involve KPT Chinese Drywall claims.

The instant L&W Settlement is a further important component towards global resolution of the Knauf/KPT supply chain in this Litigation. The settlement will benefit a nationwide Class consisting of:

> All persons or entities who are Participating Class Members in the Knauf Class Settlement and who (a) as of December 9, 2011, is a named plaintiff in the Litigation (*i.e.*, not an absent class member) asserting claims arising from, or otherwise related to L&W Supplied KPT Chinese Drywall, whether or not L&W and/or USG are named parties to the lawsuit, and (b) own Affected Property.[12]

The L&W Class also includes Multiple Unit Property Governing Bodies to the extent that any unit(s) of a Multiple Unit Property is the subject of a filed lawsuit in the Litigation. The L&W Class does not include any person or entity who has settled claims against L&W and/or USG under the KPT Pilot Program or any other settlement (including claims assigned by L&W Class Members that were later settled by the assignee).[13] The L&W Class also does not include any owner of an Affected Property that has already been the subject of a settlement for which L&W and/or USG have contributed payment either to the current or former owner of the property or to any party to that settlement.[14]

The L&W Settlement defines "L&W Supplied KPT Chinese Drywall" as: "any and all

---

[12] L&W Settlement, Section 1.1.4.

[13] A list of settlements to which L&W is a party is attached as Exhibit "1" to the L&W Settlement (filed under seal). L&W Settlement, Section 1.1.4.

[14] *Id.*

drywall purchased from, or distributed, supplied, sold, and/or delivered by USG and/or L&W, that was manufactured by KPT and is alleged to be defective."[15]  L&W Supplied KPT Chinese Drywall does not include drywall that was manufactured, sold, marketed, distributed and/or supplied by any Knauf Defendant other than KPT.[16]  Pursuant to the L&W Settlement, all claims against L&W and USG related to L&W Supplied KPT Chinese Drywall will be resolved according to the Settlement Agreement and Release that USG and L&W entered into with the Knauf Defendants on or about April 3, 2011 ("Knauf/L&W Agreement").[17]  That agreement provides that L&W and USG will make a Cash Payment equal to $7 per square foot of "Under Air Area" for each Affected Property of Participating L&W Class Members, which contains or contained L&W Supplied KPT Chinese Drywall.[18]

Under the L&W Settlement, in cases where the Affected Property is a KPT Property (having a KPT Drywall Percentage greater than 90%), USG and L&W will pay to the Knauf Defendants the Cash Payment for that Affected Property, less attorneys' fees and costs awarded by the Court.[19]  The resulting Net KPT Property Cash Payment will be applied toward Remediation Settlement Benefits for the Participating L&W Class Members.[20]  For Mixed

---

[15]  L&W Settlement, Section 1.14.

[16]  *Id.*

[17]  The Settlement Agreement and Release between Knauf and L&W and USG is attached as Exhibit "3" to the L&W Settlement.  L&W Settlement, Section 1.13.

[18]  Knauf/L&W Agreement, paragraph 4.

[19]  L&W Settlement, Section 4.1.1.  Under the L&W Settlement, L&W shall deposit the attorneys' fees and costs into an L&W Attorneys' Fees and Costs Fund to be established pursuant to an order of the Court.

[20]  L&W Settlement, Section 4.1.1.

Properties (having a KPT Drywall Percentage of 90% or less), USG and L&W will pay to the

Knauf Defendants the Cash Payment for the Mixed Property multiplied by the KPT Drywall

Percentage, less attorneys' fees and costs awarded by the Court.[21]  The resulting Net Mixed

Property Cash Payment will be applied toward Remediation Settlement Benefits for the

Participating L&W Class Members.[22]

     In exchange for making these Cash Payments, L&W and USG will receive a full release

from Participating L&W Class Members, and Participating L&W Class Members will receive all

of the benefits that Class Members may be entitled to under the Knauf Class Settlement.  By

definition, L&W Class Members are Participating Class Members in the Knauf Class

Settlement.[23]  Because the two settlements are interrelated, L&W Class Members who do not

timely opt out of the Knauf Class Settlement will not be permitted to opt out of the L&W

Settlement.[24]  Additionally, L&W Class Members who opt out of the L&W Settlement will not

be entitled to receive any benefits under the Knauf Class Settlement.[25]

     The Knauf Class Settlement benefits may include:  complete remediation of the Affected

Property; reimbursement for alternative living expenses, personal property damage, maintenance

costs, including utility bills, insurance, property taxes and maintenance of landscaping, and

---

[21]  L&W Settlement, Section 4.1.2.  Under the L&W Settlement, L&W shall deposit the attorneys' fees and costs into an L&W Attorneys' Fees and Costs Fund to be established pursuant to an order of the Court.

[22]  L&W Settlement, Section 4.1.2.

[23]  L&W Settlement, Section 1.1.4.

[24]  L&W Settlement, Section 8.2.2.

[25]  *Id.*

moving and storage expenses during remediation; recovery of economic losses from foreclosures and short sales caused by L&W Supplied KPT Chinese Drywall; and compensation for bodily injury caused by L&W Supplied KPT Chinese Drywall.[26]

The Settling Parties have agreed that USG and L&W shall pay attorneys' fees and reasonable and appropriate expenses (collectively "Attorneys' Fees") (to be allocated among the PSC, common benefit counsel authorized by and working at the direction of the PSC, L&W Class Counsel and individual retained counsel), the calculation and/or amount of which will be determined by a separate agreement between the PSC and USG, L&W and the Knauf Defendants, which will be submitted to the Court for approval.[27]  The Attorneys' Fees obligation, as approved by the Court, will be deducted from the Cash Payment for each Participating L&W Class Member.  Individual L&W Class Members will not be obligated to pay any attorneys' fees under the L&W Settlement.

