UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON |
| ALL CASES | * * * | MAGISTRATE WILKINSON |

### AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

### JOHN M. PLUNKETT

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for TRIPLE CROWN HOMES, INC., ("Triple Crown Homes"), and as such, has personal knowledge of the following based on his review of records maintained by Triple Crown Homes in the regular course of business.

2. Triple Crown Homes is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Marion County, Florida.

3. Triple Crown Homes is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.

4. Triple Crown Homes has never built a residence in the State of Louisiana or had any contracts or subcontracts with companies located in Louisiana.



EXHIBIT "A"

5. Triple Crown Homes has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Triple Crown Homes does not have an agent for service of process in Louisiana.

7. Triple Crown Homes does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Triple Crown Homes does not solicit business in Louisiana and has never transacted business in Louisiana.

9. Triple Crown Homes has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Triple Crown Homes does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Triple Crown Homes has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Triple Crown Homes never anticipated it would be haled into court in Louisiana.

JOHN M. PLUNKETT

SWORN TO AND SUBSCRIBED BEFORE ME THIS 23rd DAY OF March, 2012.

NOTARY PUBLIC
MARSHA LEE KNEPP



MARSHA LEE KNEPP
MY COMMISSION # DD 883476
EXPIRES: April 26, 2013
Bonded Thru Budget Notary Services

 **Triple Crown Homes** 
1740 E. Silver Springs Blvd.
Ocala, Florida 34470-6923
(352) 671-4677

## CONSTRUCTION AGREEMENT

THIS AGREEMENT, made this __19th__ day of __May__, __2005__, by and between Triple Crown Homes, 1740 E. Silver Springs Blvd. Ocala, Florida 34470-6923, hereinafter called "Contractor", and __Samuel Galarza__, whose current mailing address is __4392 Whistlewood Cir__, and phone number is __949-701-0272__, hereinafter called "Owner". __Lakeland FL 33811__

### ARTICLE I
### Description of Construction

The Contractor agrees to construct on the real property of the Owner situated in __Marion__ county, Florida, further described as: __Lot 10 Blk A The Fountains__
(Lot and Block, Subdivision)

improvements in accordance with plans and specifications attached hereto as Exhibit "2" and by reference made a part hereof. If the plans and specifications, due to their bulk and complexity shall not be attached hereto as an exhibit same shall be signed or initialed by the parties and are incorporated herein by the following specific reference: __St. Claire__.

This Construction Agreement shall also include all modifications to the above which are dated and signed or initialed by both parties hereto.

Owners warrant they own the real property described herein free and clear of all encumbrances except as set forth on Exhibit 1, and/or as described above.

### ARTICLE II
### Contract Price

Owner agrees to pay Contractor for the construction the sum of the following amounts:
A. Basic construction in accordance with the above plans and specifications: $ __110,908__
B. Additions not covered by the above plans and specifications attached as Exhibit 3: $ __—__
C. Total Contract Price: $ __110,908__

In the event substandard soil conditions are determined by Contractor or a licensed engineer to exist on the property, Owner shall be responsible for payment of all additional cost incurred resulting therefrom including but not limited to additional cost of excavation, fill, footers, foundations, and slabs. Owner shall be responsible for obtaining and payment for soil tests and engineering studies and reports which Owner may request. The contract price includes 16" of fill after compaction. The parties acknowledge that the Owner has a lighting budget included in the total contract price. Any lighting selections made by the owner which exceed the lighting budget of $ __1000.00__ shall be paid for by the owner at the time of purchase.

### ARTICLE III
### Price Change

If the supplier's prices or subContractor's quoted prices to the Contractor for the basic building material or other materials or work are increased prior to commencement of construction, Contractor may elect to add such increase to the total purchase price. The Owner may accept any such increase in writing or terminate this agreement in writing within seven (7) days after notification of the increase and be refunded the deposit by Contractor.

### ARTICLE IV
### Progress Payments

Owner shall make progress payments on account of the Contract price to Contractor in accordance with the draw schedule attached hereto as Exhibit 5 and by reference made a part hereof.

