UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CIVIL ACTION NO. 09-2047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | JUDGE FALLON |
| _____ | ) | |
| **This Document Relates to:** | | **MAGISTRATE WILKINSON** |
| ALL CASES | | |

### INTERIOR EXTERIOR'S OPPOSITION TO NORTH RIVER INSURANCE COMPANY'S MOTION TO LIFT STAY AS TO THE KNAUF ENTITIES AND INTERIOR EXTERIOR BUILDING SUPPLY COMPANY

**MAY IT PLEASE THE COURT:**

Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("Interior Exterior" "InEx") submit this Opposition to North River Insurance Company's ("North River") Motion to Lift Stay as to the Knauf entities and Interior Exterior Building Supply Company for the following reasons.

### Factual Background

After two years of consolidated discovery, consisting of multiple depositions in various United States cities, Europe and Hong Kong,[1] and two bellwether trials conducted in this MDL, on April 25, 2011, the Plaintiffs' Steering Committee ("PSC"),

---

[1] This Court should be aware that counsel for North River actively participated in these depositions. In fact, counsel for North River was physically present for the depositions in Germany and Hong Kong. North River has been given the full opportunity to participate in the defense of these claims.

InEx, and two of InEx's insurers entered into a nationwide, class settlement of all claims arising out of the importation, sale, and distribution of Chinese manufactured drywall.  At the monthly status conference on April 26, 2011, the PSC, INEX, and InEx's primary insurers, Arch Insurance Co. ("Arch") and Liberty Mutual Fire Insurance Co. ("Liberty") (collectively "Insurers"), announced that they had reached a class action settlement agreement, which involved the tendering of all of InEx's primary insurance funds, totaling $8,000,000, in exchange for a settlement of the claims against InEx, its primary insurers, and certain entities downstream in the chain-of-commerce from InEx. Moreover, the settlement provides that InEx assigned its rights and claims for $72 million of excess insurance and damages for bad faith and extra-contractual conduct against The North River Insurance Company, its excess insurance carrier to the contemplated class members.

On that same date, in an effort to move the settlement forward, these parties filed a Joint Motion for an Order: (1) Preliminarily Approving  InEx Settlement Agreement; (2) Conditionally Certifying  InEx Settlement Class; (3) Issuing Class Notice; and (4) Scheduling a Settlement Fairness Hearing. Pending the hearing on the Joint Motion, on April 27, 2011, this Court issued a Stay Order that directed that the "prosecution of the 'Related Actions' (including, but not limited to, those listed in Exhibit 1.25 to the InEx Settlement) against InEx, the Insurers and the other Settling Defendants shall be stayed."

On May 13, 2011, this Court entered an Order providing for preliminary approval of the nationwide class against InEx.  Despite the objections of North River, the preliminarily ruling by this Court noted that the InEx settlement was approved as fair, reasonable and adequate, as negotiated and entered into at arm's length, in good faith, and

free of collusion and as being within the range of possible judicial approval at a prospective Fairness Hearing.  Additionally, this Court conditionally certified the following nationwide class: "All persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx."  This Court found that the Class shall consist of two (2) subclasses: (1) All members of the Class with claims arising from, or otherwise related to Affected Properties that are located in Louisiana (the "Louisiana Subclass"); and (2) All members of the Class with claims arising from, or otherwise related to Affected Properties that are located in any state other than Louisiana (the "Non-Louisiana Subclass").  This Court appointed representatives and class counsel for both the Louisiana Subclass and the Non-Louisiana Subclass.   Further, the Court approved the opt-out procedure set forth in Section 7 of the InEx Settlement, the procedure for lodging objections to the Settlement as set forth in Section 8 of the InEx Settlement, and the class notice, the summary class notice, and the protocol for dissemination and publication of notice to class members concerning the settlement.

This Court ordered that (a) prosecution of the MDL Litigation and the Omni Complaints against InEx, the Insurers and the Downstream InEx Releases (including, but not limited to, those identified in Exhibit 1.10 to the InEx Settlement) shall be stayed pending the settlement proceedings; (b) prosecution of the "Related Actions" (including, but not limited to, those listed in Exhibit 1.25 to the InEx Settlement) against InEx, the Insurers and the other Settling Defendants shall be stayed pending the settlement proceedings; and (c) all claims and cases in which any person or entity claims to be an insured, additional insured, or named insured under any insurance policy issued to any

InEx entity shall be stayed pending the settlement proceedings (hereinafter the "Stay Order").

On February 8, 2012, the PSC filed a Motion to Lift the Stay against the North River Insurance Company. Thereafter, North River filed its Motion to Lift the Stay against Interior Exterior and the Knauf Defendants which were previously put in place as part of the respective settlement agreements concerning Interior Exterior and the Knauf Defendants.

