Highlands Fuel Delivery, LLC v. American Ins. Co., 2011 WL 7110393 (2011)

2011 WL 7110393 (N.H.Super.) (Trial Order)
Superior Court of New Hampshire.
Rockingham County

HIGHLANDS FUEL DELIVERY, LLC and Irving Oil Limited,
v.
AMERICAN INSURANCE COMPANY; Arrowood Indemnity Company; Fireman's Fund Insurance Company;
First State Insurance Company; Hartford Accident & Indemnity Company; Intact Insurance Company;
Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; Royal &
Sun Alliance Insurance Company of Canada; TIG Insurance Company; Zurich American Insurance Company;
and Zurich Insurance Company Limited.

No. 218-2011-CV-00291.
November 29, 2011.

**Order on Motion to Dismiss**

John M. Lewis, Presiding Justice.

ROCKINGHAM, SS.

The petitioners, Highlands Fuel Delivery, LLC and Irving Oil Limited, bring this action for declaratory and other relief against a number of insurance companies, including Intact Insurance Company ("Intact"). The petitioners seek declaratory relief to establish that the respondents are obligated under the terms of their respective insurance policies to indemnify them in regard to designated underlying MBTE lawsuits, particularly including a pending MBTE lawsuit filed against the petitioners by the State of New Hampshire, *State of New Hampshire* v. Amerada Hess Corp. et al, Merrimack Super. Ct., Docket No. 03-C-0550, and future MTBE suits.[1] The petitioners also seek monetary relief, or damages, for claimed breach of contract and bad faith in regard to certain of the respondents, but not Intact.

Footnotes
Respondent Intact has not filed an Answer to the petitioners' Petition, or their First Amended Petition, and instead, has filed this Motion to Dismiss for lack of personal jurisdiction. The petitioners object.

**Background**

Intact, formerly known as Halifax Insurance Company ("Halifax"), is a Canadian corporation, with its principal office in Toronto, Ontario, Canada. *See* Intact's Mot. to Dismiss, Ex. A, Affidavit of Edward Nolan ¶¶ 2-5. Halifax was originally incorporated under the laws of the Canadian province of Nova Scotia, and then continued as a federally incorporated Canadian company under the Insurance Companies Act. *Id.* ¶ 5. Halifax was incorporated and licensed to do business only in Canada. *Id.* ¶ 6. Halifax became ING Insurance Company of Canada, which subsequently became, and remains, Intact. *Id.* ¶ 5.

Petitioner Irving Oil Limited ("IOL") is a corporation organized under the laws of New Brunswick, Canada, with its principal place of business at 10 Sydney Street, Saint John, New Brunswick, Canada. Pets.' First Amended Pet. ¶ 3. Petitioner Highlands Fuel Delivery, LLC ("Highlands"), is a corporation organized under the laws of the State of Maine, with its principal place of business at 190 Commerce Way, Portsmouth, NH 03801. *Id.* ¶ 2. Highlands was formerly known as Irving Oil Corporation ("IOC"). *Id.* IOL is the parent company of Highlands. *Id.* ¶ 3.

In 1984, Halifax issued an umbrella liability insurance policy, policy number 9-12382 ("the Policy"), including several endorsements. *See* Intact's Mot. to Dismiss, Ex. A, ¶ 7; *see also* Ex. B, Policy. The Policy was an excess coverage policy. The named insureds were indicated to be "Irving Oil Limited and/or J.D. Irving Limited et al," and the effective period for the Policy was December 31, 1984 to December 31, 1985. *Id.* ¶¶ 7-8. This policy was issued from Halifax's office in Toronto to IOL's office in New Brunswick, Canada. *Id.* ¶ 9. It appears that all material acts concerning the negotiation and issuance of

Highlands Fuel Delivery, LLC v. American Ins. Co., 2011 WL 7110393 (2011)

the policy and endorsements occurred in Canada.

