IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

------------------------------------------------------------------x
:
IN RE: CHINESE-MANUFACTURED           :   MDL NO. 2047
DRYWALL PRODUCTS LIABILITY            :
LITIGATION                            :   SECTION:    L
:
THIS DOCUMENT RELATES TO:             :   JUDGE FALLON
:
*Silva v. Arch Ins. Co. et al.*, No. 09-8034    :   MAG. JUDGE WILKINSON
:
*Amato v. Liberty Mut. Ins. Co., et al.*, No. 10-932   :
:
------------------------------------------------------------------x

**KNAUF DEFENDANTS' OPPOSITION TO THE MOTION OF THE NORTH RIVER
INSURANCE COMPANY TO LIFT STAYS AS TO THE KNAUF ENTITIES AND
INTERIOR/EXTERIOR BUILDING SUPPLY COMPANY**

The Knauf Defendants submit this opposition to the motion of the North River Insurance Company ("North River") to lift stays as to the Knauf Defendants and Interior / Exterior Building Supply Company ("InEx").[1] As discussed below, granting North River's motion will impede ongoing efforts to achieve a satisfactory global resolution of this litigation and could compromise the considerable progress that has been made to date.

**BACKGROUND**

On May 13, 2011, the Court preliminarily approved a class action settlement ("InEx Class Settlement") between the Plaintiffs' Steering Committee ("PSC"), InEx, and InEx's

---

[1] The Knauf Defendants identified in North River's motion are Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Gips KG ("Knauf Gips"), Knauf Plasterboard (Wuhu) Co., Ltd., ("Wuhu"); Knauf International GmbH ("Knauf International"), and Knauf Insulation GmbH ("Knauf Insulation").

1

primary insurers [Rec. Doc. No. 8818]. In furtherance of the preliminarily approved settlement, the Court ordered a stay of all claims and cases against InEx and InEx's primary insurers [Rec. Doc. No. 8818].

On December 20, 2011, the Knauf Defendants and the PSC jointly submitted for the preliminary approval of this Court a global settlement agreement ("Knauf Settlement"), the culmination of extensive and hard-fought negotiations and implementation between the various parties [Rec. Doc. No. 12061]. On January 10, 2012, the Court entered an order preliminarily approving the Knauf Settlement and imposing a provisional stay of actions against the Knauf Defendants, "pending the settlement proceedings and further Orders of the Court" [Rec. Doc. No. 12138]. Following resolution and / or deferral of all filed objections to the ordered stay, the Court issued its March 2, 2012 Order Staying Claims Involving KPT Chinese Drywall, reaffirming the stay in favor of the Knauf Defendants with respect to actions for damages allegedly caused by KPT Chinese Drywall [Rec. Doc. No. 12770].[2]

The stays ordered by the Court have played a vital role in promoting and advancing the ongoing settlement proceedings in the Chinese Drywall litigation. The stays have facilitated: (1)

---

[2] The Court's stay orders are consistent with those employed routinely to facilitate settlement proceedings in complex litigations. *See, e.g., In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 247, 2011 WL 2313866, at *7 (E.D. La. June 9, 2011) (Fallon, J.) ("[S]tay orders on parallel state court cases are routinely included in preliminary approval orders of class settlements issued by federal district courts..."); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 450 (N.D. Ill. 2009) ("District courts often issue injunctions against related state proceedings when a settlement has been at least preliminarily approved."); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, MDL No. 926, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994) (staying class certification and class notice proceedings in federal and state actions in order to "assure the fair and orderly conduct and completion of the settlement consideration process...").

