IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | *<br>*<br>*<br>*<br>*<br>* | MDL NO. 09-2047<br><br>SECTION L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL CASES | *<br>*<br>* | MAG. JUDGE WILKINSON |

**OBJECTIONS OF THE NORTH RIVER INSURANCE
COMPANY TO THE PROPOSED 30(B)6)
DEPOSITION NOTICE OF THE PSC**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant The North River Insurance Company ("North River") lodges the objections set forth below in response to a proposed Notice of Deposition which seeks a representative of North River to testify on 17 topics, 16 of which are broad, harassing, and largely irrelevant. While the proposed deposition notice will supposedly be issued under Fed. R. Civ. P. 30(b)(6), the vast majority of the proposed topics have no connection with any issue in any case in this MDL proceeding.  North River has communicated with the Plaintiffs' Steering Committee ("PSC") about the proposed deposition notice, both in writing and by teleconference, and the PSC has refused to delete or even revise any of the topics on which North River has raised concerns.  North River therefore objects, as explained in more detail below, to the abusive and oppressive discovery requested by the PSC.

**I.  PROCEDURAL HISTORY**

On March 19, 2012, the Court entered an order lifting prior stays issued by the Court to allow the PSC to proceed against North River in these proceedings.  Even before the Court issued its order, however, the PSC sent to North River a proposed Rule 30(b)(6) deposition notice.  *See* Exhibit A.  Because the overwhelming majority of the seventeen categories on which

___

deposition testimony was requested were far outside the scope of the matters at issue in this case, North River sent a letter to the PSC explaining its concerns about several of the topics and asking the PSC to explain how the topics could be relevant and within the scope of discovery. *See* Exhibit B. The parties conferred by telephone on March 29, 2012, but the PSC refused to withdraw or modify any of its requests. Instead, the PSC took the position that the parties would respectfully have to "agree to disagree" and let the Court resolve all disputes.

At the end of the discussion, North River asked the PSC to issue the deposition notice in order that the matter could move forward. The PSC declined to do so, and instead asked that North River file its objections before the deposition notice was issued. Even though this procedure is in effect asking the Court for an advisory opinion on a deposition notice that has not been issued, North River agreed to file its objections in hopes of avoiding any unnecessary procedural delays. At the request of the PSC, therefore, North River submits its objections and asks that they be sustained by the Court.

## II. THE SCOPE OF DISCOVERY

The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* A court may not expand the scope of discovery beyond what Rule 26 allows, but a court may limit discovery even of relevant matters under appropriate circumstances. *See id.*; Fed. R. Civ. P. 26(b)(2). Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The party seeking discovery bears the burden of showing its necessity. *Woods v. P.A.M. Transport, Inc.-L.U.*, 440 Fed. Appx. 265, 268 (5th Cir. 2011); *Freeman v. United States*, 556

F.2d 326, 341 (5th Cir. 2009). A district court has the duty to guard against abusive discovery. *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

The Fifth Circuit has been especially diligent in protecting against discovery that goes outside the scope of the pleadings or that is without a reasonable basis. Discovery cannot be used as a "fishing expedition in an attempt to determine if there is some basis, however farfetched, to prosecute a claim . . . ." *Woods*, 440 Fed. Appx. at 268, *quoting Lyeth v. Chrysler Corp.,* 929 F.2d 891, 899 (2d Cir.1991). "Rule 26(b) 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'" *Crosby*, 647 F.3d at 264, *quoting Murphy v. Deloitte & Touche*, 619 F.3d 1151, 1163 (10th Cir. 2010).

In *Paul Kadir, Inc. v. Sony Corp.*, 694 F.3d 1017 (5th Cir. 1983), the plaintiff brought suit under the Sherman Act, including a claim of conspiracy. After the defendants filed motions for summary judgment, the plaintiff sought to continue the summary judgment hearing so he could conduct discovery on the conspiracy allegations and conceded that he had no specific evidence of conspiracy. *Id.* at 1020-21. The district court denied the discovery, and the Fifth Circuit affirmed:

> The above considerations support the district court's characterization of appellant's request for discovery as an impermissible fishing expedition. The district court properly concluded that it would be highly unlikely that appellant's discovery requests, if granted, would produce any significant probative evidence of conspiracy in refutation of defendants' Rule 56(e) affidavits. Given appellant's repeated inability to provide any facts in support of its conspiracy theory, the court correctly observed that appellant would not be permitted to go fishing with the hope of fortuitously discovering some unknown and unsuspected evidence of a conspiracy.

