## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** <br> **SECTION: L** <br> **JUDGE FALLON** <br> **MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO: ALL CASES** | |

### THE PLAINTIFFS' STEERING COMMITTEE'S RESPONSE TO THE OBJECTIONS OF THE NORTH RIVER INSURANCE COMPANY TO THE PROPOSED 30(B)(6) DEPOSITION NOTICE OF THE PLAINTIFFS' STEERING COMMITTEE

This Court is familiar with our allegations that North River Insurance Company ("North River") has failed to cooperate and/or participate in this litigation.  North River has refused to act in good faith despite a duty to cooperate and participate in discovery as excess insurer of Interior Exterior ("InEx").  After lengthy delays caused by North River, on February 28, 2012, the Plaintiffs' Steering Committee ("PSC") filed a Motion to Lift the Stay of discovery [Rec. Doc. 12459]. Following a court directed conference, the Court indicated that it would lift the stay.  On March 19, 2012, the Court issued an Order which directed the PSC to commence discovery directed to North River.  That day, the PSC served a First Set of Requests for Production to The North River Insurance Company.  North River has been ordered to produce documents responsive to the request by April 18, 2012 [Rec. Doc. 13570].  To date no documents have been received by the PSC.

On March 20, 2012, the PSC forwarded to North River an advance draft of a Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) (a copy is attached as Exhibit "A" to the objections filed by North River).  On March 27, 2012, North River provided written objections to the draft Notice and requested a Rule 37.1 conference (a copy is attached as Exhibit "B" to the

objections filed by North River).  On March 29, 2012, the parties participated in a Rule 37.1 conference.  To date, North River's single discovery production resulted in the completion of a Profile Form.

Discovery requires candor in responding.  The Federal Rules require that a response be an accurate statement of either information sought or an objection to furnishing the information.  Partial answers are neither candid nor accurate, but are evasive.  *See* Fed.R.Civ.P. 33, 34, 36 and 37.  The Federal Rules of Civil Procedure relating to oral and written discovery are accorded broad treatment. *See* Fed.R.Civ.P. 26 through 37.   The purpose of discovery is to make a trial "less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *United States v. Proctor & Gamble Co.,* 556 U.S. 677 (1958).

North River's assertion that  the PSC is attempting a "fishing expedition" has no basis.  A full disclosure of the relevant facts that North River possesses is essential.  To that end, the PSC may compel North River to disgorge whatever relevant facts North River may have in its possession. This will reduce the possibility of surprise. *Hickman v. Taylor*, 329 U.S. 495 (1947).  To date, North River has not identified whether its refusal to participate in discovery relates to coverage issues or to actual defenses on the merits.  The PSC is entitled to discover North River's defenses, discoverable facts and documents.

Contrary to North River's narrow view of discovery, it is well established that discovery contemplates a fact/notice pleading system established by the Federal Rules.  Discovery also applies to issues designed to define and clarify the issues.  *Oppenheimer Fund, Inc. v. Sanders*, 347 U.S. 340 (1978).  It is not ground for objection that information sought will be inadmissible at trial if discovery appears reasonably calculated to lead to discovery of admissible evidence.  Consistent

with *Hickman v. Taylor, supra*, discovery is not limited to issues raised solely by the pleadings, nor is discovery limited to the merits of a case. *Oppenheimer v. Sanders, supra*.[1]  Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery.  The PSC may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  In addition, for good cause, the Court may order discovery of any matter relevant to the subject matter involved in the action, even if it is not admissible, provided it appears reasonably calculated to lead to the discovery of admissible evidence.

North River's objections to the proposed deposition topics lack merit.  The PSC seeks to depose a corporate representative(s) of North River and has set forth the areas of inquiry in its proposed notice.   The objections that North River has set forth are premature at best. Notwithstanding the foregoing, a way to address North River's concerns is to take the deposition in New Orleans at the federal courthouse and that way the North River 30(b)(6) designee can appear in the courthouse in the United States District Court, Eastern District of Louisiana, so that any deposition disputes can immediately be brought to the Court's attention and ruled upon.  Another way to address North River's concerns is to proceed with the deposition in its designated location, reserving unto North River its rights to object to relevance at a later date.  Indeed, the only objections permissible are objections to form or privilege.  The Court has "fast tracked" this litigation and the PSC's intent is to proceed expeditiously and move the litigation on a fast track.

