IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * | MDL NO. 09-2047<br><br>SECTION L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL CASES | * * * | MAG. JUDGE WILKINSON |

**REPLY MEMORANDUM IN SUPPORT OF THE
MOTION OF THE NORTH RIVER INSURANCE COMPANY
TO LIFT STAYS AS TO THE KNAUF ENTITIES AND
INTERIOR/EXTERIOR BUILDING SUPPLY COMPANY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant The North River Insurance Company ("North River") finds itself in a strange and inherently unfair posture in this litigation: not only has North River been ordered by the Court to litigate thousands of claims involving allegedly defective products that North River did not design, manufacture, distribute or sell, but North River has been ordered to do so without the involvement of (a) Certain Knauf Entities ("Knauf"),[1] the manufacturer of most of the product or (b) Interior/Exterior Building Supply Company ("INEX"), North River's insured who sold the product, who is required by the controlling substantive law of Louisiana to be a party to the litigation.

Needless to say, Knauf and INEX take great delight in the dilemma in which North River finds itself and they oppose North River's requests to lift the relevant stays to include them in the litigation.  Neither of them deny that the litigation would be more efficient if all claims and parties were actively involved in a single proceeding, nor do they offer any authority for the Court to ignore the mandatory requirement of the Louisiana Direct Action Statute that requires

_____
REPLY IN SUPPORT OF NORTH RIVER'S MOTION TO LIFT STAY                                                                   PAGE 1

INEX's involvement in the cases. Instead, their opposition is based on an unstated, but much more insidious, purpose.

Both Knauf and INEX currently have settlement proposals pending before the Court which would resolve a substantial portion of the claims involving drywall manufactured by Knauf and sold by INEX. As the proposed settlement is currently structured, Knauf retains the right to reject the settlement unless Knauf is satisfied with the funds recovered from others involved in the Knauf-INEX distribution chain, including installers, homebuilders, resellers, and liability insurers of INEX. This means that, even though Knauf has never seriously denied the fact that the majority of the drywall it sold was defective, Knauf retains full veto power over the settlement unless innocent parties in the distribution chain pay money for Knauf's wrongful conduct. Why would Knauf care whether North River or the other innocent parties in the litigation pay money to settle the Plaintiffs' claims? Under the proposed settlement, Knauf is to fund a remediation fund of an indeterminate amount. Every dollar in settlement that is received will go into the remediation fund, which reduces Knauf's settlement exposure on a dollar-for-dollar basis. And why would Plaintiffs care whether North River or other innocent parties pay money into a remediation fund if it will not increase the total amount of the fund? Under the proposed settlement agreement, the lawyers for the Plaintiffs' Steering Committee will be entitled to seek additional attorney's fees from the Court if other parties pay into the remediation fund.

North River finds it ironic that it should have to continue to litigate claims that exist only for the benefit of Knauf, the ultimate wrongdoer, and Plaintiffs' attorneys, who intend to seek at least $160 million in fees from the Knauf and INEX settlement. The ongoing litigation against North River is not about helping Plaintiffs who purchased defective drywall manufactured by

---

[1] "Certain Knauf Entities" refers to Knauf International GmbH, Knauf Insulation GmbH a/k/a Knauf USA, Knauf GIPS KG, Knauf Plasterboard (Wuhu) Co., Ltd., and Knauf Plasterboard (Tianjin) Co., Ltd.

Knauf. Whether or not North River settles will not change the total amount available for remediation of impacted homes. Instead, the only purpose of the pursuit of the claims against North River is to try to coerce a settlement from North River for the benefit of Knauf and the PSC, even though it will result in no benefit to the Plaintiffs.

If that battle must be fought, North River is willing to take part, provided, however, that the battle is a fair one. It is not fair to subject North River to defend claims against it while at the same time stripping North River of the substantive and procedural safeguards for fully allocating responsibility on the proper party or parties. Knauf and INEX realize that North River is at a significant disadvantage in the procedural posture of this case, and it is their goal to make the Court a willing participant in their efforts to deny North River the ability to defend itself. If the Court is going to require North River to defend itself, then the Court must also lift the stay in favor of Knauf and INEX so that the litigation has to proceed only once, and in a fair, comprehensive, and productive manner.

## THE INEX OBJECTIONS TO LIFTING THE STAY

The basic thrust of INEX's objections to lifting the stay is that the Court should punish North River for having the audacity to not accede to the outrageous settlement demands from the Plaintiff's Steering Committee ("PSC"). That is a legally preposterous argument; all parties have the right to defend claims asserted against them, and reach a settlement if they choose to do so, but no party can be penalized for believing that it is in the party's best interests to continue to litigate, whether or not that party eventually settles.

