UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON |
| ALL CASES | * * * | MAGISTRATE WILKINSON |

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

JOSEPH RODRIGUES

who, being duly sworn, upon his oath deposed and stated as follows:

1.    He was the President of MILLENNIUM HOMES & DEVELOPMENT, INC. ("Millennium Homes & Development"), and as such, has personal knowledge of the following based on his review of records that were maintained by Millennium Homes & Development in the regular course of business.

2.    Millennium Homes & Development was a corporation organized and existing under the laws of the State of Florida and had its principal place of business in Hillsborough County, Florida.

3.    Millennium Homes & Development was voluntarily dissolved on or about July 13, 2009, as shown in the records of the Florida Department of State.

4.    Millennium Homes & Development was a home builder that contracted with third party


EXHIBIT
"A"

vendors for the construction of single-family homes and/or sold completed single-family homes.

5. Millennium Homes & Development never built a residence in the State of Louisiana or had any contracts or subcontracts with companies located in Louisiana.

6. Millennium Homes & Development was never licensed or registered to do business in Louisiana and never had any offices or employees in Louisiana.

7. Millennium Homes & Development never had an agent for service of process in Louisiana.

8. Millennium Homes & Development never had any bank accounts in Louisiana or owned any property in Louisiana.

9. Millennium Homes & Development did not solicit business in Louisiana and never transacted business in Louisiana.

10. Millennium Homes & Development never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

11. Millennium Homes & Development never maintained an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

12. Millennium Homes & Development never received any business from any contacts in Louisiana, whether individual customers, or business customers.

13. Consequently, Millennium Homes & Development never anticipated it would be haled into court in Louisiana.

JOSEPH RODRIGUES

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 19ᵀᴴ DAY OF ___January___, 2012.

_____
NOTARY PUBLIC

CALVIN MAINA
Notary Public - State of Florida
My Comm. Expires Sep 19, 2014
Commission # EE 27272

Notrized   Joseph   Rodrigues   Signature

3



# Millennium
## Homes & Development, Inc.
### "Where our Homes are your future"

E-MAIL: mhd@tampabay.rr.com
LIC #: CBC1261837
DATE: ___September 19___, ___2005___
OWNER'S NAME: ___Albert Gomez & Sylvia Gomez___   *Alfred*
ADDRESS: ___901 W. Trapnell Rd.___

___Plant City, FL 33566___

PHONE: ___813-754-6063/ cell: 813-716-4106___

PROJECT ADDRESS: _____

___Plant City, FL 33567___

## I. PARTIES

This contract (hereinafter referred to as "Agreement") is made and entered into on this ___19th___ day of ___September___, 2005, by and between ___Alfred Gomez & Sylvia Gomez___, (hereinafter referred to as "Owner"); and Millennium Homes & Development, Inc. (hereinafter referred to as "Contractor"). In consideration of the mutual promises contained herein, Contractor agrees to perform the following work, subject to the terms and conditions below:

## II. GENERAL SCOPE OF WORK DESCRIPTION

Work to be performed in accordance with the attached plans and specifications including Customer Estimate and Specifications.

(Additional Scope of Work page(s) attached: ___X___ Yes _____ No)

### A. LUMP SUM PRICE FOR ALL WORK ABOVE*   $ ___275,550___.

* This Agreement will expire 30 days after the date at the top of page one of this Agreement if not accepted in writing by Owner and returned to Contractor with First Payment (as defined below) within that time.

### B. NOTES AND CLARIFICATIONS

See Blueprint and Cost Estimate, Allowances & Specifications for additional notes and clarifications, including ALLOWANCE items.

EXHIBIT "B"

Owner

Owner

110 W. Reynolds St. Suite 209 • Plant City, Florida 33563
813-757-9727 • 813-757-9739 fax



**Millennium**
Homes & Development, Inc.
*"Where our Homes are your future"*

### III. GENERAL CONDITIONS FOR THE AGREEMENT ABOVE

#### A. EXCLUSIONS

This Agreement does not include labor or materials for the following work:

