1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3    ******************************************************************

4    IN RE CHINESE-MANUFACTURED
5    DRYWALL PRODUCTS LIABILITY
     LITIGATION
6
                              CIVIL DOCKET NO. 09-MD-2047-EEF-JCW
7                             NEW ORLEANS, LOUISIANA
09:44AM                       THURSDAY, APRIL 19, 2012, 10:00 A.M.
8
     THIS DOCUMENT RELATES TO
9    ALL CASES

10   ******************************************************************

11
                    TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS
12           HEARD BEFORE THE HONORABLE ELDON E. FALLON
                    UNITED STATES DISTRICT JUDGE
13

14

15   APPEARANCES:

16

17   FOR THE PLAINTIFFS'
     STEERING COMMITTEE:          HERMAN HERMAN KATZ & COTLAR
18                                BY:  RUSS M. HERMAN, ESQUIRE
                                       LEONARD A. DAVIS, ESQUIRE
19                                820 O'KEEFE AVENUE
                                  NEW ORLEANS LA  70113
20

21

22                                LEVIN FISHBEIN SEDRAN & BERMAN
                                  BY:  ARNOLD LEVIN, ESQUIRE
23                                510 WALNUT STREET, SUITE 500
                                  PHILADELPHIA PA  19106
24

25

```
1    APPEARANCES CONTINUED:

2

3     FOR THE KNAUF ENTITIES:    KAYE SCHOLER
                                 BY:  STEVEN GLICKSTEIN, ESQUIRE
4                                     ROBERT GRASS, ESQUIRE
                                 425 PARK AVENUE
5                                NEW YORK, NY  10022

6

7     FOR THE NORTH RIVER
      INSURANCE COMPANY:         THOMPSON COE COUSINS & IRONS
8                                BY:  KEVIN RISLEY, ESQUIRE
                                 BRIAN S. MARTIN, ESQUIRE
9                                ONE RIVERWAY, SUITE 1600
                                 HOUSTON, TX  77056
10

11
                                 LOBMAN CARNAHAN BATT ANGELLE
12                               & NADER
                                 BY:   SIDNEY J. ANGELLE, ESQUIRE
13                                     ERIC B. BERGER, ESQUIRE
                                 400 POYDRAS STREET, SUITE 2300
14                               NEW ORLEANS, LA  70130

15

16    FOR INTERIOR/EXTERIOR
      BUILDING SUPPLY COMPANY:   GALLOWAY, JOHNSON, TOMPKINS,
17                               BURR & SMITH
                                 BY:  RICHARD DUPLANTIER JR., ESQUIRE
18                               701 POYDRAS STREET, SUITE 4040
                                 ONE SHELL SQUARE
19                               NEW ORLEANS, LA  70139

20

21

22

23

24

25
```

1                          **I N D E X**

2

3     SPEAKERS                                          PAGE

4

5     THE COURT.............................................     5

6     MR. RISLEY...........................................     8

7     THE COURT............................................    10

8     MR. DUPLANTIER.......................................    11

9     MR. DAVIS............................................    12

10    MR. RISLEY...........................................    12

11    MR. HERMAN...........................................    13

12    MR. RISLEY...........................................    14

13    MR. ANGELLE..........................................    15

14    MR. DAVIS............................................    16

15    MR. RISLEY...........................................    18

16    MR. LEVIN............................................    19

17    MR. RISLEY...........................................    20

18    MR. LEVIN............................................    21

19    MR. GLICKSTEIN.......................................    21

20    MR. RISLEY...........................................    25

21    MR. DUPLANTIER.......................................    28

22    MR. RISLEY...........................................    29

23    THE COURT............................................    30

24    MR. ANGELLE..........................................    35

25    MR. ANGELLE..........................................    36

1    THE COURT........................................... 36

2    MR. DAVIS........................................... 36

3    THE COURT........................................... 37

4    MR. ANGELLE......................................... 37

5    THE COURT........................................... 37

6    MR. DAVIS........................................... 37

7    MR. ANGELLE......................................... 37

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P-R-O-C-E-E-D-I-N-G-S**

THURSDAY, APRIL 19, 2012

M O R N I N G   S E S S I O N

(IN CHAMBERS)


THE COURT:  Hello, good morning, this is Judge Fallon.
Who is on the line, please?  Would you just check in.  First
for the plaintiffs.

MR. LEVIN:  This is Levin.  I'm sure Lennie is on the
line.  Lennie is primarily going to speak for us.

MR. DAVIS:  I am on the phone, Your Honor.

THE COURT:  All right.  For the defendants.

MR. ANGELLE:  Your Honor, Sidney Angelle for
North River.

MR. RISLEY:  Kevin Risley also for North River.

MR. MARTIN:  And Brian Martin for North River.

MR. GLICKSTEIN:  Steve Glickstein and Robert Grass for
Knauf.

MR. DUPLANTIER:  Richard Duplantier and Phil Nizialek
for Interior/Exterior, Judge.

THE COURT:  Anyone else?  Okay.  Folks, when you speak
would you please mention your name because I have this being
taken down.

By way of background, let me just start out by

10:02AM 1    making some general comments.  In this MDL, after a number of

10:02AM 2    bellwether trials and rather extensive discovery, negotiations

10:02AM 3    commenced and eventually the PSC and Knauf reached an

10:02AM 4    agreement.  The agreement or settlement includes and to some

10:02AM 5    extent is contingent or at least dependent on the participation

10:02AM 6    of downstream distributors, installers, etcetera, and their

10:02AM 7    insurers, primary and excess.

10:02AM 8              The settlement is a class settlement and is

10:02AM 9    dependent on court approval, which is now in the process.

10:02AM 10   We're at the conditional stage, the notice stage, and the

10:02AM 11   objection stage, and we're moving toward the final approval

10:03AM 12   stage.

10:03AM 13             Most of the downstream entities and their

10:03AM 14   insurers are participating.  Some are still considering it and

10:03AM 15   moving in line.  Some have not participated or we haven't heard

10:03AM 16   from them.  North River is an excess insurer of INEX, and they

10:03AM 17   have decided at this stage not to participate.

10:03AM 18             So at this stage in the case, the Court has

10:03AM 19   before it a proposed settlement agreement which I've posted on

10:03AM 20   my web site and set certain deadlines.  At the same time,

10:03AM 21   that's the first aspect of the case that I'm dealing with.  The

10:03AM 22   second is at the same time I recognize that there are claims

10:04AM 23   being made against those who have decided not to participate

10:04AM 24   and claims made by those who have decided not to participate

10:04AM 25   against others; so, I have to deal with those claims.  I just

10:04AM  1    don't want to put them on ice and say, I'll get to them when I
10:04AM  2    get to them because some aspects of them I can't put on ice.
10:04AM  3              The claim that I'm focused on at this point is
10:04AM  4    the claim that the PSC has made against North River, who has
10:04AM  5    decided not to participate.  Their claims are primarily
10:04AM  6    derivative claims which they have gotten from INEX, assigned to
10:04AM  7    them by INEX, and these claims focus on why, basically,
10:05AM  8    North River has not wanted to participate.
10:05AM  9              The thrust of the PSC's claims against
10:05AM  10   North River at this point is that North River, their actions or
10:05AM  11   inactions are problematic, and they may be responsible in some
10:05AM  12   way for penalties or attorney's fees or bad faith, and they
10:05AM  13   seek to move in that direction; so, they've issued some
10:06AM  14   discovery to North River.
10:06AM  15             North River has objected to the discovery,
10:06AM  16   which is one of the reasons for this conference, and
10:06AM  17   North River also says, Well, if it's good for the goose, it's
10:06AM  18   good for the gander.  North River says that they have claims
10:06AM  19   against Knauf and others, and they have claims against their
10:06AM  20   insured, and they want to proceed with those particular claims.
10:06AM  21             So we're here today to talk about the
10:06AM  22   objections of North River to the discovery of the PSC and then
10:06AM  23   also the motion for North River to lift the stay to allow them
10:06AM  24   to proceed with their claim against Knauf and INEX.  So let me
10:07AM  25   hear from anyone, I guess.

10:07AM 1          MR. RISLEY:  Your Honor, if I could this is

10:07AM 2    Kevin Risley for North River.  I'm going to be addressing the

10:07AM 3    merits of the stay motion.  Mr. Angelle will discuss the

10:07AM 4    discovery objections, but I would like to address a couple

10:07AM 5    points to the Court already because I'm not sure that we are in

10:07AM 6    full agreement with them.

10:07AM 7               Number 1, it's certainly true we have not

10:07AM 8    entered into a settlement agreement yet.  That doesn't mean

10:07AM 9    we're not willing to talk or participate.  I know the Court

10:07AM 10   doesn't want to be bothered with the details of the discussions

10:07AM 11   that have gone on [inaudible] -- to talk.  We have been unable

10:07AM 12   to find common ground that will let us get to a settlement at

10:07AM 13   this point.

10:07AM 14         THE COURT:  Sure.

10:07AM 15         MR. RISLEY:  Number 2, I think the Court said that the

10:07AM 16   PSC hasn't been assigned claims by INEX.  As far as we're aware

10:07AM 17   they are asking the Court to approve the assignment as part of

10:07AM 18   the INEX settlement.

10:07AM 19         THE COURT:  Right.

10:07AM 20         MR. RISLEY:  Of course, that hasn't happened yet; so,

10:07AM 21   it's our position right now Louisiana claimants have a direct

10:08AM 22   claim against North River potentially, but nonLouisiana

10:08AM 23   plaintiffs do not have any direct claims against North River

10:08AM 24   right now.

10:08AM 25         THE COURT:  All right.

10:08AM 1      MR. RISLEY:  We are not asserting any claims against

10:08AM 2   INEX, no claims against them in the lawsuit, but our position

10:08AM 3   is by statute the required party made a direct action against

10:08AM 4   us.

10:08AM 5      THE COURT:  You're breaking up a little bit, so let's

10:08AM 6   be careful of that.

10:08AM 7      MR. RISLEY:  All right.  Mr. Martin is with me.  I had

10:08AM 8   it on speaker, but while I'm talking I'll pick up, if that's

10:08AM 9   all right.

10:08AM 10      THE COURT:  Sure.

10:08AM 11      MR. RISLEY:  I think the biggest point we that have

10:08AM 12   some concern about the Court stated was the Court's statement

10:08AM 13   that the PSC or the plaintiffs were asserting bad-faith claims

10:08AM 14   against us.  There are no pleadings of bad faith at this time.

10:08AM 15   The only allegations are for third party relief that is a --

10:08AM 16   I'm hearing some break-up too now.  Is the Court able to hear

10:08AM 17   me?

10:08AM 18      THE COURT:  Well, you're beginning to break up, but I

10:08AM 19   can still make it out.  It's just that you are --

10:08AM 20      MR. LEVIN:  Your Honor, I think it's coming from

10:09AM 21   another phone where somebody may be in a public area.

10:09AM 22      MR. RISLEY:  My point was, Judge, that if you look at

10:09AM 23   the pleadings that have been filed and the two class actions in

10:09AM 24   which North River is named, and there are only two of them,

10:09AM 25   there are no bad-faith allegations.  The allegations are for

10:09AM 1    declaratory relief as to coverage under the policies issued to

10:09AM 2    INEX.

10:09AM 3            Now, not only are there no bad-faith

10:09AM 4    allegations, there couldn't be any at this time because as an

10:09AM 5    excess carrier, we have a situation where at this point in time

10:09AM 6    the primary policies below us have not exhausted.  That money

10:09AM 7    has not been spent yet; so, we certainly have no obligation to

10:09AM 8    do anything yet.

10:09AM 9            There is controlling authority on this point,

10:09AM 10   and I believe we submitted a case to you yesterday -- a case

10:09AM 11   out of the Fifth Circuit entitled N*ew England Insurance v*

10:09AM 12   *Barnett* that says there can be -- in fact, they dismissed

10:10AM 13   bad-faith allegations because there would be no factual basis

10:10AM 14   for a bad-faith claim until there has been an excess

10:10AM 15   adjudication against the insured.

10:10AM 16           There has been no judgment of any type against

10:10AM 17   INEX right now, and under the proposed settlements there will

10:10AM 18   not be.  So not only are there no bad-faith allegations right

10:10AM 19   now, if there were they would be subject to dismissal because

10:10AM 20   of the lack of exhaustion and the lack of a judgment in excess

10:10AM 21   of coverage against INEX.

10:10AM 22        THE COURT:  I hear you, but if, for example, the

10:10AM 23   primary is $5,000 and the excess is a million dollars, and

10:10AM 24   you're dealing with seven deaths, do you think that the excess

10:10AM 25   has to wait for a judgment of $5,000 before they can at least

10:10AM 1   evaluate the claim or involve themselves in negotiation or

10:10AM 2   potentially negotiate a claim that will resolve the matter and

10:11AM 3   save their insured from total bankruptcy?

10:11AM 4           In that type facts, do you think that that the

10:11AM 5   judgment has to come out against the insured of a billion

10:11AM 6   dollars that could have been resolved for a hundred thousand;

10:11AM 7   meanwhile, now the insured is totally bankrupt, and you've

10:11AM 8   exhausted your full excess.  The cases are factually pregnant.

10:11AM 9   I understand the case you mentioned, but there are facts that

10:11AM 10  have to be evaluated in those types of situations; so, I hear

10:11AM 11  you, and I --

10:11AM 12          MR. DUPLANTIER:  This is Richard Duplantier on behalf

10:11AM 13  of Interior/Exterior.  In the context of -- as Mr. Risley says,

10:11AM 14  he's arguing the motion to lift the stay.  In the context of

10:12AM 15  that motion, I think it's great that counsel for North River

10:12AM 16  brought this new case to the attention of the Court because it

10:12AM 17  actually holds the opposite of what North River is asserting.

10:12AM 18          The Court, the Fifth Circuit, in that -- in

10:12AM 19  that *New England Insurance Company* case would not enforce the

10:12AM 20  consent judgment because of policy provisions.  The Court

10:12AM 21  actually said that there are exceptions to the Direct Action

10:12AM 22  Rule, and one of those exceptions is specifically where an

10:12AM 23  insurance company unjustifiably delays settlement, not doesn't

10:12AM 24  supplement but delays settlement.  That's exactly what's

10:12AM 25  happening in this situation, in our personal opinion.

10:12AM 1          So this case actually supports our position

10:12AM 2   both on the discovery issues as well as the requirement that

10:12AM 3   the stay does not have to be lifted; so, their pointing this

10:12AM 4   case out to you is actually positive as far as

10:12AM 5   Interior/Exterior is concerned and a good case because it

10:12AM 6   actually highlights the problems that North River has caused in

10:13AM 7   this particular litigation.  They have never addressed the

10:13AM 8   entire process that's been adopted by the courts in Louisiana

10:13AM 9   with regard to this type of settlement, this type of *Gasquet*

10:13AM 10  settlement where we settle with primary, and we are allowed to

10:13AM 11  proceed and the parties are allowed to proceed against excess,

10:13AM 12  and nowhere is that addressed in the *New England Insurance*

10:13AM 13  case.

