# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED       MDL DOCKET: 2047
DRYWALL PRODUCTS LIABILITY       SECTION: L
LITIGATION

                                           JUDGE FALLON
THIS DOCUMENT RELATES TO:       MAG. JUDGE WILKINSON

***Gross, et al. v. Knauf Gips, KG, et al.***
**Case No. 2:09-cv-06690 (E.D. La.)**
_____/

## ANSWER AND AFFIRMATIVE DEFENSES AND CROSS-CLAIMS OF DEFENDANT BANNER SUPPLY COMPANY TO PLAINTIFFS' CLASS ACTION COMPLAINT

Defendant Banner Supply Company (hereinafter "Banner"), by and through its undersigned counsel, files this, its Answer and Affirmative Defenses and Cross-Claims to the Amended Class Action Complaint (the "Complaint") filed on October 19, 2009 by Plaintiffs David Gross, Cheryl Gross, and Louis Velez, individually and on behalf of all others similarly situated, and responds to the allegations made within the Complaint as follows:

### JURISDICTION, PARTIES, AND VENUE

1.     Denies the truth of each and every allegation contained in the initial unnumbered paragraphs of the Complaint, as well as Paragraphs 1 and 2 of the Complaint.

### PLAINTIFFS

2.     Is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraphs 3 through 14 of the Complaint as they relate to Banner.

## DEFENDANTS

3.      Is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraphs 15 through 91 of the Complaint as they relate to Banner.

4.      As to Paragraph 92, admits that Banner is an entity with a place of business at 7195 N.W. 30th Street, Miami, Florida 33122.  Admits that Banner is organized under the laws of Florida.  Denies the truth of each and every remaining allegation contained in Paragraph 92 of the Complaint.

5.      Is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraphs 93 through 146 of the Complaint as they relate to Banner.

## FACTS GIVING RISE TO INDUSTRY WIDE ALTERNATIVE LIABILITY

6.      Denies the truth of each and every allegation contained in Paragraphs 147 through 152 of the Complaint as they relate to Banner.

## FACTS REGARDING PRODUCT DEFECT

7.      Denies the truth of each and every allegation contained in Paragraphs 153 through 165 of the Complaint as they relate to Banner.

## FACTS REGARDING INVESTORS WHO AIDED AND ABETTED DEFENDANTS

8.      Is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraphs 166 through 175 of the Complaint as they relate to Banner.

## FACTS REGARDING OTHER ENTITIES THAT MAY HAVE AIDED AND ABETTED DEFENDANTS

9.      Is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraphs 176 through 225 of the Complaint as they relate to Banner.

## CLASS ACTION ALLEGATIONS

10.      Denies the truth of each and every allegation contained in Paragraphs 226 through 239 of the Complaint as they relate to Banner.

## COUNT I: NEGLIGENCE

11.      As to Paragraph 240, repeats and realleges its answers to Paragraphs 1 through 239 as if fully set forth herein.

12.      Denies the truth of each and every allegation contained in Paragraphs 241 through 247 of the Complaint as they relate to Banner.

## COUNT II: NEGLIGENCE *PER SE*

13.      As to Paragraph 248, repeats and realleges its answers to Paragraphs 1 through 247 as if fully set forth herein.

14.      Denies the truth of each and every allegation contained in Paragraphs 249 through 253 of the Complaint as they relate to Banner.

## COUNT III: BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES

15.      As to Paragraph 254, repeats and realleges its answers to Paragraphs 1 through 253 as if fully set forth herein.

16.      Denies the truth of each and every allegation contained in Paragraphs 255 through 261 of the Complaint as they relate to Banner.

## COUNT IV: PRIVATE NUISANCE

17.     As to Paragraph 262, repeats and realleges its answers to Paragraphs 1 through 261 as if fully set forth herein.

18.     Denies the truth of each and every allegation contained in Paragraphs 263 through 268 of the Complaint as they relate to Banner.

## COUNT V: NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE

19.     As to Paragraph 269, repeats and realleges its answers to Paragraphs 1 through 268 as if fully set forth herein.

20.     Denies the truth of each and every allegation contained in Paragraphs 270 through 275 of the Complaint as they relate to Banner.

## COUNT VI: UNJUST ENRICHMENT

21.     As to Paragraph 276, repeats and realleges its answers to Paragraphs 1 through 275 as if fully set forth herein.

22.     Denies the truth of each and every allegation contained in Paragraphs 277 through 279 of the Complaint as they relate to Banner.

