## CLASS ACTION SETTLEMENT AGREEMENT REGARDING KPT DRYWALL CLAIMS AGAINST USG AND L&W IN MDL NO. 2047

(Subject to Court Approval)

This Settlement Agreement is entered into by and among the Plaintiffs' Steering Committee ("PSC") appointed in *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (E.D. La.), USG Corporation ("USG"), L&W Supply Corporation ("L&W") and the Knauf Defendants as of March 19, 2012.

## RECITALS

WHEREAS, L&W has been named as a defendant in MDL No. 2047 and in state court litigation, and is alleged to be liable for L&W Supplied KPT Chinese Drywall that was installed in Affected Properties;

WHEREAS, USG has been named as a defendant in MDL No. 2047 and in state court litigation, and is alleged to be liable for L&W Supplied KPT Chinese Drywall that was installed in Affected Properties;

WHEREAS, USG and L&W have denied any and all liability for claims arising from the marketing, distribution, supply, sale, delivery and use of L&W Supplied KPT Chinese Drywall that was installed in Affected Properties;

WHEREAS, on or about April 3, 2011, USG and L&W entered into a Settlement Agreement and Release with the Knauf Defendants that contemplated a Class Settlement of L&W Supplied KPT Chinese Drywall Claims against L&W ("Knauf/L&W Settlement");

WHEREAS, on or about December 20, 2011, the PSC and the Knauf Defendants entered into a Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 ("Knauf Class Settlement");

WHEREAS, the Parties desire to effectuate the Knauf/L&W Settlement by way of this Settlement;

WHEREAS, this Settlement is intended to facilitate the Knauf Class Settlement;

WHEREAS, the Parties intend for Participating L&W Class Members to receive the Settlement benefits provided herein, consisting of a Cash Payment toward Remediation Settlement Benefits under the Knauf Class Settlement; and

WHEREAS, the Parties wish to avoid the effort, expense and risk of continued litigation,

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound, the Parties stipulate and agree as follows:

## TERMS AND CONDITIONS

1 **Definitions**

    1.1 **Parties**. "Parties" shall mean USG, L&W, the Knauf Defendants and the Class:

        1.1.1 **Knauf Defendants.** "Knauf Defendants" shall mean all Knauf entities, including Knauf Gips KG, Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd. ("Wuhu"), Guangdong Knauf New Building Material Products Co., Ltd. ("Dongguan"), Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., Gebrueder Knauf Verwaltungsgesellschaft, KG, and P.T. Knauf Gypsum Indonesia and all of their past, present and future parents, subsidiaries, affiliates, divisions, predecessor, successors, heirs, legal representatives, legatees and/or assigns, together with past, present and future officers, directors, board members, shareholders, members, presidents, managers, partners, employees, distributors, retail dealers, agents, servants, representatives, consultants, in-house or outside attorneys, insurers, and reinsurers.

        1.1.2 **L&W**. "L&W" shall include L&W Supply Corporation and all of its past, present and future parents, subsidiaries, affiliates, divisions, predecessors, successors, heirs, legal representatives, legatees and/or assigns, together with past, present and future officers, directors, board members, shareholders, members, presidents, managers, partners, employees, distributors, retail dealers, agents, servants, representatives, consultants, in-house or outside attorneys, insurers, and reinsurers, except that the Knauf Defendants shall not be included in the definition of L&W.

        1.1.3 **USG**. "USG" shall include USG Corporation and all of its past, present and future parents, subsidiaries, affiliates, divisions, predecessors, successors, heirs, legal representatives, legatees and/or assigns, together with past, present and future officers, directors, board members, shareholders, members, presidents, managers, partners, employees, distributors, retail dealers, agents, servants, representatives, consultants, in-house or outside attorneys, insurers, and reinsurers, except that the Knauf Defendants shall not be included in the definition of USG.

1.1.4 **L&W Class; L&W Class Members**. "L&W Class," also referred to as "L&W Class Members," shall include all persons or entities who are Participating Class Members in the Knauf Class Settlement and who (a) as of December 9, 2011, is a named plaintiff in the Litigation (*i.e.*, not an absent class member) asserting claims arising from or otherwise related to L&W Supplied KPT Chinese Drywall, whether or not L&W and/or USG are named parties to the lawsuit, and (b) own Affected Property. The L&W Class also shall include Multiple Unit Property Governing Bodies to the extent that any unit(s) of a Multiple Unit Property is the subject of a filed lawsuit in the Litigation. L&W Class or L&W Class Member shall not include (a) any person or entity who, has settled claims against L&W and/or USG under the Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall or under any other settlement with L&W and/or USG (including claims assigned by L&W Class Members that were later settled by the assignee), or (b) any owner of an Affected Property that has already been the subject of a settlement for which L&W has contributed payment either to the current or former owner of the property or to any party to that settlement. A list of settlements to which L&W is a party is attached as Exhibit 1, which will be filed under seal.

1.2 **L&W Class Counsel**. "L&W Class Counsel" shall mean Russ Herman and Arnold Levin.

1.3 **L&W Class Representatives**. "L&W Class Representatives" shall mean Paul and Therese Petkin.

1.4 **Counsel**. "Counsel" shall mean:

1.4.1 As to L&W Class Counsel: Russ Herman of Herman Herman Katz & Cotlar LLP, 820 O'Keefe Avenue, New Orleans, LA, 70113, and Arnold Levin of Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA, 19106.

1.4.2 As to the PSC: the group of plaintiffs' counsel appointed by the Honorable Eldon E. Fallon to manage and administer the affairs of all plaintiffs in MDL No. 2047 and to assist the Court in administering its docket. The PSC, as currently constituted, is described by Pretrial Order No. 8A (Rec. Doc. No. 6960).

1.4.3   As to USG:  W. David Conner of Haynsworth Sinkler Boyd, P.A., P.O. Box 2048, Greenville, SC 29602.

1.4.4   As to L&W:  W. David Conner of Haynsworth Sinkler Boyd, P.A., P.O. Box 2048, Greenville, SC 29602.

1.4.5   As to the Knauf Defendants:  Kerry J. Miller of Frilot LLC, 1100 Poydras Street, Suite 3700, New Orleans, LA 70163, and Steven Glickstein of Kaye Scholer LLP, 425 Park Avenue, New York, NY 10022.

1.5   **Affected Property**.  "Affected Property" shall mean any real property, residential or commercial, containing L&W Supplied KPT Chinese Drywall.

1.6   **Approved Claims.**  "Approved Claims" shall mean claims submitted by L&W Class Members to the Knauf Class Settlement that meet the requirements of this Agreement, including the requirements of Section 4.1, and have been approved for reimbursement from the Remediation Fund.

1.7   **Cash Payment**.  "Cash Payment" shall mean an amount equal to $7 per square foot of Under Air Area of an Affected Property.

1.8   **Court**.  "Court" shall mean the Honorable Eldon E. Fallon, who presides over *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, in the United States District Court for the Eastern District of Louisiana.

1.9   **Excluded Releasee.**  "Excluded Releasee" shall mean any person or entity eligible to be an Other Releasee that does not participate in the Prospective Insurer Agreement or otherwise settle with the PSC and the Knauf Defendants.  An Excluded Releasee can also be an Other Releasee pursuant to Section 1.26.1.

