Slip Copy, 2012 WL 715261 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 715261 (C.A.5 (La.)))**

Page 1

Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
NEW ENGLAND INSURANCE COMPANY,
Plaintiff–Appellee
v.
Richard D. BARNETT, Defendant–Appellant.

No. 11–30348.
March 6, 2012.

Ralph S. Hubbard, III, Tina Louise Kappen, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, James J. Hautot, Jr., Judice & Adley, Lafayette, LA, for Plaintiff–Appellee.

Charles M. Rush, Esq., Rush, Rush & Calogero, Lafayette, LA, Lee A. Archer, Esq., Law Office of Lee A. Archer, Lake Charles, LA, for Defendant–Appellant.

Appeal from the United States District Court for the Western District of Louisiana, USDC No. 6:06–CV–555.

Before KING, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[FN*]

[FN*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

*1 After nearly two decades of litigation in state court, Richard Barnett settled his dispute against Ernest Parker, who was insured by New England Insurance Company. Barnett and Parker entered into a settlement and Consent Judgment, to which New England was not a party. New England then brought suit in federal court, seeking a declaration that the Consent Judgment was not enforceable against it. Barnett sought a contrary declaration, and also brought a counterclaim under the Louisiana Direct Action Statute and a bad faith claim. On New England's motions, the district court held that the Consent Judgment was unenforceable against New England, and dismissed Barnett's direct action and bad faith claims. On appeal, we affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1991, Defendant–Appellant Richard Barnett ("Barnett") and his company, Marsh Engineering, Inc., filed suit in Louisiana state court against Ernest Parker ("Parker"), Barnett's former attorney and business partner. The suit alleged that after Barnett began to experience financial problems in February 1986, Parker persuaded Barnett to sign over Barnett's twenty-five percent share in a co-owned company, Campbell Wells. Parker had promised to hold the shares "in trust" as part of an "asset protection" strategy and return them to Barnett at a later date. Instead, Parker retained the shares and later sold them for a large profit. Barnett asserted claims of breach of contract, breach of fiduciary duty, failure of consideration, detrimental reliance, and nullity. Although Barnett initially included fraud allegations, he later amended his complaint to remove such allegations.

Protracted litigation in state court ensued. During this time, Plaintiff–Appellee New England Insurance Company ("New England") agreed to de-

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 715261 (C.A.5 (La.)))**

fend Parker pursuant to a full reservation of rights. Thereafter, in December 1993, Parker filed a third party demand against New England in the state court litigation, requesting that New England be held liable to pay any sums due to Barnett.

This lawsuit came before the Louisiana Third Circuit Court of Appeal on two occasions. First, in *Marsh Engineering, Inc. v. Parker,* 688 So.2d 1042 (La.App. 3d Cir.1996) ("*Marsh I* "), the Louisiana Third Circuit reversed the lower court's dismissal of Barnett's lawsuit. It concluded that Barnett's lawsuit was not barred by a one-year peremptive period for legal malpractice claims that had been established by the 1990 enactment of Louisiana Revised Statute Section 9:5605. *Id.* at 1048. The court reasoned that the peremptive period in Section 9:5605 did not apply retroactively to bar any of Barnett's claims, which had accrued prior to enactment of the statute. Instead, the suit was timely under a ten-year prescriptive period that was applicable before Section 9:5605 was enacted. *Id.* Although a 1992 amendment to Section 9:5605 clearly expressed the legislature's intent to apply Section 9:5605 retroactively, the court concluded that "this declaration came too late to bar Barnett from filing his claims," as his suit was filed in November 1991. *Id.*[FN1] The case was remanded for further proceedings in the trial court.

> FN1. The 1992 amendment provided in part: "with respect to any alleged act ... occurring prior to September 7, 1990, actions must, in all events, be filed ... on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect." LA.REV.STAT. § 9:5605(B).

