# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al., Case No. 2:09-cv-6687 (E.D. La.) | JUDGE FALLON MAG. JUDGE WILKINSON |

**THE PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO TAISHAN GYPSUM CO. LTD.'S RENEWED MOTION TO VACATE THE DEFAULT JUDGMENT AND DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ................................................................ 1

II.  PROCEDURAL HISTORY ................................................ 2

    A.  The *Germano* Class Action, Bellwether Trial
    and Default Judgment Against Taishan ........................ 2

    B.  Taishan's Appeal to the Fifth Circuit Court of Appeals
    and Motion to Vacate Default Judgment ...................... 4

III.  ARGUMENT ................................................................... 7

    A.  Personal Jurisdiction is Properly Asserted Upon Taishan ........ 7

        1.  *The Threshold Choice of Law Analysis* ........................ 7

    B.  Personal Jurisdiction Over Taishan Requires an Analysis
    of the Virginia Long-Arm Statute as Delimited by the Due
    Process Clause ............................................................ 8

        1.  *Taishan is Subject to Personal Jurisdiction Under*
        *Virginia's Long-Arm Statute* .................................. 8

        2.  *Taishan is Subject to Personal Jurisdiction under the*
        *Due Process Clause* ............................................... 11

    C.  This Court Correctly Ruled that Jurisdiction Over Taishan
    Was Accomplished by Proper Service of the First Amended
    Complaint .................................................................. 14

    D.  Taishan Is Not Entitled to Dismissal of this Action on the
    Grounds That Plaintiffs Allegedly Failed to State a Claim
    under the Virginia Consumer Protection Act ..................... 19

    E.  Taishan Has Not Shown Excusable Neglect ..................... 20

IV.  CONCLUSION ................................................................. 22

# TABLE OF CITATIONS

**Page(s)**

*Annunciation v. W. Capital Fin. Svcs. Corp.*, 1996 WL 534049
(9th Cir. Sept. 19, 1996)...................................................................... 18

*Azzure Denim, LLC v. E&J Lawrence Corp.*, 69 Va.Cir. 485, 2006 WL306891
(Va. Cir. Ct. 2006)............................................................................... 10

*Bank of La. v. Sungard Availability Svcs., L.P.*, 2010 WL 1189496
(5th Cir. Mar. 29, 2010)....................................................................... 5

*Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp.
2d 483 (E.D.Va. 2003)......................................................................... 13

*Ben Sager Chemicals Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805
(7th Cir. 1977)..................................................................................... 20

*Bhatia v. Dischino*, 2011 WL 3820825 (N.D. Tex. Aug. 29, 2011)...................... 8

*Devlin v. Scardelletti*, 536 U.S. 1 (2002)................................................. 17

*DiVito v. Fidelity and Deposit Co. of Maryland*, 361 F.2d 936 (7th Cir. 1966)....... 20

*In re Chinese-Manufactured Drywall Products Liab. Litig.*, 706 F. Supp.
2d 655 (E.D. La. 2010)......................................................................... passim

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 767 F. Supp.
2d 649 (E.D. La. 2011)......................................................................... 8

*In re General American Life Ins. Co. Sales Practice Litigation*,
391 F.3d 907 (8th Cir. 2004).................................................................. 7

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 86 F. Supp. 2d 481
(E.D. Pa. 2000)................................................................................... 8

*In re Korean Airlines Disaster of September 1, 1983*, 829 F.2d 1171
(D.C. Cir. 1987)................................................................................... 8

*In re Managed Care Litigation*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003)................ 7

*In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480 (D. Del. 2001)............................ 8

*James v. Claiborne*, 2009 WL 994951 (W.D. La. Apr. 13, 2009)......................... 17

*John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736,
   180 S.E.2d 664 (Va. 1971)................................................................................ 10

*Johnson v. Potter*, 364 Fed. Appx. 159, 2010 WL 454718  (5th Cir. 2010)............ 20

*Kira, Inc. v. All Star Maint., Inc.*, 294 Fed. Appx. 139 (5th Cir. 2008).................. 5

*Lopez v. NTI, LLC*, 2008 WL 5120542 (D. Md. Dec. 4, 2008).............................. 17

*Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006)........................... 13

*Menowitz v. Brown*, 991 F.2d 36 (2nd Cir. 1993)....................................................... 7, 13

*Nan Ya Plastics Corp. v. DeSantis*, 377 S.E.2d 388 (Va. 1989)............................. 10

*Nuovo Pignone, SpA v. Storman Asia, M/V*, 310 F.3d 374 (5th Cir. 2002)............. 13

*Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315,
   512 S.E.2d 560 (Va. 1999)................................................................................ 10, 11

*Point Landing Inc. v. Omni Capital Int'l Ltd.*, 795 F.2d 415 (5th Cir. 1986),
   *aff'd sub. nom., Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co.*,
   484 U.S. 97 (1987)............................................................................................ 8

*Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519 (5th Cir. 2002).................. 5

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)........................................................... 10

*S.E.C. v. Funding Resource Group*, 233 F.3d 575 (5th Cir. 2000)......................... 16

*United States v. $670,706.55*, 367 Fed. Appx. 532 (5th Cir. 2010)........................ 20

*Van Dusen v. Barrak*, 376 US 612 (1964)................................................................ 7

**STATUES, RULES AND REGULATIONS**

28 USC §1407................................................................................ 9

29 U.S.C. §216(b)........................................................................ 17

Va. Code § 59.1-204 (B)............................................................ 4

Va. Code Ann. § 8.01-328.1...................................................... 9

Va. Code Ann. § 8.01-328.1(A)(2).......................................... 11

Va. Code Ann. § 8.01-328.1(A)(4) & (5)................................. 11

Fed.R.Civ.P. 4.............................................................................. 2, 20

Fed.R.Civ.P. 5(a)(2)................................................................... 7, 16, 17

Fed.R.Civ.P. 12(b)(2)................................................................. 6

Fed.R.Civ.P. 24(c)....................................................................... 7, 16

Fed. R. Civ. P. 55(c).................................................................. 6

Fed. R. Civ. P. 60(b).................................................................. 6

