# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL | ) | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| ———————————————————— | ) | SECTION: L |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | JUDGE FALLON |
| ALL CASES | ) | MAG. JUDGE WILKINSON |
| | ) | |
| ———————————————————— | ) | |

### DECLARATION OF BING CHENG

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

BING CHENG, being duly sworn, deposes and says:

## I.     INTRODUCTION

1.      I am a full-time partner at Zhong Lun Law Firm, a leading People's Republic of China ("PRC") commercial law firm with headquarters in Beijing, China.  I am admitted to practice law in the Court of the State of New York and the PRC nationwide.  I am qualified to testify about the areas of law governing the opinions expressed in this declaration.  All facts stated herein are within my personal knowledge other than those facts explicitly denoted as having been provided by the Plaintiffs' Steering Committee ("PSC") for the purpose of rendering my opinion in this case (collectively, the "Facts Provided").  Both the facts within my personal knowledge and the Facts Provided are true and correct to the best of my understanding.

2.      I am a Chinese national and reside in Beijing, China.

3.      I have been asked by the PSC in the above-captioned matter to address the following issues:

- whether the Chinese laws governing corporate veil-piercing are Articles 20(3) & 64 of the Company Law of the People's Republic of China (the "Company Law");

- whether, when analyzing the veil-piercing of a single-shareholder entity, such as Taian Taishan Plasterboard Co., Ltd. ("TTP"), Article 64 of the Company Law would control;

- whether Chinese law ever requires a showing of "intentional and malicious abuse" for veil-piercing pursuant to Articles 20(3) or 64 of the Company Law;

- what factors would a Chinese court consider when applying the doctrine of piercing the corporate veil under Chinese law; and

- assuming the Facts Provided (set forth in paragraph 32 below), whether Chinese law would disregard the independent corporate personality of Taishan Gypsum Co., Ltd. ("TG") as it relates to its wholly-owned subsidiary, TTP.

4.      Although I have been asked to make this Declaration by the PSC, I consider it my professional duty to offer an independent opinion to the Court.  I am not acting as an advocate for any party in the above-captioned matter.  I am being compensated by the PSC for my work in this matter at an hourly rate of $400.  Payment is not contingent on the conclusion that I reach in this declaration.  In addition, I have used the assistance of attorneys within my firm who are being compensated by the PSC at an hourly rate of $220 for their work in this matter.  This payment is also not contingent on the conclusion that is reached in this Declaration.

## II.   SUMMARY

5.      The Chinese laws governing corporate veil-piercing are Article 20(3) and Article 64 of the Company Law.

6.      When Chinese courts analyze the veil-piercing of a single-shareholder entity such as TTP, Article 64 of the Company Law would prevail.  Therefore, the burden would be placed upon TG to prove that its own property was independent from the property of TTP.

7.      The Supreme People's Court has not issued any rules, regulations or explanations nor are there any Chinese statutes or cases requiring a showing of "intentional and malicious abuse" for piercing the corporate veil under Chinese law.

8.      Applying Chinese law to the Facts Provided, I conclude that the Facts Provided supply sufficient evidence for a court to determine that independent corporate personalities should be disregarded in this instance.

### III.   QUALIFICATIONS

9.      I studied commercial law at the Capital University of Business and Economics in Beijing from which I obtained my Bachelor of Law degree in 1996.  I was then awarded a master's degree in civil and commercial law in 1999 from the Ritsumeikan University in Kyoto, Japan.  I also successfully completed educational qualifications for being a solicitor of England and Wales in 2004 at the College of Law (Guildford) with a path of corporate practice. Furthermore, I was awarded another master's degree in 2008 from the University of Pennsylvania Law School.

10.      I have practiced Chinese law since 1999.  I am a qualified attorney in good standing in both the State of New York of the United States and the PRC.  I was admitted to practice Chinese law before all of the courts in PRC.

11.      I am currently a full-time partner in the International Practice Group of Zhong Lun Law Firm, which is a reputable and leading commercial law firm in PRC.  My practice areas focus on intellectual property rights, international litigation/arbitration, as well as general corporate law.  I also worked in two international firms based in the United States.  In addition to working in law firms, I also served for over three years as a general counsel for a multinational corporation with extensive business in PRC where I advised on issues covering general corporate matters, employment, intellectual property, sales, etc. to 18 subsidiaries of the company.

12.      A true and correct copy of my curriculum vitae is attached hereto as Exhibit A.

13.    I respectfully submit that I am competent to opine on Chinese corporate law and the specific question of whether sufficient evidence has been supplied by the Facts Provided for a Chinese court to determine that independent corporate personalities should be disregarded in this instance.

## IV.    LEGAL SOURCES REVIEWED IN FORMING OPINION

14.    In preparation of this Declaration, I reviewed and considered the following laws, regulations, rules and cases, all of which are effective throughout the relevant time period, and govern or relate to the legal status of Chinese business entities, including but not limited to:

- General Principle of Civil Law of People's Republic of China of 1986 (GPCL) (*Minfa Tongze*), effective as of January 1, 1987;

- Company Law (*Gongsi Fa*) (adopted by the Fifth Session of the Standing Committee of the Eighth National People's Congress, 19 December 1993), effective 1 July 1994, revised at the 18th Meeting of the Standing Committee of the Tenth National People's Congress, 27 October 2005, effective as of January 1, 2006;

- Provisions of the Supreme People's Court on Several Issues concerning the Application of the Company Law of the People's Republic of China (I) of (2006), (II) of 2008 and (III) of 2011 (*Zuigaorenminfayuan Guanyu Shiyong <Zhonghua renmin gongheguo gongsifa> Ruogan Wenti de Guiding*). These three provisions of Company Law issued by the Peoples' Supreme Court respectively in 2006, 2008, 2011, are all still effective and also have binding force just like Company Law for parties concerned;

- Civil Procedural Law of the People's Republic of China (*Minshi Susong Fa*) (adopted at the 30th Meeting of the Standing Committee of the Tenth National People's Congress of the People's Republic of the China on October 28, 2007) effective as of April 1, 2008;

- Law of the People's Republic of China on Chinese-Foreign Equity Joint Ventures (Zhongwai Hezi Jingying Qiye Fa) (adopted at the Fourth Session of the Ninth National People's Congress of the People's Republic of China on 15 March 2001) amended on March 15, 2001;

- Notice of the Supreme People's Court on Strengthening Commercial Adjudication (Fa (Yan) Fa (1985) No.28) (Zuigaorenminfayuan guanyu jiaqiang jingji shenpan gongzuo de tongzhi);

- China Galaxy Investment Co., Ltd vs. Hefei Feifan Investment Consulting Co., Ltd (2011);

- Hainan Branch of China Construction Bank vs. Hainan Rifa Real Estate Development Co., Ltd & Hainan Rifa Industry Development Corporation (2007);

- Wang Yijiang vs. Li Rixin (2008);

- Beijing Jinshishuishun Building Materials Trading Co., Ltd vs. Beijing Zhonghaitengda Trading Co., Ltd (2006);

