Confidential - Subject to Further Confidentiality Review

```
  1              IN THE UNITED STATES DISTRICT COURT
                   EASTERN DIVISION OF LOUISIANA
  2
  3   IN RE:  CHINESE-MANUFACTURED    MDL NO. 2047
      DRYWALL PRODUCTS LIABILITY
  4   LITIGATION                      SECTION:  L
  5                                   JUDGE FALLON
  6                                   MAG. JUDGE WILKINSON
  7   **  THIS DOCUMENT APPLIES TO:
          GERMANO, et al., vs. TAISHAN
  8       GYPSUM CO., LTD., f/k/a SHANDONG
          TAIHE DONGXIN CO. LTD.
  9       CASE NO. 2:09-CV-6687 (EDLA)
 10            CONFIDENTIAL - SUBJECT TO FURTHER
                    CONFIDENTIALITY REVIEW
 11
          VIDEOTAPED DEPOSITION OF BNBM OF AMERICA, INC.
 12         (REGISTERED AGENT DONALD H. WILSON, JR.)
 13           Taken on Behalf of the Plaintiffs
 14   DATE TAKEN:    DECEMBER 12, 2011
 15   TIME:         10:01 A.M. - 10:32 A.M.
 16   PLACE:        BOSWELL & DUNLAP
                    245 SOUTH CENTRAL AVENUE
 17                 BARTOW, FLORIDA 33831
 18
 19        Examination of the witness taken before:
                   Susan D. Wasilewski
 20          Registered Professional Reporter
               Certified Realtime Reporter
 21             Certified CART Provider
             ~ Realtime Systems Administrator ~
 22
 23              GOLKOW TECHNOLOGIES, INC.
 24         877.370.3377 ph | 917.591.5672 fax
 25                 deps@golkow.com
```

Confidential - Subject to Further Confidentiality Review

```
 1                    APPEARANCES
 2
    Counsel for Banner Supply Defendants:
 3
        SHUBHRA R. MASHELKAR, ESQUIRE
 4      Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
        Attorneys at Law
 5      3344 Peachtree Road, Suite 2400
        Atlanta, Georgia 30326
 6      (404) 591-9663
        smachelkar@wwhgd.com
 7
 8  Counsel for L & W Supply Corporation:
 9      WM. DAVID CONNER, ESQUIRE
        Haynsworth Sinkler Boyd, PA
10      Attorneys at Law
        75 Beattie Place, Eleventh Floor
11      Greenville, South Carolina 29601
        (864) 240-3200
12      dconner@hsblawfirm.com
13
    Counsel for Donald H. Wilson, Jr.:
14
        W. A. "DREW" CRAWFORD, ESQUIRE
15      Boswell & Dunlap
        Attorneys at Law
16      245 South Central Avenue
        Bartow, Florida 33831
17      (863) 533-7117
        drew@Bosdun.com
18
19                 APPEARANCES VIA TELEPHONE
20
    Counsel for Plaintiffs:
21
        PATRICK S. MONTOYA, ESQUIRE
22      JAMIE TUCHMAN, ESQUIRE
        Colson Hicks Eidson
23      Attorneys at Law
        255 Alhambra Circle, Penthouse
24      Coral Gables, Florida 33134
        (305) 476-7400
25      patrick@colson.com
```

