## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>The Mitchell Co., Inc. v. Knauf Gips KG, et al., Case No. 09-4115 (E.D. La.) | MDL NO. 2047<br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THE PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO TAISHAN'S RENEWED MOTION PURSUANT TO RULES 55(C) AND 12(B)(2) TO VACATE THE ENTRY OF DEFAULT AND TO DISMISS AND AMICUS BRIEF ON <u>FLORIDA LAW RELATING TO JURISDICTIONAL ISSUES RAISED BY TAISHAN</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION  ................................................................................................. 1

II.     STATEMENT OF FACTS  ................................................................................... 2

III.    ARGUMENT  ........................................................................................................ 5

        A.    Taishan is Subject to Personal Jurisdiction Under the
              Florida Long-Arm Statute  ........................................................................ 5

        B.    Both Taishan  Defendants can be Treated as the Same Entity for Purposes
              of Evaluating Personal Jurisdiction  ....................................................... 8

        C.    Taishan Systematically Targeted and Conducted Business in Florida
              For Pecuniary Benefit  ............................................................................ 10

        D.    Florida Statutes Section 48.193(1)(a) Provides Jurisdiction Over TG
              Because TTP Is TG's Agent  .................................................................. 12

        E.    Florida Courts Have Jurisdiction Over Taishan Because it Committed
              Torts Under Florida Statutes Section 48.193(1)(b) ............................... 15

        F.    Florida Courts Have Jurisdiction Under Fla. Stat. Section 48.193(1)(f)(1)-(2) ... 16

        G.    The Preliminary Default Judgment Against Taishan Should Not
              Be Vacated  ............................................................................................. 19

IV.     CONCLUSION ................................................................................................... 20

## TABLE OF AUTHORITIES

<u>Cases</u>

Annunciation v. W. Capital Fin. Svcs. Corp.,
   1996 WL 534049 (9th Cir. Sept. 19, 1996) ....................................................... 20

Atlantis Marina & Yacht Club, Inc. v. R & R Holdings, Inc.,
   766 So. 2d 1163 (Fla. 3d DCA 2000) ................................................................. 8

Cable/Home Commc'n, Corp. v. Network Productions, Inc.,
   902 F.2d 829 (11th Cir. 1990) ........................................................................... 15

Cal-Mar Indus. Inc. v. Wilson Research Corp.,
   442 F. Supp. 796 (S.D. Fla. 1977) ..................................................................... 19

Citicorp Ins. Brokers (Marine), Ltd. v. Charman,
   635 So. 2d 79 (Fla. 1st DCA 1994) ................................................................... 11

Clay Cooperative Inc., v. Johnson,
   873 So.2d 1182 (Fla. 2004)................................................................................ 13

Damoth v. Reinitz,
   485 So. 2d 881 (Fla. 2d DCA 1986) .................................................................. 11

Exhibit Icons, LLC v. XP Companies, LLC,
   609 F. Supp. 2d 1282 n.9 (S.D. Fla. 2009) ....................................................... 16

Goldberg v. Florida Power & Light Company,
   899 So.2d 1105 (Fla. 2005)......................................................................... 13, 14

In re Chinese-Manufactured Drywall Prods. Liab. Litig.,
   (Germano), 706 F. Supp. 2d 655 (E.D. La. 2010) ....................................... 17, 20

Joseph v. Chanin,
   869 So. 2d 738 (Fla. 4th DCA 2004) .................................................................. 8

Kowkabany v. Home Depot, Inc.,
   606 So.2d  (Fla. 1st DCA 1992) ....................................................................... 13

Machtinger v. Inertial Airline Services, Inc.,
   937 So.2d 730 (Fla. 3d DCA 2006) ................................................................... 15

McCain v. Florida Power Corp.,
   593 So.2d 500 (Fla. 1992)................................................................................. 13

McHugh v. Kenyon,
    547 So. 2d 318 (Fla. 4th DCA 1989) ......................................................................... 8

Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,
    288 F.3d 1264 (11th Cir. 2002) ....................................................................... 12, 13

New Lenox Indus., Inc. v. Fenton,
    510 F. Supp. 2d 893 (M.D. Fla. 2007) ................................................................... 7

Nida Corp. v. Nida,
    118 F. Supp. 2d 1223 (M.D. Fla. 2000) ............................................................. 7, 13

Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,
    701 F.2d 889 (11th Cir. 1983) ............................................................................. 14

Pappalardo v. Richfield Hospitality Services, Inc.,
    790 So.2d 1226 (Fla. 4th DCA 2001) .................................................................. 14

PFM Air, Inc. v. Dr. Ing. HC. F. Porsche A.G.,
    751 F. Supp. 2d 1264 (M.D. Fla. 2010) ............................................................. 8, 13

Posner v. Essex Ins. Co., Ltd.,
    178 F.3d 1209 (11th Cir. 1999) .......................................................................... 6, 16

Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,
    9 F.3d 415 (5th Cir. 1993) ...................................................................................... 6

State v. Am. Tobacco Co.,
    707 So.2d 851 (Fla. 1st DCA 1998) ...................................................................... 9

Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,
    447 F.3d 1357 (11th Cir. 2006) ............................................................................ 13

Union Memorial Chapel v. Hutt,
    670 So.2d 64 (Fla. 1996) ...................................................................................... 14

Wendt v. Horowitz,
    822 So. 2d 1252 (Fla. 2002) ................................................................................. 16

Wetzel v. Fisherman's Wharf of Pompano Beach, Inc.,
    771 So. 2d 1195 (Fla. 4th DCA 2000) ................................................................. 19

Statutes

Fla. Stat. § 48.193 ........................................................................................................... 8

Fla. Stat. § 501.201, et seq. ........................................................................................... 13

The Plaintiffs' Steering Committee ("PSC"), hereby files its opposition to Defendant Taishan Gypsum Co. Ltd.'s ("TG") Motion to Vacate the Entry of Default and to Dismiss This Action and its Amicus Brief on Florida Law Relating to Jurisdictional Issues Raised by Taishan. In support thereof, the PSC states as follows:

## I.   <u>INTRODUCTION</u>

TG attempts to avoid an unfavorable ruling by this Court on jurisdiction over its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP"), by choosing the *Mitchell* case as a test of this Court's jurisdiction in Florida, because TTP is not a named defendant in *Mitchell*. A reasonable interpretation of the facts and applicable law lead to the conclusion that TG's strategy fails because TG and TTP should be treated as one and the same since TG controlled or had the right of control over TTP, and because TG and TTP failed to respect corporate formalities so that the acts of one are imputed to the other. TTP is TG's agent; TG acted for TTP and vice-versa; and TTP shipped nearly 9.4 million square feet of drywall to Florida under TG's direction and control, as set forth herein. *See* Affidavit of Russ M. Herman dated 5/7/2012 ("Herman Aff.").[1] Even targeting the *Mitchell* case, TG cannot avoid a finding of jurisdiction by this Court due to TG's aggressive, targeted, systematic and continuous contacts with the State of Florida to sell drywall and a multitude of other construction materials in Florida and elsewhere. As more fully discussed herein, TG's drywall was installed in homes that Mitchell constructed in Florida. Much of that drywall was shipped from China to the port of Pensacola, Florida.

For the sake of efficiency, the PSC hereby adopts by reference its Global Statement of Facts and Global Memorandum of Law in Opposition to: (1) Taishan's Renewed Motions to

---

[1] All references to exhibits are contained in the Herman Affidavit, which is Exhibit A to the PSC's Global SOF, unless otherwise noted.

Vacate the Default Judgments and Dismiss the Complaints In *Germano* and *Mitchell* and (2) Taishan's Motions to Dismiss the Complaints in *Gross* and *Wiltz* [hereafter "PSC Global SOF" and "PSC Global MOL," respectively].  This Response will specifically address the matters particular to Florida and the *Mitchell* action.  In furtherance of Plaintiffs' role as *amicus* to the Court, the PSC will also demonstrate that the Court has jurisdiction over TG and TTP in the thousands of Florida claims set forth in Omnibus Complaints that the PSC filed against TG and TTP.[2]

## II.    <u>STATEMENT OF FACTS</u>

The defective Chinese Drywall that Mitchell installed in homes in Florida came to Mitchell through the following straightforward and thoroughly documented supply chain:

Taishan Gypsum → Devon International → Emerald Coast → Rightway → Mitchell Company.

Devon International is in the business of arranging for the sales of materials manufactured overseas, including in China.  Beginning no later than 2004, Devon International sourced material from China and had employees who worked out of its office in Shanghai, China.  *See* PSC Global SOF at 40-44; Deposition of Robert Scharf dated 3/24/2011 (Herman Aff. Ex. 165) at 27:7-23, 33:18-24.

At some point prior to June 2006, Devon International was approached by North Pacific Group ("North Pacific") about making arrangements for the manufacture of drywall in China for use in the United States.  Scharf Dep. at 41:20-42:11.  North Pacific provided Devon

---

[2] Beyond the *Mitchell* action and in addition to the omnibus class action complaints, the PSC has filed a protective action in the Southern District of Florida.  This class action was transferred to this Court and is designed to perfect claims against TG and TTP as well as other related entities such as BNBM and CNBM.  *See Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 11-cv-1672 (E.D. La.).  The PSC is in the process of serving this complaint on the named defendants.  *See* Affidavit of Ann Mickow at ¶¶ 7-11 (Herman Aff. Ex. 199).

International with plans and specifications for the drywall it wanted to use in the U.S.  *Id* at 79:7-80:3.  After being approached by North Pacific, Devon International investigated market prices for drywall that could be purchased in China for the purpose of assessing its ability to handle North Pacific's order.  *Id.* at 43:15-19.  Bob Scharf, on behalf of Devon International, researched drywall prices, types, and specifications at local building supply companies in January and February 2006 to determine the economic viability of the transaction.  *Id.* at 43:15-44:8.

