## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

LAURA HAYA, DANIEL HAYA AND IRENE
HAYA, individually, behalf of all others,
similarly situated, et al.,

CASE NO.: 11-1077
SECT. L MAG. 2

        Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A
SHANDONG TAIHE DONGXIN CO., LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; QINHUANGDAO TAISHAN BUILDING
MATERIALS CO., LTD. A/K/A QINHUANG
DAO TAISHAN BUILDING MATERIALS CO.,
LTD., et al.,

        Defendants.

_____/

## DEFENDANT MANAGEMENT SERVICES OF LEE COUNTY, INC., F/K/A PAUL HOMES, INC.'S, CROSS CLAIMS AGAINST LA SUPREMA ENTERPRISE[1] AND THIRD PARTY COMPLAINT AGAINST LA SUPREMA TRADING

COMES NOW Defendant/Cross-Claimant and Third-Party-Plaintiff, Management

Services of Lee County, Inc., f/k/a Paul Homes, Inc. ("**Paul Homes**"), by and through its

undersigned counsel, and alleges for its Cross-Claim[2] against Defendant/Cross-Defendant La

---

[1]     This Cross Claim and Third-Party Complaint against La Suprema Enterprise, Inc. and La Suprema Trading, Inc is filed in conjunction with Defendant Management Services of Lee County, Inc., f/k/a Paul Homes, Inc.'s Cross Claim filed on January 18, 2012. The claims raised herein are in addition to, and do not waive or supercede, the claims raised in Paul Homes' January 18, 2012 Cross Claim.

[2]     Plaintiffs commenced this action on May 10, 2011 by filing Plaintiffs' Amended Omnibus Class Action Complaint (Omni IX) in this cause. Plaintiffs twice amended the Complaint. Thus, the operative Complaint is the Second Amended Complaint (referred to herein as the "Complaint"). In response, Paul Homes moved to dismiss the claims against it in the Complaint. These Cross-Claims are therefore being brought to the extent all claims against Paul Homes are not dismissed in their entirety with prejudice. In the event all of Plaintiffs' claims against Paul Homes are not dismissed with prejudice, Paul Homes also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), and alleges for its Third-Party Complaint against La Suprema Trading ("**LS Trading**"), as follows:

## CROSS-CLAIMS AGAINST LA SUPREMA ENTERPRISE

### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Paul Homes.

3.      Paul Homes was and is a Florida corporation doing business in Lee County or Lee, Florida, where this cause of action arose.  At all material times, Paul Homes was a builder of residential homes in Lee County.

4.      Paul Homes has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Paul Homes denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.      La Suprema Enterprise ("**La Suprema Enterprise**" or "**LS Enterprise**") has also been named as a defendant in the above styled action.  LS Enterprise has been named as Florida-based "importer" in Exhibit B-1 ¶ 280 to the Second Amended Complaint.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amounts in controversy exceed $75,000, exclusive of interest and costs.

8.      Moreover, this Cross-Claim arises from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claim and over the instant Cross-Claim Defendant.

{24188703;1}

**General Allegations**

9.      As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Paul Homes is liable for damages to Plaintiffs.[3]

10.     Plaintiffs allege that the drywall installed in their homes (the "**Homes**") has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, appliances and Plaintiffs' personal property (the "**Other Property**").

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Chinese manufacturers identified by Plaintiffs in the Complaint.

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     In connection with the construction of certain homes in Lee County, Paul Homes purchased drywall that was installed in the Homes directly from Banner Supply Co. and/or Banner Supply Company Fort Myers, LLC (together, "**Banner**"), a supplier of drywall.

14.     Upon information and belief, Banner procured drywall that was installed in the Homes from LS Enterprise, an import-export specialist.  At all material times, LS Enterprise knew or should have known that such drywall was going to be used in the construction of residential homes.

---

[3]      The named class Plaintiffs and other members of the putative class have asserted claims against Paul Homes in this Action, as well as other actions in the state and federal courts.  The damages sought by Paul Homes in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class Plaintiff and any other member of the putative class in any and all state and federal courts.

{24188703;1}

15.     Upon information and belief, LS Enterprise procured drywall that was installed in the Homes from the Chinese manufacturers identified by Plaintiffs in the Complaint who were manufacturing drywall to be exported to the United States..

