## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL
          PRODUCTS LIABILITY LITIGATION

MDL No.: 02047
Case No.: 12-0498
Section L

THIS DOCUMENT RELATES TO:

RICHARD and CONSTANCE ALMEROTH,
et al.,

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO., LTD., et al.

JUDGE FALLON
MAG. JUDGE WILKINSON

_____/

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MANAGEMENT SERVICES OF LEE COUNTY, INC.'S MOTION TO DISMISS WITH PREJUDICE THE CLAIMS BROUGHT AGAINST IT IN THE ALMEROTH OMNIBUS  CLASS ACTION COMPLAINT (OMNI XIII), AND TO STRIKE DEMAND FOR TRIAL BY JURY

Defendant Management Services of Lee County, Inc. f/k/a Paul Homes, Inc. ("Paul Homes"), hereby files its Memorandum of Law in Support of Paul Homes' Motion to Dismiss with Prejudice the Claims Brought Against it by Plaintiffs **Gerard and Nancy Roy** (the "Roys" or "Plaintiffs") in the Almeroth Omnibus Class Action Complaint (Omni XIII)[1] (the "Motion"), and to strike the demand for a trial by jury asserted by the Roys.

## I. MEMORANDUM OF LAW[2]

**A.**     **The Roys' Causes of Action are Barred By The Claims Splitting Doctrine.**

In the Payton Omnibus Class Action (Omni I) – which  the Roys filed over two years ago against Paul Homes – the Roys claimed that the drywall used by Paul Homes in the construction

---

[1]     This Memorandum cites to the Almeroth Omnibus Class Action Complaint ("Omnibus Complaint") as "Cmplt. ¶ __."

[2]     A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the complaint, even if proven true, would not entitle the plaintiff to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12.  Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions." *Id.* at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

of their home was defective.  Now, notwithstanding such pending litigation, the Roys improperly seek to split their claims and litigate the identical issues and causes of action against Paul Homes in the instant action.

The Roys' claim-splitting is barred under federal and Florida law. *See Pan Am. Match, Inc. v. Sears, Roebuck & Co.*, 454 F. 2d 871, 875 (5th Cir. 1972) ("It is well settled that a litigant cannot split his cause of action and have two trials upon the same alleged breach of duty."); *Dep't of Agric. and Consumer Serv. v. Mid-Fla. Growers, Inc.*, 570 So. 2d 892, 901 (Fla. 1990) (plaintiffs must "raise all available claims involving the same circumstances *in one action*.") (emphasis added).  Accordingly, the Roy's claims in this Action should be dismissed.

**B.     Plaintiffs' tort claims (Counts I, II, III and XI) are without merit and otherwise barred in whole or in part by Florida's Economic Loss Rule.**

      1.     <u>Plaintiffs cannot state a claim for negligence because Paul Homes did not breach a duty recognized by Florida law.</u>

The Omnibus Complaint alleges that Paul Homes somehow owed Plaintiffs a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶ 42.  The Complaint further alleges that Paul Homes had a duty to provide Plaintiffs with certain warnings about the drywall.  *Id.* ¶ 45.  Even assuming the truth of these obviously specious allegations, they fail to state a claim for relief.

The most fundamental problem with Plaintiffs' negligence theory is that, as a matter of law, Paul Homes did not owe Plaintiffs a duty in negligence.  The March 18, 2011 omnibus order in *Bennett v. Centerline Homes, Inc. et al.*, No. 502009-CA-014458 (Fla. 15th Jud. Cir.), attached hereto as **Exhibit A** for the Court's convenience (the "Omnibus Negligence Order"), explains why this is so.  *Bennett* is a consolidated state court action that, like this one, pits

homeowners with defective drywall claims against homebuilders. Just as the Plaintiffs are attempting to do here, the homeowners in *Bennett* attempted to assert a negligence claim based on their homebuilders' purported failure to protect them from a latent defect – namely, hazardous "Chinese manufactured" drywall. The issue of whether the homebuilders owed a duty in negligence was, the court held, "a question of law." *Id.* at 1.

