UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | ) | |
|       DRYWALL PRODUCTS | ) | MDL NO. 2047 |
|       LIABILITY LITIGATION | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | SECTION: L |
| | ) | |
| *Hobbie, et al. v.* | ) | JUDGE FALLON |
| *RCR Holdings II, LLC, et al.,* | ) | |
| | ) | |
| No. 10-1113 | ) | |
| | ) | MAG. JUDGE WILKINSON |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION OF
PLAINTIFFS AND DEFENDANT RCR HOLDINGS II, LLC
FOR AN ORDER: (1) PRELIMINARILY APPROVING THE RCR SETTLEMENT;
(2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS;
(3) APPROVING THE FORM OF NOTICE AND AUTHORIZING DISSEMINATION
OF THE NOTICE; (4) SCHEDULING A FAIRNESS HEARING;
AND (5) STAYING THE LITIGATION AGAINST RCR**

This memorandum of law[1] is submitted by Plaintiff Wendy Lee Hobbie, on behalf of herself, the 181 named Plaintiffs on the Second Amended Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 (E.D. La.) (Fallon, J.) (the "Hobbie" matter), and the other owners of 67 condominium Residences in Villa Lago at Renaissance Commons not owned by RCR Holdings II, LLC ("RCR"),[2] and RCR in support of their Joint Motion for Preliminary Approval of the Settlement Agreement.

The parties to this putative class action, Settlement Class Members and RCR, have reached a settlement agreement resolving all claims asserted in the Litigation. Accordingly,

---

[1] Capitalized terms used in this memorandum of law shall have the same meaning as those defined in the Settlement Agreement Regarding Claims Against RCR Holdings II, LLC Related to Villa Lago at Renaissance Commons in MDL No. 2047, dated May 9, 2012 (the "Settlement" or "Settlement Agreement"), attached hereto as Exhibit 1.

[2] See Section III.C.1., *infra*, for a more detailed description of the composition of the Settlement Class.

pursuant to Federal Rule of Civil Procedure 23(e), the Settling Parties seek an order[3] from this Court (i) preliminarily approving the proposed Class Action Settlement with RCR, (ii) conditionally certifying the Settlement Class and appointing Class Representative and Settlement Class Counsel; (iii) approving the form and content of the Notice to the Class and authorizing the dissemination of the Notice; (iv) finding that the proposed plan for distributing Class Notice provides the best notice practicable, satisfies the notice requirements of Rule 23(e) and satisfies all other legal and due process requirements; (v) setting dates and procedures for the Fairness Hearing, including deadlines for Class Members to file objections to the proposed Settlement or request that they be excluded from the Settlement; and (vi) staying the Litigation against RCR.

## I.     INTRODUCTION

After over two years of litigation and several mediations, Class Members and Defendant RCR have agreed on a settlement resolving class and individual claims against RCR in the Litigation.  This Settlement – arrived at following serious, informed and arm's-length negotiations – requires that RCR shall pay the Settlement Amount of $4,800,000 in exchange for a full, complete and final settlement of the Litigation, including a release of claims and bar from initiation, assertion or prosecution of claims against RCR.

### A.     The Settlement Class

The proposed Settlement now before the Court for preliminary approval is intended to resolve claims which arose out of Chinese Drywall that was installed in the Residences at Villa Lago.

The Settlement Agreement establishes a Settlement Fund for the benefit of the Settlement Class defined as: "All persons who, as of September 21, 2009, owned a Residence located at Villa Lago, Boynton Beach, Florida, regardless of whether or not they own the unit as of the

---

[3] The proposed Preliminary Approval Order is attached hereto as Exhibit 2.

Notice Date. Excluded from the Settlement Class is RCR, including any units owned by RCR, and any other Defendant in the *Hobbie* matter and any person, firm, trust, corporation, or other entity related or affiliated with Defendants including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants."[4]

### B. The Settlement Benefits

The proposed Settlement provides for the creation of a Settlement Fund in order to resolve all claims arising out of the alleged defective Chinese Drywall installed in the Residences at Villa Lago. RCR has agreed to pay the Settlement Amount of $4,800,000 into an Escrow Account to be administered in accordance with the provisions of Section 11 of the Settlement Agreement. The Settlement Amount will be paid into an Escrow Account within the later of (a) ten days after entry by the Court of the Preliminary Approval Order; or (b) five days after the day that the Escrow Account has been established and appropriate wiring instructions have been provided to RCR.

