# Exhibit "F"



**ORDERED in the Southern District of Florida on September 30, 2009.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re | Case No. 09-11191-PGH |
| MERCEDES HOMES, INC., *et al.* | Chapter 11 Cases |
| Debtors. | (Jointly Administered) |

---

<u>**ORDER CONFIRMING DEBTORS' JOINT PLAN OF REORGANIZATION PURSUANT**</u>
<u>**TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE (D.E. # #1020)**</u>

THIS CAUSE came to be heard in West Palm Beach, Florida, on August 31, 2009 at 1:00 p.m. ("Confirmation Hearing"), to consider confirmation of the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Plan") (D.E. #1020) filed by MERCEDES HOMES, INC. ("MHI") and certain of its subsidiaries (together with MHI, the "Debtors"),[1] debtors and debtors-in-

---

[1] The debtor subsidiaries of MHI include: i) Space Coast Truss, Inc. ("Space Coast Truss"); ii) Mercedes Homes of Texas Holding Corp. ("MH Texas"); iii) Suntree Office Complex, LLC ("Suntree"); iv) Engineering and Drafting Services, Inc. ("Engineering Services"); v) Mercedes Homes of the Carolinas, Inc. dba Mercedes Homes ("MH Carolinas"); vi) Solid Wall Systems, Inc.; vii) MHI Holding Company, LLC ("MHI Holding"); viii) Mercedes Homes of Texas, Ltd. ("MH Texas"); ix) MHI Building Products, L.P. ("MHI Building"); and x) Dairy Towns Community Developers, Inc. ("Dairy Towns").

possession in the above-captioned Chapter 11 Cases, and the findings of fact, conclusions of law, and the Court's review of all documents, pleadings, evidence, argument, and other matters as set forth in the Court's *Findings of Fact and Conclusions of Law Regarding Debtors' Joint Plan of Reorganization* ("Findings and Conclusions") (Exhibit "A") and the *Findings of Fact and Conclusions of Law Overruling Objection of Jeffrey Macik to the Debtors' Joint Plan of Reorganization* ("Release Related Findings and Conclusions") (D.E. #1446), which are incorporated herein by reference, and after having heard argument of counsel and reviewing the file and papers, the Court does:

      **ORDERS as follows:**

      1.    <u>Confirmation of Plan</u>. The Plan is approved and confirmed under Section 1129 of the United States Bankruptcy Code ("Bankruptcy Code") pursuant to the terms and conditions of this Order. The terms of the Plan, the attached exhibits, and the Plan Supplement filed with the Court on August 10, 2009 (as amended or supplemented as contemplated hereby, including by paragraphs 50 and 51 hereof, the "Plan Supplement") (D.E. #1096) are incorporated herein and are part of the Plan and this Order. The Plan Supplement and all attachments thereto, including the Creditor Trust Agreement and New Loan Documents, all as supplemented and/or modified as contemplated hereby, are hereby approved.

      2.    <u>Objections</u>. As described herein, all objections to confirmation of the Plan have been withdrawn, settled, or overruled.

      3.    <u>Defined Terms</u>. All capitalized terms used in this Order that are not defined shall have the same meaning ascribed to them in the Plan (as such terms may be modified by the terms of this Order).

4.    <u>Provisions of Plan and Order Non-Severable and Mutually Dependent</u>. The provisions of the Plan and this Order, including the Findings and Conclusions and Release Related Findings and Conclusions incorporated herein by reference, are non-severable and mutually dependent, and are deemed fully incorporated by reference in each other.

5.    <u>Reconstitution of the Debtors</u>.  Except as otherwise expressly provided in the Plan or this Order, on the Effective Date the Reorganized Debtors shall be reconstituted with all the powers of a corporation, limited liability company, limited partnership or partnership, as applicable, under applicable law in the jurisdiction in which each applicable Debtor is incorporated or otherwise formed pursuant to the Plan and the Amended and Restated Organizational Documents.  The Reorganized Debtors shall, pursuant to the Plan and the Amended and Restated Organizational Documents, be authorized to issue the New Mercedes Common Stock and New Loan Documents to the appropriate parties on the Effective Date or as soon as practicable thereafter.

6.    <u>New Mercedes Common Stock Voting Rights</u>.   The New Mercedes Common Stock shall be voting securities issued under the Plan and the Amended and Restated Organizational Documents pursuant to Bankruptcy Code § 1123(a)(6).   The voting rights of the New Mercedes Common Stock are set forth in the Amended and Restated Organizational Documents.

7.    <u>Preserved Litigation Claims</u>.   In accordance with Bankruptcy Code § 1123(b), and except as provided otherwise in the Plan or this Order (including, without limitation, as otherwise agreed by the Debtors and the Reorganized Debtors with certain creditors), all Preserved Litigation Claims are retained and reserved for each of the

Reorganized Debtors, which are designated as the respective Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Preserved Litigation Claims. The Reorganized Debtors shall retain, and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any Preserved Litigation Claim. The Reorganized Debtors shall be the owner of all Preserved Litigation Claims and shall have the exclusive right, authority, and standing to prosecute, defend, compromise, settle and otherwise deal with all such Preserved Litigation Claims.

8.     Transferred Claims.  In accordance with Bankruptcy Code § 1123(b), and except as provided otherwise in the Plan or this Order (including, without limitation, as otherwise agreed by the Debtors and the Reorganized Debtors with certain creditors with the consent of the Committee or the Creditor Trustee), all Transferred Claims, which include the Avoidance Actions, are retained and reserved for the Creditor Trust, and the Creditor Trustee is designated as the respective Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Transferred Claims.  The Creditor Trust shall retain, and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any Transferred Claim.  The Creditor Trust shall be the owner of all such Transferred Claims and shall have the exclusive right, authority, and standing to prosecute, defend, compromise, settle and otherwise deal with all such Transferred Claims.

9.     Vesting of Assets.  Except as provided otherwise in the Plan or this Order, including paragraph 49(b) of this Order, all property of the Estates shall vest in the Reorganized Debtors on the Effective Date free and clear of all Liens and Claims of all kinds existing before the Effective Date.  From and after the Effective Date, the

Reorganized Debtors may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in the Plan, the Amended and Restated Organizational Documents or this Order.  On the Effective Date, the Creditor Trust shall be vested, free and clear of all Liens and Claims of all kinds, with the following:  (i) the Effective Date Cash Payment, (ii) the right to receive the Post Effective Date Cash Payment and, upon payment, the Post Effective Date Cash Payment, (iii) the right to receive the BANS Proceeds Allocation and the proceeds from such right and (iv) the Transferred Claims and all proceeds therefrom.

10.  <u>Release of Liens</u>.  Except as provided otherwise in the Plan or this Order, including paragraph 49 of this Order, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens or other security interests against property of the Debtors' estates are fully released and discharged (except to the extent reinstated or preserved under the Plan), and all right, title and interest of any holder of such mortgage, deed of trust, liens or other security interests, including any rights to any collateral thereunder, shall revert to the applicable Debtor and its successors and assigns.

11.  <u>Documentation of Release of Liens</u>.  Other than as expressly provided in the Plan or this Order, any person or entity that has asserted mortgages, deeds of trust, liens, security interests, financing statements, or other documents or agreements evidencing claims on or interest in property of the Debtors', as may have been recorded or may otherwise exist, is authorized and directed to execute termination statements,

instruments of satisfaction or discharge, or releases of all such claims or interests which the person or entity has with respect to the Debtors' property. Other than as expressly provided in the Plan or this Order, if any person or entity shall not have delivered to the Debtors or Reorganized Debtors, in proper form for filing and executed by the appropriate parties, such termination statements, instruments of satisfaction or discharge, or releases of all such claims or interests which the person or entity has with respect to the Debtors' property, the Reorganized Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents, and take all other actions as may be necessary on behalf of the person or entity asserting a claim on or interest in the Debtors' property.

12. <u>Retained Assets</u>. To the extent that the succession of assets of the Debtors to the Reorganized Debtors pursuant to the Plan are deemed to constitute "transfers" of such assets, such transfers to the Reorganized Debtors: (a) are or shall be legal, valid, and effective transfers of property; (b) vest or shall vest the Reorganized Debtors with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Order; (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or applicable nonbankruptcy law; and (d) do not and shall not, except as provided for in the Plan, subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability. Similarly, to the extent that the succession of assets of the Debtors to the Creditor Trust pursuant to the Plan are deemed to constitute "transfers" of such assets, such transfers to the Creditor Trust: (a)

are or shall be legal, valid, and effective transfers of property; (b) vest or shall vest the Creditor Trust with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Order; (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or applicable nonbankruptcy law; and (d) do not and shall not, except as provided for in the Plan, subject the Creditor Trust to any liability by reason of such transfer under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

13. _Injunction._ Except as provided otherwise in the Plan or this Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged under the Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, or liabilities: (a) commencing or continuing in any manner any Claim, action or other proceeding against the Debtors, the Reorganized Debtors, or the Creditor Trust which they possessed or may possess prior to the Effective Date; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to any Claim against the Debtors, the Reorganized Debtors, the Creditor Trust or their respective property, which they possessed or may possess prior to the Effective Date; (c) creating, perfecting or enforcing any lien or encumbrance of any kind with respect to any Claim against the Debtors, the Reorganized Debtors, the Creditor Trust or their respective property, which they possessed or may possess prior to the Effective Date; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors, the Reorganized Debtors, the Creditor

Trust or their respective property, which they possessed or may possess prior to the Effective Date; (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code; and (f) asserting any Claims that are subject to the Releases as described in Article 12.4 of the Plan.

14.    <u>Automatic Stay</u>.  The automatic stay in effect in these Chapter 11 Cases pursuant to Bankruptcy Code § 362(a) shall continue to be in effect until the Effective Date, at which time the stay shall be dissolved and of no further force or effect, subject to: i) the injunction set forth in the preceding paragraph and in the Plan; and/or ii) Bankruptcy Code §§ 524 and 1141; and/or iii) the terms of this Order; provided, however, that nothing herein shall bar the filing or recording of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, deeds of trust, and bills of sale) or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or this Order prior to the Effective Date.

15.    <u>Releases by the Debtors</u>.  Except as provided otherwise in this Order, including paragraphs 45(a) and 49(e) of this Order, pursuant to Bankruptcy Code § 1123(b)(3), as of the Effective Date, the Debtors and the Reorganized Debtors, in their individual capacities and on behalf of the Estates, shall be deemed to forever release, waive, and discharge all Released Parties from all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter

arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors and the Reorganized Debtors.  The Reorganized Debtors shall be bound, to the same extent the Debtors are bound, by all of the releases set forth in Article 12.4.A of the Plan and modified in paragraph 49(e) of this Order.  Notwithstanding the foregoing, nothing in Article 12.4, the Plan, or the Confirmation Order shall release any Transferred Claims or Preserved Litigation Claims, it being understood and agreed that the Transferred Claims and Preserved Litigation Claims that are preserved by this sentence do not include any Avoidance Actions or other Claims against any Released Party.  Notwithstanding anything herein or in the Plan to the contrary, the Creditor Trust shall not be bound by the releases being granted to REIV unless and until the Effective Date Cash Payment and the Post Effective Date Cash Payment are made.

16.    Release by Holders of Certain Impaired Claims.  Except as provided otherwise in this Order, including paragraph 49(e) of this Order, the provisions and distributions set forth in the Plan are a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtors, exclusive of holders of First Lien Lender Secured Claims, may have against any of the Released Parties pursuant to Bankruptcy Code §§ 1123(b)(3) and (6) and Bankruptcy Rule 9019.  As of the date on which all payments required to be made by the Debtors or Reorganized Mercedes on account of the Effective Date Cash Payment and the Post Effective Date Cash Payment have been made, in consideration for the distributions and other treatment afforded under this Plan,

the obligations of the Debtors and the Reorganized Debtors under the Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with the Plan, and REIV's agreement to waive the REIV Deficiency Claim, each holder of a Claim against or Equity Interest in the Debtors, exclusive of holder of First Lien Lender Secured Claims, shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtors' or the Reorganized Debtors' obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in Article 12.4 as amended in this Order, the Plan, or this Order shall release any Claim or causes of action that a holder of a Claim against or Equity Interest in the Debtors may have against any of the Released Parties for gross negligence or willful misconduct, or any Transferred Claims or Preserved Litigation Claims (it being understood that the Transferred Claims and Preserved Litigation Claims do not include any claims against any of the Released Parties).

17. <u>First Lien Releases</u>. Except as provided otherwise in this Order, including paragraph 49 of this Order, as of the Effective Date, in consideration of the obligations

of the Debtor Loan Parties under the New Senior Credit Facilities and this Plan, the Administrative Agent, the L/C Issuer and the First Lien Lenders will release the Debtor Loan Parties and the Creditor Trust and each of their respective current and former officers, employees, representatives, agents, counsel, advisors and directors (in their respective capacities as such) together with the trustees for the Employee Stock Purchase Plan of Mercedes Homes, Inc., from any and all actions, causes of action, claims, demands, damages and liabilities of whatever kind or nature, in law or in equity, now known or unknown, suspected or unsuspected to the extent that any of the foregoing arises from any action or failure to act in connection with the First Lien Loan Agreement and related loan documents on or prior to the Effective Date. This paragraph shall not be deemed to release the Debtor Loan Parties from any obligations under the New Senior Credit Facilities or any other indebtedness owed to a First Lien Lender or any affiliate thereof.

18.    Exemption from Securities Laws.  The provisions of Bankruptcy Code § 1145 may be applicable to the issuance and distribution under the Plan of the New Mercedes Common Stock.  Therefore, to the extent that an "offer or sale" is deemed to have occurred with respect to such New Mercedes Common Stock, such issuances are exempt from the requirements of Section 5 of the Securities Act and state registration requirements.

19.    Exemption from Certain Taxes and Recording Fees.  Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer or exchange of any security, or the making, delivery, filing or recording of any instrument of transfer under, or in connection with, the Plan, including without limitation any security instrument or document,

including the New Loan Documents, shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax, or similar tax. Furthermore, and without limiting the foregoing, any transfers from a Debtor to the Reorganized Debtors or to any other person or entity pursuant to the Plan, including transfers of real and personal property among and between the Debtors, the Reorganized Debtors and any of their subsidiaries or affiliates to facilitate or implement the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or uniform commercial code filing or recording fee. All filing and/or recording officers (or any other person or entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Bankruptcy Code § 1146(a), shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Court shall retain jurisdiction with respect to these matters.

20. _Approval of Assumption or Rejection of Executory Contracts and Leases_. This Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed or assumed and assigned under the Plan, Exhibit C of this Order or otherwise during the Chapter 11 Cases; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under the Plan, Exhibit "B" of this Order or otherwise during the Chapter 11 Cases. Notwithstanding anything contained in the Plan to the contrary, the Debtors retain the

right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease in the schedules filed with the Bankruptcy Court as part of the Plan Supplement, thus changing the treatment of the contract or lease under this Plan, at any time within 30 days after the Effective Date. Notwithstanding anything herein to the contrary, the Debtors shall not change the treatment of any assumed executory contract or unexpired lease which would result in impacting Allowed General Unsecured Claims without first obtaining the written consent of the Committee or the Creditor Trustee, as applicable. To the extent that an executory contract or unexpired lease is assumed or assumed and assigned under the Plan, Exhibit C of this Order or otherwise during the Chapter 11 Cases, the pre-petition obligations under such executory contracts or unexpired leases shall be deemed cured and satisfied, and the parties to such executory contracts or unexpired leases shall not be entitled to receive any distribution from the Creditor Trust. This paragraph will not apply to executory contracts rejected or assumed pursuant to other order of this Court.

21. <u>Assumption of Insurance Policies</u>. The release from Claims as provided in the Plan, except as necessary to be consistent with the Plan, does not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors or any other Person. This Order shall not affect pending motions for relief from stay with respect to insurance proceeds; provided, however, this provision does not constitute any admission by the Reorganized Debtor that the movant is entitled to recover against said insurance proceeds.

22.     Standing.  The Reorganized Debtors and Creditor Trust have standing, under state and/or federal bankruptcy law or otherwise, to file, litigate and settle the Preserved Litigation Claims and the Transferred Claims, respectively.

23.     Professional Claims Bar Date.  All final requests for payment of Professional Claims must be filed no later then the first Business Day that is 60 days after the Effective Date.  All Persons seeking final payment on account of a Professional Claim must file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date in compliance with all of the terms and provisions of applicable orders of the Court governing payment of fees to Professionals.

24.     Administrative Claims Bar Date.   All requests for payment of Administrative Claims, including any claims for making a substantial contribution to these Chapter 11 Cases (except for Professional Claims) must be filed with the Court no later than 30 days after the Effective Date (the "**Administrative Claim Bar Date**"). Holders of such Administrative Claims who fail to file a request for payment by the Administrative Claim Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, or against any of their respective successors and assigns.

25.     Bar Date for Rejection Damage Claims.  All proofs of Claim with respect to Claims arising from the rejection of any executory contract or unexpired lease must be filed with the Court no later than 30 days after the entry of an order of the Court approving such rejection or this Order, as the case may be.  Holders who fail to timely file such proofs of Claim shall be forever barred from asserting such Claims against the

Debtors, the Reorganized Debtors, the Creditor Trust, or against any of their respective successors and assigns.

26. <u>Resolution of Claims</u>. After the Effective Date, objections to Administrative Claims and all other Claims may be made, and pending objections to Administrative Claims and Claims made before the Effective Date may be pursued, by the Creditor Trust. Objections to Claims must be filed (unless extended by order of the Court) no later than 180 days after the Effective Date. From and after the Effective Date, the Creditor Trust may litigate to Final Order, propose settlement of or withdraw objections to all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

27. <u>Payment of Fees</u>. The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6) within ten (10) days of the entry of this order for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period. The Reorganized Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of the reorganized debtor for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of

each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

28.    <u>Authorization to Consummate Plan.</u>    The Debtors, the Reorganized Debtors, and the Creditor Trustee are authorized to consummate the Plan and the documents included in the Plan Supplement after entry of this Order, in accordance with the terms and conditions of the Plan, the Plan Supplement and this Order.    The Debtors, the Reorganized Debtors and the Creditor Trustee are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, uniform commercial code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale, and to take other such actions as may be reasonably necessary to perform the terms and provisions of the Plan and the Plan Supplement, and all transactions and agreements related thereto.    In addition, pursuant to Bankruptcy Code § 1142(b), the Court hereby authorizes and directs the Debtors, the Reorganized Debtors and any other necessary party including the Creditor Trustee, regardless of whether such party has voted to accept or reject the Plan, to execute or deliver, or join in the execution or delivery, of any instrument, or to perform any act necessary for the implementation and consummation of the Plan and the Plan Supplement and the transactions contemplated therein; provided, however, that no creditor of the Debtors or the Reorganized Debtors shall be required to undertake any duties or obligations different from or greater than such creditor has under the Plan and its agreements with the Debtors and the Reorganized Debtors.

16

29. <u>Retention of Jurisdiction</u>.  Pursuant to Bankruptcy Code §§ 105(a) and 1142, and except as otherwise expressly provided in the Plan or this Order, including paragraph 49(f) of this Order, the Court shall retain exclusive jurisdiction as provided in Article 15 of the Plan over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, without limitation, any amendments contained herein.

30. <u>References to Plan Provisions</u>.  The failure to include or specifically reference any particular provision of the Plan or the Plan Supplement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court to confirm the Plan in its entirety as modified in this Order.  The provisions of the Plan, the Plan Supplement and this Order shall be construed in a manner consistent with each other so as to accomplish the purposes of each, provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Order shall govern and control.

31. <u>New Mercedes Common Stock</u>.  Subject to the occurrence of the Effective Date:

> (a)    All documents and agreements necessary and appropriate to implement the issuance of the New Mercedes Common Stock, and the execution, delivery and performance of such documents and agreements to REIV or its assigns are approved.

> (b)    The Debtors and, if applicable, the Reorganized Debtors (and any subsidiaries of the Debtors and the Reorganized Debtors), are authorized and empowered to execute and deliver all documents, agreements and instruments and take all actions reasonably necessary to effectuate the consummation and implementation of the Plan, including, without limitation, the execution, delivery and performance of the New Mercedes Common Stock to REIV or its assigns, and each other document, instrument, and

17

agreement to be executed in connection therewith and the transactions contemplated thereby. All such documents, instruments, and agreements will, upon execution, be valid, binding and enforceable against the Debtors, the Reorganized Debtors, and any other person who is a party thereto, and such documents are entered into for good and valuable consideration, including the benefits of the Plan.

