## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION | MDL No.: 02047<br>Case No.: 12-0498<br>Section L |
| THIS DOCUMENT RELATES TO: | |
| RICHARD and CONSTANCE ALMEROTH,<br>et al. v.<br>TAISHAN GYPSUM CO., LTD. f/k/a<br>SHANDONG TAIHE DONGXIN CO., LTD., et al. | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

_____/

## MEMORANDUM OF LAW IN SUPPORT OF WOODLAND ENTERPRISES, INC.'S MOTION TO DISMISS WITH PREJUDICE THE CLAIMS BROUGHT AGAINST IT IN THE ALMEROTH OMNIBUS  CLASS ACTION COMPLAINT (OMNI XIII)

Defendant, Woodland Enterprises, Inc. ("Woodland"), hereby files its Memorandum of Law in Support of Woodland's Motion to Dismiss with Prejudice the Claims Brought Against it by Plaintiff **Patrick Gorie** ("Gorie" or "Plaintiff") in the Almeroth Omnibus Class Action Complaint (Omni XIII) [1] (the "Motion").

### MEMORANDUM OF LAW [2]

**A.**   **Plaintiff's negligence claim is entirely without merit, and, along with Plaintiff's other tort claims (Counts I, II, III and XI) is barred in whole or in part by Florida's Economic Loss Rule.**

   1.   Plaintiff cannot state a claim for negligence because Woodland did not breach a duty recognized by Florida law.

---

[1]      This Memorandum cites to the Omnibus Complaint as "Cmplt. ¶ ___."

[2]      A motion to dismiss under Rule 12(b)(6) should be granted if the allegations in the complaint, even if proven true, would not entitle the plaintiff to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); Fed. R. Civ. P. 12. Plaintiffs' obligation "to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions." *Id.* at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The Omnibus Complaint alleges that Woodland somehow owed Plaintiff a duty to exercise reasonable care in "a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, j) marketing, and/or k) selling" the drywall in question. Cmplt. ¶ 42. The Complaint further alleges that Woodland had a duty to provide Plaintiff with certain warnings about the drywall. *Id.* ¶ 45. Even assuming the truth of these obviously specious allegations, they fail to state a claim for relief.

The most fundamental problem with Plaintiff's negligence theory is that, as a matter of law, Woodland did not owe Plaintiff a duty in negligence. The March 18, 2011 omnibus order in *Bennett v. Centerline Homes, Inc. et al.*, No. 502009-CA-014458 (Fla. 15th Jud. Cir.), attached hereto as **Exhibit A** for the Court's convenience (the "Omnibus Negligence Order"), explains why this is so. *Bennett* is a consolidated state court action that, like this one, pits homeowners with defective drywall claims against homebuilders. Just as the Plaintiff is attempting to do here, the homeowners in *Bennett* attempted to assert a negligence claim based on their homebuilders' purported failure to protect them from a latent defect -- namely, hazardous "Chinese manufactured" drywall. The issue of whether the homebuilders owed a duty in negligence was, the court held, "a question of law." *Id.* at 1.

In what appears to be a case of first impression in Florida, the court in *Bennett* ruled that the homebuilders did not have a duty "to inspect, test or warn" the plaintiffs about the allegedly defective drywall in their homes. The court explained that where, as here, the purported defect is "latent," the law imposes no such duties "unless the product is inherently dangerous." *Id.* at 2; *see O'Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542-43 (S.D. Fla. 1988) (dismissing negligence claim as manufacturer had no duty to warn); *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 483-84 (S.D. Fla. 1990) ("[A] distributor need not inspect for latent

defects unless the product is inherently dangerous."). Because even *defective* drywall does not fit into the narrow "inherently dangerous" category, the homebuilders had no duty to inspect the drywall, to test it, or to warn the plaintiffs about it. Omnibus Negligence Order, pg. 2.[3] The only way for the negligence claims to survive, the court held, was for the homeowners to allege "in good faith" that the homebuilders had "actual or implied notice" of the alleged drywall defects. *Id.*; *see Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) ("[A] retailer could be held liable to a third party in a negligence action … only if the retailer could be charged with actual or implied knowledge of the defect."); *Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326 (Fla. 3d DCA 1987) (same); *see also Mendez*, 738 F. Supp. at 483-84.

Because the purported drywall defects at issue in this case were indisputably latent (*see, e.g.*, Cmplt. ¶¶ 19, 70), Plaintiff's negligence claim cannot survive because he cannot allege – in good faith – that Woodland had "actual or implied notice" of the defects. The boilerplate and unsupportable assertion that Woodland "knew or should have known" that the drywall would "harm" the Plaintiff (*id.* ¶ 43) is a bare legal conclusion that cannot state a claim for relief under the legal standards required by this Court, particularly a legal conclusion premised on a negligence theory that flies in the face of basic Florida law. *See* Omnibus Negligence Order, pg. 2 (requiring more specific allegations); *Ashcroft*, 129 S.Ct. at 1949.

