## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

RICHARD and CONSTANCE ALMEROTH,
Et al., individually, and on behalf of all others
similarly situated, et. al,

       Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A
SHANDONG TAIHE DONGXIN CO., LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; QINHUANGDAO TAISHAN BUILDING
MATERIALS CO., LTD. A/K/A QINHUANG
DAO TAISHAN BUILDING MATERIALS CO.,
LTD., et. al,

       Defendants.

CASE NO.: 12-0498
SECT. L MAG. 2

_____/

## DEFENDANT MANAGEMENT SERVICES OF LEE COUNTY, INC., F/K/A PAUL HOMES, INC.'S, CROSS CLAIM AND THIRD PARTY COMPLAINT

COMES NOW Defendant/Cross-Claimant and Third-Party-Plaintiff, Management Services of Lee County, Inc., f/k/a Paul Homes, Inc. ("**Paul Homes**"), by and through its undersigned counsel, and alleges for its <u>Cross-Claims</u>[1] against Defendants/Cross-Defendants Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. ("**TG**"), Taian Taishan Plasterboard Co., Ltd. ("**TTP**"), and Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd. ("**QTBM**") (collectively, the "**Taishan Cross-Claim Defendants**") and La Suprema Enterprise, Inc. ("**La Suprema Enterprise**" or "**LS Enterprise**"), and for its <u>Third-Party Claims</u> against La Suprema Trading, Inc. ("**La**

---

[1]    Plaintiffs commenced this action on February 23, 2012 by filing Plaintiffs' Omnibus Class Action Complaint (Omni XIII) in this cause, (referred to herein as the "Complaint"). In response, Paul Homes moved to dismiss the claims against it in the Complaint. These Cross-Claims are therefore being brought to the extent all claims against Paul Homes are not dismissed in their entirety with prejudice. In the event all of Plaintiff's claims against Paul Homes are not dismissed with prejudice, Paul Homes also expressly reserves the right to raise any and all available defenses and to respond to the Complaint accordingly.

Suprema Trading" or "LS Trading"), Banner Supply Co. ("**Banner Supply Co.**") and Banner Supply Company Fort Myers, LLC ("**Banner Fort Myers**") (collectively, the "**Third Party Defendants**"), as follows:

## CROSS-CLAIMS AGAINST THE TAISHAN CROSS-CLAIM DEFENDANTS

### The Parties, Jurisdiction and Venue

1.      This is an action for damages within the monetary jurisdiction of this Court.

2.      The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Paul Homes.

3.      Paul Homes was and is a Florida corporation doing business in Lee County or Lee, Florida, where this cause of action arose.  At all material times, Paul Homes was a builder of residential homes in Lee County.

4.      Paul Homes has been named as a defendant in the above-styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Paul Homes in the construction of their homes was defective and caused damages to Plaintiffs.

5.      Paul Homes denies any liability owing to Plaintiffs or to any such class of plaintiffs, should a class be certified.

6.      The Taishan Cross-Claim Defendants and La Suprema Enterprise (collectively, the "**Cross-Claim Defendants**") have also been named as defendants in the above-styled action. Paul Homes adopts and incorporates, as if fully set forth herein, paragraphs 9-13 and Exh. B at ¶ 160 (page 19 of 35) of the Complaint, identifying each of the Cross-Claim Defendants and describing the nature of their business activities.

7.      Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

{24173078;1}

8.     Moreover, these Cross-Claims arise from the same transactions or occurrences as Plaintiffs' action.  Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Cross-Claims and over the instant Cross-Claim Defendants.

<u>**General Allegations**</u>

9.     As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that builders, such as Paul Homes, are liable for damages to Plaintiffs.[2]

10.     Plaintiffs allege that the drywall installed in their homes (the **"Homes"**) has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the **"Other Property"**).

11.     Plaintiffs further allege that the drywall contained in their Homes was manufactured, designed, processed, exported, imported, distributed, and/or sold by some or all of the Cross-Claim Defendants.

12.     Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

13.     In connection with the construction of certain homes in Lee County, Paul Homes purchased drywall that was installed in the Homes directly from Banner Supply Co. and/or Banner Fort Myers (together, **"Banner"**), a supplier of drywall.

14.     Upon information and belief, Banner procured drywall that was installed in the

---

[2]     The named class Plaintiffs and other members of the putative class have asserted claims against Paul Homes in this Action, as well as other actions in the state and federal courts.  The damages sought by Paul Homes in this Cross-Claim against the Cross-Claim Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class plaintiff and any other member of the putative class in any and all state and federal courts.

Homes from an import-export specialist, LS Enterprise ("**La Suprema Enterprise**" or "**LS Enterprise**"). At all material times, LS Enterprise knew or should have known that such drywall was going to be used in the construction of residential homes.

15.   Upon information and belief, LS Enterprise procured drywall that was installed in the Homes from Chinese manufacturers, including the Taishan Cross-Claim Defendants, who were manufacturing drywall to be exported to the United States. At all material times, the Taishan Cross-Claim Defendants knew or should have known that such drywall was going to be used in the construction of residential homes.

16.   Upon information and belief, in mid-to-late Fall of 2006, Chinese manufacturers, LS Enterprise and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by one of the Chinese manufacturers emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

17.   Upon information and belief, Banner conducted tests of the drywall installed in certain South Florida residential homes.

18.   Upon information and belief, the Chinese manufacturers, Banner and LS Enterprise did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

19.   Upon information and belief, in a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Banner entered into a confidential settlement agreement with one of its Chinese manufacturers in January of 2007 (the "**Secret Agreement**").

20.     The Secret Agreement stipulated that the Chinese manufacturer would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

21.     The Secret Agreement purposefully kept consumers, such as Paul Homes and other builders, contractors and installers, in the dark about the problems with the drywall.  As such, Paul Homes did not know and was not made aware of the problems with the drywall.

22.     The drywall imported, distributed and/or sold by the Cross-Claim Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Paul Homes.

23.     For the purpose of this Cross-Claim only, and not constituting an admission of the allegations or liability by Paul Homes, and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

24.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Cross-Claim Defendants had greater knowledge, and/or stood in a better position than Paul Homes, to know of the drywall's applications, performance, and dangers.

25.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Cross-Claim Defendants' acts and omissions in manufacturing, exporting, distributing and/or selling the defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages to Plaintiffs.

26.     Further, to the extent Plaintiffs are successful in proving that the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the gypsum drywall product purchased by Paul Homes for installation in the Homes.

27.     Moreover, Paul Homes did not know and was never informed by any of the Cross-Claim Defendants or any other entity that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

28.     Consequently, the Cross-Claim Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Paul Homes in responding to Plaintiffs' concerns and defending the actions filed by Plaintiffs.

29.     The Cross-Claim Defendants' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

30.     All conditions precedent to the filing of this Cross-Claim have been performed, excused, or otherwise waived.

## PAUL HOMES HOMES, INC.'S CROSS-CLAIMS AGAINST
## THE TAISHAN CROSS-CLAIM DEFENDANTS AND LA SUPREMA ENTERPRISE

### COUNT 1 – COMMON LAW INDEMNITY
### (Against Taishan Gypsum Co. Ltd. ("TG"))

31.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

32.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

33.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

34.     Paul Homes is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by TG.

35.     Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

36.     Any injuries suffered by Plaintiffs were due to the acts or omissions of TG.

37.     A special relationship existed between TG and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TG.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG was defective, TG is wholly to blame for Plaintiffs' injuries.

38.     As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TG to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

39.     If Paul Homes is found to be liable to Plaintiffs, TG is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Paul Homes demands judgment for indemnity in its favor against Taishan Gypsum Co. Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taishan Gypsum Co. Ltd. ("TG"))

40.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

41.     This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

42.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

43.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

44.     Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, TG would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

45.     Paul Homes has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

46.     To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against TG for its pro rata share of the liability.

47.     TG should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its pro rata share of any common liability.

**WHEREFORE,** Paul Homes demands that judgment be entered against Taishan Gypsum Co. Ltd. for its pro rata share of the liability, if any, found against Paul Homes in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

## COUNT 3 – EQUITABLE SUBROGATION
### (Against Taishan Gypsum Co. Ltd. ("TG"))

48.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

49.     This is an action, stated in the alternative, for equitable subrogation.

50.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

51.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

52.     Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

53.     Without admitting any liability or damages to Plaintiffs, Paul Homes is not primarily liable for any liability to the Plaintiffs.

54.     To the extent that Paul Homes is required to pay damages for any fault of TG to protect its own interests, and not as a volunteer, Paul Homes would be entitled to reimbursement from TG under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes and/or amounts paid in settlement in this action and/or any other action brought by

Plaintiffs against Paul Homes, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

55.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Paul Homes demands judgment in its favor and against Taishan Gypsum Co. Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 4 – NEGLIGENCE
### (Against Taishan Gypsum Co. Ltd. ("TG"))

56.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

57.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

58.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

59.     Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TG.

60.     TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property. As such, TG owed Paul Homes a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for

its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Paul Homes' customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

61.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

62.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to Paul Homes by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or

assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

63.     To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

64.     To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Paul Homes to substantial liability and damages. If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Paul Homes would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

65.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by TG's breaches of the duty of care owed to Paul Homes, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in

this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  TG's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – NEGLIGENT FAILURE TO WARN
### (Against Taishan Gypsum Co. Ltd. ("TG"))

66.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

67.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

68.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

69.     Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

70.     TG had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TG owed Paul Homes a duty to

exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction.

71.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

72.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG knew or should have known that unless it warned Paul Homes of the risk of using the drywall, Paul Homes would suffer harm. However, TG failed to provide an adequate warning of such danger.

73.     Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property. Without a warning, Paul Homes had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

74.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG breached the duty of care owed to Paul Homes by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Paul Homes about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Paul Homes about any problems or dangers in using the drywall for residential construction, about which TG knew or reasonably should have known.

75.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TG's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

76.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If TG had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TG would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

77.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by TG's breaches of the duty of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for

the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. TG's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6 – BREACH OF POST-SALE DUTY TO WARN
#### (Against Taishan Gypsum Co. Ltd. ("TG"))

78.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

79.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

80.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

81.    Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG.

82.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,

placed into the stream of commerce, and/or sold by TG was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TG's control and/or was sold to Paul Homes, TG knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

83.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TG, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. TG breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

84.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

85.     Consumers, such as Paul Homes, to whom a warning might have been provided, could have been identified by TG and could reasonably be assumed to be unaware of the risk of harm.

