UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION ) ) ) ) | CIVIL ACTION NO. 09-2047<br><br>JUDGE FALLON |
| This Document Relates to: ) | MAGISTRATE WILKINSON |
| *Gross, et al. v. Knauf Gips KG, et al.* ) Case No. 2:09-cv-6690 (E.D. La.) ) ) | |
| *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, ) ) Case No. 2:10-cv-00361 (E.D. La.) ) | |

### INTERIOR EXTERIOR'S MEMORANDUM IN SUPPORT OF THE PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO TAISHAN'S MOTIONS PURSUANT TO RULE 12(B)(2) TO DISMISS AND TO PROVIDE ADDITIONAL SUPPORT IN RESPONSE THERETO

MAY IT PLEASE THE COURT:

Interior Exterior Building Supply, L.P. ("Interior Exterior" or ""INEX") respectfully adopts in their entirety the Plaintiffs' Steering Committee's Global Memorandum of Law in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in *Germano* and *Mitchell* and (2) Taishan's Motion to Dismiss the Complaints in *Gross* and *Wiltz*[1] and the Plaintiffs' Steering Committee's Response in Opposition to Taishan's Motions Pursuant to Rule 12(b)(2) to Dismiss the Complaints in *Gross* and *Wiltz*[2].

The PSC has thoroughly put forth the reasoning why jurisdiction over Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co. Ltd. ("TTP") (collectively known as "Taishan") is proper, such that Interior Exterior supplies this Court with limited

---

[1] Docket No. 14209.
[2] Docket No. 14204.

additional brief facts and argument in support of and in reiteration that this Court has authority to exercise jurisdiction over Taishan.

## INTERIOR EXTERIOR PURCHASED
## 33,000 SHEETS OF THE TAISHAN'S DRYWALL

The Plaintiffs' Steering Committee's Response in Opposition to Taishan's Motions Pursuant to Rule 12(b)(2) to Dismiss the Complaints in *Gross* and *Wiltz* assert that Taishan sold and shipped its products to APIC Building Materials ("APIC") and GD Distributors, LLC in Louisiana.[3] The amount of Taishan's drywall shipped to APIC and GD Distributors equates to 12,756 sheets of plasterboard.[4] Notwithstanding this substantial amount of product that was sold directly to APIC and GD Distributors, Taishan also produced an additional 33,000 sheets of its drywall which was sold to Interior Exterior Building Supply through Metro Resources Corporation.[5] With this additional shipment of 33,000 sheets of drywall, the amount of Taishan product that arrived in Louisiana is at least 45,756 sheets.[6]

Interior Exterior purchased the Taishan drywall from Metro Resources Corp., a corporation with offices in Canada and Michigan.[7] Interior Exterior was provided a report concerning Taishan's drywall through an email from Metro Resources relating to a Test Report from the Quality Supervision and Inspection Center of National Building Materials Industry for Decorating and Finishing Materials ("Quality Supervision and

---

[3] PSC's Response in Opposition to Taishan's Motions Pursuant to Rule 12(b)(2) to Dismiss the Complaints in *Gross* and Wiltz, Document No. 14204.
[4] *Id.*
[5] *See* Interior Exterior Building Supply's Profile Form, attached as Exhibit A.
[6] 12,756 sheets of Taishan drywall attributed to APIC and GD Distributors as recognized in the PSC's Response in Opposition to Taishan's Motions Pursuant to Rule 12(b)(2) to Dismiss the Complaints in *Gross* and *Wiltz* plus the additional 33,000 sheets attributed through Interior Exterior Building Supply.
[7] *See* Exhibit A.

2

Inspection Center").[8]  The Test Report shows that the gypsum being tested was manufactured by Taian Taishan Plasterboard Co., Ltd. (TTP) and was produced on February 9, 2006 and delivered to the Quality Supervision and Inspection Center on February 12, 2006.[9]

## LAW AND ARGUMENT

### A.     Jurisdiction is proper over the Taishan.

Louisiana Courts have the same boundaries of personal jurisdiction as corresponding federal courts.  La. R.S. 13:3201 through 13:3207 were adopted on the recommendation of the Louisiana State Law Institute to permit the courts of this state to tap the full potential of jurisdiction *in personam* over nonresidents permitted by *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and *McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).  See La. R.S 13:3201 Comment (a).  Therefore, the analysis as to whether this Court has jurisdiction over Taishan for defective Chinese drywall delivered in Louisiana is identical to the analysis as to whether Louisiana state courts have jurisdiction.

> La. R.S. 13:3201 - Louisiana's Long Arm Statute, in its entirety provides that:
>
> A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
>
> (1) Transacting any business in this state.
>
> (2) Contracting to supply services or things in this state.

---

[8] *See* email communication from David Zhang of Metro Resources Corp. to Jim Geary of Interior Exterior dated May 23, 2006, Bates Labeled INT/EXT01180- INT/EXT01182, also as Exhibit No. 15 of Wenlong Peng's deposition held on April 8, 2011 in Hong Kong, attached as Exhibit B.
[9] *See* Exhibit B.

(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

(5) Having an interest in, using or possessing a real right on immovable property in this state.

(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.

(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.

(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer *could have* foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States. (emphasis ours.)

Taishan misrepresents the spirit embodied in Louisiana's Long Arm Statute. It focuses on section B of the La. R.S. 13:3201, but fails to recognize section A and its enumerated subsections, in particular subsection 8.

