UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL NO. 2047 |
| | ) | SECTION: L |
| THIS DOCUMENT RELATES TO: Gross v. Knauf Gips KG et al., Case No. 09-6690; | ) ) ) ) ) | |
| Wiltz v. Beijing New Building Materials Public Ltd. Co. et al., Case No. 10-361; | ) ) | JUDGE FALLON MAG. JUDGE WILKINSON |
| The Mitchell Co., Inc. v. Knauf Gips KG, et al., Case No. 09-4115; and | ) ) ) | |
| Germano, et al. v. Taishan Gypsum Co., Ltd., et al., Case No. 09-6687. | ) ) ) | |

## THE STATE OF LOUISIANA'S MOTION AND INCORPORATED MEMORANDUM TO JOIN THE PLAINTIFF STEERING COMMITTEE'S RESPONSE TO TAISHAN'S MOTIONS PURSUANT TO RULE 12(B)(2) TO DISMISS THE COMPLAINTS

The State of Louisiana (the "State" or "Louisiana"), through the Honorable James D. ("Buddy") Caldwell, Attorney General of Louisiana, reserving all the State's rights pursuant to its pending Motion for Remand (Rec. Doc. No. 1636), respectfully submits this Motion and Incorporated Memorandum to Join the Plaintiffs' Steering Committee's ("PSC") Response to Taishan's Motions Pursuant to Rule 12(b)(2) to Dismiss the Complaints (Rec. Doc. Nos. 14204, 14209, & 14215-2).

## I.    THE STATE'S INTEREST IN TAISHAN'S MOTIONS TO DISMISS

The State has its own arguments, unique facts, and sovereign interests that justify the exercise of personal jurisdiction over the Taishan Defendants due to their conduct in targeting Louisiana and the sale of their products here, all as more fully alleged in the State's Petition. Louisiana's Petition (Federal Case No. 2010-340) — which is still pending only because of

Defendants' disputed removal petition — states claims against the Taishan Defendants and, by unanimous consent and without waiving its remand motion, Louisiana participated in depositions of Taishan witnesses in Hong Kong in April 2011 and January 2012. This discovery shows that the exercise of personal jurisdiction over the Taishan Defendants by a Louisiana court, whether state or federal, is fully consonant with Louisiana law and with due process. Because the facts and applicable law regarding the Taishan Defendants' conduct in purposefully availing themselves of the benefits and privileges of Louisiana law for purposes of the State's Petition are substantially similar for jurisdictional purposes as that recounted in the PSC's papers, Louisiana respectfully submits this brief memorandum to provide the Court with the benefit of the Attorney General's view of the jurisdictional facts and law. Therefore, even though the Taishan Defendants have not sought to dismiss the State's Petition on jurisdictional grounds, the State, without waiving its rights under its pending remand motion, joins and adopts the facts presented and arguments made by the PSC.

## II.    INTRODUCTION AND PROCEDURAL BACKGROUND

Defendants Taishan Gypsum Co. Ltd and Tai'an Taishan Plasterboard Co., Ltd. (collectively and individually, "Taishan") have moved to dismiss the *Mitchell Co., Germano, Gross* and *Wiltz* cases (Nos. 09-4115, 09-6687, 09-6690 and 10-361) on personal jurisdiction grounds. Although Taishan has not similarly moved to dismiss the State's Petition (originally docketed on removal as Federal Case No. 2010-340), this Memorandum provides the Court with the State's view of matters particularly affecting the State's interests, including the effect and application of Louisiana's long-arm statute and Taishan's purposeful availment of the benefits of Louisiana law.

The State filed its Petition on its own behalf and as *parens patriae*, in the Civil District Court for the Parish of Orleans, seeking damages caused by the importation and widespread use

of Defendants' defective drywall in Louisiana. Louisiana's Petition asserts only state law claims. It raises no federal questions, and the State is not a citizen for diversity purposes. Nevertheless, on February 5, 2010, Defendants Knauf Insulation GmbH and Interior Exterior Building Supply, L.P. filed a notice of removal, removing the Petition to this Court. The State's Motion to Remand is pending (Rec. Doc. No. 1636). Louisiana submits this Motion and Memorandum subject to and without waiving the relief requested in its Motion to Remand.

