**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION, | MDL Docket No. 2047 |
| THIS DOCUMENT RELATES TO: | |
| *Mitchell Co. Inc. v. Knauf Gips KG, et al.*, 09-cv-4115 | SECTION L JUDGE FALLON MAG. JUDGE WILKINSON |

## <u>INTRODUCTION</u>

With the present motion, Taishan attempts to escape responsibility for millions of dollars in damage caused by defective drywall that it manufactured to U.S. standards and systematically and purposefully sold into Florida and other U.S. markets in the wake of Hurricane Katrina.  To evade responsibility for its actions in the U.S., Taishan argues that it is not subject to the jurisdiction of this Court. Taishan is woefully mistaken.

As set forth below, Taishan manufactured defective drywall in China that flowed in a straightforward and well-documented supply chain to Mitchell. Taishan's actions and the damage they caused are sufficient to satisfy Florida's long-arm statute and comport with due process.

Contrary to Taishan's preemptive argument, Mitchell does not rely on an alter-ego theory to reach Taishan's subsidiary. Rather, the evidence demonstrates that Taishan is subject to this Court's jurisdiction based on its own actions.

Anticipating that this Court will find jurisdiction proper, Taishan seeks

1013194.3

nonetheless to avoid the effect of its default by arguing that its willful and wanton failure to timely appear before this Court following proper service of Mitchell's complaint was the result of excusable neglect. None of Taishan's arguments in this regard is credible, and all should be rejected.

Mitchell respectfully requests that this Court deny Taishan's motion in its entirety and confirm the default.

## **PROCEDURAL HISTORY**

Mitchell filed its original complaint in the Northern District of Florida on March 6, 2009. Mitchell's action was transferred to this Court by MDL transfer order on June 24, 2009. Mitchell's original complaint was a proposed class action under Federal Rule of Civil Procedure 23 on behalf of itself and a Class defined as:

> All persons and entities in the States of Alabama, Mississippi, Louisiana, Georgia, Texas, and Florida who used drywall manufactured by Knauf Gips Kg, Knauf Plasterboard (Tianjin) Co., Ltd., or Taishan Gypsum Co., Ltd., for the construction, repair, or remodeling of any improvement to real property and who incurred any expense associated with ( 1) repair or replacement of all or part of the drywall, and/or (2) other property damaged by the defective drywall, and/or (3) is liable to the owners of the property for said damages.

See *Mitchell Company Inc. v. Knauf Gips KG et al,* N.D. Fla. Case No. 09-cv-00089-MCR-MD, Doc. 1 (hereinafter "Complaint"), ¶ 25.

On June 30, 2009, Mitchell received notice that service of the Complaint was perfected on Chinese defendant Taishan on May 8, 2009. *See* Declaration of Kristen Law Sagafi, filed herewith, Exhibit 1.

Mitchell subsequently filed an Amended Complaint in this Court on July 7, 2009. [Doc. 42]. The Amended Complaint is substantively identical to the original Complaint. No parties or claims were added. The primary amendment was the addition of an alternative class definition,

as follows:

> All persons and entities in the States of Alabama, Mississippi, Louisiana, Georgia, Texas, and Florida, or, in the alternative, a nationwide class of persons and entities, who used drywall manufactured by Knauf Gips Kg, Knauf Plasterboard (Tianjin) Co., Ltd., or Taishan Gypsum Co., Ltd., for the construction, repair, or remodeling of any improvement to real property and who have incurred any expenses associated with (1) repair or replacement of all or part of the defective drywall, and/or (2) repair or replacement of other property damaged by the defective drywall, and/or (3) other expenses incurred as part of the remediation of the effects of the defective drywall, including, without limitation, the cost of investigation and expert analysis of the defect, and cost of relocating customers displaced by the presence of defective drywall.

*See* Doc. 42, ¶ 29.

Mitchell moved for entry of default against Taishan on September 2, 2009. [Doc. 190, 256] .  This Court entered default against Taishan on September 23, 2009.  [Doc. 277]. Because Mitchell represents a proposed class of builders, the precise amount of total actual damages resulting from Taishan's alleged misconduct will require a proffer of evidence by absent class member builders. Until such time as the Court establishes a procedure for the presentation of damages evidence, the default as to Taishan's liability cannot be reduced to a default judgment in sum certain for Taishan's wrongdoing. Thus, in an order dated October 9, 2009, the Court extended indefinitely the deadline for Mitchell to move to confirm the default judgment. [Doc. 335]

On December 24, 2009, Mitchell moved for certification of the class proposed in its original Complaint against Taishan. [Doc. 653].  That motion has not yet been heard.

Taishan appeared in this Court for the first time on June 10, 2010, more than a year after receiving service of Mitchell's Complaint.  [Doc. 3668].

On August 3, 2010 - two months after Taishan appeared in this matter - Mitchell

amended slightly its class certification motion to eliminate any overlap between the proposed

class of builders/construction companies and any homeowner classes proposed by homeowner

plaintiffs. [Doc. 4750].

       Taishan moved this Court to set aside the entry of default on September 21, 2010.

[Doc. 5583]. Like the present motion, Taishan's original motion was based on two principles:

that this Court lacked personal jurisdiction over Taishan, and that Taishan's default should be

excused.

       On October 14, 2010, the Court ordered the parties to engage in discovery to

address Taishan's jurisdictional defenses. [Doc 6006]. On October 29, 2010 [Doc. 6260] ,

Mitchell moved the Court to lift the stay on substantive motion practice pursuant to Pre-Trial

Order No. 1 [Doc 2] so that the Court might address issues other than personal jurisdiction that

were presented in Taishan's September 2010 motion. Taishan submitted its opposition to

Mitchell's motion on November 10, 2010. [Doc. 6345]. The Court declined to address the non-

jurisdictional issues separately.

