# EXHIBIT C

INSTR # 2011000095502, Doc Type JUD, Pages 11, Recorded 04/21/2011 at 03:09 PM,
Charlie Green, Lee County Clerk of Circuit Court,   Deputy Clerk ERECORD

4/21/2011 12:58 PM Filed Lee County Clerk of Court

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

Case Number: 10-CA-002840

FCCI COMMERCIAL INSURANCE
COMPANY,
      Plaintiff,

v.

AL BROTHERS, INC.,
      Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on a Motion for Summary Judgment filed by FCCI

Commercial Insurance Company (FCCI) on January 14, 2011. Upon Consideration of the Motion,

the pertinent portions of the record, and oral argument by both sides heard in open Court on April

11, 2011, the Court enters the following Order.

I.    **Factual and Procedural Background**

This is a declaratory judgment action to determine insurance coverage for personal injury

and property damage allegedly resulting from the use of defective Chinese drywall. FCCI filed a

declaratory judgment action on July 15, 2010, and amended it on September 16, 2010, seeking a

declaration from this Court that FCCI does not owe a duty to defend or indemnify AL Brothers, Inc.

(hereinafter "AL Brothers") under any insurance policy(ies) FCCI issued to AL Brothers with

respect to actions relating to claims arising from allegedly defective Chinese drywall. When

comparing the pending underlying complaints to the plain language of the FCCI policies, it is clear

that all underlying claims are not insured by or are excluded by language in the FCCI policies.

Accordingly, as a matter of law, FCCI does not owe a duty to defend and indemnify AL Brothers in

connection with any claim alleging defective Chinese drywall.

### A.    Underlying actions

AL Brothers has been named as a defendant in the following underlying actions: 1) *Sean and Beth Payton, et al. v. Knauf GIPS KG, Residential Drywall, et al.*, USDC, EDLA, Case No. 2:09-cv-07628-EEF-JCW ("*Payton*"); 2) *Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public, Residential Drywall, et al.*, USDC, EDLA, Case No. 2:10-cv-00361-EEF-JCW ("*Wiltz*"); and 3) *Joyce W. Rogers, et al. v. Knauf GIPS KG, et al.* (Class Action), USDC, EDLA, Case No.: 2:10cv00362, ("*Rogers*").  The plaintiffs in the underlying actions allege AL Brothers is liable for damages resulting from the installation of allegedly defective Chinese drywall.  (See *Payton* Complaint, p. 487, ¶ 2523; *Wiltz* Complaint, p. 143, ¶ 705; *Rogers* Complaint, p. 133, ¶ 662.)

The underlying actions allege that AL Brothers installed defective Chinese drywall that emitted sulfides and other noxious gases (or "off-gases").  (See *Payton* Complaint, p. 506 ¶ 2611; *Wiltz* Complaint, p. 151, ¶ 724; *Rogers* Complaint, p. 137, ¶ 681.)  The plaintiffs in the underlying actions allege that the sulfides and other noxious gases have caused corrosion and damage to personal property such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances, and other metal surfaces and property and that exposure to sulfide and other noxious gases caused bodily injury.  (See *Payton* Complaint, p. 506, ¶ 2612-13; *Wiltz* Complaint, pp. 151-152, ¶ 743-44; *Rogers* Complaint, p. 137-38, ¶ 682-83.)  The underlying actions seek damages against AL Brothers for the costs of inspection, the cost to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes, and personal property, and diminution of property value. (See *Payton* Complaint, p. 507, ¶ 2619; *Wiltz* Complaint, p. 153, ¶ 750; *Rogers* Complaint, p. 138-39, ¶ 689.)  Some plaintiffs in the underlying actions also claim damages for injuries as a result of allergic reactions, coughing, sinus and throat infection, eye

- 2 -

irritation, respiratory problems, and other health problems.  (See *Payton* Complaint, p. 503 ¶ 2613; *Wiltz* complaint, p. 152, ¶ 744; *Rogers* Complaint, p.137-38 ¶ 683.)

**B.    Current dispute**

FCCI issued two General Liability insurance policies to AL Brothers that are at issue: policy number GL 0001705-3, effective 04/01/2005 through 04/01/2006; and policy number GL 0001705-4, effective 04/01/2006 through 04/01/2007.  Each of the FCCI policies GL 0001705-3 and GL 0001705-4 issued to AL Brothers contains a Total Pollution Exclusion Endorsement Form CG2149 09/99.

The FCCI policies GL 0001705-3 and GL 0001705-4 issued to AL Brothers each contain the following Total Pollution Exclusion, CG 21 49 09 99:

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time  . . . .

FCCI policies GL 0001705-3 and 0001705-4 define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  AL Brothers is seeking coverage for the claims in the underlying actions.  FCCI claims it has no duty to

- 3 -

defend AL Brothers in the actions against it because the injuries and damages from the Chinese drywall fall under the policies' Pollution Exclusion. AL Brothers argues that the excessive amounts of sulfides and excess gases that compromise the drywall in question are not "pollutants," and therefore FCCI must defend AL Brothers in the underlying actions and eventually indemnify it.

This Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policy and the Pollution Exclusion does apply.

