# EXHIBIT D

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR CHARLOTTE COUNTY, FLORIDA

FCCI COMMERCIAL INSURANCE COMPANY,
    Plaintiff,

Case Number: 102979-CA

v.

SHIRLEY CONSTRUCTION AND DRYWALL, INC.,
    Defendant.    /

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on a Motion for Summary Judgment filed by FCCI Commercial Insurance Company (FCCI) on May 31, 2011. Upon Consideration of the Motion, the pertinent portions of the record, and oral argument heard in open Court on August 1, 2011, the Court enters the following Order.

**I.**    **Factual and Procedural Background**

This is a declaratory judgment action to determine insurance coverage for personal injury and property damage allegedly resulting from the use of defective Chinese drywall. FCCI filed a declaratory judgment action on July 15, 2010 seeking a declaration from this Court that FCCI does not owe a duty to defend or indemnify Shirley Construction and Drywall, Inc. (hereinafter "Shirley") under any insurance policy(ies) FCCI issued to Shirley with respect to claims arising from allegedly defective Chinese drywall. The complaint was amended on December 1, 2010. When comparing the claims to the plain language of the FCCI policies, it is clear that all underlying claims are not insured by or are excluded by language in the FCCI policies. Accordingly, as a matter of law, FCCI does not owe a duty to defend and indemnify Shirley in connection with any claim alleging defective Chinese drywall.

### A. Underlying Claims

The underlying claim alleges that Shirley installed defective Chinese drywall. (See May 29, 2009 Taylor Morrison claim Shirley tendered to FCCI, Exhibit "1" to Plaintiff's Motion for Summary Judgment. ("Taylor Morrison Claim"). Taylor Morrison alleges claims have been made against it relative to drywall provided and installed by Shirley in residences constructed under certain subcontract agreements. The Taylor Morrison claim demands Shirley remedy any defects in material and workmanship and that Shirley assume the defense and indemnification of Taylor Morrison for any claims made against Taylor Morrison with respect to drywall provided and installed by Shirley. Further, the Taylor Morrison claim demands reimbursement of expenses incurred by Taylor Morrison in responding to and defending claims made relative to drywall provided and installed by Shirley. (See Taylor Morrison Claim.)

### B. Current Dispute

FCCI issued several commercial insurance policies to Shirley for which Shirley claims coverage may apply. FCCI issued the following Commercial Package policies that include Commercial General Liability coverage which is at issue:

    Policy number CPP0000591-4 effective 03/01/2005 through 03/01/2006;

    Policy number CPP0000591-5 effective 03/01/2006 through 03/01/2007;

    Policy number CPP0000591-6 effective 03/01/2007 through 03/01/2008;

Each of the FCCI Commercial Package Policies issued to Shirley contains the following insuring agreement:

> SECTION I – COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or

"property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    b.    This insurance applies to "bodily injury" and "property damage" only if:
        (1)    The "bodily injury" or "property damage" is caused by an "occurrence"...
        (2)    The "bodily injury" or "property damage" occurs during the policy period; and
        (3)    prior to the policy period no insured (or employee authorized by you knew, prior to the policy period, that the "bodily injury" or "property damage" occurred.

The FCCI policies issued to Shirley each also include the following relevant definitions:

SECTION V – DEFINITIONS
"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means:
a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
For the purposes of this insurance, electronic data is not tangible property.

The FCCI policies issued to Shirley each contain the following exclusion regarding damage to property:

    2.    Exclusions

        This insurance does not apply to:

      j.  Damage to Property
"Property damage" to:
        (5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
        (6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
. . .

    Paragraphs . . . (5) and (6) of this exclusion do not apply to liability assumed under a side-track agreement.

    Paragraph (6) of this exclusion does not apply to "Property damage" included in the "products-completed operations hazard".

The FCCI policies issued to Shirley each contain the following exclusion regarding damage to "your product":

    2.  Exclusions
    This insurance does not apply to:

      k.  Damage To Your Product
        "Property damage" to "your product" arising out of it or any part of it.

