# EXHIBIT F

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT IN
AND FOR HILLSBOROUGH COUNTY,
FLORIDA

Case Number: 10-23495

FCCI COMMERCIAL INSURANCE
COMPANY and FCCI INSURANCE
COMPANY,
      Plaintiffs,

v.

RESIDENTIAL DRYWALL, INC.
      Defendant.             /

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on a Motion for Summary Judgment filed by FCCI

Commercial Insurance Company and FCCI Insurance Company (collectively "FCCI") on July 13,

2011. Upon Consideration of the Motion, the pertinent portions of the record, and the Court

otherwise being fully advised in the premises, the Court enters the following Order.

I.     **Factual and Procedural Background**

This is a declaratory judgment action to determine insurance coverage for personal injury

and property damage allegedly resulting from the use of defective Chinese drywall. FCCI filed a

declaratory judgment action on December 9, 2010 seeking a declaration from this Court that FCCI

does not owe a duty to defend or indemnify Residential Drywall, Inc. (hereinafter "Residential")

under any insurance policy(ies) FCCI issued to Residential with respect to actions relating to claims

arising from allegedly defective Chinese drywall. When comparing the pending underlying

lawsuits to the plain language of the FCCI policies, it is clear that all underlying claims are excluded

by language in the FCCI policies and are not insured by the FCCI policies. Accordingly, as a matter

of law, FCCI does not owe a duty to defend and indemnify Residential in connection with any claim alleging defective Chinese drywall.

## A.    Underlying Actions

Residential has been named as a defendant in a number of underlying lawsuits arising from the alleged installation of defective Chinese manufactured drywall:

> *Sean and Beth Payton, et al., v. Knauf Gips KG, Residential Drywall, et al.*, in the United States District Court for the Eastern District of Louisiana, Case No. 2:09-cv-07628-EEF-JCW ("*Payton*");

> *Lennar Homes, LLC and U.S. Home Corp. v. Knauf Gips KG, Residential Drywall, et al.*, Eleventh Judicial Circuit for Miami-Dade County, Florida, Case No. 09-07901 CA 23 ("*Lennar*");

> *Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public Limited Co., Residential Drywall, et al.*, in the United States District Court for the Eastern District of Louisiana, Case No. 2:10-cv-00361-EEF-JCW ("*Wiltz*");

> *Maronda Homes, Inc. of Florida v. Residential Drywall, Inc.*, in the Thirteenth Judicial Circuit for Hillsborough County, Florida, Case No. 10-006976 ("*Maronda Homes I*");

> *Mary Anne Benes, et al. v. Knauf Gips KG, Residential Drywall, Inc., et al.* intervening in *Gross, et al. v. Knauf GIPS KG, et al.*, Case No.: 09-6690, in the U.S. District Court for the Eastern District of Louisiana ("*Benes*"); and

> *Maronda Homes, Inc. of Florida v. Residential Drywall, Inc.*, in the Thirteenth Judicial Circuit for Hillsborough County, FL, Case No. 09-10159 ("*Maronda Homes II*").

The plaintiffs in each of the underlying actions allege that Residential is liable for damages resulting from the installation of Chinese-manufactured drywall. (See *Payton* complaint, pp. 501-502, ¶ 2588; *Lennar* complaint, p. 12, ¶ 44; p. 16, ¶ 62; *Wiltz* complaint, p. 149, ¶ 731; p. 152, ¶ 745; *Maronda Homes I* complaint, p. 3, ¶ 21; *Benes* complaint, p. 277, ¶ 1406; *Maronda Homes II* complaint, pp. 4-5, ¶¶ 20-22.) The underlying actions allege that Residential installed defective Chinese drywall. Some of the underlying actions allege the drywall has emitted sulfides and other noxious gases (or "off-gases"). (See *Payton* Complaint, p. 506, ¶ 2611; *Wiltz* Complaint, p. 151, ¶

