UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL        MDL DOCKET: 2047
      PRODUCTS LIABILITY LITIGATION

SECTION:  L

JUDGE FALLON
MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

*The Mitchell Co., Inc. v. Knauf Gips KG, et al.*,
Case No. 09-4115
_____/

### AFFIDAVIT OF HILARIE BASS IN SUPPORT OF CERTAIN FLORIDA HOMEBUILDERS' *AMICUS CURIAE* RESPONSE TO TAISHAN GYPSUM CO. LTD.'S  RENEWED MOTION PURSUANT TO RULES 55(C) AND 12(B)(2) TO VACATE THE ENTRY OF DEFAULT AND DISMISS THIS ACTION

STATE OF FLORIDA              )
                                        )
COUNTY OF MIAMI-DADE     )

BEFORE ME, the undersigned authority, personally came and appeared HILARIE BASS who, after being duly sworn, stated that:

1.    I am an attorney admitted to practice before the bar of the Supreme Court of the United States, the United States Courts of Appeals for the Eleventh Circuit, the United States District Court for the Southern District of Florida, the United States District Court for the Middle District of Florida, and the State of Florida.

2.    I make this affidavit in my capacity as counsel for certain Florida homebuilders ("Homebuilders") that are parties to this MDL 2047.  The purpose of this affidavit is to provide the Court with additional information regarding Taishan Gypsum Co., Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd ("TTP") (collectively, "Taishan").  The information herein is referenced in Certain Florida Homebuilders' *Amicus*

1

*Curiae* Response to Taishan Gypsum Co. Ltd.'s Renewed Motion Pursuant to Rules 55(C) and 12(B)(2) to Vacate the Entry of Default and Dismiss this Action (the "Homebuilder Response"), which is being filed concurrently herewith. For the convenience of the Court, and to avoid the introduction of duplicate exhibits, the Homebuilders have, where possible, made reference in the Homebuilder Response to the exhibits from the Affidavit of Russ Herman (Rec Doc. No. 14215-3) that was filed with the Plaintiffs' Steering Committee's ("PSC") Global Statement of Facts in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in Germano and Mitchell and (2) Taishan's Motions to Dismiss the Complaints in *Gross* and *Wiltz* (Rec. Doc. No. 14215-2).

3.  The United States Consumer Product Safety Commission issued a Status Update Report from on its Investigation of Imported Drywall, dated October 2009, which describes the developments to that date in its ongoing investigation of these issues. This report is available at http://www.cpsc.gov/info/drywall/oct2009status.pdf. A true and correct copy of a printout of this report is attached hereto as **Exhibit 1**.

4.  As counsel for Lennar Homes, LLC and U.S. Home Corporation (collectively, "Lennar"), I filed an action in the Eleventh Judicial Circuit of Florida on January 30, 2009, against TG and others, related to defective Chinese-manufactured drywall that was installed in certain Lennar homes in Florida. A true and correct copy of the Complaint in that case, which is captioned *Lennar Homes, et al. v. Knauf Gips KG, et al.*, Case No. 09-07901 (11th Jud. Cir., Miami-Dade County, Fla. Jan. 30, 2009) (the "Lennar Action"), is attached hereto as **Exhibit 2**.

5.  After filing an Amended Complaint in the Lennar Action and after completing the costly and time-consuming process of translating the Amended Complaint and submitting it to the Central Authority in China for service pursuant to the Convention on the Service Abroad of

Judicial and Extrajudicial Documents in Civil or Commercial Matters, Lennar obtained service on TG on August 3, 2009. A true and correct copy of the Certificate of Service on TG in the Lennar Action is attached hereto as **Exhibit 3**.

6. On February 8, 2010, Lennar filed a Motion for Default against TG in the Lennar Action. A true and correct copy of that motion is attached hereto as **Exhibit 4**.

7. On February 18, 2010, Judge Joseph P. Farina of the Eleventh Judicial Circuit entered a Default Against Defendant TG in the Lennar Action. A true and correct copy of that default is attached hereto as **Exhibit 5**.

8. On September 30, 2010, TG appeared in the Lennar Action--exactly twenty months after Lennar filed the Lennar Action, and more than six months after a default had been entered against TG--and filed a Motion to Vacate the Entry of Default. A true and correct copy of TG's motion is attached hereto as **Exhibit 6**. TG's Motion to Vacate the Entry of Default in the Lennar Action remains pending.

