# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES AND | JUDGE FALLON MAG. JUDGE WILKINSON |
| *Payton, et al. v. Knauf Gips, KG, et al.* Case No. 09-cv-07628 (E.D. La.) | |
| *Gross, et al. v. Knauf Gips, KG, et al.* Case No. 2:09-cv-06690 (E.D. La.) | |
| *Rogers, et al. v. Knauf Gips, KG, et al.* Case No. 2:10-cv-00362 (E.D. La.) | |
| *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D.La.) | |
| *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 2:11-00252 (E.D. La.) | |
| *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-1363 (E.D. La.) | |
| *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-2349 (E.D. La.) | |
| *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-3023 (E.D. La.) | |
| *Vickers, et al. v. Knauf Gips, KG, et al.* Case No. 2:09-cv-04117 (E.D. La.) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER: (1) PRELIMINARILY APPROVING THE SETTLEMENT AGREEMENT IN MDL NO. 2047 REGARDING CLAIMS INVOLVING BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS; (2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS; (3) APPROVING THE FORM NOTICE TO CLASS MEMBERS; (4) SCHEDULING A JOINT FAIRNESS HEARING; AND (5) STAYING CLAIMS AGAINST BUILDERS, INSTALLERS, SUPPLIERS, <u>AND PARTICIPATING INSURERS</u>

This Memorandum of Law is submitted by proposed Class Counsel and the Court-appointed Plaintiffs' Steering Committee ("PSC") in support of their Motion for preliminary approval of the Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers (hereafter the "Global Settlement" or the "Global Agreement")[1] and conditionally certifying a Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e).  Class Counsel and the PSC seek entry of a Preliminary Approval Order[2] finding preliminarily that:  (1) the Global Settlement is fair, reasonable and adequate; (2) the requirements for conditionally certifying the Settlement Class under Rule 23(a) and Rule 23(b)(3) have been met; and (3) Class Members shall be notified of the terms of the Global Settlement and of their rights in connection therewith.

In addition, Class Counsel and the PSC respectfully request that the Court:  (1) approve the form of Class notice;[3] (2) schedule a joint fairness hearing to determine whether the Global Settlement should be given final approval ("Joint Fairness Hearing"); (3) establish dates for the dissemination of the Class notice, opt-outs, withdrawals and objections to the Settlement and other relevant deadlines; and (4) stay all claims against Participating Defendants and

---

[1]  The Global Settlement is attached hereto as Exhibit "A."  The Settling Parties are still in the process of executing the Global Settlement.  Class Counsel will provide the Court with a copy of the fully executed Global Settlement as soon as all Settling Parties have signed the agreement.  Capitalized terms used in this Memorandum of Law have the same meaning as the same terms used in the Global Settlement.  The Participating Defendants are identified in Exhibit 1 to the Global Settlement.  The Participating Insurers are identified in Exhibit 2 to the Global Settlement.

[2]  The "Preliminary Approval Order" is attached hereto as Exhibit "B."

[3]  The Settling Parties are in the process of finalizing the proposed form of notice to Class Members.  Class Counsel and the PSC will supplement this motion with the proposed form of notice in advance of the preliminary approval hearing currently scheduled for May 31, 2012.

Participating Insurers.

## I.  <u>INTRODUCTION</u>

The Global Settlement is the byproduct of more than a year of negotiations and is designed to compensate all persons and entities for claims arising from or related to Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold, delivered or in any way alleged to be within the legal responsibility of the Participating Defendants.[4]  The Global Settlement will provide to Class Members eighty million dollars ($80,000,000.00), subject to $9,430,000.00 in credits described within the Global Settlement,[5] for a total payment of $70,570,000.00 that is to be allocated in accordance with a procedure to be established by the Court upon reviewing the recommendations of an Allocation Committee.[6]

The Global Settlement is designed to compensate Class Members irrespective of the brand of Chinese Drywall that is installed in their Affected Properties.  Pursuant to the Global Settlement, Class Members will receive compensation regardless of whether they filed their claims in this Court or in another forum.  Class Members may receive compensation even if they have failed to perfect their claims by filing a complaint against the Participating Defendants and Participating Insurers in any forum.

The Global Settlement represents an opportunity to resolve many of the claims against the Participating Defendants and the Participating Insurers.  There are approximately 580

---

[4]  *See* Insurance Agreement, Section 1.1.1.

[5]  These credits are designed to accommodate the Participating Defendants and Participating Insurers for prior settlements involving Chinese Drywall claims.

[6]  *Id.*, Sections 4.1, 4.2, and 16.1.

3

Participating Defendants and approximately 80 Participating Insurers who are participating in the Global Settlement. This broad participation should bring this MDL litigation one step closer to a final resolution.

Indeed, the Global Settlement is part of a larger series of class settlements that are designed to resolve a huge segment of the Chinese Drywall claims that are currently pending before the Court – most notably, the settlement with the Knauf defendants and the settlements with the largest distributors of defective Chinese Drywall in the states of Florida and Louisiana. Each of these settlements is part of the global effort to resolve the claims that are the subject matter of the proceedings in MDL No. 2047. The instant Global Settlement is specifically designed to operate in conjunction with the Knauf class settlement agreement.

On January 10, 2012, this Court granted preliminary approval to the class action Settlement Agreement Regarding Claims Against the Knauf Defendants[7] in MDL No. 2047 (the "Knauf Class Settlement").[8] The Knauf Class Settlement is intended to resolve all claims made by Residential Owners, Commercial Owners and Tenants in filed actions, which arise out of KPT Chinese Drywall installed in properties in the United States.[9] The Court provisionally certified a

---

[7] The "Knauf Defendants" are defined to mean all Knauf entities, including Knauf Gips KG, Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., Gebrueder Knauf Verwaltungsgesellschaft, KG, and P.T. Knauf Gypsum Indonesia. *See* Knauf Class Settlement, Section 1.1.1 (Rec. Doc. No. 12080-2); Global Agreement, Section 1.8.

[8] Knauf Preliminary Approval Order (Rec. Doc. No. 12138).

[9] The Knauf Class Settlement benefits may include: complete remediation of the Affected Property; reimbursement for alternative living expenses, personal property damage, maintenance costs, including utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses during remediation; recovery of economic losses from foreclosures and short sales caused by

(continued...)

