# EXHIBIT E

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE COUNTY, FLORIDA

FCCI ADVANTAGE INSURANCE COMPANY,
    Plaintiff,

v.

GULFCOAST ENGINEERING, LLC,
    Defendant.
_____/

Case Number: 10-CA-002862-----



RECEIVED AUG 0 8 2011 By_____

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before this court on a Motion for Summary Judgment filed by FCCI Advantage Insurance Company (FCCI) on May 31, 2011. Upon Consideration of the Motion, the pertinent portions of the record, and oral argument heard in open Court on August 1, 2011, the Court enters the following Order.

### I. Factual and Procedural Background

This is a declaratory judgment action to determine insurance coverage for personal injury and property damage allegedly resulting from the use of allegedly defective Chinese drywall. FCCI filed a declaratory judgment action on July 16, 2010, seeking a declaration from this Court that FCCI does not owe a duty to defend or indemnify Gulfcoast Engineering, LLC (hereinafter "Gulfcoast") under any insurance policy(ies) FCCI issued to Gulfcoast with respect to the action relating to claims arising from allegedly defective Chinese drywall. When comparing the pending underlying complaint to the plain language of the FCCI policies, it is clear that all underlying claims are not insured by or are excluded by language in the FCCI policies. Accordingly, as a matter of law, FCCI does not owe a duty to defend and indemnify Gulfcoast in connection with any claim alleging defective Chinese drywall.

A.  **Underlying action**

Gulfcoast has been named as a defendant in the following underlying action: *Sean and Beth Payton, et al. v. Knauf GIPS KG, Residential Drywall, et al.*, USDC, EDLA, Case No. 2:09-cv-07628-EEF-JCW ("*Payton*"). The plaintiffs in the underlying action allege Gulfcoast is liable for damages resulting from the installation of allegedly defective Chinese drywall. (See *Payton* Complaint, p. 494, ¶ 2555.) Gulfcoast is seeking coverage for the claims in the underlying action. Gulfcoast does not dispute that it was named as a defendant contractor and installer of drywall in the *Payton* complaint nor does Gulfcoast dispute that the *Payton* complaint alleges it is liable for such damages. (See Requests to Admit dated June 21, 2011.)

*Payton* alleges that Gulfcoast installed defective Chinese drywall that emitted sulfides and other noxious gases (or "off-gases"). (See *Payton* Complaint, p. 506, ¶ 2611.) Gulfcoast does not dispute that the *Payton* complaint makes such allegation. (See Requests to Admit dated June 21, 2011.)

The plaintiffs in the underlying action allege that the sulfides and other noxious gases have caused corrosion and damage to personal property such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances, and other metal surfaces and property and that exposure to sulfide and other noxious gases caused bodily injury. (See *Payton* Complaint, p. 506, ¶¶ 2612-13.) Gulfcoast does not dispute that the *Payton* complaint makes such allegation. (See Requests to Admit dated June 21, 2011.)

The underlying action seeks damages against Gulfcoast for the costs of inspection, the cost to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes, and personal property, and diminution of property value. (See *Payton* Complaint, pp. 507-

508, ¶ 2619.) Gulfcoast does not dispute that the *Payton* complaint makes such allegation. (See Requests to Admit dated June 21, 2011.)

Some plaintiffs in the underlying action also claim damages for injuries as a result of allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems, and other health problems. (See *Payton* Complaint, p. 506, ¶ 2613.) Gulfcoast does not dispute that the *Payton* complaint makes such allegation. (See Requests to Admit dated June 21, 2011.)

**B. Current dispute**

FCCI issued three General Liability insurance policies to Gulfcoast for which Gulfcoast claims coverage may apply:

Policy number CPP0008366-1, effective 05/08/2008 through 05/08/2009

Policy number CPP0008366-2, effective 05/08/2009 through 05/08/2010

Policy number CPP0008366-3, effective 05/08/2010 through 05/08/2011

Gulfcoast does not dispute the truth and accuracy of the policies attached to the declaratory judgment complaint or the policy number and effective date provided herein. (See Requests to Admit dated June 21, 2011.)

The FCCI policies CPP0008366-1, CPP0008366-2 and CPP0008366-3 issued to Gulfcoast each contain the following Total Pollution Exclusion, CG 21 49 09 99:

> TOTAL POLLUTION EXCLUSION ENDORSEMENT
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:
>
> This insurance does not apply to:
>
> f.     Pollution

- 3 -

> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time
> (2) Any loss, cost or expense arising out of any
>    a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants",. . .
>
> . . .

