UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br>ALL CASES AND<br><br>*Payton, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:09-cv-07628 (E.D. La.)<br><br>*Gross, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:09-cv-06690 (E.D. La.)<br><br>*Rogers, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:10-cv-00362 (E.D. La.)<br><br>*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 2:11-cv-00252 (E.D. La.)<br><br>*Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-1363 (E.D. La.)<br><br>*Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-2349 (E.D. La.)<br><br>*Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-3023 (E.D. La.)<br><br>*Vickers, et al. v. Knauf Gips KG, et al.*<br>Case No. 2:09-cv-04117 (E.D. La.) | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**OBJECTION BY THE WCI CHINESE DRYWALL PROPERTY DAMAGE AND
PERSONAL INJURY SETTLEMENT TRUST TO THE PRELIMINARY
APPROVAL OF THE SETTLEMENT AGREEMENT IN MDL NO. 2047
REGARDING CLAIMS INVOLVING BUILDERS, INSTALLERS,
<u>SUPPLIERS AND PARTICIPATING INSURERS</u>**

The WCI Chinese Drywall Property Damage and Personal Injury Settlement Trust (the "WCI Trust") files this Objection (the "Objection") to the Preliminary Approval of the Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers (the "Prospective Insurer Agreement" or the "Agreement"),[1] and respectfully asserts that the proposed Agreement should not be approved, preliminarily or otherwise, given the host of ambiguities, inconsistencies, and unanswered questions in the Agreement. In support of this Objection, the WCI Trust respectfully states as follows:

**A.   Background.**

On December 20, 2011, the Plaintiffs' Steering Committee ("PSC") and Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu) Co., Ltd.; Guangdong Knauf New Building Material Products Co., Ltd.; Knauf Gips KG; Gebr. Knauf Verwaltungsgesellschaft KG; Knauf International GmbH; Knauf Insulation GmbH; Knauf UK GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltd.; and PT Knauf Gypsum Indonesia (collectively, the "Knauf Defendants") filed a joint motion seeking conditional certification of a settlement class and subclasses (the "Class"), preliminary approval of the Knauf Settlement Agreement, and issuance of a stay and injunction of all claims against the Knauf Defendants.

On January 10, 2012, this Court entered its Order Preliminarily Approving Knauf Settlement, Conditionally Certifying a Knauf Settlement Class, Issuing Class Notice,

---

[1] The proposed Knauf Settlement Agreement uses the term "Prospective Insurer Agreement," while the actual Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers, filed on May 18, 2012, refers to itself as the "Prospective Insurance Agreement." This Objection uses those terms interchangeably.

2

Scheduling a Settlement Fairness Hearing, and Staying Claims as to the Knauf Defendants (the "Knauf Preliminary Approval Order") (docket no. 12138). The Court initially set the deadline for objecting to certification of the Class or to approval of the Settlement as April 6, 2012. The Court then extended the objection deadline to May 11, 2012, and, subsequently, extended the objection deadline and opt out period to a date to be determined after filing of the Prospective Insurer Agreement.

The PSC and proposed Class Counsel filed the Prospective Insurer Agreement on May 18, 2012, along with a Motion for an Order: (1) Preliminarily Approving the Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers; (2) Conditionally Certifying a Settlement Class; (3) Approving the Form Notice to Class Members; (4) Scheduling a Joint Fairness Hearing; and (5) Staying Claims Against Builders, Installers, Suppliers, and Participating Insurers (the "Preliminary Approval Motion"). On May 22, 2012, the Court entered an Order setting the Preliminary Approval Motion for hearing on May 31, 2012, at 8:30 a.m. The Court also set the objection deadline for May 23, 2012, giving parties one business day to file their objections to the Preliminary Approval Motion.

**B.   Background Information Regarding the WCI Trust.**

On August 4, 2008 and various dates thereafter (the "Petition Date"), WCI Communities, Inc. (n/k/a 2009 Real Estate LLC) and 126 of its affiliates (collectively, the "WCI Debtors" or "Debtors") filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors' bankruptcy cases were jointly administered under Case No. 08-11643. On August 26, 2009, the Bankruptcy Court entered its Order Confirming the Second Amended Joint

Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors (the "Confirmation Order") (docket number 2363 in Case No. 08-11643) in which the Bankruptcy Court confirmed the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan") (docket number 2088 in Case No. 08-11643). The Plan became effective on September 3, 2009 (the "Effective Date").

