IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 09-2047<br><br>SECTION L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL CASES | MAG. JUDGE WILKINSON |

### RESPONSE OF THE NORTH RIVER INSURANCE COMPANY TO THE PSC'S MOTION TO COMPEL 30(b)(6) DISCOVERY FROM NORTH RIVER

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Motion to Compel 30(b)(6) Discovery ("Motion") filed by the Plaintiff's Steering Committee ("PSC") is outrageous and abusive. Defendant The North River Insurance Company ("North River") presented its corporate representative for deposition on May 15, 2012, on fifteen topics designated by the PSC. The deposition transcript is 173 pages long and occupied almost four hours of testimony. Out of the hundreds of questions asked by counsel for the PSC, North River instructed its witness not to answer approximately fourteen questions. The instructions not to answer were given because each of the offensive questions (a) called for information protected by the attorney-client or work product privileges, (b) exceeded the scope of permissible discovery established by the Court on April 19, 2012, (c) was outside the scope of the deposition notice, or (d) involved North River's settlement strategy. Nowhere in its Motion does the PSC identify why any of the instructions not to answer was inappropriate or incorrect.

The most absurd portion of the Motion is the PSC's contention that, because North River refused to allow its representative to respond to improper questions, the Court should compel North River to bring to the May 31, 2012 mediation a specific officer of North River designated

---

by the PSC. Under Fed. R. Civ. P. 30(a)(3)(B)(i), the only sanction the Court can impose is to compel an answer to the question or questions to which the instruction not to answer was inappropriate. The PSC's attempt to ignore the limitations of the rules of procedure and blatantly abuse the discovery process is egregious and impermissible.

The few instances in which North River's representative at the deposition declined to answer questions were proper and appropriate. There is nothing for the Court to compel; the Motion does not even attempt to identify *a single question* within the scope of permissible discovery that North River declined to answer. If there is any merit to the Motion – and North River wants to make it clear to the Court that the Motion has no merit – then the appropriate remedy is to identify which specific questions should have been answered and allow a continuation of the 30 (b)(6) deposition on those questions only. It is not appropriate for the PSC to ask any other questions at a continued deposition; it is not appropriate for the PSC to decide who North River's corporate representative witness should be; and it is absolutely not appropriate for the PSC to choose who should attend the mediation on behalf of North River.

### 1.      THE PSC MADE NO ATTEMPT TO DISCOVER RELEVANT FACTS

The deposition notice served on North River by the PSC is attached as Exhibit 1 to this response. Based upon the topics identified in the notice, North River presented Agnes Reiss as its designated representative. Ms. Reiss is Technical Manager of the Latent Claims and CD Unit of United States Fire Insurance Company ("U.S. Fire") and has been the lead person on the INEX claims for more than three years. U.S. Fire provides claims handling services on behalf of North River. The questioner for the PSC made no real effort to inquire into Ms. Reiss's employment history with U.S. Fire, and was surprised to find out late in the deposition that Ms. Reiss holds a law degree and is licensed to practice law in two states.

Prior to the deposition, the parties had spent substantial time on what the proper scope of the deposition should be. The PSC even sought Court intervention which resulted in a telephone conference with the Court on April 19, 2012. In that conference, the Court indicated that it would allow the PSC to inquire into certain topics, even though there is *no pleading* which would make those topics relevant to the case. The PSC issued its deposition notice on May 1, 2012, with the express understanding that neither the PSC nor North River was waiving any rights concerning the scope of the deposition. Despite the PSC's insistence on including fifteen deposition topics, some of which were incredibly broad and several of which overlapped, the PSC asked no questions about topics 1, 4, 5, and 9.

On topic 15, relating to claims and defenses asserted in this litigation (a topic to which North River never objected), the PSC only asked general questions about what claims and defenses had been asserted but asked nothing about the factual basis for North River's defenses. Instead, the PSC had Ms. Reiss read the sixteen-page answer filed by North River in the *Silva* case and then asked her no questions about the answer or the defenses raised in the answer.

Ms. Reiss, on behalf of North River, answered the questions presented to her except the approximately fourteen questions for which North River's counsel instructed her not to answer. Counsel for the PSC repeatedly expressed his appreciation for the witness's responsiveness to the questions put to her. (*See, e.g.*, Ex. B[1] at 68:20-22 ("I want to thank you. You've been cooperative and I appreciate it"); 95:10-13 ("Again, I want to thank you. You've been cooperative and you've been responsive, and I don't mind saying that on the record"); 166:09-11 ("I want to thank you. You've been patient, and I appreciate it. And you've been responsive"); 171:24-172:02 ("I've been through a lot of these. You've got a very impressive background").)

