## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES AND | JUDGE FALLON MAG. JUDGE WILKINSON |
| *Payton, et al. v. Knauf Gips, KG, et al.* Case No. 2:09-cv-07628 (E.D. La.) | |
| *Wiltz, et. al.  v. Beijing New Building Materials Public Limited Co. et. al.,* Case No. 2:10-cv-00361 (E.D. La.) | |
| *Gross, et al. v. Knauf Gips, KG, et al.* Case No. 2:09-cv-06690 (E.D. La.) | |
| *Rogers, et al. v. Knauf Gips, KG, et al.* Case No. 2:10-cv-00362 (E.D. La.) | |
| *Amato, et al. v. Liberty Mutual Ins. Co., et al.* Case No. 2:10-cv-932 (E.D. La.) | |
| *Hernandez, et al. v. AAA Insurance, et al.,* Case No. 2:10-cv-3070 (E.D. La.) | |
| *Able, et al. v. Taishan Gypsum Co., Ltd., et al.* Case No. 2:11-cv-00080 (E.D. La) | |
| *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 2:11-cv-00252 (E.D. La.) | |
| *Haya v. Taishan Gypsum Co., Ltd.* Case No. 2:11-cv-1077 (E.D. La.) | |
| *Vickers, et al. v. Knauf Gips KG, et al.* Case No. 2:09-cv-04117 (E.D. La.) | |

**ORDER & REASONS PRELIMINARILY APPROVING THE SETTLEMENT AGREEMENT REGARDING THE CLAIMS INVOLVING BUILDERS, INSTALLERS, SUPPLIERS, AND PARTICIPATING INSURERS, CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, APPROVING THE FORM NOTICE TO CLASS MEMBERS,**

**AND STAYING CLAIMS AGAINST BUILDERS, INSTALLERS, SUPPLIERS, AND PARTICIPATING INSURERS[1]**

Before the Court is the Joint Motion of Proposed Settlement Class Counsel and the Plaintiffs' Steering Committee ("PSC") for an Order: (1) Preliminarily Approving the Settlement Agreement in MDL No. 2047 Regarding the Claims Involving Builders, Installers, Suppliers and Participating Insurers; (2) Conditionally Certifying a Settlement Class; (3) Approving the Form Notice to Class Members; (4) Scheduling a Joint Fairness Hearing; and (5) Staying Claims Against Builders, Installers, Suppliers, and Participating Insurers.  (R. Doc. 14404).  The Court received and reviewed briefing on the Motion and presided over oral arguments on May 31, 2012.  The Court granted the Motion at the hearing, but now issues this Order & Reasons to create a written record of the reasons behind its ruling and to establish necessary findings and deadlines to further the litigation.

## I.     BACKGROUND

The present litigation arises from alleged property damage and personal injuries caused by the presence of Chinese drywall in homes and other buildings.  Hurricanes Katrina and Rita devastated the Gulf Coast in 2005, coinciding with a housing boom in new construction, all contributing to a shortage of drywall for the construction and reconstruction of homes in the

---

[1]Capitalized terms used in this Order have the same meaning as those defined in the Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers (hereafter the "Global Settlement"), attached as Exhibit A to the Memorandum of Law in Support of the Motion for an Order:  (1) preliminarily approving the Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers; (2) conditionally certifying a settlement class; (3) approving the form of Notice to Class Members; (4) scheduling a Joint Fairness Hearing; and (5) staying claims against Participating Defendants and Participating Insurers.

United States.  As a result, from approximately 2005 to 2008, Chinese drywall was exported to the United States, changing hands in the chain of commerce, and ultimately installed in thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems.  In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, as well as some homebuilders who repaired these properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties.  Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation.  On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to this Court, the U.S. District for the Eastern District of Louisiana, for coordinated and consolidated proceedings.  *See* (R. Doc. 1).

Since the inception of MDL 2047, approximately three years ago, numerous cases have

been consolidated, containing thousands of claims; the Court has presided over monthly status conferences, hearings, and bellwether trials; it has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, manufacturers; it has issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated several mediations; and almost 15,000 record documents have been filed.  Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.

The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities and the Taishan entities.  After one the Taishan entities was held in preliminary default, the Court conducted a bellwether, evidentiary default hearing. Shortly thereafter, the Court held its first bellwether, bench trial involving one of the Knauf entities.  With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of corrosive gasses, requiring remediation of properties containing this drywall, and issued a remediation protocol for doing so.  Subsequently, the Court began to focus upon the Knauf entities, leaving the Taishan-related claims for a later date.

None of this time, work, and expense was in vain, as a number of notable breakthroughs towards global settlement of all claims have occurred.

The first notable breakthrough towards resolving the MDL litigation came in October 2010, when the PSC and the Knauf entities, Chinese drywall manufacturers, entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf.  In addition to the Knauf entities, a number of defendants in the chain-of-commerce contributed funds to the program.  The pilot program has since been implemented, with homes

being added to and completed on a regular basis since early spring 2011.

The second notable breakthrough occurred in the spring of 2011 when Interior Exterior Building Supply ("InEx"), a major supplier of Chinese drywall in the gulf coast, entered into a class action settlement agreement and the Court preliminarily approved this agreement. This agreement provides for the tendering of all of InEx's primary insurance proceeds, in the amount of $8,000,000, for the benefit of a national class with claims against InEx involving Chinese drywall.

The third notable breakthrough occurred in the summer of 2011, when the Banner entities, also major suppliers of Chinese drywall in the gulf coast, entered into a class action settlement agreement and the Court preliminarily approved this agreement. The Banner settlement agreement provides that Banner and its insurers will provide $54,475,558.30 for the benefit of a nationwide class consisting of all persons or entities with claims against Banner arising from or otherwise related to Chinese drywall.

The fourth, and most notable breakthrough, occurred in December 2011, when the Knauf entities entered into a class action settlement agreement with plaintiffs. This proposed global, class settlement agreement is intended to resolve claims made in filed actions which arose out of KPT Chinese drywall installed in properties in the United States. The Court granted preliminary approval of this settlement agreement on January 10, 2012. (R. Doc. 12138).

The fifth breakthrough in the litigation came in March 2012 when L&W, a third major Chinese drywall supplier, entered into a class action settlement agreement. The L&W Settlement is a component of the plan for global resolution of the Knauf/KPT supply chain in this litigation. The Court granted preliminary approval of the L&W settlement agreement on

April 26, 2012.  (R. Doc. 14033).

