UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL NO. 2047

IN RE:  CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

_____

## MOTION FOR EXPEDITED RESOLUTION EFFORTS BY KNAUF FOR HOMEOWNERS WHO REMEDIATED KNAUF HOMES

COME NOW Plaintiffs, Dario Orlando and other plaintiffs who have paid for the remediation of their homes[1], by and through their counsel, and respectfully file this Motion for Expedited Resolution Efforts By Knauf For Homeowners Who Remediated Knauf Homes, and other such relief as the Court may grant, for the reasons stated as follows:

1.      The concerns raised herein most certainly are shared by every homeowner in the Already Remediated Homes category.[2]

2.      Each of the Plaintiffs included herein has a home in which Knauf manufactured reactive Chinese drywall was installed in substantial quantities, if not entirely throughout the

_____

[1] The Undersigned represents the following homeowners who paid for remediation themselves and who had confirmed Knauf reactive drywall: Lee and Maureen Arnold, Agnes and Pascal Bordy, Michael and Ilana Braun, Richard Claybaker and Judith Klingsick, Jose and Maria Costoya, Jean Cunningham, Dew Five, David Dion and Eunice Parks, Scott and Jilea Eisenfelder, Berenise and Sherley Fraise, Bageshri and Dilip Ghate, Reinaldo and Kariana Gonzalez, Jason and Susan Greenberg, Brian and Meena Hierholzer, Victoria Johnston, Anthony and Philomin Josephson, Doug and Holly Krulik, Larry and Robin Kupfer, Ori and Inda Lapidot, Ralph and Nancy Milokyvic, Cesar and Monica Molina, Dario Orlando, Steven and Jodi Ornstein, Omar and Danielle Oropesa, Daniel and Donna Poliseo, Sudheer and Charu Shirali, Joseph and Mary Spallina, Craig and Carol Thomas, Jose and Valerie Verger, Lawrence and Susan Wengel and Thomas Wojciechowski.

[2] Knauf estimated at a recent MDL Status Conference that there are approximately three hundred (300) similarly situated homeowners.

home. The impact of this reactive drywall is well understood by the Court.

3. After waiting a substantial period of time for Knauf to accept responsibility, and being unable to continue living in the home due to the reactive drywall, these Plaintiffs decided to pay for relocation and the remediation of their homes at their own expense.

4. In essence, these homeowners have provided interest-free financing to Knauf for the remediation. The longer Knauf delays in resolving these valid claims, the more money Knauf makes from investing monies which may have been reserved to pay these claims and the more money is lost by the Plaintiffs.

5. Nearly twenty (20) months ago, on October 14, 2010, Knauf announced the implementation of a Pilot Program. As result, three hundred (300) homes were entitled to payment of relocation expenses and the initiation of remediation efforts by Knauf.

6. The Pilot Program did not contemplate any reimbursement to those with Knauf reactive drywall who already paid for relocation and remediation. The undersigned attempted unsuccessfully to convince Knauf to include those homeowners.

7. Since March 2011, the undersigned has provided Knauf information on homes that had been self-remediated, including documents, pictures, videos, and the opportunity to examine the evidence, examine the homes, and/or meet with contractors who performed the remediation.[3]

8. On December 20, 2011, Knauf announced a proposed settlement which was preliminarily approved by the Court on January 10, 2012.

---

[3] Along the way, the undersigned was invited by Knauf's counsel to discuss the issues related to settlement of these claims, including reviewing proposed homeowner affidavits and contractor affidavits. On one occasion, Knauf's counsel did engage in conference call with the undersigned, the contractor for a particular homeowner, and Knauf's consultants to address reasonable questions raised by the documentary evidence submitted.

9.      Section III (D) of Exhibit A to the proposed settlement agreement contemplated the reimbursement of reasonable remediation costs for those homeowners who have already self-remediated.  Section V of Exhibit A entitled self-remediated homeowners entitlement to "Lump Sum" payments, meant to cover certain relocation costs.[4]

10.     The undersigned continued to press Knauf to more timely resolve the self-remediated homeowners' claims.  Importantly:

        a.      These Plaintiffs have financed Knauf's responsibility to pay for remediation of these homes and all relocation expenses;

        b.      These Plantiffs have lost the time value of money having paid these costs in some cases well over a year ago;[5]

        c.      Some homeowners who self-remediated may be paying interest on the financed remediation;

        d.      Some homeowners continue to fund preservation of evidence.

11.     Particularly frustrating and painful, for over a year, neighbors (right next door or in the same building) of some of these Plaintiffs have been receiving "Lump Sum" payments as participants in the Knauf Remediation Program.

12.     The Court ratified a protocol for resolution of "Already Remediated Homes" on March 29, 2012.  See Pre-Trial Order No. 26.

---

[4] Pursuant to Section 4.3.1.1 of the proposed settlement agreement, a qualified participant in the Knauf remediation program in entitled to a per square foot cash payment (either $8.50 or $10.00 per square foot depending on the size of the home) prior to the remediation.  This cash payment is meant to cover relocation costs.  The undersigned has forty-eight (48) homeowners in the Knauf Remediation Program who have already received this payment and at least eight six (86) additional homeowners are expected to qualify for this payment.

