UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \*\* \* \* \* \* \* \*

**THIS DOCUMENT RELATES TO: ALL CASES**

**DECLARATION OF ZHU YAN**

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

ZHU YAN, being duly sworn, deposes and says:

<u>INTRODUCTION</u>

1.      I am a professor of law at the Renmin University of China Law School ("Renmin Law School") in Beijing, in the People's Republic of China ("China"), and work part time as an attorney at the law firm of Han Ding United, also located in Beijing.

2.      I am a Chinese national and reside in Beijing, China.

3.      I have been asked by Hogan Lovells US LLP, counsel for Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co., Ltd. ("TTP"), Defendants in the above-captioned action, to: (a) provide an overview of general Chinese corporate law relating to the establishment of the rights and responsibilities of commercial entities in China; (b) to provide an overview of the general circumstances under which the separate corporate existence of Chinese companies will be disregarded for purposes of attributing conduct or activities to impose liability or to assert jurisdiction; (c) to describe the nature of TG, TTP and Beijing New Building

Material Public Limited Co. ("BNBM");  and (d) to describe the general circumstances under which the separate corporate existence of these companies will be disregarded for purposes of attributing conduct or activities to impose liability or to assert jurisdiction.

4.      Although I have been asked to make this Affidavit by Hogan Lovells US LLP, I consider it my duty to offer my independent explanation to the Court.  I am not acting as an advocate for any party.

BACKGROUND AND QUALIFICATIONS

5.      I studied world political economy and international relationships at the Renmin University from which I obtained my Bachelor of Law degree in 1995.  An academic interest in legal scholarship led me to pursue advanced degrees in civil and commercial law.  I was awarded a master's degree in civil and commercial law in 1999 from Renmin Law School, and, later, a Ph.D. in 2003 from the University of Bremen, Germany.  My Ph.D. thesis was "Comparative Research of Control of Unfair Terms Between Germany and China".

6.      I was qualified as Attorney in 1997 after I passed the 1996 National Bar Exam in Beijing.  In 2006, after concluding my academic pursuits, I was admitted to the Chinese Bar Association.  I am member in good standing and am licensed to practice, and have practiced Chinese law as representative or consultant in primary, Intermediate and Higher People's Court.

7.      I am also a tenured faculty member and the Deputy Director of the Department of Civil and Commercial Law of the preeminent Renmin Law School, which has consistently ranked at the top of evaluation reports issued by the Ministry of Education of China. (*See, e.g.,* China Academic Degrees & Graduate Education Information, *available at* http://www.cdgdc.edu.cn/xwyyjsjyxx/zlpj/xksppm/.)    The Renmin Law School edits and

2

publishes the nation's leading law journal, the "Jurists' Review", as well as the "RUC Law Review" and the "Chaoyang Law Review". I am the editor of the "Jurists' Review" in charge of the field of civil and commercial law.

8.     I am a member of the All-China Lawyers Association. My lawyer license number is [执业证号 11101200620603960] and my qualification number is [律师资格证号 019772110044]. I am also a Member and Chairman of the Association of Chinese Federal Chancellor Scholar of Humboldt Foundation in Germany, and the General Secretary Assistant of Chinese National Association of Civil Law in Beijing. I have authored and co-authored monographs and have published several legal articles in China (Mainland and Taiwan), Germany, Austria and USA (please see the bibliography, in both Mandarin and English, attached hereto as Exhibit A). I was a Humboldt Foundation Visiting Scholar in Germany (August 2007 to August 2008) and a Visiting Scholar at European Center of Tort Law and Insurance Law in Vienna, Austria (January 2009 and February 2009). I am currently a Harvard-Yenching Visiting Scholar at Harvard University in Cambridge, MA (August 2011 to August 2012).

9.     I have a broad expertise and practice in areas of civil law and commercial law including Chinese company law. (In China, a corporation is referred to as a "company" and, similarly, corporate law is referred to as "company law". I therefore use these terms throughout this Declaration.)

10.   A true and correct copy of my curriculum vitae is attached hereto as Exhibit B.

11.   I respectfully submit that I am competent to opine on Chinese company law and the other matters addressed in the remainder of this Declaration.

3

CONSULTED LEGAL AND FACTUAL SOURCES

12.     In preparation of this Declaration, I reviewed and/or considered the following

laws, rules, statutes, and regulations governing legal status of Chinese business entities,

including but not limited to the following:

- General Principles of Civil Law of People's Republic of China of 1986 (GPCL) (*Minfa Tongze*);
- Company Law (*Gongsi Fa*) (adopted by the Fifth Session of the Standing Committee of the Eighth National People's Congress, 19 December 1993, effective 1 July 1994, revised at the 18th Meeting of the Standing Committee of the Tenth National People's Congress, 27 October 2005, effective 1 January, 2006 (a true and correct copy of excerpts of which is attached hereto, along with an English version of the same, as Exhibit C);
- Provisions of the Supreme People's Court on Several Issues concerning the Application of the Company Law of the People's Republic of China (I) of (2006), (II) of 2008 and (III) of 2011 (*Zuigaorenminfayuan Guanyu Shiyong <Zhonghua renmin gonggheguo gongsifa> Ruogan Wenti de Guiding*). These three provisions of Company Law issued by the Peoples' Supreme Court respectively in 2006, 2008, 2011, all of which are still effective and have also binding force just like Company Law for parties concerned;
- Law of the People's Republic of China on Sole Proprietorship Enterprise of 2000 (*Geren Duzi Qiyefa*);
- Law of the People's Republic of China on Partnerships of 2007 (*Hehuo Qiyefa*);
- Administrative Regulations issued by Chinese State Council (*Guowuyuan Xingzhen Fagui*) concerning set up, registration of company;
- important courts decisions, particularly published by the People's Supreme Court, in which the court analyzed when to disregard the corporate integrity of a company; and
- monographs and articles regarding the theory of disregarding a company's legal personality of company and attribution theories of liability published in China.

13.     In preparation of this Declaration, I also reviewed the following:

- Deposition transcripts of Tongchun Jia taken April 4-5, 2011 and January 9-10, 2012 ("Jia Tr.")[1];
- Shandong Province Dept. of Finance Document, "Reply Concerning Issues Related to the Transfer of the State-Owned Shares of Shandong Taihe Dongxin Co., Ltd." dated July 22, 2002;

---

[1] A copy of the transcript of the deposition of Jia Tongchun, including Plaintiffs' Exhibits 1 through 36 and Defendants' Exhibits 1 through 47A, which took place on April 4 and 5, 2011 and January 9 and 10, 2012 is attached to the Declaration of Frank T. Spano, dated April 2, 2012 as Exhibit 2, which will be submitted to the Court simultaneously with this Declaration.

4

- Shandong Taihe Dongxin Co., Ltd. Shareholder List, dated August 10, 2002;
- Stock Transfer Agreement, dated March 24, 2005;
- Shandong Taihe Dongxin Co., Ltd. Resolutions of the General Meeting of Shareholders, dated March 24, 2005;
- Comparison Chart of Registered Capital of Shandong Taihe Dongxin Co., Ltd. before and after changes, dated April 25, 2005;
- Shandong Taihe Dongxin Co., Ltd. Resolutions of the General Meeting of Shareholders, dated April 25, 2005;
- Shandong Taihe Dongxin Co., Ltd. Articles of Incorporation, dated April 25, 2005;
- Shandong Taihe Dongxin Co., Ltd. Resolution of the Fourth Extraordinary General Meeting of Shareholders for the Year of 2005, dated June 26, 2005;
- Shandong Taihe Dongxin Co., Ltd. Asset Valuation Report, dated May 26, 2006;
- Shandong Taihe Dongxin Co., Ltd. Articles of Association, dated August 8, 2006;
- Taishan Gypsum Co., Ltd. Articles of Association, dated June 20, 2007;
- Shandong Taihe Dongxin Co., Ltd. Resolutions of the 2006 Annual General Meeting of Shareholders, dated June 20, 2007;
- Datasheet of the Directors, Supervisors, and Managers of Shandong Taihe Dongxin Co. Ltd.; Application Form for Company Record; and Certificate of Designated Representative or Jointly Appointed Agent, dated July 17, 2007;
- Taishan Gypsum Co., Ltd. 2008 Annual General Meeting, dated May 18, 2009;
- Taishan Gypsum Co., Ltd. Amendment to the Articles of Association, dated May 18, 2009;
- Shandong Taihe Dongxin Co., Ltd. Shareholder Meeting Resolutions, dated March 24, 2005;
- Shandong Taihe Dongxin Co., Ltd. 2005 Annual Shareholder Meeting Resolution, dated April 15, 2006;
- Shandong Taihe Dongxin Co., Ltd. 2006 Annual Shareholder Meeting Resolution, dated June 20, 2007;
- TG 2007 Annual Shareholder Meeting Resolution, dated May 20, 2008;
- TG, Ltd. 2008 Annual Shareholder Meeting Resolution, dated May 18, 2009;
- Shandong Taihe Dongxin Co., Ltd. Third Meeting of the Board of Directors Resolutions, dated April 15, 2006;
- Shandong Taihe Dongxin Co., Ltd. Fourth Meeting of the Third Board of Directors Resolutions, dated June 20, 2007;
- TG Fifth Meeting of the third session Board of Directors Resolutions, dated May 20, 2008;
- Shandong Taihe Dongxin Co., Ltd. Report regarding Overall Work Summary for 2005 and Work Arrangement for 2006, dated 2005;
- Shandong Taihe Dongxin Co., Ltd. 2006 Chief Executive Officer's Work Report;
- TG 2007 Chief Executive Officer's Work Report;
- TG 2008 Chief Executive Officer's Work Report;
- Shandong Taihe Dongxin Co., Ltd. 2005 Accounting Statement;
- Shandong Taihe Dongxin Co., Ltd. 2006 Accounting Statement;
- Taishan Gypsum Co., Ltd. 2007 Financial Statements;

