**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | :  MDL No. 2047<br>:<br>:  SECTION L<br>: |
| THIS DOCUMENT RELATES TO:<br>Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al., Case No. 2:09-cv-6687 (E.D. La.) | :  JUDGE ELDON E. FALLON<br>:<br>:  MAG. JUDGE WILKINSON<br>: |
| The Mitchell Co., Inc. v. Knaup Gips KG, et al., Case No. 09-4115 (E.D. La.) | :<br>:<br>: |
| Wiltz v. Beijing New Building Materials Public Ltd. Co., et al., Case No. 10-361 (E.D. La.) | :<br>:<br>: |
| Gross v. Knauf Gips KG, et al., 2:09-cv-06690 (E.D. La.) | :<br>: |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED EVIDENCE**
**SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTIONS**

The Plaintiffs' Steering Committee ("PSC"), certain Florida Homebuilders ("Homebuilders"), certain Banner entities ("Banner"), the State of Louisiana, Interior Exterior Building Supply, L.P. ("INEX") and The Mitchell Co., Inc. ("Mitchell") (collectively, "Plaintiffs") have submitted testimony, affidavits, declarations, and over 200 exhibits in opposition to the motions of defendant Taishan Gypsum, Co. Ltd. ("TG") and Taian Taishan Plasterboard ("TTP") to, *inter alia*, dismiss the four actions referenced above for lack of personal jurisdiction. [1]  Below, TG and TTP submit a chart listing the testimony, affidavits and declarations, and exhibits that are inadmissible into evidence, and the basis of their objections. [2]

---

[1] TG has moved to vacate its default and dismiss the complaint in *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687 ("*Germano*") (Rec. Doc. No. 13490) and *Mitchell Co. v. Taishan Gypsum, Co., Ltd.*, Case No. 09-4115 ("*Mitchell*") (Rec. Doc. No. 13566).  TG and TTP have moved to dismiss for lack of personal jurisdiction in *Gross v.*

When a defendant submits evidence to show that it is not subject to personal jurisdiction, only admissible evidence can be offered in opposition. *Cooper v. McDermott Int'l., Inc.*, 62 F.3d 395 (5th Cir. 1995) (unpublished). As the court held, "[w]hen directly contradicted by defendant's affidavit, hearsay evidence will not defeat a motion for dismissal under Rule 12(b) (2)." *Id.; accord*, *NetKnowledge Techs., L.L.C. v. Baron Capital V, Inc.*, No. Civ. A. 3:02-CV-2406, 2003 WL 23201333, at *3 (N.D. Tex. July 24, 2003) (granting defendant's motion to dismiss for lack of personal jurisdiction after holding an evidentiary hearing due to "insufficient reliable, non-hearsay evidence" of minimum contacts).

The "evidence" proffered by the Plaintiffs, as referenced in the chart below, is inadmissible for the reasons stated below. Many of TG's and TTP's objections to the documentary evidence offered in opposition to their motions are based on hearsay (Federal Rules of Evidence ("FRE") 802) and lack of authentication (FRE 901(a)). Defendants have objected to the admission into evidence of documents unless a witness with knowledge and subject to cross-examination has authenticated them and provided testimony establishing an exception to the hearsay rules. Numerous of Plaintiffs' documents did not have the proper foundation laid for admissibility. By contrast, TG and TTP anticipated that it would be extremely time consuming for foundations to be laid for the admissibility of each business record that was to be the subject

---

*Knauf Gips KG*, Case No. 2:09-cv-06690 ("*Gross*") (Rec. Doc. No. 13590), and *Wiltz v. Beijing New Building Materials Public Ltd. Co.,* Case No 10-361 ("*Wiltz*"). The PSC has submitted a "Global Statement of Facts in Opposition to Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in *Germano* and *Mitchell* and (2) Taishan's Motions to Dismiss the Complaints in *Gross* and *Wiltz*" ("Global Statement of Facts") in opposition to each motion. The Global Statement of Facts has been incorporated by reference by the PSC in its opposition to each of the above referenced motions, and also by the Homebuilders, Banner and Mitchell in the opposition papers they submitted in *Mitchell*, and by the State of Louisiana and INEX in the opposition papers they submitted in *Wiltz* and Defendants incorporate their objections to the evidence referred to in the Global Statement of Facts to the extent it is incorporated elsewhere by Plaintiffs. To the extent that any of Plaintiffs' responsive papers make a specific reference to evidence submitted in the Global Statement of Facts to which Defendants have objected, the chart below also attempts to cite to that reference.

[2] In general, when inadmissible evidence is offered to support an assertion for which there is other admissible evidence, Defendants have not objected to the inadmissible evidence.

of the deposition examinations of the witnesses whose depositions were taken in Hong Kong in January 2012. Thus, TG and TTP and the PSC stipulated to an Order (Rec. Doc. 12126) regarding the authentication of certain documents produced by TG and TTP, and the removal of certain hearsay objections to those documents.

