

Transcript of the Testimony of:  **Wenlong Peng**

01/13/2012

Chinese Drywall

HERMAN AFFIDAVIT
EXHIBIT
201

Confidential - Subject to Further Confidentiality Review

```
 1            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
 2

 3     _____
                                      §  MDL NO. 2047
       IN RE:                         §
 4     CHINESE-                       §  SECTION: L
       MANUFACTURED                   §
 5     DRYWALL PRODUCTS               §  JUDGE FALLON
       LIABILITY                      §
 6     LITIGATION                     §  MAGISTRATE
                                      §  JUDGE WILKINSON
       _____
 7
                            -  -  -
 8
            CROSS NOTICED IN VARIOUS OTHER ACTIONS
 9
                            -  -  -
10
                      January 13, 2012
11
                            -  -  -
12
            CONFIDENTIAL - SUBJECT TO FURTHER
13                CONFIDENTIALITY REVIEW
14                          -  -  -
15          Continued videotaped deposition of
       WENLONG PENG, held at the Executive
16     Centre, Level 3, Three Pacific Place, One
       Queen's Road East, Hong Kong, China,
17     commencing at 8:32 a.m., on the above
       date, before Ann Marie Mitchell,
18     Certified Court Reporter, Registered
       Diplomate Reporter, Certified Realtime
19     Reporter and Notary Public.
                            -  -  -
20
21
                   GOLKOW TECHNOLOGIES, INC.
22          877.370.3377 ph | 917.591.5672 fax
                      deps@golkow.com
23
24
```

Page 512

1  person send the e-mail to those people
2  that are on the "to" line, sent to those
3  e-mail addresses. But like I explained
4  earlier, usually I don't even check the
5  e-mail.
6       Q.   Did you receive a copy of
7  this inquiry from the South Florida
8  Business Journal asking about your
9  knowledge about odors and other problems
10 associated with your drywall product?
11      A.   Like I said earlier, the
12 document does say that the e-mail was
13 sent to those e-mail addresses, but I
14 didn't check. I didn't use this e-mail
15 address.
16      Q.   So that means the answer to
17 my question is no, you did not receive
18 it?
19      A.   I've never checked this
20 e-mail address.
21      Q.   Were you informed by any of
22 the other recipients of this e-mail
23 regarding this inquiry?
24      A.   Other recipients? Can you

Page 513

1  ask again? I'm not clear about that.
2       Q.   Yes.
3            Do you know who else
4  received this e-mail?
5       A.   It appears to be e-mail
6  address of Manager Che and e-mail address
7  of Manager Yang Jiapo.
8       Q.   Did either of those
9  individuals inform you that there was an
10 investigative reporter from the South
11 Florida Business Journal inquiring into
12 complaints about your drywall product?
13      A.   I have not received report
14 from them.
15      Q.   Are you aware of whether
16 they received this e-mail?
17      A.   I don't know whether they
18 have seen this e-mail address or not, or
19 whether they understood the e-mail or
20 not.
21      Q.   I'd like you to take a look
22 at the document that was previously
23 marked as Exhibit 22 to this deposition.
24           THE COURT: Do you have a

Page 514

1       Bates number?
2            MS. BASS: Yes, I'm sorry.
3       This is TG -- I have it as 461,
4       but I believe the marked copy is a
5       different Bates number.
6            MR. SPANO: 1377.
7            MS. BASS: Thank you. It is
8       TG 1377.
9  BY MS. BASS:
10      Q.   This e-mail requests that
11 gypsum board be produced by TTP with a
12 specification of a contact phone number
13 and then Tampa, Florida.
14           Do you see that as part of
15 that e-mail?
16      A.   Where is it?
17      Q.   Do you see that reference?
18      A.   Is this the one?
19      Q.   Yes.
20      A.   This is the e-mail sent from
21 Mr. Richard to Mr. Wei regarding some
22 requirements of the marks of the gypsum
23 board.
24      Q.   And did you agree to stamp

