IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 09-2047<br><br>SECTION L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO THE CASE SET BY THE COURT FOR TRIAL INVOLVING NORTH RIVER | MAG. JUDGE WILKINSON |

MEMORANDUM IN SUPPORT OF
MOTION OF THE NORTH RIVER INSURANCE COMPANY TO
(A) LIFT THE STAY AS TO CERTAIN PARTIES, (B) CONSOLIDATE
CERTAIN CLAIMS, AND (C) REALIGN PARTIES

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

On May 31, 2012, the Court announced that it would set a trial involving Defendant The North River Insurance Company ("North River") for a period of two weeks beginning November 26, 2012.  The Court has not yet determined which Plaintiff or Plaintiffs will be involved in the trial.  Regardless of who that Plaintiff or Plaintiffs are determined to be, there are certain procedural steps that must be taken to ensure that any eventual trial comports with due process and fundamental fairness, as well as to provide a meaningful method of determining the potential liability, if any, to North River and the parties involved in the claims against North River and as a necessary predicate to establish the discovery schedule contemplated for the Case Management Conference set for June 13, 2012.

In order to achieve the required level of procedural fairness, North River asks that the Court:

(a) lift all existing stays in favor of Certain Knauf Entities ("Knauf"),[1] Interior/Exterior Building Supply Company ("INEX"), Arch Insurance Company, and Liberty Mutual Insurance Company so those parties participate fully in discovery and trial;

(b) consolidate the case in which the bellwether trial will occur with Cause No. 11-cv-01670, *The North River Insurance Co. v. Knauf International, GmbH, et al.*, et al., in which North River has alleged claims against Certain Knauf Entities; and

(c) realign the parties to make Certain Knauf Entities plaintiffs, because they are the real parties in interest in any claims against North River.

Unless the Court takes these actions, any "trial" will be incomplete, inefficient, procedurally flawed, and a waste of effort for all concerned.

## BACKGROUND FACTS

While the Court is intimately aware of the general facts of this litigation, it is important to understand the factual relationship between the various parties involved in the claims related to North River in order to create a trial plan that will be both fair and effective.

North River issued certain excess policies of liability insurance to INEX, which is a building products distributor with its headquarters in New Orleans, Louisiana. Arch Insurance and Liberty Mutual Insurance are primary insurers of INEX whose policies issued to INEX sit below the relevant North River policies.

North River has been named as a Defendant in only two class action complaints. In the first suit, *Silva v. Arch Ins. Co., et al.*, Case No. 09-08034,[2] Plaintiffs Stephen and Isas Silva have asserted a direct action claim against INEX, North River, and four other liability insurers for INEX. The Silvas allege that they bought defective Chinese-manufactured drywall from INEX

---

[1] "Certain Knauf Entities" refers to Knauf International GmbH, Knauf Insulation GmbH a/k/a Knauf USA, Knauf GIPS KG, Knauf Plasterboard (Wuhu) Co., Ltd., and Knauf Plasterboard (Tianjin) Co., Ltd.
[2] The *Silva* suit was originally filed in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, in December 2009 and was removed to this Court.

and seek a declaration that coverage under the various policies issued to INEX provides coverage with "respect to Interior Exterior's liability for any and all damages or other remedies to which Plaintiffs and/or other class members may be entitled under Louisiana law." The Silvas also seek certification of a class on behalf of all citizens of Louisiana who purchased Chinese-manufactured drywall from INEX, either directly or indirectly, from Jan. 1, 2005, through Dec. 31, 2009.

The second suit, *Amato v. Liberty Mutual Insurance Co., et al.*, Case No. 10-932, was originally filed as a Class Action Complaint in this Court in 2010. The Plaintiffs in that action appear to be the owners of 421 pieces of residential property in Louisiana, Florida, Virginia, Mississippi, and Alabama. They have asserted claims against approximately 190 different defendants, based on allegations that the Plaintiffs purchased defective Chinese-manufactured drywall that was installed in the Plaintiffs' properties. The *Amato* Plaintiffs allege that they are pursuing nationwide class actions against the manufacturers, distributors, suppliers, importers, exporters, brokers, builders, developers, contractors, and installers of the Chinese-manufactured drywall located in their homes and have asserted claims for negligence, strict liability, breach of warranty, breach of contract, unjust enrichment, nuisance, violations of the Louisiana New Home Warranty Act, redhibition, negligent discharge of a corrosive substance, and violation of consumer protection acts. The *Amato* Plaintiffs are seeking declaratory relief "mandating coverage by the respective Insurance Company Defendants for all damages and remedies under the pertinent insurance policies for the Underlying Claims for which the Insured Defendants are liable." In addition, a proposed subclass of the Plaintiffs have asserted direct action claims against North River and other insurers under Louisiana Revised Statute 22:1269.[3]

---

[3] North River has also been named as a defendant in *Boutte v. E. Jacob Construction*, et al., which involves only a single plaintiff. (See Nos. 10-cv- 1464 and 10-cv-4338).

