# ATTACHMENT I

Case 2:09-md-02047-EEF-MBN  Document 14665-2  Filed 06/13/12  Page 2 of 29

70 La. L. Rev. 1227

**Louisiana Law Review**
Summer, 2010

Comments

ALL FOR ONE OR EVERY MAN FOR HIMSELF? WHAT IS LEFT OF SOLIDARITY IN REDHIBITION [1]

Elizabeth A. Spurgeon [a1]

Copyright (c) 2010 Louisiana Law Review; Elizabeth A. Spurgeon

### I. Introduction

Papinian is facing a dilemma. He and his wife have been working overtime as welders to save up enough money to buy a new travel camper. They have been admiring billboards advertising "Paul's Camper Trailers-The Best Deal in Town." Never one to turn down "the best deal in town," Papinian and his wife peruse the extensive selection of campers available at Paul's. Unfortunately, what the couple does not know, and what was not advertised on the billboard, is that Paul is an unscrupulous dealer who will sell and say literally anything to make a profit. Paul's desperation has grown as of late because his company is facing financial ruin. With their dreams of traveling all over the Gulf South in mind, and with cash in hand, Papinian and his wife purchase what appears to be the perfect camper trailer-a brand new model with the latest amenities. The camper is called the Modestinus 8000 Deluxe, and the couple is now its proud new owner.

Shortly after the purchase, Papinian and his wife embark on their first vacation in years, planning to venture all the way from Louisiana to Birmingham, Alabama, and back. Unfortunately, after traveling approximately 100 miles and before even reaching Alabama, the camper collapses in the middle of the interstate. [2] Although no one is injured by the incident, both the camper and Papinian's hopes for a romantic getaway are destroyed. The couple feels strongly that they do not wish to be involved in litigation, as they were raised to despise anything related to lawyers and lawsuits. Papinian simply wants his money back. He researches online and discovers how to file a claim for "redhibition," a legal *1228 remedy in Louisiana law that involves return of the purchase price when a recently purchased item has a hidden defect rendering the item useless. [3] Papinian files the papers against Paul, and the redhibition claim is instituted. Due to the overcrowding of the docket in which the action is filed, however, Papinian and his wife receive no news on their claim for two years, at which time they learn that Paul's Camper Trailers, Inc., has filed for bankruptcy protection.

Out of options, the couple finally utilizes the services of an attorney who specializes in redhibition claims for defective campers, trailers, and trucks. Though the attorney is an expert among practitioners in this area of the law, his advice to Papinian is that the likelihood of success on the claim is uncertain, as is the legal landscape surrounding the case. [4] The next course of action will be to file suit against Modestinus, the manufacturer of the camper. But the time for filing the action against Modestinus may have run out, or prescribed, [5] depending on whether the court finds that Paul, as the seller, and Modestinus, as the manufacturer, are both bound "solidarily" [6] for the return of Papinian's money for the purchase of the defective camper. Based on recent court decisions, [7] the lawyer informs the couple, there is a possibility that, even if the time to file the claim has not elapsed, the couple may have to prove which party-Paul, Modestinus, or both-caused the defect in the camper, as some courts require that a percentage of fault be allocated to each party, whether or not that party is able to pay or is even present in court. [8] On the other hand, some courts would allow the couple to file the claim and recover the purchase price of the camper fully from either Modestinus or Paul, forcing the two who *1229 profited to sort out the blame amongst themselves. [9] The law, Papinian's attorney reiterates, is simply not clear on this matter.

In its recent decision in Aucoin v. Southern Quality Homes, L.L.C., the Louisiana Supreme Court was given the opportunity to clarify this nebulous, albeit narrow, area of the law. [10] The purchaser of a mobile home brought an action in redhibition against both the seller and manufacturer, alleging solidary liability. [11] The court acknowledged in its opinion, as Papinian's lawyer informed him, that a split exists between the courts of appeal regarding the status of solidarity in redhibition claims. [12] While both the trial court and appellate court in Aucoin found in favor of imposing solidary liability, the supreme court chose to find the manufacturer "independently" liable, completely avoiding the issue of whether solidarity is still recognized under Louisiana law. [13] Given the opportunity to offer clarity to an issue that the court acknowledged is unclear among some Louisiana courts, particularly after recent amendments to the Louisiana Civil Code, [14] the supreme court, instead, injected further confusion. [15]

This Comment purports to demonstrate that solidarity between sellers and manufacturers continues to exist under Louisiana law even after the comparative fault amendments to the Civil Code. Part II begins with an overview of the history and development of both redhibition and solidarity. Part III offers a presentation of the current state of jurisprudential discord, particularly after the 1996 Civil Code revisions. This Comment then seeks to analyze the problem in Part IV by offering insight on both the theoretical and pragmatic implications of the confusion over solidarity in redhibition, while also proposing two potential solutions. Part V offers a brief conclusion.

## II. Background on Redhibition and Solidarity

Redhibition involves the warranty imposed by law on a seller of a product against certain vices or defects. [16] The action originated to *1230 protect the public against corrupt sellers, [17] such as Paul. A defect gives rise to a claim in redhibition when it renders an item either useless or makes its use so inconvenient that the law presumes a buyer would not have purchased the item had he or she known of the defect. [18] Similarly, when a defect does not render a product useless but merely reduces its value, a claim in redhibition is also available. [19] Under the first form of redhibition, the remedy involves rescission of the sale and return of the purchase price; under the second form, the court imposes a reduction in the purchase price. [20]

### A. Roman and French Legal History of Redhibition

A brief foray into the historical development of the law of redhibition is necessary to determine the purpose of implied warranty, both historically and presently, and to determine if and how solidarity fits into redhibition. [21] Redhibition traces its historical roots to early Roman law. [22] Originally, in classical Roman law, a contract of sale did not carry with it any warranty against defects or vices. [23] Beginning in the first and second centuries B.C., the Romans began to impose a warranty by which the curule aediles-the officer in charge of regulating markets and solving conflicts between consumers and sellers-forced sellers to stipulate or warrant that items sold were free from defects. [24] If *1231 these stipulations or warranties by the seller were proven untrue, the buyer had an action in redhibition to rescind the sale and receive a return of the purchase price. [25] This action had to be brought within six months of the sale. Good faith, or ignorance of the defect, on the part of the seller was not a viable defense. [26]

The Emperor Justinian included such "Aedilician" rules in his Digests. [27] These rules, rooting redhibition in the overall Roman law requirement that good faith govern the conduct of parties to contractual obligations, [28] extended application of redhibition to the sale of movables and immovables in general. [29] The redhibition action was only available for defects unknown to the buyer; an apparent defect was not covered. [30] Additionally, the remedy for a claim in redhibition in Rome included both rescission of the sale and quanti minoris (reduction in price), depending on the defect. [31] The purpose of an action in redhibition was to return the parties to the status quo. [32] Thus, a return of the purchase price in the form of rescission of the sale was the ideal remedy. [33] Both before the sale and after the claim for redhibition, the parties were theoretically in the same position-the buyer

was not without her money nor enriched with a gratuitous item, while the seller, similarly, was not enhanced with unearned profits, nor deprived of his defective product.

As the Roman law of obligations made its way into the French Civil Code in 1804-largely due to the writings of Robert Joseph Pothier, who relied heavily on Justinian's Digests-with it came the law of redhibition, which developed a significant presence in French law.[34] The purpose of the doctrine under French law was **\*1232** "to protect buyers and the general public against dangers inherent in all products."[35] In French law, the warranty against redhibitory vices is one of the two primary warranties inherent in every sale.[36] The law of and liability for redhibition is governed by the general rules of the law of sales.[37] The warranty against redhibitory vices is itself deemed indivisible in the French Civil Code.[38]

### B. Redhibition and Solidarity in the Louisiana Civil Code

When the drafters of early Louisiana law needed inspiration for the writing of a Civil Code, the writers naturally turned to the French and Roman law with which Louisiana was familiar.[39] The law of redhibition, in particular, distinguished Louisiana law from American and English sales law during the nineteenth century.[40] While the Anglo-American law of sales was characterized by the principle of caveat emptor,[41] the Louisiana Civil Code provisions on redhibition obligated the seller to warrant the item of purchase against hidden defects.[42] Redhibition thereby became a significant part of the Louisiana law of sales, as evidenced by its coverage and location in the Louisiana Civil Code.[43] As in its French and Roman predecessors, the provisions on redhibition require that the defect be hidden (not apparent)[44] and allow both for a rescission of the **\*1233** sale and for a reduction in purchase price.[45] Most of the provisions in Chapter 9 have existed since the Civil Code of 1870 and prior, and many were based on the relevant French Civil Code articles.[46]

Depending on the level of knowledge of the seller, the buyer must give some manner of notice to the seller regarding the existence of the defect to facilitate timely repair of the defective item.[47] Sellers, therefore, are protected against actions for redhibition when they have not been given timely opportunities for repair, as a buyer who fails to provide notice is thus subject to a "diminution" of the implied warranty.[48] Similarly, if a seller has knowledge of a defect and does not disclose it to the buyer, the seller is in bad faith and is liable to the purchaser for a number of damages items, including return of the purchase price with interest, reimbursement for reasonable expenses incurred for preservation, other damages, and attorneys' fees.[49] Moreover, a manufacturer is automatically treated as a bad faith seller, as it is presumed to know of defects in items it manufactures.[50] Unlike a seller in good faith, a bad faith seller is not owed an opportunity to repair the item; a buyer in such an instance may simply institute the redhibition action.[51] Nonetheless, a consumer is not required to sort out who manufactured or contributed to the defect.[52] Instead, the buyer may bring an action in redhibition against any or all of the sellers in the chain of sale, including the manufacturer.[53]

**\*1234** The redhibition articles of the Civil Code were most recently revised in 1993, though much of the old interpretation and jurisprudence are deemed to still apply since most of the redhibition provisions are strikingly similar to provisions of the 1870 Civil Code.[54] One of the new and significant revisions is the Civil Code article requiring that the buyer not merely tender the object for repair, but give timely notice to the seller, otherwise risking a reduction or loss of warranty.[55] This provision is framed in terms of responsibilities of the buyer, rather than focusing only on the duties of the seller.[56] The revision also alters the prescriptive period for redhibition claims, increasing the period from a one year maximum from the date of delivery to either four years from the date of delivery or one year from the date of discovery of the defect, whichever occurs first.[57] Most of the significant provisions-for instance, the definition of a redhibitory defect, dual remedies including rescission or reduction in price, and recovery of attorneys' fees-all remain unchanged by the 1993 revision.[58]

The provisions providing for the implied warranty of redhibition must be kept in their context in the Civil Code. Based **\*1235** on Civil Code article 2438, in matters where no specific provision is found, contracts of sale (i.e., those giving rise to redhibition claims) are generally governed by the rules of "Obligations and Conventional Obligations."[59] Redhibition is considered part of the "overriding duty of good faith" fundamental to Louisiana law.[60] According to the relevant provisions of the Expose des motifs for the "Obligations" portion of the Civil Code, that obligations must be performed in good faith is "inextricably rooted in civilian tradition."[61] The legally imposed implied warranty, made effective by the laws on redhibition, is merely a specific application of this duty of good faith.[62]

Akin to its French predecessor, the implied warranty against redhibitory defects is deemed indivisible under Louisiana law.[63] According to Civil Code article 1818, when an indivisible obligation involves more than one obligor, that obligation is subject to the rules governing solidary obligations.[64] While not every action for redhibition will involve multiple obligors, when an item is manufactured by one party and sold by another, based on article 1818, these obligors should be treated as solidarily liable for the implied warranty that the item sold is free from redhibitory vices.[65] Moreover, Civil Code articles 2531 and 2545 make clear that sellers and manufacturers are both liable for latent defects in their products, thus both may be deemed co-obligors to the buyer-obligee.[66] This co-obligation for the same thing is called solidarity.[67]

**\*1236** Solidarity is the legally fictitious consideration of multiple parties as being one and the same person, each proclaiming, in effect, "All for one and one for all."[68] The theoretical bases for solidarity are varied, depending on whether focus is placed on the cause or source of solidarity versus the effects of solidarity.[69] According to some Louisiana scholars, solidarity in both Roman and Louisiana law is rooted in the indivisibility of the object of the obligation, a view also adopted by Louisiana courts.[70] The Louisiana law of solidarity, though, has been mostly influenced by French law.[71] Unlike Roman law, which roots solidarity in the pre-existing relationship among the solidary obligors prior to and leading up to the contract, French and Louisiana law base solidarity in the mutual responsibility or liability for the whole that exists among the obligors, regardless of their prior relationship.[72] Paul, as seller of the camper, and Modestinus, as manufacturer of the camper, each owes Papinian the performance of delivering a travel camper that is free from redhibitory vices.

