Exhibit 2

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 1. | Herman Aff.[1] 1 – Chart Summarizing TG's and TTP's sales of drywall. | Global Statement of Facts-2-3; PSC *Germano* Response-2, n.2[2]; PSC *Gross* and *Wiltz* Response-2, n.1; 14, n.17, 21, n.47[3]; PSC *Mitchell* Response-18[4]; PSC's Global Memorandum of Law-1, n.2[5]; Homebuilders' Response-36, n.164[6] | FRE 1006 – This consists of argument, not evidence. The title, "Taishan Gypsum Board Sales to the United States," is itself argumentative, as Defendants do not concede that the drywall they sold in dimensions commonly used in the United States was delivered to the United States. Footnote 2 states, without evidentiary support, that "TTP knows the drywall was shipped to the United States," which is a contested fact. It goes on to say "TG/TTP's position is incredible," which is obviously argument. Similarly, it is argument that "TG/TTP used Taian Taigao [Trading Corp.] as an 'exporter'" for a transaction involving Guardian Building Products, "yet fully controlled the Guardian transaction" and thus the Chart attributes sales to specific States rather than to transactions where the "importer" is not known. Further, the Chart | Ex. 1 complies with FRE 1006, as it merely summarizes voluminous information that has been made available to Taishan and/or was produced by Taishan. It was prepared to supplement to the PSC's briefs. Assuming *arguendo* there are portions of the chart that are argumentative, it should be considered part of the PSC's briefing. TTP admits its drywall was shipped to the United States in its MPF at p. 3. Sales made to Shenzen Yongfeng Investment Company, Ltd., were in fact made to the United States, specifically, New York. Each of the bates labeled documents that TG produced, referenced in Ex. 1, p. 6, shows the drywall was shipped to New York or to the U.S through Shenzen.<br><br>GBP000879 was authenticated by Guardian by a records custodian affidavit, attached hereto, in compliance with FRE 803(6) and 902(11) and is not hearsay. *See* Guardian Affidavit, |

---

[1] References "Herman Aff." are to exhibits attached to the affidavit of Russ M. Herman, sworn to May 7, 2012.

[2] References "PSC *Germano* Response" are to "The Plaintiffs' Steering Committee's Response in Opposition to Taishan's Renewed Motion Pursuant to Rules 55(c) and 12(B)(2) to Vacate the Entry of Default and to Dismiss and Amicus Brief on Florida Law Relating to Jurisdictional Issues Raised by Taishan" filed in *Germano*.

[3] References "PSC *Gross* and *Wiltz* Response" are to the "Plaintiffs' Steering Committee's Response in Opposition to Taishan's Motions, Pursuant to Rule 12(B)(2) to Dismiss the Complaints" filed in *Gross* and *Wiltz*.

[4] References "PSC *Mitchell* Response" are to "The Plaintiffs' Steering Committee's Response in Opposition to Taishan's Renewed Motion Pursuant to Rules 55(c) and 12(B)(2) to Vacate the Entry of Default and to Dismiss and Amicus Brief on Florida Law Relating to Jurisdictional Issues Raised by Taishan" filed in *Mitchell*.

[5] References "PSC's Global Memorandum of Law" are to "the Plaintiffs' Steering Committee's Global Memorandum of Law in Opposition to (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints and Amicus Brief on Florida Law Relating to Jurisdictional Issues Raised by Taishan" filed in *Mitchell*.

[6] References "Homebuilders' Response" are to "Certain Florida Homebuilders' Amicus Curiae Response to Taishan Gypsum Co. Ltd.'s Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate Entry of Default and Dismiss this Action" in *Mitchell*.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | | | heading "State Impacted" is argumentative. Additionally, Pages 1, 6, and 8 of the summary do not accurately reflect the content of the original materials. *See White Indus., Inc. v. Cessna Aircraft, Co.*, 611 F. Supp. 1049, 1070-71 (W.D. Mo. 1985). Page 1 summarizes pages 2-9; page 6 concludes that sales made to Shenzen Yongfeng Investment Company, Ltd. were "to the United States" without any supporting evidence; page 8 is based on Document GBP000879, which is inadmissible hearsay (FRE 802) and has not been properly authenticated (FRE 901). | attached hereto as Exhibit "A." |

**Testimony by Third Parties As to TG's or TTP's State of Mind[7]**

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 2. | Herman Aff. 9, Gonima I Dep. at 50:4-9, cited to support statement that that TTP was willing to put Oriental Trading name on drywall. | Global Statement of Facts-17, n.74 | FRE 602 – Witness could not testify as to TTP's state of mind; lack of foundation to support assertion. | In addition to the single deposition testimony isolated by Defendant, the PSC offers additional unchallenged citations, including the deposition of Taishan's own employee, for the proposition that Taishan would custom label drywall to customer specifications. Global Statement of Facts 17 n.74. Indeed, the challenged testimony is based on Mr. Gonima's extensive negotiations and business relationship with Taishan, including his working with Taishan to create the United States version of Taishan's DUN brand of drywall. It is |

---

[7] TG and TTP object pursuant to FRE 602 to all testimony by third parties as to the state of mind of TG or TTP or any of their employees.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | | | | undisputed that Taishan customized its drywall for American customers on several occasions, never refusing to make such customization a part of a sale. |
| 3. | Herman Aff. 11, OEG Dep.[8] at 91:10-92:8. "Taishan was generating the boards . . . knowing that it was to be used for American customers . . ." | Global Statement of Facts-18 | FRE 602 – The testimony is offered to show that defendants affixed a bar code, but 92:4-8 is testimony concerning the witness's understanding of "Taishan's" state of mind. | The citation to the record provided by Taishan is inaccurate.  Assuming Taishan is referring to the citation at footnote 78 of the PSC Global Statement of Facts (*see* Objection No. 4), this testimony is based on a lengthy course of dealing in which Taishan was repeatedly informed that the drywall would be used in the United States, which is reflected in the cited testimony.  *See also*, *e.g.*, Herman Aff. 11, OEG Dep. 113:23-117:5. |
| 4. | Herman Aff. 11, OEG Dep. at 116:23-117:15, 133:8-136:16, "Taishan knew boards were to be used for American customers" and "understood that they were generating metal studs for sale to OEG . . . that OEG was going to be selling them in the New York metropolitan area." | Global Statement of Facts-18, n.78 | FRE 602 | The citation to the Herman Aff. is inaccurate.  The cited testimony is based on a lengthy course of dealing in which Taishan was repeatedly informed that the drywall would be used in the United States, which is reflected in the cited testimony. *See also*, *e.g.*, OEG Dep. 113:23-117:5. |

