```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3

 4   IN RE: CHINESE-MANUFACTURED      )
     DRYWALL PRODUCTS LIABILITY       )
 5   LITIGATION                       )
                                      ) CIVIL DOCKET NO.
 6                                    ) 09-MD-2047-EEF-JCW
                                      ) SECTION "L"
 7                                    ) NEW ORLEANS, LOUISIANA
                                      ) JUNE 14, 2012
 8                                    ) 9:00 A.M.
     THIS DOCUMENT RELATES TO:        )
 9                                    )
     ALL CASES                        )
10                                    )
     ************************************

11

12
              TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
13
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
14
                      UNITED STATES DISTRICT JUDGE
15

16

17

18

19

20   OFFICIAL COURT REPORTER:      SUSAN A. ZIELIE, RPR, RMR, FCRR
                                   UNITED STATES DISTRICT COURT
21                                 EASTERN DISTRICT OF LOUISIANA
                                   500 POYDRAS STREET, ROOM B406
22                                 NEW ORLEANS, LA 70130
                                   SUSAN_ZIELIE@LAED.USCOURTS.GOV
23                                 504.589.7781

24

25   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER AIDED TRANSCRIPTION.
```

```
 1   APPEARANCES:

 2

 3   PLAINTIFFS' STEERING              RUSS HERMAN, ESQ.
        COMMITTEE:                     HERMAN HERMAN KATZ & COTLAR
 4                                     820 O'KEEFE AVENUE
                                       NEW ORLEANS, LA 70113
 5

 6   STATE/FEDERAL COORDINATION        BY:  DAWN BARRIOS, ESQ.
        COMMITTEE:                     BARRIOS, KINGSDORF & CASTEIX
 7                                     701 POYDRAS STREET
                                       SUITE 3600
 8                                     NEW ORLEANS, LA 70139

 9
     PLAINTIFFS:                       ARNOLD LEVIN, ESQ.
10                                     LEVIN, FISHBEIN, SEDRAN
                                          & BERMAN
11                                     510 WALNUT STREET, SUITE 500
                                       PHILADELPHIA, PA 19106
12

13   FOR DEFENDANT KNAUF:              STEVEN GLICKSTEIN, ESQ.
                                       KAYE SCHOLER
14                                     425 PARK AVENUE
                                       NEW YORK NY 10022-3598
15

16   FOR BANNER DEFENDANTS:            DOROTHY H. WIMBERLY, ESQ.
                                       STONE PIGMAN WALTHER
17                                        & WITTMANN, LLC
                                       546 CARONDELET STREET
18                                     NEW ORLEANS LA 70130-3588

19

20

21

22

23

24

25
```

1           NEW ORLEANS, LOUISIANA; THURSDAY, JUNE 14, 2012

2                              10:00 A.M.

3                        (COURT CALLED TO ORDER)

4           THE COURT:  Good morning, ladies and gentlemen.

5              Let's call the case.

6           THE CLERK:  MDL 2047, in re:  Chinese Manufactured
7   Drywall Product Liability Litigation.

8           THE COURT:  Counsel make your appearances for the
9   record.

10          MR. HERMAN:  Morning, Judge Fallon.  Russ Herman for
11  plaintiffs.

12          THE COURT:  Anybody speaking for the defendant?  Make
13  an appearance on behalf of the defendants.

14          MR. GLICKSTEIN:  Your Honor, Steven Glickstein, Kaye
15  Scholer, for the defendants, appearing for Kerry Miller.  And I
16  apologize for arriving late.

17          THE COURT:  That's all right.

18             We're here today for our monthly status conference
19  in this matter.  I met with liaison and lead counsel for all
20  sides a moment ago and I discussed the agenda with them.

