**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 09-2047

SECTION L

JUDGE FALLON

THIS DOCUMENT RELATES TO
THE CASE SET BY THE COURT FOR
TRIAL INVOLVING NORTH RIVER

MAG. JUDGE WILKINSON

**RESPONSE OF THE NORTH RIVER INSURANCE COMPANY TO
PLAINTIFF-INTERVENORS' MOTION IN LIMINE CONCERNING
IN SOLIDO LIABILITY IN REDHIBITION CLAIMS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Plaintiffs' Steering Committee ("PSC") filed a Motion in Limine and memorandum

in support of the motion raising the issue of whether any recovery Plaintiffs may obtain against

Interior/Exterior Building Supply Company ("INEX") or The North River Insurance Company

("North River") should be reduced because of a comparative allocation of fault between INEX

and the manufacturer of drywall found to be defective.  The PSC does not explain why this is an

issue that should be resolved four months before trial, with no dispositive motions pending

before the Court, but the PSC apparently believes that the issue is one that should take

precedence over all other trial preparations.[1]

---

[1] The Motion in Limine purports to be filed on behalf of Plaintiff/Intervenors, even though no trial plaintiffs had been identified at the time the Motion was filed and no interventions have been granted.  Second, under federal practice, a "motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 (5th Cir.1977), *citing* Commentary, The Motion in Limine: Pretrial Trump Card in Civil Litigation, 27 U.Fla.Law.Rev. 531 (1975) (footnotes omitted).  The Motion in Limine does not address the exclusion of testimony.  Finally, the Motion does not identify what relief it is seeking, except perhaps for an impermissible advisory opinion.

While the Motion in Limine raises an interesting – and profoundly unsettled – point of law, it is not necessary for the Court to resolve the issue at this time.  The question whether the Louisiana comparative responsibility statute applies to claims between a manufacturer and a seller in redhibition is the source of conflict among Louisiana intermediate appellate courts, and the Louisiana Supreme Court has recently declined to resolve the conflict.  North River suggests that the more appropriate course for a federal court sitting in diversity is to not address an unsettled and disputed issue of state law if it is not necessary to do so.

The question of in solido liability between INEX and the manufacturers of Chinese-manufactured drywall is not a ripe issue at this juncture because, regardless of whether or not one or more of the Knauf entities is a party to this trial, and regardless of whether Knauf and INEX are solidarily liable in redhibition, there is a pending negligence claim against INEX.  No party denies that the comparative negligence statute applies to a negligence claim.  For that reason, a comparative responsibility submission will have to be made to the jury.  A preliminary ruling on the question of in solido liability will not affect the issues that will be submitted to the jury in this phase of the trial.  Rather than making an *Erie* guess on a matter on which the Louisiana state courts find themselves in conflict, the Court should defer any ruling on this matter until it is necessary to do so.

## I.  THE CONFLICT BETWEEN THE PSC AND KNAUF

The Motion in Limine spotlights a crucial distinction between the position taken by the PSC in this case and the position taken by Knauf, the manufacturer of the vast majority of Chinese-manufactured drywall sold by INEX.  When North River first sought to have the stay in favor of Knauf lifted so that Knauf would be a party to any trial involving North River, Knauf argued to the Court that Knauf is not a necessary or proper party to any trial involving North River.  Knauf made this argument even though La. C. C. articles 2531 and 2545 give INEX and

North River a right of action to pass through any liability imposed against them because of a defective Knauf product..  Knauf's position to the Court was that INEX and North River can "try the empty chair" and obtain a percentage responsibility finding against Knauf even if Knauf is not in the lawsuit.  The PSC stood there while Knauf asserted that theory of law and the PSC did not contradict it.

Now the PSC has taken the polar opposite position, arguing that comparative responsibility does not apply in a redhibition action, at least between the manufacturer and the seller, because their obligation is in solido and not joint and divisible.   If the PSC is correct that the manufacturer of a product and a seller of the product are solidarily liable to a purchaser, that would make the presence of the manufacturer of the product even more vital in any trial on a claim of redhibition.   As a seller, INEX has a claim against the manufacturer for any loss suffered by INEX as a result of the sale of a defective product.  It would be illogical, irrational, and inefficient to have to try the issue of redhibition liability twice.   North River believes that sound judicial economy requires Knauf, the manufacturer of the drywall, to be a party to this case regardless of the nature of liability to the Plaintiffs, because it is Knauf's product that creates the potential liability.  If Knauf and INEX are solidary obligors to the Plaintiffs, then their obligation should be resolved in a single trial.

