UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | : | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO ALL CASES.**

## ORDER & REASONS

Before the Court are two motions arising from the MDL claims against North River Insurance Company: (1) North River Insurance Co.'s Motion to (A) Lift the Stay as to Certain Parties, (B) Consolidate Certain Claims, and (C) Realign Parties (R. Doc. 14577); and (2) Plaintiffs' Motion in Limine regarding the appropriate scope of damages under redhibition (R. Doc. 14665). The Court received briefing from the parties and heard oral arguments at the July 2012 Monthly Status Conference. The Court has now considered these arguments in light of the applicable law and relevant facts and is ready to rule. Accordingly, for the following reasons, IT IS ORDERED that North River's Motion is DENIED, and Plaintiffs' Motion is DENIED WITH THE RIGHT TO REFILE AT A LATER, APPROPRIATE TIME.

**I.     BACKGROUND**

The North River Insurance Company is a defendant in two omnibus class action complaints in the MDL, *Silva v. Arch Insurance Co.,* Case No. 09-8034, and *Amato v. Liberty Mutual Insurance Co.,* Case No. 10-923. The claims against North River arise from its role as an excess insurer for Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, LLC (collectively "Interior Exterior"), co-defendants and suppliers of Chinese drywall, during the

-1-

time period in question when Chinese drywall was sold, distributed, and installed into homes.[1]

In the spring of 2011, Interior Exterior and its primary insurers, Arch Insurance Co. and Liberty Mutual Insurance Co., entered into a class action settlement agreement.  *See* (R. Doc. 8628-3).  The Interior Exterior Class Settlement Agreement provides class members access to compensation from a fund representing the full policy limits of Arch and Liberty, as well as an assignment to pursue North River for the $72,00,000 of funds under its excess policies.  *See id.*  On May 13, 2011, the Court preliminarily approved the Settlement Agreement and entered a stay on the litigation of claims against the settling defendants, pending final approval of the Settlement Agreement.  *See* (R. Doc. 8818).  The final fairness hearing on the Settlement Agreement is scheduled for November 2012.  *See* (R. Doc. 14560-2).

North River declined to participate in the Interior Exterior Settlement Agreement.  North River's declared defenses to its lack of participation are that Interior Exterior is not liable for the damages caused by the Chinese drywall and Interior Exterior's primary insurance policies have not been exhausted, leaving its own excess coverage not yet triggered.

Following the Interior Exterior Settlement Agreement, the Knauf Defendants, manufacturers of the majority of Chinese drywall with which Interior Exterior was involved, entered into a class settlement agreement with the Plaintiffs' Steering Committee ("PSC").  *See* (R. Doc. 12061-5).  On January 10, 2012, the Court preliminarily approved the Knauf Settlement Agreement and stayed litigation against the Knauf Defendant pending final approval of the Agreement.  *See* (R. Doc. 12138).   The finalization of the Knauf Settlement Agreement is

---

[1] See *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2012 WL 92498, at *1-2 (E.D. La. Jan. 10, 2012), for a more complete history of this matter.

conditioned upon the participation and contribution of homebuilders, installers, suppliers, and these entities' insurers, including North River, in the Prospective Insurer Agreement. *See* (R. Doc. 12061-5). Despite numerous attempts by the PSC and other parties over the course of the litigation, North River stands by its defenses and has chosen to not participate in the Interior Exterior Settlement Agreement or the Prospective Insurer Agreement.

On March 19, 2012, the Court lifted the stay on litigation against North River to allow the plaintiffs through the PSC to propound discovery on North River, as well as schedule a mediation and trial against North River. (R. Doc. 13024). Thereafter, the PSC began to propound discovery on North River and notice depositions. On May 15, 2012, the Rule 30(b)(6) deposition of North River's corporate representative took place in New Jersey. Then, on May 31, 2012, a mediation of the claims against North River occurred in Chambers. After approximately five hours of attempted mediation, it became apparent that a resolution would not be reached. *See* (R. Doc. 14558). Accordingly, the Court ordered a second Rule 30(b)(6) deposition of North River's corporate representative on June 12, 2012, and a bellwether trial against North River commencing on November 26, 2012.

