IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION ) ) ) ) ) THIS DOCUMENT RELATES TO ) ALL CASES ) | MDL NO. 09-2047 SECTION L JUDGE FALLON MAG. JUDGE WILKINSON |

### RESPONSE OF THE NORTH RIVER INSURANCE COMPANY TO THE PSC'S MOTION TO COMPEL RESPONSES TO DISCOVERY, AS WELL AS DEPOSITIONS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

This Court has been absolutely clear about the scope of the trial currently scheduled for November 26, 2012:

> After extensive discussion involving all relevant parties, the Court directed the parties to *focus the trial on the liability of Interior Exterior Building Supply, as opposed to damages* . . . .

Minute Entry of June 13, 2012 (Ex. A, Document 14686).

> I'm really focused on liability of InEx in those trials.  That will then inform us as to the nature and intent of discovery.  *I really don't necessarily need discovery on damages if we are just doing liability*.

Transcript of June 13, 2012 Status Conference (Ex. B, p 44, *l*. 24 – p. 45, *l*. 3).

> After reviewing correspondence from the parties, the Court determined that *this trial should only involve the liability of North River's insured, Interior Exterior Building Supply, LP, and whether Interior Exterior was a bad-faith or good-faith seller.*

Minute Entry of June 29, 2012 (Ex. C, Document 15229).

The Court has set a very aggressive schedule for the trial, which is scheduled to begin in approximately 67 business days.  No depositions have been taken.  No experts have been

designated. No stipulations have been reached although North River and INEX provided proposed stipulations to the PSC on July 30, discussed them with the PSC on August 10 (at which time the PSC indicated agreement in principle with most of the them), and have gotten no further response from the PSC (despite their agreement to respond by August 17). The November 26 trial date will be attainable only if the parties focus on the trial issues, as the Court has repeatedly suggested.

Despite the substantial amount of necessary discovery that must be completed in a very short period of time, the PSC has decided to use discovery as a weapon of oppression rather than a tool for trial preparation. Instead of engaging in discovery as to whether or not INEX knew that the Chinese-manufactured drywall it was selling had a redhibitory vice, the PSC wants to focus the parties' discovery efforts on the financial condition of North River. Because the PSC has finally recognized that its efforts to manufacture a bad faith claim are impossible, the PSC now wants to focus on the collectability of any possible judgment against North River – even though the November trial will not result in a money judgment against North River, and even though North River's financial condition is a matter of public record and is widely reported by insurance rating agencies such as A.M. Best. The PSC's decision to ignore the facts of the November trial and to try to engage in postjudgment discovery prior to the first phase of a trial is a folly and a farce.

The purpose of pretrial discovery is to "allow the parties to develop fully and crystalize concise factual issues for trial . . . prevent prejudicial surprises and conserve precious judicial energies." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir.1973). The PSC's pretrial plan is just the opposite: to engage in unnecessary and burdensome discovery and to run to the Court any time another party will not accede to the PSC's demands, no matter how outrageous

___

they are. The PSC expects that the Court will allow the PSC to continue to abuse the discovery process.

Two examples will show the PSC's approach to discovery. First, when the PSC sent an e-mail indicating its intention to take depositions of fourteen persons or companies related to North River, North River responded in thirteen minutes asking what relevance those depositions had to the November trial. Ex. D. The PSC's reply asserted that it had no agreement with North River concerning the trial and the PSC was "entitled to do the discovery of NR whether there is a trial setting or not" because "Judge Fallon has instructed us to commence discovery." *Id.* The PSC went so far as to assert that "the trial against NR may be meaningless without the discovery" of fourteen depositions of people who have no personal knowledge of whether or not INEX was a good faith seller.[1] *Id.* On the other hand, however, when INEX sought a deposition from the PSC concerning Habitat for Humanity, which the PSC has repeatedly touted as a prize plaintiff and which is the alleged owner of the claims relating to three of the properties the PSC designated for the November trial, the PSC complained that it did not think that all of the areas of the deposition notice "are relevant or discoverable and certainly not applicable to the first phase trial of only a few homes." Ex. F. The PSC is willing to ignore the instructions on discovery from the Court when it suits its convenience, but then run for cover behind the scope of the trial when the PSC wants to oppose and delay discovery.

