UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAG. JUDGE WILKINSON |
| **This document relates to:** | * | |
| **ALL ACTIONS** | * | |

## MEMORANDUM IN SUPPORT OF INTERIOR EXTERIOR'S MOTION TO COMPEL REGARDING 30(b)(6) NOTICE AND SUBPOENA DIRECTED TO NEW ORLEANS AREA HABITAT FOR HUMANITY

**MAY IT PLEASE THE COURT:**

Interior Exterior Building Supply, LP ("Interior Exterior") moves this Court for an order compelling deposition testimony and document production from plaintiff-assignee New Orleans Area Habitat for Humanity, Inc. ("NOAHH") in full compliance with the Notice of 30(b)(6) Deposition, and over the objection of the Plaintiff Steering Committee ("PSC") and NOAHH, on the basis that the testimony and documents sought directly relate to NOAHH's role in sourcing, storing, and distributing Chinese Drywall, as well as NOAHH's activity of contracting, building, and selling homes utilizing Chinese Drywall. Because the documents relate directly to NOAHH's involvement in the sale and use of Chinese drywall, such documents are discoverable, relevant to the claims and defenses of Interior Exterior and are not unreasonably burdensome.

### Relevant Facts

A bellwether trial of a select group of plaintiff's redhibition claim against Interior Exterior has been scheduled for November 26, 2012. The PSC has designated as three out of its

six trial selections, NOAHH as the plaintiff for three claims assigned to NOAHH by the homeowners.  Not only is NOAHH the plaintiff-assignee with respect to these claims but NOAHH is also the builder/contractor and seller of the three homes.  Two of the homes contain Chinese Drywall manufactured by Tiashan and one of the homes contains Chinese Drywall manufactured by Knauf.

Additionally, NOAHH and/or its affiliates, including Habitat for Humanity, Inc. and Habitat for Humanity International, Inc. (collectively "National Habitat"), sourced, warehoused, relabeled, and supplied Chinese Drywall for use at various properties throughout the Gulf Coast.  According to reports, the Chinese Drywall sourced by NOAHH and/or National Habitat was manufactured by Taishan.  Following reports of problems associated with Chinese Drywall, NOAHH and/or National Habitat tested the Chinese Drywall it sourced and stored.  While the precise results of the testing are still unknown, following this testing the representatives of NOAHH declared that not all Chinese Drywall was bad and continued to supply and/or use the Chinese Drywall in homes it was constructing.

On August 14, 2012, as part of the expedited discovery procedures implemented by the parties in light of the rapidly approaching trial, Interior Exterior served a draft Notice of 30(b)(6) Deposition of NOAHH on the PSC.  The notice enumerated several areas of inquiry and requested the production of documents relating to those areas in advance of the deposition.  At that time, no date for the deposition was set, but subsequently the PSC and Interior Exterior agreed to set the deposition for August 29, 2012.  A copy of the draft Notice is attached hereto as Exhibit "A".  On August 20, 2012, counsel for the PSC, presumably acting on behalf of NOAHH, provided written responses and objections to the draft Notice, a copy of which is attached hereto as Exhibit "B".  In large measure, the PSC and NOAHH seek to limit the

discovery to the three subject properties and exclude from the areas of inquiry and document requests any information relating to NOAHH's knowledge and/or involvement with Chinese Drywall in general.

## **Law and Argument**

Federal Rule of Civil Procedure 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Courts have recognized that "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Elecs. Corp. v. Exzec, Inc.,* 1998 WL 9181, *3 (N.D.Ill 1998) (quoting *Piacenti v. Gen. Motors Corp.,* 173 F.R.D. 221, 223 (N.D.Ill.1997)). That is, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The bellwether trial of Interior Exterior will be limited to claims in redhibition and the central question ultimately is whether Interior Exterior knew of the existence of the defect in the Chinese Drywall at the time that it sold the product to plaintiffs. Interior Exterior has consistently argued throughout the course of this litigation that the applicable standard in a redhibition claim for a bad faith seller is the "knew" standard; however, the plaintiffs have argued that Interior Exterior should be found liable as a bad faith seller if the jury finds that it "knew or should have known" of the defect. While Interior Exterior disagrees with this standard as an accurate statement of the law, to the extent plaintiffs are correct, then Interior Exterior must be able to put on a defense as to what a reasonable distributor of Chinese Drywall should have

known regarding the defect. The actions and knowledge of NOAHH, as a similar distributor of Chinese Drywall throughout southeast Louisiana is, therefore, particularly relevant to whether Interior Exterior should have known of the defect. At it simplest, if NOAHH did not know of the defect at the time it supplied Chinese Drywall and subsequent testing NOAHH performed did not reveal the defect, then it can be argued that Interior Exterior likewise did not know, and should not have known, of the latent defect at the time it sold the product.

