# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

-------------------------------------------------------x

| | |
|---|---|
| IN RE: | :   MDL NO. 2047 |
| | :   SECTION:  L |
| CHINESE MANUFACTURED DRYWALL | : |
| PRODUCTS LIABILITY LITIGATION | :   JUDGE FALLON |
| | : |
| | :   MAG. JUDGE WILKINSON |
| | : |

-------------------------------------------------------x

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | : |
| ALL CASES AND | : |
| | : |
| *Payton, et al. v. Knauf Gips KG, et al.* | : |
| Case No. 2:09-cv-07628 (E.D. La.) | : |
| | : |
| *Gross, et al. v. Knauf Gips KG, et al.* | : |
| Case No. 2:09-cv-06690 (E.D. La.) | : |
| | : |
| *Rogers, et al. v. Knauf Gips KG, et al.* | : |
| Case No. 2:10-cv-00362 (E.D. La.) | : |
| | : |
| *Abreu, et al. v. Gebrueder Knauf* | : |
| *Verwaltungsgesellschaft KG, et al.* | : |
| Case No. 2:11-cv-00252 (E.D. La.) | : |
| | : |
| *Block, et al. v. Gebrueder Knauf* | : |
| *Verwaltungsgesellschaft KG, et al.* | : |
| Case No. 2:11-cv-2349 (E.D. La.) | : |
| | : |
| *Arndt, et al. v. Gebrueder Knauf* | : |
| *Verwaltungsgesellschaft KG, et al.* | : |
| Case No. 2:11-cv-2349 (E.D. La.) | : |
| | : |
| *Cassidy, et al. v. Gebrueder Knauf* | : |
| *Verwaltungsgesellschaft KG, et al.* | : |
| Case No. 2:11-cv-3023 (E.D. La.) | : |
| | : |
| *Vickers, et al. v. Knauf Gips KG, et al.* | : |
| Case No. 2:09-cv-04117 | : |

-------------------------------------------------------x

## AMENDED SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST THE KNAUF DEFENDANTS IN MDL NO. 2047

# TABLE OF CONTENTS

Page

1.  Definitions ......................................................................................................................1

2.  Effective Date ...............................................................................................................11

3.  Settlement of All Claims Against The Knauf Defendants ................................................12

4.  Settlement Funds ..........................................................................................................12

    4.2.  Establishment and Administration of the Remediation Fund...............................12

    4.3.  Remediation Fund Benefits ...............................................................................14

        4.3.1.  Option 1.  Program Contractor Remediation Option/Property Not Yet Remediated ......................................................................................14

            4.3.1.1.  Lump Sum Payment ...........................................................14

            4.3.1.2.  Delay Period Payment .........................................................15

        4.3.2.  Option 2.  Self-Remediation Option....................................................16

        4.3.3.  Option 3.  Cash-Out Option................................................................17

        4.3.4.  Mixed Property Owners......................................................................18

        4.3.5.  Foreclosed Properties .........................................................................20

        4.3.6.  Multiple Unit Properties .....................................................................20

            4.3.6.1.  General Terms ....................................................................20

            4.3.6.2.  Options available to the  Multiple Unit Property Governing Body where, pursuant to Section 4.3.6.1.2, it is feasible treat each unit as a single property ........................23

            4.3.6.3.  Options Available to the Multiple Unit Property Governing Body where, pursuant to Section 4.3.6.1.2, it is not feasible to treat each unit as a single property ..............24

        4.3.7.  Already Remediated Properties.............................................................25

        4.3.8.  Timing for Election of Options ...........................................................26

    4.4.  Remediation Fund Qualifying Procedures .........................................................26

    4.5.  Cost Control and Dispute Resolution Mechanisms for Program Contractor Remediation Option...........................................................................................27

    4.6.  Establishment and Administration of the Other Loss Fund .................................31

    4.7.  Other Loss Fund Benefits..................................................................................33

            4.7.1.1.  Pre-Remediation Alternative Living Expenses: .....................33

            4.7.1.2.  Lost Use, Sales and Rentals..................................................34

             4.7.1.3.  Foreclosures........................................................................37

i

Page

        4.7.1.4.    Sales In Mitigation..................................................39

        4.7.1.5.    Tenant Losses .......................................................40

    4.7.2.   Bodily Injury.............................................................42

    4.7.3.   Other Loss Exclusions ...............................................43

    4.7.4.   Other Loss Fund Claims Procedures .............................44

    4.7.5.   MMSEA Compliance .................................................45

4.8.    Allocation of Amounts from Banner, InEx and Prospective L&W Class Settlements Or Any Other Settlements.................................47

4.9.    Qualifications for Class Members in Properties with Lower-Case KPT Chinese Drywall. ...............................................................49

5.    Releases ........................................................................51

    5.1.    Released Claims .............................................................51

    5.2.    Class Release ................................................................55

6.    Certification of Federal Rule of Civil Procedure 23(b)(3) Settlement Class and Related Motions...................................................................57

7.    Notice to Class Members..................................................57

8.    Opt-Out.........................................................................58

    8.1.    Opt-Out Period ..............................................................58

    8.2.    Opt-Out Process ............................................................58

    8.3.    Rights With Respect to Opt Outs .......................................58

9.    Objections .....................................................................59

10.    Fairness Hearing .............................................................60

11.    Dismissals .....................................................................60

12.    Bar Order .....................................................................61

13.    Termination of This Settlement...........................................61

14.    Attorneys' Fees...............................................................62

15.    Court to Retain Jurisdiction to Implement and Enforce Settlement Agreement ..............64

16.    Representations ...............................................................64

17.    Security ........................................................................67

18.    Miscellaneous .................................................................71

19.    Federal Rule of Evidence 408 .............................................73

# SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST THE KNAUF DEFENDANTS IN MDL NO. 2047
### (Subject to Court Approval)

This Settlement Agreement is entered into by and between the Plaintiffs' Steering Committee in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, and Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd. ("Wuhu"), Guangdong Knauf New Building Material Products Co., Ltd. ("Dongguan"), Knauf Gips KG ("Knauf Gips"), Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia (collectively, the "Knauf Defendants") as of December 20, 2011.

**WHEREAS**, the Plaintiffs' Steering Committee has made a demand on the Knauf Defendants to settle Chinese Drywall claims against the Knauf Defendants;

**WHEREAS**, the Knauf Defendants have been named as defendants in MDL No. 2047 and in state court litigation and are alleged to be liable for KPT Chinese Drywall that was installed in Affected Properties;

**WHEREAS**, the Knauf Defendants have denied liability for the sale of such KPT Chinese Drywall; and

**WHEREAS**, the Parties wish to avoid the effort, expense and risk of continued litigation,

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and intending to be legally bound, the Parties agree as follows:

1. **Definitions**

   1.1. **Parties.** "Parties" shall mean the Knauf Defendants and the Class:

      1.1.1. **Knauf Defendants.** "Knauf Defendants" shall mean all Knauf entities that are signatories to this Agreement.

      1.1.2. **Class; Settlement Class; Class Members.** "Class," also referred to as "Settlement Class" or "Class Members," shall mean all members of one of the three Subclasses in Sections 1.1.2.1, 1.1.2.2 and 1.1.2.3 below who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (*i.e.*, not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit. The following persons or entities are members of the class only for the purpose of obtaining benefits under the Other Loss Fund, but not for the purpose of obtaining benefits under the Remediation Fund as those Class Members' Remediation Claims have been or will be resolved outside this Settlement: (i) any person or entity which has settled claims against the Knauf Defendants

under the Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall ("Pilot Program") by executing both the Work Authorization and Release as defined in the Pilot Program, whose Affected Property has been or will be remediated under the Pilot Program; (ii) any person or entity whose Affected Property has been remediated under a Major Builder Settlement Agreement; and (iii) any person or entity whose Affected Property has been remediated under a settlement with a Builder or Supplier (including claims assigned by Class Members that were later settled by the assignee).   The Class also shall include Multiple Unit Property Governing Bodies to the extent that any unit(s) of a Multiple Unit Property is the subject of a filed lawsuit in the Litigation. The Class shall not include claims relating to Chinese Drywall manufactured by Knauf entities other than KPT.   There shall be three subclasses:

1.1.2.1.   **The Residential Owner Subclass:**  All members of the Class who are owners of and reside or have resided in Affected Property ("**Residential Owners**").   The Residential Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall and/or Non-KPT Chinese Drywall.  The Residential Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties to mitigate losses.

1.1.2.2.   **The Commercial Owner Subclass:**  All members of the Class who are owners of Affected Property for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business and who do not reside in the Affected Property ("**Commercial Owners**").   The Commercial Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall and/or Non-KPT Chinese Drywall.  The Commercial Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties to mitigate losses.  Members of the Residential and Commercial Owner Subclasses also are referred to as "Owners".

1.1.2.3.   The Residential Owner Subclass and the Commercial Owner Subclass shall be referred to collectively as the "Owner Subclasses."

      1.1.2.4.   **The Tenant Subclass:**  All members of the Class who rent Affected Property.  Members of the Tenant Subclass also are referred to as "Tenants".  Non-owner residents will be treated as Tenants even if they do not pay rent.

1.2.    **Administrative Expenses.**  "Administrative Expenses" shall mean expenses associated with administering the Remediation Fund and the Other Loss Fund, and shall include, but not be limited to, the expenses of the Settlement Administrator, Special Masters, escrow agents, accountants, pro se attorneys and Ombudsmen.

1.3.    **Affected Property.**  "Affected Property" shall mean any real or personal property, residential or commercial, containing KPT Chinese Drywall.

1.4.    **Already Remediated Properties Protocol.**  "Already Remediated Properties Protocol" shall mean the protocol attached as Exhibit A for resolving Remediation Claims of Owners who have self-remediated Affected Properties or have entered into contracts to self-remediate Affected Properties prior to the Execution Date.

1.5.    **Approved Claims.**  "Approved Claims" shall mean claims submitted by Class Members that have been approved for reimbursement from the Remediation Fund and/or the Other Loss Fund.

1.6.    **Banner.**  "Banner" shall mean Banner Supply Co., Banner Supply Co. - Pompano, LLC, Banner Supply Co. - Port St. Lucie, LLC, Banner Supply Co. - Fort Myers, LLC, and Banner Supply Co. - Tampa, LLC and all of their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers, and all predecessors and successors, assigns, or legal representatives.

1.7.    **Banner Class Settlement.**  "Banner Class Settlement" shall mean the class action settlement with Banner preliminarily approved by the Court on August 11, 2011.

1.8.    **Builder.**  "Builder" shall mean any entity or person engaged principally in the business of construction of properties and to whom a Developer sells or has sold one or more lots on which the property construction will take place.  A Builder shall not include a Developer engaged solely in selling the lot on which such property is constructed, who does not have the authority to manage or control the actual construction.  Other entities or persons excluded from the term Builder include, but are not limited to, subcontractors, material suppliers, installers, and design professionals.

1.9.    **Court.**  "Court" shall mean The Honorable Eldon E. Fallon, who presides over *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, in the Eastern District of Louisiana.

1.10. **Developers.** "Developers" shall mean the developer of any properties with KPT Chinese Drywall.

1.11. **Environmental Certificate.** "Environmental Certificate" shall mean a certification substantially in the form of Exhibit B from GFA International (1215 Wallace Drive, Del Ray Beach, Florida 33444) or another environmental inspector, provided that both the Knauf Defendants and Settlement Class Counsel consent to such other environmental inspector.

1.12. **Excluded Releasee.** "Excluded Releasee" shall mean any person or entity eligible to be an Other Releasee that does not participate in the Insurer Class Settlement or otherwise settle with the PSC and the Knauf Defendants. An Excluded Releasee can also be an Other Releasee pursuant to Section 1.50.1.

1.13. **Execution Date.** "Execution Date" shall mean December 20, 2011.

1.14. **Final Cost Estimate.** "Final Cost Estimate" shall mean the final cost to remediate the KPT Property prepared by the Lead Contractor or Other Approved Contractor and agreed to by the Knauf Defendants.

1.15. **Foreclosed Property.** "Foreclosed Property" shall mean an Affected Property that is owned by a Mortgagee.

1.16. **General Contractor.** "General Contractor" shall mean any general contractor which (i) took part in the building, remodeling or restoration of any property with KPT Chinese Drywall, and (ii) did so working under contract with, and/or under the direction of a Builder, Owner or his or her insurer, or Developer.

1.17. **Held Costs.** "Held Costs" shall have the meaning set forth by the Court in Pretrial Order No. 9.

1.18. **Importers.** "Importers" shall mean any importer, which imported, marketed, distributed or supplied KPT Chinese Drywall.

1.19. **Individual Participating Class Members' Costs.** "Individual Participating Class Members' Costs" shall mean those costs reasonably incurred by a Participating Class Member in connection with the prosecution of a claim relating to an Affected Property.

1.20. **InEx.** "InEx" shall mean Interior Exterior Building Supply, L.P. and all of its past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers, and all predecessors and successors, assigns, or legal representatives.

1.21. **InEx Class Settlement.** "InEx Class Settlement" shall mean the class action settlement with InEx preliminarily approved by the Court on May 13, 2011, including any supplemental recovery against InEx's excess insurer, The North River Insurance Company.

4

1.22. **Inspection Protocol.** "Inspection Protocol" shall mean the protocol for inspecting properties for KPT Chinese Drywall attached as Exhibit C.

1.23. **Installer.** "Installer" shall mean any person or entity involved in the installation, hanging, taping, and/or floating of KPT Chinese Drywall in any property.

1.24. **Insurer Class Settlement.** "Insurer Class Settlement" shall mean the class action settlement with Builders, Suppliers, Installers and Participating Insurers preliminarily approved by the Court on May 31, 2012.

1.25. **Knauf Investment Assets.** "Knauf Investment Assets" shall mean the deposited funds and/or asset(s) described in Section 17.1.3.

1.26. **KPT Chinese Drywall.** "KPT Chinese Drywall" shall mean any and all drywall products manufactured, sold, marketed, distributed, and/or supplied by KPT and which are alleged to be defective. "KPT Chinese Drywall" shall not include drywall products, manufactured, sold, marketed, distributed, and /or supplied by any Knauf Defendant other than KPT.

    1.26.1. **Lower-Case KPT Chinese Drywall.** "Lower-Case KPT Chinese Drywall" shall mean KPT Chinese Drywall bearing the lower-case "TianJin, China" markings. Class Members with only Lower-Case KPT Chinese Drywall in their properties shall be eligible for benefits under this Settlement only if the Class Member who owns or rents a particular property satisfies the requirements of Section 4.9.

1.27. **KPT Drywall Percentage.** "KPT Drywall Percentage" shall mean the amount of KPT Chinese Drywall in the Affected Property divided by the total amount of KPT Chinese Drywall and Non-KPT Chinese Drywall in the Affected Property rounded to the next highest 10% increment, as determined according to paragraph II.C of the Inspection Protocol. For example, if the amount of KPT Chinese Drywall in the Affected Property divided by the total amount of KPT Chinese Drywall and Non-KPT Chinese Drywall equals 82%, the KPT Drywall Percentage shall be 90%. However, if the amount equals 90%, the KPT Drywall Percentage shall not be adjusted upward. Applying this definition, if an inspection of an Affected Property reveals that there are 4 boards consisting of KPT Chinese Drywall, 2 boards consisting of Non-KPT Chinese Drywall and 4 non-reactive boards in the Affected Property, then the KPT Drywall Percentage will be 70% (four KPT Chinese Drywall boards divided by six total KPT Chinese Drywall boards and Non-KPT Chinese Drywall boards, rounded up to the next highest 10% increment).

1.28. **KPT Property.** "KPT Property" shall mean any Affected Property in which the KPT Drywall Percentage exceeds 90%.

1.29. **KPT Property Owners.** "KPT Property Owners" shall mean Owners of KPT Property.

1.30. **L&W.** "L&W" shall mean L&W Supply Co. and all of its past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers, and all predecessors and successors, assigns, or legal representatives.

1.31. **L&W Class Settlement.** "L&W Class Settlement" shall mean the class action settlement with L&W preliminarily approved by the Court on April 26, 2012.

1.32. **Lead Contractor.** "Lead Contractor" shall mean Moss & Associates, LLC, 2101 N. Andrews Avenue, Suite 300, Ft. Lauderdale, FL 33311. The Knauf Defendants and Settlement Class Counsel may by agreement change the Lead Contractor.

1.33. **Lienholder.** "Lienholder" shall mean any person or entity which holds a lien on Affected Property with KPT Chinese Drywall.

1.34. **Litigation.** "Litigation" shall mean all Class Action Omnibus Complaints ("Omni Complaints") filed in MDL No. 2047, and all Related Actions.

1.35. **Major Builder Settlement Agreement.** "Major Builder Settlement Agreement" shall mean any one of the agreements among the Knauf Defendants, the PSC and certain Builders listed in Exhibit D filed under seal.

1.36. **Mixed Property.** "Mixed Property" shall mean Affected Properties in which the KPT Drywall Percentage is less than or equal to 90%.

1.37. **Mixed Property Owner.** "Mixed Property Owner" shall mean an Owner of a Mixed Property.

1.38. **Mortgagee.** "Mortgagee" shall mean any person or entity which made a loan secured by Affected Property with KPT Chinese Drywall.

1.39. **Mortgaged Property.** "Mortgaged Property" shall mean the real property and buildings of KI, as agreed upon by the Parties, pledged to secure the obligations of the Knauf Defendants to make payments under the Settlement pursuant to the Mortgages.

1.40. **Mortgages.** "Mortgages" shall mean mortgage agreements in respect of the Mortgaged Property.

1.41. **Multiple Unit Property.** "Multiple Unit Property" shall mean an Affected Property that contains more than one living unit.

1.42. **Multiple Unit Property Governing Body.** "Multiple Unit Property Governing Body" shall mean the person(s) or entity(ies) having the legal authority or control to bind a Multiple Unit Property, including but not limited to, a condominium association.

1.43. **Non-KPT Chinese Drywall.** "Non-KPT Chinese Drywall" shall mean any and all reactive drywall products manufactured, sold, marketed, distributed, and/or supplied by a Chinese manufacturer other than KPT, including but not limited to, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard, Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; Beijing New Building Materials Public Ltd. Co., and China National Building Material Co., Ltd., and China National Building Material Group Corporation. Counterfeit drywall products that purport to be manufactured by KPT, but that are in fact manufactured by an entity other than KPT shall not be considered "KPT Chinese Drywall" and shall be considered "Non-KPT Chinese Drywall" only if the drywall is reactive. "Non-KPT Chinese Drywall" shall not include drywall products manufactured, sold, marketed, distributed, and/or supplied by Wuhu or Dongguan, and shall not include drywall bearing the lower-case "TianJin, China" markings.

