# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047 SECTION: L** |
| **THIS DOCUMENT RELATES TO: ALL CASES AND** | **JUDGE FALLON MAG. JUDGE WILKINSON** |

*Payton, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-07628 (E.D. La.)**

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*
**Case No. 2:10-cv-00361 (E.D. La.)**

*Gross, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-06690 (E.D. La.)**

*Rogers, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:10-cv-00362 (E.D. La.)**

*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 2:11-cv-00252 (E.D. La.)**

*Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-1363 (E.D. La.)**

*Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-2349 (E.D. La.)**

*Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-3023 (E.D. La.)**

*Vickers, et al. v. Knauf Gips KG, et al.*
**Case No. 2:09-cv-04117 (E.D. La.)**

*Silva, et al. v. Interior Exterior Building Supply, LP, et al.*
**Case No. 09-08030 (E.D. La.)**

*Silva, et al. v. Arch Insurance Company, et al.*
**Case No. 09-08034 (E.D. La.)**

*Amato, et al. v. Liberty Mutual Ins. Co.*
**Case No. 2:10-cv-00932 (E.D. La.)**

*Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd.,*
*f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-080 (E.D. La)**

*Hernandez, et al. v. AAA Insurance, et al.*
**Case No. 2:10-cv-03070 (E.D. La.)**

*Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a*
*Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-cv-01077 (E.D. La.)**

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PLAINTIFFS'
STEERING COMMITTEE AND SETTLEMENT CLASS COUNSEL FOR AN
ORDER:  (1) CERTIFYING THE INEX, BANNER, KNAUF, L&W, AND GLOBAL
SETTLEMENT CLASSES; AND (2) GRANTING FINAL APPROVAL TO THE
INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENTS**

## TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Exhibits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    The Chinese Drywall Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    The InEx, Banner, Knauf, L&W, and Global Class Settlements. . . . . . . . . . . . . 11

            1.    *The InEx Class Settlement.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    *The Banner Class Settlement.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            3.    *The Knauf Class Settlement.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                  a.    *Remediation Fund.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                       i.    *Option 1: Program Contractor Remediation Option.* . . . . 20

                       ii.    *Option 2: Self-Remediation Option.* . . . . . . . . . . . . . . . . 21

                       iii.    *Option 3: Cash-Out Option.* . . . . . . . . . . . . . . . . . . . . . . 22

                  b.    *Other Loss Fund.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                  c.    *Attorneys' Fees.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

                  d.    *Protection of Non-Settling Defendants' Rights to Contribution or Indemnity.* . . . . . . . . . . . . . . . . . . . . . . . . . . 25

            4.    *The L&W Class Settlement.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

            5.    *The Global Class Settlement.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      C.    Class Notice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

            1.    *Individual Notice by First-Class Mail to Known Class Members.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

2.     *Notice by Publication.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

D.     Opt-Outs and Objections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E.     Fairness Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

F.     Claims Not Covered by the Class Settlements and Remaining in
        the Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

III.     ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

A.     Pretrial Settlements of Complex Class Actions Are Favored. . . . . . . . . . . . . . 39

B.     Standards for Approval of Class Settlements. . . . . . . . . . . . . . . . . . . . . . . . . 41

C.     The InEx, Banner, Knauf, L&W, and Global Settlements Are in the
        Best Interest of Class Members. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

        1.     *There is No Existence of Fraud or Collusion Behind
               the Chinese Drywall Settlements.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

        2.     *The Complexity, Expense, and Likely Duration of
               the Litigation Weigh in Favor of Approval of the
               Settlements.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

        3.     *The Stage of the Proceedings and the Amount of
               Discovery Completed Support Approval of the
               Settlements.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

        4.     *The Probability of Plaintiffs' Success on the Merits.* . . . . . . . . . . . . . 48

        5.     *The Range of Possible Recovery.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

        6.     *The Opinions of Class Counsel and Class
               Representatives Support Approval of the
               Settlements.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

D.     The Requirements of Rule 23(a) and Rule 23(b)(3) Have Been Met
        For Certification of the InEx, Banner, Knauf, L&W, and Global
        Settlement Classes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

        1.     *Numerosity.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

     2.    *Commonality.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

     3.    *Typicality.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

     4.    *Adequacy of Representation.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

     5.    *Common Questions of Law and Fact Predominate.* . . . . . . . . . . . . . . . . 62

E.    The Class Settlement Notices Complied with this Court's Orders
and Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

## TABLE OF AUTHORITIES

**CASES**                                                          **Page(s)**

*Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World*
  *Airlines, Inc.*, 630 F.2d 1164 (7th Cir. 1980)............................................. 40

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)....................................... passim

*Auto-Owners Ins. Co. v. Am. Building Materials, Inc.*, 820 F. Supp. 2d
  1265 (M.D. Fla. 2011)................................................................. 50

*Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398
  (E.D. La. Aug. 17, 2010)............................................................. 40

*Brown v. Ticor Title Ins.*, 982 F.2d 386 (9th Cir. 1992)................................... 61

*Builders Mut. Ins. Co. v. Parallel Design & Development, LLC*,
  2010 WL 6573365 (E.D. Va. Oct. 5, 2010)............................................. 50

*Califano v. Yamasaki*, 442 U.S. 682 (1979)................................................ 59

*Camp v. The Progressive Group*, 2004 WL 2149079
  (E.D. La. Sept. 23, 2004)......................................................... 42, 44, 45

*CDC Builders, Inc. v. Amerisure Mutual Ins. Co.*, 2011 WL 4454937
  (S.D. Fla. Aug. 16, 2011)........................................................... 50

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974)......................... 43

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)....................................... passim

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007)............................. 48, 53

*Dragas Management Corp. v. Hanover Ins. Co.*, 798 F. Supp.
  2d 766 (E.D. Va. 2011)............................................................. 50

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974).................................... 64

*Evans v. Jeff D.*, 475 U.S. 717 (1986)................................................. 39

*Evanston Ins. Co. v. Harbor Walk Development, LLC*, 814 F. Supp.
  2d 635 (E.D. Va. 2011)............................................................. 50

-iv-

*FCCI Advantage Ins. Co. v. Gulfcoast Engineering, LLC*, 10-CA-2862
  (20th Jud. Cir. Ct. Lee Cty., Fla. Aug. 8, 2011)..................................................... 50-51

*FCCI Ins. Co. v. Swedberg Enterprises, Inc. d/b/a Florida Drywall*,
  51 2010 CA 005680 (6th Jud. Cir. Ct. Pasco Cty., Fla. Oct. 7, 2011).................... 50

*FCCI Ins. Co. v. S3 Enterprises, Inc.*, 10-CA-2850 (20th Jud. Cir.
  Ct. Lee Cty., Fla. Sept. 16, 2011)........................................................................... 50

*FCCI Commercial Ins. Co. v. Al Brothers, Inc.*, 10-CA-2840
  (20th Jud. Cir. Ct., Lee Cty., Fla. Apr. 19, 2011)...................................................... 51

*FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall*,
  10-CA-7389 (12th Jud. Cir. Ct., Sarasota Cty., Fla. Jul. 6, 2011)........................... 51

*FCCI Commercial Ins. Co. v. Ocean Construction, Inc.*, 10-CA-2841
  (20th Jud. Cir. Ct., Lee Cty. Fla. Jun. 6, 2011)......................................................... 51

*FCCI Commercial Ins. Co. v. Residential Drywall, Inc.*, 10-23495
  (13th Jud. Cir. Ct. Hillsborough Cty., Fla. Sept. 7, 2011)........................................ 50

*FCCI Commercial Ins. Co. v. Shirley Construction & Drywall, Inc.*,
  102979-CA (20th Jud. Cir. Ct. Charlotte Cty., Fla. Aug. 1, 2011).......................... 51

*FCCI Commercial Ins. Co. v. S.D. & Associates, Inc.*, 10-29152-18
  (17th Jud. Cir. Ct. Broward Cty., Fla. Jul. 20, 2011)................................................ 51

*General Fidelity Ins. Co. v. Foster*, 808 F. Supp. 2d 1315 (S.D. Fla. 2011)............ 50

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982).................... 60

*Georgevich v. Strauss*, 96 F.R.D. 192 (M.D. Pa. 1982)........................................... 41

*Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case
  No. 2:09-cv-06687 (E.D. Va. May 11, 2010).......................................................... 9

*Granite State Ins. Co. v. Am. Building Materials, Inc.*, 2011 WL 6025655
  (M.D. Fla. Dec. 5, 2011)........................................................................................ 50

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir.),
  *cert. denied*, 423 U.S. 864 (1975)........................................................................ 43

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................................ 59

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)...................................... 60

*Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050
  (E.D. La. May 11, 2010).......................................................................... 9

*In re Beef Indus. Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979).............................. 41

*In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997)........................................ 10

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228 (5th Cir. 1982)................. 41

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d
  1346 (J.P.M.L. 2009).............................................................................. 6

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Germano*),
  706 F. Supp. 2d 655 (E.D. La. 2010)...................................................... passim

 *In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Hernandez*),
  2010 WL 1710434 (E.D. La. Apr. 27, 2010)............................................ passim

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997).................................... 42

*In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157 (3rd Cir. 1984),
  *cert. denied*, 472 U.S. 1008 (1985)......................................................... 37, 53

*In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981)....... 41, 44

*In re Dow Corning Corp.*, 244 B.R. 705 (Bankr. E.D. Mich. 1999),
  *aff'd in relevant part*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd in part
  and remanded, Class Five Nev. Claimants v. Dow Corning Corp.*
  (*In re Dow Corning Corp.*), 280 F.3d 648 (6th Cir.), *cert. denied*,
  537 U.S. 816 (2002)............................................................................... 53

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008
  WL 5423488 (E.D. La. Dec. 29, 2008)..................................................... 58, 59

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177
  (E.D. La. Mar. 15, 1995)........................................................................ 45

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999)........................... 58

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977)................ 64

*In re School Asbestos Litig.*, 921 F.2d 1330 (3rd Cir. 1990),
  *cert. denied*, 499 U.S. 976 (1991)........................................................................ 16, 25

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993)........................................ 57

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992)....................................... 40, 41

*In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006),
  *quoting Pederson v. La. State Univ.*, 213 F.3d 858 (5th Cir. 2000)....................... 58, 59, 62

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir.),
  *cert. denied*, 546 U.S. 822 (2005).......................................................................... 42

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001), *cert. denied*,
  534 U.S. 1113 (2002)................................................................................................ 57, 59

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983).............................................. 40, 41, 43

*Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977)........................ 41

*Moreno v. Autozone, Inc.*, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007)................. 37, 53

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999)..................... 62

*Nationwide Mutual Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502
  (E.D. Va. 2011)......................................................................................................... 50

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004)............................................... 38

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597 (D. Colo. 1974)........................... 57

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982).................................................. passim

*Pearson v. Ecological Sci. Corp.*, 559 F.2d 171 (5th Cir. 1975).............................. 41

*Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978),
  *cert. denied*, 439 U.S. 1115 (1979)......................................................................... 41, 44, 55

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)............................................ 64

*Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978)........................................ 25

*Purdie v. ACE Cash Express, Inc.*, 2003 WL 22976611
  (N.D. Tex. Dec. 11, 2003)........................................................................................ 57

*QBE Ins. Corp. v. Estes Heating & Air Conditioning, Inc.*, 2012 WL 413968
(S.D. Ala. Feb. 8, 2012)............................................................................. 50

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983)................................... 41, 48

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)............................. 41, 42

*Ross v. C. Adams Construction & Design, LLC*, 70 So.3d 949
(5th Cir. Ct. App. La. 2011)........................................................................ 50

*Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992).............. 60

*Smith v. Crystian*, 91 Fed. Appx. 952 (5th Cir. 2004)................................................ 40

*SUA Ins. Co. v. S&O Investments, LLC*, 2011 WL 5121285
(S.D. Ala. Oct. 28, 2011)........................................................................... 50

*Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246 (N.D. Cal. 1978)........................ 58

*Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), *question
cert'd to Va. Sup. Ct.*, 468 Fed. Appx. 195 (4th Cir. 2012)...................................... 50

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007).................. passim

*Union Asset Management Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012)........................................................................ 48

*United States v. Tex. Educ. Agency*, 679 F.2d 1104 (5th Cir. 1982)........................ 42, 43

*Vintage Properties, Inc. v. Mid-Continent Casualty Co.*, 10-cv-80836
(S.D. Fla. Aug. 23, 2011)........................................................................... 50

*Weinberger v. Thornton*, 114 F.R.D. 599 (S.D. Cal. 1986)..................................... 60

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971).............................................................. 41

## STATUTES, RULES AND REGULATIONS

11 U.S.C. § 1129(a)(8)................................................................................. 52

11 U.S.C. § 1129(b)(1)................................................................................. 52

28 U.S.C. § 1407............................................................................................ 6

Fla. Stat. § 558, *et seq*................................................................. 32

Federal Rule of Civil Procedure 23(a)............................................ 1, 2, 57

Federal Rule of Civil Procedure 23(a)(2)........................................ 59

Federal Rule of Civil Procedure 23(a)(4)........................................ 61

Federal Rule of Civil Procedure 23(b)(3)........................................ passim

Federal Rule of Civil Procedure 23(e)............................................ 1, 2

Federal Rule of Civil Procedure 54(b)............................................ 2

## OTHER AUTHORITIES

Bruce L. Hay, *The Theory of Fee Regulation in Class Action Settlements*,
  46 Am. U. L. Rev. 1429, 1432 (1997)........................................ 45

Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict
  Litigation," 82 Tul. L. Rev. 2323 (June 2008)............................ 10

CPSC's Remediation Guidance for Homes with Corrosion from Problem
  Drywall as of September 15, 2011, published at
  www.cpsc.gov/info/drywall/Remediation091511.pdf........................ 6

Manual for Complex Litigation (Fourth) § 21.61 (2004)......................... 42

Manual For Complex Litigation (Fourth) § 21.632 (2004)....................... 57

Alba Conte and Herbert B. Newberg, 1 Newberg On Class Actions
  § 1:3 (4th ed. 2002)......................................................... 42

William B. Rubenstein, Alba Conte, and Herbert B. Newberg,
  1 Newberg On Class Actions § 3:10 (4th ed.)................................ 59

William B. Rubenstein, 1 Newberg On Class Actions § 3:12 (5th ed. 2012)............ 58

William B. Rubenstein, Alba Conte, and Herbert B. Newberg,
  1 Newberg On Class Actions § 3:13 (4th ed.)................................ 60

William B. Rubenstein, 1 Newberg On Class Actions §3:18 (5th ed. 2012)............. 59

William B. Rubenstein, Alba Conte, and Herbert B. Newberg
  1 Newberg On Class Actions § 3:21 (4th ed.)....................................................... 61

William B. Rubenstein, Alba Conte, and Herbert B. Newberg,
  2 Newberg On Class Actions § 4:24 (4th ed.)....................................................... 63

William B. Rubenstein, Alba Conte, and Herbert B. Newberg,
  1 Newberg On Class Actions § 4:25 (4th ed.)....................................................... 62

William B. Rubenstein, Alba Conte and Herbert B. Newberg,
  4 Newberg On Class Actions § 11.41 (4th ed.)............................................... 40, 42

William B. Rubenstein, Alba Conte and Herbert B. Newberg,
  4 Newberg On Class Actions § 11.47 (4th ed.)..................................................... 55

