# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

### DECLARATION OF RUSS M. HERMAN AND ARNOLD LEVIN

Russ M. Herman and Arnold Levin declare, pursuant to 28 U.S.C. §1746, based upon their personal knowledge, information and belief, the following:

1. We submit this Declaration in support of the Motion of the Plaintiffs' Steering Committee ("PSC") and Settlement Class Counsel for an Order: (1) Certifying the InEx, Banner, Knauf, L&W, and Global Settlement Classes; and (2) Granting Final Approval to the InEx, Banner, Knauf, L&W, and Global Settlements ("Motion for Final Approval") pursuant to FEDERAL RULES OF CIVIL PROCEDURE 23(a), 23(b)(3) and 23(e).

2. We estimate that the five class settlements that are the subject of the pending Motion for Final Approval will provide, in the aggregate, in excess of $1 billion in comprehensive remediation and cash benefits to thousands of homeowners and owners of commercial buildings damaged by drywall imported from China ("Chinese Drywall"). These settlements will also provide what is estimated to be more than $100 million in additional compensation to homeowners, commercial building owners and tenants of affected properties for other losses arising from Chinese Drywall, including alternative living expenses, personal property damage,

1

property maintenance costs (including utility bills, insurance, property taxes and maintenance of landscaping), moving and storage expenses, losses resulting from lost use, sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries.

3. The five class settlements are integrally related. For example, the Knauf Settlement provides for the establishment of a "Remediation Fund" and an "Other Loss Fund" to benefit three subclasses: (1) a Residential Owner Subclass; (2) a Commercial Owner Subclass; and (3) a Tenant Subclass. Any net recoveries from the InEx, Banner and L&W Settlements will be assigned to and/or deposited into the Remediation Fund of the Knauf Settlement (to the extent those recoveries relate to claims arising from KPT Chinese Drywall) so that those monies may be used to remediate Class Members' Affected Properties. Likewise, net monies received from the Global Settlement (to the extent they relate to KPT Chinese Drywall) will be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund of the Knauf Settlement. Further, finalization of the Global Settlement is a condition precedent of the Knauf Settlement.

4. The class settlements are also inter-dependent. Each of the Settlement Agreements expressly provide that "[t]he Parties agree and acknowledge that any opt-out may be detrimental, so ... each of the[ Parties] will have a right to terminate the Settlement on account of the existence of any opt out." *E.g.*, Amended Knauf Settlement, Section 8.3.1; *accord* Amended InEx Settlement, Section 7.3.1; Amended Banner Settlement, Section 6.3.2; L&W Settlement, Section 8.3.1; Amended Global Settlement, Section 8.3.2. Further, the Knauf Settlement Agreement allows the Knauf Defendants to terminate their agreement with the PSC if either Banner or InEx "exercise their rights to terminate their respective Class Settlements or file a bankruptcy petition." Thus, if Banner decides to walk away from its Settlement with the PSC

2

based on the number of opt-outs from that settlement, the Knauf Defendants would likely do the same. Similarly, because finalization of the Global Settlement is a condition precedent of the Knauf Settlement, termination of the Global Settlement based on the existence of too many opt-outs would also jeopardize the Knauf Settlement. The Participating Defendants and the Participating Insurers in the Global Settlement may walk away from that settlement on a variety of bases, including if the Knauf Defendants terminate their settlement agreement. Any walk-away from any settlement by any Settling Defendant would have a domino effect and would eliminate the remediation, cash and other benefits for Class Members seeking to participate therein.

5. This Court appointed Russ M. Herman as Plaintiffs' Liaison Counsel in *In re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (E.D. La.), to interface with the Court on a regular basis in the administration of the Chinese Drywall Litigation, pursuant to Pretrial Order No. 3. In addition, the Court appointed Mr. Herman as an ex-officio member of the Plaintiffs' Steering Committee ("PSC"), pursuant to Pretrial Order No. 8. Mr. Herman has extensive and vast experience in class action and multidistrict litigation.

