# EXHIBIT F-1

**Sample Agreement between Contractor and KPT Property Owner**

**THIS DOCUMENT HAS LEGAL CONSEQUENCES. PLEASE READ THIS DOCUMENT CAREFULLY AND CONSULT WITH YOUR ATTORNEY AS YOU DEEM NECESSARY BEFORE SIGNING**

This Agreement between Contractor and Property Owner ("Work Authorization") defines the specific work necessary to complete remediation of the Property indicated below, and authorizes the Contractor to perform this work. The terms below are subject to the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 ("Settlement Agreement" attached as Exhibit 1), which the KPT Property Owner ("Property Owner") should carefully review with counsel prior to signing.

The Property Owner and the Contractor, as agent for the Knauf Defendants (defined in Section 1.1.1 of the Settlement Agreement), agree as follows:

**Property Owner:**
Name:
Address:

**Contractor:**
Name:
Address

**Project:**
Remediation of property located at:
Street:
City:

**Estimated Move-Out Date:**
**Estimated Substantial Completion Date:**

**Under Air Square Footage of Home:**

The Property Owner and Contractor have reviewed the work necessary to accomplish the remediation of Chinese drywall, as described in the Remediation Protocol, Exhibit F to the Settlement Agreement, attached to this Work Authorization, and have agreed that this work consists of the following items, which are attached:

1. Terms and Conditions of the Work Authorization Agreement
    a. Appliance, Fixture, Equipment and Fire System Schedule
    b. Room Finish Schedule

**Page 1 of 15**

      c. Schedule of Work – Detailed room by room description of the scope of remediation work (attached as Exhibit 2)
2. Remediation Protocol (attached hereto as Exhibit 3)
3. Requirements for Move-Out/Move-In (attached as Exhibit 4)
4. Contractor Insurance Certificates (attached as Exhibit 5)
5. Contractor Certification (attached as Exhibit 6)
6. Property Owner Release of Contractor (attached as Exhibit 7)
7. American National Standard for Single Family Residential Building, Method for Calculating Square Footage (attached as Exhibit 8)

Photographic and/or videographic documentation of the existing interior of the Property, including, but not limited to, fixtures and finishes will be included as a reference. In addition, if this box is checked [__], the following original construction drawings and specifications are included and attached as Exhibit 9 for reference purposes:

[list construction drawings and specifications]

Property Owner and Contractor, as Knauf Defendants' agent, agree that these are an accurate and correct representation of the construction quality and finishes as existed prior to the start of the Repair Work.

Property Owner represents that he (she) is the owner of the property to be remediated and that he (she) is fully authorized to enter into this agreement and bind himself (herself), all dependants who live in the Property, and any other guests or residents who reside in the Property.

Effective the ___ day of ____, 201__ ("Effective Date")

_____
Property Owner                                                      Date

_____
Contractor, as Agent for Knauf Defendants                  Date

**Terms and Conditions of the Work Authorization**

I. **REPAIR WORK**

1. The repair (*i.e.*, remediation) work at the Property is described generally in the Remediation Protocol and specifically in the Schedule of Work attached to this Work Authorization (together "Repair Work"). In conducting the Repair Work and in resolving any disputes pursuant to the dispute resolution process described in Sections 4.5.1.2.1 and 4.5.1.2.2 of the Settlement Agreement, the Property Owner and Contractor agree that the objective of the Repair Work is to remove on a cost effective basis all drywall and Chinese drywall-related odors and contamination, including, but not limited to, corrosion, tarnishing, and pitting ("Contamination"), and to leave the Property with the same construction quality and finishes, including remediating any damage to such quality and finishes that was caused by the drywall, as existed prior to the start of the Repair Work.

2. For clarification, the Remediation Protocol describes the overall remediation work agreed to by the Parties to the Settlement Agreement and which must be followed as to all KPT Properties (defined in Section 1.27 of the Settlement Agreement) whose owners select either the Program Contractor Remediation Option or Self Remediation Option pursuant to Sections 4.3.1 and 4.3.2 of the Settlement Agreement. The attached Schedule of Work is created by the Contractor in consultation with the Property Owner, including through their joint inspection of the Property, and is the agreed upon remediation work that will be specifically performed by the Contractor as agent under contract to the Knauf Defendants. **By executing this Work Authorization, which incorporates and follows the Scope of Work, Property Owner agrees that this is the complete Repair Work to which Property Owner is entitled under this Work Authorization and the Settlement Agreement.**

3. All materials, systems and equipment that are removed during the course of remediation work will either be reinstalled or replaced in accordance with the Remediation Protocol and, where replaced, replaced with new materials that are of the same construction, quality and finishes as those removed.

