UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED          *   MDL No. 2047
DRYWALL PRODUCTS LIABILITY           *
LITIGATION                           *   SECTION L
                                     *
                                     *   JUDGE ELDON E. FALLON
                                     *
                                     *   MAGISTRATE JUDGE
                                     *   JOSEPH C. WILKINSON, JR.
                                     *

* * * * * * * * * * * * * * * * * * * * * * * * * * *

THIS DOCUMENT RELATES TO:   *The Mitchell Co., Inc. v. Knauf Gips KG et al.*, Case
                            No. 09-4115


**MEMORANDUM OF DEFENDANT TAISHAN GYPSUM CO. LTD.
IN SUPPORT OF ITS MOTION PURSUANT TO 28 U.S.C. § 1292(b) TO CERTIFY THE
COURT'S ORDER & REASONS FOR INTERLOCUTORY APPEAL AND STAY
FURTHER PROCEEDINGS PENDING THE APPEAL**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................2

I.   AN INTERLOCUTORY APPEAL IS APPROPRIATE. .................................2

    A.   The Proper Legal Standard For Exercising Personal Jurisdiction Over A Foreign Defendant Is A Controlling Question Of Law. ........................3

    B.   A Substantial Ground For Difference Of Opinion Exists Regarding This Court's Choice Of Law And Interpretation Of *McIntyre*. ...................................3

        1.   Eleventh Circuit Law May Govern The Due Process Analysis. .....................4

        2.   *McIntyre* May Have Altered Fifth Circuit Law Concerning Stream Of Commerce Jurisdiction..................................................................7

            a.   Knowledge Of Sales In The Forum May Not Be Sufficient..................................................................8

            b.   The Fifth Circuit May Find An Absence Of Purposeful Activity Directed Toward The Forum State. ........................................11

            c.   National Contacts May Not Be Relevant To Showing Purposeful Availment Of A Particular State........................................12

            d.   Plaintiffs Who Cannot Show They Have Drywall Taishan Sold To Anyone From Florida May Not Have Claims Arising From Taishan's Contacts With The Forum State......................................................................13

    C.   Interlocutory Appeal Would Materially Advance This Litigation. ...........................15

II.  THESE PROCEEDINGS SHOULD BE STAYED PENDING AN APPEAL. ........................................................................................................16

CONCLUSION ..........................................................................................................17

CERTIFICATE OF SERVICE ..................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

*Adelson v. Hananel*,
    652 F.3d 75 (1st Cir. 2011) ...................................................................................10, 14

*Ahrenholz v. Bd. of Trs.*,
    219 F.3d 674 (7th Cir. 2000) .............................................................................................3

*Ainsworth v. Cargotec USA, Inc.*,
    No. 2:10-236, 2011 WL 6291812 (S.D. Miss. Dec. 15, 2011) ..............................................7

*APCC Servs., Inc. v. Sprint Commc'ns Co.*,
    297 F. Supp. 2d 90 (D.D.C. 2003) ...................................................................3, 4, 15

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
    480 U.S. 102 (1987) ...........................................................................................................8

*Bean Dredging Corp. v. Dredge Tech. Corp.*,
    744 F.2d 1081 (5th Cir. 1984) .....................................................................................12, 13

*Berry Petroleum Co. v. Adams & Peck*,
    518 F.2d 402 (2d Cir. 1975) ...........................................................................................5

*Castellanos-Contreras v. Decatur Hotels, LLC*,
    622 F.3d 393 (5th Cir. 2010) ...........................................................................................4

*Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*,
    615 F.3d 364 (5th Cir. 2010) ...........................................................................................8

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) .......................................................................................10

*Eckstein v. Balcor Film Investors*,
    8 F.3d 1121 (7th Cir. 1993) .............................................................................................4

*ESAB Grp., Inc. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997) ...........................................................................................3

*Furminator, Inc. v. Wahba*,
    No. 4:10-01941, 2011 WL 3847390 (E.D. Mo. Aug. 29, 2011)..........................................10

*Gerber v. Riordan*,
    649 F.3d 514 (6th Cir. 2011) .........................................................................................10

*Harlow v. Children's Hosp.*,
    432 F.3d 50 (1st Cir. 2005) ...........................................................................................14

*Hatfill v. Foster*,
    372 F. Supp. 2d 725 (S.D.N.Y. 2005)......................................................................................6

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
    212 F. Supp. 2d 903 (S.D. Ind. 2002) ..................................................................................3

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
    767 F. Supp. 2d 649. (E.D. La. 2011) ...................................................................................7

*In re Ford Motor Co.*,
    591 F.3d 406 (5th Cir. 2009) .........................................................................................4, 5, 7

*In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*,
    No. 10-171, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011) ...................................................4

*In re Hydroxcut Mktg. & Sales Practices Litig.*,
    810 F. Supp. 2d 1100 (S.D. Cal. 2011).................................................................................6

