UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | MDL NO. 2047 |
| | * | |
| | * | SECTION: L |
| | * | |
| | * | JUDGE FALLON |
| | * | MAG. JUDGE WILKINSON |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| *Gross v. Knauf*, No. 09-6690 | * | |
| *Wiltz v. Beijing*, No. 10-361 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

THE PSC'S MEMORANDUM OF LAW IN RESPONSE TO TAISHAN'S
MOTION PURSUANT TO 28 U.S.C. § 1292(b) TO CERTIFY THE COURT'S
ORDER & REASONS FOR INTERLOCUTORY APPEAL AND STAY
<u>FURTHER PROCEEDINGS PENDING THE APPEAL</u>

I.      <u>INTRODUCTION</u>

Taishan has moved for an order certifying for immediate appeal pursuant to 28 U.S.C. § 1292(b) this Court's September 4, 2012 Order and Reasons denying Taishan's motions to dismiss the above *Gross* and *Wiltz* actions for lack of personal jurisdiction. Taishan also seeks to stay further proceedings in these cases pending resolution of the appeal. In support of its § 1292(b) motion, Taishan asserts that (i) its motions to dismiss the complaints in *Gross* and *Wiltz* involve the identical controlling question of law (*i.e.*, whether this Court may exercise *in personam* jurisdiction over Taishan); (ii) a substantial ground for difference of opinion concerning the ruling exists; and (iii) an immediate appeal of the Court's September 4th Order would materially advance this litigation. *See* Taishan Mem. at 2 [Rec. Doc. No. 15813-1]. Taishan urges a stay of proceedings to avoid "further discovery and trial preparation [which]

would require the parties to expend enormous amounts of additional time and resources, and consume the Court's resources as well." *Id*. at 13.  However, Taishan does not limit its request for a stay to Taishan Gypsum, Co., Ltd. ("TG") and Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively, "Taishan") only.

The Plaintiffs' Steering Committee ("PSC") leaves it to the sound discretion of the Court to determine whether certification of the Court's September 4, 2012 Order and Reasons is appropriate in these circumstances.  The PSC is cognizant of the Court's previous Order in *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687 (E.D. La.) (Virginia law) [Rec. Doc. No. 6101] ruling that Taishan's motion pursuant to Rules 12(b)(2), 55(c), 60(b) and 62.1 to vacate the default judgment, dismiss the action for lack of personal jurisdiction and to seek remand raised a "substantial issue" that would benefit from additional consideration prior to determination of Taishan's appeal pending before the Fifth Circuit Court of Appeals in that case [Case No. 10-30568].  In light of the Fifth Circuit's subsequent Order granting a limited remand in *Germano* [Doc. No. 511296381 (5th Cir. Nov. 17, 2010)] in order to permit this Court to rule on Taishan's jurisdictional motion to dismiss following jurisdictional discovery, the question of whether this Court may exercise personal jurisdiction over Taishan in these proceedings may likely be decided by the Fifth Circuit in any event.

The PSC disagrees, however, with Taishan's characterization of the record of Taishan's contacts with the jurisdictions at issue and with Taishan's interpretation of the law concerning personal jurisdiction.  Further, the PSC strenuously opposes any stay of proceedings against any non-settling Defendant other than Taishan.  An appeal of the Court's ruling that the exercise of *in personam* jurisdiction over Taishan comports with due process and is proper will likely take

more than a year to resolve.[1]  In the meantime, the thousands of homeowners, commercial

building owners, tenants and others awaiting relief for damages caused by Taishan's Chinese

Drywall will have no recourse in the courts for justice.  Moreover, if the stay requested by

Taishan is not limited to Taishan only, these same Plaintiffs will be stymied in their attempts to

recover from Taishan's upstream entities China National Building Material Company, Limited

("CNBM") and Beijing New Building Materials, Ltd. ("BNBM"), their related companies, and

other responsible parties.

The PSC intends and is fully prepared to vigorously pursue the claims of all Plaintiffs in

the *Gross* and *Wiltz* actions, as well as the claims of thousands of Plaintiffs in the other Omnibus

complaints,[2] against all non-settling Defendants other than Taishan pending the appeal of the

jurisdictional ruling.  These claims include an assessment of damages against CNBM and

BNBM.  In addition, the PSC is prosecuting claims against these non-settling Defendants in

actions filed in California, Florida, Louisiana, and Virginia.  The PSC directly filed *Amorin, et al.*

---

[1]  *See* http://www.ca5.uscourts.gov/clerk/docs/faqs.htm;
http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/B04Sep11.pdf.

