# EXHIBIT A

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

MDL NO. 2047

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

## OBJECTION TO APPROVAL OF SETTLEMENT TERMS

John and Lori Willis, individually and on behalf of their minor Son, Brannon, by and through the undersigned counsel, hereby files this Objection to Amended Settlement Agreement Regarding Claims Against Knauf Defendants, Banner Class Settlement, and Insurer Class Settlement[1], and states as follows in support thereof:

### Objections and Reason for the Objection:

Plaintiffs qualify as class members under the Knauf proposed settlement.   Mr. Willis is a practicing attorney.

While Banner is unable to confirm their home was supplied by Banner, their home was built in Parkland by WCI Homes and many of their neighbors were supplied by Banner Supply.

Plaintiffs have claims for "Sales in Mitigation", pursuant to Section 4.7.1.4, and Bodily Injury for their minor son, Brannon Willis, pursuant to Section 4.7.2.

Plaintiffs object on behalf of themselves and their minor son, Brannon Willis, as follows:

### Amended Settlement Agreement
### Regarding Claims Against the Knauf Defendants in MDL 2047

1.      Section 4.6 contemplates the establishment of an "Other Loss Fund".  Plaintiffs object to:

       (a)      Any cap on Knauf's responsibility to the "Other Loss Fund" pursuant to Section 4.6.4;

---

[1] "Insurer Class Settlement" is the proposed settlement agreement referred to as "Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers".

(b)    The contribution of any funds derived from the Banner Class Settlement into the Remediation Fund to offset responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund" before every Approved Claim is fully paid;

(c)    Section 4.2.3 and Section 4.6.3 providing for contribution of any funds derived from the Insurer Class Settlement and settlements with Excluded Releasees into the Remediation Fund to offset any responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund before every Approved Claim is fully paid;

2.    Section 4.25 permits a refund of dollars from the Remediation Fund, rather than contributing those funds to the "Other Loss Fund" without regard to whether or not there has been a pro rata reduction in claims pursuant to Section 4.7.4.5. As a result, "Other Loss Fund" plaintiffs could have their valid and Approved Claim reduced in a pro rata fashion because there are insufficient funds in the "Other Loss Fund", while Knauf could be receiving millions of dollars in refund from Insurer Class Settlement, Banner Class Settlement, and/or other Excluded Releasees. This is particularly unfair where the only recovery for some claimants may be from those specific funds.

3.    Section 4.2.5 permits refund of Remediation Funds to Knauf defendants after ALL "Participating Owner Class Members" have been compensated. However, there is NO definition of "Participating Owner Class Members". Persistently throughout the agreement there are conflicts between such definitions.

(a)    "Participating Class Members" (Section 1.51) defined as all class member who do not opt-out.

(b)    "Residential Owner Class" (Section 1.1.2.1) defined as ALL those who own, reside in (presumably including tenants) or "have resided in" (tenants under Section 4.7.1.5 as Other Loss claimants). The definition specifically includes class members as former owners qualifying under Foreclosed (Section 4.7.1.3) or "Sales In Mitigation" (Section 4.7.1.4).

Without a definition of "Participating Owner Class Members", the refund provision is vague and unenforceable.

4.    Section 4.7.4.4.1 mandates that the "Special Master reduce any Approved Claim by any amount that was or could have been reimbursed of the Other Loss under the Class Member's insurance policy." As written, there are a number of infirmities.

(a)    Since Insurer Class Settlement permits for "Other Loss" claims, application of this provision would nullify the resulting award since every dollar is potentially coming from the Class Member's insurance policy.

(b)    There is no disclosure as to what insurance policy amount has been implicated by claimant in this settlement to evaluate a class member's exposure or risk of reduction.

2

(c)     The reduction predicated on what "could have been" reimbursed in unenforceable and vague. Who determines whether or not the claim "could have been reimbursed" and under what standard? A trial court determination? A court of appeals? The argument of Knauf counsel, or some other counsel? What is the amount that "could have been reimbursed"? The policy limits? An amount discounted for difficulties surrounding the litigation? Applying what state's law is to determine the amount which "could have been reimbursed"?

5.     Imposition of arbitrary threshold percentage (Section 1.28 and stated therein elsewhere) to qualify for Knauf settlement funds pursuant to Section 4.7.1.4;

6.     Lack of any validated information or meaningful representation by the parties providing guidance or estimate as to the range or expected recovery for claims pursuant to Section 4.7.1.4;

7.     Requirement for an expert report pursuant to Section 4.7.1.4.2(k): (i) there is no known expert specialty identified which could qualify; (ii) the expenses of such are not reimbursable;

8.     Section 4.7.1.4 appears to prohibit Plaintiffs from seeking "Pre-remediation Alternative Living Expenses" pursuant to 4.7.1.1. The ability to seek "Lump Sum" as part of the "Lost Equity" calculation does not end the analysis where other homeowners who receive "Lump Sum" are permitted to seek Section 4.7.1.4 recovery. Due to the persistent health and respiratory issues involving their minor son, Brannon, Plaintiffs moved out of their home approximately 45 days after learning of the existence of reactive drywall. Their home was sold as part of the effort to mitigate losses 15 months later. During that time, they sustained significant damages. If Plaintiffs had remediated, they would have qualified for damages under Section 4.7.1.1. The disparate treatment of homeowners who sustained the same damages for the same reasons is unfair;

9.     Lack of any validated information or meaningful representation by the parties providing guidance or estimate as to the range or expected recovery for claims made against the Insurer Class Settlement, and the unfairness of the allocation.

