# EXHIBIT B

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL NO. 2047
PRODUCTS LIABILITY LITIGATION

SECTION:  L

JUDGE FALLON
MAG. JUDGE WILKINSON

## OBJECTION TO APPROVAL OF SETTLEMENT TERMS

John and Lori Willis, individually and on behalf of their minor Son, Brannon, by and

through the undersigned counsel, hereby files this Objection to Amended Settlement Agreement

Regarding Claims Against Knauf Defendants, Banner Class Settlement, and Insurer Class

Settlement[1], and states as follows in support thereof:

### Objections and Reason for the Objection:

Plaintiffs qualify as class members under the Knauf proposed settlement.   Mr. Willis is a
practicing attorney.

While Banner is unable to confirm their home was supplied by Banner, their home was built in
Parkland by WCI Homes and many of their neighbors were supplied by Banner Supply.

Plaintiffs have claims for "Sales in Mitigation", pursuant to Section 4.7.1.4, and Bodily Injury
for their minor son, Brannon Willis, pursuant to Section 4.7.2.

Plaintiffs object on behalf of themselves and their minor son, Brannon Willis, as follows:

### Amended Settlement Agreement
### Regarding Claims Against the Knauf Defendants in MDL 2047

1.      Section 4.6 contemplates the establishment of an "Other Loss Fund".  Plaintiffs object to:

        (a)      Any cap on Knauf's responsibility to the "Other Loss Fund" pursuant to Section
                 4.6.4;

---

[1] "Insurer Class Settlement" is the proposed settlement agreement referred to as "Settlement Agreement in MDL No.
2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers".

(b)   The contribution of any funds derived from the Banner Class Settlement into the Remediation Fund to offset responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund" before every Approved Claim is fully paid;

(c)   Section 4.2.3 and Section 4.6.3 providing for contribution of any funds derived from the Insurer Class Settlement and settlements with Excluded Releasees into the Remediation Fund to offset any responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund before every Approved Claim is fully paid;

2.   Section 4.25 permits a refund of dollars from the Remediation Fund, rather than contributing those funds to the "Other Loss Fund" without regard to whether or not there has been a pro rata reduction in claims pursuant to Section 4.7.4.5. As a result, "Other Loss Fund" plaintiffs could have their valid and Approved Claim reduced in a pro rata fashion because there are insufficient funds in the "Other Loss Fund", while Knauf could be receiving millions of dollars in refund from Insurer Class Settlement, Banner Class Settlement, and/or other Excluded Releasees. This is particularly unfair where the only recovery for some claimants may be from those specific funds.

3.   Section 4.2.5 permits refund of Remediation Funds to Knauf defendants after ALL "Participating Owner Class Members" have been compensated. However, there is NO definition of "Participating Owner Class Members". Persistently throughout the agreement there are conflicts between such definitions.

(a)   "Participating Class Members" (Section 1.51) defined as all class member who do not opt-out.

(b)   "Residential Owner Class" (Section 1.1.2.1) defined as ALL those who own, reside in (presumably including tenants) or "have resided in" (tenants under Section 4.7.1.5 as Other Loss claimants). The definition specifically includes class members as former owners qualifying under Foreclosed (Section 4.7.1.3) or "Sales In Mitigation" (Section 4.7.1.4).

Without a definition of "Participating Owner Class Members", the refund provision is vague and unenforceable.

4.   Section 4.7.4.4.1 mandates that the "Special Master reduce any Approved Claim by any amount that was or could have been reimbursed of the Other Loss under the Class Member's insurance policy." As written, there are a number of infirmities.

(a)   Since Insurer Class Settlement permits for "Other Loss" claims, application of this provision would nullify the resulting award since every dollar is potentially coming from the Class Member's insurance policy.

(b)   There is no disclosure as to what insurance policy amount has been implicated by claimant in this settlement to evaluate a class member's exposure or risk of reduction.

2

(c)     The reduction predicated on what "could have been" reimbursed in unenforceable and vague. Who determines whether or not the claim "could have been reimbursed" and under what standard? A trial court determination? A court of appeals? The argument of Knauf counsel, or some other counsel? What is the amount that "could have been reimbursed"? The policy limits? An amount discounted for difficulties surrounding the litigation? Applying what state's law is to determine the amount which "could have been reimbursed"?

5.     Imposition of arbitrary threshold percentage (Section 1.28 and stated therein elsewhere) to qualify for Knauf settlement funds pursuant to Section 4.7.1.4;

6.     Lack of any validated information or meaningful representation by the parties providing guidance or estimate as to the range or expected recovery for claims pursuant to Section 4.7.1.4;

7.     Requirement for an expert report pursuant to Section 4.7.1.4.2(k): (i) there is no known expert specialty identified which could qualify; (ii) the expenses of such are not reimbursable;

8.     Section 4.7.1.4 appears to prohibit Plaintiffs from seeking "Pre-remediation Alternative Living Expenses" pursuant to 4.7.1.1. The ability to seek "Lump Sum" as part of the "Lost Equity" calculation does not end the analysis where other homeowners who receive "Lump Sum" are permitted to seek Section 4.7.1.4 recovery. Due to the persistent health and respiratory issues involving their minor son, Brannon, Plaintiffs moved out of their home approximately 45 days after learning of the existence of reactive drywall. Their home was sold as part of the effort to mitigate losses 15 months later. During that time, they sustained significant damages. If Plaintiffs had remediated, they would have qualified for damages under Section 4.7.1.1. The disparate treatment of homeowners who sustained the same damages for the same reasons is unfair;

9.     Lack of any validated information or meaningful representation by the parties providing guidance or estimate as to the range or expected recovery for claims made against the Insurer Class Settlement, and the unfairness of the allocation.

10.    Section 1.19 (Individual Participating Class Member Costs) and Section 14.1 conflict in defining recovery of allowable expenses and violates the constitutional right to contract. Section 1.19 defines "Individual Participating Class Member Costs" as "those costs reasonably incurred by a Participating Class Member in connection with the prosecution of a claim relating to an Affected Property." Such reasonable costs should include those incurred by counsel including inspection, photocopies, facsimile, postage/overnight mail, travel/mileage, filing fees, etc. However, Section 14.1 limits recovery of these incurred expenses in connection with the prosecution of the claim to only "reasonable inspection costs". There is no basis to restrict such recovery or to interfere with Bar approved contracts providing for recovery of additional costs.

11.    Plaintiffs have a bodily injury claim for their minor son, Brannon, pursuant to Section 4.7.2 and object to:

   (a)    Any cap on Knauf's responsibility to the "Other Loss Fund" pursuant to Section 4.6.4;

   (b)    The contribution of any funds derived from the Banner Class Settlement into the Remediation Fund to offset responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund";

   (c)    The contribution of any funds derived from the Insurer Class Settlement into the Remediation Fund pursuant to Section 4.6.3 to offset any responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund;

   (d)    Lack of any validated information or representation by the parties providing guidance as to the range of expected recovery for claims pursuant to Section 4.7.2;

   (e)    Sections 4.7.2.3.1 and 4.7.2.7 prohibit any fee or cost recovery for the Plaintiff, even if they prevail on their claim. Instead, because Knauf has the right to contest the claim (see Section 4.7.2.6), Knauf's disparate economic power unfairly places an undue burden on Plaintiffs without the possibility for recovery of valid costs of collection of records, putting forward an expert, and the process of submitting the claim. However, all other Plaintiffs are permitted to recover attorneys fees and costs in some manner. Therefore, this settlement inappropriately and arbitrarily discriminates against bodily injury plaintiffs;

   (f)    Sections 4.7.2.3(a) and 4.7.2.3(b) require a certification that ALL pharmacies and medical providers since January 2005 sign a certification that all records are produced. First, there is no explanation as to what certification is expected or how Plaintiffs could even force such a "certification". Second, there is no "best effort" requirement; instead, this provision as written suggests the failure to obtain a single certification could act as a bar to recovery. Third, there is a conflict in the language between pharmacies and healthcare providers where the certification for pharmacies is that the "production is complete" and for healthcare providers "all such records in the custody, possession or control of the healthcare provider have been produced". There is no explanation or logical reason for the different treatment.

    In the context of the claim of minor, Brannon Willis, there are 13 different health care providers and a pharmacy. The idea that the failure of a single provider or pharmacy to produce the stated certification would operate as a bar to recovery is objectionable.

(g)     Requirement for any expert report pursuant to Section 4.7.2.5: (i) there is no known expert specialty identified which could qualify; (ii) the costs of such are not reimbursable;

(h)     Section 4.7.2.2 requirement for a "contemporaneous diagnosis by the treating physician that the alleged injury was caused by KPT Chinese Drywall", imposing two impossible threshold standards: (i) "contemporaneous", meaning at the time of the first complaint or, alternatively, the term is irreparably vague; (ii) requiring a "treating physician" to diagnosis the injury was caused not just by reactive drywall in general, but specifically by "KPT drywall" and associating with "KPT drywall" "contemporaneous" with the initial diagnosis.

(i)     Lack of any validated information or meaningful representation by the parties providing guidance or estimate as to the range or expected recovery for claims made against the Insurer Class Settlement, and the unfairness of the allocation.

## Settlement Agreement Involving Banner Class Action

Plaintiffs incorporate all previously stated objections to the extent the Banner Class Action Settlement is to be read *in para materia* with other Settlement Agreements.  Plaintiffs further object to:

12.     Any Allocation in which any proceeds of the Banner Class Action Settlement are dedicated to the Remediation Fund before all Approved Claims are fully compensated.

13.     The inability to determine participation in the Settlement Agreement predicated upon poor record keeping of Banner Supply entities.

14.     The failure to provide for recovery of reasonable expenses associated with the prosecution of an individual claim.

## Settlement Agreement in MDL No. 2047 Regarding
## Claims Involving Builders, Installers, Suppliers and Participating Insurers

Plaintiffs incorporate all previously stated objections to the extent the Insurer Settlement Agreement is to be read *in para materia* with other Settlement Agreements.  Plaintiffs further object to:

15.     Any Allocation in which any proceeds of the Banner Class Action Settlement are dedicated to the Remediation Fund before all Approved Claims are fully compensated.

16.     The structure of the settlement agreement.

17.     The failure to provide for recovery of reasonable expenses associated with the prosecution of an individual claim.

Class Member **DOES** intend to appear at the Certification Hearing or Fairness Hearing **WITH** counsel.

**Witnesses intended to be called and subject area of the witnesses' testimony:**

John Willis, Esquire (homeowner, attorney, father of minor son, Brannon)

**Documents to be used or offered into evidence at the Certification Hearing or Fairness Hearing:**

Proposed Settlement documents;
Pleadings;
Objections by other objectors;
Qualifying documents supporting claim by Plaintiffs;
Documents in support of Bodily Injury claims;

_____
John Willis

_____
Lori Willis
6901 NW 117th Avenue
Parkland, Florida 33076
jawillis@aol.com
954-303-3435

_____
Michael J. Ryan, Esquire
Krupnick, Campbell, Malone, et al.
12 S.E. 7 Street
Suite 801
Ft. Lauderdale, FL  33301
(954) 763-8181
FAX (954) 763-8292
mryan@krupnicklaw.com

I hereby certify that a true and correct copy of this objection has been furnished by Fed Ex overnight mail and regular U.S. Mail to:  Arnold Levin, Esquire, Plaintiff's Lead Counsel, Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA  19106 and Kerry Miller, Esquire, Knauf Defendants' Counsel, Frilot, LLC, 1100 Poydras Street, Suite 3700, New Orleans, LA  70163, this _28th_ day of September, 2012.


Michael J. Ryan, Esquire
Krupnick, Campbell, Malone, et al.
12 S.E. 7 Street
Suite 801
Ft. Lauderdale, FL  33301
(954) 763-8181
FAX (954) 763-8292
mryan@krupnicklaw.com

7

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | § § § | MDL NO. 2047 SECTION L |
| | § | |
| THIS DOCUMENT RELATES TO: | § § | JUDGE FALLON MAGISTRATE JUDGE |
| | § | WILKINSON |
| *Silva, et al. v. Interior Exterior Building Supply, LP, et al.* EDLA 09-08030 | § § § | |
| | § | |
| *Silva, et al. v. Arch Insurance Company, et al.* EDLA 09-08034 | § § | |
| | § | |
| *Payton, et al. v. Knauf Gips, KG, et al.* EDLA 09-07628 | § § | |
| | § | |
| *Wiltz, et al. v. Beijing New Building Materals Public Limited Co., et al.* EDLA 2:10-cv-000361 | § § § | |
| | § | |
| *Gross, et al. v. Knauf Gips, KG, et al.* EDLA 2:09-cv-6690 | § § | |
| | § | |
| *Rogers, et al. v. Knauf Gips, KG, et al.* EDLA 2:10-cv-00362 | § § | |
| | § | |
| *Amato, et al. v. Liberty Mutual Ins. Co.* EDLA 2:10-cv-00932 | § § | |
| | § | |
| *Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shangdong Taihe Dongxin Co., Ltd., et al.* EDLA 2:11-cv-080 | § § § § | |
| | § | |
| *Daniel Abreau, et al. v. Gebrueder Knauf* | § | |

1

587054.2

*Verwaltungsgesellschaft, KG, et al.* §
EDLA 2:11-cv-252 §
_____§

## NOTICE OF OBJECTION TO PROPOSED SETTLEMENT OF CLASS ACTION AGAINST BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS

September 27, 2012

**VIA CMRRR**

Mr. Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

**VIA CMRRR**

Mr. Russ M. Herman, Esq.
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

Dear Messrs. Levin and Herman:

In accordance with the Court's Order (1) Setting Consolidated Fairness Hearing, (2) Establishing Coordinated Opt Out, Objection and Briefing Deadlines, and (3) Entering Litigation Stay in Favor of Settling Parties (D.I. 14566 in 2:09-md-02047-EEF-JCW), as well as the Notice of Pendency and Proposed Settlement of Class Action Against Builders, Installers, Suppliers, and Participating Insurers approved by the Court and posted on the Drywall MDL's webpage, http://www.laed.uscourts.gov/Drywall/Settlements.htm, please allow this letter to serve as notice of Perry Homes, LLC's and Perry Homes, a Joint Venture's (collectively, "Perry Homes") notice of intention to object to the Proposed Settlement of Class Action Against Builders, Installers, Suppliers and Participating Insurers (the "Global Settlement") (D.I. 15695-2 in Case No. 2:09-md-02047-EEF-JCW).

