# EXHIBIT D

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL       MDL NO. 2047
PRODUCTS LIABILITY LITIGATION

SECTION:  L

JUDGE FALLON
MAG. JUDGE WILKINSON

_____

## OBJECTION TO APPROVAL OF SETTLEMENT TERMS

John and Lori Willis, individually and on behalf of their minor Son, Brannon, by and

through the undersigned counsel, hereby files this Objection to Amended Settlement Agreement

Regarding Claims Against Knauf Defendants, Banner Class Settlement, and Insurer Class

Settlement[1], and states as follows in support thereof:

### Objections and Reason for the Objection:

Plaintiffs qualify as class members under the Knauf proposed settlement.   Mr. Willis is a
practicing attorney.

While Banner is unable to confirm their home was supplied by Banner, their home was built in
Parkland by WCI Homes and many of their neighbors were supplied by Banner Supply.

Plaintiffs have claims for "Sales in Mitigation", pursuant to Section 4.7.1.4, and Bodily Injury
for their minor son, Brannon Willis, pursuant to Section 4.7.2.

Plaintiffs object on behalf of themselves and their minor son, Brannon Willis, as follows:

### Amended Settlement Agreement
### Regarding Claims Against the Knauf Defendants in MDL 2047

1.      Section 4.6 contemplates the establishment of an "Other Loss Fund".  Plaintiffs object to:

(a)      Any cap on Knauf's responsibility to the "Other Loss Fund" pursuant to Section
4.6.4;

_____

[1] "Insurer Class Settlement" is the proposed settlement agreement referred to as "Settlement Agreement in MDL No.
2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers".

1

(b)     The contribution of any funds derived from the Banner Class Settlement into the Remediation Fund to offset responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund" before every Approved Claim is fully paid;

(c)     Section 4.2.3 and Section 4.6.3 providing for contribution of any funds derived from the Insurer Class Settlement and settlements with Excluded Releasees into the Remediation Fund to offset any responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund before every Approved Claim is fully paid;

2.     Section 4.25 permits a refund of dollars from the Remediation Fund, rather than contributing those funds to the "Other Loss Fund" without regard to whether or not there has been a pro rata reduction in claims pursuant to Section 4.7.4.5.  As a result, "Other Loss Fund" plaintiffs could have their valid and Approved Claim reduced in a pro rata fashion because there are insufficient funds in the "Other Loss Fund", while Knauf could be receiving millions of dollars in refund from Insurer Class Settlement, Banner Class Settlement, and/or other Excluded Releasees.  This is particularly unfair where the only recovery for some claimants may be from those specific funds.

3.     Section 4.2.5 permits refund of Remediation Funds to Knauf defendants after ALL "Participating Owner Class Members" have been compensated.  However, there is NO definition of "Participating Owner Class Members".  Persistently throughout the agreement there are conflicts between such definitions.

(a)     "Participating Class Members" (Section 1.51) defined as all class member who do not opt-out.

(b)     "Residential Owner Class" (Section 1.1.2.1) defined as ALL those who own, reside in (presumably including tenants) or "have resided in" (tenants under Section 4.7.1.5 as Other Loss claimants).  The definition specifically includes class members as former owners qualifying under Foreclosed (Section 4.7.1.3) or "Sales In Mitigation" (Section 4.7.1.4).

Without a definition of "Participating Owner Class Members", the refund provision is vague and unenforceable.

4.     Section 4.7.4.4.1 mandates that the "Special Master reduce any Approved Claim by any amount that was or could have been reimbursed of the Other Loss under the Class Member's insurance policy."   As written, there are a number of infirmities.

(a)     Since Insurer Class Settlement permits for "Other Loss" claims, application of this provision would nullify the resulting award since every dollar is potentially coming from the Class Member's insurance policy.

(b)     There is no disclosure as to what insurance policy amount has been implicated by claimant in this settlement to evaluate a class member's exposure or risk of reduction.

2

(c)     The reduction predicated on what "could have been" reimbursed in unenforceable and vague. Who determines whether or not the claim "could have been reimbursed" and under what standard? A trial court determination? A court of appeals? The argument of Knauf counsel, or some other counsel? What is the amount that "could have been reimbursed"? The policy limits? An amount discounted for difficulties surrounding the litigation? Applying what state's law is to determine the amount which "could have been reimbursed"?

5.     Imposition of arbitrary threshold percentage (Section 1.28 and stated therein elsewhere) to qualify for Knauf settlement funds pursuant to Section 4.7.1.4;

6.     Lack of any validated information or meaningful representation by the parties providing guidance or estimate as to the range or expected recovery for claims pursuant to Section 4.7.1.4;

7.     Requirement for an expert report pursuant to Section 4.7.1.4.2(k): (i) there is no known expert specialty identified which could qualify; (ii) the expenses of such are not reimbursable;

8.     Section 4.7.1.4 appears to prohibit Plaintiffs from seeking "Pre-remediation Alternative Living Expenses" pursuant to 4.7.1.1. The ability to seek "Lump Sum" as part of the "Lost Equity" calculation does not end the analysis where other homeowners who receive "Lump Sum" are permitted to seek Section 4.7.1.4 recovery. Due to the persistent health and respiratory issues involving their minor son, Brannon, Plaintiffs moved out of their home approximately 45 days after learning of the existence of reactive drywall. Their home was sold as part of the effort to mitigate losses 15 months later. During that time, they sustained significant damages. If Plaintiffs had remediated, they would have qualified for damages under Section 4.7.1.1. The disparate treatment of homeowners who sustained the same damages for the same reasons is unfair;

9.     Lack of any validated information or meaningful representation by the parties providing guidance or estimate as to the range or expected recovery for claims made against the Insurer Class Settlement, and the unfairness of the allocation.

10.    Section 1.19 (Individual Participating Class Member Costs) and Section 14.1 conflict in defining recovery of allowable expenses and violates the constitutional right to contract. Section 1.19 defines "Individual Participating Class Member Costs" as "those costs reasonably incurred by a Participating Class Member in connection with the prosecution of a claim relating to an Affected Property." Such reasonable costs should include those incurred by counsel including inspection, photocopies, facsimile, postage/overnight mail, travel/mileage, filing fees, etc. However, Section 14.1 limits recovery of these incurred expenses in connection with the prosecution of the claim to only "reasonable inspection costs". There is no basis to restrict such recovery or to interfere with Bar approved contracts providing for recovery of additional costs.

11.    Plaintiffs have a bodily injury claim for their minor son, Brannon, pursuant to Section 4.7.2 and object to:

   (a)    Any cap on Knauf's responsibility to the "Other Loss Fund" pursuant to Section 4.6.4;

   (b)    The contribution of any funds derived from the Banner Class Settlement into the Remediation Fund to offset responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund";

   (c)    The contribution of any funds derived from the Insurer Class Settlement into the Remediation Fund pursuant to Section 4.6.3 to offset any responsibility of Knauf and, thus, diverting funds from the "Other Loss Fund;

   (d)    Lack of any validated information or representation by the parties providing guidance as to the range of expected recovery for claims pursuant to Section 4.7.2;

   (e)    Sections 4.7.2.3.1 and 4.7.2.7 prohibit any fee or cost recovery for the Plaintiff, even if they prevail on their claim.  Instead, because Knauf has the right to contest the claim (see Section 4.7.2.6), Knauf's disparate economic power unfairly places an undue burden on Plaintiffs without the possibility for recovery of valid costs of collection of records, putting forward an expert, and the process of submitting the claim.  However, all other Plaintiffs are permitted to recover attorneys fees and costs in some manner.  Therefore, this settlement inappropriately and arbitrarily discriminates against bodily injury plaintiffs;

   (f)    Sections 4.7.2.3(a) and 4.7.2.3(b) require a certification that ALL pharmacies and medical providers since January 2005 sign a certification that all records are produced.  First, there is no explanation as to what certification is expected or how Plaintiffs could even force such a "certification".  Second, there is no "best effort" requirement; instead, this provision as written suggests the failure to obtain a single certification could act as a bar to recovery.  Third, there is a conflict in the language between pharmacies and healthcare providers where the certification for pharmacies is that the "production is complete" and for healthcare providers "all such records in the custody, possession or control of the healthcare provider have been produced".  There is no explanation or logical reason for the different treatment.

   In the context of the claim of minor, Brannon Willis, there are 13 different health care providers and a pharmacy.   The idea that the failure of a single provider or pharmacy to produce the stated certification would operate as a bar to recovery is objectionable.

(g)     Requirement for any expert report pursuant to Section 4.7.2.5: (i) there is no known expert specialty identified which could qualify; (ii) the costs of such are not reimbursable;

(h)     Section 4.7.2.2 requirement for a "contemporaneous diagnosis by the treating physician that the alleged injury was caused by KPT Chinese Drywall", imposing two impossible threshold standards: (i) "contemporaneous", meaning at the time of the first complaint or, alternatively, the term is irreparably vague; (ii) requiring a "treating physician" to diagnosis the injury was caused not just by reactive drywall in general, but specifically by "KPT drywall" and associating with "KPT drywall" "contemporaneous" with the initial diagnosis.

(i)     Lack of any validated information or meaningful representation by the parties providing guidance or estimate as to the range or expected recovery for claims made against the Insurer Class Settlement, and the unfairness of the allocation.

## Settlement Agreement Involving Banner Class Action

Plaintiffs incorporate all previously stated objections to the extent the Banner Class Action Settlement is to be read *in para materia* with other Settlement Agreements.  Plaintiffs further object to:

12.     Any Allocation in which any proceeds of the Banner Class Action Settlement are dedicated to the Remediation Fund before all Approved Claims are fully compensated.

13.     The inability to determine participation in the Settlement Agreement predicated upon poor record keeping of Banner Supply entities.

14.     The failure to provide for recovery of reasonable expenses associated with the prosecution of an individual claim.

## Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers

Plaintiffs incorporate all previously stated objections to the extent the Insurer Settlement Agreement is to be read *in para materia* with other Settlement Agreements.  Plaintiffs further object to:

15.     Any Allocation in which any proceeds of the Banner Class Action Settlement are dedicated to the Remediation Fund before all Approved Claims are fully compensated.

16.     The structure of the settlement agreement.

17.     The failure to provide for recovery of reasonable expenses associated with the prosecution of an individual claim.

Class Member DOES intend to appear at the Certification Hearing or Fairness Hearing
WITH counsel.

**Witnesses intended to be called and subject area of the witnesses' testimony:**

John Willis, Esquire (homeowner, attorney, father of minor son, Brannon)

**Documents to be used or offered into evidence at the Certification Hearing or Fairness
Hearing:**

Proposed Settlement documents;
Pleadings;
Objections by other objectors;
Qualifying documents supporting claim by Plaintiffs;
Documents in support of Bodily Injury claims;

_____
John Willis

_____
Lori Willis
6901 NW 117th Avenue
Parkland, Florida 33076
jawillis@aol.com
954-303-3435

_____
Michael J. Ryan, Esquire
Krupnick, Campbell, Malone, et al.
12 S.E. 7 Street
Suite 801
Ft. Lauderdale, FL  33301
(954) 763-8181
FAX (954) 763-8292
mryan@krupnicklaw.com

I hereby certify that a true and correct copy of this objection has been furnished by Fed

Ex overnight mail and regular U.S. Mail to:  Arnold Levin, Esquire, Plaintiff's Lead Counsel,

Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA  19106 and

Kerry Miller, Esquire, Knauf Defendants' Counsel, Frilot, LLC, 1100 Poydras Street, Suite

3700, New Orleans, LA  70163, this _28th_ day of September, 2012.


Michael J. Ryan, Esquire
Krupnick, Campbell, Malone, et al.
12 S.E. 7 Street
Suite 801
Ft. Lauderdale, FL  33301
(954) 763-8181
FAX (954) 763-8292
mryan@krupnicklaw.com

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 09-2047

SECTION L

JUDGE FALLON

THIS DOCUMENT RELATES TO
ALL CASES

MAG. JUDGE WILKINSON

**OBJECTIONS AND RESPONSE OF THE NORTH RIVER INSURANCE COMPANY
TO THE MOTION OF THE PLAINTIFFS' STEERING COMMITTEE
FOR AN ORDER APPROVING CLASS SETTLEMENTS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant The North River Insurance Company ("North River") responds to the Motion of the Plaintiffs' Steering Committee for an Order granting final approval to the proposed InEx Settlement, Banner Settlement, L&W Settlement, Knauf Settlement, and Global Settlement (Document 15764) as follows:

1. North River takes no position on the Banner Settlement, L&W Settlement, and Global Settlement.

2. On the InEx Settlement and the Knauf Settlement, North River has not and will not consent to the proposed assignment of rights under policies of insurance issued by North River to Interior Exterior Building Supply, LP and North River objects to any provision of either agreement that purports to assign rights under any policy of insurance issued by North River.

3. On the InEx Settlement, North River objects to the provision requesting a judicial determination that the primary insurance carriers for Interior Exterior Building Supply, LP will exhaust coverage under the primary policies by paying policy proceeds into an escrow fund. North River objects because (1) payment of policy proceeds into an escrow fund does not

constitute payment of covered claims that reduce coverage provided by the primary policies and (2) from the face of the InEx Agreement, it is clear that some of the policy proceeds will be used for payment of noncovered claims, which will not reduce coverage provided by the primary policies.

3.   On the Knauf Settlement, the term Released Claims is defined to include "any and all claims" against any Knauf entity being released "arising out of, in any manner related to, or connected in any way with KPT Chinese Drywall...." As written, that would include a release of claims that now belong or that may in the future arise against any Knauf entity by North River. North River is not a party to the Knauf Settlement and is not receiving any consideration for the Knauf Settlement.  The Knauf Settlement also contains a proposed litigation bar that would similarly purport to deprive North River of its right to pursue claims against any Knauf entity. North River objects to the request for a judicial fiat to arbitrarily deprive North River of rights it has or may have against any and all Knauf-related entities.

4.   North River incorporates by reference the Objections of The North River Insurance Company to the Proposed Knauf Settlement [Doc. No. 12088] and the Objections of The North River Insurance Company to the Request for Certification of an INEX Settlement Class previously filed by North River [ Doc. No. 8683].

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

By:    _/s Eric B. Berger_
               BRIAN S. MARTIN, ESQ.
               KEVIN RISLEY, ESQ.
               RODRIGO "DIEGO" GARCIA, JR., ESQ.
               One Riverway, Suite 1600
               Houston, Texas 77056
               Phone: (713) 403-8206
               Fax:  (713) 403-8299
               bmartin@thompsoncoe.com

               LOBMAN CARNAHAN BATT ANGELLE
               & NADER

               SIDNEY J. ANGELLE, ESQ.
               La. Bar No. 1002
               ERIC B. BERGER, ESQ.
               La. Bar No. 26196
               400 Poydras Street, Suite 2300
               New Orleans, Louisiana 70130
               Phone: (504) 586-9292
               Fax:   (504) 586-1290
               sja@lcba-law.com
               ebb@lcba-law.com

               ATTORNEYS FOR THE NORTH RIVER
               INSURANCE COMPANY

## CERTIFICATE OF SERVICE

     I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on September 28, 2012.

                                    _/s Eric B. Berger_
                                    ERIC B. BERGER

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE CHINESE-MANUFACTURED<br>DRYWALL PRODUCTS LIABILITY<br>LITIGATION | §<br>§<br>§<br>§ | MDL NO. 2047<br>SECTION L |
| THIS DOCUMENT RELATES TO: | §<br>§ | JUDGE FALLON<br>MAGISTRATE JUDGE |
| *Silva, et al. v. Interior Exterior Building*<br>*Supply, LP, et al.*<br>EDLA 09-08030 | §<br>§<br>§<br>§ | WILKINSON |
| *Silva, et al. v. Arch Insurance Company, et al.*<br>EDLA 09-08034 | §<br>§<br>§ | |
| *Payton, et al. v. Knauf Gips, KG, et al.*<br>EDLA 09-07628 | §<br>§<br>§ | |
| *Wiltz, et al. v. Beijing New Building Materals*<br>*Public Limited Co., et al.*<br>EDLA 2:10-cv-000361 | §<br>§<br>§<br>§ | |
| *Gross, et al. v. Knauf Gips, KG, et al.*<br>EDLA 2:09-cv-6690 | §<br>§<br>§ | |
| *Rogers, et al. v. Knauf Gips, KG, et al.*<br>EDLA 2:10-cv-00362 | §<br>§<br>§ | |
| *Amato, et al. v. Liberty Mutual Ins. Co.*<br>EDLA 2:10-cv-00932 | §<br>§<br>§ | |
| *Kenneth Abel, et al. v. Taishan Gypsum Co.,*<br>*Ltd., f/k/a Shangdong Taihe Dongxin Co., Ltd.,*<br>*et al.*<br>EDLA 2:11-cv-080 | §<br>§<br>§<br>§<br>§ | |
| *Daniel Abreau, et al. v. Gebrueder Knauf* | § | |

1

587054.2

*Verwaltungsgesellschaft, KG, et al.*        §
EDLA 2:11-cv-252                             §
_____             §

## NOTICE OF OBJECTION TO AMENDED SETTLEMENT AGREEMENT
## REGARDING CLAIMS AGAINST THE KNAUF DEFENDANTS IN MDL NO. 2047

September 28, 2012

**VIA CMRRR**

Mr. Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

**VIA CMRRR**

Mr. Kerry Miller, Esq.
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163

Dear Messrs. Levin and Miller:

    In accordance with the Court's Order (1) Setting Consolidated Fairness Hearing, (2) Establishing Coordinated Opt Out, Objection and Briefing Deadlines, and (3) Entering Litigation Stay in Favor of Settling Parties (D.I. 14566 in 2:09-md-02047-EEF-JCW), as well as the Notice of Pendency and Proposed Settlement of Knauf Class Action approved by the Court and posted on the Drywall MDL's webpage, http://www.laed.uscourts.gov/Drywall/Settlements.htm, please allow this letter to serve as notice of Perry Homes, LLC's and Perry Homes, a Joint Venture's (collectively, "Perry Homes") intention to object to the proposed Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Settlement") (D.I. 15742-2 in Case No. 2:09-md-02047-EEF-JCW).

2

587054.2

Perry Homes, LLC, is the successor-in-interest to Perry Homes, a Joint Venture.   The physical address for Perry Homes, LLC, is 9000 Gulf Freeway, Houston, Texas 77234.   The mailing address for Perry Homes, LLC, is P.O. Box 34306, Houston, Texas 77234.  The same physical and mailing addresses applied to Perry Homes, a Joint Venture, at the time Perry Homes, LLC, succeeded to its interests.  The telephone number for Mr. Brisch, Perry Homes' general counsel, is (713) 948-7841.

This notice of intention to object to the Knauf Settlement is being served to the extent that any of Perry Homes' claims, as described below, qualify Perry Homes as a Class Member. By sending this notice of objection, Perry Homes is not conceding that any of its claims qualifies Perry Homes as a Class Member.

Perry Homes has direct claims against the Knauf Defendants and Other Releasees in the Knauf Settlement, and is also the assignee of all claims, except personal injury claims, of thirteen homeowners whose homes have been determined to contain Knauf Tianjin ("KPT") drywall board.  The names and addresses of those homeowners and their affected homes are identified in the spreadsheet enclosed herewith as Exhibit "A."  Perry Homes had not filed a lawsuit in the Litigation as of December 9, 2011, and therefore should not qualify as a Class Member independent of any claims assigned to it by third-party homeowners.  Perry Homes is aware of only two homeowners that are named plaintiffs in the Omnibus X Class Action filed June 8, 2011 – Baldwin and Shelley Frank (#291) and Brenton Underwood (#352).  Perry Homes settled with these homeowners and the homeowners assigned all claims, except personal injury claims, to Perry Homes.

However, Interior/Exterior Building Supply LP provided a more extensive list of additional homes that may have received KPT board.  The names of the homeowners for those homes and their potentially affected addresses is enclosed herewith as Exhibit "B."  To the best of Perry Homes' knowledge, none of the homes on Exhibit "B" have been determined to contain reactive KPT drywall board (except to the extent any homes identified on Exhibit "B" are duplicative of the homes on Exhibit "A").  Perry Homes asserts its objection not only based on the direct claims it has against the Knauf Defendants and Other Releasees in the Knauf Settlement, including, but not limited to, claims for contribution, indemnification, or subrogation, but also as the assignee of all claims of the homeowners identified on Exhibit "A," and for any and all claims Perry Homes may have arising from or relating to the subsequent discovery of KPT Chinese Drywall (as that term is defined in Section 1.26 of the Knauf Settlement) in any of the homes identified on Exhibit "B," including, but not limited to, claims for contribution, indemnification and subrogation.

