**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | ) | |
|      DRYWALL PRODUCTS | ) | MDL NO. 2047 |
|      LIABILITY LITIGATION | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | SECTION: L |
| | ) | |
| *Hobbie, et al. v.* | ) | JUDGE FALLON |
| *RCR Holdings II, LLC, et al.,* | ) | |
| | ) | |
| No. 10-1113 | ) | |
| | ) | MAG. JUDGE WILKINSON |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION OF PLAINTIFFS
AND DEFENDANT RCR HOLDINGS II, LLC FOR AN ORDER: (1)
GRANTING FINAL APPROVAL OF THE RCR SETTLEMENT; (2)
CERTIFYING THE SETTLEMENT CLASS; AND (3) APPOINTING CLASS
REPRESENTATIVE AND CLASS COUNSEL**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................2

II.     STATEMENT OF FACTS.....................................................................................3

        A. The Chinese Drywall Litigation............................................................3
        B. The *Hobbie* Action ...............................................................................4
        C. The RCR Class Settlement ...................................................................5
        D. Notice ...................................................................................................7
             1.  CAFA Notice..................................................................................7
             2.  Individual Notice by First-Class Mail to Known Class Members ..............7
             3.  Notice by Publication ...................................................................8
        E. Opt-outs and Objections ......................................................................9
        F. Fairness Hearing ..................................................................................9
        G. Claims Not Covered by the RCR Settlement and Remaining in the
             Litigation............................................................................................9

III.    ARGUMENT ......................................................................................................10

        A. Pretrial Settlements of Complex Class Actions are Favored ...........................10
        B. Standards for Approval of Class Settlements................................................11
        C. The RCR Settlement is Fair, Reasonable, Adequate, and in the Best
             Interest of Class Members ..........................................................................14
             1.  There is No Existence of Fraud or Collusion Behind the Settlement.........14
             2.  The Complexity, Expense, and Likely Duration of the Litigation Weigh
                 In Favor of Approval of the Settlement  .....................................................15
             3.  The Stage of the Proceedings and the Amount of Discovery Completed
                 Support Approval of the Settlement ............................................................16
             4.  The Probability of Plaintiffs' Success on the Merits ..................................16
             5.  The Range of Possible Recovery ................................................................18
             6.  The Opinions of Class Counsel, Class Representatives, and Absent Class
                 Members Support Approval of the Settlement ...........................................20
        D. The Requirements of Rule 23(a) and Rule 23(b)(3) Have Been Met for
             Certification of the RCR Settlement Class ....................................................22
             1.  Numerosity.................................................................................................23
             2.  Commonality...............................................................................................24
             3.  Typicality ...................................................................................................25
             4.  Adequacy of Representation .....................................................................26
             5.  Common Questions of Law and Fact Predominate ..................................27
        E. The Class Settlement Notices Complied with this Court's Orders and Due
             Process ........................................................................................................29

IV.     CONCLUSION...................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Air Line Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*,
  630 F.2d 1164 (7th Cir. 1980) .......................................................................10

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ......................................... *passim*

*Braud v. Transport Serv. Co. of Ill.*, 2010 WL 3283398 (E.D. La. Aug. 17, 2010)..........10

*Brown v. Ticor Title Ins.*, 982 F.2d 386 (9th Cir. 1992) ....................................26

*Califano v. Yamasaki*, 442 U.S. 682 (1979) .......................................................24

*Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. Sept. 23, 2004) ..........12, 14, 15

*CDC Builders, Inc. v. Amerisure Mut. Ins. Co.*, 2011 WL 4454937
 (S.D. Fla. Aug. 16, 2011).....................................................................17

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974)......................................13

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)....................................................10, 11, 13

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ............................16, 17, 18

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974)........................................................30

*Evans v. Jeff D.*, 475 U.S. 717 (1986)....................................................................10

*FCCI Advantage Ins. Co. v. Gulfcoast Eng'g, LLC*, 10-CA-2862
 (20th Jud. Cir. Ct. Lee Cty., Fla. Aug. 8, 2011).................................................17

*FCCI Commercial Ins. Co. v. Al Brothers, Inc.*, 10-CA-2840
 (20th Jud. Cir. Ct., Lee Cty., Fla. Apr. 19, 2011) ...........................................18

*FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall*, 10-CA-7389
 (12th Jud. Cir. Ct., Sarasota Cty., Fla. Jul. 6, 2011).....................................18

*FCCI Commercial Ins. Co. v. Ocean Construction, Inc.*, 10-CA-2841
 (20th Jud. Cir. Ct., Lee Cty., Fla. Jun. 6, 2011)..............................................18

*FCCI Commercial Ins. Co. v. Residential Drywall, Inc.*, 10-23495
 (13th Jud. Cir. Ct. Hillsborough Cty., Fla. Sept. 7, 2011.................................17

*FCCI Commercial Ins. Co. v. S.D. & Assoc., Inc.*, 10-29152-18
 (17th Jud. Cir. Ct. Broward Cty., Fla. Jul. 20, 2011).....................................18

*FCCI Commercial Ins. Co. v. Shirley Constr. & Drywall, Inc.*, 102979-CA
 (20th Jud. Cir. Ct. Charlotte Cty., Fla. Aug. 1, 2011).......................................................17

*FCCI Ins. Co. v. Swedberg Enter., Inc. d/b/a Florida Drywall*, 51 2010 CA 005680
 (6th Jud. Cir. Ct. Pasco Cty., Fla. Oct. 7, 2011) ..............................................................17

*FCCI Ins. Co. v. S3 Enter., Inc.*, 10-CA-2850
 (20th Jud. Cir. Ct. Lee Cty., Fla. Sept. 16, 2011) ............................................................17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................................25

*Georgevich v. Strauss,* 96 F.R.D. 192 (M.D. Pa. 1982) .....................................................12

*Granite State Ins. Co. v. Am. Building Materials, Inc.*, 2011 WL 6025655
(M.D. Fla. Dec. 5, 2011)......................................................................................................17

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)......................................13

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)..............................................25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................24

*In re Beef Indus. Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979) .........................................11

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228 (5th Cir. 1982).........................11

*In re Chinese Manufactured Drywall Prods. Liab. Litig. (Germano),* 706 F. Supp. 2d 655
 (E.D. La. 2010) ......................................................................................................................3

*In re Chinese Manufactured Drywall Prods. Liab. Litig. (Hernandez)*,
 2010 WL 1710434 (E.D. La. Apr. 27, 2010)........................................................................3

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346
 (J.P.M.L. 2009) ......................................................................................................................4

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) ..............................................12

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ...............11, 14

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488
 (E.D. La. Dec. 29, 2008)................................................................................................23, 24

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) .....................................23

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977) ........................30

*In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008).............................21

*In re Shell Oil Refinery,* 155 F.R.D. 552 (E.D. La. 1993) .................................................22

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992)..............................................11

*In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006) .........................23, 24, 27

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir.) ..................12

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) ...............................................22, 24

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) ........................................10, 11, 13

