UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE FALLON |
| ALL CASES | * * * | MAGISTRATE WILKINSON |

### AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared

ROBERT J. ALBANO

who, being duly sworn, upon his oath deposed and stated as follows:

1. He is the President for Vizcaya Custom Homes, Inc. ("Vizcaya"), and as such, has personal knowledge of the following based on his review of records maintained by Vizcaya in the regular course of business.

2. Vizcaya is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Hillsborough County, Florida.

3. Vizcaya is a home builder that contracts with third party vendors for the construction of single-family homes and/or sells completed single-family homes.

4. Vizcaya has never built a residence in the State of Louisiana or had any contracts or subcontracts with companies located in Louisiana.



5. Vizcaya has never been licensed or registered to do business in Louisiana or ever had any offices or employees in Louisiana.

6. Vizcaya does not have an agent for service of process in Louisiana.

7. Vizcaya does not have any bank accounts in Louisiana or own any property in Louisiana.

8. Vizcaya does not solicit business in Louisiana and has never transacted business in Louisiana.

9. Vizcaya has never maintained a telephone line in Louisiana or kept a post office box or otherwise received mail in Louisiana.

10. Vizcaya does not maintain an office, store, headquarters, shop, warehouse, or any other facility in the State of Louisiana.

11. Vizcaya has never received any business from any contacts in Louisiana, whether individual customers, or business customers.

12. Consequently, Vizcaya never anticipated it would be haled into court in Louisiana.

ROBERT J. ALBANO

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 10th DAY OF October, 2012.

NOTARY PUBLIC

TIM BELANGER
MY COMMISSION # DD 964376
EXPIRES: March 11, 2014
Bonded Thru Notary Public Underwriters

# STANDARD CONSTRUCTION CONTRACT
## Vizcaya Custom Homes, Inc

THIS CONSTRUCTION CONTRACT made and executed this __1__ day of __October__ 2006 between Patrick ad Ann Hanlon (hereinafter referred to as "Owner"), and Vizcaya Custom Homes, Inc, at 209 S. Gunlock Avenue, Tampa, Florida 33609 (hereinafter referred to as "Contractor"), whose State of Florida Certified contractor's license number is CRC 042452, which parties for good and valuable consideration each to the other, the receipt and sufficiency of which is conclusively acknowledged, do hereby agree as follows:

1. **DESCRIPTION OF PROPERTY AND WORK TO BE PERFORMED.** Contractor agrees to construct improvements on Owner's real property located at 3407 Oakellar Street Tampa, in Hillsborough County, Florida, in accordance with the plans and specifications signed and dated by Contractor and Owner, prepared by Stacy Davis, dated or latest revision made on 07/15/06, and consisting of three pages. The legal description of the Subject Property is Lot 21 and the west 10 feet of lot 22, block 4, Oakellars Subdivision, plat book 5, page 40 of the public records of Hillsborough County, Florida.

2. **CONTRACT PRICE.** Owner agrees to pay Contractor the following Contract Price, together with adjustments, if any, for Change Orders as described in paragraph 10, and for any material costs increases as described in paragraph 30, if applicable, in accordance with the further provisions of this Contract

> the sum of $430,000.00 subject to increases in costs if commencement of construction is delayed by owner for more than sixty (60) days from date of this agreement.

3. **DEPOSIT.** Upon the execution of this Contract, Owner shall pay Contractor a deposit in the amount of $10,000.00. This deposit is refundable, less contractor's costs, in the event Owner fails to obtain construction loan financing in the minimum amount of $ __537,000__ ; provided that the Owner makes complete loan application within five (5) business days of the date of this agreement, actively pursues same in good faith, and obtains a binding loan commitment within thirty (30) days of the date of this agreement, which commitment requires a closing thereof within thirty (30) days thereafter. Upon loan commitment, an additional deposit in the amount of $ 30,000.00 is due and payable and all deposits are nonrefundable.

4. **DEFINITIONS.** The term "cost" means all costs and amounts paid or incurred to third persons by Contractor or by the Owner for labor, services, materials, licenses and permits directly related to this Contract. This term shall also include the gross payments to all employees of Contractor for work performed by such employees pursuant to or in preparation of this Contract or in preparation of the plans and specifications referred to herein, (including the income taxes and F.I.C.A. taxes withheld thereon). The term "days" means calendar days, including weekends and holidays, unless otherwise noted; "business days" means weekdays Monday through Friday which are not legal state holidays. "Substantial completion" occurs when the Certificate of Occupancy has been issued, or has been delayed solely by act or omission of the owner; or, when the owner occupies the Subject Property. "Consequential damages" consists of costs or expenses which may arise from the special circumstances of either party hereto, including, but not limited to, such things as increases in living expenses, additional storage or interests costs, adverse or aggravated medical conditions or longer travel times and distances, which may be incurred or suffered as a result of, or arising from, a delay in any performance hereunder by either party.

