# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** **SECTION: L** **JUDGE FALLON** **MAG. JUDGE WILKINSON** |

**THIS DOCUMENT RELATES TO:**
**ALL CASES AND**

*Silva, et al. v. Interior Exterior Building*
*Supply, LP, et al.*
*Case No. 09-08030 (E.D. La.)*

*Silva, et al. v. Arch Insurance Company, et al.*
*Case No. 09-08034 (E.D. La.)*

*Payton, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-07628 (E.D. La.)**

*Wiltz, et al. v. Beijing New Building Materials*
*Public Limited Co., et al.*
**Case No. 2:10-cv-00361 (E.D. La.)**

*Gross, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-06690 (E.D. La.)**

*Rogers, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:10-cv-00362 (E.D. La.)**

*Amato, et al. v. Liberty Mutual Ins. Co., et al.*
**Case No. 2:10-cv-00932 (E.D. La.)**

*Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a*
*Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-cv-00080 (E.D. La.)**

*Abreu, et al. v. Gebrueder Knauf*
*Verwaltungsgesellschaft, KG, et al.*
**Case No. 2:11-cv-00252 (E.D. La.)**

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY AND FINAL APPROVAL OF THE SECOND AMENDMENT TO THE
AMENDED INEX AND KNAUF CLASS SETTLEMENTS AND FOR JUDICIAL
RECOGNITION OF EXHAUSTION**

**MAY IT PLEASE THE COURT:**

## I.     INTRODUCTION

This brief[1] is submitted on behalf of InEx, the PSC, and the Knauf Defendants[2] in support of

their joint motion to preliminarily approve the Second Amendment to the InEx and Knauf Class

Settlements so that the final approval may be determined at the November 13-14 Joint Fairness

Hearing.  This brief also is submitted in support of (1) the motion for final approval; (2) for judicial

recognition that the Arch and Liberty policies have been exhausted; and (3) for a ruling that the

Second Amendment constitutes a reasonable settlement of a disputed claim for insurance coverage

purposes because time is of the essence and there is no justifiable basis for delay in executing the

Settlement.

The Second Amendment is necessary to preserve both the Knauf and InEx Settlements – both

of which are threatened by the failure of InEx's excess carrier, North River, to reasonably settle this

matter within policy limits.  As the Court knows, the Knauf Defendants have the right to terminate

their settlement if "the Knauf Defendants fail to agree with … InEx on a solution acceptable to the

Knauf Defendants that extinguishes any potential claims of … InEx or their insurers against the

Knauf Defendants."  Knauf Settlement § 4.8.6.  The Knauf Defendants have stated that they would

---

[1]       Capitalized terms not otherwise defined herein have the same meaning given to them in the InEx Class
Settlement (Rec. Doc. No. 12258-3).

[2]       In this brief, (1) InEx refers to Interior/Exterior Building Supply, L.P.; (2) Arch refers to Arch Insurance
Company; (3) Liberty refers to Liberty Mutual Fire Insurance Company; (4) North River refers to The
North River Insurance Company; (5) the PSC refers to the Plaintiffs' Steering Committee; and (6) the
Knauf Defendants refer to Knauf Plasterboard (Tianjin) Co, Ltd., Knauf Plasterboard (Wuhu) Co., Ltd.,
Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebrueder Knauf
Verwaltungsgesellschaft KG; Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH,
Knauf AMF GmbH & Co., Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

exercise this termination right with respect to InEx-supplied homes by the November 6, 2012 deadline for termination if no satisfactory resolution was reached with InEx and its insurers, including North River.  The Knauf Defendants ceased enrolling homes in the Pilot Program for InEx-supplied homes until and unless a satisfactory resolution was reached with InEx and its insurers, including North River.

The Second Amendment protects both InEx Class Members and InEx from the immediate and substantial harm that would result if the Knauf Defendants were to terminate their settlement. InEx Class Members would be harmed because the InEx Settlement alone does not provide sufficient funds to enable InEx Class Members to remediate their homes with KPT drywall; the Knauf Settlement is necessary to provide that relief.  InEx would be harmed because the Court's June 4, 2012 Order (Rec. Doc. No. 14566) advised Class Members that they should exercise their opt out rights by considering the "inter-related" Knauf and InEx Settlements together, and that the Court would consider the fairness of the two Settlements together.  If the Knauf Defendants withdrew from their Settlement with respect to InEx-supplied homes, notice of that termination would have to be given to InEx Class Members and a new opportunity to opt out would have to be provided.  Without the backstop of the Knauf Settlement there likely would be a huge number of opt outs from the InEx Settlement, threatening InEx with potentially ruinous liability that North River has not agreed to insure and would in any event exceed coverage limits.

To prevent this grave harm – and given North River's repeated refusals to enter into a reasonable settlement – the PSC, InEx, Arch and Liberty engaged the Knauf Defendants to find a solution that would protect both InEx Class Members and InEx.  The result was a settlement amendment that, in return for the Knauf Defendants' agreement not to exercise their termination rights, would liquidate the liability of InEx and its carriers to Knauf Class Members at various

amounts depending on the outcome of the bellwether trial now set for November 26, 2012, as well as on the Court's legal ruling on whether InEx has solidary liability or only several liability to InEx Class Members if InEx is found liable in the bellwether trial.  The details of the Second Amendment are described at pages 5-8 below.

Under Louisiana law, the Second Amendment, if approved by the Court is binding on North River.  In particular, the Louisiana Supreme Court and other courts in Louisiana have held that when time is of the essence because an insured is threatened with harm by an insurers' unjustifiable delay in settling a matter, the insured may settle the claim without the insurer's consent and nevertheless bind the insurer.  *See*, *e.g.*, *Thomas W. Hooley & Sons v. Zurich Gen. Acc. & Liability Ins. Co.*, 235 La. 289, 103 So.2d 449, 453 (1958) ("when as here liability to the third person is unquestioned, and after a denial of coverage by the insurer the policyholder minimizes the loss and avoids the expenses of litigation by a reasonable compromise, the insurer should be unable to claim that reimbursement of damages clearly covered by the insurance contract is barred by such compromise which was to the ultimate benefit of the insurer"); *Emile M. Babst Co. v. Nichols Constr. Corp.*, 488 So.2d 699, 703 (La.App. 1 Cir. 1986) ("the no action clause has been held to be of no effect when an insurer denies coverage where there is coverage, or unjustifiably delays settlement, forcing the insured to settle separately"); *Federal Ins. Co. v. New Hampshire Ins. Co.*, 2010 WL 28568, at *5 (M.D. La. Jan. 4, 2010) (same); *see* pages 11-13 below.

