# EXHIBIT A

## SECOND AMENDMENT TO SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST INTERIOR-EXTERIOR IN MDL NO. 2047 AND SECOND AMENDMENT TO SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST THE KNAUF DEFENDANTS IN MDL NO. 2047
(Subject to Court Approval)

This Second Amendment to the Settlement Agreement Regarding Claims Against Interior-Exterior in MDL No. 2047 and Second Amendment to the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 is entered into by and between the Plaintiffs' Steering Committee in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 and Interior/Exterior Building Supply, L.P., Arch Insurance Company, Liberty Mutual Fire Insurance Company, and the Knauf Defendants as of the latest date of a Party's signature below.

a. **WHEREAS**, on April 25, 2011, the PSC, InEx, Arch and Liberty entered into the Settlement Agreement Regarding Claims Against Interior-Exterior in MDL No. 2047, which was amended on January 23, 2012 (the "InEx Class Settlement");[1]

**WHEREAS**, on May 13, 2011, the Court preliminarily approved the InEx Class Settlement and conditionally certified the InEx Class;

**WHEREAS**, on December 20, 2011, the PSC and the Knauf Defendants entered into the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Class Settlement");

**WHEREAS**, on January 10, 2012, the Court preliminarily approved the Knauf Class Settlement and conditionally certified the Knauf Class;

**WHEREAS**, pursuant to the InEx Class Settlement, Arch and Liberty will deposit the Insurance Proceeds in an escrow account for distribution to the InEx Class;

**WHEREAS**, the InEx Class Settlement does not resolve the claims of the InEx Class to the Available Policy Limits under the Excess Policies issued by the Excess Carrier;

**WHEREAS**, under the Knauf Class Settlement, any Participating Knauf Class Member who also is a Participating InEx Class Member must assign their recoveries under the InEx Class Settlement to the extent attributable to KPT Chinese Drywall to the Knauf Defendants, which recoveries will be deposited into the Remediation Fund as defined in the Knauf Class Settlement for the purposes of providing Settlement benefits to the individual Participating Class Member(s) involved;

---

[1] Capitalized terms not otherwise defined have the same meaning given to them in the InEx Class Settlement.

**WHEREAS**, the Knauf Defendants can terminate the Knauf Class Settlement either in its entirety or as to the InEx Class if the Knauf Defendants, InEx and its insurers fail to reach an acceptable resolution of the claims of the InEx Class to the Available Policy Limits and fail to resolve claims of InEx and its insurers against the Knauf Defendants;

**WHEREAS**, the Court has scheduled a bellwether trial of certain InEx Class Members' claims against InEx and the Excess Carrier to determine the liability of InEx and the Excess Carrier under Louisiana redhibition law only (the "Bellwether Trial");

**WHEREAS**, a judgment against InEx in the Bellwether Trial likely would result in awards of damages to InEx Class Members that in total would far exceed the sum of the Insurance Proceeds and the Available Policy Limits; and

**WHEREAS**, the Parties desire to resolve the claims of the InEx Class to the Available Policy Limits under the Excess Policies issued by the Excess Carrier contingent on the outcome of the Bellwether Trial so as to ensure that the Knauf Defendants do not terminate the Knauf Class Settlement;

**WHEREAS**, time is of the essence and there is no justifiable reason for delay because the Knauf Defendants must exercise their right to terminate the Knauf Class Settlement by November 6, 2012;

**NOW, THEREFORE,** in consideration of the mutual covenants contained in the InEx Class Settlement and the Knauf Class Settlement and contained herein and intending to be legally bound, the Parties agree as follows:

1. Regardless of the outcome of the Bellwether Trial, Arch and Liberty will deposit the Insurance Proceeds into an Escrow Account as described in Section 12 of the InEx Class Settlement, confirming that the Arch and Liberty policies have been exhausted by settlement. Such deposit will satisfy all the claims of the InEx Class against Arch and Liberty.

2. If the Bellwether Trial results in a final judgment in favor of InEx, the InEx Class shall have no further claim against the Available Policy Limits with respect to Participating Knauf Class Members only and shall dismiss with prejudice any pending claims of Participating Knauf Class Members only against the Excess Carrier to the Available Policy Limits.

    a. A final judgment in the Bellwether Trial means a judgment entered by the Court resolving the causes of action at issue in the Bellwether Trial after exhaustion of all appeals or, if no appeal is taken, after the time for such an appeal has expired.

