UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

------------------------------------------------------------x
IN RE:  CHINESE-MANUFACTURED          :    MDL NO. 2047
DRYWALL PRODUCTS LIABILITY            :    SECTION:  L
LITIGATION                            :
------------------------------------------------------------x
THIS DOCUMENT RELATES TO:             :    JUDGE FALLON
ALL CASES AND                         :    MAG. JUDGE WILKINSON
                                      :
*Payton, et al. v. Knauf Gips KG, et al.*   :
Case No. 2:09-cv-07628 (E.D. La.)     :
                                      :
*Gross, et al. v. Knauf Gips KG, et al.*    :
Case No. 2:09-cv-06690 (E.D. La.)     :
                                      :
*Rogers, et al. v. Knauf Gips KG, et al.*   :
Case No. 2:10-cv-00362 (E.D. La.)     :
                                      :
*Abreu, et al. v. Gebrueder Knauf*          :
*Verwaltungsgesellschaft KG, et al.*        :
Case No. 2:11-cv-00252 (E.D. La.)     :
                                      :
*Block, et al. v. Gebrueder Knauf*          :
*Verwaltungsgesellschaft KG, et al.*        :
Case No. 11-cv-1363 (E.D. La.)        :
                                      :
*Arndt, et al. v. Gebrueder Knauf*          :
*Verwaltungsgesellschaft KG, et al.*        :
Case No. 11-cv-2349 (E.D. La.)        :
                                      :
*Cassidy, et al. v. Gebrueder Knauf*        :
*Verwaltungsgesellschaft KG, et al.*        :
Case No. 11-cv-3023 (E.D. La.)        :
                                      :
*Vickers, et al. v. Knauf Gips KG, et al.*  :
Case No. 2:09-cv-04117 (E.D. La.)     :
------------------------------------------------------------x

**SCHEDULING ORDER REGARDING NOVEMBER 13-14 FAIRNESS HEARING**

## I.     BACKGROUND

### A.     MDL Litigation

The present litigation arises from alleged property damage and personal injuries sustained as a result of the presence of Chinese-manufactured drywall in homes and other buildings in a number of states. During approximately 2005 to 2008, hundreds-of-millions of square feet of gypsum wallboard manufactured in China ("Chinese drywall") were exported to the United States, primarily along the East Coast and Gulf South, as a result of an exceptionally high demand for building supplies in the aftermaths of Hurricanes Rita and Katrina, as well as a general new-housing boom. The Chinese drywall was then installed in newly-constructed and reconstructed properties. After installation of this drywall, owners and occupants of the properties began noticing unusual odors, blackening of silver and copper items and components, and the failure of appliances, including microwaves, refrigerators, and air-conditioning units. Some also experienced health problems, such as skin and eye irritation, respiratory issues, nose bleeds, and headaches. As a result, these property owners began filing suit in both state and federal courts against those involved with Chinese drywall, including the installers, homebuilders, suppliers, importers, exporters, and manufacturers, as well as their insurers and sureties.

On June 15, 2009, this Court was designated as the transferee court for all federal cases involving Chinese-manufactured drywall, creating Multi-District Litigation 2047 (the "MDL"). *See* (R. Doc. 1). Since the inception of the MDL over three years ago, hundreds of lawsuits involving thousands of plaintiffs and defendants have been filed and the cases consolidated before this Court. The Court has worked to oversee and manage this complex litigation, including: presiding over numerous regularly-scheduled hearings and monthly status

conferences, which are attended by hundreds of counsel; vetting and appointing counsel to steering committees (plaintiff, defendant, homebuilder, installer, insurer), mediators, special masters, and a *pro se* curator; communicating and coordinating with state and federal judges who preside over related Chinese drywall litigation; issuing 26 pretrial orders which govern procedure in the MDL, as well as countless orders and minute entries; maintaining a public MDL website; supervising depositions that took place in Hong Kong; presiding over ten bellwether trials and proceedings, as well as issuing detailed findings of fact and conclusions of law; facilitating numerous settlement negotiations and mediations; monitoring the pilot remediation program; and managing the 15,000-plus record documents filed into the litigation. *See* Case No. 09-md-2047.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Taishan Entities, and (2) the Knauf Entities. The litigation has focused upon these two entities and their downstream associates, and has proceeded on separate tracks for the claims against each group as described as follows.

### B. Taishan Entities

The first group of manufacturer defendants in the litigation includes the Chinese-based Taishan Entities, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). On September 4, 2012, the Court issued an Order and Reasons denying Taishan's personal jurisdiction challenges and its requests to vacate default judgments. (R. Doc. 15755). Taishan has noticed its appeal. (R. Doc. 15871).

