UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. J. WILKINSON |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO:**
*Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687
*The Mitchell Co., Inc. v. Knauf Gips KG*, Case No. 09-4115
*Gross v. Knauf Gips KG*, Case No. 09-6690
*Wiltz v. Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361

## ORDER & REASONS

Before the Court are two Motions Pursuant to 28 U.S.C. § 1292(b) to Certify the Court's Order & Reasons for Interlocutory Appeal and Stay Further Proceedings [as to the Movants] Pending the Appeal, the first filed solely on behalf of Taishan Gypsum Co. Ltd. ("TG") (R. Doc. 15812), and the second filed on behalf of TG and Tai'an Taishan Plasterboard Co. Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities") (R. Doc. 15813). The Court has reviewed the parties' arguments, the relevant evidence, and the applicable law, and it is now ready to rule.

**I.     BACKGROUND**

   **A.     MDL Litigation**

The present litigation arises from alleged property damage and personal injuries sustained as a result of the presence of Chinese-manufactured drywall in homes and other buildings in a number of states. During approximately 2005 to 2008, hundreds-of-millions of square feet of gypsum wallboard manufactured in China ("Chinese drywall") were exported to the United States, primarily along the East Coast and Gulf South, as a result of an exceptionally

-1-

high demand for building supplies in the aftermaths of Hurricanes Rita and Katrina, as well as a general new-housing boom.  The Chinese drywall was then installed in newly-constructed and reconstructed properties.  After installation of this drywall, owners and occupants of the properties began noticing unusual odors, blackening of silver and copper items and components, and the failure of appliances, including microwaves, refrigerators, and air-conditioning units.  Some also experienced health problems, such as skin and eye irritation, respiratory issues, nose bleeds, and headaches.  As a result, these property owners began filing suit in both state and federal courts against those involved with Chinese drywall, including the installers, homebuilders, suppliers, importers, exporters, and manufacturers, as well as their insurers and sureties.

On June 15, 2009, this Court was designated as the transferee court for all federal cases involving Chinese-manufactured drywall, creating Multi-District Litigation 2047 (the "MDL").  *See* (R. Doc. 1).  Since the inception of the MDL over three years ago, hundreds of lawsuits involving thousands of plaintiffs and defendants have been filed and the cases consolidated before this Court.  The Court has worked to oversee and manage this complex litigation, including: presiding over numerous regularly-scheduled hearings and monthly status conferences, which are attended by hundreds of counsel; vetting and appointing counsel to steering committees (plaintiff, defendant, homebuilder, installer, insurer), mediators, special masters, and a *pro se* curator; communicating and coordinating with state and federal judges who preside over related Chinese drywall litigation; issuing 26 pretrial orders which govern procedure in the MDL, as well as countless orders and minute entries; maintaining a public MDL website; presiding over ten bellwether trials and proceedings, as well as issuing detailed findings

of fact and conclusions of law; facilitating numerous settlement negotiations and mediations; monitoring the pilot remediation program; and managing the 15,000-plus record documents filed into the litigation.  *See* Case No. 09-md-2047.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities.  The litigation has focused upon these two entities and their downstream associates, and has proceeded on separate tracks for the claims against each group as described as follows.

### B.     Knauf Entities

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), manufactured and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.  The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009.  *See* (R. Doc. 18).  On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service.  *See* (R. Doc. 401).  On March 15-19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.  *See* (R. Doc. 2713).  For purposes of the trial, KTP stipulated that its Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*.  The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, *see id.*, and entered a Judgment in the amount of $164,049.64.  *See* (R. Doc. 3012).

Thereafter, on October 14, 2010, the Knauf Entities entered into a pilot remediation

program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and is in the process of remediating 2,000 homes containing KPT Chinese drywall. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims. *See* (R. Doc. 12061-5). This Agreement is the most significant step thus far towards global resolution of all Chinese drywall claims.

In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which is to settle almost all of the Knauf Entities' chain-of-commerce litigation. These additional class action settlement agreements involve the following defendants and, in most cases, their insurers: Interior Exterior Building Supply, LP ("Interior Exterior"); the Banner Entities; L&W Supply Corp. and USG Corp.; and a group of numerous homebuilders, installers, suppliers. *See* (R. Docs. 10033-3, 12258-3, 13375-2, 14404-2). The Court has granted preliminary approval to all of the foregoing settlement agreements, which are the subject of the final fairness hearing set to begin November 13, 2012.

### C.     Taishan Entities

The second group of manufacturer defendants in the litigation and the defendants whose personal jurisdiction challenges are the subject of the instant motions are the Chinese-based Taishan Entities, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary,

Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities").  As discussed below, the course of the litigation involving the Taishan Entities has not followed the same trajectory or enjoyed the same measure of success as that involving the Knauf Entities.

