IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 09-2047 |
| | SECTION L |
| | JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL CASES | MAG. JUDGE WILKINSON |

**OPPOSITION OF DEFENDANT THE NORTH RIVER
INSURANCE COMPANY TO MOTION FOR EXPEDITED
HEARING ON THE JOINT MOTION FOR PRELIMINARY
AND FINAL APPROVAL OF THE SECOND AMENDMENT
TO THE AMENDED INEX AND KNAUF SETTLEMENTS**

Defendant The North River Insurance Company ("North River") opposes the request of Interior/Exterior Building Supply ("INEX") for an expedited hearing[1] on its motion to amend the pending INEX and Knauf class settlements.[2]  The request for an expedited hearing is part of an attempt by INEX and others to deprive North River of the right to contest the amount of damages that are being sought by the members of the proposed settlement class.  Their hope is that haste will hide the holes in their horrendous and seriously-flawed plan.

In order to understand the motives that led to the filing of the latest attempt to amend the pending Knauf and INEX settlement plans, it is appropriate to review the protracted history of the settlement proceedings.  The INEX Settlement was filed on April 25, 2011 and preliminarily approved by the Court on May 13, 2011.  The Knauf Settlement was filed on December 20, 2011 and preliminarily approved by the Court on January 10, 2012.  Notice of the settlements was given to all potential class members under terms approved by the Court.  The fairness hearings

---

[1] Doc. No. 15948-4.

-1-

on the Settlements have been set and reset several times and are now set for November 13 and 14, 2012. The Court has expressed its intention to go forward with the fairness hearings without further delay.

INEX, Knauf, and the Plaintiffs' Steering Committee ("PSC") now claim that a provision in the Knauf Settlement, which gives Knauf the option to terminate the Knauf Settlement if Knauf is not satisfied with the amount of settlements made by other Defendants in this MDL proceeding, has created an emergency which requires substantial revision to the INEX Settlement. INEX argues to the Court that (1) time is of the essence, (2) the Court should require North River and other affected parties to respond to this major change on an expedited basis and without any chance to investigate the issues surrounding the proposed amendment, and (3) the Court need not notify class members of the changes to the Knauf Settlement and the INEX Settlement in contravention of the notice requirements of Fed. R. Civ. P. 23(e). This roughshod attempt to ignore the rules applicable to class action proceedings and prejudice parties by shortcutting the procedural safeguards required by due process is shameless and unprecedented.

The presentation of the motion highlights this very unusual situation: the settlement of product-related claims in which a moving party, one of the distributers of the allegedly defective product, proposes at the last minute to amend its settlement agreement with its own settling class, not for the purpose of making its own settlement agreement more lucrative or appealing to its own putative class members, but purportedly to prevent the manufacturer of the allegedly defective product from terminating its settlement agreement with the manufacturer's settlement class, in part or in whole. The situation is unusual on its face in that INEX was prepared to go forward on its own class-wide settlement agreement without Knauf in 2011. What makes the

---

[2] Doc. No. 15948.

situation even more unusual is that Knauf has not acted as though it intends to exercise its right to terminate its own Settlement based upon the failure to reach an agreement with North River.[3] If Knauf truly intends to withdraw its request for approval of the Knauf and INEX Settlements because North River has not agreed to a settlement of the claims against North River, then Knauf should come before the Court and say so directly, rather than rely upon suggestions and maybes.

Second, if there is any time emergency, it is solely due to the litigation strategy of Knauf, INEX, and the PSC, as this timeline shows:

04/25/11: INEX files its Settlement Agreement with the PSC and requests Court approval. [Doc. No. 8268].

05/13/11: The Court preliminarily approves the INEX Class Settlement and conditionally certifies the INEX settlement class. [Doc. No. 8818].

12/20/11: Knauf files motion requesting approval of Knauf Settlement. The proposed Settlement contains provisions for Knauf to unilaterally veto the Settlement if Knauf is not subjectively satisfied with other events. North River has not agreed to settle the claims against it at this time. [Doc. No. 12061].

01/10/12: The Court preliminarily approves the Knauf Settlement and conditionally certifies the Knauf settlement class. Nothing at the hearing or in the order granting preliminary approval expressly states that Knauf will exercise its veto power over the Settlement if North River does not agree to a settlement. [Doc. No. 12138].

