**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON MAG. JUDGE WILKINSON |
| *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al* Case No. 11-cv-080 (E.D. La.) | |
| *Almeroth, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al* Case No. 12-cv-0498 (E.D. La.) | |
| *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D.La.) | |
| *Germano et al. v. Taishan Gypsum Co., Ltd. et al.* Case No. 2:09-cv-06687 (E.D. La.) | |
| *Gross, et al. v. Knauf Gips, KG, et al* Case No. 09-cv-6690 (E.D. La.) | |
| *Haya, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd, et al* Case No. 11-cv-1077 (E.D. La.) | |
| *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al* Case No. 10-cv-361 (E.D. La.) | |

**AMENDED PROPOSED CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER: (1) PRELIMINARILY APPROVING EACH OF THE THREE SETTLEMENT AGREEMENTS (NATIONWIDE INSUREDS SETTLEMENT AGREEMENT, PORTER-BLAINE/VENTURE SUPPLY SETTLEMENT AGREEMENT, TOBIN TRADING AND INSTALLERS SETTLEMENT AGREEMENT) IN MDL NO. 2047 REGARDING CLAIMS AGAINST PARTICIPATING DEFENDANTS INCLUDING BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS RELATING TO VIRGINIA AND CERTAIN OTHER REMAINING CLAIMS; (2) CONDITIONALLY CERTIFYING EACH OF THE THREE SETTLEMENT CLASSES; (3) APPROVING THE FORM NOTICE TO CLASS MEMBERS; (4) SCHEDULING A JOINT FAIRNESS HEARING; AND (5) STAYING**

**CLAIMS AGAINST PARTICIPATING DEFENDANTS INCLUDING BUILDERS,
INSTALLERS, SUPPLIERS, AND PARTICIPATING INSURERS**

I.      INTRODUCTION ............................................................................................... 3

   A.   Nationwide Insureds Settlement Agreement ................................................. 4

   B.   Porter-Blaine/Venture Supply Settlement Agreement .................................. 9

   C.   Tobin Trading; Builders Plaster & Drywall, LLC; JMM Drywall Co., LLC; and
        Participating Insurers Settlement Agreement ............................................ 13

   D.   Each of the Settlement Agreements is in the Best Interests of Class Members ............... 18

II.     BACKGROUND ............................................................................................... 19

   A.   The Chinese Drywall Litigation .................................................................. 19

   B.   The Settlement Agreements Relating to Virginia and Certain Other Remaining
        Claims ........................................................................................................ 23

   C.   The Defendants ........................................................................................... 24

   D.   Reasons for the Settlements ........................................................................ 26

III.    ARGUMENT .................................................................................................... 28

   A.   Each of the Three Settlement Agreements Relating to Virginia and Certain Other
        Remaining Claims Is In the Best Interest of the Classes ............................ 28

   B.   The Requirements of Rule 23 Have Been Met For Conditional Certification of
        Each of the Classes .................................................................................... 30

      1.    Numerosity ........................................................................................ 31

      2.    Commonality ..................................................................................... 32

      3.    Typicality .......................................................................................... 33

      4.    Adequacy of Representation .............................................................. 33

      5.    Common Questions of Law and Fact Predominate ............................ 34

   C.   The Proposed Form and Method of Class Notice Is Adequate and Satisfies the
        Requirement of Rule 23 ............................................................................. 35

   D.   The Court Should Preliminarily Approve Each of the Settlement Agreements and
        Conditionally Certify Each of the Classes and Issue the Requested Stays ...................... 38

   E.   Proposed Schedule ..................................................................................... 41

IV.     CONCLUSION ................................................................................................. 41

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | **MDL NO. 2047**<br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:**<br><br>*Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al*<br>**Case No. 11-cv-080 (E.D. La.)**<br><br>*Almeroth, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al*<br>**Case No. 12-cv-0498 (E.D. La.)**<br><br>*Amato, et al. v. Liberty Mutual Insurance Company*, **Case No. 2:10-cv-00932 (E.D.La.)**<br><br>*Germano et al. v. Taishan Gypsum Co., Ltd. et al.*<br>**Case No. 2:09-cv-06687 (E.D. La.)**<br><br>*Gross, et al. v. Knauf Gips, KG, et al*<br>**Case No. 09-cv-6690 (E.D. La.)**<br><br>*Haya, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. et al.*, **Case No. 11-1077 (E.D.La.)**<br><br>*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al*<br>**Case No. 10-cv-361 (E.D. La.)** | **JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

**AMENDED PROPOSED CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER: (1) PRELIMINARILY APPROVING EACH OF THE THREE SETTLEMENT AGREEMENTS (NATIONWIDE INSUREDS SETTLEMENT AGREEMENT, PORTER-BLAINE/VENTURE SUPPLY SETTLEMENT AGREEMENT, TOBIN TRADING AND INSTALLERS SETTLEMENT AGREEMENT) IN MDL NO. 2047 REGARDING CLAIMS AGAINST PARTICIPATING DEFENDANTS INCLUDING BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS RELATING TO VIRGINIA AND CERTAIN OTHER REMAINING CLAIMS; (2) CONDITIONALLY CERTIFYING EACH OF THE THREE SETTLEMENT CLASSES; (3) APPROVING THE FORM NOTICE TO CLASS MEMBERS; (4) SCHEDULING A JOINT FAIRNESS HEARING; AND (5) STAYING CLAIMS AGAINST PARTICIPATING DEFENDANTS INCLUDING BUILDERS, INSTALLERS, SUPPLIERS, AND PARTICIPATING INSURERS**

1

This Memorandum of Law is submitted by proposed Class Counsel in support of their Motion for Preliminary Approval of each of the three settlement agreements (Nationwide Insured's Settlement Agreement, Porter-Blaine/Venture Supply Settlement Agreement, and Tobin Trading and Installers Settlement Agreement) in MDL 2047 Regarding Claims Involving Participating Defendants Including Builders, Installers, Suppliers and Participating Insurers *Relating to Virginia and Certain Other Remaining Claims* (the "Settlement Agreements")[1] and conditionally certifying a Settlement Class for each of the Settlement Agreements pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e). The Settlement Agreements represent an opportunity to resolve many of the claims against the Settling Defendants and Insurers, and claims that were not resolved by the proposed "Global Settlement" Agreement.  In sum, there are three Settling Insurers and approximately forty (40) Settling Defendants who are participating in these three Settlement Agreements.  These Settling Defendants are identified in Ex. A at "Exhibit 1," Ex. B at "§1.1.2," and Ex. C at "Exhibit 1."

The three Settlement Agreements at issue are listed below and attached as Exhibits A, B, and C:

(1) Settlement Agreement in MDL No. 2047 Regarding Chinese Drywall Claims Against Non-Manufacturing Defendants Insured by Nationwide (hereinafter "Nationwide Insureds Settlement Agreement");

(2) Settlement Agreement in MDL No. 2047 Regarding Chinese Drywall Claims Against Porter-Blaine Corp. and Venture Supply Inc. and Certain of their Insurers; (hereinafter "Porter-Blaine/Venture Supply Settlement Agreement"); and

---

[1] The Settlement Agreements are attached hereto as Ex. A, B, and C. Capitalized terms used in this Memorandum of Law have the same meaning as the same terms used in the Settlement Agreements. The Participating Defendants and Participating Insurers are identified in each Settlement Agreement.

(3) Settlement Agreement in MDL No. 2047 Regarding Chinese Drywall Claims Against Tobin Trading Inc.; Builders Plaster & Drywall, LLC; JMM Drywall Co., LLC; and Participating Insurers (hereinafter "Tobin Trading and Installers Settlement Agreement").

The three Settlement Agreements listed above are referred to collectively herein as "Settlement Agreements Relating to Virginia and Certain Other Remaining Claims."[2]

Class Counsel seek entry of a Preliminary Approval Order[3] finding preliminarily that: (1) each of the Settlement Agreements is fair, reasonable and adequate; (2) the requirements for conditionally certifying each of the Settlement Classes under Rule 23(a) and Rule 23(b)(3) have been met; and (3) Class Members shall be notified of the terms of the Settlement Agreements and of their rights in connection therewith.

In addition, Class Counsel respectfully request that the Court: (1) approve the form of Class notice; (2) schedule a joint fairness hearing to determine whether each of the Settlement Agreements should be given final approval (Joint Fairness Hearing); (3) establish dates for the dissemination of the Class notice, opt-outs, withdrawals and objections to the settlement and other relevant deadlines; and (4) stay all claims against Participating Defendants and Participating Insurers, identified herein.

