I.    SCOPE OF REPORT & EXECUTIVE SUMMARY

Counsel for objectors Saul Soto; SHS Construction; Ronnie Garcia, and Bay Area Contracting & Construction, Inc. (collectively the "Soto Objectors") asked me to provide an expert opinion on (1) whether the legal arguments they present in their objection are objectively reasonable and have a material chance at success; (2) whether there is a non-frivolous basis for seeking discovery into class counsel's fees in another class action settlement; and (3) whether a counsel for objectors who has a track record of settling some of his objections on a *quid pro quo* basis, as Mr. Christopher Bandas, counsel for the Soto Objectors, has, could be said to be acting vexatiously when he brings a non-frivolous objection on behalf of clients in another class action settlement agreement.

I was retained on this matter the morning of October 30, 2012. I learned the same day that the district court issued an order requiring responses to an October 24 motion for sanctions to be filed by the morning of October 31, and I would have to complete this expert report by the evening of October 30. My discussion of the issues is thus more cursory than it would have been had I had a reasonable time to draft this report.

As I detail below, in my opinion, the Soto Objectors have brought legitimate objections to this settlement. While I do not agree with every aspect of the Soto Objectors' objection, believe more care should have been taken to articulate how each objector had standing to object although the class definition is potentially inclusive of almost anyone, and would have personally phrased arguments differently were I counsel for the objectors, I believe that an approval of this class action settlement would be legally reversible error, and that there would be a substantial chance of success on appeal by the Soto Objectors in the Fifth Circuit were the settlement approved and high-quality briefs were drafted on appeal. I believe there is a good-faith basis for objecting to the Rule 23(h)



request for 32% of the common fund, and that there is a colorable chance of success on appeal in the Fifth Circuit were this Court to approve the full fee request; certainly, given the circuit split on the issue, the Supreme Court is likely to eventually weigh in on the question of what constitutes a reasonable award under Rule 23(h).

I further opine that the problem of "professional objectors" bringing and settling meritless objections is a legitimate one, but it is one created by the combination of the existing Federal Rules of Civil Procedure and Federal Rules of Appellate Procedure with the existing ethical requirements for attorneys to put the interests of their clients first. The fact that an experienced attorney who has had some success in objecting to class action settlements has also settled some of his objections for personal profit is an artifact of the existing procedural rules that make it more profitable for objectors' counsel to withdraw objections than to prevail with a meritorious objection. The solution to this problem is not to punish objectors for bringing objections, but to change the incentives, by (a) providing a bounty to objectors who bring successful objections; and/or (b) precluding inalienability of an objection on appeal without court approval. It is my understanding that Mr. Bandas has offered to stipulate to an injunction precluding him from withdrawing an appeal of his objection without court approval of the terms of any such withdrawal. If it was the case that class counsel was truly concerned about the possibility that Mr. Bandas was extorting them with a meritless objection, rather than the possibility that the Soto objection would be successful and endanger their excessive Rule 23(h) request, they would simply agree to this stipulated injunction.

II.   SUMMARY OF QUALIFICATIONS

I, Theodore H. Frank, am the president and general counsel of the non-profit Center for Class Action Fairness ("the Center"). I am also an adjunct fellow at the Manhattan Institute Center for Legal Policy. I am speaking only for myself in this testimony, and not on the behalf of the Center, the Manhattan Institute, or any clients I might represent as an attorney.

I am a graduate of Benjamin Franklin High School in New Orleans, Louisiana. I graduated Brandeis University *summa cum laude* as a Wuliger Scholar with a B.A. in economics and a member of Phi Beta Kappa. I have a J.D. from the University of Chicago Law School in 1994 with high honors; I was a member of Order of the Coif and Law Review, and had an Olin Fellowship in Law & Economics and Public Service Scholarship. I clerked for the Hon. Frank H. Easterbrook of the United States Court of Appeals for the Seventh Circuit for a year. I worked in prominent "BigLaw" firms in Washington, DC, and Los Angeles, California, for ten years, handling complex and appellate litigation for plaintiffs and defendants. I served as the first head of the AEI Legal Center for the Public Interest, and have testified before federal and state legislative subcommittees about class actions and class action settlements. I am a member of the state bars of Illinois, the District of Columbia, and California.

