# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 09-2047 |
| | SECTION L |
| | JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL CASES | MAG. JUDGE WILKINSON |

### MEMORANDUM OF LAW IN SUPPORT OF
### THE NORTH RIVER INSURANCE COMPANY'S
### MOTION IN LIMINE CONCERNING STANDARD FOR
### <u>GOOD FAITH SELLER'S KNOWLEDGE</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Court has scheduled trial to begin on November 26, 2012 on the limited issue of whether Interior Exterior Supply Company ("INEX") was a good faith seller of Chinese-Manufactured Drywall ("CDW") following Hurricane Katrina.  Despite the clear language of the Louisiana redhibition statutes that base the difference between a good faith seller and a bad faith seller on the seller's actual knowledge, the Plaintiffs' Steering Committee ("PSC") has indicated its intention to argue that INEX can be found to be a bad faith seller under a "know or should have known" standard.  Because application of a "know or should have known" standard would be inconsistent with Louisiana law and would make the November trial a nullity, Defendant The North River Insurance Company ("North River") has filed a Motion in Limine to prevent the introduction at trial of any evidence, testimony, or argument that seeks to impose redhibition liability against INEX on any standard less than actual knowledge as required by the redhibition statutes.  This Memorandum will set forth the legal bases in support of the Motion in Limine.

The Court is extremely familiar with the background facts of this litigation, as shown in the Court's recent ruling on personal jurisdictional challenges raised by the Taishan defendants.

*See In re Chinese Manufactured Drywall Prods. Liab. Litig.,* MDL No.2047, 2012 WL 3815669, at *1 (E.D. La. Sept. 4, 2012). The Court is also familiar with the claims asserted against INEX in this case. North River therefore believes that it is not necessary to discuss the factual background of this motion in any detail. North River believes that the Court is also aware of the differing views between North River and the PSC on the issue of the applicable standard governing whether a seller of a product with redhibitory vices can be found to be bad faith seller.

## SUMMARY OF THE MEMORANDUM

The trial scheduled for November 26, 2012 is limited to the specific issue of whether INEX was a good faith seller of Chinese-manufactured drywall. Articles 2531 and 2545 of the Louisiana Civil Code, which control the issue, define the extent of a seller's liability in redhibition based upon whether the seller "knows" or "did not know" of the defect at the time it sold the product. The statutory language is clear and unambiguous and requires an actual knowledge standard. A court cannot rewrite the statute to impose a standard the Louisiana Legislature chose to exclude.

Both the Louisiana Supreme Court and this Court have held that the appropriate standard is actual knowledge. In addition, on more than 80 occasions, the Legislature has incorporated a "knew or should have known" standard in statutes – including a statute defining good faith and a statute allowing nonpecuniary damages in certain redhibition cases. If the Legislature wants to impose liability based upon a "knew or should have known" standard of conduct, it does so by express language.

Despite the clear language of Articles 2531 and 2545, there are some cases that have used the phrase "knew or should have known" in discussing redhibition claims against sellers. Those decisions give no explanation for ignoring the clear and express language of Articles 2531 and 2545. The statements are largely dicta, because even the cases that have used "knew or should

have known" standard have not imposed liability based upon such a standard.  Nothing in those cases justify deviating from the language used by the Legislature in the redhibition statutes in an attempt to impose liability against a seller based on a lower standard of conduct than the standard set forth in the statutes.

Some Louisiana cases have held that a seller cannot ignore an obvious defect that is apparent upon a visual inspection of a good to be sold.  These cases involve complex machinery such as cars, boats, or medical equipment in which a defect might be obvious to the seller but not to the buyer.  Because there is no suggestion, even by the PSC, that the presence of sulfur in drywall is an obvious defect that can be seen on visual inspection of the product, the "obvious defect" cases have no application to the claims against INEX.

Articles 2531 and 2545 require a determination of whether a seller actually knew of a defect.  This standard must be applied in the trial of the redhibition claims against INEX.

## THE REDHIBITION STATUTES AND THE LOUISIANA SUPREME COURT REQUIRE ACTUAL KNOWLEDGE OF THE DEFECT BEFORE A SELLER CAN BE HELD TO HAVE ACTED IN BAD FAITH

The amount of damages for which a seller of a product with redhibitory defect is responsible is determined by statute.  The redhibition statute makes a clear distinction between a seller who knows of the defect in the product it sold and a seller who does not have that knowledge.

A seller who does not know of the defect in a product it sold has very limited liability under Louisiana Civil Code Article 2531:

**Liability of seller who knew not of the defect**

A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails so to do, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.

A seller who knows of the defect is subject to much greater liability under Louisiana Civil Code Article 2545:

**Liability of seller who knows of the defect; presumption of knowledge**

A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.

A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

In order to determine the standard for the scope of a seller's liability in redhibition, the Court need not – and should not – look any further than the plain language of Articles 2531 and 2545. *See* LA. CIV. CODE art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."); *In re La. Health Serv. & Indem. Co*., 749 So.2d 610, 615 (La. 1999) (in construing a statute, the appropriate starting place is the language of the statute itself).

The Louisiana Supreme Court expressed this rule clearly in *Hamilton v. Royal International Petroleum Corp.*, 934 So.2d 25, 32-33 (La. 2006):

The starting point for the interpretation of any statute is the language of the statute itself. *Richard v. Hall*, 03-1488, p. 22 (La.4/23/04), 874 So.2d 131, 148; *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695, p. 12 (La.6/29/01), 808 So.2d 294, 302. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent. *See* La. Civ. Code. Ann. art. 9; La.Rev.Stat. 1:4. Courts are not free to rewrite laws to effect a purpose that is not otherwise expressed. *Cacamo v. Liberty Mut. Fire Ins. Co.*, 99-3479, p. 4 (La.6/30/00), 764 So.2d 41, 44; *White v. Wal-Mart Stores, Inc.*, 97-393, p. 4 (La.9/9/97), 699 So.2d 1081, 1084.

