**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED               MDL NO. 09-2047
DRYWALL PRODUCTS LIABILITY
LITIGATION                                             SECTION L

                                                           JUDGE FALLON

THIS DOCUMENT RELATES TO
ALL CASES                                              MAG. JUDGE WILKINSON

**MEMORANDUM IN SUPPORT OF**
**MOTION IN LIMINE OF THE**
**NORTH RIVER INSURANCE COMPANY**

MAY IT PLEASE THE COURT:

Defendant The North River Insurance Company ("North River"), Appearing Herein Through Undersigned Counsel, moves for a ruling *in Limine* before trial, voir dire examination of the jury, and receipt of any evidence in this cause.[1]  North River moves that the Court prohibit all parties, including their respective counsel and witnesses, from seeking to enter into evidence, mentioning or divulging, directly or indirectly, through argument, oral testimony, or exhibits, the following matters:

1.        That Interior/Exterior Building Supply ("INEX") had any duty to test drywall before it sold the drywall.  Louisiana law is absolutely clear that a seller has no duty to inspect a product for hidden or latent defects.  *See* in *Loper v. Nat. Union Fire Ins. Co.*, No. Civ. A. 99-1350, 2001 WL 210367, *4 (E.D. La. Mar 02, 2001) ("A seller is not presumed to know of non-

---

[1] North River has also filed a Motion in Limine addressing the issue of the proper standard of knowledge for determining whether or not a seller is in good faith.   The present Motion in Limine is to address specific evidentiary issues at trial.

obvious defects in a product and it is not required to inspect its products prior to sale to detect such defects").[2]

2.     That INEX had no quality control procedures, that INEX failed to take any actions to ensure quality control of the products it sold, or any other matter asserting or suggesting an absence or lack of quality control procedures on behalf of INEX.  Because the defect in Chinese-manufactured drywall ("CDW") is not observable on a visual inspection of the product, any matter relating to an absence or deficiency of quality control procedures would violate Louisiana law which places no duty on a seller to test a product for hidden or latent defects.

3.  That INEX should have known that CDW was defective, contained sulfur, or anything else that would base a finding that INEX was not a good faith seller of CDW on a standard less than the actual knowledge of INEX.  North River has filed a separate Motion in Limine addressing the proper standard of knowledge for a seller's liability in redhibition, which is incorporated herein in full by reference.  Plaintiffs have abandoned any claim based on

---

[2] *See also La. Farm Bureau Mut. Ins. Co. v. Lowes Home Ctrs. Inc.*, 149 F.3d 1174 (5th Cir. 1998) (a non-manufacturing seller "is not required to inspect the product for redhibitory defects or vices prior to sale"); *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir.1993) ("A seller is not required, however, to inspect a product prior to sale to determine the possibility of inherent vices or defects which are not apparent."), *cert. denied sub nom. Kelley v. Indus. Refrigerated Sys., Inc.,* 510 U.S. 1043 (1994); *State Farm v. Norcold Inc.*, No. 07-1024, 2008 WL 4853030, *2 (W.D. La. Oct. 17, 2008) ("a seller is not required to inspect a product to determine the possibility of non-apparent defects"); *Ratliff v. Porter Cable Co. of N.Y.*, 210 F. Supp. 957 (E.D. La. 1962) ("The only question to consider is whether it was incumbent upon the vendor to inspect the saw prior to sale to determine the possibility of an inherent vice or defect. The law is clear that no such duty lies."); *Haley v. Wellington Specialty Ins. Co.*, 4 So.3d 307, 314 (La. Ct. App. 2009) ("the retailer of the sign . . . had no duty to disassemble the sign to search for hidden defects"); *Adams v. Owens-Corning Fiberglas Corp.*, 923 So.2d 118, 123 (La. App. 1st Cir. 2005) ("a non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects"); *Ferruzzi, U.S.A., Inc. v. R.J. Tricon Co.*, 645 So.2d 685, 688 (La. App. 1st Cir. 1994) ("a non manufacturer seller is not required under Louisiana law to inspect a product before selling it to determine the possibility of inherent vices or defects").  *See also Jackson v. Sears Authorized Retail Dealer Store*, 821 So.2d 590, 593 (La. App. 2d Cir. 2002) (a non-manufacturing seller is not required "to inspect the product prior to sale to determine the possibility of inherent vices or defects" because the "imposition of such a duty would effectively make the non-manufacturing seller a guarantor against defects over which it had no control or responsibility. The light of reason illuminates the unduly onerous burden such duty would inflict upon retailers").

