UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED   DRYWALL PRODUCTS   LIABILITY LITIGATION | *<br>*<br>*<br>*<br>* | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON |
| This document relates to all cases | *<br>* | <br>MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF INTERIOR EXTERIOR'S
FIRST MOTION *IN LIMINE* REGARDING THE STANDARD IN REDHBITION**

MAY IT PLEASE THE COURT:

Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("Interior Exterior") respectfully submit this memorandum in support of their Motion *in Limine* seeking an order prohibiting Plaintiffs from presenting argument and evidence intended to impute knowledge to Interior Exterior of the sulfur off-gassing defect in drywall imported from China. Plaintiffs intend to impute this knowledge based on what Interior Exterior allegedly "should have known" as a prudent distributor of drywall or allegedly should have discovered based on a inspection of the drywall or the manufacturer's facilities or procedures prior to sale. The legal standard for a bad faith seller in redhibition, as set forth in Louisiana Civil Code article 2545 and well-settled jurisprudence, is: (a) whether the seller knew that the specific defect existed in the product at the time of the sale; or (b) in limited circumstances, based on the facts apparent at the time of sale, the seller should have known that the specific defect existed in the product at the time of the sale. This limited exception for constructive knowledge, however, does not impose upon the seller a duty to undertake an inspection of the product or the manufacturer's facilities or perform independent testing in order to discover the specific defect. Any evidence or argument

addressing facts not related to the actual knowledge or limited constructive knowledge of Interior Exterior should, therefore, be excluded from the bellwether trial of the redhibition claims against Interior Exterior.  This specifically includes precluding Plaintiffs from presenting any evidence or argument of what Interior Exterior allegedly should have done as a "reasonable" distributor of the drywall; should have learned through an investigation or testing of the product or the manufacturer's facilities or procedures; or should have surmised based on the fact that the product was manufactured in China or other alleged imperfections in the product.

**I.     Background of the Case.**

The parties have stipulated that the November trial against Interior Exterior is focused solely on whether Interior Exterior is a good or bad faith seller in redhibition of Chinese manufactured drywall.  A defect is redhibitory when it renders the thing useless, or so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. La. Civ. Code Art. 2520. For an action to be properly considered in redhibition, the defect must not be apparent. La. Civ. Code Art. 2521. That is, the defect must be hidden or not knot known to the buyer. *Id*.

The drywall at issue in this trial was manufactured by two different manufacturers, Knauf (Tianjin) and Tai'an Taishan Plasterboard (TTP).  Interior Exterior purchased the Tianjin drywall from Knauf and the TTP drywall from Metro Resources in 2005 and 2006; and sold the drywall from China in 2006 and early 2007.  Notably, Interior Exterior did not re-brand the drywall from China, nor did it hold itself out as the manufacturer in any way.  It merely sold the drywall.

Plaintiffs allege that the drywall manufactured in China off-gasses sulfur compounds rendering it defective.  The parties have stipulated that this sulfur off-gassing is a redhibitory defect, which existed in the drywall at the time Interior Exterior sold it.

Although Plaintiffs refused to stipulate that Interior Exterior did not have actual knowledge of the sulfur defect at the time of the sale of the drywall, there has not been any evidence developed to establish actual knowledge by Interior Exterior.  Rather, Plaintiffs intend to present evidence and argument that Interior Exterior should have known of the sulfur defect if it had acted as a "reasonable" distributor and independently investigated and tested the drywall before sale.  Plaintiffs specifically intend to argue the following:

1. Interior Exterior should have investigated the manufacturers' facilities, including the raw material mine, manufacturing plant, and testing facilities, and had it done so, likely would have noted a sulfur smell or other issue that then would have altered Interior Exterior to a potential defect, which further chemical composition testing would have revealed;

2. Interior Exterior should have engaged independent investigation services, consultants, sourcing professionals, surveyors, and testing facilities to validate the production process, the quality and content of raw materials, and quality control testing, and had it done so, may have become suspicious of the product and, therefore, undertaken further chemical composition testing that would have revealed the defect;

3. Interior Exterior should have independently performed ASTM testing, instead of relying on the manufacturers' testing, which would have potentially shown problems with the board that, although unrelated to the sulfur defect, would have led Interior Exterior to be suspicious and then undertake further chemical composition testing that would have revealed the defect;

