UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | |

Class Counsel's Memorandum of Law in Support of Motion
to Strike the Objection of Saul Soto, SHS Construction,
<u>Ronnie Garcia and Bay Area Contracting & Construction, Inc.</u>

## I.     Introduction

Saul Soto, SHS Construction, Ronnie Garcia and Bay Area Contracting & Construction, Inc. (collectively the "Remaining Bandas Objectors") presented their meritless objections to the Settlement Agreement in MDL No. 2047 Regarding claims Involving Builders, Installers, Suppliers and Participating Insurers (hereafter the "Global Settlement") on September 28, 2012. Messrs. Soto and Garcia are represented by Christopher A. Bandas, Esquire, a professional objector who has opposed a score of class action settlements in order to extort attorney's fees. Mr. Soto and Mr. Garcia were recently deposed on October 31, 2012 and November 1, 2012, respectively.

The Remaining Bandas Objectors are not members of the Knauf Settlement, Banner Supply Settlement, L & W Settlement or the Interior/Exterior Supply Co. ("INEX") Settlement. As counsel for these Remaining Bandas Objectors was searching for any client that would afford him the patina of standing to object, he obtained contractors that purchased building materials from large retailers to file phony objections.  These Remaining Bandas Objectors focus on their

1

purchases from Lowe's Home Center's Inc., but Lowe's is not even a Participating Defendant in the Global Settlement, and besides, Lowe's settled all claims against it in a Georgia class action. Based upon discovery, it is now clear that they lack standing all together.

Following these depositions it is now crystal clear that the Remaining Bandas Objectors have no understanding of the terms of the Global Settlement. More important, it is clear that the Remaining Bandas Objectors lack standing to object to the Global Settlement. Their objections should be striken.

## II.   Facts

Prior to the filing of their objection, both Saul Soto (and SHS Construction) and Ronnie Garcia (and Bay Area Contracting & Construction, Inc.) where solicited for purposes of objecting to the Global Settlement by agents of the Bandas Law Firm, Christopher Batman, Esq. and Bert Chapa of the Batman Law Firm. It is evident from the recent depositions of Mr. Soto and Mr. Garcia that their objections were contrived by Mr. Bandas and Mr. Batman for the purpose of hijacking a fee in exchange for the dismissal of the objection.

Saul Soto was solicited by Christopher Batman before his claim was later referred to Mr. Bandas for purposes of pursuing an objection to the Global Settlement. *See* Soto Transcript (attached hereto as Exhibit "A") at Pg. 11. Christopher Batman shares office space in Mr. Bandas' law firm. *Id*. at 12. Mr. Soto was unaware of any problems with Chinese manufactured drywall before discussing the subject with Mr. Batman shortly before the filing of his objection to the Global Settlement. *Id*. at 13. Nor did he have any concerns about Chinese manufactured drywall before discussing the subject with Mr. Bandas. *Id*. at 79.

Likewise, Ronnie Garcia was solicited by Bert Chapa, an investigator working at the

Batman Law Firm. *See* Garcia Transcript (attached hereto as Exhibit "B") at Pgs. 21-22. Like Mr. Soto, Mr. Garcia had no concerns about Chinese drywall before discussing the subject with Mr. Chapa. *Id*. at Pg. 123. Nor did Mr. Garcia consider the prospect of objecting to the Global Settlement before meeting with Mr. Bandas. *Id*. at 128.

Both Mr. Soto and Mr. Garcia executed retainer agreements after being promised an award of $5,000 as an incentive fee for pursuing a meritless objection to the Global Settlement. Both signed a Class Action Objector Power of Attorney and Contingent Fee Agreement. *See* Soto Transcript at Pg. 23; Garcia Transcript at Pg. 97-98. That Agreement provided that Mr. Bandas would represent Mr. Soto and Mr. Garcia for no other purpose than as an objector to a proposed settlement in MDL 2047. *See* Garcia Retainer Agreement (attached hereto as Exhibit "C"), Soto Retainer Agreement (attached hereto as Exhibit "D"). These agreements offered both of the Remaining Bandas Objectors incentives of up to $5,000 in the event Mr. Bandas sought such an award from the court, or through some fraud if the objection "is settled without the necessity for Court Approval."[1] *Id.*, ¶¶3.2 & 3.3.

