UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED    * | | MDL NO. 2047 |
|     DRYWALL PRODUCTS    * | | |
|     LIABILITY LITIGATION    * | | SECTION: L |
| * | | |
| * | | JUDGE FALLON |
| This document relates to all cases    * | | |
| * | | MAG. JUDGE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

MEMORANDUM IN SUPPORT OF INTERIOR EXTERIOR'S SECOND MOTION *IN LIMINE* REGARDING IRRELEVANT AND/OR PREJUDICIAL EVIDENCE

MAY IT PLEASE THE COURT:

Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("Interior Exterior") respectfully submit this memorandum in support of their Second Motion *in Limine* seeking an order *in limine* instructing all parties and all of their witnesses not to mention, refer to, interrogate, or attempt to convey to the jury in any manner, either directly or indirectly, any of the below-mentioned evidence without first obtaining permission of the Court outside the presence and hearing of the jury on the grounds that such evidence is not relevant and, thus, inadmissible under Rules 401 and 402 of the Federal Rules of Evidence or its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury under Rule 403 of the Federal Rules of Evidence.   This memorandum is also field in support of the North River Insurance Company's similar Motion *in Limine*.

## FACTUAL BACKGROUND

The parties have stipulated that the November trial against Interior Exterior is focused solely on whether Interior Exterior is a good or bad faith seller in redhibition of Chinese-

manufactured drywall ("CDW"). Plaintiffs have stipulated to a dismissal of all other claims against Interior Exterior, including any claims in negligence or breach of contract.

The CDW at issue in this trial was manufactured by two different manufacturers, Knauf Tianjin Plasterboard ("Knauf or KTP") and Taian Taishan Plasterboard ("Taishan or TTP"). Interior Exterior purchased the Tianjin drywall directly from Knauf and the TTP drywall from Metro Resources in 2005 and 2006; and sold the drywall from China in 2006 and early 2007. Notably, Interior Exterior did not re-brand the drywall from China, nor did it hold itself out as the manufacturer in any way. It merely sold the drywall.

Plaintiffs allege that the drywall manufactured in China off-gasses sulfur compounds rendering it defective. The parties have stipulated that this sulfur off-gassing is a redhibitory defect, which existed in the drywall at the time Interior Exterior sold it. There are no allegations of other redhibitory defects.

## LEGAL STANDARD

The basic standard for the admissibility of evidence requires that it be relevant. Rule 401 of the Federal Rules of Evidence defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "Evidence which is not relevant is not admissible." Fed.R.Evid. 402. The determination of relevance requires a two-step analysis: first, the evidence must tend to prove fact; and second, the fact must be "of consequence." Michael R. Fontham, Trial Technique and Evidence §4-8 at 120 (1995). "In other words, the fact must support an ultimate conclusion that may determine the case under applicable legal standards." *Id.*

Under the rules of evidence, "admissibility is predicated on more than just logical

relevance; rather, legal relevance is paramount: 'Although relevant, evidence may be excluded if it probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ... or needless presentation of cumulative evidence.'" *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881, 888-89 (W.D. La. 2001) citing Fed.R.Evid. 403. In determining legal relevance under Rule 403, the trial judge has broad discretion and is authorized to balance the probative value of the evidence against its prejudicial effect. *Id. See also, United States v. Johnson,* 558 F.2d 744 (5th Cir.); *see also United States v. Maceo,* 947 F.2d 1191 (5th Cir.1991). While all evidence may be prejudicial, the prejudice referred to in Rule 403 is "a special kind of harm:  an effect that might lead the jury to rule against a party for the wrong reasons."  Michael R. Fontham, Trial Technique and Evidence §4-9 at 123.  Unfair prejudice, under FRE 403, means an undue tendency to suggest a decision on an improper basis. *Verzwyvelt*, 175 F. Supp. 2d at 889; *see also,* Fed.R.Evid. 403 advisory committee's note.  Evidence may also be properly excluded under Rule 403 if it is speculative, confuses the issues, or is misleading to the jury.

