# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

------------------------------------------------------------ x

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO ALL CASES AND: | JUDGE FALLON |
| *Payton, et al. v. Knauf Gips KG, et al.* Case No. 2:09-cv-07628 (E.D. La.) | MAG. JUDGE WILKINSON |
| *Gross, et al. v. Knauf Gips KG, et al.* Case No. 2:09-cv-06690 (E.D. La.) | |
| *Rogers, et al. v. Knauf Gips KG, et al.* Case No. 2:10-cv-00362 (E.D. La.) | |
| *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al.* Case No. 2:11-cv-00252 (E.D. La.) | |
| *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-1363 (E.D. La.) | |
| *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-2349 (E.D. La.) | |
| *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* Case No. 11-cv-3023 (E.D. La.) | |
| *Vickers, et al. v. Knauf Gips KG, et al.* Case No. 2:09-cv-04117 (E.D. La.) | |

------------------------------------------------------------ x

## MEMORANDUM OF KNAUF DEFENDANTS
## IN RESPONSE TO OBJECTIONS TO THE KNAUF SETTLEMENT

The Knauf Defendants[1] submit this Memorandum of Law in Response to Objections to the Knauf Settlement.[2]  The memorandum addresses all objections to the Knauf Settlement save those concerning provisions for attorneys' fees, which will be responded to by the Plaintiffs' Steering Committee ("PSC"), and those submitted by the North River Insurance Company.  The memorandum does not address objections to any settlements other than the Knauf Settlement.

The memorandum is organized topically, rather than by individual objection or objector. For the convenience of the Court, a reference chart has been provided, attached as Exhibit 1, indicating where in the body of the memorandum each objection is addressed.  The PSC and the Knauf Defendants have resolved all outstanding issues with Objectors Amerson, Hopper and Ladner, who have withdrawn their objections.  Consequently, this brief does not address those objections.[3]

The Knauf Settlement is contingent on certain future events.[4]  This memorandum assumes that those contingencies are resolved satisfactorily.

---

[1] The Knauf Defendants are Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"); Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu"); Guangdong Knauf New Building Material Products Co., Ltd. ("Knauf Dongguan"), Knauf Gips KG ("Knauf Gips"); Gebr. Knauf Verwaltungsgesellschaft KG ("GKV"); Knauf International GmbH ("Knauf International"); Knauf Insulation GmbH ("Knauf Insulation"); Knauf UK GmbH ("Knauf U.K."); Knauf AMF GmbH & Co. KG ("Knauf AMF"); Knauf do Brasil Ltda. ("Knauf Brasil"); and PT Knauf Gypsum Indonesia ("Knauf Indonesia").

[2] *See* Amended Settlement Agreement Regarding Claims Against The Knauf Defendants In MDL No. 2047 ("Knauf Settlement") (Rec. Doc. No. 15742-2).

[3] Of course, the Knauf Defendants will address these withdrawn objections if the Court requests them to do so.

[4] In particular, the Knauf Defendants can terminate the Knauf Settlement at their sole and exclusive discretion if (i) there are opt-outs remaining 14 days prior to the Fairness Hearing (Knauf Settlement § 8.3.2); (ii) Banner Supply Company ("Banner"), Interior Exterior Building Supply, L.P. ("InEx") and/or L&W Supply Company ("L&W") terminate their respective class settlements or declare bankruptcy (*id.* § 4.8.5); (iii) the Knauf Defendants fail to agree with Banner and/or InEx on a solution that extinguishes

## I.      INTRODUCTION

The Knauf Settlement is the cornerstone of an integrated settlement plan designed to achieve the comprehensive resolution of claims involving allegedly defective drywall manufactured by KPT in China and installed in thousands of properties in the United States. Together with four closely inter-related settlement agreements, the Knauf Settlement provides substantial and long-anticipated relief to affected property owners, including remediation of properties, compensation for personal property damage and economic loss, and recovery of attorneys' fees and costs.  The Knauf Settlement is, as Plaintiffs acknowledge, an "excellent result," affording class members a manifestly superior alternative to the uncertainty, delay and expense of continued litigation.[5]

