UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CIVIL ACTION NO. 09-2047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | JUDGE FALLON |
| _____ | ) | |
| This Document Relates to: | | MAGISTRATE WILKINSON |
| ALL CASES | | |

## INTERIOR EXTERIOR'S OPPOSITION
## TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DEFENDANTS' EXPERT OPINION OR OTHER EVIDENCE TO THE EFFECT THAT A MANUFACTURER WAS AT FAULT

MAY IT PLEASE THE COURT:

Defendants, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("Interior Exterior") respectfully objects to plaintiffs' Motion *in Limine* to exclude the expert opinion or other evidence to the effect that a manufacturer was at fault. Plaintiffs' Motion *in Limine* is without merit and should be denied.

### BACKGROUND

This Court has consistently reminded the parties that the upcoming trial in November 2012 is to determine one issue – whether Interior Exterior is a good faith or bad faith seller in redhibition. The redhibition articles distinguish between sellers that did not know the product contained the defect and those who did. La. Civ. Code Arts. 2531 and 2545. Thus, *knowledge* of a non-apparent defect the determining factor for liability in redhibition. Knowledge of a non-apparent defect cannot be determined in a vacuum. Rather, knowledge must be determined with all of the factual situations surrounding an occurrence.

-1-

Plaintiffs allege that by submitting to defend itself, Interior Exterior is attempting to put blame on the non-party manufacturers. La. Civil Code article 2545, provides that "[a] seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing." Thus, the manufacturers are deemed to be bad faith sellers and are presumed to know that the defect existed; this fact and legal standard is proper and should be presented during a trial on redhibitory defects.

## **LEGAL STANDARD**

The standards are well established for the admission or exclusion of expert testimony pursuant to the United States Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under Rule 702 of the Federal Rules of Evidence, an expert qualified by "knowledge, skill, experience, training, or education" is allowed to give testimony where his or her "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589. In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [should be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

In order to be admissible, the testimony offered must rise above the level of "subjective belief" or "speculation," which means that the reasoning or methodology underlying the testimony must be scientifically valid (i.e., "reliable"). *See Sorensen*, 31 F.3d at 649; *see also Daubert*, 509 U.S. at 590. Rule 702 requires that expert opinion testimony be rendered by a qualified expert, based upon reliable data and methodology. *Hathaway v. Bazany*, 507 F.3d 312, 317 (5th Cir. 2007); *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 514 (E.D. La. 2002).

The trial court has the responsibility of determining, under Rule 104(a), whether the expert's proposed testimony is reliable and helpful under Rule 702. *Daubert*, 509 U.S. at 589.

> When evaluating expert testimony, the overarching concern is whether or not it is relevant and reliable. A party seeking to introduce expert testimony must show "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting Fed. R. Evid. 702) (citation omitted). The court should "make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). When conducting its review, the court must also consider whether the facts and data relied on by the expert are those facts "of a type reasonably relied on by experts in the particular field" under Rule 703. *Id.* at 589-90. Finally, while opinions formed for litigation are not automatically unreliable, courts recognize that research conducted independently of litigation is less easily tailored to serve a party's interests. *Robinson*, 923 S.W.2d at 559; *see also Daubert*, 43 F.3d at 1317.

The burden is on the proponent of the evidence to demonstrate that the expert is qualified and his/her testimony is based upon a reliable foundation. *See e.g., Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The focus of the court's inquiry is on the reasoning and methodology of the expert, and not simply his or her final conclusion. *Daubert*, 509 U.S. at 595. However, conclusions and methodology are not entirely distinct from each other. *General Electric Co. v. Joiner*, 118 S. Ct. 512, 519 (1997); *see Lust*, 89 F.3d at 598. Nothing in the Rules or the *Daubert* decision requires a district court to admit evidence that is connected to the existing data only by the subjective claim of the expert. *Joiner*, 118 S. Ct. at 519. Where the data or studies relied on by an expert simply do not support the ultimate opinion

offered or are so dissimilar to the actual facts that the expert could not have relied on them, the expert's testimony is properly excluded. *Id.* Further, where the assumptions made by an expert are not supported by the record, the expert's methodology is subject to a rate of error that is too high to be allowed before the jury. *See Sorensen*, 31 F.3d at 649.

