UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION:  L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO ALL CASES

### RESPONSE BY ARCH INSURANCE COMPANY AND LIBERTY MUTUAL FIRE INSURANCE COMPANY TO OBJECTIONS AND RESPONSE OF THE NORTH RIVER INSURANCE COMPANY TO THE MOTION OF THE PLAINTIFFS' STEERING COMMITTEE FOR AN ORDER APPROVING CLASS SETTLEMENTS

Arch Insurance Company ("Arch") and Liberty Mutual Fire Insurance Company ("Liberty Mutual") hereby respond to the Objections And Response Of The North River Insurance Company To The Motion Of The Plaintiffs' Steering Committee For An Order Approving Class Settlements (the "Objection") (Doc. No. 15851).

I.   FACTS.

   A.   The Interior Exterior Settlement Agreement.

In April 2011, the Plaintiffs' Steering Committee ("PSC"), Interior/Exterior Building Supply L.P. ("InEx"), Arch, and Liberty Mutual entered into a settlement of Chinese drywall claims asserted against InEx.  See Am. Settlement Agreement Re: Claims Against Interior-Exterior in MDL No. 2047 (the "InEx Settlement") (Doc. No. 12258-3).  The InEx Settlement was the first "breakthrough" settlement reached in this multi-district litigation, and forms the foundation for several other interlocking settlements.  See Order at 5 (Doc. No. 14562).

The InEx Settlement will benefit a nationwide class of persons or entities with claims against InEx and the Settling Defendants relating to Chinese drywall. It provides that "[a]s of the Effective Date of the Settlement . . . all Class Members . . . hereby fully, finally, and forever release . . . all Released Claims . . . against the Settling Defendants." InEx Settlement § 4.3.1.[1] In exchange, Arch and Liberty Mutual agreed to pay the full limits of the primary insurance policies that they issued to InEx, less credits for certain prior payments. The agreement states that "Arch and Liberty shall deposit Insurance Proceeds into an Escrow Account described in Section 12 to be made available for allocation as set forth below in Section 16 of this Agreement." Id. § 3.3.1. It provides that:

> Within twenty (20) business days after the Effective Date, the Insurers shall transfer the Insurance Proceeds to the Escrow Account to be established at United States Bank pursuant to order of the Court in accordance with Fed. R. Civ. P. 67 and 28 U.S.C. § 2041.

Id. § 12.1. "Insurance Proceeds" are defined as:

> (a) four million dollars ($4,000,000) for Arch (less the dollar amount paid by Arch of (i) the Prior Settlements and (ii) the Notice Costs), and (b) as to Liberty shall mean four million dollars ($4,000,000) (less the dollar amount paid by Liberty of (i) the Prior Settlements and (ii) the Notice Costs).

Id. § 1.16. The "Effective Date" is (if objections to the settlement are not withdrawn) the later of: (a) the expiration of time to file any appeal from the Court's Order and Judgment approving the settlement, or (b) the date of final affirmance of any appeals therefrom. Id. § 2.1.2.

Arch and Liberty Mutual have no control over the policy limits after they have been paid into the Escrow Account. The Court has "exclusive jurisdiction" over the Insurance Proceeds in the Escrow Account, and any other funds added to the account, and over "the distribution of

---

[1] "Released Claims" "shall mean any and all claims against any Settling Defendants whatsoever . . . arising out of, in any manner related to, or connected in any way with Chinese Drywall . . . ." InEx Settlement § 4.1.1. "Settling Defendants" "shall mean InEx, Arch, Liberty, and the Downstream InEx Releasees." Id. § 1.30.

2

same to Class Members." Id. § 15.1.  "The Court shall establish a procedure for allocation of the Settlement Funds between the various interests who have claimed entitlement to the same." Id. § 16.1.  Disputes as to the allocation of payments "shall not involve the Settling Defendants." Id. § 16.3.  The payment of primary policy limits into the Escrow Fund also extinguishes the liability of InEx, Arch, and Liberty Mutual to pay the Pending Settlements.  See id. § 16.6.  The Order and Judgment of the Court will "[f]ind[] that, upon transfer of the Insurance Proceeds to the Escrow Account by Arch and Liberty pursuant to Section 12, the aggregate limits of the Arch Policies and the Liberty Policies are exhausted." Id. § 1.20.5.[2]

B.     North River's Objection To The Interior Exterior Settlement Agreement.

North River Insurance Company ("North River") objects to the provision of the InEx Settlement that InEx's primary policies are exhausted upon payment of policy limits into an escrow fund for the benefit of the class.  It asserts, without any citation to authority, that:

> (1) payment of policy proceeds into an escrow fund does not constitute payment of covered claims that reduce coverage provided by the primary policies and (2) from the face of the InEx Agreement, it is clear that some of the policy proceeds will be used for payment of noncovered claims, which will not reduce coverage provided by the primary policies.

