UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No.    2047<br>Section L |
| This Document Relates to<br>ALL CASES | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

## DEFENDANTS' OPPOSITION TO BANDAS OBJECTIONS

The Participating Defendants and Participating Insurers in the Global Settlement submit this brief regarding the lack of merit of the objections of the Remaining Bandas Objectors based on the settlement's release of future damages for personal injury.

**I.    RELEASE OF CLAIMS FOR POSSIBLE FUTURE PERSONAL INJURY IS PERMITTED BECAUSE THERE IS NO EVIDENCE THAT CLASS MEMBERS HAVE SUSTAINED OR WILL SUSTAIN ANY PERSONAL INJURIES**

The objectors contend that the class action settlement in this case would improperly release claims for possible future personal injuries from exposure to Chinese drywall. *See* p. 4 of Objection [Rec. Doc. 15859]. Numerous cases have held that, to prevail on such an objection, the objectors must first make a good faith showing that there is an actual likelihood of future personal injuries, which they have failed to do.

- 1 -

The very objection made here was rejected in *Harrell v. South Kendall Construction Corp.*, No. 2009-08401 (Fla. Cir. Ct. Miami-Dade Co. March 4, 2011) (attached as Ex. A)[1], which approved another class action settlement in the Chinese drywall litigation and is therefore, directly on point. The court refused to "invalidate the current Banner settlement based on the mere contingency that there may be future injury which presently has no foundation in the scientific or medical literature." Order at 5.

In approving a class settlement in *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 227 F.R.D. 553, 562 (W.D. Wash. 2004), the court similarly took into account the lack of evidence that class members would sustain personal injuries in the future, observing that "there is no scientific evidence of latent injuries from the ingestion of PPA."

In *In re Serzone Products Liability Litigation*, 231 F.R.D. 221, 238 (S.D.W. Va. 2005), a case involving an allegedly defective drug, the court distinguished the case from *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), on which these objectors rely, and found that the settlement could be approved, stating:

> In contrast, here, there is no scientific evidence of latent or progressive liver injuries arising from the ingestion of Serzone nor

---

[1] Judge Farina also noted that Harrell class members could pursue claims against other defendants in the MDL, but the Court's holding was that the dismissal of personal injury claims against Banner was permissible given the lack of scientific basis for such claims.

> does the class have to accommodate future claimants, as in *Amchem*. Indeed, there are no members of the class in whose interest it would be to preserve BMS's resources for the future. [Citation omitted.]  The injuries among Class Members are presently known, and all Class Members are interested in immediate payment.

In *In re Diet Drugs*, No. 1203, 2000 WL 1222042, *48 (E.D. Pa. Aug. 28, 2000), the court found that "[t]here is no reliable scientific evidence that fenfluramine or dexfenfluramine, when given at normal therapeutic doses, is neurotoxic in humans, i.e., causes lasting central nervous system impairment.  No expert testified to the contrary."  Given the lack of any "clinical evidence" that the diet drugs can cause neuropsychiatric injury, the court approved the settlement class and held that "class members who have not exercised an initial opt-out right have properly relinquished any claim for neurotoxic or neuropsychiatric injury against AHP and the AHP Released Parties." *Id.* at *49; *accord, Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146-47 (8th Cir. 1999) (in approving class settlement in case based on claims caused by underground oil seepage, the Court found that the case did not present a conflict between class members who had existing injuries and those who might sustain future injuries because it "involves a discrete and identified class that has suffered a harm the extent of which has largely been ascertained" in light of the  district court's finding "that it was 'not likely' that there would be significant migration of the underground oil plume").

As shown in the PSC's response, there is no evidence that the objectors themselves have sustained or will sustain any personal injuries from Chinese drywall.  Moreover, for the reasons set forth in the Knauf Defendants'

Memorandum of Law in Support of Final Approval of the Knauf Settlement, there is no scientific basis to conclude that *anyone* has sustained or will sustain any personal injuries from Chinese drywall.

