# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL CASES AND<br><br>*Silva, et al. v. Interior Exterior Building Supply, LP, et al.*<br>Case No. 09-08030 (E.D. La.)<br><br>*Silva, et al. v. Arch Insurance Company, et al.*<br>Case No. 09-08034 (E.D. La.)<br><br>*Payton, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:09-cv-07628 (E.D. La.)<br><br>*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*<br>Case No. 2:10-cv-00361 (E.D. La.)<br><br>*Gross, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:09-cv-06690 (E.D. La.)<br><br>*Rogers, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:10-cv-00362 (E.D. La.)<br><br>*Amato, et al. v. Liberty Mutual Ins. Co., et al.*<br>Case No. 2:10-cv-00932 (E.D. La.)<br><br>*Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*<br>Case No. 2:11-cv-00080 (E.D. La.)<br><br>*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 2:11-cv-00252 (E.D. La.)* | |

**INEX'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR AN ORDER APPROVING CLASS SETTLEMENTS AND IN RESPONSE
TO NORTH RIVER INSURANCE COMPANY'S OBJECTIONS AND RESPONSE**

**MAY IT PLEASE THE COURT:**

Interior/Exterior Building Supply, L.P. ("InEx") submits this *Reply Memorandum* in support of the *Plaintiffs' Steering Committee's Motion for an Order Approving Class Settlements* (Rec. Doc. No. 15764) (the "Motion"), and in response to the *Objections and Response of the North River Insurance Company* to the Motion (Rec. Doc. No. 15851), which adopts and incorporates by reference North River's *Objections to the Request for Certification of an InEx Class Settlement* (Rec. Doc. No. 8683).[1] InEx files this Reply to address North River's objections to InEx's post-loss assignment of its rights under the North River excess policies,[2] and to a judicial recognition of exhaustion of the Arch and Liberty Policies.[3] Neither of North River's objections is supported by Louisiana law, and both should be overruled.

### I. FACTS

In April 2011 InEx and its primary insurers, Arch and Liberty, became the first defendants in this MDL to enter into a settlement of their potential Chinese Drywall liability with the PSC. *See,* Amended Settlement Agreement Claims Against Interior-Exterior in MDL No. 2047 (the "InEx Class Settlement") (Doc. No. 12258-3). The InEx Class Settlement contemplates the payment of the aggregate limits of liability of the Arch and Liberty Policies ($8 million over four policy years) into an Escrow Fund which will be used to compensate only those Participating Class Members who

---

[1] Capitalized terms not otherwise defined herein have the same meaning given to them in the InEx Class Settlement (Rec. Doc. No. 12258-3).

[2] *Id.* at Sections 3.3 and 1.20.6.

[3] *Id.* at Sections 12 and 1.20.5; *see also* Section 1, proposed Second Amendment to InEx Class Settlement (Rec. Doc. No. 15948-2).

2

received Chinese Drywall distributed by InEx. The InEx Class Settlement, which acts as the cornerstone for all CDW settlements that came after, benefits all claimants with Chinese Drywall claims against InEx and the other defined "Settling Defendants" in the InEx Class Settlement.

The InEx Class Settlement has two funding sources. Initially the $8 million of policy limits of the Arch and Liberty Policies are to be deposited by Arch and Liberty into the Escrow Account. The second funding source contemplated by the InEx Class Settlement pursuant to Section 3.3.2 of the Agreement is the assignment by InEx to the PSC of InEx's post loss rights up to a cumulative $72 million of policy limits from four consecutive InEx excess policies underwritten by North River.[4] Given the potential uncertainty of InEx's ultimate liability, but recognizing that the ultimate liability could be well in excess of North River's aggregate policy limits, InEx's post loss assignment of rights to the PSC was a critical element of the Agreement.

Once the settlement is funded, the available proceeds will be allocated and distributed to Eligible Class Members pursuant to Section 16 of the Agreement.[5] The payments by Arch and Liberty of the limits of their policies into the Escrow Fund extinguishes the liability of InEx, Arch and Liberty to pay the pending settlements.[6]

---

[4] *See* Sections 3.3.2, 14.1 and 16, InEx Class Settlement *as amended by* Section 3, Second Amendment to InEx Class Settlement (Rec. Doc. No. 15948-2), currently awaiting court approval.

[5] *See* Sections 3.3.1, 12.1 and 16, InEx Class Settlement (Rec. Doc. No. 12258-3).

[6] *Id.* at Sections 1.20.5 and 16.6. InEx, the PSC, and the Knauf Defendants have filed a proposed second amendment to the InEx Settlement. (Rec. Doc. No. 15948-2). Section 1 of the proposed second amendment, when approved by the court, will clarify that the transfer of the primary policy proceeds to the Escrow Fund will exhaust the primary limits and settlement of claims by the InEx class.

