# EXHIBIT 29

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

CHINESE DRYWALL DIVISION

CASE NO. 2009-08401 CA 42

JASON HARRELL and MELISSA HARRELL,
individually, on behalf of their minor children,
and on behalf of all others similarly situated,

    Plaintiffs,

vs.

SOUTH KENDALL CONSTRUCTION CORP.,
a Florida Corporation, PALM ISLES HOLDINGS,
LLC, a Limited Liability Company, KEYS GATE
REALTY, INC., a Florida Corporation, et. al.,

    Defendants.

_____/

## ORDER GRANTING OBJECTING CLASS MEMBERS' MOTION TO INTERVENE IN THE HARRELL CLASS ACTION, OVERRULING INTERVENORS' OBJECTIONS TO PROPOSED CLASS SETTLEMENT, OVERRULING OBJECTIONS TO REQUESTED CLASS REPRESENTATIVE INCENTIVE AWARD, AND APPROVING CLASS SETTLEMENT

THIS MATTER came before the Court on February 4, 2011, on objecting class members' motion to intervene in order to object to the proposed class settlement during this Court's pre-scheduled fairness hearing to approve or deny the ATCO and Banner class settlements. The Court having reviewed the pleadings and memoranda, and having considered arguments of counsel finds as follows:

### I. PROCEDURAL HISTORY AND FACTUAL RECITATION

Lead plaintiffs, Jason and Melissa Harrell, purchased a home built with defective, Chinese-manufactured drywall. The defective drywall emits sulfur-based chemicals that, when exposed to heat and humidity, cause property damage to homes, their fixtures and their contents. On February 3, 2009, the Harrells filed the instant class action complaint against a group of defendants comprised of South Kendall Construction Corp. ("SKCC"), Palm Isles Holdings, LLC ("PIH"), Keys Gate Realty, Inc. ("KG"), and Banner Supply Company ("Banner"). These defendants consist of the builder, sellers and marketer of the Harrells' home, as well as the drywall supplier.

The complaint alleged that the drywall used in the home was defective, causing property damage to the home, its fixtures and its contents. Third-party defendants ATCO, the drywall installer, and Knauf Plasterboard (Tianjin) Co. Ltd., the drywall manufacturer, were also brought into the action. On February 5, 2010, Banner filed a third-party complaint against Knauf Plasterboard (Tianjin) Co. Ltd., and Knauf Gips KG, obtaining service through the Hague Service Convention.

On May 27, 2010, the Court certified the class in this case and made rulings as to notification to potential class members. Lead counsel in the case provided notice, informed class members on their ability to opt-out of the class, and also informed class members of a proposed settlement with SKCC, PIH and KG. No class members chose to opt-out of the class. On June 23, 2010, this Court entered a notice of pendency of class action, settlement, and fairness hearing. The notice informed class members that their requests to be excluded from the class must be received no later than July 15, 2010, and that the Court had scheduled a fairness hearing on July 29, 2010, to determine whether to grant final approval of the SKCC, PIH, and KG settlements. No class member opted-out by the July 15, 2010 deadline. Additionally, during the July 29, 2010, fairness hearing, no class member objected to the proposed settlements with SKCC, PIH, and KG, all of which contained language whereby class members released all manner of claims, including those any class member may have for personal injury, bodily injury, and/or medical monitoring.

Settlement negotiations continued in this case between the class and both Banner and third-party defendant, ATCO. On December 17, 2010, this Court entered a notice of proposed settlements and fairness hearing in connection with the ATCO and Banner settlements. The notice informed class members that any objections to the settlement must be received by January 24, 2011, and that the fairness hearing would be held on February 4, 2011. Like the previous settlements, the ATCO and Banner settlements contain language releasing the defendants from all manner of claims, including those any class member may have for personal injury, bodily injury, and/or medical monitoring. The Banner settlement also assigns to the class all claims and causes of action that Banner has or could have asserted against the Knauf entities in its third-party complaint. Lastly, the Court's notice of proposed settlements also informed class members of the proposal for a $100,000 incentive award to the Harrells for acting as lead plaintiffs.

