# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |

**THIS DOCUMENT RELATES TO:**
**ALL CASES AND**

*Payton, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-07628 (E.D. La.)**

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*
**Case No. 2:10-cv-00361 (E.D. La.)**

*Gross, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-06690 (E.D. La.)**

*Rogers, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:10-cv-00362 (E.D. La.)**

*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 2:11-cv-00252 (E.D. La.)**

*Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-1363 (E.D. La.)**

*Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-2349 (E.D. La.)**

*Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-3023 (E.D. La.)**

*Vickers, et al. v. Knauf Gips KG, et al.*
**Case No. 2:09-cv-04117 (E.D. La.)**

*Silva, et al. v. Interior Exterior Building Supply, LP, et al.*
**Case No. 09-08030 (E.D. La.)**

*Silva, et al. v. Arch Insurance Company, et al.*
**Case No. 09-08034 (E.D. La.)**

**JUDGE FALLON**
**MAG. JUDGE WILKINSON**

*Amato, et al. v. Liberty Mutual Ins. Co.*
**Case No. 2:10-cv-00932 (E.D. La.)**

*Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd.,*
*f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-080 (E.D. La)**

*Hernandez, et al. v. AAA Insurance, et al.*
**Case No. 2:10-cv-03070 (E.D. La.)**

*Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a*
*Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-cv-01077 (E.D. La.)**


**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
PLAINTIFFS' STEERING COMMITTEE AND SETTLEMENT CLASS COUNSEL
FOR AN ORDER:  (1) CERTIFYING THE INEX, BANNER, KNAUF, L&W, AND
GLOBAL SETTLEMENT CLASSES; AND (2) GRANTING FINAL APPROVAL
TO THE INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENTS**

# TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Exhibits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.     Opt-Outs.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.     Objections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

               1.     Bandas Objections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                        *a.*     *Jan Petrus.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                        *b.*     *Ernest Vitela..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                        *c.*     *Saul Soto.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                        *d.*     *Ronnie Garcia.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                        *e.*     *Deposition Objections and Other Problems with Discovery.* . . . . 11

               2.     The Roberts & Durkee Objection. . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        A.     There Is Overwhelming Support From Absent Class Members For
              Approval of the Class Settlements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        B.     The Handful of Objections Lack Merit and Should Be Overruled. . . . . . . . . . . . 17

               1.     In Combination, the InEx, Banner, Knauf, L&W,
                       and Global Settlements Provide Class Members
                       With Complete Remediation Benefits and
                       Significant Funds for Other Losses. . . . . . . . . . . . . . . . . . . . . . . . . . 21

               2.     Settlement Benefits Were Adequately Disclosed. . . . . . . . . . . . . . . . . 26

               3.     Assignment/Release Provisions Are Reasonable.. . . . . . . . . . . . . . . . 27

4.     Indemnification Provisions Are Reasonable. . . . . . . . . . . . . . . . . . . . . . 27

5.     Settlement Benefits for Class Members with
Foreclosed Properties Are Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . 28

6.     Provisions for Class Members with Lower-Case
KPT Drywall Are Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

7.     Opt-Outs Are Not Prejudiced.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

8.     Non-Settling Defendants Are Not Prejudiced. . . . . . . . . . . . . . . . . . . . . 31

9.     Settlement Terms Do Not Neglect Joint and Several
Liability under Alabama State Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

10.     Definitions of KPT Properties and Mixed Properties
Is Beneficial to the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

11.     The Definition of Participating Class Members in
the Knauf Settlement Is Evident from the Settlement
Terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

12.     Use of Xactimate Software Is Reasonable. . . . . . . . . . . . . . . . . . . . . . . . 35

13.     Class Notice Satisfied Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

14.     The Fact that the Settlements Are Inter-Related
Does Not Defeat Final Settlement Approval. . . . . . . . . . . . . . . . . . . . . . 40

15.     The Bandas Objections Lack Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

        a.     *The latent personal injury objection
is an untimely afterthought.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

        b.     *Claimants who assert a current injury can release claims that
include future damages arising from conduct that caused the
current injury.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

        c.     *Amchem is distinguishable.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

        d.     *Potentially dispositive common question.*. . . . . . . . . . . . . . . . . 51

16. Objections to Attorneys' Fees Are Premature and
Lack Merit in any Event.......................................... 51

IV. CONCLUSION. ..................................................... 54

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164 (7th Cir. 1980) ........................................................... 25

*Altier v. Worley Catastrophe Response, LLC*, Nos. 11-241, 11-242, 2012 WL 161824 (E.D. La. Jan. 18, 2012) .......................................... 27

*Alumax Mill Prods., Inc. v. Congress Fin. Corp. of Am.*, 912 F.2d 996 (8th Cir. 1990) .......................................................................... 32

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .......................... passim

*Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ..................................................................... 23, 27, 47

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004) ................................. 18

*Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154 (5th Cir. 1985) ............... 33

*Batjet, Inc. v. Jackson*, 161 S.W.3d 242 (Tex. Ct. App. 2005) .................. 46

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3rd Cir. 1993) ........................ 19

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ...................... 18, 24

*Bernal v. Am. Money Ctrs., Inc.*, No. 05-1327, 2008 WL 410658 (E.D. Wis. Feb. 12, 2008) ........................................................ 15

*Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) ......................................................... 25

*Brown v. Wal-Mart Stores, Inc.*, No. 01 L 85 (Ill. Cir. Ct. 14th Cir. Oct. 29, 2009) ........... 5

*Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3rd Cir. 1974) .............. 19

*Bynum v. Dist. of Columbia*, 214 F.R.D. 27 (D.D.C. 2003) ...................... 50

*Cancino v. Yamaha Motor Corp., U.S.A.*, 2010 WL 2607251 (S.D. Ohio June 24, 2010) ....................................................... 49

*Cirrus Design Corp. v. Sasso*, 95 So. 3d 308 (Fla. Dist. Ct. App. 2012) ........ 46

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 18-19

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . passim

*DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935
(10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Denley v. Hartford Ins. Co. of the Midwest*, No. 07-4015, 2008
WL 2951926 (E.D. La. July 29, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Elkins v. Equitable Life. Ins. of Iowa*, 1998 WL 133741
(M.D. Fla. Jan 27, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567 (5th Cir. 1960). . . . . . . . . . . . . . . . . . . . . . . . 25

*Harrell v. South Kendall Construction Corp.*, No. 2009-08401
(Fla. Cir. Ct. Miami-Dade Co. Mar. 4, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Hudson v. Progressive Sec. Ins. Co.*, 1 So. 3d 627 (La. Ct. App. 2008),
*writ denied*, 5 So. 3d 148 (La. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2nd Cir. 1987). . . . . . . . . . . . . . . . . . 51

*In re Beef Indus. Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003). . . . . . . . . . . . . . . . . . . 19

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228 (5th Cir. 1982). . . . . . . . . . . . . . . . . . 47

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. MDL 2047,
2010 WL 1710434 (E.D. La. Apr. 27, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157 (3rd Cir. 1984),
*cert. denied*, 472 U.S. 1008 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981). . . . . . . . . . . . . . passim

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching,
Grades 7-12 Litig.*, 447 F. Supp. 2d 612 (E.D. La. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Enron Corp. Sec., Derivative & 'ERISA' Litig.*, No. MDL-1446, 2008 WL
2566867 (S.D. Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081 (3rd Cir. 1980). . . . . . . . . . . . . . . . . . . . 32

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177
(E.D. La. Mar. 15, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL-991, 1995 WL 15182
(E.D. La. Jan. 12, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Holocaust Victim Assets Litig.*, Case No. CV-96-4849, 2000 WL 33241660
(E.D.N.Y. Nov. 22, 2000), *aff'd*, 413 F.3d 183 (2nd Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999). . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896 (E.D. Va. 2001). . . . . . . . . . . . . . . . . 16

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977). . . . . . . . . . . . . . . . . . 36

*In re OCA, Inc. Sec. and Der. Litig.*, 2008 WL 4681369 (E.D. La. Oct. 17, 2008). . . . . . . . . . . 36

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,
on April 20, 2010*, Case No. 2:10-cv-07777-CJB-SS (E.D. La. Aug. 31, 2012). . . . . . . . . . . . . . 6

*In re Orthopedic Bone Screw Prods. Liability Litig.*, 176 F.R.D. 158 (E.D. Pa. 1997). . . . . . . . 47

*In re Royal Ahold N.V. Secs. & ERISA Litig.*, No. 103-MD-01539,
2006 WL 132080 (D. Md. Jan. 9, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re School Asbestos Litig.*, 789 F.2d 996 (3rd Cir.), *cert. denied*,
479 U.S. 852 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*In re School Asbestos Litig.*, 921 F.2d 1330 (3rd Cir. 1990),
*cert. denied*, 499 U.S. 976 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249 (D. Kan. 2006). . . . . . . . . . . . . . . . . . . . 26

*In re Wachovia Corp. Pick-a-Payment Mortg. Mktg. & Sales Practices Litig.*,
No. 09-2015, 2010 WL 5559767 (N.D. Cal. Dec. 16, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*In re Wal-Mart Wage and Hour Employment Practices Litig.*, MDL No. 1735,
Order at 2-3 (D. Nev. Mar. 8, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 2010
WL 2756947 (N.D. Ohio July 12, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Joseph v. General Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986). . . . . . . . . . . . . . . . . . . . . . 49

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010). . . . . . . . . . . . . . . . . . . . . . 19, 24, 47

*Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3rd Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . 7

*Lazy Oil Co. v. Witco Corp.*, 95 F. Supp.2d 290 (W.D. Pa. 1997). . . . . . . . . . . . . . . . . . . . . . . 19

*Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Maddox v. Druid City Hosp. Bd.*, 357 So. 2d 974 (Ala. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 40

*McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252 (11th Cir. 2001). . . . . . . . . . . . . 47

*McCorkle v. Hughes*, 244 So. 2d 386 (Miss. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Moreno v. Autozone, Inc.*, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007). . . . . . . . . . . . . . . . . . . . 3

*Nat'l Treasury Employees Union v. United States*, 54 Fed. Cl. 791 (2002). . . . . . . . . . . . . . . . 26

*New Mexico ex rel. Energy and Mineral Dep't v. United States Dep't of Interior*,
820 F.2d 441 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21 (D. Mass. 2003). . . . . . . . . . . . . . . . . . 49

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978),
*cert. denied*, 439 U.S. 1115 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Powell v. Tosh*, 280 F.R.D. 296 (W.D. Ky. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230 (7th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74 (N.D. Tex. 1979). . . . . . . . . . . . . . . . . . . . . . . . . 36

*Raines v. Florida*, 987 F. Supp. 1416 (N.D. Fla. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sala v. National R.R. Passenger Corp.*, 120 F.R.D. 494 (E.D. Pa. 1988). . . . . . . . . . . . . . . . . . 51

*Salinas v. Roadway Express, Inc.*, 802 F.2d 787 (5th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . 24

*Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Shadow Lake Mgmt. Co. Inc. v. Landmark American Ins. Co.*, No. 06-4357,
2009 WL 362103 (E.D. La. Feb. 9, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Smith v. Crystian*, 91 Fed. Appx. 952 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . 51

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3rd Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Taifa v. Bayh*, 846 F. Supp. 723 (N.D. Ind. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2nd Cir. 1982). . . . . . . . . . . . . . . . . 19

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007). . . . . . . . . . . . . . . . passim

*Utility Contractor's Ass'n of New Jersey v. Toops*, 507 F.2d 83 (3rd Cir. 1975). . . . . . . . . . . . . 32

*Waller v. Financial Corp. of Am.*, 828 F.2d 579 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . 33

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135 (W.D. Ky. 1992). . . . . . . . . . . . . . . . . . . . . 17

*Williams v. General Elec. Capital Auto Lease, Inc.*, 159 F.3d 266 (7th Cir. 1998). . . . . . . . . . . 47

**Statutes, Rules and Regulations**

Fed. R. Civ. P. 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Fed. R. Civ. P. 23(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 48, 55

Fed. R. Civ. P. 23(c)(2)(B).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Fed. R. Civ. P. 23(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 55

Fed. R. Civ. P. 23(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Fed. R. Civ. P. 23(e)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 23(e)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## Other Authorities

3 NEWBERG ON CLASS ACTIONS § 8:31 (4th ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

3 NEWBERG ON CLASS ACTIONS § 8:32 (4th ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Alba Conte & Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS §11:55 (4th ed.) . . . . . . . . 5

Alba Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11:58 (4th ed. 2002). . 18

William B. Rubenstein, Alba Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

7B FEDERAL PRACTICE & PROCEDURE CIVIL § 1797 (3rd ed.).. . . . . . . . . . . . . . . . . . . . . . . 31

7B FEDERAL PRACTICE & PROCEDURE § 1797.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7B FEDERAL PRACTICE & PROCEDURE CIVIL § 1797.6 (3rd ed.). . . . . . . . . . . . . . . . . . . . . . 36

Lopatka & Smith, *Class Action Professional Objectors: What To Do About Them?*, 39 FLA. ST. U. L. REV. 865, 872 (Summer 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Texas Rule of Professional Conduct 1.04(d).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. Consumer Prod. Safety Comm'n & U.S. Dep't of Housing and Urban Dev., Identification Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011 (March 18, 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Bruce L. Hay, *The Theory of Fee Regulation in Class Action Settlements*, 46 AM. U. L. REV. 1429, 1432 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.643. . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

## <u>TABLE OF EXHIBITS</u>

Exhibit 17   Supplemental Declaration of Belinda Macauley Regarding Implementation of Notice Program in Global Settlement dated 10/26/2012

Exhibit 18   Index of Objections to InEx, Banner, Knauf and/or Global Settlements

Exhibit 19   List of Opt-Outs represented by Roberts & Durkee and Milstein

Exhibit 20   Withdrawal of three Opt-Out Requests by Roberts & Durkee and Milstein for Juan M. Marcario, Rafael & Ana Segundo, and Stratton & Susan Jamison

Exhibit 21   List of Chinese Drywall clients represented by Roberts & Durkee and Milstein, who are named as plaintiffs on one or more of the Omnibus complaints in *In re Chinese-Manufactured Products Liability Litigation*, MDL 2047 (E.D.La.)

