UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAG. JUDGE WILKINSON |
| **This document relates to:** | * | |
| **ALL ACTIONS** | * | |

### INTERIOR EXTERIOR'S MEMORANDUM IN OPPSOTION TO THE PLAINTIFFS' STEERING COMMITTEE MOTION IN LIMINE TO EXCLUDE HABITAT FOR HUMANITY EVIDENCE

**MAY IT PLEASE THE COURT:**

The Plaintiffs' Steering Committee (PSC) has filed yet another Motion, this time in the form of a Motion in Limine, in an effort to exclude highly relevant evidence related to the actions of one of the primary plaintiffs for the upcoming November 26, 2012 trial. The PSC would have this Court exclude all evidence related to the purchase, sale, distribution and testing of Taishan drywall by the New Orleans Area Habitat for Humanity (hereinafter NOAHH).

Interior Exterior Building Supply, LP ("Interior Exterior") asks this Court to reject the Motion in Limine on the basis that the testimony and documents sought to be introduced directly relate to NOAHH's role in sourcing, storing, and distributing Chinese Drywall, as well as NOAHH's activity of contracting, building, and selling homes utilizing Chinese Drywall. Because the documents relate directly to NOAHH's involvement in the sale and use of Chinese drywall, such evidence is directly relevant to the claims and defenses of Interior Exterior and are not unfairly prejudicial to the claims of the PSC. In fact, based o the testimony of the PSC's own

experts, including Rosemary Coates, this evidence is both relevant and directly illustrative and/or instructive to the jury.

## Relevant Facts

A bellwether trial of a select group of plaintiff's redhibition claim against Interior Exterior has been scheduled for November 26, 2012. The PSC has designated as three out of its six trial selections NOAHH as the plaintiff for three claims assigned to NOAHH by the homeowners. Not only is NOAHH the plaintiff-assignee with respect to these claims but it has also been discovered that NOAHH was both a distributor and re-seller of the Chinese drywall, placing NOAHH in the exact same situation of Interior Exterior. Actually, NOAHH actions are more culpable then Interior Exterior, as NOAHH had specific knowledge of the defects at issue in this litgation but continued to sell the defective drywall. Moreover, NOAHH is also the builder/contractor and seller of the three homes. Two of the homes contain Chinese Drywall manufactured by Tiashan and one of the homes contains Chinese Drywall manufactured by Knauf.

What has been learned through discovery is that NOAHH sourced, warehoused, **sold**, and supplied Chinese Drywall for use at various properties throughout the Gulf Coast. In fact, NOAHH continued to SELL AND DISTRIBUTE defective drywall for a period of time much longer then Interior Exteior and AFTER reports of defective drywall were widely known. The Chinese Drywall sourced by NOAHH was manufactured by Taishan. Following reports of problems associated with Chinese Drywall, NOAHH tested the Chinese Drywall it sourced and stored. Following this testing, the representatives of NOAHH declared that not all Chinese Drywall was bad and continued to supply and/or use the Chinese Drywall in homes it was

constructing well into late 2009 almost two years after Interior Exterior had stopped selling any imported drywall.

Here is what we have learned from discovery:

1. NOAHH purchased 100,000 sheets of Taishan drywall from Fly Systems, Inc in March 2007; Interior Exterior conversely only purchased 33,000 sheets of Taishan drywall from Metro Resources; (See exhibit "1", 30(b)(6) deposition of NOAHH, through the testimony of Jim Pate);

2. NOAHH did not obtain any certification that the Taishan drywall was manufactured in accordance with U.S. ASTM Standards, while Interior Exterior required certification that the drywall was manufactured according to the ASTM standards;

3. NOAHH sold drywall that was re-labeled Crescent City Gypsum, while Interior Exterior did not re-label any of the Taishan drywall;

4. NOAHH paid for use of a warehouse for storage of the Taishan drywall for over least two years, from March 2007 until at least December 2009, during which time NOAHH had access to the drywall for inspection and/or testing for either smells or examination for other defects;

5. NOAHH, like Interior Exterior, did not receive any complaints related to the smell of the Chinese drywall;

6. NOAHH received direct notice that the Chinese drywall they were selling may be defective in February 2009, at about the same time that Interior Exterior was first put on notice about the drywall form China;

7. In early 2009, NOAHH had the Taishan drywall tested, and reported to its customers that the Taishan drywall was not a problem. Interior Exterior had ceased selling the Taishan drywall in early 2007, years before the first complaint was received by Interior Exterior about potential problems;

8. Thereafter, NOAHH CONTINUED to use, distribute and **sell** the drywall as late as October 2009;

9. NOAHH sold the drywall to the public through its retail division the Habitat ReStore;

10. As late as May 18, 2010 NOAHH was insisting that the Taishan drywall was non-corrosive (see Exhibit "2").

## **Law and Argument**

The basic standard for the admissibility of evidence requires that it be relevant. Rule 401 of the Federal Rules of Evidence defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "Evidence which is not relevant is not admissible." Fed.R.Evid. 402. The determination of relevance requires a two-step analysis: first, the evidence must tend to prove fact; and second, the fact must be "of consequence." Michael R. Fontham, Trial Technique and Evidence §4-8 at 120 (1995). "In other words, the fact must support an ultimate conclusion that may determine the case under applicable legal standards." *Id.*

