## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                    MDL NO. 2047
                                              SECTION: L

                                              JUDGE FALLON
                                              MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*CASES SET FOR TRIAL INVOLVING INTERIOR/*
*EXTERIOR AND NORTH RIVER*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF-INTERVENORS' MEMORANDUM IN OPPOSITION
## TO MOTIONS IN LIMINE BY DEFENDANTS ON STANDARD
## OF PROOF FOR REDHIBITION LIABILITY OF
## SELLER WITH KNOWLEDGE

**MAY IT PLEASE THE COURT:**

Both the defendant Interior Exterior (INEX) and its excess liability insurer North River

have filed motions *in limine* on the appropriate standard of proof to establish the redhibition

liability of INEX as a seller with knowledge pursuant to Article 2545 of the Louisiana Civil

Code.  On behalf of plaintiffs who are proceeding to trial against these defendants on November

26, 2012, the following is submitted as an opposition to both motions.

At the outset, it is important to recognize that "the reasoning behind redhibition

provisions, according to well-established jurisprudence and doctrine, is to ensure consumer

protection from hidden defects in products."  *See Spurgeon,* "All for One or Every Man for

Himself? What is Left of Solidarity in Redhibition," 70 La. Law Rev. 1227, 1254 (Summer

2010) and cases cited therein.  This is why, for example, plaintiffs in redhibition are excused

from the requirement of privity of contract with the seller; by allowing a plaintiff without privity

to recover, "Louisiana has aligned itself with the consumer-protection rule...."  *Media Pro*

*Consult. Inc. v. Mercedes-Benz of N.A., Inc.*, 262 So.2d 377, 381 (La. 1972).

In construing the language of Louisiana's redhibition articles restrictively, therefore, both defendants effectively ignore the underlying and fundamental pro-consumer objectives of a unique Louisiana Codal remedy, one with roots in ancient Roman as well as French civilian legal principles.  *See Young v. Ford Motor Co., Inc.*, 595 So.2d 1123, 1127-28 (La. 1992).  The Louisiana Supreme Court has made it clear that the fundamental purpose of redhibition law is to protect buyers from undisclosed defects and things sold to them, and to restore buyers as much as possible to the positions they were in prior to sale.  *See Aucoin v. Southern Quality Homes, LLC*, 984 So.2d 685, 691-92, and cases cited therein.

The parties herein will stipulate for purposes of the November 26 trial that the Chinese drywall sourced by INEX from both Knauf and Taishan, was defective within the meaning of this law of redhibition.  The jury thus will be asked to decide only the question whether, under the provisions of Article 2545, INEX was or was not a seller with knowledge of the Chinese drywall's redhibitory defect(s) at the time Chinese drywall was sold and installed in the homes of plaintiffs.

The motions *in limine* filed by defendants do not address a novel or unresolved issue.  On the contrary they raise a question which has been both addressed and answered in Louisiana jurisprudence over the past thirty-plus years, i.e., whether Article 2545 liability is limited to a seller with <u>actual</u> knowledge of a defect, or whether liability under the Article also includes a seller with <u>constructive</u> knowledge.  What emerges from this long jurisprudential discussion could not be more clear: <u>Liability under Article 2545 extends to any seller with either actual or constructive knowledge of a thing's defectiveness at the time of sale.</u>

