IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 09-2047<br><br>SECTION L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL CASES | MAG. JUDGE WILKINSON |

RESPONSE OF THE NORTH RIVER INSURANCE COMPANY
TO THE PSC'S MOTION IN LIMINE TO EXCLUDE CERTAIN
EVIDENCE RELATING TO NEW ORLEANS AREA HABITAT FOR HUMANITY

The sole issue to be decided at the trial scheduled for November 26, 2012 is whether or not Interior/Exterior Building Supply Company ("INEX") was a good-faith seller for purposes of redhibition.  The Court is aware that there is a sharp division between the parties concerning the proper standard to be applied to that inquiry.  INEX and Defendant The North River Insurance Company ("North River") believe that the express language of the redhibition statutes, as reinforced by decisions of this Court and the Louisiana Supreme Court, require an actual knowledge standard.  Because the PSC has not a single shred of evidence that INEX actually knew of sulfur problems in some Chinese-manufactured drywall at the time INEX purchased and resold the drywall, the PSC wants this Court to ignore the statutory language and arbitrarily impose a "should have known" standard at trial.

If INEX and North River are correct on the proper knowledge standard that will control the issues at trial, then the PSC's Motion in Limine should be granted.  If the jury is asked whether INEX knew of the defect at the time of sale, then what Habitat for Humanity – or anybody else – did or did not do is not relevant to the issues at trial.  The jury must base its

1

decision on what INEX actually knew. That is a very limited and focused inquiry, and is the only inquiry allowed under the redhibition statutes.

If the PSC is correct that a "should have known" standard will apply at trial, then the PSC's Motion in Limine is the most hypocritical motion in the history of litigation. Through discovery, it has become clear that under a "should have known" standard, the PSC intends to argue to the jury that:

1. INEX should have done due diligence on the manufacturers of the foreign board INEX bought for resale, including going to the mine where the raw gypsum was mined and each plant where the drywall was manufactured;

2. The weight and brittleness characteristics of some Chinese-manufactured drywall was, by itself, sufficient to require INEX to conduct tests of the drywall to determine the chemical composition of the drywall; and

3. Had INEX tested the board, it would have discovered the elevated levels of elemental sulfur in the drywall and would have known not to sell the board.

Even under a "should have known" standard, there are several basic and critical flaws in the PSC's theory. There are substantial variations between the weight and brittleness of various brands of drywall. This fact is equally true for domestic drywall as it is for foreign drywall. Prior to the use of Chinese-manufactured drywall following Hurricane Katrina, there had never been any instance of drywall that off-gassed sulfur. The weight of a particular brand of drywall can be based on many things other than the sulfur content of the board, so even if the weight of a piece of drywall is unusual – which it is not – there would have been no reason to suspect that there was a potential problem of off-gassing of sulfur. The PSC's "should have known" theory is not based on science or history but is born of desperation.

The facts surrounding the purchase and resale of Taishan board by Habitat for Humanity is devastating to the PSC's "should have known" theory. INEX bought approximately 33,000 sheets of Taishan drywall, while Habitat bought 100,000 sheets of Taishan drywall and received another 20,000 sheets as a donation. Habitat for Humanity is therefore responsible for almost four times as much Taishan drywall as INEX. The evidence relating to Habitat for Humanity will show:

1. Before obtaining 120,000 sheets of Taishan drywall, Habitat for Humanity did no investigation of Taishan, the source of the gypsum in Taishan drywall, or how Taishan drywall was manufactured.

2. After receiving 120,000 sheets of Taishan drywall, nothing about the weight, brittleness, or other physical characteristics suggested to Habitat for Humanity, whose sole purpose is to build houses, that there was anything wrong with the drywall or that it should not be installed in homes.

3. After stories about the problems with Chinese-manufactured drywall began to appear in the press in 2009, Habitat for Humanity tested the Taishan drywall it owned specifically for sulfur content; the testing found that there was no off-gassing of sulfur from the board owned by Habitat for Humanity.

It is entirely inconsistent for the PSC to argue that INEX should have tested or inspected drywall and the manufacturing process of the drywall before purchase, but that Habitat for Humanity, who purchased almost four times as much Taishan board, had no reason to do so. It is entirely inconsistent for the PSC to argue that the weight and brittleness of the Taishan drywall should have been a warning sign to INEX,[1] but not a warning sign to Habitat for Humanity,

---

[1] The evidence will also show that INEX had purchased drywall manufactured in Asia in approximately 1999 that customers reported to be heavier and more brittle than other drywall but that drywall did not off-gas sulfur.

3

whose *raison d'etre* is to build homes containing drywall.  It is entirely inconsistent for the PSC to argue that INEX should have tested drywall for sulfur content but seek to exclude evidence showing that when Habitat for Humanity tested the same brand of drywall for sulfur content, Habitat found no off-gassing of sulfur and even issued press releases informing the public of their finding.

The proper resolution of the PSC's Motion in Limine depends on the ruling the Court makes on the standard of knowledge that will apply at trial.  If the Court follows the language of the redhibition statutes and adheres to an actual knowledge standard, then what Habitat for Humanity did or did not do will probably not be relevant – but neither will any of the PSC's evidence suggesting that INEX had some duty to test and investigate a product for a problem that had never before existed.  If, however, the Court decides that statutes that say "knows" or "did not know" really mean "should have known," which is a completely different standard, then the Habitat for Humanity evidence that the PSC wants to ignore goes directly to whether the weight or brittleness of the drywall was a warning sign for elevated levels of sulfur and whether a test of the product would have disclosed the off-gassing problem.

Whichever standard the Court decides – and North River wants to leave no doubt that an actual knowledge standard is the only proper standard under Louisiana law – the Court must be consistent.  If an actual knowledge standard controls, then no knowledge about what INEX should have known should be admitted.  If a "should have known" standard controls, then all issues relevant to that standard must be admitted, even evidence that is harmful to the PSC's theory that comes from one of the Plaintiffs.

During one of the Lincoln-Douglas debates, Stephen Douglas accused Abraham Lincoln of being two-faced.  Lincoln turned to the crowd and asked, "If I were two-faced, would I be

4

wearing this one?"  The PSC, in demanding that the jury determine INEX's status as a seller under a "should have known" standard while seeking to secrete from the jury evidence from one of its own clients that is directly contrary to the PSC's theory, is being two-faced.  It is time for the PSC to stop being hypocritical and decide which face it wants to present to the Court.

The Court's ultimate ruling on the PSC's Motion in Limine must be based on the Court's decision of what standard of knowledge applies at trial.  The PSC's duplicitous attempt to have it both ways, however, is not intended to result in a fair and effective trial.  If the Court grants this Motion in Limine, then it must also apply an actual knowledge standard at trial.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

By: _____/s Eric B. Berger_____
BRIAN S. MARTIN, ESQ.
KEVIN RISLEY, ESQ.
RODRIGO "DIEGO" GARCIA, JR., ESQ.
One Riverway, Suite 1600
Houston, Texas 77056
Phone: (713) 403-8206
Fax:  (713) 403-8299
bmartin@thompsoncoe.com

LOBMAN CARNAHAN BATT ANGELLE & NADER, PLC

SIDNEY J. ANGELLE, ESQ.
La. Bar No. 1002
ERIC B. BERGER, ESQ.
La. Bar No. 26196
400 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
Phone: (504) 586-9292
Fax:   (504) 586-1290
sja@lcba-law.com
ebb@lcba-law.com
ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on November 9, 2012.

                                                _____/s Eric B. Berger_____
                                                ERIC B. BERGER