IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 09-2047<br><br>SECTION L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO ALL CASES | MAG. JUDGE WILKINSON |

MEMORANDUM IN SUPPORT OF
MOTION OF THE NORTH RIVER INSURANCE COMPANY
TO LIMIT THE TESTIMONY OF DEAN RUTILA

MAY IT PLEASE THE COURT:

Defendant The North River Insurance Company ("North River") asks the Court to limit testimony of Dean Rutila to exclude the opinions contained in his Rebuttal Report dated October 17, 2012. The testimony of Mr. Rutila is based on assumptions contrary to Louisiana law and is not admissible under FED. R. EVID. 702 and 703.

### MR. RUTILA'S OPINIONS

Mr. Rutila is an engineer who was retained by the Plaintiffs' Steering Committee to serve as an expert in this case. According to the PSC's witness list, Mr. Rutila is prepared to offer opinions on the effect of Chinese-manufactured drywall on homes in which the drywall was installed. His original expert report stayed within his area of expertise. Most, and perhaps all, of Mr. Rutila's opinions will be made redundant and unnecessary by the stipulations between the parties.

On October 17, 2012, Mr. Rutila issued a rebuttal report. No longer content to wear the clothes of a professional engineer, as he has for his entire professional life, Mr. Rutila now wants to become an industrial hygienist, a warnings expert, and importing consultant all in one. The

1

new Dean Rutila now wants to testify that during the process of purchasing the drywall for resale, Interior Exterior Building Supply received "cautionary advice" about the quality of the drywall that "provided INEX or should have provided INEX" with sufficient information to further investigate the product, visit the manufacturing plant and the mine, and test the drywall. The new and expanded Mr. Rutila goes on to speculate that if INEX had done testing of the product, it would have observed that the drywall had "low core purity" and that there was "shale" in the drywall.

## THE COURT MUST ACT AS GATEKEEPER TO AVOID UNFOUNDED, MISLEADING, OR INCOMPETENT EXPERT OPINIONS

It has become increasingly clear over the last twenty years that a federal court has a firm obligation to determine the reliability and relevance of proposed expert testimony before allowing the opinion testimony of an expert witness to be placed before a jury. In the present case, that requires the Court to consider whether Mr. Rutila's opinions satisfy the requirement of Federal Rules of Evidence 702 and 703.

### *Rule 702*

The admissibility of expert testimony is generally governed by FED. R. EVID. 702:[1]

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The role of a trial court in applying Rule 702 to the circumstances of a particular case was clarified by the seminal decision of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993), which stressed that the Rules of Evidence, and especially Rule 702, "assign to the

---

[1] Rule 702 governs expert testimony even when the cause of action at issue is based on state law. *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012).

2

trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Before admitting expert testimony, a trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93.

In *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), the United States Supreme Court made it clear that *Daubert's* gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.* at 141. The objective of the gatekeeping requirement placed upon a trial court is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

This Court has had many opportunities to consider the admissibility of expert testimony. The Court has set forth the general principles it follows in performing its Rule 702 gatekeeping duty in these terms:

> Rule [702] reflects the Supreme Court's decisions of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Daubert charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. Daubert, 509 U.S. at 589, 113 S.Ct. 2786. The relevant and reliable standard announced in Daubert for scientific expert testimony applies to all types of expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. at 147, 119 S.Ct. 1167.
>
> Daubert provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592, 113 S.Ct. 2786. Both prongs of the Daubert test must be satisfied before the proffered expert testimony may be admitted. Id. at 595, 113 S.Ct. 2786. This analysis "entails a preliminary assessment of whether the reasoning or

methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id.

Thus, the first prong of Daubert focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595, 113 S.Ct. 2786. The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. Id. at 591, 113 S.Ct. 2786. Indeed, this examination is described in Daubert as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. Id. (citing United States v. Downing, 753 F.2d 1224, 1242 (3rd Cir.1985)). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under Daubert, the burden of proof rests with the party seeking to present the testimony. Moore v. Ashland Chem., Inc., 151 F.3d 269 (5th Cir.1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. Id. Nonetheless, the Court's role as a gatekeeper does not replace the traditional adversary system and the place of the jury within that system. Daubert, 509 U.S. at 596, 113 S.Ct. 2786. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. (citing Rock v. Arkansas, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

*Matthews v. Allstate Ins. Co.*, 731 F. Supp. 2d 552, 556 (E.D. La. 2010).

