UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL No. 2047 SECTION: L |
| This Document Relates to: | * * | JUDGE: FALLON |
| *Payton, et al., v. Knauf Gips KG, et al.*, Case No. 2:09-cv-07628-EEF-JCW | * * * | MAGISTRATE JUDGE WILKINSON |
| ****************************************** | * | |

### LENNAR HOMES, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS WILLIAM ELLIOTT AND MARY ANN FRYC'S MOTION FOR LEAVE TO FILE A LATE OPT-OUT NOTICE FROM THE GLOBAL SETTLEMENT

Defendant Lennar Homes, LLC respectfully submits its Response in Opposition to Plaintiffs William Elliott and Mary Ann Fryc's (collectively, "Plaintiffs") Motion for Leave to File a Late Opt-Out Notice from the Global Settlement (the "Motion for Leave") [Rec. Doc. 15947], and in support thereof states:

### I. INTRODUCTION

Plaintiffs--who have been parties to this MDL for nearly three years and are represented by attorneys who are members of the Plaintiffs' Steering Committee ("PSC")--failed to submit an opt-out notice for the Builder, Installer, Supplier & Insurer Settlement Agreement (the "Global Settlement") prior to the Court-imposed opt-out deadline. Accordingly, Plaintiffs are deemed to be bound by the terms of the Global Settlement, provided it is finally approved. Nevertheless, more than two weeks after the deadline had passed for submission of opt outs, Plaintiffs filed this Motion for Leave, asking the Court to excuse them for failing to abide by the deadlines. Plaintiffs suggest that they misunderstood the terms of the Global Settlement and, rather, believed that they were "automatically" opted out of the Global Settlement by virtue of

their opting out of a different settlement, the Knauf Settlement. The Plaintiffs' (or their counsel's) failure to read and fully understand the terms of the Global Settlement, however, does not constitute excusable neglect. Rather, in the context of a large multidistrict litigation settlement, such as the Global Settlement, deadlines and cutoff dates are essential for the purpose of ensuring finality and certainty. Indeed, hundreds of Settling Defendants are relying upon the notice provisions and deadlines under the Global Settlement to bind class members. Accordingly, because the Plaintiffs have failed to demonstrate excusable neglect, the Motion for Leave should be denied.

## II.     ARGUMENT

In an Order dated June 4, 2012, this Court scheduled a Joint Fairness Hearing for November 13 and 14, 2012, during which the Court will consider whether to issue final approval for various settlement agreements in the MDL, including the Global Settlement. [Rec. Doc. 14566]. In that Order, the Court directed that "[a]ny class member wishing to opt out of any of the above referenced class action settlements must notify the persons specified in the preliminary approval orders for those particular settlements, in writing. **Any such opt out notice must be postmarked no later than September 28, 2012**." If a class member, such as Plaintiffs, did not submit an opt out by that date, they are bound by the provisions of the Global Settlement. Indeed, the Global Settlement provides, in clear terms:

> [A]ll Class Members . . . who have not opted out of the Class will be deemed to be bound by the Settlement, and the relief provided by the Settlement will be their sole and exclusive remedy for their claims arising out of, in any manner related to, or in any way connected with Chinese Drywall, except to the extent of Reserved Claims.

Global Settlement, at ¶ 8.1.1.

Deadlines and cutoff dates in complex settlements, such as the Global Settlement, are important for the purposes of finality and certainty. Without such assurances, "Defendants will be loath to offer substantial sums of money in compromise settlement of class actions unless they can rely on the notice provisions of Rule 23 to bind class members." *In re Four Seasons Securities Laws Litig.*, 59 F.R.D. 667, 677 (W.D. Okl. 1973), rev'd, 502 F.2d 834 (10th Cir.), *cert. denied*, *Ohio v. Arthur Anderson & Co.*, 419 U.S. 1034 (1974). Therefore, a class member has the burden to demonstrate "excusable neglect" when seeking leave from imposed deadlines, such as an opt-out date. *See In re Diet Drugs*, 92 Fed. Appx. 890, 893 (3d Cir. 2004); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993).

Importantly, when evaluating excusable neglect, "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer*, 507 U.S. at 396. Therefore, in determining whether Plaintiffs' failure to submit their opt out notice to the Global Settlement prior to the deadline "was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable." *Id.* at 397 (emphasis in original). While Plaintiffs have suggested that their noncompliance with these deadlines was in good faith and simply a mistake, this "mistake" was wholly within the control of Plaintiffs and their counsel. Therefore, "a court should consider whether counsel did 'all he reasonably could to comply with the court-ordered . . . date.'" *In Re Diet Drugs*, 92 Fed. Appx. at 894 (*citing Pioneer*, 507 U.S. at 396).

In the *Diet Drugs* case, the court considered several factors that weighed against excusing Plaintiffs for their failure to file a timely opt out notice. *In Re Diet Drugs*, 92 Fed. Appx. at 894. First, both the plaintiff and the plaintiff's counsel had actual and constructive notice of the opt out deadline and the terms of that settlement. The same is applicable here. Plaintiffs were sent direct notice of the Global Settlements and the other pending MDL Settlements. Plaintiffs'

counsel is a member of the PSC, which was responsible for negotiating the terms of the Global Settlement on behalf of the interests of homeowners, such as Plaintiffs.  Second, the court in *Diet Drugs* recognized that the plaintiff's counsel was aware of the deadline and filed timely opt outs for other of its clients.  *Id*.  Similarly here, Plaintiffs' counsel filed opt outs to the Global Settlement on behalf of more than two dozen other class members.  Accordingly, even though Plaintiffs and their counsel may have acted in "good faith," the circumstances surrounding this failure to timely file an opt-out to the Global Settlement on behalf of Plaintiffs "are neither unique nor compelling."  *Id; see also Grilli v. Metro. Life Ins. Co., Inc.*, 78 F. 3d 1533, 1538 (11th Cir. 1996) (finding no abuse of discretion in district court's refusal to allow late opt-outs in the absence of a clear showing of excusable neglect).

