IN THE SUPERIOR COURT OF MUSCOGEE COUNTY

STATE OF GEORGIA

FILED IN OFFICE

2012 JAN 12 AM 9: 16

MELINDA PIERCE
MUSCOGEE COUNTY
SUPERIOR COURT

| | | |
|---|---|---|
| **GLEN VEREEN**, on behalf of himself and all others similarly situated, | * * | |
| | * | **CIVIL ACTION FILE NO.:** |
| Plaintiffs, | * | **SU 10 CV 2267B** |
| | * | |
| VS. | * | |
| | * | |
| **LOWE'S HOME CENTERS, INC.** | * | |
| | * | |
| Defendant. | * | |

## FINAL ORDER AND JUDGMENT

**WHEREAS** Plaintiffs and Defendant entered into a Stipulation and Settlement Agreement, with exhibits (collectively the "Settlement Agreement"), dated July 27, 2010 to settle this Action; and

WHEREAS this Court entered an Order July 27, 2010 (the "Preliminary Approval Order"), preliminarily certifying the putative Class in this action for settlement purposes under Ga. Code Ann. § 9-11-23(a) and (b)(3), ordering Publication Notice and Point of Sale Notice to potential Class Members, scheduling a Fairness Hearing for November 12, 2010 and providing those persons with an opportunity to either exclude

1

themselves from the settlement class or object to the proposed settlement; and

WHEREAS Plaintiffs and Defendant entered into a Supplemental Amendment to Class Action Settlement Agreement and Release, with exhibits (collectively the "Amendment"), dated November 28, 2010; and

WHEREAS the Court entered an Order Amending the Settlement Agreement and Appointing a Settlement Administrator on March 24, 2011; and

WHEREAS the Court held a Fairness Hearing on October 12, 2011, to determine whether to give final approval to the proposed settlement; and

WHEREAS the Court has granted final certification of the settlement class, approving the proposed settlement, and dismissing the Class Members' claims (among other claims);

Now, THEREFORE and based on the submissions of the Parties and Class Members, the evidence adduced at the Fairness Hearing, the argument and statements of counsel, and all of the other pleadings and materials on file, it is hereby **ORDERED** as follows:

**1.    Incorporation of Other Documents. Unless contrary to this final order,** this Final Order and Judgment incorporates and makes part hereof:

a.   The Settlement Agreement submitted to this Court on July 27, 2010;

b.   The exhibits to the Settlement Agreement;

c.   The Court's Preliminary Approval Order;

d.   The Amendment submitted to this Court on October 28, 2010;

e.   The exhibits to the Amendment;

f.   The Court's Order approving the Amendment;

g.   "Class Administrator's Review & Recommendation Report", Nov. 18, 2011

h.   Dec. 2, 2011 letter concerning consolidation of funds of each group

2

  i.  The Joint Motion for Final Approval of Class Action Settlement; and

  j.  The exhibits to the Joint Motion for Final Approval of Class Action Settlement.

All capitalized terms not defined in this Final Order and Judgment or not in conflict with this Final Order shall be defined as set forth in these incorporated documents.

  **2.**  **Jurisdiction.** The Court has personal jurisdiction over all Class Members (as defined below) and has subject-matter jurisdiction over this action, including, without limitation, jurisdiction to approve the proposed settlement, grant final certification of the Class, and dismiss this action on the merits and with prejudice, and to enjoin other proceedings by Class Members.

  **3.**  **Final Class Certification.** After careful consideration, the Class previously certified preliminarily is hereby finally certified for settlement purposes under Ga. Code Ann. § 9-11-23(a) and (b)(3). The class that is certified is as follows:

> Any Person in the United States, who, during the Class Period, purchased, installed or had installed on real property Defective Drywall or were owners and/or residents on such real property. Excluded from the Class shall be the following:
> (i) All persons who during the Class Period were officers, directors, or employees of the Company, and
> (ii) All persons currently serving as judges or justices in the State Courts of Georgia and the members of their immediate family.