The L&W Settlement provides that individual notice of the settlement shall be sent by first-class mail to all plaintiffs and their counsel in the Litigation, in the Omni complaints, and in Related Actions who, as of December 9, 2011, asserted claims arising from, or otherwise related to L&W Supplied KPT Chinese Drywall.[28]  In this manner, each L&W Class Member and his or her counsel will receive individual notice of the L&W Settlement.

The PSC and proposed L&W Class Counsel believe that the global L&W Settlement before this Court is in the best interests of the L&W Class in view of a variety of factors,

---

[26]  Knauf Class Settlement, Sections 4.3 & 4.7.

[27]  L&W Settlement, Section 15.1.

[28]  L&W Settlement, Section 7.1.1.

including the estimated damages suffered by the L&W Class, as well as both the complexity of and risks attendant to Plaintiffs' demonstration that those damages were causally linked to L&W's and/or USG's alleged wrongdoing, and the delays inherent in litigating thousands of individual claims against L&W and USG. The L&W Settlement was negotiated at arm's length over a period of months, with oversight by the Court.

The Settling Parties accordingly respectfully submit that the L&W Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Fifth Circuit. Moreover, certification of the proposed L&W Class is appropriate pursuant to FED. R. CIV. P. 23, and the proposed individual class notice satisfies the requirements of due process. Indeed, the individual class notice is consistent with the form of notice used and routinely recognized as satisfying due process in class actions. As set forth below, all prerequisites for preliminary approval of the L&W Settlement and conditional certification of the proposed L&W Class have been met, and the Parties respectfully submit that the Joint Motion for Preliminary Approval of the L&W Settlement should be granted.

## II.    BACKGROUND

### A.    The Chinese Drywall Litigation

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms. Beginning in the fall of 2005, hundreds of millions of square feet of Chinese Drywall were exported to the United States, sold to distributors and suppliers, resold to builders and installers, and installed in thousands of properties domestically, but primarily in Florida, Louisiana,

Alabama, Mississippi, Texas and Virginia.[29]

Certain Governmental agencies found Chinese Drywall to be defective, allegedly causing property damage, including damage to electrical wiring, corrosion of pipes, and damage to or destruction of air-conditioners, refrigerators, HVAC systems, and other appliances.[30]  The Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC"), made various recommendations for the repair of properties impacted by Chinese Drywall, including the removal of problematic drywall, fire safety alarm devices, electrical distribution components (including receptacles, switches and circuit breakers), gas service piping and fire suppression sprinkler systems.[31]

Further, some individuals have alleged that they suffered bodily injury as a result of exposure to Chinese Drywall.[32]  However, the CPSC and the Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence that exposure to Chinese Drywall causes any ill health effects.

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the United States District Court for the

---

[29]  The Gypsum Association reports that 320 million square feet of Chinese Drywall were imported from 2005-2007.  *See* Gypsum Association Comments, published at http://www.gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.  Knauf acknowledges in its manufacturer profile form that it exported 5,286,015 square meters (or 56,898,192 square feet) of board to the U.S. between 2005 and 2006.

[30]  *In re Chinese Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 706 F. Supp. 2d 655, 664-66 (E.D. La. 2010) (Findings of Fact and Conclusions of Law); *In re Chinese Manufactured Drywall Prods. Liab. Litig.* (*Hernandez*), 2010 WL 1710434, *8-9 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

[31]  *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011, published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

[32]  Order appointing Special Master (Rec. Doc. No. 505) at 1.

Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047

pursuant to 28 U.S.C. § 1407.[33]  Since the formation of this MDL almost three years ago,

thousands of claimants have participated in the PSC's omnibus class action complaints.  The

Court has held regular monthly status conferences attended by hundreds of counsel and it has

entered 25 separate Pretrial Orders, many with subparts, as well as scores of other orders and

minute entries.[34]  To date, more than 13,000 entries have been recorded on the docket in this

case.   This Court has worked tirelessly to manage the nationwide litigation of Chinese Drywall

claims.  The Court's efforts have included the coordination and oversight of pretrial discovery

and motion practice for thousands of individual cases as well as the Omni Complaint class

actions filed in the MDL.[35]  In the myriad of lawsuits filed before this Court in this Chinese

Drywall litigation, dozens of motions have been filed by the parties on a variety of issues,

including motions for class certification in *Germano*, *Payton* (Knauf), and *Payton/Vickers, et al.*

---

[33] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) (Rec. Doc. No. 1).

[34] *E.g.*, Minute Entry, Dec. 2, 2010 (Rec. Doc. No. 6525).

[35] *See*, *e.g.*, *Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), I(C)); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A)); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al. v. AAA Ins., et al.*, Case No. 2:10-cv-03070 (E.D. La.) (Omnibus VI); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-cv-00080 (E.D. La) (Omnibus VII); *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.) (Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01077 (E.D. La.) (Omnibus IX); *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-1363 (E.D. La.) (Omnibus X); *Benoit, et al. v. Lafarge S.A., et al.*, Case No. 11-cv-1893 (E.D. La.) (Omnibus XI); *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-2349 (E.D. La.) (Omnibus XII); *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-3023 (E.D. La.) (Omnibus XIV).