### ARTICLE V
### Contract Completion Date

Subject to the provisions of Article XI, the construction shall be completed within __8__ calendar months of the date of the execution of this Contract or of the posting of the Notice of Commencement, whichever occurs later; subject however, to any causes beyond the control of the Contractor, which may prevent or delay such completions, including without limitations any of the following: weather, strikes, riots, labor disputes, governmental ruling or regulations, issuance of valid building permit, compliance with all applicable building, zoning, and planning laws, ordinances or regulations, availability of materials, acts of war, or Court orders and litigation or threatened litigation pertaining to said construction; the contract completion time shall be extended to a reasonable period of time to allow for any such contingencies.

### ARTICLE VI
### Contract Documents

Contract Documents consist of this Agreement, the drawings and plans and specifications, all addenda issued prior to the execution of this Agreement, all amendments, and all Change Orders. The intention of the Contract Documents is to include all labor, materials, equipment and other items as provided in Article VII necessary for the proper execution and completion of the work and the terms and conditions of payment therefore, and also to include all work which may be reasonably inferred from the Contract Documents as being necessary to produce the intended results.
A. The Contract Documents signed in not less than duplicate by the Owner and the Contractor.

B. The Owner shall be responsible for furnishing a boundary survey of the property and staking the property boundaries prior to the beginning of construction.

C. Contractor will, at the request and expense of the Owners, provide accurate survey and staking of the property boundaries prior to the beginning of construction.

### ARTICLE VII
#### Contractor Obligation

The Contractors shall supervise and direct the work, using his best skills and attention. The Contractor shall be fully responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work in the Agreement.

A. Unless otherwise specifically noted, the Contractor shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, transportation, and other facilities and services necessary for the proper execution and completion of the work.

B. The Contractor shall pay all sales, consumer, use and other similar taxes required by law and shall secure all permits, fees and licenses necessary for the proper extension of the work.

C. The Contractor at all times shall keep the premises reasonably free from accumulation of waste materials or rubbish caused by its operations. At the completion of the work it shall remove all its waste materials and rubbish from and about the project as well as its tools, construction equipment, machinery and surplus materials.

D. The Contractor shall pay for deposits for utilities and including water and electric furnished to the job site during construction.

E. The Owner shall pay all impact fees and/or connections fees.

### ARTICLE VIII
#### Miscellaneous

A. <u>Attorney's Fees and Costs</u> In connection with any litigation, including appellate proceedings, arising out of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

B. <u>Governing Law and Venue</u> This Contract is made and entered into in Marion County, Florida and shall be construed under the laws of the State of Florida. Venue for any action involving this Contract shall be in Marion County, Florida.

C. <u>Successors and Assigns</u> The Owner and Contractor each bind themselves, their partners, heirs, personal representatives, successors and assigns to the other with regard to all covenants, agreements, rights and obligations contained herein.

D. <u>Owner Access</u> The Owner shall at reasonable times have access to the work; however, the Owner shall not interfere with Contractor's employees, subContractors, laborers and materialmen. Owner agrees that Owner will not during the course of construction attempt to supervise, direct or otherwise interfere with construction. The Owner shall indemnify and hold harmless Contractor, his employees, subContractors, materialmen or laborers from and against all claims, damages, losses and expenses, including reasonable attorney's fees arising out of or resulting from injury, sickness, disease or death of Owner, Owner's agents, Owner's invitees, assigns or heirs while any of these persons are on the job site.

### ARTICLE IX
#### Contractor's Warranties

For a period of one year after issuance of a Certificate of Occupancy, Contractor will repair or replace, whichever he determines to be appropriate in his sole judgment, without charge, any defects in workmanship or materials not caused or aggravated by Owner, Owner's guests, subsequent unauthorized repairmen, the elements, or other matters outside Contractor's control. Contractor's warranties hereunder are hereby limited as follows:

A. Contractor makes no representation or warranty or assumes any obligation or liability as to the quality or quantity of water serving the subject property whether from private well or other source.