## Argument

### I. The Stay Does Not Intend to Shield Non-Settling Defendants.

The current Motion is just another attempt by North River to set aside the settlement agreement entered into by Interior Exterior. However, neither the InEx settlement nor the Knauf agreement shield non-settling parties from the plaintiffs ability to prosecute claims against those entities. Rather the spirit of both settlement agreements contemplate additional negotiations between the settling defendants and the plaintiffs to fully resolve the issues between them.

North River was not part of the Interior Exterior settlement agreement. In fact, Interior Exterior assigned its rights to the Non-Louisiana Subclass for claims against its excess carrier for excess coverage and bad faith claims.[2] Nothing in the Interior Exterior settlement agreement proposes that the assignees are prohibited from pursuing those claims.

---

[2] North River was invited to participate in the settlement process, but declined despite being present for multiple mediations.

## II. The Interior Exterior Settlement is a *Gasquet* Settlement.

Interior Exterior's settlement is a *Gasquet*[3]-type settlement in which Interior Exterior, its primary insurers (Liberty Mutual and Arch Insurance), and the PSC settled, but reserved claims against Interior Exterior's excess carrier, North River.

In Article 1.4 of Interior Exterior's settlement agreement, Interior Exterior assigned its rights to the Non-Louisiana Subclass against the Excess Carrier (North River). As the rights were assigned to the Non-Louisiana Subclass whom the PSC represents, the PSC has stepped into the shoes of Interior Exterior for any claims against Interior Exterior against North River for coverage and possible bad faith or extra-contractual conduct. In essence, while Interior Exterior and its primary insurers are released from further liability, the plaintiffs in this matter still maintain the right to proceed against non-settling defendants like Interior Exterior's excess carrier, North River. Courts have recognized this type of settlement and specifically a reservation to proceed against a non-settling defendant excess insurer. *See Lightfoot v. Hartford Fire Ins. Co.*, 2011 WL 1977982 (E.D. La.).

## III. Interior Exterior is Not a Necessary or Indispensible Party to the PSC's Claims Against North River.

North River urges this Court to lift the stay in place as to Interior Exterior on the speculative position that Interior Exterior is a necessary party to the PSC's claims against North River. North River argues that Interior Exterior is required under La. R.S. 22:1269 to remain a litigating party in this matter. This proposition fails because the claims that the PSC are pursuing are not based on the liability of Interior Exterior but aimed at North

---

[3] *Gasquet v. Commercial Union Ins.* Co.391 So.2d 466 (La App 4th Cir. 1980).

River's handling of Interior Exterior's claim. Accordingly, Interior Exterior is not a necessary party to the PSC's claims against North River.

In Article 1.4 of Interior Exterior's settlement agreement, Interior Exterior assigned its rights to the Non-Louisiana Subclass against the Excess Carrier (North River). As the rights were assigned to the Non-Louisiana Subclass, whom the PSC represents, the PSC has stepped into the shoes of Interior Exterior for any claims against North River for coverage and possible bad faith or extra-contractual conduct.

On February 8, 2012, the PSC filed a Motion to Lift Stay as to North River. Thereafter, the PSC propounded discovery requests upon North River. Those requests appear to be aimed at North River's conduct in the handling of Interior Exterior's claims in this litigation. Moreover, the discovery requests appear not be aimed at any liability or fault of either Interior Exterior or the Knauf defendants, but rather the PSC's discovery requests information soley related to North River's conduct and handling of Interior Exterior's claim. Accordingly, Interior Exterior and the Knauf defendants are not necessary parties to the PSC's prosecution of their claims against North River which appear to be based on North River's adjustment of Interior Exterior's claims.

## Conclusion

North River's Motion to Lift Stay is unfounded, bordering on harassment, and is yet another attempt to undermine the proposed settlement agreements entered into by Interior Exterior, its primary insurers, and the PSC and the Knauf defendants and the PSC. Accordingly, Interior Exterior respectfully requests that North River Insurance Company's Motion to Lift Stay as to Interior Exterior and the Knauf defendants be denied.

Respectfully submitted,

***Richard G. Duplantier, Jr.   /s/***
_____
Richard G. Duplantier, Jr. (# 18874)
Lambert J. Hassinger, Jr. (# 21683)
Benjamin R. Grau (#26307)
Carlina C. Eiselen, (# 28524)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802 / Fax:   (504) 525-2456
rduplantier@gjtbs.com /jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com /
*Counsel for Defendant, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, LLC*

Dated April 5, 2012

**Certificate of Service**

The undersigned certifies that this document has been served on Plaintiffs' Liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 5th day of April, 2012.

***Richard G. Duplantier, Jr.   /s/***

_____
RICHARD G. DUPLANTIER, JR.