The Insuring Agreements of the Policy provide:

## 1. *COVERAGE*

The Company hereby agrees, subject to the limitations, terms, and conditions hereinafter mentioned, to pay on behalf of the Insured all sums which the Insured shall be obligated to pay by reason of the liability:-

(a) imposed upon the Insured by law; or

(b) assumed under contract or agreement by the Named Insured and/or any officer, director, stockholder, partner or employee of the Named Insured, while acting in his capacity as such;

for damages, direct or consequential, and expenses, all as more fully defined by the term "Ultimate Net Loss" on account of:-

(i) personal injuries, including death at any time resulting therefrom;

(ii) property damage;

(iii) advertising liability;

caused by or arising out of each occurrence happening anywhere in the world.

Intact's Mot. to Dismiss, Ex. B, Pg. 2 (emphasis added).

Further, the Insuring Agreements state:

## II. *DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS*

With respect to any occurrence not covered by the underlying policy(ies) of insurance described herein, or any other underlying insurance collectible by the Insured, but covered by the terms and conditions of this Policy, except for the amount of the retained limit specified herein, the Company will:-

(a) Defend any suit against the Insured seeking damages on account of personal injury, property damage, or advertising offense, even if such suit is groundless, false or fraudulent; and make such investigation, negotiation and settlement of any claim or suit as it deems expedient....

*Id.*

Endorsement No. 1 of the Policy also provides, in relevant part:

It is hereby understood and agreed that the Named Insured under this policy is as follows:

Irving Oil Limited, J.D. Irving Limited, ... Irving Oil Corporation, ... and/or any subsidiary, affiliated, associated or controlled company or corporation of the Named Insured as now or may hereafter be constituted or acquired, except those companies where specific insurance is in force.

The term subsidiary, affiliated, associated or controlled company shall, for the purpose of this Policy, be deemed to mean any company in which the Irving family directly or indirectly has majority control and/or owns more than 50% of the voting stock.

*Id.,* Pg. 15.

The petitioners aver that Intact provides insurance and financial services products to customers worldwide; and that it here, as Halifax, committed to insure the petitioners in regard to liability risks related to their petroleum operations impacting the State of New Hampshire.

The petitioners offer evidence to the effect that "IOL is a ... refiner of petroleum products at its refinery located in New Brunswick, Canada"; that "IOL has for many years, including the 1980s, been a supplier of gasoline to the New England states"; that "IOC's responsibilities in the mid-1980's, and specifically in 1985, included managing a fuel terminal in Searsport, Maine, from which fuel was supplied to New England"; that Maine has been identified "as a significant supply point for New Hampshire gasoline"; and that "IOC's operation of retail gasoline stations in Maine significantly expanded in 1985, and its gasoline sales to motorists in that period would have included sales to motorists from neighboring states, including New Hampshire." *See* Aff'd. of Sheldon Illsley, dated August 23, 2011. They thus aver that they had and have been pertinently suppliers of petroleum products in New England, including New Hampshire, and that a straightforward reading of the Policy and the "Named Insureds Endorsement" confirms that the Policy, by its terms, insured them (to include IOC, now Highlands, a U.S. Corporation) concerning, among other things, this distribution of petroleum products and alleged harm or injury claimed to be caused by such products in this State.

The petitioners highlight that they have been sued by the State of New Hampshire for alleged occurrences that happened in New Hampshire, and that the "Coverage" provision expressly states that the Policy provide coverage for occurrences "anywhere in the world." They aver that given Intact's (or Halifax's) provision of such insurance coverage, and given the existence of the major case brought against them in New Hampshire, Intact is here subject to personal jurisdiction in New Hampshire.

For its part, Intact advances that it is not subject to this State's jurisdiction, though it did provide "anywhere in the world" territorial breadth of coverage and recognizes that the petitioners are involved in a very substantial MTBE New Hampshire lawsuit involving petroleum operations that have impacted New Hampshire. Intact avers that under its present name, or as Halifax, it has never been registered to do business in New Hampshire, or anywhere else in the United States; has never had a registered agent in New Hampshire, or anywhere else in the United States; has never had or maintained an office in New Hampshire, or anywhere else in the United States; has never had any employees working in New Hampshire, or anywhere else in the United States; has never owned or leased any property in New Hampshire; and has never had bank accounts or assets in New Hampshire. *See* Intact's Mot. to Dismiss, Ex. A, ¶¶ 10-15. Further, Intact offers that under its present name, and as Halifax, it has never sought to sell insurance or conduct business in New Hampshire or anywhere else in the United States. *Id.* ¶ 16. Intact strongly asserts that its connection with New Hampshire is insufficient to satisfy the constitutional due process requirements for *in personam* jurisdiction.