negotiation of the joint plan for allocating Banner settlement proceeds, filed with the Court on March 12, 2012 [Rec. Doc. 12912]; (2) negotiation of a protocol and test program for addressing Already Remediated Homes, approved as Pretrial Order 26 on March 29, 2012 [Rec. Doc. 13382]; (3) negotiation of the L&W Class Settlement filed with the Court on March 27, 2012, with a preliminary approval hearing set for April 26, 2012 [Rec. Doc. 13375]; (4) negotiations to conclude the Prospective Insurer Agreement, as to which substantial progress was reported by Special Master John W. Perry on March 22, 2012, and as to which substantial efforts are still being undertaken; (5) negotiations with the PSC to expand eligibility for the Other Loss Fund; (6) ongoing and continuous discussions with individual plaintiffs' counsel who have questions regarding the Knauf Settlement, and the relationship between that settlement and the other building blocks for global resolution (*e.g.*, the Banner, InEx and Prospective Insurer Settlements, and North River's important role in completing the InEx Class Settlement); (7) expansion of the Pilot Program, including offering the self-remediation and cash options in addition to the program remediation option; and (8) implementation of the Major Builder Settlement Agreement approved by the Court on November 16, 2011 [Rec. Doc. 11279].  In addition, the Knauf Defendants continue to prepare for the Fairness Hearing currently scheduled for June 20 and 21, 2012.

In short, the suspension of litigation mandated by the Court's stays has afforded breathing room for the various settling parties, enabling them to focus their efforts on settlement negotiation and implementation without the distraction and disturbance of ongoing litigation. The Court's stays were never intended, however, to shield those parties who elected not to participate in the settlement proceedings.  North River is one such party.  Accordingly, on March

19, 2012, the Court lifted its stay in favor of North River, authorizing the PSC to resume proceedings against North River [Rec. Doc. 13024].

North River responded on March 29, 2012 by petitioning the Court to lift the stays in favor of the Knauf Defendants and InEx [Rec. Doc. 13373]. Unlike North River, the Knauf Defendants and InEx have been and remain firmly committed to the settlement negotiation process. As detailed below, lifting the stay against the Knauf Defendants and InEx would disrupt the ongoing progress of the settlement negotiations and could derail efforts to arrive at a full resolution of this complex litigation.

## ARGUMENT

### A. *North River's contribution is essential to the success of the proposed settlement plan*

North River's memorandum (at page 4) proceeds from an incorrect premise that North River's contribution to a global resolution is not necessary because the Knauf Defendants already have committed to remediating all InEx-supplied properties containing KPT Chinese Drywall. While this argument is advanced primarily to criticize the Court's prior order lifting the stay against North River, rather than to justify North River's present motion to lift the stay in favor of the Knauf Defendants, it is important to correct the misimpression. In fact, the structure of the proposed global settlement makes North River's participation an integral prerequisite to a complete resolution of claims. InEx, and therefore North River, will not obtain global peace without North River's participation.

In particular, the Knauf Defendants entered into their settlement with the PSC in the expectation that North River would make a substantial contribution to the global resolution,

partially offsetting the cost to the Knauf Defendants. The Knauf Defendants negotiated a number of provisions to assure that this would be effectuated. First, the InEx Class Settlement was defined explicitly to include "any supplemental recovery against InEx's excess insurer, The North River Insurance Company." Knauf Settlement § 1.21. Second, any amounts attributable to KPT Chinese Drywall that are "received *or to be received*" under the InEx Class Settlement, including amounts received from North River, must be "deposited into the Remediation Fund" in order to partially offset the Knauf Defendants' costs. Knauf Settlement § 4.8.1 (emphasis added). Third, a satisfactory resolution of claims between "InEx or its insurers" and the Knauf Defendants is a condition to the Knauf Defendants' performance under the Settlement; absent such an agreement, "the Knauf Defendants can terminate the Settlement either in its entirety, or as to all Participating Class Members who are members of or were eligible to participate in … the InEx Class Settlement (if the failure to agree is with InEx or its insurers)." Knauf Settlement § 4.8.6; *see also* § 13.2.1 (reaffirming the Knauf Defendants' right to terminate if there is no agreement with InEx or its insurers under § 4.8.6). North River's position that it may stand on the sidelines and watch other parties settle the litigation with no contribution from North River is unfounded because there will be no global settlement of claims against InEx without a contribution from North River.[3]

### B.  *The Knauf Defendants are not parties to the PSC's actions against North River*

As North River itself acknowledges, North River is a named defendant in only two class action complaints in the Chinese Drywall litigation, *Silva v. Arch Ins. Co., et al.*, Case No. 2:09-