*Id.* at 1032.

In *McCreless v. Moore Business Forms, Inc.*, 1997 WL 157005 (5th Cir. 1997) (per curiam), the plaintiff in an age discrimination suit sought discovery concerning the employment treatment of other supervisors and employees while a summary judgment motion was pending. The plaintiff argued that the discovery was appropriate because he expected to obtain "relevant

information concerning similarly situated supervisors and employees" that would "establish certain evidentiary issues that were crucial to his case." *Id.* at *3. The Fifth Circuit affirmed a district court ruling that the plaintiff was not entitled to the discovery because his "assertion that he would obtain 'relevant' and 'crucial' information, without more explanation, is essentially a request for a fishing expedition, to which he is not entitled." *Id. See also Mauldin v. Fiesta Mart*, 1997 WL 255640, *2 (5th Cir. 1997) (request by plaintiff for discovery on employment information on all managers at thirty-four stores over a period of ten years "in the hope that such information will reveal a company-wide preference for Hispanic managers . . . constitutes a 'fishing expedition' calculated to uncover something upon which to rest the otherwise unsupported allegations of his complaint"); *Exxon Corp. v. Crosby-Mississippi Resources, Ltd.*, 40 F.3d 1474, 1487 (5th Cir.1995) (affirming the district court's denial of an extension of discovery before granting summary judgment because the request "was merely a request . . . to conduct a fishing expedition").

The Fifth Circuit has consistently rejected attempts to allow discovery of other conduct involving a party merely because an adversary believes the discovery may reveal facts that would be helpful to the party seeking discovery. In *Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006), a plaintiff alleged that he had been the subject of racial discrimination from a particular supervisor. He sought discovery of the identity of all persons who had been selected or promoted into a management position in five states for a period of eight years. *Id.* at 793. Because the plaintiff alleged discrimination only by a specific manager, there was no relationship between the acts of which the plaintiff complained and the acts of other supervisors in other locations. *Id.* The Fifth Circuit affirmed a district court ruling that prohibited such "broad, and largely irrelevant, discovery." *Id.*

In *Atkinson v. Denton Publ. Co.*, 84 F.3d 144 (5th Cir. 1996), the plaintiff in an age discrimination suit sought the production of personnel files of 59 past or present employees of

his former employer. He argued that the files had the potential to establish a pattern and practice of age discrimination, which would be circumstantial evidence of discrimination. *Id.* at 148. His allegation, however, was that he had been terminated by a specific manager, and many of the files he sought involved employment decisions by other management personnel. Because of the "lack of any nexus" between his factual allegation and the conduct of other managers, the Fifth Circuit ruled that the district court had properly refused to compel production of the files. *Id.*

And in *Conboy v. Edward D. Jones & Co.*, 140 Fed. Appx. 510, 513 (5th Cir. 2005), another age discrimination suit, the plaintiff sought discovery of documents relating to every age discrimination claim that had been filed against the defendant. Because the scope of discovery requires that requested information bear "some relevance to the proceedings," the district court properly refused to allow such broad discovery. *Id.* at 516-17.

### III. THE CLAIMS AGAINST NORTH RIVER

North River has been named as a Defendant in only two putative class action complaints. In the first suit, *Silva v. Arch Ins. Co., et al.*, Case No. 09-08034, Plaintiffs Stephen and Issa Silva have asserted a direct action claim against Interior Exterior Building Supply Company ("INEX"), an insured of North River, North River, and four other liability insurers of INEX. The Silvas allege that they bought defective Chinese-manufactured drywall from INEX and seek a declaration that coverage under the various policies issued to INEX provides coverage with "respect to Interior Exterior's liability for any and all damages or other remedies to which Plaintiffs and/or other class members may be entitled under Louisiana law." The Silvas also seek certification of a class on behalf of all citizens of Louisiana who purchased Chinese-manufactured drywall from INEX, either directly or indirectly, from Jan. 1, 2005, through Dec. 31, 2009.