---

[1] For example, issues may arise as to jurisdiction or venue and discovery should be available to ascertain the facts bearing on such issues.  Similarly, discovery is used to determine class action status under Rule 23.  See footnote 13 of *Oppenheimer v. Sanders*.

The 17 deposition topics set forth in the PSC's Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) are relevant and germane to this litigation. Each will be addressed below:

1.    **The InEx Settlement Agreement**

On April 21, 2011, a Joint Motion for an Order Preliminarily Approving the InEx Settlement Agreement was filed with the Court. That Agreement to Settle was reached with InEx, as well as its primary insurers, Arch Insurance Company and Liberty Mutual Fire Insurance Company. For reasons unknown to the PSC, InEx's excess insurance carrier, North River, has refused to participate. North River was invited to attend and participate in the Settlement but chose to ignore those requests. It is unquestionable that InEx's primary insurance has already or will undoubtedly be used and North River has substantial exposure. It is as if North River does not recognize that its exposure is imminent. Certainly, the primary insurers recognize that exhaustion of policies is not an issue. North River's claim that the PSC is "ridiculous" and "absurd" is not worthy of retort. However, such attacks reflect an unprofessional posture in this litigation. North River elected to travel to China to participate in depositions of Taishan, yet contends it has no responsibility here. North River refuses to identify its position with respect to coverage, defenses or liability on the merits. As stated previously, North River has not identified whether its refusal to participate in discovery relates to coverage issues or to actual defenses on the merits, and the PSC is entitled to discover this.

Section 1.4 of the InEx Agreement addresses the term "Assignment of Insurance" as follows:

1.4.    **Assignment of Insurance.** "Assignment of Insurance" shall mean the assignment to the Non-Louisiana Subclass by InEx of any and all rights of InEx against the Excess Carrier to (i) insurance coverage for Chinese Drywall claims of the Non-Louisiana Subclass against InEx but only to the extent that such claims of the Non-Louisiana Subclass exceed $8,000,000 but do not exceed the Available Policy Limits and (ii) damages for bad faith or

extra-contractual conduct.

Section 1.4 of the InEx Agreement assigns InEx's rights against the North River insurance coverage in excess of $8,000,000.00 up to the policy limits and damages for bad faith or extra contractual conduct. The assignment is only applicable to the non-Louisiana subclass. Louisiana has a Direct Actions Statute. The PSC certainly should have the right to inquire of North River regarding these matters.

Furthermore, on December 20, 2011, a Joint Motion of Proposed Settlement Class Counsel, the PSC and Knauf was filed seeking a preliminary approval of the Knauf Settlement [Rec. Doc. 12061-5]. The Settlement Agreement regarding claims against the Knauf Defendants in MDL 2047 ("Knauf Agreement") provides in Section 4.8.2 the following:

> 4.8.2. Each Participating Class Member shall assign his/her claims (to the extent that they relate to KPT Chinese Drywall) to any net recovery under the InEx, Banner and Prospective L&W Settlements to the Knauf Defendants, if not already assigned. Any amounts recovered from the InEx, Banner and Prospective L&W Settlements based on such assignments shall be deposited into the Remediation Fund, for purposes of providing Settlement benefits to the individual Participating Class Member(s) involved. For example, if the KPT Drywall Percentage for a Participating Class Member is 40%, then 40% of the Participating Class Member's recovery under the InEx, Banner and/or Prospective L&W Settlements shall be deposited into the Remediation Fund and the Participating Class Member shall be entitled to 60% of the recovery. To the extent a Participating Class Member already has recovered amounts from the InEx, Banner and Prospective L&W Settlements, the Participating Class Member shall deposit an amount equal to his/her recovery to the extent of the KPT Drywall Percentage into the Remediation Fund for purposes of providing Settlement benefits to the individual Participating Class Member(s) involved. If (and only if) the Participating Class Member does not deposit an amount equal to his/her recovery to the extent of the KPT Drywall Percentage into the Remediation Fund, that amount shall be deducted from any benefit otherwise owing to that Participating Class Member.