INEX's position is also factually absurd. INEX, prior to reaching a tentative settlement with Knauf, sought summary judgment on the ground that INEX was a seller who did not know of the defect in the Knauf drywall and was entitled to the limitation of liability provided by Louisiana Civil Code art. 2531. If that position is correct – and INEX sought relief from the

___

Court based on the truth of that position – then the total liability of INEX to the Plaintiffs who purchased Knauf drywall might well be below the primary coverage available to INEX.

In its motion to lift the stays, North River directed the Court to La. Rev. Stat. 22:1269, which requires that the insured be a party to a direct action against its insurer in the absence of certain exceptions that do not exist in this case. INEX's response to this statutory mandate is that INEX is not a necessary or proper party to litigation involving North River because "the claims that the PSC are pursuing are not based on the liability of Interior Exterior but aimed at North River's handling of Interior Exterior's claim." INEX Opposition at pp. 5-6. That response is both inaccurate and meaningless, because (a) there is nothing in La. Rev. Stat. 22:1269 that creates a claims-handling exception, (b) there are no allegations of bad-faith claims handling in any of the complaints filed against North River, and (c) none of the Plaintiffs would have standing to assert claims-handling allegations against North River. The evasive position taken by INEX is a tacit admission that it is required by law to be a party to the litigation involving North River. INEX certainly has not given the Court any basis for ignoring Louisiana law.

## THE KNAUF OBJECTIONS TO LIFTING THE STAY

Knauf's objections to lifting the stay in its favor could not make it any clearer that Knauf agrees with INEX that North River should be treated like a miscreant for not caving in to the PSC's settlement demands. In its very first paragraph, Knauf argues that lifting the stay to allow North River to litigate its claims against Knauf "will impede ongoing efforts to achieve a satisfactory global resolution of this litigation and could compromise the considerable progress that has been made to date." Knauf Opposition at 1. The rest of Knauf's response is filled with self-adulation about its progress in trying to reach a settlement. While Knauf represents to the Court that it is "firmly committed to the settlement negotiation progress," *id.* at 4, it immediately adds that "the Knauf Defendants entered into their settlement with the PSC in the expectation

that North River would make a substantial contribution to the global resolution, partially offsetting the cost to the Knauf Defendants." *Id.* at 4-5.

While Knauf is to be thanked for its candor on this issue, its logic is highly questionable. Far from being the white knight it wants to present to the Court, Knauf is now saying that its settlement with the PSC is based on an "expectation" that North River would make a "substantial contribution" to the settlement in order to pay money to Knauf for Knauf's *own wrongful conduct*. Put in plain English, Knauf is now saying that it has always been Knauf's intention to make the settlement contingent upon North River and other innocent parties paying a substantial amount for the damage caused by Knauf. Undoubtedly having others pay for Knauf's defective product is an appealing prospect to Knauf, but that self-serving goal finds no support in the law. What may threaten the ongoing settlement talks is not the lifting of the stays, but Knauf's petulance if others choose not to pay money that will benefit Knauf for selling a defective product.

If the Knauf settlement with the PSC really is contingent on payments from others who are not part of the agreement, why did Knauf and the PSC represent to the Court that a settlement had been reached, and why did the PSC issue a press release announcing a settlement that could be worth as much as a billion dollars? If North River's involvement is essential to the deal cut between the PSC and Knauf – and North River does not agree that its involvement should be the linchpin of a deal to which it has not agreed and is not a party – then the PSC and Knauf should not have wasted the time of the Court's time with grandiose announcements of a deal that we are now told is apparently no deal.

Knauf also makes a point of mentioning that while North River has achieved service on three of the Knauf Entities, service on Knauf Plasterboard Tiashan ("KPT") has not been completed. While that is true, it is solely the result of litigation strategy devised by Knauf. While KPT was willing to accept service on complaints filed by the PSC, it has chosen not to

extend that same professional courtesy to North River. North River has therefore been required to serve the various Knauf Entities through the Hague Convention – a process that the Court has recognized is slow, cumbersome, and expensive. The Knauf Entities in Germany have been successfully served, but service on KPT, located in China, takes a substantially longer time. Knauf's reliance on the status of service of KPT is significant for two reasons. First, if Knauf was really interested in obtaining a quick and global settlement, Knauf would not have delayed the litigation by insisting on service through the Hague Convention. It is undoubtedly Knauf's right to use procedural devices in an effort to improve its position in the litigation, and it should be free to do so without punitive consequences – but North River should also be accorded the same right. Second, it shows that Knauf is trying to use its own dilatory tactics as a basis for avoiding a full resolution on the merits of the claims against Knauf. Knauf is using the grant or withholding of its litigation favors to create a double standard to the detriment of parties who will not fall in line to pay money to Knauf for Knauf's wrongful conduct. That is not the type of litigation conduct that is conducive to a "just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