##### 1. PROJECT-SPECIFIC EXCLUSIONS:

##### 2. STANDARD EXCLUSIONS: Unless specifically included in the "General Scope of Work" section above, this Agreement does not include labor or materials for the following work: Testing, removal and disposal of any materials containing asbestos (or any other hazardous material as defined by the EPA); Custom milling of any wood for use in project; Moving Owner's property around the site; Labor or materials required to repair or replace any Owner-supplied materials; Repair of concealed underground utilities not located on prints or physically staked out by Owner which are damaged during construction; Final construction cleaning (Contractor will leave site in "broom swept" condition); Removal of filled ground or rock or any other materials not removable by ordinary hand tools (unless heavy equipment is specified in Scope of Work section above); Construction of a continuously level foundation around structure (if lot is sloped more than 8 inches from front to back or side to side, Contractor will step the foundation in accordance with the slope of the lot); Exact matching of existing finishes; Repair of damage to roadways, driveways, or sidewalks that could occur when construction equipment and vehicles are being used in the normal course of construction; Cost of correcting errors and omissions by the Owner's design professionals and separate contractors; Cost of correcting/testing/remediating mold/fungus/mildew and organic pathogens unless caused by the sole and active negligence of Contractor as a direct result of a construction defect that caused sudden and significant water infiltration into a part of the structure; Cost of removing ponding ground water or other unusual concealed site conditions during excavation; Extra costs associated with refusal of caisson drilling, cave-ins, etc.; Cost to modify and/or remanufacture custom brackets and other custom-fabricated materials that are manufactured per plans and/or specifications but do not fit properly into the structure.

#### B. DATE OF WORK COMMENCEMENT AND SUBSTANTIAL COMPLETION

Commence work: __As soon as practicable after receipt of permit to commence construction__ . Construction time through substantial completion: Approximately _6_ to _12_ months, not including delays and adjustments for delays caused by: holidays; inclement weather; accidents; shortage of labor or materials; additional time required for Change Order and additional work; delays caused by Owner, Owner's design professionals, agents, and separate contractors; and other delays unavoidable or beyond the control of the Contractor.

#### C. CHARGES FOR ADDITIONAL WORK: CONCEALED CONDITIONS, DEVIATION FROM SCOPE OF WORK, AND CHANGES IN THE WORK

##### 1. CONCEALED CONDITIONS: This Agreement is based solely on the observations Contractor was able to make with the project in its condition at the time the work of this Agreement was bid. If additional concealed conditions are discovered once work has commenced or after this Agreement is executed which were not visible at the time this Agreement was bid, Contractor will point out these concealed conditions to Owner, and these concealed conditions will be treated as Additional Work under this Agreement. Contractor and Owner may execute a Change Order for this Additional Work. Contractor is released, held harmless, and indemnified by Owner from all pre-existing mold, fungus, mildew, and organic pathogen problems and is not responsible for costs or damages associated with correcting, containing, testing, or remediating the same.

##### 2. DEVIATION FROM SCOPE OF WORK: Any alteration or deviation from the Scope of Work referred to in this Agreement involving extra costs of materials or labor (including any overage on ALLOWANCE work and any changes in the Scope of Work required by Owner, Owner's design professional, Owner's agent, or

Owner   Owner   110 W. Reynolds St. Suite 209 • Plant City, Florida 33563
813-757-9727 • 813-757-9739 fax

2



**Millennium**
**Homes & Development, Inc.**
*"Where our Homes are your future"*

governmental plan checkers or field building inspectors) will be treated as Additional Work under this Agreement resulting in an additional charge to Owner as set forth herein. Contractor and Owner may execute a Change Order for this Additional Work.

Contractor to supervise, coordinate, and charge __20_ % profit and overhead on the following: all Additional Work under this Agreement, Additional Work caused by concealed conditions, all overages on ALLOWANCE work, all Owner-furnished materials, and all work of Owner's separate contractors who are working on site at same time as Contractor (See Section F.1, below). The amount of the Additional Work will be reasonably determined by the Contractor, and will be subject to Contractor's profit and overhead as noted above.

Contractor's profit and overhead, and any supervisory labor will not be credited back to Owner with any deductive Change Orders (work deleted from Agreement by Owner).

**3. RATES CHARGED FOR ALLOWANCE-ONLY AND TIME-AND-MATERIALS WORK:**
Journeyman Carpenter: $_n/a___ per hour; Apprentice Carpenter: $_n/a_ per hour; Laborer: $_n/a_ per hour; Contractor: $_n/a_ per hour; Subcontractor: Amount charged by Subcontractor. Note: Contractor will charge for profit and overhead at the rate of _20_% on all work performed on a Time-and-Materials basis (on both materials and labor rates set forth in Section III.C of this Agreement) and on all costs that exceed specifically stated ALLOWANCE estimates in the Agreement.