10:13AM 14       MR. DAVIS:  Your Honor, this is Leonard Davis.  I

10:13AM 15  further that and I also point out to the Court that in the case

10:13AM 16  that was cited, which was brought nearly two decades after

10:13AM 17  litigation, the Court has a footnote that's very important that

10:13AM 18  says that the opinion should not be published and is not

10:13AM 19  precedent except under the limited circumstances, and I don't

10:13AM 20  think this case really is applicable.

10:13AM 21       THE COURT:  Well, okay.  I do understand the case.  I'm

10:13AM 22  aware of it.

10:13AM 23       MR. RISLEY:  This is Kevin Risley.  We disagree with

10:13AM 24  their interpretation of the case.

10:13AM 25       THE COURT:  Sure.

10:13AM 1          MR. RISLEY:  I'm not sure we're there yet.  I would

10:13AM 2     like to answer the Court's question which, I think, was

10:14AM 3     actually two questions.  One is should an excess insurer be

10:14AM 4     evaluated in the case looking at it in some circumstances?  I

10:14AM 5     think that's true, and we have been doing that to some degree.

10:14AM 6     We have been monitoring.  We have been involved in discussions.

10:14AM 7     We're aware of what's going on in the case.  We have been

10:14AM 8     engaged to that extent.

10:14AM 9          To the extent we've tried to do more and go

10:14AM 10    forward with the litigation, we moved to lift the stay against

10:14AM 11    Knauf over a year ago, and we were told we couldn't.  We filed

10:14AM 12    objection to the settlement.  We're told we don't have standing

10:14AM 13    to object to it.  Every time we've tried to participate, we've

10:14AM 14    been told not to.

10:14AM 15         Now, the other question, I think, the Court was

10:14AM 16    asking is you have to have a judgment to go forward, and I

10:14AM 17    think the answer is on bad-faith claims you do.

10:14AM 18         MR. HERMAN:  Your Honor, this is Russ Herman.  I'm

10:14AM 19    going to let Lennie argue the motion in main, but I want to

10:14AM 20    clarify something.  More than a year ago we had a meeting in

10:14AM 21    Kerry Miller's office in which all insurers were invited.

10:15AM 22    North River had a representative.  At that time we presented

10:15AM 23    our claims against Interior/Exterior which far exceeded their

10:15AM 24    coverage.

10:15AM 25         Since that time we've had two meetings with

10:15AM 1    North River representatives.  The last one was eight weeks ago.

10:15AM 2    At that meeting, there was no settlement advanced or even a

10:15AM 3    discussion of settlement, nor has there ever been.  What was

10:15AM 4    requested of us was certain information to provide North River

10:15AM 5    so that North River could evaluate its exposure.  We provided

10:15AM 6    that information.

10:15AM 7                North River has been silent, and with all due

10:15AM 8    respect to North River's counsel, we're not in a habit of

10:15AM 9    pleading bad faith in advance of discovery which we've

10:16AM 10   requested because then we might be in violation of the local

10:16AM 11   rules as well as the federal rules.

10:16AM 12               We have no doubt at this juncture that the

10:16AM 13   intransigents of North River rises to the level of bad faith,

10:16AM 14   and particularly under Louisiana statutes and the Direct Action

10:16AM 15   Statute and we're dealing with an insurer that steps actually

10:16AM 16   in the shoes of a Louisiana corporation and Louisiana claimants

10:16AM 17   on the other end, I'm not certain that counsel fully -- well,

10:16AM 18   that would be condescending.  At any rate, counsel may very

10:16AM 19   well understand the implications of the Direct Action Statute

10:17AM 20   but to indicate that there have been settlement discussions, in

10:17AM 21   our view, is not only a stretch, it's a rubber band that

10:17AM 22   breaks.

10:17AM 23          MR. RISLEY:  Your Honor, Kevin Risley to respond to

10:17AM 24   Mr. Herman.

10:17AM 25               THE COURT:  Sure.

10:17AM  1          MR. RISLEY:  We have a big disagreement with them about

10:17AM  2    the value of their claims.  They have told us how they value

10:17AM  3    them.  We disagree for several reasonings.  That's one reason I

10:17AM  4    think the litigation probably needs to go forward, to see which

10:17AM  5    side has a better estimate of the value of the case.

10:17AM  6          When we met eight weeks ago we asked for

10:17AM  7    certain information, and they provided some orally during the

10:17AM  8    talks.  We asked for additional written information.  The

10:17AM  9    response was we already had that that they shouldn't have to

10:17AM 10    give it to us again, and we are going through that.

10:17AM 11          Number 3, the Direct Action Statute does not

10:17AM 12    create a cause of action of any kind, let alone for bad faith.

10:17AM 13    It's a procedural mechanism by which a claim can go directly

10:17AM 14    against a liability insurer.

10:17AM 15          I think the most important point Mr. Herman

10:18AM 16    made was they want discovery on claims they never pled, and the

10:18AM 17    Fifth Circuit certainly doesn't allow that.

10:18AM 18          THE COURT:  Okay.

10:18AM 19          MR. ANGELLE:  Your Honor, Sidney Angelle.  May I expand

10:18AM 20    upon that for just a moment?

10:18AM 21          THE COURT:  Sure.

10:18AM 22          MR. ANGELLE:  In the *New England* case they also cited

10:18AM 23    the *Ragas* case, a '97 Fifth Circuit case, and they made it very

10:18AM 24    clear that although the plaintiffs in those cases painted the

10:18AM 25    type of scenario that Your Honor painted a few moments ago,

10:18AM 1    they said, "Before an adjudicated excess judgment is levied,

10:18AM 2    there can be no bad-faith action."

10:18AM 3            The Court in *Ragas* also has a fine discussion

10:18AM 4    about how an assignment that's taken by the plaintiff from the

10:18AM 5    insured prior to the adjudication of excess judgment would be

10:18AM 6    invalid.  So the issue here really is not only is bad faith not

10:18AM 7    pled, it can't be pled, and it can't arise at this time.  It

10:18AM 8    may never arise, and if the settlement with INEX goes through,

10:18AM 9    they will have no excess exposure.  So to say let's go forward

10:19AM 10   now to see if there is a case that can be made, there is no

10:19AM 11   case to be made right now, and none can be made right now.

10:19AM 12   That's the crux of our objection to pursuing a bad-faith claim

10:19AM 13   that's not even pled.

10:19AM 14        MR. DAVIS:  Your Honor, if I may, this is Lennie.  I

10:19AM 15   would like to give a little background and give a little

10:19AM 16   information to the Court.

10:19AM 17            The Court well knows that North River was in

10:19AM 18   this is case and has been in this case for some time.  Now,

10:19AM 19   we've asked for time and time for North River to come and sit

10:19AM 20   with us, as Russ had mentioned earlier, and, yes, they did sit

10:19AM 21   with us, but we followed the orders of this Court, and this

10:19AM 22   Court set forth a scheduling order.

10:19AM 23            On March 19th, we issued a request for

10:19AM 24   production which was in direct response to what the Court

10:19AM 25   ordered us to do, to start with discovery.  This Court issued a

10:19AM 1    scheduling order that required that documents -- responses be

10:19AM 2    produced on April 18th.  I can tell you for the first time that

10:20AM 3    I'm aware of in an MDL, when a request for production has been

10:20AM 4    issued, not a single document has been produced.

10:20AM 5             We have objections to every single one of the

10:20AM 6    42 items that were in the document request.  Now, we have to

10:20AM 7    deal with that issue promptly.  That's just an example of

10:20AM 8    North River's attitude towards this court and towards our

10:20AM 9    position.

10:20AM 10            So we don't have a single document produced in

10:20AM 11   response to the request for production.  Yes, we do have

10:20AM 12   North River's profile form, and North River basically says,

10:20AM 13   Look at the insurance policy; that's all you're getting.  Now,

10:20AM 14   that's not set before the Court right now, but it's an example

10:20AM 15   of what we're dealing with.

10:20AM 16            The very next day, on March 20th, in response

10:20AM 17   to directives of this Court, we issued a 30(b)(6) deposition

10:20AM 18   notice.  The Court is well aware of how we got there, and

10:21AM 19   that's what's before the Court.  We are not here to argue the

10:21AM 20   merits of this case, but we're entitled to discover

10:21AM 21   information, and what's ironic is that even North River wants

10:21AM 22   to go forward and wants to lift the stay as to Knauf.  We are

10:21AM 23   entitled to discover the policy and move forward.

10:21AM 24            Your Honor, we cited in our brief the *Sosebee*

10:21AM 25   case which was done by Magistrate Knowles, which is a very

10:21AM 1   important case with respect to discovering of insurance cases

10:21AM 2   with respect to guidelines, underwriting manuals, and the like.

10:21AM 3   This Court knows as well as any other court what's typically

10:21AM 4   allowed in a discovery -- an insurance dispute.  We really

10:21AM 5   don't need to brief that in any extensive detail, but I can go

10:21AM 6   through each one of the 18 items that are in my brief, if the

10:21AM 7   Court wants to.

10:21AM 8            It's very apparent what North River's agenda

10:22AM 9   is, and it is to sit back beyond the sidelines.  They are

10:22AM 10  outside the stadium, quite frankly.  They don't even want to

10:22AM 11  come in the stadium, and we are ready to move forward,

10:22AM 12  Your Honor.

10:22AM 13       THE COURT:  Okay.  Anything further on the claim of

10:22AM 14  North River to lift the stay?  If not, I would like to go to

10:22AM 15  the objections.

10:22AM 16       MR. RISLEY:  Your Honor, Kevin Risley.  If I could

10:22AM 17  briefly respond to a couple points Mr. Davis made.  We keep

10:22AM 18  hearing that we're not in this [inaudible] -- we're not

10:22AM 19  involved in the [inaudible] -- what that means --

10:22AM 20       THE COURT:  Wait, wait, wait.  You're breaking up now.

10:22AM 21  I don't know why but you're breaking up.

10:22AM 22       MR. RISLEY:  When Mr. Davis says we don't want to be in

10:22AM 23  the game, we are outside the stadium, what he means is we will

10:22AM 24  not agree to pay the settlement demand.  We have a basic

10:22AM 25  disagreement over the value of the case, and until we have some

10:22AM 1    discovery in that, I don't think there will be any way to get

10:22AM 2    closer on that ground -- can I finish please.

10:22AM 3        MR. DAVIS:  I'm sorry, I thought you were finished.

10:23AM 4        MR. RISLEY:  We have been trying to litigate this case,

10:23AM 5    especially against Knauf.  Our view is that Knauf is the party

10:23AM 6    that manufactured the drywall that at least is alleged if not

10:23AM 7    convinced at this point to have been defective.  Any liability

10:23AM 8    that comes to us will flow through them.  That's why we have

10:23AM 9    been trying to get involved in the litigation with them.  That,

10:23AM 10   in our view, is the ultimate thing that will determine what

10:23AM 11   liability we may or may not eventually have.

10:23AM 12       Number 2, he said that they did what the Court

10:23AM 13   ordered.  I don't think the Court ordered them to send out

10:23AM 14   discovery requests that exceed the pleadings in the case, and

10:23AM 15   I'm sure Mr. Angelle will discuss that in more detail.

10:23AM 16       The other thing, and I find this a little bit

10:23AM 17   strange, is he says they issued a 30(b)(6) notice.  Well, in

10:23AM 18   fact, they didn't.  They sent us a courtesy copy.  We

10:23AM 19   responded.  We went to meet with them.  They refused to change

10:23AM 20   their request on anything.  We asked them to go ahead and serve

10:23AM 21   the notice on us so we could file objections, and their

10:23AM 22   response was, No, just go ahead and file your objections.

10:23AM 23   We've done that with everybody's agreeing, but to say that they

10:23AM 24   have actually set a deposition is not correct.

10:24AM 25       MR. LEVIN:  Your Honor, this is Arnold Levin, and we

10:24AM 1   have been at this for two years, and we have settlements that

10:24AM 2   are very prolix that are conditioned on other settlements to

10:24AM 3   resolve this matter with about 50 percent of the homes through

10:24AM 4   Knauf, through Banner, through INEX, through L & W, and shortly

10:24AM 5   with all of the insurance carriers and the builders of some 500

10:24AM 6   builders, and North River is an integral part of this

10:24AM 7   settlement.

10:24AM 8          If you're talking about bad faith, North River

10:24AM 9   is, I would say, playing lawyer, but at this point in time not

10:24AM 10  coming to the table and dealing with this issue and allowing as

10:24AM 11  a result of the INEX settlement and the assignment and the

10:24AM 12  monies that are due in the INEX settlement to go to

10:25AM 13  Knauf [inaudible] -- as a condition of the settlement, if

10:25AM 14  you're talking about bad faith and arguing about objections to

10:25AM 15  discovery and whether or not you have bad faith when everybody

10:25AM 16  that's involved in this case, hundreds of lawyers, have gotten

10:25AM 17  together, and the only set of lawyers that hasn't gotten

10:25AM 18  together and realized that they have an obligation, whether it

10:25AM 19  be legal, moral, or to this Court and to the other litigants,

10:25AM 20  to sit down and resolve this issue is bizarre at this point.

10:25AM 21  If you're talking about bad faith, that's their bad faith.

10:25AM 22          MR. RISLEY:  Your Honor, Kevin Risley.  I need to

10:25AM 23  respond to that quickly, if I could.

10:25AM 24          THE COURT:  Sure.

10:25AM 25          MR. RISLEY:  Pointing out what the real problem is,

10:25AM 1   we're approaching the one-year anniversary of the announcement

10:25AM 2   of the settlement involving INEX, and it was announced, it was

10:25AM 3   described, it was told to the Court it was a settlement.  Now

10:25AM 4   we're being told a year later it's only a settlement if we pay

10:26AM 5   the money that they want us to pay.

10:26AM 6              We were not a part of those negotiations.

10:26AM 7   We're not a party to any agreement.  How can they announce to

10:26AM 8   the Court there is a done deal if now they are telling the

10:26AM 9   Court, Well, it depends on other people who aren't part of the

10:26AM 10  deal.  It's not bad faith for us not to agree retroactively to

10:26AM 11  a deal they put together.

10:26AM 12       MR. LEVIN:  It's not the INEX deal.  It's the Knauf

10:26AM 13  deal that you're thwarting.

10:26AM 14       MR. GLICKSTEIN:  Your Honor, this is Steve Glickstein

10:26AM 15  on behalf of Knauf, and I have been silent until now, but let

10:26AM 16  me make a couple of points.  I thought we were still on

10:26AM 17  preliminaries.  I didn't know we were almost done with the

10:26AM 18  argument on North River attempting to lift the stay against

10:26AM 19  Knauf.

10:26AM 20              I think that North River mischaracterizes the

10:26AM 21  parties' position and, I think, mischaracterizes the sentiments

10:26AM 22  that Your Honor has expressed by saying that North River is

10:27AM 23  being punished for not settling, and I think that's the word

10:27AM 24  that they use in the brief.

10:27AM 25              Your Honor has the right and, I think, all

10:27AM 1    litigants have the right to expect that the case will be

10:27AM 2    resolved either through litigation or through settlement.  The

10:27AM 3    Court, I think, has provided a reasonable time to the parties

10:27AM 4    to attempt to resolve it through settlement, and if it is not

10:27AM 5    resolved through settlement at this point, there is nothing

10:27AM 6    unusual about Your Honor saying in the absence of a settlement

10:27AM 7    then we have to proceed on the litigation front.