## COUNT VII: VIOLATION OF CONSUMER PROTECTION ACTS

23.     As to Paragraph 280, repeats and realleges its answers to Paragraphs 1 through 279 as if fully set forth herein.

24.     Denies the truth of each and every allegation contained in Paragraphs 281 through 284 of the Complaint as they relate to Banner.

## COUNT VIII: EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING

25.     As to Paragraph 285, repeats and realleges its answers to Paragraphs 1 through 284 as if fully set forth herein.

26.     Denies the truth of each and every allegation contained in Paragraphs 286 through 297 of the Complaint as they relate to Banner.

27.     Should the unnumbered paragraph beginning with "WHEREFORE," beneath the heading "PRAYER FOR RELIEF," including subparagraphs (a) through (j), require a response, denies any and all such allegations, and further denies that Plaintiffs are entitled to any of the relief prayed for therein against Banner.

28.     Any allegations in the Complaint not specifically responded to above are hereby denied.

## AFFIRMATIVE DEFENSES

Subject to further investigation and discovery, and without assuming the burden of proof when the law places that burden upon Plaintiffs, Banner asserts the following affirmative defenses:

### First Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred, in whole or in part, for failure to state a cause of action against Banner and for failure to state sufficient facts upon which the relief demanded can be granted.

### Second Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred due to this Court's lack of personal jurisdiction over Banner.

### Third Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred due to this Court's lack of subject matter jurisdiction over the claims against Banner.

## Fourth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred, in whole or in part, due to Plaintiffs' lack of standing.

## Fifth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred due to improper venue.

## Sixth Affirmative Defense

Banner affirmatively alleges that any claims against it are subject to and governed by Florida law.

## Seventh Affirmative Defense

Banner affirmatively alleges that Plaintiffs failed to comply with Chapter 558, Florida Statutes as a condition precedent to bringing this action.

## Eighth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred, in whole or in part, pursuant to the economic loss doctrine and/or lack of privity with Banner.

## Ninth Affirmative Defense

Banner affirmatively alleges that Plaintiffs have failed to join one or more necessary parties.

## Tenth Affirmative Defense

Banner affirmatively alleges that it is only responsible for its relative degree of culpability as determined by the trier of fact pursuant to the *Fabre* Doctrine as set forth in *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993), and Section 768.81, Florida Statutes; furthermore, Banner reserves the right to place on the Jury Verdict Form any parties that may be or may also be culpable for the damages alleged in this action.

### Eleventh Affirmative Defense

Banner affirmatively alleges that Plaintiffs' injuries were caused by the actions of one or more third parties not named as defendants in this action and/or not in the employment and/or not agents of Banner and, therefore, the Court should apportion a percentage of liability among those non-parties pursuant to *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993). Banner specifically asks that these names, as identified in the course of discovery, be included on the Jury Verdict Form and that a percentage of negligence be attributed to them in this action.

### Twelfth Affirmative Defense

Banner affirmatively alleges that to the extent that Banner is not wholly at fault, Plaintiffs' recovery should be barred or limited accordingly.

### Thirteenth Affirmative Defense

Banner affirmatively alleges that it is entitled to a credit and/or set-off from any benefits, collateral sources, or other sources of set-offs or recoupment paid or payable to Plaintiffs.

### Fourteenth Affirmative Defense

Banner affirmatively alleges that at all times material hereto, Plaintiffs, individually, collectively, and on behalf of others similarly situated, acted in a negligent and careless manner and, as a direct and proximate result of this negligence, are barred from recovery, in whole or in part, against Banner on the grounds of comparative negligence.

### Fifteenth Affirmative Defense

Banner affirmatively alleges that the drywall was altered and/or otherwise substantially changed by Plaintiffs and/or by third parties.

### Sixteenth Affirmative Defense

Banner affirmatively alleges that the incident alleged by Plaintiffs herein was unforeseeable to Banner and that, therefore, Banner had neither a duty nor an opportunity to prevent same.

### Seventeenth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred, in whole or in part, because Banner had no knowledge of the alleged defective drywall when the drywall was placed into the stream of commerce.

### Eighteenth Affirmative Defense

Banner affirmatively alleges that at all times material hereto there was a lack of notice and/or insufficient notice to Banner of any alleged defect and/or danger, and that Banner therefore lacked the opportunity to correct the same.

### Nineteenth Affirmative Defense

Banner affirmatively alleges that any alleged defect in the drywall was not present at the time it left Banner's possession.