1.10   **Execution Date**.  "Execution Date" shall mean March 19, 2012.

1.11   **Inspection Protocol.**  "Inspection Protocol" shall mean the protocol for inspecting properties for KPT Chinese Drywall attached as Exhibit C to the Knauf Class Settlement.

1.12   **Knauf Class Settlement.**  "Knauf Class Settlement" shall mean the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 entered into between the PSC and the Knauf Defendants as of December 20, 2011, attached as Exhibit 2.

1.13 **Knauf/L&W Agreement**.  "Knauf/L&W Agreement" shall mean the Settlement Agreement and Release entered into between the Knauf Defendants and USG and L&W on or about April 3, 2011, attached as Exhibit 3.

1.14 **KPT Chinese Drywall Claims**.  "KPT Chinese Drywall Claims" shall mean any and all claims made in lawsuits or arbitration proceedings against the Settling Defendants arising out of or related to L&W Supplied KPT Chinese Drywall.

1.15 **KPT Drywall Percentage.**  "KPT Drywall Percentage" shall mean the amount of L&W Supplied KPT Chinese Drywall in the Affected Property divided by the total amount of L&W Supplied KPT Chinese Drywall and Non-KPT Chinese Drywall in the Affected Property rounded to the next highest 10% increment, as determined according to paragraph II.C of the Inspection Protocol.  For example, if the amount of L&W Supplied KPT Chinese Drywall in the Affected Property divided by the total amount of L&W Supplied KPT Chinese Drywall and Non-KPT Chinese Drywall equals 82%, the KPT Drywall Percentage shall be 90%. However, if the amount equals 90%, the KPT Drywall Percentage shall not be adjusted upward.  Applying this definition, if an inspection of an Affected Property reveals that there are 4 boards consisting of L&W Supplied KPT Chinese Drywall, 2 boards consisting of Non-KPT Chinese Drywall and 4 non-reactive boards in the Affected Property, then the KPT Drywall Percentage will be 70% (four L&W Supplied KPT Chinese Drywall boards divided by six total L&W Supplied KPT Chinese Drywall boards and Non-KPT Chinese Drywall boards, rounded up to the next highest 10% increment).

1.16 **KPT Property.**  "KPT Property" shall mean any Affected Property in which the KPT Drywall Percentage exceeds 90%.

1.17 **L&W Supplied KPT Chinese Drywall**.  "L&W Supplied KPT Chinese Drywall" shall mean any and all drywall purchased from, or distributed, supplied, sold, and/or delivered by USG and/or L&W, that was manufactured by KPT and is alleged to be defective.  "L&W Supplied KPT Chinese Drywall" shall not include drywall that was manufactured, sold, marketed, distributed and/or supplied by any Knauf Defendant other than KPT.

1.17.1 **Lower-Case L&W Supplied KPT Chinese Drywall.**  "Lower-Case L&W Supplied KPT Chinese Drywall" shall mean L&W Supplied KPT Chinese Drywall bearing the lower-case "TianJin, China" markings. L&W Class Members with only Lower-Case L&W Supplied KPT Chinese Drywall in their properties shall be eligible for benefits under this Settlement only if the L&W Class Member who owns a particular

Property satisfies the requirements of Section 4.9 of the Knauf Class Settlement.

1.18    **Lead Contractor.**  "Lead Contractor" shall mean the Lead Contractor under the Knauf Class Settlement.

1.19    **Litigation**.  "Litigation" shall mean all Class Action Omnibus Complaints ("Omni Complaints") filed in MDL No. 2047, and all Related Actions.

1.20    **Mixed Property.**  "Mixed Property" shall mean any Affected Property in which the KPT Drywall Percentage is less than or equal to 90%.

1.21    **Multiple Unit Property.**  "Multiple Unit Property" shall mean an Affected Property that contains more than one living unit.

1.22    **Multiple Unit Property Governing Body.**  "Multiple Unit Property Governing Body" shall mean the person(s) or entity(ies) having the legal authority or control to bind a Multiple Unit Property, including but not limited to, a condominium association.

1.23    **Non-KPT Chinese Drywall.**  "Non-KPT Chinese Drywall" shall mean any and all reactive drywall products manufactured, sold, marketed, distributed, and/or supplied by a Chinese manufacturer other than KPT, including but not limited to, any reactive drywall manufactured or sold by Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard, Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; Beijing New Building Materials Public Ltd. Co., China National Building Material Co., Ltd., or China National Building Material Group Corporation.  Counterfeit drywall products that purport to be manufactured by KPT, but that are in fact manufactured by an entity other than KPT shall not be considered "L&W Supplied KPT Chinese Drywall" and shall be considered "Non-KPT Chinese Drywall" only if the drywall is reactive. "Non-KPT Chinese Drywall" shall not include drywall products manufactured, sold, marketed, distributed, and/or supplied by Wuhu or Dongguan and shall not include drywall bearing the Lower-Case "TianJin, China" markings.

1.24    **Order and Judgment**.  "Order and Judgment" shall mean an order and judgment entered by the Court that:

1.24.1  Certifies the L&W Class pursuant to Fed. R. Civ. P. 23(b)(3);

1.24.2 Finds that the Settlement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved; and approves the Settlement;

1.24.3 Approves the Class Release provided in Section 5.1 and orders that, as of the Effective Date, the Released Claims as defined in Section 5.1 of the Knauf Class Settlement will be released as to USG and L&W;

1.24.4 Enjoins and forever bars any and all Participating L&W Class Members from commencing and/or maintaining any action, legal or otherwise, against USG and L&W arising out of, or otherwise relating to, L&W Supplied KPT Chinese Drywall or any drywall manufactured by KPT;

1.24.5 Finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4 and 5.2.5 are valid, binding, and enforceable; and therefore, bars the assertion by any entity or person against USG and L&W of any contribution, indemnification, subrogation, or other claims arising out of (i) the Participating L&W Class Members' L&W Supplied KPT Chinese Drywall Claims or (ii) this Settlement;

1.24.6 Finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

1.25 **Other Approved Contractor.** "Other Approved Contractor" shall mean an "Other Approved Contractor" under the Knauf Class Settlement.

1.26 **Other Releasee.** "Other Releasee" shall mean any person or entity that supplied, installed or facilitated and/or assisted in such supply or installation of L&W Supplied KPT Chinese Drywall, including but not limited to (a) USG and L&W, and (b) Importers, Suppliers, Builders, Developers, General Contractors, Installers, Realtors, Subcontractors, and Subsuppliers that (i) purchased or received L&W Supplied KPT Chinese Drywall, or used L&W Supplied KPT Chinese Drywall in the construction of Affected Property, or (ii) sold or marketed Affected Property containing L&W Supplied KPT Chinese Drywall, and (iii) all of their respective past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers and all predecessors and successors, assigns, or legal representatives, except for **Excluded Releasees**. Importers, Suppliers, Builders, Developers, General Contractors, Installers, Realtors, Subcontractors, and Subsuppliers shall have the same meaning as those capitalized terms in the Knauf Class Settlement.