**\*2** The case returned to the Louisiana Third Circuit in 2003, after Barnett amended his petition to add as defendants New England, the Law Firm of Bean and Parker ("the Law Firm"), the Estate of James Wesley Bean (Parker's former law partner), and Bean's widow and heirs. *Marsh Eng'g, Inc. v. Parker,* 883 So.2d 1119, 1121–22 (La.App. 3d Cir.2004) ("*Marsh II* "). Barnett's amended petition asserted claims of legal malpractice against Parker and Bean, individually, and the Law Firm. Barnett "asserted that both attorneys and the Law Firm breached the standard of care owed him as their client in a number of particulars, including the assertions that neither Parker nor Bean properly disclosed to him the relevant aspects of the [1986] transactions, the alleged conflicts of interest of the Law Firm, or of Barnett's need for independent counsel." *Id.* at 1122. Barnett claimed that the Law Firm, the Estate, and the heirs were solidarily and vicariously liable to him for the legal malpractice of Parker and Bean, and New England was liable to him under the malpractice insurance policy it issued to Parker, Bean, and the Law Firm. *Id.*

New England sought to dismiss all claims against the new defendants, arguing that the claims were perempted under the one-year period established in Louisiana Revised Statute Section 9:5605. The trial court agreed. On appeal, the Third Circuit in *Marsh II* affirmed. It reasoned that Barnett's legal malpractice claims against Bean, the Law Firm, the Estate, the heirs, and New England, which were separate from those claims against Parker, were perempted under the 1992 amendment to Section 9:5605, which established September 7, 1993, as a deadline for the filing of lawsuits based upon events that occurred prior to September 7, 1990. *Id.* at 1125–26. Because Barnett's claims against the new defendants accrued before enactment of Section 9:5606, but his lawsuit was not filed until after the 1992 amendment to Section 9:5605, the court concluded that Section 9:5605 barred Barnett's claims against the new defendants. *Id.* at 1126. Neither side sought review from the Louisiana Supreme Court.

Barnett settled with Parker in 2006. The terms of the settlement called for Parker to pay $100, assign to Barnett his rights against New England, and agree to entry of a Consent Judgment for about $4 million, from which Parker was released from liability beyond $100 (the "Consent Judgment"). The

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 715261 (C.A.5 (La.)))**

Consent Judgment was filed in state court on February 6, 2006, in the amount of $4,024,655.21. New England had attended the settlement conference between Barnett and Parker, but had rebuffed Barnett's proposed $2,000,000 settlement, and instead offered only $200,000. The final settlement between Barnett and Parker was completed without New England's consent.

Soon after the Consent Judgment was entered, New England filed the instant lawsuit in federal court, seeking a declaration that it was not liable to Barnett under the Consent Judgment. Barnett filed a counterclaim in which he sought a declaration of his right to enforce the Consent Judgment against New England and brought claims against New England under Louisiana's Direct Action Statute, LA.REV.STAT. § 22:1269. Barnett later added a bad faith claim, seeking to recover damages in excess of the Consent Judgment.

**\*3** New England filed three separate dispositive motions. The district court granted New England's motion to dismiss Barnett's bad faith claim, and granted summary judgment for New England with respect to Barnett's direct action claim. Finally, the district court concluded that the Consent Judgment was not enforceable against New England. Barnett timely filed a notice of appeal.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007). Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).

This court reviews a district court's dismissal under Rule 12(b)(6) de novo, " 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs.' " *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir.2008) (quoting *Stokes v. Gann,* 498 F.3d 483, 484 (5th Cir.2007)). To survive dismissal pursuant to Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted); *see Cornerstone Christian Schs. v. Univ. Interscholastic League,* 563 F .3d 127, 133 (5th Cir.2009).

## III. DISCUSSION

*A. The Consent Judgment is not Enforceable against New England*

Barnett challenges the district court's conclusion that certain provisions in New England's insurance policy prevent Barnett from enforcing the Consent Judgment. Like the district court, we conclude that these clauses preclude Barnett's enforcement of the Consent Judgment against New England.

New England's insurance policy contains two clauses that are relevant to the enforcement of the Consent Judgment. The first, the "consent to settle" clause, provides:

> The Insured may effect settlement of any claim, the subject of the coverage afforded hereunder within the limits of liability of this policy, with the written consent of the Company, such consent not to be unreasonably withheld. The Insured shall not, except at personal cost, make any payment, admit any liability, assume any obligation, incur any expenses or settle any such claim in the absence of such consent....

Second, the "no action" clause provides:
No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by the written agree-

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 715261 (C.A.5 (La.)))**

ment of the Insured, the claimant, and the Company.

**\*4** In this case, the no action clause precludes Barnett's enforcement of the Consent Judgment, as there was no trial of Barnett's claims, and the Consent Judgment was entered into between Parker and Barnett, without New England as a party. Similarly, the consent to settle clause prevents enforcement of the Consent Judgment because it was entered into without New England's consent, provided that its consent was not unreasonably withheld.