Fed. R. Civ. P. 60(b)(1)............................................................. 20

Fed. R. Civ. P. 62.1.................................................................... 6

**OTHER AUTHORITIES**

7C Wright, Miller, Kane, *Federal Practice and Procedure* §1914......................... 16

## I.    **INTRODUCTION**

After selling more than 85.99 million square feet of Chinese Drywall, valued at more than $8.5 million, to customers in the United States, including Virginia, Florida, Louisiana, California, New York, North Carolina, and other states, Taishan contends that it did not intend to subject itself to personal jurisdiction in the United States, or, more precisely for this action, in Virginia.  As detailed in the Plaintiffs' Steering Committee's Global Statement of Facts and Global Memorandum of Law In Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in Germano and Mitchell and (2) Taishan's Motions to Dismiss the Complaints in Gross and Wiltz (which are incorporated herein by reference and hereafter referred to as "PSC Global SOF" and "PSC Global MOL," respectively), Taishan's sales of more than 7 million square feet of drywall and related products to Venture Supply, Inc. ("Venture Supply") in Virginia were not some isolated event over which Taishan had no knowledge or control.  Rather, Taishan specifically targeted the United States, and Virginia, in particular, for marketing its drywall and related products to fill the demand for building supplies created by historical events.

The sum of all of Taishan's activities and contacts pertaining to the sale of Taishan's problematic drywall in Virginia, as well as in other parts of the United States, permit the exercise of jurisdiction over Taishan in these proceedings.  Taishan would like to avoid this suit by suggesting that "Taishan's two sales [of hundreds of thousands of sheets of drywall] to Venture Supply . . . are the only sales of drywall Taishan has made to any customer based in the United States."[1]  This simply is not the case.  Overwhelmingly, the evidence demonstrates that Taishan targeted the United States, and Virginia in particular, to sell its Chinese Drywall and other building products.

---

[1] *See* Declaration of Jia Tongchun ("Jia Decl."), ¶ 38.

1

In any event, even if Taishan's targeted efforts to sell approximately $565,000 worth of drywall, comprising 153,912 sheets or approximately 7.4 million square feet of drywall (enough to build over 800 homes at 2,500 sq.ft. each) in Virginia[2] are the result of only two sales in that state, under the law Taishan can be held to answer for its actions here before this Court.[3]

In addition to challenging personal jurisdiction, Taishan reprises its arguments for vacating the default judgment that this Court properly entered against the defendant. In light of the notice Taishan had of this litigation through proper service upon it under Fed.R.Civ.P. 4 and the Hague Convention, Taishan's exceptions reverberate with the same recriminations, exaggerations, and flawed analysis as previously posited. These same arguments have already been determined to be unfounded by this Court. The same result should therefore apply.

For all of the reasons set forth in this memorandum and the PSC Global SOF and the PSC Global MOL, Taishan's renewed motion to vacate the default judgment in *Germano* and dismiss the complaint for lack of personal jurisdiction should be denied.

## II.   **PROCEDURAL HISTORY**

### A.   **The *Germano* Class Action, Bellwether Trial and Default Judgment Against Taishan.**

The above-captioned *Germano* action began three years ago on May 1, 2009, when Plaintiffs filed a class action suit in the United States District Court for the Eastern District of Virginia on behalf of themselves and all other similarly situated owners and tenants alleging damages from Chinese-manufactured drywall installed in their homes. *In re Chinese-*

---

[2] *See* Chart summarizing Taishan's sales of drywall in the United States, by State. Ex. 1 to Affidavit of Russ M. Herman dated 5/8/2012 ("Herman Aff.").

[3] TG sold the subject drywall directly to Venture Supply. To the extent other Plaintiffs in Virginia received products from TG's wholly-owned subsidiary TTP (*see Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 11-cv-1673 (E.D. La.), which is the protective action filed by the PSC on behalf of Virginia Plaintiffs), Plaintiffs contend that the corporate veil may be pierced. *See* PSC Global MOL at Section II.B.

*Manufactured Drywall Products Liab. Litig.*, 706 F. Supp. 2d 655, 659 (E.D. La. 2010). Plaintiffs sued Taishan as the manufacturer of the problematic Chinese Drywall installed in Plaintiffs' homes, importer and distributor-Tobin Trading, Inc., Venture Supply, builder-Harbor Walk Development, LLC and installer-Porter/Blaine Corporation. *Id.* On May 26, 2009, Plaintiffs filed a First Amended Complaint against these Defendants. *Id.* Service of this Complaint was perfected on August 3, 2009, in China on Taishan. *Id.* Thereafter, on October 13, 2009, the case was transferred to the Eastern District of Louisiana and consolidated with MDL 2047. *Id.*

On October 30, 2009, Plaintiffs filed a motion to expand the class definition, as it pertained to Taishan, from a Virginia state class to a national class.[4] The Court granted this motion,[5] and Plaintiffs thereafter filed a Second Amended Complaint.[6] Because Taishan failed to timely respond to the First Amended Complaint or enter its appearance, on November 20, 2009, this Court entered a preliminary default judgment against the company. *See Chinese Drywall*, 706 F. Supp. 2d at 659.

The Court then scheduled an evidentiary hearing that was intended to serve as a bellwether trial to ascertain the scope and extent of appropriate remediation in Plaintiffs' homes. *Id.* at 659, 689-90. The Court permitted interested parties to intervene in the litigation. *Id.* at 659. Defendants KPT and The Mitchell Company, Inc. ("Mitchell") intervened in the case. In addition, the following fourteen individual plaintiff homeowners (comprising seven married couples) entered the litigation as Intervening-Plaintiffs: Deborah and William Morgan, Jerry and Inez Baldwin, Joe and Cathy Leach, Robert and Lisa Orlando, Fred and Vanessa Michaux,

---

[4] Rec. Doc. No. 396.

[5] Rec. Doc. No. 469.

[6] Rec. Doc. No. 470.

3

Preston and Rachel McKellar, and Steven and Elizabeth Heischober. *Id.* The litigating parties engaged in vigorous and contested pretrial discovery: they exchanged documents, took depositions, designated experts, exchanged expert reports, and filed numerous *Daubert* and *in limine* motions. *Id.* at 660.