- Changzhou GaoRui Textile Co., Ltd vs. HU, Shanghai Aisong Trading Co., Ltd and FU (2011);

- Chao Xi, Piercing the Corporate Veil in China: How Did We Get There?;

- Chen Jianlin, Clash of Corporate Personality Theories: A Comparative Study of One-Member Companies in Singapore and China;

- Wen Cong Jun, Empirical Study and Types of Disregard of Corporate Personality;

- Li Xiaoyun, Judge of the Supreme People's Court, Appellant Sichuan Tailai Decoration Engineering Company, Sichuan Tailai Real Estate Development Co., Ltd., Sichuan Tailai Entertainment Co., Ltd., vs. appellee Chengdu Office of China Cinda Asset Management Co., Ltd, on the appeal trial of loan dispute – about disregard of corporate personality on commingling of corporate personality;

- Liu Junhai, Professor of Renmin University of China Law School, Study On Several Issues Concerning Piercing Corporate Veil in Law Practice; and

- Zhao Xudong, Analysis on Application of Piercing the Corporate Veil Rules.

## V.   CHINESE CORPORATE VEIL-PIERCING  DOCTRINE IN RELATION TO ONE-PERSON LIMITED LIABILITY COMPANIES

15.    As a general principle, Chinese corporate law promises limited liability for

investors in limited liability companies (*youxian zeren gongsi*),[1] shareholders in companies

limited by shares (*gufenyouxian gongsi*),[2] and investors in foreign-invested enterprises.[3]  Upon

---

[1]   Company Law, Art. 3 (2005).

[2]   *Id.*

[3]   *See* Law of the People's Republic of China on Chinese-Foreign Equity Joint Ventures (2001).

incorporation, a company organized under Chinese law has an independent personality separate from those of its shareholders.  The protection of limited liability ensures that a shareholder is not responsible for the company's debts and liabilities beyond their investment in the company.

16.    Chinese corporate law allows for the formation of one-person limited liability companies.  Section 3 of Chapter 2 of the Company Law designates specifically this kind of limited liability company from Article 58 to Article 64.[4]  Article 58(2) of the Company Law defines a one-person limited liability company as a limited liability company with only one natural person or legal person as a shareholder.  Chinese corporate law also extends the privilege of limited liability to investors in one-person limited liability companies.

17.    Limited liability, however, is not absolute under Chinese law.[5]  The 2005 amendment to the Company Law, effective as of January 1, 2006, formally and clearly embraced the doctrine of "piercing the corporate veil."

18.    The Chinese veil-piercing doctrine is primarily enshrined in two separate provisions of the Company Law, Article 20(3) and Article 64.  Article 20(3), the general veil-piercing provision, provides as follows:

> "Where any of the shareholders of a company evades the payment of its debts by abusing the independent status of juridical person or the shareholders' limited liabilities, and thus seriously damages the interest of any creditor, it shall bear the joint and several liabilities for the debts of the company."[6]

Article 64 is a special provision applying only to one-person limited liability companies, providing:

> "If the shareholder of a one-person limited liability company is unable to prove that the property of the one-person limited liability company is independent from

---

[4]  Company Law (2005), Chapter II, Section 3.

[5]  *See* Chao Xi, *Piercing the Corporate Veil in China: How Did We Get There?*, 5 J. Bus. Law 413 (2011).

[6]  Company Law, Article 20(3) (2005).

his own property, he shall bear joint and several liabilities for the debts of the company."[7]

19.    Article 20(3) requires plaintiffs to bear the burden of proof when attempting to establish that the shareholder shall be held jointly and severally liable for the debts of the shareholder's company.  Article 64, however, adopts a presumption of abuse of the independent status of a one-person limited liability company; thus reversing the burden of proof and requiring the shareholder to prove that it should not assume joint and several liability for the debts of a one-person limited liability company by establishing that the property of the one-person limited liability company is separate from shareholder's own property.

20.    The structure of the Company Law further supports that Article 64 shall govern in cases where a one-person limited liability company is involved.  Article 20(3) is placed in the general provisions of Chapter 1 of the Company Law whereas Article 64 is placed in the special provisions of Section 3 of Chapter 2 of the Company Law.  According to the well-established principle that special law prevails over general law, Article 64 will govern the burden of proof on the question of whether the shareholder's company shall be jointly and severally liable for the debts of the one-person limited liability company.

A.    <u>Scope and Application of Article 64 of the Company Law</u>

21.    Because one-person limited liability companies are believed to pose a greater risk of fraud and other abuses of the corporate form to creditors,[8] Article 64 shifts the burden of proof to the shareholder to establish that its property has been kept "independent" from the one-person limited liability company's property.  If the shareholder cannot prove that its property was

---

[7]  Company Law, Art. 64 (2005). The Company Law defines a "one-person limited liability company" as "a limited liability company with only one natural person or legal person shareholder." Company Law, Art. 58(2) (2005).

[8]  *See, e.g.*, Chen Jianlin, *Clash of Corporate Personality Theories: A Comparative Study of One-Member Companies in Singapore and China*, 38 HONG KONG L.J. 425 (2008) (citing report of National People's Congress on Company Law Amendment Draft).

independent, then the shareholder's company shall be jointly and severally liable for the debts of the one-person limited liability company.  In the instant case, TG would be required to submit sufficient evidence to prove that its assets are truly separate from TTP's.  Mere evidence showing separate articles of association for TG and TTP or other similar administrative filings would not suffice to prove that TG and TTP remained "independent" from one another.

22.     When making a veil-piercing determination pursuant to Article 64 in the case of parent and subsidiary companies whereby the subsidiary is organized as a one-person limited liability company, Chinese courts consider a broad range of factors to assess whether the one-person limited liability company's property has been maintained independently of its shareholder's property, including but not limited to the following:[9]

- Undercapitalization; [10]

- Failure to observe corporate formalities;[11]

- Shareholder excessively interferes with management of company;[12]

- Failure to engage in arm's-length transactions or diversion of corporate assets for shareholders' personal use, such as without payment, prior agreement or below market value;[13]

---

[9]  Although court decisions are not binding on each other, when there is no clear legal guidance on specific issues under Chinese law, lower courts often follow higher court decisions.  However, a lower court usually will consider and take reference of a higher court decision in helping to reach its conclusion without direct citation of the higher court decision in its judgment.  In addition, Chinese lawyers will often cite a higher court decision in support of their arguments, especially the decisions of the Supreme People's Court.

[10]  *China Galaxy Investment Co., Ltd vs. Hefei Feifan Investment Consulting Co., Ltd* (2011), Anhui Higher People's Court.

[11]  *Hainan Branch of China Construction Bank vs. Hainan Rifa Real Estate Development Co., Ltd & Hainan Rifa Industry Development Corporation* (2007), the Supreme People's Court, the highest court in China.