Confidential - Subject to Further Confidentiality Review

```
 1              APPEARANCES VIA TELEPHONE
 2

    Counsel for Defendants' Liaison Counsel and Several
 3  Installers:
 4      DAVID KRUPSKI, ESQUIRE
        Rumberger, Kirk & Caldwell, P.A.
 5      Attorneys at Law
        80 Southwest 8th Street, Suite 3000
 6      Miami, Florida 33130
        (305) 358-5577
 7      dkrupski@rumberger.com
 8

    Counsel for Davis Construction Supply, Suncoast Building
 9  Materials and TMO Global Logistics:
10      SARA B. RODRIGUE, ESQUIRE
        Laborde & Neuner
11      Attorneys at Law
        One Petroleum Center,
12      Pinhook Road Suite 200
        Lafayette, Louisiana 70505
13      (337) 237-7000
        srodrigue@LN-Law.com
14
15  Counsel for Fireman's Fund Insurance Company, National
    Surety Corporation, and Interstate Fire and Casualty
16  Company:
17      MEGAN E. DONOHUE, ESQUIRE
        Jones, Walker, Waechter, Poitevent,
18        Carrere & Denegre, LLP
        Attorneys at Law
19      600 Jefferson Street, Suite 1600
        Lafayette, Louisiana 70501
20      (337) 593-7658
        mdonohue@joneswalker.com
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                APPEARANCES VIA TELEPHONE
 2
    Counsel for 84 Lumber:
 3
         PATRICK R. MALONE, ESQUIRE
 4       Buchanan, Ingersoll & Rooney, P.C.
         Attorneys at Law
 5       301 Grant Street, 20th Floor
         Pittsburgh, Pennsylvania 15219
 6       (412) 562-8800
         patrick.malone@bipc.com
 7
 8  Counsel for Interior/Exterior:
 9       CARLINA EISELEN, ESQUIRE
         Galloway, Johnson, Tomkins, Burr & Smith
10       Attorneys at Law
         701 Poydras Street, 40th Floor
11       New Orleans, Louisiana 70139
         (504) 525-6802
12       ceiselen@gjtbs.com
13
    ALSO PRESENT:
14
         DANAE STREETS, Certified Legal Video Specialist
15
16
17
18
19
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
1                    I N D E X

2   WITNESS                                    PAGE

3   CALLED BY THE PLAINTIFFS:

4    BNBM OF AMERICA, INC.

5      Registered Agent Donald H. Wilson, Jr.

6       DIRECT EXAMINATION BY MR. MONTOYA.............  7

7       CROSS-EXAMINATION BY MR. CONNER................ 28

8

9

10

11

12

13                  E X H I B I T S

14                                             PAGE

15  No. 1    Amended Notice of Oral and Videotaped

             Deposition Pursuant to Fed. R. Civ. P.

16           30(b)(6)                             8

17  No. 2    12-5-11 Letter and Enclosures from

             Donald H. Wilson, Jr.                22

18

    No. 3    United States Postal Service Domestic

19           Return Receipt                       27

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1              THEREUPON, the following proceedings were had

 2    and taken at 10:01 a.m.:

 3              THE VIDEOGRAPHER:  We are now on the record.

 4         My name is DaNae Streets and I am the videographer

 5         for Golkow Technologies.  Today's date is

 6         December 12th, 2011, and the time is 10:01 a.m.

 7         This video deposition is being held in Bartow,

 8         Florida, in regards to the Chinese-manufactured

 9         Drywall Products Liability Litigation filed in the

10         United States District Court for the Eastern

11         District of Louisiana.  The deponent is BNBM of

12         America, Incorporated, Registered Agent Donald

13         Wilson, Jr.

14              Counsel will be noted on the stenographic

15         record.  The court reporter is Susan Wasilewski and

16         will now swear in the witness.

17              THE COURT REPORTER:  Sir, would you raise your

18         right hand?  Do you solemnly swear or affirm the

19         testimony you're about to give will be the truth,

20         the whole truth, and nothing but the truth?

21              THE WITNESS:  I do.

22              THE COURT REPORTER:  Thank you.

23              BNBM OF AMERICA, INC. (Registered Agent Donald

24    H. Wilson, Jr.), called as a witness by the Plaintiffs,

25    having been first duly sworn, testified as follows:
```

```
 1                    DIRECT EXAMINATION

 2   BY MR. MONTOYA:

 3        Q.   Good morning, Mr. Wilson.  I appreciate you

 4   appearing for deposition this morning.

 5        A.   Good morning, Patrick.

 6        Q.   Again, this is Patrick Montoya.  If you have

 7   any difficulties understanding me because of the phone

 8   connection, please let me know.

 9        A.   You're coming in loud and clear.

10        Q.   Okay.  Very good.  Please tell us your name for

11   the record.

12        A.   Donald H. Wilson.

13        Q.   What's your business address, sir?

14        A.   245 South Central Avenue, Bartow, Florida.

15        Q.   You're here today pursuant to a subpoena served

16   in the Germano case in MDL 2047.  You're aware of that,

17   correct?

18        A.   Yes, sir.

19        Q.   Have you had the opportunity to review the

20   subpoena?

21        A.   Yes, I have.

22        Q.   Okay.  And we're going to mark that as

23   Exhibit 1 to the deposition.  Do you have a copy there

24   with you?

25        A.   The amended subpoena?
```

Confidential - Subject to Further Confidentiality Review

1      Q.   Correct, sir.

2      A.   Yes, I do.

3           (Exhibit No. 1 was marked for identification.)

4      Q.   As you know, there were documents that were

5  requested of you or of BNBM of America in this subpoena.

6  You're here in what capacity today?

7      A.   Okay.  I was the resident agent and

8  participated in the formation of BNBM of America, Inc.,

9  in 2000, the year 2000.