After determining that the transaction was possible, at some time between January 2006 and June 2006, Mr. Scharf traveled to China to make arrangements for sourcing the drywall.  *Id.* at 50:12-19.  Mr. Scharf was accompanied to China by another Devon International employee, Julian Chu.  *Id.* at 60:10-17.  During the trip, Mr. Scharf inspected "three and perhaps four" factories in Shandong, China before he chose the factory Devon International used to manufacture the drywall for North Pacific.  *Id.* at 50:12-19.  On a subsequent visit, Mr. Scharf was informed by Taishan that Taishan had ASTM approval for the drywall it manufactured in that factory.  *Id.* at 62:16-63:9.  On February 6, 2006, North Pacific gave Devon International a purchase order for 485,044 sheets of gypsum drywall "A" grade.  *See* Herman Aff. Ex. 166. Based on that purchase order, on March 15, 2006, Devon International submitted an Order Request to Taishan, which was doing business as Shandong Taihe Dongxin Co., Ltd.,[3] for 485,044 sheets of drywall.  *See* Herman Aff. Ex. 167.  As the purchase order makes clear, the destination of the drywall was originally Mobile, Alabama, but was later changed to Pensacola, Florida.  *Id.*

On March 30, 2006, Devon International received a sales confirmation from Taishan,

---

[3] Mitchell's original complaint (*Mitchell Co., Inc. v. Knauf Gips KG, et al*., 09-cv-04115, Doc. No. 1) and amended complaint (Doc. No. 42) name Taishan Gypsum Co. Ltd. (f/k/a Shandong Taihe Dongxin Co., Ltd.) as a defendant.

again indicating that the shipment was to be sent to Pensacola, Florida.  *See* Declaration of Kristen Law Sagafi dated 5/4/2012, filed herewith, at Ex. 1, p. 16.  The agreement provided that the drywall would be packaged to include Devon Building Products' logo.  *Id*.  It further provided that each sheet of the drywall would contain a statement that it "Meet or Exceeds ASTM C139604 Standard."  *Id*.; *see also* photographs attached as Sagafi Decl., Ex. 2.

 The drywall was manufactured and shipped to the United States aboard the *Sanko Rally* to the Port of Pensacola.  The *Sanko Rally* experienced bad weather on the trip to Pensacola. Because of the weather, the drywall was damaged in route from China to the Port of Pensacola. Scharf Dep. at 143:22-144:3, 221:9-13.  Consequently, because of the damage and the delay in shipment, North Pacific did not purchase all of the drywall when it arrived at the Port of Pensacola.  *See id.* at 222:21-223:6; Sagafi Decl., Ex. 3.  After North Pacific refused to purchase all of the drywall, Devon International began selling the drywall to other customers.  *See* Scharf Dep. at 223:8-14.  One of those customers was Emerald Coast Building Supply.  *See* Sagafi Decl., Ex. 4.  Indeed, Devon's bill of lading for the *Sanko Rally* shipment demonstrates that Emerald Coast purchased no fewer than 395 boards in that shipment.  *Id*.  In addition, Emerald Coast's August 20, 2009 submission to the U.S. Consumer Product Safety Commission confirms that Emerald Coast purchased 20 truckloads of Chinese Drywall (comprising more than half a million square feet) from North Pacific during July and August of 2006.  *See* Sagafi Decl., Ex. 5, at SM0039.  Each of the shipments originated at the Port of Pensacola where the *Sanko Rally* had docked.  *See* Sagafi Decl., Ex. 5, at SM0046-130.  Between April and July 2006, Rightway Drywall, Inc. ("Rightway") purchased at least 840 boards of drywall from Emerald Coast.  These purchases are reflected in the purchase orders from Mitchell to Rightway for the purchase of

drywall to be used and installed in the homes that Mitchell was building in Bilek Manor in Pensacola, Florida. *See* Declaration of Mike Jenkins dated 4/30/2012 ("Jenkins Decl."), filed herewith. As Mike Jenkins of Rightway affides, all of the drywall Rightway purchased for use in Bilek Manor came from Emerald Coast. Jenkins Decl. at ¶ 3.

In turn, as Mitchell correctly reported in its profile forms, Mitchell acquired drywall for the homes it constructed in Florida from Rightway. *See* Declaration of Chuck Stefan dated 4/30/2012 ("Stefan Decl.") at Exs. A & B, filed herewith. Even more compelling are the photographs of defective drywall removed from the home Mitchell built at 5926 Bilek Dr., Pensacola, FL 32526. *See* Stefan Decl. at Ex. C. These photographs show drywall boards stamped with the statement "Made in China  Meet or Exceeds ASTM C139604 Standard" in the exact font, size, and style as the boards Devon purchased from Taishan. *Id.*; *compare* photos of Devon board at Sagafi Decl., Ex. 2. Based on this documentary and photographic evidence, there can be little doubt that the defective Chinese Drywall, which Taishan manufactured according to Devon's specifications for sale and use in the United States, was ultimately installed in the homes that Mitchell built in Florida.