16.     Upon information and belief, in mid-to-late Fall of 2006, Chinese manufacturers, LS Enterprise and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by one of its Chinese manufacturers emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

17.     Upon information and belief, Banner conducted tests of the drywall installed in certain South Florida residential homes. Upon information and belief, the Chinese manufacturers, Banner and LS Enterprise did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

18.     Paul Homes did not know and was not made aware of the problems with the drywall.

19.     The drywall exported, imported, distributed and/or sold by LS Enterprise for use in the construction of the Homes was not altered and/or otherwise substantively changed by Paul Homes.

20.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Paul Homes, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of

{24188703;1}

unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

21.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, LS Enterprise had greater knowledge, and/or stood in a better position than Paul Homes to know, of the drywall's applications, performance, and dangers.

22.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in exporting, importing, distributing, and/or selling the defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages to Plaintiffs.

23.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product purchased by Paul Homes for installation in the Homes.

24.     Moreover, Paul Homes did not know and was never informed by LS Enterprise or any other entity that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs.

25.     Consequently, LS Enterprise is liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged

injuries and damages, and further damages to Paul Homes in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

26.     Additionally, LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

27.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

<u>COUNT 1 – COMMON LAW INDEMNITY</u>
**(Against La Suprema Enterprise Inc.)**

28.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

29.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

30.     Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

31.     Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

32.     Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Enterprise.

33.     A special relationship existed between LS Enterprise and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Enterprise. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Enterprise was defective and wholly to blame for Plaintiffs' injuries.

34.     As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Enterprise to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

35.     If Paul Homes is found to be liable to Plaintiffs, LS Enterprise is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Paul Homes demands judgment for indemnity in its favor against La Suprema Enterprise Inc. for damages plus attorneys' fees, interest and costs and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against La Suprema Enterprise, Inc.)**

36.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

37.     This is an action, stated in the alternative, against LS Enterprise for contribution pursuant to Section 768.31, Florida Statutes.

38.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

{24188703;1}

39.     Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, LS Enterprise would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

40.     Paul Homes has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

41.     To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against LS Enterprise for its pro rata share of the liability.

42.     LS Enterprise should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its pro rata share of any common liability.

**WHEREFORE**, Paul Homes demands that judgment be entered against La Suprema Enterprise Inc. for its pro rata share of the liability, if any, found against Paul Homes in this action, along with interest and costs, together with such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
### (Against La Suprema Enterprise Inc.)

43.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

{24188703;1}

44.     This is an action, stated in the alternative, against LS Enterprise for equitable subrogation.

45.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

46.     Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

47.     Without admitting any liability or damages to Plaintiffs, Paul Homes is not primarily liable for any liability to the Plaintiffs.

48.     To the extent that Paul Homes is required to pay damages for any fault of LS Enterprise to protect its own interests, and not as a volunteer, Paul Homes would be entitled to reimbursement from LS Enterprise under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

49.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Paul Homes demands judgment in its favor and against La Suprema Enterprise Inc. for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

## COUNT 4 – NEGLIGENCE
**(Against La Suprema Enterprise Inc.)**

50.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

51.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

52.     Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

53.     Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

54.     As such, LS Enterprise owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Paul Homes' customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

55.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

56.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Paul Homes by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Paul Homes with drywall that complied with all applicable building and industry standards.

57.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

58.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Paul Homes to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was

defective and that damages to Paul Homes would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

59.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – NEGLIGENT FAILURE TO WARN
#### (Against La Suprema Enterprise Inc.)

60.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

61.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

{24188703;1}

62.     Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

63.     Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

64.     As such, LS Enterprise owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction.

65.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

66.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that unless it warned foreseeable consumers such as Paul Homes of the risk of using the drywall it distributed, sold, and/or supplied, Paul Homes would suffer harm. However, LS Enterprise failed to provide an adequate warning of such danger.

67.     Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable

risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

68.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Paul Homes by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction, about which LS Enterprise knew or reasonably should have known.

69.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

70.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances

would exert, it would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

71.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Enterprise Inc.)

72.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

73.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

74.     Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

75.     Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

76.     To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Enterprise was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Enterprise's control and/or was sold to Paul Homes, LS Enterprise knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

77.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Enterprise breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

78.     To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

{24188703;1}

79.     Consumers, such as Paul Homes, to whom a warning might have been provided, could have been identified by LS Enterprise.

80.     A warning could have been effectively communicated to consumers such as Paul Homes and acted on by them.

81.     At all material times, LS Enterprise stood in a better position than Paul Homes to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Paul Homes was unaware of potential dangers and/or risk of harm associated with the use of LS Enterprise's drywall product in residential construction.