In what appears to be a case of first impression in Florida, the court in *Bennett* ruled that the homebuilders did not have a duty "to inspect, test or warn" the plaintiffs about the allegedly defective drywall in their homes. The court explained that where, as here, the purported defect is "latent," the law imposes no such duties "unless the product is inherently dangerous." *Id.* at 2; *see O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim as manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent defects unless the product is inherently dangerous."). Because even *defective* drywall does not fit into the narrow "inherently dangerous" category, the homebuilders had no duty to inspect the drywall, to test it, or to warn the plaintiffs about it. Omnibus Negligence Order, pg. 2.[3] The only way for the negligence claims to survive, the court held, was for the homeowners to allege "in good faith" that the homebuilders had "actual or implied notice" of the alleged drywall defects. *Id.*; *see Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action ... only if the retailer could be charged with actual or

---

[3] "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category. They include highly toxic materials, second hand guns and drugs.... In other words ... a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor*, 699 F. Supp. at 1542-43 (internal citations omitted). By way of example, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are not "inherently dangerous."

implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez*, 738 F. Supp. at 483-84.

Because the purported drywall defects at issue in this case were indisputably latent (*see, e.g.,* Cmplt. ¶¶ 19, 70), Plaintiffs' negligence claim cannot survive because they cannot allege – in good faith – that Paul Homes had "actual or implied notice" of the defects. The boilerplate and unsupportable assertion that Paul Homes "knew or should have known" that the drywall would "harm" the Plaintiffs (*id.* ¶ 43) is a bare legal conclusion that cannot state a claim for relief under the legal standards required by this Court, particularly a legal conclusion premised on a negligence theory that files in the face of basic Florida law. *See* Omnibus Negligence Order, pg. 2 (requiring more specific allegations); *Ashcroft*, 129 S.Ct. at 1949.

2. <u>Plaintiffs' tort claims (Counts I, II, III, & XI) are barred by the economic loss rule.</u>

Florida law applies the economic loss rule (the "ELR") in two contexts: "(1) the contractual privity ELR where two parties are in privity of contract, and (2) the products liability ELR where a defective product causes damage, but only to itself." *See In re Chinese Mfr. Drywall Prod. Liab. Litig.*, 680 F. Supp. 2d 780, 799 (E.D. La. 2010). Even if Plaintiffs had properly alleged their tort claims against Paul Homes (which they did not), the ELR precludes them from suing in tort for <u>economic</u> losses for the following reasons.

a) *Contractual Privity*. It is undisputed that Paul Homes and the Plaintiffs are in privity of contract with regard to the construction of the property at issue. *See* Section I.E, *infra*. The law is well settled that where (as here) the parties to a tort claim are in contractual privity with one another, the economic loss rule prohibits a plaintiff from recovery in tort for economic damages, unless the economic damages are the result of a tort committed "independently" of the contractual breach. *See Indemnity Ins. Co. of N. Am. v. Am. Aviation*,

*Inc.*, 891 So. 2d 532, 537 (Fla. 2004).  The policy reason behind this rule is that the parties to a contract had an opportunity to allocate the risks of a breach via the terms of their contractual agreement, and the economic loss rule does not permit the plaintiff to "circumvent the contractual agreement by . . . seeking a better bargain than originally made." *Id.* at 536. Thus, "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." *Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993) (citing *East River Steamship Corp. v. Transam. Delaval, Inc.*, 476 U.S. 858, 870 (1986)).

The viability of the contractual privity economic loss rule to homeowners claims against homebuilders in connection with Chinese drywall has already been recognized in this MDL litigation. *See In re Chinese Mfr. Drywall*, 680 F. Supp. 2d at 799.  In language that is directly on point here, this Court stated:

> In their capacity as defendants, whether the Homebuilders will be susceptible to Plaintiffs' tort claims for economic losses is determined by the contractual privity ELR established by the Florida Supreme Court in *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004).  The contractual privity ELR provides that parties in privity in contract are barred from bringing a tort action for economic damages, unless the economic damage is a result of a tort committed independently of the contract breach, and in other limited circumstances. *Id.* at 536-37.  The Homebuilders and Plaintiffs are in privity of contract because they entered into contracts for the sale of the homes containing Chinese drywall.  Accordingly, under the contractual privity ELR, the terms of those contracts will generally determine the remedies available to Plaintiffs.