The Settlement Fund shall be distributed in accordance with a distribution plan to be submitted by Settlement Class Counsel at the completion of this case, so that all funds received in this case, whether through settlements or judgment following trial, can be distributed together at one time. The distribution plan shall provide for redress of all claims filed by the Class Members which may include remediation, cash compensation or a combination thereof. Class Members shall look solely to the Settlement Fund for settlement and satisfaction against RCR of all Released Claims, and shall have no other recovery of costs, fees, attorneys' fees, damages, or other relief against RCR.

---

[4] The date in the Settlement Class definition is derived from the date on which the original *Hobbie* complaint was filed in Circuit Court for Palm Beach County, Florida.

3

C. **<u>Attorneys' Fees</u>**

In addition to the benefits provided under the Settlement, RCR has agreed not to oppose Settlement Class Counsel's application for an award of attorneys' fees (not to exceed one-third of the Settlement Fund) and reimbursement of expenses and costs incurred from the administration of the Settlement.  Any fees, costs and expenses awarded to Settlement Class Counsel shall come from the Settlement Fund.  If approved by the Court, these fees are to compensate Settlement Class Counsel for all preparation and litigation work performed on behalf of the Class and to reimburse Settlement Class Counsel for reasonable costs expended in the prosecution of this action, as well as Administrative Expenses.  Thus, individual Class Members will not be responsible for payment of attorneys' fees or costs out of their recovery of benefits under the Settlement.

\* \* \*

Settlement Class Counsel believe that the Settlement Agreement is fair, adequate and reasonable in view of a variety of factors, including the estimated damages suffered by the Class, the exposure of RCR relative to the other Defendants, the complexity of and risks attendant to Class Members' demonstration that their damages were causally linked to RCR's alleged wrongdoing, and the delays inherent in litigating hundreds of individual claims against RCR. RCR and Class Members believe that the Settlement is a reasonable settlement of disputed claims.  The Settlement was negotiated at arm's length.

The Settling Parties accordingly respectfully submit that the Settlement Agreement is fair, reasonable and adequate under the governing standards for evaluating preliminary approval of class action settlements in the Fifth Circuit.  Moreover, conditional certification of the Class for settlement purposes is appropriate pursuant to Fed. R. Civ. P. 23, and the proposed notice

program specifying individual notice via first-class mail to all Class Members satisfies the requirements of due process.  As set forth below, all prerequisites for preliminary approval of the Settlement Agreement and conditional certification of the proposed Settlement Class have been met, and the Settling Parties respectfully submit that their Joint Motion for Preliminary Approval of the Settlement Agreement should be granted.

## II.     BACKGROUND

### A.     The Chinese Drywall Litigation

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms. Beginning in the fall of 2005, hundreds of millions of square feet of Chinese Drywall were exported to the United States, sold to distributors and suppliers, resold to builders and installers, and installed in thousands of properties domestically, but primarily in Florida, Louisiana, Alabama, Mississippi, Texas and Virginia.[5]

Certain Governmental agencies found Chinese Drywall to be defective, allegedly causing property damage, including damage to electrical wiring, corrosion of pipes, and damage to or destruction of air-conditioners, refrigerators, HVAC systems, and other appliances.[6]  The Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC") made various recommendations for the repair of properties impacted by Chinese Drywall, including the removal of problematic drywall,

---

[5] The Gypsum Association reports that 320 million square feet of Chinese Drywall were imported from 2005-2007. *See* Gypsum Association Comments, published at
http://www.gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.

[6] *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Germano),* 706 F. Supp. 2d 655, 664-666 (E.D. La. 2010) (Findings of Fact and Conclusions of Law); *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Hernandez)*, No. MDL 2047, 2010 WL 1710434, at * 8-9 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

fire safety alarm devices, electrical distribution components (including receptacles, switches and circuit breakers), gas service piping and fire suppression sprinkler systems.[7]

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047, pursuant to 28 U.S.C. § 1407.[8] The *Hobbie* action, filed on September 21, 2009 in the Circuit Court for Palm Beach County, Florida, involves a multi-unit residential building located in Boynton Beach, Florida, known as Villa Lago. Villa Lago was built during 2005 through 2007. It is part of a large mixed use development project known as Renaissance Commons and is composed of 328 residential condominium units.[9] The *Hobbie* action was removed by Defendant Banner Supply Company [10] on February 26, 2010, then transferred to this Court pursuant to MDL procedures. The majority of the Class Members in this action have also been named on Class Action Omnibus complaints filed in this Court by the Plaintiffs' Steering Committee in MDL No. 2047.