(c)     Based upon the record of these Chapter 11 Cases, the New Mercedes Common Stock interests:  (a) are legal, valid and enforceable; and (b) do not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable law.

32.     <u>New Loan Documents</u>.  Subject to the occurrence of the Effective Date:

(a)     Any and all documents, instruments and agreements necessary and appropriate to document, evidence or otherwise secure the New Senior Credit Facilities to be entered into between the Reorganized Debtors and the First Lien Lenders on the Effective date, including, without limitation, the New Senior Credit Facilities, the New Loan Documents, the New Notes, indemnitees, UCC financing statements and any other documents reasonably requested by the First Lien Lenders and the execution, delivery and performance of such documents are approved.

(b)     The Debtors and, if applicable, the Reorganized Debtors (and any subsidiaries of the Debtors and the Reorganized Debtors), are authorized and empowered to execute and deliver all documents, agreements and instruments and take all actions reasonably necessary to consummate and implement the Plan, including, without limitation, the execution, delivery and performance of the New Loan Documents, and each other document, instrument, and agreement to be executed in connection therewith and the transactions contemplated thereby.  All such documents, instruments, and agreements, including, without limitation, the New Loan Documents, will, upon execution, be valid, binding and enforceable against the Debtors, the Reorganized Debtors, and any other person who is a party thereto, and such documents are entered into for good and valuable consideration, including the benefits of the Plan.

(c)     Based upon the record of these Chapter 11 Cases, the New Loan Documents:  (a) are legal, valid and enforceable; and (b) do not constitute preferential transfers, fraudulent transfers or conveyances, or any other kinds of transactions avoidable under the Bankruptcy Code or any other applicable law.

33.     <u>Renewed  Space  Coast  Truss  Loan  Documents</u>.     Subject  to  the occurrence of the Effective Date:

(a)     Any and all documents, instruments and agreements necessary and appropriate to document, evidence or otherwise secure the renewed Allowed Space Coast Truss Secured Claims, including without limitation renewal of the Space Coast Truss Loan Documents and any other documents reasonably requested by the holders of the Allowed Space Coast Truss Secured Claims, and the execution, delivery and performance of such documents, are approved.

(b)     The Debtors and, if applicable, the Reorganized Debtors (and any subsidiaries of the Debtors and the Reorganized Debtors), are authorized and empowered to execute and deliver all documents, agreements and instruments and take all actions reasonably necessary to consummate and implement the Plan, including, without limitation, the execution, delivery and performance of the renewed Space Coast Truss Loan Documents, and each other document, instrument, and agreement to be executed in connection therewith and the transactions contemplated thereby. All such documents, instruments, and agreements, including, without limitation, the renewed Space Coast Truss Loan Documents, will, upon execution, be valid, binding and enforceable against the Debtors, the Reorganized Debtors, and any other person who is a party thereto, and such documents are entered into for good and valuable consideration, including the benefits of the Plan.

(c)     Based upon the record of these Chapter 11 Cases, the renewed Space Coast Truss Loan Documents: (a) are legal, valid and enforceable; and (b) do not constitute preferential transfers, fraudulent transfers or conveyances, or any other kinds of transactions avoidable under the Bankruptcy Code or any other applicable law.

34.     Renewed Suntree Loan Documents.  Subject to the occurrence of the

Effective Date:

(a)     Any and all documents, instruments and agreements necessary and appropriate to document, evidence or otherwise secure the renewed Allowed Suntree Secured Claims, including without limitation the renewal of the Suntree Loan Documents and any other documents reasonably requested by the holders of the Allowed Suntree Secured Claims, and the execution, delivery and performance of such documents, are approved.

(b)     The Debtors and, if applicable, the Reorganized Debtors (and any subsidiaries of the Debtors and the Reorganized Debtors), are authorized and empowered to execute and deliver all documents, agreements and instruments and take all actions reasonably necessary to consummate and implement the Plan, including, without limitation, the execution, delivery and performance of the renewed Suntree Loan Documents, and each other document, instrument, and agreement to be executed in connection

therewith and the transactions contemplated thereby. All such documents, instruments, and agreements, including, without limitation, the renewed Suntree Loan Documents, will, upon execution, be valid, binding and enforceable against the Debtors, the Reorganized Debtors, and any other person who is a party thereto, and such documents are entered into for good and valuable consideration, including the benefits of the Plan.

(c)     Based upon the record of these Chapter 11 Cases, the renewed Suntree Loan Documents: (a) are legal, valid and enforceable; and (b) do not constitute preferential transfers, fraudulent transfers or conveyances, or any other kinds of transactions avoidable under the Bankruptcy Code or any other applicable law.

35.     <u>Confirmation Date</u>.  The Confirmation Date referred to in Article 1.26 of the Plan and as used throughout the Plan and this Order is the date the Court enters this Order on its electronic docket.

36.     <u>Correction of Errors and Inconsistencies</u>.  After the Confirmation Date and before substantial consummation of the Plan as defined in Bankruptcy Code § 1101(2), the Debtors and/or the Reorganized Debtors may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan.

37.     <u>Resolution of Plan Objections</u>.  As set forth below, the objections filed to the Plan have either been resolved, withdrawn, or otherwise overruled.

38.     <u>Resolution of Tax Objections</u>.  The following taxing authorities filed substantially similar objections (collectively, the "Tax Objections") addressing the treatment of Secured Tax Claims under the Plan: (i) Texas Comptroller of Public Accounts (D.E. #1149); (ii) Travis County Tax Assessor, *et al.* (D.E. ##1190, 1193); (iii)

Lewisville Independent School District, *et al.* (D.E. ##1243, 1266); (iv) Miami-Dade Tax Collector (D.E. #1227); (v) County of Denton, Texas, *et al.* (D.E. #1216); (vi) Brevard County Tax Collector (D.E. ##1235, 1269); (vii) Orange County Tax Collector (D.E. ##1236, 1270); (viii) Fort Bend Independent School District, *et al.* (D.E. ##1247, 1273); and (ix) Dallas County, *et al.* (D.E. ##1250, 1274).  The Tax Objections have been resolved by way of incorporating certain agreed language regarding treatment of Class 2 and the vesting of assets set forth in paragraph 49(a) of this Order.

39.    <u>Resolution of BAN Objections</u>.    Celebration Point Community Development District ("Celebration Point") (D.E. #1261) and Lo Land Assets, LP ("Lo Land") (D.E. #1224) (collectively, the "BAN Objections") objected to the Plan.  Lo Land filed a supplemental objection (D.E. #1305) objecting to the non-debtor release provisions to the extent the release provisions relate conduct that is subject of the Adversary or the related state court actions.  The BAN Objections have been resolved by way of incorporating the agreed language set forth in paragraphs 49(b) and 49(e) of this Order.

40.    <u>Resolution of ESOP Objections</u>.  Two objections were received on behalf of ESOP participants by Jeffrey Macik (the "Macik Objection") (D.E. #1211) and Brett Alexander and Audrey Gillett (D.E. #1246, 1271) (the "Alexander & Gillett Objection").  The Alexander & Gillett Objection has been resolved by incorporating certain agreed language into paragraph 49(e) of this Order.  In exchange for incorporating the agreed language into paragraph 49(e) of this Order and as condition of resolution of the Alexander & Gillett Objection, the Adversary Proceeding 09-01927-PGH ("Gillett Adversary Proceeding") is to be withdrawn with prejudice.  The Court has overruled the

Macik Objection and held that the form of language included in paragraph 49(e) of this Order resolves the Macik Objection as set forth in the Release Related Findings and Conclusions.

41.     <u>Resolution of Removables Objections</u>.  Seven objections were filed by certain operational lien claimants assert priming liens under the Texas law "removables" doctrine (the "Removables Objections").  The Removables Objections were filed by: (i) Park Row Lighting, LLC (D.E. #1169); (ii) Fashion Glass & Mirror, LLC (D.E. #1170); (iii) Fashion Door & Window, Ltd. (D.E. #1171); (iv) Calvin's Electric, Ltd. (D.E. #1172]; (v) Casa Mechanical Services, Ltd. (D.E. #1173); (vi) Christianson Air Conditioning and Plumbing, LLC (D.E. #1174); and (vii) ABC Fence Co. dba Builders Fence Co. (D.E. # 1175).  The Removables Objections were resolved by way of settlement agreement between the objecting parties and the Debtors and have been, or will be, withdrawn.

42.     <u>Resolution of Operational Lien Claimant Objections</u>.  Operational lien claimants TNT Builders (D.E. #1225), Tri-County Drywall (D.E. #1252), and Potter Concrete (D.E. #1256) (collectively, the "Operational Lien Claimant Objections") objected to confirmation.  The Operational Lien Claimant Objections were resolved prior to the Confirmation Hearing.

43.     <u>Resolution of Ace American Insurance Objection</u>.  The Ace American Insurance Co. (D.E. ##1251, 1296) (the "Ace Objection") was resolved by way of incorporating the agreed language set forth in paragraphs 49(c) and 49(d) of this Order.

44.     <u>Resolution of the Symetra Objection</u>.  The Debtors and Symetra Life Insurance ("Symetra") have resolved the objection filed by Symetra (D.E. ##1244, 1267) by consensually determining that the requisite cure payment for Symetra contract 16-

010956-00 is $36,380.60 ("Symetra Cure Payment"), which is equal to $99,019.15, less $62,638.55 of applicable offsets and credits. Pursuant to Article 9.3 of the Plan, the Debtors shall remit the Symetra Cure Payment to Symetra on the Effective Date or as soon after that date as is practicable.

45. <u>Resolution of Bond Safeguard and Lexon Objection.</u> The objection filed by Bond Safeguard Insurance Company and Lexon Insurance Company (D.E. #1254) (the "Bond Objection") was resolved by way of incorporating in this Order the agreed language set forth in this paragraph.

(a)  Nothing in the Plan, Plan Supplement, or the Confirmation Order shall release the rights and remedies of Bond Safeguard Insurance Company and/or Lexon Insurance Company ("Bond/Lexon") in respect of bonds issued in connection with the Debtors' projects, except to the extent such rights and remedies constitute debts or claims (in each case as defined in section 101 of the Bankruptcy Code) that are subject to discharge under section 1141(d) of the Bankruptcy Code. In particular, any releases granted to the Released Parties, either in the Plan, Plan Supplement or Confirmation Order shall not constitute a release, waiver or discharge of any claim, obligation, suit, judgment, damages, demand, debt, right, Cause of Action, or liability whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, of any non-Debtor Released Party to Bond/Lexon, including but not limited to any liability arising under a General Agreement of Indemnity. Notwithstanding this paragraph, any obligations of the Debtors arising under any indemnity agreement are discharged pursuant to Article 12.2 of the Plan.

(b)  Further, any claims or defenses that Bond/Lexon may have against any third-party, including but not limited to any and all Obligees, that assert a claim against a bond issued by Bond/Lexon on behalf of one or more of the Debtors, are expressly preserved in favor of Bond/Lexon.

(c)  Finally, the terms of the Plan, Plan Supplement, and Confirmation Order shall not affect or otherwise impact bonds issued by Bond/Lexon in favor of any non-Debtor entity, or the rights of Bond/Lexon relating to such bonds.

46. <u>Resolution of National City Bank and Satellite Beach Objections</u>.  With respect to (1) Unsecured Creditor, National City Bank's ("National City") Objection (D.E. #1232) to Debtors' Second Amended Joint Chapter 11 Plan of Reorganization (D.E. #1020) and Disclosure Statement Concerning the Debtors' Joint Plan of Reorganization (D.E. #1021), and (2) the Objection by Satellite Beach Partners, LLC ("Satellite") to Confirmation of Debtor's Plan (D.E. #1234), those Objections are settled and resolved by the entry of this Order which shall hereby exclude from the Releases, and the definition of Released Parties, contained in Article I(B) Sec. 1.107, the first full paragraph of Article V, Section 5.9(B), and Article 12.4 of the Plan:

(a)    the Land Ventures listed on Exhibit M (D.E. #1096-6, pg. 1-2) of the Plan Supplement

(b)    any transferee of real property (or holder of an option to acquire real property) from any such Land Ventures, unless such transferee (or option holder) was:

(i)    a bona fide good faith purchaser for value, who was not an affiliate (as defined in §101(2) of the Bankruptcy Code, as if applied to these individuals and entities rather then as applied to Debtor as set forth in that definition) of the Land Ventures, any member of the Buescher family or REIV or

(ii)    an affiliate of the Land Ventures, any member of the Buescher family or REIV who received such transfer (or option) in connection with its acquisition of a spec home, (provided that notwithstanding this clause, no affiliates of the Land Ventures, any member of the Buescher family or REIV will be released from any Claim (whether or not in connection with the acquisition of a spec home) resulting from their receipt of a fraudulent conveyance from any Land Ventures, if any); and

(c)    each of the Land Ventures' and transferees' (to the extent set forth above in (a) and (b)) and the Montecito CDD's respective current and former directors, officers, employees, representatives, members, agents, counsel, financial advisors, and professionals,

as to any Claims, if any, that either National City or Satellite may have against them, as *those* Claims relate to either Phoenix Community Developers, Inc. ("Phoenix"), the Montecito Community Development District ("Montecito CDD"), or all property encompassed therein.

47. Nothing contained within this Order shall (i) preclude National City or Satellite's rights to pursue the allowance of their Proofs of Claims filed within these cases; provided, however, the recovery, if any, by each of National City or Satellite on account of its respective Proof of Claim shall be solely against the assets of the Creditor Trust and neither of them shall have any right to assert a Claim against the Debtors or the Reorganized Debtors, as applicable, (ii) preclude or impair National City or Satellite's rights to pursue any Claims against any non-Debtors; provided, however, that none of the Releases provided for under the Plan and this Order in favor of the Released Parties shall be affected, modified or abridged, except as provided herein with respect to National City and Satellite, (iii) be construed as an admission on the part of any Debtors, the Committee, Land Ventures, REIV or the Creditor Trust, as to the validity of National City or Satellite's Proofs of Claims or their standing to assert such Claims, (iv) limit, impair or modify in any way the discharge granted to any of the Debtors under the Plan and this Confirmation Order, or (v) be construed that the inclusion of any party as a Released Party for any other purposes shall in any way impair or restrict the exclusion of such party as a Released Party for the purposes set forth in paragraph 46 above.

48. <u>Resolution of Norpak Objection</u>. On June 5, 2009, the Debtors filed their *Second Motion for an Order Under 11 U.S.C. § 365(a) Authorizing Debtors to Reject*

*Certain Executory Contracts* ("Second Executory Contract Rejection Motion") (D.E. #812), seeking entry of an order authorizing the rejection of certain executory contracts including that certain "Contract for Sale and Purchase" dated May 16, 2002 with Norpak Corporation ("Norpak") ("Purchase Contract"). On June 25, 2009, Norpak filed its *Objection to Debtors' Second Motion for an Order Under 11 U.S.C. § 365(a) Authorizing Debtors to Reject Certain Executory Contracts* (D.E. #881), which, among other things, (i) asserted that Norpak did not receive proper notice of the Second Executory Contract Rejection Motion, (ii) asserted that the Purchase Contract was not executory, and (iii) contained as an exhibit, a recorded "Memorandum of Agreement between the Debtor and Norpak dated February 11, 2003" (the "Memorandum of Agreement"), which is related to the transaction subject of the Purchase Contract and which contains certain restrictive covenants. On August 25, 2009, Norpak filed its *Limited Objection to Confirmation of Debtors Joint Plan of Reorganization* ("Norpak Objection") (D.E. ## 1233 & 1268), which objected to the Plan to the extent that the Plan sought to vest the real property subject of the Purchase Contract and/or Memorandum of Agreement in the Reorganized Debtors free and clear of the restrictive covenants set forth in the Memorandum of Agreement. The Debtors and Norpak have resolved the Norpak Objection and have agreed that (i) as set forth in the revisions to Article 12.1 of the Plan, the real property subject of the Memorandum of Agreement will vest in the Reorganized Debtors subject to the restrictive covenants contained in the Memorandum of Agreement, (ii) the Memorandum of Agreement will remain of public record and enforceable by Norpak, and (iii) neither the Purchase Contract nor the Memorandum of Agreement are executory contracts, and are therefore not subject to rejection under

Bankruptcy Code § 365.  Therefore, the Second Executory Contract Rejection Motion is denied solely to the extent the Second Executory Contract Rejection Motion contemplated rejection of the Purchase Contract and/or Memorandum of Agreement. Accordingly, as agreed by the Debtors and Norpak, any claims arising under the Purchase Contract and/or Memorandum of Agreement and existing as of the Effective Date shall be deemed prepetition Class 9 General Unsecured Claims in these Chapter 11 Cases.  Norpak shall have thirty (30) days from the entry of this Order to file any such claim.  Nothing herein shall prejudice the right of the Creditor Trustee to object to any claim that may be filed by Norpak.

49.    Modifications to the Plan.   At the request of the Debtors, the Plan is hereby modified pursuant to Bankruptcy Code § 1127(a) to clarify the impact of the Plan and its provisions.  The following clarifying language resolves the vast majority of the Plan objections.  Additions to the Plan are indicated in bold with a double underline, and deletions are indicated with a strike-through.  The modifications to the Plan are as follows:

(a)    Article 5.2.B - Class 2 Secured Tax Claims Treatment

Each Allowed Secured Tax Claim shall be paid in full in Cash by the Debtors and/or the Reorganized Debtors upon the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date on which (i) an Allowed Secured Tax Claim, or (ii) taxes payable pursuant to statutory liens securing the payment of ad valorem real property and personal property taxes, become due under applicable non-bankruptcy law; (c) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (d) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (e) such date as the holder of such Claim and the Debtors and/or the Reorganized Debtors may agree.  For avoidance of doubt, (i) Allowed Secured Tax Claims, and (ii) taxes payable pursuant to statutory liens securing the payment of ad valorem real property and personal property taxes, shall include interest, including post-petition and post-Effective Date interest, to the extent such interest becomes due and owing under applicable non-bankruptcy law.

Also, for the avoidance of doubt, notwithstanding anything herein to the contrary, (but without modifying any obligations, if any, of the Reorganized Debtors to pay any such taxes sooner pursuant to the New Loan Documents), upon the sale of any particular piece of real property, any undisputed taxes on said property shall be paid at the time of sale. With regard to disputed taxes, a lien will attach to the proceeds of the sale in the disputed amount and shall remain attached to the proceeds until such dispute is resolved and the taxes paid accordingly.

Any Liens either (i) securing an Allowed Secured Tax Claim, or (ii) arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes, shall remain on the respective property until such Claim or tax is paid pursuant to the Plan or applicable non-bankruptcy law. The Reorganized Debtors shall not sell or otherwise transfer any real property free and clear of any (i) Allowed Secured Tax Claims, or (ii) liens arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes, and confirmation of the Plan shall not affect in any way any (i) Liens securing current or future Allowed Secured Tax Claims, or the rights of the holders of Allowed Secured Tax Claims to enforce such Liens in accordance with applicable non-bankruptcy law, or (ii) liens arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes, or the rights of the holders of liens arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes to enforce such Liens in accordance with applicable non-bankruptcy law.