2. Plaintiff's tort claims (Counts I, II, III, & XI) are barred by Florida's economic loss rule.

To the extent that Plaintiff seeks to sue Woodland in tort for economic losses, those claims should be dismissed under Florida's products liability economic loss rule ("ELR").

---

[3]    "[A] relatively small group of products has been included by the Florida courts in this inherently dangerous category. They include highly toxic materials, second hand guns and drugs…. In other words … a commodity burdened with a latent danger which derives from the very nature of the article itself." *O'Connor*, 699 F. Supp. at 1542-43 (internal citations omitted). By way of example, Florida courts have ruled that jet skis (*id.* at 1543), motorcycles (*Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994)), and automobiles (*id.*) are not "inherently dangerous."

Florida courts have defined the products liability ELR as "disappointed economic expectations" where the product "does not work for the general purposes for which it was manufactured or sold," and "the loss of the benefit of the bargain." *See In re Chinese Mfr. Drywall*, 680 F. Supp. 2d at 790 (internal marks and citation omitted). In *Casa Clara Condominium Association v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla. 1993), the Florida Supreme Court affirmed dismissal of the plaintiff-homeowners' negligence claims against a concrete supplier notwithstanding the lack of privity between the parties. The Court held that the supplier's defective concrete had not damaged anything other than the plaintiffs' dwellings and, consequently, had not caused them any non-economic damages. *Id.* at 1247. Because the plaintiffs were seeking *only* economic damages, the economic loss rule barred their tort claims against the supplier. *Id.* at 1246-48.

The same reasoning applies here. The products liability strand of the ELR bars Plaintiff from suing Woodland in tort for purely economic losses and Plaintiff is limited to recovering in tort for only *non*-economic losses (e.g., for personal injury) and damages to property other than the house itself.[4] *See Casa Clara*, 620 So. 2d at 1247-48. Plaintiff must therefore, at a minimum, replead his tort claims to seek only non-economic losses (if such claims are not otherwise dismissed for the other reasons set forth herein).

**B.    Plaintiff has not stated a claim for negligence per se (Count II).**

Aside from being barred by the economic loss rule, Plaintiff's negligence per se claim (Count II) is also poised for dismissal because the Omnibus Complaint does not set forth the essential elements of this tort. Negligence per se results from a violation of a "statute which

---

[4]    Plaintiff also cannot recover economic losses because she has <u>suffered</u> no such losses. The Court has found that "the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed." *In re Chinese Manufactured Drywall Products Liability Litig.*, 680 F. Supp. 2d 780, 799 (E.D. La. 2010).

establishes a duty to take precautions to protect a <u>particular class of persons</u> from a <u>particular type of injury</u>." *DeJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 201 (Fla. 1973) (emphasis added).

Plaintiff has not stated a claim for negligence per se. First, he has not identified a statute that Woodland allegedly violated, much less explained how that violation occurred. Rather, the Omnibus Complaint asserts only that "Defendants," as an undifferentiated group, somehow violated "duties," including "those imposed under the International Building Code ('IBC') and other State and local Building Codes" and "furnished the drywall in violation of ASTMC C 1396/C 1396M-069." Cmplt. ¶ 52. Plaintiff, however, does not state how Woodland or any of the other unspecified "Defendants" have violated this code. Plainly, such vague and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at the initial pleading stage. *Ashcroft*, 129 S.Ct. at 1949.

Second, and more fundamentally, because the "State and local Building Codes" that Woodland allegedly violated are "designed to protect the <u>general public</u> rather than a particular class of individuals," the violation of a building code cannot possibly establish negligence per se. *Russ v. Wollheim*, 915 So. 2d 1285, 1286 n.1 (Fla. 2d DCA 2005) (emphasis added). In other words, Plaintiff's negligence per se claim appears to be nothing more than a repackaged negligence claim. It should be summarily dismissed for that reason as well.

**C.     Plaintiff cannot sue Woodland in strict liability (Count III).**

Plaintiff's strict liability claim (Count III) is premised on the sweeping and patently false assertion that Woodland – a builder - was "in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public." Cmplt. ¶ 57. Even assuming that fabricated statement were true (which it is not), Plaintiff's strict liability theory is

nonetheless foreclosed by the ELR (as set forth above) and by at least two other established principles of Florida law.   Indeed, each principle was cited in an omnibus order, dated November 5, 2010, in the case styled *Bennett v. Centerline Homes, Inc., et al.,* Case No. 50-2009-CA-014458 (Fla. 15th Jud. Cir.) (the "November Omnibus Order") (*See* **Exhibit B**) as an independent basis for dismissing all strict liability claims brought against homebuilders.   There, the same Florida circuit court that rejected homeowner plaintiffs' negligence theory (*see* Section I.A.1 *supra*) ruled that (1) "only manufacturers, and those in the distributive chain of a product, can be held strictly liable" for allegedly defective drywall; and (2) drywall is not subject to strict liability because it is considered an improvement to real property, not a "product."   *See id.,* November Omnibus Order pgs. 7-9.   Each rationale applies here and each is fatal to Plaintiff's strict liability claim.