86.     A warning could have been effectively communicated to consumers such as Paul Homes and acted on by them.

87.     At all material times, TG stood in a better position than Paul Homes to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Paul Homes was unaware of potential dangers and/or risk of harm associated with the use of TG's drywall product in residential construction.

88.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in TG's position would have provided a post-sale warning.

89.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by TG's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  TG's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 7 – STRICT PRODUCTS LIABILITY
### (Against Taishan Gypsum Co. Ltd. ("TG"))

90.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

91.     Upon information and belief, at all material times TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

92.     Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

93.     At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

94.     TG expected the gypsum drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

95.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

96.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TG directly and proximately caused and/or exposed

Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  TG's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 8 – STRICT PRODUCTS LIABILITY FAILURE TO WARN**
**(Against Taishan Gypsum Co. Ltd. ("TG"))**

97.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

98.    Upon information and belief, at all material times TG was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

99.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

100.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce,

and/or sold by TG, TG intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

101.   TG expected the gypsum drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

102.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

103.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TG was required to provide a warning. However, TG failed to provide an adequate warning of such danger.

104.   Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

105.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TG failed to warn Paul Homes of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating the drywall was defective and unreasonably

dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

106.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  TG's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
**(Against Taishan Gypsum Co. Ltd. ("TG"))**

107.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

108.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

109.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

110.   At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

111.   At all material times, TG engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Paul Homes.

112.   Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

113.   At the time TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, TG represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

114.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

115.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, at the time TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, TG knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

116.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from TG's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

117.   To the extent Plaintiffs are successful in proving their claims, TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 27 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

118.   TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to

deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

119. TG's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

120. To the extent Plaintiffs are successful in proving their claims, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TG's violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and actual damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

TG's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 10 – UNJUST ENRICHMENT
### (Against Taishan Gypsum Co. Ltd. ("TG"))

121.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

122.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

123.    Upon information and belief, TG manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

124.    TG received money from Paul Homes as payment for the defective drywall installed in the Homes.

125.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Paul Homes conferred a benefit, *i.e.*, funds and profit, to TG, which had knowledge thereof.

126.    TG voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

127.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TG's acts and omissions in distributing, placing into the

stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

128.    The circumstances described herein under which TG profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for TG to retain those funds and profits.

129.    Paul Homes has no adequate remedy at law.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Taishan Gypsum Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 11 –COMMON LAW INDEMNITY
**(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))**

130.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

131.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

132.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

133.    Paul Homes is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by TTP.

134.    Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

135.    Any injuries suffered by Plaintiffs were due to the acts or omissions of TTP.

136.    A special relationship existed between TTP and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to TTP.  To the extent that Plaintiffs are successful in proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, TTP is wholly to blame for Plaintiffs' injuries.

137.    As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of TTP to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

138.    If Paul Homes is found to be liable to Plaintiffs, TTP is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of

Plaintiffs, payments for the amount of any judgment entered against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Paul Homes demands judgment for indemnity in its favor against Taian Taishan Plasterboard Co. Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 12 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

139.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

140.   This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

141.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

142.   Plaintiffs, in the Complaint, allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

143.   Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, TTP would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

144.   Paul Homes has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

145.   To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against TTP for its pro rata share of the liability.

{24173078;1}

146.   TTP should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its pro rata share of any common liability.

**WHEREFORE,** Paul Homes demands that judgment be entered against Taian Taishan Plasterboard Co. Ltd. for its pro rata share of the liability, if any, found against Paul Homes in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 13 – EQUITABLE SUBROGATION
**(Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))**

147.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

148.   This is an action, stated in the alternative, for equitable subrogation.

149.   Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

150.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

151.   Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

152.     Without admitting any liability or damages to Plaintiffs, Paul Homes is not primarily liable for any liability to the Plaintiffs.

153.     To the extent that Paul Homes is required to pay damages for any fault of TTP to protect its own interests, and not as a volunteer, Paul Homes would be entitled to reimbursement from TTP under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

154.     Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Paul Homes demands judgment in its favor and against Taian Taishan Plasterboard Co. Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 14 – NEGLIGENCE
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

155.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

156.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

157.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

158.    Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by TTP.

159.    TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed Paul Homes a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market, distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Paul Homes' customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

160.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

161.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to Paul Homes by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

162.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duties of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

163.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Paul Homes to substantial liability and damages. If TTP had exercised that degree of care that a prudent or

reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Paul Homes would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

164.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by TTP's breaches of the duty of care owed to Paul Homes, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  TTP's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 15 – NEGLIGENT FAILURE TO WARN
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

165.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

166.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

167.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

168.   Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

169.   TTP had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, TTP owed Paul Homes a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction.

170.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

171.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP knew or should have known that unless it warned Paul Homes of the risk of using the drywall, Paul Homes would suffer harm. However, TTP failed to provide an adequate warning of such danger.

172.   Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Paul Homes had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

173.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP breached the duty of care owed to Paul Homes by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Paul Homes about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Paul Homes about any problems or dangers in using the drywall for residential construction, about which TTP knew or reasonably should have known.

174.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in TTP's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

175.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If TTP had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, TTP would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

176.   Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by TTP's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. TTP's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – BREACH OF POST-SALE DUTY TO WARN
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

177.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

178.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

179.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

180.    Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP.

181.    To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left TTP's control and/or was sold to Paul Homes, TTP knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

182.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, TTP, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  TTP breached that duty by failing to properly investigate any potential

dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

183.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

184.    Consumers, such as Paul Homes, to whom a warning might have been provided, could have been identified by TTP and could reasonably be assumed to be unaware of the risk of harm.

185.    A warning could have been effectively communicated to consumers such as Paul Homes and acted on by them.

186.    At all material times, TTP stood in a better position than Paul Homes to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Paul Homes was unaware of potential dangers and/or risk of harm associated with the use of TTP's drywall product in residential construction.

187.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in TTP's position would have provided a post-sale warning.

188.    Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by TTP's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs,

payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  TTP's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 17 – STRICT PRODUCTS LIABILITY
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

189.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

190.    Upon information and belief, at all material times TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

191.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

192.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

193.    TTP expected the gypsum drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

194.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

195.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by TTP directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  TTP's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 18 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
## (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

196.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

197.    Upon information and belief, at all material times TTP was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

198.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

199.    At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by TTP, TTP intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

200.    TTP expected the gypsum drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

201.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

202.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which TTP was required to provide a warning. However, TTP failed to provide an adequate warning of such danger.

203.   Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

204.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because TTP failed to warn Paul Homes of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

205.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul

Homes in defending against these claims. TTP's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 19- VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ. (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

206.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

207.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

208.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

209.    At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

210.    At all material times, TTP engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Paul Homes.

211.    Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

212.   At the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, TTP represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

213.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

214.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, TTP knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

215.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from TTP's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

216.   To the extent Plaintiffs are successful in proving their claims, TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 27 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

217.   TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

218.   TTP's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its  failure to disclose

that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

219.    To the extent Plaintiffs are successful in proving their claims, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. TTP's violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and actual damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. TTP's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 20 – UNJUST ENRICHMENT
### (Against Taian Taishan Plasterboard Co. Ltd. ("TTP"))

220.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

221.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

222.   Upon information and belief, TTP manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

223.   TTP received money from Paul Homes as payment for the defective drywall installed in the Homes.

224.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Paul Homes conferred a benefit, *i.e.*, funds and profit, to TTP, which had knowledge thereof.

225.   TTP voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

226.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, TTP's acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

227.   The circumstances described herein, under which TTP profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

advertising, distributing, placing into the stream of commerce and/or selling defective drywall, make it inequitable for TTP to retain those funds and profits.

228.   Paul Homes has no adequate remedy at law.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Taian Taishan Plasterboard Co. Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

COUNT 21 – COMMON LAW INDEMNITY
**(Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))**

229.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

230.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

231.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

232.   Paul Homes is not and was not in the business of manufacturing, distributing, and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed,  placed into the stream of commerce, and/or sold by QTBM.

233.   Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

234.   Any injuries suffered by Plaintiffs were due to the acts or omissions of QTBM.

235.   A special relationship existed between QTBM and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to QTBM.  To the extent that Plaintiffs are successful in

proving their claims, that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM was defective, QTBM is wholly to blame for Plaintiffs' injuries.

236.    As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of QTBM to manufacture, mine, design, produce, make, market, test, label, package, advertise, distribute, place into the stream of commerce, and/or sell drywall fit for its intended purpose, *i.e.*, not unreasonably dangerous and fit for use in the construction of residential homes.

237.    If Paul Homes is found to be liable to Plaintiffs, QTBM is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

**WHEREFORE,** Paul Homes demands judgment for indemnity in its favor against Qinhuangdao Taishan Building Materials Co., Ltd. for compensatory damages plus attorneys' fees, interest and costs, and for such other relief as the Court deems just and proper.

### COUNT 22 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))

238.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

239.    This is an action, stated in the alternative, for contribution pursuant to Section 768.31, Florida Statutes.

240.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

241.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

242.    Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, QTBM would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

243.    Paul Homes has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

244.    To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against QTBM for its pro rata share of the liability.

245.    QTBM should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its pro rata share of any common liability.

**WHEREFORE**, Paul Homes demands that judgment be entered against Qinhuangdao Taishan Building Materials Co., Ltd. for its pro rata share of the liability, if any, found against

Paul Homes in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 23 – EQUITABLE SUBROGATION
### (Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))

246.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

247.   This is an action, stated in the alternative, for equitable subrogation.

248.   Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

249.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

250.   Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

251.   Without admitting any liability or damages to Plaintiffs, Paul Homes is not primarily liable for any liability to the Plaintiffs.

252.   To the extent that Paul Homes is required to pay damages for any fault of QTBM to protect its own interests, and not as a volunteer, Paul Homes would be entitled to reimbursement from QTBM under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment

entered against Paul Homes and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

253.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Paul Homes demands judgment in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. for equitable subrogation, plus attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 24 – NEGLIGENCE
**(Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))**

254.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

255.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

256.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

257.    Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce and/or sold by QTBM.