(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer *could have* foreseen, realized, expected, or

4

> anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

Subsections of La. R.S. 13:3201(A)(8) have been interpreted to extend personal jurisdiction over nonresident manufacturers when the ultimate product was used in Louisiana, its defects surfaced in Louisiana, resulting in economic injury to Louisiana residents, and the State has a legitimate interest in the controversy. *See Bean Dredging Corp. v. Dredge Tech Corp.*, 744 F.2d 1081 (5th Cir. 1984); *Moses v. Universal Ogden Svcs.*, 16 F.Supp.2d 680 (E.D. La. 1998); *Dahmes v. Champagne Elevators, Inc.*, 869 So.2d 904 (La. App. 4th Cir. 2004).

The Louisiana Long Arm Statute requires not just foreseeability, but a more defined foreseeability that the product would be found in the State based on the manufacturer's marketing practices. The PSC has shown that the Taishan sold and shipped its drywall to Louisiana through APIC and GD Distributors. The PSC has also extensively shown that Taishan's marketing practices, which included sending samples to customers, providing shipping quotes for delivery in New Orleans, and actually sold and shipped its products to Louisiana, demonstrate that Taishan directed its business to Louisiana customers.[10] Thus, with not only over 45,000 pieces of its drywall coming to

---

[10] *See* Ivan Gonima I Depo at 70:13-25, 72:16-18, 73:19-23, 74:2-6, 75:2-8, 79:23-80:1-4, 140:19-141:21(Herman Aff. Ex. 9); *see also* email dated 4/172007 from Bill Cher to Ivan Gonima (TG0000913-914) (Ex. 10 to Che Gang Dep.)(Herman Aff. Ex. 65); *see also* invoices and other shipping documents related to shipment of drywall from TTP and GD Distributors (Ex. 2 to GD Distributors Dep.) (Herman Aff. Ex. 40); *see also* GD Distributors Dep. at p. 43:1-44:1, 44:2-20, 44:25-25:13 (Herman Aff. Ex. 25); *see also* TTP invoice to GD Distributors dated 9/15/2006 (Ex. 7 to GD Distributors Depo.) (TG0019962)(Herman Aff. Ex.109); *see also* email dated 1/5/2006 from Jing Zhang to Bill Che (TG0000886) (Ex. 14 to Che Gang Dep.) (Herman Aff. Ex. 108); *see also* email dated 1/10/2006 from Chegang (Bill Cher) to Mike Westbrook, providing freight quote from Quindao to LA (TG0000907-908)(Ex. 15 to Che Gang Dep.)(Herman Aff. 66); *see also* emails dated 7/10&16/2006 from Bo Zhou to Bill Cher (TG0000631 & TG0000633)(Ex. 18 to Che Gang Dep.)(Herman Aff. Ex. 51); *see also* Che Gang Dep. at 287:19-290:11(Herman Aff. Ex.6); *see also* Che Gang Depo at 291:5-18, 287:19-292:24; *see also* Peng Wenlong Dep. at 333:10-334:10 (Herman Aff. Ex. 4); *see also* invoice no. SDTH0622 from Taishan to APIC Building Materials (TG0020090)(Ex. 4 to Peng S. Dep.)(Herman Aff. Ex. 112); *see also* packing

5

Louisiana and its marketing practice to tell its other customers that its product was being shipped to Louisiana, Taishan took calculated steps to make certain that its product would be shipped and found in Louisiana.

Although Taishan relies on the *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), for the proposition that this Court does not have jurisdiction over foreign defendants absent evidence that the defendant was actively in the forum state marketing or selling its products, the case is not binding on this Court. *Nicastro*'s plurality opinion is not binding on this Court because only four Justices joined in the plurality decision.

Moreover, Louisiana's Long Arm Statute is based upon a foreseeability test based not only on stream-of-commerce placement but coupled with particular marketing practices. *Nicastro* is easily distinguished from the matter at hand. In *Nicastro*, the Supreme Court overturned a judgment from the New Jersey Supreme Court that held "federal courts can exercise jurisdiction over a foreign manufacturers of the product so long as the manufacturer knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold any of the fifty states." *Id.* In *Nicastro,* the British manufacturing defendant did not market machinery in New Jersey and did not ship any of its machines to New Jersey.

In the instant matter there is compelling evidence that Taishan sold its products to customers in Louisiana, shipped its products to customers in Louisiana, told other customers that it shipped its product to Louisiana, and provided shipping rates for

---

list dated 7/3/2006 from Taishan to APIC Building Materials for shipment of drywall to be shipped to New Orleans, Louisiana (TG0019366)(Ex. 5 to Peng S. Dep.)(Herman Aff. Ex. 11); *see also* invoice no. SDTH0622 from Taishan to APIC Building Materials (TG0020091)(Herman Aff. Ex.198); *see also* Peng S. Dep. at 89:13-21 (Herman Aff. Ex. 110).

delivery in Louisiana. Accordingly, Taishan cannot escape the plain reading of the Louisiana Long Arm Statute and this Court has the authority to exercise jurisdiction over Taishan.

        Respectfully submitted,

        *Richard G. Duplantier, Jr.   /s/*
        _____
        Richard G. Duplantier, Jr. (# 18874)
        Lambert J. Hassinger, Jr. (# 21683)
        Benjamin R. Grau (#26307)
        Carlina C. Eiselen, (# 28524)
        GALLOWAY, JOHNSON, TOMPKINS,
        BURR & SMITH
        701 Poydras Street, 40th Floor
        New Orleans, Louisiana 70139
        Telephone:  (504) 525-6802 / Fax:   (504) 525-2456
        rduplantier@gjtbs.com /jhassinger@gjtbs.com
        bgrau@gjtbs.com / ceiselen@gjtbs.com /
        jgreen@gjtbs.com
        *Counsel for Defendant, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, LLC*

## Certificate of Service

The undersigned certifies that this document has been served on Plaintiffs' Liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 18th day of May, 2012.

        *Richard G. Duplantier, Jr.   /s/*
        RICHARD G. DUPLANTIER, JR.