Louisiana has reviewed and, as a general matter, agrees with the jurisdictional analysis contained in the PSC's Global Statement of Facts (Rec. Doc. No. 14215-2) ("PSC Global SOF"), Global Memorandum of Law (Rec. Doc. No.14209) ("PSC Global MOL"), and Response in Opposition to Taishan's Motions Pursuant to Rule 12(b)(2) to Dismiss the Complaints (Rec. Doc. Doc. 14204) ("PSC Response"). In addition to generally endorsing the PSC's analysis, Louisiana adds and emphasizes three main points, collectively discussed below:

*First*, following Hurricanes Katrina and Rita, Taishan purposefully availed itself of the benefits of Louisiana law by targeting Louisiana and its residents as a market for its products by marketing, selling, and shipping its products to Louisiana customers, at a time when drywall was urgently needed in Louisiana to rebuild damaged homes and other buildings;

*Second*, Louisiana's long-arm statute is fully consistent with the United States Supreme Court's recent ruling in *J. McIntyre Machinery, Ltd. v. Nicastro* and Louisiana courts, both state and federal, have jurisdiction over the Taishan Defendants pursuant to the long-arm statute; and

*Third*, because the Taishan Defendants have not moved to dismiss Louisiana's Petition, that Petition will survive regardless of the outcome of Taishan's motions. It should be remanded to Civil District Court of the Parish of Orleans forthwith.

### III.   STATEMENT OF FACTS

In late August 2005, Hurricane Katrina tore through Louisiana, damaging or destroying hundreds of thousands of homes and buildings and leaving countless Louisiana citizens and businesses devastated.   Hurricane Rita followed less than a month later, compounding the catastrophe.   The rebuilding effort following these hurricanes created numerous business opportunities, and the world responded.   Many came motivated by the dual opportunities to profit and to serve.   Others, motivated by profit alone, quickly and willingly capitalized on a distressed market, with little or no regard for the welfare of consumers who lacked alternatives. In the difficult years following Hurricanes Katrina and Rita, it has been the Louisiana Attorney General's task to protect the State, its subdivisions, and its residents from such predators.   The Taishan Defendants, as it has been learned through discovery, are among those predators.

One of the doors opened by the hurricanes was to a Louisiana market for international drywall.   Following the hurricanes, the unprecedented demand for drywall — to remodel damaged buildings and rebuild or replace destroyed ones — led to a domestic shortage.   Taishan, a Chinese drywall manufacturer, seized the opportunity to sell its product to customers in the desperate Louisiana market.

In January 2006, only a few months after the hurricanes, Taishan received an email from one of its buyers stating: "After Hurricane Katrina, the Great New Orleans area need rebuild, and housing market in USA is very hot these days. . . . [W]e hope you and us can both take advantage of it."[1]   Other Taishan customers also commented on the opportunities arising from the hurricanes.[2]   Taishan did take advantage.   In July 2006, Taishan entered negotiations with TP

---

[1]   Ex. 14 to Che Dep. (email dated 1/5/2006 from Jing Zhang to Bill Cher) (TG0000886) (Ex. A-108 to PSC Global SOF).

[2]   Peng Dep. at 382:9-20 (Ex. A-4 to PSC Global SOF).