       In the time that has elapsed since the Court's October 14, 2010 Order, the parties

have engaged in extensive jurisdictional discovery, including voluminous document production

and numerous depositions in Hong Kong.  Evidence collected through those efforts is

synthesized in the PSC's Global Statement of Facts in Opposition to: (1) Taishan's Renewed

Motions to Vacate the Default Judgments and Dismiss the Complaints in *Germano* and *Mitchell*

and (2) Taishan's Motions to Dismiss the Complaints in *Gross* and *Wiltz* ("Global SOF"), filed

May 8, 2012. [Doc. 14215-2].

## **FACTUAL BACKGROUND**

       In the interest of brevity, Mitchell incorporates by reference the Global SOF

submitted previously by the PSC. [Doc. 14215-2]. Mitchell therefore limits its recitation of facts

1013194.3

here to evidence, which was provided in the form below to the PSC in advance of its May 8, 2012 filing, that demonstrates the stream of commerce that resulted in Mitchell purchasing defective drywall that was manufactured by Taishan for the express purpose of sale and use in Florida.

The defective Chinese drywall that Mitchell installed in homes in Florida came to Mitchell through the following straightforward and thoroughly documented supply chain: Taishan Gypsum → Devon International → Emerald Coast → Rightway → Mitchell Company.

Devon International is in the business of arranging for the sale of materials manufactured overseas, including in China. Beginning no later than 2004, Devon International sourced material from China and had employees who worked out of its office in Shanghai, China. See the March 24, 2011 Deposition of Robert Scharf, 27:7-23, 33:18-24.[1]

At some point prior to June 2006, Devon International was approached by North Pacific Group ("North Pacific") about arranging for the manufacture of drywall in China for use in the United States. Scharf Deposition, 41:20-42:11. North Pacific provided Devon International with plans and specifications for the drywall it wanted to use in the U.S. Scharf Deposition, 79:7-80:3. After being approached by North Pacific, Devon International investigated market prices for drywall that could be purchased in China for the purpose of assessing its ability to handle North Pacific's order. Scharf Deposition, 43:15-19. Bob Scharf, on behalf of Devon International, researched drywall prices, types, and specifications at local building supply companies in the U.S. in January and February 2006 to determine the economic viability of the transaction. Scharf Deposition, 43:15-44:8.

After determining that the transaction was possible, some time between January

---

[1] The Scharf deposition was submitted as Ex. 165 to the Herman Affidavit in support of the PSC's Global SOF [Doc. 14215-3]. *See also* the Declaration of Robert Scharf, filed herewith.

2006 and June 2006, Mr. Scharf traveled to China to make arrangements for sourcing the drywall.  Scharf Deposition, 50:12-19.  Mr. Scharf was accompanied to China by another Devon International employee, Julian Chu.  Scharf Deposition, 60:10-17. During the trip, Mr. Scharf inspected "three and perhaps four" factories in Shandong, China before he chose the factory Devon International used to manufacture the drywall for North Pacific.  Scharf Deposition, 50:12-19.  Mr. Scharf testified that the first factories they looked at "were really not very nice factories."  Scharf Deposition, 51:1-2.  He further testified that when he arrived at these factories in China, there was a "horrible odor coming out" and that there was some sort of chemical odor. Scharf Deposition, 52:23-53:11.

Mr. Scharf did not observe those problems when he visited the Taishan factory, which he ultimately selected to produce the drywall for North Pacific.  Scharf Deposition, 57:7-13.  Scharf was given a tour of the Taishan factory and testified that he observed the factory's Quality Control room during the factory tour.  Scharf Deposition, 113:19-114:6.  On a subsequent visit, Mr. Scharf was informed by Taishan that Taishan had ASTM approval for the drywall it manufactured in that factory. Scharf Deposition, 62:16-63:9.

On February 6, 2006, North Pacific gave Devon International Trading, Inc. a purchase order for 485,044 sheets of gypsum drywall "A" grade.  See Scharf Deposition, Exhibit 28. Based on that purchase order, Devon International Trading, Inc. submitted an Order Request to Taishan, which was doing business as Shandong Taihe Dongxin Co., Ltd.,[2] for 485,044 sheets of drywall on March 15, 2006.  See Sagafi Decl., Ex. 2, at DEVON00015-16.[3]  As the purchase

---

[2] Mitchell's original Complaint and Amended Complaint [Doc. 42] name Taishan Gypsum Co. Ltd. (f/k/a Shandong Taihe Dongxin Co., Ltd.) as a defendant.
[3] All documents bearing the DEVON Bates stamp were produced in *Langham v. Devon International; et al.*, Case No. CV-2009-900948, Circuit Court of Baldwin County, Alabama. *See* Declaration of Jonathon Law, filed herewith.

order makes clear, the destination on the order was originally Mobile, Alabama, but was changed to Pensacola, Florida. *Id.*

On March 30, 2006, Devon International received a sales confirmation from Taishan, again indicating that the shipment was to be sent to Pensacola, Florida. See Sagafi Decl., Ex. 2, at DEVON00016. The agreement provided that the drywall would be packaged to include Devon Building Products' logo. *Id.* It further provided that each sheet of the drywall would contain a statement that it "Meet or Exceeds ASTM C139604 Standard." *Id.*; *see also* photographs attached as Sagafi Decl., Ex. 3.[4]