## II.  Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue. See Nationwide Mutual Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008). The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact. Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact. See Landers v. Milton, 370 So. 2d 368 (Fla. 1979). If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment. See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

## III.  Analysis

### A.  Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida, issued and delivered in Florida to a Florida insured, and the homes upon which AL Brothers allegedly installed drywall were located in Florida. See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). AL Brothers is a dissolved

Florida Corporation that was exclusively located in and doing business in Florida. At all material

times, AL Brothers installed drywall in Florida. The claims in the underlying actions arise out of

the alleged exposure to drywall installed by AL Brothers in properties located in Florida. AL

Brothers does not dispute the application of Florida law to this matter.

### B.    Duty to Defend

FCCI asserts that it does not have a duty to defend AL Brothers in the underlying actions

because the compounds and sulfide gases being released from the defective drywall qualify as

"pollutants," and the damages and injuries caused are excluded from coverage by the Pollution

Exclusion. When determining whether an insurer has a duty to defend, a court "must look to the

allegations contained within the four corners of the complaint in the underlying action against the

insured." Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322

(S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts

contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where

the allegations show that coverage does not exist or a policy exclusion applies. Wilson ex rel.

Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if

there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify.

Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also, Wilson, 469 F.

Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify"). As

such, this Court need not look further than the underlying pleadings and the FCCI policies to render

a determination that FCCI does not have a duty to defend AL Brothers. The plaintiffs in the

underlying actions all allege that their damages and the injuries are the direct result of the release of

pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are

excluded by the clear and unambiguous language of the Total Pollution Exclusion in the FCCI

- 5 -

policies issued to AL Brothers. Therefore, FCCI does not have a duty to defend or indemnify AL
Brothers in any claim arising out of any allegation that AL Brothers installed allegedly defective
Chinese drywall.

### C.    Pollution Exclusion

The Total Pollution Exclusion contained in the General Liability policies provides that there
is no coverage for any bodily injury or property damage "which would not have occurred in whole
or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or
escape of 'pollutants' at any time." (CG 21 49 09 99.) Further, there is no coverage for "[a]ny loss,
cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement
that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize,
or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The claims in the underlying actions arise solely from damage or injury resulting from the
release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total
Pollution Endorsement. The underlying plaintiffs have also sought relief in the form of a demand
that AL Brothers monitor, remove, contain, treat, or respond to the Pollutants. This specific request
is also precluded by the Total Pollution Exclusion.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by
Florida courts and Federal courts applying Florida law to be unambiguous, and such language has
been applied to bar coverage for injury and damages from the release of pollutants of various types.
See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's
policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida
Supreme Court held that the pollution exclusions contained in the CGL policies, practically

identical to the one in AL Brothers' policies, were unambiguous and precluded coverage. Id. at
1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a
substantial majority of courts have concluded that the total pollution exclusion is clear and
unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy
Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of
courts that have examined 'absolute pollution exclusions' have found them to be clear and
unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559
N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and
unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v.
Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other
jurisdictions which have considered such an exclusion have found that it precludes all coverage of
any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has
held that pollution exclusions with language identical or substantially similar to FCCI's Total
Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. See,
e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting
assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators,
Inc.v. Tampa Housing Authority, 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue
is unambiguous under Florida law). Therefore, based on clear Florida precedent, this Court finds
that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage,
migration, release or escape of pollutants" within the meaning of the Pollution Exclusion. The

underlying actions allege that the sulfide gases were emitted from defective drywall resulting in their bodily injury or damage to their property. (See e.g., *Rogers* Complaint, p. 137-38, ¶ 681-84.)

The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions. See Auto Owners Ins. Co. v. City of Tampa Housing Authority, 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); West American Ins. Co. v. Band & Desenberg, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with

the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139

(citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990)

("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not

defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")).  In

assessing the application of the pollution exclusion, Florida courts have defined these terms as they

are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular

effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139, (quoting

Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue

fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by

contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New

World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indemnity Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F.

Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded

coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid

while on the insured's premises.  Id. at 1320.  The court, citing Deni, rejected the idea that the

pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained

undefined.  Id. at 1323-24.  In determining whether something was an "irritant or contaminant"

within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a

substance is an irritant or contaminant, 'the court should look to see if a disputed substance is

alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination,'" Id.

at 1324 (quoting Nova, 424 F. Supp. 2d at 1325).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined

under the FCCI policies, Florida courts have continually rejected the assertion that the terms are

ambiguous.   As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying actions, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the Total Pollution Exclusion. Without the presence of these gases, no irritation or contamination would have occurred.  Because the underlying actions plainly alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

Finally, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. General Fidelity Ins. Co. v. Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. decided March 24, 2011) and Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010).  The General Fidelity Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy, and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowners policy.  Although neither case is binding upon this Court, this Court does find both persuasive.  In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Thus the injuries and damages sustained from the drywall are within the policies' Total Pollution Exclusion.  FCCI has no duty to defend or indemnify AL Brothers, Inc.  Accordingly, summary judgment is warranted.

**IV.    Conclusion**

FCCI's Motion for Summary Judgment is hereby **GRANTED**.  The Court hereby enters a final judgment in favor of FCCI and against AL Brothers as follows:

1.    FCCI does not owe a duty to defend or indemnify AL Brothers in the underlying actions (*Payton*, *Wiltz*, and *Rogers*) or any similar case alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2.    Any damages alleged in the underlying actions are precluded from coverage by the unambiguous language of the Total Pollution Exclusion.

3.    There is no coverage available to AL Brothers under the FCCI policies.

**IT IS SO ORDERED**

April ___19___ , 2011

_(signature)_

Judge Michael T. McHugh

- 11 -