The FCCI policies issued to Shirley each contain the following exclusion regarding damage to "your work":

    2.  Exclusions
    This insurance does not apply to:

      l.  Damage To Your Work
        "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
        This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The FCCI policies issued to Shirley each contain the following exclusion regarding damage to "impaired property":

2. Exclusions
This insurance does not apply to:

    m.    Damage To Impaired Property Or Property Not Physically Injured

            "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
            (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
            (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

            This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The policies define "your work" in the exclusions as follows:

"Your work":
a.    Means:
    (1)    Work or operations performed by you or on your behalf; and
    (2)    Materials, parts or equipment furnished in connection with such work or operations.

b.    Includes
    (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
    (2)    The providing of or failure to provide warnings or instructions

The policies define "your product" in the exclusions as follows:

"Your product":
a.    Means:
    (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
        (a)    You;
        (b)    Others trading under your name; or
        (c)    A person or organization whose business or assets you have acquired; and
    (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes
    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
    (2) The providing of or failure to provide warnings or instructions.
  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

The policies define "impaired property" in the exclusions as follows:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:
a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
b. Your fulfilling the terms of the contract or agreement.

The FCCI Commercial Package Policies issued to Shirley each contain the following Total Pollution Exclusion, CG 21 49 09 99:

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

  (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time

  (2) Any loss, cost or expense arising out of any

> a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants,". . .
>
> . . .

The FCCI policies define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

FCCI also issued the following Commercial Umbrella policies to Shirley that are at issue:

Policy number UMB0004639-1 effective 09/15/2006 through 09/15/2007

Policy number UMB0004639-2 effective 09/15/2007 through 09/15/2008

The Commercial Umbrella policies contain the following insuring agreement:

We will pay on behalf of the insured those sums in excess of the Self Insured Retention that the insured becomes legally obligated to pay as damages because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury to which this insurance applies.

"Occurrence" is defined in relevant part under the policies as follows:

> An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in Bodily Injury or Property Damage, or . . .

Also, each of the Commercial Umbrella policies contains Endorsement UMB 066 (02-99), Pollution Exclusion—Total:

COMMERCIAL UMBRELLA LIABILITY

UMB 066 (02-99)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
POLLUTION EXCLUSION – TOTAL

This endorsement modifies Insurance provided under the following

-7-

> COMMERCIAL UMBRELLA LIABILITY POLICY
> Exclusion g under paragraph 1, C - Exclusions (section I - Coverage) is deleted and replaced by the follows
> g    To Pollution
> >  (1) Bodily Injury or Property Damage which would not have occurred In whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants at any time
> >  . . .
>
> "Pollutant" is defined under the policy as:
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste  Waste includes materials to be recycled, reconditioned or reclaimed

Shirley is seeking coverage for the Taylor Morrison claim. FCCI claims it has no duty to defend or indemnify Shirley for the Taylor Morrison claim because the injuries and damages from the Chinese drywall fall under the policies' Pollution Exclusion. FCCI also argues that the excessive amounts of sulfides and excess gases that compromise the drywall in question are "pollutants," and therefore FCCI does not owe a duty to defend Shirley in the underlying actions nor is FCCI required to indemnify it.

This Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policies and the Total Pollution Exclusion applies.

## II. Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue. See Nationwide Mut. Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008). The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact. Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact. See Landers v. Milton, 370 So.

-8-

2d 368 (Fla. 1979). If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment. See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

**III. Analysis**

    **A.    Applicable State law**

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida and were issued and delivered in Florida to a Florida insured. See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). Shirley is exclusively located in Florida. At all material times, Shirley installed drywall in Florida. The underlying claims arise out of the alleged exposure to drywall installed by Shirley in properties located in Florida.

    **B.    Duty to Defend**

FCCI asserts that it does not have a duty to defend Shirley in the underlying claim because the compounds and sulfide gases being released from the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusion. FCCI also asserts that it does not have a duty to defend Shirley against the underlying claim because the claim alleges damages to the work and product of Shirley which is excluded by the business risk exclusions and the impaired property exclusion. When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against insured." Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where the allegations show that coverage does not exist or a policy exclusion

applies. Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also, Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify").

In addition, where a claim is silent as to certain facts that are undisputed, the Court may look outside the allegations to those undisputed facts in determining the duty to defend. For example, in Nationwide Mut. Fire Ins. Co. v. Keen, 658 So. 2d 1101 (Fla. 4th DCA 1995) the Court held:

> Claimant argues that an ambiguity in the complaint requires a defense, citing Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810 (Fla. 1st DCA 1985). That may be true, but if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending. Tennessee Corp. v. Lamb Bros. Constr. Co., 265 So.2d 533 (Fla. 2d DCA 1972), may be an aberration, but it is founded on logic and fairness.

See, also Nateman v. Hartford Cas. Ins. Co., 544 So. 2d 1026 (Fla. 3d DCA 1989); Wilson v. General Taverrn, 469 F.Supp.2d 1214 (S.D. Fla. 2006); Underwriters at Lloyds v. STD Enterps., Inc., 395 F.Supp.2d 1142 (M.D. Fla. 2005). It is undisputed that the plaintiffs in the underlying claims all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusion in the FCCI policies issued to Shirley. Therefore, FCCI does not have a duty to defend or indemnify Shirley in any claim arising out of any allegation that Shirley installed allegedly defective Chinese drywall.