742; *Benes* complaint, p. 281, ¶ 1424.)  Further, some of the underlying actions allege that the drywall has interacted with other conditions and elements, including normal Florida humid weather conditions, to cause damage.  (*Maronda Homes I* complaint, pp. 2-3, ¶ 11; *Maronda Homes II* complaint, p. 3, ¶ 12.)  The plaintiffs in the underlying actions further allege that the drywall has caused corrosion and damage to personal property such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property and that exposure to sulfide and other noxious gases caused bodily injury to some underlying plaintiffs.  (See *Payton* Complaint, p. 506, ¶ 2612; *Wiltz* Complaint, pp. 151-152, ¶¶ 743-44; see also *Lennar* complaint, p. 77, ¶ 467, *Maronda Homes I* complaint, pp.2-3, ¶¶ 11-13; *Benes* complaint, p. 281, ¶¶ 1425-27; *Maronda Homes II* complaint, p. 3, ¶¶ 11-13.)  The underlying actions seek damages against Residential, including the costs of inspection, the cost to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes, and personal property, and diminution of property value. (See *Payton* Complaint, pp. 507-508, ¶¶ 2618-2619; *Wiltz* Complaint, p. 153, ¶ 750;. see also. *Lennar* complaint, pp. 80-81 ¶ 486; *Maronda Homes I* complaint, p. 6, ¶ 29; *Benes* complaint, p. 282, ¶ 1432; *Maronda Homes II* complaint, p. 6, ¶ 30.)  Some plaintiffs in the underlying actions also claim damages for injuries as a result of allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health problems. (See *Payton* Complaint, p. 508, ¶ 2620; *Wiltz* Complaint. p. 153, ¶ 751; *Benes* complaint, pp.281-82 ¶ 1428.)

**B.      Current Dispute**

FCCI issued several commercial insurance policies to Residential for which Residential claims coverage may apply.  FCCI issued the following Commercial Package policies that include Commercial General Liability coverage which is at issue:

Policy Number CPP 0005537-1, effective 11/09/2005 through 11/09/2006

Policy Number CPP 0005537-2, effective 11/09/2006 through 11/09/2007

Policy Number CPP 0007699-1, effective 11/09/2007 through 11/09/2008

Policy Number CPP 0007699-2, effective 11/09/2008 through 11/09/2009

Each of the policies contains the following insuring agreement:

SECTION I – COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

b.     This insurance applies to "bodily injury" and "property damage" only if:
(1)     The "bodily injury" or "property damage" is caused by an "occurrence"...
(2)     The     "bodily     injury"     or     "property     damage" occurs during the policy period; and
(3)     prior to the policy period no insured (or employee authorized by you knew, prior to the policy period, that the "bodily injury" or "property damage" occurred.

The policies each contain the following relevant definitions:

SECTION V – DEFINITIONS
"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means:

- 4 -

    a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The policies each contain the following exclusion regarding damage to property:

    2.     Exclusions
           This insurance does not apply to:

          j.     Damage to Property

          "Property damage" to:
          (5)   That particular part of real property on which  you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
          (6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

          . . . .

          Paragraphs . . . (5) and (6) of this exclusion do not apply to liability assumed under a side-track agreement.

          Paragraph (6) of this exclusion does not apply to "Property damage" included in the "products-completed operations hazard".

The policies each contain the following exclusion regarding damage to "your product":

    2.     Exclusions
           This insurance does not apply to:

          k.     Damage To Your Product
               "Property damage" to "your product" arising out of it or any part of it.

The policies each contain the following exclusion regarding damage to "your work":

    2.     Exclusions
           This insurance does not apply to:

l.   Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policies each contain the following exclusion regarding damage to "impaired property":

2.   Exclusions
This insurance does not apply to:

m.   Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The policy defines "your work" in the exclusions as follows:

"Your work":
a.   Means:
(1)   Work or operations performed by you or on your behalf; and
(2)   Materials, parts or equipment furnished in connection with such work or operations.
b.   Includes
(1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
(2)   The providing of or failure to provide warnings or instructions

The policy defines "your product" in the exclusions as follows:

"Your product":
a.   Means:

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

     (a)    You;

     (b)    Others trading under your name; or

     (c)    A person or organization whose business or assets you have acquired; and

(2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.    Includes

(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2)    The providing of or failure to provide warnings or instructions.

c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

The policy defines "impaired property" in the exclusions as follows:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.    Your fulfilling the terms of the contract or agreement.