9. As Lead Counsel for the Homebuilders' Steering Committee, and as counsel for certain homebuilders, I travelled to Hong Kong on two occasions for the depositions of Taishan's corporate representatives. Following those depositions, Taishan's counsel filed extensive errata sheets, purporting to "correct" portions of the transcripts from the depositions. Counsel for Taishan ultimately agreed to reduce these "erratas" significantly after discussions with the Court and the PSC. On May 17, 2012, counsel for Taishan sent a letter, on which I was copied, to Herman Herman Katz & Cotlar, LLP, enclosing revised errata sheets. A true and correct copy of this letter is attached hereto as **Exhibit 7**.

10. The Taishan website is located on the Internet at http://www.taihegroup.com. A true and correct copy of the printout of this website, from May 18, 2012, is attached hereto as **Exhibit 8**.

11. On May 25, 2010, the United States Consumer Product Safety Commission issued a release (Release #10-243: CPSC Identifies Manufacturers of Problem Drywall Made in China), identifying several manufacturers of defective Chinese-manufactured Drywall. This release is available on the Internet at at http://www.cpsc.gov/cpscpub/prerel/prhtml10/10243.html. A true and correct copy of a printout of this website is attached hereto as **Exhibit 9**.

12. The U.S. Geological Survey, a division of the U.S. Department of the Interior, issued a Mineral Commodity Summary in January 2011, disclosing that more than 218,000 metric tons of Chinese-manufactured drywall were imported into the U.S in 2006. By comparison, only 300 metric tons of Chinese-manufactured drywall were imported into the U.S. in 2010. The 2010 volume represents less than 1% of total 2010 gypsum imports, or 0.14% of the amount of Chinese-manufactured drywall imported in 2006. This summary is available on the Internet at http://minerals.usgs.gov/minerals/pubs/commodity/gypsum/mcs-2011-gypsu.pdf. A true and correct copy of a printout of this summary is attached hereto as **Exhibit 10**.

13. The Company Overview page for the website of Alibaba, an online marketplace that connects buyers and sellers of Chinese goods through a network of "more than 79.7 million registered users in more than 240 countries and regions," is located on the Internet at http://news.alibaba.com/specials/aboutalibaba/aligroup/index.html. A true and correct copy of a printout of this webpage, from May 18, 2012, is attached hereto as **Exhibit 11**.

14. The English language version of the "Standard gypsum board" page on the Taishan website, which indicates the range of available sizes for Taishan's "standard gypsum

board" in millimeters and that "[w]e can produce by both Metric and Imperial systems," is located on the Internet at http://www.taihegroup.com/english/contents/77/15.html. A true and correct copy of a printout of this webpage, from May 18, 2012, is attached hereto as **Exhibit 12**.

15. Taishan advertised in their marketing materials that Taishan drywall "is in accordance with ISO9001 standard ISO14001 standard and ASTM standard." A true and correct copy of a marketing brochure that Taishan produced in this litigation (TG0024193-TG0024198) is attached hereto as **Exhibit 13**.

16. In 2006, TG entered into multiple contracts with a company by the name of Beijing Building Materials Import & Export Co., Ltd. ("BBMIEC") to sell Taishan drywall that was manufactured to U.S. dimensions. Records produced by Taishan, as well as records produced by La Suprema Enterprise, Inc. and La Suprema Trading, Inc. ("La Suprema"), confirm that this drywall was delivered to, among others, Banner Supply Company ("Banner") and its affiliates in various locations throughout the State of Florida. This documentation clearly establishes the following stream of commerce: (i) Taishan sold its drywall to BBMIEC; (ii) BBMIEC in turn provided the drywall to Rothchilt International, Ltd. ("Rothchilt") for overseas shipping; (iii) Rothchilt shipped the drywall to La Suprema for import into Miami, Florida; and, finally, (iv) La Suprema sold the drywall to Banner, which delivered the drywall to homes across the State of Florida. As an example of this supply chain, I have assembled from the Taishan and La Suprema productions a Composite Exhibit of Shipping Documents and Invoices Related to the Indirect Sale of Taishan Drywall to Florida ("Florida Shipping Documents"). A true and correct copy of these Florida Shipping Documents are attached hereto as **Exhibit 14**. Included within this Composite Exhibit are the following:

a) A Purchase and Sale Contract ("TG Contract") between Taishan and BBMIEC, dated Mar. 31, 2006 (TG0001493 and translation that was provided by counsel for Taishan), which is attached as **Exhibit 14A**. Included on this document, as produced by Taishan, is a handwritten reference to B/L 556650013, which is a shipping company's bill of lading number.