Knauf Settlement Class consisting of: "All persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (*i.e.*, not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit." Preliminary Approval Order at 25.[10]  In order to provide Knauf Class Members with an opportunity to evaluate the Knauf Class Settlement, participate therein, object thereto or opt out altogether,[11] the Court ordered that the Knauf Class Settlement be posted on the Court's MDL 2047 website,[12] that individual notice be mailed to Knauf Class Members and their counsel, that Knauf Class Members be afforded an opt-out/objection period, and that a final fairness hearing take place on June 20-21, 2012. *Id*. at 26-28.[13]

The culmination of the Knauf Class Settlement was a major achievement in a series of interrelated settlements designed to achieve complete resolution of this Litigation affecting

---

[9](...continued)
KPT Chinese Drywall; and compensation for bodily injury caused by KPT Chinese Drywall. *See* Knauf Class Settlement, Sections 4.3 & 4.7.

[10] Knauf Class Settlement, Section 1.25.  Under the Knauf Class Settlement, "KPT Chinese Drywall" is defined to include "any and all drywall products manufactured, sold, marketed, distributed, and/or supplied by KPT and which are alleged to be defective." *Id*.  Drywall products that are "manufactured, sold, marketed, distributed, and/or supplied by any Knauf Defendant other than KPT" are excluded from the definition of KPT Chinese Drywall. *Id*.

[11] Class Members who opt out of the Global Settlement, may continue to pursue their claims against Participating Defendants and Participating Insurers.  Global Agreement, Sections 3.1, 12.1, and 12.2.1.

[12] *See* http://www.laed.uscourts.gov/drywall/Settlements/12-21-11.kpt.global.settlement.pdf.

[13] Pursuant to this Court's order dated May 7, 2012, the Court has adjourned the fairness hearing on the Knauf Settlement Agreement. *See* Rec. Doc. No. 14197.  The Court has likewise adjourned the fairness hearings scheduled on the other related settlement agreements discussed herein until the Court can schedule a joint fairness hearing.

thousands of Owners of Affected Property in the Knauf/KPT supply chain. Earlier, in October, 2010, the Court approved the "KPT Pilot Program" entered into with the Knauf Defendants for the remediation of KPT Properties.[14] On May 13, 2011, a class settlement with Supplier-Defendant Interior/Exterior ("InEx") was preliminarily approved by the Court.[15] Then, on August 11, 2011, another class settlement with Supplier-Defendant Banner Supply Co. ("Banner") was preliminarily approved by the Court.[16] Notice of the InEx and Banner class settlements was disseminated, and they await final approval by the Court. Stays of litigation against Banner and InEx are in place pending the fairness hearings on those settlements.[17] In addition to the KPT Pilot Program, and the InEx, Banner and Knauf Class Settlements, another class settlement with Supplier-Defendant L&W Supply Corporation ("L&W") was preliminarily approved by the Court on April 26, 2012.[18] All of these settlements are interrelated to the extent they involve KPT Chinese Drywall claims.[19]

An important piece of the effort to resolve claims involving Knauf Chinese Drywall was finalization of the Global Settlement. The instant Global Settlement is an important component towards final resolution of the Knauf/KPT supply chain in this Litigation, since a portion of the

---

[14]  *See* Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall, published on the Court's MDL 2047 website at: http://www.laed.uscourts.gov/drywall/DemonstrationRemediationAgreement.pdf.

[15]  Rec. Doc. No. 8818.

[16]  Rec. Doc. No. 10064.

[17]  Rec. Doc. Nos. 8818, 10064; *see also In re Chinese-Manufactured Drywall Litig.*, 2011 WL 2313866 at *1 (E.D. La. Jun. 9, 2011).

[18]  Rec. Doc. No. 14033.

[19]  Rec. Doc. No. 13431.

settlement funds from the Global Settlement will be distributed to Class Members participating

in the Knauf Class Settlement.  The Global Settlement will also benefit Class Members who have

non-Knauf drywall and, thus, are not eligible to participate in the Knauf Class Settlement.  The

Global Settlement will benefit a nationwide Class consisting of:

> All persons or entities, along with their heirs, representatives,
> attorneys, executors, administrators, executives, subsequent
> purchasers, residents, guests, tenants, lenders, successors and
> assigns, with claims, known or unknown, arising from or related to
> actual or alleged Chinese Drywall purchased, imported, supplied,
> distributed, marketed, installed, used, sold or in any way alleged to
> be within the legal responsibility of any Participating Defendant.
> A Participating Defendant shall also be a Class Member to the
> extent the Participating Defendant has remediated the Chinese
> Drywall in one or more Affected Properties or repurchased an
> Affected Property.  Participating Insurers are not Class Members.
> Class Members do not include persons or entities with claims
> involving an Affected Property in the Commonwealth of Virginia.

*See* Global Agreement at Section 1.1.1.

Expressly excluded from the class are claims involving affected property in the

Commonwealth of Virginia, and claims against performance and payment surety bonds,

including the performance and payment surety bond at issue in *Hobbie, et al. v. RCR Holdings,*

*II, LLC, et al.*, No. 10-1113 (E.D. La.).[20]  In addition, all prior settlements entered into by any of

the Parties are recognized and are not to be impacted by the Global Settlement.[21]

During the negotiation of the Knauf Class Settlement, the PSC contemplated that it might

resolve the claims against the Participating Defendants and their Participating Insurers.  For this

reason, the Knauf Class Settlement contemplated a Prospective Insurance Agreement, which is

---

[20]  *Id.*, at Sections 1.1.1 and 5.6.7.