FCCI policies CPP0008366-1, CPP0008366-2, and CPP0008366-3 define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste Waste includes materials to be recycled, reconditioned or reclaimed."

Gulfcoast is seeking coverage for the claims in the underlying action. Gulfcoast does not dispute that each of the policies contains a Total Pollution Exclusion Endorsement. (See Requests to Admit dated June 21, 2011.)

FCCI claims it has no duty to defend Gulfcoast in the action against it because the injuries and damages from the Chinese drywall fall under the policies' Pollution Exclusion. This Court finds that the compounds released by the sulfides and other excess gases are pollutants within the meaning of the policy and the Pollution Exclusion does apply.

## II. Standard of Review

The adjudication of an insurer's duty to defend is a legal issue, and thus summary judgment is an appropriate vehicle for resolution of this issue. See Nationwide Mutual Fire Ins. Co. v. Royal, 558 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008). The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact. Lenhal Realty, Inc. v.

Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). If the moving party has shown conclusively that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to establish that there is a dispute of fact. See Landers v. Milton, 370 So. 2d 368 (Fla. 1979). If there are no disputed issues as to any material fact, the court may decide the issue by summary judgment. See Ham v. Heintzelman's Ford, Inc., 256 So.2d 264, 267 (Fla. App. 1971); Fla. R. Civ. P. 1.510.

### III. Analysis

#### A. Applicable State law

Florida law applies to the interpretation of the FCCI insurance contracts in this action because the policies were executed in Florida, issued and delivered in Florida to a Florida insured, and the homes upon which Gulfcoast allegedly installed drywall were located in Florida. See State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160 (Fla. 2006). Gulfcoast is a dissolved Florida Corporation that was exclusively located in and doing business in Florida. At all material times, Gulfcoast installed drywall in Florida. The claims in the underlying action arise out of the alleged exposure to drywall installed by Gulfcoast in properties located in Florida. Gulfcoast does not dispute the application of Florida law to this matter.

#### B. Duty to Defend

FCCI asserts that it does not have a duty to defend Gulfcoast in the underlying action because the compounds and sulfide gases being released from the defective drywall qualify as "pollutants," and the damages and injuries caused are excluded from coverage by the Pollution Exclusion. When determining whether an insurer has a duty to defend, a court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured." Philadephia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319,

1322 (S.D. Fla. 2009). A court should analyze the insurance policy's language in light of the facts contained within the underlying complaint only. Id. at 1322-23. There is no duty to defend where the allegations show that coverage does not exist or a policy exclusion applies. Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1218 (S.D. Fla. 2006). Further, if there is no duty to defend, it is axiomatic under Florida law that there can be no duty to indemnify. Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); see also, Wilson, 469 F. Supp. 2d at 1218 (noting that "[i]f there is no duty to defend, there is no duty to indemnify"). As such, this Court need not look further than the underlying pleadings and the FCCI policies to render a determination that FCCI does not have a duty to defend Gulfcoast. The plaintiffs in the underlying action all allege that their damages and the injuries are the direct result of the release of pollutants from the drywall, namely sulfide gases and additional chemicals. These claims are excluded by the clear and unambiguous language of the Total Pollution Exclusion in the FCCI policies issued to Gulfcoast. Therefore, FCCI does not have a duty to defend or indemnify Gulfcoast in any claim arising out of any allegation that Gulfcoast installed allegedly defective Chinese drywall.

### C. Pollution Exclusion

The Total Pollution Exclusion contained in the General Liability policies provides that there is no coverage for any bodily injury or property damage "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (CG 21 49 09 99.) Further, there is no coverage for "[a]ny loss, cost or expense arising out of any (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" (CG 21 49 09 99.)

- 6 -

The claims in the underlying action arise solely from damage or injury resulting from the release of sulfide and other noxious gases. This is clearly excluded from coverage by the Total Pollution Endorsement. The underlying plaintiffs have also sought relief in the form of a demand that Gulfcoast monitor, remove, contain, treat, or respond to the Pollutants. This specific request is also precluded by the Total Pollution Exclusion.

FCCI first argues that the Total Pollution Exclusion language has consistently been held by Florida courts and Federal courts applying Florida law to be unambiguous, and such language has been applied to bar coverage for injury and damages from the release of pollutants of various types. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998).