To address the substantial Chinese drywall liabilities of the WCI Debtors, the Plan established the WCI Trust in accordance with the WCI Chinese Drywall Property Damage and Personal Injury Settlement Trust Agreement (the "Trust Agreement"). On the Effective Date of the Plan, the WCI Trust was created and funded with certain assets, including the Insurance Coverage Actions,[2] the Insurance Recoveries,[3] and the Chinese

---

[2] The Plan defines "Insurance Coverage Actions" to mean "any rights to indemnification, reimbursement, contribution or other payment under any of the [WCI] Debtors' existing insurance policies, including the [WCI] Debtors' director and officer liability insurance policies, as of the Effective Date that may provide coverage with respect to Allowed Chinese Drywall Claims." See Glossary of Defined Terms, attached to the Plan as Exhibit A, at ¶ 71.

[3] The Plan defines "Insurance Recovery" to mean "(a) the right to pursue and receive the benefits and proceeds of any insurance policy issued to, owned by, or otherwise providing coverage to any [WCI] Debtor, including any insurance policy owned by any third party on which any [WCI] Debtor is named as an additional insured, with respect to Chinese Drywall Claims; (b) the right to pursue and receive recovery from or as a result of any Insurance Coverage Action; (c) the right to pursue and receive recovery from or as a result of any Claim, Cause of Action, or right of a [WCI] Debtor or New WCI against any insurance company concerning insurance coverage for or relating to Chinese Drywall Claims, or enforcement of any extracontractual or statutory remedies and relief relating to any insurance providing coverage for Chinese Drywall Claims, including, without limitation, any Insurance Coverage Actions or any other litigation, arbitration, mediation, and informal negotiations, whether past, pending, or not yet initiated, including, without limitation, consequential, contractual, extracontractual, and statutory damages, or other proceeds, distributions, awards, or benefits; (d) the right to pursue and receive recovery from or as a result of any claim, cause of action, or right of a [WCI] Debtor or New WCI to pursue insurance recovery related to Chinese Drywall Claims through available administrative or other means from any insurance company that is insolvent, or has been liquidated, or is otherwise subject to statutory or legal protections against litigation; and (e) the right to pursue and receive any other recovery from an insurance company, in its capacity as such, with respect to Chinese Drywall Claims." See Glossary of Defined Terms, attached to the Plan as Exhibit A, at ¶ 72.

4

Drywall Actions.[4]  *See* Plan, sections 8.2(b), 11.1(e), and 11.2.  The Confirmation Order appointed Judge Robert C. Pate as Trustee of the WCI Trust (the "<u>Trustee</u>").

Pursuant to the Plan and Confirmation Order entered by the Bankruptcy Court, the WCI Trust has assumed all of the WCI Debtors' Chinese drywall liabilities.  *See* Confirmation Order, ¶ 49 ("Upon the occurrence of the Effective Date, in exchange for the consideration provided for in the Plan, the Chinese Drywall Trust shall be deemed, without need for further action, to have assumed responsibility and liability for all Chinese Drywall Claims.").

In December 2010, the Trustee, together with the members of the Chinese Drywall Trust Advisory Board (the "<u>Advisory Board</u>"), formally approved the WCI Chinese Drywall Property Damage and Personal Injury Settlement Trust Distribution Procedures (the "<u>Trust Distribution Procedures</u>").  The Trust Distribution Procedures contain a detailed claim evaluation and approval methodology, based on the standards set forth in two of this Court's "bell weather" Chinese Drywall opinions.  *See* Findings of Fact and Conclusions of Law, entered by the Honorable Eldon E. Fallon on or about April 8, 2010, in *Germano, et al. v. Taishan Gypsum Co. Ltd., et al.*, case no. 09-6687; Findings of Fact and Conclusions of Law, entered by the Honorable Eldon E. Fallon on or about April 27, 2010, in *Hernandez v. Knauf Gips KG, et al.*, case no.09-6050.

The Trustee and the Advisory Board also adopted a Claim Form and accompanying instructions for filing the Claim Form.  As Chinese drywall claims are

---

[4] The term "<u>Chinese Drywall Actions</u>" is defined by the Plan to mean "the Causes of Action that the [WCI] Debtors may have against any subcontractor or other Person who installed Chinese drywall in a home built or sold by a [WCI] Debtor, directly or indirectly, any insurer of any such subcontractor or other Person, any retailer, wholesaler, distributor, manufacturer or provider of Chinese drywall that was installed in a home built or sold by a [WCI] Debtor, directly or indirectly, and/or any insurer of any such retailer, wholesaler, distributor, manufacturer or provider."  *See* Glossary of Defined Terms, attached to the Plan as Exhibit A, at ¶ 22.