---

[1] The deposition transcript has been submitted to the Court as Exhibit B to the PSC's Motion, filed under seal. References in this response to Ex. B. refer to that sealed exhibit to the PSC's Motion.

Instead of using the deposition to discover relevant facts or contentions, the PSC insisted on a rushed deposition of North River for three purposes: to find out how North River valued the claims at issue in this case; to identify the top-level executives of North River; and to ask improper questions to create a record that North River's representative would not answer certain questions. It would obviously be of great value for the PSC to know how North River and its attorneys value the claims at issue in this litigation, but the PSC's desire to gain an upper hand in mediation or settlement talks does not make North River's work product discoverable. The names and job titles of North River's top executives are not relevant to any issue in the litigation and that line of questioning was undertaken solely to harass and burden those individuals because their names appear at the top of the North River hierarchy. And the PSC tipped its hand on trying to create a record of unanswered questions when, before it asked a single question at the deposition, the PSC announced that if the witness was instructed not to answer, the questioner for the PSC planned "to continue and don't plan to call the judge today. We'll take that up at a separate hearing." (Ex. B. at 8:23-9:02.) It was obvious from that point that the deposition would be used to fabricate a discovery dispute to present to the Court.

If the North River deposition was remarkable for any reason, it is that the PSC did not use the deposition as a discovery tool. Rather than engage in good-faith discovery, the PSC sought to use the deposition to try to gain advantage at mediation and to try to create a discovery dispute that really does not exist. The PSC should not be rewarded for its abusive discovery conduct.

### 2. THE PSC ASKED IMPROPER QUESTIONS

Page 4 of the PSC's Motion lists, in a very summary manner, the questions which the North River representative did not answer at the deposition. Each of those questions falls within one or more of four categories. First, some questions were outside of the scope suggested by this Court on April 19, 2012. At the telephone conference on that date, the Court agreed with North

___

River that the proposed deposition questions "are broad" and "need to be a little bit more streamlined." (Ex. 2 at 34.) After discussing the matter with counsel, the Court instructed the parties that the deposition "ought to be restricted to the INEX situation" and that "we first have to find out what [North River] did in INEX" because the Court did not "think it's helpful to focus on the whole world at this point." (Ex. 2 at 36.)

Second, several of the unanswered questions would have called for information that is privileged. The PSC chose not to have their individual Plaintiffs submit claims to INEX (or any other distributor or any manufacturer) prior to running to the courthouse to file lawsuits. The first notice that North River had of any claims against INEX were when counsel for INEX provided North River with copies of suits filed against INEX. (*See* Ex. 3.)[2] In addition, all of the work done by North River on the INEX claims have been done with the involvement and assistance of counsel who were retained by North River on the day North River was informed of the litigation. (Ex. 3.) Virtually every action taken by North River in connection with the Chinese-manufactured drywall claims was done either after commencement of litigation, with the advice of counsel, or both. That means that most claims handling issues are immune from discovery because of the attorney-client or work product privileges.

Third, some of the questions involved material outside the scope of the deposition. In fact, some of the questions involved matters that were in the original draft notice of deposition sent to North River but were taken out after discussions with North River and the Court and were not included in the final version of the notice.

Finally, several of the questions went to North River's settlement strategy. While there was an attempt to couch these questions in neutral language, the import of these questions was to try to learn, two weeks before a Court-ordered mediation, how North River values the claims at

---

[2] Exhibit 3 is an affidavit of Agnes Reiss that was filed as part of the privilege log submitted by North River to the PSC. The exhibit to the affidavit has not been included with this response.

---

issue in this case. It is not surprising that the PSC offers no apology for its brazen efforts to force open the protected area in which North River analyzes the claims made against it and its insured in the litigation. More importantly, however, the PSC does not offer any justification or authority for such a heavy-handed abuse of the discovery process.

The questions identified on page 4 of the Motion are improper for the following reasons[3]:

1. Claims authority of Agnes Reiss. This question is not limited to the INEX claims and is outside the scope of the deposition established by the Court on April 19, 2012. To the extent that the question intended to seek Ms. Reiss's authority on the INEX claims, that question is outside the scope of discovery and seeks confidential and privileged settlement information.