## II.   SETTLEMENT AGREEMENT

The sixth and present breakthrough in this litigation involves various builders, suppliers, and installers, and these parties' insurers, who have entered into a class action settlement agreement ("Settlement Agreement") with the plaintiffs.  This Settlement Agreement was entered into by the Plaintiffs' Steering Committee on behalf of claimants, except those with affected properties in Virginia, and those Builders, Installers, and Suppliers identified in Exhibit 1 and these defendants' Participating Insurers identified in Exhibit 2.  *See* (R. Doc. 14404-2). The Settlement Agreement provides a total payment of $70,570,000.00 for class members regardless of the type or brand of Chinese drywall in their properties and regardless of whether they filed their claims in the MDL or another forum.  *See id.*  The settling defendants deny any liability, causation or damages.  *See id.*  There are approximately 580 Participating Defendants and approximately 80 Participating Insurers.  *See id.*  The settling defendants are required to deposit up-front a non-refundable 5% of the total sum to be paid; this sum is to go towards the mediator's costs and costs of class notice.  *See id.*

Individual notice of the Settlement Agreement will be sent by first-class mail to class members with claims in Chinese drywall-related actions who are identifiable through Plaintiff Profile Forms, other available records, and their counsel.  *See id.*  Additional notice will be published in mass media, such as newspapers, periodicals, press releases, and the internet.  *See id.*  Following the class notice period, Class Members will have an opportunity to opt-out of or file objections to the Settlement Agreement.  *See id.*  After the close of the notice, opt-out, and objection period, the PSC is to move for final approval of the Settlement Agreement and final

certification of the Class.  *See id.*

If the Court enters final approval of the Settlement Agreement, the Class Members have 30 days to file motions to dismiss with prejudice all Chinese drywall-related actions which assert claims against the Participating Defendants.  *See id.*  Thereafter, the Court is to enter a bar order and permanent injunction against any and all pending or future claims or suits by Class Members against the Participating Defendants.  *See id.*  The Participating Defendants may withdraw from the Settlement Agreement on a variety of bases, including the failure to reach a plan for allocation and if Knauf terminates its own settlement agreement.  *See id.*  However, the withdrawal of individual Participating Defendants does not terminate the Settlement Agreement. *See id.*

If the Settlement Agreement receives final approval, the Court retains continuing jurisdiction over the Agreement and is authorized to establish a procedure for allocation of the settlement funds.  *See id.*  The Court will appoint an allocation committee comprised of the interested parties and receive a report from this committee to assist it in the allocation process. *See id.*

In exchange for the payments made by the Participating Defendants, they will receive a full release from Class Members.  *See id.*

The PSC, Class Counsel, common benefit attorneys, and privately retained attorneys are entitled to petition the Court for attorneys' fees, including common benefit fees, up to 32% of the settlement funds, with no more than 15% of the funds reserved for common benefit fees, and reimbursement of reasonable expenses, excluding the costs of notice.  *See id.*

This Settlement Agreement is part of the larger series of class settlements discussed above and seeks to fill-in a large piece of the global settlement puzzle.  The Settlement

7

Agreement was contemplated by the Knauf Settlement Agreement, which is contingent upon its approval and execution, and is designed to operate in conjunction with the Knauf Settlement Agreement.

## III.    PRESENT MOTION

### A.    Movant's Position

The Proposed Class Counsel and the PSC move for a preliminary approval order of the Settlement Agreement regarding claims involving builders, installers, suppliers, and these defendants' participating insurers and a conditional certification of the Class pursuant to Rule 23.  Movants seek to have the preliminary approval order include preliminary findings by the Court that: (1) the Settlement Agreement is fair, reasonable, and adequate; (2) the requirements for conditionally certifying the Class under Rule 23(a) and Rule 23(b)(3) have been met; and (3) Class Members shall be notified of the terms of the Settlement Agreement and their rights in connection with the Agreement.  In addition, Movants seek that the Court: (1) approve the form of Class Notice; (2) schedule a joint fairness hearing to determine whether the Settlement Agreement should be given full approval; (3) establish dates for the dissemination of the Class Notice, opt-outs, withdrawals, and objections to the Settlement Agreement; and (4) stay all claims against Participating Defendants and Participating Insurers.

In support of their Motion, the Movants argue that the Settlement Agreement will provide substantial benefits to the Class Members and constitutes a significant recovery for the Class Members, especially given the procedural posture of the litigation, the range of estimates of damages, the financial condition of the Participating Defendants, the risks and uncertainty regarding apportionment of liability to the Participating Defendants, and the information revealed during discovery and settlement negotiations.  Movants note the serious obstacles to

8

establishing both liability and damages against the Participating Defendants, evidenced by the fact that several Participating Defendants have prevailed on coverage actions.

The Movants argue that the Settlement Agreement is in the best interest of the Class and the requirements of Rule 23 have been satisfied for conditional certification of the Class. They seeks a provisional stay on the claims against Participating Defendants. Also, they seek approval of the proposed notice and schedule for the relevant deadlines.

**B.      Objections to the Motion**

Originally, three objections were filed to the present Motion. Prior to the hearing, however, Mercedes Homes, LLC withdrew its objection, *see* (R. Doc. 14498), leaving the two following objections.

1.      *Objection by the WCI Chinese Drywall Property Damage and Personal Injury Settlement Trust*

The WCI Chinese Drywall Property Damage and Personal Injury Settlement Trust ("WCI Trust" or "WCI")) filed an Objection to the present Motion on the basis that the Settlement Agreement contains a "host of ambiguities, inconsistencies, and unanswered questions." (R. Doc. 14429). WCI Trust, with Judge Robert C. Pate as trustee, was created to assume the Chinese drywall liabilities of WCI Communities, Inc. and 126 of its affiliates after they filed voluntary Chapter 11 petitions in the Bankruptcy Court for the District of Delaware. WCI Trust has a formal distribution procedure for handling Chinese drywall claims, and thus far has approved 334 claims, representing an aggregate liability of over $81 million.

As a threshold matter, WCI Trust complains that given its unique position in the litigation, it should have been considered by the PSC and insurers in formulating the Settlement Agreement. WCI also complains that it lacked sufficient time to respond to the Motion and

reserves its right to supplement its objection.

Next, WCI argues that the Settlement Agreement is incomplete and fails to include vital information.  It faults the Settlement Agreement for failing to contain information as to: the total potential insurance coverage given up in exchange for the $80 million settlement; a disclosure of who is paying what, who is receiving what, and what WCI will receive; which insurance policies are being compromised and released; and all WCI-related policies.

WCI also argues that the Settlement Agreement impermissibly purports to release the WCI Trust's claims against Participating Defendants and Participating Insurers, even if WCI opts-out, in violation of the Bankruptcy Court's orders.

Additionally, WCI argues that the release of participating insurers is overbroad in that it allows for a release even if a Class Member's home is not remediated by Knauf or contains non-Knauf Chinese drywall.  It seeks an amendment to the release language to allow opting-out Class Members to pursue their insurance coverage claims.

Finally, WCI raises a number of miscellaneous objections which include: (1) even though WCI is listed as a Participating Defendant it will not contribute to the Settlement funds because it is barred from doing so by the Bankruptcy Court orders; (2) Section 5.6.1 needs to be clarified to reflect that a Participating Defendant is not released with regard to any opt-out claimant; (3) even if WCI opts-out, the Settlement Agreement may eliminate its rights as an additional insured on a Participating Defendant's policy; (4) WCI is not provided any consideration in exchange for the release against the insurance companies it has claims against; (5) the Settlement Agreement fails to contain a specific allocation methodology; (6) the totality of the Settlement Fund appears to be insufficient on its face; (7) the PSC is not entitled to attorneys' fees and costs for parties that opt-out; (8) Section 5.3.4 mandates that Participating Defendants warrant they have not

10

assigned their claims against the Participating Insurers, but WCI did assign its claims in Bankruptcy Court; (9) Section 5.6.10 preserves the rights of insurance companies to enforce fronting policies, but WCI owns certain insurance rights relating to a fronting policy issued to the WCI debtors by Chartis; and (10) Section 17.4 requires the Court to make findings that extinguish all bad faith claims against Participating Insurers by "potential" Class Members, but this provides an unfair advantage to the insurers.

### 2.     *Common Ground Relief, Inc.'s Objection*

Common Ground Relief, Inc. ("CGR") filed an Objection to the present Motion.  (R. Doc. 14488).  CGR is a nonprofit community development and hurricane recovery organization located in New Orleans, Louisiana, which has been named as a defendant by one plaintiff in the litigation.  It argues that it never supplied drywall or has been part of the drywall chain-of-commerce.  CGR claims it has sought clarification, to no avail, from the steering committees as to its role in the litigation.  It next argues that to the extent it is liable for its alleged role, it would have claims as a Class Member against the Participating Defendants.  The crux of CGR's Objection is that the present Motion is premature because its status is "essentially undefined" in the litigation, and it is concerned that relevant deadlines will pass before it is defined.