[5] The proposed settlement agreement does not provide for any lost interest recovery from financing Knauf's responsibility to remediate the homes.

13.     Four (4) weeks later, on April 26, 2012, the first offers were forthcoming but only regarding two (2) homes – and based upon information in the possession of Knauf for a substantial period of time prior to March 29, 2012. The undersigned immediately highlighted to Knauf that the offers failed to provide entitlement to "Lump Sum" payment.[6] Additionally, there was needed clarity on the entitlement to make an "Other Loss Fund" claim.

14.     On June 1, 2012, Knauf agreed that the explicit terms of Sections V and VI of Exhibit A of the settlement agreement permitted entitlement to "Lump Sum", and that Plaintiffs would also have the opportunity to seek "Other Loss Fund" reimbursement pursuant Section 4.7.

15.     It is true, this is an innovative settlement process – where a proposed settlement that has yet to achieve Final Approval, continues to be implemented in the interim. Clearly, and to the credit of many, there has been significant time and energy dedicated to work towards remediation of homes; this had been crucially important to homeowners unable to live in or fix their homes presently. However, whatever strides made for those seeking remediation can not eclipse the recognition that the lack of timely resolution for those homeowners who financed Knauf's responsibility is entirely unfair.

16.     Any suggestion by Knauf that claims from homeowners who remediated are particularly difficult cases to intellectually analyze or resolve would be, respectfully, overstated. It is true there are unique issues, including the reasonable inquiry to ensure the remediation costs

---

[6] The offer was a single line item offer without any outline of the chosen analysis or calculation in reaching the offer. In some cases, it will be entirely obvious as to how Knauf came to the calculation. However, where Knauf intends to compromise the amount of the claim submitted, a single line offer will not make it possible to understand the analysis, resulting in the potential for opt-outs which may have been unnecessary with a better understanding of the calculation.

being sought are in fact remediation costs and not upgrades.[7]  Additionally, the large volume of documents sought has led to challenges for production and review.  However, in comparison to the enormous efforts necessary to take a home through the Remediation Program -- including inspections by Plaintiffs, evaluation of those inspections by Knauf, reinspection by Benchmark, then re-evaluation by Knauf, then construction estimation by Moss, development of construction plans, enduring the varying permitting processes from different cities, the actual remediation oversight and challenges expected in any rehabilitation of a home throughout the months of remediation -- the resolution of Already Remediated homes is and should be far easier, more efficient, and completed more timely.

17.  The substantial financial prejudice to Plaintiffs who have paid for their own remediation and relocation costs continues each and every day.[8]

---

[7] There are also financial challenges related to the nature of the costs associated with preservation of evidence.  While there was a protocol entered for preservation, the costs associated with this type of remediation were enormous.  For an individual homeowner unsure if there would ever be a recovery and who was financing the remediation themselves, some hard financial choices were made; in some cases, there was not full compliance with what Knauf would like from the protocol.  However, the standard for preservation far exceeded what a jury would need to evaluate to find responsibility against Knauf.

[8] In recent months, these homeowners have faced the prospect of looming opt-out dates. Because of the uncertainty of how these claims would be resolved (as demonstrated by the initial offer which failed to include payments available through the explicit terms of the proposed settlement), and the fact that these homeowners are already remediated and out-of-pocket, there was a substantial likelihood of a large number of opt-outs by those who already remediated. Unlike those who are awaiting remediation, the prospect of long-term litigation is far less concerning because these homeowners have financial means, their homes are repaired, the responsibility of Knauf is conceded, and the possibility of a greater jury awards exists.  While most would prefer to resolve their claims under the terms of the proposed Settlement Agreement, patience has been strained as a result of the delay caused by Knauf in addressing these relatively straightforward claims.  With new opt-out dates established, time is of the essence again.

Wherefore, the enumerated Plaintiffs respectfully request the Court to grant any and all such available relief to end the continuing financial burden for these homeowners, including the requirement that Knauf engage in this process more timely and dedicate additional efforts towards individual resolutions.

Respectfully submitted,

/s/ Michael J. Ryan
Michael J. Ryan, Esquire
Bar No. 975990
Krupnick, Campbell, Malone, Buser, Slama,
Hancock, Liberman & McKee, P.A.
12 S.E. 7 Street
Suite 801
Ft. Lauderdale, FL  33301
Phone (954) 763-8181
Fax (954) 763-8292
mryan@krupnicklaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY  the foregoing Motion for Expedited Resolution Efforts by Knauf for Homeowners Who Remediated Knauf Homes has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and e-mail  and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with pre-trial Order No. 6, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will serve a notice of electronic filing in accordance with the procedures established in MDL 2047 on this _8_ day of June, 2012.

/s/ Michael J. Ryan
Michael J. Ryan, Esquire
Bar No. 975990
Krupnick, Campbell, Malone, Buser, Slama,
Hancock, Liberman & McKee, P.A.
12 S.E. 7 Street
Suite 801
Ft. Lauderdale, FL  33301
Phone (954) 763-8181
Fax (954) 763-8292
mryan@krupnicklaw.com
Attorneys for Plaintiffs