5

- Taishan Gypsum Co., Ltd. 2008 Financial Statements;
- Tai'an Taishan Plasterboard Co., Ltd. Incorporation Registration Review Form, dated February 16, 2006;
- Tai'an Taishan Plasterboard Co., Ltd. Articles of Association, dated February 10, 2006;
- Tai'an Taishan Plasterboard Co., Ltd. Director Appointment Document, dated February 10, 2006;
- Tai'an Taishan Plasterboard Co., Ltd. Legal Representative Appointment Document, dated February 10, 2006;
- Tai'an Taishan Plasterboard Co., Ltd. Capital Verification Descriptions, dated June 22, 2006;
- Tai'an Taishan Plasterboard Co., Ltd. Shareholder Decisions, dated June 22, 2006;
- Tai'an Taishan Plasterboard Co., Ltd. Articles of Association, dated June 22, 2006;
- Lease Agreement between Shandong Taihe Dongxin Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd., dated February 10, 2006;
- Trademark Use Authorization between Shandong Taihe Dongxin Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd., dated February 20, 2006;
- Purchase and Sale Agreement between Shandong Taihe Dongxin Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd., dated February 20, 2006;
- Lease Agreement between Shandong Taihe Dongxin Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd., dated February 20, 2006;
- Purchase and Sale Agreement between TG and Tai'an Taishan Plasterboard Co., Ltd., dated January 1, 2008;
- Tai'an Taishan Plasterboard Co., Ltd. 2006 Financial Statement;
- Tai'an Taishan Plasterboard Co., Ltd. 2007 Financial Statement;
- Tai'an Taishan Plasterboard Co., Ltd. 2008 Financial Statement;
- China National Building Material Co., Ltd. Overseas Regulatory Announcement – Summary of BNBM 2009 Annual Report, dated March 24, 2010;
- China National Building Material Co., Ltd. Announcement of BNBM's Acquisition of Taian Donglian Investment Trading Co., Ltd., dated August 28, 2006;
- China National Building Material Co., Ltd. Overseas Regulatory Announcement re Event to Gypsum Board in US, dated May 28, 2010;
- Taishan 2006 Structure – Pre Global Offering, dated August 24, 2011;
- BNBM Annual Reports (2005 – 2008);
- TG's Business Registration (2007);
- Issuance by the Shandong Province Economic System Reform Commission "Concerning the Approval of the Establishment of Shandong Taihe Dongxin Co., Ltd.", dated June 4, 1998;
- Excerpts of the transcript of the deposition of Jianchun Zhang taken April 6, 2011 ("Zhang Tr.");
- *In re: Chinese-Manufactured Drywall Products Liability Litigation*, Amended Complaint, filed July 7, 2009 (relating to *The Mitchell Co. v. Knauf Gips KG, et al.*); and

- *In re:   Chinese-Manufactured Drywall Products Liability Litigation*, Second Amended Complaint, filed November 18, 2009 (relating to *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihi Dongxin Co. Ltd., et al.*).

## OVERVIEW OF GENERAL CHINESE CORPORATE LAW

14.    Although China had enacted some laws regarding company law in the late 1970's and 1980's, such as the People's Republic of China Law On Chinese-Foreign Equity Joint Ventures of 1979 (*Zhongwai Hezi Qiyefa*) and Law of the People's Republic of China on Industrial Enterprises Owned by Whole People of 1988 (*Quanminsuoyouzi Qiyefa*), China did not have one unified legal framework that established the rights and responsibilities of companies, shareholders, or managers of companies until the National People's Congress promulgated the 1993 Company Law.

15.    The 1993 Company Law embraced the concept of limited liability business organizations and served, among other things, to: (a) facilitate the creation and recognition of business entities as separate legal persons in the form of a company in order to create and develop the new established market economy since 1992 which replaced the planned economy; (b) restructure the organization and management of state-owned enterprises in terms of separation of proprietary rights from managements rights; (c) to address problems of inefficiency; and (d) to promote competition and productivity.  The 1993 Company Law was, however, subject to criticism for encumbering economic growth by, *inter alia*, exerting too much administrative control over company development, not providing sufficient corporate governance structure, creating a high minimum statutory registered capital requirement, and by setting certain limits to company investments into other enterprises:  for example, a company could not

7

invest more than 50 percent of its net assets, nor could a company own 100 percent of subsidiary companies.

16.     The 1993 Company Law was amended respectively in 1999, 2004 and 2005. (The 1993 Company Law and its amendments collectively are referred to herein as "Company Law" and is cited as "CCL".)

17.     It is worth noting that in contrast to the previous versions, the Company Law as amended in 2005 permitted a company to own up to 100 percent of a subsidiary company in the form of a one-person company. (*See* Art. 14 and Art. 58 para. 2 CCL.)

18.     There are also three laws with respect to foreign investors, namely, Law of Chinese-Foreign Equity Joint Ventures (effective since January 1, 1980, last amendment in 2001), Law of Chinese-Foreign Contractual Joint Ventures (effective since 1988, last amendment in 2001) and Law of Wholly-Owned Foreign Enterprise (effective since 1986, last amendment in 2000).  These three special laws regarding foreign investors are still effective. Each of them has an administrative regulation issued by the Chinese State Council.

19.     Since 1993, there have generally been three recognized business entity forms adopted and recognized in China:  the sole proprietorship, the partnership and the company.

20.     Under Chinese law, a sole proprietorship is a business entity established within China and invested in by one natural person who personally owns all of the entity's property and assumes unlimited liabilities for the debts of the enterprise with his personal property. (*See* Art. 2 of the Law of the People's Republic of China on Sole Proprietorship Enterprise of 2000.)

21.     A general partnership is a business entity that is created by an agreement (written or oral) between two or more partners, who contribute funds, property, skill and the like, and

8

work jointly in operating the business.  General partners undertake unlimited liability and are jointly and severally liable for partnership debts.  (*See* Art. 2 para. 2 of the Law of the People's Republic of China on Partnerships of 2007.)  A limited liability partnership ("LLP") may also exist under Chinese law.  In an LLP, each limited partner's liability extends only to that limited partner's capital contribution.  (*See* Art. 2 para. 3 and Ch. 3 "Limited Liability Partnerships" in the Law of the People's Republic of China on Partnerships of 2007.)

22.    A "company" is a limited liability business entity which has its own independent personality such that it can, *inter alia*, make contracts and incur debts on its own behalf and sue and be sued in its own name.  (*See* Art. 2 CCL.)

23.    A joint stock company is a Chinese company form intended for large corporations with widely dispersed stock ownership.  It is the only form that may be listed on one of China's two stock exchanges and therefore the only form able to raise money directly from the public.  A joint stock company can issue shares either wholly subscribed to by its promoters or to a specified group or to the public.  (*See* Art. 78 CCL.)

24.    A "wholly state-owned" company is a special limited liability company in China, which is wholly owned by the state, for which the State Council or the local people's government authorizes the State-owned Assets Supervision and Administration Institution of the people's government at the same level to perform the functions of the capital contributor.  (*See* Sec.4 Ch. 2 CCL.)

25.    A company shareholder (also known as a "member") is an individual or entity that legally owns any part of a share of stock in the company.  Although shareholders own stock, they do not own the company itself and normally have no automatic right to manage or control

9

the company.   Chinese Company Law does, however, provide shareholders basic rights, including the right to share the capital proceeds, vote on important decisions and resolutions, and choose managers.  (*See* Art. 4 CCL.)  Shareholders may be, and, indeed, are often, elected as directors or supervisors.  As a general rule, a shareholder's liability is limited by the amount of capital contributed.  Under Chinese law, shareholders are not agents of a company simply by virtue of their owned shares in the company.

26.  No more than 50 shareholders may establish a company.  (*See* Art. 24 CCL.) Each shareholder may make capital contributions in different amounts, however, the amount of the initial capital contributions made by all shareholders must not be less than 20% of the company's registered capital, nor less than the statutory minimum amount of registered capital, and the margin shall be paid off by the shareholders within two years from the day when the company is set up. (*See* Art. 26 CCL.)

27.  According to Chinese law, the term "joint venture" may be used to describe a company in which two or more shareholders invest, regardless of the percentage of shares allocated between such shareholders.

COMPANY FORMATION AND REGULATION

28.  To set up a company, an application for business entity registration must be filed with the company registration authority, which is administered by the Administration for Industry and Commerce. (*See* Ch. 2 of the Regulations of the People's Republic of China on the Administration of Company Registration (2005 Revision) (Promulgated by Order No. 156 of the State Council of the People's Republic of China on June 24, 1994 and revised according to the Decision of the State Council on Revising the Regulations of the People's Republic of China on

10

the Administration of Company Registration on December 18, 2005).)  For registration, the filing

must contain:

- personal ID and other documents indicating founder's identity;
- certificate of capital to be contributed;
- name of the company to be registered;
- business scope;
- domicile with evidences such as real estate title or leasing contract;
- list of shareholders;
- organization of company and its rule regarding resolutions; and
- articles of incorporation.