Further, Defendants object pursuant to Fed. R. Civ. P. 32(a)(4) to the admission of deposition testimony from certain witnesses. Specifically, Defendants object to the admission, in their entirety, of the deposition testimony offered by Robert Scharf, President of Devon International Trading, dated 3/24/11, and Ruth Wu, Vice President of Devon International Trading, dated 2/25/2011, as these depositions were not taken in actions to which Defendants were parties, and to the deposition testimony of GD Distributors, LLC, by Darrin Steber, dated 12/30/2011, as the witness resides less than 100 miles from the place of the hearing.

Defendants' specific objections are set forth below. Annexed as Exhibits 1-65 are the testimony, affidavits, declarations, and exhibits to which Defendants object, organized in order of the objections set forth below.

| Ex./Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence |
|---|---|---|---|
| 1. | Herman Aff.[3] 1 – Chart Summarizing TG's and TTP's sales of drywall. | Global Statement of Facts-2-3; PSC *Germano* Response-2, n.2[4]; PSC *Gross* and *Wiltz* Response-2, n.1; 14, n.17, 21, n.47[5]; PSC *Mitchell* Response-18 [6]; PSC's Global Memorandum of Law-1, n.2[7]; Homebuilders' Response-36, n.164[8] | FRE 1006 – This consists of argument, not evidence.  The title, "Taishan Gypsum Board Sales to the United States," is itself argumentative, as Defendants do not concede that the drywall they sold in dimensions commonly used in the United States was delivered to the United States.  Footnote 2 states, without evidentiary support, that "TTP knows the drywall was shipped to the United States", which is a contested fact.  It goes on to say "TG/TTP's position is incredible," which is obviously argument.  Similarly, it is argument that "TG/TTP used Taian Taigao [Trading Corp.] as an 'exporter'" for a transaction involving Guardian Building Products, "yet fully controlled the Guardian transaction" and thus the Chart attributes sales to specific States rather than to transactions where the "importer" is not known.  Further, the Chart heading "State Impacted" is argumentative.  Additionally, Pages 1, 6, and 8 of the summary do not accurately reflect the content of the original materials.  *See White Indus., Inc. v. Cessna Aircraft, Co.*, 611 F. Supp. 1049, 1070-71 (W.D. Mo. 1985).  Page 1 summarizes pages 2-9; page 6 concludes that sales made to Shenzen Yongfeng Investment Company, Ltd. were "to the United States" without any supporting evidence; page 8 is based on Document GBP000879, which is inadmissible hearsay (FRE 802) and has not been properly authenticated (FRE 901). |

---

[3] References "Herman Aff." are to exhibits attached to the affidavit of Russ M. Herman, sworn to May 7, 2012.

[4] References "PSC *Germano* Response" are to "The Plaintiffs' Steering Committee's Response in Opposition to Taishan's Renewed Motion Pursuant to Rules 55(c) and 12(B)(2) to Vacate the Entry of Default and to Dismiss and Amicus Brief on Florida Law Relating to Jurisdictional Issues Raised by Taishan" filed in *Germano*.

**Testimony by Third Parties As to TG's or TTP's State of Mind[9]**

| Ex./Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence |
|---|---|---|---|
| 2. | Herman Aff. 9, Gonima I Dep. at 50:4-9, cited to support statement that that TTP was willing to put Oriental Trading name on drywall. | Global Statement of Facts-17, n.74 | FRE 602 – Witness could not testify as to TTP's state of mind; lack of foundation to support assertion. |
| 3. | Herman Aff. 11, OEG Dep.[10] at 91:10-92:8. "Taishan was generating the boards. . . knowing that it was to be used for American customers . . . ." | Global Statement of Facts-18 | FRE 602 – The testimony is offered to show that defendants affixed a bar code, but 92:4-8 is testimony concerning the witness's understanding of "Taishan's" state of mind. |

---

[5] References "PSC *Gross* and *Wiltz* Response" are to the "Plaintiffs' Steering Committee's Response in Opposition to Taishan's Motions, Pursuant to Rule 12(B)(2) to Dismiss the Complaints" filed in *Gross* and *Wiltz*.

[6] References "PSC *Mitchell* Response" are to "The Plaintiffs' Steering Committee's Response in Opposition to Taishan's Renewed Motion Pursuant to Rules 55(c) and 12(B)(2) to Vacate the Entry of Default and to Dismiss and Amicus Brief on Florida Law Relating to Jurisdictional Issues Raised by Taishan" filed in *Mitchell*.

[7] References "PSC's Global Memorandum of Law" are to "the Plaintiffs' Steering Committee's Global Memorandum of Law in Opposition to (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints and Amicus Brief on Florida Law Relating to Jurisdictional Issues Raised by Taishan" filed in *Mitchell*.