Page 515

1  Tampa, Florida on the back of the gypsum
2  board you were going to be producing?
3       A.   That's a requirement of the
4  customer, and also it is something that I
5  could do. We would stamp it for the
6  customer. Of course, the precondition
7  would be it is not illegal, not against
8  any regulations.
9       Q.   Did you in fact produce
10 drywall with the stamp Tampa, Florida on
11 the back?
12      A.   Well, I don't recall, but
13 according to the common sense that I
14 have, usually we would stamp a line of
15 marks on the back of the gypsum board.
16 But I'm afraid we couldn't do it in this
17 case, because from what appears here,
18 there are quite a few lines. Our
19 technology only allow one line to be
20 produced.
21      Q.   But you are aware that the
22 request was that you stamp your board
23 with the designation Tampa, Florida on
24 it. Correct?

Confidential - Subject to Further Confidentiality Review

Page 516

1   A.   I only know that the
2   customer did have the request, which is
3   to mark the gypsum board according to the
4   request.
5       Q.   Thank you.
6           I only have one last set of
7   questions, and that relates to an
8   agreement that was discussed at length
9   over the last few days between TTP and
10  Oriental Trading Company.
11          Mr. Peng Wenlong, it is
12  correct, is it not, that you did receive
13  a $100,000 deposit from Oriental Trading
14  Company?
15      A.   Oriental company did wire
16  this amount of money to TTP company.
17      Q.   And that was part of your
18  ongoing relationship to sell gypsum board
19  to Oriental Trading, was it not?
20      A.   You can't say that.  It was
21  only that there was intention of the
22  Oriental company to purchase gypsum board
23  from our company.  And they -- in turn,
24  they wired a part of the money to us.

Page 517

1   There's no difference from what our
2   common practice is when we want to make a
3   purchase.
4           MS. BASS:  Thank you.  I
5       have nothing further.
6           THE WITNESS:  Thank you.
7               - - -
8           EXAMINATION
9               - - -
10  BY MR. HARDT:
11      Q.   Good morning, Mr. Peng.  My
12  name is Ken Hardt, and I represent
13  Venture Supply.  I met you last time in
14  April.
15      A.   Hello.
16      Q.   Do you recall that there was
17  two separate contracts with Venture
18  Supply and TG for the sale of drywall?
19      A.   Correct.  At the time, we
20  signed two contracts.
21      Q.   Right.
22          And there was two separate
23  shipments of drywall to Venture Supply.
24  Correct?

Page 518

1       A.   The two contracts are what
2   we call two orders.
3       Q.   Right.
4           And there was two separate
5   shipments of drywall to Venture Supply.
6   Correct?
7       A.   Yes.  Venture Supply company
8   placed order for two shipments, but for
9   the detailed shipment, it was the
10  arrangement of Venture Supply.
11      Q.   Okay.  There was two
12  separate ships.
13          That's all I'm asking you?
14          THE COURT:  Shipments.
15          THE WITNESS:  We shipped the
16      product in two separate times to
17      the designated port by Mr. Phillip
18      to a port called Lianyungang,
19      China.
20  BY MR. HARDT:
21      Q.   Right.
22          And in the first shipment of
23  drywall to Venture Supply, do you recall
24  being told that some of the product was

Page 519

1   damaged during the shipment?
2       A.   I remember Mr. Phillip
3   mentioned that to me, the product was
4   damaged during unloading.
5       Q.   Right.
6           And you worked with Mr.
7   Phillip, Mr. Phillip Perry, that's who
8   we're talking about.  Right?
9       A.   It has always been Mr.
10  Phillip who contacted us.
11      Q.   But he was Venture's agent
12  over -- dealing with TG; is that right?
13      A.   The circumstance then was
14  that Mr. Phillip came to our company.
15  And he, on behalf of Venture Company, had
16  some detailed communication with our
17  company.
18      Q.   Right.
19          After you were told that
20  there was damaged product during the
21  first shipment, you worked with Mr.
22  Phillip on how to better secure or pack
23  the drywall for the second shipment.
24  Right?