There is no allegation in either the *Silva* or *Amato* Lawsuits that North River was involved in the manufacture, distribution, sale, or installation of Chinese-manufactured drywall. Instead, the only basis for liability asserted against North River is derivative, based upon North River's status as an excess insurer for INEX. INEX is a named defendant in both the *Silva* and *Amato* Lawsuits.

INEX is alleged to have sold defective drywall manufactured by Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"). KPT is a Chinese entity that is part of a group of companies located in several continents which are all controlled by members of the Knauf family. The European Court of Justice has recently upheld a fine of € 858 million cartel fine levied against Knauf Gips KG, one of the Certain Knauf Entities, when it affirmed a lower court ruling that Knauf GIPS KG and three other large drywall companies had met frequently and set up a secret information-exchange system to monitor market trends and avoid over-aggressive competition. The European Court of Justice also affirmed a finding that all of the Knauf-controlled entities involved in the drywall business constituted a single business unit.[4]

INEX is also alleged to have sold defective drywall manufactured by Taian Taishan Plasterboard Co. ("Taishan"), a Chinese entity that is eventually controlled by the government of the People's Republic of China. Taishan has challenged the Court's exercise of personal jurisdiction over it and has not otherwise participated in the MDL proceedings.

Approximately 95% of the claimants asserting claims against INEX and North River have homes in which all or almost all of the Chinese-manufactured drywall in the homes was manufactured by Knauf, and only 5% of the claimants have homes in which there is a significant amount of Taishan-manufactured board.

---

[4] Case No. C-407/08P, Knauf Gips KP v. European Commission (July 1, 2010: *See* http://www.europolitics.info/court-confirms-fine-on-knauf-gips-art276810-3.html;

There are two settlements pending before the Court that affect the true relationship of the parties. One settlement, commonly referred to as the INEX Settlement, provides for the payment of $8,000,000 to Plaintiffs by Arch and Liberty Mutual on behalf of INEX, as well as a purported assignment to Plaintiffs of $72,000,000 of alleged coverage under the excess policies issued by North River to INEX. North River has not consented to that assignment. In exchange, INEX, Arch, and Liberty Mutual will be completely released of all liability to Plaintiffs in this action. The settlement is a proposed class-wide settlement which has been preliminarily approved by the Court. Because that settlement has not been finally approved by the Court, no payment has been made by Arch and Liberty Mutual, and Arch and Liberty concede that the primary policies they issued to INEX remain unexhausted.

The second settlement, commonly referred to as the Knauf Settlement, provides for an unlimited remediation fund to be made available to claimants whose homes contain a certain percentage of drywall manufactured by the Knauf entities. The proposed settlement also includes a separate fund of $30,000,000 to provide payments to claimants who are not allowed to have their homes fully remediated and a payment of $160,000,000 by Knauf to the attorneys for claimants. In exchange, all claimants who receive funds under the Knauf Settlement will assign their claims to Certain Knauf Entities. The Knauf Settlement is also a class-wide settlement.

Those pending settlements create an extremely unusual relationship between the parties. If the Court approves the INEX Settlement and the Knauf Settlement – and the Plaintiffs' Steering Committee ("PSC"), Certain Knauf Entities, and INEX are all requesting approval – none of the Plaintiffs whose homes have all or mostly Knauf drywall will have any claim remaining against INEX or North River (except for potential class opt-outs, which the PSC has consistently said will be few in number). Instead, the party who owns all Knauf-related claims against INEX and North River, and who will be the real party in interest, will be Knauf itself. In

other words, Knauf, the party who manufactured 95% of the drywall involved in the claims against INEX/North River and who is asking the Court to approve payments by Knauf that are worth up to $1 billion dollars (according to the PSC), is the only party who will benefit financially from any further recovery from INEX or North River.

In formulating, preparing for, and conducting any trial involving North River, it is imperative that the Court and the jury recognize the true relationship between the parties and proceed on that basis. In order to make sure that any trial in this case accurately reflects the true status of the parties, North River asks that the Court make the following orders.

### A. INEX Must Be a Party to Any Trial

Under the Louisiana Direct Action statute, La. Rev. Stat. 22:1269, a direct action by a claimant must normally be brought against both the insured and the insurer. The only exceptions to this requirement are when:

1. The insured is in bankruptcy or has been adjudged a bankrupt;

2. The insured is insolvent;

3. Service of citation or other process cannot be made on the insured;

4. The cause of action arises from an offense or quasi-offense between children and their parents or between married persons;

5. The insured is an uninsured motor carrier; or

6. The insured is deceased.

*Id.* at 22:1269(B)(1).