In Louisiana law, as in French law, solidarity is primarily identified in the Louisiana Civil Code by its effects.[73] The principal effect of solidarity as between debtors and creditors is to prevent the division of the debt and to obligate each debtor-obligor for the whole.[74] The creditor-obligee, then, is granted the liberty of choice, involving the freedom to "pursue those of his debtors whom it pleases him to choose."[75] Secondary effects of solidarity include that the interruption of prescription against one solidary obligor automatically interrupts the running of prescription against other solidary obligors and that the insolvency of one solidary obligor still allows the obligee to maintain an action against other **\*1237** solidary obligors for the totality of the debt.[76] The risk of insolvency for solidary obligors, unlike joint obligors, rests on the obligors themselves, not on the obligee.[77] According to Pothier, the reason why the interruption of prescription automatically affected each debtor-obligor was that each was bound for the same debt and owed the same personal right to the creditor-obligee.[78] Therefore, if Modestinus and Paul are deemed solidarily bound for the implied warranty, the interruption of prescription against Paul, which occurred when Paul was initially sued, also interrupts prescription against Modestinus. Likewise, if Paul, as a solidary co-obligor, is insolvent, Modestinus owes the entire debt to Papinian.

### C. Louisiana Jurisprudence Concerning Solidarity in Redhibition

Louisiana courts have been moderately consistent in imposing solidary liability between manufacturers and sellers in redhibition claims.[79] In the oft-cited Louisiana Supreme Court opinion Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc. (Media Production), the court espoused the state's "consumer protection rule," allowing buyers to recover, whether in tort law or redhibition, and regardless of privity of contract.[80] Media Production involved a suit by a consumer for rescission

of the sale of a defective automobile, alleging breach of implied warranty against the manufacturer. [81] The trial and appellate courts, despite finding the vehicle defective and rescission of the sale justified, dismissed the claim against the manufacturer by concluding that no express or implied warranty existed between the parties. [82] Relying heavily in its opinion on the French law of redhibition, the Louisiana Supreme Court reversed, holding the manufacturer solidarily liable with the seller for the price of the car and other expenses. [83]

*1238 In another widely cited opinion, the supreme court in Rey v. Cuccia also addressed the issue of solidarity between manufacturer and seller in redhibition. [84] That case involved an action by the purchaser of a camper trailer against both the seller and manufacturer of the camper trailer. [85] The purchaser sought to annul the sale based on an allegedly redhibitory defect in the trailer. [86] The court, through Justice Tate's opinion, ultimately held the manufacturer and seller solidarily liable for return of the purchase price, as well as attorneys' fees, citing Media Production as a basis for its decision. [87] Applying this reasoning to the factually similar Papinian example, Modestinus would be held solidarily liable with Paul for the defective camper. Nonetheless, the court's extensive discussion regarding whose fault or negligence caused the defect leaves questionable the Rey court's rationale for imposing solidarity, [88] particularly if the purpose of solidarity is to ensure that full relief is afforded to the consumer by avoiding finger-pointing among obligors. [89] On the other hand, the court's analysis regarding the defective construction of the trailer in Rey may have been a means of imposing liability among the co-obligors themselves. [90] While the solidary obligors are each potentially liable for the whole to the obligee-buyer, since both are in court and both are apparently solvent, the court may have been saving steps by determining the virile or fair share of liability owed by each obligor, as the relationship among solidary obligors themselves is more analogous to joint liability. [91] Nonetheless, the outcome of the decision in Rey clearly supports the imposition of solidary liability between manufacturer and seller in redhibition claims. [92]

In a much earlier decision, Illinois Central Railroad Co. v. New Orleans Terminal Co. (Illinois Central), the supreme court dealt with the aftermath of a railroad accident. [93] While that case did not *1239 deal specifically with redhibition, Illinois Central is often relied upon in implied warranty and similar cases for its analysis of the intersection of tort and contract claims. [94] The court relied on jurisprudence "strongly illustrative of a contractual obligation not merging in, or being absorbed by, a concurrent obligation in tort." [95] More significantly, the court noted that a party to a contract should not be allowed to "liberate himself" from the obligation by committing a tort. [96] The Illinois Central court concluded that breach of a contract that is committed by way of a tort is still sufficient to bring a claim under contract law. [97] Applying the analysis to redhibition and any contract claims existing after the comparative fault tort amendments to the Louisiana Civil Code, this decision appears to indicate that liability under contract law cannot be destroyed or divided by tort law. [98] Thus, if solidary liability is imposed by a contract of sale or by the sale of a defective item, the lack of solidarity under tort law should arguably have no effect on the parties' solidarity.

Louisiana courts of appeal have also imposed solidarity among sellers and manufacturers in redhibition claims. In Lehn v. Clearview Dodge Sales, Inc., the Louisiana Fourth Circuit Court of Appeal held the seller and manufacturer solidarily liable for a redhibition claim regarding a defective motor home. [99] Similarly, in Bison v. LaHood, the Louisiana Second Circuit Court of Appeal ruled that interruption of prescription by the buyer against a seller is sufficient to interrupt prescription against the manufacturer, thus upholding solidarity through the application of the secondary effects of solidarity by citing Civil Code article 2097-that the interruption of prescription against one solidary obligor interrupts prescription against all solidary co-obligors. [100] Moreover, in an earlier decision, the Louisiana First Circuit Court of Appeal held the manufacturer and seller solidarily bound for return of the purchase price for a defective electronic copier, citing Media *1240 Production and Rey. [101] Hence, the Louisiana jurisprudence on redhibition appears to have firmly established the idea that courts should continually impose solidarity between sellers and manufacturers of defective products. [102]

### III. The Current State of Jurisprudential Discord

Despite the apparent consistency of these Louisiana court decisions, there have been more recent disagreements within and among the Louisiana circuit courts of appeal regarding the existence of solidarity in redhibition. [103] This inconsistency has been particularly common in light of the 1996 Civil Code revision on comparative fault, which marked the "death" of solidarity, according to some scholars. [104] These amendments, particularly to Louisiana Civil Code articles 2323 and 2324, require that liability now be allocated to each party based on fault, limiting that actor's legal responsibility to his percentage of fault. [105] As a result, injured parties may never fully recover given the possibility of insolvent, immune, and unknown ("phantom") parties. [106] The amendments, therefore, represent a conscious decision on the part of the Louisiana Legislature to move to a "pure" comparative fault regime, removing solidary liability among negligent tortfeasors and, along with it, removing full compensation to those who are injured. [107] The policy arguments that led the legislature to make this significant shift from solidarity and pre-comparative fault were revealed in Bell v. Jet Wheel Blast, indicating that comparative fault principles are critical to hold consumers responsible and to ensure safety and accident prevention. [108]

While intended for tort claims, the broad language of the comparative fault amendments requires closer inspection to discern *1241 the articles' implications, if any, for the law of redhibition. [109] The language of article 2323(A) clearly imposes a purely comparative fault regime in Louisiana tort law, requiring that "the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether a person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, [or] immunity by statute . . . ." [110] The opening passage of paragraph A is somewhat broad, insofar as it applies to "any act for damages where a person suffers injury, death, or loss." [111] Based on the location of the article, however, any ambiguity in that language would likely be resolved in favor of applying the article only to actions in tort. [112]

Subpart B of article 2323, however, raises much more significant problems, providing, "The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability." [113] The language of the provision is startling in its breadth, applying without regard for the legal theory or basis of liability. [114] Taken literally, this provision appears to destroy solidarity in any action, whether in contract, tort, redhibition, or otherwise. [115] Shortly after the passage of this amendment to article 2323, Louisiana tort law scholars Frank Maraist and Thomas Galligan noted the problems with the article's overly broad and ambiguous language, likewise concluding that the language appears to include non-tort claims, including those brought in contract or redhibition, despite the apparent policy reasons for adopting the amendments, as discussed in Bell, that are limited to negligence-based tort claims. [116]

*1242 Since the passage of the comparative fault amendments, Louisiana courts have gone in different directions regarding the effect of the new comparative fault regime on solidarity in redhibition claims. [117] Most circuit courts of appeal are even split within themselves on the issue. [118] A detailed analysis of the varying appellate court opinions and the scant supreme court jurisprudence post-1996 is thus necessary to evaluate the present state of solidarity among manufacturers and sellers in redhibition claims.

## A. Third Circuit: An Illustration of Intra-Circuit Incongruity

The most frequently cited opinion of the Louisiana Third Circuit Court of Appeal on solidarity in redhibition is LeGros v. ARC Services, Inc. [119] In that case, the divided court made a strong affirmation of the existence, after the 1996 amendments, of solidarity between sellers and manufacturers of a defective engine in redhibition claims. [120] Because of the manufacturer's solidary obligor status, the running of prescription was interrupted when the buyer filed suit against the seller. [121] Were this composition of the third circuit to decide Papinian's matter, he and his wife could thus still recover against Modestinus, as the claim would not have prescribed because of the solidarity between Modestinus and Paul. The court in LeGros relied upon the "Louisiana consumer protection rule" espoused in the line of cases following Media Production. [122] The court also referenced comment c of Civil Code article 2545, though written in 1993 and prior to the comparative fault amendments, which plainly

states that manufacturers and sellers are solidarily liable in redhibition claims;[123] according to LeGros, this comment results in a "presumption of solidarity."[124]

One year later, though, in Gradney v. Chandeleur Homes, Inc., the third circuit reached the opposite conclusion on the same issue.[125] The redhibitory item at issue was a mobile home so defective that mold and mildew problems forced the parties to move out of the home.[126] Written by the dissenters in LeGros, the **\*1243** Gradney opinion held that the manufacturer of a defective mobile home was not solidarily liable because the sole cause of the defect was the fault of the seller.[127] There are, however, multiple possible explanations for this decision. The court may have merely applied a comparative fault analysis; therefore, the seller was apportioned all liability because its fault was the sole cause of injury.[128] Another possible rationale, though, is Civil Code article 2530, which requires that a defect must exist at the time of delivery for a manufacturer to be solidarily liable in redhibition.[129] Because the defect causing mold and mildew may not have existed at the time of delivery, the court appeared unwilling to hold the manufacturer liable for that defect.[130] The court did leave open the possibility for solidarity if the seller were dismissed, noting, "In the event the Gradneys will be able to demonstrate solidarity . . . the effect of the seller's dismissal from the main demand must be considered."[131] Based on the explanation offered, a third rationale for the decision emerges, that the court merely apportioned fault among solidary obligors, as the ruling stated that each solidary obligor is liable to the other co-obligor for his virile portion.[132]