---

[8] References "OEG Dep." are to the deposition of OEG Building Materials by Joseph Weiss, taken on 2/16/11.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 5. | Herman Aff. 9, Gonima I Dep.[9] at 51:1-3, "Taishan was happy to do a custom label [for its customers]". | Global Statement of Facts-18, n.79; Homebuilders' Response-32, n.147 | FRE 602 | In addition to the single deposition testimony isolated by Taishan, the PSC offers additional unchallenged citations, including the deposition of Taishan's own employee, for the proposition that Taishan was happy to do custom labels for its customers. In fact, it is undisputed that Taishan did so on several occasions, never refusing to make such customizations a part of a sale. In addition, the narrow testimony of Mr. Gonima that Taishan challenges is built on the deponent's extensive experience with Taisham, which is covered in testimony that is cited by the PSC, but not challenged by Taishan. *See*, *e.g.*, Herman Aff. 9, Gonima I Dep. 49:18-51:1. |
| 6. | Herman Aff. 47 (Ex. 9 to Wood Nation Dep.[10] dated 2/14/11), offered to support the contention that "Taishan was happy to do a custom label." | Global Statement of Facts-18, n.79 | FRE 602, 901 | *See* Response to Objection No. 5. In addition, Mr. Wood authenticated the challenged exhibit, which was essentially a duplication of Ex. 8 of his deposition. *See* Herman Aff. 39, Hannam Dep. 75:7-78:13. |
| 7. | Herman Aff. 9, Gonima I Dep. at 51:1-3, cited for testimony that "Q: Taishan was happy to do a custom label for you? A: Yeah." | Global Statement of Facts-18, n.79 | FRE 602 | *See* Response to Objection No. 5. |

[9] References "Gonima I" and "Gonima II" Dep. are to the deposition of Ivan Gonima taken on 12/13/11 and 2/14/12, respectively.
[10] References "Wood Nation Dep." are to the deposition of Wood Nation by Richard Hannam taken on 2/14/11.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 8. | Herman Aff. 97, Onyx Dep.,[11] 28:9-21, cited for the proposition that Taishan knew that cargo would be delivered in Miami, Florida. | Global Statement of Facts-39, n.168 | FRE 602 | In addition to the deposition testimony challenged by Taishan, the PSC offers additional, unchallenged evidence for the proposition that Taishan knew that some of its products would be delivered in Florida, including Miami, Florida.  Indeed, Mr. Sardi's testimony was based on the documents referred to and cited in the course of the testimony as well as his wider communications with Taishan. |
| 9. | Herman Aff. 11, OEG Dep. at 76:10-14 states: "Taishan understood, TTP understood, that the board would end up, after [OEG] sold it, being distributed into the New York metropolitan area." | Global Statement of Facts-49, n.228 | FRE 602 | *See* Response to Objection No. 4. |
| 10. | Herman Aff. 11, OEG Dep. at 133:8-136:16 is cited for testimony that "Taishan understood that OEG was going to be selling. . . in the New York metropolitan area." | Global Statement of Facts-50, n.229 | FRE 602 | *See* Response to Objection No. 4. |

---

[11] References "Onyx Dep." are to the deposition of Onyx Gbh Corporation by Rafael Sardi, dated 2/9/12.

**Evidence Concerning Transactions Involving Devon International Trading**[12]

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 11. | Herman Aff. 165 – Deposition of Robert Scharf, President of Devon International Trading ("Scharf Dep."). | Global Statement of Facts-9, 10, 17, 18, 20, 40, 41, 42, 43, 44 and *passim*; PSC *Mitchell* Response-2-5; Mitchell Response-5-7; Homebuilders' Response-27, n.119-121 | FRE 802, Fed. R. Civ. P. 32(a)(1)(A).[13] | Fed. R. Civ. P. 43(c) - Evidence on a Motion. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions. FRE 804(a)(5) - Witness unavailable. FRE 804(b)(1) - Former testimony. *See also* Declaration of Robert Scharf attesting to the truthfulness of his deposition testimony in *Langham v. Devon International, et al.*, attached hereto as Exhibit "B." |
| 12. | Herman Aff. 172, Deposition of Ruth Wu, Vice President of Devon International Trading, dated 2/25/2011. | Global Statement of Facts-42, n.187 | FRE 802, Fed. R. Civ. P. 32(a)(1)(A). This deposition was also taken in *Langham v. Ace Home Center. See* objection 12, *supra*. | *See* Response to Objection No.11. |
| 13. | Herman Aff. 166 (DEVON 00949-950) | Global Statement of Facts-42, n.189 | FRE 802, 901 – Purported purchase order from third party. | FRE 803(6) - Records of regularly conducted business activity. FRE 902(8) - Acknowledged documents. FRE 902(11) - Certified Domestic Records of a Regularly Conducted Activity. |
| 14. | Herman Aff. 167 (DEVON 00016-17) | Global Statement of Facts-42-43, n.190,191 and 192 | FRE 802, 901 – Purported sales confirmations from TG to Devon, apparently sent by third party, not TG. | *See* response to Objection No. 13. |

---

[12] This deposition was taken in an action entitled *Langham v. Ace Home Center*, No. CV-2009-900948 (Ala. Baldwin Cnty Cir. Ct.). TG is not a party to that action and did not receive any notice of the deposition. This deposition testimony and any citations to it or to exhibits marked or identified at the deposition, are objected to in their entirety no matter where they appear. Fed. R. Civ. P. 32(a)(1)(A).

[13] References "Fed. R. Civ. P." are to the Federal Rules of Civil Procedure.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 15. | Herman Aff. 168 (DEVON 00438, 00449, 00450, 00452, 000645, 000658, 000663) | Global Statement of Facts-43, n.193 | FRE 802, 901 – Photographs. | *See* Response to Objection No. 13. |
| 16. | Herman Aff. 169 (DEVON 00951) | Global Statement of Facts-43, n.195, 196 | FRE 802, 901 – Purported letter from North Pacific to Devon, identified at Scharf Dep. | *See* Response to Objection No. 13. |
| 17. | Herman Aff. 170 (DEVON 00571-577, DEVON 00581-586) | Global Statement of Facts-43, n.197 | FRE 802, 901 – Purported Port of Pensacola discharge sheet and bill of lading. | *See* Response to Objection No. 13. |

**References to Testimony Offered by Darren Steber or GD Distributors, LLC**

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 18. | Herman Aff. 25, Deposition of Darren Steber GD Distributors, LLC, dated 12/30/2011.[14] | Global Statement of Facts-10, passim; PSC *Gross* and *Wiltz* Response-15, n.25, passim | Fed. R. Civ. P. 32(a) and 32(a)(4)(B) – The witness resides in Slidell, LA (9:24-10:1) and is thus not more than 100 miles from the place of the hearing.  TG and TTP object to this deposition testimony and citations to any exhibits marked or identified at the deposition in their entirety wherever they may appear. | The videotaped deposition of Darrin Steber was held on December 30, 2011.  Taishan  was given notice and had an opportunity to attend and participate in the deposition.  The business of GD Distributors has been inactive since since May 15, 2006, and the Charter for GD Distributors, LLC was revoked on August 15, 2010.   The PSC filed a motion in limine to allow the admission of the deposition of GD Distributors, LLC at the hearing in connection |