21             Some of the items on the agenda, let me go through
22  them.

23             Pretrial orders, anything on that?

24          MR. HERMAN:  No, Your Honor.

25          THE COURT:  State court trial settings.

1       MR. HERMAN:  Ms. Barrios is here, Your Honor.

2       MS. BARRIOS:  Thank you, Mr. Herman.

3            Good morning, Your Honor.  Dawn Barrios for the
4  State Liaison Committee.

5            I have one correction that needs to be noted in
6  the joint report.  Mr. Montoya advises that's case No. 8, has
7  been stricken from the docket.  So that case is not set for
8  trial.

9            In the past week or so, I've done a letter to all
10 the state court judges providing them with your recent order
11 setting all the final fairness hearings on all the settlements
12 and giving them an update on the MDL.

13      THE COURT:  Okay.  And I'm going to be inviting all of
14 them to participate in the fairness hearing, either here in New
15 Orleans or by phone if they would like to.  And I'll talk with
16 them beforehand to get any questions that they might need
17 answered, and maybe allow them also to participate if they're
18 interested in doing so.  They've been very helpful in trying to
19 coordinate this matter.  We have been able to take depositions
20 for not only the MDL case but also to be used in state court so
21 you don't have to retake depositions each time.  And that's been
22 very helpful.

23      MS. BARRIOS: Your Honor, I'd be happy to provide the
24 contact information for all the judges so that if you'd like to
25 reach out to them.

1    THE COURT:  I will.  Thank you very much.
2         Any insurance issues?
3    MR. HERMAN:  No, Your Honor.
4    THE COURT:  Homebuilders' costs and fees.
5    MS. WIMBERLY:  Your Honor, very briefly.
6         After the statements since the last status
7 conference, I received contacts from a number of insurers'
8 counsel, who I want to personally thank for stepping up to the
9 plate and working out allocation issues and making payments.
10        We will be providing to the Court next week a list
11 of those remaining noncompliant builders, which will include not
12 just the names of the builder but the amount for which they have
13 not paid based upon the number of homes, as well as the dates
14 showing service of the complaints, and appearances as to who
15 their particular counsel are.  So that it will be much easier
16 for the Court and any noncomplying builders to see who is
17 responsible, and so that an order and a judgment finding them in
18 contempt will be clear as to the amounts and defaults.
19   THE COURT:  Before I issue the judgment, I'll confer
20 with you to see whether or not there's any final payment for
21 that.  I will be issuing a judgment and holding them in contempt
22 and fining them the same amount per day, so forth.  And I'll
23 deal with it in that fashion.
24        Any omnibus class actions?
25   MR. HERMAN:  Nothing new, Your Honor.

1    THE COURT:  Litigation, pilot program, any updates on
2  the pilot program?
3    MR. GLICKSTEIN:  Nothing new, Your Honor.
4    THE COURT:  I received a letter from a Ms. Jeraldo or
5  Mr. Jeraldo Perez and Aldoph Alfonzo, one of the litigants in
6  the case.  She had had a home repaired, and she just wanted the
7  Court to know that she wanted to express her gratitude as well
8  as to everyone at Moss Construction, an attorney B. Albanis and
9  Morgan & Morgan.  Everyone was very helpful, the remediation ran
10 smooth, they were compassionate and patient.  And she wants the
11 Court to know that, and thanked everyone for doing a great job.
12           So it looks like the program has been working in
13 many respects.
14           I do have a joint motion regarding the already
15 remediated homes that seems, on that aspect, seems to feel that
16 it's been a little delayed from their standpoint, and there's
17 some confusion as to whether it's $8 or $10 and various other
18 things.  But I think that that can be worked out, and I've
19 talked to the parties on that.
20           Anything on term sheet agreement?
21    MR. HERMAN:  Nothing new, Your Honor.
22    THE COURT:  With Taishan defendants, the briefing is in
23 on the personal jurisdiction.  I'll hold a hearing on June 29th
24 here in New Orleans.
25           Judge Farina was planning on being with me in