## II. THE ISSUE OF IN SOLIDO LIABILITY BETWEEN A MANUFACTURER AND A SELLER IS NOT ESSENTIAL TO THE ISSUES TO BE TRIED IN NOVEMBER

Regardless of whether a manufacturer and a seller have in solido liability to a claimant, the issue of whether there is in solido liability between INEX and Knauf (or Taishan) in redhibition does not determine either (a) the liability of INEX or North River to the Plaintiffs or (b) the ability of INEX to recover from a manufacturer any liability assessed against INEX.  The Court has made it clear that the potential damages against INEX or North River will not be part

of the November trial, but, even if damages were at issue in this phase of the trial, the question of in solido liability is not of any legal significance.

As the Court has recognized, the primary issue to be tried in November is the liability of INEX, which depends upon whether INEX knew, at the time of sale, of the existence of a defect in the product. LSA-C.C. art. 2531 determines a seller's liability if a seller does not know of the defect at the time of sale:

> A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails so to do, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.

> A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition. Any contractual provision that attempts to limit, diminish or prevent such recovery by a seller against the manufacturer shall have no effect.

A seller who knows that the product he is selling has a defect is subject to much broader liability under LSA-C.C. art. 2545:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.

> A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

Thus, Inex's potential liability will depend on whether or not it knew of the defects in Chinese-manufactured drywall at the time it sold the product. Any liability against INEX will be determined by articles 2531 or 2545. Knauf or Taishan, as the manufacturer of the drywall, will

be subject to the liability of a bad faith seller under article 2545.  In order to determine whether or not INEX is a good faith seller in redhibition, the extent of liability of the manufacturer of the product is entirely irrelevant.

Similarly, whether INEX is able to recover any damages assessed against it from Knauf or Taishan does not depend on whether or not they have in solido liability.  Louisiana courts have consistently held that a seller's knowledge that it is selling a product with a defect caused by the manufacturer will not, by itself, deprive the seller of its right to indemnification from the manufacturer.  In *Peterson v. Coleman Oldsmobile, Inc.*, 393 So.2d 372, 377 (La. App. 1980), the court stated:

> While we certainly agree with the trial court's finding that Coleman's repair attempts were often unsatisfactory and even sloppy at times, the court's conclusion allowing Coleman indemnity against Coachmen is supported by the law and jurisprudence of this state. La. C.C. art. 2531 gives the seller who is held liable because of redhibitory defects a corresponding right of action against the manufacturer for any losses sustained by the seller. A review of the list of defects quoted in the trial court's opinion above will show that most of the major problems complained of by the plaintiffs were problems resulting from the manufacture of the Jimmy Mini motor home by Coachmen. While Coleman was not a good faith seller in the sense that the dealership had knowledge of some of the defects prior to sale, knowledge of these redhibitory defects alone does not abrogate Coleman's right to indemnity under Article 2531.

*See also McGough v. Oakwood Mobile Homes*, 779 So.2d 793, 805 (La. App. 2000) ("the seller's bad faith knowledge of the defect alone does not abrogate the seller's right to indemnification").

In *Evangeline Medical & X-Ray Distributors Corp. v. Coleman Oldsmobile, Inc.*, 402 So.2d 208, 212 (La. App. 1981), the court relied on the second paragraph of article 2531 to hold that a seller who knew of defects prior to the sale was still entitled to receive indemnification from the seller who caused the defects:

> Georgie Boy contends since Coleman was found not to be a seller in good faith, it should not have a right of indemnification from it under Civil Article 2531. Article 2531 provides:

"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.

"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."

Paragraph one refers to a seller in good faith, but the right of indemnification from the manufacturer is not as restrictive. The paragraph begins, "In any case in which the seller is held liable..."  We construe this to mean where the seller is not at fault in creating the defects, he is entitled to indemnity. The cases cited by the appellant refer to the defects that were attributable to the seller because of refusal to repair. *Perrin v. Read Imports, Inc.*, 359 So.2d 738 (La. App. 4th Cir. 1978) and *Bagwell v. Coleman Oldsmobile, Inc.*, 391 So.2d 1260 (La. App. 1st Cir. 1980). This is not the case here. Coleman repaired the complaints that were reported to it and no bad faith is shown on its part in refusing to repair. The record establishes that after repairs, the unit would simply fail again for causes unassociated with the repairs previously performed. Therefore, the trial court was also correct in allowing Coleman indemnification from Georgie Boy.