In June 2012, the Court held status conferences to discuss the North River-related claims and determined that a bellwether trial would be focused on the liability of Interior Exterior, as the insured of North River, and whether Interior Exterior was a good-faith or bad-faith seller, leaving the issue of damages to be resolved at a later date. *See* (R. Docs. 14686, 15229). On July 10, 2012, the Court met with counsel and directed each side to select six cases to discover, for a total of 12, and indicated that the bellwether trial cases would be selected from this pool after the completion of discovery and stipulations. *See* (R. Doc. 15238). The Court held another

status conference on July 17, 2012, and was informed that case selection was underway and the parties were meeting to work out stipulations. *See* (R. Doc. 15386).

## II. NORTH RIVER INSURANCE CO.'S MOTION TO (A) LIFT THE STAY AS TO CERTAIN PARTIES, (B) CONSOLIDATE CERTAIN CLAIMS, AND (C) REALIGN PARTIES

As noted above, North River filed a Motion to (A) Lift the Stay as to Certain Parties, (B) Consolidate Certain Claims, and (C) Realign Parties. (R. Doc. 14577).

### A. Present Motion

#### 1. *North River*

North River filed the present Motion seeking to: (1) lift all existing stays in favor of Certain Knauf Entities, Interior Exterior, Arch, and Liberty Mutual so that these parties can participate fully in discovery and the trials; (2) consolidate the case in which the bellwether trial will occur with Case No. 11-1670, *The North River Insurance Co. v. Knauf International, GmbH*, in which North River has alleged claims against Certain Knauf Entities; and (3) realign the parties to make Certain Knauf Entities plaintiffs, because they are the real parties in interest in any claims against North River. According to North River, the failure of the Court to do any of the above will result in an incomplete, inefficient, procedurally flawed, and wasted trial.

North River raises the following arguments in support of its Motion. First, North River argues that the Louisiana direct action statute requires that Interior Exterior be party to the bellwether trial.

Second, North River argues that Arch and Liberty must be parties to the bellwether trial because as the primary insurers of Interior Exterior, both Arch and Liberty's insurance policies must be exhausted before North River is liable under its own excess policies issued to Interior

Exterior.

Third, North River argues that Knauf must be party to the bellwether trial because any liability assessed against North River would be derivative and arise only because of its status as Interior Exterior's excess liability insurer, which in turn entitles North River, under the Louisiana redhibition statute, to pass its liability through to Knauf.  According to North River, by subjecting it to liability without providing North River the right to seek relief against Knauf would deprive it of due process and be fundamentally unfair.

Fourth, North River argues that its case filed against Knauf should be consolidated with the bellwether case or cases, because all cases have the same core issues, liability facts, and determination of damages.  According to North River, a consolidated trial will conserve judicial resources and prevent inconsistent verdicts.

Fifth, North River argues Knauf should be realigned as a plaintiff against North River for the bellwether trial, because the Knauf settlement agreement places Knauf in the position of being the only party which would benefit from recovery from North River.

        2.     *Knauf*

Knauf filed two responses in opposition to North River's Motion.  (R. Docs. 14615, 15113).  Knauf first notes that the Court previously denied a similar motion filed by North River on the basis that lifting the stay for North River to pursue its claims against Knauf is not appropriate at this time since the Knauf settlement agreement is in the process of approval and North River is not denied due process simply because it will have to wait, along with numerous other parties, to pursue its claims against Knauf.

Second, Knauf argues that it is not required to be present for the liability of North River

to be established, because under Louisiana's redhibition statute, a fact-finder must apportion fault among all persons liable whether or not the person is a party or nonparty.

Third, Knauf argues there is no basis to consolidate North River's claims against Knauf because all claims against Knauf are currently stayed.

Fourth, Knauf argues that there is no basis to realign it with the plaintiffs because Knauf does not have the same interests as plaintiffs, and without North River's participation in the Knauf Settlement Agreement, the entire Agreement could be compromised.

Fifth, Knauf notes that North River has not yet served KPT, Knauf's wholly-owned subsidiary, thus KPT cannot be a party to any trial involving North River.  Further, it alleges that injecting the non-KPT Knauf entities into the trial will substantially complicate and unnecessarily lengthen the trial.