Second, when the PSC decided that it was unhappy that North River would not capitulate to the PSC's irrelevant and excessive discovery demands, the PSC requested a conference to discuss the discovery issues but would not identify what particular issues it wanted to discuss. Ex. G. When it became necessary for North River's counsel to ask that the conference be

---

[1] The e-mail from the PSC was so replete with factual misstatements that North River was compelled to respond setting forth the factual errors on which the PSC relied. *See* Ex. E.

postponed for one day, the PSC replied that it would agree to move the conference only if North River would agree to all of the discovery the PSC had issued. Ex. H. North River had to remind the PSC that the purpose of the meet-and-confer requirement was to try to resolve discovery differences, not to assert all-or-nothing ultimatums. Ex. I. Nonetheless, when the parties conferred, the PSC's only purpose was to confirm that North River would not respond to all of the outstanding discovery in the way the PSC desired. No attempt was made to reach any type of compromise.

North River believes that it is necessary and appropriate to provide this lengthy background so that the Court is aware that the present discovery dispute was, unfortunately, predictable and unavoidable. The PSC would rather spend its time preparing for trial through discovery by intimidation. North River, on the other hand, would rather spend its time preparing to try the issue of whether INEX was a good-faith seller of Chinese-manufactured drywall. The issue presently before the Court is which direction the Court will require discovery to take.

### 1. The Fourteen Depositions Demanded by the PSC are Irrelevant and Unnecessary

The fourteen depositions that the PSC now argues will make the November trial "meaningless," Ex. D, present a cogent example of the PSC's approach to discovery. Several months ago, before the November trial was scheduled, the PSC demanded the deposition of a corporate representative on a large number of issues. The PSC's proffered reason for the deposition was that it wanted to explore a possible bad faith claim, even though there was no pleading to support that discovery and the PSC could identify no facts that would support any claim of bad faith against North River.[2] The Court decided to allow the PSC to take one

---

[2] As North River explained to the Court at that time, there had been no exhaustion of the primary insurance available to INEX and there was no judgment or immediate threat of a judgment against INEX. In that situation, there can be no bad faith claim against North River as a matter of law. Those facts, and the absolute impossibility of a bad faith claim against North River, are still true at this time.

deposition in its effort to assert a bad faith claim, although the Court instructed the PSC to narrow the scope of its proposed deposition. Ex. J at 33-34. North River presented Agnes Reiss, an attorney who has been the primary claims handler of the INEX claims for several years, who testified in New Jersey on May 15, 2012, and who appeared for additional questioning in New Orleans on June 12, 2012. Russ Herman, who questioned Ms. Reiss, found her to be "cooperative," "responsive," and "patient," and to have a "very impressive background." There was no testimony of any type to support a claim for bad faith, and the PSC has not sought leave to assert any bad faith claims.

Now that the bad faith façade has collapsed, the PSC argues that it is worried that North River is a "shell corporation" that cannot satisfy any judgment against it, based on a recent amendment to the Supplemental Insurer Profile Form filed by North River. The PSC professes to be so concerned about the financial condition of North River that it now demands the depositions of eleven specific individuals, ranging from the chief executive officer of North River to the administrative assistant of Ms. Reiss, as well as corporate representatives of three companies who are related to North River but who are not parties to any proceeding in the MDL. The list of proposed witnesses requested by the PSC appears to consist of any person or company identified by Ms. Reiss during her deposition.

As a preliminary matter, the Supplemental Insurer Profile Form filed by North River made a very minor change to the corporate disclosure information required to be disclosed in the profile form. The Supplemental Insurer Profile Form did not change the immediate parent company of North River, nor did it change the ultimate parent company, Fairfax Financial Holdings Limited (Canada), which is listed on the Toronto Stock Exchange. The only change was in the identification of intermediate parent corporations between North River's immediate

parent and its ultimate parent. That minor revision to the Insurer Profile Form does not necessitate or justify any additional deposition, let alone fourteen more depositions.

Second, the financial condition of North River has nothing to do with "***the liability of North River's insured, Interior Exterior Building Supply, LP, and whether Interior*** Exterior ***was a bad-faith or good-faith seller.***" Ex. C. North River has repeatedly asked the PSC to explain why the depositions the PSC demands relate to the issues to be tried in November, and the PSC adamantly refuses to provide an answer.

Third, attached to the PSC's motion to compel is information that shows the absurdity of their demand to conduct discovery as to whether North River is a shell corporation. As part of their discovery responses, North River produced certain information about its corporate structure and financial information. That information is before the Court as pages 3-6 of Exhibit C to the PSC's Motion to Compel and shows that North River is licensed to do business in all fifty states and the District of Columbia. North River is therefore subject to the regulation of insurance commissioners in 51 jurisdictions. In Louisiana, insurance is regulated "in the public interest." La. Rev. Stat. 22:2. Each insurance company doing business in Louisiana, including North River, is required to file an annual financial report audited by a certified public accountant, La. Rev. Stat. 22:673. The Louisiana Commissioner of Insurance is charged by statute with the responsibility of reviewing the financial condition of all insurers doing business in Louisiana. La. Rev. Stat. 22:672. The Insurance Commissioner has enacted substantial and comprehensive regulations for his review of the financial condition of insurance companies. La. Rev. Stat. 22:675, La. Admin. Code Chapter 137, Regulation 98 – Annual Financial Reporting.