Additionally, NOAHH's knowledge and action as respects all Chinese Drywall is relevant to its role as a builder/contractor and its potential liability as a joint and/or several obligor. NOAHH is not just the assignee of the three Habitat homeowner's claims, but NOAHH is the builder/contractor and seller of those homes. As such, NOAHH was an integral party to the sales chain and is, like Interior Exterior, liable in redhibition either as a good faith or bad faith seller. NOAHH's full involvement with Chinese Drywall, outside of the three subject properties, is germane to whether it, too, was a good or bad faith seller. Without addressing the issue of comparative fault and solidarity, NOAHH's culpability is nonetheless a relevant issue for adjudication of the claims against Interior Exterior.

The specifics of NOAHH's objections and Interior Exteriors responses are addressed below:

1) Interior Exterior seeks information and documents regarding the corporate structure of NOAHH, including any affiliated or related corporations; to which NOAHH objects that the information is irrelevant and over-broad and overly burdensome. NOAHH agreed only to produce information and documents that reflect those people during the period of the construction of the three subject properties and through the completion of the remediation of the three subject properties. However, Interior

4

Exterior is entitled to information relating to NOAHH's corporate structure throughout the period of time it sourced and supplied Chinese Drywall, it built any homes using Chinese Drywall, it investigated complaints of effects from Chinese Drywall, and it has been involved in litigation concerning Chinese Drywall. The information sought is relevant to identifying persons with knowledge of NOAHH's role as distributor and seller of Chinese Drywall. NOAHH has not identified any real burden in providing this information and, to the extent there is a burden, it is outweighed by the probative nature of the information sought.

2) Interior Exterior seeks information and documents regarding NOAHH's relationship and dealings with its parent, subsidiaries and affiliates, including but not limited to National Habitat. NOAHH objects as irrelevant, claiming that NOAHH is an independent non-profit corporation with no formal legal relationship to any other Habitat for Humanity organization. Interior Exterior is certainly entitled to test the accuracy of this statement, through discovery. Moreover, the request is not limited to formal legal relationships. To the extent NOAHH has any relationship with National Habitat or any other Habitat affiliate from which it has garnered any knowledge relating to Chinese Drywall, Interior Exterior is entitled to an understanding of that relationship.

3) Interior Exterior seeks information and documents regarding any insurance policy purporting to provide liability coverage to NOAHH. NOAHH again objects as irrelevant and overly-broad and burdensome. As discussed above, NOAHH faces liability in redhibition and, therefore, its liability insurance policies are relevant. There is no basis for an over-breadth or burden argument.

4) Interior Exterior seeks information and documents regarding claims to any insurance company for coverage for Chinese manufactured drywall. NOAHH again objects as irrelevant and overly-broad and burdensome. As discussed above, NOAHH faces liability in redhibition and, therefore, any claims it has made relating to insurance coverage are relevant and there is no basis for an over-breadth or burden argument.

5) Interior Exterior seeks information and documents regarding NOAHH's purchase of any and all drywall for the time period between 2005 and the present. Again, NOAHH attempts to limit the request to the three subject properties; however, Interior Exterior is entitled to information concerning all drywall purchased by NOAHH during the relevant time period insofar as it is relevant to what NOAHH knew and did as a distributor and seller of drywall in general so as to compare it to what it knew and did as a distributor and seller of Chinese Drywall in particular.

6) Interior Exterior seeks information and documents regarding NOAHH's purchase of any and all Chinese Drywall for the time period between 2005 and the present. NOAHH's objection is misplaced given the relevancy of NOAHH's knowledge and actions as a distributor and seller of Chinese Drywall, particular NOAHH's continued use of Chinese Drywall after initial complaints concerning the product.

7) Interior Exterior seeks information and documents regarding NOAHH's storage of any and all drywall for the time period between 2005 and the present. For the same reasons discussed above, NOAHH's relevancy objection to this request is invalid. Moreover, NOAHH's techniques for and observations of drywall in storage are relevant as a comparison to Interior Exterior's techniques for and observations of the same.

8) Interior Exterior seeks information and documents regarding NOAHH's storage of any and all CDW for the time period between 2005 and the present. For the same reasons discussed above, NOAHH's relevancy objection to this request is invalid.