1.44. **Ombudsman**. "Ombudsman" shall mean a construction expert available to advise Class Members who select the Program Contractor Option described in Section 4.3.1. The Ombudsmen shall be selected according to the procedures set forth in Section 4.5.1.7.2.

1.45. **Order and Judgment.** "Order and Judgment" shall mean an order and judgment entered by the Court that:

(i)     Certifies the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3);

(ii)    Finds that the Settlement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved; and approves the Settlement;

(iii)   Approves the Class Release provided in Section 5.2 and orders that, as of the Effective Date, the Released Claims as defined in Section 5.1 will be released as to the Knauf Defendants and Other Releasees;

(iv)    Enjoins and forever bars any and all Participating Class Members from commencing and/or maintaining any action, legal or otherwise, against the Knauf Defendants arising out of, or otherwise relating to, KPT Chinese Drywall;

(v)     Finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4, 5.2.5 and 5.2.6 are valid, binding, and enforceable; and therefore, bars the assertion by any entity or person against the Knauf Defendants of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning (i) the KPT Chinese Drywall claims against the Knauf Defendants and Other Releasees or (ii) this Settlement;

(vi) Enjoins non-Class Members and Class Members who opt out under Section 8 from seeking or obtaining any recovery against or from, or seeking to execute or otherwise exercise remedies against the Knauf Investment Assets and any proceeds thereof, which asset(s) have been procured by the Knauf Defendants in furtherance of the Settlement for the benefit of the Settlement Class.

(vii) Finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

1.46. **Other Approved Contractor.** "Other Approved Contractor" shall mean a contractor other than the Lead Contractor approved by the Knauf Defendants and Settlement Class Counsel to perform the remediation work under the Program Contractor Remediation Option set forth in Section 4.3.1.

1.47. **Other Covered Expenses.** "Other Covered Expenses" shall mean reimbursement for all alternative living expenses, personal property damage, maintenance of the KPT Property during remediation, including, but not limited to, payment of all utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses, incurred as a result of the remediation of the KPT Property, pursuant to Section 4.3.1.1 through 4.3.1.3.

1.48. **Other Loss.** "Other Loss" shall have the meaning set forth in Section 4.7.1 below.

1.49. **Other Loss Fund.** "Other Loss Fund" shall mean the Fund described in Section 4.6 below.

1.50. **Other Releasee.** "Other Releasee" shall mean any person or entity that supplied, installed or facilitated and/or assisted in such supply or installation of KPT Chinese Drywall, including but not limited to, Banner, InEx, L&W, Importers, Suppliers, Builders, Developers, General Contractors, Installers, Realtors, Subcontractors, and Subsuppliers which purchased or received KPT Chinese Drywall from a Supplier, used Chinese Drywall sold, marketed, distributed and/or supplied by a Supplier in the construction of Affected Property, or sold or marketed Affected Property containing KPT Chinese Drywall, and all of their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers and all predecessors and successors, assigns, or legal representatives, except for **Excluded Releasees**.

1.50.1. A person or entity can be both an Other Releasee and an Excluded Releasee if some but not all of his (its) insurers participate in the Insurer Class Settlement or other settlement with the PSC and the Knauf Defendants.  In that case, the person or entity will be treated as an Other Releasee with respect to uninsured claims and claims insured by

participating insurers and as an Excluded Releasee with respect to claims insured by the non-participating insurers.

1.51. **Participating Class Member.** "Participating Class Member" shall mean all Class Members who do not opt-out as provided in Sections 8.1 and 8.2.

1.52. **Plaintiffs' Steering Committee; PSC.** "Plaintiffs' Steering Committee" or "PSC" shall mean the group of plaintiffs' counsel appointed by the Honorable Eldon E. Fallon to manage and administer the affairs of all plaintiffs in MDL No. 2047 and to assist the Court in administering its docket. The PSC, as currently constituted, is described by Pretrial Order No. 8A (Rec. Doc. No. 6960).

1.53. **Pledged Assets.** "Pledged Assets" shall mean the assets of KI, as agreed upon by the Parties, pledged to secure the obligations of the Knauf Defendants to make payments under the Settlement pursuant to the Security Agreement.

1.54. **Preliminary Approval Order.** "Preliminary Approval Order" shall mean an order of this Court preliminarily approving the Settlement.

1.55. **Proof of Claim Form.** "Proof of Claim Form" shall mean the form by which Class Members submit claims for benefits in a format to be mutually agreed upon by the Parties and approved by the Court.

1.56. **Realtors.** "Realtors" shall mean any realtors involved in any real estate transaction with respect to any property with KPT Chinese Drywall.

1.57. **Related Actions.** "Related Actions" shall mean any and all state court, federal court, foreign court, international tribunal or arbitration claims arising out of, or related to KPT Chinese Drywall, regardless of whether the Knauf Defendants are parties, including, but not limited to, the matters identified in Exhibit E hereto.

1.58. **Related Claims.** "Related Claims" shall mean unlitigated claims of a Class Member against the Knauf Defendants arising out of, or related to KPT Chinese Drywall.

1.59. **Released Claims.** "Released Claims" shall have the meaning set forth in Section 5.1.

1.60. **Released Party.** "Released Party" or "Released Parties" shall mean the Knauf Defendants and the Other Releasees and their respective parents, subsidiaries, affiliates, divisions, predecessors, successors, heirs, legal representatives, legatees and/or assigns, together with past, present and future officers, directors, board members, shareholders, members, presidents, managers, partners, employees, distributors, retail dealers, agents, servants, representatives, consultants, in-house or outside attorneys, insurers, and reinsurers of each of the foregoing.

1.61. **Remediation Claims.** "Remediation Claims" shall mean claims associated with the KPT Property Owner's or Mixed Property Owner's remediation of the

Affected Property prior to the Execution Date, including the reasonable costs of remediation and the Other Covered Expenses.

1.62. **Remediation Fund.** "Remediation Fund" shall mean the Fund described in Section 4.2 below.

1.63. **Remediation Protocol.** "Remediation Protocol" shall mean the protocol for remediating Affected Properties attached as Exhibit F.

1.64. **Replacement Security.** "Replacement Security" shall mean the letter of credit, bank guarantee and/or collateral assets described in Section 17.1.4.

1.65. **Security Agreement.** "Security Agreement" shall mean the security agreement to be agreed upon by the Parties and approved by the Court in a form that will be attached hereto as Exhibit G. A mutually satisfactory Security Agreement is a condition precedent to the performance of the Parties' obligations under this Agreement.

1.66. **Settlement.** "Settlement" shall mean this Settlement Agreement and the settlement for which it provides resolving all claims by Participating Class Members against the Knauf Defendants, as well as all exhibits attached hereto or incorporated herein by reference.

1.67. **Settlement Administrator.** "Settlement Administrator" shall mean the person or entity appointed by the Court to administer the Settlement. The parties shall jointly recommend that Lynn C. Greer, Esq. of BrownGreer PLC (115 S. 15th Street, Suite 400, Richmond, VA 23219-4209, Tel: (804) 521-7202, Fax: (804) 521-7299, e-mail: lgreer@browngreer.com) be appointed Settlement Administrator.

1.68. **Settlement Class Counsel.** "Settlement Class Counsel" shall mean MDL No. 2047 Plaintiffs' Liaison Counsel and MDL No. 2047 Plaintiffs' Lead Counsel Russ Herman and Arnold Levin.

1.69. **Settlement Funds.** "Settlement Funds" shall mean the Remediation Fund and the Other Loss Fund.

1.70. **Settling Defendants.** "Settling Defendants" shall mean the Knauf Defendants.

1.71. **Shared Costs.** "Shared Costs" shall have the meaning set forth by the Court in Pretrial Order No. 9.

1.72. **Special Master.** "Special Master" shall mean the person or entity appointed by the Court responsible for reviewing information submitted by Participating Class Members and making determinations concerning individual Participating Class Members' benefits under the Settlement Funds. The parties shall jointly recommend that John W. Perry, Jr. of Perry Atkinson Balhoff Mengis & Burns, LLC be appointed Special Master. The parties shall jointly recommend that

Patrick A. Juneau of the Juneau Firm be appointed as an additional Special Master in the event that the Special Master appointed by the Court is unable to perform all the duties assigned.

1.73. **Subcontractor.**  "Subcontractor" shall mean any subcontractor which took part in the building, remodeling or restoration of any property with KPT Chinese Drywall.

1.74. **Subsupplier.**  "Subsupplier" shall mean any person or entity to which a Supplier sold, marketed, distributed, or supplied KPT Chinese Drywall, directly or indirectly, to be provided to another for use or installation, in any property.

1.75. **Suppliers.**  "Suppliers" shall mean, Banner, InEx and L&W.

1.76. **Tenants.**  "Tenants" shall mean any person or entity who rents Affected Property with KPT Chinese Drywall.

1.77. **Xactimate.**  "Xactimate" shall mean the full estimate, including 10% for contractor overhead and 10% for contractor profit (but no additional overhead and profit for the Lead Contractor), prepared by the Lead Contractor using the Xactimate software as described in the Court's Findings of Fact and Conclusions of Law in *Hernandez v. Knauf Gips KG*, No. 09-6050 and the testimony and exhibits cited therein for purposes of determining benefits under Sections 4.3.2 through 4.3.6.  For each KPT Property, the Lead Contractor shall prepare the Xactimate based on the KPT Property's geographic location and the most recent complete Xactimate pricing.

2. **Effective Date**

2.1. It shall be a condition precedent to the Knauf Defendants' and PSC's obligations under this Settlement that the Insurer Class Settlement be finalized in a form satisfactory to the PSC and the Knauf Defendants, including a release by the insurers and their insureds of claims against the Knauf Defendants and Other Releasees arising from KPT Chinese Drywall as contemplated by Sections 5.3 through 5.6 of the Insurer Class Settlement.

2.2. The "Effective Date" of this Settlement shall be the date when the Settlement becomes Final. "Final" means:

2.2.1. If no objections to the Settlement are filed, or if any objections are filed and voluntarily withdrawn prior to entry of the Order and Judgment, then the date 30 days following the approval by the Court of the Order and Judgment and its entry on the Court's docket, if there is no appeal; or

2.2.2. If any objections are filed and not voluntarily withdrawn prior to the entry of the Order and Judgment, then the later of: (a) the expiration of the time to file or notice any appeal from the Court's Order and Judgment

approving this Settlement; or (b) the date of final affirmance of any appeals therefrom.

3. **Settlement of All Claims Against The Knauf Defendants**

3.1. The Settlement will settle and resolve with finality on behalf of Participating Class Members the Litigation, the Released Claims, and the Related Claims against the Knauf Defendants and any other claims that have been brought, could have been brought or could be brought now or at any time in the future by Participating Class Members in the Litigation or any other proceeding relating to KPT Chinese Drywall, whether legal or otherwise.

3.2. The Settlement will not settle or release any claims by way of contribution or indemnification that the Knauf Defendants may have against third parties or any claims by Participating Class Members against third parties that any Knauf Defendant has obtained by way of assignment arising out of, in any manner related to, or connected in any way with KPT Chinese Drywall, except to the extent such third party has provided the Knauf Defendants with a reciprocal release and except that the Knauf Defendants release all such claims against Other Releasees, to the extent their insurers participate in the Insurer Class Settlement. The Parties will not interfere with the Knauf Defendants' rights or efforts to assert claims by way of contribution or indemnity against third parties arising out of, in any manner related to, or connected in any way with KPT Chinese Drywall.

4. **Settlement Funds**

4.1. In consideration of settlement of all claims against the Knauf Defendants by Participating Class Members, the Knauf Defendants shall establish two funds, a Remediation Fund and an Other Loss Fund. Only the Owner Subclasses are eligible to participate in the Remediation Fund. Both the Owner Subclasses and the Tenant Subclass are eligible to participate in the Other Loss Fund.

4.2. **Establishment and Administration of the Remediation Fund**:

4.2.1. The Remediation Fund will be a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended. The escrow agreement establishing the Remediation Fund will be in a form mutually agreed upon by the Parties and approved by the Court.

4.2.2. The Remediation Fund will be established through an initial deposit by the Knauf Defendants of $200 million paid within 30 days of the Court's Order and Judgment approving the Settlement and shall be replenished in increments of $50 million as of each time the balance of the Fund is reduced to $25 million. All funding of the Remediation Fund shall be in US dollars. The parties may agree, or the Court may order, that there be a lower amount of replenishment upon a showing that the remaining

liabilities of the Remediation Fund are less than $75 million, and that there be no replenishment upon a showing that the remaining liabilities of the Remediation Fund are less than $25 million.

4.2.3.  The net amounts recovered after payment of attorneys' fees and costs from the Insurer Class Settlement and from settlements with Excluded Releasees and/or their insurers prior to the fairness hearing toward payment of claims related to KPT Chinese Drywall and after allocation between KPT Chinese Drywall and Non-KPT Chinese Drywall shall be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund.

4.2.4.  If the amount specified in paragraphs 4.2.2 and 4.2.3 is insufficient at any time to pay all or any outstanding Approved Claims and Administrative Expenses, upon fifteen (15) days notice, the Knauf Defendants will replenish the Remediation Fund in payments on an as needed basis to satisfy the outstanding Approved Claims and Administrative Expenses. Within the time period described above, the Settlement Administrator shall determine when, and if so the amount of any replenishment payments required under this Section. The Settlement Administrator shall retain the services of a certified public accountant, following approval of the Court, to assist in overseeing and administering this Fund.

4.2.5.  The Knauf Defendants will be entitled to receive a refund of any amounts remaining in the Remediation Fund after all Participating Owner Class Members have been compensated and all Administrative Expenses have been paid.

4.2.6.  Administrative Expenses of the Remediation Fund will be paid from interest earned on the amounts deposited. If the interest is insufficient to pay all expenses, the Remediation Fund will pay any amounts necessary to cover the shortfall out of principal.

4.2.7.  The Settlement Administrator shall provide to the Court on a monthly basis, and as requested, financial reports, including all expenditures and receipts, the expense of which is to be borne by the Remediation Fund. Copies of the monthly financial reports shall also be provided to the Knauf Defendants and Settlement Class Counsel. Settlement Class Counsel and the Knauf Defendants shall have the right to audit the Remediation Fund at their own expense.

4.2.8.  All decisions by the Settlement Administrator or Special Master with respect to the Remediation Fund shall be in writing and shall be served on the parties by overnight mail to Settlement Class Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106) and Russ M. Herman (Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, New Orleans, Louisiana 70113), and

the Knauf Defendants' counsel, Kerry Miller (Frilot L.L.C., 1100 Poydras Street, Suite 3700, New Orleans, LA 70163).

4.2.9.  Unless otherwise final and binding pursuant to the relevant sections below, decisions of the Special Master with respect to the Remediation Fund may be appealed by Settlement Class Counsel, the Knauf Defendants or an affected Class Member within 15 days of service of the Special Master's decision by filing an objection with the Court, but only after Settlement Class Counsel, the Knauf Defendants, and, if applicable, an affected Class Member's counsel meet and confer in an attempt to resolve such issue. Unless the Court orders otherwise, appeals will be based on the record and briefing before the Special Master without further evidentiary submissions, briefing or argument. Any Party may, at its own expense, request that proceedings before the Special Master be transcribed. The Court's decision on any objections will be final, with no further appeals permitted.

4.3.  **Remediation Fund Benefits.**  KPT Property Owner Subclass Members can elect one of the following benefits from the Remediation Fund:

4.3.1.  **Option 1.  Program Contractor Remediation Option/Property Not Yet Remediated:**  For KPT Property Owners selecting this option, the Remediation Fund will pay the Lead Contractor or Other Approved Contractor to remediate the Owner's KPT Property, according to the Remediation Protocol and consistent with Section 4.5 below, plus, for Residential Owners, the applicable Other Covered Expenses according to the following criteria:

4.3.1.1.  **Lump Sum Payment.**

4.3.1.1.1.  For KPT Properties that are less than or equal to 3,500 square feet "under air," as determined by the Lead Contractor or Other Approved Contractor and as set forth in the Sample Contractor-KPT Property Owner Agreement attached as an exhibit to the Remediation Protocol ("Under Air Area"), a single payment ("Lump Sum Payment") of $8.50 per square foot of the Under Air Area.

4.3.1.1.2.  For KPT Properties that have an Under Air Area greater than 3,500 square feet, a Lump Sum Payment of $10.00 per square foot of the Under Air Area.

4.3.1.1.3.  The Lump Sum Payment will be paid to the KPT Property Owner as soon as practicable, but not

14

more than fifteen (15) days, after the KPT Property Owner executes an agreement substantially in the form of the Sample Contractor-KPT Property Owner Agreement.

4.3.1.2.  **Delay Period Payment.**  In the event that the remediation work is not substantially complete at the end of the three-month period commencing with the date on which the Lead Contractor or Other Approved Contractors starts the remediation work ("Move-Out Date"),

4.3.1.2.1.  For KPT Properties that have an Under Air Area less than or equal to 3,500 square feet, an additional payment of $1.50 per square foot of the Under Air Area for each additional month ("the Delay Period Payment") that the KPT Property Owner is displaced from the KPT Property (the "Delay Period"), subject to the following:

a.  In the event of an unanticipated delay in the scheduled time for remediation, as disclosed to the KPT Property Owner prior to the Move-Out Date, such Delay Period shall be the period commencing three months after the Move-Out Date and terminating 10 business days after the KPT Property Owner has received both a certificate of occupancy and an Environmental Certificate from the Lead Contractor or Other Approved Contractor.

b.  However, where the Lead Contractor or Other Approved Contractor initially schedules a remediation to go beyond the three-month period commencing with the Move-Out Date, and the Lead Contractor or Other Approved Contractor so advises the KPT Property Owner prior to the Move-Out Date, the Delay Period shall be the period commencing three months after the Move-Out Date and terminating at the initially scheduled completion date.  For example, if the Lead Contractor initially schedules a remediation to last four months beyond the Move-Out Date and the remediation is completed on schedule, the Delay Period shall be one month (the period commencing three months after the Move-Out Date and terminating at the initially scheduled completion date).

4.3.1.2.2.   For KPT Properties that have an Under Air Area greater than 3,500 square feet, a single, one-time Delay Period Payment of $1.50 per square foot of the Under Air Area.

4.3.1.3.   The Lump Sum Payment and any Delay Period Payment are solely for the benefit of the KPT Property Owner.   KPT Property Owners' counsel shall not deduct any contingency fee or any other fee or expenses from the Lump Sum Payment and any Delay Period Payment.  To the extent fees or expenses are to be paid based on such Payments, such fees and expenses shall be determined according to the procedures set forth in Section 14.