William B. Rubenstein, Alba Conte, and Herbert B. Newberg,
  4 Newberg On Class Actions § 11.50 (4th ed.) ................................................ 46, 49

## TABLE OF EXHIBITS

Exhibit 1        Proposed Order and Judgment

Exhibit 2        Declaration of Russ M. Herman and Arnold Levin dated 8/30/2012

Exhibit 3        InEx Distributor Profile Form dated 9/9/2009

Exhibit 4        Banner Distributor Profile Forms

Exhibit 5        Affidavit of Mailing of the InEx Settlement Class Notice dated 6/20/2011

Exhibit 6        Affidavit of Mailing of the Banner Settlement Class Notice dated 8/2/2012

Exhibit 7        Affidavit of Mailing of the Knauf Settlement Class Notice dated 1/27/2012

Exhibit 8        Affidavit of Dawn Barrios dated 1/30/2012

Exhibit 9        Affidavit of Mailing of the L&W Settlement Class Notice dated 7/11/2012

Exhibit 10       Affidavit of Mailing of the Global Settlement Class Notice dated 7/13/2012

Exhibit 11       Affidavit of Frederick S. Longer dated 8/29/2012

Exhibit 12       Declaration of Belinda Macauley Regarding Implementation of Notice Program in
                 Settlement with Interior/Exterior Building Supply, L.P. dated 8/30/2012

Exhibit 13       Declaration of Belinda Macauley Regarding Implementation of Notice Program in
                 Settlement with Banner Supply Company dated 8/30/2012

Exhibit 14       Declaration of Belinda Macauley Regarding Implementation of Notice Program in
                 Global Settlement dated 8/31/2012

Exhibit 15       Declaration of Elizabeth Nelson, Rust Consulting, Inc. dated 8/29/2012

Exhibit 16       Chart of Knauf Settlement Benefits

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PLAINTIFFS'
STEERING COMMITTEE AND SETTLEMENT CLASS COUNSEL FOR AN
ORDER:  (1) CERTIFYING THE INEX, BANNER, KNAUF, L&W, AND GLOBAL
SETTLEMENT CLASSES; AND (2) GRANTING FINAL APPROVAL TO THE
INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENTS**

Pursuant to this Court's Order dated June 4, 2012 [Rec. Doc. No. 14566], the

Court-appointed Plaintiffs' Steering Committee (the "PSC") and Settlement Class Counsel for

the InEx, Banner, Knauf, L&W, and Global Settlements submit this Memorandum of Law[1] in

support of their Motion an Order and Judgment:

(1)     Approving the InEx, Banner, Knauf, L&W, and Global Settlements;

(2)     Certifying the InEx, Banner, Knauf, L&W, and Global Settlement Classes

pursuant to FEDERAL RULES OF CIVIL PROCEDURE 23(a), 23(b)(3) and 23(e);

(3)     Approving the Class Releases in the InEx, Banner, Knauf, L&W, and Global

Settlements;

(4)     Enjoining and barring any and all Participating Class Members from commencing

and/or maintaining any action, legal or otherwise, against the Settling Defendants arising out of,

or otherwise relating to, Chinese Drywall, KPT Chinese Drywall and/or L&W Supplied Chinese

Drywall; and

(5)     Barring the assertion by any entity or person against the Settling Defendants of

any contribution, indemnification, subrogation, or other claims arising out of the Participating

Class Members' claims concerning Chinese Drywall, KPT Chinese Drywall and/or L&W

---

[1] Capitalized terms used in this Memorandum of Law shall have the same meaning as those
defined in the Amended InEx Settlement Agreement [Rec. Doc. No. 12258-3], the Amended Banner
Settlement Agreement [Rec. Doc. No. 10033-3], the Amended Knauf Settlement Agreement [Rec. Doc.
No. 15742-2], the L&W Settlement Agreement [Rec. Doc. No. 13913-3], and the Amended Global
Settlement Agreement [Rec. Doc. No. 15695-2], which have been filed of record in this case.

Supplied Chinese Drywall, or the InEx, Banner, Knauf, L&W, or Global Settlements.

The PSC and Settlement Class Counsel seek the entry of an Order and Judgment[2] finding that:  (1) the InEx, Banner, Knauf, L&W, and Global Settlements are fair, reasonable and adequate; (2) the requirements for certifying the InEx, Banner, Knauf, L&W, and Global Settlement Classes under Rule 23(a) and Rule 23(b)(3) have been met; (3) the indemnity, defense and judgment reduction provisions in the InEx, Banner, Knauf, L&W, and Global Settlements are valid, binding, and enforceable; and (4) pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.[3]

## I.    <u>INTRODUCTION</u>

The PSC and Settlement Class Counsel estimate that the five class settlements that are the subject of this motion for final approval will provide, in the aggregate, in excess of $1 billion in comprehensive remediation and cash benefits to thousands of homeowners and owners of commercial buildings damaged by drywall imported from China ("Chinese Drywall").  These settlements will also provide what is estimated to be more than $100 million in additional compensation to homeowners, commercial building owners and tenants of affected properties for other losses arising from Chinese Drywall, including alternative living expenses, personal property damage, property maintenance costs (including utility bills, insurance, property taxes and maintenance of landscaping), moving and storage expenses, losses resulting from lost use,

---

[2]  The proposed "Order and Judgment" is attached hereto as Exhibit "1."

[3]  The Court has set a deadline of October 29, 2012 for the moving parties to file their reply brief in support of final approval of the class settlements.  As discussed below in more detail, because the opt-out/objection period for all of the settlements does not close until September 28, 2012 and because Class Members have the right to opt back into the settlements on or before the close of the opt-out period, the reply brief, by necessity, will address the issue of any opt-outs and/or objections to the settlements.

sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries.[4]  Further, the PSC is actively pursuing claims on behalf of the InEx Subclasses against InEx's Excess Insurance Carrier, The North River Insurance Company ("North River"), for $72 million in excess insurance and for damages for bad faith and extra-contractual conduct.[5]  If successful, these monies will also be made available for InEx Class Members, many of whom are also Knauf Class Members.[6]

  The class settlements before the Court were negotiated by members of the Court-appointed PSC, who are skilled attorneys with extensive and vast experience in class action and multidistrict litigation.  The PSC made tremendous efforts over the past two years to achieve a global resolution of the Chinese Drywall Litigation.  As a result of protracted and arm's-length negotiations with hundreds of builders, installers, suppliers and manufacturer Defendants and their insurers,[7] the PSC reached a series of five separate, but inter-related and inter-dependent class settlements with:  (1) supplier Interior Exterior Building Supply, LP ("InEx") and its

---

  [4] *See* Chart of Knauf Settlement Benefits (attached to the Knauf Settlement Notice), attached hereto as Exhibit "16."

  [5] *See* Minute Entry dated 6/13/2012 [Rec. Doc. No. 14686]; Minute Entry dated 6/29/2012 [Rec. Doc. No. 15229]; Minute Entry dated 7/10/2012 [Rec. Doc. No. 15238]; Scheduling Order dated 8/2/2012 [Rec. Doc. No. 15588].

  [6] In addition, as shown *infra*, the PSC is aggressively pursuing claims against Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., and Taian Plasterboard Company (collectively "Taishan") and their related entities and Lafarge, S.A. and others.

  [7] *See*, *generally*, Declaration of Russ M. Herman and Arnold Levin dated 8/30/2012 ("Herman-Levin Decl."), attached hereto as Exhibit "2."

insurers[8] (the "InEx Settlement"); (2) the Banner entities[9] and their insurers[10] (the "Banner Settlement"); (3) L&W Supply Corporation ("L&W") and USG Corporation (the "L&W Settlement"); (4) the Knauf Defendants[11] (the "Knauf Settlement"); and (5) more than 700 additional Participating Builders, Suppliers, Installers, and their Participating Insurers (the "Global Settlement").  If approved, these settlements will provide necessary remediation and monetary relief to the thousands of claimants impacted by Chinese Drywall, many of whom have been displaced from their homes, lost their properties due to foreclosure or sales in mitigation and suffered loss of personal property.

## II.   STATEMENT OF FACTS

### A.     The Chinese Drywall Litigation

The Chinese Drywall Litigation arose out of thousands of individual and class action lawsuits filed in state and federal courts throughout the country on behalf of Plaintiffs seeking compensation for property damage and personal injuries allegedly caused by Chinese Drywall. Chinese Drywall was installed in tens of thousands of homes, commercial buildings and other structures in the United States following the devastation caused by Hurricanes Katrina and Rita

---

[8]  InEx's Insurers that have entered into a class settlement include Arch Insurance Company ("Arch") and Liberty Mutual Fire Insurance Company ("Liberty").

[9]  The Banner entities include:  Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC, Banner Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International, LLC, and any other entity insured under the Banner Insurance Policies (collectively, "Banner").

[10]  Banner's Insurers include:  Chartis, FCCI, Hanover, and Maryland Casualty.

[11]  The Knauf Defendants include:  Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

4

at the end of the summer of 2005.  In the aftermath of these disasters and in conjunction with a housing boom, there was a critical shortage of drywall in this country, which led to the importation of millions of square feet of Chinese Drywall beginning in the fall of 2005 through 2008.[12]

Having entered the stream of commerce in the U.S., Chinese Drywall changed hands from its manufacturers to importers, distributors, suppliers, developers, builders, and/or installers, and was ultimately installed in thousands of properties, primarily in Florida, Louisiana, Virginia, Alabama, Mississippi, Texas, and California.  Once installed, residents and owners began to notice unpleasant odors and corrosion to anything made of metal.[13]  Plaintiffs have alleged that Chinese Drywall emits sulfur gases that are corrosive to metals, particularly copper and silver.[14]  This causes damage to the structural, mechanical and plumbing systems, such as the framing, heating, air-conditioning and ventilation ("HVAC") units, refrigeration coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and other property, such as microwaves, utensils, electronic appliances, jewelry, and other household and personal property items.[15]  Some individuals also have alleged that they suffered physical ailments, such as nose bleeds, skin irritation, and respiratory problems, as a result of exposure to

---

[12]  The Gypsum Association reported that 320 million square feet of Chinese Drywall were imported to the United States between 2005-2007.  *See* Gypsum Association Comments, archived at http://web.archive.org/web/20101216021748/http://gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.

[13]  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 706 F. Supp. 2d 655, 663 (E.D. La. 2010) (Findings of Fact and Conclusions of Law).

[14]  *Id*. at 664.

[15]  *See id*. at 664-66.

Chinese Drywall.[16]

In response to these complaints, certain governmental agencies opened investigations in order to closely examine this issue and conduct testing of Chinese Drywall.  The Consumer Product Safety Commission ("CPSC") and the Department of Housing and Urban Development ("HUD") found "a strong association between the presence of problem drywall and corrosion of metal in homes."[17]  They have recommended that all possible problem drywall be removed from the property, along with smoke alarms and carbon monoxide alarms, electrical distribution components (including receptacles, switches, and circuit breakers, but not necessarily wiring), and fusible-type fire sprinkler heads.[18]  The CPSC and the Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence, however, that exposure to Chinese Drywall causes any ill health effects.

On June 15, 2009, the Judicial Panel for Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the Eastern District of Louisiana for coordinated discovery and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).[19]  Almost 2,000 Defendants have been brought into this Litigation, including the

---

[16]  Order appointing Special Master [Rec. Doc. No. 505 at 1].

[17]  *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of September 15, 2011, published at www.cpsc.gov/info/drywall/Remediation091511.pdf.

[18]  *Id*.  This Court has further held that all electrical wiring must be removed as well in order to properly remediate property impacted by Chinese Drywall.  *See Germano* Findings of Fact; Findings of Fact and Conclusions of Law in *In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Hernandez*), 2010 WL 1710414, *8-*9 (E.D. La. Apr. 27, 2010); Transcript of Proceedings, 3/23/2011, at 18:4-19:14.

[19]  Rec. Doc. No. 1.

foreign manufacturers of Chinese Drywall, their related entities, homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors of Chinese Drywall, as well as their insurers and the insurers of homeowners.  Discovery has revealed that most of the Affected Properties that are the subject of this Litigation contain or contained KPT Chinese Drywall manufactured by KPT ("KPT Properties"), drywall manufactured by Taishan, or a combination of both Taishan and KPT Chinese Drywall ("Mixed Properties").

Since the formation of this MDL more than three years ago, thousands of claimants have participated in one or more of the PSC's Omnibus class action complaints.[20]  The Court has held regular monthly status conferences attended by hundreds of counsel, and it has entered 26 separate Pretrial Orders, many with subparts, as well as scores of other decisions, orders and minute entries.[21]  To date, more than 15,700 entries have been recorded on the docket in this

---

[20]   *See, e.g.*, *Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), I(C)) (involving claims against the Knauf Defendants); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)) (involving claims against non-Knauf manufacturers such as Taishan and BNBM); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A)) (asserting alternative liability theory against all known manufacturers for drywall that cannot be traced to a particular manufacturer); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)) (involving claims against the Knauf Defendants); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al. v. AAA Ins., et al.*, Case No. 2:10-cv-03070 (E.D. La.) (Omnibus VI) (dismissed); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-cv-00080 (E.D. La) (Omnibus VII); *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.) (Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01077 (E.D. La.) (Omnibus IX); *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-1363 (E.D. La.) (Omnibus X); *Benoit, et al. v. Lafarge S.A., et al.*, Case No. 11-cv-1893 (E.D. La.) (Omnibus XI); *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-2349 (E.D. La.) (Omnibus XII); *Almeroth v. Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 12-cv-0498 (E.D. La.) (Omnibus XIII); *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-3023 (E.D. La.) (Omnibus XIV).

[21]   *E.g.*, Minute Entry, Dec. 2, 2010 [Rec. Doc. No. 6525].

case.  In overseeing this MDL, the Court has appointed numerous steering committees and

liaison counsel for Plaintiffs, homebuilders, insurers, installers, and manufacturers.[22]  The Court

also appointed a curator for *pro se* litigants.[23]  Additionally, the Court has corresponded and

coordinated with a number of state and federal court jurists who also preside over related Chinese

Drywall cases.[24]

    In furtherance of its Court-appointed duties, the PSC has orchestrated and coordinated the

prosecution of Chinese Drywall claims on behalf of thousands of Plaintiffs in the MDL, which

has included:  (i) translation and service of process of more than a dozen Omnibus Complaints

under the Hague Convention on scores of foreign manufacturing Defendants and their related

entities; (ii) pretrial discovery of hundreds of entities in the Chinese Drywall supply chain,

including depositions in Frankfurt, London, and Hong Kong, as well as in cities throughout the

United States, often requiring the use of multiple interpreters; (iii) establishing a document

depository that has logged in more than 400,000 pages of documents received pursuant to

---

[22]  *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman) [Rec. Doc. No. 21]; Pretrial Order No. 4 (appointing Defendants' Liaison Counsel) [Rec. Doc. No. 22]; Amended Pretrial Order No. 7 (appointing Defendants' Steering Committee) [Rec. Doc. No. 152]; Pretrial Order No. 7B (Defendants' Steering Committee) [Rec. Doc. No. 180]; Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs, Arnold Levin) [Rec. Doc. No. 144-2]; Pretrial Order No. 8A (reappointing PSC Members) [Rec. Doc. No. 6960]; Pretrial Order No. 8B (reappointing PSC Members) [Rec. Doc. No. 13084]; Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel) [Rec. Doc. No. 414]; Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendants' State/Federal Committee) [Rec. Doc. No. 1871]; Pretrial Order No. 20 (appointing Insurer Steering Committee and Co-Lead Counsel for the First-Party Insurer Subcommittee) [Rec. Doc. No. 2369].