6. The Court appointed Arnold Levin as a member of and Lead Counsel to the PSC, pursuant to Pretrial Order No. 8. Mr. Levin has extensive and vast experience in class action and multidistrict litigation.

7. The Court appointed the PSC and Plaintiffs' Liaison Counsel to act as fiduciaries to tens of thousands of plaintiffs with property damage and personal injury claims in the Chinese Drywall Litigation. Pursuant to Pretrial Order No. 8, the PSC's responsibilities in the Litigation include: preparation of and response to pleadings and motions; coordinated and consolidated

discovery, pretrial preparation, trial and settlement of cases on behalf of all Plaintiffs; management of the MDL docket; establishment and administration of a document depository; communication with individual Plaintiffs and their counsel; liaison with Defendants; and attendance at Court status conferences and hearings to "act as a spokesperson for all plaintiffs," introduce evidence and examine witnesses.

8. In furtherance of their fiduciary obligations, since June 2009, the PSC has worked around the clock to vigorously prosecute the claims of thousands of Chinese Drywall Plaintiffs in this MDL. The PSC has orchestrated and coordinated the prosecution of Chinese Drywall claims on behalf of thousands of MDL Plaintiffs, which has included: (i) translation and service of process of more than a dozen Omnibus Complaints under the Hague Convention on scores of foreign manufacturing Defendants and their related entities; (ii) pretrial discovery of hundreds of entities in the Chinese Drywall supply chain, including depositions in Frankfurt, London, and Hong Kong, as well as in cities throughout the United States, often requiring the use of multiple interpreters; (iii) establishing a document depository that has logged in more than 400,000 pages of documents received pursuant to production requests, many of which required translation into English; (iv) testing and preserving the drywall in Plaintiffs' homes; (v) preparing and serving requests upon the CPSC under the Freedom of Information Act; (vi) retaining experts in metallurgy, electrical engineering, and failure analysis; (vii) filing motions for class certification in Germano, Payton (Knauf), and Payton/Vickers; (viii) filing motions for Florida and Louisiana Homeowners classes for damages and/or declaratory relief; (ix) filing numerous motions to intervene, motions to compel, motions for default judgment, motions for summary judgment, and a motion to establish a Plaintiffs' litigation expense fund; (x) responding to motions to dismiss

for lack of personal jurisdiction; and (xi) attendance at every MDL 2047 status conference and hearing held before the Court.

9. The Omnibus Complaints include: *Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), I(C)) (involving claims against the Knauf Defendants); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)) (involving claims against non-Knauf manufacturers such as Taishan and BNBM); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A)) (asserting alternative liability theory against all known manufacturers for drywall that cannot be traced to a particular manufacturer); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)) (involving claims against the Knauf Defendants); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al. v. AAA Ins., et al.*, Case No. 2:10-cv-03070 (E.D. La.) (Omnibus VI) (dismissed); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-cv-00080 (E.D. La) (Omnibus VII); *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.) (Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01077 (E.D. La.) (Omnibus IX); *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-1363 (E.D. La.) (Omnibus X); *Benoit, et al. v. Lafarge S.A., et al.*, Case No. 11-cv-1893 (E.D. La.) (Omnibus XI); *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-2349 (E.D. La.) (Omnibus XII); *Almeroth v. Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No.

12-cv-0498 (E.D. La.) (Omnibus XIII); and *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-3023 (E.D. La.) (Omnibus XIV).

10. Service of the Omnibus Complaints upon scores of foreign Defendants pursuant to the Hague Convention required that the complaints first be translated into Chinese (in the case of Taishan and its related entities and other Chinese companies), German (in the case of the Knauf Defendants) and/or French (in the case of Lafarge, S.A.). The costs of translation and service on the foreign Defendants has exceeded $100,000 for each complaint in the Litigation.

11. In addition to the PSC's pretrial efforts to prepare Plaintiffs' cases for trial, in the spring of 2010, the PSC tried eight bellwether cases involving Virginia and Louisiana property owners. *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case). Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were readied for trial, but they settled on the eve of trial on June 18, 2010.