4. All Repair Work will be performed in accordance with applicable codes and regulations as these codes and regulations exist as of the last date that all required building and construction permits have been filed. Neither the Knauf Defendants nor Contractor are responsible for the failure of the Property to comply with building codes and regulations where such failure is unrelated to the Repair Work. Except where such failures are corrected as a consequence of the Repair Work, the Property Owner will be responsible for correcting such failures and any delays in the Repair Work resulting from such corrective work. If correction of such a failure is not accomplished during the Repair Work, but is required by governmental or other authority with jurisdiction, then the Property Owner is responsible for such correction. For example,

Repair Work includes replacement of the electrical system so that any existing non-compliant electrical work will be corrected during the normal course of the Repair Work. But non-compliant roof construction is unaffected by the Repair Work and therefore would remain the responsibility of the Property Owner. If the authority with jurisdiction requires correction of non-compliant roof construction in order to secure a certificate of occupancy, such correction would, thus, be the responsibility of the Property Owner. In addition, if such corrective work will interfere with the Repair Work, the Contractor will cease the Repair Work until such time as the corrective work is completed, and the estimated Construction Duration (defined below) will be extended without penalty to the Contractor or any additional payments from the Remediation Fund (as that term is defined in the Settlement Agreement) or the Knauf Defendants.

5. In accordance with the Remediation Protocol, materials, systems and equipment that are retained, but damaged by the Repair Work, will be restored to the condition that existed prior to the start of Repair Work, and where necessary replaced with new materials, systems and/or equipment.

6. Where necessary, new work will be integrated into existing work so that, to the extent reasonably feasible, one cannot reasonably be distinguished from the other. Transitions between new and existing work will, wherever possible, occur at a transition such as a corner or other break point.

7. All electrical work will be performed by a licensed electrician and will be in accordance with requirements of the National Electrical Code (NEC) and any applicable local building codes as these codes and regulations exist as of the last date that all required building and construction permits have been filed. Electrical work will be inspected by the electrical inspector of the local Authority having jurisdiction. In addition, all other trades, including plumbing, will be performed by licensed subcontractors, to the extent required by applicable law, regulation or building code.

8. The Repair Work is set forth in the attached Schedule of Work, which, consistent with the Remediation Protocol, establishes specific components of the Property that are to be either removed and replaced, or removed and reinstalled. Building materials, building systems and fixtures not listed in the Schedule of Work will be retained in place and protected during the work.

9. Property-Owner Requested Work. The Property Owner may request additional work by the Contractor or others that is not included in the Repair Work ("Property-Owner Requested Work"). At its sole discretion, the Contractor may decline to perform Property Owner Requested Work. In addition, the Contractor may only accept such work, which shall be under a separate agreement with the Property Owner, if such work does not impede the progress of the Repair Work. Such Property-Owner Requested Work will be paid for in advance by the Property Owner to the Contractor.

## II.   SCHEDULE

1. The Construction Duration shall be measured from the actual Move-Out Date to the actual Substantial Completion date as defined below.  By executing this Work Authorization, the Property Owner acknowledges (1) the estimated Move-Out Date, and (2) the Estimated Substantial Completion date provided on the first page of this document, as may be adjusted in accordance with these terms and conditions.  These dates are merely estimates and the actual Move-Out Date and actual Substantial Completion date will likely vary.

2. The Move-Out Date is the date upon which the Contractor will commence Repair Work.  Property Owner agrees to complete move out of all personal property, to remove and properly dispose of all trash, and to leave the premises by the Move-Out Date so that the home is fully, and without impediment, available to the Contractor to begin Repair Work.  The Property Owner agrees that the move-out requirements contained in Exhibit 4 (Requirements for Move-Out/Move-In) will be completed to the reasonable satisfaction of the Contractor and that such completion is a precondition to the start of Repair Work.