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987) .............................................................................................5

*In re Papst Licensing GMBH & Co. KG Litig.*,
    602 F. Supp. 2d 10 (D.D.C. 2009) .......................................................................................7

*In re Plumbing Fixtures Litig.*,
    342 F. Supp. 756 (J.P.M.D.L. 1972)......................................................................................5

*In re WellNx Mktg. & Sales Practices Litig.*,
    No. 07-1861, 2010 WL 3652457 (D. Mass. Sept. 15, 2010) ..................................................7

*Irving v. Owens-Corning Fiberglass Corp.*,
    864 F.2d 383 (5th Cir. 1989) .................................................................................................9

*Jackson v. City of Atlanta, TX*,
    73 F.3d 60 (5th Cir. 1996) ....................................................................................................2

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
    615 F.3d 579 (5th Cir. 2010) .................................................................................................9

*Johnston v. Multidata Sys. Int'l. Corp.*,
    No. 06-313, 2007 WL 3998804 (S.D. Tex. Nov. 14, 2007) ................................................16

*Keranos, LLC v. Analog Devices, Inc.*,
    2011 WL 4027427 (E.D. Tex. Spt. 12, 2011)......................................................................10

*Klinghoffer v. S.NC. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990).....................................................................................................3

*Koehler v. Bank of Bermuda, LTD.*,
    No. 18-302, 1995 WL 728467 (S.D.N.Y. Dec. 8, 1995) .......................................................15

*Lemery v. Ford Motor Co.*,
    244 F. Supp. 2d 720 (S.D. Tex. 2002) .................................................................................17

*Lexecon v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998)...................................................................................................................6

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*,
    438 F.3d 465 (5th Cir. 2006) ...............................................................................................8, 9

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*,
    438 F.3d 474 (5th Cir. 2006) ..................................................................................................9

*Northern Ins. Co. of New York. v. Constr. Navale Bordeaux*,
    No. 11-60462, 2011 WL 2682950 (S.D. Fla. Jul. 11, 2011)................................................11

*Oswalt v. Tokai-Seiki KK*,
    616 F.2d 191 (5th Cir. 1980) ................................................................................................13

*Oticon, Inc. v. Sebotek Hearing Sys., LLC*,
    No. 08-5489, 2011 WL 3702423 (D.N.J. Aug. 22, 2011) ....................................................11

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*,
    9 F.3d 415 (5th Cir. 1993) .........................................................................................9, 10, 14

*Sargent v. Genesco, Inc.*,
    492 F.2d 750 (5th Cir. 1974) ..................................................................................................5

*Sentner v. Amtrak*,
    540 F. Supp. 557 (D.N.J. 1982) ..............................................................................................5

*Singletary v. B.R.X., Inc.*,
    828 F.2d 1135 (5th Cir. 1987) ..............................................................................................10

*Smith v. Railworks Corp.*,
    No. 10-3980, 2012 WL 752048 (S.D.N.Y. Mar. 6, 2012)...................................................5, 6

*Southern Copper, Inc. v. Specialloy, Inc.*,
    245 F.3d 791 (5th Cir. 2000) ..................................................................................................9

*Swint v. Chambers Cnty. Comm'n.*,
    514 U.S. 35 (1995)...................................................................................................................2

**FEDERAL STATUTES**

28 U.S.C. § 1291..............................................................................................................................2

28 U.S.C. § 1292(b) ............................................................................................................. passim

28 U.S.C. § 1407 ...................................................................................................................4, 6

**RULES**

Rules 55(d) ...............................................................................................................................1

Defendant Taishan Gypsum Co. Ltd. ("TG") submits this memorandum in support of its motion for an order pursuant to 28 U.S.C. § 1292(b) certifying this Court's Order & Reasons filed on September 4, 2012 for immediate interlocutory appeal of this Court's determination that TG is subject to personal jurisdiction, and staying further proceedings pending resolution of the appeal.

## INTRODUCTION

On September 4, 2012 this Court issued its Order & Reasons denying TG's Renewed Motion Pursuant To Rules 55(d) And 12(b)(2) To Vacate The Entry Of Default And Dismiss The Complaint.  In its motion, TG had argued that the Court lacked personal jurisdiction to enter the default based upon the Supreme Court's decision in *J. McIntyre Mach. Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) and applicable Florida and Eleventh Circuit law.  TG asserted that *McIntyre* held that the requirement of purposeful availment of a particular State was not satisfied by a sale into the stream of commerce unaccompanied by specific efforts to sell to the forum State, which they believed as a matter of law Plaintiff had not shown.  TG further contended that under *McIntyre* the foreseeability that a product introduced into the stream of commerce might be re-sold in the forum State, or even a defendant's awareness such sales would likely occur, cannot be equated with the specific efforts to sell to the forum State that are necessary to satisfy the requirement of purposeful availment.