[2]  *See, e.g., Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), I(C)) (involving claims against the Knauf Defendants); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)) (involving claims against the Knauf Defendants); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-cv-00080 (E.D. La) (Omnibus VII); *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.) (Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01077 (E.D. La.) (Omnibus IX); *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-1363 (E.D. La.) (Omnibus X); *Benoit, et al. v. Lafarge S.A., et al.*, Case No. 11-cv-1893 (E.D. La.) (Omnibus XI); *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-2349 (E.D. La.) (Omnibus XII); *Almeroth v. Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 12-cv-0498 (E.D. La.) (Omnibus XIII); *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-3023 (E.D. La.) (Omnibus XIV).

*v. Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 11-cv-1395 (E.D. La.), in this Court on June 13, 2011.  The PSC filed similar actions that have been transferred to this Court from the Central District of California, *see Abner, et al. v. Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 11-cv-3094 (E.D. La.), the Southern District of Florida, *see Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 11-cv-1672 (E.D. La.), and the Eastern District of Virginia, *see Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. et al.*, 11-cv-1673 (E.D. La.).  The PSC is in the process of serving each of these complaints on the named Defendants.

Beginning shortly, the PSC will file intervention complaints in the three *Amorin* actions originating from the jurisdictions of Virginia, Louisiana and Florida on behalf of the thousands of homeowners, commercial property owners and tenants from those jurisdictions having claims for damages against Taishan and the parties responsible for Taishan's Chinese Drywall, including CNBM and BNBM.[3]  All of these Plaintiffs have suffered damages, yet they have received little to no relief in these proceedings thus far due to the recalcitrance of Taishan and its related entities.  These Plaintiffs in essence have become poor second cousins to the KPT property owners as a direct result of the arrogance of the non-settling Chinese Defendants.

As shown in the PSC's response to Taishan's jurisdictional motions [Rec. Doc. No. 14215-2 and 14215-3], both CNBM and BNBM appeared at a 2007 trade show in Las Vegas, and

---

[3]  All of the Plaintiffs in Omnibus actions with claims against Taishan and its affiliated Defendants will intervene into the appropriate *Amorin* action.  Additional, newly-retained Plaintiffs with claims against Taishan, CNBM and BNBM will intervene as well.

were actively pursuing sales in the United States.[4]  Both companies established United States branches as part of this strategy.  CNBM (USA) Corporation was established in 2006 in the City of Industry, California, at the same time that Taishan sold its Chinese Drywall to Venture Supply in Virginia.[5]  CNBM (USA) publicly announced that its "mission [is] to provide all kinds of building materials and services in the [U.S.] national market."[6]  BNBM ventured into the United States a little earlier, and prior to its acquisition of Taishan.  In 2000, BNBM set up BNBM of American, Inc. in Tampa, Florida.[7]  BNBM of America was the United States marketing arm of BNBM, selling primarily BNBM drywall, adding other building materials later.[8]  Throughout its existence, it sold over $1 million in drywall for BNBM.[9]  It wound down operations in 2005, just when BNBM was acquiring an interest in Taishan.[10]

Just as with TG and TTP, these organizations shared leadership, including leaders all the way from BNBM of America and TG, up through CNBM to the parents of CNBM, and just short of the SASAC of the People's Republic of China.  For example:  Jianglin Cao was a director and

---

[4]  Deposition of John Gunn dated 7/22/2011 ("Guardian Dep.") (Herman Aff. Ex. "143") at 148:8-149:1, 154:2-6; *see also id.* at 34:23-35:6, 147:8-11.

[5]  *In Chinese-Manufactured Drywall*, 706 F. Supp. 2d 655, 663 (E.D. La. 2010); *see* Rec. Doc. No. 6245-4, at p.6; *see also* State of California Business Entity Detail for CNBM (USA) Corp. dated 3/31/2011 (Q000982) (Herman Aff. Ex. "141").

[6]  *Id.*

[7]  Richard Hannam Dep. at 16:7-14, 22:21-22, 24:11-19, 32:15-19, 74:8-32 (Herman Aff. Ex. "39"); Ex. 1 to Richard Hannam Dep. (2003 For Profit Corporation Uniform Business Report (Florida Secretary of State) and Articles of Incorporation for BNBM of America, Inc. in Tampa, Florida) (Herman Aff. Ex. "142").

[8]  Richard Hannam Dep. at 14:6-14.