10.    Section 1.19 (Individual Participating Class Member Costs) and Section 14.1 conflict in defining recovery of allowable expenses and violates the constitutional right to contract. Section 1.19 defines "Individual Participating Class Member Costs" as "those costs reasonably incurred by a Participating Class Member in connection with the prosecution of a claim relating to an Affected Property." Such reasonable costs should include those incurred by counsel including inspection, photocopies, facsimile, postage/overnight mail, travel/mileage, filing fees, etc. However, Section 14.1 limits recovery of these incurred expenses in connection with the prosecution of the claim to only "reasonable inspection costs". There is no basis to restrict such recovery or to interfere with Bar approved contracts providing for recovery of additional costs.

11. Plaintiffs have a bodily injury claim for their minor son, Brannon, pursuant to Section 4.7.2 and object to:

    (a)    Any cap on Knauf's responsibility to the "Other Loss Fund" pursuant to Section 4.6.4;

    (b)    The contribution of any funds derived from the Banner Class Settlement into the Remediation Fund to offset responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund";

    (c)    The contribution of any funds derived from the Insurer Class Settlement into the Remediation Fund pursuant to Section 4.6.3 to offset any responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund;

    (d)    Lack of any validated information or representation by the parties providing guidance as to the range of expected recovery for claims pursuant to Section 4.7.2;

    (e)    Sections 4.7.2.3.1 and 4.7.2.7 prohibit any fee or cost recovery for the Plaintiff, even if they prevail on their claim. Instead, because Knauf has the right to contest the claim (see Section 4.7.2.6), Knauf's disparate economic power unfairly places an undue burden on Plaintiffs without the possibility for recovery of valid costs of collection of records, putting forward an expert, and the process of submitting the claim. However, all other Plaintiffs are permitted to recover attorneys fees and costs in some manner. Therefore, this settlement inappropriately and arbitrarily discriminates against bodily injury plaintiffs;

    (f)    Sections 4.7.2.3(a) and 4.7.2.3(b) require a certification that ALL pharmacies and medical providers since January 2005 sign a certification that all records are produced. First, there is no explanation as to what certification is expected or how Plaintiffs could even force such a "certification". Second, there is no "best effort" requirement; instead, this provision as written suggests the failure to obtain a single certification could act as a bar to recovery. Third, there is a conflict in the language between pharmacies and healthcare providers where the certification for pharmacies is that the "production is complete" and for healthcare providers "all such records in the custody, possession or control of the healthcare provider have been produced". There is no explanation or logical reason for the different treatment.

In the context of the claim of minor, Brannon Willis, there are 13 different health care providers and a pharmacy. The idea that the failure of a single provider or pharmacy to produce the stated certification would operate as a bar to recovery is objectionable.

4

(g)   Requirement for any expert report pursuant to Section 4.7.2.5: (i) there is no
known expert specialty identified which could qualify; (ii) the costs of such are
not reimbursable;

(h)   Section 4.7.2.2 requirement for a "contemporaneous diagnosis by the treating
physician that the alleged injury was caused by KPT Chinese Drywall", imposing
two impossible threshold standards: (i) "contemporaneous", meaning at the time
of the first complaint or, alternatively, the term is irreparably vague; (ii) requiring
a "treating physician" to diagnosis the injury was caused not just by reactive
drywall in general, but specifically by "KPT drywall" and associating with "KPT
drywall" "contemporaneous" with the initial diagnosis.

(i)   Lack of any validated information or meaningful representation by the parties
providing guidance or estimate as to the range or expected recovery for claims
made against the Insurer Class Settlement, and the unfairness of the allocation.

### Settlement Agreement Involving Banner Class Action

Plaintiffs incorporate all previously stated objections to the extent the Banner Class Action
Settlement is to be read *in para materia* with other Settlement Agreements.  Plaintiffs further
object to:

12.   Any Allocation in which any proceeds of the Banner Class Action Settlement are
dedicated to the Remediation Fund before all Approved Claims are fully compensated.

13.   The inability to determine participation in the Settlement Agreement predicated upon
poor record keeping of Banner Supply entities.

14.   The failure to provide for recovery of reasonable expenses associated with the
prosecution of an individual claim.

### Settlement Agreement in MDL No. 2047 Regarding
### Claims Involving Builders, Installers, Suppliers and Participating Insurers

Plaintiffs incorporate all previously stated objections to the extent the Insurer Settlement
Agreement is to be read *in para materia* with other Settlement Agreements.  Plaintiffs further
object to:

15.   Any Allocation in which any proceeds of the Banner Class Action Settlement are
dedicated to the Remediation Fund before all Approved Claims are fully compensated.