2

587054.2

Perry Homes, LLC, is the successor-in-interest to Perry Homes, a Joint Venture. The physical address for Perry Homes, LLC, is 9000 Gulf Freeway, Houston, Texas 77234. The mailing address for Perry Homes, LLC, is P.O. Box 34306, Houston, Texas 77234. The same physical and mailing addresses applied to Perry Homes, a Joint Venture, at the time Perry Homes, LLC, succeeded to its interests. The telephone number for Mr. Brisch, Perry Homes' general counsel, is (713) 948-7841. Perry Homes has direct claims against certain Participating Defendants and Participating Insurers in the Global Settlement, and is also the assignee of all claims, except personal injury claims, of thirteen homeowners whose homes have been determined to contain Knauf Tianjin ("KPT") drywall board. The names and addresses of those homeowners and their affected homes are identified in the spreadsheet enclosed herewith as Exhibit "A." However, Interior/Exterior Building Supply LP provided a more extensive list of additional homes that may have received KPT board. The names of the homeowners for those homes and their potentially affected addresses is enclosed herewith as Exhibit "B." To the best of Perry Homes' knowledge, none of the homes on Exhibit "B" have been determined to contain reactive KPT drywall board, except to the extent those homes are duplicative of the homes identified on Exhibit "A." Perry Homes asserts its objection not only based on the direct claims it has against certain Participating Defendants and Participating Insurers in the Global Settlement, including, but not limited to, claims for contribution, indemnification, or subrogation, but also as the assignee of all claims of the homeowners identified on Exhibit "A," and for any and all claims Perry Homes may have arising from or relating to the subsequent discovery of Chinese Drywall (as that term is defined in Section 1.5 of the Global Settlement) in any of the homes identified on Exhibit "B," including, but not limited to, claims for contribution, indemnification and subrogation.

Perry Homes intends for Mr. York, its undersigned retained counsel, to appear at the Joint Fairness Hearing. At this time, based on the objections stated below, Perry Homes has no intention of calling any witnesses to testify and does not intend to offer any documents except for those documents which have been submitted to the Court in support of the Plaintiff Steering Committee's ("PSC") Motion for Final Approval of, *inter alia*, the Global Settlement, as well as the Global Settlement.

Perry Homes objects to Paragraphs 35 and 36 of the proposed order submitted by the PSC as Exhibit 1 to the Motion for Final Approval (D.I. 15749-4 in Case No. 2:09-md-02047-EEF-JCW). Those paragraphs state:

587054.2

35.   The Court finds that the indemnity, defense and judgment reduction provisions in Sections 4.3 and 5.2.6 of the Global Settlement are valid, binding and enforceable; and therefore, bars the assertion by any Global Settlement Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims.

36.   Any and all Global Settlement Class Members, including, but not limited to, those who have not properly opted out of the Global Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

The Global Settlement defines a "Class Member" as

"all persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant."

*See* Section 1.1.1. Paragraph 35 and 36 of the proposed order, based on their express wording, would bar any Class Member who timely and properly opts out of the Global Settlement from maintaining, continuing, prosecuting, and/or commencing any litigation against any Participating Defendant that arises, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall, including, but not limited to, claims for contribution, indemnification or subrogation.  This bar conflicts with Sections 12.1 and 12.2 of the revised Global Settlement Agreement, which state,

12.1.   As part of the Order and Judgment, the Court shall issue a bar order and permanent injunction against any and all pending or future claims or lawsuits, other than Reserved Claims or assigned claims on Exhibit 4, by any and all Class members **who do not opt-out against the Participating Defendants** and Participating Insurers in connection with claims arising out of, or otherwise related to, Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold, and/or delivered, or alleged in any way to be within the responsibility of any Participating Defendant.

4

587054.2

12.2.   The bar order and permanent injunction shall:

12.2.1.        Except for any Reserved Claims or assigned claims on Exhibit 4, enjoin and forever bar any and all Class Members or any entity or person claiming through a Class Member **who does not opt out** from commencing and/or maintaining any action, and/or asserting **any claim, suit, counterclaim or cross-claim, legal or otherwise**, against the Participating Defendants and Participating Insurers arising out of, or otherwise relating to Chinese Drywall.

12.2.2.        **Except for any Reserved Claims or opt-outs**, bar the assertion by any entity or person against the Participating Defendants and/or Participating Insurers of any contribution, indemnification, subrogation, or other claims concerning (i) Chinese Drywall, the Litigation, CDW-Related Action, Released Claims or Related Claims, or (ii) this Settlement.

Emphasis added.  Paragraphs 35 and 36 likewise conflict with page 8 of the approved notice, which states,

**IF YOU WISH TO PURSUE AN INDIVIDUAL CLAIM AGAINST PARTICIPATING DEFENDANTS OR PARTICIPATING INSURERS BY LITIGATION, ARBITRATION, OR OTHERWISE, YOU MUST OPT OUT; OTHERWISE, IF THE GLOBAL SETTLEMENT IS APPROVED, YOU WILL NOT BE ABLE TO PURSUE CLAIMS AGAINST PARTICIPATING DEFENDANTS OR PARTICIPATING INSURERS ARISING OUT OF, IN ANY MANNER RELATED TO, OR CONNECTED IN ANY WAY WITH CHINESE DRYWALL.**

Perry Homes objects to Paragraphs 35 and 36 and requests the Court modify the proposed order to comport with Sections 12.1 and 12.2 of the Global Settlement to reflect the bar order does not bar any Global Settlement Class Member who timely and properly opts out of the Global Settlement from maintaining, continuing, prosecuting, and/or commencing any litigation against any Participating Defendant that arises, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold, and/or delivered, or alleged in any way to be within the responsibility of any Participating Defendant, including, but not limited to, claims for contribution, indemnification, or subrogation.

Should you have any questions concerning Perry Homes' intent to object to the Global Settlement, please direct them to Perry Homes' counsel, Drew York of Looper Reed & McGraw, P.C., at 1601 Elm Street, Suite 4600, Dallas, Texas 75201, (214) 237-6361 or dyork@lrmlaw.com.

Sincerely,                              Sincerely,

Michael C. Brisch                       Andrew K. York
General Counsel                         Retained Counsel

6

587054.2

**Perry Homes, LLC, Properties Confirmed to Contain Reactive KPT Chinese Drywall**

| Street Address | City, State and Zip Code | Homeowner(s) |
|---|---|---|
| 26819 Shoal Hollow Court | Cypress, Texas 77433 | David and Doris Detweiler |
| 11510 Carson Field Lane | Cypress, Texas 77433 | John and Kellie Tolarski |
| 4823 Mosaic Canyon Court | Humble, Texas 77396 | Mr. & Mrs. Malcolm Frank |
| 12930 Redbud Shores Lane | Houston, Texas 77044 | Ms. Margaret Cotrone |
| 16002 Maple Shores Drive | Houston, Texas 77044 | Mr. & Mrs. Brenton Underwood |
| 15927 Chart House Court | Houston, Texas 77044 | Mr. and Mrs. Tim Sanders |
| 14907 Barton Grove Lane | Humble, Texas 77396 | Ms. Joanna Lewis |
| 14718 Fountain Stone Lane | Humble, Texas 77396 | Ms. Jefferson Bullock |
| 9418 Bearden Creek Lane | Humble, Texas 77396 | Mr. Cam Lu |
| 25738 Beckham Springs Court | Spring, Texas 77373 | Mr. and Mrs. Sergio Lemus |
| 27645 Fairhope Meadow Lane | Kingwood, Texas 77339 | Ms. Susan Williams |
| 518 Summer Trace Lane | Richmond, Texas 77469 | Robert Svoboda and Marciela Navarro |
| 2715 Misty River Lane | Richmond, Texas 77469 | Mr. Stanley Tomlinson |

**EXHIBIT "A"**

Perry Homes, LLC, Properties Confirmed to Contain Reactive KPT Chinese Drywall

| Street Address | City, State and Zip Code | Homeowner(s) |
|---|---|---|
| 26819 Shoal Hollow Court | Cypress, Texas 77433 | David and Doris Detweiler |
| 11510 Carson Field Lane | Cypress, Texas 77433 | John and Kellie Tolarski |
| 4823 Mosaic Canyon Court | Humble, Texas 77396 | Mr. & Mrs. Malcolm Frank |
| 12930 Redbud Shores Lane | Houston, Texas 77044 | Ms. Margaret Cotrone |
| 16002 Maple Shores Drive | Houston, Texas 77044 | Mr. & Mrs. Brenton Underwood |
| 15927 Chart House Court | Houston, Texas 77044 | Mr. and Mrs. Tim Sanders |
| 14907 Barton Grove Lane | Humble, Texas 77396 | Ms. Joanna Lewis |
| 14718 Fountain Stone Lane | Humble, Texas 77396 | Ms. Jefferson Bullock |
| 9418 Bearden Creek Lane | Humble, Texas 77396 | Mr. Cam Lu |
| 25738 Beckham Springs Court | Spring, Texas 77373 | Mr. and Mrs. Sergio Lemus |
| 27645 Fairhope Meadow Lane | Kingwood, Texas 77339 | Ms. Susan Williams |
| 518 Summer Trace Lane | Richmond, Texas 77469 | Robert Svoboda and Marciela Navarro |
| 2715 Misty River Lane | Richmond, Texas 77469 | Mr. Stanley Tomlinson |

EXHIBIT "A"