3

587054.2

Perry Homes intends for Mr. York, its undersigned retained counsel, to appear at the Joint Fairness Hearing. At this time, based on the objections stated below, Perry Homes has no intention of calling any witnesses to testify and does not intend to offer any documents except for those documents which have been submitted to the Court in support of the Plaintiff Steering Committee's ("PSC") Motion for Final Approval of, *inter alia*, the Knauf Settlement, as well as the Knauf Settlement.

As Mr. Miller is aware, Perry Homes reached an agreement with the Knauf Defendants in February 2012 to resolve Perry Homes' contribution claims with respect to the thirteen homes on Exhibit "A." The agreement between Perry Homes and the Knauf Defendants includes provisions for the Knauf Defendants to contribute to Perry Homes for other homes remediated by Perry Homes that are subsequently determined to contain KPT Chinese Drywall. The parties are working to further document their agreement, and Knauf has yet to make any payment under the agreement.

Perry Homes objects to Section 12.2.2 of the Knauf Settlement. That section states,

12.2.2. Bar the assertion by any entity or person against the Knauf Defendants and Other Releasees of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning (i) the KPT Chinese Drywall claims against the Knauf Defendants or (ii) this Settlement.

Concurrent with the service of this notice of intention to object, Perry Homes timely and properly served its notice of opt-out of the Knauf Settlement to the extent that any of Perry Homes' claims qualify Perry Homes as a Class Member. It is Perry Homes' interpretation of Section 12.2.2 that because each of the thirteen homeowners assigned all of their claims, except personal injury claims, to Perry Homes, any homeowner that would qualify as a "Class Member" is not a "Participating Class Member" with respect to those assigned claims. Thus, Section 12.2.2 would not bar Perry Homes, as assignee, from asserting a claim for contribution, indemnification or subrogation against the Knauf Defendants and Other Releasees. Furthermore, Section 12.2.2 would not bar Perry Homes from asserting an independent claim for contribution, indemnification or subrogation against the Knauf Defendants and Other Releasees.

If Perry Homes' interpretation of Section 12.2.2 is correct with respect to the thirteen homeowners, Perry Homes will withdraw its objection to the Knauf Settlement. Perry Homes would also object to Section 12.2.2 to the extent that any homeowner listed on Exhibit "B," and that is not duplicative of the thirteen homeowners on Exhibit "A," fails to opt out of the Knauf Settlement and then subsequently seeks remediation from Perry Homes, Perry Homes would object to Section 12.2.2 as Perry Homes' right to seek contribution, indemnification and

4

subrogation from the Knauf Defendants for those homes is covered by Perry Homes' agreement with Knauf.

Should you have any questions concerning Perry Homes' intent to object to the Global Settlement, please direct them to Perry Homes' counsel, Drew York of Looper Reed & McGraw, P.C., at 1601 Elm Street, Dallas, Texas 75201, (214) 237-6361 or dyork@lrmlaw.com.

Sincerely,                                Sincerely,

Michael C. Brisch                         Andrew K. York
General Counsel                           Retained Counsel

5

**Perry Homes, LLC, Properties Confirmed to Contain Reactive KPT Chinese Drywall**

| Street Address | City, State and Zip Code | Homeowner(s) |
|---|---|---|
| 26819 Shoal Hollow Court | Cypress, Texas 77433 | David and Doris Detweiler |
| 11510 Carson Field Lane | Cypress, Texas 77433 | John and Kellie Tolarski |
| 4823 Mosaic Canyon Court | Humble, Texas 77396 | Mr. & Mrs. Malcolm Frank |
| 12930 Redbud Shores Lane | Houston, Texas 77044 | Ms. Margaret Cotrone |
| 16002 Maple Shores Drive | Houston, Texas 77044 | Mr. & Mrs. Brenton Underwood |
| 15927 Chart House Court | Houston, Texas 77044 | Mr. and Mrs. Tim Sanders |
| 14907 Barton Grove Lane | Humble, Texas 77396 | Ms. Joanna Lewis |
| 14718 Fountain Stone Lane | Humble, Texas 77396 | Ms. Jefferson Bullock |
| 9418 Bearden Creek Lane | Humble, Texas 77396 | Mr. Cam Lu |
| 25738 Beckham Springs Court | Spring, Texas 77373 | Mr. and Mrs. Sergio Lemus |
| 27645 Fairhope Meadow Lane | Kingwood, Texas 77339 | Ms. Susan Williams |
| 518 Summer Trace Lane | Richmond, Texas 77469 | Robert Svoboda and Marciela Navarro |
| 2715 Misty River Lane | Richmond, Texas 77469 | Mr. Stanley Tomlinson |

**EXHIBIT "A"**

**EXHIBIT B**

| STREET ADDRESS | CITY, STATE, ZIP CODE | BUYER NAME |
|---|---|---|
| 4823 MOSAIC CANYON COURT | HUMBLE, TX 77396 | Mr. & Mrs. Malcolm Frank |
| 4802 PARK SQUARE LANE | HUMBLE, TX 77396 | Mr. & Mrs. Donald Williams |
| 9315 CATTAIL GATE COURT | HUMBLE, TX 77396 | Mr. Juan Alvarado |
| 4810 PARK SQUARE LANE | HUMBLE, TX 77396 | Mr. & Mrs. John Butler |
| 4430 PALESTINE COVE LANE | HUMBLE, TX 77396 | Ms. Nelma Jones |
| 9415 BLACK TOOTH WAY | HUMBLE, TX 77396 | Mr. Chris Hines |
| 9447 BLACK TOOTH WAY | HUMBLE, TX 77396 | Mr. Desmond Lee |
| 4808 PARK SQUARE LANE | HUMBLE, TX 77396 | Ms. Lizzie Richmond |
| 9214 DUNE GATE COURT | HUMBLE, TX 77396 | Mr. & Mrs. Enrique Uballe |
| 9318 REFLECTIONS PATH WAY | HUMBLE, TX 77396 | Ms. Laurie Tambellini |
| 4519 EARLY AUTUMN COURT | HUMBLE, TX 77396 | Ms. Crystal Sanchez |
| 9138 RED CASTLE LANE | HUMBLE, TX 77396 | Ms. Kate Edwards |
| 4319 GRANITE PARK WAY | HUMBLE, TX 77396 | Mr. Walter Moreham |
| 4434 SUNLIT PASS LANE | HUMBLE, TX 77396 | Mr. Michael Knoeller |
| 9130 RED CASTLE LANE | HUMBLE, TX 77396 | B. Jackson |
| 9230 RED CASTLE LANE | HUMBLE, TX 77396 | Ms. Margarita Argueta |
| 422 COLCHESTER LANE | LEAGUE CITY, TX 77573 | Mr. & Mrs. Kenneth Nelson |
| 9827 GLASCOW GREEN | HOUSTON, TX 77089 | Mr. & Mrs. J.C. Siby |
| 9811 KIMBERLY LOCH LANE | HOUSTON, TX 77089 | Ms. Shirley Bain |
| 12519 MELLVILLE DRIVE | HOUSTON, TX 77089 | Owner |
| 10030 LOCH COURTNEY LANE | HOUSTON, TX 77089 | Mr. & Mrs. John Monnat |
| 12514 MELLVILLE DRIVE | HOUSTON, TX 77089 | Ms. Monet Thomas |
| 12510 MOUNT ANDREW | HOUSTON, TX 77089 | Mr. Dao Huynh |
| 709 LAUGHING GULL | TEXAS CITY, TX 77590 | Mr. & Mrs. Kenneth Mills |
| 2211 CAMBRIDGE SHORES LANE | PEARLAND, TX 77584 | Mr. Rodney Quindoy |
| 2207 CAMBRIDGE SHORES LANE | PEARLAND, TX 77584 | Mr. & Mrs. Joseph Hagan |
| 13007 MISTY BAY LANE | PEARLAND, TX 77584 | Mr. & Mrs. Ron Charles |
| 2612 ROCK SHOALS WAY | PEARLAND, TX 77584 | Mr. & Mrs. Alphonse Karlampally |
| 3004 AUBURN CREEK LANE | LEAGUE CITY, TX 77573 | Mr. & Mrs. Scott Cady |
| 3 GARDEN GROVE DRIVE | MANVEL, TX 77578 | Ms. Danelle Watkins |
| 5 GARDEN GROVE DRIVE | MANVEL, TX 77578 | C. Hodge |
| 29 PALM DESERT DRIVE | MANVEL, TX 77578 | Mr. Bradley Porche |
| 3116 RICHARD LANE | FRIENDSWOOD, TX 77546 | Mr. Daniel Phelps |
| 3234 PRINCE GEORGE DRIVE | FRIENDSWOOD, TX 77546 | Mr. Sirous Rasti |
| 3104 RICHARD LANE | FRIENDSWOOD, TX 77546 | Mr. & Mrs. Elvester Benson |
| 7106 TURTLE MANOR DRIVE | HUMBLE, TX 77346 | Mr. & Mrs. Craig Parham |
| 7022 TURTLE MANOR DRIVE | HUMBLE, TX 77346 | Mr. Tien Troung & Ms. Nguyen |
| 7018 TURTLE MANOR DRIVE | HUMBLE, TX 77346 | Mr. Nelson Flores |
| 7102 TURTLE MANOR DRIVE | HUMBLE, TX 77346 | Mr. Chris O'Dell |
| 14426 WILDWOOD SPRINGS LANE | HOUSTON, TX 77044 | Mr. Sean Gerard |
| 14511 QUIET SUMMER LANE | HOUSTON, TX 77044 | Mr. Joseph Carrier |
| 14522 WILDWOOD SPRINGS LANE | HOUSTON, TX 77044 | Mr. Jacinto Guerrero, Jr. |
| 14507 QUIET SUMMER LANE | HOUSTON, TX 77044 | Mr. & Mrs. James Fenney |
| 13506 SAND MOUNTAIN LANE | HOUSTON, TX 77044 | Ms. Janet Stephens |
| 13506 WILDWOOD SPRINGS COURT | HOUSTON, TX 77044 | Mr. & Mrs. Elwin Collier |
| 13503 SAND MOUNTAIN LANE | HOUSTON, TX 77044 | Mr. Randyhal Pham |
| 14403 QUIET SUMMER LANE | HOUSTON, TX 77044 | Mrs. Monica Crump Baldridge |
| 12903 REDBUD SHORES LANE | HOUSTON, TX 77044 | Ms. Candace Crawford-Cisco |
| 12907 REDBUD SHORES LANE | HOUSTON, TX 77044 | Mr. Jack Bass |
| 12923 REDBUD SHORES LANE | HOUSTON, TX 77044 | Mr. William Hamilton |
| 12930 REDBUD SHORES LANE | HOUSTON, TX 77044 | Ms. Margaret Burke Cotrone |
| 12910 REDBUD SHORES LANE | HOUSTON, TX 77044 | Mr. & Mrs. Antwan Jones |
| 12810 MAINSTAY PLACE LANE | HOUSTON, TX 77044 | Ms. Susan Gerhardt |
| 15814 SHORELINE TERRACE DRIVE | HOUSTON, TX 77044 | Mr. Julio Valladares |
| 12818 MAINSTAY PLACE LANE | HOUSTON, TX 77044 | Mr. Jerry Haygood, Jr. |
| 15910 LOST ANCHOR WAY LANE | HOUSTON, TX 77044 | Mr. Jeffrey Ballard |
| 15823 MOSSY SHORES COURT | HOUSTON, TX 77044 | Mr. Omar Ramirez |
| 15814 FINWOOD LANE | HOUSTON, TX 77044 | Ms. Lauren Oberleas |
| 15819 FINWOOD LANE | HOUSTON, TX 77044 | Mr. & Mrs. James Carsner |
| 13315 LAKE EXCURSION COURT | HOUSTON, TX 77044 | Ms. Terry Candice |
| 16002 MAPLE SHORES DRIVE (M) | HOUSTON, TX 77044 | Mr. Brenton Underwood |
| 15927 CHART HOUSE COURT | HOUSTON, TX 77044 | Mr. & Mrs. Tim Sanders |
| 13707 ELM SHORES DRIVE | HOUSTON, TX 77044 | Mrs. Michelle Wilson |
| 14903 BARTON GROVE LANE | HUMBLE, TX 77396 | Mr. Robert Renfro |
| 14923 BARTON GROVE LANE | HUMBLE, TX 77396 | Mr. Walter Broussard, Jr. |
| 14907 BARTON GROVE LANE | HUMBLE, TX 77396 | Ms. Joanna Lewis |
| 14718 FOUNTAIN VIEW LANE | HUMBLE, TX 77396 | Mr. Jefferson Bullock |
| 14931 BARTON GROVE LANE | HUMBLE, TX 77396 | Mr. Guy Guidry |
| 9418 BEARDEN CREEK LANE | HUMBLE, TX 77396 | Mr. Cam Lu |
| 9514 GARNET FALLS LANE | HUMBLE, TX 77396 | Mr. Paul Montgomery |
| 9423 BEARDEN CREEK LANE | HUMBLE, TX 77396 | Mr. & Mrs. Paul Elvis |
| 11823 RAINBOW BRIDGE LANE | HUMBLE, TX 77396 | Mr. & Mrs. James Maybin |
| 17618 SEQUOIA VIEW LANE | HUMBLE, TX 77396 | Mr. Ollie Veloso |
| 12310 GRAND PORTAGE LANE | HUMBLE, TX 77396 | Mr. & Mrs. Hector Garza |
| 17228 KOBUK VALLEY CIRCLE | HUMBLE, TX 77396 | Mr. Winfield Clarke |
| 11510 CARSON FIELD LANE | CYPRESS, TX 77433 | Mr. & Mrs. John Tolarski |
| 26819 SHOAL HOLLOW COURT | CYPRESS, TX 77433 | Mr. & Mrs. David Detweiler |
| 26738 BECKHAM SPRINGS COURT | SPRING, TX 77373 | Mr. & Mrs. Sergio Lemus |
| 25822 AUSTIN SPRINGS | SPRING, TX 77373 | Mr. Randall Allen |
| 907 COLORADO SPRINGS COURT | SPRING, TX 77373 | Mr. Patrick Meehan |
| 18502 PARTNERS VOICE DRIVE | CYPRESS, TX 77433 | Mrs. Jill Crauder-Martinez |
| 18522 PARTNERS VOICE DRIVE | CYPRESS, TX 77433 | Ms. Donna Schmidt |
| 12107 E COLONY SHORE DRIVE | CYPRESS, TX 77433 | Mr. Robert Guthrie |
| 12218 W COLONY SHORE DRIVE | CYPRESS, TX 77433 | Mr. Joseph Tischner |
| 18622 GAIL SHORE DRIVE | CYPRESS, TX 77433 | Ms. Penelope Harris |
| 18626 GAIL SHORE DRIVE | CYPRESS, TX 77433 | Mr. Nathaniel Burleson, Jr. |
| 26894 SQUIRES PARK DRIVE | KINGWOOD, TX 77339 | Mr. Fred Ganjehel |
| 26879 TREASURES RIDGE DRIVE | KINGWOOD, TX 77339 | Mr. Christopher Webb |
| 26878 TREASURES RIDGE DRIVE | KINGWOOD, TX 77339 | Mr. Andres Rodriguez |
| 27645 FAIRHOPE MEADOW LANE | KINGWOOD, TX 77339 | Ms. Susan Williams |
| 27616 FAIRHOPE MEADOW LANE | KINGWOOD, TX 77339 | Mr. Steven Case |
| 26919 ROYAL TIMBERS DRIVE | KINGWOOD, TX 77339 | Mr. Larry Wiswell |
| 26866 SQUIRES PARK DRIVE | KINGWOOD, TX 77339 | Mr. John Jones |
| 26880 MANOR FALLS DRIVE | KINGWOOD, TX 77339 | Mr. Frank Williams |
| 22021 RYE HOLLOW LANE | KINGWOOD, TX 77339 | Mr. Jason Kirchner |
| 9435 BORDEN BLUFF LANE | HOUSTON, TX 77095 | Ms. Angela Wyka |
| 17602 BURKHART RIDGE DRIVE | HOUSTON, TX 77095 | Mr. Stuart Stradford |
| 9615 WAKEFIELD VILLAGE DRIVE | HOUSTON, TX 77095 | Mr. Phuong Pham |

| | | |
|---|---|---|
| 9619 WAKEFIELD VILLAGE DRIVE | HOUSTON, TX 77095 | Ms. Charlotte Williams |
| 9410 BORDEN BLUFF LANE | HOUSTON, TX 77095 | Mr. & Mrs. Jesus Contreras |
| 17510 BENDING POST DRIVE | HOUSTON, TX 77095 | Mr. & Mrs. Ramon Zaragoza |
| 6126 STILSON BRANCH LANE | HOUSTON, TX 77092 | Mr. Joseph Villarreal |
| 6103 FULTON MEADOWS LANE | HOUSTON, TX 77092 | Mr. Jesus Garcia |
| 6103 TENTON PARK LANE | HOUSTON, TX 77092 | Ms. Britni Armstrong |
| 6103 GILMAN TRACE LANE | HOUSTON, TX 77092 | Ms. Elizabeth Solomon |
| 6118 LYNWOOD BANKS LANE | HOUSTON, TX 77092 | Mr. David Petty & Ms. Laura Colley |
| 6119 LYNWOOD BANKS LANE | HOUSTON, TX 77092 | Mr. Brian Vincent |
| 6030 STILSON BRANCH LANE | HOUSTON, TX 77092 | Mr. Robert Schulte |
| 6110 TENTON PARK LANE | HOUSTON, TX 77092 | Ms. Amanda Kirkham |
| 6123 TENTON PARK LANE | HOUSTON, TX 77092 | Mr. Henry Passye, Jr. |
| 6119 TENTON PARK LANE | HOUSTON, TX 77092 | Mr. Carl Holley, Jr. |
| 6118 TENTON PARK LANE | HOUSTON, TX 77092 | Ms. Barbette Brown |
| 6122 TENTON PARK LANE | HOUSTON, TX 77092 | Mr. Salvatore Carbonaro |
| 518 SUMMER TRACE LANE | RICHMOND, TX 77469 | Ms. Robert Svoboda |
| 2715 MISTY RIVER LANE | RICHMOND, TX 77469 | Mr. & Mrs. Stanley Tomlinson |
| 5514 WAGON WHEEL LANE | ROSENBERG, TX 77471 | Mr. & Mrs. Gregory Setzer |
| 2818 DIAMOND RIVER DRIVE | ROSENBERG, TX 77471 | Mr. & Mrs. Joe Sebesta |
| 5515 CUNNINGHAM LANE | ROSENBERG, TX 77471 | Mr. Herbert Martin, Jr. |
| 5606 WAGON WHEEL LANE | ROSENBERG, TX 77471 | Ms. Marta Alves |
| 2822 DIAMOND RIVER DRIVE | ROSENBERG, TX 77471 | Ms. Belinda Hughes |
| 2819 WINNER'S COURT | ROSENBERG, TX 77471 | Mr. & Mrs. Steven Saltsman |
| 2816 WINNER'S COURT | ROSENBERG, TX 77471 | Mr. Rumaldo Garcia. Jr. |
| 5618 WAGON WHEEL LANE | ROSENBERG, TX 77471 | Mr. Eddie Smith |
| 5507 CUNNINGHAM LANE | ROSENBERG, TX 77471 | Mr. Daniel Hunsaker |
| 5506 WAGON WHEEL LANE | ROSENBERG, TX 77471 | Mr. & Mrs. Kenneth Woodruff, Jr. |
| 2502 SILVERTON BEND | KATY, TX 77449 | Mr. Roberto Lira |
| 5508 WALNUT GLEN LANE | KATY, TX 77449 | Ms. Shentel Taylor |
| 5807 WAGON WHEEL LANE | KATY, TX 77449 | Mr. & Mrs. Johnathan Meshel |
| 21014 WILDBROOK CANYON COURT | KATY, TX 77449 | Ms. Melissa West |
| 2103 CASTLE GARDENS LANE | KATY, TX 77449 | Ms. Janelle Henderson |
| 2107 CASTLE GARDENS LANE | KATY, TX 77449 | Mr. Monroe |
| 2008 VANDERWILT LANE | KATY, TX 77449 | Ms. Tanya Monroe |
| 20931 BARBONS HEATH COURT | KATY, TX 77449 | Yu Lin Wen |
| 2014 WILDBROOK CANYON LANE | KATY, TX 77449 | Mr. Patricia Hammond |
| 2010 WILDBROOK CANYON LANE | KATY, TX 77449 | Mr. Randal Penney |
| 20942 HAMLET RIDGE LANE | KATY, TX 77449 | Mr. Omar Luna |
| 2207 CASTLE GARDENS LANE | KATY, TX 77449 | Madison Lowe |
| 2102 CASTLE GARDENS LANE | KATY, TX 77449 | Ms. Teresa Gutierrez |
| 2110 PINECREEK PASS LANE | KATY, TX 77449 | Mr. Keith Gonzalez |
| 2108 PINECREEK PASS LANE | KATY, TX 77449 | Ms. Phan Phuong |
| 2114 SHERBROOK PARK LANE | KATY, TX 77449 | Mr. Denny Nguyen |
| 7118 PETTIGREW DRIVE | SUGAR LAND, TX 77479 | Mr. Richard Hughes |
| 1607E WEST DALLAS STREET | HOUSTON, TX 77019 | Mr. Andre De Melo |
| 1605A WEST DALLAS STREET | HOUSTON, TX 77019 | Mr. A. Nigan |
| 1605B WEST DALLAS STREET | HOUSTON, TX 77019 | Ms. K. Miller |
| 1605C WEST DALLAS STREET | HOUSTON, TX 77019 | Mr. Zhiyong Liu |
| 1605D WEST DALLAS STREET | HOUSTON, TX 77019 | Ms. Sarah Crabb |
| 2302 BASTROP STREET | HOUSTON, TX 77004 | Mr. & Mrs. Mark Jordan |
| 2308 BASTROP STREET | HOUSTON, TX 77004 | Ms. Desni Termin |
| 2304 BASTROP STREET | HOUSTON, TX 77004 | Mr. & Mrs. Kofi Gyimah |
| 1611A FRANCIS STREET | HOUSTON, TX 77004 | Mr. & Mrs. Thomas Rhodes Marion |
| 1611B FRANCIS STREET | HOUSTON, TX 77004 | Ms. Mindy Ko |
| 1611C FRANCIS STREET | HOUSTON, TX 77004 | Mr. Chin Tan |

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL: | MDL NO. 2047 |
| PRODUCT LIABILITY LITIGATION         : | |
| ***********************************: | SECTION: L |
| This Document relates to              : | |
| MONICA SMITH AND T.A. BOLDEN          : | JUDGE FALLON |
| 160 Club Dr., Fairhope AL 36532       : | MAG. JUDGE WILKINSON |
| 251.990.9658,  smith.photo@att.net | |
| | OBJECTION TO KPT |
| Case Number 09-7628 | SETTLEMENT |

NOW INTO COURT, through undersigned counsel comes Thomas A. Bolden and

Monica Smith to object to portions of the class settlement with Knauf Gips, KG et al,

specifically section 4.3.1.1 "Lump Sum Payment". Claimants intend to appear with Counsel

at Fairness Hearing.