*Marshall v. Holiday Magic, Inc*., 550 F.2d 1173 (9th Cir. 1977)......................................21

*Miller v. Republic Nat'l Life Ins. Co*., 559 F.2d 426 (5th Cir. 1977) ...............................11

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999)............................27

*Murillo v. Pac. Gas & Elec. Co*., 2010 WL 2889728  (E.D. Cal. July 21, 2010).............21

*Newby v. Enron Corp*., 394 F.3d 296 (5th Cir. 2004)..........................................................9

*Officers of Justice v. Civil Serv. Comm'n of City and County of San Francisco,*
 688 F.2d 615 (9th Cir. 1982) .........................................................................................18

*Oppenlander v. Standard Oil Co*., 64 F.R.D. 597 (D. Colo. 1974) ..................................22

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) .................................................. *passim*

*Pearson v. Ecological Sci. Corp*., 559 F.2d 171 (5th Cir. 1975)......................................11

*Pederson v. La. State Univ.*, 213 F.3d 858 (5th Cir. 2000)................................................23

*Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157 (5th Cir. 1978) .....................11, 14, 20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .....................................................30

*Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003)..........22

*Reed v. General Motors Corp*., 703 F.2d 170 (5th Cir. 1983)................................... *passim*

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ....................................12

*Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992) ........................25

*Smith v. Crystian*, 91 Fed. Appx. 952 (5th Cir. 2004) ......................................................10

*Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246 (N.D. Cal. 1978)................23

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007).................... *passim*

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) .................16

*United States v. Tex. Educ. Agency*, 679 F.2d 1104 (5th Cir. 1982) ...........................12, 13

*Vintage Properties, Inc. v. Mid-Continent Cas. Co.*, 10-cv-80836
 (S.D. Fla. Aug. 23, 2011)..................................................................................................17

*Weinberger v. Thornton*, 114 F.R.D. 599 (S.D. Cal. 1986)...............................................25

*White v. Imperial Adjustment Corp.*, 2002 WL 1809084  (E.D. La. Aug. 6, 2002)..........29

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ...............................................................11, 13

## OTHER AUTHORITIES

Manual for Complex Litigation, § 21.61 (Fourth) ..............................................................12

Manual for Complex Litigation, § 21.632 (Fourth)...........................................................22

Newberg on Class Actions, § 1:3 (4th ed.) .......................................................................12

Newberg on Class Actions, § 3:10 (4th ed.) .....................................................................24

Newberg on Class Actions, § 3.12 (4th ed.) .....................................................................24

Newberg on Class Actions, § 3:13 (4th ed.) ................................................................25, 26

Newberg on Class Actions, § 3:18 (5th ed.) .....................................................................25

Newberg on Class Actions, § 3:21 (4th ed.) .....................................................................26

Newberg on Class Actions, § 4:25 (4th ed.) .....................................................................27

Newberg on Class Actions, § 11.41 (4th ed.) ...................................................................12

Newberg on Class Actions, § 11.47 (4th ed.) ...................................................................21

Newberg on Class Actions, § 11.50 (4th ed.) ...................................................................15

Pursuant to this Court's Order dated June 20, 2012 (Doc. # 14842), the Settling Parties[1] for the RCR Settlement submit this memorandum of law in support of their motion for an Order and Judgment, the terms of which include:

(1)       Finally approving the RCR Settlement as fair, reasonable and adequate;

(2)       Certifying the RCR Settlement Class under Rule 23(a) and Rule 23(b)(3), appointing Gary E. Mason and Daniel R. Bryson of Whitfield Bryson & Mason LLP, Joel R. Rhine of The Rhine Law Firm, P.C., and Adam Linkhorst of Linkhorst & Hockin P.A. as Settlement Class Counsel, and Wendy Lee Hobbie as Class Representative;

(3)       Finding that the notice given constitutes due, adequate and sufficient notice, and meets the requirements of due process, the Federal Rules of Civil Procedure, and any applicable state laws;

(4)       Finding that Settlement Class Counsel has served upon the appropriate State official of each State in which a Class Member resides, and the appropriate Federal official, a copy of the complaint and the amended complaint in this Action, notice of the hearing on the motion for preliminary approval of the Settlement, Class Notice, the Settlement Agreement, the names of the class members who reside in each state, if known, and a reasonable estimate of the number of class members residing in each state that complies with the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711-1715;

(5)       Approving the Class Release provided in Section 5 of the Settlement Agreement and ordering that, as of the Effective Date, the Released Claims will be released as to RCR and all Released Parties;

---

[1] Capitalized terms used in this Joint Motion shall have the same meaning as those defined in the Settlement Agreement Regarding Claims Against RCR Holdings II, LLC Related to Villa Lago at Renaissance Commons in MDL No. 2047, dated May 9, 2012 (the "RCR Settlement"), attached as Exhibit 1 to the [Proposed] Final Order and Judgment Approving Class Settlement with Defendant RCR Holdings, II, LLC, filed herewith.

(6)     Dismissing all of the Class Members' claims in the Litigation against RCR with prejudice;

(7)     Enjoining and forever barring any and all Participating Class Members, any individual or entity who has not properly opted out, Knauf, and its affiliated companies and/or any of the Other *Hobbie* Defendants from commencing and/or maintaining any action, legal or otherwise, or any and all claims which could have been brought against RCR and any other Released Party arising from or relating to, Chinese Drywall; and

(8)     Finding that, pursuant to Federal Rule of Civil Procedure 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

I.   **INTRODUCTION**

The RCR Settlement will provide $4,800,000.00 for the Plaintiffs and the Class Members in exchange for a full, complete and final settlement of the Litigation, including a release of claims and bar from initiation, assertion or prosecution of claims against RCR.[2]  This Settlement provides for the creation of a Settlement Fund in order to resolve all claims against RCR arising out of the alleged defective Chinese Drywall installed in the Residences at Villa Lago.[3]  The Settlement Fund will be held in an Escrow Account until all claims against all Defendants have been resolved.  The distribution plan shall provide for redress of all claims filed by the Class Members which may include remediation, cash compensation or a combination thereof.[4]

This Settlement before the Court was negotiated by Settlement Class Counsel, who are skilled attorneys with extensive and vast experience in class action and multidistrict litigation.

---

[2] *See* Declaration of Donna F. Solen dated October 10, 2012 ("Solen Decl.") at ¶ 2, filed herewith.

[3] *Id.* at ¶ 8.

[4] *Id.*

Settlement Class Counsel has made tremendous efforts over the past few years to achieve a resolution of this litigation and this Settlement is a result of the protracted and arm's-length negotiations with RCR.  If approved, this Settlement will provide a significant portion of the necessary remediation and monetary relief to the hundreds of claimants impacted by Chinese Drywall, many of whom have been displaced from their homes, lost their properties due to foreclosure or sales in mitigation, and suffered loss of personal property.