5. **LICENSES AND PERMITS.** Contractor and Owner agree that each party shall obtain and pay for the following licenses, permits or related items as indicated. Unless otherwise indicated, the responsibility for obtaining any license or permit includes the responsibility for obtaining all governmental licenses or permits, if required. In the event that Contractor is unable to commence construction of improvements within 60 days from the date of this agreement, due to contractor's inability to obtain the necessary licenses and permits required, then contractor shall have the option of terminating this agreement and returning all monies paid to contractor by owner, less contractor's costs. Such amounts are to be paid and the license or permit obtained as and when Contractor needs such licenses or permits to complete the work described in this Contract by the following:

{TL039401;1}

Page 1

**EXHIBIT** "B"

| DESCRIPTION OF LICENSE OR PERMIT | CONTRACTOR | OWNER | DESCRIPTION OF LICENSE OR PERMIT | CONTRACTOR | OWNER |
|---|---|---|---|---|---|
| a) Architectural Control Committee |  | ✓ | k) Initial Soil Tests |  | ✓ |
| b) Building Permit | ✓ |  | l) Survey | ✓ |  |
| c) Driveway Permit | ✓ |  | m) Tree Permit | ✓ |  |
| d) Gas Tap Permit | ✓ |  | n) Util. Dep's. (phone /TV) |  | ✓ |
| e) Gas System Charge | ✓ |  | o) Util. Dep's (water/ power) |  | ✓ |
| f) Landscape Permit | ✓ |  | p) Water Systems Charge | ✓ |  |
| g) Model Energy Code Rating | ✓ |  | q) Water Tap | ✓ |  |
| h) Sewer Systems/Septic Permit | ✓ |  | r) Flood Elevation Certificate | ✓ |  |
| i) Sewer Tap | ✓ |  | s) Other ( n/a ) |  |  |
| j) Storm Water Manage. Permit | ✓ |  | t) Other ( n/a ) |  |  |

**6. TIME OF PAYMENT; INTEREST DUE.** Owner agrees to pay Contractor the Contract Price specified in paragraph 2, in accordance with the draw schedule identified in Exhibit "A-1" attached hereto or in accordance with the lender's required draw schedule, if any. In the event any amounts due to the contractor remain unpaid for more than ten (10) days after the due date thereof, then, and in such event, such amounts shall bear interest thereafter at the rate of 1.5% per month until payment in full has been made.

**7. DRAW REQUESTS.** At such times as Contractor completes each of the items set forth in the draw schedule Contractor shall submit a written draw request to Owner or to Owner's Lender, as applicable, for an amount equal to the percentage of the Contract Price applicable to each item of construction then completed, less the percentage previously requested and paid for each such items. All draw requests are due and payable within 10 days of the date submitted to Owner. If requested by Owner, Contractor will provide Owner with a lien release from each person who has served a Notice to Owner.

**8. FINANCING.** It shall be the sole responsibility of Owner to obtain any financing necessary to create and maintain a draw account deposit sufficient to make all the payments set forth in this Contract, and Owner shall have sole responsibility to pay all fees, charges or other costs of such financing, including inspection fees charged by any such lender. The nonperformance of any such lender shall not affect the obligation of Owner to Contractor. In the event any portion of the Contract Price is to be paid from the proceeds of a construction loan, Owner agrees to provide Contractor with written verification of a construction loan commitment, subject only to standard conditions, as a condition precedent to Contractor beginning any work. The Contractor is not obligated to begin work until such time as: (A) a Notice of Commencement has been recorded; and, (B) the Owner has obtained a construction loan, which, when added to Owners funds paid to Contractor or on deposit for payment to Contractor, is in the amount of not less than the Contract Price, the terms of which will permit the Contractor to submit draw requests directly to the lender or owner in accordance with the draw schedule in paragraph 6 of this Contract or the draw schedule in the loan documents. In addition, Contractor may cease construction work at such times, and from time to time, if the balance in the draw account is ever less than the balance of the Contract Price then due for completion, plus any increased costs for all change orders.

**9. TIME AND MANNER OF PERFORMANCE BY CONTRACTOR.** Contractor shall commence work within thirty (30) days of the issuance of all building permits and verification from Owner in writing that all funds necessary for payment of the Contract Price are available, whichever shall last occur. Contractor shall diligently pursue and substantially complete all work to be performed under this Contract within a reasonable period of time, taking into consideration delays that are beyond the control of the Contractor, including, but not limited to, weather conditions, delays in selection or delivery of materials, change orders requested by Owner and delays in obtaining all necessary licenses or permits or the certificate of occupancy. Contractor shall not be liable to Owner for any losses, costs or damages resulting from or arising out of a delay or inability to perform this Contract as described herein or caused by any event beyond the control of the contractor.

**10. CHANGE ORDERS.** All changes to the plans, specifications or selection of finished materials may be requested by Owner, subject to Contractor's approval. Owner shall pay to Contractor any increase in Contract Price prior to the work being performed, or, at contractor's option, at the time of final payment, or as set forth in the change order. To the extent that additional work is performed or materials delivered at the owner's request which is not the subject of a signed change order, the contractor shall be entitled to recover from owner the amount stated therein, or, if no amount is stated, the costs thereof, plus _____ (15% or $100, whichever is greater, if blank).

**11. FINAL INSPECTION/PUNCH LIST.** Within five (5) days of notification by Contractor that all work is substantially complete, Owner shall conduct a final inspection of the improvements and prepare a punch list, which if agreeable, shall be signed and dated by both parties. Contractor shall be responsible for completion of all items on the punch list; provided, however, that if there are punch list items yet to be completed. The Contractor shall be entitled to receive all remaining amounts due under this Contract less the value of the punch work yet to be completed. This amount shall be agreed on by all parties in writing and shall be payable to the Contractor upon completion of the work.