The Second Amendment would alleviate the need for subsequent trials beyond the bellwether trial and the Court's legal rulings by liquidating InEx's (and therefore North River's) liability in the event InEx does not prevail at that trial.  The Second Amendment also irrevocably commits Arch and Liberty to tendering their insurance limits, and therefore exhausts their policies.  *See* pages 16-18 below.

3

## II.   **BACKGROUND**

In April 2011, InEx and its primary insurers, Arch and Liberty, became the first defendants in this MDL to enter into a settlement of their potential Chinese Drywall liability with the PSC.  The InEx Class Settlement contemplates the payment of the aggregate limits of liability of the Arch and Liberty policies ($8 million over four policy years) into an Escrow Fund which will be used to compensate only those Participating Class Members who received Chinese Drywall distributed by InEx.  Because of the uncertainty of InEx's total liability, InEx also assigned to the PSC all of its post-loss rights up to $72 million of policy limits from four consecutive InEx excess policies underwritten by North River.

In December 2011, the PSC and the Knauf Defendants entered into a separate settlement agreement relative to the claims against the Knauf Defendants in the Litigation.  The Knauf Class Settlement provided InEx Class Members with KPT Drywall with a far greater recovery than InEx and its insurers could provide, including full remediation of their homes and the right to pursue economic loss and bodily injury claims.  The Knauf Class Settlement also provided that the Knauf Defendants could terminate the Knauf Class Settlement – either in its entirety or as to Participating Class Members of the InEx Class only –  in the event that the "Knauf Defendants fail to agree with … InEx on a solution acceptable to the Knauf Defendants that extinguishes any potential claims of … InEx and their insurers against the Knauf Defendants."  Knauf Settlement § 4.8.6.The deadline for exercising this termination right is seven days prior to the Fairness Hearing, which means that Knauf could terminate on or before November 6, 2012.[3]

As the Court is aware, North River has not agreed to settle its potential liability under the InEx Class Settlement with either the PSC, InEx, or the Knauf Defendants.  After the parties proved

---

[3]   The parties have recently requested an extension of this date to November 9, 2012 to permit time for opt outs to reconsider their decisions.

unable to resolve the question of North River's potential liability for claims against InEx, the Court ordered a mediation, which occurred at the courthouse on May 31, 2012. When that mediation failed, the Court scheduled the InEx Bellwether Trial to adjudicate InEx's liability, if any, to the InEx Class under Louisiana's redhibition law and thus give guidance to the parties regarding North River's potential exposure.

The InEx Bellwether Trial is scheduled to commence on November 26, 2012; however, because InEx and the PSC have failed to reach an acceptable resolution of the InEx Class' claims to the Available Policy Limits, the Knauf Defendants have –both privately and in open Court – indicated their intention to exercise their termination rights under the Knauf Class Settlement with respect to Participating InEx Class Members because without a satisfactory North River contribution, the required resolution between InEx and its insurers was impossible. Furthermore, in September, the Knauf Defendants notified InEx and the Court that they would no longer issue work authorizations for the remediation of InEx homes under the Knauf Pilot Program because of North River's failure to reach a reasonable resolution. Accordingly, North River's failure to resolve its potential liability now threatens the viability of both the InEx Class Settlement, and of the Knauf Class Settlement with respect to InEx-supplied homes.

In order to prevent this harm to both InEx Class Members and InEx – and because time was of the essence given the November 6, 2012 termination deadline – the undersigned parties negotiated the Second Amendment (attached as Exhibit A). The Parties submit that the Second Amendment:

1.     Resolves all claims of the InEx Class Members who are also Knauf Class Members to the Available Policy Limits under the Excess Policies issued by North River, while preserving InEx's and North River's defenses to liability;

2.     Eliminates entirely the otherwise imminent termination of the InEx Class Settlement, and potentially that of the Knauf Class Settlement, as evidenced by the Knauf Defendant's refusal to issue work authorizations for the remediation of InEx homes under the Pilot Program and other remediation protocols; and

3.     Completely exhausts the limits of liability of the Arch and Liberty Policies.

4.     Is binding on North River under Louisiana case law permitting an insured to settle without the consent of its insurer when time is of the essence and the insurer unreasonably has declined to consent.

Accordingly, as time is of the essence and there is no justifiable basis for the delay in executing the settlement, the Parties request that the Court enter an Order preliminarily (and after the fairness hearing finally) approving the Second Amendment as a reasonable settlement for insurance coverage purposes. The Parties also ask the Court to recognize the exhaustion of the limits of the Arch Policies and Liberty Policies upon payment of the Insurance Proceeds as provided in the Amended InEx Settlement, and to rule that under Louisiana case law the Second Amendment is binding on North River.

### III.     LAW AND ARGUMENT

### 1.    The Proposed Amendment Warrants Approval as a Reasonable Settlement of a Disputed Claim

The Second Amendment, through the use of a "high/low" mechanism, achieves a reasonable resolution of the claims of the InEx Class to the Available Policy Limits – dependent on the outcome of the November 2012 InEx Bellwether Trial and the Court's legal ruling on solidary liability. It does this by:

1.    Obligating InEx's primary carriers, Arch and Liberty, to deposit the available Insurance Proceeds ($8 million) into an Escrow Account (described in Section 12 of the InEx Class

Settlement), which funds will be used to compensate only those Participating Class Members who received Chinese Drywall distributed by InEx. This payment shall be made regardless of the outcome of the InEx Bellwether Trial and, therefore, will exhaust the Arch and Liberty policy limits and make ripe the PSC's claims to the Available Policy Limits of the Excess Policies.

2.  Contingent upon the outcome of the Bellwether Trial:

    a.  If the Bellwether Trial results in a final judgment in favor of InEx, the InEx Class will release and dismiss the claims of Participating Knauf Class Members against the Available Policy Limits, with prejudice. Thus, if InEx wins the Bellwether Trial, North River would not have to pay anything for the claims of Participating Knauf Class Members; InEx's liability to those Class Members would be limited to the $8 million contributed by Arch and Liberty.

    b.  If the Bellwether Trial results in a final judgment against InEx finding both that InEx is a "bad faith seller" under La. Civ. Code Art. 2545 with respect to all bellwether plaintiffs and that InEx is solidarily liable for the judgment against it, InEx will make a Supplemental Contribution to the InEx Class Settlement for the benefit if InEx Class Members in the amount of the Available Policy Limits ($72 million).

    c.  If the Bellwether Trial results in a final judgment against InEx, but (b) does not apply (for example, if InEx is not found to be a "bad faith" seller with respect to all Bellweather plaintiffs, or if InEx is found severally, rather than solidarily liable), InEx will make a Supplemental Contribution to the InEx Class Settlement

for the benefit of InEx Class Members in the amount of 50% of the Available

Policy Limits ($36 million).