3. If the Bellwether Trial results in a final judgment against InEx, InEx shall make a Supplemental Contribution to the InEx Class Settlement for distribution to the InEx Class under Section 16 of the InEx Class Settlement. Such Supplemental Contribution shall be

contingent on, and only to the extent of, recovery of the applicable Supplemental Contribution from the Available Policy Limits from the Excess Carrier as follows:

a. If the final judgment determines that (i) InEx is a "bad faith seller" under La. Civ. Code Art. 2545 with respect to all bellwether plaintiffs and (ii) InEx is solidarily liable for the judgment against it, the amount of the Supplemental Contribution shall be equal to the Available Policy Limits.

b. If there is a final judgment against InEx but Section 3(a) does not apply, the Supplemental Contribution shall be equal to 50% of the Available Policy Limits.

c. Within ten (10) business days of the entry of a final judgment against InEx, the PSC on behalf of direct action plaintiffs and those plaintiffs who are assignees of InEx's rights to the Available Policy Limits shall make a written demand to the Excess Carrier for immediate payment of the Supplemental Contribution under the Excess Policies.

d. If the Excess Carrier indemnifies InEx for the Supplemental Contribution, the Supplemental Contribution shall be deposited into an Escrow Account for distribution to InEx Class under Section 16 of the InEx Class Settlement.

e. If the Excess Carrier fails to indemnify InEx in whole or in part for the Supplemental Contribution, the PSC shall take steps to enforce plaintiffs' right to the Supplemental Contribution under the Excess Policies.  In that event, InEx shall assign its claim for bad faith conduct against the Excess Carrier to the InEx Class.

f. If the enforcement efforts are successful, the Supplemental Contribution (or the extent of the recovery if less than the Supplemental Contribution) shall be deposited into an Escrow Account for distribution to the InEx Class under Section 16 of the InEx Class Settlement.

g. If the enforcement efforts are not successful, the InEx Class shall have no further claim against the Available Policy Limits with respect to claims by Participating Knauf Class Members and the InEx Class shall dismiss with prejudice any pending claims of Participating Knauf Class Members against InEx or the Excess Carrier to the Available Policy Limits.

4. With respect to any Supplemental Contribution, (a) out of the first $10 million of such Supplemental Contribution, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Knauf Class Members' assignments of such Supplemental Contribution to the extent that they relate to KPT Chinese Drywall shall be deposited into the Remediation Fund; (b) out of the next $15 million of such Supplemental Contribution, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Knauf Class Members' assignments of such Supplemental Contribution to the extent that they relate to KPT Chinese Drywall shall be

    deposited 75% into the Remediation Fund and 25% into the Other Loss Fund; and (c) out of any such Supplemental Contribution exceeding $25 million, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Knauf Class Members' assignments of such Supplemental Contribution to the extent that they relate to KPT Chinese Drywall shall be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund  The Knauf Class Settlement is amended to add Section 4.8.2.1 as follows:

> With respect to any supplemental recovery from The North River Insurance Company toward the InEx Class Settlement, (a) out of the first $10 million of such supplemental recovery, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Class Members' assignments of such supplemental recovery to the extent that they relate to KPT Chinese Drywall shall be deposited into the Remediation Fund; (b) out of the next $15 million of such supplemental recovery, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Class Members' assignments of such supplemental recovery to the extent that they relate to KPT Chinese Drywall shall be deposited 75% into the Remediation Fund and 25% into the Other Loss Fund; and (c) out of any such supplemental recovery from The North River Insurance Company exceeding $25 million, any amounts remaining after payment of attorneys' fees and costs that are attributable to Participating Class Members' assignments of such supplemental recovery to the extent that they relate to KPT Chinese Drywall shall be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund.

5.   The Knauf Defendants shall forego their right under Section 4.8.6. of the Knauf Class Settlement to terminate the Knauf Class Settlement as to Participating Class Members who are members of or are eligible to participate in the InEx Class Settlement.  Section 4.8.6. of the Knauf Class Settlement is amended as follows:

> If the Knauf Defendants fail to agree with Banner on a solution acceptable to the Knauf Defendants that extinguishes any potential claims of Banner or their insurers against the Knauf Defendants, then the Knauf Defendants can terminate the Settlement as to all Participating Class Members who are members or were eligible to participate in the Banner Class Settlement.