### C. Knauf Entities

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"),

manufactured and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. *See* (R. Doc. 18). On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* (R. Doc. 401). On March 15-19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* (R. Doc. 2713). For purposes of the trial, KPT stipulated that its Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id.* The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, *see id.*, and entered a Judgment in the amount of $164,049.64. *See* (R. Doc. 3012).

Thereafter, on October 14, 2010, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and is in the process of remediating 2,000 homes containing KPT Chinese drywall. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related Chinese drywall claims. *See* (R. Doc. 12061-5). This Agreement is the most significant step thus far towards global resolution of all Chinese drywall claims.

In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of

4

which settles almost all of the Knauf Entities' chain-of-commerce litigation. These additional class action settlement agreements involve the following defendants and in most cases, their insurers: Interior Exterior Building Supply, LP ("InEx"); the Banner Entities; L&W Supply Corp. and USG Corp.; and a group of numerous homebuilders, installers, suppliers. *See* (R. Docs. 10033-3, 12258-3, 13375-2, 14404-2). The Court has granted preliminary approval to all of the foregoing settlement agreements which are the subject of the final fairness hearing set to begin on November 13, 2012, as described in more detail below:

    1.    The Court granted preliminary approval to a proposed class action settlement between the PSC and InEx and its primary insurers on May 13, 2011 and to amendments to that agreement on February 23, 2012 (the "InEx Settlement"). [R. Doc.8818; R. Doc.12587.][1]

    2.    The Court granted preliminary approval to a proposed class action settlement between the PSC and Banner Supply Co., other Banner entities (collectively "Banner") and their insurers on July 14, 2011 and to amendments to that agreement on August 11, 2011 (the "Banner Settlement"). [R. Doc.9839; R. Doc.10064.]

    3.    The Court granted preliminary approval to a proposed class action settlement between the PSC and the Knauf Defendants on January 10, 2012 and to amendments to that agreement on September 4, 2012 (the "Knauf Settlement"). [R. Doc.12138; R. Doc.15786.]

    4.    The Court granted preliminary approval to a proposed class action settlement between the PSC, L&W Supply Corporation ("L&W"), USG Corporation and the Knauf Defendants on April 26, 2012 (the "L&W Settlement"). [R. Doc.14583.]

---

[1] InEx, the PSC and the Knauf Defendants will shortly submit a proposed Second Amendment to their respective settlement agreements.

5.      The Court granted preliminary approval to a proposed class action settlement between the PSC and Participating Suppliers, Builders and Installers and Participating Insurers on May 31, 2012 and to amendments to that agreement on August 22, 2012 (the "Global Settlement").  [R. Doc. 14562; R. Doc. 15734.]

6.      Because the InEx, Banner, Knauf, L&W and Global Settlements (collectively "Settlements") are inter-related, the Court scheduled a Joint Fairness Hearing for November 13, 2012, beginning at 9 o'clock in the morning, and continuing to November 14, 2012, if necessary, to consider comments on and objections to the Settlements and to consider whether (a) to approve thereafter the Settlements as fair, reasonable and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure, (b) finally to certify the settlement classes, and (c) to enter the orders and judgments provided for in each of the Settlements.  [R. Doc. 14566.]

The Court has now reviewed the motions for final approval filed by the PSC [R. Docs. 15749, 15764] and the Knauf Defendants [R. Docs. 15751, 15753.]  The Court also has reviewed the objections to the Settlements filed to date.  [R. Doc. 15881.]  Having reviewed these filings, as well as the applicable law, the Court sets forth the following schedule leading up to the Joint Fairness Hearing.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      Given the voluminous evidence that has been filed into the record in support of the Settlements, the Court does not intend to receive live testimony at the Joint Fairness Hearing and does not plan to hear from any live witnesses.  Rather, the Court intends to entertain arguments from counsel for proponents of one or more of the Settlements and objectors to one or more of the Settlements or their counsel.  *See*, *e.g.*, *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642 (5th Cir. 2012) ("Historically, courts have commonly relied on

affidavits, declarations, arguments made by counsel, and other materials in the record without also requiring live testimony.") (quoting *UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 387 (E.D. Mich. 2006), *aff'd*, 497 F.3d 615 (6th Cir. 2007)).

2.  The Court does not intend to entertain duplicative or cumulative objections or objections that have been adequately expressed in written filings, except potentially in brief, supplemental oral presentations. *See*, *e.g.*, *Canupp v. Liberty Behavioral Health Corp.*, 417 F. Appx. 843, at **2 (11th Cir. 2001) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *Manual for Complex Litigation, Fourth* § 21.634 ("Time limits on the arguments of objectors are appropriate, as is refusal to hear the same objections more than once.")  The Court reserves the right to limit presentations by any party or objector on the grounds of being duplicative, cumulative, or because the objection was adequately covered in written submissions.