As an alleged manufacturer of Chinese drywall which has been installed in plaintiffs' properties, Taishan is a named defendant in numerous cases in both the MDL litigation and litigation filed in state courts.  The Court's personal jurisdiction inquiry pertains to four cases in the MDL in which Taishan has been served, entered an appearance, and, in two of these cases, subjected to default judgment proceedings.  These four cases are: *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687; *The Mitchell Co., Inc. v. Knauf Gips KG*, Case No. 09-4115; *Gross v. Knauf Gips KG*, Case No. 09-6690; and *Wiltz v. Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361.  The Court will briefly discuss each of these cases as they pertain to Taishan before detailing the overall course of the MDL litigation involving the claims against Taishan.

*Germano* has served as the main vehicle for the MDL litigation involving Taishan, and particularly TG, all of which will be discussed in greater detail below.  *Germano* was filed originally in the U.S. District Court for the Eastern District of Virginia as a Virginia class action against TG by the owners of homes located in Virginia which allegedly contain TG-manufactured Chinese drywall.  *See* (R. Docs. 1-1, 1-2) (Case No. 09-6678).  On August 3, 2009, TG was served.  *See* (R. Doc. 1-7) (Case No. 09-6687).  *Germano* was then transferred to the U.S. District Court for the Eastern District of Louisiana and consolidated with the MDL litigation on October 13, 2009.  (R. Doc. 1) (Case No. 09-6678).  Thereafter, the class was expanded to a nationwide class.  *See* (R. Doc. 470) (Case No. 09-md-2047).

*Mitchell* was originally filed in the U.S. District Court for the Northern District of Florida as a class action on behalf of homebuilders in the states of Louisiana, Georgia, Texas and Florida who used drywall manufactured by TG for the construction, repair, or remodeling of properties, and who, as a result, incurred expenses associated with repair or replacement of this drywall and/or other property damaged by the drywall, and/or incurred liability for property damages. *See* (R. Doc. 1-1) (Case No. 09-4115).  On May 8, 2009, service was executed on TG. *See* (R. Doc. 52) (Case No. 09-md-2047).  Shortly thereafter, *Mitchell* was transferred to the Eastern District of Louisiana and consolidated with the MDL litigation. *See* (R. Doc. 1) (Case No. 09-4115).

*Gross* and *Wiltz* were both filed in the Eastern District of Louisiana and consolidated with the MDL litigation as nationwide class actions by property owners whose homes contain Taishan-manufactured Chinese drywall. *See* (R. Doc. 1) (Case No. 09-6690); (R. Docs. 1, 1-1) (Case No. 10-361).  Taishan was served or entered an appearance in both cases. *See* (R. Docs. 2140, 2141, 2553); (R. Docs. 7408, 7409).  The cases are distinguishable by the fact that *Gross* involves claims against "indeterminate defendants" who have allegedly concealed their identity and are allegedly responsible for the Chinese drywall in plaintiff class members' properties. *See* (R. Doc. 1) (Case No. 09-6690).  *Wiltz*, on the other hand, is a more typical class action filed on behalf of property owners against Taishan as a result of the damage caused by the presence of Taishan's drywall in their properties. *See* (R. Docs. 1, 1-1) (Case No. 10-361).

The first issues in the MDL litigation involving Taishan arose when TG failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, although TG had been properly served in each case. *See* (R. Doc. 52); (R. Doc. 1-7) (Case No. 09-6687).  As a result,

the Court entered preliminary defaults against TG in both of these cases.  *See* (R. Docs. 277, 487).

After affording TG more than a reasonable amount of time to answer or enter an appearance, the Court moved forward with an evidentiary hearing in furtherance of the Preliminary Default in *Germano* on the claims of 14 intervening plaintiffs (the "Intervening-Plaintiffs").  *See* (R. Docs. 502, 1223, 1258, 2380).  Following this hearing, which occurred on February 19 and 20, 2010, the Court issued detailed Findings of Fact & Conclusions of Law.  *See* (R. Doc. 2380).  On May 11, 2010, the Court issued a Default Judgment against TG in *Germano*, in favor of the Intervening-Plaintiffs, in the amount of $2,609,129.99.  (R. Doc. 3031).  On the last day to timely do so, June 10, 2010, TG filed a Notice of Appeal of the Default Judgment in *Germano*.  (R. Doc. 3670).  On this same day, TG also entered its appearance in *Germano* and *Mitchell*.  *See* (R. Doc. 3668).