---

[3] One of the many issues that North River will address at length is the extremely mercurial path Knauf has tried to navigate in this proceeding. Although the motion to amend the Settlements purports to be filed on behalf of INEX, Knauf, and the PSC, neither Knauf nor the PSC is a signatory to the motion or any of the related documents. And while the motion to amend indicates that Knauf has threatened to back out of the Settlements, Knauf has been very careful not to say that it will do so. To the contrary, on Sept. 4, 2012, Knauf filed a joinder in the PSC's motion for final approval of the Knauf and INEX Settlements as well as a memorandum in support of their joinder. The memorandum identified several contingencies that had to be resolved satisfactorily to Knauf, but Knauf did not mention a settlement contribution by North River is a necessary contingency for Knauf. If Knauf was going to back out of the settlement because of the situation involving North River, it should have informed the Court at that time. This lack of candor with the Court is consistent with the approach Knauf has taken throughout the litigation. Even though it is a movant seeking approval of a class-wide settlement involving thousands of claimants, Knauf insists (incorrectly) that it has not appeared in this MDL proceeding. Knauf cannot be seeking judicial approval of a settlement worth hundreds of millions of dollars and not have subjected itself to the personal jurisdiction of the Court. It is absolutely incredible that a settlement of this magnitude can be held hostage by parties who say that they have not appeared in this case and are not a part of the proceeding.

01/24/12: INEX files the first proposed amendment to the INEX Settlement. [Doc. No. 12258].

05/31/12: Court-ordered mediation between PSC, INEX, Knauf, and North River. The Court sets a trial on whether INEX was a good faith seller for Nov. 26, 2012. [Doc. No. 14558].

09/14/12: Counsel for INEX sends proposed Second Amendment to INEX Settlement to counsel for North River and demands that North River respond by Sept. 28 as to whether North River will consent to the proposed amendment.

09/28/12: North River informs INEX that North River will not consent to the proposed second amendment to the INEX Settlement.

10/16/12: INEX files motion with Court for preliminary and final approval of proposed second amendment to the INEX Settlement and asks for an expedited hearing on the motion. [Doc. No. 15948].

INEX, Knauf, and the PSC could have filed a motion to approve the latest version of the INEX Settlement at any time since January 2012. Knauf has had its absolute veto power over the INEX and Knauf Settlements since that time. Why was the proposed second amendment not filed in January, when the first amendment to the INEX Settlement was filed? Why was it not filed after mediation proved unsuccessful? Why was it not filed after Knauf "both privately and in open Court" (INEX Memorandum in Support of Joint Motion at p. 5) threatened that it might not go forward with the Settlements?[4] Why was it not filed in early September, since the proposed second amendment to the INEX Settlement had been negotiated and agreed upon by INEX, Knauf, and the PSC?

The reason that INEX, Knauf, and the PSC have chosen not to inform the Court of their attempt to revise the proposed class settlement until one month before the fairness hearings is because the real motive behind the latest amendment is to punish North River for not settling the claims against it. INEX, Knauf, and the PSC purposefully waited to propose this amendment,

which liquidates the amount of claims against INEX as $0, $36 million, or $72 million depending on the outcome of the trial, and tries to deprive North River of the ability to contest the amount of damages sought by the PSC from North River.

The general rule in Louisiana is that a no action clause in an insurance policy that requires the insurer's consent to a settlement by the insured is valid and enforceable. *See, e.g., New England Ins. Co. v. Barnett*, 465 Fed. Appx. 302, 307-08 (5th Cir. 2012). That means that a settlement by INEX without the consent of North River will prevent the settlement from being enforceable against North River. *See also Danrik Const. v. Am. Cas. Co.,* 314 Fed. Appx. 720 (5th Cir.2009). In *Emile M. Babst Co. v. Nichols Construction Corp.*, 488 So.2d 699, 703 (La. App. 1 Cir.1986), an intermediate Louisiana appellate court held that a "no action clause has been held to be of no effect when an insurer denies coverage where there is coverage, or unjustifiably delays settlement, forcing the insured to settle separately." The court concluded that because "time was of the essence, both in the performing of subcontract . . . and in the completion of the repairs," the insured was not bound by the no action clause and could settle without the consent of the insurer. *Id.*