## I.   INTRODUCTION

The Settlement Agreements are the byproduct of months of negotiations and are designed to compensate persons and entities in the United States, but primarily in Virginia, for claims arising from or related to Chinese Drywall (CDW) purchased from or supplied, marketed, distributed, installed, used, sold, delivered by or in any way alleged to be within the legal responsibility of

---

[2] These settlements are to be distinguished from the proposed "Global Settlement" which excluded claims arising in Virginia and certain other claims.
[3] The proposed Preliminary Approval Order is attached hereto as Ex. D.

any Settling Defendants.  Included in the negotiations was a mediation on Tuesday, March 13, 2012 in Norfolk, Virginia, involving the parties to each of the three settlements, that occurred under the auspices of Judge Fallon and in which mediator, Richard Kingrea, presided. The Settlement Agreements will provide to Class Members a total of 15.7 million dollars that is to be allocated in accordance with a procedure to be established by the Court upon reviewing the recommendations of an Allocation Committee.

Class Counsel respectfully request approval of the three separate Settlement Agreements.

A.    **Nationwide Insureds Settlement Agreement**

Nationwide-related insurance companies[4] issued or are alleged to have issued policies of primary and excess liability insurance to over thirty Participating Defendants (hereinafter "Nationwide Participating Defendants").[5] Nationwide Participating Defendants are construction and real estate-related entities that are alleged to have participated in the design, construction or sale of homes that Plaintiffs allege contain Chinese Drywall.

Under the terms of the Nationwide Insureds Settlement Agreement, the Nationwide Participating Defendants deny all liability or wrongdoing and Nationwide denies, in any event, that it has liability under its insurance policies with respect to the Plaintiffs' claims.[6] Indeed, Nationwide is engaged in insurance coverage litigation with more than one of these insureds, and it has prevailed on the "pollution exclusion" issue at the trial level. *See Nationwide Mut. Ins. Co. v. The Overlook, LLC*, 785 F. Supp. 2d 502 (E.D. Va. 2011), appeal pending. Notwithstanding these litigation results, the Agreement provides that Nationwide will pay to class members ten

---

[4] Nationwide Mutual Insurance Co., Nationwide Mutual Fire Insurance Co., Nationwide Property & Casualty Insurance Co. (collectively, "Nationwide").
[5] A list of non-manufacturing Participating Defendants insured by Nationwide is attached to Ex. A at "Exhibit 1."
[6] Ex. A at § 18.2 – 18.3.

million dollars ($10,000,000).[7] Notice payment will be advanced by Nationwide (as discussed below)[8]; the remainder of the Settlement Payment shall be paid as a lump sum.[9] The payment will be allocated in accordance with a procedure to be established by the Court upon reviewing the recommendations of an Allocation Committee.[10] Nationwide Participating Defendants will not be involved in the claim process or allocation, nor will they be liable for any costs or fees associated with the allocation process.

The Nationwide Insureds Settlement Class will include:

all persons or entities (except for Nationwide Participating Defendants and Participating Insurers) together with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, involving Affected Property and arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Nationwide Participating Defendant. The Overlook, LLC's and CG Stony Point Townhomes, LLC's ("CG Stony Point") status as Nationwide Participating Defendants does not bar them from asserting class membership in connection with their assigned claims concerning Affected Properties they remediated before August 13, 2012.[11]

The Nationwide Insureds Settlement Agreement expressly preserves claims by Members of the Class against Taishan-related entities ("Taishan"), manufacturers, claims against Non-Participating Defendants, Non-Participating Insurers and claims against Nationwide Participating Defendants to the extent of insurance by Non-Participating Insurers.[12] (The Nationwide Participating Defendants are being released except to the extent that they have general liability insurance not issued by Nationwide of a type which may provide insurance coverage for an Affected Property.)[13] The Nationwide Participating Defendants (excluding remediating builder

---

[7] Ex. A at § 4.1.
[8] *Id.* at §4.1.1.
[9] *Id.* at §4.1.
[10] *Id.* at § 17.1.
[11] *Id.* at § 1.1.1.
[12] *Id.* at § 5.5.
[13] *Id.* at § 1.1.2.1; 1.20; 5.1; 5.5.1.

Defendants, The Overlook, LLC and CG Stony Point Townhomes LLC) assign to the Class any and all claims that they may have against Non-Participating Defendants and Non-Participating Insurers (except with respect to reinsurance) relating to CDW in connection with the Affected Properties.[14]

In exchange for the payment of $10,000,000 to the Class from Nationwide, Class Plaintiffs release all claims arising from or related to CDW against Nationwide Participating Defendants and Nationwide Participating Insurers and any potentially liable party to the extent that such party was or claims to have been insured by Nationwide Participating Insurers; this release includes claims against all Nationwide Participating Defendants and Nationwide Participating Insurers listed in the attachment to the agreement, except to the extent that any Nationwide Participating Defendant has relevant insurance not issued by Nationwide.[15] Additionally, the Nationwide Insureds Settlement releases from liability all Nationwide-related entities alleged to have provided insurance coverage to any party potentially liable for claims arising from or related to CDW.[16]  The Nationwide Participating Defendants and Participating Insurers are released for claims related to all Affected Properties within the Commonwealth of Virginia.[17]  Further, the Nationwide Participating Defendants agree not to sue any parties listed in Ex. A at "Exhibit 1."[18]

Class Counsel request that, upon preliminary approval of the settlement, the Court stay all other pending lawsuits against the Nationwide Participating Defendants in federal and state courts.[19] However, pursuant to the Settlement Agreement, this stay should not pertain to class

---

[14] *Id.* at § 6.1.
[15] *Id.* at § 5.1.
[16] Nationwide Mutual Insurance Co., Nationwide Mutual Fire Insurance Co., Nationwide Property & Casualty Insurance Co.
[17] *Id.* at § 1.20.
[18] Ex. A at § 5.3.1.
[19] *Id.* at § 7.2.2.

members' claims against Taishan, and any Non-Participating Defendant against whom class members have brought suit.[20] Upon final approval of the settlement, all Class members will be forever barred and enjoined from asserting any of the released claims against the Nationwide Participating Insurers and Nationwide Participating Defendants.[21]

The Nationwide Participating Defendants have reserved the right to withdraw from the Nationwide Settlement Agreement if there are opt-outs that unfavorably affect the Nationwide Participating Defendants; the Court does not certify a settlement class; the Court does not hold a Fairness Hearing; or the Court does not issue a stay or bar the order.[22]

The Nationwide Insured Settlement Agreement provides that individual notice shall be sent by direct mail to Class Members with claims in CDW-Related Actions and who are identifiable through Plaintiff Profile Forms and other available records, and their counsel.[23] The Settlement further provides for notice to be published in national publications, and, as appropriate, regional and local publications. In this manner, each Class Member or her counsel will be provided proper notice of the Nationwide Insured Settlement.[24]

Nationwide Insurance will advance from the settlement payment one-third (1/3) of the cost of notice. The parties agree that the cost of notice will not exceed $150,000, the Nationwide Insurance portion of which will not exceed $50,000.[25]

Attorney's fees and legal costs will be obtained from the fund established by Nationwide's ten million dollar settlement payment. PSC, Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members (the "Petitioning Attorneys")

---

[20] *Id.* at § 1.13; 5.5.1; 7.2.2.
[21] *Id.* at § 11.1, 12.1.
[22] *Id.* at § 9.3.
[23] *Id.* at § 8.1.
[24] *Id.*
[25] *Id.* at § 4.1.1

shall be entitled to petition the Court for attorney's fees totaling, in the aggregate, up to 32% of

the Settlement Funds, with no more than 15% of the Settlement Funds to be allocated to common

benefit fees, and reimbursement of reasonable expenses, excluding the cost of notice. The parties

have agreed that Nationwide Participating Defendants will have no responsibility for payment of

any fees or costs incurred by plaintiffs, class members, their counsel, or common benefit

counsel.[26]

Class Counsel propose that Steven and Elizabeth Heischober represent the Nationwide

Insurance Settlement Class. Steven and Elizabeth Heischober have brought claims against

Nationwide Insureds (Participating Defendants Peak Building Corporation and Work Company,

Drywall and Plaster), among other defendants, related to Chinese Drywall.  Steven and Elizabeth

Heischober purchased a Chinese Drywall duplex in Virginia Beach, VA in Nov. 2006.[27] In

August 2009, the Heischobers moved out of the duplex after discovering that it contained

Chinese Drywall. Before discovering that the home contained Chinese Drywall, the Heischobers

experienced problems with the house including: having to replace their transformer only ten

months after moving into their home; experiencing problems with HVAC units and coils; several

electric failures; and corroded appliances.[28] The Heischobers have proven damages at the

*Germano* trial of $380,886.27, for the cost of remediation, non-recurring alternative living costs,

recurring alternative living costs, loss of personal property, repair costs, and additional costs for

their mortgage deferral. The Heischobers also claim damages for loss of use and enjoyment of

their home.[29]

---

[26] *Id*. at § 17.8.
[27] Findings of Fact & Conclusions of Law, *In re Chinese Manufactured Drywall Products Liability Litigation*, at 101-105, MDL No. 2047 (filed April 8, 2010).
[28] *Id*.
[29] *Id.*

### B.      Porter-Blaine/Venture Supply Settlement Agreement

Hanover-related insurance entities[30] provided liability insurance coverage to Participating

Defendants, Venture Supply, Inc. and The Porter-Blaine Corporation (hereinafter "Porter-

Blaine/Venture Participating Defendants").[31]  Porter-Blaine/Venture Participating Defendants are

suppliers and installers of Chinese Drywall.