I founded the Center for Class Action Fairness in 2009, and have won national acclaim for its work from the *Wall Street Journal, Forbes,* the *ABA Journal,* and several other legal publications and in at least two books; some of my other legal work has been profiled by the *New York Times, GQ,* and the *Washingtonian,* among other publications. I have spoken about class action settlements across the country including, *inter alia,* to the ABA Annual National Institute on Class Actions; to the Federalist Society National Lawyers Convention; to the DRI Corporate Counsel Roundtable; to numerous law firms and student groups at

law schools; and even in television and radio appearances. Journalists regularly call me for quotes about class action settlements, even in cases where I am not involved.

My *pro bono* objections to class action settlements have won millions of dollars for class members. I have won more federal appellate arguments relating to class action settlements on behalf of objectors (four out of the five that I have argued that have been decided) than any other attorney in the last five years—though my first such oral argument was in 2011.

I have previously served as a consulting expert, but this is my first case as a testifying expert.

In accordance with the ethics of the legal profession, my fees for preparing this report and testifying in this case are not contingent on the outcome of the proceedings or on the opinion presented herein. My fee for this report is $750/hour, and I will be compensated at $1500 per hour for any deposition or trial time. A list of documents I considered in performing my analysis of the issues in this case is attached as Exhibit 1; I base my opinions on those documents, and my extensive experience with class action settlements and class action settlement objections. My *curriculum vitae*, resume, and regularly updated list of publications is available online at http://tedfrank.com.

III.    THE SOTO OBJECTION HAS MERIT.

The settlement has two fatal problems that preclude approval as a matter of law.

*First*, the settlement purports to waive personal injury claims. Docket No. 15695-2 ("Settlement") ¶ 5.1.1. It is simply impermissible to certify a class of personal injury claims in a litigation class because individual issues will always predominate over class-wide issues. *E.g., Madison v. Chalmette Refining, L.L.C.,*

637 F.3d 551, 557 (5th Cir. 2011) (no predominance in dust exposure action because "even among the named class representatives, significant disparities exist, in terms of exposure, location, and whether mitigative steps were taken"); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) (no predominance in a single accident case when each plaintiff "must meet his or her own burden of medical causation"); *Brandner v. Abbott Laboratories, Inc.*, 2012 U.S. Dist. LEXIS 7017 (E.D. La. Jan. 23, 2012); *Haggard v. Endogastric Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89767 (W.D. Pa. June 28, 2012). As this Court has previously held, to prove specific causation requires a determination of:

> "an individual's family and medical history; age; gender; diet; . . . the timing of [exposure to] the product; . . . whether that individual suffered an injury, when the injury occurred, the type of injury suffered, and the number of occurrences of injury; the likelihood of injury; and/or the foundation as to whether a justifiable fear of injury exists."

*In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006) (Fallon, J.) (*citing In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 631-32 (W.D. Wash. 2002)). Thus "individualized factual issues" necessarily predominate. *Id.* To certify a settlement class that waives these individualized claims is not permissible when, as here, many of the alleged injuries are allegedly latent in nature and have not yet been discovered, but the settlement provides no compensation or representation for the future injured; this creates both Rule 23(e)(2) fairness problems and precludes a finding of Rule 23(a)(4) adequacy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Soto Objectors preserved this issue for appellate review at page 4 of their objection. One can take issue with the persuasiveness of their argument and the quality of the brief supporting the argument and the failure to cite the best cases in support of Soto's position, but the argument is entirely meritorious. The district court should reject the

settlement; were the settlement approved, an appeal were prosecuted, and appellate briefing and argument were at a high-quality level on both sides, I would predict that the Fifth Circuit would reverse.

*Second*, the settlement is legally problematic because the class definition is so vague. The settlement class consists of

> "All persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, *successors and assigns*, with claims, *known or unknown*, arising from or related to *actual or alleged* Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant" (emphasis added).