These well-established rules of statutory construction leave no doubt that the determination of whether a seller is a good faith seller or a bad faith seller depends on the seller's knowledge.  Any other interpretation of Articles 2531 and 2545 are inconsistent with – and prohibited by – the express language the Legislature used in the statutes.

Any doubts about the meaning of Articles 2531 and 2545 were put to rest by the Louisiana Supreme Court in *Aucoin v. Southern Quality Homes*, 984 So.2d 685, 691 (La. 2008), when the Court unequivocally stated that "[t]he ***extent of a seller's liability to a buyer*** for breaching this warranty [redhibition] ***depends on whether the seller knew, or did not know, of the defect***" (emphasis added).  *Aucoin* also discussed the recovery of nonpecuniary damages in redhibition, which is governed by Louisiana Civil Code Article 1998, which requires that a seller "knew or should have known" that the buyer's purpose in entering into the contract was to gratify a nonpecuniary interest.  *Id.* at 696.  The Louisiana Supreme Court in *Aucoin* clearly recognized a distinction between a statute that requires actual knowledge and a statute that bases liability on a "should have known" standard.

This Court also reached the same conclusion in *In re Propulsid Products Liability Litigation*, Civ.A. 01-1300, 2002 WL 1446714 (E.D. La. July 2, 2002), in which the Court considered a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The plaintiffs alleged that pharmacy defendants "knew or should have known that the drug they dispensed and sold was defective and unreasonably dangerous."  *Id.* at *3.  After quoting Articles 2545 and 2531, the Court held that "***[i]nsofar as the plaintiffs have alleged that the defendants knew of the defect, plaintiffs have stated a claim in redhibition under which they may seek damages***."  *Id.* (emphasis added).  That ruling necessarily meant that to the extent the plaintiffs alleged that the defendants should have known of the defect, they had not stated a claim in redhibition.

The Louisiana Legislature, the Louisiana Supreme Court, and this Court have all spoken and mandated that a seller can be held to be a bad faith seller in redhibition only if the seller has actual knowledge of the defect.  This Court need not look further to conclude that actual knowledge of the defect is required to invoke the bad faith seller provisions of Article 2545.

## WHEN THE LEGISLATURE WANTS TO ADOPT A "KNEW OR SHOULD HAVE KNOWN" STANDARD, IT DOES SO EXPRESSLY

There are currently more than 80 provisions of the Louisiana Revised Statutes and the Louisiana Civil Code in which the Legislature expressly incorporated a "knew or should have known" standard.  These statutes involve such diverse and important issues as appointment of an attorney in child custody cases (LSA-R.S. 9:345), the burden of proof in claims against merchants (LSA-R.S. 9:2800.6), hit-and-run driving (LSA-R.S. 14:100), liability for violation of medical payment statutes (LSA-R.S. 22:1143, 22:1860), violations of the unfair trade practices act (LSA-R.S. 22:1969), prompt payment of worker's compensation claims (LSA-R.S. 23:1625.1), liability for servers of alcoholic beverages (LSA-R.S. 26:935), liability for violations of hazardous substance statutes (LSA-R.S. 30:2183), and prohibited acts involving interstate commerce (LSA-R.S. 54:15).  A full list of these provisions is attached as Appendix A to this Memorandum.[1]

A substantial number of those legislative acts involve statutes which impose civil liability on the basis of a "knew or should have known" standard.   For example, on three occasions, the Legislature has based liability for defects in things on whether a party "knew or should have known" of the defect.  Civil Code Article 2317.1 makes the owner or custodian of a thing liable

---

[1] The Legislature has also incorporated a "knew or should have known" standard into such mundane statutes as cancelling the recordation of a mortgage (LSA:R.S. 9:5174), prohibited practices of antique dealers (LSA-R.S. 37:1879), littering (LSA-R.S. 30:2531), and keeping buildings in repair (LSA-C.C. Art. 660).

to third parties for damages caused by the ruin, vice, or defect of the thing if the owner or custodian knew or should have known of the ruin, vice, or defect.

> Art. 2317.1. Damage caused by ruin, vice, or defect in things
>
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

The Legislature adopted a "knew or should have known" standard in determining when a lessor can waive warranties against vices or defects in Civil Code Article 2699:

> Art. 2699. Waiver of warranty for vices or defects
>
> The warranty provided in the preceding Articles may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee.
>
> Nevertheless, a waiver of warranty is ineffective:
>
> (1) To the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known;
>
> (2) To the extent it is contrary to the provisions of Article 2004; or
>
> (3) In a residential or consumer lease, to the extent it purports to waive the warranty for vices or defects that seriously affect health or safety.

In establishing when a lender can be liable for damage caused by defects in the thing he loaned, the Legislature once again based liability on a "knew or should have known" test:

> Art. 2902. Lender's liability for damage caused by defects in the thing
>
> The lender is liable to the borrower when defects in the thing lent cause damage or loss sustained by the borrower, if the lender knew or should have known of the defects and failed to inform the borrower.

In claims for redhibition, the Louisiana Legislature has conditioned the recovery of nonpecuniary damages on a "knew or should have known" standard:

> Art. 1998. Damages for nonpecuniary loss
>
> Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the

circumstances surrounding the formation or the nonperformance of the contract, *the obligor knew, or should have known*, that his failure to perform would cause that kind of loss.

Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

Article 1998 is often at issue in redhibition cases.  As mentioned earlier, in *Aucoin*, the Louisiana Supreme Court had no trouble holding that the seller's liability in redhibition was based on the seller's actual knowledge but applying a "should have known" standard to the plaintiff's claim for nonpecuniary damages under Article 1998.  *Aucoin*, 984 So.2d at 691, 696.

In *Young v. Ford Motor Co.*, 595 So.2d 1123, 1124 (La. 1992), the Louisiana Supreme Court addressed the question of whether the purchaser of a defective vehicle could recover damages for emotional distress in the absence of physical injury.   The Court concluded that such recovery was permissible "if the requirements of Louisiana Civil Code articles 2545 and 1998 are satisfied.   Article 2545 addresses the seller's liability for a product which contains a redhibitory defect, while Article 1998 concerns the availability of nonpecuniary damages in breach of contract cases."   *Id.*   The opinion contains substantial discussion of the legislative purpose behind Article 1998, which had been adopted in 1984.  *Id*. at 1129-33.  Because the evidence established that the plaintiff had purchased the track for the "pecuniary interest" of transportation for business and recreational purposes, the Supreme Court held that mental anguish damages could not be recovered under Article 1998.  *Id.* at 1133.

The same result was reached more recently in *Jones v. Winnebago Industries, Inc.*, No. 47,137 (La. App. 2nd Cir. 5/16/12), 93 So.2d 1113, in which the purchaser of a defective recreational vehicle recovered in redhibition against the manufacturer.   Article 1998 was implicated because it is "the controlling article for the type of damages referred to by the redhibition articles (specifically La. C.C. art. 2545)."  *Id.* at 1121.  The court held that damages were not recoverable because even though the plaintiffs had a valid nonpecuniary interest

(spending time with family and enjoying outdoor activities) in buying the vehicle, that "does not change the fact that the primary purpose of the purchase of a recreational vehicle is transportation/recreational travel." *Id.; see also Nelson Radiology Assoc., L.L.C. v. Integrity Med. Sys., Inc.*, 16 So.3d 1197, 1203-04, 1209-10 (La. App. 4th Cir. 2009), (denying mental anguish damages to purchaser of a refurbished mammography unit even though seller knew of the defect and was liable under Article 2545); *Chaudoir v. Porsche Cars of N. Am.*, 667 So.2d 569, 577-78 (La. App. 3rd Cir. 1996) (affirming award of mental damages against luxury car dealer who knew of defects in vehicle prior to sale).

On at least one occasion, the Legislature has utilized a "knew or should have known standard" in a statute defining good faith. Louisiana Civil Code Article 523 defines when the owner of tangible personal property is or is not in good faith:

> La. C.C. Art. 523.    Good faith; definition.
>
> An acquirer of a corporeal movable is in good faith for purposes of this Chapter unless he knows, or should have known, that the transferor was not the owner.

The Legislature is very experienced in deciding when to impose a "knew or should have known" standard of liability. It has imposed a "knew or should have known" standard on three occasions in establishing liability for damages caused by a vice or defect in an item. The Legislature has adopted a "knew or should have known" standard for certain types of damages in redhibition cases. And the Legislature has defined good faith in terms of "knew or should have known" on one instance. The adoption of an actual knowledge standard in Articles 2531 and 2545 establishing the liability for a seller of an item with a redhibitory vice or defect, and the exclusion of a "should have known" standard that appears in Article 1998 and dozens of other statutes, could not present a more definitive and clear Legislative decision: the redhibition liability of a seller of a defective good is based on what the seller knew, not on what the seller knew or should have known.

### A COURT CANNOT IMPOSE A "SHOULD HAVE KNOWN" STANDARD ON ARTICLE 2545 WHEN THE LEGISLATURE DID NOT DO SO

The Louisiana Legislature has often regulated civil conduct through statutory language that imposes liability when an actor "knew or should have known" certain factual information. The Legislature has deemed it appropriate to allow the recovery of nonpecuniary damages in a redhibition case when the seller of a product knew of a defect prior to sale and also "knew or should have known" that a breach of the contract could result in nonpecuniary damages. LA. CIV. CODE art. 1998; *Young*, 595 So.2d at 1133. The Legislature has repeatedly defined liability resulting from a defect in a good based upon whether the responsible party "knew or should have known" of the defect. LA. CIV. CODE arts. 2317.1, 2699, 2902.

Articles 2531 and 2545 focus on whether a seller of a product **knew** of a redhibitory defect prior to sale, not whether the seller knew or should have known of the defect. If the Legislature had intended to impose bad faith seller liability against a seller who "knew or should have known" of the defect, just as it used that same language on more than fourscore occasions in the past. The Legislature, however, chose not to do so. It is inconceivable that the Legislature, who so regularly adopts a "knew or should have known" standard to define standards of civil liability, meant the same thing in Articles 2531 and 2545 which are limited to actual knowledge.

The legislative determination that the extent of liability against a seller of a good with a redhibitory defect depends on the seller's actual knowledge, and not upon what the seller should have known, must be respected by the Court because "[c]ourts are not free to rewrite laws to effect a purpose that is not otherwise expressed" in a statute. *Hamilton v. Royal Internat'l Petroleum Corp.*, 934 So.2d 25, 33 (La. 2006) (*citing Cacamo v. Liberty Mut. Fire Ins. Co.*, 764 So.2d at 44); *White v. Wal-Mart Stores, Inc.*, 699 So.2d 1081, 1084 (La. 1997). Rather than

rewrite Articles 2545 and 2531, the Court must follow the language of the statute itself, as the Louisiana Supreme Court did in *Aucoin* and this Court did in *Propulsid*.