negligence, so a "should have known" standard is not applicable to any issue that the jury will be asked to resolve.

4.   That CDW was heavier than domestic drywall or that CDW was more brittle or more likely to crack than domestic drywall or that INEX had any such knowledge.  Despite years of litigation over CDW, there is absolutely no evidence of any type that the weight or rigidity of CDW has any connection with the offgassing of sulfur that can occur in CDW.  In the absence of a causal relationship, introduction about qualities of CDW unrelated to the presence of sulfur are not relevant to the issue of INEX's knowledge of the presence of excess sulfur in CDW and can only be offered to confuse or mislead the jury.

5.   That any customer of INEX or any officer or employer expressed a preference for a specific brand of drywall or for domestic drywall only or stated that it did not want any foreign board, Knauf board, Chinese board, or anything similar, unless the preference is specifically related to the presence of sulfur in CDW.  A certain customer's brand loyalty, or a preference for domestic drywall over CDW based on characteristics other than the presence of sulfur in CDW is not relevant to whether INEX knew of the presence of sulfur in CDW (or even to whether INEX should have known of the presence of sulfur in the CDW) and would be offered only to confuse or mislead the jury.

6.   That any of the CDW failed to comply with ASTM labeling standards or the labeling standards of any national, state, or local building code.  Plaintiffs have suggested that some of the CDW sold by INEX failed to comply with those standards because the CDW did not list the thickness of or properly identify the manufacturer of the CDW.  These are false issues that are unrelated to the presence of sulfur in CDW and irrelevant to the issue of whether INEX knew of

the presence of sulfur in CDW (or even if INEX should have known of the presence of sulfur in CDW).

7.   Any testimony from Johnny Odom.  Mr. Odom, the Chief Building Inspector for Orleans Parish, was designated as a fact witness.  He has testified under oath that he has no personal knowledge about the conditions at any house that had CDW, nor does he have any personal knowledge about any inspections done by any of his staff at any home containing CDW.  Mr. Odom has not been designated as an expert, the expert opinions on which he might testify have never been disclosed, and he has prepared no expert report.    There is therefore no admissible testimony that Mr. Odom could provide.

8.   Any action taken or not taken by INEX after it stopped selling CDW.  The present trial is limited to the issue of whether INEX knew that the CDW it was selling had sulfur that could offgas.  What INEX did or did not do after it stopped selling CDW is totally irrelevant to the issue of what INEX's knowledge was at the time it sold CDW.  As examples, the PSC has elicited deposition testimony from INEX employees that INEX did not tell its customers about the problems associated with CDW after INEX became of aware of those problems in 2009 and has asked questions of INEX employees such as how INEX might have acted differently if it knew of the problems associated with CDW and whether, knowing what they do now, INEX employees wish that INEX had not sold CDW.  None of those after-the-fact questions or answers contains relevant and admissible information.

9.   That INEX did not have a formal complaint department.  This is another issue that has repeatedly been raised by the PSC during depositions.  The deposition testimony has established that (1) complaints were processed through an informal system involving the sales people and management of each INEX facility and (2) INEX did not receive any complaints from any

customer about sulfur problems, smell issues, or corrosion issues relating to CDW until after the news media broke stories about CDW in approximately early 2009.  The absence of a formal complaint department has absolutely nothing to do with the only issue that will be before the jury in this trial.