4. Interior Exterior should have been suspicious of the drywall simply because it was manufactured in China and there have been reports of manufacturing problems with other products from China, and, therefore, Interior Exterior should have investigated the drywall, which would have led to it performing chemical composition testing that would have revealed the defect;

5. Interior Exterior should have noted that the TTP drywall allegedly did not have the proper labeling in accordance with the applicable ASTM standards (it allegedly should have noted the dimensions of the board but did not), and, therefore, Interior Exterior should have been suspicious of other issues with the drywall, which should have led to an investigation that would have resulted in it performing chemical composition testing that would have reveled the defect;

6. Interior Exterior knew that there were some complaints about heaviness and hardness of drywall that it had imported from Thailand for a short period of time in 1999/2000 (but which did not contain any sulfur composition defect), and,

       therefore, Interior Exterior should have been suspicious of all imported drywall, which should have led to an investigation of the Chinese drywall that would have resulted in it performing chemical composition testing that would have reveled the defect; and

7. Interior Exterior received limited complaints from customers using the Chinese drywall that the product was heavier and/or more brittle than domestic drywall, and, therefore, Interior Exterior should have been suspicious of a compositional defect in the Chinese drywall, which should have led to an investigation of the product that would have resulted in it performing chemical composition testing that would have reveled the defect.

These arguments are most noticeably contained in the expert report of Rosemary Coates and the reliance expert report of Lydia Luckevich, but Plaintiffs may also seek to present this evidence by the testimony of experts Dean Rutila and Lori Streit, as well as other alleged evidence tending to establish these facts. For the reasons set forth below, the Court should exclude this evidence.

**II.**    **The Redhibition articles distinguish between sellers who did not know and those who knew that the product contained a defect.**

The redhibition articles distinguish between sellers that did not know the product contained the defect and those who did. La. Civ. Code Arts. 2531 and 2545. A non-manufacturing seller of a defective product is not responsible for damages absent a showing that he knew the product was defective and failed to declare it. *Slaid v. Evergreen Indem., Ltd.*, 32-363 (La.App.2d Cir.10/27/99), 745 So.2d 793 citing *Wilson v. State Farm Fire & Cas. Ins.Co.*, 94-1342 (La.App. 3d Cir. 4/5/95), 654 So.2d 385, 387.

Louisiana Civil Code Article 2531 is entitled "Liability of seller who knew not of the defect" and provides that "[a] seller who ***did not know*** that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. …" La. Civ. Code Art. 2531 (emphasis added). Sellers that fall within this category are referred to as "good faith sellers."

On the other hand, Louisiana Civil Code Article 2545 entitled "Liability of seller who knows of the defect; presumption of knowledge" states that "[a] seller who ***knows*** that the thing

4

he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the purchase price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees." The sellers in this category are referred to as "bad faith sellers."

Under Louisiana Civil Code Article 2545, manufacturers are presumed to have knowledge of the defect and cannot be good faith sellers in redhibition. Interior Exterior did not manufacture the drywall, nor did it re-label the drywall it sold. Article 2545 does not provide for any other presumptions of knowledge, rebuttable or otherwise.

The basic premise of our Civilian tradition provides that "[w]hen a law is clear and unambiguous and it application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code Art. 9. Plaintiffs have often asserted that the proper standard in determining whether a seller may be considered a "good faith seller" or a "bad faith seller" is whether the seller knew or "should have known" of the defect. (Rec. No. 8309). However, the words "should have known" do not appear anywhere in either Civil Code Article 2531, the good faith seller statute, or Civil Code Article 2545, the bad faith seller statute.

The Civil Code "recognize(s) that sources of law are legislation and custom." La. Civ. Code Art. 1. Additionally, the Civil Code provides that "[l]egislation is the solemn expression of legislative will." La. Civ. Code Art. 1. The Civil Code, however, also recognizes that "[c]ustom results from practice for a long time and [is] generally accepted as acquired the force of law. [But] [c]ustom may not abrogate law." La. Civ. Code Art. 3. Thus, as the redhibition articles are devoid of the words "should have known" it is improper to use such a standard in determining

5

whether Interior Exterior is a good faith or bad faith seller under redhibition. Accordingly, based on the clear language of the Civil Code, the only standard to be applied to determine whether it is a good faith or bad faith seller under redhibition is whether it "knew" of the defect in the drywall at the time of the sale.