Despite their total ignorance of the identities of the Participating Defendants in the Global Settlement, *see* Garcia Transcript at Pgs. 44 and 62, Mr. Soto and Mr. Garcia, both of whom are contractors who claim to fear that they may have installed Chinese manufactured drywall in the homes of their customers, managed to identify a single Participating Defendant, Home Depot, as one of the many sources where they procured drywall.[2] *See* Soto and Garcia Responses to

---

[1] This provision is directly at odds with Fed.R.Civ.P. 23(e)(3), which makes concealing such an agreement improper.

[2] Mr. Soto estimates that he purchased between 60 and 65% of his drywall from Lowe's Home Centers, Inc. *See* Soto Transcript at Pg. 52. Indeed, both Mr. Soto and Mr. Garcia

Interrogatories, Exhibits "E" and "F" hereto. Notwithstanding that both of the Remaining Bandas Objectors claimed to have purchased drywall from Home Depot, neither Mr. Soto nor Mr. Garcia could identify any evidence of having purchased Chinese manufactured drywall at Home Depot.

Mr. Soto testified that he had no distinct memory of ever having purchased Chinese manufactured drywall at Home Depot. *See* Soto Transcript at Pg. 59. In addition, Mr. Soto also testified that he had no reason to dispute Home Depot's assertion that it never purchased or sold Chinese manufactured drywall in Texas or in any other state for that matter. *Id*. at Pgs. 59-63. Thus, he was unable to attribute any purchase that he may have made of Chinese drywall to Home Depot. *Id*. at 62.

Likewise, Mr. Garcia was unable to present any evidence of ever having purchased Chinese manufactured drywall from Home Depot. Like Mr. Soto, Mr. Garcia testified that he had no evidence to refute Home Depot's assertion that it never purchased or sold Chinese manufactured drywall in the state of Texas, *see* Garcia Transcript at Pg. 63, and he had no specific recollection of ever having purchased Chinese manufactured drywall in a Home Depot store. *Id*. at Pg. 63-64.

Finally, neither Mr. Soto nor Mr. Garcia were able to present any evidence of having incurred any damages attributable to Chinese manufactured drywall regardless of the source (*i.e.,*

---

contend that they purchased a large amount of drywall from Lowe's notwithstanding that Lowe's is not a Participating Defendant in the Global settlement. Indeed, both Mr. Soto's and Garcia's claims against Lowe's are barred pursuant to the settlement in *Vereen v. Lowe's Home Centers, Inc.*, Case No. SU10-cv-2267B (Sup.Ct., Muscogee County, Georgia). Shockingly, Mr. Bandas and Ms. Petrus, his office manager and objector client, were counsel and objector in the *Vereen* class settlement. That is, they were objectors until paid in a confidential settlement to exit that litigation.

whether obtained from a Participating Defendant or some other party).

Mr. Soto failed to present any evidence of damages attributable to Chinese manufactured drywall.  Mr. Soto testified that none of his customers had complained that they thought he had installed Chinese manufactured drywall in their home.  *See* Soto Transcript at Pgs. 16 and 90.  Although Mr. Soto expressed concern that he may have installed Chinese manufactured drywall in his own home, he had no evidence that he installed Chinese drywall in his home since he had no memory of having done so and since his home had never experienced any symptoms associated with the presence of Chinese drywall.  *Id*. at 75-78.  Mr. Soto also testified that his concern that he may experience health problems after exposure to Chinese manufactured drywall did not rise to the level where he needed to take any legal action and/or seek treatment from a doctor for his claimed emotional distress.  *Id*. at 82 and 91.  Nor was Mr. Soto able to present any valid evidence to support his claim that his tools may have been damaged after being exposed to Chinese manufactured drywall.  *Id*. at Pgs. 86-88.