## ARGUMENT

Based on the applicable legal standard, Interior Exterior respectfully submits the following matters should be excluded:

1. Any evidence of, or reference or allusion to, Interior Exterior as an "importer" of CDW, including but not limited to evidence or argument of Interior Exterior's alleged obligations, duties, or responsibilities as an "importer."  This trial is limited to claims in redhibition, which are fundamental claims by a purchaser against a seller.  There is no independent "importer" liability under redhibition. *Ahrens v. TPLC, Inc.*, 955 F. Supp. 54, 56 (E.D. La. 1997).  Accordingly, Interior Exterior's concomitant role as an "importer," to the

extent it even was an "importer" of the CDW as that term is legal defined, is of no consequence to the single issue to be decided by the jury. Reference to Interior Exterior as an "importer" or argument as to the legal effect of that status is, therefore, irrelevant and unfairly prejudicial, confusing, and misleading and should be properly excluded from trial.

    2.    Any evidence or argument that Interior Exterior had any duty to inspect or test the CDW prior to sale to determine the possibility of inherent vices or defects or that Interior Exterior had a duty to visit, inspect, or, in any way, investigate the drywall manufacturing facilities, mining facilities, or testing facilities. Louisiana law is absolutely clear that a seller has no duty to inspect a product or a manufacturer's facilities. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993) *cert. denied*, 510 U.S. 1043, 114 S. Ct. 688, 126 L. Ed. 2d 656 (1994); *see also*, *Loper v. Nat'l Union Fire Ins. Co.*, CIV.A. 99-1350, 2001 WL 210367 (E.D. La. Mar. 2, 2001). Reference to inspections or testing of the CDW or the manufacturer's facilities is, therefore, irrelevant and unfairly prejudicial.

    3.    Any evidence or argument regarding Interior Exterior's quality control procedures or any other matter asserting or suggesting an absence or lack of quality control procedures on behalf of Interior Exterior in purchasing, warehousing, or distributing the CDW. The parties have stipulated that defect at issue is a latent defect, and Louisiana law is clear that a seller has no duty to inspect or test for latent defects. *Kelley,* 992 F.2d at 1414. Accordingly, Interior Exterior's quality control procedures are irrelevant to its knowledge of the redhibitory defect, which is the sole issue at trial.

    4.    Any evidence or argument that the CDW was heavier than domestic drywall or that the CDW was more brittle or more likely to crack than domestic drywall. Plaintiffs have failed to identify any evidence or present any expert opinion that the issues of heaviness or

brittleness are in any way related to the sulfur off-gassing defect contained in the CDW or, even if they are causally connected, that Interior Exterior should have known of this connection. Any suggestion to the contrary is simply rank speculation. In fact, Plaintiffs' own experts freely admit that no one in the drywall industry had ever heard of sulfur off-gassing from manufactured drywall prior to the issues with CDW. The issues of heaviness and brittleness, then, are not relevant to the issue of knowledge of the redhibitory defect and only serve to prejudice Interior Exterior or confuse and mislead the jury.

5. Any evidence or argument that any customer expressed a brand or country of origin preference or aversion to Interior Exterior when ordering drywall. Any preference or aversion based on characteristics other than the latent defect of sulfur off-gassing in the CDW is not relevant to whether INEX knew of the redhibitory defect.

6. Any evidence or argument of reports of problems with other products manufactured in China, including issues of lead-based paint in toys. Manufacturing defects in other Chinese products are not relevant to Interior Exterior's knowledge of the specific redhibitory defect in the CDW. It is undisputed that the specific redhibitory defect of sulfur off-gassing had never been seen before in CDW. The only purpose this evidence or argument serves, then, is to unfairly prejudice Interior Exterior or confuse and mislead the jury.

7. Any evidence or argument that any of the CDW failed to comply with ASTM labeling standards or the labeling standards of any national, state, or local building code. Plaintiffs have alleged that some of the CDW sold by INEX failed to comply with those standards because the label did not list the thickness of the board or properly identify the manufacturer of the CDW. Interior Exterior denies these allegations, and considerable effort will be spent at trial by both parties litigating this issue. However, the issue is not relevant to Interior

5

Exterior's knowledge of the redhibitory defect. There is no dispute that that labeling of the CDW is not related to the sulfur off-gassing defect.