The Knauf Settlement was filed on December 20, 2011, culminating months of hard-fought negotiations between the parties.[6]   On January 10, 2012, this Court preliminarily approved the Knauf Settlement and issued an order setting forth the terms and manner of class notice.[7]   Pursuant to that order, notice of the Knauf Settlement was distributed via first-class

---

the potential claims of Banner and InEx or their insurers against the Knauf Defendants (*id.* § 4.8.6); or (iv) the Global Settlement is not effectuated (*id.* § 2.1).

[5]   *See* Memorandum of Law in Support of the Joint Motion of Proposed Settlement Class Counsel, the PSC, and the Knauf Defendants for an Order:  (1) Preliminarily Approving the Knauf Settlement; (2) Conditionally Certifying a Settlement Class; (3) Issuing Class Notice; (4) Scheduling a Fairness Hearing; and (5) Staying Claims Against the Knauf Defendants, at 21 (Rec. Doc. No. 12061-4).

[6]   *See* Settlement Agreement Regarding Claims Against The Knauf Defendants In MDL No. 2047 (Rec. Doc. No. 12061-5).  A revised version of the Knauf Settlement agreement was filed with the Court on August 31, 2012.  *See* Knauf Settlement (Rec. Doc. No. 15742-2).

[7]   *See* Order Preliminarily Approving Knauf Settlement, Conditionally Certifying a Knauf Settlement Class, Issuing Class Notice, Scheduling a Settlement Fairness Hearing, and Staying Claims as to the Knauf Defendants (Rec. Doc. No. 12138).

mail, postage prepaid, to all known Class Members and their counsel.[8]  Notice was additionally posted online, together with the full text of the settlement agreement itself.[9]

Class members have been accorded several months to review and evaluate the terms of the proposed settlement,[10] and in that time, no more than a dozen objectors have come forward, representing only a fraction of a percent of the thousands of notified class members.[11]  Such a "small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness."[12]  Moreover, several of the objectors lack standing to object, having opted out of one or more of the inter-related settlements.[13]  Of course, "no

---

[8]     *See* Affidavit of Smith-Edwards-Dunlap Printing Company In Connection With Notice By Mailing (Rec. Doc. No. 15764-8).

[9]     *See* Notice of Pendency And Proposed Settlement of Knauf Class Action (Rec. Doc. No. 12138-1), available at http://www.laed.uscourts.gov/Drywall/Settlements/Notice.knauf.settle.pdf.

[10]    *See* Order (1) Setting Consolidated Fairness Hearing, (2) Establishing Coordinated Opt Out, Objection and Briefing Deadlines, And (3) Entering Litigation Stay In Favor Of Settling Parties (Rec. Doc. No. 14566).

[11]    More than 9,000 copies of the class notice were disseminated to class members and counsel.  *See* Affidavit of Smith-Edwards-Dunlap Printing Company In Connection With Notice By Mailing (Rec. Doc. No. 15764-8).

[12]    *Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D.Fla. 2002).

[13]    Objector Gregory Friedlander has opted out of the Knauf Settlement, Objector Wayne Kaplan has opted out of the Banner Settlement, and Perry Homes, LLC has opted out of the Knauf, InEx and Global Settlements.  Accordingly, none of these parties has standing to object to the Knauf Settlement.  *See* 4 Newberg on Class Actions § 11:55 (4th ed.) (noting the "general rule precluding objections from opt-outs or nonparties" except "when they are able to demonstrate prejudice from the settlement."); *see also* Scheduling Order Regarding November 13-14 Fairness Hearing 8 (Rec. Doc. No. 15951) (noting that "class members who have opted out in accordance with the requirements of the Settlements" lack standing to participate in the Joint Fairness Hearing).  Objector Therese Sekellick may also lack standing to object, inasmuch as her property has never been found to contain reactive drywall of any sort, despite repeated testing.  *See* Sekellick Objections ¶ 1.