## ARGUMENT

### 1. Evidence of testimony as to the manufacturers' knowledge of the defect is required to place this trial into context.

The current posture of the trial against Interior Exterior is to determine whether or not Interior Exterior knew that a defect existed in the Chinese manufactured board at the time it re-sold it to plaintiffs. Plaintiffs acknowledge that "obviously INEX is entitled to defend itself against claims that it knew or should have known of the drywall's defectiveness produced by these manufacturers on the ground that it received no information from the manufacturers to suggest that the drywall was defective." [Doc. No. 15990-1]. Plaintiffs, however, propose that the manufacturers' fault, and what they knew about the defect in the board, and when and with whom they shared that information should not be presented at trial.

A manufacturer is deemed to have knowledge of the defect. La. Civ. Code art. 2545. Plaintiffs argue that the manufacturers' fault should not be allowed to presented at trial as that information will be used to "engage in [a] comparative fault analysis" and "would obligate an absent party to defend itself." [Doc. No. 15990-1]. This analysis is flawed. This Court has already found in its Order dated August 3, 2012 that "Knauf is not required to be a party during the liability stage of the bellwether trial since its presence is not necessary for the fact-finder to assess its percentage of fault." *Citing* La. Civ. Code art. 2323.

Moreover, Interior Exterior's lack of knowledge cannot be properly elucidated outside of the what the manufacturers knew about their own product. In particular, the defect in the Chinese manufactured board is that it off-gasses sulfur compounds. The long history of this case and the circumstances surrounding the knowledge of when and how the off-gassing defect occurred and became apparent is highly relevant to Interior Exterior's knowledge of whether it knew or had constructive notice that the defect existed. Thus, without the factual history of the manufacturers' knowledge of the defect and with whom they discussed this defect would be akin to looking at one piece of a puzzle – it would not show the whole picture.

**2. Dr. James Tompkins provides an unique knowledge that will assist the fact-finder with the historical events and the circumstances surrounding the knowledge of the defective board.**

Dr. James Tompkins is retained by Interior Exterior to provide opinions as to Interior Exterior's liability under redhibition. Dr. Tompkins extensively reviewed numerous depositions, and exhibits. He opines that INEX took reasonable precautions and performed satisfactory due diligence in choosing suppliers in buying drywall from the Chinese manufacturers. His opinion, however, cannot be placed in a vacuum without the proper historical events surrounding when and who knew of the defect. While Dr. Tompkins's statements acknowledge that under redhibition, the manufacturer is deemed a bad-faith seller, his opinion is far more poignant and salient as to the steps and duties of seller under redhibition.

While, plaintiffs may disagree with his position that no amount of additional or non-industry standard testing could have foreseen the sulfur problem in the drywall, their attempts at excluding his testimony and other testimony that show what and when the manufacturers knew about the defect in the board is without merit. It is necessary for the fact-finder to understand what the manufacturers knew, when they knew it, and with whom they disclosed that

information to, to fully understand what knowledge Interior Exterior had of the sulfur off-gassing defect.

## CONCLUSION

For these reasons, Interior Exterior requests that this Court deny plaintiffs' Motion *in limine* and allow testimony as to the manufacturers' fault.

Respectfully submitted,

*Richard G. Duplantier, Jr.   /s/*
Richard G. Duplantier, Jr. (# 18874)
Lambert J. Hassinger, Jr. (# 21683)
Benjamin R. Grau (#26307)
Carlina C. Eiselen, (# 28524)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802 / Fax:   (504) 525-2456
rduplantier@gjtbs.com /jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com
*Counsel for Defendant, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, LLC*

### Certificate of Service

The undersigned certifies that this document has been served on Plaintiffs' Liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 6th day of November, 2012.

*Richard G. Duplantier, Jr.   /s/*
RICHARD G. DUPLANTIER, JR.