Objection at 1-2.  Neither objection has merit.

---

[2]  InEx, the PSC, and the Knauf Defendants have filed a proposed second amendment to the InEx Settlement. See Joint Motion For Preliminary And Final Approval Of The Second Amendment To The Amended InEx And Knauf Class Settlements And For Judicial Recognition Of Exhaustion, Ex. A (Doc. No. 15948-2).  The proposed second amendment clarifies that the transfer of primary policy proceeds to the Escrow Fund exhausts the primary policy limits in settlement of claims by the InEx Class.  The proposed second amendment provides that:

> Regardless of the outcome of the Bellwether Trial, Arch and Liberty will deposit the Insurance Proceeds into an Escrow Account as described in Section 12 of the InEx Class Settlement, confirming that the Arch and Liberty policies have been exhausted by settlement.  Such deposit will satisfy all the claims of the InEx Class against Arch and Liberty.

Id., Ex. A ¶ 1.

3

C.  The Arch And Liberty Mutual Policies.

Arch and Liberty Mutual's duties to defend end when they have exhausted their policy limits through "payment of . . . settlements." The Arch and Liberty Mutual policies provide that: "[o]ur right and duty to defend end[s] when we have used up the applicable limit of insurance in the payment of judgments or settlements." Arch Policy § I.1.a(2).; Liberty Mutual Policy § I.1.a(2).

D.  The North River Excess Policies.

The North River policies provide that:

> We will pay on behalf of the "Insured" those sums in the excess of the "Retained Limit" which the "Insured" by reason of liability imposed by law . . . shall become legally obligated to pay as damages for:
>
> 1.  "Bodily Injury" or "Property Damage" only if . . . the "Bodily Injury" or "Property Damage" is caused by an "Occurrence" that occurs during the Policy Period stated in Item 2 of the Declarations.

North River Policy § I.A.1.a. The policies further provide that:

> We shall have the right and duty to defend the "Insured" against any "Claim" or "Suit" seeking damages . . . covered by the terms and conditions of this policy . . . when . . . the applicable limits of "Underlying Insurance" . . . have been exhausted by payment of judgments or settlements.

Id. § II.A.1. The policies define "Retained Limit" to mean "with respect to any 'Occurrence' that is covered by 'Underlying Insurance' . . . , the total of the applicable limits of 'Underlying Insurance.'" Id. § IV at 14. "Underlying Insurance" means "the policies and/or Self-Insurance listed in Schedule A – Schedule of Underlying Insurance." Id. § IV at 15. That schedule lists Arch and Liberty Mutual as each providing $2 million in general aggregate limits for general liability coverage underlying North River's policies for two years. The policies further provide that "[i]f the applicable limits of 'Underlying Insurance' . . . are reduced or exhausted by

4

payments from one or more 'Occurrences', the Limits of Insurance of this policy will apply in excess of such reduced or exhausted limits." Id. § V.G.

II.     THIS COURT SHOULD OVERRULE NORTH RIVER'S OBJECTION.

    A.     Payment Of Policy Limits To Escrow Constitutes Payment Of Covered Claims.

Contrary to North River's first argument, Arch and Liberty Mutual's payment of policy limits into an escrow fund under the Court's control – for the benefit of claimants in exchange for a release of claims against InEx – constitutes "payment of . . . settlements" under the Arch, Liberty Mutual, and North River policies.

        1.     North River Now Concedes That Arch And Liberty Mutual Will Make Payments For Settlements On InEx's Behalf Under The InEx Settlement.