Since the Center for Toxicology and Environmental Health, LLC ("CTEH"), an independent environmental consulting firm in this case, reported its initial findings in November 2006, there has been broad agreement on one central fact: off-gassing from Chinese drywall does not implicate human health and safety in any manner. From the inception of the litigation, various arms of federal and state health and safety watchdogs have issued report after report assessing potential health effects associated with the drywall. None of these have found a risk of personal injury to occupants of homes containing reactive Chinese drywall generally nor have they found any scientific or medical evidence of documented harm to an individual. There is simply no data to suggest a health risk to be found anywhere in the medical literature. Indeed, environmental studies of Chinese drywall exposure reviewed by the Centers for Disease Control ("CDC") "failed to document environmental exposures at levels" that could even "plausibly result in adverse health effects."[2] Far from suggesting a health risk, the CDC found that the

---

[2] Div. of Envtl. Hazards & Health Effects, Nat'l Ctr. for Envtl. Health, Centers for Disease Control and Prevention, *Summary of State Health Department Reviews of Deaths Reported to and Investigated by the Consumer Product Safety Commission Related to Exposure to Imported Drywall* (Jan. 3, 2011), *available at* http://www.cpsc.gov/info/drywall/cdcdrywall01032011.pdf .

"best scientific evidence available" did not even support "undertaking a long-term health study."[3]

In addition to the CDC, the following sources support the absence of a health risk associated with Chinese Drywall:

- Div. of Envtl. Hazards & Health Effects, Nat'l Ctr. for Envtl. Health, Centers for Disease Control and Prevention, *Summary of State Health Department Reviews of Deaths Reported to and Investigated by the Consumer Product Safety Commission Related to Exposure to Imported Drywall* (Jan. 3, 2011), *available at* http://www.cpsc.gov/info/drywall/cdcdrywall01032011.pdf at 2 (Studies conducted by the CPSC and other government agencies concluded that "none of the sulfur compounds found in indoor air were at concentrations historically associated with human health effects.").

- Nat'l Ctr. for Envtl. Health & Agency for Toxic Substance & Disease Registry, *Imported Drywall and Your Home*, *available at* http://www.cdc.gov/nceh/drywall/docs/ImportedDrywallandYourHome.pdf (last visited Aug. 31, 2012) ("Compounds found in the CPSC's evaluations of the drywall were not at levels historically linked to human health effects.").

- U.S. Consumer Prod. Safety Comm'n, Draft Indoor Air Study (2009), *available at* http://www.cpsc.gov/info/drywall/TabC.pdf, at 19 (Reduced sulfur compounds were generally found at concentrations "below levels set by EPA, ATSDR and others as health guidelines.").

- Am. Indus. Hygiene Ass'n, *White Paper on Corrosive Drywall* (Oct. 10, 2010), *available at* http://www.aiha.org/news-pubs/govtaffairs/Documents/W-Corrosive%20Drywall-10-10-10.pdf, at 7 (indicating that a "CDC toxicological evaluation suggested that air contaminant concentrations associated with emissions from CDW are below levels demonstrated to present a health hazard").

---

[3] *See* Press Release, U.S. Consumer Prod. Safety Comm'n & U.S. Dep't of Housing and Urban Dev., *CPSC Completes Final Studies to Help Affected Homeowners Remediate Problem Drywall* (Sept. 15, 2011), *available at* http://www.cpsc.gov/cpscpub/prerel/prhtml11/11327.html.

- Fla. Dep't of Health, Div. of Disease Control and Health Protection (May 15, 2009), Frequently Asked Questions, *available at* http://www.doh.state.fl.us/environment/community/indoor-air/drywallFAQ.html (The Florida Department of Health "has not identified data suggesting an imminent or chronic health hazard at this time.").

- Va. Dep't of Health, Div. of Envtl. Epidemiology, Frequently asked Questions about Drywall Imported from China (Nov. 8, 2010), *available at* http://www.vdh.virginia.gov/epidemiology/DEE/PublicHealthToxicology/documents/pdf/chinese%20drywall%20FAQ%20final.pdf, at 1 ("Current data does not suggest any immediate or chronic health problems associated with Chinese drywall.").

- CTEH, Knauf Tianjin Plasterboard Evaluation (January 29, 2009), at 13 ("[T]he measured concentrations [of sulfur-containing compounds] in homes containing the Knauf Tianjin product are not at levels considered a public health concern.").