In its September 28, 2012 Objections and Responses of the North River Insurance Company to the motion of the Plaintiff's Steering Committee for an Order Approving Class Settlements, (Rec. Doc. 15815) North River makes two key objections to the settlement.[7]  First, North River states:

> On the InEx settlement and the Knauf settlement, North River has not and will not consent to the proposed assignment of rights under policies of insurance issued by North River to Interior Exterior Building Supply, L.P. and North River objects to any provision of either agreement that purports to assigned rights under any policy of insurance issued by North River.

Next, in paragraph 3 of its objection, North River states:

> On the InEx settlement, North River objects to the provision requesting a judicial determination that the primary insurance carriers for Interior Exterior Building Supply, LP will exhaust coverage under the primary policies by paying policy proceeds into an escrow fund.  North River objects because
>
> (1) payment of policy proceeds into an escrow fund does not constitute payment of covered claims that reduce coverage provided by the primary policies
>
> (2) on the face of the InEx Agreement is its clear that some of the policy proceeds will be used for payment of non-covered claims, which will not reduce coverage provided by the primary policy.

InEx now addresses each of North River's objection in turn.

## II.   LAW AND ARGUMENT

1. <u>Well-Settled Louisiana Law Recognizes InEx's Ability to Assign its Rights Under the Excess Policies Post-Loss</u>

 North River objects to this Court's approval of the InEx Class Settlement on the basis that it "has not and will not consent" to InEx's post-loss assignment of its rights under the Excess Policies to the PSC.  North River provides no legal basis whatsoever in support of its objection or its refusal to consent to the InEx Class Settlement, likely because the Louisiana Supreme Court has

---

[7] *See* p.1, North River's Objections and Response (Rec. Doc. No. 15851); *see also* p.6, §3, North River's Objections to the Request for Certification of an InEx Class Settlement (Rec. Doc. No. 8683; *see also* Sections 3.3 and 1.20.6, InEx Class Settlement (Rec. Doc. No. 15948-2).

4

unequivocally recognized an insured's right to make *post-loss* assignment of claims under a liability insurance policy as a matter of law.[8]

In 2011, the Louisiana Supreme Court considered whether standard ISO anti-assignment clauses in homeowner's insurance policies barred an insured's post-loss assignment of rights to the State made pursuant to the administration of the Road Home Program funds following Hurricanes Katrina and Rita.[9] In considering the validity of post-loss assignments under Louisiana law, the supreme court held that, although post-loss assignments were not expressly prohibited in Louisiana, any contract purporting to prohibit such assignments "**must *clearly and unambiguously express that the non-assignment clause applies to post-loss assignments***."[10]

Noting that no Louisiana court had ever previously addressed public policy considerations relative to post-loss assignments of rights and duties under liability insurance policies, the Louisiana Supreme Court expressly adopted the "prevailing American rule" that distinguishes between pre-loss and post-loss assignments stating that:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts in the Civil Code. Louisiana Ins. Guaranty Assn. v. Interstate Fire & Casualty Co., 630 So. 2d 759, 763 (La. 1994); Lewis v. Hamilton, 94-2204 (La. 4/10/95), 652 So. 2d 1327, 1329. Insurers are entitled to limit their liability and to impose reasonable conditions upon the policy obligations absent a conflict with statutory provisions or public policy. Louisiana Ins. Guaranty Assn., 630 So. 2d at 763. ***However, because insurance policies are adhesionary in nature, any contradiction or ambiguity in the contract must be strictly construed against the insurer, the party who drafted the policy.*** La. C.C. art. 2056 10; Louisiana Insurance Guaranty Assn., 630 So. 2d at 764; Lewis, 652 So. 2d at 1330. ***Insurance is a highly regulated industry, and insurers are well aware of the distinction between pre-loss and post-loss assignments***. ***Post-loss assignment of claims arising under the policy is not equivalent to the assignment of the policy itself, or an interest in the policy.*** <u>***Given the categorical difference***</u>, we find it incumbent on insurers ***to include clear and***

---

[8] *See generally In Re: Katrina Canal Breaches Litigation*, No. 2010-CQ-1823, (La. May 10, 2011); 63 So.3d 955.

[9] *See generally In Re: Katrina Canal Breaches Litig.*, No. 2010-CQ-1823, (La. May 10, 2011); 63 So.3d 955.

[10] *Id.* at 963. (emphasis added)

5

*unambiguous language in their policies*. We do not find it necessary to formulate a test consisting of specific terms or words, *however the insurer must include language making it clear and explicit that post-loss assignments are prohibited under the policy*.[11]

Thus, the Court recognized the critical distinction between an insured's assignment of a matured claim for moneys already due on account of a past event versus an assignment of pre-loss rights to insurance that might inherently increase and/or modify the risk undertaken by the insurer.[12] The Court did so using broad, all-encompassing language. The fact that the Court stated that Louisiana adheres to the majority rule in a case involving homeowners' policies does not distinguish it from the case at hand. Rather, because post-loss assignments, such as InEx's assignment in this case, merely transfer an accrued right to payments, the Louisiana Supreme Court found, as have almost all courts which have decided the issue, that post-loss assignments are valid and enforceable unless the non-assignment clause of the policy at issue **expressly** extended its application to post-loss assignments.[13]