The instant objectors, amounting to 29 members out of a class totaling approximately 79 members, filed a motion to intervene and objections to the proposed settlements with Banner and ATCO. During the February 4, 2011, fairness hearing, the objectors withdrew their objections to the proposed settlement with ATCO. Objectors currently object only to the terms of the proposed settlement with Banner. The objections are based on the purported unfairness inherent in a settlement that attempts to resolve personal injury, bodily injury, and medical monitoring claims that were never asserted in the property damage complaint. Additionally, seven out of the 29 objectors, oppose the suggested $100,000 incentive award to the Harrells, and suggest an incentive award totaling $25,000, instead.

On February 4, 2011, this Court held a fairness hearing to determine whether to grant final approval of the ATCO and Banner settlements. The hearing lasted one and a half days

2

during which numerous counsel presented detailed argument, witness testimony was presented, and multiple exhibits were presented into evidence. The Court reserved ruling on the issues until now.

## II. OBJECTORS' MOTION TO INTERVENE

1. Objectors move to intervene pursuant to Florida Rule of Civil Procedure 1.230 which provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention..."

2. An individual is entitled to intervene when his interest in the matter being litigated is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Barnhill v. Florida Microsoft Anti-Trust Litigation*, 905 So. 2d 195, 199 (Fla. 3d DCA 2005) (*citing Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992). "Furthermore, in a case involving an objector to a class action settlement, '[l]eave to intervene should be freely granted for purposes of appeal provided that the objector is a class member and objected to the settlement in the trial court.'" *Barnhill*, 905 So. 2d at 199 *quoting Ramos v. Philip Morris Companies., Inc.*, 714 So. 2d 1146, 1148 (Fla. 3d DCA 1998).

3. In the instant case, the 29 objectors are class members who object to the settlement, and would be directly affected by the operation and effect of this Court's judgment approving the settlement. As such, this Court grants their motion to intervene.

## III. OBJECTIONS TO THE PROPOSED BANNER SETTLEMENT

1. The proposed Banner settlement contains language that defines "released claims" as "any and all causes of action, damages, or injuries arising from or related to defective drywall. . . including but not limited to property damage, bodily injury, or bad faith. . ." (Banner stipulation of settlement p. 7). The settlement goes on to state that class members "forever discharge[] the Releasees [namely, Banner] of and from all and any manner of action and actions, cause and causes of action, responsibilities, suits, debts, dues, sums of money. . .whether pending or accrued. . .asserted or unasserted, whether presently known or unknown to the [class], and whether vested or contingent. . ." (Banner stipulation of settlement pp. 14-15.)

2. This broad release language is not novel to the Banner settlement. Similar language appears in the SKCC, PIH and KG settlements. The KG, SKCC and PIH settlement required the "release" and "discharge from all manner of claims." (Notice of Pendency of Class Action, Proposed Settlements and Fairness Hearing entered June 23, 2010; and SKCC and PIH stipulation of settlement p. 10). The SKCC and PIH settlements went on to "enjoin[]" participating class members "from filing or continuing to prosecute any lawsuit, action or arbitration. . .based on or relating to the facts and circumstances underlying the Released Claims." (SKCC and PIH stipulation of settlement pps. 10, 14.) Notably, the SKCC and PIH stipulation of settlement, containing this broad release language, was jointly signed by lead counsel for the class as well as counsel for the current objectors.

3

3. The instant objections to the Banner settlement rest mainly on the language in the Banner settlement that releases "all claims," including those for personal injury, bodily injury, and medical monitoring. The objectors argue that it is unfair and inappropriate to settle personal injury, bodily injury and medical monitoring claims, when such claims were never asserted in the property damage complaint that is the basis for this class action.

4. Objectors rely on Florida Rule of Civil Procedure 1.220, the rule on class actions, in support of their argument. That rule is based upon Federal Rule of Civil Procedure 23. Thus, federal decisions applying the federal rule are persuasive here. *Florida Dept. of Agric. v. Citrus Canker Litig.*, 941, So. 2d 461, 464 (Fla. 3d DCA 2006). Contrary to the objectors' assertions, in a class action, a "Court may approve a settlement which releases claims not specifically alleged in the complaint as long as they are based on the same factual predicate as those claims litigated and contemplated by the settlement." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 700 (M.D. Fla., 2005); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("the law is well-established...that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001) ("It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action, itself.")