Exhibit 22   Rough Draft of the Deposition of Saul Soto dated 10/31/2012, with Exhibit 1 thereto

Exhibit 23   Deposition of Ronnie Garcia dated 11/1/2012, with Exhibit 28 thereto

Exhibit 24   Deposition of Wayne Kaplan dated 10/29/2012, with Exhibit 1 thereto

Exhibit 25   Report from Rust Consulting of Call Center and Registration Statistics as of 10/25/2012

Exhibit 26   [Intentionally Left Blank]

Exhibit 27   Affidavit of Attempts regarding service of deposition subpoena on Ernest Vitela

Exhibit 28   Home Depot Retailer Profile Form

Exhibit 29   *Harrell v. South Kendall Construction Corp.*, No. 2009-08401 (Fla. Cir. Ct. Miami-Dade Co. Mar. 4, 2011)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
PLAINTIFFS' STEERING COMMITTEE AND SETTLEMENT CLASS COUNSEL
FOR AN ORDER:  (1) CERTIFYING THE INEX, BANNER, KNAUF, L&W, AND
GLOBAL SETTLEMENT CLASSES; AND (2) GRANTING FINAL APPROVAL
TO THE INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENTS**

Pursuant to this Court's Orders dated June 4, 2012 [Rec. Doc. No. 14566] and October

16, 2012 [Rec. Doc. No. 15951], the Plaintiffs' Steering Committee (the "PSC") and Settlement

Class Counsel submit this Reply Memorandum of Law[1] in support of their Motion for an Order:

(1) Certifying the InEx, Banner, Knauf, L&W, and Global Settlement Classes; and (2) Granting

Final Approval to the InEx, Banner, Knauf, L&W, and Global Settlements.

**I.     INTRODUCTION**

On September 4, 2012, the PSC and Settlement Class Counsel filed a motion ("Final

Approval Motion") seeking final approval of five separate, but inter-related, class settlements

with (1) Interior Exterior Building Supply, LP (the "InEx Settlement"); (2) the Banner entities

(the "Banner Settlement"); (3) L&W Supply Corporation and USG Corporation (the "L&W

Settlement"); (4) the Knauf Defendants (the "Knauf Settlement"); and (5) more than 700

additional Participating Builders, Suppliers, Installers, and their Participating Insurers (the

"Global Settlement").[2]  If approved, these settlements will provide much-needed relief to

thousands of homeowners, commercial building owners and tenants who were afflicted by

drywall imported from China ("Chinese Drywall") following Hurricanes Katrina and Rita in

---

[1]  Capitalized terms used in this Reply Memorandum shall have the same meaning as those
defined in the Amended InEx Settlement Agreement [Rec. Doc. No. 12258-3], the Amended Banner
Settlement Agreement [Rec. Doc. No. 10033-3], the Amended Knauf Settlement Agreement [Rec. Doc.
No. 15742-2], the L&W Settlement Agreement [Rec. Doc. No. 13913-3], and the Amended Global
Settlement Agreement [Rec. Doc. No. 15695-2], which have been filed of record in this case.

[2]  Rec. Doc. No. 15749.

2005.  Far too many victims of Chinese Drywall have been waiting far too long to have their properties repaired and to be compensated for their other losses.  In combination, these five inter-related class settlements will make available an estimated $1.1 billion in remediation and cash benefits to Chinese Drywall claimants, which is an excellent result under the circumstances.

## II.    STATEMENT OF FACTS

Beginning on May 13, 2011, and continuing through the spring of 2012, the Court preliminarily approved the InEx, Banner, Knauf, L&W, and Global Settlements as fair, reasonable, and adequate, and conditionally certified five settlement classes.  Notice of these settlements was disseminated via first-class mail to all known Class Members for each of the settlements.[3]  Notice of each settlement was also posted on the Court's official Chinese Drywall website and announced in press releases.  For the InEx, Banner and Global Settlements, notice was published in various on-line and print media.[4]  For the Global Settlement, a website was established in English and Spanish and a call center was set up so that Class Members could obtain additional information about the settlements and register to receive further announcements from the Court regarding any claims procedures to be implemented.  This Call Center received more than 4,600 calls and registered more than 400 Class Members.  It also registered more than

---

[3]  *See* Affidavits of Mailing for each of the class notices sent directly to individual Class Members who were known to have Chinese Drywall claims (Exhibits 5-11 to Memo. in Support of Final Approval Motion).  A total of 54,997 individual notices were mailed (2,045 for the Banner Settlement, 24,472 for the InEx Settlement, 18,619 for the Global Settlement, 9,657 for the Knauf Settlement, and 204 for the L&W Settlement).

[4]  *See* Declarations of Publication for the InEx, Banner, and Global Settlements (Exhibits 12-15 to Memo. in Support of Final Approval Motion).  Attached hereto as Exhibit "17" is the Supplemental Declaration of Belinda Macauley Regarding Implementation of Notice Program in Global Settlement dated 10/26/2012, which includes an updated and final implementation report for the Paid Media Program in the Global Settlement.  There was no published notice for the Knauf and L&W Classes because those settlements include only Plaintiffs who filed actions against the Settling Defendants.

2,200 Class Members who went through the Global Settlement website.[5]

Each class notice informed Class Members of their right to opt out of or object to the settlement in accordance with Rule 23.  The Court established an opt-out/objection period from August 29, 2012 through September 28, 2012, allowing Class Members an adequate opportunity to consider all of the settlements together before deciding whether to opt out of or object to any or all of the settlements.[6]  The Court also provided Class Members who previously had opted out of any settlement prior to August 29, 2012, an opportunity to rescind their opt-out and opt back into the settlement(s) on or before November 5, 2012.[7]

### A.    Opt-Outs

By the opt-out deadline, 631 Class Members opted out of one or more of the class settlements.[8]  Some of these opt-outs overlap two or more of the settlements.  Class Counsel received 186 requests from Class Members (as of the date of this filing) to withdraw their opt-outs.  A large number of the opt-outs that remain are represented by Roberts & Durkee, P.A. ("Roberts & Durkee") and Milstein, Adelman, & Kreger, LLP ("Milstein").  These attorneys

---

[5]  *See* Report from Rust Consulting of Call Center and Registration Statistics as of 10/25/2012, attached hereto as Exhibit "25," showing the volume of calls to the Call Center and the number of Class Members registered through the Call Center and/or the Global Settlement website.  This Report also tracks requests from potential Class Members that Class Counsel return their call.  In accordance with their fiduciary duties, Class Counsel returned all requests for a call-back from potential Class Members.

[6]  Rec. Doc. No. 14566 at ¶ 2.

[7]  *See* Scheduling Order Regarding Fairness Hearing dated 10/16/2012 [Rec. Doc. No. 15951 at ¶ 6].

[8]  Certain counsel in this Litigation represent both opt-outs from the settlements and Class Members desiring to participate in the settlements and receive remediation and/or other benefits.  This situation creates a conflict of interest for those attorneys in violation of La. R. Prof'l Conduct 1.7; *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161-62 (3rd Cir. 1984), *cert. denied*, 472 U.S. 1008 (1985); *Moreno v. Autozone, Inc.*, 2007 WL 4287517, *6 (N.D. Cal. Dec. 6, 2007).

opted out 4 of their plaintiff-clients from the Knauf Settlement and 87 of their plaintiff-clients from the Banner Settlement (some of these overlap).  Most of the Roberts & Durkee and Milstein opt-outs are named class representatives on one or more of the Omnibus Complaints.[9]  At the same time that these attorneys are opting out their Omnibus plaintiffs from the settlements, they are also representing (i) Class Members who have not opted out of any of the settlements, (ii) Class Members who are named representatives on one or more of the Omnibus Complaints, (iii) Class Members who are seeking to receive settlement benefits, and also (iv) an objector to the settlements.  Thus, these Class Members who are represented by Roberts & Durkee and Milstein have interests that are directly adverse to the interests of the opt-outs also represented by the same counsel.[10]  This situation creates an impermissible conflict of interest for these attorneys, in violation of governing ethical rules.

   **B.**     **Objections**

   Out of the thousands of Class Members who presumably intend to participate in these settlements, only a small handful of objections were filed – some by professional objectors lacking a meritorious objection but having a questionable motive and agenda to disrupt these settlements, some by opt-outs who have no standing or right to object, some by non-settling

---

   [9]  *See* List of Opt-Outs represented by Roberts & Durkee and Milstein, attached hereto as Exhibit "19."  On August 14, 2012, Roberts & Durkee suddenly withdrew three of their opt-out requests for Juan M. Marcario, Rafael & Ana Segundo, and Stratton & Susan Jamison, attached hereto collectively as Exhibit "20."  Ultimately, Roberts & Durkee and Milstein withdrew 25 of their opt-outs.  *See* Exhibit 26.

   [10]  *See* List of Chinese Drywall clients, represented by Roberts & Durkee and Milstein, who are named as plaintiffs on one or more of the Omnibus complaints in this litigation, attached hereto as Exhibit "21."  Neither the PSC nor Class Counsel has any knowledge of the state-court Chinese Drywall plaintiffs that these firms represent.

defendants, and some which have since been withdrawn.[11]  None of these objections present any grounds to deny final approval to the settlements.

In total, there are sixteen distinct objections.  Two of the objectors have opted out of the settlements, which means they are ineligible to object.  *See* Alba Conte & Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11:55 (4th ed.) (noting the "general rule precluding objections from opt-outs or nonparties" except "when they are able to demonstrate prejudice from the settlement."); Scheduling Order Regarding Fairness Hearing dated 10/16/2012 at 8 (noting that "class members who have opted out in accordance with the requirements of the Settlements" lack standing to participate in the Joint Fairness Hearing).

### 1.   **Bandas Objections**

At the eleventh hour on the last day of the opt-out/objection period, seven objectors filed boiler-plate objections to the Global Settlement.[12]  These objectors are all represented by Christopher A. Bandas, Esq., a well-known serial, "professional" objector to class action settlements.[13]  These individuals and their alias companies have no Chinese Drywall claims

---

[11]  *See* Index of Objections to the InEx, Banner, Knauf and/or Global Settlements, attached hereto as Exhibit "18."  These Objections were filed with the Court on 10/4/2012 [Rec. Doc. No. 15881].  The PSC and Class Counsel understand that certain objectors either have withdrawn or are considering withdrawing their objection.  It is our intention to supplement this filing upon the withdrawal of any objection, with Court approval pursuant to Fed. R. Civ. P. 23(e)(5), prior to the Fairness Hearing on November 13, 2012.

[12]  These objectors are:  Jan Petrus (on information and belief, Ms. Petrus is the office manager and legal assistant to Mr. Bandas); Saul Soto and SHS Construction; Ronnie Garcia and Bay Area Contracting Construction, Inc.; and Ernest Vitela and E&E Construction Co., hereafter the "Bandas Objectors."

[13]  *See* Class Counsel's Omnibus Response to the Bandas Objectors' Motion to Dismiss Objection at 3-7 (citing cases) [Rec. Doc. No. 15981].  Therein, Class Counsel provided the Court with several orders from courts around the country, which were severely critical of Mr. Bandas.  For example, in *Brown v. Wal-Mart Stores, Inc.*, No. 01 L 85, Order Denying Objections to the Settlement and Fees
(continued...)

existing in any state court or the MDL.  Yet, they are making the same type of meritless objections that Mr. Bandas has employed in his lengthy history as a professional objector to class action settlements, in an attempt to extort attorneys' fees for himself.

Immediately recognizing that these objectors and their objections were suspect, Class Counsel sought to discover the *bona fides* of the objections.  On October 4, 2012, Class Counsel served upon all of the Bandas Objectors Notices of Depositions and a First Set of Interrogatories and Requests for Production of Documents.  They objected to this discovery and answered on October 18, 2012.

### a.      Jan Petrus

On October 18, 2012, one of the Bandas objectors, Jan Petrus, filed a motion to dismiss her objection.[14]  Therein, we were told that Ms. Petrus sought to withdraw her objection for "personal reasons."  Without cross-examination, Class Counsel can only surmise that Mr. Bandas

---

[13] (...continued)
and the Motion to Intervene and for Pro Hac Vice Admission at 2 (Ill. Cir. Ct. 14th Cir. Oct. 29, 2009), the court ruled that:

> The Bandas Objection ... is a generic boilerplate objection prepared and filed by attorneys working for their own personal benefit and not for the benefit of this Class or for those lawyers' clients.  The record before the Court demonstrates that Bandas is a professional objector who is improperly attempting to "hijack" the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified "legal fees."

*Id*. (emphasis added) [Rec. Doc. No. 15981-2].

Only recently, Mr. Bandas has again appeared in the Eastern District of Louisiana to file boilerplate objections.  This time he has filed Objections to the Economic and Property Damages Settlement Agreement in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-cv-07777-CJB-SS (E.D. La. Aug. 31, 2012) [Rec. Doc. No. 101].

[14] Rec. Doc. No. 15957.

6

and Ms. Petrus submitted frivolous papers because Ms. Petrus affided that she was a Class Member in the Global Settlement based upon the presence of Lowe's drywall in her home. Lowe's, however, is not a Participating Defendant in the Global Settlement.  Nor does Ms. Petrus have a claim against Lowe's due to the Release and Injunction provisions of the class action Settlement Agreement Lowe's obtained in the *Vereen* settlement, barring such claims.  And, both Mr. Bandas and Ms. Petrus are intimately familiar with the terms of the Lowe's settlement since Ms. Petrus objected to the Lowe's Settlement and withdrew her objection after her and Mr. Bandas' successful extortion efforts in that case.[15]

Whereupon, Class counsel sought to subpoena each of the objectors to insure their attendance at the noticed depositions.  At the same time, the Bandas Objectors moved to obtain discovery from Class Counsel.[16]

### b.    Ernest Vitela

On October 24, 2012, after Class Counsel's agent sought to serve him with a subpoena,[17]

---

[15]  Mr. Bandas previously employed his office manager Ms. Petrus or her son (Aaron) to object to the class settlement in *Vereen v. Lowe's Home Centers, Inc.*, SU-10-CV-2267B (Ga. Super. Ct., Muscogee Cty. Jan. 12, 2012), appeal the final approval order, and then dismiss the appeal.  As set forth in Class Counsel's Response to the Motion Dismiss the Petrus Objection, upon information and belief, Mr. Bandas and Ms. Petrus entered into a confidential settlement involving a payment of attorneys' fees to Mr. Bandas in exchange for abandoning his client's objection.  Rec. Doc. Nos. 15981-12 & 15981-13.  Not only is the extortion improper, but procuring an employee to pursue objections to a class action is rife with conflicts of interest and ethical trespasses.  *See also Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1092 (3rd Cir. 1976) ("an appearance of impropriety, at a minimum, ensues when an attorney class representative also serves as counsel for a class that may benefit from an equitable fund").