Under the rules of evidence, "admissibility is predicated on more than just logical relevance; rather, legal relevance is paramount: 'Although relevant, evidence may be excluded if

it probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ... or needless presentation of cumulative evidence.'" *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881, 888-89 (W.D. La. 2001) citing Fed.R.Evid. 403. In determining legal relevance under Rule 403, the trial judge has broad discretion and is authorized to balance the probative value of the evidence against its prejudicial effect. *Id. See also, United States v. Johnson,* 558 F.2d 744 (5th Cir.); *see also United States v. Maceo,* 947 F.2d 1191 (5th Cir.1991). While all evidence may be prejudicial, the prejudice referred to in Rule 403 is "a special kind of harm: an effect that might lead the jury to rule against a party for the wrong reasons." Michael R. Fontham, Trial Technique and Evidence §4-9 at 123. Unfair prejudice, under FRE 403, means an undue tendency to suggest a decision on an improper basis. *Verzwyvelt*, 175 F. Supp. 2d at 889; *see also,* Fed.R.Evid. 403 advisory committee's note. Evidence should only excluded under Rule 403 if it is speculative, confuses the issues, or is misleading to the jury. The evidence related to NOAHH actually does the opposite. This evidence will be instructive to the jury on the exact issues at the center of the PSC's claims. The PSC wants to exclude such evidence because it does not support their theories of liability, and of course may be prejudicial to PSC's case because it contradicts the very premise of the allegations against INEX.

The bellwether trial of Interior Exterior will be limited to claims in redhibition and the central question ultimately is whether Interior Exterior knew of the existence of the defect in the Chinese Drywall at the time that it sold the product to plaintiffs. Interior Exterior has consistently argued throughout the course of this litigation that the applicable standard in a redhibition claim for a bad faith seller is the "knew" standard; however, the plaintiffs have argued that Interior Exterior should be found liable as a bad faith seller if the jury finds that it

5

"knew or should have known" of the defect. While Interior Exterior disagrees with this standard as an accurate statement of the law, to the extent plaintiffs are correct, then Interior Exterior must be able to put on a defense as to what a reasonable distributor of Chinese Drywall should have known regarding the defect. The actions and knowledge of NOAHH, as a similar distributor of Chinese Drywall throughout southeast Louisiana is, therefore, particularly relevant to whether Interior Exterior should have known of the defect. At it simplest, if NOAHH did not know of the defect at the time it supplied Chinese Drywall and subsequent testing NOAHH performed did not reveal the defect, then it can be argued that Interior Exterior likewise did not know, and should not have known, of the latent defect at the time it sold the product.

Additionally, NOAHH's knowledge and action as respects all Chinese Drywall is relevant to its role as a builder/contractor and its potential liability as a joint and/or several obligor. NOAHH is not just the assignee of the three Habitat homeowner's claims, but NOAHH is the builder/contractor and seller of those homes. As such, NOAHH was an integral party to the sales chain and is, like Interior Exterior, liable in redhibition either as a good faith or bad faith seller. NOAHH's full involvement with Chinese Drywall, outside of the three subject properties, is germane to whether it, too, was a good or bad faith seller. Without addressing the issue of comparative fault and solidarity, NOAHH's culpability is nonetheless a relevant issue for adjudication of the claims against Interior Exterior.

## Conclusion

Any and all evidence and testimony related to NOAHH's role in sourcing, storing, selling, testing and/or distributing Chinese Drywall and contracting, building, and selling homes utilizing Chinese Drywall are relevant to the claims and defenses of Interior Exterior insofar as they are germane to NOAHH's status as a good or bad faith seller and they serve as a point of

comparison for the actions of Interior Exterior as it relates to what it knew or should have known about the latent defect that existed in some Chinese Drywall.

                          Respectfully submitted,

                          ***/s/ Richard G. Duplantier, Jr.***
                          Richard G. Duplantier, Jr. #18874
                          Lambert J. Hassinger, Jr. #21683
                          Benjamin R. Grau, #26307
                          Carlina C. Eiselen, #28524
                          Galloway, Johnson, Tompkins, Burr & Smith
                          701 Poydras Street, Suite 4040 One Shell Square
                          New Orleans, LA 70139
                          504 525 6802 / 504 525 2456 Fax
                          rduplantier@gjtbs.com; jhassinger@gjtbs.com
                          bgrau@gjtbs.com; ceiselen@gjtbs.com;
                          *Counsel for Interior Exterior Building Supply*

## Certificate of Service

     The undersigned certifies that this document has been served on Plaintiffs' liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 7th day of Novemebr, 2012.

                          ***/s/ Richard G. Duplantier, Jr.***