The following may be far from an exhaustive listing of all of the Louisiana cases which have announced this standard; but it nonetheless is a list which surely belies the attempts by defendant-movants to remove constructive knowledge liability under Article 2545 as a principle which applies to this case as a matter of law:  *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803, 807 (La. S.Ct. 1974); *Linoski v. Fleetwood Home of* Texas, #12, 873 So.2d 886, 888 (La. 2nd Cir. 2004); *Dailey v. The Home Furnishings Store*, 857 So.2d 1051, 1058 (La. 4th Cir. 2003); *Parks v. Baby Fair Imports, Inc.*, 726 So.2d 62, 64 (La. 5th Cir. 1998); *Meche v. Harvey, Inc.*, 664 So.2d 855, 859 (La. App. 3rd Cir. 1995)*; Feruzzi, U.S.A. Inc. v. R.J. Tricon. Co.,* 645 So.2d 685, 688 (La. 4th Cir. 1994);  *Delanzo v. ABC Corp.*, 572 So.2d 648, 650–51 (La. 5th Cir. 1990); *Martin v. Henderson*, 505 So.2d 192, 195 (La. 3rd Cir. 1987); *Coleman Oldsmobile, Inc. v. Newman & Associates,* Inc., 477 So.2d 1155, 1158 (La. 1985) *writ den'd*, 481 So.2d 1334 (La. 1986); *Nelkin v. Piotrowski*, 448 So.2d 173, 176 (La. 5th Cir. 1984); *Hudgens v. Interstate Battery Systems of America,* Inc., 393 So.2d 940 (La. App. 3rd Cir. 1981); *Cernigliaro v. Marquis Marine, Inc.*, 381 So.2d 886, 888 (La. 2nd Cir. 1980); *Lacey v. Baywood Truck & Machinery,* 381 So.2d 863, 866 (La. App. 1st Cir. 1980), *aff'd sub nom.  Capital Bank and Trust Co. v. Lacey*, 393 So.2d 668 (La. S.Ct. 1981)*; Harris v. Atlanta Stove Works, Inc.*, 428 So.2d 1040 (La. 3rd Cir. 1979); *Reeves v. Great Atlantic & Pac. Tea Co.,* Inc., 370 So.2d 202, 209 (La. 3rd Cir. 1979); *Wade v. McInnis-Peterson Chevrolet, Inc.*, 307 So.2d 798, 803 (La. 1st Cir. 1975);

Since this Court sits in diversity as an *Erie* Court, it further should be noted that the federal jurisprudence of both this Eastern District of Louisiana and the Fifth Circuit have adhered to the "knew or should have known" standard of proof.  *See Datamatic, Inc. v. International Business Machines Corp.*, 795 F.2d 458, 461 (5th Cir. 1986); *Maurice v. Eli Lilly & Co.,* 2005

WL 3542902 at *4 (E.D.La 2005); *Jackson v. Pneumatic Production Corp.*, 2001 WL 1327656 (E.D.La. 2001); *Williams v. Toyota of Jefferson, Inc.*, 655 F.Supp. 1081, 1086 (E.D.La. 1987).

Against the weight of this longstanding authority, the following assertion by INEX in support of its motion *in limine* is nothing short of remarkable:

> A constructive knowledge standard has been applied in <u>limited circumstances</u> when at the time of sale, the seller with the known information at hand "should have known" that the product contained a latent or hidden defect.  This is <u>often cited</u> as the "constructive knowledge <u>exception</u>." [Emphasis added].

*See* INEX Memo in Support of Motion (Doc. 16077-1) at p. 6.  The case law cited above self-evidently contradicts such an assertion.  The "should have known" standard of Article 2545 fault is not "often" cited as a "constructive knowledge exception."  It is, indeed, embedded in <u>the</u> standard of Article 2545 fault.  Equally specious is the suggestion that fault based on constructive knowledge exists only in "limited circumstances," given the obvious variability of "circumstances" represented by the above case law which embraces the standard.

Plaintiffs of course acknowledge that whether a seller knew or should have known of a defect at the time of sale is a question which can only be answered on a case-by-case basis; nothing in the above case law suggests otherwise.  But nothing in the above jurisprudence warrants the argument that, <u>as a matter of law</u>, a factfinder should be precluded from addressing "constructive knowledge" liability herein.  Since such constructive knowledge is the accepted legal standard of fault, it is the law for the jury to apply.  Whether plaintiffs satisfy the standard can only be answered factually, based on the evidence.

Against the above jurisprudential backdrop, the position adopted by the defendant insurer

North River in its motion is no less remarkable:

> Despite the clear language of Articles 2531 and 2545, there are
> some cases that have used the phrase "knew or should have
> known" in discussing redhibition claims against sellers.  Those
> decisions give no explanation for ignoring the clear and express
> language of Articles 2531 and 2545.  The statements are largely
> dicta, because even the cases that have used "knew or should have
> known" standard [sic] have not imposed liability based upon such
> a standard [emphasis added].

*See* North River Memo (Doc. 16074-1), at pp. 2-3.

To suggest that the pronouncements in these numerous court opinions can all be
disregarded by this Court as "dicta" is wishful thinking on defendant's part, but unsupportable.
The cited cases repeatedly state the legal principle at issue, aside from whether factually the
standard was found to be satisfied in a given case.  Moreover, opposing counsel's disgruntlement
that the overwhelming jurisprudence of Louisiana violates the express language of the
redhibition articles, is perhaps a matter to be taken up when judicial elections are held, but in a
legal motion amounts to nothing less than an invitation to this *Erie* Court to simply disregard the
authoritative interpretation of codal provisions by the very Louisiana courts charged with the
responsibility of interpretation.