### *Rule 703*

An expert witness can rely upon inadmissible evidence in the limited circumstances allowed by FED. R. EVID. 703 (emphasis added):

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.* Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their

4

probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

The reliance provision of Rule 703 is very narrow and does not allow "the wholesale adoption of another expert's opinions without attempting to assess the validity of the opinions relied on." *Lightfoot v. Hartford Fire. Ins. Co.*, No. 07-4833, 2011 WL 39010, *4 (E.D. La. Jan. 4, 2011) (quoting *Threet v. Corr. Health Care Mgmt.*, No. 07-0943-HE, 2009 WL 3335596, *5 (W.D. Okla. Oct. 15, 2009)). This rule is necessary to make sure that an "expert isn't being used as a vehicle for circumventing the rules of evidence." *Matter of James Wilson Assoc.*, 965 F.2d 160, 173 (7th Cir. 1992).

For example, in *In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999), an expert witness was prepared to testify about the levels of radiation to which residents of the Three Mile Island nuclear facility had been exposed. Those opinions were based exclusively upon work done by other experts that the testifying expert assumed were correct and the testifying expert "never made any attempt to assess the validity of any of the assumptions the other experts used to formulate their opinions." *Id.* at 715. The Third Circuit affirmed the exclusion on the expert's testimony because "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results." *Id.*

The Tenth Circuit used the same rationale for rejecting expert testimony in *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722 (10th Cir. 1993), in which an expert witness on damages wanted to testify to opinions based upon sales projections prepared by an employee of the party offering the expert. The court affirmed the trial court's exclusion of the architect's testimony:

5

> Hearsay is normally not permitted into evidence because the absence of an opportunity to cross-examine the source of the hearsay information renders it unreliable. Rule 703 permits experts to rely on hearsay, though, because the expert's "validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes." Rule 703, Advisory Committee Notes. That rationale is certainly not satisfied in this case, where the expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial prediction was reliable, other than the fact that it was the opinion of someone he believed to be an expert who had a financial interest in making an accurate prediction. Dr. Boswell's lack of familiarity with the methods and the reasons underlying Werber's projections virtually precluded any assessment of the validity of the projections through cross-examination of Dr. Boswell. Cf. In re: James Wilson Associates, 965 F.2d 160, 173 (7th Cir.1992) (The judge must make sure that the expert isn't being used as a vehicle for circumventing the rule against hearsay.) Moreover, while Boswell testified that he considered the Werber study reliable and adequate, there was no evidence that other experts in his field would rely on such a study and would adopt it for purposes of forming an opinion of the amount of lost profits of an unestablished business. Cf. Wilson v. Merrell Dow Pharmaceuticals, Inc., 893 F.2d 1149, 1153 (10th Cir.1990) (Information must be of a type reasonably relied upon by others in the witness' field of expertise.); 3 J. Weinstein & M. Burger, Weinstein's Evidence ¶ 703[03] at 703–25 (1988) (The rule implicitly requires that the information be viewed as reliable by some independent, objective standard beyond the opinion of the individual witness.). The record simply does not support appellants' contention that the use of the Werber projections was proper under Rule 703.

*Id.* at 732-33.

This Court has similarly recognized that Rule 703 cannot be used to allow an expert witness to simply parrot the opinions of a witness who has not been allowed into the courtroom. In *JRL Enterprises, Inc. v. Procorp Associates, Inc.*, No. Civ.A. 01-2893, 2003 WL 21284020 (E.D. La. June 3, 2003), the Court granted a motion to exclude the testimony of a certified public accountant who wanted to testify on damages on behalf of the plaintiff. The expert wanted to use a compilation of the plaintiff's sales forecasts prepared by the plaintiff's vice-president in charge of sales, but he made no independent verification of the numbers and simply relied on what he was told. *Id.* at *4-5. The plaintiff asserted that the testifying expert could rely on the information under Rule 703, but this Court easily rejected that position. The Court recognized