In addition, when determining whether to excuse a class member's non-compliance with opt-out deadlines under a settlement, the Court should consider the potential prejudice that may occur.  *See Pioneer*, 507 U.S. at 395.  Even in circumstances where the length of delay is not substantial, the non-moving party--in this case Lennar--is prejudiced in that it "would be required to litigate against entities who inexcusably failed to submit timely opt-outs forms." *In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317, 2005 WL 2451957, at *2 (S.D. Fla. July 8, 2005).  For example, in the *Terazosin Hydrochloride Antitrust Litigation* case, several class members submitted opt-out notices that were received by the Claims Administrator two days after the required deadline.  *Id*., at *1.  The court held that these class members had "long been aware of the settlement" and "were given ample notice of the" opt-out deadline. Therefore, even a short delay in submitting the opt-out forms of two days beyond the deadline was inexcusable.  *Id*., at *3.

In these types of multidistrict litigation settlements, settling parties enter into settlements "in order to achieve a full and complete resolution of all . . . claims, and the parties are entitled to hold potential class members to the deadlines that were the product of vigorous negotiations." *Id*. Indeed, the Court "has an interest in enforcing its deadlines and ensuring that this litigation finally comes to a conclusion." *Georgine v. Amchem Products, Inc.*, No. 93-0215, 1995 WL 251402, at *6 (E.D. Pa. Apr. 26, 1995). In doing so, the Court is required to ensure that "at some point a cutoff date be set for filing requests for exclusion." *Id*. There is "no more appropriate time to draw a 'white line' than the opt-out deadline itself." *Id*.

If the Court were to grant the Motion for Leave and permit Plaintiffs to file a late opt out, this would open up the door for countless other claimants to seek similar relief from the Court. For example, in the *Georgine* case, the court denied a claimant leave to file a late opt out because all "those similarly situated would also have to be permitted to opt out." *Id*., at *7. In *Georgine*, no evidence had been presented to the Court regarding "the number of class members who have similar excuses as the movants." *Id*. Nevertheless, the Court did not want to open up the door to a flurry of similar late opt outs because it was possible that numerous other claimants would ask the Court to consider similar excuses. *Id*. If that were to occur here--and numerous claimants were permitted to opt out of the Global Settlement after the Court's deadline--Participating Defendants might exercise their rights to withdraw from the Global Settlement.

Finally, the prejudice to the Plaintiffs in remaining as claimants in the Global Settlement is *de minimis*. Plaintiffs remain eligible to submit a claim in the Global Settlement and to seek reimbursement from funds contributed by its builder, Lennar. The installer of the drywall in Plaintiffs' home, Finest Drywall, Inc., is also a Participating Defendant. As such, Plaintiffs will be entitled to seek reimbursement from the funds contributed by this installer. Because the

5

Plaintiffs timely opted out of the Knauf Settlement, Plaintiffs retain their claims against the Knauf Entities and L&W Supply Co., which is believed to be the supplier of the drywall to Plaintiffs' home.  Finally, Plaintiffs retain their claims against any other entity in the supply chain of the defective drywall that is not participating in the Global Settlement.  Therefore, by holding Plaintiffs to the deadlines under the Global Settlement, Plaintiffs retain substantial rights through multiple channels to seek recovery for losses they may have incurred.

### III.     CONCLUSION

Thousands of claimants and hundreds of Settling Defendants are relying upon the deadlines in the Global Settlement and the other settlements in this MDL.  If the Court decided to entertain this motion and open the door for Plaintiffs and others to opt out after the Court-imposed deadlines, there is an undeniable risk that Participating Defendants, such as Lennar, will be denied the benefit of the "finality" and "certainty" they were entitled to receive as a result of agreeing to participate in this settlement.  On the other hand, Plaintiffs have not demonstrated that they should be excused from the Court's deadlines.  Plaintiffs' failure to understand and abide by the clear terms of the Global Settlement does not constitute excusable neglect.  Rather, it is evidence of, at best, an avoidable mistake.  Accordingly, Lennar respectfully requests that the Court deny the Motion for Leave.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
*Attorneys for Lennar Corporation, Lennar Homes, LLC, and U.S. Home Corporation*
333 Avenue of the Ameircas
(333 S.E. 2nd Avenue)
Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717
E-mail: bassh@gtlaw.com


By:   s/ Hilarie Bass
      HILARIE BASS
      Florida Bar No. 334323
      MARK A. SALKY
      Florida Bar No. 058221


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Lennar Homes, LLC's Response in Opposition to Plaintiffs William Elliott and Mary Ann Fryc's Motion for Leave to File a Late Opt-Out Notice from the Global Settlement** has been served on Plaintiffs' Liaison Counsel, Russ Herman, Esq.; Defendants' Liaison Counsel, Kerry Miller, Esq.; Homebuilders' Steering Committee, Dorothy Wimberly; and Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq. by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 6, on this 12th day of November 2012.

      s/ Mark A. Salky
      MARK A. SALKY