The Court finds that the requirements of Ga. Code Ann. § 9-11-23(a) and (b)3 are satisfied. Because more than 40,000 claims have been received, the Court finds that this Settlement class is so numerous that joinder of all class members is impracticable, and the criterion of numerosity is satisfied.

The criterion of commonality is also satisfied. For purposes of this Settlement only, the Court finds that common questions of law and fact exist. All Class Members allege damage from

Defective Drywall and thus share common issues of strict liability, negligence, and causation.

For the purposes of the settlement class certification, the Court finds that the criterion of typicality is met. All Class Members allege damages from the same pattern or practice — the sale of drywall — and the same legal theories.

The criterion of adequacy of representation is satisfied. After conducting a rigorous analysis of the requirements of Ga. Code Ann. § 9-11-23(a)(4), the Court finds that the law firms of — Austin Gower, Esq. 1425 Wynnton Road, P.O. Box 5509, Columbus, Georgia; Don Barrett of Don Barrett, P.A., 404 Court Square, P.O. Box 927, Lexington, Mississippi 39095; Patrick W. Pendley of Pendley, Baudin & Coffin, L.L.P., P.O. Box 71, Plaquemine, Louisiana, 70765; Dewitt Lovelace of Lovelace Law Firm, P.A., 12870 U.S. Hwy. 98 West, Miramar Beach, Florida 32550; Gregory S. Weiss of Leopold Kuvin, 2929 PGA Boulevard, Suite 200, Palm Beach Gardens, Florida 33410; and Robert D. Gary of Gary, Naegele & Theado LLC, 446 Broadway, Lorain, Ohio 44052-1797 — are experienced and qualified to represent Plaintiffs and the Class and that they have served as competent and diligent advocates for the interest of Plaintiffs and the Class, and therefore, are approved as Class Counsel.

The superiority and predominance criteria are also met. The Court finds that the Settlement is a superior method of resolving thousands of claims, given the time, money, and other resources necessary to litigate these claims. Absent the Settlement, claimants — some with *de minimis* or no provable damages — would be forced to litigate their claims for years, clogging already congested courts, running up legal fees, and delaying any eventual recovery. The Court also finds that pursuant to Ga. Code Ann. § 9-11-23(f)(3) (class action stipulations), the Parties stipulated, for purposes of this Settlement only, that the requirements

4

of § 9-11-23(b)(3) concerning the predominance of class over individual issues and the superiority of class action treatment are met.

4. **Class Notice.** The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann. § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.

Point of sale notification was printed on all Lowe's receipts from August 26, 2010 to November 12, 2010 and from March 30, 2011 to July 15, 2011. This involved more than 100 million notices, hand delivered to Lowe's customers, during each of the respective notice periods. They included a description of the nature of this action, a description of the settlement class, information regarding the fairness hearing, and information regarding how Class Members could opt out or object to the Settlement.

Publication notice was provided in the form of an advertisement published in *People Magazine*, *Parade Magazine*, *USA Weekend*, and *National Geographic Magazine*. *Id.* The publication notice contained the exclusion and objection deadlines and the Settlement Administrator's website address and telephone number.

Notice was provided by first class mail to those claimants who, as of the date the Amendment was preliminarily approved, had qualified for Group 1 benefits or had submitted a

valid request for exclusion.

The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's *Manual for Complex Litigation, 4th*.

The Court further finds that the response by potential Class Members demonstrates the Notice Plan's success. The Settlement Administrator's website has received more than 145,000 "hits," and more than 40,000 claims have been filed.

5. **Adequacy of Class Representatives.** The Court finds that the designated class representatives, Mr. Glen Vereen and Mr. Chris Brucker, are appropriate representatives for settlement purposes.

6. **The Settlement is Fair.** The terms and provisions of the Settlement Agreement and the Amendment, including all exhibits, have been entered into in good faith and are fair, reasonable and adequate as to, and in the best interest of, each of the Parties and the Class Members, including the reasoning and support for differentiating the benefits to be provided in the four groups eligible for benefits pursuant to this Settlement. The Court finds that extensive arm's length negotiations have taken place in good faith among Class Counsel, Special Class Counsel, and Lowe's.