*v. Knauf Gips KG, et al.*, Case No. 2:09-cv-04117 (E.D. La.), and motions for Florida and/or

Louisiana Homeowners classes for damages and/or declaratory relief,[36] numerous motions to

intervene, motions for default judgment, motions to dismiss for lack of personal jurisdiction,

motions for summary judgment, and a motion to establish a Plaintiffs' litigation expense fund.[37]

For purposes of coordination, consistency and global treatment of Chinese Drywall

claims, the Court has consulted with numerous state court judges and other federal judges also

overseeing Chinese Drywall litigation, including the Honorable Joseph Farina from the 11th

Judicial Circuit Court of Florida (Dade County) and the Honorable Charles Greene from the 17th

Judicial Circuit Court of Florida (Broward County).[38]  In coordination with these jurists, this

MDL Court has strived to achieve finality in the resolution of this litigation.[39]

In order to accomplish its goals, the Court appointed the PSC and a Plaintiffs' Liaison

Counsel ("PLC") to prepare and respond to pleadings and motions, engage in discovery, pretrial

preparation, trial and settlement of cases, manage the MDL docket, establish and administer a

document depository, communicate with individual Plaintiffs and their counsel, liaison with

Defendants and attend court status conferences and hearings.[40]  The Court also appointed a

---

[36]  Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva, et al. v. Interior Exterior Building Supply, LP, et al.* Case No. 09-08030 (E.D. La.)), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195 (*Vickers/Payton*), 8197 (*Payton*).

[37]  *See* Minute Entry at 24, Dec. 2, 2010 (Rec. Doc. No. 6525).

[38]  *E.g.*, Transcript of Status Conference at 2:17-3:17, Oct. 14, 2010 (comments of J. Fallon praising "the help of state court judges:" "I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward."); Transcript of Status Conference at 7:5-17, Mar. 23, 2011.

[39]  Transcript of Status Conference at 7:19-25, Mar. 23, 2011.

[40]  *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman); Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs, Arnold Levin).

Defendants' Liaison Counsel[41] and a Homebuilders and Installers Liaison Counsel[42] to assist in these efforts.  In November, 2009, the Court appointed a Special Master "to explore opportunities for an ultimate resolution of the instant matter as to any and all interested parties," recognizing that "some or all parties [we]re interested in exploring a global resolution of the matter as it affect[ed] them at th[at] stage of the proceeding."[43]  In March, 2010, the Court appointed State and Federal Coordination Committees "to assist the Court, litigants and judicial system to facilitate coordination between this MDL and the various state court cases."[44]  And, the Court appointed an Insurer Steering Committee as well as Co-Lead Counsel for the First-Party Insurer Subcommittee.[45]

Through the vehicle of "Omni" complaints, the Court has assisted the parties in bringing all interested and affected entities into the Chinese Drywall litigation in a consistent, fair and judicious manner.[46]  Intervention Omni complaints have been filed on behalf of thousands of Plaintiffs suing more than a thousand Defendants, including L&W, USG, the Knauf Defendants and other foreign Chinese Drywall manufacturers, including Taishan Gypsum Co., Ltd., f/k/a

---

[41] *See* Pretrial Order No. 4 (appointing Defendants' Liaison Counsel).

[42] *See* Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel).

[43] Order Appointing Special Master (Rec. Doc. No. 505 at 4).

[44] *See* Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendants' State/Federal Committee).

[45] *See* Pretrial Order No. 20 (appointing Insurer Steering Committee and Co-Lead Counsel for the First-Party Insurer Subcommittee).

[46] *See* Transcript of Status Conference at 4-5, June 24, 2010 (recognizing that Omni complaints serve as a vehicle to "effectively and efficiently" serve more than 500 Defendants and to evaluate the "whole census").

Shandong Taihe Dongxin Co. Ltd.[47] ("Taishan"), BNBM and related entities, China National Building Materials Co., Ltd. and related entities, as well as numerous importers, builders, suppliers and installers of Chinese Drywall, their insurers and other Defendants.[48]  Absent the Omni complaints, few individual Plaintiffs, if any, would have been able to perfect service of process under the Hague Convention on the foreign manufacturers of the Chinese drywall installed in their properties.  The costs of translation of the complaints and service on these foreign Defendants exceeds $100,000 for each complaint in the litigation.  These Omni pleadings are intended to close the circle of liability by engaging the insurers and the financiers of the Defendants directly in this litigation.  These efforts have aggregated the "mass" in this mass tort, which is contributing to resolve this litigation on a global basis.

In the spring of 2010, the Court resolved ten bellwether cases in Virginia and Louisiana.[49] After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the appropriate scope of remediation.  The Court found that Chinese Drywall "has to be remediated."[50]  These bellwether trials have served as a useful tool for all litigants involved

---

[47]   On September 10, 2007, Shandong Taihe Dongxin Co., Ltd., which was a subsidiary company controlled by BNBM, changed its name to Taishan Gypsum Co., Ltd.

[48]   *See* fn. 35, *supra*.