B. Contractor assumes no responsibility or liability beyond manufacturer warranties for equipment, appliances, water heater, heating and air-conditioning equipment and other equipment or machinery located in or on the subject premises. Contractor reserves the right to substitute fixtures and/or building materials of equal quality or price to those set forth in the plans and specifications. Contractor shall notify Owner that substitutions are being made.

C. Contractor shall not be responsible or liable for claims or damages resulting from or caused by soil or subsurface conditions.

D. Owners acknowledge and understand that the concrete used in the slab and/or driveways may crack due to shrinkage and Contractor shall not be responsible or liable for claims or damages resulting from cracks in the concrete due to shrinkage or shifting of the soil or subsurface.

THE WARRANTIES SET FORTH HEREIN ARE THE ONLY EXPRESS WARRANTIES THAT CONTRACTOR GIVES. WARRANTIES IMPLIED UNDER STATE LAW, INCLUDING ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY LIMITED TO THE WARRANTY PERIOD SET FORTH ABOVE. CONTRACTOR DISCLAIMS ANY LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES TO PERSONS OR PROPERTY.

### ARTICLE X
#### Deposit Money

Upon execution of this Agreement, the Owner shall deposit with Contractor the sum of $ _2,000.00_, representing a nonrefundable deposit. Said deposit money shall be credited toward the first draw payable by Owner to Contractor under the draw schedule attached to this Agreement. An additional _10%_ shall be paid at the start of construction.

SG

**ARTICLE XI**
Time of Commencement

Subject to any contingencies or conditions expressly contained herein, the work to be performed under this Construction Agreement shall commence within __45__ days from the date of this Agreement, or upon the posting of the Notice of Commencement as required in Article XXI of this Agreement, whichever shall occur later.

**ARTICLE XII**
Final Payment

Final payment shall be made as provided in Article IV of this agreement. The making of final payment shall constitute a waiver of all claims by the Owner except those arising from (1) unsettled liens, (2) faulty or defective work or materials appearing after substantial completion (3) failure of the work to comply with the requirements of the Contract Documents, or (4) terms of any special guarantees required by the Contract Documents. The acceptance of final payment shall constitute a waiver of all claims by the Contractor except those previously made in writing and still unsettled.

**ARTICLE XIII**
Occupancy

Owner shall not be entitled to occupy the property or the improvements being constructed thereon until such time as construction has been completed and final draw payment has been made by Owner to Contractor, nor shall the Owner store any items at the homesite until such time as construction has been completed and final draw payment has been made by Owner to Contractor.

**ARTICLE XIV**
Contractor's Liability Insurance

The Contractor shall purchase and maintain such insurance as will protect it from claims under Worker's Compensation Acts and other employee benefit acts, from claims for damages because of bodily injury, including death, and from claims for damages to property which may arise out of or result from the Contractor's operations under this Constriction Agreement, whether such operations be by himself or by any subContractor or anyone directly or indirectly employed by any of them. Contractor's shall not be liable for damage or loss attributable to or arising out of the drawings or specifications furnished by the Owners or Owner's agents or to the acts or omissions of the Owner or anyone employed by the Owner, other than Contractor, or for whose acts are not attributable to the fault or negligence of the Contractor.

**ARTICLE XV**
Owner's Liability Insurance

The Owner shall be responsible for purchasing and maintaining his own liability insurance and, at his option, may maintain such insurance as will protect him against claims which may arise from operations under the Construction Agreement, Certificates of such insurance shall be filed with Contractor.

**ARTICLE XVI**
Property Insurance

A. Unless otherwise provided, the Contractor shall purchase and maintain property insurance upon the entire work at the site to the full insurable value thereof. This insurance shall include the interest of the Owner, the Contractor, subContractors and subContractors in the work and shall insurance against the perils of fire, extended coverage, vandalism and malicious mischief.

B. Any insurance loss is to be adjusted with the Contractor and made payable to the Contractor as trustee for the insureds, as their interest may appear, subject to the requirements of any mortgagee clause.