## Analysis

The petitioners bear the burden of establishing personal jurisdiction. *Vt. Wholesale Bldg. Prods. v. J.W. Jones Lumber Co.,* 154 N.H. 625, 628 (2006) (citation omitted). The petitioners may defeat the motion to dismiss through a *prima facie* showing of jurisdiction. *Id.* (citation omitted). "While the general rule applicable to motions to dismiss is that all facts properly pleaded by the [petitioners] are deemed true, when those facts relate to personal jurisdiction, the [petitioners] must offer affirmative proof." *Staffing Network v. Pietropaolo,* 145 N.H. 456, 457 (2000) (citations omitted). "To make a *prima facie* showing, the [petitioners] ordinarily cannot rest upon the pleadings, but [are] obliged to adduce evidence of specific facts." *State v. North Atlantic Refining Ltd.,* 160 N.H. 275, 281 (2010) (quotations and citations omitted). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998) (quotation and citation omitted).

"In determining whether the [petitioners] ha[ve] met [their] burden, [the Court] generally engages in a two-part inquiry." *Chick v. C & F Enters.,* 156 N.H. 556, 557 (2007) (quotation and citation omitted). "First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the federal Due Process Clause must be satisfied." *Id.* (quotation and citations omitted). "Because [the Court] construe[s] the State's long-arm statute as permitting the exercise of jurisdiction to the extent permissible under the Federal Due Process Clause, [the Court's] primary analysis relates to due process." *Metcalf v. Lawson,* 148 N.H. 35, 37 (2002) (citations omitted).

"[A] court may exercise personal jurisdiction over a non-resident defendant if the defendant has certain minimum contacts with the forum, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Id.* (quoting *Alacron v. Swanson,* 145 N.H. 625, 628 (2000)). Whether a defendant's activities in the forum state are sufficient to support personal jurisdiction in a particular case depends on "the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make a binding judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Int'l Shoe Co. v. Washington,* 325 U.S. 310, 319 (1945).

The concept of minimum contacts ... can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92 (1980).

Personal jurisdiction over a non-resident defendant can be found in two ways. First, if a non-resident defendant has "purposefully directed" its activities to the forum and the cause of action arises out of or is related to the non-resident defendant's contacts with the forum state, *Lyme Timber Co. v. DSF Investors,* 150 N.H. 557, 559 (2004), then "specific jurisdiction" may be found based on "the relationship among the defendant, the forum, and the litigation." *Brother Records v. HarperCollins Publishers,* 141 N.H. 322, 324 (1996), *cert. denied,* 520 U.S. 1103 (1997) (citing *Calder v. Jones,* 465 U.S. 783, 788 (1984)). If, on the other hand, the cause of action does not arise from or is unrelated to the non-resident defendant's purposeful conduct within the forum state, then the issue becomes one of "general" rather than "specific" jurisdiction, and the defendant can be subject to the Court's jurisdiction if its general business contacts with the forum State are "continuous and systematic." *Lyme Timber Co.,* 150 N.H. at 559 (citation omitted).

As to specific jurisdiction, once it has been determined that the non-resident defendant purposefully established sufficient minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113-15 (1987) (*O'Connor,* J.). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985) (citations omitted). However, regardless of these factors, it must be established that the non-resident defendant purposefully established minimum contacts with the forum state. Even if the non-resident defendant has purposely established minimum contacts with the forum state, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case. *Id.* at 477-78.

Here, the petitioners argue only that the Court has specific jurisdiction over Intact based on Intact's (or Halifax's) issuance of an insurance policy covering, among other things, IOC's (and its subsidiaries') gasoline products operations impacting, or causing alleged injuries in, New Hampshire. The petitioners do not believe it necessary to address questions of general jurisdiction; they advance that they have very limited information regarding the nature and scope of Intact's general or other contacts with New Hampshire.