---

[3]  North River also overlooks the fact that when the Prospective Insurer Agreement is finalized, the PSC will take assignments of the builders' third-party claims for indemnity against InEx, which can then be asserted against North River.

cv-08034, and *Amato v. Liberty Mut. Ins. Co., et al.*, Case No. 2:10-cv-00932.  The Knauf Defendants are not named parties to either of these actions, which primarily seek declaratory judgments as to insurance policy coverage.  The presence of the Knauf Defendants was not contemplated in these actions against North River, and though the claims have been pending for over two years, none of the Knauf Defendants have ever been joined as third-party defendants.  Indeed, in connection with a then-impending bellwether trial last year, the Court denied North River's motion to file third-party claims against the Knauf Defendants, recognizing that the participation of the Knauf Defendants was not essential.  [Rec. Doc. 8325].  The single claim filed by North River against the Knauf Defendants in this litigation, *North River Ins. Co. v. Knauf Int'l GmBH, et al.*, Case No. 2:11-cv-01670-EEF-JCW, has been and remains wholly separate from the PSC's actions against North River.  Any effort to consolidate these claims now would unsettle the Court's careful plan for resolving this complex litigation.[4]

---

[4]   Even if North River's claims against the Knauf Defendants were joined with the PSC's claims against North River, severance of North River's claims would be warranted in the interest of promoting the ongoing settlement negotiations.  Fifth Circuit courts enjoy "broad discretion" to sever claims under FRCP 21 or to separate trials under FRCP 42.  *See, e.g., Xavier v. Belfor Group USA, Inc.*, Civil Action Nos. 06-491, 06-7804, 2008 WL 4862549, at *3 (E.D. La. Sept. 23, 2008) ("The district court has broad discretion to sever issues to be tried."); *Rossano v. Blue Plate Foods, Inc.*, 314 F.2d 174, 176 (5th Cir. 1963) ("To effect the salutary purposes of [Rule 42(b)] it is clear that the trial Court must have broad discretion to determine what will further convenience or avoid prejudice.").  In particular, Fifth Circuit courts enjoy discretion to sever claims where, as here, such severance would advance the important goal of achieving a mutually satisfactory settlement among the parties.  *See, e.g., In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368, at *5 n.10 (E.D. La. Oct. 21, 2008) (Fallon, J.) (To determine whether claims should be severed, a district court may consider "whether settlement ... would be promoted."); *Xavier*, 2008 WL 4862549, at *3 (same).

### C. *The presence of the Knauf Defendants is not required for resolution of the PSC's claims against North River*

The Court's stay in favor of the Knauf Defendants will not deny North River the "substantive right to assert claims against the responsible manufacturer." Under Louisiana law, the fact-finder must apportion fault among all parties found to be jointly liable to the plaintiff "regardless of whether the person is a party to the action or a nonparty." La. Civ. Code Ann. art. 2323. *See also Cargill Ferrous Int'l Div. of Cargill, Inc. v. M/V Princess Margherita*, No. Civ. A. 98-3825, 2001 WL 1426678, at *1 (E.D. La. Nov. 13, 2001) (dismissal of third-party claim against co-defendant worked "absolutely no prejudice to the remaining defendants as they will only be liable for their respective percentages of negligence..."). As the Court made clear in its denial of North River's motion to file third-party claims, fault is assessed on "empty chairs all the time" in Louisiana courts. Transcript of Record at 9, Motion Hearing (March 23, 2011) (Docket No. 09-MD-2047). *See also McDermott, Inc. v. AmClyde*, 511 U.S. 202, 217 (1994) (acknowledging that a "defendant will often argue the 'empty chair' in the hope of convincing the jury that the settling party was exclusively responsible for the damage"). Thus, the presence of the Knauf Defendants is not necessary for the purpose of securing the apportionment of fault that North River desires. In the words of this Court, the liability of the Knauf Defendants "will be a part of those proceedings with or without them present." Transcript of Record at 9, Motion Hearing (March 23, 2011) (Docket No. 09-MD-2047).