The second suit, *Amato v. Liberty Mutual Insurance Co., et al.*, Case No. 10-932, was originally filed as a Class Action Complaint in this Court in 2010. The Plaintiffs in that action

appear to be the owners of 421 pieces of residential property in Louisiana, Florida, Virginia, Mississippi, and Alabama. They have asserted claims against approximately 190 different defendants, based on allegations that the Plaintiffs purchased defective Chinese-manufactured drywall that was installed in the Plaintiffs' properties. The *Amato* Plaintiffs allege that they are pursuing nationwide class actions against the manufacturers, distributors, suppliers, importers, exporters, brokers, builders, developers, contractors, and installers of the Chinese-manufactured drywall located in their homes and have asserted claims for negligence, strict liability, breach of warranty, breach of contract, unjust enrichment, nuisance, violations of the Louisiana New Home Warranty Act, redhibition, negligent discharge of a corrosive substance, and violation of consumer protection acts. The *Amato* Plaintiffs are seeking declaratory relief "mandating coverage by the respective Insurance Company Defendants for all damages and remedies under the pertinent insurance policies for the Underlying Claims for which the Insured Defendants are liable." In addition, a proposed subclass of the Plaintiffs have asserted direct action claims against North River and other insurers under Louisiana Revised Statute 22:1269.

There is no allegation in either the *Silva* or *Amato* Lawsuits that North River was involved in the manufacture, distribution, sale, or installation of Chinese-manufactured drywall. Instead, the only basis for liability asserted against North River is that North River provided liability insurance to INEX. INEX is a named defendant in both the *Silva* and *Amato* Lawsuits. There is also no claim that North River has violated any duty of good faith to its insured, nor could there be. North River is an excess insurer of INEX, and the primary coverage available to INEX has not been exhausted.

### IV. OBJECTIONS TO THE PROPOSED DEPOSITION TOPICS

In drafting the proposed topics of inquiry to North River, it is undeniable that the PSC has made no effort to limit discovery to matters that are "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). Instead, the proposed topics appear to be more of a

malefic wish list of items that are designed to burden and harass North River. Most of the topics have no relevance to any claim asserted against North River, and of the few that do, most are incredibly overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

North River objects to these topics contained in the deposition notice: [1]

**1. The INEX Settlement Agreement**

North River is not a party to the INEX Settlement Agreement. The legal effect of the INEX Settlement Agreement is a question of law that is not a proper topic for inquiry about the opinions or interpretations of a party or its designated representative. North River filed objections to the PSC's motion for preliminary approval of the proposed INEX Settlement Agreement on the advice of counsel. The PSC has identified no possible area of questioning relating to the INEX Settlement Agreement that is relevant to any claim against North River or any defense asserted by North River. North River is willing to present a witness to address (1) North River's objection to the proposed settlement (including the requested assignment of rights by INEX to Plaintiffs) and (2) North River's position that approval of the INEX Settlement may not result in the exhaustion of primary coverage that underlies the excess coverage provided by North River to INEX. Any further inquiries about an agreement to which North River is not a party are both improper and irrelevant, and North River objects to this area of inquiry beyond these two topics.

**2. Participation in the INEX Settlement Agreement**

The PSC knows that North River did not participate in the negotiation of the INEX Settlement Agreement. North River was not informed of the settlement discussions until shortly before the proposed settlement was announced. The issues of whether North River did or did not

---

[1] A copy of the proposed deposition notice, which has not been served on North River or filed with the Court, is attached as Exhibit A to these Objections.

_____
NORTH RIVER'S OBJECTIONS TO PROPOSED 30(B)(6) DEPOSITION NOTICE                                     PAGE 7

participate in settlement negotiations, and the reasons it did or did not do so, are not relevant to any claim asserted against North River or to any defense raised by North River. Any such information would be irrelevant and would not be discoverable under Fed. R. Evid. 408. North River therefore objects.