This provision provides that Class Members will assign their KPT Chinese Drywall claims to any net recovery under the InEx Agreement to the Knauf Defendants. The funds received are to

be deposited into the Remediation Fund for purposes of providing settlement benefits to the individual Class Members.  Since the agreement is between the PSC and the Knauf Defendants, irrespective of the assignment, the PSC should be able to discover any communication or actions by North River with respect to the Knauf Agreement and whether any of those claims may have been considered by North River in connection with the InEx Settlement Agreement.

**2.**     **Your participation and request to participate in any Chinese drywall settlement, including the InEx Settlement Agreement**

See comments to No. 1 above.

**3.**     **Your corporate structure**

The corporate structure of North River is needed so that the PSC can get a full understanding of the hierarchy and working relationships between individuals and departments for subsidiaries within the North River family of insurance entities.  Here, the PSC is aware that representatives from Crum & Foster actively participated in insurance matters involving InEx and, in fact, Crum & Foster personnel authored and sent correspondence.  The PSC is entitled to discover who made policies and procedures, issued guidelines and ultimately made decisions with respect to the North River InEx insurance.  As any other corporate entity, North River must disclose information about itself.  The PSC only has the Profile Form produced by North River.  North River has not made and was not required to make initial disclosures pursuant to Federal Rule 26(a)(1).  The information sought by the PSC is basic routine discovery.

**4.**     **Your relationship and dealings with your parent, subsidiaries and affiliates, including Crum & Foster, a Fairfax Company, and all other insurance companies within the Crum & Foster family**

See comments to No. 3 above.

5.      **Your regulatory compliance regiment in all fifty (50) states, but particularly with regard to the State of Louisiana with respect to The Defender type policies**

North River has stated to the Court that it "has no understanding of what is meant by 'The Defender' type policies." At best, North River's comment is disingenuous. North River, on the face of the policy it issued, calls its policy "The Defender." Furthermore, as the Court is aware, on March 19, 2012, one day prior to issuing the Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6), the PSC sent to North River a First Set of Requests for Production of Documents. Within that request, the PSC defined "The Defender type policies" in definition (q) as follows:

> (q)      "Defender Policies" or "The Defender" refers to The Defender commercial umbrella liability policy designated by form no. FM101.0.1108 (0999) which is issued by the United States Fire Insurance Company, the North River Insurance Company, Crum & Foster Insurance Company or Crum & Foster Underwriters Company of Ohio or Crum & Foster Indemnity Company.

North River's brief setting forth objections to the deposition notice explains why the PSC should be entitled to inquire as a 30(b)(6) deposition of North River into areas regarding The Defender type policies, including regulatory compliance and insurance commissioner complaints. North River argues that "The Defender is a general name given to a wide variety of forms that provides specific areas of coverage and is not a policy in and of itself." The PSC should be able to inquire as to that contention. Further, plaintiffs are entitled to discover substantive issues regarding The Defender type policies that may have arisen with any insurance commission. It is certainly not the PSC's intent to waste time discussing font size requirements in any state or other mundane non-substantive issues.

6.      **Any and all complaints, inquiries, coverage questions or other communications between you and any insurance commissioner regarding The Defender type policies**

See comments to No. 5 above.

7.      **Your handling of insurance for Chinese drywall claims**

North River concedes that the PSC can inquire into this topic.  However, the PSC does not agree that merely because North River may have had counsel monitoring certain claims that the attorney/client privilege or other privileges apply.  North River has submitted no privilege log as to any writings, recorded or electronic materials.

8.      **Your placing insurance with entities that are parties in Chinese drywall lawsuits**

The PSC is entitled to determine what underwriting principles, practices and actions North River used in placing coverage with or policies with InEx or other entities that are in the Chinese drywall litigation.  North River has not filed a Stipulation with the Court as to the authenticity and completeness of any of its policies.  The PSC is entitled to broad discovery regarding any policies underwritten, negotiated or placed by North River.  In *Sosebee v. Steadfast Insurance Company*, 2011 WL 2637324 (E.D. La. 2011), Magistrate Judge Knowles specifically ruled on the right of a plaintiff to discover claims handling guidelines and underwriting manuals/guidelines.  The court granted a motion to compel documents stating "Such information may lead to the discovery of admissible evidence as to whether Steadfast waived the affirmative defense.  These materials are routinely sought in insurance-coverage disputes...."  Just as in *Steadfast*, North River must provide discovery regarding the placing, underwriting, negotiating, claims handling guidelines and underwriting of its policy.