Knauf also argues that Knauf's presence in the litigation is not necessary because North River can "try the empty chair" and obtain a percentage finding of Knauf's responsibility. Knauf Opposition at 7. That will not resolve all of North River's claims against Knauf, however. Under the redhibition statute, an entity in the distribution chain has a right to assert a claim against the manufacturer to compensate the entity for damages resulting from the sale of the manufacturer's defective product. Based on that statute and the pleadings in this case, North River is entitled to not just a percentage responsibility finding, but also a money judgment against Knauf.

## THE REAL ISSUE: CAN THE COURT PUNISH
## NORTH RIVER FOR NOT SETTLING?

The oppositions filed by Knauf and INEX present a very disturbing question to the Court: Can a court deprive a defendant of the substantive and procedural protections guaranteed by Louisiana law at the request of other parties in order to punish the defendant for not settling? In its Opposition, Knauf makes a very interesting statement: "The Court's stays were never intended, however, to shield those parties who elected not to participate in the settlement proceedings." Knauf Opp. at 3. Besides being somewhat presumptuous for Knauf to explain the Court's purpose in entering stays, that statement succinctly puts forth the position of Knauf and INEX: the Court should protect those who agree to compensate Knauf for the manufacture and sale of defective drywall, and the Court should punish those who do not.

North River recognizes that settlements can be beneficial in many circumstances and North River continues to move forward in ways that may result in a settlement. North River also recognizes that it may be appropriate for a court to take actions that may help facilitate settlement, such as a court-ordered mediation or a stay of proceedings. What North River does not recognize, however, is a litigation system that is skewed in a way that makes it punitive and coercive for a party to want to litigate the claims against it and the claims that it has against others. That is clearly the environment that Knauf and INEX desire, and they are making no attempt to hide their efforts to seek the Court's assistance in manufacturing such an impermissible litigation world.

The arguments now being made by Knauf and INEX may have had some relevance if the issue was to keep a uniform stay in effect as to all parties. Unfortunately, they want to use a partial stay as a means of punishment for those who have dared not to blindly accept their view of what constitutes a reasonable settlement. Once the stay of claims against North River is lifted, however, fundamental fairness requires that the Court cannot use the continuation of a partial

---

stay in hopes of coercing North River into conduct that Knauf and INEX want North River to take.

Neither Knauf nor INEX really dispute that lifting the stays in place so that all phases of the litigation involving North River can go forward is a more efficient way of proceeding. Neither disputes that the Fifth Circuit has repeatedly expressed its disapproval of piecemeal litigation. Their position is simply a variation on the "not-in-my-neighborhood" argument that is often made: they are all in favor of forcing others to bear the burden of going forward with litigation, just as long as they do not have to participate. That is not how litigation is supposed to work. Because the Court has lifted the stay to allow part of the litigation involving North River to go forward, basic concepts of fairness and efficiency mandate that all portions of that litigation should go forward.

## CONCLUSION

For the foregoing reasons, Defendant The North River Insurance Company asks that the existing stays in favor of Certain Knauf Entities and Interior/Exterior Building Supply Company be lifted.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

By:    /s Eric B. Berger
BRIAN S. MARTIN, ESQ.
KEVIN RISLEY, ESQ.
RODRIGO "DIEGO" GARCIA, JR., ESQ.
One Riverway, Suite 1600
Houston, Texas 77056
Phone: (713) 403-8206
Fax:  (713) 403-8299
bmartin@thompsoncoe.com

LOBMAN CARNAHAN BATT ANGELLE & NADER, PLC

SIDNEY J. ANGELLE, ESQ.
La. Bar No. 1002

ERIC B. BERGER, ESQ.<br>
La. Bar No. 26196<br>
400 Poydras Street, Suite 2300<br>
New Orleans, Louisiana 70130<br>
Phone: (504) 586-9292<br>
Fax:   (504) 586-1290<br>
sja@lcba-law.com<br>
ebb@lcba-law.com

ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on April 16, 2012.

_____/s Eric B. Berger_____
ERIC B. BERGER