**4. PEOPLE AUTHORIZED TO SIGN CHANGE ORDERS:** The following people are authorized to sign Change Orders:

_____Alfred Gomez_____

_____Sylvia Gomez_____

(Please fill in line(s) above at time of signing Agreement)

### D. PAYMENT SCHEDULE AND PAYMENT TERMS

**1. PAYMENT SCHEDULE:**
_____Check if using **CASH PAYMENTS**
*First Payment: 10% of Agreement amount due when Agreement is signed and returned to Contractor. Contract Deposit Payment: $_____

* Second Payment (Materials Deposits): Any materials deposits — required for such items as woodstoves, cabinetry, carpets, vinyl, granite, tile, and any and all special-order items that require the payment of a materials deposit — must be paid within 3 days of submittal of invoice by Contractor. These items will not be ordered until the deposits set forth below are received by Contractor. Materials Deposits required on this project include the following:

* Total Due for All Materials Deposits:                          $_____

* Third Payment:_____

                                                        $_____
* Fourth Payment:_____

                                                        $_____
* Fifth Payment:_____

Owner      Owner      110 W. Reynolds St. Suite 209 • Plant City, Florida 33563          3
                        813-757-9727 • 813-757-9739 fax

# Millennium
## Homes & Development, Inc.
*"Where our Homes are your future"*

* Sixth Payment: _____ $ _____

* Seventh Payment: _____ $ _____

* Eighth Payment: _____ $ _____

* Final Payment: Due upon Substantial Completion of all work under this Agreement:
$ _____

**__X___  Check if using CONSTRUCTION MORTGAGE FINANCING**

* First Payment: 10% of Agreement amount due upon closing of construction mortgage.  Work will not begin until Agreement is signed and Contractor receives this payment. $____27,555___ .

Remaining payments to be made according to "draw schedule" provided to Owner by Owner's lender.  Such "draw schedule" is to be provided to Contractor with or prior to First Payment, and is subject to Contractor's approval prior to commencing work.

**2. PAYMENT OF CHANGE ORDERS/ADDITIONAL WORK:** Payment for Additional Work is due upon completion of either all or part of the Additional Work and submittal of invoice by Contractor.

**3. ADDITIONAL PAYMENTS FOR ALLOWANCE WORK AND RELATED CREDITS:** Payment for work designated in the Agreement as ALLOWANCE work has been initially factored into the Lump Sum Price and Payment Schedule set forth in this Agreement. If the final amount of the ALLOWANCE work exceeds the line item ALLOWANCE amount in the Agreement, the difference between the final amount and the line item ALLOWANCE amount stated in the Agreement will be an additional charge to the Owner.

**4. FINAL CONTRACT PAYMENT:** The final contract payment is due and payable upon "Substantial Completion" (not Final Completion) of all work under contract. "Substantial Completion" is defined as being the point at which the Building/Work of Improvement is suitable for its intended use, or the issuance of an Occupancy Consent, or final building department approval from the city or county building department, whichever occurs first.

**5. INTEREST CHARGES:** Interest in the amount of 1% per month will be charged on all late payments under this Agreement. "Late Payments" are defined as any payment not received within 7 days of receipt of invoice from Contractor.

**E. CONFLICT OF DOCUMENTS:** If any conflict should arise between the plans, specifications, addenda to plans, and this Agreement, then the terms and conditions of this Agreement shall be controlling and binding upon the parties to this Agreement.

**F. MISCELLANEOUS CONDITIONS**

**1. MATERIALS FURNISHED DIRECTLY BY OWNER AND WORK PERFORMED BY OWNER'S SEPARATE CONTRACTORS:** Until such time as Contractor has completed 100% of the project work, any materials provided directly by the Owner on the project and any work performed by Owner's separate contractors on the Project must be supervised by the Contractor. Profit and overhead at the rate of __20_% will be charged on all materials provided by Owner and on all work performed by Owner's separate contractors until the point in time when the Contractor is 100% complete with all project work.

Owner      Owner      110 W. Reynolds St. Suite 209 • Plant City, Florida 33563
813-757-9727 • 813-757-9739 fax

4



**M** **illennium**

**H** omes & Development, inc.

*"Where our Homes are your future"*

Owner agrees to furnish Contractor with copies of all contracts with separate contractors and receipts for all materials directly furnished to the project by the Owner as soon as Owner is in possession of these receipts and contracts so that Contractor can invoice the Owner for his markup on these items. Furthermore, Owner agrees to furnish Contractor with a copy of all payments made by Owner towards all Owner-supplied materials and Owner's separate contractors within 3 days of making said payments. Failure or refusal of Owner to furnish Contractor with the documents and evidence of payment referred to herein within 10 days of the date that the Owner signs these documents and makes said payments will be considered a material breach of contract by Owner.