10:27AM 8           I think I actually heard Mr. Risley say that,

10:27AM 9    in fact, that he thinks that he needs to go -- he may need to

10:28AM 10   go forward in order to, in his opinion, to demonstrate the

10:28AM 11   weakness of the claim.

10:28AM 12          It's also, I think, a mischaracterization to

10:28AM 13   say that, you know, the Court is somehow favoring parties here,

10:28AM 14   favoring settling parties to the detriment of nonsettling

10:28AM 15   parties.  I don't think that's a fair characterization of

10:28AM 16   what's happening.

10:28AM 17          To be sure, public policy and the law favor the

10:28AM 18   consensual resolution of claims, and there is nothing wrong or

10:28AM 19   untoward with the Court enacting procedures which provide, you

10:28AM 20   know, opportunities and incentives to the parties to settle.

10:29AM 21   This case, of course, as Your Honor has said many, many times

10:29AM 22   is a more difficult case than most because not only are we

10:29AM 23   dealing with thousands of plaintiffs, we're dealing with

10:29AM 24   thousands of codefendants which makes putting together a

10:29AM 25   package, you know, all the more -- all the more difficult.

10:29AM 1          So when Your Honor has entered stays in favor

10:29AM 2    of settling parties, it's done so, I think it would be

10:29AM 3    presumptuous, I think, for me, perhaps, to attempt to mind read

10:29AM 4    what Your Honor had in mind, but certainly we as advocates

10:29AM 5    thought that it was appropriate for a couple of reasons:  One

10:29AM 6    is that there is a tremendous amount of work ahead in order to

10:30AM 7    try and put this very complicated settlement together, and it's

10:30AM 8    appropriate to give the parties some breathing space so that

10:30AM 9    they can devote their efforts to trying to make this come to

10:30AM 10   fruition.

10:30AM 11         Secondly, I think Your Honor recognizes that

10:30AM 12   and certainly from our perspective it was a reason why we

10:30AM 13   settled, and I think why any party settles is that settlement

10:30AM 14   should come with it, you know, a respite from litigation;

10:30AM 15   otherwise, there is not very much reason why a party would

10:30AM 16   settle.  So, nothing that's happened in this case, I think, is

10:30AM 17   unusual or different from what would happen in any mass tort.

10:30AM 18         Your Honor has enforced the rules equally.  I

10:31AM 19   don't think it's true that North River is being is singled out.

10:31AM 20   Your Honor may recall when the INEX and Banner settlements came

10:31AM 21   out that Knauf made a goose-and-gander argument that was

10:31AM 22   similar to the argument that North River is making now, and we

10:31AM 23   said that if there was a stay of litigation against Banner and

10:31AM 24   INEX, then the stay should also prevent the prosecution of

10:31AM 25   claims against Knauf by INEX and Banner.  We moved to clarify

10:31AM 1   the stay order in that regard.  On July 14, 2011 -- and the

10:31AM 2   document number is 9839, item 7 -- you denied that motion.

10:32AM 3          So it seems to me -- because at that point the

10:32AM 4   Knauf defendants had not settled, and so it would seem to me

10:32AM 5   that it would be the principal application of consistent ruling

10:32AM 6   that the stay remain in place as to the Knauf defendants until

10:32AM 7   and as when as North River, you know, North River comes to the

10:32AM 8   table and/or as a demonstrable need to lift the stay.

10:32AM 9          This is the one thing that really hasn't been

10:32AM 10  fleshed out in argument to date, which is, you know, what is

10:32AM 11  the prejudice to North River of keeping the stay in place as

10:33AM 12  against Knauf?  This is actually something that had been argued

10:33AM 13  to the Court months ago.

10:33AM 14         At the time Your Honor pointed out that

10:33AM 15  Article 2323 of the Louisiana statutes permits North River to

10:33AM 16  litigate against the empty chair and to allocate in its action

10:33AM 17  brought by the plaintiffs as much fault against Knauf as they

10:33AM 18  can prove.  Your Honor noted that that is something that

10:33AM 19  happens all the time in Louisiana, and, therefore, North River

10:33AM 20  won't be prejudiced.

10:33AM 21         We pointed that out again in our brief, and

10:33AM 22  neither in their opening brief or in their reply brief or in

10:33AM 23  their argument today have I heard any response to the fact that

10:34AM 24  the North River parties can litigate against Knauf's fault in

10:34AM 25  Knauf's absence in any case that's brought against them.

10:34AM 1          The second and last point I would make is that

10:34AM 2   North River said they want to proceed against Knauf so that

10:34AM 3   they can bring everything together in one action.  But the

10:34AM 4   manufacturer, namely, KPT, has not been served in their action

10:34AM 5   yet, and so we have a situation where they have parties against

10:34AM 6   whom they want to pierce the corporate veil, like the German

10:34AM 7   entities that are served, but the actual manufacturer of the

10:34AM 8   product has not yet been served by -- under the Hague

10:35AM 9   Convention as required by law.

10:35AM 10          Most of North River's brief on that issue is

10:35AM 11   simply a criticism of Knauf for not consenting to service or

10:35AM 12   KPT for consenting to service, but, you know, it is KPT's right

10:35AM 13   to insist on a procedurally correct service, and they haven't

10:35AM 14   been served, and so the supposed benefit of bringing the entire

10:35AM 15   case together in one action wouldn't even be present if the

10:35AM 16   Court lifted the stay.  I think that's another reason why the

10:35AM 17   case can't proceed with the PSC's action against North River

10:35AM 18   without Knauf having to be a party.

10:36AM 19          MR. RISLEY:  Your Honor, Kevin Risley from North River

10:36AM 20   in response.

10:36AM 21          THE COURT:  Sure.

10:36AM 22          MR. RISLEY:  On the last two points, the empty chair

10:36AM 23   and the lack of service, we did address the empty chair

10:36AM 24   argument in page 6 of our reply brief before granting leave for

10:36AM 25   it yesterday.  We're entitled not just to a determination of

10:36AM 1  Knauf's percentage of responsibility but also to judgment

10:36AM 2  against them for any amounts we are liable because of the fact

10:36AM 3  that our insured sold the product.

10:36AM 4         This is pass-through liability.  They

10:36AM 5  ultimately will owe us for whatever we are released on the

10:36AM 6  Knauf board.  We believe they will ultimately owe us for

10:36AM 7  whatever we owe because of our insured's conduct.  So they need

10:36AM 8  to be parties to that case because that's where the ultimate

10:36AM 9  responsibility lies.  I find it a little bit of a strange

10:36AM 10 argument that the manufacturer of the defective product is not

10:36AM 11 a party, a necessary party to claims involving damages because

10:36AM 12 of that product.

10:36AM 13        Now, on the service issue, Mr. Glickstein is

10:37AM 14 exactly right.  KPT can choose to demand formal service.  We've

10:37AM 15 undertaken that.  We've served the German Knauf entities.

10:37AM 16 Their central authority responds more quickly to Hague

10:37AM 17 Convention requests than the Chinese do, but we've got that

10:37AM 18 process going.

10:37AM 19        But, of course, they were willing to waive that

10:37AM 20 for the PSC in certain instances.  They know how to do that if

10:37AM 21 they want to.  If they want this litigation to go forward, then

10:37AM 22 it seems the thing to do would be to go ahead and agree to

10:37AM 23 accept service.

10:37AM 24        Now, I will tell the Court so we don't surprise

10:37AM 25 anybody, KPT has appeared before the Court and asked for

10:37AM 1    affirmative relief from the Court in granting the settlement.

10:37AM 2    We believe that to be a general appearance.  We'll be sending a

10:37AM 3    copy of the petition to KPT's lawyers, which we're allowed to

10:37AM 4    do under the federal rules, serve a claim on a party that's

10:37AM 5    appeared.  I suspect in the near future we'll be before the

10:37AM 6    Court on the question whether that's proper service or not, but

10:37AM 7    the truth is on this issue KPT controls the timetable, and they

10:38AM 8    shouldn't be able to use it to our disadvantage.

10:38AM 9              Now, what Mr. Glickstein is really saying, and

10:38AM 10   if you look at page 4 of their response to the motion to lift

10:38AM 11   stay, they say, "North River's contribution is essential to the

10:38AM 12   success of the proposed settlement plan."  In other words,

10:38AM 13   despite the announcements in court, despite the pleadings,

10:38AM 14   despite the press releases, there is not a settlement yet.

10:38AM 15   They are going to point to us as the reason that's not true or

10:38AM 16   whether or not there is not a settlement, but it seems to be

10:38AM 17   quite a change now from what they told the Court a year ago

10:38AM 18   about whether there was a deal done or not.

10:38AM 19             We realize the Court can and, in a case like

10:38AM 20   this, probably should stay the litigation to try to see if

10:38AM 21   settlements can be achieved.  That's always a worthwhile effort

10:38AM 22   in this type of the litigation.

10:38AM 23             We also agree if the Court believes that a

10:38AM 24   party is not at the point of reaching a settlement after an

10:38AM 25   adequate opportunity, the Court can lift the stay to allow the

10:38AM 1   litigation involving that party to go forward.  The problem we

10:38AM 2   have is doing it in piecemeal fashion.

10:38AM 3              The INEX response included the statement, "The

10:38AM 4   stay was never intended to reward or involve nonsettling

10:39AM 5   parties."  Well, I'm not sure what the Court's intention was.

10:39AM 6   The Court has certainly given the intention that it wants the

10:39AM 7   litigation involving North River to go forward by lifting the

10:39AM 8   stay against us, but in order to do that, Louisiana law

10:39AM 9   requires that INEX be a party, and common sense requires that

10:39AM 10  the manufacturer of the defective product, the only product

10:39AM 11  that's involved in the Knauf claims, should be a party to that

10:39AM 12  so we can get complete relief in one proceeding and not have to

10:39AM 13  litigate against the PSC and then start all over again against

10:39AM 14  Knauf.  Let's do it all once.

10:39AM 15             THE COURT:  Okay.

10:39AM 16             MR. DUPLANTIER:  Judge, this is Richard Duplantier on

10:39AM 17  behalf of Interior/Exterior.  I have yet to hear any of the

10:39AM 18  parties discuss the procedural mechanism that we have

10:39AM 19  implemented with our primary carriers, and that is settlement

10:39AM 20  on behalf of the insured Interior/Exterior and the primary

10:39AM 21  carriers and allowing a claim against the excess carrier to

10:39AM 22  proceed without those parties being a party to the litigation.

10:39AM 23  That has been approved by the courts in Louisiana and adopted

10:40AM 24  by the federal courts as law in Louisiana.

10:40AM 25             Moreover, to address the issue about the

10:40AM 1    manufacturer needing to be a party to the litigation because

10:40AM 2    its an absolute pass-through liability, I think Mr. Risley is

10:40AM 3    misinformed about the law in Louisiana, and that is not, in

10:40AM 4    fact, the way the law is in Louisiana.

10:40AM 5              Should we be considered a good-faith seller?

10:40AM 6    Yes.  The law in Louisiana would absolve Interior/Exterior from

10:40AM 7    liability and allow it to pass through to KPT.  However, if we

10:40AM 8    are determined to be a bad-faith seller, we are --

10:40AM 9    Interior/Exterior would be exposed to comparative fault

10:40AM 10   analysis, and the plaintiffs would be able to recover only our

10:40AM 11   percentage of fault under the law in Louisiana at that point,

10:40AM 12   and we would not be able to pass that liability through to

10:40AM 13   Knauf, thus, the reason why Interior/Exterior engaged in

10:40AM 14   settlement negotiations and the reason why we entered into that

10:41AM 15   settlement process.

10:41AM 16             So that recitation of the law is, in fact,

10:41AM 17   incorrect, and I think that's part of the problem that we're

10:41AM 18   having is that North River doesn't understand the exposure that

10:41AM 19   we've tried to explain to their lawyers, and so it is of a

10:41AM 20   concern to Interior/Exterior as a business and why we entered

10:41AM 21   into the settlement and why we want the stay to remain in

10:41AM 22   place.

10:41AM 23             THE COURT:  Okay.

10:41AM 24             MR. RISLEY:  Your Honor, Kevin Risley.  We do disagree

10:41AM 25   with Mr. Duplantier's reading of Louisiana law.  We think

10:41AM  1    whether INEX was a good-faith or a bad-faith seller determines

10:41AM  2    whether their liability is limited and then for our derivative

10:41AM  3    liability is limited, we disagree that that affects the rights

10:41AM  4    of recovery from the manufacturer.

10:41AM  5           That's not the point right now.  The point is

10:41AM  6    that to the extent we're going forward, they need to be a

10:41AM  7    party.  They did, in fact, file a motion for summary judgment

10:41AM  8    on the good-faith seller status in which both representatives

10:41AM  9    of INEX and representatives of Knauf testified under oath that

10:41AM 10    INEX had no knowledge of the defect.

10:42AM 11           So it strikes me as strange that Mr. Duplantier

10:42AM 12    would raise that after representing to the Court in his summary

10:42AM 13    judgment motion that there was no evidence of INEX being a

10:42AM 14    bad-faith seller.  I think that's getting into the merits of

10:42AM 15    the litigation, and that's not the issue before the Court.  The

10:42AM 16    Court is if it's going to go forward against North River,

10:42AM 17    should it go forward including INEX as far as by statute and

10:42AM 18    the manufacturer, Knauf.

10:42AM 19         THE COURT:  All right.  I understand the issue.  Let me

10:42AM 20    just speak on that issue first, and then we'll cover the

10:42AM 21    others, if necessary.

10:42AM 22           As I said, my evaluation of where we are at

10:42AM 23    this point is I have a proposed settlement that is in the early

10:42AM 24    stage in the sense of the Court-approval stage, the notice

10:42AM 25    stage, and at the same time I'm trying to deal with those

10:42AM 1    parties or those claims that have not been a part or are not

10:42AM 2    presently a part of the settlement.

10:43AM 3              With regard to allowing proceedings against the

10:43AM 4    individuals who are now involved in the settlement, I'm not

10:43AM 5    going to do that.  It's appropriate, in my judgment, to stay

10:43AM 6    the proceedings against those entities for the time being -- I

10:43AM 7    emphasize that, *for the time being* -- to allow them to seek

10:43AM 8    Court approval to allow them to get all of the ducks in order,

10:43AM 9    particularly in a case of this sort.

10:43AM 10             I'm dealing in this case with at least 1,000

10:43AM 11   defendants, and the participation of all of those defendants is

10:43AM 12   a hard, time-consuming and laborious process.  The Court

10:43AM 13   participated in one aspect of it most recently.  I met with

10:43AM 14   about 40 or 50 insurers one at a time and discussed the issues

10:44AM 15   with them, and, by and large, the large majority of them have

10:44AM 16   come aboard.

10:44AM 17             It's been a laborious process and it's still

10:44AM 18   ongoing, and to take the time, to take the energy, to take the

10:44AM 19   resources from those individuals who are daily, if not hourly,

10:44AM 20   involved in this process would be a distraction, it would be

10:44AM 21   disruptive, it would be destructive of the process, and I don't

10:44AM 22   think it would be helpful to the litigation.