### Twentieth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred, in whole or in part, as the drywall at issue is a structural improvement to real property.

### Twenty-First Affirmative Defense

Banner affirmatively alleges the existence of a superseding cause.

### Twenty-Second Affirmative Defense

Banner affirmatively alleges that Plaintiffs' damages were caused by an intervening cause, specifically, the failure of others to reasonably inspect the drywall before it was installed in Plaintiffs' homes.

### Twenty-Third Affirmative Defense

Banner affirmatively alleges that at all times material hereto it acted within its contractual and/or statutory rights, and pursuant to state and federal law.

### Twenty-Fourth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred, in whole or in part, because Banner had no fiduciary relationship with Plaintiffs.

### Twenty-Fifth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred, in whole or in part, as Plaintiffs were not an intended third-party beneficiary of any warranty given by Banner.

### Twenty-Sixth Affirmative Defense

Banner affirmatively alleges that Plaintiffs have failed to mitigate their damages.

### Twenty-Seventh Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims are barred in whole or in part by the doctrines of laches and waiver.

### Twenty-Eighth Affirmative Defense

Banner affirmatively alleges that any claims against it are barred by the doctrines of waiver, estoppel, and ratification.

## Twenty-Ninth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims for attorneys' fees and costs are barred, as Plaintiffs never entered into any contract with Banner providing for an award of attorneys' fees and costs.

## Thirtieth Affirmative Defense

Banner affirmatively alleges that Plaintiffs' claims for attorneys' fees and costs are barred, as Plaintiffs' claims do not arise under a statute which provides for an award of attorneys' fees and costs.

WHEREFORE, Banner demands judgment against Plaintiffs, together with attorneys' fees and costs, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper.

## CROSS-CLAIM

Banner, through its undersigned counsel, hereby files its Cross-claims against Defendants Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. (hereinafter "TG"), and  Taian Taishan Plasterboard Co., Ltd (hereinafter "TTP"), and states as follows:

### PARTIES

### PLAINTIFFS

1.     Banner is a Florida company organized under the laws of Florida, which sells home building supplies such as lumber, insulation, metal framing and accessories, plaster and accessories, gypsum products, and specialty items.  Banner has a principal place of business as follows:  Banner Supply Company, 7195 N.W. 30th Street, Miami, Florida 33122;

## PERSONAL JURISDICTION

## TG AND TTP ARE SUBJECT TO GENERAL PERSONAL JURISDICTION IN FLORIDA

2.      This Court has general personal jurisdiction over TG and TTP pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, and due process because TG and TTP "engaged in substantial and not isolated activity within this state" as required by Florida Statutes § 48.193(2).

3.      TG and TTP engaged in substantial and not isolated activity in Florida by, *inter alia*: (a) exporting defective drywall manufactured in China by TG and TTP (the "Taishan Drywall") into the United States via Florida-based importers and distributors; (b) selling Taishan Drywall in this District and the State of Florida; (c) specifically targeting Banner and other Florida consumers for those sales; (d) delivering tons of Taishan Drywall into this District and the State of Florida; and (e) causing the defective drywall to reach Florida homeowners.

4.      Upon information and belief, TG and TTP placed the defective drywall within the stream of commerce with the expectation that it would be purchased by U.S. consumers in Florida and other U.S. states.

## TG AND TTP ARE SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN FLORIDA

5.      This Court has personal jurisdiction over TG and TTP pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, and due process because TG and TTP "[c]aus[ed] injury to persons or property within this state arising out of an act or omission by the defendant outside this state . . . [and] [p]roducts, materials, or things processed, serviced, or manufactured [by TG and TTP] anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use."  Fla. Stat. § 48.193(1)(f).  TG and TTP are therefore subject to personal

jurisdiction in the courts of Florida "for any cause of action arising from" the injuries caused by TG and TTP's acts or omissions.  Fla. Stat. § 48.193(1).

6.      TG and TTP caused injury to Banner and homeowners in Florida through acts and omissions occurring outside the State of Florida by designing, selecting, mining, manufacturing, assembling, processing, inspecting, testing, using, maintaining, marketing, advertising, soliciting, selling, offering, distributing, supplying, providing, delivering, exporting, and/or importing unfit, or otherwise defective drywall, which when used in the ordinary course of commerce caused property damage in the State of Florida.