1.26.1 A person or entity can be both an Other Releasee and an Excluded Releasee if some but not all of his (its) insurers participate in the Prospective Insurer Agreement or other settlement with the PSC and the Knauf Defendants. In that case, the person or entity will be treated as an Other Releasee with respect to uninsured claims and claims insured by participating insurers and as an Excluded Releasee with respect to claims insured by the non-participating insurers.

1.27 **Participating L&W Class Member**. "Participating L&W Class Member" shall mean all L&W Class Members who do not opt out of the Settlement as provided in Sections 8.1 and 8.2.

1.28 **Prospective Insurer Agreement.** "Prospective Insurer Agreement" shall mean an agreement negotiated, or to be negotiated, between the PSC and the Knauf Defendants on the one hand, and the insurers for Other Releasees (other than USG and L&W) on the other. The Prospective Insurer Agreement shall not release any liability of a surety, as opposed to an insurer.

1.29 **Related Actions**. "Related Actions" shall mean state, federal, international tribunal or arbitration claims relating to L&W Supplied KPT Chinese Drywall, regardless of whether the Settling Defendants are parties, including, but not limited to, the matters identified in Exhibit 4 hereto.

1.30 **Related Claims**. "Related Claims" shall mean claims against the Settling Defendants arising out of or related to L&W Supplied KPT Chinese Drywall that could have been asserted in the Litigation or a Related Action.

1.31 **Released Claims**. "Released Claim" or "Released Claims" shall mean any and all claims as more fully identified in Section 5.1 of the Knauf Class Settlement.

1.32 **Remediation Fund.** "Remediation Fund" shall mean the fund established pursuant to Section 4.2 of the Knauf Class Settlement.

1.33 **Remediation Protocol.** "Remediation Protocol" shall mean the protocol for remediating Affected Properties attached as Exhibit F to the Knauf Class Settlement.

1.34 **Remediation Settlement Benefits**. "Remediation Settlement Benefits" shall mean the benefits provided by the Remediation Fund under the terms and conditions of the Knauf Class Settlement.

1.35   **Settlement**.  "Settlement" shall mean this Settlement Agreement and all of the attached exhibits incorporated herein by reference.

1.36   **Settling Defendants**.  "Settling Defendants" shall mean USG, L&W and the Knauf Defendants.

1.37   **Under Air Area**.  "Under Air Area" shall mean the under air area of an Affected Property as determined by the Lead Contractor or Other Approved Contractor and as set forth in the Sample Contractor-KPT Property Owner Agreement attached as Exhibit 1 to the Remediation Protocol.

## 2   <u>Effective Date</u>

2.1   It shall be a condition precedent to the Settling Defendants' and PSC's obligations under this Settlement that the Knauf Class Settlement become Final.  If the Knauf Class Settlement does not become Final, this Settlement shall be null and void; however the Knauf/L&W Agreement shall remain in effect.

2.2   The "Effective Date" of this Settlement shall be the date when the Settlement becomes Final.  "Final" means:

2.2.1   If no objections to the Settlement are filed, or if any objections are filed and voluntarily withdrawn prior to entry of the Order and Judgment, then the date thirty (30) days following the approval by the Court of the Order and Judgment and its entry onto the Court's docket if there is no appeal; or

2.2.2   If any objections are filed and not voluntarily withdrawn prior to the entry of the Order and Judgment, then the later of: (a) the expiration of time to file or notice any appeal or move for reargument from the Court's Order and Judgment approving this Settlement; or (b) the date of final affirmance of any appeals therefrom.

## 3   <u>Settlement of All Claims Against USG and L&W</u>

3.1   The Settlement will settle and resolve with finality the Litigation, the Released Claims, and the Related Claims against the Settling Defendants and any other claims that have been brought, could have been brought or could be brought now or at any time in the future against the Settling Defendants in the Litigation or any other proceeding relating to L&W Supplied KPT Chinese Drywall or drywall manufactured by KPT, whether legal or otherwise.

3.2     The Settlement will not settle or release any claims by way of subrogation, contribution or indemnification that the Settling Defendants may have against third parties  arising out of, in any manner related to, or connected in any way with L&W Supplied KPT Chinese Drywall.  The Settlement also will not settle or release any claims relating to L&W Supplied KPT Chinese Drywall that the Settling Defendants hold due to an assignment from a Participating L&W Class Member or other party.  The Parties will not interfere with the Settling Defendants' rights or efforts to assert claims by way of subrogation, contribution or indemnity against third parties arising out of, in any manner related to, or connected in any way with L&W Supplied KPT Chinese Drywall.

4     **Settlement Benefits**

4.1     In consideration of settlement of all L&W Supplied KPT Chinese Drywall Claims against USG and L&W by the Participating L&W Class Members, the Settling Defendants agree as follows:

4.1.1     Pursuant to the Knauf/L&W Agreement, on behalf of each Participating L&W Class Member who owns a KPT Property, L&W shall pay to the Knauf Defendants an amount equal to the Cash Payment for each KPT Property less the Attorneys' Fees and Costs Allocation as provided in Section 15 ("Net KPT Property Cash Payment").  The Knauf Defendants shall deposit an amount equal to the Net KPT Property Cash Payment into the Remediation Fund, which amount shall be applied toward Remediation Settlement Benefits for the Participating L&W Class Member.  L&W shall deposit an amount equal to the Attorneys' Fees and Costs Allocation into an L&W Attorneys' Fees and Costs Fund to be established pursuant to an order of the Court.

4.1.2     Pursuant to the Knauf/L&W Agreement, on behalf of each Participating L&W Class Member who owns a Mixed Property, L&W shall pay to the Knauf Defendants an amount equal to the Cash Payment for each Mixed Property multiplied by the KPT Drywall Percentage less the Attorneys' Fees and Costs Allocation ("Net Mixed Property Cash Payment").  The Knauf Defendants shall deposit an amount equal to the Net Mixed Property Cash Payment into the Remediation Fund which amount shall be applied toward Remediation Settlement Benefits for the Participating L&W Class Member.  L&W shall deposit an amount equal to the Attorneys' Fees and Costs Allocation into an L&W Attorneys' Fees and Costs Fund to be established pursuant to an order of the Court.

4.1.3    The Square Footage of each Affected Property shall be determined by the Lead Contractor or Other Approved Contractor using the American National Standard for Single-Family Residential Building's methodology, attached as Exhibit 1.8 to the Remediation Protocol.

> 4.1.3.1 The Square Footage of garages, attics, or basements shall not be used to calculate the Under Air Area used as the basis for the Cash Payment.

4.1.4    The KPT Drywall Percentage shall be determined by an inspector according to the procedures set forth in the Inspection Protocol.

> 4.1.4.1 For Multiple Unit Properties that are Mixed Properties, the KPT Drywall Percentage shall be determined according to the methodology set forth in Section 4.3.6.1.4 of the Knauf Class Settlement.