Barnett contends that the no action and consent to settle clauses are against Louisiana public policy, and thus should not be enforced. We, however, find no support for that contention. The two decisions upon which Barnett relies, *Wendling v. Chambliss,* 36 So.3d 333 (La.App. 1 Cir.2010), and *Hebert v. Green,* 311 So.2d 223 (La.1975), addressed such clauses in the context of uninsured motorist cases and are therefore plainly distinguishable. *See Wendling,* 36 So.3d at 336; *Hebert,* 311 So.2d at 229 ("The mandatory uninsured motorist coverage ... may not be thwarted by policy exclusions serving no legitimate purpose. We discern no possible prejudice to State Farm from plaintiffs' settlement with the insured motorist and find no rational justification for the 'consent to settle' clause as applied to this settlement."); *see also Ray v. DeMaggio,* 313 So.2d 251, 253 (La.App.1975) ( "[I]n *Hebert v. Green,* the Supreme Court declared the 'consent to settle' exclusion invalid because it tends to thwart the legislative declaration of public policy as expressed in the mandatory uninsured motorist coverage of [Louisiana law].") (footnote omitted).

The limited case law in this area has in fact concluded that no action and consent to settle clauses are consistent with Louisiana public policy. *See Rosenthal v. Sec. Ins. Grp. of New Haven,* 205 So.2d 816, 818 (La.App.1968); *see also Danrik Constr. Inc. v. Am. Cas. Co. of Reading Pa.,* 314 F. App'x 720, 723–24 (5th Cir.2009) (citing *Rosenthal* and stating that "whether a court will excuse a breach of a consent-to-settle clause depends on the circumstances of the situation"). Louisiana courts have declined to enforce consent to settle and no action clauses only in certain limited situations. One such situation is where the insurer "wrongfully refuses to defend its insured." *Arceneaux v. Amstar Corp.,* 66 So.3d 438, 452 (La.2011); *see Thomas W. Hooley & Sons v. Zurich Gen. Accident & Liab. Ins. Co.,* 103 So.2d 449, 452–53 (La.1958). Another is where the insurer "denies coverage where there is coverage, or unjustifiably delays settlement." *Emile M. Babst Co., Inc. v. Nichols Constr. Corp.,* 488 So.2d 699, 703 (La.App. 1 Cir.1986); *see also Fed. Ins. Co. v. N.H. Ins. Co.,* No. 03–385–C, 2010 WL 28568, at \*4–5 (M.D.La. Jan. 4, 2010) (stating that *Hooley* and *Babst* prevent enforcement of no action clauses where the insurer "unjustifiably delayed settlement ... under circumstances where time was of the essence") (citations and internal quotation marks omitted).

**\*5** This court's decision in *Danrik,* 314 F. App'x 720, is instructive. There, the court considered whether the insured (Danrik) could recover under its insurance policy after it unilaterally settled underlying claims with a third party without the insurer's consent. *Id.* at 721–22. In applying the insurance policy's consent to settle clause, the court explained that the insurer "investigated the claims and attempted to settle them, and [the insured] did not have any immediate risk of losing money if it did not settle." *Id.* at 723. The court then reasoned:

> [W]hether a court will excuse a breach of a consent-to-settle clause depends on the circumstances of the situation. Here, Insurers initially offered a settlement amount, and after the claimants refused it, Danrik unilaterally settled the claims. There was no "time is of the essence" situation similar to that in *Babst* that might excuse Danrik's action. Danrik's suggestion that any attempt to obtain consent would have been useless or futile is unavailing, especially given that Insurers stipulate that they would have paid the amount their expert stated was reasonable and necessary and would not have objected to Danrik

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 715261 (C.A.5 (La.)))**

paying the difference.... Under these facts, Danrik's unilateral decision to settle the underlying claims precludes its ability to recover from Insurers.

   *Id.* at 724.