On the eve of trial, Intervenors KPT and Mitchell withdrew from the case. *Id.* The Intervening-Plaintiffs nevertheless presented their claims to the Court at a non-jury evidentiary hearing on February 19 and 22, 2010. After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis regarding the effects of Chinese Drywall installed in Plaintiffs' homes, this Court made numerous and detailed findings of fact and conclusions of law regarding the appropriate scope and reasonable costs of remediation and other damages. The Court found that Chinese Drywall defective and "has to be remediated."[7]

On May 11, 2010, the Court entered a default judgment against Taishan and in favor of the Intervening-Plaintiffs in the amount of $2,758,356.20.[8] The Court also permitted Intervening Plaintiffs' Counsel to file a petition for fees and costs on or before May 24, 2010, in anticipation of an award of attorneys' fees and court costs pursuant to Va. Code § 59.1-204 (B).[9]

**B.      Taishan's Appeal to the Fifth Circuit Court of Appeals and Motion to Vacate Default Judgment.**

After remaining silent and sitting on the sidelines for over a year, on June 10, 2010, Taishan finally entered an appearance in this case.[10] Immediately thereafter, Taishan appealed

---

[7] *Germano*, 706 F. Supp. 2d at 671.

[8] Rec. Doc. No. 3013.

[9] Rec. Doc. No. 3013 at 3.

[10] Rec. Doc. No. 3669.

4

the Court's default judgment against it to the Fifth Circuit Court of Appeals.[11]

A few weeks later on July 2, 2010, Taishan filed an opposition to Intervening Plaintiffs' Counsel's Petition for Fees and Costs in *Germano*.[12] Therein, Taishan argued that this Court lacked jurisdiction to award attorneys' fees since Plaintiffs allegedly did not properly serve Taishan with the Second Amended Complaint and Intervening-Plaintiffs did not serve the company with their motion to intervene. *Id.*, Memo. in Opp. at 3-4. The Court disagreed with Taishan, ruling that because "it is undisputed that the First Amended Complaint was properly served upon Taishan" and because the motion to intervene and the Second Amended Complaint "did not assert any new claims for relief against Taishan[,]" the Court had sufficient jurisdiction over Taishan to rule on fees.[13]

Unsatisfied with the Court's ruling, on September 3, 2010, Taishan filed a motion to vacate the default judgment and dismiss this action for lack of personal jurisdiction.[14] The Court effectively and summarily denied Taishan's motion on the grounds that it lacked jurisdiction over this matter in light of the pending appeal to the Fifth Circuit.[15] Taishan conceded that the Court was correct to deny its motion.[16]

---

[11] Rec. Doc. No. 3670; 5th Cir. Dkt. 10-30568.

[12] Rec. Doc. No. 4307.

[13] Rec. Doc. No. 4872 at 6-7. The Court held that Taishan's Notice of Appeal did not divest it of jurisdiction to determine attorneys' fees and costs, *citing, Bank of La. v. Sungard Availability Svcs., L.P.*, 2010 WL 1189496, at *1 (5th Cir. Mar. 29, 2010); *Kira, Inc. v. All Star Maint., Inc.*, 294 Fed. Appx. 139, at **2 (5th Cir. 2008); *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 524-25 (5th Cir. 2002). *Id.* at 3 n.2.

[14] Rec. Doc. No. 5436.

[15] Rec. Doc. No. 5504.

[16] *See* Transcript of Status Conference, 10/14/10, attached hereto as Exhibit "A," at pp. 19:22-20:1.

Persistent in its course to escape this litigation, one week later on September 10, 2010, Taishan filed another similarly styled motion pursuant to Rules 12(b)(2), 55(c), 60(b) and 62.1 of the Federal Rules of Civil Procedure ("Rule 62.1 motion"), seeking to have this Court (i) state that it would grant Taishan's motion to vacate both the default judgment and the preliminary default judgment if the Court of Appeals remanded the case and (ii) upon remand, dismiss the action for lack of personal jurisdiction and because Taishan allegedly was not properly served with the Second Amended Complaint or the motion to intervene.[17]  Despite the fact that Taishan ignored the First Amended Class Action Complaint, sat back, did nothing and waited for over a year, during which time a preliminary default judgment and then a final default judgment were entered against it, Taishan argued for the first time in its Rule 62.1 motion that because it is a Chinese company, it has no business defending claims in the United States arising from the drywall it manufactured in China.

The Court granted Taishan's Rule 62.1 motion, in part, ruling that it "raise[d] a substantial issue that would benefit from additional consideration prior to determination of the appeal [] pending before the United States Fifth Circuit Court of Appeal[s]."[18]  The Court also ruled, however, that "[a]lthough the Motion raise[d] a substantial issue, the Court fully retains the right to either grant or deny the Motion, should the case be remanded, based upon the ultimate merits of the Motion."  *Id.*

Taishan thereafter submitted to the Fifth Circuit a Notification of Substantial Issue

---

[17]  Rec. Doc. No. 5515.  Despite proper service of the First Amended Complaint on Taishan and Taishan's feigned ignorance of that complaint, the PSC nevertheless underwent the time-consuming and expensive process of serving the Second Amended Complaint upon Taishan pursuant to the Hague Convention.  The Complaint was translated and submitted to the central authority in China responsible for serving the defendant.  *See* Proof of Service on Taishan (original, attestation and English translation), attached hereto as Exhibit "B."

[18]  Rec. Doc. No. 6101 at 1.

Pursuant to FRAP 12.1 and Unopposed Motion to Remand.  On November 17, 2010, the Fifth Circuit Court of Appeals granted a limited remand of the appeal so that this Court could decide whether there is jurisdiction over Taishan in this matter.[19]

## III.   ARGUMENT

Taishan's renewed motion to vacate the default judgment is based on five separate arguments:  (1) that personal jurisdiction is lacking because Taishan does not have the requisite minimum contacts with Virginia, where the original complaint was filed; (2) that the Intervening-Plaintiffs did not properly serve their motion to intervene on Taishan pursuant to Fed. R. Civ. P. 5(a)(2) and 24(c); (3) that Taishan was not served with the Second Amended Complaint, on which the default judgment was purportedly based; (4) that the default judgment cannot stand to the extent that Plaintiffs failed to state a claim under the Virginia Consumer Protection Act; and (5) that Taishan's failure to timely respond to the First Amended Complaint is excusable.  As set forth below as well as for those reasons set forth in the PSC Global SOF and the PSC Global MOL, each of these arguments lacks merit, warranting denial of Taishan's motion.