[12]  *Beijing Jinshishuishun Building Materials Trading Co., Ltd vs. Beijing Zhonghaitengda Trading Co., Ltd* (2006), Beijing Mentougou County People's Court.  *See also* Liu Junhai, Professor of Renmin University of China Law School, *Study on Several Issues Concerning Piercing Corporate Veil in Law Practice*, 8 Journal of Law Application 16-22 (2011).

[13]  *Wang Yijiang vs. Li Rixin* (2008), Zhejiang Anji County People's Court.  See also Liu Junhai, Professor of Renmin University of China Law School, 8 Journal of Law Application 16-22 (2011).

8

- Commingling of shareholder's assets with those of the one-person limited liability company;[14]

- Overlapping management team, legal representatives and employees;[15]

- Sharing the same accountants and auditors;[16]

- Commingling of business activities, e.g., coordinating purchase of raw materials or advertisements and public relations campaigns;[17] and

- Commingling or failing to properly account for joint business activities.[18]

Importantly, the list of factors considered by Chinese courts is non-exhaustive and parties may argue that any factor relating to whether a single-shareholder limited liability company's property has been kept "independent" is relevant.  A key factor considered by Chinese courts is whether the shareholder and the one-person limited liability company commingled assets or finances, including, but not limited to, shared equipment and lease costs; use of each others' trademarks, marketing or sales materials, and other intellectual property without proper authorization or the payment of adequate consideration; shareholder payment for the salaries of employees working for the one-person limited liability company; and repayment of each others' debts.[19]  Indeed, the analysis is guided by appreciation of the unique facts of each case *in toto* to determine whether corporate separateness was, in fact, maintained.

---

[14]  *Hainan Branch of China Construction Bank vs. Hainan Rifa Real Estate Development Co., Ltd & Hainan Rifa Industry Development Corporation* (2007), the Supreme People's Court, the highest court in China.

[15]  *Id. See also China Galaxy Investment Co., Ltd vs. Hefei Feifan Investment Consulting Co., Ltd* (2011), Anhui Higher People's Court.

[16]  *Id.*

[17]  *Beijing Jinshishuishun Building Materials Trading Co., Ltd vs. Beijing Zhonghaitengda Trading Co., Ltd* (2006), Beijing Mentougou County People's Court.  See also Liu Junhai, Professor of Renmin University of China Law School, Study on Several Issues Concerning Piercing Corporate Veil in Law Practice,

[18]  Hainan Branch of China Construction Bank vs. Hainan Rifa Real Estate Development Co., Ltd & Hainan Rifa Industry Development Corporation (2007), the Supreme People's Court, the highest court in China.

[19]  *See, e.g.,* Li Xiaoyun, Judge of the Supreme People's Court, *Appellant Sichuan Tailai Decoration Engineering Company, Sichuan Tailai Real Estate Development Co., Ltd., Sichuan Tailai Entertainment Co., Ltd., vs. appellee Chengdu Office of China Cinda Asset Management Co., Ltd,* on the appeal trial of loan dispute – about disregard of corporate personality on commingling of corporate personality.

23.     If the shareholder of a one-person limited liability company cannot prove that its assets and operations were independent from those of the one-person limited liability company (i.e., that the assets and operations were commingled), then the independent corporate personalities may be disregarded.[20]

**B.**     **Scope and Application of Article 20(3) of the Company Law**

24.     In the event that Article 64 is inapplicable, Chinese courts will apply the general provision of Article 20(3) to a veil-piercing claim.

25.     Article 20(3) requires the creditors to bear the burden of proof that the corporate veil should be pierced.  Like Article 64, the scope of Article 20(3) and the factors courts should use in determining whether to pierce the corporate veil are not specified in the statute itself.

26.     Chinese courts have applied Article 20(3) to pierce the corporate veil in a variety of contexts.  The factors Chinese courts consider when evaluating a veil-piercing claim under Article 20(3) are the same factors that are relevant to a determination under Article 64.  Similar to the application of Article 64, Chinese courts are not restricted to any precise list of factors when determining whether a corporate veil should be pierced.[21]  Rather, Chinese courts consider the unique facts of each case *in toto*.[22]

**C.**     **"Intentional and Malicious Abuse" Pursuant to Articles 20(3) & 64**

27.     It has been suggested that a creditor who seeks to pierce the corporate veil under Article 20(3) must show that the shareholders "intentionally and maliciously" abused the

---

[20]   *Changzhou GaoRui Textile Co., Ltd vs. Mr. /Ms. HU, Shanghai Aisong Trading Co., Ltd and Mr./MS. FU* (2011), the Second Intermediate People's Court of Shanghai.   See also, *Henan Tianhe Construction Engineering Co., Ltd vs. Pingdingshan Weather Bureau, Pingdingshan Ziran Renju Real Estate Development Co., Ltd and Pingdingshan Urban and Rural Planning Bureau* (2010), Henan Pingdingshan Intermediate People's Court.

[21]   Notice of the Supreme People's Court on Strengthening Commercial Adjudication  (Fa (Yan) Fa (1985) No.28).

[22]   *Id.*

corporate form in order to evade the company's debts.[23]  However, as explained in greater detail below, there is no basis under Chinese law for requiring creditors to prove an intentional and malicious element in order to succeed on a veil-piercing claim pursuant to Article 20(3) or 64.

28.     China's legislature, the National People's Congress ("NPC"), promulgates law (*fa*).  The State Council, the highest level executive and administrative branch of government issue administrative regulations (*xingzheng fagui*).  Generally, executive and administrative branches of the State Council issue regulations (*guizhang*) and other normative documents setting forth the scope and application of regulations promulgated by the State Council and themselves.

29.     The Supreme People's Court resides at the apex of the judicial bureaucracy.  In addition to adjudicating discrete cases, the Supreme People's Court also issues judicial interpretations (*sifa jieshi*) on the scope and application of certain NPC-promulgated laws, including the Company Law, with binding force on the court practice.  China's courts do not operate in conformity with a common-law system under which the scope of a particular law or doctrine is clarified through a court's issuing of precedential opinions.  Rather, the Supreme People's Court clarifies the scope and application of laws such as the Company Law by issuing judicial interpretations.

30.     With respect to Article 20(3), the Supreme People's Court has not yet issued any rules or judicial interpretations as to the scope of Article 20(3).  In the absence of an amendment to the Company Law or guidance on the scope of the Article 20(3) by the Supreme People's Court, there is no basis under Chinese law for adding an intentional and malicious element to a claim to pierce the corporate veil under Article 20(3).

---

[23]   *See* Declaration of Zhu Yan, dated March 30, 2012 ¶ 48 ("Zhu Declaration").

31.     Indeed, there appear to be no cases where a Chinese court has required a creditor to prove that the shareholder intentionally and maliciously abused the corporate form in order to prevail on a claim to pierce the corporate veil.  Searches on the two most popular legal databases in China, Westlaw China and Chinalawinfo, yielded no cases requiring creditors seeking to pierce the corporate veil to prove "intentional and malicious abuse."  Although not all cases adjudicated by Chinese courts are available through these databases, the absence of any cases in which Chinese courts required creditors to prove an "intentional and malicious abuse" element is further persuasive evidence that no such requirement exists under Chinese law.  Therefore, there is no sound basis on which to assert that Chinese courts would require the creditor to prove that the shareholder intentionally and maliciously abused the corporate form in order to prevail on a claim to pierce the corporate veil.