10     Q.   Right.

11     A.   I've had no -- since the year 2000 I have had

12  no correspondence or communication with that corporation

13  or any of the principals of that corporation, and I have

14  not been appointed to speak on behalf of the corporation

15  pursuant to Rule 30(b)(6).

16          I have sent by certified mail copies of the

17  notice of deposition to the three mailing addresses that

18  were available for the corporation, either through our

19  files or through the Florida Secretary of State.

20     Q.   Great.  Thank you.  Can you describe for us how

21  your engagement as the registered agent occurred in 2000

22  with BNBM of America?

23     A.   My partner, Dabney Conner, had done some work

24  for some of the principals I'm not familiar with, and it

25  was as a result of that representation.

Confidential - Subject to Further Confidentiality Review

```
 1        Q.   Do you know the names of those principals?

 2        A.   The last name was Lee.  I'm not -- I believe

 3   there was a Dan Lee and a David Lee.

 4        Q.   Okay.  Lee, L-e-e?

 5        A.   Correct.

 6        Q.   Do you know the nature of that representation,

 7   what the matters concerned that Mr. Coleman represented

 8   the Lees on?

 9        A.   It's Conner.  It's Dabney, D-a-b-n-e-y, Conner,

10   C-o-n-n-e-r.

11        Q.   Conner.  I apologize.

12        A.   I'm not familiar with that.  He is almost

13   exclusively a litigator, so it must have been some sort

14   of --

15                  (Squealing noise.)

16        A.   You still there?

17        Q.   I'm sorry.  Yes.

18        A.   So it must have been some sort of litigated

19   matter, but I'm not familiar with that.

20        Q.   That would have been on behalf of BNBM of

21   America, to the best of your --

22        A.   No, no, no.  It would have been before the

23   corporation was formed.

24        Q.   Okay.  That would have been on behalf of the

25   Lees, one or both of them?
```

Confidential - Subject to Further Confidentiality Review

```
 1       A.   Correct.

 2       Q.   And then that led to your being retained or

 3   engaged as registered agent for BNBM of America?

 4       A.   Correct.

 5       Q.   Did you understand that the Lees, one or both

 6   of them, were the corporate principals of BNBM of

 7   America?

 8       A.   I don't -- I really don't recall any

 9   conversations about that.  Any information I have is

10   based on what the articles of incorporation we prepared

11   stated.

12       Q.   Did you ever meet with anyone from BNBM of

13   America, personally meet with them?

14       A.   Yes.

15       Q.   Do you recall who you met with?

16       A.   Other than either David or Dan Lee, and I

17   really don't have any specific recollection of those

18   meetings, but I do believe I met with a Mr. Lee.

19       Q.   Would you -- did you meet with Mr. Lee, one of

20   the Mr. Lees, at your offices in Bartow, Florida?

21       A.   Yes.

22       Q.   Would that have been in 2000?

23       A.   Yes.

24       Q.   Did you have any other meetings after that

25   meeting with one or -- do you think it was one or both
```

Confidential - Subject to Further Confidentiality Review

1   of the Mr. Lees?

2        A.   I'm not certain.  My recollection was it was

3   just one of them, but I'm not certain of that.

4        Q.   Okay.  Did you have any other meetings

5   face-to-face with any of the other people that you

6   understood to be the principals of BNBM of America?

7        A.   I really -- I don't recall -- I do believe

8   there was another gentleman whose name I don't recall,

9   but this was in the year 2000.  It was in the office I

10  met with him, but I don't --

11       Q.   In going through the records that we do have on

12  BNBM of America, and what I'm looking at also is what

13  you've attached to your correspondence that was from

14  December 5th, 2011, which is the board of directors

15  information for BNBM of America, and also I'm relying on

16  some additional discovery we had in the case, there is

17  also a David Wei, W-e-i, that was involved in the case.

18  Do you recognize that name?

19       A.   No, I don't.

20       Q.   Okay.  Do you know -- are you confident that

21  the David Lee was the L-e-e as opposed to a Wei or a

22  W-e-i?

23       A.   Yes, I'm certain of that.

24       Q.   Okay.  When you met with Mr. Lee in 2000, how

25  long did your meeting last?

Confidential - Subject to Further Confidentiality Review

1      A.    Actually, I have no current recollection of any

2   of the details of the meeting.  I'm assuming there was

3   some discussion about forming the corporation and we got

4   the information for the articles of incorporation, but I

5   really have no current recollection of that meeting.