## III.   ARGUMENT

### A.   Taishan Is Subject To Personal Jurisdiction Under The Florida Long-Arm Statute

Whether Florida courts can exercise jurisdiction over a non-resident defendant is a two-part analysis. Initially, these requirements are satisfied simply by alleging long-arm jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If the defendant challenges the complaint's jurisdictional allegations by affidavit, the plaintiff bears the burden to support the jurisdictional allegations by putting forth competent evidence showing that the court has

5

jurisdiction over the defendant. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc*., 9 F.3d 415, 418 (5th Cir. 1993). To the extent that the parties' affidavits conflict, all reasonable inferences are to be made in favor of the plaintiff. *Id.*

Plaintiffs have properly pled a *prima facie* case for jurisdiction over Taishan. Defendants did not challenge that Plaintiffs met their jurisdictional pleading burden in the multiple Omnibus Complaints. Instead, Defendants directly challenged Plaintiffs' allegations of personal jurisdiction over Defendants by affidavit and other evidence before this Court in the *Mitchell* action. In order to establish personal jurisdiction over a non-resident defendant, a plaintiff must show first that jurisdiction is authorized by the state's long-arm statute, and second that the exercise of jurisdiction is consistent with constitutional Due Process. *Id.* In this case, Florida's long-arm statute is applicable.

The Court may constitutionally exercise jurisdiction over a non-defendant under the Florida long-arm statute once the Court finds that there are sufficient minimum contacts to satisfy the Due Process requirements of the Fourteenth Amendment to the United States Constitution. *Id.*

Plaintiffs satisfy the statutory basis for jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193. Plaintiffs agree with Taishan that the applicable provisions of the Florida long-arm statute are §§ 48.193(1)(a), (b), and (f), which provide as follows:

> 48.193   Acts subjecting person to jurisdiction of courts of state.—
>
> (1)   Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a)   Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b)   Committing a tortious act within this state.

(f)   Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
1.   The defendant was engaged in solicitation or service activities within this state; or
2.   Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

The first requirement under Fla. Stat. § 48.193(1) that the cause of action must arise from any of the above-enumerated acts has been met.  *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 902 (M.D. Fla. 2007).  The Court must consider whether "the sum of the defendant's collective business activities in Florida shows a general course of business activity in the state for pecuniary benefit."  *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1227 (M.D. Fla. 2000); *Sierra v. A Betterway Rent-A-Car*, 863 So. 2d 358 (Fla. 3d DCA 2004) (finding Florida long-arm jurisdiction over rental car company where defendant did not discourage or prohibit its clients from using its goods in Florida, defendant advertised itself as a global company, and defendant knew its goods were being used in Florida, had prior complaints from customers using its goods in Florida, and there were no restrictions by defendant on where goods could be used); *McHugh v. Kenyon,* 547 So. 2d 318 (Fla. 4th DCA 1989) (finding jurisdiction under § 48.193(1)(a), where a Taiwanese manufacturer conducted no business in Florida, had no salesmen or distributors and no other ties to the United States, because it should have reasonably anticipated being sued Florida, having produced "hundreds of thousands of product units that [were] distributed over a

7

five-year period in the United States, of which at least 6,000 were marketed in Florida").  "It is

not necessarily the number of transactions, but rather the nature and extent of the transaction(s)

that determines whether a person is 'carrying on a business or business venture' within the state."

*Joseph v. Chanin*, 869 So. 2d 738, 740 (Fla. 4th DCA 2004) (citation omitted); *PFM Air, Inc. v.*

*Dr. Ing. HC. F. Porsche A.G.*, 751 F. Supp. 2d 1264, 1275 (M.D. Fla. 2010).  "A 'business

venture' can consist of a single project or transaction."  *Atlantis Marina & Yacht Club, Inc. v. R*

*& R Holdings, Inc.*, 766 So. 2d 1163, 1165 (Fla. 3d DCA 2000) (bringing a $1.45 million yacht

to Florida, marketing it over a period of time, and ultimately selling it, amounted to a business

venture for purposes of the Florida long-arm statute).

### B.  Both Taishan Defendants Can Be Treated As The Same Entity For Purposes Of Evaluating Personal Jurisdiction

Incredibly, TG contends that it never sold any drywall to Florida and that "there is no

basis for attributing any of TTP's activities to Taishan for jurisdictional purposes."  *Mitchell* Br.

at 1.  Taishan's sales records, however, evidence more than 9 million square feet of Taishan's

drywall sold and delivered to customers in the State of Florida.  Plaintiffs have established that

TG acted for TTP and vice-versa.  TG was in control and had the absolute right of control over

TTP.  TTP's actions are imputed to TG via the undertaker doctrine and agency principles, as set

forth below.  The elements of an agency relationship under Florida law are "(1)

acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the

undertaking, and (3) control by the principal over the actions of the agent."  *State v. Am. Tobacco*