82.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Enterprise's position would have provided a post-sale warning.

83.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Enterprise's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – STRICT PRODUCTS LIABILITY
**(Against La Suprema Enterprise)**

84.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

85.    At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

86.    Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise.

87.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

88.    LS Enterprise expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

89.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

90.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into

{24188703;1}

18

the stream of commerce, supplied and/or sold by LS Enterprise directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 8 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Enterprise)

91.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

92.     At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

93.     At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Enterprise.

94.     At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

95.     LS Enterprise expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

96.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

97.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Enterprise was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

98.     Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

99.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Enterprise failed to warn Paul Homes of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

100.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.   LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 9**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against La Suprema Enterprise Inc.)**

101.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

102.   This is an action for violation of §§ 501.201, *et seq*., Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

103.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable,

deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

104.    At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

105.    At all material times, LS Enterprise engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Paul Homes.

106.    LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold drywall that was installed in the Homes.

107.    At the time LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Enterprise represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

108.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

109.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Enterprise imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Enterprise knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

110.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from LS Enterprise's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

111.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 13 - 26 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

112.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit

{24188703;1}

23

for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

113.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint. LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

114.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Enterprise's violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 10 – UNJUST ENRICHMENT
**(Against La Suprema Enterprise Inc.)**

115.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

116.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

117.    LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

118.    LS Enterprise received money from Paul Homes as payment for drywall installed in the Homes.

119.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Paul Homes conferred a benefit, *i.e.*, funds and profit, to LS Enterprise, which had knowledge thereof. LS Enterprise voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

120.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any

{24188703;1}

25

other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

121.    The circumstances described herein under which LS Enterprise profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Enterprise to retain those funds and profits.

122.    Paul Homes has no adequate remedy at law.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## THIRD-PARTY COMPLAINT AGAINST LA SUPREMA TRADING

### The Parties, Jurisdiction and Venue

1.    This is an action for damages within the monetary jurisdiction of this Court.

2.    The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Paul Homes.

3.    Paul Homes was and is a Florida corporation doing business in St. Lucie County, Florida, where this cause of action arose.  At all material times, Paul Homes was a builder of residential homes in St. Lucie County.

4.    Paul Homes has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Paul Homes in the construction of their homes was defective and caused damages to Plaintiffs.

5.    Paul Homes denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.     Third-Party Defendant, **La Suprema Trading, Inc**. ("**La Suprema Trading**" or "**LS Trading**"), is a Florida corporation with its principal place of business in Miami, Florida. La Suprema Trading is an importer, exporter, distributor, supplier or broker of drywall and related building products.

7.     Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Moreover, these Third-Party Claims arise from the same transactions or occurrences as Plaintiffs' action.   Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Third-Party Claims and over the instant Third-Party Defendants.

### General Allegations

9.     As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Paul Homes is liable for damages to Plaintiffs.[4]

10.     Plaintiffs allege that the drywall installed in their homes (the **"Homes"**) has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the "**Other Property**").

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Chinese manufacturers identified by Plaintiffs in the Complaint..

---

[4]     The named class Plaintiffs and other members of the putative class have asserted claims against Paul Homes in this Action, as well as other actions in the state and federal courts.  The damages sought by Paul Homes in this Third-Party Claim against LS Trading include all appropriate damages associated with this Action as well as any other action commenced by any named class plaintiff and any other member of the putative class in any and all state and federal courts.

{24188703;1}

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     In connection with the construction of certain homes in Lee County, Paul Homes purchased drywall that was installed in the Homes directly from Banner Co. and/or Banner Supply Company Fort Myers, LLC (together, "**Banner**").

14.     Upon information and belief, Banner procured drywall that was installed in the Homes from LS Trading, an import-export specialist. At all material times, LS Trading knew or should have known that such drywall was going to be used in the construction of residential homes.

15.     Upon information and belief, LS Trading procured drywall that was installed in the Homes from Chinese manufacturers, including the Cross-Claim Defendants, who were manufacturing drywall to be exported to the United States. At all material times, LS Trading knew or should have known that such drywall was going to be used in the construction of residential homes.