*Id.*

Expanding on that same reasoning, the Honorable Judge Glenn D. Kelley of the Fifteenth Judicial Circuit Court in and for Palm Beach, Florida, subsequently issued an omnibus order, dated November 5, 2010, <u>dismissing</u> all tort claims seeking economic damages (i.e., damages for inadequate value, cost of repair and replacement of defective products, lost profits, etc.) filed by Chinese drywall plaintiffs against homebuilders with whom they are in privity.  A true and

correct copy of the omnibus order (which applies to all Chinese drywall cases filed in the Fifteenth Judicial Circuit), in the case styled *Bennett v. Centerline Homes, Inc., et al.,* Case No. 50-2009-CA-014458 (Fla. 15th Jud. Cir.), is attached hereto as **Exhibit B** for the Court's convenience (hereafter, the "November Omnibus Order"). In that Order, Judge Kelley found that "the [homeowners'] claims for economic losses against defendants in contractual privity fall squarely within the scope of the exclusionary rule expressed by the Supreme Court" in *Indemnity Ins.,* which states as follows:

> A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principals are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

*See Indemnity Ins.,* 891 So. 2d *at* 536-537.

In the Omnibus Complaint, Plaintiffs attempt to set forth four (4) different tort claims seeking economic damages against Paul Homes: Negligence, Negligence Per Se, Strict Liability, and Private Nuisance. The underlying conduct alleged by Plaintiffs in support of each of these tort claims is that Paul Homes allegedly sold a home that contains defective Chinese drywall. In the same Omnibus Complaint, Plaintiffs also seek to assert a claim against Paul Homes for Breach of Contract. In support of their Breach of Contract claim, Plaintiffs allege that Paul Homes entered into a contractual agreement with them[4], and breached that agreement by selling them a home that allegedly contains defective Chinese drywall. In other words, the conduct that forms the basis of the Plaintiffs' contract claim and the Plaintiffs' tort claims against Paul Homes are the same. However, in order to avoid dismissal of their tort claims against Paul Homes, the

---

[4]     As such, Plaintiffs do not dispute that they are in contractual privity with Paul Homes.

{23967275;3}

economic loss rule requires Plaintiffs to have alleged some *additional* conduct on the part of Paul Homes which amounts to an independent tort, arising from a duty separate and apart from Paul Homes' duties under the contract. *See Id.* at 537. Plaintiffs have failed to meet this burden.

When tort claims "relate directly to the subject matter of the parties' agreement, or are so interwoven with the agreement, [such that] no independent tort exists ...the economic loss rule applies." *Premix-Marbletite Mfg. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1358-59 (S.D. Fla. 2001).[5] Here, the fact that no *additional* conduct amounting to an independent tort, distinguishable from Paul Homes' alleged duties under the contractual agreement, has been alleged in the Plaintiffs' tort claims mandates dismissal in this case. *See 14250 Realty Assoc., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, at *6 (M.D. Fla. Nov. 6, 2008) (dismissing with prejudice tort claims relating to defective work against a contractor because the plaintiff "fails to allege any negligent activity separate from the activity underlying the breach of contract claims"); *accord In re Chinese Mfr. Drywall,* 680 F. Supp. 2d at 799 (under the contractual privity economic loss rule, the terms of the contracts between the homebuilders and the homeowners will generally determine the remedies available to the homeowners). In light of the foregoing, the Plaintiffs' tort claims seeking economic damages against Paul Homes must be dismissed under the contractual privity economic loss rule.[6]

---

[5]     *See also Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 103 (Fla. 4th DCA 1969) ("[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract."); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[B]reach of contract, alone, cannot constitute a cause of action in tort . . . [and] [i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.").

[6]     Plaintiffs also cannot recover economic losses because they have <u>suffered</u> no such losses. The MDL Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

b.   *Products Liability*. As for the products liability ELR, Florida courts have defined the products liability ELR as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." *See In re Chinese Mfr. Drywall*, 680 F. Supp. 2d at 790 (internal marks and citation omitted). In *Casa Clara*, 620 So. 2d at 1248, the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier. *Id.* at 1246-48.