### B. Reasons for the Settlement

RCR shall pay a total of $4,800,000 in exchange for the full, complete and final settlement of Class Members' claims against RCR in the *Hobbie* action and any of the Omnibus complaints. Although Settlement Class Counsel believe in the merits of the case against RCR and in their ability to prevail, they recognize that, even if the case against RCR were to proceed

---

[7] *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011, published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

[8] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

[9] RCR owns 130 of these units.

[10] Banner Supply Company consists of Banner Supply Company, Banner Supply Company of Pompano, LLC, Banner Supply Company of Fort Myers, LLC, and Banner Supply Company of Tampa, LLC.

to trial, RCR would likely appeal any judgment favorable to the Class. Any post-appeal enforcement proceeding would impose a significant additional delay on the payment of any recovery to individual Settlement Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.

The Settling Parties respectfully request that this motion be granted not only because, as will be set forth herein, public policy favors the settlement of complex class actions such as this, but because the Settlement Agreement is an excellent result for the Settlement Class Members. It is fair, reasonable and adequate, and was negotiated at arm's length. In light of the foregoing, it is respectfully requested that the Court enter an Order preliminarily approving the Settlement Agreement, conditionally certifying the Settlement Class, approving the dissemination of Notice to the Class, scheduling a Fairness Hearing, and staying the Actions only as they relate to RCR.

## III. ARGUMENT

### A. Standard for Preliminary Approval

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Fed. R. Civ. P. 23(e). The first step in determining whether to grant preliminary approval to a class settlement is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement." *Cope v. Duggins*, No. 98-3599, 2001 WL 333102, at * 1 (E.D. La. Apr. 4, 2001) (Fallon, J.) (citation omitted). The Court must "evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing." *Id*. Ultimately, to approve a proposed settlement, the Court must determine if it is fair, adequate and reasonable. *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (Fallon, J.).

At this preliminary stage, the Court's review is less stringent. *See, e.g., In re OCA, Inc. Sec. and Derivative Litig.*, No. 05-2165, 2008 WL 4681369, at * 11 (E.D. La. Oct. 17, 2008) ("As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval."). It is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citation and quotation marks omitted). Where experienced counsel representing many interested parties have extensively negotiated the settlement at arm's length, a strong initial presumption is created that the compromise is fair and reasonable. *U.S. v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). Thus, if experienced counsel determine that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978); *see also In re OCA, Inc.*, 2008 WL 4681369, at * 11 (Where there is "no reason to doubt [the] fairness" of the settlement and it "appears to fall within the range of possible approval, the court should grant preliminary approval.").[11]

The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th

---

[11] The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. General Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983). *See also In re Train Derailment Near Amite La. on October 12, 2002*, No. MDL 1531, 2006 WL 644494, at * 1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement negotiated at arm's length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

8

Cir. 1977) (quoting *Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975)). Thus, at this stage, so long as the settlement falls into the range of possible approval – giving deference to the result of the parties' arm's-length negotiations and the judgment of experienced counsel following sufficient investigation and discovery – the settlement should be preliminarily approved and a final fairness hearing scheduled.[12]

### B.    The Proposed Settlement Is Fair, Reasonable and Adequate and is in the Range of Possible Approval.

The proposed Settlement Agreement in this case is fair, reasonable and adequate, and clearly falls within the range of possible approval. One indication of whether a settlement is fair and reasonable is whether it is the product of serious, arm's-length negotiations. *Tex. Educ. Agency*, 679 F.2d at 1108. The Settling Parties in this Litigation have twice tried to resolve this case through formal mediation. On February 15-16, 2011, both RCR and Settlement Class Counsel participated in a mediation before Richard O. Kingrea in Miami, Florida. By order of this Court, the mediation was continued in New Orleans, Louisiana, on March 22, 2011. The mediation did not result in the resolution of this matter. After RCR initiated further settlement discussions towards the end of 2011, the parties again met in Miami on December 9, 2011 to further explore settlement. After numerous back and forth discussions –both at the informal mediation and for months afterwards – the Settling Parties finally reached an agreement on terms memorialized in a Memorandum of Understanding dated March 7, 2012. This Memorandum of Understanding and additional components of the settlement were further detailed in the Settlement Agreement.