**Nothing in the Plan or any Confirmation Order shall be deemed to waive any rights of setoff of (i) an Allowed Secured Tax Claim, or (ii) liens arising under applicable non-bankruptcy law to secure statutory ad valorem real property and personal property taxes, may have against the Debtors, the Reorganized Debtors, or to any tax refund owing to the Debtors or Reorganized Debtors.**

**Nothing provided in the Plan or Confirmation Order shall be construed to affect or impair any rights of setoff of the Texas Comptroller of Public Accounts, the Orange County Tax Collector or the Brevard County Tax Collector.**

(b)     Article 12.1 - Vesting of Assets

Except as provided in this Plan, the Confirmation Order, or the Plan Documents, all property of the Estates shall vest in the Reorganized Debtors on the Effective Date free and clear of all Liens and Claims of all kinds existing before the Effective Date, provided, however, that all assets of the Reorganized Debtors, except for the Collateral securing the Space Coast Truss Secured Claims and Suntree Secured Claims, shall be

subject to the senior, perfected Liens granted to the holders of Allowed First Lien Lender Secured Claims, with such Liens being senior to any and all other Liens, Claims and interests, including any Liens or Claims of creditors asserting mechanics liens or similar operational liens, other than Liens securing (i) Allowed Secured Tax Claims, (ii) Allowed CDD Secured Claims, and (iii) statutory ad valorem real property and personal property taxes arising under applicable non-bankruptcy law that have priority to the Liens securing Allowed First Lien Lender Secured Claims as of the Effective Date. Real property which vests in the Reorganized Debtors shall remain subject to any easements, rights-of-way, zoning, covenants, conditions and restrictions and other similar land-use restrictions in existence as of the Effective Date. From and after the Effective Date, the Reorganized Debtors may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in this Plan, the Amended Operating Agreement or the Confirmation Order. On the Effective Date, the assets of the Creditor Trust shall be vested, for the benefit of the holders of Allowed General Unsecured Claims, free and clear of all Liens and Claims of all kinds: (i) the Effective Date Cash Payment; (ii) the right to receive the Post Effective Date Cash Payment; (iii) the right to receive the BANS Proceeds Allocation; and (iv) the Transferred Claims.

(c)   Article 9.2 - Approval of Assumption or Rejection

Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed or assumed and assigned under this Plan or otherwise during the Chapter 11 Cases; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under this Plan or otherwise during the Chapter 11 Cases. Notwithstanding anything contained in this Section 9.2 to the contrary, the Debtors retain the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease in the schedules filed with the Bankruptcy Court as part of the Plan Supplement, thus changing the treatment of the contract or lease under this Plan, at any time within 30 days after the Effective Date. Notwithstanding anything herein to the contrary, the Debtors shall not change the treatment of any assumed executory contract or unexpired lease which would result in impacting Allowed General Unsecured Claims without first obtaining the written consent of the Committee or the Creditor Trustee, as applicable. Nothing contained in the Disclosure Statement, the Plan, the Confirmation Order, or any Plan Document shall alter the Order granting the Motion to Purchase and Assume Workers Compensation and Automobile Liability Insurance (the ACE Order) (D.E. #631) and related Agreements.

(d)     Article 12.5 - Preservation of Insurance

The discharge and release from Claims as provided in this Plan, except as necessary to be consistent with this Plan, do not diminish or impair the enforceability of any insurance policy that may cover Claims against a Debtor or any other Person. Nothing contained in the Disclosure Statement, Plan, the Confirmation Order, any exhibit to the Plan, the Plan Supplement, or any other Plan document (including any provision that purports to be peremptory or supervening) shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers with respect to any ACE insurance policies issued to or on behalf of the Debtors and any related agreements. The rights and obligations of the insureds and insurers under the ACE insurance policies and related agreements shall be determined under such policies and related agreements, including the terms, conditions, limitations, exclusions and endorsements thereof, which shall remain in full force and effect, and under any applicable non-bankruptcy law. Regardless of whether the ACE insurance policies and related agreements are considered to be executory or not, the Reorganized Debtors will perform the Debtors' obligations under the ACE insurance policies and related agreements including any that remain unperformed as of the Effective Date of the Plan.

(e)     Article 12.4 - Releases, Exculpation and Related Matters

Nothing contained in the Plan or Confirmation Order, including Article 12.4 of the Plan, shall be construed as a release of claims of current or former participants, beneficiaries of current or former participants, fiduciaries (including, without limitation, any claim of contribution against another fiduciary other than the Debtors or Reorganized Debtors, but shall specifically include the officers and directors of the Debtors as specifically set forth below) or any other person (collectively, the "ESOP Claimants") in or with respect to the Mercedes Homes, Inc. Employee Stock Ownership Plan and its related trust, as amended from time to time (the "ESOP"), nor shall anything contained in the Plan or Confirmation Order constitute an injunction preventing any ESOP Claimant from pursuing any such claims. For purposes of the preceding sentence, "claims" include any and all claims and/or causes of action, whether legal or administrative, against (i) the ESOP, (ii) current or former fiduciaries of the ESOP (as defined under Section 3(21) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")), or (iii) any provider of goods or services to the ESOP or any person who entered into any non-exempt transaction with the ESOP that is alleged to be prohibited under the prohibited transaction rules under ERISA (collectively, all such persons described in (i), (ii) and (iii) shall be referred to as "ESOP Persons") on account of any act or omission by any ESOP Person arising from or related to (a) the formation of the ESOP, (b)

30

the operation and administration of the ESOP, (c) the termination of the ESOP, (d) the tax qualification of the ESOP, and (e) the alleged breach of any fiduciary duty by any person (other than the Debtors or Reorganized Debtors but shall specifically include the officers and directors of the Debtors, to the extent they are or were fiduciaries of the ESOP, with regard to any action related to or arising out of the ESOP) with respect to the ESOP; provided, however, subclauses (a) through (e) shall not include any act or omission arising from or related to the operation and administration (other than in respect of the ESOP) of the Debtors, the Reorganized Debtors, or their assets. Notwithstanding the foregoing, nothing in this paragraph shall: (1) affect any defenses or counterclaims available to the ESOP or any ESOP Person; (2) affect any of the releases given to the First Lien Release Parties under Article 12.4 of the Plan; or (3) affect the release of any of the Released Parties under Article 12.4 of the Plan. The term "Released Parties", as defined in the Plan, excludes any ESOP Person in its capacity as an ESOP Person, but shall include such individual or entity in all other capacities. For the avoidance of doubt, the term "ESOP Person" shall exclude: (i) the Debtors; (ii) the Reorganized Debtors; (iii) REIV; (iv) the Land Ventures; or (v) the directors and officers of any of the foregoing in their capacity as such, but shall include such directors or officers in their capacity as fiduciaries under ERISA, if applicable. Nothing in this paragraph shall in any way be deemed to: (i) impair, alter or nullify the discharge of the Debtors from any and all claims granted under the Plan or Confirmation Order or any injunction with respect thereto; (ii) result in the creation or assumption of any claims against the Reorganized Debtors or their assets; or (iii) impair, alter or nullify any ruling or determination by the Bankruptcy Court concerning the validity, priority, extent or allowance of any of the claims, liens or security interests of REIV against the Debtors.

Notwithstanding the provisions of the preceding paragraph, nothing in the Plan or Confirmation Order, including Article 7.7.C of the Plan, shall (1) exculpate or release officers, directors and employees of the Debtors or Reorganized Debtors other than in their capacity as officers, directors, and employees of the Debtors or Reorganized Debtors or, (2) as to Land Lo Assets, LP ("Lo") or Celebration Pointe Community Development District ("CDD"), constitute a bar to any defenses that Lo or the CDD may have against any claim of any of the Debtors or Reorganized Debtors or their successors and assigns or constitute a determination or adjudication as to the validity, enforceability, legality, or appropriateness of any conduct by any officer, director or employee of the Debtors or Reorganized Debtors while serving as a "supervisor" of the CDD or create any defense or avoidance, whether based in waiver, estoppel or otherwise, to any assertion of Lo or the CDD that such conduct was not valid, legal, enforceable or appropriate, including positions asserted in (i) this Case (either the main case or adv proc case no.09-ap-01860), (ii) the case pending in St. Lucie County Circuit Court, Case No. 56-2008-CA-007298,

or (iii) the case pending in St.Lucie Circuit Court, Case No. 56-2008-CA-005453 (the "Lo/CDD Exception"); provided, however, that the Lo Exception shall not permit Lo or the CDD to obtain any "Claim" against the Debtors or Reorganized Debtors except pursuant to the Bankruptcy Code, the Plan, or an order of this Court.

(A) <u>Releases by the Debtors</u>. Pursuant to Section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, the Debtors, in their individual capacity for and on behalf of their Estates, shall be deemed to forever release, waive, and discharge all Released Parties from all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the Debtors, (ii) the Chapter 11 Cases and the conduct thereof, and (iii) the Plan. The Reorganized Debtors shall be bound, to the same extent the Debtors are bound, by all of the releases set forth in this Section 12.4.A of this Plan. Notwithstanding the foregoing, nothing in this Article 12.4, the Plan, or the Confirmation Order shall release any Transferred Claims or Preserved Litigation Claims, it being understood and agreed that the Transferred Claims and Preserved Litigation Claims that are preserved by this sentence do not include any Avoidance Actions or other Claims against any Released Party.

(B) <u>Release by Holders of Certain Impaired Claims</u>. This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtors, exclusive of holders of First Lien Lender Secured Claims, may have against any of the Released Parties pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019. As of the date on which all payments required to be made by the Debtors or Reorganized Mercedes on account of the Effective Date Cash Payment and the Post Effective Date Cash Payment have been made, in consideration for the distributions and other treatment afforded under this Plan, the obligations of the Debtors and the Reorganized Debtors under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, and REIV's agreement to waive the REIV Deficiency Claim, and except as otherwise provided in the Plan, Plan Supplement or Confirmation Order, particularly paragraph 45(a) of this Order, each holder of a Claim against or Equity Interest in the Debtors, exclusive of holders of First Lien Lender Secured Claims, shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the

Debtors' or the Reorganized Debtors' obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in this Article 12.4, the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct, or any Avoidance Actions or Preserved Litigation Claims.

(C) First Lien Releases. As of the Effective Date, in consideration of the obligations of the Debtor Loan Parties under the New Senior Credit Facilities and this Plan, the Administrative Agent, the L/C Issuer and the First Lien Lenders will release the Debtor Loan Parties and each of their respective current and former officers, employees, representatives, agents, counsel, advisors and directors (in their respective capacities as such) together with the trustees for the Employee Stock Purchase Plan of Mercedes Homes, Inc., from any and all actions, causes of action, claims, demands, damages and liabilities of whatever kind or nature, in law or in equity, now known or unknown, suspected or unsuspected to the extent that any of the foregoing arises from any action or failure to act in connection with the First Lien Loan Agreement and related loan documents on or prior to the Effective Date. This paragraph shall not be deemed to release the Debtor Loan Parties from any obligations under the New Senior Credit Facilities or any other indebtedness owed to a First Lien Lender or any affiliate thereof.

(f)     Article 15.1 - Retention of Jurisdiction

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including, among others, the following matters;

. . .

(b) to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests and all controversies and issues arising from or relating to any of the foregoing;

Nothing in the Plan or Confirmation Order shall prejudice, limit, impair or waive any rights, claims, defenses, or counterclaims of any party to that certain Adversary Complaint filed by the Debtors against Lo Land Assets LP and Celebration Pointe Community Development District, Adversary Case No. 09-01860-PGH (the "Adversary Proceeding"), including, without limitation, any claims that the Bankruptcy Court has no jurisdiction over the Adversary Proceeding or should abstain from exercising jurisdiction over the Adversary Proceeding. Neither the Plan nor this Order shall be deemed to create jurisdiction over the Adversary Proceeding.

(g)    Article 5.7.C - Class 7 Suntree Secured Claims

In full and final satisfaction of Allowed Suntree Secured Claims, the Reorganized Debtors shall: (1) pay all accrued and unpaid interest in full within 30 days of entry of the Confirmation Order; (2) renew the note to the holders of Allowed Suntree Secured Claims ("Renewed Suntree Note"). The Renewed Suntree Note will have a face amount equal to the amount of the Allowed Suntree Secured Claim less the accrued and unpaid interest paid and discussed immediately above. The Renewed Suntree Note shall provide for monthly interest only payments at a rate of monthly libor plus 400 basis points until maturity. The Renewed Suntree Note shall mature 12 months following the Effective Date, but can be renewed by the Reorganized Debtors for an additional 6 months if the Reorganized Debtors are current on payment obligations under the Renewed Suntree Note. The Reorganized Debtors will use commercially reasonable efforts to sell the Collateral securing the Suntree Secured Claims after the Effective Date, and any proceeds generated by such sale shall first be applied to satisfy in full any outstanding amount of the Allowed Suntree Secured Claim.

(h)    Article 1.55 - First Lien Loan Agreement.

That certain Third Amended and Restated Revolving Borrowing Base Loan Agreement dated May 15, 2008, as amended from time to time, between certain of the Debtors as borrowers and/or co borrowers and Bank of America, N.A., as administrative agent and letter of credit issuing lender, Wachoiva Bank, N.A. National Association, KeyBank National Association, Wells Fargo Bank, N.A., Suntrust Bank, Guaranty Bank, Regions Bank (successor by merger to Amsouth Bank), Comerica Bank, RBC Bank (USA), f/k/a RBC Centura Bank, Branch Banking and Trust Company, Bank of America, N.A. as successor to LaSalle Bank, Franklin Bank, and any other lenders from time to time party thereto, and all guaranty agreements, security agreements, mortgages, deeds of trust, and all other loan documents related thereto.

(i)     Article 1.57 - General Unsecured Claim.

Any Claim against the Debtors that is unsecured and not subject of any Lien or priority or administrative status under the Bankruptcy Code, provided that a General Unsecured Claim shall not include: (a) a Secured Claim, including without limitation a First Lien Lender Secured Claim and REIV Secured Claim; (b) an Administrative Claim; (c) an Administrative Vendor Claim; (d) a Reclamation Claim or a Claim under Section 546 of the Bankruptcy Code; (e) an Intercompany Claim; (f) the REIV Deficiency Claim; (g) a Secured Tax Claim; (h) a CDD Secured Tax Claim; (i) a Space Coast Truss Secured Claim; (j) a Suntree Secured Claim; (k) a Miscellaneous Secured Claim; (l) a Priority Tax Claim; (m) a Priority Claim; (n) a Subordinated Debt Securities Claim; or (o) an Equity Related Claim.

(j)     Article 1.64 - Lead Arranger.

Banc of America Securities LLC and Wells Fargo Securities, LLC, each of whom will act as sole and exclusive co-lead arrangers and co-book managers under the New Senior Credit Facilities.

(k)     Article 1.107 - Definition of Released Parties.

Each of the Administrative Agent, the First Lien Lenders, L/C Issuer, Lead Arranger, REIV, insiders of REIV, the Debtors, insiders of the Debtors, the Committee, the Land Ventures, insiders of the Land Ventures, and each of their respective current and former directors, officers, employees, representatives, members, affiliates, agents, counsel, financial advisors, and professionals. The term "insider" as used herein shall have the same meaning as set forth in Section 101(31) of the Bankruptcy Code.

(l)     Article 1.113 - Space Coast Truss Loan Documents.

That certain First Amended and Restated Master Loan Agreement (as amended, modified and supplemented from time to time) entered into on December 4, 1997, between Space Coast, as borrower and Bank of America, N.A., as lender, and all related loan documents, promissory notes, security agreements, mortgages and deeds of trust executed in connection therewith.

(m)     Article 4.8 - Class 8 - Miscellaneous Secured Claims.

Class 8 consists of all Secured Claims, other than the Secured Claims in Classes 2, 3, and 4. Each holder of a miscellaneous Secured Claim is considered to be in its own separate subclass within Class 5. 8.

and each such subclass is deemed to be a separate Class for purposes of the Plan

(n)   Article 5.3 - Class 3 CDD Secured Claims Treatment.

Any and all taxes and/or assessments that are levied and/or imposed by a CDD prior to the Effective Date and that are delinquent or due as of the Effective Date shall be paid in Cash on the Effective Date, consistent with the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law.   Except as stated in the preceding sentence, and notwithstanding any other language contained herein, any and all taxes and/or assessments levied and/or imposed by a CDD at any time shall be paid when due under the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law; provided however, that the Debtor shall not be responsible for payment of any delinquent taxes for assessments for which they are not responsible under CDD resolution or other directives, and applicable non-bankruptcy law.

(o)   Article 5.6.C - Class 6 - Space Coast Truss Secured Claims Treatment.

On the Effective Date, in full and final satisfaction of Allowed Space Coast Truss Secured Claims, the Reorganized Debtors shall (i) reinstate the Space Coast Truss Loan Documents with a maturity of one year from the Effective Date and certain other modifications acceptable to the Reorganized Debtors and the holder of the Allowed Space Coast Truss Secured Claims (such modified documents, the "Renewed Space Coast Truss Loan Documents"), (ii) use their commercially reasonable efforts to liquidate the Collateral securing the Allowed Space Coast Truss Secured Claims, (iii) remit all proceeds arising from such liquidation to the holders of Allowed Space Coast Truss Secured Claims in accordance with the terms of the Space Coast Truss Loan Documents, and (iv) grant a senior perfected Lien on all proceeds arising from such liquidation to the holders of Allowed Space Coast Truss Secured Claims.

(p)   Article 14.1 - Conditions to Confirmation.

The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 14.3 of this Plan:

(f)   The Confirmation Order shall (i) provide that the First Lien Lenders shall be granted valid, perfected (without the need for recording of documents, filing of notices or taking of other action), senior Liens on all of the Reorganized Debtors' assets, except for any assets that are excluded from such Liens in the New Loan Documents, with such Liens to be senior to any other Liens, Claims or interests, including any Liens or Claims of

creditors asserting mechanics liens or similar operational liens, other than Liens Securing Allowed Secured Tax Claims and Allowed CDD Secured Claims that have priority to the Liens securing Allowed First Lien Lender Secured Claims as of the Effective Date, (ii) authorize the Reorganized Debtors and the Administrative Agent to file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate of record the release and/or discharge of any liens not specifically preserved in the Plan, without further notice to or approval of the Court or any other party and (iii) provide that the Transferred Assets shall be free and clear of all Liens and Claims of every kind, including those of the First Lien Lenders.

(q)     Article 1.43 - Distribution Reserve.   The Creditor Trustee shall determine the reserve, if any, to be established and maintained by the Creditor Trust for purposes of making distributions to holders of Disputed Claims if and when such Disputed Claims become Allowed Unsecured Claims.

(r)     5.3.B - Class 3 CDD Secured Claims Treatment

Any and all taxes and/or assessments that are levied and/or imposed by a CDD prior to the Effective Date and that are delinquent or due as of the Effective Date shall be paid in Cash on the Effective Date, consistent with the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law. Except as stated in the preceding sentence, and notwithstanding any other language contained herein, any and all taxes and/or assessments levied and/or imposed by a CDD at any time shall be paid when due under the terms of the CDD's resolutions or other directives, and applicable non-bankruptcy law; provided however, that the Debtor shall not be responsible for payment of any delinquent taxes of assessments for which they are not responsible under CDD resolution or other directives, and applicable non-bankruptcy law.   For avoidance of doubt, any and all taxes and/or assessments that are levied and/or imposed by a CDD at any time shall include interest to the extent such interest becomes due and owing under applicable non-bankruptcy law.

50.    Modifications to the Plan Supplement - Treatment of Certain Executory Contracts.  At the request of the Debtors, the Plan Supplement is hereby modified pursuant to Bankruptcy Code § 1127(a) and Article 9.2 as set forth below.  The modified lists of executory contracts to be assumed and rejected—original lists were filed as part of the Plan Supplement—are attached to this Order as Exhibit "B" in their entirety.

(a)     Additions to List of Executory Contracts to be Assumed:

| No. | Contract Counterparty | Contract Type | Contract # or Lease # | Amount Due to bring current |
|-----|----------------------|---------------|----------------------|------|
| 1 | Aliana Development Company | Lot Contract | Aliana - As Amended | $ - |
| 2 | Coats, Rose, Yale, Ryman & Lee, P.C. | Lot Contract | Aliana - As Amended | $ - |
| 3 | Edward & Patricia Carroll III | Model Lease Back | Lease for 621 Bismarck Way | $ - |
| 4 | Gary & Theresa Neumann | Model Lease Back | Lease for 331 Cressa Circle | $ - |
| 5 | Richard Fitzgerald | Model Lease Back | Lease for 770 Ventura Drive | $ - |
| 6 | Krukar Family Trust | Model Lease Back | Lease for 1310 Lara Circle, Unit 1 | $ - |
| 7 | Louise Bermudez, LLC | Lot Contract | Back Creek Church - As Amended | $ - |
| 8 | Kirk Palmer & Thigpin, P.A. | Lot Contract | Back Creek Church - As Amended | $ - |

(b)    Modifications (shown in bolded italics) to existing contracts on the List of Executory Contracts to be Assumed:

| No. | Contract Counterparty | Contract Type | Contract # or Lease # | Amount Due to bring current |
|-----|----------------------|---------------|----------------------|------|
| 1 | Richard Whitworth | Model Lease- Enchanted Forest | Enchanted Forest Model Lease - *As Amended* | $ - |
| 2 | Symetra Financial | Health Insurance Stop Loss | 16-010956-00 | $ 36,380.60 |

(c)    Additions to List of Executory Contracts to be Rejected:

| No. | Contract Counterparty | Contract Type | Contract # or Lease # |
|-----|----------------------|---------------|----------------------|
| 1 | Sprint | Biz Essential | 866128109 |
| 2 | John D Austin | Sign Rental | Sign, CR 200 @ State Hwy 29 |

(d)    Deletions from the List of Executory Contracts to be Rejected[2]:

| No. | Contract Counterparty | Contract Type | Contract # or Lease # |
|-----|----------------------|---------------|----------------------|
| 1 | Aliana Development Company | Lot Contract | Aliana |
| 2 | Coats, Rose, Yale, Ryman & Lee, P.C. | Lot Contract | Aliana |
| 3 | Louise Bermudez, LLC | Lot Contract | Back Creek Church |
| 4 | Kirk Palmer & Thigpin, P.A. | Lot Contract | Back Creek Church |

51.    New Loan Document Supplement to the Plan Supplement.    Once finalized, the New Loan Document will be submitted as a supplement to the Plan Supplement and upon such submission shall constitute the "New Loan Documents" as defined in the Plan.