First, Woodland cannot be held strictly liable to Plaintiff because Woodland obviously did not manufacture or distribute the drywall in question. Indeed, the Complaint itself identifies Woodland as a "Builder."  Cmplt. Ex. B at ¶ 295 (page 34 of 35).   It is firmly settled – and *Bennett* confirms – that strict products liability is reserved for manufacturers and others in the chain of distribution, not homebuilders.  *See, e.g., Ugaz v. Am. Airlines, Inc.,* 576 F. Supp. 2d 1354, 1374-75 (S.D. Fla. 2008) (explaining that proper defendants for strict liability claim "are the manufacturers and perhaps other persons in the chain of distribution"); *Jackson v. L.A.W. Contracting Corp.,* 481 So. 2d 1290, 1291-92 (Fla. 5th DCA 1986) (distinguishing between manufacturer and installer of allegedly defective product for purposes of strict liability).

Second, it has long been held that strict product liability does not apply to "structural improvements" to real estate, such as a home, as a home is not considered a product.[5]  Drywall is

---

[5]      *See Fed. Ins. Co. v. Bonded Lighting Prot. Sys., Inc.,* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (dismissing strict liability claim based on lighting system because system was structural improvement

a "structural improvement" to real property because it is an *integral part* of Plaintiff's home. "Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate." *Fed. Ins. Co. v. Bonded Lightning Prot. Systems, Inc.* No. 07-80767-CIV, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3, 2008) (emphasis added)[6]. Indeed, Florida courts hearing Chinese drywall cases have similarly found that drywall constitutes a structural improvement to real property for which a strict products liability action will not lie. *See Bissoon v. Centerline Homes Constr., Inc.*, No. 562010 CA 001463 (Fla. 19th Jud. Cir. Mar. 24, 2011) (granting builder's motion to dismiss: "[A]lthough Plaintiff[s'] strict liability claims do allege defective product distribution, permanent improvements to real property are not products for purposes of products strict liability actions"), a copy of which is attached hereto as **Exhibit C**. As such, Plaintiff's strict liability claim should be dismissed as a matter of law.

**D.      Plaintiff's breach of contract claim (Count VII) must be dismissed.**

Plaintiff cannot maintain a claim for breach of contract (Count VII) for the simple reason that he never contracted with Woodland to build the house. Plaintiff acquired his house from a non-party, William J. Gorie ("William Gorie"). The agreement between William Gorie and Woodland is dated February 25, 2005, and it lists Woodland as the "Contractor." A copy of the February 25, 2005 Construction Agreement between Woodland and William Gorie is attached hereto as **Exhibit D.** The Certificate of Occupancy for the home was issued on September 22 2006. *See* Certificate of Occupancy (attached as **Exhibit E**). A copy of the later-executed

to real estate); *see also Virgilio v. Ryland Group, Inc.*, 695 F. Supp. 2d 1276, 1283 n.11 (M.D. Fla. 2010) (explaining that "a home is not a product" for purposes of strict products liability, and citing authorities); *see generally Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th DCA 1995).

[6]      *See also Plaza v. Fisher Dev., Inc.*, 971 So. 2d 918, 922-24 (Fla. 3d DCA 2007) (affirming dismissal of strict liability claim predicated on conveyor that was incorporated as structural improvement to real property); *Neumann v. Davis Water & Waste, Inc.*, 433 So. 2d 559, 561 (Fla. 2d DCA 1983) (same for installer or assembler of treatment tank "as an integral part" of sewage facility).

Warranty Deed dated August 2, 2007 and recorded on August 17, 2007 in favor of Plaintiff is attached as **Exhibit F**.[7] In the Profile Form that Plaintiff filed with this Court, Plaintiff states that he acquired his four-bedroom, two bathroom Florida residence on August 2, 2007. *See* Profile Form (attached as **Exhibit G**), pg. 2.