258.    QTBM had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, QTBM owed Paul Homes a duty to, among other things, exercise reasonable care to (i) manufacture, mine, design, produce, market,

distribute, place into the stream of commerce and/or sell drywall which was reasonably safe for its intended use, or reasonably intended uses, and/or free from defects that could cause property damage, bodily injury, and/or damage the health and safety of Paul Homes' customers; (ii) manufacture, mine, design, produce, market, label, package, distribute, place into the stream of commerce and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry; and, (iii) undertake adequate testing and inspection of the drywall to insure that such drywall would function properly in all of its foreseeable uses, including the use of the drywall in residential construction before placing drywall materials into the stream of commerce.

259. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

260. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM breached the duty of care owed to Paul Homes by among other things, (i) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to discover defective conditions and/or and ensure that it was reasonably safe for its intended use, or reasonably intended uses before placing its drywall product into the stream of commerce; (ii) failing to exercise reasonable care in inspecting, and/or testing the properties of the drywall to ensure that it complied with all foreseeable applicable building and industry standards; (iii)

failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that was reasonably safe for its intended use, or reasonably intended uses; and, (iv) failing to exercise reasonable care in manufacturing, mining, designing, producing, and/or assembling drywall that complied with all foreseeable applicable building and industry standards.

261.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in QTBM's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

262.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, QTBM knew or reasonably should have known that its acts and omissions in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall would expose Paul Homes to substantial liability and damages. If QTBM had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Paul Homes would ensue as a result of improperly manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall.

263.    Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by QTBM's breaches of the duty of care owed to Paul Homes, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages,

including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. QTBM's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 25 – NEGLIGENT FAILURE TO WARN
**(Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))**

264.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

265.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

266.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

267.    Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

268.    QTBM had a duty to exercise reasonable care so that its drywall product in the marketplace would not harm persons or property.  As such, QTBM owed Paul Homes a duty to exercise reasonable care to: (i) disclose any defects in the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction.

269.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

270.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM knew or should have known that unless it warned Paul Homes of the risk of using the drywall, Paul Homes would suffer harm. However, QTBM failed to provide an adequate warning of such danger.

271.    Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.  Without a warning, Paul Homes had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property

and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

272.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM breached the duty of care owed to Paul Homes by (i) failing to disclose any defects in the drywall materials which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers and/or users such as Paul Homes about any dangers inherent in the drywall or its unreasonably dangerous propensities, and/or (iii) failing to warn foreseeable consumers and/or users such as Paul Homes about any problems or dangers in using the drywall for residential construction, about which QTBM knew or reasonably should have known.

273.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, such breaches in QTBM's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

274.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, QTBM knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If QTBM had exercised that degree of care that a prudent or reasonably cautious manufacturer acting under the same circumstances would exert, QTBM would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

275.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by QTBM's breaches of the duty of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.   QTBM's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 26 – BREACH OF POST-SALE DUTY TO WARN
### (Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))

276.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

277.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

278.     Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

279.   Paul Homes was a foreseeable user of the gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM.

280.   To the extent Plaintiffs are successful in proving that drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left QTBM's control and/or was sold to Paul Homes, QTBM knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

281.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, QTBM, as the manufacturer of the drywall, had a duty of reasonable care to investigate when reasonable grounds were present to suspect that a hitherto unknown risk existed and/or to issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.   QTBM breached that duty by failing to properly investigate any potential dangers and/or risk of harm associated with the use of the drywall product in residential construction and/or failing to issue a post-sale warning of such risks.

282.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

283.    Consumers, such as Paul Homes, to whom a warning might have been provided, could have been identified by QTBM and could reasonably be assumed to be unaware of the risk of harm.

284.    A warning could have been effectively communicated to consumers such as Paul Homes and acted on by them.

285.    At all material times, QTBM stood in a better position than Paul Homes to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Paul Homes was unaware of potential dangers and/or risk of harm associated with the use of QTBM's drywall product in residential construction.

286.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use, a reasonable manufacturer, producer and/or seller in QTBM's position would have provided a post-sale warning.

287.    Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by QTBM's breach of the post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  QTBM's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

## COUNT 27 – STRICT PRODUCTS LIABILITY
### (Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))

288. Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

289. Upon information and belief, at all material times QTBM was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

290. Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

291. At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM, QTBM intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

292. QTBM expected the gypsum drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

293. In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

294.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, place into the stream of commerce, and/or sold by QTBM directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. QTBM's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 28 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))

295.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

296.    Upon information and belief, at all material times QTBM was in the business of manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging,

advertising, distributing, placing into the stream of commerce and/or selling gypsum drywall of the type contained in the Homes.

297.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

298.   At the time said drywall was manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold by QTBM, QTBM intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

299.   QTBM expected the gypsum drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

300.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

301.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which QTBM was required to provide a warning. However, QTBM failed to provide an adequate warning of such danger.

302.   Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property.

303.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because QTBM failed to warn Paul Homes of the unduly hazardous condition of the drywall posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating the drywall was defective and unreasonably dangerous to persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

304.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  QTBM's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 29 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
(Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))**

305.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

306.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

307.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

308.    At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

309.    At all material times, QTBM engaged in trade or commerce by selling, advertising, soliciting, offering, and/or distributing drywall to consumers, such as Paul Homes.

310.    Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

311.    At the time QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the gypsum drywall, QTBM represented that the drywall was fit for the

ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes, and free from defects.

312.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

313.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, solicited, offered, distributed, placed into the stream of commerce, and/or sold the drywall that was installed in the Homes, QTBM knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

314.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving their claims, Plaintiffs' claims arise from QTBM's deceptive and unlawful conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

315.   To the extent Plaintiffs are successful in proving their claims, QTBM's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, offering, distributing, placing into the stream of

commerce and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 27 herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

316.   QTBM's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, soliciting, offering, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was unfit and/or unreasonably dangerous was likely to deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and not unreasonably dangerous to persons or property and fit for use in the construction of residential homes. A reasonable consumer would also presume that the manufacturer of such gypsum drywall would disclose and/or issue a warning to consumers after it became aware that such drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used, *i.e.* not safe and unreasonably dangerous to persons or property.

317.   QTBM's unfair and deceptive conduct in manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective gypsum drywall and/or its failure to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

318.   To the extent Plaintiffs are successful in proving their claims, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. QTBM's violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and actual damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. QTBM's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 30 – UNJUST ENRICHMENT
**(Against Qinhuangdao Taishan Building Materials Co., Ltd. ("QTBM"))**

319.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

320.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

321.   Upon information and belief, QTBM manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, placed into the stream of commerce, and/or sold the gypsum drywall that was installed in the Homes.

322.    QTBM received money from Paul Homes as payment for the defective drywall installed in the Homes.

323.    In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Paul Homes conferred a benefit, *i.e.*, funds and profit, to QTBM, which had knowledge thereof.

324.    QTBM voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

325.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, QTBM's acts and omissions in distributing, placing into the stream of commerce and/or selling defective gypsum drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

326.    The circumstances described herein under which QTBM profited from manufacturing, mining, designing, producing, making, marketing, testing, labeling, packaging, advertising, distributing, placing into the stream of commerce and/or selling defective drywall make it inequitable for QTBM to retain those funds and profits.

327.    Paul Homes has no adequate remedy at law.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Qinhuangdao Taishan Building Materials Co., Ltd. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 31 – COMMON LAW INDEMNITY
#### (Against La Suprema Enterprise Inc.)

328.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

329.   Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

330.   Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

331.   Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

332.   Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Enterprise.

333.   A special relationship existed between LS Enterprise and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Enterprise. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Enterprise was defective and wholly to blame for Plaintiffs' injuries.

334.   As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Enterprise to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

335.    If Paul Homes is found to be liable to Plaintiffs, LS Enterprise is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Paul Homes demands judgment for indemnity in its favor against La Suprema Enterprise Inc. for damages plus attorneys' fees, interest and costs and for such other relief as the Court deems just and proper.

### COUNT 32 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
#### (Against La Suprema Enterprise, Inc.)

336.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

337.    This is an action, stated in the alternative, against LS Enterprise for contribution pursuant to Section 768.31, Florida Statutes.

338.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

339.    Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, LS Enterprise would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

340.   Paul Homes has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

341.   To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against LS Enterprise for its pro rata share of the liability.

342.   LS Enterprise should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its pro rata share of any common liability.

WHEREFORE, Paul Homes demands that judgment be entered against La Suprema Enterprise Inc. for its pro rata share of the liability, if any, found against Paul Homes in this action, along with interest and costs, together with such other and further relief as this Court deems just and proper.

### COUNT 33 – EQUITABLE SUBROGATION
### (Against La Suprema Enterprise Inc.)

343.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

344.   This is an action, stated in the alternative, against LS Enterprise for equitable subrogation.

345.   Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

346.   Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Enterprise.

347.   Without admitting any liability or damages to Plaintiffs, Paul Homes is not primarily liable for any liability to the Plaintiffs.

348.   To the extent that Paul Homes is required to pay damages for any fault of LS Enterprise to protect its own interests, and not as a volunteer, Paul Homes would be entitled to reimbursement from LS Enterprise under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

349.   Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Paul Homes demands judgment in its favor and against La Suprema Enterprise Inc. for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 34 – NEGLIGENCE
### (Against La Suprema Enterprise Inc.)

350.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

351.   Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or

unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

352.   Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

353.   Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

354.   As such, LS Enterprise owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) investigate and/or inspect, market, import, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Paul Homes' customers;  and, (ii) market, import, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

355.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

356.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Paul Homes by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all

applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Paul Homes with drywall that complied with all applicable building and industry standards.

357.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

358.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Paul Homes to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Paul Homes would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

359.   Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of

Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 35 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Enterprise Inc.)

360.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

361.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

362.    Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

363.    Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

364.    As such, LS Enterprise owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse effects associated with the drywall; (ii) warn foreseeable

consumers such as Paul Homes about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction.

365.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

366.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or should have known that unless it warned foreseeable consumers such as Paul Homes of the risk of using the drywall it distributed, sold, and/or supplied, Paul Homes would suffer harm. However, LS Enterprise failed to provide an adequate warning of such danger.

367.   Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

368.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise breached its duty of care to Paul Homes

by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction, about which LS Enterprise knew or reasonably should have known.

369.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Enterprise's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

370.    To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If LS Enterprise had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

371.    Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Enterprise's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 36 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Enterprise Inc.)