72080-0001/LEGAL23632863.7

Construction, Inc. of Jefferson, Louisiana for TP Construction to purchase drywall from Taishan for shipment to New Orleans.[3]  As part of its effort to secure the sale, Taishan mailed samples of its drywall directly to TP Construction in Louisiana.[4]

Taishan also mailed samples of its drywall directly to GD Distributors, LLC in Louisiana, as part of a sales pitch to that company.[5]  This effort led to Taishan's sale to GD Distributors of 1,320 sheets of drywall, which Taishan shipped directly to New Orleans.[6]  Notably, GD Distributors had learned of Taishan through its global online presence, which Taishan used to specifically target the U.S. market, and most particularly Louisiana.[7]  The success of Taishan's online marketing practices after the hurricanes led its CEO to include, in his 2006 year-end report to the Board of Directors, a prospective goal to "intensify online sales."[8]

During the months and years following the hurricanes, Taishan repeatedly held itself out as ready and willing to sell and ship its drywall to Louisiana customers.[9]  Ultimately, Taishan's initial knowledge of and subsequent marketing response to the devastation left by Hurricanes Katrina and Rita led to the export of more than 45,000 sheets — hundreds of new and remodeled homes-worth — of Taishan drywall to Louisiana, at the Port of New Orleans.[10]

---

[3]     Ex. 18 to Che Dep. (emails dated 7/10&16/2006 from Jeff (a/k/a Bo) Zhou to Bill Cher (TG0000631 & TG0000633) (Ex. A-51 to PSC Global SOF); PSC Global SOF at 46.

[4]     Ex. 18 to Che Dep. (emails dated 7/10&16/2006 from Jeff (a/k/a Bo) Zhou to Bill Cher (TG0000631 & TG0000633) (Ex. A-51 to PSC Global SOF).

[5]     PSC Global SOF at 15-16.

[6]     PSC Global SOF at 8-11, 44-46.

[7]     PSC Global SOF at 8-11, 44-46.

[8]     Exs. 26 & 26A to Jia Dep. (Taishan's 2006 Chief Executive Officer's Work Report) at p. 5 (attached to this motion as Exhibit A); Jia II Dep. at 926:17 – 933:4 (Ex. A-200 to PSC Global SOF).

[9]     PSC Response (Rec. Doc. No. 14204) at 14-19.

[10]    PSC Response (Rec. Doc. No. 14204) at pp. 14-19; Interior/Exterior Building Supply, L.P. Distributor Profile Form at pp. 1, 4 (attached to this Motion as Exhibit B). The Port of New Orleans is a political subdivision of Louisiana and a center for international trade.

Taishan's drywall is and was toxic, noxious, and defective.  The defects are dangerous to Louisiana residents' health and make the buildings containing the drywall unusable, perpetuating and compounding the devastation left by the hurricanes.  Taishan has injured not only the owners of homes and businesses in which Taishan's drywall was installed, but also Louisiana as a whole, due to depressed overall property values, corresponding decreased tax revenues, and other consequential injuries.  As detailed in the State's Petition, Louisiana has special interests in vindicating the injuries Taishan has caused to Louisiana, its local political subdivisions, and all Louisiana homeowners and other residents.

IV.   ARGUMENT

**A.      Taishan has not moved to dismiss Louisiana's Petition.**

Taishan has not moved to dismiss the State's Petition.  As such, Louisiana does not seek any order on Taishan's motions with respect to its Petition.  The only order the State currently seeks is an order remanding the State's Petition to Louisiana state court, for all the reasons given in the State's Memorandum in Support of its Motion to Remand (Rec. Doc. No. 1636-1).  In filing the instant Memorandum, the State intends to fully preserve its right to raise any and all arguments and evidence it now has or may discover in response to any future motion to dismiss the State's case for lack of personal jurisdiction.

**B.      Louisiana's Long Arm Statute expressly provides for jurisdiction under these circumstances.**

Louisiana's long-arm statute includes a provision specifically directed at manufacturers who, because of their marketing practices and the nature of their product, should foresee that their product will impact Louisiana residents:

> **A.** A court may exercise jurisdiction over a nonresident, who acts directly or by agent, as to a cause of action arising from any one of the following business activities performed by the nonresident:

72080-0001/LEGAL23632863.7

*        *        *

**(8)** Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

La. Rev. Stat. Ann. § 13:3201. This statute reflects Louisiana's strong interest in protecting its citizens from dangers introduced into Louisiana by manufacturers who purposefully avail themselves of the advantages and benefits of Louisiana's market. *See, e.g., Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984) (where product was used in Louisiana, defects surfaced in Louisiana, and injury befell a Louisiana resident, Louisiana had a "special interest" in providing a forum).