The drywall was manufactured and shipped to the United States aboard the *Sanko Rally* to the Port of Pensacola. The *Sanko Rally* experienced bad weather on the trip to Pensacola. Because of the weather, the drywall was damaged in route from China to the Port of Pensacola. Scharf Deposition, 143:22-144:3, 221:9-13. Consequently, because of the damage and the delay in shipment, North Pacific did not purchase all of the drywall when it arrived at the Port of Pensacola. *See* Sagafi Decl., Ex. 4; Scharf Deposition, 222:21-223:6. After North Pacific refused to purchase all of the drywall, Devon International began selling the drywall to other customers. *See* Scharf Deposition, 223:8-14. One of those customers was Emerald Coast Building Supply. See Sagafi Decl., Ex. 5. Indeed, Devon's bill of lading for the *Sanko Rally* shipment demonstrates that Emerald Coast purchased no fewer than 395 boards in that shipment. *Id.* In addition, Emerald Coast's August 20, 2009 submission to the U.S. Consumer Product Safety Commission confirms that Emerald Coast purchased 20 truckloads of Chinese drywall (comprising more than half a million square feet) from North Pacific during July and

---

[4] Of note, the agreed-upon language was "Meet or Exceeds…." as opposed to the parallel construction "Meets or Exceeds…" This grammatical error was reflected on the boards Devon photographed in the warehouse and re-appears on the boards Mitchell removed from its homes in Pensacola, FL. *See* Declaration of Chuck Stefan, Ex. C.

August of 2006.  See Sagafi Decl., Ex. 5 at SM0039.  Each of the shipments originated at the Port of Pensacola where the *Sanko Rally* had docked. See Sagafi Decl., Ex. 5 at SM0046-130. Between April and July 2006, Rightway purchased at least 840 boards of drywall from Emerald Coast. These purchases are reflected in the purchase orders from Mitchell to Rightway for the purchase of drywall to be used and installed in the homes Mitchell was building in Bilek Manor. *See* Declaration of Mike Jenkins, submitted herewith, Exhibit A. As Mike Jenkins of Rightway has testified, all of the drywall Rightway purchased for use in Bilek Manor came from Emerald Coast. Jenkins Decl., ¶ 3.

In turn, as Mitchell correctly reported in its profile forms, Mitchell acquired drywall for the homes it constructed in Florida from Rightway.  *See* Stefan Decl., Exs., A-B. Even more compelling are the photographs of defective drywall removed from the home Mitchell built at 5926 Bilek Dr., Pensacola, FL 32526.  *See* Stefan Decl., Ex. C. These photographs show drywall boards stamped with the statement "Made in China Meet or Exceeds ASTM C139604 Standard" in the exact font, size, and style as the boards Devon purchased from Taishan.  *Id.*; compare photos of Devon board at Sagafi Decl., Ex. 3. Based on this documentary and photographic evidence, there can be little doubt that the defective Chinese drywall Taishan manufactured to Devon's specifications for sale and use in the United States was ultimately installed in the homes Mitchell built in Florida.

## ARGUMENT

## I.   THIS COURT PROPERLY EXERCISED JURISDICTION OVER TAISHAN GYPSUM (TAISHAN)

Despite irrefutable evidence of Taishan's marketing efforts aimed at U.S. buyers,[5]

---

[5] Global SOF [Doc. 14215-2], pp. 8-30.

and contracts to provide massive quantities of drywall to Florida and other U.S. markets,[6] Taishan nonetheless insists that it is not subject to the jurisdiction of this Court. Taishan is wrong.

As a general matter, a federal court may exercise personal jurisdiction over a non-resident defendant where, (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant, and (2) the exercise of such jurisdiction comports with due process under the United States Constitution. *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

Mitchell filed its original Complaint in the Northern District of Florida. The case was thereafter transferred to this Court pursuant to 28 U.S.C. § 1407.  In multidistrict litigation, the transferee court must apply the law of the transferor forum to determine personal jurisdiction. *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 767 F. Supp. 2d 649, 656-657 n. 2 (E.D. La. 2011); *see also In re WellNX Mktg. & Sales Practices Litig.*, No. 07-md-1861, 2010 U.S. Dist. LEXIS 96582, at *1-2 (D. Mass. Sept. 15, 2010)*; In re Trade Partners, Inc., Investors Litig.*, 532 F. Supp. 2d 904, 907-08 (W.D. Mich. 2007); *In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 300 (E.D.N.Y. 2002); *In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d 15, 33-35 (D.D.C. 2003). Thus, this Court must apply Florida law to determine whether it may exercise personal jurisdiction over Taishan.

As demonstrated below, Florida's long-arm statute confers personal jurisdiction over Taishan, and the exercise of that jurisdiction comports with due process.

### A.    Florida's Long-Arm Statute Reaches Taishan

Mitchell respectfully submits that this Court may exercise personal jurisdiction

---

[6] Global SOF [Doc. 14215-2], pp. 30-50.

over Taishan pursuant to the Florida long-arm statute, Florida Statutes Sections 48.193(1)(b),

and (f):

> (1) Any person, whether or not a citizen or resident of this state,
> who personally or through an agent does any of the acts
> enumerated in this subsection thereby submits himself or herself
> … to the jurisdiction of the courts of this state for any cause of
> action arising from the doing of *any* of the following acts:

> (b) <u>Committing a tortious act within this state</u>.

> (f) <u>Causing injury to persons or property within this state arising
> out of an act or omission by the defendant outside this state</u>, if, at
> or about the time of the injury, either:

>> 1. The defendant was engaged in solicitation or service
>> activities within this state; or

>> 2. <u>Products, materials, or things processed, serviced, or
>> manufactured by the defendant anywhere were used or consumed
>> within this state</u> in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193 (2010) (emphasis added).