**C.     Pollution Exclusion**

The Total Pollution Exclusion contained in the General Liability policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole

or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99; UMB 066 0299) Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The underlying claims arise solely from damage or injury resulting from the release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total Pollution Endorsements.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in Shirley's policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97

(1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. See, e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators, Inc. v. Tampa Hous. Auth., 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law); see also Gen. Fid. Ins. Co. v. Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni). In a recent ruling in Foster, the United States District for the Southern District of Florida, entered an Order granting General Fidelity Insurance Company's Motion for Summary Judgment on a claim alleging damages from allegedly defective Chinese Drywall applying Florida law to a total pollution exclusion. Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion. The underlying claims allege that the sulfide gases were emitted from defective drywall resulting damage to the property. The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal,

release, escape, seepage or migration," as defined under pollution exclusions. See Auto Owners Ins. Co. v. City of Tampa Hous. Auth., 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); West Am. Ins. Co. v. Band & Desenberg, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")). In

assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises. Id. at 1320. The court, citing Deni, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined. Id. at 1323-24. In determining whether something was an "irritant or contaminant" within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" Id. at 1324 (quoting Nova, 424 F. Supp. 2d at 1325). Likewise, the United States District for the Southern District of Florida has recently ruled in applying Florida law that the damages allegedly caused by defective Chinese drywall are excluded by a total pollution exclusion. See Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are

ambiguous. As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying claims, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the pollution exclusions in Shirley's policies. Without the presence of these gases, no irritation or contamination would have occurred. Because the underlying claims alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. <u>Gen. Fid. Ins. Co. v. Foster</u>, Case Number 09-80743-Civ, (U.S.D.C. S.D. FL decided March 24, 2011) and <u>Travco Ins. Co. v. Ward</u>, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010). The <u>Gen. Fid. Ins. Co. v. Foster</u> case involved an identical pollution exclusion in a CGL policy and <u>Travco Ins. Co. v. Ward</u> involved a similar pollution exclusion in a homeowner's policy. Although neither case is binding upon this Court, this Court does find both persuasive. In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to several similar Florida State Trial Court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. In <u>FCCI Commercial Ins. Co. v. AL Bros., Inc.</u>, Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number: 10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case. Also, in

the same court, in <u>FCCI Commercial Ins. Co. v. Ocean Constr., Inc.</u>, Case Number: 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here. Judge Becky A. Titus also analyzed claims against an installer, MDW, analogous to the issues here, in <u>FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall</u>, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Case Number 10-CA-007389. Lastly, in <u>FCCI Commercial Ins. Co. v. S.D. & Assocs., Inc.</u>, in the Circuit Court of the Seventeenth Judicial circuit in and for Broward County, Case Number: 10-29152-18, Judge Michele Towbin-Singer analyzed the same exact claims against another installer, S.D. & Associates, Inc.

The FCCI policies were identical in those cases and in this case. Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken) Judge Gerald's Order dated June 6, 2011 (from which no appeal was taken), Judge Titus' Order dated July 6, 2011, and Judge Towbin-Singer's Order dated July 20, 2011, and even though they are not binding upon this Court, this Court finds these Orders to be persuasive and has adopted some of their language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions. FCCI has no duty to defend or indemnify Shirley Construction and Drywall, Inc. Accordingly, summary judgment is warranted.

D.   **"Your work" and "Your product" exclusion**

The "your work" exclusion contained in the FCCI policies eliminates coverage for damage to the actual work completed by Shirley. See <u>Auto-Owners Ins. Co. v. Pozzi Window Co.</u>, 984 So.2d 1241 (Fla. 2008). A "your work" exclusion is one of the "business risk" exclusions. The purpose of "business risk exclusions" is to ensure liability for faulty or defective workmanship is properly allocated between the insurer and insured. See <u>LaMarche v. Shelby Mut. Ins. Co.</u>, 390 So. 2d 325, 326 (Fla. 1980). In addition to the fruit of an insured's labor, the "your work" exclusion

also applies to the materials an insured uses. Thus, the FCCI policies exclude coverage for the claims against Shirley for the cost of tearing out and replacing drywall. The Taylor Morrison claim is seeking damages for the cost to remove and replace the defective drywall. (See Taylor Morrison claim.) The installation of the drywall is the work product of Shirley. Because under the "your work" exclusion, per Florida law, any costs associated with the repair and replacement of the defective drywall Shirley installed should be borne by Shirley, there is no coverage under the FCCI policy for any claim regarding the removal and replacement of the drywall.