Each of the policies also include an exclusion for Contractual Liability that provides:

2.    Exclusions

This insurance does not apply to

. . .

b. Contractual Liability

"Bodily Injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability In a contract or agreement.

Each of the FCCI policies issued to Residential contains a Total Pollution Exclusion Endorsement Form CG2149 09/99.

- 7 -

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I –
Coverage A – Bodily Injury And Property Damage Liability is
replaced by the following:

This insurance does not apply to:

f. Pollution

> (1) "Bodily injury" or "property damage" which would not
>     have occurred in whole or part but for the actual, alleged
>     or threatened discharge, dispersal, seepage, migration,
>     release or escape of "pollutants" at any time
>
> (2) Any loss, cost or expense arising out of any
>
>> a) Request, demand, order or statutory or regulatory
>>    requirement that any insured or others test for,
>>    monitor, clean up, remove, contain, treat, detoxify
>>    or neutralize, or in any way respond to, or assess
>>    the effects of "pollutants," or
>
> . . . .

"Pollutant" is defined under the policies as follows:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or
contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals
and waste. Waste includes materials to be recycled, reconditioned or
reclaimed

FCCI also issued the following Commercial Umbrella policy to Residential that is at issue:

UMB 0008196-1, effective 12/15/2008 through 12/15/2009. The Commercial Umbrella

policies contain the following insuring agreement:

> We will pay on behalf of the insured those sums in excess of the Self Insured
> Retention that the insured becomes legally obligated to pay as damages because of
> Bodily Injury, Property Damage, Personal Injury or Advertising Injury to which
> this insurance applies.

- 8 -

"Occurrence" is defined in relevant part under the policies as follows:

> An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in Bodily Injury or Property Damage, or . . .

Also, the Commercial Liability Umbrella form UMB 001 (08 07) contains the following exclusion regarding pollution:

> 2    Exclusions
>
> This insurance does not apply to . . .
>
> I    Pollution
>
> > (1)    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time, or
> >
> > (2)    "Pollution cost or expense"

"Pollutant" is defined under the policy as:

> 15    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed

Residential is seeking coverage for the claims in the underlying actions. FCCI claims it has no duty to defend Residential in the actions against it because an occurrence has not been alleged for which there is coverage under the Residential policies. This Court finds that the allegations of Breach of Contract and Breach of Warranty against Residential are not occurrences as defined under the FCCI policies and thus there is no coverage for Residential under the policies. Further, this Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policies and the Pollution Exclusions apply.

## II.     Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue.  See Nationwide Mut. Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008).  The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact.  Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993).  If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact.  See Landers v. Milton, 370 So. 2d 368 (Fla. 1979).  If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment.  See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

## III.    Analysis

### A.     Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida and were issued and delivered in Florida to a Florida insured.  See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006).  Residential is exclusively located in Florida.  At all material times, Residential installed drywall in Florida.  The claims in the underlying action arise out of the alleged exposure to drywall installed by Residential in properties located in Florida.

### B.     Duty to Defend

FCCI asserts that it does not have a duty to defend Residential in the underlying actions because an occurrence has not been alleged and because of the Contractual Liability Exclusion. FCCI also asserts it has no duty to defend Residential because the compounds and sulfide gases

being released from the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusions.   When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured."   Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009).  A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only.  Id. at 1322-23.  There is no duty to defend where the *allegations show that coverage does not exist or a policy exclusion applies.*  Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006).  Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify.  Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify").  As such, this Court need not look further than the underlying pleadings and the FCCI policies to render a determination on the duty to defend as a matter of law in this matter.  The allegations against Residential, for Breach of Contract and Breach of Warranty do not fit the definition of occurrence under the policy and are therefore not covered under the FCCI policies.