b) A "Revised Arrival Notice" from Maersk Logistics (SUP EN 0001844 - SUP EN 0001845), which is attached as **Exhibit 14B**. This document indicates an "Origin" for the shipment of Qingdao, China, and a final destination of Miami, Florida. The document also references the same bill of lading number from the TG Contract of 556650013, with a corresponding reference to the freight forwarder, DSL Star Express's, bill of lading number of DSLSTST0197273.

c) An "Invoice" from Maersk Custom Services, Inc. to La Suprema (SUP EN 0001836), which is attached as **Exhibit 14C**. The Invoice also references the bill of lading number of 556650013.

d) A Combined Transport Bill of Lading ("Bill of Lading") from DSL Star Express (SUP EN 0001842 - Sup EN 0001843), which is attached as **Exhibit 14D**. The Bill of Lading indicates a "Place of Receipt" of Qingdao, China, and a "Place of Delivery" of Miami, Florida. The Bill of Lading also references the specific container numbers for the cargo on that voyage, including CLHU8636623, GESU4894896, POCU7023735, PONU7484197, PONU7521177 and PONU7534343.

  e) A "Commerical Invoice" from Rothchilt to La Suprema (SUP EN 0003020), which is attached as **Exhibit 14E**, and a "Packing / Weight List" from Rothchilt to La Suprema (SUP EN 0001841), which is attached as **Exhibit 14F**. These documents both reference the same container numbers that are included on the Bill of Lading.

  f) An Invoice from La Suprema to Banner for delivery in Fort Myers, Florida (SUP TR 0004684) ("Banner Invoice"), which is attached as **Exhibit 14G**. The Banner Invoice also references the same container numbers that are included on the Bill of Lading, the Commercial Invoice, and the Packing / Weight List.

  g) An Invoice from La Suprema to Banner for delivery in Tampa, Florida (SUP TR 003378), which is attached as **Exhibit 14H**, and an Invoice from La Suprema to Allsteel for delivery in Fort Lauderdale, Florida (SUP EN 0003252), which is attached as **Exhibit 14I**. These invoices reference other container numbers that also appear on the Bill of Lading, the Commercial Invoice, and the Packing / Weight List.

17. On October 19, 2009, a deposition was taken of Solomon Abadi, the representative for La Suprema. During that deposition, the documents produced by La Suprema were authenticated as business records of La Suprema. A true and correct copy of this deposition transcript is attached hereto as **Exhibit 15**.

18. Taishan employees communicated by email with individuals from BBMIEC and with Rothchilt. Included in the documents that Taishan produced in this litigation are email communications between individuals from Rothchilt and Apollo Yang, who was a TTP

employee in 2006. I assembled a Composite Exhibit of Email Communications between Rothchilt and Apollo Yang (TG0001739, TG0001740, TG0001749, TG0001750, TG0025045, TG0025070, TG0025106, TG0025116), a copy of which is attached as **Exhibit 16**. Also Included in the documents that Taishan produced in this litigation are email communications between individuals from Rothchilt, BBMIEC, and Taishan (TG0001741 and TG0025079), a copy of which is attached as **Exhibit 17**.

19. The statements herein are true and correct, and are made of my own personal knowledge, information and belief, and volition.

FURTHER AFFIANT SAYETH NOT.

_____
HILARIE BASS

Subscribed and sworn to before me, a notary public, this 18th day of May, 2012, by Hilarie Bass, who is personally known to me.

NOTARY SEAL

Notary: _____
Print Name: Pamela Boylan
Notary Public, State of Florida_____
My commission expires: _____

PAMELA BOYLAN
Notary Public - State of Florida
My Comm. Expires Dec 28, 2014
Commission # EE 51914