[21]  *Id.*, Section 17.9.

the instant Global Settlement.  Within the Global Settlement, the allocation process will be in

accordance with a procedure to be established by the Court after reviewing a recommendation

from an Allocation Committee.[22]  Pursuant to the Knauf Class Settlement, any funds from this

Global Settlement that are allocated to KPT claims are to be deposited 50% into the Remediation

Fund and 50% into the Other Loss Fund.[23]

    In exchange for making the Cash Payments under the terms of the Global Settlement,

Participating Defendants and Participating Insurers will receive a full release from Class

Members (the Participating Insurers are being released "to the extent of a Participating Insurers'

obligations relating to any policies alleged to provide insurance coverage to any Participating

Defendant..."),[24] and Participating Class Members will receive all of the benefits that Class

Members may be entitled to under the Global Settlement.  The Global Settlement expressly

reserves Class Members' claims against Non-Participating Defendants.[25]

    The Global Settlement provides that the PSC, Class Counsel, common benefit attorneys,

and privately retained attorneys are entitled to petition the Court for attorneys' fees, including

---

[22]  *Id.*, Section 16.1

[23]  Knauf Class Settlement, Section 4.2.3.  As noted above, the Knauf Class Settlement establishes two funds – a "Remediation Fund" and an "Other Loss Fund" for the benefit of the settlement class.  The Remediation Fund is available to an Owner Subclass and is designed to fund remediation of Affected Properties and/or to compensate members of the Owner Subclass for remediation expenses.  *Id.*, Section 4.2.  The Other Loss Fund is available to all Class Members and is designed to compensate such Class Members for pre-remediation alternative living expenses; for lost use, sales and rentals; for foreclosures; for short sales; for Tenant Losses; and for bodily injury.  *Id.*, Section 4.7.

[24]  Global Agreement, Section 5.2.1.

[25]  *Id.*, Sections 5.1 and 5.6.1.  The Global Settlement also provides that it does not "release any rights, claims or causes of action whatsoever that a Class Member may have against any performance and payment surety bond, including the surety bond in *Hobbie, et al. v. RCR Holdings, II, LLC, et al.*, No. 10-1113 (E.D. La.)."  *Id.*, Section 5.6.7.

common benefit fees, up to 32% of the Settlement Funds, with no more than 15% of the
Settlement Funds reserved for common benefit fees, and reimbursement of reasonable expenses,
excluding the cost of notice.[26]  The Global Settlement also provides that all fees and costs of the
Mediator, and costs of administering the Settlement Funds and notice costs are to be paid from
the Settlement Funds.[27]  The Settling Parties have agreed that the Participating Defendants and
Participating Insurers are not liable for fees, costs, and expenses incurred by the PSC, Class
Counsel, plaintiffs' counsel, privately retained counsel or common benefit counsel,[28] or the
Mediator's fees and costs.[29]

The Global Settlement provides that individual notice of the Global Settlement shall be
sent by first-class mail to Class Members with claims in CDW-Related Actions and who are
identifiable through Plaintiff Profile Forms and other available records, and their counsel.[30]  The
Global Settlement further provides for extensive additional notice to be published in newspapers
and periodicals, in a press release, on TV, in on-line media, on federal and state court websites,
on other publicly available websites (*i.e.,* the Court's Chinese Drywall MDL website), and by
requesting that the notice be posted at various public places.[31]  In this manner, each Class

---

[26]  *Id*., Section 16.6.

[27]  *Id*., Sections 4.1.1 and 16.4.

[28]  *Id*., Section 16.5.

[29]  *Id*.

[30]  *Id*., Sections 7.1.1.1 and 7.1.1.2.

[31]  *Id.*, Sections 7.1.1.3 through 7.1.1.13.

Member and his or her counsel will receive proper notice of the Global Settlement.[32]

The PSC and proposed Class Counsel believe that the Global Settlement before this Court is in the best interests of Class Members in view of a variety of factors, including the estimated damages suffered by Class Members, as well as both the complexity of and risks attendant to Plaintiffs' demonstration that those damages were causally linked to Participating Defendants' alleged wrongdoing, the appointment of any fault to the Participating Defendants and the delays inherent in litigating thousands of individual claims against Participating Defendants and the Participating Insurers. Additionally, the Global Settlement is in the best interest of Class Members since there is substantial uncertainty regarding Class Members' entitlement to recover from the Participating Insurers based on various coverage issues that have been decided by various federal and state courts in favor of insurers. The Global Settlement was negotiated at arm's-length over a period of many months, with oversight by the Court.

The PSC and proposed Class Counsel accordingly respectfully submit that the Global Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Fifth Circuit. Moreover, certification of the proposed Class is appropriate pursuant to FED. R. CIV. P. 23, and the proposed manner of notice to Class Members satisfies the requirements of due process. As set forth below, all prerequisites for preliminary approval of the Global Settlement and conditional certification of the proposed Class have been

---

[32] Because the Global Settlement is designed to resolve thousands of the claims against the Participating Defendants and the Participating Insurers arising throughout the United States, the Settling Parties have agreed to engage in an expansive notice program through the use of the various forms of media identified above. This notice program is designed to afford the Participating Defendants and Participating Insurers the broadest possible res judicata effect and is necessitated, in part, because some Class Members have not yet instituted litigation in any forum and while Class Members are concentrated in Gulf Coast states Class Members may be located in other jurisdictions.

met, and Class Counsel and the PSC respectfully submit that the Motion for Preliminary

Approval should be granted.

## II.    **BACKGROUND**

### A.    **The Chinese Drywall Litigation**

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical

shortage of drywall for the reconstruction of homes and other structures damaged by the storms.

Beginning in the fall of 2005, hundreds of millions of square feet of Chinese Drywall were

exported to the United States, sold to distributors and suppliers, resold to builders and installers,

and installed in thousands of properties domestically, but primarily in Florida, Louisiana,

Alabama, Mississippi, Texas and Virginia.[33]

Governmental agencies found Chinese Drywall to be defective, allegedly causing

property damage, including damage to electrical wiring, corrosion of pipes, and damage to or

destruction of air-conditioners, refrigerators, HVAC systems, and other appliances.[34]  The

Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the

U.S. Consumer Product Safety Commission ("CPSC"), made various recommendations for the

repair of properties impacted by Chinese Drywall, including the removal of problematic drywall,

fire safety alarm devices, electrical distribution components (including receptacles, switches and

---

[33] The Gypsum Association reports that 320 million square feet of Chinese Drywall were imported from 2005-2007.  *See* Gypsum Association Comments, published at http://www.gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.  Knauf acknowledges in its manufacturer profile form that it exported 5,286,015 square meters (or 56,898,192 square feet) of board to the U.S. between 2005 and 2006.