Florida courts have analyzed and applied pollution exclusions similar to those in FCCI's policies in contexts analogous to the Chinese drywall lawsuits. In the seminal Deni case, the Florida Supreme Court held that the pollution exclusions contained in the CGL policies, practically identical to the one in Gulfcoast' policies, were unambiguous and precluded coverage. Id. at 1138. Many other jurisdictions have addressed the same arguments as in the Deni briefs, and a substantial majority of courts have concluded that the total pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability. See, e.g., Economy Preferred Ins. Co. v. Grandadam, 656 N.E.2d 787, 789 (Ill. App. 3d 1995) ("The vast majority of courts that have examined 'absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich.App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising

out of the release of pollutants").

Without exception, every Federal court applying Florida law since the Deni decision has held that pollution exclusions with language identical or substantially similar to FCCI's Total Pollution Exclusion are unambiguous and have flatly rejected all arguments to the contrary. See, e.g., James River Ins. Co. v. Ground Down Eng'g Inc., 540 F.3d at 1275 (citing Deni in rejecting assertion that clearly written pollution exclusion is ambiguous); Technical Coating Applicators, Inc.v. Tampa Hous. Auth., 231 F.3d 1298, 1300 (11th Cir. 2000) (pollution exclusion at issue is unambiguous under Florida law). Therefore, based on clear Florida precedent, this Court finds that the Total Pollution Exclusion contained in the FCCI policies is unambiguous.

Next, the Court must determine whether there has been a discharge, dispersal, seepage, migration, release or escape of pollutants" within the meaning of the Pollution Exclusion. The underlying action alleges that the sulfide gases were emitted from defective drywall resulting in their bodily injury or damage to their property. (See e.g., *Rogers* Complaint, p. 137-38, ¶ 681-84.)

The Eleventh Circuit has repeatedly found that air-borne irritants and contaminants, such as those from the alleged Chinese drywall, are a result of a "discharge, dispersal, release, escape, seepage or migration," as defined under pollution exclusions. See Auto Owners Ins. Co. v. City of Tampa Hous. Auth., 231 F.3d 1298, 1300-01 (11th Cir. 2000) ("the ingesting and inhaling of lead from the old and crumbling paint in a Housing Authority dwelling-clearly arises from the 'discharge, dispersal, release, escape, seepage or migration' of a pollutant, and we therefore agree with the district court that the exclusion clause bars coverage under the policy"); West Am. Ins. Co. v. Band & Desenberg, 138 F.3d 1428, 1428 (11th Cir. 1998) (pollution exclusion at issue eliminated the insurer's duty to defend claims that the insured's air conditioning system transported air-borne contaminants into the insured's office building). It is obvious in this matter that the relevant

dispersal or discharge is the discharge and dispersal of sulfuric and other gases from the drywall. It is an undisputed fact that the Chinese drywall has "off-gassed," dispersing and discharging gases into the underlying plaintiffs' homes.

For similar reasons, the Court finds that the gases released from the Chinese drywall are "contaminants" and/or "irritants." There is no dispute that the Chinese drywall has released sulfuric and other gases into the underlying plaintiffs' homes. When determining whether a substance qualifies as an "irritant" or "contaminant" for purposes of deciding whether it is a "pollutant," Florida courts look to whether the substance had a "particular effect commonly thought of as 'irritation' or 'contamination.'" Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (microbial agents as contaminant); see also Deni, 711 So.2d at 1139 (ammonia fumes as irritant). Florida courts have continually rejected attempts to find policy ambiguity associated with the terms "irritant" and "contaminant" under a pollution exclusion. See Deni, 711 So. 2d at 1139 (citing Titan Holding Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("[a]lthough the terms within the definition of pollutant -- 'irritant' and 'contaminant' -- are not defined, the drafter of a policy need not define each word in the policy *ad infinitum* . . . ")). In assessing the application of the pollution exclusion, Florida courts have defined these terms as they are understood in plain ordinary language: "an 'irritant' is a substance that produces a particular effect, not one that generally or probably causes such effect." Deni, 711 So.2d at 1139. (quoting Am. States. Ins. Co. v. Nethery, 79 F.3d 473, 476 (5th Cir. 1996) (concluding that paint and glue fumes were "irritants")); 'contaminant' is to make impure, infected, corrupt, or radioactive by contact with addition of something. . .'" Nova, 424 F.Supp. 2d at 1334-35 (citing Webster's New World College Dictionary 314 (4th ed. 2000)).

Recently, in Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc., 595 F.