5

submitted to the WCI Trust, RSM McGladrey, Inc. ("McGladrey"), the WCI Trust's claims processor, reviews each claim and the accompanying evidence submitted by the claimants. McGladrey approves or denies the claim, based on the evidentiary criteria provided in the Trust Distribution Procedures. For claims that satisfy the WCI Trust's methodology and are approved by McGladrey, the Trust Distribution Procedures assign a dollar-per-square foot value to the claim depending on the location of the home.[5]

To date, the WCI Trust has approved 334 Chinese drywall claims, representing an aggregate liability of $81,665,203.22.[6] The WCI Trust has approved claims for homes containing KPT Chinese Drywall[7] as well as homes that contain Non-KPT Chinese Drywall. Given the WCI Trust's limited cash, no distribution has been made on account of any of the WCI Trust's approximately $82 million in liquidated Chinese drywall claims.

C.  **The Assets of the WCI Trust Include All of the WCI Debtors' Claims and Causes of Action Relating to Chinese Drywall—Including Claims Against Builders, Installers, Suppliers, and the Insurer Defendants in the WCI Trust Insurance Litigation.**

As mentioned above, pursuant to the Confirmation Order, the WCI Trust irrevocably owns all of the WCI Debtors' rights to pursue and receive recovery on account of any Chinese Drywall Action, which includes all of the WCI Debtors' rights

---

[5] The WCI Trust obtained its remediation valuations by retaining a well-respected Florida contractor, Regal Remodeling, Inc., to inspect homes in the various WCI subdivisions and to provide the WCI Trust with written estimates of the cost to remediate each home in accordance with the standards set forth in this Court's first two Chinese Drywall opinions. *See* Findings of Fact and Conclusions of Law, entered by the Honorable Eldon E. Fallon on or about April 8, 2010, in *Germano, et al. v. Taishan Gypsum Co. Ltd., et al.*, case no. 09-6687; Findings of Fact and Conclusions of Law, entered by the Honorable Eldon E. Fallon on or about April 27, 2010, in *Hernandez v. Knauf Gips KG, et al.*, case no.09-6050.

[6] Subject to increase as the WCI Trust approves and liquidates additional Chinese drywall claims.

[7] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Prospective Insurer Agreement or, if not defined in the Prospective Insurer Agreement, in the proposed Knauf Settlement Agreement.

against "any subcontractor or other Person who installed Chinese drywall in a home built or sold by a [WCI] Debtor, directly or indirectly, any insurer of any such subcontractor or other Person, any retailer, wholesaler, distributor, manufacturer or provider of Chinese drywall that was installed in a home built or sold by a Debtor, directly or indirectly, and/or any insurer of any such retailer, wholesaler, distributor, manufacturer or provider." *See* Glossary of Defined Terms, attached to the Plan as Exhibit A, at ¶ 22.  Given this broad definition, the WCI Trust indisputably owns all of the WCI Debtors' claims and causes of action against, *inter alia*, Knauf, Banner Supply, any Installer, any Supplier, and any Subcontractor, as well as each of these entity's respective insurers.  *See* Confirmation Order, ¶¶ 1 and 4; *see also* Plan, §§ 11.1(e) and 11.2.  The WCI Trust has asserted its affirmative claims against the Knauf Defendants, Banner, and other defendants in the above-captioned MDL proceedings.  *See Payton et al., v. Knauf Gips KG et al.*, Case No. 2:09-cv-07628, at ¶ 2071 of Docket No. 1 (Plaintiff's Omnibus Class Action Complaint (I)).