2. Witness's personal knowledge of Louisiana direct-action statute. This question is outside the scope of the deposition established by the Court on April 19, 2012 and is outside the scope of the deposition notice.

3. Conversations with contractors or estimators. Any such communications would have been made after commencement of litigation and is protected by the work product privilege and the consulting expert privilege.

4. North River's valuation of the claims against INEX. This question is outside the scope of discovery. It is also based on communications with counsel and others involved in the litigation and is protected from discovery by the attorney-client and work product privileges. The question also seeks confidential and privileged settlement information.

5. Reservation of rights letters. Any reservation of rights letter would have been sent after the commencement of litigation and constitutes a communication between INEX and its insurer, which is protected from discovery under Fed. R. Civ. P. 26(b)(3)(A).

---

[3] While the PSC introduces its list of questions with the phrase "For instance," North River believes that this list includes all of the questions at the deposition to which the witness was instructed not to answer.

---

6. Advice in writing to INEX. Any written communication to INEX on this topic would have been sent after the commencement of litigation and constitutes a communication between INEX and its insurer, which is protected from discovery under Fed. R. Civ. P. 26(b)(3)(A).

7. Any computation by Ms. Reiss on the maximum exposure to North River in this litigation. This question is outside the scope of the deposition established by the Court on April 19, 2012 and is outside the scope of the deposition notice. If any such calculation was done at the request of or with the involvement of counsel, it is protected from discovery by the attorney-client privilege.

8. Who is responsible for underwriting INEX policies. This question is outside the scope of the deposition established by the Court on April 19, 2012 and is outside the scope of the deposition notice.

9. Communications between INEX and North River "as the litigation has progressed." Any such communications would have been made after the commencement of litigation and constitute communications between INEX and its insurer which are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A).

10. North River's valuation of the INEX claims. This is in effect the same question discussed in paragraph 4 above. This question is outside the scope of discovery. It is also based on communications with counsel and others involved in the litigation and is protected from discovery by the attorney-client and work product privileges. The question also seeks confidential and privileged settlement information.

11. Process by which reservation of rights letters are issued. This question is not limited to the INEX claims and is outside the scope of the deposition established by the Court on April 19, 2012.

12. Reinsurance. This question is outside of the deposition notice, outside the scope of the deposition established by the Court on April 19, 2012, and outside the scope of discovery.

13. Whether the witness has personally read La. Rev. Stat. 22:1892. This question is outside the scope of the deposition established by the Court on April 19, 2012 and is outside the scope of the deposition notice.

14. Whether certain corporate officers will attend mediation on May 31, 2012. This question is outside the scope of the deposition established by the Court on April 19, 2012 and is outside the scope of the deposition notice. It is also completely irrelevant to the issues in this case.

As these questions show, the PSC's intent in taking the deposition of a corporate representative of North River was not to discover relevant information about the claims. There were several legitimate areas of inquiry within the scope of the notice that could have been undertaken. Instead, the purpose of the deposition was to harass North River, to try to obtain knowledge about North River's settlement strategy in the case, and to create a record of improper questions where the witness would be instructed not to answer as a pretext to come before the Court in an abusive attempt to let the PSC dictate who testifies at deposition on behalf of North River and who will attend the mediation on behalf of North River.

**3. THE PSC'S MOTION INCLUDES SEVERAL INACCURATE STATEMENTS**

There are several statements in the PSC's Motion that are not accurate and that present misleading information to the Court.

On page 2 of its Motion, the PSC states that North River did not produce any documents to the PSC "until [North River] made a data dump just a day or two before the deposition." That is not correct. North River produced copies of its INEX policies to the PSC on May 3, 2012. The policies had been made available to the PSC *years* earlier when they were attached to the

North River insurer profile form. North River produced Louisiana regulatory documents to the PSC on May 4, 2012 (although the PSC chose to ask no questions about them at the deposition).

Even before that, on April 25, North River informed the PSC about what documents were being produced:

> On the document issue, we are working on a privilege log but it will take some time to complete. The first knowledge that North River received of any claims against Interior/Exterior appears to be the same date that North River was notified of litigation against Interior/Exterior, which was by necessity after litigation was commenced. All communications were made not only in anticipation of litigation but after actual litigation commenced.
>
> Most, if not all, of the nonprivileged items that North River has are copies of petitions filed in the underlying suits against Interior/Exterior and various pleadings, other court filings, and depositions relating to the MDL litigation. We suspect that you already have these. If you want us to produce another copy to you, please let us know.