## IV.    LAW & ANALYSIS

### A.     Preliminary Fairness Evaluation

While Federal Rule of Civil Procedure 23, governing class actions, does not expressly provide for a preliminary fairness evaluation, "[r]eview of a proposed class action settlement generally involves two hearings," the first of which is a "preliminary fairness evaluation" made by the Court.  Manual for Complex Litigation (Fourth) § 21.632 (2004).  Indeed, within the Fifth Circuit it is routine to conduct a preliminary fairness evaluation prior to the issuance of notice.

*See e.g. Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2011); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1997); *see also* Manual for Complex Litigation § 21.6 (4th ed. 2004)("The two-step process for evaluation of proposed settlements has been widely embraced by the trial and appellate courts.").  During this evaluation, the Court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id*.  Additionally, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."  *Id*.  "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."  Manual for Complex Litigation § 21.6; *see also In re OCA, Inc. Securities & Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008).  "The preliminary hearing...is held to evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing."  *Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2001)(citing Manual for Complex Litigation (Third) § 30.41 (1995)).  "Counsel for the class and the other settling parties bear the burden of persuasion that the proposed settlement is fair, reasonable, and adequate." Manual for Complex Litigation (Fourth) § 21.631 (2004); *In re Vioxx Prods. Liab. Litig.,* 239 F.R.D. 450, 459 (E.D. La. 2006). "If the Court finds portions of the proposed settlement problematic, it may indicate preliminary disapproval of the agreement and recommend that the parties make certain revisions or modifications."  *Id*.

### B.   Class Action Settlement Prior to Class Certification

"Before an initial class ruling, a proposed class settlement may be effectuated by

stipulation of the parties agreeing to a temporary settlement class for purposes of settlement only."  William B. Rubinstein, Alba Conte, and Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2010).  "[A]pproval of a classwide settlement invokes the requirements of Rule 23(e)."  *Id.*  Rule 23(e) provides that "[t]he claims...of a certified class may be settled...or compromised only with the court's approval."  Fed. R. Civ. P. 23(e); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  "Settlement class-cases certified as class actions solely for settlement-can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits."  Manual for Complex Litigation (Fourth) § 21.612 (2004).  However, "[c]ourts have held that approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process."  Manual for Complex Litigation (Fourth) § 21.612 (2004).

While "[s]ettlement is relevant to a class certification," as mentioned above, the criteria of Rule 23, particularly that found in subsections (a) and (b), must still be satisfied.  *Amchem*, 521 U.S. at 619-20.  "Together subsection (a) and (b) requirements insure that a proposed class has 'sufficient unity so that the absent class members can fairly be bound by decisions of the class representatives.'"  *In re FEMA Trailer*, 2008 WL 5423488, at *3 (quoting *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).  All of the requirements of Rule 23(a) are to be met, which provide,

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

As this Court has previously recognized,

The first two requirements focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed 'to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests.' *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008)(quoting *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Additionally, for class certification, at least one of the subsections of Rule 23(b) must be met. To satisfy this requirement, the Movants urge the Court to find subsection (b)(3) is satisfied by the proposed settlement agreement. This subsection provides,

A class action may be maintained if Rule 23(a) is satisfied and if:

-      -      -      -      -      -      -      -      -      -      -

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense or separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

"To succeed under Rule 23(b)(3), Plaintiffs must sufficiently demonstrate both predominance of

14

common class issues and that the class action mechanism is the superior method of adjudicating the case." *In re FEMA Trailer*, 2008 WL 5423488, at *3 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623-24 (5th Cir. 1999)).

### C.   Rule 23 Criteria

Notably, **none** of the responses to the Motion raise any objections to the Rule 23 criteria. The Court will nevertheless review the applicable law on Rule 23 for each criteria and consider the Movants' arguments under each criteria.

#### 1.   Numerosity

As cited above, Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To demonstrate numerosity, the [Movants] must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006)(quoting *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)). Rule 23 does not provide a clear formula for determining whether the numerosity requirement has been met, thus Courts are to evaluate numerosity based upon the facts, circumstances, and context of the case. 1 Newberg on Class Actions § 3:3 (4th ed. 2010). Indeed, "[t]here is enormous disparity among the decisions as to the threshold size of the class that will satisfy the Rule 23(a)(1) prerequisites." *Id.* Although the plaintiff bears the burden of showing joinder is impracticable, "a good-faith estimate should be sufficient when the number of class members is not readily ascertainable," and the numerosity requirement "ordinarily receives only summary treatment...and has often gone uncontested." *Id*.

The Movants argue that numerosity is easily satisfied because of the thousands of plaintiffs who have filed suit against the Participating Defendants and Participating Insurers.

The Court agrees that numerosity is satisfied for purposes of preliminary approval.

    2.    *Commonality*

The commonality requirement under Rule 23(a)(2) requires for maintenance of a class action that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality "does not require that all questions of law or fact raised in the litigation be common.  The test or standard...is qualitative rather than quantitative."  Rubinstein, 1 Newberg on Class Actions § 3:10; *see also In re FEMA Trailer*, 2008 WL 5423488, at *6.  Indeed, "[t]he commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members."  *In re Vioxx,* 239 F.R.D. at 459 (citing *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001)).  The Rule 23(a)(2) commonality "requirement is easily met in most cases."  *Id.*

Movants argue that commonality is also easily satisfied because the Judicial Panel on Multidistrict Litigation ordered the subject cases to be consolidated in the MDL based upon commonality of facts, and the factual and legal issues arising from Chinese drywall, including damages, fault, and apportionment of fault, are common to all claimants.  The Court agrees that these are sufficient bases to satisfy commonality for preliminary approval of the Settlement Agreement.

    3.    *Typicality*

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."  Rubinstein, 1 Newberg on Class Actions § 3:13.  "Thus, a plaintiff's claim is typical if it arises from the same event or

16

practice or course of conduct that gives rise to the claims or other claims members, and if his or her claims are based on the same legal theory.  When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.  However, this is not a foregone conclusion." *Id*.

Movants argue that typicality is satisfied because each of the potential Class Members is seeking money from the settling defendants for the costs of remediation and other damages, and the proposed Class representatives have claims against the settling defendant which are typical of all plaintiffs.  The Courts finds these bases are sufficient to satisfy typicality for purposes of preliminary approval.

#### 4.      *Adequacy of Representation*

Rule 23(a)(4) requires for maintenance of a class action, that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The purpose of this requirement is to protect the legal rights of absent class members.  First, the representatives must not possess interests which are antagonistic to the interests of the class. Second, the representatives' counsel must be qualified, experienced, and generally able to conduct the litigation."  Rubinstein, 1 Newberg on Class Actions § 3:21; *see Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)("[T]he adequacy of representation requirement...also raises concerns about the competency of class counsel and conflicts of interest.").  With regard to the former, a court is to "look at the circumstances of the plaintiff individually to determine if the plaintiff has any conflict with class members."  Rubinstein, 1 Newberg on Class Actions § 3:23.  "Only those material conflicts pertaining to the issues common to the class will bar a class action."  *Id*.  As to the latter requirement, "courts consider

the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* at § 24.