(*See* Ch. 4 of the Regulations of the People's Republic of China on the Administration of

Company Registration of 2005.)

29.    In 1999, the registration fee rate was reduced from one percent to 0.8 percent of

the company's whole capital for companies with less than 10,000,000.00 RMB Yuan.  The

registration fee for companies over that amount was changed from 0.5 percent to 0.4 percent of

the company's whole capital over 10,000,000.00, with an exemption for capital over

100,000,000.00 RMB Yuan.  (*See* Notification regarding the Registration Fees charged by the

Administration of Industry and Commerce issued by the State Bureau of Price and Ministry of

Finance of 1999.)

30.    The company must be run in accordance with national Company Law and a

number of other regulations and statutory formalities.

31.    For example, a general requirement under Company Law is that, before a

company can be established by registration, it must prepare articles of incorporation that must be

signed and affixed with the shareholders' seals and must include the following:

- name and address of the company;
- scope of business operations of the company;
- registered capital of the company;

11

- names and titles of shareholders;
- methods, amounts and time of capital contributions by the various shareholders;
- the company's organizations and its establishment methods, duties and rules of procedure;
- legal representative of the company; and
- other items deemed necessary by the shareholders to be stipulated.

Articles of incorporation have binding force over the company, its shareholders, directors, supervisors and senior managers. (*See* Art. 11 CCL.)

32.    A company must hold shareholders' meetings during which time the shareholders determine, *inter alia*, the company's operational guidelines and investment plans, which directors and supervisors to elect, and how executive compensation will be set. (*See* Art. 38 CCL.)

33.    A company must have a board of directors, unless otherwise provided. (*See* Art. 47, 51 CCL.)   The board of directors exercises important functions such as convening shareholders' meetings, presenting reports, implementing the resolutions made at the shareholder's meetings, and determining the company's business and investment plans. (*See* Art. 47 CCL.)

34.    A company must also set up a board of supervisors, which may oversee the financial affairs of the company and provide corporate oversight, putting forward proposals regarding the removal of any director or senior manager who violates any law, administration regulation, articles of incorporation or any resolution of the shareholders' meeting.  For a limited liability company in which there is a relatively small number of shareholders or which is relatively small in scale, this requirement is fulfilled by a company having one or two supervisors. (*See* Art. 52 para. 1 CCL.) The board of supervisors may also demand that any director or senior manager make corrections if his or her actions have injured the interests of the

12

company.  (*See* Art. 54 CCL.)   The board of supervisors is comprised of shareholders' representatives and representatives of the employees' of the company at an appropriate ratio to be specifically prescribed in the articles of incorporation.  The employees' representatives on the board of supervisors are democratically elected by company employees.   The board of supervisors has one chairman who is elected by half or more of all the supervisors.   The chairman of the board of supervisors convenes and presides over the meetings of the board of supervisors.  No director or senior manager may concurrently serve as a supervisor.  (*See* Art. 52 CCL.)

35.    Each company must also have a legal representative (*Fading Daibiaoren*) which is registered with the Administration of Industry and Commerce and may legitimately represent the company for the business operations with third parties.  The legal representative position is assumed by the chairman of the board of directors, acting director or manager. (*See* Art. 13 CCL.)

36.    There are also Company Law requirements specific to company type.  For example, a joint stock limited company must regularly disclose to its shareholders information about remunerations received by the directors, supervisors and senior managers from the company (*see* Art. 117 CCL), and Company Law explicitly requires that a joint stock company have independent directors, (*see* Art. 123 CCL).  A joint company's stock and band must bear the signature of the legal representative along with the seal of the company. (*See* Art. 129 and Art. 156.)

37.    In China, there are additional, stricter, rules that apply to companies owned by one shareholder.  For example, the minimum amount of registered capital of a one-person

13

company amount to 100,000 RMB Yuan.  (*See* Art. 59 para. 1 CCL.)  It is higher than the requirement of a normal company, which is normally RMB 30,000 Yuan.  (*See* Art. 26 para. 2 CCL.)  Furthermore, the minimum amount of registered capital of a one-person company must be paid in one lump sum rather than in installments.  (*See* Art. 59 para. 1 CCL.)  The shareholder must be clearly indicated in the company registration and the business license.  Although it has no board of directors, important decisions made by the sole shareholder must be in written form. In order to protect the creditor's interests, a financial report by the end of the every financial year must be made and audited by an accounting firm.  (*See* Art. 60-63 CCL.)  Note that the sole shareholder of a one-person company can be either one natural person or legal person shareholder.  However, although a natural person may establish a one-person company, that individual is prohibited from establishing more than one one-person company.  (*See* Art. 59 para. 2 CCL.)

### PARENT AND SUBSIDIARY COMPANIES

38.     Under Article 14 of the Company Law, a company may establish subsidiary companies.  In China, the term "parent company" usually applies to the company that owns between 50 and 100 percent of the subsidiary.  However, if there is a lower ownership percentage but that percentage is sufficient to exert control over the company, the parent-subsidiary relationship may also be recognized.  According to Article 217, paragraph 2 of the Company Law, a "controlling shareholder" refers to: a shareholder whose capital contribution occupies 50% or more in the total capital of a limited liability company; a shareholder whose stocks occupy more than 50% of the total equity stocks of a joint stock limited company; or a shareholder whose capital contribution or proportion of stock is less than 50% but who enjoys a

14

voting right according to its capital contribution or the stocks it holds is large enough to impose a significant impact on the resolution of the shareholders' meeting or the shareholders' assembly. In all of the aforementioned cases, both the parent and subsidiary have their own legal person status and bear their civil liability independently. (*See* Art. 14, para. 2 CCL.)

39.     Under Chinese law, a subsidiary is an independently legal entity and bears liability independent of its parent company.

40.     Although a parent company and subsidiary company are distinct legal entities, it is not unusual that the parent and subsidiary may have common employees, officers, managers and/or directors to different degree.

41.     The parent company, as owner of the subsidiary (in whole or in part) and by virtue of its interest in the subsidiary's voting shares may, and often will, exert some level of control over the subsidiary, for example, by directing the subsidiary's marketing strategy and business operations.   The type and extent of such control is normally provided for in the subsidiary's articles of incorporation in terms of shareholder's voting rights over important issues. However, there are some strict prohibitions regarding the controlling power of the parent company.   For example, no company may, directly or through its subsidiary, lend money to any of its directors, supervisors, or senior managers. (*See* Art. 116 CCL.)   Neither the controlling shareholder, nor the actual controller, nor any of the directors, supervisors or senior management of the company may injure the interests of the company by taking advantage of its connection to or relationship with the company.   Anyone who causes any loss to the company due to violating the preceding prohibition is liable for the compensation. (*See* Art. 21 CCL.)

42.     Because subsidiary companies are independent legal persons, all Company Law provisions that apply to regular companies generally apply to subsidiary companies as well. (*See* Art. 59-64 CCL.)

43.     Subsidiaries are subject also to regulation by the Chinese tax bureau, which monitors the Chinese subsidiaries to see that they operate, and therefore may be taxed independently of their parent companies.  The government agency in charge of tax policy is the Ministry of Finance.  State and Local Administration of Taxation is in charge of tax collection and supervision.  Pursuant to Article 7 of the Law of the People's Republic of China Concerning the Administration of Tax Collection (adopted at the 27th meeting of the Standing Committee of the seventh National People's Congress on September 4, 1992; amended in accordance with the Decisions on Amending the Law of the People's Republic of China Concerning the Administration of Tax Collection made at the 12th meeting of the Standing Committee of the eighth National People's Congress on February 28, 1995; revised at the 21st meeting of the Standing Committee of the ninth National People's Congress on April 28, 2001), tax authorities shall extensively disseminate tax laws and administrative regulations, the knowledge of tax payment, and gratuitously provide taxpayers with consulting services on tax payment.

44.     Private tax consultant firms may also counsel parent and subsidiary companies to help devise arrangements whereby the two companies are structured and operate in a way that is economically beneficial to both and complies with all relevant Chinese statutes and regulations.

**LIMITED LIABILITY AND DISREGARDING THE INDEPENDENT PERSONALITY OF COMPANY**

45.     Under the 2005 Company Law, it is well settled that a parent company and its wholly-owned or partially-owned subsidiary are separate and distinct legal entities. (*See* Art. 14

16

para 2 CCL.)  The fact that the parent owns part or all of the shares of a subsidiary does not make the parent liable for the actions of the subsidiary, nor are the actions of the parent attributed to the subsidiary, or vice versa.

46.     As a general principle, because a parent and subsidiary company are legally distinct from one another, the traits and acts of each are not attributable to the other for liability or jurisdictional purposes unless attribution is permissible under an alternative legal theory.

47.     The Company Law contains two provisions that permit courts to disregard a company's independent legal personality:

> "Where any of the shareholders of a company evades the payment of its debts by abusing the independent status of juridical person or the shareholder's limited liabilities, and thus seriously damages the interest of any creditor, it shall bear the joint and several liabilities for the debts of the company."

and

> "If the shareholder of a one-person limited liability company is unable to prove that the property of the one-person limited liability company is independent from his own property, he shall bear joint and several liabilities for the debts of the company."