[8] References "Homebuilders' Response" are to "Certain Florida Homebuilders' Amicus Curiae Response to Taishan Gypsum Co. Ltd.'s Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate Entry of Default and Dismiss this Action" in *Mitchell*.

[9] TG and TTP object pursuant to FRE 602 to all testimony by third parties as to the state of mind of TG or TTP or any of their employees.

[10] References "OEG Dep." are to the deposition of OEG Building Materials by Joseph Weiss, taken on 2/16/11.

| 4. | Herman Aff. 11, OEG Dep. at 116:23-117:15, 133:8-136:16, "Taishan knew boards were to be used for American customers" and "understood that they were generating metal studs for sale to OEG . . . that OEG was going to be selling them in the New York metropolitan area." | Global Statement of Facts-18, n.78 | FRE 602 |
|---|---|---|---|
| 5. | Herman Aff. 9, Gonima I Dep.[11] at 51:1-3, "Taishan was happy to do a custom label [for its customers]". | Global Statement of Facts-18, n.79; Homebuilders' Response-32, n.147 | FRE 602 |
| 6. | Herman Aff. 47 (Ex. 9 to Wood Nation Dep.[12] dated 2/14/11),  offered to support the contention that "Taishan was happy to do a custom label." | Global Statement of Facts-18, n.79 | FRE 602, 901 |
| 7. | Herman Aff. 9, Gonima I Dep. at 51:1-3, cited for testimony that "Q: Taishan was happy to do a custom label for you? A: Yeah." | Global Statement of Facts-18, n.79 | FRE 602 |
| 8. | Herman Aff. 97, Onyx Dep.,[13] 28:9-21, cited for the proposition that Taishan knew that cargo would be delivered in Miami, Florida. | Global Statement of Facts-39, n.168 | FRE 602 |

---

[11] References "Gonima I" and "Gonima II" Dep. are to the deposition of Ivan Gonima taken on 12/13/11 and 2/14/12, respectively.

[12] References "Wood Nation Dep." are to the deposition of Wood Nation by Richard Hannam taken on 2/14/11.

[13] References "Onyx Dep." are to the deposition of Onyx Gbh Corporation by Rafael Sardi, dated 2/9/12.

| 9. | Herman Aff. 11, OEG Dep. at 76:10-14 states: "Taishan understood, TTP understood, that the board would end up, after [OEG] sold it, being distributed into the New York metropolitan area." | Global Statement of Facts-49, n.228 | FRE 602 |
|----|---|---|---|
| 10. | Herman Aff. 11, OEG Dep. at 133:8-136:16 is cited for testimony that "Taishan understood that OEG was going to be selling. . . in the New York metropolitan area." | Global Statement of Facts-50, n.229 | FRE 602 |

**Evidence Concerning Transactions Involving Devon International Trading[14]**

| 11. | Herman Aff. 165 – Deposition of Robert Scharf, President of Devon International Trading ("Scharf Dep."). | Global Statement of Facts-9, 10, 17, 18, 20, 40, 41, 42, 43, 44 and *passim*; PSC *Mitchell* Response-2-5; Mitchell Response-5-7; Homebuilders' Response-27, n.119-121 | FRE 802, Fed. R. Civ. P. 32(a)(1)(A).[15] |
|----|---|---|---|

---

[14] This deposition was taken in an action entitled *Langham v. Ace Home Center*, No. CV-2009-900948 (Ala. Baldwin Cnty Cir. Ct.).  TG is not a party to that action and did not receive any notice of the deposition.  This deposition testimony and any citations to it or to exhibits marked or identified at the deposition, are objected to in their entirety no matter where they appear.  Fed. R. Civ. P. 32(a)(1)(A).

[15] References "Fed. R. Civ. P." are to the Federal Rules of Civil Procedure.

| 12. | Herman Aff. 172, Deposition of Ruth Wu, Vice President of Devon International Trading, dated 2/25/2011. | Global Statement of Facts-42, n.187 | FRE 802, Fed. R. Civ. P. 32(a)(1)(A). This deposition was also taken in *Langham v. Ace Home Center.  See* objection 12, *supra*. |
|---|---|---|---|
| 13. | Herman Aff. 166 (DEVON 00949-950) | Global Statement of Facts-42, n.189 | FRE 802, 901 – Purported purchase order from third party. |
| 14. | Herman Aff. 167 (DEVON 00016-17) | Global Statement of Facts-42-43, n.190,191 and 192 | FRE 802, 901 – Purported sales confirmations from TG to Devon, apparently sent by third party, not TG. |
| 15. | Herman Aff. 168 (DEVON 00438, 00449, 00450, 00452, 000645, 000658, 000663) | Global Statement of Facts-43, n.193 | FRE 802, 901 – Photographs. |
| 16. | Herman Aff. 169 (DEVON 00951) | Global Statement of Facts-43, n.195, 196 | FRE 802, 901 – Purported letter from North Pacific to Devon, identified at Scharf Dep. |
| 17. | Herman Aff. 170 (DEVON 00571-577, DEVON 00581-586) | Global Statement of Facts-43, n.197 | FRE 802, 901 – Purported Port of Pensacola discharge sheet and bill of lading. |