INEX does not fall into any of the statutory exceptions that would allow a claimant to maintain a direct action against North River without the inclusion of INEX in the suit. To the contrary, INEX is already a party to the *Amato* and *Silva* Lawsuits, the only actions in which North River is named as a defendant. If the Court intends to allow the PSC to prosecute claims

against North River, then the Louisiana Direct Action statute requires that INEX be a party to the litigation.

When North River previously asked that the stay in favor of INEX be lifted, INEX vigorously contested being involved in the litigation, arguing that as a settling party it should not have to bear the burden and expense of preparing for trial. At that point, the Court decided to keep the stay in favor of INEX in place, but recognized that at some point prior to trial the stay would have to be lifted. Since that hearing, however, INEX has sent two attorneys to New Jersey to attend the deposition of North River's corporate representative, participated in every hearing involving North River, and met with the PSC to discuss the November trial – without inviting North River to participate in those discussions. It is beyond doubt that INEX is abusing the existing stay, and that it intends to be fully involved in this case as it goes forward.

Because INEX is a statutorily-required party to any direct action brought against North River arising out of claims involving INEX, and because INEX has chosen to disregard the existing stay and fully participate in all proceedings, the Court must lift all stays that would preclude the involvement of INEX in the prosecution of any claims asserted against North River.

### B. Arch and Liberty Must Be Parties to Any Trial

Arch and Liberty Mutual are primary insurers whose policies sit below the North River policies issued by INEX. Under basic principles of insurance, law, North River, as an excess carrier, can have no liability under the policies it issued until all applicable underlying policies are exhausted by payment of covered claims. *Gabarick v. Laurin Maritime (America), Inc.,* 649 F.3d 417 (5th Cir. 2011); *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 630 So.2d 759, 773 (1994). The Court can take judicial notice that the Arch and Liberty Mutual policies are not exhausted; payment by Arch and Liberty Mutual is an element of the INEX Settlement.

Because there can be no liability against North River unless and until the applicable coverage provided by Arch and Liberty Mutual is properly exhausted by payment of covered claims, Arch and Liberty Mutual are proper and essential parties to any trial in this case. The Court should therefore lift all stays that would preclude the involvement of Arch and Liberty Mutual in the prosecution of any claims asserted against North River.

### C. Certain Knauf Entities Must Be Parties to Any Trial

Any liability that might be assessed against North River at trial would be derivative and arise only because of North River's status as an excess liability insurer of INEX. Under the Louisiana redhibition statute, however, North River would have a claim against one or more of the Certain Knauf Entities for any liability assessed against North River. *See* La. R. S. art. 2531a. Because of this statutory scheme, any potential liability against North River will be passed through, as a matter of law, to one or more of the Certain Knauf Entities. As a matter of fairness, efficiency, and judicial economy, any trial involving the sale of Knauf-manufactured drywall against North River must also involve the participation of Certain Knauf Entities, where the ultimate responsibility for damages caused by Knauf drywall will reside.

If North River is denied the basic protections of Louisiana law that allow it to be subjected to direct action claims only if its insured is in the case, and basic precepts of product liability law that place the ultimate responsibility for a defectively-manufactured product on the entity responsible for the manufacture and sale of the product, North River will be stripped of the basic right to defend itself in a civil suit. Due process does not allow a party to be subject to civil liability while at the same time being denied the ability to defend itself, and due process considerations prohibit maintaining the stay in favor of parties whose participation is necessary to resolve the relevant claims between the parties. Fundamental fairness will not allow a stay to be used to divest a party of the ability to properly defend itself in a civil suit.

The Fifth Circuit has made it absolutely clear that a "federal court should avoid duplicative or piecemeal litigation where possible." *The Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 391 (5th Cir. 2003). *See also Kerr v. U.S. District Court*, 426 U.S. 394, 403 (1976) ("[I]t is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation"); *Roberts v. American Bank & Trust Co., Inc.*, 2011 WL 6670367 at *18 (E. D. La. 2011) (in deciding whether to abstain from exercising jurisdiction, one of the factors a court should consider is whether abstention would avoid piecemeal litigation). In order to avoid piecemeal litigation, , the Court must lift all stays that would preclude the involvement of Certain Knauf Entities in the prosecution of any claims asserted against North River.