In another decision, the third circuit held a manufacturer and seller liable in solido in redhibition for a defective van that caught fire.[133] Unlike Gradney, though, in Safeco Insurance Co. of America v. Chrysler Corp. (Safeco), the timing requirements of article 2530[134] were met; thus, there was no hindrance to the imposition of solidarity.[135] Reading this decision in context with Gradney, even though Safeco was decided three years earlier, may indicate that the court's language in Gradney about not imposing solidarity was dicta, as the timing requirements of article 2530 were an independent bar to the application of solidarity.[136] Nonetheless, in Safeco, the court cited Media Production, holding the seller and manufacturer "liable in solido for the return of the purchase price" but drastically limiting attorneys' fees to time **\*1244** spent on economic loss damages.[137] Because redhibition claims often overlap with tort claims, the court deemed it necessary to keep separate the amount for attorneys' fees and adjusted the award accordingly.[138]

In Aucoin-its most recent decision on solidarity in redhibition-the third circuit clearly adopted solidarity despite the comparative fault amendments, apparently disagreeing with its decision in Gradney.[139] Significantly, the court even noted that the 1996 amendments were not applicable to redhibition claims, holding the seller and manufacturer of a defective mobile home liable in solido for defects ranging from moisture problems to improper installation.[140] Even so, the supreme court eventually trumped the imposition of solidarity by deeming the manufacturer "independently" liable.[141]

**B. First Circuit: Continuation of Internal Variation**

The first circuit's jurisprudence is similarly inconsistent regarding solidarity in redhibition.[142] Shortly after the 1996 comparative fault revisions, in Petroleum Rental Tools, Inc. v. Hal Oil & Gas Co. (Petroleum), the court rejected solidarity imposed by the district court, favoring application of comparative fault.[143] The trial court found both parties solidarily liable but allocated fault equally between the seller and the manufacturer of defective workstring and casing in an oil well.[144] In remanding the case back to the first circuit, the supreme court instructed the court to allocate the fault percentage that was owed by a non-party.[145] The first circuit affirmed the trial court's conclusions in most respects, except for the imposition of solidarity.[146] Most significantly for the purpose of this Comment, the court applied the broad language of article 2323(B) to justify its allocation of fault, stating, "[W]e **\*1245** conclude that [the seller]'s liability for the redhibitory defect qualifies as 'fault' under Article 2323 A. To hold otherwise would be to fail to give effect to the phrase in Article 2323 B, 'regardless of the

basis of liability.'" [147] The court employed the comparative fault analysis despite acknowledging that the action was a claim solely in redhibition, rather than a tort claim for products liability. [148]

In the same year, though, the first circuit emphatically applied solidarity to a redhibition claim brought by purchasers of a home. [149] However, the case utilized pre-revision law because it was originally tried in 1995, a year before the comparative fault amendments. [150] The first circuit applied the redhibition articles in the Louisiana Civil Code, especially articles 2545 and 2531, the comments to which clearly state that a manufacturer and seller are solidarily liable in an action for redhibition. [151] Importantly, the court proclaimed, "[T]he obligation may be in solido even though the obligations of the obligors arise from separate acts or by differing reasons. It is the co-extensiveness of the obligations for the same debt . . . that determines the solidarity of the obligation." [152] The fact that this case was decided in the same year and by the same court as Petroleum, despite the inapplicability of article 2323(B) in that case, indicates the confusion wrought by the comparative fault amendments, even though all of the applicable redhibition articles remained unchanged.

More recently, the first circuit addressed the issue of liability of a manufacturer and seller in a redhibition claim. [153] Citing LeGros, though not Gradney, the court held that the seller and manufacturer were deemed solidarily liable in redhibition. [154] Moreover, the court cited article 2545 comments c and d, which address solidarity specifically, as support for the conclusion, stating, "Brunswick, as manufacturer, and Boater's Landing, as the seller, are solidarily liable for those damages." [155] The unpublished opinion, though, did *1246 not address prior first circuit jurisprudence that rejected solidary liability, leaving the issue arguably unclear at present. [156]

## C. Second Circuit: Solidarity Rejected, Uncertainty Remains

The second circuit has not addressed the issue of solidarity in redhibition in quite as much depth as the first and third circuits. Nonetheless, the court appears to have rejected solidarity in most instances among sellers and manufacturers in redhibition. [157] In Hampton v. Cappaert Manufactured Housing, Inc., the second circuit dismissed the buyer's claim, which sought to rescind the sale of an allegedly defective mobile home. [158] Language of the opinion indicates that the court rejected imposition of solidary liability between the seller and manufacturer in redhibition, even rejecting prior jurisprudence regarding solidarity in redhibition, and chose instead to impose joint liability. [159] Of particular import is the citing of and reliance upon article 2324, by which the court concluded that solidary liability has "only" been reserved for intentional tortfeasors. [160] The Hampton decision, though, may have been decided on different grounds by the court. Some language in the opinion suggests that the court would recognize solidarity in redhibition but for the compromise between the obligee-buyer and obligor-manufacturer. [161] The court even referenced Louisiana Civil Code article 1803, which deals with remission and compromise by a solidary obligor. [162] Given this rationale, the language specifically rejecting solidary liability in the rest of the opinion may be deemed dicta, or at least the holding should then be limited to situations involving a compromise by one co-obligor. On the other hand, repeated and strong language in the Hampton opinion suggests that the court only recognized the existence of a "joint and divisible obligation" owed by the seller for the claim brought in redhibition. [163]

In Bearly v. Brunswick, the second circuit evaluated the claim of a buyer of a boat against the boat manufacturer, seeking a return *1247 of the purchase price as well as attorneys' fees. [164] The court eventually concluded that the manufacturer could be liable to the consumer under either redhibition or the Louisiana Products Liability Act (LPLA). [165] Though the case did not directly address the issue of solidarity, the opinion contains very significant language regarding the court's acceptance of prior jurisprudence on the matter. In addition to citing LeGros approvingly, the court also relied on Media Production and Rey, noting that these "broad interpretation[s] of the Code's redhibition principles still apply" to manufacturers in redhibition claims. [166] Moreover, while not referring to comment c of article 2545-as the case does not address solidarity-the court relied heavily on the other comments to the article. [167] All this additional discussion of prior jurisprudence and doctrine indicates that the second

circuit may have left the door partially open to solidarity in redhibition claims, particularly because the court relied approvingly on the comments to article 2545 as well as prior jurisprudence, such as LeGros, which did impose solidarity in redhibition.

**D. Fourth Circuit: Approaching Consistency**

While the fourth circuit is arguably more internally consistent than the other courts of appeal in Louisiana, its sparse decisions on solidarity in redhibition following the 1996 comparative fault revisions leave the area somewhat unclear. [168] In De Atley v. Victoria's Secret Catalogue, L.L.C., the court addressed a claim involving both redhibition and products liability regarding a fire that resulted from an allegedly defective dress. [169] Most noteworthy for present purposes is the confusion injected by the assertion that "the primary difference between the two causes of action is the damages available under the two theories of recovery." [170] By this statement, the fourth circuit may have blurred the lines between tort law and contract law for redhibition claims.

In its initial ruling on the issue of solidarity in redhibition in Touro Infirmary v. Sizeler Architects (Touro), the fourth circuit **\*1248** largely adopted a pro subjecta materia approach to article 2323(B), rejecting application of the plain language of the article. [171] In a very significant portion of the opinion, the court concluded that comparative fault analysis and the 1996 revisions do not apply to redhibition claims against manufacturers because comparative fault applies to tort law, and redhibition is a contract law claim. [172] The court even cited a line of jurisprudence constante as support for the proposition that Louisiana courts "have been consistent in not allowing comparative fault to be pled as a defense in an action for redhibition or any other non-tort claim, as comparative fault is a tort based concept, and is thus governed by the laws under the title 'Offenses and Quasi Offenses' in the Civil Code." [173] The court's rehearing, though, makes slightly unclear the status of solidary liability in redhibition in the fourth circuit. [174] The court reversed its initial decision a year later upon rehearing because of a material issue of fact over whether the defect rendered the item useless. [175] Because reversal was in no way based on solidarity or comparative fault, the views expressed in the original Touro opinion are likely the accurate sentiment of the fourth circuit. [176] However, given the limited reasons for reversal-particularly in light of the court's choice not to reverse or re-address any of the pro-solidarity stance made by the initial Touro opinion-the fourth circuit still likely subscribes to the view that comparative fault analysis has no place in redhibition claims and that solidarity, therefore, continues to be recognized. [177]

**E. The Supreme Court Weighs In**

In 2008, the Louisiana Supreme Court had an opportunity to specifically address the status of solidarity in redhibition in Louisiana law. [178] In Aucoin, the supreme court addressed a mobile home purchaser's redhibition claim that alleged solidary liability **\*1249** against both the manufacturer and the seller. [179] A pre-occupancy inspection revealed numerous defects in the home, but the seller assured the buyer that the problems were minor and would be repaired. [180] After delivery, the buyer and his wife began experiencing many problems with the mobile home as a result of defects, including moisture problems and improper sealing in many places, which resulted in mold. [181] The buyer thus filed suit, alleging that both the manufacturer and the seller were bound for the redhibitory defects throughout the mobile home. [182]

The district court found that both the manufacturer and the seller were solidarily bound to the buyer for return of the purchase price of the mobile home, based on redhibition. [183] The third circuit subsequently affirmed, relying on the legislative intent of article 2545 to impose solidary liability and to protect consumers. [184] The supreme court granted the certiorari application of the manufacturer to determine the manufacturer's liability. [185] Finally, the court was face-to-face with an ideal opportunity to clarify the post-comparative fault amendment status of solidarity in redhibition claims. The supreme court even noted the need for clarity by pointing out in a footnote the existence of a split between the courts of appeal on the very issue of solidarity in redhibition. [186] Nonetheless, the court punted by deeming the manufacturer "independently" liable, regardless of solidarity. [187] The meaning of this language, particularly in the context of the prior law on the issue, is unclear. [188] Was the court claiming

that the manufacturer was a joint obligor and therefore independently liable, or was the manufacturer still potentially solidarily bound with the seller, and the court was merely ruling on the issue before it-the certiorari application by the manufacturer?