---

[14] References "GD Distributors Dep." are to the deposition of GD Distributors, Inc. by Darrin Steber, taken on 12/30/11.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | | | | with Taishan's various jurisdictional motions. *See* Rec. Doc. No. 14586. |
| 19. | Herman Aff. 52, Exs. 4 and 5 to Deposition of GD Distributors, dated 12/30/11, purported to be "photos of actual Taishan drywall samples." | Global Statement of Facts-19, n.83; PSC *Gross* and *Wiltz* Response-16, n.26; PSC's Global Memorandum of Law-21, n.29 | Fed. R. Civ. P. 32 (a)(4)(B), and FRE 802, 901 | *See* Response to Objection No. 18. |
| 20. | Herman Aff. 25, GD Distributors Dep. at 21:17-25, 22:22-25 cited for statement that "Taishan was aware that '[a]fter Hurricane Katrina the Great New Orleans area need rebuild.'" | Global Statement of Facts-45, n.209 | Fed. R. Civ. P. 32 (a)(4)(B), and FRE 402, 602 | *See* Response to Objection No. 18. |
| 21. | Herman Aff. 25, GD Distributors Dep. at 21:3-16, 22:6-21, 51:12-52:24, cited for statement that "[Taishan] knew what port it was going to." | Global Statement of Facts-45, n.208 | Fed. R. Civ. P. 32 (a)(4)(B), and FRE 402, 602 | *See* Response to Objection No. 18. |

**Evidence Concerning Negotiation by Guardian Building Products of a Settlement**

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 22. | Herman Aff. 143, Guardian Dep.[15] at 138:24-140:8 cited to support statement that Mr. Gunn believed that "Taian Taigao was a front, set up by TG to distance the company from its defective drywall." | Global Statement of Facts-59, n.275; PSC *Gross* and *Wiltz* Response-9 | FRE 802 – Gunn testified that Taian Taigao explained its relationship to TG.  Guardian Dep. 139:18-140:19.  Taian Taigao is not a party. | This is not hearsay.  Mr. Gunn was testifying about his belief of the relationship between Taian Taigao and TG, not what a declarant said to him or what he heard. He is not relaying someone else's impression or comment to him. Mr. Gunn is testifying about his own belief, and he was subject to cross-examination by Taishan at his deposition. |
| 23. | Herman Aff. 143, Guardian Dep. at 141:25-142:10 and 143:13-21, cited to support statement that "Two years later . . . TG still had not resolved the problem, denying any defects with the drywall." | Global Statement of Facts-59, n.276; 65, n.291; PSC *Gross* and *Wiltz* Response -9; PSC *Mitchell* Response-14[16] | FRE 802 – The deponent Gunn, described the person who "denied" the problem as being the "General Manager", and identified him as Jia. Gunn further stated that "he's a pretty good size guy.  He was 6'2", 6'2", 250, maybe 6'3". Guardian Dep. at 236:25-237:3.  This physical description does not describe Jia, and thus the claim that "TG [denied] any defects" is inadmissible. | This testimony is an exception to the hearsay rule because it is a statement by an opposing party.  FRE 802(d)(2).  In the referenced testimony, Mr. Gunn stated that the declarant was introduced to him as the General Manager of TG (then Taihe).  Whether the declarant was Mr. Jia or not is for the Court to decide and goes to weight and credibility of the evidence. According to Gunn, the declarant was introduced as the General Manager of TG and made statements to Mr. Gunn on TG's behalf. |
| 24. | Herman Aff. 161, Ex. 25 to Guardian Dep. and Herman Aff. 143, Guardian Dep. at 156:1-158:12, cited in support of statement that Jia was involved | Global Statement of Facts-65, n.291; PSC *Gross* and *Wiltz* Response 9-10 | FRE 802 – Statements made by Shao to Gunn are hearsay. | This testimony is an exception to the hearsay rule as a business record of Guardian under Rules 803(6) and 902(11).  The testimony is based on Exhibit 25 to Mr. Gunn's deposition, bates labeled GBP 002309-2310, which falls under the Records Custodian Affidavit provided by Guardian Building Products.  *See* |

[15] References "Guardian Dep." are to the deposition of Guardian Building Products by John Gunn, taken on 7/22/11.

[16] To the extent PSC *Mitchell* Response at 14 relies on testimony that is inadmissible in PSC Global Statement of Facts-52-70, that testimony is inadmissible in PSC *Mitchell* Response 14. Among other things, PSC Global Statement of Facts-52-70 refers to testimony from the Scharf and Steber depositions, which are inadmissible for the reasons set forth above.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | in negotiations to settle Guardian's claim of defective drywall. | | | Response to Objection No. 1, *supra*. |
| 25. | Herman Aff. 143, Guardian Dep. at 54:20-56:8, cited to support contention that "Mr. Gunn let TG know that the drywall Guardian was buying would be shipped to the East Coast of the United States, including Florida." | Global Statement of Facts-57, n.260; PSC *Gross* and *Wiltz* Response -9, which relies on Global Statement of Facts-56-61 | FRE 402, 602 – The testimony does not support the contention: "I don't think specific locations came up at this time . . ." Guardian Dep. at 54:24-25. | Taishan is wrong. The full testimony cited in the brief reads as follows from 54:20-55:2: Q.  Did you tell them where -- did you discuss where the drywall manufactured by Taihe, if it was purchased, would be shipped to, what location at this meeting? A.  I don't think specific locations came up at the time <u>other than I'm sure we discussed East Coast.</u> Q.  <u>Okay.  East Coast of the United States?</u> A.  <u>East Coast of the United States.</u>  Accordingly, this testimony is not hearsay.  It is a statement by a party opponent.  FRE 802(d)(4). It is relevant because it tends to prove that Taishan was targeting the U.S. and knew its drywall was going to the U.S., which is a material jurisdictional fact.  FRE 401. |
| 26. | Herman Aff. 143, Guardian Dep. at 120:21-123:21, cited for the statement that "[w]hen these employees returned to work for TG in 2008, they continued to service the exact same customers they had worked with at TTP." | Homebuilders' Response-16, n.60 | FRE 402, 802 – The testimony relates to the time period 2006, and thus is irrelevant and not supportive of the proposition cited.  The testimony contains hearsay in the form of reporting on a conversation between "Holly" and Gunn. | The Homebuilders do not oppose Taishan's objection regarding their citation to the Guardian deposition.  That citation was included by the Homebuilders in error for this proposition.  However, the Homebuilders continue to rely upon the remaining citations to the record in that footnote (*i.e.*, Gonima I Dep. at 145:17-147:10; 153:12-154:14; Ex. 12 to Gonima I Dep. (Herman Affidavit Ex. 159)) for the statement in their Opposition that "when these [TTP] employees returned to work for TG in 2008, they continued to service the exact same customers they had worked with while at |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | | | | TTP." |
| | | | | The information is relevant under FRE 401 because of the agency argument and TG/TTP being one and the same. This testimony proves these facts. Taishan admitted that the same employees that worked for TG worked for TTP and then went back to work for TG when TTP wound down. *See* PSC Global SOF at 52-70. |
| 27. | Herman Aff. 143, Guardian Dep. at 43:1-52:16, cited for the statement that Guardian "met with individuals who represented themselves as TG employees." | Homebuilders' Response-19, n.81 | FRE 402 – The testimony does not refer to any such representations. | The referenced citation to the Guardian Dep. is 49:1-52:16, and not 43:1-52:16. In the cited portion of the deposition, Mr. Gunn testified that he traveled to China and met with representatives from "Taihe" at their manufacturing plant (49:2-7). During that meeting, Mr. Gunn met Apollo Yang (a/k/a Yang Jiapo) (49:8-9), who presented him a business card (50:1-20) that included the company name of Shandong Taihe Dongxin Company, Ltd. (51:12-17). As has been established through these proceedings, Shandong Taihe Dongxin Company, Ltd. was the predecessor name of TG before it changed its name to TG. By presenting Mr. Gunn with a business card that indicated he was an employee of TG, Apollo Yang represented to Guardian that he was an employee of TG. The evidence is thus relevant and admissible. |
| 28. | Herman Aff. 143, Guardian Dep. 135:19-135:5, cited for the statement that "Guardian began to | Homebuilders' Response-22, n.95 | FRE 802 – Hearsay to the extent the testimony relates to and is offered for the truth of statements by Guardian's customers. | This testimony is not hearsay as it is not being offered for the truth of the matter asserted (*i.e.*, that the Taishan drywall was defective); rather, the evidence is being offered to show: (i) that Guardian had received notice that the drywall |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | receive complaints from its own customers that the Taishan drywall was defective." | | | was allegedly defective; and (ii) the effect on Mr. Gunn's state of mind, which prompted him to attempt to negotiate a settlement with Taishan for the subject drywall. *See United States v. Cent. Gulf Lines, Inc.*, 747 F.2d 315, 319 (5th Cir. 1984) ("Evidence introduced to prove merely that notice was given is not offered to prove the truth of the matter asserted therein and, therefore, is not hearsay."); *United States v. Rubin*, 591 F.2d 278, 283 (5th Cir. 1979) (witness' out of court statement was not hearsay because it was not presented "to prove the truth of the matter asserted, but instead to prove that he had heard them and to establish their effect on his state of mind"). |
| 29. | Herman Aff. 143, Guardian Dep. 238:15-239-3, cited for the statement that "Jia . . . responded to Guardian's complaints." | Homebuilders' Response-22, n.96 | FRE 802 – The deponent Gunn, described the person who "denied" the problem as being the "General Manager", and identified him as Jia. Gunn further stated that "he's a pretty good size guy.  He was 6'2", 6'2", 250, maybe 6'3". Guardian Dep. at 236:25-237:3.  This physical description does not describe Jia.  *See* No. 27, *supra.* | This testimony is not hearsay.  It is a statement by an opposing party.  FRE 802(d)(2).  In the referenced testimony, Mr. Gunn stated that the declarant was introduced to him as the General Manager of TG (then Taihe).  Whether the declarant is Mr. Jia or not is for the Court to decide and goes to weight and credibility of the evidence.  Additionally, the statement is admissible under the former testimony exception to the hearsay rule.  The witness, who is not subject to the subpoena power of this Court, provided deposition testimony about an event he personally perceived. Accordingly, this testimony is admissible as an exception to the hearsay rule under Fed. R. Evid. 804(b)(1).  Further, Taishan's objection merely reflects that Taishan disagrees with the testimony of this witness.  This is not a proper evidentiary objection.  Even if the Court decided not to |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | | | | consider this evidence, other admissible evidence supports the statement: "when Guardian notified Taishan of the defective drywall, it was Mr. Jia, the Chairman of TG, that responded to these complaints." *See* PSC's Global SOF at 65 n.291; Response to Objection No. 24. The relevant email (10/24/06 email from Leon Shao to John Gunn) is admissible under the business records exception to the hearsay rule, FRE 803(6).  An email is admissible as a record of regularly conducted activity where (i) the email was sent or received at or near the time of the event recorded in the email by someone with knowledge of the event, (ii) the email was sent in the course of a regular business activity, and (iii) it was the regular practice of the business to send or receive emails that record the type of event documented in the email.  FRE 803(6); *see also Pierre v. RBC Liberty Life Ins*., 2007 WL 2071829 (M.D. La. Jul. 13, 2007).  As reflected in the records custodian affidavit from Guardian (which is attached hereto as Exhibit "A"), this email has been authenticated as a business record of Guardian. |