1  person, and conducting his hearing following my hearing.
2  Something has come up, he's not able to be in person.  But he
3  will on the phone and participating.  And so, after the hearing
4  here in New Orleans, it will be three hours that I'll hear from
5  the parties on an oral presentation.  And then, we'll take a
6  break for lunch, and then we'll start Judge Farina's hearing.
7  The lawyers here can participate by phone and present their
8  cases, their argument, to Judge Farina, who'll be in his
9  chambers or in his courtroom in Florida.  And we'll coordinate
10 that with the parties beforehand, but that's our present
11 thinking on it.
12             Interior/Exterior defendant, I met yesterday with
13 the PSC and North River.  As all of us know, the IN/EX has
14 entered into a global resolution and is one of the parties in
15 the global resolution with Knauf, as well as others.  But, with
16 regard to the IN/EX agreement, there is some connection with the
17 excess insurer's participation for IN/EX's participation to go
18 through.
19             So the North River has taken a hard look at this
20 matter, and has difficulties coming in or difficulties in
21 resolving it in any fashion that the PSC wishes them to do so.
22             I had a mediation here in court a week ago with
23 representatives of IN/EX here, as well as their attorneys and
24 the special master and the PSC.  They worked for five, six,
25 seven hours on trying to resolve it, but they reached an impasse

1  and could not do so.  So I set a trial for November the 26th
2  against the North River.  They have a right to have the case
3  resolved.  And the plaintiffs of course have a right to have the
4  case resolved, as everybody does.
5             I therefore met with the plaintiffs and North
6  River yesterday to discuss with them the method of trying the
7  case, as well as the discovery that they will need to give me
8  some idea as to their wishes on a scheduling order.
9             We talked a lot about a lot of things, and
10 basically what I have in mind is trying to tee up an issue
11 trial.
12            The issue trial is really focused on what we
13 focused on, the liability and vel non of Interior/Exterior.
14 Seems to me that we have enough information at this point in
15 this case to have everyone look at the damages aspect.  We've
16 had pilot programs, we've had previously remediated homes, we've
17 had trials in figuring out what's included and how much is
18 allowed, we have square footage requirements.  We have enough
19 information that the lawyers can look at that information and
20 make some reasoned decision as to costs, as to their potential
21 exposure.  And we also have some information on liability of the
22 manufacturers in the case.
23            We've had six trials to focus on what has happened
24 to this drywall, what's the result of it, how it works, things
25 of that sort, mechanism of the alleged injuries or damages.  But

1   we don't have any information on the liability downstream of
2   particularly IN/EX.  And if the parties can be informed on that
3   issue by the jury curator, so to speak, this might give them
4   some information from which they can analyze a potential global
5   resolution from their seat on the bus.
6              So I really wanted to focus the litigators and the
7   parties on that concept, of trying the case to a jury on the
8   liability vel non of IN/EX.  So that's really what my thinking
9   is.  And I asked them to get that in mind, and then I'll meet
10  with them on Monday to talk with them about how we tee up the
11  trials.  Perhaps we can have the plaintiffs pick three, and the
12  defendants pick, and North River pick three, and deal with it in
13  that fashion and see where we go with it.  And then, with
14  discovery on that census of cases, and see whether we can get
15  some meaningful information.
16             It's somewhat limited in the sense that it doesn't
17  lend itself to simply replicating that throughout the whole
18  census of the litigation.  I'm afraid it doesn't give us the
19  total answer as to how much damage of these six, if we go with
20  six properties, result from, and that's problematic.
21             But it does perhaps and will, I think, give us
22  some reading on the potential liability of someone like IN/EX.
23  And, with that information, I think that's the key to the
24  analysis.  And, though, limited it may be of help.
25             The thing that I recognize is the cost in these