402 So.2d at 212.

This means that the right available to INEX and North River to recover from Knauf or Taishan as the manufacturer of a defective product is guaranteed by article 2531 regardless of whether INEX is found to be a good faith seller or a bad faith seller.  The issue of in solido liability is just as irrelevant to the indemnification claim against the manufacturer as it is to the issue of a seller's liability to a purchaser.

 Because a determination of whether there is solidary liability between a seller and a manufacturer will not affect any issue to be tried in this case, the Court need not decide the issue at this time.  As explained in Section IV below, the issue is one which has resulted in a split among the intermediate Louisiana courts of appeals and which the Louisiana Supreme Court has declined to resolve.  There is no practical or logical reason for the Court to delve into an

unsettled question of state law that is not essential, or even  helpful, to the issues that are to be resolved in the November trial.

### III.  A PERCENTAGE RESPONSIBILITY QUESTION WILL HAVE TO BE SUBMITTED TO THE JURY BECAUSE OF THE PENDING NEGLIGENCE CLAIM

Another reason why the question of whether there is in solido liability between a seller and a manufacturer should not be decided at this point in the litigation is because a question of percentage responsibility including the manufacturer of the defective drywall will have to be presented to the jury regardless of the resolution of that legal issue.  In the Omnibus Complaints on file against INEX and North River, the plaintiffs have included allegations of negligence.  If that claim is to be resolved by the jury, Louisiana law requires that the jury determine the proportionate responsibility of all of those who caused the damage, in whole or in part, regardless of whether they are all parties to the suit.

La. Civ. Code Art. 2323(A) provides that in "*any action for damages* where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to [the loss] shall be determined, regardless of whether the person is a party to the action or a nonparty . . ." (emphasis added).  If that were not clear enough, Article 2323(B) repeats that the comparative responsibility allocation  applies "*to any claim for recovery of damages for injury, death, or less asserted under any law or legal theory of liability, regardless of the basis of liability"* (emphasis added).

The application of this statute to a redhibition claim will be discussed in the next section. If the question of the negligence of INEX or North River is to be submitted to the jury, then the jury must also determine the percentage of fault for the manufacturer of the drywall as wall as of the seller.   A pretrial ruling on the question of in solido liability between a seller and a manufacturer will not avoid the need for the submission of a percentage responsibility question

to the jury.  This is another reason why the Court should defer ruling on the Motion in Limine until a point at which the issue will affect the remaining issues to be resolved in the case.

### IV.  THE ISSUE OF IN SOLIDO LIABILITY BETWEEN A MANUFACTURER AND A SELLER IS A MATTER OF CONFLICT BETWEEN LOUISIANA STATE COURTS

Since the adoption of the Louisiana comparative responsibility statute in 1996, Louisiana courts have split on whether a seller and manufacturer remain solidarily liable in redhibition. The Louisiana Supreme Court had an opportunity to resolve this issue in 2008, but chose not to address the question.  Despite the suggestion to the contrary in the PSC's Motion in Limine, it is best uncertain as to whether in solido liability exists between a seller and a manufacturer or a defective good.

### A.  THE EVOLUTION OF REDHIBITION IN LOUISIANA

#### 1.  Historical Roots

The doctrine of redhibition can be traced to early Roman law, which required sellers to stipulate or warrant to buyers that the seller's goods were free from defects.  *Aucoin v. Southern Quality Homes, LLC*, 984 So.2d 685, 691 (La. 2008).  *See also* Spurgeon, *All For One or Every Man for Himself?  What is Left of Solidarity in Redhibition*, 70 LA. L. REV. 1227, 1230-31 (2010).[2]  One of the essential attributes of the Roman law of redhibition was that the seller's lack of knowledge of the defect was not a defense.  *Id.* at 1231, *citing* Murray, *Implied Warranty Against Latent Defects: A Historical Comparative Law Study*, 21 LA. L. REV.  The doctrine of redhibition was incorporated into the French Civil Code in 1804, and specifically deemed an indivisible obligation in the French Civil Code.  Spurgeon, *supra* at 1233, *citing* Stein, ROMAN

---

[2] While this article is instructive on the history of redhibition and the current split in authority between intermediate Louisiana appellate courts on whether redhibition imposes in solido liability between a manufacturer and a seller, the author is far from objective.  Anything that supports the author's view is treated as sage and insightful, while anything case decision or ruling that is contrary to the author's opinion is treated as irresponsible dicta.