### 3. *Liberty Mutual*

Liberty Mutual also filed a Response in opposition to North River's Motion.  (R. Doc. 15206).  Liberty Mutual first argues that insurance issues, including the exhaustion of its policy limits, are irrelevant to the sole issue set for trial, namely, Interior Exterior's liability.  Second, Liberty Mutual argues that by putting up all of its policy limits for the benefit of the class members to the Interior Exterior Settlement Agreement it has exhausted its limits, leaving the exhaustion issue resolved.

### 4. *PSC*

The PSC also filed a Response to North River's Motion.  (R. Doc. 14604).  The PSC first states that it does not oppose North River's request that the stay be lifted to allow Interior Exterior to be joined to the bellwether trial.  However, the PSC disagrees that Liberty and Arch

should also be joined, arguing that their participation in the Interior Exterior settlement agreement is evidence that their policy limits have been exhausted.  The PSC also opposes lifting the stay to include Knauf in the bellwether proceedings on the basis that Knauf is not a party in the *Amato* case, KPT has not yet been served in North River's case, and Knauf is not aligned as a plaintiff against North River.

     5.    *Arch*

Arch Insurance Company filed a Response in opposition to North River's Motion, adopting the Response of Liberty.  *See* (R. Doc. 15456).

**B.**    **Law & Analysis**

The Court identifies three areas of contention in North River's Motion: (1) whether Interior Exterior should be joined in the bellwether proceedings involving North River, (2) whether Arch and Liberty should be joined in the bellwether proceedings involving North River, and (3) whether Knauf should be joined in the bellwether proceedings against North River, whether North River's case against Knauf should be consolidated with the bellwether cases, and whether Knauf should be realigned as a plaintiff in these proceedings.  Before addressing these areas it is necessary to focus on the purpose of this bellwether exercise.  Its purposes is not to resolve all issues in this litigation.  Instead, its purpose is to discretely consider the liability vel non of Interior Exterior.  An answer to this question, it is hoped, will allow the parties to appropriately evaluate North River's exposure, if any, so that they can make some informed decisions on North River's participation, if any, in the global resolution of the matter.  The Court will now address each issue by party in turn as follows.

     1.    *Interior Exterior*

Because the Court has already ordered that the discovery and bellwether trial on the claims involving North River will directly involve Interior Exterior as a defendant insured by North River, North River's first argument is mooted.

### 2. *Arch & Liberty*

The Court finds that Arch and Liberty are not required parties for the North River bellwether proceedings because exhaustion is not at issue. As noted above, the only issues for the initial trial are whether Interior Exterior is liable for its role in Chinese drywall and whether it was a good-faith or bad-faith seller. North River argues that the issue of exhaustion of the Arch and Liberty policies is still undetermined, but both Arch and Liberty have tendered the entirety of their policy limits for the benefit of the class in the Interior Exterior Settlement Agreement. Further, the North River bellwether trial is scheduled after the final fairness hearing on the Interior Exterior Settlement Agreement so the Court will know by the time of the trial whether the Settlement Agreement and the tendering of the insurance policies is finalized.

### 3. *Knauf*

The Court previously denied North River's request to lift the stay on the claims against Knauf on the basis that the time was not appropriate to lift the stay since the notice period for this Settlement Agreement was underway with the final fairness hearing set for November 2012. The Court found that lifting the stay would be "disruptive" and a "distraction" to the settlement process. Additionally, the Court found that delaying North River from pursuing its claims against Knauf does not violate due process or fundamental fairness since North River is not stripped of its rights, but merely momentarily delayed in pursuing them until the appropriate time in the MDL litigation. In fact, numerous other parties are also currently prevented from

pursuing their claims against Knauf due to the Court's stay. North River has not demonstrated why the Court's previous conclusions are no longer valid.