In addition to governmental oversight, insurance companies are evaluated by two independent rating agencies, A.M. Best and Standard & Poor's. North River is rated "A"

(Excellent) with a stable outlook by A.M. Best and is rated "A-" (Strong) with a positive outlook by Standard & Poor's. *See* Motion to Compel at p. 6 of Exhibit C. A.M. Best also places North River in Financial Size Category of Class XIII, *id.*, which indicates an adjusted policyholder's surplus of between $1.25 and $1.5 billion dollars.[3]

The PSC has not explained why it thinks it is in a better position to challenge the financial condition of North River than insurance regulators in fifty-one jurisdictions and two highly-regarded independent rating agencies. The real explanation, of course, is that the PSC is trying to use a minor and inconsequential change in North River's Insurer Profile Form to invent an issue that does not exist. The PSC cannot provide any reasonable justification for the huge discovery burden it wants to impose on North River, especially at this stage of the proceedings, in which the Court has repeatedly instructed the parties to prepare for a trial on the issue of whether INEX is a good faith seller of Chinese-manufactured drywall. The number of companies who appear in the chain of ownership of North River, the identify of persons who were involved in underwriting policies on behalf of North River many years ago, and the other topics which may be implicated in the fourteen depositions the PSC wants to take have absolutely nothing to do with the issue identified by the Court for the November trial.

North River recognizes that the Court has some discretion in controlling the scope of discovery. Given the ambitious trial schedule that the Court has imposed upon the parties, North River cannot conceive why depositions that are wholly unrelated to the November trial, and which may never be of any significance in these complex proceedings, are an appropriate use of discovery resources at this juncture of the litigation. Between homeowners of the twelve properties that have been designated for the November trial, contractors and drywall installers for those homes, customers of INEX who provided drywall to those homes, and expert witnesses

---

[3] *See* http://www.ambest.com/ratings/guide.asp

that both sides will name, North River estimates that more than fifty depositions need to be taken in the slightly-more than sixty working days that remain before trial. There is also a substantial amount of trial preparation that has to be done other than depositions. That is enough of a burden in preparation of the November trial. There is no legitimate basis for the depositions that the PSC wants to add to an already tight trial schedule. The depositions are requested solely for harassment and to try to distract North River from the valid and necessary trial preparation that must be completed in a relatively short time before trial.

The fourteen depositions demanded by the PSC are irrelevant to and unnecessary for the trial that is staring the parties in the face. The sound administration of discovery in this proceeding leaves no room for the harassing tactics employed by the PSC. The Court has already indulged the PSC's fantasies by allowing a fishing expedition on bad faith. That effort failed. It is time to put away the fishing poles and focus on the real work of getting ready for the trial the Court has set for November.

### 2. *The Eighty-One Requests for Admission are Not Due Yet and are Coercive and Unreasonably Burdensome*

The PSC originally served a set of eighty-one requests for admission on North River in early July. Shortly before the responses to those requests were due, the PSC abandoned them and filed an amended set of requests for admissions which changed the definition of Chinese-manufactured drywall, a term which occurred in almost every request for admission. North River's deadline to respond to those requests is not until August 30, 2012. In other words, the PSC is asking the Court to compel answers that are not even due at this time. Because the PSC would not agree, however, that North River was not required to respond to the original and

superseded requests for admission, North River filed objections to the original requests for admission on August 2, 2012. *See* Ex. D to the PSC's Motion to Compel.

The requests for admission propounded by the PSC have been the subject of previous discussions with the Court. The PSC has represented that it wants to streamline the trial and avoid burdening the jury with unnecessary evidence on matters that are not in contention. North River has informed the Court that it shares in that goal and that North River was willing to enter into appropriate stipulations to shorten the trial. Even though the PSC has repeatedly argued that it wants to use stipulations as much as possible, it has never offered any suggested stipulations to North River or the other parties involved in or affected by the November trial. Instead of proposing stipulations, the PSC chose to take this Court's findings of fact from the *Hernandez* trial (which of necessity were based on the unique factual record before the Court in that trial) and parse the findings into a lengthy series of requests for admission. Of the eighty-one requests for admission propounded by the PSC, only two requests identified INEX by name.