9) Interior Exterior seeks information and documents regarding NOAHH's distribution of any and all drywall for the time period between 2005 and the present. Again, for the reasons discussed above NOAHH's relevancy objection is misplaced.

10) Interior Exterior seeks information and documents regarding NOAHH's distribution of any and all CDW for the time period between 2005 and the present. For the same reasons, NOAHH's relevancy objection is misplaced.

11) Interior Exterior seeks information and documents regarding any and all complaints that NOAHH received concerning failed electronics and/or appliances. NOAHH objects to this request as irrelevant, over-broad, and seeking documents protected from discovery by the attorney-client privileges. First, NOAHH's knowledge and information concerning complaints is relevant to its status as a good faith or bad faith seller and as a comparison to Interior Exterior's receipt of and response to complaints. Second, NOAHH has not, and cannot, articulate a basis of its over-breadth and burden argument. Third, there is no basis for attorney-client privilege to apply to complaints made to NOAHH, a non-attorney..

12) Interior Exterior seeks information and documents regarding complaints that NOAHH received concerning tarnished and/or corroded metals and/or jewelry. NOAHH raises the same objections as to No. 11 above; and, for the same reasons, the objections are misplaced.

13) Interior Exterior seeks information and documents regarding correspondence from and to manufacturers of drywall for the time period between 2005 and the present. NOAHH objects as to relevancy, but agreed to provide documents related to manufacturers of CDW installed in the three subject properties and relating to CDW. To the extent NOAHH corresponded with Knauf or Tiashan, or their representatives or affiliates, Interior Exterior is entitled to all such correspondence regardless of whether it specifically relates to CDW, whatever that may mean. To the extent NOAHH corresponded with other manufacturers of drywall during the relevant time period, Interior Exterior is entitled to any such correspondence as it relates to any testing of drywall; discussion of imported drywall, the storage or handling of drywall, or relabeling of drywall; or comparison of different manufactured drywall. All of this information is relevant to NOAHH's status as a good faith or bad faith seller and whether Interior Exterior should have somehow known of the latent defect.

14) No. 14 is identical to No. 13 and is addressed above.

15) Interior Exterior seeks information and documents regarding correspondence from and to suppliers of drywall for the time period between 2005 and the present. NOAHH objects the same as No. 13 above, and Interior Exterior's response is the same.

16) Interior Exterior seeks information and documents regarding correspondence from and to suppliers of CDW for the time period between 2005 and the present. NOAHH's objection is largely the same as No. 15, and for the same reasons discussed above, Interior Exterior is entitled to the information and documents sought.

17) Interior Exterior seeks information and documents regarding reports, including drafts, notes, results, photographs, diagrams and memoranda, from any and all experts concerning any and all testing of any and all properties that may and/or did (does) have CDW. NOAHH objects on the basis of relevancy, over-breadth, attorney-work product privilege, attorney client privilege, and the schedule set forth in the CMO. First, the CMO only governs reports of testifying experts as it relates to this trial and the request more broadly request information and documents concerning work any expert performed on behalf of NOAHH at any point, including any testing done after initial complaints were made but before this litigation. Second, attorney work-product would only apply to the extent the non-testifying expert was retained for the purpose of trial preparation, *see* FRCP 26(b)(4)(D), and not independently by NOAHH. Finally, any testing done by an expert for NOAHH is relevant to NOAHH's status as a good or bad faith seller and to whether Interior Exterior, as a similar supplier of drywall, should have known of the latent defect.

18) Interior Exterior seeks information and documents regarding reports, including drafts, notes, results, photographs, diagrams and memoranda, from any and all experts concerning any and all inspections of any and all properties that may and/or did (does) have CDW. NOAHH makes the same objections as to No. 17 and Interior Exterior's response is the same.

19) Interior Exterior seeks information and documents regarding correspondence to and from any and all residents concerning Chinese manufactured drywall. NOAHH objects based on relevancy, burden, and the attorney-client privilege. NOAHH's communications to all residents/homeowners concerning Chinese manufactured

drywall is relevant to what NOAHH knew or should have known and, thus, what Interior Exterior should have known regarding the latent defect in the product. NOAHH representatives reported in the press that "not all Chinese drywall is bad." Presumably NOAHH reported the same to its residents/homeowners, and Interior Exterior is entitled to know when it made these statements and the basis for same. Also, again there is no basis for NOAHH's assertion of the attorney client privilege.