4.3.2.   **Option 2.   Self-Remediation Option:**   For KPT Property Owners selecting this option, the Remediation Fund will pay the KPT Property Owner's chosen contractor an amount equal to the higher of the Final Cost Estimate prepared by the Lead Contactor or 65% of the Xactimate prepared by the Lead Contractor to remediate the KPT Property under the Remediation Protocol.  The Lead Contractor shall provide the Final Cost Estimate and Xactimate to the Settlement Administrator who shall make it available to the KPT Property Owner.  In addition, for Residential Owners who select the Self-Remediation Option, the Remediation Fund will pay the Lump Sum Payment under Section 4.3.1.1, but not the Delay Period Payment under Section 4.3.1.2.

4.3.2.1.   To exercise this option, the KPT Property Owner must submit a binding contract with an insured and licensed contractor providing for the scope of work equivalent to that set forth in the Remediation Protocol.   The contract must include a representation that the contractor is insured for residential construction.

4.3.2.2.   Any payments pursuant to this option will be made directly to the licensed contractor upon a determination by the Settlement Administrator that the licensed contractor has performed satisfactory work consistent with the contract, except that for Residential Owners, the payment for Other Covered Expenses will be made directly to the KPT Property Owner.  Of the amount designated for remediation, 30% will be paid to the licensed contractor for building permits and fees and as a down payment  within 15 days of the provision by the KPT Property Owner of a binding contract with the licensed contractor under Section 4.3.2.1, 30% upon the KPT Property Owner's providing the Settlement Administrator with the Environmental Certificate and certification of removal of the electrical wiring, home security equipment, and copper gas lines in compliance with the

16

Remediation Protocol; 30% upon completion of drywall installation, and the remaining 10% to be paid upon the KPT Property Owner's submission of proof acceptable to the Settlement Administrator that the remediation of the KPT Property has been completed according to the Remediation Protocol and that the Contractor has provided to the homeowner a final release of lien or liens, or such other sufficient evidence, demonstrating that any actual or potential liens filed in relation to the remediation work have been either released or bonded off such that the KPT Property Owner's title is clear of all liens related to the remediation work. The amount designated for Other Covered Expenses will be paid upon the Settlement Administrator's determination that the claim is qualified.

4.3.2.3.  The licensed contractor or any subcontractor or any person or entity retained by the licensed contractor shall not be the agent of the Knauf Defendants, the PSC or the Remediation Fund. Nor shall the Knauf Defendants, the PSC or the Remediation Fund be responsible for or warrant any facet of the remediation work, including but not limited to, the removal and disposal of the drywall from the KPT Property, which shall be disposed of at an appropriate construction and demolition solid waste landfill in accordance with waste regulations of the jurisdiction where the KPT Property is located, the remediation work performed by the licensed contractor, any damages caused by the remediation, and/or any appliances replaced or reinstalled during the remediation. The licensed contractor must provide a certification to the Settlement Administrator that, in disposing the drywall, it has complied with the applicable waste regulations of its jurisdiction. The Knauf Defendants, the PSC and the Remediation Fund shall not be responsible for any warranties and/or liens placed on the KPT Property as a result of the remediation work performed under Section 4.3.2. The KPT Property Owner and the licensed contractor shall indemnify, defend and hold harmless the Knauf Defendants, the PSC and the Remediation Fund from and against all claims and future claims relating to any facet of the remediation work performed under Section 4.3.2. The Knauf Defendants, the PSC and the Remediation Fund shall have no liability related to the remediation work performed under Section 4.3.2. other than the Knauf Defendants' and the Remediation Fund's obligation to provide funds for the remediation according to the terms of this Settlement.

4.3.3.  **Option 3.  Cash-Out Option:** For KPT Property Owners selecting this option, the Remediation Fund will pay the KPT Property Owner an amount of money equal to the amount specified in Section 4.3.2; however,

because the KPT Property Owner is not remediating that KPT Property, and therefore to account for additional risk to the Knauf Defendants, such amount will be reduced by $7.50 per square foot.  In addition, for Residential Owners who select this option, the Remediation Fund will pay the KPT Property Owner a reduced Lump Sum Payment of $3.50 per square foot under Section 4.3.1.1 because the KPT Property Owner will not incur alternative living expenses.  The Remediation Fund will not pay a Delay Period Payment under Section 4.3.1.2 to a KPT Property Owner who selects this option.  The KPT Property Owner may select this option only (i) if there is no mortgage or other lien on the property, or if the KPT Property Owner provides a release by the Mortgagee(s) or Lienholder(s) to the Knauf Defendants and Other Releasees; (ii) if the KPT Property Owner records the existence of reactive Chinese Drywall in the local property clerks' office, if permitted by local law; and (iii) covenants to inform subsequent purchasers of the KPT Property of the presence of KPT Chinese Drywall by stating under oath in application for this benefit that "I will inform any subsequent purchaser in writing that there is reactive KPT Chinese Drywall in the KPT Property and I will defend and indemnify the Knauf Defendants and any other person or entity released by the Settlement against claims asserted by subsequent purchasers arising from KPT Chinese Drywall."

4.3.4.   **Mixed Property Owners:**  Mixed Property Owners may select only the Self-Remediation Option (as set forth in Section 4.3.2) or the Cash-Out Option (as set forth in Section 4.3.3).

4.3.4.1.   In the event a Mixed Property Owner selects the Self-Remediation Option, in accordance with Section 4.3.4.1.1, the Remediation Fund will pay the Mixed Property Owner's chosen contractor amounts equal to the cash payments specified in Section 4.3.2 multiplied by the KPT Drywall Percentage and pursuant to the payment schedule set forth in Section 4.3.2.2. In accordance with Section 4.3.4.1.1, the Mixed Property Owner shall be responsible for paying the chosen contractor the remaining amounts due under his or her contract with the chosen contractor (the "Mixed Property Owner Payment").  In addition, the Remediation Fund will pay the Mixed Property Owner the Lump Sum Payment specified in Section 4.3.1.1 multiplied by the KPT Drywall Percentage.

4.3.4.1.1.   As a precondition to the Remediation Fund's obligation to pay the Mixed Property Owner's chosen contractor, within 15 days of the Mixed Property Owner's submission to the Settlement Administrator, the Mixed Property Owner will deposit the Mixed Property Owner Payment into an escrow account to be established by the Mixed

Property Owner and the Knauf Defendants, . There shall be a single escrow agent mutually agreeable to the Parties for all such escrow accounts. After the Mixed Property Owner deposits the Mixed Property Owner Payment into the escrow account, the Remediation Fund shall deposit an amount equal to the cash payments specified in Section 4.3.2 multiplied by the KPT Drywall Percentage. The Mixed Property Owner's chosen contractor shall be paid from the escrow account pursuant to the schedule in Section 4.3.2.2. If the Mixed Property Owner fails to deposit the Mixed Property Owner Payment, the Mixed Property Owner shall be deemed to have selected the Cash-Out Option under Section 4.3.3.

4.3.4.1.2.   The Mixed Property Owner and his or her chosen contractor shall be subject to all the terms, conditions and deadlines set forth in Sections 4.3.2.1 through 4.3.2.3.

4.3.4.1.3.   The Mixed Property Owner may choose the Lead Contractor or an Other Approved Contractor as his or her chosen contractor. In that event, the Mixed Property Owner and the Lead Contractor or an Other Approved Contractor shall be subject to all the terms and conditions set forth in Section 4.3.2.

4.3.4.2.   In the event a Mixed Property Owner selects the Cash-Out Option, the Remediation Fund will pay the Mixed Property Owner an amount equal to the payment specified in Section 4.3.2 multiplied by the KPT Drywall Percentage and the Lump Sum Payment specified in Section 4.3.1.1 multiplied by the KPT Drywall Percentage. The Remediation Fund will not pay the Delay Period Payment to a Mixed Property Owner who selects the Cash-Out Option. A Mixed Property Owner who selects the Cash-Out Option must satisfy the conditions specified in the last sentence of Section 4.3.3, except for the condition that the Mixed Property Owner provide a release from the Mortgagee(s) or Lienholder(s) to the Knauf Defendants and Other Releasees set forth in subsection (i) of that sentence.

4.3.4.3.   Mixed Property Owners shall retain all their rights against any and all parties responsible for damages incurred as a result of Non-KPT Chinese Drywall to the extent not previously resolved

by settlement or judgment. The Knauf Defendants shall retain all their rights to contribution and indemnity to recover Mixed Property Payments from any and all parties responsible for damages incurred as a result of Non-KPT Chinese Drywall.

4.3.5. **Foreclosed Properties:** In the case of Foreclosed Properties:

4.3.5.1. For Foreclosed Properties, (a) the Mortgagee shall be entitled to the benefits under Sections 4.3.1, 4.3.2 or 4.3.3, except for the Other Covered Expenses, but only if the Mortgagee became the Owner after foreclosure and remains the Owner of the Affected Property and the Mortgagee provides a release to the Knauf Defendants and Other Releasees; and (b) the Owner prior to the foreclosure shall be entitled to the Lump Sum Payment under Section 4.3.1.1, but not the Delay Period Payment under Section 4.3.1.2.

4.3.6. Multiple Unit Properties.

4.3.6.1. **General Terms**

4.3.6.1.1. **Choice of Remediation Options Based on Feasibility of Individual Unit Remediation.** The Remediation Fund options available for Multiple Unit Properties will depend upon (i) whether it is feasible to treat each individual unit in the Multiple Unit Property as an individual property, and (ii) whether all units with KPT Chinese Drywall in a Multiple Unit Property are KPT Properties or whether some are Mixed Properties.

4.3.6.1.2. **Determination of Feasibility.** It is feasible to treat each unit in a Multiple Unit Property as a single property if the unit can be remediated without need to remediate any other part of the Multiple Unit Property. The Lead Contractor and/or Other Approved Contractor shall determine, in their sole discretion, whether it is feasible to remediate individual units without need to remediate any other part of the Multiple Unit Property.

4.3.6.1.3. **Limitations on Choice of Options.** Where it is feasible to treat each unit in a Multiple Unit Property as an individual property and the Multiple Unit Property Governing Body selects

the Program Contractor Remediation Option (as set forth in Section 4.3.1) for some individual units and the Self-Remediation Option (as set forth in Section 4.3.2) for other individual units and/or remediation of common areas, no work under the Self-Remediation Option shall commence until all work under the Program Contractor Remediation Option in the Multiple Unit Property has been completed because of the infeasibility of having multiple contractors remediate a single Multiple Unit Property.

4.3.6.1.4. **Calculation of the KPT Drywall Percentage**. For Multiple Unit Properties that are Mixed Properties, the following method shall be used to calculate the KPT Drywall Percentage:

a.  Any individual unit that is not inspected shall be presumed to contain only Non-KPT Chinese Drywall and its KPT Drywall Percentage shall be presumed to be 0%. The Multiple Unit Property Governing Body may seek to rebut that presumption by requesting an inspection at its own costs of any or all such units under the Inspection Protocol.

b.  In determining the KPT Drywall Percentage for the Multiple Unit Property, the numerator shall be calculated by adding the KPT Drywall percentage for each individual unit (expressed as a decimal, for example a unit with a KPT Drywall Percentage of 100% shall equal 1 and a unit with a KPT Drywall Percentage of 50% shall equal .5). The denominator shall be the total number of individual units.

c.  For example, assume a Multiple Unit Property has 100 individual units with (i) 25 individual units that have a KPT Drywall Percentage of 100%; (ii) 25 individual units that have a KPT Drywall Percentage of 50%; and (iii) 50 individual units that were not inspected. In that circumstance, in determining the KPT Drywall Percentage for the Multiple Unit Property, the numerator shall be 37.5 (25 individual units x 1, plus 25 individual units x .5, plus 50 individual units x 0). The denominator shall be 100 (the total number of

21

units in the building). The KPT Drywall Percentage for the Multiple Unit Property shall be 37.5%, which, pursuant to Section 1.26, shall be rounded to 40%.

4.3.6.1.5.   **Obligations of the Multiple Unit Property Governing Body.**

a.   Regardless of its selection of either the Program Contractor Remediation Option or Self-Remediation Option, the Multiple Unit Property Governing Body must do the following;

(i)     as to the common areas provide a written representation that it has the legal authority to bind all individual unit property owners to its selection; and

(ii)    as to individual units that are Affected Properties, obtain informed written consent of all owners of such individual units to the Multiple Unit Property Governing Board's selection.

(iii)   In addition, due to possible inconvenience caused by the remediation to all owners of individual units that are not Affected Properties, the Multiple Unit Property Governing Body must obtain informed written consent of all owners of such individual units to the Multiple Unit Property Governing Board's selection. In the event that the Multiple Unit Property Governing Body is unable to obtain informed written consent of all owners of individual units that are not Affected Properties, the Multiple Unit Property Governing Body shall be limited to the Cash-Out Option unless otherwise agreed to by the Knauf Defendants.

b.   To the extent that the Multiple Unit Property Governing Body selects the Program Contractor Remediation Option, it, and the individual unit owners and tenants, must comply with the remediation schedule and relocation plan created

22

by the Lead Contractor or Other Approved Contractor.

(i)     The Lead Contractor or Other Approved Contractor shall provide a proposed remediation schedule and relocation plan to Settlement Class Counsel, the Knauf Defendants and the Multiple Unit Governing Body. Within 15 days after notice, any Party may object to the proposed remediation schedule and relocation plan in writing to the Special Master and provide copies to the other parties. If, after 15 days, there are no objections, the proposed remediation schedule and relocation plan shall be final. If, after 15 days, there are objections, the Special Master shall resolve them.

c.      To the extent that the Multiple Unit Property Governing Body selects the Cash-Out Option for an individual unit, the Multiple Unit Governing Body and/or the individual unit owners of Affected Properties shall comply with all the requirements in Section 4.3.3. and the Multiple Unit Governing Body must provide the Releases set forth in Section 5 from the individual unit owners of Affected Properties.

d.      The Multiple Unit Property Governing Body must secure from all individual unit owners a dismissal with prejudice of the individual unit owners' claims against the Knauf Defendants and Other Releasees, but not the Excluded Releasees, relating to the KPT Chinese Drywall in the individual unit.

4.3.6.2.   **Options available to the Multiple Unit Property Governing Body where, pursuant to Section 4.3.6.1.2, it is feasible treat each unit as a single property.** For individual units that are KPT Properties located in a Multiple Unit Property, where feasible as defined in Section 4.3.1.6.2, each individual unit shall be treated as a single KPT Property without regard to its existence in a Multiple Unit Property.

4.3.6.2.1.   Where no individual unit in the Multiple Unit Property is a Mixed Property, the Multiple Unit

23

Property Governing Body for the Multiple Unit Property shall be permitted to select from among the Program Contractor Remediation Option (set forth in Section 4.3.1), the Self Remediation Option (set forth in Section 4.3.2), and the Cash-Out Option (set forth in Section 4.3.3), for each individual unit, subject to Section 4.3.5. Such options will be available for the common areas. In the event that the Multiple Unit Property Governing Body opts out of this Settlement, subject to the Knauf Defendants' termination rights under Sections 8.3 and 13.2, nothing in this Settlement shall prevent an individual unit owner from participating in this Settlement, and receiving benefits available to Owners, provided that the individual unit can be remediated on an individual basis, included but not limited to without the need for consent to the remediation by the Multiple Unit Property Governing Body. In such instance, however, unless all such individual unit owners select the Program Contractor Remediation Option, such individual unit owners will be permitted to select only between the Self-Remediation Option and the Cash-Out Option.

4.3.6.2.2.　　Where any individual unit in the Multiple Unit Property is a Mixed Property, the Program Contractor Remediation Option shall not be available, and the Multiple Unit Property Governing Body shall only be permitted to select from among the Self-Remediation Option and the Cash-Out Option both of which shall be subject to terms set forth in Section 4.3.4 governing Mixed Properties. Such options will be available for the common areas. The KPT Drywall Percentage for the common areas will be the KPT Drywall Percentage of the entire Multiple Unit Property as determined under Section 4.3.6.1.4.

**4.3.6.3.　Options Available to the Multiple Unit Property Governing Body where, pursuant to Section 4.3.6.1.2, it is not feasible to treat each unit as a single property.**

4.3.6.3.1.　　Where there are no individual units that are Mixed Properties, the Multiple Unit Property Governing Body shall be permitted to select a single option from among the Program Contractor Remediation

24

Option (set forth in Section 4.3.1), the Self-Remediation Option (set forth in Section 4.3.2) and the Cash-Out Option (set forth in Section 4.3.3), which shall apply to the entire Multiple Unit Property, subject to Sections 4.3.5 and 4.3.6.1.5.

4.3.6.3.2.   Where there are individual units that are Mixed Properties or that contain Non-KPT Chinese Drywall (but not KPT Chinese Drywall), the Multiple Unit Property Governing Body shall be permitted to select between the Self-Remediation Option and the Cash-Out Option, which shall apply to the entire Multiple Unit Property, subject to Sections 4.3.4, 4.3.5, and 4.3.6.1.5, and to the common areas. The KPT Drywall Percentage for the common areas will be the KPT Drywall Percentage of the entire Multiple Unit Property as determined under Section 4.3.6.1.4.

4.3.6.4.   To the extent that the Multiple-Unit Property Governing Body chooses the Cash-Out Option for the common areas, any payments with respect to the common areas will be equitably distributed to all individual unit owners and/or the Multiple Unit Property Governing Body to the extent of their respective legal ownership in the common areas.

4.3.6.5.   **Complex High Rise Structures With Special Issues.** Settlement Class Counsel and the Knauf Defendants recognize that special unanticipated issues may arise involving certain complex high rise structures. If Settlement Class Counsel and the Knauf Defendants are in agreement that a particular high rise structure presents special unanticipated issues, they may by mutual agreement, after consultation with counsel for Participating Class Members connected with the Affected Property, propose a solution that is tailored to the circumstances of that Affected Property. Settlement Class Counsel and the Knauf Defendants must each agree that a high rise structure qualifies for this provision, and to the proposed solution. Participating Class Members may accept the proposed solution or appeal to the Court, which shall then decide the issue without further appeal.

4.3.7.   **Already Remediated Properties.**

4.3.7.1.   Owners who have self-remediated Affected Properties or have entered into contracts to self-remediate Affected Properties

25

prior to the Execution Date shall be entitled to benefits to resolve their Remediation Claims as provided in the Already Remediated Properties Protocol.  Such benefits shall be paid from the Remediation Fund.  In addition, such Owners are entitled to seek benefits from the Other Loss Fund.