[23]  Rec. Doc. No. 11327.

[24]  *E.g.*, Transcript of Status Conference at 2:17-3:17, Oct. 14, 2010 (comments of J. Fallon praising "the help of state court judges:" "I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward."); Transcript of Status Conference at 7:5-17, Mar. 23, 2011.

production requests, many of which required translation into English; (iv) testing and preserving the drywall in Plaintiffs' homes; (v) preparing and serving requests upon the CPSC under the Freedom of Information Act; (vi) retaining experts in metallurgy, electrical engineering, and failure analysis; (vii) filing motions for class certification in *Germano*, *Payton* (Knauf), and *Payton/Vickers*; (viii) filing motions for Florida and Louisiana Homeowners classes for damages and/or declaratory relief[25]; (ix) filing numerous motions to intervene, motions to compel, motions for default judgment, motions for summary judgment, and a motion to establish a Plaintiffs' litigation expense fund; (x) responding to motions to dismiss for lack of personal jurisdiction; and (xi) attendance at every MDL 2047 status conference and hearing held before the Court.[26]

In addition, in the spring of 2010, the PSC prepared ten bellwether cases involving Virginia and Louisiana for trial.[27]  After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the appropriate scope of remediation.  The Court found that Chinese Drywall "has to be remediated."[28]  These bellwether trials have served as a

---

[25]  Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva*), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195 (*Vickers/Payton*), 8197 (*Payton*).

[26]  *See* 12/2/2010 Minute Entry at 23-25.

[27]  *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case).  Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[28]  *Germano*, 706 F. Supp. 2d at 671.

useful tool for all litigants involved in the Chinese Drywall Litigation, as well as the Court.[29]

The discovery efforts of the PSC, along with the bellwether trials and several mediations facilitated by the Court, have proved fruitful.  The PSC has succeeded in reaching five global class settlements with more than 700 Chinese Drywall Defendants.  Beginning in November 2009, the Court appointed a Special Master "to explore opportunities for an ultimate resolution of the instant matter as to any and all interested parties."[30]  Following many months of settlement negotiations, in October 2010, the PSC reached an agreement with the Knauf Defendants, known as the "Pilot Program," for the remediation of homes containing KPT Chinese Drywall.[31]  In addition to the Knauf Defendants, a number of suppliers, including InEx and Banner, as well as other Defendants have participated in and contributed funds to this settlement.[32]  Pursuant to the Pilot Program more than 2,270 homes have been remediated or are in the process of remediation. The success of this program laid the foundation for the InEx, Banner, Knauf, L&W, and Global Settlements to be reached.

---

[29]  *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (June 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5ᵗʰ Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.... The reasons for acceptance by bench and bar are apparent.  If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

[30]  Order Appointing Special Master (Rec. Doc. No. 505 at 4).

[31]  This agreement has been posted to the Court's website at http://www.laed.uscourts.gov/Drywall/DemonstrationRemediationAgreement.pdf.

[32]  Transcript of Proceedings, 10/14/10, at 5:3-5.

B.      **The InEx, Banner, Knauf, L&W, and Global Class Settlements**

The InEx, Banner, Knauf, L&W, and Global Settlements are five separate but inter-related Rule 23(b)(3) class settlements designed to provide cash, remediation and/or other benefits to owners and tenants of Affected Properties damaged by Chinese Drywall.  Beginning on May 13, 2011, this Court preliminarily approved the InEx Settlement.[33]  Three months later on August 11, 2011, this Court preliminarily approved the Banner Settlement.[34]  Early this year on January 10, 2012, this Court granted preliminary approval to the Knauf Settlement.[35]  Then, on April 26, 2012, this Court preliminarily approved the L&W Settlement.[36]  Finally, on May 31, 2012, the Court preliminarily approved the Global Settlement.[37]

These class settlements are integrally related.  For example, any net recoveries from the InEx, Banner and L&W Settlements will be assigned to and/or deposited into the Remediation

---

[33]  Rec. Doc. No. 8818.  Following preliminary approval, the parties amended the InEx Settlement Agreement to include an allocation committee and Homebuilders' Liaison Counsel Dorothy H. Wimberly as Co-Class Counsel.  The Court approved the substitution of the Amended InEx Settlement on February 24, 2012.  *See* Rec. Doc. No. 12587.

[34]  Rec. Doc. No. 10064.  After the parties submitted their Joint Motion for Preliminary Approval of the Banner Settlement, but prior to its adjudication, the parties amended their agreement with Banner to include an allocation committee and the appointment of Homebuilders' Liaison Counsel Dorothy H. Wimberly as Co-Class Counsel.  *See id.*

[35]  Rec. Doc. No. 12138.  Following preliminary approval of the Knauf Settlement and the preliminary approval of the L&W and Global Settlements, the parties amended the Knauf Agreement to clarify certain points raised by interested parties and to acknowledge the culmination of the L&W Settlement and the Global Settlement, which was a condition precedent to the Knauf Settlement.

[36]  Rec. Doc. No. 14033.

[37]  Rec. Doc. No. 14562.  Following preliminary approval of the Global Settlement, the parties amended their agreement to include additional Participating Defendants and Participating Insurers, which increased the settlement total by $2,784,000.  In the revision, a few Participating Defendants and Participating Insurers were deleted from the settlement, but this did not decrease the settlement total. The final lists of Participating Defendants and Participating Insurers are attached to the Amended Global Settlement Agreement as Exhibits 1 & 2, respectively.  The Court approved the substitution of the Amended Global Settlement Agreement on August 22, 2012.  *See* Rec. Doc. No. 15734.

11

Fund of the Knauf Settlement (to the extent those recoveries relate to claims arising from KPT Chinese Drywall) so that those monies may be used to remediate Class Members' Affected Properties.[38]  Likewise, net monies received from the Global Settlement (to the extent they relate to KPT Chinese Drywall) will be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund of the Knauf Settlement.[39]

### 1.    *The InEx Class Settlement*

InEx sold both KPT Chinese Drywall and Taishan Chinese Drywall to suppliers, developers, homebuilders, and installers in a number of Gulf Coast states, predominantly Alabama, Louisiana, Mississippi, and Texas.[40]  This drywall "eventually ended up in the homes of numerous individuals who have since filed claims against InEx, seeking relief for the property damage and personal injuries they have sustained as a result of the presence of this drywall in their homes.  Additionally, homebuilders who have repaired these homes at their own cost have filed claims against InEx."[41]  Following extensive discovery of the claims against InEx, the Court scheduled both a hearing on Plaintiffs' motion for class certification and a jury trial of Plaintiffs'

---

[38]  *See*, *generally*, Amended Knauf Settlement, Section 4.8:  "4.8.2.  Each Participating Class Member shall assign his/her claims (to the extent that they relate to KPT Chinese Drywall) to any net recovery under the InEx, Banner and L&W Settlements to the Knauf Defendants, if not already assigned. Any amounts recovered from the InEx, Banner and L&W Settlements based on such assignments shall be deposited into the Remediation Fund, for purposes of providing Settlement benefits to the individual Participating Class Member(s) involved."

[39]  Amended Knauf Settlement, Section 4.2.3.

[40]  *See* InEx Distributor Profile Form (Exhibit "3" hereto); InEx Preliminary Approval Order dated 5/13/2011 [Rec. Doc. No. 8818].

[41]  InEx Preliminary Approval Order, at 3.

claims commencing in the summer of 2011.[42]

Just prior to trial in April 2011, the PSC reached a class settlement with InEx after months of arm's-length negotiations and various mediations among the PSC, InEx, Arch, and Liberty.[43]  The settlement provides for the tender of all of this Defendant's remaining primary insurance, which encompasses an aggregate cash payment of $8,000,000, minus payments made in prior Chinese Drywall settlements with InEx[44] and minus the costs of Notice advanced by InEx's insurers.  Pending Settlements with InEx that were entered into but not paid prior to the Execution Date of the InEx Settlement Agreement will be paid out of and credited against the InEx Settlement Fund,[45] which will benefit a nationwide Class of persons or entities with claims against InEx and the InEx Settling Defendants[46] arising from Chinese Drywall sold, marketed, distributed and/or supplied by InEx.[47]

---

[42]  Minute Entry dated 2/8/2011 [Rec. Doc. No. 7352].

[43]  Herman-Levin Decl. at ¶16.

[44]  All previous bona fide Chinese Drywall settlements of claims against InEx and/or its insurers entered into and paid prior to the Execution Date of the InEx Settlement Agreement ("Prior Settlements") will be deducted from the insurance proceeds that InEx's insurers deposit into the InEx Settlement Fund. The amounts paid for each Prior Settlement claim are listed on Exhibit 1.23 to the Amended InEx Settlement.

[45]  Pending Settlements are listed on Exhibit 1.21 to the Amended InEx Settlement.

[46]  The InEx Settling Defendants are InEx, Arch, Liberty and the "Downstream InEx Releasees" (including, but not limited to, those listed on Exhibit 1.10 to the Amended InEx Settlement Agreement), except that any Builder listed on Exhibit 1.10 is not a Settling Defendant.  The InEx Settling Defendants are not permitted to make a claim under the InEx Settlement Fund.

[47]  The InEx Settlement defines Chinese Drywall as "any and all drywall products sold, marketed, distributed and/or supplied by InEx and which are alleged to be defective, and which were manufactured, in whole or in part, in China, or that include components manufactured, in whole or in part, in China, including, but not limited to, drywall manufactured by (i) [the Knauf Defendants] and (ii) Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.;

(continued...)

The InEx Settlement creates two subclasses: (1) for members of the InEx Class with claims arising from or related to "Affected Property," *i.e.*, any real or personal property, residential or commercial, containing Chinese Drywall sold, marketed, distributed and/or supplied by InEx, located in Louisiana (the "Louisiana Subclass"), and (2) for members of the Class with claims arising from or related to Affected Property located in states other than Louisiana (the "Non-Louisiana Subclass").

As part of the InEx Settlement, InEx assigned to the Non-Louisiana Subclass its rights and claims against its Excess Insurance Carrier North River for $72 million of excess insurance and for damages for bad faith and extra-contractual conduct. The InEx Settlement also reserves the rights of the Louisiana Subclass to pursue a claim against North River to the extent of the Available Policy Limits of the Excess Policies. In furtherance of these claims, a bifurcated bellwether trial against North River to determine the liability of North River's insured, InEx, and whether InEx was a bad-faith or good-faith seller under Louisiana redhibition law has been scheduled to begin November 26, 2012, with a damages phase to follow.[48]

Under the Court's direction, the parties have selected 12 Louisiana property owners (6 Plaintiffs selected by the PSC and 6 Plaintiffs selected by InEx) to undergo discovery. Already InEx has propounded requests for production of documents, and depositions have been noticed related to these Plaintiffs. From this trial pool, it is anticipated that only a subset of the selected

---

[47] (...continued)
Crescent City Gypsum, Inc.; Beijing New Building Materials Public Ltd., Co. ("BNBM"); and any other manufacturer of Chinese drywall, whether reactive or not." Amended InEx Settlement, Section 1.7.

[48] *See* Minute Entry dated 6/13/2012 [Rec. Doc. No. 14686]; Minute Entry dated 6/29/2012 [Rec. Doc. No. 15229]; Minute Entry dated 7/10/2012 [Rec. Doc. No. 15238]; Scheduling Order dated 8/2/2012 [Rec. Doc. No. 15588].

Plaintiffs will actually present their claims against InEx at the November 26, 2012 trial.  InEx has also been the subject of written discovery, including requests for admission designed to narrow the scope of contested issues at trial.  Although the trial will be narrowly focused on Plaintiffs' redhibition claims under Louisiana law and InEx's liability as a good faith/bad faith seller, it will encompass a wide range of related matters involving the physical characteristics of Chinese Drywall, its corrosive effects, and the reasonable marketing practices of sellers of foreign products, among other things.  Any and all proceeds from the trial of claims against North River will constitute additional funds for the benefit of InEx Class Members.

Under the InEx Settlement Agreement, the Court will establish a fair and equitable procedure for the allocation of the InEx Settlement Funds.[49]  The InEx Plan of Allocation may be similar to the allocation plan for the Banner Settlement, as set forth below.  In any event, the allocation of InEx funds will be designed to fairly accommodate the interests of InEx claimants.

Further, under the InEx Settlement, the PSC advanced the costs of class notice in excess of $100,000.[50]  After the Effective Date of the InEx Settlement, the PSC common benefit attorneys and privately retained counsel for Class Members may petition the Court for an award of attorneys' fees constituting, in the aggregate, no more than 32% of the InEx Settlement fund, plus reimbursement of reasonable expenses.  The Court will determine the allocation of said fees and reimbursement of reasonable costs.[51]

---

[49]  Amended InEx Settlement, Section 16.1.

[50]  Amended InEx Settlement, Section 6.2.2.

[51]  Amended InEx Settlement, Section 16.7.  In addition, Co-Class Counsel Dorothy H. Wimberly may petition the Court for an award of fees equal to her normal hourly rate for duties performed as Co-Class Counsel in connection with this Settlement.  *Id.*

Finally, in order to achieve global relief, the InEx Settlement requires the entry of a bar order to protect the Settling Defendants from future litigation of claims related to Chinese Drywall.  In order to protect the non-Settling Defendants' potential claims for contribution or indemnification against the Settling Defendants, the InEx Settlement contains judgment reduction provisions requiring Class Members to reduce or satisfy any judgment involving their Affected Property to the extent of their recovery under the InEx Settlement in accordance with applicable state law.[52]  *See In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3rd Cir. 1990), *cert. denied*, 499 U.S. 976 (1991).

### 2.    *The Banner Class Settlement*

The Banner entities supplied both KPT Chinese Drywall as well as Taishan Chinese Drywall along the Gulf Coast, but primarily throughout the State of Florida.[53]  Homeowners as well as homebuilders who repaired homes containing Banner-supplied Chinese Drywall sued Banner in state and federal court actions.  After extensive discovery of the Banner entities and many months of arm's-length negotiations with Banner and its insurers, the PSC reached a class settlement with these Defendants in June 2011.[54]

The Banner Settlement will benefit a nationwide Class consisting of all persons or entities with claims, known and unknown, against Banner and its insurers arising from, or otherwise related to Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner.  The settlement consists of the gross proceeds of all of Banner's Triggered Policies, less sums paid or committed to be paid pursuant to Pending Settlements and Prior

---

[52]  *See* Amended InEx Settlement, Section 4.3.6.

[53]  *See* Banner Distributor Profile Forms (collectively, Exhibit "4" hereto).

[54]  *See* Herman-Levin Decl. at ¶ 19.

Settlements.  These Banner Settlement Funds total $53,081,572.30, plus any interest earned in the Escrow Account.

A proposed Plan of Allocation of the Banner Settlement Funds was posted on the Court's Chinese Drywall website on March 12, 2012.[55]  This plan was negotiated and prepared by a committee of representatives of various interests in the Banner Settlement Funds, including members of the PSC, Plaintiffs' counsel, homebuilders liaison counsel, counsel for installers, Co-Counsel, and a member of the Insurer Steering Committee.  *Id.*  The plan provides for a fair allocation of Banner Settlement Funds based on objective criteria such as the square footage of the Affected Property and whether the Chinese Drywall involved is KPT Chinese Drywall, Taishan Chinese Drywall, or a combination of both types of Chinese Drywall.  Under the allocation plan there is a set-aside of 5% to compensate or reimburse Banner Class Members for alleged bodily injury and personal property losses.