12. The *Germano* bellwether trials resulted in a default judgment in favor of the Plaintiffs and against Taishan for $2,758,356.20. The Court entered numerous and detailed findings of fact and conclusions of law, which adopted for the most part the recommendations of the Consumer Product Safety Commission ("CPSC") and the Department of Housing and Urban Development ("HUD"). This Court held that in order to properly remediate properties containing Chinese Drywall, all possible problem drywall must be removed from the property, along with smoke alarms and carbon monoxide alarms, all electrical wiring and distribution components

(including receptacles, switches, and circuit breakers), and fusible-type fire sprinkler heads. The Court ruled that the average cost to remediate a home in Virginia is $86 per square foot. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig. (Germano)*, 706 F. Supp. 2d 655, 687 (E.D. La. 2010) (Findings of Fact and Conclusions of Law).

13. In *Hernandez*, the Court made similar findings and awarded Plaintiffs in Louisiana what amounted to $81 per square foot for remediation costs, plus other alternative living expenses and personal property damages. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig. (Hernandez)*, 2010 WL 1710434, *3-*24 (E.D. La. Apr. 27, 2010).

14. The preparation for the bellwether trials in *Germano* and *Hernandez*, which helped to lay the foundation for the settlements before the Court, required the retention of expensive experts by the PSC and necessitated around-the-clock efforts of dozens of attorneys and paralegals over several months to prepare and respond to *Daubert* motions and numerous motions *in limine*. To date, more than 15,700 entries have been recorded on the MDL 2047 docket.

15. As the litigation matured and following the bellwether trials, the Knauf Defendants indicated that resolution through a settlement process was appropriate. After extensive arm's-length negotiations and adversarial discussions, on October 14, 2010, we presented to the Court the Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall. This "Pilot Program" was intended to demonstrate the potential for the use of a capable contractor to oversee the repair and remediation of homes afflicted with KPT Chinese Drywall.

16. Shortly after the implementation of the Pilot Program, the major suppliers in the Knauf/KPT distribution chain began to express an interest in settlement discussions. For

example, in the beginning of 2011, the PSC focused its attention on the Interior/Exterior Supply Company ("InEx") as a target for additional trial efforts. In February 2011, counsel for InEx approached Mr. Herman and Mr. Levin to initiate settlement discussions. Between February 2011 and April 26, 2011 (the date the PSC filed the motion for preliminary approval of the InEx Settlement), counsel for InEx and its primary insurers engaged in numerous face-to-face meetings and dozens of teleconferences with us in connection with the negotiations of the InEx Settlement Agreement. In addition, the parties conferred with the Court no less than six times during this period in order to keep the Court apprised of the ongoing progress of the negotiations, as well as to obtain assistance to surmount obstacles to the ultimate resolution. Numerous drafts and revisions of the InEx Settlement Agreement were exchanged between the parties.

17. Ultimately, the InEx Settlement Agreement was presented to the Court, and on May 13, 2011, the Court issued its order preliminarily approving the InEx Settlement Agreement, conditionally certifying the InEx Settlement Class, and appointing Russ Herman and Arnold Levin as Class Counsel.

18. Following preliminary approval, the parties amended the InEx Settlement Agreement to include an allocation committee and Homebuilders' Liaison Counsel Dorothy H. Wimberly as Co-Class Counsel. The Court approved the substitution of the Amended InEx Settlement on February 24, 2012 [Rec. Doc. No. 12587].

19. Counsel for the Banner Supply Company entities and their insurers, including Chartis Speciality Insurance Company, initiated settlement discussions with the PSC in December 2010. During the subsequent nine months, Banner's counsel and Mr. Herman and Mr. Levin engaged in in-depth, sometimes heated, adversarial, but always professional, discussions focused upon the

resolution of the Banner Defendants' liability. Numerous meetings between the parties took place in New York City and in New Orleans to address the appropriate structure and language of the Settlement Agreement. An untold number of drafts and revisions of the Settlement Agreement exchanged hands during the extended negotiations. At least a dozen conferences with the Court occurred over this span of the negotiation period to address the status of the negotiations, impasses, and means to overcome the impasses. Ultimately, the parties were able to reach a Settlement Agreement which was presented to the Court through a motion for preliminary approval on June 14, 2011.