3. On at least twenty business days notice, the Contractor will schedule the Move-Out Date with the Property Owner.  This date will not be scheduled until all preconditions to the start of Repair Work set forth in the Requirements for Move-Out/Move-In (Exhibit 4) have been satisfied, including but not limited to, receipt of required permits and scheduling and/or delivery of materials with long-delivery times.

4. Contractor shall have complete control of the Property at all times during the Construction Duration, and to the extent the Property Owner needs to enter the Property, he shall do so with advance notice to the Contractor and in such a manner so as not to interfere with the Repair Work.  Separate contractors of Property Owner shall not enter the Property during the Construction Period unless accompanied by Contractor's authorized representative and only after they have executed a visitor waiver in which they assume all risks, and waive all claims, in connection with entering the Property during the construction period.

5. Property Owner, at his (her) own expense, shall be responsible for ordinary exterior maintenance of the Property including maintenance of landscaping, pools, exterior finishes, roof, etc. and payment of all utility bills, property taxes and other similar expenses during the Construction Duration.  The Contractor will be responsible for maintaining the areas inside and outside of the Property affected by its work.

6. To the extent the Property Owner has property insurance on the Property, he (she) shall provide proof of such insurance to the Contractor prior to the Move-Out Date and will maintain such property insurance during the

Construction Duration. **If the Property Owner does not have property insurance or cannot obtain such insurance, Property Owner acknowledges that he (she), not the Contractor, will be liable for damage to the Property, other than that caused by the Repair Work.**

7. Drywall Removal and Cleanup. The initial phase of the Repair Work involves demolition, including the removal of all drywall, as set forth in the Remediation Protocol, drywall debris and visible dust, and elimination of all Chinese-drywall associated odors and Contamination. After completion of demolition, the Contractor will perform a careful cleaning of the Property to remove all remaining drywall debris and visible dust as provided for in the Remediation Protocol.

8. Contractor Certification. Throughout the cleanup, the Property will be "aired out" by leaving all windows and doors open. Such "air-out" period will be no less than 24 hours. Contractor will continue to clean all surfaces in the Property, including, by vacuuming using, drywall bags and/or, where appropriate or necessary, HEPA (high efficiency particulate air) filters, until a visual inspection by the Contractor verifies that all surfaces in the work area and any adjacent areas (including, but not limited to, floor, walls, ceiling, wall cavities, trusses, joists, studs, pipes, beams, ledges, and framing) are free of visible dust, debris or residue and that no detectable odor of Chinese drywall remains. Evaluation of odor is to be performed at first entry to the Property after it has been vacant and with all windows and doors closed for a period of at least 8 hours. Contractor shall certify completion of the drywall and Contamination removal and cleanup work by executing the Contractor Certification attached as Exhibit 6 and providing such Certification to the Settlement Administrator (defined in Section 1.67 of the Settlement Agreement), Property Owner and Knauf Defendants. After completion of the Contractor Certification, the Contractor will notify the Environmental Inspector that the Property is ready for inspection.

9. Environmental Certification. Following the Contractor Certification, and notice that the Property is ready for environmental inspection, the Environmental Inspector will perform an independent inspection to verify the Contractor's certification that all drywall has been removed in accordance with the Remediation Protocol, including all debris and visible dust, and that there is no detectable odor of Chinese drywall in the Property. If the Environmental Inspector concludes that the home is not free of any and all Chinese drywall-associated odors and Contamination, the Contractor will perform remediation work as required to complete the remediation as judged by the Environmental Inspector's visual inspection and odor evaluation of the Property. Once the Environmental Inspector concludes that the Property is free of any and all Chinese drywall-associated odors and Contamination and that the atmosphere in the Property is representative of the atmosphere in properties built without Chinese drywall, he (she) will execute the Environmental Certification found in Exhibit B of the Settlement Agreement

**Page 6 of 15**

and provide such Certification to the Settlement Administrator, Property Owner and the Knauf Defendants.