In the Court's Order & Reasons it disagreed with TG's position that Eleventh Circuit law should govern the analysis of Due Process, and concluded Fifth Circuit law should govern instead.  The Court also did not find that *McIntyre* required that Plaintiff's claims arise from specific efforts by TG to sell to the forum State beyond merely placing the product in the stream of commerce with knowledge or awareness it might be resold in the forum State.  The Court then concluded that *McIntyre* did not overcome prior Fifth Circuit precedents applying a more liberal

stream of commerce test for personal jurisdiction.  Under this Court's interpretation of those precedents, TTP's isolated sales in China to three Florida companies and related activities were sufficient to meet Due Process requirements for personal jurisdiction over TG.[1]

As explained below, TG respectfully submits that the Court erred in choosing to apply Fifth Circuit law to its Due Process analysis instead of the Eleventh Circuit law that governs personal jurisdiction in the transferor court.  TG also believes the Court erred in determining that the Fifth Circuit stream of commerce standards it applied were sufficient to satisfy Due Process. Because this Court's Order & Reasons denying TG's motion to vacate the default and dismiss the complaint involves a controlling question of law; because a substantial ground for difference of opinion concerning the ruling exists; and because an immediate appeal would materially advance this litigation, TG respectfully asks this Court to certify its Order & Reasons for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## ARGUMENT

## I.      AN INTERLOCUTORY APPEAL  IS APPROPRIATE.

This Court's Order & Reasons is not appealable under 28 U.S.C. § 1291 or § 1292(a). *See Jackson v. City of Atlanta, TX*, 73 F.3d 60, 62 (5th Cir. 1996) (denial of motion to dismiss does not constitute final judgment).  Nevertheless, this Court has the discretion to certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b).  *See Swint v. Chambers Cnty. Comm'n.*, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals.").

---

[1] The Court imputed the contacts of TTP to TG, and therefore considered them collectively as "Taishan's" contacts for purposes of its jurisdictional analysis.  The threshold issue of whether it was proper to impute those contacts would necessarily be a part of an appeal of the Court's determination of personal jurisdiction.

Pursuant to Section 1292(b), this Court may certify an order for appeal where: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation. 28 U.S.C. § 1292(b). Each factor is met here.

### A.   The Proper Legal Standard For Exercising Personal Jurisdiction Over A Foreign Defendant Is A Controlling Question Of Law.

The Order & Reasons involves a controlling question of law. Courts have broadly defined a controlling question of law as "an abstract legal issue" such as "the meaning of a statutory or constitutional provision, regulation, or common law doctrine" that dictates the outcome as a matter of law. *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 676-77 (7th Cir. 2000). A controlling question of law also may be "'one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources.'" *APCC Servs., Inc. v. Sprint Commc'ns Co.,* 297 F. Supp. 2d 90, 95-96 (D.D.C. 2003) (citation omitted).

Because of the potentially dramatic effect on pending litigation, numerous courts have held that issues involving personal jurisdiction constitute controlling questions of law. *See, e.g.*, *Klinghoffer v. S.NC. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (leave to appeal also granted in part because "determination was likely to have precedential value for large number of other suits") (citation omitted); *see also ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). The present cases involve just such an issue of personal jurisdiction.

### B.   A Substantial Ground For Difference Of Opinion Exists Regarding This Court's Choice Of Law And Interpretation Of *McIntyre.*

A substantial ground for difference of opinion often exists when there is a lack of precedent within the controlling jurisdiction. *APCC Servs., Inc.*, 297 F. Supp. 2d at 97. *See also In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 212 F. Supp. 903, 909-10 (S.D. Ind.

2002) (certification is appropriate when other courts have adopted conflicting positions regarding the issue of law proposed for certification).  A substantial ground for difference of opinion also can exist "when a court's challenged decision conflicts with decisions of several other courts." *APCC Servs., Inc.*, 297 F. Supp. 2d at 97-98.  Put differently, the Court must consider whether it is a "question about which reasonable jurists can . . . debate."  *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010).

## 1.     Eleventh Circuit Law May Govern The Due Process Analysis.

TG argued the Court should apply the law of the Circuit governing the transferor Court, *i.e.*, the Eleventh Circuit, to the question of whether it had minimum contacts with Florida sufficient to satisfy Due Process.  *See In re Ford Motor Co.*, 591 F.3d 406, 413 n.15 (5th Cir. 2009) (writ of mandamus directing transferor court not to follow the decisions of MDL transferee court because those decisions conflicted with Fifth Circuit precedent).  In *In re Ford*, cases that originated in the Fifth Circuit were transferred to an MDL proceeding in the Southern District of Indiana.  *Id.* at 406 n.15.  In denying a motion to dismiss on the grounds of *forum non conveniens*, the transferee court refused to follow Fifth Circuit precedent that governed the transferor court.  The Fifth Circuit severely criticized the MDL transferee court for ignoring precedent in the transferor circuit, explaining that a transfer by the MDL panel pursuant to 28 U.S.C. §1407 "accomplishes but a change of courtrooms".  *Id.* (citation omitted)  *See also Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1127 (7th Cir. 1993) ("When the law of the United States is geographically non-uniform, a transferee court should use the rule of the transferor forum in order to implement the central conclusion of *Van Dusen* and *Ferens*: that a transfer under the § 1404(a) accomplishes 'but a change of court rooms'"); *In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*, No. 10-171, 2011 WL 1232352, at *4