[9]  *Id.* at 36:2-8.

[10]  *Id.* at 74:8-22.

officer of BNBM of America,[11] served on the Board of Supervisors of TG,[12] was a Chairman of

BNBM,[13] served as the President and Executive Director of CNBM,[14] and held senior positions,

including Directorships at BNBM Group and CNBM Group.[15]  Zhiping Song was also a director

of BNBM of America,[16] was the Chairman of BNBM,[17] served as an Executive Director and

Chairman at CNBM,[18] and held senior positions at BNBM Group and CNBM Group.[19]  Wang

Bing was a Director of TG,[20] a Director, Chairman and General Manager at BNBM,[21] and a Vice

---

[11]  Ex. 1 to Richard Hannam Dep. (2003 For Profit Corporation Uniform Business Report and Articles of Incorporation for BNBM of America, Inc.).

[12]  Defendants' Ex. 8A to Jia II Dep. (Resolutions of the General Meeting of Shareholders dated 4/25/2005) (Translation of TG0020601-602) (Herman Aff. Ex. "185").

[13]  Summary of BNBM 2006 Annual Report at pp. 2, 12 (Herman Aff. Ex. "133"); Summary of BNBM 2008 Annual Report at pp. 2, 12, 64 (Q000091-154) (Herman Aff. Ex. "140"); 2010 CNBM Annual Report (Q000224-437) (Herman Aff. Ex. "186") at p. 75.

[14]  CNBM Global Offering at pp. 157, 188-89 (Herman Aff. Ex. "130"); 2010 CNBM Annual Report (Q000224-437) at pp. 4, 20, 43, 55, 75.

[15]  CNBM Global Offering at p. 188; 2010 CNBM Annual Report at p. 75.

[16]  Ex. 1 to Richard Hannam Dep. (2003 For Profit Corporation Uniform Business Report and Articles of Incorporation for BNBM of America, Inc.).

[17]  CNBM Global Offering at pp. 188-89; 2010 CNBM Annual Report at p. 74.

[18]  *Id.*

[19]  *Id.*

[20]  Defendants' Ex. 8A to Jia II Dep. (Resolutions of the General Meeting of Shareholders dated 4/25/2005) (Translation of TG0020601-602).

[21]  2010 CNBM Annual Report at p. 84.

President at CNBM.[22]  Yanjun Yang was another Director at TG,[23] who held a variety of leadership roles at BNBM, including CFO and Deputy General Manager.[24]  Jinyu Hu was also a Director at TG[25] and served as a Supervisor at BNBM.[26]

The PSC attempted to bring both BNBM and CNBM into these proceedings by serving these Defendants through the Hague Convention.  However, both BNBM and CNBM chose to ignore the Complaints and, as a result, have been defaulted.[27]  Earlier on during these proceedings, CNBM (USA) entered its appearance in the litigation, but then made a strategic decision to instruct its counsel to withdraw as counsel of record.[28]  As a result, the PSC has been unable to take formal discovery of Taishan's upstream entities.  CNBM and BNBM have opted to use Taishan as a stalking horse in Court supporting them.

It would be grossly unfair to thousands of Plaintiffs awaiting redress for harm caused by Taishan's Chinese Drywall if Taishan were permitted to offensively use a stay of proceedings to

---

[22]  *Id.*

[23]  Resolution of the First Extraordinary General Meeting of 2006 (TG0020675) (Herman Aff. Ex. "187").

[24]  Summary of BNBM 2006 Annual Report at pp. 13, 46; Summary of BNBM 2008 Annual Report at p. 13.

[25]  Defendants' Ex. 8A to Jia II Dep. (Resolutions of the General Meeting of Shareholders dated 4/25/2005) (Translation of TG0020601-602).

[26]  Summary of BNBM 2006 Annual Report at p. 13; Summary of BNBM 2008 Annual Report at p. 13.

[27]  *See* Rec. Doc. No. 5621.  At one point in time, as of October 13, 2010, BNBM had retained national counsel to represent them in these proceedings, *see* Letter dated 10/13/2010 from James L. Stengel to Arnold Levin (Herman Aff. Ex. "144"), however, neither BNBM nor CNBM ever entered their appearance in the litigation.