16.   The structure of the settlement agreement.

17.   The failure to provide for recovery of reasonable expenses associated with the
prosecution of an individual claim.

Class Member DOES intend to appear at the Certification Hearing or Fairness Hearing WITH counsel.

Witnesses intended to be called and subject area of the witnesses' testimony:

John Willis, Esquire (homeowner, attorney, father of minor son, Brannon)

Documents to be used or offered into evidence at the Certification Hearing or Fairness Hearing:

Proposed Settlement documents;
Pleadings;
Objections by other objectors;
Qualifying documents supporting claim by Plaintiffs;
Documents in support of Bodily Injury claims;

John Willis

Lori Willis
6901 NW 117th Avenue
Parkland, Florida 33076
jawillis@aol.com
954-303-3435

Michael J. Ryan, Esquire
Krupnick, Campbell, Malone, et al.
12 S.E. 7 Street
Suite 801
Ft. Lauderdale, FL  33301
(954) 763-8181
FAX (954) 763-8292
mryan@krupnicklaw.com

6

I hereby certify that a true and correct copy of this objection has been furnished by Fed Ex overnight mail and regular U.S. Mail to: Arnold Levin, Esquire, Plaintiff's Lead Counsel, Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106 and Kerry Miller, Esquire, Knauf Defendants' Counsel, Frilot, LLC, 1100 Poydras Street, Suite 3700, New Orleans, LA 70163, this 28th day of September, 2012.

Michael J. Ryan, Esquire
Krupnick, Campbell, Malone, et al.
12 S.E. 7 Street
Suite 801
Ft. Lauderdale, FL 33301
(954) 763-8181
FAX (954) 763-8292
mryan@krupnicklaw.com

# EXHIBIT 2



42073774
Jan 23 2012
2:57PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : | MDL NO. 2047 |
|  | : | |
|  | : | SECTION: L |
|  | : | |
|  | : | JUDGE FALLON |
| This Document Relates to All Cases | : | MAG. JUDGE WILKINSON |

........................................ :

## ORDER

The Court received and reviewed the attached correspondence from James E. and Joanne

E. Haseltine. IT IS ORDERED that this correspondence is to be filed into the record.

New Orleans, Louisiana, this <u>20th</u> day of January 2012.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

RE: CEIVED

JAN 20 2012

C.
U.S. ...
FILE

42073774

Jan 23 2012
2:57PM

January 8, 2012

Judge Eldon Fallon
United States District Court
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA   70130

RE:   MDL No. 2047
        Chinese Drywall Litigation

Class Members:   James E. & Joanne E. Haseltine
                            12020 Creole Court
                            Parrish, FL  34219

Attorney for Class Members:   Mr. Darren Inverso,
                            Norton, Hammersley, Lopez & Skokos, P.A.
                            1819 Main St.    Ste 610
                            Sarasota, FL   34236

Gentlemen,

My wife and I have neither the resources nor the will to bring a separate lawsuit against
Banner Supply, or the other defendants in the MDL, however we would like to express our
concerns relating to the Banner proposed settlement while not opting out of the MDL.

First, our wallboard manufacturer was Taishan Gypsum Co., which is not a party to the
MDL, but which, in a separate case, was found negligent by Judge Fallon's court to the
tune of $2.6 million for seven Virginia homeowners.    While the ruling may produce
nothing for the Virginia homeowners, it's an average of $371,000 per homeowner.    By
comparison, if I subtract 32% from the proposed Banner settlement for attorney fees and
divide the result by approximately 2,100 plaintiffs, we get approximately $17,100 per
homeowner.

We will get nothing from the Taishan Gypsum Company.   The Court may decide that we
get something from the builder, Vernon Homes, if they don't file bankruptcy first.   So it
is conceivable that, if the Banner settlement is accepted, $17,100 may be all we get in
return for well over $100,000 in remedial expenses.

Recently, Knauf Gips, KG, has come to a preliminary settlement with the Court.   Thus,
some plaintiffs covered by the Banner settlement will be compensated by both settlement
agreements.   However, plaintiffs in our scenario are stuck with only a single source for
recovery.   That being said we are requesting that we are given consideration for our
limited source of recovery and be allotted a sum commensurate with our remediation costs
which is roughly $121,000.00.   Absent additional recovery in the Banner settlement my

{1-25 00628962.DOCX;1 1/13/2012}

wife and I will be stuck in a situation where we will never be compensated for our great loss.

There is evidence provided through newspaper articles in Pro Publica and the Sarasota Herald Tribune that Banner Supply was aware of problems with Chinese Drywall long before it was publicly known, and that they continued to sell the defective product. Copies of these articles may be provided on request.

At this point we state for the record that we oppose the Banner Supply settlement to the extent that the sums available are too low.   However, given the course of this litigation and limited probability of additional recover it appears that we have no other choice but to accept the Banner terms and ask that we are given special consideration for additional recovery as mentioned above.

We do not intend to appear at the Fairness Hearing.

Signed:                                                          Signed:

James E. Haseltine                                      Joanne E. Haseltine