EXHIBIT B

| STREET ADDRESS | CITY, STATE, ZIP CODE | BUYER NAME |
|---|---|---|
| 4823 MOSAIC CANYON COURT | HUMBLE, TX 77396 | Mr. & Mrs. Malcolm Frank |
| 4802 PARK SQUARE LANE | HUMBLE, TX 77396 | Mr. & Mrs. Donald Williams |
| 9315 CATTAIL GATE COURT | HUMBLE, TX 77396 | Mr. Juan Alvarado |
| 4810 PARK SQUARE LANE | HUMBLE, TX 77396 | Mr. & Mrs. John Butler |
| 4430 PALESTINE COVE LANE | HUMBLE, TX 77396 | Ms. Nelma Jones |
| 9416 BLACK TOOTH WAY | HUMBLE, TX 77396 | Mr. Chris Hines |
| 9447 BLACK TOOTH WAY | HUMBLE, TX 77396 | Mr. Desmond Lee |
| 4806 PARK SQUARE LANE | HUMBLE, TX 77396 | Ms. Lizzie Richmond |
| 9214 DUNE GATE COURT | HUMBLE, TX 77396 | Mr. & Mrs. Enrique Uballe |
| 9318 REFLECTIONS PATH WAY | HUMBLE, TX 77396 | Ms. Laurie Tambellini |
| 4519 EARLY AUTUMN COURT | HUMBLE, TX 77396 | Ms. Crystal Sanchez |
| 9138 RED CASTLE LANE | HUMBLE, TX 77396 | Ms. Kate Edwards |
| 4319 GRANITE PARK WAY | HUMBLE, TX 77396 | Mr. Walter Moreham |
| 4434 SUNLIT PASS LOOP | HUMBLE, TX 77396 | Mr. Michael Knoeller |
| 9130 RED CASTLE LANE | HUMBLE, TX 77396 | B. Jackson |
| 9230 RED CASTLE LANE | HUMBLE, TX 77396 | Ms. Margarita Argueta |
| 422 COLCHESTER LANE | LEAGUE CITY, TX 77573 | Mr. & Mrs. Kenneth Nelson |
| 9827 GLASGOW GREEN | HOUSTON, TX 77089 | Mr. & Mrs. J.C. Siby |
| 9811 KIMBERLY LOCH LANE | HOUSTON, TX 77089 | Ms. Shirley Bain |
| 12519 MELLVILLE DRIVE | HOUSTON, TX 77089 | Owner |
| 10030 LOCH COURTNEY LANE | HOUSTON, TX 77089 | Mr. & Mrs. John Monnat |
| 12514 MELLVILLE DRIVE | HOUSTON, TX 77089 | Ms. Monet Thomas |
| 12510 MOUNT ANDREW | HOUSTON, TX 77089 | Mr. Dao Huynh |
| 709 LAUGHING GULL | TEXAS CITY, TX 77590 | Mr. & Mrs. Kenneth Mills |
| 2211 CAMBRIDGE SHORES LANE | PEARLAND, TX 77584 | Mr. Rodney Quindoy |
| 2207 CAMBRIDGE SHORES LANE | PEARLAND, TX 77584 | Mr. & Mrs. Joseph Hagan |
| 13007 MISTY BAY LANE | PEARLAND, TX 77584 | Mr. & Mrs. Ron Charles |
| 2512 ROCK SHOALS WAY | PEARLAND, TX 77584 | Mr. & Mrs. Alphonse Karlampally |
| 3004 AUBURN CREEK LANE | LEAGUE CITY, TX 77573 | Mr. & Mrs. Scott Cady |
| 3 GARDEN GROVE DRIVE | MANVEL, TX 77578 | Ms. Daneilla Watkins |
| 6 GARDEN GROVE DRIVE | MANVEL, TX 77578 | C. Hodge |
| 29 PALM DESERT DRIVE | MANVEL, TX 77578 | Mr. Bradley Porche |
| 3116 RICHARD LANE | FRIENDSWOOD, TX 77546 | Mr. Daniel Phelps |
| 3234 PRINCE GEORGE DRIVE | FRIENDSWOOD, TX 77546 | Mr. Sirous Rasti |
| 3104 RICHARD LANE | FRIENDSWOOD, TX 77546 | Mr. & Mrs. Elvester Benson |
| 7106 TURTLE MANOR DRIVE | HUMBLE, TX 77346 | Mr. & Mrs. Craig Parham |
| 7022 TURTLE MANOR DRIVE | HUMBLE, TX 77346 | Mr. Tien Troung & Ms. Nguyen |
| 7018 TURTLE MANOR DRIVE | HUMBLE, TX 77346 | Mr. Nelson Flores |
| 7102 TURTLE MANOR DRIVE | HUMBLE, TX 77346 | Mr. Chris O'Dell |
| 14426 WILDWOOD SPRINGS LANE | HOUSTON, TX 77044 | Mr. Sean Gerard |
| 14511 QUIET SUMMER LANE | HOUSTON, TX 77044 | Mr. Joseph Carrier |
| 14522 WILDWOOD SPRINGS LANE | HOUSTON, TX 77044 | Mr. Jacinto Guerrero, Jr. |
| 14507 QUIET SUMMER LANE | HOUSTON, TX 77044 | Mr. & Mrs. James Fenney |
| 13506 SAND MOUNTAIN LANE | HOUSTON, TX 77044 | Ms. Janet Stephens |
| 13506 WILDWOOD SPRINGS COURT | HOUSTON, TX 77044 | Mr. & Mrs. Elwin Collier |
| 13503 SAND MOUNTAIN LANE | HOUSTON, TX 77044 | Mr. Randyhal Pham |
| 14403 QUIET SUMMER LANE | HOUSTON, TX 77044 | Mrs. Monica Crump Baldridge |
| 12903 REDBUD SHORES LANE | HOUSTON, TX 77044 | Ms. Candace Crawford-Cisco |
| 12907 REDBUD SHORES LANE | HOUSTON, TX 77044 | Mr. Jack Bass |
| 12923 REDBUD SHORES LANE | HOUSTON, TX 77044 | Mr. William Hamilton |
| 12930 REDBUD SHORES LANE | HOUSTON, TX 77044 | Ms. Margaret Burke Cotrone |
| 12910 REDBUD SHORES LANE | HOUSTON, TX 77044 | Mr. & Mrs. Antwan Jones |
| 12810 MAINSTAY PLACE LANE | HOUSTON, TX 77044 | Ms. Susan Gerhardt |
| 15814 SHORELINE TERRACE DRIVE | HOUSTON, TX 77044 | Mr. Julio Valladares |
| 12818 MAINSTAY PLACE LANE | HOUSTON, TX 77044 | Mr. Jerry Haygood, Jr. |
| 15910 LOST ANCHOR WAY LANE | HOUSTON, TX 77044 | Mr. Jeffrey Ballard |
| 15823 MOSSY SHORES COURT | HOUSTON, TX 77044 | Mr. Omar Ramirez |
| 15814 FINWOOD LANE | HOUSTON, TX 77044 | Ms. Lauren Oberleas |
| 15818 FINWOOD LANE | HOUSTON, TX 77044 | Mr. & Mrs. James Carsner |
| 13315 LAKE EXCURSION COURT | HOUSTON, TX 77044 | Ms. Terry Candice |
| 16002 MAPLE SHORES DRIVE (M) | HOUSTON, TX 77044 | Mr. Brenton Underwood |
| 15927 CHART HOUSE COURT | HOUSTON, TX 77044 | Mr. & Mrs. Tim Sanders |
| 13707 ELM SHORES DRIVE | HOUSTON, TX 77044 | Mrs. Michelle Wilson |
| 14903 BARTON GROVE LANE | HUMBLE, TX 77396 | Mr. Robert Renfro |
| 14923 BARTON GROVE LANE | HUMBLE, TX 77396 | Mr. Walter Broussard, Jr. |
| 14907 BARTON GROVE LANE | HUMBLE, TX 77396 | Ms. Joanna Lewis |
| 14718 FOUNTAIN STONE LANE | HUMBLE, TX 77396 | Mr. Jefferson Bullock |
| 14931 BARTON GROVE LANE | HUMBLE, TX 77396 | Mr. Guy Guidry |
| 9418 BEARDEN CREEK LANE | HUMBLE, TX 77396 | Mr. Cam Lu |
| 9514 GARNET FALLS LANE | HUMBLE, TX 77396 | Mr. Paul Montgomery |
| 9423 BEARDEN CREEK LANE | HUMBLE, TX 77396 | Mr. & Mrs. Paul Elvis |
| 11823 RAINBOW BRIDGE LANE | HUMBLE, TX 77396 | Mr. & Mrs. James Maybin |
| 17618 SEQUOIA VIEW LANE | HUMBLE, TX 77396 | Mr. Ollie Veloso |
| 12310 GRAND PORTAGE LANE | HUMBLE, TX 77396 | Mr. & Mrs. Hector Garza |
| 17228 KOBUK VALLEY CIRCLE | HUMBLE, TX 77396 | Mr. Winfield Clarke |
| 11510 CARSON FIELD LANE | CYPRESS, TX 77433 | Mr. & Mrs. John Tolarski |
| 26819 SHOAL HOLLOW COURT | CYPRESS, TX 77433 | Mr. & Mrs. David Detweiler |
| 25738 BECKHAM SPRINGS COURT | SPRING, TX 77373 | Mr. & Mrs. Sergio Lemus |
| 25822 AUSTIN SPRINGS | SPRING, TX 77373 | Mr. Randall Allen |
| 907 COLORADO SPRINGS COURT | SPRING, TX 77373 | Mr. Patrick Meehan |
| 18502 PARTNERS VOICE DRIVE | CYPRESS, TX 77433 | Mrs. Jill Crauder-Martinez |
| 18522 PARTNERS VOICE DRIVE | CYPRESS, TX 77433 | Ms. Donna Schmidt |
| 12107 E COLONY SHORE DRIVE | CYPRESS, TX 77433 | Mr. Robert Guthrie |
| 12218 W COLONY SHORE DRIVE | CYPRESS, TX 77433 | Mr. Joseph Tischner |
| 18822 GAIL SHORE DRIVE | CYPRESS, TX 77433 | Ms. Penelope Harris |
| 18628 GAIL SHORE DRIVE | CYPRESS, TX 77433 | Mr. Nathaniel Burleson, Jr. |
| 26894 SQUIRES PARK DRIVE | KINGWOOD, TX 77339 | Mr. Fred Ganjehel |
| 26879 TREASURES RIDGE DRIVE | KINGWOOD, TX 77339 | Mr. Christopher Webb |
| 26878 TREASURES RIDGE DRIVE | KINGWOOD, TX 77339 | Mr. Andres Rodriguez |
| 27645 FAIRHOPE MEADOW LANE | KINGWOOD, TX 77339 | Ms. Susan Williams |
| 27616 FAIRHOPE MEADOW LANE | KINGWOOD, TX 77339 | Mr. Steven Case |
| 26919 ROYAL TIMBERS DRIVE | KINGWOOD, TX 77339 | Mr. Larry Wiswell |
| 26866 SQUIRES PARK DRIVE | KINGWOOD, TX 77339 | Mr. John Jones |
| 26880 MANOR FALLS DRIVE | KINGWOOD, TX 77339 | Mr. Frank Williams |
| 22021 RYE HOLLOW LANE | KINGWOOD, TX 77339 | Mr. Jason Kirchner |
| 9435 BORDEN BLUFF LANE | HOUSTON, TX 77095 | Ms. Angela Wyka |
| 17602 BURKHART RIDGE DRIVE | HOUSTON, TX 77095 | Mr. Stuart Stradford |
| 9815 WAKEFIELD VILLAGE DRIVE | HOUSTON, TX 77095 | Mr. Phuong Pham |

| Address | City, State, Zip | Name |
|---|---|---|
| 9519 WAKEFIELD VILLAGE DRIVE | HOUSTON, TX 77095 | Ms. Charlotte Williams |
| 9410 BORDEN BLUFF LANE | HOUSTON, TX 77095 | Mr. & Mrs. Jesus Contreras |
| 17510 BENDING POST DRIVE | HOUSTON, TX 77095 | Mr. & Mrs. Ramon Zaragoza |
| 6126 STILSON BRANCH LANE | HOUSTON, TX 77092 | Mr. Joseph Villarreal |
| 6103 FULTON MEADOWS LANE | HOUSTON, TX 77092 | Mr. Jesus Garcia |
| 6103 TENTON PARK LANE | HOUSTON, TX 77092 | Ms. Britni Armstrong |
| 6103 GILMAN TRACE LANE | HOUSTON, TX 77092 | Ms. Elizabeth Solomon |
| 6118 LYNWOOD BANKS LANE | HOUSTON, TX 77092 | Mr. David Petty & Ms. Laura Colley |
| 6119 LYNWOOD BANKS LANE | HOUSTON, TX 77092 | Mr. Brian Vincent |
| 6030 STILSON BRANCH LANE | HOUSTON, TX 77092 | Mr. Robert Schulte |
| 6110 TENTON PARK LANE | HOUSTON, TX 77092 | Ms. Amanda Kirkham |
| 6123 TENTON PARK LANE | HOUSTON, TX 77092 | Mr. Henry Passye, Jr. |
| 6119 TENTON PARK LANE | HOUSTON, TX 77092 | Mr. Carl Holley, Jr. |
| 6118 TENTON PARK LANE | HOUSTON, TX 77092 | Ms. Barbette Brown |
| 6122 TENTON PARK LANE | HOUSTON, TX 77092 | Mr. Salvatore Carbonaro |
| 518 SUMMER TRACE LANE | RICHMOND, TX 77469 | Ms. Robert Svoboda |
| 2715 MISTY RIVER LANE | RICHMOND, TX 77469 | Mr. & Mrs. Stanley Tomlinson |
| 5514 WAGON WHEEL LANE | ROSENBERG, TX 77471 | Mr. & Mrs. Gregory Setzer |
| 2618 DIAMOND RIVER DRIVE | ROSENBERG, TX 77471 | Mr. & Mrs. Joe Sebesta |
| 5515 CUNNINGHAM LANE | ROSENBERG, TX 77471 | Mr. Herbert Martin, Jr. |
| 5606 WAGON WHEEL LANE | ROSENBERG, TX 77471 | Ms. Marta Alves |
| 2622 DIAMOND RIVER DRIVE | ROSENBERG, TX 77471 | Ms. Belinda Hughes |
| 2619 WINNER'S COURT | ROSENBERG, TX 77471 | Mr. & Mrs. Steven Saltsman |
| 2615 WINNER'S COURT | ROSENBERG, TX 77471 | Mr. Rumaldo Garcia, Jr. |
| 5618 WAGON WHEEL LANE | ROSENBERG, TX 77471 | Mr. Eddie Smith |
| 5507 CUNNINGHAM LANE | ROSENBERG, TX 77471 | Mr. Daniel Hunsaker |
| 5508 WAGON WHEEL LANE | ROSENBERG, TX 77471 | Mr. & Mrs. Kenneth Woodruff, Jr. |
| 2502 SILVERTON BEND | KATY, TX 77449 | Mr. Roberto Lira |
| 5506 WALNUT GLEN LANE | KATY, TX 77449 | Ms. Shantel Taylor |
| 5607 WAGON WHEEL LANE | KATY, TX 77449 | Mr. & Mrs. Johnathan Meshel |
| 21014 WILDBROOK CANYON COURT | KATY, TX 77449 | Ms. Melissa West |
| 2103 CASTLE GARDENS LANE | KATY, TX 77449 | Ms. Janelle Henderson |
| 2107 CASTLE GARDENS LANE | KATY, TX 77449 | Mr. Monroe |
| 2006 VANDERWILT LANE | KATY, TX 77449 | Ms. Tanya Monroe |
| 20931 BARBONS HEATH COURT | KATY, TX 77449 | Yu Lin Wen |
| 2014 WILDBROOK CANYON LANE | KATY, TX 77449 | Ms. Patricia Hammond |
| 2010 WILDBROOK CANYON LANE | KATY, TX 77449 | Mr. Randal Penney |
| 20942 HAMLET RIDGE LANE | KATY, TX 77449 | Mr. Omar Luna |
| 2207 CASTLE GARDENS LANE | KATY, TX 77449 | Madison Lowe |
| 2102 CASTLE GARDENS LANE | KATY, TX 77449 | Ms. Teresa Gutierrez |
| 2110 PINECREEK PASS LANE | KATY, TX 77449 | Mr. Keith Gonzalez |
| 2106 PINECREEK PASS LANE | KATY, TX 77449 | Ms. Phan Phuong |
| 2114 SHERBROOK PARK LANE | KATY, TX 77449 | Mr. Denny Nguyen |
| 7118 PETTIGREW DRIVE | SUGAR LAND, TX 77479 | Mr. Richard Hughes |
| 1607E WEST DALLAS STREET | HOUSTON, TX 77019 | Mr. Andre De Melo |
| 1605A WEST DALLAS STREET | HOUSTON, TX 77019 | Mr. A. Nigan |
| 1605B WEST DALLAS STREET | HOUSTON, TX 77019 | Ms. K. Miller |
| 1605C WEST DALLAS STREET | HOUSTON, TX 77019 | Mr. Zhiyong Liu |
| 1605D WEST DALLAS STREET | HOUSTON, TX 77019 | Ms. Sarah Crabb |
| 2302 BASTROP STREET | HOUSTON, TX 77004 | Mr. & Mrs. Mark Jordan |
| 2306 BASTROP STREET | HOUSTON, TX 77004 | Ms. Desni Termin |
| 2304 BASTROP STREET | HOUSTON, TX 77004 | Mr. & Mrs. Kofi Gyimah |
| 1611A FRANCIS STREET | HOUSTON, TX 77004 | Mr. & Mrs. Thomas Rhodes Marion |
| 1611B FRANCIS STREET | HOUSTON, TX 77004 | Ms. Mindy Ko |
| 1611C FRANCIS STREET | HOUSTON, TX 77004 | Mr. Chin Tan |

# EXHIBIT 3

Sep 28 2012
01:31PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2047 ) ) |
| _____ | ) SECTION: L ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| ALL CASES | ) JUDGE FALLON ) MAG. JUDGE WILKINSON ) |
| _____ | ) |

## OBJECTIONS TO PROPOSED SETTLEMENT OF CLASS ACTION AGAINST BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS

COMES NOW Wayne Kaplan ("Objector"), member of the putative class, by and through his undersigned counsel, files these Objections To Proposed Settlement Of Class Action Against Builders, Installers, Suppliers And Participating Insurers.

## I.     PARTY STATUS

Wayne Kaplan is a member of the Settlement Class and received the Notice Of Pendency And Proposed Settlement Of Class Action Against Builders, Installers, Suppliers And Participating Insurers ("Class Notice").

## II.    NOTICE OF INTENTION TO APPEAR AND REQUEST TO SPEAK AT THE HEARING

Objector requests that he be allowed to appear in person or through counsel at the final approval hearing to talk about these objections, and to otherwise participate in the final approval hearing.

III.   OBJECTIONS TO THE SETTLEMENT

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Settlements that take place prior to formal class certification, as is the case here, require a higher standard of fairness:

> The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e). ... See also Manual for Complex Litigation §30.45 (3[rd] ed. 1995) ("Approval under Rule 23(e) of settlements involving settlement classes ... requires closer judicial scrutiny than approval of settlements where class certification has been litigated."). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Here, the settlement is not fair, reasonable, or adequate, and Objector objects to the settlement for the following reasons.