Section 4.3.1 states the Remediation fund will pay the lead contractor or other

approved ...plus for residential owners, the applicable Other Covered Expenses according

to the following criteria:

Section 4.3.1.1 offers to pay claimants "for KPT properties that are less than or equal

to 3,500 sq. ft. "under air" as determined by the lead contractor or other approved

contractor... a single payment of $8.50 per square foot of the "under air area".

The settlement defines "Other Covered Expenses" shall mean reimbursement for all

alternative living expenses, personal property damage, maintenance of the KPT property

during remediation, including but not limited to, payment of all utility bills, insurance,

property taxes and maintenance of landscaping, and moving and storage expenses, incurred

as a result of the remediation of the KPT property, pursuant to Section 4.3.1.1 through

4.3.1.3.

1

We would submit to the Court that it would be appropriate to include pre-remediation repair expenses (such as HVAC, Appliances etc) in the Other Loss Fund (Section 4.7.4) so that they could submit copies of their receipts and be properly compensated for the losses they have incurred as a result of the drywall.

Section 4.7 allows property owners and tenants to receive its pro rata share of the other loss fund as determined by certain procedures. This section allows for the recovery of pre-remediation alternative living expenses, however it excludes personal property damage. It is our belief that the personal property damage was meant to cover the losses of peoples coffee pots, televisions, computers and other small appliances, which individually would not amount to a significant sum of money. In this case, someone's air conditioning unit is a necessity in order to occupy the home, especially in the southern summer months.

An air condition unit and its components should be treated in much the same way alternative living expenses since if the unit was not fixed, the Panneton's would have had to find another place to live. However, given their duty to mitigate their damages, they chose, what they believed to be the more inexpensive solution and repair their air conditioning unit instead.

Claimants would submit to the Court that it would be simple to include a section on the Other Loss claim form to include losses such as the one stated above and that claimants should not be punished and not made whole because they chose to repair their unit instead of relocating.

Second, Claimants object in that the warranty period should be longer than one year. The one year starts to run as of substantial completion to the home, however; punch list items have taken longer to finish and by the time they are complete, the warranty period has already been in affect for several months. Claimants ask that either the warranty period be

2

extended or that warranty provision does not start to run until the punch list items for the house are complete.

Third, claimants object to the arbitrary decision to pay additional move-out costs when a home is larger than 3500 sq.ft. Section 4.3.1.1 of Settlement Agreement dictates that a home under 3500 sq.ft. is paid a sum of $8.50 per "under air" square footage while a home greater than 3500 sq. ft. is paid $10.00 per "under air" square footage. Claimant suggest to this court that all participants in this settlement should be paid $10.00 per "under air" square foot.

Respectfully submitted on
September ___28___, 2012

By: _____
Daniel E. Becnel, Jr. (La. Bar No. 2926)
Matthew B. Moreland (La. Bar No. 24567)
Salvadore Christina, Jr. (La. Bar. No. 27198)
**BECNEL LAW FIRM, LLC**
106 W. Seventh Street
P. O. Drawer H
Reserve, Louisiana 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
Email: dbecnel@becnellaw.com

_____
T.A. Bolden-Plaintiff

_____
Monica Smith-Plaintiff

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL:   MDL NO. 2047
       PRODUCT LIABILITY LITIGATION    :
...........................................................:   SECTION: L
This Document relates to            :
Ovila C. and Ruth Panneton          :   JUDGE FALLON
19065 Quail Creek Dr, Fairhope AL 36532  :   MAG.JUDGE WILKINSON
251.929.2915, Oclyde@mchsi.com

OBJECTION TO KPT SETTLEMENT

NOW INTO COURT, through undersigned counsel comes Ovila C. and Ruth Panneton, to object to portions of the class settlement with Knauf Gips, KG et al, specifically section 4.3.1.1 "Lump Sum Payment".

Section 4.3.1 states the Remediation fund will pay the lead contractor or other approved …plus for residential owners, the applicable Other Covered Expenses according to the following criteria:

Section 4.3.1.1 offers to pay claimants "for KPT properties that are less than or equal to 3,500 sq. ft. "under air" as determined by the lead contractor or other approved contractor… a single payment of $8.50 per square foot of the "under air area".

The settlement defines "Other Covered Expenses" shall mean reimbursement for all alternative living expenses, personal property damage, maintenance of the KPT property during remediation, including but not limited to, payment of all utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses, incurred as a result of the remediation of the KPT property, pursuant to Section 4.3.1.1 through 4.3.1.3.

Claimant has incurred an estimated $5488.00 (Exhibit A) just in repairs to his air conditioning unit in his home.  If this expense is taken from his Lump Sum Payment, claimant may not be fully compensated for his expenses related to alternative living expenses

1

and moving costs. The lump sum payment would also go toward compensating Mr. and Mrs. Panneton for their destroyed electronics. Mr. and Mrs. Panneton have replaced their condenser coils seven times as well as replace the outside compressor and air handlers.

We would submit to the Court that it would be appropriate to include these types of expenses in the Other Loss Fund (Section 4.7.4) so that they could submit copies of their receipts and be properly compensated for the losses they have incurred as a result of the drywall.

Section 4.7 allows property owners and tenants to receive its pro rata share of the other loss fund as determined by certain procedures. This section allows for the recovery of pre-remediation alternative living expenses, however it excludes personal property damage. It is our belief that the personal property damage was meant to cover the losses of peoples coffee pots, televisions, computers and other small appliances, which individually would not amount to a significant sum of money. In this case, someone's air conditioning unit is a necessity in order to occupy the home, especially in the southern summer months.

An air condition unit and its components should be treated in much the same way alternative living expenses since if the unit was not fixed, the Panneton's would have had to find another place to live. However, given their duty to mitigate their damages, they chose, what they believed to be the more inexpensive solution and repair their air conditioning unit instead.

Claimants intend to appear at the fairness hearing with counsel. Claimant is willingly to mediate his claim in front of Judge Fallon and abide by the decision reached at said mediation.

Claimants would submit to the Court that it would be simple to include a section on the Other Loss claim form to include losses such as the one stated above and that claimants

2

such as the Pannetons should not be punished and not made whole because they chose to repair their unit instead of relocating.

Respectfully submitted on
September _28th_, 2012

By: _[signature]_
Daniel E. Becnel, Jr. (La. Bar No. 2926)
Matthew B. Moreland (La. Bar. No. 24567)
Salvadore Christina, Jr. (La. Bar. No. 27198)
**BECNEL LAW FIRM, LLC**
106 W. Seventh Street
P. O. Drawer H
Reserve, Louisiana 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
Email: dbecnel@becnellaw.com

_[signature]_
Ovila Clyde Panneton-Plaintiff

_[signature]_
Ruth H. Panneton-Plaintiff

3

## HVAC Replacement and Service Costs

| Date | Service | Cost | Remarks |
|---|---|---|---|
| 9/13/2006 | Coil replaced | | No Charge |
| 7/11/2007 | Coil replaced | | No Charge |
| 7/26/2007 | Leak in Coil | $136.85 | |
| 7/21/2007 | Coil Freezing | $128.00 | Return visit-unsolved first time |
| 8/11/2007 | Replace coil | $301.75 | |
| 10/31/2007 | Coil replaced | | No charge |
| 8/12/2008 | Coil replaced | | No charge |
| 11/13/2009 | New Coil | $240.00 | Dipped coil |
| 2/17/2009 | Barometric by-pass | $130.00 | |
| 5/4/2009 | Preventative Maintenance Agreement | $190.00 | |
| 3/15/2010 | Preventative Maintenance Agreement | $156.75 | |
| 9/27/2010 | Replace compressor | $621.00 | $552 plus $69 service charge |
| 2/28/2011 | Preventative Maintenance Agreement | $156.75 | |
| 6/21/2011 | Leak search | $84.15 | added R-22 |
| 8/1/2011 | Leak search | $93.00 | diagnostic check |
| 9/13/2011 | Leak search | $93.00 | |
| 9/14/2011 | Aluminum air handler installed | $3,000.00 | |
| 3/5/2012 | Preventative Maintenance Agreement | $156.75 | |
| | Total | $5,488.00 | |


PLAINTIFF'S EXHIBIT
A



**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

**DUPLICATE**

Date: 07/26/2007
Invoice #: 43909
Customer #: 82258
Work Order #: 43909
Dispatch #: 45349
Service Date: 07/26/2007

Bill To : PANNETON, OVILA
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

Job Site :
PANNETON, OVILA
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.

DUE UPON RECEIPT

JOB #1

SERVICE SALES [SV]

Unit #       5382RA     ELECTRIC FURNACE
Model #    TWG060A150B            Serial #    5413MJE6V

**Work Done**
UNIT ICICNG UP AGAIN
FIX AIR FLOW PROBLEM EARLIER, REPAIR A LEAK AT THE LIQUID LINE EARLIER. SYSTEM MUST
HAVE ANOTHER LEAK, FOUND LEAK ON COIL SOLDIER UP LEAK UNIT IS COOLING

**PARTS-MATERIAL USED**

| Qty | U.M. | Part# | Description | Price | Extended |
|---|---|---|---|---|---|
| 2 | LB. | RF1 022 | REFRIGERANT R-22  SOLD BY LB. | $16.00 | $32.00 |
| 1 | EA | Non-Inventory | MISC SUPPLIES | $4.00 | $4.00 |
| | | # of Parts: 3 | | **Total Parts:** | **$36.00** |

**MISC/OTHERS**

| | | | Retail |
|---|---|---|---|
| Equipment Rental | | | $25.00 |
| DISCOUNT | | | ($24.15) |
| | | **Total Misc:** | **$0.85** |

**LABOR**

| Tech # | Tech Name | Dt. Worked | Hrs Worked | Hrly Rate | |
|---|---|---|---|---|---|
| 70 | Anthony Giordano | 7/26/2007 | 01:00 | Reg $50.00 | $50.00 |
| 70 | Anthony Giordano | 7/26/2007 | 00:30 | Reg $100.00 | $50.00 |
| | Total Hours: | 01:30 | | **Total Labor:** | **$100.00** |

Page    1   of  2            OVER

\* \* \* \* \* **D U P L I C A T E** \* \* \* \* \*



**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 07/26/2007
Invoice #: 43909
Customer #: 82258
Work Order #: 43909
Dispatch #: 45349
Service Date: 07/26/2007

**Bill To :** PANNETON, OVILA
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

**Job Site :**
PANNETON, OVILA
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

**INVOICE TOTALS**

| | |
|---|---:|
| Parts/Material | $36.00 |
| Misc/Other | $0.85 |
| Labor | $100.00 |
| **Total Invoice** | **$136.85** |

**PAYMENTS**

| | |
|---|---:|
| CC Payment : XXXXXXXXXXX-0304 | $136.85 |
| **Balance Due** | **$0.00** |

Page   2   of   2



**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

**\*\*\*\*DUPLICATE\*\*\*\***

Date: 07/31/2007
Invoice #: 43907
Customer #: 82258
Work Order #:
Dispatch #:
Service Date: 07/26/2007

Bill To : PANNETON, OVILA
         OVILA PANNETON   (Owner)
         19065 QUAIL CREEK DRIVE
         Fairhope, AL 36532

Job Site :
PANNETON, OVILA
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.

DUE UPON RECEIPT

JOB #1

SERVICE SALES [SV]

**Work Done**
UNIT ICED UP
FOUND INSULATION FROM DOOR PANEL OF BLOWER WHEEL WAS SUCKED INTO BLOWER, MOTOR
CUTTING OFF AIR FLOW TO COIL AND CAUSING THE COIL TO FREEZE, TAPPED INSULATION

**PARTS-MATERIAL USED**

| Qty | U.M. | Part# | Description | Price | Extended |
|-----|------|-------|-------------|-------|----------|
| 1 | EA | Non-Inventory | MISC SUPP | $4.00 | $4.00 |
| | | # of Parts: 1 | | **Total Parts:** | **$4.00** |

**MISC/OTHERS**

| | | Retail | |
|---|---|--------|---|
| TRIP CHARGE | | $39.00 | |
| DISCOUNT | | ($15.00) | |
| | **Total Misc:** | **$24.00** | |

**LABOR**

| Tech # | Tech Name | | Dt. Worked | Hrs Worked | Hrly Rate | |
|--------|-----------|---|------------|------------|-----------|---|
| 70 | Anthony Giordano | | 7/31/2007 | 01:00 | Reg $100.00 | $100.00 |
| | Total Hours: | 01:00 | | | **Total Labor:** | **$100.00** |

**INVOICE TOTALS**

| | |
|---|---|
| Parts/Material | $4.00 |
| Misc/Other | $24.00 |
| Labor | $100.00 |
| **Total Invoice** | **$128.00** |

**PAYMENTS**

CC Payment : XXXXXXXXXXX-0304

$128.00

**Balance Due**   **$0.00**

Page   1   of   1



**DUPLICATE**

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 08/20/2007
Invoice #: 44044
Customer #: 82258
Work Order #: 44044
Dispatch #: 45551
Service Date: 08/20/2007

**Bill To :** PANNETON, OVILA
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

**Job Site :**
PANNETON, OVILA
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.                                                            DUE UPON RECEIPT

JOB #1                                                            SERVICE SALES [SV]

Unit #      5382RA    ELECTRIC FURNACE
Model #     TWG060A150B            Serial #    5413MJE6V

**Work Done**
REPLACED LEAKING WARRANTY COIL

**PARTS-MATERIAL USED**

| Qty | U.M. | Part# | Description | Price | Extended |
|-----|------|-------|-------------|-------|----------|
| 4 | LB. | RF1 022 | REFRIGERANT R-22  SOLD BY LB. | $16.00 | $64.00 |
| 1 | LB. | RF1 022 | REFRIGERANT R-22  SOLD BY LB. | $16.00 | $16.00 |
| 1 | EA | Non-Inventory | WARRANTY COIL  COL09705 | | $0.00 |
| | | # of Parts:  6 | | **Total Parts:** | **$80.00** |

**MISC/OTHERS**

| | | Retail |
|---|---|--------|
| DISCOUNT | | ($53.25) |
| | Total Misc: | ($53.25) |

**LABOR**

| Tech # | Tech Name | Dt. Worked | Hrs Worked | | Hrly Rate | |
|--------|-----------|-----------|------------|---|-----------|---|
| 70 | Anthony Giordano | 8/11/2007 | 00:45 | Reg | $100.00 | $75.00 |
| 70 | Anthony Giordano | 8/20/2007 | 02:15 | Reg | $88.89 | $200.00 |
| | Total Hours: | 03:00 | | | **Total Labor:** | **$275.00** |

**INVOICE TOTALS**

| | |
|---|---|
| Parts/Material | $80.00 |
| Misc/Other | ($53.25) |
| Labor | $275.00 |
| **Total Invoice** | **$301.75** |

**PAYMENTS**

| | |
|---|---|
| CC Payment  : XXXXXXXXXX-0304 | $301.75 |
| **Balance Due** | **$0.00** |



**DUPLICATE**

Date: 11/13/2008
Invoice #: 46910
Customer #: 6681
Work Order #: 46910
Dispatch #: 50390
Service Date: 11/13/2008

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Bill To : Air Engineers
1022 Farnell Lane
Mobile, AL 36609

Job Site :
OLIVIA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.3015518 opt 3 | DUE UPON RECEIPT

JOB #1 | SERVICE SALES [SV]

Unit # 5382RC HEAT PUMP
Model # 2TWB0060A1000AB   Serial # 5222R1S1F

**Work Done**
REPLACED LEAKING EVAP COIL WITH NEW COATED COIL

**PARTS-MATERIAL USED**

| Qty | U.M. | Part# | Description | Price | Extended |
|---|---|---|---|---|---|
| 1 | EA | Non-Inventory | REC. AND VAC. | | $0.00 |
| 1 | EA. | WE1 370 | WELDING SOLDER SUPPLIES | | $0.00 |
| 7 | LB. | RF1 022 | REFRIGERANT R-22  SOLD BY LB. | | No Charge |
| 1 | EA | COL09705 | EVAP COIL TWG060 | | Warranty |

# of Parts: 10 | Total Parts: | **$0.00**

**LABOR**

| Tech # | Tech Name | Dt. Worked | Hrs Worked | | Hrly Rate | |
|---|---|---|---|---|---|---|
| 281 | Jason Hadley | 11/13/2008 | 01:30 | Reg | $80.00 | $120.00 |
| 18 | PAUL R. O'BRIEN | 10/13/2008 | 01:00 | Reg | | $0.00 |
| 289 | William Grider | 11/13/2008 | 01:30 | Reg | $80.00 | $120.00 |
| | Total Hours: | 04:00 | | | Total Labor: | **$240.00** |

**INVOICE TOTALS**
Labor $240.00
**Total Invoice** **$240.00**



**\*\*\*\*\*D U P L I C A T E\*\*\*\*\***

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 02/17/2009
Invoice #: 47509
Customer #: 82258
Work Order #: 47509
Dispatch #: 51130
Service Date: 02/17/2009

Bill To : OLIVIA PANNETON
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

Job Site :
OLIVIA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.3015518 opt 3

DUE UPON RECEIPT

JOB #1

SERVICE SALES

| Unit # | 5382RA | ELECTRIC FURNACE | | | | Eq. Mfg:TRAN |
| Model # | TWG060A150B | | Serial # | 5413MJE6V | | |

**Work Done**
KITCHEN BEDROOM AREA ZONE NOT WORKING
FOUND BAROMETER BY-PASS DAMPER IN THE OPEN POSITION, WITH 2 ZONES ENERGIZED.
DAMPER HAD SLIPPED ON ITS AXIS BAR REPOSITIONED AND TIGHTENED

**MISC/OTHERS**

| | Retail |
| --- | --- |
| DIAGNOSTIC | $76.00 |
| ENVIROMENTAL FEE | $4.00 |
| Total Misc: | **$80.00** |

**LABOR**

| Tech # | Tech Name | | Dt. Worked | Hrs Worked | Hrly Rate | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 18 | PAUL R. O'BRIEN | | 2/17/2009 | 00:30 | Reg $100.00 | | $50.00 |
| | Total Hours: | 00:30 | | | Total Labor: | | **$50.00** |

**INVOICE TOTALS**

| Misc/Other | $80.00 |
| --- | --- |
| Labor | $50.00 |
| **Total Invoice** | **$130.00** |

**PAYMENTS**

| CC Payment : XXXXXXXXXX-8416 | $130.00 |
| --- | --- |
| **Balance Due** | **$0.00** |

Page    1   of  1



**BHAC BALDWIN** Heating & Air Conditioning, Inc.

- Commercial & Residential • Sales, Service & Installation
- Commercial Refrigeration • Maintenance Agreements
10554 County Road 64 • Daphne, AL 36526

626-1159 • 937-7576 • 968-8011 • 947-2323


GUARDIAN Elite




# PREVENTIVE MAINTENANCE AGREEMENT

Ovilla C. Panneton

Our "PMA" with our valued customers:

We agree to provide you with two Precision Tune-Ups, Professional Cleanings and Safety Inspections per year as described below to help provide a comfortable, energy efficient, and safe indoor environment.