## II.   STATEMENT OF FACTS

### A.   The Chinese Drywall Litigation

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms. Beginning in the fall of 2005, hundreds of millions of square feet of Chinese Drywall were exported to the United States, sold to distributors and suppliers, resold to builders and installers, and installed in thousands of properties domestically, but primarily in Florida, Louisiana, Alabama, Mississippi, Texas and Virginia.[5]

Certain Governmental agencies found Chinese Drywall to be defective, allegedly causing property damage, including damage to structural, mechanical and plumbing systems, such as the framing, heating, air-conditioning and ventilation ("HVAC") units, refrigeration coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and other property, such as microwaves, utensils, electronic appliances, jewelry, and other household and personal property items.[6]  The Remediation Guidance of the Department of Housing and

---

[5] The Gypsum Association reports that 320 million square feet of Chinese Drywall were imported from 2005-2007. *See* Gypsum Association Comments, published at http://www.gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.

[6] *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Germano),* 706 F. Supp. 2d 655, 664-666 (E.D. La. 2010) (Findings of Fact and Conclusions of Law); *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Hernandez),* No. MDL 2047, 2010 WL 1710434, at * 8-9 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC") made various recommendations for the repair of properties impacted by Chinese Drywall, including the removal of problematic drywall, fire safety alarm devices, electrical distribution components (including receptacles, switches and circuit breakers), gas service piping and fire suppression sprinkler systems.[7]  Some individuals also have alleged that they suffered physical ailments, such as nose bleeds, skin irritation, and respiratory problems, as a result of exposure to Chinese Drywall.  The CPSC and Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence, however, that exposure to Chinese Drywall causes any ill health effects.

As a result, thousands of individual and class action lawsuits were filed in federal and state courts throughout the country.  On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to this Court for coordinated and consolidated pretrial proceedings in MDL 2047, pursuant to 28 U.S.C. § 1407.[8]  There are currently five other settlement agreements pending before this Court: the L&W Settlement, Knauf Settlement, Banner Settlement, Interior Exterior Settlement, and the Global Class Settlement.[9]

**B.      The _Hobbie_ Action**

The _Hobbie_ action was filed on September 21, 2009 in the Circuit Court for Palm Beach County, Florida against RCR, Coastal Construction of South Florida, Inc., d/b/a/ Coastal

---

[7] _See_ CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011, published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

[8] _See In re Chinese-Manufactured Drywall Prod. Liab. Litig_., 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

[9] On June 4, 2012, this Court granted preliminary approval of these five settlements.  _See_ Case No. 2:09-md-02047-EEF-JCW, Order Granting Preliminary Approval to Global Settlement, Doc. # 14562 ("Global Pre. Appr.").

Condominiums ("Coastal"), Precision Drywall, Inc. ("Precision"), La Suprema Enterprise, Inc., La Suprema Trading, Inc., and Banner Supply Company, Inc. ("Banner").[10]  It involves a multi-unit residential building located in Boynton Beach, Florida, known as Villa Lago.  Villa Lago was built during 2005 through 2007.  It is part of a large mixed use development project known as Renaissance Commons and is composed of 328 residential condominium units.[11]  The *Hobbie* action was removed by Banner on February 26, 2010, then transferred to this Court pursuant to MDL procedures.  The majority of the Class Members in this action have also been named on Class Action Omnibus complaints filed in this Court by the Plaintiffs' Steering Committee in MDL No. 2047.

    **C.**    **The RCR Class Settlement**

    The RCR Settlement is intended to resolve all claims against RCR, [12] the builder of Villa Lago, which arose out of Chinese Drywall that was installed in the Residences.  It will benefit a Class consisting of all persons who, as of September 21, 2009, owned a Residence located at Villa Lago, Boynton Beach, Florida, regardless of whether or not they own the unit as of the Notice Date.[13]  Excluded from the Settlement Class is RCR (who is also a Third-Party Plaintiff), including any units owned by RCR, and any other Defendant in the *Hobbie* matter and any person, firm, trust, corporation, or other entity related or affiliated with Defendants including, without limitation, persons who are officers, directors, employees, associates or partners of the

---

[10] Banner Supply Company, Inc. consists of Banner Supply Company, Banner Supply Company of Pompano, LLC, Banner Supply Company of Fort Myers, LLC, and Banner Supply Company of Tampa, LLC.

[11] RCR owns 130 of these units.

[12] RCR is also a third-party Plaintiff because it still owns 130 Residences in Villa Lago.

[13] The date in the Settlement Class definition is derived from the date on which the original *Hobbie* complaint was filed in Circuit Court for Palm Beach County, Florida.

Defendants.  The Settlement provides for the creation of a Settlement Fund in the amount of $4,800,000.00, plus any interest earned in the Escrow Account.[14]

RCR has agreed that a maximum of $25,000 of the Settlement Fund may, if permitted by the Court, be used to cover the cost of notice to the Class Members and related administration, claims processing costs and costs relating to the Escrow Account and Escrow Agent.[15]  In addition, Settlement Class Counsel will be entitled to petition the Court for attorneys' fees not to exceed one-third of the Settlement Fund and reimbursement of expenses and costs incurred from the administration of the Settlement.[16]  Any fees, costs and expenses awarded to Settlement Class Counsel shall come from the Settlement Fund.[17]  Because Plaintiffs continue to litigate against other Defendants, a proposed plan of distribution of the Settlement Fund will not be submitted by Settlement Class Counsel until their claims against all Defendants are resolved.  At that time, the plan will be negotiated and prepared by Settlement Class Counsel and will provide for a fair allocation of RCR Settlement Funds based on objective criteria.

As consideration for the Settlement Fund, the Settlement Agreement provides for finality to RCR through the release of Class Members' claims against RCR,[18] as well as a bar order enjoining Participating Class Members and any individual or entity who has not properly opted out, from bringing any claims against RCR relating to Chinese Drywall.[19]

---

[14] RCR Settlement, Section 1.26.

[15] RCR Settlement, Section 12.1.

[16] RCR Settlement, Section 13.2.

[17] RCR Settlement, Section 13.3.

[18] RCR Settlement, Section 5.1.1.

[19] RCR Settlement, Section 5.3.

D.    **Notice**

1.    *CAFA Notice*

Pursuant to 28 U.S.C. § 1715(b), on May 24, 2012, 10 days after the filing of the proposed Settlement, Settlement Class Counsel served a copy of the complaint and the amended complaint in this Action, notice of the hearing on the motion for preliminary approval of the Settlement, Class Notice, the Settlement Agreement, the names of the class members who reside in each state, if known, and a reasonable estimate of the number of class members residing in each state upon the appropriate Federal official and the appropriate State official of each State in which Settlement Class Counsel were aware that a Class Member resides.[20]  A list of the Federal and Stage agencies who were served with a notice of the proposed Settlement are listed in Exhibit 3 to the [Proposed] Final Order and Judgment, filed herewith.