{TL039401;1}

12. **OCCUPANCY.** Owner hereby grants to Contractor an exclusive leasehold on the real property described herein, effective upon execution of this agreement and continuing until substantial completion of construction, and payment in full to the Contractor. Owner shall not occupy the structure until the Contract Price, including any increases as the result of change orders, whether written or oral, is paid in full to the Contractor. In the event Owner occupies the property prior to making final payment to the Contractor, then Owner shall be deemed to have APPROVED AND ACCEPTED all labor, services and materials, as well as Contractor's performance hereunder as being complete. In addition, any such occupancy by the Owner or authorized by the Owner, shall result in the Owner being obligated to pay rent to the Contractor at the rate of one (1%) of the Contract Price for each month or portion thereof that any such occupancy continues until the Contract Price, as adjusted by any change orders, has been paid in full to the Contractor.

13. **USE OF CONTRACTOR'S EMPLOYEES, AGENTS, SUBCONTRACTORS, OR MATERIAL SUPPLIERS.** Owner and Owner's family members or agents shall not in any manner, utilize, unreasonably interfere, communicate, or contract with Contractor's employees, subcontractors, subcontractor's employees or agents, or material suppliers, nor perform or permit any work on the Subject Property, without the prior written approval of the Contractor, which approval may be withheld in the Contractor's unrestricted discretion; provided, however, that if such consent is given, then Owner shall be solely responsible for the payment, shipment, delivery, insurance, installation, and damages for delay arising therefrom.

14. **WARRANTIES BY CONTRACTOR. CONTRACTOR MAKES NO EXPRESS OR IMPLIED WARRANTIES, EXCEPT AS STATED HEREIN. ALL STATED WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED.**

    (a) Contractor **warrants** the labor and materials supplied by Contractor and used in performing this contract will be free of defects for a period of one (1) year from the date of the certificate of occupancy except as provided in (b) and (d). Any warranty regarding wood destroying organisms is given only by a licensed pest control operator and is limited to one (1) year from date of treatment, and is renewable at the sole option and expense of the Owner.
    (b) Contractor **does not warrant** any appliances, heating and air conditioning equipment or any installed equipment. Owner agrees to rely solely on the warranty of the respective manufacturers of such equipment unless the defect is caused by the manner of installation of such appliances or equipment.
    (c) Contractor warrants that the dimensions of any room shall be within 10% of the dimensions specified on the plans and that the overall heated square footage of the structure shall not be less than the amount specified on the plans.
    (d) This warranty **does not include** any damage or defect to the Work that occurred after the Owner takes occupancy unless said damage is reasonably attributable to the Contractor. It **does not include** finish items such as paint, drywall, cabinetry, trim, and general workmanship items. The following items are also **not** covered by the warranty:
        a. Ceramic tile may crack due to stress on the slab.
        b. Hardware, especially brass exposed to the elements, has a tendency to pit and tarnish.
        c. Wood doors or flooring may deteriorate if exposed to direct sunlight or moisture.
    (e) MOLD IS A NATURALLY OCCURRING GROWTH THAT MAY HAVE ADVERSE HEALTH CONSEQUENCES AND WHICH REQUIRES CERTAIN PREVENTATIVE AND PROPER MAINTENANCE ACTIONS BY THE OWNER. ACCORDINGLY, CONTRACTOR ASSUMES NO LIABILITY WHATSOEVER FROM ANY HARM TO INDIVIDUALS AND DAMAGES TO PROPERTY ARISING AS A RESULT OF MOLD UNRELATED TO CONSTRUCTION DEFECTS.

15. **ALLOWANCES AND SELECTION OF FINISH MATERIALS.** In establishing the Contract Price for a "Fixed Price" contract or estimating the costs to be incurred, Contractor has made the following allowances:

| | | | | | |
|---|---|---|---|---|---|
| a) | n/a | | i) | Appliances (mat. only) | $ 6,000.00 |
| b) | Exterior Doors (mat. only) | $ 4,800.00 | j) | Lighting Fixtures (mat. only) | $ 5,800.00 |
| c) | Hardware (mat. only) | $ 1,000.00 | k) | Cabinet and Countertops (l & m) | $ 30,000.00 |
| d) | Plumbing Fixtures (mat. only) | $ 6,000.00 | l) | Ceramic Tile (l & m) | $ 20,500.00 |
| e) | Stair Package (l & m) | $ 3,000.00 | m) | Decorative Precast (l & m) | $ 10,500.00 |
| f) | Landscaping (l & m) | $ 5,000.00 | n) | Carpet (l & m) | $ 6,000.00 |
| g) | n/a | | o) | Sound prewiring (l & m) | $ 500.00 |
| h) | Shelving | $ 1,000.00 | p) | Shower enc. & mirrors (l & m) | $ 1,000.00 |

Owner shall submit in writing to Contractor the selection for each such item. The portion of the cost of any selections which is below or exceeds the allowances is the sole responsibility of Owner and is payable or refundable in the same manner as a change order.