In addition, the Second Amendment would result in a further benefit to the InEx Class Members because some portion of the Supplemental Contribution attributable to Participating Knauf Class Members would be deposited into the Other Loss Fund, rather than the Remediation Fund as currently provided in the Knauf Class Settlement. That would increase the amount available to provide Other Loss Fund benefits to Class Members without affecting their ability to obtain Remediation benefits from the Remediation Fund, which is uncapped and funded by the Knauf Defendants.

The Second Amendment further resolves the **otherwise imminent** termination by the Knauf Defendants because, in exchange for this potential "high/low" Supplemental Contribution to be funded by North River, the Knauf Defendants have agreed that they will not terminate the Knauf Class Settlement with respect to Participating InEx Class Members based on the Knauf Defendants' inability to reach an agreement with North River. Thus, the Second Amendment achieves the critically necessary, and guaranteed, participation of the Knauf Defendants in the InEx Class Settlement process, while preserving all of the claims asserted by InEx and North River against the Knauf Defendants, as well as North River's ability to challenge collectability of the Supplemental Contribution, and assert any coverage defenses it may have as to its obligations to defend and indemnify InEx, or its post-loss assignees, under the Excess Policies.

The amounts of the proposed Supplemental Contribution contemplated by the Second Amendment are reasonable. If InEx is not liable, then North River will pay nothing. If InEx is liable as a bad faith seller as to all Bellwether plaintiffs and also solidarily liable the Supplemental Contribution will be $72 million. In that event, InEx would be liable to pay for remediation of over

1,000 InEx-supplied properties.  The cost of judgments requiring InEx to do so would far exceed $80 million ($8 million from Arch and Liberty and $72 million from North River) whether that cost is based on estimates from the bellwether trials that this Court has conducted in *Hernandez* and *Germano* or the lower costs associated with the Pilot Program.[4]  If InEx is liable but not found to be a bad faith seller as to all Bellweather plaintiffs or not found to be solidarily liable, then the Supplemental Contribution will be $36 million, which represents a fair compromise of InEx's potential liability to over 1,000 plaintiffs in that event.

Although InEx might assert claims against the Knauf Defendants for indemnity, its legal right to indemnity (and if so, whether any indemnity is proportional or pro rata) is hotly disputed. *See* La. Civ. Code art. 2531 (2012), Acts 1993, No. 841, § 1, eff. Jan. 1, 1995; *Revelle Shipping Agency, Inc. v. Bent's Marine, Inc.*, 945 So.2d 95 (La. App. 5 Cir. 2006) (seller entitled to indemnity only for defects for which it was a good faith seller; indemnity apportioned between manufacturers).  *Compare*, *Peterson v. Coleman Oldsmobile, Inc.*, 393 So.2d 372, 377 (La. App. 1 Cir. 1980) (bad faith seller entitled to indemnity from manufacturer); *Willis v. Royal Imports, Inc.*, 807 So.2d 953, 954 (La. App. 5 Cir. 2002) ("a bad faith seller, a seller who knowingly passes on a

---

[4] In *Hernandez*, this Court found that the cost of repairing a 1,688 square foot home located in Louisiana would be $136,940.46 or approximately $83 per square foot.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2010 WL 171043, at *3, *20 (E.D. La. Apr. 27, 2010).  In *Germano*, this Court found that the average cost to repair homes located in Virginia was $86.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 706 F. Supp. 2d 655, 687 (E.D. La. 2010).  Assuming conservatively that there are 1,000 InEx-supplied homes averaging 2,000 square feet, applying the Court's findings, an estimate of the cost to remediate those homes would run between $166 and $172 million.  Assuming alternatively an average cost per square foot of $60.00  (including soft costs),  an estimate of the cost to remediate those homes would exceed $ 120 million.  Both of these estimates are very conservative because (1) the actual number of InEx supplied homes exceeds 1,000, (2) the average square footage per home exceeds 2,000,  (3) the average Pilot Program remediation exceeds the $60 per square foot price and, (4) the computation does not include economic loss.  There is no way that InEx's exposure, if solidarily liable, can be less than the $80 million in available insurance ($8 million from Arch and Liberty and $72 million from North River).

defective product, may not recover against sellers backwards in the chain of commerce"); *McGough v. Oakwood Mobile Homes*, 779 So.2d 793, 805 (La. App. 2 Cir. 2000) (bad faith seller not entitled to indemnity from manufacturer); *see also Evangeline Medical & X-Ray Distributors Corp. v. Coleman Oldsmobile, Inc.*, 402 So.2d 208, 212 (La. App. 1 Cir. 1981) ("where the seller is not at fault in creating the defects, he is entitled to indemnity").

Moreover, InEx would have difficulty enforcing any judgment against the Knauf Defendants even if they could obtain one. *See* Knauf Defendants' memorandum in support of final approval of the Knauf Class Settlement (Rec. Doc. No. 15751-2). In any event, North River's subrogation and indemnity rights are explicitly preserved in the Second Amendment, and so there is no basis for North River to object to the settlement on the ground that it may have an indemnification right against the Knauf Defendants. In the meantime, InEx would have to bond or pay a ruinous judgment, which North River has not agreed to cover, while expending huge resources litigating an indemnity claim whose costs would not be paid for by insurance and whose outcome is uncertain. Accordingly, the size of the Supplemental Contribution in all scenarios reflects a reasonable compromise of InEx's potential exposure in light of the litigation risks – especially when any liability verdict is likely to bankrupt InEx.

Moreover, none of the revisions in the Second Amendment adversely impact InEx Class Members, or the defenses to liability asserted by InEx and the Excess Carrier. To the contrary, the contemplated revisions craft a previously unavailable vehicle for InEx Class Members to recover the Available Policy Limits while simultaneously protecting InEx's and the North River's defenses to liability and coverage. Thus, as detailed herein, the scope and purpose of the Second Amendment contemplate a reasoned resolution to the underlying claims of the InEx Class up to the Available

Limits of the Excess Policies issued by North River, and the Parties hereto respectfully request entry of an Order to that effect.