6.   The provisions of Section 16.7 of the InEx Class Settlement shall govern any award of attorneys' fees and costs based on the Supplemental Contribution.

7.   Nothing in this Amended Agreement shall constitute a waiver of InEx's claims for contribution or indemnity against the Knauf Defendants or a waiver of claims with respect to any person or entity not eligible to participate in the InEx Class Settlement or

4

not participating in the InEx Class Settlement or alter or amend paragraph 3.2 of the InEx Class Settlement.

8. The Parties will present this Amended Agreement to the Court for purposes of determining whether it constitutes a reasonable settlement of a disputed claim for insurance coverage purposes and whether time is of the essence and there is no justifiable basis for delay in executing the settlement. *See Emile M. Babst Co., Inc. v. Nichols Constr. Corp.*, 488 So. 2d 699, 703 (La. Ct. App. 1986); *Federal Ins. Co. v. New Hampshire Ins. Co.*, 2010 WL 28568, at *4 (M.D. La. Jan. 4. 2010); *New England Ins. Co. v. Barnett*, 465 Fed. Appx. 302, 307 (5th Cir. Mar. 6, 2012). The Amended Agreement shall not become effective unless the Court determines that it constitutes a reasonable settlement for insurance coverage purposes and that time is of the essence and there is no justifiable basis for delay in executing the settlement.

9. This amendment shall not affect the right of InEx, Arch, Liberty or the Knauf Defendants to terminate their settlements due to opt outs under section 7.3.2 of the InEx Class Settlement and section 8.3.2 of the Knauf Class Settlement, respectively. In addition, InEx, Arch, Liberty and the Knauf Defendants will each have the right to terminate their respective settlements if any of the others permissibly terminates its settlement; provided, however, that such cross-termination must be exercised within 10 days from receipt of notice that the other party is terminating.

10. This Amended Agreement may be signed in counterparts. Electronic signatures by facsimile or email shall have the same effect as original signatures.

[Remainder of this page intentionally left blank.]

**IN WITNESS HEREOF**, the Parties have executed this Amendment by their duly authorized representatives on the dates stated below:

| **Witnesses:** | **Plaintiffs' Steering Committee** |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
|  | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ |  |

| **Witnesses:** | **Interior/Exterior Building Supply L.P.** |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
|  | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ |  |

| **Witnesses:** | **Arch Insurance Company** |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
|  | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ |  |

| | |
|---|---|
| **Witnesses:** | **Liberty Mutual Fire Insurance Company** |
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |
| | |
| **Witnesses:** | **Knauf Plasterboard (Tianjin) Co., Ltd.** |
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |
| | |
| **Witnesses:** | **Knauf Plasterboard (Wuhu) Co., Ltd.** |
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |

| Witnesses: | **Guangdong Knauf New Building Material Products Co., Ltd.** |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
|  | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |

| Witnesses: | **Knauf Gips KG** |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
|  | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |

| Witnesses: | **Gebr. Knauf Verwaltungsgesellschaft KG** |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
|  | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |

**Witnesses:**                                      **Knauf International GmbH**

_____                By: _____

Print Name: _____                   Print Name: _____

                                                    Title: _____

_____                Date: _____

Print Name: _____


**Witnesses:**                                      **Knauf Insulation GmbH**

_____                By: _____

Print Name: _____                   Print Name: _____

                                                    Title: _____

_____                Date: _____

Print Name: _____


**Witnesses:**                                      **Knauf UK GmbH**

_____                By: _____

Print Name: _____                   Print Name: _____

                                                    Title: _____

_____                Date: _____

Print Name: _____


**Witnesses:**                                      **Knauf AMF GmbH & Co. KG**

_____                By: _____

Print Name: _____                   Print Name: _____

                                                    Title: _____

_____                Date: _____

Print Name: _____

**Witnesses:**                          **Knauf do Brasil Ltda.**

_____          By: _____

Print Name: _____          Print Name: _____

                                         Title: _____

_____              Date: _____

Print Name: _____


**Witnesses:**                          **PT Knauf Gypsum Indonesia**

_____          By: _____

Print Name: _____          Print Name: _____

                                         Title: _____

_____              Date: _____

Print Name: _____