3.  The notice programs approved by the Court with respect to the Settlements stated that only class member objectors who specifically requested permission to speak at the fairness hearing would be considered by the Court for the opportunity to speak.  The deadline for objections was September 28, 2012.  [R. Doc.14566.]  It is the Court's intention that, absent good cause shown, only class members who have complied with these requirements will be allowed to address the Court.  *See*, *e.g.*, *In re Wachovia Corp. Pick-a-Payment Mortg. Mktg. & Sales Practices Litig.*, No. 09-2015, 2010 WL 5559767, at *6 (N.D. Cal. Dec. 16, 2010); *Bernal v. Am. Money Ctrs., Inc.*, No. 05-1327, 2008 WL 410658, at *2 (E.D. Wis. Feb. 12, 2008); *In re Royal Ahold N.V. Secs. & ERISA Litig.*, No. 103-MD-01539, 2006 WL 132080, at *8 (D. Md. Jan. 9, 2006).

4. Any person who filed an objection desiring to be heard at the Joint Fairness Hearing shall advise the Court and Settlement Class Counsel in writing on or before November 2, 2012.

5. Any person who filed an objection desiring to be heard at the Joint Fairness Hearing shall provide the Court and Settlement Class Counsel with copies of any documents or exhibits that they intend to introduce at the Joint Fairness Hearing on or before 4 p.m. Central Time on November 2, 2012. Although any member of the public may attend, only parties with standing shall be permitted to speak or participate in the Joint Fairness Hearing. For example, parties who are not part of one or more of the classes (including class members who have opted out in accordance with the requirements of the Settlements, the class notices and the Court's orders) may not participate in the Joint Fairness Hearing, but may attend.

6. An opt out desiring to rescind his, her, or its opt out from one or more of the Settlements may do so as of right through and including November 5, 2012 by notifying, in writing, the persons specified to receive an opt out notice in the preliminary approval order for that particular Settlement.

7. The time for the PSC and other proponents of the Settlements to file and serve replies in support of the PSC's motion for an order finally approving the Settlements and requesting certification of the settlement classes is extended to and including November 6, 2012.

8. In light of the extension of time in which to rescind opt outs, the rights of Settling Defendants (other than Banner and its insurers) to terminate the respective Settlements based on the existence of opt outs, or for Participating Defendants or Participating Insurers to withdraw from the Global Settlement is changed to November 9, 2012. Any such termination or

withdrawal shall be delivered to Liaison and Lead Counsel for the PSC by facsimile, email or hand delivery so that it is received by 4 p.m. Central Time on November 9, 2012.

      a.    A Settling Defendant, Participating Defendant or Participating Insurer (other than Banner and its insurers) that does not exercise its termination right by November 9, 2012 will be bound by its Settlement if all other Settling Defendants, Participating Defendants or Participating Insurers also do not exercise their termination or withdrawal rights by that date.

      b.    A Settling Defendant, Participating Defendant or Participating Insurer (other than Banner and its insurers) that does not exercise its termination or withdrawal right by November 9, 2012 may nonetheless terminate its Settlement by November 12, 2012 if both (a) any other Settling Defendant, Participating Defendant or Participating Insurer has exercised its termination or withdrawal right by November 9, 2012, and (b) the conditions entitling the Settling Defendant, Participating Defendant or Participating Insurer to terminate or withdraw are satisfied. Any such termination or withdrawal shall be delivered to Liaison and Lead Counsel for the PSC by facsimile, email or hand delivery so that it is received on or before 12 p.m. Central Time on November 12, 2012.

      c.    The rights of Banner and its insurers to terminate the Banner Settlement shall be governed by their existing Settlement. Banner shall deliver any termination notice to Liaison and Lead Counsel for the PSC by facsimile, email or hand delivery so that it is received on or before 4 p.m. Central Time on the date specified in the Banner Settlement; however if Banner terminates, all other Settling Defendants, Participating Defendants and Participating Insurers shall have three business days from the date of Banner's notice to terminate or withdraw from their respective Settlements by providing a termination notice to Liaison and Lead Counsel

for the PSC by facsimile, email, or hand delivery so that it is received on or before 4 p.m. Central Time on the due date.

      New Orleans, Louisiana, this 16th day of October, 2012

                                          _____
                                          ELDON E. FALLON
                                          United States District Judge

Case 2:09-md-02047-EEF-MBN   Document 15951   Filed 10/16/12   Page 10 of 10