After TG entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction, as well as on procedural grounds.  *See* (R. Docs. 5436, 5583).  However, because of the pending appeal, this Court was without jurisdiction to address the motions filed by TG.  *See* (R. Doc. 5504).  Accordingly, TG sought, and was granted by the Fifth Circuit, a stay of its appeal to allow this Court to provide an indicative ruling on TG's motions to vacate the preliminary default and default judgments.  *See* (R. Doc. 5649).  In response, this Court issued an order pursuant to Federal Rule of Civil Procedure 62.1 to allow it to consider TG's motions.  *See* (R. Doc. 6101).  In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve TG's motions to vacate.  Sometime after the initial

discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan been served, including *Gross* and *Wiltz*.

Formal personal jurisdiction discovery of Taishan began in October 2010, *see e.g.* (R. Docs. 5839, 5840), and continued over the next eighteen months.  Discovery included the production of both written and electronic documents, as well as depositions of Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion.  This discovery did not proceed smoothly and required close supervision by the Court.  The Court presided over regularly-scheduled status conferences to keep the parties on track, and conducted hearings and issued rulings to resolve numerous discovery-related disputes.  *See, e.g.*, (R. Docs. 7136, 7511).

The first Taishan depositions were held in Hong Kong on April 4-8, 2011.  *See* (R. Docs. 8296, 8297).  Thirteen attorneys traveled to Hong Kong and deposed the following three Taishan witnesses: (1) Jia Tongchun, General Manager, Director of Board of Directors, and five-percent owner of TG; (2) Peng Wenglong (a.k.a. Frank Clem), Manager of Foreign Trade Department of TG in 2005, salesperson at TTP from 2006-07, and current Manager of Foreign Trade Department at TG; and (3) Zhang Jianchun, Secretary of TG and TTP.  *See id.*

Upon return to the United States, the parties filed several motions seeking to schedule a second round of Taishan depositions as a result of problems during the depositions and seeking discovery sanctions against Taishan.  *See* (R. Docs. 8685, 8695, 8755, 8758, 8768, 8792, 8805).  Taishan opposed these motions.  *See* (R. Docs. 8841, 8842).  The Court, after reviewing the transcripts from the depositions, concluded that the "depositions were ineffective because of disagreement between interpreters, counsel, and witnesses, translation difficulties, speaking

objections, colloquy among counsel and interpreters, and in general ensuing chaos." *See* (R. Doc. 9107). Accordingly, the Court ordered the parties to move forward with further written discovery and to schedule a second-round of Taishan depositions, but this time with knowledgeable and prepared witnesses, a single translator, and Court supervision. *See id.* The parties complied with the Court's orders and met regularly with the Court to resolve their further discovery disputes. *See* (R. Docs. 9524, 10092, 9649, 9944, 10007, 10216, 10269, 10799, 11175, 10804, 11138, 11192, 11326).

The Court scheduled the second round of Taishan depositions for the week of January 9, 2012, in Hong Kong. *See* (R. Docs. 10804, 11138, 11192). The Court appointed a Federal Rule of Evidence 706 expert to operate as the sole interpreter at the depositions. *See* (R. Doc. 11533). Counsel for the interested parties and Judge Fallon traveled to Hong Kong for these depositions. The following witnesses were deposed or re-deposed: (1) Peng Wenglong (a.k.a. Frank Clem); (2) Jia Tongchun; (3) Che Gang (a.k.a. Bill Cher), Manager of International Trading for Taishan, salesperson at TG from 2001-06 and 2009-12, and salesperson at TTP from 2006-07; (4) Peng Shiliang, General Manager and Chairman of Board of Directors of TTP from 2006-09, employee of TTP, and Plant Manager of TG from 2009-12; and (5) Fu Tinghuan, Supervisor at TG, Deputy General Manager at TG, and Director of TTP. Because the Court was present at the depositions, objections were ruled upon immediately and most of the problems that plagued the first round of depositions did not recur. Also, the Court was able to observe the comments, intonation, and body language of the deponents. Upon return from Hong Kong, the parties informed the Court that minimal further discovery was necessary before briefing could be submitted on Taishan's personal jurisdiction challenges.