The only authority cited by the *Babst* court for its variance with existing Louisiana law was *Thomas W. Hooley & Sons v. Zurich General Accident and Liability Insurance Co.*, 235 La. 289, 103 So.2d 449 (La. 1958). That is not a correct statement of the *Hooley* decision. In *Hooley*, the Louisiana Supreme Court held that an insurer who wrongfully denied coverage under a liability policy could not contest a settlement made by its insured with a third-party claimant:

---

[4] See Doc. No. 15948-1, p. 5. While North River does not remember Knauf making that threat on the record in open court, Knauf has suggested informally on multiple occasions that it might decide to use its unilateral veto powers over the Settlement. Knauf has yet to formally tell the Court or North River that Knauf will do so.

> Although most of the cases involved not only (as here) an unjustified denial of liability but also a specific refusal to defend an action brought against the insured, the reasoning therein as well as the equitable reasons therefore support the conclusion that by the mere denial of the insurer to its insured of any liability under the insurance policy for the damages claimed by a third person, the insurer forfeits its right to claim the benefits of the 'no action' clause, and the insured policyholder even in the absence of litigation may compromise the claim against him without prejudicing his right to recover from the insurer the amount of a reasonable and good faith settlement made by him. Especially when as here liability to the third person is unquestioned, and after a denial of coverage by the insurer the policyholder minimizes the loss and avoids the expenses of litigation by a reasonable compromise, the insurer should be unable to claim that reimbursement to its insured of damages clearly covered by the insurance contract is barred by such compromise which was to the ultimate benefit of the insurer.

103 So.2d 449, 452-53.

In addition to misstating the holding in *Hooley*, the facts of *Babst* were rather unique and are quite unlike the situation in this case. In *Babst*, a cherrypicker operated by a subcontractor and being used to construct a dock, fell over and damaged the dock. Under the subcontract, if the subcontractor did not complete its work on time, it would not only lose the amount it was to be paid under the subcontract but would also owe liability to third parties under an indemnity provision in the subcontract. 488 So.2d at 703. In order to avoid additional loss, the subcontractor paid for the repairs and sought to recover the payment from its liability carrier. *Id.* The carrier eventually denied the payment citing, among other things, the "no action" clause in its policy. The *Babst* Court explained that "time was of the essence, both in the performing of subcontract . . . and in the completion of the repairs" and that the subcontractor "stood to lose the subcontract amount and to be held liable under the "hold harmless" clause of the subcontract entered . . . if it did not complete its work timely." *Id*.

Therefore, even if *Babst* is an accurate statement of Louisiana law – and its unexplained expansion of *Hooley* beyond the holding of the Louisiana Supreme Court makes that extremely doubtful – *Babst* means, at most, that an insured who is under time pressure and chooses to

complete the performance of a contract in order to avoid loss of income and additional damages to third parties does not lose its insurance coverage because its insurer does not approve the insured's conduct before the insured completes the contract. *Babst* has no application where (a) the purpose of the non-consensual settlement involves something other than completion of preexisting contractual obligations to third parties and (b) the time pressures are manufactured rather than genuine.

INEX does not face the same type of time pressures that existed in *Babst*. INEX reached its settlement with the PSC in April of 2011, over eighteen months ago. Under the terms of the current INEX Settlement, INEX will have no direct liability to the Plaintiffs or anyone else upon approval of the Settlement. The primary insurers of INEX will contribute money to the settlement, and the claims against North River will be assigned to the class members. By January 2012, the Court had preliminarily approved the Knauf Settlement, and INEX was aware that Knauf had the power to veto the INEX Settlement unilaterally. The current motion to amend the INEX Settlement a second time could have been filed at any time since April of 2011. The potential for a Knauf veto of the INEX Settlement has existed for more than nine months. The terms of the proposed second amendment to the INEX Settlement have been agreed to and have been reduced to writing for over a month.