Under the terms of the Porter-Blaine/Venture Supply Settlement Agreement, the Porter-

Blaine/Venture Participating Defendants deny all liability or wrongdoing.[32]  Hanover Insurance

will pay to class members three million dollars ($3,000,000).[33] Any necessary notice payment

will be advanced by Hanover (as discussed below); the remainder of the Settlement Payment

shall be paid as a lump sum.[34] The payment will be allocated in accordance with a procedure to

be established by the Court upon reviewing the recommendations of an Allocation Committee.[35]

Porter-Blaine/Venture Participating Defendants will not be involved in the claim process or

allocation, nor will they be liable for any costs or fees associated with the allocation process.[36]

The Porter-Blaine/Venture Supply Settlement Class will include:

all persons or entities (except for Porter-Blaine, Venture Supply, Citizens Insurance
Company of America and Hanover Insurance Company) together with their heirs,
representatives, attorneys, executors, administrators, executives, subsequent purchasers,
residents, guests, tenants, lenders, successors and assigns, with claims, known or
unknown, involving Affected Property and arising from or related to actual or alleged
Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used,
sold or in any way alleged to be within the legal responsibility of Porter-Blaine/Venture
Supply, Citizens Insurance Company of America or Hanover Insurance Company.[37]

---

[30] Citizens Insurance Co. of America and Hanover Insurance Company.
[31]   *See* Ex. B at "§1.1.2," identifying Porter-Blaine/Venture Participating Defendants.
[32] *Id.* at § 17.2 – 17.3.
[33] *Id.* at § 4.1.
[34] *Id.*
[35] *Id.* at § 16.1.
[36] *Id.* at  § 17.
[37] *Id.* at §1.1.1.

The Settlement Agreement expressly preserves claims by Members of the Class against Taishan-related entities ("Taishan"), manufacturers, claims against Non-Participating Defendants, and Non-Participating Insurers.[38] Additionally, the Settlement Agreement excludes the claims of Dragas Homes and its related entities arising from or related to CDW purchased from or supplied, marketed, distributed, installed, used, sold, delivered by or in any way alleged to be within the legal responsibility of any Porter-Blaine/Venture Participating Defendants.[39]

The Porter-Blaine/Venture Participating Defendants assign to the Class any and all claims that they may have against Non-Participating Defendants and Non-Participating Insurers (except with respect to reinsurance) relating to CDW in connection with the Affected Properties, except that (a) Porter-Blaine/Venture Participating Defendants reserve rights they have against any person or entity for claims arising from or related to homes constructed by Dragas Management Corp. and (b) Porter-Blaine/Venture Participating Defendants reserve rights they have against any person or entity for damage, harm, injury or loss to the business of Porter-Blaine/Venture Participating Defendants (as opposed to damage to Affected Properties).[40]

In exchange for the payment of $3,000,000 to the Class from Hanover, Class Plaintiffs release all claims arising from or related to CDW against Porter-Blaine/Venture Participating Defendants and any potentially liable party to the extent that such party was or claims to have been insured by Hanover; this release includes claims against all Porter-Blaine/Venture Participating Defendants listed in the Agreement at §1.1.2.[41] Additionally, the Porter-Blaine/Venture Supply Settlement releases from liability all Hanover-related entities alleged to have provided insurance coverage to any party potentially liable for claims arising from or

---

[38] *Id.* at 5.5.
[39] *Id.* at § 1.1.1.1.
[40] *Id.* at § 6.
[41] *Id.* at § 5.1.

related to CDW in the United States.[42] The Porter-Blaine/Venture Participating Defendants and Participating Insurers are released for claims related to all Affected Properties within the United States, limited to those constructed with Porter-Blaine or Venture Supply Chinese Drywall products.[43] Further, the Porter-Blaine/Venture Participating Defendants agree not to sue any party listed in Ex. B at §1.12.[44]

Class Counsel request that, upon preliminary approval of the settlement, the Court stay all other pending lawsuits against the Porter-Blaine/Venture Participating Defendants in federal and state courts. However, pursuant to the Settlement Agreement, this stay should not pertain to class members' claims against Taishan, and any non-settling defendant or non-settling insurer against whom class members have brought suit.[45] Upon final approval of the settlement, all Class members will be forever barred and enjoined from asserting any of the released claims against the Porter-Blaine/Venture Participating Defendants.[46] The Porter-Blaine/Venture Participating Defendants have reserved the right to withdraw from the Settlement Agreement if there are opt-outs that affect the Defendants; the Court does not certify a settlement class; or the Court does not issue a stay or bar the order.[47]

The Porter-Blaine/Venture Supply Settlement Agreement provides that individual notice shall be sent by direct mail to Class Members with claims in CDW-Related Actions and who are identifiable through Plaintiff Profile Forms and other available records, and their counsel. The Porter-Blaine/Venture Supply Settlement further provides for notice to be published in national

---

[42] The Hanover Insurance Group, Inc., Citizens Insurance Co. of America, The Hanover Insurance Company, Citizens Insurance, and Hanover Insurance. Ex. B at §1.20; 5.1.
[43] Ex. B at § 1.5; 5.1.
[44] *Id.* at § 5.4.1.
[45] *Id.* at § 7.3.
[46] *Id.* at § 11.1.1; 12.1; 13.1.
[47] *Id*. at § 9.3.

publications, and, as appropriate, regional and local publication.[48] In this manner, each Class Member or her counsel will be provided proper notice of the Porter-Blaine/Venture Supply Settlement.

Hanover will advance from the settlement payment one-third (1/3) of the cost of notice. The parties agree that the cost of notice will not exceed $150,000, the Hanover portion of which will not exceed $50,000.[49]

Attorney's fees and legal costs will be obtained from the fund established by Hanover's three million dollar settlement payment. The PSC, Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members (the "Petitioning Attorneys") shall be entitled to petition the Court for attorney's fees totaling in the aggregate up to 32% of the Settlement Funds, with no more than 15% of the Settlement Funds to be allocated to common benefit fees, and reimbursement of reasonable expenses, excluding the cost of notice.[50] The parties have agreed that Porter-Blaine/Venture Participating Defendants will have no responsibility for payment of any fees or costs incurred by plaintiffs, class members, their counsel, or common benefit counsel.[51]

Class Counsel and the PSC propose that William and Deborah Morgan represent the Porter-Blaine/Venture Supply Settlement Class. William and Deborah Morgan have brought claims against Participating Defendants (Porter-Blaine and Venture Supply) among other defendants, related to Chinese Drywall. William and Deborah Morgan purchased a Chinese Drywall home in Williamsburg, VA in July 2006.[52] In June 2009, the Morgans had to move out

---

[48] *Id.* at § 8.1.
[49] *Id.* at § 4.1.1.
[50] *Id.* at § 16.8.
[51] *Id.* at § 16.6 – 16.7.
[52] Findings of Fact & Conclusions of Law, *In re Chinese Manufactured Drywall Products Liability Litigation*, at 69-75, MDL No. 2047 (filed April 8, 2010).

of their home after discovering that it contained Chinese Drywall. Before discovering that the

home contained Chinese Drywall, the Morgans experienced problems with the house including:

failure of the hot water heater two years after moving in, failed electrical outlets, an electrical

short in the HVAC system, failed smoke detectors and failed appliances. After the Morgans left

their home, they moved into a rental home; unable to afford their mortgage payments, the

Morgans filed for bankruptcy protection. The Morgans have proven damages at the *Germano*

trial of $381,613.29 for the cost of remediation, alternative living costs, loss of personal

property, and repair costs. The Morgans also claim damages for loss of use and enjoyment of

their home.[53]

### C.    Tobin Trading; Builders Plaster & Drywall, LLC; JMM Drywall Co., LLC; and Participating Insurers Settlement Agreement

State Farm-related insurance entities[54] provided liability insurance coverage to Tobin