The problem here is that there exist thousands, and perhaps hundreds of thousands, of class members who will be bound by this definition, but have no way of knowing by the objection deadline that they have an alleged injury or an alleged claim against a Participating Defendant. Complaints in this case allege that medical monitoring is required; these claims cannot be settled when class members who have no idea they may have been injured or are even members of the class must waive their claims.

Fed. R. Civ. Proc. 23(e)(1) requires the court to direct reasonable notice of the settlement to all members of the class who would be bound by it. Such notice lets class members assess the strengths and weaknesses of the case and the merits and demerits of the settlement in deciding whether to object or opt-out—when that right is available. 7B Charles Alan Wright et al., Federal Practice and Procedure, § 1787 at 220 (2d ed. 1986); 2 Newberg on Class Actions, § 8.04 at 8–17 ("[T]he purpose [of notice is] allowing the parties to make conscious choices that affect their rights in a litigation context."). But the class definition and settlement

binds and waives the claims of many class members who have no idea whether they are members of the class.

A threshold requirement in any potential Rule 23 certification is that the named plaintiffs constitute an identifiable, unambiguous class. *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 U.S. Dist. LEXIS 94223, at *14–15 (E.D. Tenn. Sept. 7, 2010) (citing *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir.1989)). This means that every class definition should include at least: (1) a specification of a particular group at a particular time frame and location who were harmed in a particular way; and (2) a method of definition that allows the court to ascertain its membership. *De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (class "must be adequately defined and clearly ascertainable"); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004); *Manual for Complex Litigation (Fourth)* § 21.222 (2004). Here, the class is insufficiently definite to ascertain class membership, and that precludes certification. *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012) (unidentified class members precludes certification). This Court has recognized this problem in other contexts. *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2012 U.S. Dist. LEXIS 78954 (E.D. La. June 6, 2012) (Fallon, J.).

The Soto Objectors preserved this issue for appellate review at page 3 of their objection. One can take issue with the persuasiveness of their argument and the quality of the brief supporting the argument and the failure to cite the best cases in support of their position, but the argument is entirely meritorious. This Court should reject the settlement; were the Court to disregard its own precedent and approve the settlement, an appeal were prosecuted, and appellate briefing and argument were at a high-quality level on both sides, I would predict that the Fifth Circuit would reverse.

Indeed, an attorney with the Center for Class Action Fairness had monitored the settlement and suggested that we object. Had a class member approached us about a possible objection in a timely fashion, there was a substantial chance we would have gotten involved and objected on a *pro bono* basis. I have raised similar issues in the Sixth Circuit in an appeal where the Center expects to prevail.

The briefing I have reviewed from class counsel simply fails to address either of these fatal flaws with the settlement. Rather, the memorandum of law for final approval cites superseded law on the question of commonality without reference to the correct Supreme Court precedent; while it cites *Amchem*, it ignores that decision's holding with respect to the need for subclassing; and the motion for sanctions simply asserts *ipse dixit* that the Soto objection is meritless without any analysis.

There are potentially other issues with the settlement that present meritorious objections; I notice, for example, from plaintiffs' characterization of the settlements in their Memorandum of Law that the Knauf Settlement has a "kicker" from a separate fund, which is a sign of self-dealing condemned by *In re Bluetooth Headset Prod. Liab. Litig.*, 635 F.3d 954 (9th Cir. 2011), and considered to be a *per se* breach of the fiduciary duty of the class counsel by such scholars as Professor Lester Brickman. Because of the short time-frame in which I have had to draft this expert report, I have not yet fully researched those questions to be comfortable opining on these issues as of this date, but the omissions should not be construed as a negative pregnant that I am opining that there are no other meritorious issues on these objections.

I thus conclude that, not only is the Soto objection non-frivolous, it should be ultimately meritorious if it is litigated correctly.

IV.    IS THIS OBJECTION BEING BROUGHT FOR VEXATIOUS REASONS?

I have publicly criticized professional objectors who bring meritless objections for the sole purpose of threatening to hold up a legitimate class action settlement to extort a *quid pro quo* payment to drop the objection. Such attorneys should be viewed no differently than a class counsel that brings a meritless class action for the purpose of extorting a profitable settlement in exchange for not forcing a defendant to incur unnecessary litigation expense, another problem of the civil justice system I have been critical of.