## A "SHOULD HAVE KNOWN" STANDARD WOULD VIOLATE OTHER PRINCIPLES OF REDHIBITION LAW

The suggestion by the PSC that the relevant inquiry of INEX's knowledge of a defect in the drywall it sold should be based on a "should have known" standard has no basis in Louisiana law. Not only is the PSC's "should have known" theory in conflict with the language of the statute, the decision of the Louisiana Supreme Court in *Aucoin*, and the decision of this Court in *Propulsid*, the PSC's theory conflicts with two very well-established principles of a seller's liability in redhibition.

One of the basic rules of redhibition liability is that while a manufacturer is charged with knowledge of all defects that the manufacturer makes or sells, a seller of the item is not charged with that knowledge. That principle derives from Article 2545, which expressly provides that a seller is deemed to know that the thing he sells has a redhibitory defect when it is a manufacturer of that thing, but makes no similar presumption of knowledge against a seller. This is why courts have repeatedly held that a non-manufacturing seller is not presumed to have knowledge of a defect in a product it sells and the purchaser must prove that the seller knew of the defect. *See, e.g.*, *McGough v. Oakwood Mobile Homes, Inc.*, 779 So.2d 793, 802 (La. App. 2nd Cir. 2000); *Holloway v. Gulf Motors, Inc.*, 588 So.2d 1322 (La. App. 2nd Cir. 1991); *Parker v. Dubus Engine Co.*, 563 So.2d 355, 358 (La. App. 3rd Cir. 1990); *Weber v. Caterpillar Mach. Corp.*, 542 So.2d 544 (La. App. 5th Cir. 1989), *writ deni*ed, 548 So.2d 332 (La. 1989); *Rider v. LeCompte*, 398 So.2d 114 (La. App. 3rd Cir. 1981).

Equally enshrined in redhibition jurisprudence is the rule that a seller has no duty to inspect a good for hidden or latent defects prior to selling the good. *See, e.g., La. Farm Bureau Mut. Ins. Co. v. Lowes Home Ctrs. Inc.*, 149 F.3d 1174 (5th Cir. 1998) (a non-manufacturing

seller "is not required to inspect the product for redhibitory defects or vices prior to sale"); *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir.1993) ("A seller is not required, however, to inspect a product prior to sale to determine the possibility of inherent vices or defects which are not apparent."), *cert. denied sub nom. Kelley v. Indus. Refrigerated Sys., Inc.,* 510 U.S. 1043 (1994); *State Farm v. Norcold Inc.*, No. 07-1024, 2008 WL 4853030, *2 (W.D. La. Oct. 17, 2008) ("a seller is not required to inspect a product to determine the possibility of non-apparent defects"); *Ratliff v. Porter Cable Co. of N.Y.*, 210 F. Supp. 957 (E.D. La. 1962) ("The only question to consider is whether it was incumbent upon the vendor to inspect the saw prior to sale to determine the possibility of an inherent vice or defect. The law is clear that no such duty lies."); *Haley v. Wellington Specialty Ins. Co*., 4 So.3d 307, 314 (La. App. 2nd Cir. 2009) ("the retailer of the sign . . . had no duty to disassemble the sign to search for hidden defects"); *Adams v. Owens-Corning Fiberglas Corp.*, 923 So.2d 118, 123 (La. App. 1st Cir. 2005) ("a non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects"); *Ferruzzi, U.S.A., Inc. v. R.J. Tricon Co.*, 645 So.2d 685, 688 (La. App. 4th Cir. 1994) ("a non manufacturer seller is not required under Louisiana law to inspect a product before selling it to determine the possibility of inherent vices or defects").  *See also Jackson v. Sears Authorized Retail Dealer Store*, 821 So.2d 590, 593 (La. App. 2d Cir. 2002) (a non-manufacturing seller is not required "to inspect the product prior to sale to determine the possibility of inherent vices or defects" because the "imposition of such a duty would effectively make the non-manufacturing seller a guarantor against defects over which it had no control or responsibility. The light of reason illuminates the unduly onerous burden such duty would inflict upon retailers.").

This Court has recognized the same rule in *Loper v. Nat. Union Fire Ins. Co.*, No. Civ.A. 99-1350, 2001 WL 210367, *4 (E.D. La. Mar 02, 2001) ("A seller is not presumed to know of

non-obvious defects in a product and it is not required to inspect its products prior to sale to detect such defects.").

## CASES USING A "KNEW OR SHOULD HAVE KNOWN" STANDARD CONFLICT WITH ARTICLES 2531 AND 2545

Reading a "should have known" standard into Articles 2545 and 2531 ignores the plain language of the statutes, improperly rewrites the statutes in contravention of the legislative decision to use an actual knowledge standard, conflicts with decisions of the Louisiana Supreme Court, this Court, and many other courts, and is inconsistent with other basic principles of redhibition law. Despite the clear language of Articles 2531 and 2545 and controlling cases which base a seller's liability upon actual knowledge, there are some Louisiana decisions which have used the words "knew or should have known" in discussing redhibition liability. Some of those cases involve claims for nonpecuniary damages under Article 1998, discussed in the previous section, and do not involve attempts to base redhibition liability on a "should have known" standard. Some of the cases recite that the purchaser has alleged that the seller knew or should have known of the defect but apply an actual knowledge standard.[2] Some cases simply state that there was no evidence that the seller either knew or should have known of the defect; no liability is imposed and the court's statement is dicta.[3]

There are some cases that substantively discuss redhibition liability in terms of what a seller "knew or should have known." None of those decisions analyzes how a statute that is expressly based on what a seller "knew" provides a basis for imposing liability based upon what a seller "knew or should have known." None of those decisions even admit that the language used in the opinion is not the same language that appears in the redhibition statute. None of

---

[2] *Wimberly v. Blue*, 11 So.3d 560 (La. App. 3rd Cir. 2009).
[3] *Spillers v. Montgomery Ward & Co., Inc.*, 294 So.2d 803, 807 (La. 1974); *Delanzo v. ABC Corp.*, 572 So.2d 648, 651 (La. App. 5th Cir. 1990); *McCauley v. Manda Bros. Prov. Co.*, 202 So.2d 492, 49 (La. App. 1st Cir. 1967), *aff'd*, 211 So.2d 528 (La. 1968).

those decisions offer any justification for applying a standard that is not based upon the controlling statutory language.  And, most importantly, none of those cases appear to impose redhibition liability on a "knew or should have known" standard.