10.   Any reference to or discussion about articles that may have appeared in trade journals concerning CDW or sulfur issues relating to drywall that appeared after INEX stopped selling CDW.  Any such articles could not be relevant to whether or not INEX knew of the sulfur problems with CDW at the time INEX was selling CDW.

11. Any mention or discussion of phosphogypsym.  Phosphogypsum refers to the gypsum formed as a byproduct of processing phosphate ore into fertilizer with sulfuric acid. Phosphogypsum occurs as a waste product in the fertilizer industry and is radioactive. Phosphogypsum is not used in manufacturing drywall.  Phosphogypsum has no relevance to this case and any mention or discussion of it would be introduced only to mislead, confuse, or scare the jury.

12.   Any mention or discussion of the scope or the cost of remediation of a home containing CDW.  Those issues are beyond the scope of the present trial and any such evidence would be irrelevant and inadmissible.

13.   Any mention or discussion of physical or bodily injury alleged to be caused by CDW.  The Plaintiffs are not seeking recovery of personal injury damages in this case nor have they identified any expert witness to testify on the issue of general or specific medical causation. In addition, any testimony involving what allegedly happened to Plaintiffs or others in their homes after CDW was installed and was never communicated to INEX cannot be relevant to whether INEX knew of the sulfur issue in CDW at the time INEX was selling CDW.

14.   Any settlement, pending settlement, settlement negotiations, or anything else having to do with the settlement or failure to settle of any party in the Chinese-Manufactured Drywall Products Liability Litigation, including but not limited to any of the pending class-wide settlements or of the lack of a settlement between North River and any other party.

15.   Any statement or suggestion to the jury that this trial is necessary because of a failure of any party to agree to a settlement or to any general reference that cases can or usually do settle.  Any such argument or suggestion would be irrelevant, would violate Fed. R. Evid. 408 and would unfairly prejudice North River.

16.   Any statement or reference to the agreement between Knauf and Banner Supply not to share their knowledge of the presence of sulfur in CDW, of the fact that Banner Supply had such knowledge, or anything else suggesting that Knauf or Banner Supply had knowledge of the presence of sulfur in CDW.  The knowledge of those entities, and efforts they took or may have taken to hide such knowledge, are wholly irrelevant to INEX's knowledge.

17.   Any jurisdictional ruling made be the Court or any reference to any jurisdictional pleading or challenge filed by any party in the Chinese-Manufactured Drywall Products Liability Litigation.

18.   Any pretrial ruling of any type by the Court (including but not limited to rulings excluding evidence or excluding or limiting testimony) or of any other ruling made in the Chinese-Manufactured Drywall Products Liability Litigation.

19.   Any pleading, motion, or other document filed by any party or any reference to any pretrial or substantive ruling sought by any party from the Court.

20.   The filing of this Motion in Limine or any ruling by the Court on the Motion in Limine.

WHEREFORE, Defendant The North River Insurance Company asks the Court to instruct all parties, including their respective counsel and witnesses, from seeking to enter into evidence, or from mentioning or divulging, directly or indirectly, through argument, oral testimony, or exhibits, any of the matters set forth above.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

_____/s Eric B. Berger_____
    BRIAN S. MARTIN, ESQ.
    KEVIN RISLEY, ESQ.
    RODRIGO "DIEGO" GARCIA, JR., ESQ.
    One Riverway, Suite 1600
    Houston, Texas 77056
    Phone: (713) 403-8206
    Fax:  (713) 403-8299
    bmartin@thompsoncoe.com


LOBMAN CARNAHAN BATT ANGELLE & NADER

SIDNEY J. ANGELLE, ESQ.
La. Bar No. 1002
ERIC B. BERGER, ESQ.
La. Bar No. 26196
400 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
Phone: (504) 586-9292
Fax:   (504) 586-1290
sja@lcba-law.com
ebb@lcba-law.com

ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY


**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on November 2, 2012.

                                                   __/s Eric B. Berger_____
                                                   Eric B. Berger