### III.     A constructive knowledge standard has been applied in limited circumstances with the available knowledge at the time of sale.

A constructive knowledge standard has been applied in limited circumstances when at the time of the sale, the seller with the known information at hand "should have known" that the product contained a latent or hidden defect. This is often cited as the "constructive knowledge" exception. Generally, "seller-dealers have been charged with constructive knowledge of defects … in cases where the seller installs, assembles, or repairs a particular part and that particular part is defective. The court found the sellers in these cases had placed themselves in the same posture as a manufacturer upon installing, repairing, or assembling the defective object." *Cernigliaro v. Marquis Marine, Inc.*, 381 So. 2d 886, 888-89 (La. Ct. App. 1980). In other words, the constructive knowledge exception is applicable only when it has been shown that a non-manufacturing seller of a product "turned a blind eye" to a defect in situations where a seller conducted an inspection or performed services on a product that reasonably should have led to discovery of a redhibitory defect through the exercise of ordinary care. *See, Meche v. Harvey, Inc.*, 95-848 (La.App. 3 Cir. 12/6/95), 664 So.2d 855; *Riche v. Krestview Mobile Homes, Inc.*, 375 So.2d 133 (La.App. 3 Cir. 7/25/79), *re'hrng denied* (9/4/79); *Coleman Oldsmobile, Inc. v. Newman & Associates, Inc.*¸477 So.2d 1155 (La.App. 1 Cir. 1985), *re'hrng denied* (11/21/1985).

In *Meche v. Harvey, Inc.*, 95-848 (La.App. 3 Cir. 12/6/95), 664 So.2d 855, the Court applied the constructive knowledge exception to find the seller was liable in bad faith. Plaintiffs purchased a used automobile from a non-manufacturer seller of the vehicle, but noticed problems

6

immediately upon use. Eventually, plaintiffs were involved in an accident in the car; after which, when the car went in for mechanical work, the mechanic noticed the car had been involved in a previous undisclosed accident, which led to many of the problems plaintiffs were having with the vehicle.

The Court granted the plaintiffs redhibition action and rescinded the sale, deeming the previous wreck a redhibitory defect that diminished the value of the vehicle to the extent that had the plaintiffs known of the wreck, they would never have purchased the vehicle in the first place. The *Meche* court also went one step further in granting plaintiffs damages available only against a bad faith seller because it found that the dealership that had sold plaintiffs the vehicle had ignored obvious defects. The court held:

> Plaintiffs could not prove that defendant had actual knowledge of the defects. Nevertheless, they were able to show that the defects were **obvious to anyone with experience** in body work and that defendant inspected the car closely at least once prior to the sale.
>
> The record supports that any reasonable auto dealer would have discovered the defects in the vehicle caused by the prior wreck. The repair job on the passenger side was of relatively low quality and there was paint over spray from the repair on the passenger door jambs.

*Id.* at 859. (emphasis added).

Thus, the narrow exception to actual knowledge carved out in *Meche* would apply where (a) an inspection was conducted, and (b) any reasonable inspector would have found the problems during that inspection. In other words, the Court found that, in the course of inspecting the vehicle, the dealership had essentially "looked away" from certain obvious defects which would have been apparent to the dealership in the exercise of ordinary care.

The constructive knowledge exception is most often discussed in a line of cases dealing with the sale of automobiles. *See Juneau v. Bob McKinnon Chevrolet Co.*, 260 So.2d 919

7

(1972); *Wade v. McInnis-Peterson Chevrolet, Inc.*, 307 So.2d 798 (1975); and *Williamson v. C.P. Strange*, 323 So.2d 875 (1975).  In *Juneau*, the car was originally purchased by the car dealership for re-sale.  At the time the dealership purchased the car, it was overheating, presumably due to the radiator being broken which showed signs of leaks and corrosion.  Prior to the car being sold to the plaintiff, the dealership sent the radiator to a shop for repair.  After replacing the radiator, the dealership did not test drive the car to determine if it properly operated.  Once plaintiff purchased the car, he drove it only a short distance before the car stalled and overheated and caught fire.  The car's idle pulley was later to be found to be frozen and not turning which prevented the cooling system from properly operating.  The Court found that the dealership had inspected the car prior to selling it to plaintiff and either found the defect and did nothing; or after repairing and replacing the radiator, the dealership overlooked the other obvious defects of the cooling system – thus, imposing constructive knowledge of the defect onto the dealership.