Mr. Garcia also failed to allege any damages attributable to Chinese manufactured drywall.  Mr. Garcia has not been sued by any homeowners who claim that he installed Chinese manufactured drywall in their home.  *See* Garcia Transcript at Pgs. 10 and 37-38.  For this reason, Mr. Garcia conceded that he had suffered no damage to business reputation in direct conflict with what was stated in his answers to interrogatories.  *Id.* at Pgs. 91-92.  Notwithstanding that Mr. Garcia alleges that he may have installed Chinese manufactured drywall in three of his own properties, he had no recollection of installing Chinese drywall in any of these properties, nor had he experienced any problems with the properties that are commonly associated with the presence of Chinese drywall.  *Id*. at Pgs. 74-77.  Nor did Mr. Garcia present

non-speculative evidence of personal injuries attributable to exposure to Chinese manufactured drywall. *Id*. at Pgs. 78-79 and 87.

### III. Argument

Based on the forgoing it is clear that Messrs. Soto and Garcia and their companies lack standing to object to the Global Settlement since they have failed to present any evidence that they are within the class contemplated by the Global Settlement.

Section 1.1.1 of the Global Settlement defines the class as follows:

> Class. "Class," also referred to as "Settlement Class" or "Class Members," shall include all persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant. A Participating Defendant shall also be a Class Member to the extent the Participating Defendant has remediated or participated in the settlement of claims related to the Chinese Drywall in one or more Affected Properties or repurchased an Affected Property.

Simply stated, the Remaining Bandas Objectors lack standing to object to the Global Settlement since they are unable to present evidence that they have claims arising from or related to Chinese drywall that was purchased from any Participating Defendant. For this same reason, their claims are not within the class definition and their objections should be striken from the record.

Article III standing is an "irreducible constitutional minimum," which requires plaintiffs to demonstrate: they have suffered an "injury in fact"; the injury is "fairly traceable" to the defendant's actions; and the injury will "likely ... be redressed by a favorable decision." *Lujan v.*

6

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). The claimant bears the burden of establishing standing, and "each element [of the three-part standing inquiry] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 560-61. One aspect of the requirement of a genuine case or controversy is the principle that a federal court may not resolve "hypothetical or contingent questions." *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 461(1945).

      The Remaining Bandas Objectors have failed to provide specific, non-hypothetical evidentiary support which is fairly traceable to a Participating Defendant's actions that is capable of meeting their obligation under Fed.R.Civ.P.11. For starters, neither of the Remaining Bandas Objectors were able to present any evidence of having purchased Chinese manufactured drywall at Home Depot, which is the only Participating Defendant that the Bandas Objectors identified as a potential source of Chinese drywall. Neither Mr. Soto nor Mr. Garcia could recall ever having purchased Chinese manufactured drywall in a Home Depot store. Nor could they come forward with any evidence to refute Home Depot's assertion that it did not purchase or sell Chinese manufactured drywall in the state of Texas or in any other state for that matter. Accordingly, the Bandas Objectors have failed to present any evidence that their claimed injuries are traceable to the conduct of Home Depot. Rather, their vague and contrived allegations that they remember seeing markings associated with Chinese drywall at job sites are completely unsupported by the record (*i.e.,* since none of their customers have complained about the presence of Chinese drywall in their homes), and fail to support anything beyond a hypothetical claim that they may

7

have seen Chinese drywall. This non-evidence is insufficient to support the Bandas Objectors' objection to the Global Settlement.

**IV.     Conclusion**

Accordingly, since neither Mr. Soto nor Mr. Garcia were able to confirm that they had purchased Chinese drywall from Home Depot, they lack standing to object to the Global Settlement and their objection should be striken.

Respectfully submitted,

Dated: November 5, 2012

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*and Class Counsel*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*and Class Counsel*