8.  Any evidence or argument concerning Interior Exterior's actions following the sale of CDW. Plaintiffs intend to offer evidence and argument of Interior Exterior's interaction with customers and the public after it became aware of potential problems with CDW in 2009, with the suggestion, if not outright argument, that Interior Exterior did not do enough to investigate the problem, warn customers who used the CDW, or remediate the damages caused by the CDW. Interior Exterior's post-sale actions, however, are not relevant to its pre-sale knowledge. The evidence is merely meant to unfairly prejudice Interior Exterior in the eyes of the jury.

9.  Any evidence or argument that Interior Exterior did not have a formal complaint department. Whether there was a formal system for complaints in place is of no consequence. The fact is that, from time to time, Interior Exterior received complaints about products that were processed through an informal system involving the sales people and management of each Interior Exterior branch facility. However, not one of these complaints related to problems with sulfur off-gassing or corrosion until after media reports of problems associated with CDW. Evidence of the absence of a formal complaint department is solely meant to disparage Interior Exterior in front of the jury and is not relevant to the issue at trial.

10.  Any reference to or discussion about articles that may have appeared in trade journals concerning CDW or sulfur issues relating to drywall that appeared after INEX stopped selling CDW. Any such articles could not be relevant to whether or not INEX knew of the sulfur problems with CDW at the time INEX was selling CDW.

11. Any mention or discussion of phosphogypsym. Phosphogypsum refers to the gypsum formed as a byproduct of processing phosphate ore into fertilizer with sulfuric acid. Phosphogypsum occurs as a waste product in the fertilizer industry and is radioactive. Phosphogypsum is not used in manufacturing drywall. Phosphogypsum has no relevance to this case and any mention or discussion of it would be introduced only to mislead, confuse, or scare the jury.

12. Any evidence or argument relating to remediation of Plaintiff's homes for CDW, including the scope or costs of the remediation or who performed or paid for the remediation. Trial is limited to the question of liability in redhibition and issues of remediation are not relevant to that question.

13. Any evidence or argument relating to allegations of physical or bodily injury alleged to be caused by CDW. Again, trial is limited to the question of liability in redhibition and allegations of physical or bodily injury are not relevant to that question.

14. Any evidence or argument of any settlements relating to CDW claims, including any negotiations, discussions, or settlements entered into by Interior Exterior. This evidence is not relevant to the issue at this trial and should be otherwise inadmissible under the Federal Rules of Evidence.

15. Any evidence or argument concerning any jurisdictional issues as it relates to Knauf, Tiashan, or any party or putative party to any CDW litigation or any suggestion that Plaintiffs may not be able to recover in redhibition or otherwise from the manufacturers of any CDW. Again, this evidence is not relevant to what Interior Exterior knew about the redhibitory defect in the CDW at the time of sale.

**CONCLUSION**

Each of the above matters set forth in individual paragraphs is generally inadmissible, irrelevant, and prejudicial to the right of Interior Exterior to a fair and impartial trial. Should any matter set forth above become material, relevant, or admissible, the party desiring to introduce such matter into evidence can bring this to the Court's attention, receive a favorable ruling thereon, and thus preserve each and every one of his or its rights. However, without the requested relief the other parties a free hand to inject inadmissible and prejudicial matters before the Court that, in effect, will cause harm even though an objection was made and the Court sustained the same and instructed the jury to disregard the same. Therefore, to prevent a miscarriage of justice, Interior Exterior prays that an Order be issued *in limine* to exclude this evidence.

Respectfully submitted,

/s/ Richard G. Duplantier, Jr.
_____
Richard G. Duplantier, Jr. #18874
Lambert J. Hassinger, Jr. #21683
Benjamin R. Grau #26307
Carlina C. Eiselen, #28524
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040 One Shell Square
New Orleans, LA 70139
504 525 6802 / 504 525 2456 Fax
rduplantier@gjtbs.com
jhassinger@gjtbs.com
bgrau@gjtbs.com
ceiselen@gjtbs.com
*Counsel for Interior Exterior Building Supply, L.P.*

**Certificate of Service**

      The undersigned certifies that this document has been served on Plaintiffs' liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 5th day of November, 2012.

      /s/ Richard G. Duplantier, Jr.
      _____
      RICHARD G. DUPLANTIER, JR.