settlement can attain perfection precluding objections,"[14] and as the Fifth Circuit has repeatedly recognized, it is within the discretion of the courts to approve settlement plans over substantial class opposition.[15] Fifth Circuit courts have in fact affirmed the fairness, reasonableness and adequacy of settlements even in instances where the percentage of objecting class members was over a hundred times greater than the fractional percentage of objectors at issue here.[16] The comparatively negligible level of opposition expressed by absent class members to the Knauf Settlement is, in the words of this Court, a "helpful indication that the settlement is fair, reasonable, and adequate" and adds considerable weight to the case in favor of settlement approval.[17]

Close examination of the substance of the objections raised against the Knauf Settlement also militates in favor of settlement approval. Significantly, the objectors do not dispute that

---

[14]    *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 275 (W.D.Tex. 2007).

[15]    *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("A settlement can be fair notwithstanding a large number of class members who oppose it."); *Lelsz v. Kavanagh*, 783 F.Supp. 286, 297 (N.D.Tex. 1991) ("The Court, of course, may approve the settlement over the objection of a large number of class members."); *Turner v. Murphy Oil USA*, 472 F.Supp.2d 830, 853 (E.D.La. 2007) (Fallon, J.) ("[A] court may approve a class action settlement even if opposition exists."); *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 661(N.D.Tex. 2010) ("[A]pproval can be given even if a significant portion of the class objects.").

[16]    *See, e.g., Parker v. Anderson*, 667 F.2d 1204, 1207-08 (5th Cir. 1982) (affirming approval of class action settlement despite opposition from nine of the eleven plaintiffs); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 174 (5th Cir. 1983) (affirming approval of settlement "over the objections of twenty-three of twenty-seven named plaintiffs and nearly forty percent of the 1,517 member class"); *Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 790 (5th Cir. 1986) (affirming lower court's approval of consent decree, despite objections from "thirty-four percent of the known class members").

[17]    *See Turner*, 472 F.Supp.2d at 853; *DeHoyos*, 240 F.R.D. at 293 (A "minimal level of opposition from absent class members weighs in favor of approving the settlement.").

settlement negotiations were conducted in good faith by competent, well-informed counsel.[18] The objectors do not contend that continued litigation would be anything but an extraordinary drain on resources, or that "[c]ompensation now rather than later" would be in the best interests of the class.[19]   The objectors do not deny that class members would face significant hurdles in securing jurisdiction over many of the foreign-based Knauf Defendants; they do not contest the likely futility of pursuing recovery in China against KPT, the sole Knauf Defendant responsible for the manufacture and sale of the defective product at issue in this litigation; and they do not challenge the manifest, likely insurmountable, difficulties of prevailing on the merits, or, if they do prevail, of collecting against Knauf Defendants other than KPT that neither manufactured, sold nor distributed the defective drywall.

In short, the objections leveled against the Knauf Settlement do not present a challenge to the core fairness of the settlement under the governing standards set forth in *Reed v. Gen. Motors Corp.*[20]   Instead, the objections tend to focus on isolated particulars, often reflecting a failure to understand the settlement terms or, more generally, to appreciate the fact that a successful settlement necessarily reflects a compromise between competing interests.   As the Fifth Circuit has recognized, no settlement can "satisfy every class members' desires."[21]   Rather, to be successful, a settlement must entail a "yielding of absolutes and an abandoning of highest

---

[18]   This consideration alone creates a "strong presumption" in favor of settlement approval. *See Turner*, 472 F.Supp.2d at 844; *see also Reed*, 703 F.2d at 175 (stressing that the "assessment of able counsel negotiating at arm's length cannot be gainsaid.").

[19]   *See Turner*, 472 F.Supp.2d at 846.