North River has now conceded that Arch and Liberty Mutual will make payment of settlements in satisfaction of InEx's liabilities to the plaintiff class under the InEx Settlement. North River recently opposed InEx's request for preliminary approval of the Second Amendment to the InEx Settlement, arguing that time pressures faced by InEx are "manufactured," and that time is not "of the essence." See Opp. Of Def. North River Ins. Co. To Mot. For Exped. Hrg. On The Jt. Mot. For Prelim. & Final Approval Of 2d Am. To The Am. InEx And Knauf Settlements at 4-7 (Doc. No. 15958) ("North River Opp."). North River sought to distinguish Emile M. Babst Co. v. Nichols Constr. Corp., 488 So.2d 699, 703 (La. Ct. App. 1986), which held that a no-action clause does not apply where "an insurer . . . unjustifiably delays settlement, forcing the insured to settle separately." North River argued that:

> INEX does not face the same type of time pressures that existed in Babst. INEX reached its settlement with the PSC in April 2011, over eighteen months ago. *Under the terms of the current INEX Settlement, INEX will have no direct liability to the Plaintiffs or anyone else upon approval of the Settlement. The primary insurers of INEX will contribute money to the settlement*, and the claims against North River will be assigned to the class members.

5

North River Opp. at 7 (italics added). North River asserts that Arch and Liberty Mutual will pay the amounts due under the InEx Settlement, in satisfaction of InEx's liability to the plaintiff class. North River therefore concedes that Arch and Liberty Mutual's payment of policy limits under the InEx Settlement constitutes "payment of . . . settlements" under the policies.

2. <u>Settlement For Full Policy Limits Exhausts The Primary Policies.</u>

In addition, Louisiana courts have held that a primary policy is exhausted when the primary insurer pays its full policy limits in settlement of claims against its insured. In <u>Pareti v. Sentry Indem. Co.</u>, 536 So.2d 417 (La. 1988), the Louisiana Supreme Court held that an insurer exhausted its policy limits when it paid its full policy limits in settlement of a claim against its insured, while the claimants reserved their rights against their underinsured motorist insurer. The settling insurer's policy provided that "[o]ur duty to settle or defend ends when our limit of liability for this coverage has been exhausted." <u>Id.</u> at 420. The Court emphasized that – *unlike* a situation where an insurer unilaterally tenders policy limits without obtaining any release of liability for the insured – in the case at bar, "there was a formal settlement which resulted in the release of both the insured and the insurer by the injured claimant." <u>Id.</u> at 421 n.3. The Court concluded that "[i]t is self-evident that an insurer which has settled for its policy limits . . . has 'exhausted' its limit of liability under the policy." <u>Id.</u> at 421. See also <u>Howell v. Am. Cas. Co.</u>, 691 So.2d 715, 726 (La. Ct. App. 1997) (primary policy was exhausted by payment of policy limits and therefore insurer owed no duty to defend); <u>Ducote v. Cliff's Drilling Co.</u>, 624 So.2d 960, 962 (La. Ct. App. 1993) (same); <u>Bohn v. Sentry Indem. Co.</u>, 681 F. Supp. 357, 365 (E.D. La. 1988) (insurer was not required to defend insured after settling underlying claim for policy limit).

Arch and Liberty Mutual's payment of their *full policy limits* in settlement of claims against their mutual insured InEx exhausts those primary policies. The Arch and Liberty Mutual

policies both provide that "[o]ur right and duty to defend end[s] when we have used up the applicable limit of insurance in the payment of judgments or settlements." Arch Policy § I.1.a(2); Liberty Mutual Policy § I.1.a(2). North River must defend "when . . . the applicable limits of 'Underlying Insurance' . . . have been exhausted by payment of judgments or settlements." North River Policy § II.A.1. The terms "exhausted," "payment," and "settlements" are not defined, and must be given their plain meaning. See Norfolk S. Corp. v. Cal. Union Ins. Co., 859 So. 2d 167, 189 (La. Ct. App. 2003). Under the InEx Settlement, the plaintiff class releases claims against InEx, Arch, and Liberty Mutual in exchange for Arch and Liberty Mutual's payment of their full policy limits into the Escrow Fund for distribution to the class. The payment of primary policy limits into the Escrow Fund also extinguishes the liability of InEx, Arch, and Liberty Mutual to pay the Pending Settlements. See InEx Settlement § 16.6. Under Pareti, the Arch and Liberty Mutual policies are thus exhausted. See Pareti, 536 So.2d at 421.

### 3. Arch And Liberty Mutual Retain No Control Over The Primary Policy Proceeds Upon Their Payment Into The Escrow Fund.