- Envtl. Health & Eng'g, *Final Report on an Indoor Environmental Quality Assessment of Residences Containing Chinese Drywall* (Jan. 28, 2010), *available at* http://www.cpsc.gov/library/foia/foia10/os/51homeFinal.pdf, at 116 ("Most of the two-week average concentrations of hydrogen sulfide measured in complaint homes included in this study were below [ATSDR and EPA] health-based benchmarks," and the "levels of carbon disulfide in complaint and non-complaint homes were well below the ATSDR and EPA health-based benchmarks.").

- Nat'l Ass'n of Home Builders, *Imported Problematic Drywall: Identification Strategies and Remediation Guidelines* (March 2011), *available at* http://www.nahb.org/fileUpload_details.aspx?contentID=153298, at 31 ("No studies in the medical literature were found relating adverse health effects at low concentrations to the types of corrosive species identified during testing performed by federal and state agencies in the homes containing problematic drywall.").[4]

---

[4] *See also* Envtl. Health & Eng'g, *Problem Drywall Assessment and Indoor Environmental Quality Evaluation 144 Groesbeek Street and 4 Darden Street Fort Bragg, North Carolina* (February 7, 2011), *available at* http://www.cpsc.gov/info/drywall/ehefeb2011.pdf, at 7, 73 (Chinese drywall not present

*(footnote continued on next page ...)*

We note, moreover, that because all of these studies find that homeowners with continuous and continuing exposure have no risk of physical injury, it necessarily follows that there is no latent risk based on occupational exposure to installers that necessarily was of much shorter duration – with exposure having ceased many years ago.  In this regard, it is significant that not a single one of the thousands of homeowners who had Chinese Drywall in their homes (whether represented by PSC members or other counsel) has objected to the settlement because of a concern about latent injury.  The fact that only a professional objector has expressed this concern – and that this concern is expressed only by objectors who cannot prove any exposure to Chinese Drywall, but were willing to concoct a fear claim after consultation with a lawyer but no doctors – demonstrates in spades that there is no real claim to be asserted for latent injury.

## II. THE LATENT PERSONAL INJURY OBJECTION IS AN UNTIMELY AFTERTHOUGHT

We also point out that the Remaining Bandas Objectors' challenge based on latent personal injury is untimely.  The Court's scheduling order set "briefing schedule" that required that "[a]ny objections to the above motion [in support of the settlements] to be filed on or before September 28, 2012.  Although the Bandas Objectors filed an objection on September 28, conspicuously absent

---

in homes subject to CPSC investigation involving highly publicized deaths of infants in Fort Bragg, North Carolina).

- 7 -

from that objection any challenge based on latent personal injury. It was not until October 30, 2012 – more than 30 days after the objection deadline – that the Remaining Bandas Objectors, in response to a motion for sanctions, concocted their argument about latent injury.

The Court of course has discretion to enforce its orders and strike the late filed objection as untimely. More revealing, however, is what the tardiness reveals about the bona fides of the objection. That the initial objection was totally silent on the issue of latent personal injury speaks volumes about how serious a concern that issue was to the objectors. That the objection was "discovered" only in response to a sanctions motion against an attorney – and that the objection is not supported by a single class member with proof that they were exposed to Chinese Drywall – reveals that the attorney and not the objector is the real party in interest here.

### III. CONCLUSION

Given the complete absence of evidence of any existing physical injuries resulting from Chinese drywall, the objectors' claims of possible latent injuries are even more attenuated. Neither the Objectors' Memorandum nor the Frank Affidavit even addresses the studies cited above, let alone provides any

evidence to the contrary. In these circumstances, the objection is meritless and should be stricken.

                Respectfully submitted,

                ALL PARTICIPATING DEFENDANTS
                AND ALL PARTICIPATING INSURERS

                Judy Y. Barrasso, 2814
                H. Minor Pipes, III, 24603
                BARRASSO USDIN KUPPERMAN FREEMAN
                  & SARVER, L.L.C.
                909 Poydras Street, 24th Floor
                New Orleans, Louisiana  70112
                Telephone:  504/589-9700
                Fax:  504/589-9701
                jbarrasso@barrassousdin.com
                mpipes@barrassousdin.com

Dated:  November 6, 2012

**{808960_1}**