As did the broad ISO language at issue in the *In Re Katrina* decision, the anti-assignment clause of the North River excess policies at issue prohibits InEx from assigning its "rights or duties" under the policies without North River's consent.[14] However, nowhere in the provision, or anywhere else in the Excess Policies, does North River **expressly and unambiguously** state that this prohibition extends to InEx's post-loss assignment of rights under the Policies. The fact that the non-assignment clause in the Excess Policies has a single, articulated exception does not take the

---

[11] *Id.*

[12] *See generally In Re: Katrina Canal Breaches Litig.*, No. 2010-CQ-1823, (La. May 10, 2011); 63 So.3d 955.

[13] The Supreme Court of Kentucky recently joined the list of courts recognizing the validity of post-loss assignments in *In re: Wehr Constructors, Inc. v. Assurance Co. of America*, 2012-SC-000221-CL (Kentucky Oct. 25, 2012).

[14] *See* p. 28, FM 101.0.1108 (0999),§Q Transfer of Your Rights and Duties Under This Policy –Conditions, Excess Policy No. 553 085 250 3. ("Your rights and duties under this policy may not be transferred without our prior written consent except in the case of death of a "Named Insured.").

6

clause outside the supreme court's rationale *In Re Katrina* . The exception in the North River non-assignment clause does not state that it is the only exception to the clause. It thereby **does not** create an "expressed and unambiguous" prohibition of post loss assignments. It follows that the assignment contemplated under the InEx Class Settlement is a non-prohibited post loss assignment cannot be disputed. Accordingly, under Louisiana's general rules of contract construction and the Louisiana Supreme Court's decision in the *In Re Katrina* cases, North River's objection to the InEx Class Settlement on the basis of its post-loss assignment of claims to the InEx Class contemplated therein should be summarily rejected.

    2.   <u>Payment of Policy Limits Exhausts the Arch and Liberty Policies under Louisiana law</u>

In response to North River's unsubstantiated objection to the parties' request for a judicial recognition of exhaustion of the Arch and Liberty Policies,[15] InEx hereby adopts and incorporates by reference the authorities and arguments set forth in the contemporaneously filed *Response* to North River's objection by InEx's primary carriers, Arch and Liberty, as well as those set forth in the Parties' *Joint Motion for Preliminary and Final Approval of the Second Amended InEx And Knauf Class Settlements And For Judicial Recognition Of Exhaustion*.[16]

### III.   <u>CONCLUSION</u>

North River has continuously presented itself as an obstacle to InEx's efforts to resolve its potential liability for the claims of the InEx Class and its position now threatens the viability of both the InEx Class Settlement and the Knauf Class Settlement. Indeed, its unwillingness to participate in the reasonable resolution of its potential liability on behalf of its insured may well constitute a

---

[15] *Id.* at Sections 12 and 1.20.5; *see also* Section 1, proposed Second Amendment to InEx Class Settlement (Rec. Doc. No. 15948-2).

[16] *See* p. 6-11, Resp. by Arch Ins. Co. & Lib. Mut. Fire Ins. Co. to Obj. and Resp. of the North River Ins. Co. to the Mot. of the Pls.' Steering Committee for An Order Approving Class Settlements (Rec. Doc. No. 16114); *see also* Joint Mot. For Prelim. and Final Approval of the 2nd Am. InEx And Knauf Class Settlements and For Jud. Recognition of Exhaustion. (Rec. Doc. No. 15948).

7

violation of its duties of good faith and fair dealing to InEx under Louisiana law.  North River's potentially violative conduct is self-evident in the unsubstantiated nature of its objections to the InEx Class Settlement as a result of the contemplated post-loss assignment of InEx's accrued claims against North River to the InEx Class; and the exhaustion of InEx's primary carriers' available policy limits by virtue of each carrier's Section 12 deposit of all available policy limits into the Escrow Fund to be administered by the Court.  Simply put, North River's objections are without basis in either the plain language of the North River excess policies or Louisiana law.  Accordingly, InEx respectfully submits that North River's objections should be overruled and the InEx Class Settlement, and proposed Second Amendment thereto, should be approved preliminarily (and, after the scheduled fairness hearing, finally) by the Court.

Respectfully submitted,

Dated: November 6, 2012             /s/ Richard G. Duplantier
                                    Richard G. Duplantier
                                    Galloway Johnson Tomkins Burr and Smith
                                    701 Poydras Street, 40th Floor
                                    New Orleans, LA  70139
                                    Phone: (504) 525-6802
                                    Fax: (504) 525-2456
                                    rduplantier@gjtbs.com
                                    *Counsel for Interior/Exterior Building Supply, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 6th day of November, 2012.

/s/ Richard G. Duplantier
Richard G. Duplantier