5. The above-cited cases leave the Court satisfied that a proposed class settlement is not legally insufficient by virtue of its releasing claims beyond those asserted in the complaint, so long as the released claims are based on the same set of facts and circumstances contained in that complaint. This is precisely the situation at bar; the Banner settlement seeks a release of all manner of claims arising out of one factual scenario – the use of defective drywall installed in class members' properties. Obtaining such a release is not legally objectionable and the Court will not disapprove of the settlement on that sole basis.

6. Further, the objections against the settlement are less influential on the Court by virtue of the fact that the objectors did not assert their objections over six months ago, during the SKCC PIH and KG fairness hearings, when virtually identical language was found in the settlements with those defendants. The appropriate time to object to the principle of settling personal injury, bodily injury and medical monitoring claims, and to opt-out of the settlement, was when the issue initially presented itself at the July 29, 2010, SKCC, PIH and KG fairness hearings. Objecting to this principle now, for the first time, is not timely – particularly when counsel for the objectors was among those attorneys who signed the SKCC and PIH settlement documents releasing those parties from all claims, including those for personal injury, bodily injury and/or medical monitoring.

7. The Court is also mindful of the fact that there is no current scientifically or medically documented proof that defective drywall caused actionable personal or bodily injuries – any claims of this nature can be seen as only prospective or unconfirmed. That said, the class is not precluded from pursuing those claims in at least two ways, to the extent that they manifest in the future. First, the Banner settlement includes a provision whereby Banner will assign to the class

4

all claims and causes of action Banner has or ever could assert against any entity arising from the released claims in the settlement. This includes an assignment to the class of Banner's asserted or unasserted claims and causes of action against the Knauf entities – a manufacturer of the defective drywall – in the currently-pending, third-party complaint whereby Banner has perfected service over the Knauf entities via the Hague Service Convention. Thus, class members are not prevented from pursuing personal injury, bodily injury, or medical monitoring claims in the future – they may assert them against Knauf in Banner's third-party complaint which is currently set for trial in February 2012. Second, the United States District Court for the Eastern District of Louisiana Chinese Drywall Multi-District Litigation currently houses a federal class action complaint alleging personal injury, bodily injury, and medical monitoring damages. (Vickers v. Knauf Gips KG, et. al., Case No.: 09-4117, consolidated with MDL Case No.: 09-MD-42047.) Harrell class members may assert personal injury, bodily injury, and medical monitoring claims there.[1] This Court cannot, however, invalidate the current Banner settlement based on the mere contingency that there may be future injury which presently has no foundation in the scientific or medical literature.

### IV. ANALYSIS OF THE FAIRNESS OF THE BANNER AND ATCO PROPOSED SETTLEMENTS

1. "Factors for a court to consider in determining whether to approve a class action settlement include: (1) the likelihood of success at trial and potential recovery; (2) the complexity, expense and duration of litigation; (3) the terms of the settlement; (4) the procedures afforded to notify the class members of the proposed settlement, and to allow them to present their views; (5) the judgment of experienced counsel for the plaintiff class; (6) the substance and amount of opposition to the settlement; and (7) the stage of the proceedings at which the settlement was achieved." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla., 2005).

2. With regard to factors one and two, the likelihood of success at trial and potential recovery, and the complexity, expense and duration of litigation, the Court should "limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Strube*, 226 F.R.D. at 697-98. Here, while the plaintiffs' likelihood of success at trial may be relatively high, a trial in this matter will only consume more time and cost class members additional money in both attorneys fees and living expenses since most in the class members remain obligated to pay the mortgages tied to their uninhabitable homes, as well as pay for rental or other housing expenses, through trial and, most likely, for the duration of the lengthy appeal process. Settlement at this time leaves class members in a position to have money in their hands to remediate their homes within 90 days of settlement approval and bring the expense of maintaining multiple residences to a speedier halt. Thus, these two factors weigh in favor of settlement approval.