[16]  Rec. Doc. No. 15968.

[17]  *See* Affidavit of Attempts regarding service of deposition subpoena on Ernest Vitela [Rec. Doc. No. 16070], attached hereto as Exhibit "27."

Bandas Objector Ernest Vitela moved to dismiss his objections.[18]  As an afterthought, Mr.

Vitela's company, E&E Construction Co., later moved on October 30, 2012, to dismiss its

objections also, quixotically, for "personal reasons."[19]  Class Counsel immediately responded to

this motion the same day.[20]

Class Counsel filed an Omnibus Response to the motions to dismiss objections and also

moved for sanctions.[21]  These motions were heard by the Court on October 31, 2012.[22]  An Order

addressing the Court's rulings on permissible written discovery issued on November 1, 2012.[23]

### c.    *Saul Soto*

As a result of the Court's ruling on the discovery of objectors to the settlements, Class

Counsel proceeded directly with the depositions noticed in Corpus Christi, Texas.  The first

scheduled deposition was of Saul Soto (d/b/a SHS Construction), which took place the evening

of October 31, 2012.[24]  At the deposition, the witness presented three Banker's boxes of papers

that he stipulated through counsel to not having reviewed for relevancy, but which he claimed

represented all of his documents reflecting purchases and sales of drywall.[25]  Mr. Soto testified

---

[18]  Rec. Doc. No. 15979.

[19]  Rec. Doc. No. 16040.

[20]  Rec. Doc. No. 16043.

[21]  Rec. Doc. No. 15982.

[22]  *See* Minute Entry of October 31, 2012 [Rec. Doc. No. 16055].

[23]  Rec. Doc. No. 16056.

[24]  A copy of the Rough Draft of the Deposition of Saul Soto dated 10/31/2012 ("Soto Dep.") is attached hereto as Exhibit "22."

[25]  Soto Dep. at 30.

that he was solicited to participate as an objector to the Chinese Drywall settlements by Christopher Batman, an attorney with a law firm that shares office space with Mr. Bandas.[26]

After speaking with Mr. Batman in late September, Mr. Soto called Mr. Bandas, who arranged a meeting at Mr. Bandas's home on September 28, 2012.[27]  At that meeting, Mr. Soto signed a Class Action Objector Power of Attorney and Contingent Fee Agreement.[28]  That Agreement provided that Mr. Bandas would represent Mr. Soto for no other purpose than as an objector to a proposed settlement in MDL 2047.  The agreement offered Mr. Soto incentives of up to $5,000 in the event Mr. Bandas sought such an incentive award from the Court, or through some fraud if the objection "is settled without the necessity for Court Approval."[29]

The Bandas Agreement also contains a section that states it was explained to Mr. Soto and he understood he was to waive any conflict of interest presented by only pursuing an objection that could cause the "rejection of the proposed settlement which may, in turn, cause you to lose you [sic.] right to receive settlement benefits."[30]  Mr. Soto testified, however, that he failed to understand the terms of this waiver.[31]

Not surprisingly, Mr. Soto also testified that he had no idea what the defined terms of the

---

[26]  *Id.* at 11-12.

[27]  *Id.* at 19.

[28]  *Id.* at 23, Exhibit 1.

[29]  Soto Dep., Exhibit 1, ¶¶3.2 & 3.3.  This provision is directly at odds with Fed. R. Civ. P. 23(e)(3), which makes concealing such an agreement improper.

[30]  Soto Dep., Exhibit 1, ¶4.

[31]  Soto Dep. at 41-42.

Global Settlement were.[32]  He did not endeavor to discern who were the Participating Defendants or whether he had a claim against any Participating Defendant.[33]  He did not even realize that Lowe's Home Centers, Inc., the retailer from whom he purchased most of his drywall, was not a Participating Defendant in the Global Settlement, or that his claims against Lowe's were barred by the Vereen Settlment.[34]  As to Home Depot, Inc., the only Participating Defendant identified by Mr. Soto, he had no distinct memory of ever buying Chinese Drywall there and he cannot attribute any purchase of Chinese Drywall to Home Depot.[35]

### d.    Ronnie Garcia

On November 1, 2012, Class Counsel deposed Mr. Ronnie Garcia, individually and in his capacity as the President of Bay Area Contracting and Construction, Inc.[36]  Mr. Garcia was similarly solicited to be an objector to the Chinese Drywall settlements by an employee of the Batman Law Firm that shares office space with Mr. Bandas.[37]  Mr. Garcia thereafter met with Mr. Bandas and signed a retainer agreement that was identical to that of Mr. Soto.[38]  Mr. Bandas

---

[32] *Id*. at 26.

[33] *Id.* at 26-27.

[34] *Id.* at 52-54.  *See* Class Action Settlement Agreement and Release §13 in *Vereen* [Rec. Doc. No. 15981-11].

[35] *Id.* at 59, 62 ("Q.  And you can't attribute that to Home Depot at all, correct?  A. I can't say for sure, no.").

[36] *See* Deposition of Ronnie Garcia dated 11/1/2012 ("Garcia Dep.") at 5-6, attached hereto as Exhibit "23."

[37] *Id.* at 21-22 (the firm's investigator, Mr. Bert Chapa, brought the idea of objecting to Mr. Garcia's attention).

[38] *See* Garcia Dep., Exhibit 28.

did not have Bay Area Contracting and Construction, Inc. sign any retainer agreement,[39] however, which violates the attorney ethical rules in Texas.  *See* Texas Rule of Professional Conduct 1.04(d) ("A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined.").

Mr. Garcia repeatedly acknowledged that he knows nothing about the Global Settlement Agreement.  He never read the Global Settlement Agrement.[40]  He was not even familiar with the identities of the Participating Defendants.[41]  Nor could he state with any more assurance than utter speculation that he bought Chinese Drywall from the only supplier of drywall that is a Participating Defendant in the Global Settlement, *i.e.*, Home Depot.[42]

          **e.**        **Deposition Objections and Other Problems with Discovery**

Several objections were raised at the depositions of Mr. Soto and Mr. Garcia.  These objections included the assertion of privilege over hand written notes of Mr. Soto that he had used to prepare for his deposition,[43] and questions about the witnesses' relationship with Mr. Bandas, which addressed their knowledge of Mr. Bandas' experiences as a professional objector to class action settlements.[44]  In addition to these issues, the unwillingness of the remaining objectors and their counsel to appear for their noticed depositions came before the Court on

---

[39] *See* Garcia Dep. at 98.

[40] *Id*. at 43-44.

[41] *Id.* at 44.

[42] *Id.* at 64 ("Q.  So you really have no idea whether you bought Chinese Drywall from Home Depot, do you?  A.  I don't – ").

[43] Soto Dep. at 8-9.

[44] *Id.* at 35-38; Garcia Dep. at 112-13.

November 5, 2012.[45]

In advance of the Court's hearing on November 5, 2012, Class Counsel filed a motion to strike the Objections of Saul Soto, SHS Construction, Ronnie Garcia and Bay Area Contracting & Construction, Inc. ("the Remaining Bandas Objectors") for lack of evidence to establish their standing as Class Members in the Global Settlement.[46]  At the November 5, 2012 hearing, the Court ruled that discovery of the Bandas Objectors desiring to withdraw their objections (*i.e.*, Jan Petrus, Ernest Vitela and E&E Construction) could proceed on an expedited basis prior to the Fairness Hearing.  The Court also ruled that the depositions of the remaining Bandas Objectors could continue to proceed so that they may be concluded in advance of the Fairness Hearing.

---

[45] *See* Jan Petrus' and Christopher Bandas' motion to quash and for protective order [Rec. Doc. No. 16053].

[46] *See* Rec. Doc. No. 16083.  Based upon the record developed thus far, it is apparent that the Remaining Bandas Objectors have no claim, and hence no standing to make an objection.  Nevertheless, because of Mr. Bandas' record of filing meritless objections and then holding the class hostage to extortionate appeals, Class Counsel expect that the Remaining Bandas Objectors will file an appeal from the Court's ruling (assuming it finally approves the settlements).  Should such an improper action occur, it would be appropriate to impose an appropriate bond upon the Remaining Bandas Objectors.  In the past, such rulings have thwarted Mr. Bandas' efforts to hold class settlements hostage.  *See In re Wal-Mart Wage and Hour Employment Practices Litig.*, MDL No. 1735, Order at 2-3 (D. Nev. Mar. 8, 2010) [*see* Rec. Doc. No. 15981-9] (Order denying imposition of sanctions but imposing a bond of $500,000 per objector based upon the court's finding "that the objections are not supported by law or the facts and are indeed meritless" ... "The Court will not adopt the pejorative characterization of counsel for Objectors advanced by Plaintiffs' co-lead class counsel, but does find on the basis of the briefs submitted that Objectors' counsel have a documented history of filing notices of appeal from orders approving other class actions, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class.").  *See*, *generally*, Lopatka & Smith, *Class Action Professional Objectors: What To Do About Them?*, 39 FLA. ST. U. L. REV. 865, 872 (Summer 2012) ("District courts should be permitted in all cases to impose appeal bonds on nonnamed class member objectors that reflect the full expected cost of appeal, including attorneys' fees and the cost of delay incurred by class members and their attorneys.  A court would presumptively require a bond in the full amount but would have discretion to reduce the amount when it concludes that the appeal is legitimate and the appellant is financially unable to post a bond in the full amount.").

## 2.     **The Roberts & Durkee Objection**

Clients in the largest contingent of opt-outs of the Global Settlement are represented by the law firms of Roberts & Durkee and Milstein.  Of their many clients, one client, Wayne Kaplan who is an attorney, remains in the Global Settlement but objects thereto.  As a result of the Objections to Proposed Settlement of Class Action Against Builders, Installers, Suppliers and Participating Insurers filed on behalf of Mr. Wayne Kaplan,[47] Class Counsel issued discovery upon Mr. Kaplan and noticed his deposition.  On October 29, 2012, Mr. Kaplan was deposed.

Mr. Kaplan testified that he owns and resides in a home affected by Taishan drywall at 17866 Lake Azure Way, Boca Raton, Florida.[48]  He currently has pending litigation in Palm Beach County Florida, in which both he and Mr. Durkee are co-counsel.[49]  Mr. Kaplan was aware that Mr. Durkee represents clients that are participating in the Global Settlement, clients that are opting out of the Global Settlement, and (through his personal representation) clients that are objecting to the Global Settlement.[50]  He also was aware that those clients seeking to opt out of the Global Settlement jeopardize the five inter-related settlements from going forward.[51] Nevertheless he feigns misunderstanding that their interests are conflicting.[52]  And, he denies that

---

[47]  Rec. Doc. No. 15881-2, Exhibit B(3).

[48]  *See* Deposition of Wayne Kaplan dated 10/29/2012 ("Kaplan Dep.") at 7, 59, attached hereto as Exhibit "24."

[49]  *Id.* at 9-10.

[50]  *Id.* at 14-15.

[51]  *Id.* at 16.

[52]  *Id.* at 17-18.  The following colloquy took place:  "Q.  Mr. Kaplan, I take it you're aware that the interests of Mr. Durkee's other clients who are opting out of the settlement are adverse to yours because they are seeking or they know that by opting out, they are jeopardizing the settlement from going

(continued...)

13

a disqualifying conflict of interest is presented in contradistinction to the holding of *Corn Derivatives*, 748 F.2d at 162.[53]

As discussed below, none of the objections warrant a denial of the Final Approval Motion.

*   *   *

The class settlements required objectors to submit their objection in writing to Class Counsel, setting forth all of the reasons therefor, and a statement whether the Class Member intends to appear at the Fairness Hearing, either with or without counsel.[54]  Objectors were required to identify any witnesses they intend to call at the Fairness Hearing, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence.  The settlements also required that the objections be signed by the Class Member and his, her or its counsel.[55]  The deadline for objections was September 28, 2012.[56]  The Court has expressed its "intention that, absent good cause shown, only class members who have complied with these requirements will be allowed to address the Court."[57]

---

[52] (...continued)

forward?  ... A.  And I don't know that to be -- I don't know that to be true or not to be true and I don't know what his other clients think.  All I know is he has clients that have opted out, for whatever reasons they chose to opt out.  You'd have to ask them as to why." *Id.*

[53] *Id.* at 22.

[54] *E.g.*, InEx Settlement, § 8.1.2; Banner Settlement, § 7.1.2; Knauf Settlement, § 9.1.2; L&W Settlement, § 9.1.2; Global Settlement, § 9.1.2.

[55] *E.g.*, InEx Settlement, § 8.1.3; Banner Settlement, § 7.1.3; Knauf Settlement, § 9.1.3; L&W Settlement, § 9.1.3; Global Settlement, § 9.1.3.

[56] Rec. Doc. No. 14566.

[57] Scheduling Order re Fairness Hearing dated 10/16/2012, *citing*, *In re Wachovia Corp.*

(continued...)

As of the opt-out/objection deadline, there were only two individual objections to the

Banner Settlement, five objections to the InEx Settlement (two of which were filed by non-

settling defendants), eight objections to the Global Settlement (one of which was filed by an opt-

out), and eleven objections to the Knauf Settlement (two of which were filed by opt-outs).[58]  No

one objected to the L&W Settlement.  Moreover, a number of these objections overlap.  For

example:  The North River Insurance Company ("North River"), InEx's excess insurance carrier,

objected to both the InEx and Knauf Settlements; John and Lori Willis objected to the Banner,

Knauf and Global Settlements; and Trevis Amerson, Daniel C. Ladner, Delber Hopper, and Perry

Homes objected to the InEx, Knauf and Global settlements.  In total, only sixteen distinct

objections were filed, and two of those were filed by opt-outs who lack standing to object.

## III.   ARGUMENT

### A.   There Is Overwhelming Support From Absent Class Members For Approval of the Class Settlements.

The sixth factor that the Court must consider in determining whether the class settlements

are fair, reasonable and adequate is the opinions of class counsel, class representatives, and the

absent class members.  *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)

(adopting six-factor test cited in prior Fifth Circuit decisions including *Parker v. Anderson*, 667

F.2d 1204, 1209 (5th Cir. 1982), *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217

(5th Cir. 1981), and *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978),

---

[57]  (...continued)

*Pick-a-Payment Mortg. Mktg. & Sales Practices Litig.*, No. 09-2015, 2010 WL 5559767, at *6 (N.D. Cal. Dec. 16, 2010); *Bernal v. Am. Money Ctrs., Inc.*, No. 05-1327, 2008 WL 410658, at *2 (E.D. Wis. Feb. 12, 2008); *In re Royal Ahold N.V. Secs. & ERISA Litig.*, No. 103-MD-01539, 2006 WL 132080, at *8 (D. Md. Jan. 9, 2006).