Indeed, much of the balance of the memorandum submitted by counsel for North River is
a discussion of the policy reasons why Louisiana courts have been wrong in not restricting
Article 2545 fault to actual seller knowledge, a debate in which there is hardly need to
participate.  Again, this Court under *Erie* will interpret and apply the law of Louisiana as a
Louisiana court would interpret and apply this law; and, whether North River considers
Louisiana courts wrong or erroneous, they have been clear that the "knew or should have known"

standard of proof is applicable in Article 2545 cases such as this.  This remains the legal standard upon which the jury should decide liability.

Each defendant-movant ultimately proposes to construct a narrow legal basis applying the "knew or should have known" standard of Article 2545.  Neither approach is legally tenable: The insurer North River argues that constructive knowledge liability under Article 2545 applies only in so-called "obvious defect cases," i.e., cases in which the defect is obvious to a reasonable seller but not apparent to a prudent buyer.  *See* North River Memo (Doc. 16074-1) at p. 22. Again, defendant would fashion a legal rule out of its interpretation of multiple fact patters in the above-cited cases.  Admittedly, if the evidence proves that a defect in the thing sold was truly "obvious"

to the seller, though not apparent to the buyer, fault under Article 2545 would be easily established.  But this begs the critical question whether a defect is "obvious," or "discoverable," or (as defendants argue here), "latent." The characterization of the defect is an issue of fact, not law; and the evidence at trial, as decided by the jury, will determine whether the defectiveness of the Chinese drywall sold in this case either could or should have been discovered by INEX. Plaintiffs will seek to prove that the defectiveness of the drywall should have been discovered in the prudent vetting of these Chinese manufacturers as sources for drywall.  Defendants will seek to prove otherwise.  However, to argue that the legal standard of "knew or should have known" does not apply until and unless the facts establish whether the defect was obvious or not, is literally to turn a traditional trial of factual issues on its head.  The threshold question is which legal standard of proof is available to a plaintiff under Article 2545.  The case law makes it clear that the legal standard available is "knew or should have known."  The question then becomes

whether the facts of the case establish that the defect in existence at the time of sale was of a type or nature which should have been discovered by the seller.

INEX takes a slightly different, but no more supportable, approach in arguing that the so-called "constructive knowledge exception" applies only where the seller conducted an inspection of the things sold, and/or where a reasonable inspector would have discovered the defect at that time.  *See* INEX Memorandum (Doc. 16077-1) at p. 7.  INEX then suggests that constructive knowledge fault under the Article is "applicable only when it has been shown that a...seller...turned a blind eye to a defect [after it] conducted an inspection...that reasonably should have led to discovery of a redhibitory defect....".  *See id.* at p. 6.  In making this argument, however, INEX relies upon the case of *Meche v. Harvey, Inc.*, 664 So.2d 855 (La. App. 3rd Cir. 1995), which serves to illustrate the legal flaw in defendants' analysis of Article 2545 liability. In fact, the *Meche* case is entirely supportive of plaintiffs' position.

In *Meche*, plaintiffs who had purchased a pre-owned vehicle from defendant brought an action in redhibition and sought both a rescission of the sale and "bad faith seller" attorney's fees under Article 2545.[1]  Finding that the defendant dealership "had constructive knowledge of the defects" in the vehicle, the trial court both rescinded the sale and awarded fees.  *See* 664 So.2d at 858.  In doing so, it noted that the problems with the vehicle should have been discovered by the seller, and it further noted that the seller had ample opportunity to discover these defects.  *See id.* at 859.

On appeal, the Third Circuit began by stating the exact legal standard of proof for Article

---

[1]The same legal standard of proof of fault is required for recovery of both damages and legal fees under Article 2545.

2545 liability which plaintiffs argue should be applied herein, *to-wit*:

> [The plaintiff] need not prove willful misrepresentation; he need
> only show actual or constructive by the seller.  Therefore, if the
> seller knew or should have known of the defect and failed to
> declare it to the buyer, the seller is liable for reasonable attorney's
> fees.