6

that other courts "have similarly excluded expert opinions where the expert failed to conduct any independent research to determine the reliability of his assumptions," *id.* at *8, and specifically referred to the decision in the *TK-7 Corp.* case, in which the court had noted that "the fact that [the expert] relied upon the report did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report." *Id.* at *7, n.3 (quoting *TK-7 Corp.*, 993 F.2d at 732). The Court concluded:

> When these principles are applied to the Asher report, this Court finds that JRL has not met its burden of relevance and reliability under Rule 702. Asher has merely accepted as true the facts given him by JRL. JRL's assertion that it is not offering Asher as an expert in causation or statistics but as an expert on the calculation of damages is not enough. Asher performed no independent analysis of the numbers given him by JRL; in fact, his report is devoid of any analysis of figures other than those provided by JRL. He has failed to show that reasonable accountants would simply and blindly accept such numbers in formulating opinions. His theory cannot be tested, and the rate of error is not known. Basically, the plaintiff is presenting its own estimation of damages in the guise of an expert opinion.

*JRL*, 2003 WL 21284020, at *8.

Another decision of this Court excluding expert testimony that was simply an attempt to circumvent the rules against hearsay is *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, 2010 WL 8367142 (E.D. La. Feb. 17, 2010), in which the Court granted a motion by the PSC to exclude expert testimony that Knauf sought to submit in the *Germano* case. After the deadline for designation of expert witnesses had passed, Knauf identified Tracey Dodd and Robert Sproles as expert witnesses, and produced written reports from those two individuals. *Id.* at *1. The PSC claimed that the expert affidavits were "an attempt, at the last minute, to introduce new experts, new protocols, and new methodologies to fill holes in the key opinions of Knauf's trial experts." *Id.* The Court granted the PSC's Motion:

> Although Knauf timely filed its expert witness list, it did not include Sproles or Dodd. Additionally, Knauf did not provide a timely expert report for Sproles or

>Dodd. Knauf filed the Affidavit of Dodd, a consultant with knowledge of the XRF gun, a week after Dr. Perricone was cross-examined in deposition on the use of the XRF gun. The Court finds that Dr. Perricone should not be allowed, after rendering his complete opinion on the XRF gun to now bootstrap the Dodd affidavit into his opinion. Similarly, the Declaration of Robert Sproles involving the corrosion grading scale was introduced after the testimony of Dr. Perricone which discussed the use of the scale.

*Id.* at *2.

It is more than mildly ironic that the PSC, who two years ago convinced this Court that the opinions of experts who will not testify cannot be bootstrapped into the opinions of a testifying expert, now wants the Court to rewrite the rules of evidence to allow them to do just that. The Court should not do so.

## THE REBUTTAL OPINIONS ARE NOT ADMISSIBLE UNDER RULES 702 AND 703

Mr. Rutila's rebuttal opinions are not admissible for three reasons:

1. Mr. Rutila's assumption that INEX should have tested or inspected the drywall before it sold the drywall is contrary to Texas law.

2. Mr. Rutila does not have a reliable basis or methodology for his conclusions.

3. Mr. Rutila impermissibly relies on the hearsay statements of Lydia Luckevich.

## MR. RUTILA'S REBUTTAL OPINIONS ARE IRRELEVANT, MISLEADING AND CONTRARY TO LOUISIANA LAW

One of the basic premises in redhibition law involving claims against a seller is that a "seller is not presumed to know of non-obvious defects in a product and it is not required to inspect its products prior to sale to detect such defects." *Loper v. Nat. Union Fire Ins. Co.*, No. Civ.A. 99-1350, 2001 WL 210367, *4 (E.D. La. Mar. 2, 2001). This principle has remained steadfast in redhibition jurisprudence.[2]

---

[2] *See, e.g.*, *La. Farm Bureau Mut. Ins. Co. v. Lowes Home Ctrs. Inc.*, 149 F.3d 1174 (5th Cir. 1998) (a non-manufacturing seller "is not required to inspect the product for redhibitory defects or vices prior to sale"); *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993) ("A seller is not required, however, to inspect a product

8

It would be unfair and misleading for Mr. Rutila to testify about what might have happened if INEX had been more involved in the manufacturing process of the drywall in China. Not only are his opinions pure and rank speculation, they assume that INEX had some obligation to be involved in the manufacturing process. But in the absence of a legal duty for a seller to test or inspect a product before selling it – a duty absolutely and repeatedly rejected by the courts of Louisiana – opinions about what would have happened if testing or inspection had been done are not relevant and not admissible under FED. R. EVID. 702. In addition, even if some attenuated theory of relevance might otherwise allow the admission of these opinions, the opinions should be excluded under FED. R. EVID. 403 because the danger of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighs any probative value of the opinions.