7. **The Criteria for Settlement Approval Are Satisfied.** The Court specifically finds that the Settlement satisfies the criteria for approval set forth in Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).

a. **Plaintiffs face difficult legal and factual barriers to recovery.** The Court finds that significant legal barriers exist for the claimants in many jurisdictions, including the

6

following: (1) the innocent seller defense, which is a significant bar to recovery for innocent sellers such as Lowe's; (2) the economic loss doctrine, which impedes recovery in tort; (3) the various applicable statutes of limitations, which may bar all or part of Plaintiffs' claims; and (4) the limitation on medical monitoring claims in the absence of physical injury.

Plaintiffs also face significant factual barriers to recovery. For instance, many claimants have had difficulty proving they purchased drywall from Lowe's. Proof that Lowe's actually sold the drywall is a prerequisite to any action against Lowe's for damages related to the drywall. Plaintiffs would face several additional hurdles as they attempt to prove the drywall caused damage, including that the observable corrosion in the home caused by the drywall.

The Court finds that these significant legal and factual hurdles favor approval of the Settlement. See In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 314 (N.D. Ga. 1993) (holding that the plaintiffs' likelihood of success at trial is not only the first *Bennett* factor, it is also "by far the most important factor" in evaluating a class action settlement); Perez v. Asurion Corp., 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) (holding that when a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement).

b.     **The Settlement falls within the range of possible recovery at which a settlement is fair, adequate and reasonable.** The Court finds that the settlement amount here is reasonable given the inherent risks involved in litigation, the value and range of claims, and the value and range of potential benefits. The Settlement gives those claimants with the best proof of damages — i.e., the Enhanced Benefits Group claimants — the best access to benefits. Claimants will likely receive more from the Settlement than they could

7

reasonably expect to obtain in a separate lawsuit against Lowe's. Successful claimants in a separate lawsuit will need to prove that the damage observed was caused by defective drywall from Lowe's. Such claimants would face litigation expenses for: (1) inspection and possibly laboratory costs to demonstrate the existence of defective drywall; (2) remediation experts; and (3) medical experts, as well as attorneys' fees.

In sum, by increasing the amount of the settlement, with the addition of the Enhanced Benefits Group, and with the added provision that all surplus funds shall roll over to the deficient Group or Groups, the Court finds that the total potential settlement of $11.916 million dollars, including approximately 25% in total legal fees, "falls within the range of reasonableness," favoring approval of the Settlement. See In re Domestic Air Transp. Antitrust Litig. 148 F.R.D. at 319-320 (holding that the court must determine "whether [the settlement] falls within the 'range of reasonableness,' not whether it is the most favorable possible result in the litigation."). Approximately 24% of said $11.916 million settlement shall hereby be awarded as legal fees in an amount not to exceed 2.9 million dollars as outlined in a separate Final Order on legal fees.

    c.    **This case, if tried, presents complex issues that would result in lengthy and expensive resolution.** Should this case proceed, the Court finds that lengthy and expensive litigation would ensue. At a minimum, Plaintiffs would face a difficult class certification process, costly merits discovery, and substantial dispositive briefing. The likely alternative to settlement now is lengthy and expensive litigation exposing the litigants and this Court to substantial burdens. See Ingram v. Coca-Cola Co., 200 F.R.D. at 691 (providing a credible projection of ten years for litigation of a class action from class certification through trial and appeals). This factor favors approval of the Settlement.

8

d.  **Despite adequate notice, there has been little opposition to the Settlement.** As noted above, the notice provided was adequate. Despite this notice, Lowe's has received only a few objections, nearly all of them lodged before the announcement of the increased settlement amount and the addition of the Enhanced Benefit Group which provided additional benefits for certain claimants. The small percentage of objections of the more than 40,000 claims received supports approval of the Settlement. See Ingram v. Coca-Cola Co., 200 F.R.D. at 691, n.7 (citing Cotton, 559 F.2d at 1331 and Kincade v. Gen. Tire & Rubber Co., 635 F. 2d 501, 506 n.4 (5th Cir. 1981) (While the number of objectors is "not controlling," a relatively small number of objectors can certainly be taken as "some indication that the class members as a group did not think the settlement was unfair"). In addition, the Court finds that the Plaintiffs' Steering Committee in the Chinese Drywall Multidistrict Litigation ("MDL") and the Class Representatives agree the Settlement is fair and should be approved. These facts support approval of the Settlement.