[49]   *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case).  Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[50]   *Germano*, 706 F. Supp. 2d at 671.

in Chinese Drywall litigation, as well as the Court.[51]

In addition to these trial-set cases, the PSC has engaged in widespread jurisdictional and merits discovery of the Knauf Defendants.  The PSC has served extensive written discovery on all of the Defendants, including L&W and USG, reviewed tens of thousands of documents, taken depositions of myriad officers of the Knauf companies and the Taishan companies in Hong Kong, Germany, the United Kingdom and elsewhere.  The PSC has also taken discovery of other Defendants, including L&W and USG, in various cities throughout the United States.  As a result of these painstaking efforts, the PSC contends that it has laid the foundation to establish liability and jurisdiction over these Defendants; however, the Knauf Defendants have asserted numerous defenses that raise questions about the collectibility of any judgment.  L&W and USG have also asserted numerous defenses to the Plaintiffs' claims.

### B.    The KPT Pilot Program

Following the bellwether trials, the PSC entered into the KPT Pilot Program for the remediation of homes containing KPT Chinese Drywall.  Pursuant to this settlement, the scope of remediation of homes with KPT Chinese Drywall has proceeded in conformance with this Court's previous rulings set forth in the *Hernandez* trial, with the cost determined through the

---

[51]    *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (June 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar....  The reasons for acceptance by bench and bar are apparent.  If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

submission of contractor bids rather than through litigation.[52]  In addition to the Knauf

Defendants, a number of suppliers including L&W and other Defendants have participated in

this Pilot Program settlement.[53]

### C.      Reasons for the L&W Settlement

The L&W Settlement will provide a Cash Payment equal to $7 per square foot of Under

Air Area for each Affected Property owned by Participating L&W Class Members.  In the case

of KPT Properties (having a KPT Drywall Percentage greater than 90%), USG and L&W will

pay to the Knauf Defendants an amount equal to the Cash Payment for each KPT Property, less

attorneys' fees and costs awarded by the Court.[54]  The resulting Net KPT Property Cash Payment

will then be applied toward Remediation Settlement Benefits provided pursuant to the Knauf

Class Settlement for those Participating L&W Class Members.[55]  For Mixed Properties (having a

KPT Drywall Percentage of 90% or less), USG and L&W will pay to the Knauf Defendants the

Cash Payment for the Mixed Property multiplied by the KPT Drywall Percentage, less attorneys'

fees and costs awarded by the Court.[56]  The resulting Net Mixed Property Cash Payment will

then be applied toward Remediation Settlement Benefits for those Participating L&W Class

---

[52]  *See Hernandez* Findings of Fact; Transcript of Status Conference at 4:16-20, Oct. 14, 2010.

[53]  Transcript of Status Conference at 5:3-5, Oct. 14, 2010.

[54]  L&W Settlement, Section 4.1.1.  Under the L&W Settlement, L&W shall deposit the attorneys' fees and costs into an L&W Attorneys' Fees and Costs Fund to be established pursuant to an order of the Court.

[55]  L&W Settlement, Section 4.1.1.

[56]  L&W Settlement, Section 4.1.2.  Under the L&W Settlement, L&W shall deposit the attorneys' fees and costs into an L&W Attorneys' Fees and Costs Fund to be established pursuant to an order of the Court.

Members.[57]

The Knauf Class Settlement Remediation Fund is an uncapped fund that will be established with an initial deposit of $200 million by the Knauf Defendants.[58]  That fund will be replenished in increments of $50 million each time the fund balance is reduced to $25 million.[59]  The Net KPT Property Cash Payments and the Net Mixed Property Cash Payments derived from the L&W Settlement will be added to the Remediation Fund in order to provide complete remediation benefits to Participating L&W Class Members.  Under the Knauf Class Settlement, KPT Property Owners may elect to have their Affected Property(ies) completely remediated within a three-month period under the Program Contractor Remediation Option (Option 1).[60]  The remediation work performed pursuant to Option 1 will remove on a cost-effective basis all standard drywall, problem drywall-related odors, and contamination caused by the drywall, including corrosion, tarnishing and pitting, in order to leave the KPT Property with the same construction quality and finishes, including remediating any damage to the quality and finishes that was caused by the drywall, as existed prior to the start of the remediation work.[61]  In the alternative, KPT Property Owners and Mixed Property Owners may elect to self-remediate their

---

[57]  L&W Settlement, Section 4.1.2.

[58]  Knauf Class Settlement, Section 4.2.2.

[59]  Knauf Class Settlement, Section 4.2.2.  In addition, 50% of the net Insurance Class Settlement monies and 50% of the net funds recovered from Excluded Releasees under the Knauf Class Settlement will be deposited into the Remediation Fund.  Knauf Class Settlement, Section 4.2.3.  Further, net recoveries for Class Members participating in the Banner and InEx class settlements (to the extent they related to KPT Chinese Drywall) will be assigned to the Knauf Defendants and deposited into the Remediation Fund.  Knauf Class Settlement, Section 4.8.

[60]  Knauf Class Settlement, Section 4.3.1.

[61]  *See* Remediation Protocol, Exhibit F to the Knauf Class Settlement Agreement.