C. The Owner and Contractor waive all rights against each other for damages caused by fire or other perils except to the extent covered by insurance provided under this paragraph. The Contractor shall require similar waivers by SubContractors and sub-subContractors.

**ARTICLE XVII**
Septic System

If a grease trap or any increase in capacity of septic tank called for under the plans and specifications as required by the applicable health department and/or building department, or any other changes in the plans and specifications, are required by code, subdivision regulations and restrictions or other governmental regulations, the purchase price will be increased by the amount of such changes and paid by Owner to Contractor upon demand. The septic system contemplates normal installation and soil conditions. If hardpan or rock or other hard or impervious material (i.e. clay) is encountered, the Owner agrees to pay the additional cost for installation of the septic system to Contractor upon demand.

**ARTICLE XVIII**
Changes in the Work

A. The Owner without invading the Construction Agreement may order changes in the work consisting of additions, deletions or modifications, the Contract sum and the Contract time being adjusted accordingly. All Change Order requests by Owner must be in writing and approved by Contractor and the costs thereof paid to Contractor at the time the changes are requested. If for any reason a Change Order is not approved by Contractor, Contractor will not be liable to Owner.

B. The Contract sum and Contract time may be changed only by the Change Order.

C. The cost or credit to the Owner from a change in the work shall be determined by mutual agreement before executing the work involved.

D. Any changes made after construction has begun will incur a $250 change fee IN ADDITION to the cost of the actual charge.

S6

ARTICLE XIX
Correction of Work                                                                                          pg.4
The Contractor shall correct any work which fails to conform to the requirements of the Contract Documents where such failure to conform appears during the progress of the work, and shall remedy any defects due to the faulty materials, equipment or workmanship which appear within a period of one year from the date of substantial completion of the Construction Agreement or within such longer period of time as may be prescribed by law. the provisions of this Article XIX apply to work done by subContractors as well as work done by direct employees of the Contractor.

ARTICLE XX
Termination by the Contractor
If the Owner fails to make any payment required under this Agreement for a period of five (5) days after the due date, the Contractor may, upon seven (7) days written notice to Owner, terminate the Construction Agreement and recover from the Owner payment for all work executed and for any proven loss sustained upon any materials, equipment, tools and construction equipment and machinery including reasonable profit and damages.

ARTICLE XXI
Notice of Commencement
It shall be the Owner's responsibility to file a Notice of Commencement in the Public Records of Marion County, Florida pursuant to Chapter 713, Florida Statutes.

ARTICLE XXII
Radon
Radon is a naturally occurring radioactive gas which, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon which exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county Public health unit. Contractor shall not be responsible for any damages or injuries from the presence of radon on the subject property.

ARTICLE XXIII
Special Clauses
Any special clauses are attached hereto, signed by the Owner and Contractor and marked as Addenda # ____1____.

ARTICLE XXIV
Complete Agreement
The Agreement represents the entire agreement between the parties and there are no agreements, representations or warranties, express or implied, verbal or written except those written agreements which are specifically incorporated in this Agreement or as provided by law.

**COUNTY IMPACT FEES AND CONNECTION FEES ARE NOT INCLUDED IN THIS CONTRACT PRICE AND ARE THE RESPONSIBILITY OF THE BUYER.**

This offer is subject to approval by John Plunkett, President of Triple Crown Homes.

This offer was prepared by Paul DiLorenzo / Joe Welch

NOT WITHSTANDING ANYTHING TO THE CONTRARY WHICH MAY BE STATED HEREIN ABOVE, THIS CONTRACT WHEN SIGNED BY THE SALESMAN CONSTITUTES AN OFFER ONLY AND IS NOT BINDING ON THE PARTIES UNTIL IT HAS BEEN SIGNED BY THE BUYERS AND BY JOHN PLUNKETT, PRESIDENT OF TRIPLE CROWN HOMES.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

Signed, sealed and delivered in
the presence of:

_____    x_____

_____

_____    _____

_____                                7-26-05
                                     By: John Plunkett, President of
                                     Triple Crown Homes