Regarding specific jurisdiction, "[w]here specific contacts with the forum are the basis for personal jurisdiction, whether those contacts are constitutionally sufficient requires an analysis of the relationship between the defendant, the forum and the litigation." *Lyme Timber Co.,* 150 N.H. at 559-60 (citation omitted).

In determining if the exercise of specific personal jurisdiction comports with due process, [the Court] examines whether: (1) the contacts relate to the cause of action; (2) the defendant has purposefully availed [it]self of the protections of New Hampshire law; and (3) it would be fair and reasonable to require the defendant to defend the suit in New Hampshire.

*Metcalf,* 148 N.H. at 37 (citing *Skillsoft Corp. v. Harcourt Gen.,* 146 N.H. 305, 308 (2001)). "All three factors must be satisfied in order for the exercise of jurisdiction to be constitutionally proper, and each factor must be evaluated on a case-by-case basis." *Id.* at 37-38 (citations omitted).

As to the first prong of the specific jurisdiction test, "this factor involves whether the claim underlying the litigation directly arises out of or relates to [Intact's] forum-state activities." *North Atlantic Ref. Ltd.,* 160 N.H. at 282 (citation omitted). Here, the petitioners seek a judicial determination of their rights, and Intact's (or Halifax's) duties and obligations respecting insurance indemnification in regard to MTBE lawsuits, pending and future, and, in particular, the pending quite large New Hampshire-based MTBE lawsuit. Inasmuch as this action implicates claimed undertakings by Intact or Halifax oriented to cover the petitioners' petroleum operations and activities impacting (in particular) New Hampshire, the Court deems the first prong satisfied. The claim "arises out of" Intact's, or Halifax's, forum-related activity in regard to providing insurance coverage for business operations implicating this state. *See e.g., OMI Holdings, Inc.,* 149 F.3d at 1095 (stating that the provision of insurance coverage in regard to the particular state is sufficient to meet the first prong).

The second requirement for the exercise of specific personal jurisdiction over a defendant is that "the defendant has purposefully availed itself of the protections of New Hampshire law." *Metcalf,* 148 N.H. at 37. The Court concludes that the

Highlands Fuel Delivery, LLC v. American Ins. Co., 2011 WL 7110393 (2011)

petitioners have met their burden in regard to this second prong of the analysis.

A number of courts have decided, prior to the United States Supreme Court's decision in the case of *J. McIntyre Machinery, Ltd. v. Nicastro,* 131 S.Ct. 2780, 564 U.S. ___ (2011), discussed more fully below, that broad "territory-of-coverage" clauses operate to satisfy the purposeful availment prong. *See e.g., Ferrell v. West Bend Mut. Ins. Co.,* 393 F.3d 786, 791 (8th Cir. 2005) (concluding that territory-of-coverage clause stating that the policy provided insurance respecting occurrences in the United States, Puerto Rico, and Canada constituted sufficient contact between Wisconsin insurer and Arkansas to subject insurer to suit in Arkansas where the insured event occurred); *Payne v. Motorists' Mut. Ins. Co.,* 4 F.3d 452, 456 (6th Cir. 1993) (stating that the fact that the insurer "chose to provide coverage for all fifty states ... constitutes purposeful availment requirement of any individual state's forum"); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 913 (9th Cir. 1990) (concluding the purposeful availment requirement was established because the insurance policy coverage extended into Montana and an insured event resulted in litigation there); *See also OMI Holdings, Inc.,* 149 F.3d at 1092-96 (stating that "contacts based solely on an insurance policy's territory of coverage clause [do not] implicate a strong connection between Defendants and the forum state," that "sole reliance on the territory of coverage clause creates contacts which are qualitively low on the due process scale," but ultimately concluding that although there were established minimum contacts "by contracting to defend the insured in the forum state," the exercise of jurisdiction was unreasonable as it there violated notions of "fair play and substantial justice"); *TH Agriculture & Nutrition, LLC v. ACE European Group Ltd.,* 488 F.3d 1282, 1289-91 (10th Cir. 2007) (reflecting some qualifications of the views expressed in *OMI Holdings*).