### D. *Service on the Knauf Defendants has not been perfected*

North River asserts that the Court must lift the stay in favor of the Knauf Defendants so that North River may pursue the "manufacturer of the product," whom North River characterizes as the "party who bears ultimate responsibility." However, lifting of the stay will not suffice to

permit North River to proceed against the "manufacturer of the product," because the manufacturer of KPT Chinese Drywall – *i.e.*, KPT – has not been served.[5] The Knauf Defendants who have been served by North River -- Knauf Gips, Knauf International, and Knauf Insulation -- are *not* the manufacturers of the product at issue in this litigation. Their liability, if any, is wholly derivative of KPT's liability.

Accordingly, lifting the Court's stay in favor of the Knauf Defendants will not place North River in a position to litigate its claims against the Knauf Defendants in a unified proceeding. Instead, absent perfection of service on KPT, North River's claims against the "manufacturer of the product" can only be adjudicated in a separate action. Even if North River's motion were granted, North River would remain obliged to pursue its claims against the Knauf Defendants in the "inefficient piecemeal" fashion it seeks to avoid, and the goals of judicial efficiency and economy would in no way be advanced.

### E. *North River has no need for further discovery from the Knauf Defendants*

North River has engaged in wide-ranging jurisdictional and merits discovery of the Knauf Defendants in the Chinese Drywall litigation. North River has participated in myriad company witness and expert depositions across Europe, Asia and the United States, including the depositions of over a dozen officers and employees of the Knauf Defendants. North River has also had access to voluminous document productions in this litigation, including tens of thousands of documents produced by the Knauf Defendants, and has made use of such documents at company witness depositions. In short, North River has had its bite at the apple.

---

[5] Although InEx also sold drywall manufactured by Wuhu, there is no evidence that Wuhu drywall is reactive. In any event, Wuhu also has not been served.

Moreover, North River has failed to identify any further discovery which it reasonably requires beyond that which has already been taken or made available in this litigation. Given that North River has had full opportunity to take discovery of the Knauf Defendants, has examined the Knauf Defendants' document productions, and has actively engaged in the depositions of numerous Knauf company witnesses, North River cannot now claim that it will be prejudiced by an inability to pursue further discovery of the Knauf Defendants.

### F. The Court's stay raises no constitutional issues

The Fifth Circuit case on which North River predicates its purported constitutional concerns, *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990), is plainly inapposite. That case involved an extraordinary proposal to dispense with the individual trials of almost three thousand asbestos-related claims by extrapolating damages and liability on the basis of a small subset of actually tried cases. *In re Fibreboard Corp.*, 893 F.2d at 708-09. The Fifth Circuit concluded that the proposed trial plan, while "offering an innovative answer to an admitted crisis in the judicial system," was contrary to the fundamental mandate of Texas law that each plaintiff prove causation and damages on an individual basis. *Id.* at 711. Accordingly, the Fifth Circuit rejected the proposed trial plan as "beyond the scope of federal judicial authority." *Id*. Nothing even close to the trial plan examined by the Fifth Circuit in *In re Fibreboard Corp.* is at issue here, and North River fails to explain how an unremarkable stay, of the sort routinely ordered by courts in the context of settlement negotiations, could in this instance constitute an unconstitutional usurpation of substantive state law. To the contrary, the Court's stays are fully consistent with the substantive law of Louisiana, which includes an explicit, statutory provision permitting North River to attempt to allocate fault to the Knauf Defendants without the Knauf Defendants participating in the lawsuit. La. Civ. Code Ann. art. 2323.

## **CONCLUSION**

For the foregoing reasons, the Court should deny North River's motion to lift the stays in favor of the Knauf Defendants and InEx.

Respectfully submitted,

By: Kyle A. Spaulding
MILES P. CLEMENTS (#4184)
PETER E. SPERLING (#17812)
KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
PAUL C. THIBODEAUX (#29446)
FRILOT L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8194
Facsimile: (504) 599-8145
Email: kmiller@frilot.com

- AND -

STEVEN GLICKSTEIN (NY Bar No. 1038157)
JAY P. MAYESH (NY Bar No. 1081603)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
Email: sglickstein@kayescholer.com

Counsel for the Knauf Defendants

Dated: April 9, 2012