**3. Corporate Structure**

North River objects to a request to produce a representative to discuss the "corporate structure" of North River. That request is not relevant to any claim or defense relating to North River and is not reasonably calculated to lead to the discovery of admissible evidence. From conversations with the PSC, North River understands this request to include the identification of any individual or entity involved in handling the claims against INEX that are at issue in this proceeding and the relationship of any such person or entity to North River. North River does not object to providing a witness on the specific issue of the identity of individuals or entities involved in the handling of Chinese-manufactured drywall claims involving INEX and the relationship between North River and such individuals or entities.

**4. Parent and Affiliate Companies**

North River objects to a request to produce a representative to testify about the "relationship and dealings with your parent, subsidiaries, and affiliates, including Crum & Forster, a Fairfax company, and all other insurance companies within the Crum & Forster family." That request is not relevant to any claim or defense relating to North River and is not reasonably calculated to lead to the discovery of admissible evidence. From conversations with the PSC, North River understands this request to include the identification of any individual or entity involved in handling the claims against INEX that are at issue in this proceeding and the relationship of any such person or entity to North River. North River does not object to providing a witness on the specific issue of the identify of individuals or entities involved in the

handling of Chinese-manufactured drywall claims involving INEX and the relationship between North River and such individuals or entities.

### 5. Regulatory Compliance in all 50 States

North River objects to the absurd request that it present a representative to testify concerning its "regulatory compliance regimen, in all fifty (50) states, but particularly with regard to the State of Louisiana with respect to The Defender type policies" for several reasons. First, North River has no understanding of what is meant by "The Defender type policies." The Defender is a general name given to a wide variety of forms that provides specific areas of coverage and is not a policy in and of itself. Second, there is no claim in this case that the policies issued by North River to INEX are in any way invalid or not authorized in the State of Louisiana. To the contrary, all of the claims that have been asserted against North River in this case have been premised on the correct assumption that there is no regulatory impediment to the use of the forms contained in the policies issued to INEX or to the enforcement of those policies in Louisiana (or any other jurisdiction). There is no pleading that would support discovery on "regulatory compliance regimen" in any jurisdiction; the proposed topic seeking discovery in all fifty states is outrageous and abusive. The request, besides being irrelevant, is overly broad and unduly burdensome on its face.

### 6. Complaints with Insurance Commissioners Regarding the Defender Policies

North River objects to the ridiculous request that it present a representative to testify concerning "[a]ny and all complaints, inquiries, coverage questions or other communications between you and any insurance commission regarding The Defender type policies" for several reasons. First, North River has no understanding of what is meant by "The Defender type policies." The Defender is a general name given to a wide variety of forms that provide specific areas of coverage and is not a policy in and of itself. Second, the request is painfully and patently overbroad. There is no limit on what the subject matter of any of the requested

communications; the request covers things as diverse – and as irrelevant – as font size requirements in Montana, notice provisions in New Hampshire, or mandatory endorsements in Hawaii. Third, all of the claims that have been asserted against North River in this case have been premised on the correct assumption that there is no regulatory impediment to the use of the forms contained in the policies issued to INEX or to the enforcement of those policies in Louisiana (or any other jurisdiction). This request is not just an impermissible fishing expedition; it is a gross abuse of the discovery process that is done purely to burden and harass North River.

### 7. Handling of Chinese Drywall Claims

North River has no objection to presenting a corporate representative to discuss its handling of Chinese-drywall claims made against INEX or its handling of direct action claims based upon the fact that North River is an excess insurer of INEX. The deposition testimony on this matter should be substantially quick; as an excess carrier for INEX, whose primary carriers have not yet exhausted their coverage, North River has had no obligation to take any action under the policies issued to INEX. North River has monitored those claims, primarily through counsel, and by agreeing to present a witness on that topic, North River is reserving all rights to assert the attorney-client privilege or any other applicable privilege. North River objects to this request if the PSC intends to use it to inquire about claims involving any insured of North River other than INEX.