9.      **Claims involving Chinese drywall**

        See comments to Nos. 1, 3, 5, 7 and 8 above.  It should be undisputed that the PSC is entitled

to discover information regarding the claims handling of any Chinese drywall matters.  North River

appears to concede that the PSC has a right to discover claims involving InEx.  The PSC does not

concede that North River has any attorney/client privilege or other applicable privilege.  *See also*

*Sosebee v. Steadfast, supra.*

10.     **The  development,  writing,  marketing,  and  sale  of  The  Defender  type  policies  in
        Louisiana**

        See comment to No. 5 above.

11.     **The  underwriting,  negotiation  or  placement  of  the  following  policies:  553-08520-3
        effective  12/1/03  to  1/1/05;  553-086807-3  effective  1/1/05  to  1/1/06;  553-088195-1
        effective 1/1/06 to 1/1/07; 553-089469-5 effective 1/1/07 to 1/1/08; 553-090750-2 effective
        1/1/08 to 1/1/09;  and 553-091952-6 effective 1/1/09 to 1/1/10**

        See comment to No. 8 above.

12.     **Your policies, procedures, implementation of policy and procedures, including those
        with regard to hiring coverage counsel and issuing reservation of rights letters
        following receipt of a claim**

        The PSC is entitled to know who was hired as counsel for North River.  The PSC certainly

respects the attorney/client privilege, but reservation of rights letters and their meaning, as well as

communications back and forth regarding coverage, should be discoverable.

13.     **The terms and conditions of the Policies, including, but not limited to any policy terms
        dealing with coverage issues, payment of proceeds and other insurance, cooperation
        and assignment of interest**

        See comments to Nos. 1, 5 and 8 above.

14.     **Claims handling of the InEx Chinese Drywall Claims**

        See comments to Nos. 1, 5 and 8 above.

15.     **Reinsurance of the Policy**

To the extent any reinsurance policies exist, the PSC is entitled to discover this information. See *Sunnen Products Company v. Travelers Casualty and Surety Company of America*, 2010 WL 743633 (E.D. Missouri); *Medmarc Casualty Insurance Company v. Arrow International, Inc.*, 2002 WL 1870452 (E.D. Penn.). Furthermore, if any Chinese drywall matters are at issue with respect to reinsurance, including the InEx claims, then the PSC is entitled to discover the same.

16.     **Documents produced in response to Requests for Production**

Clearly the documents that North River produces should be the subject of deposition questioning. North River's objection about the intent and drafting of documents is without basis.

17.     **Claims and defenses asserted in this litigation**

North River did not address this issue. Apparently, it concedes that the PSC is entitled to discover claims and defenses asserted in the litigation.

## CONCLUSION

The PSC's Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) seeks properly discoverable information. North River's objections should be denied and the PSC

should be allowed to proceed with North River corporate representative's deposition on the subjects

designated in our notice of deposition.

.                                        Respectfully submitted,

Dated: April 16, 2012                    /s/ Russ M. Herman
                                         Russ M. Herman, Esquire (Bar No. 6819)
                                         Leonard A. Davis, Esquire (Bar No. 14190)
                                         Stephen J. Herman, Esquire (Bar No. 23129)
                                         HERMAN, HERMAN, KATZ & COTLAR, LLP
                                         820 O'Keefe Avenue
                                         New Orleans, Louisiana 70113
                                         Phone: (504) 581-4892
                                         Fax: (504) 561-6024
                                         LDavis@hhkc.com
                                         *Plaintiffs' Liaison Counsel MDL 2047*

                                         Arnold Levin
                                         Fred S. Longer
                                         Matthew C. Gaughan
                                         Levin, Fishbein, Sedran & Berman
                                         510 Walnut Street, Suite 500
                                         Philadelphia, PA 19106
                                         215-592-1500 (phone)
                                         215-592-4663 (fax)
                                         Alevin@lfsblaw.com
                                         *Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
egonzalez@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

-12-

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
Daniel@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
119 Washington Ave.
Suite 402
Miami Beach, FL 33139
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 16th day of April, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047