Furthermore, for insurance and liability purposes, Contractor has the absolute right to pre-qualify and approve or reject Owner's separate contractors in the following respects: proper work experience, proper licensing, proper and adequate insurance (both worker's compensation in statutory form, as required by law, and Comprehensive General Liability insurance in "occurrence form"), ability to meet Contractor's scheduling requirements, and any other standard subcontractor qualification criteria Contractor routinely employs. Prior to commencing any work on the site and prior to the Owner signing any contract with the separate contractor, Owner's separate contractors must name Contractor and Owner as "additional insured" on separate contractor's Comprehensive General Liability insurance policy and provide an insurance binder to Contractor showing Contractor and Owner have both been named as "additional insured" under that policy. Contractor may prevent Owner's contractors who have not been pre-qualified/approved by Contractor and submitted an insurance binder as described herein, from working on the site.

If Owner wants to avoid paying Contractor's profit and overhead per this paragraph of the Agreement, Owner must then bring in his separate Subcontractors only before or after Contractor has performed all of his work on the project.

If Owner fails to comply with all the terms of this section of the Agreement (including timely payment of Contractor's markup on Owner's separate contractors and materials), without penalty of any kind whatsoever to Contractor, Contractor may, at Contractor's sole discretion: 1) stop all work on the project until Owner has complied with the terms of this section of the Agreement, eject any non-qualified and unapproved separate contractor from the site, and keep the job site; or 2) after giving Owner 10 days advance written notice of this breach of contract, if not cured by the Owner within 7 days of receipt of Contractor's written notice, terminate this Agreement for Owner default as described herein, perform no further work of any kind on the Project in the future (including punch list/warranty work), and bill the Owner for all work completed to date along with Contractor's lost profit and overhead at the rate of 20% on the work remaining under the contract and any other loss reasonably sustained by Contractor. These amounts will then be due and payable by Owner upon receipt of the Contractor's invoice and Contractor shall remove all equipment and stored material from the site, cancel all contracts with subcontractors, and have no further liability or responsibility of any kind whatsoever to the Owner.

Exceptions to the Contractor charging profit and overhead on Owner-supplied materials and Owner's separate contractors are strictly limited to the following:

      **2. MATCHING EXISTING FINISHES:** Contractor will use his best efforts to match existing finishes and materials. However, an exact match is not guaranteed by Contractor due to such factors as discoloration from aging, a difference in dye lots, discontinuation of product lines, and the difficulty of exactly matching certain finishes, colors, and planes.

Custom milling of materials has not been included in this Agreement, unless specifically stated in the Scope of Work section above. Unless custom milling of materials is specifically called out in the plans, specifications, or Scope of Work description above, any material not readily available at local lumberyards or suppliers is not included in this Agreement.

Owner

Owner    110 W. Reynolds St. Suite 209 • Plant City, Florida 33563
813-757-9727 • 813-757-9739 fax

5



**Millennium**
**Homes & Development, Inc.**
*"Where our Homes are your future"*

If Owner requires an exact match of materials or textures in a particular area, Owner must inform Contractor of this requirement in writing within 7 days of signing this Agreement. Contractor will then provide Owner with either a materials sample or a test patch prior to the commencement of work involving the matching of existing finishes.

Owner must then approve or disapprove of the suitability of the match within 24 hours. After that time, or after Contractor has provided Owner with two or more test patches that have been rejected by Owner, all further test patches, materials submittals, or any removal and replacement of materials already installed in accordance with the terms of this section will be performed strictly as Extra Work on a time-and-materials basis by Contractor.

**3. LIMITATION OF WARRANTY WHEN CONTRACTOR INSTALLS OWNER-SUPPLIED FIXTURES AND MATERIALS:** Contractor cannot warrant any Owner-supplied materials or fixtures (whether new or used). If Owner-supplied fixtures or materials fail due to a defect in the materials or fixtures themselves, Contractor will charge for all labor and materials required to repair or replace both the defective materials or fixtures, and any surrounding work that is damaged by these defective materials or fixtures.