10:44AM 23             This approach does not mean in any way, shape,

10:44AM 24   or form that the claims of those entities who are not

10:44AM 25   participating in the settlement are being dismissed.  They are

10:44AM   1   not.  I'm going to get to those claims.  There are no rights

10:44AM   2   that have been or will be violated without due process because

10:45AM   3   the claims are stayed.  They are not resolved.  There is no

10:45AM   4   prejudice in a case like this that I can see.

10:45AM   5             From the standpoint of whether it's better to

10:45AM   6   proceed altogether or in stages, in my judgment looking at this

10:45AM   7   case, living with it for over two years, it's my feeling that

10:45AM   8   the only way it can be proceeded is in stages.  It's like how

10:45AM   9   do you eat an elephant?  It's one bite at a time.  You can't

10:45AM  10   eat the whole elephant; otherwise, it won't work.  I'm trying

10:45AM  11   to eat this elephant one bite at a time; therefore, I'm going

10:45AM  12   to maintain the stay on those individuals or entities that have

10:45AM  13   participated and are participating in the settlement at this

10:45AM  14   stage.

10:45AM  15             Now, with regard to the claims against

10:45AM  16   North River, these claims, as I see them at this stage, are

10:46AM  17   claims that the PSC is trying to ferret out to see whether or

10:46AM  18   not there is a claim against North River that INEX has for a

10:46AM  19   violation or potential violation of their duty and

10:46AM  20   responsibility under the contracts of insurance which INEX and

10:46AM  21   North River have entered into.

10:46AM  22             The thrust of those claims, as I see it, are

10:46AM  23   the structure of North River, who made the decisions to

10:46AM  24   participate, what was the basis of those decisions, or is it

10:46AM  25   consistent with or not consistent with the policies or past

10:46AM  1    actions of North River, how long have they handled the INEX

10:46AM  2    claims or the claims against INEX, is that procedure that they

10:47AM  3    have been dealing with INEX claims in the past as well as in

10:47AM  4    the present reasonable under the terms of their policies.  I

10:47AM  5    think that those items are discoverable so that a determination

10:47AM  6    can be made as to whether or not INEX, through the PSC, has any

10:47AM  7    potential at all for a bad-faith claim.

10:47AM  8                  I don't feel that they can try that case now.

10:47AM  9    I don't think that they can even make that case now without

10:47AM 10    some basis for it.  For somebody to say that somebody is in bad

10:47AM 11    faith and have no evidence to show that they are in bad faith

10:47AM 12    is potentially Rule 11 conduct that I would have to take a

10:47AM 13    serious look at.  It's particularly so when it's an assignment.

10:48AM 14                  There has been no negotiations over the years

10:48AM 15    between the PSC and North River regarding the policies.  Those

10:48AM 16    negotiations and opportunities exist between INEX and

10:48AM 17    North River.  So for the PSC to come in and say that

10:48AM 18    North River at this stage is in bad faith is meaningless to me.

10:48AM 19    How can they possibly say that?

10:48AM 20                  They are entitled to at least some basic

10:48AM 21    discovery to see whether or not they could or should go forward

10:48AM 22    with it.  After that discovery, if they happen to amend their

10:48AM 23    pleadings, and I don't see any basis for it, I'll dismiss that

10:48AM 24    potential claim.  To dismiss a claim, if they try to file it

10:48AM 25    now, I would probably dismiss it because there is no basis for

10:48AM  1    it.  So I have to allow them to do some discovery to decide

10:49AM  2    whether or not they are going to make any potential claim for

10:49AM  3    penalties or bad faith.  It seems to me that is appropriate.

10:49AM  4         With that basic thought in mind, I move to the

10:49AM  5    next objections that North River has made.  The objections

10:49AM  6    concern me a little bit because North River takes the

10:49AM  7    position -- and frankly, in some aspects they are right -- the

10:49AM  8    claims are broad.  The questions are broad.  They need to be a

10:49AM  9    little bit more streamlined.  I think the parties have to have

10:49AM 10    some kind of meet and confer and say, This is what we want.  Do

10:49AM 11    you understand this is what we want?  If you understand and

10:49AM 12    object, that's fine.  If you don't understand it, then the

10:49AM 13    plaintiff is going to have to say, Well, let me try it again.

10:49AM 14    This is what we want and this is why we want it.

10:49AM 15         It's not helpful to me when the plaintiffs ask

10:50AM 16    for something very broad and then INEX says that it's too broad

10:50AM 17    for us to even understand.  Either the plaintiffs have to be a

10:50AM 18    little bit more specific, or North River, if they know what

10:50AM 19    they want, then let's not say I don't know if you know.  I

10:50AM 20    can't tell, frankly, whether -- there are some areas that it

10:50AM 21    seems to me that North River agrees to allow a person to

10:50AM 22    testify.

10:50AM 23         UNIDENTIFIED SPEAKER:  That's correct, Your Honor.

10:50AM 24         THE COURT:  I don't know in some of these whether there

10:50AM 25    is any basis for an objection, I mean, for me to look at it at

10:50AM 1    this time.  North River says, We understand this and we're

10:51AM 2    willing to give you the information, the corporate structure.

10:51AM 3    I find that they say they are willing to do it.  Handling the

10:51AM 4    drywall, North River has no objection on this topic as I

10:51AM 5    understand it.  Claims involving Chinese drywall, a method that

10:51AM 6    they've handled the claims, North River has no objection.

10:51AM 7    There is a development, writing, marketing, and sale of the

10:51AM 8    defendant policy in Louisiana, and North River says, I don't

10:51AM 9    understand the request.  What information do you need?

10:51AM 10           I think that's a valid question; so, Lennie, I

10:51AM 11   think you and somebody from North River have to get together

10:52AM 12   and flesh this out a little bit more for me, so I can make some

10:52AM 13   meaningful rules.

10:52AM 14           MR. ANGELLE:  Your Honor, this is Sidney Angelle.  What

10:52AM 15   I've heard from the Court just now is a couple of comments that

10:52AM 16   I would like to try and get some clarification on.  You've

10:52AM 17   indicated that it sounds like there should be some restriction

10:52AM 18   of the inquiries that the PSC has into the INEX claims;

10:52AM 19   whereas, clearly many of these topics go into any and all

10:52AM 20   claims against anybody who might be insured by North River in

10:52AM 21   all 50 states, and I don't know if you would like to see them

10:52AM 22   restrict their inquiries to this claim as to INEX --

10:52AM 23           THE COURT:  Yes.

10:52AM 24           MR. ANGELLE:  -- talked about they are entitled to

10:52AM 25   basic discovery --

10:52AM 1          THE COURT:  Wait, wait, wait.  Hold on.  Look, Sidney,

10:52AM 2     I think you're right at this point.  I think it ought to be

10:52AM 3     restricted to the INEX situation.  Let's take a look at that

10:52AM 4     first.

10:52AM 5              Now, if the plaintiffs take the position, well,

10:53AM 6     they are doing one thing in INEX, and this is totally out of

10:53AM 7     kilter or out of character, then I'll look at that, but we

10:53AM 8     first have to find out what they did in INEX, it seems to me.

10:53AM 9     I don't think it's helpful to focus on the whole world at this

10:53AM 10    point.  Again --

10:53AM 11         MR. ANGELLE:  The other troubling part, Your Honor, is

10:53AM 12    by the plain the language in some of their topics, it would

10:53AM 13    sound as though they believed they are entitled to review even

10:53AM 14    attorney-client communications as between North River and his

10:53AM 15    counsel.

10:53AM 16         THE COURT:  No, I think that's clearly privileged, but

10:53AM 17    I think that they are entitled to know who it is.

10:53AM 18         MR. ANGELLE:  I think we've agreed we'll be happy to

10:53AM 19    identify who the players are.

10:53AM 20         THE COURT:  Right.

10:53AM 21         MR. DAVIS:  Your Honor, we're prepared to meet Monday

10:54AM 22    or Tuesday so we can address this by the status conference and

10:54AM 23    give the Court a report at that time so that we can move

10:54AM 24    forward.  We're hopeful that we get documents responsive to the

10:54AM 25    document request, and we hope that we'll get through that, and

10:54AM 1   we will be able to report, as I say, at the status conference.

10:54AM 2       THE COURT:  Sidney, you or Richard meet with Lenny, or

10:54AM 3   both, and just get me a little bit closer package so that I can

10:54AM 4   look at it.

10:54AM 5       MR. ANGELLE:  So, Your Honor, you're asking us to have

10:54AM 6   a meet and greet with Lennie on Monday or Tuesday.  I'll check

10:54AM 7   my calendar.  I think Monday is fine.  Kevin, if that's okay

10:54AM 8   with you.  To discuss the Judge's comments on the 30(b)(6)

10:54AM 9   notice.  As to the -- Judge, are you also asking us to meet and

10:54AM 10  confer over the responses to request for production?

10:54AM 11      THE COURT:  Yes.  I just need to know whether there is

10:54AM 12  an objection or not.  Some of your objections are, We don't

10:55AM 13  object unless they are asking this, and then if they ask this,

10:55AM 14  then we're objecting for this reason.  I don't know whether

10:55AM 15  they are asking it.

10:55AM 16      MR. ANGELLE:  Right.

10:55AM 17      MR. DAVIS:  We will be prepared to discuss both of

10:55AM 18  those issues Monday.

10:55AM 19      THE COURT:  All right.

10:55AM 20      MR. ANGELLE:  Lennie, when we break up, I'll call you

10:55AM 21  right back to schedule a time.

10:55AM 22      MR. DAVIS:  I'm not in my office.  If you e-mail me,

10:55AM 23  that's the best way.  I'm traveling.  I'm sorry.

10:55AM 24      MR. ANGELLE:  That's all right.

10:55AM 25      THE COURT:  All right.  Folks, thank you very much for

10:55AM 1    your time.

10:55AM 2              VOICES:  Thank you, Your Honor.

3              (WHEREUPON, the proceedings were concluded at

4    0:55 a.m.)

5                              *    *    *

6

7

8                      REPORTER'S CERTIFICATE

9

10      I, Cathy Pepper, Certified Realtime Reporter, Registered

11   Merit Reporter, Certified Court Reporter of the State of

12   Louisiana, Official Court Reporter for the United States

13   District Court, Eastern District of Louisiana, do hereby

14   certify that the foregoing is a true and correct transcript, to

15   the best of my ability and understanding, from the record of

16   the proceedings in the above-entitled and numbered matter.

17

18

19                      *s/Cathy Pepper*
                         _____

20                      Cathy Pepper, CRR, RMR, CCR
                        Certified Realtime Reporter
21                      Registered Merit Reporter
                        Official Court Reporter
22                      United States District Court
                        Cathy_Pepper@laed.uscourts.gov
10:55AM 23

24

25

**$**

**$5,000** [2] - 10:23, 10:25

**'**

**'97** [1] - 15:23

**0**

**09-MD-2047-EEF-JCW** [1] - 1:6
**0:55** [1] - 38:4

**1**

**1** [1] - 8:7
**1,000** [1] - 31:10
**10** [1] - 3:7
**10022** [1] - 2:5
**10:00** [1] - 1:7
**11** [2] - 3:8, 33:12
**12** [2] - 3:9, 3:10
**13** [1] - 3:11
**14** [2] - 3:12, 24:1
**15** [1] - 3:13
**16** [1] - 3:14
**1600** [1] - 2:9
**18** [2] - 3:15, 18:6
**18th** [1] - 17:2
**19** [3] - 1:7, 3:16, 5:2
**19106** [1] - 1:23
**19th** [1] - 16:23

**2**

**2** [2] - 8:15, 19:12
**20** [1] - 3:17
**2011** [1] - 24:1
**2012** [2] - 1:7, 5:2
**20th** [1] - 17:16
**21** [2] - 3:18, 3:19
**2300** [1] - 2:13
**2323** [1] - 24:15
**25** [1] - 3:20
**28** [1] - 3:21
**29** [1] - 3:22

**3**

**3** [1] - 15:11
**30** [1] - 3:23
**30(b)(6** [3] - 17:17, 19:17, 37:8

**35** [1] - 3:24
**36** [3] - 3:25, 4:1, 4:2
**37** [5] - 4:3, 4:4, 4:5, 4:6, 4:7

**4**

**4** [1] - 27:10
**40** [1] - 31:14
**400** [1] - 2:13
**4040** [1] - 2:18
**42** [1] - 17:6
**425** [1] - 2:4

**5**

**5** [1] - 3:5
**50** [3] - 20:3, 31:14, 35:21
**500** [2] - 1:23, 20:5
**510** [1] - 1:23

**6**

**6** [1] - 25:24

**7**

**7** [1] - 24:2
**701** [1] - 2:18
**70113** [1] - 1:19
**70130** [1] - 2:14
**70139** [1] - 2:19
**77056** [1] - 2:9

**8**

**8** [1] - 3:6
**820** [1] - 1:19

**9**

**9839** [1] - 24:2

**A**

**a.m** [1] - 38:4
**A.M** [1] - 1:7
**ability** [1] - 38:15
**able** [5] - 9:16, 27:8, 29:10, 29:12, 37:1
**aboard** [1] - 31:16
**above-entitled** [1] - 38:16
**absence** [2] - 22:6,

24:25
**absolute** [1] - 29:2
**absolve** [1] - 29:6
**accept** [1] - 26:23
**achieved** [1] - 27:21
**Action** [4] - 11:21, 14:14, 14:19, 15:11
**action** [6] - 9:3, 15:12, 16:2, 24:16, 25:3, 25:4, 25:15, 25:17
**actions** [3] - 7:10, 9:23, 33:1
**actual** [1] - 25:7
**additional** [1] - 15:8
**address** [4] - 8:4, 25:23, 28:25, 36:22
**addressed** [2] - 12:7, 12:12
**addressing** [1] - 8:2
**adequate** [1] - 27:25
**adjudicated** [1] - 16:1
**adjudication** [2] - 10:15, 16:5
**adopted** [2] - 12:8, 28:23
**advance** [1] - 14:9
**advanced** [1] - 14:2
**advocates** [1] - 23:4
**affects** [1] - 30:3
**agenda** [1] - 18:8
**ago** [7] - 13:11, 13:20, 14:1, 15:6, 15:25, 24:13, 27:17
**agree** [4] - 18:24, 21:10, 26:22, 27:23
**agreed** [1] - 36:18
**agreeing** [1] - 19:23
**agreement** [6] - 6:4, 6:19, 8:6, 8:8, 21:7
**agrees** [1] - 34:21
**ahead** [4] - 19:20, 19:22, 23:6, 26:22
**ALL** [1] - 1:9
**allegations** [6] - 9:15, 9:25, 10:4, 10:13, 10:18
**alleged** [1] - 19:6
**allocate** [1] - 24:16
**allow** [8] - 7:23, 15:17, 27:25, 29:7, 31:7, 31:8, 34:1, 34:21
**allowed** [4] - 12:10, 12:11, 18:4, 27:3
**allowing** [3] - 20:10, 28:21, 31:3
**almost** [1] - 21:17
**alone** [1] - 15:12
**altogether** [1] - 32:6
**amend** [1] - 33:22
**amount** [1] - 23:6