7.      TG and TTP have been sued in lawsuits filed in Florida's state and federal courts, as well as in *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047 (E.D. La.), related to claims concerning defective drywall.

8.      If the Court finds it has proper jurisdiction over the parties and the transactions at issue in this case for the purposes of hearing the Plaintiffs' suit, this Cross-claim "aris[es] out of the [same] transaction or occurrence that is the subject matter of" the original action.  Fla. R. Civ. P. 1.180.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-claims and the named Cross-claim Defendants since the underlying facts are identical.

## **GENERAL ALLEGATIONS**

9.      Banner has been named as a Defendant in the above-styled action wherein it is alleged by Plaintiffs that the drywall supplied to them was defective and caused damage to Plaintiffs.

10.    Banner has denied any liability to Plaintiffs.   Banner's Answer and Affirmative Defenses to the Complaint, above, are incorporated herein.

11.    All conditions precedent to the filing of these Cross-claims have been performed, excused, or otherwise waived.

12.    At all times relevant hereto, TG and TTP conducted business designing, selecting, mining, manufacturing, assembling, processing, inspecting, testing, using, maintaining, marketing, advertising, soliciting, selling, offering, distributing, supplying, providing, delivering, exporting, and/or importing Taishan Drywall.

13.    All of the Taishan Drywall supplied by Banner was placed in the stream of commerce by TG and TTP and was specifically targeted to Florida consumers and consumers in other U.S. states.

## FIRST CLAIM
### *Negligence*

14.    Banner adopts and restates paragraphs 1 through 13 as if fully set forth herein.

15.    Banner asserts a claim against TG and TTP for negligence.

16.    Banner was a foreseeable user of the Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP.

17.    TG and TTP owed a duty to Banner to exercise reasonable care in the design, selection, mining, manufacture, assembly, processing, inspection, testing, use, maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall, so that the Taishan Drywall would be reasonably safe for

its reasonably intended uses and would not harm persons or property.  Specifically, TG and TTP's duty included, but was not limited to, using reasonable care to do the following:

      a.    design, select, mine, manufacture, assemble, process, inspect, test, use, and maintain the Taishan Drywall to prevent the advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall containing the defects alleged herein, including the emission of sulfur compounds capable of causing the corrosion of metals;

      b.    select, mine, inspect, and test the gypsum used in the manufacture, assembly, and/or processing of the Taishan Drywall to ensure that the Taishan Drywall would function properly in all of its foreseeable uses and did not contain excessive levels of sulfur compounds;

      c.    conduct regularly scheduled maintenance to prevent defects in the Taishan Drywall;

      d.    refrain from designing, selecting, mining, manufacturing, assembling, processing, inspecting, testing, using, maintaining, marketing, advertising, soliciting, selling, offering, distributing, supplying, providing, delivering, exporting, and/or importing the Taishan Drywall without sufficient knowledge as to the product's manufacturing defects; and

      e.    refrain from misrepresenting that the Taishan Drywall was safe for its intended purpose and not defective, as well as the severity of known defects.

18.    TG and TTP were negligent and breached their duty to exercise reasonable care in the design, selection, mining, manufacture, assembly, processing, inspection, testing, use, maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision,

delivery, export, and/or import of the Taishan Drywall, so that the Taishan Drywall would be reasonably safe for its reasonably intended uses and would not harm persons or property, including a duty to adequately warn Banner of TG and TTP's failure to do the same.  TG and TTP's breaches of duty included, but were not limited to the following:

       a.     failing to use reasonable care in the design, selection, mining, manufacture, assembly, processing, inspection, testing, use, maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall, to prevent the Taishan Drywall from containing defects as set forth herein, including the emission of sulfur compounds capable of causing the corrosion of metals;

       b.     failing to use reasonable care in the selection, mining, inspection, and testing of the gypsum used in the manufacture, assembly, and/or processing of the Taishan Drywall to ensure that the Taishan Drywall would function properly in all of its foreseeable uses and did not contain excessive levels of sulfur compounds;

       c.     failing to use reasonable care to conduct regularly scheduled maintenance to prevent defects in the Taishan Drywall;

       d.     failing to use reasonable care to refrain from designing, selecting, mining, manufacturing, assembling, processing, inspecting, testing, using, maintaining, marketing, advertising, soliciting, selling, offering, distributing, supplying, providing, delivering, exporting, and/or importing the Taishan Drywall without sufficient knowledge as to the product's manufacturing defects; and

e.      failing to use reasonable care to refrain from misrepresenting that the Taishan Drywall was safe for its intended purpose and not defective, as well as the severity of known defects.