> 4.1.5    A claim may qualify as an Approved Claim under this Settlement even though (a) the property does not currently contain L&W Supplied KPT Chinese Drywall (for example, if it has already been remediated and the owner has not previously settled his or her claim) if the owner provides proof that the property at one time qualified as a KPT Property or Mixed Property, as the case may be, and the property and the current owner otherwise meet the qualifications for the L&W Class and the Knauf Class Settlement; or (b) the Affected Property is in foreclosure proceedings or has been foreclosed upon by a financial institution but otherwise qualifies for Remediation Settlement Benefits under the Knauf Class Settlement; or (c) the Participating L&W Class Member has vacated the Affected Property prior to remediation but the Affected Property otherwise qualifies for Remediation Settlement Benefits under the Knauf Class Settlement.  Participating L&W Class Members whose claims are based on Foreclosed Properties, as defined in the Knauf Class Settlement, shall be entitled to the benefits described in the Knauf Class Settlement.

4.1.6    For purposes of administrative efficiency, L&W shall make the Net KPT Property Cash Payments and/or Net Mixed Property Cash Payments to the Knauf Defendants and deposit the Attorneys' Fees and Costs Allocation into the L&W Attorneys' Fees and Costs Fund as set forth in Sections

4.1.1 and 4.1.2 by the 10th day of each month, for all Approved Claims for which L&W has received the determination by the Lead Contractor or Other Approved Contractor of the square footage of Under Air Area of an Affected Property of a Participating L&W Class Member during the previous month.  Within ten (10) days of receipt from L&W, the Knauf Defendants shall deposit an amount equal to the Net KPT Property Cash Payments and/or Net Mixed Property Cash Payments into the Remediation Fund.  To qualify as an Approved Claim for which payment is required pursuant to Sections 4.1 and 15, the claimant must meet the requirements of being an L&W Class Member and, if L&W reasonably disputes that it supplied L&W Supplied KPT Chinese Drywall to the Affected Property, must submit proof that L&W delivered the L&W Supplied KPT Chinese Drywall to the Affected Property by a contemporaneous document, such as an invoice or delivery ticket, showing that L&W delivered ½" drywall to the Affected Property after May 17, 2006.  A list of properties in the Litigation to which L&W does not dispute that it supplied ½" drywall after May 17, 2006 is attached as Exhibit 5.

4.1.7   The Parties understand and agree that the maximum combined contribution, including attorneys' fees and costs, of L&W and USG for any Affected Property shall be a total of $7 per square foot "Under Air Area" for the Affected Property, including any prior payments made by L&W in connection with the Affected Property.  L&W and USG will have no other payment obligations with respect to this Settlement and the Knauf Class Settlement other than $7 per square foot "Under Air Area" for the Affected Properties covered by this Settlement.  L&W and USG shall not be liable for any loss in value or other loss or impairment of funds after payment by L&W as required under this Settlement, including any loss incurred in or resulting from the investment or reinvestment of funds, or any costs or attorneys' fees in connection with the administration of the Settlement funds or the Settlement.

## 5    **Release**

### 5.1    **Class Release**

5.1.1   As Other Releasees, USG and L&W shall be full beneficiaries of the release provided in Section 5.2 of the Knauf Class Settlement.

5.1.2   The execution of the Settlement shall not be construed as a release of, any claims the Participating L&W Class Members may have against any

person and/or entity other than the Settling Defendants and the Other Releasees.  All Participating L&W Class Members reserve all claims (including, but not limited to, any and all rights and causes of action, no matter how arising, under any ordinance, code, law, statute, federal or state, pending or dismissed, known or unknown) against any person and/or entity, other than the Settling Defendants and the Other Releasees named, or who could have been named in the Litigation or Related Actions, including but not limited to manufacturers of Non-KPT Chinese Drywall.

5.1.3   To avoid inconvenience to the Settling Defendants, in any action in which any Settling Defendant is or may be a defendant or a third-party defendant together with other alleged tortfeasors, the Parties agree that each of the Participating L&W Class Members shall accept in satisfaction of any judgment an amount reduced to the extent necessary (under applicable state law whether it be *pro rata*, *pro tanto*, and/or set off) to extinguish any claims by the other alleged tortfeasors against the Settling Defendants for contribution, indemnity (common law or contractual) and/or subrogation, whether arising out of tort, contract or otherwise.  This provision is intended to obviate the necessity and expense of having the Settling Defendants remain a party on the record and obliged to participate in a trial merely for the purpose of determining if in fact any Settling Defendant was a tortfeasor so as to entitle the other tortfeasors to a pro rata or pro tanto reduction or set-off of any judgment.  It is the further intent of the Parties that the Settling Defendants shall have no further liability in connection with the Released Claims.  However, this provision does not constitute an admission of liability by the Settling Defendants.

5.1.4   As of the Effective Date, to the extent of each Participating L&W Class Member's Cash Payment, and to the extent the claim described in this Section arises out of the claim of that Participating L&W Class Member, each Participating L&W Class Member shall defend, indemnify, and hold harmless each of the Settling Defendants from and against (a) any and all claims by, on behalf of, through, or deriving from the Participating L&W Class Member's executors, representatives, attorneys or former attorneys, successors, employers, insurers, employers' insurers, health insurers, health care providers, assignees, subrogees, predecessors in interest, successors in interest, beneficiaries or survivors; and (b) any claims for contribution, common law indemnity, contractual indemnity, and/or subrogation, whether arising under tort, contract or otherwise, related in any way to the Released Claims of said Participating L&W Class Member released by this Settlement.

5.1.5   It is expressly understood and agreed that the indemnity, defense, and judgment reduction obligations detailed above shall exist regardless of the legal basis for the claim, demand, cause of action, right of action, liability, lien, or judgment demand asserted by any person or entity to the extent related to the Released Claims against any Settling Defendant.  In particular, the Participating L&W Class Members expressly bind themselves to the foregoing indemnity, defense and judgment reduction obligations regardless of whether the claim, demand, suit, liability, lien, judgment, cause of action, or right of action is based on or related to (a) the negligence of any of the Settling Defendants, sole or concurrent; (b) the strict liability of any of the Settling Defendants under any theory whatsoever; (c) the absolute liability of any of the Settling Defendants; (d) the wanton, reckless, or willful misconduct of any of the Settling Defendants; (e) any actual, alleged or purported right, asserted by any Settling Defendant or any Participating L&W Class Member under a policy of insurance issued by one or more insurers; or (f) any other basis whatsoever.

## 6    <u>Certification of Federal Rule of Civil Procedure 23(b)(3) Settlement Class and Related Motions</u>

6.1    This Settlement shall be subject to approval of the Court.

6.2    Within ten (10) days of the Execution Date, the PSC and the Settling Defendants will move jointly for an Order:

6.2.1   Preliminarily certifying an L&W Class and approving the Settlement (the "Preliminary Approval Order"); and

6.2.2   Staying all L&W Supplied KPT Chinese Drywall Claims as to the Settling Defendants in the Litigation, in Related Actions and as to Related Claims, pending Final Approval of the Settlement.

6.3    The Settling Defendants shall have the right to withdraw from the Settlement if the Court does not issue any of the requested orders (including the Order and Judgment) or if the L&W Class is not certified.