This case is similar to *Danrik.* New England participated in settlement discussions and offered a settlement of $200,000; New England's settlement offer does not appear objectively unreasonable, and Barnett has not shown it to be. Nor was time of the essence in this case, as Parker was not at risk of losing Barnett as a client at the time. Parker thereafter unilaterally settled with Barnett for only $100, leaving New England exposed to $4,000,000 in liability. New England asserted several defenses to coverage, namely that Parker's conduct did not qualify as "professional services," that the "dishonest acts" exclusion precluded coverage, and that the allegedly wrongful acts took place before the start of the policy period. Although Barnett faults New England for not litigating its proposed policy defenses earlier, New England had no obligation to do so because Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature and nonjusticiable. *See Mossy Motors, Inc. v. Cameras Am., 898 So.2d 602, 607 (La.App. 4 Cir.2005).* New England did not "unjustifiably delay settlement," and indeed even offered a settlement well above the true amount of $100 for which Barnett and Parker eventually settled.FN2 The no action and consent to settle clauses of New England's policy thus preclude enforcement of the Consent Judgment.FN3

   FN2. We do not find that the district court erred by overlooking any genuine issues of material fact in determining whether the Consent Judgment could be enforced. None of the evidence Barnett submitted raised a genuine dispute regarding the applicability of the no action and consent to settle clauses.

   FN3. Barnett also contends that the district court erred because Louisiana law permits enforcement of a consent judgment against a non-consenting insurer if "the insured shows that the settlement is made in good faith, on a reasonable basis, in a reasonable amount and, in the event of a coverage denial, coverage is found to exist." *Arceneaux v. Amstar Corp.,* 969 So.2d 755, 771 (La.App. 4 Cir.2007). *Arceneaux,* however, is inapplicable because it did not involve the enforcement of no action or consent to settle clauses.

We reject Barnett's contention that *res judicata* and the *Rooker–Feldman* doctrine bar New England's attack on the Consent Judgment. In Louisiana, *res judicata* requires, in part, the presence of the same parties to a judgment. LA.REV.STAT. § 13:4231 ("[A] valid and final judgment is conclusive between *the same parties,* except on appeal or other direct review ....") (emphasis added). The Consent Judgment between Barnett and Parker cannot serve as *res judicata* as to New England because New England was not a party to that judgment. *See In re Combustion, Inc.,* 960 F.Supp. 1051, 1054 (W.D.La.1997) ( " *[R]es judicata* requires the presence of the same parties, and the dispute now before the Court involves [an insurer] that was not involved in the consent judgment....").

**\*6** New England's lawsuit also does not encounter any problems under the *Rooker–Feldman* doctrine, which precludes "lower federal courts ... from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis,* 546 U.S. 459, 463 (2006); *see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 416 (1923). The *Rooker–Feldman* doctrine is "confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic In-*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 715261 (C.A.5 (La.)))**

*dus. Corp.,* 544 U.S. 280, 284 (2005). The doctrine is applied only where the claims brought in federal court are "inextricably intertwined" with the challenged state court judgment, such that the federal court "is in essence being called upon to review the state court decision." *Feldman,* 460 U.S. at 482 n. 16; *see also Lance,* 546 U.S. at 464 ("Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker–Feldman* rule.... The doctrine applies only in limited circumstances, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.") (citations and internal quotation marks omitted).

In this case, New England's claims are not "inextricably intertwined" with the challenged state court judgment. New England's declaratory judgment action seeks a determination as to whether the Consent Judgment violates New England's insurance policy, and is therefore unenforceable against it, which is not resolved by the Consent Judgment itself. In determining whether the no action and consent to settle clauses applied, the district court was not required to review the validity of any state court decision. We therefore conclude that the *Rooker–Feldman* doctrine does not bar New England's claim. *See, e.g.,* Cont'l *Cas. Co. v. Hempel,* 4 F. App'x 703, 720–21 (10th Cir.2001) (holding the same on similar facts).

In sum, we conclude that the no action and consent to settle clauses of New England's insurance policy are valid and preclude enforcement of the Consent Judgment against New England.[FN4] The district court properly entered a declaratory judgment in New England's favor.[FN5]

> FN4. Because we conclude that the Consent Judgment is unenforceable, we have no need to consider whether the district court properly concluded that Barnett's recovery under the Consent Judgment, even if enforceable, would be limited to $100.

> FN5. Barnett also contends that the district court erred in failing to recognize that the Consent Judgment is valid and enforceable against New England under *In re Combustion, Inc.,* 960 F.Supp. 1051 (W.D.La.1997), and *Sumrall v. Bickham,* 887 So.2d 73 (La.App. 1 Cir.2004). We conclude that the district court properly rejected Barnett's reliance on these cases, as neither involved enforcement of a consent judgment against a non-settling insurer. Rather, these cases hold that a consent judgment does not bar a lawsuit by the insured's victims under the Louisiana Direct Action Statute. *See In re Combustion,* 960 F.Supp. at 1054; *Sumrall,* 887 So.2d at 76–77, 79–80.