### A.   Personal Jurisdiction is Properly Asserted Upon Taishan

#### 1.   *The Threshold Choice of Law Analysis*

As the transferee court in this MDL proceeding, this Court follows a prescribed analysis attending the choice of law for actions subject to transfer here.  For diversity actions originally filed in another jurisdiction, the state law of the transferor jurisdiction in which the case was originally filed applies.  *Van Dusen v. Barrak*, 376 US 612(1964).  *In re General American Life Ins. Co. Sales Practice Litigation*, 391 F.3d 907, 911 (8th Cir. 2004); *In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1297 (S.D. Fla. 2003).  The transferee court, however, applies the federal law of the Circuit Court in which the transferee court resides.  *Menowitz v. Brown*,

---

[19] 5th Cir. Dkt. 10-30568, Doc. #00511296381.

991 F.2d 36, 40 (2nd Cir. 1993). *See In re Korean Airlines Disaster of September 1, 1983*, 829

F.2d 1171, 1175 (D.C. Cir. 1987); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 86 F. Supp. 2d

481, 484 (E.D. Pa. 2000); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 501 (D. Del. 2001);

*Bhatia v. Dischino*, 2011 WL 3820825, *5 (N.D. Tex. Aug. 29, 2011). As this Court explained

earlier in this litigation, "[i]t appears to be reasonably well established, given the plethora of

cases on the point, that in actions in which a federal court would be guided or governed by state

law, the transferee court is bound to apply the law that the transferor court would follow . . . . in

cases involving federal questions, the transferee court follows the interpretation of federal law

that has been established by its own court of appeals." *In re Chinese-Manufactured Drywall*

*Prod. Liab. Litig.*, 767 F. Supp. 2d 649, 656 n.2 (E.D. La. 2011) (citations omitted).

In this case, the Germano plaintiffs filed their class action against the defendants in the

Eastern District of Virginia. Thus, when considering personal jurisdiction over Taishan, this

Court must apply Virginia's long-arm statute and the Due Process Clause of the United States

Constitution. Obviously, interpretation of Virginia's long-arm statute requires application of

Virginia law. Less obvious, however, and contrary to Taishan's analysis, this Court's

interpretation of the Due Process Clause is informed by the law of the Fifth Circuit. *Id.*

**B.     Personal Jurisdiction Over Taishan Requires an Analysis
         of the Virginia Long-Arm Statute as Delimited by the Due
         Process Clause.**

**1.     *Taishan is Subject to Personal Jurisdiction Under
         Virginia's Long-Arm Statute***

A federal court may assert jurisdiction over a defendant who is subject to the jurisdiction

of the court of the state in which the court sits. *Point Landing Inc. v. Omni Capital Int'l Ltd.*,

795 F.2d 415, 427 (5th Cir. 1986) ("absent specific congressional authority, a federal district court

has no personal jurisdiction over a defendant who cannot be reached by the long-arm statute of

the state in which the district court sits."), *aff'd sub. nom., Omni Capital Int'l, Ltd. v. Rudolph*

*Wolff & Co.*, 484 U.S. 97 (1987).  Because this is an MDL proceeding that was transferred

pursuant to 28 USC §1407 from a Virginia federal court, this Court must look to Virginia's long-

arm statute to determine whether jurisdiction can be asserted.

Under Virginia law, a court can exercise jurisdiction over a foreign defendant under

Virginia's long-arm statute to the furthest extent permitted by the Due Process clause.  Virginia's

long-arm statute provides:

> A.  A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> 1.  Transacting any business in this Commonwealth;
>
> 2.  Contracting to supply services or things in this Commonwealth;
>
> 3.  Causing tortious injury by an act or omission in this Commonwealth;
>
> 4.  Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;
>
> 5.  Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably have expected such person to use, consume, or be affected by the goods in this Commonwealth, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;
>
> ***

Va. Code Ann. § 8.01-328.1

When interpreting Virginia's long-arm statute, the Virginia Supreme Court has found that

"the purpose of Virginia's long arm statute is to assert jurisdiction over non-residents who engage in purposeful activity in this State to the extent permissible under the due process clause." *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319, 512 S.E.2d 560 (Va. 1999). *See also John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664 (Va. 1971) ("It is a manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over non-residents who engage in some purposeful activity in this state to the extent permissible under the Due Process Clause.")

Virginia's long-arm statute is "a single act statute requiring only one transaction in Virginia to confer jurisdiction on [its] courts." *Peninsula Cruise*, 257 Va. at 320. "Because the statute's scope is co-extensive with constitutional due process, in reviewing trial court decisions the Virginia Supreme Court typically does not bifurcate its analysis of the jurisdictional issue." *Azzure Denim, LLC v. E&J Lawrence Corp.*, 69 Va.Cir. 485, 2006 WL306891, *3 (Va. Cir. Ct. 2006) (Court found jurisdiction appropriate over a foreign corporation when contract to provide goods and services were provided "FOB New York" with a Virginia company where the contract was negotiated over the phone with Virginia company). *See also Nan Ya Plastics Corp. v. DeSantis*, 377 S.E. 2d 388, 390-91 (Va. 1989) (Supreme Court of Virginia found personal jurisdiction over a Texas corporation that never physically conducted business in Virginia but negotiated an employment contract with a Virginia resident over the phone and through letters.).