## VI.    APPLICATION OF CHINESE LAW TO FACTS PROVIDED BY PSC

32.     For the benefit of the Court, the PSC requested that I apply the provisions of the Company Law governing piercing the corporate veil of a one-person limited liability company to the following Facts Provided, which the PSC has instructed me to assume would be established by a preponderance of the evidence.  Where noted "*" the fact is based on my own investigation:

### TG Establishes TTP as a One-Person Limited Liability Company Under Chinese Law

- TTP is a one-person limited liability company, organized under Article 58 of the Company Law.  TG is TTP's sole shareholder.

- TG incorporated TTP in February 2006.  TG contributed an initial registered capital investment of RMB 15,000,000 to TTP.  On June 22, 2006, TG increased its registered capital investment in TTP by RMB 7,000,000, bringing TG's total registered capital investment in TTP to RMB 22,000,000.  After nearly one year of operations, TTP's income statement covering the period from its incorporation in February 2006 to December 31, 2006, reported total revenue of RMB 112,091,957.59.  TTP's balance sheet as of December 31, 2006, reported assets of RMB 50,296,330.58 against liabilities of RMB 22,302,275.82 and equity of 27,994,054.76.

<u>TTP Failed to Observe Corporate Formalities</u>

- TTP and TG produced separate annual reports; however, TG and TTP have not presented additional evidence that TTP otherwise maintained separate financial records.  TTP failed to produce records showing monthly or quarterly audited financial statements.  Aside from annual financial statements, TTP produced no evidence showing that it maintained separate accounting records from TG.

- There is no record of TTP holding regular meetings of its Board of Directors, although there are records that TG regularly held meetings of its own Board of Directors.

- TTP and TG both used Tai'an Zhongcheng CPA for accounting services.  TTP used Tai'an Zhongcheng CPA to perform the capital verification during its formation mandated by Chinese law.  TG used the same accountant to value shares TG sold to its parent, Beijing New Building Materials, Ltd.

<u>TG and TTP Commingled Assets, Failed to Engage in Business Transactions at Arm's Length, and Abused the Corporate Form Through Improper Record Keeping.</u>

- At the time of TTP's formation, TG leased a manufacturer's site to TTP at the rate of RMB 80,000 per year, which was allegedly "based on the local rental pricing at the time."  Ten days later the same parties entered into a similar lease agreement at a rate of RMB 420,000 per year because "based on the evaluation and calculation of the accounting department, we reached a more reasonable leasing price of over 400,000."  Whether TTP ever paid TG the rental price per month is unclear from the limited financial statements produced.

- On February 20, 2006, TG sold TTP two production lines and auxiliary equipment for RMB 35,727, 650.75 via a contract requiring payment within three months.  However, TTP's 2006 Financial Statement only reflects payment of  RMB 34,380,888.25 to "purchase fixed assets, intangible assets and other long-term assets."

- On January 1, 2008, TTP and TG executed a Purchase and Sale Agreement by which TTP sold the two production lines and auxiliary equipment back to TG for RMB 31,453,579.80.  Yet, TTP's 2008 Financial Statement does not reflect any income for the sale of these assets.

- On February 10, 2006, TTP and TG entered into a lease agreement under the terms of which TG leased one of its manufacturing sites with the property ownership certificate number of Tai Fang Quan Zheng Tai Zi No. 130132 to TTP for a period of ten years.*  However, this same facility was also recorded as the property of Taihe Branch of TG in Taihe Branch's registration document.* There is no record of TG or TTP having transferred their interest in the manufacturing site to Taihe Branch of TG.  Indeed, neither TTP nor TG appear to have terminated the February 10, 2006, lease agreement.

13

- On February 20, 2006, TG authorized TTP's use of all trademarks in connection with the "Taishan brand" for a period of use "tentatively set at five years." There is no record of any consideration paid by TTP in exchange for this authorization. Similarly, there are no restrictions placed on TTP's use of the trademarks. In addition, such authorization was not recorded with the China Trademark Office as required by relevant Chinese trademark laws, rendering the authorization without binding force as to third parties.[24]*

- Although there is no record of TG's authorization of TTP's use of the DUN brand, TTP executed a Sole Agency Agreement with Oriental Trading Company, LLC on October 20, 2006, in which TTP certified Oriental Trading Company, LLC as TTP's exclusive agent for the DUN brand in the United States. This agreement became binding on TTP and the Oriental Trading Company, LLC, upon execution. Subsequently, the DUN brand was customized by TTP and Oriental Trading Company for the United States market, including the use of red, white and blue coloring. Despite having never received authorization from TG to use the DUN trademark from TG, TTP's records indicate that it indeed exported over $125,000 worth of DUN drywall to Oriental Trading Company between April 30, 2007, and July 3, 2007.

### TG and TTP Settled Each Others' Debts Related to Disputes with U.S. Customers

- At the time it wound down its operations, TTP owed one of its U.S. customers, Oriental Trading Company, LLC of Florida, a refund on a $100,000 deposit for the purchase of TTP-manufactured drywall. Former TTP employees who had subsequently returned to TG and were no longer employed by TTP, Che Gang and Peng Wenlong, attempted to resolve the dispute by offering to provide a representative of Oriental Trading Company with an equivalent amount in Chinese yuan or by offering to provide the equivalent of $100,000 worth of TG-manufactured building materials such as metal studs and tracks. The dispute over the $100,000 deposit remains unresolved.

- TTP and TG also worked together to resolve each others' outstanding debts in a dispute that arose between TG and Guardian Building Products ("Guardian") of Greer, South Carolina. Guardian sought to recover damages arising from its alleged purchase of substandard drywall from TG. Although Guardian made its claims against TG, TTP negotiated and entered into a settlement under which Guardian released claims against TTP, TG (which was then known as Shandong Taihe Dongxin Co., Ltd.), and all other affiliates. The terms of the settlement required TTP to pay $380,000 in exchange for Guardian releasing its claims against TTP, TG, and other affiliates.

---

[24]    The regulations promulgated by the China Trademark Office pertaining to contracts assigning trademark rights are attached as an exhibit to my declaration, including English translation. I note further, that the Authorization is deficient under Article 6.

<u>TTP and TG Shared Employees and Management</u>

- Upon the formation of TTP, the entire export sales staff of TG was transferred to TTP.  Specifically, TG's Board of Directors authorized the export sales staff to work for TTP; and TTP's Board of Directors hired TG's former export sales staff.