6      Q.    What do you recall about the meeting?

7      A.    It was here at this office, I believe it was in

8   Mr. Conner's office, and I was asked to form this

9   corporation.

10     Q.    Do you remember if you -- were you able to

11  converse with Mr. Lee in English?

12     A.    Yes.

13     Q.    No interpreter?

14     A.    Yeah, I do not recall any interpreter.

15     Q.    Okay.  Do you recall for approximately how long

16  you met with him for?

17     A.    No, I do not.

18     Q.    Was there anything particular about the

19  articles -- drafting or preparing the articles of

20  incorporation that were different?  Here's what I'm

21  asking.  I'm assuming you form corporations for people

22  on a regular basis.

23     A.    Correct.

24     Q.    Was there anything that was requested of you

25  that was any different in terms of forming a Florida

Confidential - Subject to Further Confidentiality Review

 1    corporation that was different in this matter?

 2         A.    There was an Oregon corporation, and I don't --

 3    it may have been by the same name that was domesticated

 4    in Florida and the Oregon corporation was dissolved.

 5         Q.    Was the Oregon corporation dissolved before you

 6    formed the Florida corporation?

 7         A.    I don't know that.

 8         Q.    Okay.

 9         A.    I believe I --

10         Q.    Was there anything else in particular that you

11    recall about the transaction itself, the forming of the

12    corporation?

13         A.    No.

14         Q.    Do you recall how you were paid for your

15    services?

16         A.    No, I do not.

17         Q.    Would there be a record of that?  Here's what

18    I'm really asking:  Whether it be check, by credit card,

19    by cash?

20         A.    Well, it would not have been by credit card.

21    It would have been by check.  I could go back and check

22    the file on that, if you would like me to.  I don't know

23    off the top of my head how it was done.

24         Q.    Okay.  So you may have a canceled check in

25    there so we can tell what bank the check was drawn on?

Confidential - Subject to Further Confidentiality Review

1    A.    Correct.

2    Q.    Okay.  Have you gone back to your files for the

3    forming of BNBM of America of Florida?

4    A.    Yes.

5    Q.    Without -- and you tell me.  Obviously, you

6    being an attorney, you will let me know if you believe

7    I've gone too far into what you perceive is an

8    attorney-client privilege, but what is contained in that

9    file that you -- that you have?

10   A.    Yeah, I don't believe I can disclose that as

11   attorney work product.

12   Q.    I'd ask you to say it this way.  If you can

13   describe the items like that as you would in a privilege

14   log, so that you're not giving away information that you

15   believe is privileged, rather generally describe it so

16   that if I had to request it, I would know what I'm

17   requesting.

18   A.    I have nothing in my file that is during the

19   relevant time frame of the subpoena.

20   Q.    So all your communication would be from 2000

21   forward, I think is what you're telling me?

22   A.    Or backwards.

23   Q.    I'm sorry.  Exactly.

24   A.    Right.

25   Q.    Backwards.  Nothing from -- you have nothing

1    from 2000 forward in your files for BNBM of America?

2        A.    Correct.

3        Q.    Okay.  Do you know if Mr. Conner has been

4    engaged by the Lees at any other time other than in

5    2000, when he helped make the connection for you to

6    become the registered agent?

7        A.    Not to my knowledge.

8        Q.    Okay.  Do you know the name of the case, the

9    one litigation matter Mr. Conner was involved in with

10   BNBM of America?

11       A.    No, I do not.

12       Q.    Is Mr. Conner still with your firm?

13       A.    Yes.

14       Q.    Okay.  So it would be a better question for

15   him?

16       A.    Correct.

17       Q.    Do you recall for approximately how long you

18   met with Mr. Lee in 2000?

19       A.    No, I do not.

20       Q.    Did he give you any description or

21   understanding of what BNBM of America's business would

22   be in Florida?

23       A.    I believe that would be privileged, if I did.

24       Q.    Okay.  Did he discuss with you -- other than

25   what's in the articles of incorporation, that's what

1    would be privileged, correct?

2        A.    Correct.

3        Q.    Okay.  Other than -- did he talk to you at all

4    about BNBM meaning Beijing New Building Materials and

5    not the Florida corporation, in other words, the

6    company -- the parent corporation in China?

7        A.    I believe any discussions such as that that I

8    might have had would be privileged.

9        Q.    Okay.  Let me ask it to you this way.  Do you

10   recall any conversation about it without revealing any

11   content?

12       A.    No, I do not.

13       Q.    Okay.  Do you recall any -- did you have any

14   conversation with him about what BNBM of America's

15   business would be in Florida?