*Co.*, 707 So.2d 851, 854 (Fla. 1st DCA 1998).  "The issue of control is critical to the

determination of agency."  *Id.*

8

Here, TG & TTP are agents of each other such that the acts of one are imputed to the other.  TTP is a wholly-owned subsidiary of TG and the sole shareholder.  TG asserts that it created TTP for tax purposes in February 2006.  *Mitchell* Br. at 8.  TG allegedly formed TTP in order to serve TG's existing customers.  *Id.*  TG knew, at a minimum, that its existing customers were outside of China, including in the United States.  *See id.*; *see also* Herman Aff. Ex. Ex. 5 at 2.  In order to accommodate its existing customers, TG set up TTP, and TTP created a foreign sales office fully staffed with TG's employees to sell to customers in the United States at exactly the time of the drywall shortage in the U.S.[4]  TG was the sole investor in TTP, and invested at least 22,000,000 Yuan (approximately $3,490,235 USD)[5] in TTP.  Jia Dep. at 845:23-846:7 (Herman Aff. Ex. 200); TG 0020817-020824 (Herman Aff. Ex. 153); TG 0020855 (Herman Aff. Ex.154); TG 0020856-0020864 (Herman Aff. Ex. 155).  Simply put, TG set up TTP in order to: 1) use TTP to "satisfy" TG's existing customers' needs for VAT invoices and to continue doing business with those same customers, *see* Jia Dep. at 796:5-797:14; Fu Tinghuan Dep. at 108:1-109:22 (Herman Aff. Ex. 2); and 2) to sell drywall to the United States at a time of desperate need for U.S. consumers and the victims of Hurricanes Katrina and Rita.

There are multiple instances of TG ignoring corporate formalities and TG and TTP being one and the same under Florida agency law so as to impute TTP's actions as those of TG, or vice versa.  The factual premises for establishing this agency relation are spelled out in detail in the PSC's Global SOF, but the *prima facie* showing of their undertakings is:

---

[4] TTP's foreign sales office was staffed by Peng Wenlong, Che Gang and Yang Jiapo.  They all started at TG and went to work for TTP when TTP was formed.  When TTP wound down business, they all went back to work for TG.  Mr. Peng Shiliang also went from TG to TTP and back to TG again.  Deposition of P. Shiliang at 29:10-19-55:18-23 (Herman Aff. Ex. 110).

[5] Based on an exchange rate from 4/26/2012 of 6.3033 Yuan to 1 USD.

- TTP Used TG's DUN brand as its own in its exclusive distribution contract with Oriental Trading Company ("OTC") for the entire United States.

- TTP & TG ignored corporate form and have taken responsibility for each other's acts and omissions and settled claims and debts on behalf of each other.

- TTP paid the consideration for the settlement to resolve Guardian's claims against TG for TG's defective drywall and TTP ultimately took responsibility for TG's defective drywall.

- TG orchestrated a settlement with OTC on behalf of TG, even though all sales to OTC were allegedly made by TTP.

- TG's and TTP's employees were interchangeable and they sold drywall for both entities without distinction.

- TG and TTP interchanged employees and directors, and there was no interview or hiring process for TG or TTP to switch companies.

- TG & TTP shared phones and facsimile numbers, yet claim they do not share offices.

Plainly, these facts prove that TG acknowledged that TTP would act for it, that TTP accepted the undertaking, and that TG controlled the actions of TTP.  Thus, Plaintiffs submit that the two Taishan entities may be treated as one for jurisdictional purposes.

### C. Taishan Systematically Targeted and Conducted Business in Florida for Pecuniary Benefit.

Plaintiffs satisfy § 48.193(1)(a) because Plaintiffs have shown that Taishan systematically conducted a general course of business activity in the state for pecuniary benefit. Taishan sold at least 195,820 sheets of drywall (over 9 million square feet) for at least $772,863, in at least 15 different transactions with Florida buyers, from May 2006 to July 2007.  Herman Aff. Ex. 1.[6]

---

[6] Plaintiffs qualify their statements with "at least," because there are over 1,184,710 sheets of drywall (or 56,866,080 square feet), for a total of $6,317,038.85, which Taishan shipped to the United States, but

As set forth in the statement of facts, Mitchell's drywall was shipped directly to the Port of Pensacola. The PSC has further proven extensive efforts of Taishan to target and market its products to customers in Florida, by shipping its drywall to Miami, Tampa and Orlando. *See* PSC Global SOF at Section II(D).

In short, Taishan attempted to and generated revenues by selling its drywall in Florida to Florida companies where Defendants' products were placed in Florida homes damaging thousands of homeowners. Plaintiffs' causes of action "arise from" Taishan's "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(a). Florida courts have held that "[t]he term 'arising from' is broad; it does not mean 'proximately caused by,' but only requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity." *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79 (Fla. 1st DCA 1994); *Damoth v. Reinitz*, 485 So. 2d 881, 883 (Fla. 2d DCA 1986).

All of the causes of action that Plaintiffs pled in the Omnibus Complaints for negligence, negligence per se, strict liability, breach of implied warranty of fitness and merchantability pursuant to Fla. Stat. § 718.203, and violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, arise from Taishan's manufacturing, active sales and shipment of thousands of tons of drywall to Florida. The core operative facts to all of the Florida Plaintiffs' causes of actions are Taishan's manufacturing, designing, sale and distribution of Chinese Drywall to Florida and its failure to warn Floridians, businesses and homeowners of the

---

Taishan claims not to know which state, on Taishan's Manufacturer Profile Forms. The PSC discovered that part of this unaccounted-for drywall was sent to Florida via Guardian. *See* TG is TTP, *infra*, and Herman Aff. Exs. 1, 152-153.

hazardous effects of Defendants' Chinese Drywall that caused serious property damage and personal injuries. All of the causes of actions listed above establish a "substantial connection" with the Defendants' "business activit[ies]." Plaintiffs have properly alleged and supported that their claims "arise from" Taishan's sales and distribution of drywall to Florida, which satisfies § 48.193(1)(a).