16.     Upon information and belief, in mid-to-late Fall of 2006, Chinese manufacturers, LS Trading and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by one of its Chinese manufacturers emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

17.     Upon information and belief, Banner conducted tests of the drywall installed in certain South Florida residential homes. Upon information and belief, the Chinese

manufacturers, Banner and LS Trading did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

18.     Paul Homes did not know and was not made aware of any problems with the drywall as alleged by Plaintiffs.

19.     The drywall imported, distributed and/or sold by LS Trading for use in the construction of the Homes was not altered and/or otherwise substantively changed by Paul Homes.

20.     For the purpose of these Third-Party Claims only, and not constituting an admission of the allegations or liability by Paul Homes and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

21.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, LS Trading had greater knowledge, and/or stood in a better position than Paul Homes to know, of the drywall's applications, performance, and dangers.

22.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, exporting, distributing, delivering, supplying,

inspecting, marketing and/or selling the defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages to Plaintiffs.

23.    Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the gypsum drywall product purchased by Paul Homes for installation in the Homes.

24.    Paul Homes did not know and was never informed by LS Trading that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property as alleged by Plaintiffs..

25.    Consequently, LS Trading is liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Paul Homes in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

26.    LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

27.    All conditions precedent to the filing of these Third-Party Claims have been performed, excused, or otherwise waived.

**COUNT 1 – COMMON LAW INDEMNITY**
**(Against La Suprema Trading Inc.)**

28.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

29.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

30.    Paul Homes is not and was not in the business of manufacturing, distributing

or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

31.     Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

32.     Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Trading.

33.     A special relationship existed between LS Trading and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Trading. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Trading was defective and wholly to blame for Plaintiffs' injuries.

34.     As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Trading to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

35.     If Paul Homes is found to be liable to Plaintiffs, LS Trading is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

{24188703;1}

**WHEREFORE**, Paul Homes demands judgment for indemnity in its favor against Third-Party Defendant, La Suprema Trading Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
**(Against La Suprema Trading, Inc.)**

36.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

37.    This is an action, stated in the alternative, against LS Trading for contribution pursuant to Section 768.31, Florida Statutes.

38.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

39.    Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, LS Trading would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

40.    Paul Homes has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

41.    To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against LS Trading for its pro rata share of the liability.

42.    LS Trading should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its

pro rata share of any common liability.

**WHEREFORE**, Paul Homes demands that judgment be entered against Third-Party Defendant, La Suprema Trading Inc., for its pro rata share of the liability, if any, found against Paul Homes in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

<u>COUNT 3 – EQUITABLE SUBROGATION</u>
**(Against La Suprema Trading Inc.)**

43.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

44.    This is an action, stated in the alternative, against LS Trading for equitable subrogation.

45.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

46.    Paul Homes is not and was not in the business of manufacturing, distributing, or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

47.    Without admitting any liability or damages to Plaintiffs, Paul Homes is not primarily liable for any liability to the Plaintiffs.

48.    To the extent that Paul Homes is required to pay damages for any fault of LS Trading to protect its own interests, and not as a volunteer, Paul Homes would be entitled to reimbursement from LS Trading under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any

{24188703;1}

judgment entered against Paul Homes and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

49.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Paul Homes demands judgment in its favor and against Third-Party Defendant, La Suprema Trading Inc., for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – NEGLIGENCE
### (Against La Suprema Trading Inc.)

50.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

51.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

52.     Upon information and belief, LS Trading imported, distributed, sold and/or supplied drywall that was installed in the Homes.

53.     Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

54.     As such, LS Trading owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Paul Homes' customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with

{24188703;1}

34

applicable laws, codes, regulations and standards applicable to its industry.

55.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

56.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Paul Homes by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

57.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

58.     To the extent Plaintiffs are successful in proving that drywall was defective,

{24188703;1}

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Paul Homes to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Paul Homes would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

59.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

WHEREFORE, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 5 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Trading Inc.)

60.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27

{24188703;1}

above as if fully set forth herein.

61.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

62.     Upon information and belief, LS Trading imported, distributed, sold and/or supplied drywall that was installed in the Homes.

63.     Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

64.     As such, LS Trading owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction.

65.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

66.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that unless it

warned foreseeable consumers such as Paul Homes of the risk of using the drywall it distributed, sold, and/or supplied, Paul Homes would suffer harm. However, LS Trading failed to provide an adequate warning of such danger.

67.    Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in  a residential home in the ordinary manner.

68.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Paul Homes by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction, about which LS Trading knew or reasonably should have known.

69.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

70.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

71.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6– BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Trading Inc.)