The same reasoning applies here. Regardless of whether they are in privity with Paul Homes or not, the products liability strand of the ELR bars Plaintiffs from suing Paul Homes in tort for purely economic losses and Plaintiffs are limited to recovering in tort for only *non-economic* losses (e.g., for personal injury) and damages to property other than the house itself. *Id.* at 1247-48. Plaintiffs must therefore, at a minimum replead their tort claims to seek only non-economic losses (if such claims are not otherwise dismissed for the other reasons set forth herein).

## C.   Plaintiffs have not stated a claim for negligence per se (Count II).

Aside from being barred by the economic loss rule, Plaintiffs' negligence per se claim (Count II) is also poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular</u>

type of injury." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiffs have not stated a claim for negligence per se. First, they have not identified a statute that Paul Homes allegedly violated, much less explained how that violation occurred. Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes" and "furnished the drywall in violation of ASTMC C 1396/C 1396M-069." Cmplt. ¶ 52. Plaintiffs, however, do not state how Paul Homes or any of the other unspecified "Defendants" have violated this code. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Paul Homes allegedly violated are "designed to protect the general public rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiffs' negligence per se claim appears to be nothing more than a repackaged negligence claim. It should be summarily dismissed for that reason as well.

**D.      Plaintiffs cannot sue Paul Homes in strict liability (Count III).**

Plaintiffs' strict liability claim (Count III) is premised on the sweeping and patently false assertion that Paul Homes – a builder - was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 57. Plaintiffs' strict liability theory is nonetheless foreclosed by the ELR (as set forth above) and by at least two other established principles of Florida law. Indeed, each principle was cited in

the November Omnibus Order (*See* **Ex. B**) as an independent basis for dismissing all strict liability claims brought against homebuilders. There, the same Florida circuit court that rejected homeowner plaintiffs' negligence theory (*see* Section I.B.1 *supra*) ruled that (1) "only manufacturers, and those in the distributive chain of a product, can be held strictly liable" for allegedly defective drywall; and (2) drywall is not subject to strict liability because it is considered an improvement to real property, not a "product." *See id.*, November Omnibus Order pgs. 7-9. Each rationale applies here and each is fatal to Plaintiffs' strict liability claim.

First, Paul Homes cannot be held strictly liable to the Plaintiffs because Paul Homes obviously did not manufacture or distribute the drywall in question. Indeed, the Complaint itself identifies Paul Homes as a "Builder." Cmplt. Ex. B at ¶ 207 (page 25 of 35). It is firmly settled – and *Bennett* confirms – that strict products liability is reserved for manufacturers and others in the chain of distribution, not homebuilders. *See, e.g., Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.*, 481 So. 2d 1290, 1291-92 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Second, it has long been held that strict product liability does not apply to "structural improvements" to real estate, such as a home, as a home is not considered a product.[7] Drywall is a "structural improvement" to real property because it is an *integral part* of Plaintiffs' home. "Florida courts have expressly <u>declined</u> to extend the principle of strict liability to structural

---

[7]     *See Federal Ins. Co. v. Bonded Lighting Prot. Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (dismissing strict liability claim based on lighting system because system was structural improvement to real estate); *see also Virgilio v. Ryland Group, Inc.*, 695 F. Supp. 2d 1276, 1283 n.11 (M.D. Fla. 2010) (explaining that "a home is not a product" for purposes of strict products liability, and citing authorities; *see generally Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995).

improvements to real estate." *Bonded Lightning*, 2008 WL 5111260 at *4 (emphasis added)[8]. Indeed, Florida courts hearing Chinese drywall cases have similarly found that drywall constitutes a structural improvement to real property for which a strict products liability action will not lie. *See Bissoon v. Centerline Homes Constr., Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions"), a copy of which is attached hereto as **Exhibit C**. As such, Plaintiffs' strict liability claim should be dismissed as a matter of law.

**E.    Plaintiffs' breach of contract claim (Count VII) must be dismissed.**

The Omnibus Complaint states that Paul Homes contracted with Plaintiffs to construct a home that would be "free of defects." Cmplt. ¶ 102. This assertion is insufficient on its face, because it fails to identify the source of Paul Homes' alleged duty to construct a home "free of defects." The Roys must, at the very least, "identify the relevant portion of the contract breached." *14250 Realty Assocs., Ltd. v. Weddle Bros. Constr. Co.*, No. 8:-07-cv-788-T-27EAJ, 2008 WL 4853635, *4 (M.D. Fla. Nov. 6, 2008); *see Ins. Concepts & Design, Inc. v. Healthplan Serv., Inc.*, 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001) (dismissing claim that "fail[ed] to identify any specific provision of the Contract that was breached").