---

[12] In determining whether to approve a settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See, e.g., Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton,* 559 F.2d at 1331; *Turner,* 472 F. Supp. 2d at 843. This is, in part, because of the complexity and size of class actions. *Cotton*, 559 F.2d at 1331 (citation omitted). The Fifth Circuit has recognized that certification of a class for settlement purposes is beneficial in resolving major class actions. *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-177 (5th Cir. 1979).

Moreover, Settlement Class Counsel are highly competent counsel, all with many years of experience litigating complex class actions and cases involving defective products. Settlement Class Counsel also possess adequate information concerning the strengths and weaknesses of the Litigation against RCR after extensive document discovery and litigating this case for over two years. Further detailed credentials of counsel are enumerated on their firm resumes, attached hereto as Exhibit 3. The Court may presume, therefore, that the proposed Settlement is fair and reasonable, as it is the result of arm's-length negotiations. *See Camp v. Progressive Corp*, No. 01-2680, 2004 WL 2149079, at * 7 (E.D. La. Sept. 23, 2004).

The Settlement Agreement also contains reasonable economic terms along with the manner and form of notice to be given to the Class and the contingencies or conditions to the Settlement's final approval. Moreover, the complexity, expense, uncertainty, and likely duration of the Litigation also militate in favor of consummating the settlement process. Settlement Class Counsel respectfully submit that the above-cited circumstances support preliminary approval of the Settlement.

### C.     The Requirements of Rule 23 Have Been Met for Conditional Certification of the Settlement Class.

For purposes of conditionally certifying the Rule 23(b)(3) Settlement Class sought by the Settling Parties, *Manual for Complex Litigation* (Fourth) § 21.632 (2004) advises:

> If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).

Further, "[i]f there is a need for subclasses, the judge must define them and appoint counsel to represent them." *Id*. This comports with the Supreme Court's holding in *Amchem* that "[s]ettlement is relevant to a class certification," but the requirements of Rule 23(a) and

10

23(b)(3) must still be met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id*.

In this case, all of the requirements of Rule 23 have been met. Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Settlement Class.

1. **Numerosity**

Here, the class is comprised of a readily identifiable group – owners of condominium Residences in Villa Lago at Renaissance Commons. Excluded from the class is RCR and any units RCR owns. There are a total of 328 units at Renaissance Commons. RCR owns 130 of these units. Therefore, there are 198 units in the class. Of these 198 units, 131 of them are owned by the 182 named Class Members. That leaves a total of 67 Residences that are not represented by any of the named plaintiffs. Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied. *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999) (a class composed of 100 to 150 members will generally satisfy the numerosity requirement); *see* Alba Conte & Herbert B. Newberg, 1 Newberg on Class Actions, § 3:3 (4th ed.

2010) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

### 2. Commonality

The commonality requirement of Rule 23(a)(2) is met in this case. The Judicial Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the commonality of facts in the various cases."[13] Questions surrounding the effects of the Chinese Drywall on Class Members and the damages caused by the Chinese Drywall are issues common to all Class Members, satisfying this element of Rule 23(a). *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); 1 Newberg on Class Actions, § 3:1 ("Convenience, uniformity of decision, and judicial economy are achieved through the class action device by litigating common issues only once on behalf of all class members.").

### 3. Typicality

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 1 Newberg on Class Actions, § 3:13 (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)). In other words, courts must determine "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named class members, and whether other class members have been injured by the same

---

[13] *Hernandez*, 2010 WL 1710434, at * 1 (Findings of Fact).

conduct." *Id*. (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members.  *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-157 (1982).  The typicality requirement has been liberally construed by the federal courts.  *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Class Members in this case is seeking money from RCR for the costs of remediation of the allegedly defective Chinese Drywall and other damages allegedly caused by the Chinese Drywall. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." 1 Newberg on Class Actions, § 3:13.  The proposed Class Representative is a Plaintiff seeking to hold RCR liable for damages resulting from Chinese Drywall installed in her Residence.

### 4.  **Adequacy of Representation**

Rule 23(a)(4) requires that the named class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions, § 3:21.  Second, the named class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *Amchem*, 521 U.S. at 625-626 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted).  At this preliminary stage of the approval process, there is nothing to suggest that this requirement has not been met.  The named representative is a member of the Class she seeks to represent – she is an owner of a Residence at Villa Lago as of

September 21, 2009 – and does not possess any interests antagonistic to the Class with respect to their claims against RCR.  Here, both the Class Representative and the absent Class members are equally interested in detailing to the Court and a jury the nature of RCR's liability, and are further committed to obtaining appropriate compensation from living in the Affected Properties.