52.    Unclaimed Property.    "Unclaimed Property" means any distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to the Plan that (a) is returned to the Plan Administrator as undeliverable and no appropriate

---

[2]    These contracts were removed from the list of executory contracts to be rejected and transferred to the list of executory contracts to be assumed.  *See supra*, ¶ 50(a).

forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such attempted Distribution by the Plan Administrator is made to such holder or (b) in the case of a distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made.  Pursuant to Local Rule 3011-1(B), Unclaimed Property shall be donated to the Bankruptcy Bar Foundation for the Southern District of Florida, a not-for-profit, non-religious organization dedicated to, among other things, promoting the pro bono legal representation of the indigent.

      53.   <u>Effective Date Occurance</u>.  If the Effective Date has not occurred on or before the first business day which is thirty (30) calendar days after the date of entry of this Order, the Court shall hold a status hearing on the earliest available court date thereafter regarding the occurrence of the Effective Date, such that the Court may order appropriate relief pursuant to the Plan, this Order, and/or the applicable provisions of the Bankruptcy Code.  Nothing in this retained jurisdiction of the Bankruptcy Court shall affect any rights of any creditor under the Plan, this Order, or agreement with the Debtors and/or the Reorganized Debtors.

###

Submitted by and Copies furnished to:
**Tina M. Talarchyk, Esquire***
Squire, Sanders & Dempsey LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Fla. 33401-6198
(*Attorney Talarchyk is hereby directed to serve a conformed copy of this Order upon receipt to all interested parties and file a Certificate of Service.)

39

**EXHIBIT "A"**

FINDINGS OF FACT AND CONCLUSIONS OF LAW

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re

**MERCEDES HOMES, INC.**, *et al.*

**Debtors.**

**Case No. 09-11191-PGH**

**Chapter 11 Cases**
**(Jointly Administered)**

---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEBTORS' JOINT PLAN OF REORGANIZATION (D.E. #1020)

THIS CAUSE came to be heard in West Palm Beach, Florida, on August 31, 2009 at 1:00 p.m. ("Confirmation Hearing") on the the *Debtors' Memorandum In Support of Confirmation of Joint Plan of Reorganization* dated August 27, 2009 (the "Confirmation Brief") (D.E. #1311), filed by MERCEDES HOMES, INC. ("MHI") and certain of its subsidiaries (together with MHI, the "Debtors"),[1] debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, seeking entry of an order (the "Confirmation Order") under Section 1129 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") confirming the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* ("Plan")[2] (D.E. #1020), which along with the "Plan Supplement to the Debtors' Joint Plan of Reorganization" (the "Plan Supplement") (D.E. #1096) are attached hereto as *Exhibit "A"* and incorporated herein by reference, and based upon the Court's review of: (i) the

---

[1] The debtor subsidiaries of MHI include: i) Space Coast Truss, Inc. ("Space Coast Truss"); ii) Mercedes Homes of Texas Holding Corp. ("MH Texas"); iii) Suntree Office Complex, LLC ("Suntree"); iv) Engineering and Drafting Services, Inc. ("Engineering Services"); v) Mercedes Homes of the Carolinas, Inc. dba Mercedes Homes ("MH Carolinas"); vi) Solid Wall Systems, Inc.; vii) MHI Holding Company, LLC ("MHI Holding"); viii) Mercedes Homes of Texas, Ltd. ("MH Texas"); ix) MHI Building Products, L.P. ("MHI Building"); and x) Dairy Towns Community Developers, Inc. ("Dairy Towns").

[2] Capitalized terms not defined in this Brief have the same meaning ascribed to them under the Plan.

Confirmation Brief; (ii) "*Amended Order: (A) Conditionally Approving Disclosure Statement; (B) Authorizing Solicitation of Votes on the Plan (C) Approving Solicitation Procedures; (D) Scheduling Combined Hearing for Final Approval of Disclosure Statement and Evidentiary Hearing on Confirmation of the Plan; (E) Approving Form, Manner and Sufficiency of Notice; and (F) Scheduling the Bar Date to File Claims Under Section 503(b)(9) of the Bankruptcy Code* (the "Solicitation Order") (D.E. #1033); (iii) the *Disclosure Statement Concerning the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* ("Disclosure Statement") (D.E. #1021); (iv) the *Declaration of Richard M. Williamson in Support of Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Williamson Declaration") (D.E. #1306); (v) the *Declaration of Grant Lyon in Support of Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* ("Lyon Declaration") (D.E. #1307); (vi) the *Supplemental Declaration of G. Grant Lyon in Support of Class 7 Treatment of Suntree Secured Claims Under Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Supplemental Lyon Declaration") (D.E. #1334); (vii) the *Declaration of Voting Agent Regarding Tabulation of Votes in Connection with Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* and the *Ballot Report for Debtors' Joint Plan of Reorganization* ("Ballot Report")[3] [D.E. 1310]; (vii) the *Debtors' Supplemental Brief Regarding Unspecified Shareholder Derivative Actions by ESOP Participants* (the "Supplemental Brief") (D.E. #1390); (viii)

---

[3]      The Ballot Report indicates that Class 7 - Suntree Secured Claims voted to reject the Plan; however, subsequent to filing the Ballot Report, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claims reached a resolution regarding treatment of the Class 7 - Suntree Secured Claims.  As part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan.  Thus, all Classes entitled to vote under the Plan voted to accept the Plan.

the *Findings of Fact and Conclusions of Law Overruling Objection of Jeffrey Macik to the Debtors' Joint Plan of Reorganization* (the "Release Related Findings of Fact") (D.E. #1446); (ix) all of the evidence offered or adduced at, objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing (as defined below); and (x) the entire record in these Chapter 11 cases; and after due deliberation and good and sufficient cause having been shown, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Court does::

**FIND AND CONCLUDES as follows:**

1.    Confirmation Hearing.    On August 31, 2009 the Court, pursuant to Bankruptcy Code § 1128 and Bankruptcy Rule 3020(b)(2), conducted a hearing to consider confirmation of the Plan  ("Confirmation Hearing").

2.    Defined Terms.    All capitalized terms used in these findings of fact and conclusions of law that are not defined herein shall have the same meaning ascribed to them in the Plan.

3.    Solicitation Order.    On July 24, 2009, the Court entered the Solicitation Order which, among other things, approved the Disclosure Statement.  The Debtors used the Disclosure Statement to solicit votes to accept or reject the Plan from those creditors who are impaired and entitled to vote under the Plan—(i) Classes 4 First Lien Lender Secured Claims; (ii) Class 5A Allowed REIV Secured Claims; (iii) Class 5B Allowed REIV Deficiency Claims; (iv) Class 6 Space Coast Truss Secured Claims; (v) Class 7 Suntree Secured Claims; and (vi) Class 9 General Unsecured Claims.  The Solicitation Order: (i) set July 25, 2009 as the deadline for submission of Ballots to accept or reject the Plan (the "Voting Deadline"); (ii) approved the form and method of

notice of the Confirmation Hearing (the "Confirmation Hearing Notice"); (iii) set August 25, 2009 as the deadline for submitting objections to confirmation of the Plan (the "Confirmation Objection Deadline"); and (iv) established certain procedures for soliciting and tabulating votes with respect to the Plan.

4.     Transmittal of Solicitation Packages.     The Debtors mailed Solicitation Packages, which included, among other things: 1) copies of the Disclosure Statement and Plan; 2) notice of the final, evidentiary confirmation hearing to be held on August 31, 2009; 3) the Solicitation Order; and 4) appropriate class ballots ("Ballots") in the form approved in the Solicitation Order to Classes 4, 5A, 5B, 6, 7, and 9. Additionally, the *Notice to Non-Voting Parties of Evidentiary Hearing on Confirmation of Chapter 11 Joint Plan of Reorganization* ("Nonvoting Party Notice") only was transmitted to holders of claims not entitled to vote under the Plan. The transmittal of the foregoing materials was conducted in accordance with Bankruptcy Rule 3017(d) and the Solicitation Order.

5.     Ballot Report.     The Debtors filed the Ballot Report on August 27, 2009, which certifies the method and results of the ballot tabulation for each Class entitled to vote to accept or reject the Plan. As noted above, the Ballot Report indicates that Class 7 - Suntree Secured Claims voted to reject the Plan; however, subsequent to filing the Ballot Report, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claims reached a resolution regarding treatment of the Class 7 - Suntree Secured Claims. As part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan. Thus, all Classes entitled to vote under the Plan voted to accept the Plan

6.    _Jurisdiction and Venue_.  The Court has jurisdiction over these Chapter 11 Cases under 18 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

7.    _Judicial Notice_.  The Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at, the hearings held before the Court during the pendency of these Chapter 11 Cases.

8.    _Oral Findings of Fact Incorporated_.  All oral findings of fact and conclusions of law entered by the Court at the Confirmation Hearing are incorporated herein by this reference, in accordance with Bankruptcy Rule 7052(a).

9.    _Declarants Available for Examination_.  Richard Williamson and G. Grant Lyon, as declarants in the Williamson Declaration, Lyon Declaration and Supplemental Lyon Declaration, were present in the courtroom during the Confirmation Hearing and provided testimony on direct and cross examination at the Confirmation Hearing.

10.    _Transmittal and Mailing of Materials; Notice_.  In accordance with Bankruptcy Rule 2002, the Court finds and concludes that adequate and sufficient notice of the time for filing objections to the Disclosure Statement and Plan was provided to the holders of claims and equity interests in accordance with the procedures set forth in the Solicitation Order.  The Disclosure Statement, Plan, Ballots, Solicitation Order, Confirmation Hearing Notice, and Nonvoting Party Notice were transmitted and served in substantial compliance with the Solicitation Order and the Bankruptcy Rules,

and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing, the Voting Deadline, and the Confirmation Objection Deadline was given in compliance with the Solicitation Order and the Bankruptcy Rules, and no other or further notice is required.

11.  Solicitation. In accordance with Bankruptcy Code § 1126(b), the Court finds and concludes that: (a) the solicitation of votes to accept or reject the Plan complied with all applicable non-bankruptcy law, rules and regulations governing the adequacy of disclosure in connection with the solicitation; and (b) the solicitation was conducted after disclosure of adequate information, as defined in Bankruptcy Code § 1125(a).

12.  Ballots. All procedures used to distribute Solicitation Packages to the holders of claims and to tabulate Ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court for the Southern District of Florida, and all other applicable laws, rules, and regulations.

13.  Impaired Classes under the Plan. As set forth more fully in the Solicitation Order, Classes 4, 5A, 5B, 6, 7, 9, 10, and 11 (collectively, the "Impaired Classes") are impaired under the Plan as that term is defined in Bankruptcy Code § 1124. Classes 4, 5A, 5B, 6, 7, and 9 are entitled to submit votes to accept or reject the Plan; Classes 10 and 11 are not entitled to vote on the Plan and are deemed to reject the Plan because Class 10 and Class 11 shall not receive or retain any rights, property or distributions under the Plan.

14. <u>Unimpaired Classes under the Plan</u>.  As set forth more fully in the Solicitation Order, Classes 1, 2, 3, and 8 (collectively, the "Unimpaired Classes") are unimpaired under the Plan as that term is defined in Bankruptcy Code § 1124. Accordingly, the Unimpaired Classes are deemed to accept the Plan, and are not entitled to vote on the Plan.

15. <u>Impaired Classes That Have Voted to Accept the Plan</u>.  The Ballot Report indicates that Classes 4, 5A, 5B, 6, and 9 voted to accept the Plan and Class 7 - Suntree Secured Claims voted to reject the Plan; however, subsequent to filing the Ballot Report, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claim reached an agreement regarding modification of the treatment of the Class 7 - Suntree Secured Claims.  As part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan.  Thus, all Classes entitled to vote under the Plan voted to accept the Plan.  Thus, at least one impaired class of claims, determined without including any acceptance by an insider of any of the Debtors, has voted to accept the Plan.

16. <u>Impaired Class That Voted to Reject the Plan</u>.  Although the Ballot Report indicates that Class 7 voted to reject the Plan, as discussed above, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claim reached a resolution regarding treatment of the Class 7 - Suntree Secured Claims and as part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan.  Because Class 11 is impaired and deemed to reject the Plan, however, the Court finds that the provisions of Bankruptcy Code § 1129(b) must be satisfied to confirm the Plan.

17.   <u>Burden of Proof</u>.  The Debtors, as proponents of the Plan, have met their burden of proving all elements of Bankruptcy Code § 1129(b).  First, as set forth below, the Plan complies with the provisions of Bankruptcy Code § 1129(a) other than the provisions of § 1129(a)(8).

18.   <u>The Plan Complies with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  As detailed below, the Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(1).

a.   <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to Administrative Claims, Preserved Ordinary Course Administrative Claims, Professional Claims, and Priority Tax Claims (which are not required to be classified), Article IV of the Plan designates ten Classes of Claims and one Class of Equity Interests in the Debtors.  The Claims and Interests placed in each Class are substantially similar to other Claims or Interests in such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests.  Accordingly, the Plan satisfies Bankruptcy Code § 1122 and 1123(a)(1).

b.   <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article 6.2 of the Plan specifies the Classes of Claims and Interests that are Unimpaired under the Plan.  Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(2).

c.   <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Article VI of the Plan specifies the Classes of Claims that are Impaired under the Plan.  Article V of the Plan specifies the treatment of Claims in all such Classes.  Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(3).

d.   <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment for each Claim in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim.  Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(4).

e.   <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan provides adequate and proper means for implementation of the Plan, including, without limitation:  (a) the reconstitution of each of the Debtors as of the Effective Date ("Reorganized Debtors"); (b) issuance of the New

9

Mercedes Common Stock; (d) issuance of the New Loan Documents; (e) creation of the Creditor Trust for the benefit of the holders of Allowed General Unsecured Claims and transfer to the Creditor Trust of the (i) the Effective Date Cash Payment, (ii) right to receive the Post-Effective Date Cash Payment, (iii) the right to receive the BANS Proceeds Allocation, and (iv) the Transferred Claims which, in turn, include the Avoidance Actions; (f) procedures for making distributions; and (g) the execution, delivery, filing or recording of all contracts, instruments, releases, indentures, and other agreements or documents relating to the foregoing. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(5).

f.      Prohibition Against Issuance of Non-Voting Equity Securities and Provisions for Voting Power of Classes of Securities (11 U.S.C. § 1123(a)(6)). Article 7.2.B of the Plan prohibits the issuance of non-voting equity securities as of the Effective Date. After the Effective Date, each of the Reorganized Debtors may amend their respective organizational documents as permitted by applicable law. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(6).

g.      Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). The Plan Supplement properly and adequately discloses the identity and affiliations of all individuals proposed to serve on or after the Effective Date as Officers and Directors of the Reorganized Debtors. The appointment of such Officers and Directors are consistent with the interests of the holders of Claims against and Interests in the Debtors, and with public policy. Accordingly, the Plan satisfies Bankruptcy Code § 1123(a)(7).

h.      Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for: (a) distributions to holders of Claims; (b) the disposition of executory contracts and unexpired non-residential real property leases; (c) the retention and/or transfer of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing) certain claims or causes of action against third parties, to the extent not waived or released under the Plan; (d) resolution of Disputed Claims; (e) resolution of indemnification obligations; and (f) certain releases by the Debtors and holders of certain Claims.

i.      Bankruptcy Rule 3016(a). The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

19.     Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(2). The Debtors have complied with the

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices, and in soliciting and tabulating votes on the Plan.

20.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Bankruptcy Code § 1129(a)(3).  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases and the formulation of the Plan.  The Plan was proposed, with the legitimate and honest purpose of maximizing the value of each of the Debtors and the recovery to Claim holders under the circumstances of these Chapter 11 Cases.

21.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by the Debtors for services or for costs and expenses in connection with these Chapter 11 Cases, including all administrative expense claims under Bankruptcy Code § 503, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying Bankruptcy Code § 1129(a)(4).

22.     Directors and Officers (11 U.S.C. § 1129(a)(5)).  The Debtors, as proponent of the Plan, have complied with Bankruptcy Code § 1129(a)(5) by disclosing in the Plan Supplement the identity and affiliations of all individuals and entities proposed to serve, after confirmation of the Plan, as the Officers and Directors of Reorganized Debtors.  Such appointment is consistent with the interests of the creditors and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5).

23.  No Government Regulation of Rates (11 U.S.C. § 1129(a)(6)). Bankruptcy Code § 1129(a)(6) is satisfied because the business of the Debtors is not subject to governmental regulation of rates.

24.  Best Interests Test (11 U.S.C. § 1129(a)(7)).  The Plan satisfies Bankruptcy Code § 1129(a)(7).  The Disclosure Statement, the Williamson Declaration, the Lyon Declaration, the Supplemental Lyon Declaration and evidence adduced at the Confirmation Hearing:  (a) are persuasive, credible and accurate as of the dates they were prepared, presented, or proffered; (b) either have not been controverted by other persuasive evidence or have not been challenged; (c) are based upon reasonable and sound assumptions; and (d) establish that each holder of a Claim in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

25.  Bankruptcy Code § 1129(a)(8) Need Not Be Satisfied under § 1129(b). Because the Plan is being confirmed under Bankruptcy Code § 1129(b), the requirements of § 1129(a)(8) need not be satisfied.

26.  Treatment of Administrative and Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of Bankruptcy Code §§ 1129(a)(9)(A) and (B), and the treatment of Priority Tax Claims under the Plan satisfies Bankruptcy Code § 1129(a)(9)(C).

27. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Classes 4, 5A, 5B, 6, 7, 9, 10, and 11 are Impaired Classes. As described with particularity in the Ballot Report and in this Findings of Fact, Classes 4, 5A, 5B, 6, 7 and 9 voted to accept the Plan. Classes 10 and 11 are deemed to reject the Plan in accordance with Bankruptcy Code § 1126(e) because Classes 10 and 11 shall not receive or retain any property under the Plan. The Impaired Classes do not contain "insiders" of any significant magnitude. Accordingly, the Plan satisfies Bankruptcy Code § 1129(a)(10).

28. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan satisfies Bankruptcy Code § 1129(a)(11). The Plan implements a reorganization of the Debtors. The Disclosure Statement, the Lyon Declaration, and evidence adduced or proffered at the Confirmation Hearing: (a) are persuasive, credible and accurate as of the dates they were prepared, presented, or proffered; (b) either have not been controverted by other persuasive evidence or have not been challenged; (c) are based upon reasonable and sound assumptions; and (d) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by further financial reorganization of the Reorganized Debtors.

29. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. To the extent that all fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date. Accordingly, the Plan satisfies Bankruptcy Code § 1129(a)(12).

30. <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. No retiree benefits, as that term is defined in Bankruptcy Code § 1114, exist in these Chapter 11 Cases, making

13

Bankruptcy Code § 1129(a)(13) inapplicable.  The Plan thus satisfies Bankruptcy Code § 1129(a)(13).

31.     <u>Domestic Support Obligation (11 U.S.C. § 1129(a)(14))</u>.  The Debtors are not subject to any judicial or administrative order, or by statute, to pay any domestic support obligation.  The Plan thus satisfies Bankruptcy Code § 1129(a)(14).