The plain language of the Construction Agreement between Woodland and William Gorie does not establish any clear or manifest intent by the parties thereto to cause the Construction Agreement to primarily and directly benefit Plaintiff (nor does Plaintiff so allege). *See Biscayne Investment Group v. Guarantee Management Servs., Inc.,* 903 So. 2d 251, 254 (holding that "a non-party to a contract is [deemed] the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs ... [t]o find the requisite intent, it must be established that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party") (emphasis added). Because Plaintiff acquired his home from a third party (William Gorie), his only contractual remedy lies with that party. "It is elementary that a person not a party to, nor in privy with, a contract does not have the right to sue for its breach." *Cibran Enters., Inc. v. BP Prods. N.A., Inc.,* 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2009) (internal marks

---

[7]   The fact that Plaintiff chose not to attach these documents to the Omnibus Complaint does not prevent the Court from considering them now. The Court can and should consider these instruments because they are undeniably central to Plaintiff's claims against Woodland. *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (holding that contract could be considered on motion to dismiss where it was attached to motion, referred to in the complaint, and central to the plaintiff's claims); *Aucoin v. Regions Fin. Corp.,* No. 09-3835, 2010 WL 334533, *2 (E.D. La. Jan. 21, 2010) (incorporating Retirement Plan mentioned in complaint and central to one or more of plaintiff's claims); *Fed.l Ins. Co. v. New Hampshire Ins. Co.,* No. 03-385-CM, 2010 WL 28568, *4 (M.D. La. Jan. 4, 2010) ("Since the insurance policy issued by New Hampshire is central to [plaintiff's] claims, the Court may consider it as evidence even though it was not attached to [plaintiff's] original petition or amended complaint."

and citation omitted); *Banco Ficohsa v. Aseguradora Hondurena, S.A.,* 937 So. 2d 161, 164-65 (Fla. 3d DCA 2006) (same principle).[8] As such, Count VII must be dismissed.

**E.      Plaintiff cannot maintain his warranty claims (Counts IV & VI).**

In Counts IV (Breach of Express and/or Implied Warranties) and VI (Breach of Implied Warranty of Habitability), Plaintiff alleges causes of action based on various express and implied warranties.[9]  Putting aside the fact that the Omnibus Complaint does not identify the source of those purported warranties – let alone explain how Woodland might have breached them – these improvised warranty claims should be dismissed because there is no privity of contract between Plaintiff and Woodland.

1.      *Plaintiff cannot maintain a warranty claim of any kind (express or implied) because there is no privity—no contract—with Woodland.*

Plaintiff's lack of privity with Woodland dooms any warranty claim.  It is axiomatic that a plaintiff suing in warranty "must be in privity of contract with the defendant."  *Weiss v. Johansen,* 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Cruz v. Mylan, Inc.,* No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, *2 (M.D. Fla. Feb. 17, 2010) (same).  Plaintiff, however, never contracted with Woodland, but acquired his house from a third party.  *T.W.M. v. Am. Med. Systems, Inc.,* 886 F. Supp. 842, 844 (N.D. Fla. 1995) (explaining concept of privity).  Without a showing of contractual privity with Woodland, Plaintiff's express and implied warranty claims cannot survive.  *See, e.g., Borchardt v. Mako Marine Intern., Inc.,* No. 08-61199-CIV, 2009 WL

---

[8]      What is more, the Construction Agreement prohibited Luv It from assigning the contract without Woodland's express written prior consent.  *See* **Ex. D**, ¶ 37.  The Omnibus Complaint nowhere alleges that Luv It -- the entity that conveyed Plaintiff's property to her -- ever sought or obtained such consent.

[9]      The Omnibus Complaint also includes a claim for "redhibition" on behalf of "Louisiana Plaintiffs" (Count IX), but redhibition requires a showing that the allegedly defective product—here, drywall—failed for its intended purpose. *See Benoit v. Ryan Chevrolet,* 428 So. 2d 489, 492 (La. App. 2d Cir. 1982). This theory is conclusively barred by this Court's prior determination that the drywall is "serving its intended structural purpose."  MDL No. 2047 Order & Reasons at 23. Moreover, Plaintiff's claims are Florida-based.

3856678, *4 (S.D. Fla. Nov. 17 2009) (dismissing warranty claims where there was "no allegation ... to establish that there [was] privity of contract").

2.   *Even if Plaintiff had been in privity of contract with Woodland, his express and implied warranty claims would nonetheless be barred by the plain language of the Construction Agreement itself.*

Woodland issued a one (1) year limited express warranty in favor of the initial purchaser, William Gorie (not Plaintiff). *See* Exhibit "C" of the Construction Agreement attached hereto as **Ex. D** (hereinafter, the "Limited Warranty"). As an initial matter, the plain language of the Limited Warranty states that it only flows to "the original buyer of the home" and is absolutely "non-transferrable." Indeed, the Limited Warranty specifically states that "any obligations under this Limited Warranty terminate if the property is resold or is no longer occupied by the homeowner to whom it is originally issued". *Id.* at ¶ 3  As such Plaintiff's express warranty claim is barred.