372.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

373.   Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

374.   Upon information and belief, LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

375.   Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Enterprise.

376.   To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Enterprise was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Enterprise's control and/or was sold to Paul

Homes, LS Enterprise knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

377.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise as the importer, distributor, supplier and/or seller of the drywall had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  LS Enterprise breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

378.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

379.   Consumers, such as Paul Homes, to whom a warning might have been provided, could have been identified by LS Enterprise.

380.   A warning could have been effectively communicated to consumers such as Paul Homes and acted on by them.

381.   At all material times, LS Enterprise stood in a better position than Paul Homes to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Paul Homes was unaware of potential dangers and/or risk of harm associated with the use of LS Enterprise's drywall product in residential construction.

382.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable importer, distributor, seller and/or supplier in LS Enterprise's position would have provided a post-sale warning.

383.   Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Enterprise's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.   LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 37 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Enterprise)

384.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

385.   At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

386.    Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise.

387.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

388.    LS Enterprise expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

389.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

390.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Enterprise directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 38 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Enterprise)

391.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

392.    At all material times, LS Enterprise was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

393.    At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Enterprise.

394.    At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Enterprise, LS Enterprise intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

395.    LS Enterprise expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

396.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

397.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

construction involved a danger of which LS Enterprise was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

398.    Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

399.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Enterprise failed to warn Paul Homes of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

400.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.   LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 39**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.**
**(Against La Suprema Enterprise Inc.)**

401.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

402.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act")).

403.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

404.    At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

405.    At all material times, LS Enterprise engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Paul Homes.

406.    LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold drywall that was installed in the Homes.

407.    At the time LS Enterprise imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Enterprise represented that the drywall was fit for the

ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

408.   Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

409.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Enterprise imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Enterprise knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

410.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from LS Enterprise's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

411.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the   Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective

drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 9 - 27 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

412.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the   Complaint, LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

413.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint. LS Enterprise's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

414.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Enterprise's violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. LS Enterprise's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 40 – UNJUST ENRICHMENT
### (Against La Suprema Enterprise Inc.)

415.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

416.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

417.    LS Enterprise imported, distributed, sold and/or supplied drywall that was installed in the Homes.

418.   LS Enterprise received money from Paul Homes as payment for drywall installed in the Homes.

419.   In delivering such payment, monies and/or funds to pay for the defective drywall that was installed in the Homes, Paul Homes conferred a benefit, *i.e.*, funds and profit, to LS Enterprise, which had knowledge thereof. LS Enterprise voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

420.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Enterprise's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

421.   The circumstances described herein under which LS Enterprise profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Enterprise to retain those funds and profits.

422.   Paul Homes has no adequate remedy at law.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against La Suprema Enterprise Inc. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## PAUL HOMES' THIRD-PARTY CLAIMS
## AGAINST LA SUPREMA TRADING AND BANNER

### The Parties, Jurisdiction and Venue

1.    This is an action for damages within the monetary jurisdiction of this Court.

2.    The plaintiffs in this action ("**Plaintiffs**") are the named plaintiffs and all potential members of the putative subclass claiming against Paul Homes.

3.    Paul Homes was and is a Florida corporation doing business in Lee County or Lee, Florida, where this cause of action arose.  At all material times, Paul Homes was a builder of residential homes in Lee County.

4.    Paul Homes has been named as a defendant in the above styled action where it is alleged by Plaintiffs in the Complaint that the drywall used by Paul Homes in the construction of their homes was defective and caused damages to Plaintiffs.

5.    Paul Homes denies any liability owing to Plaintiffs or any such class of plaintiffs, should a class be certified.

6.    Third-Party Defendant, Banner Supply Co. ("**Banner Supply Co.**"), is a Florida corporation having its principal place of business in Miami, Florida.  Banner Supply Co. is an importer, exporter, distributor, supplier or broker of drywall and related building products.

7.    Third-Party Defendant, Banner Supply Company Fort Myers, LLC ("**Banner Fort Myers**"), is a Florida corporation having its principal place of business in Fort Myers, Florida. Banner \Fort Myers is an importer, exporter, distributor, supplier or broker of drywall and related building products.

8.    Third-Party Defendant, La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**"), is a Florida corporation with its principal place of business in Miami, Florida.

La Suprema Trading, Inc. is an importer, exporter, distributor, supplier or broker of drywall and related building products.

9. Subject matter jurisdiction of this Court exists by virtue of 28 U.S.C. §§ 1332 and 1367. The amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Moreover, these Third-Party Claims arise from the same transactions or occurrences as Plaintiffs' action. Accordingly, should this Court determine that it has jurisdiction and proper venue over Plaintiffs' action, this Court shall have jurisdiction and proper venue over the instant Third-Party Claims and over the instant Third-Party Defendants.

### General Allegations

11. As set forth in more detail in the Complaint, Plaintiffs allege that their homes were built using defective drywall designed, manufactured and processed in China, and that Paul Homes is liable for damages to Plaintiffs.[3]

12. Plaintiffs allege that the drywall installed in their homes (the **"Homes"**) has a noxious odor and is defective and unreasonably dangerous in that the drywall caused damage to other property within the Homes, including, but not limited to, wiring, plumbing, appliances and Plaintiffs' personal property (the **"Other Property"**).

13. Plaintiffs also allege that the drywall is unreasonably dangerous because they have suffered personal injuries.

14. In connection with the construction of certain homes in Lee County, Paul Homes purchased drywall that was installed in the Homes directly from Banner Supply Co. and/or Banner Fort Myers (together, **"Banner"**), a supplier of drywall.

---

[3]   The named class Plaintiffs and other members of the putative class have asserted claims against Paul Homes in this Action, as well as other actions in the state and federal courts. The damages sought by Paul Homes in this Third-Party Claim against the Third-Party Defendants include all appropriate damages associated with this Action as well as any other action commenced by any named class plaintiff and any other member of the putative class in any and all state and federal courts.

15.     At all material times, Banner knew that the drywall purchased for the Homes was going to be used in construction of residential homes.  Banner knew that Paul Homes was a foreseeable user of the drywall and that Paul Homes required and expected the drywall to be fit for the ordinary purpose for which it was intended, *i.e.,* safe and fit for use in the construction of residential homes.

16.     Upon information and belief, Banner procured drywall that was installed in the Homes from an import-export specialist, La Suprema Trading, Inc. ("**La Suprema Trading**" or "**LS Trading**").  At all material times, LS Trading knew or should have known that such drywall was going to be used in the construction of residential homes.

17.     Upon information and belief, LS Trading procured drywall that was installed in the Homes from Chinese manufacturers.

18.     Upon information and belief, in mid-to-late Fall of 2006, Chinese manufacturers, LS Trading and Banner knew that some of Banner's customers had raised concerns that the drywall manufactured, mined, designed, produced, made, marketed, tested, labeled, packaged, advertised, distributed, sold, and/or placed into the stream of commerce by one of the Chinese manufacturers emitted a very bad sulfurous or noxious odor in certain South Florida residential homes.

19.     Upon information and belief, Banner conducted tests of the drywall installed in certain South Florida residential homes.

20.     Upon information and belief, the Chinese manufacturers, Banner and LS Trading did not conduct a more widespread investigation or alert other customers in Florida or around the U.S. about the drywall.

21.     Upon information and belief, in a concerted effort to conceal knowledge of drywall defects from consumers of the drywall, Banner entered into a confidential settlement agreement with one of its Chinese manufacturers in January of 2007 (the **"Secret Agreement"**).

22.     The Secret Agreement stipulated that the Chinese manufacturer would take back all of Banner's unsold drywall, pay Banner for storing it, and replace Banner's inventory of Chinese drywall with thousands of pieces of drywall made by U.S. manufacturers.  In return, Banner promised to keep silent about any "perceived or actual smell or health risks" related to the drywall.

23.     The Secret Agreement purposefully kept consumers, such as Paul Homes and other builders, contractors and installers, in the dark about the problems with the drywall.  As such, Paul Homes did not know and was not made aware of the problems with the drywall.

24.     The drywall imported, distributed and/or sold by the Third-Party Defendants for use in the construction of the Homes was not altered and/or otherwise substantively changed by Paul Homes.

25.     For the purpose of these Third-Party Claims only, and not constituting an admission of the allegations or liability by Paul Homes and without in any way adopting the allegations of same as true, the allegations set forth in the Complaint describing the alleged defects and unreasonably dangerous propensities of the drywall installed in the Homes are adopted and incorporated as if set forth fully herein.  In short, Plaintiffs' causes of action are grounded on the existence of unduly hazardous conditions or a serious risk of harm to persons or property proximately caused by alleged defective drywall in the Homes.

26.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous

and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at all material times, the Third-Party Defendants had greater knowledge, and/or stood in a better position than Paul Homes to know, of the drywall's applications, performance, and dangers.

27.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the Third-Party Defendants' acts and omissions in importing, exporting, distributing, delivering, supplying, inspecting, marketing and/or selling the defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages to Plaintiffs.

28.     To the extent Plaintiffs are successful in proving the drywall was defective and damaged Other Property in the Homes, such Other Property was independent from and/or unconnected with the drywall product purchased by Paul Homes through Triple E for installation in the Homes.

29.     Paul Homes did not know and was not informed by any of the Third-Party Defendants that the drywall had an odor and/or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.

30.     Consequently, the Third-Party Defendants are liable for any tort or other fault with respect to the use of the allegedly defective and unsafe drywall in the Homes that caused Plaintiffs' alleged injuries and damages, and further damages to Paul Homes in responding to Plaintiffs' concerns and defending the action filed by Plaintiffs.

31.     The Third-Party Defendants' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost

profits.

32.    All conditions precedent to the filing of these Third-Party Claims have been performed, excused, or otherwise waived.

COUNT 1 – COMMON LAW INDEMNITY
(Against La Suprema Trading Inc.)

33.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

34.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

35.    Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by LS Trading.

36.    Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

37.    Any injuries suffered by Plaintiffs were due to the acts or omissions of LS Trading.

38.    A special relationship existed between LS Trading and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to LS Trading. To the extent that Plaintiffs are successful in proving their claims, the drywall imported, distributed, sold and/or supplied by LS Trading was defective and wholly to blame for Plaintiffs' injuries.