Under Louisiana's long-arm statute, Taishan falls within this Court's jurisdiction because both (1) the nature of Taishan's product, and (2) Taishan's marketing practices, made it uniquely likely that Taishan's product would be found particularly in Louisiana.

### 1. Taishan fully expected that its drywall — a staple construction material — would be sold to customers in Louisiana following the property destruction wreaked by Hurricanes Katrina and Rita.

Taishan manufactures drywall, a staple material in residential and commercial building construction. Naturally, drywall sales activity is especially likely to occur in construction hotbeds. Following the devastation of Hurricanes Katrina and Rita, Louisiana was just such a hotbed — and Taishan knew it. On January 5, 2006, Taishan's Manager of International Trading, Bill Cher (Che Gang), received a drywall pricing request from Jing Zhang, representing a company called API, who commented: "After Hurricane Katrina, the Great New Orleans area need rebuild, and housing market in USA is very hot these days."[11] In a similar vein, Taishan's

---

[11]   Ex. 14 to Che Dep. (email dated 1/5/2006 from Jing Zhang to Bill Cher) (TG0000886) (Ex. A-108 to PSC Global SOF).

Frank Clem (Peng Wenlong) testified that Taishan's buyers explained their purchases by reference to the "strong winds or hurricanes" in the U.S.[12]

Thus, Taishan fully expected that its product, because of its nature as a staple building material, would be sold specifically in hurricane-ravaged Louisiana — Taishan's customers had expressly told Taishan so.  With this conscious expectation, Taishan proceeded to place its drywall in the stream of commerce, purposefully availing itself of and knowingly benefiting from both Louisiana's desperate market and Louisiana's import facilities, including the Port of New Orleans. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980) (forum State has jurisdiction where corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."); *see also J. McIntyre Mach. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring) (confirming continued validity of *World-Wide Volkswagen*, and finding jurisdiction lacking only where plaintiff *failed* to show that the defendant "delivered its goods in the stream of commerce with the expectation they will be purchased by New Jersey users." (Internal quotes omitted)); *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) ("Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state."); *Graham v. Hamilton*, CIV.A. 3:11-609, 2012 WL 893748, at *3-4 (W.D. La. Mar. 15, 2012) (confirming continued validity of *Luv N' Care* after *Nicastro*).

By the PSC's calculation, Taishan's expectations were met to the tune of over 12,000 sheets of Taishan drywall — enough to rebuild 60 completely destroyed homes or remodel many

---

[12]   Peng Dep. at 382:9-20 (Ex. A-4 to PSC Global SOF).

hundreds of damaged homes — sold and shipped to Louisiana customers.[13]  Based on its own investigation, however, the State believes that even this substantial quantity of shipments identified by the PSC significantly understates and represents only a fraction of the total amount of Taishan drywall exported to Louisiana.  Indeed, the sworn Distributor Profile Form filed with this Court by Defendant Interior/Exterior Building Supply, L.P. shows imports to New Orleans of an additional 33,000 sheets of Taishan drywall, for a total of over 45,000 sheets.[14]

In short, under Louisiana's long-arm statute and the United States Constitution, Taishan is plainly subject to the in personam jurisdiction of Louisiana's state courts and therefore also subject to this Court's jurisdiction because, when it placed its product in the stream of commerce, it had an actual, fact-based "expectation" — much more than mere conjecture — that its drywall would be sold in Louisiana.  *See Nicastro*, 131 S. Ct. at 2792 (Breyer, J., concurring).