Taishan incorrectly argues that it is not subject to Florida's long-arm statute

because Mitchell "did not purchase any drywall manufactured by [Taishan], and [Taishan] did

not engage in any activities in Florida that caused Plaintiff injury." [Doc. 13566-1 at 27]. But

the evidence demonstrates that Taishan's actions more than satisfy the statute. The evidence

confirms that Taishan manufactured large quantities of drywall to ASTM specifications for

delivery to and use in Florida (*see* Global SOF [Doc. 14215-2] at pp. 16-18, 36-44). Moreover,

the drywall Taishan manufactured for delivery to and use in Florida was sold through a direct

and documented supply chain from Taishan to Mitchell in Florida. As discussed in detail above,

Taishan manufactured drywall for Devon International to ASTM specifications for shipment on

the *Sanko Rally* to the Port of Pensacola. Once the drywall arrived in Pensacola, it was purchased

by a variety of U.S. companies, including Emerald Coast Building Supply, which in turn sold to

Rightway, which installed the defective drywall in the homes Mitchell built in Florida.

Mitchell's Complaint, which must be taken as true at this stage of the proceedings, sufficiently alleges that the drywall Taishan manufactured for delivery to and use in Florida caused extensive property damage to the homes Mitchell built in Florida. In light of these facts, Florida's long-arm statute extends to Taishan and jurisdiction is proper.

### 1.   Taishan's Tortious Conduct Warrants Jurisdiction under subsection 48.193(1)(b)

The Eleventh Circuit has consistently held that an out-of-state tort resulting in injury in Florida subjects the actor to jurisdiction under Florida's long-arm statute. *See, e.g.*, *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996); *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033-34 (11th Cir. 1991).

Physical presence in Florida is not a prerequisite for committing a tort in Florida, *Wendt v. Horowitz*, 822 So. 2d 1252, 1253 (Fla. 2002), or for personal jurisdiction to attach under the "tortious activity" provision of the Florida long-arm statute. However, the plaintiff must demonstrate that the foreign defendant committed a substantial aspect of the alleged tort in Florida. *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (citations omitted). The "substantial aspect" requirement can be satisfied "by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" (*Id.,* citations omitted.)

Here, Mitchell alleges negligence and gross negligence against Taishan arising from its manufacture of defective drywall that Taishan sold to Devon International for use and distribution Florida. (Complaint at ¶¶34-41; Amended Complaint [Doc. 42] at ¶¶38-45.) The defective drywall was shipped into the Port of Pensacola on the *Sanko Rally*, and, from there, made its way through a short, local supply chain in Pensacola, ultimately coming to rest in the

homes Mitchell built in Florida.  Once installed, the defective drywall began to create noxious

odors and corrode the plumbing, wiring, and HVAC systems in Mitchell's Florida homes.

(Complaint at ¶¶ 18-19; Amended Complaint [Doc. 42] at 22-23.)

Taishan relies on *Blumberg v. Weiss & Co.*, 922 So. 2d 361 (Fla. 3d DCA 2006),

in a misguided attempt to avoid the jurisdictional reach of this Court.  Taishan cites *Blumberg* for

the broad proposition that "downstream injury caused in Florida does not constitute commission

of a substantial aspect of a tort for purposes of § 48.193(1)(b)."  [Doc. 13566-1 at 28].  Taishan's

citation to *Blumberg* is off-point, as it makes no such holding and its facts are readily – and

crucially – distinguishable from those here.

In *Blumberg*, the defendant, SWCI, purchased Norephedrine HCI from an

overseas seller and then sold it to a Missouri company called Syntrax.  922 So. 2d at 363.  SWCI

sold the Norephedrine HCI to Syntrax without removing it from its original containers or making

any physical alterations to the product.  *Id.*  Syntrax then incorporated the Norephedrine HCI into

a nutritional supplement that injured the plaintiff, a Florida resident, who purchased the product

online.  Understandably, the Florida Court of Appeal found jurisdiction lacking over SWCI

pursuant to subsection 1(b) because SWCI's sale of Norephedrine HCI to Syntrax "did not

directly cause damage within [Florida]."  *Id.* at 365.  It was undisputed that SWCI did not

manufacture the offending product, so the inquiry turned only on whether SWCI "processed" or

"serviced" the Norephedrine within the meaning of the statute.  *Id.*

Unlike SWCI, of course, Taishan is not an innocent middleman or reseller.

Taishan manufactured the defective drywall, which injured Mitchell, to U.S. specifications and

made arrangements to sell that drywall into Florida for use in U.S. markets, including Florida.

[Doc. 14215-2 at pp. 36-44].  Thus, Taishan targeted the U.S. generally and Florida specifically

as the outlet for its defective material.  *Id.*  Taishan's contacts with Devon International in Florida are sufficient to establish jurisdiction under subsection 1(b).

### 2.    <u>Taishan Caused Injury to Property in Florida</u>

Subsection (f) provides for personal jurisdiction when a defendant's solicitation activities do not rise to the level of conducting business, but nonetheless result in physical injury to person or property.  *Citicorp Ins. Brokers v. Charman*, 635 So. 2d 79, 81 (Fla. Dist. Ct. App. 1st Dist. 1994) (citing *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992 (Fla. 1987), *Price v. Point Marine, Inc.*, 610 So. 2d 1339 (Fla. 1st DCA 1992)).

Without any discussion, Taishan concludes that subsection (1)(f) cannot confer jurisdiction because "economic injury does not satisfy the 'injury to persons or property' requirement for jurisdiction under section 48.193(1)(f)."  [Doc. 13566-1 at 28].  In support of this argument, Taishan overstates and misconstrues the principle holding in *Aetna*.  In that case, the Florida Supreme Court clarified the requirements of subsection (1)(f), holding that personal injury or physical property damage are required.  Like many states, Florida observes an economic loss rule, which precludes recovery in tort on a product liability theory where the only property damage is to the product itself.  *See Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So. 2d 899 (Fla. 1987).