A close relative to the "your work" exclusion that also eliminates coverage for Shirley is the "your product" exclusion. The policy excludes "property damage" to "your product" "arising out of it or any part of it." The language "arising out of it or any part of it" limits the scope of the exclusion to situations wherein the product itself is defective. See Red Source Techs., Inc. v. Colony Nat'l Ins. Co., 914 So.2d 1006 (Fla. 4th DCA 2005). Here, the Taylor Morrison claim asserts that the drywall itself is defective and damaged. (See Taylor Morrison claim.) As the policy states, there is no coverage for damage to the product itself. Because Shirley handled and distributed the drywall as required by the exclusion, the drywall is considered "your product" under the exclusion. As such, there is no coverage under the FCCI policy for any claim relating to the removal and replacement of the drywall.

Therefore, based on the above exclusions, FCCI does not owe a duty to defend or indemnify Shirley for these claims; summary judgment is warranted in this matter.

E.   **"Impaired property" exclusion**

The "impaired property" exclusion eliminates coverage for damage to property that has not been physically injured or for which the claimed damages are only for loss of use of that property. Furthermore, the exclusion bars coverage when the property can be restored to use by repair or

replacement of the policyholder's product or work. <u>Transcont'l Ins. Co. v. Ice Sys. of Am., Inc.</u>, 847 F.Supp. 947 (M.D. Fla. 1994). Essentially, this exclusion eliminates coverage for the costs of repairing or replacing the insured's defective work or product where it has not caused any physical injury but has merely rendered other property less valuable.

This exclusion, prevents an insured from making claims for the failure of its own product, and was applied in <u>Transcont'l Ins. Co. v. Ice Sys. of Am. Inc.</u>, 847 F. Supp. 947 (M.D. Fla.1994). In <u>Transcontinental</u>, summary judgment was granted where the insured supplied portable ice rinks for a hockey exhibition under contract with the Tampa Bay Hockey Group. The ice failed to properly freeze and was unplayable; the exhibition was cancelled; the Hockey Group sued. The court granted summary declaratory judgment that the claims for economic loss due to the failure of the ice were encompassed within the impaired property exclusion as well as others; therefore, there was no coverage. <u>Id</u>; <u>see also</u> <u>Harris Spec. Chems v. United States Fire Ins. Co.</u>, 2000 WL 34533982, *7 (M.D. Fla. 2000) (holding that "impaired property exclusion" applied to exclude coverage for cost to remove defective building sealant where removal did not harm any other part of building except occasional *de minimus* damage).

This exclusion also eliminates coverage for remediation costs asserted against Shirley. <u>See</u>, <u>Dorchester Mut. Fire Ins. Co. v. First Kostas Corp.</u>, 731 N.E. 2d 569 (Mass. Ct. App. 2000) (finding there is no coverage for costs incurred when a painter's improper removal of lead paint prior to repainting allowed lead paint chips and fumes to enter the house).

The Taylor Morrison claim demands that Shirley remove the defective drywall so that the homes can be restored. (<u>See</u> Taylor Morrison claim.) The removal and replacement of the drywall will restore the use of the property to what it was prior to the installation of the defective drywall.

Therefore, the impaired property exclusion eliminates coverage for these claims. As such, summary judgment is proper.

### IV. Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**. The Court hereby enters a final judgment in favor of FCCI and against Shirley as follows:

1. FCCI does not owe a duty to defend or indemnify Shirley in the underlying claims or any similar claims or lawsuit alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2. Any damages alleged in the underlying claims are precluded from coverage by the unambiguous language of the Total Pollution Exclusions.

3. Any damages alleged to be caused by the work or product of Shirley is eliminated by the "your work," "your product," and/or the "impaired property" exclusion.

4. FCCI does not owe a duty to defend or indemnify Shirley in any claim or lawsuit filed by Taylor Morrison contribution, indemnity, bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

5. There is no coverage available to Shirley under any of the FCCI policies.

**IT IS SO ORDERED**

This 18th day of August, 2011

/S/ George Richards
Judge George D. Richards

Copies furnished to:

Robert M. Darroch, Esq., Goodman McGuffey Lindsey & Johnson, LLP, 201 S. Orange Ave., Orlando, FL 32801
Shirley Construction and Drywall, Inc., 18440 Paulson Dr., Suite F, Port Charlotte, FL 33954