In addition, where a complaint is silent as to certain facts that are undisputed, the Court may look outside the allegations of the Complaint to those undisputed facts in determining the duty to defend.  For example, in Nationwide Mut. Fire Ins. Co. v. Keen, 658 So. 2d 1101 (Fla. 4th DCA 1995) the Court held:

> Claimant argues that an ambiguity in the complaint requires a defense, citing Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810 (Fla. 1st DCA 1985). That may be true, but if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of

defending. Tennessee Corp. v. Lamb Bros. Constr. Co., 265 So.2d 533 (Fla. 2d DCA 1972), may be an aberration, but it is founded on logic and fairness.

See, also Nateman v. Hartford Cas. Ins. Co., 544 So. 2d 1026 (Fla. 3d DCA 1989); Wilson v. General Tavern, 469 F.Supp.2d 1214 (S.D. Fla. 2006); Underwriters at Lloyds v. STD Enterps., Inc. 395 F.Supp.2d 1142 (M.D. Fla. 2005).

It is undisputed that the plaintiffs in the underlying actions all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusions in the FCCI policies issued to Residential. Therefore, FCCI does not have a duty to defend or indemnify Residential in any claim arising out of any allegation that Residential installed allegedly defective Chinese drywall.

## C.    No Occurrence Alleged

The FCCI policies require that in order for Residential to be covered under the policies, "property damage" must be caused by an "occurrence" as defined by the policy. The definition of occurrence requires that any damage that occurred must be accidental and not caused by intentional conduct in order to be covered. Florida courts have stated that "accident" under a typical commercial general liability policy means injuries or damage neither expected nor intended from the standpoint of the insured. See State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (1998).

FCCI argues that the *Lennar* suit does not allege a recognized occurrence under Florida law that would trigger coverage of Residential under its policies. FCCI claims that Breach of Contract and Breach of Warranty claims are not considered occurrences, and therefore are not covered under the FCCI policies.

- 12 -

This Court agrees that these claims do not constitute an "occurrence" as required by a CGL policy.  See Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241 (2008).  Thus, the allegation of breach of contract in the *Lennar* complaint, as well as in the *Maronda Homes I* and *Maronda Homes II* complaints, is not an occurrence under the policies.  Breach of warranty claims are not considered occurrences under CGL policies because such claims are not caused by an "accident."  See Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241 (2008); Armstrong v. Land & Marine Applicators, Inc., 463 So.2d 1327 (La.App. 5 Cir., 1984); Kema Steel, Inc. v. Home Ins. Co., 153 Ariz. 315 (Ariz.App. 1986); Weedo v. Stone-E-Brick, 405 A.2d 788 (N.J. 1979) (holding breach of express and implied warranties are contract actions); Yegge v. Integrity Mut. Ins. Co., 534 N.W.2d 100 (Iowa 1995) (holding that the claims against the builder did not allege an "occurrence" under liability policy since breach of contract, breach of express warranty, breach of implied warranty and fraud claims did not involve accidental conduct and were economic damages).

The Court finds there is no "occurrence" alleged in the *Lennar* complaint for which Residential is responsible.  Furthermore, the allegations of breach of contract, breach of express warranty, and breach of implied warranty in *Lennar, Maronda Homes I* and *Maronda Homes II* against Residential are not occurrences under the policies.  Therefore, summary judgment is proper in this matter.

### D.    Contractual Liability Exclusion

The *Lennar* complaint alleges negligence on the part of various parties (Taishan, BNBM, etc.) but does not allege negligence on the part of Residential.  The only claims against Residential are for "Breach of Contract" (Count XLVIII), "Breach of Express Warranty" (Count XLIX), and "Breach of Implied Warranty" (Count L).  Obviously, the allegations of Count XLVIII are excluded

by the Contractual Liability Exclusion in the policies.   The allegation of breach of contract in *Maronda Homes I* and *Maronda Homes II* are also excluded by the Contractual Liability Exclusion.