[34] *In re Chinese Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 706 F. Supp. 2d 655, 664-66 (E.D. La. 2010) (Findings of Fact and Conclusions of Law); *In re Chinese Manufactured Drywall Prods. Liab. Litig.* (*Hernandez*), 2010 WL 1710434, *8-9 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

circuit breakers), gas service piping and fire suppression sprinkler systems.[35]

Further, some individuals have alleged that they suffered bodily injury as a result of exposure to Chinese Drywall.[36]  However, the CPSC and the Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence that exposure to Chinese Drywall causes any ill health effects.

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.[37]  Since the formation of this MDL almost three years ago, thousands of claimants have participated in the PSC's omnibus class action complaints.  The Court has held regular monthly status conferences attended by hundreds of counsel and it has entered 26 separate Pretrial Orders, many with subparts, as well as scores of other orders and minute entries.[38]  To date, more than 14,000 entries have been recorded on the docket in this case.  This Court has worked tirelessly to manage the nationwide litigation of Chinese Drywall claims.  The Court's efforts have included the coordination and oversight of pretrial discovery and motion practice for thousands of individual cases as well as the omnibus class action

---

[35]  *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011, published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

[36]  Order appointing Special Master (Rec. Doc. No. 505) at 1.

[37]  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) (Rec. Doc. No. 1).

[38]  *E.g.*, Minute Entry, Dec. 2, 2010 (Rec. Doc. No. 6525).

complaints filed in the MDL.[39]  In the myriad of lawsuits filed before this Court in this Chinese

Drywall litigation, dozens of motions have been filed by the parties on a variety of issues,

including motions for class certification in *Germano*, *Payton* (Knauf), and *Payton/Vickers, et al.*

*v. Knauf Gips KG, et al*., Case No. 2:09-cv-04117 (E.D. La.), and motions for Florida and/or

Louisiana Homeowners classes for damages and/or declaratory relief,[40] numerous motions to

intervene, motions for default judgment, motions to dismiss for lack of personal jurisdiction,

motions for summary judgment, and a motion to establish a Plaintiffs' litigation expense fund.[41]

     For purposes of coordination, consistency and global treatment of Chinese Drywall

claims, the Court has consulted with numerous state court judges and other federal judges also

overseeing Chinese Drywall litigation, including the Honorable Joseph Farina from the 11th

Judicial Circuit Court of Florida (Dade County) and the Honorable Charles Greene from the 17th

---

[39]  *See, e.g.*, *Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.)
(Omnibus I, I(A), I(B), I(C)); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*,
Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)); *Gross, et al. v. Knauf Gips, KG, et
al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A)); *Rogers, et al. v. Knauf
Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)); *Amato, et al. v.
Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al.
v. AAA Ins., et al.*, Case No. 2:10-cv-03070 (E.D. La.) (Omnibus VI); *Abel, et al. v. Taishan Gypsum Co.,
Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-cv-00080 (E.D. La) (Omnibus VII);
*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.)
(Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case
No. 2:11-cv-01077 (E.D. La.) (Omnibus IX); *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft,
KG, et al.*, Case No. 11-cv-1363 (E.D. La.) (Omnibus X); *Benoit, et al. v. Lafarge S.A., et al.*, Case No.
11-cv-1893 (E.D. La.) (Omnibus XI); *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et
al.*, Case No. 11-cv-2349 (E.D. La.) (Omnibus XII); *Cassidy, et al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-3023 (E.D. La.) (Omnibus XIV).

[40]  Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva, et al. v. Interior Exterior Building Supply, LP,
et al.* Case No. 09-08030 (E.D. La.)), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195
(*Vickers/Payton*), 8197 (*Payton*).

[41]  *See* Minute Entry at 24, Dec. 2, 2010 (Rec. Doc. No. 6525).

Judicial Circuit Court of Florida (Broward County).[42]  In coordination with these jurists, this

MDL Court has strived to achieve finality in the resolution of this litigation.[43]

In order to accomplish its goals, the Court appointed the PSC and a Plaintiffs' Liaison

Counsel ("PLC") to prepare and respond to pleadings and motions, engage in discovery, pretrial

preparation, trial and settlement of cases, manage the MDL docket, establish and administer a

document depository, communicate with individual Plaintiffs and their counsel, liaison with

defendants and attend court status conferences and hearings.[44]  The Court also appointed a

Defendants' Liaison Counsel[45] and a Homebuilders and Installers Liaison Counsel[46] to assist in

these efforts.  In November, 2009, the Court appointed a Special Master "to explore

opportunities for an ultimate resolution of the instant matter as to any and all interested parties,"

recognizing that "some or all parties [we]re interested in exploring a global resolution of the

matter as it affect[ed] them at th[at] stage of the proceeding."[47]  In March, 2010, the Court

appointed State and Federal Coordination Committees "to assist the Court, litigants and judicial

---

[42] *E.g.*, Transcript of Status Conference at 2:17-3:17, Oct. 14, 2010 (comments of J. Fallon praising "the help of state court judges:" "I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward."); Transcript of Status Conference at 7:5-17, Mar. 23, 2011.

[43] Transcript of Status Conference at 7:19-25, Mar. 23, 2011.

[44] *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman); Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs, Arnold Levin).

[45] *See* Pretrial Order No. 4 (appointing Defendants' Liaison Counsel).

[46] *See* Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel).

[47] Order Appointing Special Master (Rec. Doc. No. 505 at 4).

system to facilitate coordination between this MDL and the various state court cases."[48]  And, the Court appointed an Insurer Steering Committee as well as Co-Lead Counsel for the First-Party Insurer Subcommittee.[49]

Through the vehicle of omnibus class action complaints, the Court has assisted the parties in bringing all interested and affected entities into the Chinese Drywall litigation in a consistent, fair and judicious manner.[50]  The omnibus class action complaints and intervention omnibus class action complaints have been filed on behalf of thousands of Plaintiffs suing almost 2,000 defendants, including many of the Participating Defendants and Participating Insurers who are participating in the Global Settlement, the Knauf Defendants and other foreign Chinese Drywall manufacturers, including Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd.[51] ("Taishan"), Beijing New Building Materials, Ltd. ("BNBM") and related entities, China National Building Materials Co., Ltd. and related entities, as well as numerous importers, builders, suppliers and installers of Chinese Drywall, their insurers and other defendants.[52] Absent the omnibus class action complaints, few individual Plaintiffs, if any, would have been able to perfect service of process under the Hague Convention on the foreign manufacturers of

---

[48] *See* Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendants' State/Federal Committee).