- 9 -

Case 2:09-md-02047-EEF-JCW Document 14373-10 Filed 05/18/12 Page 11 of 13

Supp. 2d 1319, 1320 (S.D. Fla. 2009), the court held that the pollution exclusion at issue precluded coverage for the underlying injuries, which included exposure to raw sewage, feces and battery acid while on the insured's premises. Id. at 1320. The court, citing Deni, rejected the idea that the pollution exclusion was ambiguous because the terms "irritant" and "contaminant" remained undefined. Id. at 1323-24. In determining whether something was an "irritant or contaminant" within the meaning of the pollution exclusion, the court stated: "[i]n determining whether a substance is an irritant or contaminant, 'the court should look to see if a disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination.''" Id. at 1324 (quoting Nova, 424 F. Supp. 2d at 1325).

Therefore, even though the terms "irritants" and "contaminants" are not specifically defined under the FCCI policies, Florida courts have continually rejected the assertion that the terms are ambiguous. As long as the supposed "irritant" or "contaminate" creates an irritating or contaminating effect, the substance will be considered such, and there will be no coverage under the policy.

As alleged in the underlying action, the sulfide and other gases emitted qualify as an "irritant" or "contaminant" for purposes of the Total Pollution Exclusion. Without the presence of these gases, no irritation or contamination would have occurred. Because the underlying action plainly alleged that the sulfide and other noxious gases emitted from the drywall have produced irritation and contamination both to the property and person of the underlying plaintiffs, the sulfide and other noxious gases are properly characterized as "pollutants" as that term is used in the Total Pollution Exclusion under Florida law.

In addition, FCCI has pointed to two similar federal court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. Gen. Fid. Ins. Co. v.

Foster, Case Number 09-80743-Civ, (U.S.D.C. S.D. FL decided March 24, 2011) and Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. June 3, 2010). The Gen. Fid. Ins. Co. v. Foster case involved an identical pollution exclusion in a CGL policy, and Travco Ins. Co. v. Ward involved a similar pollution exclusion in a homeowners policy. Although neither case is binding upon this Court, this Court does find both persuasive. In each case, the pollution exclusion was applied and summary judgment was granted to the insurer.

Finally, FCCI has pointed to several similar Florida State Trial Court decisions involving the pollution exclusion and claims arising out of allegedly defective Chinese drywall. In FCCI Commercial Ins. Co. v. AL Bros., Inc., Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case Number: 10-CA-002840, Judge Michael T. McHugh analyzed a Chinese Drywall claim against an installer (AL Brothers) very similar to the Defendant in this case. Also, in the same court, in FCCI Commercial Ins. Co. v. Ocean Constr., Inc., Case Number: 10-CA-2841, Judge Lynn Gerald Jr. also analyzed claims against an installer, Ocean, analogous to the issues here. Judge Becky A. Titus also analyzed claims against an installer, MDW, analogous to the issues here, in FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Case Number 10-CA-007389. Lastly, in FCCI Commercial Ins. Co. v. S.D. & Assocs., Inc., in the Circuit Court of the Seventeenth Judicial circuit in and for Broward County, Case Number: 10-29152-18, Judge Michele Towbin-Singer analyzed the same exact claims against another installer, S.D. & Associates, Inc.

The FCCI policies were identical in those cases and in this case. Having reviewed Judge McHugh's Order dated April 21, 2011 (from which no appeal was taken) Judge Gerald's Order dated June 6, 2011 (from which no appeal was taken), Judge Titus' Order dated July 6, 2011, and Judge Towbin-Singer's Order dated July 20, 2011, and even though they are not binding upon this

- 11 -


Court, this Court finds these Orders to be persuasive and has adopted some of their language.

Thus the injuries and damages sustained from the drywall are within the policies' pollution exclusions. FCCI has no duty to defend or indemnify Gulfcoast Engineering, LLC. Accordingly, summary judgment is warranted.

### IV. Conclusion

FCCI's Motion for Summary Judgment is hereby **GRANTED**. The Court hereby enters a final judgment in favor of FCCI and against Gulfcoast as follows:

1. FCCI does not owe a duty to defend or indemnify Gulfcoast in the underlying action (*Payton*) or any similar case alleging bodily injury or property damage caused in whole or in part from allegedly defective Chinese drywall.

2. Any damages alleged in the underlying action are precluded from coverage by the unambiguous language of the Total Pollution Exclusion.

3. There is no coverage available to Gulfcoast under the FCCI policies.

**IT IS SO ORDERED** this ____ day of August, 2011.

/s/ Hon. Sherra Winesett
_____
Judge Sherra Winesett


Deborah Hamshane
Judicial Assistant