In addition to the WCI Trust's claims against the Knauf Defendants, Banner, and all other manufacturers, suppliers, etc., of Chinese drywall used or installed in any home built by the WCI Debtors, the WCI Trust also irrevocably owns all of the WCI Debtors' rights to pursue and receive recovery, on account of Chinese drywall, from all of the WCI Debtors' insurance policies and any other applicable insurance policies, including policies owned by third parties upon which any WCI Debtor is named as an additional insured.  *See* Confirmation Order, ¶¶ 1 and 4; *see also* Plan, §§ 11.1(e) and 11.2.  The WCI Trust has filed suit in this Court against a number of the insurance companies that sold these policies.  *See Pate v. American International Specialty Lines Insurance*

*Company, et al.*, Case No. 09-7791 in the above-captioned MDL proceeding (hereafter, the "WCI Trust Insurance Litigation"). In the WCI Trust Insurance Litigation, the WCI Trust is seeking damages from the various insurer-defendants for the full amount of Chinese drywall liability channeled to the WCI Trust pursuant to the Bankruptcy Court's Confirmation Order.

D.  **Objections to Proposed Prospective Insurer Agreement.**

   1. **Governing Law.**

The court, in ruling on a motion for preliminary approval of a class settlement, must have an adequate record before it. *See Woullard v. State Farm Fire and Cas. Co.*, C.A. No. 1:06-cv-1057 LTS-RHW, 2007 WL 208519, at *7 (S.D. Miss. Jan. 26, 2007) (where court denied motion for preliminary approval, noting that "[i]n the absence of substantially more information than I now have before me, I am unable to say, even preliminarily, that the proposed settlement establishes a procedure that is fair, just, balanced, or reasonable"). "[A] [c]ourt should not approve a settlement, even a preliminary one, without any basis other than the joint assertion of the parties that it is appropriate." *Collins v. Sanderson Farms, Inc.*, C.A. No. 06-2946, 2007 WL 1347791, at *1 (E.D. La. May 3, 2007). "Counsel for the class and the other settling parties bear the burden of persuasion that the proposed settlement is fair, reasonable, and adequate." *In re Electronic Data Systems*, No. 6:03-MD-1512, 6:03-CV-126, 2005 WL 1875545, at *3 (citing to Manual for Complex Litigation (Fourth) § 21.631). Moreover, "[i]f the Court finds portions of the proposed settlement problematic, it may indicate preliminary disapproval of the agreement and recommend that the parties make certain revisions or modifications." *Cope*, No. CIV.A. 98-3599, 2001 WL 333102, at *1 (Fallon, J.).

Courts in this circuit—including this Court—have denied motions for preliminary approval of class settlements on numerous occasions. *See Cope v. Duggins*, No. CIV.A. 98-3599, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2001) (Fallon, J.) (denying plaintiffs' and defendants' Joint Motion for Preliminary Approval of Class Settlement); *Billitteri v. Securities America, Inc.*, 2011 WL 1033647, Nos. 3:09–cv–01568–F, 3:10–cv–01833–F (N.D. Tex. Mar. 21, 2011) (denying representative plaintiff's motion for preliminary approval of partial class action settlement); *Woullard*, C.A. No. 1:06cv1057 LTS-RHW, 2007 WL 208519, at *7 (denying motion for preliminary approval of class settlement); *In re Electronic Data Systems Corp. "ERISA" Litigation*, No. 6:03-MD-1512, 6:03-CV-126, 2005 WL 1875545, at *1 (E.D. Tex. June 30, 2005) (denying preliminary approval of the settlement).

### 2. **WCI Trust's Objections.**

It does not appear that the WCI Trust's unique position in this litigation has been fully vetted by the PSC and the insurers in formulating the current Agreement. The WCI Trust would like to address with the PSC and the insurance carriers issues specific to the WCI Trust. As the Agreement currently stands, there are a number of ambiguities, inconsistencies, and unanswered questions that need to be clarified before the Agreement should be approved—even preliminarily. Most notably, the Agreement appears to significantly impair the WCI Trust's rights by granting broad releases to the WCI Trust's insurance. The WCI Trust is concerned that unless some significant revisions are made to the Prospective Insurer Agreement, the WCI Trust will have no alternative but to formally opt-out of this Agreement and litigate its objections.

Specifically, the WCI Trust objects to preliminary approval of the proposed Prospective Insurer Agreement because the parties have had only one business day to prepare and file objections. As such, this Objection is necessarily preliminary in nature and some of the WCI Trust's grounds for objection are presented in an abbreviated fashion. The WCI Trust reserves the right raise any and all of these issues, as well as any other issue or concern, in an objection to final approval of the Prospective Insurer Agreement. Finally, given the time restrictions associated with this Objection, the Trustee of the WCI Trust has not had an opportunity to convene a meeting with the members of the Advisory Board—some of whom are also members of the PSC—to get their views on the Objection. Accordingly, the WCI Trust reserves the right to supplement or modify this Objection, in whole or in part, prior to the May 31, 2012, preliminary approval hearing.