(*See* Ex. 4.) The PSC did not respond to the inquiry about whether it wanted North River to produce copies of publicly-filed documents that were already in the PSC's possession, so North River did so. The PSC had all of the documents produced by North River months or years before the deposition, with the exception of the regulatory documents that the PSC demanded but did not use.

On page 3 of the Motion, the PSC asserts that "the PSC was not provided North River documents to enable the PSC to question regarding [sic] North River's claims handling policies, procedures and guidelines." While it is true that North River did not produce written claims handling guides or procedures, that is because there are no such documents. The PSC learned of this fact at the deposition (Ex. B. at 137:15-18), but chose not to disclose that fact to the Court.

The PSC claims, at page 4 of its Motion, that all of the questions which were not answered by the North River representative "were within the topics set forth" in the deposition notice. That is not correct. While North River objected to several questions on the basis that they were outside the scope of the deposition notice, the PSC has not identified, either at the

deposition or in its Motion, the topic or topics to which those questions relate. For example, one of the questions dealt with reinsurance. That topic was in the draft notice sent to North River by the PSC but, after the April 19 telephone hearing with the Court, the PSC agreed that reinsurance was outside the scope of the deposition set by the Court and removed that topic from the deposition notice. At the deposition, when North River objected to a question about reinsurance because it was outside the scope of the notice and asked the PSC to identify which topic pertained to the question, the PSC refused to respond.[4]

The PSC incorrectly represents to the Court that Douglas Libby, who is the president of North River, "makes decision and has ultimate responsibility and authority as to whether a claim is paid or not." (Mot. at 5.) Ms. Reiss's actual testimony was that Mr. Libby "would certainly have ultimate responsibility for the Company but he has hired a staff of people, including all of us in the claims department, and works closely with us. We'll come to him with our recommendations after handling the claims" and that "there are claims that are settled that do not come to Mr. Libby's attention." (Ex. B. at 12:17-23; 13:21-22.)

Similarly, the PSC asserts that Ms. Reiss "has low level authority and any authority for larger claims needs input from President Libby." (Mot. at 5.) ***There is no such testimony***.

Next, the PSC alleges that Mr. Libby should be ordered to appear at the mediation and to appear for a deposition after the mediation because he has "ultimate authority" and "therefore, he appears to be the individual at North River who has sufficient knowledge and can answer the PSC's 30(b)(6) deposition topics." (Mot. at 5.) There are several fallacies in this argument. First, none of the deposition questions at issue before the Court involve a question which Ms.

---

[4] MR. ANGELLE: Well, I'm simply asking counsel if he can appreciate where it is in the Notice if you can direct me.
MR. HERMAN: I'm not going to answer your questions.
MR. ANGELLE: Okay.
MR. HERMAN: I'm not a deponent.

(Ex. B. at 134:21 – 135:5.)

Reiss could not answer because of a lack of knowledge. Second, nothing in Rule 30(b)(6) allows an opposing party to decide who is an appropriate corporate representative or to allow a court to order that a specific person appear as a corporate representative at a deposition. Third, there is no basis for the PSC to unilaterally decide that Mr. Libby, who is not involved in the daily handling of individual claims, is more knowledgeable about the INEX claims than Ms. Reiss, who has been responsible for handling the claims for more than three years.

The reason that Rule 30(b)(6) requires a listing of topics to be included in the deposition notice is so that the Responding party can decide the appropriate corporate representative deponent for the entity. The corporate representative need not have personal knowledge about every topic in the notice, but is obligated to testify about "information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Ms. Reiss, as the corporate representative of North River, did that. Rule 30(b)(6) does not allow a questioner to spring surprise questions outside the scope of the notice and then claim that a lack of knowledge by the witness allows the questioner to handpick who its opponent's corporate representative must be.

### 4. THE RELIEF REQUESTED BY THE PSC IS WITHOUT MERIT, IMPERMISSIBLE, AND HARASSING

North River properly refused to answer a limited number of questions at its corporate representative deposition because the questions were improper. It is obvious from the deposition transcript that no attempt was made by the PSC to take a discovery deposition. The sole purpose of forcing a corporate representative deposition of North River before the May 31 mediation was to ask improper questions and use the refusal to answer those questions as the pretext for an emergency motion to push the PSC's real agenda: to try to use the Court to deprive North River of the right to determine its own representative to attend the May 31 mediation.