Movants argue that adequacy of representation is satisfied because the named representatives do not possess interests antagonistic to class members, and the proposed Settlement Class Counsel are members of the Plaintiffs' Steering Committee which were selected by the Court based upon their expertise and experience. On these bases the Court finds that adequacy of representation is satisfied here for purposes of preliminary approval.

     5.    *Common Questions of Law & Fact Predominate*

Rule 23(b)(3) provides that a class action is maintainable if all the prerequisites of subsection (a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Factors for the Court to consider in its determination include:

> (A) the class members' interests in individually controlling the prosecution or defense or separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

There is "considerable overlap" between commonality and the predominance of common questions of law and fact, resulting in many courts handling both issues together. Rubinstein, et al., 2 Newberg on Class Actions § 4:22. However, "the predominance test is 'far more

demanding' than the commonality test." *In re FEMA Trailer*, 2008 WL 5423488, at *12

(quoting *Unger v. Amedisys, Inc*., 401 F.3d 316, 320 (5th Cir. 2005)). "To predominate,

common issues must form a significant part of individual cases." *In re Vioxx Prods. Liab. Litig.*,

239 F.R.D. 450, 460 (E.D. La. 2006)(citing *Mullen*, 186 F.3d at 626). "Judicial economy factors

and advantages over other methods for handling the litigation as a practical matter underlie the

predominance and superiority requirements for class actions certified under Rule 23(b)(3)."

Rubinstein, et al., 2 Newberg on Class Actions § 4:24.

     Movants argue that common questions of law and fact predominate because: it makes

good sense to resolve the claims against the participating defendants through the class action

device; the issues of the participating defendants' liability predominate over any individual

issues involving the plaintiffs; a class settlement will insure that funds are available to remediate

the plaintiffs' properties and provide compensation; and given the various suits pending in

different forums, approval of the Settlement Agreement benefits all parties. Finally, the claims

are largely property damage claims, all of which lend themselves to an evaluation based upon

square footage and nature and type of structure. The Court finds these bases support a finding

that common questions of law and fact predominate for purposes of preliminary approval.

     6.   *Fairness, Reasonableness, & Adequacy*

     The Court is also required to render a preliminary determination on the fairness,

reasonableness, and adequacy of the Settlement Agreement. The settling parties argue that

preliminary approval of the Settlement Agreement is appropriate because they reached it after

arm's length negotiations, they possessed adequate information on the strengths and weaknesses

of the litigation, they conducted extensive discovery and briefing on motions, all counsel are

competent and have many years of experience, and the litigation is complex, expensive,

19

uncertain, and has the potential for lengthy duration.  The Court agrees with the settling parties.

It especially finds that preliminary approval is appropriate when the present Settlement

Agreement is considered in the context of all of the settlement agreements entered into thus far

and how these agreements, when combined, will globally resolve plaintiffs' claims.

      Though the objections to the Motion do not directly invoke Rule 23 requirements, the

Court will interpret the non-Rule 23 objections as objections to the fairness, reasonableness, and

adequacy.

      a.      <u>WCI Trust's Objections</u>

      WCI's first objection is that it was not included in the settlement negotiations, resulting

in the contested language in the Settlement Agreement.  This objection can be remedied by

meeting-and-conferring during the notice period in an effort to resolve WCI's issues with the

Settlement Agreement.

      WCI's second objection is that it had insufficient time to respond to the Motion.  The

Court granted an extension of time to file responses and generally is amenable to requests for

extension of time to submit briefing.  This does not prevent preliminary approval.

      Third, WCI argues that the Settlement Agreement is incomplete and fails to include vital

information.  However, much of the information sought, such as which insurers are paying what,

is confidential.  Additionally, because the allocation committee has not yet been assembled and

the Court is in charge of the ultimate allocation, there cannot be a definite amount of money

promised to WCI at this time.  These are not arguments which pose a threat to preliminary

approval of the Settlement Agreement since the allocation committee will be required to provide

a report prior to the final fairness hearing and opt-out/objection deadlines.  Thereafter, it is

appropriate for WCI to raise these objections.

Fourth, WCI argues that the Settlement Agreement impermissibly purports to release WCI's claims against Participating Defendants and Participating Insurers.  The Court's reading the Settlement Agreement, however, is contrary; the Court reads the release provision as releasing claims only for participating Class Members and participating settling defendants.  At the hearing on the Motion, the PSC confirmed the Court's interpretation is correct.  To the extent this provision, or any others, conflicts with the Bankruptcy Court's orders, the parties should meet-and-confer to work out a solution.

Fifth, WCI argues that the release of Participating Insurers is overbroad because it allows the Participating Insurers to be fully insulated from liability without ensuring that Class Members homes will meet the requirements for Knauf remediation or remediation at all.  The Court acknowledges this, but this is a risk to be taken into account by putative Class Members in deciding whether or not to opt-out, and it is not a basis for blocking preliminary approval of the Settlement Agreement.

Sixth, WCI raises miscellaneous objections to the wording of several provisions.  The Court has reviewed these objections and finds that while certain of the wording may be concerning, the objections can be worked out prior to relevant deadlines and if they are not, can be raised at the final fairness hearing.

### b.    CGR's Objections

CGR raises objections to the Settlement Agreement which pertain to its confusion as to whether it constitutes a Participating Defendant under the Settlement Agreement.  However, it will not be a Participating Defendant if it does not agree to put up funds and instead will remain a typical defendant in the litigation with exposure to the single claim against it.  Whether CRG decides to do so is its decision and is not grounds for preventing preliminary approval of the

Settlement Agreement.

    *7.    Proposed Notice*

Rule 23(e)(1) requires "[t]he court must direct notice in a reasonable manner to all class

members would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  For a class certified under

Rule 23(b)(3), as it sought here,

> [T]he court must direct to class members the best notice that is practicable under the
> circumstances, including individual notice to all members who can be identified through
> reasonable effort.  The notice must clearly and concisely state in plain, easily understood
> language:
>> (I) the nature of the action;
>> (ii) the definition of the class certified;
>> (iii) the class claims, issues, or defenses;
>> (iv) that a class member may enter an appearance through an attorney if the
>> member so desires;
>> (v) that the court will exclude from the class any member who requests exclusion;
>> (vi) the time and manner for requesting exclusion; and
>> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  Fed.
>> R. Civ. P. 23(c)(2)(B).

Movants argues that the proposed form and method of Class Notice is adequate and

satisfies the requirements of Rule 23.  They note that they will be providing individual notice by

first-class mail to all Class Members and their counsel, notice will be published in commercial

media sources, and the Settlement Agreement will be posted on the Court's MDL website.

Additionally, with regard to the form of the Notice, the Movants allege it is written in plain and

straightforward language, it objectively and neutrally apprises all Class Members on the nature

of the action, their options as putative class members to remain in the class, opt-out, or object,

and how to do so, as well as relevant dates and locations.  The Courts agrees that the proposed

notice satisfies Rule 23.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that the present Motion is GRANTED,

preliminarily approving the Settlement Agreement.

IT IS FURTHER ORDERED in conjunction with preliminary approval that:

The following nationwide Class is conditionally certified and shall consist of:

> All persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant. A Participating Defendant shall also be a Class Member to the extent the Participating Defendant has remediated the Chinese Drywall in one or more Affected Properties or repurchased an Affected Property. Participating Insurers are not Class Members. Class Members do not include persons or entities with claims involving an Affected Property in the Commonwealth of Virginia.