(*See* Art. 20 para. 3; Art. 64 CCL.)

48.     In practice, Chinese courts may disregard separate corporate identity when (a) the corporate form has been intentionally and maliciously abused by a shareholder in order to evade company debts; and (b) such abuse caused serious harm to company creditors.  Other factors may also be important to the court's decision whether to disregard separate corporate identity, including the following:

- undercapitalization or withdrawal of previously contributed capital from the company;
- commingling of the properties of a company and its shareholders, or of a parent and its subsidiary (in the case of a one-person company, the sole shareholder has the burden to establish the absence of commingling of properties (*see* Art. 64 CCL.);

17

- extensive overlapping of employees, business domiciles;
- failure to keep separate and distinct financial records between parent and subsidiary; and
- failure to abide by the requirements of corporate organization structure.

## BNBM, TG AND TTP

49.     The factual data I reviewed show that BNBM, TG and TTP were all duly organized under the laws of China.  Each company is separately registered as an individual independent legal person in accordance with Chinese law.  BNBM is the only company of the three that is publically listed on Shenzhen Stock Exchange (Stock Code: 00786) since 1997.

50.     According to the documents I reviewed, BNBM owns, directly and indirectly, 65% of TG's shares:  on March 24, 2005, BNBM directly purchased 42% of TG's shares, and in June 2006, BNBM purchased Taian Donglian Investment and Trade Company, Limited ("Donglian"), which then held 23% of TG's shares.  (Jia Tr. 576:22-577:16; Def's Ex. 6, Pl's Ex. 24 (CNBM Announcement of BNBM's Acquisition of Donglian, dated August 28, 2006).)

51.     The data I reviewed shows that TG observed the corporate formalities required under Chinese Company Law.  For example, for the period 2005-2008, TG held annual shareholder meetings in accordance with the requirements of its Articles of Incorporation.  (*See* Jia Tr., Def's Exs. 18-21 (TG Annual Shareholder Meeting Resolutions, dated April 15, 2006, June 20, 2007, May 20, 2008 and May 18, 2009).)  In accordance with TG's Articles of Incorporation, its Board of Directors met annually and issued written resolutions.  (*See* Jia Tr., Def's Exs. 22-24 (TG Director's Resolutions of the Third, Fourth and Fifth Meetings, dated April 15, 2006, June 20, 2007 and May 20, 2008, respectively).)  A yearly report of TG's operations was duly prepared by the General Management and distributed to the board of

18

directors and the shareholders. (*See* Jia Tr., Def's Exs. 25-27 (Chief Executive Officer's Work Report for the years 2005-2007).) In accordance with Chinese law, a third-party independent accounting firm prepared annual financial statements for TG. (Jia Tr. 638:10-643:14; *e.g.*, Def's Exs. 29-32 (TG Annual Financial Statements for 2005-08).)

52.     The data I reviewed shows that TG observed company formalities when it established TTP. In accordance with Chinese law, TTP was registered in the Business License Department and met the Department's criteria (*e.g.*, that it have an office, a scope of business declaration, third-party asset report, *etc.*). (Jia Tr. 648:22-649:18, Def's Exs. 33, 37, 40, 42 and 43.) TG also created Articles of Association for TTP, signed by TG's legal representative. (Jia Tr. 651:10-652:1; Def's Ex. 34.) TTP documented the appointment of its Board of Directors, as specified in TTP's Articles of Association. (Jia Tr. 652:19-653:21, Def's Ex. Jia 35.) TTP did not share any directors or managers with TG. (Zhang Tr. 80:21-81:10.) TTP provided information to third party accounting firms for the purposes of preparing financial statements for the years 2006, 2007 and 2008. (Jia Tr., Exs. 45, 47 and 46.)

53.     I am aware that TG initially contributed 15 million RMB to TTP's capital account. (*See* Jia Tr., Def's Ex. 37 (TTP Capital Verification Descriptions).) I note further that TTP rented manufacturing real estate (*see* Jia Tr., Def's Exs. 40, 43 (Lease Agreements between TG and TTP, dated Feb. 10 and 20, 2006)) and bought manufacturing equipment from TG (*see* Jia Tr., Def's Ex. 42 (Purchase and Sale Agreement, dated Feb. 20, 2006)). TTP also used the TG trademark by means of conducting a trademark authorization contract for a term of five years. (*See* Jia. Tr., Def's Ex. 41 (Trademark Use Authorization, dated Feb. 20, 2006).) These transactions are all adequately documented and constitute permissible transactions between a

parent company and its subsidiary under Chinese Company Law.  (*See* Art. 21 and Art. 217 para. 4 CCL.)

54.     Under Chinese law, TTP, TG and BNBM are legally distinct from one another and the traits and acts of each are not attributable to the others for liability or jurisdictional purposes unless attribution is permissible under an alternative legal theory as described in paragraphs 45 and 46 above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 30 day of March, 2012

By:   _Zhu Yan_____
         Zhu Yan

20

# Bibliography

一、论文类

1、"'利润剥夺'的请求权基础——兼评《中华人民共和国侵权责任法》第 20 条",载《法商研究》2011 年第 5 期。

2、"违反保护他人法律的过错责任",载《法学研究》2011 年第 4 期。

3、"欧洲合同法原则中的时效制度",载《月旦民商法杂志》2011 年第 3 期。

4、"强制缔约制度研究",载《清华法学》2011 年第 1 期。

5、"我国侵权责任法中的无过错责任",载《中国海洋大学学报》2010 年第 12 期。

6、"社会基础变迁与民法双重体系建构",载《中国社会科学》2010 年第 6 期。

7、Background and Key Contents of the new Chinese Tort Liability Law, (co-author with Helmut Koziol), in: Journal of European Tort Law, Vol. III, Nov. 2010

8、The Chinese Tort Law Draft (Second Edition) (co-author with Helmut Koziol), in: Jounral of European Tort Law, Vol. I, 2010.

9、 什么是恢复原状？—— 兼评中国大陆侵权责任承担方式，载《月旦民商法》（台湾地区）2009 年 12 月，总第 26 期。

10、The Background, Principles and Core Contents of The Real Right Law of The People's Republic of China, in: Maryland Series in Contemporary Asian Studies (USA), Number 2-2009 (197), ISBN 1-932330-27-5, 39 pp.

11、The Legislative Background of Chinese Tort Law and Its Key Issues, in: Tort Law in Third Millennium, FS für Gert Brüggemeier, Baden-Baden Germany, 2009

12、"风险社会下的危险责任地位及其立法模式",载《法学杂志》2009 年第 3 期。

13、"从大规模侵权看侵权责任法的体系变迁",载《中国人民大学学报》2009 年第 3 期。

14、"危险责任的一般条款立法模式研究",载《中国法学》2009 年第 3 期。

15、"风险社会与现代侵权责任法体系的基本结构",载《法学研究》2009 年第 5 期。

16、"《物权法》中'交付'的体系解释及其相关疑难问题",载《社会科学研究》2008 年第 3 期。

17、"论企业组织责任——企业责任的一个核心类型",载《法学家》2008 年第 3 期。

18、"面向新千年的民法典体系——二零零八年民法典体系与侵权法专题国际研讨会综述",载《月旦民商法》2008 年 12 月，总第 22 期。

19、"比较法视野下的中德侵权法——第二届中德侵权法研讨会综述"（与王竹博士合著），载《判解研究》2007 年第 3 期。

20、"繁荣发展中的中国民法学"（与王利明教授合著），载《中国法学》2007 年第 1 期。

21、"大规模侵权的实体法问题初探",载《法律适用》2006 年第 10 期。

22、"形式审查抑或实质审查",载《法学杂志》2006 年第 3 期。

23、"物权法草案权利质权评析"，载《中外法学》2006 年第 2 期。

24、"宅基地使用权"评释 评《物权法草案》第十三章，载《中外法学》2006 年第 1 期。

25、"当前物权立法和侵权立法中的疑难问题"，载《人民法院报》理论与实践周刊，2005 年 8 月 3 日。

26、"民法典一般条款研究"，载《月旦民商法》2005 年第 7 期。

27、"论格式条款的特征"，载《法学杂志》2005 年第 6 期。

28、"利于第三人合同研究"，载《法律科学》2005 年第 5 期。

29、"消灭时效制度中的基本问题——比较法上的分析—兼评我国时效立法"，载《中外法学》2005 年第 2 期。

30、"中美侵权法和人格权法综述"，载《判解研究》2005 年第 1 期。

31、"添附问题讨论"，载《判解研究》2005 年第 1 期。

32、"处在历史和现实之间－欧洲合同法原则简介"，载《民商法论丛》2004 年第 30 卷。

33、"欧洲合同法原则第三部分"，载《华东政法学院学报》2004 年第 6 期。

34、"当代德国侵权法上因果关系理论和实务中的主要问题"，载《法学家》2004 年第 6 期。

35、"论请求权"，载《判解研究》2003 年第 6 期。

36、"德国侵权法修订一览"，载《南京大学中德经济法年鉴》2003 年。


二、译文

1、"替代因果关系问题的解决路径"，载《中外法学》2009 年第 10 期。

2、克里斯蒂安•冯•巴尔（Christian von Bar），"欧洲《共同参考框架草案》及其第六编 "合同外责任"——作为欧洲私法的'工具箱'"，载《法学家》2009 年第 8 期。

3、海尔姆特•库奇奥（Helmut  Koziol），"损害赔偿法的重新构建：欧洲经验与欧洲趋势"，载《法学家》2009 年第 6 期。

4、海尔姆特•库奇奥（Helmut  Koziol），欧盟纯粹经济损失赔偿研究（朱岩、张玉东译），载《北京大学法律评论》，2009 年第 10 卷第 1 辑。

5、"欧洲合同法原则（第三部分）"，载《民商法论丛》2004 年第 30 卷。

6、"德国新债法概述"，载《比较法研究》2002 年第 2 期。


三、专著

1、《侵权责任法通论•总论》，法律出版社，2011。

2、《中国侵权法模范法典-条文与立法理由》（与 Prof. Brüggemeier 合著），北京大学出版社，2009。

3、 Entwurf für ein chinesisches Haftungsgesetz, Gert Brüggemeier/Zhu Yan, Mohr Siebeck, 2009 Germany.