**References to Testimony Offered by Darren Steber or GD Distributors, LLC**

| | | | |
|---|---|---|---|
| 18. | Herman Aff. 25, Deposition of Darrin Steber GD Distributors, LLC, dated 12/30/2011.[16] | Global Statement of Facts-10, passim; PSC *Gross* and *Wiltz* Response-15, n.25, passim | Fed. R. Civ. P. 32(a) and 32(a)(4)(B) – The witness resides in Slidell, LA (9:24-10:1) and is thus not more than 100 miles from the place of the hearing.  TG and TTP object to this deposition testimony and citations to any exhibits marked or identified at the deposition in their entirety wherever they may appear. |
| 19. | Herman Aff. 52, Exs. 4 and 5 to Deposition of GD Distributors, dated 12/30/11, purported to be "photos of actual Taishan drywall samples." | Global Statement of Facts-19, n.83; PSC *Gross* and *Wiltz* Response-16, n.26; PSC's Global Memorandum of Law-21, n.29 | Fed. R. Civ. P. 32 (a)(4)(B), and FRE 802, 901 |
| 20. | Herman Aff. 25, GD Distributors Dep. at 21:17-25, 22:22-25  cited for statement that "Taishan was aware that '[a]fter Hurricane Katrina the Great New Orleans area need rebuild.'" | Global Statement of Facts-45, n.209 | Fed. R. Civ. P. 32 (a)(4)(B), and FRE 402, 602 |
| 21. | Herman Aff. 25, GD Distributors Dep. at 21:3-16, 22:6-21, 51:12-52:24,  cited for statement that "[Taishan] knew what port it was going to." | Global Statement of Facts-45, n.208 | Fed. R. Civ. P. 32 (a)(4)(B), and FRE 402, 602 |

[16] References "GD Distributors Dep." are to the deposition of GD Distributors, Inc. by Darrin Steber, taken on 12/30/11.

**Evidence Concerning Negotiation by Guardian Building Products of a Settlement**

| 22. | Herman Aff. 143, Guardian Dep.[17] at 138:24-140:8 cited to support statement that Mr. Gunn believed that "Taian Taigao was a front, set up by TG to distance the company from its defective drywall." | Global Statement of Facts-59, n.275; PSC *Gross* and *Wiltz* Response-9 | FRE 802 – Gunn testified that Taian Taigao explained its relationship to TG.  Guardian Dep. 139:18-140:19.  Taian Taigao is not a party. |
|---|---|---|---|
| 23. | Herman Aff. 143, Guardian Dep. at 141:25-142:10 and 143:13-21, cited to support statement that "Two years later . . . TG still had not resolved the problem, denying any defects with the drywall." | Global Statement of Facts-59, n.276; 65, n.291; PSC *Gross* and *Wiltz* Response -9; PSC *Mitchell* Response-14[18] | FRE 802 – The deponent Gunn, described the person who "denied" the problem as being the "General Manager", and identified him as Jia.  Gunn further stated that "he's a pretty good size guy.  He was 6'2", 6'2", 250, maybe 6'3".  Guardian Dep. at 236:25-237:3.  This physical description does not describe Jia, and thus the claim that "TG [denied] any defects" is inadmissible. |
| 24. | Herman Aff. 161, Ex. 25 to Guardian Dep. and Herman Aff. 143, Guardian Dep. at 156:1-158:12, cited in support of statement that Jia was involved in negotiations to settle Guardian's claim of defective drywall. | Global Statement of Facts-65, n.291; PSC *Gross* and *Wiltz* Response 9-10 | FRE 802 – Statements made by Shao to Gunn are hearsay. |

[17] References "Guardian Dep." are to the deposition of Guardian Building Products by John Gunn, taken on 7/22/11.

[18] To the extent PSC *Mitchell* Response at 14 relies on testimony that is inadmissible in PSC Global Statement of Facts-52-70, that testimony is inadmissible in PSC *Mitchell* Response 14.  Among other things, PSC Global Statement of Facts-52-70 refers to testimony from the Scharf and Steber depositions, which are inadmissible for the reasons set forth above.