### D. North River's Claims Against Certain Knauf Entities Must Be Consolidated

Because of prior stays entered in this litigation, North River has not been able to assert claims directly against Certain Knauf Entities in any case in which North River has been a party. Therefore, North River initiated a separate suit to assert its claims against Certain Knauf Entities. That case is pending as part of this MDL as Cause No. 11-cv-01670, *The North River Insurance Company v. Knauf International, GmbH, et al.*

Under Fed. R. Civ. P. 42(a), when two actions before a court involve a common question of law or fact, the court may consolidate the actions or conduct a joint trial of the two actions. Not only do the PSC's claims against North River and North River's claims against Knauf involve common questions of law or fact, but both cases arise out of the same chain of distribution of a product manufactured by Knauf. The two cases, while not identical, involve the same core issues, the same liability facts, and the same determination of damages. Consolidating the two cases will resolve the cases in less time than if they were tried separately, conserve judicial resources and avoid a second trial before the Court, reduce the expense of trial to the

parties, and avoid the risk of inconsistent verdicts. There will be no undue burden or prejudice to any party if the cases are consolidated or tried jointly. In order to "avoid duplicative or piecemeal litigation," *Sherwin-Williams*, 343 F.3d at 391, the Court should consolidate the two cases for a single trial.

### E. The Parties Must be Realigned to Make Certain Knauf Entities Plaintiffs

In determining the proper alignment of parties in a case, "[t]he generally accepted test of proper alignment is whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir.2010), *quoting Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1178 (5th Cir.1984). Realignment is to be determined according to "the principal purpose of the suit and the primary and controlling matter in dispute." *Indemnity Insurance Company of North America v. The First National Bank*, 351 F.2d 519, 522 (5th Cir.1965).

The *Lowe* case provides a very compelling analogy on proper alignment of parties. In that case, twenty-five workers brought an action for asbestos-related personal injury claims against their employer, a self-insured shipbuilding firm, and a company who provided asbestos-containing products to the employer. The shipbuilder paid worker's compensation benefits to many of the plaintiffs and then sought to recover portions of those payments from the product manufacturer. The manufacturer had reached conditional settlements with several of the plaintiffs, which in many instances were less than the amount of worker's compensation benefits paid by the employer. To ensure that the product manufacturer would not be exposed to liability beyond the conditional settlement amounts, the settlements were conditioned on either acceptance by the employer or court approval. The employer did not consent and then claimed that it had an indemnity claim against the product manufacturer. *See* 723 F.2d at 1175-76.

When the Fifth Circuit considered "the principal purpose of the suit and the primary and controlling matter in dispute," *id.* at 1178, the Court easily concluded that

> it is evident that [the manufacturer] must be realigned as a party plaintiff. The complaint reflects no dispute between plaintiffs and [the manufacturer], but rather reflects that they had essentially resolved their differences prior to the commencement of this action. In addition, with respect to the principal matters in issue, whether [the employer] has any . . . claim against [the manufacturer] or is restricted to its LHWCA subrogation remedies, both [the manufacturer] and the plaintiffs are on one side of the dispute, taking identical positions, and [the employer] is on the other side, asserting the same position in opposition to each.

*Id.*

The present case presents the same situation as *Lowe*. The Plaintiffs and Knauf have essentially resolved their differences prior to the trial involving North River. Not only are the Plaintiffs and Knauf on the same side of the dispute, but Knauf is the only party (other than perhaps the attorneys on the PSC) who could possibly benefit from any potential recovery against North River. Knauf, and not the Plaintiffs, are the real party in interest as this case goes forward, and Knauf should be aligned as a plaintiff to present the true relationship of the parties and the real purpose in this case going forward.

## CONCLUSION

For the foregoing reasons, Defendant The North River Insurance Company asks that the Court

(a) lift all existing stays in favor of Certain Knauf Entities, Interior/Exterior Building Supply Company, Arch Insurance Company and Liberty Mutual Insurance Company so those parties participate fully in discovery and trial;

(b) consolidate the case in which the bellwether trial will occur with Cause No. 11-cv-01670, *The North River Insurance Company v. Knauf International, GmbH, et al.*; and

(c) realign the parties to make Certain Knauf Entities plaintiffs.

        Respectfully submitted,

        THOMPSON COE COUSINS & IRONS LLP


By: _____/s Eric B. Berger_____
   BRIAN S. MARTIN, ESQ.
   KEVIN RISLEY, ESQ.
   RODRIGO "DIEGO" GARCIA, JR., ESQ.
   One Riverway, Suite 1600
   Houston, Texas 77056
   Phone: (713) 403-8282
   Fax:  (713) 403-8299
   bmartin@thompsoncoe.com


   LOBMAN CARNAHAN BATT ANGELLE & NADER

   SIDNEY J. ANGELLE, ESQ.
   La. Bar No. 1002
   ERIC B. BERGER, ESQ.
   La. Bar No. 26196
   400 Poydras Street, Suite 2300
   New Orleans, Louisiana 70130
   Phone: (504) 586-9292
   Fax:    (504) 586-1290
   sja@lcba-law.com

   ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY


## CERTIFICATE OF SERVICE

  I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on June 8, 2012.


        _____/s Eric B. Berger_____
        ERIC B. BERGER