The supreme court acknowledged, at least to some degree, the existence of such questions, but offered little clarity, instead concluding that the issue of solidarity was unnecessary to the resolution of the case in Aucoin. [189] There is much language in the **\*1250** opinion that still indicates support from the court for the overall existence of solidarity in redhibition. Important jurisprudence, such as Media Production and Rey, was cited approvingly. [190] The purpose of redhibition claims, as acknowledged by the court, is still, as it has been since its Roman origins, to protect buyers from undisclosed defects by corrupt dealers and to restore the parties to the status quo. [191] However, the court still concluded that, although Media Production and Rey deemed sellers and manufacturers solidarily liable in redhibition, "we need not reach the correctness of that issue, as we find the manufacturer is independently liable under those cases for redhibitory defects that existed at the time of delivery." [192] The timing issue of article 2530 [193] therefore reemerged as potentially stultifying the solidarity issue. Never, though, did the court allege that the comparative fault amendments apply to redhibition claims. [194] The court pointed out, however, that a seller has an action against a manufacturer once that seller has been held liable for defects existing at the time of delivery. [195] Such a claim involves subrogation, which is an indicator of the effects of solidarity being imposed among the parties, particularly the co-obligors, which is based on article 2531, as noted by the court, and also the more general article dealing with subrogation between solidary obligors, Civil Code article 1804. [196]

An alternate explanation for the holding may be that the lower courts had merged the issue of liability for defects in land with liability for defects in the mobile home. [197] The supreme court, on the other hand, separated that part of the issue, deeming the manufacturer liable for the whole mobile home and not for the land because the manufacturer had nothing to do with the sale involving the land. [198] In this sense, perhaps the manufacturer was held **\*1251** solidarily liable, though not deemed so by the court, since the manufacturer as obligor was liable to the buyer-obligee for the whole debt. [199] Under this rationale, the court merely clarified what particular object was owed by the manufacturer-obligor.

Nonetheless, the issue of solidary liability between the manufacturer and the seller in a redhibition claim appears on the surface to be unresolved, particularly after reading the Aucoin decision. [200] On the contrary, solidarity has long existed and continues to exist-though, admittedly, clarification is in order-in redhibition claims under Louisiana law.

### IV. Analysis

Given the current state of jurisprudential disarray, some modicum of clarity is necessary, whether from the courts or otherwise. This jurisprudential ambiguity has ramifications for Louisiana law, as well as practical consequences for the affected parties, including consumers, retailers, manufacturers, and legal practitioners. [201] At present, practitioners such as Papinian's attorney are unable to advise their clients with any certainty regarding the state of "the law" [202] as applied to sellers and manufacturers in redhibition. Not only are consumers like Papinian forced to walk through the fog of uncertainty, sellers and manufacturers are also currently unsure of their rights and legal status regarding the imposition of liability in redhibition.

### A. Legal Consistency: An Examination of Theoretical Implications

Theoretically, redhibition fits into Louisiana law-as well as French and Roman law-as a contract claim, not a tort claim. [203] While some scholars have claimed in the past that an implied warranty claim should be considered under tort law, such statements reflect pre-LPLA scholarship when implied warranty was the basis of products liability actions, which were not then separately covered by the LPLA. [204] Warranty is seen as being "of **\*1252** the nature of a [commutative] contract of sale," without which the obligations may not truly be reciprocal. [205] As one of the two fundamental warranties inherent in any sale, at least in a civilian jurisdiction, [206] the implied warranty against redhibitory vices should thereby be treated as a contract claim, rather than a tort claim, because a claim in redhibition cannot exist without some kind of contract of sale as its basis. [207] Also,

as explained by Louisiana obligations law scholar Professor Litvinoff, redhibition is a specific application of the underlying concept of good faith inherent in the civil law and expressed throughout the Louisiana Civil Code.[208] This particular application of good faith is rooted in the "Conventional Obligations" section of the Civil Code, rather than the tort section, as indicated by Civil Code article 1983, which states in its last sentence, "Contracts must be performed in good faith."[209] Similarly, Civil Code article 1759 requires that "[g]ood faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation."[210] Redhibition is deemed an application of good faith because it is a legally imposed assurance that the seller will either disclose or not sell a defective item; in case of a breach of such an implied obligation, the buyer is assured appropriate legal recourse-rescission of the sale or reduction in price.[211] Moreover, the requirement of Civil Code article 2522 that a buyer must give the seller opportunity to make reasonable repairs may also be deemed an example of the application of the civilian contractual obligation of good faith.[212]

Such characterizations are far from merely academic pontificating; whether an action is viewed as tort-or contract-based has numerous practical implications for the parties involved, **\*1253** as does the recognition of solidarity.[213] While tort claims generally offer no provision for attorneys' fees, such fees are readily available in redhibition claims, provided that a proper showing of knowledge is made.[214] Additionally, the prescriptive period for contracts and torts is very different.[215] Regarding solidarity, while interruption of prescription against one solidary obligor interrupts prescription against the other, such may not be the case if sellers and manufacturers are not so bound together.[216] Regarding potential remedies, while both contract and tort claims make damages awards available, only under contract law claims is specific performance a possibility.[217] Specific performance may be particularly appropriate for redhibition claims, when what the buyer wants is a functional version of the product she purchased, rather than a lump of money, forty percent of which may be taken by her attorney.[218] Additionally, for contract claims (and likewise for redhibition) there is no requirement that negligence be proven.[219] Grave difficulty may be placed on a buyer who has to ascertain precisely when the defect in the product occurred in order to be accorded relief.[220] While, in tort law, either negligence or intent must be alleged and proven for recovery, in contract law, breach is sufficient.[221] Similarly, for redhibition, proof of the existence of a latent defect, i.e., one that was not apparent at the time of purchase, is sufficient for a redhibition claim.[222]

Because redhibition is a contract law claim rather than one rooted in tort law, the provisions of articles 2323 and 2324, comprising the comparative fault revisions, should not apply to redhibition claims.[223] Based on the composition of the Louisiana Civil Code, particularly the systematic organization characteristic of such a code, a pro subjecta materia reading of article 2323 is **\*1254** essential.[224] Despite the broad language of article 2323(B), particularly that the action applies to all claims regardless of the theory of liability, application of the literal language would lead to absurd consequences by potentially applying comparative fault to ordinary contract, or even property, claims.[225] Based on articles 9 and 10 of the Civil Code, this provision should thus be interpreted in a manner "that best conforms to the purpose of the law."[226] The purposes of the legislature in passing the comparative fault revisions[227] are completely distinct from the reasons for redhibition.[228] Article 2323 was implemented as part of the revision to apply "pure" comparative fault tort law in Louisiana.[229] This change was accomplished in response to cases like Bell, to deter consumer misuse and encourage consumer safety and care; the legislative change had nothing to do with imposing consumer protection from sellers or manufacturers or allocating the risk that a product will possess latent defects.[230]

The comparative fault articles should be interpreted accordingly and should thus be deemed applicable to tort law situations where consumer misuse may reduce a plaintiff's recovery, forcing a careless plaintiff to take responsibility for his own negligent behavior.[231] Unlike the legislative purposes behind the adoption of articles 2323 and 2324,[232] the reasoning behind redhibition provisions, according to well-established jurisprudence and doctrine, is to ensure consumer protection from hidden defects in products[233] and to return the parties to their respective positions before the contract of sale was entered.[234]

Due to the indivisibility of an implied warranty, the rule of solidarity should automatically be applied to govern the conduct of **1255** the manufacturer and the seller toward the buyer. [235] The obligation of implied warranty imposed on a sale is generally held to be an indivisible object of an obligation. [236] According to article 1818, when an obligation is indivisible and involves two or more obligors, that obligation should be governed by the rules of solidarity. [237] Effects of solidarity-such as interruption of prescription affecting all obligors and determination of which party bears the risk of insolvency-should all be applied to redhibition simply because the warranty is an indivisible object of an obligation. [238]

The risk of an insolvent obligor is placed on the other obligors when solidarity is imposed, as each obligor may be held responsible for performance of the entire obligation. [239] Otherwise, when comparative fault analysis is applied, the obligee is at risk of not recovering fully, particularly if the insolvent party is largely at fault or liable. [240] Resolution of this issue depends on the answer to the question, who should bear the risk of insolvency? Because sellers and manufacturers are the parties who most directly stand to profit from their symbiotic relationship in selling the potentially defective product, they should bear the risk of one another's insolvency rather than the unsuspecting buyer, who still has a number of legally imposed duties under the redhibition articles. [241]

The bases for imposing liability under contract law and tort law vary, as do the legal ramifications. [242] Because the contract itself encompasses the law between the parties, the law of contracts generally seeks to enforce the wishes of those parties. [243] Tort law claims, on the other hand, are a matter of public order, as tort law involves legally imposed duties representing policy choices on the **1256** part of the legislature. [244] Although contract claims and tort claims are not mutually exclusive, Professor Litvinoff has noted the significance of categorization of a claim as contract or tort, particularly as it affects the options available to an obligee. [245] Indeed, "the obligee of a conventional obligation has at his disposal for the protection of his interest a larger armory of legal weapons, or remedies," than a tort law claimant. [246] These remedies that are available in contract law, but not tort law, include the possibility of seeking specific performance of the contract, as well as the potential defenses relating to vices of consent, leading to nullity of an obligation. [247] On the other hand, the recovery of damages is often reduced solely to pecuniary losses in contract law, whereas the door is wide open in tort law. [248]

In comparison with French law, imposing solidarity in the manner of Media Production and its progeny represents a middle ground of relief between buyers and sellers. [249] Unlike courts in Louisiana, French jurisprudence automatically imputes knowledge to professional sellers, who are always considered to be in bad faith. [250] This interpretation is "guided by a concern for the indemnification of victims to the most liberal extent possible," binding sellers and manufacturers for all injuries that result from defects in their products. [251] The presumption exists to impose an obligation on sellers to know of any defects in products that they are selling, similar to the reasons for the presumption of knowledge of defects imputed to the manufacturer under Louisiana law. [252] The French law goes further, however, in imposing an obligation to eliminate defects about which one is presumed to know in order to encourage safety for the protection of the public. [253] On the contrary, imposition of solidarity, combined with Louisiana's imputation of knowledge upon manufacturers who are likely to have more control over the existence of defects in their **1257** products, [254] represents a viable middle ground between the allocation of fault vis-a-vis the application of the comparative fault amendments and the hyper-solidarity that exists in French law.

Continuing to recognize solidary liability in redhibition claims also comports with long-standing jurisprudence constante in Louisiana. [255] Louisiana courts have consistently relied on the consumer protection rule espoused by Media Production, which holds sellers and manufacturers solidarily liable in redhibition claims in order to best protect consumers. [256] The clarification of continued recognition of solidarity in redhibition would also be consistent with Illinois Central, in which the court proclaimed that a party to a contract should not be allowed to abridge his obligation simply by committing a tortious act. [257] Applying tort law principles of comparative fault to redhibition claims, on the other hand, would do exactly what the Louisiana Supreme

Court advocated against, by allowing a tort claim to abrogate a pre-existing contract.[258] The aggrieved buyer in such an action would be deprived of his remedy in contract law and his sole option for recovery would be in tort law.

## B. Pragmatic Considerations

Consistently imposing solidary liability between sellers and manufacturers in redhibition claims would be mutually beneficial for all affected parties. Because redhibition, unlike tort-based products liability claims, allows recovery of attorneys' fees, there may be some renewed incentive to bring an action in redhibition rather than simply filing suit in tort law, particularly if the consumer is ensured full compensation for the purchase by imposing solidarity.[259] Additionally, because attorneys' fees are reduced when the claim is also brought in tort law,[260] perhaps a **\*1258** consistent finding of solidarity would encourage practitioners to seek redhibition claims, rather than tort claims, in order to maximize the recoverable attorneys' fees award.