**Party Declarations Offering Testimony and Unauthenticated Documents as Evidence**[17]

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 30. | Declaration of Kristen Law Sagafi and the following exhibits attached thereto: Ex. 1 (Documents which "appear to comprise" a submission by Devon to the U.S. Consumer Product Safety Commission ("CPSC"); Ex. 2, documents "which depict drywall bearing the Devon label and imprinted with the words "MADE IN CHINA MEET OF EXCEEDS ASTM 01396 04 STANDARD"; Ex. 3 ("appears to be a letter"); Ex. 4 ("appears to detail discharge of drywall); Ex. 6 ("appears to be two submissions on behalf of Emerald Coast Building Materials to the [CPSC]." | PSC *Mitchell* Response-4; Mitchell Response-6-7 | FRE 402,802, 901 – The declarant, who purports to be counsel for the Mitchell Co., Inc. seeks to introduce evidence in the form of documents apparently created by other entities; thus she states that documents "appear to comprise", etc. The declarant is not competent to authenticate documents produced by other entities and without a proper foundation the statements contained in those documents is hearsay. | Documents with Bates labels SM0044 through SM0130 have been authenticated by Emerald Coast by a records custodian affidavit, attached hereto, in compliance with FRE 803(6) and 902(11). *See* Emerald Coast Affidavit, attached hereto as Exhibit "C." <br><br> *See* Devon International Affidavit, attached hereto as Exhibit "D." <br><br> Pursuant to Fed.R.Civ.P. 44, the CPSC has certified that the subject documents are on file with the CPSC and are part of the official records of the Commission. *See* CPSC certification, attached hereto as Exhibit "E." |

[17] Declarations and exhibits cited and identified therein are not subject to cross-examination, and thus are not admissible evidence.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 31. | Declaration of Chuck Stefan, dated 4/30/12 ("Stefan Decl.") and the exhibits attached thereto: Exs. B (invoices) and C (photographs). | PSC *Mitchell* Response-5; Mitchell Response-7-8 | FRE 802, 901. | *See* Custodian of Records Affidavit for Mitchell, attached hereto as Exhibit "H."  The testimony contained in the declaration is not hearsay and the declarant has properly authenticated the attached documents. |
| 32. | Declaration of Mike Jenkins dated 4/30/12 ("Jenkins Decl.") and the exhibits attached thereto. | PSC *Mitchell* Response-5; Mitchell Response-8 | FRE 802, 901 | *See* Custodian of Records Affidavit for Rightway, attached hereto as Exhibit "I."  The testimony contained in the declaration is not hearsay and the declarant has properly authenticated the attached documents. |
| 33. | Bass Exs. 14B, 14C, 14D, 14E, 14F, 14G, 14H and 14I[18] | Homebuilders' Response-43, 44, n.201-207 | FRE 802, 901.  The declarant, an attorney representing a party, is not competent to authenticate documents produced by other entities and without a proper foundation the statements contained in those documents are hearsay. | The affiant, Hilarie Bass, has not herself attempted to authenticate these documents. Rather, these documents--which were all produced by the corporate representative of La Suprema Enterprise, Inc. and La Suprema Trading, Inc. ("La Suprema")--were authenticated during the deposition of La Suprema's corporate representative.  During that deposition, it was also established that these documents are admissible as an exception to the hearsay rule under FRE 803(6) as a record of regularly conducted business activity. In paragraph 17 of the Bass Affidavit, the affiant stated:  On October 19, 2009, a deposition was taken of Solomon Abadi, the representative for La Suprema.  During that deposition, the |