1   cases. We've had six cases. For the most part, they've been
2   defaults. But the defaults costs $1 million each for a default,
3   because they need to be evidence-based defaults. And that's
4   costly. And so, though it's somewhat limited in scope, an issue
5   presentation tends to be a little limited, it also tends to be
6   less costly. And that may be a way of doing it, if we can tee
7   up those trials for $100,000 or something, as opposed to
8   millions of dollars, it may be worth the bang for the buck.
9             But these are ideas, at least, that I fleshed out
10  a little bit, wanted to mention them to you all that I'm focused
11  on. We need to be creative in some of these cases. We need to
12  think outside of the box in some of the cases. This is a
13  peculiar case in the sense that, many cases, we only have one
14  defendant or two defendants, and in this case we have over a
15  thousand defendants. A thousand defendants in the case. About
16  26,000 plaintiffs, or thereabouts. 1,400 lawyers. The regular
17  case doesn't work in this venue, so we've got to think in terms
18  of different methods of doing it. And this is one of the
19  methods that I share with you.
20        MR. HERMAN: May it please the Court, I believe you set
21  the Interior/Exterior trial for November 26th.
22        THE COURT: Yes.
23        MR. HERMAN: 2012.
24        THE COURT: Right.
25             We have, the next item is Banner defendants.

1   Anything on that?

2          MR. HERMAN:  We have an error in the status report.
3   The report should state that, on June 4, 2012, the Court entered
4   an order setting the opt-out dates and objection date to
5   September 28th and set a fairness hearing on November 13th,
6   2012.

7          THE COURT:  Okay.  And, the deadline for the opt-outs
8   and the fairness hearing, we've tried to coordinate that, and
9   it's all coordinated now.

10              And the reason for the coordination is, is that
11  type of global settlement from the Knauf side of the ledger and
12  their downstream people are really tied together often by
13  various aspects.  So it should be one time as opposed to the
14  different dates.

15              Anything on the Banner defendants?

16         MR. HERMAN:  Nothing further, Your Honor.

17         THE COURT:  Venture Supply and Porter Blaine
18  defendants, anything further on that?

19         MR. HERMAN:  Nothing further on that, other than, Your
20  Honor, with regard to the Taishan jurisdiction motion, Your
21  Honor has allotted an hour and a half for those folks opposite
22  Taishan.  And, if there are folks opposite who haven't told us
23  how much time they require, would you please let us know.

24         THE COURT:  That's important to do, because I've given
25  three hours for the presentation.  Of course, I would encourage

1  them to give me a draft of the documents introduced evidence,
2  things of that sort, so I'll have a record that they're
3  comfortable with.  But the limitation of three hours, the oral
4  presentation, an hour and a half for each side.
5           But, from the plaintiffs' side, the question is,
6  as we've mentioned, the Hong Kong area might have some interest
7  in it, because a lot of those depositions are being referred to.
8  But you need to coordinate it with the plaintiff's counsel so
9  that we have some indication of who is speaking.
10           MR. HERMAN:  Thank you, Your Honor.
11           Just one other note on that.  The PSC will take 30
12 minutes, which will leave an hour to be divided among other
13 folks opposed to Taishan.
14           THE COURT:  Anything on the profile forms?
15           MR. HERMAN:  No, Your Honor.
16           THE COURT:  All right.
17           The one motion I have before me is the *Hobbie*, the
18 motion for preliminary approval.  I haven't received any
19 objection to the preliminary approval.  I understand the reasons
20 for it, and I'll grant preliminary approval on that with the sub
21 silentio argument from the movant in favor of the position.
22           Anything on frequently asked questions?
23           MR. HERMAN:  Not at this time, Your Honor.
24           THE COURT:  Anything else from any other matters?
25           I have the next conference on July 26th.  The

1  following one on August the 30th.  And the one after that on
2  September the 13th.  I'll try to give these to you in advance,
3  particularly in the summer months, so that we can deal with
4  vacations and family trips.
5              Anything else from anyone?  Thank you very much.
6  The court stands in recess.
7              (10:25 a.m., proceedings concluded.)

10                              CERTIFICATE

12         I, Susan A. Zielie, Official Court Reporter, do hereby
13  certify that the foregoing transcript is correct.

15                              /S/ SUSAN A. ZIELIE, FCRR
16                              _____
                                Susan A. Zielie, FCRR