LAW IN EUROPEAN HISTORY, 114-15 (1999) *and* Levasseur, LOUISIANA LAW OF OBLIGATIONS IN GENERAL: A PRECIS § 3.3.2 (2006).

While most of the Civil Code provisions on redhibition have existed since the Civil Code of 1870 and prior (Spurgeon, *supra* at 1233), there are three important distinctions between the Louisiana doctrine of redhibition and its Roman and French ancestors.  First, La. Civ. Code Art. 2520 does not require a seller to expressly warrant that a good is free from defect, it imposes that warranty as a matter of law.  *See McEachern v. Plauche Lumber & Construction Co.*, 57 So.2d 405, 407 (La. 1952) ("The obligation of the warrantor to defend an action involving hidden defects, as well as his obligation to defend against eviction, are obligations imposed on the seller by law through the clear provisions of the Revised Civil Code . . .").  Second, while a seller's lack of knowledge of the defect is not a total defense to a redhibition claim, a seller who acts in good faith, without knowledge of the defect, has his or her liability limited to the return of the purchase price of the good.  La. Civ. Code Art. 2531.  On the other hand, a seller who knows of the defect but fails to disclose the defect to the seller is obligated for the return of the purchase price, expenses occasioned by the sale, damages, and attorney's fees.  La. Civ. Code Art. 2545. A manufacturer is deemed to know of the existence of the defect and is always liable for full damages and attorney's fees to the purchase.  La. Civ. Code Art. 2545.  Third, there is no provision in the Civil Code that expressly imposes in solido liability between the manufacturer and the seller.

## 2.  *Early Louisiana Supreme Court Decisions*

Although the existence of redhibition actions is of ancient vintage, it is only fairly recently that the nature of the obligation of a seller and a manufacturer to a consumer have been discussed.  While Plaintiffs' Motion in Limine suggests that a manufacturer and seller are solidarily liable, the case law is far from clear on that issue.

In 1952, the Louisiana Supreme Court held that the purchaser of a house did not have a solidary action against all persons in the chain of title to the purchaser. *McEachern v. Plauche Lumber & Const. Co.*, 220 La. 696, 57 So.2d 405 (1952). Twenty years later, in *Media Production Consultants, Inc. v. Mercedes-Benz*, 262 So.2d 377, 381 (1972), the Louisiana Supreme Court summarily stated that the distributor and seller of a car were solidarily liable to the car's purchaser for redhibitory defects, although the *Media Productions* decision contains no analysis of the nature of the liability and made no reference to *McEachern*. Two years after that, in *Rey v. Cuccia*, 298 So.2d 840, 845 (La.1974), the Louisiana Supreme Court held that the purchaser of a defective product could enforce a redhibition claim against both the manufacturer and the seller.

None of those cases undertook any analysis of the nature of in solido obligation or whether it should apply in a redhibition suit against a seller and a manufacturer. The Louisiana Supreme Court expressly refused to address the issue only four years ago, in *Aucoin v. Southern Quality Homes, LLC*, 984 So.2d 685 (La. 2008).

## B.  STATUTORY CONSIDERATIONS

There are multiple provisions of the Civil Code that impact the issue of whether a manufacturer and a seller are solidarily liable in redhibition.

### 1.  *The Relationship Between Seller and Manufacturer*

La. Civ. Code Art. 1796 provides that "Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." Article 2324 establishes that persons who conspire to commit an intentional or willful act are "answerable, in solido . . . for the damage caused by such act." However, under Article 2324(B), if liability is not solidary under 2324(A), "then liability for damages caused by two or more persons shall be a joint and divisible obligation." An obligation is divisible "when the object of

the performance is susceptible of division," and an obligation is indivisible "when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division."  La. Civ. Code Art. 1815.  "When a joint obligation is indivisible, joint obligors or obliges are subject to the rules governing solidary obligors or solidary obligees."  *Id.*

One statutory provision that has not been addressed in the case law is La. Civ. Code Art. 2531, which specifically addresses the liability in redhibition of a good faith seller:

> A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails so to do, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.