Additionally, North River has failed to serve KPT and Knauf is not a party to the *Amato* case, providing further reasons that Knauf should not be joined to the bellwether proceedings. North River argues that KPT has waived served by entering into and filing the Knauf Settlement Agreement and by participating in Court proceedings in furtherance of this Agreement. The Court recognizes, as noted by Knauf, that KPT reserved all jurisdictional defenses in the Knauf Settlement Agreement. *See* (R. Doc. 12061-5). The Court declines to address these arguments for purposes of the present Motion, but invites North River to present a separate motion and briefing on the issue.

During the hearing, the Court learned that the Plaintiffs are only pursuing their redhibition claims against Interior Exterior at the bellwether trials, waiving all other claims in these bellwether cases. The Court accepts this as a stipulation. This provides an additional reason that Knauf need not be joined to the bellwether since, as a manufacturer, it is presumed to be a bad-faith seller under redhibition. *See* La. Civ. Code art. 2545. The potential issue of apportionment of damages among Knauf and Interior Exterior under redhibition has been bifurcated by the Court. Assuming the Court determines that redhibition damages are governed by solidary liability, then no apportionment of damages to Knauf is necessary; assuming the Court finds redhibition damages are governed by contributory negligence, Knauf is not required to be a party during the liability stage of the bellwether trial since its presence is not necessary for the fact-finder to assess its percentage of fault. *See* La. Civ. Code art. 2323.

Additionally, assuming that North River and/or Interior Exterior has contribution and/or

-9-

indemnity claims against Knauf as a result of Interior Exterior being cast in liability under redhibition, these claims may be addressed at a later time, best if after it is determined whether Interior Exterior is a good-faith or bad-faith seller and the indemnity and/or contribution rights under the applicable scenario.  To include these issues in the bellwether trial on Interior Exterior's redhibitory liability is unnecessary and it complicates the discrete, but important purpose behind the trial of informing North River of its potential liability and position in the litigation.  As noted by North River, it has filed a separate case against Knauf, seeking indemnification; this case on its own could serve as the proper, separate vehicle for addressing indemnity.

Also at the hearing on the Motion, Knauf presented evidence that its contract with Interior Exterior requires arbitration.  North River responded by arguing that this arbitration provision raises an affirmative defense.  The Court finds that whether or not the North River or Interior Exterior claims against Knauf are required to be arbitrated is another separate issue which is not to be resolved in conjunction with the present Motion.

The Court also learned at the hearing that the majority of potential cases to be tried at the bellwether trials involve Chinese drywall manufactured by the Taishan defendants.  It would be premature to order Knauf to participate in the bellwether trial before it is determined whether the Chinese drywall at issue in the trial was even manufactured by the Knauf Defendants.

For these same reasons, it is also not appropriate to consolidate North River's case against Knauf with the bellwether litigation, and it is not appropriate to align Knauf as a plaintiff in the bellwether proceedings.

### III.  PLAINTIFFS' MOTION IN LIMINE

As noted above, Plaintiffs filed a Motion in Limine seeking a ruling from the Court as to whether damages under redhibition are to be calculated pursuant to solidary liability or comparative negligence.  (R. Doc. 14665)**.**

**A.	Present Motion**

*1.	Plaintiffs*

Plaintiffs filed the present Motion seeking a declarative ruling from the Court as to whether liability under redhibition law is *in solido* or comparative fault.  The relevance of this argument pertains to the Plaintiffs' redhibition claims against Interior Exterior which will be the subject of the bellwether trial.  Plaintiffs argue that based on the applicable law, the appropriate measure of damages for redhibition is *in solido*.

*2.	Interior Exterior*

Interior Exterior filed a Response in opposition to Plaintiffs' Motion.  (R. Doc. 15457). Interior Exterior first argues that Plaintiffs fail to address in their Motion the distinction between a good-faith and a bad-faith seller for purposes of solidary liability with a manufacturer.  It then goes on to argue that a good-faith seller is not solidarily liable with a manufacturer, but only liable for the repair, remedy, or correction of the defect, while, although the jurisprudence is not entirely clear on the issue, contributory negligence applies as between a bad-faith seller and a manufacturer.  Finally, Interior Exterior notes that it is unclear what relief is sought by the Plaintiffs here since the cases for trial have not yet been selected and there will be negligence and Louisiana Products Liability Act claims, both of which require comparative fault.