In an effort to achieve the use of stipulations that the PSC has indicated that it wanted, counsel for North River proposed eleven stipulations to the PSC and other interested parties on July 30, 2012. One of the stipulations dealt with the dismissal of certain claims which this Court has since accepted as a stipulation., five dealt with the defective condition of Chinese-manufactured drywall in the properties designated for trial, three addressed the fact that not all Chinese-manufactured drywall was defective, and one addressed the lack of actual knowledge of the defect by INEX (a fact which North River thought the PSC had agreed to in open court), and one dealt with the lack of any prior known episodes of drywall emitting sulfur gas. North River heard nothing further from the PSC on the proposed stipulations until a meeting at Mr. Herman's

office on August 10, 2012.[4]  At that time the PSC indicated that (1) it agreed in principle on the five stipulations that conceded a defect and aided their case, (2) it would consider the three stipulations addressing the lack of defect in some Chinese-manufactured drywall, and (3) it would not agree to the two stipulations addressing INEX's lack of knowledge of defect and the lack of any prior situation involving offgassing of sulfur from drywall.  The PSC indicated it would take the stipulations proposed by North River and revise them.  North River has heard nothing further from the PSC on the proposed stipulations.

If the PSC was really interested in simplifying this case and avoiding unnecessary work, it could have proposed its own stipulations or could have redrafted the stipulations proposed by North River, as the PSC indicated it would do.  Instead of trying to make things easier, however, the PSC has chosen to set the stipulations aside and insist that North River respond to eighty-one requests for admission based on a trial in which North River was not involved.  Once again, the PSC has decided to proceed through complexity and confrontation rather than through cooperation and compromise.

The majority of the eighty-one requests for admission involve subsidiary and noncontrolling issues including at least eleven requests for admission relating to the Batelle Classification System (including that "the Batelle Corrosivity Classifications, as well as ISA and the other corrosivity standards also have quantitative criteria for the levels of corrosive environments," Request No. 39), a request that "copper and silver are prevalent as metal components in most homes and buildings" (No. 21), a request that "in cases of corroding copper tubing, the maximum corrosion and thickness pit depth are important considerations in failure analysis" (No. 58), a request that "the gypsum used to make drywall can be created both

___

[4] During those discussions, North River made it clear that its willingness to stipulate that defective Chinese-manufactured drywall was present in the homes of the trial Plaintiffs was subject to verification of the presence of such board through inspections of the properties.

___

naturally and synthetically" (No. 4), a request that relates solely to large Florida homebuilders (No. 48), and a request that includes parenthetical remarks from the Court disagreeing with certain facts (No. 51).

The eighty-one requests for admission are not an attempt to simplify the issues in this trial and are not a good-faith attempt to comply with the discovery rules. Most of the requests involve technical or specialty knowledge beyond that known or reasonably available to North River. The requests are based upon a finite trial record and not upon what may or may not be true in the world outside of the confines of a single courtroom. None of the requests seek an admission on a matter that the jury in this case will be asked to resolve. While North River appreciates the efforts undertaken by the Court in the *Hernandez* case, whether or not North River agrees with the Court's conclusions in that case, based upon the specific factual record before the Court in that case, is not the issue that the jury in this case is going to be asked to resolve.

North River has indicated its willingness to agree to certain factual statements concerning the defective nature of some of the Chinese-manufactured drywall sold by INEX and in the homes of the designated trial Plaintiffs. North River remains committed to trying to reach those stipulations, even though the PSC will stipulate only to matters that help the PSC and not matters that help the other parties to the trial, even if those other matters are not in dispute. While the Court could probably order North River to answer the requests for admission that are beyond its knowledge, that seems to be a task designed to burden North River more than to find a way to simplify the matters that need to be resolved at trial.

### 3. The Documents Requested by the PSC are Outside the Scope of Discovery and Have Nothing to Do With the November Trial

The second set of requests for production of documents served by the PSC on North River is not a new issue. Most of the documents were requested prior to the corporate representative deposition of North River provided in March. The Court considered and sustained many of the objections raised by North River at that time and made it clear that it was not foreclosing the assertion of privilege objections raised by North River. Having been thwarted once it its effort to engage in irrelevant and unnecessary document production, the PSC now seeks a second bite at the poisoned apple.