20) Interior Exterior seeks information and documents regarding correspondence to and from any and all affiliates of National Habitat concerning drywall for the time period between 2005 and the present. NOAHH objects based on relevancy, burden, and the attorney-client privilege. However, this request is reasonably calculated to lead to evidence relevant to NOAHH's status as good or bad faith seller and what it knew or should have known about the defect as a comparison to what Interior Exterior knew or should have known. The attorney-client privilege is unlikely to apply to any such documents, but to the extent NOAHH believes it does, Interior Exterior is entitled to a privilege log to be produced at the time the information is withheld.

21) Interior Exterior seeks information and documents regarding correspondence to and from any and all affiliates of National Habitat concerning CDW for the time period between 2005 and the present. NOAHH raises the same objections as to No. 20 above, and Interior Exterior's response is the same.

22) Interior Exterior seeks information and documents regarding correspondence among NOAHH board members, officers, employees and/or agents concerning drywall for the time period between 2005 and the present. NOAHH objects based on relevancy, burden, and the attorney-client privilege. However, this request is reasonably

calculated to lead to evidence relevant to NOAHH's status as good or bad faith seller and what it knew or should have known about the defect as a comparison to what Interior Exterior knew or should have known. The attorney-client privilege is unlikely to apply to any such documents, but to the extent NOAHH believes it does, Interior Exterior is entitled to a privilege log to be produced at the time the information is withheld.

23) Interior Exterior seeks information and documents regarding correspondence among NOAHH board members, officers, employees and/or agents concerning CDW for the time period between 2005 and the present. NOAHH's response is the same as to No. 22 above and Interior Exterior's response is the same.

24) Interior Exterior seeks information and documents regarding correspondence to and from any and all affiliates of National Habitat concerning inspections and/or testing of CDW for the time period between 2005 and the present. NOAHH objects based on relevancy. For the reasons discussed at length above, knowledge of NOAHH relating to inspection and/or testing of Chinese Drywall, whether done by NOAHH or provided to NOAHH, is relevant to its status as a good or bad faith seller and what Interior Exterior should have known regarding the latent defect.

25) Interior Exterior seeks information and documents regarding quality assurance policies NOAHH has and/or had in place for the construction and or re-building of homes and or properties for the time period between 2005 and the present. NOAHH objects that the request seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence and is otherwise over-broad and overly burdensome. NOAHH's quality assurance policy, however, is particularly germane

11

to the issue of what a seller and builder should have known about the latent defects in Chinese Drywall.

26) Interior Exterior seeks information and documents regarding media, including but not limited to newspaper articles, magazine articles, radio, television, film, Twitter, Facebook, journal articles, blogs, concerning drywall for the time period between 2005 and the present. NOAHH again objections based on relevancy. As discussed above, NOAHH representatives have made a number of public statements concerning Chinese Drywall, and Interior Exterior is entitled to information concerning these statements and NOAHH's response to the media in general about Chinese Drywall.

27) Interior Exterior seeks information and documents regarding media, including but not limited to newspaper articles, magazine articles, radio, television, film, Twitter, Facebook, journal articles, blogs, concerning CDW for the time period between 2005 and the present. NOAHH makes the same objections as to NO. 27 and Interior Exterior's response is the same.

## Conclusion

Interior Exterior is entitled to an order compelling "NOAHH" to provide testimony and documents in full compliance with the Notice of 30(b)(6) Deposition on the basis that the testimony and documents sought relating to NOAHH's role sourcing, storing, and distributing Chinese Drywall and contracting, building, and selling homes utilizing Chinese Drywall are relevant to the claims and defenses of Interior Exterior insofar as they are germane to NOAHH's status as a good or bad faith seller and they serve as a point of comparison for the actions of Interior Exterior as it relates to what it knew or should have known about the latent defect that existed in some Chinese Drywall.

Respectfully submitted,

*/s/ Richard G. Duplantier, Jr.*
Richard G. Duplantier, Jr. #18874
Lambert J. Hassinger, Jr. #21683
Benjamin R. Grau, #26307
Carlina C. Eiselen, #28524
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040 One Shell Square
New Orleans, LA 70139
504 525 6802 / 504 525 2456 Fax
rduplantier@gjtbs.com; jhassinger@gjtbs.com
bgrau@gjtbs.com; ceiselen@gjtbs.com;
*Counsel for Interior Exterior Building Supply*

## Certificate of Service

The undersigned certifies that this document has been served on Plaintiffs' liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 22nd day of August, 2012.

*/s/ Richard G. Duplantier, Jr.*