4.3.8.  **Timing for Election of Options.**

4.3.8.1.  Prior to any qualified Class Member selecting one of the above options, the Lead Contractor or Other Approved Contractor shall prepare an Xactimate and a Final Cost Estimate for the Affected Property and shall provide such documents to the Settlement Administrator, who shall make them available to the Class Member.

4.3.8.2.  Subject to the conditions set forth in Section 4.3.1 through 4.3.6, within 45 days of the receipt of the Xactimate and Final Cost Estimate from the Settlement Administrator, the Class Member shall notify the Settlement Administrator of his or her election of the Program Contractor Remediation Option (as set forth in Section 4.3.1), the Self-Remediation Option (as set forth in Section 4.3.2), or the Cash-Out Option (as set forth in Section 4.3.3).

4.3.8.2.1.  To the extent that the Class Member elects the Self-Remediation Option, the Class Member must also submit a binding contract as provided in Section 4.3.2.1 at the same time as the election.

4.3.8.2.2.  To the extent that the Class Member elects the Cash Option, the Class Member must also have complied with the requirements set forth in Section 4.3.3 by the time of election.

4.4.  **Remediation Fund Qualifying Procedures**

4.4.1.  In order to qualify for benefits of the Remediation Fund an Owner Subclass Member whose property has not already been remediated must submit physical proof such as photographic evidence or inspection reports satisfactory to the Settlement Administrator that the property has KPT Chinese Drywall.  The Settlement Administrator shall be trained on the identification of KPT Chinese Drywall by the Approved Inspectors identified in the Inspection Protocol.  An Owner Subclass Member who has submitted satisfactory physical proof must submit his property for an inspection pursuant to the Inspection Protocol by an inspector retained by the Knauf Defendants to verify (a) that the property contains KPT Chinese Drywall, (b) proof of corrosion or other acceptable evidence that the KPT

26

Chinese Drywall was reactive, and (c) the KPT Chinese Drywall Percentage (which will also determine whether the Affected Property is a KPT Property or a Mixed Property).  As soon as practicable, but not less than 15 days from the Settlement Administrator's determination that the Owner Subclass Member has submitted satisfactory physical proof, the inspector shall contact the Owner Subclass Member to schedule a date for the inspection.  All inspections and inspectors shall be paid out of the Remediation Fund unless the inspection has been procured by fraud. Inspections shall be conducted pursuant to the Inspection Protocol and all inspectors must be approved by the Knauf Defendants and Settlement Class Counsel.  The inspector shall determine whether the property has KPT Chinese Drywall and if so the KPT Drywall Percentage based solely on the methodology set forth in the Inspection Protocol.  The inspector's determination shall be final unless the Knauf Defendants, Settlement Class Counsel or the Owner Subclass Member objects to the inspector's determination.  In that event, the Knauf Defendants, Settlement Class Counsel and the Owner Subclass Member shall meet and confer in an attempt to resolve the objection, and to the extent the objection is not resolved within 5 business days, the objection shall be submitted to the Special Master who shall resolve the objection based solely on the methodology set forth in the Inspection Protocol, which shall be final and binding on all Parties, and not on any other methodology.

4.4.2.   All Owner Subclass Members must submit their claims to the Settlement Administrator by a date to be established by the Court.   Untimely submitted claims shall be rejected unless the Court extends the deadline for good cause shown.

## 4.5.   Cost Control and Dispute Resolution Mechanisms for Program Contractor Remediation Option

4.5.1.   In conducting their duties, the Lead Contractor and Other Approved Contractors shall conduct the remediation work so as to achieve, on a cost effective basis, the removal of all KPT Chinese Drywall, KPT Chinese Drywall-related odors and contamination; and to leave the home with the same construction quality and finishes, including remediating any damage to such quality and finishes that was caused by the KPT Chinese Drywall, as existed prior to the start of the remediation or damages caused by the remediation work subject to the Sample Contractor-KPT Property Owner Agreement attached as an exhibit to the Remediation Protocol.  To that end, the Parties agree to the following cost-control procedures:

4.5.1.1.   The Knauf Defendants, in consultation with Settlement Class Counsel, have selected the Lead Contractor to undertake the remediation of KPT Properties to be remediated pursuant to the Program Contractor Remediation Option described in Section 4.3.1.  The contract between the Lead Contractor and the Knauf

Defendants entered into for purposes of the Pilot Program shall remain in effect but shall be modified or amended so as to achieve the objectives of this Settlement, including to provide that payments due the Lead Contractor shall be made from the Remediation Fund.

    4.5.1.1.1.    The Knauf Defendants reserve the right to assign an Other Approved Contractor to perform and/or oversee the remediation in a particular KPT Property, being remediated pursuant to the Program Contractor Remediation Option, for any reason, including, but not limited to, circumstances where the Other Approved Contractor can remediate the KPT Property on a more cost-efficient basis.

4.5.1.2.    For KPT Properties to be remediated pursuant to the Program Contractor Remediation Option described in Section 4.3.1, the Knauf Defendants shall solicit and approve a detailed estimate of the costs to do the remediation work ("Preliminary Cost Estimate") from the Lead Contractor or an Other Approved Contractor. The Lead Contractor or an Other Approved Contractor shall submit the Preliminary Cost Estimate to the Settlement Administrator. Absent action by the Knauf Defendants within five business days, the Preliminary Cost Estimate shall be deemed the Final Cost Estimate. Upon the Knauf Defendants' approval of the Final Cost Estimate, the Final Cost Estimate shall be submitted to the Settlement Administrator.

    4.5.1.2.1.    In the event that a dispute arises between a KPT Property Owner and the Lead Contractor or Other Approved Contractor over the Remediation Protocol for the individual KPT Property, such dispute shall be submitted to the Special Master who will resolve the dispute. The parties shall cooperate with the Special Master to resolve any disputes expeditiously and avoid, to the maximum extent possible, any delay in the remediation.

    4.5.1.2.2.    Any expenses associated with a dispute between a KPT Property Owner and the Lead Contractor or Other Approved Contractor ("Mediation Expenses") as regards the Remediation Protocol, including progress and quality, and any warranties provided by the Contractor, will be jointly shared by the Knauf Defendants and the KPT Property

28

Owner.  In the event that disputes asserted by a Party are asserted in bad faith, the Special Master may in his discretion direct that the Mediation Expenses incurred in resolving any such bad faith disputes asserted by that Party will be paid by same; otherwise, expenses will be shared equally by the Parties to the dispute.

4.5.1.3.    As soon as practicable after the Effective Date, the Settlement Administrator shall provide the Lead Contractor with a list of those Class Members who have selected the Program Contractor Remediation Option.   Thereafter, the Lead Contractor shall develop a remediation schedule that will provide a consistent flow of work to the Lead Contractor to allow the Lead Contractor to maintain the necessary staffing levels during the period required to remediate KPT Properties with a goal of commencing the remediation process in at least 200 KPT Properties each month under Sections 4.3.1 and 4.3.2. The remediation plan shall be developed in a manner that maximizes economies of scale, including, for example, by releasing KPT Properties to the Lead Contractor in the same neighborhood or geographic location.  To the extent that the Lead Contractor lacks sufficient staff or other resources to commence the remediation process in order to meet the above goal, the Knauf Defendants will assign an Other Approved Contractor to assist the Lead Contractor in meeting that goal.

4.5.1.4.    In creating the Final Cost Estimate, the Lead Contractor or Other Approved Contractors shall (a) reasonably pursue all economies of scale, where applicable, to reduce the cost of performing the repair work required by the Remediation Protocol, (b) to the extent that portions of the repair work are to be performed by a subcontractor, base the Cost Estimate on a competitive bidding process among potential subcontractors, and (c) obtain materials or equipment fabricated especially for the repair work through a competitive bidding process.  All documents pertaining to the Cost Estimate and the remediation work, including but not limited to the documents identified in Section 4.5.1.5 shall be submitted to the Settlement Administrator.

4.5.1.4.1.    The Xactimate and/or Final Cost Estimate may not address all conditions subject to the Remediation Protocol because the Lead Contractor cannot verify such conditions until after the Remediation of the KPT Property commences.  In such cases, the Knauf Defendants

29

shall be obligated to fund the remediation of such conditions, if and only if, the KPT Property is being remediated pursuant to the Program Contractor Remediation Option set forth in Section 4.3.1. To the extent that a KPT Property Owner chooses the Self-Remediation Option, set forth in Section 4.3.2, or the Cash-Out Option, set forth in Section 4.3.3., neither the Xactimate nor the Final Cost Estimate shall be revised to account for such conditions. In no event shall the Xactimate or the Final Cost Estimate be reduced.

4.5.1.5.   The Settlement Administrator shall place all documents submitted under Section 4.5.1.4 and related to the remediation in electronic depositories (either shared or separate, to be determined by technical experts or by the Court if the technical experts cannot reach agreement) to which Settlement Class Counsel and Individual Class Members' counsel shall each have private, password-protected and secure access. Those documents shall include but not be limited to the following:

4.5.1.5.1.   All Xactimate computations;

4.5.1.5.2.   Any computations evidencing discounts to any remediation performed;

4.5.1.5.3.   All itemized bids;

4.5.1.5.4.   Any contracts;

4.5.1.5.5.   A comprehensive listing of all administrative expenses;

4.5.1.5.6.   All subcontractor agreements and/or any other contract entered into by the Lead Contractor, including but not limited to any subcontractor bids;

4.5.1.5.7.   Copies of all governmental charges, inspections and permits;

4.5.1.5.8.   The applicable Lead Contractor mediation process;

4.5.1.5.9.   All work authorizations;

4.5.1.5.10.   Evidence of payments to contractors, subcontractors, claimants, vendors;

4.5.1.5.11.   Subcontractor and contractor warranties; and

4.5.1.5.12.   All substitute contractors.

4.5.1.6.   Any Party shall have the right to apply to the Court for good cause shown to replace the Lead Contractor, Other Approved Contractors or the Special Master.  The Lead Contractor, Other Approved Contractors or the Special Master shall not be replaced absent an order of the Court finding good cause.  The Court's decision on such matters shall be final, with no further appeals permitted.

4.5.1.7.   Class Members who select the Program Contractor Remediation Option described in Section 4.3.1 shall have the right to consult with the designated Ombudsman for his or her Affected Property regarding matters relating to the remediation process other than having to do with the Final Cost Estimate or Preliminary Cost Estimate, including, but not limited to, the actual remediation work, and, in the event that a dispute arises, during the dispute resolution process described in Sections 4.5.1.2.1 and 4.5.1.2.2.

4.5.1.7.1.   There shall be two Ombudsmen whose responsibilities shall be divided along geographical lines – one who is situated in Florida and will advise on Affected Properties in Florida and one who is situated in New Orleans, Louisiana and will advise on Affected Properties in any other state.

4.5.1.7.2.   Within 30 days of the Effective Date, the PSC shall appoint the Ombudsmen.

4.5.1.7.3.   The Lead Contractor shall work to familiarize the Ombudsmen with each facet of the Remediation Protocol, including but not limited to the scope of work under the  Remediation Protocol and the remediation process.

4.6.   **Establishment and Administration of the Other Loss Fund**

4.6.1.   The Other Loss Fund will be a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended.  The escrow agreement establishing the Other Loss Fund will be in a form mutually agreed upon by the Parties and approved by the Court.

4.6.2.  The Other Loss Fund will be established through a deposit by the Knauf Defendants of $30 million paid within 30 days of the Court's Order and Judgment approving the Settlement.  All funding of the Other Loss Fund shall be in US dollars.

4.6.3.  Any amounts recovered from the Insurer Class Settlement and from settlements with Excluded Releasees and/or their insurers prior to the fairness hearing toward payment of claims related to KPT Chinese Drywall shall be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund.

4.6.4.  The Knauf Defendants' contribution to the Other Loss Fund shall be fixed under Sections 4.6.2.  The Knauf Defendants shall have no obligation to make further payments into the Fund and shall not be entitled to a refund of any amounts deposited.

4.6.5.  Administrative Expenses of the Other Loss Fund will be paid from interest earned on the amounts deposited.  If the interest is insufficient to pay all expenses, the Remediation Fund will pay any amounts necessary to cover the shortfall.

4.6.6.  The Settlement Administrator shall provide to the Court on a monthly basis an accounting of all funds held in the Other Loss Fund.  Copies of the monthly accountings shall also be provided to the Knauf Defendants and Settlement Class Counsel.  Settlement Class Counsel and the Knauf Defendants shall have the right to audit the Other Loss Fund at their own expense.

4.6.7.  The Settlement Administrator shall retain the services of a certified public accountant, following appointment by the Court, to assist in overseeing and administering this Fund.  All decisions by the Special Master with respect to the Other Loss Fund shall be in writing and shall be served on the parties by overnight mail to Settlement Class Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106) and Russ M. Herman (Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, New Orleans, Louisiana 70113), and the Knauf Defendants' counsel, Kerry Miller (Frilot L.L.C., 1100 Poydras Street, Suite 3700, New Orleans, LA 70163).

4.6.8.  Unless otherwise final and binding pursuant to the relevant sections below, decisions of the Special Master with respect to the Other Loss Fund may be appealed by Settlement Class Counsel, the Knauf Defendants or an affected Class Member within 15 days of service of the Special Master's decision by filing an objection with the Court, but only after Settlement Class Counsel, the Knauf Defendants, and, if applicable, an affected Class Member's counsel meet and confer in an attempt to resolve such issue.  Unless the Court orders otherwise, appeals will be

based on the record and briefing before the Special Master without further evidentiary submissions, briefing or argument. Any Party may, at its own expense, request that proceedings before the Special Master be transcribed. The Court's decision on any objections will be final, with no further appeals permitted.

**4.7. Other Loss Fund Benefits**

4.7.1. Subject to the procedures set forth in Section 4.7.4, the Other Loss Fund will be used to provide the following benefits:

4.7.1.1. **Pre-Remediation Alternative Living Expenses:** For Residential Owners, alternative living expenses arising from the need to vacate the Affected Property incurred prior to remediation as a result of property damage caused by KPT Chinese Drywall; provided that the Residential Owner vacated the Affected Property on or before the Execution Date. For Residential Owners, Other Loss shall not include alternative living expenses during remediation and personal property damage, as that is reimbursed by the Remediation Fund.

4.7.1.1.1. To obtain benefits under this Section, a Residential Owner must establish that the pre-remediation alternative living expenses were substantially caused by KPT Chinese Drywall.

4.7.1.1.2. To obtain benefits under this Section, the Residential Owner must submit the following:

a. physical proof such as photographic evidence or inspection reports satisfactory to the Settlement Administrator that the Affected Property has KPT Chinese Drywall and proof of corrosion and that the KPT Chinese Drywall was reactive prior to the Residential Owner vacating the Affected Property;

b. all verified and authenticated documents regarding alternative living expenses, including, but not limited to, a lease;

c. to the extent applicable, all loan documents, including but not limited to, a mortgage;

d. to the extent applicable, all documents relating to mortgage or lease payments, including but not limited to, cancelled checks and past due notices;

e.   affidavits from the Residential Owner in support of the claim with supporting documentation; and

f.   a report pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure from an expert in support of the claim that the alternative living expenses were substantially caused by the need to vacate the Affected Property prior to remediation as a result of damage caused by KPT Chinese Drywall may be required by the Special Master.

g.   If the Special Master requires a report pursuant to subsection (f), within a time to be determined by the Court, any Party shall have the right to challenge the admissibility of the expert's opinion, including without limitation, under the principles set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny by filing a motion with the Court.  The Court shall then establish a briefing and hearing schedule on any such challenge.  The Court's ruling on any such motion shall be final with no appeals.

4.7.1.2.   **Lost Use, Sales and Rentals:**   For Commercial Owners, economic loss for a period not to exceed three months, arising from the inability to use or rent Affected Property during remediation, and economic losses arising from the inability to sell Affected Property as a result of property damage caused by KPT Chinese Drywall, but only to the extent that such economic loss could not be mitigated or has not been reimbursed by insurance.   For Commercial Owners, Other Loss shall not include alternative living expenses during remediation and personal property damage.

4.7.1.2.1.   To obtain benefits under this Section, a Commercial Owner must establish that the lost use, sales or rentals were substantially caused by KPT Chinese Drywall.

4.7.1.2.2.   To obtain benefits under this Section, the Commercial Owner must submit the following:

a.   physical proof such as photographic evidence or inspection reports satisfactory to the Settlement Administrator that the Affected Property has KPT Chinese Drywall and proof of corrosion or other

           acceptable evidence that the KPT Chinese Drywall was reactive;

b.    proof of purchase of the Affected Property;

c.    purchase price and appraised value at purchase of the Affected Property;

d.    all documents relating to communications with third parties, including but not limited to, real estate agents and contractors, regarding using, leasing or sale of the Affected Property;

e.    all documents relating to mortgage or lease payments, including but not limited to, cancelled checks, past due notices and late fees or other charges;

f.    all documents regarding the inability to use, rent or sell  the Affected Property as a result of property damage caused by KPT Chinese Drywall;

g.    tax returns for each of the three years prior to the inability to use, rent or sell the Affected Property as a result of property damage caused by KPT Chinese Drywall and up to the date of the submission;

h.    profit and loss statements for the three years prior to the inability to use, rent or sell the Affected Property as a result of property damage caused by KPT Chinese Drywall and up to the date of the submission;

i.    affidavits from the Commercial Owner in support of the claim with supporting documentation; and

j.    a report pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure from an expert in support of the claim that the inability to use, rent or sell the Affected Property was substantially caused by KPT Chinese Drywall and the Commercial Owner incurred losses as a result.

k.    Within a time to be determined by the Court, any Party shall have the right to challenge the admissibility of the expert's opinion, including

without limitation, under the principles set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny by filing a motion with the Court. The Court shall then establish a briefing and hearing schedule on any such challenge. The Court's ruling on any such motion shall be final with no appeals.

4.7.1.2.3.   The Special Master shall consider the following principles in evaluating a claim by a Commercial Owner for economic loss arising from the inability to sell Affected Property due to KPT Chinese Drywall:

a.   The Special Master shall assume that the Affected Property or any units within a Multiple Unit Property will be sold at a fair market value after the remediation is completed.

b.   The Commercial Owner shall be entitled only to the lost value of money resulting from the delay in selling the Affected Property or units within a Multiple Unit Property.

c.   If a Commercial Owner who is qualified to obtain benefits under this Section has outstanding loans on the Affected Property, the Commercial Owner shall be entitled to recover interest (but not principal) payments on the loan or loans, but only to the extent that the Commercial Owner was unable to sell the Affected Property due to KPT Chinese Drywall. For example, a Commercial Owner of an Affected Multiple Unit Property with 100 units who was unable to sell 50 units due to KPT Chinese Drywall would be entitled to 50% of the interest payments.

d.   If a Commercial Owner who is qualified to obtain benefits under this Section has no outstanding loans on the Affected Property, the Commercial Owner shall be entitled to claim lost interest as if the Commercial Owner invested in 1-year U.S. Treasury bills, but only to the extent that the Commercial Owner was unable to sell the Affected Property due to KPT Chinese Drywall.