Under the Banner Settlement, the PSC advanced the costs of notice to the class.[56]  After the Effective Date of the settlement, the PSC, Class Counsel (but not Co-Class Counsel), common benefit attorneys, and privately retained attorneys for all Class Members will be entitled to petition the Court for attorneys' fees up to 32% of the Settlement Funds and reimbursement of reasonable expenses, including the cost of notice.[57]  The allocation of attorneys' fees between and amongst the Petitioning Attorneys will be determined by the Court.[58]  The Petitioning Attorneys will also be entitled to petition the Court for a fee of 10% from those builders who actively

---

[55]  Rec. Doc. No. 12912.

[56]  Banner Settlement, Section 5.3.1.

[57]  Banner Settlement, Section 14.7.

[58]  *Id.*

pursued this Litigation and who recover from the Settlement Funds.[59]  Further, Co-Class Counsel

Dorothy H. Wimberly may petition the Court for reimbursement of reasonable expenses and an

award of attorneys' fees at an agreed hourly rate consistent with her normal hourly rate for duties

performed as Co-Class Counsel in connection with the Banner Settlement.[60]

Similar to the InEx Settlement, the Banner Settlement provides for a bar order and

contains judgment reduction provisions.[61]

### 3.     *The Knauf Class Settlement*

The Knauf Settlement was the first settlement reached with a manufacturer of Chinese

Drywall.  This settlement was culminated after more than one year of in-person and telephonic

negotiation sessions between the PSC and the Knauf Defendants, with oversight by the Court.[62]

The settlement is intended to resolve the claims of "[a]ll persons or entities who, as of the

December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (*i.e.*, not an absent class

member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or

not the Knauf Defendants are named parties to the lawsuit."[63]  The Settlement defines "KPT

Chinese Drywall" as "any and all drywall products manufactured, sold, marketed, distributed,

---

[59]  *Id*.

[60]  *Id*.

[61]  Banner Settlement, Section 3.3.5.

[62]  *See* Herman-Levin Decl. at ¶¶ 23-24.

[63]  The following persons or entities are members of the Knauf Class only for the purpose of obtaining benefits under the Other Loss Fund, but not under the Remediation Fund, as those Class Members' Remediation Claims have been or will be resolved outside the Knauf Settlement:  (i) any person or entity which has settled claims against the Knauf Defendants under the [Pilot Program]; (ii) any person or entity whose Affected Property has been remediated under a Major Builder Settlement Agreement; and (iii) any person or entity whose Affected Property has been remediated under a settlement with a Builder or Supplier (including claims assigned by Class Members that were later settled by the assignee).  Amended Knauf Settlement, Section 1.1.2.

and/or supplied by KPT and which are alleged to be defective."[64]  The Knauf Settlement

establishes a "Remediation Fund" and an "Other Loss Fund" to benefit three subclasses:  (1) a

Residential Owner Subclass; (2) a Commercial Owner Subclass; and (3) a Tenant Subclass.

### 1.    *Remediation Fund*

The Remediation Fund is an <u>uncapped fund</u> that will be used to remediate Owner Class

Members' properties impacted by KPT Chinese Drywall.  The Knauf Defendants will make an

initial deposit of <u>$200 million</u> into the Remediation Fund, and <u>additional deposits in increments</u>

<u>of $50 million</u> each time the balance of the fund is reduced to $25 million.  In addition, 50% of

net amounts (after payment of attorneys' fees and costs and after allocation between KPT

Chinese Drywall and Non-KPT Chinese Drywall) recovered from the Global Settlement[65] and

from settlements with Excluded Releasees and/or their insurers prior to the Fairness Hearing[66]

will be deposited into the Remediation Fund for purposes of providing remediation benefits to

Class Members.[67]  Further, each Participating Class Member who is also an InEx, Banner and/or

L&W Class Member will assign his/her claims (to the extent that they relate to KPT Chinese

---

[64]  Amended Knauf Settlement, Section 1.26.

[65]  *See* Amended Knauf Settlement, Section 4.2.3.

[66]  *See id.*  Under the Knauf Settlement, "Excluded Releasee" is defined as "any person or entity eligible to be an Other Releasee that does not participate in the [Global Settlement] or otherwise settle with the PSC and the Knauf Defendants.  An Excluded Releasee can also be an Other Releasee." Amended Knauf Settlement, Section 1.12.  "Other Releasee" is defined in the Knauf Settlement as "any person or entity that supplied, installed or facilitated and/or assisted in such supply or installation of KPT Chinese Drywall, including but not limited to, Banner, InEx, L&W, Importers, Suppliers, Builders, Developers, General Contractors, Installers, Realtors, Subcontractors, and Subsuppliers which purchased or received KPT Chinese Drywall from a Supplier, used Chinese Drywall sold, marketed, distributed and/or supplied by a Supplier in the construction of Affected Property, or sold or marketed Affected Property containing KPT Chinese Drywall, . . . except for Excluded Releasees."  Amended Knauf Settlement, Section 1.50.

[67]  The remaining 50% of net amounts recovered from the Global Settlement will be deposited into the Other Loss Fund.

Drywall) to any net recovery under those settlements to the Knauf Defendants, if not already assigned.  Any net amounts recovered from the InEx, Banner and L&W Settlements based on such assignments will also be deposited into the Remediation Fund, for purposes of providing remediation benefits to the individual KPT Property Owner involved.

Residential KPT Property Owners and Commercial KPT Property Owners have three available options for remediation benefits:  (1) they may elect to have their properties completely remediated pursuant to the Settlement's Remediation Protocol (Exhibit F to the Settlement Agreement); (2) they may self-remediate their Affected Property and be compensated for those costs under the Settlement; or (3) they may receive a discounted cash-out payment if they choose not to remediate their property.  Mixed Property Owners[68] may only elect either the self-remediation option or the cash-out payment.

### i.        *Option 1:  Program Contractor Remediation Option*

The purpose of the Program Contractor Remediation Option under the Knauf Settlement is to make Residential and Commercial KPT Property Owners whole within a three-month period by completely remediating their Affected Property damaged by KPT Chinese Drywall. The remediation work performed pursuant to Option 1 of the settlement will remove on a cost-effective basis all standard drywall, problem drywall-related odors, and contamination caused by

---

[68]  Mixed Property Owners (Amended Knauf Settlement, Sections 1.36 & 1.37) own Affected Properties in which the KPT Drywall Percentage is less than or equal to 90%.  All Owners must submit proof of KPT Chinese Drywall in their property, which will be inspected to confirm the presence and determine the percentage of KPT Chinese Drywall in the property in comparison to the total amount of reactive Chinese drywall.  That percentage will be rounded to the next highest 10% increment (the "KPT Drywall Percentage").  If the KPT Chinese Drywall Percentage exceeds 90%, the Class Member is entitled to full benefits.  If the property is a "Mixed Property," *i.e.*, the KPT Chinese Drywall Percentage is less than or equal to 90%, the benefits will be discounted so the Class Member receives the benefit amount multiplied by the KPT Drywall Percentage.  If the property has no KPT Chinese Drywall, the claim will be rejected.

the drywall, including corrosion, tarnishing and pitting, in order to leave the KPT Property with the same construction quality and finishes, including remediating any damage to the quality and finishes that was caused by the drywall, as existed prior to the start of the remediation work.[69]

Residential KPT Property Owners will also receive from the Remediation Fund a Lump Sum Payment of either $8.50 or $10 per square foot depending on the size of the Affected Property.  The purpose of the Lump Sum Payment is to compensate the Residential KPT Property Owner for Other Covered Expenses, which include reimbursement for all alternative living expenses, personal property damage, maintenance costs, including utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses, incurred by the Residential KPT Property Owner during the remediation process.  Commercial Owners are not entitled to a Lump Sum Payment.

Finally, in the event of a delay in the substantial completion of the remediation work within three months, Residential KPT Property Owners will be entitled to a Delay Period Payment from the Remediation Fund, as specified in the Amended Knauf Settlement at Section 4.3.1.2.

### ii.  *Option 2:  Self-Remediation Option*

Residential Owners and Commercial Owners may elect to self-remediate their Affected Properties, in which case the Remediation Fund will make a cash payment to the Owner's chosen contractor in order to have the Affected Property remediated.  Residential Owners will still receive the Lump Sum Payment under this scenario.

In the case of Mixed Property Owners, the cash payment to the chosen contractor will be

---

[69]  *See* Remediation Protocol, Exhibit F to the Knauf Settlement.

discounted by multiplying the payment by the KPT Drywall Percentage.  For Mixed Property Residential Owners, the Lump Sum Payment will be similarly reduced.

### iii.     *Option 3:  Cash-Out Option*

All Owners have a third option under the settlement to select a discounted cash-out payment in the event they choose not to remediate their Affected Property.[70]  Under this Option, Class Members must comply with certain disclosure requirements.  *Id.*

### b.     *Other Loss Fund*

For the "Other Loss Fund," the Knauf Defendants will make a single deposit of $30 million into that fund.  In addition, 50% of net amounts recovered toward payment of claims related to KPT Chinese Drywall from the Global Settlement will also be deposited into this fund. The Other Loss Fund is a capped fund that will provide additional benefits to Class Members for economic losses, depending on the particular Subclass to which they belong and certain qualifying conditions.  Residential Owners may be entitled to:  (1) reimbursement of alternative living expenses arising from the need to vacate the Affected Property prior to remediation and/or (2) recovery of economic losses from foreclosures and sales to mitigate losses caused by KPT Chinese Drywall.  Commercial Owners may be entitled to:  (1) economic loss for a period not to exceed three months arising from the inability to use or rent the Affected Property during remediation, to the extent that these damages are not capable of mitigation and have not previously been reimbursed by insurance; (2) reimbursement of carrying costs (*i.e.*, interest expenses) arising from the inability to sell Affected Properties, to the extent that these damages are not capable of mitigation and have not previously been reimbursed by insurance; and/or (3) lost equity due to foreclosure or sales in mitigation caused by KPT Chinese Drywall.  Finally,

---

[70]  Amended Knauf Settlement, Section 4.3.3.

Tenants may seek an award from the Other Loss Fund to compensate for moving expenses if the Tenant is displaced by remediation work in the Affected Property and for personal property damage, such as to jewelry and Tenant-owned appliances.

The Knauf Settlement also provides a mechanism for Residential Owners and Tenants to seek from the Other Loss Fund compensation for bodily injuries allegedly caused by KPT Chinese Drywall.

The Knauf Settlement contemplates that *Daubert* hearings may be held to determine the adequacy of Plaintiffs' expert reports supporting causation for claims for Other Loss Benefits.[71] The Other Loss Fund will not pay claims for stigma, injury to reputation, loss of enjoyment of home, psychological or emotional injury, medical monitoring, injury to reputation, credit rating loss, legal and accounting expenses, or loss of investment opportunity.  Those claims will be released without compensation.

### c.    *Attorneys' Fees*

In addition to the Remediation Fund benefits and Other Loss Fund benefits provided under the Settlement, the Knauf Defendants have agreed to pay separately $160 million in attorneys' fees and costs, if approved by the Court, to compensate the PSC and valid and bona fide common benefit counsel, proposed Settlement Class Counsel, and individually-retained Plaintiffs' attorneys for:  (i) all preparation and litigation work performed on behalf of any Participating Class Member or the Class; (ii) the Knauf Settlement; (iii) the Pilot Program; (iv) the Major Builder Settlement Agreements; (v) any agreement governing homes remediated prior to the Execution Date; and (vi) any other previous settlement between the Knauf Defendants and

---

[71]  Amended Knauf Settlement, Sections 4.7.1.1.2(g), 4.7.1.2.2(k), 4.7.1.3.3(m), 4.7.1.4.2(l), 4.7.2.6.

any other party relating to claims arising from KPT Chinese Drywall, unless attorneys' fees and reasonable costs have already been separately addressed under such settlement.[72]  Thus, individual Class Members will not be responsible for payment of attorneys' fees or costs out of their recovery of benefits under the Knauf Settlement, except for recoveries on bodily injury claims, which is an additional significant benefit for Class Members.

The reimbursement of costs under the Knauf Settlement includes but is not limited to Held Costs,[73] Shared Costs,[74] and Individual Participating Class Members' Costs limited to reasonable inspection costs.  Pursuant to the Knauf Agreement, the Knauf Defendants have made a non-refundable advance payment of $6 million to a Shared Costs Fund for costs incurred by the PSC, valid and bona fide common benefit counsel, Settlement Class Counsel, and individual retained counsel.

The obligation of the Knauf Defendants for attorneys' fees and costs is capped at $160 million, but if there is a surplus of funds remaining in the Other Loss Fund after all Approved Claims and Administrative Expenses have been accounted for, then that surplus may be used to offset post-Effective Date administrative legal fees and costs of Settlement Class Counsel, subject to Court approval.  Any additional funds remaining in the Other Loss Fund after payment of post-Effective Date fees and costs may be used to offset any deficiency in legal fees and costs of the PSC and valid and bona fide common benefit counsel, Settlement Class Counsel and individual retained counsel, subject to Court approval.[75]

---

[72]  Amended Knauf Settlement, Section 14.2.

[73]  Held Costs are defined by the Court in Pretrial Order No. 9 [Rec. Doc. No. 147].

[74]  Shared Costs are defined by the Court in Pretrial Order No. 9 [Rec. Doc. No. 147].

[75]  In addition to the attorneys' fees and costs that the Knauf Defendants agreed to pay, the PSC,

(continued...)

The issue of attorneys' fees was negotiated by Settlement Class Counsel separately and after all other material terms of the Knauf Settlement had already been resolved.[76]  The parties provided in their agreement that the amount of attorneys' fees is ultimately left entirely to the Court's discretion.[77]

> **d.**  *Protection of Non-Settling Defendants' Rights to Contribution or Indemnity*

The Knauf Settlement requires the entry of a bar order to protect the Knauf Defendants from future litigation of claims related to Chinese Drywall.  The settlement also contains judgment reduction provisions requiring Participating Class Members to "satisfy any judgment to the extent necessary (under applicable state law whether it be *pro rata*, *pro tanto* and/or set-off) to extinguish any claims for contribution, indemnity (common law or contractual), and/or subrogation whether arising out of tort, contract or otherwise, by the other alleged tortfeasors."[78]  Thus, the non-Settling Defendants' rights against the Knauf Defendants are not prejudiced by the Agreement.  *See School Asbestos Litig*., 921 F.2d at 1333.

---

[75]  (...continued)
Class Counsel, common benefit attorneys, and privately retained attorneys may seek an award of attorneys' fees up to 32% of the InEx, Banner, and Global Settlements, plus reimbursement of reasonable expenses.  Under the Banner Settlement, they may also seek 10% in fees from active builders who actively litigated Chinese Drywall claims in the MDL and who recover from the Banner Settlement.

[76]  *See* Herman-Levin Decl. at ¶ 25; *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978).

[77]  *Id*.

[78]  Settlement Agreement, Sections 5.2.4, 5.2.5, 5.2.6.