20. The parties subsequently amended their agreement with Banner to include an allocation committee and the appointment of Homebuilders' Liaison Counsel Dorothy H. Wimberly as Co-Class Counsel [*see* Rec. Doc. No. 10064].

21. On August 11, 2011, the Court preliminarily approved the Amended Banner Settlement Agreement, conditionally certified the Banner Settlement Class, and appointed Russ Herman, Arnold Levin, and PSC Member Ervin Gonzalez as Class Counsel [Rec. Doc. No. 10064].

22. Beginning in December 2010, counsel for the L&W Supply Corporation initiated discussions regarding resolution of L&W's liability exposure. Between December 2010 and March 19, 2012, when the Class Action Settlement Agreement Regarding KPT Drywall Claims against USG and L&W in MDL 2047 ("L&W Settlement") was finalized, the parties engaged in numerous face-to-face meetings and conference calls to address the drafting and re-drafting of the proposed L&W Settlement Agreement. As a result of these arm's-length negotiations, on March 27, 2012, the parties presented a joint motion for preliminary approval of the L&W

Settlement Agreement to the Court. On June 11, 2012, the Court issued its Order preliminarily approval the L&W Settlement Agreement, conditionally certifying the L&W Settlement Class, and appointing Russ Herman and Arnold Levin as Class Counsel [Rec. Doc. No. 14033].

23. Months after the implementation and success of the Pilot Program, the Knauf Defendants, through counsel, initiated discussions towards the expansion of the Pilot Program with the intent towards resolving all of the Knauf Defendants' liability, including that of the Knauf/KPT distribution chain. Over the next thirteen months, Knauf's counsel and their principals met on numerous occasions in New York City and New Orleans for face-to-face negotiations of the terms of the Knauf Settlement Agreement. These discussions were supplemented by telephonic negotiations between the parties. All of the negotiations were conducted, at all times, at arm's length, with no collusion. The Court was repeatedly advised of the progress of these negotiations and was consulted on numerous occasions to obtain its guidance.

24. Ultimately, the protracted arm's-length negotiations resulted in a Settlement Agreement with the Knauf Defendants. The Knauf Settlement provides for the establishment of an uncapped Remediation Fund, with an initial contribution by the Knauf Defendants of $200 million and additional contributions as necessary (plus contributions from the other class settlements as well as settlements with Excluded Releasees entered into prior to the Fairness Hearing). This Remediation Fund will provide remediation benefits to Class Members with properties impacted by KPT Chinese Drywall. Additionally, an Other Loss Fund will be established with $30 million from the Knauf Defendants (plus contributions from the Global Settlement and settlements with Excluded Releasees entered into prior to the Fairness Hearing)

to provide compensation to Class Members for alternative living expenses, personal property damage, property maintenance costs (including utility bills, insurance, property taxes and maintenance of landscaping), moving and storage expenses, losses resulting from lost use, sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries.

25. After all material terms of the Knauf Settlement had already been resolved, the parties began to negotiate separately the issue of attorneys' fees. The parties provided in their agreement that the amount of attorneys' fees is ultimately left entirely to the Court's discretion.

26. The Knauf Settlement was presented to the Court in a motion for preliminary approval on December 20, 2011. On January 10, 2012, this Court issued its Order preliminarily approving the Knauf Settlement Agreement, conditionally certifying the Knauf Settlement Class, and appointing Russ Herman and Arnold Levin as Class Counsel [Rec. Doc. No. 12138].