10. Substantial Completion shall be defined as the date that the Repair Work is sufficiently completed, as determined by the Contractor, to allow the Property Owner to occupy or utilize the Property for its intended use. Substantial Completion occurs only after all government inspections required for the Property Owner to occupy or utilize the Property are complete and any corresponding certificates (for example, a certificate of occupancy, if applicable) are issued by the authority with jurisdiction over the project. For the purposes of this definition, remaining punch list items or warranty work commonly associated with residential construction, including minor finish work, touch ups, or correction of defects or warranty items, shall not preclude substantial completion so long as such work may be safely performed without unreasonable disruption while the Property Owner occupies or utilizes the Property.

11. So as to minimize the risk of damage and/or theft, certain appliances that are not required for a Certificate of Occupancy may be delivered and installed on the day the Property Owner moves back in and assumes responsibility for the Property.

12. Punch List: If at the time of Substantial Completion there are any items that do not affect occupancy of the Property, but do require finishing or correcting, the Contractor shall prepare, with input from, and the agreement of, the Property Owner, a comprehensive Punch List of such items that are to be completed or corrected prior to final payment. Failure to include an item on the Punch List does not alter the responsibility of the Contractor to complete all Repair Work.

III. **WARRANTY**

1. The Contractor warrants to the Property Owner that materials and equipment furnished as part of the Repair Work will be of good quality and new unless this Work Authorization requires or permits otherwise, and will not include (i) any Chinese-manufactured drywall or plasterboard products, (ii) any Knauf Defendants' drywall or plasterboard products, or (iii) any products manufactured by the Knauf Defendants outside of the United States ("Restricted Materials"). The Contractor or its subcontractors shall in their sole discretion, without any influence from the Knauf Defendants, select all materials and equipment, but not any Restricted Materials, to be furnished as part of the Repair Work. The Contractor further warrants that the Repair Work will conform to the requirements of the Work Authorization, including the Remediation Protocol, and will be free from defect, except for those inherent in the quality of the materials and equipment as required or permitted by the Work Authorization. The Contractor's warranty includes damage or

Page 7 of 15

defects in the Repair Work caused by the Contractor. Damage caused by the Property Owner is not warranted by the Contractor.

2. As to items within the Property that were purchased and installed by the Contractor but that were not manufactured by the Contractor, including but not limited to, any HVAC Equipment, Appliances, other equipment or "consumer products," Contractor provides no warranty on such items, but shall transfer to Property Owner the manufacturer's warranty. However, the Contractor's warranty does extend to the installation of such items. Copies of applicable warranties will be turned over to the Property Owner at Substantial Completion. All items, appliances, or equipment reinstalled or replaced pursuant to Paragraphs I(B), I(C), I(E), I(G), and I(K) in the Remediation Protocol will be tested in place prior to, or at, the Move-In Date.

3. **Contractor is not responsible for, and accepts no liability for, any defects or deficiencies in work that was not replaced or reinstalled by Contractor.**

4. If, within one year or other time frame required by applicable law or regulation, whichever is longer (the "Warranty Period") after the date of Substantial Completion of the Repair Work, any of the Repair Work is found to be not in accordance with the requirements of the Work Authorization, the Property Owner shall promptly notify the Contractor, in writing, of the condition, and the Contractor shall correct such condition promptly. If the Property Owner fails to notify the Contractor during the Warranty Period and fails to give the Contractor an opportunity to make the correction, the Property Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If upon written notification during the Warranty Period, the Contractor fails to promptly correct the nonconforming Repair Work, then the Property Owner may request, through the Settlement Administrator, that the Knauf Defendants promptly correct the nonconforming Repair Work under the terms of the Knauf Defendants' agreement with the Contractor.

IV. **MISCELLANEOUS**

1. The Contract Sum, excluding any Property Owner Requested Work, will be paid by the Remediation Fund (defined in Section 1.62 of the Settlement Agreement). The Property Owner is not responsible for paying the Contractor any of the costs associated with its work, except to the extent the Contractor undertakes any Property-Owner Requested Work.

2. Upon Substantial Completion and the submission by the Contractor to the Property Owner a final release of lien or liens, or such other sufficient evidence, demonstrating that any actual or potential liens filed in relation to the Repair Work have been either released or bonded off such that the

Page 8 of 15

Property Owner's title is clear of all liens related to the Repair Work ("All Clear Lien Certificate") prior to moving back into the home, the Property Owner shall sign an additional release in favor of the Contractor in the form attached as Exhibit 7.