n.5 (S.D. Tex. Mar. 31, 2011) (when there are conflicting interpretations of federal law, "[t]he Fifth Circuit appears to apply the interpretation binding on the transferor court").

The Court disagreed with TG's position on jurisdictional choice of law, without addressing *In re Ford*.  The Court concluded that the question of personal jurisdiction was procedural and, therefore, the Circuit law governing the forum, the Fifth Circuit, would apply to the question of personal jurisdiction.  Order & Reasons at 73.

None of the cases cited by the Court in support of its conclusion squarely addressed this issue.  Rather, the Court's Order & Reasons relied on *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) where the court held that for substantive federal claims applicable to numerous cases transferred from different districts "the law of [transferor court's circuit] merits close consideration, but does not have stare decisis effect in a transferee forum situated in another circuit."[2]

TG respectfully submits that *In re Korean Airlines*, and similar cases cited in the Order & Reasons, are inappropriate because they do not consider the issue of whether a transferor court had personal jurisdiction in the first instance, a question necessarily governed by the law of the original circuit.  *See Smith v. Railworks Corp.*, No. 10-3980, 2012 WL 752048, at *5 (S.D.N.Y. Mar. 6, 2012) (courts applying transferee circuit's interpretation of federal law "deal with substantive federal law as applied to the claims presented in those cases, not with jurisdictional issues").  Put differently, cases following *In re Korean Airlines* applying the transferee circuit's

---

[2] Other courts have come to a different conclusion than *In re Korean Airlines*.  *See, e.g.*, *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 408 n.7 (2d Cir. 1975) ("Since this case was brought in a district court in the Fifth Circuit, the substantive law of that circuit is the law we must consider here."); *Sargent v. Genesco, Inc.*, 492 F.2d 750, 758 (5th Cir. 1974) (applying transferor circuit law to determine statute of limitations applicable to federal securities law claim); *Sentner v. Amtrak*, 540 F. Supp. 557, 559 n.5 (D.N.J. 1982) (court would apply Rail Passenger Act as transferor circuit would); *In re Plumbing Fixtures Litig.*, 342 F. Supp. 756, 758 (J.P.M.D.L. 1972) ("It is clear that the substantive law of the transferor forum [interpreting Section 4 of the Clayton Act] will apply after transfer.") (citation omitted).

law are distinguishable "because the question here is not a general question about substantive federal law.  Rather, the jurisdictional question here is already targeted at the foreign district and whether it could have properly exercised jurisdiction."  *Id.; see also In re Hydroxcut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1106 (S.D. Cal. 2011) ("This Court can exercise personal jurisdiction over [a defendant originally sued in the transferor court] only to the extent the transfer court could have.") (citation omitted); *Hatfill v. Foster*, 372 F. Supp. 2d 725, 729, 739 (S.D.N.Y. 2005) (applying Fourth Circuit law to determine whether there was personal jurisdiction in case transferred from Eastern District of Virginia; "transferee court must apply the law that would have been applied by transferor court").

Moreover, the reasoning of *In re Korean Airlines*, which was based on the assumption that most MDL cases would remain in the transferee court, was undermined by the Supreme Court's subsequent ruling in *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), which held that 28 U.S.C. § 1407 prohibits transferee courts from retaining cases for trial, and requires them to remand <u>all</u> cases to the transferor courts once pretrial proceedings have concluded.  Thus, the salient question in an MDL case always remains whether the transferor court where the case was originally filed and where it will ultimately be tried may exercise personal jurisdiction.  Were that not the case, TG could renew its motion to vacate and dismiss after remand to the Northern District of Florida, at which point Eleventh Circuit law would have to be applied.  Indeed, a district court in the same circuit that decided *In re Korean Airlines* subsequently held that "[i]n multidistrict litigation such as this, the transferee court must apply the law of the transferor *forum* to determine personal jurisdiction," without distinguishing between the state law concerning the long-arm statute and federal law concerning Due Process.