[28]  *See* Rec. Doc. No. 9568 (Ex Parte Motion to Withdraw as Counsel of Record for CNBM USA Corp.).

halt for over a year the prosecution of legitimate claims against Taishan's parents, while it

challenges this Court's ruling on personal jurisdiction.  This is true especially in light of

Congress' recent passage of the bipartisan Drywall Safety Act of 2012, H.R. 4212, intended to

prevent further victims of toxic Chinese Drywall, attached hereto as Exhibit "A."  The Drywall

Safety Act "expresses a sense of Congress that China must be held accountable for the damage

this product has already caused in our community and across America."  *See* Statement of U.S.

Representative Scott Rigell, 2nd District of Virginia dated 9/20/2012, attached hereto as Exhibit

"B."  Representative Rigell, who is the co-chair of the bipartisan Contaminated Drywall Caucus,

explains the purpose of the Drywall Safety Act and its importance to American families:

> This is a bill about protecting American families - their health and
> financial well being.  Too many of our local families have suffered
> enough, and it is up to Congress to ensure that preventative
> standards are in place so no American family is faced with the
> hardship and heartache from contaminated drywall ever again . . .
> This legislation is the right step in protecting our friends and
> neighbors.  But **China must also be held accountable for the
> devastation this product has already caused, and we will
> continue to fight for these victims as well**.

*Id*. (emphasis added).  Congress has recognized that "[t]he Chinese manufacturers, some of

which are state owned, have refused to submit to the jurisdiction of U.S. courts." *Id*.

Thus, at a time when Congress has articulated the need to step up to help Americans deal

with the Chinese Drywall disaster, there is no reason for the judicial system to step down.  There

should be no stay of proceedings against CNBM, BNBM, or any other non-settling Chinese

Drywall Defendant.  Litigation against these responsible parties should proceed post-haste.

II.     **ARGUMENT**

Firmly established under federal jurisprudence is the policy against piecemeal appeals. *See Switzerland Cheese Association, Inc. v. Horne's Market, Inc.*, 385 U.S. 23, 24 (1966); *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176 (1955); 28 U.S.C. § 1291 (bestowing upon the courts of appeals "jurisdiction of appeals from all <u>final</u> decisions of the district courts") (emphasis added).  Federal statute creates an exception to the final judgment rule and defines the jurisdiction of the courts of appeals to include specific types of interlocutory orders from which appeals may also be taken, *e.g.*, injunctions.  *See* 28 U.S.C. § 1292(a).  Under limited circumstances, "if a trial court enters an order from which an appeal is not permitted pursuant to 28 U.S.C. § 1292(a), . . . the court may grant 28 U.S.C. § 1292(b) certification, which would allow the order to be appealed."  *Henderson v. GATX Corp.*, 2012 WL 1191141, *1 (M.D. Fla. Apr. 10, 2012).  The judiciary readily recognizes that "[a]ny appeal under this section is necessarily a deviation from the ordinary policy of avoiding 'piecemeal appellate review of trial court decisions which do not terminate the litigation.'"  *Cardona v. General Motors Corp.*, 939 F. Supp. 351, 353 (3rd Cir. 1996), *quoting*, *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982).

The statute provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).  Upon certification by the district court pursuant to § 1292(b), the Court of

9

Appeals may, in its discretion, permit the appeal to be taken.  *Id*.  Application of 28 U.S.C. §

1292(b) is "subject to the judgment and discretion of [both] the district court and the court of

appeals."  *Tidewater Oil Co. v. United States*, 409 U.S. 151, 167 (1972).  *See also McFarlin v.*

*Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("the court of appeals has discretion to turn

down a § 1292(b) appeal.  And we sometimes do so.  The proper division of labor between the

district courts and the court of appeals and the efficiency of judicial resolution are protected by

the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to

it.").

        Given that this Court has already described the issue of whether the Court has jurisdiction

over Taishan in *Germano* as a "substantial issue" and given that the Fifth Circuit will hear

Taishan's appeal in *Germano* of the Court's default judgment against this Defendant, the PSC

understands that many of the issues in the *Germano* appeal will overlap with issues raised in

*Wiltz* and *Gross* pertaining to personal jurisdiction over Taishan.  *See Alonso v. Line*, 846 So. 2d

745, 750, 2002-2644 (La. 5/20/03) ("'[T]he limits of the Louisiana Long-arm Statute and the

limits of constitutional due process are now coextensive.... under the express wording of the

present Long-Arm Statute, the sole inquiry into the jurisdiction over a nonresident is a one-step

analysis of the constitutional due process requirements.'"), *quoting*, *Ruckstuhl v. Owens Corning*

*Fiberglas Corp.*, 731 So. 2d 881, 885, 98-1126 (La. 4/13/99), *cert. denied*, 528 U.S. 1019 (1999).