**A.      The Class Notice Contains Materially Deficient Disclosures.**

The Class Notice fails to provide sufficient information to allow Class Members to properly evaluate the settlement and their options. In discussing the requisites of adequate notice in class action suits, the 5th Circuit has stated: "Not only must the substantive claims be adequately described but the notice must contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104-1105 (5th Cir. 1977).

Here, the Class Notice fails to disclose what each of the participating defendants and participating insurers are contributing to the Settlement. The Settlement Allocation Plan states only as follows: "[t]he Participating Defendant Funds are expected to be funded roughly as follows: (a) Participating Builders Fund – 40% of the Gross Settlement

Amount; (b) Participating Suppliers Fund – 40% of the Gross Settlement Amount; and (c) Participating Installers Fund – 20% of the Gross Settlement Amount." Further, Class Notice provides absolutely no indication, even a general range, as to what the individual recovery for Class Members will be.

The failure to provide this necessary information precludes Class Members from forming any understanding of what the Settlement means in terms of their recovery. Without being furnished with this information, Class Members cannot make intelligent decisions as to whether or not they would be better served pursuing their claims against the participating defendant and insurer in state court or other venues. As such, Class Members are left without sufficient information to be able to assess the merits of the Settlement.

**B.     The Settlement Fails To Account For Necessary Subclasses.**

The Manual For Complex Litigation says that if significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass.   Manual For Complex Litigation 4th §21.23, p. 272.  The Supreme Court addressed this requirement in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), where it mandated separate class representatives and class counsel for subgroups within the class, even in the settlement context:

> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected.  Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency.  In another asbestos class action, the Second Circuit spoke precisely to this point: "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without

3

creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 742.

The Supreme Court reiterated this rule in *Ortiz*:

> [I]t is obvious after *Amchem* that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel. See *Amchem*, 521 U.S., at 627 (class settlements must provide "structural assurance of fair and adequate representation for the diverse groups and individuals affected"); cf. 5 J. Moore, T. Chorvat, D. Feinbert, R. Marmer, & J. Solovy, Moore's Federal Practice §23.25[5][e], p. 23-149 (3d ed. 1998) (an attorney who represents another class against the same defendant may not serve as class counsel). FN31
> FN31. ... In *Amchem*, we concentrated on the adequacy of named plaintiffs, but we recognized that the adequacy of representation enquiry is also concerned with the "competency and conflicts of class counsel." Id., at 626, n. 20, 117 S.Ct. 2231 ...; see also 5 Moore's Federal Practice §23.25 [3][a] (adequacy of representation concerns named plaintiff and class counsel).

*Ortiz*, 527 U.S. at 856.

Here, subclasses are necessary because Class Members must receive funds according to the specific contributions made by that Class Member's respective builder, installer, and/or supplier to the Settlement Fund. The Settlement, however, fails to account for subclasses amongst the Class Members, and thus fails to properly allocate the funds. Accordingly, the Settlement does not satisfy the adequacy requirements of Rule 23.

**C.    This Settlement Has Been Tied To Other Pending Chinese Drywall Settlements In Such A Way As To Preclude Opt-Outs.**

Due process requires that absent class members be given the opportunity to opt-out of a class action involving money damage claims. [See *Phillips Petroleum Co. v. Shutts*, 105 S.Ct. 2965, 2974, fn. 3 (1985); *Brown v. Ticor Title Ins. Co.* (9th Cir. 1992) 982 F.2d 386, 392 [it violates due process to give res judicata effect to a class action judgment involving money damage claims of class members who had not been afforded opt-out rights]; see also Manual for Complex Litigation, Third, § 30.231 (1995)]. Here, however, the Settlement has been tied to the other proposed Chinese drywall settlements in such a way as to render the "opt-out" provision illusory.

While the Settlement states that there is an opportunity for Class Members to seek exclusion, in practice, this is not true. The Settlement is conditioned on non-Knauf homeowners accepting the Settlement, and releasing downstream defendants. However, Class Members believe that many of these downstream defendants have insurance and assets well in excess of what they are contributing to the Settlement, and as such, Class Members may be better off pursuing these entities in state court.[1] Nevertheless, in order to make an intelligent decision, Class Members must be provided with the exact amount each participating defendant and insurer are contributing to the Settlement.

Class Counsel has made clear that the Settlement will become invalid if too many people opt-out, however has not stated what amount of opt-outs would dismantle the Settlement. Because of the condition that non-Knauf homeowners must accept the Settlement, despite it possibly being in their better financial interests not to do so, Class

---

[1] Indeed in this matter, the amounts each participating defendant and insurer are contributing have not been disclosed leaving the Objector to speculate as to whether or not he would be better off pursuing his case in state court.

Counsel has created a Settlement that puts Knauf homeowners at odds with non-Knauf homeowners who choose to request exclusion.

Further, because Class Counsel created this conflict among Class Members, they cannot adequately represent such Class Members. See *Payne v. Travenol Laboratories, Inc.* (5th Cir. 1982) 673 F.2d 798, 810–811 [to provide adequate representation, the class representative must not seek relief that favors some class members at the expense of others].

Because the Settlement does not actually permit Class Members to opt-out, other than perhaps some minimal, tolerable number, the Settlement is in violation of Fed. Rule Civ. P. 23.

> **D.** **This Settlement Is Unfair, Unreasonable, And Inadequate Because There Is Insufficient Evidence To Support Class Counsel's Requested Attorneys' Fees.**

The amount of the proposed attorneys' fees is an integral element in determining whether the settlement is fair, reasonable, and adequate. "In class actions whose primary objective is to recover money damages, settlements may be negotiated on the basis of a lump sum that covers both class claims and attorney fees. Although there is no bar to such arrangements, the simultaneous negotiation of class relief and attorney fees creates a potential conflict ... The judge can condition approval of the settlement on a separate review of the proposed attorneys' compensation." Manual For Complex Litigation 4th § 21.7, p. 335. Courts have recognized that the class action settlement dynamic itself "creates incentives for collusion – the temptation from the lawyers to agree to a less than optimal settlement 'in exchange for red-carpet treatment on fees.'" *Goldberger v. Integrated Resources, Inc.*, 209 F3d 43, 53 (2nd Cir. 2000).

6

Here, there is inadequate evidence to support the reasonableness of the fee request by Class Counsel, and taking those fees from the already insufficient settlement fund renders the settlement unfair, unreasonable and inadequate.

## IV.   CONCLUSION

Wherefore, Objector prays that the Court deny the proposed settlement, deny certification of the settlement class, deny the requested fees to Class Counsel and grant Objector such other and further relief as to which Objector may be entitled.

Respectfully submitted,

Dated: September 27, 2012

/s/ C. David Durkee, Esq.
ROBERTS & DURKEE, P.A.
Alhambra Towers
Penthouse 1 – Suite 1603
121 Alhambra Plaza
Coral Gables, FL  33134
Phone: (305) 442-1700
Fax: (305) 442-2559
durkee@rdlawnet.com
*Counsel for* Wayne Kaplan

Mark Milstein, Esq.
Paul D. Stevens, Esq.
Allison R. Willett, Esq.
MILSTEIN ADELMAN, LLP
2800 Donald Douglas Loop North
Santa Monica, CA  90405
Phone: (310) 396-9600
Fax: (310) 396-9635
*Counsel for* Wayne Kaplan

7

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED<br>      DRYWALL PRODUCTS LITIGATION | )<br>)<br>)   MDL NO. 2047 |
| Payton, et al. V. Knauf Gips, KG, et al.<br>Case No. 2:09-cv-07628 (E.D. La.) | )<br>)   SECTION L<br>) |
| Gross, et al. V. Knauf Gips, KG, et al.<br>Case No. 2:09-cv-06690 (E.D. La.) | )<br>)   JUDGE FALLON<br>) |
| Rogers, et al. V. Knauf Gips, KG, et al.<br>Case No. 2:10-cv-00362 (E.D. La.) | )   MAGISTRATE<br>)   JUDGE WILKINSON<br>) |
| Abreu, et al. v. Gebrueder Knauf<br>Verwaltungsgesellschaft, KG, et al.<br>Case No. 2:11-cv-00252 (E.D. La.) | )<br>)<br>) |
| Block, et al. V. Gebrueder Knauf<br>Verwaltungsgesellschaft, KG, et al.<br>Case No. 11-cv-1363 (E.D. La.) | )<br>)<br>) |
| Arndt, et al. V. Gebrueder Knauf<br>Verwaltungsgesellschaft, KG, et al.<br>Case No. 11-cv-2349 (E.D. La.) | )<br>)<br>) |
| Cassidy, et al. V. Gebrueder Knauf<br>Verwaltungsgesellschaft, KG, et al.<br>Case No. 11-cv-3023 (E.D. La.) | )<br>)<br>) |
| Vickers, et al. V. Knauf Gips KG, et al.<br>Case No. 2:09-cv-04117 (E.D. La.) | )<br>) |

## OBJECTION TO THE PROPOSED SETTLEMENTS OF CLAIMS AGAINST KNAUF, INEX AND GLOBAL SETTLEMENTS

Comes now the undersigned and putative member of the purported Class Settlements with

the named Knauf Defendants, INEX and the Global Settlement and gives notice of intention to attend

and produce or offer certain evidence in the form of documents or testimony in opposition to the proposed settlements. That the Objector shall have counsel present said evidence and/or argument in opposition.

1.    The Objector hereby gives notice that the following issues or matters that touch or concern the following issues may be raised at the fairness hearing. The general grounds for objection are listed herein below.

2.    That the notice of proposed class settlements are deficient in that they fail to provide adequate facts from which a member of the class can make an informed decision about whether or not to participate.

3.    The proposed settlement requires the member to accept settlements of other related claims that involve builders, suppliers, installers, contractors or others who may be liable to the member, and dismiss or assign claims which are pending in state court and are not brought in the MDL. The members are unable to make an informed decision on opting out or participating in the Settlement prior to the final approval of the INEX, and Global Settlement and referenced future settlements.

4.    The Objector is unable to make an informed decision as to the benefits or detriments of remaining in the settlements or opting out, as these settlements are dependent on the other in some aspects, and no certainty exists that all three settlements will be approved. In the event one or more of these settlements are not approved the Objector's rights would be impaired or could be adversely affected by factors which are not remedied or adequately disclosed in any of the proposed settlements.

5.    The Objector is not adequately advised as to the effect of or proposed terms of any future agreements or settlements referenced in the Knauf or INEX settlements which preclude the

Objector from making an informed decision on whether or not to opt out of or participate in these settlements. There is inadequate information provided as to the rights, liabilities or obligations that may be in these other agreements. For example, in the INEX Settlement, while it references a substantial recovery, the recovery involving excess insurance carriers or reinsurers has not been made and Objector is unable to value his claim, or evaluate benefit or detriment of participating in these settlements

6.     The notice to class members in the Knauf Settlement is generally deficient as it cuts off claims and the ability of absent class members or members who were previously defined as putative class members, from bringing suit or filing a claim in this action, ex post facto with no prior notice or opportunity to file claims.

7.     The Class Notice is otherwise deficient and does not reasonably apprise the Objector of claims he may have against others and claims he/she will be releasing.

8.     The Settlements and Notices do not provide adequate information regarding procedures or guidelines that may be required of a foreclosed home member or lower case Knauf member to make a decision about whether the claims process is going to be overly burdensome, or impose requirements in excess of the evidentiary standard the member would have to meet in other available forums. As a result, an informed decision cannot be made concerning participating or opting out of the Settlements.

9.     The members with lower case Knauf are not provided adequate benefits under the settlement, or are provided no benefits. However, if they opt out, others who may be liable to them, by virtue of other settlements or proposed settlements will pay funds or provide benefits due the member to Knauf or other Defendants. In turn the member is receiving no benefit and releasing all claims, and may even be required to indemnify certain defendants or contributors.

10.     The Objector has not been provided adequate information, guidelines or requirements as to his ability to participate in the "Other Loss Fund" or as to the amount of benefit which may be provided or available.

11.     That the Objector is required to assign all claims, even those pending in State court, to the Settling Defendants, without consideration and is giving up available claims that are made individually against other Defendants that could provide substantial relief, all without valid or inadequate consideration.

12.     The Objector, foreclosed members and lower case members may be liable for deficiencies on mortgages or  for other claims, but no recovery is provided in the Settlement for future liability or depreciation of their homes due to the presence of Chinese drywall.

13.     The Objector alleges that for little or no benefit, the settlements, release or otherwise forfeit potential personal injury claims that may arise in the future,  and which would otherwise be viable claims for which a recovery could be made.  Valid state claims which allow recovery  for personal injuries which would not, or could not be discovered within the five year cutoff in the proposed settlement will be lost, and due to the indemnity and other release language the members may be left without health insurance or a means to recover for those claims.

14.     The foreclosed members are provided no relief for damage to credit or reputation, but would be releasing all responsible parties or assigning all claims to the Defendants, that could provide recovery for  these damages with no adequate consideration or ability to recover.

15.     The foreclosed members are losing valuable property rights and subject to unequal treatment,  in that while they may have the right to redeem their property, they do not have the ability to have their homes remediated and are provided inadequate benefits or means of recovery.

16.     The foreclosed members may be liable for a deficiency caused by the settling

Defendants, with no ability to recover and with no provision protecting them from future claims made against them or the settling defendants for which the Objector may be liable for indemnification.

17.     There are inadequate procedures or guidelines established to prove loss of equity in homes such that an informed decision as to whether to accept settlement benefits or opt out can not be made.

18.     The Objector asserts that in a foreclosure situation, had the home been remediated or money made available for remediation then there may be no lost equity, depreciation or continued damage.

19.     There is no adequate process or procedure established for the foreclosed home member to evaluate the settlement benefits as to how square footage will be determined in foreclosed homes, as the member will not or may not have access to said property.

20.     The Objector states that he and others like him cannot reasonably make a decision to opt out of the settlement as other claims against liable parties may be released, with the Knauf Defendants obtaining the benefit of his recovery, as all claims are required to be assigned to Knauf and pending state court claims dismissed.