**BENEFITS:**

- Priority Customer Service
- 15% discount on repair service (parts and labor) when paid at time of service. Excludes Diagnostic Fee
- 24-hour Emergency Service
- No Overtime charge (except holidays)
- Improved efficiency
- Extended equipment life
- Improved capacity
- Inflation protection
- Agreement is transferrable

**PROCEDURES INCLUDE:**

- Clean standard air filter
- Inspect inside cooling coil. (Clean at discounted service rate if necessary.)
- Inspect primary and secondary drains
- Clean and test condensate drain
- Inspect condenser coil - clean as necessary
- Lubricate all moving parts (where applicable)
- Inspect and tighten all loose electrical connections
- Monitor air conditioner operating pressures for proper refrigerant charge.
- Monitor voltage and amperage draw on all motors
- Monitor air conditioning and heating cycles
- Inspect heat exchanger and burners - vacuum and/or adjust as necessary
- Adjust gas pressure as necessary
- Inspect pilot operation - adjust as necessary
- Monitor flue draft for safe operation
- Inspect and test safety controls
- Adjust air flow for proper temperature rise
- Inspect thermostat operations
- Inspect for cracked heat exchanger

| Name/Address/City/Zip | | | Location of Equipment | | |
|---|---|---|---|---|---|
| Mrs. Olivia Panneton | | | | | |
| 19060's Quail Creek Dr. | | | | | |
| Fairhope AL 36532 | | | | | |
| Phone: Residence 929-2915 | | | Phone: | | |
| Phone: Business | | | | | |
| Phone: Fax | | | Customer Number 62273 | | |

| EQUIPMENT INCLUDED | MAKE | MODEL # | SERIAL # | WTY EXP DATE |
|---|---|---|---|---|
| Primary System (     Location of I.D. Unit     ) | Trane | 2TWB0060A1000AB | 5222X151F | |
| 1.1 | | | | |
| 1.2 | Trane | TUG080A | 5910-0 | |
| Second System (     ) | | 150B1 | 065V | |
| 2.1 | | | | |
| 2.2 | | | | |
| Third System (     ) | | | | |
| 3.1 | | | | |
| 3.2 | | | | |
| Fourth System ( (1) 5 Ton - 3 Zone Heat Pump System | | | | |
| 4.1 | | | | |
| 4.2 | | | | |
| Filters: | | | | |
| Size ___ Qty ___ Size ___ Qty ___ Size ___ Qty ___ | | | | |

VISA 4306 7410 2098 8416  11-10

| | * 3 YEAR PMA | * 2 YEAR PMA | * 1 YEAR PMA |
|---|---|---|---|
| Primary A.C. and Heating System | $445.00 | $303.00 | $165.00 |
| Each Additional A/C and Heating System   Qty ( ) | $318.00 ea. | $217.00 ea. | $118.00 ea. |
| A.C. and Heating System Sub-Total | = $ | = $ | = $ |
| Electronic Air Cleaner $25.00/year each   Qty ( ) | = $ | = $ | = $ |
| Condesate Pump $8.00/year each   Qty ( ) | = $ | = $ | = $ 156.75 |
| Zone System $35.00    Zone System | = $ | = $ | 33.81 |
| Other (describe) | | | 170.00 |
|    Qty ( ) | = $ | = $ | = $ |
| SUB-TOTAL | | | |
| 5% Senior Citizen Discount on PMA price, if applicable (Homeowner must be 55 yrs. or older) | = $ | = $ | = $ |
| TOTAL   1. Primary System   1 3. Zone System | = $ | = $ | = $ |

Method of Payment

Credit Card    Type ____ Number ____ Exp. Date ____

Check

Cash

Contract Dates

Beginning ____ thru ____ Ending ____

Customer Approval _Ovilla Panneton_   Date ____

BHAC Experts Representative Approval _Paul Gibzien_   Date 8-4-07

**TAKE ADVANTAGE OF A 10% SAVINGS (PRIMARY A/C & HTG SYSTEM) BY CHOOSING OUR 3 YEAR PMA OR AN 8% SAVINGS (PRIMARY A/C & HTG SYSTEM) BY CHOOSING OUR 2 YEAR PMA.**

***NOTE:** If you choose to cancel a two or three year PMA after the first year, you will receive a prorata refund.

**THE ADDITIONAL TERMS AND PROVISIONS ON THE REVERSE SIDE HEREOF FORM A PART OF THIS AGREEMENT**

Date: 03/15/2010
Invoice #: 177562
Customer #: 82258
Work Order #:
Dispatch #:
Service Date: 03/15/2010

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824

**Bill To :** OLIVIA PANNETON
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

**Job Site :**
OLIVIA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #. 3015518 opt 3
JOB #1

Contract $        $165.00

DUE UPON RECEIPT
PMA 1YR RESIDENTIAL [M1]

**Work Done**
YOUR MAINTENANCE CONTRACT IS ABOUT TO EXPIRE.  PLEASE REMIT PAYMENT BY DUE DATE TO CONTINUE GETTING BI-ANNUAL SERVICE WITH
A 15% DISCOUNT ON PARTS AND LABOR WHEN PAID AT TIME OF SERVICE.

WE WOULD LIKE TO TAKE THIS OPPORTUNITY TO THANK YOU FOR LETTING US CONTINUE TO SERVE YOUR HVAC NEEDS.

WE ARE BALDWIN COUNTY'S HOME STANDBY GENERATOR DEALER, CALL TODAY FOR YOUR FREE ESTIMATE  251-626-1159.

Maintenance #1668
  Current Agreement will Expire on 04/29/10
  Renewed Agreement will Expire on 04/29/11
Covered Equipment :
Unit # ,Description ,Mfg# ,Model# ,Loc
5382RAH ,ELECTRIC FURNACE ,TRAN ,TWG060A150B
5382RC ,HEAT PUMP ,TRAN ,2TWB0060A1000AB
5382RHTR ,STRIP HEATERS ,TRAN ,BAYHTR1415BKRAC

**INVOICE TOTALS**
Contract                    $165.00

**Total Invoice            $165.00**

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 02/28/2011
Invoice #: 181993
Customer #: 82258
Work Order #:
Dispatch #:
Service Date: 02/28/2011

Bill To : OLIVIA PANNETON
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

Job Site :
OLIVIA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #. 3015518 opt 3
JOB #1
Contract $        $165.00

DUE UPON RECEIPT
PMA 1YR RESIDENTIAL [M1]

**Work Done**
YOUR MAINTENANCE CONTRACT IS ABOUT TO EXPIRE.  PLEASE REMIT PAYMENT BY DUE DATE TO CONTINUE GETTING BI-ANNUAL SERVICE WITH A 15% DISCOUNT ON PARTS AND LABOR WHEN PAID AT TIME OF SERVICE.

WE WOULD LIKE TO TAKE THIS OPPORTUNITY TO THANK YOU FOR LETTING US CONTINUE TO SERVE YOUR HVAC NEEDS.

WE ARE BALDWIN COUNTY'S HOME STANDBY GENERATOR DEALER, CALL TODAY FOR YOUR FREE ESTIMATE  251-626-1159.

Maintenance #1668
  Current Agreement will Expire on 04/29/11
  Renewed Agreement will Expire on 04/29/12
Covered Equipment :
Unit #  ,Description  ,Mfg#  ,Model#  ,Loc
5382RAH ,ELECTRIC FURNACE ,TRAN ,TWG060A150B
5382RC ,HEAT PUMP ,TRAN ,2TWB0060A1000AB
5382RHTR ,STRIP HEATERS ,TRAN ,BAYHTR1415BKRAC

**INVOICE TOTALS**
Contract              $165.00

**Total Invoice**          $165.00

Page   1   of   1



| 06/30/11 | 82258 | 1 | 06/30/11 | 82258 | 1 |

OLIVIA PANNETON
OVILA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL  36532

OLIVIA PANNETON
OVILA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL  36532

DUE UPON RECEIPT

Invoices for Customer #  82258 OLIVIA PANNETON, 19065 QUAIL CREEK DRIVE

| 06/21/11 | 53865 | Invoice | $124.00 | $124.00 | 53865 | $124.00 |

PMA Discount
and Service
Time charges    — 39.85
Reduced

$ 84.15

PD
Check
$ 3 87
7/7/11

ATTN:
Donna

| 0-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | | | |
|---|---|---|---|---|---|---|
| $124.00 | $0.00 | $0.00 | $0.00 | $124.00 | | $124.00 |



**\* \* \*** D U P L I C A T E **\* \* \***

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 08/01/2011
Invoice #: 54881
Customer #: 82258
Work Order #: 54881
Dispatch #: 60791
Service Date: 08/01/2011

**Bill To :** OLIVIA PANNETON
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

**Job Site :**
OLIVIA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.3015518 opt 3                                      DUE UPON RECEIPT

JOB #1                                            SERVICE SALES [SV]

Unit #        5382RA    ELECTRIC FURNACE
Model #      TWG060A150B               Serial #    5413MJE6V

**Work Done**
UNIT IS RUNNING CONNECT GAUGES TO CK FREOM PRESSURES FOUND GOOD 70 PSI SUCTION
AND 239 DISCHARGE. WITH 2 ZONES CALLING 74* INTO RETURN AND 51* AT SUPPLY OUT FOR A 23*
TEMP DIFFERENTIAL ACROSS COIL.   UNIT IS DOING ALL IT CAN READINGS ARE GOOD

**MISC/OTHERS**                                                    Retail
    DIAGNOSTIC                                               $89.00
    ENVIROMENTAL FEE                                         $4.00
                                              Total Misc:    **$93.00**

**LABOR**

Tech #  Tech Name                 Dt. Worked   Hrs Worked      Hrly Rate
18        PAUL R. O'BRIEN           8/1/2011      00:30       Reg              $0.00
                 Total Hours:      00:30                Total Labor:      **$0.00**

**INVOICE TOTALS**
                                            Misc/Other        $93.00
                                    **Total Invoice**       **$93.00**

**PAYMENTS**

                          Check Payment 391

                                                            $93.00
                                    **Balance Due**          **$0.00**

Page    1   of   1

* * * * * D U P L I C A T E * * * * *

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 09/13/2011
Invoice #: 54410
Customer #: 82258
Work Order #: 54410
Dispatch #: 61611
Service Date: 09/13/2011

Bill To : OVILA PANNETON
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

Job Site :
OVILA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.3015518 opt 3
JOB #1

DUE UPON RECEIPT
SERVICE SALES [SV]

| | | |
|---|---|---|
| Unit # | 5382RA | ELECTRIC FURNACE |
| Model # | TWG060A150B | |
| | | Serial #   5413MJE6V |

**Work Done**
FOUND 3 LEAKS IN EVAP COIL RECOMMEND REPLACEMENT

**MISC/OTHERS**

| | Retail |
|---|---|
| DIAGNOSTIC | $89.00 |
| ENVIROMENTAL FEE | $4.00 |
| Total Misc: | $93.00 |

**LABOR**

| Tech # | Tech Name | Dt. Worked | Hrs Worked | Hrly Rate | Extended |
|---|---|---|---|---|---|
| 66 | BRITTON KINGSTON | 9/13/2011 | 00:30 | Reg | $0.00 |
| | Total Hours:   00:30 | | | Total Labor: | $0.00 |

**INVOICE TOTALS**

| | |
|---|---|
| Misc/Other | $93.00 |
| **Total Invoice** | **$93.00** |

**PAYMENTS**

CC Payment : XXXXXXXXXXX-6936

| | |
|---|---|
| | $93.00 |
| **Balance Due** | **$0.00** |



**\*\*\*\*DUPLICATE\*\*\*\***

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 09/14/2011
Invoice #: 184858
Customer #: 82258
Work Order #:
Dispatch #:
Service Date: 09/14/2011

**Bill To :** OVILA PANNETON
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

**Job Site :**
PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.3015518 opt 3

DUE UPON RECEIPT

**JOB #1**

REPLACEMENT/RETROFIT [RE]

Contract $      $3,000.00

**Work Done**
Job Cost # 11169R OVILA PANNETON Phase # P1

CHANGE OUT, INSTALLED NEW TRANE 5.0 TON AIR HANDLER WITH ALUMINUM COIL AND NEW DRAIN PAN.  USED SAME COPPER AND DRAIN, NOT RESPONSIBLE FOR ZONE. EQUIPMENT COMES WITH MANUFACTURER'S  FIVE YEAR FUNCTIONAL PARTS WARRANTY.  YOU MUST HAVE ANNUAL MAINTENANCE TO KEEP PARTS WARRANTY VALID.

M# TAM4A0C60S51SAA  S# 1122201N2V
M# BAYEABC15BK1AAA  S# 11013LW78X

JOB COST        $3000.00
NOW DUE          3000.00

THANK YOU!

WE ARE NOW YOUR AUTHORIZED GUARDIAN HOME STANDBY GENERATOR DEALER,  CALL TODAY FOR A FREE ESTIMATE 626-1159.

**INVOICE TOTALS**

Contract        $3,000.00
**Total Invoice    $3,000.00**

**PAYMENTS**

Check Payment 393

$3,000.00
**Balance Due      $0.00**



*PMA FoR 2012*   Wells Fargo Advisors

## View Check Copy

| Check Number | Date Posted | Check Amount | Account Number |
|---|---|---|---|
| 5009 | 03/08/12 | $156.75 | Crown Classic XXXXXXXX7485 |

OVILA O. PANNETON 01/04
RUTH H PANNETON
19005 QUAIL CREEK DRIVE
FAIRHOPE, AL 36532

5009

5 March 2012

Pay to the Order of   Baldwin H + A   $ 156.75

One Hundred Fifty six   Dollars

Wells Fargo Bank, N.A.
Virginia
wellsfargo.com

For  PMA 82250

⑆051400549⑆ 1070114 2074 85 5009

FOR DEPOSIT ONLY
BALDWIN HEATING
AND AIR CONDITIONING
ACCT # 8150001057

⌂ Equal Housing Lender
© 1995 - 2012 Wells Fargo. All rights reserved.

*****DUPLICATE*****

# BALDWIN Heating & Air Conditioning, Inc.
### www.baldwinhvac.com

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 09/27/2010
Invoice #: 52031
Customer #: 82258
Work Order #: 52031
Dispatch #: 57504
Service Date: 09/27/2010

**Bill To :** OLIVIA PANNETON
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

**Job Site :**
OLIVIA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

P.O. #.3015518 opt 3

DUE UPON RECEIPT

JOB #1

SERVICE SALES [SV]

Unit #     5382RC     HEAT PUMP
Model #     2TWB0060A1000AB          Serial #     5222R1S1F

## Work Done
FAILED COMPRESSOR NEED TO REPLACE, ORDERED RETURNED AND REPLACED RECHARGED AND TESTED

## PARTS-MATERIAL USED

| Qty | U.M. | Part# | Description | Price | Extended |
|-----|------|-------|-------------|-------|----------|
| 10 | LB. | RF1 022 | REFRIGERANT R-22  SOLD BY LB. | $22.00 | $220.00 |
| 1 | EA. | COM03733 | COMPRESSOR | | Warranty |
| 1 | EA. | CPT00660 | CAPACITOR | | Warranty |
| 1 | EA. | DHY00150 | DRIER 3/8 ODF 163S TRANE DHY00150 | | Warranty |

# of Parts: 13

**Total Parts:** **$220.00**

## MISC/OTHERS

| | Retail |
|---|--------|
| DIAGNOSTIC | $65.00 |
| ENVIROMENTAL FEE | $4.00 |
| Equipment Rental | $25.00 |
| Equipment Rental | $30.00 |
| Equipment Rental | $75.00 |
| **Total Misc:** | **$199.00** |

## LABOR

| Tech # | Tech Name | Dt. Worked | Hrs Worked | Hrly Rate | |
|--------|-----------|------------|------------|-----------|---|
| 72 | Bradley Mc Cullough | 9/27/2010 | 03:30 | Reg $85.71 | $300.00 |
| 72 | Bradley Mc Cullough | 9/26/2010 | 00:30 | Reg | $0.00 |
| 18 | PAUL R. O'BRIEN | 9/27/2010 | 00:44 | Reg | $0.00 |
| | Total Hours: | 04:44 | | **Total Labor:** | **$300.00** |

Page   1   of   2      OVER

**\*\*\*\*\*D U P L I C A T E\*\*\*\*\***

**Baldwin Heating & A.C. Inc.**
10554 Co Rd 64
Daphne, AL 36526

(251) 626-1159
Fax # (251) 626-1824
STEVE@BALDWINHVAC.COM

Date: 09/27/2010
Invoice #: 52031
Customer #: 82258
Work Order #: 52031
Dispatch #: 57504
Service Date: 09/27/2010

**Bill To :** OLIVIA PANNETON
OVILA PANNETON   (Owner)
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

**Job Site :**
OLIVIA PANNETON
19065 QUAIL CREEK DRIVE
Fairhope, AL 36532

## INVOICE TOTALS

| | |
|---|---|
| Parts/Material | $220.00 |
| 15% DISCOUNT | ($98.00) |
| Misc/Other | $199.00 |
| Labor | $300.00 |
| **Total Invoice** | **$621.00** |

PAYMENTS

CC Payment : XXXXXXXXXX-7232

| | |
|---|---|
| | $621.00 |
| **Balance Due** | **$0.00** |

Page   2   of 2

# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:
ALL CASES AND

Payton, et al. v. Knauf Gips, KG, et al
Case No. 2:09-cv-07628 (E.D. La.)

Gross, et al. v. Knauf Gips, KG, et al.
Case No. 2:09-cv-06690 (E.D. La.)

Rogers, et al. v. Knauf Gips, KG et al.
Case No. 2:10-cv-00362 (E.D. La.)

Abreu, et al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et al.
Case No. 2:11-cv-00252 (E.D. La.)

Block, et al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et al.
Case No. 11:cv-1363 (E.D. La)

Arndt, et al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et al.
Case No. 11-cv-2349 (E.D. La.)

Cassidy, et al. v. Gebrueder Knauf
Verwaltungsgesellschaft, KG, et al.
Case No.11-cv-3023 (E.D. La.)

Vickers, et al. v. Knauf Gips KG, et al.
Case No. 2:09-cv-04117 (E.D. La.)

MDL NO. 2047

SECTION: L

JUDGE FALLON

MAG.JUDGE WILKINSON

C:\Users\greg\Documents\mississippistuff\riverbendaccountingdecpage2010\Knaufobjection.docx
Knauf

### Objection to Settlement

Comes now Gregory Friedlander, pro se, and files this limited objection based on fairness
alleging there are interpretations, not changes, required in fairness which should be made to the
settlement which cause no harm, no additional work, no additional cost and no significant modification of
other provisions in the agreement.

(1) The interpretation or change is to allow the self remediation payment to go (1) First to
removal of the Sheetrock and affected materials and 2) then the balance under a contractor's
estimate to a bank to pay off the debt on the properties in question or to the owner. This
satisfies both the debt and the defendant's concerns as to liability AND IS FULLY
CONSISTENT with the summary of Owner "Requirements" in the agreement.

(2) The owner can then sell the units or give them to Habitat for Humanity or other charitable concerns to finish. The provisions are otherwise fair and acceptable as a settlement of necessity but defendant's interest stops at demolition and parties should be free to stop after demolition and then satisfy the debt on the property and sell the remediated unit in a cleaned state. Fairness requires this modest change because the value of investment units have been destroyed by reputation which remediation does not solve.

(3) This remedy does not adversely affect Knauf which may pay for demolition (approximately 7.00/square foot or may do it themselves and deduct that from the repair payment at the election of the parties.