2.    *Individual Notice by First-Class Mail to Known Class Members*

Individual Class Notice of the RCR Settlement has been disseminated via first-class mail, postage prepaid, to all known Class Members or their counsel.[21]  Since the RCR Settlement Class is composed of people who, as of September 21, 2009, owned a Residence located at Villa Lago, Boynton Beach, Florida, regardless of whether or not they own the unit as of the Notice Date, almost all Settlement Class Members and their counsel are known to the Settling Parties.  For those that were not known to Class Counsel, RCR provided a list of all known mailing addresses of Class Members.[22]  Settlement Class Counsel made arrangements for individual notice of the RCR Settlement to be sent to these individuals and entities pursuant to the Court's preliminary

---

[20] *See* Solen Decl. at ¶ 10.

[21] *Id.* at ¶ 11-12.

[22] *Id.*

approval order.[23]  If a Settlement Class Member was known by Settlement Class Counsel to have

separate counsel, notice was sent to the Settlement Class Member's counsel instead.[24]

The Notice provided clear direction and instructions to Class Members regarding their

options under the Settlement.[25]  It also objectively and neutrally apprised all Class Members of

the nature of the action, the definition of the Class sought to be certified for purposes of the

Settlement, the Class claims and issues, that Class Members may enter an appearance before the

Court at the Fairness Hearing (in accordance with the procedures set forth in the Notice), that the

Court will exclude from the Class any Class Member who opts out (and sets forth the procedures

and deadlines for doing so), and the binding effect of a class judgment on Class Members under

Rule 23(c)(3)(B).  In this Court's preliminary approval order, it found and concluded that the

proposed plan for distributing the Class Notice provided the best notice practicable, satisfied the

notice requirements of Rule 23(e) and satisfied all other legal and due process requirements.[26]

### 3.      *Notice by Publication*

The Class Notice was also posted on the District Court's Chinese Drywall MDL website

at http://www.laed.uscourts.gov/drywall/Settlements.htm.[27]  The website also allows users to

download the Settlement Agreement and the Court's preliminary approval order.

---

[23] *Id.* at ¶¶ 11-12.

[24] *Id.* at ¶ 12.

[25] *Id.* at ¶ 14.

[26] *See* Order Preliminarily Approving RCR Settlement, Conditionally Certifying a Settlement  Class, Approving Form of Notice and Authorizing Dissemination of the Notice, Scheduling a Fairness Hearing and Staying the Litigation Against RCR Holdings II, LLC, ¶ 10, June 20, 2012, Doc. #14842.

[27] Solen Decl. at ¶ 13.

### E.     Opt-Outs and Objections

The deadline to opt out of or object to the Settlement was September 4, 2012.  Not one of the Class Members chose to opt-out of the Settlement. [28]  Nor did any of the Class Members or State officials object to the Settlement. [29]  Finally, no Class Member nor any other person or entity has requested an opportunity to be heard at the Fairness Hearing. [30]

### F.     Fairness Hearing

When presented with a motion for final approval of a class settlement, "the Court must conduct a fairness hearing at which the parties proposing the settlement must present evidence that the settlement is 'fair, reasonable, and adequate.'"  *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 842 (E.D. La. 2007) (Fallon, J.), citing Fed. R. Civ. P. 23(e)(1)(C); *see also Newby v. Enron Corp*., 394 F.3d 296, 300-301 (5th Cir. 2004); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).  This Court has scheduled a Fairness Hearing for October 31, 2012 at 9:00 a.m. Central time to adjudicate final approval of the Settlement before the Court, grant final certification of the Settlement Class and enter a Final Judgment and Order of Dismissal with Prejudice, dismissing this action with prejudice as to RCR and effecting a release of all claims against RCR as provided for in the Settlement Agreement.

There will be a separate procedure to determine the allocation of all settlement funds once the Plaintiffs have settled with all parties involved in this Litigation.

### G.     Claims Not Covered by the RCR Settlement and Remaining in the Litigation

While Plaintiffs have settled with RCR and have not opted out of any of the settlements before the Court, the *Hobbie* action is not fully resolved.  Because Coastal is not willing to enter

---

[28] *Id*. at ¶ 16.

[29] *Id.*

[30] *Id.*

into a settlement at this time, Class Members retain their claims, and will continue to litigate

vigorously against them to reach a final resolution for the Class Members.

## III.   ARGUMENT

### A.   Pretrial Settlements of Complex Class Actions are Favored.

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a

class action. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475

U.S. 717, 726 (1986).  In determining whether to approve the RCR Settlement, the Court should

be guided by the strong judicial policy favoring pretrial settlement of complex class action

lawsuits. *See*, *e.g.*, *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004); *Maher v. Zapata

Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977);

*Murphy Oil*, 472 F. Supp. 2d at 843; *Braud v. Transport Serv. Co. of Ill.*, No. 05-1898, 2010 WL

3283398, at * 3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.); Rubenstein, Conte and Newberg,

Newberg on Class Actions, § 11.41 (4th ed.).[31]  This is, in part, because of the complexity and

size of class actions:

> Particularly in class action suits, there is an overriding public
> interest in favor of settlement. . . . It is common knowledge that
> class action suits have a well deserved reputation as being most
> complex. The requirement that counsel for the class be experienced
> attests to the complexity of the class action. . . . In these days of
> increasing congestion within the federal court system, settlements
> contribute greatly to the efficient utilization of our scarce judicial
> resources.

*Cotton*, 559 F.2d at 1331 (citation omitted); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The

public interest favoring settlement is especially apparent in the class action context where claims

are complex and . . . could lead to years of protracted litigation and sky-rocketing expenses.").

---

[31] "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement . . . . This rule
has particular force regarding class action lawsuits." *Air Line Stewards & Stewardesses Ass'n Local 550 v. Trans
World Airlines, Inc.*, 630 F.2d 1164, 1167 (7th Cir. 1980).

In addition:

> Complex litigation - like the instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions. . . . Although class action settlements require court approval, such approval is committed to the sound discretion of the district court.

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citations omitted).  Courts have recognized that certification of a class for settlement purposes is beneficial in resolving major class action disputes.  *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-177 (5th Cir. 1979).

**B.**     **Standards for Approval of Class Settlements.**

Determining the fairness of class settlements is left to the sound discretion of the district court, and an appellate court will not overturn the district court's decision absent a clear showing of abuse of that discretion.  *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982), *citing Miller v. Republic Nat'l Life Ins. Co*., 559 F.2d 426, 429 (5th Cir. 1977); *Reed v. General Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983); *Parker*, 667 F.2d at 1209; *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 218 (5th Cir. 1981); *Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1214 (5th Cir. 1978); *Cotton*, 559 F.2d at 1331; *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971); *see also U.S. Oil*, 967 F.2d at 493-494.  The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits."  *Miller*, 559 F.2d at 428, *quoting*, *Pearson v. Ecological Sci. Corp*., 559 F.2d 171, 176 (5th Cir. 1975).  Moreover, because settlements of class actions are "particularly favored," they are not to be lightly rejected.  *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843.