{TL039401;1}

16. **TITLE TO PROPERTY, SURVEY, PLACEMENT OF STRUCTURE AND BUILDING SITE.** Owner warrants and represents to Contractor that Owner has fee simple marketable title to the subject property, free and clear of all liens or encumbrances, and Owner shall submit proof of same to Contractor immediately upon request. Owner further warrants that Owner has legal right of access to the Subject Property and all rights of title, including easements necessary for the construction, use and occupancy of the structure. It shall be the sole responsibility of Owner to mark the boundaries of the Subject Property and the location on such property where the structure is to be constructed. Any loss or damage suffered by Contractor or any third party as the result of a defect in title or incorrect designation of the boundaries or location of the structure shall be borne solely by Owner. In the event any governmental regulations or private restrictions or covenants, or the results of any soil or subsurface tests requires modifications to the structure or to the subsurface, the cost of such modifications shall be added to the Contract Price and are payable in the same manner as if originally included in the Contract Price, or, at contractor's option, due and payable at the time the costs of such modifications are incurred. Owner shall provide a clear, accessible building site, correctly zoned and otherwise allowable for the improvements to be made.

17. **PLANS, SPECIFICATIONS AND SCOPE OF WORK.** The plans and specifications have been provided by Contractor, and any loss, cost, damage or expense incurred by the other party as the result of any defects in such plans and specifications shall be borne by the party providing the plans and specifications. In the event of a conflict between the plans and specifications, the specifications shall control. If either the plans or the specifications are to be provided by the Owner, and are incomplete at the time this contract is signed, Contractor reserves the right to declare a default if such plans and specifications are not furnished within ____ (or, 10 days if blank) days after written demand to the Owner. In the case of a "Cost Plus a Fixed Fee" contract, if the plans or specifications change, the Contractor is entitled to a fee of 20% of the additional costs incurred by the changes.

18. **INSURANCE.** The Contractor shall, at contractor's expense, maintain all insurance required by law, including general liability, in connection with the work to be performed under this Contract. The Owner shall, at the Owner's expense, during the period of construction and until issuance of a certificate of occupancy or until the Contractor's earlier termination of work, maintain a builder's risk insurance policy for property damage, theft and vandalism equal to the Contract Price. In the event that the builder's risk insurance policy does not provide for wind and hail-storm damage, Owner shall provide for such coverage at Owner's expense (if applicable). Additionally, under no circumstances will the Contractor be liable for Builder's Risk deductibles or anything covered in any home warranty program or product.

19. <u>**ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001 – 713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND ARE NOT PAID-IN-FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS OR NEGLECTS TO MAKE OTHER LEGALLY REQUIRED PAYMENTS, THE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY. FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX AND IT IS RECOMMENDED THAT WHENEVER A SPECIFIC PROBLEM ARISES, YOU CONSULT AN ATTORNEY.**</u>

{TL039401;1}

20. **RIGHT-TO-CURE.** FLORIDA LAW - CHAPTER 558, FLORIDA STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTORS, SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW.

21. **DEFAULT/NOTICE OF DEFAULT.** Other than for claims of defective construction, which are governed solely by the "right-to-cure" laws disclosed in paragraph 20, Contractor shall be in default under this Contract if Contractor abandons work on the structure or otherwise refuse to carry out his obligations under this Contract (unless such abandonment or refusal is based upon a prior default by Owner which Owner has failed to cure after written notice thereof). Contractor shall be deemed to have abandoned work if Contractor shall fail to perform or cause any work to be performed on the Subject Property for thirty (30) consecutive days, unless such failure is the result of any event beyond the control of the Contractor. Owner shall be in default under this Contract if Owner refuses to permit Contractor to complete performance, fail to pay any amounts when due, or otherwise refuses to carry out the obligations of Owner under this Contract (unless such refusal or nonpayment is based upon a prior default by Contractor which Contractor has failed to cure after written notice thereof). In the event of default, the defaulting party shall be entitled to receive written notice, by certified mail return receipt requested or by hand delivery to the address shown below, which specifies the event(s) of default. The defaulting party shall have ten (10) days from the receipt of the notice in which to begin the curing of any default, which actions shall be continuously pursued and completed within a reasonable time in light of the nature of the default; provided, however, the cure of any default in payment must be completed within ten (10) days from the date of notice of default. If any default is timely cured, each party agrees that this Contract shall remain in full force and effect and neither party may assert any claims as the result of such default. All notices shall be to the respective addresses of the parties as follows, or as otherwise set forth in written notice to the other party:

(a) As to CONTRACTOR: 709 S. Gunlock Ave. Tampa, Fl. 33609

(b) As to OWNER: 411 S. Westland Ave. #3 Tampa, Fl. 33606

22. **REMEDIES AFTER DEFAULT:**
(A) BY CONTRACTOR. Except for claims by the Owner of defective construction, which are governed solely by the "right-to-cure" law disclosed in paragraph 20, in the event of default by Contractor which is not cured within the time specified, the Owner may, at Owner's option, declare the Contract terminated and seek damages only for the reasonable and necessary costs to complete construction in accordance with the original plans and specifications and for the Contract Price (adjusted by Change Orders to the date of termination), less any balance of the adjusted Contract Price not paid to Contractor, and excluding any other damages whatsoever, such as: damages for delay, or for any consequential damages.