### 2.   The November 6, 2012 Termination Deadline Dictates that "Time is of The Essence" For Executing the Second Amendment

InEx contests its liability for the underlying claims of the InEx Class.  Indeed, InEx's potential liability under Louisiana's redhibition law, if any, is the subject of the scheduled November 2012 Bellwether Trial.  None of the revisions in the Second Amendment foreclose InEx's, or North River's, ability to stand on, or seek enforcement of, those defenses at trial.  To be sure, the Second Amendment is **inextricably linked** to the outcome of that trial and InEx's and North River's ability to stand on their defenses.  InEx has communicated this fact as well as the overarching nature and purpose of the Second Amendment to North River. InEx has also communicated to North River the potential prejudices to InEx and to the InEx Class Members that may result from the Parties' indefinite delay of settlement and, on this basis, has requested North River's consent to both the Second Amendment and the InEx Class Settlement.  North River refuses to grant its consent to either the Second Amendment or the InEx Class Settlement.  Moreover, North River has advised InEx of its belief that InEx's participation in the Second Amendment and the InEx Class Settlement constitute violations of the "consent-to-settle" and "no action" clauses of the North River excess policies.  North River is mistaken.

Louisiana law clearly recognizes the ability of an alleged tortfeasor, a plaintiff and a tortfeasor's primary insurance carrier to settle a claim, reserving the plaintiff's rights to also seek additional recovery from the tortfeasor's excess insurance carrier.[5]  Moreover, both Louisiana state and federal courts have generally refused to enforce "consent-to-settle" or "no action" clauses where

---

[5]   *See CHR Energy Corp. v. Carboine Co., 744 F.Supp. 1408, 1411 (E.D. La. 1990); Futch v. Fidelity & Casualty Co. 246 La. 688, 697 (La. 1964);* Thompson v. Shay, 2001-0974 (La. App. 1 Cir. 5/10/02), 817 So.2d 1230, 1231.

an insurer wrongfully denies coverage **or unjustifiably delays settlement,** forcing the insured to settle on its own.[6]

In *Hooley*, the Louisiana Supreme Court held that an insurance company cannot escape its obligation under the policy when "liability to the third person is unquestioned" **and** the insured's settlement "reduce[s] the amount for which the insurer is ultimately liable."[7]   The *Hooley* insured submitted a claim for damages under its liability policy and its carrier denied coverage based on the policy's "care, custody and control" exclusion.[8]   Based on this denial, the insured agreed to compromise the underlying claims while simultaneously asserting defenses to legal liability.[9]   On appeal of a judgment in favor of the carrier, the Louisiana Supreme Court – interpreting policy language virtually identical to the provisions cited by North River – refused to uphold the carrier's defense on the following basis:

> [W]hen as here liability to the third person is unquestioned, and after a denial of coverage by the insurer **the policyholder minimizes the loss and avoids the expenses of litigation by a reasonable compromise**, the insurer should be unable to claim that reimbursement of damages clearly covered by the insurance contract is barred by such compromise which was to the ultimate benefit of the insurer.[10]

Citing numerous cases from surrounding jurisdictions, the Louisiana Supreme Court further indicated that its reasoning could **equally extend to situations** in which an **insured compromises** a

---

[6]   *See Thomas W. Hooley & Sons v. Zurich Gen. Acc. & Liability Ins. Co.,* 235 La. 289, 103 So.2d 449 (1958); *see also Emile M. Babst Co. v. Nichols Constr. Corp.,* 488 So. 2d 699, 703 (La.App. 1 Cir. 1986); *see also Fed. Ins. Co. v. New Hampshire Ins. Co.,* 2010 U.S. Dist. LEXIS 393, 2010 WL 28568, at *5 (M.D.La. 2010); *cf. Danrik Constr. Inc. v. Am. Cas. Co.,* 314 Fed.Appx. 720, 723 (5th Cir. 2009).

[7]   *Hooley,* 103 So.2d at 453.

[8]   *Id.* at 450-451.

[9]   *Id.* at 452.

[10]   *Id.* at 453.

claim following its insurer's "denial of liability" **either** outright, **_or by "inaction_."**[11]   North River's continued inability, or unwillingness, to reach a reasonable resolution of its potential liability not only threatens the resolution of the claims of the InEx Class, but the viability of the Knauf and InEx Class Settlement as a whole and thereby threatens to expose InEx to potentially crippling liability that North River has not agreed to insure and that likely would exceed policy limits. Additionally, and in light of the mechanisms proposed in the Second Amendment, North River's indefinite delay can no longer be characterized as justified and is, therefore, tantamount to a denial of liability by "inaction" as outlined by the Louisiana Supreme Court in *Hooley*.

Such denial by "inaction" is precisely the subject of the Louisiana First Circuit Court's decision in *Babst*.[12]   There, the court refused to allow an insurer to benefit from its own delay by enforcing a "no action" clause against an insured who unilaterally settled the claims of the underlying plaintiff where such claims were "clearly covered" under the terms of the policy and "time was of the essence" in the insured's pursuit of settlement.[13]   In particular, the *Babst* court concluded that the conduct of the insurer of "indefinitely delaying settlement," was a breach of the insurer's duty to its insured, and rejected its defenses where the claims at issue were clearly covered.[14]   The *Hooley* and *Babst* decisions are directly on point in this case.

After over three years of litigation, North River has failed to develop any evidence to suggest that any exclusions to coverage under the Excess Policies apply to the underlying claims at issue –

---

[11]   *See specifically Hooley*, 103 So. 2d at 453 *citing Interstate Cas. Co. v. Wallins Creek Coal Co.,* 164 Ky. 778 (Ky. 1915)(Where the insurer "made up its own mind that it was not liable" and by inaction over several months "in effect denied its liability," "the insured had the right to treat this inaction of the insurance company as a denial of liability on its part, and to act on the assumption that it would further refuse to recognize its liability by failing to undertake to defend any suit that the injured party might bring if living, and to make the best settlement it could.").

[12]   *See Babst*, 488 So.2d at 703.