In April 2012, TG and TTP filed the following motions:(1) TG's Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint in *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687 (R. Doc. 13490); (2) TG's Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate the Entry of Default and Dismiss This Action in *The Mitchell Co., Inc. v. Knauf Gips KG*, Case No. 09-4115 (R. Doc. 13566); (3) TG and TTP's Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint in *Gross v. Knauf Gips KG*, Case No. 09-6690 (R. Doc. 13590); and (4) TG and TTP's Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint in *Wiltz v. Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361 (R. Doc. 13591). Responses in opposition were filed by the PSC, Interior Exterior, the Banner Entities, and Certain Florida Homebuilders, (R. Docs. 14202, 14204, 14209, 14216, 14356, 14372, 14390, 14392, 14391-4), with other parties joining in these motions, including the State of Louisiana (collectively the "Respondents"). Prior to the hearing, Taishan raised certain evidentiary objections, which the Respondents addressed.[1] On June 29, 2012, over three years since the creation of MDL 2047, and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions. The Court coordinated its hearing with Judge Joseph Farina of the 11th Judicial Circuit Court of Florida, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, the Court issued its Order and Reasons denying Taishan's motions. (R. Doc. 15755). The instant motions followed on September 14, 2012.

## II.     PRESENT MOTIONS AND SUMMARY OF THE PARTIES' POSITIONS

---

[1] Although the Court did not entertain a formal hearing on the evidentiary objections, the evidence relied upon by the Court in the present Order & Reasons reflects its rulings.

-10-

In its two motions, Taishan presents substantially similar arguments in favor of certification of the appeal and staying the underlying proceedings.  The principal difference between the two motions, other than the entities on whose behalf they are brought, is the inclusion in TG's motion of a discussion of the potential applicability of the law of the transferor Circuit, namely the United States Court of Appeals for the Eleventh Circuit, to this Court's Due Process analysis.  (R. Doc. 15812-1, p. 4-7).  Both motions argue that the appropriateness of the exercise of personal jurisdiction is a controlling question of law pursuant to 28 U.S.C. § 1292(b).  Both motions further argue that a substantial ground for difference of opinion exists as to interpretation of the relevant precedents, and that an interlocutory appeal would materially advance the MDL by ensuring that judicial and party resources are not wasted on a meaningless trial.  Also for the sake of conservation of resources, both motions urge this Court to grant a stay pending any appeal it should certify.

In its opposition, the PSC argues that the Court's interpretation of the relevant precedents was correct and that no substantial ground for difference of opinion exists on the question of the standard of law in the Fifth Circuit to be applied to the exercise of personal jurisdiction over a foreign defendant.  (R. Doc. 15838).  The PSC further urges the Court to limit any stay to Taishan as distinguished from its parent entities.

### III.     LAW AND ANALYSIS

#### A.     Standard of Review

This Court has the discretion to certify its Order and Reasons for interlocutory appeal under 28 U.S.C. § 1292(b).  *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory

appeals."). Pursuant to Section 1292(b), this Court may certify an order for appeal where: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation. 28 U.S.C. § 1292(b).

Here, the Court finds, and the parties do not dispute, that its Order and Reasons denying challenges to its exercise of personal jurisdiction over Taishan involves a controlling question of law. Similarly, the Court finds that an immediate appeal would materially advance the litigation by eliminating the possibility of a meaningless trial. As to the disputed second element, the Court finds that a substantial ground exists for difference of opinion concerning the propriety of the Court's exercise of personal jurisdiction over Taishan. Although the Court in its Order and Reasons has considered and addressed the arguments Taishan now raises, the Court agrees that Taishan's position is not insubstantial. Accordingly, because the Court finds that its Order and Reasons of September 4, 2012, Record Document 15755, involves a controlling question of law as to which there is substantial ground for difference of opinion, and because the Court further finds that an immediate appeal from that Order and Reasons may materially advance the ultimate termination of this MDL, the Court certifies its Order and Reasons for immediate appeal pursuant to Title 28 of the United States Code, Section 1292(b). The Court also finds that a stay of the proceedings against Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd. pending the appeal is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the following motions are

**GRANTED**: (1) Motion Pursuant to 28 U.S.C. § 1292(b) to Certify the Court's Order & Reasons for Interlocutory Appeal and Stay Further Proceedings Pending the Appeal filed solely on behalf of Taishan Gypsum Co. Ltd. (R. Doc. 15812); and (2) Motion Pursuant to 28 U.S.C. § 1292(b) to Certify the Court's Order & Reasons for Interlocutory Appeal and Stay Further Proceedings Pending the Appeal filed on behalf of Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co. Ltd. (R. Doc. 15813).  **IT IS FURTHER ORDERED** that all proceedings against Taishan Gypsum Co. Ltd. ("TG") and Tai'an Taishan Plasterboard Co., Ltd. ("TTP") be and are hereby **STAYED** during the pendency of this appeal and until further ordered by the Court.

New Orleans, Louisiana this 16th day of October 2012.

United States District Judge

CC:   United States Court of Appeals for the Fifth Circuit