INEX, Knauf, and the PSC have intentionally delayed filing the proposed Second Amendment to the INEX Settlement for the specific purpose of arguing to the Court that "time is of the essence" in hopes that the Court will approve this delayed request to amend the INEX Settlement without giving North River an adequate chance to respond and without giving notice to class members of a settlement which INEX, Knauf and the PSC think will be potentially worth $72 million. The timing of the request for approval of the proposed second amendment to the

INEX Settlement is a tragic charade that is done solely in an attempt to prejudice North River. INEX certainly has no real interest in liquidating the amount of the claims against it because, under the existing version of the INEX Settlement that has already been preliminarily approved by the Court, there will be no liability against INEX. Instead, all of the potential liability arising from INEX's sale of Chinese-manufactured drywall will be transferred to INEX's insurers. Those insurers, including North River, are the parties to contest liability, and INEX's attempt to liquidate a claim that cannot be enforced against it may well be a breach of the cooperation clause in the insurance policies issued by North River to INEX.[5]

The proposed second amendment to the INEX Settlement raises several significant and complex questions, including the following:[6]

1. Can INEX agree to a liquidation of the claims against it when Knauf and the PSC have already agreed to a settlement that relieves INEX of all liability?

2. If so, will the settlement be binding and enforceable against North River, who has not agreed to the settlement?

3. Can the Court approve a settlement which its proponents believe is potentially worth $72 million without requiring notice to all members of the INEX Class and the Knauf Class?

4. Should the Court approve an amendment to a class settlement that has been pending for eighteen months when the amendment will delay resolution of the class claims for another six months or more because of the requirement of notice to class members under Fed. R. Civ. P. 23(e)?

---

[5] Among the issues North River will address in its substantive response will be whether INEX, who has no liability under the INEX Settlement, is a proper party to liquidate a claim that cannot be enforced against INEX and, if so, whether that conduct voids coverage under the INEX policies because of the breach of the cooperation clause by INEX.

5. Will a liquidation of the claims against INEX, especially when combined with the pending assignment to Knauf of the claims against INEX and INEX's claims against North River mean that the trial scheduled for November 26, 2012 becomes ineffective, meaningless, or constitutionally impermissible?

The gravity of these issues is immense, as is their potential effect on the pending class settlements. They should not be considered by the Court in haste, and without an opportunity for the affected parties to analyze and brief the issues for the Court's assistance – especially when the motion that gives rise to the issues could have been filed any time in the preceding nine months of this year or any time last year. That is not the proper way to resolve class-wide claims.

It is apparent that what INEX, Knauf, and the PSC are trying to do is to fabricate an argument that "time is of the essence" in hopes that the upcoming fairness hearing will force the Court to avoid any close scrutiny of an artificial settlement that has been put before the Court as a devious tool whose purpose is to relieve INEX (who is already a party to a class settlement that will place no liability against INEX) of its contractual obligations and burden North River with a settlement to which North River has not consented. Because of the convoluted and insidious nature of the proposed second amendment to the INEX Settlement, the motion to approve should be based upon full, open, and mature consideration, and not upon hasty, incomplete, and prejudicial proceedings.

For these reasons, North River opposes the request by INEX for an expedited hearing to its motion to amend the pending INEX and Knauf class settlements.

---

[6] North River does not offer these as an exhaustive list of the issues that will need to be addressed in a substantive response to the motion to approve the proposed second amendment to the INEX Settlement. These are simply examples of the types of important and complex issues raised by the motion to approve.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP


      */s Eric B. Berger*
    BRIAN S. MARTIN, ESQ.
    KEVIN RISLEY, ESQ.
    RODRIGO "DIEGO" GARCIA, JR., ESQ.
    One Riverway, Suite 1600
    Houston, Texas 77056
    Phone: (713) 403-8206
    Fax:  (713) 403-8299
    bmartin@thompsoncoe.com

    LOBMAN CARNAHAN BATT ANGELLE & NADER

    SIDNEY J. ANGELLE, ESQ.
    La. Bar No. 1002
    ERIC B. BERGER, ESQ.
    La. Bar No. 26196
    400 Poydras Street, Suite 2300
    New Orleans, Louisiana 70130
    Phone: (504) 586-9292
    Fax:    (504) 586-1290
    sja@lcba-law.com
    ebb@lcba-law.com

    ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on October 18, 2012.

                                                  _____*/s Eric B. Berger*_____
                                                    ERIC B. BERGER