Trading, Inc., Builders Plaster & Drywall, LLC, and JMM Drywall Co., LLC (hereinafter "Tobin

Trading and Installers Participating Defendants"), who participated in the building of homes that

were constructed with Chinese Drywall.[55]

Under the terms of the Tobin Trading and Installers Settlement Agreement, the Tobin

Trading and Installers Participating Defendants deny all liability or wrongdoing.[56]  State Farm

will pay to class members 2.7 million dollars ($2,700,000).[57] This payment comprises

$1,700,000 on behalf of State Farm insured installers, Builders Plaster & Drywall, LLC and

JMM Drywall Co., LLC ("Installers Settlement Payment") and $1,000,000 on behalf of Tobin

Trading, Inc. and Phillip Perry ("Tobin Trading Settlement Payment").[58] Any necessary notice

---

[53] *Id.*
[54] State Farm Florida Insurance Company and State Farm Fire and Casualty Company
[55]  Participating Defendants are identified in Ex. C at "Exhibit 1."
[56] *Id.* at § 18.2 – 18.3.
[57] *Id.* at §4.1.
[58] *Id.*

payment will be advanced by State Farm (as discussed below); the remainder of the Settlement

Payment shall be paid as a lump sum. The payment will be allocated in accordance with a

procedure to be established by the Court upon reviewing the recommendations of an Allocation

Committee.[59] All claims that arise from the conduct of Builders Plaster & Drywall, LLC and

JMM Drywall Co., LLC will be paid from the $1,700,000 Installers Settlement Payment; all

claims that arise from the conduct of Tobin Trading will be paid from the $1,000,000 Tobin

Trading Settlement Payment.[60] Tobin Trading and Installers Participating Defendants will not be

involved in the claim process or allocation, nor will they be liable for any costs or fees associated

with the allocation process.[61]

> The Tobin Trading and Installers Settlement Class will include:
>
> all persons or entities (except for Tobin Trading and Installers Participating Defendants
> and Participating Insurers) together with their heirs, representatives, attorneys, executors,
> administrators, executives, subsequent purchasers, residents, guests, tenants, lenders,
> successors and assigns, with claims, known or unknown, involving Affected Property and
> arising from or related to actual or alleged Chinese Drywall purchased, imported,
> supplied, distributed, marketed, installed, used, sold or in any way alleged to be within
> the legal responsibility of any Tobin Trading or any Installers Participating Defendant.[62]

The Settlement Agreement expressly preserves claims by members of the Class against

Taishan-related entities ("Taishan"), manufacturers, and claims against Non-Participating

Defendants.[63] The Tobin Trading and Installers Participating Defendants assign to the Class any

and all claims that they may have against Non-Participating Defendants and Non-Participating

Insurers (except with respect to reinsurance) relating to CDW in connection with the Affected

Properties; except that, Installer Participating Defendant, JMM Drywall Co., LLC and

---

[59] *Id.* at §17.1.
[60] *Id.*
[61] *Id.* at §17.2.
[62] *Id.* at §1.1.1.
[63] *Id.* at 5.5. The Tobin Trading and Installers Settlement Agreement reserves the claim of Installer Participating Defendant JMM Drywall Co., LLC against Erie Insurance Co. *See* Ex. C, §6.1.

Participating Insurers retain any and all claims they may have against Erie Insurance Company and/or Erie Insurance Exchange.[64]

In exchange for the payment of $2,700,000 to the Class from State Farm, Class Plaintiffs release all claims arising from or related to CDW anywhere in the United States against Tobin Trading and Installers Participating Defendants[65]; this release includes claims against all Tobin Trading and Installers Participating Defendants listed in the attachment to the agreement.[66] Additionally, the Tobin Trading and Installers Settlement releases from liability all Tobin Trading and Installers Participating Insurers alleged to have provided insurance coverage to any Tobin Trading and Installers Participating Defendant arising from or related to CDW in the United States.[67]  Further, the Tobin Trading and Installers Participating Defendants agree not to sue any party listed in Ex. C at "Exhibit 1."[68]

Class Counsel and the PSC request that, upon preliminary approval of the settlement, the Court stay all other pending lawsuits against the Tobin Trading and Installers Participating Defendants in federal and state courts. However, pursuant to the Settlement Agreement, this stay should not pertain to class members' claims against Taishan, and any non-settling defendant or non-settling insurer against whom class members have brought suit.[69] Additionally, this stay should not pertain to *State Farm Fire and Casualty Company v. Tobin Trading, Inc., et al.*, CL 12-2185 (Virginia Beach Circuit Court).[70] Upon final approval of the settlement, all Class members will be forever barred and enjoined from asserting any of the released claims against the Tobin Trading and Installers Participating Defendants. The Tobin Trading and Installers

---

[64] *Id.* at § 6.1.
[65] *Id.* at §5.1.
[66] *Id.* at §5.1; 5.5.1; "Exhibit 1".
[67] *Id.* at §5.1; "Exhibit 2".
[68] *Id.* at §5.4.1.
[69] *Id.* at §1.13; 5.5.1; 7.2.2.
[70] *Id.* at 7.2.2. State Farm has a claim pending in Virginia Beach Circuit Court against Tobin Trading.

Participating Defendants and Participating Insurers have reserved the right to withdraw from the Settlement Agreement if there are opt-outs that affect the Tobin Trading and Installers Participating Defendants; the Court does not certify a settlement class; or the Court does not issue a stay or bar the order.[71]

The Tobin Trading and Installers Settlement Agreement provides that individual notice shall be sent by direct mail to Class Members with claims in CDW-Related Actions and who are identifiable through Plaintiff Profile Forms and other available records, and their counsel. The Tobin Trading and Installers Settlement further provides for notice to be published in national publications, and, as appropriate, regional and local publication.[72] In this manner, each Class Member or her counsel will be provided proper notice of the Tobin Trading and Installers Settlement.

State Farm will advance from the Tobin Trading and Installers Settlement payment one-third (1/3) of the cost of notice. The parties agree that the cost of notice will not exceed $150,000, the Tobin Trading and Installers portion of which will not exceed $50,000.[73] The cost of notice will be split evenly between the Installers Settlement Payment and the Tobin Trading Settlement Payment: $25,000 from the Installers Settlement Payment and $25,000 from the Tobin Trading Settlement Payment.[74]

Attorney's fees and legal costs will be obtained from the funds established by State Farm's $2.7 million settlement payment. The PSC, Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members (the "Petitioning Attorneys") shall be entitled to petition the Court for attorney's fees totaling in the aggregate up to 32% of the

---

[71] *Id.* at §9.3.
[72] *Id.* at §8.1.
[73] *Id.* at §4.1.1.
[74] *Id.* at §4.1.1

Settlement Funds, with no more than 15% of the Settlement Funds to be allocated to common benefit fees, and reimbursement of reasonable expenses, excluding the cost of notice.[75]  The parties have agreed that Tobin Trading and Installers Participating Defendants will have no responsibility for payment of any fees or costs incurred by plaintiffs, class members, their counsel, or common benefit counsel.[76]

Class Counsel propose that Robert and Lisa Orlando, and Jerry and Inez Baldwin represent the Tobin Trading and Installers Settlement Class.[77]  Robert and Lisa Orlando have brought claims against Participating Defendants (Tobin Trading, Inc. and Phillip Perry) among other defendants related to Chinese Drywall.  Robert and Lisa Orlando purchased a Chinese Drywall home in Williamsburg, VA in June 2009. After living in the home for four weeks, the Orlandos received a letter from the builder saying that they may have 172 sheets of Chinese Drywall in their home. The Orlandos moved out after only living in the house for seven months after experiencing problems with their home, including: persistent odor, failed water heater, damaged HVAC unit, and failed air conditioner. The Orlandos have proven damages at the *Germano* trial of $307,905.44 for the cost of remediation, alternative living, personal property, and repairs. The Orlandos also claim damages for loss of use and enjoyment of their home.[78]

Jerry and Inez Baldwin have brought claims against Participating Defendant (JMM Drywall Co., LLC) among other defendants related to Chinese Drywall.  Jerry and Inez Baldwin purchased a Chinese Drywall home in Williamsburg, VA in November 2006.[79] The Baldwins still live in their home because they cannot afford to move out and pay both mortgage and rent

---

[75] *Id.* at §17.8.
[76] *Id.* at §17.6 – 17.7.
[77] Findings of Fact & Conclusions of Law, *In re Chinese Manufactured Drywall Products Liability Litigation*, at 85-89, MDL No. 2047 (filed April 8, 2010).
[78] *Id.*
[79] Findings of Fact & Conclusions of Law, *In re Chinese Manufactured Drywall Products Liability Litigation*, at 75-79, MDL No. 2047 (filed April 8, 2010).