Such extortionate behavior is possible because of a loophole in the federal procedural rules. While Fed. R. Civ. Proc. 23(e)(5) precludes an objector from withdrawing his or her objection without court approval, there is no parallel provision in the Federal Rules of Appellate Procedure. Thus, a bad-faith objector can bring a meritless objection, lose, and then engage in a *quid pro quo* settlement on appeal—often with the help of federal mediators!—that would not be permitted by Fed. R. Civ. Proc. 23(e)(5).

When I agree to represent clients in class-action objection litigation, I tell them that I only wish to represent them if they are interested in prosecuting the objection through ultimate success, and if they recognize that they could make much more money by retaining an attorney who engages in a strategy of withdrawing objections for payment.

It is important to realize, however, that my business model only works because I run a non-profit, because the attorneys who work for the Center are willing to work for below-market wages, and because I have successfully obtained charitable contributions that support the ongoing efforts of the Center. Without such charitable contributions from outside donors, the Center and my practice and my strategy of refusing to settle could not be viable. Only on the rarest of occasions are objectors willing to pay an attorney an hourly rate.

Relying solely on contingent fees would not be viable; most courts do not award objectors attorneys' fees except upon a showing of material improvement to the class. An unsuccessful objection would pay nothing; even a successful objection may only scuttle a particular settlement without any guarantee that an attorney fee would be awarded down the line; even a successful objection that results in material improvement for the class often results in resistance from the district court in paying attorneys' fees. *E.g.*, *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012).

Thus, until procedural rules permit for-profit objectors to recover bounties for successful objections on a more consistent basis, a professional objector has to be expected to settle some fraction of his or her objections; refusing to do so would make the practice non-viable, and deprive courts of almost all substantive objections. The fact that a professional objector may have settled objections in the past is not evidence of bad faith in a future objection; each objection has to be considered on the merits.

In this particular case, there are two reasons to think that Mr. Bandas's objection is not intended vexatiously. *First,* as I have discussed above, the objections in this case are meritorious, and Mr. Bandas has previously been willing to prosecute meritorious objections to the bitter end and success, even when doing so was likely to be a money-losing proposition:

- In *Dennis v. Kellogg* (9th Cir. Sep. 4, 2012), Mr. Bandas was counsel of record in a successful appeal of a court's approval of a class action settlement.

- In *In re Baby Products Antitrust Litig.*, No. 12-1165, No. 12-1166, and No. 12-1167 (3d Cir.), Mr. Bandas is prosecuting an appeal on behalf of an objector through the final resolution of the case. I argued the appeal in September on behalf of a different

objector, and, based on the oral argument, I expect a ruling reversing the district court's decision.

- In *In re Online DVD Antitrust Rental Litig.*, No. 12-15705 *et al.* (9th Cir.), Mr. Bandas's client's appeal has been consolidated with my appeal. Mr. Bandas has not settled his case, and has prosecuted his client's appeal.

Notably, unlike many professional objectors who have been co-appellants in cases where my clients have appealed, Mr. Bandas has never done anything to interfere with my ability to prosecute an appeal on behalf of one of my *pro bono* clients. Other professional objectors have attempted to undermine my non-profit work, because they view it as a threat to their business model. Mr. Bandas's willingness to prosecute appeals of objections, and to cooperate, rather than interfere, with the meritorious appeals the Center for Class Action Fairness prosecutes, is evidence distinguishing him from abusive professional objectors.

I further understand that Mr. Bandas has not sought any money to withdraw his objection in this case, and has sought to continue to prosecute the objection on behalf of the objectors with standing to object.