For a long time, there was little uncertainty that the extent of liability for a seller who sold a defective product was determined by the seller's actual knowledge.  *See, e.g., La. Iron & Supply Co. v. Galloway*, 6 La. App. 218, 1927 WL 3863 (La. App. 2nd Cir. 1927) (Article 2545 "seems to give the right to recover damages only in case the seller knows of the defects and fails to advise the purchaser of same"); *Coignard v. F.W. Woolworth & Co.*, 175 So. 123, 126 (La. App. Orleans 1937) ("Unless the vendor knew of the vice sold and failed to declare it, he cannot beheld answerable in damages."); *Boyd v. J.C. Penny Co., Inc.*, 195 So. 87, 89 (La. App. 1st Cir. 1940) ("Articles 2531 and 2545 announce a principle of substantive law that is clear and unambiguous.  The liability of the seller who does not know of the vices and defects in the article sold is liable only for the return of the price and the expenses of the sale."); *Hurley v. J.C. Penny Co.*, 140 So.2d 445, 448 (La. App. 1st Cir. 1962) (Article 2545 "places liability upon the vendor who omits to declare a known vice to the purchaser of the thing he sells"); *Ratliff v. Porter Cable Co.*, 210 F. Supp. 957, 958 (E.D. La. 1962) ("A retailer is not liable to his vendee for breach of implied warranty in the absence of knowledge of the deleterious condition of the product. . . . The only duty imposed upon the vendor is the duty to declare the vices which are known by the vendor.").

It is difficult to determine when some courts began ignoring the language of Articles 2531 and 2545 by suggesting that a lesser standard than actual knowledge might be applicable to a claim against a seller in redhibition.  An early case of this type is *Johnson v. H.W. Parson Motors, Inc.*, 231 So.2d 73, 77-78 (La. App. 1st Cir. 1970), which stated that

> It is clear that damages are recoverable only where the seller knew or at least is charged with constructive knowledge of the defects in the thing sold and omits to

> declare same,[FN4] and the burden is upon the buyer to prove existence of such
> knowledge, *Sinquefield v. Yates*, 197 So.2d 395 (La. App.2d Cir. 1967).

The footnote citation was to Article 2545, which does not include a reference to constructive knowledge. The *Sinquefield* citation does not support a constructive knowledge standard, because that court held that "plaintiff has failed to bear the burden which the law places upon her of proving Yates had knowledge of the defect which caused the accident and that such defect existed when the trailer was purchased from him." 197 So.2d at 397. *Parson Motors* is not even internally consistent because, in the second sentence after referring to constructive knowledge, the court stated that testimony of the seller that the car was in good running condition "does not amount to proof of knowledge on the part of the seller of a defect at the time of the sale and omission to declare same, which is the touchstone for awarding damages as provided in Article 2545." *Parson Motors,* 231 So.2d at 78. *Parson Motors* has never been cited by any court as authority for imposition of a "should have known" standard in redhibition.

A more recent case that is cited on occasion for the use of a "should have known" standard is *Dailey v. The Home Furnishings Store*, 857 So.2d 1051, 1058 (La. App. 4th Cir. 2003), in which the court's entire rationale is a non sequitur:

> In a redhibition action, a successful plaintiff may recover reasonable attorneys'
> fees expended in bringing the action if the seller knew or should have known of
> the defect in the object or thing that is the subject of the sale. La. C.C. art. 2545.

The Court's unilateral insertion of "should have known" language in its opinion is incorrect and unpersuasive for several significant reasons. First, the opinion was issued five years before the Louisiana Supreme Court stated in *Aucoin* that "the extent of a seller's liability to a buyer for breaching this warranty [redhibition] depends on whether the seller knew, or did not know, of the defect." *Aucoin v. S. Quality Homes, LLC,* 984 So.2d 686, 691 (La. 2008). The Supreme Court's later pronouncement in *Aucoin* of an actual knowledge standard must control

over the prior inconsistent statement of a lower court.[4]  Second, because the only authority cited

by the *Dailey* court is Article 2545, the court's insertion of additional language that does not

appear in the statute creates a conflict with the language of the statute itself.   Third, by

transmogrifying the statutory language without explanation, the court provides no basis to justify

the court's decision to rewrite the words used by the Legislature in the statute.

    In 1972, the Fifth Circuit issued its opinion in *Ross v. John's Bargain Stores Corp.*, 464

F.2d 111 (5th Cir. 1972) which wandered off into uncharted waters.  *Ross* is a troubling case

because although the plaintiffs based their claim solely on negligence, the defendant moved for

summary judgment on the basis that a retailer who has no knowledge of alleged defects cannot

be held liable to the purchaser, relying on Articles 2531 and 2545.  *Id.* at 112.  The plaintiffs

responded that their claim was based on "negligence, not warranty, and was not limited by any

actual knowledge requirement."  *Id.*  Unfortunately, the court did not resolve the issue.  Instead,

it opined that "law of Louisiana is not entirely clear on the issue presented," *id.* at 112-13 (*citing*

Note, *Defective Products-Vendor's Liability*, 28 LA. L. REV. 270 (1968)), although it did not

define exactly what issue it was considering.