Following the analysis provided by *Juneau*, the court in *Wade v. McInnis-Peterson Chevrolet, Inc.*, 307 So.2d 798 (1975) also imputed constructive knowledge on a car dealership. In *Wade* the dealership replaced the windshield on the vehicle prior to selling it to plaintiff, but the dealership failed to perform a water test on the new windshield.  Shortly after the purchase it rained and water leaked into plaintiff's newly purchased car.  Because the dealership had actually replaced the windshield, the court charged the dealership with constructive knowledge of the defective seal.  The court invoked the rule set forth in *Juneau*, "charging the seller with knowledge of the defects which are 'discoverable in the exercise of ordinary care.'" *Id.*

Courts, however, have refused to imposed construction knowledge on a seller through the application of this "discoverable in the exercise of ordinary care" standard where the seller does

8

not undertake to perform an inspection or perform service on the product. In *Williamson v. C.P. Strange*, 323 So.2d 875 (1975), the court acknowledged that the constructive knowledge exception exists but refused to apply it to the facts of the case. Following the sale of a new truck to plaintiff, the truck was driven a short distance when plaintiff noticed that it "shook, shimmied, and made noises" when driven at speeds of 30-35 miles per hour. At the time of the purchase the truck was new and had not been driven. The court in *Williamson*, unlike the courts in *Juneau* and *Wade*, held that it would be improper to attribute knowledge of the defect to the dealership because the defect was discoverable only when the truck was driven and then only at particular speeds; and there was no constructive knowledge of the imperfections since the defects could not be reasonably discovered by the defendant in the exercise of ordinary care. *Id.* The *Williamson* court also noted that "no inspection of the vehicle while parked would have revealed the defects or indicated this possibility." *Id.*

Likewise, in *Riche v. Krestview Mobile Homes, Inc.*, 375 So.2d 133 (La.App. 3 Cir. 7/25/79), *re'hrng denied* (9/4/79), a case involving the sale of a motor home, the court refused to apply the limited exception to actual knowledge under factually analogous circumstances to the instant case. In rejecting the plaintiffs' claims that the seller "should have known of the defect," the court held:

> The evidence in this case indicates that the defects in the home at the time of sale were of such a nature as *not to be observable by ordinary inspection without actually taking the unit apart and inspecting each individual component.* As such, Krestview was a good faith seller bound only to restore the purchase price and corresponding expenses of the sale.

*Id.* at 137. (emphasis added).

The foregoing line of cases teaches that under limited circumstances, constructive knowledge, rather than actual knowledge, may be imposed, but only when a seller undertakes to

9

inspect, repair, alter or modify the product and fails to discover a defect that should be obvious through the exercise of ordinary care in performing that work.

Significantly, when the constructive knowledge exception is applied, it is only applied when the actual redhibitory defect is overlooked in the exercise of ordinary care. None of the cases ever suggest that bad faith liability can be imposed on a seller because it overlooks an unrelated condition of the product that arguably should have led the seller to be suspicious of the product in general and undertaken a further examination which would have revealed the actual defect. There is no authority for such a stretched application of the constructive knowledge exception.

Based on the clear language of Civil Code Article 2545 and the established authority referenced above, the Court should enter an Order prohibiting Plaintiffs from presenting argument and evidence tending to impute knowledge to Interior Exterior of the sulfur off-gassing defect in drywall based on what Interior Exterior allegedly "should have known" as a prudent importer of drywall or allegedly should have discovered based on a inspection of the drywall or the manufacturer's facilities or procedures prior to sale.