[20]   *Reed*, 703 F.2d at 172; *See also Turner*, 472 F.Supp.2d at 843 (citing the *Reed* factors); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 194-95 (5th Cir. 2010) (citing the *Reed* factors).

[21]   *See Salinas*, 802 F.2d at 790.

hopes."[22]  Such negotiated compromises do not upset the "strong presumption in favor of finding the settlement fair."[23]   Indeed, it is the mark of a fair and reasonable compromise that neither side will have "received all which it desired."[24]

## II.     THE KNAUF SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.     The Knauf Settlement Benefits Are Fair and Substantial

The Knauf Settlement offers substantial benefits to the class, including complete remediation of real property damage attributable to KPT's defective drywall, compensation for associated economic loss, personal property damage and/or bodily injury, and payment of attorneys' fees and costs.   Taken together, these settlement benefits exceed any recovery that Class Members are likely to obtain through litigation.   Nevertheless, a few objectors have expressed concerns about certain aspects of the proposed benefits.  While the issues raised are various, it is important to keep in mind that, as reflected in the chart attached as Exhibit 1, all of the objections stem from the same very small handful of objectors.

Some objectors suggest that the "Lump Sum Payment" benefits available under the Knauf Settlement may not be sufficient to ensure full recovery for certain alleged expenses, including relocation and HVAC repair costs.[25]  Other objectors believe that the Other Loss Fund

---

[22]     *Cotton*, 559 F.2d at 1330 (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972)).  *See also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F.Supp.2d 612, 625 (E.D.La. 2006).

[23]     *See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F.Supp.2d at 619.

[24]     *Cotton*, 559 F.2d at 1334.

[25]     *See* Kinler Objections ¶¶ 6-7 ("extraordinary moving expenses'); Panneton Objections ¶¶ 5-8, 10 (air conditioning repair costs); Bolden & Smith Objections ¶¶ 5-8 ("pre-remediation repair expenses, including HVAC repair costs).   Two of these objectors additionally ask that the Lump Sum Payment be increased for owners of properties measuring 3,500 square feet or less.  *See* Bolden & Smith Objections ¶ 10.

may be inadequately funded and propose that net amounts recovered from related settlements be devoted in full to the Other Loss Fund.[26]  Two objectors take the broader position that the Knauf Defendants' obligation to replenish the Other Loss Fund should be uncapped, or that no excess monies from the Remediation Fund should revert to the Knauf Defendants while non-remediation-related claims remain unpaid, apparently on the theory that the Knauf Settlement should provide full recovery to every claimant on every category of claim.[27]

Other objections point to claims that go uncompensated under the Knauf Settlement.  One objector appears to take issue with the unavailability of benefits for claimants whose homes do not test positive for Chinese Drywall.[28]  Two objectors observe that the Knauf Settlement does not reimburse claimants for fees and costs associated with bodily injury claims and does not contemplate recovery for alternative living expenses incurred in connection with sales in mitigation.[29]

Some objectors raise more idiosyncratic concerns regarding the benefits available under the Knauf Settlement.  Two objectors request that the warranty period governing remediation work be extended beyond the standard one year period.[30]  Two others object to the agreed-upon

---

[26]     *See* Willis Objections ¶¶ 1(b)-(c), 11(b)-(c).  The Knauf Settlement currently calls for net amounts recovered from the Insurer Class Settlement and settlements with Excluded Releasees to be divided equally between the Remediation Fund and the Other Loss Fund . *See* Knauf Settlement §§ 4.2.3, 4.6.3.

[27]     *See* Willis Objections ¶¶ 1(a), 2, 11(a).

[28]     *See* Sekellick Objections ¶¶ 1-2.  As indicated previously, Objector Sekellick may lack standing to object to the Knauf Settlement.  *See supra* note 13.