Under the terms of the InEx Settlement, Arch and Liberty Mutual retain no control over the primary policy limits following their payment into the Escrow Fund. The InEx Settlement requires that Arch and Liberty Mutual transfer their full policy limits into the Escrow Fund after exhaustion of appeals of the Court's approval of the settlement, in accordance with Fed. R. Civ. P. 67 and 28 U.S.C. § 2041. Rule 67 provides that money deposited under the rule must be withdrawn in accordance with 28 U.S.C. § 2042, which provides that "[n]o money deposited under section 2041 of this title shall be withdrawn except by order of court." These rules:

> [A]ssign the power and duty of approving disbursements exclusively to the depositary court[. They] require that the depositary court disburse the funds only to persons judicially determined to be rightful owners. The purpose of a deposit under Rule 67 is to

7

> relieve the depositor of responsibility for the money or thing in dispute while the parties litigate their differences with respect to the res.

In Re: Craig's Stores of Tex., Inc., 402 F.3d 522, 530 (5th Cir. 2005) (Dennis, J., dissenting in part); Mid-Continent Cas. Co. v. Eland Energy Inc., No. 06-cv-1576, 2007 U.S. Dist. LEXIS 2876, at *4 (N.D. Tex. Jan. 16, 2007) (directing the deposit of insurer's payment of policy limits into registry of court under Rule 67). The Court has "exclusive jurisdiction" over the Insurance Proceeds in the Escrow Account, and any other funds added to the account, and over "the distribution of same to Class Members." Id. § 15.1. The Court will finally determine the allocation of the Settlement Funds. See Id. § 16.1. No provision exists for, and under no circumstance will, any of the Insurance Proceeds be returned to Arch or Liberty Mutual. Payment of primary policy proceeds into the Escrow Account under Rule 67 – a payment for the benefit of the plaintiff class for a release of the liability of InEx, Arch, and Liberty Mutual, under the exclusive control of the Court – is thus the "payment of . . . settlements" under all the policies, and the primary policies are exhausted.[3]

    4.    <u>An Escrow Fund Is A Fair And Established Method To Distribute Policy Proceeds To Claimants.</u>

Payment of policy proceeds into an escrow fund – for the benefit of claimants in exchange for a release of claims against the insured – is a fair, established, and efficient means of distributing policy proceeds to claimants and constitutes "payment of . . . settlements."

---

[3] See also Morvan v. Moore, 2 So.3d 1204, 1208 (La. Ct. App. 2009) (insurer made valid tender of policy limits and accrued interest into court registry under La. Civ. Code 1869 because the tender was "unconditional:" "No conditions were placed upon the deposit preventing immediate withdrawal of the funds by [the claimant]."); Providence Wash. Ins. Co. of Alaska v. Fireman's Fund Ins. Cos., 778 P.2d 200, 203 (Alaska 1989) (insurer "paid or tendered or deposited" policy limits, for purposes of supplemental payments clause, when it paid funds into settlement trust fund and thereby "gave up control over the funds.").

Payment of settlement proceeds into an escrow fund is a common practice in complex class action litigation.[4] Distributing policy proceeds through an escrow fund, following Court-supervised allocation and distribution of those proceeds, is a fair method, because it will: (i) result in an equitable distribution of policy proceeds to injured claimants; and (ii) permit InEx and its insurers to obtain releases from as many claimants as possible, maximizing the value of the primary policy limits to InEx. North River's objection – that "payment of policy proceeds into an escrow fund does not constitute payment of covered claims" – would, in effect, require payment of settlements to individual claimants on a "first-come, first-served" basis, rather than permitting equitable apportionment under Court supervision. This approach would require compensating certain claimants at the expense of others, would not result in settling the maximum number of claims within the primary policy limits, and would increase the amount of a potential judgment against InEx in excess of primary policy limits – contrary to the insurers' duty of good faith to InEx and to the detriment of North River itself.[5]

Neither the Arch, Liberty Mutual, nor North River policies specify the method that the insurers must employ to pay settlements on behalf of insureds. In Pareti, the Louisiana Supreme Court rejected the argument that a policy was ambiguous because it did "not specify *in what*

---

[4] See In re Vioxx, No. MDL-1657, 2012 U.S. Dist. LEXIS 58262 (E.D. La. Apr. 25, 2012) (Fallon, J.); In Re: OCA, Inc. Secs. & Derivative Litig., No. 05-2165, 2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009) (granting final approval of class action settlement, where settlement provided that insurers pay policy proceeds into escrow account established by plaintiffs' counsel for the benefit of class members); Manual for Complex Litig. at 498 (2010) ("Funds from [partial] settlements typically are placed in income-producing trusts established by class counsel for the benefit of the class and held until the case is fully resolved.").