3. The Court must also look to the general terms of the settlement and the point at which settlement was achieved. "The settlement terms should be compared with the likely

---

[1] The MDL *Vickers* case is awaiting a hearing on class certification and the class currently consists of only ten named members. Once the certification process is complete, eligible property owners, including, ostensibly, those who are members of the *Harrell* class, will have the ability to become a part of the *Vickers* class.

5

rewards the class would have received following a successful trial of the case." *Colton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The Court should remain mindful, however, "that compromise is the essence of a settlement" and that settlement proponents should not be required to justify each term in light of a speculative measure of what concessions might have been gained. *Id.* The total settlement amount from all four settling defendants totals approximately nine million dollars and provides the class the ability to pursue claims - including those for personal injury, bodily injury, and/or medical monitoring – against the Knauf entities without having to engage in the lengthy procedure of perfecting service against foreign-entity Knauf. The settlement will provide the class access to home remediation funds within 90 days of the effective date of the settlement, and class members may use those funds to participate in the Knauf-initiated remediation program whereby Knauf will remediate class members' homes using funds obtained via the settlement and make up the difference in remediation costs out of its own pocket. The settlement also allows class members to avoid having to "wait in line" for a trial date as they would were they to file an individual action – the Court emphasizing that only one individual drywall case has proceeded to trial in this division since its inception. In analyzing the point at which settlement was achieved, the Court notes that the settlement arrived almost two years after the complaint was filed in this case. During this time, the parties filed numerous motions, conducted extensive discovery, argued key issues before the court, and otherwise actively litigated the case in a manner that allowed them the opportunity to consider the facts and applicable legal principles, as well as to assess the strengths and weaknesses of their respective positions. As such, both the general terms of the settlement and the point at which settlement was reached weigh in favor of the Court approving the settlement.

4. The *Strube* factors outlined above also require the Court to consider both the substance and amount of opposition to the settlement. The substance of the objection to the settlement has been discussed above in Section III of this order and will not be extensively reiterated here. The amount of opposition, however, has not yet been discussed. A total of 29 out of 79 class members object to the settlement. These objectors amount to a significant minority and the Court is mindful of their concerns. Their objections, however, are not legally cognizable, as explained in Section III of this order, and are also untimely as they were not asserted during the SKCC, PIH and KG fairness hearings held in July 2010. Thus, this Court is not persuaded to disapprove of the settlement based on the number of objectors.

5. The Court will next consider the procedures afforded to notify the class members of the proposed settlement, and to allow them to present their views, as well as the judgment of experienced counsel for the plaintiff class. The Court issued two settlement notices in this case – one on June 23, 2010, and one on December 17, 2010 – informing class members about the details of the settlement and how they might make their settlement concerns known. The Court is therefore satisfied that adequate notice of settlement was distributed to class members. In terms of analyzing the judgment of plaintiffs' counsel, the Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Strube*, 226 F.R.D. at 703, *citing Cotton*, 559 F.2d at 1330. Class counsel in the case at bar are capable, experienced attorneys. Objectors have not alleged collusion or bad faith, and the Court has seen no evidence of any kind that the parties or their counsel have colluded or acted in bad faith in arriving at the settlement terms. Therefore, counsel's recommendation of the agreement is persuasive that approval is appropriate.

6.   Lastly, the Court notes that there are seven class members who object to the proposed, $100,000 incentive payment to the Harrells for acting as lead plaintiffs in this case. The Court has taken the objection under consideration, but does not find the $100,000 incentive payment excessive in light of the time and effort the Harrells exerted in maintaining this action. As such, the Court declines to reduce the proposed incentive award.

WHEREFORE, it is ORDERED and ADJUDGED that the objectors' motion to intervene is GRANTED and objectors' arguments against approving the Banner settlement and the lead plaintiffs' $100,000 incentive award are OVERRULED. The proposed ATCO and Banner settlements are APPROVED.

DONE and ORDERED in chambers in Miami-Dade County, Florida, this ___ day of MARCH, 2011.

JOSEPH P. FARINA
CIRCUIT COURT JUDGE

Copies furnished to:
All counsel of record
via *Lexis Nexis*

7