[58]  *See* Objections summarized in the Index of Objections, attached hereto as Exhibit "18."

15

*cert. denied*, 439 U.S. 1115 (1979)).  In addition to the views of Class Counsel and the class

representatives, "[t]he attitude of absent class members, expressed either directly or indirectly by

their failure to object after notice or high level of participation in the proposed settlement

program, is an additional factor on which district courts generally place heavy emphasis."  *See*

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (Fallon, J.), *citing In*

*re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896 (E.D. Va. 2001) (stating that class reaction

is perhaps the most significant factor in determining whether a settlement is adequate).[59]

     Out of thousands of Class Members, many of whom own more than one property and in

some cases hundreds of properties, with Chinese Drywall claims against the Settling Defendants,

only 631 Class Members opted out of the one or more of the settlements.  A large number of the

opt-outs are represented by Roberts & Durkee and Milstein.  These same counsel concurrently

represent Class Members who are have not opted out of the settlements and, presumably, will be

seeking settlement benefits if the settlements are approved.  Under these circumstances, the Court

may presume that the vast majority of potential Class Members have accepted the settlements,

which "indicate[s] a pronounced response in support of the proposed settlement[s]."  *Murphy*

*Oil*, 472 F. Supp. 2d at 853.

     In combination with the other factors supporting approval of the class settlements, this

Court may conclude that the settlements are fair, reasonable, and adequate.

---

    [59] In the opening Memorandum of Law supporting the Final Approval Motion, the PSC and
Settlement Class Counsel set forth the reasons why Class Counsel and the class representatives believe
that these settlements are in the best interest of the classes.  *See*, *generally*, Final Approval Memo of Law
at 43-56.  Since the opt-out/objection period had not concluded at the time the Final Approval Motion
was filed, and since Class Members who had previously opted out had a chance to opt back into the
settlements on or before September 28, 2012, the opinions of absent Class Members were not addressed
earlier.

**B.**     **The Handful of Objections to the Five Class Settlements Before the Court Lack Merit and Should Be Overruled.**

Special protections are afforded to "class members whose interests may be compromised in the settlement process[,] ... includ[ing] notice ... and an opportunity to voice objections to the settlement." *Pettway*, 576 F.2d at 1169; *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Rule 23(e) of the Federal Rules of Civil Procedure grants any Class Member who has not opted out of a class settlement the opportunity to object to the settlement provided he or she "compl[ies] with procedural requirements stipulated in the settlement agreement, such as filing a written statement of objection with the court in advance of the hearing and giving notice of intent to appear at the fairness hearing." *Murphy Oil*, 472 F. Supp. 2d at 853; *Luevano v. Campbell*, 93 F.R.D. 68, 77 (D.D.C. 1981).  The objection "must be sufficiently clear and unambiguous for court consideration, or otherwise the party will be deemed to have waived their objection." *Id*.

Thereafter, it is the responsibility of the court, as a fiduciary to the class, to carefully examine all objections to a class settlement in conjunction with its assessment of the fairness and adequacy of the settlement. *Pettway*, 576 F.2d at 1219; *Corrugated Container*, 643 F.2d at 217-18; *Murphy Oil*, 472 F. Supp. 2d at 853 ("courts must independently examine all objections to determine if they have merit and whether they raise questions regarding the fairness of [the] settlement.").  It is important to keep in mind that "[o]nce the court has given preliminary approval, an agreement is presumptively reasonable, and an individual who objects has a heavy burden of demonstrating that the settlement is unreasonable." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 138-39 (W.D. Ky. 1992); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007).  Therefore, generalized objections that do not have any factual or legal substantiation "do not carry weight." *DeHoyos*, 240 F.R.D. at 293; Alba Conte and Herbert B.

17

Newberg, 4 NEWBERG ON CLASS ACTIONS § 11:58 (4th ed. 2002); *see also* 7B FEDERAL

PRACTICE & PROCEDURE § 1797.1 (providing that in class action settlement dispute "[o]nly

clearly presented objections ... will be considered").

On the other hand, even substantive objections do not preclude approval of a class

settlement, or, in this case, five integrated and inter-related class settlements offering over $1

billion in benefits to Chinese Drywall claimants.  *See Ayers v. Thompson*, 358 F.3d 356, 368-73

(5th Cir. 2004) ("That several class members desire broader relief ... does not prevent judicial

approval of this settlement agreement, which promises substantial relief to the class."); *Murphy*

*Oil*, 472 F. Supp. 2d at 853.  Courts have recognized that "no settlement can attain perfection

precluding objections."  *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 275 (W.D. Tex. 2007).  The

essence of a any settlement is compromise, which means both sides must give and take in order

to resolve the litigation without a trial.  *See Cotton*, 559 F.2d at 1330 ("compromise is the

essence of a settlement"); *see also Corrugated Container*, 659 F.2d at 1325 ("A just result is

often no more than an arbitrary point between competing notions of reasonableness."); *Bennett v.*

*Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong

judicial policy favoring settlement as well as by the realization that compromise is the essence of

settlement.").

A relatively few number of objections to a class settlement helps to "indicat[e] that the

settlement is fair, reasonable, and adequate."  *See Murphy Oil*, 472 F. Supp. 2d at 853;

*Corrugated Container*, 643 F.2d at 217-18; *DeHoyos*, 240 F.R.D. at 293 ("minimal level of

opposition from absent class members weighs in favor of approving the settlement"); *Petrovic v.*

*Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (approving settlement where objectors

represented fewer than 4% of class); *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th

Cir. 1995) (determining that "[t]he fact that only a handful of class members objected to the settlement similarly weighs in its favor"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 & n.15 (3rd Cir. 1993) (recognizing class silence can be considered consent to settlement); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3rd Cir. 1990) (holding that objections by even 10% of class "strongly favors settlement"); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2nd Cir. 1974) (noting silence of majority of class may be attributed to agreement to proposed settlement); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (noting small number of objections received may be viewed as indicative of adequacy of settlement); *In re Holocaust Victim Assets Litig.*, Case No. CV-96-4849, 2000 WL 33241660, at *2 (E.D.N.Y. Nov. 22, 2000) (recognizing "overwhelming majority of the Settlement Class members-more than 99 percent-did not submit any comment regarding the Proposed Plan and presumably had no objection"), *aff'd*, 413 F.3d 183 (2nd Cir. 2005); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp.2d 290, 332 (W.D. Pa. 1997) (concluding silence in class action settlement context can be construed as assent); *cf. TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458, 462 (2nd Cir. 1982) (approving settlement despite objections of approximately 56% of class); *Parker v. Anderson*, 667 F.2d 1204, 1207 (5th Cir. 1982) (approving approval of class action settlement over objections of all but one of eleven named plaintiffs); *Cotton*, 559 F.2d at 1333 (approving settlement over objections of counsel purporting to represent almost 50% of class); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803-04 (3rd Cir. 1974) (approving class settlement even though more than 20% of class objected); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 661 (N.D. Tex. 2010) ("[A]pproval can be given even if a significant portion of the class objects."). *But see Pettway*, 576 F.2d at 1216-17 (stating that the higher the number of

19

objectors, the heavier the burden of proving fairness, and ruling that it was an abuse of discretion to approve a settlement opposed by the named plaintiff and 70% of class members).

In this case, only sixteen distinct objections were filed in opposition to one or more of the five class settlements intended to provide significant relief to thousands of Chinese Drywall claimants. Two of the objections were filed by Class Members and/or a non-settling defendant who opted out of the settlements, which means they have no right to object since they have preserved their right to pursue litigation against the Settling Defendants.[60] One of the objections was filed by InEx's excess insurance carrier, North River. In light of North River's refusal to come to the bargaining table, its criticisms of the proposed Second Amendment to the InEx Settlement should not thwart the settlement process. The Second Amendment to the InEx Settlement was designed to "protect[] both InEx Class Members and InEx from the immediate and substantial harm that would result if the Knauf Defendants were to terminate their settlement. InEx Class Members would be harmed because the InEx Settlement alone does not provide sufficient funds to enable InEx Class Members to remediate their homes with KPT drywall; the Knauf Settlement is necessary to provide that relief."[61] North River's rights to Due Process have been preserved by the Court, as its defenses to the litigation will be heard shortly at the trial scheduled for November 26, 2012.[62] The remaining twelve objections lack merit.

Significantly, there has been no challenge to the overall fairness or adequacy of the settlements. Not one objector has questioned the integrity, loyalty or adequacy of the PSC or

---

[60] Objector Gregory Friedlander opted out of the Knauf Settlement, Objector Wayne Kaplan opted out of the Banner Settlement, and Perry Homes, LLC opted out of the InEx, Knauf and Global Settlements.

[61] *See* Rec. Doc. No. 15948-1.

[62] *See* Rec. Doc. Nos. 15229, 15238, 15588.

Class Counsel, nor alleged any collusion in the settlement process.[63]  There has been no suggestion that continued litigation against the more than 700 Settling Defendants – some of which are foreign entities with defenses of lack of personal jurisdiction, and many of which contend that Plaintiffs' insurance and personal injury claims lack merit – would be preferable to the settlements.  There is no question that the results of continued litigation provide no guarantee of any relief to the thousands of Chinese Drywall claimants who have not opted out or objected, and at a minimum, such relief would be delayed.  Plaintiffs would have to wait a very long time to see any compensation at all, given the Defendants' rights of appeal of any favorable verdict.

Rather, the objections focus mostly on:  (i) particular individual issues concerning the types of recovery available, for example repair costs to an HVAC system, warranty issues, or the costs of pursuing a claim for personal injury; (ii) the fact that the exact amount of recovery for each claimant is not known or that there will be less than 100% recovery for all claims; (iii) alleged confusion over the class definitions; (iv) the lack of additional subclasses; (v) the fact that Class Members with Taishan's Chinese Drywall will not receive remediation benefits; (vi) attorneys' fees; and (vii) North River's dispute with InEx over the availability of approximately $72 million of excess insurance.  Each of these objections lacks merit and should be denied.

> **1.     In Combination, the InEx, Banner, Knauf, L&W, and Global Settlements Provide Class Members With Complete Remediation Benefits and Significant Funds for Other Losses.**

Some of the objections focus on the fact that the settlements will not satisfy 100% of their losses.  They complain, for example, that the "Lump Sum Payment" may be inadequate to cover

---

[63]  Moreover, "a presumption exists that settlement negotiations were conducted properly in the absence of collusion if the terms of the proposed settlement are demonstrably fair."  *Murphy Oil*, 472 F. Supp. 2d at 846; *Corrugated Container*, 643 F.2d at 212.

certain expenses such as repair costs for HVAC systems, or pre-remediation alternative living or relocation costs.[64]  They also argue there is insufficient money to cover losses due to foreclosure and they seek compensation for alleged "destructive testing or inspections" of affected properties.[65]  Other objections challenge the cap on the Other Loss Fund[66] and suggest that a greater percentage of net recoveries from the Global Settlement and settlements reached with Excluded Releasees go into the Other Loss Fund.[67]  A few of the objections seek reimbursement for costs incurred in pursuing claims for alleged personal injuries,[68] and they complain about the requirement that expert reports be produced for other losses,[69] and the requirement that certifications of pharmacy records be produced in connection with claims for personal injury.[70]  Certain objectors protest the requirement that proof of Chinese Drywall be submitted.[71]  Some of the objectors complain that the settlements do provide a right to seek compensation for future

---

[64]  *See* Kinler Objections, ¶¶ 6-7 ("extraordinary moving expenses"); Panneton Objections, ¶¶ 5-8, 10 (air conditioning repair costs); Bolden & Smith Objections, ¶¶ 5-8 ("pre-remediation repair expenses," including HVAC repair costs); Willis Objections, ¶ 8.  One of the objections criticizes the differentiation in the Lump Sum Payment for properties that are less than 3,500 square feet versus homes that are larger than that.  *See* Bolden & Smith Objections, ¶ 10.

[65]  *See* Amerson Objections, ¶¶ 14-16, 25; Hopper Objections, ¶¶ 14-16, 25; Ladner Objections, ¶¶ 14-16, 25.

[66]  *See* Willis Objections, ¶ 1 (a), 11(a).

[67]  *See* Willis Objections, ¶¶ 1(b)-(c), 2, 11(b)-(c); Amerson Objections, ¶ 26; Hopper Objections, ¶ 26; Ladner Objections, ¶ 26.  The Knauf Settlement provides that net amounts recovered from the Global Settlement and settlements with Excluded Releasees be divided equally between the Remediation Fund and the Other Loss Fund.  *See* Amended Knauf Settlement, §§ 4.2.3, 4.6.3.

[68]  *See* Willis Objections, ¶ 11(e).

[69]  *See* Willis Objections, ¶ 7.

[70]  *See* Willis Objections, ¶ 11(f)-(h).

[71]  *See* Sekellick Objections, ¶ 1-2.

personal injuries or depreciation to properties.[72]  One objector has Taishan Chinese Drywall and complains the Banner Settlement is insufficient to cover its losses.[73]

A few of the objections address very specific and particular items that are limited in nature, such as a challenge to the length of the one-year warranty period for remediation work.[74] One objection addresses a provision of the Knauf Settlement intended to prevent double recovery on insured claims.[75]  Three of the objections focus on multi-unit properties and contest the discretion of contractors to determine their appropriate remediation options, but they do not offer any solutions.[76]  These objectors further allege that the settlements "violate and conflict with" certain unspecified "state laws where statutes specify what rights and obligations a multi-unit owner has," but they offer no specifics.[77]  Another objector seeks permission for Class Members selecting the Self-Remediation Option to apply a portion of the funds awarded toward mortgage payments, but since he has opted out, he lacks standing to object.[78]

---

[72]  *See* Amerson Objections, ¶¶ 12-13; Hopper Objections, ¶¶ 12-13; Ladner Objections, ¶¶ 12-13.  It is not unusual for settlements to preclude future claims.  "[F]ederal class action settlements routinely include releases waiving future claims."  *Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 471 n.10 (S.D. Fla. 2002).