664 So.2d at 859, and case cited therein.  The panel then proceeded to affirm the trial court's

finding of fault, noting that "any reasonable auto dealer would have discovered the defects in the

vehicle...." at issue.  664 So.2d at 859.  Having failed to do so, defendant was liable under Article

2545 because "[a] seller may not simply turn a blind eye to defects for the purpose of avoiding

liability under redhibition."  *Id.*

There will be evidence in this case that a number of customer complaints reached INEX

about the drywall it was sourcing from Knauf in China.  There were complaints that the drywall

was heavy, brittle, crumbled, was difficult to cut, and difficult to handle and install.  Indeed,

these complaints should have resonated with INEX, since six to seven years earlier (in 1999), the

company had received the same complaints when it attempted to sell gypsum board imported

from Indonesia.  There is no question, and logic and common sense would dictate, that these

complaints about heaviness, brittleness, etc. all relate to the quality of the gypsum material itself.

Moreover, complaints of heaviness in particular obviously can be indicative of impurities or

problems with quality in the gypsum.

The evidence will show that INEX also had a duty as a reasonable and prudent

buyer/distributor of Chinese drywall, to audit the manufacturing process in China, verify the

factory test reports for quality of the product, and generally take precautions as to quality

assurance and control which any reasonable distributor would take in dealing with Chinese-

manufactured building materials.  There will be specific evidence that, had INEX taken these actions, the odor and/or other physical indications of sulfur off-gassing from the gypsum would have been readily discoverable in China, before this drywall was brought to the U.S.  It will be shown that, contrary to defendant's assertions in this case, the sulfur contamination of raw gypsum is not a unique or unheard-of phenomenon.  Gypsum is mined from the ground in areas where sulfur is known to be present; and there are specific industry procedures followed to separate and remove excess sulfur from gypsum in the manufacturing process for drywall.

If the jury accepts the credibility of certain experts presented by plaintiffs and agrees with plaintiffs as to the interpretation of certain evidence in this case, there's no question that there will be support for a jury finding that INEX either knew or should have known of the defective nature of this drywall at the time it was sold.  In the words of the *Meche* decision, the jury may agree with plaintiffs that INEX simply "turned a blind eye" to defects that were readily discoverable, in its rush to respond to a domestic drywall shortage.

Finally, defendants should not be heard to argue that a seller under no circumstances assumes a duty to inspect for defects in the product it sells. As noted in *Boos v. Benson Jeep-Eagle Company, Inc.*, 717 So.2d 661, 666 (La. 4th Cir. 1998), *writ den'd sub nom.  Boos v. Benson Jeep Eagle Co., Inc.*, 728 So.2d 387 (La. S.Ct. 1998), it may not be reasonable to expect a seller to inspect a product in order to uncover every defect, no matter how subtle; however, it may be reasonable for a consumer to expect that an inspection for defects has been made by the seller.  *See* 717 So.2d at 666.  If so, "the burden is on the vendor...to show that a reasonable inspection was made and no defects discovered, or that no inspection was made but the defect was of a nature that, more probably than not, it would not have been discovered by such an

inspection." *Id.*

Applying such legal principles to the facts of this case, plaintiffs will show that INEX had a duty to see that a reasonable inspection and audit of the manufacturing process was conducted at the Chinese plant where it sourced this drywall, and at the very least should have verified a so-called test report of quality provided for the product.  INEX failed to do so; and surely it would have been reasonable for plaintiffs to expect that a sophisticated company bringing building material to this country from China would have conducted at least some kind of investigation or inspection for potential defects in this drywall, especially after the devastation of Hurricane Katrina.

If plaintiffs prevail in their position at trial, then under the *Boos* case the burden should shift to INEX to show that either it conducted such an inspection and found no defects, or that no possible inspection would have uncovered the defective nature of this drywall.  Whether INEX succeeds in demonstrating this will, again, be for the jury to decide.

For all these reasons, plaintiffs respectfully suggest that both of the motions *in limine* by INEX and North River should be denied.  The Court should instruct the jury that the redhibition liability of INEX under Article 2545 can be established in this case if plaintiffs demonstrate that INEX either actually knew or should have known of the defective nature of the drywall it sold to plaintiffs.

Respectfully submitted,

Dated: November 9, 2012                    /s/ Russ M. Herman
_____
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, L.L.C.

-10-

820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
Daniel@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
119 Washington Avenue
Suite 402
Miami Beach, FL 33139
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on Defendants'

Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same

to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the Eastern District

of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in

accordance with the procedures established in MDL 2047 on this 9th day of November, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*