### MR. RUTILA HAS NOT PROVIDED A RELIABLE METHODOLOGY FOR HIS REBUTTAL OPINIONS

The overarching purpose of Rule 702 is to ensure that before a witness is allowed to offer expert opinions to a jury, the court as gatekeeper properly determines that the witness is qualified, the witness's opinions are relevant, and the opinions are the result of a reliable methodology. *Daubert*, 509 U.S. at 597. Mr. Rutila's testimony fails this basic test on several grounds.

---

prior to sale to determine the possibility of inherent vices or defects which are not apparent."), *cert. denied sub nom. Kelley v. Indus. Refrigerated Sys., Inc.,* 510 U.S. 1043 (1994); *State Farm v. Norcold Inc.*, No. 07-1024, 2008 WL 4853030, *2 (W.D. La. Oct. 17, 2008) ("a seller is not required to inspect a product to determine the possibility of non-apparent defects"); *Ratliff v. Porter Cable Co. of N.Y.*, 210 F. Supp. 957 (E.D. La. 1962) ("The only question to consider is whether it was incumbent upon the vendor to inspect the saw prior to sale to determine the possibility of an inherent vice or defect. The law is clear that no such duty lies."); *Haley v. Wellington Specialty Ins. Co.*, 4 So.3d 307, 314 (La. Ct. App. 2009) ("the retailer of the sign . . . had no duty to disassemble the sign to search for hidden defects"); *Adams v. Owens-Corning Fiberglas Corp.*, 923 So.2d 118, 123 (La. Ct. App. 2005) ("a non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects"); *Jackson v. Sears Authorized Retail Dealer Store*, 821 So.2d 590, 593 (La. Ct. App. 2002) (a non-manufacturing seller is not required "to inspect the product prior to sale to determine the possibility of inherent vices or defects") *Ferruzzi, U.S.A., Inc. v. R.J. Tricon Co.*, 645 So.2d 685, 688 (La. Ct. App. 1994) ("a non manufacturer seller is not required under Louisiana law to inspect a product before selling it to determine the possibility of inherent vices or defects").

Mr. Rutila is an engineer. He has disclosed no training or experience that would qualify him to opine on either (1) whether INEX should have inspected or tested the drywall or (2) what INEX might have discovered had he done so. Other than saying, "I'm an expert so you have to trust me," Mr. Rutila does nothing to establish that he is qualified to reach the type of opinions he wants to place before the jury.

Mr. Rutila does not disclose the discipline upon which he bases his opinions. North River does not doubt that Mr. Rutila is qualified to talk about the limited issues set forth in his initial report. North River has repeatedly expressed its willingness to stipulate to much of that testimony. Mr. Rutila's rebuttal opinions, however, go far beyond his recognized expertise. His willingness to talk about a duty to test or inspect a product and what a particular individual may or may not have discovered during testing is not based upon engineering training and experience. Nothing in his report (or at his subsequent deposition) establishes a reliable methodology used by Mr. Rutila in reaching his rebuttal opinions.

It would serve no purpose for North River or for the Court to try to speculate on how an engineer has suddenly become qualified to talk about the matters set forth in Mr. Rutila's rebuttal opinions. It is not the burden of North River to disqualify Mr. Rutila, nor is it the prerogative of the Court to take Mr. Rutila's own word as proof that the rebuttal opinions he wants to offer are reliable. It is the PSC who bears the burden of showing that Mr. Rutila's expert opinions are admissible under the Federal Rules of Evidence. There are simply too many unknowns for the Court to determine that Mr. Rutila has used verifiable data and applied a reliable methodology to the data upon which he relies. In the absence of that determination, Mr. Rutila's rebuttal opinions fail to meet the requirements for expert testimony set by Rule 702.