e.  **The stage of the proceedings at which the Settlement was achieved supports approval.** Based on the in-court assertions of counsel for both the class and Defendant, the Court finds that the final *Bennett* factor — the stage of proceedings at which the Settlement was received — likewise supports approval. Plaintiffs have deposed Lowe's corporate representative and have had access to discovery in other related cases. Significant discovery has taken place in a variety of drywall cases, including the MDL. In addition, the CPSC investigated and tested drywall, issued an Identification Protocol to help consumers identify problem drywall in their homes, and subsequently issued a Remediation Guidance. According to Class and Special Counsel, they have litigated and are counsel of record in other drywall litigations and have had inspections done on their clients' properties. All of this

9

information articulated to the court by said counsel for all parties, along with formal discovery in this and other similar litigations, and independent informal investigation supports this Court's finding that the Parties had sufficient information and evidence to adequately weigh the attendant risks and benefits, which led to an informed decision to settle.

Moreover, the negotiations of the amended settlement took place many months after the original settlement was entered into and involved separate counsel, experienced in drywall litigation, who were not associated with class counsel.

8. **Objections to Settlement.** The Court provided all Class Members and their representatives, who complied with the requirements for objections and appearances at the Fairness Hearing set forth in the Preliminary Approval Order, a fair and adequate opportunity to object to the proposed settlement. The Court has carefully considered all such objections in evidence and overrules them.

### a. Mr. Willett lacks standing.

Mr. Willett personally appeared at the Court's Status Conference on September 9, 2011. While the Court has provided Mr. Willett extended access to court documents and opportunities to be personally heard, the Court was not persuaded of his claim. With the Court's permission, Mr. Willett was sworn, testified and answered questions posed by the Court and counsel for the Parties. Mr. Willett was asked to produce any additional documents supporting his personal claim for damages to the Court and to counsel for the Parties. The Court heard his statements and observed his demeanor.

The Court finds Mr. Willett's claim that he purchased defective drywall which caused injury (and is therefore properly within the EBG class) lacks creditability. He alleges he

updated a home in 2000, then sold it in 2003 at a $30,000.00 reduction due to "drywall problems in the 1,000 sq. ft basement." But the evidence presented demonstrates that problematic Chinese drywall was installed in homes built or remodeled from 2001 — 2008. Mr. Willett's own testimony at the Status Conference[1] and the documents he presented to the Court at that time establish that his only purchase of drywall from Lowe's was in 2005, two (2) years after the sale of the home. Also noteworthy, the purchasers of Mr. Willett's home have not filed a claim for damages for problematic drywall, nor have they opted into this settlement. Because Mr. Willett has no proof of damages from the allegedly defective drywall, the court rules he has no valid claim or even standing to object on behalf of other claimants, especially someone like Mr. Willett's buyer, who makes no claim of his own. Wolff v. Cash 4 Titles, 351 F.3d 1348, 1358 (11th Cir. 2003). ("[E]ven in exceptional cases where plaintiffs are permitted to raise the rights of others, those plaintiffs must still demonstrate their own injuries to satisfy the constitutional requirements of standing.") Accordingly, the Court need not even address Mr. Willett's objection.[2] In addition, Mr. Willett requested the court to name him Legal Counsel for Objectors and award him legal fees for his services, which the court declined to do. However, the court did not deny him the opportunity to remain an objector throughout the proceedings.

b. **Most objectors lack standing.** The Court finds that most of the objectors lack standing. Several are not part of the class, either because they opted out, did not file a claim, or never fell within the class definition. These objectors have no standing to challenge