17

Affected Property and have their chosen contractor be paid from the Remediation Fund (Option 2)[62] or they may choose to receive a discounted cash-out payment if they elect not to remediate their property (Option 3).[63]

This is a significant recovery for Plaintiffs in light of, among other things, the procedural posture of the litigation, the range of estimates of damages to the L&W Class, relevant factors regarding L&W's financial condition to meet the claims at issue in this Chinese Drywall litigation, and all of the material factual information revealed during discovery and settlement negotiations. Although proposed L&W Class Counsel and the PSC believe in the merits of the case against L&W and USG and in their ability to prevail, the Parties recognize that each side would face serious obstacles to establishing both liability and damages should the cases proceed to trial. For instance, L&W and USG were prepared to, and would, strenuously argue that Plaintiffs could not establish causation for personal injury damages, which would materially reduce the potential range of damages. Moreover, if the cases against L&W and USG were to proceed to trial, these Defendants would likely appeal any judgment favorable to the L&W Class, imposing a significant additional delay on the payment of any recovery to individual L&W Class Members, not to mention a drain on the limited resources available for any recovery to L&W Class Members. Further, the Knauf Defendants have argued that, as to KPT, China will not enforce judgments rendered in the United States. They have also contended that this Court cannot exercise personal jurisdiction over the German Knauf Defendants, and even if there were jurisdiction, those Knauf entities are separate from KPT and not liable for KPT Chinese Drywall

---

[62]  Knauf Class Settlement, Section 4.3.2.

[63]  Knauf Class Settlement, Section 4.3.3.

or L&W Supplied KPT Chinese Drywall.  The Knauf Defendants claim that a United States judgment to the contrary would not be enforceable in Germany, in any event.[64]

The PSC and proposed L&W Class Counsel respectfully request that this Joint Motion be granted not only because, as will be set forth herein, public policy favors the settlement of complex class actions such as this, but because the L&W Settlement is an excellent result for the L&W Class.  It is fair, reasonable and adequate, and was negotiated at arm's length over many months with oversight from the Court and input from many interested parties.  In light of the foregoing, it is respectfully requested that the Court enter an Order preliminarily approving the L&W Settlement and conditionally certifying the L&W Class.

## III.   ARGUMENT

### A.   The L&W Settlement Is in the Best Interest of the L&W Class

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action.  *Evans v. Jeff D.*, 475 U.S. 717, 727-28 (1986); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  In determining whether to approve the L&W Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits.  *See, e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (Fallon, J.); *Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398, *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.).[65]  This is, in part, because of the

---

[64]  The Knauf Defendants also contend that there is no basis for liability of Knauf Insulation GmbH, the only Knauf Defendant with United States assets.

[65]  "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement... This rule has particular force regarding class action lawsuits."  *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

complexity and size of class actions:

> Particularly in class action suits, there is an overriding public
> interest in favor of settlement [...] it is common knowledge that
> class action suits have a well deserved reputation as being most
> complex. The requirement that counsel for the class be
> experienced attests to the complexity of the class action [...] In
> these days of increasing congestion within the federal court
> system, settlements contribute greatly to the efficient utilization of
> our scarce judicial resources.

*Cotton*, 559 F.2d at 1331, *citing*, *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826

(5th Cir. 1975); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

*Turner*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially apparent in

the class action context where claims are complex [... and] could lead to years of protracted

litigation and sky-rocketing expenses.").

   In addition:

> Complex litigation - like the instant case - can occupy a court's
> docket for years on end, depleting the resources of the parties and
> the taxpayers while rendering meaningful relief increasingly
> evasive.  Accordingly, the Federal Rules of Civil Procedure
> authorize district courts to facilitate settlements in all types of
> litigation, not just class actions [...] Although class action
> settlements require court approval, such approval is committed to
> the sound discretion of the trial court.

*In re United States Oil & Gas Litig.*, 967 F.2d 489, 493-94 (11th Cir. 1992), *citing*, FED. R. CIV.

P. 16(a), (c), 23(e); *Bennett v. Behring*, 737 F.2d 982, 987 (11th Cir. 1984); *Cotton*, 559 F.2d at

1331).  The courts have recognized that certification of a class for settlement purposes is

beneficial in resolving major class action disputes.  *See, e.g.*, *In re Corrugated Container*

*Antitrust Litig.*, 643 F.2d 195, 207-10 (5th Cir. 1981); *In re Beef Indus. Antitrust Litig.*, 607 F.2d

167, 173-77 (5th Cir. 1976).

The first step in determining whether to grant preliminary approval to a class settlement, is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement." *Cope v. Duggins*, 2001 WL 333102, *1 (E.D. La. Apr. 4, 2001) (Fallon, J.), *citing*, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995).  The Court must "evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing." *Id*. In so doing, "the Court will examine the submitted materials and determine whether the proposed settlement appears fair on its face." *Id*.; *see Corrugated Container*, 643 F.2d at 212.

At the preliminary stage, the Court's review is less stringent.  *See*, *e.g.*, *In re OCA, Inc. Sec. and Der. Litig.*, 2008 WL 4681369, *11 (E.D. La. Oct. 17, 2008) ("As this motion is for *preliminary* approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval."); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007); MANUEL FOR COMPLEX LITIGATION (FOURTH), § 21.63 (2004) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.").