Here, the Court concludes that the petitioners have established that Intact purposely availed itself of the protections of New Hampshire law. As an insurer of IOL, and its subsidiaries, which had, at all times here pertinent, operations in a number of locations-and certainly significant ones impacting New Hampshire-and the issuer of an insurance policy providing coverage for liability occurring anywhere in the world, Intact (or Halifax) not only could reasonably anticipate the significant risk that IOL, and/or a subsidiary, would become involved in litigation in any state in the United States, to of course include New Hampshire, and that it could have an insurance coverage dispute or question with IOL, and/or a subsidiary, arising from such litigation brought in one of those states, to include New Hampshire, but it had contracted to deal with insured occurrences implicating or impacting New Hampshire.

Intact, however, cites a recent United States Supreme Court case, *J. McIntyre Machinery, Ltd.,* in support of its position that it did not purposely avail itself of the benefits and protections of New Hampshire law so as to be here subject to personal jurisdiction. 131 S.Ct. 2780.

In *J. McIntyre,* a plurality of four of the Justices (joined by two others not willing to accept the plurality's complete rationale) determined that the plaintiff, who had brought a products liability suit in New Jersey, failed to establish that the defendant, an English manufacturer, had engaged in any activities in the forum state that revealed an intent to invoke or benefit from the protection of New Jersey's laws so as to establish personal jurisdiction. *Id.* at 2790. The plurality's decision hinged on the following circumstances: the defendant sold its machines in the United States only through a U.S. distributor; it had not itself sold its machines in the United States; there had been no more than four (and the record suggested only one) of the defendant's machines that had ended up in New Jersey; though certain of the defendant's officials had attended trade shows in several states, they had not gone to New Jersey; the defendant had really done no more, in regard to having any possible connection with New Jersey, than put its product in the "stream of commerce" without in any way targeting the New Jersey forum for its transmission of goods. *Id.*

The plurality decision emphasized that for personal jurisdiction to be found "the question ... [must be] whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct," that "foreseeability [may not be considered] the touchstone of jurisdiction," and (quoting Justice O'Connor's opinion in *Asahi* with approval) " '[t]he placement of a product into the stream of commerce, without more, is not an act of [a] defendant purposefully directed toward the forum State.' " *Id.* at 2788-89.

The Supreme Court's decisions in *J. McIntyre* (the plurality plus the concurrence) reflect that the majority of the Court did not accept what was termed the "stream-of-commerce theory of jurisdiction" adopted by the New Jersey Supreme Court, but insisted that more needs to be shown for the purposeful availment factor to be satisfied in a particular case. *See also,* in this regard, *Vt. Wholesale Bldg. Prods.,* 154 N.H. at 635 (concluding that something more than placing a product in the stream of commerce is needed to satisfy the purposeful availment prong).

*J. McIntyre,* however, dealt specifically with a products liability action against a foreign manufacturer, not an insurance-related dispute such as the one at bar. *Id.* This distinction bears much significance.

Highlands Fuel Delivery, LLC v. American Ins. Co., 2011 WL 7110393 (2011)

> Unlike the automobile sellers in *World-Wide Volkswagen,* automobile liability insurers contract to indemnify and defend the insured for claims that will foreseeably result in litigation in foreign states. Thus litigation requiring the presence of the insurer *is not* only foreseeable, but it was purposefully contracted for by the insurer. Moreover, unlike a product seller or distributor, an insurer has the contractual ability to control the territory into which its "product"-the indemnification and defense of claims-will travel.

*Farmers Ins. Exchange,* 907 F.2d at 914 (citation omitted) (emphasis added).

Insurance companies may well "offer[ ] broad coverage to induce customers to buy [their] policies and to pay higher premiums for them." *Rossman v. State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282, 287 (9th Cir. 1990). Substantial financial benefits may accrue to companies which offer such policies. *Id.* If Intact (or Halifax) had desired "to avoid suit in [New Hampshire] or any other forum, it could have excluded that state from the 'policy territory' defined in the policy," or refused to provide coverage for acts occurring in New Hampshire. *Id.*

Intact argues that "more is required to establish personal jurisdiction over a foreign corporation than the mere happenstance that the national or regional marketing of products may come into contact with a specific state." *See* Intact's Reply to Pets.' Obj. to Mot. to Dismiss, at 3. Yet, and to repeat, by providing coverage "anywhere in the world" in regard to insuring petroleum operations such as the petitioners, that is, by determining to include New Hampshire in the territory of coverage, Intact (or Halifax) purposely availed itself of the benefits of New Hampshire's law by acting to provide insurance with respect to these entities' substantial operations impacting that state.