### 8. Placement of Insurance

North River has no idea what the PSC means by a request for a representative to discuss "placing insurance with entities that are parties in Chinese drywall lawsuits" or how that topic has any relevance to the issues in this case. There is no dispute that North River issued policies to INEX or that those policies were received by INEX, and North River has offered to stipulate to the issuance of certain policies issued to INEX and also to stipulate to true and correct copies

of those policies. Whether or not those policies provide coverage to INEX will be a question of law determined in accordance with the controlling substantive law. *See, e.g., Cal–Dive Int'l, Inc. v. Seabright Ins. Co.,* 627 F.3d 110, 113 (5th Cir.2010); *Hotard v. State Farm Fire and Cas. Co.*, 286 F.3d 814, 817 (5th Cir. 2002) (under Louisiana law, interpretation of insurance policy involves questions of law); *Diversified Group, Inc. v. Van Tassel,* 806 F.2d 1275, 1277 (5th Cir.1987). If the PSC intends for this request to mean anything beyond confirming the existence of the policy and confirming the terms and conditions of the policies, North River objects that the topic is irrelevant, overly broad, and unnecessarily burdensome.

**9. Claims Involving Chinese Drywall**

North River has no objection to presenting a corporate representative to discuss its handling of Chinese-drywall claims made against INEX or its handling of direct action claims arising from the issuance of policies to INEX. The deposition testimony on this matter should be substantially quick; as an excess carrier for INEX, whose primary carriers have not yet exhausted their coverage, North River has had no obligation to take any action under the policies issued to INEX. North River has monitored those claims, primarily through counsel, and by agreeing to present a witness on that topic, North River is reserving all rights to assert the attorney-client privilege or any other applicable privilege. North River objects to this request if the PSC intends to use it to inquire about claims involving any insured of North River other than INEX. Further, if this topic is not intended by the PSC to be limited to claims with which North River is involved because of the issuance of policies to INEX, North River objects to the overbreadth and lack of relevance of the topic.

**10. Development, Writing, Marketing and Sale of the Defender Policy in Louisiana**

This is another topic which North River is not sure it understands. As stated earlier, there is no such thing as a Defender Policy; "Defender" refers to a certain coverage form included in some policies. To the extent that this request is intended to mean anything other than confirming

---

the existence of the issuance of policies to INEX or confirming the terms and conditions of those policies, North River objects. The claims against North River are not based upon the development of policy forms or the sale of policies including those forms to entities other than INEX. Instead, the claims are based upon and limited to the coverage, if any, provided under the policies issued by North River to INEX. This involves questions of law. *Hotard*, 286 F.3d at 817. How a particular policy or policy form was prepared or marketed is not relevant to whether the policies issued by North River provide or do not provide coverage to INEX for claims arising out of the distribution or sale of Chinese-manufactured drywall.

**11. Underwriting and Placement of Policies**

North River incorporates its objection to the previous request, for the same reasons set forth therein. In addition, North River objects to any inquiry about policies identified as numbers 553-08520-3 and 553-086807-3, in effect from December 1, 2003 to January 1, 2006. INEX did not import any Chinese-manufactured drywall into the United States or sell any Chinese-manufactured drywall until after January 1, 2006. There is no allegation that would invoke any potential coverage obligation under those earlier policies and those policies are irrelevant to any claim at issue in these proceedings.

**12. Polices Regarding Hiring of Counsel and Reservation of Rights Letters**

North River objects to this harassing and absurd request. Whatever policies North River may have about hiring counsel or issuing reservation of rights letters have absolutely no relevance to the coverage issues involved in this case. This is yet again a blatant attempt by the PSC to completely ignore the issues in this case in its haste to issue a burdensome and irrelevant deposition notice to North River.