**4. CONTROL AND DIRECTION OF EMPLOYEES AND SUBCONTRACTORS:** Contractor, or his appointed Supervisor, shall be the sole supervisor of Contractor's Employees and subcontractors. Owner must not order or request Contractor's Employees or subcontractors to make changes in the work. Any such "agreements" made in a manner that is not consistent with this paragraph shall not be enforceable against the Contractor. All changes in the work are to be first discussed with Contractor and then performed according to the Change Order process as set forth in this Agreement.

**5. OWNER COORDINATION WITH CONTRACTOR:** Owner agrees to promptly furnish Contractor with all details and decisions about unspecified construction finishes, and to consent to or deny changes in the Scope of Work that may arise so as not to delay the progress of the Work. The cost of any delays in furnishing design decisions after construction has commenced will increase the contract amount consistent with any additional costs incurred by Contractor. Delays in furnishing design decisions after construction has commenced will also increase the contract time. Owner agrees to furnish Contractor with continual access to the job site.

**6. CONTRACTOR NOT TO BE RELIED UPON AS ARCHITECT, ENGINEER, OR DESIGNER:** The Contractor is not an architect, engineer, or designer. Contractor is not being hired to perform any of these services. To the extent that Contractor makes any suggestions in these areas, the Owner acknowledges and agrees that Contractor's suggestions are merely options that the Owner may want to review with the appropriate design professional for consideration. Contractor's suggestions are not a substitute for professional engineering, architectural, or design services, and are not to be relied on as such by Owner. The Contractor is not responsible for ascertaining whether details in Owner's plans conform to all applicable building and planning codes. The Contractor is not responsible for the cost of correcting errors and omissions by the Owner's design professionals and separate contractors.

**7. LIEN RELEASES:** Upon request by Owner, Contractor and subcontractors will issue appropriate lien releases prior to receiving final payment from Owner.

**8. INSURANCE:** Contractor shall pay for and maintain "Course of Construction" or "Builder's Risk" or any other insurance that provides the same type of coverage to the Contractor's work in progress during the course of the project. The price for such insurance is included in the Customer Job Cost Estimate and payment for such insurance shall be made by the Contractor with a portion of the First Payment made by the Owner.

Owner

Owner   110 W Reynolds St. Suite 209 • Plant City, Florida 33563
813-757-9727 • 813-757-9739 fax

6



**Millennium**
**H**omes & Development, Inc.
*"Where our Homes are your future"*

### G. WARRANTY

Thank you for choosing our company to perform this work for you. Your satisfaction with our work is a high priority for us, however, not all possible complaints are covered by our warranty. Contractor provides a limited warranty against material defects on all Contractor- and subcontractor-supplied labor and materials used in this project for a period of one year following substantial completion of all work. This warranty covers normal usage only. You must contact the Contractor at the address on page one of this agreement in writing for warranty service immediately upon discovering an item in need of warranty service. If the matter is urgent, you must also call the Contractor and send written notice of the need for warranty service. Failure to notify the Contractor of the need for warranty service within ten days of discovery of a warranty item may void this warranty. Additionally, Owner's hiring of others or direct actions by Owner or Owner's separate contractors to repair a warranty item are not covered by this warranty and will not be reimbursed by Contractor.

No warranty is provided by Contractor on any materials furnished by the Owner for installation. No warranty is provided on any existing materials that are moved and/or reinstalled by the Contractor within the dwelling or the property (including any warranty that existing/used materials will not be damaged during the removal and reinstallation process). One year after substantial completion of the project, the Owner's sole remedy (for materials and labor) on all materials that are covered by a manufacturer's warranty is strictly with the manufacturer, not with the Contractor.

Repair of the following items and related damages of every kind are specifically excluded from Contractor's warranty: problems caused by lack of Owner maintenance; problems caused by Owner abuse, Owner misuse, vandalism, Owner modification, or alteration; and ordinary wear and tear. Damages resulting from mold, fungus, and other organic pathogens are excluded from this warranty unless caused by the sole and active negligence of Contractor as a direct result of a construction defect which caused sudden and significant amounts of water infiltration into a part of the structure. Deviations that arise such as the minor cracking of concrete, stucco, and plaster; minor stress fractures in drywall due to the curing of lumber; warping and deflection of wood; shrinking/cracking of grouts and caulking; fading of paints and finishes exposed to sunlight are all typical (not material) defects in construction, and are strictly excluded from Contractor's warranty.