**amounts** [1] - 26:2
**analysis** [1] - 29:10
**ANGELLE** [13] - 2:11, 2:12, 5:14, 15:19, 15:22, 35:14, 35:24, 36:11, 36:18, 37:5, 37:16, 37:20, 37:24
**Angelle** [5] - 5:14, 8:3, 15:19, 19:15, 35:14
**ANGELLE.................
.........................** [5] -
3:13, 3:24, 3:25, 4:4, 4:7
**anniversary** [1] - 21:1
**announce** [1] - 21:7
**announced** [1] - 21:2
**announcement** [1] - 21:1
**announcements** [1] - 27:13
**answer** [2] - 13:2, 13:17
**apparent** [1] - 18:8
**appearance** [1] - 27:2
**APPEARANCES** [2] - 1:15, 2:1
**appeared** [2] - 26:25, 27:5
**applicable** [1] - 12:20
**application** [1] - 24:5
**approach** [1] - 31:23
**approaching** [1] - 21:1
**appropriate** [4] - 23:5, 23:8, 31:5, 34:3
**approval** [4] - 6:9, 6:11, 30:24, 31:8
**approve** [1] - 8:17
**approved** [1] - 28:23
**April** [1] - 17:2
**APRIL** [2] - 1:7, 5:2
**area** [1] - 9:21
**areas** [1] - 34:20
**argue** [2] - 13:19, 17:19
**argued** [1] - 24:12
**arguing** [2] - 11:14, 20:14
**ARGUMENT** [1] - 1:11
**argument** [7] - 21:18, 23:21, 23:22, 24:10, 24:23, 25:24, 26:10
**arise** [2] - 16:7, 16:8
**Arnold** [1] - 19:25
**ARNOLD** [1] - 1:22
**Article** [1] - 2:14
**aspect** [2] - 6:21, 31:13
**aspects** [2] - 7:2, 34:7
**asserting** [3] - 9:1,

9:13, 11:17
**assigned** [2] - 7:6, 8:16
**assignment** [4] - 8:17, 16:4, 20:11, 33:13
**attempt** [2] - 22:4, 23:3
**attempting** [1] - 21:18
**attention** [1] - 11:16
**attitude** [1] - 17:8
**attorney** [1] - 36:14
**attorney's** [1] - 7:12
**attorney-client** [1] - 36:14
**authority** [2] - 10:9, 26:16
**AVENUE** [2] - 1:19, 2:4
**aware** [5] - 8:16, 12:22, 13:7, 17:3, 17:18

**B**

**background** [2] - 5:25, 16:15
**bad** [29] - 7:12, 9:13, 9:14, 9:25, 10:3, 10:13, 10:14, 10:18, 13:17, 14:9, 14:13, 15:12, 16:2, 16:6, 16:12, 20:8, 20:14, 20:15, 20:21, 21:10, 29:8, 30:1, 30:14, 33:7, 33:10, 33:11, 33:18, 34:3
**bad-faith** [13] - 9:13, 9:25, 10:3, 10:13, 10:14, 10:18, 13:17, 16:2, 16:12, 29:8, 30:1, 30:14, 33:7
**band** [1] - 14:21
**bankrupt** [1] - 11:7
**bankruptcy** [1] - 11:3
**Banner** [4] - 20:4, 23:20, 23:23, 23:25
**Barnett** [1] - 10:12
**basic** [4] - 18:24, 33:20, 34:4, 35:25
**basis** [6] - 10:13, 32:24, 33:10, 33:23, 33:25, 34:25
**BATT** [1] - 2:11
**BEFORE** [1] - 1:12
**beginning** [1] - 9:18
**behalf** [4] - 11:12, 21:15, 28:17, 28:20
**believes** [1] - 27:23
**bellwether** [1] - 6:2

**below** [1] - 10:6
**benefit** [1] - 25:14
**BERGER** [1] - 2:13
**BERMAN** [1] - 1:22
**best** [2] - 37:23, 38:15
**better** [2] - 15:5, 32:5
**between** [3] - 33:15,
  33:16, 36:14
**beyond** [1] - 18:9
**big** [1] - 15:1
**biggest** [1] - 9:11
**billion** [1] - 11:5
**bit** [8] - 9:5, 19:16,
  26:9, 34:6, 34:9,
  34:18, 35:12, 37:3
**bite** [2] - 32:9, 32:11
**bizarre** [1] - 20:20
**board** [1] - 26:6
**bothered** [1] - 8:10
**break** [3] - 9:16, 9:18,
  37:20
**break-up** [1] - 9:16
**breaking** [3] - 9:5,
  18:20, 18:21
**breaks** [1] - 14:22
**breathing** [1] - 23:8
**BRIAN** [1] - 2:8
**Brian** [1] - 5:17
**brief** [9] - 17:24, 18:5,
  18:6, 21:24, 24:21,
  24:22, 25:10, 25:24
**briefly** [1] - 18:17
**bring** [1] - 25:3
**bringing** [1] - 25:14
**broad** [4] - 34:8, 34:16
**brought** [4] - 11:16,
  12:16, 24:17, 24:25
**builders** [2] - 20:5,
  20:6
**BUILDING** [1] - 2:16
**BURR** [1] - 2:17
**business** - 29:20
**BY** [6] - 1:18, 1:22,
  2:3, 2:8, 2:12, 2:17

**C**

**calendar** [1] - 37:7
**careful** [1] - 9:6
**CARNAHAN** [1] - 2:11
**carrier** [2] - 10:5,
  28:21
**carriers** [3] - 20:5,
  28:19, 28:21
**case** [47] - 6:18, 6:21,
  10:10, 11:9, 11:16,
  11:19, 12:1, 12:4,
  12:5, 12:13, 12:15,
  12:20, 12:21, 12:24,

13:4, 13:7, 15:5,
  15:22, 15:23, 16:10,
  16:11, 16:18, 17:20,
  17:25, 18:1, 18:25,
  19:4, 19:14, 20:16,
  22:1, 22:21, 22:22,
  23:16, 24:25, 25:15,
  25:17, 26:8, 27:19,
  31:9, 31:10, 32:4,
  32:7, 33:8, 33:9
**CASES** [1] - 1:9
**cases** [3] - 11:8,
  15:24, 18:1
**Cathy** [2] - 38:10,
  38:20
**Cathy_Pepper@laed**
  **.uscourts.gov** [1] -
  38:22
**caused** [1] - 12:6
**CCR** [1] - 38:20
**central** [1] - 26:16
**certain** [5] - 6:20,
  14:4, 14:17, 15:7,
  26:20
**certainly** [6] - 8:7,
  10:7, 15:17, 23:4,
  23:12, 28:6
**CERTIFICATE** [1] -
  38:8
**Certified** [3] - 38:10,
  38:11, 38:20
**certify** [1] - 38:14
**chair** [3] - 24:16,
  25:22, 25:23
**CHAMBERS** [1] - 5:4
**change** [2] - 19:19,
  27:17
**character** [1] - 36:7
**characterization** [1] -
  22:15
**check** [2] - 5:8, 37:6
**Chinese** [2] - 26:17,
  35:5
**CHINESE** [1] - 1:4
**CHINESE-**
**MANUFACTURED**
  [1] - 1:4
**choose** [1] - 26:14
**Circuit** [4] - 10:11,
  11:18, 15:17, 15:23
**circumstances** [2] -
  12:19, 13:4
**cited** [3] - 12:16,
  15:22, 17:24
**CIVIL** [1] - 1:6
**claim** [19] - 7:3, 7:4,
  7:24, 8:22, 10:14,
  11:1, 11:2, 15:13,
  16:12, 18:13, 22:11,
  27:4, 28:21, 32:18,

33:7, 33:24, 34:2,
  35:22
**claimants** [2] - 8:21,
  14:16
**claims** [39] - 6:22,
  6:24, 6:25, 7:5, 7:6,
  7:7, 7:9, 7:18, 7:19,
  7:20, 8:16, 8:23, 9:1,
  9:2, 9:13, 13:17,
  13:23, 15:2, 15:16,
  22:18, 23:25, 26:11,
  28:11, 31:1, 31:24,
  32:1, 32:3, 32:15,
  32:16, 32:17, 32:22,
  33:2, 33:3, 34:8,
  35:5, 35:6, 35:18,
  35:20
**clarification** [1] -
  35:16
**clarify** [2] - 13:20,
  23:25
**class** [2] - 6:8, 9:23
**clear** [1] - 15:24
**clearly** [2] - 35:19,
  36:16
**client** [1] - 36:14
**closer** [2] - 19:2, 37:3
**codefendants** [1] -
  22:24
**COE** [1] - 2:7
**coming** [2] - 9:20,
  20:10
**commenced** [1] - 6:3
**comments** [3] - 6:1,
  35:15, 37:8
**COMMITTEE** [1] - 1:17
**common** [2] - 8:12,
  28:9
**communications** [1] -
  36:14
**Company** [1] - 11:19
**COMPANY** [2] - 2:7,
  2:16
**company** [1] - 11:23
**comparative** [1] - 29:9
**complete** [1] - 28:12
**complicated** [1] - 23:7
**concern** [3] - 9:12,
  29:20, 34:6
**concerned** [1] - 12:5
**concluded** [1] - 38:3
**condescending** [1] -
  14:18
**condition** [1] - 20:13
**conditional** [1] - 6:10
**conditioned** [1] - 27:2
**conduct** [1] - 26:7,
  33:12
**confer** [1] - 34:10,
  37:10

**conference** [3] - 7:16,
  36:22, 37:1
**consensual** [1] -
  22:18
**consent** [1] - 11:20
**consenting** [2] -
  25:11, 25:12
**considered** [1] - 29:5
**considering** [1] - 6:14
**consistent** [3] - 24:5,
  32:25
**consuming** [1] - 31:12
**context** [2] - 11:13,
  11:14
**contingent** [1] - 6:5
**CONTINUED** [1] - 2:1
**contracts** [1] - 32:20
**contribution** [1] -
  27:11
**controlling** [1] - 10:9
**controls** [1] - 27:7
**Convention** [2] - 25:9,
  26:17
**convinced** [1] - 19:7
**copy** [3] - 19:18, 27:3
**corporate** [2] - 25:6,
  35:2
**corporation** [1] -
  14:16
**correct** [4] - 19:24,
  25:13, 34:23, 38:14
**COTLAR** [1] - 1:17
**counsel** [5] - 11:15,
  14:8, 14:17, 14:18,
  36:15
**couple** [5] - 8:4,
  18:17, 21:16, 23:5,
  35:15
**course** [3] - 8:20,
  22:21, 26:19
**COURT** [32] - 1:1, 5:7,
  5:13, 5:22, 8:14,
  8:19, 8:25, 9:5, 9:10,
  9:18, 10:22, 12:21,
  12:25, 14:25, 15:18,
  15:21, 18:13, 18:20,
  20:24, 25:21, 28:15,
  29:23, 30:19, 34:24,
  35:23, 36:1, 36:16,
  36:20, 37:2, 37:11,
  37:19, 37:25
**Court** [59] - 6:18, 8:5,
  8:9, 8:15, 8:17, 9:12,
  9:16, 11:16, 11:18,
  11:20, 12:15, 12:17,
  13:15, 16:3, 16:16,
  16:17, 16:21, 16:22,
  16:24, 16:25, 17:14,
  17:17, 17:18, 17:19,
  18:3, 18:7, 19:12,

19:13, 20:19, 21:3,
  21:8, 21:9, 22:3,
  22:13, 22:19, 24:13,
  25:16, 26:24, 26:25,
  27:1, 27:6, 27:17,
  27:19, 27:23, 27:25,
  28:6, 30:12, 30:15,
  30:16, 30:24, 31:8,
  31:12, 35:15, 36:23,
  38:11, 38:12, 38:13,
  38:21, 38:22
**court** [4] - 6:9, 17:8,
  18:3, 27:13
**Court's** [3] - 9:12,
  13:2, 28:5
**Court-approval** [1] -
  30:24
**COURT.....................**
  ......................... [6] -
  3:5, 3:7, 3:23, 4:1,
  4:3, 4:5
**courtesy** [1] - 19:18
**courts** [3] - 12:8,
  28:23, 28:24
**COUSINS** [1] - 2:7
**cover** [1] - 30:20
**coverage** [3] - 10:1,
  10:21, 13:24
**create** [1] - 15:12
**criticism** [1] - 25:11
**CRR** [1] - 38:20
**crux** [1] - 16:12

**D**

**daily** [1] - 31:19
**damages** [1] - 26:11
**date** [1] - 24:10
**DAVIS** [8] - 1:18, 5:12,
  12:14, 16:14, 19:3,
  36:21, 37:17, 37:22
**Davis** [3] - 12:14,
  18:17, 18:22
**DAVIS.......................**
  ......................... [4] -
  3:9, 3:14, 4:2, 4:6
**deadlines** [1] - 6:20
**deal** [9] - 6:25, 17:7,
  21:8, 21:10, 21:11,
  21:12, 21:13, 27:18,
  30:25
**dealing** [9] - 6:21,
  10:24, 14:15, 17:15,
  20:10, 22:23, 31:10,
  33:3
**deaths** [1] - 10:24
**decades** [1] - 12:16
**decide** [1] - 34:1
**decided** [4] - 6:17,

6:23, 6:24, 7:5
**decisions** [2] - 32:23, 32:24
**declaratory** [1] - 10:1
**defect** [1] - 30:10
**defective** [3] - 19:7, 26:10, 28:10
**defendant** [1] - 35:8
**defendants** [5] - 5:13, 24:4, 24:6, 31:11
**degree** [1] - 13:5
**delays** [2] - 11:23, 11:24
**demand** [2] - 18:24, 26:14
**demonstrable** [1] - 24:8
**demonstrate** [1] - 22:10
**denied** [1] - 24:2
**dependent** [2] - 6:5, 6:9
**deposition** [2] - 17:17, 19:24
**derivative** [2] - 7:6, 30:2
**described** [1] - 21:3
**despite** [3] - 27:13, 27:14
**destructive** [1] - 31:21
**detail** [2] - 18:5, 19:15
**details** [1] - 8:10
**determination** [2] - 25:25, 33:5
**determine** [1] - 19:10
**determined** [1] - 29:8
**determines** [1] - 30:1
**detriment** [1] - 22:14
**development** [1] - 35:7
**devote** [1] - 23:9
**different** [1] - 23:17
**difficult** [2] - 22:22, 22:25
**direct** [4] - 8:21, 8:23, 9:3, 16:24
**Direct** [4] - 11:21, 14:14, 14:19, 15:11
**direction** [1] - 7:13
**directives** [1] - 17:17
**directly** [1] - 15:13
**disadvantage** [1] - 27:8
**disagree** [4] - 12:23, 15:3, 29:24, 30:3
**disagreement** [2] - 15:1, 18:25
**discover** [2] - 17:20, 17:23
**discoverable** [1] -