19.    TG and TTP knew or should have known that the Taishan Drywall was defective and not reasonably fit for its intended and foreseeable uses.

20.    As a direct and proximate result of TG and TTP's negligence, Banner has incurred damages, including payments made and expenses incurred in the remediation of homes containing the Taishan Drywall supplied by Banner, lost profits, loss of goodwill, and damage to Banner's reputation.

## SECOND CLAIM

### *Negligent Failure to Warn*

21.    Banner adopts and restates paragraphs 1 through 13 as if fully set forth herein.

22.    Banner asserts a claim against TG and TTP for negligent failure to warn.

23.    Banner was a foreseeable user of the Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP.

24.    TG and TTP owed a duty to Banner to exercise reasonable care in the design, selection, mining, manufacture, assembly, processing, inspection, testing, use, maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall, so that the Taishan Drywall would be reasonably safe for its reasonably intended uses and would not harm persons or property, including a duty to adequately warn Banner of TG and TTP's failure to do the same.  Specifically, TG and TTP

owed a duty to Banner to use reasonable care to provide adequate warning as to the defective nature of the Taishan Drywall and risk of damages arising therefrom, including, but not limited to, a duty to warn of TG and TTP's failure to do the following:

a.     design, select, mine, manufacture, assemble, process, inspect, test, use, and maintain the Taishan Drywall to prevent the advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall containing the defects alleged herein, including the emission of sulfur compounds capable of causing the corrosion of metals;

b.     select, mine, inspect, and test the gypsum used in the manufacture, assembly, and/or processing of the Taishan Drywall to ensure that the Taishan Drywall would function properly in all of its foreseeable uses and did not contain excessive levels of sulfur compounds;

c.     conduct regularly scheduled maintenance to prevent defects in the Taishan Drywall;

d.     refrain from designing, selecting, mining, manufacturing, assembling, processing, inspecting, testing, using, maintaining, marketing, advertising, soliciting, selling, offering, distributing, supplying, providing, delivering, exporting, and/or importing the Taishan Drywall without sufficient knowledge as to the product's manufacturing defects; and

e.     refrain from misrepresenting that the Taishan Drywall was safe for its intended purpose and not defective, as well as the severity of known defects.

25.    The Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered,

distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP was defective and/or not reasonably fit for its intended use at the time the Taishan Drywall left the control of TG and TTP.

26.     TG and TTP knew or should have known that the Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP was defective and/or not reasonably fit for its intended use.

27.     TG and TTP knew or should have known that without providing Banner adequate warning that the Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP was defective and/or not reasonably fit for its intended use, Banner would suffer harm.

28.     TG and TTP failed to provide Banner with adequate warning that the Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP was defective and/or not reasonably fit for its intended use.

29.     TG and TTP were negligent and breached their duty to Banner to exercise reasonable care in the design, selection, mining, manufacture, assembly, processing, inspection, testing, use, maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall, so that the Taishan Drywall would be reasonably safe for its reasonably intended uses and would not harm persons or property, including their duty to adequately warn Banner of TG and TTP's failure to do the

18

same.  Specifically, TG and TTP breached their duty to Banner to use reasonable care to provide adequate warning as to the defective nature of the Taishan Drywall and risk of damages arising therefrom, including, but not limited to, their duty to warn Banner of TG and TTP's failure to do the following:

a.      design, select, mine, manufacture, assemble, process, inspect, test, use, and maintain the Taishan Drywall to prevent the advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall containing the defects alleged herein, including the emission of sulfur compounds capable of causing the corrosion of metals;

b.      select, mine, inspect, and test the gypsum used in the manufacture, assembly, and/or processing of the Taishan Drywall to ensure that the Taishan Drywall would function properly in all of its foreseeable uses and did not contain excessive levels of sulfur compounds;

c.      conduct regularly scheduled maintenance to prevent defects in the Taishan Drywall;

d.      refrain from designing, selecting, mining, manufacturing, assembling, processing, inspecting, testing, using, maintaining, marketing, advertising, soliciting, selling, offering, distributing, supplying, providing, delivering, exporting, and/or importing the Taishan Drywall without sufficient knowledge as to the product's manufacturing defects; and

e.      refrain from misrepresenting that the Taishan Drywall was safe for its intended purpose and not defective, as well as the severity of known defects.