6.4    The Parties will stipulate to the Court in the request for entry of the Preliminary Approval Order and at the Certification Hearing that (i) the L&W Class is being certified for settlement purposes only pursuant to the Settlement, (ii) the Settling

Defendants reserve the right to object to class certification *de novo* in the event this Settlement is terminated for any reason, including termination pursuant to Section 13, and (iii) this Settlement shall have no precedential effect with regard to certification of a litigation class that may arise if this matter is not fully and completely resolved through this settlement effort, or otherwise and may not be cited in any class certification proceeding contested by the Settling Defendants.

7    **Notice to Class Members**

7.1    Upon entry of the Preliminary Approval Order preliminarily certifying the L&W Class as defined in Section 1.1.4, L&W Class Counsel will disseminate the L&W Class Notice ("Notice") approved by the Court as follows:

7.1.1    By first-class mail to the last known address of the following persons and entities:  (i) all plaintiffs in the Litigation who, as of December 9, 2011, asserted claims arising from, or otherwise related to L&W Supplied KPT Chinese Drywall, (ii) all named plaintiffs in the Omni complaints in MDL No. 2047 who, as of December 9, 2011, asserted claims arising from, or otherwise related to, L&W Supplied KPT Chinese Drywall, (iii) all named plaintiffs in all Related Actions who, as of December 9, 2011, asserted claims arising from, or otherwise related to, L&W Supplied KPT Chinese Drywall, and (iv) the counsel of all the foregoing;

7.1.2    By providing a copy of the Notice and requesting that it be posted on the Court's Chinese Drywall MDL website; and

7.1.3    As the Court may direct.

7.2    The Notice shall be jointly agreed upon and submitted to the Court together with the motion for preliminary approval.

7.3    The Preliminary Approval Order shall specify the date by which Notice will be provided.

7.4    **Payment for Notice**.  The Knauf Defendants will pay the costs of providing the Notice.

8    **Opt-Out**

8.1    **Opt-Out Period**

8.1.1   Upon close of the L&W Class Notice Period, L&W Class Members will have forty-five (45) days (or such different period as the Court may direct) to opt out of the Settlement in accordance with Section 8.2.  If the Settlement is finally approved by the Court, all L&W Class Members who have not opted out by the end of the forty-five (45) day period will be bound by the Settlement, and the relief provided by the Settlement will be their sole and exclusive remedy for the claims alleged by the L&W Class.

## 8.2   Opt-Out Process

8.2.1   Individual L&W Class Members must request to opt out and must sign any requisite pleading or form.  A pleading or form or any other request made or signed by counsel shall not be sufficient.  An original opt out form signed by the L&W Class Member must be mailed to L&W Class Counsel, Russ M. Herman (Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, New Orleans, Louisiana 70113) and Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106), counsel for USG and L&W, W. David Conner (Haynsworth Sinkler Boyd, P.A., P.O. Box 2048, Greenville, SC 29602), and counsel for the Knauf Defendants, Kerry J. Miller (Frilot LLC, 1100 Poydras Street, Suite 3700, New Orleans, Louisiana 70163).  The opt-out request must be  postmarked within the 45-day period described in Section 8.1.1  L&W Class Counsel shall be obliged to file all opt outs with the Court by a date prior to the Fairness Hearing to be determined by the Court.

8.2.2   This Settlement is an integral part of the Knauf Class Settlement.  An L&W Class Member who participates in the Knauf Class Settlement also must participate in this Settlement.  The Notice shall advise L&W Class Members that they can receive no benefits under the Knauf Class Settlement if they opt out of this Settlement.  Any opt out from this Settlement will be invalid if the L&W Class Member did not timely opt out of the Knauf Class Settlement.

8.2.3   The Parties shall seek an order of the Court compelling mediation of opt-out claims.

## 8.3   Rights With Respect to Opt-Outs

8.3.1   The Parties agree and acknowledge that any opt-out may be detrimental to the Settling Defendants, so that each of them will have a right to terminate

the Settlement on account of the existence of any opt out.

8.3.2   If any L&W Class Members remain as opt outs fourteen (14) days prior to the Fairness Hearing, then each of the Settling Defendants individually has the right, acting at its sole and exclusive discretion and option to terminate the Settlement.  This right to terminate the Settlement must be exercised by written notice to the Court seven (7) days before the Fairness Hearing. If timely exercised, the Settling Defendants' exercise of their rights under this Section shall not be reviewable by the Court.

## 9   **Objections**

9.1   Any L&W Class Member who has any objection to certification of the L&W Class, or to approval of this Settlement or any terms hereof, or to the approval process must make that objection by the following procedure:

9.1.1   The objection must be in writing;

9.1.2   The objection must set forth all objections and the reasons therefore, and a statement whether the L&W Class Member intends to appear at the Certification Hearing or Fairness Hearing either with or without separate counsel.  The objection must identify any witnesses intended to be called, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence, at the Certification Hearing or Fairness Hearing;

9.1.3   The objection must be signed by the individual L&W Class Member and his/her/its counsel; an objection signed by counsel alone shall not be sufficient;

9.1.4   The objection must contain the caption of the Litigation and include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the objecting L&W Class Member; and

9.1.5   The objection must be mailed to L&W Class Counsel, Russ M. Herman (Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, New Orleans, Louisiana 70113) and Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106), counsel for USG and L&W, W. David Conner (Haynsworth Sinkler Boyd, P.A., P.O. Box 2048, Greenville, SC  29602), and counsel for the Knauf Defendants, Kerry J. Miller (Frilot LLC, 1100 Poydras Street, Suite 3700,

New Orleans, Louisiana 70163).  The objection must be postmarked by the date prescribed by the Court.  L&W Class Counsel shall be obliged to file all objections with the Court by a date prior to the Certification Hearing and the Fairness Hearing to be determined by the Court.

9.2     Failure to comply timely and fully with these procedures shall result in the invalidity and dismissal of any objection.  No L&W Class Member shall be entitled to be heard at the Certification Hearing or Fairness Hearing (whether individually or through the objector's counsel), or to object to certification of the L&W Class or to the Settlement, and no written objections or briefs submitted by any L&W Class Member shall be received or considered by the Court at the Certification Hearing or Fairness Hearing, unless written notice of the L&W Class Member's objection and any brief in support of the objection have been filed with the Court and served upon L&W Class Counsel and the Settling Defendants' Counsel not later than twenty (20) days before the date of the Certification Hearing or the Fairness Hearing as appropriate, in accordance with Section 9.1.

9.3     Any L&W Class Member to whom Notice was sent who fail to file and serve timely written objections in accordance with Section 9.1 shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the certification of the L&W Class or to the Settlement.

9.4     The PSC and the Settling Defendants shall file any response to the objections with the Court no later than five (5) days before the date of the Fairness Hearing.

10     **Fairness Hearing**

10.1    Within ten (10) days of the entry of the Preliminary Approval Order, L&W Class Counsel shall request that the Court hold a joint Fairness Hearing with the Fairness Hearing to consider the Knauf Class Settlement.  The Fairness Hearing shall not be held until after the Opt-Out Period has concluded.