*B. Barnett's Direct Action Claim against New England is Perempted*

The district court dismissed Barnett's direct action claim against New England, reasoning that it was barred by *res judicata* because that claim had been dismissed by the Louisiana Third Circuit Court of Appeal in *Marsh II.* We conclude that Barnett's direct action claim is perempted, and therefore we do not reach the *res judicata* issue.

The Louisiana Direct Action statute allows a tort victim to sue both the insured and its insurer, as a solidary obligor, or the insurer alone, when certain conditions set forth in the statute are met. It provides in part:

**\*7** No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2012 WL 715261 (C.A.5 (La.)))

terms and limits of the policy by the injured person, or his survivors, mentioned in Civil Code Art. 2315.1, or heirs against the insurer.

LA.REV.STAT. § 22:1269(A). The injured person has a direct action against the insurer alone when, *inter alia,* the insured is insolvent. *Id.* § 22:1269(B)(1)(b). The statute "does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured." *Descant v. Adm'rs of Tulane Educ. Fund,* 639 So.2d 246, 249 (La .1994).

The Direct Action Statute "vests the injured third party with the rights at the time of the tort to institute an action directly against the insurer within the terms and limits of the policy." *Haynes v. New Orleans Archdiocesan Cemeteries,* 805 So.2d 320, 323 (La.App. 4 Cir.2001). The injured party thus not need wait until entry of judgment against the insured to file a direct action against the insurer. In calculating the period in which to bring a direct action, Louisiana courts look to the statutory period for the underlying substantive cause of action, here legal malpractice. *See Marsh II,* 883 So.2d at 1127. Under Louisiana law, a legal malpractice action shall be brought "within one year from the date of the alleged act, omission, or neglect...." LA.REV.STAT. § 9:5605(A). Under a 1992 amendment, lawsuits based upon alleged acts that occurred prior to September 7, 1990, must be filed "on or before September 7, 1993, without regard to the date of discovery of the alleged act...." *Id.* § 9:5605(B). The peremptive period established in Section 9:5605 may not be renounced, interrupted, or suspended. LA. CIV.CODE art. 3461; *see Marsh II,* 883 So.2d at 1126.

Barnett's direct action claim against New England is perempted. The direct action claim against New England based upon Parker's negligence accrued before Section 9:5605 became effective, but was filed after the 1992 amendment was enacted. As such, Barnett should have filed his claim against New England no later than September 7, 1993. Barnett did not file his direct action in the federal lawsuit until 2007, after unsuccessfully attempting to bring such a claim in state court in 2003. Moreover, even if Barnett retained the right to file a subsequent direct action against New England after the Consent Judgment was entered, such a claim would also be untimely under Section 9:5605. The Consent Judgment was entered on February 6, 2006, and was not appealed. Barnett did not file his direct action counterclaim in the district court until September 20, 2007, well beyond the one-year peremption period.

**\*8** The fact that Barnett's suit against Parker may not have prescribed does not require a different outcome. As noted above, a peremptive period may not be suspended or interrupted, LA. CIV.CODE art. 3461, and the peremptive period for a direct action claim against New England had long since expired. Barnett's action against Parker did not preserve the claim against New England. The *Marsh II* court in fact rejected the same argument that Barnett now advances here. There, Barnett "assert[ed] that, because the added defendants [including New England] are solidarily liable with Parker for his damages, the timely suit against Parker interrupted prescription as to all the solidary obligors." 883 So.2d at 1125. The court rejected this argument, stating that "the issue before us is one of peremption, not prescription." *Id.* Recognizing that peremption may not be interrupted, the court concluded that "Barnett failed to timely file suit against Bean, the Law Firm, the Estate, the heirs, *and New England for Parker's legal malpractice for his individual acts of legal malpractice,* and we find no error in the trial court's determination that Barnett's suit against ... *New England* for any acts of legal malpractice *by Parker* were perempted." *Id.* at 1126 (emphasis added). No authority supports the conclusion that Barnett's suit against Parker interrupted the peremptive period for Barnett's direct action claim against New England. FN6

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2012 WL 715261 (C.A.5 (La.)))