Due to the extensive reach of Virginia's long-arm statute, this Court is not obliged to analyze whether Taishan is subject to jurisdiction under the statute itself. *Azzure Denim, supra.*[20] Nevertheless, Taishan is plainly subject to personal jurisdiction in Virginia under the statute. Taishan entered multiple contracts with Venture Supply (the initial contract being executed in

---

[20] When a state's long-arm statute reaches to the constitutional limit, the court need only ask if exercising jurisdiction over the defendant would offend Due Process and the jurisdictional analysis under the Federal Constitution. *Revell v. Lidov*, 317 F.3d 467, 469-70 (5th Cir. 2002).

Virginia), both of which related to transactions involving hundreds of thousands of dollars, and thousands of sheets of defective drywall.[21]  Both contracts involved enough defective drywall to load the hulls of two ocean-going vessels and build over 800 homes in Virginia.[22]  In addition to drywall, Taishan separately invoiced and sold plywood pallets to Venture Supply on two occasions.[23]  The value of these contracts for pallets exceeded **$50,000.00**.[24]  Plainly, Taishan "contract[ed] to supply . . . things" in Virginia, Va. Code Ann. § 8.01-328.1(A)(2), and tortiously injured Virginia homeowners and breached implied warranties in the course of deriving substantial revenues from goods used in the Commonwealth, Va. Code Ann. § 8.01-328.1(A)(4) & (5).[25]  Under any reasonable interpretation of Virginia's long-arm statute, Taishan is subject to personal jurisdiction in Virginia.  *See Peninsula Cruise, supra*; *Azzure Denim, supra*.

### 2.  *Taishan is Subject to Personal Jurisdiction under the Due Process Clause.*

The PSC's analysis of the jurisprudence applicable to personal jurisdiction under the Due Process Clause is set forth in the PSC Global MOL (adopted herein by reference).  What is evident from the standards set forth by the United States Supreme Court and the Court of Appeals for the Fifth Circuit is that the facts of this case easily satisfy the personal jurisdiction

---

[21]  PSC Global SOF at 33-34; Herman Aff. Exs. 80 & 81.

[22]  *Id.*

[23]  Herman Aff. Ex. 164; Deposition of Peng Wenlong dated 1/13/2012 ("Peng II Dep.") (Herman Aff. Ex. 110) at 519:19-521:11 (Taishan included wooden pallets and hanging belts for shipment of drywall); PSC SOF at 24 n.106.

[24]  *Id.*

[25]  Taishan admits that it derived substantial revenues from its sales to Venture Supply in the amount of $358,000. *Germano* Br. at 15 n.18. "Substantial revenue" is all that is required to meet the express language of the statute.  Taishan attempts to make this a relative term by comparing its sales in Virginia to its overall sales, and concluding that these sales were "an infinitesimal part of TG's total sales." *Id.* at 15. Taishan's argument is baseless.  Nowhere within the Virginia long-arm statute does a relative standard exist.

requirements of Due Process.

In this case, Taishan advertised and targeted its products for sale in the United States.[26] The evidence shows that Taishan marketed its products to the United States both from its own website, as well as on the Alibaba website.[27] Defendant also made it possible for American customers to place orders through intermediaries such as Oriental Trading Co., through whom Defendant would consign and ship products to the builders and installers who ultimately purchased and used the products.[28] And, most significantly, at the very least, Taishan promoted and sold its products to first-line purchasers like Venture Supply, in Virginia and other states to whom the drywall boards were sold and shipped.

In pursuit of sales to the United States, Taishan manufactured and sold its Chinese drywall to Venture Supply, a company from Norfolk, Virginia for installation in homes in Virginia.[29] Taishan initiated its agreement with Venture Supply by having Venture Supply's president, Samuel G. Porter, execute its first contract with Taishan in Virginia.[30] Plainly, Taishan and Venture Supply were actively seeking to expand sales and distribution of defendant's drywall in the United States.[31]

On December 25, 2005, Taishan shipped 2000 specially made pallets of its customized

---

[26] *See* PSC Global SOF at 8-11.

[27] *Id.* at 9 & n.34-35.

[28] *Id.* at 12.

[29] *Id.* at 30-36.

[30] *Id.* at 34 n.142; Herman Aff. Ex. 80 (TG0001685).

[31] *Id.* at 30-36.

drywall to Venture Supply.[32]  The shipment arrived in the United States in February, 2006.[33]  A

second shipment of made-to-order drywall labeled specifically for Venture Supply for 53,912

sheets on 586 pallets was later shipped to Venture Supply.[34]

What is notable for this case is that even under the more stringent *Asahi* or *McIntyre*

pluralities' stream-of-commerce-plus analyses, Taishan's conduct demonstrates enough

additional conduct to warrant assertion of personal jurisdiction here.  Taishan plainly showed an

intent or purpose to serve the Virginia market.  It had gone so far as to negotiate an exclusive

sales contract with Venture Supply to sell Taishan drywall not only in Virginia, but throughout

the United States.[35]  Further, Taishan specifically designed its drywall to meet Venture Supply's

needs for marketing in Virginia.[36]  Taishan also packaged and shipped its drywall on pallets

specially designed for shipment to Virginia.[37]  This conduct falls exactly within the measure of

governing Fifth Circuit law on personal jurisdiction and even meets the *Asahi* plurality opinion's

plus-factor analysis.[38]

---

[32]  *Id.*; Herman Aff. Ex. 164.

[33]  PSC Global SOF at 35 & n.147.

[34]  *Id.* at 35 & n.148.

[35]  *Id.* at 30-33.

[36]  *Id.* at 33-34.

[37]  *Id.* at 35 n.148; Herman Aff. Ex. 164.

[38]  Defendant asserts that its delivery of drywall to Venture  F.O.B. China defeats Plaintiffs'
assertion that Taishan purposely availed itself of Virginia's markets.  Defendant relies upon *Bay
Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483 (E.D.Va. 2003).  *Bay
Tobacco* is immediately distinguishable.  A contractual dispute was at issue in that case.  Contractual
claims typically invoke a different analysis than the stream-of-commerce analysis attendant to product
liability claims, like those present here.  *See Nuovo Pignone, SpA v. Storman Asia, M/V*, 310 F.3d 374,
381 (5th Cir. 2002) (applying stream-of-commerce analysis to products liability claim).  Further, *Bay
Tobacco* employs the Fourth Circuit's foreseeability-plus analysis, an alien approach to the analysis
directed by the Fifth Circuit.  *See Menowitz v. Brown*, 991 F.2d 36; *Luv N'care, Ltd. v. Insta-Mix, Inc.*,
438 F.3d 465, 469 (5th Cir. 2006).