- Certain directors of TTP remained in TG's employ during their tenure with TTP.  For example, Fu Tinghuan, while serving as Director for TTP, also served as a supervisor at TG.  Prior to joining TTP, Fu Tinghuan had served as TG's Director of Foreign Sales.  Peng Shiliang, who had served as Director and Chairman of TTP, testified at his January 2012 deposition that he remains the legal representative and sole employee of TTP and that he is also employed by TG.

- These same directors had their salaries paid not by TTP, but by TG or another of TG's subsidiaries.  For example, Fu Tinghuan, a Director of TTP, was paid by TG during his tenure at TTP.  Fu Tinghuan received no compensation from TTP during his tenure with TTP.  Similarly, Peng Shiliang, who remains employed as TTP's legal representative, receives his salary from neither TTP nor TG, but from another TG subsidiary, Taishan Gypsum Co, Ltd, Lucheng Branch in Shanxi Province.

<u>TTP Employees Held Themselves Out as Employees of TG</u>

- TTP produced no brochures or similar marketing materials of its own.  Instead, TTP referred its potential customers to TG's brochures and marketing materials, passing these materials off as TTP's.

- Similarly, TTP's sales staff referred potential customers to TG's website.  Peng Wenlong, for example, testified that when customers requested a website from which they could review TTP's products, he would refer them to TG's website.

- TTP sales staff signed their e-mails to potential sales targets as if they remained employees of TG or some variant of its former name, Shandong Taihe Dongxin Co., Ltd.  One such e-mail sent by Peng Wenlong in May 2007, while he was employed by TTP, listed his employer as Taihe Dongxin Company Ltd.  This same e-mail boasted that "Shandong Taihe Dongxin Co., Ltd." was a key manufacturer of new building materials with branch companies throughout China.  Nowhere did the e-mail mention that Peng Wenlong was employed by TTP.  Other e-mails from TTP employees were signed as if they had been sent from "Taishan Gypsum Co., Ltd." and "Shandong Taihe Dongxin Co., Ltd."

- Employees who left TG for TTP retained use of the same phone numbers they had used at TG.  For example, while employed as salesmen at TTP, Peng Wenlong and Yang Jiapao, each used phone numbers that had previously belonged to TG.  These phone numbers were also listed on TG's sales brochures (f/k/a as Shandong Taihe Dongxin Co., Ltd.).

- One of TTP's customers, Ivan Gonima of Oriental Trading Company, testified that he understood TG and TTP to be the same company, which went by the informal name of "Taihe," a shortened version of Shandong Taihe Dongxin Co., Ltd. TG's former name.  Peng Wenlong, a TTP salesman, testified that unless customers inquired, he made no efforts to clarify that he worked for TTP and not TG.

33.     Each of the Facts Provided is a factor Chinese courts would consider in determining whether to pierce the corporate veil under Article 64 or Article 20(3).  Here, because TTP is a one-person limited liability company, Article 64 would govern a Chinese court's determination whether the Facts Provided supply sufficient evidence that independent corporate personalities should be disregarded in this instance.

34.     A Chinese court applying Article 64 would consider such commingling of assets and business activities, and the sharing of personnel as relevant to the inquiry of whether TG is able to meet its burden of proof that TG and TTP remained independent of one another.  It is my opinion that the Facts Provided supply sufficient evidence for a court to determine that independent corporate personalities should be disregarded in this instance.

35.     Article 20(3) provides an additional basis on which to pierce the corporate veil of a one-person limited liability company.  Even absent the special provisions of Article 64, the Facts Provided constitute facts Chinese courts would consider when piercing the corporate veil of any company under Article 20(3).  For example, Chinese courts analyzing claims under Article 20(3) consider factors such as failure to observe corporate formalities, failure to engage in arms-length transactions with a subsidiary, failure to properly account for transactions with a subsidiary, and commingling of assets and business activities as relevant to the determination of whether a company organized under Chinese law has "abus[ed] the independent status of juridical person or the shareholders' limited liabilities."  It is my opinion that the Facts Provided

supply sufficient evidence for a court to determine that independent corporate personalities

should be disregarded in this instance.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 3, 2012

程冰 CHENG, Bing
ZHONG LUN LAW FIRM
36-37/F, SK Tower
6A Jianguomenwai Avenue
Beijing 100022, P.R. China
Telephone: +8610 5957 2288
chengbing@zhonglun.com

18

# Exhibit A

# Bing Cheng

Partner, Zhong Lun Law Firm, Beijing Office



## Contact Information

Tel: (010) 5957 2288
Fax: (010) 5757 2211
E-mail: chengbing@zhonglun.com

## Education

2007 – 2008  LL.M., University of Pennsylvania (U.S.A.)
2003 – 2004  Post-Graduate Diploma in Legal Practice, the College of Law (Britain)
2002 – 2003  Post-Graduate Diploma in Law, the College of Law (Britain)
1997 – 1999  LL.M., Ritsumeikan University (Japan)
1992 – 1996  LL.B., Capital University of Economics and Business (China)

## Practice Areas

IP counselling & litigation, international arbitration & litigation, general corporate

## Professional Experience

### Zhong Lun Law Firm – Partner
April 2010 to present, Beijing office

Specialising in intellectual property counselling, international arbitration and litigation at the Beijing head office of this leading PRC commercial law firm.

Examples of work include:

- Advised a number of US listed Chinese companies in US securities litigations in relation to service of process, disclosure of bank records, legality of press release; assessment of agreements, etc.
- Advised an American insurance company in a products liability class action with respect to gypsum wallboard under the Company Law of China.
- Represented a well-known Japanese company in an international arbitration with AAA and enforcement in China involving a license dispute.
- Advised a famous Japanese company in well-known trademark recognition action.

- Advised an American company on franchising in Chinese healthcare business.
- Represented a Hong Kong company in a loan dispute for its second trial at the Supreme People's Court of China and obtained a final judgment in client's favor.
- Represented an individual in a share transfer dispute for a re-appeal trial at the Supreme People's Court of China and obtained a decision in client's favor.
- Advised J.K. Rowling on copyright license issues of Chinese versions of Harry Potter novel series in China.
- Represented a Swedish company who is the world leader in the field of cable and pipe seals in a patent invalidation proceeding and a misappropriation of trade secret case.
- Advised an American company on technology transfer.
- Represented a Korean company in a software infringement case.
- Represented a worldwide leader in sports for its trademark protection in China.

**Run Ming Law Firm – Partner**
April 2009 to March 2010, Beijing office

Examples of work include:
- Advised a worldwide leader in sports for its trademark protection in China.
- Advise Johnson & Johnson China on its product liability claim.
- Advised Johnson & Johnson China on a trademark dispute.
- Represented an American company in an administrative proceeding involving a trademark registration

**Orrick, Herrington & Sutcliffe LLP – Associate**
March 2007 to March 2009, Beijing office & Silicon Valley office

Examples of work include:
- Represented the largest Japanese pharmaceutical company in drug counterfeit enforcement action in China.
- Represented a Taiwanese company, the world's largest dedicated semiconductor foundry, in cross-border claims including a section 337 investigation related to unfair competition, commercial defamation and a breach of contract.