16       A.    I believe that would be privileged information.

17       Q.    Okay.  Let me ask it this way.  I'm trying to

18   ask all these questions this way.

19       A.    That's all right.

20       Q.    Did you have a conversation with him about

21   those -- about those matters, what BNBM of America's

22   business would be?

23       A.    I do believe there was some discussion of that,

24   yes.

25       Q.    Okay.  Do you know who Mr. Lee was employed by

```
 1    at the time he came to you to be a registered agent?

 2        A.   No, I do not.

 3        Q.   Did you have an understanding whether BNBM of

 4    America had rented, leased or owned any real estate in

 5    Florida in 2000 when they came to you?

 6        A.   No, I do not.

 7        Q.   Okay.  Do you have any knowledge of what's

 8    contained at the address that is listed on some of the

 9    filings?  I believe there is a 5015 East Hillsborough

10    address, Tampa, Florida 33810, on the corporate filings.

11        A.   Yeah, I have no information regarding those

12    properties or addresses.

13        Q.   You didn't handle any leases or anything, any

14    property dealings for BNBM of America?

15        A.   I did not.

16        Q.   Is that correct?

17        A.   That's correct.

18        Q.   Okay.  I was looking at the corporate filings

19    and I'm looking at one that you attached to your letter

20    to us.  There is also an FEI number there, a Federal

21    Employment ID number.  Did you have any role in

22    acquiring that number for them?

23        A.   I don't recall having that.  As a general

24    practice, I urge clients to have their accountant obtain

25    those numbers.
```

Confidential - Subject to Further Confidentiality Review

```
 1        Q.   Okay.  Let me go back to a question.  I got off

 2   the topic.  You said that you had the file for BNBM of

 3   America and I understood that you have some materials

 4   that you believe may be privileged.  Can you describe

 5   generally for me what's in the file?

 6        A.   Well, there is nothing in the file that is

 7   during the relevant time frame of the deposition.

 8        Q.   Okay.  Everything in your BNBM of America file

 9   is 2000 and going backwards?

10        A.   Well, the only -- I received a summons in

11   another litigation as registered agent that I've sent on

12   since 2000, but that is all, the only thing.

13        Q.   Now, those summonses wouldn't be privileged,

14   you would agree with me, correct?

15        A.   No, they would not.  I agree with you.

16        Q.   Okay.  Would you be willing to produce those

17   documents to us?

18        A.   Certainly.

19        Q.   Okay.  Now, going from anything up until 2000,

20   your BNBM of America file, what is in there, generally

21   speaking, without telling me the contents so I don't

22   invade any potential attorney-client privilege?

23        A.   Well, there is nothing in the file after 2000

24   other than --

25        Q.   You made that clear.
```

Confidential - Subject to Further Confidentiality Review

```
1      A.    Okay.

2      Q.    I'm asking what's in there before 2000.

3      A.    Well, certainly there is the information

4  regarding the formation of the corporation.  I'm not --

5  I'm not certain as far as what my attorney-client

6  privilege extends as far as the work I did for my

7  client, disclosing the type of work which would be

8  responsive for your question.  I think that's privileged

9  information.  I would claim privilege for documents that

10  I prepared in connection with my representation of this

11  client.

12      Q.    Let me ask you a new question.  I'll ask them

13  in this way.  This is going from 2000 back.

14      A.    All right.

15      Q.    I mean '99, '98, et cetera.  I assume there is

16  correspondence there between you and Mr. Lee?

17      A.    There is correspondence with my client, yes.

18      Q.    Yes.  And there would be some record of

19  payment, as we discussed before?

20      A.    Correct.

21      Q.    I assume there would be time listings as well,

22  or some sort of accounting or billing from you?

23      A.    Correct.

24      Q.    Any other phone logs, phone messages, would

25  those be contained in there?
```

```
 1      A.    Probably not.  I don't believe there are any.

 2      Q.    Okay.  I had asked you about how you met with

 3  Mr. Lee.  After you met with him in 2000, did you have

 4  any communications with him by phone after that initial

 5  meeting?

 6      A.    I don't have any specific recollection of that,

 7  but it would be very likely that I did.

 8      Q.    Did you talk to anyone else about BNBM of

 9  America in relation to your representation of him as a

10  registered agent other than Mr. Lee, in other words, any

11  other employees or officers or directors?

12      A.    I'm certain I did.

13      Q.    Do you know the names of those individuals?

14      A.    No, I don't.  Off the top of my head, I do not.

15      Q.    Might they be contained in your file?

16      A.    Yes.

17      Q.    Okay.  Do you know -- do you recall if those

18  individuals were employees or directors or how they were

19  affiliated with BNBM of America?

20      A.    No, I do not.

21      Q.    Okay.  If you look through the attachments that

22  you put on the December 5th letter, which were the

23  filings with the State of Florida, there is a board of

24  directors on there that's pretty consistent for several

25  years.  Do you recall meeting any of these individuals
```