### D. Section 48.193(1)(a) Provides Jurisdiction Over TG because TTP is TG's agent.

TG is subject to Florida courts' jurisdiction because TTP is TG's agent, and vice-versa, as set forth above. TG is subject to Florida courts' jurisdiction because the forum contacts of a subsidiary or agent are a basis for jurisdiction against the parent company. The Florida long-arm statute specifically references contacts of an agent. *See* Fla. Stat. § 48.193(1) ("Any person ... who personally or *through an agent* ...") (emphasis added). Jurisdiction under an agency theory may be established if a plaintiff demonstrates that "'the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity.'" *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002), *quoting* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002). Moreover, if jurisdiction is proper under an agency theory, alter ego need not be applied. *PFM Air*, 751 F. Supp. 2d at 1275.

Agency attribution is not limited to the parent-subsidiary context, but rather extends to other affiliate relationships. *See Meier*, 288 F.3d at 1273 ("Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates.") (citations omitted); *Stubbs v. Wyndham*

12

*Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006) (may attribute contacts of subsidiary or other affiliate to parent).  Control or right of control is the key to finding agency.  *Nida Corp*., 118 F. Supp. 2d at 1227.  "Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service, i.e., the "undertaker" thereby assumes a duty to act carefully and to not put others at an undue risk of harm."  *Clay Cooperative Inc., v. Johnson*, 873 So.2d 1182 (Fla. 2004); *Goldberg v. Florida Power & Light Company*, 899 So.2d 1105, 1110-111 (Fla. 2005). "Voluntarily undertaking to do an act that if not accomplished with due care might increase the risk of harm to others … confers a duty of reasonable care, because it thereby "creates a foreseeable zone of risk."  *McCain v. Florida Power Corp.*, 593 So.2d 500 (Fla. 1992); *Kowkabany v. Home Depot, Inc.*, 606 So.2d at 716, 720-21 (Fla. 1st DCA 1992).

Florida has adopted the "undertaker doctrine" contained in the Restatement (Second) of Torts § 324A (1965):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Goldberg*, 899 So.2d 1105 (shutting off of electricity made utility company responsible for wrongful death of child in traffic accident when traffic light went off causing an accident); *Union Memorial Chapel v. Hutt*, 670 So.2d 64, 67 (Fla. 1996) (funeral director who voluntarily

undertook to direct funeral procession had a duty to the members in the procession to direct the

procession safely).  Plaintiffs have already demonstrated above that TG and TTP were agents of

one another.  Furthermore, Plaintiffs have also demonstrated that TG had control of TTP:  it set

up TTP, staffed TTP, placed people on TTP's board of directors, sold its drywall through TTP

without protest, allowed TTP to use the DUN brand, had TTP use its promotional, marketing

materials and sales staff, stepped in for TTP to settle the OTC deposit, and the list goes on.  *See*

PSC Global SOF at 52-70.

    Another factor to consider is whether the nonresident corporation would perform the

equivalent services if its subsidiary did not exist.  *Meier*, 288 F.3d at 1275; *Sehringer v. Big Lots,*

*Inc.,* 532 F.Supp.2d 1335, 1345-46 (M.D. Fla. 2007), *quoting Oriental Imports & Exports, Inc. v.*

*Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 892 (11th Cir. 1983) ("The inquiry whether a

nonresident is conducting business in Florida concerns the nature, not the extent, of the

nonresident's activities in Florida."); *Pappalardo v. Richfield Hospitality Services, Inc.*, 790

So.2d 1226, 1228 (Fla. 4th DCA 2001) (using agency theory to maintain jurisdiction where

parent and subsidiary "were a confusing conglomerate, and were essentially one and the same

company both financially and structurally").  There is record evidence that TG would perform

equivalent services to TTP if TTP did not exist.  Very simply, TG established TTP to do what it

no longer could: service TG's existing U.S. customers by providing VAT tax benefits.  At the

same time, TTP, on behalf of TG reached out to the United States to sell drywall and other

products.  TG also demonstrated it would perform equivalent services when it stepped in to

resolve TTP's dispute with OTC over the $100,000 deposit.  Also, it was TG's former employees

at TTP that performed the same sales services and customer responses at TTP as they did when

14

they were with TG, to wit:  they used the same form invoices, marketing materials, and sold the same products.  There is no question that TG would have offered equivalent services if TTP had not existed, because they are really one and the same.  TTP exists for TG's use and profit.  Their corporate separateness is a fiction.

### E.  Florida Courts Have Jurisdiction Over Taishan Because it Committed Torts Under Florida Statutes Section 48.193(1)(b).