72.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

73.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

74.     Upon information and belief, LS Trading imported, distributed, sold and/or supplied drywall that was installed in the Homes.

75.     Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

76.     To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Trading was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Trading's control and/or was sold to Paul Homes, LS Trading knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

77.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Trading breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

78.     To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall

in residential construction were sufficiently great to justify the burden of providing a warning.

79.    Consumers, such as Paul Homes, to whom a warning might have been provided, could have been identified by LS Trading.

80.    A warning could have been effectively communicated to consumers such as Paul Homes and acted on by them.

81.    At all material times, LS Trading stood in a better position than Paul Homes to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Paul Homes was unaware of potential dangers and/or risk of harm associated with the use of LS Trading's drywall product in residential construction.

82.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Trading's position would have provided a post-sale warning.

83.    Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Trading's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

{24188703;1}

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Trading Inc.)

84.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

85.     At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

86.     Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading.

87.     At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

88.     LS Trading expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

89.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

90.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into

{24188703;1}

42

the stream of commerce, supplied and/or sold by LS Trading directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

<u>COUNT 8 – STRICT PRODUCTS LIABILITY FAILURE TO WARN</u>
**(Against La Suprema Trading Inc.)**

91.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

92.     At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

93.     At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Trading.

94.     At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

95.     LS Trading expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Paul Homes and/or

{24188703;1}

the Homes without substantial change affecting that condition.

96.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

97.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Trading was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

98.     Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

99.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Trading failed to warn Paul Homes of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

100.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's failure to adequately warn of the risks

associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 9</u>
<u>VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.</u>
(Against La Suprema Trading Inc.)

101.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

102.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

103.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

104.    At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

{24188703;1}

45

105.    At all material times, LS Trading engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Paul Homes.

106.    LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold drywall that was installed in the Homes.

107.    At the time LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Trading represented the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

108.    Plaintiffs, in the Complaint, allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

109.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time LS Trading imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Trading knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

110.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from LS Trading's unfair and deceptive conduct in

selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

111.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 13 – 26 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

112.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the   Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

{24188703;1}

113.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

114.   To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Trading's violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 10 – UNJUST ENRICHMENT
### (Against La Suprema Trading, Inc.)

115.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 27 above as if fully set forth herein.

116.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

117.    LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

118.    LS Trading received money from Paul Homes as payment for the alleged defective drywall installed in the Homes.

119.    In delivering such payment, monies and/or funds to pay for the drywall that was installed in the Homes, Paul Homes conferred a benefit, *i.e.*, funds and profit, to LS Trading, which had knowledge thereof.

120.    LS Trading voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

121.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these

{24188703;1}

49

claims.

122.    The circumstances described herein under which LS Trading profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Trading to retain those funds and profits.

123.    Paul Homes has no adequate remedy at law.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross and Third-Party Plaintiff, Management Services of Lee County, Inc., f/k/a Paul Homes, Inc., and hereby demands a trial by jury as to all issues so triable as a matter of right.

Respectfully submitted this 9th day of May, 2012.

**AKERMAN SENTERFITT**

BY:  /s/      Stacy Bercun Bohm
    Stacy Bercun Bohm, Esq. (Fla. Bar No. 022462)
    Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
    Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
    Las Olas Centre II, Suite 1600
    350 East Las Olas Boulevard
    Fort Lauderdale, Florida 33301-2229
    Telephone: (954) 463-2700
    Telecopier: (954) 463-2224
    Email:  stacy.bohm@akerman.com
            valerie.greenberg@akerman.com
            leslie.tomczak@akerman.com

    *Attorneys for Management Services of Lee County, Inc., f/k/a Paul Homes, Inc.*

{24188703;1}

Brent B. Barriere (La. Bar No. 2818)
Susie Morgan (La. Bar No. 9715)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
          Susie.morgan@phelps.com
          Skylar.rosenbloom@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2012, the foregoing was served on (1) Plaintiffs' Liaison Counsel, **Russ Herman**, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA  70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, **Kerry Miller**, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA  70163 (kmiller@frilot.com), *by U.S. Mail and E-mail*; (2) on counsel for the Third Party Defendant *by U.S. Mail* as follows: **Eduardo I. Rasco**, Rosenthal Rosenthal Rasco Kaplan, LLC, One Aventura, Suite 600, 20900 NE 39th Ave., Aventura, FL 33180; and (3) upon all parties by *electronically* uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/      Stacy Bercun Bohm