While Plaintiffs will undoubtedly try to justify their skeletal allegations by pointing to the "Omnibus" nature of the Complaint, the decision to join this litigation does not excuse Plaintiffs from satisfying basic pleading standards and it does not cloak them with immunity from the

---

[8]      *See also Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

requirements of due process.   The concern is not merely academic, either.   Contrary to the boilerplate allegation in the Omnibus Complaint, Paul Homes did not agree to build a home "free of defects."  Cmplt. ¶ 102.  Rather, the Construction Agreement entered into between Plaintiffs and Paul Homes, a true and correct copy of which is attached hereto as **Exhibit D**[9] ("Construction Agreement"), states only that Paul Homes will "provide all materials and perform all work of the construction provided for in the plans and specifications in a workmanship like manner, according to the standard building practices in the community."  Ex. D, ¶ 2.

Whatever the meaning of this language -- and there is good authority that it absolves Paul Homes from liability for the allegedly defective drywall[10] -- Paul Homes did not agree to build a home "free from defects."  *Cf. Lonnie D. Adams*, 714 So. 2d at 1179 (holding that although contractor had a duty to perform contract in a "workmanlike" manner, there was no implied duty to deliver defect-free windows to the homeowner-plaintiffs).  To put it another way, Plaintiffs must base their breach of contract claims on an actual contract duty of Paul Homes.  Unless and until they do that, their breach of contract claims against Paul Homes cannot survive.

**F.      Plaintiffs cannot maintain their warranty claim (Counts IV & VI).**

---

[9]      The fact that Plaintiffs chose not to attach a copy of the Construction Agreement to the Omnibus Complaint does not prevent the Court from considering it now.  The Court can and should consider this instrument because it is undeniably central to Plaintiffs' claims (especially their breach of contract and breach of express warranty claims) against Paul Homes.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp.*, No. 09-3835, 2010 WL 334533, *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Fed. Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint.")

[10]      Indeed, regardless of whether they can ever allege the elements of a breach of contract claim, Plaintiffs will be hard-pressed to show that Paul Homes did not construct their homes in a workmanlike manner or that it deviated from standard building practices.  The Court has determined that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed."  *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

In Counts IV (Breach of Express and/or Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiffs allege causes of action based on various express and implied warranties.[11]   Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Paul Homes might have breached them – these improvised warranty claims should be dismissed for several independently sufficient reasons.

     1.    <u>The express warranty claim asserted by Plaintiffs is foreclosed by the plain language of the warranty itself.</u>

Paul Homes issued an express warranty (the "Limited Warranty") with respect to workmanship and materials (which is the only warranty applicable to the drywall in the home) for a period of one (1) year from delivery to the Plaintiffs. <u>Ex. D</u>, ¶ 10.  However, even if the alleged defects in this case were covered by the terms of the Limited Warranty (which they are not), Plaintiffs' express warranty claims should nonetheless be dismissed because the Plaintiffs have not alleged (nor can they) that they experienced a defect within the applicable warranty period. "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects - defects that may exist before, but typically are not discovered until after, the expiration of the warranty period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are

---

[11]    The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but redhibition requires a showing that the allegedly defective product—here, drywall—failed for its intended purpose. *See Benoit v. Ryan Chevrolet*, 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This theory is conclusively barred by this Court's prior determination that the drywall is "serving its intended structural purpose." *In re Chinese Drywall*, 680 F. Supp. 2d at 792. Moreover, Plaintiffs' claims are Florida-based.

not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date"); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms.").

In the instant case, the Certificate of Occupancy for this property was issued by the City of Cape Coral, Florida, on November 3, 2006, a true and correct copy of which is attached hereto as **Exhibit E**.[12]  According to the Profile Form filed by Plaintiffs in this action [attached hereto as **Exhibit F**], Plaintiffs moved into the Property on November 1, 2006.  Thus, Paul Homes' delivery of the Property to Owner occurred no later than November 1, 2006, which means that the one (1) year express warranty expired by its own terms no later than November 1, 2007. Because Plaintiffs cannot (and did not) allege that they experienced the defect alleged in the Omnibus Complaint within the applicable warranty period, Plaintiffs' express warranty claim must be dismissed as a matter of law.