Moreover, Settlement Class Counsel conducted these class negotiations with RCR at arm's length, and will fairly and adequately represent the Class.  *See Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).  The Court may take judicial notice of Class Counsel's substantial experience in litigating mass tort class actions and complex product liability cases.[14]  Class Counsel have been lead counsel in numerous complex class action cases.  Class Counsel have and will continue to litigate aggressively against the remaining *Hobbie* defendants.  Class Counsel possess adequate information concerning the strengths and weaknesses of the Litigation against RCR after extensive document discovery and litigating this case for well over two years.  Class Counsel have negotiated the proposed Settlement from a position of knowledge and strength, and as advocates for the entirety of the Class.  They have obtained an advantageous settlement that treats all Class members in the same fashion, and provides real value to all.  Therefore, the adequacy of representation requirement is readily satisfied for certification.

**5. Common Questions of Law and Fact Predominate**

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  1 Newberg on Class Actions, § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed

---

[14] Further detailed credentials of Settlement Class Counsel are enumerated on their firm resumes, attached hereto as Exhibit 3.

classes are sufficiently cohesive to warrant adjudication by representation"). In this case it makes eminent good sense to resolve the claims against RCR in this forum through the class action device. The issues of RCR's liability predominates over any individual issues involving the Class Members. Moreover, all Class Members are unified by common factual allegations. A class settlement will ensure that funds are available to remediate the Class Members' Affected Properties and provide compensation for other damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication. Factors the Court may consider include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.[15] Fed. R. Civ. P. 23(b)(3)(A)-(D). Consideration of each of these factors weighs in favor of certification of the Settlement Class.

First, the interest of individuals in controlling this litigation is limited. While the damages of some Class Members may be sufficiently significant to warrant individual litigation, the damage to most individuals is slight compared to the cost of litigating a case of this complexity. As the U.S. Supreme Court reasoned in *Amchem*,

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry recoveries into something worth someone's (usually an attorney's) labor.

521 U.S at 617. Importantly, Class Members who wish to pursue their own individual

---

[15] As stated earlier, any difficulties of management of this Class need not be considered. *Amchem*, 521 U.S. at 620.

lawsuits can request exclusion from the Class if he or she so desires.  Moreover, given the unique nature of this Action, there are economies of scale in remediation of the entire condominium building that make individually litigating this case against RCR undesirable.  The second factor, the nature and extent of any existing litigation, also weighs in favor of class action superiority for settlement purposes.  At the time of Settlement, Class Members were unaware of any pending litigation against RCR seeking redress on behalf of individuals who purchased units at Villa Lago.  Thus, unless the proposed Class is certified for settlement purposes, numerous meritorious claims relating to RCR's actions will remain unredressed.  Third, it is desirable to concentrate the litigation in this forum because this Court has presided over the ongoing massive Chinese Drywall Multidistrict Litigation since June 15, 2009.  Finally, the proposed Settlement resolves any manageability problems by creating a mechanism for reviewing the individual claims of Class Members, thereby permitting a sizable number of Class Members to achieve individual relief without burdening the judicial system.  Indeed, given the U.S. Supreme Court's holding that a court certifying a settlement class need not decide whether or not a class action would be manageable at trial, *id.,* at 620, the Court need not even consider the issue of manageability.  For all of the above reasons, a class action is the superior method of adjudicating this controversy.

In short, the class action mechanism offers substantial economies of time, effort, and expense for the litigants in this matter, as well as for the Court.  *See White v. Imperial Adjustment Corp.*, No. 99-3804, 2002 WL 1809084, at * 6 (E.D. La. Aug. 6, 2002) ("Rule 23(b)(3) applies to cases for which a class action would achieve economies of time, effort, and expense, [and] promote uniformity of decision as to persons similarly situated.").  Given the various suits pending in federal and state courts, approval of the Settlement and resolution of all Chinese Drywall claims against RCR in this forum benefits all parties.

### D. The Proposed Form and Method of Class Notice is Adequate and Satisfies the Requirement of Rule 23.

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." The law is clear that individual notice by first-class mail is more than sufficient to meet the notice requirements of due process. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-177 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).