32.     <u>Individual Debtors (11 U.S.C. § 1129(a)(15))</u>.  None of the Debtors is an individual.  The Plan thus satisfies Bankruptcy Code § 1129(a)(15).

33.     <u>Transfers Under Nonbankruptcy Law (11 U.S.C. § 1129(a)(16)</u>.  There are no provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust that apply to any of the Debtors since the Debtors are commercial businesses.  The Plan thus satisfies Bankruptcy Code § 1129(a)(16).

34.     <u>Fair and Equitable (11 U.S.C. § 1129(b)(2))</u>.  The Plan provides "fair and equitable" treatment to Classes 10 and 11 which are deemed to reject.  Under Bankruptcy Code § 1129(b)(2)(C), a plan is fair and equitable to a class of class of equity interests who did not vote to accept the plan if the plan provides that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on any property on account of such junior interest.  Under the Plan, there will be no recovery to any interest or claim junior to Classes 10 or 11—which are respectively comprised of equity interests and claims arising from the purchase or sale of securities which subordinated under Bankruptcy Code § 510(b).  Therefore, the Court finds Classes 10 and 11 are treated fairly and equitably under Bankruptcy Code § 1129(b)(2).

35.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance.  Accordingly, the Plan complies with Bankruptcy Code § 1129(d).

36.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  The Debtors and their respective attorneys, accountants and advisers have solicited votes to accept or reject the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, and are, therefore, entitled to the protections afforded by Bankruptcy Code § 1125(e) of the Bankruptcy Code and the release provisions contained in Article XII of the Plan.

37.    Executory Contracts.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired non-residential real property leases as set forth in the Plan Supplement.

38.    Releases.  As further described in the Release Related Findings of Fact, all of the releases in Article 12.4 of the Plan (as modified in the Confirmation Order, the "Releases") constitute good faith compromises and settlements of the matters covered thereby.  The Releases are in the best interests of the Debtors, Reorganized Debtors and their estates, and are fair, equitable and reasonable.  The non-debtors released under Article 12.4 have contributed to the Debtors' reorganization by compromising their claims against the estate in furtherance of the global settlement that the Plan effectuates as negotiated between the Debtors, the First Lien Lenders, REIV and the Committee.  The Releases are essential to the reorganization, as these parties agreed

15

to compromise these claims in exchange for receiving the releases.  All of the Releases described in Article 12.4 of the Plan:  (a) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1134(a), (b), and (d); (b) are important to the overall objectives of the Plan to finally resolve all Claims among or against parties in interest in these Chapter 11 Cases with respect to the Debtors; and (c) are consistent with Bankruptcy Code §§ 105, 524, 1123, and 1129.

39.    Conditions to Confirmation.  The conditions to confirmation set forth in Article 14.1 of the Plan have been satisfied, waived, or will be satisfied by entry of the Confirmation Order, provided, however, that the occurrence of the Effective Date is subject to satisfaction or waiver, as applicable, of the conditions to the Effective Date set forth in the Plan and the Confirmation Order.

40.    Conditions to Effectiveness.  Each of the conditions to the Effective Date, as set forth in Article 14.2 of the Plan, is reasonably likely to be satisfied, and the Reorganized Debtors shall file a notice when substantial consummation of the Plan (within the meaning of Bankruptcy Code § 1127) has occurred.

41.    Retention of Jurisdiction.  The Court's retention of jurisdiction as set forth in Article 13 of the Plan comports with the parameters contained in 28 U.S.C. § 157.

42.    Agreements and other Documents.  The Debtors have made adequate and sufficient disclosure of:  (a) the distributions to be made under the Plan; (b) the issuance of the New Mercedes Common Stock, New Loan Documents, Renewed Space Coast Truss Loan Documents, and Renewed Suntree Loan Documents to holders of certain Claims, in accordance with the terms of the Plan; and (c) the adoption, execution, delivery, and implementation of all contracts, leases, instruments,

indentures, releases, and other agreements or documents related to the any of the foregoing.

43.   <u>Preservation of Causes of Action.</u>   It is in the best interests of Claim holders and Interest holders that causes of action not expressly released under the Plan be retained by the Reorganized Debtors pursuant to Article 13 of the Plan, in order to maximize the value of the Debtors' estates.

44.   <u>Election Pursuant to 11 U.S.C. § 1111(b).</u>   No secured creditor has elected the treatment provided by Bankruptcy Code § 1111(b).

45.   <u>New Securities under 11 U.S.C. § 1145.</u>   In accordance with Bankruptcy Code § 1145, the issuances of the New Mercedes Common Stock are exempt from the registration requirements of Section 5 of the Securities Act and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of or broker dealer in such securities.

46.   <u>Status of Objections.</u>   As set forth below, and described more fully in the Confirmation Order, the objections filed to the Plan have either been resolved or otherwise overruled.

47.   <u>Tax Objections.</u>   The following taxing authorities filed substantially similar objections (collectively, the "Tax Objections") addressing the treatment of Secured Tax Claims under the Plan: (i) Texas Comptroller of Public Accounts (D.E. #1149); (ii) Travis County Tax Assessor, *et al.* (D.E. ##1190, 1193); (iii) Lewisville Independent School District, *et al.* (D.E. ##1243, 1266); (iv) Miami-Dade Tax Collector (D.E. #1227); (v) County of Denton, Texas, *et al.* (D.E. #1216); (vi) Brevard County Tax Collector (D.E. ##1235, 1269); (vii) Orange County Tax Collector (D.E. ##1236, 1270); (viii) Fort Bend

Independent School District, *et al.* (D.E. ##1247, 1273); and (ix) Dallas County, *et al.* (D.E. ##1250, 1274). The Tax Objections have been resolved by way of incorporating certain agreed language regarding treatment of Class 2 and the vesting of assets into the Confirmation Order.

48.    BAN Objections.    Celebration Point Community Development District ("Celebration Point") (D.E. ##1261) and Lo Land Assets, LP ("Lo Land") (D.E. #1224) (collectively, the "BAN Objections") objected to the Plan, arguing that the Plan grants independent jurisdiction to the Bankruptcy Court over adversary proceeding 09-AP-01860-PGH (the "Adversary"), which seeks a declaratory judgment relating to certain bond anticipation notes issued by the defendants in the Adversary. Lo Land filed a supplemental objection (D.E. #1305) objecting to the non-debtor release provisions to the extent the release provisions relate conduct that is subject of the Adversary or the related state court actions. The BAN Objections have been resolved by way of incorporating certain agreed language regarding this Court's retention of jurisdiction and the release provisions into the Confirmation Order.

49.    ESOP Objections.    Two objections were received on behalf of ESOP participants by Jeffrey Macik (the "Macik Objection") (D.E. #1211) and Brett Alexander and Audrey Gillett (D.E. ##1246, 1271) ("Alexander & Gillett Objection"). The Alexander & Gillett Objection has been resolved by incorporating certain agreed language into the Confirmation Order. In exchange for incorporating the agreed language into paragraph the Confirmation Order and as condition of resolution of the Alexander & Gillett Objection, the Adversary Proceeding 09-01927-PGH ("Gillett Adversary Proceeding") is *to be withdrawn with prejudice.*    The Court overruled the Macik Objection in the

Release Related Findings of Fact. The Release Related Findings of fact also concluded that the form of clarifying language included in the Confirmation Order with regards to the Alexander & Gillett Objection resolved the Macik Objection.

50. <u>Removables Objections</u>. Seven objections were filed by certain operational lien claimants assert priming liens under the Texas law "removables" doctrine ("Removables Objections"). The Removables Objections were filed by: (i) Park Row Lighting, LLC (D.E. #1169); (ii) Fashion Glass & Mirror, LLC (D.E. #1170); (iii) Fashion Door & Window, Ltd. (D.E. #1171); (iv) Calvin's Electric, Ltd. (D.E. #1172); (v) Casa Mechanical Services, Ltd. (D.E. #1173); (vi) Christianson Air Conditioning and Plumbing, LLC (D.E. #1174]; and (vii) ABC Fence Co. dba Builders Fence Co. (D.E. #1175). The Removables Objections were resolved by way of settlement agreement between the objecting parties and the Debtors.

51. <u>Operational Lien Claimant Objections</u>. Operational lien claimants TNT Builders (D.E. #1225), Tri-County Drywall (D.E. #1252), and Potter Concrete (d.e. #1256) (collectively, the "Operational Lien Claimant Objections") object to confirmation, and allege that they hold secured claims against the Debtors that are not properly treated under the Plan. The Operational Lien Claimant Objections were resolved prior to the Confirmation Hearing.

52. <u>Miscellaneous Objections</u>. Other miscellaneous objections were filed and resolved prior to the Confirmation Hearing. First, the objection filed by Ace American Insurance Co. (D.E. ##1251, 1296) (the "Ace Objection") was resolved by way of incorporating certain agreed language regarding the previous assumption of the Ace contracts into the Confirmation Order. Second, the objection filed by Norpak

Corporation (D.E. ##1233, 1268) (the "Norpak Objection") was resolved by way of incorporating certain agreed language regarding the treatment of certain Norpak Corporation related contracts into the Confirmation Order. Third, the objection filed by Symetra Life Insurance (D.E. ##1244, 1267) (the "Symetra Objection") was resolved by consensually determination that the requisite cure payment for Symetra contract 16-010956-00 is $36,380.60, which is equal to $99,019.15, less $62,638.55 of applicable offsets and credits. Fourth, the Bond Safeguard Insurance Company and Lexon Insurance Company (D.E. #1254) (the "Bond Objection") was resolved by way of incorporating certain agreed language regarding the bonding company's rights into the Confirmation Order.

53. <u>National City Bank and Satellite Beach Objections.</u> The objections filed by National City Bank (D.E. #1232) and Satellite Beach Partners, LLC (D.E. #1234) have also resolved by way of incorporating certain agreed language regarding the scope of non-debtors releases into the Confirmation Order.

### ###

Submitted by and Copies furnished to:
**Tina M. Talarchyk, Esquire\***
Squire, Sanders & Dempsey LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Fla. 33401-6198
(\*Attorney Talarchyk is hereby directed to serve a conformed copy of this Order upon receipt to all interested parties and file a
Certificate of Service.)

# EXHIBIT B

## Amended Lists of Assumed & Rejected Executory Contracts

**Mercedes Homes, Inc.**
Accepted Contracts

| Contract # or Lease # | MHI Location | MHI Contract Person | Type of Contract | Contract Counterparty Name | Address 1 | Address 2 | City | State | Phone | Fax | Email | Amount Due to bring current |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Palm Bay/Ascott | MHI | Bob Kush | Model Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Palm Bay/Amanda Ridge | MHI | Bob Kush | Model Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Palm Bay/Nicole Isle | MHI | Bob Kush | Model Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Palm Bay/Mackenzie Cove | MHI | Bob Kush | Model Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Palm Bay/Parking lot | MHI | Bob Kush | Land Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Palm Bay/Parking lot | MHI | Bob Kush | Land lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Palm Bay/Construction Office | MHI | Bob Kush | Model Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Volusia/Mosaic Bay | MHI | Bob Kush | Model Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Melbourne/Sonesta Unit 2 | MHI | Bob Kush | Model Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Treasure Coast/Ascott Bay | MHI | Bob Kush | Model Lease | Florida Leasing Ventures | 6800 North Wickham Road | | Melbourne | FL | 32940 | | | 0 |
| Enchanted Forest - As Amended | MHT - Austin | Randy McGilvern | Lot Contract | Wetarion Development, Inc. | 1004 Mopac Circle, Suite 200 | Attn: Chris Blackburn | Austin | TX | 78705 512-346-3462 | 512-329-2409 | | 0 |
| Enchanted Forest - As Amended | MHT - Austin | Randy McGilvern | Lot Contract | McLain and Howell, P.C. | | Attn: Jeffrey S. Howell | Austin | TX | 78746 512-328-2508 | 512-328-2409 | | 0 |
| Ranch at Brushy Creek 60 foot lots - As Amended | MHT - Austin | Randy McGilvern | Lot Contract | Newman/Bullington Brushy Creek, L.P. | 6500 River Place Blvd. Bldg 2, Suite 200 | Attn: Steve Wasaff c/o Buff Carr | Austin | TX | 78730 | 512-328-2508 | | 0 |
| Ranch at Brushy Creek 60 foot lots - As Amended | MHT - Austin | Randy McGilvern | Lot Contract | Hunt Savage & Vandiviere, LLP | 3800 Capital of Texas Hwy S., Bldg A, Suite 210 | Attn: Ann E. Vandiviere | Austin | TX | 78746 | 512-328-2508 | | 0 |
| Ranch at Brushy Creek 60 foot lots - As Amended | MHT - Austin | Randy McGilvern | Lot Contract | Bright Realty, LTD. | 814 W. Tenth Street 4228 N. Central Expwy, Suite 300 | Attn: Eric D. Stanley | Dallas | TX | 78701 214-559-0021 | 512-450-0117 | Eric.Stanley@BrightRes.com | 0 |
| Castle Hills | MHT - Dallas | Stewart Parker | Lot Contract | Windsad P.C. | 1201 Main Street | Attn: Scott Williams Condo | Dallas | TX | 75202 214-559-9246 | 214-745-5390 | tparker@windsad.com | 0 |
| Castle Hills | MHT - Dallas | Stewart Parker | Lot Contract | | Renaissance Tower 1201 Main Street, Suite 1100 W | Attn: Scott Williams Condo | Dallas | TX | 75270 214-745-5703 | 214-745-5390 | sparat@henrymiller.com | 0 |
| Inwood Hills - As Amended | MHT - Dallas | Stewart Parker | Lot Contract | HSM Inwood 94, LTD | 5949 Sherry Lane | Attn: Dan Plunk Attn: David M. Tatum, Esq. | Dallas | TX | 75225 972-931-9800 | 972-419-9661 | dtatum@gpd.com | 0 |
| Inwood Hills - As Amended | MHT - Dallas | Stewart Parker | Lot Contract | Geary, Porter and Donovan | 16475 Dallas Parkway, Suite 400 | Attn: George D. Chapman | Dallas | TX | 75248 210-385-4300 | 210-694-2014 | | 0 |
| Sundance Ranch - As Amended | MHT - San Antonio | Randy McGilvern | Lot Contract | Peat River Sundance Ranch, LTD. | 4833 Sundance Road | Attn: Brian Bulpett | San Antonio | TX | 75248 210-546-0811 | 512-349-5556 | | 0 |
| Sundance Ranch - As Amended | MHT - San Antonio | Randy McGilvern | Lot Contract | The Helford Group | 4079 De Zavala Road | | Shavano Park | TX | 78249 210-514-0311 | 210-514-0259 | | 0 |
| Vineyards - As Amended | MHT - San Antonio | Randy McGilvern | Lot Contract | Johnson, Christopher, Javore & Cockburn, Inc. | 5803 NW Expressway | Attn: Todd Smith Attn: Jay W. Javore | San Antonio | TX | 75221 210-733-8225 | 210-733-0574 | | 0 |
| Vineyards - As Amended | MHT - San Antonio | Randy McGilvern | Lot Contract | SA Hardy Oaks, LP | 4833 Sundance Road, Suite 100 | Attn: Brian Bulpett | Austin | TX | 78759 512-346-6161 | 512-346-6556 | | 0 |
| Terra Bella - As Amended | MHI - Jacksonville | Dave Capolo | Lot Contract | SAC Development of David, Inc. | P.O. Box 23016 1200 River Place Blvd, Suite 900 | | Jacksonville | FL | 75221 | | | 0 |
| Blue Lake II - As Amended | MHI - Jacksonville | Dave Capolo | Lot Contract | Fred K. Kent III, Esq. | 10000 Clay Parkway Attn: Keon R. Suite 936 North, Suite 936 | Attn: Doug Services | Jacksonville | FL | 13246 | | | 0 |
| Blue Lake II - As Amended | MHI - Jacksonville | Dave Capolo | Lot Contract | Durbin Crossing, LLC | | | | | | | | 0 |
| Greyhawk Lots | MHI - Tampa | Kris Malone | Lot Contract | GRRP, LLC | 300 Boise Street E, Suite 3 | Attn: Douglas Malone | Oldsmar | FL | 34677 | | | 0 |
| Alcora - As Amended | MHT - Houston | Tom Cavehom | Lot Contract | Alcora Development Company | 4125 Fairway Drive, Suite 200 | Attn: Paul Cheng | Carrollton | TX | 75010 214-416-9866 | 241-731-9208 | paul.cheng@alcoradevelopment.com | 0 |
| Alcora - As Amended | MHT - Houston | Tom Cavehom | Lot Contract | Caske, Rowe, Kite, Hymon & Lee, P.C. | 1601 Expressway Plaza, Suite 2200 | Attn: Kite, Rowe | Carrollton | TX | 77046 713-651-0111 | 713-850-3559 | rrowe@caskerowe.com | 0 |
| Black Creek Church - As Amended | Mal of Carolinas | John Ludwig | Lot Contract | Louise Bermudez, LLC | 5805 Park Road | Attn: Gregg Jr. | Charlotte | NC | 28210 704-331-7534 | 704-643-4409 | | 0 |
| Black Creek Church - As Amended | Mal of Carolinas | John Ludwig | Lot Contract | Kirk Palmer & Thagin, P.A. | 1100 Kenilworth Ave, Suite 200 | Attn: W. Kirk Palmer | Charlotte | NC | 28204 704-332-9500 | 704-332-9264 | | 0 |
| | MHI - Land | Sharon Weber | Land Purchase Contract | Huntington Properties & Investments | 1100 H Main St, Suite A | | Stansmere | NY | 34744 | 904.528.9010 | | 0 |
| Waters of Paradise | MHI - Jacksonville | RoseyGenot | Model Relation | Iron Marchon | PO Box 77728 | | New York | NY | 10027 866-607-4128 | | | 0 |
| FL174 | MHI - Jacksonville | RoseyGenot | Dumpster | Advanced Disposal | PO Box 791424 | | Baltimore | MD | 21279 783-5200 | 628-1780 | | 0 |
| Office Cleaning | MHI - Jacksonville | RoseyGenot | Nightly Billed | Office Clean | 2919 West Trailhead | | St. Augustine | FL | 32094 974-3402 | | | 0 |
| 9200600 | MHI - Jacksonville | Donna Sadowski | NHS Subscription Fees | Builder Homesite | PO Box 33074 | | Dallas | TX | 7158 973-575-9600 | | | 0 |
| Mercedes Homes I | MHI - Jacksonville | Jeff Marcel | | National City Commercial Capital | PO Box 847055 | | Cincinnati | OH | 45283 513-455-2333 | | | 0 |
| 9200600 | MHT-Austin Division | Rosey Minnihy | Blue Print Machine | Lanier | 995 Dallas Avenue | | Baton Rouge | LA | 70096 972-451-1945 | | | 0 |
| Quarry Lake Billboard | MHT-Austin Division | Jeff Marcel | Billboard-Quarry Lake | | | | | | 70096 972-451-1945 | | | 0 |
| Galic Creek Billboard | MHT-Austin Division | Jeff Marcel | Billboard-Galic Creek | David Wherly | P.O. Box 80200 | | Baton Rouge | LA | 70835 | | | 0 |
| Coop Crystal Fairs Billboard | MHT-Austin Division | Jeff Marcel | Billboard-Coop Crystal Fairs | Ruland Whitworth | 1640 E. Tyler | | Harlingen | TX | 78550 | | | 40117 |
| Enchanted Forest Model Lease - As Amended | MHT-San Antonio | Steve Carlson | Model Lease- Enchanted Forest | Iron Mountain | P.O. Box 91004 | | Dallas | TX | 75237 866-807-6843 | | | 40117 |
| AF406 | MHT-San Antonio | Steve Carlson | Document Storage | Algeris Alarm | 1540 Babcock Road | | San Antonio | TX | 78229 800-800-7427 | 610-771-4125 | cryptics@harvoc.com | 0 |
| Sundance Model Lease | MHT-San Antonio | Steve Carlson | Office Trailer Lease | Jorge Hazard | 1507 Cordova | | Arlington | PA | 78255 800-860-7447 | 512-344-6556 | | 54816 MTM |
| 32272 | MHT-San Antonio | Steve Carlson | Model Lease | MediaServe | 4833 Sotomayor Springs | #100 | Austin | TX | 78758 512-346-6161 | 817-640-0538 | | 1700 |
| | MHT-San Antonio | Steve Carlson | Model Lease-Blue Lake II | TER Woodford Springs | 185 US Hwy 90 #1 | | San Antonio | TX | 234-4561 | 817-640-0538 | | 0 |
| 558456 | MHT - Dallas | Pam Rees | Model Lease | TBS Outdoor | 37001 S. Quinlan Mill Road | | Federal Arlington | TX | 78011 817-640-4500 | 817-649-0538 | | 2779 |
| 1370300 | MHT - Dallas | Pam Rees | | | | | | | | | | |
| 1380460 | MHT - Dallas | Pam Rees | | | | 3701 S. Quinlan Mill Road | Arlington | TX | 78012 817-640-4531 | 817-649-0537 | | 0 |
| 10185 | MHT - Dallas | Pam Rees | | | PO Box 27131 | | Baton Rouge | LA | 70396 817-640-6755 | | | 0 |
| 10184 | MHT - Dallas | Pam Rees | | | PO Box 27131-4 | | Dallas | TX | 214-736-1128 | | | 3000 |
| DS0DA | MHT - Dallas | | Magazine and Web (Mi Commodities - New Home Guide | | PO Box 422255 | | Atlanta | GA | 30384 972-239-7299 | | | 0 |