Moreover, the Limited Warranty is limited to "a period of one (1) year after Closing", which is defined as the date on which the "home is conveyed to you" [i.e., the original purchaser]. *Id.* at ¶¶ 1 & 6. In this case, the home was conveyed to the initial purchaser, at the latest, on the date that the Certificate of Occupancy was issued on September 22, 2006. As such, the one year limited express warranty would have expired no later than September 22, 2007.

Accordingly, even if Plaintiff claimed (which he does not) that the Limited Warranty extended to his interest in the property (which it does not), his express warranty claims should be dismissed because he has not alleged (nor can he) that he experienced a defect within the applicable limited warranty period (i.e., on or before September 22, 2007). "[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects-defects that may exist before, but typically are not discovered until after, the expiration of the warranty

period." *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (3d Cir. 1992) (citing numerous authorities and holding, as a matter of law, that express warranty did not cover latent defects which existed during warranty period but did not manifest until after warranty period had expired); *see Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 616-617 (3d Cir. 1995) ("[L]atent defects discovered after the term of the warranty are not actionable." (citation omitted)); *see also Brisson v. Ford Motor Co.*, 349 Fed. Appx. 433, 434 (11th Cir. 2009) (affirming dismissal of express warranty claim where plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period") (Florida law); *accord McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (holding that statute of limitations for warranty claim "cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date"); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. 3d DCA 2008) ("[T]here can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms."). As such, Plaintiff's express warranty claim must be dismissed as a matter of law.

> 3. *The implied warranty claims asserted by Plaintiff are foreclosed by the plain language of the Limited Warranty itself.*

Even if Plaintiff's implied warranty claims were not barred by the contractual privity requirement (which they most certainly are), Plaintiff's implied warranty claims would still have to be dismissed because the Limited Warranty expressly disclaims all such implied warranties. Indeed, the Limited Warranty states, in bold all capitalized letters that:

> There are no warranties that extend beyond the description of the face hereof. This Limited Warranty is the only expressed warranty given. This Limited Warranty is in lieu of all other warranties, express or implied, including but not

limited to, implied warranties of fitness for a particular purpose, merchantability, or that the home will be constructed in accordance with the plans and specifications on file with any governmental authority, whether arising from custom, usage, course of trade, statutes, case law or otherwise, and shall be limited to the warranty periods set forth above. The undersigned disclaims any liability for incidental or consequential damages including, but not limited to, inability to possess the unit, inconvenience, storage costs, loss of time, personal injury, damage to improvements made by you, or any of your personal property.

*See* ¶ 8 of the Limited Warranty.

Contractual exclusions of implied warranties like the ones at bar are valid and enforceable under Florida law. *See Leasetec Corp. v. Orient Sys., Inc.*, 85 F. Supp. 2d 1310, 1315 (S.D. Fla. 1999) (recognizing enforceability of warranty disclaimers); *e.g., Belle Plaza Condo. Ass'n, Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (condominium developer properly disclaimed any and all express and implied warranties); *Xerographic Supplies Corp. v. Hertz Commercial Leasing Corp.*, 386 So. 2d 299, 300 (Fla. 3d DCA 1980) (defendant could not be liable for breach of implied warranty because agreement disclaimed all implied warranties). As such, Plaintiff's implied warranty claims are without merit.

4. *In any event, Plaintiff cannot maintain a claim for breach of warranty of merchantability or of fitness for a particular purpose.*

Even if there were privity of contract between Plaintiff and Woodland, there are two more reasons to dismiss Plaintiff's implied warranty claims. First, as a matter of settled Florida law, the implied warranties of merchantability and of fitness for a particular purpose do not apply to the work performed by Woodland. That is, the implied warranties in the Uniform Commercial Code "do not generally pass from a contractor to an owner, because a contractor is viewed as a provider of services, not a merchant." *Lonnie D. Adams Building Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. 2d DCA 1998); *In re Sunshine-Jr. Stores, Inc.*, 240 B.R. 788, 794

(Bkrtcy. M.D. Fla. 1999) ("Under Florida law, contractors are viewed as service providers, not merchants.").

Woodland is not bound by any implied warranties because it is not considered a merchant under Florida warranty law.  Because the inclusion of drywall in Plaintiff's home was incidental to the construction services that Woodland rendered, the implied warranties of merchantability and of fitness for a particular purpose do not apply in these circumstances.  *See In re Sunshine-Jr.*, 240 B.R. at 794 ("[A]lthough construction contracts ... typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant.") (internal marks omitted) (citing *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998)); *Jackson*, 481 So. 2d at 1291 (finding warranty claims unavailable against contractor who used allegedly defective product in road work).