39.    As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of LS Trading to supply drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

40.    If Paul Homes is found to be liable to Plaintiffs, LS Trading is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

WHEREFORE, Paul Homes demands judgment for indemnity in its favor against Third-Party Defendant, La Suprema Trading Inc., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 2 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against La Suprema Trading, Inc.)

41.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

42.    This is an action, stated in the alternative, against LS Trading for contribution pursuant to Section 768.31, Florida Statutes.

43.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

44.    Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, LS Trading would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

45.    Paul Homes has not intentionally caused or contributed to the damages alleged by

the Plaintiffs in this action.

46.    To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against LS Trading for its pro rata share of the liability.

47.    LS Trading should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its pro rata share of any common liability.

**WHEREFORE**, Paul Homes demands that judgment be entered against Third-Party Defendant, La Suprema Trading Inc., for its pro rata share of the liability, if any, found against Paul Homes in this action, along with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT 3 – EQUITABLE SUBROGATION
### (Against La Suprema Trading Inc.)

48.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

49.    This is an action, stated in the alternative, against LS Trading for equitable subrogation.

50.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

51.    Paul Homes is not and was not in the business of manufacturing, distributing, or selling drywall and had no reason to know or to suspect that there were problems with the

manufacturer, exporter, wholesaler, or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, importing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply drywall that complied with all applicable building and industry standards.

62.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

63.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in marketing, importing, distributing, supplying, and/or selling defective drywall would expose Paul Homes to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Paul Homes would ensue as a result of marketing, importing, distributing, supplying and/or selling defective drywall.

64.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of

Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 5 – NEGLIGENT FAILURE TO WARN
### (Against La Suprema Trading Inc.)

65.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

66.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

67.     Upon information and belief, LS Trading imported, distributed, sold and/or supplied drywall that was installed in the Homes.

68.     Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

69.     As such, LS Trading owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it imported, distributed, sold and/or supplied or disclose any adverse effects associated with the drywall; (ii) warn foreseeable consumers such as Paul Homes about any dangers inherent in the drywall, and/or (iii) warn foreseeable consumers such as Paul Homes about any problems or dangers in using the

drywall for residential construction.

70.     Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

71.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or should have known that unless it warned foreseeable consumers such as Paul Homes of the risk of using the drywall it distributed, sold, and/or supplied, Paul Homes would suffer harm. However, LS Trading failed to provide an adequate warning of such danger.

72.     Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in  a residential home in the ordinary manner.

73.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading breached its duty of care to Paul Homes by: (i) failing to disclose any defects in the drywall materials it supplied which it knew or reasonably should have known about; (ii) failing to warn foreseeable consumers such as Paul Homes

about any dangers inherent in the drywall, and/or (iii) failing to warn foreseeable consumers such as Paul Homes about any problems or dangers in using the drywall for residential construction, about which LS Trading knew or reasonably should have known.

74.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in LS Trading's duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

75.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If LS Trading had exercised that degree of care that a prudent or reasonably cautious importer, distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

76.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by LS Trading's breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. LS Trading's wrongful conduct also caused damages to Paul Homes, including but not

limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 6– BREACH OF THE POST-SALE DUTY TO WARN
### (Against La Suprema Trading Inc.)

77.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

78.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

79.     Upon information and belief, LS Trading imported, distributed, sold and/or supplied drywall that was installed in the Homes.

80.     Paul Homes was a foreseeable user of the drywall imported, distributed supplied, and/or sold by LS Trading.

81.     To the extent Plaintiffs are successful in proving that drywall imported, marketed, distributed, supplied, and/or sold by LS Trading was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left LS Trading's control and/or was sold to Paul Homes, LS Trading knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

82.     To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

damaged by LS Trading's breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 7 – STRICT PRODUCTS LIABILITY
### (Against La Suprema Trading Inc.)

89.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

90.     At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

91.     Upon information and belief, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading.

92.     At the time said drywall was placed into the stream of commerce, imported distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

93.     LS Trading expected the drywall to reach Paul Homes and/or the Homes without

substantial change affecting its condition, and the alleged defective drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

94.     Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

95.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall imported, distributed, placed into the stream of commerce, supplied and/or sold by LS Trading directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper

### COUNT 8 – STRICT PRODUCTS LIABILITY FAILURE TO WARN
### (Against La Suprema Trading Inc.)

96.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

97.     At all material times, LS Trading was in the business of importing, distributing, supplying, and/or selling drywall of the type contained in the Homes.

98.     At all material times, the drywall contained in the Homes was placed into the stream of commerce, imported, distributed, and/or sold by LS Trading.

99.     At the time said drywall was placed into the stream of commerce, imported, distributed, supplied and/or sold by LS Trading, LS Trading intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

100.    LS Trading expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

101.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

102.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which LS Trading was required to provide a warning. However, LS Trading failed to provide an adequate warning of such danger.

103.    Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

104.    To the extent Plaintiffs are successful in proving that the drywall in the

Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because LS Trading failed to warn Paul Homes of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

105.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.   LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 9
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against La Suprema Trading Inc.)

106.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32

above as if fully set forth herein.

107.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

108.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

109.    At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

110.    At all material times, LS Trading engaged in trade or commerce by importing, selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Paul Homes.

111.    LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold drywall that was installed in the Homes.

112.    At the time LS Trading imported, advertised, solicited, offered, distributed, supplied and/or sold the drywall, LS Trading represented the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

113.    Plaintiffs, in the Complaint, allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

114.    Without admitting any liability or damages to Plaintiffs, to the extent

Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, at the time LS Trading imported, sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, LS Trading knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

115. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from LS Trading's unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

116. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction as more specifically alleged in paragraphs 11 – 29 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

117. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, LS Trading's unfair and deceptive conduct in

importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which drywall is used.

118.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's unfair and deceptive conduct in importing, advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

119.   To the extent Plaintiffs are successful in that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. LS Trading's violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul

Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  LS Trading's wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 10 – UNJUST ENRICHMENT
### (Against La Suprema Trading, Inc.)

120.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

121.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

122.    LS Trading imported, distributed, sold and/or supplied the drywall that was installed in the Homes.

123.    LS Trading received money from Paul Homes as payment for the alleged defective drywall installed in the Homes.

124.    In delivering such payment, monies and/or funds to pay for the drywall that was installed in the Homes, Paul Homes conferred a benefit, *i.e.*, funds and profit, to LS Trading, which had knowledge thereof.

125.    LS Trading voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

126.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, LS Trading's acts and omissions in importing, distributing, selling, and/or supplying defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

127.    The circumstances described herein under which LS Trading profited from importing, distributing, selling, and/or supplying defective drywall make it inequitable for LS Trading to retain those funds and profits.

128.    Paul Homes has no adequate remedy at law.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Third-Party Defendant, La Suprema Trading Inc., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 11 – COMMON LAW INDEMNITY
### (Against Banner Supply Co.)

129.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

130.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

131.    Paul Homes is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Supply Co. Paul Homes justifiably relied on Banner Supply Co. to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

132.    Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

133.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Supply Co.

134.    A special relationship existed between Banner Supply Co. and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Supply Co.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Supply Co. was defective and wholly to blame for Plaintiffs' injuries.

135.    As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Supply Co. to distribute, supply and/or sell drywall fit for its intended purpose.

136.    If Paul Homes is found to be liable to Plaintiffs, Banner Supply Co. is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against

Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

**WHEREFORE,** Paul Homes demands judgment for indemnity in its favor against Banner Supply Co., for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 12 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Supply Co.)

137.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

138.    This is an action, stated in the alternative, against Banner Supply Co. for contribution pursuant to Section 768.31, Florida Statutes.

139.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

140.    Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, Banner Supply Co. would also share in the liability to the extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

141.    Paul Homes has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

142.    To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against Banner Supply Co. for its pro rata share of the liability.

143.    Banner Supply Co. should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on

behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its pro rata share of any common liability.

**WHEREFORE**, Paul Homes demands that judgment be entered against Banner Supply Co. for its pro rata share of the liability, if any, found against Paul Homes in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

**COUNT 13 – EQUITABLE SUBROGATION**
**(Against Banner Supply Co.)**

144.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

145.    This is an action, stated in the alternative, against Banner Supply Co. for equitable subrogation.

146.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

147.    Paul Homes is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall sold by Banner Supply Co.  Paul Homes justifiably relied on Banner Supply Co. to distribute, sell and/or supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes.

148.    Without admitting any liability or damages to Plaintiffs, Paul Homes is not primarily liable for any liability to the Plaintiffs.

149.    To the extent that Paul Homes is required to pay damages for any fault of Banner Supply Co. to protect its own interests, and not as a volunteer, Paul Homes would be entitled to

reimbursement from Banner Supply Co. under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

150.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Paul Homes demands judgment in its favor and against Banner Supply Co. for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 14 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLA. STAT. § 672.314
### (Against Banner Supply Co.)

151.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

152.    This is an action against Banner Supply Co. for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

153.    Paul Homes purchased drywall from Banner Supply Co. to be installed in the Homes.  Banner Supply Co. knew that Paul Homes required and expected the drywall it distributed, supplied and/or sold to be fit for the ordinary purpose for which it was intended, i.e. safe and fit for use in the construction of residential homes, and Paul Homes justifiably relied on Banner Supply Co.'s skill and judgment to supply such drywall for the construction of residential homes.

154.    Pursuant to the relationship between the parties, Banner Supply Co. is deemed to have provided Paul Homes with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Banner Supply Co.

155.    The drywall distributed, supplied and/or sold by Banner Supply Co. for use in the construction of the Homes was not altered and/or otherwise substantively changed by Paul Homes.

156.    Pursuant to Fla. Stat. § 672.314 and/or common law, Banner Supply Co. warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, i.e. safe and fit for use in the construction of residential homes.

157.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.  Paul Homes denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Paul Homes is found liable to Plaintiffs, Banner Supply Co. breached the implied warranty of merchantability by distributing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

158.    As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Supply Co. to distribute, supply and/or sell drywall fit for its intended purpose, i.e., for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against

Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. Banner Supply Co.'s wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

159.    Paul Homes timely notified Banner Supply Co. of the alleged defective gypsum drywall, but Banner Supply Co. has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 15 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Banner Supply Co.)