### 2.    Taishan's own marketing practices made it especially likely that its drywall would be found in Louisiana.

Following the hurricanes, in addition to knowing that its distributors were selling its drywall in Louisiana, Taishan directly marketed its drywall to Louisiana customers.  A prime example of this marketing effort occurred in July 2006, when Taishan entered discussions with TP Construction, Inc. of Jefferson, Louisiana for TP Construction to purchase drywall from Taishan for shipment to New Orleans.[15]  As part of its effort to secure the sale, Taishan mailed samples of its drywall to TP Construction in Louisiana.[16]  Taishan similarly mailed product

---

[13]   *See* detailed discussion in PSC Response (Rec. Doc. No. 14204) at 14-19.

[14]   Interior/Exterior Building Supply, L.P. Distributor Profile Form at pp. 1, 4 (attached to this Motion as Exhibit B); PSC Response (Rec. Doc. No. 14204) at 14-19.

[15]   Ex. 18 to Che Dep. (emails dated 7/10&16/2006 from Jeff (a/k/a Bo) Zhou to Bill Cher (TG0000631 & TG0000633) (Ex. A-51 to PSC Global SOF); PSC Global SOF at 46.

[16]   Ex. 18 to Che Dep. (emails dated 7/10&16/2006 from Jeff (a/k/a Bo) Zhou to Bill Cher (TG0000631 & TG0000633) (Ex. A-51 to PSC Global SOF).

samples to GD Distributors in Louisiana during negotiations with that company.[17]   Having purposefully mailed samples of its product directly to Louisiana buyers as part of sales pitches designed to land its product in Louisiana, at the Port of New Orleans, Taishan cannot plausibly deny "targeting" Louisiana — Taishan might just as well have sent sales representatives to the State. *See Nicastro*, 131 S. Ct. at 2788 (Kennedy, J., plurality) (a manufacturer may target a forum "by sending its goods rather than its agents.").

Further, as discussed in greater detail below, Taishan pursued a global online marketing strategy that successfully attracted Louisiana customers.[18]   Taishan also distributed sales brochures touting its service of U.S. markets,[19] and repeatedly held itself out to prospective buyers as being ready and able to ship to Louisiana.[20]

In sum, given the nature of Taishan's product as a staple construction material, the known hotbed market in post-Katrina/Rita Louisiana, and Taishan's marketing practices — which included sending product samples directly to Louisiana customers — Taishan had every expectation (and desire) that its product would be found in Louisiana.   Indeed, the evidence shows that Taishan placed its drywall into the stream of commerce actually *knowing*, based on its distributors' statements, that the product would be sold to Louisiana customers.   In light of these facts, Taishan's contacts with Louisiana, including the neighborhood-sized quantities of Taishan drywall now found here, are the farthest thing from being "random, fortuitous, or attenuated." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985).   Taishan

---

[17]   PSC Global SOF at 15-16.

[18]   *See* PSC Global SOF at 8-11, 44-46.

[19]   *See* PSC Global SOF at 2-3, 8-11; Pls.' Ex. 20 to Jia II Dep (Ex. A-5 to PSC Global SOF).

[20]   *See* PSC Response (Rec. Doc. No. 14204) at 14-19.

72080-0001/LEGAL23632863.7

specifically targeted customers in Louisiana, more than satisfying the jurisdictional requirements of Louisiana's long-arm statute and federal due process.

**C.     Louisiana's long-arm statute is consistent with *Nicastro* and the jurisdictional facts found lacking in *Nicastro* exist here.**

Taishan argues at length that the facts in this case (a) fall short of the jurisdictional legal standard established in *Nicastro* and (b) are even less favorable than the jurisdictional facts found inadequate in that case.[21]   Taishan has misconstrued *Nicastro* and ignored the relevant facts.

Justice Breyer's controlling concurrence in *Nicastro*[22] did not announce new due process standards for personal jurisdiction and certainly did not invalidate Louisiana's long-arm statute. Justice Breyer emphasized that his opinion was based on a simple application of prior precedent to *Nicastro's* specific facts.   *Nicastro*, 131 S. Ct. at 2792-94.   The only jurisdictional standard Justice Breyer rejected was the New Jersey Supreme Court's holding in the underlying case that jurisdiction exists when a manufacturer "knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states."   *Id.* at 2793 (quoting New Jersey holding) (emphasis in original).   In other words, a manufacturer's mere awareness of the nearly limitless possibilities arising from a nationwide distribution system is not enough.