Early in these MDL proceedings, this Court considered whether the economic loss doctrine would operate to preclude homeowner plaintiffs from pursuing economic damages arising from tort claims under Florida law (and the laws of other states).  In a detailed opinion, this Court held that where, as here, the defective drywall damages property other than itself, the economic loss rule does not bar those claims. [Doc. 741 at pp. 15-23].

Here, Mitchell alleges that the defective Taishan drywall it installed in Florida caused extensive corrosion and fume-related damage to plumbing, wiring, carpeting, fixtures,

and other interior finishes in the Florida homes where it was installed.  (Complaint at ¶¶ 18-19; Amended Complaint [Doc. 42] at ¶¶ 22-23).  As this Court has already held, allegations of the sort Mitchell makes here overcome the economic loss rule.  [Doc. 741 at pp. 15-23].  As such, Mitchell's allegations are sufficient to warrant jurisdiction under subsection 1(f).

### B.       Exercising Jurisdiction Over Taishan Comports With the Due Process Clause of the Fourteenth Amendment

Mitchell respectfully incorporates by reference the PSC's Global Memorandum of Law in Opposition to (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in Germano and Mitchell and (2) Taishan's Motions to Dismiss the Complaints in Gross and Wiltz.  [Doc. 14209]. For the reasons set forth at pages 4-22 therein, Mitchell submits that this Court may exercise jurisdiction over Taishan without running afoul of the Due Process clause.

## II.      The Default Is Properly Based upon the Initial Served Complaint

Taishan advances two arguments in support of the proposition that the default should be set aside because it was entered with regard to Mitchell's Amended Complaint.  Both are fatally flawed.

First, Taishan argues that "the Amended Complaint introduced new claims." [Doc. 13566-1 at 77].  This statement is simply false.  To the contrary, Mitchell did not add any legal claims or parties.   Indeed, the Amended Complaint was substantively identical to the original in all material respects, save one.  In the Amended Complaint, Mitchell proposed alternative class definitions: the five-state class of builders proposed in the original complaint, or, in the alternative, a nationwide class of builders.  Taishan cites no authority for the notion that such an amendment is sufficient grounds for vacating a default. And with good reason.  It is hard to fathom how such an amendment could result in any prejudice because the scope of the class

definition is purely procedural; it has no effect on the substantive claims alleged.  *See, e.g.,*

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1444 (2010) (holding

Rule 23 applies to state law claims even if state law prohibits class actions because Rule 23, as

part of the Rules Enabling Act, does not enlarge or abridge substantive rights).

   Taishan's second argument is equally meritless.  In an attempt to excuse itself

from default, Taishan argues that the filing of Mitchell's Amended Complaint rendered the

original (served) complaint a nullity. [Doc. 13566-1 at 78].  Taishan relies solely on two

unreported, out-of-circuit district court opinions for the proposition that the filing of an amended

complaint renders an initial served complaint a "nullity."  *See Viznai v. United Homes of N.Y.,*

*Inc.*, Docket No. 07-7173, 2009 U.S. Dist. LEXIS 28002 (E.D.N.Y. Apr. 3, 2009); *Saint-Gobain*

*Autover USA, Inc. v. Fuyao Glass Indus. Group Co.*, No. 05-71079, 2005 U.S. Dist. LEXIS

38111 ( E.D. Mich. Dec. 16, 2005).  Taishan's reliance on these cases is misplaced.

   In *Viznai*, the plaintiffs sought and obtained leave to amend a complaint by adding

more defendants, posing a "risk of inconsistent rewards."  *Viznai*, at *3.  Because the complaint

added new defendants, the court found that setting aside the default was warranted.

   Taishan's reliance on *Saint-Gobain* is even more misleading.  In that case, the

district court explicitly rejected Taishan's argument: "Plaintiffs' Amended Complaint did not

assert any new claims, but rather filled in the holes in the Original Complaint in order to survive

the motion to dismiss. Because Defendant's answer to the Original Complaint had not been

received within twenty days of service, Defendant Fuyao China was in default, and Plaintiffs

were not obligated to serve Defendant with the Amended Complaint."  *Saint-Gobain*, at *4–5.

The use of the word "nullity" in that case was merely a formal recognition of the effect of an

1013194.3

amended complaint on an original complaint *for other purposes* unrelated to the question of whether service was required in order to sustain the default.  It was not.  *Id.* at *5.

Absent from Taishan's motion is any mention of the leading case regarding default judgments and amended complaints, the Second Circuit Court of Appeals' decision in *Int'l Controls Corp. v. Vesco*, 556 F.2d 665 (2nd Cir. 1977).  In *Vesco*, the plaintiff obtained a default judgment based upon its original complaint and thereafter filed an amended complaint which was not served on the individual defendants.  The defendant took the position that the un-served amended complaint rendered the original complaint void and incapable of supporting the default.  The Second Circuit disagreed, noting that while it was established that an amended complaint ordinarily supersedes an original complaint, the authority stating the rule did not focus on the point in time at which the superseding of the original complaint occurred.  The Second Circuit reasoned that if the amended complaint was the type that must be served pursuant to Rule 5(a), the filing of the amended complaint remained "inchoate" until served.  In other words, the original complaint was not superseded until the amended complaint was actually served.  The court noted that:

> It would make little sense to hold, as appellant urges, that a complaint in such a state supersedes a properly served complaint. Such a holding would leave a case in a state of suspended animation in the interim between filing and service of the amended complaint, with the court perhaps even lacking personal jurisdiction over the defendant.
>
> Such a holding would also introduce a substantial risk factor into a plaintiff's decision whether to amend his complaint.  A plaintiff considering amendment would have to evaluate the likelihood that the amended pleading could actually be served on the defendant or defendants. . . .  It seems plain that the introduction of such a consideration into the decision whether to amend, requiring the plaintiff in effect to gamble on the likelihood of obtaining service, would discourage amendments and thus would be inconsistent with

the amendment policy underlying the federal procedural system . .
. .