In looking at the claims for breach of express and implied warranty, there appears to be no published Florida appellate court decision on whether or not those claims are also excluded by the Contractual Liability Exclusion.   FCCI has pointed to a similar Florida Trial Court decision involving the same FCCI policy form and the same underlying *Lennar* complaint.   In <u>FCCI Commercial Ins. Co. v. Ocean Construction, Inc.</u>, Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Case Number 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, that was identical to the issue in this case and found that summary judgment was appropriate based, among other reasons, upon the Contractual Liability Exclusion.

In looking at the cases from other jurisdictions, the majority of cases find that allegations of breach of warranty (express and implied) fall within the Contract Liability Exclusion.   The following cases provide examples:

<u>Cincinnati Ins. Co. v. Transport Graphics, Inc.</u>, Slip Copy, 2011 WL 2083960 (W.D.Mo., 2011) finds that "breach of contract and warranties are contractual in nature" and excluded.

<u>Hess v. Appleton Mfg. Co.</u>, 148 S.W. 179, 180 (Mo .Ct.App.1912) finds that "an action for a breach of warranty is founded on contract."

<u>Assurance Co. of Am. v. Admiral Ins. Co.</u>, Slip Copy, 2011 WL 1897589 (S.D.Ala., 2011) states that "Implied warranties are terms that are implied by law in a contract and would not exist apart from that contract. . . . The implied warranty at issue here would not exist were it not for the construction contract between Byrd Homes and Welch. . . . Coverage for count two is therefore also excluded by operation of the contractual liability exclusion of the Scottsdale policy."

<u>American Nat. Prop. & Cas. Co. v. Blocker</u>, 165 F.Supp.2d 1288 (S.D.Ala., 2001) states that "any alleged liability for the breach of warranties claim necessarily depends upon the existence of the underlying contract."

<u>Ewing Constr. Co., Inc. v. Amerisure Ins. Co.</u>, Slip Copy, 2011 WL 1627047 (S.D.Tex., 2011) finding that breach of warranty is excluded by the contractual liability exclusion.

Global Gear & Mach. Co., Inc. v. Capitol Indem. Co., Slip Copy, 2010 WL 3341464, (W.D.Ky., 2010) holds that "a breach of an express or implied warranty flowing from the contract" is not covered. "The Capitol insurance policy does not apply to 'property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.' Thus, Capitol does not owe a defense or indemnification with respect to Count I, Breach of Contracts, Count II, Breach of Express Warranties, or Count III, Breach of Implied Warranties."

Nationwide Mut. Ins. Co. v. CPB Int'l., Inc., 562 F.3d 591 (C.A.3, 2009) holding that "Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims" because of the contractual liability exclusion.

The Court finds these cases and Judge Gerald's opinion persuasive particularly in a case such as this one where there is absolutely no allegation that Residential was in any way negligent. The only allegations in *Lennar* against Residential arise solely out of breach of contract, breach of implied warranty and breach of express warranty.

**E.      Pollution Exclusion**

The Total Pollution Exclusion contained in the General Liability policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  (CG 21 49 09 99; UMB 066 0299)  Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

The claims in the underlying action arise solely from damage or injury resulting from the release of sulfide and other noxious gases.  This is clearly excluded from coverage by the Total Pollution Endorsements.  The underlying plaintiffs have also sought relief in the form of a demand

that Residential monitor, remove, contain, treat, or respond to the Pollutants. This specific request is also precluded by the Total Pollution Exclusions.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in Residential's policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total

Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary.  See, e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators, Inc. v. Tampa Hous. Auth., 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law); see also Gen. Fid. Ins. Co. v. Foster, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing Deni).  In a recent ruling in Foster, the United States District for the Southern District of Florida, entered an Order granting General Fidelity Insurance Company's Motion for Summary Judgment on a claim alleging damages from allegedly defective Chinese Drywall applying Florida law to a total pollution exclusion.  Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion.  The underlying action alleges that the sulfide gases were emitted from defective drywall resulting damage to the property.  The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions.  See Auto Owners Ins. Co. v. City of Tampa Hous. Auth., 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); West Am. Ins. Co. v. Band & Desenberg, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system

transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant—'irritant' and 'contaminant'—are not defined, the drafter of a policy need not define each word in the policy ad infinitum . . . ")). In assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