[49] *See* Pretrial Order No. 20 (appointing Insurer Steering Committee and Co-Lead Counsel for the First-Party Insurer Subcommittee).

[50] *See* Transcript of Status Conference at 4-5, June 24, 2010 (recognizing that omnibus class action complaints serve as a vehicle to "effectively and efficiently" serve more than 500 defendants and to evaluate the "whole census").

[51] On September 10, 2007, Shandong Taihe Dongxin Co., Ltd., which was a subsidiary company controlled by BNBM, changed its name to Taishan Gypsum Co., Ltd.

[52] *See* fn. 39, *supra*.

the Chinese Drywall installed in their properties.  The costs of translation of the complaints and

service on these foreign defendants exceeds $100,000 for each complaint in the litigation.  These

omnibus pleadings are intended to close the circle of liability by engaging the insurers and the

financiers of the defendants directly in this litigation.  These efforts have aggregated the "mass"

in this mass tort, which is contributing to resolve this litigation on a global basis.

In the spring of 2010, the Court resolved ten bellwether cases.[53]  After considering the

testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power

electronics, electrical machinery, and failure analysis concerning the effects of having Chinese

Drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the

appropriate scope of remediation.  The Court found that Chinese Drywall "has to be

remediated."[54]  These bellwether trials have served as a useful tool for all litigants involved in

Chinese Drywall litigation, as well as the Court.[55]  This laid the groundwork for evaluating

potential liability against builders and other defendants.  The PSC and Class Counsel have

---

[53]  *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case).  Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[54]  *Germano*, 706 F. Supp. 2d at 671.

[55]  *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (June 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar....  The reasons for acceptance by bench and bar are apparent.  If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

litigated insurance coverage issues in numerous states throughout the United States covered by this Agreement. The rulings that have been obtained through these proceedings have informed the PSC and Class Counsel on the reasonableness of the Global Settlement.

**B.      Reasons for the Global Settlement**

The Global Settlement will provide $70,570,000.00, after credits, in compensation to the Class. The distribution of these Settlement Funds for the benefit of Class Members will provide substantial benefits to the Class.

For those Class Members with KPT claims, the allocated Settlement Funds will be distributed 50% to the Other Loss Fund and 50% to the Remediation Fund, which are available to Class Members who are eligible to participate in the Knauf Class Settlement. The Other Loss Fund is a capped fund that is available to all claimants who are eligible to participate in the Knauf Class Settlement and is designed to compensate such claimants for pre-remediation alternative living expenses; for lost use, sales and rentals; for foreclosures; for short sales; for Tenant Losses; and for bodily injury.[56]

The Global Settlement thus provides a significant recovery for Plaintiffs in light of, among other things, the procedural posture of the litigation, the range of estimates of damages to the Class, relevant factors regarding Participating Defendants' financial conditions to meet the claims at issue in this Chinese Drywall litigation (*i.e.*, since many of the Participating Defendants are no longer in business), the risks and uncertainty regarding the apportionment of any liability to the Participating Defendants and all of the material factual information revealed during discovery and settlement negotiations. Although proposed Class Counsel and the PSC believe in

---

[56] Knauf Class Settlement, Section 4.7.

the merits of the case against the Participating Defendants and the Participating Insurers and in their ability to prevail, the Parties recognize that each party would face serious obstacles to establishing both liability and damages should the cases proceed to trial and recovering damages thereafter.  For instance, Participating Defendants and Participating Insurers were prepared to, and would, strenuously argue that Plaintiffs could not establish causation for personal injury damages, which would materially reduce the potential range of damages.  Moreover, if the cases against Participating Defendants and Participating Insurers were to proceed to trial, these defendants would likely appeal any judgment favorable to the Class, imposing a significant additional delay on the payment of any recovery to individual Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.

In addition to the above risks and delays that would arise if the Plaintiffs continued to pursue litigation against the Participating Defendants and Participating Insurers, a number of the Participating Insurers have prevailed on coverage defenses through motions for summary judgment in various federal and state courts.  *See, e.g.*, *QBE Ins. Corp. v. Estes Heating & Air Conditioning, Inc.*, 2012 WL 413968, *7 (S.D. Ala. Feb. 8, 2012) (Alabama law) (finding the Total Pollution Exclusion barred coverage for CDW-related actions); *Granite State Ins. Co. v. Am. Bldg. Materials, Inc.*, 2011 WL 6025655, *1 (M.D. Fla. Dec. 5, 2011) (Massachusetts law), *reconsideration denied*, 2012 WL 204220 (M.D. Fla. Jan. 24, 2012) (same); *General Fidelity Insurance Co. v. Foster*, 808 F.Supp.2d 1315 (S.D. Fla. Mar. 24, 2011) (Florida law) (finding the Total Pollution Exclusion unambiguous in barring coverage for CDW-related actions); *FCCI Commercial Ins. Co .v Al Bros., Inc.*, 10-CA-2840 (Fla. Cir. Ct. Lee Cty. Apr. 19, 2011)

(pollution exclusion barred coverage for CDW-related actions);[57] *FCCI Commercial Ins. Co. v. Shirley Constr. & Drywall, Inc.*, 102979-CA (Fla. Cir. Ct. Charlotte Cty. Aug. 1, 2011) (same);[58] *FCCI Advantage Ins. Co. v. Gulfcoast Engineering, LLC*, No. 10-CA-2862 (Fla. Cir. Ct. Lee Cty. Aug. 8, 2011) (same);[59] *FCCI Commercial Ins. Co., et al. v. Residential Drywall*, Inc., No. 10-23495 (Fla. Cir. Ct. Hillsborough Cty. Sept. 7, 2011) (same).[60]  In fact, the basis for excluding Virginia claims from the Settlement is the current lack of available insurance funds due to the present interpretation of Total Pollution Exclusions to CDW-Related Actions involving policies under Virginia law.  *See, e.g.*, *Travco Ins. Co. v. Larry Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), *question certified by*, 2012 WL 666230 (4th Cir. Mar. 1, 2012); *Nationwide Mut. Ins. Co. v. The Overlook*, 785 F. Supp. 2d 502 (E.D. Va. 2011); *Dragas Mgmt. Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 766 (E.D. Va. 2011); *Evanston Ins. Co. v. Harbor Walk  Develop.*, LLC, 814 F. Supp. 2d 635 (E.D. Va. 2011).  These Participating Insurers, as well as other insurers who are aware of the summary judgment proceedings, continue to deny coverage with respect to the Chinese Drywall claims.  Thus, the Global Settlement ensures the availability of policy proceeds for Class Members, which are not guaranteed to be available if coverage disputes under the Participating Insurers' policies are fully litigated.  Given the position that the Participating Insurers have taken with respect to coverage, it behooves Class Members to proceed with the Global Settlement as opposed to continuing litigation and further depleting the insurance

---

[57]  Attached hereto as Exhibit "C".