### a. **The Prospective Insurer Agreement Is Incomplete and Fails to Include Vital Information.**

The proposed Agreement lacks certain key information that is critical to the Agreement. This Court has not been provided any information as to the total potential insurance coverage that is being given up in exchange for the $80 million Settlement Fund. Further, no disclosure is made of who is paying what, who is receiving what, what if anything the WCI Trust will receive, what if anything the WCI Trust's individual beneficiaries will receive, which of the WCI Trust beneficiaries are Class Members and have homes that will be fully remediated by Knauf, what the specific allocation of the settlement proceeds will be, how much of the $80 million Settlement Funds will be paid out to individual claimants, and how much will be transferred into one of the two Knauf funds. Additionally, Exhibit 2 of the Agreement should be supplemented to identify

exactly which insurance policies sold by each of the Participating Insurers are being compromised and released, and the amount of claims that have been made against those policies. Among other things, the Participating Insurers should disclose all WCI-related insurance policies impacted by this Agreement along with detailed information regarding limits (products/premises) and impairment, erosion and exhaustion expectations. Without this information, neither the WCI Trust nor the Court can appropriately determine whether the settlement as a whole is fair and reasonable and whether each Participating Defendant's and/or each Participating Insurer's contribution to the proposed settlement is fair and reasonable.[8] Accordingly, the WCI Trust objects to approval of the proposed Agreement. There are simply too many contingencies, ambiguities, and uncertainties in the proposed Agreement for the Court to approve it—even on a preliminary basis.

> b. **The Prospective Insurer Agreement Impermissibly Purports to Release the WCI Trust's Claims Against Participating Defendants and Participating Insurers.**

The Agreement is also objectionable in that it purports to release all Participating Defendants and Participating Insurers from the claims and causes of action owned by the WCI Trust—even if the WCI Trust opts out of the Agreement. Section 5.1 of the Agreement provides that the WCI Debtors have released "any and all claims of any kind and nature whatsoever … arising out of, or in any manner related to, Chinese Drywall, the Litigation, CDW-Related Actions or Related Claims…." This provision violates the Bankruptcy Court's Confirmation Order, which transferred all such claims to the WCI Trust and vested the WCI Trust with the sole and exclusive authority to prosecute, settle,

---

[8] Given the fact that the WCI Trust has liquidated Chinese drywall damages in the amount of nearly $82 million based on the very standards set forth by this Court in its "bell weather' trials, it seems evident that the $80 million face amount of the Settlement Funds is grossly insufficient.

11

and receive the recoveries on account of all of the WCI Debtors' Chinese Drywall Actions, Insurance Coverage Actions, and Insurance Recoveries. Moreover, there is no language in section 5.1 to preserve the WCI Trust's claims and causes of action in the event that the WCI Trust opts-out from the Agreement. Instead, the Agreement purports to fully and forever release all claims owned by the WCI Trust against all Participating Defendants and Participating Insurers.

Other provisions in the Agreement are likewise deficient. For example, section 5.2 specifies that "each Class Member, and any person or entity claiming by, through, and/or on behalf of a Class Member, hereby fully, finally, and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits and forever discharges any and all Released Claims against (a) the Participating Defendant Released Parties and (b) Participating Insurer Released Parties." Similarly, section 5.3.1 provides that "any person or entity claiming by, through, and/or on behalf of a Participating Defendant hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits, and forever discharges any and all Released Claims against all Class Members, all Participating Defendant Released Parties and all Participating Insurer Released parties."[9] These provisions, and other similar provisions in the Agreement,[10] appear to require the WCI Trust to release all of its claims regardless of whether the WCI Trust opts out of the Agreement or not. Because the Agreement purports to release all Participating Defendants and Participating Insurers from the claims owned exclusively by the WCI Trust, the Agreement should not be approved.

---

[9] The WCI Trust satisfies the definition of "Class Member," and also is an entity claiming by, through, or on behalf of a Participating Defendant.

[10] *See, e.g.,* Agreement, sections 1.1.1, 5.6.2, 6.2.2, and 6.3, among others.