As the PSC repeatedly recognized at North River's deposition, Ms. Reiss was cooperative, responsive, and patient. (*See e.g*. Ex. B at 68:20-22; 95:10-13; 166:09-11; 171:24-

172:02.)[5]  She answered the questions put to her except for the limited number of questions on which North River's counsel instructed her not to answer.  Based on the limited scope of the deposition, the precise questions for which an answer was not given, and the general cooperation and responsiveness of the witness, the PSC had the opportunity to ask all relevant questions.  There is no purpose for resuming the deposition at any point in the future.

If the Court determines, however, that some additional questioning is appropriate, it must be limited to obtaining answers to those questions which should have been answered on May 15 but were not.  The PSC used less than half the deposition time available to it, did not inquire at all about several of the deposition topics, and conducted limited inquiry on other topics.  In its Motion, the PSC seeks an order that North River be compelled to appear and answer "all appropriate questions," but the PSC has already had an opportunity to ask "all appropriate questions."  (Mot. at 5.)  The PSC's decision not to ask certain questions is not a sufficient reason to require a second deposition.  It is only if North River wrongfully refused to answer a specific question at the deposition that any additional questioning would be appropriate.  If the deposition is going to be continued, it must be limited only to questions for which North River's counsel incorrectly instructed the witness not to answer.

An appropriate remedy would not include a Court order identifying a specific person, whether it is Mr. Libby or someone else, to appear as the designated corporate representative.  The PSC cited no authority for its outlandish request that it be allowed to choose North River's corporate representative for the obvious reason that no such authority exists.  Rule 30(b)(6) allows North River to determine who will testify on its behalf.

It is even more ridiculous for the PSC to ask the Court to compel Mr. Libby to appear at the mediation.  Under Fed. R. Civ. P. 30(a)(3)(B)(i), if a deponent wrongfully fails to answer a

---

[5] Ms. Reiss was also the representative of an insurer who attended the court-ordered mediation in the FEMA Trailer Litigation and obtained a settlement of all claims involving the insurer.

---

question at a deposition, the only relief that a court can order is to compel an answer. A court cannot use the conduct of a witness at a deposition as the basis for ordering a specific individual to appear at mediation on behalf of the party. The PSC's demand that the Court exceed the powers granted the Court under Rule 37 is itself an abuse of the discovery process and justifies the imposition of expenses against the PSC under Fed. R. Civ. P. 37(a)(5)(B).

## CONCLUSION

North River presented a corporate representative who, by the PSC's own acknowledgement, was cooperative and responsive. The few questions that she did not answer, at the instruction of counsel, were improper and had nothing to do with the issues in this case or with the scope of the deposition established by the deposition notice and the Court's April 19 instructions. There is no basis for allowing the PSC to continue with the deposition of North River.

If the Court concludes that North River incorrectly instructed its representative not to answer one or more of the fourteen questions to which an answer was not given, the only relief that the PSC can seek is an order compelling an answer under Fed. R. Civ. P. 37(a)(3)(B)(i). The Court cannot compel North River to present a different representative for the deposition, nor can the Court compel the attendance of a specific officer of North River at the May 31 mediation.

For those reasons, the PSC's Motion to Compel should be denied in its entirety or, alternatively, the Court should limit any relief to compelling an answer to questions that were not answered on the instruction of counsel, as required by Fed. R. Civ. P. 30(a)(3)(B)(i).

        Respectfully submitted,

        THOMPSON COE COUSINS & IRONS LLP

By:        ***/s Eric B.Berger***
        BRIAN S. MARTIN, ESQ.
        KEVIN RISLEY, ESQ.
        RODRIGO "DIEGO" GARCIA, JR., ESQ.
        One Riverway, Suite 1600
        Houston, Texas 77056
        Phone: (713) 403-8282
        Fax:  (713) 403-8299
        bmartin@thompsoncoe.com

        LOBMAN CARNAHAN BATT ANGELLE & NADER

        SIDNEY J. ANGELLE, ESQ.
        La. Bar No. 1002
        ERIC B. BERGER, ESQ.
        La. Bar No. 26196
        400 Poydras Street, Suite 2300
        New Orleans, Louisiana 70130
        Phone: (504) 586-9292
        Fax:   (504) 586-1290
        sja@lcba-law.com
        ebb@lcba-law.com

        ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on May 24, 2012.

                ***/s Eric B. Berger***
                ERIC B. BERGER