Paul and Therese Petkin; Felix Diaz; Amelia De Jesus; Richard Sage; Villa at Oak Hammock, LLC; WM Townhomes, LLC; Dean and Dawn Amato; Byron and Debra Byrne; Donald and Marcelyn Puig; Edward and Susan Beckendorf; and Danny and Celeste O'Keefe and each class representative identified in each Omni Complaint and each Complaint in Intervention to an Omni Complaint in MDL 2047 are appointed as Representatives for the Class.

Russ Herman and Arnold Levin are appointed as Class Counsel, and the Plaintiffs' Steering Committee ("PSC") are appointed as Of-Counsel.

The opt-out procedure set forth in Section 8 of the Global Settlement is approved.

The procedure for lodging objections to the Global Settlement as set forth in Section 9 of the Global Settlement is approved.

The attached Notice and Summary Notice is hereby approved.

The protocol for dissemination of Notice to Class Members as set forth in Section 7 of the Global Settlement is approved.

The cost of Notice shall be paid in accordance with sections 4.1.1 and 16.4 of the Global Settlement.

The Notice shall be posted on the Court's Chinese Drywall MDL website so as to commence the Notice period.

Prosecution of all claims and CDW-Related Actions against the Participating Defendants and Participating Insurers, except for Reserved Claims, shall be stayed and enjoined pending the settlement proceedings involving the Global Settlement and further Orders of the Court.

The Settling Parties have reserved all claims and defenses in the Litigation should the proposed Global Settlement not become final for whatever reason.

The Participating Defendants and Participating Insurers have reserved all defenses, including the right to contest certification of the Class *de novo* should the proposed Global Settlement not become final for whatever reason.  If the proposed Global Settlement does not become final, the conditional certification of the Class will be null and void, and the Litigation will proceed as if there had been no Settlement or conditional certification of a Class.

In order to further the litigation, the Court now issues notice, opt-out, objection, and final fairness hearing deadlines and details.  Accordingly, IT IS ORDERED that:

On or before, July 31, 2012, Settlement Class Counsel shall (a) cause the Notice to be sent via first-class mail, postage prepaid to Class Members with claims in the Litigation or in CDW-Related Actions and who are identifiable through Plaintiff Profile Forms and other available records, and their counsel; and (b) request that said Notice be posted on federal and state court websites where the Litigation or where CDW-related Actions are pending and on other publicly available websites and other public places.

On or before, July 31, 2012, Settlement Class Counsel shall initiate efforts to disseminate

24

the Summary Notice:  (a) in newspapers and periodicals as set forth in Section 7 of the Global

Settlement; (b) in a press release; (c) by television as set forth in Section 7 of the Global

Settlement; and (d) in on-line media.

Any Class Member wishing to opt out of the Global Settlement must notify Class

Counsel, Arnold Levin (LEVIN, FISHBEIN, SEDRAN & BERMAN, 510 Walnut Street, Suite 500,

Philadelphia, PA 19106), and Russ M. Herman (HERMAN, HERMAN & KATZ, LLP, 820 O'Keefe

Avenue, New Orleans, LA  70113) in writing, within sixty (60) days after the last date to provide

Notice to the Class, *i.e.*, postmarked no later than September 28, 2012, which is the last day of

the Opt-Out/Objection Period, of their intention to opt out of the Settlement.  No opt- out will be

effective if filed earlier than 30 days after the last date to provide notice to the Class, *i.e.*, if filed

before August 29, 2012.  To be effective, the opt-out notice must set forth the full name and

current address of the person electing to opt out, the address of the property allegedly damaged

by Chinese Drywall and/or the address of the property from which the Class Member alleges

injurious exposure to Chinese Drywall, to the best of the Class Member's knowledge, the

identities or every supplier, installer, builder, developer and its/their insurers, and any other

Participating Defendant and Participating Insurer against which the Class Member intends to

pursue his, or her, or its claims, and a sentence stating:  "The undersigned hereby opts out from

the Builder, Installer, Supplier and Participating Insurer Settlement Class in the Chinese Drywall

Action."  The opt-out notice must be signed by the individual Class Member.

All objections to the proposed Global Settlement shall be mailed to Class Counsel,

Arnold Levin (LEVIN, FISHBEIN, SEDRAN & BERMAN, 510 Walnut Street, Suite 500,

Philadelphia, PA 19106), and Russ M. Herman (HERMAN, HERMAN & KATZ, LLP, 820 O'Keefe

Avenue, New Orleans, LA  70113)**,** in writing, postmarked no later than sixty (60) days after the

last date to provide Notice to the Class, *i.e.*, postmarked no later than September 28, 2012, or they will be deemed waived.  All objections must be signed by the individual Class Member and by his or her counsel, if any.

A formal Joint Fairness Hearing shall take place on November 13, 2012, beginning at 9 o'clock in the a.m., and continuing to November 14, 2012, if necessary, in order to consider comments on and objections to the proposed Global Settlement and to consider whether (a) to approve thereafter the class settlement as fair, reasonable and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure, (b) to finally certify the Settlement Class, and (c) to enter the Order and Judgment provided in paragraph 1.14 of the Global Settlement.

New Orleans, Louisiana this 31st day of May 2012.

_____
U.S. District Judge

# A Class Action Settlement About Chinese Drywall May Affect You

A Settlement has been reached in a class action lawsuit involving drywall imported to the U.S. from China. The lawsuit claims that this Chinese Drywall caused property damage and personal injuries.

The companies being sued are distributors, suppliers, builders, developers, and installers who were associated with Chinese Drywall ("Participating Defendants"), along with their insurance companies ("Participating Insurers"). This Settlement is with the Participating Defendants and the Participating Insurers; all deny they did anything wrong.

### Who's Included?

You are likely included in the Class if you have any claim for property damage or personal injuries related to Chinese Drywall installed anywhere in the U.S., except for in Virginia. For the specific legal definition of the Class, please visit the website or call the phone number below.

### What Can You Get?

Under the Settlement, Participating Insurers will contribute $80 million into a Settlement Fund. At a later date, after other Chinese Drywall Settlements are resolved, the Court will approve a plan to distribute the Settlement Fund to Class Members. At that time, Class Members may receive payments for their damages. You can register at the website below to be updated when a claims process is available.

### Your Other Rights

If you do nothing, you remain in the Class and you may be eligible to receive Settlement benefits. You will be bound by all the Court's decisions. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The deadline to exclude yourself is **September 28**, 2012**. If you do not exclude yourself you will not be able to sue the Participating Defendants or the Participating Insurers for any claim relating to the lawsuit. If you stay in the Settlement, you may object to all or part of it by **September 28, 2012**. The Court will hold a hearing on **November 13, 2012** to consider whether to approve the Settlement and a request for attorneys' fees up to 32% of the Settlement Fund. The Court has appointed attorneys to represent the Class. If you wish, you or your own attorney may ask to appear and speak at the hearing at your own cost.

This notice is only a summary. Use the information below to get detailed information, and to register to receive future notifications about this Settlement and related Chinese Drywall Settlements.