4、 《中国物权法评注》（合著、第一作者，承担 50 万字），北京大学出版社，2007 年。

5、 Rechtsvergleich der Inhaltskontrolle von AGB in Deutschland and Formualrklauseln in China (Dissertation), Peter Lang, 2004 Germany.

6、 《德国新债法（Das Neue Deutsche Schuldrechtsmoderniesierungsgesetz）》，法律出版社，2003。

四、译著

《法律与历史》，法律出版社，2003 年。

（Rolf Knieper, Gesetz und Geschichte: Ein Beitrag zu Bestand und Veränderung des Bürgerlichen Gesetzbuches, Nomos Verlag 1996）

*Bibliography*

*Articles*
*1. The Basis of Claim Right for the Deprivation of Profit - Reviewing Article 20 in Chinese Tort Law, in: Studies in Law and Business, Vol.5, 2011*
*2. The Fault Liability in Violating the laws aim at protecting others, in: Chinese Journal of Law, Vol.4, 2011*
*3. Research on the Prescription System in the Principles of European Contract Law, in: Cross-Strait Law Review, Vol.3, 2011*
*4. Research on the Compulsory Contracting System, in: Tsinghua Law Journal, Vol.1, 2011*
*5. On No-fault Liability in Chinese Tort Law, in: Journal of Ocean University of China (Social Sciences), Vol.12, 2010*
*6. Changes in the Social Foundation and Construction of a Dual System of Civil Law, in: Social Sciences in China, Vol.6, 2010*
*7.Background and Key Contents of the new Chinese Tort Liability Law, (co-author with Helmut Koziol), in: Journal of European Tort Law, Vol. III, Nov. 2010*
*8.The Chinese Tort Law Draft (Second Edition) (co-author with Helmut Koziol), in: Jounral of European Tort Law, Vol. I, 2010.*
*9. What is Restoration in Kind? Reviewing the Liability Remedies in Chinese Tort Law, in: Cross-Strait Law Review, Vol. 26, Dec. 2009*
*10. The Background, Principles and Core Contents of The Real Right Law of The People's Republic of China, in: Maryland Series in Contemporary Asian Studies (USA), Number 2-2009 (197), ISBN 1-932330-27-5, 39 pp*
*11. The Legislative Background of Chinese Tort Law and Its Key Issues, in: Tort Law in Third Millennium, FS fur Gert Bruggemeier, Baden-Baden Germany, 2009*
*12. On The Liability to Hazard and its Legislative Mode In a Risk Society, in: Law Science Magazine, Vol.3, 2009*
*13. On the Systematic Transformation of the Tort Law Based on Mass Tort, in: Journal of Renmin University of China, Vol.3, 2009*
*14. A Study on General Legislative Mode of Liability of Danger, in:China Legal Science, Vol.3, 2009*
*15. Risk Society and Basic Structure of Tort Law System, in: Chinese Journal of Law, Vol.5, 2009*
*16. The Systematical Interpretation and its Problematic Issues of  "Transfer" in Chinese Law of Real Rights, in: Social Science Research, Vol. 3, 2008*
*17. On the Enterprise Organization Liability-as a Key Category of Enterprise Liability, in: Jurist, Vol. 3,2008*
*18. Towards the System of Civil Code in a New Millennium - Summary of the International Symposium of Civil Code System and Tort Law in 2008, in: Cross-Strait Law Review, Vol.22, 2008*
*19. Chinese and German Tort Law-from a Comparative Aspect, Summary of the Second Symposium for Chinese and German Tort Law, (co-authou with WANG Zhu), in: Case Research, Vol.3, 2007*
*20. Chinese Civil Law in the Prosperous Development (co-author with WANG Liming)-Civil Law Research Review, in: China Legal Science, Vol. 1, 2007*
*21. On the Substantial Legal Issues of Mass Torts, in: Journal of Law Application, Vol. 10, 2006*
*22. Formal Examination or Substantial Examination-on The Examination Duty of The Registration Agency for Immovable Property, in: Law Science Magazine, Vol.6,2009*
*23. Reflections on Pledge of Rights in the Draft of Real Right Law,in: Pecking University Law Journal, Vol.2, 2006*
*24. A Critique of " Right to the Use of Curtilage"- Comment on Chapter 13 in the Draft of Real Right Law, in: Pecking University Law Journal, Vol.1, 2006*

4

*25. Problematic Issues in the Current Legislation of the Law of Real Rights and Torts, in: Newspaper of People's Court, August 3, 2005*
*26. On the General Clause in Civil Code, in: Cross-Strait Law Review, Vol.7, 2005*
*27. On the Characteristics of Standard Terms, in: Law Science Magazine, Vol.6 2005*
*28. On the Contract in Favor of the Third Party, in: Law Science Magazine, Vol.6, 2005*
*29. Basic Issues on Prescription-A Comparative Analysis and a Study on the Relevant Legislation in China, in: Peking University Law Journal, Vol. 2, 2005*
*30. Summary of the Symposium of Chinese and American Tort Law and Law of Personality, in: Cases Research, Vol. 1, 2005*
*31. On Accession, in: Cases Research, Vol. 1, 2005*
*32. Between History and Reality-a Brief Introduction to the Principles of European Contract Law, in: Civil and Commercial Law Review, Vol. 30, 2004*
*33. Introduction to Part III of Principles of European Contract Law, in: Journal of East China University of Law and Politics, Vol.6, 2006*
*34. Key Issues of Causation in the Theory and Practice of Contemporary German Tort Law, in: Jurist, Vol. 6, 2004*
*35. On the Right of Claim, in: Cases Research, Vol. 3, 2006*
*36. Introduction to the New German Law of Obligation, in: Yearbook of the Chinese and German Economic Law of Nanjing University, 2003*

*Translation of Articles*
*1. Helmut Koziol, An Approach to the Alternative Causation, translated by Zhu Yan, Zhang Yudong, in: Peking University Law Journal, Vol.3, 2009*
*2. Christian von Bar, The Common Frame of Reference and Its Book VI "Non-Contractual Liability"-as the Toolbox of European Private Law, in: Jurist, Vol. 4, 2009*
*3. Helmut Koziol, Rebuilding the Law of Damages: European Experiences and Trends, in: Jurist, Vol. 3, 2009*
*4. Helmut Koziol, Study on the Pure Economic Loss, in: Peking University Law Review, Vol. 1, 2009, translated by Zhu Yan, Zhang Yudong*
*5. Part III of Principles of European Contract Law (Translation from the English Edition), in: Civil and Commercial Law Review, Vol. 30, 2004*
*6. Introduction to the New Law of Obligation of Germany (Wolfgang Däubler), in: Journal of Comparative Law, Vol. 2, 2002*

*Monograph*
*1. General Theory of Tort Law-General Provisions, Law Press, 2011*
*2. Model Draft of Chinese Law of Tort-Text and Commentary, co-author with Gert Bruggemeier, Peking University Press 2009.*
*3. Entwurf fur ein chineisches Haftungsgesetz, Gert Bruggemeier/Zhu Yan, Mohr Siebeck, 2009 Germany. (Draft for a Chinese Tort Law, Gert Bruggemeier/Zhu Yan, Mohr Siebeck, 2009 Germany.)*
*4. Comments and Notes on Chinese Real Right Law (Leader Author, Undertaking Half a Million Words), Pecking University Press, 2007*
*5. Rechtsvergleich der Inhaltskontrolle von AGB in Deutschland and Formualrklauseln in China (Dissertation), Peter Lang, 2004 Germany.*
*(Comparative Research of the Content Controlling of the Standard Terms in Germany and Formula Clauses in China (Dissertation), 2004 Germany)*
*6. The New German Modernization Law of Obligation, Law Press Beijing China, 2003*

*Translation of Books*

*1. Rolf Knieper, Gesetz und Geschichte: Ein Beitrag zu Bestand und Veranderung des Burgerlichen Gesetzbuches, Nomos Verlag 1996*

*(Rolf Knieper, Code and History: On the Establishment and Change of the German Civil Code, Nomos Verlag 1996)*