| 25. | Herman Aff. 143, Guardian Dep. at 54:20-56:8, cited to support contention that "Mr. Gunn let TG know that the drywall Guardian was buying would be shipped to the East Coast of the United States, including Florida." | Global Statement of Facts-57, n.260; PSC *Gross* and *Wiltz* Response-9, which relies on Global Statement of Facts-56-61 | FRE 402, 602 – The testimony does not support the contention: "I don't think specific locations came up at this time . . ."  Guardian Dep. at 54:24-25. |
| 26. | Herman Aff. 143, Guardian Dep. at 120:21-123:21, cited for the statement that "[w]hen these employees returned to work for TG in 2008, they continued to service the exact same customers they had worked with at TTP." | Homebuilders' Response-16, n.60 | FRE 402, 802 – The testimony relates to the time period 2006, and thus is irrelevant and not supportive of the proposition cited.  The testimony contains hearsay in the form of reporting on a conversation between "Holly" and Gunn. |
| 27. | Herman Aff. 143, Guardian Dep. at 43:1-52:16, cited for the statement that Guardian "met with individuals who represented themselves as TG employees." | Homebuilders' Response-19, n.81 | FRE 402 – The testimony does not refer to any such representations. |
| 28. | Herman Aff. 143, Guardian Dep. 135:19-135:5, cited for the statement that "Guardian began to receive complaints from its own customers that the Taishan drywall was defective." | Homebuilders' Response-22, n.95 | FRE 802 – Hearsay to the extent the testimony relates to and is offered for the truth of statements by Guardian's customers. |
| 29. | Herman Aff. 143, Guardian Dep. 238:15-239-3, cited for the statement that "Jia . . . responded to Guardian's complaints." | Homebuilders' Response-22, n.96 | FRE 802 – The deponent Gunn, described the person who "denied" the problem as being the "General Manager", and identified him as Jia.  Gunn further stated that "he's a pretty good size guy.  He was 6'2", 6'2", 250, maybe 6'3".  Guardian Dep. at 236:25-237:3.  This physical description does not describe Jia.  See No. 27, *supra*. |

**Party Declarations Offering Testimony and Unauthenticated Documents as Evidence[19]**

| 30. | Declaration of Kristen Law Sagafi and the following exhibits attached thereto: Ex. 1 (Documents which "appear to comprise" a submission by Devon to the U.S. Consumer Product Safety Commission ("CPSC"); Ex. 2, documents "which depict drywall bearing the Devon label and imprinted with the words "MADE IN CHINA MEET OF EXCEEDS ASTM 01396 04 STANDARD"; Ex. 3 ("appears to be a letter"); Ex. 4 ("appears to detail discharge of drywall); Ex. 6 ("appears to be two submissions on behalf of Emerald Const Building Materials to the [CPSC]." | PSC *Mitchell* Response-4; Mitchell Response-6-7 | FRE 402,802, 901 – The declarant, who purports to be counsel for the Mitchell Co., Inc., seeks to introduce evidence in the form of documents apparently created by other entities; thus she states that documents "appear to comprise", etc.  The declarant is not competent to authenticate documents produced by other entities and without a proper foundation the statements contained in those documents is hearsay. |
|---|---|---|---|
| 31. | Declaration of Chuck Stefan, dated 4/30/12 ("Stefan Decl.") and the exhibits attached thereto: Exs. B (invoices) and C (photographs). | PSC *Mitchell* Response-5; Mitchell Response-7-8 | FRE 802, 901. |
| 32. | Declaration of Mike Jenkins dated 4/30/12 ("Jenkins Decl.") and the exhibits attached thereto. | PSC *Mitchell* Response-5; Mitchell Response-8 | FRE 802, 901 |

---

[19] Declarations and exhibits cited and identified therein are not subject to cross-examination, and thus are not admissible evidence.

| 33. | Bass Exs. 14B, 14C, 14D, 14E, 14F, 14G, 14H and 14I[20] | Homebuilders' Response-43, 44, n.201-207 | FRE 802, 901.  The declarant, an attorney representing a party, is not competent to authenticate documents produced by other entities and without a proper foundation the statements contained in those documents are hearsay. |
|---|---|---|---|
| 34. | Banner Ex. 2 | Affidavit of Nicholas P. Panayiotopoul-os, sworn to May 18, 2012 | FRE 802, 901 |
| 35. | Ex. B referring to emails from Metro Resources Corp. to INEX concerning a Test Report. | INEX Response[21] in *Gross* and *Wiltz*-2-3, n.8 and 9 | FRE 802, 901 |

**Evidence Concerning Liability and Damages[22]**

| 36. | Order appointing Special Master [Rec. Doc. No. 505 at 1], offered in support of contention that "some individuals have alleged that they have suffered bodily injury." | Global Statement of Facts-5, n.19 | FRE 402, 403 |
|---|---|---|---|

---

[20] The reference "Bass Exs." refers to exhibits attached to the "Affidavit of Hilarie Bass in Support of Certain Florida Homebuilders' *Amicus Curiae* Response, etc.," sworn to May 18, 2012.

[21] References to "INEX Response" are to "Interior Exterior's Memorandum in Support of the Plaintiffs' Steering Committee's Response in Opposition to Taishan's Motions Pursuant to Rule 12(B)(2) to Dismiss and to Provide Additional Support in Response Thereof" filed on May 18, 2012.