Consumers, in particular, benefit from the imposition of solidarity in redhibition claims, which accords with the purpose of redhibition law in general.[261] Because interruption of prescription against one obligor in solido interrupts prescription for all other solidary obligors, the consumer's bringing of a claim in redhibition is thereby benefitted because she does not risk the possibility of losing her claim by mistakenly suing the incorrect party, such as in the case of an unknown manufacturer or a seller who appears to be the only known producer of a product.[262] If a manufacturer sets up a sham business as a seller, or vice versa, or if a legitimate seller or manufacturer simply becomes insolvent, the consumer is protected by not bearing the risk of insolvency of one of the solidary obligors. Were comparative fault applied, however, and the party who caused the defect was insolvent, the consumer would be without full recovery.[263]

In the case of Papinian, for instance, the filing of his claim against Paul would thereby interrupt the running of prescription against Modestinus. Even two years later, when Papinian realized he could not recover from Paul, he and his wife would be able to receive their money back from Modestinus. Under the current state of the law, though, Papinian's lawyer had to be honest and tell him that there is no certainty for any of the parties. Some court decisions impose solidarity, while some decisions from the same appellate circuits impose comparative fault.[264] If comparative fault analysis was employed, unless Papinian could somehow show that Modestinus was 100% at fault in causing the defect in the camper, the couple would never recover full return of the purchase price, let alone applicable attorneys' fees.[265]

Imposing solidary liability in redhibition would also protect the public at large and consumers more generally. Unlike tort claims, redhibition requires no showing of negligence; the mere existence **\*1259** of the defect shortly after the purchase is deemed sufficient.[266] This is particularly important as the timing and thus proximate cause of the defect is likely difficult to ascertain for a consumer who simply knows that she now has a defective product.[267] Additionally, imposition of solidarity protects the consumer from inevitable finger-pointing and speculation over which party-the manufacturer or the seller-should actually be deemed liable for the defect because, in the case of solidary obligors, the consumer can recover the totality of the purchase price from either obligor, regardless of its percentage of fault.[268] Fair relief will ultimately be accorded to the obligors among themselves, however, under article 1804, but the consumer's efforts will not be thwarted while the manufacturer and the seller determine each other's virile share.[269] The public at large will be more protected from the risk of purchasing latently defective products because once manufacturers and sellers are put on notice that they may be held solidarily bound for defective products, such sellers and manufacturers should logically be expected to take greater care in choosing with whom they go into business and what products they agree to sell.

Ensuring solidarity in redhibition claims would also be beneficial to sellers and manufacturers. If consumers are encouraged to bring redhibition claims after solidarity is guaranteed,[270] then the advantages to sellers and manufacturers of receiving a redhibition complaint rather than a tort suit become even more pronounced. Unlike tort claims, where a defendant worries about a plaintiff attaining a potential windfall, redhibition claims are much more limited in terms of damages; generally only

the purchase price plus reasonable attorneys' fees would be available.[271] Thus, the potential losses for a manufacturer or a seller are more manageable.

Moreover, redhibition is particularly unique because it requires the consumer to give notice to the manufacturer and, in the case of a good faith seller, also requires a reasonable opportunity to repair before such a redhibition claim may be completed.[272] The requirement that a manufacturer be given notice is important because such notice before the action for redhibition is filed may **\*1260** afford the manufacturer the opportunity to attempt to alleviate the burden of the consumer, offer to replace the allegedly defective product, or perform other extra-judicial action. These steps may ultimately reduce the likelihood of continued litigation by encouraging the possibility of early resolution between the parties. The opportunity to repair is also advantageous both to sellers and, potentially, to courts. The consumer is strongly encouraged by article 2522 to grant the seller the opportunity to repair the defective item; otherwise, a reduction in the warranty may result.[273] Given the chance to repair the thing sold, the seller has a golden opportunity to cut short the grievance by repairing or even replacing the item. Litigation is prevented before it begins, thanks to article 2522; given the relative pain of litigation, all parties to the would-be redhibition action are thereby benefited.[274]

### C. Proposed Solutions: A Call for Clarity

Given the need for clarity regarding the status of solidarity in redhibition after the comparative fault amendments, at least two viable options are available. Either the legislature, as a primary promulgator of law,[275] could offer clarity through adopting a minor amendment to the Louisiana Civil Code, or the supreme court and courts of appeal could consistently clarify their interpretations regarding the solidary liability of sellers and manufacturers in redhibition claims.

### 1. Legislative Change

Because legislation is the primary source of law in our civilian jurisdiction, a clarification from the legislature, particularly as part of the Louisiana Civil Code, would be ideal.[276] Moreover, the addition of such an article would prevent courts from perpetuating **\*1261** disharmony and confusion in the area of solidarity in redhibition. Because Title VII involves "Sale" and Chapter 9 specifically deals with redhibition, this location is ideal for such an article. Also, a location nearest article 2545 would be desirable for two reasons: the article is often cited as support for the imposition of solidarity between the seller and the manufacturer, and the article contains a comment c, which textually supports solidarity in redhibition.[277] Civil Code article 2546 would provide an excellent location, as this article is near article 2545 and is currently reserved and unused. An example of such a provision would appear as follows:

Article 2546. Solidary liability of seller and manufacturer:

"When the thing sold contains a redhibitory defect, the manufacturer and the seller are solidarily liable to the buyer for a return or reduction of the purchase price and other damages in redhibition, such as attorneys' fees."[278]

The language from the proposed article comes directly from comment c to article 2545.[279] Advantages to using such language include familiarity and reliance by courts and practitioners, as well as coherence with prior jurisprudence.[280] Additional language was added to apply solidarity consistently with other redhibition provisions of the Louisiana Civil Code, such as the action for attorneys' fees and the alternate remedy of reduction in purchase price.[281] While the advantages of a legislative solution are numerous-providing an authoritative statement of clarity that courts could not ignore, as well as the advantages of legal consistency and the pragmatic considerations previously discussed[282] -one limitation must initially be noted. Although the language of proposed article 2546 would clearly impose solidary liability for sellers and manufacturers in redhibition, the broad language of article 2323(B) may still have lingering effects.[283] **\*1262** Ultimately, the problem with article 2323(B) could be solved very simply by a court ruling (or a series of court rulings if not from the supreme court) that the language of article 2323(B) is limited to tort claims, thus employing a pro subjecta materia reading of the article.[284] Courts would be

much more likely to apply such an interpretation to article 2323 once this proposed article is passed because of the clear and unambiguous legislative intent behind article 2546 to impose solidarity.

## 2. Judicial Clarification

Because courts of appeal have recently proferred inconsistent rulings, both within and among each circuit, [285] having an appellate court clarify that Louisiana law continues to recognize solidarity despite the comparative fault amendments, while an important step, would likely not have the desired effect. Many courts have already done so and, yet, uncertainty remains. [286] Thus, a definitive ruling from the supreme court is the most viable option short of legislative enactments. [287] Were the supreme court given another ideal opportunity as in Aucoin, the court should hold that, as was recognized in Media Production, Rey, and their progeny-such as LeGros-solidarity between sellers and manufacturers still applies in redhibition claims because article 2323(B), despite its overly broad language, is limited in application to negligence-based tort claims only. The court would have clear support for this decision from prior Louisiana jurisprudence, [288] as well as Louisiana **1263** scholars. [289] While the enactment of a legislative clarification is theoretically more authoritative, [290] courts are particularly suited to interpret the meaning of legislative provisions. [291] Narrowing the applicability of article 2323(B), despite its broad language, would be especially appropriate if espoused by a court interpreting the language in light of its location in the Louisiana Civil Code, rather than modifying its meaning. [292] The legislative basis for this ruling by the court could come from a number of sources. [293] The court should root its holding in article 2545, as well as the fact that redhibition is a contract-based claim; thus, contract law principles, such as solidarity and good faith, remain applicable. [294]

### V. Conclusion

This analysis is by no means suggestive that Louisiana law of redhibition is in shambles. On the contrary, many courts of appeal do continue to impose solidary liability between sellers and manufacturers in appropriate settings for redhibitory defects discovered by consumers. [295] Even the supreme court has not strayed explicitly regarding the applicability of the comparative fault amendments; rather, the court has simply avoided the issue. [296] This Comment merely serves as a call for clarity and proposes practical solutions that may be adopted by either the legislature or the judiciary in order to clarify for practitioners, scholars, courts, and affected parties that solidary liability continues to exist in redhibition claims. Further research may be appropriate to determine the empirical likelihood that imposition of solidarity would affect the conduct of producers and retailers in a manner advantageous to consumers and the general public.

**1264** By providing clarity, these proposed solutions ensure that Papinian, his wife, and their attorney are no longer in a position of uncertainty, risking a loss for which Papinian took reasonable precautions. [297] Moreover, Modestinus should know beforehand, and with certainty, that he may be solidarily bound with businesses and individuals like Paul who sell his products. Only when sellers and manufacturers know with clarity and certainty that the law will hold them solidarily liable for redhibitory defects can the parties adjust their conduct accordingly. Imposing solidarity on Modestinus and Paul is not unfair to either of them. Papinian will never be allowed double recovery, as the obligors are only bound for the whole-in this case, return of the purchase price and potentially attorneys' fees. As Paul and Modestinus are the individuals who most directly profit from their relationship, they should bear the risks or potential costs of solidarity. Neither will ultimately be liable for more than his share, based on the solidarity provisions of the Louisiana Civil Code, [298] with one exception. [299] Because Paul is insolvent, Modestinus may be held liable for return of the entire purchase price for the camper. This outcome is in no way unfair, however, as Modestinus and Paul would otherwise have been rewarded by profiting from the sale of a product so defective that it was rendered useless. Papinian and his wife simply want their hard-earned money returned for the purchase price of the defective camper. As long as solidarity in redhibition is recognized, the couple will receive what they are due.

Footnotes

1    Copyright 2010, by Elizabeth A. Spurgeon. Alain Levasseur, Louisiana Law of Obligations in General: A Precis § 3.3.2 (2006) (citing Alexandre Dumas, The Three Musketeers (1948)).

a1   Co-recipient of the Association Henri Capitant, Louisiana Chapter, Award for the best paper on a civil law or a comparative law topic with an emphasis in the civil law.

     The author would like to thank Professor Ronald Scalise for his guidance, patience, and encouragement in supervising the writing of this Comment. The author would further like to thank Professors Andrea Carroll, Alain Levasseur, Ronald Scalise, and J.-R. Trahan for their inspiring devotion to the civil law and its students.

2    See Rey v. Cuccia, 298 So. 2d 840 (La. 1974), a factually similar case in which the supreme court addressed a claim regarding a trailer that collapsed on the second day of use after traveling about 200 miles. Id. at 845. In the redhibition suit, the court had no difficulty finding the seller liable, but imposing liability on the manufacturer was more difficult because the court had trouble ascertaining who caused the defect that triggered the malfunction and collapse of the trailer. Id. Ultimately the court concluded that the manufacturer and the seller were solidarily liable to the buyer for the redhibition claim and applicable attorneys' fees. Id. at 847.

3    See infra Part II.

4    See infra Part III.

5    Liberative prescription, as a general proposition, involves the amount of time that the law allows for the filing of a lawsuit against a party for a particular claim. See La. Civ. Code art. 3447 (2007). Regarding the interruption of prescription for solidary obligors, see La. Civ. Code art. 1793 (2007).

6    Solidary liability, or solidarity, involves the coextensive obligation for the same thing-in this case a co-obligation for the implied warranty offered by laws on redhibition. See infra Part II; see also La. Civ. Code art. 1794 (2007) (stating that an obligation is solidary for the obligors when each obligor is liable for the whole performance of the obligation).