---

[18] The reference "Bass Exs." refers to exhibits attached to the "Affidavit of Hilarie Bass in Support of Certain Florida Homebuilders' *Amicus Curiae* Response, etc.," sworn to May 18, 2012.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | | | | documents produced by La Suprema were authenticated as business records of La Suprema.  A true and correct copy of this deposition transcript is attached hereto as Exhibit 15.  The relevant portion of the deposition during which authenticity and admissibility of the documents as the records of a regularly conducted activity of La Suprema is located at 170:14 - 201:4 of the transcript. |
| 34. | Banner Ex. 2 | Affidavit of Nicholas P. Panayiotopoulos, sworn to May 18, 2012 | FRE 802, 901 | FRE 803(6) - Records of regularly conducted business activity.  *See* Custodian of Records Affidavit for Banner, attached hereto as Exhibit "F."  Additionally, it is part of Venture's list of sales sheets that was attached as Exhibit 1 to Venture Supply's Profile Form, which has been signed under oath and filed of record in this litigation. |
| 35. | Ex. B referring to emails from Metro Resources Corp. to INEX concerning a Test Report. | INEX Response[19] in *Gross* and *Wiltz*-2-3, n.8 and 9 | FRE 802, 901 | FRE 801(C). The email and its attachment, Exhibit B to Interior Exterior's memorandum in support of the PSC's objections, is offered for another purpose than providing the truth of the matter asserted and the value of the statement does not rest on the declarant's credibility. Rather, the email is intended to show how the parties may be related, not that the Test results are correct or credible.  FRE 807 allows for good cause and to serve the interests of justice. |

---

[19] References to "INEX Response" are to "Interior Exterior's Memorandum in Support of the Plaintiffs' Steering Committee's Response in Opposition to Taishan's Motions Pursuant to Rule 12(B)(2) to Dismiss and to Provide Additional Support in Response Thereof" filed on May 18, 2012.

Evidence Concerning Liability and Damages[20]

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 36. | Order appointing Special Master [Rec. Doc. No. 505 at 1], offered in support of contention that "some individuals have alleged that they have suffered bodily injury." | Global Statement of Facts-5, n.19 | FRE 402, 403 | The document at issue is already part of the record. FRE 402 - all relevant evidence is admissible. The liability and damages evidence at issue is relevant because it is interwoven with and has "any tendency" to prove multiple facts of consequence, including but not limited to intermingling between TTP and TG and alter ego (*e.g.*, TG assuming the liabilities for TTP in connection with the Oriental Trading and Guardian settlements).  The liability and damages evidence is also independently relevant because the hazardous character of the product at issue is a relevant factor in the personal jurisdiction analysis. FRE 403 does not apply and/or has little weight inasmuch as any prejudice or confusion is eliminated or significantly minimized by the fact that there is no jury. |
| 37. | Assertion that "US Government agencies have found Chinese Drywall to be Defective" from Rec. Doc. No. 505 at 1. | Global Statement of Facts-5, n.20 | FRE 402, 403 | *See* Response to Objection No. 36. |
| 38. | Citation to CPSC's Remediation Guidance for Homes | Global Statement of Facts-6, n.21 | FRE 402, 403, 803(8)(c).  These statements are irrelevant to the issue of personal jurisdiction. Additionally this report was superseded by "Remediation Guidance for Homes with | *See* Response to Objection No. 36. |

[20] Pursuant to FRE 402 and 403, Defendants object to any and all evidence purporting to show that drywall sold by TG and/or TTP was defective in any manner or caused any damages. Such testimony is irrelevant to the issues raised in connection with motions to dismiss for lack of personal jurisdiction, and any probative value it might have is outweighed by the possibility of prejudice.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | with Corrosion from Problem Drywall as of March 18, 2011 published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf offered to support contention that certain systems must be removed to remediate homes and other structures. | | Corrosion from Problem Drywall as of September 15, 2011" www.cpsc.gov/info/drywall/Remediation091511.pdf. | |
| 39. | *In re Chinese-Manufactured Drywall Prods. Liab. Litig. (Germano)*, 706 F. Supp. 2d at 663, 664-66, 671 ("*Germano*"). Offered for numerous contentions, e.g., to show that TG's drywall was defective, e.g., "Once installed, however, Taishan's drywall causes harm and damages to homes and their residents by omitting various reduced sulfur gases and retching noxious odors;" (PSC Global Statement of Facts-5-6, | Global Statement of Facts-3, n.8; 5-6, n.16-18; 33, n.138; 35, n.146 147, 148 and 149; 71, n. 318; PSC *Gross* and *Wiltz* Response-22; PSC *Germano* Response-13, n.33, n.34. | FRE 402, 403 – Statements regarding alleged defects in Defendant's products are irrelevant to the issues to personal jurisdiction.  Findings of fact made at a default hearing which are relevant to jurisdictional issues raised in a motion to vacate a default are not entitled to *res judicata* or collateral estoppel effect. *Jackson v. FIE Corp.*, 302 F.3d 515, 524-530 (5th Cir. 2002). | FRE 201 - Judicial Notice of Adjudicative Facts.  The findings of fact at issue are supported by the documents and testimony submitted by the PSC in connection with the present motions, separate and apart from the default hearing.  *See* Response to Objection No. 36. |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | n.16) for proposition that TG manufactures and sells various building products, etc. | | | |
| 40. | All references to the Luneng mine. | Global Statement of Facts-89-91 | FRE 402, 403 – The statements concerning the Luneng mine are intended to show that the drywall sold by TG and/or TTP was defective and are irrelevant insofar as the jurisdiction issues are concerned. | The references at issue are already part of the record.  They are intended to show that the parties have been prevented from taking any discovery concerning the mine. *See* Response to Objection No. 36. |

**Evidence Concerning the Relationship of BNBM and CNBM to TG and TTP[21]**

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 41. | *Germano*, 706 F. Supp. 2d at 662; Herman Aff. 130, Chart  purporting to Summarize TG's 2006 structure post March 16, 2006 (Q000955-956) and Herman Aff. 131 at 100, purported CNBM Global | Global Statement of Facts-71, n.318 | Findings of fact made at a default hearing which are  relevant to jurisdictional issues raised in a motion to vacate a default are not entitled to *res judicata* or collateral estoppel effect. *Jackson*, 302 F.3d  at 524-530. FRE 802, 901—Statements by third parties that are not authenticated and contain hearsay are not admissible. | Taishan is challenging each of the bases for the following, background statement in a much wider discussion of the corporate hierarchy in which Taishan was operating: "As this Court found during the bellwether trial in Germano, publicly available documents show that in China, the State-owned Assets Supervision and Administration Commission ("SASAC") of the State Counsel of the People's Republic of China controls the 'plasterboard' manufacturing, exportation and certification industry and oversees and manages the state- |