A manufacturer, however, is presumed to know of the defect and is always responsible for damages and attorney's fees in a redhibition claim.  La. Civ. Code. Art. 2545.

### 2. The Louisiana Comparative Responsibility Statute

Against this background, the Louisiana legislature enacted a comparative responsibility statute in 1996.  La. Civ. Code Art. 2323(A) provides that in "***any action for damages*** where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to [the loss] shall be determined, regardless of whether the person is a party to the action or a nonparty . . ." (emphasis added).  If that were not clear enough, Article 2323(B) repeats that the comparative responsibility allocation  applies "***to any claim for recovery of damages for injury, death, or less asserted under any law or legal theory of liability, regardless of the basis of liability***) (emphasis added).

The comparative responsibility statute was part of a significant changes to Louisiana law brought about by the Louisiana Legislature in the First Extraordinary Session of 1996. Marist and Galligan, *Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law*, 71 Tul. L. Rev. 339, 341 (1996).  The effect of the 1996 legislative package was to

"drastically restrict tort liability, limit absolute liability, abolish punitive damages in hazardous-substance cases, and ***abolish solidarity as Louisiana law had come to know it***." *Id.* (emphasis added).   In their seminal article analyzing these changes, Professors Maraist and Galligan recognized that because of the "breadth of the language of the new Article 2323(B), ***comparative fault may apply*** not only *to* a tort action but to a contract claim (including ***redhibition***) . . . . *Id.* at 382 (emphasis added)

## C.  REDHIBITION LAW SINCE 1996

The enactment of comparative responsibility has resulted in a conflict in the intermediate Louisiana courts of appeals since 1996.  Some courts have concluded that because comparative responsibility applies to all claims, regardless of legal theory, redhibition no longer involves solidary liability between a seller and a manufacturer and their respective liability must be determined at trial.  Other courts have concluded that the comparative responsibility statute does not apply to redhibition claims and have continued to follow the 1972 decision in *Media Production*.  The conflict in the case law is discussed in Plaintiffs' Motion in Limine at p. 3-5 and in the  Spurgeon article cited earlier at p. 1240-48.

Not surprisingly, some courts have taken the language of Article 2323 requiring that comparative fault be applied to "any action for damages" and to all claims "asserted under any law or legal theory of liability, regardless of the basis of liability" to mean just what it says.  The first case to do so was *Petroleum Rental Tools, Inc. v. Hal Oil & Gas Co.*, 701 So.2d 213 (La. App. 1997).

*Petroleum Rental* arose out of the downhole failure of both pipe casing and workstring. The procedural history of the case is somewhat unclear, but after an the court of appeals issued on unpublished opinion affirming a judgment against the Petroleum Rental (the supplier of the workstring) and Bridges (a representative of the operator of the well), several parties petitioned

---

the Louisiana Supreme Court for writs. The writs were granted, and the court of appeals was directed to consider the percentage of fault of Tadlock, the manufacturer of the casing, even though it was not a party to the suit. 683 So.2d 253, 254 (La. 1996).

On remand, the court of appeals held that, even though the case had originally been tried before the comparative responsibility statute in Article 2323 had become effective, the court was bound by an earlier decision which had held that the statute was to be applied retroactively. 701 So.2d at 217. On the issue of whether proportionate responsibility was appropriate in a redhibition claim, the court of appeals easily concluded that an allocation of fault was mandatory:

> In the instant consolidated cases, the basis of Tadlock's liability was the redhibitory defect in the casing it sold to Hal Oil. Under the pertinent statutes and jurisprudence, knowledge of the latent defect in the used casing can be imputed to Tadlock, as a seller that processed the used casing for resale. As such, Tadlock was responsible for general damages that stemmed from the buyer's use of the defective casing, which in this case was the loss of the well. See, *Foust v. McKnight*, 95-2008 (La. App. 1st Cir. 5/10/96), 675 So.2d 1147; writ denied, 96-2117 (La. 11/8/96), 683 So.2d 277; *MTU of North America, Inc. v. Raven Marine, Inc.*, 603 So.2d 803 (La.App. 1st Cir.1992), writ denied, 612 So.2d 55 (La.1993). **Therefore, we conclude that Tadlock's liability for the redhibitory defect qualifies as "fault" under Article 2323 A. To hold otherwise would be to fail to give effect to the phrase in Article 2323 B, "regardless of the basis of liability."**
>
> We read the remand as a mandate to apportion fault among Tadlock, Bridges, and Petroleum.