*3.	North River*

North River filed a Response in opposition to Plaintiffs' Motion.  (R. Doc. 15471).

North River first argues that if the PSC prevails on its Motion with the Court finding Interior Exterior and Knauf solidarily liable, then the Court is required to join Knauf to the trial involving the liability of Interior Exterior.  Second, North River argues that the issue raised by Plaintiffs' Motion is not implicated in the trial scheduled by the Court, because the Court has determined that only the liability, and not the damages, of Interior Exterior is the subject of this trial.  Third, North River argues that the issue of apportionment of damages for the redhibition claims should be deferred because the question of comparative negligence will be presented to the jury regardless since Plaintiffs bring negligence claims against Interior Exterior and the manufacturers.  Fourth, North River argues that because the issue of *in solido* liability between a manufacturer and seller is an unresolved matter among the Louisiana state courts, the Court should not make an *Erie* guess since it is not required at this juncture of the litigation.  Finally, North River argues that if the Court does decide that the issue raised by Plaintiffs' Motion need be addressed at this time, then the Court should find that the 1996 statutes on comparative negligence should be interpreted broadly and applied to the redhibition claims against Interior Exterior.

### 5. *Plaintiffs' Reply*

Plaintiffs filed a Reply in further support of their Motion.  (R. Doc. 15551-2).  Plaintiffs claim that because North River has affirmatively plead comparative fault allocation, indicating that North River plans to present evidence on the negligence of manufacturers at the bellwether trial, the Court should decide whether redhibition damages are apportioned by solidary liability or comparative negligence so the factual and legal scope of the evidence and discovery can be greatly reduced.  Additionally, Plaintiffs argue that the issues raised by North River in its

opposition, such as admissibility of certain evidence, whether Knauf's presence is required for solidary liability, and the right to indemnity under redhibition, are irrelevant to the present Motion and should be briefed or addressed independently. Finally, Plaintiffs reiterate their arguments in favor of the application of solidary liability.

### B. Law & Analysis

At the hearing, the Court learned that Plaintiffs intend to pursue only redhibition claims against Interior Exterior at the bellwether trial and waive all negligence claims. Redhibition is codified in Louisiana Civil Code article 2520, which provides that "[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold." This article then defines a redhibitory defect as follows:

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price. La. Civ. Code art. 2520.

Redhibition also requires that "[t]he thing sold...be reasonably fit for its ordinary use." La. Civ. Code art. 2524.

The scope of a non-manufacturer seller's damages under redhibition is based upon whether the seller of the product had knowledge of the redhibitory defect. Commonly, the dichotomy of a seller with knowledge as opposed to a seller without knowledge is referenced as, respectively, a bad-faith seller and a good-faith seller. The bad-faith seller rule is codified in article 2545 which provides,

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees....

The code provision governing the liability for a good-faith seller is Article 2531, which provides,

> A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails to do so, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.
>
> A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition. Any contractual provision that attempts to limit, diminish or prevent such recovery by a seller against the manufacturer shall have no effect.

The dispute at issue here is whether, when there is more than one allegedly responsible party under redhibition, specifically a manufacturer and a seller/distributor, damages are apportioned under the principle of solidary liability or comparative fault. North River argues that this issue is premature because, as noted above, the bellwether trial is limited to the liability of Interior Exterior, deferring the issue of damages until a later time. The Court finds this argument convincing. The issue raised by the Plaintiffs' Motion is more appropriately addressed at the time when it is relevant, such as during the damages stage of the litigation involving North River after the fact finder has determined whether or not Interior Exterior is liable and the type and extent of this liability.

## IV.   CONCLUSION

For the foregoing reasons IT IS ORDERED that: (1) North River Insurance Co.'s Motion to (A) Lift the Stay as to Certain Parties, (B) Consolidate Certain Claims, and (C) Realign Parties

(R. Doc. 14577) is DENIED; and (2) Plaintiffs' Motion in Limine (R. Doc. 14665) is DENIED WITH THE RIGHT TO REFILE AT A LATER, APPROPRIATE TIME.

New Orleans, Louisiana this 3rd day of August 2012.

/s/ Eldon E. Fallon
U.S. District Judge