The Second Request for Production of Documents included thirteen requests. North River responded that it had no documents responsive to Requests 4, 5, 9, and 10. In response to Requests 3, 12, and 13, North River responded that it had already produced all nonprivileged responsive documents. The PSC has expressed some skepticism about these responses because they have not received what they would expect to receive in a claim file, but that ignores the fact that the first notice that North River had of Chinese-manufactured drywall claims against INEX came after INEX had been sued. North River immediately retained counsel because of the pending litigation, and all subsequent communications about the claims are protected from discovery by the attorney-client or work product privileges. *See* Ex. K. This includes any reservation of rights letter issued by North River to INEX, which was sent in response to and after the initiation of litigation, and which is the subject of Request 6.

North River has now produced the claims servicing agreement between it and United States Fire Insurance Corporation requested in Request 2.

Requests 7 and 8 deal with reinsurance issues and communications between North River and reinsurers. Reinsurance is not discoverable. *See e.g., Royal Bahamian Ass'n v. QBE Ins.*

*Co.*, 268 F.R.D. 692, 695 (S.D. Fla. 2010) (reinsurance information not relevant to factual matter of whether policyholder is entitled to coverage); *American Medical Systems, Inc. v. National Union Fire Ins. Co.*, 1999 WL 781495 (E.D. La. 1999) (holding that reinsurance information was not discoverable by policyholder on claim against insurer for reimbursement of defense costs). North River certainly should not be forced to spend its trial preparation resources on reviewing and producing irrelevant documents when it is facing a significant trial on important issues in three months. In addition, any communications between North River and its reinsurers was made during the course of the litigation and is therefore within the scope of the work product privilege.

Request 1 asks for the entire underwriting file. There is no dispute about any of the terms of the policies issued by North River that are involved in this case and there is no need or justification for discovery of the underwriting file. *See e.g., McCullough v. Fidelity & Deposit Co.*, 2 F.3d 110, 113 (5th Cir. 1993) (underwriting file is irrelevant to resolution of coverage dispute); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 702 – 03 (S.D. Fla. 2007).

Request 11 deals with the corporate structure of North River and its relationship with affiliated companies, none of whom are involved in this litigation and none of whom issued policies to INEX. North River has already provided information responsive to this request, both in the production of documents (*see* pages 3-6 of Exhibit C to the PSC's Motion to Compel) and through deposition testimony. North River has recently filed a Supplemental Insurer Profile Form to make a minor correction in the identification of some of the companies that are indirect parent corporations of North River. Similar information is available on-line and in public records.

The PSC's motivation in pursuing this topic was explained above in connection with their demand for fourteen additional depositions relating to North River. Their Motion to Compel provides no convincing reason for such unnecessary discovery, and they only justification they have offered to North River informally is that they are subjectively worried that North River may not be able to satisfy a judgment – even though a judgment may never be entered against North River and the case is still a long way from the point when any such judgment might be entered. Any further discovery on this issue is intended only to harass North River, not to advance the litigation, and certainly not to prepare for the November trial addressing whether INEX was a good-faith seller of Chinese-manufactured drywall. Perhaps the trial is what the PSC should be worried about.

## CONCLUSION

If there is any hope that the trial scheduled for November actually goes forward at that time, it requires that the parties focus their discovery efforts on the matters that will be put before a jury. In blatant disregard of that need, the PSC has undertaken a path of harassment and burden rather than legitimate and productive discovery. For all of the reasons set forth above, the PSC's Motion to Compel against North River should be denied. In addition, the Court should remind the PSC of the Court's admonition two months ago to "*focus the trial on the liability of Interior Exterior Building Supply, as opposed to damages*" and other matters that will not be presented to a jury.

Respectfully submitted,

By:   /s/ Eric B. Berger
BRIAN S. MARTIN, ESQ.
KEVIN RISLEY, ESQ.
RODRIGO "DIEGO" GARCIA, JR., ESQ.
THOMPSON COE COUSINS & IRONS LLP

        One Riverway, Suite 1600  
        Houston, Texas 77056  
        Phone: (713) 403-8206  
        Fax:  (713) 403-8299  
        bmartin@thompsoncoe.com

        SIDNEY J. ANGELLE, ESQ.,  
        La. Bar No. 1002  
        ERIC B. BERGER, ESQ.  
        La. Bar No. 26196  
        LOBMAN CARNAHAN BATT  
          ANGELLE & NADER  
        400 Poydras Street, Suite 2300  
        New Orleans, Louisiana 70130  
        Phone: (504) 586-9292  
        Fax:   (504) 586-1290  
        sja@lcba-law.com  
        ebb@lcba-law.com

        **ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

     I hereby certify that on this the 21st day of August 2012, the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Leonard A. Davis, Russ M. Hermann, and Stephen J. Herman by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

                                                        /s/  Eric B. Berger