4.7.1.3.   **Foreclosures:**   With respect to Foreclosed Properties, for Owners prior to foreclosure, an amount to be determined by the Special Master for Lost Equity (but not lost anticipated market value) in the Foreclosed Property less the Owners' recovery under Section 4.3.5.1(b).

4.7.1.3.1.   To obtain benefits under this Section, an Owner must establish that the foreclosure was substantially caused by KPT Chinese Drywall.

4.7.1.3.2.   To obtain benefits under Section 4.7.1.3, an Owner must establish the following

a.   For a Residential Owner Subclass Member who owned the Foreclosed Property prior to foreclosure, he or she must establish that the KPT Chinese Drywall substantially caused the foreclosure.

b.   For a Commercial Owner Subclass Member who owned the Foreclosed Property prior to foreclosure, he or she must establish that the KPT Chinese Drywall substantially caused (i) the Tenants of the Foreclosed Property to vacate, causing the Commercial Owner to lose rent, or (ii) decreased revenue to the Commercial Owner's business.

c.   For the Owner of a Foreclosed Property where the Foreclosure is attributable to circumstances other than those described in 4.7.1.3.2.a or 4.7.1.3.2.b above, such as economic downturns, personal financial losses and/or loss of employment, the Owner shall not be entitled to payments under Section 4.7.1.3

4.7.1.3.3.   An Owner prior to foreclosure seeking benefits under Section 4.7.1.3 must submit

a.   physical proof such as photographic evidence or inspection reports satisfactory to the Settlement Administrator that the Affected Property has KPT Chinese Drywall and proof of corrosion prior to foreclosure or other acceptable evidence that the KPT Chinese Drywall was reactive prior to foreclosure;

37

b.   proof of purchase of the Affected Property;

c.   purchase price and appraised value at purchase of the Affected Property;

d.   sale price and tax assessed value at sale of the Affected Property;

e.   for a Residential Owner Subclass Member, all verified and authenticated documents regarding alternative living expenses, including, but not limited to, a lease;

f.   for a Commercial Owner Subclass Member, all documents regarding the occupancy arrangement with the Tenant(s), including, but not limited to, a lease;

g.   all loan documents, including but not limited to, the mortgage;

h.   all documents regarding the foreclosure proceeding, including but not limited to, forbearance agreements, all court documents and correspondence between the Owner and the bank;

i.   all documents relating to mortgage payments, including but not limited to, cancelled checks and past due notices;

j.   all documents regarding attempts to sell or rent the Affected Property;

k.   affidavits from the Owner in support of the claim with supporting documentation; and

l.   a report pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure from an expert in support of the claim that the foreclosure was substantially caused by KPT Chinese Drywall and the Owner incurred losses as a result.

m.   Within a time to be determined by the Court, any Party shall have the right to challenge the admissibility of the expert's opinion, including without limitation, under the principles set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

38

and its progeny by filing a motion with the Court. The Court shall then establish a briefing and hearing schedule on any such challenge. The Court's ruling on any such motion shall be final with no appeals.

4.7.1.4.   **Sales In Mitigation:**   For Residential or Commercial Owners who, due to the presence of KPT Chinese Drywall, sold Affected Properties in an attempt to mitigate their losses, an amount to be determined by the Special Master for Lost Equity .

4.7.1.4.1.   To obtain benefits under this Section an Owner must establish that the sale was substantially caused by KPT Chinese Drywall and was done in an attempt to mitigate losses.

4.7.1.4.2.   An Owner who seeks benefits under this Section must submit the following:

a.   physical proof such as photographic evidence or inspection reports satisfactory to the Settlement Administrator that the Affected Property has KPT Chinese Drywall and proof of corrosion prior to the sale or other acceptable evidence that the KPT Chinese Drywall was reactive prior to the sale;

b.   proof of purchase of the Affected Property;

c.   closing documents, including but not limited to the sales price of the Affected Property, appraised value at purchase of the Affected Property, down payment on the purchase price and mortgage amount related to the purchase of the Affected Property;

d.   sale price, appraised value at time of sale and tax assessed value at time of sale of the Affected Property;

e.   for a Residential Owner Subclass Member, all verified and authenticated documents regarding alternative living expenses, including, but not limited to, a lease;

f.   for a Commercial Owner Subclass Member, all documents regarding the occupancy arrangement with the Tenant(s), including, but not limited to, a lease;

39

g.    all loan documents, including but not limited to, the mortgage;

h.    all documents relating to mortgage payments, including but not limited to, cancelled checks and past due notices;

i.    all documents regarding attempts to sell or rent the Affected Property;

j.    affidavits from the Owner in support of the claim explaining that the sale was not related to factors other than attempting to mitigate losses with supporting documentation; and

k.    a report pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure from an expert in support of the claim that the sale was substantially caused by KPT Chinese Drywall and the Owner incurred losses as a result.

l.    Within a time to be determined by the Court, any Party shall have the right to challenge the admissibility of the expert's opinion, including without limitation, under the principles set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny by filing a motion with the Court. The Court shall then establish a briefing and hearing schedule on any such challenge. The Court's ruling on any such motion shall be final with no appeals.

4.7.1.5.    **Tenant Losses:** For Tenants, an amount to be determined by the Special Master to compensate for moving expenses (if the Tenant is displaced by remediation) and personal property damage, such as to jewelry and Tenant-owned appliances, caused by KPT Chinese Drywall that is incurred by Tenant Subclass Members.

4.7.1.5.1.    To obtain benefits under this Section, a Tenant must establish that the personal property damage and moving expenses were substantially caused by KPT Chinese Drywall.

4.7.1.5.2.    A Tenant who seeks benefits under this Section must submit the following:

40

     a.    physical proof such as photographic evidence or inspection reports satisfactory to the Settlement Administrator that the Affected Property has KPT Chinese Drywall and proof of corrosion and that the KPT Chinese Drywall was reactive;

     b.    all verified and authenticated documents regarding moving expenses and personal property damage, including but not limited to, mover receipts and proof of purchase of personal property;

     c.    affidavits from the Tenant in support of the claim with supporting documentation.

4.7.1.6.    For Residential Owners or Tenants who lived or worked in Affected Property for more than one year, a mechanism as set forth in Section 4.7.2 for Residential Owners or Tenants to raise, for Knauf Defendants to challenge and for the Court to decide disputed bodily injury claims.

    4.7.1.6.1.    The PSC has received complaints of alleged bodily injury. The Knauf Defendants deny that there is any evidence of bodily injury arising from or related to KPT Chinese Drywall.

    4.7.1.6.2.    The Class Notice shall expressly inform Class Members that: "The Knauf Defendants vigorously deny that KPT Drywall causes bodily injury. The Knauf Defendants state that no published study or government agency has found that KPT Drywall causes bodily injury. The Knauf Defendants reserve the right to contest bodily injury claims submitted by Class Members under the procedures set forth in this Agreement."

4.7.1.7.    "Lost Equity" for the purposes of Section 4.7.1.3 and 4.7.1.4 shall mean the lesser of (a) the amount a person invested in the Affected Property ("investments") less the amount recovered in a sale of the Affected Property; or (b) the dollar value which would have been otherwise recoverable pursuant to Section 4.3.1. had the Affected Property not been foreclosed or sold, as calculated as the Lump Sum Payment pursuant to Section 4.3.1.1 plus an average per square foot cost of under-air remediations performed by the Knauf Defendants (net of upgrades) pursuant to Section 4.3.1 (as determined by the Knauf Defendants and provided to the Special Master) through the

date of final approval of the Settlement. "Investments" shall be calculated as the total of: (i) the down payment on the purchase price or full purchase price if there was no mortgage or the mortgage was repaid; (ii) principal payments (but not interest) on any mortgage; (iii) down payments on any capital improvements if there was no loan or the loan was repaid; (iv) principal payments (but not interest) on any loans which financed capital improvements; and (v) the satisfaction of a mortgage deficiency as a result of sale, as evidenced by proof of payment of said deficiency.

4.7.2. **Bodily Injury:** A Residential Owner or Tenant seeking reimbursement from the Other Loss Fund for bodily injury allegedly attributable to KPT Chinese Drywall must:

4.7.2.1. Have sought medical treatment for the alleged injury prior to the Execution Date.

4.7.2.2. Have received a contemporaneous diagnosis by the treating physician that the alleged injury was caused by KPT Chinese Drywall.

4.7.2.3. Within a time to be determined by the Court, produce to the Settlement Administrator, Knauf Defendants and Settlement Class Counsel: (a) all pharmacy records since January 1, 2005, including all pharmacy records regarding the dispensing of medication to treat the alleged bodily injury ("Pharmacy Records"), along with a signed certification from the respective pharmacy or pharmacies indicating that the production is complete and (b) all medical records from healthcare providers since January 1, 2005, including all medical records documenting treatment of the alleged bodily injury ("Medical Records"), along with a signed certification from each such healthcare provider indicating that all such records in the custody, possession or control of the healthcare provider have been produced.

4.7.2.3.1. In connection with any claim made for bodily injury, the full costs, fees and expenses of that claim shall be borne by the parties involved in the bodily injury claim. The PSC shall have no responsibility to assist in the bodily injury claim beyond furnishing the claimant and their attorney materials that are, at the time of any request, maintained in the PSC depository.

4.7.2.4.   Within a time to be determined by the Court, produce to the Settlement Administrator, Knauf Defendants and Settlement Class Counsel an affidavit signed by the Participating Class Member (i) attesting that all Pharmacy Records and all Medical Records have been collected and (ii) attesting that all Pharmacy Records and all Medical Records have been produced pursuant to Section 4.7.2.3, along with an index or list identifying the source of said records.

4.7.2.5.   Within a time to be determined by the Court, produce to the Settlement Administrator, the Knauf Defendants and Settlement Class Counsel a report pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, from his or her treating physician or an expert based upon contemporaneous medical records and diagnosis, providing (i) the evidence specified in Section 4.7.2.3 that the alleged bodily injury was substantially caused by KPT Chinese Drywall; and (ii) the medical and scientific bases for that opinion, including the medical and scientific bases for both general and specific causation.  The Court, in its discretion, may permit depositions of the treating physician and/or expert.

4.7.2.6.   Within a time to be determined by the Court, any Party shall have the right to challenge the admissibility of the treater's or expert's opinion, including without limitation, under the principles set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny by filing a motion with the Court.  The Court shall then establish a briefing and hearing schedule on any such challenge.  The Court's ruling on any such motion shall be final with no appeals.

4.7.2.7.   Each side will bear its own fees and costs with respect to establishing or refuting a claim of bodily injury.   Class Members and their counsel may not seek fees or costs under Section 14 in pursuing a bodily injury claim.  Any attorneys' fees and costs in connection with a bodily injury claim will come from the award, if any.

4.7.3.   **Other Loss Exclusions:**  Other Loss does not include damage or loss for stigma, injury to reputation, loss of enjoyment of home, psychological or emotional injury, medical monitoring, injury to reputation, credit rating loss, legal and accounting expenses, loss of investment opportunity, or any other loss or damage not specifically covered by Sections 4.7.1.1, 4.7.1.2, 4.7.1.3, 4.7.1.4, 4.7.1.5 and 4.7.1.6 above.  Nonetheless, such claims will be released under this Settlement.

4.7.4. **Other Loss Fund Claims Procedures:** Each Owner and Tenant shall be entitled to receive its pro rata share of the Other Loss Fund, as determined by the following procedures:

4.7.4.1. All Participating Class Members shall submit their claims via the Proof of Claim Form, all documents required under Section 4.7 relating to any Other Loss claims and any applicable insurance policies by a date to be established by the Court. Untimely submitted claims shall be rejected unless the Court extends the deadline for good cause shown.

4.7.4.2. Notwithstanding the required documents and/or information set forth within Section 4.7, nothing shall prohibit the Special Master from requesting additional documents and/or information from individual claimants to the Other Loss Fund.

4.7.4.3. The Special Master shall not consider any claims for bodily injury allegedly caused by KPT Chinese Drywall unless the claim satisfies all the requirements of Sections 4.7.2 and the Knauf Defendants have not challenged the claim or the claim has withstood challenge under Section 4.7.2.6. If any claims for bodily injury satisfy these requirements, the Special Master shall determine the validity and amount of such claims pursuant to Section 4.7.4.3.

4.7.4.4. The Special Master will evaluate all claims and may reject, accept in part or accept in whole each claim submitted. In evaluating each Participating Class Member's claim, the Special Master shall apply tort principles regarding causation and loss of the state where the Affected Property relating to that Participating Class Member is located. Participating Class Members submitting claims for Other Loss from Mixed Properties shall have their claims determined by the amount of Other Loss as determined by the Special Master multiplied by the KPT Drywall Percentage. As a result of this evaluation, the Special Master shall determine the amount of reimbursable Other Loss for each Approved Claim and the total for all Approved Claims. The Special Master may appoint accounting or other experts to assist in the evaluation of claims.

4.7.4.4.1. The Special Master shall reduce any Approved Claim by any amount that was or could have been reimbursed for the Other Loss under the Class Member's insurance policies.

4.7.4.5. If the total of all Approved Claims for Other Loss Fund benefits is more than the amount deposited in the Other Loss Fund, each

44

claim shall be decreased pro rata so that the distribution does not exceed the amount in the Fund less Administrative Expenses. If the total of all Approved Claims for Other Loss Fund Benefits is less than the amount deposited in the Other Loss Fund, the PSC may petition the Court to use such remaining funds to pay for post-Effective Date administrative legal fees and costs of Settlement Class Counsel, subject to Court approval. If there are funds remaining after payment of post-Effective Date administrative legal fees and costs of Settlement Class Counsel, the PSC may petition the Court to use those funds to offset any deficiency in common benefit legal fees and costs of the PSC and common benefit counsel authorized and working at the direction of the PSC, other common benefit counsel, Settlement Class Counsel and individual retained counsel, subject to a determination by the Court that the common benefit counsel work was valid and bona fide and Court approval. The Knauf Defendants will take no position on any such request or on the allocation or priority of any such payments. If there are funds remaining after satisfaction of any approved payment of post-Effective Date administrative legal fees and costs of Settlement Class Counsel and other common benefit attorneys' fees and costs, any remaining funds may be the subject of a *cy pres* distribution for medical or legal *pro bono* purposes, subject to Court approval. No funds from the Other Loss Fund will revert to the Knauf Defendants.

4.7.4.6.   The Settlement Administrator shall not distribute any funds from the Other Loss Fund until such time that the Special Master determines the amount of reimbursable Other Loss for each Approved Claim.

4.7.4.7.   If prior to the determination of the final amounts to be distributed from the Other Loss Fund, a Participating Class Member who has an Approved Claim demonstrates unusual and compelling financial needs, the Participating Class Member may petition the Special Master to authorize the Settlement Administrator to make a partial payment.

4.7.5.   **MMSEA Compliance:**  The Parties agree to comply with the provisions of Section 111 of the Medicare, Medicaid & SCHIP Extension Act of 2007 ("MMSEA"), as codified in 42 U.S.C. § 1395y(b)(8).

4.7.5.1.   Any funds allocated for bodily injury under Section 4.7.4 above will be paid directly to the Participating Class Members.

4.7.5.2.   Each Participating Class Member who receives in excess of the MMSEA dollar threshold in effect at the time of the Effective Date from the Other Loss Fund ("Excess Recipient") acknowledges his/her duty to cooperate with the Knauf Defendants in order to permit Responsible Reporting Entity(ies), as defined by MMSEA, to fulfill their reporting obligations to comply with MMSEA.  Each Excess Recipient and his/her attorney agrees to provide the Responsible Reporting Entity(ies) with any and all information necessary for the Responsible Reporting Entity(ies) to comply with MMSEA, including his or her identity, date of birth, social security number, and gender, so as to allow the insurers, or their agents, to determine whether the Excess Recipient is a Medicare Beneficiary, as defined by MMSEA (a "Triggering Claimant").

4.7.5.3.   Each Triggering Claimant and his/her attorney shall provide any additional information requested by the Responsible Reporting Entity(ies) to comply with MMSEA, including the identify of his/her attorney, his/her address, his/her ICD9 number (if applicable), and information related to the injuries allegedly arising from KPT Chinese Drywall.  Such information may be reported to the Centers for Medicare & Medicaid Services (CMS), as well as certain agent(s) necessary to facilitate reporting to CMS, pursuant to the Responsible Reporting Entity's duty to comply with MMSEA.

4.7.5.4.   Each Triggering Claimant represents and warrants that all bills, costs or liens resulting from or arising out of alleged injuries, claims or lawsuits related to KPT Chinese Drywall are his/her responsibility to pay, including all Medicare conditional payments, subrogation claims, liens, or other rights to payment, relating to medical treatment or lost wages that have been or may be asserted by any health care provider, insurer, governmental entity, employer or other person or entity.  Further, each Triggering Claimant will indemnify, defend and hold each Knauf Defendant harmless from any and all damages, claims and rights to payment, including any attorneys' fees, brought by any person, entity or governmental agency to recover any of these amounts.

4.7.5.5.   The procedures set forth in this Section are intended to ensure compliance with 42 U.S.C. § 1395y.  The Parties resolved this matter in compliance with both state and federal law.

4.8.  **Allocation of Amounts from Banner, InEx and L&W Class Settlements Or Any Other Settlements**

4.8.1.  Any amounts received or to be received by a Participating Class Member under a settlement agreement with any person or entity other than the Knauf Defendants arising from KPT Chinese Drywall to the extent of the KPT Drywall Percentage shall be deposited into the Remediation Fund provided, however, that a Participating Class Member shall have no obligation to deposit any amount received or to be received by a Participating Class Member from an Excluded Releasee that does not settle prior to the fairness hearing into the Remediation Fund. If (and only if) the Participating Class Member does not deposit an amount equal to his/her recovery to the extent of the KPT Drywall Percentage into the Remediation Fund, that amount shall be deducted from any benefit otherwise owing to that Participating Class Member.