4.      *The L&W Class Settlement*

In March 2012, the PSC reached a class settlement with Chinese Drywall supplier L&W, USG Corporation and the Knauf Defendants after arm's-length negotiations.[79]  The L&W Settlement is another component of the plan for global resolution of the claims arising out of KPT Chinese Drywall.  The settlement will benefit a nationwide class consisting of "[a]ll persons or entities who are Participating Class Members in the Knauf Class Settlement and who (a) as of December 9, 2011, is a named plaintiff in the Litigation (*i.e.*, not an absent class member) asserting claims arising from, or otherwise related to L&W Supplied KPT Chinese Drywall, whether or not L&W and/or USG are named parties to the lawsuit, and (b) own Affected Property.[80]

The L&W Settlement defines "L&W Supplied KPT Chinese Drywall" as:  "any and all drywall purchased from, or distributed, supplied, sold, and/or delivered by USG and/or L&W, that was manufactured by KPT and is alleged to be defective."[81]  L&W Supplied KPT Chinese Drywall does not include drywall that was manufactured, sold, marketed, distributed and/or supplied by any Knauf Defendant other than KPT.[82]  Pursuant to the L&W Settlement, all claims against L&W and USG related to L&W Supplied KPT Chinese Drywall will be resolved

---

[79]  *See* Herman-Levin Decl. at ¶ 22.

[80]  L&W Settlement, Section 1.1.4.  The L&W Class also includes Multiple Unit Property Governing Bodies to the extent that any unit(s) of a Multiple Unit Property is the subject of a filed lawsuit in the Litigation.  The L&W Class does not include any person or entity who has settled claims against L&W and/or USG under the KPT Pilot Program or any other settlement (including claims assigned by L&W Class Members that were later settled by the assignee).  The L&W Class also does not include any owner of an Affected Property that has already been the subject of a settlement for which L&W and/or USG have contributed payment either to the current or former owner of the property or to any party to that settlement.  *Id*.

[81]  L&W Settlement, Section 1.14.

[82]  *Id*.

according to the Settlement Agreement and Release that USG and L&W entered into with the Knauf Defendants on or about April 3, 2011 ("Knauf/L&W Agreement").[83]  That agreement provides that L&W and USG will make a Cash Payment equal to $7 per square foot of "Under Air Area" for each Affected Property of Participating L&W Class Members, which contains or contained L&W Supplied KPT Chinese Drywall.[84]

Under the L&W Settlement, in cases where the Affected Property is a KPT Property (having a KPT Drywall Percentage greater than 90%), USG and L&W will pay to the Knauf Defendants the Cash Payment for that Affected Property, less attorneys' fees and costs awarded by the Court.[85]  The resulting Net KPT Property Cash Payment will be applied toward Remediation Settlement Benefits for the Participating L&W Class Members.[86]  For Mixed Properties (having a KPT Drywall Percentage of 90% or less), USG and L&W will pay to the Knauf Defendants the Cash Payment for the Mixed Property multiplied by the KPT Drywall Percentage, less attorneys' fees and costs awarded by the Court.[87]  The resulting Net Mixed Property Cash Payment will be applied toward Remediation Settlement Benefits for the Participating L&W Class Members.[88]

---

[83]  The Settlement Agreement and Release between Knauf and L&W and USG is attached as Exhibit 3 to the L&W Settlement.  L&W Settlement, Section 1.13.

[84]  Knauf/L&W Agreement, paragraph 4.

[85]  L&W Settlement, Section 4.1.1.  Under the L&W Settlement, L&W shall deposit the attorneys' fees and costs into an L&W Attorneys' Fees and Costs Fund to be established pursuant to an order of the Court.

[86]  L&W Settlement, Section 4.1.1.

[87]  L&W Settlement, Section 4.1.2.  Under the L&W Settlement, L&W shall deposit the attorneys' fees and costs into an L&W Attorneys' Fees and Costs Fund to be established pursuant to an order of the Court.

[88]  L&W Settlement, Section 4.1.2.

In exchange for making these Cash Payments, L&W and USG will receive a full release from Participating L&W Class Members, and Participating L&W Class Members will receive all of the benefits that Class Members may be entitled to under the Knauf Settlement.  By definition, L&W Class Members are Participating Class Members in the Knauf Settlement.[89]  Because the two settlements are interrelated, L&W Class Members who do not timely opt out of the Knauf Settlement will not be permitted to opt out of the L&W Settlement.[90]  Additionally, L&W Class Members who opt out of the L&W Settlement will not be entitled to receive any benefits under the Knauf Settlement.[91]

The Settling Parties have agreed that USG and L&W shall pay attorneys' fees and reasonable and appropriate expenses (to be allocated among the PSC, common benefit counsel authorized by and working at the direction of the PSC, L&W Class Counsel and individual retained counsel), the calculation and/or amount of which will be determined by a separate agreement between the PSC and USG, L&W and the Knauf Defendants, which will be submitted to the Court for approval.[92]  The obligation for attorneys' fees, as approved by the Court, will be deducted from the Cash Payment for each Participating L&W Class Member.  Individual L&W Class Members will not be obligated to pay any attorneys' fees under the L&W Settlement.

Similar to the Knauf Settlement, the L&W Settlement provides for a bar order and contains judgment reduction provisions.[93]

---

[89]  L&W Settlement, Section 1.1.4.

[90]  L&W Settlement, Section 8.2.2.

[91]  *Id*.

[92]  L&W Settlement, Section 15.1.

[93]  L&W Settlement, Section 5.1.3.

### 5.      *The Global Class Settlement*

The Global Settlement was the byproduct of almost a year of arm's-length negotiations among the PSC and hundreds of builders, suppliers, installers and their insurers.[94]  The settlement is designed to compensate all persons and entities for claims arising from or related to any Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold, delivered or in any way alleged to be within the legal responsibility of the Participating Defendants and/or the Participating Insurers.[95]  The amended Global Settlement will provide $82,784,000 for Class Members.[96]  The settlement funds will be allocated in accordance with a procedure to be established by the Court upon reviewing the recommendation of the Global Settlement Allocation Committee.[97]  The Settling Defendants paid a non-refundable deposit up-front of 5% of the total sum, which will be used for payment of the mediator's costs and costs of class notice.  Further, as noted above, 50% of the net payments made pursuant to the Global Settlement, which relate to KPT Chinese Drywall, will be deposited into the Knauf Remediation Fund and 50% of those same net payments will be deposited into the Knauf Other Loss Fund.[98]

The Global Settlement is designed to compensate Class Members irrespective of the brand of Chinese Drywall that is or was installed in their Affected Properties.  Pursuant to the Global Settlement, Class Members will receive compensation regardless of whether they filed

---

[94]  *See* Herman-Levin Decl. at ¶ 27.

[95]  *See* Amended Global Settlement, Section 1.1.1.

[96]  The PSC consented to the accelerated payment of $9,430,000 from those funds to accommodate prior settlements that the Participating Defendants and Participating Insurers reached involving Chinese Drywall claims.  *See* Amended Global Settlement, Section 4.2.1.

[97]  *Id.*, Amended Global Settlement, Sections 4.1, 4.2, and 16.1.

[98]  Amended Knauf Settlement, Section 4.2.3.

their claims in this Court or in another forum.  In fact, Class Members may receive compensation even if they have failed to perfect their claims by filing a complaint against the Participating Defendants and Participating Insurers in any forum.

A Proposed Plan of Allocation of the Global Settlement Funds was posted on the Court's Chinese Drywall website on August 16, 2012.[99]  This plan was negotiated and prepared by a committee of representatives of various interests in the Global Settlement Funds.  This plan provides for a fair allocation of the Global Settlement Funds based on objective criteria such as the square footage of the Affected Property and whether the Chinese Drywall involved is KPT Chinese Drywall, Taishan Chinese Drywall, or a combination of both types of Chinese Drywall. *Id*.

Under the Global Settlement Agreement, the PSC, Class Counsel, common benefit attorneys, and privately retained attorneys are entitled to petition the Court for attorneys' fees, including common benefit fees, up to 32% of the settlement funds, with no more than 15% of the funds reserved for common benefit fees, and reimbursement of reasonable expenses, excluding the costs of notice.

The Global Settlement requires the entry of a bar order and also contains judgment reduction provisions to protect non-Settling Defendants' rights to contribution and/or indemnity.[100]

The Global Settlement represents an opportunity to resolve many of the claims against the Participating Builder, Supplier, and Installer Defendants and their Participating Insurers.  There are approximately 622 Participating Defendants and approximately 86 Participating Insurers who

---

[99]  Rec. Doc. No. 15707-1.

[100]  Amended Global Settlement, Section 5.2.6.

have agreed to this settlement.  This incredibly broad participation of Defendants will bring this

Chinese Drywall MDL Litigation one step closer to a final resolution.

### C.   __Class Notice__

#### 1.   *Individual Notice by First-Class Mail to Known Class Members*

Individual Notices of the InEx, Banner, Knauf, L&W, and Global Settlements have been

disseminated via first-class mail, postage prepaid, to all known Class Members and their

counsel.[101]  Since the Knauf and L&W Settlement Classes are comprised only of persons or

entities with filed actions as of December 9, 2011, all Knauf and L&W Class Members and their

counsel are known to the Settling Parties.  Settlement Class Counsel made arrangements for

individual notice of the Knauf and L&W Settlements to be sent to these individuals and entities

pursuant to the Court's preliminary approval orders.[102]  For the InEx, Banner and Global

Settlements, individual notice was mailed to all Plaintiffs and their counsel who filed claims

against these Defendants or the Participating Defendants and/or the Participating Insurers in

Omnibus actions or individual actions in the MDL and in Related Actions in state court.  The

InEx Notice was also mailed to all persons listed on InEx's invoices as having received drywall

from InEx during 2006 and/or 2007.[103]  The Banner Notice was mailed to all persons

---

[101]  *See* Affidavit of Mailing of the InEx Settlement Class Notice (Exhibit "5" hereto); Affidavit of Mailing of the Banner Settlement Class Notice (Exhibit "6" hereto); Affidavit of Mailing of the Knauf Settlement Class Notice (Exhibit "7" hereto); Affidavit of Dawn Barrios (Exhibit "8" hereto); Affidavit of Mailing of the L&W Settlement Class Notice (Exhibit "9" hereto); Affidavit of Mailing of the Global Settlement Class Notice (Exhibit "10" hereto).

[102]  *See* Affidavits of Mailing of the Knauf and L&W Class Notices (Exhibits "7" - "9" hereto), and Affidavit of Frederick S. Longer dated 8/29/2012 ("Longer Aff."), attached hereto as Exhibit "11."

[103]  *See* Longer Aff.

ascertainable from Banner's records, such as the notices required by Fla. Stat. § 558, *et seq.*[104]
And, the Global Settlement Notice was mailed to all Class Members identifiable through
Plaintiff Profile Forms and other available records, and their counsel.[105]

> **2.      *Notice by Publication***

Summary notices of the InEx, Banner and Global Settlements have been published in a
variety of national and local newspapers, periodicals and magazines, on the internet, in press
releases, in social media and/or on television.[106]  The InEx summary Notice was published once
in the following print media:  (a) newspapers:  *Baton Rouge Advocate* (Daily), *Birmingham
News*, *Data News Weekly*, *Houston Chronicle*, *La Subasta Houston*, *Mississippi Link*, *Mobile
Press-Register*, *Mobile Press-Register* (Sunday), *New Orleans Times-Picayune* (Daily), *Rolling
Out Alabama*, *Semana* (Houston), *USA Today* (Monday-Thursday); and (b) newspaper
supplement: *Parade* – Regional (Zones 9 and 10, which include Alabama, Louisiana,
Mississippi, and Texas).  The InEx summary Notice was also published in banner advertisements
on the Internet across a variety of sites.[107]

The Banner summary Notice was published in *Better Homes & Gardens* (Florida edition),
*Florida Monthly*, *Parade Magazine* newspaper supplement (Florida edition), *People* (Florida
edition), *USA Today*, the *USA Weekend* newspaper supplement (Florida edition), the *Bradenton
Herald*, *Citrus County Chronicle*, *Daytona Beach News-Journal*, *Fort Myers News-Press*, *Fort

---

[104]   *Id*.

[105]   *Id*.

[106]   As the Knauf and L&W Settlements include only Class Members who filed court actions
against the Settling Defendants on or before December 9, 2011, no publication notice was required in
either of those settlements because all Class Members are known to the parties.

[107]   *See* Declaration of Belinda Macauley Regarding Implementation of Notice Program in
Settlement with Interior/Exterior Building Supply, L.P. dated 8/30/2012 (Exhibit "12" hereto).

*Walton Northwest Florida Daily News*, *Fort Lauderdale Sun Sentinel*, *Gainesville Sun*, *Jackson County Floridian*, *Jacksonville Florida Times Union*, *Key West Citizen*, *Lake City Reporter*, *Lakeland Ledger*, *Melbourne Florida Today*, *Miami Herald*, *Naples Daily News*, *Ocala Star-Banner*, *Orlando Sentinel*, *Palatka Daily News*, *Palm Beach Post*, *Panama City News Herald*, *Pensacola News Journal*, *Port Charlotte Sun Newspaper*, *Sarasota Herald-Tribune*, *St. Augustine Record*, *St. Petersburg Times*, *Stuart Treasure Coast News*, *Tallahassee Democrat*, *Tampa Tribune*, *The Villages Daily Sun*, *Nuevos Ecos*, *Diario Las Americas*, *El Nuevo Herald*, *El Sentinel* (Orlando), *La Prensa* (Orlando), *Centro Tampa* (formerly *Centro Mi Diario*), *La Gaceta*, *Siete Dias* (7 Dias), *El Latino Semanal*, *El Semanario Accion* and *La Palma*.  The Banner summary Notice was also published in banner advertisements on the Internet across a variety of sites.[108]

For the Global Settlement, a website, in both English and Spanish, has been established at https://chinesedrywallclass.com, and a Call Center with a dedicated toll-free number (1-877-418-8087) was set up for Class Members to obtain information, in either English and Spanish, about the Global Settlement and their rights thereunder and for Class Members to register to receive further information and updates about the settlement and any claims procedure approved by the Court.[109]  The website also allows users to download the Global Settlement Agreement, the Court's preliminary approval order and the long-form notice that was mailed to known Class Members.[110]

---

[108]   *See* Declaration of Belinda Macauley Regarding Implementation of Notice Program in Settlement with Banner Supply Company dated 8/30/2012 (Exhibit "13" hereto).

[109]   *See* Declaration of Elizabeth Nelson, Rust Consulting, Inc. dated 8/29/2012 (Exhibit "15" hereto).

[110]   *Id*.

The Global Settlement summary Notice was published in: *Better Homes & Gardens*, *National Geographic*, *People*, *Reader's Digest*, *Sports Illustrated*, *Parade*, *USA Weekend*, and a variety of daily and Sunday local newspapers in designated market areas and ethnic publications.[111]  In addition, a television advertisement announcing the Global Settlement appeared on broadcast networks in designated market areas.[112]  Further, banner advertisements of the Global Settlement appeared on the Internet across a variety of sites and on social media sites, such as Facebook, Yahoo! and Quadrant One for a period of one month.[113]

All class notices have been posted on this Court's Chinese Drywall website at http://www.laed.uscourts.gov/drywall/Settlements.htm, and Settlement Class Counsel have requested that the notices be published on additional court and government websites as ordered by the Court.  For example, Settlement Class Counsel made requests to the clerks of the following Florida and Louisiana state courts that the Banner Class Notice and the Global Settlement Class Notice be posted on their websites:  the 4th Judicial Circuit Court of Florida (Duval County); the 6th Judicial Circuit Courts of Florida (Pinellas and Pasco Counties); the 10th Judicial Circuit Court of Florida (Polk County); the 11th Judicial Circuit Court of Florida (Miami Dade County); the 12th Judicial Circuit Courts of Florida (Sarasota and Manatee Counties); the 13th Judicial Circuit Court of Florida (Hillsborough County); the 15th Judicial Circuit Court of Florida (Palm Beach County); the 16th Judicial Circuit Court of Florida (Monroe County); the 17th Judicial Circuit Court of Florida (Broward County); the 19th Judicial Circuit Courts of Florida (Martin, St. Lucie, Indian River, and Okeechobee Counties); the 20th Judicial Circuit

---

[111]  *See* Declaration of Belinda Macauley Regarding Implementation of Notice Program in Global Settlement dated 8/31/2012 (Exhibit "14" hereto).