27. The last component to the Knauf Settlement Agreement involved that of resolving the liability of hundreds of builders, installers, suppliers and their insurers (*i.e.*, the Global Settlement). Initial discussions with Insurance Liaison Counsel regarding a settlement structure began in July 2011. From July 2011 through May 2012, counsel for the insurers and Mr. Levin and Mr. Herman engaged in extensive arm's-length negotiations of a settlement structure. Numerous face-to-face meetings, conference calls and countless exchanges of draft agreements occurred over the relevant time period. A Court-sponsored mediation assisted in the settlement process. These discussions and the mediation resulted in a Settlement Agreement which was presented in a motion for preliminary approval to the Court on May 18, 2012. On May 31, 2012, this Court entered its Order preliminarily approval the Global Settlement Agreement, conditionally certifying the Global Settlement Class, and appointing Russ Herman and Arnold

11

Levin as Class Counsel [Rec. Doc. No. 14562].

28. Following preliminary approval of the Global Settlement, the parties amended their agreement to include additional Participating Defendants and Participating Insurers, which increased the settlement total by $2,784,000. In the revision, a few Participating Defendants and Participating Insurers were deleted from the settlement, but this did not decrease the settlement total. The final lists of Participating Defendants and Participating Insurers are attached to the Amended Global Settlement Agreement as Exhibits 1 & 2, respectively. The Court approved the substitution of the Amended Global Settlement Agreement on August 22, 2012 [Rec. Doc. No. 15734].

29. Apart from the five class settlements before the Court for final approval, the PSC is actively pursuing at great expense claims on behalf of the InEx Subclasses against InEx's Excess Insurance Carrier, The North River Insurance Company ("North River"), for $72 million in excess insurance and for damages for bad faith and extra-contractual conduct. In furtherance of these claims, a bifurcated bellwether trial against North River to determine the liability of North River's insured, InEx, and whether InEx was a bad-faith or good-faith seller under Louisiana redhibition law has been scheduled to begin November 26, 2012, with a damages phase to follow.

30. Under the Court's direction, the parties have selected 12 Louisiana property owners (6 Plaintiffs selected by the PSC and 6 Plaintiffs selected by InEx) to undergo discovery. Already InEx has propounded requests for production of documents, and depositions have been noticed related to these Plaintiffs. From this trial pool, it is anticipated that only a subset of the selected Plaintiffs will actually present their claims against InEx at the November 26, 2012 trial.

InEx has also been the subject of written discovery, including requests for admission designed to narrow the scope of contested issues at trial. Although the trial will be narrowly focused on Plaintiffs' redhibition claims under Louisiana law and InEx's liability as a good faith/bad faith seller, it will encompass a wide range of related matters involving the physical characteristics of Chinese Drywall, its corrosive effects, and the reasonable marketing practices of sellers of foreign products, among other things. Any and all proceeds from the trial of claims against North River will constitute additional funds for the benefit of InEx Class Members. If successful, these excess insurance proceeds from North River will be made available for InEx Class Members, many of whom are also Knauf Class Members.

31. In addition, the PSC is solely and vigorously pursuing claims against the Chinese Drywall manufacturer Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., and Taian Plasterboard Company (collectively "Taishan") and Taishan's related entities, including the upstream entities – China National Building Material Company, Limited ("CNBM") and Beijing New Building Materials, Ltd. ("BNBM"). In the *Germano* bellwether trials, the PSC obtained a default judgment against Taishan for $2,758,356.20. Taishan moved to vacate the default judgment and also dismiss the *Germano* complaint, as well as the *Gross* and *Wiltz* Omnibus class actions for lack of personal jurisdiction. The PSC has briefed responses and presented oral argument in opposition to Taishan's motions and will continue to aggressively pursue Plaintiffs' claims against this Chinese Drywall manufacturer and its related entities in an effort to provide compensation for owners of Affected Properties containing Taishan Chinese Drywall and other claimants harmed by Taishan.

32. The PSC is also pursuing claims against the foreign Defendant Lafarge, S.A. and

others in Omnibus XIII. *See Benoit, et al. v. Lafarge S.A., et al.*, Case No. 11-cv-1893 (E.D. La.).

We declare under penalty of perjury that the foregoing is true and correct.

Executed this **30** day of August, 2012

_____
RUSS M. HERMAN

_____
ARNOLD LEVIN

14