3. In accordance with Section 4.3.1.1 of the Settlement Agreement, the Contractor has determined the square footage of the home using the American National Standard for Single-Family Residential Building's methodology attached as Exhibit 8. The square footage is listed on the first page of this document.

4. If concealed or unknown physical conditions at the site differ materially from those indicated in the Work Authorization or from those conditions ordinarily found to exist or in the event of a Force Majeure (as defined in this paragraph), the Contract Sum and estimated Construction Duration (as measured from the estimated Move-Out Date to the estimated Substantial Completion date provided on the first page of this document) shall be subject to equitable adjustment. "Force Majeure" means any of the following acts or events that prevents the affected Party from performing its obligations in accordance with this Work Authorization, if such act or event is beyond the reasonable control of and not the result of the fault or negligence of the affected Party and such Party has been unable to overcome such act or event by the exercise of due diligence or taking reasonable alternative measures: (a) unusually severe storms of extended duration or impact, other than heavy storms or climatic conditions which could generally be anticipated by the Contractor or subcontractors, as well as floods, droughts, tidal waves, fires, hurricanes, earthquakes, landslides, or other catastrophes; (b) wars, acts of terrorism, civil disturbances, riots, insurrections and sabotage; (c) transportation disasters, whether by sea, rail, air or land; (d) any industry-wide labor boycotts, strikes, picketing or similar situations, (e) actions of a Governmental Authority that were not voluntarily induced or promoted by the affected Party, or brought about by the breach of its obligations under this Work Authorization, including any change in Laws. It is expressly understood and agreed that Force Majeure shall not include any of the following events: (1) economic hardship; (2) changes in market conditions; (3) late delivery of materials, except to the extent such late delivery is itself caused by an event of Force Majeure; (4) any strike, work-to-rule action, go-slow or similar labor difficulty that is limited to the Contractor's and/or subcontractor's employees; or (5) jurisdictional disputes or labor actions affecting a single or small group of contractors or suppliers.

5. In the event that a dispute arises between the Property Owner and Contractor or the Remediation Fund, this dispute will be resolved in accordance with the dispute resolution process set forth in Sections 4.5.1.2.1 and 4.5.1.2.2 of the Settlement Agreement.

6. If the Contractor encounters any materials that it believes may be hazardous, excluding Chinese drywall, materials made hazardous by Chinese drywall, and other materials routinely found in residential construction (collectively, "Excluded Items"), the Contractor will immediately stop work and notify the Settlement Administrator, Property Owner and the Knauf Defendants. Contractor shall not resume work until Property Owner removes the hazardous material. To the fullest extent permitted by law, the Property Owner shall indemnify and hold harmless the Contractor and its subcontractors, the Remediation Fund, and the Knauf Defendants from claims, damages, losses, delays, and expenses, including but not limited to attorneys' fees and costs, arising out of or resulting from the hazardous materials less Excluded Items. The Property Owner shall not be responsible for materials and substances brought to the site by the Contractor or for the drywall being remediated.

7. Before starting work, Contractor shall provide proof of the following insurance coverage:

    TBD

8. Property Owner does not waive claims against the Contractor for bodily injury or property damage caused by the Work Authorization and/or the Repair Work, except the Property Owner waives claims for such injury and/or damage that seek recovery of emotional distress (except for such emotional distress claims related to a bodily injury claim), loss of profits, loss of use, and/or diminution of property value damages. "Loss of Use" does not include loss of use during the Construction Duration.

9. By entering into this Work Authorization, Property Owner affirmatively represents that it is not aware of any code violations, concealed conditions materially affecting the Property, leaks, or Defects unrelated to the drywall. "Defects" means a condition, other than the presence of Chinese drywall and anything that may have been contaminated by Chinese drywall, that would either (a) have a significant adverse effect on the value of the Property, (b) significantly impair the health or safety of occupants or of the workers, or (c) that if not repaired, removed or replaced, shorten or adversely affect the expected normal life of the Property. Property Owner acknowledges that it has had the opportunity to review the Work Authorization with counsel of its choice and is encouraged to do so.