*In re Papst Licensing GMBH & Co. KG Litig.*,  602 F. Supp. 2d 10, 14 (D.D.C. 2009) (emphasis added)

TG respectfully submits that the Court erred and that if confronted with this question the Fifth Circuit would conclude, consistent with its ruling in *In re Ford Motor Co.*, that the law of the transferor court should be applied in determining whether TG would be subject to personal jurisdiction in that court.   As this Court explained in *In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 767 F. Supp. 2d 649, 657 n.2.  (E.D. La. 2011):  "If the cases were transferred by the MDL panel to this Court for consolidation, the Court would be obligated under the same Fifth Circuit law to look to the law of the foreign forum to determine personal jurisdiction." (citing *In re WellNx Mktg. & Sales Practices Litig.*, No. 07-1861, 2010 WL 3652457, at *1-2 (D. Mass. Sept. 15, 2010)).[3]

### 2.    *McIntyre* May Have Altered Fifth Circuit Law Concerning Stream Of Commerce Jurisdiction.

The Fifth Circuit has not addressed specific personal jurisdiction in a stream of commerce case since the issuance of *McIntyre*.  Order & Reasons at 39.  There are substantial grounds for disagreement over whether the Fifth Circuit would in light of *McIntyre* continue to follow such an expansive theory of stream of commerce jurisdiction as this Court has applied to TG.  The Fifth Circuit apparently regards the issue as unsettled since it has already granted at least one foreign defendant's petition for interlocutory appeal concerning the issue.  *See Ainsworth v. Cargotec USA, Inc.*, No. 2:10-236, 2011 WL 6291812, at *3 (S.D. Miss. Dec. 15, 2011) (denial of motion to dismiss "involved a controlling question of law:  whether the United

---

[3] In the same opinion, the Court indicated that in cases involving federal questions (other than personal jurisdiction) a transferee court should follow the law of its own circuit.  *Id.*

States Supreme Court's *McIntyre* decision alters the Fifth Circuit's adherence to the stream-of-commerce theory of personal jurisdiction outlined in Justice Brennan's *Asahi* opinion").

     **a.**   **Knowledge Of Sales In The Forum May Not Be Sufficient.**

   In its motion to dismiss, TG argued, *inter alia*, that both Justice Kennedy's opinion for the plurality and Justice Breyer's concurring opinion in *McIntyre* agreed that (1) Due Process requires that a defendant in a stream of commerce case purposefully avail itself of a particular State forum; (2) a defendant cannot be subject to personal jurisdiction merely because it could foresee or expect sales of its product in the forum State; and (3) a foreign manufacturer's marketing efforts directed generally to potential U.S. customers, rather than toward a specific State, do not constitute purposeful availment of a particular State.  131 S. Ct. 2780 (2011).  In TG's view, *McIntyre* was consistent with applicable Eleventh Circuit law that in accordance with Justice O'Connor's concurring opinion in *Asahi* Due Process requires "something more" than merely placing a product in the stream of commerce knowing it would likely end up in the forum State.

   TG also maintained that *McIntyre* differed from precedent in the Fifth Circuit that held "mere foreseeability" of sales was evidence of "the expectation" of such sales sufficient to establish purposeful availment.  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470, 470 n.5 (5th Cir. 2006).  *McIntyre* clearly also departed from Justice Brennan's concurring opinion in *Asahi* insofar as it would permit personal jurisdiction based merely on the placement of a product into the stream of commerce without a showing of additional conduct.  *See Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 116-117 (1987).  Since the Fifth Circuit has adopted Justice Brennan's analysis, *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 373 (5th Cir. 2010), *McIntyre* calls into serious doubt the Fifth Circuit's expansive interpretation of the stream of commerce doctrine.

This Court disagreed with TG's interpretation of *McIntyre* and its impact on Fifth Circuit law.  The Court concluded that Justice Breyer's concurrence did not alter jurisprudence in the Fifth Circuit that permitted a forum to exercise personal jurisdiction over a foreign defendant that placed its products in the stream of commerce knowing its products would be used in the forum State, even if the defendant had not also engaged in specific efforts directed to the forum.  Order & Reasons at 39-40 (citing *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010)).  Thus, the Court relied on Fifth Circuit cases it concluded had "found personal jurisdiction on the basis of a foreign defendant's sale of products bound for the forum".  Order & Reasons at 51, 109 (citing *Luv N' Care*,  438 F.3d at 471, *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 420-421 (5th Cir. 1993); *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383, 386 (5th Cir. 1989).

This expansive view of stream of commerce jurisdiction may no longer be good law. Since *Ruston Gas* was decided in 1993, its interpretation of the requirements of Due Process in stream of commerce cases has been called into question; indeed, in *Luv N' Care*, Judge DeMoss, the author of the *Ruston* opinion, specially concurring, questioned its constitutionality and advocated that the Fifth Circuit adopt Justice O'Connor's "stream of commerce plus" approach instead.  438 F.3d at 474.  Given the facts of this case, there is a real possibility that the Fifth Circuit would issue a decision similar to the unpublished opinion in *Southern Copper, Inc. v. Specialloy, Inc.*, 245 F.3d 791 (5th Cir. 2000), where it held that a non-resident's FOB sale outside the forum State with the resident taking possession outside the State was insufficient to show purposeful availment, and distinguished *Ruston* because of the high number and depth of additional contacts in that case beyond the FOB sale.  The Fifth Circuit might similarly distinguish *Ruston Gas* because unlike TG, the out-of-state manufacturer in *Ruston Gas* made

*211 direct shipments* to the forum State, *knew the specific user* to where its products were going to be delivered, and *sent its employees* to the forum State to assist customers.