The PSC does not concede, however, that there is substantial ground for difference of opinion on

the standard of governing law in the Fifth Circuit on personal jurisdiction over foreign

defendants.

        Taishan points to the Fifth Circuit's grant of leave to appeal the interlocutory order in the

*Ainsworth* litigation,[29] in which the district court certified the controlling question of law:

"Whether the United States Supreme Court's [*J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011)] decision alters the Fifth Circuit's adherence to the stream-of-commerce theory of personal jurisdiction outlined in Justice Brennan's *Asahi* opinion," as evidence that "[t]he Fifth Circuit regards the issue as unsettled."  Taishan Mem. at 4.  Even if this were true, that would not constitute in any event a "substantial ground for difference of opinion," justifying § 1292(b) certification.

> Courts have repeatedly held that:

>> [A] party's mere disagreement with the district court's ruling does not constitute a "substantial ground for difference of opinion" within the meaning of § 1292(b).  Rather, the "difference of opinion" must arise out of *genuine doubt* as to the correct legal standard.

*See Cardona*, 939 F. Supp. at 353 (emphasis added); *Max Daetwyler Corp. v. R. Meyer*, 575 F. Supp. 280, 282 (E.D. Pa. 1983).  That "genuine doubt" does not exist simply because the higher court has not ruled on the issue.  *See Max Daetwyler*, 575 F. Supp. at 283 ("mere fact that the appeal would present a question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion").

> Likewise, a disagreement among the district courts does not create per se genuine doubt. *See Cardona*, 939 F. Supp. at 353 (noting that:  "Indeed, one [district] court in this Circuit refused to certify a previously undecided issue of law because it found the statutory language to be clear, even in the face of a squarely contradictory ruling on the same issue from another

---

[29]  *See Ainsworth v. Moffett Engineering, Ltd.*, No. 11-90052 (5th Cir. Mar. 1, 2012).

district court."), *citing*, *Singh v. Daimler-Benz, AG*, 800 F. Supp. 260 (E.D. Pa. 1992).[30]   The

court in *Max Daetwyler* pointed out that:

> The mere fact that a substantially greater number of judges have
> resolved the issue one way rather than another does not, of itself,
> tend to show that there is no substantial ground for difference of
> opinion.  It is the duty of the district judge faced with a motion for
> certification to analyze the strength of the arguments in opposition
> to the challenged ruling when deciding whether the issue for appeal
> is truly one on which there is a substantial ground for dispute.

575 F. Supp. at 283.[31]

   The law in the Fifth Circuit prior to *McIntyre* overwhelmingly supports this Court's

exercise of personal jurisdiction over Taishan in these proceedings.  The fact that the appeals

court has not ruled on this point post-*McIntyre* does not in and of itself create grounds, much less

a substantial ground, for a "difference of opinion."  Putting aside Taishan's assertion of a debate

over the interpretation of the Supreme Court's ruling in *McIntyre*, this Court has made detailed

findings of fact and conclusions of law based on:  extensive jurisdictional discovery that included

depositions over which the Court presided and was "able to observe the comments, intonation,

and body language of the deponents"; the submission of affidavits and documentary evidence;

extensive briefing by the parties; and oral argument.  9/4/2012 Order at 11-13.  *See Speizman

Knitting Machine Co. v. Terrot Strickmaschinen GmBH*, 505 F. Supp. 200, 202 (W.D.N.C. 1981)

---

[30] The district court in *Singh* denied § 1292(b) certification of its holding that an amendment to
the diversity jurisdiction statute which defined a permanent resident alien as a citizen for diversity
purposes gave the federal court subject matter jurisdiction over a case brought by a permanent
resident alien against a nonresident alien.  The Third Circuit, on appeal from the final judgment, affirmed the
district court.  *Singh v. Daimler–Benz, AG*, 9 F.3d 303 (3rd Cir. 1993).

[31] Upon analysis of the conflicting arguments on the question of *in personam* jurisdiction in that
case, the district court in *Max Daetwyler* granted § 1292(b) certification in recognition "that the
arguments in support of the opposite conclusion [of the court] [were] not insubstantial."  575 F. Supp. at
283.

(noting that "[a] question which requires a factual as well as legal decision is not suitable for interlocutory review.").  The Court's ruling that jurisdiction over Taishan is proper in *Gross* and *Wiltz* is based on the following:

- "Taishan has more substantial contacts with Louisiana than the defendant in *J. McIntyre* did with its forum."  9/4/2012 Order at 135.