21.     The Objector is unable to make an informed decision as to whether or not to opt out of this settlement.  In the event Objector opts out of this settlement, he and others like him may be wholly and completely without remedy, as the settlement protects substantially all assets of the Knauf Defendants and purports to preclude those class members who opt out from recovering from the settling Defendants or related entities if attempts are made to collect from assets that "may be" used to fund the Knauf Settlement.

22.     The Objector asserts, that unlike other states referenced in the settlement documents

or briefs there would be no allocation or apportionment of damages, as Alabama has joint and several liability and does not provide for apportionment of damages.

23.    The Objector and others have been prejudiced and the likelihood for successful litigation results have been greatly reduced or hampered by the terms of the Knauf Settlement in that the Agreement precludes use of discovery obtained in the MDL by those who opt out of this settlement, even though they had been members of the putative class prior to the December 9, 2011. They would now be required to expend substantial sums to duplicate the discovery in the MDL, which is in direct conflict with the rules and purposes of Multi-District Litigation.

24.    The summary notice fails to adequately disclose that substantial assets are protected or shielded from execution for those who opt out or are excluded former putative class members, and that MDL discovery is not available to use in the furtherance of their claims.

25.    That the Objector and others receiving no benefit or inadequate benefits have had destructive testing or inspections performed by the Defendants, or their agents, causing damage and loss of value to their home and for which there is no recovery.

26.    The Knauf Settlement is inadequate that while it allows monies leftover following remediation of some class members homes to be returned to Knauf, while there are inadequate benefits or no benefits paid to other members of the class. Certain lower case Knauf members, are giving up valuable rights and assuming indemnity obligations, but recovering no or inadequate consideration.

27.    That Objector would be unable to opt out of the Global Settlement and INEX Settlement and still be able to recover under the "Other Loss Fund." Further, the class members who are not participating class members such as lower case Knauf members, will not be allowed to recover under the "Other Loss Fund."

28.     That Objector and others with lower case Knauf are unable to appeal the court's decision as to whether or not the drywall is reactive and qualifies the member for benefits.

29.     That Objectors due process and equal protection rights or other state or federal statutory or common law rights would be violated if he opted out due to the agreements' restriction on his rights to attempt and collect any judgment from Knauf or other entities by shielding assets and rights to discovery had in the MDL.

30.     That members of the class are prejudiced if the lower case Knauf is considered KPT board, based on a determination of reactive versus non-reactive. The members whose board is not reactive lose the ability to recover, and are subject to indemnity agreements and other obligations imposed without adequate consideration.

31.     Certain lower case KPT members' benefits under the INEX and Global Settlement potentially go to benefit Knauf, even though those members receive no benefit, but are released and assign all rights and claims for any damages to the Defendants.

32.     The KPT and other settlements release liable parties with no benefit or inadequate benefit conferred on the class members who have been foreclosed or have certain lower case Knauf.

33.     The members' claims in state court are barred or required to be dismissed with inadequate consideration and in violation of comity and policy of Federal hands off state actions or judicial process, and the class members are unable to recover benefits or adequate benefit under the Settlement Agreements.

34.     The Xactimate estimates do not reflect the true measure of damage or cost of remediation, so that Options 2 and 3 under the KPT Settlement are insufficient to compensate the members, and are in effect not viable options.

35.     For Option 1, there is no schedule of when homes would be remediated and the

members are unable to make an informed decision about whether or not to participate in this option.

36.    The members may be required to indemnify KPT for any defective construction done in remediation, even though the remediation is being performed by contractors who are KPT's agents or companies over which KPT reserves the right of control.

37.    There is no method or manner to reasonably determine the benefits available under the Settlements for mixed drywall homes, because it is unreasonable to inspect each piece of sheetrock prior to its removal during remediation and the member would not know if they are qualified for benefits in time to make a decision on opting out or participating.

38.    The multi-unit owners are prejudiced in that, at this time there is no way to determine the benefit they will receive or detriment that would be imposed by the Settlements as certain claims will be allowed or disallowed based on a determination by a contractor, in their sole discretion with no right of appeal and inadequate judicial oversight.

39.    The multi-unit owners may appear on the face of the Notice and Settlement to be class members receiving benefits, but may not be able to recover the benefits proposed if during remediation or some later date there is a non-judicial determination that they do not qualify in violation of their due process and equal protection rights or other state and federal rights.

40.    The provisions regarding benefits to multi-unit owners violates and conflicts with state laws where statutes specify what rights and obligations a multi-unit owner has and what right and obligation a homeowner's association has.

41.    In order to qualify for benefits there must be an inspection and determination of corrosion and other factors not disclosed or communicated to members of the class in the class definition or notice.

42.    The foreclosed members whose home was foreclosed on or after the effective date

of the Settlement are barred from collecting lost equity, being punished for holding on and trying to pay their mortgages, but would still be releasing claims and bound by indemnity provisions with inadequate consideration or notice.

43.     The Objector may adopt or pursue objections or issues raised by others to these settlements or related settlements.

44.     The Objector does not intend to call any witnesses on his own behalf other than those needed for rebuttal. However, the Objector would expect to cross examine or call those persons who provide evidence or documents concerning these settlements, that are called, or provide evidence by or at the request of class counsel, defense counsel or others who submit evidence related to these settlements.

45.     The Objector would plan to offer any and all pleadings, depositions or discovery used in support of or in opposition to these Settlements, or which was taken or otherwise had in any action in this MDL or related actions and any documents needed for rebuttal.

46.     That no specific time was given for objections to requests which may be made for attorney fee awards to the PSC or Common Benefit awards. The Objector, in an abundance of caution, raises generally the objections set out below and reserves his right to amend or withdraw this objection at a later date.

    A)     That the members are unable to determine what fees or expenses they may be liable for at this time, due to the relief proposed for attorney fees and expenses, and these requests interfere or may interfere with the right to contract under state or federal laws, due process or equal protection.

    B)     That there is a provision proposed which would foreclose or do away with Objector's

9

rights to appeal any attorney fee award or ruling made by this Honorable Court, and the member at this time cannot determine what fees or expenses may be requested.

C)     The Common Benefit award,   expense award or final request may impair or otherwise damage the Objector.   Absent a final request, the member is unable to make an informed decision to opt out or participate in these Settlements.   The potential liabilities or benefits are not provided with adequate specificity, which could interfere with the enforcement or oversight of counsel if these settlements are finally approved.   There does not appear to be any provision for fees that would or could be incurred in the future, if all provisions of the settlement are not completed or issues of enforcement, warranty claims or interpretation of the settlement occur.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

My name is ___Daniel C. Ladner___. My phone number is ___504-460-6963___ and my address is ___42 Audubon place Picayune MS 39466___

I am represented by Counsel K. Edward Sexton, II and Eric D. Hoaglund.

This notice has been mailed to the following:

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106

Russ M. Herman, Esq.
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113

Richard G. Duplantier, Esq.
Galloway, Johnson, Tompkins,
      Burr & Smith
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139

Kerry J. Miller, Esq.
Frilot, LLC
1100 Poydras Street
Suite 3700
New Orleans, Louisiana 70163

as required by this Court's Order.

Signed this the ___28___ day of ___September 2012___.

_____
Objector

_____
Objector

_____
K. Edward Sexton, II, Esq.

_____
Eric D. Hoaglund , Esq.

# EXHIBIT 5

**Jim Berretta**

| | |
|---|---|
| **From:** | "Jim Berretta" <beatman@knology.net> |
| **To:** | "Jim Berretta" <beatman@knology.net> |
| **Sent:** | Friday, September 28, 2012 10:41 AM |
| **Subject:** | Re: Objection Letter |

*In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047;

James Berretta
2580 Sea Wind Way
Clearwater, Fl 33763
beatman@knology.net
727-741-2195

Dear Judge Fallon,

My name is James Berretta and I am typing this letter in objection to part of the global settlement that I feel very strongly about. My objection is the distribution percentage of the claims funds which is 95% to remediation and only 5% to personal injury. I do not believe this to be a fair allocation. I will do my best to stay on point and concise as possible but I do feel that I need to explain my situation in some detail to better underline why I'm objecting to the percentages in the first place. My reasoning is as follows :

I moved into my townhouse in December of 2006. This was my first purchase ever of a home and it was a very exciting time but less than a month later that exciting time turned into the worst time of my entire life. I went to my doctors for ear pain and he gave me antibiotics thinking it was and ear infection. A couple of days later I ended up in the emergency room(It was Christmas time and the doctors office was closed) because the pain was so severe. They diagnosed it as bullous myringitis which were blisters that grew on the ear drum. Coincidently as I was waiting for them to write the prescription I noticed that I was having trouble closing my left eye. I then found out that I had what they believed to be the onset of Bells Palsy. Hours later the paralysis on the left side of my face was taking place. They gave me ear drops, eye drops, steroids and a couple of other medicines to to fight it. I had to wear a patch over my eye when I slept so debris wouldn't fly in it because it wouldn't close. A week went by and everyday I was in such severe pain that laying my head on a pillow was excruciating, so I went back to the emergency room. They said I should not be experiencing that pain with Bells Palsy so they gave me a CT scan of my head. I was 37 at the time and I had never had to go to the hospital my entire life. As I lay down to get scanned all that ran through my head was that I must have some form of brain cancer. I was expecting the worst when the doctor came to read the results. He told me you don't have brain cancer but what you DO have is Ramsey Hunt Syndrome, a rare neurological disorder characterized by paralysis of the facial nerve (facial palsy) and a rash affecting the ear or mouth.

The pain gradually subsided over the next couple of months and thankfully I fully recovered my facial movements. But as the next few years went by I found myself frequently visiting my primary doctor and then other specialists for a multitude of symptoms such as skin rashes, bloody noses, headaches, breathing issues, chest tightness, sensitivity to light, sensitivity to sound, loose stools and prostatitis among others. Here I was an otherwise healthy person before I moved into the townhouse and then a few weeks later my health just changed what seemed instantly for the worse. At the height of my problems dizziness and nausea were at the forefront. If you can only imagine being a musician and a drum instructor what it felt like to feel even more dizzy and nauseated when the drums were being hit. I was put through a number of diagnostic testings from my staff of doctors to figure out what was going on and finally was advised to go to Douglas Terzigni, an onstaff neurologist at the Diagnostic Clinic here in the Tampa Bay area. An MRI showed normal brain patterns however it also showed a moderate mucosal thickening and a small fluid level within the floor of the left maxillary sinus. There also showed to be a mild bilateral ethmoid sinus mucosal thickening, greater on the left. The fluid was bouncing around in my head more with sound vibrations which gave me more dizziness and nausea at my work. This proved to be a very difficult time as I had to ease back my lessons and gigs during the really bad times which financially burdened me. However, I just fought through it most of the time because I couldn't afford to stop my income. The financial burden of just medical in those past couple of years was well over $5,000 out of my pocket and that was with my health insurance.

9/28/2012

I was very diligent at keeping my receipts and have all the extensive medical records dating back from the time I moved into the house.

It was around this time in 2011 that I had an inspection of my house that revealed I had mass amounts of chinese drywall that I had been living with for over the past four years. When I moved out of the house, I did notice that certain symptoms gradually faded away. Most thankfully the dizziness and nausea which enabled me to do my job effectively again. But my body, especially my immune system, has not been the same since this whole ordeal. This was not what I had expected for my first home purchase.

In closing, with the time I spent going from doctor to doctor, the financial burden and especially the lower quality of life experienced, I without a doubt object to a 5% personal injury allocation. I hope that sharing my own personal experience will influence the decision of raising the percentage allocated to personal injury to a more fair level for myself and others in the class who have endured milder to even more severe symptoms. I hope this letter will show that personal injury from Chinese Drywall IS something that shoud be taken more notice of and that this letter in some way will make a difference.

Respectfully Yours,

James Berretta

9/28/2012

# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---

IN RE: CHINESE MANUFACTURED
    DRYWALL PRODUCTS LITIGATION    )

    )    MDL NO. 2047

Payton, et al. V. Knauf Gips, KG, et al.    )

Case No. 2:09-cv-07628 (E.D. La.)    )    SECTION L

    )

Gross, et al. V. Knauf Gips, KG, et al.    )    JUDGE FALLON

Case No. 2:09-cv-06690 (E.D. La.)    )

    )    MAGISTRATE

Rogers, et al. V. Knauf Gips, KG, et al.    )    JUDGE WILKINSON

Case No. 2:10-cv-00362 (E.D. La.)    )

    )

Abreu, et al. v. Gebrueder Knauf    )

Verwaltungsgesellschaft, KG, et al.    )

Case No. 2:11-cv-00252 (E.D. La.)    )

    )

Block, et al. V. Gebrueder Knauf    )

Verwaltungsgesellschaft, KG, et al.    )

Case No. 11-cv-1363 (E.D. La.)    )

    )

Arndt, et al. V. Gebrueder Knauf    )

Verwaltungsgesellschaft, KG, et al.    )

Case No. 11-cv-2349 (E.D. La.)    )

    )

Cassidy, et al. V. Gebrueder Knauf    )

Verwaltungsgesellschaft, KG, et al.    )

Case No. 11-cv-3023 (E.D. La.)    )

    )

Vickers, et al. V. Knauf Gips KG, et al.    )

Case No. 2:09-cv-04117 (E.D. La.)    )

## OBJECTION TO THE PROPOSED SETTLEMENTS OF CLAIMS AGAINST KNAUF, INEX AND GLOBAL SETTLEMENTS

Comes now the undersigned and putative member of the purported Class Settlements with

the named Knauf Defendants, INEX and the Global Settlement and gives notice of intention to attend

and produce or offer certain evidence in the form of documents or testimony in opposition to the proposed settlements. That the Objector shall have counsel present said evidence and/or argument in opposition.

1.      The Objector hereby gives notice that the following issues or matters that touch or concern the following issues may be raised at the fairness hearing. The general grounds for objection are listed herein below.

2.      That the notice of proposed class settlements are deficient in that they fail to provide adequate facts from which a member of the class can make an informed decision about whether or not to participate.

3.      The proposed settlement requires the member to accept settlements of other related claims that involve builders, suppliers, installers, contractors or others who may be liable to the member, and dismiss or assign claims which are pending in state court and are not brought in the MDL. The members are unable to make an informed decision on opting out or participating in the Settlement prior to the final approval of the INEX, and Global Settlement and referenced future settlements.