(4) The benefits of this approach.

a) By paying off the bank, foreclosure is avoided and the economy doesn't need more foreclosures.

b) Because of sheetrock problems, the units owned by the objecting party have lost more than 120,000/unit in value. No one benefits from a forced rebuild these units which are worthless unless for an end user.

c) The units once cleaned (sheet rock removed) and the mortgages paid off may be sold to an end user who will finish the units (estimate 5-10,000/unit) or may be donated to habitat for humanity to recover the tax benefits which will also assure the units are put back into use, will provide a charitable function and prevent foreclosure.

d) The agreement is otherwise inconsistent as it provides for paying interest in the investment caused by the inability to sell which interest would otherwise go on forever.

(5) Additional Facts:

a) The units in question are condominium units. Before problems with dry-wall surfaced these were selling for over 150,000/unit.

b) After the a/c units began to fail, law suits were filed against the developer, the units could no longer be sold. The debts owed as a result of borrowing to fund the building were unpaid. Prices immediately dropped to 75,000 for 2 bedroom units; essentially dropping the value in half and because of the notice requirements, the units were no longer saleable even at that price except to high risk investors.

c) Thereafter the prices fell to less than 20,000 per unit when the problem was finally determined to be defective Chinese drywall.[1]

d) The developers of the complex had over 572,000.00 in loans each to the developing corporation which were in turn secured with other loans and from 9/1/2006 (the date of the last loan) to the present these loans have borne varying interest at the rate of over $240,000 which interest continues today as the units cannot be sold to pay back the loans) as well as costs associated with those loan.[2] These loans could not be retired because the units could not be sold due to

---

[1] Exhibits c, d, e and f are instructive (c and d are admissible as public records, e and f are copies of sworn pleadings (excerpted to save paper). These show that by December of 2008, before anyone knew of the drywall problem, the electrical systems were failing to such an extent that a lawsuit was filed alleging, inter alia, the contractor had failed to "install adequate air conditioning systems...which has resulted in failures...failed to install adequate electrical, cable...resulted in loss of use due to failures of these systems..." While the value of the units before these failures is not disclosed, the value is "less than 130,000" for a two bedroom unit. Exhibit c shows a tax appraisal of 88,690 for a 2 bedroom unit (842/year in taxes) and 109260 for a 3 bedroom unit (1038.33 in taxes) down from the 150,000 initial sales price. Likewise exhibit d shows tax appraisals for 2011 at 16,110 for a two bedroom and 19790 for a 3 bedroom unit (a 80% loss I value). It is submitted that this is admissible as public records and should be adequate supporting evidence for purposes of this fairness hearing

[2] Loans made which could not be repaid due to units being cdw units approximately $970,000, interest of approximately 240,534 paid (some interest payments have accrued but not been made on 400,000 in debt, approximately 40,000/year); taxes on units which could not be sold 25,236; appliance to be replaced 10,000; damages based on lost rents and repairs to date are approximately 70,133.00 for the 5 units in question. The total loss related to the cdw is $130,000 per unit in lost value plus $150,000-197,000 loss in terms of interest, repair costs, etc. The 150,000-197,000 loss is the only part addressed in the settlement; the maximum recovery being 50% or less of the loss to the owners.

litigation which, inter alia, alleged the air conditioning units were wrong for the units because they were failing.

e)      There is no way in the near term for the units to recover the loss of over $130,000 in value. The present best use of the units is to sell them for whatever can be recovered as stripped units (no drywall) which is expected to be at 5-10,000 per unit to someone who can finish the units, someone who will finish and live in them or donate them to charity (Habitat for Humanity) which can afford to build them for end users without incurring debt on the units.

f)      The best use of the remediation fund to the owners is to pay off the debt so that they can liquidate the properties and take the loss/tax deduction.

g)      The funds that would be wasted by an owner repairing his unit would be better spent to pay off debt on the units.

h)      Since Knauf is totally satisfied with removal of the drywall, this remedy is the best for the owner and has no downside for Knauf. The owner can reduce their loss of value from 120/sq foot down to around 40 or 50/square foot in this way and can recover the interest loss as provided in the plan.

i)      The other provisions of the settlement can remain the same so no delay in the settlement is required. The language of the provision for owner repair is merely changed so that the owner is paid the entire amount for the repair of the unit as soon as the demolition/removal of drywall and other affected materials is completed.

j)      A repair estimate of 61.90/sq foot (2 bedroom unit) is attached. This is entirely consistent with the settlement.

k)      Past repairs, lost rents, etc provided for in the settlement come to around 14,000 per unit with sheetrock.

l)      Taxes provided for in the settlement were approximately 1200/year for 6 years for each unit or $7200.

m)      A modified "self remediation option" is attached as an exhibit to show how minimal the change and how no negative effect is visited on any of the parties.

n)      The agreement, in fact, is not affected in any way by this provision.  The requirements set out are as follows:

### (i) Requirements:

(A) Owner contracts with contractor

(B) Contractor must be both bonded and insured for residential construction

(C) Contractor must be provide Environmental Certificate that property is free of all Chinese Drywall

(D) Contractor must certify that that it properly disposed of any Chinese Drywall removed from the property

(6) There is NO PROVISION in item 14 that the Contractor "rebuild" the unit.  Therefore, it is implied that the Owner may accomplish the result desired by the parties in the Requirement provision and fulfill that obligation IN FULL without rebuilding the unit.

(7) Fairness means accepting a settlement, where everyone sacrifices, but it also requires that illogical portions that only hurt and that do not logically get the parties to an end point or which only harm without a corresponding good should be interpreted to do good or changed to do good.

(8) Logic also dictates that if the debts are not repaid from repair money "after remediation (removal of the drywall) then interest continues to accrue.  Since one remedy in the settlement is to compensate the owners for interest payments lost (here as much as $240,000 per owner) repayment of these loans, to the extent possible, from the settlement, is critical to the ends of the agreement.

Wherefore, your petitioner respectfully request that an interpretation, modification or other change of the settlement as set forth hereinabove be made to provide that after the sheetrock is removed (completion of the "requirements" of the settlement) that the balance of the funds to be paid for

construction be allowed to be paid on debt on the property and the balance, if any, paid to the owner or for such different other and similar relief be provided to which the petitioner should be entitled under the terms as submitted and under the premises considered.

Respectfully Submitted,

_____
GREGORY M. FRIEDLANDER

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the ___12___ day of __March_____, 2012, served a copy of the foregoing by placing same in the United States Mail properly, addressed and first class postage prepaid to the following:

Arnold Levin
Levin, Fishbein, Sedran &Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

Kerry Miller
Frilot L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163

_____
GREGORY M. FRIEDLANDER

Exhibit A

| Amended Self-Remediation allowing for the mortgages to be paid off | Self-Remediation Option |
|---|---|
| **Benefits:**<br>• **Remediation.** The Remediation Fund will pay to the owner's mortgage company based on an estimate prepared by a contractor for remediation approved by the PCS and Knauf Defendants for repairs less the cost of demolition to remove sheetrock and effected elements of building with the excess after all mortgages are paid going to owner if any.<br>• The Remediation Fund will pay a qualified contractor, chosen by the Owner, to remediate the property by demolition only to do the demolition based on an estimate prepared by a contractor approved by the PCS and Knauf Defendants.<br>• **Other Covered Expenses.** A cash payment for personal property damage and alternative living expenses during remediation:<br>  ○ Property $\leq$ 3,500 SF = $8.50 per SF<br>  ○ Property > 3,500 SF = $10.00 per SF | **Benefits:**<br>• **Remediation.** The Remediation Fund will pay a qualified contractor, chosen by the Owner, to remediate the property based on an estimate prepared by a contractor approved by the PCS and Knauf Defendants.<br>• **Other Covered Expenses.** A cash payment for personal property damage and alternative living expenses during remediation:<br>  ○ Property $\leq$ 3,500 SF = $8.50 per SF<br>  ○ Property > 3,500 SF = $10.00 per SF |
| **Requirements:**<br>• Owner contracts with contractor<br>• Contractor must be both bonded and insured for residential construction<br>  Contractor must certify that it properly disposed of any Chinese Drywall removed from the property | **Requirements:**<br>• Owner contracts with contractor<br>• Contractor must be both bonded and insured for residential construction<br>• Contractor must certify that it properly disposed of any Chinese Drywall removed from the property |
| **Mixed Properties:**<br>• **Remediation.** The Remediation Fund will pay the Owner's chosen contractor an amount equal to the cost to remediate the property (as determined by a contractor approved by the PSC and the Knauf Defendants) multiplied by the percentage of KPT Chinese Drywall relative to all reactive Chinese Drywall in the property. The owner must pay the balance with his/her own funds.<br>**Other Covered Expenses.** The | **Mixed Properties:**<br>• **Remediation.** The Remediation Fund will pay the Owner's chosen contractor an amount equal to the cost to remediate the property (as determined by a contractor approved by the PSC and the Knauf Defendants) multiplied by the percentage of KPT Chinese Drywall relative to all reactive Chinese Drywall in the property. The owner must pay the balance with his/her own funds.<br>• **Other Covered Expenses.** The |

| | |
|---|---|
| Remediation Fund will only pay the Owner an amount equal to the Other Covered Expenses (described above) multiplied by the percentage of KPT Chinese Drywall relative to all Chinese Drywall in the property. | Remediation Fund will only pay the Owner an amount equal to the Other Covered Expenses (described above) multiplied by the percentage of KPT Chinese Drywall relative to all Chinese Drywall in the property. |
| **Benefits:**<br>**Remediation.** The Remediation Fund will pay a qualified contractor, chosen by the Owner, to properly dispose of any Chinese Drywall and the balance due to remediate the property based on an estimate prepared by a contractor approved by the PSC and Knauf Defendants will be paid on the mortgage on the property with the excess after all mortgages paid going to owner if any. | **Benefits:**<br>• **Remediation.** The Remediation Fund will pay a qualified contractor, chosen by the Owner, to remediate the property based on an estimate prepared by a contractor approved by the PSC and Knauf Defendants. |
| **Requirements:**<br>• Owner contracts with contractor<br>• Contractor must be both bonded and insured for residential construction<br>• Contractor must be provide Environmental Certificate that property is free of all Chinese Drywall<br>• Contractor must certify that that it properly disposed of any Chinese Drywall removed from the property | **Requirements:**<br>• Owner contracts with contractor<br>• Contractor must be both bonded and insured for residential construction<br>• Contractor must be provide Environmental Certificate that property is free of all Chinese Drywall<br>• Contractor must certify that that it properly disposed of any Chinese Drywall removed from the property |
| **Mixed Properties:**<br>**Remediation.** The Remediation Fund will pay the Owner's chosen contractor an amount equal to the cost to remediate the property (as determined by a contractor approved by the PSC and the Knauf Defendants) multiplied by the percentage of KPT Chinese Drywall in the property. The Owner must pay the balance with his/her own funds. | **Mixed Properties:**<br>**Remediation.** The Remediation Fund will pay the Owner's chosen contractor an amount equal to the cost to remediate the property (as determined by a contractor approved by the PSC and the Knauf Defendants) multiplied by the percentage of KPT Chinese Drywall in the property. The Owner must pay the balance with his/her own funds. |

Exhibit B
Repair Estimate: 2 bedroom 1050 sq foot unit:

## ROBERT FOSTER CONSTRUCTION
## PROPOSAL
**Demolition**
**Taking down fixtures, trim and tearing out drywall,**
**plumbing and cabinets, removing carpet**
**$ 6,500.00**
**Total $6,500.00**
**Construction**
**Purchasing new drywall $ 1,800.00**
**Hanging and finishing drywall 4,000.00**
**New trim package 6,800.00**
**Painting 3,800.00**
**Countertops, cabinets and vanities (installed) 6,500.00**
**Re-plumbing new fixtures 5,000.00**
**New light fixtures, fans 3,200.00**
**New marble for 2 bathrooms 1,600.00**
**Re-insulating ceilings, walls 3,000.00**
**New a/c unit and ductwork 6,500.00**
**Carpet (installed) 6,300.00**
**New kitchen appliances 3,000.00**
**Dumpster (x 2 months) 2,000.00**
**Misc. expenses 5,000.00**
**Total $58,500.00**
**Grand Total $65,000.00**

O BOX 998
SCAGOULA MS 39568
75957

PARCEL NUMBER   0 3840
DISTRICT   3840
YEAR 2008
PPIN 78741

DELINQUENT AT 1% PER MONTH AFTER FEB 1 2009

DESCRIPTION   NOT RESPONSIBLE FOR PAYMENTS LOST IN MAIL

UNIT 6 RIVERBEND CONDOMINIUMS
& 1/102ND UND INT IN COMMON AREA
PB 23-11 (37 MAP776.24-04)

FRIEDLANDER GREGORY
11 SOUTH FLORIDA
MOBILE   AL 36606

24 7S 7W   MCO
TOTAL TRUE   109260   ASSESSED 16370
COUNTY 852.13   SCHOOL 793.11   CITY 351.57   TOTAL TAXES DUE 1,038.33

HASLER $0.24²
MAY 01 2009
US POSTAGE
FIRST CLASS PRSRT
MAILED FROM 38593
011A0413004842

---

E TUCKER
X COLLECTOR
O BOX 998
SCAGOULA MS 39568

RECEIPT NUMBER   75986
YEAR 2008   PPIN 78760
DISTRICT   3840
Parcel number   5986   0 3840
500025.000
IN 78760 YEAR 2008

DELINQUENT AT 1% PER MONTH AFTER FEB. 1 2009
NOT RESPONSIBLE FOR PAYMENTS LOST IN MAIL

HASLER $0.24²
MAY 01 2009
US POSTAGE
FIRST CLASS PRSRT
MAILED FROM 38593
011A0413004842

DESCRIPTION   UNIT 25 RIVERBEND CONDOMINIUMS
& 1/102ND UND INT IN COMMON ARIA
PB 23-11 (37 MAP776.24-04)

*exhibit C*

---

EDLANDER GREGORY                 24 7S  7W   MCO
                                 TOTAL TRUE 109740   ASSESSED 16462
LOREM TAX   2005.59
STEAD CREDIT          COUNTY 855.88   SCHOOL 796.60   CITY 353.11   TOTAL TAXES DUE 1,042.69
DVALOREM    2005.59
ER TAX
  PAID     1003.00
  DUE      1002.59
EREST        40.10
DUE      $1,042.69

FRIEDLANDER GREGORY

11 SOUTH FLORIDA
MOBILE       AL 36606



ECTOR
998
OULA MS 39568

| RECEIPT NUMBER | | | 76060 |
|---|---|---|---|
| | YEAR | PPIN | |
| | 2008 | 78834 | |

| CEIPT NUMBER | DISTRICT |
|---|---|
| 050 | 0 3B40 |

DELINQUENT AT 1% PER 2009
MONTH AFTER FEB. 1,
NOT RESPONSIBLE FOR
PAYMENTS LOST IN MAIL

HASLER   $0.24²
MAY 01 2009
US POSTAGE
FIRST CLASS PRSRT
MAILED FROM 29605
011A0413004842

DESCRIPTION UNIT 99 RIVERBEND CONDOMINIUMS
& 1/102ND UND INT IN COMMON AREA
PB 23-11 (37 MAP776.24-04)

| PARCEL NUMBER |
|---|
| 500099.000 |

PPIN  78834  YEAR  2008

MAIL THIS PORTION WITH YOUR PAYMENT.

FRIEDLANDER GREGORY                24 7S  7W  MCD

| | | | TOTAL TRUE | ASSESSED |
|---|---|---|---|---|
| | | | 88670 | 13304 |

| CRES | | | | | | | |
|---|---|---|---|---|---|---|---|
| OVALOREM TAX | 1620.84 | COUNTY | SCHOOL | CITY | TOTAL TAX | |
| OMESTEAD CREDIT | | 591.69 | 643.78 | 285.37 | B...5 | |
| T ADVALOREM | 1620.84 | | | | | |
| THER TAX | | FRIEDLANDER GREGORY | | | | |
| MT PAID | 810.42 | | | | | |
| ET DUE | 810.42 | | | | | |
| NTEREST | 32.41 | 11 SOUTH FLORIDA | | | | |
| OTAL DUE | $842.83 | MOBILE      AL 36606 1934 | | | | |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

E TUCKER
X COLLECTOR
O BOX 998
SCAGOULA MS 39568

| RECEIPT NUMBER | | | 75991 |
|---|---|---|---|
| | YEAR | PPIN | |
| | 2008 | 78765 | |

| RECEIPT NUMBER | DISTRICT |
|---|---|
| 5991 | 0 3B40 |

DELINQUENT AT 1% PER 2009
MONTH AFTER FEB. 1,
NOT RESPONSIBLE FOR
PAYMENTS LOST IN MAIL

HASLER   $0.24²
MAY 01 2009
US POSTAGE
FIRST CLASS PRSRT
MAILED FROM 29605
011A0413004842

DESCRIPTION UNIT 30 RIVERBEND CONDOMINIUMS
& 1/102ND UND INT IN COMMON AREA
PB 23-11 (37 MAP776.24-04)

| PARCEL NUMBER |
|---|
| 500030.000 |

PPIN  78765  YEAR  2008

MAIL THIS PORTION WITH YOUR PAYMENT.

FRIEDLANDER GREGORY                24 7S  7W  MCD

| | | | TOTAL TRUE | ASSESSED |
|---|---|---|---|---|
| | | | 109260 | 16390 |

| CRES | | | | | | | |
|---|---|---|---|---|---|---|---|
| OVALOREM TAX | 1996.81 | COUNTY | SCHOOL | CITY | TOTAL TAXES DUE | |
| OMESTEAD CREDIT | | 852.13 | 793.11 | 351.57 | 1,038.33 | |
| T ADVALOREM | 1996.81 | | | | | |
| THER TAX | | FRIEDLANDER GREGORY | | | | |
| MT PAID | 998.41 | | | | | |
| ET DUE | 998.40 | | | | | |
| NTEREST | 39.93 | 11 SOUTH FLORIDA | | | | |
| OTAL DUE | $1,038.33 | MOBILE      AL 36606 | | | | |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

JOE TUCKER
TAX COLLECTOR
P O BOX 998
PASCAGOULA MS 39568

| RECEIPT NUMBER | DISTRICT |
|---|---|
| 77275 | 0   3840 |

PARCEL NUMBER
86500099.000

| PPIN | YEAR |
|---|---|
| 78834 | 2011 |

MAIL THIS PORTION WITH YOUR PAYMENT.

DELINQUENT-2010 2009

FRIEDLANDER GREGORY

| | |
|---|---|
| ACRES | |
| ADVALOREM TAX | 318.71 |
| HOMESTEAD CREDIT | |
| NET ADVALOREM | 318.71 |
| TOTAL DUE | $318.71 |

016H26521325

DELINQUENT AT 1% PER
MONTH AFTER FEB 1 2012
NOT RESPONSIBLE FOR
PAYMENTS LEFT IN NAME

$00.26

11/30/2011

UNIT F25 WALTER END CONDOMINIUMS
& 1/103RD INTEREST IN COMMON AREA
PB 23-11 (37 MAP776.24-04)

| | 24 7S  7W  MCO | | |
|---|---|---|---|
| | TOTAL TRUE 13110 | | ASSESSED 241 |
| COUNTY | SCHOOL | CITY | TOTAL TAXES DUE |
| 124.18 | 116.94 | 77.59 | 318.71 |

FRIEDLANDER GREGORY

11 SOUTH FLORIDA
MOBILE    AL 36606 1934

---

JOE TUCKER
TAX COLLECTOR
P O BOX 998
PASCAGOULA MS 39568

| RECEIPT NUMBER | DISTRICT |
|---|---|
| 77206 | 0   3840 |

PARCEL NUMBER
86500030.000

| PPIN | YEAR |
|---|---|
| 78765 | 2011 |

MAIL THIS PORTION WITH YOUR PAYMENT.

DELINQUENT-2010 2009

FRIEDLANDER GREGORY

| | |
|---|---|
| ACRES | |
| ADVALOREM TAX | 391.48 |
| HOMESTEAD CREDIT | |
| NET ADVALOREM | 391.48 |
| TOTAL DUE | $391.48 |

016H26521325

DELINQUENT AT 1% PER
MONTH AFTER FEB 1 2012
NOT RESPONSIBLE FOR
PAYMENTS LEFT IN NAME

$00.26

11/30/2011

UNIT F25 WALTER END CONDOMINIUMS
& 1/103RD INTEREST IN COMMON AREA
PB 23-11 (37 MAP776.24-04)

| | 24 7S  7W  MCO | | |
|---|---|---|---|
| | TOTAL TRUE 19790 | | ASSESSED 2969 |
| COUNTY | SCHOOL | CITY | TOTAL TAXES DUE |
| 152.51 | 143.67 | 95.30 | 391.48 |

FRIEDLANDER GREGORY

11 SOUTH FLORIDA
MOBILE    AL 36606

---

JOE TUCKER
TAX COLLECTOR
P O BOX 998
PASCAGOULA MS 39568

| RECEIPT NUMBER | |
|---|---|
| 77201 | |

| YEAR | PPIN |
|---|---|
| 2011 | |

016H26521325

| RECEIPT NUMBER | DISTRICT |
|---|---|
| 77201 | 0   3840 |

PARCEL NUMBER
86500025.000

| PPIN | YEAR |
|---|---|
| 78760 | 2011 |

MAIL THIS PORTION WITH YOUR PAYMENT.