In its role as a "fiduciary for absent class members," the district court has a responsibility to "critically examine[] the settlement's terms and implementation." *Murphy Oil*, 472 F. Supp. 2d at 842-843; *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-280 (7th Cir. 2002); *Georgevich v. Strauss*, 96 F.R.D. 192, 196 (M.D. Pa. 1982) ("[T]he Court must vigorously act as guardian of the rights of absentee class members."); 1 Newberg on Class Actions, § 1:3 (4th ed. 2002); Manual for Complex Litigation, § 21.61 (Fourth 2004).  In so doing, the district court must "exercise the highest degree of vigilance . . . ."  *Murphy Oil*, 472 F. Supp. 2d at 843, *quoting Reynolds*, 288 F.3d at 279-280.[32]

"[T]he proponents of the [class] settlement bear the burden of demonstrating that the settlement is fair, reasonable, and adequate."  *Murphy Oil*, 472 F. Supp. 2d at 844.  However, in the absence of contrary evidence, there is a presumption "in favor of the settlement's fairness."  *Id.* at 843; *see also Camp v. Progressive Corp.*, No. 01-2680, 03-2507, 2004 WL 2149079, at * 7 (E.D. La. Sept. 23, 2004) ("court may presume that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations."), citing 4 Newberg on Class Actions § 11.41 (4th ed.); *U.S. v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

Keeping this in mind, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of

---

[32] In adjudicating the motion for final approval, "[t]he Court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members, and should provide the basis for its conclusions in a reasoned opinion." *Murphy Oil*, 472 F. Supp. 2d at 842, *citing* Manual for Complex Litigation, § 21.61 (2004); *see In re Combustion, Inc.*, 968 F. Supp. 1116, 1125 (W.D. La. 1997) (stating that a court may not give boilerplate approval to settlement, but must instead analyze the facts and law supporting its conclusion in a memorandum); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005).

highest hopes." *Cotton*, 559 F.2d at 1330 (citation and quotation marks omitted).  In other words, in weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales.  *See id.*  The very object of a compromise "is to avoid the determination of sharply contested and dubious issues."  *Young*, 447 F.2d at 433.

Thus, a court should not engage in a trial on the merits when considering the propriety of a settlement:

> It cannot be overstated that neither the trial court in approving the settlement nor [the appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330, *quoting, Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir.); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2nd Cir. 1974); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation."). The trial court is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel.  *Maher*, 714 F.2d at 455, n. 31 ("In other words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute."); *Tex. Educ. Agency*, 679 F.2d at 1108 (in approving a class settlement "we do not thereby reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, as we recognize that normally a settlement is a process of compromise in which, in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won

had they proceeded with the litigation, . . . rather than an attempt to precisely delineate legal rights.") (internal quotations and citations omitted).

### C.   The RCR Settlement is Fair, Reasonable, Adequate, and in the Best Interest of Class Members.

The United States Court of Appeals for the Fifth Circuit has articulated six factors or "focal facets" for the Court to consider in evaluating the fairness of the proposed class settlements: (1) the existence of fraud or collusion behind the settlements; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the absent class members.  *See Reed*, 703 F.2d at 172 (adopting six-factor test cited in prior Fifth Circuit decisions including *Parker*, 667 F.2d at 1209, *Corrugated Container*, 643 F.2d at 217, and *Pettway*, 576 F.2d at 1214).  An analysis of these factors overwhelmingly favors approval of the Settlement before the Court.

#### 1.    *There is No Existence of Fraud or Collusion Behind the Settlement.*

The law recognizes "a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."  *Camp*, 2004 WL 2149079, at * 7; *see also Murphy Oil*, 472 F. Supp. 2d at 846 ("a presumption exists that settlement negotiations were conducted properly in the absence of collusion if the terms of the proposed settlement are demonstrably fair.").  The Settlement before the Court is the product of protracted arm's-length negotiations between Settlement Class Counsel and RCR.[33]

The Settling Parties in this Litigation have twice tried to resolve this case through formal mediation.  On February 15-16, 2011, both RCR and Settlement Class Counsel participated in a

---

[33] *See* Solen Decl. at ¶ 7.

mediation before Richard O. Kingrea in Miami, Florida.[34]  By order of this Court, the mediation

was continued in New Orleans, Louisiana, on March 22, 2011.[35]  The mediation did not result in

the resolution of this matter.[36]  After RCR initiated further settlement discussions towards the end

of 2011, the parties again met in Miami on December 9, 2011 to further explore settlement.[37]

After numerous back and forth discussions – both at the informal mediation and for months

afterwards – the Settling Parties finally reached an agreement on terms memorialized in a

Memorandum of Understanding dated March 7, 2012.[38]  Given the evidence of arm's-length

negotiations and no evidence on any impropriety, the Court may presume that the proposed

settlements are fair and reasonable.  *See Camp*, 2004 WL 2149079,  at * 7.

   2.   ***The Complexity, Expense, and Likely Duration of the Litigation Weigh
        in Favor of Approval of the Settlement.***

   "In most situations, unless the settlement is clearly inadequate, its acceptance and

approval are preferable to lengthy and expensive litigation with uncertain results."  *See* Newberg

on Class Actions, § 11.50 (4th ed.).  In this case, the high level of complexity, incredible

expense, and likely duration of the Litigation militate in favor of consummating final approval

for the RCR Settlement.  This action originated on September 21, 2009.  Since then, Settlement

Class Counsel has worked vigorously to prosecute the claims of the Class Members, having

engaged in several failed mediations and numerous subsequent discussions and telephonic

meetings.[39]  Meanwhile, many of the Plaintiffs have been displaced from their homes, many have

---

[34] *Id.* at ¶ 4.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at ¶ 5.

[39] *See id.* at ¶¶  4-5.

lost their homes due to foreclosure or sales in mitigation, and many have suffered additional damages such as loss of personal property.  The Settlement with RCR is a huge step towards reaching final resolution of the *Hobbie* Action.  It allows Plaintiffs to focus on litigating and going to trial with the remaining Defendants.  These factors weigh heavily in support of approval of the Settlement.

> **3.**     ***The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlement.***

This Litigation has been ongoing for more than three years.  Early in the case, Settlement Class Counsel reviewed thousands of documents produced by RCR at its counsel's office.  In addition to the several failed mediations, this Court entered a Scheduling Order on July 15, 2011 in the *Hobbie* matter.  The parties engaged in further document discovery and conducted a deposition of a 30(b)(6) representative from Coastal.  Pursuant to the Scheduling Order, all parties filed briefs in January 2012.  The discovery and briefing allowed parties to be informed about their case with regards to the Settlement.  "Thus, settlement was achieved in the full context of the adversarial process."  *Murphy Oil*, 472 F. Supp. 2d at 846.  Even this limited discovery and briefing at this stage of the proceedings supports final approval of the Settlement. *Cf. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (upholding approval of class settlement even though no formal discovery had been taken).