(B) BY OWNER. In the event of default by Owner which is not cured within the time specified, the Contractor, at Contractor's option, shall: (1) provide a notice of default, upon which contractor shall be entitled to all costs incurred by Contractor from the last draw payment to the date of notice of default, together with profits in the amount of fifteen (15%) percent thereof, and excluding any other damages whatsoever, such as: damages for delay, or for any consequential damage; or (2) may complete the construction and seek damages for breach of contract. The parties have agreed to this amount of profits due to the difficulties and uncertainties associated with the calculation of actual damages for lost profits which Contractor is likely to incur as the result of a default by Owner.

23. **ARBITRATION.** Except for claims by the Owner of defective construction, which are governed solely by the "right-to-cure" law disclosed in paragraph 20, the parties agree that any other action to enforce this Contract shall be exclusively by arbitration proceedings as described herein, to be held in the county in which the real property described herein is located, and both parties agree to be bound by the decision rendered in such proceedings. Within thirty (30) days of a written request for arbitration, each party shall select an arbitrator. If either party fails to select an arbitrator within this time frame, the first arbitrator selected may select the second arbitrator. Within ten (10) days thereafter the two arbitrators shall select a third arbitrator. All arbitrators shall be persons with experience in the construction industry. The arbitration shall be conducted in accordance with the Florida Arbitration Code (Chapter 682, Florida Statutes); provided, however, the final hearing shall be held not more than ninety (90) days after the receipt of the request for arbitration and the final decision shall be rendered not more than thirty (30) days after the conclusion of the final hearing.

{TL039401;1}

24. **ATTORNEY FEES.** In the event of any disputes arising out of or in connection with this contract, the prevailing party therein shall be entitled to recover reasonable attorney fees and costs, whether same were incurred prior to or during any judicial proceedings, including, but not limited to, any trial or appellate proceedings, as well as prior to or during any of the alternative dispute resolution mechanisms, whether described in paragraphs 20 and 23 or otherwise ordered by a court of competent jurisdiction.

25. **GOVERNING LAW, ASSIGNMENT AND RECORDING.** This Contract shall be construed and enforced in accordance with the laws of the State of Florida, and may not be assigned or recorded except with the prior approval of both parties, which approval may be withheld for any reason whatsoever.

26. **INTEGRATION CLAUSE.** This Contract and the additional contract documents attached hereto, as indicated in paragraph 28 hereof, constitutes the complete agreement between the parties and may not be modified except in writing signed by all parties hereto. ORAL REPRESENTATIONS BY EITHER PARTY ARE NOT BINDING AND SHOULD NOT BE RELIED UPON.

27. **CONSTRUCTION INDUSTRIES RECOVERY FUND.** PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRIES RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A STATE-LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS:

> Construction Industry Licensing Board
> 1940 N. Monroe Street
> Tallahassee, Florida, 32399-0784.
> Telephone: 850-487-2252

28. **ADDITIONAL CONTRACT DOCUMENTS.** If marked, the following additional documents are a part hereof and each party acknowledges receipt of a copy thereof:
_✓_ Exhibit "A" (Building Plans)   _✓_ Exhibit "A-1" (Draw Schedule)   _✓_ Exhibit "A-2" (Mold Disclosure)
_✓_ Exhibit "A-3" (Specifications)  _n/a_ Other Specifications    _n/a_ Other (_____)

29. **CONTROLLING PROVISIONS AND HEADINGS.** All handwritten or typewritten provisions herein shall control over any printed provisions in conflict therewith, unless otherwise provided. The headings on each paragraph are for the sole convenience of the parties and shall not be construed to be a part of this Contract

30. **INCREASES OR DECREASES IN MATERIALS COSTS.** In the event that, during construction of the improvement described herein, contractor's costs for materials used or to be used herein are increased or decreased by more than 10% over the contractor's costs for same at the time this agreement was signed, for any cause(s) beyond the control of contractor, then, and in such event(s), contractor shall have the right to pass the entire amount of materials costs increase(s) or decrease(s) along to owner by adding or subtracting the total amount(s) thereof to the Contract Price.

31. **INSULATION DISCLOSURE.** In accordance with 16 C.F.R., Chapter 1, Section 460.16, the following disclosure is made regarding the insulation, which has been or will be installed in the improvements described herein, as follows (if known):

| Location | Type | Thickness | Manufacturer's R-Value |
|---|---|---|---|
| Exterior Frame Walls | Batts | 3" | R= 19 |
| Exterior Block Walls | Al-Foil | na " | R= 5 |
| Attic | Blown-in | 6" | R= 30 |

Note: If any of the above information is incomplete, it is either because this information has already been included in the plans or specifications identified herein, or because this information is unknown at the time this agreement was entered into. However, if any of the above information is incomplete and has not been included in the plans or specifications identified herein, then it will be furnished to the Buyer when the information becomes available. Buyer hereby acknowledges that this R-value information is based solely upon information supplied by the manufacturer or installer and that Contractor does not represent or warrant the accuracy of this information. Buyer further acknowledges that the actual R-values may vary based upon normal construction variances in insulation thickness and openings in walls.