[13]   *Id.*

[14]   *See Babst*, 488 So.2d at 703.

outside of a generic reservation of rights.  Indeed, it is reasonable that even if there were non-covered damages at issue, which is denied, the associated value of these damages is so *de minimus* that the potential liability for covered damages alone exceeds the Insurance Proceeds available under the Arch Policies and Liberty Policies.[15]  It is, therefore, reasonably certain that there is coverage for the claims of the InEx Class under the Excess Policies and that InEx's potential liability exceeds the Available Policy Proceeds.

More importantly, the imminent termination of the Knauf Settlement Agreement, as evidenced by the September 2012 unilateral withdrawal by Knauf of InEx homes from remediation under the Pilot Program, will become a reality if the Parties are unable to reach a resolution of the InEx Class Members' rights to the Available Policy Proceeds before the Knauf Defendants' November 6, 2012 deadline to withdraw.  The termination of Knauf participation in the InEx Class Settlement would have serious implications for both InEx and its Participating Class Members including, but not limited to, the possibility of millions of dollars' worth of potentially uninsured InEx liability over and above the policy limits of the Excess Policies.  Additionally, as the opt out date for the InEx Class Settlement has passed, Participating Class Members who may have otherwise opted out of the class without the Knauf Defendants' contribution are now precluded from doing so.

In light of the cited jurisprudence, and the outlined circumstances, North River's refusal to consent to the Second Amendment and the InEx Class Settlement, is no longer justified.  The irrationality of North River's refusal to consent and its continued delay of settlement is self-evident by the fact that the Second Amendment preserves all asserted defenses by InEx and North River while eliminating **in its entirety** the **otherwise certain** termination of the settlement agreement by

---

[15]     *See e.g., Holtzclaw v. Falco,* 355 So.2d  1279(La. 1977) ("When multiple claims are filed against the insured that have the potential for exceeding the insurer's policy limits, the insurer must act in good faith and with due regard for the insured's best interest in considering whether to settle one or more of the claims.")

Knauf  by the November 6, 2012 deadline (which is proposed to be extended to November 9, 2012).

Time is, therefore, unmistakably of the essence, and on this basis, the Parties request entry of an

Order approving and attaching the Second Amendment, Exhibit A hereto, to the InEx Class

Settlement (Rec. Doc. No. 12258-3) notwithstanding North River's refusal of consent.

### 3.   North River Has Unreasonably Delayed Resolving This Matter

Since the inception of this matter, InEx has reminded North River of its obligation under

Louisiana law to take into account not only North River's interest when considering settlement on

behalf of InEx, but InEx's interests, which should be paramount. *See, e.g. Domangue v. Henry*, 394

So.2d 638 (1st Cir. 1981); *Moskaur v. Insurance Company of North America*, 366 So.2d 1004 (La.

App. 1st Cir. 1978).  In order to provide North River with all the information needed to reach a

timely decision regarding reasonable resolution of this matter through settlement, InEx has fully

involved North River in its defense, which has been provided by InEx's primary insurers Arch and

Liberty.  As a full participant in InEx's defense, North River has received and had an opportunity to

review all of the pleadings and discovery in the case pertinent to InEx's potential liability, and the

damages that could result therefrom.  Like the other defendants in the case, North River's

representatives have received all pleadings, plaintiff data forms, written discovery, and attended fact

and expert depositions.  InEx has routinely provided North River with a detailed census of claims of

homeowners with CDW distributed by InEx, as well as information with which to accurately

determine the costs of remediation of those homes.  Although North River has refused to assist InEx

in its participation in the remediation of homes in the Knauf Pilot Program, InEx has also provided

North River with detailed information regarding the costs of the remediation of those homes.  In

short, North River has fully participated in all aspects of the MDL and has available to it all

information regarding InEx's potential liability and damages also available to InEx, Arch, Liberty,

Knauf and the PSC.  InEx and its primary insurers entered into the InEx Class Settlement and committed InEx and its primary insurers to participate in the Knauf Pilot Remediation Program based upon the same data and information provided to North River. In short, InEx and its primary insurers have reasonably, and timely, endeavored to resolve InEx's potential liability in this matter through settlement.

By contrast, North River has refused to participate in any meaningful way in assisting InEx in its efforts to resolve its potential liability.  Prior to InEx executing the InEx Class Settlement, InEx proposed various means by which North River could participate in that settlement.  North River rebuffed all of InEx's overtures in that regard.  InEx has requested (and the Court has ordered) North River's involvement in 3 separate mediations over the past 2 years.  Prior to entering into the Class Settlement, and prior to all 3 mediations, InEx provided North River with detailed information regarding InEx's potential liability and the damages resulting therefrom, and requested that North River participate in good faith settlement talks.   North River representatives attended all 3 mediations, but have not resolved this matter for the benefit of their policy holder.  In fact, all attempts by InEx to engage North River in reasonable settlement talks have been rejected, and met with North River asserting additional coverage defenses.

Similarly, with  regard to the Second Amendment at issue here, North River's response to InEx's request that North River consent to the settlement has not only been negative, but resulted in North River threatening to deny coverage to InEx for its potential Chinese Drywall liability.  In fact, every time InEx has made an effort to work with North River to resolve InEx's potential liability, North River has not only refused to do so, but has threatened InEx with a denial of coverage based upon the North River Policies' cooperation clauses.  North River's repeated refusal to enter into a reasonable settlement of this matter on behalf of its policy holder InEx, as is required under

16

Louisiana law, could jeopardize the InEx Class Settlement, the Knauf Settlement, the InEx Class Members and InEx. The Court should approve the Second Amended Settlement Agreement.

### 4. The Payment of Insurance Proceeds Exhausts the Arch and Liberty Policies under Louisiana law

Section 12 of the InEx Class Settlement envisions the exhaustion of the primary policies issued to InEx by Arch and Liberty. In this regard, the Insuring Agreement of the North River excess policies obligate North River to pay for all sums in excess of the "Retained Limits," which InEx becomes "legally obligated to pay for as damages…."[16] The Loss Payment Condition of the Excess Policies further envisions exhaustion of the "Retained Limit" **either as a result** of "judgments **or settlements**."[17] Thus, in order to trigger North River's obligations under the Excess Policies all available limits of the Arch Policies and Liberty Policies may be depleted **either in payment of judgments** against InEx **or in settlement** of claims asserted against InEx.