payments. The Baldwins have experienced problems with their home, including: numerous electrical failures, failed HVAC system and failed appliances. The Baldwins have proven damages at the *Germano* trial of $341,699.11 for the cost of remediation, alternative living, personal property, and repairs. The Baldwins also claim damages for loss of use and enjoyment of their home.[80]

> **D.**    **Each of the Settlement Agreements is in the Best Interests of Class Members**

The proposed Class Counsel contend that each of the Settlement Agreements relating to Virginia and Certain Other Remaining Claims before this Court are in the best interests of Class Members in view of the relevant factors to be considered for approval.  These factors include, for example, the estimated damages suffered by Members of each of the Classes, the complexity of and risks attendant to Plaintiffs' demonstration that those damages were causally linked to the actions of Settling Defendants, and the delays inherent in litigating thousands of individual claims against those defendants. Additionally, each of the Settlement Agreements is in the best interest of Class Members since there is substantial uncertainty regarding Class Members' entitlement to recover from the Settling Defendants based on various insurance coverage issues that have been decided by various federal and state courts (particularly Virginia State Courts) in favor of insurers.  Each of the Settlement Agreements was negotiated at arm's-length over a period of many months, with oversight by the Court.

The proposed Class Counsel accordingly respectfully submit that each of the Settlement Agreements is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Fifth Circuit. Moreover, certification of the proposed Classes is appropriate pursuant to Fed R. Civ. P. 23, and the proposed manner of notice to Class Members satisfies the requirements of due process. As set forth below, all prerequisites for preliminary

---

[80] *Id.*

approval of each of the Settlement Agreements and conditional certification of the proposed

Classes have been met, and Class Counsel respectfully submit that the Motion for Preliminary

Approval should be granted.

## II.   BACKGROUND

### A.   The Chinese Drywall Litigation

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical

shortage of drywall for the reconstruction of homes and other structures damaged by the storms.

Beginning in the fall of 2005, hundreds of millions of square feet of Chinese Drywall were

exported to the United States, sold to distributors and suppliers, resold to builders and installers,

and installed in thousands of properties domestically, but primarily in Florida, Louisiana,

Alabama, Mississippi, Texas, and Virginia.

Governmental agencies found Chinese Drywall to be defective, allegedly causing

property damage, including damage to electrical wiring, corrosion of pipes, and damage to or

destruction of air-conditioners, refrigerators, HVAC systems, and other appliances.[81]  The

Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the

U.S. Consumer Product Safety Commission ("CPSC"), made various recommendations for the

repair of properties impacted by Chinese Drywall, including the removal of problematic drywall,

fire safety alarm devices, electrical distribution components (including receptacles, switchers and

circuit breakers), gas service piping and fire suppression sprinkler systems.[82]

---

[81] The Gypsum Association reports that 320 million square feet of Chinese Drywall were imported from 2005-2007.
*See* Gypsum Association Comments, *published at*
http://www.gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.
[82] *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011,
published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

Further, some individuals have alleged that they suffered bodily injury as a result of exposure to Chinese Drywall.[83] However, CPSC and the Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence that exposure to Chinese Drywall causes any ill health effects.

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.[84] Since the formation of this MDL almost three years ago, thousands of claimants have participated in the PSC's omnibus class action complaints. The Court has held regular monthly status conferences attended by hundreds of counsel and it has entered 26 separate Pretrial Orders, many with subparts, as well as scores of other orders and minute entries.[85] To date, more than 14,000 entries have been recorded on the docket in this case. This Court has worked tirelessly to manage the nationwide litigation of Chinese Drywall claims. The Court's efforts have included the coordination and oversight of pretrial discovery and motion practice for thousands of individual cases as well as the omnibus class action complaints filed in the MDL.[86]

---

[83] Order appointing Special Master (Rec. Doc. No. 505) at 1.

[84] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) (Rec. Doc. No. 1).

[85] *See e.g.*, Minute Entry, Dec. 2, 2010 (Rec. Doc. No. 6525).

[86] *See, e.g.*, *Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), I(C)); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A)); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al. v. AAA Ins., et al.*, Case No. 2:10-cv-03070 (E.D. La.) (Omnibus VI); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 2:11-cv-00080 (E.D. La) (Omnibus VII); *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.) (Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01077 (E.D. La.) (Omnibus IX); *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-1363 (E.D. La.) (Omnibus X); *Benoit, et al. v. Lafarge S.A., et al.*, Case No. 11-cv-1893 (E.D. La.) (Omnibus XI); *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-

For purposes of coordination, consistency, and global treatment of Chinese Drywall claims, the Court has consulted with numerous state court judges and other federal judges also overseeing Chinese Drywall litigation, including the Honorable Joseph Farina from the 11th Judicial Circuit Court of Florida (Dade County) and the Honorable Charles Green from the 17th Judicial Circuit Court of Florida (Broward County).[87] In coordination with these jurists, this MDL Court has strived to achieve finality in the resolution of this litigation.[88]

In order to accomplish its goals, the Court appointed the PSC and a Plaintiffs' Liaison Counsel ("PLC") to prepare and respond to pleadings and motions, engage in discovery, pretrial preparation, trial and settlement of cases, manage the MDL docket, establish and administer a document depository, communicate with individual Plaintiffs and their counsel, liaison with defendants and attend court status conferences and hearings.[89] The Court also appointed a Defendants' Liaison Counsel[90] and a Homebuilders and Installers Liaison Counsel[91] to assist with these efforts. In November 2009, the Court appointed a Special Master "to explore opportunities for an ultimate resolution of the instant matter as to any and all interested parties," recognizing that "some or all parties [we]re interested in exploring a global resolution of the matter as it affect[ed] them at th[at] stage of the proceeding."[92] In March 2010, the Court appointed State and Federal Coordination Committees "to assist the Court, litigants and judicial

---

2349 (E.D. La.) (Omnibus XII); *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-3023 (E.D. La.) (Omnibus XIV).

[87] *E.g.,* Transcript of Status Conference at 2:17-3:17, Oct. 14, 2010 (comments of J. Fallon praising "the help of state court judges:" "I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward."); Transcript of Status Conference at 7:5-17, Mar. 23, 2011.

[88] Transcript of Status Conference at 7:19-25, Mar. 23, 2011.

[89] *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman); Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs, Arnold Levin).

[90] *See* Pretrial Order No. 4 (appointing Defendants' Liaison Counsel).

[91] *See* Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel).

[92] Order Appointing Special Master (Rec. Doc. No. 505 at 4).

system to facilitate coordination between this MDL and the various state court cases."[93] And, the Court appointed an Insurer Steering Committee as well as Co-Lead Counsel for the First-Party Insurer Subcommittee.[94]

Through the vehicle of omnibus class action complaints, the Court has assisted the parties in bringing all interested and affected entities into the Chinese Drywall litigation in a consistent, fair and judicious manner.[95] The omnibus class action complaints and intervention omnibus class action complaints have been filed on behalf of thousands of Plaintiffs suing almost 2,000 defendants, including many of the Settling Defendants.

In the spring of 2010, the Court resolved ten bellwether cases.[96] After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese Drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the appropriate scope of remediation. The Court found that Chinese Drywall "has to be remediated."[97] These bellwether trials have served as a useful tool for all litigants involved in Chinese Drywall litigation, as well as the Court.[98] This laid the groundwork for evaluating potential liability against builders and other defendants.

---

[93] *See* Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendats' State/Federal Committee).

[94] *See* Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendants' State/Federal Committee).

[95] *See* Transcript of Status Conference at 4-5, June 24, 2010 (recognizing that omnibus class action complaints serve as a vehicle to "effectively and efficiently" serve more than 500 defendants and to evaluate the "whole census."

[96] *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case). Two additional bellwether cases, *Campbell v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[97] *Germano*, 706 F. Supp. 2d at 671.

[98] *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (June 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for

22

**B.    The Settlement Agreements Relating to Virginia and Certain Other Remaining Claims**

The three proposed settlements provide for a sum of $15,700,000 in compensatory relief, costs and attorneys fees for the three proposed Classes.  The Classes are national in scope, but it is believed that the claims will be limited primarily to those involving Taishan Chinese Drywall originally imported and distributed by Tobin Trading Inc., Venture Supply, and Porter-Blaine.  It is further believed that the number of homes involved will be measured in the several hundreds, the majority of which are located in Virginia.[99]  It is believed that the overwhelming majority of these claims exist in relation to Affected Properties in the Commonwealth of Virginia.