*Second,* and most importantly, it is my understanding that Mr. Bandas is willing to stipulate to an injunction precluding him from settling his objection—even on appeal—without court approval, thus closing the loophole I discuss above. Such an offer has two effects:

- *First,* it shows conclusively that Mr. Bandas is bringing his clients' objection in good faith. By offering to "bind himself to the masts" and offering to pre-commit not to withdraw an appeal of his objection, Mr. Bandas demonstrates that he believes he is bringing an objection that will ultimately improve the settlement for the class. Mr. Bandas will not receive any payment if he ultimately loses his objection; indeed, he will not receive any payment unless this Court approves a payment for Mr. Bandas. Mr. Bandas plainly would not offer to stipulate to such an injunction if he was bringing the objection solely for vexatious purposes.

- *Second,* it is my understanding that class counsel has not accepted Mr. Bandas's offer to stipulate to an injunction. If so, this proves conclusively that class counsel is being disingenuous when they claim their concern is that Mr. Bandas will try to extort them with a meritless objection. If they were concerned about the possibility of extortion, they would not engage in expensive motion practice and discovery, but would simply agree to the stipulation. The fact that class counsel is instead attempting to improperly strike the objection demonstrates that they fear not a meritless objection, but a meritorious objection, and that their discovery requests are designed to raise the Soto Objectors' costs and punish them for daring to object.

The use of an "anti-alienability" injunction or rule has support in the academic literature as the best means of deterring "blackmail-minded objectors." *See* Brian Fitzpatrick, *The End of Objector Blackmail?*, 62 Vanderbilt Law Review 1623 (2009).

## V.   CONCLUSION

The Soto objection is meritorious. Even if it does not succeed in the district court level, if the Soto objection prosecuted on appeal with high-quality appellate advocacy, it is likely to result in the rejection of the settlement by the Fifth Circuit.

A stipulation to an anti-alienability injunction by class counsel would moot the need for any discovery into the good faith of Mr. Bandas, and would further moot the question of whether Mr. Bandas is bringing his objection in good faith or acting vexatiously by doing so.

A refusal to stipulate to the injunction demonstrates that class counsel's fear is not of Mr. Bandas's supposed extortionate motives, but of the merits of his objection, and protecting a multi-million dollar fee award and unfair class action settlement from Fifth Circuit scrutiny. Such a refusal would demonstrate that

12

there is no good-faith basis for the discovery or sanctions requests class counsel is making in this case.

Executed under penalty of perjury this 31st day of October, 2012, in Houston, Texas,

/s/ Theodore H. Frank
Theodore H. Frank

EXHIBIT 1:  DOCUMENTS CONSIDERED

1. Order of May 31, 2012. (Docket No. 14562)

2. The "Global Settlement." (Docket No. 15695-2)

3. Order of August 22, 2012. (Docket No. 15734)

4. Memorandum of Law for Final Approval. (Docket No. 15764)

5. Wayne Kaplan Objection. (Docket No. 15846)

6. Perry Objection. (Docket No. 15858)

7. Objection of Soto, et al. (Docket No. 15859 and exhibits)

8. Order of October 16, 2012. (Docket No. 15951)

9. Garcia and Bay Area Construction Response to Interrogatories. (Docket No. 15959)

10. Soto and SHS Construction Response to Interrogatories. (Docket No. 15960)

11. Garcia and Bay Area Construction Response to RFPs. (Docket No. 15964)

12. Soto and SHS Construction Response to RFPs. (Docket No. 15965)

13. Class Counsel's Omnibus Response. (Docket No. 15981 and exhibits)

14. Class Counsel's Motion for Sanctions. (Docket No. 15982 and exhibits)

15. Notice Of Pendency And Proposed Settlement Of Class Action Against Builders, Installers, Suppliers And Participating Insurers (as posted on http://www.laed.uscourts.gov/drywall/Settlements/Buildersupplierinstalle r.notice.pdf)

16. Letter of Christopher Bandas to Leonard A. Davis (October 9, 2012)

17. Letter of Christopher Bandas to Leonard A. Davis (October 18, 2012)

18. Letter of Christopher Bandas to Leonard A. Davis (October 26, 2012)

19. Brian Fitzpatrick, *The End of Objector Blackmail?*, 62 Vanderbilt Law Review 1623 (2009)

20. Ted Frank, "The problem of self-dealing by class counsel", PointOfLaw.com (Apr. 17, 2012)