    Instead, the court went on to conflate negligence concepts and redhibition concepts.

First, the *Ross* court analyzed *Langlois v. Allied Chemical Corp.*, 249 So.2d 133 (La. 1971),

which involved the question of whether a property owner could be liable to a firefighter injured

while fighting a fire on the property and did not consider redhibition liability at all.  The court

then briefly discussed the *Ratliff v. Porter Cable* decision to reach this conclusion:

> Despite the apparent strict adherence to an actual knowledge requirement, closer
> scrutiny of the authority relied upon by the Ratliff court reveals that something
> less may suffice. In *Boyd v. J. C. Penney*, cited by the court, the Louisiana court
> of appeals stated that the defendant-vendor did not know of the vices at the time
> the product was sold, "nor did it have any reasonable means of knowing or
> ascertaining before selling". [sic]  And in *Strother v. Villere Coal Co.*, also cited

---

[4] The same is also true of the earlier *Parson Motors* decision.

by the district court, the Louisiana appellate court held, "[I]n the absence of proof that the dealer had knowledge of the presence of the dangerous matter or should have discovered it by reasonable inspection, he is not liable." The Ratliff court also cited Prosser on Torts. Prosser too suggests that liability might be predicated on something less than actual knowledge: "It is only where he has some reason to believe that the product may be defective that he is required to do more than handle it in the ordinary way."

*Ross,* 464 F.2d at 113-114.

*Ross* recognized that "in none of the preceding cases was liability actually found because a vendor should have not but did not" know of the defect and instead a "should have known" standard "appears to have been judicially incorporated into the duty owed by a vendor to a purchaser." *Id.* at 114.[5] The Court's conclusion was that "in Louisiana, upon proper proof, a vendor may be held liable for injuries caused by a defective product if he knew or should have known of the defect at the time of sale." *Id.* at 115.

The decision in *Ross* is difficult to understand for several reasons. First, the court based its decision upon a few decisions of intermediate appellate courts rather than the language of Article 2545 itself or a decision of the Louisiana Supreme Court. In fact, the court did not even quote the language of Article 2545. Second, the court fails to explain why a complete absence of Louisiana authority imposing redhibition liability on a seller based on a "should have known" standard justifies a conclusion that Louisiana law recognizes such a rule. Third, the court failed to discuss the long line of Louisiana cases that does not require a retailer to inspect a product for hidden defects. Fourth, the court failed to identify the type of "proper proof" that would allow a court to ignore the language of Article 2545 and impose a lesser standard of liability.

Finally, the *Ross* court's treatment of *Ratliff* is difficult to understand. *Ratliff* could not be any clearer that liability in redhibition is based on an actual knowledge standard: "A retailer is not liable to his vendee for breach of implied warranty in the absence of knowledge of the

---

[5] Not surprisingly, *Ross* does not offer any authority for the errant statement that "judicial interpretation" can change a standard of liability set by the Legislature through a statute.

deleterious condition of the product."  210 F. Supp. at 958.  *Boyd v. J.C. Penny* is equally clear: the "substantive law in this State . . . is clear and unambiguous. The liability of the seller who does not know of the vices and defects in the article sold is liable only for the return of the price and the expenses of the sale."  195 So.2d at 89.

*Strother v. Villere Coal Co.*, 15 So.2d 383 (La. App. Orleans 1943), was a case in which a homeowner sued the seller of coal after an explosion while the coal was being burned in a fireplace, but the evidence showed that the explosion had been caused by a bullet in the fireplace. 15 So.2d at 384.  The court of appeals affirmed judgment in favor of the seller because there was not "the slightest proof to show that the defendant was in any way responsible for the presence of the bullet in the coal."  *Id.* at 385.  "[P]laintiff's action for breach of contract would be limited to the restitution of the price of the coal, unless she would have been able to prove that the vendor knew of the vice and failed to declare it."  *Id.*

In fact, *Ratliff* cited authority that specifically recognized that a seller had no duty to test or inspect a product for hidden defects:

> In 1 Products Liability, Frumer-Friedman, § 18.03(1)(a), the majority view as to the duty of a retailer to inspect for latent defects is discussed:
>
> > 'It is the majority view that a retailer who purchases from a reputable manufacturer and sells the product under circumstances where he is a mere conduit of the product is under no affirmative duty to inspect or test for a latent defect, and, therefore, liability cannot be based on a failure to inspect or test in order to discover such defect and warn against it.'
>
> In Restatement of the Law, Torts, § 402, comment a at 1089 reads as follows:
>
> > 'A wholesale or retail dealer, who sells in their original packages goods bought from reputable manufacturers, acts as a conduit through which the goods pass from manufacturer to consumer, who buys them in reliance upon the manufacturer's reputation for competence and care. A vendor of such goods, therefore, is under no duty to subject them to rigid inspection or tests before selling them.'

*Ratliff,* 210 F. Supp. at 959.