**IV.    There is no duty incumbent upon a seller to inspect goods for latent or hidden defects.**

Moreover, a non-manufacturing seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993) *cert. denied*, 510 U.S. 1043, 114 S. Ct. 688, 126 L. Ed. 2d 656 (1994). Any notion to the contrary has been repeatedly and systematically rejected by Louisiana state and federal courts. *See Nelton v. Astro-Lounger Mfg. Co. Inc.,* 542 So.2d 128, 131 (La.App. 1st Cir.1989); *Harris v. Atlanta Stove Works, Inc.,* 428 So.2d 1040, 1043 (La.App. 1st Cir.), *writ denied,* 434 So.2d 1106 (1983); *Ferruzzi, U.S.A., Inc. v. R.J. Tricon Co., Inc.,* 93-1591

10

La. App. 4 Cir. 9/29/94, 645 So. 2d 685, 688 (La. Ct. App. 1994); *Picolo v. Flex-A-Bed, Inc.,* 466 So.2d 652, 654 (La.App. 5th Cir.1985); *Tauzier v. Dodge*, CIV. A. 97-2444, 1998 WL 458184 (E.D. La. Aug. 4, 1998); *Loper v. Nat'l Union Fire Ins. Co.*, CIV.A. 99-1350, 2001 WL 210367 (E.D. La. Mar. 2, 2001); *State Farm v. Norcold Inc.*, CIV.A. 07-1024, 2008 WL 4853030 (W.D. La. Oct. 17, 2008); *Diaz v. Goodyear Tire & Rubber Co.,* CIVA 07-353-FJP-CN, 2008 WL 4528186 (M.D. La. Oct. 1, 2008).

There can be no disputing this well-settled axiom. Nevertheless, Plaintiffs intend to try and present evidence and argument that Interior Exterior should have undertaken a whole host of investigatory actions, including repeated trips to China, that should have allegedly led it to knowledge of the defect. Louisiana courts, however, have refused to impose a requirement for a seller to conduct even the most cursory inspection beyond visual observation of apparent defects much less the type of heightened scrutiny sought to be imposed by Plaintiffs. For example, in *Harris v. Atlanta Stove Works, Inc.,* 428 So.2d 1040, 1043 (La.App. 1st Cir.), *writ denied,* 434 So.2d 1106 (1983), the court found that "absent a complete dismantling of the heater, the vendor could not have known that the product was defective. [And] due to the absence of the requisite knowledge by the vendor, the vendor is not liable."

It is undisputed that sulfur defect in the Chinese manufactured drywall is only discoverable upon complex, destructive chemical analysis of the drywall. This type of destructive testing of the drywall is analogous to the type of invasive investigation requiring complete dismantling of a product rejected by the courts in *Harris* and other cases. Accordingly, at a minimum, the court should enter an order prohibiting Plaintiffs from presenting evidence and argument that Interior Exterior should have undertaken any investigation of the product or the manufacturer which would have revealed the defect.

11

**V.     Conclusion**

Interior Exterior respectfully requests that this Honorable Court enter for an order *in limine* prohibiting Plaintiffs from presenting argument and evidence intended to impute knowledge to Interior Exterior of the sulfur off-gassing defect in drywall imported from China based on what Interior Exterior allegedly "should have known" as a prudent importer of drywall and allegedly should have discovered based on a inspection or testing of the drywall or the manufacturer's facilities or procedures prior to sale.

                                          Respectfully submitted,

                                          /s/ Richard G. Duplantier, Jr.
                                          _____
                                          Richard G. Duplantier, Jr. #18874
                                          Lambert J. Hassinger, Jr. #21683
                                          Benjamin R. Grau #26307
                                          Carlina C. Eiselen, #28524
                                          Galloway, Johnson, Tompkins, Burr & Smith
                                          701 Poydras Street, Suite 4040 One Shell Square
                                          New Orleans, LA 70139
                                          504 525 6802 / 504 525 2456 Fax
                                          rduplantier@gjtbs.com
                                          jhassinger@gjtbs.com
                                          bgrau@gjtbs.com
                                          ceiselen@gjtbs.com
                                          *Counsel for Interior Exterior Building Supply, L.P.*

## Certificate of Service

The undersigned certifies that this document has been served on Plaintiffs' liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 2nd day of November, 2012.

/s/ Richard G. Duplantier, Jr.
_____
RICHARD G. DUPLANTIER, JR.