[29]     *See* Willis Objections ¶¶ 8, 11(e).  The Willis Objectors additionally take issue with the requirement for an expert report establishing that the sale was "substantially caused by KPT Chinese Drywall and the Owner incurred losses as a result."  See Knauf Settlement § 4.7.1.4.2(k); Willis Objections ¶ 7.

[30]     *See* Bolden & Smith Objections ¶ 9.

procedures for establishing bodily injury,[31] as well as to a provision intended to prevent double recovery on insured claims.[32]   One objector asks that the settlement be revised to permit class members to apply a portion of the funds awarded under the Self-Remediation Option toward payment of mortgages on affected properties.[33]

All of these objections forget the fundamental precept that "compromise is the essence of a settlement."[34]   Contrary to the suggestions of these objectors, the test of a proposed settlement is not that it "obtain the largest conceivable recovery for the class."[35]   Instead, "to be worthy of approval" a settlement "must simply be fair and adequate considering all the relevant circumstances."[36]   The Knauf Settlement is the end-result of extensive, arm's-length negotiations between competent, well-informed and highly experienced counsel, united in their commitment to achieve the best possible result for their clients.   The fact that some class members may not be made altogether whole under the Knauf Settlement, or that some claims may have been given up as part of the settlement bargain, is not a basis for defeating settlement approval.[37]   To the

---

[31]     *See* Willis Objections ¶¶ 11(f)-(h).

[32]     *See* Willis Objections ¶ 4.  The provision at issue prevents double recovery by requiring that approved claims be reduced by any amount that "was or could have been reimbursed" under the class member's insurance policies.  Knauf Settlement § 4.7.4.4.1.

[33]     *See* Friedlander Objection.  In any event, Objector Friedlander lacks standing to object because he has opted out of the Knauf Settlement.  *See supra* note 13.

[34]     *Cotton*, 559 F.2d at 1330; *see also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981) ("A just result is often no more than an arbitrary point between competing notions of reasonableness."); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.").

[35]     *Klein*, 705 F.Supp.2d at 649.

[36]     *Id.*

contrary, it is incumbent upon the parties to a settlement, and upon the courts, to recognize that some compromise is vital "so as not to gamble with the rights of everybody to satisfy the complaints of some."[38]

### B.   The Value of the Knauf Settlement Benefits Was Adequately Disclosed

Four objectors argue that class members were not sufficiently apprised of the value of their potential recovery under the Knauf Settlement.  These objectors contend that inadequate information and/or guidelines were provided with respect to the "range of expected recovery" for certain specific categories of claims, including personal injury claims or claims for lost equity.[39]

Objections such as these are not grounds for denying settlement approval.  It is well-established that "class members' lack of knowledge regarding the precise amounts they will collect under the settlement is not a valid basis on which to find the settlement unfair."[40]  In fact, it is "not at all unusual for class members not to know the amounts they will be receiving until

---

[37]  *See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F.Supp.2d at 626 (overruling objections based on "wildly optimistic suggestions of upper-end recoveries that, given the significant legal hurdles ahead, were at the bottom end of the probability scale."); *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (A proponent of a settlement need only establish that "it is prudent to eliminate the risks of litigation to achieve specific certainty, though admittedly it might be considerably less (or more) than were the case fought to the bitter end."); *Raines v. Florida*, 987 F.Supp. 1416, 1419 (N.D.Fla. 1997) ("That these claims are lost in the settlement is insufficient reason to find the settlement to be unfair.  Settlement is a process of compromise.").

[38]  *See Salinas*, 802 F.2d at 790.

[39]  *See* Willis Objections ¶¶ 6, 9, 11(d), 11(i); Kinler Objections ¶ 8.