[5] See, e.g., Pareti v. Sentry Indem. Co., 536 So.2d 417, 420, 423 (La. 1988) ("When multiple claims are filed against the insured that have the potential for exceeding the insurer's policy limits, the insurer must act in good faith and with due regard for the insured's best interest in considering whether to settle one or more of the claims."); DeMarco v. Travelers Ins. Co., 26 A.3d 585, 613-14 (R.I. 2011) ("when an insurer is faced with multiple claimants with claims that in the aggregate exceed the policy limits, the insurer has a fiduciary duty to engage in timely and meaningful settlement negotiations in a purposeful attempt to bring about settlement of *as many claims as is possible, such that the insurer will thereby relieve its insured of as much of the insured's potential liability as is reasonably possible* given the policy limits and the surrounding circumstances.") (emphasis added).

*manner* the limit of liability must be exhausted in order to trigger termination of the duty to defend." Pareti, 536 So.2d at 421 (internal quotation omitted) (emphasis added).[6] The Court held that it was unnecessary to specify the manner by which policies become exhausted, and that it was "self-evident" that payment of full policy limits exhausted the policies. Id. at 421. The practical effect of the primary insurers' payments into the Escrow Fund will be to compensate injured claimants in exchange for releases of InEx, Arch, and Liberty Mutual, subject only to the fair allocation and distribution of settlement proceeds under the exclusive authority of the Court. Nothing in the pertinent policies precludes this fair, established, and efficient means of paying claims, and thus payment of policy proceeds into an escrow fund constitutes "payment of . . . settlements."

        5.      Even If The Full Policy Limits Were Not Being Paid, Exhaustion Would Still Be Deemed To Have Occurred.

Louisiana courts have found primary policies exhausted, and excess policies triggered, where – unlike the present situation – the primary insurer settled claims against the insured for less than full policy limits, even where the excess policy applies only where primary policy limits have been "*paid*." See, e.g., Gasquet v. Commercial Union Ins. Co., 391 So.2d 466, 470 (La. Ct. App. 1980) (settlement below primary policy limits did not release insured's claims against excess insurer, where excess policy provided that liability would not attach until the insured or the primary insurer "shall have *paid* the amount of the underlying limits.") (emphasis added).[7] Louisiana courts conclude that a primary insurer in this situation "has been *credited*

---

[6] The policy in Pareti provided that the insurer's "duty to settle or defend ends when our limit of liability for this coverage has been exhausted," but did not specify that the duty be terminated "by payment of judgments or settlements." Id. at 418, 421 (internal quotation omitted).

[7] See also Futch v. Fid. & Cas. Co., 166 So.2d 274 (La. 1964) (excess insurer remained liable to policyholder despite policyholder's below-policy-limits settlement with primary insurer); Lightfoot v. Hartford Fire Ins. Co., No. 07-4833, 2011 U.S. Dist. LEXIS 5223 at *4-5 (E.D. La. Jan. 20, 2011) (excess insurance policy was triggered where primary insurer settled with claimants for less than primary policy limits, where excess policy applied "after all

10

with its total primary coverage," Futch v. Fid. & Cas. Co., 166 So.2d 274, 278 (La. 1964), even though full policy limits were not paid, and therefore the excess policy is triggered. It must equally be true, then, that primary policies are exhausted, and excess policies are triggered, where a primary insurer receives a complete release in exchange for payment of its *full limits* of liability to an escrow fund which it does not control. Here, Arch and Liberty Mutual's payments of full primary policy limits through an escrow fund subject to the Court's exclusive jurisdiction constitutes the "payment of . . . settlements."

### B. Primary Policy Proceeds Will Not Pay For Uncovered Claims.

Contrary to North River' second argument, Arch and Liberty Mutual's primary policy proceeds will not pay for uncovered claims. North River objects on the ground that "some of the policy proceeds will be used for payment of noncovered claims, which will not reduce coverage provided by the primary policies." Objection at 2.