[73]  *See* Haseltine Objections.

[74]  *See* Bolden & Smith Objections, ¶ 9.

[75]  *See* Willis Objections, ¶ 4 (contesting the provision that prevents double recovery by requiring that approved claims be reduced by any amount that "was or could have been reimbursed" under the Class Member's insurance policies.  Knauf Settlement § 4.7.4.4.1).

[76]  *See* Amerson Objections, ¶¶ 38-39; Hopper Objections, ¶¶ 38-39; Ladner Objections, ¶¶ 38-39.

[77]  *See* Amerson Objections, ¶ 40; Hopper Objections, ¶ 40; Ladner Objections, ¶ 40.  Thus, these objections "do not carry weight."  *DeHoyos*, 240 F.R.D. at 293.  As this Court previously held in *Murphy Oil*, where, as here, objections are not "sufficiently clear and unambiguous for court consideration," the objectors "will be deemed to have waived their objection."  *Murphy Oil*, 472 F. Supp. 2d at 853.

[78]  *See* Friedlander Objection.

None of these complaints about the settlements have any merit, because they do not challenge the overall fairness or adequacy of the integrated global resolutions that will provide over $1 billion in benefits to Class Members.  It is without question that no settlement will ever provide 100% relief.  *See Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 790 (5th Cir. 1986) (recognizing that no settlement can "satisfy every class members' desires" and affirming lower court's approval of consent decree, despite objections from "thirty-four percent of the known class members").[79]  Indeed, the fundamental and inherent quality of any settlement is the notion of "compromise."  *Cotton*, 559 F.2d at 1330 ("compromise is the essence of a settlement"); *see also Corrugated Container*, 659 F.2d at 1325 ("A just result is often no more than an arbitrary point between competing notions of reasonableness."); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.").  What this means is that not everyone's needs will be completely met – each side must give and take.  There is no requirement that Class Counsel "obtain the largest conceivable recovery for the class."[80]  Rather, "to be worthy of approval" a settlement "must simply be fair and adequate considering all the relevant circumstances."

This Court may be guided by the strong judicial policy favoring pretrial settlement of

---

[79]  It is important to note that for Taishan claimants, litigation against Taishan and its related entities continues.  Pending an appeal of this Court's jurisdictional rulings against Taishan [Rec. Doc. No. 15755], the PSC intends to vigorously pursue the claims of all Plaintiffs in the *Gross* and *Wiltz* actions, as well as the claims of thousands of Plaintiffs in the other Omnibus complaints, against all non-settling Defendants other than Taishan, including against CNBM and BNBM.  In addition, the PSC is prosecuting claims against these non-settling Defendants in actions filed in California, Florida, Louisiana, and Virginia.  *See Amorin, et al. v. Taishan Gypsum Co. Ltd.*, 11-1395 (E.D.La.); *Abner, et al. v. Taishan Gypsum Co. Ltd.*, 11-3094 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co.*, 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd.*, 11-1673 (E.D.La.).

[80]  *Klein*, 705 F. Supp. 2d at 649.

24

complex class action lawsuits.  *See*, *e.g.*, *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir.

2004); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton*, 559 F.2d at 1331;

*Murphy Oil*, 472 F. Supp. 2d at 843; *Braud v. Transport Service Co. of Illinois*, 2010 WL

3283398, at *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.); William B. Rubenstein, Alba Conte

and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.).[81]  These settlements

were achieved through extensive, hard-fought, arm's-length negotiations among highly-

experienced, competent and well-informed counsel.  The PSC and Class Counsel were guided by

their desire to obtain the best result they could for the thousands of Plaintiffs awaiting relief for

their losses caused by Chinese Drywall.  That a very small percentage of Class Members have

objected on grounds that do not attack the overall fairness of the settlements is no reason to deny

final approval.  The fact that some Class Members will not be made whole or that some claims

have been relinquished as part of the compromise is likewise not a sufficient basis for defeating

settlement approval.  *See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching,*

*Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 626 (E.D. La. 2006) (overruling objections containing

"wildly optimistic suggestions of upper-end recoveries that, given the significant legal hurdles

ahead, were at the bottom end of the probability scale."); *Fla. Trailer & Equip. Co. v. Deal*, 284

F.2d 567, 573 (5th Cir. 1960) (Class Counsel need only establish that "it is prudent to eliminate

the risks of litigation to achieve specific certainty, though admittedly it might be considerably

less (or more) than were the case fought to the bitter end."); *Raines v. Florida*, 987 F. Supp.

1416, 1419 (N.D. Fla. 1997) ("That these claims are lost in the settlement is insufficient reason to

find the settlement to be unfair.  Settlement is a process of compromise.").  On the contrary, the

---

[81]  "Federal Courts look with great favor upon the voluntary resolution of litigation through
settlement....  This rule has particular force regarding class action lawsuits."  *Airline Stewards &*
*Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

thousands of Class Members who have accepted the settlements are expecting an opportunity to receive settlement benefits and are deserving of final settlement approval.

### 2.   Settlement Benefits Were Adequately Disclosed.

A few objectors argue that Class Members were not given adequate information concerning the "range of expected recovery" for certain categories of claims, such as personal injury or claims for lost equity, and they have no way of knowing the precise value of their potential recovery.[82]  Similarly, on behalf of Mixed Property Owners, there is an objection that the benefits under the settlements cannot be determined in time to opt out, "because it is unreasonable to inspect each piece of sheetrock prior to its removal during remediation."[83]

These objections cannot serve as grounds for denial of final settlement approval.  It is well-settled that "class members' lack of knowledge regarding the precise amounts they will collect under the settlement is not a valid basis on which to find the settlement unfair."[84]  Indeed, it is "not at all unusual for class members not to know the amounts they will be receiving until after final approval."  *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006).  With thousands of Chinese Drywall claimants and five separate, but inter-related, settlements, it would be impossible to determine with any certitude each Class Member's individual recovery.  *See* 3 Newberg on Class Actions § 8:32 (4th ed.) ("ultimate recovery may often depend on the number of valid claims filed").  However, this is not an obstacle to final

---

[82]  *See* Willis Objections, ¶¶ 6, 9, 11(d), 11(i); Kinler Objections, ¶ 8; Amerson Objections, ¶ 17; Hopper Objections, ¶ 17, Ladner Objections, ¶ 17.

[83]  *See* Amerson Objections, ¶ 37; Hopper Objections, ¶ 37, Ladner Objections, ¶ 37.

[84]  *Nat'l Treasury Employees Union v. United States*, 54 Fed. Cl. 791, 806 (2002); *see also In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 429-30 (S.D. Tex. 1999) ("Notice is adequate where the class member is notified of the formula of allocation."); 3 Newberg on Class Actions § 8:32 (4th ed.) ("It is unnecessary for the settlement distribution formula to specify precisely the amount that each individual class member may expect to recover.").

settlement approval.  Courts recognize that a "precise valuation," or even an "estimated value," of individual settlement recovery is not required, particularly where, as here, there are multiple options for recovery to Class Members and the number of valid claims is unresolved.  *See DeHoyos*, 240 F.R.D. at 300-01.[85]  The settling parties have proposed allocation plans that provide for the employment of objective criteria, with oversight by the Court, to ensure a fair process for all Class Members, which is sufficient.

### 3.       Assignment/Release Provisions Are Reasonable.

Three objectors complain that the settlements require Class Members to release certain claims, including state court claims, "without valid or inadequate consideration."[86]  However, as courts have recognized, a "release of all claims that the settling plaintiffs have against the settling defendants is extremely common in settlement agreements."  *Altier v. Worley Catastrophe Response, LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *9 (E.D. La. Jan. 18, 2012); *see also Ass'n for Disabled Am.*, 211 F.R.D. at 472 ("[I]t is permissible for class settlement releases to bar all related damage claims.").  The release of state court claims in exchange for significant settlement benefits is not problematic, as "federal courts have consistently held that class action settlements can release state claims arising from the same subject matter."  *DeHoyos*, 240 F.R.D. at 312; *see also Ass'n for Disabled Am.*, 211 F.R.D. at 471 ("[F]ederal class action settlements containing a release of state law claims are both common and presumptively valid.").

### 4.       Indemnification Provisions Are Reasonable.

Some of the objectors mistakenly allege that Class Members "may be required to

---

[85]  Thus, it is not feasible to provide a precise schedule of remediation benefits before claims have been evaluated and validated.  *See* Amerson Objections, ¶ 35; Hopper Objections, ¶ 35, Ladner Objections, ¶ 35.

[86]  *See* Amerson Objections, ¶¶ 3, 11, 32-33; Hopper Objections, ¶¶ 3, 11, 32-33; Ladner Objections, ¶¶ 3, 11, 32-33.

indemnify KPT for any defective construction ... performed by contractors who are KPT's agents or companies over which KPT reserves the right of control."[87]   Under the Knauf Settlement, however a Class Member is required to indemnify the Knauf Defendants against claims relating to remediation work only if that Class Member elects the Self-Remediation Option.  Under this scenario, the remediation work would not be performed by an agent of the Settling Defendants, but instead by a contractor selected by the Class Member.[88]  This was a concession that was made during arm's-length negotiations of many points covered by these class settlements, as part of the overall bargaining process.  If the objectors are uncomfortable with the indemnification provision, they may select the Program Contractor Remediation Option or the Cash-Out Option under the Knauf Settlement.[89]

### 5.    Settlement Benefits for Class Members with Foreclosed Properties Are Reasonable.

Three objectors complain that Class Members who have lost properties due to foreclosure are not entitled to select the Remediation Option or the Self-Remediation Option under the Knauf Settlement.[90]  However, upon foreclosure, these Class Members no longer own the Affected Properties, which would preclude their remediation of those properties.  Under the Knauf Settlement, these Class Members are entitled to recovery for lost equity and compensation

---

[87]  *See* Amerson Objections, ¶ 36; Hopper Objections, ¶ 36; Ladner Objections, ¶ 36.

[88]  The Knauf Settlement expressly provides that a contractor retained by a Class Member exercising the Self-Remediation Option "shall not be the agent of the Knauf Defendants."  Amended Knauf Settlement, § 4.3.2.3.

[89]  *See* Amended Knauf Settlement § 4.3.1 ("Program Contractor Remediation Option"), § 4.3.3 (Cash-Out Option).

[90]  *See* Amerson Objections, ¶¶ 15, 18; Hopper Objections, ¶¶ 15, 18; Ladner Objections, ¶¶ 15, 18.

for personal property damage and alternative living expenses.[91]

These same objectors also allege that Class Members whose homes were "foreclosed on or after the effective date of the Settlement are barred from collecting lost equity."[92]  However, this simply is not true.  The Knauf Settlement does not distinguish between those homes that were foreclosed before the Effective Date and those that were foreclosed on or after the Effective Date.[93]  Finally, they contend that Class Members with foreclosed homes cannot "evaluate the settlement benefits as to how square footage will be determined in foreclosed homes," because such Class Members "will not or may not have access to said property."  This objection is also without merit.  The objectors do not explain why physical access to the home on the part of a class member, rather than access to relevant property records, should be indispensable for determining the square footage of foreclosed properties.

6.     **Provisions for Class Members with Lower-Case
KPT Drywall Are Reasonable.**

Three of the objections are identical in their criticism of insufficient benefits for Class Members with properties containing "Lower-Case KPT Chinese Drywall,"[94] however, only one of these objectors has property containing "Lower-Case KPT Chinese Drywall."[95]  Therefore, only one objector has standing to object on this basis.  "Lower-Case KPT Chinese Drywall" is a subset of KPT Chinese Drywall, having the "TianJin China" designation.  This drywall has been

---

[91]  *See* Amended Knauf Settlement §§ 4.3.5, 4.7.1.3.

[92]  *See* Amerson Objections, ¶ 42; Hopper Objections, ¶ 42; Ladner Objections, ¶ 42.

[93]  *See* Amended Knauf Settlement, §§ 4.3.5, 4.7.1.3.

[94]  *See* Amerson Objections, ¶¶ 9, 26-28, 30-32; Hopper Objections, ¶¶ 9, 26-28, 30-32; Ladner Objections, ¶¶ 9, 26-28, 30-32.

[95]  Objector Ladner has an Affected Property containing "Lower-Case KPT Chinese Drywall," but Objectors Amerson and Hopper do not.

found to be non-reactive and, therefore, non-defective, which would place it outside the confines

of the Knauf Settlement.  Nevertheless, the Knauf Settlement allows Class Members an

opportunity to demonstrate that any "Lower-Case KPT Chinese Drywall" in their property is, in

fact, reactive based on criteria developed and promulgated by the CPSC.[96]  If this proof is met,

Class Members would be eligible for the full range of settlement benefits.  Knauf disputes that

this subset of drywall is defective, but made a concession to include it in the Knauf Settlement

under these circumstances, which is a benefit for these Class Members.

### 7.    Opt-Outs Are Not Prejudiced.

Three objectors argue that the Knauf Settlement "precludes use of discovery obtained in

the MDL by those who opt out."[97]  This is not true, however.  The Knauf Settlement expressly

provides that Class Members who opt out of the Knauf Settlement may have full access to all of

the "materials contained in the PSC depository," as well as access to a "trial package" containing

"depositions and legal analysis of key issues."[98]  Thus, opt-out plaintiffs will not, as they allege,

be required to "duplicate the discovery in the MDL."[99]

These same objectors also allege that the Knauf Settlement "protects substantially all

assets of the Knauf Defendants" and prevents opt-outs from pursuing those "assets that 'may be'

---

[96]  *See* Amended Knauf Settlement, §§ 4.9, 4.9.2.1; U.S. Consumer Prod. Safety Comm'n & U.S. Dep't of Housing and Urban Dev., Identification Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011 (March 18, 2011).

[97]  *See* Amerson Objections, ¶¶ 23, 29; Hopper Objections, ¶¶ 23, 29; Ladner Objections, ¶¶ 23, 29.  The objectors also claim that this alleged restriction on discovery is inadequately disclosed.  *See* Amerson Objections, ¶ 24; Hopper Objections, ¶ 24; Ladner Objections, ¶ 24.

[98]  *See* Amended Knauf Settlement, § 16.3.5.  *See also* Pretrial Order No. 8 [Rec. Doc. No. 144-2] (setting forth the PSC's responsibility for maintaining a "document or exhibit depository" available to "all MDL Plaintiffs or their attorneys.").