## MR. RUTILA'S DESIRE TO SERVE AS A SURROGATE
## FOR LYDIA LUCKEVICH DOES NOT MAKE HIS
## REBUTTAL OPINIONS ADMISSIBLE UNDER RULE 703

Even though Mr. Rutila denies that he relied upon information obtained from Lydia Luckevich, it is not a secret that Plaintiffs want to use Mr. Rutila to act as a proxy in place of Ms. Luckevich, whom the Court has held cannot testify at trial. In the absence of the Luckevich opinions spoon-fed to Mr. Rutila by the PSC, however, it is very clear that Mr. Rutila has not and cannot verify the conclusions of Ms. Luckevich that Mr. Rutila now wants to let flow from the stand.

What Mr. Rutila wants to do is precisely the type of "wholesale adoption of another expert's opinions without attempting to assess the validity of the opinions relied on" that has been repeatedly rejected by the courts. *See, e.g., Lightfoot v. Hartford*, 2011 WL 39010, at *4. Mr. Rutila's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results." *See TMI Litigation*, 193 F.3d 613 at 715.

In *JRL Enterprises*, this Court recognized that courts "have . . . excluded expert opinions where the expert failed to conduct any independent research to determine the reliability of his assumptions." 2003 WL 21284020, at *7. The Court specifically referred to the decision in the *TK-7 Corp.* case, where the court had noted that "the fact that [the expert] relied upon the report did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report. *Id.* at *7, n.3 (quoting *TK-7 Corp.*, 993 F.2d at 732). Mr. Rutila's attempt to mechanically parrot the words of an absent expert, on an issue about which he has done no

independent validation of the opinions he is prepared to offer, is just as egregious an attempt to violate the hearsay rule as the testimony that was refused by this Court in *JRL Enterprises*.

It is clear from Mr. Rutila's own rebuttal report that he made no effort to independently verify the reliability of Ms. Luckevich's opinions. Both the rebuttal report of Mr. Rutila and the report of Ms. Luckevich upon which Mr. Rutila relies are dated October 17, 2012. It is self-evident that Mr. Rutila did nothing with the opinions of Ms. Luckevich except to unquestioningly insert them into his rebuttal report. Mr. Rutila has not even pretended to take time to review, understand, and verify the reliability of Ms. Luckevich's opinions.

Rule 702 does not authorize the use of a ventriloquist's dummy in which an in-court witness can mindlessly and uncritically mouth the words of a witness who is not allowed to testify. Mr. Rutila's desire to blindly adopt the conclusions of an absent witness is not allowed under FED. R. EVID. 703. His reliance on Ms. Luckevich is a poorly-disguised attempt to circumvent the hearsay rules through the charade of "reliance" by Mr. Rutila. Because Mr. Rutila has no basis or methodology which makes his reliance on the opinions of Ms. Luckevich reasonable, his attempt to speak for the absent Ms. Luckevich is not allowed under Rule 703.

## CONCLUSION

For the reasons discussed above, Defendant The North River Insurance Company asks the Court to limit the testimony of Dean Rutila that will be offered on behalf of Plaintiffs at the trial of this case scheduled to begin on November 26, 2012.

Respectfully submitted,

THOMPSON COE COUSINS & IRONS LLP

By: _____/s Eric B. Berger_____
    BRIAN S. MARTIN, ESQ.
    KEVIN RISLEY, ESQ.
    RODRIGO "DIEGO" GARCIA, JR., ESQ.

        One Riverway, Suite 1600
        Houston, Texas 77056
        Phone: (713) 403-8206
        Fax: (713) 403-8299
        bmartin@thompsoncoe.com

        -AND-

        LOBMAN CARNAHAN BATT ANGELLE & NADER, PLC

        SIDNEY J. ANGELLE, ESQ.
        La. Bar No. 1002
        ERIC B. BERGER, ESQ.
        La. Bar No. 26196
        400 Poydras Street, Suite 2300
        New Orleans, Louisiana 70130
        Phone: (504) 586-9292
        Fax:   (504) 586-1290
        sja@lcba-law.com
        ebb@lcba-law.com

        ATTORNEYS FOR THE NORTH RIVER INSURANCE COMPANY

## CERTIFICATE OF SERVICE

     I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Hermann, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on November 9, 2012.

                        _____/s Eric B. Berger_____
                        ERIC B. BERGER