---

[1] Even though the court gave Mr. Willett additional time to make arrangements for a court reporter and even tried to find a reporter for him, Mr. Willett was unable to engage the services of a court reporter in advance or on the day of the Status Conference and therefore no transcript of those proceedings is available.
[2] The Court has also reviewed Mr. Willett's correspondence addressed to the Court and to his Clerk of Court dated October 11, 2011. The only drywall purchase noted in Mr. Willett's presentation to the Court at the Status Conference concerned the alleged 2005 purchase he says was responsible for a loss in the 2003 sale of his residence.

the Settlement. See Am. Med. Sec., Inc. v. Parker, 279 Ga. 201, 203, 612 S.E. 2d 261, 262 (2005) ("It is a well-settled rule that only class members have standing to challenge a class settlement.")

        c.    **The remaining objections are meritless.** Of the objections made by claimants with standing, the Court finds that while some merited consideration, none rose to the level of overcoming the benefits of this settlement. One objector has taken issue with the gift cards provided as part of the Settlement. While the court had similar concerns about "coupons", the gift cards awarded here are distinguishable, require no purchase, are fully transferable, and are nearly equivalent to cash. Numerous courts have approved voucher or gift card settlements. Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 255-56 (E.D. Pa. 2011) ("In this case, the gift cards have actual cash value, and according to counsel for both sides, are to be mailed to a class of mostly regular customers. In addition, the gift cards have no expiration date, are freely transferable, and can be used for many products for which ordinary consumers, including class members, have need... Under these circumstances, the gift cards are more like 'cash' than 'coupons.'"); Fernandez v. Victoria Secret Stores, LLC, No. CV 06-04149 MMM, 2008 WL 8150856, at *2, 16 (C.D. Cal. July 21, 2008) (granting final approval of class-action settlement requiring defendant, which allegedly had not paid applicants during "sales tryout," to provide class members with a $67.50 Victoria's Secret gift card).

With respect to Mr. Willett, while the Court has concluded that he has no standing, the Court has nonetheless considered his objections, both verbally and in writing, and find them to be disingenuous and without merit. Based on said conclusion, the court will not address the concern of a possible pattern of intervening in class action litigation, demanding certain sums in

12

legal fees or nuisance payments, with the prior intent to withdraw all objections upon payment.

    d. **The Court has carefully considered all filed objections, regardless of whether the objector had standing, and finds that no objections are meritorious.**

    9.    **Final Settlement Approval and Implementation of Settlement Agreement.** The settlement in the total potential amount of $11.916 million dollars along with all supporting documents and agreements not in conflict with or contrary to this Final Order, are fully and finally approved as fair, adequate, and reasonable and in full compliance with all applicable requirements of the Georgia Rules of Civil Procedure, the Georgia and United States Constitutions (including the Due Process Clause), and any other applicable law. The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions, including the Amendment, unless in conflict with this Final Order. Defendant's obligation to provide Settlement Benefits to a class Member is fully, finally and completely satisfied once Defendant causes the Settlement Benefits to be sent by U.S. Mail to the Class Member at the address provided by the Class Member on their claim forms. However, it is understood by all parties and the Claims Administrator that a claim shall not be "dismissed" until said claim is fully inquired into by the Claims Administrator, evaluated, responded to in writing, and an opportunity to be heard by the Claims Administrator regarding the Class Member's position on the benefits determined by the Claims Administrator. However, if a claimant is listed solely in Group 3, with total satisfaction of said claim being a "$50.00 gift card," then in said case further evaluation or inquiry beyond the initial designation in Group 3 would not be warranted. It is the intent of this Final Order that no claims will be "pro-rated" before any funds are allocated to each of said three groups; and, if there are surplus funds

in any one Group, that the surplus funds shall "roll-over" into the remaining Group(s) in order to fully pay all claims in any Group in the amounts finally determined by the Claims Administrator. The order of payment from any Group will have no effect on the requirement that surplus funds be transferred to any Group which has inadequate funds with which to pay the claims.