As set forth above, the Settling Parties arrived at an agreement in principal during arm's length negotiations, with oversight by the Court.  This settlement was subsequently memorialized in the L&W Settlement Agreement, submitted herewith.  The Court may presume, therefore, that the proposed Settlement is fair and reasonable, as it is the result of arm's length negotiations.  *See Camp v. The Progressive Group*, 2004 WL 2149079, *7 (E.D. La. Sept. 23, 2004).  The L&W Settlement Agreement contains the material economic terms of the L&W Settlement, the manner and form of notice to be given to the L&W Class, the contingencies or conditions to the L&W Settlement's final approval, and other terms.

The PSC and proposed L&W Class Counsel possessed adequate information concerning the strengths and weaknesses of the litigation against L&W and USG after extensive document discovery and the exchange of information during negotiation sessions, including information concerning damage calculations.  In addition, proposed L&W Class Counsel, the PSC, its individual counsel members, and the PLC are highly competent counsel, all with many years of experience litigating complex class action and multidistrict cases.  Finally, as explained above, the complexity, expense, uncertainty, and likely duration of the litigation also militate in favor of consummating the settlement process.  Therefore, proposed L&W Class Counsel, the PSC, L&W, USG, and the Knauf Defendants respectfully submit that all of the above-cited circumstances support preliminary approval of the proposed L&W Settlement.

### B.    The Requirements of Rule 23 Have Been Met For Conditional Certification of the L&W Class

For purposes of conditionally certifying the Rule 23(b)(3) L&W Class sought by the Settling Parties, The MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 advises that "[i]f the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined.  The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  *See id*. at § 21.22.  The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."  *Id*. at § 21.632.  This comports with the Supreme Court's holding in *Amchem*, 521 U.S. at 619-20, that "[s]ettlement is relevant to a class certification," but the requirements of Rule 23(a) and 23(b)(3) must still be met.  *Id*. at 620.  However, when a court is

22

"[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."  *Id*.

In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the L&W Class in the context of this Settlement.

### 1.    Numerosity

Thousands of Plaintiffs have filed suit against L&W and USG, alleging damages sustained as a result of these Defendants' involvement in the distribution of defective Chinese Drywall for installation in Plaintiffs' homes and properties.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members "clearly satisfies the numerosity requirement."); *see* William B. Rubenstein, Alba Conte, and Herbert B. Newberg, 1 NEWBERG ON CLASS ACTIONS § 3:3 (4th ed. 2010) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

### 2.    Commonality

The commonality requirement of Rule 23(a)(2) is easily met in this case.  The Judicial

Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on

"the commonality of facts in the various cases."[66]  Questions surrounding the effects of L&W

Supplied KPT Chinese Drywall on L&W Class Members, the damages caused thereby, and the

apportionment of fault to the Settling Defendants under Florida law are issues common to all

Plaintiffs, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442 U.S. 682, 701

(1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the

class as a whole" and they "turn on questions of law applicable in the same manner to each

member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The

existence of shared legal issues with divergent factual predicates is sufficient, as is a common

core of salient facts coupled with disparate legal remedies within the class."); 1 NEWBERG ON

CLASS ACTIONS § 3:1 ("Convenience, uniformity of decision, and judicial economy are achieved

through the class action device by litigating common issues only once on behalf of all class

members.").

### 3.    Typicality

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense

of the class representative, and not to the specific facts from which it arose or the relief sought."

1 NEWBERG ON CLASS ACTIONS § 3:13, *quoting*, *Weinberger v. Thornton*, 114 F.R.D. 599, 603

(S.D. Cal. 1986).  In other words, courts must determine "whether other [Class] members have

the same or similar injury, whether the action is based on conduct which is not unique to the

---

[66] *Hernandez*, 2010 WL 1710434 at *1 (Findings of Fact).

named plaintiffs, and whether other class members have been injured by the same conduct." *Id.*, *quoting*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).  The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members.  *See*, *e.g.*, *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156-57 (1982).  The typicality requirement has been liberally construed by the federal courts.  *See*, *e.g.*, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Plaintiffs in this case is seeking money from L&W, USG and the Knauf Defendants for the costs of remediation of L&W Supplied KPT Chinese Drywall and other damages allegedly caused thereby.  "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."  1 NEWBERG ON CLASS ACTIONS § 3:13.  The claims of the L&W Class Representatives are typical of the absent L&W Class Members in that all Plaintiffs are seeking to hold L&W and USG liable for damages resulting from L&W Supplied KPT Chinese Drywall installed in their Affected Properties.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that the named class representatives "not possess interests which are antagonistic to the interests of the class."  1 NEWBERG ON CLASS ACTIONS § 3:21.  Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part

of the class and possess the same interest and suffer the same injury as the class members.")

(internal citation and quotations omitted).  At this preliminary stage of the approval process,

there is nothing to suggest that this requirement has not been met.  The named representatives

are members of the L&W Class they seek to represent and they do not possess any interests

antagonistic to that class.  Moreover, proposed L&W Class Counsel are members of the PSC,

which was appointed by this Court after an application process to represent all Plaintiffs in the

MDL, based on the attorneys' vast experience in class actions and multidistrict litigation.  The

PSC conducted these class negotiations with L&W and USG at arm's length, and will fairly and

adequately represent the L&W Class.  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir.

1992).