This is not a case where a manufacturer does no more than put its product in the stream of commerce with no other connection to the particular forum where it comes to be sued. Rather it is one where the insurance company offered insurance, not just to another Canadian company, but to a group of entities that included at least one United States corporation (IOC now Highlands), expressly to cover substantial petroleum operations impacting and involving New Hampshire, among other places, and thus affirmatively implicated itself with New Hampshire in regard to any disputes pertaining to insurance coverage. Intact, or Halifax, may be seen as targeting, for insurance coverage purposes, the New Hampshire-related component of the petitioners' significant petroleum operations.

Lastly, the petitioners have established that subjecting Intact to litigation in New Hampshire is fair and reasonable. *See Phelps v. Kingston,* 130 N.H. 166, 172 (1987) (noting that in determining whether it would be fair and reasonable, the Court considers "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies") (citation omitted).

Here, Intact's burden is not severe. Although Intact is a Canadian company, its offices are not a great distance from either Maine or New Hampshire. "Because suit in a foreign jurisdiction always burdens a foreign company, the defendant must establish that the Court's exercise of jurisdiction would be onerous in a special, unusual, or other constitutionally significant way." *North Atlantic Ref. Ltd.,* 160 N.H. at 286 (quotation and citation omitted). Although "mounting a defense in a foreign legal system" may be burdensome, "a Canadian defendant such as [Intact] bears a substantially lighter burden than do most other foreign defendants." *Id.* (citations and quotations omitted).

This is not a case like *Asahi,* which dealt with a Japanese company having no ties to California, or even *OMI Holdings,* which involved a Canadian insurance company with no offices or representatives in Kansas, where the foreign company would have to litigate in unfamiliar territory. Here, Intact does business "close to the border and to the court where the case is pending," and the New Hampshire judicial system is "rooted in the same common law traditions as that of Canada." *North Atlantic Ref. Ltd.,* 160 N.H. at 286 (citations and quotations omitted). The exercise of personal jurisdiction does not impose a heavy burden on Intact.

Further, both the petitioners and New Hampshire have good interest in adjudicating this dispute in New Hampshire. Not only does one of the petitioners presently maintain is main headquarters in New Hampshire, but this State has a definite interest in regard to the particular insurance dispute. The State of New Hampshire has brought suit against the petitioners, among others, seeking $2 billion dollars in damages for injuries that occurred in New Hampshire, and to the extent that insurance proceeds are available to fund any litigation or remediation, New Hampshire has a special interest in the outcome of this litigation.

The petitioners have a great interest in obtaining convenient and effective relief. There are numerous other named respondents that provided insurance coverage to the petitioners, of which only Intact has filed a motion to dismiss for lack of

**Highlands Fuel Delivery, LLC v. American Ins. Co., 2011 WL 7110393 (2011)**

personal jurisdiction. A single, comprehensive action that resolves coverage disputes would be greatly beneficial to all parties and would likely avoid inconsistent judicial determinations.

Additionally, the interstate judicial system has a great interest in obtaining the most efficient resolution of controversies and there is a shared interest of the several states in furthering substantive social policies. After considering these factors, the Court concludes that it is fair and reasonable to require Intact to defend suit in New Hampshire.

**Conclusion**

For the reasons expressed above, the Court *DENIES* Intact's Motion to Dismiss for Lack of Personal Jurisdiction.

So Ordered.

DATED: 11-29-11

John M. Lewis

Presiding Justice

1       It appears that many of the designated MTBE suits are in a settlement posture or have been resolved, but not the referenced N.H. one.

**End of Document**                                      © 2012 Thomson Reuters. No claim to original U.S. Government Works.