**13. Terms and Conditions of the Policies**

North River has proposed that the parties stipulate to true and correct copies of the relevant insurance policies issued to INEX. If the PSC will not agree to stipulate, North River

will produce a witness to testify and authenticate copies of those policies. However, it is completely inappropriate for the PSC to go beyond establishing what the terms of the insurance policies are. "In defining the respective legal rights and obligations of the parties to a . . . contract, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence, unless the contract is ambiguous." *MIE Properties-LA, L.L.C. v. Victory Physical Therapy, LLC*, 2011 WL 6742534, *3 (La. App. 1 Cir. 2011). *See also Guest House of Slidell v. Hills,* 76 So.3d 497, 499 (La. App. 1 Cir. 2011); *Hudson v. Progressive Sec. Ins. Co.*, 1 So.2d 627, 63043,857 (La. App. 2 Cir. 2008), *writ denied*, 5 So.3d 148 (2009). North River therefore objects to any request to produce a corporate representative to express opinions as to what any policy term or condition means or what the legal effect of any policy term and condition may be.

### 14. Claims Handling of the INEX Chinese Drywall Claims

North River will produce a witness on this topic, subject to the objections set forth above to topics 1 through 13. In addition, North River objects to any questions relating to potential extracontractual liability on the part of North River. There is no claim of any type against North River for extracontractual liability. Because North River is an excess insurer for INEX and the primary carriers for INEX have not exhausted their available coverage, any potential duty on the part of North River to indemnify INEX has yet to arise. And because there is no present duty to indemnify or otherwise respond under the policies, there can be no extracontractual liability. Any attempt to undertake discovery on a theory of extracontractual liability would be outside the scope of the pleadings, irrelevant, and not calculated in any way to lead to the discovery of admissible evidence.

### 15. Reinsurance of the Policies

The reinsurance of any policies involves a contract between North River and one or more third parties. Neither INEX nor any Plaintiff is a party to any reinsurance policy. The

contractual relations between North River and its reinsurers are not relevant to any issue in this case involving North River.  *See Louisiana Generating, L.L.C. v. Illinois Union Ins. Co.*, 2011 WL 3475526, *1 (M.D. La. 2011);[2] *American Medical Systems, Inc. v. National Union Fire Insurance Company of Pittsburgh, Inc.*, 1999 WL 781495, *2 (E.D.La.1999).

In addition, any communications between North River and its reinsurers made after North River had a reasonable expectation of litigation are privileged communications.  North River objects to producing a witness on a topic that is both irrelevant and privileged.

**16. Documents Produced in response to Requests for Production**

At the present time, North River has produced no documents in response to requests for production.  If any documents have been produced by the time of the deposition, North River will present a witness to discuss the fact of production and the source of any such documents, but North River objects to any questioning that asks the witness to give opinions about the intent of the drafter of any document or about the legal meaning of any such documents.

## V.  CONCLUSION

For the foregoing reasons, Defendant The North River Insurance Company asks that its objections to the proposed Rule 30(b)(6) deposition notice of the PSC be sustained and that the Court enter an order directing that North River is not required to produce a corporate representative for depositions on those topics to which an objection has been made.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

By:   _____/s Eric B. Berger_____
      BRIAN S. MARTIN, ESQ.
      KEVIN RISLEY, ESQ.
      RODRIGO "DIEGO" GARCIA, JR., ESQ.
      One Riverway, Suite 1600

---

[2] In *American Medical* Systems, not only did Magistrate Judge Reidlinger deny plaintiff's motion to compel reinsurance information, he found that the motion to compel was not  substantially justified and assessed attorney's fees against the plaintiff.  1999 WL 781495 at *3.

        Houston, Texas 77056
        Phone: (713) 403-8206
        Fax:  (713) 403-8299
        bmartin@thompsoncoe.com

        -AND-

        LOBMAN CARNAHAN BATT ANGELLE
        & NADER, PLC

        SIDNEY J. ANGELLE, ESQ.
        La. Bar No. 1002
        ERIC B. BERGER, ESQ.
        La. Bar No. 26196
        400 Poydras Street, Suite 2300
        New Orleans, Louisiana 70130
        Phone: (504) 586-9292
        Fax:   (504) 586-1290
        sja@lcba-law.com
        ebb@lcba-law.com

        ATTORNEYS FOR THE NORTH RIVER
        INSURANCE COMPANY

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on April 11, 2012.

        _____/s Eric B. Berger_____
        ERIC B. BERGER