**THE EXPRESS WARRANTIES CONTAINED HEREIN ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, HABITABILITY, OR FITNESS FOR A PARTICULAR USE OR PURPOSE. THIS LIMITED WARRANTY EXCLUDES CONSEQUENTIAL, INCIDENTAL, AND SPECIAL DAMAGES AND LIMITS THE DURATION OF IMPLIED WARRANTIES TO THE FULLEST EXTENT PERMISSIBLE UNDER STATE AND FEDERAL LAW. SOME STATES RESTRICT LIMITATIONS ON VARIOUS WARRANTIES, AND SO A CONSUMER'S RIGHTS UNDER THIS WARRANTY MAY VARY. THIS LIMITED WARRANTY MAY NOT BE VERBALLY MODIFIED BY ANY PERSON. THIS LIMITED WARRANTY IS GOVERNED BY THE LAWS OF THE STATE WHERE THE WORK WAS PERFORMED.**

### H. WORK STOPPAGE AND TERMINATION OF AGREEMENT FOR DEFAULT

Contractor shall have the right to stop all work on the project and keep the job idle if payments are not made to Contractor strictly in accordance with the Payment Schedule in this Agreement, or if Owner repeatedly fails or refuses to furnish Contractor with access to the job site and/or product selections or information necessary for the advancement of Contractor's work. Simultaneous with stopping work on the project, the Contractor must give Owner written notice of the nature of Owner's material breach of this Agreement and must also give the Owner a 14-day period in which to cure this breach of contract. Owner to follow this same notice procedure with Contractor if Owner alleges Contractor is in material breach of this Agreement.

If work is stopped due to any of the above reasons (or for any other material breach of contract by Owner) for a

Owner   Owner   110 W. Reynolds St. Suite 209 • Plant City, Florida 33563
813-757-9727 • 813-757-9739 fax

7



**Millennium**
**Homes & Development, Inc.**
*"Where our Homes are your future"*

period of 14 days, and the Owner has failed to take significant steps to cure his default, then Contractor may, without prejudicing any other remedies Contractor may have, give written notice of termination of the Agreement to Owner and demand payment for all completed work and materials ordered through the date of work stoppage, and any other reasonable loss sustained by Contractor, including Contractor's Profit and Overhead at the rate of __20_% on the balance of the incomplete work under the Agreement. Thereafter, Contractor is relieved from all other contractual duties, including all Punch List and warranty work.

### I. DISPUTE RESOLUTION AND ATTORNEY'S FEES

Any controversy or claim arising out of or related to this Agreement involving an amount less than $5,000 (or the maximum limit of the Small Claims court) must be heard in the Small Claims Division of the Municipal Court in the county where the Contractor's office is located. Any dispute over the dollar limit of the Small Claims Court arising out of this Agreement shall be submitted to an experienced private construction arbitrator that shall be mutually selected by the parties to conduct a binding arbitration in accordance with the arbitration laws of the state where the project is located. The arbitrator shall be either a licensed attorney or retired judge who is familiar with construction law. If the parties can not mutually agree on an arbitrator within 30 days of written demand for arbitration, then either of the parties shall submit the dispute to binding arbitration before the American Arbitration Association in accordance with the Construction Industry Rules of the American Arbitration Association then in effect. Judgment upon the award may be entered in any Court having jurisdiction thereof.

The prevailing party in any legal proceeding related to this Agreement shall be entitled to payment of reasonable attorney's fees, costs, and post-judgment interest at the legal rate.

### J. ENTIRE AGREEMENT, SEVERABILITY, AND MODIFICATION

This Agreement represents and contains the entire agreement and understanding between the parties. Prior discussions or verbal representations by Contractor or Owner that are not contained in this Agreement are not a part of this Agreement. In the event that any provision of this Agreement is at any time held by a Court to be invalid or unenforceable, the parties agree that all other provisions of this Agreement will remain in full force and effect. Any future modification of this Agreement should be made in writing and executed by Owner and Contractor.

\*\*\*\*

I have read and understood, and I agree to, all of the terms and conditions in the Agreement above.

9/19/05
DATE

Joseph M. Rodrigues
President, Millennium Homes & Development, Inc.
"Contractor"

9-19-05
DATE

Alfred Gomez
"Owner"

9-19-05
DATE

Sylvia Gomez
"Owner"

*110 W. Reynolds St. Suite 209 • Plant City, Florida 33563*
*813-757-9727 • 813-757-9739 fax*

8