33:5
**discovering** [1] - 18:1
**discovery** [17] - 6:2, 7:14, 7:15, 7:22, 8:4, 12:2, 14:9, 15:16, 16:25, 18:4, 19:1, 19:14, 20:15, 33:21, 33:22, 34:1, 35:25
**discuss** [5] - 8:3, 19:15, 28:18, 37:8, 37:17
**discussed** [1] - 31:14
**discussion** [2] - 14:3, 16:3
**discussions** [3] - 8:10, 13:6, 14:20
**dismiss** [3] - 33:23, 33:24, 33:25
**dismissal** [1] - 10:19
**dismissed** [2] - 10:12, 31:25
**dispute** [1] - 18:4
**disruptive** [1] - 31:21
**distraction** [1] - 31:20
**distributors** [1] - 6:6
**DISTRICT** [3] - 1:1, 1:2, 1:12
**District** [2] - 38:13, 38:22
**DOCKET** [1] - 1:6
**document** [5] - 17:4, 17:6, 17:10, 24:2, 36:25
**DOCUMENT** [1] - 1:8
**documents** [2] - 17:1, 36:24
**dollars** [2] - 10:23, 11:6
**done** [6] - 17:25, 19:23, 21:8, 21:17, 23:2, 27:18
**doubt** [1] - 14:12
**down** [2] - 5:24, 20:20
**downstream** [2] - 6:6, 6:13
**drywall** [3] - 19:6, 35:4, 35:5
**DRYWALL** [1] - 1:5
**ducks** [1] - 31:8
**due** [3] - 14:7, 20:12, 32:2
**Duplantier** [4] - 5:20, 11:12, 28:16, 30:11
**DUPLANTIER** [4] - 2:17, 5:20, 11:12, 28:16
**Duplantier's** [1] - 29:25
**DUPLANTIER............
............................ [2]**

- 3:8, 3:21
**during** [1] - 15:7
**duty** [1] - 32:19

# E

**e-mail** [1] - 37:22
**early** [1] - 30:23
**Eastern** [1] - 38:13
**EASTERN** [1] - 1:2
**eat** [3] - 32:9, 32:10, 32:11
**effort** [1] - 27:21
**efforts** [1] - 23:9
**eight** [2] - 14:1, 15:6
**either** [2] - 22:2, 34:17
**ELDON** [1] - 1:12
**elephant** [3] - 32:9, 32:10, 32:11
**emphasize** [1] - 31:7
**empty** [3] - 24:16, 25:22, 25:23
**enacting** [1] - 22:19
**end** [1] - 14:17
**energy** [1] - 31:18
**enforce** [1] - 11:19
**enforced** [1] - 23:18
**engaged** [2] - 13:8, 29:13
**England** [4] - 10:11, 11:19, 12:12, 15:22
**entered** [5] - 8:8, 23:1, 29:14, 29:20, 32:21
**entire** [2] - 12:8, 25:14
**ENTITIES** [1] - 2:3
**entities** [6] - 6:13, 25:7, 26:15, 31:6, 31:24, 32:12
**entitled** [9] - 10:11, 17:20, 17:23, 25:25, 33:20, 35:24, 36:13, 36:17, 38:16
**equally** [1] - 23:18
**ERIC** [1] - 2:13
**especially** [1] - 19:5
**ESQUIRE** [10] - 1:18, 1:18, 1:22, 2:3, 2:4, 2:8, 2:8, 2:12, 2:13, 2:17
**essential** [1] - 27:11
**estimate** [1] - 15:5
**etcetera** [1] - 6:6
**evaluate** [2] - 11:1, 14:5
**evaluated** [1] - 11:10, 13:4
**evaluation** [1] - 30:22
**eventually** [2] - 6:3, 9:11

**evidence** [2] - 30:13, 33:11
**exactly** [2] - 11:24, 26:14
**example** [3] - 10:22, 17:7, 17:14
**exceed** [1] - 19:14
**exceeded** [1] - 13:23
**except** [1] - 12:19
**exceptions** [2] - 11:21, 11:22
**excess** [14] - 6:7, 6:16, 10:5, 10:14, 10:20, 10:23, 10:24, 11:8, 12:11, 13:3, 16:1, 16:5, 16:9, 28:21
**exhausted** [2] - 10:6, 11:8
**exhaustion** [1] - 10:20
**exist** [1] - 33:16
**expand** [1] - 15:19
**expect** [1] - 22:1
**explain** [1] - 29:19
**exposed** [1] - 29:9
**exposure** [3] - 14:5, 16:9, 29:18
**expressed** [1] - 21:22
**extensive** [2] - 6:2, 18:5
**extent** [4] - 6:5, 13:8, 13:9, 30:6

# F

**fact** [8] - 10:12, 19:18, 22:9, 24:23, 26:2, 29:4, 29:16, 30:7
**facts** [2] - 11:4, 11:9
**factual** [1] - 10:13
**factually** [1] - 11:8
**fair** [1] - 22:15
**faith** [32] - 7:12, 9:13, 9:14, 9:25, 10:3, 10:13, 10:14, 10:18, 13:17, 14:9, 14:13, 15:12, 16:2, 16:6, 16:12, 20:8, 20:14, 20:15, 20:21, 21:10, 29:5, 29:8, 30:1, 30:8, 30:14, 33:7, 33:11, 33:18, 34:3
**FALLON** [1] - 1:12
**Fallon** [1] - 5:7
**far** [4] - 8:16, 12:4, 13:23, 30:17
**fashion** [1] - 28:2
**fault** [4] - 24:17, 24:24, 29:9, 29:11
**favor** [2] - 22:17, 23:1

**favoring** [2] - 22:13, 22:14
**federal** [3] - 14:11, 27:4, 28:24
**fees** [1] - 7:12
**ferret** [1] - 32:17
**few** [1] - 15:25
**Fifth** [4] - 10:11, 11:18, 15:17, 15:23
**file** [4] - 19:21, 19:22, 30:7, 33:24
**filed** [2] - 9:23, 13:11
**final** [1] - 6:11
**fine** [3] - 16:3, 34:12, 37:7
**finish** [1] - 19:2
**finished** [1] - 19:3
**first** [6] - 5:8, 6:21, 17:2, 30:20, 36:4, 36:8
**FISHBEIN** [1] - 1:22
**flesh** [1] - 35:12
**fleshed** [1] - 24:10
**flow** [1] - 19:8
**focus** [2] - 7:7, 36:9
**focused** [1] - 7:3
**folks** [2] - 5:22, 37:25
**followed** [1] - 16:21
**footnote** [1] - 12:17
**FOR** [4] - 1:17, 2:3, 2:7, 2:16
**foregoing** [1] - 38:14
**form** [2] - 17:12, 31:24
**formal** [1] - 26:14
**forth** [1] - 16:22
**forward** [16] - 13:10, 13:16, 15:4, 16:9, 17:22, 17:23, 18:11, 22:10, 26:21, 28:1, 28:7, 30:6, 30:16, 30:17, 33:21, 36:24
**frankly** [3] - 18:10, 34:7, 34:20
**front** [1] - 22:7
**fruition** [1] - 23:10
**full** [2] - 8:6, 11:8
**fully** [1] - 14:17
**future** [1] - 27:5

# G

**GALLOWAY** [1] - 2:16
**game** [1] - 18:23
**gander** [2] - 7:18, 23:21
**Gasquet** [1] - 12:9
**general** [2] - 6:1, 27:2
**German** [2] - 25:6, 26:15

**given** [1] - 28:6
**Glickstein** [4] - 5:18, 21:14, 26:13, 27:9
**GLICKSTEIN** [3] - 2:3, 5:18, 21:14
**GLICKSTEIN.............**
**..........................** [1]
- 3:19
**good-faith** [2] - 29:5, 30:1, 30:8
**goose** [2] - 7:17, 23:21
**goose-and-gander** [1]
- 23:21
**granting** [2] - 25:24, 27:1
**Grass** [1] - 5:18
**GRASS** [1] - 2:4
**great** [1] - 11:15
**greet** [1] - 37:6
**ground** [2] - 8:12, 19:2
**guess** [1] - 7:25
**guidelines** [1] - 18:2

## H

**habit** [1] - 14:8
**Hague** [2] - 25:8, 26:16
**handled** [2] - 33:1, 35:6
**handling** [1] - 35:3
**happy** [1] - 36:18
**hard** [1] - 31:12
**hear** [5] - 7:25, 9:16, 10:22, 11:10, 28:17
**heard** [4] - 6:15, 22:8, 24:23, 35:15
**HEARD** [1] - 1:12
**hearing** [2] - 9:16, 18:18
**hello** [1] - 5:7
**helpful** [3] - 31:22, 34:15, 36:9
**hereby** [1] - 38:13
**Herman** [3] - 13:18, 14:24, 15:15
**HERMAN** [4] - 1:17, 1:18, 13:18
**HERMAN.................**
**..........................** [1] -
3:11
**highlights** [1] - 12:6
**hold** [1] - 36:1
**holds** [1] - 11:17
**homes** [1] - 20:3
**Honor** [35] - 5:12, 5:14, 8:1, 9:20, 12:14, 13:18, 14:23,

15:19, 15:25, 16:14, 17:24, 18:12, 18:16, 19:25, 20:22, 21:14, 21:22, 21:25, 22:6, 22:21, 23:1, 23:4, 23:11, 23:18, 23:20, 24:14, 24:18, 25:19, 29:24, 34:23, 35:14, 36:11, 36:21, 37:5, 38:2
**HONORABLE** [1] - 1:12
**hope** [1] - 36:25
**hopeful** [1] - 36:24
**hourly** [1] - 31:19
**HOUSTON** [1] - 2:9
**hundred** [1] - 11:6
**hundreds** [1] - 20:16

## I

**ice** [2] - 7:1, 7:2
**identify** [1] - 36:19
**implemented** [1] -
28:19
**implications** [1] -
14:19
**important** [3] - 12:17, 15:15, 18:1
**IN** [2] - 1:4, 5:4
**inactions** [1] - 7:11
**inaudible** [4] - 8:11, 18:18, 18:19, 20:13
**incentives** [1] - 22:20
**included** [1] - 28:3
**includes** [1] - 6:4
**including** [1] - 11:1, 28:4
**incorrect** [1] - 29:17
**indicate** [1] - 14:20
**indicated** [1] - 35:17
**individuals** [3] - 31:4, 31:19, 32:12
**INEX** [39] - 6:16, 7:6, 7:7, 7:24, 8:16, 8:18, 9:2, 10:2, 10:17, 10:21, 16:8, 20:4, 20:11, 20:12, 21:2, 21:12, 23:20, 23:24, 23:25, 28:3, 28:9, 30:1, 30:9, 30:10, 30:13, 30:17, 32:18, 32:20, 33:1, 33:2, 33:3, 33:6, 33:16, 34:16, 35:18, 35:22, 36:3, 36:6, 36:8
**information** [8] - 14:4, 14:6, 15:7, 15:8, 16:16, 17:21, 35:2, 35:9

**inquiries** [1] - 35:18, 35:22
**insist** [1] - 25:13
**installers** [1] - 6:6
**instances** [1] - 26:20
**INSURANCE** [1] - 2:7
**Insurance** [3] - 10:11, 11:19, 12:12
**insurance** [6] - 11:23, 17:13, 18:1, 18:4, 20:5, 32:20
**insured** [9] - 7:20, 10:15, 11:3, 11:5, 11:7, 16:5, 26:3, 28:20, 35:20
**insured's** [1] - 26:7
**insurer** [4] - 6:16, 13:3, 14:15, 15:14
**insurers** [4] - 6:7, 6:14, 13:21, 31:14
**integral** [1] - 20:6
**intended** [1] - 28:4
**intention** [2] - 28:5, 28:6
**Interior/Exterior** [10] -
5:21, 11:13, 12:5, 13:23, 28:17, 28:20, 29:6, 29:9, 29:13, 29:20
**INTERIOR/
EXTERIOR** [1] - 2:16
**interpretation** [1] -
12:24
**intransigents** [1] -
14:13
**invalid** [1] - 16:6
**invited** [1] - 13:21
**involve** [1] - 11:1, 28:4
**involved** [7] - 13:6, 18:19, 19:9, 20:16, 28:11, 31:4, 31:20
**involving** [5] - 21:2, 26:11, 28:1, 28:7, 35:5
**ironic** [1] - 17:21
**IRONS** [1] - 2:7
**issue** [11] - 16:6, 17:7, 20:10, 20:20, 25:10, 26:13, 27:7, 28:25, 30:15, 30:19, 30:20
**issued** [7] - 7:13, 10:1, 16:23, 16:25, 17:4, 17:17, 19:17
**issues** [3] - 12:2, 31:14, 37:18
**item** [1] - 24:2
**items** [3] - 17:6, 18:6, 33:5

## J

**JOHNSON** [1] - 2:16
**JR** [1] - 2:17
**judge** [1] - 28:16
**Judge** [4] - 5:7, 5:21, 9:22, 37:9
**JUDGE** [1] - 1:12
**Judge's** [1] - 37:8
**judgment** [13] - 10:16, 10:20, 10:25, 11:5, 11:20, 13:16, 16:1, 16:5, 26:1, 30:7, 30:13, 31:5, 32:6
**July** [1] - 24:1
**juncture** [1] - 14:12

## K

**KATZ** [1] - 1:17
**KAYE** [1] - 2:3
**keep** [1] - 18:17
**keeping** [1] - 24:11
**Kerry** [1] - 13:21
**KEVIN** [1] - 2:8
**Kevin** [9] - 5:16, 8:2, 12:23, 14:23, 18:16, 20:22, 25:19, 29:24, 37:7
**kilter** [1] - 36:7
**kind** [2] - 15:12, 34:10
**Knauf** [29] - 5:19, 6:3, 7:19, 7:24, 13:11, 17:22, 19:5, 20:4, 20:13, 21:12, 21:15, 21:19, 23:21, 23:25, 24:4, 24:6, 24:12, 24:17, 25:2, 25:11, 25:18, 26:6, 26:15, 28:11, 28:14, 29:13, 30:9, 30:18
**KNAUF** [1] - 2:3
**Knauf's** [3] - 24:24, 24:25, 26:1
**knowledge** [1] - 30:10
**Knowles** [1] - 17:25
**knows** [2] - 16:17, 18:3
**KPT** [6] - 25:4, 25:12, 26:14, 26:25, 27:7, 29:7
**KPT's** [2] - 25:12, 27:3

## L

**LA** [3] - 1:19, 2:14, 2:19
**laborious** [2] - 31:12,

31:17
**lack** [3] - 10:20, 25:23
**language** [1] - 36:12
**large** [2] - 31:15
**last** [3] - 14:1, 25:1, 25:22
**law** [10] - 22:17, 25:9, 28:8, 28:24, 29:3, 29:4, 29:6, 29:11, 29:16, 29:25
**lawsuit** [1] - 9:2
**lawyer** [1] - 20:9
**lawyers** [4] - 16:9, 20:17, 27:3, 29:19
**least** [5] - 6:5, 10:25, 19:6, 31:10, 33:20
**leave** [1] - 25:24
**legal** [1] - 20:19
**Lennie** [7] - 5:10, 5:11, 13:19, 16:14, 35:10, 37:6, 37:20
**Lenny** [1] - 37:2
**Leonard** [1] - 12:14
**LEONARD** [1] - 1:18
**level** [1] - 14:13
**levied** [1] - 16:1
**Levin** [2] - 5:10, 19:25
**LEVIN** [6] - 1:22, 1:22, 5:10, 9:20, 19:25, 21:12
**LEVIN.......................**
**.........................** [2] -
3:16, 3:18
**liability** [9] - 15:14, 19:7, 19:11, 26:4, 29:2, 29:7, 29:12, 30:2, 30:3
**LIABILITY** [1] - 1:5
**liable** [1] - 26:2
**lies** [1] - 26:9
**lift** [9] - 7:23, 11:14, 13:10, 17:22, 18:14, 21:18, 24:8, 27:10, 27:25
**lifted** [2] - 12:3, 25:16
**lifting** [1] - 28:7
**limited** [3] - 12:19, 30:2, 30:3
**line** [3] - 5:8, 5:11, 6:15
**litigants** [2] - 20:19, 22:1
**litigate** [4] - 19:4, 24:16, 24:24, 28:13
**litigation** [18] - 12:7, 12:17, 13:10, 15:4, 19:9, 22:2, 22:7, 23:14, 23:23, 26:21, 27:20, 27:22, 28:1, 28:7, 28:22, 29:1,