30.     As a direct and proximate result of TG and TTP's negligence and failure to use reasonable care to provide adequate warning as to the defective nature of the Taishan Drywall and risk of damages arising therefrom, Banner has incurred damages from the use of Taishan Drywall, including payments made and expenses incurred in the remediation of homes containing the Taishan Drywall supplied by Banner, lost profits, loss of goodwill, and damage to Banner's reputation.

### THIRD CLAIM

#### *Breach of Post-Sale Duty to Warn*

31.     Banner adopts and restates paragraphs 1 through 13 as if fully set forth herein.

32.     Banner asserts, in the alternative, a claim against TG and TTP for breach of post-sale duty to warn.

33.     Upon information and belief, TG and TTP knew or should have known, after the time the Taishan Drywall left the control of TG and TTP, that the Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP was defective and/or not reasonably fit for its intended use.

34.     Banner was a foreseeable user of the Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP.

35.     Users such as Banner, to whom a warning might have been provided, could have been identified by TG and TTP and could reasonably be assumed to be unaware of the risk of harm.

36.     A warning could have been effectively communicated to Banner and acted upon by Banner.

37.     The potential dangers and/or risk of harm associated with the use of the defective Taishan Drywall were sufficiently great to justify the burden of providing a warning.

38.     Reasonable entities engaged in the design, selection, mining, manufacture, assembly, processing, inspection, testing, use, maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of Taishan Drywall would have provided adequate post-sale warning that the Taishan Drywall was defective and/or not reasonably fit for its intended use.

39.     TG and TTP had a duty of reasonable care to Banner to investigate when reasonable grounds were present to suspect that a previously unknown risk existed and/or to issue a post-sale warning that the Taishan Drywall was defective and/or not reasonably fit for its intended use.

40.     TG and TTP breached their duty of reasonable care to Banner to investigate when reasonable grounds were present to suspect that a previously unknown risk existed and/or to issue a post-sale warning that the Taishan Drywall was defective and/or not reasonably fit for its intended use.

41.     As a direct and proximate result of TG and TTP's failure to use reasonable care to provide adequate post-sale warning as to the defective nature of the Taishan Drywall and risk of damages arising therefrom, Banner has incurred damages, including payments made and expenses incurred in the remediation of homes containing the Taishan Drywall supplied by Banner, lost profits, loss of goodwill, and damage to Banner's reputation.

## FOURTH CLAIM

### *Strict Liability*

42.     Banner adopts and restates paragraphs 1 through 13 as if fully set forth herein.

43.     Banner asserts a claim against TG and TTP for strict liability.

44.     TG and TTP intended that the Taishan Drywall reach Banner and the ultimate consumer, homeowners, in substantially the same condition as designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP.

45.     Banner and homeowners received the Taishan Drywall in substantially the same condition as designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP.

46.     At all times relevant hereto, the Taishan Drywall was used in a manner consistent with the uses intended by, or known to, TG and TTP and in accordance with TG and TTP's directions and instructions.

47.     Upon information and belief, the Taishan Drywall designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, maintained, marketed, advertised, solicited, sold, offered, distributed, supplied, provided, delivered, exported, and/or imported by TG and TTP was defective.

48.     The Taishan Drywall was defective in design because the Taishan Drywall was unreasonably dangerous and failed to perform as an ordinary customer would expect when used in an intended or reasonably foreseeable manner.

49.     Upon information and belief, at all times relevant herein, the process designed by TG and TTP to design, select, mine, manufacture, assemble, process, inspect, test, use, maintain, market, advertise, solicit, sell, offer, distribute, supply, provide, deliver, export, and/or import the Taishan Drywall failed to remove sufficient impurities from the Taishan Drywall to prevent corrosive sulfur compounds from being emitted from the Taishan Drywall and damaging property.

50.     At all times relevant herein, on balance, the benefits of TG and TTP's design of the process for designing, selecting, mining, manufacturing, assembling, processing, inspecting, testing, using, maintaining, marketing, advertising, soliciting, selling, offering, distributing, supplying, providing, delivering, exporting, and/or importing the Taishan Drywall did not outweigh the risk of danger inherent in such design.

51.     Upon information and belief, the Taishan Drywall was defective as manufactured and emitted corrosive sulfur compounds that damaged property.

52.     Upon information and belief, TG and TTP designed, selected, mined, manufactured, assembled, processed, inspected, tested, used, and/or maintained the Taishan Drywall, and/or any of its composite parts in a manner insufficient to remove impurities from the Taishan Drywall, causing sulfur compounds to be emitted from Taishan Drywall that damaged property.