10.2    At the Fairness Hearing the Court shall, inter alia, (i) consider any properly filed objections to the Settlement, (ii) determine *de novo* whether the Settlement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith, and (iii) enter the Order and Judgment, including final approval of the L&W Class and Settlement.

11     **Dismissals**

11.1     Within thirty (30) days of the Effective Date:

    11.1.1   The Parties shall jointly submit to the Court a proposed order or orders dismissing with prejudice as to the Settling Defendants (i) all Omni Complaints filed in MDL No. 2047, but only to the extent that they assert claims against the Settling Defendants, and (ii) all Related Actions pending in the Eastern District of Louisiana and/or MDL No. 2047, but only to the extent that they assert claims against the Settling Defendants;

    11.1.2   The members of the PSC shall file motions to dismiss with prejudice all Related Actions against the Settling Defendants by Participating L&W Class Members whom they represent, which are pending in any state court and/or in any federal court outside the Eastern District of Louisiana or MDL 2047, but only to the extent that they assert claims against the Settling Defendants;

    11.1.3   The PSC shall use its best efforts to assist the Settling Defendants in obtaining dismissal with prejudice of any other Related Actions maintained by any Participating L&W Class Member, but only to the extent that they assert claims against the Settling Defendants, whether in state court, federal court or any arbitral forum.

11.2     The dismissal orders, motions or stipulation to implement Section 11.1 shall seek or provide for a dismissal with prejudice, with each Participating L&W Class Member and Settling Defendant bearing its own attorneys' fees and costs, and waiving any rights of appeal.

## 12     **<u>Bar Order</u>**

12.1     As part of the Order and Judgment, the Court shall issue a bar order and permanent injunction against any and all pending or future claims against the Settling Defendants arising from, or otherwise relating to, L&W Supplied KPT Chinese Drywall or drywall manufactured by KPT.

12.2     The bar order and permanent injunction shall:

    12.2.1   Enjoin and forever bar any and all Class Members from commencing and/or maintaining any action, legal or otherwise, against the Settling Defendants arising out of, or otherwise relating to, L&W Supplied KPT Chinese Drywall or drywall manufactured by KPT;

12.2.2 Bar the assertion by any entity or person against the Settling Defendants of any contribution, indemnification, subrogation, or other claims arising out of (i) the Class Members' L&W Supplied KPT Chinese Drywall claims or (ii) this Settlement.

12.3   This provision is not intended to prevent or impede the enforcement of claims or entitlement to benefits under this Settlement.

12.4   As used in this Section 12, "Class Members" includes Class Members as defined in the Knauf Class Settlement and L&W Class Members as defined in this Settlement.

13   **Termination of This Settlement**

13.1   This Settlement shall be terminated and cancelled upon any of the following events:

13.1.1  The Court declines to enter the Preliminary Approval Order;

13.1.2  The Fairness Hearing is not held by the Court;

13.1.3  The Order and Judgment is not entered by the Court, or is reversed by a higher court, or is inconsistent with the terms of the Settlement; or

13.1.4  The Court declines to dismiss the Settling Defendants with prejudice.

13.2   In addition to any other right to terminate under this Settlement, the Settling Defendants may, at their sole and exclusive discretion and option, withdraw from, terminate, and cancel their obligations under this Settlement upon any of the following events:

13.2.1  The Settling Defendants exercise their rights regarding opt-outs pursuant to Section 8.3;

13.2.2  The L&W Class Settlement Notice does not comply with Section 7.1 or with the order of the Court concerning Notice;

13.2.3  The Knauf Class Settlement is terminated or otherwise does not become Final;

13.2.4  The PSC, acting on behalf of the L&W Class or the Class, materially breaches the Settlement and such breach materially frustrates the purposes of this Agreement;

13.2.5  The dismissals as provided in Sections 11.1.1, 11.1.2. and 11.2 do not occur as provided in Section 10;

13.2.6  The bar order and permanent injunction as provided in Section 12.2 are not entered by the Court as provided in Section 12;

13.2.7  This Settlement is changed in any material respect, except by written consent of the Parties.

13.3  Termination of this Settlement shall not affect the Knauf/L&W Agreement, which shall remain in effect regardless of termination of this Settlement.

## 14    **Court to Retain Jurisdiction to Implement and Enforce Settlement**

14.1  Notwithstanding any other provision of this Settlement, the Court shall retain (a) continuing jurisdiction over the Litigation, the L&W Class, the Participating L&W Class Members, and the Settlement for the purposes of administering, supervising, construing and enforcing the Settlement; and (b) continuing and exclusive jurisdiction over (i) the Settlement funds and (ii) the transfer or distribution of same for the benefit of Participating L&W Class Members.

## 15    **Attorneys' Fees Pursuant to Knauf/L&W Agreement**

15.1  Subject to and consistent with any order entered by the Court, the Parties agree that in satisfaction of L&W's obligations to the Knauf Defendants under the Knauf/L&W Agreement, L&W shall pay attorneys' fees and reasonable and appropriate expenses (collectively "Attorneys' Fees") (to be allocated among the PSC, common benefit counsel authorized by and working at the direction of the PSC, L&W Class Counsel and individual retained counsel), the calculation and/or amount of which will be determined by a separate agreement between the PSC, the Knauf Defendants and USG and L&W, which will be submitted to the Court for approval.  In the event that the PSC, the Knauf Defendants and USG and L&W are unable to agree on the calculation and/or amount of Attorneys' Fees within six months of the Effective Date, the dispute will be submitted to the Court for resolution.  In either event, no distribution of Attorneys' Fees will take place without the approval of the Court, and the ruling of the Court regarding Attorneys' Fees shall be non-appealable.

15.2 Any award of attorneys' fees and costs shall be allocated pro rata to each Participating L&W Class Member ("Attorneys' Fees and Costs Allocation").  To satisfy any such award, the Attorneys' Fees and Costs Allocation shall be subtracted from the Cash Payment owed to the Knauf Defendants on behalf of each Participating L&W Class Member under Section 4 of this Agreement.

15.3 For all Approved Claims, L&W's payment of the Attorneys' Fees and Cost Allocation for each Affected Property shall be made on a monthly basis as described in Section 4.1.6.

16 **Representations**

16.1 L&W Class Counsel represent that they have obtained the requisite authority from all members of the PSC to enter this Settlement in a manner that binds each PSC member to its terms.

16.2 The Knauf Defendants represent that they have obtained the requisite authority to enter this Settlement in a manner that binds each of them to its terms.

16.3 L&W and USG represent that they have obtained the requisite authority to enter this Settlement in a manner that binds each of them to its terms.

17 **Miscellaneous**

17.1 The Settling Defendants agree to cooperate with reasonable requests for documents and other information related to continuing litigation against other defendants in the Litigation and Related Actions.

17.2 The Settling Defendants do not admit or concede any liability or damages whatsoever relating to L&W Supplied KPT Chinese Drywall.

17.3 All persons should be on notice of their continuing duty to monitor the Court's docket for the most current filings and information.  The Court, in its discretion, may alter, postpone or amend any of the deadlines scheduled by the Court in connection with the certification of the L&W Class and the approval of this Agreement without additional formal notice.  Orders of any such changes are expected to be presented on the Court's website: http://www.laed.uscourts.gov/Drywall/Drywall.htm.