FN6. Indeed, every case Barnett cites deals with interruption of prescription, not peremption. *See McDermott v. Crown Zellerbach Corp.,* 418 F.2d 598, 602 (5th Cir.1969) ("In Louisiana the insurer and the insured are joint and solidary obligors, and suit against one interrupts *prescription* against the other.") (emphasis added) (footnote omitted); *see also Lehmann v. GE Global Ins. Holding Corp.,* 524 F.3d 621, 626 (5th Cir.2008) ("[W]hen prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors."); *Fletcher v. Schindler Elevator Corp.,* No. 94–4009, 1995 WL 83703, at *2 (E.D.La. Feb. 24, 1995); *Dubuclet v. St. Paul Fire & Marine Ins. Co.,* 647 So.2d 1344, 1347 (La.App. 4 Cir.1994).

We also reject Barnett's contention that New England is barred from asserting the peremption defense. Indeed, the *Marsh II* court expressly held that New England could do so. It explained:

[u]nder the direct action statute, the Legislature did not intend to give the insurer the right to plead defenses which are purely personal between the insured and claimant and in no way growing out of, or connected with, the accident or policy. However, an immunity which denies the plaintiff a cause of action is not personal to an insured and may be invoked by his insurer. A peremptive statute totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced.

883 So.2d at 1127 (citation omitted). Thus, the court concluded that "[t]he peremption statute in the present case creates a defense of no cause of action which is available to New England as the[ ] insurer." *Id.*

Because we conclude that Barnett's direct action claim against New England is perempted, we need not consider whether *Marsh II's* dismissal of Barnett's 2003 direct action claim against New England constitutes *res judicata* with respect to Barnett's newly filed direct action claim in federal court. We hold that the district court properly dismissed Barnett's direct action claim.

*C. The District Court Properly Dismissed Barnett's Bad Faith Claims*

Barnett further contends that the district court incorrectly dismissed his claim that New England breached its duty of good faith and fair dealing by repeatedly refusing to settle or adjust Barnett's claim against Parker. Barnett contends that the district court erred in requiring an "adjudicated excess judgment" for such a claim to proceed. We find no error in the district court's decision, and therefore affirm.

**\*9** Under Louisiana law, "[a]n insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." LA.REV.STAT. § 22:1973(A). Further, an insurer is obligated to pay penalties and attorney's fees for its arbitrary and capricious failure to pay a claim within 30 days. *Id.* § 22:1892(B). The proscribed conduct under Sections 22:1892 and 22:1973 is "virtually identical," and both sections prohibit an insurer's "failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause." *Talbert v. State Farm Fire & Cas. Ins. Co.,* 971 So.2d 1206, 1211 (La.App. 4 Cir.2007). "In the absence of bad faith, a liability insurer is free to settle or to litigate at its own discretion, without liability to its insured for a judgment in excess of the policy limits." *Smith v. Audubon Ins. Co.,* 679 So.2d 372, 376 (La.1996). Conversely, an insurer may be liable for an excess judgment against the insured if its refusal to settle within policy limits is found to be arbitrary or in bad faith. *Keith v. Comco Ins. Co.,* 574 So.2d 1270, 1277 (La.App. 2 Cir.1991).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 715261 (C.A.5 (La.)))**

Courts have consistently concluded that an insurer cannot be liable for a bad faith failure to settle claim in the absence of an adjudicated excess judgment. In *Ragas v. MGA Insurance Co.,* No. 96–2263, 1997 WL 79357 (E.D.La. Feb. 21, 1997), the court considered whether a bad faith action required an "adjudicated" excess judgment, or whether a consent judgment between the plaintiff and the insured sufficed. *Id.* at *2. Making an *Erie* guess, the court held that "the Louisiana Supreme Court would ... find that in a bad faith failure to settle action, the underlying excess judgment against the insured must be *adjudicated*," because without such a requirement, a plaintiff could "engage in collusion with the insured to fix and perhaps bootstrap damages, without ever having a judge or jury determine the amount of those damages." *Id.* Furthermore, "[i]t would also create in the insured the ability to escape all liability for his own wrongdoing while imposing on the insurer (who neither participated nor consented to the Consent Judgment) unsupported liability." *Id.*