Taishan's targeted efforts to sell drywall in Virginia were successful. Hundreds of homes now bear the legend of this infamy. It is undisputed that Taishan manufactured the drywall installed in the homes of the Intervening Plaintiffs in *Germano*. *See Chinese Drywall*, 706 F. Supp. 2d at 662. Taishan contracted to custom manufacture and sell its products to Venture Supply, a Virginia company, Taishan aided and directed shipments of its products to Virginia, and Taishan was aware that those products would be used in Virginia. Given the extent of Taishan's marketing efforts towards Virginia through its multiple sales of enormous quantities of drywall to Venture Supply, irrespective of any level of foreseeability necessary to assert personal jurisdiction, it is clear from these facts that Taishan purposely availed itself of a Virginia forum. Taishan targeted its business towards Virginia, benefitted from doing business in Virginia, and, in the final analysis, extracted profits from Virginia. It is beyond peradventure and common sense to deny that Taishan should have expected that its actions would have a profound impact in Virginia such that Taishan could reasonably expect to be hailed into court in Virginia. Under the Due Process clause, Taishan has purposely availed itself of the privileges of conducting activities in Virginia. Thus, Taishan's Motion to Dismiss should be denied.

**C.    This Court Correctly Ruled that Jurisdiction Over Taishan Was Accomplished by Proper Service of the First Amended Complaint.**

On August 5, 2010, this Court issued its Order and Reasons addressing Plaintiffs' motion for an award of attorneys' fees. Although Taishan was absent during the default proceedings, Taishan did appear to oppose the motion for award of attorneys' fees. Rec. Doc. No. 4307. Among other things, it challenged whether the Plaintiffs' motion to intervene and the Second Amended Complaint were properly served. In its August 5, 2010 Order and Reasons, this Court rejected Taishan's arguments addressing insufficient service. In the instant motion, Taishan repeats itself. It reasserts virtually identical arguments to those that were rejected less than two

14

years ago.  Taishan advocates that a different outcome should result without providing any change in circumstance or applicable precedent to support its contentions, other than feebly noting that the Court's opinion has not yet become the law of the case.

Taishan's argument for avoiding the default judgment is premised upon purported defects in service of the Plaintiffs' motion to intervene and the Second Amended Complaint ("SAC"). Because service of the First Amended Complaint ("FAC") was properly accomplished (a point that is undisputed by Taishan), no such defect exists with regard to the motion to intervene, and any contrived or purported flaw in the service of the SAC is immaterial.

As noted above, Taishan was served with a summons and the FAC under the Hague Convention on August 3, 2009.  The FAC, which was filed on May 26, 2009, asserted a Virginia-only class claim against Taishan and the other defendants named therein.  After considerable time, expense and effort, Plaintiffs retained APS International to translate the complaint and attend to service abroad consistent with the Hague Convention and Rule 4 of the Federal Rules of Civil Procedure.  The FAC was sent abroad on July 7, 2009.  Not until August 3, 2009, was service of the FAC accomplished.  An affidavit of service filed with the Court confirms this fact.[39]  Despite proper service of this complaint, Taishan took no action to defend itself before this Court.

On October 30, 2009, Plaintiffs moved to amend the FAC to instead assert a national class action against Taishan.  On November 17, 2009, the Court granted Plaintiffs leave to file their SAC.  Similar claims to those of the FAC were asserted against the remaining defendants on a state-wide basis.  Since Taishan failed to respond to the FAC in a timely manner or enter its appearance, Plaintiffs moved for preliminary default against the company on November 18,

---

[39]   *See* Affidavit of Service, filed on 9/23/09 in the United States District Court for the Eastern District of Virginia (Norfolk), 2:09-cv-00202 (Rec. Doc. No. 77).

2009. That motion was granted on November 20, 2009.

In anticipation of default judgment proceedings, this Court entered a Scheduling Order on November 25, 2009, to address the scope and extent of appropriate remediation. Therein, the Court set a deadline of December 4, 2009, for any party to participate in the proceedings by filing a motion to intervene. Plaintiffs, Jerry and Inez Baldwin, Steven and Elizabeth Heischobert, Joseph and Kathy Leach, Preston and Rachael McKellar, J. Frederick and Vannessa Michaux, William and Deborah Morgan, and Robert and Lea Orlando, timely filed their motion to intervene into the action on December 9, 2009. To comply with Fed.R.Civ.P. 24(c), Plaintiffs appended to their motion complaints that they had filed in Virginia state court. These complaints asserted claims coinciding with the FAC, except that they did not assert class allegations as no such procedure exists in Virginia.[40] Given this factual premise, Taishan's legal analysis cannot withstand scrutiny.

Taishan premises its motion upon Fed.R.Civ.P. 5(a)(2), which states: "No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Rule 5(a)(2) only

---

[40]   The Fifth Circuit observes Rule 24(c) leniently and allows intervenors simply to adopt the existing pleadings of the parties. *See S.E.C. v. Funding Resource Group*, 233 F.3d 575 (5th Cir. 2000) ("Although the filing of a complaint in intervention is clearly required by the language of the rule, this court has traditionally been lenient in hearing the appeals of parties who have failed to fulfill the provisions of Rule 24(c).'"), *citing, International Marine Towing, Inc. v. Southern Leasing Partners, Ltd.*, 722 F.2d 126, 129 (5th Cir. 1983); 7C Wright, Miller, Kane, *Federal Practice and Procedure* §1914 at 517 (2007). In their motion, the Intervenors adopted the claims of the SAC, but obviously this adoption did not include the SAC's class allegations, as the Plaintiffs never asserted that they were acting as representative plaintiffs and went on to only pursue their individual claims. As a consequence, the claims pursued by the Intervening Plaintiffs were identical to those alleged in the FAC, since the only material difference between the FAC and SAC was the assertion of a national, rather than a Virginia class. As discussed *infra*, if service of the SAC was insufficient then the FAC remains the operative complaint, and Taishan does not dispute that jurisdiction under the FAC was obtained.

contemplates service of pleadings asserting *new claims* for relief pursuant to Rule 4.[41]  The

Intervenors' motion only requested that the Intervenors participate in the claims already existing

in the action.  They asserted no claims other than those present in the case.