- Assisted an American client locating Chinese partners and business strategies in Digital Management Right investment.
- Advised an Australian client on patent, trademark and copyright disputes.
- Advised a Japanese client on index rights and business strategies.
- Advised a Chinese bank on IP protection strategies.

**Jones Day – Associate**
March 2006 to March 2007, Beijing office

Examples of work include:
- Advised multinational clients on technology export and import and encryption product transfer resolutions.
- Drafted and revised technology, trademark license contracts and confidentiality and non-compete agreements and e-commerce terms and conditions.
- Advised a well-known Chinese manufacturer on IP issues for its proposed IPO listing on Shanghai Stock Exchange.

**Omron Corporation, Legal Department – General Counsel for Greater China Area**
January 1999 to June 2002, Kyoto & Beijing

Advised numerous legal issues related to business operations of Omron subsidiaries in China, including but not limited to incorporation, intellectual property rights, commercial property, sale, loan, employment.

## Admitted in

New York
People's Republic of China

## Languages

Mandarin (native)
English (fluent)
Japanese (fluent)

## Publications & Speeches

- Guest Speaker, *Analysis On Free-Riding of Famous brands in China*, Programme Business Radio, China National Radio, April 2012.
- Author, "*Feature: Measures for FIEs Engaging in Online and Vending Machine Sales,*" Volume 24, China Law & Practice, 12/2010.
- Author, "*The First 'Trojan Horse' Case Prosecuted in China,*" Digital Evidence and Electronic Signature Law Review, July 2010.
- Co-Author, "*Ninth Circuit Holds Forum Selection Clause Designating 'Courts Of' A Particular State Does Not Include Federal District Courts in the State,*" January 2009.
- Co-Author, "*SmithKline Beecham Wins Domain Name Fight in China,*" October, 2008.
- *Intellectual Property Protection in China: Current Status and New Development,*" Temple Law School, October 2007.
- "*China intellectual property protection in pharmaceutical industry,*" Sino-American Pharmaceutical Professionals Association, September 2007.
- "*How Can Foreign Companies Protect Their IPR in China - From a Practical Perspective,*" Tsinghua Law School, December 2006.

# Exhibit B

# 商标使用许可合同备案办法

## Measures for Record-Filing of Trademark Licensing Contracts

**颁布机关：** 国家工商行政管理局商标局
**Promulgating Institution:** Trademark Office of the State Administration for Industry and Commerce

**文　号：** 商标[1997]39号
**Document Number:** Shang Biao [1997] No. 39

**颁布时间：** 08/01/1997
**Promulgating Date:** 08/01/1997
**实施时间：** 08/01/1997
**Effective Date:** 08/01/1997
**效力状态：** 有效
**Validity Status:** Valid

　　**第一条**　为了加强对商标使用许可合同的管理,规范商标使用许可行为,根据《中华人民共和国商标法》及《中华人民共和国商标法实施细则》的有关规定,制订本办法。

　　**Article 1**　These Measures are formulated in accordance with the relevant provisions of the Trademark Law of the People's Republic of China and the Implementation Rules for the Trademark Law of the People's Republic of China with a view to strengthening the administration of trademark licensing contracts and regulating acts of trademark licensing.

　　**第二条**　商标注册人许可他人使用其注册商标,必须签订商标使用许可合同。

　　**Article 2**　Trademark registrants authorizing others to use their registered trademarks must conclude trademark licensing contracts.

　　**第三条**　订立商标使用许可合同,应当遵循自愿和诚实信用的原则。

　　任何单位和个人不得利用许可合同从事违法活动,损害社会公共利益和消费者权益。

　　**Article 3**　Trademark licensing contracts shall be signed voluntarily and in good faith.

　　No entity or individual may, by using the licensing contracts, engage in illegal activities, impair public interests or the rights and interests of consumers.

　　**第四条**　商标使用许可合同自签订之日起三个月内,许可人应当将许可合同副本报送商标局备案。

　　**Article 4**　Within three months as of the date of execution of trademark licensing contracts, licensors shall report the duplicates of said contracts to the Trademark Office for record.

　　**第五条**　向商标局办理商标使用许可合同备案事宜的,可以委托国家工商行政管理局认可的商标代理组织代理,也可以直接到商标局办理。

　　许可人是外国人或者外国企业的,应当委托国家工商行政管理局指定的商标代理组织代理。

　　**Article 5**　When handling record-filing matters of trademark licensing contracts with the Trademark Office, licensors may entrust trademark agencies recognized by the Trademark Office to act on behalf of them, and may also handle relevant matters directly with the Trademark Office.

　　If licensors are foreigners or foreign enterprises, they shall entrust trademark agencies designated by the State Administration for Industry and Commerce to handle record-filing matters on behalf of them.

　　**第六条**　商标使用许可合同至少应当包括下列内容:

　　(一)许可使用的商标及其注册证号;

　　(二)许可使用的商品范围;

　　(三)许可使用期限;

　　(四)许可使用商标的标识提供方式;

　　(五)许可人对被许可人使用其注册商标的商品质量进行监督的条款;

(六)在使用许可人注册商标的商品上标明被许可人的名称和商品产地的条款。

**Article 6**   Trademark licensing contracts shall contain at least the following content:

(1) licensed trademarks and numbers of registration certificates;

(2) the scope of goods for which registered trademarks have been licensed;

(3) duration of license;

(4) the way in which representations of licensed trademarks are presented;

(5) provisions that licensors will supervise the quality of goods on which the licensees use their registered trademarks;

(6) provisions that names of licensees and origin of goods will be indicated on the goods with registered trademarks of licensors on.

第七条　申请商标使用许可合同备案,应当提交下列书件:

(一)商标使用许可合同备案表;

(二)商标使用许可合同副本;

(三)许可使用商标的注册证复印件。

人用药品商标使用许可合同备案,应当同时附送被许可人取得的卫生行政管理部门的有效证明文件。

卷烟、雪茄烟和有包装烟丝的商标使用许可合同备案,应当同时附送被许可人取得的国家烟草主管部门批准生产的有效证明文件。

外文书件应当同时附送中文译本。

**Article 7**   When applying for record-filing of trademark licensing contracts, following documents shall be submitted:

(1) record-filing forms of trademark licensing contracts;

(2) duplicates of trademark licensing contracts;

(3) photocopies of licensed trademarks registration certificates.

When applying for record-filing of trademark licensing contracts for medicines for human use, valid supporting documents obtained by licensees from administrative departments in charge of health shall be attached.

When applying for record-filing of trademark licensing contracts for cigarettes, cigars, and packaged pipe tobacco, valid supporting documents for approval of production obtained by licensees from administrative departments in charge of tobacco of the State shall also be attached.

Documents written in foreign languages shall be attached with a version of Chinese translation.