Confidential - Subject to Further Confidentiality Review

```
 1   or talking with them?

 2       A.   What are the names?

 3       Q.   I'll go through the names.  The first name --

 4   you'll forgive my pronunciation.

 5       A.   That's all right.

 6       Q.   The first name is Yu, Y-u, Feng, F-e-n-g?

 7       A.   I do not recall that.

 8       Q.   Okay.  And then I think it's the same.  It may

 9   be Xian, X-i-a-n, Feng Yu?

10       A.   I do not recall.

11       Q.   Same individual.

12       A.   I do not recall.

13       Q.   How about Song Zhi Ping?

14       A.   I have no recollection of that name.

15       Q.   Another one is Cao, C-a-o, Jiang, J-i-a-n-g,

16   Lin, L-i-n, Cao Jiang Lin?

17       A.   He may have signed the -- that name is

18   familiar.  That may have been who we --

19       Q.   I'm sorry.  It may have been who?

20       A.   We may have met with that gentleman.  I believe

21   that was who accompanied Mr. Lee.

22       Q.   Okay.  All right.  So I was under a

23   misunderstanding.  It might have been my -- your meeting

24   with Mr. Lee, there were two people there?

25       A.   Yes, I believe so.
```

Confidential - Subject to Further Confidentiality Review

1      Q.    Okay.  And I'm looking at the 2001 filing and I

2   see a Li Jiang, L-i J-i-a-n-g, and that's whose name is

3   printed as the signature.  Do you see that?

4      A.    Let me look.

5      Q.    Sure.

6      A.    Yes, I see in the certificate of domestication

7   that I witnessed in June of 2000, Mr. F-e-n-g was listed

8   as president and he obviously signed that in my

9   presence.

10      Q.    All right.  Let's work through that, because

11   that will make things a lot easier.  We've attached

12   this, I believe, the December 5th.  It should be

13   Exhibit 2.

14          MR. MONTOYA:  Susan, could you mark that for

15      us?

16          THE COURT REPORTER:  Is this a copy?

17          THE WITNESS:  That's my only copy.

18          THE COURT REPORTER:  He's just got his

19      original.  We'll make a copy afterwards.  Is that

20      okay, Patrick?

21          MR. MONTOYA:  That's fine.

22          THE WITNESS:  That's fine.

23          (Exhibit No. 2 was marked for identification.)

24      Q.    So we're looking at Composite Exhibit 2, which

25   is a letter you authored on December 5th, 2011?

Confidential - Subject to Further Confidentiality Review

```
 1        A.   Correct.

 2        Q.   That you authored and addressed to Ervin

 3   Gonzalez?

 4        A.   Correct.

 5        Q.   On the fifth page of that is the certificate of

 6   domestication.

 7        A.   Yes.

 8        Q.   What is a certificate of domestication?

 9        A.   That's something new to me.  This may be the

10   only time I recall ever having done that.  They were

11   trying to move the corporation apparently from Oregon to

12   Florida.

13        Q.   Okay.  Do you know why they were moving the

14   corporation from Oregon to Florida?

15        A.   No.

16        Q.   Now, looking at the certificate of

17   domestication, one signature on there looks to be an

18   Annette Marsh, M-a-r-s-h.

19        A.   Yes.  That was my assistant.

20        Q.   Okay.  And the second one is you.  Is that your

21   signature?

22        A.   Correct.

23        Q.   Okay.  And the third signature is Yu, Y-u,

24   Xian, X-i-a-n, Feng, F-e-n-g?

25        A.   Correct.
```

Confidential - Subject to Further Confidentiality Review

1       Q.    Is that the other gentleman that was with

2   Mr. Lee when you met in 2000?

3       A.    I believe so, yes.

4       Q.    Okay.  This document is dated June 19th, 2000.

5   Do you believe that would have been the date of your

6   meeting?

7       A.    Yes.

8       Q.    Do you remember if Mr. Feng could speak

9   English?

10      A.    I do not recall.

11      Q.    Okay.  It looks like the next page after the

12  certificate of domestication is the same and then there

13  is the articles of incorporation.