To establish jurisdiction under Fla. Stat. § 48.193(1)(b), a plaintiff "must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Cable/Home Commc'n, Corp. v. Network Productions, Inc*., 902 F.2d 829, 857-58 (11th Cir. 1990) (citation and punctuation omitted) ("[i]n our technologically sophisticated world permitting interstate business transactions by mail, wire and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state.  The appropriate inquiry is whether the tort as alleged occurred in Florida, and not whether the alleged tort actually occurred); *Machtinger v. Inertial Airline Services, Inc.* 937 So.2d 730, 734 (Fla. 3d DCA 2006). A defendant's physical presence is not required to "commit a tortious act in Florida."  *See Posner v. Essex Ins.*, 178 F.3d at 1216-17; *Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002); *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1297 n.9 (S.D. Fla. 2009).

The off-gassing and damages to Plaintiffs and their homes from Taishan's defective drywall occurred in Florida.  Taishan's failure to warn Plaintiffs of the defective drywall, a substantial aspect of Plaintiffs' negligence and strict liability claims and a material omission, occurred in Florida where the Plaintiffs reside.  Furthermore, all of Plaintiffs' personal injury and

15

property damage occurred in Florida.  Accordingly, there is jurisdiction over Taishan under Fla.

Stat. § 48.193(1)(b).

### F.  Florida Courts Have Jurisdiction Under Florida Statutes Section 48.193(1)(f)(1)-(2).

Plaintiffs' allegations and the record evidence in this matter fit squarely within Fla. Stat.

§ 48.193(1)(f)(1)-(2) because Taishan: 1) caused injury to Plaintiffs in Florida by manufacturing

and designing defective drywall and failing to warn Plaintiffs while Taishan was engaged in

solicitation of business in Florida, Fla. Stat. § 48.193(1)(f)(1); and/or[7] 2) caused injury to

Plaintiffs in Florida by manufacturing and designing defective drywall and failing to warn

Plaintiffs while Defendants' defective product was used in the State of Florida in the ordinary

course of commerce, trade or use, *i.e.*, by installation in Plaintiffs' homes, Fla. Stat. §

8.193(1)(f)(2).

Section 48.193(1)(f)(1)-(2) provides as follows:

> (1)   Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> (f)   Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> 1.   The defendant was engaged in solicitation or service activities within this state; or
>
> 2.   Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

---

[7] Section 48.193(1)(f) is disjunctive. Plaintiffs need only satisfy one subsection of 48.193(1)(f) for this Court to have specific jurisdiction over Taishan, but are able to satisfy both subsections (f)(1) and (f)(2).

16

Plaintiffs have met the requirements of subsection (1)(f)(1) of § 48.193.  Plaintiffs have alleged personal injury and property damages in the State of Florida arising from Taishan's acts and omissions outside of Florida, to wit: Taishan designed and manufactured defective drywall and failed to warn Plaintiffs of the defective drywall.  At the time Plaintiffs suffered personal injury and/or property damage, Taishan was engaged in soliciting business in the State of Florida.  The record evidence in the *Germano* case demonstrated that Taishan's drywall was off-gassing when it was installed in Plaintiffs' property and began causing property damage.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 706 F. Supp. 2d 655, 659 (E.D. La. 2010).  At a minimum, 195,000 sheets of Taishan's drywall were delivered to Florida.  These sales resulted in close to $800,000 dollars in sales of Taishan's drywall to customers in Florida between May 2006 and July 2007.  Herman Aff. Ex. 1.  At or about the time Plaintiffs had the drywall installed in their homes and it caused personal injury and property damage to Plaintiffs, Taishan was engaged in numerous solicitations or service activities in the State of Florida, for example:

1. From November 23, 2005 through December 14, 2005, Taishan was shipping drywall samples to Carn Construction in Florida (Herman Aff. Exs. 53-54);

2. On May 30, 2006 through June 3, 2006, Frank Clem (Taishan's Chief of its Foreign Trade Department) received an email to assist in the making of custom labels for Wood Nation (Herman Aff. Ex. 18);

3. On June 10, 2006, TTP signed a contract with Wood Nation, a Tampa, Florida Company on August 2006 (Herman Aff. Ex. 100, TG 0001482-85);

17

4. Beginning in August 2006, numerous emails were exchanged between Ivan Gonima of OTC and Bill Cher regarding sales of Taishan's drywall in Florida and elsewhere in the United States (Herman Aff. Ex. 9, Gonima I Dep. at 97:6-21);

5. On October 10, 2006, the Sole Agency Agreement between TTP and OTC was created for purposes of selling Taishan's products in Florida and throughout the U.S.A. (Herman Aff. Ex. 20);

6. From February 6, 2007 through October 11, 2007 and December 8-9, 2007, Ivan Gonima and Bill Cher exchanged numerous instant messages regarding sales of Taishan's drywall to the customers in the United States (Herman Aff. Exs. 27, 21);

7. On February 24, 2007, Rafael Sardi in Miami, Florida, negotiated with Bill Cher regarding a refund of Onyx Gbh's deposit for TTP drywall (Herman Aff. Ex. 97, Dep. Of Sardi at 55:16-56:10);

8. From April 6 through 10, 2007, Bill Cher and Rafael Sardi in Miami, Florida, exchange emails for service regarding a TTP shipment of drywall (Herman Aff. Ex. 63); and

9. A full detail of Taishan's transactions with Florida is presented in Herman Aff. Ex. 1.

In summary, at or about the time that Taishan's drywall arrived in Florida and began causing personal injury and property damage, Taishan was engaged in significant solicitation and service activities in Florida, thus, satisfying the long-arm jurisdictional requirements set out in Fla. Stat. § 48.193(1)(f)(1).