---

[12]  The fact that Plaintiffs chose not to attach this document to the Omnibus Complaint does not prevent the Court from considering it now.  The Court can and should consider this instrument because it is undeniably central to Plaintiffs' claims (especially the breach of express warranty claim) against Paul Homes, and because the document is publicly available.  *See* Fla. Stat. §§ 90.202(5), (6), (11) & (12) (setting forth matters that may be "judicially noticed," including "[f]acts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned"); *e.g., Cardona v. City of Tampa*, No. 96-5194, 1998 WL 34201850, at *1 n.1 (Fla. 13th Jud. Cir. Mar. 9, 1998) (granting motion to dismiss with prejudice while taking "judicial notice" of certain public records filed at city council proceeding).

2.    <u>The express and implied warranty claims asserted by the Roys are foreclosed by the plain language of the Construction Agreement</u>.

Plaintiffs' implied warranty claims must be dismissed as well because the Limited Warranty they agreed to expressly disclaims all such implied warranties.  Indeed, the Limited Warranty states, in no uncertain terms that, "[t]his guarantee is in exclusion of and in lieu of all other guaranties and warranties".  <u>Ex. D</u>, ¶ 10 (emphasis added).

Contractual exclusions of implied warranties like those at bar are valid and enforceable under Florida law. *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Comm'l Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties).  Therefore, the Roys' implied warranty claims are barred.

3.    <u>In any event, Plaintiffs cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose</u>.

There are two more reasons to dismiss Plaintiffs' implied warranty claims.  First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Paul Homes.  That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Bldg. Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794 (Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Paul Homes is not bound by any implied warranties because it is not considered a merchant under Florida warranty law. Paul Homes contracts with its clients to provide a service: home construction. That is why the agreement the Roys entered into with Paul Homes is called a "Construction Agreement" and not a "purchase agreement." Because the inclusion of drywall in Plaintiffs' home was incidental to the construction services that Paul Homes rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances. *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts ... typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, Plaintiffs' implied warranty of fitness claim fails because they do not allege that their drywall was unfit for a <u>particular</u> purpose – that is, "a particular or unusual use different from the purpose for which the item sold is ordinarily used." *Fred's Excavating & Crane Serv., Inc. v. Cont. Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976). "Florida courts have determined that in order to state a cause of action for [breach of] an implied warranty of fitness for a 'particular purpose' ... a plaintiff [must] allege the 'particular' purpose for which the goods were warranted as opposed to 'ordinary use' under a warranty of merchantability." *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (quoting *Weiss v. PPG Indus., Inc.*, 138 F.R.D. 289, 293 (M.D. Fla. 1993)) (dismissing warranty of fitness claim where plaintiff did not allege "the 'particular purpose' for which the motor home was not fit"); *see Fred's Excavating*, 340 So. 2d at 1220 (upholding dismissal of

warranty of fitness claim for same reason). To the extent they seek to assert same, Plaintiffs' implied warranty of fitness claim must be dismissed because they cannot make this indispensable allegation.[13]

## G.    Plaintiffs cannot state a claim for private nuisance (Count XI).

The private nuisance claim (Count XI) would fail even if it were not barred by the economic loss rule. *See* November Omnibus Order (Ex. B) (dismissing all plaintiffs' private nuisance claims against homebuilders because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance"). An action for private nuisance requires the claimant to establish an injury to his or her own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another."); *In re: Chinese Drywall Litig.*, No. 10-28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) (dismissing a private nuisance claim based on defective drywall: "This Court finds Judge Kelley's ruling [in the *Bennett* case] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case"), a copy of which is attached hereto as **Exhibit G**.