In accordance with these legal parameters, individual notice by first-class mail shall be provided to all Class Members and their counsel. The Settling Parties are also requesting that the Settlement Agreement be posted on the District Court's Chinese Drywall MDL website.

The Court should approve the form and content of the proposed Class Settlement Notice ("Notice").[16] The Notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1). The Notice objectively and neutrally apprises all Class Members of the nature of the action, the definition of the Class sought to be certified for purposes of the Settlement, the Class claims and issues, that Class Members may enter an appearance before the Court at the Fairness Hearing (in accordance with the procedures set forth in the Notice), that the Court will exclude from the Class any Class Member who opts out (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B). The Notice additionally discloses the date, time and location of the Fairness Hearing and the procedures and deadlines for the submission of objections to any aspect of the

---

[16] Both the long-form individual Notice and the short-form summary Notice are attached hereto as Exhibits 4 and 5, respectively.

settlement. These disclosures are complete and should be approved by the Court. *See*, *e.g.*, *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000).

The Notice provides clear direction and instructions to Class Members regarding their options under the Settlement. Upon notification of the Settlement, Class Members have three choices: (1) approve the Settlement and share in the settlement proceeds; (2) opt out of the Settlement, in which case they will not participate in the settlement recovery and will retain their individual claims against RCR; or (3) object to the Settlement, in which case they will nonetheless remain Class Members. To participate in the Settlement, Class Members need do nothing at this time. Class Members who wish to opt out of the Settlement must submit timely notice of their intent to opt out. Class Members who wish to object to the Settlement must file and serve a notice of their intention to appear and object. Objectors may submit a memorandum of law in opposition, as well as any admissible evidence relevant to the issues to be heard, provided that such Class Member has timely provided any and all papers in opposition to the Settlement upon which the objection may be based. Objectors may also appear before the Court at the Fairness Hearing.

At the Fairness Hearing, any Class Members who have timely filed and served a notice of intention to appear may voice any objections. The Court can then consider the merits of the Settlement in light of any objections and determine whether to grant final approval of the Settlement. At the Fairness Hearing, the Settling Parties will have submitted briefs and other documents in support of the final approval of the Settlement. If the Court finds the Settlement Agreement to be fair and reasonable, the Court should enter a Final Judgment and Order of Dismissal with Prejudice, dismissing this action with prejudice as to RCR and effecting a release of all claims against RCR as provided for in the Settlement Agreement.

## IV. STAY OF LITIGATION AGAINST RCR

In order to facilitate the Settlement Agreement with RCR, the Class Members and RCR jointly request the Court enter a stay of the Actions as they relate to RCR until the Court is able to make a determination on the final approval of the Settlement and enter the Final Order and Judgment.

## V. CONCLUSION

The Settling Parties respectfully request that this Court find preliminarily that the Settlement Agreement is fair, reasonable and adequate, and that notification to Class Members of the terms of the Settlement and their rights in connection with the Settlement is warranted. The Settling Parties seek entry of an Order: (1) preliminarily approving the RCR Settlement; (2) conditionally certifying the Settlement Class as set forth in the Preliminary Approval Order; (3) approving the form and content of Notice to the Class and authorizing the dissemination of the Notice; (4) scheduling a Fairness Hearing; and (5) staying the Litigation against RCR.

DATED: May 14, 2012    Respectfully submitted,

/s/ Gary E. Mason
Gary E. Mason
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Suite 605
Washington, D.C. 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

Adam C. Linkhorst, Esq.
LINKHORST & HOCKIN P.A.
4495 Military Trail, Suite 106
Jupiter, Florida 33458
Telephone: 561.626.8880 / 954.776.5990
Facsimile: 561.626.8885

Joel R. Rhine
RHINE LAW FIRM

314 Walnut Street, Suite 1000
Wilmington  NC  28401
Telephone:  (910) 772-9960
Facsimile:   (910) 772-9062

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
Telephone: (888) 981-0939
Facsimile: (919) 981-0199

Chris Coffin
PENDLEY BAUDIN & COFFIN, LP
Post Office Drawer 71
24110 Eden Street
Plaquemine, Louisiana 70765
Telephone:  (225) 687-6396

Stephen Mullins
LUCKEY & MULLINS
2016 Bienville Blvd
P.O. Box 990
Ocean Springs, MS 39564
Telephone:  (228) 875-3175
Facsimile:   (228) 872-4719

*Attorneys for Plaintiffs*