| Contract # or Lease # | MHI Location | MHI Contact Person | Contract Counterparty Name | Type of Control | Street Address | Address 2 | City | State | Zip | Phone | Fax | Email | Amount Due (to be billed) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 442-468-8538 | MHI - Corp | Kanakakakis | Google, Inc. | Internet advertising | Deconnect 33064 | PO Box 30002 | San Francisco | CA | 94139 | | | | 100084.75 |
| 13500 | MHI - Corp | Kanakakakis | Exel Target | Internet advertising | 223 N Meridian | Suite 200 | Indianapolis | IN | 46204 | | | | 1064.49 |
| Dated 4/14/09 | MHI - Corp | John Kanakakakis | Builder Homesite, Inc. | Internet advertising | 11011 B2820 North | | Austin | TX | 78750 | | | | |
| Broker Service Contract | MHI - Corp | Geoff | Insurance Broker Services | | 3000 Bayport Drive, Suite 300 | | Tampa | FL | 33607 | 813-490-6859 | 813-281-2224 | mark.vanwell@willis.com | 17894.62 |
| 72-10-1000034 | MHI - Corp | Geoff | AFCO | Insurance Financing Insurance Claims Third Party Administrator | 9155 E. Dudeland Blvd., Suite 1402 | | Miami | FL | 33156 | 800-288-0054 | 800-584-3457 | johannt@afco.com | 206.33 |
| 60031985 | MHI - Corp | Geoff | | Health Insurance | 4100 Greenwood Campus Parkway | | Stanley Gaston | FL | 33595 | 813-361-3757 | 813-465-3545 | Stacey.Caswell@innovalonce.aspir | 208.33 |
| 71-35500-0005 | MHI - Corp | Geoff | Blue Cross Blue Shield of FL | Health Insurance | 4800 Deerwood Campus Parkway | | Jacksonville | FL | 32246 | 904-905-0243 | 904-367-6178 | Julie.Engelke@bcbsfl.com | 27929.35 |
| 16-016066-00 | MHI - Corp | Geoff | Symetra Financial | Health Insurance Stop Loss | Drive 6025 | | Miami | FL | | 305-716-6143 | | eric.hicks@symetra.com | 35260.6 |
| Mercedes Homes, Inc. Limited Home Warranty | MHI - Corp | Geoff | Preferred Home Insurance Warranty | Insurance Home Warranty | Ron Yelland | 6500 N Wickham Rd., #501 | Melbourne | FL | | 321-242-1789 | 321-242-1789 | ryellend@richomes.com | 22511.4 |
| Mercedes Homes, Inc. Builders Risk Insurance | MHI - Corp | Geoff | Preferred Home Insurance Builders Risk | Insurance Builders Risk | Ron Yelland | 6500 N Wickham Rd., #501 | Melbourne | FL | | 321-751-6146 | 321-242-1789 | ryellend@richomes.com | 200002.38 |
| Mercedes Homes, Inc. General Liability | MHI - IT | Geoff | Preferred Home Insurance General Liability | Insurance General Liability | Ron Yelland | 6500 N Wickham Rd., #501 | Melbourne | FL | | 321-751-6146 | 321-242-1789 | ryellend@richomes.com | 99027.42 |
| 000000488 000 | MHI - Corp | Geoff | Builder's Risk All Other Perils | Insurance - Property - Builders | 438 Walnut Street | | Philadelphia | PA | 19106-3703 | | | | |
| 02740001455 | MHI - Corp | Geoff | ACE | Insurance - Property - Building | 438 Walnut Street | | Philadelphia | PA | 19106-3703 | | | | 0 |
| 000320379 | MHI - Corp | Geoff | ACE | Insurance - Property | 438 Walnut Street | | Philadelphia | PA | 19106-3703 | | | | 0 |
| H62N1787B | MHI - Corp | Geoff | Bonded Builders | Insurance - Auto Liability | 11000 Walnut Street | | Philadelphia | PA | 19106-3703 | 941-745-2534 | | | 0 |
| C4410174 | MHI - Corp | Geoff | ACE-ESIS | Insurance - Workers Comp | 436 Walnut Street | | Philadelphia | PA | 19106-3703 | | | | 0 |
| N60231774 | MHI - Corp | Geoff | American International | D&O Primary 1 | 175 Water Street | | New York | NY | 10038 | | | | 0 |
| 002231471 | MHI - Corp | Geoff | American International Sub | D&O Primary 1 | 100 N. Tampa St | | Tampa | FL | 33602 | | | | 0 |
| ELU10273000 | MHI - Corp | Geoff | XL Specialty Insurance Co. | D&O Primary 2 | 70 Seaview Ave | | Stamford | CT | 06004 | | | | 0 |
| 0630X0000000 | MHI - Corp | Geoff | American International | D&O Primary 3 | 1460 American Lane | | Schaumberg | IL | 60196 | | | | 0 |
| 287224874 | MHI - Corp | Geoff | CNA (American Casualty) | D&O Primary 4 | 101 S. Wacker Dr | | Chicago | IL | 60604 | | | | 0 |
| 5682-84-58 A0541 | MHI - Corp | Geoff | HCC | D&O Primary 5 | 13403 NW Freeway | | Houston | TX | 77040 | | | | 0 |
| 000320369 | MHI - Corp | Geoff | American International South | Insurance - Fiduciary Liability | 100 N. Tampa St | | Tampa | FL | 33602 | | | | 0 |
| 002231458 | MHI - Corp | Geoff | American International | Insurance - Fiduciary Liability | 100 N. Tampa St | | Tampa | FL | 33602 | | | | 0 |
| FG2008001000 | MHI - Corp | Geoff | National Union Fire Insurance | Insurance - Fiduciary Liability | 100 N. Tampa St | | Tampa | FL | 33602 | | | | 0 |
| 8101977307 | MHI - Corp | Geoff | Zurich | Insurance - Excess Fiduciary Liability | 25 Green St | | Farmington | CT | 06032 | | | | 0 |
| 0840071 | MHI - Corp | Geoff | Beazley Insurance Company | Insurance - Excess Fiduciary Liability | 30 Batterson Park Rd. | | Farmington | CT | 06032 | | | | 0 |
| U10772681 | MHI - Corp | Geoff | XL Specialty Insurance Co. | Insurance - Excess Fiduciary Liability | 70 Seaview Ave | | Stamford | CT | 06924 | | | | 0 |
| 0040801? | MHI - Corp | Geoff | Executive Risk Indemnity | Insurance - Excess Fiduciary Liability | 82 Hopmeadow St | | Simsbury | CT | 06070 | | | | 0 |
| 357-9373 | MHI - Corp | Geoff | Chubb | Insurance - Excess Fiduciary Liability | 15 Mountain View Rd | | Warren | NJ | 07059 | | | | 0 |
| 09000000 | MHI - Corp | Geoff | HCC Global Financial | Insurance - Excess Fiduciary Liability | PO Box 1873 | Suite 3300 | Farmington | CT | 06062 | | | | 0 |
| 5900987 | MHI - Corp | Geoff | National Union Fire Insurance | Insurance - Crime Fidelity/Bond | 100 N. Tampa St | Suite 3300 | Tampa | FL | 33602 | | | | 0 |
| 00CFF251000 4000 | MHI - Corp | Geoff | Chubb & Partner | Insurance - Crime Fidelity/Bond | 305 Madison Ave | | Morristown | NJ | 07962 | | | | 0 |
| | MHI - Corp | Geoff | Fidelity/Deposit of MD | Insurance - Inflation Legal Liability | 438 Walnut Street | | Baltimore | MD | 21201 | | | | 0 |
| | | | ACE | | 438 Walnut Street | P.O. Box 1000 | Philadelphia | | 10038 | | | | |
| Suite 915 Dallas Centre - As Amended | MHT - Dallas | Stacey Straub | Dalton Centre LP | Office Lease | 4295 McEwen, Ste 135 | | Dallas | TX | 75244 | 972-960-2500 | | westguppyn-builders.com donatey10@cbrichardellis.com | 1st 0 Amendment |
| Historic Ridge Rd, Inc | MHT - Jacksonville | Stacey Straub | Historic Kings Road, Inc | Office Lease | 2300 Historic Kings Rd, #901 | | Jacksonville | FL | 32257 | | | | 0 New Lease |
| Fort Mill, SC | MHI - Carolinas | Stacey Straub | Investments East LLC | Office Lease | P.O. Box 12000 | | New Bern | NC | 28561 | 704/002/9310 814/725/066 | | | 0 New Lease |
| Live Oak Subdivision | MHI - Austin | Stacey Straub | Live Oak Goltemann | Office Lease | 2000 N Wickham Rd | Suite 1000 | Austin | TX | 78701 | 910/000/9000 | 919/725-0129 | dtarro@media.com | 0 New Lease |
| Harley Office Complex | MHI - Orlando | Stacey Straub | Harley Office Complex LLP | Office Lease | 6500 N Wickham Rd | Suite 301 | Orlando | Onahl | | 32811 407/665-0974 | 321258862 | | 0 |
| Constellation Dr | MHI - IT | John Stellan | Constellation NRG Systems | Software | 75 Henderson Drive West | Wing Market | Canada | | L3R 6H2 | 88511 | | | |
| Dynasoft AX | MHI - IT | John Stellan | Microsoft | Software | 6100 Industrial Rd | | Reno | NV | 75594 | 89511 | | | |
| TaxWorld | MHI - IT | Jim Coleman | Microsoft | Software | P.O. Box 844856 | | Dallas | TX | 75284 | 76728 | | | |
| Websoft | MHI - IT | Jim Coleman | Weproof Software Inc. | Software | 2980 50th St. | | Boulder | CO | 80301 | | | | |
| SmartPull | MHI - IT | Jim Coleman | Crew Mountain Ranch | Software | 2040 Vernon PL | | Boulder | CO | | 80301 | | | |
| SharpPull | MHI - IT | Jim Coleman | Wavexpert Computing | Software | 6000 Boston Source Pkwy | | Melbourne | FL | 33501 | | | | |
| ScriptLogic | MHI - IT | Jim Coleman | ScriptLogic Corp | Software | NW | | Boca Raton | FL | 33487 | | | | |
| VMWare | MHI - IT | Jim Coleman | VMWare Inc. | Software | 3401 Hillview Ave | | Palo Alto | CA | 94304 | | | | |
| Cirix | MHI - IT | Jim Coleman | Cirix Systems Inc. | Software | 851 West Cypress Creek Rd | | Ft. Lauderdale | FL | 33309 | | | | 0 |
| Dell Sales Services As Amended | MHI - IT | Jim Coleman | Dell Computer | Hardware | 2214 West Braker Ln | Bldg 3 | Austin | TX | 78758 | | | | 0 |
| Iron Storage | MHI - IT | Jim Coleman | EDC | Hardware | 175 North Street | | Hopkinton | MA | 01748 | | | | 0 |
| 258000 | MHI - IT | Jim Coleman | TW Telecom | Internet Lines | PO Box 172657 | | Denver | CO | 80217-2587 | | | | 0 |
| 906128109 | MHI - IT | Jim Coleman | Sprint | Internet Lines | PO Box 8077 | Sprint Customer Service | London | KY | 40742 | | | | |
| Elevators and Fire Alarm Monitoring | SOC | John Stellan | Comparks Info Systems | Elevator Preventative Maintenance | 837 Sebastian Blvd | | Sebastian | FL | 27734 | 772-589-0033 | 772-778-5220 | ted.barker@barentsevco.com | |
| Building Generator Maintenance | SOC | John Stellan | Thyssenkrupp Elevator Corporation | Elevator Preventative Maintenance | 2325 14th Avenue | | Vero Beach | FL | 32960 | 321-400-6266 | | | 864.78 |
| Chiller Closed Loop Water Treatment | SOC | John Stellan | NW Power Systems | HVAC Preventative Maintenance | 270 Ocean Street NW | | Palm Bay | FL | 32908 | 321-409-6600 | | | 250.01 |
| Dumpster Service Agreement | SOC | John Stellan | Cherri-Aqua Waste Management | Chiller Closed Loop Water Treatment | 7282 Titoss Drive | | West Melbourne | FL | 32904 | | | | 166.64 |
| Contract dated 6/1/2009 | SOC | John Stellan | Everclean Janitorial Services | Janitorial Service | P.O. Box 372543 | | Satellite Beach | FL | 32937 | 321-631-1614 | 430-565-0125 | | 16925.54 |
| Lawn & Landscape Maintenance | SOC | John Stellan | Brevard Lawns LLC | Lawn & Landscape Maintenance | 1608 Topaz Drive | | Melbourne | FL | 32935 | 321-965-0129 | 321-725-5725 | | 1225.68 |
| HVAC Preventative Maintenance | SOC | John Stellan | Classic, Inc. | HVAC Preventative Maintenance | 6059 West NASA Blvd. | | West Melbourne | FL | 32940 | 321-984-3896 | | | |
| Building & Grounds Pest Control | SOC | Steve Coast Trucks | Alan Pest Control | Building & Grounds Pest Control | 4073 Sweetwater Blvd | NW | PO BOX 7247-7675 | | 32940 | 19 | | | 470 |
| Salaz Ridge | MHT - Corp | Jamie Krispner | GE Cablec/CalCorm Leasing | Equipment lease | 11500 Alterra Parkway | Sugar Land | PHILADELPHIA | PA | 19170 | | | | 5622.29 |
| Fort Worth | MHT - DFW | Park Morris | Fort Worth | Advertising | PO BOX 2037, #100 | Sugar Land | TX | | 77478 | | | | |
| Model Ridge | MHT - DFW | Steve Conrad | Model Ridge | Model Lease | 3701 Gravel Drive | | Flowermound | TX | 75022 | | | | |
| Model Rest - As Amended | MHT - Houston | Steve Conrad | Rylend Homes | Model Lease | 607 E. Sonterra Blvd. | #106 | San Antonio | TX | 78258 | | | | 250.01 |
| Weward Bandits | MHT - San Antonio | Scott Buescher | GMAC | Weward Bandits | 8902 Paragon Place | #100 | San Antonio | TX | 78240 | 210-402-5438 | | | 471.15 notice |
| | MHT - San Antonio | Scott Buescher | Executive Signs | Weward Bandits | 11017 College Oak | Paragon C., Ste 350 | San Antonio | TX | 22230 | | | Keyes | 471.15 notice |
| | KHI - Corp | Scott Buescher | Model Leases | Model Lease | 6902 Paragon Place | | Richmond | VA | | | | Barry Ballinger | 60 day |
| | | | | | | | | | | | | | 4006 |