Finally, Plaintiff's implied warranty of fitness claim fails because he does not allege that the drywall was unfit for a <u>particular</u> purpose – that is, "a particular or unusual use different from the purpose for which the item sold is ordinarily used." *Fred's Excavating & Crane Serv., Inc. v. Cont. Ins. Co.*, 340 So. 2d 1220, 1220 (Fla. 4th DCA 1976).  "Florida courts have determined that in order to state a cause of action for [breach of] an implied warranty of fitness for a 'particular purpose' ... a plaintiff [must] allege the 'particular' purpose for which the goods were warranted as opposed to 'ordinary use' under a warranty of merchantability." *McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *2 (M.D. Fla. Aug. 1, 2007) (quoting *Weiss v. PPG Indus., Inc.*, 138 F.R.D. 289, 293 (M.D. Fla. 1993)) (dismissing warranty of fitness claim where plaintiff did not allege "the 'particular purpose' for which the motor home was not fit"); *see Fred's Excavating*, 340 So. 2d at 1220 (upholding dismissal of

warranty of fitness claim for same reason). To the extent he seeks to assert same, Plaintiff's implied warranty of fitness claim must be dismissed because he cannot make this indispensable allegation.[10]

**F.      Plaintiff cannot state a claim for private nuisance (Count XI).**

The private nuisance claim (Count XI) would fail even if it were not barred by the economic loss rule. *See* November Omnibus Order (**Ex. B**) (dismissing all plaintiffs' private nuisance claims against homebuilders because "neither [Florida] case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance"). An action for private nuisance requires the claimant to establish an injury to his or her own property in connection with the use of the real property of someone else. *See Jones v. J.B. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) ("[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another."); *In re: Chinese Drywall Litig.*, No. 10-28090 (Fla. 17th Jud. Cir. Feb. 4, 2011) (dismissing a private nuisance claim based on defective drywall: "This Court finds Judge Kelley's ruling [in the *Bennett* case] to be persuasive in his finding that neither the case law nor the policy underpinnings of the nuisance doctrine support such a cause of action for private nuisance in this case"), a copy of which is attached hereto as **Exhibit H**.

The Plaintiff, however, does not allege that his purported injuries resulted from real property owned by someone else. To the contrary, the nuisance claim is predicated entirely on the allegation that certain conditions existing on the "structures owned by Plaintiffs" are to blame. Cmplt. ¶ 137. That allegation simply does not state a claim for private nuisance. *See,*

---

[10]      Even assuming the drywall is defective, as Plaintiff alleges, it is nonetheless serving its *intended* purpose as room divider and structural support element. This Court has ruled that "[t]he Chinese drywall has not deteriorated the walls, making them structurally unsound; it is the exact opposite, the Chinese drywall stands just as any other functioning drywall, <u>serving its intended structural purpose</u>." *In re Chinese Drywall*, 680 F. Supp. 2d at 792.

*e.g., Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000) (affirming dismissal of private nuisance claim "based upon an alleged condition on [the Plaintiffs'] own property, which existed at the time she purchased the land"); *accord Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) ("A defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land on which the nuisance is located[.]").

**G.      Plaintiff cannot bring a claim for unjust enrichment (Count XII).**

The elements of unjust enrichment are that "(1) <u>the plaintiff has conferred a benefit on the defendant;</u> (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that <u>it would be inequitable for the defendant to retain the benefit</u> without paying fair value for it." *Commerce P'ship 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Plaintiff's unjust enrichment claim stumbles on the first and fourth of these elements. The first element is not satisfied because Plaintiff did not confer any benefit on Woodland. In fact, Plaintiff did not pay Woodland a single dime to build his house, as he acquired the house from a third party. Plaintiff, in other words, did not "enrich" Woodland in any sense.

As to the fourth element of unjust enrichment, it cannot be disputed that Woodland paid a third party (*i.e.*, a subcontractor or distributor) for the drywall in question. As the Florida appellate court explained in *Maloney v. Therm Alum Indus., Corp.*, 636 So. 2d 767, 770 (Fla. 4th DCA 1994), "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, <u>if the [defendant] has given any consideration to any person for the improvements, it would not be unjust for [the defendant] to retain the benefit.</u>" *Id. (overruled on other grounds by, Commerce P'ship*, 695 So. 2d at 388

(observing that "unjust enrichment cannot exist where payment has been made for the benefit conferred") (internal marks & citations omitted)).

Thus, Plaintiff's unjust enrichment claim is barred because Plaintiff did not confer any benefit on Woodland and because whatever compensation Woodland received for the drywall was not retained "unjustly."

**H.    The Omnibus Complaint fails to state a claim under Florida's Deceptive and Unfair Trade Practices Act (Count XIII).**

In the overbroad style that is the hallmark of the Omnibus Complaint, Plaintiff also alleges a violation of "various consumer Protection Acts," including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"). Cmplt. ¶ 148. A FDUTPA claim comprises three distinct elements: (1) a deceptive act or unfair practice by the defendant, (2) causation, and (3) "actual damages." *See Lydia Sec. Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007).