160.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

161.    This is an action against Banner Supply Co. for breach of the implied warranty of fitness.

162.    Paul Homes purchased drywall from Banner Supply Co. to be installed in the Homes.

163.    Banner Supply Co. knew that Paul Homes required and expected the drywall that Banner Supply Co. distributed, supplied and/or sold to be safe and fit for use in the construction of residential homes.

164.    Paul Homes justifiably relied on Banner Supply Co.'s skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

165.    Pursuant to the relationship between the parties, Banner Supply Co. is deemed to have provided Paul Homes with an implied warranty of fitness as to the drywall materials distributed, supplied and/or sold by Banner Supply Co.

166.    The drywall distributed, supplied and/or sold by Banner Supply Co. for use in the construction of the Homes was not altered and/or otherwise substantively changed by Paul Homes.

167.    Banner Supply Co. impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

168.    In the Complaint, Plaintiffs allege that the defective drywall in the Homes proximately caused their injuries.  Paul Homes denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Paul Homes is found liable to Plaintiffs, Banner Supply Co. breached the implied warranty of fitness by distributing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

169.    As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Supply Co. to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against

these claims. Banner Supply Co.'s wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

170.    Paul Homes timely notified Banner Supply Co. of the defective gypsum drywall, but Banner Supply Co. has failed to repair or replace the defective gypsum drywall installed in the Homes.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 16 – NEGLIGENCE
### (Against Banner Supply Co.)

171.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

172.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

173.    Banner Supply Co. distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

174.    Paul Homes was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

175.    As such, Banner Supply Co. owed Paul Homes a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Paul Homes' customers; and, (ii) market, distribute, supply

and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

176. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

177. Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. breached its duty of care to Paul Homes by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it distributed, sold and/or supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall Banner Supply Co. sold and/or supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling supplying, and/or selling drywall which allegedly contained defects that could cause the damage alleged by Plaintiffs; and, (iv) failing to supply Paul Homes with drywall that complied with all applicable building and industry standards.

178. To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, such breaches in Banner Supply Co.'s duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

179.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying and/or selling defective drywall would expose Paul Homes to substantial liability and damages. If Banner Supply Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective and that damages to Paul Homes would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

180.   Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by Banner Supply Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other actions brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. Banner Supply Co.'s wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Co., in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 17 – NEGLIGENT FAILURE TO WARN**
**(Against Banner Supply Co.)**

181.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

182.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

183.   Banner Supply Co. distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

184.   Paul Homes was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

185.   As such, Banner Supply Co. owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse effects associated with the drywall; (ii) warn Paul Homes about any dangers inherent in the drywall, and/or (iii) warn Paul Homes about any problems or dangers in using the drywall for residential construction.

186.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in

the Complaint, Banner Supply Co. knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

187. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or should have known that unless it warned Paul Homes of the risk of using the drywall it distributed, sold, and/or supplied, Paul Homes would suffer harm. However, Banner Supply Co. failed to provide an adequate warning of such danger.

188. Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs. Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

189. To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. breached its duty of care to Paul Homes by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Paul Homes about any dangers inherent in the drywall, and/or (iii) failing to warn Paul Homes about any problems or dangers in using the drywall for residential construction, about which Banner Supply Co. knew or reasonably should have known.

190.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Supply Co.'s duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

191.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co. knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If Banner Supply Co. had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

192.   Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by Banner Supply Co.'s breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 18 – BREACH OF THE POST-SALE DUTY TO WARN**
**(Against Banner Supply Co.)**

193.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

194.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

195.    Banner Supply Co. distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

196.    Paul Homes was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

197.    To the extent Plaintiffs are successful in proving that drywall distributed, supplied, and/or sold by Banner Supply Co. was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Supply Co.'s control and/or was sold to Paul Homes, Banner Supply Co. knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

198.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co., as the distributor, supplier and/or seller of the drywall,

had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction. Banner Supply Co. breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

199. To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

200. Consumers, such as Paul Homes, to whom a warning might have been provided could have been identified by Banner Supply Co.

201. A warning could have been effectively communicated to consumers such as Paul Homes and acted on by them.

202. At all material times, Banner Supply Co. stood in a better position than Paul Homes to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Paul Homes was unaware of potential dangers and/or risk of harm associated with the use of Banner Supply Co.'s drywall product in residential construction.

203. To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Supply Co.'s position would have provided a post-sale warning.

204.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Paul Homes was damaged by Banner Supply Co.'s breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. Banner Supply Co.'s wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 19 – STRICT PRODUCTS LIABILITY
### (Against Banner Supply Co.)

205.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

206.    At all material times, Banner Supply Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

207.    At all material times, the gypsum drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co. to Paul Homes.

208.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co., Banner Supply Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

209.    Banner Supply Co. expected the gypsum drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective gypsum drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

210.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

211.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective gypsum drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Supply Co. directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  Banner Supply Co.'s wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 20 – STRICT PRODUCTS LIABILITY FAILURE TO WARN</u>
**(Against Banner Supply Co.)**

212.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

213.    At all material times, Banner Supply Co. was in the business of distributing, supplying, and/or selling gypsum drywall of the type contained in the Homes.

214.    At all material times, the gypsum drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Supply Co. to Paul Homes.

215.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Supply Co., Banner Supply Co. intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

216.    Banner Supply Co. expected the gypsum drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the gypsum drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

217.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

218.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential

construction involved a danger of which Banner Supply Co. was required to provide a warning. However, Banner Supply Co. failed to provide an adequate warning of such danger.

219.    Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

220.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Supply Co. failed to warn Paul Homes of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

221.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s failure to adequately warn of the drywall's unreasonably dangerous propensities or risks associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. Banner Supply Co.'s wrongful conduct also

caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

<u>COUNT 21 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR</u>
<u>TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.</u>
**(Against Banner Supply Co.)**

222.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

223.   This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

224.   The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."   Fla. Stat. § 501.202(2).

225.   At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

226.   At all material times, Banner Supply Co. engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Paul Homes.

227.   Banner Supply Co. advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

228.   At the time Banner Supply Co. advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Supply Co. represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and free from defects.

229.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

230.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Supply Co. sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Supply Co. knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

231.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, Plaintiffs' claims arise from Banner Supply Co.'s unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

232.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more

fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, as more specifically alleged in paragraphs 11 - 29, herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

233.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall unfit, was likely to deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

234.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe

for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

235.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Supply Co.'s violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.   Banner Supply Co.'s wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Co., in an amount to be determined at trial, plus attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 22 – UNJUST ENRICHMENT
### (Against Banner Supply Co.)

236.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

237.   This is an action, stated in the alternative, against Banner Supply Co. for unjust enrichment.

238.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

239.     Banner Supply Co. distributed, sold and/or supplied to Paul Homes the gypsum drywall that was installed in the Homes.

240.     Paul Homes paid Banner Supply Co. for supplying the drywall for the Homes.

241.     Banner Supply Co. received money from Paul Homes as a result of Paul Homes' purchases of defective drywall that was installed in the Homes.

242.     In delivering such payment, monies and/or funds to Banner Supply Co., Paul Homes conferred a benefit, *i.e.*, funds and profit, to Banner Supply Co., which had knowledge thereof.

243.     Banner Supply Co. voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

244.     To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Supply Co.'s acts and omissions in distributing, supplying and/or selling defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

245.    The circumstances described herein, under which Banner Supply Co. profited from selling and/or supplying defective drywall, make it inequitable for Banner Supply Co. to retain those funds and profits.

246.    Paul Homes has no adequate remedy at law.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Co. in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 23– COMMON LAW INDEMNITY**
**(Against Banner Fort Myers)**

247.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

248.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

249.    Paul Homes is not and was not in the business of distributing, supplying and/or selling drywall and had no reason to know or to suspect that there were problems with the drywall distributed, supplied and/or sold by Banner Fort Myers.

250.    Paul Homes is entirely without fault for the injuries alleged by Plaintiffs.

251.    Any injuries suffered by Plaintiffs were due to the acts or omissions of Banner Fort Myers.

252.    A special relationship existed between Banner Fort Myers and Paul Homes such that any liability imposed upon Paul Homes in this matter will be secondary, passive, solely vicarious, constructive, derivative or technical to Banner Fort Myers.  Moreover, to the extent that Plaintiffs are successful in proving their claims, the drywall distributed, sold and/or supplied by Banner Fort Myers was defective and wholly to blame for Plaintiffs' injuries.

253.    As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Fort Myers to distribute, supply and/or sell drywall fit for its intended purpose, *i.e.*, safe and fit for use in the construction of residential homes.

254.    If Paul Homes is found to be liable to Plaintiffs, Banner Fort Myers is liable to Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, related to the claims brought by Plaintiffs and/or for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

**WHEREFORE**, Paul Homes demands judgment for indemnity in its favor against Banner Supply Company Fort Myers, LLC, for damages plus attorneys' fees, interest and costs as damages, and for such other relief as the Court deems just and proper.

### COUNT 24 – CONTRIBUTION PURSUANT TO FLA. STAT. § 768.31
### (Against Banner Fort Myers)

255.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

256.    This is an action, stated in the alternative, against Banner Fort Myers for contribution pursuant to Section 768.31, Florida Statutes.

257.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defects in the drywall contained in the Homes.

258.     Without admitting any liability or damages to Plaintiffs, should Paul Homes be found liable, Banner Fort Myers would also share in the liability to extent its tortious acts or omissions caused or contributed to the damages claimed by Plaintiffs for the alleged defects in the drywall.

259.     Paul Homes has not intentionally caused or contributed to the damages alleged by the Plaintiffs in this action.

260.     To the extent that any common liability is found with respect to Paul Homes, Paul Homes hereby asserts its right of contribution against Banner Fort Myers for its pro rata share of the liability.

261.     Banner Fort Myers should be required to repay Paul Homes for any loss, damages, costs, and expenses, including attorneys' fees, Paul Homes is required to pay to or on behalf of Plaintiffs for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims in this action and/or any other action brought by Plaintiffs against Paul Homes, in excess of its pro rata share of any common liability.

**WHEREFORE**, Paul Homes demands that judgment be entered against Banner Supply Company Fort Myers, LLC, for its pro rata share of the liability, if any, found against Paul Homes in this action, plus costs and interest, and such other and further relief as this Court deems just and proper.