Louisiana law requires more.   Under Louisiana's long-arm statute, the critical question is not whether some distributor might, for whatever arbitrary reason, bring the defendant's product to Louisiana.   Instead, the critical question is whether the product's "nature" and the defendant's

---

[21]   *See* Taishan Mem. in Supp. of Mot. to Dismiss (Rec. Doc. No. 13591-1) at pp. 36-40; Taishan Mem. in Supp. of Mot. to Dismiss (Rec. Doc. No. 13590-1) at pp. 37-41.

[22]   Justice Breyer's concurrence in the judgment, as the narrowest opinion supporting the holding, represents the only binding precedent to emerge from *Nicastro*. *See Marks v. United States*, 430 U.S. 188, 193 (1977); *see also Graham*, 2012 WL 893748, at *3 (holding that Justice Breyer's opinion in *Nicastro* is binding); PSC's Global MOL at p. 18 (collecting authorities).   The State agrees with the PSC that the facts in this case establish personal jurisdiction even under the plurality opinion in *Nicastro*. (*See* PSC Response (Rec. Doc. No. 14204) at 21.)

-11-

"marketing practices" forecast the *likelihood* of finding the product in Louisiana in particular. In *Nicastro*, Justice Breyer suggested that precisely this type of forum-specific evidence would support jurisdiction — he simply found it lacking in that case:

> There may well have been other facts that Mr. Nicastro could have demonstrated in support of jurisdiction. And the dissent considers some of those facts. See *post,* at 2795 – 2796 (opinion of GINSBURG, J.) (describing the size and scope of New Jersey's scrap-metal business). But the plaintiff bears the burden of establishing jurisdiction, and here I would take the facts precisely as the New Jersey Supreme Court stated them.

*Nicastro*, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment). Because "the facts as the New Jersey Supreme Court stated them did not include reference to the "size and scope of New Jersey's scrap-metal business," Justice Breyer, unlike the dissent, did not take into account that New Jersey had "long been a hotbed of scrap-metal businesses" — a fact that made it particularly foreseeable that the defendant's scrap-shearing machine would be found in New Jersey. *Id.* at 2792 (Breyer, J., concurring in the judgment) & 2795 (Ginsburg, J., dissenting). As noted, however, Justice Breyer *did* observe that this fact, if actually demonstrated by the plaintiff and reflected in the lower court's findings, would have supported jurisdiction. *Id.* at 2792 (Breyer, J., concurring in the judgment).

The jurisdictional fact that Justice Breyer found lacking in *Nicastro* is plainly established here. As detailed above, Taishan knew, at the time it was placing its drywall in the stream of commerce, that post-Katrina/Rita Louisiana was a hotbed of building construction, and that its distributors planned to sell Taishan's drywall there in particular.[23] Thus, because of the nature of its product and Louisiana's unique market conditions, Taishan knew that its product would be found in Louisiana, and proceeded with sales all the same.

---

[23]   Ex. 14 to Che Dep. (email dated 1/5/2006 from Jing Zhang to Bill Cher) (TG0000886) (Ex. A-108 to PSC Global SOF); Peng Dep. at 382:9-20 (Ex. A-4 to PSC Global SOF).

-12-

Also not included in "the facts as the New Jersey Supreme Court stated them" in *Nicastro* was any suggestion that the manufacturer had an online presence likely to attract buyers in New Jersey. Justice Breyer indicated that this fact would have been important — one of his principal concerns with Justice Kennedy's plurality opinion was that it did not allow for the possibility that jurisdiction could arise from online marketing practices:

> But what do [Justice Kennedy's proposed] standards mean when a company targets the world by selling products from its Web site? And does it matter if, instead of shipping the products directly, a company consigns the products through an intermediary (say, Amazon.com) who then receives and fulfills the orders? And what if the company markets its products through popup advertisements that it knows will be viewed in a forum? Those issues have serious commercial consequences but are totally absent in this case.