*Id.* at 669.

The rule as announced in *Vesco* has been widely accepted.  *See Blair v. City of Worcester*, 522 F.3d 105 (1st Cir. 2008) (it is doubtful that the un-served amended complaint in fact superseded the original complaint); *Anunciation v. West Capital Fin. Servs. Corp.*, 97 F.3d 1458 (9th Cir. 1996) (unpublished) (the exact point of supersession, however, occurs when the amended complaint is effectively served, not when it is filed); *Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 07-cv-2376, 2009 U.S. Dist. LEXIS 97435 (E.D.N.Y. Oct. 20, 2009) (original complaint is only superseded when the plaintiff serves the amended complaint, not when the plaintiff files it); *Rolle v. Law Office of Samuel Streeter, PLLC*, No. CIV 08-274-TUC-CKJ, 2010 U.S. Dist. LEXIS 26174 (D. Ariz. Mar. 1, 2010) (original complaint is only superseded when the amended complaint is properly served, not when it is filed); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1180 (C.D. Cal. 1998) (same).

For these reasons, Taishan's assertion that the filing of an Amended Complaint justifies vacating the default lacks support and should be rejected.

## III.   TAISHAN'S NEGLECT IN FAILING TO TIMELY APPEAR IN THIS COURT WAS NOT EXCUSABLE.

Federal Rule of Civil Procedure 55 provides that "for good cause shown the court may set aside an entry of default."  Good cause "is not susceptible of precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely." *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992).  While the determination is flexible, district courts within the Fifth Circuit should consider three factors in assessing good cause in the default setting: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is

presented.  *Id.*  These three factors may be treated "in the disjunctive," such that a motion to

vacate may be denied based on any one of these factors alone. *Id.* at 183-84. As the Fifth Circuit

further explained:

> The three factors … are not talismanic. Courts have been careful to avoid treating them as though they were exclusive, relying on such other factors including whether: (1) the public interest was implicated, (2) there was a significant financial loss to the defendant, and (3) the defendant acted expeditiously to correct the default. Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of "good cause" to set aside a default. That decision necessarily is informed by equitable principles. We conclude that when the court finds an intentional failure of responsive pleadings there need be no other finding.

*Id.* at 184 (emphasis added).

### A.    Taishan's default was willful

Within the Fifth Circuit, intentional failure to respond to a served complaint is

sufficient grounds — in and of itself — to deny a motion to vacate entry of default.  *In re*

*Dierschke*, 975 F.2d at 184.  Indeed, the Fifth Circuit in *Dierschke* affirmed denial of a motion to

set aside a default on facts less egregious than those here. The facts of that case are instructive.

*Dierschke* arose out of a voluntary bankruptcy proceeding involving Dierschke's parents. The

case against Dierschke involved an alleged series of fraudulent transfers between Dierschke and

his parents prior to the filing of their bankruptcy proceedings. Both Dierschke and his lawyer

were served with a copy of the complaint and the summons. No responsive pleadings were filed.

After more than two months of silence from Dierschke, plaintiffs requested entry of default,

which the court granted.  Thereafter, a notice of hearing on damages and attorneys' fees was

issued.  Dierschke responded with an array of motions, including a motion to set aside the

default. After a hearing, the bankruptcy court denied the motion to set aside the default, holding

that "the defendant willfully failed to answer the Complaint and Summons and that no excusable neglect has been shown." *Id*. at 183, n. 1.

The bankruptcy court rejected Dierschke's argument that he "did not understand" the significance of the complaint and summons. On review for abuse of discretion, the Fifth Circuit found "no reason to disturb the court's finding that Dierschke 'chose to make a decision that he hadn't been served when, in fact, he had.'" *Id*. at 184. The fact that Dierschke's attorney took action promptly *after* the default was entered did not persuade the Fifth Circuit to reverse the lower court's finding of willful default. *Id*. at 184-85.  This Court should be similarly unmoved by Taishan's unsupported claim of ignorance.

Here, Taishan's actions are at least as egregious as Dierschke's.  As detailed above, service of Mitchell's complaint was perfected on Taishan on May 8, 2009.  And it is undisputed that Taishan received the complaint from the Chinese Court, in Chinese.  Jia Dec. ¶ 32.  Taishan simply ignored it because (1) it did not believe the litigation was meritorious, and (2) because "Taishan had no reason to believe that its drywall had quality problems."  *Id*. ¶ 33.

After nearly four months of absolute silence from Taishan, Mitchell requested entry of default on September 2, 2009, [Doc. 190, 256] and default was entered on September 23, 2009. [Doc. 277]. Yet, it was another nine months after default was entered before Taishan bothered to appear before this Court. [Doc. 3668].

The Fifth Circuit has, under these exact circumstances, affirmed a district court's refusal to vacate entry of default.  *See Formal Specialists, Ltd. v. Wilbert Lyons, Inc.*, 98 Fed. Appx. 284, 286 (5th Cir. Tex. 2004) (per curiam) (affirming where service was perfected, complaint specified the time to answer and the consequences of failing to appear, and litigant waited nine months before appearing).  *Accord Efffjohn Intl Cruise Holdings, Inc. v. A&L Sales,*

*Inc.*, 346 F.3d 552, 563 (5th Cir. La. 2003) (refusing to vacate default where neglect was not willful, but also not excusable because litigant had actual notice of proceedings); *Alaniz v. H & H Farms, LLC,* No. B-09-113, 2010 U.S. Dist. LEXIS 109986 (S.D. Tex. Oct. 14, 2010) (refusing to vacate default where litigant failed to respond expeditiously to entry of default and service was perfected; holding this alone is, by itself, sufficient to refuse to vacate default judgment).