Recently, in <u>Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc.</u>, 595 F. Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises. <u>Id.</u> at 1320. The court, citing <u>Deni</u>, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined. <u>Id.</u> at 1323-24. In determining whether something was an "irritant or contaminant" within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.'" <u>Id.</u> at 1324 (quoting <u>Nova</u>, 424 F. Supp. 2d at 1325). Likewise, the United States District for the Southern District of Florida has recently ruled in applying Florida law that the damages allegedly caused by defective Chinese drywall are excluded by a total pollution exclusion. <u>See</u> <u>Foster</u>, No. 09-80743-CIV at *10 (S.D. Fla., March 24, 2011) (unpublished Order Granting Summary Judgment, D.E. 102) (citing <u>Deni</u>).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are ambiguous. As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying actions, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the pollution exclusions in Residential's policies. Without the presence of these gases, no irritation or contamination would have occurred. Because the underlying actions plainly alleged that the sulfide and other noxious gases emitted from the

- 19 -

drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. Gen. Fid. Ins. Co. v. Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. decided March 24, 2011) and Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010). The Gen. Fid. Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowner's policy. Although neither case is binding upon this Court, this Court does find both persuasive. In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to several similar Florida State Trial Court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. In FCCI Commercial Ins. Co. v. AL Bros., Inc., Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number: 10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case. Also, in the same court, in FCCI Commercial Ins. Co. v. Ocean Constr., Inc., Case Number: 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here. Judge Becky A. Titus also analyzed claims against an installer, MDW, analogous to the issues here, in FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Case Number 10-CA-007389. Lastly, in FCCI Commercial Ins. Co. v. S.D. & Associates., Inc., in the Circuit court of the Seventeenth Judicial

circuit in and for Broward County, Case Number: 10-29152-18, Judge Michele Towbin-Singer analyzed the same exact claims against another installer, S.D. & Associates, Inc.

The FCCI policies were identical in those cases and in this case. Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken) Judge Gerald's Order dated June 6, 2011 (from which no appeal was taken), Judge Titus' Order dated July 6, 2011, and Judge Towbin-Singer's Order dated July 20, 2011, and even though they are not binding upon this Court, this Court finds these Orders to be persuasive and has adopted some of their language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions. FCCI has no duty to defend or indemnify Residential Drywall, Inc. Accordingly, summary judgment is warranted.

## IV.   Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**. The Court hereby enters a final judgment in favor of FCCI and against Residential as follows:

1.   FCCI does not owe a duty to defend or indemnify Residential in the underlying actions (*Payton, Lennar, Wiltz, Maronda Homes I, Benes, Maronda Homes II*) or any similar case alleging bodily injury or property damage caused in whole or in part from the installation of allegedly defective Chinese drywall.

2.   There is no covered "occurrence" alleged in the complaints against the Defendant.

3.   Any damages alleged in the underlying actions are precluded from coverage by the unambiguous language of the Total Pollution Exclusions.

4.   FCCI does not owe a duty to defend or indemnify Residential in the *Payton, Lennar, Wiltz, Maronda Homes I, Benes, Maronda Homes II* suits or any other complaint

alleging breach of contract, breach of implied warranty, or breach of express warranty.

5.    There is no coverage available to Residential under any of the FCCI policies.


**IT IS SO ORDERED**

This ___ day of _____, 2011          ORIGINAL SIGNED

SEP 0 7 2011

_____
Judge Richard A. Nielsen          RICHARD A. NIELSEN
Thirteenth Judicial Circuit          CIRCUIT COURT JUDGE
Hillsborough County

- 22 -