[58]  Attached hereto as Exhibit "D".

[59]  Attached hereto as Exhibit "E".

[60]  Attached hereto as Exhibit "F".

proceeds that may be available to compensate Class Members.

The PSC and proposed Class Counsel respectfully request that this Motion be granted not only because, as will be set forth herein, public policy favors the settlement of complex class actions such as this, but because the Global Settlement is an excellent result for the Class. It is fair, reasonable and adequate, and was negotiated at arm's-length over many months with oversight from the Court and input from many interested parties. In light of the foregoing, it is respectfully requested that the Court enter an Order preliminarily approving the Settlement and conditionally certifying the Class.

## III.   **ARGUMENT**

### A.      **The Global Settlement Is in the Best Interest of the Class**

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action. *Evans v. Jeff D.*, 475 U.S. 717, 727-28 (1986); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). In determining whether to approve the Global Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See*, *e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (Fallon, J.); *Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398, *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.).[61] This is, in part, because of the complexity and size of class actions:

> Particularly in class action suits, there is an overriding public

---

[61] "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement... This rule has particular force regarding class action lawsuits." *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

> interest in favor of settlement [...] it is common knowledge that class action suits have a well deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action [...] In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331, *citing*, *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Turner*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially apparent in the class action context where claims are complex [... and] could lead to years of protracted litigation and sky-rocketing expenses.").

In addition:

> Complex litigation - like the instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly evasive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions [...] Although class action settlements require court approval, such approval is committed to the sound discretion of the trial court.

*In re United States Oil & Gas Litig.*, 967 F.2d 489, 493-94 (11th Cir. 1992), *citing*, FED. R. CIV. P. 16(a), (c), 23(e); *Bennett v. Behring*, 737 F.2d 982, 987 (11th Cir. 1984); *Cotton*, 559 F.2d at 1331).

The courts have recognized that certification of a class for settlement purposes is beneficial in resolving major class action disputes. *See*, *e.g.*, *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207-10 (5th Cir. 1981); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-77 (5th Cir. 1976).

The first step in determining whether to grant preliminary approval to a class settlement,

is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement."  *Cope v. Duggins*, 2001 WL 333102, *1 (E.D. La. Apr. 4, 2001) (Fallon, J.), *citing*, Manual for Complex Litigation (Third) § 30.41 (1995).  The Court must "evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing."  *Id*. In so doing, "the Court will examine the submitted materials and determine whether the proposed settlement appears fair on its face."  *Id*.; *see Corrugated Container*, 643 F.2d at 212.

At the preliminary stage, the Court's review is less stringent.  *See, e.g., In re OCA, Inc. Sec. and Der. Litig.*, 2008 WL 4681369, *11 (E.D. La. Oct. 17, 2008) ("As this motion is for *preliminary* approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval."); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007); Manuel for Complex Litigation (Fourth), § 21.63 (2004) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.").

As set forth above, the Settling Parties arrived at an agreement in principal during arm's-length negotiations, with oversight by the Court.  This settlement was subsequently memorialized in the Global Settlement, submitted herewith.  The Court may presume, therefore, that the proposed Settlement is fair and reasonable, as it is the result of arm's-length negotiations.  *See Camp v. The Progressive Group*, 2004 WL 2149079, *7 (E.D. La. Sept. 23, 2004).  The Global Settlement contains the material economic terms of the Settlement, the manner of notice to be given to the Class, the contingencies or conditions to the Settlement's final approval, and other terms.

The PSC and proposed Class Counsel possessed adequate information concerning the

strengths and weaknesses of the litigation against the Participating Defendants and Participating Insurers after the exchange of information during negotiation sessions, including information concerning damage calculations. In addition, proposed Class Counsel, the PSC, its individual counsel members, and the PLC are highly competent counsel, all with many years of experience litigating complex class action and multidistrict cases. Finally, as explained above, the complexity, expense, uncertainty, and likely duration of the litigation also militate in favor of consummating the settlement process. Therefore, proposed Class Counsel and the PSC respectfully submit that all of the above-cited circumstances support preliminary approval of the proposed Global Settlement.

### B.   The Requirements of Rule 23 Have Been Met For Conditional Certification of the Class

For purposes of conditionally certifying the Rule 23(b)(3) Class sought by the Settling Parties, The MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 advises that "[i]f the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *See id*. at § 21.22. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id*. at § 21.632. This comports with the Supreme Court's holding in *Amchem*, 521 U.S. at 619-20, that "[s]ettlement is relevant to a class certification," but the requirements of Rule 23(a) and 23(b)(3) must still be met. *Id*. at 620. However, when a court is "[c]onfronted

with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."  *Id*.

In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Class in the context of the Global Settlement.

### 1.   <u>Numerosity</u>

Thousands of Plaintiffs have filed suit against the Participating Defendants and the Participating Insurers, alleging damages sustained as a result of Participating Defendants' involvement in the distribution and installation of defective Chinese Drywall that was installed in Plaintiffs' homes and properties.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members "clearly satisfies the numerosity requirement."); *see* William B. Rubenstein, Alba Conte, and Herbert B. Newberg, 1 NEWBERG ON CLASS ACTIONS § 3:3 (4th ed. 2010) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

2.   **Commonality**

The commonality requirement of Rule 23(a)(2) is easily met in this case.  The Judicial

Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on

"the commonality of facts in the various cases."[62]  Questions surrounding the effects of Chinese

Drywall on Class Members, the damages caused thereby, and the apportionment of fault to the

Participating Defendants are issues common to all Plaintiffs, satisfying this element of Rule

23(a).  *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly

appropriate" when the "issues involved are common to the class as a whole" and they "turn on

questions of law applicable in the same manner to each member of the class."); *Hanlon v.

Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with

divergent factual predicates is sufficient, as is a common core of salient facts coupled with

disparate legal remedies within the class."); 1 NEWBERG ON CLASS ACTIONS § 3:1

("Convenience, uniformity of decision, and judicial economy are achieved through the class

action device by litigating common issues only once on behalf of all class members.").

3.   **Typicality**

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of

the class representative, and not to the specific facts from which it arose or the relief sought."  1

NEWBERG ON CLASS ACTIONS § 3:13, *quoting*, *Weinberger v. Thornton*, 114 F.R.D. 599, 603

(S.D. Cal. 1986).  In other words, courts must determine "whether other [Class] members have

the same or similar injury, whether the action is based on conduct which is not unique to the

named plaintiffs, and whether other class members have been injured by the same conduct."  *Id.*,

---

[62]  *Hernandez*, 2010 WL 1710434 at *1 (Findings of Fact).

*quoting*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9ᵗʰ Cir. 1992); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g., General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156-57 (1982). The typicality requirement has been liberally construed by the federal courts. *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Plaintiffs in this case is seeking money from the Participating Defendants and the Participating Insurers for the costs of remediation of the Chinese Drywall and other damages allegedly caused thereby. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." 1 NEWBERG ON CLASS ACTIONS § 3:13. The claims of the Class Representatives are typical of the absent Class Members in that all Plaintiffs are seeking to hold the Participating Defendants and Participating Insurers liable for damages resulting from Chinese Drywall installed in their Affected Properties.

### 4. **Adequacy of Representation**

Rule 23(a)(4) requires that the named class representatives "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted). At this preliminary stage of the approval process,

there is nothing to suggest that this requirement has not been met.  The named representatives are

members of the Class they seek to represent and they do not possess any interests antagonistic to

that class.  Moreover, proposed Class Counsel are Lead Counsel of the PSC and the Court-

appointed PLC, which were appointed by this Court after an application process to represent all

Plaintiffs in the MDL, based on the attorneys' vast experience in class actions and multidistrict

litigation.  The PSC conducted these class negotiations with Participating Defendants and

Participating Insurers at arm's length, and will fairly and adequately represent the Class.  *Brown*

*v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

### 5.    <u>Common Questions of Law and Fact Predominate</u>

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks

whether a class suit for the unitary adjudication of common issues is economical and efficient in

the context of all the issues in the suit."  1 NEWBERG ON CLASS ACTIONS § 4:25; *see also*

*Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation").  In this case it makes

eminent good sense to resolve the claims against the Participating Defendants and Participating

Insurers in this forum through the class action device.  The issues of Participating Defendants'

liability for the sale and distribution of Chinese Drywall predominate over any individual issues

involving the Plaintiffs.  A class settlement will insure that funds are available to remediate the

Plaintiffs' Affected Properties and provide compensation for other damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action

device be superior to other methods of adjudication.  Factors the Court may consider include:

(A)    the interest of members of the class in individually controlling the

prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the difficulties likely to be encountered in the management of a class action.[63]

FED. R. CIV. P. 23(b)(3)(A)-(D).

Given the various suits pending against the Participating Defendants and the Participating Insurers in federal and state courts, approval of the Global Settlement and resolution of all Chinese Drywall claims against the Participating Defendants and the Participating Insurers in this forum benefits all parties.

**C.**    **The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirement of Rule 23**

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See Eisen v. Carlisle & Jacqueline*, 471 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977). Courts have held that

---

[63] As stated earlier, any difficulties of management of this Class need not be considered. *Amchem*, 521 U.S. at 620.

"[t]he Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action." *See OCA*, 2008 WL 4681369, at *15, *citing*, *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008). Notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See id.*, *quoting*, *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005).

In accordance with these legal parameters, the Parties have agreed to provide individual notice by first-class mail to all known Class Members and their counsel. Further, additional notice will be provided to Class Members in newspapers and periodicals, in a press release, on TV, in on-line media, on federal and state court websites, on other publicly available websites (*i.e.,* the Court's Chinese Drywall MDL website), and by requesting that the notice be posted at various public places. The Court should approve the proposed manner of notice since it is broadly designed to reach the maximum number of Class Members with direct mailing of notice to Class Members who can be identified through reasonable efforts. The proposed manner of notice satisfies the requirements of due process since it is reasonably calculated to apprise interested parties of the pendency of the action and their rights to object.

The Notice will also be written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1). The Notice will objectively and neutrally apprises all Class Members of the nature of the action, the definition of the Class sought to be certified for purposes of the Global Settlement, the Class claims and issues, that Class Members may enter an appearance and appear before the Court at the Joint Fairness Hearing (in accordance with the procedures to be set forth in the Notice), that the Court will exclude from the Class any Class

29

Member who requests exclusion (and will set forth the procedures and deadlines for doing so),

and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B). The

Notice will additionally disclose the date, time and location of the Joint Fairness Hearing and the

procedures and deadlines for the submission of objections to any aspect of the Settlement. These

disclosures will be complete and should be approved by the Court. *See*, *e.g.*, *In re Ikon Office*

*Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000).

Upon notification of the Global Settlement, Class Members will have three choices: (1)

approve the Global Settlement and receive Global Settlement benefits, if eligible, by submitting a

Proof of Claim in that settlement; (2) exclude themselves from the Global Settlement by "opting

out" of the Class, in which case they will retain their individual claims against the Participating

Defendants and the Participating Insurers; or (3) object to the Global Settlement, in which case

they will nonetheless remain Class Members.

To participate in the Global Settlement, Class Members need do nothing at this time.

Class Members who wish to exclude themselves from the Global Settlement must submit a

timely request for exclusion from the Global Settlement. Class Members who wish to object to

the Global Settlement must file and serve a notice of their intention to appear and object.

Objectors can submit a memorandum of law in opposition to the Global Settlement and can

appear before the Court at the Joint Fairness Hearing. The Notice will provide clear direction

and instructions to Class Members regarding their options under the Global Settlement.