### c. The Release of Participating Insurers Is Overbroad.

As the PSC admits, the Proposed Insurer Agreement is designed to operate in conjunction with the proposed Knauf Settlement Agreement. *See* Preliminary Approval Motion, at p. 4. The Agreement purports to release all Participating Insurers from all claims, even if the home in question does not satisfy the prerequisites for remediation by Knauf. Yet we don't know today, nor does the Court know, which homes (and how many) will or will not satisfy the standards for remediation by Knauf. Hence, claimants (including the WCI Trust) are basically forced to "bet the come" and hope that their home eventually satisfies the standards to be remediated by Knauf. If it does not, the claimant will have fully released its potential claims to recover from other Participating Defendants in the claimant's chain of supply, and more importantly, fully released all claims to all insurance coverage, in exchange for some un-defined recovery from that portion of the Settlement Fund that is attributable (after payment of attorneys fees and other costs) to Non-KPT Chinese Drywall. In fact, given the overly broad releases granted to Participating Insurers, the Agreement as drafted appears to vitiate claims (including the WCI Trust's claims) for potential insurance coverage even for those homes that contain Taishan Chinese drywall or Chinese drywall from any of the other Non-Participating Defendants listed in section 1.13.

The Settlement contains other provisions that, on their face, purport to resolve all claims against Participating Defendants and Participating Insurers, regardless of whether the claimant has "opted out" of the Agreement and regardless of whether the claimant is entitled to any recovery under the accompanying Knauf Settlement Agreement. These provisions should be revised so that they release only those claims asserted by Class

Members who elect to participate in the settlement (*i.e.*, Class Members who do not timely opt-out).

### d. Other Grounds for Objection.

i. Under the Prospective Insurance Agreement, the WCI Debtors are defined as "Participating Defendants" and specifically identified on Exhibit 1. Thus, the Agreement contemplates that the WCI Debtors (and/or their insurers) will contribute toward the settlement. *See* section 4.1.1 (stating that each of the entities listed in Exhibit 1 (including the WCI Debtors) must pay an amount set out in the "Mediator's confidential settlement proposal"). The WCI Trust has not been provided with a copy of the Mediator's confidential settlement proposal to the WCI Debtors, if any exists, but the WCI Debtors have no legal obligation to pay any amount toward the proposed settlement given their bankruptcy filing and their confirmed Plan. In fact, by listing the WCI Debtors on Exhibit 1, the Agreement appears to violate the Plan and Confirmation Order that release and exculpate the WCI Debtors from all claims and enjoin claimants from pursuing claims (specifically including Chinese drywall claims) against the WCI Debtors. *See, e.g.,* Confirmation Order, ¶ J. Moreover, pursuant to the Confirmation Order, the WCI Trust now controls every aspect of the WCI Debtors' Chinese drywall claims, and the Trustee of the WCI Trust is the only party that can consent to the inclusion of the WCI Debtors in the proposed Agreement. The Agreement, however, purports to include the WCI Trust without the Trustee's consent. Accordingly, for the reasons stated above, the WCI Trust objects to the inclusion of the WCI Debtors on Exhibit 1.

ii. Section 5.6.1. attempts to exempt certain insurance policies, but it does not reference the Participating Insurer Released Parties which the Agreement otherwise releases. *See, e.g.*, section 5.3.1. Hence, all claims for insurance coverage from Participating Insurers, or on account of any Participating Defendant, may be released even if those insurance coverage claims would otherwise provide coverage for Chinese drywall sold by a Non-Participating Defendant. The Agreement should be modified to clarify that no Participating Defendant or Participating Insurer is released from any claim relating to Non-KPT Chinese Drywall, at least with regard to any claimant that timely opts-out of the Agreement.

iii. Even if the WCI Trust opts out, the Agreement may nonetheless eliminate the WCI Debtors' insurance rights against 16 of the entities listed "Participating Defendants" under whose policies one or more of the WCI Debtors are named as additional insureds. Given that 100% of the WCI Debtors' insurance rights are now vested in the WCI Trust pursuant to the Confirmation Order, this provision needs additional clarification.

iv. The agreement appears to require that the WCI Trust Insurance Litigation in the MDL will be released, and that the WCI Trust will release each of the insurance companies against which it is litigating. Yet the Agreement provides no consideration to the WCI Trust in exchange for these releases. The WCI Trust welcomes the opportunity to sit down with the PSC and the insurance carriers to work through these issues. As things currently stand, however, the WCI Trust may be compelled to opt out to preserve its rights. In addition, further objections to the