---

## Call:  1-8xx-xxx-xxxx  or Visit www.[SettlementWebsite].com

EXHIBIT B

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO: ALL CASES AND**<br><br>***Payton, et al. v. Knauf Gips, KG, et al.***<br>**Case No. 2:09-cv-07628 (E.D. La.)**<br><br>***Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.***<br>**Case No. 2:10-cv-00361 (E.D. La.)**<br><br>***Gross, et al. v. Knauf Gips, KG, et al.***<br>**Case No. 2:09-cv-06690 (E.D. La.)**<br><br>***Rogers, et al. v. Knauf Gips, KG, et al.***<br>**Case No. 2:10-cv-00362 (E.D. La.)**<br><br>***Amato, et al. v. Liberty Mutual Ins. Co., et al.***<br>**Case No. 2:10-cv-00932 (E.D. La.)**<br><br>***Hernandez, et al. v. AAA Insurance, et al.***<br>**Case No. 2:10-cv-3070 (E.D. La.)**<br><br>***Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.***<br>**Case No. 2:11-cv-00080 (E.D. La.)**<br><br>***Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.***<br>**Case No. 2:11-cv-00252 (E.D. La.)**<br><br>***Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.***<br>**Case No. 2:11-cv-01077 (E.D. La.)**<br><br>***Vickers, et al. v. Knauf Gips KG, et al.***<br>**Case No. 2:09-cv-04117 (E.D. La.)** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION
AGAINST BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS**

TO THE CONDITIONAL SETTLEMENT CLASS, CONSISTING OF:

All persons or entities, along with their heirs, representatives, attorneys, executors,
administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors
and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese
Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way
alleged to be within the legal responsibility of any Participating Defendant.

A Participating Defendant shall also be a Class Member to the extent the Participating Defendant
has remediated or participated in the settlement of claims related to the Chinese Drywall in one
or more Affected Properties or repurchased an Affected Property.

Participating Insurers are not Class Members.

Class Members do not include persons or entities with claims involving an Affected Property in
the Commonwealth of Virginia.[1]

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY: YOU MAY BE
ENTITLED TO RECEIVE A PAYMENT OR OTHER BENEFITS FROM FUNDS TO BE
CREATED PURSUANT TO THE PROPOSED GLOBAL SETTLEMENT DESCRIBED
HEREIN IF YOU ARE A MEMBER OF THE CONDITIONAL SETTLEMENT CLASS.**

The purpose of this Notice is to inform you that:  (a) a class of which you may be a member has
been conditionally certified for consideration of a proposed settlement with the Participating
Defendants and the Participating Insurers; (b) a Settlement Agreement in MDL No. 2047
Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers (the
"Global Settlement"), which provides for the creation of a settlement fund (the "Settlement
Funds") and dismissal of all actions against the Participating Defendants and Participating
Insurers (the Participating Insurers are being released to the extent of the Participating Insurers'
obligations relating to any policies alleged to provide insurance coverage to any Participating
Defendants), was entered into on May 18, 2012, and submitted to the Court for its approval; and
(c) a joint hearing[2] on the fairness, reasonableness, and adequacy of the proposed settlement will
be held on November 13, 2012, in Courtroom C-456 of the United States Courthouse, 500
Poydras Street, New Orleans, LA 70130.

---

[1]  The Participating Defendants and the Participating Insurers are set forth in Exhibits 1 and 2
to the Global Settlement.  A copy of the Global Settlement may be obtained at
http://www.laed.uscourts.gov/drywall/Settlements.htm.

[2]  The Settling Parties have requested a joint fairness hearing with respect to the Global
Settlement as well as other class settlements involving the Knauf Defendants (the "Knauf Class
Settlement") and certain distributors/suppliers of defective Chinese drywall (*i.e.*, InEx, L&W,
and Banner).  Copies of the settlement agreements involving these parties are available at
http://www.laed.uscourts.gov/drywall/Settlements.htm.

Capitalized terms in this Notice have the same meaning as those defined in the Global Settlement.

## Description of the Litigation

On June 15, 2009, the Judicial Panel on Multidistrict Litigation created MDL 2047 in order to consolidate lawsuits brought in several federal district courts in the Gulf Coast and mid-Atlantic regions of the United States by property owners whose homes or other properties were damaged by Chinese Drywall.  Plaintiffs sued the manufacturers of Chinese Drywall as well as homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, and distributors that were involved with Chinese Drywall, and their insurers.  Because Participating Defendants either built the subject properties with the defective Chinese Drywall, installed the defective Chinese Drywall in the subject properties, or supplied the drywall that is installed in the subject properties, complaints were filed against Participating Defendants and Participating Insurers, as well as other defendants, including companies responsible for manufacturing Chinese Drywall.  The Litigation seeks relief on behalf of a class of persons and entities with claims against all of these entities, including Participating Defendants and their insurers, arising out of Chinese Drywall.

The complaints make claims based on strict liability; violations of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §501.203, *et seq.*), other state consumer protection laws, and laws against unfair trade practices; negligence; private and public nuisance; tort; equity and medical monitoring; breach of contract; loss of use; loss of enjoyment; personal injury and related statutory violations; bodily injury; indemnity; contribution; breach of express or implied warranty; redhibition; negligence per se; violation of the Louisiana New Home Warranty Act (La. R.S. 9:3141, *et seq.*), the Louisiana Products Liability Act (La. R.S. 9:28000.51, *et seq.*) and the Louisiana Unfair Trade Practices and Consumer Protection Law (La. R.S. 51:1401, *et seq.*); negligent discharge of a corrosive substance; unjust enrichment; breach of implied warranty of fitness and merchantability (Fla. Stat. § 718.203); breach of implied warranty of habitability; negligent misrepresentation; building code violations (Fla. Stat. § 553.84); and relief by way of subrogation, contractual indemnity, common law indemnity, and/or contribution against Participating Defendants and Participating Insurers.

Participating Defendants and Participating Insurers deny any wrongdoing whatsoever, and specifically deny having committed any violation of any law, claiming that the manufacturers are ultimately responsible for selling Participating Defendants products that the manufacturers certified were safe and fit for use, when in fact the products were defective.  The Participating Insurers also deny coverage and liability for Participating Defendants' conduct.  Participating Defendants and the Participating Insurers likewise deny the existence of any class except for purposes of this Global Settlement, assert certain affirmative defenses, and deny any liability to any member of the Settlement Class.

The Court has not certified a class in the Litigation, other than conditionally for settlement purposes (the "Settlement Class"), and has made no determination that any class could be certified if the Litigation is not settled hereby.  The Court has not determined the merits of any claims or defenses in the Litigation.  This Notice does not imply that there has been any finding of any violation of the law by Participating Defendants or the Participating Insurers or that recovery could be had in any amount.

Counsel for the Settlement Class ("Class Counsel") entered into the Global Settlement after weighing the substantial benefits that Class Members will receive as a result of the Global Settlement against the probabilities of success and failure in securing any recovery from Participating Defendants or the Participating Insurers by means of further litigation and delay. Class Counsel consider it to be in the best interests of the Settlement Class that all of the above-captioned actions and all other claims be settled in accordance with the terms of the Global Settlement as to Participating Defendants and Participating Insurers and believe that the proposed Global Settlement is fair, reasonable, and adequate for the Settlement Class.

Although Participating Defendants and Participating Insurers deny all liability and the existence of any class (other than for settlement purposes) in the Litigation, Participating Defendants and Participating Insurers consider it desirable to settle the Litigation on the terms proposed, to avoid further expense and inconvenience.

## Summary of the Proposed Global Settlement

The Global Settlement is subject to, and becomes effective only upon, final approval by the United States District Court for the Eastern District of Louisiana (the "Court"), the Honorable Eldon E. Fallon presiding. Set forth below is a summary of the principal terms and conditions of the Global Settlement. The complete Global Settlement is on file with the Court; posted in the Clerk's offices at the United States District Courthouse for the Eastern District of Louisiana, Florida courts, and the 34th Judicial District Court, Parish of St. Bernard; published on the District Court's Chinese Drywall MDL website at http://www.laed.uscourts.gov/drywall/Settlements.htm; and available for your inspection as described below.