## Law School, Renmin University of China 

| PERSONAL INFORMATION | |
|---|---|



**Name:** Zhu Yan                    **Gender:** Male
**Birth date:** 26 November 1972
**Birth place:** Lianyungang City, Jiangsu Province, China
**Marital status:** Married, one Son

| EDUCATION AND RESEARCH EXPERIENCE |
|---|

**Teaching& Research:** Professor at Law School
Renmin University of China          **2011.06-present**
Associate Professor at Law School
Renmin University of China          **2006.06-2011.06**
Researcher in Civil Law Research Center
Renmin University of China          **2004.08-present**

**Visiting Scholar**      Harvard-Yenching Institute and Harvard Law School,
Cambridge, MA, USA          **2011.08-2012.08**
ECTIL (European Centre of Tort and Insurance Law,
Vienna)          **2010.01-2010.02**
ZERF (Zentrum für Europäische Rechtspolitik) as
BUKAS (Bundeskanzlerstipendium der AvH)
Comparative Research of Tort Law    **2007.08-2008.08**
Supervisor: Prof. Dr Gert Brüggemeier

**Post Doctorate:**      Max-Planck-Institut für Ausländisches und
Internationales Privatrecht in Hamburg, Germany
Comparative Research on Contract Law
Supervisor: Prof. Dr. Dr. Reinhard Zimmermann
**2003.10-2004.07**

**Doctor of Law:**      Juristische Fakultät der Universität Bremen, Germany
Doktorvater: Prof. Dr. Rolf Knieper    **1999.10-2003.10**
Dissertation: Rechtsvergleich der Inhaltskontrolle von
AGB in Deutschland und Formularklauseln in China,
Peter Lang Verlag, Germany, 2004
Grade: magna cum laude
Second reviewer of the dissertation:
Prof. Dr. Wolfgang Däubler

**Master of Law:**      Law School, Renmin University of China, studying civil
and commercial law.          **1996.09-1999.07**
Topic of Master Thesis: *Order of Different Rights on a
Same Real Estate*      Rank: A
Instructor of the thesis: Prof. Dr. WANG Liming

Law School, Renmin University of China

| **Bachelor:** | Major in Worldpolitics & Economy and International Relationship | **1991.09-1995.07** |

## OTHER INFORMATION

| **Legal Practice:** | Passed State Bar examination | **1996.10** |
| | Attorney | **2006.02-present** |

| **Social Activities** | President of Association of Chinese BUKAS (Bundeskanzlerstuipendiaten) der Homboldt-Stiftung in China **2009.02 – present** |
| | General Secretary Assistant of Chinese National Association of Civil Law |
| | Director of Institute of Comparative Research of Chinese and European Private Law, Renmin Law School |
| | Deputy Director of the Department of Civil and Commercial Law, Renmin Law School |

## LANGUAGES

| **Mother Tongue** | Chinese Mandarin |

**Foreign Languages**

| English | Excellent |
| German | Excellent |

## DECLARATION OF YUEN HIU SUM

I, Yuen Hiu Sum, declare that the following statements are true and correct:

1.      I am a senior translator with the law firm of Hogan Lovells International LLP, and work in the firm's office in Shanghai, China.

2.      I am fluent in the languages of Chinese and English.

3.      I have obtained a copy of the original Chinese version of the current *People's Republic of China Company Law*, effective January 1, 2006 (the "**PRC Company Law**") from the official website of the Central People's Government of the People's Republic of China (http://www.gov.cn/ziliao/flfg/2005-10/28/content_85478.htm).

4.      Based upon my ability to speak, read and write Chinese and English fluently, I have been responsible for translating certain provisions of the PRC Company Law, which are annexed hereto as "Hogan Lovells Unofficial Translation of the People's Republic of China Company Law (Excerpts)".

5.      I hereby certify that the English version of the provisions of the PRC Company Law annexed hereto is a true and accurate translation of the Chinese version of such provisions.

Executed on March 30, 2012.

Yuen Hiu Sum

# HOGAN LOVELLS UNOFFICIAL TRANSLATION
## OF
## THE PEOPLE'S REPUBLIC OF CHINA COMPANY LAW (EXCERPTS)

中华人民共和国公司法

## PEOPLE'S REPUBLIC OF CHINA COMPANY LAW

(中华人民共和国主席令第四十二号)

(Decree No. 42 of the President of the People's Republic of China)

《中华人民共和国公司法》已由中华人民共和国第十届全国人民代表大会常务委员会第十八次会议于 2005 年 10 月 27 日修订通过，现将修订后的《中华人民共和国公司法》公布，自 2006 年 1 月 1 日起施行。

The *People's Republic Of China Company Law* has been amended by, and adopted at, the 18th Session of the Standing Committee of the Tenth National People's Congress held on 27 October 2005. The *People's Republic of China Company Law*, as amended, is hereby promulgated and shall come into force on 1 January 2006.

中华人民共和国主席　胡锦涛

2005 年 10 月 27 日

Hu Jintao, President of the People's Republic of China

27 October 2005

中华人民共和国公司法

## PEOPLE'S REPUBLIC OF CHINA COMPANY LAW

（1993 年 12 月 29 日第八届全国人民代表大会常务委员会第五次会议通过　根据 1999 年 12 月 25 日第九届全国人民代表大会常务委员会第十三次会议《关于修改〈中华人民共和国公司法〉的决定》第一次修正　根据 2004 年 8 月 28 日第十届全国人民代表大会常务委员会第十一次会议《关于修改〈中华人民共和国公司法〉的决定》第二次修正；第十届全国人民代表大会常务委员会第十八次会议修订）

(Adopted at the 5th Session of the Standing Committee of the Eighth National People's Congress on 29 December 1993. Amended for the first time pursuant to the *Decision on the*

Hogan Lovells

- 2 -

*Amendment of the People's Republic of China Company Law* taken at the 13th session of the Standing Committee of the Ninth People's Congress on 25 December 1999; amended for the second time pursuant to the *Decision on the Amendment of the People's Republic of China Company Law* taken at the 11th session of the Standing Committee of the Tenth National People's Congress of the People's Republic of China on 28 August 2004; amended at the 18th session of the Standing Committee of the Tenth People's Congress.)

第一章 总 则

## CHAPTER I: GENERAL PRINCIPLES

第二条 本法所称公司是指依照本法在中国境内设立的有限责任公司和股份有限公司。

ARTICLE 2 A "company", when referred to herein, means a limited liability company or a joint stock limited liability company established in China in accordance with the provisions of this law.

第四条 公司股东依法享有资产收益、参与重大决策和选择管理者等权利。

ARTICLE 4 The shareholders in a company enjoy the right to derive benefits from the company's assets, to participate in major decisions, to select company's management and other such like rights.

第十一条 设立公司必须依法制定公司章程。公司章程对公司、股东、董事、监事、高级管理人员具有约束力。

ARTICLE 11 When establishing a company, its articles of association must be formulated in accordance with law. The articles of association of the company are binding upon the company, its shareholders, directors, supervisors and senior management personnel.

第十三条 公司法定代表人依照公司章程的规定，由董事长、执行董事或者经理担任，并依法登记。公司法定代表人变更，应当办理变更登记。

ARTICLE 13 The chairman of the board, an executive director or manager shall serve as the legal representative of a company in accordance with the provisions of the articles of association of the company, and such appointment shall be registered in accordance with law. In the event that the legal representative of the company is changed, procedures for registration of the changes must be carried out.

第十四条 公司可以设立分公司。设立分公司，应当向公司登记机关申请登记，领取营业执照。分公司不具有法人资格，其民事责任由公司承担。

ARTICLE 14 A company is permitted to establish branch companies. In order to set up a branch company, a company must apply to register the branch company with the company registration authorities, and obtain a business licence for such branch company. Branch companies do not have legal personality, and their civil liabilities are to be borne by the companies [that formed them].

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

- 3 -

公司可以设立子公司，子公司具有法人资格，依法独立承担民事责任。

A company is permitted to establish subsidiary companies with legal personality, which will bear civil liability independently in accordance with law.

**第二十条** 公司股东应当遵守法律、行政法规和公司章程，依法行使股东权利，不得滥用股东权利损害公司或者其他股东的利益；不得滥用公司法人独立地位和股东有限责任损害公司债权人的利益。

**ARTICLE 20** The shareholders of a company must comply with laws, administrative regulations and the company's articles of association, exercise shareholder rights in accordance with law, and must not abuse their rights as shareholders to prejudice the interests of the company or other shareholders; they must not abuse the independent legal personality of the company or shareholder limited liability status to prejudice the interests of the company's creditors

公司股东滥用股东权利给公司或者其他股东造成损失的，应当依法承担赔偿责任。

In the event that an abuse of shareholder rights by a shareholder of a company causes the company or any other shareholder to suffer losses, the [first-named] shareholder must bear liability for compensation in accordance with law.

公司股东滥用公司法人独立地位和股东有限责任，逃避债务，严重损害公司债权人利益的，应当对公司债务承担连带责任。

In the event that a shareholder of a company misuses the independent legal personality of the company or its shareholder limited liability status in order to evade debts, thereby seriously prejudicing the interests of the company's creditors, such shareholder shall bear joint liability for the company's debts.