[22] Pursuant to FRE 402 and 403, Defendants object to any and all evidence purporting to show that drywall sold by TG and/or TTP was defective in any manner or caused any damages.  Such testimony is irrelevant to the issues raised in connection with motions to dismiss for lack of personal jurisdiction, and any probative value it might have is outweighed by the possibility of prejudice.

| 37. | Assertion that "US Government agencies have found Chinese Drywall to be Defective" from Rec. Doc. No. 505 at 1. | Global Statement of Facts-5, n.20 | FRE 402, 403 |
|---|---|---|---|
| 38. | Citation to CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011 published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf offered to support contention that certain systems must be removed to remediate homes and other structures. | Global Statement of Facts-6, n.21 | FRE 402, 403, 803(8)(c).  These statements are irrelevant to the issue of personal jurisdiction.  Additionally this report was superseded by "Remediation Guidance for Homes with Corrosion from Problem Drywall as of September 15, 2011" www.cpsc.gov/info/drywall/Remediation091511.pdf. |
| *39.* | *In re Chinese-Manufactured Drywall Prods. Liab. Litig. (Germano)*, 706 F. Supp. 2d at 663, 664-66, 671 (*"Germano")*.  Offered for numerous contentions, e.g., to show that TG's drywall was defective, e.g., "Once installed, however, Taishan's drywall causes harm and damages to homes and their residents by omitting various reduced sulfur gases and retching noxious odors;" (PSC Global Statement of Facts-5-6, n.16) for proposition that TG manufactures and sells various building products, etc. | Global Statement of Facts-3, n.8; 5-6, n.16-18; 33, n.138; 35, n.146 147, 148 and 149; 71, n. 318; PSC *Gross* and *Wiltz*  Response-22; PSC *Germano* Response-13, n.33, n.34. | FRE 402, 403 – Statements regarding alleged defects in Defendant's products are irrelevant to the issues to personal jurisdiction.

Findings of fact made at a default hearing which are relevant to jurisdictional issues raised in a motion to vacate a default are not entitled to *res judicata* or collateral estoppel effect.  *Jackson v. FIE Corp.*, 302 F.3d 515, 524-530 (5th Cir. 2002). |
| 40. | All references to the Luneng mine. | Global Statement of Facts-89-91 | FRE 402, 403 – The statements concerning the Luneng mine all intended to show that the drywall sold by TG and/or TTP was defective and are irrelevant insofar as the jurisdiction issues are concerned. |

**Evidence Concerning the Relationship of BNBM and CNBM to TG and TTP[23]**

| 41. | *Germano*, 706 F. Supp. 2d at 662; Herman Aff. 130, Chart purporting to Summarize TG's 2006 structure post March 16, 2006 (Q000955-956) and Herman Aff. 131 at 100, purported CNBM Global Offering (Q000438-952), offered to support contention that TG had connections and a presence in the United States through upstream entities. | Global Statement of Facts-71, n.318 | Findings of fact made at a default hearing which are relevant to jurisdictional issues raised in a motion to vacate a default are not entitled to *res judicata* or collateral estoppel effect. *Jackson,* 302 F.3d at 524-530.<br><br>FRE 802, 901—Statements by third parties that are not authenticated and contain hearsay are not admissible. |

**Other Objections**

| 42. | Gypsum Association comments, archived at http://web.archive.org/web/20101216021748/http://gypsum.org/pdf./Gypsum–Association–Comments–on Chinese–Wallboard–Issue.pdf. | Global Statement of Facts-1, n.2 | FRE 802, 901 – Hearsay; lacks foundation. In fact, this exhibit cannot be located by using the address furnished by the PSC. |

---

[23] Defendants object to any and all evidence offered to support the contention that TG and TTP had a presence in the United States through CNBM and BNBM (e.g., Herman Aff. 130-142; 171, 185-187; GS-71-77 and all citations to purported evidence cited therein). This evidence is irrelevant (FRE 402) as the PSC concedes: "the jurisdictional contacts of upstream entities such as BNBM and CNBM, would not be briefed as part of the analysis of the current motions regarding jurisdiction, but would be raised at a later date after jurisdiction over TG and TTP has been addressed by the Court." GS-89 and GS-89, n.4. Rather than list objections to each submission, the objection set forth above is illustrative.

| 43. | Herman Aff. 3, Regulatory Announcement of China National Building Material Company Limited (Q000975-981), cited for the proposition that Defendants "took advantage of thi opportunity to increase sales to customers in the United States." | Global Statement of Facts-2, n.5 | FRE 802, 901—Irrelevant; hearsay; lacks foundation.  The PSC has attempted to attribute a purported statement of China National Building Material Company, Ltd. ("CNBM") to defendants.  The PSC has failed to authenticate this document. |
| 44. | Herman Aff. 18, Ex. 2 to Peng Dep. (TG0001377-378) – Email correspondence between Richard Hannam and David Wei on which Peng Wenlong ("Peng") is copied to support the contention that "Taishan is proud of its worldwide export capabilities."  (Ex. 4 to Deposition of Ivan Gonima, dated 2/14/12) | Global Statement of Facts-3, n.9; PSC *Mitchell* Response-17 | FRE 802, 901 – This email does not support the contention made by the PSC. |
| 45. | Citations to *In Re Chinese-Manufactured Drywall Prods. Liab. Litig. (Hernandez)*, 2010 WL 1710434 (E.D. La. April 27, 2010) | Global Statement of Facts-5, n.20 | Findings of fact made at a hearing to which TG and TTP were not parties are not entitled to *res judicata* or collateral estoppel effect. |
| 46. | Reference to http://www.alibaba.com/about/er/AboutOurCompanyAbout.html | Global Statement of Facts-10, n.39 | FRE 901 – *See St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999) ("There is no way Plaintiff can overcome the presumption that the information he discovered on the Internet is inherently untrustworthy."). |