7    See, e.g., Gradney v. Chandeleur Homes, Inc., 900 So. 2d 282 (La. App. 3d Cir. 2005); Hampton v. Cappaert Manufactured Hous., 839 So. 2d 363 (La. App. 2d Cir. 2003); Petroleum Rental Tools, Inc. v. Hal Oil & Gas Co., 701 So. 2d 213 (La. App. 1st Cir. 1997), writ dismissed, 706 So. 2d 982 (La. 1998).

8    See infra Part III. See generally Frank L. Maraist & Thomas C. Galligan, Jr., Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul. L. Rev. 339 (1996) (discussion of comparative fault amendments to the Louisiana Civil Code).

9    See infra Part III.

10   984 So. 2d 685 (La. 2008).

11   Id. at 687.

12   Id. at 693 n.12.

13   Id. at 693.

14   See infra Part III. See generally La. Civ. Code arts. 2323-2324 (2007) (comparative fault provisions).

15   Aucoin, 984 So. 2d at 693.

16   La. Civ. Code art. 2520 (2007).

17   Bruce V. Schewe & Debra J. Hale, Obligations, Review of Recent Developments: 1991-1992, 53 La. L. Rev. 917, 919 (1993).

18   La. Civ. Code art. 2520 (2007).

19   Id.

20   Id.

21    Moreover, a look at the historical roots of redhibition in Roman and French law is particularly appropriate for a study of Louisiana law because of the influence of Roman and French law on the law of Louisiana. See Shael Herman, The Contribution of Roman Law to the Jurisprudence of Antebellum Louisiana, 56 La. L. Rev. 257, 264-65 (1996). The early residents of Louisiana lived under customary Spanish and French law, largely influenced by Roman legal ideas. Id. at 258. Additionally, the Digest of Louisiana, published in 1808, evidences the strong influence of Roman and French law on the law of Louisiana and, subsequently, the Louisiana Civil Code of 1825. One example of this Roman and French influence is the tripartite division of the main books of the Civil Code and the titles of the Civil Code, which are equally suggestive of French and Roman inspiration. Id. at 259.

22    David E. Murray, Implied Warranty Against Latent Defects: A Historical Comparative Law Study, 21 La. L. Rev. 586, 594 (1961); Schewe & Hale, supra note 17, at 919.

23    Alain Levasseur & David Gruning, Louisiana Law of Sale and Lease: A Precis § 4.1.4 (2007).

24    Id.; Murray, supra note 22, at 595.

25    Murray, supra note 22, at 595.

26    Id.

27    Id. at 596; see Dig. 21.1.14.9-.10 (1998); see also Herman, supra note 21, at 265 n.21 (citing Dig., supra, at 21.1.14.9-.10, 21.1.34-.38).

28    See Joseph Story & W.E. Grigsby, Commentaries on Equity Jurisprudence 132 (2006).

29    Murray, supra note 22, at 595 (noting that the redhibition action originally only covered slaves and, eventually, animals).

30    Id. at 596.

31    Id.

32    Aucoin v. S. Quality Homes, LLC, 984 So. 2d 685, 691-92 (La. 2008); Schewe & Hale, supra note 17, at 920; see also A.L. Barton, Young v. Ford Motor Co.: "Contorts"-Nonpecuniary Damages in Redhibitory Actions, 67 Tul. L. Rev. 336 (1992) (regarding appropriateness of particular damages awards in redhibition claims).

33    Murray, supra note 22, at 596.

34    Peter Stein, Roman Law in European History 114-15 (1999); see Code civil [C. civ.] art. 1641 (Fr.) (trans., London, William Benning 1827) ("The seller is bound to warranty in respect of secret defects in the thing sold which render it improper for the use to which it is destined, or which so far diminish such use, that the buyer would not have purchased it, or would not have given so large a price, if he had known them.").

35    Philippe Malinvaud, Redhibitory Defects and Their Importance in Contemporary Society, 50 Tul. L. Rev. 517, 518 (1976).

36    Mack E. Barham, Redhibition: A Comparative Comment, 49 Tul. L. Rev. 376, 376-77 (1975) (referring to both the French Civil Code and the Louisiana Civil Code of 1870); see also William V. Redmann, Redhibition in Louisiana: Its Uses and Its Problems Today, 50 Tul. L. Rev. 530, 530 (1976) (history and uses of redhibition). The other warranty is that of delivering the thing sold. Id.

37    Malinvaud, supra note 35, at 518.

38    Levasseur, supra note 1, § 4.4.2; Barham, supra note 36, at 383; see also infra Part II.B (indivisibility of the obligation of solidarity).

39    See Herman, supra note 21, at 258-61.

40    Id. at 264.

41    Let the buyer beware (translation from the Latin phrase).

42    Herman, supra note 21, at 264; see also La. Civ. Code arts. 2520-2521 (2007).

43   See Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc., 262 So. 2d 377, 381 (La. 1972). Chapter 9 of the Louisiana Civil Code, located in Title VII on "Sale," is entirely devoted to redhibition, which encompasses articles 2520-2548.

44   La. Civ. Code art. 2520 (2007); C. civ. arts. 1642-1643 (Fr.).

45   La. Civ. Code art. 2521 (2007); C. civ. art. 1644 (Fr.).

46   Barham, supra note 36, at 376; see La. Civ. Code art. 2520 cmt. a (2007); C. civ. arts. 1641-1648 (Fr.).

47   La. Civ. Code art. 2522 (2007).

48   George L. Bilbe, Redhibition and Implied Warranties Under the 1993 Revision of the Louisiana Law of Sales, 54 La. L. Rev. 125, 129 (1993).

49   La. Civ. Code art. 2545 (2007). The allowance for attorneys' fees is unique to redhibition, as most other disputes pursuant to the law of sales and obligations more generally do not appear to allow for attorneys' fees, instead choosing to follow the American rule that each party pays its own fees. According to comment b of article 2545, which cites Pothier, a manufacturer is automatically deemed to know of defects because "by exercising his trade he represents that he has the skill of one learned in his art, and he is for this reason presumed to know of the defects in the things he sells." Id. cmt b. Furthermore, based on the imputation of knowledge, according to the comments, a manufacturer can never be in good faith under this article. See id.

50   Id.

51   La. Civ. Code art. 2545 cmt. f (2007).

52   La. Civ. Code art. 2545 (2007).

53   Id. cmt. d. While comment c of article 2545 does state that the manufacturer and the seller are solidarily liable for return of the purchase price, this language is by no means a conclusive statement of Louisiana law. Not only does this comment cite jurisprudence from the 1970s as its only source, but the comment's reliability or accuracy is the subject matter that this entire Comment seeks to address, and, thus, a preliminary reliance on the comment's veracity is not desirable. Additionally, Civil Code comments are not a part of the legislation or positive law of the Civil Code; they are simply doctrine. See Levasseur, supra note 1, at 35.

54   Bilbe, supra note 48, at 126-28.

55   Id. at 128-29.

56   La. Civ. Code art. 2522 (2007).

57   Bilbe, supra note 48, at 133 (citing La. Civ. Code art. 2534 (1992) (amended 1997)).

58   The other fairly recent legislative enactment to potentially impact the arena of redhibition claims is the Louisiana Products Liability Act (LPLA). The LPLA is a tort-based products liability act that applies to claims against manufacturers; indeed, the LPLA purports to be the exclusive remedy for such claims against manufacturers. See La. Rev. Stat. Ann. § 9:2800.54 (2009). Despite the apparent overlap between the LPLA and redhibition-both involve sellers and potentially manufacturers, both involve claims of defective products-the LPLA carves out an exception to its exclusivity provision for redhibition claims; thus, the LPLA is the exclusive remedy for tort claims in products liability against manufacturers, but redhibition claims may still be raised separately. See Draten v. Winn Dixie of La., Inc., 652 So. 2d 675 (La. App. 1st Cir. 1995) (citing Monk v. Scott Truck & Tractor, 619 So. 2d 890 (La. App. 3d Cir. 1993)). This niche for redhibition is carved out by the provision in the LPLA that defines "damage" as including losses "only to the extent that Section 3 of Chapter 6 of Title VII of Book III of the Civil Code, entitled 'Of the Vices of the Thing Sold,' [LSA-C.C. art. 2520 et seq.] does not allow recovery for such damage or economic loss." Id. at 678; see La. Rev. Stat. Ann. § 9:2800.53(5) (2009). Because the LPLA is only the exclusive remedy for damages as defined by the Act itself, redhibition is exempted.

59   La. Civ. Code art. 2438 (2007); see also La. Civ. Code art. 13 (2007) ("Laws on the same subject matter must be interpreted in reference to each other.").

60. Saul Litvinoff, Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion, 50 La. L. Rev. 1, 39 (1989) [hereinafter Litvinoff, Vices of Consent]; see also Levasseur & Gruning, supra note 23, § 4.1.4 (regarding Louisiana law of obligations and the duty of good faith).

61. Expose des motifs of the Projet of Titles III and IV of Book III of the Civil Code of Louisiana, in 6 West's Louisiana Statutes Annotated-Civil Code 2, 2 (2008) [hereinafter Expose des motifs] (referencing La. Civ. Code art. 1759 (2007)).

62. Litvinoff, Vices of Consent, supra note 60, at 39.

63. See Levasseur, supra note 1, § 4.4.2; Levasseur & Gruning, supra note 23, § 4.1.4; Expose des motifs, supra note 61.

64. La. Civ. Code art. 1818 (2007).

65. Cf. La. Civ. Code art. 2538 (2007) (imposing joint and divisible liability on multiple sellers of one item). The situation of multiple sellers is distinguishable from the obligation of a seller and a manufacturer. See Bilbe, supra note 48, at 137.

66. La. Civ. Code arts. 2531, 2545 (2007).

67. La. Civ. Code art. 1794 (2007); see Frank's Door & Bldg. Supply, Inc. v. Double H. Constr. Co., 459 So. 2d 1273 (La. App. 1st Cir. 1984).

68. Levasseur, supra note 1, § 3.3.1.

69. Bruce V. Schewe & Martha Quinn Thomas, Comment, Prescribing Solidarity: Contributing to the Indemnity Dilemma, 41 La. L. Rev. 659 (1981).

70. Maraist & Galligan, supra note 8, at 384; see also Frank's Door, 459 So. 2d 1273 (regarding the indivisibility of the object of an obligation as the source of solidarity).

71. Schewe & Thomas, supra note 69, at 667. According to Schewe and Thomas, Louisiana's scheme of solidarity is derived almost exclusively from the French. Id. at 671.

72. Id. at 667.

73. Id. at 671-72.

74. 2 Marcel Planiol, Treatise on the Civil Law no. 745 (La. Law Inst. trans., 11th ed. 1959) (1939). The effects of solidarity are drastically different among co-obligors themselves, who are either each bound for their virile share, or one may be bound for the whole depending on circumstances surrounding the creation of solidarity. Id.

75. Id. no. 746.

76. La. Civ. Code arts. 1793, 1806 (2007); Schewe & Thomas, supra note 69, at 672.

77. Schewe & Thomas, supra note 69, at 672.

78. Id. at 668. Moreover, according to Schewe and Thomas, "solidarity of debtors is a legal device for the creditor's benefit," which explains why the primary benefits of these effects inure to the creditor-obligee's advantage. Id. at 701.

79. See Rey v. Cuccia, 298 So. 2d 840 (La. 1974); Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc., 262 So. 2d 377 (La. 1972); Bison v. LaHood, 390 So. 2d 920 (La. App. 2d Cir. 1980).

80. 262 So. 2d at 381.

81. Id. at 380.

82. Id.

83. Id. at 381.

84    298 So. 2d at 844.