---

[21] Defendants object to any and all evidence offered to support the contention that TG and TTP had a presence in the United States through CNBM and BNBM (e.g., Herman Aff. 130-142; 171, 185-187; GS-71-77 and all citations to purported evidence cited therein). This evidence is irrelevant (FRE 402) as the PSC concedes: "the jurisdictional contacts of upstream entities such as BNBM and CNBM, would not be briefed as part of the analysis of the current motions regarding jurisdiction, but would be raised at a later date after jurisdiction over TG and TTP has been addressed by the Court." GS-89 and GS-89, n.4. Rather than list objections to each submission, the objection set forth above is illustrative.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | Offering (Q000438-952), offered to support contention that TG had connections and a presence in the United States through upstream entities. | | | owned assets of companies involved in drywall production, including Taishan." Taishan challenges none of the other evidence throughout this wider discussion. Taishan attacks three sources for this single statement. First, this Court's relevant findings of fact in Germano might not have *res judicata* or collateral estoppel effect, but these findings were based on facts adduced at that trial based on evidence and may be considered by the Court to the extent Taishan is controverting such evidence. Second, the Chart presented as Herman Aff. 130 is a summary of evidence under FRE 1006. Third, the Global Offering Statement was the subject of the Order Regarding Authenticity and Admissibility of Certain Documents Identified by the Parties for Use at Depositions in Hong Kong the week of January 9, 2012. Docket No. 12126.<br><br>Rule 201 – the Court may take Judicial Notice of adjudicative facts |

**Other Objections**

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 42. | Gypsum Association comments, archived at http://web.archive.org /web/20101216021 748/http://gypsum .org/pdf./Gypsum – Association– Comments–on Chinese– Wallboard– Issue.pdf. | Global Statement of Facts-1, n.2 | FRE 802, 901 – Hearsay; lacks foundation. In fact, this exhibit cannot be located by using the address furnished by the PSC. | This evidence is admissible under FRE 201 by judicial notice.  Pursuant to Rule 201, the Court may judicially notice a fact that is not subject to reasonable dispute because it is either generally known by the Court in its territorial jurisdiction, or the source, can be accurately and readily determined and its accuracy cannot be reasonably questioned. Here, the source is the United States Gypsum Association, a non-profit gypsum industry organization. See http://www.gypsum.org/about/mission/. Moreover, this Court is aware of the millions of tons of imported drywall that were imported from China to the United States as noted in the Germano case.  The source was readily accessible to the PSC when it typed the same web address into its computer, but is attached to this response for the parties and Court's convenience.  Exhibit "G." |
| 43. | Herman Aff. 3, Regulatory Announcement of China National Building Material Company Limited (Q000975-981), cited for the proposition that Defendants "took advantage of this opportunity to increase sales to customers in the | Global Statement of Facts-2, n.5 | FRE 802, 901—Irrelevant; hearsay; lacks foundation.  The PSC has attempted to attribute a purported statement of China National Building Material Company, Ltd. ("CNBM") to defendants.  The PSC has failed to authenticate this document. | This evidence is admissible under FRE 201 by judicial notice.  Pursuant to Rule 201, the Court may judicially notice a fact that is not subject to reasonable dispute because it is either generally known by the Court in its territorial jurisdiction, or the source, can be accurately and readily determined and its accuracy cannot be reasonably questioned. The PSC does not attempt to attribute this statement to Taishan, it clearly cites this evidence as coming from CNBM.  Here, the source is CNBM. CNBM in the cited announcement notes that is TG is a subsidiary at p. 2.  Moreover, this Court is |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | United States." | | | aware of the millions of tons of imported drywall that were imported from China to the United States as noted in the *Germano* case. This source is able to be accurately and regularly determined and its accuracy cannot be reasonably questioned. |
| 44. | Herman Aff. 18, Ex. 2 to Peng Dep. (TG0001377-378) – Email correspondence between Richard Hannam and David Wei on which Peng Wenlong ("Peng") is copied to support the contention that "Taishan is proud of its worldwide export capabilities." (Ex. 4 to Deposition of Ivan Gonima, dated 2/14/12) | Global Statement of Facts-3, n.9; PSC *Mitchell* Response-17 | FRE 802, 901 – This email does not support the contention made by the PSC. | Taishan is correct in that this particular document does not support the PSC's contention in its brief in this section; however, the remaining evidence cited for this contention does and was not objected to.<br><br>This citation was inadvertently omitted from footnote 75 of the Global Statement of Facts at p. 18, to show that Taishan added "TAMPA, FL" to the back of its drywall. |
| 45. | Citations to *In Re Chinese-Manufactured Drywall Prods. Liab. Litig. (Hernandez)*, 2010 WL 1710434 (E.D. La. April 27, 2010) | Global Statement of Facts-5, n.20 | Findings of fact made at a hearing to which TG and TTP were not parties are not entitled to *res judicata* or collateral estoppel effect. | At this stage, this Court's finding of fact and law are law of the case. This Court's order has not been vacated. Moreover, the fact that U.S. agencies have found Chinese drywall defective is admissible under FRE 201 by judicial notice. Pursuant to Rule 201, the Court may judicially notice a fact that is not subject to reasonable dispute because it is either generally known by the Court in its territorial jurisdiction, or the source, can be accurately and readily determined and its accuracy cannot be reasonably questioned. |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 46. | Reference to http://www.alibaba.com/about/er/AboutOurCompanyAbout.html | Global Statement of Facts-10, n.39 | FRE 901 – *See St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999) ("There is no way Plaintiff can overcome the presumption that the information he discovered on the Internet is inherently untrustworthy."). | Rule 901 merely requires a showing "sufficient to support a finding that the item is what the proponent claims it is." The website, when accessed is Alibaba's and the webpage is what is purports to be. Deposition testimony and documents in this case established that Taishan used alibaba.com and that U.S. customers accessed alibaba.com for information about Taishan. See PSC Global SOF at p.9, n. 35, p. 10, n.38-41. |
| 47. | Herman Aff. 9, Gonima I Dep. at 13:10-13, cited to support contention that Che and Gonima "kept in close, often daily, contact." | Global Statement of Facts-13, n.53 | FRE 402 – Testimony does not support the contention: witness stated "I was their [Oriental Trading's] agent and like manager." | This evidence tends to prove the material fact that Gonima was OTC's General manager. The PSC cited this testimony for the fact that Gonima was OTC's General Manager, to wit: "kept in close, often daily, <u>contact with OTC's General Manager, Ivan Gonima</u>…." PSC Global SOF p. 13, n.53. Taishan's daily contact with Gonima is evidenced by the numerous instant messages and emails referenced in the PSC's Global SOF. |
| 48. | Herman Aff. 201, Peng II[22] Dep. at 514:10-516:4, offered to support the contention that the defendants "add[ed] the words 'Tampa, Florida' to the label." | Global Statement of Facts-18, n.75 | FRE 402 – Witness testimony does not support statement; Peng testified "we couldn't do it in this case" (515:9-516:4). FRE 402 – Does not support contention. Document states that the color requested could not be supplied. | Taishan cutoff the full statement from the PSC's brief that "Taishan readily obliged made-to-order requests from large orders…adding the words "Tampa, Florida" to the label,…". The cited testimony is an admission from a Taishan employee that Taishan would have stamped "Tampa, Florida" on the drywall if it had been one line of print. The witness did not recall if it was done. This information is relevant under FRE 402 because it tends to prove that Taishan readily obliged made-to-order requests for the United States |