701 So.2d at 217-18.

The same result was reached in *Hampton v. Cappaert Manufactured Housing, Inc.*, 839 So.2d 363 (La. App. 2003), in which the unhappy purchasers sued the manufacturer and the seller of a mobile home. The claims were brought "jointly, severally and in solido." *Id.* at 364. The buyers nonsuited their claim against the manufacturer and re-filed a suit against it in a separate parish. *Id.* They then settled the claim against the manufacturer for $15,000. The seller

then tried to argue that settlement with the manufacturer extinguished the seller's obligation because the liability to the buyers was in solido.  The court rejected that argument:

> We do not accept Farr's claim, based on *Duplechain v. Clausing Machine Tools,* supra, that manufacturers and retailers are held liable in solido. Duplechain relied on La. C.C. art. 2324 which, since 1979, has reserved solidary liability only for conspirators to an intentional tort. Solidarity can arise only from a clear expression of the parties' intent or from the law. La. C.C. art. 1796. The party claiming solidary liability between two or more parties has the burden of proving it. *Davis v. Burlingame*, 607 So.2d 853 (La.App. 2 Cir.1992), writ denied, 612 So.2d 84 (1993). Apart from allegations, neither Farr nor the Hamptons have proved a conspiracy.
>
> If liability is not solidary pursuant to a conspiracy to commit an intentional or willful act, then liability is joint and divisible. La. C.C. art. 2324 B. On the facts alleged (that Cappaert manufactured a defective mobile home, and that Farr further damaged it by negligent installation), the defendants' liability is joint and divisible. Each joint obligor is bound to perform only his portion of the obligation.

*Id.* at 367.

There are cases that have continued to analyze the relationship between manufacturer and seller in terms of solidary liability after the enactment of the comparative responsibility statute in 1996, but those cases have usually not considered the impact of the 1996 statutory change.  For example, in *LeGros v. Arc Services, Inc.*, 867 So.2d 63 (La. App. 2004, the court  concluded that the holdings of a few cases from the 1970s, including *Media Pro. v. Mercedes-Benz* and *Rey v. Cuccia*, discussed earlier,

> have been incorporated into the supporting text of La. Civ. Code art. 2545 in Revisions Comments (c) and (d). As such, these comments represent the accepted interpretation of article 2545 and its effect in conjunction with established Louisiana jurisprudence and they have the effect of creating a presumption of solidary liability between manufacturers and sellers in redhibition actions. After thirty years these holding still represent good law, and we confirm their legitimacy here.

*Id.* at 66.

The *LeGros* court made no reference to the enactment of the comparative responsibility statute, so its holding is highly questionable.  Its statements on in solido liability are largely

dicta, as the real issue in that case was prescription of a redhibition claim against the manufacturer.  *See id.*  Because *LeGros* did not address or consider the allocation of responsibility between a seller and a manufacturer in redhibition, it cannot be interpreted as rejecting the application of comparative responsibility.[3]

A similar case is *Merlin v. Fuselier Const. Inc.*, 789 So.2d 710, 717 (La. App. 2001), which declined to apply comparative responsibility in a redhibition claim solely on the authority of the 1998 decision in *Hostetler v. Gray & Co., Inc.*, 523 So.2d 1359, 1368 (La. App. 1988). The opinion simply ignores the 1996 amendments to Article 2323.

Only two decisions have directly held that the comparative responsibility scheme does not apply in redhibition.  One is *Touro Infirmary v. Sizeler Architects*, 900 So.2d 200 (La. App. 2005), in which a nursing home brought claims against the architects who designed the building and the manufacturer of vinyl wall covering.   The wall covering manufacturer argued that the "plain language" of Article 2323 "is controlling and allows for comparative fault to be applied to reduce liability in a redhibition claim."  *Id.* at 205.  The court disagreed, relying primarily on the 1988 *Hostetler* decision in support of its holding.  The court did not explain why it relied on a 1988 decision to construe a 1996 statute.