4.8.2.  Each Participating Class Member shall assign his/her claims (to the extent that they relate to KPT Chinese Drywall) to any net recovery under the InEx, Banner and L&W Settlements to the Knauf Defendants, if not already assigned.  Any amounts recovered from the InEx, Banner and L&W Settlements based on such assignments shall be deposited into the Remediation Fund, for purposes of providing Settlement benefits to the individual Participating Class Member(s) involved.  For example, if the KPT Drywall Percentage for a Participating Class Member is 40%, then 40% of the Participating Class Member's recovery under the InEx, Banner and/or L&W Settlements shall be deposited into the Remediation Fund and the Participating Class Member shall be entitled to 60% of the recovery.  To the extent a Participating Class Member already has recovered amounts from the InEx, Banner and L&W Settlements, the Participating Class Member shall deposit an amount equal to his/her recovery to the extent of the KPT Drywall Percentage into the Remediation Fund for purposes of providing Settlement benefits to the individual Participating Class Member(s) involved.  If (and only if) the Participating Class Member does not deposit an amount equal to his/her recovery to the extent of the KPT Drywall Percentage into the Remediation Fund, that amount shall be deducted from any benefit otherwise owing to that Participating Class Member.

4.8.2.1.  A Participating Class Member who has opted out of the InEx, Banner and/or L&W Settlements must successfully apply to the Court to opt back in to those Settlements to be eligible to obtain benefits under this Settlement.  If the Participating Class Member remains an opt out from the InEx, Banner and/or L&W Class Settlements, then the Participating Class Member shall be deemed an opt out from this Settlement.

4.8.3.   Any amounts obtained directly by the Knauf Defendants or the PSC toward payment of claims involving KPT Chinese Drywall shall be deposited to the extent that they relate to KPT Chinese Drywall into the Remediation Fund other than amounts reflecting payments made to remediate Affected Properties under the Pilot Program as set forth in Exhibit H, which amounts were filed under seal.

 4.8.3.1.   Pursuant to the terms of the Insurer Class Settlement, amounts from such Agreement that are attributable to claims involving KPT Chinese Drywall will be deposited into the Remediation Fund or Other Loss Fund as set forth in Section 4.2.3. For example, if under the Insurer Class Settlement, 40% of the recovery is allocated to claims with KPT Chinese Drywall and 60% of the recovery is allocated to claims with Non-KPT Chinese Drywall, only 40% of the recovery under the Insurer Class Settlement will be deposited into the Settlement Funds.

4.8.4.   The Major Builder Settlement Agreements, the Insurer Class Settlement and any settlements between the PSC or Class members and Other Releasees or Excluded Releasees or any of their insurers shall provide for releases by any party to such settlements of all their claims against the Knauf Defendants related in any way to KPT Chinese Drywall, the Litigation and/or the Related Actions, including but not limited to any and all claims against the Knauf Defendants that the party has, may have, or may have had, regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, and whether asserted by petition, complaint, cross-claim, third-party demand or otherwise.

4.8.5.   If Banner, InEx and/or L&W exercise their rights to terminate their respective Class Settlements or file a bankruptcy petition (respectively, "Terminated Banner Class Settlement," "Terminated InEx Class Settlement" and "Terminated L&W Class Settlement"), then the Knauf Defendants, at their sole and exclusive discretion and option, may terminate this Settlement either in its entirety or only as to the particular Participating Class Members who would have been class members in the Terminated Banner Class Settlement, Terminated InEx Class Settlement and/or Terminated L&W Class Settlement. The Knauf Defendants' exercise of their rights under this Section shall not be reviewable by the Court.

4.8.6.   If the Knauf Defendants fail to agree with Banner and/or InEx on a solution acceptable to the Knauf Defendants that extinguishes any potential claims of Banner and InEx or their insurers against the Knauf Defendants, then the Knauf Defendants can terminate the Settlement either in its entirety or as to all Participating Class Members who are members of or were eligible to participate in the Banner Class Settlement (if the failure

to agree is with Banner or its insurers) or the InEx Class Settlement (if the failure to agree is with InEx or its insurers).

4.8.7. On the last day of each month, the Knauf Defendants shall provide to Settlement Class Counsel a comprehensive listing identifying any sums received in connection with Section 4.8.1, together with a complete identification of the person or entity who provided such sums.

## 4.9. Qualifications for Class Members in Properties with Lower-Case KPT Chinese Drywall.

4.9.1. Some properties may contain Lower-Case KPT Chinese Drywall. The Knauf Defendants deny that there is evidence that Lower-Case KPT Chinese Drywall is reactive.

4.9.2. To be eligible for benefits under the Settlement, a Class Member whose claims are in connection with a property that contains Lower-Case KPT Chinese Drywall must establish that the Lower-Case KPT Chinese Drywall is reactive under the following procedures:

4.9.2.1. To prove that Lower-Case KPT Chinese Drywall is reactive, the Class Member must prove that the Lower-Case KPT Chinese Drywall meets all of the following requirements.

4.9.2.1.1. Elemental Sulfur levels in samples of Lower-Case KPT Chinese Drywall core found in the property exceeding 10 ppm as measured by GC/MS;

4.9.2.1.2. Confirmed markings of Lower-Case KPT Chinese Drywall in the property;

4.9.2.1.3. Elevated Levels of hydrogen sulfide, carbonyl sulfide and/or carbon disulfide emitted from samples of Lower-Case KPT Chinese Drywall found in the property when placed in test chambers using ASTM Standard Test Method D5504-08; and

4.9.2.1.4. Corrosion of copper metal to form copper sulfide when copper is placed in test chambers with Lower-Case KPT Chinese Drywall samples found in the property.

4.9.2.2. Within a time to be determined by the Court, the Class Member must produce to the Settlement Administrator, the Knauf Defendants and Settlement Class Counsel, test results establishing that the Lower-Case KPT Chinese Drywall is reactive under Section 4.9.2.1. Such testing will be at the

expense of the Class Member. The Class Member shall provide access to samples of the Lower-Case KPT Chinese Drywall to the Knauf Defendants sufficient to permit the Knauf Defendants to test the Lower-Case KPT Chinese Drywall at their own cost.

4.9.2.3.   Within a time to be determined by the Court, the Class Member must produce to the Settlement Administrator, the Knauf Defendants and Settlement Class Counsel, a report pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure providing the evidence specified in Section 4.9.2.1 that the Lower-Case KPT Chinese Drywall is reactive and the scientific bases for that opinion.

4.9.2.4.   Within a time to be determined by the Court, any Party shall have the right to challenge the admissibility of the expert's opinion, including without limitation, under the principles set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny by filing a motion with the Court. The Court shall then establish a briefing and hearing schedule on any such challenge. The Court's ruling on any such motion shall be final with no appeals.

4.9.2.5.   After the Court's determination on a challenge under Section 4.9.2.4 or, if there is no challenge, after the time for a challenge has expired, the Court shall consider and determine the Class Member's claim that the Lower-Case KPT Chinese Drywall is reactive. The Court's ruling shall be final with no appeals.

4.9.2.6.   If the Court rules that the Lower-Case KPT Chinese Drywall is reactive, the Lower-Case KPT Chinese Drywall shall be considered KPT Chinese Drywall and the Class Member shall be entitled to benefits under the Settlement subject to all its terms and conditions.

4.9.2.7.   If the Court rules that the Lower-Case Chinese Drywall is not reactive, the Class Member shall not be entitled to benefits under the Settlement.

4.10.   Any documents, forms or other material or information required to be submitted under Section 4, shall be submitted to the Settlement Administrator. The Settlement Administrator, in conjunction with Settlement Class Counsel and the Knauf Defendants, shall establish electronic depositories (either shared or separate, to be determined by technical experts or by the Court if the technical experts cannot reach agreement) in which all such documents will be stored, and to which Settlement Class Counsel and Individual Class Members' counsel shall each also have private, password-protected and secure access.

4.11.   The Settlement Funds are available only to resolve claims of Participating Class Members.  The Settlement Funds shall not be available to satisfy the claims of any non-Class Member or Class Member who opts out under Section 8.  Non-class members and Class Members who opt out under Section 8 shall not be permitted to execute on the Settlement Funds or on any amount that the Knauf Defendants may be entitled to receive from the Settlement Funds through reversion under Section 4.2.5 to satisfy any judgment or for any other reason.

4.12.   The PSC does not warrant any work and is not responsible for any warranties and/or liens that may be placed on Affected Property as a result of the remediation work, performed under Section 4 or for any negligence or construction defect.

## 5.      Releases

5.1.    **Released Claims**

5.1.1.   "Released Claim" or "Released Claims" shall mean any and all claims against any Released Party whatsoever (a) arising out of, in any manner related to, or connected in any way with KPT Chinese Drywall, or the collective mitigation of, response to, and/or recovery from the damage caused by KPT Chinese Drywall and/or any act and/or failure to act related in any way to any of the foregoing, and/or (b) for any and all losses, damages and/or injuries arising from, in any manner related to, or connected in any way with all and/or any of the foregoing, including but not limited to any and all claims that a Participating Class Member has, may have, or may have had, regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, and whether asserted by petition, complaint, cross-claim, third party demand, or otherwise (or any judgment or order entered on such claims), and which is based upon or alleges any act, conduct, status or obligation of any person or entity (including the Released Parties) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved.  Notwithstanding the above, the only parties released are those persons or entities defined as Released Parties. This Settlement does not provide complete compensation to redress all Participating Class Members' damages and therefore Participating Class Members' claims are reserved against the Non-Released Parties who have been named as defendants in the Omni Complaints pending in MDL No. 2047.

5.1.2.   The term "Released Claim" or "Released Claims" includes, but is not limited to, the following claims arising out of, in any manner related to, or in any way connected with, KPT Chinese Drywall, the Litigation, or other Related Actions as to the Released Parties:

5.1.2.1.   For personal injury, bodily injury (including death), property damage, remediation and/or clean-up of property, diminution of

property value, foreclosure, groundwater contamination, economic loss, fear, fear of illness or disease, fear of developing illness or disease, fright, mental or emotional distress, pain and suffering, loss of earnings, impairment of earning capacity, loss of consortium, loss of support, love and affection, equity and medical monitoring, bystander liability, wrongful death, survival actions, breach of contract, all statutory claims, punitive or exemplary damages, attorneys' fees, costs or expenses, moving expenses, additional rental or mortgage payments;

5.1.2.2.   For nuisance, trespass, inconvenience, loss of use or enjoyment, negligence, private nuisance, custody of a thing containing a vice or defect, strict liability, liability for ultrahazardous activities or conduct, absolute liability, wanton and reckless misconduct, malicious misconduct, servitude or obligation of vicinage, abuse of right, or any other liability legally asserted or assertable under any federal, state, or local statute, law, directive or regulation, redhibition, violation of Louisiana New Home Warranty Act, Louisiana Products Liability Act (or similar statutes of other states), negligent discharge of a corrosive substance, unjust enrichment, breach of implied warranty of fitness and merchantability, breach of implied warranty of habitability, violation of consumer protection laws and/or deceptive and unfair trade practices laws of any state, negligent misrepresentation, building code violations, or fraud;

5.1.2.3.   For damages or alleged damages resulting in whole or in part from exposure of the Class or Participating Class Members or property of the Participating Class Members to hazardous or allegedly hazardous, toxic, dangerous or harmful substances;

5.1.2.4.   For bad faith or extra-contractual damages;

5.1.2.5.   For derivative or vicarious liability arising out of the conduct or fault of others for which the Released Parties and/or Knauf Defendants may be responsible;

5.1.2.6.   For any right legally assertable by the Class or any Participating Class Member now or in the future, whether the claim is personal to each individual, derivative of a claim now or in the future, or as assignee, successor, survivor, legatee, beneficiary, subrogee, or representative of a Participating Class Member;

5.1.2.7.   For a past, present, future, known, unknown, foreseen, unforeseen, contingent, nascent, mature claim or a claim arising

at law, in equity or otherwise, including but not limited to, claims for survival and wrongful death;

5.1.2.8.   For any claim, right, or action arising out of, based on, or relating to any body of law whatsoever; and for all injuries or damages of any type, nature, or character arising from, attributable to, or in any way resulting from KPT Chinese Drywall;

5.1.2.9.   For any conduct of any of the Released Parties and/or Knauf Defendants with respect to, arising out of or in any way resulting from KPT Chinese Drywall, the Litigation, or the Related Claims; however, this provision is not intended to prevent or impede the enforcement of claims or entitlements to benefits under this Settlement;

5.1.2.10.  For any claim, known or unknown, for contribution, subrogation, or indemnity, contractual or otherwise, arising out of, attributable to, or in any way related to KPT Chinese Drywall.

5.1.2.11.  For Participating Class Members who self-remediated their Properties or entered into contracts to self-remediate their Properties prior to the Execution Date, Released Claims shall not include the Remediation Claims unless the Participating Class Member and the Knauf Defendants reach an agreement to resolve the Participating Class Member's Remediation Claims under the Already Remediated Properties Protocol.

5.1.3.   The term "Released Claim" or "Released Claims" also includes, but is not limited to, the following causes of action arising out of, in any manner related to, or in any way connected with KPT Chinese Drywall, the Litigation, or other Related Actions as to the Knauf Defendants:

5.1.3.1.   Strict liability;

5.1.3.2.   Violations of the Alabama Deceptive Trade Practices Act (Ala. Code 1975 § 8-19-1, *et seq.*), the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*), the Louisiana Unfair Trade Practices and Consumer Protection Law (L.SA-R.S. 51:1401, *et seq.*), the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. Com. Code Ann. § 17.41, *et seq.*), the Mississippi Consumer Protection Act (Miss. Code Ann. § 75-24-1, *et seq.*), or any other state or federal consumer protection laws and unfair trade practices laws;

5.1.3.3.   Negligence;

5.1.3.4.   Private and public nuisance;

5.1.3.5.   Tort;

5.1.3.6.   Equity and medical monitoring;

5.1.3.7.   Breach of contract;

5.1.3.8.   Loss of use;

5.1.3.9.   Loss of enjoyment;

5.1.3.10.   All statutory claims;

5.1.3.11.   Personal injury, including death therefrom, related statutory violations, and emotional distress and mental anguish;

5.1.3.12.   Bodily injury, including death therefrom, and emotional distress and mental anguish;

5.1.3.13.   Indemnity;

5.1.3.14.   Contribution;

5.1.3.15.   Breach of express or implied warranty;

5.1.3.16.   Redhibition;

5.1.3.17.   Negligence per se;

5.1.3.18.   Violation of the Louisiana New Home Warranty Act (La. R.S. 9:3141, *et seq.*);

5.1.3.19.   Violation of the Louisiana Products Liability Act (La. R.S. 9:28000.51 *et seq.*);

5.1.3.20.   Violation of the Louisiana Hazardous Substances Act (La. R.S. 30:2271, *et seq.*);

5.1.3.21.   Negligent discharge of a corrosive substance;

5.1.3.22.   Unjust enrichment;

5.1.3.23.   Breach of the implied warranty of fitness and merchantability;

5.1.3.24.   Breach of implied warranty of habitability;

5.1.3.25.   Negligent misrepresentation;

5.1.3.26. Building code violations;

5.1.3.27. Relief by way of subrogation, contractual indemnity, common law indemnity and/or contribution against the Knauf Defendants;

5.1.3.28. Attorneys' fees and any and all costs and expenses of litigation;

5.1.3.29. Fraud; and

5.1.3.30. Any further claims and/or liabilities arising out of, or otherwise relating to, the sale, supply, marketing, distribution, or use of KPT Chinese Drywall at issue in this Settlement, including, but not limited to, punitive damages, exemplary damages, multiplication of damages, and fines.

5.2. **Class Release**

5.2.1. As of the Effective Date, and with the approval of the Court, all Participating Class Members, and anyone claiming by, through and/or on behalf of any of them, hereby fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon, and cancel any and all Released Claims (as defined in Section 5.1) against the Knauf Defendants and the Other Releasees, including (but not limited to) those asserted, or that could have been asserted, in the Litigation, the Related Actions, and/or the Related Claims.

5.2.2. As of the Effective Date, all Participating Class Members, and anyone claiming by, through and/or on behalf of any of them, will be forever barred and enjoined from prosecuting any action against the Knauf Defendants and the Other Releasees asserting any and/or all Released Claims.

5.2.3. The execution of the Settlement shall not be construed as a release of any claims the Participating Class Members may have against any person and/or entity other than the Knauf Defendants and the Other Releasees. All Participating Class Members reserve all claims (including, but not limited to, any and all rights and causes of action, no matter how arising, under any ordinance, code, law, statute, federal or state, pending or dismissed, known or unknown) against any person and/or entity other than the Knauf Defendants and the Other Releasees named, or who could have been named, in the Related Actions, including but not limited to manufacturers of Non-KPT Chinese Drywall.

5.2.4. To avoid inconvenience to the Knauf Defendants, in any action in which any Knauf Defendant is or may be a defendant or a third-party defendant together with other alleged tortfeasors, the Parties agree that each of the Participating Class Members shall  accept in satisfaction of any judgment

an amount reduced to the extent necessary (under applicable state law whether it be *pro rata*, *pro tanto* and/or set-off) to extinguish any claims for contribution, indemnity (common law or contractual), and/or subrogation whether arising out of tort, contract or otherwise, by the other alleged tortfeasors. This provision is intended to obviate the necessity and expense of having the Knauf Defendants remain a party on the record and obliged to participate in a trial merely for the purpose of determining if in fact any Knauf Defendant was a tortfeasor so as to entitle the other tortfeasors to a pro rata or pro tanto reduction or set-off of any judgment. It is the further intent of the Parties that the Knauf Defendants shall have no further liability in connection with the Released Claims. However, this provision does not constitute an admission of liability by the Knauf Defendants.

5.2.5. As of the Effective Date, to the extent of each Participating Class Member's individual net recovery, and to the extent the claim described in this Section arises out of the claim of that Participating Class Member, each Participating Class Member shall defend, indemnify, and hold harmless each of the Knauf Defendants from and against (a) any and all claims by, on behalf of, through, or deriving from his, her, or its heirs, executors, representatives, attorneys or former attorneys, successors, employers, insurers, employers' insurers, health insurers, health care providers, assignees, subrogees, predecessors in interest, successors in interest, beneficiaries or survivors; and (b) any claims for contribution; indemnity, common law or contractual; and/or subrogation, whether arising under tort, contract or otherwise, related in any way to the Released Claims of said Participating Class Member released by this Settlement.

5.2.6. It is expressly understood and agreed that the indemnity, defense, and judgment reduction obligations detailed above shall exist regardless of the legal basis for the claim, demand, cause of action, right of action, liability, lien, or judgment demand asserted by any person or entity to the extent related to the Released Claims against any Released Party and/or Knauf Defendant. In particular, the Participating Class Members expressly bind themselves to the foregoing indemnity, defense and judgment reduction obligations regardless of whether the claim, demand, suit, liability, lien, judgment, cause of action, or right of action is based on or related to (a) the negligence of any of the Knauf Defendants, sole or concurrent; (b) the strict liability of any of the Knauf Defendants under any theory whatsoever; (c) the absolute liability of any of the Knauf Defendants; (d) the wanton, reckless, or willful misconduct of any of the Knauf Defendants; (e) any actual, alleged or purported right, asserted by any Knauf Defendant or any Participating Class Member under a policy of insurance issued by one or more insurers; or (f) any other basis whatsoever.