[112]  *See id.*

[113]  *See id.*

Courts of Florida (Collier, Charlotte, and Lee Counties); and the 34th Judicial District Court of Louisiana (St. Bernard Parish).

Finally, Settlement Class Counsel requested that the InEx Class Notice and the Global Settlement Class Notice be posted on the websites of the following governmental agencies:  the Alabama Department of Public Health; the Louisiana Department of Health and Hospitals; the Mississippi State Department of Health; Texas Department of State Health Services; and the U.S. Consumer Product Safety Commission.  Settlement Class Counsel also requested that the Banner Class Notice be posted on the websites of the U.S. Consumer Product Safety Commission and the Florida Department of Health.

### D.    **Opt-Outs and Objections**

When the InEx and Banner Settlements were finalized in the spring and summer of 2011, respectively, the Knauf Settlement was still in the process of being negotiated.  Then, at the time the Knauf Settlement was inked in December 2011, and notice was disseminated to the class, neither the L&W Settlement nor the Global Settlement had been finalized.  The Court recognized that in order to properly consider whether to remain as a Class Member in any of the settlements or opt out therefrom, the inter-related settlements must be considered together as a group. Accordingly, the Court extended all opt-out and objection deadlines to September 28, 2012:

> All of the proposed class action settlements are inter-related, and therefore (1) decisions on whether to opt out or object to any particular settlement should be made in light of the existence of all of the proposed settlements; (2) all of the settlements are properly considered together in determining whether they are fair, adequate and reasonable; and (3) there should be a consolidated fairness hearing with respect to all of the proposed class action settlements, and coordinated opt out, objection and briefing deadlines, in order to promote judicial economy.

Order dated 6/4/2012, at p. 2 [Rec. Doc. No. 14566].[114]

The Court has further ordered that any Class Member who previously opted out of a class

settlement will have the right to withdraw that opt-out and opt back into the settlement. *See id*. at

¶ 3.  A notice of the right to withdraw a previous opt-out request has been issued to all Class

Members who opted out of one or more of the settlements. *See* Order dated 8/8/2012 [Rec. Doc.

No. 15686].

By extending the opt-out deadlines and granting Class Members the option of opting back

into the settlements upon reconsideration of all of the settlements together, this Court recognized

the inter-related and inter-dependent nature of these settlements.  The opportunity to "opt-back-

into" the settlements is important to the success of these global resolution efforts, because

substantial class participation in each of the settlements is a vital component of not only the

individual settlements themselves but also the other settlements.

For example, the Settlement Agreements expressly provide that "[t]he Parties agree and

acknowledge that any opt-out may be detrimental, so ... each of the[ Parties] will have a right to

terminate the Settlement on account of the existence of any opt out." *E.g.*, Amended Knauf

Settlement, Section 8.3.1 (emphasis added); *accord* Amended InEx Settlement, Section 7.3.1;

Banner Settlement, Section 6.3.2; L&W Settlement, Section 8.3.1; Amended Global Settlement,

Section 8.3.2.  Further, the Knauf Settlement Agreement allows the Knauf Defendants to

terminate their agreement with the PSC if either Banner or InEx "exercise their rights to

terminate their respective Class Settlements or file a bankruptcy petition."[115]  Thus, if Banner

---

[114]  *See also* Orders adjourning previous opt-out/objection deadlines for the various class
settlements throughout the class settlement period [Rec. Doc. Nos. 10185, 11910, 11911, 12478, 12768,
14566].

[115]  Amended Knauf Settlement, Sections 4.8.5, 13.2.1.

decides to walk away from its Settlement with the PSC based on the number of opt-outs from that settlement, the Knauf Defendants would likely do the same. Similarly, because finalization of the Global Settlement is a condition precedent of the Knauf Settlement,[116] termination of the Global Settlement based on the existence of too many opt-outs would also jeopardize the Knauf Settlement. The Participating Defendants and the Participating Insurers in the Global Settlement may walk away from that settlement on a variety of bases, including if the Knauf Defendants terminate their settlement agreement.[117] Any walk-away from any settlement by any Settling Defendant would have a domino effect and would eliminate the remediation, cash and other benefits for Class Members seeking to participate therein.

Thus far, 153 properties have been the subject of an opt-out from one or more of the class settlements.[118] As of the date of this filing, Settlement Class Counsel have received four requests from Class Members to withdraw their opt-outs. Given the ongoing opt-out/opt-back-in/objection period through September 28, 2012, the moving parties reserve comment on opt-outs and objections until the reply brief.

### E. Fairness Hearing

When presented with a motion for final approval of a class settlement, "the Court must conduct a fairness hearing at which the parties proposing the settlement must present evidence that the settlement is 'fair, reasonable, and adequate.'" *Turner v. Murphy Oil USA, Inc.*, 472 F.

---

[116] Amended Knauf Settlement, Section 2.1.

[117] Amended Global Settlement, Section 13.2.3.

[118] Certain counsel in this Litigation represent both opt-outs from the settlements and Class Members desiring to participate in the settlements and receive remediation and/or other benefits. This situation creates a conflict of interest for those attorneys in violation of La. R. Prof'l Conduct 1.7; *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161-62 (3ʳᵈ Cir. 1984), *cert. denied*, 472 U.S. 1008 (1985); *Moreno v. Autozone, Inc.*, 2007 WL 4287517, *6 (N.D. Cal. Dec. 6, 2007).

Supp. 2d 830, 842 (E.D. La. 2007) (Fallon, J.), *citing* Fed. R. Civ. P. 23(e)(1)(C); *see also Newby v. Enron Corp.*, 394 F.3d 296, 300-01 (5th Cir. 2004); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). This Court has scheduled a consolidated joint Fairness Hearing for November 13-14, 2012, to adjudicate final approval of the class settlements before the Court.[119] Prior to the hearing, the PSC and Settlement Class Counsel will file a reply brief (on or before October 29, 2012) in support of final approval of the InEx, Banner, Knauf, L&W, and Global Settlements, pursuant to the Court's June 4, 2012 Order. Since the opt-out/objection period does not close until September 28, 2012, the moving parties will address opt-outs and respond to any and all objections to the class settlements in their reply brief in support of final approval. Any Class Member that has properly requested an opportunity to be appear at the hearing will be permitted to be heard.

It is anticipated that after the Fairness Hearing, there will be a separate procedure to determine the allocation of all settlement funds.

### F.    Claims Not Covered by the Class Settlements and Remaining in the Litigation

Class Members who do not have KPT Chinese Drywall in their properties will not receive any benefits under the Knauf Settlement. However, they may pursue claims under the InEx, Banner and/or Global Settlements, as appropriate, related to the non-KPT Chinese Drywall in their Affected Properties. In addition, these Class Members, as well as Mixed Property Owners, will retain claims against the manufacturers of the non-KPT Chinese Drywall.

The PSC is solely and vigorously pursuing claims against the Chinese manufacturer Taishan and its related entities, including its upstream entities – China National Building

---

[119] Order dated 6/4/2012 at ¶ 1 [Rec. Doc. No. 14566].

Material Company, Limited ("CNBM") and Beijing New Building Materials, Ltd. ("BNBM").[120]

In the *Germano* bellwether trials, the PSC obtained a default judgment against Taishan for

$2,758,356.20.  Taishan has moved to vacate the default judgment and also dismiss the *Germano*

complaint, as well as the *Gross* and *Wiltz* Omnibus class actions for lack of personal jurisdiction.

The PSC has briefed responses and presented oral argument in opposition to Taishan's motions[121]

and will continue to pursue Plaintiffs' claims against this Defendant in an effort to provide

compensation for non-KPT Property Owners.

The PSC is also pursuing claims against the foreign Defendant Lafarge, S.A. and others

in Omnibus XIII.  *See Benoit, et al. v. Lafarge S.A., et al.*, Case No. 11-cv-1893 (E.D. La.).[122]

Claims remain as well in Omnibus III against non-Settling Defendants.  *See Gross, et al. v. Knauf*

*Gips, KG, et al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A))

(asserting alternative liability theory against all known manufacturers for drywall that cannot be

traced to a particular manufacturer).  The PSC continues to vigorously pursue those claims on

behalf of Plaintiffs.

## III.   ARGUMENT

### A.   Pretrial Settlements of Complex Class Actions Are Favored.

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a

class action.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475

U.S. 717, 726 (1986).  In determining whether to approve the InEx, Banner, Knauf, L&W, and

Global Class Settlements, the Court should be guided by the strong judicial policy favoring

---

[120]   *See* Herman-Levin Decl. at ¶ 31.

[121]   *See* Rec. Doc. Nos. 14202, 14203, 14204, 14208, 14209, 14215, 14216.

[122]   *See* Herman-Levin Decl. at ¶ 32.

pretrial settlement of complex class action lawsuits.  *See, e.g., Smith v. Crystian*, 91 Fed. Appx.

952, 955 (5th Cir. 2004); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v.

Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Murphy Oil*, 472 F. Supp. 2d at 843; *Braud v.

Transport Service Co. of Illinois*, 2010 WL 3283398, at *3 (E.D. La. Aug. 17, 2010) (Knowles,

Mag. J.); William B. Rubenstein, Alba Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS

ACTIONS § 11.41 (4th ed.).[123]  This is, in part, because of the complexity and size of class actions:

> Particularly in class action suits, there is an overriding public
> interest in favor of settlement. . . . It is common knowledge that
> class action suits have a well deserved reputation as being most
> complex.  The requirement that counsel for the class be
> experienced attests to the complexity of the class action. . . . In
> these days of increasing congestion within the federal court system,
> settlements contribute greatly to the efficient utilization of our
> scarce judicial resources.

*Cotton*, 559 F.2d at 1331 (citation omitted); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The

public interest favoring settlement is especially apparent in the class action context where claims

are complex and . . . could lead to years of protracted litigation and sky-rocketing expenses.").

In addition:

> Complex litigation - like the instant case - can occupy a court's
> docket for years on end, depleting the resources of the parties and
> the taxpayers while rendering meaningful relief increasingly
> elusive.  Accordingly, the Federal Rules of Civil Procedure
> authorize district courts to facilitate settlements in all types of
> litigation, not just class actions. . . . Although class action
> settlements require court approval, such approval is committed to
> the sound discretion of the district court.

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citations omitted).  Courts have

recognized that certification of a class for settlement purposes is beneficial in resolving major

---

[123]  "Federal Courts look with great favor upon the voluntary resolution of litigation through
settlement....  This rule has particular force regarding class action lawsuits."  *Airline Stewards &
Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

class action disputes.  *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-77 (5th Cir. 1979).

### B.      Standards for Approval of Class Settlements.

Determining the fairness of class settlements is left to the sound discretion of the district court, and an appellate court will not overturn the district court's decision absent a clear showing of abuse of that discretion.  *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982), *citing*, *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker*, 667 F.2d at 1209; *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 218 (5th Cir. 1981); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115 (1979); *Cotton*, 559 F.2d at 1331; *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971); *see also U.S. Oil*, 967 F.2d at 493-94.  The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'"  *Miller*, 559 F.2d at 428, *quoting*, *Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975).  Moreover, because settlements of class actions are "particularly favored," they are not to be lightly rejected.  *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843.

In its role as a "fiduciary for absent class members," the district court has a responsibility to "critically examine[] the settlement's terms and implementation."  *Murphy Oil*, 472 F. Supp. 2d at 843; *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002); *Georgevich v. Strauss*, 96 F.R.D. 192, 196 (M.D. Pa. 1982) ("[T]he Court must vigorously act as guardian of the rights of absentee class members."); Alba Conte and Herbert B. Newberg, 1 NEWBERG ON CLASS ACTIONS § 1:3 (4th ed. 2002); MANUAL FOR COMPLEX LITIGATION § 21.61. In so doing, the district court must "'exercise the highest degree of vigilance....'"  *Murphy Oil*,

41

472 F. Supp. 2d at 843, *quoting Reynolds*, 288 F.3d at 279-80.[124]

"[T]he proponents of the [class] settlement bear the burden of demonstrating that the settlement is fair, reasonable, and adequate." *Murphy Oil*, 472 F. Supp. 2d at 844.  However, in the absence of contrary evidence, there is a presumption "in favor of the settlement's fairness." *Id*. at 843; *see also Camp v. The Progressive Group*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) ("court may presume that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations."), *citing* 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.); *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

Keeping this in mind, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (citation and quotation marks omitted).  In other words, in weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales.  *See id*.  The very object of a compromise "is to avoid the determination of sharply contested and dubious issues." *Young*, 447 F.2d at 433.

Thus, a court should not engage in a trial on the merits when considering the propriety of a settlement:

---

[124]   In adjudicating the motion for final approval, "[t]he Court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members, and should provide the basis for its conclusions in a reasoned opinion." *Murphy Oil*, 472 F. Supp. 2d at 842, *citing* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 (2004); *see In re Combustion, Inc.*, 968 F. Supp. 1116, 1125 (W.D. La. 1997) (stating that a court may not give boilerplate approval to settlement, but must instead analyze the facts and law supporting its conclusion in a memorandum); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir.), *cert. denied*, 546 U.S. 822 (2005).

> It cannot be overstated that neither the trial court in approving the settlement nor [the appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330, *quoting*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), *cert. denied*, 423 U.S. 864 (1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2nd Cir. 1974); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation."). The trial court is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel. *Maher*, 714 F.2d at 455 n.31 ("In other words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute."); *Tex. Educ. Agency*, 679 F.2d at 1108 (in approving a class settlement "we do not thereby reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, as we recognize that normally a settlement is a process of compromise in which, in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation, ... rather than an attempt to precisely delineate legal rights.") (internal quotations and citations omitted).

**C.     The InEx, Banner, Knauf, L&W, and Global Settlements Are in the Best Interest of Class Members.**

The United States Court of Appeals for the Fifth Circuit has articulated six factors or "focal facets" for the Court to consider in evaluating the fairness of the proposed class settlements:  (1) the existence of fraud or collusion behind the settlements; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of

discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the absent class members.  *See Reed*, 703 F.2d at 172 (adopting six-factor test cited in prior Fifth Circuit decisions including *Parker*, 667 F.2d at 1209, *Corrugated Container*, 643 F.2d at 217, and *Pettway*, 576 F.2d at 1214).  An analysis of these factors overwhelmingly favors approval of the five Chinese Drywall class settlements before the Court.