This Work Authorization entered into as of the Effective Date first written above.

| **PROPERTY OWNER** *(Signature)* | **CONTRACTOR as Agent for Knauf** *(Signature)* |
| --- | --- |
| *(Printed name and title)* | *(Printed name and title)* |

Page 11 of 15

**Appliance, Fixture, Equipment and Fire System Schedule**

All Appliances shall mean refrigerators, freezers, dishwashers, washers, dryers, garbage disposals, wine coolers, ice machines, microwaves, cooktops, ovens, ranges and warming drawers. Nothing in this schedule is intended to limit or modify the Remediation Protocol.

| Fixture/ Appliance | Manufacturer | Model No | Quantity |
|---|---|---|---|
| Refrigerator | | | |
| Range | | | |
| Cook Top | | | |
| Oven | | | |
| Microwave | | | |
| Range Hood | | | |
| Dishwasher | | | |
| Freezer | | | |
| Washer | | | |
| Dryer | | | |
| Garbage Disposal | | | |

In accordance with the Remediation Protocol, in the event that fixtures need replacement, the replacement will be with new equipment, fixtures and not with reconditioned ones. Nothing in this schedule is intended to limit or modify the Remediation Protocol.

| Fixture/ Appliance | Manufacturer | Model No | Quantity |
|---|---|---|---|
| Ceiling Fan | | | |
| Chandelier | | | |
| Light Fixture | | | |
| Hot Water Heater | | | |
| Cabinets | | | |
| Countertop | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Page 12 of 15

In accordance with the Remediation Protocol, the following fire and security systems will be replaced regardless of condition. Nothing in this schedule is intended to limit or modify the Remediation Protocol.

| Fixture/ Appliance | Manufacturer | Model No | Quantity |
|---|---|---|---|
| Smoke Detectors | | | |
| Security Alarms | | | |
| Intercoms | | | |
| Smoke Detectors | | | |
| Fire-Suppression Sprinkler Systems | | | |
| Carbon Monoxide Alarms | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Page 13 of 15

**Room Finish Schedule**

In accordance with the Remediation Protocol, existing finishes and trim that are removed during the remediation will be replaced with new finishes and trim of like kind and quality. The following is a schedule of finishes and trim found in the Property prior to remediation. Nothing in this schedule is intended to limit or modify the Remediation Protocol.

| Room Name | Wall Color/Finish | Ceiling Color /Finish | Floor Type/Color | Trim Color |
|---|---|---|---|---|
| Living Room | | | | |
| Dining Room | | | | |
| Kitchen | | | | |
| Hallway | | | | |
| Stairs | | | | |
| Den | | | | |
| Family Room | | | | |
| Bathroom | | | | |
| Master Bed Room | | | | |
| Master BR Closet | | | | |
| Master Bath | | | | |
| Bed Room 1 | | | | |
| Bed Room 2 | | | | |
| Bed Room 3 | | | | |
| Bathroom | | | | |
| | | | | |
| | | | | |

Add Photos for Multi Colored Walls

Page 14 of 15

**Schedule of Work**

The following Schedule of Work describes the specific materials, systems and equipment to be removed and either replaced or reinstalled during the remediation work.  The Property Owner and Contractor agree that this describes the extent of the work required to complete remediation of the residence pursuant to the Remediation Protocol.

Appliances, fixtures and equipment will be replaced with units of like kind and quality to those listed in the Appliance, Fixture and Equipment Schedule.

Replacement finishes will, to the extent reasonably achievable, match those in the Room Finish Schedule.

(Attach detailed Schedule of Work document)

Note:  The following *sample* Schedule of Work is intended only to provide an example of the level of detail involved in the Repair Work the Contractor will perform pursuant to the Work Authorization Agreement.  **IT DOES NOT DESCRIBE THE REPAIR WORK THAT THE CONTRACTOR WILL PERFORM IN YOUR PROPERTY.**  The Schedule of Work prepared for your Property will follow this sample in form, but will be tailored to the finishes and conditions in your Property.  Further, as in the sample Schedule of Work, the Repair Work in your Property will meet all of the requirements set forth in the Remediation Protocol.