Other Courts of Appeal outside of the Fifth Circuit have indicated that under *McIntyre* more than placing the product into the stream of commerce with knowledge or awareness of its destination is necessary to establish purposeful availment of the forum State. *Adelson v. Hananel*, 652 F.3d 75, 82 (1st Cir. 2011) (defendant must have engaged in conduct "purposefully directed at the forum") (citation omitted); *Gerber v. Riordan*, 649 F.3d 514, 523 (6th Cir. 2011) (principal inquiry is whether defendant's activities manifest an intent to submit to the power of a sovereign); (Moore, J., concurring); *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1077 (9th Cir. 2011) (*McIntyre* "is consistent with the line of cases finding specific jurisdiction when there has been purposeful direction [of the defendant's activities at the forum State].").

Other district courts addressing the effect of McIntyre have disagreed with this Court's interpretation of the stream of commerce test for personal jurisdiction. *See, e.g.*, *Keranos, LLC v. Analog Devices, Inc.*, 2011 WL 4027427, at *10 (E.D. Tex. Spt. 12, 2011) (permitting jurisdictional discovery "[i]n light of the new minimum contacts analysis announced in McIntyre" whereby "[t]he key issue" announced by the plurality was "whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct.") (citing *McIntyre*, 131 S. Ct. at 2789); *Furminator, Inc. v. Wahba*, No. 4:10-01941, 2011 WL 3847390, at *5 (E.D. Mo. Aug. 29, 2011) (both the plurality and concurrence rejected rule that a manufacturer is subject to personal jurisdiction if it  "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to

those products being sold in any of the fifty states"); *Northern Ins. Co. of New York. v. Constr. Navale Bordeaux,* No. 11-60462, 2011 WL 2682950, at *5 (S.D. Fla. Jul. 11, 2011), (Justice Breyer's opinion in *McIntyre* requires "something more" than the stream of commerce test); and *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, No. 08-5489, 2011 WL 3702423, at *9 (D.N.J. Aug. 22, 2011) ([T]here is no doubt [*McIntyre*] stands for the proposition that targeting the national market is not enough to impute jurisdiction to all the forum States.")

The conflict between this Court's application of Fifth Circuit law and authority from other courts construing *McIntyre* establishes substantial grounds for difference of opinion regarding the effect of *McIntyre* in the Fifth Circuit.

### b. The Fifth Circuit May Find An Absence Of Purposeful Activity Directed Toward The Forum State.

TTP made only isolated sales in China to three companies who informed TTP they intended to ship the drywall they purchased to Florida. Nevertheless, the Court found "Taishan demonstrated a regular and anticipated flow of its drywall to Florida, it marketed its drywall to Florida-based customers, and it benefited economically from doing so" at a level sufficient to establish minimum contacts under Fifth Circuit law. Order & Reasons at 108. The Court found further that Taishan "knew" the drywall it sold would end up in Florida and therefore had minimum contacts with the forum. Order & Reasons at 108. But Justice Breyer's concurrence indicates such knowledge would be insufficient to establish purposeful availment of the State absent additional evidence of a specific effort to sell in the State. 131 S. Ct. at 2793. The Fifth Circuit may well find evidence of such efforts on the part of TG or TTP was lacking.

The Court observed that under *McIntyre* "special state-related marketing or advertising is a factor to be considered in favor of exercising personal jurisdiction in that state." Order & Reasons at 110. The Court went on to conclude that TTP's sending of samples to Florida

customers upon their request and at their cost; its certification that its drywall complied with the internationally-used A.S.T.M. standard; its marking of drywall in accordance with customers' directions; and its assistance with shipping arrangements met the Due Process requirement of state-specific purposeful activity.  Order & Reasons at 91, 110-111.  The Court also pointed to the Sole Agency Agreement TTP entered into with Oriental Trading.  The SAA, however, was not state-specific; it permitted Oriental Trading to purchase drywall from TTP and ship it anywhere in the U.S.  There is no reported authority in the Fifth Circuit finding state-specific purposeful activity in similar circumstances, and the Fifth Circuit may conclude that Plaintiff failed to establish it.