- "Over the course of two years, Taishan manufactured and sold, through a number of transactions, 45,756 sheets of drywall destined for Louisiana and/or Louisiana customers, earning $195,915.29."  *Id*. at 136.

- "Taishan manufactured its drywall specifically to match U.S. specifications in size and quality, and often used English-language markings."  *Id*.

- "Taishan provided samples of its drywall to at least two different Louisiana businesses."  *Id*.

- "The owner of a Louisiana company traveled to China to visit Taishan's drywall factory."  *Id*.

- "Taishan engaged in extensive communications with U.S.-based companies regarding the manufacture, sale, and shipment of its drywall to Louisiana."  *Id*.

- "In one particular email, Taishan was informed that "[a]fter Hurricane Katrina, the Great New Orleans area need rebuild, and housing market in USA is very hot in these days."  *Id*. at 132.

- "Taishan knew that its drywall was sold to and would end up in Louisiana."  *Id*. at 136.

- "[Taishan] held itself out as interested in and actively marketing and selling its

13

drywall to Louisiana." *Id.  See also id*. at 133-35.

- "[Taishan] provided to customers and potential customers information and pricing for shipping its product from China to Louisiana." *Id.*

- "Taishan sold its drywall to at least two companies in the U.S. which informed it that they would be shipping the drywall to Louisiana." *Id.*

- "Taishan itself arranged the shipment of its drywall to Louisiana." *Id*. at 136-37.

- "Taishan possessed more than mere awareness or expectation that its drywall would be delivered, sold, and installed in Louisiana." *Id*. at 137.

- "Taishan's drywall did end up in Louisiana and was used in Louisiana properties." *Id*. at 138.

Based on these findings, the Court concluded that Taishan's "contacts with the State [of Louisiana] demonstrate it purposefully directed its activities at the forum such that it reasonably could anticipate being haled into court there." *Id*. at 135.  Further, the Court concluded, "Taishan's contacts with Louisiana are beyond mere random, fortuitous, or attenuated contacts. Taishan placed its drywall into the stream of commerce with the knowledge that its drywall would end up in Louisiana." *Id*. (citations omitted).  Thus, the Court held that "Taishan has minimum contacts with Louisiana because, during its course of production, Taishan demonstrated a regular and anticipated flow of its drywall to Louisiana, it marketed its drywall to Louisiana-based customers, and it benefitted economically from doing so.  Taishan had more than reasonable knowledge that its products *might* end up in Louisiana; it knew its products *would* end up in Louisiana." *Id*. (emphasis in original).

Taishan has used its motion for § 1292(b) certification of the Court's order denying

14

Taishan's motions to dismiss *Gross* and *Wiltz* for lack of personal jurisdiction as a platform to rehash its previous arguments.  While the PSC defers to this Court's sound discretion in ruling on the motion, the PSC does not agree with Taishan's characterization of the factual record or the applicable law.

Moreover, the PSC opposes any stay of proceedings as to any Defendants other than Taishan.  The PSC intends to aggressively and diligently pursue all non-settling Defendants, including CNBM and BNBM.

III.   **CONCLUSION**

For the reasons stated above, the PSC defers to the sound discretion of this Court as to whether the Court's September 4, 2012 Order and Reasons denying Taishan's jurisdictional motions in *Gross* and *Wiltz* should be certified for immediate interlocutory appeal.  The PSC respectfully submits that if the Order is certified and a stay of proceedings is imposed, that the stay should be limited to Taishan only.

Respectfully submitted,


Dated:  September 24, 2012                    _____
                                              /s/ Russ M. Herman
                                              Russ M. Herman, Esquire (Bar No. 6819)
                                              Leonard A. Davis, Esquire (Bar No. 14190)
                                              Stephen J. Herman, Esquire (Bar No. 23129)
                                              HERMAN, HERMAN & KATZ, LLP
                                              820 O'Keefe Avenue
                                              New Orleans, LA 70113
                                              Phone: (504) 581-4892
                                              Fax: (504) 561-6024
                                              Ldavis@hhklawfirm.com
                                              *Plaintiffs' Liaison Counsel in MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
  ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing the PSC's Memorandum of Law in Response to Taishan's Motion Pursuant to 28 U.S.C. § 1292(b) to Certify the Court's Order & Reasons for Interlocutory Appeal and Stay Further Proceedings Pending the Appeal has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 24th day of September, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*
*Co-counsel for Plaintiffs*