4.      The Objector is unable to make an informed decision as to the benefits or detriments of remaining in the settlements or opting out, as these settlements are dependent on the other in some aspects, and no certainty exists that all three settlements will be approved. In the event one or more of these settlements are not approved the Objector's rights would be impaired or could be adversely affected by factors which are not remedied or adequately disclosed in any of the proposed settlements.

5.      The Objector is not adequately advised as to the effect of or proposed terms of any future agreements or settlements referenced in the Knauf or INEX settlements which preclude the Objector from making an informed decision on whether or not to opt out of or participate in these settlements.  There is inadequate information provided as to the rights, liabilities or obligations that may be in these other agreements.  For example, in the INEX Settlement, while it references a substantial recovery, the recovery involving excess insurance carriers or reinsurers has not been made and Objector is unable to value his claim, or evaluate benefit or detriment of participating in these settlements.

6.      The notice to class members in the Knauf Settlement  is generally deficient as it cuts off claims and the ability of absent class members or members who were previously defined as putative class members,  from bringing suit or filing a claim in this action, ex post facto  with no prior notice or opportunity to file claims.

7.      The Class Notice is otherwise deficient and does not reasonably apprise the Objector of claims he may have against others and claims he/she will be releasing.

8.      The Settlements and Notices do not provide adequate information regarding procedures or guidelines that may be required of a foreclosed home member or lower case Knauf member to make a decision about whether the claims process is going to be overly burdensome, or impose requirements in  excess of the evidentiary standard the member would have to meet in other available forums.  As a result, an informed decision cannot be made concerning participating or opting out of the Settlements.

9.      The members with lower case Knauf are not provided adequate benefits under the settlement, or are provided no benefits.  However,  if they opt out, others who may be liable to them,

3

by virtue of other settlements or proposed settlements will pay funds or provide benefits due the member to Knauf or other Defendants. In turn the member is receiving no benefit and releasing all claims, and may even be required to indemnify certain defendants or contributors.

10.    The Objector has not been provided adequate information, guidelines or requirements as to his ability to participate in the "Other Loss Fund" or as to the amount of benefit which may be provided or available.

11.    That the Objector is required to assign all claims, even those pending in State court, to the Settling Defendants, without consideration and is giving up available claims that are made individually against other Defendants that could provide substantial relief, all without valid or inadequate consideration.

12.    The Objector, foreclosed members and lower case members may be liable for deficiencies on mortgages or for other claims, but no recovery is provided in the Settlement for future liability or depreciation of their homes due to the presence of Chinese drywall.

13.    The Objector alleges that for little or no benefit, the settlements, release or otherwise forfeit potential personal injury claims that may arise in the future, and which would otherwise be viable claims for which a recovery could be made. Valid state claims which allow recovery for personal injuries which would not, or could not be discovered within the five year cutoff in the proposed settlement will be lost, and due to the indemnity and other release language the members may be left without health insurance or a means to recover for those claims.

14.    The foreclosed members are provided no relief for damage to credit or reputation, but would be releasing all responsible parties or assigning all claims to the Defendants, that could provide recovery for these damages with no adequate consideration or ability to recover.

15.     The foreclosed members are losing valuable property rights and subject to unequal treatment, in that while they may have the right to redeem their property, they do not have the ability to have their homes remediated and are provided inadequate benefits or means of recovery.

16.     The foreclosed members may be liable for a deficiency caused by the settling Defendants, with no ability to recover and with no provision protecting them from future claims made against them or the settling defendants for which the Objector may be liable for indemnification.

17.     There are inadequate procedures or guidelines established to prove loss of equity in homes such that an informed decision as to whether to accept settlement benefits or opt out can not be made.

18.     The Objector asserts that in a foreclosure situation, had the home been remediated or money made available for remediation then there may be no lost equity, depreciation or continued damage.

19.     There is no adequate process or procedure established for the foreclosed home member to evaluate the settlement benefits as to how square footage will be determined in foreclosed homes, as the member will not or may not have access to said property.

20.     The Objector states that he and others like him cannot reasonably make a decision to opt out of the settlement as other claims against liable parties may be released, with the Knauf Defendants obtaining the benefit of his recovery, as all claims are required to be assigned to Knauf and pending state court claims dismissed.

21.     The Objector is unable to make an informed decision as to whether or not to opt out of this settlement. In the event Objector opts out of this settlement, he and others like him may be

wholly and completely without remedy, as the settlement protects substantially all assets of the Knauf Defendants and purports to preclude those class members who opt out from recovering from the settling Defendants or related entities if attempts are made to collect from assets that "may be" used to fund the Knauf Settlement.

22.     The Objector asserts, that unlike other states referenced in the settlement documents or briefs there would be no allocation or apportionment of damages, as Alabama has joint and several liability and does not provide for apportionment of damages.

23.     The Objector and others have been prejudiced and the likelihood for successful litigation results have been greatly reduced or hampered by the terms of the Knauf Settlement in that the Agreement precludes use of discovery obtained in the MDL by those who opt out of this settlement, even though they had been members of the putative class prior to the December 9, 2011. They would now be required to expend substantial sums to duplicate the discovery in the MDL, which is in direct conflict with the rules and purposes of Multi-District Litigation.

24.     The summary notice fails to adequately disclose that substantial assets are protected or shielded from execution for those who opt out or are excluded former putative class members, and that MDL discovery is not available to use in the furtherance of their claims.

25.     That the Objector and others receiving no benefit or inadequate benefits have had destructive testing or inspections performed by the Defendants, or their agents, causing damage and loss of value to their home and for which there is no recovery.

26.     The Knauf Settlement is inadequate that while it allows monies leftover following remediation of some class members homes to be returned to Knauf, while there are inadequate benefits or no benefits paid to other members of the class. Certain lower case Knauf members, are

giving up valuable rights and assuming indemnity obligations, but recovering no or inadequate consideration.

27.     That Objector would be unable to opt out of the Global Settlement and INEX Settlement and still be able to recover under the "Other Loss Fund." Further, the class members who are not participating class members such as lower case Knauf members, will not be allowed to recover under the "Other Loss Fund."

28.     That Objector and others with lower case Knauf are unable to appeal the court's decision as to whether or not the drywall is reactive and qualifies the member for benefits.

29.     That Objectors due process and equal protection rights or other state or federal statutory or common law rights would be violated if he opted out due to the agreements' restriction on his rights to attempt and collect any judgment from Knauf or other entities by shielding assets and rights to discovery had in the MDL.

30.     That members of the class are prejudiced if the lower case Knauf is considered KPT board, based on a determination of reactive versus non-reactive. The members whose board is not reactive lose the ability to recover, and are subject to indemnity agreements and other obligations imposed without adequate consideration.

31.     Certain lower case KPT members' benefits under the INEX and Global Settlement potentially go to benefit Knauf, even though those members receive no benefit, but are released and assign all rights and claims for any damages to the Defendants.

32.     The KPT and other settlements release liable parties with no benefit or inadequate benefit conferred on the class members who have been foreclosed or have certain lower case Knauf.

7

33.     The members' claims in state court are barred or required to be dismissed with inadequate consideration and in violation of comity and policy of Federal hands off state actions or judicial process, and the class members are unable to recover benefits or adequate benefit under the Settlement Agreements.

34.     The Xactimate estimates do not reflect the true measure of damage or cost of remediation, so that Options 2 and 3 under the KPT Settlement are insufficient to compensate the members, and are in effect not viable options.

35.     For Option 1, there is no schedule of when homes would be remediated and the members are unable to make an informed decision about whether or not to participate in this option.

36.     The members may be required to indemnify KPT for any defective construction done in remediation, even though the remediation is being performed by contractors who are KPT's agents or companies over which KPT reserves the right of control.

37.     There is no method or manner to reasonably determine the benefits available under the Settlements for mixed drywall homes, because it is unreasonable to inspect each piece of sheetrock prior to its removal during remediation and the member would not know if they are qualified for benefits in time to make a decision on opting out or participating.

38.     The multi-unit owners are prejudiced in that, at this time there is no way to determine the benefit they will receive or detriment that would be imposed by the Settlements as certain claims will be allowed or disallowed based on a determination by a contractor, in their sole discretion with no right of appeal and inadequate judicial oversight.

39.     The multi-unit owners may appear on the face of the Notice and Settlement to be class members receiving benefits, but may not be able to recover the benefits proposed if during

8

remediation or some later date there is a non-judicial determination that they do not qualify in violation of their due process and equal protection rights or other state and federal rights.

40.      The provisions regarding benefits to multi-unit owners violates and conflicts with state laws where statutes specify what rights and obligations a multi-unit owner has and what right and obligation a homeowner's association has.

41.      In order to qualify for benefits there must be an inspection and determination of corrosion and other factors not disclosed or communicated to members of the class in the class definition or notice.

42.      The foreclosed members whose home was foreclosed on or after the effective date of the Settlement are barred from collecting lost equity, being punished for holding on and trying to pay their mortgages, but would still be releasing claims and bound by indemnity provisions with inadequate consideration or notice.

43.      The Objector  may adopt or pursue objections or issues raised by others to these settlements or related settlements.

44.      The Objector does not intend to call any witnesses on his own behalf other than those needed for rebuttal.  However, the Objector would expect to cross examine or call those persons who provide evidence or documents concerning these settlements, that are called, or provide evidence by or at the request of class counsel, defense counsel or others who submit evidence related to these settlements.

45.      The Objector would plan to offer any and all pleadings, depositions or discovery used in support of or in opposition to these Settlements, or which was taken or otherwise had in any action in this MDL or related actions and any documents needed for rebuttal.

46.     That no specific time was given for objections to requests which may be made for attorney fee awards to the PSC or Common Benefit awards.  The Objector, in an abundance of caution, raises generally the objections set out below and reserves his right to amend or withdraw this objection at a later date.

A)     That the members are unable to determine what fees or expenses they may be liable for at this time, due to the relief proposed for attorney fees and expenses, and these requests interfere or may interfere with the right to contract under state or federal laws, due process or equal protection.

B)     That there is a provision proposed which would foreclose or do away with Objector's rights to appeal any attorney fee award or ruling made by this Honorable Court, and the member at this time cannot determine what fees or expenses may be requested.

C)     The Common Benefit award,  expense award or final request may impair or otherwise damage the Objector.  Absent a final request, the member is unable to make an informed decision to opt out or participate in these Settlements.  The potential liabilities or benefits are not provided with adequate specificity, which could interfere with the enforcement or oversight of counsel if these settlements are finally approved.  There does not appear to be any provision for fees that would or could be incurred in the future, if all provisions of the settlement are not completed or issues of enforcement, warranty claims or interpretation of the settlement occur.


**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

10

My name is Trevis Amerson. My phone number is 205-903-7317 and my current address is 4000 Walnut Avenue, SW, Birmingham, Alabama 35221. The address of the property damaged by Knauf Chinese Drywall is 3415 Jeanne Lane, Hueytown, Alabama. I am represented by Counsel K. Edward Sexton, II and Eric D. Hoaglund.

This notice has been mailed to Arnold Levin and Kerry Miller as required by this Court's Order.

Signed this the 27 day of SEPTEMBER , 2012.


_____
Trevis Amerson
Objector

_____
Eric D. Hoaglund
K. Edward Sexton, II
Attorneys for Trevis Amerson

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 28, 2012, a true and correct copy of the foregoing was

mailed via U.S. Postal Service, postage prepaid, to the following:


Arnold Levin, Esq.                          Russ M. Herman, Esq.
Levin, Fishbein, Sedran & Berman            Herman, Herman & Katz, LLP
510 Walnut Street, Suite 500                820 O'Keefe Avenue
Philadelphia, Pennsylvania 19106            New Orleans, Louisiana 70113


_____
COUNSEL

12

# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

---

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED<br>     DRYWALL PRODUCTS LITIGATION | )<br>)   **MDL NO. 2047** |
| **Payton, et al. V. Knauf Gips, KG, et al.**<br>**Case No. 2:09-cv-07628 (E.D. La.)** | )<br>)   **SECTION L**<br>) |
| **Gross, et al. V. Knauf Gips, KG, et al.**<br>**Case No. 2:09-cv-06690 (E.D. La.)** | )<br>)   **JUDGE FALLON**<br>) |
| **Rogers, et al. V. Knauf Gips, KG, et al.**<br>**Case No. 2:10-cv-00362 (E.D. La.)** | )   **MAGISTRATE**<br>)   **JUDGE WILKINSON**<br>) |
| **Abreu, et al. v. Gebrueder Knauf**<br>**Verwaltungsgesellschaft, KG, et al.**<br>**Case No. 2:11-cv-00252 (E.D. La.)** | )<br>)<br>) |
| **Block, et al. V. Gebrueder Knauf**<br>**Verwaltungsgesellschaft, KG, et al.**<br>**Case No. 11-cv-1363 (E.D. La.)** | )<br>)<br>) |
| **Arndt, et al. V. Gebrueder Knauf**<br>**Verwaltungsgesellschaft, KG, et al.**<br>**Case No. 11-cv-2349 (E.D. La.)** | )<br>)<br>) |
| **Cassidy, et al. V. Gebrueder Knauf**<br>**Verwaltungsgesellschaft, KG, et al.**<br>**Case No. 11-cv-3023 (E.D. La.)** | )<br>)<br>) |
| **Vickers, et al. V. Knauf Gips KG, et al.**<br>**Case No. 2:09-cv-04117 (E.D. La.)** | )<br>) |

## OBJECTION TO THE PROPOSED SETTLEMENTS OF CLAIMS AGAINST KNAUF, INEX AND GLOBAL SETTLEMENTS

Comes now the undersigned and putative member of the purported Class Settlements with

the named Knauf Defendants, INEX and the Global Settlement and gives notice of intention to attend

and produce or offer certain evidence in the form of documents or testimony in opposition to the proposed settlements. That the Objector shall have counsel present said evidence and/or argument in opposition.

1.     The Objector hereby gives notice that the following issues or matters that touch or concern the following issues may be raised at the fairness hearing. The general grounds for objection are listed herein below.

2.     That the notice of proposed class settlements are deficient in that they fail to provide adequate facts from which a member of the class can make an informed decision about whether or not to participate.

3.     The proposed settlement requires the member to accept settlements of other related claims that involve builders, suppliers, installers, contractors or others who may be liable to the member, and dismiss or assign claims which are pending in state court and are not brought in the MDL. The members are unable to make an informed decision on opting out or participating in the Settlement prior to the final approval of the INEX, and Global Settlement and referenced future settlements.