DELINQUENT-2010 2009

DELINQUENT AT 1% PER
MONTH AFTER FEB 1 2012
NOT RESPONSIBLE FOR
PAYMENTS LEFT IN NAME

$00.26

11/30/2011

UNIT F25 WALTER END CONDOMINIUMS
& 1/103RD INTEREST IN COMMON AREA
PB 23-11 (37 MAP776.24-04)

exhibit D

| FRIEDLANDER GREGORY | | 24 7S  7W  MCO | | |
|---|---|---|---|---|
| | | TOTAL TRUE 19790 | | ASSESSED 2969 |
| ACRES | | | | |
| ADVALOREM TAX | 391.48 | COUNTY | SCHOOL | CITY | TOTAL TAXES DUE |
| HOMESTEAD CREDIT | | 152.51 | 143.67 | 95.30 | 391.48 |
| NET ADVALOREM | 391.48 | | | | |
| TOTAL DUE | $391.48 | | | | |

FRIEDLANDER GREGORY

11 SOUTH FLORIDA
MOBILE    AL 36606

JOE TUCKER
TAX COLLECTOR
P O BOX 998
PASCAGOULA MS 39568

| RECEIPT NUMBER | | DISTRICT | YEAR | | | PPIN |
| 77192 | | 3840 | 2011 | | | 0637 |

| PARCEL NUMBER |
| 86500016.000 |

| PPIN | 78751 | YEAR | 2011 |

DELINQUENT-2010 2009.

MAIL THIS PORTION WITH YOUR PAYMENT.

FRIEDLANDER GREGORY

| | COUNTY | SCHOOL | | MCD |
| ACRES | 24.75 | 7W | | |
| ADVALOREM TAX | 318.71 | 16.10 | | |
| HOMESTEAD CREDIT | 1.24 | 16 | 77.59 | |
| NET ADVALOREM | 318.71 | | | |

DESCRIPTION
UNIT
& 1/1
PB 23-11 (37 MAP776.24-

FRIEDLANDER GREGORY
11 SOUTH FLORIDA
OCEAN SPRINGS MS 36606

TOTAL DUE   5318.71

---

JOE TUCKER
TAX COLLECTOR
P O BOX 998
PASCAGOULA MS 39568

| RECEIPT NUMBER | | DISTRICT | YEAR |
| 77182 | | 3840 | 2011 |

| PARCEL NUMBER |
| 86500006.000 |

| PPIN | 78741 | YEAR | 2011 |

MAIL THIS PORTION WITH YOUR PAYMENT.

DELINQUENT-2010 2009.

FRIEDLANDER GREGORY

| | COUNTY | SCHOOL | | MCD | ASSESSED |
| ACRES | 24.75 | 7W | | 2462 |
| ADVALOREM TAX | 391.48 | 17790 | | TOTAL TAX |
| HOMESTEAD CREDIT | 152.51 | 143.67 | 95.30 | |
| NET ADVALOREM | 391.48 | | | 391.44 |

DESCRIPTION
UNIT
& 1/1
PB 23-11 (37 MAP776.24-04)

FRIEDLANDER GREGORY
11 SOUTH FLORIDA
MOBILE AL 36606

TOTAL DUE   $391.48

*Exhibit 2*

## IN THE CHANCERY COURT OF JACKSON COUNTY, MISSISSIPPI

KENNETH R. DUFF, Individually and
d/b/a ACCESS PROPERTY MANAGEMENT, LLC          PLAINTIFF

versus                                          No. 2008-2364-JB

THE POWER BROKER, INC.,
ANTE BELLUM, LLC, ROBIN SPENCE,                 FILED
SIGNATURE BUILDERS OF MISSISSIPPI, LLC,
MADISON HOMES OF OCEAN SPRINGS, LLC,            DEC 1 8 2008
GREG STEWART, DAVID P. PILGER,
MATTHEW TODD DELANO, BARBARA DELANO,            TERRY MILLER, CLERK
GREGORY M. FRIEDLANDER and                      By_____
FIRST GUARANTY MORTGAGE CORPORATION
         AMENDED
### PLAINTIFF'S COMPLAINT FOR CONTRACT RESCISSION AND DAMAGES

COMES NOW the Plaintiff KENNETH R. DUFF, Individually and d/b/a

ACCESS PROPERTY MANAGEMENT, LLC and files this his ^Amended Complaint for

Contract Rescission and Damages, showing unto the Court as follows:

1.      The Plaintiff is a adult resident citizen of the State of California, and

he is also doing business as Access Property Management, LLC, a Limited

Liability Company organized under the laws of the State of Nevada and licensed

to do business in the State of Mississippi, which presently holds title to the

subject real estate in the Jackson County, Mississippi.

2.      The Defendants are:

a.      THE POWER BROKER, INC., a Florida corporation currently

licensed to do business in the State of Mississippi, that may be served with

process in the manner prescribed by law through its registered agent;

9.      The Plaintiff would show that in addition to the aforesaid violations of statutory licensing requirements, the Defendants GREG STEWART, MADISON HOMES OF OCEAN SPRINGS, LLC and SIGNATURE BUILDERS OF MISSISSIPPI, LLC did fail to complete the repairs and renovations to the Carriage House Apartments in a reasonable or commercially accepted manner, to wit, these Defendants, working as building contractors under Building Permit # B 1723, did collectively fail to:

a.      install adequate air conditioning systems necessary for cooling of a condominium unit of eleven hundred fifty (1150) square feet or larger, which has resulted in failures of the air conditioning system and other related problems;

b.      install adequate electrical, cable or Internet service, which has resulted in loss of use due to failures of these systems and related repair costs; and

c.      install adequate water and sewage lines for the collective condominium complex, which has resulted in unsightly conditions and related repairs on the complex properties, with the result being the diminution of value of the individual units both as rental and equity investment units.

10.     During the summer of 2006, the Defendants ANTE BELLUM, LLC (being a partnership owned and actively managed by the Defendants GREG STEWART, DAVID P. PILGER, MATTHEW TODD DELANO and BARBARA DELANO), THE POWER BROKER, INC. and ROBIN SPENCE (both individually and as controlling stockholder of the Power Broker, Inc.) did commence

furnishings) for One Hundred Five-five Thousand Eight Hundred Dollars ($145,800)

36.    In order to obtain the monthly income necessary to service the debt incurred by the Plaintiff for the purchase if Unit 20 at the Riverbend Condominium complex, it would be necessary for the Plaintiff to net rental income of Fifteen Hundred Dollars ($1500) each month without interruption.

37.    The reality of the post-Katrina Jackson County, Mississippi, rental market was not as represented by these Defendants, with the Plaintiff only receiving two (2) months corporate rent from Blackhawk marine at a rate of Eighteen Hundred Dollars ($1800) per month for March and April 2007, and additional rent for month at a rate of One Thousand Fifty Dollars ($1050).

38.    Subsequent inquiry of local realtors disclosed that the monthly rent on condominium units similar to the Plaintiff's unit at the Riverbend Condominium complex was an average of Six Hundred Dollars ($600) per month, with similar units renting for (at best) a rate of Nine Hundred Fifty Dollars ($950) under a long-term corporate lease.

39.    The Plaintiff was also advised by local realtors that his unit at the Riverbend Condominium complex had a fair market value of less than One Hundred Thirty Thousand Dollars ($130,000).

40.    Based upon these Defendants' failures to accurately represent to the Plaintiff the costs related to ownership of units at the Riverbend Condominium complex, their failure to candidly advise the Plaintiff that there

were neither corporate nor individual renters willing to rent units at the Riverbend Condominium complex for a sum in excess of Fifteen Hundred Dollars ($1500) per month, their failure to disclose to the Plaintiff the construction and licensing issues related to the Riverbend Condominium complex, and their failure to advise the Plaintiff that partners and attorneys of the Ante Bellum LLC partnership had claims to at least thirty-nine (39) of the units at the Riverbend Condominium complex, the Plaintiff was induced by these Defendants to purchase Unit 20 at the Riverbend Condominium complex as rental property capable of generating sufficient net income to service the unit's mortgage and related costs.

41.    As a result of the aforesaid acts and omissions of the respective Defendants, the Plaintiff has suffered the following damages:

a.    all losses and costs incurred to date through the Plaintiff's attempts to rent Unit 20 at the Riverbend Condominium complex;

b.    all devaluation of Unit 20 at the Riverbend Condominium complex from its original purchase price of $145, 800; and

c.    all other losses that the Plaintiff may prove at trial to have resulted from or been proximately caused by the acts, omissions, concealments and/or misrepresentations by the respective Defendants concerning the viability of the Riverbend Condominium complex as investment rental property capable of generating net income capable of paying all related expenses and acquisition costs.

42.   The afore referenced acts of either actual or constructive fraud perpetuated on the Plaintiff by the Defendants named herein are grounds to rescind all deeds and mortgages entered into by the Plaintiff concerning Unit 20 at the Riverbend Condominium complex, and on these facts the Plaintiff seeks an order of this Court rescinding all deeds and mortgages executed by her on these units.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff hereby makes demand against the respective Defendants for an award of actual damages compensating him for all losses, costs and property devaluation that are determined to have been proximately caused by these Defendants' acts, omissions, concealments and/or misrepresentations concerning the viability of the Riverbend Condominium complex as investment rental property capable of generating net income capable of paying all related expenses and acquisition costs, as well as an award of all assessable costs, pre-judgment interest and applicable attorneys fees.

The Plaintiff further moves this Court to rescind those deeds and mortgages related to Unit 20 at the Riverbend Condominium complex.

The Plaintiff seeks any further or necessary legal or equitable relief that may be necessary or proper under the facts and circumstances herein.

SWORN AND SUBSCRIBED, this the _12th_ day of _December_, 2008.

_Kenneth R. Duff_

KENNETH R. DUFF

*Exhibit P*

**FILED**

DEC 0 3 2008

TERRY MILLER, CLERK

By _____

IN THE CHANCERY COURT OF JACKSON COUNTY, MISSISSIPPI

LAURIE B. SHARE, Individually and as Trustee
for the Share-Zwick Family Revocable Trust          PLAINTIFF

versus                                              No. 2008-2424 NH

COUNTRYWIDE HOME LOANS, INC.,
M&T MORTGAGE CORPORATION,
STERLING FINANCIAL SERVICES, LLC,
ANTE BELLUM, LLC,
SIGNATURE BUILDERS OF MISSISSIPPI, LLC,
MADISON HOMES OF OCEAN SPRINGS, LLC,
GREG STEWART, DAVID P. PILGER,
MATTHEW TODD DELANO, BARBARA DELANO and
GREGORY M. FRIEDLANDER                              DEFENDANTS

## PLAINTIFF'S COMPLAINT FOR CONTRACT RESCISSION AND DAMAGES

COMES NOW the Plaintiff LAURIE SHARE, Individually and as Trustee

for the Share-Zwick Family Revocable Trust, and files this her Complaint for

Contract Rescission and Damages, showing unto the Court as follows:

1.     The Plaintiff is an adult resident citizen of the State of California,

who presently holds title to the subject real estate in the Jackson County,

Mississippi.

2.     The Defendants are:

a.     COUNTRYWIDE HOME LOANS, INC., a business entity

organized under the laws of the State of New York that may be served with

process in the manner prescribed by law;

9.     The Plaintiff would show that in addition to the aforesaid violations of statutory licensing requirements, the Defendants GREG STEWART, MADISON HOMES OF OCEAN SPRINGS, LLC and SIGNATURE BUILDERS OF MISSISSIPPI, LLC did fail to complete the repairs and renovations to the Carriage House Apartments in a reasonable or commercially accepted manner, to wit, these Defendants, working as building contractors under Building Permit # B 1723, did collectively fail to:

a.     install adequate air conditioning systems necessary for cooling of a condominium unit of eleven hundred fifty (1150) square feet or larger, which has resulted in failures of the air conditioning system and other related problems;

b.     install adequate electrical, cable or Internet service, which has resulted in loss of use due to failures of these systems and related repair costs; and

c.     install adequate water and sewage lines for the collective condominium complex, which has resulted in unsightly conditions and related repairs on the complex properties, with the result being the diminution of value of the individual units both as rental and equity investment units.

10.     During the summer of 2006, the Defendants ANTE BELLUM, LLC (being a partnership owned and actively managed by the Defendants GREG STEWART, DAVID P. PILGER, MATTHEW TODD DELANO and BARBARA DELANO) did commence marketing the Carriage House Apartments (which was later renamed the Riverbend Condominiums) to perspective out-of-state buyers

that the demand for corporate rental units had recently risen to a very high level in the Gautier/Pascagoula area, and that due to this high demand for corporate rental units, local corporations would pay $2200 in monthly rent for a furnished 2 bedroom/1.5 bath unit at the Carriage House Apartments/Riverbend Condominiums. During this same sales presentation, the Defendants GREG STEWART, DAVID P. PILGER and GREG FRIEDLANDER additionally represented to the Plaintiff that those investors who furnished their apartments (at an additional cost) for corporate rentals would immediately have their units leased by corporate renters at a projected monthly rent of $2200.

17.     As a direct result of the aforesaid representations by the Defendant ANTE BELLUM, LLC, by and through its members and representatives, concerning the suitability of the Riverbend Condominiums as an investment property having the ability to generate and net immediate profits in excess of the monthly mortgage cost and expenses related to the condominium, the Plaintiff did enter into a sales contract with the Defendant for the purchase of Units 73, 74, 75, 77, 78, 81, 85, 86 and 87 at the Riverbend Condominiums on September 8 2006, at a purchase price of One Hundred Forty-one Thousand Four Hundred Twenty-five Dollars ($141,425), inclusive of the unit's furnishings.

18.     The Plaintiff would further show that during sales promotion of the Riverbend Condominiums, it was concealed by the Defendant ANTE BELLUM, LLC, by and through its members and representatives, those matters alleged herein in Paragraphs 4 through 9, and that the renovation and related

market value of rental condominiums or the actual rental market conditions in Jackson County, Mississippi, and in furtherance of its marketing scheme, these Defendants did represent to the Plaintiff that the purchase of a unit at the Riverside Condominium complex (inclusive of furnishings) for One Hundred Forty-one Thousand Four Hundred Twenty-five Dollars ($141,425) would be both profitable and satisfy all monthly expenses, with such representations being materially false and a fraudulent inducement calculated to have the Plaintiff purchase units at this complex.

33.     In order to obtain the monthly income necessary to service the debt incurred by the Plaintiff for the purchase if Units 73, 74, 75, 77, 78, 81, 85, 86 and 87 at the Riverbend Condominium complex, it would be necessary for the Plaintiff to net rental income in excess of Fifteen Hundred Dollars ($1500) each month without interruption.

34.     The reality of the post-Katrina Jackson County, Mississippi, rental market was not as represented by these Defendants, with the Plaintiff receiving far less than the rents represented by the Defendant ANTE BELLUM, LLC and its members as an inducement to purchase these properties as investment rental properties.

35.     Subsequent inquiry of local realtors disclosed that the monthly rent on condominium units similar to the Plaintiff's units at the Riverbend Condominium complex was an average of Six Hundred Dollars ($600) per month,

I, Laurie Share, the Plaintiff in this Cause, being duly sworn, do hereby state under oath that those matters alleged in the foregoing Complaint are true and correct based upon either matters I personally know to be true or other information that I believe to be accurate and truthful.

SWORN TO AND SUBSCRIBED, this the 21st day of November, 2008.

LAURIE SHARE

STATE OF _CALIFORNIA_

COUNTY OF _Marin_

Sworn to and subscribed before me, this the 21st day of November, 2008.

RALPH JONES
Commission # 1697805
Notary Public - California
Marin County
My Comm. Expires Oct 5, 2010

NOTARY PUBLIC

My Commission Expires: _10/5/2010_

# EXHIBIT 7

Counsel Arnold Levin
510 Walnut Street, Suite 500
Philadelphia, PA 19106

April 5, 2012

Therese Sekellick
26217 Rudale Dr.
Clarksburg, MD 20871
theresesekellick@gmail.com
tel:240-405-4229

Dear Sir;

I own a condo in#231 the Whitney, 410 Evernia St. WPB Florida.
Our Building is involved in the case against Knauf for Chinese Dry
Wall.

I am writing this letter not to opt out of the case, but to point out
some resolutions that I disagree with and find unfair.

1-There were three tests performed in our building in 2009 and
2011 I was told the result for my condo were "inconclusive. Then
after Jan 10 the remediation committee did a new inspection and
decided I do not have it. Two out of three tests were inconclusive.
But now I am told I will not be compensated for anything since I
don't have the CDW. How can I be assured that if my A/C broke it
is not because of the CDW.

2-I bought my condo as an investment to be rented. (I have an
exchange 1031 drawn out for the settlement). I bought it for
$347,000 now it is assessed for $67,000. I rented it the first year
from May 2008 to May 2009. Then we found out about the CDW
and was unable also afraid to rent it. (After finding out about the
CDW, the previous renter, called to say he will seek legal advice

since his son was visiting on weekend). I have a lot of lost rent that will not be compensated by the resolution.

3- Page 11 Paragraph with title Banner Class Agreement The Banner settlement assign the defendants benefits to the Knauf Defendants and the proceeds will be deposited into the Remediation Fund.

Since I am not getting any of the Remediation Fund. Why is it that I still have to pay legal fees for Banner. I was told by the association in our building that I still have to pay my share of the legal fees even if I opt out.

I appreciate any help or insight in this matter.

Thank you

*Therese Sekellick*

Therese Sekellick

# EXHIBIT 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED
    DRYWALL PRODUCTS LITIGATION    )
    )    MDL NO. 2047
Payton, et al. V. Knauf Gips, KG, et al.    )
Case No. 2:09-cv-07628 (E.D. La.)    )    SECTION L
    )
Gross, et al. V. Knauf Gips, KG, et al.    )    JUDGE FALLON
Case No. 2:09-cv-06690 (E.D. La.)    )
    )    MAGISTRATE
Rogers, et al. V. Knauf Gips, KG, et al.    )    JUDGE WILKINSON
Case No. 2:10-cv-00362 (E.D. La.)    )
    )
Abreu, et al. v. Gebrueder Knauf    )
Verwaltungsgesellschaft, KG, et al.    )
Case No. 2:11-cv-00252 (E.D. La.)    )
    )
Block, et al. V. Gebrueder Knauf    )
Verwaltungsgesellschaft, KG, et al.    )
Case No. 11-cv-1363 (E.D. La.)    )
    )
Arndt, et al. V. Gebrueder Knauf    )
Verwaltungsgesellschaft, KG, et al.    )
Case No. 11-cv-2349 (E.D. La.)    )
    )
Cassidy, et al. V. Gebrueder Knauf    )
Verwaltungsgesellschaft, KG, et al.    )
Case No. 11-cv-3023 (E.D. La.)    )
    )
Vickers, et al. V. Knauf Gips KG, et al.    )
Case No. 2:09-cv-04117 (E.D. La.)    )

**OBJECTION TO THE PROPOSED SETTLEMENTS OF CLAIMS AGAINST KNAUF,
INEX AND GLOBAL SETTLEMENTS**

Comes now the undersigned and putative member of the purported Class Settlements with

the named Knauf Defendants, INEX and the Global Settlement and gives notice of intention to attend

and produce or offer certain evidence in the form of documents or testimony in opposition to the proposed settlements. That the Objector shall have counsel present said evidence and/or argument in opposition.

1.    The Objector hereby gives notice that the following issues or matters that touch or concern the following issues may be raised at the fairness hearing. The general grounds for objection are listed herein below.

2.    That the notice of proposed class settlements are deficient in that they fail to provide adequate facts from which a member of the class can make an informed decision about whether or not to participate.

3.    The proposed settlement requires the member to accept settlements of other related claims that involve builders, suppliers, installers, contractors or others who may be liable to the member, and dismiss or assign claims which are pending in state court and are not brought in the MDL. The members are unable to make an informed decision on opting out or participating in the Settlement prior to the final approval of the INEX, and Global Settlement and referenced future settlements.

4.    The Objector is unable to make an informed decision as to the benefits or detriments of remaining in the settlements or opting out, as these settlements are dependent on the other in some aspects, and no certainty exists that all three settlements will be approved. In the event one or more of these settlements are not approved the Objector's rights would be impaired or could be adversely affected by factors which are not remedied or adequately disclosed in any of the proposed settlements.