> **4.**     ***The Probability of Plaintiffs' Success on the Merits***

In the absence of fraud or collusion behind the class settlements, "the probability of the plaintiffs' success on the merits has been held by the Fifth Circuit as the most important *Reed* factor."  *Murphy Oil*, 472 F. Supp. 2d at 848, *citing Parker*, 667 F.2d at 1209; *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007).  In evaluating Plaintiffs' "likelihood of success, the Court must compare the terms of the settlement with the rewards the class would

have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287, *citing Reed*, 703 F.2d at 172.

Although Settlement Class Counsel believe in the merits of the case against the Settling Defendant and in their ability to prevail, they recognized that Plaintiffs would face serious obstacles to establishing both liability and damages should the cases proceed to trial.   For instance, RCR agues that Plaintiffs' causes of action in tort for economic damages against RCR should be barred because Plaintiffs are in privity with RCR.[40]   In addition, RCR argues that Plaintiffs cannot establish any duty or breach thereof by RCR which proximately resulted in damages to the Plaintiffs to hold RCR liable under a cause of action for negligence.[41]

Another obstacle to Plaintiffs' recovery are the existence of judicial decisions denying Plaintiffs' claims under insurance policies containing pollution exclusion clauses.  *See Granite State Ins. Co. v. Am. Bldg. Materials, Inc.*, No. 8:10-1542, 2011 WL 6025655 (M.D. Fla. Dec. 5, 2011); *Vintage Properties, Inc. v. Mid-Continent Cas. Co.*, 10-cv-80836 (S.D. Fla. Aug. 23, 2011); *CDC Builders, Inc. v. Amerisure Mutl Ins. Co.*, No. 10-21678, 2011 WL 4454937 (S.D. Fla. Aug. 16, 2011); *FCCI Ins. Co. v. Swedberg Enter., Inc. d/b/a Florida Drywall*, 51 2010 CA 005680 (6th Jud. Cir. Ct. Pasco Cty., Fla. Oct. 7, 2011); *FCCI Ins. Co. v. S3 Enter., Inc.*, 10-CA-2850 (20th Jud. Cir. Ct. Lee Cty., Fla. Sept. 16, 2011); *FCCI Commercial Ins. Co. v. Residential Drywall, Inc.*, 10-23495 (13th Jud. Cir. Ct. Hillsborough Cty., Fla. Sept. 7, 2011); *FCCI Advantage Ins. Co. v. Gulfcoast Eng'g, LLC*, 10-CA-2862 (20th Jud. Cir. Ct. Lee Cty., Fla. Aug. 8, 2011); *FCCI Commercial Ins. Co. v. Shirley Constr. & Drywall, Inc.*, 102979-CA (20th Jud. Cir. Ct. Charlotte Cty., Fla. Aug. 1, 2011); *FCCI Commercial Ins. Co. v. S.D. & Assocs., Inc.*,

---

[40] *See* Defendant RCR Holdings II, LLC's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, p. 6, Jan. 17, 2012, Doc. #12201.

[41] *Id.* p. 11.

10-29152-18 (17th Jud. Cir. Ct. Broward Cty., Fla. Jul. 20, 2011); *FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall*, 10-CA-7389 (12th Jud. Cir. Ct., Sarasota Cty., Fla. Jul. 6, 2011); *FCCI Commercial Ins. Co. v. Ocean Construction, Inc*., 10-CA-2841 (20th Jud. Cir. Ct., Lee Cty. Fla. Jun. 6, 2011); *FCCI Commercial Ins. Co. v. Al Brothers, Inc*., 10-CA-2840 (20th Jud. Cir. Ct., Lee Cty., Fla. Apr. 19, 2011).  In this Litigation, on December 16, 2010, the Court granted certain insurers' motions to dismiss and for judgment on the pleadings, determining that Plaintiffs are not entitled to coverage for losses due to corrosion and faulty materials under their homeowners' insurance policies that contain exclusionary clauses for those losses.[42]

Moreover, even if the case against RCR were to proceed to trial, RCR would likely appeal any judgment favorable to the Class, imposing a significant additional delay on the payment of any recovery to individual Settlement Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.  These legal obstacles favor approval of the Class Settlement.

### 5.    *The Range of Possible Recovery*

"The next factor the Court must consider is whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290.  As the Ninth Circuit has repeatedly held, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers of Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)

---

[42] Order & Reasons, Dec. 16, 2010, Doc. #6670.

(internal citations omitted).   As the Court explained, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Id*. at 624.

RCR has agreed to pay the Settlement Amount of $4,800,000.00 into an Escrow Account to be administered in accordance with the provisions of Section 11 of the Settlement Agreement. The Settlement Agreement shows that Settlement Funds will provide for redress of all claims filed by the Class Members against RCR which may include remediation, cash compensation or a combination thereof.

Experts for the various parties have come forward with a wide range of values for the cost of remediating class members' units, ranging from as low as approximately $14 million to as high as $22 million.[43]  It is unlikely, however, that a jury would find RCR 100% responsible for the cost of remediation.[44]   There are five defendants in this case all of whom had greater responsibility with respect to the manufacturing of CDW and its installation than did RCR.[45] Under  Florida law, a jury making findings of comparative negligence is not likely to find RCR even 1/5 negligent.[46]  Therefore, the possible range of recovery from RCR may be in the range of $2.8 million to $4.4 million.[47]  Thus, the Settlement Amount of $4.8 million represents a recovery of approximately 22%-34% of the total recovery and potentially 50-100% (after deduction of attorneys' fees) of the amount for which a jury could find RCR liable.[48]

---

[43] *See* Solen Decl. at ¶ 17.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] These numbers do not take into account other damages that are possibly recoverable at trial, such as property damage and lost rent, etc., making these figures conservative.

[48] *Id.*

Further, Class Members will not be responsible for any attorneys' fees or costs under the RCR Settlement because RCR has agreed not to oppose Settlement Class Counsel's application for an award of attorneys' fees (not to exceed one-third of the Settlement Fund) and reimbursement of expenses and costs incurred from the administration of the Settlement.[49]  Any fees, costs and expenses awarded to Settlement Class Counsel shall come from the Settlement Fund.[50]  This is another significant benefit for Class Members.

The RCR Settlement before the Court provides significant benefits to the Class Members who, even if successful in Court, would have to wait for years before ever seeing a dime. Moreover, this Settlement allows Class Members to focus their litigation efforts on the more culpable party, Coastal.  The range of recovery of settlement benefits for Class Members certainly outweighs the risks of continued litigation against RCR and supports final approval of the Settlement.

> **6.**     ***The Opinions of Class Counsel, Class Representatives, and Absent Class Members Support Approval of the Settlement.***

The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed*, 703 F.2d at 175.  Thus, if experienced counsel determine that a settlement is in the best interests of the class, "the attorney's views must be accorded great weight."  *Pettway*, 576 F.2d at 1216; Newberg on Class Actions, § 11.47 (4th ed.) ("the recommendation of counsel is entitled to great weight following arm's-length settlement negotiations.")

In this case, Settlement Class Counsel are highly competent counsel, all with many years of experience litigating complex class actions and cases involving defective products, as further

---

[49] RCR Settlement, Section 13.2.