{TL039401;1}

**33. WAVIER OF STATUTORY RIGHT TO ESCROW.** PURSUANT TO SECTION 501.1375, FLORIDA STATUTES, IF CONTRACTOR BUILDS MORE THAN TEN (10) RESIDENTIAL UNITS PER YEAR, THE BUYER OF A ONE-FAMILY OR TWO-FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10 PERCENT OF THE PURCHASE PRICE) DEPOSITED IN AN ESCROW ACCOUNT. THE BUYER RIGHT MAY WAIVE THIS, IN WRITING. BY SIGNING THIS AGREEMENT, OWNER DOES HEREBY WAIVE THIS STATUTORY RIGHT.

**WITNESSES (as to Owner)**

1. _____

2. _____

**OWNER(S):**

_/s/ (signature)_

_/s/ Ann Henlon_

**WITNESSES (as to Contractor)**

1. _____

2. _____

Template A (revised 2-24-04) FHBA

**Vizcaya Custom Homes, Inc**

License # CRC042452

By: _/s/ Robert J. Abbano_
Print Name: Robert J. Abbano
Print Title: President

{TL039401;1}

Exhibit "A-1"
Two Story Block House Masonry Constriction Draw Schedule

| Draw amount $390,000.00 | % | Cum Total | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|---|
| #1 Masonry work 30% | | | | | | | | | | |
| Permits/Fees/Slab Poured | 15.0 | | | | | | | | | |
| Ext. walls in place, lintel poured | 10.0 | | | | | | | | | |
| 2nd floor sub floor in place | 5.0 | | | | | | | | | |
| | | | | | | | | | | |
| #2 Framing 20% | | | | | | | | | | |
| Interior partitions installed | 4.0 | | | | | | | | | |
| Roof dried in | 2.0 | | | | | | | | | |
| Rough-in wiring installed | 4.0 | | | | | | | | | |
| Rough-in plumbing installed | 4.0 | | | | | | | | | |
| Rough-in HVAC installed | 4.0 | | | | | | | | | |
| Windows installed | 2.0 | | | | | | | | | |
| | | | | | | | | | | |
| #3 Drywall 20% | | | | | | | | | | |
| Ext. siding or stucco installed | 4.0 | | | | | | | | | |
| Ext. paint complete | 3.0 | | | | | | | | | |
| Finished roofing installed | 5.0 | | | | | | | | | |
| Wall insulation installed | 2.0 | | | | | | | | | |
| Drywall hung & finished | 4.0 | | | | | | | | | |
| Soffits & fascia complete | 2.0 | | | | | | | | | |
| | | | | | | | | | | |
| #4 Trim out 20% | | | | | | | | | | |
| Bathroom tile complete | 2.0 | | | | | | | | | |
| Cabinets installed | 6.0 | | | | | | | | | |
| Plumbing trim-out | 2.0 | | | | | | | | | |
| Electrical trim-out | 2.0 | | | | | | | | | |
| HVAC trim-out | 1.0 | | | | | | | | | |
| Interior trim complete | 2.0 | | | | | | | | | |
| Interior doors installed | 1.0 | | | | | | | | | |
| Interior painting complete | 2.0 | | | | | | | | | |
| Floor coverings tile/wood | 2.0 | | | | | | | | | |
| | | | | | | | | | | |
| #5 Final 10% | | | | | | | | | | |
| Mirrors | 1.0 | | | | | | | | | |
| Site concrete | 3.0 | | | | | | | | | |
| Landscaping & irrigation | 2.0 | | | | | | | | | |
| Floor coverings Carpet | 3.0 | | | | | | | | | |
| Screens, final clean, misc. | 1.0 | | | | | | | | | |
| | | | | | | | | | | |
| Sub Total | | | | | | | | | | |
| Total This Inspection | | | | | | | | | | |
| Total to Date | | | | | | | | | | |

Page 1 of 2

| WITNESSES (as to Owner) | OWNER(S): |
|---|---|
| 1. _____ | _Patrick Hanlon_ (signature) |
| 2. _____ | _Ann Hanlon_ (signature) |

| WITNESSES (as to Contractor) | Vizcaya Custom Homes, Inc<br>License # CRC042452 |
|---|---|
| 1. _____ | By: _Robert J. Albano Pres_ (signature) |
| 2. _____ | Print Name: Robert Albano |
|  | Print Title: President |

Exhibit "A-2"
RIDER TO CONSTRUCTION CONTRACT
MOLD NOTICE, DISCLOSURE and DISCLAIMER

**What Homeowners Should Know about Mold**

**Mold**. Mold is a type of fungus. It occurs naturally in the environment, and it is necessary for the natural decomposition of plant and other organic material. It spreads by means of microscopic spores borne on the wind, and is found everywhere life can be supported. If the growing conditions are right, mold can grow in your home. Most homeowners are familiar with mold growth in some form or another. Examples of mold are bread mold, and mold that may grow on bathroom tile.

In order to grow, mold requires a food source. This may be supplied by items found in the home, such as fabric, carpet or even wallpaper, or by building materials, such as drywall, wood and insulation, to name a few. Mold also requires a temperate climate. The best growth has been determined to occur between 40 and 100 degrees F. Finally, mold growth requires moisture which is the only mold growth factor that can be controlled in a residential setting. A homeowner can minimize or reduce mold growth by minimizing moisture.