The plain language of the Excess Policies supports a determination of exhaustion of the Arch Policies and Liberty Policies by virtue of the Insurers' deposit of the Insurance Proceeds into the Escrow Account, which funds are being paid *in settlement* of the underlying claims of the InEx Class. Indeed, the Louisiana Supreme Court has characterized the "exhaustion" of an insurer's limit of liability as "self-evident" where the insurer "settles" a claim for policy limits.[18]

---

[16] *See* p. 3, FM 101.0.1108 (0999),§I Coverage Agreement –Insuring Agreement, *as modified* by FM 101.0.1983 01 02Excess Policy No. 553 085 250 3. The Excess Policies define "Retained Limits" as "the total of the applicable limits of 'Underlying Insurance.'" "Underlying Insurance" is, in turn, defined as the "policies listed in Schedule A" of the Excess Policies, and encompasses the Insurance Proceeds available under the Arch Policies and the Liberty Policies. *See* p. 12-14, FM 101.0.1108 (0999),§IV Definitions –Insuring Agreement, Excess Policy No. 553 085 250 3.

[17] *See* p. 26, FM 101.0.1108 (0999),§J Loss Payments –Conditions, Excess Policy No. 553 085 250 3.

[18] *See, e.g., Pareti v. Sentry Indem. Co.*, 536 So.2d 417 (La. 1988) ("It is self-evident that an insurer which has settled for its policy limits (or paid its full limits responsive to a judgment) has "exhausted" its limit of liability under the policy.").

17

As in *Pareti*, North River's duties under the excess policies are **plainly** triggered as the Arch and Liberty settlement fully depletes all available policy limits under InEx's primary policies. Nevertheless, as North River has questioned whether the Insurers' deposit exhausts the limits of InEx's primary policies, the  Second Amendment further clarifies the basis by which Arch's and Liberty's deposit, pursuant to Section 12 of the InEx Class Settlement, exhausts their respective policy limits in settlement of the claims of the InEx Class.  Specifically, the proposed revisions explain that the deposit by Arch and Liberty of all available Insurance Proceeds into the Escrow Account is made specifically **in settlement of the underlying claims** of InEx Class Members which the Insurers have determined may potentially exceed the available limits of the Arch Policies and Liberty Policies.

Here, if liability is attributed to InEx at the Bellwether Trial, it is certain that this liability will exceed the Arch and Liberty policies.  Thus, the decision by Arch and Liberty to settle up to the applicable limits of their policies cannot be said to be unreasonable under Louisiana law. Furthermore, because the Excess Policies specifically contemplate exhaustion by **either** payments of "judgments **or settlements**,"[19] the Insurers' deposit into the Escrow Account necessarily exhausts the Arch and Liberty Policies by operation of law.  On this basis, the Parties request an Order recognizing the Arch Policies and Liberty Policies to be "exhausted" upon the Insurers' deposit contemplated under Section 12 of the InEx Class Settlement, for purposes of triggering North River's duties of defense and indemnity to InEx, or its post-loss assignees, under the Excess Policies.

## IV.   **CONCLUSION**

In light of the Knauf Defendants' September 2012 withdrawal of InEx homes from remediation under the Pilot Program, the undersigned parties have prepared the Second Amendment

---

[19]       *Supra* fn. 14.

in an effort to: (i) resolve all claims of the InEx Class to the Available Policy Limits under the Excess Policies while recognizing the defenses to liability asserted by InEx and North River; (ii) eliminate the, ***otherwise imminent***, potential for termination of the Knauf Class Settlement with respect to Participating Class Members of the InEx Class; and (iii) exhaust the limits of the Arch Policies and Liberty Policies.  Under these circumstances, North River's refusal to consent to the proposed amendment, and the InEx Class Settlement, is no longer justified.  And, as time is unmistakably now of the essence, the Parties can no longer afford to indefinitely delay resolution. Therefore, the Parties request that the Court enter an Order preliminarily approving the Second Amendment to the InEx and Knauf Class Settlements so that the Court may consider it at the Fairness Hearing.  After the Fairness Hearing, the parties request an Order finally approving and attaching the Second Amendment to the InEx Class Settlement (Rec. Doc. No. 12258-3), attached hereto as Exhibit A, over North River's refusal of consent, and approving and attaching the Second Amendment to the Knauf Class Settlement.  Similarly, the Parties request an Order recognizing the Arch Policies and Liberty Policies to be "exhausted" upon the Insurers' deposit contemplated under Section 12 of the InEx Class Settlement, for purposes of triggering North River's duties of defense and indemnity to InEx, or its post-loss assignees, under the Excess Policies.

The undersigned have contacted counsel for the North River regarding this filing.  As of the date of filing, North River objects to this motion.

Respectfully submitted,

Dated: October 16, 2012

/s/ Richard G. Duplantier
Richard G. Duplantier
Galloway Johnson Tomkins Burr and Smith
701 Poydras Street, 40th Floor
New Orleans, LA  70139
Phone: (504) 525-6802
Fax: (504) 525-2456
rduplantier@gjtbs.com
*Counsel for Interior/Exterior Building Supply, L.P.*

## PLAINTIFFS' LEAD COUNSEL MDL 2047

Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Sandra L. Duggan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
MATTHEWS, MARTINEZ, GONZALES,
KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS,
MITCHELL ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Daniel K. Bryson
LEWIS & ROBERTS
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**PROPOSED CLASS COUNSEL**

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

Russ M. Herman, Esquire (Bar No. 6819)
HERMAN, HERMAN, KATZ & COTLAR,
LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Rherman@hhkc.com

**PROPOSED SUBCLASS COUNSEL**

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com
Proposed Louisiana Subclass Counsel

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630   jrr@lumpkinreeves.com
Proposed Non-Louisiana Subclass Counsel


**KNAUF DEFENDANTS**

Kyle A. Spaulding
KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
FRILOT L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8194
Facsimile: (504) 599-8145
Email: kmiller@frilot.com

- AND –

STEVEN GLICKSTEIN (NY Bar No. 1038157)
JAY P. MAYESH (NY Bar No. 1081603)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8485
Facsimile: (212) 836-6485
Email: sglickstein@kayescholer.com
*Counsel for the Knauf Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 16th  day of October, 2012.