On May 31, 2012, this Court approved a "Global Settlement" which provided a total payment of $70,570,000.00 to settle claims involving builders, installers, suppliers, and insurers.[100] There are approximately 580 Participating Defendants and approximately 80 Participating Insurers in the Global Settlement.[101] That Global Settlement did not include persons or entities with claims involving an Affected Property in the Commonwealth of Virginia.[102]

Notably, Virginia claims were excluded from the Global Settlement because of a "lack of available insurance funds due to the present interpretation of Total Pollution Exclusions to CDW-Related Actions involving policies under Virginia law."[103] Some of the Participating

---

resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.... The reasons for acceptance by bench and bar are apparent.  If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

[99] *See* Findings of Facts and Conclusions of Law, In re Chinese Drywall at 8-9, 19, MDL No. 2047 (filed April 8, 2010).

[100] *See* Preliminary Settlement Approval Order, *In Re: Chinese Manufactured Drywall Products Liability Litigation,* at 8, MDL No. 2047 (filed June 4, 2010).

[101] *Id.* at 6.

[102] *Id.* at 23.

[103] Motion for Preliminary Approval of Global Settlement, *In Re: Chinese Manufactured Drywall Products Liability Litigation,* at 19, MDL No. 2047 (filed May 18, 2010); *see, e.g.*, Travco *Ins. Co. v. Larry Ward*, 715 F. Supp. 2d 699 (E.D.Va. 2010), question certified by, 2012 WL 666230 (4th Cir. Mar. 1, 2012); *Nationwide Mut. Ins. Co. v. The Overlook*, 785 F. Supp 2d 502 (E.D.Va. 2011*); Dragas Mgmt. Corp. v. Hanover Ins. Co.*, 798 F.Supp.2d 766 (E.D.Va. 2011); *Evanston Ins. Co. v. Harbor Walk Develop., LLC*, 814 F. Supp. 2d 635 (E.D.Va. 2011).

Insurers in the Global Settlement, as well as other insurers who were aware of the summary

judgment proceedings, continued to deny coverage with respect to Chinese Drywall claims based

on Virginia law.

### C.      The Defendants

The Chinese Drywall in the present cases is believed to have been primarily if not

exclusively manufactured by Shandong Taihe Dongxin Co., Ltd. which, on Sept. 10, 2007,

changed its name to Taishan Gypsum Co., Ltd. (Taishan).[104] In the fall of 2005, Defendant

Venture Supply sought to secure a source of foreign drywall. Venture entered into a contract

with Tobin Trading Inc., who was in the business of importing and exporting supplies under the

corporate name, "Tobin Trading, Inc." ["Tobin"]. Defendant Tobin traveled to China and, in

November 2005, began negotiations with Taishan for the terms of a large shipment to Venture in

Norfolk. Tobin was directly involved in the inspection of the drywall in the Taishan factory and

had extensive meetings, phone calls and emails with Taishan to arrange a shipment. On Nov. 9,

2005, Defendant Venture Supply, Inc., a company in Norfolk, Virginia, provided an original

letter of credit in the amount of $429,600.00 to the order of Shandong Taihi Dongxin for 120,000

sheets of drywall to meet all USA ASTM ratings and fire rating standards.[105]  On Nov. 14, 2005,

Frank Clem, manager of Venture Supply, was advised that the manufacturer was not clear on

U.S. ASTM ratings. However, Taishan insisted that Venture Supply remove U.S. ASTM

requirements from the letter of credit and rely solely upon Chinese ratings.[106] Venture Supply

then contracted with Taishan to purchase drywall.[107] Accordingly, on Nov. 15, 2005, Venture

Supply directed its bank to remove the U.S. ASTM requirement from the letter of credit to

---

[104] Findings of Fact & Conclusions of Law, *In Re: Chinese Manufactured Drywall Products Liability Litigation,* at
8, MDL No. 2047 (filed April 8, 2010).
[105] *Id.*
[106] *Id*.
[107] *Id.*

Taishan.[108] Venture compensated Tobin for expenses incurred in negotiating this contract and Tobin received a payment for drywall sold between Taishan and Venture.

Pursuant to contract, on Dec. 25, 2005, Taishan had 2,000 pallets of drywall shipped to the United States, which arrived in February 2006.[109] A second shipment of 53,912 sheets on 586 pallets was shipped and off-loaded in Camden, New Jersey.[110]  The two purchase agreements allowed over 150,000 total sheets of Chinese Drywall to enter the United States.

Defendant Porter-Blaine Corporation, a company related to Venture Supply, Inc., purchased Taishan drywall from Venture Supply, Inc. Venture Supply, Inc. shipped Taishan drywall to Class Plaintiff's homes and the drywall was installed by the Porter-Blaine Corporation in the homes.[111]

The drywall product from China was never tested pursuant to the U.S. ASTM standard.[112] Venture relied on a representation that Chinese testing was equivalent to the U.S. testing standards.[113] However, the Chinese tests were administered by a government agency and not by an independent testing laboratory.[114] The Certificates of Quality were issued by a government agency and the Quality Management System Certification issued predated the production of the drywall shipped to the United States by at least two years.[115]

All of the claims brought against the Participating Defendants in the three proposed Settlement Agreements are believed to concern Chinese Drywall that entered the United States as a result of the transactions described above and ultimately was purchased imported, supplied,

---

[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Id.* at 10.
[113] *Id.*
[114] *Id.*
[115] *Id.*

distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of the Settling Defendants.

### D.     Reasons for the Settlements

The Settlement Agreements will provide $15,700,000 ($15.7 million dollars) in compensation to the Classes. The distribution of these Settlement Funds after payment of attorneys' fees and costs for the benefit of Class Members will provide substantial benefits to the Classes.

The Settlement Agreements thus provide significant recovery for Plaintiffs in light of, among other things, the procedural posture of the litigation, the range of estimates of damages to the Classes, relevant factors regarding Settling Defendants' financial conditions to meet the claims at issue in this Chinese Drywall litigation (i.e., since many of the Settling Defendants are no longer in business), the risks and uncertainty regarding the apportionment of any liability to the Settling Defendants and all of the material factual information revealed during discovery and settlement negotiations. Although proposed Class Counsel believe in the merits of the case against the Settling Defendants and in their ability to prevail, the Parties recognize that each party would face serious obstacles to establishing both liability and damages should the cases proceed to trial and recovering damages thereafter. For instance, Settling Defendants were prepared to, and would, strenuously argue that Plaintiffs could not establish causation for personal injury damages, which would materially reduce the potential range of damages. Moreover, if the cases against Settling Defendants were to proceed to trial, these defendants would likely appeal any judgment favorable to the Classes, imposing a significant additional delay on the payment of any recovery to individual Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.

In addition to the above risks and delays that would arise if the Plaintiffs continued to pursue litigation against the Settling Defendants, a number of the Settling Insurers have prevailed on coverage defenses through motions for summary judgment in various federal and state courts; in particular, Insurers have prevailed on coverage defenses in Virginia.[116] Each of the Settlement Agreements ensures the availability of policy proceeds for Class Members, which are not guaranteed to be available if coverage disputes under the Settling Insurers' policies are fully litigated. Given the position that the Settling Insurers have taken with respect to coverage, it behooves Class Members to proceed with these three proposed Settlements as opposed to continuing litigation, risking decisions further jeopardizing any potential insurance recovery and depleting the insurance proceeds that may be available to compensate Class Members.

The proposed Class Counsel respectfully request that this Motion be granted not only because public policy favors the settlement of complex class actions such as this, but because the Settlement Agreements are an excellent result for the Classes under all the circumstances. These agreements are fair, reasonable and adequate, and were negotiated at arm's length over many months with oversight from the Court and input from many interested parties. In light of the foregoing, it is respectfully requested that the Court enter an Order preliminarily approving each of the three Settlements and conditionally certifying each of the three Classes.

---

[116] *See, e.g.*, *Travco Ins. Co. v. Larry Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010); *Nationwide Mut. Ins. Co. v. The Overlook*, 785 F. Supp. 2d 502 (E.D. Va. 2011); *Dragas Mgmt. Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 766 (E.D. Va. 2011); *Evanston Ins. Co. v. Harbor Walk  Develop.*, LLC, 814 F. Supp. 2d 635 (E.D. Va. 2011); *QBE Ins. Corp. v. Estes Heating & Air Conditioning, Inc.*, No. 10-456, 2012 WL 413968, *7 (S.D. Ala. Feb. 8, 2012) (Alabama law) (finding the Total Pollution Exclusion barred coverage for CDW-related actions); *Granite State Ins. Co. v. Am. Bldg. Materials, Inc.*, No. 10-cv-1542, 2011 WL 6025655, *1 (M.D. Fla. Dec. 5, 2011) (Massachusetts law), reconsideration denied, 2012 WL 204220 (M.D. Fla. Jan. 24, 2012) (same); *General Fidelity Insurance Co. v. Foster*,  No. 9:09-cv-80743 (S.D. Fla. Mar. 24, 2011) (Florida law) (finding the Total Pollution Exclusion unambiguous in barring coverage for CDW-related actions).