*Ross* was cited in *Peltier v. Seabird Industries, Inc.*, 304 So.2d 695 (La. App. 3rd Cir. 1975), which arose out of a boat fire. *Ross* was not cited to suggest that a seller's liability in redhibition could be based on a standard below actual knowledge, however, but for the proposition that the liability of a seller in redhibition is "judged by a different standard than that of a manufacturer." *Id*. at 699.[6] *Peltier* stated the applicable law in these terms:

> There is no rule of law in Louisiana which imputes to the seller of new products (such as the boat herein or an automobile) knowledge of latent vices and defects, where the seller is not the manufacturer of the product. Nor is there an obligation to search for hidden defects, the duty of such products being fulfilled if he performs the routine, normal inspections in the business upon receipt of the product, checking and discovering those defects which are patent and obvious. *Gordon v. Bates-Crumley Chevrolet Co., supra; Simon v. Ford Motor Co.,* 256 So.2d 725 (La.App.1st Cir. 1971), affirmed in part and reversed in part on other grounds, 282 So.2d 126 (La.1973); *Clay-Dutton, Inc., v. Bill Holliday,* 233 So.2d 720 (La.App.4th Cir. 1970). In regard to other products, *See: Penn v. Inferno Manuf. Corp.,* 199 So.2d 210 (La.App.1st Cir. 1967), writ refused, 251 La. 27, 202 So.2d 649 (1967); *Hurley v. J. C. Penney Co.,* 140 So.2d 445 (La.App.1st Cir. 1962), cert. denied June 15, 1962; *Boyd v. J. C. Penney Co.,* 195 So. 87 (La.App.1st Cir. 1940).

304 So.2d at 699-700.

## A SELLER CAN BE LIABLE IN REDHIBITION FOR SELLING A PRODUCT WITH A DEFECT THAT IS OBVIOUS TO THE SELLER BUT NOT TO THE BUYER

The cases cited in *Peltier* do not suggest that a seller's liability in redhibition can be based on a "know or should have known" standard, but they do recognize that even under an actual knowledge standard, seller cannot ignore obvious defects in a product in order to avoid liability in redhibition.[7]  For example, in *Simon v. Ford Motor Co.*, 256 So.2d 725, 730-31 (La. App. 1st Cir. 1972), *aff'd in relevant part,* 282 So.2d 126 (La. 1973), the court held:

---

[6] In fact, it appears that *Ross* has never been cited by the Fifth Circuit, any federal district court, or any state court in Louisiana as authority for use of a "should have known" standard in a redhibition claims against a seller.

[7] *Penn v. Inferno Mfg. Corp.,* 199 So.2d 210, 216 (La. App. 1st Cir. 1967), cited in *Peltier*, recognized "the general rule that the vendor of a product who has no knowledge of a vice or defect in the product is not liable for damages caused by the vice or defect."  The court also recognized, however, "an exception to the general rule and allow knowledge of a vice or defect to be imputed to a seller who is not also a manufacturer of the

Plaintiff alleges that Hub City Motors and McIlwaine Motor Company failed to inspect the vehicle 'carefully and meticulously' in an attempt to 'detect and discover faulty manufactural defects' in the vehicle. Plaintiff further alleges that the aforementioned motor companies failed to give notice and warning to buyers of the car in question of the allegedly defective ball joint. The law imposes no duty upon the vendors of new automobiles, however, to discover any defects except those that are patent and obvious. *Gordon v. Bates-Crumley Chevrolet Company*, 158 So. 223 (La.App.2d Cir. 1935). Defendant motor companies performed the routine inspections normal in receipt of new cars, checking for obvious defects (Tr. 155, 157). They found nothing to indicate defects in the ball joint assemblies of the automobile, nor were they under obligation to search for hidden defects in such assembly under principles set forth in *Gordon v. Bates Crumley*, cited above, which this court holds applicable to the vendor of used cars as well as to the vendor of new cars.

In *Harris v. Cardwell*, 373 So.2d 777 (La. App. 2nd Cir. 1979), passengers in a boat were hurt because the seat pedestal of the boat was not properly attached to the keelboard. In affirming judgment in favor of the seller, the court held:

A seller who knows of defects, or who, with reasonable inspection can find obvious or apparent defects, in the product he sells, stands in a similar position as the manufacturer of the product. . . .  The seller does not have to make minute inspection or disassemble the product to look for latent defects and, unlike the manufacturer, he is not presumed to know the latent defects in the product he sells. . . .

The fact that none of the six screws in the pedestal base went into the keelboard was not detectable by simple inspection with the naked eye. . . .  The seller had been selling boats for more than 20 years and never before had experienced a pedestal failure. The defective installation of the seat was not obvious or detectable by simple inspection, but was latent. Under these circumstances, the verdict, in finding no liability on the part of the seller, and the judgment are correct.

*Harris,* 373 So.2d at 780 (citations omitted).

The concept of an "obvious defect" was also addressed in *Herbert v. Vice,* 413 So.2d 342 (La. App. 3rd Cir. 1982), which also involved the defective manufacture of a boat.  The court cited *Harris v. Bardwell* as the "most recent affirmation" of the principle that there "is no duty imposed upon the seller to make minute inspection or to disassemble the product to search for defects."  413 So.2d at 345.   The court also cited *Peltier* to conclude that while "there is no duty

---

article when the seller has labeled the goods as his own or has in some way held them out to be manufactured by him."  *Id*. at 217.

imposed upon the seller . . . to make minute inspections or to disassemble the product to search for defects," the seller has the "duty to perform routine, normal inspections in the business, upon receipt of the product, checking and discovering those defects which are patent and obvious." *Id.*

The difference between obvious defects and latent defects is shown by the decision in *Martin v. Henderson*, 505 So.2d 192 (La. App. 3rd Cir. 1987), which involved the sale of diesel fuel which contained water and caused damaged cars in which it was used. After stating in the abstract that a "non-manufacturer seller is responsible for damages only if he knew or should have known that the product sold was defective and failed to declare it," *id.* at 195, the court's ruling was more precise:

> The record in this case is devoid of any evidence indicating that the appellant had actual knowledge of the presence of water in the diesel fuel sold by him. The non-manufacturer seller is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects. . . . Simple visual inspection would not have disclosed the presence of water in the diesel fuel anyway. We therefore hold that the defect was latent and that constructive knowledge of the defect should not be charged to appellant. *Id.* (citations omitted).