[40]  *Nat'l Treasury Employees Union v. United States*, 54 Fed.Cl. 791, 806 (2002); *see also In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 429-30 (S.D.Tex. 1999) ("Notice is adequate where the class member is notified of the formula of allocation."); 3 Newberg on Class Actions § 8:32 (4th ed.) ("It is unnecessary for the settlement distribution formula to specify precisely the amount that each individual class member may expect to recover.").

after final approval."[41]   In a complex class action settlement such as this, involving thousands of distinct claims, where compensation is fact-dependent and "ultimate recovery may often depend on the number of valid claims filed," it is an unavoidable fact that settlement benefits may not be predetermined with exactitude.[42]   Accordingly, it is often not possible, and it is certainly not necessary, to provide a "precise valuation," or even an "estimated value," of settlement relief, particularly where, as here, multiple options for recovery are available to class members, and the number and extent of valid claims remain unresolved.[43]

### C.   The Objections of Non-Settling Defendant Perry Homes Lack Merit

Non-settling defendant Perry Homes, LLC ("Perry Homes") has submitted objections to the Knauf Settlement.  However, as noted above, because Perry Homes has opted out of the settlement plan and is not prejudiced by its terms, it lacks standing to object.[44]   In any event, its objections appear to be based on misunderstandings of the terms of the Knauf Settlement.

Perry Homes, as assignee of thirteen homeowner claimants, has objected to the Knauf Settlement to the extent that it would bar Perry Homes -- either on its own behalf or as an assignee of claims-- from asserting claims for "contribution, indemnification or subrogation" in

---

[41]   *In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d 1249, 1262 (D.Kan. 2006).

[42]   3 Newberg on Class Actions § 8:32 (4th ed.).

[43]   *DeHoyos*, 240 F.R.D. at 300-01.

[44]   *See In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 172 (5th Cir. 1979) (A "non-settling defendant ... is not prejudiced by the settlement and therefore has no standing to complain about the settlement."); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL-991, 1995 WL 15182, at *4 (E.D.La. Jan. 12, 1995) (declining to consider objections raised by non-parties, because "they do not have standing to object to the proposed settlement."); *In re Enron Corp. Sec., Derivative & 'ERISA' Litig.*, No. MDL-1446, 2008 WL 2566867, at *8, 13 (S.D.Tex. 2008) (Non-settling defendants "have standing to contest the bar order and the settlement agreement only if they can demonstrate ... plain legal prejudice," such as a loss of "their right to contribution and indemnification.").

connection with the claims of these thirteen homeowners.[45]   Perry Homes may preserve its right

to assert such claims simply by opting out as assignee of the thirteen homeowners.  Perry Homes

further objects to the Knauf Settlement to the extent that it would bar Perry Homes from seeking

contribution, indemnification or subrogation from the Knauf Defendants in the event that any

Participating Class Members seek remediation from Perry Homes.[46]   In this scenario, Perry

Homes would be protected by the judgment reduction provision of the Knauf Settlement, under

which any Participating Class Member who successfully brings a claim against Perry Homes is

obliged to forego any portion of the judgment that is attributable to the Knauf Defendants.[47]

> **D.    The Knauf Settlement Provisions Defining KPT Properties and Mixed
> Properties Benefit the Class**

Two objectors find fault with what they characterize as the "arbitrary threshold

percentage" distinguishing KPT Properties from Mixed Properties.[48]   Under the terms of the

Knauf Settlement, a KPT Property is defined as any affected property in which more than 90%

of the Chinese Drywall present in the property is KPT Chinese Drywall.[49]   For purposes of

remediation and compensation, such properties are treated under the Knauf Settlement as if *all* of

the Chinese Drywall present in the property were KPT Chinese Drywall.  There is nothing

arbitrary about this distinction between KPT Properties and Mixed Properties, which reflects a

carefully considered compromise struck in negotiations between the parties.  Properly

understood, the 90% threshold represents a sizeable benefit to the class, for it commits the Knauf

---

[45]        *See* Perry Homes Objections, p.4.

[46]        *Id*.

[47]        *See* Knauf Settlement § 5.2.4.

[48]        *See* Willis Objections ¶ 5.

[49]        *See* Knauf Settlement §§ 1.27, 1.28.