#### 1. Arch And Liberty Mutual Waive Their Right To A Credit For The Costs Of Notice To The Class.

The InEx Settlement provides that Arch and Liberty Mutual will tender the full limits of the primary insurance policies that they issued to InEx, minus the costs of sending notice to the class advanced by Arch and Liberty Mutual. See InEx Settlement § 1.16. Arch and Liberty Mutual are confident that notice costs represent payment of covered claims under the terms of the primary policies. However, to narrow the issues before the Court, Arch and Liberty Mutual hereby waive their right to a credit for the costs of notice to the proposed class under section

---

primary and other underlying insurance has been exhausted."); Deblon v. Beaton, 247 A.2d 172 (N.J. Super. Ct. 1968) (excess insurer remained liable where primary insurer settled claim for less than primary policy limits); Stargatt v. Fid. & Cas. Co. of N.Y., 67 F.R.D. 689 (D. Del. 1975) (denying excess insurer's motion for summary judgment that primary policy was not exhausted because the insured had settled with primary insurer for less than policy limits).

11

1.16. In view of the waiver of any credit for notice costs, the entirety of the primary limits being paid by Arch and Liberty Mutual is going towards settlement of claims against their insured.

### 2. Arch And Liberty Mutual Are Paying To Settle Contested Claims Against Their Insured As Provided In Their Policies.

To the extent that North River asserts that some portion of the payments will be used for payment of "noncovered claims," North River completely mischaracterizes what is transpiring here. Arch and Liberty Mutual have not accepted and allowed claims by homeowners against InEx, and are not simply handling those claims by paying for damages covered under the policies. If that were the case, then perhaps North River as an excess carrier might be able to argue that, to the extent that the primary insurers were paying for costs not covered by the primary policies, those payments should not count towards exhaustion of the primary policies. For example, if the primary insurers were paying claimants for the costs of replacement drywall, North River might argue that such payments should not count towards exhaustion of the primary policies because those policies exclude coverage for expense from replacement of the insured InEx's product. See, e.g., Arch Policy § I.2.n, Liberty Mutual Policy § I.2.n.

However, this is manifestly *not* what is transpiring here. Rather, Arch and Liberty Mutual have reached a settlement with the PSC of disputed claims against their insured InEx. Arch and Liberty Mutual are not simply "handling claims" -- they are instead obtaining a settlement and release of alleged but disputed liability of their insured, which they have the clear right to do under the policies. It is undisputable that the entirety of the Arch and Liberty Mutual payments under the primary policies is for settlement of disputed liability. Consequently, it is indisputable that the entirety of the Arch and Liberty Mutual payments goes towards exhaustion of the primary limits. Whether the claimants who receive those payments choose to use the money to buy replacement drywall or any other "uncovered" cost is irrelevant to whether the

settlement payments exhaust the primary policies.  So long as the settlements are reasonable, they will go to exhaust the primary policies.  If the rule were otherwise, and settlement payments for disputed claims did not serve to exhaust primary policies, then no primary insurer would ever settle a disputed claim against its insured.

It is clear that the payments of settlements by Arch and Liberty Mutual cannot be payments of "noncovered claims" as suggested by North River.

III.     CONCLUSION

For the reasons stated above, Arch and Liberty Mutual respectfully request that the Court overrule North River's Objection to the InEx Settlement.

Respectfully,

| ARCH INSURANCE COMPANY | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
|---|---|
| By its counsel, | By its counsel, |
| /s/ D. Russell Holwadel<br>D. Russell Holwadel<br>ADAMS, HOEFER, HOLWADEL & ELDRIDGE, L.L.C.<br>400 Poydras Street, Suite 2450<br>New Orleans, Louisiana  70130<br>Telephone:  (504) 581-2606<br>drh@ahhelaw.com | /s/ H. Minor Pipes, III<br>Judy Y. Barrasso, 2814<br>H. Minor Pipes, III, 24603<br>BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, L.L.C.<br>909 Poydras Street, 24th Floor<br>New Orleans, Louisiana 70112<br>Telephone:  504/589-9700<br>Fax:  504/589-9701<br>jbarrasso@barrassousdin.com<br>mpipes@barrassousdin.com |

Dated:  November 5, 2012

{809213_1}

13