[99]  *See* Amerson Objections, ¶¶ 23, 29; Hopper Objections, ¶¶ 23, 29; Ladner Objections, ¶¶ 23, 29.

used to fund the Knauf Settlement."[100]  They further argue that this information was not adequately disclosed.[101]  The objectors are misguided, however.  The only assets that are shielded under the Knauf Settlement are those used for security for the benefit of Participating Class Members, including assets transferred to the United States by the foreign Knauf Defendants for the sole purpose of funding the Knauf Settlement.[102]  The PSC insisted on these provisions for the protection of Class Members and the Knauf Settlement.  Accordingly, the Knauf Settlement grants to Settlement Class Counsel a first-priority lien and security interest on certain assets of Knauf Insulation.[103]  Although Class Members who choose to opt out of the Knauf Settlement will not be entitled to foreclose on that lien, they are not otherwise prevented from pursuing litigation and recovery of any judgment against any of the Knauf Defendants.  They simply are not prejudiced.  *See* 7B FEDERAL PRACTICE & PROCEDURE CIVIL § 1797 (3rd ed.) ("[C]lass members who have opted out may challenge a class settlement only on the ground that it causes them plain legal prejudice, and no such prejudice occurs simply because a settlement provision might have limited their ability to reach a more lucrative settlement than the class settlement, so long as they fully preserved their right to litigate their claims independently.").

### 8.   Non-Settling Defendants Are Not Prejudiced.

Non-settling defendant Perry Homes, LLC ("Perry Homes") is an assignee of thirteen homeowners' claims, but it has opted out of the settlement plan.  Perry Homes has objected to the Knauf Settlement to the extent that it would bar Perry Homes – either on its own behalf or as

---

[100]   *See* Amerson Objections, ¶¶ 21, 29; Hopper Objections, ¶¶ 21, 29; Ladner Objections, ¶¶ 21, 29.

[101]   *See* Amerson Objections, ¶ 24; Hopper Objections, ¶ 24; Ladner Objections, ¶ 24.

[102]   *See* Knauf Settlement, § 17.1.2.

[103]   *Id.*

an assignee of Chinese Drywall claimants – from asserting claims for "contribution, indemnification or subrogation."[104]  However, Perry Homes cannot show any prejudice to its interests, because the settlements provide judgment reduction provisions, requiring Participating Class Members who successfully bring a claim against Perry Homes to forego any portion of the judgment that is attributable to the Settling Defendants.[105]

Accordingly, Perry Homes does not have standing to object to any of the class settlements.  *See In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 172 (5th Cir. 1979) (a "non-settling defendant ... is not prejudiced by the settlement and therefore has no standing to complain about the settlement."); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL-991, 1995 WL 15182, at *4 (E.D. La. Jan. 12, 1995) (objections raised by non-parties not considered, because "they do not have standing to object to the proposed settlement."); *In re Enron Corp. Sec., Derivative & 'ERISA' Litig.*, No. MDL-1446, 2008 WL 2566867, at *8, *13 (S.D. Tex. 2008) (Non-settling defendants "have standing to contest the bar order and the settlement agreement only if they can demonstrate ... plain legal prejudice," such as loss of "their right to contribution and indemnification."); *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1087 (3rd Cir. 1980) (non-settling party may not object to settlement terms that do not affect its own rights); *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3rd Cir. 1990), *cert. denied*, 499 U.S. 976 (1991); *Utility Contractor's Ass'n of New Jersey v. Toops*, 507 F.2d 83, 85 (3rd Cir. 1975) (non-settling parties have no standing to object to partial settlement where they demonstrated no interference with any legal relationship between them and the settling parties); *Alumax Mill Prods., Inc. v. Congress Fin. Corp. of Am.*, 912 F.2d 996, 1002 (8th Cir. 1990);

---

[104]  *See* Perry Homes Objections, p.4.

[105]  *See* Amended Knauf Settlement, § 5.2.4; Amended InEx Settlement, § 4.3.6.

*Waller v. Financial Corp. of Am.*, 828 F.2d 579, 582-83 (9th Cir. 1987); *New Mexico ex rel. Energy and Mineral Dep't v. United States Dep't of Interior*, 820 F.2d 441, 445 (D.C. Cir. 1987); *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1165 (5th Cir. 1985); *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983).

### 9. Settlement Terms Do Not Neglect Joint and Several Liability under Alabama State Law.

Three objectors comment that "unlike other states referenced in the settlement documents or briefs ... Alabama has joint and several liability and does not provide for apportionment of damages."[106] This minor point should not detract from the overall determination of the five class settlements. Recovery among multiple defendants in the chain of distribution favors consolidation of settlement of the claims against the Knauf Defendants. The settling parties took into consideration many factors in arriving at these complex series of agreements that will provide over $1 billion in benefits to Chinese Drywall claimants. They did not ignore the availability of joint-and-several liability to claimants under Alabama law. However, not every interest may be accommodated. There are significant countervailing considerations such as the anticipated difficulties of obtaining jurisdiction against foreign defendants and enforcing any judgments against those defendants.

### 10. Definitions of KPT Properties and Mixed Properties Is Beneficial to the Class.

Two of the objections challenge what they contend is an "arbitrary threshold percentage" distinguishing KPT Properties from Mixed Properties.[107] Technically, any property with Chinese Drywall that has less than 100% KPT Chinese Drywall is a mixed property. However, the Knauf

---

[106] *See* Amerson Objections, ¶ 22; Hopper Objections, ¶ 22, Ladner Objections, ¶ 22.

[107] *See* Willis Objections, ¶ 5.

33

Settlement defines a KPT Property as any Affected Property containing more than 90% KPT Chinese Drywall, which means that Class Members having more than 90%, but less than 100%, KPT Chinese Drywall in their homes will nevertheless receive full remediation benefits and other compensation as if all of the drywall in their homes is from KPT.[108]  The Knauf Settlement will provide these Class Members with 100% benefits even though their properties do not technically contain 100% KPT Chinese Drywall.  This is a significant benefit for many Class Members.

Additionally, for Mixed Property Owners, there is an added benefit to them in the calculation of the KPT Percentage.  The settlement allows an upward adjustment of the percentage to the next highest 10% increment.  For example, "if the amount of KPT Chinese Drywall in the Affected Property divided by the total amount of KPT Chinese Drywall and Non-KPT Chinese Drywall equals 82%, the KPT Drywall Percentage shall be 90%."[109]  The PSC and Class Counsel were able through hard-fought negotiations to obtain this substantial benefit for the class.

### 11.  The Definition of Participating Class Members in the Knauf Settlement Is Evident from the Settlement Terms.

The same objectors point out that the term "Participating Owner Class Members" is undefined in the Knauf Settlement.[110]  This objection is silly, however.  The Knauf Settlement Agreement defines the terms "Participating Class Members," "Residential Owners," and "Commercial Owners."[111]  A fair and reasonable interpretation of the agreement, then, is that a "Participating Owner Class Member" is a Participating Class Member who is also a Residential

---

[108]  *See* Amended Knauf Settlement, §§ 1.27, 1.28.

[109]  *See* Amended Knauf Settlement, § 1.27.

[110]  *See* Willis Objections, ¶ 3.

[111]  *See* Amended Knauf Settlement, §§ 1.1.2.1, 1.1.2.2, 1.5.1.

or Commercial Owner.

### 12. Use of Xactimate Software Is Reasonable.

Three objectors contest the use of Xactimate,[112] which is a widely accepted software

application that generates cost estimates on the basis of "generally-accepted cost data sets" and

"cost methodologies which are routinely used by the insurance industry."  *See In re*

*Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. MDL 2047, 2010 WL 1710434, at \*19

(E.D. La. Apr. 27, 2010) (Fallon, J.); *Denley v. Hartford Ins. Co. of the Midwest*, No. 07-4015,

2008 WL 2951926, at \*4 (E.D. La. July 29, 2008) (Xactimate is "widely recognized and used in

the insurance industry to estimate damage.").  These objections lack merit, because the use of

Xactimate software in the Knauf Settlement is actually a benefit for Class Members.  Not only

have the courts in the the Eastern District of Louisiana repeatedly acknowledged the reliability of

the Xactimate software, but this Court found in the *Hernandez* case that Xactimate overestimated

the costs of remediation by a substantial margin.  *See Chinese Drywall*, 2010 WL 1710434 at \*19

("Xactimate provides figures which are helpful for determining the general range of costs."); *see*

*also Shadow Lake Mgmt. Co. Inc. v. Landmark American Ins. Co.*, No. 06-4357, 2009 WL

362103, at \*1 (E.D. La. Feb. 9, 2009) (Xactimate estimates are "sufficiently reliable to be

relevant and admissible at trial").

In any event, if the Xactimate-based estimate proves lower than the Lead Contractor's

Final Cost Estimate, the Final Cost Estimate will control the Class Member's remediation

benefits.[113]  And, if the Class Member is unsatisfied with that, he or she may elect the Program

---

[112]  *See* Amerson Objections, ¶ 34; Hopper Objections, ¶ 34, Ladner Objections, ¶ 34.

[113]  Amended Knauf Settlement, § 4.3.2 ("[T]he Remediation Fund will pay ... an amount equal
to the higher of the Final Cost Estimate prepared by the Lead Contractor or 65% of the Xactimate
prepared by the Lead Contractor.").

Contractor Remediation Option, at no cost to them.[114]

### 13.   Class Notice Satisfied Due Process.

Due Process requires that the Court direct notice in a "reasonable manner" to all Class

Members.  Fed. R. Civ. P. 23(e)(1).  For classes certified under Rule 23(b)(3), the Court must

ensure that Class Members receive "the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B); *see Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997);

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *see also In re Nissan Motor Corp.*

*Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).  Courts have held that "[t]he Due Process

Clause also gives unnamed class members the right to notice of the settlement of a class action."

*See In re OCA, Inc. Sec. and Der. Litig.*, 2008 WL 4681369, at *15 (E.D. La. Oct. 17, 2008),

*citing*, *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008).  Therefore, notice must be

"reasonably calculated, under all of the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections."  *See id.*,

*quoting*, *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th

Cir. 2005).  Courts have "virtually complete discretion as to the manner and method of notice."

*Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74, 77 (N.D. Tex. 1979); *see also* 7B Federal

Practice & Procedure Civil § 1797.6 (3rd ed.) ("The court has complete discretion in

determining what constitutes a reasonable notice scheme, both in terms of how notice is given

and what it contains.").

Consistent with Due Process and the Federal Rules of Civil Procedure, the class notice

programs approved by this Court for the InEx, Banner, Knauf, L&W and Global Settlements

---

[114]  Amended Knauf Settlement, § 4.3.1.

provided Class Members with an adequate and clear description of the nature of the litigation, a concise definition of the settlement classes, a thorough summary of settlement benefits, the claims and defenses in the litigation, and the issues pertaining to class certification and settlement approval.  The notice program advised Class Members of their right to opt out of or object to the settlements, and they were directed to the Court's official website for the complete terms of the settlement agreements and other Court notices pertaining to the settlements.  Class Members were urged to consult with counsel regarding their rights and obligations.

For the Global Settlement, a website, in both English and Spanish, was established and a call center was set up with a dedicated toll-free number for Class Members to obtain information, in either English and Spanish, about the Global Settlement, the other inter-related settlements and their rights thereunder.  Class Members were able to register on the website or through the call center to receive further information and updates about the settlement and any claims procedure approved by the Court.[115]  Thus, the class notice program provided more than "sufficient information to allow individuals to determine whether or not they are class members and to evaluate the benefits of the settlement."  *DeHoyos*, 240 F.R.D. at 298.

Several objectors suggest that class notice was deficient in certain respects, but they do not challenge the reach or breadth of the notice.  Some objectors make an attempt to argue that the notices somehow were inadequate and failed to "provide adequate facts,"[116] but their claim is unaccompanied by any substantiation or support, and for this reason is without merit.  *See DeHoyos*, 240 F.R.D. at 293 ("General objections without factual or legal substantiation do not

---

[115] *See* Declaration of Elizabeth Nelson, Rust Consulting, Inc. dated 8/29/2012 (Exhibit "15" to the Final Approval Motion); *see also* Report from Rust Consulting of Call Center and Registration Statistics as of 10/25/2012 (Exhibit 25 hereto).

[116] *See* Amerson Objections, ¶ 2; Hopper Objections, ¶ 2; Ladner Objections, ¶ 2; *see also* Kaplan Dep. at 28 and Exhibit 1 thereto.

carry weight."). In the case of Mr. Kaplan, he can't even recall having ever read the notice or what the notice states.[117]  And, while Mr. Kaplan testified that he did read the Global Settlement Agreement, he demands that the notice should have provided the individual contributions of each of the Participating Defendants and the Participating Insurers.[118]  But the Global Settlement Agreement expressly states that the payments of each Participating Defendant and their Participating Insurers are limited to "their individual settlement amounts, as committed in response to the MDL No. 2047 Mediator's <u>confidential</u> settlement proposal."[119]  In other words, Mr. Kaplan seeks to undo the confidences required by the Mediator to accomplish the settlement. As this process and the notice was previously approved by the Court, this objection can not stand.[120]

The objectors also claim that notice did not "reasonably apprise the Objector of claims he may have against others and claims he/she will be releasing."[121]  However, the class notices

---

[117]  Kaplan Dep. at 28 and Exhibit 1 thereto.

[118]  *Id*. at 28-29.

[119]  Amended Global Settlement Agreement, § 4.1 (emphasis added).

[120]  Mr. Kaplan conceded that it would not be surprising that many class notices do not provide sufficient information for individual class members to specify what their recovery would be. *See* Kaplan Dep. at 32-33. Mr. Kaplan also contends that additional subclasses are necessary, because he insists that the payments of the Participating Defendants and their Participating Insurers in the Global Settlement must be disclosed. Kaplan Dep. at 34. But, as he readily admits, he did not know that the Mediator's proposals were confidential. *Id.* This admission is fatal to his objection. Moreover, Mr. Kaplan's concern about his individual defendants' contributions were misplaced. He testified to knowing that both his developer and installer had insurance policies containing pollution exclusion provisions but pleaded ignorance or asserted privilege as to his assessment of the likelihood of there being a limited recovery from these defendants, even while acknowledging that Florida courts would uphold such insurance provisions. *Id.* at 35-37.