**10. Claim Process.** Any class member who submitted a timely Claim Form in substantial compliance with the Claims Process sufficient to place Defendant on notice of the existence of said claim shall be entitled to have his or her claim inquired into by the Claims Administrator and, if valid, shall receive the settlement benefits provided pursuant to the Settlement Agreement. Claims not opted out shall be barred by the Release, the Settlement Agreement, the Amendment, and the Final Order and Judgment. Based on the affidavit of the Settlement Administrator, Total Class Solutions, and the presentation and evidence produced at the Fairness Hearing, the Court finds that the claims process, evaluation of claims, and recommendations for payment of benefits is fair and reasonable and further authorizes the Settlement Administrator to continue the claims process and methodology consistent with that which was presented to the Court and with the distribution of benefits to Class Members in accordance with Final Order, including additional documents and provisions incorporated herein.

**11. Binding Effect.** The terms of the Settlement Agreement (and the Amendment) in addition to any new provisions or changes in this Final Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors and assigns, and anyone acting on behalf of Class Members or for their benefit, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings

maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in this action or are otherwise encompassed by the Release. This Court's orders are further entitled to Full Faith and Credit, by federal and state courts and "shall have the same full faith and credit in every court within the United States... as they have by law or usage in the courts of such State... from which they are taken." See Matsushita Elec. Corp. v. Epstein, 516 U.S. 367, 373 (1996); Lawrence v. Household Bank (SB), N.A., 505 F. Supp. 2d 1279, 1283 (M.D. Ala. 2007) (holding that an out-of-state judgment regarding a settlement was entitled to full faith and credit).

12. **Release.** The Release, which is set forth in the Settlement Agreement, is expressly incorporated herein in all respects, except any terms or provisions of same which are in conflict or contrary to this Final Order. Said release is effective as of the date of the Final Order and Judgment. The language of the Release in paragraph 13 of the Settlement Agreement is accepted as valid and enforceable by this Court and the Plaintiffs, Class Counsel, Special Class Counsel, and all other Releasors release and discharge Lowe's Home Centers, Inc. and Lowe's HIW, Inc., and each of their parents, predecessors, assigns, successors, affiliates, related companies, subsidiary companies or holding companies, as well as all of their respective current and former officers, directors, stockholders, employees, agents, attorneys, predecessors, successors, heirs, and assigns from all claims as stated in the Settlement Agreement. The Court further finds that the scope of the release is consistent with applicable law and appropriate in light of the relief offered and the overall terms of the Settlement. See, e.g., In re Corrugated Container, 643 F. 2d. 195,221 (5th Cir. 1981).

13. **Permanent Injunction.** All Class Members who have not been timely

excluded from the Class, and anyone acting on their behalf or for their benefit, are hereby permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the claims and causes of action that have been, may be, or could have been set forth or raised in the Action, the Released Claims, and/or the acts and circumstances relating thereto; and/or (ii) organizing or soliciting the participation of any Class Members in a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit or other proceeding based on or relating to the claims and causes of action that have been, may be, or could have been set forth or raised in the Action, the Released Claims, and/or the acts and circumstances relating thereto. The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the action and to protect and effectuate the Court's Final Order and Judgment. Any person found in contempt of this injunction will be subject to sanctions. Any Releasee who must seek from the Court the compliance of a Releasor who is in violation of this injunction is entitled to reimbursement of his or her or its attorneys' fees, litigation expenses, and costs incurred as a result of seeking such compliance.

14. **Enforcement of Settlement.** Nothing in this Final Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement and the Amendment, nor shall this Final Order and Judgment preclude Plaintiffs or Class Members from participating in the Settlement Administration Process described in the Settlement

Agreement if they are entitled to do so under the terms of the Settlement Agreement.

15. **Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and the Amendment and of this Final Order and Judgment, and for any other purpose reasonably relating thereto. The Claims Administrator shall, within six months of the date the final claim has been administered, file with this Court a full disclosure of the administration of all claims and the sum of all payments provided for under this Final Order.