### 5.        Common Questions of Law and Fact Predominate

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks

whether a class suit for the unitary adjudication of common issues is economical and efficient in

the context of all the issues in the suit."  1 NEWBERG ON CLASS ACTIONS § 4:25; *see also*

*Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation").  In this case it

makes eminent good sense to resolve the claims against L&W and USG in this forum through

the class action device.  The issues of L&W's and USG's liability for the sale and distribution of

L&W Supplied KPT Chinese Drywall in this country predominate over any individual issues

involving the Plaintiffs.   A class settlement will insure that funds are available to remediate the

Plaintiffs' Affected Properties and provide compensation for other damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action

device be superior to other methods of adjudication.  Factors the Court may consider include:

(A)     the interest of members of the class in individually controlling the

          prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already

          commenced by or against members of the class;

(C)     the desirability or undesirability of concentrating the litigation of the

          claims in the particular forum; and

(D)     the difficulties likely to be encountered in the management of a class

          action.[67]

FED. R. CIV. P. 23(b)(3)(A)-(D).  Given the various suits pending against L&W and USG in

federal and state courts, approval of the L&W Settlement and resolution of all Chinese Drywall

claims against L&W and USG in this forum benefits all parties.

### C.     The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirement of Rule 23

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class

action settlement, the district court "must direct notice in a reasonable manner to all class

members who would be bound by the proposal."  The law is clear that individual notice by

first-class mail is more than sufficient to meet the notice requirements of due process.  *Eisen v.*

*Carlisle & Jacqueline*, 471 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir.

1977).

---

[67] As stated earlier, any difficulties of management of this L&W Class need not be considered.
*Amchem*, 521 U.S. at 620.

In accordance with these legal parameters, the Parties have agreed to provide individual notice by first-class mail to all L&W Class Members and their counsel. The Parties are also requesting that the L&W Settlement be posted on the District Court's Chinese Drywall MDL website. The Court should approve the form and content of the proposed Notice.[68] The Notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1). The Notice objectively and neutrally apprises all L&W Class Members of the nature of the action, the definition of the L&W Class sought to be certified for purposes of the L&W Settlement, the L&W Class claims and issues, that L&W Class Members may enter an appearance before the Court at the Settlement Fairness Hearing (in accordance with the procedures set forth in the Notice), that the Court will exclude from the L&W Class any L&W Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on L&W Class Members under Rule 23(c)(3)(B). The Notice additionally discloses the date, time and location of the Settlement Fairness Hearing and the procedures and deadlines for the submission of objections to any aspect of the Settlement. These disclosures are complete and should be approved by the Court. *See*, *e.g.*, *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000).

Upon notification of the L&W Settlement, L&W Class Members have three choices: (1) approve the L&W Settlement, receive L&W Settlement benefits, if eligible, and also participate in and receive Knauf Class Settlement benefits by submitting a Proof of Claim in that settlement; (2) exclude themselves from the L&W Settlement by "opting out" of the L&W Class, provided they have also timely opted out of the Knauf Class Settlement, in which case they will not

---

[68] *See* Exhibit C.

participate in either settlement recovery and will retain their individual claims against L&W, USG and the Knauf Defendants; or (3) object to the L&W Settlement, in which case they will nonetheless remain L&W Class Members.

To participate in the L&W Settlement, L&W Class Members need do nothing at this time.  L&W Class Members who wish to exclude themselves from the L&W Settlement must submit a timely request for exclusion from both the L&W Settlement and also the Knauf Class Settlement.  L&W Class Members who wish to object to the L&W Settlement must file and serve a notice of their intention to appear and object.  Objectors can submit a memorandum of law in opposition to the L&W Settlement and can appear before the Court at the Settlement Fairness Hearing.  The Notice provides clear direction and instructions to L&W Class Members regarding their options under the L&W Settlement.

### D.   The Court Should Preliminarily Approve the L&W Settlement and Conditionally Certify the L&W Class

Determining the fairness of the L&W Settlement is left to the sound discretion of the Court, and an appellate court will not overturn the Court's decision absent a clear showing of abuse of that discretion.  *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982), *citing*, *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977), *citing*, *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *see also In re U.S. Oil*, 694 F.2d at 493-94. The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'"  *Miller*, 559 F.2d at 428, *quoting*, *Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975).  Settlements of class actions are "particularly favored" and are not to be lightly rejected.  *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Turner*, 472 F.

29

Supp. 2d at 843.  In the case of class actions, the Fifth Circuit has held that "there is an

overriding public interest in favor of settlement," because such suits "have a well deserved

reputation as being most complex."  *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst*, 529 F.2d

at 950.

      Moreover, it is widely recognized that courts should exercise restraint in examining a

proposed settlement and should not "make a proponent of a proposed settlement justify each

term of settlement against a hypothetical or speculative measure of what concessions might have

been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest

hopes." *Cotton*, 559 F.2d at 1330.  In other words, in weighing the benefits obtained by

settlement against benefits dependent on the likelihood of recovery on the merits, courts are not

expected to balance the scales.  *See id.*  The very object of a compromise "is to avoid the

determination of sharply contested and dubious issues."  *Young v. Katz*, 447 F.2d 431, 433 (5th

Cir. 1971).

      In addition, a court should not engage in a trial on the merits when considering the

propriety of a settlement:

> It cannot be overstated that neither the trial court in approving the
> settlement nor [the appellate court] in reviewing that approval have
> the right or the duty to reach any ultimate conclusions on the issues
> of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330, *quoting*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2nd Cir.