30:15, 31:22
**LITIGATION** [1] - 1:5
**living** [1] - 32:7
**LOBMAN** [1] - 2:11
**local** [1] - 14:10
**Look** [1] - 17:13
**look** [8] - 9:22, 27:10, 33:13, 34:25, 36:1, 36:3, 36:7, 37:4
**looking** [2] - 13:4, 32:6
**LOUISIANA** [2] - 1:2, 1:7
**Louisiana** [18] - 8:21, 12:8, 14:14, 14:16, 24:15, 24:19, 28:8, 28:23, 28:24, 29:3, 29:4, 29:6, 29:11, 29:25, 35:8, 38:12, 38:13

## M

**Magistrate** [1] - 17:25
**mail** [1] - 37:22
**main** [1] - 13:19
**maintain** [1] - 32:12
**majority** [1] - 31:15
**manuals** [1] - 18:2
**MANUFACTURED** [1] - 1:4
**manufactured** [1] - 19:6
**manufacturer** [7] - 25:4, 25:7, 26:10, 28:10, 29:1, 30:4, 30:18
**March** [2] - 16:23, 17:16
**marketing** [1] - 35:7
**MARTIN** [2] - 2:8, 5:17
**Martin** [2] - 5:17, 9:7
**mass** [1] - 23:17
**matter** [3] - 11:2, 20:3, 38:16
**MDL** [2] - 6:1, 17:3
**mean** [3] - 8:8, 31:23, 34:25
**meaningful** [1] - 35:13
**meaningless** [1] - 33:18
**means** [2] - 18:19, 18:23
**meanwhile** [1] - 11:7
**mechanism** [2] - 15:13, 28:18
**meet** [6] - 19:19, 34:10, 36:21, 37:2, 37:6, 37:9

**meeting** [2] - 13:20, 14:2
**meetings** [1] - 13:25
**mention** [1] - 5:23
**mentioned** [2] - 11:9, 16:20
**Merit** [2] - 38:11, 38:21
**merits** [3] - 8:3, 17:20, 30:14
**met** [2] - 15:6, 31:13
**method** [1] - 35:5
**might** [2] - 14:10, 35:20
**Miller's** [1] - 13:21
**million** [1] - 10:23
**mind** [3] - 23:3, 23:4, 34:4
**mischaracterization** [1] - 22:12
**mischaracterizes** [2] - 21:20, 21:21
**misinformed** [1] - 29:3
**moment** [1] - 15:20
**moments** [1] - 15:25
**Monday** [4] - 36:21, 37:6, 37:7, 37:18
**money** [2] - 10:6, 21:5
**monies** [1] - 20:12
**monitoring** [1] - 13:6
**months** [1] - 24:13
**moral** [1] - 20:19
**moreover** [1] - 28:25
**morning** [1] - 5:7
**most** [5] - 6:13, 15:15, 22:22, 25:10, 31:13
**motion** [9] - 7:23, 8:3, 11:14, 11:15, 13:19, 24:2, 27:10, 30:7, 30:13
**move** [5] - 7:13, 17:23, 18:11, 34:4, 36:23
**moved** [2] - 13:10, 23:25
**moving** [2] - 6:11, 6:15
**MR** [71] - 3:6, 3:8, 3:9, 3:10, 3:11, 3:12, 3:13, 3:14, 3:15, 3:16, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:24, 3:25, 4:2, 4:4, 4:6, 4:7, 5:10, 5:12, 5:14, 5:16, 5:17, 5:18, 5:20, 8:1, 8:15, 8:20, 9:1, 9:7, 9:11, 9:20, 9:22, 11:12, 12:14, 12:23, 13:1, 13:18, 14:23, 15:1, 15:19, 15:22,

16:14, 18:16, 18:22, 19:3, 19:4, 19:25, 20:22, 20:25, 21:12, 21:14, 25:19, 25:22, 28:16, 29:24, 35:14, 35:24, 36:11, 36:18, 36:21, 37:5, 37:16, 37:17, 37:20, 37:22, 37:24

## N

**NADER** [1] - 2:12
**name** [1] - 5:23
**named** [1] - 9:24
**namely** [1] - 25:4
**near** [1] - 27:5
**nearly** [1] - 12:16
**necessary** [2] - 26:11, 30:21
**need** [9] - 18:5, 20:22, 22:9, 24:8, 26:7, 30:6, 34:8, 35:9, 37:11
**needing** [1] - 29:1
**needs** [2] - 15:4, 22:9
**negotiate** [1] - 11:2
**negotiation** [1] - 11:1
**negotiations** [5] - 6:2, 21:6, 29:14, 33:14, 33:16
**never** [4] - 12:7, 15:16, 16:8, 28:4
**New** [4] - 10:11, 11:19, 12:12, 15:22
**new** [1] - 11:16
**NEW** [5] - 1:7, 1:19, 2:5, 2:14, 2:19
**next** [2] - 17:16, 34:5
**Nizialek** [1] - 5:20
**NO** [1] - 1:6
**none** [1] - 16:11
**nonLouisiana** [1] - 8:22
**nonsettling** [2] - 22:14, 28:4
**NORTH** [1] - 2:7
**North** [76] - 5:15, 5:16, 5:17, 6:16, 7:4, 7:8, 7:10, 7:14, 7:15, 7:17, 7:18, 7:22, 7:23, 8:2, 8:22, 8:23, 9:24, 11:15, 11:17, 12:6, 13:22, 14:1, 14:4, 14:5, 14:7, 14:8, 14:13, 16:17, 16:19, 17:8, 17:12, 17:21, 18:8, 18:14, 20:6, 20:8, 21:18,

21:20, 21:22, 23:19, 23:22, 24:7, 24:11, 24:15, 24:19, 24:24, 25:2, 25:10, 25:17, 25:19, 27:11, 28:7, 29:18, 30:16, 32:16, 32:18, 32:21, 32:23, 33:1, 33:15, 33:17, 33:18, 34:5, 34:6, 34:18, 34:21, 35:1, 35:4, 35:6, 35:8, 35:11, 35:20, 36:14
**noted** [1] - 24:18
**nothing** [3] - 22:5, 22:18, 23:16
**notice** [6] - 6:10, 17:18, 19:17, 19:21, 30:24, 37:9
**nowhere** [1] - 12:12
**Number** [4] - 8:7, 8:15, 15:11, 19:12
**number** [2] - 6:1, 24:2
**numbered** [1] - 38:16
**NY** [1] - 2:5

## O

**O'KEEFE** [1] - 1:19
**oath** [1] - 30:9
**object** [3] - 13:13, 34:12, 37:13
**objected** [1] - 7:15
**objecting** [1] - 37:14
**objection** [7] - 6:11, 13:12, 16:12, 34:25, 35:4, 35:6, 37:12
**objections** [10] - 7:22, 8:4, 17:5, 18:15, 19:21, 19:22, 20:14, 34:5, 37:12
**obligation** [2] - 10:7, 20:18
**OF** [2] - 1:2, 1:11
**office** [2] - 13:21, 37:22
**Official** [2] - 38:12, 38:21
**once** [1] - 28:14
**ONE** [2] - 2:9, 2:18
**one** [18] - 7:16, 11:22, 13:3, 14:1, 15:3, 17:5, 18:6, 21:1, 23:5, 24:9, 25:3, 25:15, 28:12, 31:13, 31:14, 32:9, 32:11, 36:6
**one-year** [1] - 21:1
**ongoing** [1] - 31:18
**opening** [1] - 24:22

**opinion** [3] - 11:25, 12:18, 22:10
**opportunities** [2] - 22:20, 33:16
**opportunity** [1] - 27:25
**opposite** [1] - 11:17
**ORAL** [1] - 1:11
**orally** [1] - 15:7
**order** [7] - 16:22, 17:1, 22:10, 23:6, 24:1, 28:8, 31:8
**ordered** [3] - 16:25, 19:13
**orders** [1] - 16:21
**ORLEANS** [4] - 1:7, 1:19, 2:14, 2:19
**otherwise** [2] - 23:15, 32:10
**ought** [1] - 36:2
**outside** [2] - 18:10, 18:23
**owe** [3] - 26:5, 26:6, 26:7

## P

**PA** [1] - 1:23
**package** [2] - 22:25, 37:3
**PAGE** [1] - 3:3
**page** [2] - 25:24, 27:10
**painted** [2] - 15:24, 15:25
**PARK** [1] - 2:4
**part** [8] - 8:17, 20:6, 21:6, 21:9, 29:17, 31:1, 31:2, 36:11
**participate** [8] - 6:17, 6:23, 6:24, 7:5, 7:8, 8:9, 13:13, 32:24
**participated** [3] - 6:15, 31:13, 32:13
**participating** [3] - 6:14, 31:25, 32:13
**participation** [2] - 6:5, 31:11
**particular** [2] - 7:20, 12:7
**particularly** [3] - 14:14, 31:9, 33:13
**parties** [12] - 6:11, 22:3, 22:13, 22:14, 22:15, 22:20, 23:2, 23:8, 24:24, 25:5, 26:8, 28:5, 28:18, 28:22, 31:1, 34:9
**parties'** [1] - 21:21
**party** [17] - 9:3, 9:15,

19:5, 21:7, 23:13, 23:15, 25:18, 26:11, 27:4, 27:24, 28:1, 28:9, 28:11, 28:22, 29:1, 30:7

**pass** [4] - 26:4, 29:2, 29:7, 29:12

**pass-through** [2] - 26:4, 29:2

**past** [2] - 32:25, 33:3

**pay** [3] - 18:24, 21:4, 21:5

**penalties** [2] - 7:12, 34:3

**people** [1] - 21:9

**Pepper** [3] - 38:10, 38:19, 38:20

**percent** [1] - 20:3

**percentage** [2] - 26:1, 29:11

**perhaps** [1] - 23:3

**permits** [1] - 24:15

**person** [1] - 34:21

**personal** [1] - 11:25

**perspective** [1] - 23:12

**petition** [1] - 27:3

**Phil** [1] - 5:20

**PHILADELPHIA** [1] - 1:23

**phone** [2] - 5:12, 9:21

**pick** [1] - 9:8

**piecemeal** [1] - 28:2

**pierce** [1] - 25:6

**place** [3] - 24:6, 24:11, 29:22

**plain** [1] - 36:12

**plaintiff** [2] - 16:4, 34:13

**plaintiffs** [10] - 5:9, 8:23, 9:13, 15:24, 22:23, 24:17, 29:10, 34:15, 34:17, 36:5

**PLAINTIFFS'** [1] - 1:17

**plan** [1] - 27:12

**players** [1] - 36:19

**playing** [1] - 20:9

**pleading** [1] - 14:9

**pleadings** [5] - 9:14, 9:23, 19:14, 27:13, 33:23

**pled** [4] - 15:16, 16:7, 16:13

**point** [23] - 7:3, 7:10, 8:13, 9:11, 9:22, 10:5, 10:9, 12:15, 15:15, 19:7, 20:9, 20:20, 22:5, 24:3, 25:1, 27:15, 27:24,