53.     Upon information and belief, TG and TTP are also strictly liable for failing to adequately warn Banner and homeowners of the risk that sulfur compounds would be emitted from the Taishan Drywall, which TG and TTP knew or should have known in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the design, selection, mining, manufacture, assembly, processing, inspection, testing, use,

maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall.

54.     Banner was unaware of the defective nature of the Taishan Drywall, and could not have reasonably discovered that the Taishan Drywall was defective.

55.     The manufacturing and design defects in the Taishan Drywall, as well as TG and TTP's failure to adequately warn Banner of the Taishan Drywall's defective nature, were the direct and proximate cause of damages to Banner, including payments made and expenses incurred in the remediation of homes containing the Taishan Drywall supplied by Banner, lost profits, loss of goodwill, and damage to Banner's reputation.

## FIFTH CLAIM

### *Equitable and/or Common Law Indemnification Against the Taishan Defendants*

56.     Banner adopts and restates paragraphs 1 through 13 as if fully set forth herein.

57.     Banner asserts a claim against TG and TTP for equitable and/or common law indemnification.

58.     Banner is wholly without fault for Plaintiffs' damages as alleged herein because it had no involvement in TG and TTP's manufacture of the Taishan Drywall.

59.     To the extent Plaintiffs establish that the Taishan Drywall was manufactured by TG and TTP and sold by Banner, a special relationship existed between Banner and TG and TTP by virtue of the respective duties undertaken by TG and TTP to distribute drywall that was free of defects and fit for construction of residential housing.

60.     If the trier of fact determines that the drywall manufactured by TG and TTP and allegedly sold by Banner was defective, TG and TTP are vicariously, constructively, derivatively, and/or technically liable for any allegedly wrongful act of Banner arising out of

24

Banner's distribution of the Taishan Drywall due to the direct and proximate cause of TG and TTP's failure to reasonably manufacture, design, and sell the Taishan Drywall, and ensure the Taishan Drywall was reasonably safe, free of defects, and fit for construction of residential housing.

61.      To the extent Plaintiffs or any third party are able to establish that the allegedly defective drywall was manufactured by TG and TTP and sold by Banner, as an innocent intermediary, Banner has a clear right to indemnification from TG and TTP, as Banner is entirely without fault in causing any loss, and all Banner's liability to Plaintiffs or any third party arising out of Banner's alleged distribution of the Taishan Drywall, including payments made and expenses incurred in the remediation of homes containing the Taishan Drywall supplied by Banner, results solely from TG and TTP's wrongful design, selection, mining, manufacturing, assembly, processing, inspection, testing, use, maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of a defective product.

62.      Banner is also entitled to recover costs and expenses, including reasonable attorneys' fees pursuant to the wrongful act doctrine.  Specifically, Banner's involvement in the instant action is due solely to TG and TTP's wrongful acts, as more specifically described herein. As a result of TG and TTP's actions, Banner has been forced to incur significant expenses to defend against Plaintiffs' claims and protect Banner's interests.

## SIXTH CLAIM

### *Contribution*

63.      Banner adopts and restates paragraphs 1 through 13 as if fully set forth herein.

64.      Banner asserts, in the alternative, a claim against TG and TTP for contribution.

65.     Banner did not manufacture the Taishan Drywall that allegedly damaged Plaintiffs and others; thus, Banner is not ultimately responsible for the damages alleged by Plaintiffs and others arising out of Banner's distribution of Taishan Drywall.

66.     Banner did not intentionally, willfully, or wantonly cause or contribute to Plaintiffs' injuries.

67.     However, if as a result of Banner's distribution of Taishan Drywall, Banner is held liable for all or any part of Plaintiffs' alleged damages, TG and TTP, as joint tortfeasors, would be obligated to contribute, reimburse and remain liable to Banner for any payment by Banner of such alleged damages to the extent such payment exceeds Banner's *pro rata* share of liability.

### SEVENTH CLAIM
#### *Equitable Subrogation*

68.     Banner adopts and restates paragraphs 1 through 13 as if fully set forth herein.

69.     Banner asserts, in the alternative, a claim against TG and TTP for equitable subrogation.

70.     Banner is wholly without fault for Plaintiffs' damages as alleged herein because it had no involvement in TG and TTP's manufacture of the Taishan Drywall.