17.4 Any L&W Class Member (or his or her attorney) who submits false or

intentionally misleading information, through any form of deception, dishonesty or fraud shall be subject to appropriate sanctions (including monetary sanctions and costs).

17.5 This Agreement is the product of arm's length negotiations between the PSC and the Settling Defendants.  Neither the PSC nor the Settling Defendants shall be deemed the drafter of this Agreement or any provision thereof.  No presumption shall be deemed to exist in favor of or against either the PSC or the Settling Defendants as a result of the preparation or negotiation of this Agreement.

17.6 This Agreement shall be governed by, and construed and enforced according with, the substantive laws of the State of Florida without regard to conflict of laws principles.

17.7 This Agreement, including its exhibits, constitutes the entire agreement between the Parties.  The Parties have not received or relied on any agreements or promises other than as contained in writing in this Agreement, including its exhibits.  Prior drafts shall not be used to construe this Agreement.

17.8 This Agreement may not be modified or amended unless such modification or amendment is in writing executed by all Parties.

17.9 This Agreement may be executed in multiple counterparts, all of which taken together constitute one and the same Agreement.

17.10 This Settlement supplements but does not supersede the Knauf/L&W Agreement, which remains in effect.  Nothing in this Settlement is intended to be or shall be construed to alter the Knauf/L&W Settlement, and, in the event of inconsistency, its terms shall control, except that L&W, USG and the Knauf Defendants agree to the calculation and distribution of the Cash Payment and Attorneys' Fees and Costs Allocation as described in Sections 4 and 15 of this Settlement.

## 18    **Federal Rule of Evidence 408**

18.1 The Parties specifically acknowledge, agree and admit that this Settlement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any equivalent rule of evidence of any state, and shall not (i) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation, the

Related Actions, or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, or (ii) be used to establish a waiver of any defense or right, or to establish or contest jurisdiction or venue.

18.2   The Parties also agree that this Settlement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents entered in furtherance of this Settlement, and any acts in the performance of this Settlement are not intended to be, nor shall they in fact be, admissible, discoverable, or relevant in any case or other proceeding against the Settling Defendants (i) to establish grounds for certification of any class involving any L&W Class Member, or (ii) as evidence of any obligation that any Party hereto has or may have to anyone.

18.3   The provisions of this Settlement, and any orders, pleadings or other documents entered in furtherance of this Settlement, may be offered or received in evidence solely (i) to enforce the terms and provisions hereof or thereof, (ii) as may be specifically authorized by a court of competent jurisdiction after an adversary hearing upon application of a Party hereto, (iii) in order to establish payment, or an affirmative defense of exhaustion of insurance coverage or *res judicata* in a Related Action or a subsequent case, (iv) in connection with any motion to enjoin or stay any of the Related Actions, or (v) to obtain Court approval of the Settlement.

IN WITNESS WHEREOF, the Parties have read and understood the terms and conditions of this Settlement, agree to be bound by all of its provisions, and have executed this Settlement on the date shown by their signatures below.

For the Plaintiffs' Steering Committee:

**Witnesses:**

Print Name: Amy Catalanotto

Print Name: BEVERLY JACKSON

**Russ M. Herman**
**Plaintiffs' Liaison Counsel with the full**
**authority and consent of the PSC**

By:

Print Name: RUSS M Herman

Title: Plaintiffs' Liaison Counsel

Date: 3/27/12

Witnesses:

Arnold Levin
Plaintiffs' Lead Counsel with the full
authority and consent of the PSC,
By: _____

_____

Print Name: _____

Print Name: _____

Title: _____

_____

Date: _____

Print Name: _____

For the Knauf Defendants:

Witnesses:

_____

Print Name: _____

_____

Print Name: _____

Witnesses:

_____

Print Name: _____

_____

Print Name: _____

**Knauf Plasterboard (Tianjin) Co., Ltd.**

By: _____

Print Name: _____

Title: _____

Date: _____ 1 7. APR. 2012 _____

**Knauf Plasterboard (Wuhu) Co., Ltd.**

By: _____

Print Name: _____

Title: _____

Date: _____ 1 7. APR. 2012 _____

Witnesses:

_____

Print Name:   S.q.

_____

Print Name: _____

Witnesses:

_____

Print Name:   S.q.

_____

Print Name: _____

Witnesses:

_____

Print Name:   S.q.

_____

Print Name: _____

**Guangdong Knauf New Building Material Products Co., Ltd.**

By: _____

Print Name: _____ S.q. _____

Title: _____ J.q. _____

Date: _____

**Knauf Gips KG**

By: _____

Print Name: _____ S.q. _____

Title: _____ J.q. _____

Date: _____

**Gebr. Knauf Verwaltungsgesellschaft KG**

By: _____

Print Name: _____ S.q. _____

Title: _____ J.q. _____

Date: _____ 1 7. APR. 2012 _____

Witnesses:

_____

Print Name:   s.q.

_____

Print Name:   _____

Witnesses:

_____

Print Name:   s.q.

_____

Print Name:   _____

Witnesses:

_____

Print Name:   s.q. _____

_____

Print Name:   _____

**Knauf International GmbH**

By:   _____

Print Name:   s.q. _____

Title:   s.q. _____

Date:   _____

**Knauf Insulation GmbH**

By:   _____

Print Name:   s.q. _____

Title:   s.q. _____

Date:   _____ 2012

**Knauf UK GmbH**

By:   _____

Print Name:   s.q. _____

Title:   s.q. _____

Date:   1 7. APR. 2012 _____

Witnesses:

Print Name: _____

Print Name: _____

Witnesses:

Print Name: _____

Print Name: _____

Witnesses:

Print Name: _____

Print Name: _____

**Knauf AMF GmbH & Co. KG**

By: _____

Print Name: _____

Title: _____

Date: _____

**Knauf do Brasil Ltda.**

By: _____

Print Name: _____

Title: _____

Date: _____ 1 7 APR. 20__

**PT Knauf Gypsum Indonesia**

By: _____

Print Name: _____

Title: _____

Date: _____ 1 7. APR. 2012

For USG:

Witnesses:

_____

Print Name: _____

**USG Corporation**

By: _____

Print Name: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

For USG:

**Witnesses:**

_____

Print Name: _____

**Knauf AMF GmbH & Co. KG**

By: _____

Print Name: _____

Title: _____

Date: _____

**Knauf do Brasil Ltda.**

By: _____

Print Name: _____

Title: _____

Date: _____

**PT Knauf Gypsum Indonesia**

By: _____

Print Name: _____

Title: _____

Date: _____

**USG Corporation**

By: _Stanley Ferguson_

Print Name: _Stanley Ferguson_

USG/LW

Print Name: _____

Title: _Executive VP and General Counsel_

Date: _16 March 2012_

For L&W:

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**L&W Supply Corporation**

By: _Rob Waterhouse_

Print Name: _Rob Waterhouse_

Title: _Senior VP, Sales and Operations_

Date: _3-16-12_

USG/LW

**Power of Attorney**

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf UK GmbH of Am Bahnhof 7, 97346 Iphofen, Germany, a company incorporated at the Commercial Register of the Landgericht Würzburg under number HRA 3190 (the Company), represented by Mr. Alexander Knauf in his function as Geschäftsführer of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf UK GmbH any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Alexander Knauf
duly authorised for and on
behalf of Knauf UK GmbH

## Power of Attorney

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Guangdong Knauf New Building Material Products Co., Ltd. of No. 2 Xinsha Development Zone RC-523147 Guangdong, a company incorporated in No. 2Administration Zone, Machong Town, Dongguan, Guangdong Province, under business license number 441900400007666 (the Company), represented by Jan Kreibaum in his function as CEO of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Guangdong Knauf New Building Material Products Co., Ltd. any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Jan Kreibaum
duly authorized for and on
behalf of Guangdong Knauf New
Building Material Products Co., Ltd.