Both this court and the Louisiana First Circuit Court of Appeal have agreed with *Ragas.* See *Louque v. Allstate Ins. Co.,* 314 F.3d 776, 783 (5th Cir.2002) (holding that plaintiff could not state a claim for breach of fiduciary obligations, as she had "neither an 'adjudicated excess judgment' nor even any claim that Allstate's decision to go to trial exposed her to excess liability"); *Mathies v. Blanchard,* 959 So.2d 986, 988–89 (La.App. 1 Cir.2007) ("[A] ... cause of action ... based on an insurer's bad faith failure to settle a claim ..., does not arise until the entry of a judgment against the insured in excess of the policy limits. It is the entry of the judgment on the principal demand in excess of the policy limits that harms the insured and gives rise to the right to enforce the cause of action for damages.").

**\*10** Barnett contends that even if an adjudicated excess judgment is required for a bad faith claim, dismissal was premature, as Parker's liability remains to be tried and there is still a possibility of such a judgment. We disagree. As noted above, Parker and Barnett settled all claims against Parker in exchange for an assignment of any claims that Parker had against New England and $100. Under the settlement, Parker had "no personal obligation to fund the payment of any amount to plaintiff other than [$100] and [Barnett] will not execute on any judgment against Parker." As such, there is no possibility of an adjudicated excess judgment against Parker in this case.

Finally, Barnett contends that the district court failed to recognize that he could assert a bad faith claim against New England for its failure to pay the settlement in the Consent Judgment, in violation of Louisiana Revised Statute Sections 22:1973(B)(2) and (B)(5). Barnett seeks to assert such claims in his individual capacity and as assignee of Parker's rights under the Consent Judgment. We conclude that such claims are foreclosed by Louisiana Supreme Court precedent.

Under Section 22:1973(B)(5), an insurer breaches its duty of good faith and fair dealing if it knowingly "[fails] to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." LA.REV.STAT. § 22:1973(B)(5). Barnett's claim under subsection (B)(5) fails, however, because "[t]he jurisprudence has consistently held that a third party claimant ... is not a person insured by the contract for purposes of [subsection] (B)(5)." *Langsford v. Flattman,* 864 So.2d 149, 151 (La.2004). Even proceeding in his capacity as Parker's assignee, Barnett cannot assert a bad faith claim under subsection (B)(5) because Parker never asserted such a claim against New England in his third party demand. "Under Louisiana law, a right to recover from another, whether it is a debt, an account receivable, a judgment, or a cause of action, may be sold or assigned to a third party. However, a *mere dispute* may not be.... Once a dispute has developed into an actual lawsuit with a contestation or denial of liability by the defend-

Slip Copy, 2012 WL 715261 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 715261 (C.A.5 (La.)))**

ant, however, it becomes a litigious right. Such a litigious right is freely assignable." *Parich v. State Farm Mut. Auto. Ins. Co.,* 919 F.2d 906, 917 n. 3 (5th Cir.1990) (emphasis added) (citations omitted); *see also King v. Ill. Nat'l Ins. Co.,* 986 So.2d 839, 842 (La.App. 2 Cir.2008), *aff'd* 9 So.3d 780 (La.2009) (disagreeing with the reasoning of *Parich,* but holding that "[a] cause of action on which suit has not yet been filed is strictly personal and not transferable"). As Parker assigned his rights to Barnett through the Consent Judgment, he could not assign his right to bring a future bad faith claim.

**\*11** Additionally, we conclude that Barnett's asserted claim under subsection (B)(2) fails because New England was not a party to the Consent Judgment. Under the statute, an insurer has the "affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both," and an insurer's failure "to pay a settlement within thirty days after an agreement is reduced to writing," constitutes a breach of this duty. LA.REV.STAT. § 22:1973(A), (B)(2). Subsection (B)(2) has been applied where an insurance company failed to pay a settlement to which it consented. *See Sultana Corp. v. Jewelers Mut. Ins. Co.,* 860 So.2d 1112, 1117 (La .2003) (subsection (B)(2) is violated where insured and insurance company entered into settlement, but insurer delayed payment for 41 days). We have located no authority, nor has Barnett directed us to any, that has applied subsection (B)(2) where the insurance company was not itself a party to the settlement agreement.

In light of the foregoing, we conclude that the district court properly dismissed Barnett's bad faith claim against New England.

### IV. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

C.A.5 (La.),2012.
New England Ins. Co. v. Barnett
Slip Copy, 2012 WL 715261 (C.A.5 (La.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.