Taishan does not (nor can it) deny that it was properly served with the FAC on behalf of a

class of "owners and residents of residential homes in the Commonwealth of Virginia containing

defective drywall that was designed, manufactured ... by Defendant Taishan ..." (All it can do to

mitigate this uncontroverted fact is to claim it did not understand the significance of the

litigation).[42]  Nor does Taishan contest this Court's finding that the default judgment "was based

upon the Virginia state law claims raised within the First Amended Complaint."  Rec. Doc. No.

4872 at 7.  The Court went further in its August 5, 2010 Order & Reasons to find that "with

regard to parties in default, such as Taishan, Federal Rule of Civil Procedure 5(a)(2) generally

does not require service of pleadings and other papers, such as a motion to intervene or an

amended complaint which does not assert additional claims. . . ."  *Id.* at 5-6.  Because the

Intervening Plaintiffs are all owners of homes in Virginia, which contained defective drywall

manufactured by Taishan, the Court found that the Intervening Plaintiffs fell within the class

defined by the FAC and, therefore, the motion to intervene "did not raise any additional claims

against Taishan and indicated only that Intervening Plaintiffs had an interest in the default

---

[41]  Taishan suggests that the claims of the Intervening Plaintiffs are "new claims" based upon a mistaken reliance upon inapposite cases addressing non-named absent members of opt-in collective actions permitted under the Fair Labor Standards Act, 29 U.S.C. §216(b).  *See James v. Claiborne*, 2009 WL 994951 (W.D. La. Apr. 13, 2009); *Lopez v. NTI, LLC*, 2008 WL 5120542 (D. Md. Dec. 4, 2008).  Unlike the FLSA, which is "phrased in the negative" and does not recognize individuals to be party plaintiffs until they affirmatively opt in, *id.* at *4, the Germano Intervening Plaintiffs were parties for purposes of intervening into a proposed Rule 23 class of which they were already members.  *Cf. Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002) ("Nonnamed class members, however, may be parties for some purposes and not for others," *e.g.*, when receiving the benefits of tolling of claims already asserted in the complaint).

[42]  *Germano* Br. at 4-5.

judgment proceedings." *Id.* at 6.  Consequently, service of the motion to intervene on Taishan
was not required.  *Id.* at 6-7.

Similarly, the SAC merely expanded the class of plaintiffs from a Virginia state class to a
national class of homeowners and residents alleging damages to their homes from defective
drywall manufactured by Taishan.  No new claims were asserted.  *Id.* at 7.  Significantly, the
claims of the Intervening Plaintiffs, all Virginia homeowners, were *exactly* the same as those in
the FAC.  *Id.*  Thus, the Court found, "whether or not the Second Amended Complaint was
properly served upon Taishan, the Court has sufficient jurisdiction to award attorneys' fees as a
result of the proper service of the First Amended Complaint since Intervening Plaintiffs' claims
were properly within the First Amended Complaint."  *Id., citing, Annunciation v. W. Capital Fin.
Svcs. Corp.*, 1996 WL 534049, at *3 (9th Cir. Sept. 19, 1996).[43]

Taishan's repeated efforts to have this case dismissed for lack of proper service of the
motion to intervene and the SAC are without merit.  The Court already ruled on these points and

---

[43]  Moreover, even if service of the SAC was ineffective, the result is simply that the FAC
remains the operative complaint.  Ironically, Taishan relies upon the Ninth Circuit opinion in
*Anunciation*, which case fully supports the Intervening Plaintiffs proceeding under the FAC.
*Anunciation* states:

> Anunciation argues that if the district court had no jurisdiction over the
> amended complaint, then the amended complaint could not have
> superseded the initial complaint.  The initial complaint was therefore
> still viable and service of process with regard to the initial complaint is
> not contested.  We agree.
>
> ***
>
> The initial complaint in the present case remained viable because the
> amended complaint was never effectively served.

*Anunciation*, 1996 WL 534049 at *2.  Here, Taishan does not contest that the initial Virginia class claims
of the FAC are effective because Taishan was served with the FAC under Rule 4.  As the Intervenors
were all Virginia home owners, they presented no "new claim" distinct from the FAC.  Because service
was accomplished upon Taishan through summons and the FAC, this Court obtained jurisdiction over
Taishan.  Thus, the judgment obtained by the Intervening Plaintiffs is equally effective against Taishan
irrespective of service of the SAC.

rejected Taishan's contentions.  Taishan failed to file a timely motion to reconsider and has

offered no new facts or legal basis for the Court to change its course.  The motion to vacate the

default judgment and to dismiss should therefore be denied.

> **D.      Taishan Is Not Entitled to Dismissal of this Action on the
> Grounds That Plaintiffs Allegedly Failed to State a Claim
> under the Virginia Consumer Protection Act.**

This Court held previously that the Intervening Plaintiffs were not entitled to attorneys'

fees from Taishan under the Virginia Consumer Protection Act ("VCPA") because Taishan's

sales of drywall to suppliers and homebuilders "constituted a commercial transaction, which is

outside the ambit of 'consumer transaction[s]' covered by the VCPA."  Rec. Doc. No. 4872 at

12-13.  This adverse ruling was limited to attorneys' fees only.  In fact, the Court referred the

Intervening Plaintiffs' request for taxation of costs against Taishan to the Clerk of Court for

determination.  *Id.* at 13.

In denying attorneys' fees, the Court did not rule that Plaintiffs failed to state any claim

against Taishan.  On the contrary, Plaintiffs alleged a variety of causes of action including

negligence, negligence per se, breach of express and implied warranties, as well as violation of

various consumer protection acts, which justified the default judgment entered against Taishan.