第八条　商标注册人通过被许可人许可第三方使用其注册商标的,其商标使用许可合同中应当含有允许被许可人许可第三方使用的内容或者出具相应的授权书。

**Article 8**   Trademark registrants authorizing third parties to use their registered trademarks through licensees shall state the content that licensees are permitted to authorize third parties to use registered trademarks in trademark licensing contracts or present corresponding letters of attorney.

第九条　申请商标使用许可合同备案,应当按照许可使用的商标数量填报商标使用许可合同备案表,并附送相应的使用许可合同副本及《商标注册证》复印件。

通过一份合同许可一个被许可人使用多个商标的,许可人应当按照商标数量报送商标使用许可合同备案表及《商标注册证》复印件,但可以只报送一份使用许可合同副本。

**Article 9**   When applying for record-filing of trademark licensing contracts, licensors shall complete and submit record-filing forms of trademark licensing contracts based on the number of licensed trademarks, and present duplicates of corresponding licensing contracts and photocopies of the Trademark Registration Certificate.

When authorizing a licensee to use several trademarks through one contract, licensors shall submit record-filing forms of trademark licensing contracts and photocopies of the Trademark Registration Certificate based on the number of licensed trademarks, but may submit only one duplicate of licensing contracts.

第十条　申请商标使用许可合同备案,许可人应当按照许可使用的商标数量缴纳备案费。

缴纳备案费可以采取直接向商标局缴纳的方式,也可以采取委托商标代理组织缴纳的方式。具体收费标准依照有关商标业务收费的规定执行。

**Article 10**   When applying for record-filing of trademark licensing contracts, licensors shall pay

record-filing fees based on the number of licensed trademarks.

Licensors may pay record-filing fees directly to the Trademark Office, and may also entrust trademark agencies to pay record-filing fees on behalf of themselves. Specific charges shall comply with the relevant provisions for charges of trademark services.

**第十一条** 有下列情形之一的,商标局不予备案:
(一)许可人不是被许可商标的注册人的;
(二)许可使用的商标与注册商标不一致的;
(三)许可使用商标的注册证号与所提供商标注册证号不符的;
(四)许可使用的期限超过该注册商标的有效期限的;
(五)许可使用的商品超出了该注册商标核定使用的商品范围的;
(六)商标使用许可合同缺少本办法第六条所列内容的;
(七)备案申请缺少本办法第七条所列书件的;
(八)未缴纳商标使用许可合同备案费的;
(九)备案申请中的外文书件未附中文译本的;
(十)其他不予备案的情形。
**Article 11**    In any of the following circumstances, the Trademark Office shall refuse to file trademark licensing contracts:
(1) Licensors are not the registrants of licensed trademarks;
(2) Licensed trademarks are inconsistent with registered trademarks;
(3) The number of registration certificates of licensed trademarks is inconsistent with the number of registration certificates of trademarks supplied;
(4) The term of license exceeds the term of validity of said registered trademarks;
(5) The goods for which registered trademarks are licensed exceed the scope of goods for which use of said registered trademarks has been approved;
(6) Trademark licensing contracts do not contain all the content listed in Article 6 of these measures;
(7) Record-filing applications do not contain all the documents listed in Article 7 of these measures;
(8) The record-filing fees for trademark licensing contracts are not paid;
(9) The documents written in foreign languages among record-filing applications are not attached with a version of Chinese translation;
(10) Other circumstances which shall not be put on record.

**第十二条** 商标使用许可合同备案书件齐备,符合《商标法》及《商标法实施细则》有关规定的,商标局予以备案。
已备案的商标使用许可合同,由商标局向备案申请人发出备案通知书,并集中刊登在每月第2期《商标公告》上。
**Article 12**    If the documents submitted for record-filing of trademark licensing contracts are complete and conform to the relevant provisions of the Trademark Law and the Implementation Rules for the Trademark Law, the Trademark Office shall put them on record.

With respect to trademark licensing contracts that have already been put on record, the Trademark Office shall send notices on record-filing to the applicants, and collectively publish them in the second issue of the Trademark Gazette each month.

**第十三条** 不符合备案要求的,商标局予以退回并说明理由。
许可人应当自收到退回备案材料之日起一个月内,按照商标局指定的内容补正再报送备案。
**Article 13**    Documents failing to meet the requirements of record-filing, shall be returned by the Trademark Office with reasons stated..

Licensors shall, within one month as of the date of receiving the record-filing documents returned by the Trademark Office, supplement and correct the content designated by the Trademark Office and then report  for record again.

**第十四条** 有下列情形之一的,应当重新申请商标使用许可合同备案:
(一)许可使用的商品范围变更的;
(二)许可使用的期限变更的;
(三)许可使用的商标所有权发生转移的;

(四)其他应当重新申请备案的情形。

**Article 14** In any of the following circumstances, licensors shall reapply for record-filing of trademark licensing contracts:

(1) The scope of goods for which registered trademarks have been licensed changes;

(2) The duration of the license changes;

(3) The ownership of licensed trademarks transfers;

(4) Other circumstances in which licensors shall reapply for record-filing.

**第十五条** 有下列情形之一的,许可人和被许可人应当书面通知商标局及其各自所在地县级工商行政管理机关:

(一)许可人名义变更的;

(二)被许可人名义变更的;

(三)商标使用许可合同提前终止的;

(四)其他需要通知的情形。

**Article 15** In any of the following circumstances, licensors and licensees shall inform the Trademark Office and the administrative departments for Industry and Commerce at the county level of the place where they are located in writing:

(1) Licensors' names change;

(2) Licensees' names change;

(3) Trademark licensing contracts terminate in advance;

(4) Other circumstances need to be noticed.

**第十六条** 对以欺骗手段或者其他不正当手段取得备案的,由商标局注销其商标使用许可合同备案并予以公告。

**Article 16** With respect to those who obtain record-filing by fraud or other illegitimate means, the Trademark Office shall cancel the record-filing of their trademark licensing contracts and make announcements.

**第十七条** 对已备案的商标使用许可合同,任何单位和个人均可以提出书面查询申请,并按照有关规定交纳查询费。

**Article 17** With respect to trademark licensing contracts that have already been recorded, all entities and individuals may apply for written inquiries. Inquiry fees shall be paid in accordance with relevant provisions.

**第十八条** 按照《商标法实施细则》第三十五条的规定,许可人和被许可人应当在许可合同签订之日起三个月内,将许可合同副本送交其所在地工商行政管理机关存查,具体存查办法可以参照本办法执行。

**Article 18** Pursuant to the provisions of Article 35 of the Implementation Rules for the Trademark Law, licensors and licensees shall, within three months from the date on which licensing contracts are signed, submit duplicates of said contracts to the administrative departments for Industry and Commerce of the place where they are located for record and future access. Specific measures for recording and future access shall be executed with reference to these measures.

**第十九条** 县级以上工商行政管理机关依据《商标法》及其他法律、法规和规章的规定,负责对商标使用许可行为的指导、监督和管理。

**Article 19** Administrative departments for Industry and Commerce at or above the county level shall be responsible for conducting guidance, supervision and administration of acts of trademark licensing in accordance with the provisions of the Trademark Law and other laws, rules, and regulations.