14      A.    Right.

15      Q.    The articles of incorporation are dated the

16  same date, June 19th, 2000?

17      A.    Correct.

18      Q.    And this was also executed on the same day by

19  Mr. Feng, correct?

20      A.    Yes.

21      Q.    Now, on the notary block, it notes that

22  Mr. Feng produced a passport to Ms. Marsh --

23      A.    Correct.

24      Q.    -- for signature verification.  Do you see

25  that?  Do you know if you have a copy of Mr. Feng's

Confidential - Subject to Further Confidentiality Review

1   passport?

2       A.   I do not.

3       Q.   You do not have one?

4       A.   I do not have a copy of it, yes.

5       Q.   Okay.  Now, the business reports that are

6   attached after the articles of incorporation from 2001

7   through 2005, did you have any involvement in filing

8   those at all?

9       A.   None whatsoever.

10       Q.   Okay.  When was your last contact that you can

11   recall with BNBM of America, other than the June 19th,

12   2000 meeting that we've discussed?

13       A.   I do not recall any meetings after that.

14       Q.   Okay.  Other than the -- you said you had

15   received some summons in other litigation.  I would

16   assume since 2000.

17       A.   Yeah.  I believe it's all in 2010.

18       Q.   Okay.  All related, from what you could tell,

19   to a problem with Chinese drywall?

20       A.   That's correct.

21       Q.   Okay.  Do you have any knowledge at all about

22   BNBM of America's involvement in the importing or

23   exporting or manufacturing of Chinese drywall?

24       A.   No, I do not.

25       Q.   Okay.  And you've gone through the subpoena

Confidential - Subject to Further Confidentiality Review

1    that we attached as Exhibit 1.  There are 27 document

2    requests in there.  Have you looked those over?

3         A.   Yes, I have.

4         Q.   Okay.  Do you have any documents that relate to

5    those matters that were requested?

6         A.   I do not believe so.  I do not.

7         Q.   Okay.  Have you ever heard of a company called

8    Stoneworks?

9         A.   I have no recollection of that.

10        Q.   Okay.  I don't have much more.  Let me take a

11   quick look through my notes to see if I have anything

12   else.  The other folks on the phone may have questions

13   but I'm about done, I believe.

14             The summons that you forwarded to the PO box,

15   they've all been returned to you?

16        A.   The summons for this deposition?

17        Q.   Well, that's a good question.  For this

18   deposition, yes, let's start there.

19        A.   One of -- we got a return receipt signed for

20   one of them.  The one addressed to 5015 East

21   Hillsborough Avenue was signed by a Ginny, G-i-n-n-y,

22   Bach, B-a-c-h, on December 6th.  We got that one back,

23   the return receipt.

24        Q.   Could you provide a copy of that to the court

25   reporter after we conclude here today?

Confidential - Subject to Further Confidentiality Review

```
 1    A.   Certainly.

 2         MR. MONTOYA:  And we'll mark that as Exhibit 3

 3    as well.

 4         (Exhibit No. 3 was marked for identification.)

 5    Q.   Have you sent anything to BNBM of America at

 6    the post office box that's listed here on the report,

 7    172356?

 8    A.   Right.  As I indicated to you in my letter,

 9    those were returned undeliverable.

10         MR. MONTOYA:  Okay.  Sir, I don't have any

11         further questions at this time.  I will turn it over

12         to the other questioners at this point.  Thank you

13         for your time.

14         THE WITNESS:  Okay.  Thank you, and I do

15         appreciate you moving the deposition here.  That

16         saved me a morning.

17         MR. MONTOYA:  Not a problem.

18         Does anybody else have any questions?

19         MR. CONNER:  Patrick, David Conner.  How are

20    you?

21         MR. MONTOYA:  Good morning.

22         MR. CONNER:  Let me follow up, if I could, with

23    Mr. Wilson, just a couple of quick questions.

24

25
```

```
1                        CROSS-EXAMINATION

2   BY MR. CONNER:

3        Q.   Mr. Wilson, was your firm involved in the

4   creation of the bylaws for BNBM of America,

5   Incorporated?

6        A.   I believe we did a standard set of bylaws that

7   we provided to them.

8        Q.   Okay.  And do you have a copy of those in your

9   file that you would be willing to produce also?

10       A.   Well, that was prior to the relevant time

11  period and I believe that may be subject to

12  attorney-client privilege.  I don't believe that's a

13  public record.

14            MR. CONNER:  Okay.  Thank you very much.

15            That's all I have, Patrick.

16            MR. MONTOYA:  Anybody else have anything at

17       all?

18                      (No response.)

19            MR. MONTOYA:  All right.  Mr. Wilson, we thank

20       you for your time.  I will let you know, we've

21       talked about this case before and in terms of the

22       attorney-client issues, we completely understand

23       your position.  It may be something we need to raise

24       with the court later, but it's certainly something

25       if we need to go further, that we will discuss with
```

Confidential - Subject to Further Confidentiality Review

1     you further and try to work out among all parties,

2     but we really do appreciate your efforts, especially

3     in your capacity as a registered agent here today.