Section 48.193(1)(f)(2) also provides jurisdiction over Taishan because the company "manufactured" the drywall that was "used or consumed" in the State of Florida in the "ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(1)(f)(2). Under § 48.193(1)(f)(2), it does not matter where the drywall was manufactured; the product may be manufactured "anywhere," so long as it was "used or consumed" in Florida. *Id.*; *Wetzel v. Fisherman's Wharf of Pompano Beach, Inc.* 771 So. 2d 1195 (Fla. 4th DCA 2000) (Hong Kong wholesaler's delivery of 3,794 cases of fireworks worth $68,305 in revenues during a 26-month period to Florida customer established sufficient minimum contacts in Florida, even though the sales, ordering and shipping were conducted almost entirely in Hong Kong, the goods were manufactured in mainland China, and the defendant distributor shipped them to the Florida customer FOB from Hong Kong). Taishan not only sold drywall intended for use in Florida, but also sent samples of drywall to Florida businesses Carn Construction, B. America and OTC. Herman Aff. Exs. 52, 54, Gonima I Dep. at 109:20-110:5; *Cal-Mar Indus. Inc. v. Wilson Research Corp.,* 442 F. Supp. 796, 799 (S.D. Fla. 1977) (shipping samples into Florida makes a defendant reasonably aware that such samples would enter the limits of State of Florida and that they would be utilized by a commercial entity in Florida). In summary, because Taishan's drywall reached Florida consumers and the drywall was used in the ordinary course of commerce, trade or use by being installed in Plaintiffs' homes, Plaintiffs have met their burden under § 48.193(1)(f)(2), and this Court may exercise jurisdiction over Taishan under Florida's long-arm statute.

### G.  The Preliminary Default Judgment Against Taishan Should Not Be Vacated

Taishan acknowledges that it was properly served with Mitchell's original complaint. As Taishan concedes, the original complaint addressed the States of Louisiana, Georgia, Texas and

19

Florida.  Since Floridian claims are addressed by the original complaint, the failure of Mitchell to

serve Taishan with the amended complaint is of no moment.  The Florida claims for which

Taishan was defaulted are identical.  Under these circumstances, this Court's ruling that default

should be entered was appropriate.  *See In re Chinese-Manufactured Drywall Products Liability

Litig.*, MDL 2047, Order & Reasons at 7 (E.D. La. Aug. 5, 2010) ("whether or not the Second

Amended Complaint was properly served upon Taishan, the Court has sufficient jurisdiction to

award attorneys' fees as a result of the proper service of the First Amended Complaint since

Intervening Plaintiffs' claims were properly within the First Amended Complaint," *citing*

*Annunciation v. W. Capital Fin. Svcs. Corp.*, 1996 WL 534049, at *3 (9th Cir. Sept. 19, 1996))

(Rec. Doc. No. 4307).

## IV.   <u>CONCLUSION</u>

Taishan was a company that wanted to do significant business in Florida, apart from and

including the sale of its drywall.  Taishan signed millions of dollars in contracts in Florida,

shipped over 9 million square feet of drywall to customers in Florida for pecuniary benefit to

Taishan and to do business with Florida consumers.  The allegations in Plaintiffs' Omnibus

Complaints, the *Mitchell* action, and the evidence presented herein give this Court jurisdiction

over Taishan under Florida's long-arm statute consistent with Due Process.

WHEREFORE, the PSC requests that the Court enter an order denying Taishan Gypsum

Company, Ltd.'s Renewed Motion to Vacate the Entry of Default and to Dismiss (Rec. Doc. No.

13566).

Respectfully submitted,

Dated: May 8, 2012

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819) (On the Brief)
Leonard A. Davis, Esquire (Bar No. 14190) (On the Brief)
Stephen J. Herman, Esquire (Bar No. 23129) (On the Brief)
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler (On the Brief)
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
bsteckler@baronbudd.com

Ervin A. Gonzalez (On the Brief)
Patrick Montoya (On the Brief)
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
  ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
  & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com


James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Scott Alan George
SEEGER WEISS, LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## COUNSEL FOR PLAINTIFF (*MITCHELL* PLAINTIFFS)

Kristen Law Sagafi, Esquire
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Phone: (415) 956-1000
ksagafi@lchb.com

Steven L. Nicholas, Esquire
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street
Mobile, AL  36604
Phone:  (251) 471-6191
slh@cunninghambounds.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Steering Committee's Response in Opposition to Taishan's Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate the Entry of Default and to Dismiss and Amicus Brief on Florida Law Relating to Jurisdictional Issues Raised by Taishan has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 8th day of May, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*
*Co-counsel for Plaintiffs*