The Plaintiffs, however, do not allege that their purported injuries resulted from real property owned by someone else. To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame. Cmplt. ¶ 137. That allegation simply does not state a claim for private nuisance. *See,*

---

[13]     Even assuming the drywall is defective, as Plaintiffs allege it is nonetheless serving its *intended* purpose as room divider and structural support element. This Court has ruled that "[t]he Chinese drywall has not deteriorated the walls, making them structurally unsound; it is the exact opposite, the Chinese drywall stands just as any other functioning drywall, serving its intended structural purpose." *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

*e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the Plaintiffs'] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

## H.     Plaintiffs cannot bring a claim for unjust enrichment (Count XII).

Plaintiffs' unjust enrichment claim (Count XII) is barred. The Construction Agreement that the Roys entered into with Paul Homes foreclose a quasi-contractual theory. "It is well-settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *Am. Honda Motor Co. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Where (as here) the plaintiffs admit to the existence of a contract, "claims arising out of that contractual relationship will not support a claim for unjust enrichment." *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009); *Validsa, Inc. v. PDVSA Serv., Inc.*, 632 F. Supp. 2d 1219, 1243 (S.D. Fla. 2009) (no unjust enrichment claim where parties "admitted to the existence of express contracts").

Moreover, the elements of unjust enrichment are that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce P'ship 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005). As to the fourth element of unjust enrichment, it cannot be disputed that Paul Homes paid a third party (*i.e.*, a subcontractor or distributor) for the drywall in question. As the

Florida appellate court explained in *Maloney v. Therm Alum Indus., Corp.*, 636 So. 2d 767, 770 (Fla. 4th DCA 1994), "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.  Consequently, <u>if the [defendant] has given any</u> <u>consideration to any person for the improvements, it would not be unjust for [the defendant] to</u> <u>retain the benefit</u>."  *Id. overruled on other grounds by, Commerce P'ship*, 695 So. 2d at 388 (observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks omitted) (citing authorities).  Thus, not only is the Plaintiffs' unjust enrichment claim barred because they were in privity of contract with Paul Homes (and thus, have adequate legal remedies), it is precluded because whatever compensation Paul Homes received for the drywall was not retained "unjustly."

I.     **The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiffs also allege a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA").  Cmplt. ¶ 148.  A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages."  *See Lydia Sec. Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  "In light of this trend, <u>claims arising under the FDUTPA must be pled with particularity</u>." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Tech., LLC v. Integra*

*Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA ... [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities).  At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard.  Indeed, it alleges <u>no specific facts</u> in support of Plaintiffs' FDUTPA claims.  *See* Cmplt. ¶¶ 147-151.  It does not identify a single instance in which Paul Homes – by its words or conduct – deceived Plaintiffs or treated them unfairly.  Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b).  *See Fla. Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[14]

Plaintiffs' failure, however, is not merely one of pleading.  Their FDUTPA claims must be dismissed with prejudice because "actual damages" are simply not available to them.  *See Rollins v. Butland*, 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No.

---

[14]      Plaintiffs' FDUTPA claims would be inadequately pled even if Rule 9(b) did not apply.  A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly'" and for a 'deceptive and improper purpose." *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Paul Homes provided services – namely, the construction of houses – Plaintiffs can establish "actual damages" only by showing a difference between the "market value" of the services that Paul Homes actually provided and the services that Paul Homes was required to provide.[15]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiffs cannot make this showing. Plaintiffs have not alleged that the manner in which Paul Homes constructed the houses was in any way responsible for the allegedly defective drywall. The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." MDL No. 2047 Order & Reasons at 18-19.

So even if Plaintiffs could conceivably replead their FDUTPA claims with the particularity demanded by Rule 9(b), they have no hope of establishing the "actual damages" component of those claims. Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. Am.*

---

[15]      The same would hold true if Paul Homes had delivered a "product"—*i.e.*, a completed home—rather than providing a "service." To recover under FDUTPA, Plaintiffs would need to establish a difference in the market value of the homes as delivered, and their market value in the condition in which they should have been delivered. *See Collins*, 894 So. 2d at 990.

*Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995). Count XIII must be dismissed for this reason as well.