| Contract # or Lease # | MHI Location | SHI Contact Person | Contracted Counterparty Name | Type of Contract | Street Address | Suite # | City | State | Zip | Phone | Fax | Email | Amount Due to being current |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fee # 14457 | MHI - Corp | Scott Buescher | GMAC | Model Leases | 6602 Paragon Place | Paragon II, Ste 500 | Richmond | VA | 23230 | | | | 0 |
| Fee # 12152 | MHI - Corp | Scott Buescher | GMAC | Model Leases | 6602 Paragon Place | Paragon II, Ste 350 | Richmond | VA | 23230 | | | | 0 |
| Fee # 13443 | MHI - Corp | Scott Buescher | GMAC | Model Leases Back | 6602 Paragon Place | Paragon II, Ste 500 | Richmond | VA | 23230 | | | | 0 |
| Lease for 621 Bismarck Way | MHI - Space Coast Division | Marcus Cain | Edward & Patricia Carroll III | Model Lease Back | 124 Cambridge Court | | Deptford | NJ | 08081 | 856-816-2845 | | | 0 |
| Lease for 331 Cresta Circle | MHI - Space Coast Division | Marcus Cain | Gary & Theresa Newnham | Model Lease Back | 490 James P. Casey | | Bristol | CT | 06010 | 860-582-2245 | | | 0 |
| Lease for 770 Ventura Drive | MHI - Space Coast Division | Marcus Cain | Richard Fitzgerald | Model Lease Back | 4264 Grand Meadow | | Melbourne | FL | 32934 | 321-604-2140 | | | 0 |
| Lease for 1310 Luna Circle, Unit 1 | MHI - Space Coast Division | Marcus Cain | Kohler Family Trust | Model Lease Back Merion Cove Construction of a Distribution System | 4169 Ventura Blvd. | | Rockledge | FL | 32955 | 321-635-8202 | | | 0 |
| 05-0230045-001 | Meritage Homes, Inc. | Sharon Weber | Florida Department of Environmental Protection | Domestic Wastewater Collection/Transmission System | 3319 Maguire Blvd. | Suite 232 | Orlando | FL | 32803-3767 | | | | 0 |
| WC05 0060432-001 | Meritage Homes, Inc. | Sharon Weber | Florida Department of Environmental Protection | Merion Cove Construction of a Water Main Distribution System | 3319 Maguire Blvd. | Suite 232 | Orlando | FL | 32803-3767 | | | | 0 |
| Merion Cove Water Only Certificate of Concurrency Conditional Approval | Meritage Homes, Inc. | Sharon Weber | City of Melbourne | Merion Cove Water Only Certificate of Concurrency Conditional Approval | 900 E. Strawbridge Ave. | | Melbourne | FL | 32901 | 321-727-2900 | 321-953-6207 | | 0 |
| Water Only Certificate of Concurrency Conditional Approval | Meritage Homes, Inc. | Sharon Weber | City of Melbourne | Water Only Certificate of Concurrency Conditional Approval | 900 E. Strawbridge Ave. | | Melbourne | FL | 32901 | 321-727-2900 | 321-953-6207 | | 0 |
| BHE-H22 | Meritage Homes, Inc. | Sharon Weber | Florida Fish and Wildlife Conservation Commission | Merion Cove Gopher Tortoise Take Permit | 620 South Meridian Street | | Tallahassee | FL | 32399-1600 | 850-488-6661 | 850-922-5679 | | 0 |
| 42-009-85560-3 | Meritage Homes, Inc. | Sharon Weber | St. Johns River Water Management District | Merion Cove Environmental Resource Permit | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| 42-009-88096-4 | Meritage Homes, Inc. | Sharon Weber | St. Johns River Water Management District | Merion Cove Letter Modification to Environmental Resource Permit | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| 4409 82272-1 | Meritage Homes, Inc. | Sharon Weber | St. Johns River Water Management District | Swiss Pointe Road Environmental Resource Permit for construction of diagonal road | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| Merion Cove Development Agreement for Merion Cove Subdivision | Meritage Homes, Inc. | Sharon Weber | City of West Melbourne | Merion Cove Development Agreement for Merion Cove Subdivision | 2285 Minton Road | | West Melbourne | FL | 32904 | 321-727-7700 | 321-727-2390 | | 0 |
| C240036-001 | Meritage Homes, Inc. | Sharon Weber | Florida Department of Environmental Protection | Swiss Pointe Construction of a Water Distribution System | 3319 Maguire Blvd. | Suite 232 | Orlando | FL | 32803-3767 | | | | 0 |
| 05-0124469-552 | Meritage Homes, Inc. | Sharon Weber | Florida Department of Environmental Protection | Swiss Pointe Generic Permit for Stormwater Discharge | 2600 Blair Stone Road | | Tallahassee | FL | 32399-2400 | | | | 0 |
| Swiss Pointe Generic Permit for Stormwater Discharge | Meritage Homes, Inc. | Sharon Weber | St. Johns River Water Management District | Swiss Pointe Generic Permit for Stormwater Discharge | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| 40-009-32547-8 | Meritage Homes, Inc. | Sharon Weber | City of Cocoa, Fl. Utilities Department | Swiss Pointe City Acceptance of Water system | 600 School Street | | Cocoa | FL | 32922 | 321-639-7671 | 321-639-7663 | | 0 |
| Swiss Pointe City Acceptance of Water system | Meritage Homes, Inc. | Sharon Weber | Swiss Pointe Condominium Association Corp. | Swiss Pointe Reciprocal Non-Exclusive Retention, Maintenance, and Access Easement Agreement | 2602 S. Fiske Blvd. | | Rockledge | FL | 32955 | | | | 0 |
| Swiss Pointe Reciprocal Non-Exclusive Retention, Maintenance, and Access Easement Agreement | Meritage Homes, Inc. | Sharon Weber | City of Rockledge, FL | | 1600 Huntington Lane | | Rockledge | FL | 32955 | | | | 0 |
| Westwood Sidewalk completion agreement | Meritage Homes, Inc. | Sharon Weber | St. Johns River Water Management District | Westwood Sidewalk completion | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| 40-127-101583-1 | Meritage Homes, Inc. | Sharon Weber | | | | | | FL | | | | | 0 |
| DEV 2005-130 | Meritage Homes, Inc. | Sharon Weber | City of Daytona Beach Development Services Dept/Planning Division | Townhomes at Tuscany Woods Phase 1 Revised PUD | 301 S. Ridgewood Ave. | | Daytona Beach | FL | 32114 | 386-671-8120 | 321-386-8130 | | 0 |
| Townhomes at Tuscany Woods Phase 1 Revised PUBC | Meritage Homes, Inc. | Sharon Weber | City of Daytona Beach Dept/Planning Division | Townhomes at Tuscany Woods Phase 1 Revised PUD | 301 S. Ridgewood Ave. | | Daytona Beach | FL | 32114 | 386-671-8120 | 321-386-8130 | | 0 |
| Townhomes at Tuscany Woods Phase 1 Contract for Plat Recording | Meritage Homes, Inc. | Sharon Weber | City of Daytona Beach Dept/Planning Division | Townhomes at Tuscany Woods Phase 1 Contract for Plat Recording | 301 S. Ridgewood Ave. | | Daytona Beach | FL | 32114 | 386-671-8120 | 321-386-8130 | | 0 |
| 4-127-85756-1 | Meritage Homes, Inc. | Sharon Weber | U.S. Army Corps of Engineers | Townhomes at Tuscany Woods Phase 1 Agreement to Purchase flood impact Fee Credits | P.O. Box 10069 | | Jacksonville | FL | 32120-0069 | | | | 0 |
| SAV-2004-11303-MLH | Meritage Homes, Inc. | Sharon Weber | St. Johns River Water Management District | Tuscany Woods Environmental Resource Permit / Tuscany Woods Impact to Federal Wetlands | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| Tuscany Woods Contract for Plat Recording | Meritage Homes, Inc. | Sharon Weber | City of Daytona Beach Development Services Dept/Planning Division | Tuscany Woods Contract for Plat Recording | 301 S. Ridgewood Ave. | | Daytona Beach | FL | 32114 | 386-671-8120 | 321-386-8130 | | 0 |
| 4-127-101739-1 | Meritage Homes, Inc. | Sharon Weber | St. Johns River Water Management District | Tuscany Woods Environmental Resource Permit - Conceptual | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| 4-127-101778-2 | Meritage Homes, Inc. | Sharon Weber | St. Johns River Water Management District | Reflections Environmental Resource Permit - Phase I | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| Reflections ISPUD Agreement | Meritage Homes, Inc. | Sharon Weber | City of Edgewater, FL | Reflections ISPUD Agreement | 104 North Riverside Drive | P.O. Box 100 | Edgewater | FL | 32132 | 386-242-2400 | | | 0 |
| Live Oak Land Development | Meritage Homes, Inc. | Sharon Weber | City of Deltona | Live Oak Land Development | 2345 Providence Ave. | | Deltona | FL | 32725 | | | | 0 |
| 08A-1804077 | Meritage Homes, Inc. | Sharon Weber | Florida Department of Environmental Protection | Live Smart Estates Driveway Connection Permit | 600 Suwannee Street | | Tallahassee | FL | 32399-0450 | 850-553-6500 | 850-534-7007 | | 0 |
| 05D-190-0224 | Meritage Homes, Inc. | Sharon Weber | Florida Department of Environmental Protection | Live Smart Estates Drainage Connection Permit | 605 Suwannee Street | | Tallahassee | FL | 32399-0450 | 850-553-6500 | 850-534-7007 | | 0 |
| 2008-H-190-13 | Meritage Homes, Inc. | Sharon Weber | Brevard County Environmental | Live Smart Estates Utility Connection Permit | 505 Sovereign Street | | Brooksville | FL | 32399-7211 | 352-799-7211 | | | 0 |
| 44G2867-007 | Meritage Homes, Inc. | Sharon Weber | City of Winter Haven | Live Smart Estates Completion of project infrastructure required for Platting | 451 Third Street, NW | | Winter Haven | FL | 33881 | | | | 0 |
| VO4G/02323G-539 | Meritage Homes, Inc. | Sharon Weber | City of Winter Haven Environmental Protection | Water Distribution System | 3319 Maguire Blvd | Suite 232 | Orlando | FL | 32803-3767 | | | | 0 |
| 4-61/207-K2 | Meritage Homes, Inc. | Sharon Weber | South Florida Water Management District | Resource Permit | 3301 Gun Club Road | | West Palm Beach | FL | 33406 | | | | 0 |

| Contract # or Lease # | Mill Location | HNI Contact Person | Type of Contract | Contract Counterparty Name | Street Address | Address 2 | City | State | Zip | Phone | Fax | Email | Amount Due to bring current |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mercedes Homes, Inc. | Sharon Weber | Waters of Paradise Water, Wastewater and Reclaimed Water System Developer's Service Agreement | Tohopekaliga Water Authority | 121 N. Church Street | 2nd Floor | Kissimmee | FL | 34741 | | | | 0 |
| 0198XAA-030-GCP | Mercedes Homes, Inc. | Sharon Weber | Oakleaf Townhomes General Permit for Stormwater Discharge | Florida Department of Environmental Protection | 7825 Baymeadows Way | Suite B200 | Jacksonville | FL | 32256-7590 | 904-807-3200 | 904-448-4366 | | 0 |
| 0013056-238-GWC | Mercedes Homes, Inc. | Sharon Weber | Oakleaf Townhomes Construction of wastewater collection/transmission system | Floyd Department of Environmental Protection | 7825 Baymeadows Way | Suite B200 | Jacksonville | FL | 32256-7590 | 904-807-3300 | 904-448-4366 | | 0 |
| 20000020063 P-WE | Mercedes Homes, Inc. | Sharon Weber | Oakleaf Townhomes FLL Permit | U.S. Army Corps of Engineers | P.O. Box 4870 | | Jacksonville | FL | 32232-0019 | | | | 0 |
| 40-019-8460041 | Mercedes Homes, Inc. | Sharon Weber | Oakleaf Townhomes Environmental Resource Permit | St. Johns River Water Management District | 4049 Reid Street | P.O. Box 1429 | Palatka | FL | 32178-1429 | 386-329-4500 | | | 0 |
| 13-03378-P | Mercedes Homes, Inc. | Sharon Weber | Homestead PUD (Environmental Resource Permit) | South Florida Water Management District | 3301 Gun Club Road | | West Palm Beach | FL | 33416 | 561-686-8800 | | | 0 |
| FW104-150 | Mercedes Homes, Inc. | Michael Taylor | Properties at or near vicinity of SW 320th St and SW 152nd Ave Wetland Reservoir Section | Department of Environmental Resources Management | 701 NW 1st Court | 6th Floor | Miami | FL | 33136 | 305-372-6567 | 305-372-6467 | | 0 |
| | Mill Texas | Michael Taylor | Oneida Ranch 2A/Tradicions Landscape installation per approved plans | City of Frisco | 6101 Frisco Square Blvd | | Frisco | TX | 75034 | 972-292-5400 | | | 0 |
| | Mill Texas | Paige Shipp | Carrington Village 2 Franchise utility installation | City of Lewisville | 151 W. Church St | | Lewisville | TX | 75057 | 972-219-3400 | 972-219-3410 | | 0 |
| | Mill Texas | Paige Shipp | Carrington Village 2 Transformer, street light and wire installation | Texas New Mexico Power | | | Lewisville | TX | 75057 | 972-219-3400 | 972-219-3410 | | 0 |
| | Mill Texas | Paige Shipp | Carrington Village 2 Tree Cleanup as required for final walk | City of Lewisville | 151 W. Church St | | Lewisville | TX | 75057 | 972-219-3400 | 972-219-3410 | | 0 |
| | Mill Texas | Paige Shipp | Carrington Village 2 Final erosion control as required for final walk | City of Lewisville | 151 W. Church St | | Lewisville | TX | 75057 | 972-219-3400 | 972-219-3410 | | 0 |
| | Mill Texas | Paige Shipp | Carrington Village 2 retail final set pins as required for final walk | City of Lewisville | 151 W. Church St | | Lewisville | TX | 75057 | 972-219-3400 | 972-219-3410 | | 0 |
| | Mill Texas | Paige Shipp | Carrington Village 2 Submit "As-Built" plans to the city as required for final walk | City of Lewisville | 151 W. Church St | | Lewisville | TX | 75057 | 972-219-3400 | 972-219-3410 | | 0 |
| | Mill Texas | Paige Shipp | Carrington Village 2 Execute final walk with city to achieve city acceptance of phase 2 | City of Lewisville | 151 W. Church St | | Lewisville | TX | 75057 | 972-219-3400 | 972-219-3410 | | 0 |
| | Mill Texas | Paige Shipp | Carrington Village 1 Installation of amenity center | City of Lewisville | 151 W. Church St | | Lewisville | TX | 75057 | 972-219-3400 | 972-219-3410 | | 0 |

590566.45

**Mercedes Homes, Inc.**

*Rejected Contracts*

| Contract # or Lease # | MHI Location | MHI Contract Person | Type of Contract | Contract Counterparty Name | Street Address | Address 2 | Address 3 | City | State | Zip | Phone | Fax | Email | Notification Date | Notification Method |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Spring Trails | | | | Land Tejas Spring Trails, Ltd | | | | | | | | | | | |
| Vero Lakes Scattered Lots | MHI - Houston | Randy McGillem | Lot Contract | Lots of St. Lucie, LLC | 200 East Broward Blvd | | | Fort Lauderdale | FL | 33301 | | | | | |
| Oceanside Village and Harbor Cove - As Amended | MHI - Melbourne | John Baric | Lot Contract | Oceanside Village, Inc. | 4 Laguna Street, Suite 201 | Attn: W. Todd Schreiber | Suite 1500 | Eau Gallie | FL | 32548 | | | | | |
| Old Florida | MHI - Jacksonville | Robert Smithwick / Dave Caputo | Lot Contract | Coin Development I, LLC | 3010 South 3rd Street | Attn: John H. Lashier, Jr. | | Jacksonville Beach | FL | 32250 | 904-247-1770 | 904-384-5396 | info@harbor@comcast.net | | |
| Sandler | MHI - Jacksonville | Dave Caputo | Lot Contract | Coin Development II, LLC | 3010 South 3rd Street | Attn: John H. Lashier, Jr. | | Jacksonville | FL | 32250 | 904-247-1770 | 904-384-5396 | jlahier@comcast.net | | |
| Sandler | MHI - Jacksonville | Dave Caputo | Lot Contract | Sandler Chase, LLC | 5851 Timequium Road #301 | | | Jacksonville | FL | 32210 | 904-493-3205 | 904-384-6849 | | | |
| St. James Place | MHI - Jacksonville | Dave Caputo | Lot Contract | St. James Place, LLC | 4315 Pablo Oaks Ct. | Attn: Mike Brenen, Mallory Clyde Holm | Attn: Gregory E. Malanna | Jacksonville | FL | 32224 | 904-482-1114 | 904-482-1101 | | | |
| Timothy Landing Townhomes | MHI - Jacksonville | Dave Caputo | Lot Contract | Timothy's Landing, LP | 2955 Hartley Road / One San Jose Place, Suite 7 | Attn: Hawley Smith, Jr. | | Jacksonville | FL | 32237 | | | | | |
| Victoria Lakes | MHI - Jacksonville | Dave Caputo | Lot Contract | Toria Lakes, Inc. | 6905 North Wickham Road | | | Jacksonville | FL | 32257 | | | | | |
| Arbors/Cascades | MHI - Melbourne | Robert Smithwick | Lot Contract | Cascades Community Developer, Inc. | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Eagle Lake North / Ciceron Ridge | MHI - Melbourne | Robert Smithwick | Lot Contract | Atlantic Community Developers, LLC | 1862 West Hibiscus Boulevard | Attn: Robert M. Kuah / Attn: Hugh M. Evans Jr. | | Melbourne | FL | 32940 | | | | | |
| Manchester Lakes | MHI - Melbourne | Robert Smithwick | Lot Contract | FM Manchester Lakes Holding, LLC | 1670 Atlantic Boulevard, 10475 Fortune Parkway, Bldg 100, Suite 185 | | | Jacksonville | FL | 32207 | 321-953-3300 | 321-984-2890 | | | |
| Manchester Lakes | MHI - Melbourne | Robert Smithwick | Lot Contract | Cedar Evans, Rider, General Counsel | 6905 North Wickham Road | | | Jacksonville | FL | 32256 | 904-459-3400 | 904-984-2890 | | | |
| Meadow Pointe | MHI - Melbourne | Robert Smithwick | Lot Contract | John Dekel, Regional Counsel, KB Home | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | 904-596-6704 | 904-339-9222 | | | |
| Monticello Single Family | MHI - Melbourne | Robert Smithwick | Lot Contract | Meadow Prairie Community Developers, Inc. | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Monticello Single Family | MHI - Melbourne | Robert Smithwick | Lot Contract | Phoenix Community Developers, Inc. | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Park Place/Garden | MHI - Melbourne | Robert Smithwick | Lot Contract | Towns at Monticello Community Developers, Inc. | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Tortino / Cambridge | MHI - Melbourne | Robert Smithwick | Lot Contract | Garden Community Developers, Inc. | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Villas of West Melbourne | MHI - Melbourne | Robert Smithwick | Lot Contract | Cambridge Community Developers, Inc. | 200 Ocean Avenue, Suite 202 | Attn: Bob Morse | | Melbourne Beach | FL | 32951 | 321-728-8938 | 321-728-8911 | | | |
| Villas of West Melbourne | MHI - Melbourne | Robert Smithwick | Lot Contract | Jadsky Development, LLC | 215 Knobb East Drive | Attn: Derek Kurtz | | Orlando | FL | 32801 | 407-418-6268 | 407-843-4444 | | | |
| Ham Brown Road | MHI - Orlando | Cristina Quintana | Lot Contract | Henry C. Yates | 3825 Canoe Creek Road | | | St. Cloud | FL | 34772 | | | | | Attn: Stephen Miles, Jr. |
| Ham Brown Road | MHI - Orlando | Cristina Quintana | Lot Contract | Overstreet, Miles, Ritoh & Gamble, P.A. | 100 Church Street, 1655 Royal Lane, Suite 103 | Attn: Ed Hoke | | Kissimmee | FL | 34741 | | | | | |
| Oaks Phase II (Odanilo Area) | MHI - Orlando | Cristina Quintana | Lot Contract | Oneonta Development, Ltd | 6966 North Wickham Road | Attn: Robert M. Kuah | | Dallas | TX | 75229 | | | | | |
| Weldiva Springs | MHI - Orlando | Cristina Quintana | Lot Contract | Sweetwater Community Developers, LLC | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Windsor Lakes Teolon/The Highlands at Teolon | MHI - Orlando | Cristina Quintana | Lot Contract | Windsor Lakes Community Developers, Inc. | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Silver Leaf | MHI - Tampa | Kirk Malone | Lot Contract | Teolon Community Developers, Inc. | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Silver Leaf | MHI - Tampa | Kirk Malone | Lot Contract | Silver Leaf Community Developers, Inc. | 6905 North Wickham Road | Attn: Robert M. Kuah | | Melbourne | FL | 32940 | | | | | |
| Canyon Gate at Park Lakes Section 11 - 70' Lots | MHI - Houston | Tom Cawthon | Lot Contract | MHI Partnership, LTD. | 7676 Woodway, Suite 104 | Attn: Courtney P. Brown | | Houston | TX | 77063 | 713-952-6767 | 713-952-5837 | | | |
| Canyon Gate at Park Lakes Section 11 - 70' Lots | MHI - Houston | Tom Cawthon | Lot Contract | Land Tejas Park Lakes East, LTD. | 2450 Fondren, Suite 210 | Attn: Patrick S. Bullard | | Houston | TX | 77063 | 713-783-6702 | 713-783-2673 | | | |
| Inverness Estates 55 foot lots | MHI - Houston | Tom Cawthon | Lot Contract | Land Tejas Park Lakes East, LTD. | 2450 Fondren, Suite 210, 5000 IH 10 West, Suite 700 | | | Houston | TX | 77063 | 713-783-6702 | 713-783-2673 | | | |
| Inverness Estates 55 foot lots | MHI - Houston | Tom Cawthon | Lot Contract | 2920 Ventura, LTD. | One Riverway, Suite 2050 | Attn: M. Israel Fogiel | | San Antonio | TX | 78230 | | 210-344-3137 | | | |
| Inverness Estates 55 foot lots | MHI - Houston | Tom Cawthon | Lot Contract | Great America Companies, Inc. | 8000 IH 10 West, Suite 700 | Attn: William P. Garrett | | Houston | TX | 77056 | | 713-965-9991 | | | |
| Inverness Estates 65 foot lots | MHI - Houston | Tom Cawthon | Lot Contract | 2200 Venture, LTD. | One Riverway, Suite 2050 | Attn: M. Israel Fogiel | | San Antonio | TX | 78230 | | 210-344-3137 | | | |
| Inverness Estates 65 foot lots | MHI - Houston | Tom Cawthon | Lot Contract | Great America Companies, Inc. | One Riverway, Suite 2050 | Attn: M. David | | Houston | TX | 77056 | | 713-965-9991 | | | |
| Sienna Plantation | MHI - Houston | Tom Cawthon | Lot Contract | Sienna/Johnson Development, L.P. | 5777 Sienna Parkway, Suite 100 | Attn: Michael J. Smith | | Missouri City | TX | 77459 | 281-778-7777 | 281-778-7778 | | 40011 | Letter |
| Napa Oaks | MHI - San Antonio | Randy McGillem | Lot Contract | Napa Oaks S.A., LTD. | 3818 Pleasanton Pkwy #200 | Attn: James Jaglet | | San Antonio | TX | 78251 | 210-448-0600 | 210-448-0805 | | | |
| Napa Oaks | MHI - San Antonio | Randy McGillem | Lot Contract | Johnson, Christopher, Javore & Cochran, Inc. | 5802 NW Expressway | Attn: Wylie W. Javore / Attn: William P. | | San Antonio | TX | 78231 | 210-733-6235 | 210-733-0374 | | | |
| Flintrock Falls | MHI - Austin | Randy McGillem | Lot Contract | Flintrock II, LTD. | 1213 Ranch Road 620 South, Suite 200 | Attn: James T. Cameron | | Austin | TX | 78757 | 512-263-2214 | 512-263-2318 | | | |
| Flintrock Falls | MHI - Austin | Randy McGillem | Lot Contract | Strasburger & Price, L.L.P. | 600 Congress Avenue, Suite 1600 | | | Austin | TX | 78701 | 512-499-3602 | 512-499-3600 | | | |