Courts examining FDUTPA claims have increasingly applied the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Wrestlereunion, LLC v. Live Nation TV Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, *3 (M.D. Fla. Aug. 4, 2008) (emphasis added) (citing authorities); *see Sunoptic Tech., LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, *2 (M.D. Fla., Mar. 18, 2009) ("Like fraud, a claim pursuant to the FDUTPA … [must] meet the heightened pleading standard under Rule 9(b)[.]") (citing authorities). At a minimum, Rule 9(b) requires a claimant to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made; [and] (2) the time and place of each statement and the person responsible

for making each statement, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (setting forth same basic requirements).

The Omnibus Complaint falls far short of this heightened standard. Indeed, it alleges <u>no specific facts</u> in support of Plaintiff's FDUTPA claims. *See* Cmplt. ¶¶ 147-151. It does not identify a single instance in which Woodland – by its words or conduct – deceived Plaintiff or treated him unfairly. Such skeletal allegations do not satisfy the most liberal pleading standards, let alone the requirement of "particularity" embodied in Rule 9(b). *See Florida Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim that failed to allege "specific facts" as mandated by Rule 9(b)); *Sunoptic*, 2009 WL 722320, at *2 (same).[11]

Plaintiff's failure, however, is not merely one of pleading. His FDUTPA claim must be dismissed with prejudice because "actual damages" are simply not available to him. *See Rollins v. Butland*, 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (under FDUTPA, allegations of consequential damages do not state a claim for relief); *Barrow v. Bristol-Myers Squibb Co.*, No. 96-689-CIV-ORL-19B, 1998 WL 812318, *46 (M.D. Fla. Oct. 29, 1998) (holding that FDUTPA does not allow recovery for physical injury). Because Woodland provided services – namely, the construction of houses – Plaintiff can establish "actual damages" <u>only</u> by showing a difference between the "market value" of the services that Woodland actually provided and the services that

---

[11]      Plaintiffs' FDUTPA claims would be inadequately pled even if Rule 9(b) did not apply. A FDUTPA claim must "do more than merely allege in conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant 'acted wrongfully, unreasonably and unjustly" and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, No. 07-80690-CIV, 2008 WL 1711535, *4 (S.D. Fla. Apr. 10, 2008) (citation omitted).

Woodland was required to provide.[12]  *See Collins v. Daimler-Chrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) (explaining that "actual damages" under FDUTPA means the "difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties" (citations omitted)).

As a matter of law, Plaintiff cannot make this showing. Plaintiff has not alleged that the manner in which Woodland <u>constructed</u> the house was in any way responsible for the allegedly defective drywall. The quality of construction is simply not an issue in this lawsuit, particularly after the Court found that the drywall "is operating as intended," and that "[i]t is not crumbling, deteriorating or failing to serve its intended purpose." MDL No. 2047 Order & Reasons at 18-19.

So even if Plaintiff could conceivably replead his FDUTPA claims with the particularity demanded by Rule 9(b), he has no hope of establishing the "actual damages" component of those claims. Indeed, the FDUTPA statute states explicitly that it does not apply to "[a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3); *see TWM v. Am. Med. Systems, Inc.*, 886 F. Supp. 842, 851 (N.D. Fl. 1995). Count XIII must be dismissed for this reason as well.

I.    **Plaintiff's claim for equitable relief and medical monitoring (Count XIV) cannot go forward against Woodland.**

Plaintiff's final claim is titled "Equitable and Injunctive Relief and Medical Monitoring" (Count XIV). This hybrid, catchall-type claim seeks, among other things, an order that

---

[12]    The same would hold true if Woodlamd had delivered a "product"—*i.e.*, a completed home—rather than providing a "service." To recover under FDUTPA, Plaintiff would need to establish a difference in the market value of the home as delivered, and the market value in the condition in which it should have been delivered. *See Collins*, 894 So. 2d at 990.

Woodland "buy back or rescind" its contract and "create, fund, and support a medical monitoring program." Cmplt. ¶ 155. This claim cannot survive dismissal either.

As a threshold matter, a claim for injunctive relief is not an independent cause of action, but rather a derivative claim that hinges on the substantive claims upon which it is based. Because Plaintiff's substantive claims are due for dismissal, so too are his derivative claims for injunctive relief. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

Even if one or more of Plaintiff's substantive claims could survive dismissal and lend support for an injunction, the Court should nevertheless dismiss the injunction claims because Plaintiff has failed to state more than a conclusory allegation regarding the availability of an adequate legal remedy or how Plaintiff would suffer irreparable harm. Injunctions under both federal and Florida law require these elements. *See, e.g., Tucker v. Citigroup Global Mkts. Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal marks omitted). Plaintiff does not even attempt to explain how the legal remedies sought elsewhere in Omnibus Complaint – including, most notably, for "compensatory and statutory damages" – are inadequate or why Plaintiff should be entitled to the extraordinary remedy of an injunction. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th

Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.");
*accord City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983).