### COUNT 25 – EQUITABLE SUBROGATION
### (Against Banner Fort Myers)

262.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

263.    This is an action, stated in the alternative, against Banner Fort Myers for equitable subrogation.

264.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes.

265.    Paul Homes is not and was not in the business of manufacturing, distributing or selling drywall and had no reason to know or to suspect that there were problems with the drywall supplied by Banner Fort Myers. Paul Homes justifiably relied on Banner Fort Myers to supply drywall that was fit for the ordinary purpose for which it was intended, *i.e.* not unreasonably dangerous and fit for use in the construction of residential homes.

266.    Without admitting any liability or damages to Plaintiffs, Paul Homes is not primarily liable for any liability to the Plaintiffs.

267.    To the extent that Paul Homes is required to pay damages for any fault of Banner Fort Myers to protect its own interests, and not as a volunteer, Paul Homes would be entitled to reimbursement from Banner Fort Myers under equitable principles for any damages which are attributable to it related to the claims brought by Plaintiffs in this action and/or any other action brought by Plaintiffs against Paul Homes, including, without limitation, payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payments for the amount of any judgment entered against Paul Homes and/or amounts paid in settlement in this action and/or any other action brought by Plaintiffs against Paul Homes, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against the claims brought by Plaintiffs.

268.    Such subrogation will not work any injustice to the rights of others.

**WHEREFORE**, Paul Homes demands judgment in its favor and against Banner Supply Company Fort Myers, LLC, for equitable subrogation, as well as attorneys' fees, costs and interest, together with any such other relief as this Court deems just and proper.

### COUNT 26 – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER COMMON LAW AND/OR FLA. STAT. § 672.314

269.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

270.    This is an action against Banner Fort Myers for breach of the implied warranty of merchantability under the common law and/or Section 672.314, Florida Statutes.

271.    Paul Homes purchased drywall from Fort Myers to be installed in the Homes. Banner Fort Myers knew that Paul Homes required and expected the drywall it distributed, supplied and/or sold to be fit for the ordinary purpose for which it was intended, i.e. safe and fit for use in the construction of residential homes, and Paul Homes justifiably relied on Fort Myers' skill and judgment to supply such drywall for the construction of residential homes.

272.    Pursuant to the relationship between the parties, Banner Fort Myers is deemed to have provided Paul Homes with an implied warranty of merchantability as to the drywall materials distributed and/or sold by Banner Fort Myers.

273.    The drywall distributed, supplied and/or sold by Banner Fort Myers for use in the construction of the Homes was not altered and/or otherwise substantively changed by Paul Homes.

274.    Pursuant to Fla. Stat. § 672.314 and/or common law, Banner Fort Myers warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for

which gypsum drywall is used in residential construction, i.e. safe and fit for use in the construction of residential homes.

275.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages caused by defective drywall contained in the Homes. Paul Homes denies it has any liability to Plaintiffs. However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not merchantable and Paul Homes is found liable to Plaintiffs, Banner Fort Myers breached the implied warranty of merchantability by distributing, supplying and/or selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used in residential home construction.

276.    As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Fort Myers to distribute, supply and/or sell drywall fit for its intended purpose, i.e., for use in the construction of residential homes, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

277.    Paul Homes timely notified Banner Fort Myers of the alleged defective gypsum drywall, but Banner Fort Myers has failed to repair or replace the defective gypsum drywall.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 27 – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Against Banner Fort Myers)

278.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

279.    This is an action against Banner Fort Myers for breach of the implied warranty of fitness.

280.    Paul Homes purchased drywall from Banner Fort Myers to be installed in the Home.

281.    Banner Supply Co. knew that Paul Homes required and expected the drywall that Banner Fort Myers distributed, supplied and/or sold to be safe and fit for use in the construction of residential homes.

282.    Paul Homes justifiably relied on Banner Fort Myers' skill and judgment to sell drywall fit for the particular purpose of constructing residential homes.

283.    Pursuant to the relationship between the parties, Banner Fort Myers is deemed to have provided Paul Homes with an implied warranty of fitness as to the drywall materials distributed, supplied and/or sold by Banner Fort Myers.

284.    The drywall distributed, supplied and/or sold by Banner Fort Myers for use in the construction of the Homes was not altered and/or otherwise substantively changed by Paul Homes.

285.    Banner Fort Myers impliedly warranted that the drywall was safe and fit for use in the construction of residential homes.

286.   In the Complaint, Plaintiffs allege that the defective drywall in the Homes proximately caused their injuries.  Paul Homes denies it has any liability to Plaintiffs.  However, to the extent that Plaintiffs are successful in proving that the drywall in the Homes is defective and not fit for the particular purpose for which the drywall was required and Paul Homes is found liable to Plaintiffs, Banner Fort Myers breached the implied warranty of fitness by distributing, supplying and/or selling drywall that was defective and not reasonably fit for use in the construction of residential homes.

287.   As a result of the claims that have been filed against Paul Homes, Paul Homes has incurred losses, damages, costs, attorneys' fees and expenses due to the alleged failure of Banner Fort Myers to distribute and/or sell drywall fit for its intended purpose, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

288.   Paul Homes timely notified Banner Fort Myers of the defective gypsum drywall, but Banner Supply Co. has failed to repair or replace the defective gypsum drywall installed in the Homes.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 28 – NEGLIGENCE
### (Against Banner Fort Myers)

289.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

290.    In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

291.    Banner Fort Myers distributed, sold and/or supplied the gypsum drywall that was installed in the Homes.

292.    Paul Homes was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

293.    As such, Banner Fort Myers owed Paul Homes a duty to, among other things, exercise reasonable care to (i) investigate and/or inspect, market, distribute, supply and/or sell drywall which was free from defects that could cause property damage, bodily injury, and damage the health and safety of Paul Homes' customers; and, (ii) market, distribute, supply and/or sell drywall materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

294.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Fort Myers knew or should have known that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use.

295.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Home was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in Plaintiffs' Complaint, Banner Fort Myers breached its duty of care to Paul Homes by among other things, (i) failing to exercise reasonable care in investigating and/or inspecting the properties of the drywall it supplied for installation in the Homes to ensure that it was not defective and complied with all applicable building and industry standards; (ii) failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturer, importer, wholesaler or distributor of the drywall it supplied; (iii) acquiring, procuring, marketing, distributing, wholesaling and/or selling drywall which allegedly contained defects that could cause the damages alleged by Plaintiffs; and, (iv) failing to supply Paul Homes with drywall that complied with all applicable building and industry standards.

296.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Fort Myers' duties of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

297.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or reasonably should have known that its acts and omissions in marketing, distributing, supplying, and/or selling defective drywall would expose Paul Homes to substantial liability and damages. If Banner Fort Myers had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that the drywall was defective

and that damages to Paul Homes would ensue as a result of marketing, distributing, supplying and/or selling defective drywall.

298.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by Banner Fort Myers' breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 29 – NEGLIGENT FAILURE TO WARN
### (Against Banner Fort Myers)

299.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

300.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

301.    Banner Fort Myers distributed, supplied and/or sold the drywall that was installed in the Homes.

302.    Paul Homes was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

303.    As such, Banner Fort Myers owed Paul Homes a duty to, among other things, exercise reasonable care to: (i) disclose any defects in the drywall materials it distributed, sold and/or supplied or disclose any adverse effects associated with the drywall; (ii) warn Paul Homes about any dangers inherent in the drywall, and/or (iii) warn Paul Homes about any problems or dangers in using the drywall for residential construction.

304.    Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or should have known that the drywall was or was likely to be defective, unreasonably dangerous and/or not reasonably safe for its intended use.

305.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or should have known that unless it warned Paul Homes of the risk of using the drywall it distributed, sold, and/or supplied, Paul Homes would suffer harm. However, Banner Fort Myers failed to provide an adequate warning of such danger.

306.    Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as alleged by Plaintiffs.  Without a warning,

Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

307.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers breached its duty of care to Paul Homes by (i) failing to disclose any defects in the drywall materials it distributed, supplied and/or sold which it knew or reasonably should have known about; (ii) failing to warn Paul Homes about any dangers inherent in the drywall, and/or (iii) failing to warn Paul Homes about any problems or dangers in using the drywall for residential construction, about which Banner Fort Myers knew or reasonably should have known.

308.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, such breaches in Banner Fort Myers' duty of care were the direct and proximate cause of Paul Homes' injuries, losses, and damages.

309.   To the extent Plaintiffs are successful in proving that drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers knew or reasonably should have known that its acts and omissions in failing to disclose and/or warn of drywall defects would expose Paul Homes to substantial liability and damages. If Banner Fort Myers had exercised that degree of care that a prudent or reasonably cautious distributor and/or supplier acting under the same circumstances would exert, it would or could have foreseen that damages to Paul Homes would ensue as a result of failing to disclose and/or warn of drywall defects.

310.     Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by Banner Fort Myers' breaches of its duties of care, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 30 – BREACH OF THE POST-SALE DUTY TO WARN
### (Against Banner Fort Myers)

311.     Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

312.     In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

313.     Banner Fort Myers distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

314.   Paul Homes was a foreseeable user of the drywall distributed supplied, and/or sold by Banner Fort Myers.

315.   To the extent Plaintiffs are successful in proving that the drywall distributed, supplied, and/or sold by Banner Fort Myers was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, after the time such drywall left Banner Fort Myers' control and/or was sold to Paul Homes, Banner Fort Myers knew or reasonably should have known that the drywall was unduly hazardous and/or posed a substantial risk of harm to persons or property.

316.   To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers, as the distributor, supplier and/or seller of the drywall, had a duty to exercise reasonable care to learn of post-sale problems with its drywall product and/or issue a post-sale warning of potential dangers and/or risk of harm associated with the use of its drywall product in residential construction.  Banner Fort Myers breached that duty by failing to properly investigate and/or learn of any post-sale problems with its drywall product and/or issue a post-sale warning of such risks.

317.   To the extent Plaintiffs are successful in proving that such drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the potential dangers and/or risk of harm associated with the use of the drywall in residential construction were sufficiently great to justify the burden of providing a warning.

318.   Consumers, such as Paul Homes, to whom a warning might have been provided, could have been identified by Banner Fort Myers.