*Nicastro*, 131 S. Ct. at 2793 (Breyer, J., concurring in the judgment).

In contrast, internet marketing practices are not "totally absent" in *this* case. As the PSC noted, Taishan proudly advertised itself online as exporting its product across the world, including to the United States.[24] Taishan also used a third-party "Craigslist-like" website called Alibaba to solicit U.S. buyers, successfully leading to its sale of 1,320 drywall sheets to GD Distributors, LLC in Jefferson, Louisiana.[25] That Taishan considered the internet an important sales platform is clear from Jia Tongchin's 2006 Chief Executive Officer's Work Report to Taishan's Board of Directors, in which — on the heels of the broadened U.S. market following Hurricanes Katrina/Rita — Mr. Jia announced Taishan's goal to "intensify online sales."[26] In response to questioning by the State of Louisiana, Mr. Jia testified that the purpose of Taishan's online presence was to "have more people know Taishan Gypsum" and "buy Taishan Gypsum's

---

[24] *See* PSC Global SOF at pp. 9-10.

[25] *See* PSC Global SOF at 8-11, 44-46.

[26] Exs. 26 & 26A to Jia Dep. (Taishan's 2006 Chief Executive Officer's Work Report) at p. 5 (attached to this motion as Exhibit A); Jia II Dep. at 926:17 – 933:4 (Ex. A-200 to PSC Global SOF).

-13-

product."[27]  And this strategy succeeded: at least one Louisiana business — GD Distributors —
purchased over 1,000 sheets of drywall from Taishan after learning about Taishan through its
online presence.[28]  In his 2007 year-end report, Mr. Jia observed that "[s]ales work reached [a]
new breakthrough," due in part to "a strong online market."[29]

In sum, two jurisdictional facts that Justice Breyer considered important but found
lacking in *Nicastro* — (1) a known "hotbed" market in the forum state, and (2) a global online
marketing presence — exist here.  Both of these facts made it especially likely and foreseeable
that Taishan's product would be found particularly in Louisiana.

Taishan has ignored this evidence in its memoranda.  Instead, in comparing this case to
*Nicastro*, Taishan has focused on the facts that the manufacturer in that case attended
conventions in the U.S., held U.S. patents on its technology, and was physically present in the
U.S. more often than Taishan has been.[30]  Taishan has made the wrong comparison: the question
is not whether Taishan has more contacts generally with the <u>United States</u> than the *Nicastro*
manufacturer, but whether Taishan has more contacts specifically with <u>Louisiana</u> than the
*Nicastro* manufacturer had with <u>New Jersey</u>.

The answer to that question could not be clearer.  In *Nicastro*, the manufacturer's only
connection to the forum state of New Jersey was a single machine sold to a single New Jersey
customer by the manufacturer's nationwide American distributor.  *Nicastro*, 131 S. Ct. at 2791
(Breyer, J., concurring in the judgment).  That was all.  There was no evidence that the
manufacturer itself knew its product would be sold in New Jersey, corresponded with anyone in

---

[27]   Jia II Dep at 928:24 – 929:9 (Ex. A-200 to PSC Global SOF).

[28]   *See* PSC Global SOF at p. 45 (discussing purchase by GD Distributors).

[29]   Exs. 27 & 27A to Jia Dep. (Taishan's 2007 Chief Executive Officer's Work Report) at p. 2 (attached to this motion as Exhibit C); Jia II Dep. at 929:15 – 930:1 (Ex. A-200 to PSC Global SOF).

[30]   *See* Taishan Mem. in Supp. of Mot. to Dismiss (Rec. Doc. No. 13591-1) at pp. 36-40; Taishan Mem. in Supp. of Mot. to Dismiss (Rec. Doc. No. 13590-1) at pp. 37-41.