Taishan's willful disregard of the Complaint and summons in this case stands in contrast to the accidental defaults by engaged litigants that ordinarily justify vacating entry of judgment in this Circuit. *See, e.g., Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. Tex. 2000) (vacating default where individual litigant misunderstood duplicate mailings of process and affirmatively attempted to resolve lawsuit within two weeks of service). And even then, entry of defaults committed by accident often withstand such attacks because it is "inexcusable neglect." *See Cjc Holdings v. Wright & Lato*, 979 F.2d 60, 64 (5th Cir. Tex. 1992) (refusing to vacate default where company president received courtesy copy of complaint and then traveled without attending to subsequent summons; "we suggest that district courts should use the less subjective excusable neglect standard in the future.").

Taishan's neglect also stands in contrast to the extreme situations Taishan cites where defaults, judgments, or settlements have been set aside. In particular, Taishan's reliance on a Second Circuit case involving the default judgment against the Soviet Union regarding repudiated debt is misplaced. That case set aside the default because the court found it *did not have jurisdiction over the Soviet Union at all*, not because it found that, assuming jurisdiction, the equities favored vacating the default anyway. *See Carl Marks & Co. v. USSR*, 665 F. Supp. 323 (S.D.N.Y. 1987), *aff'd*, 841 F.2d 26 (2d Cir. 1988). Even less relevant here is *Northrop*

*Grumman Ship Sys., Inc. v. Ministry of Def. of Venezuela*, 575 F.3d 491, 503 (5th Cir. 2009).

There, the Fifth Circuit vacated a *settlement* that was negotiated by an attorney not authorized to

settle the case against Venezuela; no such problem exists here.[7]

       Taishan argues that it did not understand the significance of Mitchell's complaint

based on its "lack of any sales or other business activities in Florida." [Doc. 13566-1 at 79, citing

Jia Dec., ¶ 28]. Based on the documentary and photographic evidence of Taishan's robust and

ongoing business relationships with U.S. companies for the express purpose of selling drywall

manufactured to U.S. specifications into Florida and other States, Taishan's arguments in this

regard ring hollow.  Taishan's retainer of American counsel now is further evidence of their

understanding of the significance of this litigation.  Taishan's failure to act in a timely fashion in

response to proper service should not be ignored because of its belated decision to act now.  As

the factfinder, this Court assesses the credibility of evidence and testimony presented to

determine whether Taishan's default was willful.  That is why this highly factual inquiry is

reviewed for abuse of discretion on appeal.  *See Dierschke*, 975 F.2d at 184.

       In light of the evidence presented, a finding of willful default is more than

warranted here — Taishan ignored this case because it did not think it was meritorious. Such a

finding, by itself, is sufficient to deny Taishan's motion to vacate.

---

[7] Taishan's implication that the judicial and linguistic differences between China and the United States excuse its failure to appear, even though it was served process in Chinese, is also based on misplaced reliance on inapplicable precedent.  *See Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 (D.C. Cir. 1987) (remanding for further findings regarding Bolivia's understanding of the Foreign Sovereign Immunities Act *only* because the FSIA's complex caselaw may have led Bolivia to mistakenly believe it was immune from suit and because national interests in foreign policy weighed in favor of setting aside default in such a scenario); *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 430 F. Supp. 2d 1064 (E.D. Cal. 2005) (Ninth Circuit district court holding confusion by foreign defendant over impact of service in *parallel proceedings* was excusable neglect, in part because litigant was actively engaged in one of the two proceedings).

1013194.3

**B.** **Vacating the default will prejudice the Plaintiff**

Inexcusable neglect, by itself, is sufficient to sustain the entry of judgment against a defaulting defendant. *See Dierschke*, 975 F.2d at 184 (addressing only excusable neglect factor); *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. La. 2003) (primarily examining excusable neglect factor; ignoring complaint was inexcusable neglect). Nevertheless, Plaintiff addresses Taishan's other arguments seeking to vacate the default.

Taishan sets forward the correct standard for finding prejudice to a plaintiff upon vacatur of a default, but fails to apply it to the facts of this case. Prejudice is found in several scenarios, including "loss of evidence, [] increased difficulties of discovery, or [] greater opportunity for fraud and collusion." *Robinson v. Sanctuary Music*, 383 Fed. Appx. 54, 58 (2d Cir. 2010).

Plaintiff here will be prejudiced by Taishan's late entry into this case by more than mere delay. Mitchell and the builders it seeks to represent could also suffer from the expiration of the statute of limitations on their claims. See *Sarullo v. C-Town Supermarket*, No. 08-cv-178, 2010 U.S. Dist. LEXIS 20401 (E.D. Pa. Mar. 4, 2010) ("The Court will not permit defendants to benefit from their culpable conduct in this matter by belatedly claiming that Plaintiff has sued the wrong parties, yet argue that any claims against new parties are time-barred. The Court finds that the prejudice factor also weighs heavily in favor of upholding the default judgment."). In this case, the Complaint against Taishan was filed on March 6, 2009, and entry of default was entered on September 23, 2009. Now some two and a half years after the entry of default and 3 years after the filing of the Complaint, Taishan argues that the wrong party has been sued.