> **D.** **The Court Should Preliminarily Approve the Global**
> **Settlement and Conditionally Certify the Class and**
> **Issue the Requested Stays**

Determining the fairness of the Global Settlement is left to the sound discretion of the

Court, and an appellate court will not overturn the Court's decision absent a clear showing of

abuse of that discretion. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th

Cir. 1982), *citing*, *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977), *citing*,

*Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *see also In re U.S. Oil*, 694 F.2d at 493-94.

The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements

"'will be upheld whenever possible because they are a means of amicably resolving doubts and

preventing lawsuits.'" *Miller*, 559 F.2d at 428, *quoting*, *Pearson v. Ecological Sci. Corp.*, 559

F.2d 171, 176 (5th Cir. 1975). Settlements of class actions are "particularly favored" and are not

to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Turner*, 472 F.

Supp. 2d at 843. In the case of class actions, the Fifth Circuit has held that "there is an

overriding public interest in favor of settlement," because such suits "have a well deserved

reputation as being most complex." *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst*, 529 F.2d

at 950.

Moreover, it is widely recognized that courts should exercise restraint in examining a

proposed settlement and should not "make a proponent of a proposed settlement justify each term

of settlement against a hypothetical or speculative measure of what concessions might have been

gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."

*Cotton*, 559 F.2d at 1330. In other words, in weighing the benefits obtained by settlement against

benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance

the scales. *See id.* The very object of a compromise "is to avoid the determination of sharply

contested and dubious issues." *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

In addition, a court should not engage in a trial on the merits when considering the

31

propriety of a settlement:

> It cannot be overstated that neither the trial court in approving the
> settlement nor [the appellate court] in reviewing that approval have
> the right or the duty to reach any ultimate conclusions on the issues
> of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330, *quoting*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2ⁿᵈ Cir.

1974); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8ᵗʰ Cir. 1975); *see also Turner*,

472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is

concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as

compared to the alternative of litigation."). The trial court is not required to decide the merits of

the action or substitute a different view of the merits for that of the parties or counsel. *Maher*,

714 F.2d at 455 ("In other words, in determining the fairness, reasonableness, and adequacy of a

proposed settlement, neither the district court nor the appellate court on review, should reach

ultimate conclusions on the issues of fact and law underlying the dispute.").

Where, as here, experienced counsel representing many interested parties have

extensively negotiated the Global Settlement at arm's length, a strong initial presumption is

created that the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d

1104, 1108 (5ᵗʰ Cir. 1982). The Fifth Circuit has recognized that courts must rely to a large

degree on the judgment of competent counsel, terming such counsel the "linchpin" of an

adequate settlement. *Reed v. GMC*, 703 F.2d 170, 175 (5ᵗʰ Cir. 1983). Thus, if experienced

counsel determine that a settlement is in the class's best interests, "the attorney's views must be

accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5ᵗʰ Cir. 1978);

*see also OCA*, 2008 WL 4681369 at *11 (where there is "no reason to doubt [the] fairness" of the

settlement and it "appears to fall within the range of possible approval, the court should grant preliminary approval."); *In re Train Derailment Near Amite Louisiana on October 12, 2002*, 2006 WL 644494, *1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement negotiated at arm's length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

Moreover, the Court is not required at this point to make a determination as to whether the settlement should be finally approved. As stated in the MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632: "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." Generally, "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Id*. Although non-binding, the preliminary approval establishes "an initial presumption of fairness." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3ʳᵈ Cir. 1995); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. Oct.15, 2009); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.25.

The Global Settlement before the Court is the product of extensive arm's-length negotiations between counsel for the Settling Parties, which culminated in a preliminary agreement. The Parties negotiated the terms of the Global Settlement in detail, and the Parties each made concessions and won positions on difficult issues. Therefore, the Global Settlement should be preliminarily approved.

At the Joint Fairness Hearing, any Class Members who have timely filed and served a notice of intention to appear may voice any objections. The Court can then consider the merits of

the Global Settlement in light of any objections and determine whether to grant final approval of

the Settlement.  At the Joint Fairness Hearing, the Settling Parties will have submitted briefs and

other documents in support of the Settlement.  If the Court finds the Global Settlement to be fair

and reasonable, the Court should enter the Final Judgment and Order of Dismissal with

Prejudice, dismissing this action with prejudice and effecting a release of all claims as provided

for in the Global Settlement.

      **E.**     **Proposed Schedule**

Class Counsel and the PSC suggest the following schedule leading to the Joint Fairness

Hearing.  Blanks for the actual dates are provided in the proposed Preliminary Approval Order

submitted herewith:

| Event | Day |
|---|---|
| Preliminary Approval Order ("PAO") Signed | 1 |
| Notice (PAO ¶ 11) | On or before 60 days from entry of PAO |
| Opt-Outs (PAO¶15) | 120 days from entry of PAO |
| Objections (PAO ¶ 16) | 120 days from entry of PAO |
| Settlement Hearing (PAO ¶ 18) | 165 days from entry of PAO |

**IV.**    **CONCLUSION**

Class Counsel and the PSC respectfully request that this Court find preliminarily that the

Global Settlement is fair, reasonable and adequate, and that notification to Class Members of the

terms of the Global Settlement and their rights in connection with the Global Settlement is

warranted.  Class Counsel and the PSC seek entry of an Order:  (1) preliminarily approving the

Global Settlement; (2) certifying the Class as set forth in the Preliminary Approval Order; (3)

approving the manner of Notice to the Class; (4) scheduling a Joint Fairness Hearing; and (5)

staying and enjoining the prosecution of all claims against the Participating Defendants and the

Participating Insurers.

Respectfully submitted,


Dated: May 18, 2012

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
 MATTHEWS, MARTINEZ, GONZALES,
 KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Richard J. Serpe
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**PROPOSED CLASS COUNSEL**

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

Russ M. Herman, Esquire (Bar No. 6819)
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Rherman@hhklawfirm.com

37

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Law in Support of Motion for an Order:(1) Preliminarily Approving the Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers; (2) Conditionally Certifying a Settlement Class; (3) Approving the Form Notice to Class Members; (4) Scheduling a Joint Fairness Hearing; and (5) Staying Claims Against Builders, Installers, Suppliers, and Participating Insurers has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 18th day of May, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*Co-counsel for Plaintiffs*