Agreement may be necessary given that the Agreement does not appear to adequately preserve the WCI Trust's rights even if the WCI Trust opts-out.

     v. Section 16 does not set out a specific allocation methodology detailing how the Settlement Funds will be allocated among all Class Members that do not opt out. The Agreement should not be approved unless potential Class Members are told how the Settlement Funds will be allocated.

     vi. The totality of the Settlement Fund appears to be insufficient on its face. The WCI Trust alone has submitted an insurance coverage claim in the amount of $81.414 million (that amount has now grown to nearly $82 million and will continue to grow if the WCI Trust approves additional Chinese drywall claims). The totality of this entire settlement is only $80 million, less nearly $10 million in prior settlement, less an additional 5% for the mediator's costs and noticing costs, and less an additional 32% for attorney's fees. Then, as set forth in the Knauf Settlement Agreement, the Settlement Fund will be further depleted by that portion of the remaining Settlement Fund attributable to homes with KPT Chinese Drywall. At the end of the day, even with a conservative assumption that only half of the remaining Settlement Funds will be attributable to homes containing KPT Chinese Drywall, the funds available for distribution to Class Members with Non-KPT Chinese Drywall will likely be relatively de minimus.

     vii. Under section 16.7, the PSC reserves the right to claim attorneys' fees and costs against those parties that opt out. The WCI Trust is not aware of any legal justification for this proposition.

      viii. Section 5.3.4. mandates that all Participating Defendants warrant that they have not assigned their claims against the Participating Insurers. This provision is inconsistent with the Bankruptcy Court's Confirmation Order, which provides that the WCI Debtors have assigned all their rights to the WCI Trust. The WCI Debtors simply cannot agree to this warranty.

      ix. Section 5.6.10 preserves the rights of insurance companies to enforce fronting policies. The WCI Trust owns certain insurance rights relating to a fronting policy issued to the WCI Debtors by Chartis. Chartis could demand payment from the WCI Debtors while the WCI Debtors are forced, under this language, to release their claim for the deposit given to Chartis under the fronting policy (which deposit is now owned, at least in party, by the WCI Trust). There is no justification for this attempt to insulate Chartis from its obligations under the fronting policy issued to the WCI Debtors.

      x. Section 17.4 requires the Court to make findings that extinguish all bad faith claims (statutory or common law) against Participating Insurers by "potential" Class Members. Section 17.4 likewise precludes "potential" Class Members from pursuing such claims (apparently even if they opt out), while expressly preserving all claims the Participating Insurers have against those entities. The WCI Trust does not believe that the Court should condone this type of unfair advantage for the Participating Insurers. Similarly, section 17.10 requires the Court to find that the settlement is the product of "arm's length negotiations." Again, the WCI Trust does not believe there is any legal basis for such a finding.

**E.** **<u>Conclusion</u>.**

For the reasons set forth above, the WCI Trust hereby objects to the Preliminary Approval Motion. The Proposed Insurer Agreement should not be approved—even preliminarily—given the overbroad releases and the apparent ambiguities and other unanswered questions in the proposed Agreement, particularly as they apply to the WCI Trust.

**F.      Reservation.**

This Objection is not intended to impact the right of any individual homeowner, including the WCI Trust beneficiaries, to participate as a Class Member in the proposed Prospective Insurer Agreement.

**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**

**A PROFESSIONAL CORPORATION**

By:   */s/ Sander L. Essserman*
     Sander L. Esserman
     State Bar No. 06671500
     Jacob L. Newton
     State Bar No. 24046523

2323 Bryan Street, Suite 2200
Dallas, Texas  75201-2689
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

**ATTORNEYS FOR THE WCI CHINESE DRYWALL PROPERTY DAMAGE AND PERSONAL INJURY SETTLEMENT TRUST**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **OBJECTION BY THE WCI CHINESE DRYWALL PROPERTY DAMAGE AND PERSONAL INJURY SETTLEMENT TRUST TO THE PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IN MDL NO. 2047 REGARDING CLAIMS INVOLVING BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS** has been served on Plaintiffs' Liason Counsel, Russ Herman and Defendants' Liason Counsel, Kerry Miller, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 23rd day of May 2012.

　　　　　　　　　　　　　　　　　　　　　　　　_/s/  Heather J. Panko_　　　
　　　　　　　　　　　　　　　　　　　　　　　　Heather J. Panko