Amount of Settlement

The Global Settlement provides for the contribution by Participating Defendants and the Participating Insurers, following final approval by the Court, of Settlement Funds in the aggregate amount of $80,000,000.00, including credits described within the Global Settlement, in full settlement of all claims of the Class Members against Participating Defendants and the Participating Insurers (the Participating Insurers are being released to the extent of the Participating Insurers' obligations relating to any policies alleged to provide insurance coverage to any Participating Defendants) arising from or otherwise related to Chinese Drywall that was purchased from, supplied, distributed, marketed, used, sold, delivered, installed and/or in any way alleged to be within the legal responsibility of any Participating Defendant.

 For Affected Properties containing KPT Chinese Drywall, an appropriate portion of the Settlement Funds will be provided to the Knauf Defendants in order to provide remediation benefits to Class Members pursuant to the Knauf Class Settlement and also to compensate Class Members for other losses, including personal injuries. In some instances, Class Members must use the Settlement Funds to assist in the remediation of their Affected Properties.

Definition of "Chinese Drywall"

For purposes of the Global Settlement, "Chinese Drywall" is defined as:

4

any and all drywall products actually or allegedly purchased from, imported, supplied, distributed, marketed, installed, used, sold and/or delivered prior to the Effective Date of this Settlement by or in any way alleged to be within the legal responsibility of any Participating Defendant, which drywall product was allegedly manufactured, in whole or in part, in China, or that include components manufactured, in whole or in part, in China, including, but not limited to, drywall manufactured by Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; Guangdong Knauf New Building Materials Products Co., Ltd.; Knauf Gips KG; Gebrueder Knauf Verwaltungsgesellschaft, KG; Knauf International GmbH; Knauf Insulation GmbH; Knauf UK GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltda.; PT Knauf Gypsum Indonesia; Beijing New Building Materials Public Ltd. Co.; CNBM; Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; The China Corporation, Ltd.; Run & Fly (Jinan) New Building Material Co., Ltd; Baier Building Materials Co. Ltd.

"Chinese Drywall" shall also include any and all drywall products at issue in the Litigation whose origin or manufacturer is not ascertainable.

Purpose of Settlement

In summary, the Settlement Funds will be allocated to pay for and/or reimburse Class Members for the costs of remediating Affected Properties and for other damages with respect to reactive Chinese Drywall.  The Settlement Funds will also be allocated to compensate Class Members for personal injury claims, provided such Class Members meet criteria approved by the Court to determine the validity of any such claims.

Allocation Committee

The Court will appoint an Allocation Committee, which will prepare a recommended allocation plan for consideration by the Court.  By no later than August 15, 2012, the Allocation Committee shall publish on the Court's website, http://www.laed.uscourts.gov/Drywall/Drywall.htm, its written recommendation as to: (i) a fair and equitable plan of allocation of the Settlement Funds; and (ii) the evidence that Class Members will need to provide as part of their Proof of Claim to submit a valid claim.

Following approval of the Global Settlement, the Court will determine a fair and equitable allocation of Settlement Funds, after considering the recommendation of the Allocation Committee, Class Members will have an opportunity to comment on or object thereto.

Proof of Claim Forms

If the Court finally approves the Global Settlement, Proof of Claim forms will be mailed to known Class Members who have not opted out of the Class.  Proof of Claim forms will also be available at http://www.laed.uscourts.gov/drywall/Settlements.htm.  Proof of Claim forms may also be obtained from Russ M. Herman (Herman, Herman & Katz, LLP, 820 O'Keefe Avenue, New Orleans, LA  70113, telephone no. (504) 581-4892).

All Class Members who receive in excess of the Section 111 threshold of the Medicare, Medicaid & SCHIP Extension Act of 2007 ("MMSEA") in effect at the time the Settlement is Final must provide the Participating Defendants and Participating Insurers with their full name, date of birth, social security number, and gender, as well as any other information necessary for the Participating Defendants and Participating Insurers to comply with their reporting obligations under the MMSEA.

Knauf Class Settlement

The Global Settlement is designed to operate in conjunction with the Knauf Class Settlement. A copy of the Knauf Class Settlement is posted on the District Court's Chinese Drywall MDL website at http://www.laed.uscourts.gov/drywall/Settlements.htm. Settlement Funds from the Global Settlement are to be initially allocated between claims that involve KPT Chinese Drywall and claims that do not involve KPT Chinese Drywall.

The Settlement Funds that are allocated to claims that do not involve KPT Chinese Drywall will be further allocated to eligible Class Members in a procedure to be established by the Court.

The Settlement Funds that are allocated to claims involving KPT Chinese Drywall are to be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund, which are to be established pursuant to the Knauf Class Settlement. For additional details concerning the Remediation Fund and the Other Loss Fund, Class Members should refer to the Knauf Class Settlement.

Attorneys' Fees

The Global Settlement provides that the Plaintiffs' Steering Committee ("PSC") appointed by the Court, Class Counsel, common benefit attorneys, and private counsel for Class Members may petition the Court for an award of attorneys' fees constituting, in the aggregate, no more than 32% of the Settlement Funds, with no more than 15% of the Settlement Funds reserved for common benefit fees, plus reimbursement of reasonable expenses, excluding the costs of Notice. The fees and costs incurred in the administration of the Settlement Funds (including the cost of Notice) are to be paid out of the Settlement Funds. The Court will determine the allocation of any fees awarded. Such costs, expenses, attorneys' fees, and administration fees as the Court may award shall be paid out of the Settlement Funds. Participating Defendants and Participating Insurers will not be responsible for any payments beyond their initial contribution to the Settlement Funds.

**Conditional Class Certification**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the Court, dated May 31, 2012, the Court has preliminarily approved the terms of the Global Settlement to the extent that this Notice is being sent to the Settlement Class, which has been determined by such Order to exist for settlement purposes only. The Settlement Class shall consist of:

> All persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed,

installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant.

A Participating Defendant shall also be a Class Member to the extent the Participating Defendant has remediated or participated in the settlement of claims related to the Chinese Drywall in one or more Affected Properties or repurchased an Affected Property.

Participating Insurers are not Class Members.

Class Members do not include persons or entities with claims involving an Affected Property in the Commonwealth of Virginia.

The Court has not certified a class in the Litigation for any other purpose and has made no determination that any class could be certified if these litigations are not settled hereby. Although the Court has indicated such preliminary approval of the Global Settlement, this Notice is not an expression of any opinion by the Court as to the merits of the claims and defenses which have been asserted in the Litigation.  If the Global Settlement is not finally approved, the conditional certification of the Settlement Class will be null and void, and the Litigation will proceed as if there had been no settlement, conditional certification, or notice.

### Opt-Out Process

Class Members may opt out of the Class.  If you elect to opt out, you will be excluded from sharing in the benefits of this Global Settlement and from the binding effect of final approval of this Global Settlement and dismissal of the Litigation as to Participating Defendants and the Participating Insurers.

If you are eligible to participate in the Knauf Class Settlement, you will not be eligible to participate in the Knauf Class Settlement if you opt out of the Global Settlement.  Any opt-out from the Global Settlement by a Class Member otherwise eligible to participate in the Knauf Class Settlement will be invalid if the Class Member does not timely opt out of the Knauf Class Settlement.