**第二十一条** 公司的控股股东、实际控制人、董事、监事、高级管理人员不得利用其关联关系损害公司利益。

**ARTICLE 21** The controlling shareholder, actual controller, directors, supervisors, and senior management personnel of a company must not use their connected party relationships to prejudice the interests of the company.

违反前款规定，给公司造成损失的，应当承担赔偿责任。

In the event that a company suffers losses as a result of a breach of the provisions of the preceding paragraph, the relevant person(s) must bear liability for compensation.

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells 

- 4 -

第二章　有限责任公司的设立和组织机构

CHAPTER II: ESTABLISHMENT AND ORGANISATIONAL

STRUCTURE OF A LIMITED LIABILITY CCOMPANY

第一节　设立

SECTION 1　ESTABLISHMENT

**第二十四条**　有限责任公司由五十个以下股东出资设立。

**ARTICLE 24**　A limited liability company shall be established through capital contributions made by up to 50 shareholders.

**第二十六条**　有限责任公司的注册资本为在公司登记机关登记的全体股东认缴的出资额。公司全体股东的首次出资额不得低于注册资本的百分之二十，也不得低于法定的注册资本最低限额，其余部分由股东自公司成立之日起两年内缴足；其中，投资公司可以在五年内缴足。

**ARTICLE 26**　The registered capital of a limited liability company is the aggregate amount of capital contributions agreed to be contributed by all its shareholders registered with the company registration authorities.  The [aggregate amount of] the first instalments of capital contributions made by all of the company's shareholders to the company must be not less than 20% of the company's  registered capital, and must not be less than the statutory minimum amount of registered capital.  The balance must be paid in by shareholders within two years of the date of the company's establishment.  However, the registered capital of an investment company is permitted to be paid in within five years.

有限责任公司注册资本的最低限额为人民币三万元。法律、行政法规对有限责任公司注册资本的最低限额有较高规定的，从其规定。

The minimum amount of registered capital for a limited liability company is RMB30,000.  In the event that laws and administrative regulations impose a higher minimum in relation to the registered capital of limited liability companies, such provisions [of the relevant laws and administrative regulations] shall apply.

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells



- 5 -

## 第二节　组织机构

### SECTION 2   ORGANISATIONAL STRUCTURE

**第三十八条**　　股东会行使下列职权：

**ARTICLE 38**　　The shareholders' meeting exercises the following functions and powers:

（一）　　决定公司的经营方针和投资计划；

(1)　　determining the company's business orientation and investment plans;

（二）　　选举和更换非由职工代表担任的董事、监事，决定有关董事、监事的报酬事项；

(2)　　electing and replacing directors and supervisors other than those who are workers' representatives, and determining matters relating to the remuneration of directors and supervisors;

（三）　　审议批准董事会的报告；

(3)　　deliberating on and approving reports produced by the board of directors;

（四）　　审议批准监事会或者监事的报告；

(4)　　deliberating on and approving reports produced by the supervisory board or the supervisors, as the case may be;

（五）　　审议批准公司的年度财务预算方案、决算方案；

(5)　　deliberating on and approving annual financial budget plans and final accounting plans in relation to the company;

（六）　　审议批准公司的利润分配方案和弥补亏损方案；

(6)　　deliberating on and approving profit distribution plans in relation to the company and plans to make up losses suffered by the company;

（七）　　对公司增加或者减少注册资本作出决议；

(7)　　adopting resolutions relating to increases or reductions in the company's registered capital;

（八）　　对发行公司债券作出决议；

(8)　　adopting resolutions relating to the issue of corporate bonds;

（九）　　对公司合并、分立、解散、清算或者变更公司形式作出决议；

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

- 6 -

(9)    adopting resolutions relating to mergers, divisions, changes in corporate form, or the dissolution or liquidation of the company;

（十）    修改公司章程；

(10)    amending the company's articles of association; and

（十一）    公司章程规定的其他职权。

(11)    such other functions and powers as are prescribed in the company's articles of association.

对前款所列事项股东以书面形式一致表示同意的，可以不召开股东会会议，直接作出决定，并由全体股东在决定文件上签名、盖章。

In the event that the shareholders unanimously agree in writing to any of the matters listed in the preceding paragraph, there is no need to call a shareholders' meeting, and a decision can be made directly. All shareholders must sign or chop the document(s) setting forth such decision.

**第四十七条**    董事会对股东会负责，行使下列职权：

**ARTICLE 47**    The board of directors is accountable to the shareholders' meeting, and shall exercise the following functions and powers：

（一）    召集股东会会议，并向股东会报告工作；

(1)    being responsible for convening shareholders' meetings and presenting reports to the shareholders' meeting;

（二）    执行股东会的决议；

(2)    implementing resolutions adopted by the shareholders' meeting;

（三）    决定公司的经营计划和投资方案；

(3)    determining the company's business plans and investment plans;

（四）    制订公司的年度财务预算方案、决算方案；

(4)    preparing annual financial budget plans and final accounting plans in relation to the company;

（五）    制订公司的利润分配方案和弥补亏损方案；

(5)    preparing profit distribution plans for the company and plans for making up any losses suffered by the company;

（六）    制订公司增加或者减少注册资本以及发行公司债券的方案；

(6)    preparing plans for increasing or reducing the company's registered capital and for the issue of corporate bonds;

（七）    制订公司合并、分立、解散或者变更公司形式的方案；

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

(7)    formulating plans for mergers, divisions, changes of corporate form or the dissolution of the company;

（八）   决定公司内部管理机构的设置；

(8)    determining the company's internal management structure;

（九）   决定聘任或者解聘公司经理及其报酬事项，并根据经理的提名决定聘任或者解聘公司副经理、财务负责人及其报酬事项；

(9)    determining the appointment or removal of the company's manager and the matters relating to his remuneration, and upon the manager's recommendation, the appointment or removal of the company's deputy manager(s) and chief financial officer, as well as the matters relating to their remuneration;

（十）   制定公司的基本管理制度；

(10)   formulating the basic management system for the company; and

（十一）  公司章程规定的其他职权。

(11)   such other functions and powers as are prescribed in the company's articles of association.

**第五十一条**    股东人数较少或者规模较小的有限责任公司，可以设一名执行董事，不设董事会。执行董事可以兼任公司经理。

**ARTICLE 51**    A small-scale limited liability company or a limited liability company with only a few shareholders may appoint an executive director and not establish a board of directors.  The executive director may serve concurrently as the company's manager.

执行董事的职权由公司章程规定。

The functions and powers of the executive director shall be prescribed in the company's articles of association.

**第五十二条**    有限责任公司设监事会，其成员不得少于三人。股东人数较少或者规模较小的有限责任公司，可以设一至二名监事，不设监事会。

**ARTICLE 52**    Where a limited liability company establishes a supervisory board, it shall be made up of not fewer than three members.  A small-scale limited liability company or a limited liability company with only a few shareholders is permitted to appoint one or two supervisors, instead of establishing a supervisory board.

监事会应当包括股东代表和适当比例的公司职工代表，其中职工代表的比例不得低于三分之一，具体比例由公司章程规定。监事会中的职工代表由公司职工通过职工代表大会、职工大会或者其他形式民主选举产生。

The supervisory board shall be composed of shareholders' representative(s) and an appropriate proportion of the company's workers' representative(s) as

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

- 8 -

prescribed in the articles of association, but the proportion of workers' representative(s) must not be lower than one-third.   The workers' representative(s) on the supervisory board shall be elected by the company's workers through the workers' representatives' congress, workers' meeting or other democratic methods.

监事会设主席一人，由全体监事过半数选举产生。监事会主席召集和主持监事会会议；监事会主席不能履行职务或者不履行职务的，由半数以上监事共同推举一名监事召集和主持监事会会议。

The supervisory board shall have one chairman, who shall be elected by more than half in number of all the supervisors.   The chairman of the supervisory board shall convene and preside over meetings of the supervisory board; in the event that the chairman is unable or fails to perform his duties, another supervisor jointly elected by half or more in number of the supervisors shall convene and preside over the meeting of the supervisory board.

董事、高级管理人员不得兼任监事。

Directors and senior management personnel are not permitted to serve concurrently as supervisors.

第五十四条 监事会、不设监事会的公司的监事行使下列职权：

**ARTICLE 54** The supervisory board or the supervisors in a company which has not established a supervisory board shall exercise the following functions and powers:

（一）   检查公司财务；

(1)   examining the company's finances;

（二）   对董事、高级管理人员执行公司职务的行为进行监督，对违反法律、行政法规、公司章程或者股东会决议的董事、高级管理人员提出罢免的建议；

(2)   monitoring the acts of the directors and senior management personnel when carrying out their duties in relation to the company, and making proposals to remove from their positions those directors or senior management personnel who violate laws, administrative regulations, the company's articles of association or resolutions of the shareholders' meeting;

（三）   当董事、高级管理人员的行为损害公司的利益时，要求董事、高级管理人员予以纠正；

(3)   requiring directors or senior management personnel to rectify their conduct when any of their actions prejudice the interests of the company;

（四）   提议召开临时股东会会议，在董事会不履行本法规定的召集和主持股东会会议职责时召集和主持股东会会议；

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

(4)     putting proposals forward for holding ad hoc shareholders' meetings, convening and presiding over shareholders' meetings when the board of directors fails to perform its duty to convene and preside over shareholders' meetings as prescribed in this law;

（五）    向股东会会议提出提案；

(5)     putting forward proposals to shareholders' meetings;

（六）    依照本法第一百五十二条的规定，对董事、高级管理人员提起诉讼；

(6)     bringing lawsuits against directors or senior management personnel in accordance with the provisions of Article 152 of this law;

（七）    公司章程规定的其他职权。

(7)     such other functions and powers as are prescribed by the company's articles of association.