| 47. | Herman Aff. 9, Gonima I Dep. at 13:10-13, cited to support contention that Che and Gonima "kept in close, often daily, contact." | Global Statement of Facts-13, n.53 | FRE 402 – Testimony does not support the contention: witness stated "I was their [Oriental Trading's] agent and like manager." |
|-----|------|------|------|
| 48. | Herman Aff. 201, Peng II[24] Dep. at 514:10-516:4, offered to support the contention that the defendants "add[ed] the words 'Tampa, Florida' to the label." | Global Statement of Facts-18, n.75 | FRE 402 – Witness testimony does not support statement; Peng testified "we couldn't do it in this case" (515:9-516:4). |
| 49. | Herman Aff. 45, (Ex. 8 to Weiss Dep. dated 2/16/11),[25] offered to support statement that defendants "include[ed] specific colors in the label." | Global Statement of Facts-18, n.76 | FRE 402 – Does not support contention.  Document states that the color requested could not be supplied. |
| 50. | Herman Aff. 23, Carn Dep. at 38:17-39:14[26], offered to support assertion that TTP obliged made-to-order requests by "affixing an American UPC bar code." | Global Statement of Facts-18, n.77 | FRE 802 – Declarant not identified so FRE 801(d)(2)(4) is not applicable*; see also* objection 2, above. |
| 51. | The PSC states, "OEG Building Materials told Taishan on numerous occasions it needed samples of the drywall for testing in New York labs." | Global Statement of Facts-20 | FRE 802 – Unsupported by citation to any evidence. |
| 52. | Herman Aff. 71, V000386, purported fax cited to support assertion that Taishan's goal was "to become 'one of the biggest gypsum board producing factories for' the U.S. market." | Global Statement of Facts-31, n.130 | FRE 802, 901 – Citation does not support assertion; the document states "[w]e would like to introduce ourself as one of the biggest gypsum board producing factory." |

---

[24] References "Peng I" and "Peng II" Dep. are to the depositions of Pen Wenlong dated 4/7-8/11 and 1/11/12, respectively.

[25] References "Weiss Dep." are to the deposition of Joseph Weiss on behalf of OEG Building Materials dated 2/16/11.

[26] References to "Carn Dep." are to the deposition of Carn Construction Corporation by Carlos Rios, taken on 12/8/12.

| 53. | Herman Aff. 73, V002703 purportedly an email from Philip Perry to Sam Porter, stating that "[Taishan] said that a lot of American companies have made enquiries," etc. | Global Statement of Facts-31, n.133 | FRE 802, 901 – There is no testimony cited to authenticate the document, which contains hearsay as the declarant is unidentified. |
|---|---|---|---|
| 54. | Herman Aff. 74, V002608 purportedly an email from Philip Perry to Peng, offered to show TG's awareness that Venture Supply would sell, on TG's behalf, TG's drywall in the United States. | Global Statement of Facts-32, n.134 | FRE 802, 901 – There is no testimony cited to authenticate the document. |
| 55. | Herman Aff. 76, V002371-372, Email from Perry to Porter Blaine purporting to attach text message offered to support statement that "Venture Supply was actively assisting Taishan to distribute its product throughout the U.S. without any geographic limitation." | Global Statement of Facts-33, n.136 | FRE 402, 802, 90, 1002 – The text refers to the efforts by another company, Certified Products International Inc., to sell TG drywall.<br><br>There is no testimony cited to authenticate the document. The best evidence of the text messages is the messages themselves, not an email from a third party cutting and pasting the messages. |
| 56. | Statement that "[i]t is undisputed that Taishan manufactured the Chinese Drywall installed in the homes of Intervening Plaintiffs in *Germano*." | Global Statement of Facts-36 | FRE 402 – Unsupported by a citation to evidence to support this assertion. |
| 57. | Herman Aff. 39, Hannam Dep. 94:8-98:11 and Ex. 4 to Hannam Dep., cited for statement that Hannam testified that he travelled to China to visit Taishan's plant because one of Wood Nation's customers, Suncoast Building Materials, was interested in purchasing 500 containers of drywall. | Global Statement of Facts-39-40, n.170 | FRE 402, 802 – Cited testimony does not support statement; statement regarding interest of Suncoast Building Materials is hearsay. |