85    Id. at 842.

86    Id. at 844. After being driven only 200 miles, the body of the trailer came loose from the frame, and the trailer collapsed on the second day of its use; thus, the trailer was deemed to have a redhibitory defect existing at the time of sale. Id. at 842.

87    Id. at 845.

88    Id. at 846.

89    Maraist & Galligan, supra note 8.

90    See La. Civ. Code art. 1804 (2007) (liability of solidary obligors among themselves).

91    Id.; see also Levasseur, supra note 1, § 3.3.3 (relationship among solidary obligors); Planiol, supra note 74, nos. 767-71 (liability of obligors toward the obligee as well as toward the other obligors).

92    Rey, 298 So. 2d at 844.

93    78 So. 738 (La. 1918).

94    See Johnson v. Kennedy, 103 So. 2d 93, 98 (La. 1958); Lafleur v. Brown, 67 So. 2d 556, 557 (La. 1953); C.W. Greeson Co. v. Harnischfeger Corp., 54 So. 2d 528, 532 (La. 1951); Am. Heating & Plumbing Co. v. W. End Country Club, 131 So. 466, 469 (La. 1930); see also Robert E. Landry, Note, Lafleur v. John Deere Co.: No Recovery of Delictual Damages for the Sale of a Useless Product, 48 La. L. Rev. 183, 188 (1987).

95    Illinois Cent., 78 So. at 741.

96    Id. at 740.

97    Id. at 741.

98    Id.

99    400 So. 2d 317 (La. App. 4th Cir. 1981), writ denied, 406 So. 2d 608 (La. 1981).

100   390 So. 2d 920, 921 (La. App. 2d Cir. 1980).

101   Womack & Adcock v. 3M Bus. Prods. Sales, Inc., 316 So. 2d 795, 796 (La. App. 1st Cir. 1975).

102   See Rey v. Cuccia, 298 So. 2d 840 (La. 1974); Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc., 262 So. 2d 377 (La. 1972); Lehn, 400 So. 2d at 317; Bison, 390 So. 2d at 921; Womack, 316 So. 2d at 796.

103   See infra Parts III.A-D.

104   Maraist & Galligan, supra note 8.

105   La. Civ. Code arts. 2323-2324 (2007).

106   Maraist & Galligan, supra note 8, at 371.

107   Id. at 399 ("Thus a doctrine designed, in part, to assure victim compensation-solidarity in tort-is gone . . . . Full compensation to the nonfaulty victim is apparently no longer a goal of Louisiana's tort system. We do not pause here to comment further because as we noted earlier, we come merely to bury Caesar.").

108   Id. at 376 (citing Bell v. Jet Wheel Blast, 462 So. 2d 166 (La. 1985)).

109   See Maraist & Galligan, supra note 8, at 381-83.

110  La. Civ. Code art. 2323 (2007).

111  Id.

112  Employing a pro subjecta materia analysis, the article is located in Title V, which strictly deals with "Obligations Arising Without Agreement," which is clearly distinguishable from the "Law of Conventional Obligation and Sales," in which the redhibition articles are found; thus, these provisions should be interpreted in context as applying to delicts, quasi-delicts, and quasi-contracts only. See generally Jean Louis Bergel, Principal Features and Methods of Codification, 48 La. L. Rev. 1073 (1988) (regarding the proper analysis of a civil code); Alain Levasseur, On the Structure of a Civil Code, 44 Tul. L. Rev. 693 (1970) (explanation of analytical techniques for interpreting a civil code).

113  La. Civ. Code art. 2323 (2007).

114  Maraist & Galligan, supra note 8, at 382-83.

115  Id. at 382; cf. La. Civ. Code art. 2323(C) (2007) (somewhat limiting the broad implications of (B) by stating that comparative fault shall not be applied to an intentional tortfeasor).

116  Maraist & Galligan, supra note 8, at 382.

117  See infra Parts III.A-D.

118  See infra Parts III.A-B.

119  867 So. 2d 63 (La. App. 3d Cir. 2004).

120  Id. at 66.

121  Id. at 66-67.

122  Id. at 65.

123  Id. at 66; see La. Civ. Code art. 2545 cmt. c (2007).

124  LeGros, 867 So. 2d at 66.

125  900 So. 2d 282 (La. App. 3d Cir. 2005).

126  Id. at 283-84.

127  Id. at 283.

128  Id. at 286; see also La. Civ. Code arts. 2323-2324 (2007) (comparative fault provisions).

129  La. Civ. Code art. 2530 (2007), cited in Gradney, 900 So. 2d at 284.

130  Gradney, 900 So. 2d at 286.

131  Id.

132  Id.

133  Safeco Ins. Co. of Am. v. Chrysler Corp., 834 So. 2d 1026 (La. App. 3d Cir. 2002).

134  La. Civ. Code art. 2530 (2007) (requiring that the defect must have existed at the time of delivery in order to recover against the manufacturer).

135  Safeco, 834 So. 2d at 1045.

136  Gradney, 900 So. 2d 282.

137    Safeco, 834 So. 2d at 1046.

138    Id. at 1047.

139    Aucoin v. S. Quality Homes, LLC, 953 So. 2d 856 (La. App. 3d Cir. 2007), writ granted, 959 So. 2d 516 (La. 2007); see infra Part III.E.

140    Aucoin, 953 So. 2d at 860.

141    Aucoin v. S. Quality Homes, LLC, 984 So. 2d 685 (La. 2008).

142    See Isabelle v. Bayliner Marine Corp., No. 2005-CA-2593, 2006 WL 3187573, at *15 (La. App. 1st Cir. Nov. 3, 2006); Osborne v. Ladner, 691 So. 2d 1245 (La. App. 1st Cir. 1997); Petroleum Rental Tools, Inc. v. Hal Oil & Gas Co., 701 So. 2d 213 (La. App. 1st Cir. 1997).

143    701 So. 2d 213.

144    Id. at 216.

145    Petrolum Rental Tools, Inc. v. Hal Oil & Gas Co., 683 So. 2d 253 (La. 1996).

146    Petroleum, 701 So. 2d at 216.

147    Id. at 217-18.

148    Id. at 214 ("Hal Oil did not sue Tadlock under any theory other than redhibition, such as negligence, strict liability, or product liability.").

149    Osborne v. Ladner, 691 So. 2d 1245 (La. App. 1st Cir. 1997).

150    Id.

151    Id. at 1253; see La. Civ. Code arts. 2531, 2545 (2007).

152    Osborne, 691 So. 2d at 1256.

153    Isabelle v. Bayliner Marine Corp., No. 2005-CA-2593, 2006 WL 3187573, at *15 (La. App. 1st Cir. Nov. 3, 2006).

154    Id. at *12.

155    Id.

156    Id. at *12-14.

157    See Hampton v. Cappaert Manufactured Hous., Inc., 839 So. 2d 363 (La. App. 2d Cir. 2003); cf. Bearly v. Brunswick Mercury Marine Div., 888 So. 2d 309 (La. App. 2d Cir. 2004).

158    839 So. 2d 363.

159    Id. at 367.

160    Id.

161    Id. at 366.

162    Id.

163    Id. at 367.

164    Bearly v. Brunswick Mercury Marine Div., 888 So. 2d 309 (La. App. 2d Cir. 2004).

165    Id. at 312.

166    Id. at 314.

167    Id.

168    See Touro Infirmary v. Sizeler Architects, 900 So. 2d 200 (La. App. 4th Cir. 2005), writ denied, 920 So. 2d 232 (La. 2006); De Atley
       v. Victoria's Secret Catalogue, LLC, 876 So. 2d 112 (La. App. 4th Cir. 2004).

169    876 So. 2d 112.

170    Id. at 117.

171    900 So. 2d at 206.

172    Id. at 205-06.

173    Id. at 203-04.

174    Touro Infirmary v. Sizeler Architects, 947 So. 2d 740 (La. App. 4th Cir. 2006).

175    Id.

176    However, the author of the first opinion, Judge Charles Jones, dissented from the reversal in the second opinion. Interestingly, Judge
       Dennis Bagneris took part in the initial decision by Judge Jones but also took part in the reversal on rehearing. See Touro, 900 So.
       2d 200. These facts, combined with the reversal by the court, indicate the slight possibility of a shift in the fourth circuit's view. Id.

177    Touro, 947 So. 2d 740.

178    Aucoin v. S. Quality Homes, LLC, 984 So. 2d 685 (La. 2008).

179    Id.

180    Id. at 686-87.

181    Id.

182    Id. at 687.

183    Id. at 689.

184    Aucoin v. S. Quality Homes, LLC, 953 So. 2d 856, 861 (La. App. 3d Cir. 2007), writ granted, 959 So. 2d 516 (La. 2007).

185    Aucoin, 984 So. 2d at 685.

186    Id. at 693 n.12.

187    Id. at 693.

188    Prior decisions did not use such language regarding "independent" liability. See supra Parts III.A-D.

189    See Aucoin, 984 So. 2d at 693.

190    Id. at 692-93.

191    Id. at 692; see supra Part II.

192    Aucoin, 984 So. 2d 693.

193    See supra Part III.A.

194    Aucoin, 984 So. 2d 685.

195    Id. at 695.

196    "A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing . . . for any loss the seller sustained because of the redhibition." La. Civ. Code art. 2531 (2007). "A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each." La. Civ. Code art. 1804 (2007).

197    The original action by the buyer involved claims of defects and requests to rescind the sale of both the land and the mobile home, as if these were both part of one purchase. See Aucoin v. S. Quality Homes, LLC, 953 So. 2d 856 (La. App. 3d Cir. 2007), writ granted, 959 So. 2d 516 (La. 2007).

198    Aucoin, 984 So. 2d at 695.

199    See La. Civ. Code art. 1794 (2007).

200    Aucoin, 984 So. 2d 685.

201    See infra Part IV.B.

202    This use of the phrase "the law" is in quotations because it refers actually to jurisprudence, rather than legislation. Cf. La. Civ. Code art. 1 (2007).

203    See, e.g., Levasseur & Gruning, supra note 23; Litvinoff, Vices of Consent, supra note 60; Redmann, supra note 36.

204    Ferdinand F. Stone, Tort Doctrine § 432 (1977) (citing Le Blanc v. Coca Cola Bottling Co., 60 So. 2d 873 (La. 1952)).

205    Levasseur & Gruning, supra note 23, § 4.1.4.

206    Redmann, supra note 36, at 531.

207    This statement is not meant to suggest that redhibition claims can only be brought when there is privity of contract between the parties directly; otherwise, a buyer could only bring the action against the seller, rather than the manufacturer. Instead, the statement indicates that some contract of sale must exist between the seller and the buyer, and, if the manufacturer is a separate party, there must be clearly some contract in existence between those two parties as well. Redhibition in this sense, as a contract claim, is clearly distinguishable from an action in tort law, whereby an individual may sue a complete stranger with whom he has no contractual duty for breach of a legally imposed duty to society at large, rather than a specifically imposed duty based on a contract of sale.

208    Litvinoff, Vices of Consent, supra note 60, at 39.

209    La. Civ. Code art. 1983 (2007).

210    La. Civ. Code art. 1759 (2007).

211    La. Civ. Code arts. 2520, 2541 (2007).

212    La. Civ. Code art. 2522 (2007).

213    See supra Part II.B and infra Parts IV.A-B.

214    La. Civ. Code art. 2545 (2007); see Stone, supra note 204, at 13.

215    La. Civ. Code arts. 3492, 3499 (2007).

216    La. Civ. Code art. 3503 (2007).

217    See La. Civ. Code art. 1986 (2007).

218    This statement assumes a contingency fee arrangement whereby an attorney would be afforded forty percent of the claimant's recovery.