[22] References "Peng I" and "Peng II" Dep. are to the depositions of Pen Wenlong dated 4/7-8/11 and 1/11/12, respectively.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | | | | and Florida, a material jurisdictional fact. |
| 49. | Herman Aff. 45, (Ex. 8 to Weiss Dep. dated 2/16/11),[23] offered to support statement that defendants "include[ed] specific colors in the label." | Global Statement of Facts-18, n.76 | FRE 402 – Does not support contention. Document states that the color requested could not be supplied. | Ex. 45, the email from Bill Cher, a Taishan employee, states that the factory, Taishan, will "fix the color before they [the factory] produce." Thus, this information tends to prove the material fact that Taishan would include specific colors in labels for U.S. customers, a material jurisdictional fact to prove Taishan's intent to do business in the U.S.. See Ex. 42 (red, white and blue American Flag logos). |
| 50. | Herman Aff. 23, Carn Dep. at 38:17-39:14[24], offered to support assertion that TTP obliged made-to-order requests by "affixing an American UPC bar code." | Global Statement of Facts-18, n.77 | FRE 802 – Declarant not identified so FRE 801(d)(2)(4) is not applicable*; see also* objection 2, above. | This is not hearsay, it is a statement from Taishan, a party opponent. FRE 802(d)(2). In the Carn Dep. at 53:4-54:24, the declarant is identified as Taishan and the testimony supports that an American product code would be affixed to the drywall. |
| 51. | The PSC states, "OEG Building Materials told Taishan on numerous occasions it needed samples of the drywall for testing in New | Global Statement of Facts-20 | FRE 802 – Unsupported by citation to any evidence. | Joseph Weiss at OEG requested samples for testing in New York labs of Taishan so it could get acceptance for them to use in New York. See Ex. 11 to Herman Aff., Dep. of J. Weiss at p. 27: 12-28:3; 69:4-71:24; 79:19-80:7; 90:9-91: 2; 108:5-22. |

---

[23] References "Weiss Dep." are to the deposition of Joseph Weiss on behalf of OEG Building Materials dated 2/16/11.

[24] References to "Carn Dep." are to the deposition of Carn Construction Corporation by Carlos Rios, taken on 12/8/12.

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | York labs." | | | |
| 52. | Herman Aff. 71, V000386, purported fax cited to support assertion that Taishan's goal was "to become 'one of the biggest gypsum board producing factories for' the U.S. market." | Global Statement of Facts-31, n.130 | FRE 802, 901 – Citation does not support assertion; the document states "[w]e would like to introduce ourself as one of the biggest gypsum board producing factory." | See Response to Objection No. 13.  This is a business record reflecting an email between Taishan and one of its customers.  In addition, Taishan is truly hairsplitting as to its meaning of the challenged statement in the email between Taishan and this customer: whether Taishan said it was or merely hoped to become "one of the biggest gypsum board producing factor[ies]."  The document was authenticated at deposition.  See Herman Aff. 39, Hannam dep. 214:3-215:1; Rule 802(d)(2) – Statement of Party Opponent. |
| 53. | Herman Aff. 73, V002703 purportedly an email from Philip Perry to Sam Porter, stating that "[Taishan] said that a lot of American companies have made enquiries," etc. | Global Statement of Facts-31, n.133 | FRE 802, 901 – There is no testimony cited to authenticate the document, which contains hearsay as the declarant is unidentified. | *See* response to Objection No. 13.  This is a business record reflecting an email between Taishan and one of its customers.  In addition, Taishan is truly hairsplitting as to the identity of the declarant.  The email consists of an email from Frank Clem to Philip Perry, part of their ongoing communications, which Mr. Perry is forwarding to his partner, Sam Porter.  Mr. Clem, or one of his colleagues at Taishan, is the person who advised Mr. Perry that "a lot of American companies have made inquiries." |
| 54. | Herman Aff. 74, V002608 purportedly an email from Philip Perry to Peng, offered to show TG's awareness that Venture Supply | Global Statement of Facts-32, n.134 | FRE 802, 901 – There is no testimony cited to authenticate the document. | *See* response to Objection No. 13.  This is a business record reflecting an email from one of Taishan's customers to Taishan.  The document was authenticated at deposition.  *See* Herman Aff. 39, Hannam Dep. 345:17-346:23. |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | would sell, on TG's behalf, TG's drywall in the United States. | | | |
| 55. | Herman Aff. 76, V002371-372, Email from Perry to Porter Blaine purporting to attach text message offered to support statement that "Venture Supply was actively assisting Taishan to distribute its product throughout the U.S. without any geographic limitation." | Global Statement of Facts-33, n.136 | FRE 402, 802, 90, 1002 – The text refers to the efforts by another company, Certified Products International Inc., to sell TG drywall. There is no testimony cited to authenticate the document. The best evidence of the text messages is the messages themselves, not an email from a third party cutting and pasting the messages. | See Response to Objection No. 13. This is a business email from Mr. Perry to Mr. Porter in which Mr. Perry copied and pasted an instant message he had with Frank Clem  Mr. Clem has admitted to using instant messaging in the course of his work.  Given the inherently transient nature of instant messaging, the "best evidence" of such messages (particularly years after a message was sent) are electronic copies that have been made into more permanent forms, like email.  The text is relevant because, as presented by the PSC, it shows that Taishan, through Frank Clem, is discussing particular markets in the United States it wants to exploit, here Norfolk, Virginia, through American companies.

Rule 802(d)(2) – Statement of Party Opponent. |
| 56. | Statement that "[i]t is undisputed that Taishan manufactured the Chinese Drywall installed in the homes of Intervening Plaintiffs in *Germano*." | Global Statement of Facts-36 | FRE 402 – Unsupported by a citation to evidence to support this assertion. | No evidentiary response is needed.  It can hardly be controverted that Taishan's drywall has ended up in homes in the United States, including those of some of the intervening Plaintiffs.  Such evidence had been presented in *Germano* to establish the judgment underlying the default.  Moreover, this was a finding of fact in the trial overseen by this Court. |
| 57. | Herman Aff. 39, Hannam Dep. 94:8- | Global Statement of | FRE 402, 802 – Cited testimony does not support | There is no speculation about the "interest" of a third party, here a customer of Wood Nation or |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | 98:11 and Ex. 4 to Hannam Dep., cited for statement that Hannam testified that he travelled to China to visit Taishan's plant because one of Wood Nation's customers, Suncoast Building Materials, was interested in purchasing 500 containers of drywall. | Facts-39-40, n.170 | statement; statement regarding interest of Suncoast Building Materials is hearsay. | hearsay.  Rather, the testimony from Wood Nation reflects the course of negotiations between Wood Nation and its customer for drywall that was to be purchased from Taishan. *See also* Herman Aff. 39, Hannum Dep. 76:7-78:25 (discussing further the fact that the initial negotiations involved 500 containers, but the final agreement covered only 40 containers). |
| 58. | Herman Aff. 113 and 114, Exs. 17 and 16 to the Che Dep., offered to show TTP's purported awareness of problems concerning shipment to California. | Global Statement of Facts-47, n.218, 219 | FRE 802 – Contain second and third level hearsay insofar as the letters refer to statements by third parties and customers of Advance Products, International ("API"). | *See* Response to Objection No. 13.  As regards Herman Aff. 113, Frank Clem acknowledged dealings with James Scudder's company, the author of the letter, and was shown the letter at his deposition, but neither recalled nor refuted receipt of the letter or responding to the letter. Herman Aff. 6, Che Gang Dep.  280:19-281:18, 282:16-284:1; *see also* 275:9-276:15 (discussing similarly Herman Aff. 114).  Given the other indicia and wider circumstances, the fact that these exhibits are probative of issues about which Taishan's designee (Che Gang) could not testify, and the interests of justice, these exhibits should also be admitted under FRE 807. |
| 59. | Herman Aff. 114, Ex. 16 to Che Dep., cited to support assertion that Taishan was | Global Statement of Facts-47, n.219 | FRE 802, 901 – The document contains second,  third  and fourth level hearsay, as the  email from Wei, who is not an employee or agent of TG or TTP, to Che contains an | *See* Response to Objection No. 58. Ultimately, the email regarding problems with Taishan drywall winds its way to Frank Clem,  who  then  received  the  reports  of |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | advised of problems with drywall shipments to California. | | email from API, which itself contains hearsay. | problems.   The truth of the underlying reports is not needed, only Mr. Clem's (Taishan's) knowledge of reports of problems is discussed. |
| 60. | Herman Aff. 116, V002487, a statement by Perry in an email that he ran into another American from Texas at the factory, who said he was from the HGC Company, and claimed he was a "big buyer", offered to show that TG was selling to other suppliers in the U.S. | Global Statement of Facts-48, n.220 | FRE 802, 901 – Perry's statement is hearsay. | *See* Response to Objection No. 13. |
| 61. | Herman Aff. 117, V002400, an email from Perry purporting to identify visits by other companies to TG. | Global Statement of Facts-48, n.221 | FRE 802, 901 –The declarant who provided information to Perry is not identified. | *See* Response to Objection No. 13. |
| 62. | Rec. Doc. No. 1747, offered to show that the "*Wiltz* plaintiffs own properties containing Chinese Drywall that was manufactured . . . by the manufacturing defendants named in | PSC *Gross* and *Wiltz* Response-5, n.12 | FRE 802, 901 – The reference to the allegations of the complaint is not sufficient to "prove" that plaintiff's claims arose from exposure to drywall manufactured by TG or TTP. | The PSC is not seeking to make any proofs at this stage of the proceedings against Taishan based on the allegations in one of the complaints filed in this litigation.  All that is discussed by the PSC in the passage put at issue by this Objection is the scope of the claims in *Wiltz* (a case litigating claims against non-Knauf manufacturers).  Accordingly, as explained in the brief (by way of mere |