The second case reaching that same conclusion was *Aucoin v. Southern Quality Homes*, 953 So.2d 856, (La. App. 2007), *aff'd in part and rev'd in part on other grounds*, 984 So.2d 685 (La. 2008).  *Aucoin* involved a suit by the buyer of a mobile home against the manufacturer and seller.  The trial court determined that the defects in the mobile home existed at the time it left the manufacturer and held the manufacturer and seller solidarily liable to the buyer (the seller

---

[3] There are two other decisions that have cited *LeGros* for the proposition that a seller and manufacturer are solidarily liable without addressing whether the comparative responsibility statute has any application to that relationship.  *See Landry v. Forest River, Inc.*, 953 So.2d 1046, 1050 (La. App. 2007) (citing *LeGros* without discussing whether Article 2323 applies to the determination of liability of a seller or a manufacturer) *and Isabelle v. Bayliner Marine Corp.*, 2006 WL 3187573, *12 (La. App. 2006) (same).  As neither of those cases considered the application of Article 2323 to claims between a seller and a manufacturer, those cases, like *LeGros*, provide no support for the position taken by the PSC in its Motion in Limine.

filed for bankruptcy prior to trial).  984 So.2d at 689.  The court of appeals affirmed the trial court's judgment and rejected the manufacturer's argument that the comparative responsibility statute applied to redhibition.  Instead, the court of appeals relied on La. Civ. Code Art. 2545, which defines the liability of a seller who knows of a redhibitory defect.  *Id.* at 689-90.  When the Louisiana Supreme Court granted writ in *Aucoin*, many observers thought the conflict would be resolved.  The Supreme Court had other ideas, however, and avoided the issue.

The Supreme Court recognized that in *Media Production* and *Rey v. Cuccia* the Court had indicated that a seller and manufacturer were solidarily liable in redhibition, and also noted that the intermediate appellate courts had split on the issue since the adoption of the comparative responsibility statute.  *Id.* at 692-93; n. 12.  The Supreme Court added, however, that "[W]e need not reach the correctness of that issue, as we find that the manufacturer is independently liable under those cases for redhibitory defects that existed at the time of delivery to the seller."  In a later footnote, the Court added that neither *Media Productions* nor *Rey v. Cuccia* should be read broadly in favor of solidary liability and noted that *Media Productions* was not actually a redhibition case.  *Id.* at 693 n. 13.

## D.  THIS COURT NEED NOT RESOLVE THE CONFLICT – BUT IF IT DOES, THE MOTION IN LIMINE SHOULD BE DENIED

For the reasons discussed earlier, it is not necessary for this Court to rule on the issue raised in the PSC's Motion in Limine to try the issues that the Court has indicated will be included in a November 2012 trial.  First, because Plaintiffs intend to seek the submission of a negligence claim, the issue of comparative responsibility between INEX and the manufacturer or manufacturers of the drywall will have to be submitted.  Second, the liability of INEX, if any, to Plaintiffs as well as the right of INEX to recover any damages assessed against it from the manufacturer or manufacturers, will be determined by the redhibition statute.  Those issues can

be presented to and resolved by the jury without any need to rule on the abstract issue of law the PSC has presented in its Motion in Limine.

If the Court concludes that it is necessary to wander through the bramble bush that engulfs the relationship between comparative responsibility and redhibition liability in Louisiana, the existing case law provides no clear guidance. Two cases have expressly held that the 1996 comparative responsibility statute applies in redhibition cases, and two have not – although the Louisiana Supreme Court took one of those cases for review and then decided it was not necessary to resolve the issue. Some courts have blindly relied in pre-1996 authority and have not analyzed what the Louisiana Legislature meant when it amended Article 2323 in 1996. Perhaps some insight can be inferred from the fact that the Supreme Court had an opportunity in *Aucoin* to affirm the ruling the PSC is asking this Court to make, but declined to do so. If the Louisiana Supreme Court found that to be the appropriate resolution, perhaps this Court should do likewise.

On an independent analysis, the starting point – and, on this issue, the ending point – must be the language of Article 2323 as it was enacted in 1996. La. Civ. Code Art. 2323(A) requires that percentage fault must be found in "***any action for damages*** where a person suffers injury, death, or loss," even when one or more of the parties causing the loss is not a party to the suit. That broad application is reiterated in Article 2323(B) which mandates that comparative responsibility allocation applies "***to any claim for recovery of damages for injury, death, or less asserted under any law or legal theory of liability, regardless of the basis of liability***") (emphasis added).