6.      **Certification of Federal Rule of Civil Procedure 23(b)(3) Settlement Class and Related Motions**

6.1.    This Settlement shall be subject to approval of the Court.

6.2.    Within ten (10) days of the Execution Date, the Parties will move jointly for an order:

      6.2.1.    Preliminarily certifying the Settlement Subclasses and approving the Settlement (the "Preliminary Approval Order"); and

      6.2.2.    Staying all claims in the Litigation as to all Knauf Defendants.

6.3.    The Knauf Defendants shall have the right to withdraw from the Settlement if the Court does not issue any of the requested orders (including the Order and Judgment) or if the Settlement Class is not certified.

6.4.    The Parties will stipulate to the Court in the request for entry of the Preliminary Approval Order and at the Certification Hearing that (i) the Class is being certified for settlement purposes only pursuant to the Settlement, (ii) the Knauf Defendants reserve the right to object to class certification *de novo* in the event this Settlement is terminated for any reason, including termination pursuant to Section 13, and (iii) this Settlement shall have no precedential effect with regard to certification of a litigation class that may arise if this matter is not fully and completely resolved through this settlement effort, or otherwise and may not be cited in any class certification proceeding contested by the Knauf Defendants in either federal or state court.

7.      **Notice to Class Members**

7.1.    Type of Notice Required

      7.1.1.    Upon entry of the Preliminary Approval Order preliminarily certifying the Settlement Class as defined in Section 1.1.2, the Settlement Class Counsel will disseminate the Class Settlement Notice ("Notice") approved by the Court as follows:

            7.1.1.1.    By first-class mail to the last known address of the following persons and entities:  (i) all plaintiffs in the Litigation who, as of December 9, 2011, asserted claims arising from, or otherwise related to, KPT Chinese Drywall, (ii) all plaintiffs in the Omni complaints in MDL No. 2047 who, as of Execution Date, asserted claims arising from, or otherwise related to, KPT Chinese Drywall, (iii) all plaintiffs in all Related Actions who, as of December 9, 2011, asserted claims arising from, or otherwise related to, KPT Chinese Drywall, and (iv) the counsel of all the foregoing;

7.1.1.2.  By providing a copy of the Notice and requesting that it be posted on the Court's Chinese Drywall MDL website; and

7.1.1.3.  As the Court may direct.

7.1.1.4.  The cost of Notice shall be paid by the Knauf Defendants.

## 8.  Opt-Out

### 8.1.  Opt-Out Period

8.1.1.  Class Members will have seventy (70) days following the Notice (or such different period as the Court may direct) to opt out of the Settlement in accordance with Section 8.2.  If the Settlement is finally approved by the Court, all Class Members who have not opted out by the end of the seventy (70) day period will be bound by the Settlement, and the relief provided by the Settlement will be their sole and exclusive remedy for the claims alleged by the Class.  To assure that each Class Member has adequate time for consideration of the Settlement, no opt out will be effective if filed earlier than 21 days after the issuance of the Notice under Section 7.  The Knauf Defendants and Settlement Class Counsel will certify to the Court the date that Notice issues.

### 8.2.  Opt-Out Process

8.2.1.  Individual Class Members must request to opt out and must sign any requisite pleading or form.  A pleading or form or any other request made or signed by counsel shall not be sufficient.  An original opt-out form signed by the Class Member must be mailed to Settlement Class Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106) and Russ M. Herman (Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, New Orleans, Louisiana  70113), and to the Knauf Defendants' counsel, Kerry Miller (Frilot L.L.C., 1100 Poydras Street, Suite 3700, New Orleans, LA 70163).  The opt out request must be postmarked within the 70-day period described in Section 8.1.1.  Settlement Class Counsel shall be obliged to file all opt outs with the Court by a date prior to the Fairness Hearing to be determined by the Court.

8.2.2.  The Parties shall seek an order of the Court compelling mediation of opt-out claims.

### 8.3.  Rights With Respect to Opt Outs

8.3.1.  The Parties agree and acknowledge that any opt-out may be detrimental, so that each of them will have a right to terminate the Settlement on account of the existence of any opt out.

8.3.2. If any Class Members remain as opt outs fourteen (14) days prior to the Fairness Hearing, then each of the Knauf Defendants individually has the right, acting at its sole and exclusive discretion and option, to terminate the Settlement in its entirety or as to all Participating Class Members who are members of or were eligible to participate in the Banner Class Settlement (if any opt out was supplied by Banner), the InEx Class Settlement (if any opt out was supplied by InEx), and/or the L&W Class Settlement (if any opt out was supplied by L&W). This right to terminate the Settlement must be exercised by written notice to the Court seven (7) days before the Fairness Hearing. If timely exercised, the Knauf Defendants' exercise of their rights under this Section shall not be reviewable by the Court.

## 9.    Objections

9.1.    Any Class Member who has any objection to certification of the Class, or to approval of this Settlement or any terms hereof, or to the approval process must make that objection by the following procedure:

9.1.1. The objection must be in writing;

9.1.2. The objection must set forth all objections and the reasons therefore, and a statement whether the Class Member intends to appear at the Certification Hearing or Fairness Hearing either with or without the objector's counsel. The objection must identify any witnesses intended to be called, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence, at the Certification Hearing or Fairness Hearing;

9.1.3. The objection must be signed by the individual Class Member and by his/her/its counsel; an objection signed by counsel alone shall not be sufficient;

9.1.4. The objection must contain the caption of the Litigation and include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the objecting Class Member;

9.1.5. The objection must be mailed to Plaintiffs' Lead Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106), and to the Knauf Defendants' counsel, Kerry Miller (Frilot L.L.C., 1100 Poydras Street, Suite 3700, New Orleans, LA 70163). The objection must be postmarked by the date prescribed by the Court. Plaintiffs' Lead Counsel shall be obliged to file all objections with the Court by a date prior to the Certification Hearing and the Fairness Hearing to be determined by the Court.

9.2.    Failure to comply timely and fully with these procedures shall result in the invalidity and dismissal of any objection. No Class Member shall be entitled to be heard at the Certification Hearing or Fairness Hearing (whether individually or

through the objector's counsel), or to object to certification of the Class or to the Settlement, and no written objections or briefs submitted by any Class Member shall be received or considered by the Court at the Certification Hearing or Fairness Hearing, unless written notice of the Class Member's objection and any brief in support of the objection have been filed with the Court and served upon Plaintiffs' Lead Counsel and the Knauf Defendants' counsel not later than twenty (20) days before the date of the Certification Hearing or the Fairness Hearing as appropriate, in accordance with Section 9.1.

9.3.   Class Members who fail to file and serve timely written objections in accordance with Section 9.1 shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the certification of the Settlement Class or to the Settlement.

## 10.   Fairness Hearing

10.1.   Within ten (10) days of the entry of the Preliminary Approval Order, Settlement Class Counsel shall request that the Court hold a Fairness Hearing.  The Fairness Hearing shall not be held until after the Opt Out Period has concluded.

10.2.   At the Fairness Hearing the Court shall, *inter alia*, (i) consider any properly filed objections to the Settlement, (ii) determine *de novo* whether the Settlement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith, and (iii) enter the Order and Judgment, including final approval of the Settlement Class and the Settlement.

## 11.   Dismissals

11.1.   Within thirty (30) days of the occurrence of the Effective Date:

11.1.1.   The Parties shall jointly submit to the Court a proposed order or orders dismissing with prejudice as to the Knauf Defendants and the Other Releasees (i) all claims of Participating Class Members in Omni Complaints filed in MDL No. 2047 but only to the extent that they assert claims against the Knauf Defendants and the Other Releasees, and (ii) all claims of Participating Class Members in Related Actions pending in the Eastern District of Louisiana and/or MDL No. 2047 but only to the extent that they assert claims against the Knauf Defendants and the Other Releasees;

11.1.2.   The members of the PSC shall file motions to dismiss with prejudice all Related Actions against the Knauf Defendants and the Other Releasees by Participating Class Members whom they represent which are pending in any state court and/or in any federal court outside the Eastern District of Louisiana or MDL 2047 but only to the extent that they assert claims against the Knauf Defendants or Other Releasees;

11.1.3. The PSC shall use its best efforts to assist the Knauf Defendants in obtaining dismissal with prejudice of any other Related Actions maintained by any Participating Class Member whether in state court, federal court or any arbitral forum.

11.2. The dismissal orders, motions or stipulation to implement Section 11.1. shall seek or provide for a dismissal with prejudice, with each Participating Class Member and Knauf Defendant bearing its own attorneys' fees and costs, and waiving any rights of appeal.

## 12.    Bar Order

12.1. As part of the Order and Judgment, the Court shall issue a bar order and permanent injunction against any and all pending or future claims by Participating Class Members against the Knauf Defendants and Other Releasees arising from, or otherwise relating to KPT Chinese Drywall.

12.2. The bar order and permanent injunction shall:

12.2.1. Enjoin and forever bar any and all Participating Class Members from commencing and/or maintaining any action, legal or otherwise, against the Knauf Defendants and Other Releasees arising out of, or otherwise relating to, KPT Chinese Drywall;

12.2.2. Bar the assertion by any entity or person against the Knauf Defendants and Other Releasees of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning (i) the KPT Chinese Drywall claims against the Knauf Defendants or (ii) this Settlement.

12.3. This provision is not intended to prevent or impede the enforcement of claims or entitlement to benefits under this Settlement.

## 13.    Termination of This Settlement

13.1. This Settlement shall be terminated and cancelled upon any of the following events:

13.1.1. The Court declines to enter the Preliminary Approval Order;

13.1.2. The Fairness Hearing is not held by the Court;

13.1.3. The Order and Judgment approving the Settlement and certifying the Class is not entered by the Court, or is reversed by a higher court, or is inconsistent with the terms of the Settlement; or

13.1.4. The Court declines to dismiss the claims of Participating Class Members against the Knauf Defendants and Other Releasees with prejudice.

13.2. In addition to any other right to terminate under this Settlement, the Knauf Defendants may, at their sole and exclusive discretion and option, withdraw from, terminate, and cancel their obligations under this Settlement upon any of the following events:

13.2.1. The Knauf Defendants exercise their rights pursuant to Sections 4.8.5 or 4.8.6.

13.2.2. The Class Settlement Notice does not comply with Section 7.1 or with the order of the Court concerning Notice;

13.2.3. The Knauf Defendants exercise their rights regarding opt outs pursuant to Section 8.3;

13.2.4. The dismissals as provided in Sections 11.1.1, 11.1.2, and 11.2 do not occur as provided in Section 11;

13.2.5. The bar order and permanent injunction as provided in Section 12.2 are not entered by the Court as provided in Section 12;

13.2.6. The PSC, acting on behalf of the Class, materially breaches the Settlement and such breach materially frustrates the purposes of this Agreement; or

13.2.7. This Settlement is changed in any material respect, except by written consent of the Parties.

13.3. If the Knauf Defendants materially breach the Settlement Agreement, and such breach materially frustrates the purpose of this Agreement, then the Settlement Class Counsel shall, at their sole discretion, pursue whatever other remedies are available to them.

## 14. Attorneys' Fees

14.1. Separately and in addition to any consideration received by a Participating Class Member under this Settlement, the Knauf Defendants shall pay a singular attorneys' fee (to be allocated among the PSC and common benefit counsel authorized and working at the direction of the PSC, other common benefit counsel, Settlement Class Counsel and individual retained counsel) and reasonable and appropriate costs, including but not limited to Held Costs, Shared Costs and Individual Participating Class Members' Costs limited to reasonable inspection costs.

14.2. The PSC shall be entitled to petition the Court for an award of attorneys' fees and costs, and provided that the PSC does not seek an award of attorneys' fees and costs exceeding $160 million from the Knauf Defendants, the Knauf Defendants agree not to oppose any such request. All attorneys' fees and costs as well as the allocation of attorneys' fees and costs among the PSC, common benefit counsel authorized and working at the direction of the PSC, other common benefit

counsel, Settlement Class Counsel and individual retained counsel are subject to the approval of the Court and to a determination by the Court that the common benefit counsel work was valid and bona fide.  The Court's determination shall be final and not subject to appeal.

    14.2.1. In connection with the Court's determination of the PSC's application for attorneys' fees and costs, the PSC shall request without objection from the Knauf Defendants that the Court consult with state court Judges who have presided over Related Actions filed in state court as the Court deems appropriate.  The PSC shall also request without objection from the Knauf Defendants that the Court determine a procedure for the appropriate allocation of attorneys' fees and costs among the PSC, common benefit counsel authorized and working at the direction of the PSC, other common benefit counsel, Settlement Class Counsel and individual retained counsel. In the event the Court appoints the Special Master to assist in the determination of a procedure for the appropriate allocation of attorneys' fees and costs, then each fee applicant may select either Special Master Perry or Special Master Juneau to review their fee application.

14.3.    The Court's award of attorneys' fees and costs shall settle and finally resolve any claim for attorneys' fees or costs that can be claimed by any counsel representing or working for the benefit either of a Participating Class Member or the Class. The award for attorneys' fees and costs shall include, but not be limited to:  (i) all preparation and litigation work on behalf of any Participating Class Member or the Class; (ii) this Settlement; (iii) the Pilot Program; (iv) the Major Builder Settlement Agreements; (v) any agreement governing homes remediated prior to the Execution Date; and (vi) any other previous settlement between Knauf and any other party relating to claims arising from KPT Chinese Drywall unless attorneys' fees and reasonable costs have already been separately addressed under such settlement.  Upon final approval, this agreement concerning attorneys' fees and costs shall supersede and replace the attorneys' fees and costs arrangements in the Pilot Program and the Major Builder Settlement Agreements.

14.4.    In no event will the Knauf Defendants' liability for attorneys' fees and costs exceed $160 million.  The Knauf Defendants shall have no further obligation for attorneys' fees and costs to any counsel representing or working on behalf of either a Participating Class Member or the Class.

14.5.    In addition to an award of attorneys' fees and costs under this Settlement, the Knauf Defendants agree that the PSC, common benefit counsel authorized and working at the direction of the PSC, other common benefit counsel, Settlement Class Counsel and individual retained counsel are entitled to seek an award of attorneys' fees and costs from the Banner Class Settlement, the InEx Class Settlement, the L&W Class Settlement and the Insurer Class Settlement.  The Knauf Defendants shall take no position on the amount of attorneys' fees and costs to which any party or their counsel might be entitled under any of those Agreements.  The Knauf Defendants will not be entitled to any credit for

attorneys' fees and costs owed under those Settlements, nor will the Knauf Defendants be responsible for any shortfalls in attorneys' fees and costs recovered under those Settlements.

14.6.   In addition to fees sought under Section 14.2, if there is a surplus in the Other Loss Fund, Settlement Class Counsel and/or the PSC may petition for attorneys' fees and costs from the surplus pursuant to Section 4.7.4.4, provided, however that the Knauf Defendants will not be responsible for any such attorneys' fees and costs.

14.7.   The PSC shall establish an "MDL 2047 PSC Shared Costs Fund" in an appropriate financial institution approved by the Court. Fourteen (14) days after the Execution Date, the Knauf Defendants will make an advance payment of $6 million (non-refundable) to the Shared Costs Fund for costs incurred by the PSC, common benefit counsel, other common benefit counsel, Settlement Class Counsel and individual retained counsel. After the Settlement becomes Final, the amount advanced shall be credited against any amount of attorneys' fees and costs awarded by the Court. If the Settlement does not become Final, the amount advanced by the Knauf Defendants shall be credited against any award of attorneys' fees and costs associated with the Pilot Program.

14.8.   Pursuant to the direction of the Court, the Knauf Defendants will pay any attorneys' fees and costs awarded by the Court beyond the advance payment of $6 million within 30 days after the Court issues an order determining the amount of attorneys' fees and costs.

## 15.   **Court to Retain Jurisdiction to Implement and Enforce Settlement Agreement**

15.1.   Notwithstanding any other provision of this Settlement, the Court shall retain (a) continuing jurisdiction over the Litigation, the Class, the Participating Class Members, the Knauf Defendants and the Settlement for the purposes of administering, supervising, construing and enforcing the Settlement; and (b) continuing and exclusive jurisdiction over (i) the Settlement Funds and (ii) the distribution of same to Participating Class Members. Each of the Knauf Defendants consent to the jurisdiction of the Court solely for the purposes of administering, supervising, construing and enforcing the Settlement (including the Security Agreement) and for no other purpose. All other jurisdictional defenses arguments and rights are fully reserved by the Knauf Defendants and nothing in this Settlement is intended to prejudice the assertion in any forum against any party of those jurisdictional defenses, arguments and rights.

## 16.   **Representations**

16.1.   The PSC represents and agrees that the Settlement is a fair, equitable and just process for determining eligibility for, and amount of, compensation for any given Class Member who has asserted a claim arising from, or related to, KPT Chinese Drywall.

16.2.   The PSC and counsel for the Knauf Defendants represent that, based on their respective independent consultations with qualified ethics experts or whomever else they deemed necessary, as to their respective ethical obligations and responsibilities, this Section 16 is consistent with the rules of professional responsibility and requirements of the respective jurisdictions in which they practice law, as described below.

16.3.   The following representations apply to claims against the Knauf Defendants and Other Releasees arising from, or related to, KPT Chinese Drywall.  Nothing in this Section shall apply to claims against Excluded Releasees or claims arising from, or related to, Non-KPT Chinese Drywall.

16.3.1.  Each member of the PSC represents that, while nothing in this Settlement is intended to operate as a "restriction" on the right of the PSC members to practice law within the meaning of the equivalent to Rule 5.6(b) of the ABA Model Rules of Professional Conduct in any jurisdictions in which the PSC Members practice or whose rules may otherwise apply, the PSC members have no present intent to (i) solicit new clients for the purpose of bringing claims against the Knauf Defendants or any of their related corporate affiliates, or any other entity or individual in connection with KPT Chinese Drywall, or (ii) acquire or receive a financial interest in any such claims or (iii) provide support or assistance to any other attorney in connection with a claim arising from KPT Chinese Drywall, except by providing access to materials contained in the PSC depository and a trial package developed by the PSC which shall include depositions and legal analysis of key issues.   Subject to the foregoing, the PSC further represents that, upon funding of the Settlement, because they have no present intent to represent clients with claims arising from, or related to, KPT Chinese Drywall in any cases or claims, it is their present intent not to provide assistance of any kind to any plaintiff's counsel who represents clients with claims arising from, or related to, KPT Chinese Drywall in any cases or claims or to participate in any way in the prosecution of such cases or claims.  However, notwithstanding the foregoing, the PSC will comply with PTO 8 entered in MDL No. 2047 concerning, among other things, the administration of the MDL and maintenance and transmittal of court orders and other documents or information to plaintiff's counsel.