### 1. *There is No Existence of Fraud or Collusion Behind the Chinese Drywall Settlements*

The law recognizes "a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."  *Camp*, 2004 WL 2149079 at *7; *see also Murphy Oil*, 472 F. Supp. 2d at 846 ("a presumption exists that settlement negotiations were conducted properly in the absence of collusion if the terms of the proposed settlement are demonstrably fair.").  The class settlements before the Court are the product of protracted arm's-length negotiations between and among counsel for InEx, Arch, Liberty, Banner and its insurers, the Knauf Defendants, L&W, USG Corp., and hundreds of Participating Builders, Suppliers, and Installers, and their Participating Insurers.[125]

The PSC engaged in scores of in-person and telephonic negotiation sessions with the Settling Defendants that took place over many months, and in some cases for longer than a year, with oversight by the Court and the Court-appointed mediator.  After preliminary agreements were reached, the parties negotiated the specific terms of the InEx, Banner, Knauf, L&W, and Global Settlements in detail, and all parties made concessions and won positions on difficult issues.

---

[125]  *See*, *generally*, Herman-Levin Decl.

In the case of the Knauf Settlement, the parties appropriately negotiated the payment of attorneys' fees by the Knauf Defendants <u>after</u> all other material terms of the Knauf Settlement had been agreed upon, and they left the ultimate amount of those fees to the Court's discretion.  *See Murphy Oil*, 472 F. Supp. 2d at 844 (noting "[i]t is common practice today for class counsel to negotiate a specific fee award after they have successfully negotiated the class's recovery."); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177, at *4 (E.D. La. Mar. 15, 1995) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable to avoid conflicts of interest between the attorneys and the class.").  Courts have held that where "the amount of the fee is left entirely to the Court's discretion," "the possibility of collusion among counsel" is "exponentially decrease[d]."  *Murphy Oil*, 472 F. Supp. 2d at 845.  As this Court explained in an analogous situation in *Murphy Oil*, "[b]ecause the parties have not agreed to an amount or even a range of attorneys' fees, and have placed the matter entirely into the Court's hands for determination, there is no threat of the issue explicitly tainting the fairness of settlement bargaining."  *Id.*, *citing* Bruce L. Hay, *The Theory of Fee Regulation in Class Action Settlements*, 46 Am. U. L. Rev. 1429, 1432 (1997) ("[P]roper regulation of the counsel's fee is both necessary, and within limits, sufficient to mediate the tension between the goals of facilitating settlement and protecting the class against collusion.").

Given the evidence of arm's-length negotiations and no evidence on any impropriety, the Court may presume that the proposed settlements are fair and reasonable.  *See Camp*, 2004 WL 2149079 at *7.

> 2.     ***The Complexity, Expense, and Likely Duration of***
> ***the Litigation Weigh in Favor of Approval of the***
> ***Settlements***

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *See* 4 NEWBERG ON CLASS ACTIONS § 11.50 (4th ed.).  In this case, the high level of complexity, incredible expense, and likely duration of the Chinese Drywall Litigation militate in favor of consummating final approval for the InEx, Banner, Knauf, L&W, and Global Settlements.  Since June 2009, the PSC has worked around the clock to vigorously prosecute the claims of thousands of Chinese Drywall Plaintiffs in this MDL, having prepared and filed numerous class action Omnibus Complaints, each containing hundreds of named class representatives.  The PSC has represented these Plaintiffs at every status conference and hearing held by the Court since the inception of the MDL.  Service of the Omnibus Complaints upon scores of foreign Defendants pursuant to the Hague Convention requires that the complaints first be translated into Chinese (in the case of Taishan and its related entities and other Chinese companies), German (in the case of the Knauf Defendants) and/or French (in the case of Lafarge, S.A.).  The costs of translation and service on the foreign Defendants exceeds $100,000 for each complaint in the Litigation.[126]

Discovery in this Litigation involving almost 2,000 Defendants has taken the parties to all ends of the Globe for depositions and document review, and it has required the filing of FOIA requests and appeals to the CPSC, as well as motions to compel.  The PSC has also established and maintained an extensive document depository that contains the fruits of these discovery efforts.

Further, the preparation for the bellwether trials in *Germano* and *Hernandez*, which laid

---

[126]   Herman-Levin Decl. at ¶ 10.

the foundation for the settlements before the Court, required the retention of expensive experts by the PSC and necessitated around-the-clock efforts of dozens of attorneys and paralegals over several months to prepare and respond to *Daubert* motions and numerous motions *in limine*.  To date, more than 15,700 entries have been recorded on the MDL 2047 docket.

Without the InEx, Banner, Knauf, L&W, and Global Settlements, there would be no end to this Litigation in any near future.  The Defendants have vigorously fought against the claims of the Plaintiffs and sought dismissal on numerous grounds, including for lack of personal jurisdiction.  The PSC recently opposed Taishan's motion to vacate the default judgment in *Germano* as well as four separate motions of Taishan to dismiss *Germano* (Virginia), *Gross* (Louisiana), *Wiltz* (Louisiana), and *Mitchell*[127] (Florida) (as *amicus*) for lack of personal jurisdiction.  Moreover, litigation continues against North River.  The PSC is currently preparing for the bellwether trial of claims for $72 million of excess insurance that InEx assigned to the non-Louisiana Class Members as part of the InEx Settlement.  If successful, the InEx excess insurance monies will be made available for the benefit of InEx Class Members.

Meanwhile, many of the Plaintiffs have been displaced from their homes, many have lost their homes due to foreclosure or sales in mitigation, and many have suffered additional damages such as loss of personal property.  These factors weigh heavily in support of approval of the settlements.

---

[127]  *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Case No. 09-4115 (E.D. La.).

### 3. The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlements

This Litigation has been ongoing for more than three years. Following extensive discovery of all relevant parties several trials of bellwether Plaintiffs were completed, after which the Court entered numerous and detailed findings of fact and conclusions of law in both *Germano* and *Hernandez*.[128] The results of these trials played a substantial role in getting the Settling Defendants to the bargaining table, which ultimately led to the culmination of the class settlements before the Court. "Thus, settlement was achieved in the full context of the adversarial process." *Murphy Oil*, 472 F. Supp. 2d at 846. This factor supports final approval of the settlements. *Cf. Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (upholding approval of class settlement even though no formal discovery had been taken).

### 4. The Probability of Plaintiffs' Success on the Merits

In the absence of fraud or collusion behind the class settlements, "the probability of the plaintiffs' success on the merits has been held by the Fifth Circuit as the most important *Reed* factor." *Murphy Oil*, 472 F. Supp. 2d at 848, *citing Parker*, 667 F.2d at 1209; *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). In evaluating Plaintiffs' "likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287, *citing Reed*, 703 F.2d at 172.

Given the advanced stage of these proceedings, in reaching the class settlements before the Court, the parties were guided by the results of the bellwether trials held in 2010. In *Germano*, for

---

[128] *Germano*, 706 F. Supp. 2d 655 (Findings of Fact and Conclusions of Law); *Hernandez*, 2010 WL 1710434 (Findings of Fact and Conclusions of Law).

48

example, the Court ruled that the average cost to remediate a home in Virginia is $86 per square foot.[129]  And, in *Hernandez*, the Court awarded Plaintiffs in Louisiana what amounted to $81 per square foot for remediation costs, plus other alternative living expenses and personal property damages.[130]  The results of the Pilot Program, however, showed that a different and much lower cost could be obtained to remediate properties impacted by KPT Chinese Drywall, presumably due to the economies of scale realized when one contractor negotiates remediation costs for more than several thousand properties.

Although Settlement Class Counsel and the PSC believed in the merits of the case against the Settling Defendants and in their ability to prevail, they recognized that Plaintiffs would face serious obstacles to establishing both liability and damages should the cases proceed to trial.  For instance, the Knauf Defendants argued that, as to KPT, China will not enforce judgments rendered in the United States.  They have also contended that this Court cannot exercise personal jurisdiction over the German Knauf Defendants, and even if there were jurisdiction, those Knauf entities are separate from KPT and not liable for KPT Chinese Drywall.  The Knauf Defendants claim that a United States judgment to the contrary would not be enforceable in Germany in any event.[131]  This issue weighs in favor of settlement approval since "[c]ollectibility of a judgment is also a factor bearing on the reasonableness of a settlement in relation to the defendants' ability to withstand a greater one."  4 NEWBERG ON CLASS ACTIONS § 11.50 (4th ed.).

Moreover, all of the Settling Defendants contend that Plaintiffs cannot establish causation for bodily injury damages.  The governmental agencies investigating Chinese Drywall have not

---

[129]  *Germano* Findings of Fact, 706 F. Supp. 2d at 687.

[130]  *Hernandez* Findings of Fact at *3, *24.

[131]  The Knauf Defendants also contend that there is no basis for liability of KI, the only Knauf Defendant with United States assets.

found any evidence that this product causes personal injury to residents.  In addition, all Settling Defendants argue that it would be exceedingly difficult for Plaintiffs to prove that economic losses were caused by Chinese Drywall rather than by the economic recession and collapse of the real estate market in 2008, which would materially reduce the potential range of damages.

Another obstacle to Plaintiffs' recovery is the plethora of judicial decisions denying Plaintiffs' claims under insurance policies containing pollution exclusion clauses.  *See Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), *question cert'd to Va. Sup. Ct.*, 468 Fed. Appx. 195 (4th Cir. 2012); *Auto-Owners Ins. Co. v. Am. Building Materials, Inc.*, 820 F. Supp. 2d 1265 (M.D. Fla. 2011); *Evanston Ins. Co. v. Harbor Walk Development, LLC*, 814 F. Supp. 2d 635 (E.D. Va. 2011); *General Fidelity Ins. Co. v. Foster*, 808 F. Supp. 2d 1315 (S.D. Fla. 2011); *Dragas Management Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 766 (E.D. Va. 2011); *Nationwide Mutual Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502 (E.D. Va. 2011); *QBE Ins. Corp. v. Estes Heating & Air Conditioning, Inc.*, 2012 WL 413968 (S.D. Ala. Feb. 8, 2012); *Granite State Ins. Co. v. Am. Building Materials, Inc.*, 2011 WL 6025655 (M.D. Fla. Dec. 5, 2011); *SUA Ins. Co. v. S&O Investments, LLC*, 2011 WL 5121285 (S.D. Ala. Oct. 28, 2011); *Vintage Properties, Inc. v. Mid-Continent Casualty Co.*, 10-cv-80836 (S.D. Fla. Aug. 23, 2011); *CDC Builders, Inc. v. Amerisure Mutual Ins. Co.*, 2011 WL 4454937 (S.D. Fla. Aug. 16, 2011); *Builders Mut. Ins. Co. v. Parallel Design & Development, LLC*, 2010 WL 6573365 (E.D. Va. Oct. 5, 2010); *Ross v. C. Adams Construction & Design, LLC*, 70 So.3d 949 (5th Cir. Ct. App. La. 2011); *FCCI Ins. Co. v. Swedberg Enterprises, Inc. d/b/a Florida Drywall*, 51 2010 CA 005680 (6th Jud. Cir. Ct. Pasco Cty., Fla. Oct. 7, 2011); *FCCI Ins. Co. v. S3 Enterprises, Inc.*, 10-CA-2850 (20th Jud. Cir. Ct. Lee Cty., Fla. Sept. 16, 2011); *FCCI Commercial Ins. Co. v. Residential Drywall, Inc.*, 10-23495 (13th Jud. Cir. Ct. Hillsborough Cty., Fla. Sept. 7, 2011); *FCCI*

*Advantage Ins. Co. v. Gulfcoast Engineering, LLC*, 10-CA-2862 (20th Jud. Cir. Ct. Lee Cty., Fla. Aug. 8, 2011); *FCCI Commercial Ins. Co. v. Shirley Construction & Drywall, Inc.*, 102979-CA (20th Jud. Cir. Ct. Charlotte Cty., Fla. Aug. 1, 2011); *FCCI Commercial Ins. Co. v. S.D. & Associates, Inc.*, 10-29152-18 (17th Jud. Cir. Ct. Broward Cty., Fla. Jul. 20, 2011); *FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall*, 10-CA-7389 (12th Jud. Cir. Ct., Sarasota Cty., Fla. Jul. 6, 2011); *FCCI Commercial Ins. Co. v. Ocean Construction, Inc.*, 10-CA-2841 (20th Jud. Cir. Ct., Lee Cty. Fla. Jun. 6, 2011); *FCCI Commercial Ins. Co. v. Al Brothers, Inc.*, 10-CA-2840 (20th Jud. Cir. Ct., Lee Cty., Fla. Apr. 19, 2011).  In this Litigation, on December 16, 2010, the Court granted certain insurers' motions to dismiss and for judgment on the pleadings, determining that Plaintiffs are not entitled to coverage for losses due to corrosion and faulty materials under their homeowners' insurance policies that contain exclusionary clauses for those losses.[132]

Moreover, even if the cases against the Settling Defendants were to proceed to trial, the Defendants would likely appeal any judgment favorable to the Class.  Any post-appeal enforcement proceeding would likely have to be initiated in China and/or Germany, imposing a significant additional delay on the payment of any recovery to individual Settlement Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.

Finally, in the absence of the class settlements there is the potential for a bankruptcy filing by Banner, InEx and other supplier Defendants, which would significantly delay for years any recovery by the Plaintiffs and would put at risk the insurance money comprising these settlements. Any bankruptcies by Defendants would be detrimental for Class Members for a number of

---

[132]  Rec. Doc. No. 6670.

reasons.  First, the insurers contributing to the settlements waived their coverage defenses, including the pollution exclusion defense, in connection with the settlements, thus avoiding a bad faith claim that could arise if they did not tender their policy limits and their insured ended up in bankruptcy.  If the settlements are not approved and Banner or InEx, for example, files for bankruptcy, their insurers contributing to these settlements would have less incentive to refrain from litigating their coverage defenses in the bankruptcy proceeding, because it could not be argued that the bankruptcy occurred due to the non-tender of their policies.  All parties may have to compromise the insurance claim to avoid the potential loss of all insurance assets due to the pollution exclusion and other coverage defenses.

Second, the cost of bankruptcy administration may likely consume a significant amount of any non-insurance assets that these Defendants may have that are not already pledged to secure creditors.  And, it is unlikely, in any event, that those remaining non-insurance assets would make up for the loss of insurance assets that would be at risk in the bankruptcy.

Third, a distribution plan in bankruptcy may not be confirmed without the approval of all creditor classes, 11 U.S.C. § 1129(a)(8), or absent approval by all creditor classes upon a determination by the bankruptcy court that "the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted the plan."  11 U.S.C. § 1129(b)(1).  There would be an inherent conflict between the Taishan and KPT Chinese Drywall claims.  KPT Property Owners would not agree to any plan that treated Taishan property owners more favorably than KPT Property Owners.  Indeed, the Knauf Defendants will own many claims of KPT Property Owners based on assignments from those who participated in the Pilot Program.  With respect to court approval in the absence of creditor approval, "a rebuttable presumption that a plan is unfairly discriminatory will arise when

there is: (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution." *In re Dow Corning Corp.*, 244 B.R. 705, 710-11 (Bankr. E.D. Mich. 1999), *aff'd in relevant part*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd in part and remanded*, *Class Five Nev. Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648 (6th Cir.), *cert. denied*, 537 U.S. 816 (2002).  Therefore, in a bankruptcy, there would be protracted litigation and Plaintiffs would have to wait years before seeing any monies from Banner or InEx or others.[133]

These legal obstacles favor approval of the integrated class settlements.