### c. National Contacts May Not Be Relevant To Showing Purposeful Availment Of A Particular State.

TG argued also that evidence of its marketing efforts directed to the U.S. nationally was not relevant to establishing that it purposefully availed itself of the benefits and protections of a particular State.  Rather, both the plurality and concurring opinions in *McIntyre* required plaintiff to come forth with evidence of specific efforts by the foreign manufacturer to sell in the forum State.  *See McIntyre*, 131 S. Ct. at 2792.  The Court, however, relied heavily TG's alleged "nationwide contacts" in concluding that it had minimum contacts with the forum State, Florida.  Order & Reasons at 89 n.11.  The Court relied also upon *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984), a case that found a non-resident component manufacturer subject to personal jurisdiction in Louisiana merely because it introduced thousands of steel castings into the stream of commerce and made no attempt to limit the states where its products would end up being sold and used.  Order & Reasons at 112.  But *Bean Dredging* did not require any specific efforts directed toward the forum State as *McIntyre* clearly mandates.  *Bean Dredging* in turn relied upon *Oswalt v. Tokai-Seiki KK*, 616 F.2d 191, 199-200

(5th Cir. 1980), another case cited  upon by its Court, which found jurisdiction based on a defendant's having had "every reason to believe its product would be sold to a nation-wide market," again without any evidence of purposeful conduct directed specifically toward the forum State.  *Oswalt* was relied upon by the <u>dissent</u> in *McIntyre*, 131 S. Ct. at 2805. Accordingly, the Fifth Circuit cases that found purposeful availment of a forum State based largely upon nation-wide marketing have also been called into doubt by *McIntyre*.

> **d.**     **Plaintiffs Who Cannot Show They Have Drywall Taishan Sold To Anyone From Florida May Not Have Claims Arising From Taishan's Contacts With The Forum State.**

TG argued that Plaintiff had not satisfied its burden of showing by a preponderance of the evidence that its causes of action arose out of or resulted from TG's minimum contacts with Florida.  Plaintiff alleged it constructed homes in Florida with drywall manufactured by TG or TTP.  Plaintiff, however, alleges it purchased that drywall from Louisiana and Georgia entities, neither of whom purchased the drywall directly from TG or TTP.  Plaintiff did not go any further in its attempt to establish a nexus between its claims and the activities that the Court found established TG's minimum contacts with Florida.  Plaintiff did not allege, and offered no proof, that the drywall in the homes it constructed was obtained (directly or indirectly) from any Florida company to whom TG or TTP sold drywall.  Nevertheless, the Court rejected TG's arguments, concluding that it advocated too narrow an interpretation of the "arising from" or "related to" prong of the minimum contacts test for personal jurisdiction.  Order & Reasons at 114.

The Fifth Circuit has not determined whether the "arising from" or "related to" requirement for personal jurisdiction announced by the Supreme Court in *International Shoe* can be satisfied when a plaintiff who has defendant's product did not obtain it through the defendant's sales to the forum State.  *Mitchell* squarely presents this issue because Plaintiff did not offer any evidence that it obtained drywall directly or indirectly from Wood Nation, Oriental

Trading or B America, the only companies from Florida to whom TTP sold drywall.  Rather, the Court found that Plaintiff purchased drywall it used in Florida homes from Rightway in Georgia through a long chain of distribution that led back to Shanghai Yu Yan Import & Export Company, a Chinese company that purchased from TTP in China.  Order & Reasons at 97-98. Thus, if Plaintiff used TTP's drywall to build homes in Florida, it did not obtain that drywall as a result of any contact that TG or TTP had with Florida.  Under the circumstances, the Fifth Circuit may find that Plaintiff did not establish its claims arise from or relate to TG's minimum contacts with Florida.[4]

TG's proposed appeal would include as issues to be determined (1) whether in an MDL proceeding the law of the Circuit governing the transferor court should govern the question of Due Process for the purpose of determining whether the transferor Court had personal jurisdiction; (2) whether *McIntyre* overruled *Ruston* and other Fifth Circuit precedents that have held that mere foreseeability or awareness that the product might be sold in a State is sufficient to establish that a defendant purposefully availed itself of the benefits and protections of that State; (3) whether after *McIntyre* a foreign manufacturer's sale abroad to a state resident with knowledge it would likely be re-sold in the state is sufficient to establish that the manufacturer purposefully availed itself of the benefits and protections of that State; (4) whether certifying that a product meets an international standard recognized in the U.S., marking a product with English-language markings as directed by a buyer, sending samples upon request to potential buyers, and assisting three buyers from the State with shipping arrangements constitutes

---

[4] At least one Court of Appeals concluded that in a tort case it is not enough for a defendant's in-state activities to have been the but-for cause of a plaintiff's injury.  Rather, the defendant's in-state conduct must have "form[ed] an important or at least material element of proof in the plaintiff's case," *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005) (citation omitted), such that "the litigation itself is founded *directly* on those activities."  *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011) (citation omitted).  Under this standard, Plaintiff's claims clearly lack a constitutionally sufficient nexus with TG's minimum contacts with Florida.

sufficient purposeful activity directed to that State to satisfy Due Process; (5) whether marketing efforts directed to the U.S. nationally, including entering into an agreement providing a State resident with the right to re-sell the foreign defendants' products throughout the U.S. is relevant to establishing that the defendant purposefully availed itself of the benefits and protections of a particular State; and (6) whether a Plaintiff who cannot show it obtained the allegedly defective product directly or indirectly from anyone in the State to whom a defendant sold the product has claims that arise from or are related to the defendant's minimum contacts with the State.