4.     The Objector is unable to make an informed decision as to the benefits or detriments of remaining in the settlements or opting out, as these settlements are dependent on the other in some aspects, and no certainty exists that all three settlements will be approved. In the event one or more of these settlements are not approved the Objector's rights would be impaired or could be adversely affected by factors which are not remedied or adequately disclosed in any of the proposed settlements.

5.     The Objector is not adequately advised as to the effect of or proposed terms of any future agreements or settlements referenced in the Knauf or INEX settlements which preclude the Objector from making an informed decision on whether or not to opt out of or participate in these settlements. There is inadequate information provided as to the rights, liabilities or obligations that may be in these other agreements. For example, in the INEX Settlement, while it references a substantial recovery, the recovery involving excess insurance carriers or reinsurers has not been made and Objector is unable to value his claim, or evaluate benefit or detriment of participating in these settlements.

6.     The notice to class members in the Knauf Settlement is generally deficient as it cuts off claims and the ability of absent class members or members who were previously defined as putative class members, from bringing suit or filing a claim in this action, ex post facto with no prior notice or opportunity to file claims.

7.     The Class Notice is otherwise deficient and does not reasonably apprise the Objector of claims he may have against others and claims he/she will be releasing.

8.     The Settlements and Notices do not provide adequate information regarding procedures or guidelines that may be required of a foreclosed home member or lower case Knauf member to make a decision about whether the claims process is going to be overly burdensome, or impose requirements in excess of the evidentiary standard the member would have to meet in other available forums. As a result, an informed decision cannot be made concerning participating or opting out of the Settlements.

9.     The members with lower case Knauf are not provided adequate benefits under the settlement, or are provided no benefits. However, if they opt out, others who may be liable to them,

by virtue of other settlements or proposed settlements will pay funds or provide benefits due the member to Knauf or other Defendants. In turn the member is receiving no benefit and releasing all claims, and may even be required to indemnify certain defendants or contributors.

10.    The Objector has not been provided adequate information, guidelines or requirements as to his ability to participate in the "Other Loss Fund" or as to the amount of benefit which may be provided or available.

11.    That the Objector is required to assign all claims, even those pending in State court, to the Settling Defendants, without consideration and is giving up available claims that are made individually against other Defendants that could provide substantial relief, all without valid or inadequate consideration.

12.    The Objector, foreclosed members and lower case members may be liable for deficiencies on mortgages or for other claims, but no recovery is provided in the Settlement for future liability or depreciation of their homes due to the presence of Chinese drywall.

13.    The Objector alleges that for little or no benefit, the settlements, release or otherwise forfeit potential personal injury claims that may arise in the future, and which would otherwise be viable claims for which a recovery could be made. Valid state claims which allow recovery for personal injuries which would not, or could not be discovered within the five year cutoff in the proposed settlement will be lost, and due to the indemnity and other release language the members may be left without health insurance or a means to recover for those claims.

14.    The foreclosed members are provided no relief for damage to credit or reputation, but would be releasing all responsible parties or assigning all claims to the Defendants, that could provide recovery for these damages with no adequate consideration or ability to recover.

15.     The foreclosed members are losing valuable property rights and subject to unequal treatment, in that while they may have the right to redeem their property, they do not have the ability to have their homes remediated and are provided inadequate benefits or means of recovery.

16.     The foreclosed members may be liable for a deficiency caused by the settling Defendants, with no ability to recover and with no provision protecting them from future claims made against them or the settling defendants for which the Objector may be liable for indemnification.

17.     There are inadequate procedures or guidelines established to prove loss of equity in homes such that an informed decision as to whether to accept settlement benefits or opt out can not be made.

18.     The Objector asserts that in a foreclosure situation, had the home been remediated or money made available for remediation then there may be no lost equity, depreciation or continued damage.

19.     There is no adequate process or procedure established for the foreclosed home member to evaluate the settlement benefits as to how square footage will be determined in foreclosed homes, as the member will not or may not have access to said property.

20.     The Objector states that he and others like him cannot reasonably make a decision to opt out of the settlement as other claims against liable parties may be released, with the Knauf Defendants obtaining the benefit of his recovery, as all claims are required to be assigned to Knauf and pending state court claims dismissed.

21.     The Objector is unable to make an informed decision as to whether or not to opt out of this settlement. In the event Objector opts out of this settlement, he and others like him may be

wholly and completely without remedy, as the settlement protects substantially all assets of the Knauf Defendants and purports to preclude those class members who opt out from recovering from the settling Defendants or related entities if attempts are made to collect from assets that "may be" used to fund the Knauf Settlement.

22.     The Objector asserts, that unlike other states referenced in the settlement documents or briefs there would be no allocation or apportionment of damages, as Alabama has joint and several liability and does not provide for apportionment of damages.

23.     The Objector and others have been prejudiced and the likelihood for successful litigation results have been greatly reduced or hampered by the terms of the Knauf Settlement in that the Agreement precludes use of discovery obtained in the MDL by those who opt out of this settlement, even though they had been members of the putative class prior to the December 9, 2011. They would now be required to expend substantial sums to duplicate the discovery in the MDL, which is in direct conflict with the rules and purposes of Multi-District Litigation.

24.     The summary notice fails to adequately disclose that substantial assets are protected or shielded from execution for those who opt out or are excluded former putative class members, and that MDL discovery is not available to use in the furtherance of their claims.

25.     That the Objector and others receiving no benefit or inadequate benefits have had destructive testing or inspections performed by the Defendants, or their agents, causing damage and loss of value to their home and for which there is no recovery.

26.     The Knauf Settlement is inadequate that while it allows monies leftover following remediation of some class members homes to be returned to Knauf, while there are inadequate benefits or no benefits paid to other members of the class. Certain lower case Knauf members, are

6

giving up valuable rights and assuming indemnity obligations, but recovering no or inadequate consideration.

27.     That Objector would be unable to opt out of the Global Settlement and INEX Settlement and still be able to recover under the "Other Loss Fund." Further, the class members who are not participating class members such as lower case Knauf members, will not be allowed to recover under the "Other Loss Fund."

28.     That Objector and others with lower case Knauf are unable to appeal the court's decision as to whether or not the drywall is reactive and qualifies the member for benefits.

29.     That Objectors due process and equal protection rights or other state or federal statutory or common law rights would be violated if he opted out due to the agreements' restriction on his rights to attempt and collect any judgment from Knauf or other entities by shielding assets and rights to discovery had in the MDL.

30.     That members of the class are prejudiced if the lower case Knauf is considered KPT board, based on a determination of reactive versus non-reactive. The members whose board is not reactive lose the ability to recover, and are subject to indemnity agreements and other obligations imposed without adequate consideration.

31.     Certain lower case KPT members' benefits under the INEX and Global Settlement potentially go to benefit Knauf, even though those members  receive no benefit, but are released and assign all rights and claims for any damages to the Defendants.

32.     The KPT and other settlements release liable parties with no benefit or inadequate benefit conferred on the class members who have been foreclosed or have certain lower case Knauf.

7

33.    The members' claims in state court are barred or required to be dismissed with inadequate consideration and in violation of comity and policy of Federal hands off state actions or judicial process, and the class members are unable to recover benefits or adequate benefit under the Settlement Agreements.

34.    The Xactimate estimates do not reflect the true measure of damage or cost of remediation, so that Options 2 and 3 under the KPT Settlement are insufficient to compensate the members, and are in effect not viable options.

35.    For Option 1, there is no schedule of when homes would be remediated and the members are unable to make an informed decision about whether or not to participate in this option.

36.    The members may be required to indemnify KPT for any defective construction done in remediation, even though the remediation is being performed by contractors who are KPT's agents or companies over which KPT reserves the right of control.

37.    There is no method or manner to reasonably determine the benefits available under the Settlements for mixed drywall homes, because it is unreasonable to inspect each piece of sheetrock prior to its removal during remediation and the member would not know if they are qualified for benefits in time to make a decision on opting out or participating.

38.    The multi-unit owners are prejudiced in that, at this time there is no way to determine the benefit they will receive or detriment that would be imposed by the Settlements as certain claims will be allowed or disallowed based on a determination by a contractor, in their sole discretion with no right of appeal and inadequate judicial oversight.

39.    The multi-unit owners may appear on the face of the Notice and Settlement to be class members receiving benefits, but may not be able to recover the benefits proposed if during

remediation or some later date there is a non-judicial determination that they do not qualify in violation of their due process and equal protection rights or other state and federal rights.

40.     The provisions regarding benefits to multi-unit owners violates and conflicts with state laws where statutes specify what rights and obligations a multi-unit owner has and what right and obligation a homeowner's association has.

41.     In order to qualify for benefits there must be an inspection and determination of corrosion and other factors not disclosed or communicated to members of the class in the class definition or notice.

42.     The foreclosed members whose home was foreclosed on or after the effective date of the Settlement are barred from collecting lost equity, being punished for holding on and trying to pay their mortgages, but would still be releasing claims and bound by indemnity provisions with inadequate consideration or notice.

43.     The Objector may adopt or pursue objections or issues raised by others to these settlements or related settlements.

44.     The Objector does not intend to call any witnesses on his own behalf other than those needed for rebuttal. However, the Objector would expect to cross examine or call those persons who provide evidence or documents concerning these settlements, that are called, or provide evidence by or at the request of class counsel, defense counsel or others who submit evidence related to these settlements.

45.     The Objector would plan to offer any and all pleadings, depositions or discovery used in support of or in opposition to these Settlements, or which was taken or otherwise had in any action in this MDL or related actions and any documents needed for rebuttal.

46.    That no specific time was given for objections to requests which may be made for attorney fee awards to the PSC or Common Benefit awards.  The Objector, in an abundance of caution, raises generally the objections set out below and reserves his right to amend or withdraw this objection at a later date.

A)    That the members are unable to determine what fees or expenses they may be liable for at this time, due to the relief proposed for attorney fees and expenses, and these requests interfere or may interfere with the right to contract under state or federal laws, due process or equal protection.

B)    That there is a provision proposed which would foreclose or do away with Objector's rights to appeal any attorney fee award or ruling made by this Honorable Court, and the member at this time cannot determine what fees or expenses may be requested.

C)    The Common Benefit award,  expense award or final request may impair or otherwise damage the Objector.  Absent a final request, the member is unable to make an informed decision to opt out or participate in these Settlements.  The potential liabilities or benefits are not provided with adequate specificity, which could interfere with the enforcement or oversight of counsel if these settlements are finally approved.  There does not appear to be any provision for fees that would or could be incurred in the future, if all provisions of the settlement are not completed or issues of enforcement, warranty claims or interpretation of the settlement occur.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

My name is Delbert Hopper. My phone number is 256-310-0556 and my current address is 355 Cobblestone Way, Oxford, Alabama 36203. The address of the property damaged by Knauf Chinese Drywall is 160 Blairs Circle, Pell City, Alabama. I am represented by Counsel K. Edward Sexton, II and Eric D. Hoaglund.

This notice has been mailed to Arnold Levin and Kerry Miller as required by this Court's Order.

Signed this the 27 day of September , 2012.


Delbert Hopper
Objector


Eric D. Hoaglund
K. Edward Sexton, II
Attorneys for Delbert Hopper

11

## CERTIFICATE OF SERVICE

This is to certify that on September 28, 2012, a true and correct copy of the foregoing was

mailed via U.S. Postal Service, postage prepaid, to the following:

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106

Russ M. Herman, Esq.
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113

_____
COUNSEL

12

# EXHIBIT 8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENTS RELATES TO: ALL CASES AND | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

*Payton, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-07628 (E.D. La.)

*Wiltz, et. al. v. Beijing New Building Materials Public Limited Co., et. al.*
Case No. 1:09-cv-00361 (E.D. La.)

*Gross, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-06690 (E.D. La.)

*Rogers, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:10-cv-00362 (E.D. La.)

*Amato, et. al. v. Liberty Mutual Ins. Co., et. al.*
Case No. 2:10-cv-00932

*Hernandez, et. al. v. AAA Insurance, et. al.*
Case No. 2:10-cv-3070 (E.D. La.)

*Abel, et. al. v. Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-00080 (E.D. La.)

*Abreu, et. al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et. al.*
Case No. 2:110cv000252 (E.D. La.)

*Haya, et. al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-01077 (E.D. La.)

*Vikers, et. al. v. Knauf Gips KG, et. al.*
Case No. 2:09-cv-04117 (E.D. La.)

OBJECTION TO CLASS ACTION SETTLEMENT AGREEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES BY OBJECTORS JAN PETRUS; SAUL SOTO, SHS CONSTRUCTION; RONNIE GARCIA, BAY AREA CONTACTING & CONSTRUCTION, INC. AND ERNEST VITELA, E AND E CONSTRUCTION CO.

COME NOW, Objectors and Class Members Jan Petrus; Saul Soto, SHS Construction; Ronnie Garcia, Bay Area Contracting & Construction, Inc., and Ernest Vitela, E and E Construction Co by and through their undersigned counsel of record, and file these objections to the proposed Chinese Drywall class action settlement and to the proposed award of attorneys' fees and expenses as follows:

Objectors and undersigned counsel will not attend the final fairness hearing, and will not present any witnesses or documents at the hearing. Objectors hereby give notice of their intention to object and respectfully request that these objections be presented at the fairness hearing for ruling at that time.

Attached as Exhibits A, B, C and D hereto are declarations and affidavits that confirm class membership of each of the above-named objectors, although this information does not appear to be required by the class notice or the frequently asked questions contained on the settlement website.

Objection is initially made to any procedures or requirements to object other than those contained in the FAQs on the settlement website or in the long form notice, to the extent any proponent of this settlement seeks to impose any higher burden or requirement. Objection is made to the extent there is a requirement that objectors who are represented by counsel need to sign the objection themselves. Nevertheless, objectors' signatures are contained on their respective affidavits or declarations, which incorporated by reference and therefore made a part of this objection.

As an initial matter, objection is made to the class definition. The class definition is both vague and ambiguous as to who is within and without the class and the class definition is fail-safe, and objection is made upon both of these grounds. *See Vanderbilt Mortgage and Finance, Inc. v. Posey*, 146 W.W.3d 302, 321 (Tex. App. -- Texarkana 2004, no pet.). It is impossible to determine with certainty based upon presently-ascertainable, objective criteria who is within or without the class. Moreover, the class is defined in terms of merits-based criteria, such as whether one has a claim, whether one makes certain allegations, the definition of Chinese Drywall, etc... Objection is also made to the class definition in that allowing defendants to be class members creates a conflict of interest and objection is made on that basis. How can class counsel represent a putative class made up of defendants and not create a conflict of interest for themselves and for the class representatives? They cannot.