5.    The Objector is not adequately advised as to the effect of or proposed terms of any future agreements or settlements referenced in the Knauf or INEX settlements which preclude the

Objector from making an informed decision on whether or not to opt out of or participate in these settlements. There is inadequate information provided as to the rights, liabilities or obligations that may be in these other agreements. For example, in the INEX Settlement, while it references a substantial recovery, the recovery involving excess insurance carriers or reinsurers has not been made and Objector is unable to value his claim, or evaluate benefit or detriment of participating in these settlements

6. The notice to class members in the Knauf Settlement is generally deficient as it cuts off claims and the ability of absent class members or members who were previously defined as putative class members, from bringing suit or filing a claim in this action, ex post facto with no prior notice or opportunity to file claims.

7. The Class Notice is otherwise deficient and does not reasonably apprise the Objector of claims he may have against others and claims he/she will be releasing.

8. The Settlements and Notices do not provide adequate information regarding procedures or guidelines that may be required of a foreclosed home member or lower case Knauf member to make a decision about whether the claims process is going to be overly burdensome, or impose requirements in excess of the evidentiary standard the member would have to meet in other available forums. As a result, an informed decision cannot be made concerning participating or opting out of the Settlements.

9. The members with lower case Knauf are not provided adequate benefits under the settlement, or are provided no benefits. However, if they opt out, others who may be liable to them, by virtue of other settlements or proposed settlements will pay funds or provide benefits due the member to Knauf or other Defendants. In turn the member is receiving no benefit and releasing all claims, and may even be required to indemnify certain defendants or contributors.

10.     The Objector has not been provided adequate information, guidelines or requirements as to his ability to participate in the "Other Loss Fund" or as to the amount of benefit which may be provided or available.

11.     That the Objector is required to assign all claims, even those pending in State court, to the Settling Defendants, without consideration and is giving up available claims that are made individually against other Defendants that could provide substantial relief, all without valid or inadequate consideration.

12.     The Objector, foreclosed members and lower case members may be liable for deficiencies on mortgages or  for other claims, but no recovery is provided in the Settlement for future liability or depreciation of their homes due to the presence of Chinese drywall.

13.     The Objector alleges that for little or no benefit, the settlements, release or otherwise forfeit potential personal injury claims that may arise in the future,  and which would otherwise be viable claims for which a recovery could be made.  Valid state claims which allow recovery  for personal injuries which would not, or could not be discovered within the five year cutoff in the proposed settlement will be lost, and due to the indemnity and other release language the members may be left without health insurance or a means to recover for those claims.

14.     The foreclosed members are provided no relief for damage to credit or reputation, but would be releasing all responsible parties or assigning all claims to the Defendants, that could provide recovery for  these damages with no adequate consideration or ability to recover.

15.     The foreclosed members are losing valuable property rights and subject to unequal treatment, in that while they may have the right to redeem their property, they do not have the ability to have their homes remediated and are provided inadequate benefits or means of recovery.

16.     The foreclosed  members  may  be  liable  for  a  deficiency  caused  by  the  settling

Defendants, with no ability to recover and with no provision protecting them from future claims made against them or the settling defendants for which the Objector may be liable for indemnification.

17.     There are inadequate procedures or guidelines established to prove loss of equity in homes such that an informed decision as to whether to accept settlement benefits or opt out can not be made.

18.     The Objector asserts that in a foreclosure situation, had the home been remediated or money made available for remediation then there may be no lost equity, depreciation or continued damage.

19.     There is no adequate process or procedure established for the foreclosed home member to evaluate the settlement benefits as to how square footage will be determined in foreclosed homes, as the member will not or may not have access to said property.

20.     The Objector states that he and others like him cannot reasonably make a decision to opt out of the settlement as other claims against liable parties may be released, with the Knauf Defendants obtaining the benefit of his recovery, as all claims are required to be assigned to Knauf and pending state court claims dismissed.

21.     The Objector is unable to make an informed decision as to whether or not to opt out of this settlement.  In the event Objector opts out of this settlement, he and others like him may be wholly and completely without remedy, as the settlement protects substantially all assets of the Knauf Defendants and purports to preclude those class members who opt out from recovering from the settling Defendants or related entities if attempts are made to collect from assets that "may be" used to fund the Knauf Settlement.

22.     The Objector asserts, that unlike other states referenced in the settlement documents

or briefs there would be no allocation or apportionment of damages, as Alabama has joint and several liability and does not provide for apportionment of damages.

23.    The Objector and others have been prejudiced and the likelihood for successful litigation results have been greatly reduced or hampered by the terms of the Knauf Settlement in that the Agreement precludes use of discovery obtained in the MDL by those who opt out of this settlement, even though they had been members of the putative class prior to the December 9, 2011. They would now be required to expend substantial sums to duplicate the discovery in the MDL, which is in direct conflict with the rules and purposes of Multi-District Litigation.

24.    The summary notice fails to adequately disclose that substantial assets are protected or shielded from execution for those who opt out or are excluded former putative class members, and that MDL discovery is not available to use in the furtherance of their claims.

25.    That the Objector and others receiving no benefit or inadequate benefits have had destructive testing or inspections performed by the Defendants, or their agents, causing damage and loss of value to their home and for which there is no recovery.

26.    The Knauf Settlement is inadequate that while it allows monies leftover following remediation of some class members homes to be returned to Knauf, while there are inadequate benefits or no benefits paid to other members of the class. Certain lower case Knauf members, are giving up valuable rights and assuming indemnity obligations, but recovering no or inadequate consideration.

27.    That Objector would be unable to opt out of the Global Settlement and INEX Settlement and still be able to recover under the "Other Loss Fund." Further, the class members who are not participating class members such as lower case Knauf members, will not be allowed to recover under the "Other Loss Fund."

28.     That Objector and others with lower case Knauf are unable to appeal the court's decision as to whether or not the drywall is reactive and qualifies the member for benefits.

29.     That Objectors due process and equal protection rights or other state or federal statutory or common law rights would be violated if he opted out due to the agreements' restriction on his rights to attempt and collect any judgment from Knauf or other entities by shielding assets and rights to discovery had in the MDL.

30.     That members of the class are prejudiced if the lower case Knauf is considered KPT board, based on a determination of reactive versus non-reactive. The members whose board is not reactive lose the ability to recover, and are subject to indemnity agreements and other obligations imposed without adequate consideration.

31.     Certain lower case KPT members' benefits under the INEX and Global Settlement potentially go to benefit Knauf, even though those members receive no benefit, but are released and assign all rights and claims for any damages to the Defendants.

32.     The KPT and other settlements release liable parties with no benefit or inadequate benefit conferred on the class members who have been foreclosed or have certain lower case Knauf.

33.     The members' claims in state court are barred or required to be dismissed with inadequate consideration and in violation of comity and policy of Federal hands off state actions or judicial process, and the class members are unable to recover benefits or adequate benefit under the Settlement Agreements.

34.     The Xactimate estimates do not reflect the true measure of damage or cost of remediation, so that Options 2 and 3 under the KPT Settlement are insufficient to compensate the members, and are in effect not viable options.

35.     For Option 1, there is no schedule of when homes would be remediated and the

members are unable to make an informed decision about whether or not to participate in this option.

36.     The members may be required to indemnify KPT for any defective construction done in remediation, even though the remediation is being performed by contractors who are KPT's agents or companies over which KPT reserves the right of control.

37.     There is no method or manner to reasonably determine the benefits available under the Settlements for mixed drywall homes, because it is unreasonable to inspect each piece of sheetrock prior to its removal during remediation and the member would not know if they are qualified for benefits in time to make a decision on opting out or participating.

38.     The multi-unit owners are prejudiced in that, at this time there is no way to determine the benefit they will receive or detriment that would be imposed by the Settlements as certain claims will be allowed or disallowed based on a determination by a contractor, in their sole discretion with no right of appeal and inadequate judicial oversight.

39.     The multi-unit owners may appear on the face of the Notice and Settlement to be class members receiving benefits, but may not be able to recover the benefits proposed if during remediation or some later date there is a non-judicial determination that they do not qualify in violation of their due process and equal protection rights or other state and federal rights.

40.     The provisions regarding benefits to multi-unit owners violates and conflicts with state laws where statutes specify what rights and obligations a multi-unit owner has and what right and obligation a homeowner's association has.

41.     In order to qualify for benefits there must be an inspection and determination of corrosion and other factors not disclosed or communicated to members of the class in the class definition or notice.

42.     The foreclosed members whose home was foreclosed on or after the effective date

of the Settlement are barred from collecting lost equity, being punished for holding on and trying to pay their mortgages, but would still be releasing claims and bound by indemnity provisions with inadequate consideration or notice.

43.     The Objector may adopt or pursue objections or issues raised by others to these settlements or related settlements.

44.     The Objector does not intend to call any witnesses on his own behalf other than those needed for rebuttal. However, the Objector would expect to cross examine or call those persons who provide evidence or documents concerning these settlements, that are called, or provide evidence by or at the request of class counsel, defense counsel or others who submit evidence related to these settlements.

45.     The Objector would plan to offer any and all pleadings, depositions or discovery used in support of or in opposition to these Settlements, or which was taken or otherwise had in any action in this MDL or related actions and any documents needed for rebuttal.

46.     That no specific time was given for objections to requests which may be made for attorney fee awards to the PSC or Common Benefit awards. The Objector, in an abundance of caution, raises generally the objections set out below and reserves his right to amend or withdraw this objection at a later date.

A)      That the members are unable to determine what fees or expenses they may be liable for at this time, due to the relief proposed for attorney fees and expenses, and these requests interfere or may interfere with the right to contract under state or federal laws, due process or equal protection.

B)      That there is a provision proposed which would foreclose or do away with Objector's

9

rights to appeal any attorney fee award or ruling made by this Honorable Court, and the member at this time cannot determine what fees or expenses may be requested.

C)   The Common Benefit award,   expense award or final request may impair or otherwise damage the Objector.  Absent a final request, the member is unable to make an informed decision to opt out or participate in these Settlements.  The potential liabilities or benefits are not provided with adequate specificity, which could interfere with the enforcement or oversight of counsel if these settlements are finally approved.  There does not appear to be any provision for fees that would or could be incurred in the future, if all provisions of the settlement are not completed or issues of enforcement, warranty claims or interpretation of the settlement occur.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

My name is _Daniel C. Ladner_ . My phone number is _504-460-6963_ and my address is _42 Audubon place Picayune MS 39466_

I am represented by Counsel K. Edward Sexton, II and Eric D. Hoaglund.

This notice has been mailed to the following:

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106

Russ M. Herman, Esq.
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113

Richard G. Duplantier, Esq.
Galloway, Johnson, Tompkins,
      Burr & Smith
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139

Kerry J. Miller, Esq.
Frilot, LLC
1100 Poydras Street
Suite 3700
New Orleans, Louisiana 70163

as required by this Court's Order.

Signed this the _28_ day of _September  2012_ .

_____
Objector

_____
Objector

_____
K. Edward Sexton, II, Esq.

_____
Eric D. Hoaglund , Esq.

# EXHIBIT 9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL: | : | MDL NO. 2047 |
| PRODUCT LIABILITY LITIGATION | : | |
| ...............................................................: | | SECTION: L |
| This Document relates to | : | |
| | : | JUDGE FALLON |
| Gerard Kinler | : | MAG. JUDGE WILKINSON |

Gerard Kinler
35280 Beverly Hills Dr, Prairieville, LA 70769
225.456.14.22; gkinler@gmail.com

OBJECTION TO KPT SETTLEMENT

NOW INTO COURT, through undersigned counsel comes Gerard Kinler, to object to portions of the class settlement with Knauf Gips, KG et al, specifically section 4.3.1.1 "Lump Sum Payment".

Section 4.3.1 states the Remediation fund will pay the lead contractor or other approved ...plus for residential owners, the applicable Other Covered Expenses according to the following criteria:

Section 4.3.1.1 offers to pay claimants "for KPT properties that are less than or equal to 3,500 sq. ft. "under air" as determined by the lead contractor or other approved contractor... a single payment of $8.50 per square foot of the "under air area".

The settlement defines "Other Covered Expenses" shall mean reimbursement for all alternative living expenses, personal property damage, maintenance of the KPT property during remediation, including but not limited to, payment of all utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses, incurred as a result of the remediation of the KPT property, pursuant to Section 4.3.1.1 through 4.3.1.3.

Claimant and his family lived in Ruskin, FL at 2509 Yukon Cliff Dr. at the time of learning their home contained Chinese Drywall. Due to health affects experienced by themselves and their children, the family decided to move out of their house. Since they

1

could not afford to obtain alternative housing in Florida, the Kinler family moved back to Louisiana to reside with Mrs. Kinler's parents.

The Kinlers' concern in that by just taking into account the "under air" square footage of their home will not properly compensate them for all the moving expenses they experienced in moving the family back to Prairieville, Louisiana.   In addition to having moving expenses, Mr. Kinler, a school teacher, had to secure a new job as he could not live in Louisiana and teach in Florida.   As a result of the cuts in their household income, the Kinlers eventually lost their dream home to foreclosure.   In addition to losing their home, as a result of having to move back to Louisiana, Mr. Kinler lost his retirement that he had been accumulating since 2005 because he did not have enough time in the Florida School System to be vested.

The Kinlers would ask this Court to allow claimants with extraordinary moving expenses or other expenses related to drywall, to apply to the Other Loss Claim section of the settlement for additional compensation under section 4.7 of the settlement.

In addition, the Kinlers object to having to decide to stay in or opt out with-out fully being informed of what they would receive for their lost equity in their home.   The home was purchased for $350,000.00, however prior to the foreclosure, the Kinlers upgraded many aspects of their home including landscaping, private drives, and crown molding, etc.   What time frame is going to be considered for the value of the home to determine equity?   As more and more Florida homes were found to have drywall, including entire subdivisions like the Kinlers, the home values plummeted.

Respectfully submitted on
September 28, 2012

By: _____

Daniel E. Becnel, Jr. (La. Bar No. 2926)
Matthew B. Moreland (La. Bar. No. 24567)
Salvadore Christina, Jr. (La. Bar. No. 27198)
**BECNEL LAW FIRM, LLC**
106 W. Seventh Street
P. O. Drawer H
Reserve, Louisiana 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
Email: dbecnel@becnellaw.com

_____

Gerard Kinler-Plaintiff

# EXHIBIT 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LITIGATION | ) ) ) | MDL NO. 2047 |
| Payton, et al. V. Knauf Gips, KG, et al. Case No. 2:09-cv-07628 (E.D. La.) | ) ) ) | SECTION L |
| Gross, et al. V. Knauf Gips, KG, et al. Case No. 2:09-cv-06690 (E.D. La.) | ) ) ) | JUDGE FALLON MAGISTRATE |
| Rogers, et al. V. Knauf Gips, KG, et al. Case No. 2:10-cv-00362 (E.D. La.) | ) ) ) | JUDGE WILKINSON |
| Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al. Case No. 2:11-cv-00252 (E.D. La.) | ) ) ) ) | |
| Block, et al. V. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al. Case No. 11-cv-1363 (E.D. La.) | ) ) ) ) | |
| Arndt, et al. V. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al. Case No. 11-cv-2349 (E.D. La.) | ) ) ) ) | |
| Cassidy, et al. V. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al. Case No. 11-cv-3023 (E.D. La.) | ) ) ) ) | |
| Vickers, et al. V. Knauf Gips KG, et al. Case No. 2:09-cv-04117 (E.D. La.) | ) ) | |

**OBJECTION TO THE PROPOSED SETTLEMENTS OF CLAIMS AGAINST KNAUF, INEX AND GLOBAL SETTLEMENTS**

Comes now the undersigned and putative member of the purported Class Settlements with

the named Knauf Defendants, INEX and the Global Settlement and gives notice of intention to attend

and produce or offer certain evidence in the form of documents or testimony in opposition to the proposed settlements. That the Objector shall have counsel present said evidence and/or argument in opposition.

1.     The Objector hereby gives notice that the following issues or matters that touch or concern the following issues may be raised at the fairness hearing. The general grounds for objection are listed herein below.

2.     That the notice of proposed class settlements are deficient in that they fail to provide adequate facts from which a member of the class can make an informed decision about whether or not to participate.

3.     The proposed settlement requires the member to accept settlements of other related claims that involve builders, suppliers, installers, contractors or others who may be liable to the member, and dismiss or assign claims which are pending in state court and are not brought in the MDL. The members are unable to make an informed decision on opting out or participating in the Settlement prior to the final approval of the INEX, and Global Settlement and referenced future settlements.

4.     The Objector is unable to make an informed decision as to the benefits or detriments of remaining in the settlements or opting out, as these settlements are dependent on the other in some aspects, and no certainty exists that all three settlements will be approved. In the event one or more of these settlements are not approved the Objector's rights would be impaired or could be adversely affected by factors which are not remedied or adequately disclosed in any of the proposed settlements.

2

5.      The Objector is not adequately advised as to the effect of or proposed terms of any future agreements or settlements referenced in the Knauf or INEX settlements which preclude the Objector from making an informed decision on whether or not to opt out of or participate in these settlements.  There is inadequate information provided as to the rights, liabilities or obligations that may be in these other agreements.  For example, in the INEX Settlement, while it references a substantial recovery, the recovery involving excess insurance carriers or reinsurers has not been made and Objector is unable to value his claim, or evaluate benefit or detriment of participating in these settlements.

6.      The notice to class members in the Knauf Settlement is generally deficient as it cuts off claims and the ability of absent class members or members who were previously defined as putative class members,  from bringing suit or filing a claim in this action, ex post facto  with no prior notice or opportunity to file claims.

7.      The Class Notice is otherwise deficient and does not reasonably apprise the Objector of claims he may have against others and claims he/she will be releasing.

8.      The Settlements and Notices do not provide adequate information regarding procedures or guidelines that may be required of a foreclosed home member or lower case Knauf member to make a decision about whether the claims process is going to be overly burdensome, or impose requirements in  excess of the evidentiary standard the member would have to meet in other available forums.  As a result, an informed decision cannot be made concerning participating or opting out of the Settlements.

9.      The members with lower case Knauf are not provided adequate benefits under the settlement, or are provided no benefits.  However,  if they opt out, others who may be liable to them,

3

by virtue of other settlements or proposed settlements will pay funds or provide benefits due the member to Knauf or other Defendants. In turn the member is receiving no benefit and releasing all claims, and may even be required to indemnify certain defendants or contributors.

10.     The Objector has not been provided adequate information, guidelines or requirements as to his ability to participate in the "Other Loss Fund" or as to the amount of benefit which may be provided or available.

11.     That the Objector is required to assign all claims, even those pending in State court, to the Settling Defendants, without consideration and is giving up available claims that are made individually against other Defendants that could provide substantial relief, all without valid or inadequate consideration.

12.     The Objector, foreclosed members and lower case members may be liable for deficiencies on mortgages or for other claims, but no recovery is provided in the Settlement for future liability or depreciation of their homes due to the presence of Chinese drywall.

13.     The Objector alleges that for little or no benefit, the settlements, release or otherwise forfeit potential personal injury claims that may arise in the future, and which would otherwise be viable claims for which a recovery could be made. Valid state claims which allow recovery for personal injuries which would not, or could not be discovered within the five year cutoff in the proposed settlement will be lost, and due to the indemnity and other release language the members may be left without health insurance or a means to recover for those claims.

14.     The foreclosed members are provided no relief for damage to credit or reputation, but would be releasing all responsible parties or assigning all claims to the Defendants, that could provide recovery for these damages with no adequate consideration or ability to recover.

15.     The foreclosed members are losing valuable property rights and subject to unequal treatment, in that while they may have the right to redeem their property, they do not have the ability to have their homes remediated and are provided inadequate benefits or means of recovery.

16.     The foreclosed members may be liable for a deficiency caused by the settling Defendants, with no ability to recover and with no provision protecting them from future claims made against them or the settling defendants for which the Objector may be liable for indemnification.

17.     There are inadequate procedures or guidelines established to prove loss of equity in homes such that an informed decision as to whether to accept settlement benefits or opt out can not be made.

18.     The Objector asserts that in a foreclosure situation, had the home been remediated or money made available for remediation then there may be no lost equity, depreciation or continued damage.

19.     There is no adequate process or procedure established for the foreclosed home member to evaluate the settlement benefits as to how square footage will be determined in foreclosed homes, as the member will not or may not have access to said property.

20.     The Objector states that he and others like him cannot reasonably make a decision to opt out of the settlement as other claims against liable parties may be released, with the Knauf Defendants obtaining the benefit of his recovery, as all claims are required to be assigned to Knauf and pending state court claims dismissed.