[50] RCR Settlement, Section 13.3.

detailed in their firm resumes, attached hereto as Exhibit 1.  Settlement Class Counsel also

possess adequate information concerning the strengths and weaknesses of the Litigation against

RCR after extensive document discovery and litigating this case for over two years.  They

support the Settlement and believe it is in the best interest of the Class.  The RCR Settlement

Class representative also supports the Class Settlement, which counsels in favor of their

approval.

Further, the response of the Class to the Settlement has been overwhelmingly positive.

No requests for exclusion from the Settlement were received from any Class Member.  Nor did

any of the Class Members or State officials object to the Settlement.  The lack of any objections

or requests to opt out of the Settlement indicate the broad, class-wide support for the Settlement

and supports its approval.  *See Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir.

1977).  The absence of any objections to a proposed class action settlement "raises a strong

presumption that the terms of a proposed class settlement action are favorable to the class

members."  *Murillo v. Pac. Gas & Elec. Co*., 2:08-1974, 2010 WL 2889728, at * 9 (E.D. Cal.

July 21, 2010) (citing *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal.

2008)).

*    *    *

The Settling Parties respectfully submit that all of the above-cited circumstances support

final approval of the RCR Settlement.  Settlement Class Counsel believe that the Settlement

Agreement is fair, adequate and reasonable in view of a variety of factors, including the

estimated damages suffered by the Class, the exposure of RCR relative to the other Defendants,

the complexity of and risks attendant to Class Members' demonstration that their damages were

causally linked to RCR's alleged wrongdoing, and the delays inherent in litigating hundreds of

individual claims against RCR.  The Settling Parties believe that the Settlement is a reasonable settlement of disputed claims.

As the court in *In re Shell Oil Refinery* aptly pointed out:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

155 F.R.D. 552, 560 (E.D. La. 1993)*, citing and quoting Oppenlander v. Standard Oil Co*., 64 F.R.D. 597, 624 (D. Colo. 1974) (internal quotations omitted).

### D.    The Requirements of Rule 23(a) and Rule 23(b)(3) Have Been Met for Certification of the RCR Settlement Class.

Certification of a class action is within the discretion of the district court.  *See James v. City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001); *Purdie v. Ace Cash Express, Inc.*, No. 301cv1754L, 2003 WL 22976611, at * 3 (N.D. Tex. Dec. 11, 2003).  In the case of a settlement-only class, the Court must find that the criteria set forth in Rule 23(a) and at least one of the subsections of Rule 23(b) have been met.  Further, "[i]f there is a need for subclasses, the judge must define them and appoint counsel to represent them."  Manual for Complex Litigation (Fourth) § 21.632.  The Court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem*, 521 U.S. at 619-620.

In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

As this Court has previously recognized,

> The first two requirements [of Rule 23(a)] focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed "to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests."

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 71873, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008) (*quoting In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Settlement Class before the Court.

### 1.  Numerosity

As this Court has previously held, "[t]o demonstrate numerosity, the [Movants] must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'"  *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006), *quoting Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000).  Here, the class is comprised of a readily identifiable group – owners of condominium Residences in Villa Lago at Renaissance Commons.  Excluded from the class is RCR and any units RCR owns.  There are a total of 328 units at Renaissance Commons.  RCR owns 130 of these units.  Therefore, there are 198 units in the class.  Of these 198 units, 131 of them are owned by the 182 named Class Members.  That leaves a total of 67 Residences that are not owned by any of the named plaintiffs.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *Sullivan v. Chase Inv. Servs. Of Boston, Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978) (a

class consisting of 1,000 members "clearly satisfies the numerosity requirement"); *see* Rubenstein, 1 Newberg on Class Actions, § 3:12 (5th ed.) (where the class "number[s] in the hundreds, thousands, and even millions ... the impracticability of bringing all class members before one court is obvious and the Rule 23(a)(1) requirement is easily met.").

### 2. *Commonality*

As this Court has previously held, "[c]ommonality 'does not require that all questions of law or fact raised in the litigation be common.  The test or standard . . . is qualitative rather than quantitative.'"  *See* Global Pre. Appr., p. 16, *quoting* Rubenstein, 1 Newberg on Class Actions, § 3:10 (4th ed.); *see also In re FEMA Trailer*, 2008 WL 5423488, at * 6.  Thus, "[t]he commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members."  *Vioxx*, 239 F.R.D. at 459, *citing James*, 254 F.3d at 570.  The Rule 23(a)(2) commonality "requirement is easily met in most cases."  *Id.*

The commonality requirement of Rule 23(a)(2) is met in this case.  The Judicial Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the commonality of facts in the various cases."  Questions surrounding the effects of Chinese Drywall on Class Members and the damages caused by Chinese Drywall are issues common to all Plaintiffs, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); 1 Newberg on Class Actions § 3:18 (5th ed.) ("the [commonality] requirement is generally satisfied by the

existence of a single issue of law or fact that is common across all class members and is thus easily met in most cases.").

### 3.    *Typicality*

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 1 Newberg on Class Actions, § 3:13 (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)).  In other words, courts must determine "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named class members, and whether other class members have been injured by the same conduct."  1 Newberg on Class Actions, § 3:13 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." 1 Newberg on Class Actions, § 3:13 (4th ed.).

The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members.  *See*, *e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-157 (1982).  The typicality requirement has been liberally construed by the federal courts.  *See*, *e.g.*, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Class Members in this case is seeking money from RCR for the costs of remediation of the allegedly defective Chinese Drywall and other damages allegedly caused by the Chinese Drywall. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." 1 Newberg on Class

Actions, § 3:13 (4th ed.).  The proposed Class Representative is a Plaintiff seeking to hold RCR liable for damages resulting from Chinese Drywall installed in her Residence.

### 4.   *Adequacy of Representation*

Rule 23(a)(4) requires that the named class representative "not possess interests which are antagonistic to the interests of the class."  1 Newberg on Class Actions, § 3:21 (4th ed.). Second, the named class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *Amchem*, 521 U.S. at 625-626 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted).   "The purpose of this requirement is to protect the legal rights of absent class members."  1 Newberg on Class Actions § 3:21 (4th ed.). In this case, there is nothing to suggest that this requirement has not been met.  The named representative is a member of the Class she seeks to represent – she is an owner of a Residence at Villa Lago as of September 21, 2009 – and does not possess any interests antagonistic to the Class with respect to their claims against RCR.  Here, both the Class Representative and the absent Class members are equally interested in detailing to the Court and a jury the nature of RCR's liability, and are further committed to obtaining appropriate compensation from living in the Affected Properties.