Common sources of home moisture include spills, leaks, overflows, condensation, and high humidity. As Florida is prone to extremely high humidity, good housekeeping and home maintenance practices are essential to prevent and eliminate mold growth. If moisture is allowed to remain, mold can develop within 24 to 48 hours.

**Consequences of mold**. Although not all mold is harmful, certain strains have been shown to have adverse health effects in susceptible persons. The most common effects are allergic reactions, including skin irritation, watery eyes, running nose, coughing, sneezing, congestion, sore throat and headache. Individuals with suppressed immune systems may risk infections. Some experts disagree about the level of mold exposure that may cause health problems, and about the exact nature and extent of the health problems that may be caused by mold. The Center for Disease Control states that a casual link between the presence of toxic mold and serious health conditions has not been proven.

**What Homeowners can do**. The homeowner can take positive steps to reduce or eliminate the occurrence of mold growth in the home, and thereby minimize any possible adverse effects that may be caused by mold. These steps include the following:

1. Before bringing items in to the home, check for signs of mold. Potted plants (roots and soil), furnishings or stored clothing and bedding material, as well as many other household goods, could already contain mold and growth.

2. Regular vacuuming and cleaning will help reduce mold levels. Mild bleach solutions and most tile cleaners are effective in eliminating or preventing mold growth.

3. Keep the humidity in the home low. Vent clothes dryers to the outdoors. Ventilate kitchen and bathrooms by opening the windows, by using exhaust fans, or by running the air conditioner to remove excess moisture in the air, and to facilitate evaporation of water from the wet surface.

4. Promptly clean up spills, condensation and other sources of moisture. Thoroughly dry any wet surfaces or material. Do not let water pool or stand in your home. Promptly replace any materials that cannot be thoroughly dried, such as drywall or insulation.

5. Inspect for leaks on a regular basis. Look for discoloration or wet spots. Repair any leaks promptly. Inspect condensation pans (refrigerators and air conditioners) for mold growth. Take notice of musty odors, and any visible signs of mold.

{TL089945;1}                Page 1 of 2

6. Should mold develop, thoroughly clean the affected area with a mild solution of bleach. First, test to see if the affected material or surface is color safe. Porous materials, such as fabric, upholstery or carpet should be discarded. Should the mold growth be severe, call on the services of a qualified professional cleaner.

7. Electronic air filters that may assist in effective air filtration and dehumidifiers to maintain humidity levels are available at additional cost from numerous vendors.

### Disclaimer and Waiver

Whether or not you as a homeowner experience mold growth depends largely on how you manage and maintain your home. Every home contains products, materials and industrial chemicals that are used in constructing the home which may cause allergic or other bodily reactions in some individuals. You should consult your physician to determine the chemicals that may adversely affect you or members of your family. Our responsibility as a Contractor must be limited to things that we can control. As explained in our written warranty, provided by this instrument, we will repair or replace defects in your construction (defects defined as a failure to comply with reasonable standards of residential construction) for a period of one (1) year. The Contractor will not be responsible for any damages caused by mold or by some other agent not associated with defects in our construction, to include, but not limited to, property damage, personal injury, loss of income, emotional distress, death, loss of use, loss of value, and adverse health effects, or any other effects. Any implied warranties, including an implied warranty of workmanlike construction, an implied warranty of habitability, or an implied warranty of fitness for a particular use, are hereby waived and disclaimed. THE OWNER UNDERSTANDS AND AGREES THAT THE CONTRACTOR IS NOT RESPONSIBLE, AND HEREBY DISCLAIMS ANY LIABILITY FOR, ANY DAMAGES, ILLNESS OR ALLERGIC REACTIONS WHICH THE OWNER, OR THE OWNER'S FAMILY MEMBERS MAY EXPERIENCE AS A RESULT OF MOLD, MILDEW, FUNGUS, SPORES OR CHEMICALS, TO INCLUDE, EMOTIONAL DISTRESS, DEATH, LOSS OF USE, LOSS OF VALUE, AND ADVERSE HEALTH EFFECTS, OR ANY OTHER EFFECTS.

There are no warranties which extend beyond the description on the face hereof.

This Notice, Disclaimer and Waiver Agreement is hereby made a part of the Purchase Agreement between Owner and the Contractor. The consideration for this agreement shall be the same consideration as stated in the Contraction Agreement. Should any term or provision of this agreement be ruled invalid or unenforceable by a court of competent jurisdiction, the remainder of this agreement shall nonetheless stand in full force and effect.

I (we) acknowledge receipt of this Notice, Disclaimer and Waiver agreement. I (we) have carefully read and reviewed its terms, understand same and agree to its provisions.