/s/ Richard G. Duplantier
Richard G. Duplantier
Galloway Johnson Tomkins Burr and Smith
701 Poydras Street, 40th Floor
New Orleans, LA  70139
Phone: (504) 525-6802
Fax: (504) 525-2456
rduplantier@gjtbs.com
*Counsel for Interior/Exterior Building Supply, L.P.*

**EXHIBIT A**

## SECOND AMENDMENT TO SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST INTERIOR-EXTERIOR IN MDL NO. 2047 AND SECOND AMENDMENT TO SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST THE KNAUF DEFENDANTS IN MDL NO. 2047
### (Subject to Court Approval)

This Second Amendment to the Settlement Agreement Regarding Claims Against Interior-Exterior in MDL No. 2047 and Second Amendment to the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 is entered into by and between the Plaintiffs' Steering Committee in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 and Interior/Exterior Building Supply, L.P., Arch Insurance Company, Liberty Mutual Fire Insurance Company, and the Knauf Defendants as of the latest date of a Party's signature below.

      a.   **WHEREAS**, on April 25, 2011, the PSC, InEx, Arch and Liberty entered into the Settlement Agreement Regarding Claims Against Interior-Exterior in MDL No. 2047, which was amended on January 23, 2012 (the "InEx Class Settlement");[1]

**WHEREAS**, on May 13, 2011, the Court preliminarily approved the InEx Class Settlement and conditionally certified the InEx Class;

**WHEREAS**, on December 20, 2011, the PSC and the Knauf Defendants entered into the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Class Settlement");

**WHEREAS**, on January 10, 2012, the Court preliminarily approved the Knauf Class Settlement and conditionally certified the Knauf Class;

**WHEREAS**, pursuant to the InEx Class Settlement, Arch and Liberty will deposit the Insurance Proceeds in an escrow account for distribution to the InEx Class;

**WHEREAS**, the InEx Class Settlement does not resolve the claims of the InEx Class to the Available Policy Limits under the Excess Policies issued by the Excess Carrier;

**WHEREAS**, under the Knauf Class Settlement, any Participating Knauf Class Member who also is a Participating InEx Class Member must assign their recoveries under the InEx Class Settlement to the extent attributable to KPT Chinese Drywall to the Knauf Defendants, which recoveries will be deposited into the Remediation Fund as defined in the Knauf Class Settlement for the purposes of providing Settlement benefits to the individual Participating Class Member(s) involved;

---

     [1]    Capitalized terms not otherwise defined have the same meaning given to them in the InEx Class Settlement.

**WHEREAS**, the Knauf Defendants can terminate the Knauf Class Settlement either in its entirety or as to the InEx Class if the Knauf Defendants, InEx and its insurers fail to reach an acceptable resolution of the claims of the InEx Class to the Available Policy Limits and fail to resolve claims of InEx and its insurers against the Knauf Defendants;

**WHEREAS**, the Court has scheduled a bellwether trial of certain InEx Class Members' claims against InEx and the Excess Carrier to determine the liability of InEx and the Excess Carrier under Louisiana redhibition law only (the "Bellwether Trial");

**WHEREAS**, a judgment against InEx in the Bellwether Trial likely would result in awards of damages to InEx Class Members that in total would far exceed the sum of the Insurance Proceeds and the Available Policy Limits; and

**WHEREAS**, the Parties desire to resolve the claims of the InEx Class to the Available Policy Limits under the Excess Policies issued by the Excess Carrier contingent on the outcome of the Bellwether Trial so as to ensure that the Knauf Defendants do not terminate the Knauf Class Settlement;

**WHEREAS**, time is of the essence and there is no justifiable reason for delay because the Knauf Defendants must exercise their right to terminate the Knauf Class Settlement by November 6, 2012;

**NOW, THEREFORE,** in consideration of the mutual covenants contained in the InEx Class Settlement and the Knauf Class Settlement and contained herein and intending to be legally bound, the Parties agree as follows:

1.   Regardless of the outcome of the Bellwether Trial, Arch and Liberty will deposit the Insurance Proceeds into an Escrow Account as described in Section 12 of the InEx Class Settlement, confirming that the Arch and Liberty policies have been exhausted by settlement.  Such deposit will satisfy all the claims of the InEx Class against Arch and Liberty.

2.   If the Bellwether Trial results in a final judgment in favor of InEx, the InEx Class shall have no further claim against the Available Policy Limits with respect to Participating Knauf Class Members only and shall dismiss with prejudice any pending claims of Participating Knauf Class Members only against the Excess Carrier to the Available Policy Limits.

    a.   A final judgment in the Bellwether Trial means a judgment entered by the Court resolving the causes of action at issue in the Bellwether Trial after exhaustion of all appeals or, if no appeal is taken, after the time for such an appeal has expired.

3.   If the Bellwether Trial results in a final judgment against InEx, InEx shall make a Supplemental Contribution to the InEx Class Settlement for distribution to the InEx Class under Section 16 of the InEx Class Settlement.  Such Supplemental Contribution shall be

contingent on, and only to the extent of, recovery of the applicable Supplemental Contribution from the Available Policy Limits from the Excess Carrier as follows:

a.  If the final judgment determines that (i) InEx is a "bad faith seller" under La. Civ. Code Art. 2545 with respect to all bellwether plaintiffs and (ii) InEx is solidarily liable for the judgment against it, the amount of the Supplemental Contribution shall be equal to the Available Policy Limits.

b.  If there is a final judgment against InEx but Section 3(a) does not apply, the Supplemental Contribution shall be equal to 50% of the Available Policy Limits.

c.  Within ten (10) business days of the entry of a final judgment against InEx, the PSC on behalf of direct action plaintiffs and those plaintiffs who are assignees of InEx's rights to the Available Policy Limits shall make a written demand to the Excess Carrier for immediate payment of the Supplemental Contribution under the Excess Policies.

d.  If the Excess Carrier indemnifies InEx for the Supplemental Contribution, the Supplemental Contribution shall be deposited into an Escrow Account for distribution to InEx Class under Section 16 of the InEx Class Settlement.

e.  If the Excess Carrier fails to indemnify InEx in whole or in part for the Supplemental Contribution, the PSC shall take steps to enforce plaintiffs' right to the Supplemental Contribution under the Excess Policies.  In that event, InEx shall assign its claim for bad faith conduct against the Excess Carrier to the InEx Class.

f.  If the enforcement efforts are successful, the Supplemental Contribution (or the extent of the recovery if less than the Supplemental Contribution) shall be deposited into an Escrow Account for distribution to the InEx Class under Section 16 of the InEx Class Settlement.

g.  If the enforcement efforts are not successful, the InEx Class shall have no further claim against the Available Policy Limits with respect to claims by Participating Knauf Class Members and the InEx Class shall dismiss with prejudice any pending claims of Participating Knauf Class Members against InEx or the Excess Carrier to the Available Policy Limits.