### III.    ARGUMENT

#### A.    Each of the Three Settlement Agreements Relating to Virginia and Certain Other Remaining Claims Is In the Best Interest of the Classes

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action. *Evans v. Jeff D.*, 475 U.S. 717, 727-28 (1986); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). In determining whether to approve each of the three Settlement Agreements, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See, e.g., Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (Fallon, J.); *Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398, at *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.).[117] This is, in part, because of the complexity and size of class actions:

> Particularly in class action suits, there is an overriding public interest in favor of settlement [. . .] it is common knowledge that class action suits have a well deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action [. . .] In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331, *citing United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Turner*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially apparent in the class action context where claims are complex [ . . . and] could lead to years of protracted litigation and sky-rocketing expenses.")

In addition:

---

[117] "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement . . . This rule has particular force regarding class action lawsuits." *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.,* 630 F.2d 1164, 1166-67 (7th Cir. 1980).

> Complex litigation – like the instant case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly evasive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions [ . . .] Although class action settlements require court approval, such approval is committed to the sound discretion of the trial court.

*In re United States Oil & Gas Litig.,* 967 F.2d 489, 493-94 (11th Cir. 1992) *citing* Fed R. Civ. P.

16(a), (c), 23(e); *Bennett v. Behring*, 737 F.2d 982, 987 (11th Cir. 1984); *Cotton*, 559 F.2d at

1331).

The courts have recognized that certification of a class for settlement purposes is

beneficial in resolving major class action disputes. *See, e.g., In re Corrugated Container*

*Antitrust Litig*., 643 F.2d 195, 207-10 (5th Cir. 1981); *In re Beef Indus. Antitrust Litig*., 607 F.2d

167, 173-77 (5th Cir. 1976).

The first step in determining whether to grant preliminary approval of a class settlement,

is for "the Court [to] make [ ] a preliminary fairness evaluation of the proposed settlement."

*Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2001) (Fallon, J.) *citing* Manual for

Complex Litigation (Third) § 30.41 (1995). The Court must "evaluate the likelihood that the

Court would approve the settlement during its second review stage, the full fairness hearing." *Id.*

In so doing, "the Court will examine the submitted materials and determine whether the

proposed settlement appears fair on its face." *Id.*; *see also Corrugated Container*, 643 F.2d at

212.

At the preliminary stage, the Court's review is less stringent. *See, e.g., In re OCA, Inc.*

*Sec. and Der. Litig.,* 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) ("As this motion is for

preliminary approval of a class action settlement, the standards are not as stringent as those

applied to a motion for final approval."); *Karvaly v. eBay, Inc*., 245 F.R.D. 71, 86 (E.D.N.Y.

2007); Manual for Complex Litigation (Fourth), § 21.63 (2004) ("At the stage of preliminary

approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.").

As set forth above, the Settling Parties arrived at these Settlement Agreements during arm's-length negotiations, with oversight by the Court. These Settlements were subsequently memorialized in the Settlement Agreements, submitted herewith. The Court may presume, therefore, that the Settlement Agreements are fair and reasonable, as they are the result of arm's-length negotiations. *See Camp v. The Progressive Group*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004). The Settlement Agreements contain the material economic terms of the Settlement, the manner of notice to be given to the Classes, the contingencies or conditions to the Settlement's final approval, and other terms.

The PSC and proposed Class Counsel possessed adequate information concerning the strengths and weaknesses of the litigation against the Settling Defendants after the exchange of information during negotiation sessions, including information concerning damages calculations. In addition, proposed Class Counsel, the PSC, its individual counsel members, and the PLC are highly competent counsel, all with many years of experience litigating complex class action and multidistrict cases. Finally, as explained above, the complexity, expense, uncertainty, and likely duration of the litigation also militate in favor of consummating the settlement process. Therefore, proposed Class Counsel and the PSC respectfully submit that all of the above-cited circumstances support preliminary approval of each of the proposed Settlement Agreements.

**B.     The Requirements of Rule 23 Have Been Met For Conditional Certification of Each of the Classes**

For purposes of conditionally certifying the Rule 23(b)(3) Classes sought by the Settling Parties, The MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 advises that "[i]f the case is presented for both class certification and settlement approval, the certification hearing and

preliminary fairness evaluation can usually be combined.  The judge should make a preliminary determination that the proposed classes satisfy the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *See id*. at § 21.22.  The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing*." Id.* at § 21.632.  This comports with the Supreme Court's holding in *Amchem*, 521 U.S. at 619-20, that "[s]ettlement is relevant to a class certification," but the requirements of Rule 23(a) and 23(b)(3) must still be met.  *Id.* at 620.  However, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."  *Id.*

In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Classes in the context of the Settlement Agreements.

### 1.    Numerosity

Hundreds of Plaintiffs have filed suit against each of the Settling Defendants and Insurers, alleging damages sustained as a result of Settling Defendants' involvement in the

31

distribution and installation of defective Chinese Drywall that was installed in Plaintiffs' homes and properties.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) *citing* 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed.1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable"); William B. Rubenstein, Alba Conte, and Herbert B. Newberg, 1 NEWBERG ON CLASS ACTIONS § 3:3 (4 ed. 2010) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

### 2.    Commonality

The commonality requirement of Rule 23(a)(2) is easily met in this case. The Judicial Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the commonality of facts in the various cases."[118]  Questions surrounding the effects of Chinese Drywall on Class Members, the damages caused thereby, and the apportionment of fault to the Settling Defendants are issues common to all Plaintiffs, satisfying this element of Rule 23(a). *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); 1 NEWBERG ON CLASS ACTIONS § 3:1 ("Convenience, uniformity of decision, and judicial economy are achieved through the class action device by litigating common issues only once on behalf of all class members.").

---

[118] *Hernandez*, 2010 WL 1710434 at *1 (Findings of Fact).

### 3.      Typicality

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 1 NEWBERG ON CLASS ACTIONS § 3:13, *quoting, Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986).  In other words, courts must determine "whether other [Class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Id.*, *quoting, Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).  The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g., General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156-57 (1982). The typicality requirement has been liberally construed by the federal courts.  *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Plaintiffs in these cases is seeking money from the Settling Defendants and Settling Insurers for the costs of remediation of the Chinese Drywall and other damages allegedly caused thereby. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." 1 NEWBERG ON CLASS ACTIONS § 3:13. The claims of the Class Representatives are typical of the absent Class Members in that all Plaintiffs are seeking to hold the Settling Defendants and Settling Insurers liable for damages resulting from Chinese Drywall installed in their homes.

### 4.      Adequacy of Representation

Rule 23(a)(4) requires that the named class representatives "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21.  Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id*.; *Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted). At this preliminary stage of the approval process, there is nothing to suggest that this requirement has not been met. The named representatives are members of the Classes they seek to represent and they do not possess any interests antagonistic to their respective classes.

Moreover, proposed Class Counsel, Arnold Levin and Russ Herman, are Lead Counsel and Liaison, who were appointed by this Court after an application process to represent all Plaintiffs in the MDL, based on the attorneys' vast experience in class actions and multidistrict litigation. In addition, proposed Class Counsel, Richard Serpe, has been appointed to the PSC and has played a leading role in the Virginia litigation. The PSC conducted these class negotiations with Settling Defendants and Settling Insurers at arm's length, and will fairly and adequately represent the Classes.  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

### 5.    Common Questions of Law and Fact Predominate

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." 1 NEWBERG ON CLASS ACTIONS § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). In this case it makes eminent good sense to resolve the claims against the Settling Defendants and Settling

34

Insurers in this forum through the class action device. The issues of Settling Defendants' liability for the sale and distribution of Chinese Drywall predominate over any individual issues involving the Plaintiffs. A class settlement will insure that funds are available to remediate the Plaintiffs' homes and provide compensation for other damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication. Factors the Court may consider include:

> (A)    the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the difficulties likely to be encountered in the management of a class action.[119]

FED. R. CIV. P. 23(b)(3)(A)-(D).

Given the various suits pending against the Settling Defendants and the Settling Insurers in federal and state courts, approval of each of the Settlement Agreements and resolution of all Chinese Drywall claims against the Settling Defendants and the Settling Insurers in this forum benefits all parties.