An example of when a seller's liability in redhibition is based on an obvious defect in the good sold is *Meche v. Harvey, Inc.*, 664 So.2d 855, 857 (La. App. 3rd Cir. 1996), in which the seller of a used car did not tell the buyers that the car had previously been wrecked and damaged. Although there was no direct proof of actual knowledge of problems in the car by the seller, the evidence showed that the defects "were obvious to anyone with experience in body work" and the "defendant inspected the car closely at least once prior to the sale" which showed signs of prior damage and repair to the car. *Id.* at 859. "[A]ny reasonable auto dealer would have discovered the defects in the vehicle caused by the prior wreck." *Id.* If the defects are apparent to the seller, the "seller may not simply turn a blind eye to defects for the purpose of avoiding liability under redhibition." *Id.*

The concept that a seller cannot turn a "blind eye" to obvious defects in a product it sells is not a derogation of the actual knowledge standard contained in Articles 2531 and 2545. Instead, those cases affirm the actual knowledge standard by refusing to allow a seller to avoid liability for obvious defects by ignoring something that is obvious to the seller. The "obvious defect" line of cases certainly cannot be read as an abrogation of the actual knowledge requirement set forth in the redhibition statutes.

The "obvious defect" line of cases in actuality will have a fairly narrow application. Redhibition is a species of breach of an implied warranty, but "seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." LA. CIV. CODE art. 2521. This means that "[a]pparent defects, which the buyer can discover through a simple inspection, are excluded from the seller's legal warranty." *Nelson Radiology Assoc., L.L.C. v. Integrity Med. Sys., Inc.,* 16 So.3d 1197, 1206-07 (La. App. 4th Cir. 2009). A defect is apparent "if a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the property." *Id.* at 1207.

The "obvious defect" cases apply only in situations in which the defect would be obvious to a reasonable seller but would not be apparent to a prudent buyer. The cases therefore involve complicated machines like cars, boats, or medical equipment, where the seller is in a better position to spot a defect by a simple visual examination of the product than is the buyer. North River is aware of no case in which the concept of obvious defect has been applied to a building product or to the presence of a chemical in a finished product. Because there is no dispute that the presence of sulfur in drywall cannot be detected by a visual inspection of the drywall, this line of cases has no application to the upcoming trial.[8]

---

[8] The cases that have addressed the "obvious defect" have all involved situations in which the obvious defect ignored by the seller was the same defect for which the claimant was seeking damages. The PSC has indicated

## CONCLUSION

The determination of whether INEX was not a good faith seller of Chinese-manufactured drywall and is therefore liable for damages beyond the replacement cost of the product will be based on a few simple principles:

1.  Under Article 2545, INEX was a good faith seller unless INEX "knows that the thing he sells has a defect but omits to declare it."

2.  A seller has no duty to inspect a product for latent defects.

3.  While knowledge of latent defects is imputed to the manufacturer of a product, a seller is not charged with imputed knowledge of a latent defect.

The jury in this case must be asked to evaluate INEX's conduct based upon the language of the redhibition statutes.  The PSC has repeatedly indicated that they want the issue to be decided by the jury to be based upon a "knew or should have known" standard that is not found in Articles 2531 and 2545.  The controlling law on INEX's conduct requires an actual knowledge standard.  Any testimony, documentary evidence or argument that is based on the lower standard advocated by the PSC will be contrary to Louisiana law, will mislead and confuse the jury, and will result in an inevitable retrial.

In order that the case be properly tried and the jury be provided with evidence based on the controlling law, the Plaintiffs cannot be allowed to put before the jury any oral or written evidence, or any argument by counsel, that suggests to the jury that INEX can be found not to be a good faith seller if it should have known of the presence of sulfur in the drywall INEX sold and did not declare the presence of sulfur to purchasers of the drywall.  The North River Insurance

---

that it will try to argue that INEX should have known of the presence of sulfur in the drywall because (1) Chinese-manufactured drywall is heavier than domestic drywall, (2) other Chinese products have been found to be defective, or (3) some INEX customers expressed a preference for domestic drywall over imported drywall. The Plaintiffs' arguments are based on allegations that have no causal or historical relationship with the defect for which they are seeking to impose liability.  No Louisiana case has ever sanctioned such a strained approach to the concept of a seller's knowledge of an obvious defect that can be found through a visual inspection.

Company therefore asks that Plaintiffs, including their respective counsel and witnesses, be instructed that they are not to place before the jury, seek to enter into evidence, or mention or divulge, directly or indirectly, through argument, oral testimony, or exhibits, anything suggesting that INEX's conduct is to be based upon a "knew or should have known" standard.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

_____ /s Eric B. Berger _____
BRIAN S. MARTIN, ESQ.
KEVIN RISLEY, ESQ.
RODRIGO "DIEGO" GARCIA, JR., ESQ.
One Riverway, Suite 1600
Houston, Texas 77056
Phone: (713) 403-8206
Fax:  (713) 403-8299
bmartin@thompsoncoe.com

LOBMAN CARNAHAN BATT ANGELLE
& NADER

SIDNEY J. ANGELLE, ESQ.
La. Bar No. 1002
ERIC B. BERGER, ESQ.
La. Bar No. 26196
400 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
Phone: (504) 586-9292
Fax:   (504) 586-1290
sja@lcba-law.com
ebb@lcba-law.com

ATTORNEYS FOR THE NORTH RIVER
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice

of electronic filing in accordance with the procedures established in MDL 2047 on November 2, 2012.

*/s Eric B. Berger* _____

ERIC B. BERGER