Defendants to the full remediation of mixed-board properties where up to 9.99 percent of the defective plasterboard was *not* manufactured by KPT or any other Knauf Defendant.

> **E.    Definition of Participating Class Members Can Be Inferred from Settlement Terms**

The same two objectors observe, correctly, that the term "Participating Owner Class Members" is undefined in the Knauf Settlement agreement.[50]  The Knauf Settlement agreement does, however, provide definitions for the terms "Participating Class Members," "Residential Owners," and "Commercial Owners."[51]   Accordingly, it can be inferred that a "Participating Owner Class Member" is a Participating Class Member who is also a Residential or Commercial Owner.

## III.    INTER-DEPENDENCE OF CLASS SETTLEMENTS IS NOT A BASIS FOR DEFEATING APPROVAL

One objector disapproves of the requirement that class members who received KPT Chinese Drywall through Banner must assign their benefits under the Banner Settlement to the Knauf Defendants.[52]  This is an objection to the overall integration of the settlement plan, rather than an objection to the Knauf Settlement *per se*.  As this Court is aware, the Knauf Settlement does not stand alone, but is closely linked to the other class settlements in this litigation, including the Banner Settlement referenced by the objector.  It is not an objection to the fairness of the settlement plan to point out, as this Court has itself acknowledged, that the inter-related settlements form a cohesive whole and must be "considered together."[53]  In any event, Objector

---

[50]    *See* Willis Objections ¶ 3.

[51]    *See* Knauf Settlement §§ 1.1.2.1, 1.1.2.2, 1.5.1.

[52]    *See* Sekellick Objections ¶ 3.

[53]    *See* Order (1) Setting Consolidated Fairness Hearing, (2) Establishing Coordinated Opt Out, Objection and Briefing Deadlines, And (3) Entering Litigation Stay In Favor Of

Sekellick's concerns appear to be based on a basic misapprehension of the settlement terms. To the extent that her property contains KPT-manufactured drywall, she will be fully eligible for compensation through the Remediation Fund under the provisions of the Knauf Settlement, and no legal fees will be deducted from her recovery.

## IV.    CONCLUSION

Only a small fraction of notified class members have expressed any objections to the Knauf Settlement, and, as demonstrated in the foregoing, none of these objections presents a challenge to the fundamental fairness, reasonableness and adequacy of the settlement. The class notice approved by this Court was proper, the structure and terms of the settlement plan are sound, and the relief which the Knauf Settlement will afford to thousands of affected parties is fair and substantial. For the foregoing reasons, the Knauf Defendants respectfully request that this Court grant final approval to the Knauf Settlement.

---

Settling Parties (Rec. Doc. No. 14566) ("[D]ecisions on whether to opt out or object to any particular settlement should be made in light of the existence of *all* of the proposed settlements.") (emphasis in original).

Respectfully submitted,


Dated:  November 6, 2012          By:  /s/ Kyle Spaulding

                                    KERRY J. MILLER (# 24562)
KYLE A. SPAULDING (# 29000)
FRILOT L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, LA  70163
Telephone:  (504) 599-8194
Facsimile:  (504) 599-8145
Email:  kmiller@frilot.com

- AND -

STEVEN GLICKSTEIN (NY Bar # 1038157)
JAY P. MAYESH (NY Bar # 1081603)
GREGORY J. WALLANCE (NY Bar # 1247337)
ROBERT GRASS (NY BAR # 2501278)
KARIN E. GARVEY (NY BAR # 2997831)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
Telephone:  (212) 836-8485
Facsimile:  (212) 836-6485
Email:  sglickstein@kayescholer.com

Counsel for the Knauf Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum of Knauf Defendants in Response to Objections to the Knauf Settlement has been served upon Plaintiffs' Liaison Counsel by email and by electronically uploading the same to LexisNexis File and Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of the Court of United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 this 6th day of November, 2012.

/s/ Kyle Spaulding_____