[121]  *See* Amerson Objections, ¶ 7; Hopper Objections, ¶ 7; Ladner Objections, ¶ 7.

approved by the Court detailed the release of Class Members' claims.[122]  The objectors further

complain that the notice "cuts off claims" or prevents Class Members from "bringing suit or

filing a claim," but this makes no sense.[123]  The objection perhaps was directed to the settlement

itself, but is illogical in any event.

These objectors allege further inadequacies in the class notices, contending they were not

adequately informed about their eligibility for Other Loss Fund benefits, that the inspection

protocol was not sufficiently disclosed, and that additional information about foreclosures and

lower-case KPT was required.[124]  All of these objections lack merit.

A detailed summary and chart of benefits available under the settlements was attached to

the Knauf Settlement Notice.[125]  Class Members were advised to consult the complete settlement

agreement for further information.  In the Knauf Settlement Agreement, which was posted on the

Court's official website, the precise criteria for benefits is set forth.[126]  Provisions for class

members with foreclosed homes or homes with lower-case KPT drywall are also set forth in their

entirety in the Knauf Settlement, including detailed explanations of the specific proofs required

to establish eligibility for benefits and the procedures for submission of such proofs.[127]  The class

---

[122]  *See*, *e.g.*, Knauf Class Notice at 9; Global Class Notice at 9; L&W Class Notice at 6; Banner Class Notice at 7; InEx Class Notice at 7.

[123]  *See* Amerson Objections, ¶ 6; Hopper Objections, ¶ 6; Ladner Objections, ¶ 6.

[124]  *See* Amerson Objections, ¶¶ 8, 10, 41; Hopper Objections, ¶¶ 8, 10, 41; Ladner Objections, ¶¶ 8, 10, 41.

[125]  *See* Knauf Class Notice at 8-9.

[126]  Amended Knauf Settlement, § 4.7.

[127]  *See* Amended Knauf Settlement, §§ 4.7.1.3 (detailing benefits available to Class Members with foreclosed homes and the specific evidence required to establish eligibility for such benefits), 4.9 (setting forth requirements for proving existence reactive drywall in Affected Property and describing the procedures for submission and evaluation of evidence of reactivity of lower-case KPT Chinese Drywal1).

notice informed Class Members that "their properties will be inspected," and the inspection protocol has been posted online as part of the Knauf Settlement.[128]

Class notice is not intended to set forth the entire settlement agreement, but, rather, it is intended to advise Class Members of the nature of the litigation, the salient terms of the settlement agreement, and of their rights thereunder to opt out or object.  *Maher*, 714 F.2d at 452 (class notice is not intended to serve as a "complete source of settlement information."); *DeHoyos*, 240 F.R.D. at 301 (all that is required is "notice of the proposed settlement and any options available to class members, such as an opportunity to object.").  It is well-established that class notice cannot include "all information which might be of concern to absentee class members."  *See*, *e.g.*, *DeHoyos*, 240 F.R.D. at 301; 3 NEWBERG ON CLASS ACTIONS § 8:31 (4th ed.).

In this case, "Due process is further satisfied" because class notice was supplemented with "other information made easily available to the class outside of the notice."  *DeHoyos*, 240 F.R.D. at 302.  Thus, the class notice programs approved by this Court for the InEx, Banner, Knauf, L&W, and Global Settlements not only met, but exceeded the necessary standards to satisfy Due Process.

## 14.    The Fact that the Settlements Are Inter-Related Does Not Defeat Final Settlement Approval.

Some objectors claim that Class Members are not able to make an "informed decision" as to whether or not to participate in the Knauf Settlement, because the InEx and Global Settlements remain unapproved and unimplemented.[129]  Mr. Kaplan suggests that the Global Settlement is

---

[128] *See* Knauf Class Notice at 6; Amended Knauf Settlement, Exhibit C.

[129] *See* Amerson Objections, ¶¶ 3-5; Hopper Objections, ¶¶ 3-5; Ladner Objections, ¶¶ 3-5.

tied to the other inter-dependant settlements in ways that preclude opt-outs.  His objection is belied by his own actions, however.  Mr. Kaplan admitted that he felt no such constraints himself, as he opted out of the Banner Settlement, while he merely objected to the Global Settlement.[130]

The other objectors complain that the Knauf Settlement requires Class Members to "accept settlements of other related claims" and they further object that the opt-outs from the InEx and/or Global Settlements are not entitled to participate in the Knauf Settlement.[131] Another objector contests the requirement that Banner Class Members assign their benefits related to KPT Chinese Drywall over to the Knauf Settlement.[132]

As this Court has already acknowledged, the five settlements before the Court cannot be evaluated in isolation.  They must be "considered together."[133]  For this reason, the Court established "coordinated opt out, objection and briefing deadlines."[134]  The PSC and Class Counsel made incredible efforts to achieve a global resolution of KPT Chinese Drywall and other claims involving more than 700 Settling Defendants.  It is vital to the success of these settlements that they be integrated and consistent.  Certain concessions were required to bring all of many diverse parties together in order to provide an estimated $1.1 billion in benefits to Class

---

[130]  *Id*. at 42 ("Q.  Well, you didn't feel inhibited, correct?  A.  I felt a responsibility that I shouldn't otherwise feel and I made the decision that I made.").

[131]  *See* Amerson Objections, ¶¶ 3, 27; Hopper Objections, ¶¶ 3, 27; Ladner Objections, ¶¶ 3, 27.

[132]  *See* Sekellick Objections, ¶ 3.

[133]  *See* Order (1) Setting Consolidated Fairness Hearing, (2) Establishing Coordinated Opt Out, Objection and Briefing Deadlines, And (3) Entering Litigation Stay In Favor Of Settling Parties [Rec. Doc. No. 14566] ("[D]ecisions on whether to opt out or object to any particular settlement should be made in light of the existence of all of the proposed settlements.") (emphasis in original).

[134]  *Id*.

Members.  Allowing Class Members to receive complete remediation benefits under the Knauf Settlement, while opting out of other, integrally related settlements, would derail the settlements in their entirety.  Accordingly, Class Members are not permitted to opt out selectively from related agreements while obtaining benefits of other agreements in the overall global settlement plan.[135]

### 15.   The Bandas Objections Lack Merit.

The Bandas Objectors set themselves apart from the others because they have not come forward with any credible evidence that they even have a claim arising out of Chinese Drywall. These objectors are represented by a serial, professional objector, Christopher A. Bandas, Esq., who has gone fishing and is looking for a place to park his boilerplate and frivolous objections. None of Mr. Bandas' new-found clients sued the Knauf Defendants or L&W on or before December 9, 2011, so they cannot even pretend to be Knauf or L&W Class Members, and for that reason they have not objected to either of these settlements.  Mr. Bandas cannot attack the Banner Settlement because none of his clients is from Florida.  He cannot go after the InEx Settlement either, because his clients are not from Louisiana or Alabama.  This has left him with only one avenue for objection – the Global Settlement.

The major problem for Bandas is that the Remaining Bandas Objectors (*i.e.*, those who have not attempted to run away and hide from their objections) have produced no documentary evidence – or even a recollection – of having purchased Chinese Drywall from any Participating Defendant in the Global Settlement.[136]  The only Participating Defendant that any of the

---

[135]   *See* Amended Knauf Settlement, § 4.8.2.1; Amended Global Settlement, § 8.2.4.

[136]   *See* Class Counsel's motion and brief to strike the Objection of the Remaining Bandas Objectors [Rec. Doc. No. 16083].

Remaining Bandas Objectors even allegedly has dealt with is Home Depot, and none of these objectors has documentary evidence or even a memory of having purchased Chinese Drywall from Home Depot. This is not surprising given Home Depot's signed declaration in its Retail Profile Form that Home Depot never took possession of Chinese Drywall and "never sourced any Chinese Drywall from any Home Depot retail store."[137]

Another credibility problem for Mr. Bandas is that his story keeps changing as facts are uncovered. In his rush to lodge problematic objections, Bandas presented his office manager Jan Petrus as an objector, but then sought to withdraw her objection allegedly for "personal reasons," after she claimed she had Lowe's drywall in her home, but Lowe's turned out _not_ to be a Participating Defendant in the Global Settlement. An objection against Lowe's would not have been valid anyway, due to the release and injunction provisions in the *Vereen* class settlement barring such claims. Both Mr. Bandas and Ms. Petrus are familiar with that bar order in *Vereen*, since Ms. Petrus objected to the Lowe's Settlement, but then withdrew her objection after she and Mr. Bandas were successful in their attempts at extortion in that case.[138]

Then, Mr. Bandas put up Mr. Soto, alleging he may have gotten Chinese Drywall from Home Depot. Perhaps neither Mr. Bandas nor Mr. Soto realized that Home Depot never took possession of Chinese Drywall or sold any Chinese Drywall from its retail stores.[139]

Discovery of the Bandas Objectors thus far has revealed that their professional objector attorney promises his client-objectors $5,000 in incentive fees or a separate payment "if [their]

---

[137]   *See* Home Depot Retailer Profile Form, attached hereto as Exhibit "28," at 2.

[138]   Rec. Doc. Nos. 15981-12 & 15981-13.

[139]   *See* Home Depot Retailer Profile Form (Exhibit 28 hereto) at 2.

objection is settled <u>without the necessity for Court approval</u>,"[140] in an attempt to extort money from the settling parties.  Now that the Court has ruled that depositions of the Bandas Objectors who are seeking to withdraw their objections may go forward, we will be in a better position to respond further to the objections after we find out what Ms. Petrus, Ernest Vitela and E&E Construction have to say, assuming we can find them.  Reminiscent of the "The Godfather," when the mafia tries to get its members off the street and they are told to "take it to the mattresses," we are in the process of trying to serve subpoenas on these Bandas Objectors to comply with the Court's order.

In the meantime, Bandas has filed a memorandum of law in opposition to Class Counel's Motion to Strike Objections, in which he asserts for the first time issues pertaining to personal injury claims.  Mr. Bandas' objections are untimely, and in any event, lack merit.  Mr. Bandas is the only objector to address personal injury.  Even though the PSC and Class Counsel have argued that the Bandas Objectors lack standing to assert objections to these settlements, we feel compelled to respond to their untimely and frivolous allegations.  This is no coupon settlement. People are waiting for relief to move back into their homes.

***a.***     ***The latent personal injury objection***
***<u>is an untimely afterthought.</u>***

The Remaining Bandas Objectors' challenge based on latent personal injury is untimely. The Court's scheduling order set a "briefing schedule" that required that "[a]ny objections to the above motion [in support of the settlements] be filed on or before September 28, 2012. Although the Bandas Objectors filed an objection on September 28, conspicuously absent from that objection is any challenge based on latent personal injury.  It was not until October 31, 2012

---

[140]  *See* Soto Dep., Exhibit 1 (Exhibit "22" hereto).

– more than 30 days after the objection deadline – that the Remaining Bandas Objectors, in response to a motion for sanctions, concocted their argument about latent injury.

The Court of course has discretion to enforce its orders and strike the late-filed objection as untimely.  More revealing, however, is what the tardiness reveals about the *bona fides* of the objection.  That the initial objection was totally silent on the issue of latent personal injury speaks volumes about how serious a concern that issue was to the objectors.  That the objection was "discovered" only in response to a sanctions motion against an attorney – and that the objection is not supported by a single Class Member with proof that they were exposed to Chinese Drywall – reveals that the attorney and not the objector is the real party in interest here.

The limited discovery taken of the Remaining Bandas Objectors demonstrates that they are hardly concerned about any health issues.  Mr. Soto testified that the last time he saw a doctor was "about two or three years ago" for "congestion" due to "cold air," and that doctor visit took place in Reynosa, Mexico "on the other side of the border."[141]  He never sought treatment or received any diagnosis for any health problem related to Chinese Drywall.  Similarly, Mr. Garcia testified that no physician has ever told him that any physical ailment he has experienced is related to his possible exposure to Chinese Drywall.[142]  Rather, it was only after Mr. Garcia met with his attorney and/or his attorney's investigator that he began fearing that either he or someone in his family might get an illness from Chinese Drywall.[143]

---

[141]  *See* Soto Dep. at 92-94.

[142]  *See* Garcia Dep. at 87.

[143]  *See* Garcia Dep. at 83-86.

>    **b.    *Claimants who assert a current injury can release claims that include future damages arising from conduct that caused the <u>current injury.</u>***

Everyone who owns property that contains Chinese Drywall has a current claim for property damage relating to the drywall.  It is black-letter law that a person who settles a claim based on an existing injury can release claims that include future damages arising from conduct that caused the existing injury.  This does not constitute a release of a "future claim," but rather a release of claims for possible future elements of damage resulting from the current claim.  For example, a plaintiff in an automobile accident case who signs a general release thereby releases all claims arising out of the accident, including claims for personal injuries unknown at the time.  *See Hudson v. Progressive Sec. Ins. Co.*, 1 So. 3d 627, 634 (La. Ct. App. 2008), *writ denied*, 5 So. 3d 148 (La. 2009).  Releases of personal injury claims in connection with settlements of individual tort cases have routinely been upheld by courts.  *See, e.g.*, *Maddox v. Druid City Hosp. Bd.*, 357 So. 2d 974, 976 (Ala. 1978) (medical malpractice case); *McCorkle v. Hughes*, 244 So. 2d 386, 388 (Miss. 1971) (automobile accident); *Cirrus Design Corp. v. Sasso*, 95 So. 3d 308, 311 (Fla. Dist. Ct. App. 2012) (airplane accident); *Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 246-47 (Tex. Ct. App. 2005) (medical malpractice case).

This rule applies equally to class actions; the Remaining Bandas Objectors' assertion that "it is elementary that personal injury claims cannot and are never released in class action settlements"[144] is both unsupported and wrong.  Indeed, if claims for damage relating to possible future personal injuries could not be released, it is difficult to see how class actions such as this could be settled.

---

[144]   Bandas Objectors' Mem. in Opp. to Class Counsel's Mot. for Sanctions at 9 [Rec. Doc. No. 16045].

This Court's decision in *Murphy Oil*, which involved an oil spill following Hurricane Katrina, is directly on point.  There, the Court approved a class action settlement that compensated the class primarily for damage to property but also released all personal injury claims, including "past and future medical expenses."  *Murphy Oil*, 472 F. Supp. 2d at 873 & n.5. As the court pointed out in *Ass'n for Disabled Am.*:

> [F]ederal class action settlements routinely include releases waiving future claims.  *See, e.g.*, *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1254 (11th Cir. 2001) (approving release of future claims in tobacco litigation); *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir.1982) (a release of future claims is an important element of antitrust class settlements); *see also Williams v. General Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 274 (7th Cir. 1998) ("It is not at all uncommon for settlements to include a global release of all claims past, present, and future, that the parties might have brought against each other."); *In re Orthopedic Bone Screw Prods. Liability Litig.*, 176 F.R.D. 158, 170-71 (E.D. Pa. 1997) (certifying class including "[a]ll persons and entities wherever located, who have or may in the future have any claim" against defendants).