16. **No admissions.** Neither this Final Order and Judgment nor the Settlement Agreement and Amendment (nor any other document referred to herein) nor any action taken to carry out this Final Order and Judgment is, may be construed as, or may be used as an admission or concession by or against the defendant, the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever. However, this Final Order and Judgment and the Settlement Agreement may be filed in any action against or by the Company or Releasees (as defined in the Settlement Agreement) to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

17. **Dismissal of Action.** This action, including all individual and Class claims resolved in it, is hereby DISMISSED ON THE MERITS AND WITH PREJUDICE against Plaintiffs and all other Class members, without fees or costs to any party except as otherwise provided in this Final Judgment and Order.

Accordingly, pursuant to Ga. Code Ann. § 9-11-54(b), finding no just reason for delay, and upon express direction for the entry of Judgment, it is hereby ORDERED, ADJUDGED and DECREED that FINAL JUDGMENT is hereby entered this 11th day of January, 2012.

_____
Honorable ~~Judge~~ Bobby Peters

We the undersigned have read the foregoing Final Order and do hereby agree as to the form and substance of said Final Order.

(Signature page for all Attorneys to sign)

18

# General Civil Case Final Disposition Form (Non-Domestic)

**Court**  
☑ Superior  
☐ State

**County** MUSCOGEE

**Docket #** SU-10-CV-2267

**Date Disposed** FILED IN OFFICE

2012 JAN 12 AM 9:40

M. LINDA PIERCE
MUSCOGEE COUNTY
SUPERIOR COURT

**Reporting Party** _____
Last   First   Middle I.   Suffix   Prefix   Maiden

**Name of Plaintiff/Petitioner(s)**

Vereen, Alen
Last   First   Middle I.   Suffix   Prefix   Maiden

**Name of Defendant/Respondent(s)**

Lowe's Home Centers Inc
Last   First   Middle I.   Suffix   Prefix   Maiden

**Plaintiff/Petitioner's Attorney**   ☐ Pro Se

_____
Last   First   Middle I.   Suffix

**Bar #** _____

**Defendant/Respondent's Attorney**   ☐ Pro Se

_____
Last   First   Middle I.   Suffix

**Bar #** _____

---

**Type of Disposition** (Check all that apply)

1. ☐ Pre-Trial Dismissal (Specify which type)
   A. ☐ Involuntary
   B. ☐ Voluntary (without prejudice)
   C. ☐ Voluntary (with prejudice)
2. ☐ Pre-Trial Settlement
3. ☐ Default Judgment
4. ☐ Summary Judgment
5. ☐ Transferred/Consolidated
6. ☐ Bench Trial
7. ☐ Jury Trial (specify outcome further)
   A. ☐ Dismissal after jury selected
   B. ☐ Settlement during trial
   C. ☐ Judgment on Verdict
   D. ☐ Directed Verdict or JNOV

---

1. Judgment on Verdict. Was the verdict:
   A. ☐ For Plaintiff(s) [all]
   B. ☐ For Defendant(s) [all]
   C. ☐ Other: (Explain)
   _____
   _____

---

**AWARD**

1. If verdict for Plaintiff, how much was awarded?

   | $ |   | Compensatory |
   |---|---|---|
   | $ |   | Punitive |

2. If verdict on cross or counter claims, how much was awarded?

   | $ |   | Compensatory |
   |---|---|---|
   | $ |   | Punitive |

3. Did the court modify the award?
   ☐ Yes  ☐ No

4. Were attorneys fees awarded?
   ☐ Yes  ☐ No

---

**ADR**

1. Was ADR utilized?
   ☐ Yes  ☐ No

2. If yes, was it (check if applicable)
   ☐ court annexed?
   ☐ court mandated?

3. Did the matter settle after trial for other than judgment? (If known at the time of this submission)
   ☐ Yes  ☐ No

# Muscogee County, Georgia

*I do certify that the within and foregoing is a true and correct copy of the document(s) as appears by the original on file and record in the office of the clerk of Muscogee Co, SUPERIOR / STATE Court*

SU 10 CV 2267-VEREEN VS LOWE'S HOME CENTER

FINAL ORDER AND JUDGMENT

13 April 2012

*Bernice Pitts*
Deputy Clerk, Muscogee SUPERIOR/STATE Court

*M. Linda Pierce*

M. Linda Pierce
Clerk of Superior / State Court
Muscogee County, Georgia