1974); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *see also Turner*,

472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is

concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as

compared to the alternative of litigation.").  The trial court is not required to decide the merits of

the action or substitute a different view of the merits for that of the parties or counsel.  *Maher*,

714 F.2d at 455 ("In other words, in determining the fairness, reasonableness, and adequacy of a

proposed settlement, neither the district court nor the appellate court on review, should reach

ultimate conclusions on the issues of fact and law underlying the dispute.").

Where, as here, experienced counsel representing many interested parties have

extensively negotiated the L&W Settlement at arm's length, a strong initial presumption is

created that the compromise is fair and reasonable.  *United States v. Tex. Educ. Agency*, 679 F.2d

1104, 1108 (5th Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large

degree on the judgment of competent counsel, terming such counsel the "linchpin" of an

adequate settlement.  *Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983).  Thus, if experienced

counsel determine that a settlement is in the class's best interests, "the attorney's views must be

accorded great weight."  *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978);

*see also OCA*, 2008 WL 4681369 at *11 (where there is "no reason to doubt [the] fairness" of

the settlement and it "appears to fall within the range of possible approval, the court should grant

preliminary approval."); *In re Train Derailment Near Amite Louisiana on October 12, 2002*,

2006 WL 644494, *1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement

negotiated at arm's length and without collusion, where the compromise bore "a probable,

reasonable relationship to the claims and exposure and to the risks presented in the litigation"

and was "within the possible range of judicial approval").

Moreover, the Court is not required at this point to make a determination as to whether

the settlement should be finally approved.  As stated in the MANUAL FOR COMPLEX LITIGATION

(FOURTH), § 21.632:  "First, counsel submit the proposed terms of settlement and the judge

31

makes a preliminary fairness evaluation."  Generally, "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  *Id.*  Although non-binding, the preliminary approval establishes "an initial presumption of fairness."  *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. Oct.15, 2009); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.25.

The L&W Settlement before the Court is the product of extensive arm's length negotiations between counsel for the Settling Parties, which culminated in a preliminary agreement.  The Parties negotiated the terms of the L&W Settlement in detail, and the Parties each made concessions and won positions on difficult issues.  Therefore, the L&W Settlement should be preliminarily approved.

At the joint Settlement Fairness Hearing, any L&W Class Members who have timely filed and served a notice of intention to appear may voice any objections.  The Court can then consider the merits of the L&W Settlement in light of any objections and determine whether to grant final approval of the Settlement.  At the Settlement Hearing, the Settling Parties will have submitted briefs and other documents in support of the Settlement.  If the Court finds the L&W Settlement to be fair and reasonable, the Court should enter the Final Judgment and Order of Dismissal with Prejudice, dismissing this action with prejudice and effecting a release of all claims as provided for in the Settlement Agreement.

### E. Proposed Schedule

The Settling Parties suggest the following schedule leading to the Settlement Fairness Hearing.  Blanks for the actual dates are provided in the proposed Preliminary Approval Order submitted herewith:

| Event | Day |
|---|---|
| Preliminary Approval Order ("PAO") Signed | 1 |
| Mail Notice (PAO ¶ 10) | On or before 21 days from entry of PAO |
| Opt-Outs/Objections (PAO ¶¶ 13, 16) | 45 days from entry of PAO |
| Settlement Hearing (PAO ¶ 18) | June 20-21, 2012 |

## IV.   CONCLUSION

The Settling Parties respectfully request that this Court find preliminarily that the L&W Settlement is fair, reasonable and adequate, and that notification to L&W Class Members of the terms of the L&W Settlement and their rights in connection with the L&W Settlement is warranted.  The Parties seek entry of an Order:  (1) preliminarily approving the L&W Settlement; (2) certifying the L&W Class as set forth in the Preliminary Approval Order; (3) approving the form of Notice to the L&W Class; (4) scheduling a joint Settlement Fairness Hearing to consider the Knauf Class Settlement and the L&W Settlement; and (5) staying and enjoining the prosecution of all claims arising out of L&W Supplied KPT Chinese Drywall, which have been asserted against L&W, USG and the Knauf Defendants in the Litigation, all Related Actions, and all Related Claims, whether or not the Settling Parties are named parties to the lawsuit, pending the Settlement proceedings and further Orders of the Court, consistent with the provisions of the stay order entered by the Court on March 2, 2012 [Rec. Doc. No. 12770].

33

Respectfully submitted,


Dated: March 27, 2012

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALEZ,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
  ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
  & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
119 Washington Avenue
Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**PROPOSED L&W CLASS COUNSEL**

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

Russ M. Herman, Esquire (Bar No. 6819)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Rherman@hhkc.com

**USG CORPORATION AND L&W SUPPLY CORPORATION**

W. David Conner
Haynsworth Sinkler Boyd, P.A.
75 Beattie Place, 11th Floor
Greenville, SC 29601
Phone:  (864) 240-3226
Fax:  (864) 240-3300
dconner@hsblawfirm.com

**THE KNAUF DEFENDANTS**

Kerry J. Miller (Bar No. 24562)
Kyle A. Spaulding (Bar No. 29000)
Paul C. Thibodeaux (Bar No. 29446)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Phone:  (504) 599-8194
Fax:  (504) 599-8145
kmiller@frilot.com

Steven Glickstein
Gregory J. Wallance
Jay P. Mayesh
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Phone:  (212) 836-8485
Fax:  (212) 836-6485
sglickstein@kayescholer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 27th day of March, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*Co-counsel for Plaintiffs*