29:11, 30:5, 30:23, 36:2, 36:10

**pointed** [2] - 24:14, 24:21

**pointing** [2] - 12:3, 20:25

**points** [4] - 8:5, 18:17, 21:16, 25:22

**policies** [5] - 10:1, 10:6, 32:25, 33:4, 33:15

**policy** [5] - 11:20, 17:13, 17:23, 22:17, 35:8

**position** [7] - 8:21, 9:2, 12:1, 17:9, 21:21, 34:7, 36:5

**positive** [1] - 12:4

**possibly** [1] - 33:19

**posted** [1] - 6:19

**potential** [4] - 32:19, 33:7, 33:24, 34:2

**potentially** [3] - 8:22, 11:2, 33:12

**POYDRAS** [2] - 2:13, 2:18

**precedent** [1] - 12:19

**pregnant** [1] - 27:6

**prejudice** [2] - 24:11, 32:4

**prejudiced** [1] - 24:20

**preliminaries** [1] - 21:17

**prepared** [2] - 36:21, 37:17

**present** [2] - 25:15, 33:4

**presented** [1] - 13:22

**presently** [1] - 31:2

**press** [1] - 27:14

**presumptuous** [1] - 23:3

**prevent** [1] - 23:24

**primarily** [2] - 5:11, 7:5

**primary** [6] - 6:7, 10:6, 10:23, 12:10, 28:19, 28:20

**principal** [1] - 24:5

**privileged** [1] - 36:16

**problem** [2] - 20:25, 28:1, 29:17

**problematic** [1] - 7:11

**problems** [1] - 12:6

**procedural** [2] - 15:13, 28:18

**procedurally** [1] - 25:13

**procedure** [1] - 33:2

**procedures** [1] - 22:19

**proceed** [9] - 7:20, 7:24, 12:11, 22:7, 25:2, 25:17, 28:22, 32:6

**proceeded** [1] - 32:8

**proceeding** [1] - 28:12

**PROCEEDINGS** [2] - 1:11, 5:1

**proceedings** [4] - 31:3, 31:6, 38:3, 38:16

**process** [9] - 6:9, 12:8, 26:18, 29:15, 31:12, 31:17, 31:20, 31:21, 32:2

**produced** [2] - 17:2, 17:4, 17:10

**product** [6] - 25:8, 26:3, 26:10, 26:12, 28:10

**production** [4] - 16:24, 17:3, 17:11, 37:10

**PRODUCTS** [1] - 1:5

**profile** [1] - 17:12

**prolix** [1] - 20:2

**promptly** [1] - 17:7

**proper** [1] - 27:6

**proposed** [4] - 6:19, 10:17, 27:12, 30:23

**prosecution** [1] - 23:24

**prove** [1] - 24:18

**provide** [2] - 14:4, 22:19

**provided** [3] - 14:5, 15:7, 22:3

**provisions** [1] - 11:20

**PSC** [12] - 6:3, 7:4, 7:22, 8:16, 9:13, 26:20, 28:13, 32:17, 33:6, 33:15, 33:17, 35:18

**PSC's** [2] - 7:9, 25:17

**public** [2] - 9:21, 22:17

**published** [1] - 12:18

**punished** [1] - 21:23

**pursuing** [1] - 16:12

**put** [4] - 7:1, 7:2, 21:11, 23:7

**putting** [1] - 22:24


**Q**

**questions** [2] - 13:3, 34:8

**quickly** [2] - 20:23, 26:16

**quite** [2] - 18:10, 27:17


**R**

**Ragas** [2] - 15:23, 16:3

**raise** [1] - 30:12

**rate** [1] - 14:18

**rather** [1] - 6:2

**RE** [1] - 1:4

**reached** [1] - 6:3

**reaching** [1] - 27:24

**read** [1] - 23:3

**reading** [1] - 29:25

**ready** [1] - 18:11

**real** [1] - 20:25

**realize** [1] - 27:19

**realized** [1] - 20:18

**really** [5] - 12:20, 16:6, 18:4, 24:9, 27:9

**Realtime** [2] - 38:10, 38:20

**reason** [8] - 15:3, 23:12, 23:15, 25:16, 27:15, 29:13, 29:14, 37:14

**reasonable** [2] - 22:3, 33:4

**reasonings** [1] - 15:3

**reasons** [2] - 7:16, 23:5

**recently** [1] - 31:13

**recitation** [1] - 29:16

**recognize** [1] - 6:22

**recognizes** [1] - 23:11

**record** [1] - 38:15

**recover** [1] - 29:10

**recovery** [1] - 30:4

**refused** [1] - 19:19

**regard** [4] - 12:9, 24:1, 31:3, 32:15

**regarding** [1] - 33:15

**Registered** [1] - 38:10

**registered** [1] - 38:21

**RELATES** [1] - 1:8

**released** [1] - 26:5

**releases** [1] - 27:14

**relief** [4] - 9:15, 10:1, 27:1, 28:12

**remain** [2] - 24:6, 29:21

**reply** [4] - 24:22, 25:24

**report** [2] - 36:23, 37:1

**Reporter** [7] - 38:10, 38:11, 38:12, 38:20, 38:21, 38:21

**REPORTER'S** [1] - 38:8

**quite** [2] - 18:10, 27:17

**representative** [1] - 13:22

**representatives** [3] - 14:1, 30:8, 30:9

**representing** [1] - 30:12

**request** [8] - 16:23, 17:3, 17:6, 17:11, 19:20, 35:9, 36:25, 37:10

**requested** [2] - 14:4, 14:10

**requests** [2] - 19:14, 26:17

**required** [3] - 9:3, 17:1, 25:9

**requirement** [1] - 12:2

**requires** [2] - 28:9

**resolution** [1] - 22:18

**resolve** [4] - 11:2, 20:3, 20:20, 22:4

**resolved** [4] - 11:6, 22:2, 22:5, 32:3

**resources** [1] - 31:19

**respect** [3] - 14:8, 18:1, 18:2

**respite** [1] - 23:14

**respond** [3] - 14:23, 18:17, 20:23

**responded** [1] - 19:19

**responds** [1] - 26:16

**response** [9] - 15:9, 16:24, 17:11, 17:16, 19:22, 24:23, 25:20, 27:10, 28:3

**responses** [2] - 17:1, 37:10

**responsibility** [3] - 26:1, 26:9, 32:20

**responsible** [1] - 7:11

**responsive** [1] - 36:24

**restrict** [1] - 35:22

**restricted** [1] - 36:3

**restriction** [1] - 35:17

**result** [1] - 20:11

**retroactively** [1] - 21:10

**review** [1] - 36:13

**reward** [1] - 28:4

**Richard** [4] - 5:20, 11:12, 28:16, 37:2

**RICHARD** [1] - 2:17

**rights** [2] - 30:3, 32:1

**rises** [1] - 14:13

**RISLEY** [21] - 2:8, 5:16, 8:1, 8:15, 8:20, 9:1, 9:7, 9:11, 9:22, 12:23, 13:1, 14:23, 15:1, 18:16, 18:22, 19:4, 20:22, 20:25,

25:19, 25:22, 29:24
**risley** [1] - 11:13
**Risley** [10] - 5:16, 8:2,
12:23, 14:23, 18:16,
20:22, 22:8, 25:19,
29:2, 29:24
**RISLEY**.....................
....................... [7] -
3:6, 3:10, 3:12, 3:15,
3:17, 3:20, 3:22
**RIVER** [1] - 2:7
**River** [70] - 5:15, 5:16,
5:17, 6:16, 7:4, 7:8,
7:10, 7:14, 7:15,
7:17, 7:18, 7:22,
7:23, 8:2, 8:22, 8:23,
9:24, 11:15, 11:17,
12:6, 13:22, 14:1,
14:4, 14:5, 14:7,
14:13, 16:17, 16:19,
17:12, 17:21, 18:14,
20:6, 20:8, 21:18,
21:20, 21:22, 23:19,
23:22, 24:7, 24:11,
24:15, 24:19, 24:24,
25:2, 25:17, 25:19,
28:7, 29:18, 30:16,
32:16, 32:18, 32:21,
32:23, 33:1, 33:15,
33:17, 33:18, 34:5,
34:6, 34:18, 34:21,
35:1, 35:4, 35:6,
35:8, 35:11, 35:20,
36:14
**River's** [6] - 14:8,
17:8, 17:12, 18:8,
25:10, 27:11
**RIVERWAY** [1] - 2:9
**RMR** [1] - 38:20
**Robert** [1] - 5:18
**ROBERT** [1] - 2:4
**rubber** [1] - 14:21
**Rule** [2] - 11:22, 33:12
**rules** [5] - 14:11,
23:18, 27:4, 35:13
**ruling** [1] - 24:5
**RUSS** [1] - 1:18
**Russ** [2] - 13:18,
16:20

## S

**s/Cathy** [1] - 38:19
**sale** [1] - 35:7
**save** [1] - 11:3
**scenario** [1] - 15:25
**schedule** [1] - 37:21
**scheduling** [2] -
16:22, 17:1

**SCHOLER** [1] - 2:3
**second** [2] - 6:22,
25:1
**secondly** [1] - 23:11
**SEDRAN** [1] - 1:22
**see** [10] - 15:4, 16:10,
27:20, 32:4, 32:16,
32:17, 32:22, 33:21,
33:23, 35:21
**seek** [2] - 7:13, 31:7
**seem** [1] - 24:4
**seller** [3] - 29:5, 29:8,
30:1, 30:8, 30:14
**send** [1] - 19:13
**sending** [1] - 27:2
**sense** [2] - 28:9, 30:24
**sent** [1] - 19:18
**sentiments** [1] - 21:21
**serious** [1] - 33:13
**serve** [2] - 19:20, 27:4
**served** [5] - 25:4, 25:7,
25:8, 25:14, 26:15
**service** [8] - 25:11,
25:12, 25:13, 25:23,
26:13, 26:14, 26:23,
27:6
**set** [5] - 6:20, 16:22,
17:14, 19:24, 20:17
**settle** [2] - 12:10,
22:20, 23:16
**settled** [2] - 23:13,
24:4
**settlement** [44] - 6:4,
6:8, 6:19, 8:8, 8:12,
8:18, 11:23, 11:24,
12:9, 12:10, 13:12,
14:2, 14:3, 14:20,
16:8, 18:24, 20:7,
20:11, 20:12, 20:13,
21:2, 21:3, 21:4,
22:2, 22:4, 22:5,
22:6, 23:7, 23:13,
27:1, 27:12, 27:14,
27:16, 27:24, 28:19,
29:14, 29:15, 29:21,
30:23, 31:2, 31:4,
31:25, 32:13
**settlements** [5] -
10:17, 20:1, 20:2,
23:20, 27:21
**settles** [1] - 23:13
**settling** [3] - 21:23,
22:14, 23:2
**seven** [1] - 10:24
**several** [1] - 15:3
**shape** [1] - 31:23
**SHELL** [1] - 2:18
**shoes** [1] - 14:16
**shortly** [1] - 20:4
**show** [1] - 33:11

**side** [1] - 15:5
**sidelines** [1] - 18:9
**Sidney** [5] - 5:14,
15:19, 35:14, 36:1,
37:2
**SIDNEY** [1] - 2:12
**silent** [2] - 14:7, 21:15
**similar** [1] - 23:22
**simply** [1] - 25:11
**single** [3] - 17:4, 17:5,
17:10
**singled** [1] - 23:19
**sit** [4] - 16:19, 16:20,
18:9, 20:20
**site** [1] - 6:20
**situation** [4] - 10:5,
11:25, 25:5, 36:3
**situations** [1] - 11:10
**SMITH** [1] - 2:3
**sold** [1] - 26:3
**sorry** [2] - 19:3, 37:23
**sort** [1] - 31:9
**Sosebee** [1] - 17:24
**sound** [1] - 36:13
**sounds** [1] - 35:17
**space** [1] - 23:8
**speaker** [1] - 9:8
**SPEAKER** [1] - 34:23
**SPEAKERS** [1] - 3:3
**specific** [1] - 34:18
**specifically** [1] - 11:22
**spent** [1] - 10:7
**SQUARE** [1] - 2:18
**stadium** [3] - 18:10,
18:11, 18:23
**stage** [12] - 6:10, 6:11,
6:12, 6:17, 6:18,
30:24, 30:25, 32:14,
33:18
**stages** [2] - 32:6, 32:8
**standing** [1] - 13:12
**standpoint** [1] - 32:5
**start** [3] - 5:25, 16:25,
28:13
**State** [1] - 38:11
**statement** [2] - 9:12,
28:3
**STATES** [2] - 1:1, 1:12
**states** [1] - 35:21
**States** [2] - 38:12,
38:22
**status** [3] - 30:8,
36:22, 37:1
**statute** [2] - 9:3, 30:17
**Statute** [3] - 14:15,
14:19, 15:11
**statutes** [2] - 14:14,
24:15
**stay** [23] - 7:23, 8:3,

11:14, 12:3, 13:10,
17:22, 18:14, 21:18,
23:23, 23:24, 24:1,
24:6, 24:8, 24:11,
25:16, 27:11, 27:20,
27:25, 28:4, 28:8,
29:21, 31:5, 32:12
**stayed** [1] - 32:3
**stays** [1] - 23:1
**STEERING** [1] - 1:17
**steps** [1] - 14:15
**Steve** [2] - 5:18, 21:14
**STEVEN** [1] - 2:3
**still** [4] - 6:14, 9:19,
21:16, 31:17
**strange** [3] - 19:17,
26:9, 30:11
**streamlined** [1] - 34:9
**STREET** [3] - 1:23,
2:13, 2:18
**stretch** [1] - 14:21
**strikes** [1] - 30:11
**structure** [2] - 32:23,
35:2
**subject** [1] - 10:19
**submitted** [1] - 10:10
**success** [1] - 27:12
**SUITE** [4] - 1:23, 2:9,
2:13, 2:18
**summary** [2] - 30:7,
30:12
**supplement** [1] -
11:24
**SUPPLY** [1] - 2:16
**supports** [1] - 12:1
**supposed** [1] - 25:14
**surprise** [1] - 26:24
**suspect** [1] - 27:5

## T

**table** [2] - 20:10, 24:8
**talks** [1] - 15:8
**terms** [1] - 33:4
**testified** [1] - 30:9
**testify** [1] - 34:22
**THE** [41] - 1:12, 1:17,
2:3, 2:7, 3:5, 3:7,
3:23, 4:1, 4:3, 4:5,
5:7, 5:13, 5:22, 8:14,
8:19, 8:25, 9:5, 9:10,
9:18, 10:22, 12:21,
12:25, 14:25, 15:18,
15:21, 18:13, 18:20,
20:24, 25:21, 28:15,
29:23, 30:19, 34:24,
35:23, 36:1, 36:16,
36:20, 37:2, 37:11,
37:19, 37:25

**themselves** [1] - 11:1
**therefore** [2] - 24:19,
32:11
**they've** [2] - 7:13, 35:6
**thinks** [1] - 22:9
**third** [1] - 9:15
**THIS** [1] - 1:8
**THOMPSON** [1] - 2:7
**thousand** [1] - 11:6
**thousands** [2] - 22:23,
22:24
**thrust** [2] - 7:9, 32:22
**THURSDAY** [2] - 1:7,
5:2
**thwarting** [1] - 21:13
**time-consuming** [1] -
31:12
**timetable** [1] - 27:7
**TO** [1] - 1:8
**today** [2] - 7:21, 24:23
**together** [8] - 20:17,
20:18, 21:11, 22:24,
23:7, 25:3, 25:15,
35:11
**TOMPKINS** [1] - 2:16
**topic** [1] - 35:4
**topics** [2] - 35:19,
36:12
**tort** [1] - 23:17
**total** [1] - 11:3
**totally** [2] - 11:7, 36:6
**toward** [1] - 6:11
**towards** [2] - 17:8
**transcript** [1] - 38:14
**TRANSCRIPT** [1] -
1:11
**traveling** [1] - 37:23
**tremendous** [1] - 23:6
**trials** [1] - 6:2
**tried** [3] - 13:9, 13:13,
29:19
**troubling** [1] - 36:11
**true** [5] - 8:7, 13:5,
23:19, 27:15, 38:14
**truth** [1] - 27:7
**try** [6] - 23:7, 27:20,
33:8, 33:24, 34:13,
35:16
**trying** [6] - 19:4, 19:9,
23:9, 30:25, 32:10,
32:17
**Tuesday** [2] - 36:22,
37:6
**two** [8] - 9:23, 9:24,
12:16, 13:3, 13:25,
20:1, 25:22, 32:7
**TX** [1] - 2:9
**type** [6] - 10:16, 11:4,
12:9, 15:25, 27:22

**types** [1] - 11:10
**typically** [1] - 18:3

## U

**ultimate** [2] - 19:10, 26:8
**ultimately** [2] - 26:5, 26:6
**unable** [1] - 8:11
**under** [10] - 10:1, 10:17, 12:19, 14:14, 25:8, 27:4, 29:11, 30:9, 32:20, 33:4
**undertaken** [1] - 26:15
**underwriting** [1] - 18:2
**UNIDENTIFIED** [1] - 34:23
**United** [2] - 38:12, 38:22
**UNITED** [2] - 1:1, 1:12
**unjustifiably** [1] - 11:23
**unless** [1] - 37:13
**untoward** [1] - 22:19
**unusual** [2] - 22:6, 23:17
**up** [7] - 9:5, 9:8, 9:16, 9:18, 18:20, 18:21, 37:20

## V

**valid** [1] - 35:10
**value** [4] - 15:2, 15:5, 18:25
**veil** [1] - 25:6
**view** [3] - 14:21, 19:5, 19:10
**violated** [1] - 32:2
**violation** [3] - 14:10, 32:19
**VOICES** [1] - 38:2

## W

**wait** [7] - 10:25, 18:20, 36:1
**waive** [1] - 26:19
**WALNUT** [1] - 1:23
**wants** [4] - 17:21, 17:22, 18:7, 28:6
**weakness** [1] - 22:11
**web** [1] - 6:20
**weeks** [2] - 14:1, 15:6
**whereas** [1] - 35:19
**WHEREUPON** [1] -

38:3
**whole** [2] - 32:10, 36:9
**willing** [4] - 8:9, 26:19, 35:2, 35:3
**word** [1] - 21:23
**words** [1] - 27:12
**world** [1] - 36:9
**worthwhile** [1] - 27:21
**writing** [1] - 35:7
**written** [1] - 15:8

## Y

**year** [5] - 13:11, 13:20, 21:1, 21:4, 27:17
**years** [3] - 20:1, 32:7, 33:14
**yesterday** [2] - 10:10, 25:25
**YORK** [1] - 2:5