71.     Banner did not intentionally, willfully, or wantonly cause or contribute to Plaintiffs' injuries, nor is Banner primarily liable for any injury inflicted upon the Plaintiffs.

72.     To the extent Banner is required to pay damages for any fault of TG and TTP in order to protect Banner's own interests, and not as a volunteer, the dictates of equity and good conscience, as well as considerations of public policy, would entitle Banner to reimbursement from TG and TTP who are ultimately answerable for the discharge of such debts, including, but not limited to, payments made and expenses incurred in the remediation of homes containing the

Taishan Drywall supplied by Banner, as well as reasonable costs and attorneys' fees in the defense of claims brought by the Plaintiffs.

73.     Such equitable subrogation would not work any injustice to the rights of third parties or others.

## EIGHTH CLAIM

### *Unjust Enrichment*

74.     Banner adopts and restates paragraphs 1 through 13 as if fully set forth herein.

75.     Banner asserts, in the alternative, a claim against TG and TTP for unjust enrichment.

76.     Upon information and belief, TG and TTP received benefits from Banner in the form of indirect payment for shipments of Taishan Drywall designated for sale, offering, distribution, supply, provision, delivery, export, and/or import to Banner.

77.     TG and TTP had knowledge of the benefits conferred upon them by Banner.

78.     TG and TTP voluntarily accepted and retained the benefits conferred upon them by Banner.

79.      Given the following actions by TG and TTP, it would be inequitable in such circumstances for TG and TTP to retain the benefits conferred upon them by Banner without payment of the fair value of such benefits:

        a.      failure to use reasonable care in the design, selection, mining, manufacture, assembly, processing, inspection, testing, use, maintenance, marketing, advertising, soliciting, sale, offering, distribution, supply, provision, delivery, export, and/or import of the Taishan Drywall, to prevent the Taishan Drywall from containing defects as set forth herein, including the emission of sulfur compounds capable of causing the corrosion of metals;

b.      failure to use reasonable care in the selection, mining, inspection, and testing of the gypsum used in the manufacture, assembly, and/or processing of the Taishan Drywall to ensure that the Taishan Drywall did not contain excessive levels of sulfur compounds;

c.      failure to use reasonable care to conduct regularly scheduled maintenance to prevent defects in the Taishan Drywall;

d.      failure to use reasonable care to refrain from designing, selecting, mining, manufacturing, assembling, processing, inspecting, testing, using, maintaining, marketing, advertising, soliciting, selling, offering, distributing, supplying, providing, delivering, exporting, and/or importing the Taishan Drywall without sufficient knowledge as to the product's manufacturing defects;

e.      failure to use reasonable care to provide adequate warning as to the defective nature of the Taishan Drywall; and

f.      failure to use reasonable care to refrain from misrepresenting that the Taishan Drywall was safe for its intended purpose and not defective, as well as the severity of known defects.

80.      Banner has no adequate remedy at law to recover for such unjust enrichment.

## **RELIEF**

WHEREFORE, Banner requests that this Court:

A.      enter judgment against TG and TTP for all compensatory and statutory damages caused by their conduct, including, but not limited to, payments made and expenses incurred in the remediation of homes containing TG and TTP's defective drywall, lost profits, loss of goodwill, and damage to Banner's reputation;

B.      award Banner its reasonable litigation expenses, costs and attorneys' fees, to the extent allowed by law;

C.      award Banner pre- and post-judgment interest, to the extent allowed by law;

D.      award injunctive and/or declaratory relief as is necessary to protect Banner's interests; and

E.      award such other and further relief as equity and justice may require.

## <u>DEMAND FOR JURY TRIAL</u>

Banner hereby demands a trial by jury as to all issues so triable as a matter of right.


Respectfully submitted this 25th day of April, 2012.

**WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC**

 */s/ Nicholas P. Panayotopoulos*
**NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**
Georgia Bar Number: 560679
3344 Peachtree Road, Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
Email: npanayo@wwhgd.com
***Counsel for Banner Supply Company***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing ANSWER AND AFFIRMATIVE DEFENSES AND CROSS-CLAIMS OF DEFENDANT BANNER SUPPLY COMPANY TO PLAINTIFFS' CLASS ACTION COMPLAINT has been served on Plaintiffs' Liaison Counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 25th day of April, 2012.

*/s/ Nicholas P. Panayotopoulos*
**NICHOLAS P. PANAYOTOPOULOS, ESQUIRE**