## Power of Attorney

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf Plasterboard (Tianjin) Co., Ltd. of North Yinhe Bridge, East Jingjin Road RC-300400 Tianjin, a company incorporated in Beichen Economic Development Zone, Tianjin, under business license number 120000400067520 (the Company), represented by Jan Kreibaum in his function as CEO of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf Plasterboard (Tianjin) Co., Ltd. any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Jan Kreibaum
duly authorized for and on
behalf of Knauf Plasterboard (Tianjin) Co., Ltd.

### Power of Attorney

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf New Building Material (Wuhu) Co., Ltd. of No.2 Gang Wan Road RC-241009 Wuhu Anhui, a company incorporated in Wuhu City, Anhui Province, under business license number 340200400001670 (1-1) (the Company), represented by Jan Kreibaum in his function as CEO of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf New Building Material (Wuhu) Co., Ltd. any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Jan Kreibaum
duly authorized for and on
behalf of Knauf New Building
Material (Wuhu) Co., Ltd.

**Power of Attorney**

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf AMF GmbH & Co. KG of Elsenthal 15 in 94481 Grafenau, Germany, a company incorporated at the Commercial Register of the Landgericht Passau under number HRA 7069 (the Company), represented by Mr. Karl Wenig is his function as Geschäftsführer;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf AMF GmbH & Co. KG any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Karl Wenig
duly authorised for and on
behalf of Knauf AMF GmbH & Co. KG

Knauf AMF GmbH & Co. KG
Elsenthal 15
94481 Grafenau

30.03.2012



## Power of Attorney

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf do Brasil Ltda. of City of Queimados, State of Rio de Janeiro, on Rodovia Presidente Dutra, KM 198,5 Jardim Marajoara, a company incorporated under the Commercial Registration No. 33205820457 (the Company), represented by Günter Leitner in his function as CEO of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf do Brasil Ltda. any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Günter Leitner
duly authorized for and on
behalf of Knauf do Brasil Ltda.

Günter Michael Leitner
Diretor Geral
Knauf do Brasil Ltda.

**Power of Attorney**

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf do Brasil Ltda. of City of Queimados, State of Rio de Janeiro, on Rodovia Presidente Dutra, KM 198,5 Jardim Marajoara, a company incorporated under the Commercial Registration No. 33205820457 (the Company), represented by Günter Leitner in his function as CEO of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf do Brasil Ltda. any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Günter Leitner
duly authorized for and on
behalf of Knauf do Brasil Ltda.

Günter Michael Leitner
Diretor Geral
Knauf do Brasil Ltda.

**Power of Attorney**

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf International GmbH of Am Bahnhof 7, 97346 Iphofen, Germany, a company incorporated at the Commercial Register of the Landgericht Würzburg under number HRA 5956 (the Company), represented by Mr. Grundke and Mr. Binnemann in their function as Geschäftsführer (CEO) of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf International GmbH any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Manfred Grundke
duly authorised for and on
behalf of Knauf International GmbH

**SIGNED** by Edgar Binnemann
duly authorised for and on
behalf of Knauf International GmbH

**Power of Attorney**

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Gebr. Knauf Verwaltungsgesellschaft KG of Am Bahnhof 7, 97346 Iphofen, Germany, a company incorporated at the Commercial Register of the Landgericht Würzburg under number HRA 2771 (the Company), represented by Mr. Grundke and Mr. Binnemann in their function as General Partner of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Gebr. Knauf Verwaltungsgesellschaft KG any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Manfred Grundke
duly authorised for and on
behalf of Gebr. Knauf Verwaltungsgesellschaft KG

**SIGNED** by Edgar Binnemann
duly authorised for and on
behalf of Gebr. Knauf Verwaltungsgesellschaft KG

**Power of Attorney**

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf Gips KG of Am Bahnhof 7, 97346 Iphofen, Germany, a company incorporated at the Commercial Register of the Landgericht Würzburg under number HRA 2754 (the Company), represented by Mr. Grundke and Mr. Binnemann in their function as General Partner of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf Gips KG any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Manfred Grundke
duly authorised for and on
behalf of Knauf Gips KG

**SIGNED** by Edgar Binnemann
duly authorised for and on
behalf of Knauf Gips KG

## Power of Attorney

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by Knauf Insulation GmbH of Am Bahnhof 7, 97346 Iphofen, Germany, a company incorporated at the Commercial Register of the Landgericht Würzburg under number HRA 1014 (the Company), represented by Mr. Michael Anthony Robson in his function as Geschäftsführer of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of Knauf Insulation GmbH any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by Michael Anthony Robson
duly authorised for and on
behalf of Knauf Insulation GmbH



**Power of Attorney**

THIS POWER OF ATTORNEY is made the 30th day of March 2012 by PT Knauf Gypsum Indonesia with its office at Cilandak Commercial Estate, Garden Centre 5th Floor Suite 16 (B) Jl Raya Cilandak Jakarta 12560, a company incorporated with deed No. 7 dated 7 February 2003 before Haji Parlindungan Lumban Tobin, Sarjana Hukum, Notary in Jakarta (the Company), represented by Wayne Studdon in his function as CEO of the Company;

NOW THEREFORE the Company hereby grants to

**Mr. Manfred Grundke**
**Mr. Edgar Binnemann**
**Mr. Hans Peter Ingenillem**
**Mr. Jörg Schanow**
**Mr. Dr. Alexander Schütz**
**Mr. Heinrich Eumann**

in form of joint representation of at least two persons, the power of attorney to act as the true and lawful attorneys in fact (the Attorneys) of the Company with full power in its name and on its behalf to negotiate and to take all such additional steps and execute and sign all such documents, matters acts and things as the Attorneys may think necessary or appropriate for the purpose of entering into and executing on behalf of PT Knauf Gypsum Indonesia any settlement related in any way to any case filed in federal or state court or any unfiled claims arising from or related to the manufacture or sale of drywall in the United States by the Company or any of its affiliates.

**IN WITNESS** whereof this Power of Attorney has been executed by the Company the day and year first above written.

**SIGNED** by  Wayne Studdon
duly authorised for and on
behalf of PT Knauf Gypsum Indonesia