Based on the evidence admitted at the evidentiary hearing, in its Findings of Fact the Court

determined that "Plaintiff-intervenors' interests in their real properties have been injured by

defendant Taishan's negligence in producing a defective product, and that they are entitled to

recover the damages proximately caused by same."  *Chinese Drywall*, 706 F. Supp. 2d at 690.

The Court ruled further that "the proper measure of damages is the cost of repair, plus the

amount the property was depreciated, if any, because it was damaged."  *Id.* at 691.  In the case of

the Intervening Plaintiffs, these damages totaled more than $2.7 million in the aggregate.  The

default judgment against Taishan was based on Plaintiffs' success in proving these damages

under the law.  Taishan is not entitled to a vacation of the default judgment even if Plaintiffs'
VCPA claim is wanting, as the damages and attorneys' fees were awarded under other theories of
recovery.  This make-weight argument should be refused.

###   E.   Taishan Has Not Shown Excusable Neglect

Taishan also seeks to vacate the default judgment entered against it on the grounds of
excusable neglect pursuant to Fed. R. Civ. P. 60(b)(1).  "When determining whether there has
been excusable neglect, [the court] review[s] 'all relevant circumstances surrounding the party's
omission.'"  *Johnson v. Potter*, 364 Fed. Appx. 159, 164, 2010 WL 454718, *5  (5th Cir. 2010),
*quoting, Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).
The Fifth Circuit has held that these "circumstances" might include:  "(1) the danger of prejudice
to the [non-movant]; (2) the length of the delay and its potential impact on judicial proceedings";
and (3) "the reason for the delay, including whether it was within the reasonable control of the
movant, and whether the movant acted in good faith."  *Id*.  The district court has discretion to
"refuse to set aside a default judgment if the defendant fails to present a meritorious defense
sufficient to support a finding on the merits for the defaulting party."  *United States v.*
*$670,706.55*, 367 Fed. Appx. 532 (5th Cir. 2010), *citing, Jenkens & Gilchrist v. Groia & Co.*, 542
F.3d 114, 120 (5th Cir. 2008).  And, black letter law finds that "[n]either ignorance nor
carelessness on the part of a litigant or his attorney provide grounds for relief under Rule
60(b)(1)."  *Ben Sager Chemicals Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.
1977); *DiVito v. Fidelity and Deposit Co. of Maryland*, 361 F.2d 936, 938 (7th Cir. 1966) ("Rule
60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional
circumstances.").  Under the circumstances, Taishan's argument is unconvincing.

Taishan's only excuse for failing to timely respond to the FAC is that "Taishan did not
understand the significance of the First Amended Complaint, and could not imagine how its sales

of drywall in China could have legitimately resulted in U.S. litigation it was required to participate in."[44]  Taishan asserts further that "[n]o employee at Taishan has sufficient mastery of the English language to read and understand legal documents written in English."[45]  But the FAC was served in accordance with Fed.R.Civ.P. 4 and the Hague Convention, meaning that it was officially translated into Chinese.  Taishan never addresses this stubborn fact.  While feigning an inability to understand English might be convincing, Taishan never asserts that it is ignorant of the Chinese language too.  And, making its defense even less credible, Taishan's contracts with Venture Supply to manufacture hundreds of thousands of sheets of drywall, worth hundreds of thousands of dollars, for the Virginia company were all written in English.[46]  Each sheet of Taishan's drywall contained a label written in English stating that the gypsum board was "Distributed by Venture Supply, Inc."[47]  The inspection certificates that Taishan relies upon were also written in English.[48]  Thus, Taishan's decision not to investigate or examine the significance of this legal document is not a valid reason to vacate the default judgment entered against it.

    As for Taishan's "meritorious defense," the company asserts in its brief only that "there is a question whether the drywall at issue was defective when it left Taishan's hands in China or if it was damaged or contaminated by a third-party during transit or after it arrived in the U.S."[49]  This hardly constitutes any defense, much less a meritorious one.  Outstanding discovery of Taishan may shed light on the defense it will be asserting in the litigation.  But for now, Taishan

---

[44] *Germano* Br. at 22.

[45] Jia Decl., ¶ 43.

[46] *See id.* at Exhibits A & C.

[47] Herman Aff. Exs. 80 & 81.

[48] *See* Jia Decl. at Exhibits B & D.

[49] *Germano* Br. at 23.

is saddled with the proofs of product defect established at the trial before this tribunal because it has utterly failed to show excusable neglect warranting vacation of the default judgment.

IV.     **CONCLUSION**

Taishan deliberately chose not to participate in these proceedings for over a year until a default judgment was entered against it.  It is plain from our investigation that Taishan's sales in the U.S. were not limited only to two sales of drywall to Venture Supply.  Taishan set out on a course to expand the sales of its drywall in the United States and has admitted that it manufactured made-to-order gypsum boards that were used in the construction of the Intervening-Plaintiffs' homes at issue in this case.  Taishan should not be given an advantage for having avoided this litigation entirely when it failed to respond initially to the properly served Complaint and now seek dismissal when personal jurisdiction upon Taishan is proper.

For all of the reasons outlined above, Taishan's renewed motion to vacate the default judgment and dismiss the complaint should be denied.

Respectfully submitted,


Dated: May 8, 2012                    /s/ Russ M. Herman
                                      Russ M. Herman, Esquire (Bar No. 6819) (On the Brief)
                                      Leonard A. Davis, Esquire (Bar No. 14190) (On the Brief)
                                      Stephen J. Herman, Esquire (Bar No. 23129) (On the Brief)
                                      HERMAN, HERMAN & KATZ, LLP
                                      820 O'Keefe Avenue
                                      New Orleans, LA 70113
                                      Phone: (504) 581-4892
                                      Fax: (504) 561-6024
                                      LDavis@hhkc.com
                                      *Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
 MATTHEWS, MARTINEZ, GONZALES,
 KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

23

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Richard J. Serpe, Esquire (On the Brief)
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis, Esquire
HAUSFELD LLP
1700 K Street, NW, Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon, Esquire
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing Plaintiffs' Steering Committee's Response in Opposition to Taishan's Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 8th day of May, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*
*Co-counsel for Plaintiffs*

25