**第二十条** 利用商标使用许可合同从事违法活动的,由县级以上工商行政管理机关依据《商标法》及其他法律、法规和规章的规定处理;构成犯罪的,依法追究刑事责任。

**Article 20** Any one engaging in illegal activities by using trademark licensing contracts shall be punished by administrative departments for Industry and Commerce at the county level or above in accordance with the provisions of the Trademark Law and other laws, rules and regulations. If it constitutes crimes, it shall be subject to criminal liabilities.

**第二十一条** 本办法所称商标许可人是指商标使用许可合同中许可他人使用其注册商标的人,商标

被许可人是指符合《商标法》及《商标法实施细则》有关规定并经商标注册人授权使用其商标的人。

本办法有关商品商标的规定,适用于服务商标。

**Article 21**    For the purpose of these measures, "licensors" refers to persons involving in trademark licensing contracts who authorize others to use their registered trademarks, and "licensees" refers to persons who meet the requirements of the relevant provisions of the Trademark Law and the Implementation Rules for the Trademark Law and obtain the authorization of trademark registrants to use their trademarks.

Provisions regarding trademarks of goods in these measures shall be applicable to service trademarks.

**第二十二条**    商标使用许可合同示范文本由商标局制定并公布。

**Article 22**    The model text of trademark licensing contract shall be formulated and promulgated by the Trademark Office.

**第二十三条**    本办法自发布之日起施行。商标局一九八五年二月二十五日颁发的《商标使用许可合同备案注意事项》同时废止。

**Article 23**    These measures shall come into effect as of the date of promulgation. The Matters Need Attention in Record-Filing of Trademark Licensing Contract issued by the Trademark Office on February 25, 1985 is repealed.

附件一:

### 商标使用许可合同(示范文本)

合同编号:

签订地点:

商标使用许可人(甲方)＿＿＿＿＿＿

商标使用被许可人(乙方)＿＿＿＿＿＿

根据《中华人民共和国商标法》第二十六条和《商标法实施细则》第三十五条规定,甲、乙双方遵循自愿和诚实信用的原则,经协商一致,签订本商标使用许可合同。

一、甲方将已注册的使用在＿＿＿类＿＿商品上的第＿＿＿号＿＿＿＿＿商标,许可乙方使用在＿＿类＿＿＿＿商品上。

商标标识:

二、许可使用的期限自＿＿＿年＿＿＿月＿＿＿日起至＿＿＿年＿＿月＿＿日止。合同期满,如需延长使用时间,由甲、乙双方另行续订商标使用许可合同。

三、甲方有权监督乙方使用注册商标的商品质量,乙方应当保证使用该注册商标的商品质量。具体措施为:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿。

四、乙方必须在使用该注册商标的商品上标明自己的企业名称和商品产地。

五、乙方不得任意改变甲方注册商标的文字、图形或者其组合,并不得超越许可的商品范围使用甲方的注册商标。

六、未经甲方授权,乙方不得以任何形式和理由将甲方注册商标许可第三方使用。

七、注册商标标识的提供方式:

八、许可使用费及支付方式:

九、本合同提前终止时,甲、乙双方应当分别自终止之日起一个月内书面通知商标局及其各自所在地县级工商行政管理机关。

十、违约责任:

十一、纠纷解决方式:

十二、其他事宜:

本合同一式多份,自签订之日起三个月内,由甲、乙双方分别将合同副本交送所在地县级工商行政管理机关存查,并由甲方报送商标局备案。

商标使用许可人(甲方)商标使用被许可人(乙方)

(签章)(签章)

法定代表人法定代表人

地址地址

邮编邮编

年月日年月日

Attachment One:**Trademark Licensing Contract (Model Text)**

Contract No.:

Place of Execution:

Trademark Licensor (Party A) _____

   Trademark Licensee (Party B) _____

   In accordance with the provisions of Article 26 of the Trademark Law of the People's Republic of China and Article 35 of the Implementation Rules for the Trademark Law of the People's Republic of China, Party A and Party B shall voluntarily and in good faith execute this trademark licensing contract upon agreement through consultation.

   1. Party A hereby authorizes Party B to use No. _____ _____ trademark that has already been registered and used on _____ class ___ goods on _____ class ___ goods.

商标标识:

Representation of the registered trademark:

   2. Duration of license shall be from DD/MM/YYYY to DD/MM/YYYY. If said duration needs to be extended upon expiration of this Contract, Party A and Party B shall separately renew the trademark licensing contract.

   3. Party A shall have the right to supervise the quality of the goods in which Party B is to use the registered capital, and Party B shall guarantee the quality of said goods. Specific measures shall be: _____.

   4. Party B must indicate the name of its own enterprise and the origin of its own products on the goods in which the registered trademark is used.

   5. Party B may not randomly change the characters, figures, or a combination thereof of the registered trademark of Party A; nor may it use the registered trademark of Party A beyond the scope of goods for which the registered trademark has been licensed.

   6. Without the authorization of Party A, Party B may not in any form authorize any third party to use the registered trademark of Party A for any reason.

   7. The way in which representation of the registered trademark is presented:

   8. License fees and method of payment:

   9. In case of early termination of this Contract, Party A and Party B shall respectively inform the Trademark Office and the administrative departments for Industry and Commerce at the county level of the place where they are located in writing within one month from the date of termination of this Contract.

   10. Liabilities for breach of contract:

   11. Disputes solution:

   12. Miscellaneous:

   This Contract is executed in _____ counterparts, Party A and Party B will separately submit duplicates of this Contract to the administrative departments for Industry and Commerce at the county level of the place where they are located for record and future access within three months from the date of execution of this Contract.

Trademark Licensor (Party A)  Trademark Licensee (Party B)

(Signature):   (Signature):

Legal Representative:   Legal Representative:

Address:   Address:

Postal Code:   Postal Code:

DD/MM/YYYY   DD/MM/YYYY

   附件二:

**商标使用许可合同备案通知书**

   标合同备字〔 〕号

   _____:

   根据《中华人民共和国商标法》及《中华人民共和国商标法实施细则》有关规定,你〇于____年__月__日报送我局的许可_____使用的第_____号_____商标使用许可合同副本,经审查,我局予以备案。

   商标使用许可合同备案号为_____。

   特此通知。

   (商标局章)

年月日

Attachment Two:**Notice on Record-Filing of Trademark Licensing Contract**

Trademark Licensing Contract Record-Filing No. [    ]

_____:

_____:

   In accordance with the relevant provisions of the Trademark Law of the People's Republic of China and the Implementation Rules for the Trademark Law of the People's Republic of China, the duplicates of the contract for authorizing _____ to use No. ____ _____ trademark submitted by you on DD/MM/YYYY has been put on record upon our examination.

   Record-filing number of the trademark licensing contract shall be _____.

   Notification is hereby made.

   (Seal of the Trademark Office)

   DD/MM/YYYY