4          THE WITNESS:  We'll certainly be cooperative.

5          MR. MONTOYA:  Thank you.  And thank you, Susan.

6          THE COURT REPORTER:  Thank you, Patrick.

7          MR. MONTOYA:  We'll order it.

8          THE COURT REPORTER:  Thank you.

9          THE VIDEOGRAPHER:  The time is now 10:32 a.m.

10    on December 12, 2011.  This concludes the deposition

11    of Donald Wilson, Jr., consisting of one media unit.

12    We're off the record.

13         THEREUPON, the Deposition of BNBM OF AMERICA,

14    INC. (Registered Agent Donald H. Wilson, Jr.), taken at

15    the instance of the Plaintiffs, was concluded at

16    10:32 a.m.

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1                  CERTIFICATE OF REPORTER OATH

 2

 3   STATE OF FLORIDA

 4   COUNTY OF POLK

 5          I, Susan D. Wasilewski, Registered Professional

 6   Reporter, Certified Realtime Reporter, Certified CART

 7   Provider, Certified Manager of Reporting Services,

 8   Florida Professional Reporter, and Notary Public in and

 9   for the State of Florida at large, hereby certify that

10   the witness named herein appeared before me on

11   _____, and was duly sworn.

12          WITNESS my hand and official seal this

13   _____.

14

15

16          _____

17          SUSAN D. WASILEWSKI, RPR, CRR, CCP, CMRS, FPR

18          NOTARY PUBLIC - STATE OF FLORIDA

19          MY COMMISSION NO. EE123944

20          EXPIRES:  10-23-15

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                 CERTIFICATE OF REPORTER

 2   STATE OF FLORIDA

 3   COUNTY OF POLK

 4         I, Susan D. Wasilewski, Registered Professional

 5   Reporter, Certified Realtime Reporter, Certified CART

 6   Provider, Certified Manager of Reporting Services, and

 7   Florida Professional Reporter, do hereby certify that I

 8   was authorized to and did stenographically report the

 9   examination of the witness named herein; that a review

10   of the transcript was requested; and that the foregoing

11   transcript is a true record of my stenographic notes.

12         I FURTHER CERTIFY that I am not a relative,

13   employee, or attorney, or counsel for any of the

14   parties, nor am I a relative or employee of any of the

15   parties' attorney or counsel connected with the action,

16   nor am I financially interested in the outcome of this

17   action.

18         DATED THIS _____ at Lakeland, Polk

19   County, Florida.

20

21         _____

           SUSAN D. WASILEWSKI, RPR, CRR, CCP, CMRS, FPR

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                  -  -  -  -  -  -

                 E R R A T A

 2                  -  -  -  -  -  -

 3

 4    PAGE  LINE   CHANGE

 5    ____  ____   _____

 6        REASON:  _____

 7    ____  ____   _____

 8        REASON:  _____

 9    ____  ____   _____

10        REASON:  _____

11    ____  ____   _____

12        REASON:  _____

13    ____  ____   _____

14        REASON:  _____

15    ____  ____   _____

16        REASON:  _____

17    ____  ____   _____

18        REASON:  _____

19    ____  ____   _____

20        REASON:  _____

21    ____  ____   _____

22        REASON:  _____

23    ____  ____   _____

24        REASON:  _____

25
```

Confidential - Subject to Further Confidentiality Review

```
 1

 2              ACKNOWLEDGMENT OF DEPONENT

 3

 4              I,_____, do

 5    hereby certify that I have read the

 6    foregoing pages, and that the same is

 7    a correct transcription of the answers

 8    given by me to the questions therein

 9    propounded, except for the corrections or

10    changes in form or substance, if any,

11    noted in the attached Errata Sheet.

12

13

14    _____

15     DONALD H. WILSON, JR.              DATE

16

17

18    Subscribed and sworn

      to before me this

19    _____ day of _____, 20_____.

20    My commission expires:_____

21

      _____

22    Notary Public

23

24

25
```