**J.    Plaintiffs' claim for equitable relief and medical monitoring (Count XIV) cannot go forward against Paul Homes.**

Plaintiffs' final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV). This hybrid, catchall-type claim seeks, among other things, an order that Paul Homes "buy back or rescind" its contract and "create, fund, and support a medical monitoring program." Cmplt. ¶ 155. This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Because Plaintiffs' substantive claims are due for dismissal, so too are their derivative claims for injunctive relief. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiffs' substantive claims could survive dismissal and lend support for an injunction, the Court should nevertheless dismiss the injunction claims because Plaintiffs have failed to state more than a conclusory allegation regarding the availability of an adequate legal remedy or how Plaintiffs would suffer irreparable harm. Injunctions under both federal and Florida law require these elements. *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at

{23967275;3}

law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted). Plaintiffs do not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate or why Plaintiffs should be entitled to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiffs' request for "medical monitoring," it is unclear whether Florida law permits this cause of action. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. It is hardly clear, then, that these Plaintiffs can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim. At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the cost of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Omnibus Complaint makes no attempt to properly allege these elements. Instead, Count XIV sets forth a series of legal conclusions—*e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct"—without a shred of factual detail. Plaintiffs fail to identify an actual medical condition that Plaintiffs have developed due to the drywall in their houses; nor do they identify a monitoring procedure for any supposed condition. Instead, the Complaint only states that "exposure <u>may</u> lead to serious health problems, diseases, and medical conditions" or an "increased <u>risk</u> of contracting a serious latent disease." Cmplt. ¶¶ 160, 162 (emphasis added). Plaintiffs would have this Court speculate about a theoretical risk of undisclosed ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring. It states a series of legal conclusions, and those "do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate). The glaring deficiencies highlighted above make the final Count subject to dismissal on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-CI-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized

increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").[16]

**K.     The Jury Trial Demand Should Be Stricken.**

In addition to dismissing the Omnibus Complaint in its entirety, the Court should strike the demand made by the Roys for a jury trial. The Roys "specifically and knowingly waive[d] [the] right to trial by Jury" in the parties' Construction Agreement, and they agreed "to submit all claims or disputes to bench trial, only." Ex. D, ¶ 21. That express waiver requires that the jury demand be stricken. *See Palomares v. Ocean Bank of Miami*, 574 So. 2d 1159, 1160 (Fla. 3d DCA 1991) (upholding contractual waiver of jury trial).

## II.  CONCLUSION

For all of the foregoing reasons, Paul Homes respectfully requests an order dismissing the claims against it with prejudice, awarding Paul Homes its fees in defending this action pursuant to the Construction Agreement and pursuant to Florida's Deceptive and Unfair Trade Practices Act, and striking the demand for a trial by jury asserted by the Roys.

Respectfully submitted, May 14, 2012.

                                         AKERMAN SENTERFITT

                                         /s/ Stacy Bercun Bohm
*Co-Counsel for Management Services of Lee*     Stacy Bercun Bohm (Fla. Bar No. 022462)
*County, Inc.,*                                 Valerie B. Greenberg. (Fla. Bar No. 26514
                                         Leslie Miller Tomczak (Fla. Bar No. 126489)
Brent B. Barriere (La. Bar No. 2818)            Las Olas Centre II, Suite 1600
D. Skylar Rosenbloom (La. Bar No. 31309)        350 East Las Olas Boulevard
**Phelps Dunbar LLP**                            Fort Lauderdale, Florida 33301-2229
Canal Place                                     Telephone: (954) 463-2700
365 Canal Street, Suite 2000                    Telecopier: (954) 463-2224

---

[16]     While Plaintiffs have mechanically alleged the basic elements of a claim for medical monitoring, Paul Homes disputes the availability of this unusual form of relief, particularly because the Omnibus Complaint does not name a single medical condition that has actually arisen in any of the Plaintiffs that is allegedly caused by the allegedly defective drywall, let alone identify a medical procedure that could monitor or treat any such condition. *See Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106 (Fla. 3d DCA 1999) (setting forth seven elements for cause of action for medical monitoring).

{23967275;3}

New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
Email: Brent.barriere@phelps.com
       Skylar.rosenbloom@phelps.com

Email: stacy.bohm@akerman.com
       valerie.greenberg@akerman.com
       leslie.tomczak@akerman.com

**LEAD COUNSEL FOR DEFENDANT MANAGEMENT SERVICES OF LEE COUNTY, INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 14th day of May, 2012.

                                  _____/s/ Stacy Bercun Bohm_____