| Contract # or Lease # | Contract Counterparty Name | Type of Contract | NHt Contact Person | NHt Location | Address 3 | Address 2 | Street Address | City | State | Zip | Phone | Fax | Email | Notification Date | Notification Method |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rim Rock | Lamar Homes of Texas, LTD. | Lot Contract | Randy McGillem | MHT - Austin | Attn: James Giddens, James Dorney, Galen Hipsicht and Brian Sealtoff | | 12201 Renaissance Blvd. Building 4, Suite 100 | Austin | TX | 78759 | 512.418.0478 | | | | |
| Rim Rock | Buffington & Messina, P.C. | Lot Contract | Randy McGillem | MHT - Austin | | Attn: Blake Buffington | 1710 West Sixth Street, 2929 W. 5th Street, Suite A | Austin | TX | 78703 | | 512.472.0180 | | | |
| Rowe Lane | The Commons at Rowe Lane, L.P. | Lot Contract | Randy McGillem | MHT - Austin | | Attn: Lee Nicol | 811 Barton Springs Rd., Suite 888 | Fort Worth | TX | 76107 | 817.332.9500 | 817.332.1400 | | | |
| Rowe Lane | Miner, Joseph & Thornhill, P.C. | Lot Contract | Randy McGillem | MHT - Austin | | Attn: Joseph M. Joseph | 4050 Park Blvd | Austin | TX | 78704 | 512-476-1075 | 512-476-5838 | joseph@mjpc.com | | |
| Forest Meadow | Meritage Homes of Texas, LLC | Lot Contract | Stewart Parker | MHT - Dallas | | Attn: Danny Stalsky | 2745 North Dallas Parkway, Suite 600 | Plano | TX | 75093 | 972-543-3706 | 972-767-4015 | | | |
| Forest Meadow | Meritage Homes of Texas, LLC | Lot Contract | Stewart Parker | MHT - Dallas | | Attn: Lynn Coskins | | Plano | TX | 75093 | 972-543-8114 | 480-627-5038 | | | |
| Trails of Glenwood 50s & 70s | The Stoddard Group, LTD | Lot Contract | Stewart Parker | MHT - Dallas | | Attn: Harold Heligan, Esq. | 4225 Naaman Drive 10,000 N. Central Expressway, Suite 900 | Carrollton | TX | 75010 | 972-670-2118 | 972-387-1845 | harold@holigan.com | | |
| Trails of Glenwood 60s & 70s | The Stoddard Group, LTD | Lot Contract | Stewart Parker | MHT - Dallas | | Attn: Walter A. Buberg, Esq | 10,000 N. Central Expressway, Suite 900 | Dallas | TX | 75231 | 214-884-2940 | 214-884-5641 | wuberg@holigan.com | | |
| Dominion of Panther Creek | The Stoddard Group, LTD | Lot Contract | Stewart Parker | MHT - Dallas | | Attn: Walter A. Buberg, Esq | 4225 Naaman Drive | Carrollton | TX | 75010 | 972-670-2118 | 972-387-1845 | harold@holigan.com | | |
| Woodland Estates | Arcadia Land Company 20, LTD | Lot Contract | Stewart Parker | MHT - Dallas | | Attn: John Hodge | 15323 Dallas Parkway, Suite 200 | Dallas | TX | 75230 | 972-774-4110 | 972-774-4111 | jhodge@airmail.net | | |
| Woodland Estates | Clements, Allen, Woods & Margolis, P.C. | Lot Contract | Stewart Parker | MHT - Dallas | | Attn: Robert Allen | 12201-B Plaza Trace Pkwy, Bld. 2 | Addison | TX | 75001 | 972-991-2800 | 972-991-2801 | rallen@siemensallen.com | | |
| Garlic Creek West | Centex Homes | Lot Contract | Randy McGillem | MHT - Austin | | c/o Bryan Swindell | 12201-B Plaza Trace Pkwy, Bld. 2 | Austin | TX | 78727 | 512-785-0170 | 512-785-0963 | | | |
| Garlic Creek West | Centex Homes | Lot Contract | Randy McGillem | MHT - Austin | | Attn: Clint E. Jones | 12201-B Plaza Trace Pkwy, Bld. 2 | Austin | TX | 78727 | 512-332-3325 | 512-692-3981 | | | |
| Cold Springs | Centex Homes | Lot Contract | Randy McGillem | MHT - Austin | | c/o Bryan Swindell | 12201-B Plaza Trace Pkwy, Bld. 2 | Austin | TX | 78727 | 512-785-0170 | 512-785-0963 | | | |
| Cold Springs | Centex Homes | Lot Contract | Randy McGillem | MHT - Austin | | Attn: Clint E. Jones | 12201-B Plaza Trace Pkwy, Bld. 2 | Austin | TX | 78727 | 512-332-3325 | 512-692-3981 | | | |
| Fern Meadows Phase 2 | Fennwoodnest, LLC | Lot Contract | Robert Smolwick | MH - Melbourne | | Attn: Clint E. Jones, Attn: Arthur F. Evans, III | 1682 West Hibiscus Blvd. c/o Forest City Land Group, Inc. | Melbourne | FL | 32901 | | | | | |
| Mill Creek | FC Mill Creek, LLC | Lot Contract | John Ludwig | MH of Carolinas | | 13801 Reese Blvd. West Suite 150 | 100 North Tryon Street | Huntersville | NC | 28078 | | | | | |
| Mill Creek | Moore & Van Allen PLLC | Lot Contract | John Ludwig | MH of Carolinas | | Attn: J. Christopher Oakes | 100 North Tryon Street 2001-B Plantation Center Drive | Charlotte | NC | 28202 | 713-861-6013 | | | | |
| Lake Ridge | Drake Dementlain, LLC | Lot Contract | John Ludwig | MH of Carolinas | | Attn: Jeff LaForce, Attn: F. Eugene Allison | 1100 Navaworth Avenue, Suite 200 | Matthews | NC | 28105 | | 704-321-2181 | | | |
| Lake Ridge Silver Run | KJH Palmer & Thigpen, P.A. Silver Run Road, LLC | Lot Contract | John Ludwig | MH of Carolinas | | Attn: Harold Barnes | 9400 Pendennis Lane | Charlotte | NC | 28204 | 704-534-2741 | 704-332-8254 | | | |
| Harpers Mill Lots | Hanzars Mill Community Developers, LLC | Lot Contract Raw Land Purchase | Jim Sigraud | MH of Carolinas | | Attn: Robert M. Kroh 1710 Westminster | 6955 North Wickham Road | Charlotte | NC | 28210 | | | | | |
| Criabe Ranch Phase 2 | S.W. Cables | Lot Contract | Jim Sigraud | MHT | | c/o R. Scott Alagood | | Melbourne Denton | FL TX | 32940 76205 | | 940-891-004 | | | |
| Billboard- Quarry Lake | Sign Ad | Billboard- Quarry Lake | Jeff Menzel | MHT-Austin Division | | | P.O. Box 8625 | Houston | TX | 77248 | 713-861-6013 | | | | |
| Billboard- Rim Rock | David Jellison | Billboard- Rim Rock | Jeff Menzel | MHT-Austin Division | | | 8400 Jamestown Dr. | Austin | TX | 78759 | 512-821-0106 | | | | |
| Ground Sign- Rim Rock | Motivational Systems | Ground Sign- Rim Rock | Jeff Menzel, John Kavalianskas | MHT-Austin Division | | | Dept. 8094 | Los Angeles | CA | 90084 | 612-414-8246 | | | | |
| Dated 10/1508 and prior | Builder Homesite, Inc. | Internet advertising | Jeff Menzel | MH - Austin | | | 11500 Hodgeon Avenue North | Austin | TX | 78750 | | | | | |
| 407 281-5700 000 3146 | AT&T Bankruptcy Dept | Phone Lines | Dan Bernardi | MH - Orlando | | | 1500 Pass Blvd | Fort Worth | TX | 76155 | 800-676-9304 | 800-676-9304 | cfnf70@att.com | 38885 | Email |
| 704 559-6500 001 3193 | AT&T Bankruptcy Dept | Phone Lines | Dan Bernardi | MH of the Carolinas | | | 1500 Pass Blvd | Fort Worth | TX | 76155 | 800-676-9304 | 800-676-9304 | chnf70@att.com | 38934 | Email |
| 813 627-4628 000 621 | Verizon Bankruptcy Dept | Phone Lines | Dan Bernardi | MH - Tampa | | | 404 Brock Drive | Bloomington | IL | 61701 | 800-345-2816 800-220-2421 | | bcc.orders@verizon.com | 38957 | Email |
| Liberty Manual 5-265517-4200 | Liberty Systems Holding Company d/b/a Saregenit | Workers Compensation Insurance | Geoff Jacoby | MH - Corp | | Suite 850 | 3901 Premier North Drive 100 NE 100th Ave | Tampa | FL | 33618 | 815-269-1469 | | Gary.Sundholm@LibertyMutual.com | 38994 | Letter |
| Monthly Tractor Service | Legal tracking system | Legal tracking system | John Barlic | MH - Corp | | Suite 600 | Yen Carpenter Parkway | Bellevue | WA | 98004 | | | | | |
| Pivotal | CDC Software | Software | Jim Coleman | MH - IT | | | 2253 Professor Avenues | Atlanta | GA | 30328 | | | | | |
| On Base | Imaging Solutions Group | Software | Jim Coleman | MH - IT | | Ste 603 | PO Box 940714 | Cleveland | OH | 44115 | | | | | |
| Right fax | RightFax Inc | Software | Jim Coleman | MH - IT | | | 13443 35th Street Blvd | Maitland | FL | 32794 | | | | | |
| AppWright | AppWright Inc | Software | Jim Coleman | MH - IT | | | PO Box 404627 | Jacksonville | FL | 32084 | | | | | |
| Symatec | Sage Software | Software | Jim Coleman | MH - IT | | | PO Box 1450 NW-6286 | Atlanta Minneapolis | GA MN | 30384 55485 | | | | | |
| AutoCad | DataLink | Software | Jim Coleman | MH - IT | | | PO Box 17087 | Baltimore | MD | 21297-1687 | | | | | |
| HEAT 473010810 | Front Range/Motion Systems | Software Service Cards | Jim Coleman, Jim Coleman | MH - IT | | Ste 330E | Dept 0493 PO Box 120493 851 Trafalgar Court | Dallas Maitland | TX FL | 75312 32751 | | | | | |
| 201572867 201572857 | Global Crossings | Long Distance MUG | Jim Coleman, Dan Bernardi | MH - IT | | | PO Box 741376 7701 Anderson Road | Cincinnati Tampa | OH | 45274-1376 33534 | | | | | |
| 404-R11-1017-017 | AT&T | Club Account | Jim Coleman | MH - IT | | | 1500 Pass Blvd 1200 South Banana River Drive | Fort Worth | TX | 76155 | 800-676-9304 | 321-453-0102 | chnf70@att.com | | |
| | Blue Bell Lawn Services | Lawn Service | David George | SOC | | | | Merritt Island | FL | 32952 | | | | | |
| Contract dated before 5/19/09 SOC | Everclean Janitorial Services | Janitorial Service | John Statlen | SOC | | | P.O. Box 372843 | Satellite Beach | FL | 32937 | 321-821-1514 | | | | |

2

Case 2:09-cv-03047-SEP-CHN Document 490 Filed 09/30/09 Page 67 of 69   Page 68 of 69

| Contract # or Lease # | MHI Location | MHI Contact Person | Type of Contract | Contract Counterparty Name | Street Address | Address 2 | Address 3 | City | State | Zip | Phone | Fax | Email | Notification Date | Notification Method |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| H74048523 | Space Coast Tmts | Joanne Ringrose | Monitoring Service | ADT | PO Box 650495 | | | Dallas | TX | 75265-0495 | 1-800-662-5378 | | | 40025 | Telephone |
| 8000-5000-0385-8056 | Space Coast Tmts | Joanne Ringrose | Postage Meter | Pitney Bowes | PO BOX 856042 | | | LOUISVILLE KY | | 40285 | 40285 | | | | |
| Iron Mountain | MHI - Corp | Ron Yelland | Document Storage. | Iron Mountain | P O Box 27128 | | | New York | NY | 10087 | 0488374129 | | | 10087 | |
| Office Lease | MHI - Orlando | Donna Sadowski | Advertising | Haley Office Complex Clemons Publishing | PO Box 51000 | | | Jacksonville | FL | 32240 | 904-215-9467 904-264-0602 | | | | |
| Nolar News | MHI - Jacksonville | Donna Stallwell | Advertising | Bisley Publishing | 10 N. Newnam St | | | Jacksonville | FL | 32202 | 904-366-2466 904-353-2628 | | | | |
| Realty Builder Construction | MHI - Jacksonville | | Advertising | | 711 Margaret St | | | Jacksonville | FL | 3221 | | | | | |
| Answering Service 1194448 | MHI - Jacksonville MHI -IT MHI -IT | Rosey Maverty Jim Coleman Jim Coleman | Answering Service Palm Box phones | Answerphone, Inc. ACC Business ACC Business | 400 West Ave. 400 West Ave. | | | Rochester Rochester | NY NY | 14611 14611 07181- 0074 | 866-910-7509 866-910-7509 | | | | |
| 1173667 | | | | | | | | | | | | | | | |
| Tsulan | MHI - Tampa | Pam Malone | Advertising | CBS Outdoor/Viacom | PO Box 33074 | | | Newar | NJ | 33913 | | | | | |
| Oak Landing | MHI - Orlando | Pam Malone | Advertising | Outdoor Advertising | 620 Wedgewood Lane | | | Lakeland | FL | 32804 | | | | | |
| Toulon/Grand Hampton | MHI - Tampa | Pam Malone | Advertising | Florida Home Buyer Media | 3100 Olive Ave | | | Orlando | FL | 33803 | | | | | |
| Model Rent | MHT - Houston | Tracie Simmons | Model Rent | Dale & Shawn Mehr | 19222 Beckworth Ave | Ste 260 | | Torrence | CA | 77346 | | | | | |
| Model Rent | MHT - Houston | Tracie Simmons | Model Rent | George Berentz | 9734 Lansing Meadows | | | Humbel | TX | | | | | | |
| 567737 | MHT - Houston | Jim Buetcher | Advertising | Williams Scotsman | 10865 John Ralston Road | | | Houston | TX | 77044 | 800-782-1500 713-4664838 | | info@mobil.com | | |
| DBOCA | MHT - Houston | Pam Ress | Advertising | New Home Guide | PO Box 402035 | | | Atlanta | GA | 30384 | 972-239-2399 | | | | Letter |
| 165020510 | MHT - Houston | Jim Buetcher | Mobile Mini Inc | Sales Trailer Sienna | 7426 S Kyrene Rd Ste #101 | | | Tempe | AZ | 85283 | 800-456-1751 480-894-1505 | | Contracts@mobilemini.com | | |
| SA Magazine | MHT-San Antonio | Steve Correll | SA Magazine | PixelWorks Corp. | 8603 Bolts Ln. | | | San Antonio Colorado Springs | TX CO | 78217 80909 | 210-826-5375 210-826-2856 718-550-9502 | | mhall@newhopesanantonio.com | Louis Doucette 210-410-0014 | |
| Magazine | MHT-San Antonio | Steve Correll | Magazine | The Showcase | 3508 Galley Rd. | | | Liberty Hill | TX | 78642 | 719-550-9500 718-550-9502 | | belong97@webtb.com | 40090 | Phone call |
| Sign, CR 300 @ State Hwy 29 | MHT-San Antonio | Jeff Menzel | Sign Rental | John D Austin | 2002 County Road 201 | | | Melbourne | FL | 32940 | | | | 38844 | Phone call |
| Volusia/Summer Ridge | MHI | Bob Kuah | Model Lease | Florida Leasing Ventures | 6955 North Wickham Road | | | Melbourne | FL | 32940 | | | | 38844 | Phone call |
| Volusia/Oakhurst 1813 | MHI | Bob Kuah | Model Lease | Florida Leasing Ventures | 6955 North Wickham Road | | | Melbourne | FL | 32940 | | | | 38844 | Phone call |
| Melbourne/Sonrasia Unit 1 | MHI | Bob Kuah | Model Lease | Florida Leasing Ventures | 6955 North Wickham Road | | | Melbourne | FL | 32940 | | | | 38844 | Phone call |
| MelbourneBolsh | MHI | Bob Kuah | Model Lease | Florida Leasing Ventures | 6955 North Wickham Road | | | Melbourne | FL | 32940 | | | | 38844 | Phone call |
| Tampa/Toulok/Windmere Vineyard Glen, Phase 1, Map 2 Sidewalk completion agreement. | Mercedes Homes, Inc. | Sharon Weber | Sidewalk Tropical Cove Environmental Resource Permit | City of Charlotte, NC | 600 East Fourth Street | | | Charlotte | NC | 28202- 2844 | | | | | |
| Vineyard Glen, Phase 1, Map 1 Sidewalk completion agreement | Mercedes Homes, Inc. | Sharon Weber | Tropical Cove Environmental Resource Permit | City of Charlotte, NC | 600 East Fourth Street | | | Charlotte | NC | 28202- 2844 | | | | | |
| 42 015-93926-2 | Mercedes Homes, Inc. | Sharon Weber | Codes Cove Environmental Resource Permit | St Johns River Water Management District | 4049 Reid Street | P.O. Box 1429 | | Palatka | FL | 32178- 1429 | 386-329-4500 | | | | |
| 56-34149-P | Mercedes Homes, Inc. | Sharon Weber | Tropical Cove Environmental Resource Permit | South Florida Water Management District | 2301 McGregor Blvd. | | | Fort Myers West Palm Beach | FL FL | 33901 | 33901 239-338-2929 | | | | |
| 56-02215-W | Mercedes Homes, Inc. | Sharon Weber | Celebration Pointe Water Use Celebration Pointe | South Florida Water Management District | 3301 Gun Cub Road | | | West Palm Beach | FL | 33406 | 561-686-8800 | | | | |
| 56-02197-P | Mercedes Homes, Inc. | Sharon Weber | Environmental Permit Celebration Pointe Construction of a Domestic Wastewater | South Florida Water Management District | 3301 Gun Cub Road | | | West Palm Beach | FL | 33406 | 561-686-8800 | | | | |
| 0041075-133-DWC | Mercedes Homes, Inc. | Sharon Weber | Collection/Transmission System | Florida Department of Environmental Protection | 400 North Congress Ave | Suite 200 | | West Palm Beach | FL | 33401 | | | | | |
| 0381062-206-DSGP | Mercedes Homes, Inc. | Sharon Weber | Celebration Pointe Construction of a Water Distribution System | Florida Department of Environmental Protection | 400 North Congress Ave | Suite 200 | | West Palm Beach | FL | 33401 | | | | | |
| Celebration Pointe Subdivision Improvement Agreement, Celebration Pointe Road Improvement Agreement, Jenkins Road | Mercedes Homes, Inc. | Sharon Weber | Celebration Pointe Subdivision Improvement Agreement, Celebration Pointe Road | St. Lucie County | 2300 Virginia Ave. | 2nd Floor | | Ft. Pierce | FL | 34982 | | | | | |
| Celebration Pointe Subdivision Improvement Agreement, Swain Road | Mercedes Homes, Inc. | Sharon Weber | Celebration Pointe Subdivision Improvement Agreement, Swain Road | St. Lucie County | 2300 Virginia Ave. | 2nd Floor | | Ft. Pierce | FL | 34982 | | | | | |

| Contract # or Lease # | MHI Location | MHI Contact Person | Type of Contract | Contract Counterparty Name | Street Address | Address 2 | Address 3 | City | State | Zip | Phone | Fax | Email | Notification Date | Notification Method |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Celebration Pointe Subdivision Improvement Agreement, Peterson Road | Mercedes Homes, Inc. | Sharon Weber | Celebration Pointe Subdivision Improvement Agreement, Peterson Road | St. Lucie County | 2300 Virginia Ave. | 2nd Floor | | Ft. Pierce | FL | 34982 | | | | | |
| Celebration Pointe Vegetation Removal Permit | Mercedes Homes, Inc. | Sharon Weber | Celebration Pointe Vegetation Removal Permit | St. Lucie County | 2300 Virginia Ave. | 2nd Floor | | Ft. Pierce | FL | 34982 | | | | | |
| Celebration Pointe Generic Permit for Stormwater Discharge | Mercedes Homes, Inc. | Sharon Weber | Celebration Pointe Generic Permit for Stormwater Discharge | Florida Department of Environmental Protection | 400 North Congress Ave. | Suite 200 | | West Palm Beach | FL | 33401 | | | | | |