Turning to Plaintiff's request for "medical monitoring," it is unclear whether Florida law permits this cause of action. The Florida Supreme Court has not ruled on the issue, and only the Third District Court of Appeal (one of five such appellate courts in Florida) has expressly recognized a right to medical monitoring. It is hardly clear, then, that Plaintiff can pursue this peculiar legal theory.

In any event, the medical monitoring allegations in the Omnibus Complaint do not state an actionable claim. At the very least, and as articulated by the Third District Court of Appeal in *Petito v. A.H. Robins Co*, the following seven elements must be adequately alleged in order to state a claim for medical monitoring:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). The injury in a medical monitoring case is defined as the cost of periodic medical examinations necessary to detect the onset of physical harm. *Id.*

The Omnibus Complaint makes no attempt to properly allege these elements. Instead, Count XIV sets forth a series of legal conclusions—*e.g.*, "Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct"—without a shred of factual detail. Plaintiff fails to identify an actual medical condition that Plaintiff has developed due to the drywall in his house; nor does he identify a monitoring procedure for any supposed condition. Instead, the Complaint only states that "exposure <u>may</u> lead to serious health

problems, diseases, and medical conditions" or an "increased <u>risk</u> of contracting a serious latent disease." Cmplt. ¶¶ 160, 162 (emphasis added). Plaintiff would have this Court speculate about a theoretical risk of undisclosed ailments and the means for monitoring them.

The Complaint, in other words, does not actually state a claim for medical monitoring. It states a series of legal conclusions, and those "do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (deeming "[t]hreadbare recitals" of the elements of a claim inadequate). The glaring deficiencies highlighted above make the final Count subject to dismissal on the pleadings. *See Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, *3 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring for failure to allege essential elements); *see generally Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 271 (S.D. Fla. 2003) ("'[M]edical monitoring … is a separate cause of action with seven specific elements the plaintiffs must establish …, including three that expressly require proof of a monitoring program that meets particular standards.'") (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024-Cl-7, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 6, 2002)); *see also Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 642 (Fla. 3d DCA 2006) (rejecting class-based medical monitoring claim where "neither the FDA, nor any other medical organization, has recommended or developed a medical monitoring program"); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 662 n.10 (M.D. Fla. 2001) ("Whether there is a recognized increased risk of contracting any serious latent disease is itself a debatable point which further undermines the [medical monitoring] relief sought in this case.").[13]

---

[13]     While Plaintiff has mechanically alleged the basic elements of a claim for medical monitoring, Woodland disputes the availability of this unusual form of relief, particularly because the Omnibus Complaint does not name a single medical condition that has actually arisen in any of the Plaintiffs that is allegedly caused by the allegedly defective drywall, let alone identify a medical procedure that could monitor or treat any such condition. *See Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106 (Fla. 3d DCA 1999) (setting forth seven elements for cause of action for medical monitoring).

## III. CONCLUSION

For all of the foregoing reasons, Defendant Woodland Enterprises, Inc. respectfully requests an order dismissing the claims against it with prejudice, and awarding Woodland its fees pursuant to Florida's Deceptive and Unfair Trade Practices Act.

Respectfully submitted: May 17, 2012


**PHELPS DUNBAR, LLP**

By:    /s/ Brent B. Barriere
    Brent B. Barriere (La. Bar No. 2818)
    D. Skylar Rosenbloom (La Bar No. 31309)
    Canal Place Suite 2000
    365 Canal Street
    New Orleans, Louisiana 70130-6534
    Telephone: (504) 566-1311
    Telecopier: (504) 568-9130
    Email: Brent.barriere@phelps.com
        Skylar.rosenbloom@phelps.com
*LOCAL COUNSEL FOR DEFENDANT*
*WOODLAND ENTERPRISES, INC.*

**AKERMAN SENTERFITT**

By:     /s/ Stacy Bercun Bohm
    Stacy Bercun Bohm (Fla. Bar No. 022462)
    Valerie B. Greenberg. (Fla. Bar No. 26514
    Leslie Miller Tomczak (Fla. Bar No. 126489)
    Las Olas Centre II, Suite 1600
    350 East Las Olas Boulevard
    Fort Lauderdale, Florida 33301-2229
    Telephone: (954) 463-2700
    Telecopier: (954) 463-2224
    Email: stacy.bohm@akerman.com
        valerie.greenberg@akerman.com
        leslie.tomczak@akerman.com
*LEAD COUNSEL FOR DEFENDANT*
*WOODLAND ENTERPRISES, INC.*


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA 70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, Kerry Miller, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA 70163 (kmiller@frilot.com), by U.S. Mail and e-mail or by hand delivery and email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 17th day of May, 2012.

                                   /s/ Stacy Bercun Bohm