319.    A warning could have been effectively communicated to consumers such as Paul Homes and acted on by them.

320.    At all material times, Banner Fort Myers stood in a better position than Paul Homes to know of such drywall's applications, performance, risks and dangers and it could reasonably be assumed that Paul Homes was unaware of potential dangers and/or risk of harm associated with the use of Banner Fort Myers' drywall product in residential construction.

321.    To the extent Plaintiffs are successful in proving that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, a reasonable distributor, seller and/or supplier in Banner Fort Myers' position would have provided a post-sale warning.

322.    Without admitting any liability or damages to Plaintiffs, Paul Homes was damaged by Banner Fort Myers' breach of its post-sale duty to warn, which directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.  Banner Fort Myers' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT 31 – STRICT PRODUCTS LIABILITY
### (Against Banner Fort Myers)

323.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

324.    At all material times, Banner Fort Myers was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

325.    At all material times, the drywall contained in Plaintiffs' Homes was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers to Paul Homes.

326.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers. Banner Fort Myers intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

327.    Banner Fort Myers expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the alleged defective drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

328.    Plaintiffs in the Complaint allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

329.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the defective drywall distributed, placed into the stream of commerce, supplied and/or sold by Banner Fort Myers directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for

the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE, WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

**COUNT 32– STRICT PRODUCTS LIABILITY FAILURE TO WARN**
**(Against Banner Fort Myers)**

330.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

331.    At all material times, Banner Fort Myers was in the business of distributing, supplying, and/or selling drywall of the type contained in the Homes.

332.    At all material times, the drywall contained in the Homes was placed into the stream of commerce, distributed, and/or sold by Banner Fort Myers.

333.    At the time said drywall was placed into the stream of commerce, distributed, supplied and/or sold by Banner Fort Myers, Banner Fort Myers intended that the drywall reach consumers and/or ultimate users of the drywall, such as Paul Homes.

334.    Banner Fort Myers expected the drywall to reach Paul Homes and/or the Homes without substantial change affecting its condition, and the drywall did in fact reach Paul Homes and/or the Homes without substantial change affecting that condition.

335.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

336.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, the use of such defective drywall in residential construction involved a danger of which Banner Fort Myers was required to provide a warning.   However, Banner Fort Myers failed to provide an adequate warning of such danger.

337.   Paul Homes did not know, had no reason to believe, and was never informed that the drywall had an odor or emitted noxious gases, or could pose serious or unreasonable risk of harm or injury to persons and/or property, as more fully alleged in the Complaint.

338.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, it was so because Banner Fort Myers failed to warn Paul Homes of the risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes. Without a warning, Paul Homes had no way of anticipating that the drywall could harm persons and/or property and had every reason to expect that the product could be safely used in a residential home in the ordinary manner.

339.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use

as more fully alleged in the Complaint, Banner Fort Myers' failure to adequately warn of the risks associated with the use of the drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

### COUNT 33 - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, ET SEQ.
### (Against Banner Fort Myers)

340.    Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

341.    This is an action for violation of §§ 501.201, *et seq.*, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act").

342.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

343.   At all material times, Paul Homes was a person and a consumer of drywall as defined under FDUTPA.

344.   At all material times, Banner Fort Myers engaged in trade or commerce by selling, advertising, soliciting, offering, distributing and/or supplying drywall to consumers, such as Paul Homes.

345.   Banner Fort Myers advertised, solicited, offered, distributed, supplied and/or sold the gypsum drywall that was installed in the Homes.

346.   At the time Banner Fort Myers advertised, solicited, offered, distributed, supplied and/or sold the drywall, Banner Fort Myers represented that the drywall was fit for the ordinary purpose for which it was intended, *i.e.* safe and fit for use in the construction of residential homes, and free from defects.

347.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on the unduly hazardous condition of the drywall in the Homes posing serious or unreasonable risk of harm or injury to persons and/or property, including but not limited to the Other Property in the Homes.

348.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the  Complaint, at the time Banner Fort Myers sold, advertised, solicited, offered, distributed and/or supplied the drywall that was installed in the Homes, Banner Fort Myers knew or should have known that the drywall was in fact unfit and/or unreasonably dangerous.

349.   Without admitting any liability or damages to Plaintiffs, to the extent Plaintiffs are successful in proving that the drywall in the Homes was defective,

unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Plaintiffs' claims arise from Banner Fort Myers' unfair and deceptive conduct in selling, advertising, soliciting, offering, distributing and/or supplying defective drywall, and/or failing to disclose that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use in residential construction.

350.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall, and/or its failure to disclose that the drywall was unreasonably dangerous and/or not reasonably safe for its intended use in residential construction, as more specifically alleged in paragraphs 11 - 29 herein, constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices within the meaning of FDUTPA.

351.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective gypsum drywall, and/or its failure to disclose that the drywall was unfit, was likely to deceive and/or mislead a consumer such as Paul Homes acting reasonably in the same circumstances, to the consumer's detriment. A reasonable consumer would presume that the drywall was reasonably fit for the ordinary purpose for which gypsum drywall is used in residential construction, *i.e.* safe and fit for use in the construction of residential homes. A reasonable consumer would also presume that the distributor or supplier of such gypsum drywall product would disclose and/or issue a warning to

consumers after it became aware that the drywall was not reasonably fit for the ordinary purpose for which gypsum drywall is used.

352.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' unfair and deceptive conduct in advertising, soliciting, offering, distributing, supplying and/or selling defective drywall and/or its failure to disclose that that the drywall was defective, unreasonably dangerous and/or not reasonably safe for its intended use offends public policy and is immoral, unethical, and substantially injurious to consumers, such as Paul Homes.

353.    To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Paul Homes did not get what it bargained for and is entitled to its actual damages, plus attorneys' fees and court costs. Banner Fort Myers' violations of FDUTPA directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims. Banner Fort Myers' wrongful conduct also caused damages to Paul Homes, including but not limited to Paul Homes' loss of reputation, goodwill and lost profits.

**WHEREFORE**, Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus

attorneys' fees, costs and interest, and for such further and other relief as the Court may deem just and proper.

### COUNT 34– UNJUST ENRICHMENT
### (Against Banner Fort Myers)

354.   Paul Homes reasserts and realleges the allegations in paragraphs 1 through 32 above as if fully set forth herein.

355.   In the Complaint, Plaintiffs allege various claims against Paul Homes for damages grounded on defective drywall in the Homes posing serious risk of injury to persons or property.

356.   This is an action, stated in the alternative, against Banner Fort Myers for unjust enrichment.

357.   Banner Fort Myers distributed, supplied and/or sold to Paul Homes the gypsum drywall that was installed in the Homes.

358.   Paul Homes paid Banner Fort Myers money for selling and/or supplying drywall for the Homes.

359.   Banner Fort Myers received money from Paul Homes as a result of Paul Homes' purchases of defective drywall installed in the Homes.

360.   In delivering such payment, monies and/or funds to Banner Fort Myers, Paul Homes conferred a benefit, *i.e.*, funds and profit, to Banner Fort Myers, which had knowledge thereof.

361.   Banner Fort Myers voluntarily accepted and retained the benefit conferred upon it by Paul Homes.

362.   To the extent Plaintiffs are successful in proving that the drywall in the Homes was defective, unreasonably dangerous and/or not reasonably safe for its intended use as more fully alleged in the Complaint, Banner Fort Myers' acts and omissions in distributing,

supplying and/or selling defective drywall directly and proximately caused and/or exposed Paul Homes to substantial liability and damages, including but not limited to any payments made or to be made on behalf of Paul Homes to or on behalf of Plaintiffs, payment for the amount of any judgment entered against Paul Homes in this action and/or any other action brought by Plaintiffs against Paul Homes, and/or the settlement of Plaintiffs' claims, as well as reasonable costs and attorneys' fees incurred by Paul Homes in defending against these claims.

363.    The circumstances described herein under which Banner Fort Myers profited from distributing, selling and/or supplying drywall make it inequitable for Banner Fort Myers to retain those funds and profits.

364.    Paul Homes has no adequate remedy at law.

**WHEREFORE,** Paul Homes demands judgment for damages in its favor and against Banner Supply Company Fort Myers, LLC, in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**COMES NOW** Defendant/Cross-Plaintiff/Third-Party Plaintiff, Paul Homes Homes, Inc., and hereby demands a trial by jury as to all issues so triable as a matter of right in the Cross-Claims and Third-Party Claims.

Respectfully submitted this 17th day of May. 2012.

**AKERMAN SENTERFITT**

BY: /s/      Stacy Bercun Bohm
Stacy Bercun Bohm, Esq. (Fla. Bar No. 022462)
Valerie B. Greenberg, Esq. (Fla. Bar No. 26514)
Leslie Miller Tomczak, Esq. (Fla. Bar No. 126489)
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Telecopier: (954) 463-2224
Email:  stacy.bohm@akerman.com
        valerie.greenberg@akerman.com
        leslie.tomczak@akerman.com

*Attorneys for Management Services of Lee County,
Inc., f/k/a Paul Homes, Inc.*

Brent B. Barriere (La. Bar No. 2818)
D. Skylar Rosenbloom (La. Bar No. 31309)
**Phelps Dunbar LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  Brent.barriere@phelps.com
        Skylar.rosenbloom@phelps.com

{24173078;1}

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2012, the foregoing was served on (1) Plaintiffs' Liaison Counsel, **Russ Herman**, Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Ave., Suite 100, New Orleans, LA   70113 (rherman@hhkc.com), and Defendants' Liaison Counsel, **Kerry Miller**, Frilot, L.L.C., Suite 3700, 1100 Poydras St., New Orleans, LA   70163 (kmiller@frilot.com), *by U.S. Mail and E-mail*; (2) on counsel for the Third Party Defendants *by U.S. Mail* as follows: **Eduardo I. Rasco**, Rosenthal Rosenthal Rasco Kaplan, LLC, One Aventura, Suite 600, 20900 NE 39th Ave., Aventura, FL 33180, **Todd Ehrenreich**, Weinberg Wheeler Hudgins Gunn & Dial, LLC, 2601 South Bayshore Drive, Suite 1500, Miami, FL 33133, and **Shubra R. Mashelkar**, Weinberg Wheeler Hudgins Gunn & Dial, LLC, 3344 Peachtree Road, Suite 2400, Atlanta, Georgia 30326; and (3) upon all parties by *electronically* uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

/s/      Stacy Bercun Bohm