-14-

New Jersey, marketed its product to any New Jersey customer, or made any other "specific effort to . . . sell in New Jersey." *Id.* at 2792. Here, in stark contrast, Taishan's contacts with Louisiana are multitudinous: Taishan corresponded directly with Louisiana customers,[31] repeatedly confirmed that it would ship its drywall to Louisiana,[32] successfully marketed its drywall by mailing samples directly to Louisiana customers,[33] engaged in online marketing practices proven to have attracted Louisiana customers,[34] and — most significantly — exported enough Taishan drywall to Louisiana to build entire neighborhoods.[35]

Taishan's contacts with Louisiana in this case far exceed the *Nicastro* manufacturer's contacts with New Jersey — the comparison is not even close. Accordingly, Taishan's effort to cast this case as factually beneath *Nicastro's* jurisdictional standard fails. Under any reasonable reading of *Nicastro*, Taishan is within this Court's jurisdiction.

## V. CONCLUSION

Following Hurricanes Katrina and Rita, Taishan more than willingly took advantage of a broadened and desperate Louisiana market for drywall. Taishan now claims it cannot be held accountable in any Louisiana court, whether federal or state, for the injuries its defective drywall caused in the State. Having knowingly benefited from Louisiana's market, Taishan is responsible for the damages it caused there. For all the reasons stated above, Taishan is within this Court's jurisdiction, and all four of its motions to dismiss should be denied.

---

[31] *See* PSC Response (Rec. Doc. No. 14204) at 14-19.

[32] *See* PSC Response (Rec. Doc. No. 14204) at 14-19.

[33] *See* PSC Response (Rec. Doc. No. 14204) at 16-19; Ex. 18 to Che Dep. (emails dated 7/10&16/2006 from Jeff (a/k/a Bo) Zhou to Bill Cher (TG0000631 & TG0000633) (Ex. A-51 to PSC Global SOF).

[34] *See* PSC Global SOF at pp. 8-11, 44-46; Ex. 14 to Che Dep. (email dated 1/5/2006 from Jing Zhang to Bill Cher) (TG0000886) (Ex. A-108 to PSC Global SOF); Peng Dep. at 382:9-20 (Ex. A-4 to PSC Global SOF); Jia II Dep. at 926:17 – 933:4 (Ex. A-200 to PSC Global SOF).

[35] *See* PSC Response (Rec. Doc. No. 14204) at pp. 14-19; Interior/Exterior Building Supply, L.P. Distributor Profile Form at pp. 1, 4 (attached to this Motion as Exhibit B).

-15-

72080-0001/LEGAL23632863.7

Respectfully submitted,

**JAMES D. "BUDDY" CALDWELL**
**LOUISIANA ATTORNEY GENERAL**
James Trey Phillips, Bar Roll# 19978
Sanettria Glasper Pleasant, Bar Roll# 25396
**LOUISIANA DEPARTMENT OF JUSTICE**
1885 North Third Street
Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6000
Facsimile: (225) 326-6499


**Usry, Weeks & Matthews, APLC**
T. Allen Usry, Bar Roll# 12988
Trial Attorney

_____s/John F. Weeks, II_____
John F. Weeks, II, Bar Roll# 13309
Special Assistant Attorneys General
1615 Poydras St., Ste. 1250
New Orleans, LA  70112
(504) 592-4600


**Shows, Cali & Walsh, LLP**
E. Wade Shows, Bar Roll# 7637
Trial Attorney
John C. Walsh, Bar Roll# 24903
Special Assistant Attorneys General
628 St. Louis St.
P. O. Drawer 4425
Baton Rouge, LA  70821
(225) 346-1461


**Perkins Coie, LLP**
David L. Black
Craig M. J. Allely
Special Assistant Attorneys General
1900 Sixteenth Street, Suite 1400
Denver, CO  80202
(303) 291-2300


COUNSEL FOR THE STATE OF LOUISIANA

-16-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Motion and Incorporated Memorandum of the State of Louisiana has been served on Plaintiffs' Liaision Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 18th day of May, 2012.


___s/John F. Weeks, II_____
Filing Attorney

72080-0001/LEGAL23632863.7