Moreover, Taishan now points this Court to the party they deem ultimately responsible: TTP.  TTP ceased doing any business in 2008.  *See* Doc. 13566-1 at 12.  If Mitchell is now forced to take discovery from TTP based on Taishan's late contribution of vital case information, their burden will be higher, and their probability of successfully obtaining useful discovery lower, than if Taishan had responded to the Complaint instead of disregarding it *two and a half* years ago.  This Court should reject Taishan attempt to "straggle into these proceedings."  *Effjohn*, 346 F.3d at 563.

### C. Mitchell has a meritorious claim

Next, Taishan argues that this Court should set aside its disregard of proper service by summarily listing defenses it believes are meritorious in this case.  These "mere denials or conclusory allegations are not sufficient" for purposes of satisfying the meritorious defense standard.  10-55 Moore's Federal Practice - Civil § 55.70.  *See United States v. One 1978 Piper Navajo PA-31, Aircraft*, 748 F.2d 316, 319 (5th Cir. 1984); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001).

First, Taishan reiterates that it is not subject to personal jurisdiction in Florida.  This argument has already been addressed comprehensively.  The facts simply do not align with Taishan's argument.

Second, Taishan mistakenly claims that Mitchell cannot prove that it bought drywall from Taishan.  As addressed above, the supply chain from Taishan to Mitchell is clear and well-documented.

Third, Taishan claims, without explanation, that Mitchell lacks standing to sue on behalf of "property owners nationwide." [Doc. 13566-1 at 81].  As an initial matter, Taishan seems to misapprehend the class of builder plaintiffs Mitchell has proposed to represent. [Doc. 42 at ¶ 29].  Further, Taishan fails to advance any reasons or facts to support this argument.  In

any event, the scope of the class Mitchell may represent in this case is a procedural issue properly addressed at the class certification stage, not now.

Fourth, Taishan raises an argument already rejected by this Court.  This Court has already found that the economic loss rule does not bar Plaintiff's claims because, unlike in the cases cited by Taishan, in this case Taishan's defective product caused damage to property in addition to itself.  *See* Doc. 741 at pp. 15-23.  Moreover, even if the economic loss rule applies, Taishan's defense would not absolve it of liability; its economic loss argument does not, alone, justify vacatur. *See Jenkens & Gilchrist a Prof'l Corp. v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. Tex. 2008) (requiring complete defense) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. N.Y. 1993)).

Fifth and finally, even if Taishan were to succeed in moving to dismiss certain of Plaintiff's claims, it would not constitute a complete defense requiring vacatur of the default. The partial victory Taishan envisions here is a pyrrhic one — Plaintiff can and would prove at trial that Taishan is liable for its defective drywall and the damage that it caused.  Because Taishan lacks a meritorious complete defense, relief from the entry of default is unwarranted.

### D.     <u>Vacating the default would violate the public interest</u>

In the summer of 2005, hurricanes Katrina and Rita struck the Gulf Coast of the United States, killing more than 1,800 people and demolishing thousands of homes, commercial buildings and other property.  In the wake of those natural disasters, and in conjunction with a housing boom, U.S. builders faced a critical shortage of drywall for the reconstruction and repair of damaged buildings and the construction of new homes. As meticulously documented in the PSC's Global SOF, Taishan capitalized on that shortage in the U.S. market, ultimately selling more than 85 million square feet of drywall to customers in U.S. between 2005 and 2008.  *See*

Global SOF [Doc. 14215-2] at p. 3, n. 10.

By even the most conservative estimate, the defective drywall Taishan manufactured for use in Florida and throughout the U.S. caused millions of dollars in damage. Taishan's willful refusal to respond to Mitchell's complaint evidences Taishan's intent to escape responsibility for the extensive damage its product caused. Jurisdictional discovery and factual development in this matter now confirm the supply chain leading directly from Taishan to Mitchell and numerous other plaintiffs within Florida and the throughout the United States.

If this Court should set aside the default against Taishan, Mitchell, the class of builders Mitchell seeks to represent, and the homeowners those builders serve, will have the added burden and delay of preparing for trial more than three years after Mitchell filed its Complaint. Allowing Taishan to benefit from its dilatory tactics would violate the public interest. and should be prevented.

## CONCLUSION

For the foregoing reasons, Mitchell respectfully requests this Court to deny Taishan's motion and confirm the default.

Respectfully submitted,

Dated:  May 18, 2012

CUNNINGHAM BOUNDS, LLC

By:_____/s/ Steven L. Nicholas_____
        Steven L. Nicholas

Steven L. Nicholas (ASB-2021-N35S)
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street
Mobile, AL  36604
Telephone:  (251) 471-6191
Facsimile:   (251) 479-1031
Email:  sln@cunninghambounds.com

1013194.3

Jonathan D. Selbin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10017-2024
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
Email:  jselbin@lchb.com

Elizabeth J. Cabraser
Kristen L. Sagafi
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email:  ecabraser@lchb.com
        klaw@lchb.com

*Attorneys for Plaintiff The Mitchell Company,
Inc.*

-26-

**<u>CERTIFICATE OF SERVICE</u>**

        I do hereby certify that the above and foregoing Motion for Relief of Stay and for

Briefing Schedule has been served on Plaintiff's Liaison Counsel, Russ Herman, and

Defendants' Liaison Counsel Kerry Miller, by U.S. Mail and email or by hand delivery and

email and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in

accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the

Clerk of Court of the United States District Court for the Eastern District of Louisiana by using

the CM/ECF System, which will send a notice of electronic filing in  accordance with the

procedures established in MDL 2047, on this the 18th  day of May, 2012.


                      ___/s/ Steven L. Nicholas_____
                      STEVEN L. NICHOLAS

1013194.3