**IF YOU DO NOT WISH TO OPT OUT, YOU DO NOT HAVE TO DO ANYTHING AT THIS TIME.**

To opt out, a written notice signed by the individual Class Member must be sent by first-class mail, post-marked on or before September 28, 2012, to Class Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106) and Russ M. Herman (Herman, Herman & Katz, LLP, 820 O'Keefe Avenue, New Orleans, LA  70113) in writing, within sixty (60) days after the last date to provide Notice to the Class, *i.e.*, postmarked no later than September 28, 2012, which is the last day of the Opt-Out/Objection Period, of their intention to opt out of the Settlement.  To be effective, the opt-out notice must set forth the full name and current address of the person electing to opt out, the address of the property allegedly damaged by Chinese Drywall and/or the address of the property from which the Class Member alleges injurious exposure to Chinese Drywall, to the best of the Class Member's knowledge, the identities or every purchaser, supplier, marketer, installer, builder, developer and its/their insurers, and any other Participating Defendant and Participating Insurer against which the Class Member intends to pursue his, or her, or its claims, and a sentence stating:  "The undersigned

hereby opts out from the Builder, Installer, Supplier and Participating Insurer Settlement Class in the Chinese Drywall Action." The opt-out notice must be signed by the individual Class Member.

**IF YOU WISH TO PURSUE AN INDIVIDUAL CLAIM AGAINST PARTICIPATING DEFENDANTS OR PARTICIPATING INSURERS BY LITIGATION, ARBITRATION, OR OTHERWISE, YOU MUST OPT OUT; OTHERWISE, IF THE GLOBAL SETTLEMENT IS APPROVED, YOU WILL NOT BE ABLE TO PURSUE CLAIMS AGAINST PARTICIPATING DEFENDANTS OR PARTICIPAING INSURERS ARISING OUT OF, IN ANY MANNER RELATED TO, OR CONNECTED IN ANY WAY WITH CHINESE DRYWALL.**

Persons who opt out will not be entitled to share in the benefits of this Global Settlement nor will they benefit or be bound by further orders or judgments in the Litigation concerning the Global Settlement, if any. Participating Defendants and Participating Insurers have reserved the right to terminate or withdraw from the Global Settlement in the event any Class Member opts out.

<u>**Settlement Hearing**</u>

Notice is further hereby given that, pursuant to the Court's Order, a hearing will be held in Courtroom C-456 of the United States Courthouse, 500 Poydras Street, New Orleans, LA 70130, at 9:00 a.m., on November 13, 2012 (the "Joint Fairness Hearing"), for the purpose of determining whether the Global Settlement is fair, reasonable, and adequate and should be approved finally by the Court and the Litigation dismissed on the merits and with prejudice as to Participating Defendants and Participating Insurers. The Joint Fairness Hearing may be adjourned from time to time by the Court without further notice.

**GLOBAL SETTLEMENT CLASS MEMBERS WHO DO NOT OPPOSE THE PROPOSED GLOBAL SETTLEMENT DO NOT NEED TO APPEAR AT THE HEARING OR FILE ANY PAPERS.**

You will be represented at the Joint Fairness Hearing by Class Counsel, Russ Herman, telephone no. (504) 581-4892 and Arnold Levin, telephone no. (215) 592-1500, unless you enter an appearance in person or through your own counsel. As a member of the Conditional Settlement Class, you will not be personally responsible for attorneys' fees, costs or disbursements except those of your own counsel.

Class Members may object to the Global Settlement, in whole or in part, by providing written notice of their intention to object, setting forth all objections and the reasons for such objections and, if applicable, the Class Member's intention to appear at the Joint Fairness Hearing, in accordance with the following procedure. The objection must be signed by the Class Member and his or her counsel, if any. The objection must contain the caption of the Litigation and include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the Class Member. The objection must identify any witnesses intended to be called, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence at the Joint Fairness Hearing. All objections to the proposed Settlement shall be mailed to Plaintiffs' Lead Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106), and Russ M. Herman (Herman, Herman & Katz, LLP, 820 O'Keefe Avenue, New Orleans, LA  70113), in writing, postmarked no later than

sixty (60) days after the commencement of the Class Settlement Notice Period, *i.e.*, postmarked no later than September 28, 2012, or they will be deemed waived.

At the Joint Fairness Hearing, any Class Member who has provided written notice of the intention to object to the Global Settlement may appear in person or by counsel and show cause why the Global Settlement should not be approved and why this action should not be dismissed on the merits with prejudice. Such Class Member may present any admissible evidence relevant to the issues to be heard, provided that such Class Member has timely provided any and all papers in opposition to the Global Settlement upon which the objection may be based.

Any Class Member who does not so object to the matters noted above shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to such matters.

### Effect of Final Court Approval

If the Global Settlement is approved, the Court will enter an Order and Judgment dismissing the Litigation on the merits with prejudice as to Participating Defendants and as to the Participating Insurers (the Participating Insurers are being released to the extent of the Participating Insurers' obligations relating to any policies alleged to provide insurance coverage to any Participating Defendant) and discharging Participating Defendants and Participating Insurers (the Participating Insurers are being released to the extent of the Participating Insurers' obligations relating to any policies alleged to provide insurance coverage to any Participating Defendant) from all claims which were, or could have been, asserted by you or on your behalf arising from, concerning, or related to Chinese Drywall. To the extent each Participating Defendant and Participating Insurer is participating in the Global Settlement as a Class Member, the Court's Order and Judgment will similarly dismiss the Litigation on the merits with prejudice as to the Participating Defendants' and the Participating Insurers' claims against the Knauf Released Parties and will discharge the Knauf Released Parties from all claims which were, or could have been, asserted by the Participating Defendants and Participating Insurers arising from, concerning, or related to Chinese Drywall.

Litigation will continue against the other Non-Participating Defendants who are not released by the Global Settlement.

**IF YOU ARE A MEMBER OF THE CLASS, UNLESS YOU HAVE CHOSEN AFFIRMATIVELY TO OPT OUT OF THE CLASS, UPON COURT APPROVAL OF THE GLOBAL SETTLEMENT YOU WILL BE BOUND BY THE GLOBAL SETTLEMENT, INCLUDING THE JUDGMENT OF DISMISSAL.**

If the Court approves the Global Settlement, each Class Member who did not opt out of the Conditional Settlement Class will receive a Court Notice with final instructions and a Proof of Claim form in the mail.

### Examination of Papers

The foregoing is only a summary of the Litigation, the claims, and the Global Settlement. The Global Settlement and documents incorporated therein, as well as the pleadings and other papers filed in the Litigation, may be inspected at the office of the Clerk of the Court, United States Courthouse, Room C-151, 500 Poydras Street, New Orleans, LA 70130, or during regular

business hours at the offices of Russ M. Herman, Herman, Herman & Katz, LLP, 820 O'Keefe Avenue, New Orleans, LA  70113, telephone number (504) 561-6024, commencing on May 31, 2012.  Any papers Class Counsel and counsel for Participating Defendants and Participating Insurers shall file in support of the Global Settlement will be made available for inspection at these locations at the time they are filed.  Any questions that any person to whom this Notice is addressed may have with respect thereto or with respect to the right to opt out should be directed to Class Counsel, or his or her own counsel.

## <u>Schedule of Important Dates</u>

| | |
|---|---|
| Beginning May 31, 2012 | Settlement papers may be examined at the offices of Russ M. Herman |
| On or before September 28, 2012 | Notice of Opt Out of the Settlement Class must be mailed to Arnold Levin and Russ Herman |
| On or before September 28, 2012 | Objections to the Global Settlement must be mailed to Arnold Levin and Russ Herman |
| November 13, 2012 at 9:00 a.m. central time | Joint Fairness Hearing at United States Courthouse for the Eastern District of Louisiana, 500 Poydras Street, Room C-456, New Orleans, LA 70130 |

Dated: New Orleans, Louisiana
May 31, 2012

<u>/s/ ELDON E. FALLON</u>
Judge, United States District Court
for the Eastern District of Louisiana