### 第三节　一人有限责任公司的特别规定

### SECTION 3　SPECIAL PROVISIONS ON SINGLE-PERSON LIMITED LIABILITY COMPANIES


**第五十八条**　一人有限责任公司的设立和组织机构，适用本节规定；本节没有规定的，适用本章第一节、第二节的规定。

**ARTICLE 58**　The provisions of this Section shall apply to the establishment and organisational structures of single-person limited liability companies; matters not provided for in this Section shall be governed by the provisions of Section 1 and Section 2 of this Chapter II.

本法所称一人有限责任公司，是指只有一个自然人股东或者一个法人股东的有限责任公司。

The expression "single-person limited liability company" when referred to in this law means a limited liability company with only one natural person or legal person as a shareholder.

**第五十九条**　一人有限责任公司的注册资本最低限额为人民币十万元。股东应当一次足额缴纳公司章程规定的出资额。

**ARTICLE 59**　The minimum registered capital of a single-person limited liability company is RMB100,000.  Such sole shareholder must pay its capital contribution as specified in the company's articles of association in full in a single lump sum.

一个自然人只能投资设立一个一人有限责任公司。该一人有限责任公司不能投资设立新的一人有限责任公司。

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

- 10 -

Each natural person is only allowed to establish one single-person limited liability company, which itself is not permitted to invest in and establish any further single-person limited liability companies.

第六十条     一人有限责任公司应当在公司登记中注明自然人独资或者法人独资，并在公司营业执照中载明。

**ARTICLE 60**   A single-person limited liability company must clearly state in its company registration whether it is solely funded by one natural person or by one legal person, and the same information shall be clearly specified in the company's business licence.

第六十一条    一人有限责任公司章程由股东制定。

**ARTICLE 61**   The articles of association of a single-person limited liability company shall be formulated by the sole shareholder.

第六十二条    一人有限责任公司不设股东会。股东作出本法第三十八条第一款所列决定时，应当采用书面形式，并由股东签名后置备于公司。

**ARTICLE 62**   A single-person limited liability company shall not have any shareholders' meeting.  When the sole shareholder makes a decision on any of the matters listed in Article 38 of this law, he shall make it in written form, execute as the sole shareholder and archive it in the company.

第六十三条    一人有限责任公司应当在每一会计年度终了时编制财务会计报告，并经会计师事务所审计。

**ARTICLE 63**   A single-person limited liability company must formulate a financial accounting report by the end of every accounting year, which must be audited by an accounting firm.

第六十四条    一人有限责任公司的股东不能证明公司财产独立于股东自己的财产的，应当对公司债务承担连带责任。

**ARTICLE 64**   If the sole shareholder of a single-person limited liability company is unable to prove that the property of the single-person limited liability company is separate from the shareholder's own property, the shareholder shall bear joint liability for the debts of the company.

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

- 11 -

第四章　股份有限公司的设立和组织机构

CHAPTER IV: ESTABLISHMENT AND ORGANISATIONAL

STRUCTURE OF A JOINT STOCK LIABILITY LIMITED COMPANY


第一节　设　立

SECTION 1　ESTABLISHMENT


第七十八条　　　股份有限公司的设立，可以采取发起设立或者募集设立的方式。

ARTICLE 78　　A joint stock limited liability company may be established either by way of promotion or public offering.

发起设立，是指由发起人认购公司应发行的全部股份而设立公司。

"Establishment of a company by way of promotion" means establishment of the company through subscription by the company's promoters for all the shares to be issued by such company.

募集设立，是指由发起人认购公司应发行股份的一部分，其余股份向社会公开募集或者向特定对象募集而设立公司。

"Establishment of a company by way of public offering" means establishment of the company through subscription by the company's promoters for part of the shares to be issued by such company and offering the remaining shares to the public by way of public offering or placing the remaining shares with specific subscribers.


第三节　董事会、经理

SECTION 3　BOARD OF DIRECTORS, MANAGERS


第一百一十六条　公司不得直接或者通过子公司向董事、监事、高级管理人员提供借款。

ARTICLE 116　A company must not directly, or [indirectly] through its subsidiary companies, provide loans to its directors, supervisors, or senior management personnel.

第一百一十七条　公司应当定期向股东披露董事、监事、高级管理人员从公司获得报酬的情况。

ARTICLE 117　A company must periodically disclose to its shareholders the remuneration obtained from the company by its directors, supervisors and senior management personnel.


This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells 

- 12 -

第五节　上市公司组织机构的特别规定

SECTION 5    SPECIAL PROVISIONS ON THE ORGANISATIONAL STRUCTURE OF LISTED COMPANIES

第一百二十三条　上市公司设立独立董事，具体办法由国务院规定。

**ARTICLE 123**    Listed companies shall have independent directors.  The specific procedures shall be stipulated separately by the State Council.

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells 

- 13 -

第五章  股份有限公司的股份发行和转让

CHAPTER V: ISSUES OF SHARES BY, AND TRANSFERS OF SHARES IN, JOINT STOCK LIMITED LIABLITY COMPANIES

第一节  股份发行

SECTION 1:  ISSUES OF SHARES

第一百二十九条   股票采用纸面形式或者国务院证券监督管理机构规定的其他形式。

**ARTICLE 129**   Shares shall take the form of paper shares or such other forms as may be stipulated by the State Council Securities Supervision and Administration Organs[1].

股票应当载明下列主要事项：

The following items must be stated on the face of the share [certificate];

（一）     公司名称；

(1)         the name of the company;

（二）     公司成立日期；

(2)         the date of establishment of the company;

（三）     股票种类、票面金额及代表的股份数；

(3)         the type of shares, the par value and the numbers of shares it represents;

（四）     股票的编号。

(4)         the serial number of the share [certificate].

股票由法定代表人签名，公司盖章。

Share [certificates] must be signed by the [company's] legal representative and affixed with the company seal.

发起人的股票，应当标明发起人股票字样。

Promoters' shares must bear the legend "promoters' shares".

---

[1] TN: i.e., the China Securities Regulatory Commission or CSRC.

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

- 14 -

## 第七章　公司债券

### CHAPTER VII: CORPORATE BONDS

**第一百五十六条**　公司以实物券方式发行公司债券的，必须在债券上载明公司名称、债券票面金额、利率、偿还期限等事项，并由法定代表人签名，公司盖章。

**ARTICLE 156**　Where a company issues corporate bonds in materialised form[2], it must state on the certificate the company name, the face value of the bond, the interest rate, the time limit for repayment and such like matters, and the bond must be signed by [the company's] legal representative and affixed with the company seal.

---

[2] TN: i.e., paper or physical form as opposed to dematerialised bonds traded over a computer system.

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

- 15 -

第十三章 附　则

## CHAPTER XIII: SUPPLEMENTAL PROVISIONS

第二百一十七条　本法下列用语的含义：

ARTICLE 217   In this law, the following expressions have the meanings set out below:

（一）　高级管理人员，是指公司的经理、副经理、财务负责人，上市公司董事会秘书和公司章程规定的其他人员。

(1)   "senior management personnel" means the company's manager, deputy manager, chief financial officer, company secretary (in case of a listed company) and other officers stipulated in the company's articles of association;

（二）　控股股东，是指其出资额占有限责任公司资本总额百分之五十以上或者其持有的股份占股份有限公司股本总额百分之五十以上的股东；出资额或者持有股份的比例虽然不足百分之五十，但依其出资额或者持有的股份所享有的表决权已足以对股东会、股东大会的决议产生重大影响的股东。

(2)   "controlling shareholder" means, in the case of a limited liability company, a shareholder who has made 50% or more of the company's total capital contributions, or, in the case of a joint stock limited liability company, a shareholder who owns 50% or more of the total share capital of that joint stock limited liability company; or a shareholder whose capital contribution ratio or shareholding percentage is below 50%, but the voting rights attached to such capital contribution or the shares held are sufficient for the shareholder to exert a material influence on the shareholders' meeting or shareholders' general meeting;

（三）　实际控制人，是指虽不是公司的股东，但通过投资关系、协议或者其他安排，能够实际支配公司行为的人。

(3)   "actual controller" means a person who is not a shareholder of the company, but who, through an investment relationship, contract or other arrangements, is able to actually control the company's actions;

（四）　关联关系，是指公司控股股东、实际控制人、董事、监事、高级管理人员与其直接或者间接控制的企业之间的关系，以及可能导致公司利益转移的其他关系。但是，国家控股的企业之间不仅因为同受国家控股而具有关联关系。

(4)   "connected party relationship" means the relationship between a company's controlling shareholder, actual controller, directors, supervisors, senior management personnel and other enterprises directly or indirectly controlled by them, as well as other

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells

- 16 -

relationships which might cause the company's interests to be transferred.   However, as between State-controlled enterprises, they shall not be deemed to have a connected party relationship merely because they are all controlled by the State.

This translation © Hogan Lovells March 2012, all rights reserved.

Hogan Lovells