| 58. | Herman Aff. 113 and 114, Exs. 17 and 16 to the Che Dep., offered to show TTP's purported awareness of problems concerning shipment to California. | Global Statement of Facts-47, n.218, 219 | FRE 802 – Contain second and third level hearsay insofar as the letters refer to statements by third parties and customers of Advance Products, International ("API"). |
|---|---|---|---|
| 59. | Herman Aff. 114, Ex. 16 to Che Dep., cited to support assertion that Taishan was advised of problems with drywall shipments to California. | Global Statement of Facts-47, n.219 | FRE 802, 901 – The document contains second, third and fourth level hearsay, as the  email from Wei, who is not an employee or agent of TG or TTP, to Che contains an email from API, which itself contains hearsay. |
| 60. | Herman Aff. 116, V002487, a statement by Perry in an email that he ran into another American from Texas at the factory, who said he was from the HGC Company, and claimed he was a "big buyer", offered to show that TG was selling to other suppliers in the U.S. | Global Statement of Facts-48, n.220 | FRE 802, 901 – Perry's statement is hearsay. |
| 61. | Herman Aff. 117, V002400, an email from Perry purporting to identify visits by other companies to TG. | Global Statement of Facts-48, n.221 | FRE 802, 901 –The declarant who provided information to Perry is not identified. |

| 62. | Rec. Doc. No. 1747, offered to show that the "*Wiltz* plaintiffs own properties containing Chinese Drywall that was manufactured . . . by the manufacturing defendants named in Plaintiffs' Amended Omnibus Class Action Complaint." | PSC *Gross* and *Wiltz* Response-5, n.12 | FRE 802, 901 – The reference to the allegations of the complaint is not sufficient to "prove" that plaintiff's claims arose from exposure to drywall manufactured by TG or TTP. |
|---|---|---|---|
| 63. | Citations to *Germano*, 706 F. Supp. 2d at 661; Porter Dep.[27] at 53:24-59:21 and Herman Aff. 79, Ex. 39 to the Porter Dep., for the statement that "Venture Supply . . . made clear to Taishan that it was necessary to have test results indicating that the drywall complies with the requirements of the ASTM standards." | Homebuilders' Response-31, n.1 42 | FRE 402 – Pursuant to *Jackson v FIE*, *supra*, the findings from the *Germano* decision as they relate to the jurisdictional issues are not binding facts; the Porter Dep. and Herman Aff. 79, Ex. 39 to the Porter Dep., do not support this statement. "Q. There was a controversy with Frank Peng when he asked that Venture remove from its line of credit the designation that the Taishan Drywall was to be delivered after ASTM tests?  A. Yes." |
| 64. | Exhibit B to the INEX Mem.[28] is a string of emails that purports to attach an ASTM certification, and is offered to show that TTP sold drywall to Metro Resources. | INEX Mem.-3, n.7 | FRE 402, 901 – The document does not show that TTP sold drywall to Metro Resources.  Peng testified that TTP furnished copies of this report to any potential customer who requested it, including companies in China.  Peng Tr. at 411:10-4-12:1. |
| 65. | INEX Distributor Profile Form is cited for the proposition that there were "imports to New Orleans of an additional 33,000 sheets of Taishan drywall." | Louisiana Response-9, n.13[29] | FRE 802, 901—The statement of INEX cannot be used for its truth against Defendants and as support for the contention that Defendants expected to "import" drywall sold to unidentified third parties to Louisiana. |

---

[27] References "Porter Dep." are to the deposition of Samuel G. Porter dated 12/16-17/09.  (Herman Aff. 72).

[28] References "INEX Mem." are to "Interior Exterior's Memorandum in Support of the Plaintiffs' Steering Committee's Response, etc."

[29] References "Louisiana Response" are to "State of Louisiana's Motion and Incorporated Memorandum to Join the Plaintiffs' Steering Committee's Response to Taishan's Motion, Pursuant to Rule 12(b)(2), to Dismiss the Complaints".

Dated: June 8, 2012

Respectfully submitted,

*/s/*  Thomas P. Owen Jr.
Richard C. Stanley (La. Bar No. 8487)
Thomas P. Owen, Jr. (La. Bar No. 28181)
STANLEY, REUTER, ROSS, THORNTON
& ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069
rcs@stanleyreuter.com
tpo@stanleyreuter.em


Joe Cyr
Frank T. Spano
Eric Statman
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: 212-918-3000
Facsimile: 212-918-3100
Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Eric.statman@hoganlovells.com

**Attorneys for Defendant**
**Taishan Gypsum Co. Ltd.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing "Objections to Plaintiffs' Proposed Evidence Submitted in Opposition to Defendants' Motions" was served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 8th day of June, 2012.

<u>/s/</u>  Thomas P. Owen Jr.