219    See generally Maraist & Galligan, supra note 8 (regarding requirements for establishing fault or breach in a contract law claim as compared to a tort law claim).

220    Id.

221    Id.; see also La. Civ. Code art. 1994 (2007) (liability of an obligor for failure to perform his obligation).

222    La. Civ. Code arts. 2520, 2530 (2007).

223    See Bilbe, supra note 48, at 125.

224    Bergel, supra note 112, at 1083 ("[E]ach code article has meaning only because of its relationship to a cluster of articles to which it is linked; each institution has a meaning only because of its relationship with the whole system to which it belongs."); see Levasseur, supra note 112.

225    Maraist & Galligan, supra note 8, at 382.

226    La. Civ. Code arts. 9-10 (2007).

227    Maraist & Galligan, supra note 8, at 376; see supra Part III.

228    See supra Part II.

229    Maraist & Galligan, supra note 8.

230    Id. at 376.

231    Comparative fault apportions liability or fault to every party, including the alleged injured party. See La. Civ. Code arts. 2323-2324 (2007). See generally Maraist & Galligan, supra note 8 (implications of comparative fault analysis).

232    Maraist & Galligan, supra note 8, at 376.

233    Barham, supra note 36, at 381; see also Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc., 262 So. 2d 377 (La. 1972) (establishing consumer protection as the primary reason for redhibition).

234    Barton, supra note 32, at 337; Malinvaud, supra note 35, at 521.

235    La. Civ. Code art. 1818 (2007).

236    See Levasseur, supra note 1, § 4.4.2; Levasseur & Gruning, supra note 23, § 4.1.4; Expose des motifs, supra note 61.

237    La. Civ. Code art. 1818 (2007).

238    La. Civ. Code arts. 1793, 1806, 1818 (2007).

239    La. Civ. Code arts. 1794, 1806 (2007).

240    See La. Civ. Code arts. 2323-2324 (2007); see also Maraist & Galligan, supra note 8, at 371 (the obligee does not recover for the insolvent party when comparative fault is applied).

241    These duties include the duty to act reasonably and observe apparent defects, for which sellers and manufacturers will not be held liable. La. Civ. Code art. 2521 (2007). Buyers also have the duty to notify and, in some cases, offer the item for repair. La. Civ. Code art. 2522 (2007).

242    See generally Saul Litvinoff, Contract, Delict, Morals, and Law, 45 Loy. L. Rev. 1, 3-4, 7 (1999) [hereinafter Litvinoff, Contract] (on the remedies for a claimant in tort law as compared with contract law).

243    La. Civ. Code art. 1983 (2007).

244    Litvinoff, Contract, supra note 242, at 18.

245    Id. at 1, 5, 29, 32.

246    Id. at 8.

247    Id. at 6, 9; see also La. Civ. Code art. 1986 (2007).

248    Litvinoff, Contract, supra note 242, at 15.

249    See, e.g., Rey v. Cuccia, 298 So. 2d 840 (La. 1974); Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc., 262 So. 2d 377 (La. 1972); LeGros v. ARC Servs., Inc., 867 So. 2d 63 (La. App. 3d Cir. 2004); Malinvaud, supra note 35, at 521.

250    Malinvaud, supra note 35, at 521-23.

251    Id. at 520-21.

252    Id.; see also La. Civ. Code art. 2545 (2010); Levasseur & Gruning, supra note 23.

253    Malinvaud, supra note 35, at 522-23.

254    La. Civ. Code art. 2545 (2007).

255    See, e.g., Rey v. Cuccia, 298 So. 2d 840 (La. 1974); Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc., 262 So. 2d 377 (La. 1972); Lehn v. Clearview Dodge Sales, Inc., 400 So. 2d 317 (La. App. 4th Cir. 1981), writ denied, 406 So. 2d 608 (La. 1981); Bison v. LaHood, 390 So. 2d 920 (La. App. 2d Cir. 1980).

256    Media Prod., 262 So. 2d 377; see, e.g., Rey, 298 So. 2d 840; LeGros v. ARC Servs., Inc., 867 So. 2d 63, 66 (La. App. 3d Cir. 2004); Lehn, 400 So. 2d 317; Bison, 390 So. 2d 920.

257    Ill. Cent. R.R. Co. v. New Orleans Terminal Co., 78 So. 738, 740 (La. 1918).

258    Id.

259    La. Civ. Code art. 2545 (2007).

260    See Safeco Ins. Co. of Am. v. Chrysler Corp., 834 So. 2d 1026, 1047 (La. App. 3d Cir. 2002).

261    See Media Prod., 262 So. 2d 377; Schewe & Thomas, supra note 69, at 701 ("[S]olidarity of debtors is a legal device for the creditor's benefit . . . .").

262    La. Civ. Code art. 1793 (2007).

263    See La. Civ. Code arts. 2323-2324 (2007); Maraist & Galligan, supra note 8.

264    See supra Part III.

265    See La. Civ. Code arts. 2323-2324 (2007); Maraist & Galligan, supra note 8, at 381; see also La. Civ. Code art. 2545 (2007) (granting recovery of attorneys' fees from manufacturers and other bad faith sellers).

266    La. Civ. Code art. 2530 (2007) ("The defect shall be presumed to have existed at the time of delivery if it appears within three days from that time.")

267    See Malinvaud, supra note 35, at 522.

268    La. Civ. Code arts. 1794-1795, 1800 (2007).

269    La. Civ. Code art. 1804 (2007).

270    See supra Part IV. See generally La. Civ. Code art. 2545 (2007).

271    See La. Civ. Code arts. 2520, 2541, 2545 (2007).

Case 2:09-md-02047-EEF-MBN   Document 14665-2   Filed 06/13/12   Page 28 of 29

272   La. Civ. Code art. 2522 (2007); see also id. cmt. b (requiring that notice be given to the seller unless he has actual knowledge of the defect).

273   La. Civ. Code art. 2522 (2007) ("A buyer must give the seller reasonable notice of the existence of a redhibitory defect in the thing sold. That notice must be sufficiently timely as to allow the seller the opportunity to make the required repairs. A buyer who fails to give that notice suffers diminution of the warranty . . . .").

274   "Pain" refers to the costs of litigation, from court costs and attorneys' fees to the emotional and psychological costs of litigation, as well. See, e.g., Damian Arguello, Comment, Twenty Years in Tahoe-Sierra-Why It's Right and Why It's Not a Satisfactory Solution, 80 Denv. U. L. Rev. 199, 200 (2002); John J. McCauley, Overcoming Common Barriers to Settling Cases, Orange County Law., Oct. 2000, at 21; Steven A. Weiss, ADR: A Litigator's Perspective, Bus. L. Today, Apr. 1999, at 30.

275   La. Civ. Code art. 1 (2007).

276   Id.

277   See Isabelle v. Bayliner Marine Corp., No. 2005-CA-2593, 2006 WL 3187573, at *15 (La. App. 1st Cir. Nov. 3, 2006); LeGros v. ARC Services, Inc., 867 So. 2d 63, 66 (La. App. 3d Cir. 2004); Osborne v. Ladner, 691 So. 2d 1245 (La. App. 1st Cir. 1997).

278   La. Civ. Code art. 2545 cmt. c (2007).

279   Id.

280   See Rey v. Cuccia, 298 So. 2d 840 (La. 1974); Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc., 262 So. 2d 377 (La. 1972); LeGros, 867 So. 2d 63; Safeco Ins. Co. of Am. v. Chrysler Corp., 834 So. 2d 1026 (La. App. 3d Cir. 2002); Lehn v. Clearview Dodge Sales, Inc., 400 So. 2d 317 (La. App. 4th Cir. 1981), writ denied, 406 So. 2d 608 (La. 1981).

281   La. Civ. Code arts. 2541, 2545 (2007).

282   See supra Part IV.A.

283   While a logical alternate solution may be for the legislature to amend article 2323(B) to be stated more narrowly and thus more clearly applicable only to negligence-based tort claims, such an approach is beyond the scope of this Comment because this amendment could potentially have unevaluated impacts on tort law claims unrelated to redhibition.

284   See supra Part IV.A.

285   See supra Part III.

286   See Aucoin v. S. Quality Homes, LLC, 953 So. 2d 856, 861 (La. App. 3d Cir. 2007), writ granted, 959 So. 2d 516 (La. 2007); Isabelle v. Bayliner Marine Corp., No. 2005-CA-2593, 2006 WL 3187573, at *15 (La. App. 1st Cir. Nov. 3, 2006); Touro Infirmary v. Sizeler Architects, 900 So. 2d 200 (La. App. 4th Cir. 2005), writ denied, 920 So. 2d 232 (La. 2006); LeGros v. ARC Servs., Inc., 867 So. 2d 63 (La. App. 3d Cir. 2004); Safeco Ins. Co. of Am. v. Chrysler Corp., 834 So. 2d 1026 (La. App. 3d Cir. 2002).

287   Although the supreme court is the most authoritative court in Louisiana and is thus best suited for resolving legal disagreements among the circuit courts, a unified stance by each circuit in Louisiana would likely have the desired effect of clarity in Louisiana law.

288   See Rey v. Cuccia, 298 So. 2d 840 (La. 1974); Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc., 262 So. 2d 377 (La. 1972); LeGros, 867 So. 2d 63; Safeco, 834 So. 2d 1026; Lehn v. Clearview Dodge Sales, Inc., 400 So. 2d 317 (La. App. 4th Cir. 1981), writ denied, 406 So. 2d 608 (La. 1981).

289   Maraist & Galligan, supra note 8, at 383.

290   La. Civ. Code art. 1 (2007).

291   See supra Part IV.C.

[292] See Touro Infirmary v. Sizeler Architects, 900 So. 2d 200 (La. App. 4th Cir. 2005), writ denied, 920 So. 2d 232 (La. 2006). See generally Bergel, supra note 112 (regarding the proper interpretation of a civil code); Levasseur, supra note 112 (discussing the role of courts in how to interpret a civil code).

[293] See supra Part IV.A.

[294] See Litvinoff, Vices of Consent, supra note 60, at 39.

[295] See, e.g., Aucoin v. S. Quality Homes, LLC, 953 So. 2d 856, 861 (La. App. 3d Cir. 2007), writ granted, 959 So. 2d 516 (La. 2007); Isabelle v. Bayliner Marine Corp., No. 2005-CA-2593, 2006 WL 3187573, at *15 (La. App. 1st Cir. Nov. 3, 2006); Touro, 900 So. 2d 200; LeGros v. ARC Servs., Inc., 867 So. 2d 63 (La. App. 3d Cir. 2004); Safeco Ins. Co. of Am. v. Chrysler Corp., 834 So. 2d 1026 (La. App. 3d Cir. 2002).

[296] Aucoin v. S. Quality Homes, LLC, 984 So. 2d 685 (2008).

[297] These reasonable precautions include visiting the lot, inspecting the camper, and noting the existence of no apparent defects. See La. Civ. Code art. 2521 (2007) ("The seller owes no warranty for defects in the thing that were known to the buyer . . . or for defects that should have been discovered by a reasonably prudent buyer.").

[298] See supra Part II; see, e.g., La. Civ. Code arts. 1800, 1804 (2007).

[299] La. Civ. Code art. 1806 (2007).

**End of Document**                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.