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | Plaintiffs' Amended Omnibus Class Action Complaint." | | | background), these Plaintiffs are seeking relief against one of the non-Knauf manufacturers, which necessarily include TG and TTP, among others. |
| 63. | Citations to *Germano*, 706 F. Supp. 2d at 661; Porter Dep.[25] at 53:24-59:21 and Herman Aff. 79, Ex. 39 to the Porter Dep., for the statement that "Venture Supply . . . made clear to Taishan that it was necessary to have test results indicating that the drywall complies with the requirements of the ASTM standards." | Homebuilders' Response-31, n.1 42 | FRE 402 – Pursuant to *Jackson v FIE*, *supra*, the findings from the *Germano* decision as they relate to the jurisdictional issues are not binding facts; the Porter Dep. and Herman Aff. 79, Ex. 39 to the Porter Dep., do not support this statement. "Q. There was a controversy with Frank Peng when he asked that Venture remove from its line of credit the designation that the Taishan Drywall was to be delivered after ASTM tests?  A. Yes." | Taishan has cited the case of *Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002) for the proposition that "findings of fact made at a default hearing which are relevant to jurisdictional issues raised in a motion to vacate a default are not entitled to *res judicata* or collateral estoppel effect."  This is not, however, what the Fifth Circuit concluded in *Jackson*.  Rather, the court in *Jackson* recognized that "well-pleaded allegations of fact" from a default judgment are not given *res judicata* or collateral estoppel effect.  The Court's findings of fact in *Germano* were based not on the allegations from the *Germano* complaint, but rather on the record evidence that was presented to the Court:  "The Court has carefully considered the testimony of all of the witnesses and the exhibits entered into evidence, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court issues the following Findings of Fact and Conclusions of Law. To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such and to the extent that |

---

[25] References "Porter Dep." are to the deposition of Samuel G. Porter dated 12/16-17/09. (Herman Aff. 72).

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| | | | | any conclusion of law constitutes a finding of fact, the Court adopts it as such." *In re Chinese Manufactured Drywall Products Liab. Litig.*, 706 F.Supp.2d 655, 660 (E.D. La. 2010). Accordingly, the holding from *Jackson* does not apply to the Court's findings of fact and conclusions of law in *Germano*.  But even if the Court's findings in *Germano* were not entitled to preclusive effect against Taishan, the Court may nevertheless consider the admissible record evidence from *Germano* in determining whether the Court may exercise personal jurisdiction over Taishan.  Furthermore, the Court can also refer to all of the admissible evidence cited in fns. 142-146 of the Homebuilders' Opposition for the proposition that "Taishan knew that its customers in the U.S. would require evidence that Taishan's drywall complied with the applicable U.S. testing standards." |
| 64. | Exhibit B to the INEX Mem.[26] is a string of emails that purports to attach an ASTM certification, and is offered to show that TTP sold drywall to Metro Resources. | INEX Mem.-3, n.7 | FRE 402, 901 – The document does not show that TTP sold drywall to Metro Resources.  Peng testified that TTP furnished copies of this report to any potential customer who requested it, including companies in China.  Peng Tr. at 411:10-4-12:1. | FRE 801(C). The email and its attachment, Exhibit B to Interior Exterior's memorandum in support of the PSC's objections, is offered for another purpose than providing the truth of the matter asserted and the value of the statement does not rest on the declarant's credibility. Rather, the email is intended to show how the parties may be related, not that the Test results are correct or credible.  FRE 807 allows for good cause and to serve the interests of justice. |

---

[26] References "INEX Mem." are to "Interior Exterior's Memorandum in Support of the Plaintiffs' Steering Committee's Response, etc."

| Ex./ Obj. No. | Proposed Evidence | Place Cited | Basis of objection to Proposed Evidence | Response |
|---|---|---|---|---|
| 65. | INEX Distributor Profile Form is cited for the proposition that there were "imports to New Orleans of an additional 33,000 sheets of Taishan drywall." | Louisiana Response-9, n.13[27] | FRE 802, 901—The statement of INEX cannot be used for its truth against Defendants and as support for the contention that Defendants expected to "import" drywall sold to unidentified third parties to Louisiana. | The INEX Distributor Profile Form ("DPF") was signed by the company under oath and filed of record in this litigation.  The INEX DPF is a sworn discovery response.  As such, it satisfies Taishan's FRE 901 objection.  Moreover, INEX's DPF is a sworn filing by a direct party to this litigation, and is already part of the record.  However, if the Court does not consider the INEX DPF part of the record, then the DPF is still the equivalent of an affidavit, and Fed. R. Civ. P. 43(c) allows the use of same ("[w]hen a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions."). <br><br> As for the hearsay objection, this is an exception to hearsay in that INEX is a party opponent.  As to the truth of the matter asserted, Taishan's sales of drywall to INEX go to what INEX imported and show jurisdictional contacts, not Taishan's intent, and are subject to the Court's review for weight and credibility. |

[27] References "Louisiana Response" are to "State of Louisiana's Motion and Incorporated Memorandum to Join the Plaintiffs' Steering Committee's Response to Taishan's Motion, Pursuant to Rule 12(b)(2), to Dismiss the Complaints".