On its face, the reach of the statute admits of no exception. If the Louisiana Legislature had intended to exclude redhibition statutes, or any other specific claim, from the application of comparative responsibility, it would have done so. It chose not to exclude redhibition or any

other claim from Article 2323.  If the Legislature had intended to limit the statute to claims that arise ex delictu, it could have included a provision so stating.  Instead, the Legislature expressly and unhesitatingly chose to require that the determination of comparative responsibility be made in any action for damages, regardless of the basis of liability.

This Court can grant the PSC's Motion in Limine only if the Court undertakes to rewrite Article 2323, either by striking the language that applies the statute to all claims and all theories of liability, or by inserting into the statute an exception the Legislation declined to include.  Courts should not "rewrite a statute because they might deem its effects susceptible of improvement," *McLaughlin v. Lindemann, Herberger & Shaunbaum*, 853 F.2d 1307, 1310 (5th Cir.1988), *quoting Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984).  Federal courts do not have the authority to rewrite statutes even if it would be necessary to do so to avoid a finding that the statute is unconstitutional.  *Love v. Foster*, 147 F.3d 383, 388 (5th Cir.1998); *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159, 172 (5th Cir.1978) (en banc), aff'd. 445 U.S. 308 (1980).

A holding that Article 2323 is applicable in redhibition cases is not only required by the express language of the statute, it is consistent with the general redhibition statutes.  First, the liability of a manufacturer in redhibition and a seller in redhibition are not always the same.  A manufacturer is presumed to know of all redhibitory defects in the product when it leaves the manufacturer's possession, while no such presumption is applied to a seller.  La. Civ. Code Art. 2545.  If a seller does not know of the defect, its liability to a purchaser is limited to the purchase price of the good.  La. Civ. Code Art. 2531.

Second, a manufacturer's obligation to a purchaser is independent from the seller's obligation to a purchaser, at least for defects caused by the manufacturer.  *Aucoin*, 974 So.2d at 693.  It is somewhat illogical to talk about solidary obligation when the liability of a

manufacturer of a defective product and an innocent seller of the product have vastly different liability to a purchaser of the product.

Third, even when a seller sells a product with knowledge that it has a defect caused by the manufacturer, that fact alone does not impair the seller's right of indemnity against the manufacturer. The public policy that underlies the redhibition statute is that a manufacturer who is responsible for a defective product will ultimately bear all responsibility for the harm caused by the defect, whether the liability is directly to the purchaser or through the purchaser's claim against the suit. The inherent purpose of the redhibition statutes is not to make a manufacturer and seller equally responsible and therefore subject to equal responsibility as among the two of them. The purpose of redhibition is to ensure that the seller does not bear the ultimate responsibility for the wrongful conduct of the seller, and the application of Article 2323 to a redhibition claim accomplishes that goal.

## CONCLUSION

In order to determine the liability of INEX, if any, to the Plaintiffs, and in order to determine the liability of Knauf or Taishan to INEX, the issue of whether INEX and the manufacturers have in solido liability is not a determination that needs to be made. The issue is one that has befuddled and confused Louisiana state courts since the amendment to the comparative responsibility statute in 1996. Rather than jump into such an unsettled and conflicting area of state law, North River requests that the Court deny, or alternatively defer a ruling on, Plaintiff's Motion in Limine. If the Court concludes that it is necessary and appropriate to reach the merits of the issue, the Motion in Limine should be denied.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

By:      _____*/s Eric B. Berger*_____
   BRIAN S. MARTIN, ESQ.
   KEVIN RISLEY, ESQ.
   RODRIGO "DIEGO" GARCIA, JR., ESQ.
   One Riverway, Suite 1600
   Houston, Texas 77056
   Phone: (713) 403-8282
   Fax:  (713) 403-8299
   bmartin@thompsoncoe.com


   LOBMAN CARNAHAN BATT ANGELLE
   & NADER

   SIDNEY J. ANGELLE, ESQ.
   La. Bar No. 1002
   ERIC B. BERGER, ESQ.
   La. Bar No. 26196
   400 Poydras Street, Suite 2300
   New Orleans, Louisiana 70130
   Phone: (504) 586-9292
   Fax:    (504) 586-1290
   sja@lcba-law.com
   ebb@lcba-law.com

   ATTORNEYS FOR THE NORTH RIVER
   INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on July 23, 2012.

_____*/s Eric B. Berger*_____
ERIC B. BERGER