16.3.2.  Each member of the PSC represents that he or she has no present intention to solicit new clients with claims arising from KPT Chinese Drywall.

16.3.3.  Each member of the PSC and the Knauf Defendants agree that the amounts to be paid under this Settlement to each Participating Class Member represent the satisfaction of that Participating Class Member's claims for compensatory damages.   No portion of such settlement represents the payment of punitive or exemplary damages.  Nonetheless, in consideration for the satisfaction of each Participating Class Member's

claim for compensatory damages, claims for punitive or exemplary damages shall be released as provided in Section 5.1.2.1.

16.3.4. Each member of the PSC represents and agrees that he or she has carefully reviewed the provisions of this Agreement, has consulted with whomever he or she deemed necessary, and has exercised independent judgment in concluding that the Settlement is in the best interests of his or her clients, and shall recommend the Settlement to his or her clients.

16.3.4.1. If any Class Member represented by a PSC member for any reason opts out of the Class, the PSC member who represents that Class Member shall present to the Court the issue of whether there is a conflict of interest which requires the PSC member to take (or have taken, as the case may be) all necessary steps to disengage and withdraw from the representation of such Class Member. The Court's decision on such matters shall be final and non-appealable.

16.3.5. Except as such agreement may be forbidden by the equivalent of Rule 1.16(d) or Rule 5.6(b) of the ABA Model Rules of Professional Conduct in the jurisdictions in which the PSC members practice law or whose rules otherwise apply, each member of the PSC represents and agrees that he or she will not share or make available to any other counsel's non-Participating Class Member, potential plaintiff with claims arising from, or related to, KPT Chinese Drywall or such other counsel for such Class Member or potential plaintiff: (i) any materials or information developed in the Litigation relating to KPT Chinese Drywall, including but not limited to, correspondence, notes, analyses, interview memoranda, exhibit and witness lists, demonstrative exhibits, witness examination outlines, expert reports and exhibits, and results of jury research ("Materials and Information"), other than materials contained in the PSC depository and a trial package developed by the PSC which shall include depositions and legal analysis of key issues; or (ii) experts, if any, with whom the PSC member has entered into exclusive retention agreements other than for the purpose of prosecuting claims arising from, or related to, Non-KPT Chinese Drywall.

16.3.6. Except as such agreement may be forbidden by the equivalent of Rule 1.16(d) or Rule 5.6(B) of ABA Model Rules of Professional Conduct in the jurisdictions in which the PSC members practice law or whose rules might otherwise apply, each member of the PSC represents and agrees that, within 60 days after the conclusion of the Litigation, he or she will return to the Knauf Defendants, or certify destruction of, all materials produced by the Knauf Defendants in discovery, including confidential information as defined in PTO 16 entered in MDL No. 2047 or any other applicable confidentiality order(s), whether in their possession or in the possession of their clients, experts, consultants or other persons within

66

their control, and shall provide a declaration to the Knauf Defendants that such return or destruction has occurred.   Such declaration shall be substantially in the form of Exhibit I.  If necessary, the PSC and the Knauf Defendants shall jointly move to amend any applicable confidentiality order(s) to provide for such return or destruction of confidential information.

16.3.7. Each member of the PSC represents and agrees that he or she will not hereafter use or reveal information, including but not limited to information relating to the representation of, or gained in the professional relationship with a Participating Class Member, or privileged information, including without limitation the Materials and Information, where use or revelation is prohibited by the rules of professional conduct, the code of professional responsibility, or equivalent authority, or by any other law, governing the conduct of lawyers, in the jurisdictions in which the PSC member practices law or whose rules might otherwise apply (including but not limited to the equivalent of Rules 1.6(a), 1.8(b) and 1.9(c)(2) of the ABA Model Rules of Professional Conduct in any such jurisdiction). Each member of the PSC represents that no Participating Class Member has consented to the use or revelation of such information, except to the extent required for the PSC to comply with the requirements of the equivalent to Rule 1.8(g) of the ABA Model Rules of Professional Conduct in the jurisdictions in which the members of the PSC practice law or whose rules might otherwise apply.

16.4.   Settlement Class Counsel represents that they have obtained the requisite authority from all members of the PSC to enter this Agreement in a manner that binds each PSC member to its terms.

16.5.   The Knauf Defendants represent that they have obtained the requisite authority to enter this Agreement in a manner that binds each of them to its terms.

## 17.   <u>Security</u>

17.1.   In furtherance of their payment obligations under this Agreement, the Knauf Defendants agree as follows:

17.1.1. Knauf Gips guarantees performance of all obligations by the Knauf Defendants under this Settlement.

17.1.2. To secure the obligations of the Knauf Defendants to make payments under this Agreement, KI shall grant to Settlement Class Counsel, as collateral agent for the Settlement Class, a first-priority lien and security interest in the Pledged Assets and Mortgaged Property, in each case subject to agreed-upon permitted liens under the terms and conditions set forth in the Security Agreement and the Mortgages.   The Security

Agreement and the Mortgages shall be executed and delivered as of the Effective Date.

17.1.3. The Knauf Defendants shall also either deposit funds in an account located in the United States or acquire asset(s) located in the United States and having an aggregate value of not less than $50 million in excess of the amount of any indebtedness secured by security interests in such funds and asset(s), and shall maintain ownership of such funds and asset(s) (or any assets acquired in replacement thereof or in addition thereto) and preserve unencumbered value (without regard to depreciation) of at least $50 million therein until the Knauf Defendants' payment obligations under this Agreement have been satisfied in full (the "Knauf Investment Assets"). The Knauf Defendants will provide notice to Settlement Class Counsel of the type and location of the Knauf Investment Assets.

17.1.4. The Knauf Defendants may elect to terminate Settlement Class Counsel's security interest in one or more of the Pledged Assets or Mortgaged Property or elect as an initial matter to provide an alternative to the Pledged Assets or Mortgaged Property by providing Replacement Security in any of the following three manners.

17.1.4.1. The Knauf Defendants may terminate Settlement Class Counsel's security interest in one or more of the Pledged Assets or Mortgaged Property or elect as an initial matter to provide an alternative to the Pledged Assets or Mortgaged Property by delivering a guarantee of the Knauf Defendants' obligations to make payments under this Agreement, in a principal amount not less than the value of such Pledged Assets or Mortgaged Property (based on the value maintained on the books and records of KI in accordance with generally accepted accounting principles), in favor of Settlement Class Counsel, for the benefit of the Settlement Class, issued by a commercial bank (i) that is chartered under the laws of the United States, any State thereof or the District of Columbia, and which is insured by the Federal Deposit Insurance Corporation, or (ii) whose long-term, unsecured and unsubordinated debt obligations are rated at least single A by Standard & Poor's Ratings Services (S&P) or an equivalent rating by Fitch Ratings Ltd. (Fitch), Moody's Investors Service, Inc. (Moody's) or DBRS and their respective successors, and which guarantee is maintained in effect until the Knauf Defendants' obligations to make payments under the Settlement Agreement are fully satisfied.

17.1.4.2. The Knauf Defendants may terminate the security interest in one or more of the Pledged Assets or Mortgaged Property or elect as an initial matter to provide an alternative to the Pledged Assets or Mortgaged Property by delivering an irrevocable

standby letter of credit, in a face amount not less than the value of such Pledged Assets or Mortgaged Property (based on the value maintained on the books and records of KI in accordance with generally accepted accounting principles), payable to Settlement Class Counsel, as collateral agent for the Settlement Class, issued by a commercial bank (i) that is chartered under the laws of the United States, any State thereof or the District of Columbia, and which is insured by the Federal Deposit Insurance Corporation, or (ii) whose long-term, unsecured and unsubordinated debt obligations are rated at least single A by Standard & Poor's Ratings Services (S&P) or an equivalent rating by Fitch Ratings Ltd. (Fitch), Moody's Investors Service, Inc. (Moody's) or DBRS and their respective successors, and which letter of credit is maintained in effect until the Knauf Defendants' payment obligations under this Agreement have been satisfied in full.

17.1.4.3.   The Knauf Defendants may terminate the  security interest in one or more of the Pledged Assets or Mortgaged Property or elect as an initial matter to provide an alternative to the Pledged Assets or Mortgaged Property by pledging to Settlement Class Counsel, as collateral agent for the Settlement Class, such other collateral assets of one or more of the Knauf Defendants located in the United States, having a fair market value, as agreed to by the Parties or, in the absence of agreement by the Parties, as determined by the Court, not less than the value of such Pledged Assets or Mortgaged Property (based on the value maintained on the books and records of KI in accordance with generally accepted accounting principles).

17.1.5.   Following the Knauf Defendants' replenishment of the Remediation Fund in accordance with Section 4.2.2, the Knauf Defendants may (a) terminate the liens and security interests granted to Settlement Class Counsel, as collateral agent for the Settlement Class, in one or more of the Pledged Assets, the Mortgaged Property and/or Replacement Security (in the case of substitute collateral as described in Section 17.1.3.3), (b) reduce the amount of Replacement Security (in the case of a guarantee as described in Section 17.1.3.1 or a letter of credit as described in Section 17.1.3.2) and/or (c) reduce the amount or unencumbered value of the Knauf Investment Assets, together in an aggregate amount (in the case of the Pledged Assets, the Mortgaged Property and the Replacement Security (constituting substitute collateral as described in Section 17.1.3.3), based on the value maintained on the books and records of KI in accordance with generally accepted accounting principles) reasonably equivalent to the amount by which the Remediation Fund has been replenished at such time, and Settlement Class Counsel, as collateral agent for the Settlement Class, shall execute, deliver, record and file such documents, instruments

and agreements as are necessary, convenient or reasonably requested by the Knauf Defendants to evidence the termination of such liens and security interests.

17.1.6. Settlement Class Counsel, as collateral agent for the Settlement Class, may only exercise remedies against the Pledged Assets, the Mortgaged Property, the Knauf Investment Assets and the Replacement Security in the event of default by the Knauf Defendants of their obligations to make payments under this Agreement or event of default under the Security Agreement or Mortgages, in each case subject to all applicable grace periods, and in each case subject to the entry of an order of the Court authorizing such exercise.  Before exercising any remedies, Settlement Class Counsel, as collateral agent for the Settlement Class, shall serve a notice of default on the Knauf Defendants and the Knauf Defendants shall have thirty (30) days to remedy such default including, if applicable, by providing Replacement Security as set forth in Section 17.1.3.  If the Knauf Defendants do not remedy the default within such thirty day period, Settlement Class Counsel, as collateral agent for the Settlement Class, may seek an order from the Court permitting them to exercise remedies against the Pledged Assets, Mortgaged Property, the Knauf Investment Assets and/or the Replacement Security (including to execute or foreclose thereon) as provided in the Security Agreement and Mortgages. Settlement Class Counsel, as collateral agent for the Settlement Class, may only exercise remedies against the Pledged Assets, the Mortgaged Property, the Knauf Investment Assets or the Replacement Security in the manner authorized by Court order and subject to compliance with such Court order.  In no event shall any member of the Settlement Class be permitted to exercise remedies against the Pledged Assets, the Mortgaged Property, the Knauf Investment Assets or the Replacement Security.

17.1.7. The Knauf Defendants will timely provide Settlement Class Counsel with all reasonable due diligence materials so that Settlement Class Counsel can assess the adequacy of the security.  In the event of any dispute regarding the adequacy of the due diligence provided, the Parties will meet and confer in a good faith attempt to resolve the dispute.  If the Parties are unable to resolve the dispute, the Parties will submit the dispute to the Court for resolution.

17.1.8. The liens and security interests granted to Settlement Class Counsel, as collateral agent for the Settlement Class, in the Pledged Assets and the Mortgaged Property and their interests in any Replacement Security shall be terminated in all respects after the Knauf Defendants' payment obligations under this Agreement have been satisfied in full.  Upon such termination, Settlement Class Counsel, as collateral agent for the Settlement Class, shall execute, deliver, record and file such documents, instruments and agreements as are necessary, convenient or reasonably

requested by the Knauf Defendants to evidence the termination of all such liens and security interests.

17.1.9. The Pledged Assets, the Mortgaged Property and the assets described in Section 17.1.4 shall not be available to satisfy the claims of any non-Class Member or Class Member who opts out under Section 8.

18. **Miscellaneous**

18.1.   The Knauf Defendants do not admit or concede that they have any liability for, or owe any damages whatsoever relating to, KPT Chinese Drywall.

18.2.   The Knauf Defendants represent that KI is a corporate entity which is doing business in the United States with its U.S. corporate offices in Shelbyville, Indiana.  The Knauf Defendants further represent that KI owns substantially all of the Knauf Defendants' assets in the United States.

18.3.   On the Execution Date, the PSC and the Knauf Defendants shall issue a joint press release.

18.4.   All persons should be on notice of their continuing duty to monitor the Court's docket for the most current filings and information.  The Court, in its discretion, may alter, postpone or amend any of the deadlines scheduled by the Court in connection with the certification of the class and the approval of this Agreement without additional formal notice.  Orders of any such changes are expected to be presented on the Court's website: http://www.laed.uscourts.gov/Drywall/Drywall.htm.

18.5.   Any Class Member (or his or her attorney) who submits false or intentionally misleading information, through any form of deception, dishonesty or fraud shall be subject to appropriate sanctions (including monetary sanctions and costs).

18.6.   In order to achieve transparency, the Knauf Defendants shall provide Settlement Class Counsel with copies of all fee contracts with the Settlement Administrator, any banking institutions, invoices of the Settlement Administrator, and other related persons and/or entities performing settlement administration functions.

18.7.   The retention of all banking institutions are subject to approval by Settlement Class Counsel and the Court.

18.8.   Unless otherwise specified, any written notices and other communications under this Settlement shall be in writing and shall be sent to:

For the Knauf Defendants:

Kerry J. Miller
Frilot LLC
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
kmiller@frilot.com

Steven Glickstein
Gregory J. Wallance
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
sglickstein@kayescholer.com
gwallance@kayescholer.com

Candace Bankovich
General Counsel
Knauf Insulation
One Knauf Drive
Shelbyville, Indiana 46176
candace.bankovich@us.knaufinsulation.com

For Settlement Class Counsel:

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
alevin@lfsblaw.com
flonger@lfsblaw.com

Russ Herman
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
Suite 100
New Orleans, Louisiana 70113
rherman@hhkc.com
ldavis@hhkc.com

Routine communications may be by email. Communications asserting a breach of the Settlement shall be by hand delivery or overnight courier (*e.g.*, Express Mail, Overnight UPS or Federal Express).

18.9. This Agreement is the product of arm's length negotiations between the PSC and the Knauf Defendants. Neither the PSC nor the Knauf Defendants shall be

deemed the drafter of this Agreement or any provision thereof. No presumption shall be deemed to exist in favor of or against either the PSC or the Knauf Defendants as a result of the preparation or negotiation of this Agreement.

18.10. This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of Louisiana without regard to conflict of laws principles.

18.11. This Agreement, including its exhibits, constitutes the entire agreement between the Parties. The Parties have not received or relied on any agreements or promises other than as contained in writing in this Agreement, including its exhibits. Prior drafts shall not be used to construe this Agreement.

18.12. This Agreement may not be modified or amended unless such modification or amendment is in writing executed by all parties.

18.13. This Agreement may be executed in multiple counterparts, all of which taken together shall constitute one and the same Agreement.

## 19.    Federal Rule of Evidence 408

19.1. The Parties specifically acknowledge, agree and admit that this Settlement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any equivalent rule of evidence of any state, and shall not (i) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation, the Related Actions, or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, or (ii) be used to establish a waiver of any defense or right, or to establish or contest jurisdiction or venue.

19.2. The Parties also agree that this Settlement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents entered in furtherance of this Settlement, and any acts in the performance of this Settlement are not intended to be, nor shall they in fact be, admissible, discoverable, or relevant in any case or other proceeding against the Knauf Defendants (i) to establish grounds for certification of any class involving any Class Member, or (ii) as evidence of any obligation that any Party hereto has or may have to anyone.

19.3. The provisions of this Settlement, and any orders, pleadings or other documents entered in furtherance of this Settlement, may be offered or received in evidence solely (i) to enforce the terms and provisions hereof or thereof, (ii) as may be specifically authorized by a court of competent jurisdiction after an adversary hearing upon application of a Party hereto, (iii) in order to establish payment, or an affirmative defense of exhaustion of insurance coverage or *res judicata* in a

Related Action or a subsequent case, (iv) in connection with any motion to enjoin or stay any of the Related Actions, or (v) to obtain Court approval of the Settlement.

[Remainder of this page intentionally left blank.]

**IN WITNESS HEREOF**, the Parties have executed this Settlement Agreement by their duly authorized representatives on the dates stated below.

For the Plaintiffs' Steering Committee:

**Witnesses:**

**Russ M. Herman**
**Plaintiffs' Liaison Counsel with the full authority and consent of the PSC**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____

**Witnesses:**

**Arnold Levin**
**Plaintiffs' Lead Counsel with the full authority and consent of the PSC**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Date: _____

Print Name: _____

For the Knauf Defendants:

**Witnesses:**                                    **Knauf Plasterboard (Tianjin) Co., Ltd.**

_____         By: _____

Print Name: _____       Print Name: _____

                                                  Title: _____

_____         Date: _____

Print Name: _____

**Witnesses:**                                    **Knauf Plasterboard (Wuhu) Co., Ltd.**

_____         By: _____

Print Name: _____       Print Name: _____

                                                  Title: _____

_____         Date: _____

Print Name: _____

Witnesses:

**Guangdong Knauf New Building Material Products Co., Ltd.**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____

Witnesses:

**Knauf Gips KG**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____

Witnesses:

**Gebr. Knauf Verwaltungsgesellschaft KG**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Knauf International GmbH**

By: _____

Print Name: _____

Title: _____

Date: _____

**Knauf Insulation GmbH**

By: _____

Print Name: _____

Title: _____

Date: _____

**Knauf UK GmbH**

By: _____

Print Name: _____

Title: _____

Date: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Knauf AMF GmbH & Co. KG**

By: _____

Print Name: _____

Title: _____

Date: _____

**Knauf do Brasil Ltda.**

By: _____

Print Name: _____

Title: _____

Date: _____

**PT Knauf Gypsum Indonesia**

By: _____

Print Name: _____

Title: _____

Date: _____