### 5.    *The Range of Possible Recovery*

"The next factor the Court must consider is whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290.  The undisputed record shows that KPT Property Owners will receive complete Remediation Benefits under the Knauf Settlement.  Mixed Property Owners will be eligible to partake from either the Self-Remediation Option or the Cash-Out Option of the Knauf Settlement in order to receive their proportionate share of Remediation Benefits related to their KPT Percentage.  Importantly, there is no cap on the Remediation Fund.  The Knauf Defendants will continue to make deposits into that fund until all Approved Claims for Remediation Benefits are paid.

---

[133]   This further illustrates the problem that counsel have in representing both opt-outs from the class settlements and Class Members who desire to participate in the settlements and receive settlement benefits.  *Corn Derivatives Antitrust Litig.*; *Moreno v. Autozone, Inc.*

In addition, all Class Members impacted by KPT Chinese Drywall will be eligible for significant Other Loss Benefits to compensate them for alternative living expenses, personal property damage, property maintenance costs (including utility bills, insurance, property taxes and maintenance of landscaping), moving and storage expenses, losses resulting from lost use, sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries. Those claims will be determined by a Special Master, with oversight from the Court. The Knauf Settlement contemplates that in order to ensure fairness in the claims process for Other Loss Benefits, Class Members will provide causation expert reports supporting losses due to the need to vacate the premises, foreclosure, sales in mitigation, loss of use, lost rental income, and bodily injury.[134]

Further, Class Members will not be responsible for any attorneys' fees or costs under the Knauf Settlement because the Knauf Defendants have agreed to pay, subject to Court approval, $160 million in attorneys' fees and reasonable costs, including inspection costs for individual Plaintiffs.[135] This is another significant benefit for Class Members.

Moreover, monies will also be available from the InEx, Banner and Global Settlements to provide relief for injuries arising from Chinese Drywall not manufactured by the Knauf Defendants. The PSC is aggressively pursuing assigned claims for $72 in excess insurance that InEx has against North Settlement, which if successful, will also be available to Class Members. The InEx, Banner and Global Settlement funds will be allocated to Class Members based on objective criteria such as the square footage of the Affected Property and whether the Chinese Drywall involved is KPT Chinese Drywall, Taishan Chinese Drywall, or a combination of both

---

[134] Amended Knauf Settlement, Sections 4.7.1.1.2(f), 4.7.1.2.2(j), 4.7.1.3.3(l), 4.7.1.4.2(k), 4.7.2.5.

[135] Amended Knauf Settlement, Section 14.2. As stated *supra*, the PSC, Settlement Class Counsel common benefit attorneys, and privately retained attorneys may seek an award of attorneys' fees up to 32% of the InEx, Banner, and Global Settlements, plus reimbursement of reasonable expenses.

types of Chinese Drywall.  Non-KPT Owners will be eligible to receive funds from these settlements and they will still retain their claims against the non-Knauf-Defendant manufacturers.

The five class settlements before the Court provide significant remediation benefits and other relief to thousands of Class Members who, even if successful in Court, would have to wait for years before ever seeing a dime and who would have serious difficulties collecting any judgment from the foreign manufacturers.  The range of recovery of settlement benefits for Class Members certainly outweighs the risks of continued litigation and supports final approval of the class settlements.

### 6. *The Opinions of Class Counsel and Class Representatives Support Approval of the Settlements*

The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed*, 703 F.2d at 175.  Thus, if experienced counsel determine that a settlement is in the best interests of the class, "the attorney's views must be accorded great weight."  *Pettway*, 576 F.2d at 1216; 4 NEWBERG ON CLASS ACTIONS § 11.47 (4th ed.) ("the recommendation of counsel is entitled to great weight following arm's-length settlement negotiations.").

In this case, the Members of the PSC were appointed by the Court to represent the interests of the Plaintiffs in the MDL based on their high level of competency and many years of experience litigating complex class action and multidistrict cases.  These attorneys possessed adequate information concerning the strengths and weaknesses of the Litigation against the Settling Defendants after extensive document discovery, bellwether trials and briefing on relevant motions.  They support the settlements and believe they are in the best interest of the class.  Further, the InEx, Banner, Knauf, L&W, and Global Settlement class representatives also support

the class settlements, which counsels in favor of their approval.

The views of absent class members will be addressed in the reply brief, as the opt-out/objection period remains open until September 28, 2012.

* * *

Settlement Class Counsel and the PSC respectfully submit that all of the above-cited circumstances support final approval of the InEx, Banner, Knauf, L&W, and Global Settlements. These inter-related agreements will produce an uncapped Remediation Fund under the Knauf Settlement, with an initial contribution by the Knauf Defendants of $200 million and additional contributions as necessary (plus contributions from the other class settlements as well as settlements with Excluded Releasees entered into prior to the Fairness Hearing). This Remediation Fund will provide remediation benefits to Class Members with properties impacted by KPT Chinese Drywall. Additionally, an Other Loss Fund will be established with $30 million from the Knauf Defendants (plus contributions from the Global Settlement and settlements with Excluded Releasees entered into prior to the Fairness Hearing) to provide compensation to Class Members for alternative living expenses, personal property damage, property maintenance costs (including utility bills, insurance, property taxes and maintenance of landscaping), moving and storage expenses, losses resulting from lost use, sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries. Funds from the Global Settlement exceeding $80 million will be used to compensate Class Members for claims arising from any Chinese Drywall alleged to be within the legal responsibility of the Participating Defendants and/or the Participating Insurers regardless of where those claims were filed. In the aggregate these five class settlement provide significant relief to homeowners, commercial building owners and tenants displaced and otherwise aggrieved by Chinese Drywall.

As the court in *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) aptly pointed

out:

> The Court should consider the vagaries of litigation and compare
> the significance of immediate recovery by way of the compromise
> to the mere possibility of relief in the future, after protracted and
> expensive litigation.  In this respect, it has been held proper to take
> the bird in the hand instead of a prospective flock in the bush.

*Id.*, *citing and quoting Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)

(internal quotations omitted).

### D. The Requirements of Rule 23(a) and Rule 23(b)(3) Have Been Met For Certification of the InEx, Banner, Knauf, L&W, and Global Settlement Classes.

Certification of a class action is within the discretion of the district court.  *See James v.*

*City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002); *Purdie v.*

*ACE Cash Express, Inc.*, 2003 WL 22976611, *3 (N.D. Tex. Dec. 11, 2003).  In the case of a

settlement-only class, the Court must find that the criteria set forth in Rule 23(a) and at least one

of the subsections of Rule 23(b) have been met.  Further, "[i]f there is a need for subclasses, the

judge must define them and appoint counsel to represent them."  MANUAL FOR COMPLEX

LITIGATION (FOURTH) § 21.632.  The Court "need not inquire whether the case, if tried, would

present intractable management problems."  *Amchem*, 521 U.S. at 619-20.

In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of

law or fact common to the class; (3) the claims or defenses of the representative parties are typical

of the claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class.

As this Court has previously recognized,

> The first two requirements [of Rule 23(a)] focus on the
> characteristics of the class; the second two focus instead on the
> desired characteristics of the class representatives.  The rule is
> designed "to assure that courts will identify the common interests of
> class members and evaluate the named plaintiffs' and class
> counsel's ability to fairly and adequately protect class interests."

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec.

29, 2008) (quoting *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Rule 23(b)(3) requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  As

determined by *Amchem*, the issue of class management is not relevant for purposes of certifying

the Settlement Classes before the Court.

### 1.    *Numerosity*

As this Court has previously held, "[t]o demonstrate numerosity, the [Movants] must

establish that joinder is impracticable through 'some evidence or reasonable estimate of the

number of purported class members.'"  *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D.

La. 2006), *quoting Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000).  In this case,

thousands of Plaintiffs have filed suit against the Settling Defendants alleging damages sustained

as a result of the Settling Defendants' involvement in the manufacture, importation, marketing,

sale, distribution and/or installation of Chinese Drywall.  Under these circumstances, the

numerosity factor specified in Rule 23(a)(1) is satisfied.  *Sullivan v. Chase Inv. Servs., Inc.*, 79

F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members "clearly satisfies the

numerosity requirement"); *see* William B. Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 3:12 (5th

ed.) (where the class "number[s] in the hundreds, thousands, and even millions ... the

impracticability of bringing all class members before one court is obvious and the Rule 23(a)(1)

requirement is easily met.").

### 2.    *Commonality*

As this Court has previously held, "[c]ommonality 'does not require that all questions of law or fact raised in the litigation be common.  The test or standard ... is qualitative rather than quantitative.'"  Order Granting Preliminary Approval to Global Settlement at 16 [Rec. Doc. No. 14562], *quoting* Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 3:10 (4th ed.); *see also In re FEMA Trailer*, 2008 WL 5423488, at *6.  Thus, "[t]he commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members."  *Vioxx*, 239 F.R.D. at 459,  *citing James*, 254 F.3d at 570.  The Rule 23(a)(2) commonality "requirement is easily met in most cases."  *Id.*

The commonality requirement of Rule 23(a)(2) is met in this case.  The Judicial Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the commonality of facts in the various cases."[136]  Questions surrounding the effects of Chinese Drywall on Class Members and the damages caused by Chinese Drywall are issues common to all Plaintiffs, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); 1 NEWBERG ON CLASS ACTIONS § 3:18 (5th ed.) ("the [commonality] requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and is thus easily met in most

---

[136]  *Hernandez* Findings of Fact, 2010 WL 1710434 at *1.

cases.").

### 3. *Typicality*

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 1 NEWBERG ON CLASS ACTIONS § 3:13 (4th ed.), *quoting*, *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). In other words, courts must determine "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Id*., *quoting*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." 1 NEWBERG ON CLASS ACTIONS § 3:13 (4th ed.).

The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See*, *e.g.*, *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156-57 (1982). The typicality requirement has been liberally construed by the federal courts. *See*, *e.g.*, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Plaintiffs in this case is seeking compensation from the Settling Defendants for the costs of remediation of Chinese Drywall and other damages allegedly caused by Chinese Drywall. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." 1 NEWBERG ON CLASS ACTIONS § 3:13 (4th ed.). The Class Representatives for the InEx, Banner, Knauf, L&W, and Global

Settlements are Plaintiffs seeking to hold the Settling Defendants liable for damages resulting from Chinese Drywall installed in the Affected Properties in which they live and/or that they own. The Subclass Representatives in the Knauf Settlement are Residential Owners, Commercial Owners or Tenants with claims that are typical of the other Subclass Members in their respective Subclass.  The Subclass Representatives in the InEx Settlement are either Louisiana or Non-Louisiana Plaintiffs, who are typical of the other Subclass Members in their respective Subclass.

### 4.    *Adequacy of Representation*

Rule 23(a)(4) requires that the named class representatives "not possess interests which are antagonistic to the interests of the class."  1 NEWBERG ON CLASS ACTIONS § 3:21 (4th ed.). Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted).  "The purpose of this requirement is to protect the legal rights of absent class members."  1 NEWBERG ON CLASS ACTIONS § 3:21 (4th ed.).

In this case, there is nothing to suggest that this requirement has not been met.  The named representatives are members of the Class and Subclass they seek to represent, and they do not possess any interests antagonistic to the Class or Subclass with respect to their claims against the Settling Defendants.  Moreover, Settlement Class Counsel are members of the PSC, which was appointed by this Court after an application process to represent all Plaintiffs in the MDL, based on the attorneys' vast experience in class actions and multidistrict litigation.  The PSC conducted the class negotiations with the Settling Defendants at arm's length, and will fairly and adequately represent the Class.  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

### 5.   *Common Questions of Law and Fact Predominate*

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  2 NEWBERG ON CLASS ACTIONS § 4:25 (4th ed.); *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").  "To predominate, common issues must form a significant part of individual cases."  *Vioxx*, 239 F.R.D. at 460, *citing Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999).  In this case it makes eminent good sense to resolve the claims against the Settling Defendants in this forum through the class action device.  The issues of the Defendants' liability for the manufacture, importation, supply, distribution and/or installation of Chinese Drywall predominate over any individual issues involving the Plaintiffs.  The class settlements will insure that funds are available to remediate the Plaintiffs' Affected Properties and provide compensation for other losses.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication.  Factors the Court may consider include:

(A)   the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the difficulties likely to be encountered in the management of a class

action.[137]

FED. R. CIV. P. 23(b)(3)(A)-(D).  "Judicial economy factors and advantages over other methods

for handling the litigation as a practical matter underlie the predominance and superiority

requirements for class actions certified under Rule 23(b)(3)."  2 NEWBERG ON CLASS ACTIONS §

4:24 (4th ed.).

Given the various suits pending against the Settling Defendants in federal and state courts,

approval of the InEx, Banner, Knauf, L&W, and Global Settlement and resolution of all Chinese

Drywall claims against the Settling Defendants in this forum benefits all parties and satisfies the

requirements of Rule 23(b)(3).

### E.     The Class Settlement Notices Complied with this Court's Orders and Due Process.

In conjunction with preliminary approval of the class settlements, this Court ordered that

notice be disseminated to the InEx, Banner, Knauf, L&W, and Global Settlement Classes.  The

parties have complied with the Court's orders.[138]  The PSC and Settlement Class Counsel worked

diligently with the Settling Defendants to provide individual notice by first-class mail to all

known Class Members and their counsel.[139]  The PSC also requested that the class notices be

posted on the District Court's Chinese Drywall MDL website,

http://www.laed.uscourts.gov/drywall/Settlements.htm, on the websites of courts overseeing

Related Litigation of claims against Banner, on governmental websites, and at such other public

---

[137]  As stated earlier, any difficulties of management of this Class need not be considered. *Amchem*, 521 U.S. at 620.

[138]  *See* Affidavits of Mailing and Declarations Regarding Implementation of Notice Publication (Exhibits "5" - "14" hereto).

[139]  *Id*.

places as directed by the Court.  Further, the InEx, Banner, and Global Settlements were published in numerous periodicals, newspapers, magazines and/or on television, the Internet and social media.

The notices that have been disseminated and published to the various settlement classes comply with due process and support approval of the settlements and certification of the settlement classes.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).

## IV.    **CONCLUSION**

The PSC and Settlement Class Counsel respectfully request that this Court find that the InEx, Banner, Knauf, L&W, and Global Settlements are fair, reasonable and adequate and in the best interests of Class Members and that the InEx, Banner, Knauf, L&W, and Global Settlement Classes should be certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e).  The PSC and Settlement Class Counsel further request that the Court enter the Order and Judgement attached to this memorandum of law as Exhibit 1.

Respectfully submitted,

Dated:  September 4, 2012

_____
/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*InEx, Banner, Knauf, L&W, and Global Settlement*
*Class Counsel*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*InEx, Banner, Knauf, L&W and Global Settlement*
*Class Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com
*Counsel for the Knauf Tenant Subclass*

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com
*Class Counsel for the Banner Class*
*Counsel for the Knauf Residential Owner*
*Subclass*

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com
*Counsel for the Knauf Commercial Owner
Subclass*
*Counsel for the InEx Louisiana Subclass*

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com
*Counsel for the InEx Non-Louisiana Subclass*

Christopher Seeger
SEEGER WEISS, LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Law in Support of the Motion of the Plaintiffs' Steering Committee and Settlement Class Counsel for an Order:  (1) Certifying the Inex, Banner, Knauf, L&W, and Global Settlement Classes; and (2) Granting Final Approval to the InEx, Banner, Knauf, L&W, and Global Settlements has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 4th day of September, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*
*Co-counsel for Plaintiffs*