### C.    Interlocutory Appeal Would Materially Advance This Litigation.

An interlocutory appeal will materially advance a matter where it "would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed." *APCC Servs., Inc.*, 297 F. Supp. 2d at 100; *Koehler v. Bank of Bermuda, LTD.*, No. 18-302, 1995 WL 728467, at *4 (S.D.N.Y. Dec. 8, 1995) (certification under § 1292(b) in early stages of litigation avoids risk of expending time and resources in district court only to have appeals  court later determine  personal jurisdiction was lacking).

*Mitchell* is a purported nation-wide class action of homebuilders and other drywall users that would require both the Court and the parties to expend significant resources to litigate the cases further, through merits discovery and trial.  If the question of personal jurisdiction is not certified for interlocutory review, there is the possibility that massive amounts of time and expense could be spent proceeding against TG, only to have the Fifth Circuit eventually reverse and conclude that personal jurisdiction did not exist.  Therefore, allowing the Fifth Circuit to review personal jurisdiction now would materially advance this litigation and avoid this potential waste of enormous amounts of time and money.

Other courts in this circuit have applied Section 1292(b) similarly:

15

> Based on the magnitude of this case, the complexity of the fact-intensive issues that cross international borders, the vastly expensive discovery and litigation phases that may follow, and in the interest of fairness to the parties and to avoid unnecessary delay and expense if it is later determined that the Court does not have jurisdiction, the Court believes that reconsideration of the Defendants' motions to certify for interlocutory appeal is warranted.

> This Court is now of the opinion that its Order . . . involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation.

*Johnston v. Multidata Sys. Int'l. Corp.,* No. 06-313, 2007 WL 3998804, at *1 (S.D. Tex. Nov. 14, 2007).

If the Court of Appeals disagrees with this Court's view that its prior rulings concerning stream of commerce jurisdiction are unaffected by *McIntyre*, then it may find that the Northern District of Florida lacks personal jurisdiction over TG or remand the personal jurisdiction issues to this Court for further consideration.  Moreover, because this Court employed essentially the same jurisdictional analysis in *Gross, Wiltz* and *Germano*, a ruling by the Fifth Circuit on the personal jurisdiction issues raised in here might also supply grounds for reconsideration of this Court's rulings in those cases.  An appellate determination of the precedential effect and impact of *McIntyre* would be instructive also for other cases in the Fifth Circuit where district courts must determine whether foreign defendants are subject to personal jurisdiction.  This Court, like the Texas district court in *Johnston*, should certify its Order & Reasons for interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

## II.     THESE PROCEEDINGS SHOULD BE STAYED PENDING AN APPEAL.

Although this case has been pending for a considerable period of time, discovery thus far has been limited to issues related to personal jurisdiction.  If the case were to proceed further,

there is much more to be done, including fact and expert discovery related to class certification and damages.  Needless to say, further discovery and trial preparation would require the parties to expend enormous amounts of additional time and resources, and consume the Court's resources as well.  As other courts have recognized, this tremendous expense is a real concern. *See Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002).  As such, if this Court grants TG's motion for certification for interlocutory appeal, it respectfully requests that the Court stay further proceedings until the appeal is resolved.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the motion of TG pursuant to 28 U.S.C. § 1292(b) to certify for interlocutory appeal this Court's Order & Reasons for the purpose of obtaining an immediate appellate determination of whether TG is subject to personal jurisdiction in this Court, and stay the action pending resolution of the appeal.

September 14, 2012

Respectfully submitted,

*/s/ Thomas P. Owen Jr.*
Joe Cyr
Frank T. Spano
Eric Statman
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: 212-918-3000
Facsimile: 212-918-3100
Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Eric.statman@hoganlovells.com

17

Richard C. Stanley (La. Bar No. 8487)
Thomas P. Owen, Jr. (La. Bar No. 28181)
STANLEY, REUTER, ROSS, THORNTON & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069
rcs@stanleyreuter.com
tpo@stanleyreuter.com

**Attorneys for Taishan Gypsum Co. Ltd.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum of Defendant TG in Support of its Motion Pursuant to 28 U.S.C. § 1292(b) to Certify the Court's Order & Reasons for Interlocutory Appeal and Stay Further Proceedings Pending Appeal has been served on Plaintiffs' Liaison Counsel, Russ Herman, and defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexus File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 14th day of September, 2012.

*/s/ Thomas P. Owen, Jr.*