Objection is made further that the proponents of this settlement have not carried their burden of proof on the fairness, adequacy and reasonableness of this settlement. "To safeguard the interests of absent class members, district courts must determine whether proposed class-action settlements are fair, adequate, and reasonable. To do this in the Fifth Circuit, courts evaluate the six *Reed* factors." *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012)(pet. filed). "The *Reed* factors are "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)." Id. The proponents of this settlement cannot sustain their burden of proof on the fairness, reasonableness and adequacy of this settlement.

Objection is also made that this class action cannot be maintained as a class action under the requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically, the proponents cannot satisfy their burden of proof that this case can satisfy the requirements of predominance, commonality and superiority, among the other requirements of Rule 23. There are simply too many individualized issues of various states' laws to maintain this case as a class action, and the proponents have the burden of proof on these issues.

Objection is made to the request for attorneys' fees under both a percentage of recovery basis and a lodestar analysis. *See Dell, Inc.*, 669 F.3d at 642-643. This is a substantial common fund settlement. It is very nearly a mega-fund case. It is typical in common fund cases involving very large settlements for the percentage to decrease as the amount of the fund increases. Here, attorneys' fees should not exceed 10% of the common fund under the circumstances of this case. It is also unclear if common benefit fees are included in the proposed 32% fee award or are in addition to. Objection is made to any common benefit fees in addition to the award of attorneys' fees and that number must be capped at 10% of the fund.

In summary, Objectors respectfully request that these objections are granted, that the proposed settlement is denied in its entirety, and that the Court reject and refuse the application for the award of attorneys' fees and expenses. Objectors' incorporate by reference the objections made by co-objectors, including but not limited to those made by Wayne Kaplan.

Dated: September 28, 2012

Respectfully submitted,

By:      _____/s/ Christopher A. Bandas_____
Christopher A. Bandas
State Bar No. 00787637
Southern Bar No. 17509
BANDAS LAW FIRM, P.C.
500 North Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401-0353
(361) 698-5200 Telephone
(361) 698-5222 Facsimile
Counsel for Objectors Jan Petrus; Saul Soto, SHS
Construction; Ronnie Garcia, Bay Area Contracting
Construction, Inc. and Ernest Vitela, E and E
Construction Co.

## PROOF OF SERVICE

I hereby certify that on the 28th day of September 2012 a true and correct copy of the above and foregoing was served on the following as indicated below as well as all counsel of record via the Court's CM/ECF system.

<u>Via U.S. Mail & CM-RRR</u>
Arnold Levin
Levin, Fishein, Sedran & Berman
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Plaintiffs' Lead Counsel

<u>Via U.S. Mail & CM-RRR</u>
Russ M. Herman
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, LA 70013
Defendants' Counsel

<u>Via CM-ECF Filing</u>
Clerk of Court
United States District Court for the
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

/s/ Christopher A. Bandas
Christopher A. Bandas

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENTS RELATES TO: ALL CASES AND | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

*Payton, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-07628 (E.D. La.)

*Wiltz, et. al. v. Beijing New Building Materials Public Limited Co., et. al.*
Case No. 1:09-cv-00361 (E.D. La.)

*Gross, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-06690 (E.D. La.)

*Rogers, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:10-cv-00362 (E.D. La.)

*Amato, et. al. v. Liberty Mutual Ins. Co., et. al.*
Case No. 2:10-cv-00932

*Hernandez, et. al. v. AAA Insurance, et. al.*
Case No. 2:10-cv-3070 (E.D. La.)

*Abel, et. al. v. Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-00080 (E.D. La.)

*Abreu, et. al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et. al.*
Case No. 2:110cv000252 (E.D. La.)

*Haya, et. al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-01077 (E.D. La.)

*Vikers, et. al. v. Knauf Gips KG, et. al.*
Case No. 2:09-cv-04117 (E.D. La.)



**EXHIBIT**

A

## AFFIDAVIT OF JAN PETRUS

STATE OF TEXAS        §

COUNTY OF NUECES     §

BEFORE ME, the undersigned notary, on this day, personally appeared JAN PETRUS, a person whose identity is known to me. After I administered the oath to her, upon her oath, she said:

"My name is Jan Petrus. I am over the age of eighteen (18) years. I have never been convicted of a felony. I am qualified and competent to make this affidavit. The facts stated herein are within my personal knowledge."

"I am a member of the class in the case styled: *In Re: Chinese-Manufactured Drywall Products Liability Litigation; MDL No 2047*. My mailing address is 120 Woodhaven, Ingleside, Texas 78362 and my telephone number is (361) 776-7918. I allege to have a claim, known or unknown, arising from or related to actual or alleged Chinese Drywall (as that term is defined in the class notice) purchased, imported, supplied, marketed, installed, used sold or in any way alleged to be within the legal responsibility of any Participating Defendant (as that term is defined in the class notice). I am not within any of the exclusions in the class definition.

Specifically, prior to 2010, I purchased (I gave cash to my handyman who in turn used that cash to buy the drywall at Lowes), and I had installed this drywall at my home in Ingleside, Texas. I allege this drywall was defective, smells bad when it gets wet, has become discolored, and is an irritant."

Dated this the 27th day of September 2012.

_____
Jan Petrus, Affiant

SWORN TO AND SUBSCRIBED before me on this the 27th day of September

2012.

M MARGOT VALDEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 01-17-2016

_____
Notary Public in and for
The State of Texas

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047

SECTION: L

THIS DOCUMENTS RELATES TO:
ALL CASES AND

JUDGE FALLON

MAG. JUDGE WILKINSON

*Payton, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-07628 (E.D. La.)

*Wiltz, et. al. v. Beijing New Building Materials
Public Limited Co., et. al.*
Case No. 1:09-cv-00361 (E.D. La.)

*Gross, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-06690 (E.D. La.)

*Rogers, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:10-cv-00362 (E.D. La.)

*Amato, et. al. v. Liberty Mutual Ins. Co., et. al.*
Case No. 2:10-cv-00932

*Hernandez, et. al. v. AAA Insurance, et. al.*
Case No. 2:10-cv-3070 (E.D. La.)

*Abel, et. al. v. Taishan Gypsum Co. Ltd., f/k/a
Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-00080 (E.D. La.)

*Abreu, et. al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et. al.*
Case No. 2:110cv000252 (E.D. La.)

*Haya, et. al. v. Taishan Gypsum Co., Ltd.,
f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-01077 (E.D. La.)

*Vikers, et. al. v. Knauf Gips KG, et. al.*
Case No. 2:09-cv-04117 (E.D. La.)



EXHIBIT

B

DECLARATION IN SUPPORT OF OBJECTIONS TO CLASS ACTION SETTLEMENT IN
CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION

Comes now Saul Soto and states the following under oath and under penalty of perjury in

support of his objection:

"My name is Saul Soto. I am over the age of eighteen (18) years. I have
never been convicted of a felony. I am qualified and competent to make this
affidavit. The facts stated herein are within my personal knowledge. Attached
hereto as Exhibit 1 is a true and correct copy of my Texas driver's license.

"I am the owner of SHS Construction, 361.765.7674, 429 Claride, Corpus
Christi, TX  78418. I am the sole proprietor of that business, which is really
myself doing business as SHS Construction"

"I am a member of the class in the case styled: *In re: Chinese
Manufactured Drywall Products Liability Litigation; MDL No. 2047.* I allege to
have a claim, known or unknown, arising from or related to actual or alleged
Chinese Drywall (as that term is defined in the class notice) purchased, imported,
supplied, marketed, installed, used, sold or in any way alleged to be within the
legal responsibility of any Participating Defendant (as that term is defined in the
class notice). I am not within any of the exclusions in the class definition.

"Either I personally or through SHS Construction (a company I own)
purchased, installed, and used between approximately 1,000 and 1,500 sheets of
drywall over the last 5-10 years. Over the years, I have purchased drywall from
Lowe's, Home Depot, McCoy's, and a variety of other building supply
companies.

"Many of these sheets of drywall included the letters "China" or "Made in
China. I have looked at the pictures of examples of Chinese drywall posted at the
settlement website and I can affirm that many of the sheets of drywall that I have
purchased, installed and used during the class period have been marked in similar,
if not identical, ways indicating that they were manufactured in China"

Dated this the _28_ day of September 2012.


I declare under penalty of perjury of the laws of the United States of America that the

foregoing is true and correct.

_____
Saul Soto



Ex. 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047

SECTION: L

THIS DOCUMENTS RELATES TO:
ALL CASES AND

JUDGE FALLON

MAG. JUDGE WILKINSON

*Payton, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-07628 (E.D. La.)

*Wiltz, et. al. v. Beijing New Building Materials
Public Limited Co., et. al.*
Case No. 1:09-cv-00361 (E.D. La.)

*Gross, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-06690 (E.D. La.)

*Rogers, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:10-cv-00362 (E.D. La.)

*Amato, et. al. v. Liberty Mutual Ins. Co., et. al.*
Case No. 2:10-cv-00932

*Hernandez, et. al. v. AAA Insurance, et. al.*
Case No. 2:10-cv-3070 (E.D. La.)

*Abel, et. al. v. Taishan Gypsum Co. Ltd., f/k/a
Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-00080 (E.D. La.)

*Abreu, et. al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et. al.*
Case No. 2:110cv000252 (E.D. La.)

*Haya, et. al. v. Taishan Gypsum Co., Ltd.,
f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-01077 (E.D. La.)

*Vikers, et. al. v. Knauf Gips KG, et. al.*
Case No. 2:09-cv-04117 (E.D. La.)


EXHIBIT
C

## DECLARATION IN SUPPORT OF OBJECTIONS TO CLASS ACTION SETTLEMENT IN CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION

Comes now Ronnie Garcia and states the following under oath and under penalty of perjury in support of his objection:

"My name is Ronnie Garcia. I am over the age of eighteen (18) years. I have never been convicted of a felony. I am qualified and competent to make this affidavit. The facts stated herein are within my personal knowledge. Attached hereto as Exhibit 1 is a true and correct copy of my Texas driver's license.

"I am the owner of Bay Area Contracting & Construction, Inc., 3902 S. Port Ave., Corpus Christi, TX 78415, (361) 947-7853. I am the sole owner of that business and I am authorized to make this declaration on behalf of that entity"

"I am a member of the class in the case styled: *In re: Chinese Manufactured Drywall Products Liability Litigation; MDL No. 2047*. I allege to have a claim, known or unknown, arising from or related to actual or alleged Chinese Drywall (as that term is defined in the class notice) purchased, imported, supplied, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant (as that term is defined in the class notice). I am not within any of the exclusions in the class definition.

"Either I personally or through Bay Area Contracting & Construction, Inc. (a company I own) purchased, installed, and used thousands and thousands of sheets of drywall over the last 15+ years. Over the years, I have purchased drywall from Lowe's, Home Depot, Builder's Square (now out of business), McCoy's, and a variety of other building supply companies.

"Many of these sheets of drywall included the letters "China" or "Made in China. I have looked at the pictures of examples of Chinese drywall posted at the settlement website and I can affirm that many of the sheets of drywall that I have purchased, installed and used during the class period have been marked in similar, if not identical, ways indicating that they were manufactured in China"

Dated this the 28 day of September 2012.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Ronnie Garcia

All Inboxes (4)   71 of 139



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047

SECTION: L

THIS DOCUMENTS RELATES TO:
ALL CASES AND

JUDGE FALLON

MAG. JUDGE WILKINSON

*Payton, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-07628 (E.D. La.)

*Wiltz, et. al. v. Beijing New Building Materials
Public Limited Co., et. al.*
Case No. 1:09-cv-00361 (E.D. La.)

*Gross, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:09-cv-06690 (E.D. La.)

*Rogers, et. al. v. Knauf Gips, KG, et. al.*
Case No. 2:10-cv-00362 (E.D. La.)

*Amato, et. al. v. Liberty Mutual Ins. Co., et. al.*
Case No. 2:10-cv-00932

*Hernandez, et. al. v. AAA Insurance, et. al.*
Case No. 2:10-cv-3070 (E.D. La.)

*Abel, et. al. v. Taishan Gypsum Co. Ltd., f/k/a
Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-00080 (E.D. La.)

*Abreu, et. al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et. al.*
Case No. 2:110cv000252 (E.D. La.)

*Haya, et. al. v. Taishan Gypsum Co., Ltd.,
f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*
Case No. 2:11-cv-01077 (E.D. La.)

*Vikers, et. al. v. Knauf Gips KG, et. al.*
Case No. 2:09-cv-04117 (E.D. La.)



EXHIBIT

D

## AFFIDAVIT OF ERNEST VITELA

STATE OF TEXAS            §

COUNTY OF NUECES          §

BEFORE ME, the undersigned notary, on this day, personally appeared ERNEST
VITELA, person whose identity was proven by providing his Texas driver's license. After I
administered the oath to him, upon his oath, he said:

"My name is Ernest Vitela. I am over the age of eighteen (18) years. I
have never been convicted of a felony. I am qualified and competent to make this
affidavit. The facts stated herein are within my personal knowledge."

"My name is Ernest Vitela. I am the owner of E and E Construction Co.
My mailing address is P.O. Box 911, 1404 Madrid Cir., Portland, Texas 78374,
(361) 779-6633.

I am a member of the class in the case styled: *In Re: Chinese-
Manufactured Drywall Products Liability Litigation; MDL. No. 2047.* I allege to
have a claim, known or unknown, arising from or related to actual or alleged
Chinese Drywall (as that term is defined in the class notice) purchased, imported,
supplied, marketed, installed, used, sold or in any way alleged to be within the
legal responsibility of any Participating Defendant (as that term is defined in the
class notice). I am not within any of the exclusions in the class definition."

Either I personally or through E and E Construction Co. (a company I
own) purchased, installed, and used between approximately 150 and 300 sheets of
drywall over the last 10-20 years. Many of these sheets of drywall included the

letters "China" or "Made in China."

Dated this the 28th day of September 2012.

_____
Ernest Vitela, Affiant

SWORN TO AND SUBSCRIBED before me on this the 28th day   of   September 2012

2012.

M MARGOT VALDEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 01-17-2016

_____
Notary Public in and for
The State of Texas