21.     The Objector is unable to make an informed decision as to whether or not to opt out of this settlement.  In the event Objector opts out of this settlement, he and others like him may be

5

wholly and completely without remedy, as the settlement protects substantially all assets of the Knauf Defendants and purports to preclude those class members who opt out from recovering from the settling Defendants or related entities if attempts are made to collect from assets that "may be" used to fund the Knauf Settlement.

22.     The Objector asserts, that unlike other states referenced in the settlement documents or briefs there would be no allocation or apportionment of damages, as Alabama has joint and several liability and does not provide for apportionment of damages.

23.     The Objector and others have been prejudiced and the likelihood for successful litigation results have been greatly reduced or hampered by the terms of the Knauf Settlement in that the Agreement precludes use of discovery obtained in the MDL by those who opt out of this settlement, even though they had been members of the putative class prior to the December 9, 2011. They would now be required to expend substantial sums to duplicate the discovery in the MDL, which is in direct conflict with the rules and purposes of Multi-District Litigation.

24.     The summary notice fails to adequately disclose that substantial assets are protected or shielded from execution for those who opt out or are excluded former putative class members, and that MDL discovery is not available to use in the furtherance of their claims.

25.     That the Objector and others receiving no benefit or inadequate benefits have had destructive testing or inspections performed by the Defendants, or their agents, causing damage and loss of value to their home and for which there is no recovery.

26.     The Knauf Settlement is inadequate that while it allows monies leftover following remediation of some class members homes to be returned to Knauf, while there are inadequate benefits or no benefits paid to other members of the class. Certain lower case Knauf members, are

giving up valuable rights and assuming indemnity obligations, but recovering no or inadequate consideration.

27.     That Objector would be unable to opt out of the Global Settlement and INEX Settlement and still be able to recover under the "Other Loss Fund." Further, the class members who are not participating class members such as lower case Knauf members, will not be allowed to recover under the "Other Loss Fund."

28.     That Objector and others with lower case Knauf are unable to appeal the court's decision as to whether or not the drywall is reactive and qualifies the member for benefits.

29.     That Objectors due process and equal protection rights or other state or federal statutory or common law rights would be violated if he opted out due to the agreements' restriction on his rights to attempt and collect any judgment from Knauf or other entities by shielding assets and rights to discovery had in the MDL.

30.     That members of the class are prejudiced if the lower case Knauf is considered KPT board, based on a determination of reactive versus non-reactive.  The members whose board is not reactive lose the ability to recover, and are subject to indemnity agreements and other obligations imposed without adequate consideration.

31.     Certain lower case KPT members' benefits under the INEX and Global Settlement potentially go to benefit Knauf, even though those members receive no benefit, but are released and assign all rights and claims for any damages to the Defendants.

32.     The KPT and other settlements release liable parties with no benefit or inadequate benefit conferred on the class members who have been foreclosed or have certain lower case Knauf.

7

33.     The members' claims in state court are barred or required to be dismissed with inadequate consideration and in violation of comity and policy of Federal hands off state actions or judicial process, and the class members are unable to recover benefits or adequate benefit under the Settlement Agreements.

34.     The Xactimate estimates do not reflect the true measure of damage or cost of remediation, so that Options 2 and 3 under the KPT Settlement are insufficient to compensate the members, and are in effect not viable options.

35.     For Option 1, there is no schedule of when homes would be remediated and the members are unable to make an informed decision about whether or not to participate in this option.

36.     The members may be required to indemnify KPT for any defective construction done in remediation, even though the remediation is being performed by contractors who are KPT's agents or companies over which KPT reserves the right of control.

37.     There is no method or manner to reasonably determine the benefits available under the Settlements for mixed drywall homes, because it is unreasonable to inspect each piece of sheetrock prior to its removal during remediation and the member would not know if they are qualified for benefits in time to make a decision on opting out or participating.

38.     The multi-unit owners are prejudiced in that, at this time there is no way to determine the benefit they will receive or detriment that would be imposed by the Settlements as certain claims will be allowed or disallowed based on a determination by a contractor, in their sole discretion with no right of appeal and inadequate judicial oversight.

39.     The multi-unit owners may appear on the face of the Notice and Settlement to be class members receiving benefits, but may not be able to recover the benefits proposed if during

8

remediation or some later date there is a non-judicial determination that they do not qualify in violation of their due process and equal protection rights or other state and federal rights.

40.     The provisions regarding benefits to multi-unit owners violates and conflicts with state laws where statutes specify what rights and obligations a multi-unit owner has and what right and obligation a homeowner's association has.

41.     In order to qualify for benefits there must be an inspection and determination of corrosion and other factors not disclosed or communicated to members of the class in the class definition or notice.

42.     The foreclosed members whose home was foreclosed on or after the effective date of the Settlement are barred from collecting lost equity, being punished for holding on and trying to pay their mortgages, but would still be releasing claims and bound by indemnity provisions with inadequate consideration or notice.

43.     The Objector may adopt or pursue objections or issues raised by others to these settlements or related settlements.

44.     The Objector does not intend to call any witnesses on his own behalf other than those needed for rebuttal. However, the Objector would expect to cross examine or call those persons who provide evidence or documents concerning these settlements, that are called, or provide evidence by or at the request of class counsel, defense counsel or others who submit evidence related to these settlements.

45.     The Objector would plan to offer any and all pleadings, depositions or discovery used in support of or in opposition to these Settlements, or which was taken or otherwise had in any action in this MDL or related actions and any documents needed for rebuttal.

46.     That no specific time was given for objections to requests which may be made for attorney fee awards to the PSC or Common Benefit awards.  The Objector, in an abundance of caution, raises generally the objections set out below and reserves his right to amend or withdraw this objection at a later date.

A)     That the members are unable to determine what fees or expenses they may be liable for at this time, due to the relief proposed for attorney fees and expenses, and these requests interfere or may interfere with the right to contract under state or federal laws, due process or equal protection.

B)     That there is a provision proposed which would foreclose or do away with Objector's rights to appeal any attorney fee award or ruling made by this Honorable Court, and the member at this time cannot determine what fees or expenses may be requested.

C)     The Common Benefit award,  expense award or final request may impair or otherwise damage the Objector.  Absent a final request, the member is unable to make an informed decision to opt out or participate in these Settlements.  The potential liabilities or benefits are not provided with adequate specificity, which could interfere with the enforcement or oversight of counsel if these settlements are finally approved.  There does not appear to be any provision for fees that would or could be incurred in the future, if all provisions of the settlement are not completed or issues of enforcement, warranty claims or interpretation of the settlement occur.


**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

10

My name is Trevis Amerson. My phone number is 205-903-7317 and my current address is 4000 Walnut Avenue, SW, Birmingham, Alabama 35221. The address of the property damaged by Knauf Chinese Drywall is 3415 Jeanne Lane, Hueytown, Alabama. I am represented by Counsel K. Edward Sexton, II and Eric D. Hoaglund.

This notice has been mailed to Arnold Levin and Kerry Miller as required by this Court's Order.

Signed this the 27 day of SEPTEMBER , 2012.

_____
Trevis Amerson
Objector

_____
Eric D. Hoaglund
K. Edward Sexton, II
Attorneys for Trevis Amerson

11

## CERTIFICATE OF SERVICE

This is to certify that on September 28, 2012, a true and correct copy of the foregoing was mailed via U.S. Postal Service, postage prepaid, to the following:

Arnold Levin, Esq.                         Russ M. Herman, Esq.
Levin, Fishbein, Sedran & Berman           Herman, Herman & Katz, LLP
510 Walnut Street, Suite 500               820 O'Keefe Avenue
Philadelphia, Pennsylvania 19106           New Orleans, Louisiana 70113


                                           _____
                                           COUNSEL

12

# EXHIBIT 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED<br>      DRYWALL PRODUCTS LITIGATION )<br>  )<br>Payton, et al. V. Knauf Gips, KG, et al.  )<br>Case No. 2:09-cv-07628 (E.D. La.)  )<br>  )<br>Gross, et al. V. Knauf Gips, KG, et al.  )<br>Case No. 2:09-cv-06690 (E.D. La.)  )<br>  )<br>Rogers, et al. V. Knauf Gips, KG, et al.  )<br>Case No. 2:10-cv-00362 (E.D. La.)  )<br>  )<br>Abreu, et al. v. Gebrueder Knauf  )<br>Verwaltungsgesellschaft, KG, et al.  )<br>Case No. 2:11-cv-00252 (E.D. La.)  )<br>  )<br>Block, et al. V. Gebrueder Knauf  )<br>Verwaltungsgesellschaft, KG, et al.  )<br>Case No. 11-cv-1363 (E.D. La.)  )<br>  )<br>Arndt, et al. V. Gebrueder Knauf  )<br>Verwaltungsgesellschaft, KG, et al.  )<br>Case No. 11-cv-2349 (E.D. La.)  )<br>  )<br>Cassidy, et al. V. Gebrueder Knauf  )<br>Verwaltungsgesellschaft, KG, et al.  )<br>Case No. 11-cv-3023 (E.D. La.)  )<br>  )<br>Vickers, et al. V. Knauf Gips KG, et al.  )<br>Case No. 2:09-cv-04117 (E.D. La.)  )                     | MDL NO. 2047<br><br>SECTION L<br><br>JUDGE FALLON<br><br>MAGISTRATE<br>JUDGE WILKINSON |

**OBJECTION TO THE PROPOSED SETTLEMENTS OF CLAIMS AGAINST KNAUF,
INEX AND GLOBAL SETTLEMENTS**

Comes now the undersigned and putative member of the purported Class Settlements with

the named Knauf Defendants, INEX and the Global Settlement and gives notice of intention to attend

and produce or offer certain evidence in the form of documents or testimony in opposition to the proposed settlements. That the Objector shall have counsel present said evidence and/or argument in opposition.

1.    The Objector hereby gives notice that the following issues or matters that touch or concern the following issues may be raised at the fairness hearing. The general grounds for objection are listed herein below.

2.    That the notice of proposed class settlements are deficient in that they fail to provide adequate facts from which a member of the class can make an informed decision about whether or not to participate.

3.    The proposed settlement requires the member to accept settlements of other related claims that involve builders, suppliers, installers, contractors or others who may be liable to the member, and dismiss or assign claims which are pending in state court and are not brought in the MDL. The members are unable to make an informed decision on opting out or participating in the Settlement prior to the final approval of the INEX, and Global Settlement and referenced future settlements.

4.    The Objector is unable to make an informed decision as to the benefits or detriments of remaining in the settlements or opting out, as these settlements are dependent on the other in some aspects, and no certainty exists that all three settlements will be approved. In the event one or more of these settlements are not approved the Objector's rights would be impaired or could be adversely affected by factors which are not remedied or adequately disclosed in any of the proposed settlements.

5.      The Objector is not adequately advised as to the effect of or proposed terms of any future agreements or settlements referenced in the Knauf or INEX settlements which preclude the Objector from making an informed decision on whether or not to opt out of or participate in these settlements.  There is inadequate information provided as to the rights, liabilities or obligations that may be in these other agreements.  For example, in the INEX Settlement, while it references a substantial recovery, the recovery involving excess insurance carriers or reinsurers has not been made and Objector is unable to value his claim, or evaluate benefit or detriment of participating in these settlements.

6.      The notice to class members in the Knauf Settlement  is generally deficient as it cuts off claims and the ability of absent class members or members who were previously defined as putative class members,  from bringing suit or filing a claim in this action, ex post facto  with no prior notice or opportunity to file claims.

7.      The Class Notice is otherwise deficient and does not reasonably apprise the Objector of claims he may have against others and claims he/she will be releasing.

8.      The Settlements and Notices do not provide adequate information regarding procedures or guidelines that may be required of a foreclosed home member or lower case Knauf member to make a decision about whether the claims process is going to be overly burdensome, or impose requirements in excess of the evidentiary standard the member would have to meet in other available forums.  As a result, an informed decision cannot be made concerning participating or opting out of the Settlements.

9.      The members with lower case Knauf are not provided adequate benefits under the settlement, or are provided no benefits.  However, if they opt out, others who may be liable to them,

3

by virtue of other settlements or proposed settlements will pay funds or provide benefits due the member to Knauf or other Defendants. In turn the member is receiving no benefit and releasing all claims, and may even be required to indemnify certain defendants or contributors.

10.     The Objector has not been provided adequate information, guidelines or requirements as to his ability to participate in the "Other Loss Fund" or as to the amount of benefit which may be provided or available.

11.     That the Objector is required to assign all claims, even those pending in State court, to the Settling Defendants, without consideration and is giving up available claims that are made individually against other Defendants that could provide substantial relief, all without valid or inadequate consideration.

12.     The Objector, foreclosed members and lower case members may be liable for deficiencies on mortgages or for other claims, but no recovery is provided in the Settlement for future liability or depreciation of their homes due to the presence of Chinese drywall.

13.     The Objector alleges that for little or no benefit, the settlements, release or otherwise forfeit potential personal injury claims that may arise in the future, and which would otherwise be viable claims for which a recovery could be made. Valid state claims which allow recovery for personal injuries which would not, or could not be discovered within the five year cutoff in the proposed settlement will be lost, and due to the indemnity and other release language the members may be left without health insurance or a means to recover for those claims.

14.     The foreclosed members are provided no relief for damage to credit or reputation, but would be releasing all responsible parties or assigning all claims to the Defendants, that could provide recovery for these damages with no adequate consideration or ability to recover.

4

15.    The foreclosed members are losing valuable property rights and subject to unequal treatment, in that while they may have the right to redeem their property, they do not have the ability to have their homes remediated and are provided inadequate benefits or means of recovery.

16.    The foreclosed members may be liable for a deficiency caused by the settling Defendants, with no ability to recover and with no provision protecting them from future claims made against them or the settling defendants for which the Objector may be liable for indemnification.

17.    There are inadequate procedures or guidelines established to prove loss of equity in homes such that an informed decision as to whether to accept settlement benefits or opt out can not be made.

18.    The Objector asserts that in a foreclosure situation, had the home been remediated or money made available for remediation then there may be no lost equity, depreciation or continued damage.

19.    There is no adequate process or procedure established for the foreclosed home member to evaluate the settlement benefits as to how square footage will be determined in foreclosed homes, as the member will not or may not have access to said property.

20.    The Objector states that he and others like him cannot reasonably make a decision to opt out of the settlement as other claims against liable parties may be released, with the Knauf Defendants obtaining the benefit of his recovery, as all claims are required to be assigned to Knauf and pending state court claims dismissed.

21.    The Objector is unable to make an informed decision as to whether or not to opt out of this settlement.  In the event Objector opts out of this settlement, he and others like him may be

5

wholly and completely without remedy, as the settlement protects substantially all assets of the Knauf Defendants and purports to preclude those class members who opt out from recovering from the settling Defendants or related entities if attempts are made to collect from assets that "may be" used to fund the Knauf Settlement.

22.     The Objector asserts, that unlike other states referenced in the settlement documents or briefs there would be no allocation or apportionment of damages, as Alabama has joint and several liability and does not provide for apportionment of damages.

23.     The Objector and others have been prejudiced and the likelihood for successful litigation results have been greatly reduced or hampered by the terms of the Knauf Settlement in that the Agreement precludes use of discovery obtained in the MDL by those who opt out of this settlement, even though they had been members of the putative class prior to the December 9, 2011. They would now be required to expend substantial sums to duplicate the discovery in the MDL, which is in direct conflict with the rules and purposes of Multi-District Litigation.

24.     The summary notice fails to adequately disclose that substantial assets are protected or shielded from execution for those who opt out or are excluded former putative class members, and that MDL discovery is not available to use in the furtherance of their claims.

25.     That the Objector and others receiving no benefit or inadequate benefits have had destructive testing or inspections performed by the Defendants, or their agents, causing damage and loss of value to their home and for which there is no recovery.

26.     The Knauf Settlement is inadequate that while it allows monies leftover following remediation of some class members homes to be returned to Knauf, while there are inadequate benefits or no benefits paid to other members of the class. Certain lower case Knauf members, are

giving up valuable rights and assuming indemnity obligations, but recovering no or inadequate consideration.

27.     That Objector would be unable to opt out of the Global Settlement and INEX Settlement and still be able to recover under the "Other Loss Fund." Further, the class members who are not participating class members such as lower case Knauf members, will not be allowed to recover under the "Other Loss Fund."

28.     That Objector and others with lower case Knauf are unable to appeal the court's decision as to whether or not the drywall is reactive and qualifies the member for benefits.

29.     That Objectors due process and equal protection rights or other state or federal statutory or common law rights would be violated if he opted out due to the agreements' restriction on his rights to attempt and collect any judgment from Knauf or other entities by shielding assets and rights to discovery had in the MDL.

30.     That members of the class are prejudiced if the lower case Knauf is considered KPT board, based on a determination of reactive versus non-reactive. The members whose board is not reactive lose the ability to recover, and are subject to indemnity agreements and other obligations imposed without adequate consideration.

31.     Certain lower case KPT members' benefits under the INEX and Global Settlement potentially go to benefit Knauf, even though those members receive no benefit, but are released and assign all rights and claims for any damages to the Defendants.

32.     The KPT and other settlements release liable parties with no benefit or inadequate benefit conferred on the class members who have been foreclosed or have certain lower case Knauf.

7

remediation or some later date there is a non-judicial determination that they do not qualify in violation of their due process and equal protection rights or other state and federal rights.

40.     The provisions regarding benefits to multi-unit owners violates and conflicts with state laws where statutes specify what rights and obligations a multi-unit owner has and what right and obligation a homeowner's association has.

41.     In order to qualify for benefits there must be an inspection and determination of corrosion and other factors not disclosed or communicated to members of the class in the class definition or notice.

42.     The foreclosed members whose home was foreclosed on or after the effective date of the Settlement are barred from collecting lost equity, being punished for holding on and trying to pay their mortgages, but would still be releasing claims and bound by indemnity provisions with inadequate consideration or notice.

43.     The Objector may adopt or pursue objections or issues raised by others to these settlements or related settlements.

44.     The Objector does not intend to call any witnesses on his own behalf other than those needed for rebuttal. However, the Objector would expect to cross examine or call those persons who provide evidence or documents concerning these settlements, that are called, or provide evidence by or at the request of class counsel, defense counsel or others who submit evidence related to these settlements.

45.     The Objector would plan to offer any and all pleadings, depositions or discovery used in support of or in opposition to these Settlements, or which was taken or otherwise had in any action in this MDL or related actions and any documents needed for rebuttal.

46.    That no specific time was given for objections to requests which may be made for attorney fee awards to the PSC or Common Benefit awards.  The Objector, in an abundance of caution, raises generally the objections set out below and reserves his right to amend or withdraw this objection at a later date.

A)    That the members are unable to determine what fees or expenses they may be liable for at this time, due to the relief proposed for attorney fees and expenses, and these requests interfere or may interfere with the right to contract under state or federal laws, due process or equal protection.

B)    That there is a provision proposed which would foreclose or do away with Objector's rights to appeal any attorney fee award or ruling made by this Honorable Court, and the member at this time cannot determine what fees or expenses may be requested.

C)    The Common Benefit award,   expense award or final request may impair or otherwise damage the Objector.  Absent a final request, the member is unable to make an informed decision to opt out or participate in these Settlements.  The potential liabilities or benefits are not provided with adequate specificity, which could interfere with the enforcement or oversight of counsel if these settlements are finally approved.  There does not appear to be any provision for fees that would or could be incurred in the future, if all provisions of the settlement are not completed or issues of enforcement, warranty claims or interpretation of the settlement occur.


**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

10

My name is Delbert Hopper.  My phone number is 256-310-0556 and my current address is 355 Cobblestone Way, Oxford, Alabama 36203.  The address of the property damaged by Knauf Chinese Drywall is 160 Blairs Circle, Pell City, Alabama.  I am represented by Counsel K. Edward Sexton, II and Eric D. Hoaglund.

This notice has been mailed to Arnold Levin and Kerry Miller as required by this Court's Order.

Signed this the 27 day of September , 2012.

_____
Delbert Hopper
Objector

_____
Eric D. Hoaglund
K. Edward Sexton, II
Attorneys for Delbert Hopper

11

## CERTIFICATE OF SERVICE

This is to certify that on September 28, 2012, a true and correct copy of the foregoing was

mailed via U.S. Postal Service, postage prepaid, to the following:


Arnold Levin, Esq.                          Russ M. Herman, Esq.
Levin, Fishbein, Sedran & Berman            Herman, Herman & Katz, LLP
510 Walnut Street, Suite 500                820 O'Keefe Avenue
Philadelphia, Pennsylvania 19106            New Orleans, Louisiana 70113

                                            _____
                                            COUNSEL

12