Moreover, Settlement Class Counsel conducted these class negotiations with RCR at arm's length, and will fairly and adequately represent the Class.  *See Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).  The Court may take judicial notice of Class Counsel's substantial experience in litigating mass tort class actions and complex product liability cases.[51] Class Counsel have been lead counsel in numerous complex class action cases.  Class Counsel

---

[51] Further detailed credentials of Settlement Class Counsel are enumerated on their firm resumes, attached as Exhibit 1.

have and will continue to litigate aggressively against the remaining *Hobbie* defendants.  Class Counsel possess adequate information concerning the strengths and weaknesses of the Litigation against RCR after extensive document discovery and litigating this case for well over two years. Class Counsel have negotiated the proposed Settlement from a position of knowledge and strength, and as advocates for the entirety of the Class.  They have obtained an advantageous settlement that treats all Class members in the same fashion, and provides real value to all. Therefore, the adequacy of representation requirement is readily satisfied for certification.

### 5.   *Common Questions of Law and Fact Predominate*

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  1 Newberg on Class Actions, § 4:25 (4th ed.); *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").  "To predominate, common issues must form a significant part of individual cases."  *Vioxx*, 239 F.R.D. at 460, *citing Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999).

In this case, it makes eminent sense to resolve the claims against RCR in this forum through the class action device.  The questions of fact and law common to members of the Class predominate over any individual questions.  None of the elements of the causes of action against RCR – strict liability, negligence, breach of warranty of fitness, or breach of express warranty of fitness and merchantability – require individualized proof.  All Class Members are unified by common factual allegations and RCR's use of Chinese Drywall is an act to which the Defendants can be held uniformly liable.  A class settlement will ensure that funds are available to remediate the Class Members' Affected Properties and provide compensation for other damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action

device be superior to other methods of adjudication.  Factors the Court may consider include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.[52]  Fed. R. Civ. P. 23(b)(3)(A)-(D). Consideration of each of these factors weighs in favor of certification of the Settlement Class.

First, the interest of individuals in controlling this litigation is limited.  While the damages of some Class Members may be sufficiently significant to warrant individual litigation, the damage to most individuals is slight compared to the cost of litigating a case of this complexity. As the U.S. Supreme Court reasoned in *Amchem*,

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry recoveries into something worth someone's (usually an attorney's) labor.

521 U.S at 617.  Importantly, Class Members who wished to pursue their own individual lawsuits had the opportunity to request exclusion from the Class if he or she so desired. Moreover, given the unique nature of this Action, there are economies of scale in remediation of the entire condominium building that make individually litigating this case against RCR undesirable.  The second factor, the nature and extent of any existing litigation, also weighs in favor of class action superiority for settlement purposes.  At the time of Settlement, Class Members were unaware of any pending litigation against RCR seeking redress on behalf of individuals who purchased units at Villa Lago.  Thus, unless the proposed Class is certified for

---

[52] As stated earlier, any difficulties of management of this Class need not be considered.  *Amchem*, 521 U.S. at 620.

settlement purposes, numerous meritorious claims relating to RCR's actions will remain unredressed.  Third, it is desirable to concentrate the litigation in this forum because this Court has presided over the ongoing massive Chinese Drywall Multidistrict Litigation since June 15, 2009.  For all of the above reasons, a class action is the superior method of adjudicating this controversy.

In short, the class action mechanism offers substantial economies of time, effort, and expense for the litigants in this matter, as well as for the Court.  *See White v. Imperial Adjustment Corp.*, No. 99-3804, 2002 WL 1809084, at * 6 (E.D. La. Aug. 6, 2002) ("Rule 23(b)(3) applies to cases for which a class action would achieve economies of time, effort, and expense, [and] promote uniformity of decision as to persons similarly situated.").  Therefore, approval of the Settlement and resolution of Plaintiffs' claims against RCR in this forum benefits all parties and satisfies the requirements of Rule 23(b)(3).

## E.      The Class Settlement Notices Complied with this Court's Orders and Due Process.

In conjunction with preliminary approval of the Settlement, this Court ordered that notice be disseminated to the Settlement Class.  The Settling Parties have complied with the Court's orders and distributed notice that complies with the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711-1715 as well as the Settlement Agreement.[53]  Settlement Class Counsel worked diligently to provide individual notice by first-class mail to all unit owners' residential addresses, all of the Villa Lago units, and individual Plaintiffs' Counsel.[54]  Of the approximately 411 Class Notices that were mailed, 16 notices mailed to Class Members' mailing addresses and

---

[53] *See* Solen Decl. at ¶ 10.

[54] *Id.* at ¶ 12.

79 notices mailed to Villa Lago units were returned to sender.[55]  While a total of 95 notices were returned, only five absent Class Members failed to receive direct mail notice.[56]  This is because Settlement Class Counsel strove to be comprehensive in their notice efforts by mailing the Class Notice to multiple addresses for most Class Members, including the mailing addresses *and* their Villa Lago units for those who do not live in their Residence.[57]  The Settling Parties, through the Court, also had the notice posted on the Court's Chinese Drywall MDL website, http://www.laed.uscourts.gov/drywall/Settlements.htm.[58]  The notices that have been disseminated to the Settlement Class comply with due process and support approval of the settlements and certification of the settlement class.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).

## IV.    CONCLUSION

Settlement Class Counsel respectfully requests that this Court find that the RCR Settlement is fair, reasonable and adequate and in the best interests of Class Members and that the RCR Settlement should be certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e). Settlement Class Counsel further requests that the Court enter the Order and Judgment, submitted herewith.

Dated:  October 10, 2012                         Respectfully submitted,

                                                 /s/ Gary E. Mason
                                                 Gary E. Mason
                                                 WHITFIELD BRYSON & MASON LLP
                                                 1625 Massachusetts Ave., NW, Suite 605

---

[55] *Id.* at ¶ 15.

[56] *Id.*

[57] *Id.*

[58] *Id.* at ¶ 13.

Washington, D.C.  20036
Telephone:  (202) 429-2290
Facsimile:  (202) 429-2294

Adam C. Linkhorst, Esq.
LINKHORST & HOCKIN P.A.
4495 Military Trail, Suite 106
Jupiter, Florida 33458
Telephone:   561.626.8880  / 954.776.5990
Facsimile:  561.626.8885

Joel R. Rhine
RHINE LAW FIRM
314 Walnut Street, Suite 1000
Wilmington  NC  28401
Telephone:  (910) 772-9960
Facsimile:   (910) 772-9062

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
Telephone: (888) 981-0939
Facsimile: (919) 981-0199

Chris Coffin
PENDLEY BAUDIN & COFFIN, LP
Post Office Drawer 71
24110 Eden Street
Plaquemine, Louisiana 70765
Telephone:  (225) 687-6396

Stephen Mullins
LUCKEY & MULLINS
2016 Bienville Blvd
P.O. Box 990
Ocean Springs, MS 39564
Telephone:  (228) 875-3175
Facsimile:   (228) 872-4719

*Attorneys for Plaintiffs*

31

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and forgoing has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and email or hand delivery and email and upon all parties by electronically uploading same to Lexis Nexis File and Serve® in accordance with Pre-Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with procedures established in MDL 2047 on this 10th day of October, 2012.

/s/ Gary E. Mason
Gary E. Mason