Dated: 10/1/06

Witnesses:

1. _____
Print Name

2. _____
Print Name: _____
(As to Owners)

Owner: *[signature: Pat Hanlon]*
Owner: *[signature: Ann Hanlon]*

1. _____
Print Name: _____

2. _____
Print Name: _____

*[signature]*
Vizcaya Custom Homes
By: *[signature]*
Print Name: Robert J. Albano
Title: President

Exhibit "A-3"
SPECIFICATIONS
3407 Oakellar Street

Specifications are based on a drawing provided by Stacy Davis dated 07/15/06. Items to be noted are as follows:

1. Residence to have 3,176 sq. ft. of living area. Garage will have 480 sq. ft. The lanai and entry will have 254 sq. ft.
2. Building to be two-story masonry block construction with stucco exterior.
3. Roofing to be clay barrel tile.
4. The slab to be 3,000 psi concrete with fiber mesh and steel reinforcing on compacted fill. Fill to be treated for termites.
5. Insulation to be R-4.3 Alfoil on all block walls. Ceilings to be R-30 and exterior frame walls (if any) to be R-11.
6. HVAC system to be a split system York 6 tons SEER 13.00.
7. Electrical service will be 200 amps single phase, no split service. Power to come to the house underground. Smoke detectors will be installed per code. Phone, cable & security wiring is included. Prewiring for surround sound and patio speakers is included. The following fixture schedule is included:

    a. Kitchen — 8 can lights and 1 fixture over island
    b. Breakfast — 1 fixture
    c. ½ bath — 1 fixture
    d. Dining room — 1 fixture
    e. Foyer — 3 fixtures
    f. Family room — 1 fixture and 4 can lights
    g. Lanai — 1 fixture and 2 can lights
    h. Garage — 2 fluorescents and 3 exterior fixtures
    i. Entry — 1 fixture
    j. Master bedroom — 1 fixture
    k. Master closet — 2 fixtures
    l. Master bath — 2 fixtures and 2 can lights
    m. Water closet — 1 fixture
    n. Upstairs hall — 4 can lights
    o. Laundry — 1 fixture
    p. Bedrooms 2, 3 & 4 — 1 fixture each
    q. Bedroom 4 closet — 1 fixture
    r. Shared bath — 3 fixtures and 1 can light
    s. Shared bath water closet — 1 fixture

8. One 50 gallon electric water heater is included. Plumbing fixtures will include the following:
   a. All lavatories will be 17" oval, Briggs.
   b. All water closets Briggs 1.6 gallon white or bone elongated with seat.
   c. All bath water faucets to be nickel Delta 6"spread.
   d. Garden tub to be non-jetted, acrylic with a Delta nickel Roman faucet set.
   e. All tubs to be white American Standard cast iron.
   f. Shower and tub faucet will be nickel, Delta.
   g. Kitchen sink to be a double stainless steel under mount with Delta 470 SS faucet.
   h. A 3/4 hp disposal is included.
   i. One pedestal sink is included in the ½ bath.
   j. Laundry sink to be plastic drop-in with faucet.
9. Tile flooring to be installed in the entire downstairs, entry, lanai, laundry room and on all bath floors, tub and shower walls.
10. Carpet will be installed in all bedrooms, stairwell, upstairs hall and adjoining closets.
11. Drywall to be 1/2" and will have a light orange peel finish on all walls. Ceilings to have a knock down texture. Round corner-bead will be used on all windows.
12. Decorative columns will be installed on the front elevation as shown on the drawings. Decorative brackets will be installed on the front elevation only. Exterior window sills will be manufactured and installed by Styroforms. The interior columns in the foyer will be precast columns.
13. Windows to be white aluminum single hung colonial tinted. Interior sills to be wood.
14. Interior casing will be Howe, paint grade. Base to be 5 1/4" paint grade.
15. Interior doors to be 8' hollow core Masonite colonist paint grade.
16. Vinyl bead board style soffits and aluminum gutters will be installed.
17. A tempered glass shower enclosure will be installed in the master bath. Mirrors will be installed in the upstairs bathrooms only.
18. All shelving will be ventilated wire.
19. Initial soil tests are not included.
20. Landscaping and irrigation is included.
21. Site clearing and final grade is included.
22. Site concrete will include a 5' concrete walk at the property line, a 16' wide concrete driveway and 20' of a four foot walk from the driveway to the entry.
23. All temporary utilities are included.
24. General and final cleanup is included.
25. All survey work is included.
26. Water treatment and septic is not included.

27. The interior stairs will have oak treads and painted risers, end caps only. Carpet will be installed in the center. The handrail will be oak with wrought iron balusters.
28. All cabinets and vanities will be custom wood. Counter tops will be granite, marble or Corrian. The laundry room will be Formica.
29. Full appliance package is included.
30. Wood fencing and tree work is not included.
31. Min. two coats elastomeric Sherwin Williams (or equal) paint exterior. Interior paint to have 5 colors max.
32. The garage doors will have two automatic garage door openers.
33. The ½ bath will have a barrel ceiling.
34. The hall from the foyer to the garage will have a barrel ceiling.
35. A door will be installed under the stairs to create some storage under the stairs.
36. The exterior door located at the breakfast area will be eliminated *and one window will be installed.*
37. The fireplace will be eliminated.

*PH AH AH*

**WITNESSES (as to Owner)**

1. _____

2. _____

**OWNER(S):**

_[signature]_

_[signature]_

**WITNESSES (as to Contractor)**

1. _____

2. _____

Vizcaya Custom Homes, Inc
License # CRC042452

By: _[signature]_

Print Name: Robert J Albano

Print Title: President

Page 3 of 3

*PH AH AH*