4.  With respect to any Supplemental Contribution, (a) out of the first $10 million of such Supplemental Contribution, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Knauf Class Members' assignments of such Supplemental Contribution to the extent that they relate to KPT Chinese Drywall shall be deposited into the Remediation Fund; (b) out of the next $15 million of such Supplemental Contribution, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Knauf Class Members' assignments of such Supplemental Contribution to the extent that they relate to KPT Chinese Drywall shall be

3

deposited 75% into the Remediation Fund and 25% into the Other Loss Fund; and (c) out of any such Supplemental Contribution exceeding $25 million, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Knauf Class Members' assignments of such Supplemental Contribution to the extent that they relate to KPT Chinese Drywall shall be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund  The Knauf Class Settlement is amended to add Section 4.8.2.1 as follows:

> With respect to any supplemental recovery from The North River Insurance Company toward the InEx Class Settlement, (a) out of the first $10 million of such supplemental recovery, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Class Members' assignments of such supplemental recovery to the extent that they relate to KPT Chinese Drywall shall be deposited into the Remediation Fund; (b) out of the next $15 million of such supplemental recovery, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Class Members' assignments of such supplemental recovery to the extent that they relate to KPT Chinese Drywall shall be deposited 75% into the Remediation Fund and 25% into the Other Loss Fund; and (c) out of any such supplemental recovery from The North River Insurance Company exceeding $25 million, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Class Members' assignments of such supplemental recovery to the extent that they relate to KPT Chinese Drywall shall be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund.

5.      The Knauf Defendants shall forego their right under Section 4.8.6. of the Knauf Class Settlement to terminate the Knauf Class Settlement as to Participating Class Members who are members of or are eligible to participate in the InEx Class Settlement.  Section 4.8.6. of the Knauf Class Settlement is amended as follows:

> If the Knauf Defendants fail to agree with Banner on a solution acceptable to the Knauf Defendants that extinguishes any potential claims of Banner or their insurers against the Knauf Defendants, then the Knauf Defendants can terminate the Settlement as to all Participating Class Members who are members or were eligible to participate in the Banner Class Settlement.

6.      The provisions of Section 16.7 of the InEx Class Settlement shall govern any award of attorneys' fees and costs based on the Supplemental Contribution.

7.      Nothing in this Amended Agreement shall constitute a waiver of InEx's claims for contribution or indemnity against the Knauf Defendants or a waiver of claims with respect to any person or entity not eligible to participate in the InEx Class Settlement or

not participating in the InEx Class Settlement or alter or amend paragraph 3.2 of the InEx Class Settlement.

8.      The Parties will present this Amended Agreement to the Court for purposes of determining whether it constitutes a reasonable settlement of a disputed claim for insurance coverage purposes and whether time is of the essence and there is no justifiable basis for delay in executing the settlement.  *See Emile M. Babst Co., Inc. v. Nichols Constr. Corp.*, 488 So. 2d 699, 703 (La. Ct. App. 1986); *Federal Ins. Co. v. New Hampshire Ins. Co.*, 2010 WL 28568, at *4 (M.D. La. Jan. 4. 2010); *New England Ins. Co. v. Barnett*, 465 Fed. Appx. 302, 307 (5th Cir. Mar. 6, 2012).  The Amended Agreement shall not become effective unless the Court determines that it constitutes a reasonable settlement for insurance coverage purposes and that time is of the essence and there is no justifiable basis for delay in executing the settlement.

9.      This amendment shall not affect the right of InEx, Arch, Liberty or the Knauf Defendants to terminate their settlements due to opt outs under section 7.3.2 of the InEx Class Settlement and section 8.3.2 of the Knauf Class Settlement, respectively.  In addition, InEx, Arch, Liberty and the Knauf Defendants will each have the right to terminate their respective settlements if any of the others permissibly terminates its settlement; provided, however, that such cross-termination must be exercised within 10 days from receipt of notice that the other party is terminating.

10.     This Amended Agreement may be signed in counterparts.  Electronic signatures by facsimile or email shall have the same effect as original signatures.

[Remainder of this page intentionally left blank.]

**IN WITNESS HEREOF**, the Parties have executed this Amendment by their duly authorized representatives on the dates stated below:

**Witnesses:**                              **Plaintiffs' Steering Committee**

_____            By: _____

Print Name: _____            Print Name: _____

_____            Title: _____

Print Name: _____            Date: _____


**Witnesses:**                              **Interior/Exterior Building Supply L.P.**

_____            By: _____

Print Name: _____            Print Name: _____

_____            Title: _____

Print Name: _____            Date: _____


**Witnesses:**                              **Arch Insurance Company**

_____            By: _____

Print Name: _____            Print Name: _____

_____            Title: _____

Print Name: _____            Date: _____

6

**Witnesses:**

**Liberty Mutual Fire Insurance Company**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____


**Witnesses:**

**Knauf Plasterboard (Tianjin) Co., Ltd.**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____


**Witnesses:**

**Knauf Plasterboard (Wuhu) Co., Ltd.**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____

**Witnesses:**

**Guangdong Knauf New Building Material Products Co., Ltd.**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____

**Witnesses:**

**Knauf Gips KG**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____

**Witnesses:**

**Gebr. Knauf Verwaltungsgesellschaft KG**

_____

By: _____

Print Name: _____

Print Name: _____

_____

Title: _____

Print Name: _____

Date: _____

Witnesses:                                    **Knauf International GmbH**

_____           By: _____

Print Name: _____             Print Name: _____

                                              Title: _____
_____

Print Name: _____             Date: _____


Witnesses:                                    **Knauf Insulation GmbH**

_____           By: _____

Print Name: _____             Print Name: _____

                                              Title: _____
_____

Print Name: _____             Date: _____


Witnesses:                                    **Knauf UK GmbH**

_____           By: _____

Print Name: _____             Print Name: _____

                                              Title: _____
_____

Print Name: _____             Date: _____


Witnesses:                                    **Knauf AMF GmbH & Co. KG**

_____           By: _____

Print Name: _____             Print Name: _____

                                              Title: _____
_____

Print Name: _____             Date: _____

9

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Knauf do Brasil Ltda.**

By: _____

Print Name: _____

Title: _____

Date: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**PT Knauf Gypsum Indonesia**

By: _____

Print Name: _____

Title: _____

Date: _____