## C.    The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirement of Rule 23

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under

---

[119] As stated earlier, any difficulties of management of these Classes for litigation purposes need not be considered. *Amchem*, 521 U.S. at 620.

the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See Eisen v. Carlisle & Jacqueline*, 471 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977). Courts have held that "[t]he Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action." *See OCA*, 2008 WL 4681369, at *15 *citing Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008). Notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See id. quoting DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005).

In accordance with these legal parameters, the Parties have agreed to provide individual notice by first-class mail to all known Members of the Classes and their counsel. Further, additional notice will be provided to Class Members in newspapers and periodicals, in a press release, on TV, in on-line media, on federal and state court websites, on other publicly available websites (i.e., the Court's Chinese Drywall MDL website), and by requesting that the notice be posted at various public places.[120] The Court should approve the proposed manner of notice since it is broadly designed to reach the maximum number of Members of the Classes with direct mailing of notice to Class Members who can be identified through reasonable efforts. The proposed manner of notice satisfies the requirements of due process since it is reasonably calculated to apprise interested parties of the pendency of the action and their rights to object.

The Notice will also be written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1). The Notice will objectively and neutrally apprise all Members of

---

[120] The Notice and Summary Notice are attached hereto as Ex. E-1 and E-2. A description of the notice plan is set forth in Section 8 of each of the Settlement Agreements.

the Classes of the nature of the action, the definition of the Classes sought to be certified for

purposes of the Settlement Agreements, the Class claims and issues, that Class Members may

enter an appearance and appear before the Court at the Joint Fairness Hearing[121] (in accordance

with the procedures to be set forth in the Notice), that the Court will exclude from the Classes

any Class Member who requests exclusion (and will set forth the procedures and deadlines for

doing so), and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).

The Notice will additionally disclose the date, time and location of the Joint Fairness Hearing

and the procedures and deadlines for the submission of objections to any aspect of the

Settlement. These disclosures will be complete and should be approved by the Court. *See, e.g., In

re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 175 (E.D. Pa. 2000).

Upon notification of each of the Settlement Agreements, Members of the Classes will

have three choices: (1) approve any of the Settlement Agreements and receive Settlement

Agreement benefits, if eligible, by submitting a Proof of Claim in that settlement; (2) exclude

themselves from any of the Settlement Agreements by "opting out" of any Class of which they

are members, in which case they will retain their individual claims against the Settling

Defendants and the Settling Insurers; or (3) object to any of the Settlement Agreements, in which

case they will nonetheless remain Class Members.

To participate in each of the Settlement Agreements, members of the Classes need do

nothing at this time.  Members of the Classes who wish to exclude themselves from the any of

the Settlement Agreements must submit a timely request for exclusion from that Settlement

Agreement or Agreements. Class Members who wish to object to any of the Settlement

Agreements must file and serve a notice of their intention to appear and object.  Objectors can

---

[121]  The Joint Fairness Hearing will occur before the Honorable Eldon E. Fallon (Presiding Judge) of the E.D. La., with the assistance of the Honorable Mary Jane Hall of the Norfolk Virginia Circuit Court (who will participate in the hearing through a telephonic connection to facilitate the participation of class members in the Virginia region).

submit a memorandum of law in opposition to the Settlement Agreement or Agreements and can appear before the Court at the Joint Fairness Hearing. The Notice will provide clear direction and instructions to Class Members regarding their options under the Settlement Agreements.

> **D.    The Court Should Preliminarily Approve Each of the Settlement Agreements and Conditionally Certify Each of the Classes and Issue the Requested Stays**

Determining the fairness of each of the Settlement Agreements is left to the sound discretion of the Court, and an appellate court will not overturn the Court's decision absent a clear showing of abuse of that discretion. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) *citing Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977*) citing Young v. Katz,* 447 F.2d 431, 433 (5th Cir. 1971); *see also In re U.S. Oil*, 694 F.2d at 493-94.  The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller*, 559 F.2d at 428 *quoting Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975). Settlements of class actions are "particularly favored" and are not to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Turner*, 472 F. Supp. 2d at 843. In the case of class actions, the Fifth Circuit has held that "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst*, 529 F.2d at 950.

Moreover, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330. In other words, in weighing the benefits obtained by

38

settlement against benefits dependent on the likelihood of recovery on the merits, courts are not

expected to balance the scales. *See id*. The very object of a compromise "is to avoid the

determination of sharply contested and dubious issues." *Young v. Katz*, 447 F.2d 431, 433 (5th

Cir. 1971).

In addition, a court should not engage in a trial on the merits when considering the

propriety of a settlement:

> It cannot be overstated that neither the trial court in approving the
> settlement nor [the appellate court] in reviewing that approval have
> the right or the duty to reach any ultimate conclusions on the issues
> of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330 *quoting City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456

(2nd Cir. 1974); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *see also*

*Turner*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but

instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed

settlement as compared to the alternative of litigation."). The trial court is not required to decide

the merits of the action or substitute a different view of the merits for that of the parties or

counsel. *Maher*, 714 F.2d at 455 ("In other words, in determining the fairness, reasonableness,

and adequacy of a proposed settlement, neither the district court nor the appellate court on

review, should reach ultimate conclusions on the issues of fact and law underlying the dispute.").

Where, as here, experienced counsel, representing many interested parties, have

extensively negotiated the Settlement Agreements at arm's length, a strong initial presumption is

created that the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d

1104, 1108 (5th Cir. 1982). The Fifth Circuit has recognized that courts must rely to a large

degree on the judgment of competent counsel, terming such counsel the "linchpin" of an

adequate settlement.  *Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983). Thus, if experienced

counsel determine that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978); *see also OCA*, 2008 WL 4681369 at *11 (where there is "no reason to doubt [the] fairness" of the settlement and it "appears to fall within the range of possible approval, the court should grant preliminary approval."); *In re Train Derailment Near Amite Louisiana on October 12, 2002*, 2006 WL 644494, at *1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement negotiated at arm's length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

Moreover, the Court is not required at this point to make a determination as to whether the settlements should be finally approved. As stated in the MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632: "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." Generally, "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Id*. Although non-binding, the preliminary approval establishes "an initial presumption of fairness." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. Oct.15, 2009); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.25.

Each of the Settlement Agreements before the Court is the product of extensive arm's-length negotiations between counsel for the Settling Parties, which culminated in a preliminary agreement. The Parties negotiated the terms of each of the Settlement Agreements in detail, and the Parties each made concessions and won positions on difficult issues. Therefore, each of the Settlement Agreements should be preliminarily approved.

40

At the Joint Fairness Hearing, any Members of the Classes who have timely filed and served a notice of intention to appear may voice any objections. The Court can then consider the merits of each of the Settlement Agreements in light of any objections and determine whether to grant final approval of each of the Settlements.

At the Joint Fairness Hearing, the Settling Parties will have submitted briefs and other documents in support of the Settlements. If the Court finds each of the Settlement Agreements to be fair and reasonable, the Court should enter the Final Judgment and Order of Dismissal with Prejudice, dismissing these actions with prejudice and affecting a release of all claims as provided for in the Settlement Agreements.

### E.    Proposed Schedule

Class Counsel suggest the following schedule leading to the Joint Fairness Hearing. Blanks for the actual dates are provided in the proposed Preliminary Approval Order submitted herewith:

| Event | Day |
| --- | --- |
| Preliminary Approval Order ("PAO") Signed | 1 |
| Notice (PAO ¶ [  ]) | On or before 60 days from entry of PAO |
| Opt-Outs (PAO¶ [  ]) | 120 days from entry of PAO |
| Objections (PAO ¶ [  ]) | 120 days from entry of PAO |
| Settlement Hearing (PAO ¶ [  ]) | 165 days from entry of PAO |

### IV.    CONCLUSION

Proposed Class Counsel respectfully request that this Court find preliminarily that each of the Settlement Agreements is fair, reasonable and adequate, and that notification to Class Members of the terms of the Settlement Agreements and their rights in connection with the

41

Settlement Agreements is warranted. Class Counsel seek entry of an Order: (1) preliminarily approving each of the Settlement Agreements; (2) certifying each of the Classes as set forth in the Preliminary Approval Order; (3) approving the manner of Notice to the Classes; (4) scheduling a Joint Fairness Hearing; and (5) staying and enjoining the prosecution of all claims against the Settling Defendants and the Settling Insurers, except as noted herein and in the Settlement Agreements.

Respectfully submitted,

Dated: October 26, 2012

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN &KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*And Proposed Class Counsel*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Matthew C. Gaughan
LEVIN, FISHBEIN, SEDRAN &BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*And Proposed Class Counsel*

Richard Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street

Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com
*Proposed Class Counsel*

Richard S. Lewis (On the Brief)
Kristen Ward Broz (On the Brief)
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, D.C. 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com