211 F.R.D. at 471 (emphasis added.)  *Accord, Klein*, 705 F. Supp. 2d at 644 (approving class settlement, including the release of "all claims and causes of action 'connected in any manner or fashion'" with a defective drug administered to class members while they were premature infants).

In sum, the release of claims for possible future damages is routine in the settlement of both individual cases and class actions.  The Remaining Bandas Objectors cite no case to the contrary.

### c.    *Amchem Is Distinguishable.*

The Remaining Bandas Objectors rely upon *Amchem*, which is readily distinguishable for two reasons:

- Unlike this case, *Amchem* was a massive class action seeking recovery for

personal injuries, not property damage.

•       Unlike this case, *Amchem* included class members who had no *current* injury; in this case, every single member of the class has a current injury.

In *Amchem*, "[m]ore than half of the named plaintiffs alleged that they or their family members had already suffered various physical injuries as a result of [asbestos] exposure.  The others alleged that they had not yet manifested any asbestos-related condition," but had been exposed to asbestos.  521 U.S. at 603.  This case, by contrast, is fundamentally an action for property damage, not personal injuries, resulting from the installation of Chinese Drywall.  The predominating issues in this case do not involve personal injuries.

The Remaining Bandas Objectors argue that *Amchem* and other cases hold that the Rule 23(b)(3) predominance requirement cannot be satisfied in class actions involving personal injury claims.  Again, this is not a personal injury action.  In *Amchem*, the Supreme Court stated that "mass tort cases arising from a common cause or disaster may, depending on the circumstances, satisfy the predominance requirement."  521 U.S. at 625.  The case law makes it clear that property damage class actions such as this are good examples of cases where the predominance requirement can be satisfied, especially where, as here, it is not seriously contested that the product at issue can cause damage to property.

Numerous cases based on property damage claims have been certified as class actions. *See*, *e.g.*, *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3rd Cir.), *cert. denied*, 479 U.S. 852 (1986) (asbestos-related property damage; because "the complexity of the causation questions in personal injury suits" was not present, "that phase of a property damage claim is more straightforward"); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 2010 WL 2756947 (N.D. Ohio July 12, 2010) (Ohio plaintiffs alleged design defect in Whirlpool washing

machines); *Cancino v. Yamaha Motor Corp., U.S.A.*, 2010 WL 2607251 (S.D. Ohio June 24, 2010) (defective motorcycles); *Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009) (window defects); *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 28 (D. Mass. 2003) (defective home heating systems); *Joseph v. General Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986) (design defects in a certain 1981 Cadillac engine).  The Remaining Bandas Objectors do not cite any case which even suggests that property damage class actions cannot be certified. Moreover, in property damage class actions courts have approved settlements that include the dismissal of incidental personal injury claims, including in this very litigation.  In *Harrell v. South Kendall Construction Corp.*, No. 2009-08401 (Fla. Cir. Ct. Miami-Dade Co. Mar. 4, 2011),[145] the court approved  another Chinese Drywall class action settlement based on releases that encompassed "any and all causes of action" related to the drywall, including claims for "bodily injury."  Order at 3.

As discussed above, *Murphy Oil* also was a case "where property damage dominates," like the Chinese Drywall litigation, but "a portion of the settlement award includes compensation for claims for personal injury."  472 F. Supp. 2d at 873.  This Court's Final Judgment expressly stated that "the class members sought claims for personal injury," and that they "release any and all claims against Murphy."  *Id*.  *Accord, In re Combustion, Inc.*, 968 F. Supp. 1116, 1124 (W.D. La. 1997) (approving settlement of class action that included the release of all current and future claims in a hazardous waste case involving personal injury as well as  property damage claims).

Moreover, in *Amchem*, the Supreme Court identified two problems associated with including class members who had no current injury, and therefore no current claim against the defendants.   One concern was the potential denial of Due Process to class members who have no

---

[145]  Attached hereto as Exhibit "29."

current injury, who had "no structural assurance of fair and adequate representation," "may not

even know of their exposure, or realize the extent of the harm they may incur," and "may not

have the information or foresight needed to decide, intelligently, whether to stay in or opt out."

521 U.S. at 627-28.  There are no similar concerns in this case because each and every Class

Member has an existing, current claim for property damage; there are no claimants whose only

injury will occur in the future, similar to the exposure-only plaintiffs in *Amchem*.  Notably, the

Supreme Court did not express any concern about the propriety of releasing possible future

personal injury damages in settlement of a claim for conduct that had indisputably caused a

current injury.

The Supreme Court also was concerned with the potential conflict between (1) class

members who had a current injury, and (2) those who did not have a current injury (and therefore

who had no current claim), given the well-established scientific fact that there is "a latency

period that may last as long as 40 years for some asbestos related diseases."  *Id.* at 626, 598.  No

such concern or conflict is present here because all Chinese Drywall Class Members have current

injuries and the objectors cite no evidence to support a claim of latency; again, there are no Class

Members in a similar position to the "exposure-only" claimants in *Amchem*.  Courts have

expressly distinguished *Amchem* on that ground.  *See Bynum v. Dist. of Columbia*, 214 F.R.D.

27, 36 (D.D.C. 2003) ("Unlike in *Amchem*, the named plaintiffs in the instant case are not

divided into those who have suffered a present injury and those who merely expect to suffer

similar injuries at some unknown later date."); *Elkins v. Equitable Life. Ins. of Iowa*, 1998 WL

133741, 14 n.3 (M.D. Fla. Jan. 27, 1998) ("Unlike *Amchem*, this case presents no set of class

members comparable to the "exposure only" plaintiffs who "claimed no damages and no present

injury.").

### d. *Potentially dispositive common question.*

Even if this were considered a personal injury class action, which it is not, there is an

exception to the general rule against class certification where, as here, there is an overriding,

potentially dispositive common question - in this case,  general causation.  *See Sterling v.*

*Velsicol Chemical Corp.*, 855 F.2d 1188, 1200, 1197 (6th Cir. 1988) (the "generic causation"

issue - whether the chemicals and plaintiffs' exposure to them "had the capacity to cause the

harm alleged" - could efficiently be determined on a common basis); *In re "Agent Orange"*

*Prod. Liab. Litig.*, 818 F.2d 145, 151 (2nd Cir. 1987) (class action for personal injuries "was

justified here in light of the centrality of the military contractor defense to the claims of all

plaintiffs"); *Powell v. Tosh*, 280 F.R.D. 296, 310 (W.D. Ky. 2012) (certifying  class of residents

alleging, inter alia, water supply contamination resulting from  the operation of a hog barn; the

judicial efficiency in trying the common liability question in a single class trial justified

certification); *Sala v. National R.R. Passenger Corp.*, 120 F.R.D. 494, 499 (E.D. Pa. 1988)

(certifying class of passengers injured in Amtrak accident where the issues of liability and

causation could be established on a class-wide basis).

### 16. Objections to Attorneys' Fees Are Premature and Lack Merit in any Event.

A few objections have been filed challenging attorneys' fees.[146]  The Bandas objectors

want fees to be denied altogether, but if they are awarded, they should be capped at 10% in light

of this "very nearly ... mega-fund case."[147]  Ms. Sekellick objects to "hav[ing] to pay legal fees

---

[146]  *See* Kaplan Objections, pp. 6-7; Sekellick Objection; Bandas Objections, p. 4.

[147]  *See* Bandas Objections, p. 4.

for Banner."[148]  She was told by the association of her building that she would have to pay her share of the legal fees even if she opted out, and moreover, she claims, she will not be receiving any funds from the Remediation Fund.[149]  The Roberts & Durkee and Milstein objector, Wayne Kaplan, also objects to fees, alluding to collusion and a conflict of interest on the part of Class Counsel, but he offers no support for these inappropriate allegations.[150]  In fact, Mr. Kaplan was unaware that his counsel would seek to recover from the KPT portion of the fee.[151]  Nor did he know or seek to review the time records of his counsel on this measure.[152]  Further, Mr. Kaplan never sought to review the monthly time records submitted to the Court-appointed auditor, Philip Garret, CPA, by the PSC pursuant to Pretrial Order No. 9.[153]  Plainly, Mr. Kaplan's concern is based upon a misunderstanding of the nature of the current fee award set-aside that will compensate both individually-retained counsel and common benefit counsel.  His objection is mistaken.

None of the complaints about attorneys' fees have any legal or factual merit.  <u>There is no fee request before the Court</u> at this time.  Therefore, all objections to attorneys' fees are premature in any event.  The parties explicitly provided in their agreements that all decisions regarding attorneys' fees and costs, including a common benefit fee, will be left to the Court's discretion.  Under the InEx, Banner, and Global Settlements, the PSC, common benefit attorneys

---

[148] *See* Sekellick Objection.

[149] *Id*.

[150] *See* Kaplan Objections, pp. 6-7.

[151] *Id.* at 44.

[152] *Id.*

[153] *Id.* at 45.

and privately-retained counsel for Class Members may petition the Court for an award of

attorneys' fees constituting, in the aggregate, no more than 32% of the settlement funds, plus

reimbursement of reasonable expenses,[154] but the Court has the ultimate authority to grant or

deny any such petitions.  The Global Settlement places a ceiling of 15% on a common benefit fee

request.[155]

In the case of the Knauf Settlement, the parties appropriately negotiated the payment of

attorneys' fees by the Knauf Defendants <u>after</u> all other material terms of the Knauf Settlement

had been agreed upon, and they left the ultimate amount of those fees to the Court's discretion.

*See Murphy Oil*, 472 F. Supp. 2d at 844 (noting "[i]t is common practice today for class counsel

to negotiate a specific fee award after they have successfully negotiated the class's recovery."); *In*

*re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177, at *4 (E.D. La. Mar. 15,

1995) ("Separate negotiation of the class settlement before an agreement on fees is generally

preferable to avoid conflicts of interest between the attorneys and the class.").  Courts have held

that where "the amount of the fee is left entirely to the Court's discretion," "the possibility of

collusion among counsel" is "exponentially decrease[d]."  *Murphy Oil*, 472 F. Supp. 2d at 845.

Under these circumstances, there is no threat of any taint to the bargaining process.  *Id*.

("[b]ecause the parties have not agreed to an amount or even a range of attorneys' fees, and have

placed the matter entirely into the Court's hands for determination, there is no threat of the issue

explicitly tainting the fairness of settlement bargaining.").  *Id*.; Bruce L. Hay, *The Theory of Fee*

*Regulation in Class Action Settlements*, 46 Am. U. L. Rev. 1429, 1432 (1997) ("[P]roper

---

[154]   *See* Amended InEx Settlement, § 16.7; Banner Settlement, § 14.7; Amended Global
Settlement, § 16.6.

[155]   Amended Global Settlement, § 16.6.

regulation of the counsel's fee is both necessary, and within limits, sufficient to mediate the tension between the goals of facilitating settlement and protecting the class against collusion.").

Significantly, Class Members will not be responsible for any attorneys' fees or costs under the Knauf Settlement because the Knauf Defendants have agreed to pay, subject to Court approval, $160 million in attorneys' fees and reasonable costs, including inspection costs for individual Plaintiffs.[156]

\*   \*   \*

As shown above, a careful examination of these objections reveals no reason to deny final approval to the settlements. Moreover, any of the Class Member objectors could have opted out if they thought they could achieve a better result through litigation. "Class members who find the settlement unattractive can protect their own interests by opting out of the class." *Murphy Oil*, 472 F. Supp. 2d at 856 n.21. As pointed out in the Manual for Complex Litigation, "[a]n opportunity to opt out after the settlement terms are known ... might reduce the need to provide procedural support to objectors or to rely on objectors to reveal deficiencies in a proposed settlement. Class members who find the settlement unattractive can protect their own interests by opting out of the class." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.643.

Thus, there is nothing in any of these objections that would warrant a denial of the Final Approval Motion.

## IV.    CONCLUSION

The PSC and Settlement Class Counsel respectfully request that this Court deny all objections to the InEx, Banner, Knauf, L&W, and Global Settlements, and find that these

---

[156]  Amended Knauf Settlement, § 14.2. As stated *supra*, the PSC, Settlement Class Counsel common benefit attorneys, and privately retained attorneys may seek an award of attorneys' fees up to 32% of the InEx, Banner, and Global Settlements, plus reimbursement of reasonable expenses.

settlements are fair, reasonable and adequate and in the best interests of Class Members and that

the InEx, Banner, Knauf, L&W, and Global Settlement Classes should be certified pursuant to

Fed. R. Civ. P. 23(a), (b)(3) and (e).

Respectfully submitted,

Dated:  November 6, 2012

_____

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*InEx, Banner, Knauf, L&W, and Global Settlement*
*Class Counsel*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*InEx, Banner, Knauf, L&W and Global Settlement*
*Class Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM, LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com
*Counsel for the Knauf Tenant Subclass*

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com
*Class Counsel for the Banner Class*
*Counsel for the Knauf Residential Owner
Subclass*

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com
*Counsel for the Knauf Commercial Owner
Subclass*
*Counsel for the InEx Louisiana Subclass*

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com
*Counsel for the InEx Non-Louisiana*
*Subclass*

Christopher Seeger
SEEGER WEISS, LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, NW, Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that the above and foregoing Reply Memorandum of Law in Support of the Motion of the Plaintiffs' Steering Committee and Settlement Class Counsel for an Order:  (1) Certifying the Inex, Banner, Knauf, L&W, and Global Settlement Classes; and (2) Granting Final Approval to the InEx, Banner, Knauf, L&W, and Global Settlements has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 6th day of November, 2012.

           /s/ Leonard A. Davis        
           Leonard A. Davis, Esquire
           Herman, Herman & Katz, LLP
           820 O'Keefe Avenue
           New Orleans, Louisiana 70113
           Phone: (504) 581-4892
           Fax: (504) 561-6024
           Ldavis@hhklawfirm.com
           *Plaintiffs' Liaison Counsel*
           *MDL 2047*
           *Co-counsel for Plaintiffs*