```
 1                       UNITED STATES DISTRICT COURT
 2                       EASTERN DISTRICT OF LOUISIANA
    **********************************************************************
 3
    IN RE:  CHINESE-MANUFACTURED          Docket No. 09-MD-2047
 4  DRYWALL PRODUCTS LIABILITY            New Orleans, Louisiana
                                          Thursday, October 14, 2010
 5
    **********************************************************************
 6
                  TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
 7              HEARD BEFORE THE HONORABLE ELDON E. FALLON
                       UNITED STATES DISTRICT JUDGE
 8

 9
    APPEARANCES:
10
    FOR THE PLAINTIFF:              HERMAN, HERMAN, KATZ & COTLAR
11                                  BY:  RUSS M. HERMAN, ESQ.
                                    820 O'Keefe Avenue
12                                  New Orleans, LA 70130

13                                  LEVIN, FISHBEIN, SEDRAN & BERMAN
                                    BY:  ARNOLD LEVIN, ESQ.
14                                  510 Walnut Street, Suite 500
                                    Philadelphia, PA 19106
15
    FOR THE DEFENDANT:              FRILOT L.L.C.
16                                  BY:  KERRY J. MILER, ESQ.
                                    Energy Centre - Suite 3700
17                                  1100 Poydras Street
                                    New Orleans, LA 70163-3700
18
    FOR TAISHAN:                    HOGAN LOVELLS
19                                  BY:  JOE CYR, ESQ.
                                    875 Third Avenue
20                                  New York, New York 10022

21  Official Court Reporter:        Karen A. Ibos, CCR, RPR, CRR
                                    500 Poydras Street, Room HB-406
22                                  New Orleans, Louisiana 70130
                                    (504) 589-7776
23

24       Proceedings recorded by mechanical stenography, transcript
    produced by computer.
25
```

```
 1                     P R O C E E D I N G S

 2                  (THURSDAY, OCTOBER 14, 2010)

 3                (STATUS CONFERENCE PROCEEDINGS)

 4

 5      (OPEN COURT.)

 6           THE COURT:  Be seated, please.  Good morning, ladies and

 7      gentlemen.  Call the case, please.

 8           THE DEPUTY CLERK:  MDL No. 2047, in re:  Chinese Drywall.

 9           THE COURT:  Counsel make their appearance for the record.

10           MR. HERMAN:  May it please the court, good morning, Judge

11      Fallon, Russ Herman for plaintiffs.

12           MR. MILLER:  Good morning, your Honor, Kerry Miller on

13      behalf of Knauf entities and the Defense Steering Committee.

14           THE WITNESS:  We're here today for our monthly status

15      conference, I have a full courtroom, several hundred people, and we

16      have an overflow courtroom with an equal amount.  I have several

17      hundred on the phone, and in addition to the attorneys I am pleased

18      to report that I have with me Judge Joseph Farina from the 11th

19      Judicial Circuit Court in Florida and Judge Scott Vowell from the

20      10th Judicial Court in Alabama.

21           The difficulty in these cases in an MDL is often that

22      they're filed both in federal courts as well as state courts

23      throughout the country.  I've been blessed with the help of state

24      court judges who have been very helpful to me.  I've counted on

25      their wisdom, on their suggestions in trying to gather all of the
```

1    cases and move them forward, and I am delighted that Judge Farina

2    and Judge Vowell can be with me today.  Judge Farina and I have

3    been working together now for nearly a year on these cases and I

4    treasure his views and wisdom on these matters, and I appreciate

5    his being here.

6            One of the reasons for this conference is because at my

7    suggestion, as well as the state court judges, the parties have

8    tried to look at this matter globally.  We have been through a

9    number of cases, I've tried or resolved about ten of these cases

10   already, and the parties have had an opportunity to see what

11   results of those judgments have been.  They've listened to the

12   evidence and the state courts have done likewise in their

13   particular areas.  So it's given the parties an opportunity to look

14   at these matters and see whether or not some global resolution

15   could be worked out.

16           And we've got the first step in that global resolution

17   reporting today, so I'll hear from the parties.  First from the

18   plaintiffs.

19           MR. HERMAN:  May it please the court, Judge Fallon, Judge

20   Farina and Judge Vowell.  I am the court appointed liaison counsel

21   for the Plaintiffs Steering Committee in the MDL.  My name is Russ

22   Herman.  I am going to outline the major deal points of a pilot

23   program which we signed off on yesterday at approximately four

24   o'clock.

25           As I understand it, Judge Fallon will post the complete

1   agreement with its exhibits at www.laed.uscourts.gov and you can

2   link to the Chinese drywall from that.  And you can find the pilot

3   program.

4           At inception I want to thank Leonard Davis from my

5   office, lead counsel Arnold Levin and Fred Longer from his office,

6   and Chris Seeger, our lead trial counsel in all of these cases, who

7   represent the negotiating team on behalf of plaintiffs.

8           We learned many of us in law school that two thirds of

9   the world's law today is a civil code law that comes from the Roman

10  civil code and in Louisiana through the French Napoleonic code and

11  the Spanish /HRAS pee a/TES par tee /T*EUZ tissue, and the concept

12  or one concept in that law is the difference between a hope and an

13  expectancy.  With this pilot program we have both a hope and an

14  expectancy that it will work, it needs to be tweaked as we go

15  along, and hopefully can be expanded to all Knauf homes.

16          Primarily the Knauf entities, without admitting

17  jurisdiction or alter ego for any purpose, have entered into a

18  pilot program with the PSC that will remediate up to 300 homes that

19  have substantially all KPT Plasterboard, but plasterboard of no

20  other Chinese manufacturer.  And there are other issues of

21  eligibility.  Those that are predetermined as eligible are listed

22  on Exhibit A to the agreement and it is anticipated that by Monday

23  41 of those homes will begin the remediation process outlined in

24  the agreement.

25          The agreement covers homes in Florida, Louisiana, Alabama

1  and Mississippi.  Currently we know that there are homes in Texas,

2  North Carolina and Virginia that are now affected by Chinese

3  drywall, but they are not included in this agreement.  Suppliers

4  such as Interior Exterior Builders and their insurers, are "other

5  participating companies".  What that means is that those folks are

6  contributing funds to Knauf in order to effect the pilot program.

7  They shall be released to the extent they contribute funds to the

8  pilot program; however, the release is voidable under certain

9  circumstances if the homes are not remediated and indeed the homes

10 require, among other things, a contractor's warranty, the

11 contractor, a major contractor Moss has been fully vetted to

12 perform the pilot program, there will be other contractors down the

13 road.

14        Also the contractor will have to give a certification to

15 the homeowner that there is no Chinese drywall left in the home,

16 that all electrical's been replaced, et cetera, and that there is

17 no odor.  There will also be a qualified environmental inspector

18 who will have to issue a certificate, and following substantial

19 completion, which is defined, the contractor and the homeowner will

20 have a punch list which must be performed, as well as an all clear

21 lien certificate or any liens will be bonded off.

22        Knauf entities stand behind the contractor's performance

23 and warranties.

24        A number of the features of the program are as follows:

25 Removing all drywall, replace -- once a home begins remediation it

 1   must be completed even if other situations are found.  All

 2   electrical wiring, including switches and receptacles, will be

 3   replaced.  Replacement of all fire safety and home security

 4   equipment and low voltage electrical, replacement of fixtures

 5   damaged by problem drywall, restoration of the home to the same

 6   construction quality and finishes that existed prior to the start

 7   of the remediation work, compensation to the homeowner for

 8   alternative living costs, which include move in, move out, storage

 9   and personal property damage in the amount of $8.50 a square foot.

10   A reservation of all rights for any bodily injury and all

11   attorney's fees and expenses to be paid by KPT and not by the

12   homeowner, that would be negotiated on a separate agreement.  If we

13   cannot agree on attorney's fees, it will be submitted to Judge

14   Fallon and Judge Fallon will determine both the fees, expenses for

15   attorneys on contract as well as common benefit fees without any

16   appeals.

17           In the event that there is controversy between a

18   homeowner and a contractor, it will be resolved by a very quick

19   mediation paid 50 percent by each side, that is the homeowner and

20   the contractor, it will be submitted to John Perry and those he

21   selects.  We expect a 24 hour, 48 max turn around.  If the

22   agreement, the master agreement needs interpretation, it will be

23   submitted to binding mediation to John Perry and Knauf and the PSC

24   will pay those costs.

25           There's an additional payment of $1.50 a square foot in

1    the event that remediation is longer than three months.  What do we

2    expect?  We expect that possibly 2,000 to 3,000 homes that could be

3    eligible if this program works.  The PSC has vetted the Moss

4    contractor and is responsible for vetting all of the qualified

5    environmental experts, as well as any substitute contractors.

6           The cost of inspections for environmental certificates,

7    permits under state law, inspections by governmental authorities,

8    et cetera, will be at Knauf's cost.

9           Knauf will escrow 110 percent of the estimated cost with

10   U.S. Bank and under conditions stated in the agreement will release

11   those funds to the contractor in step payments.  All electrical and

12   plumbing subcontractors must be fully licensed.  Work will be

13   warranted by contractor and Knauf.  And the courts will have

14   oversight.

15          We want to thank all of the judges for directing that we

16   proceed to attempt to resolve.  The negotiations with Knauf have

17   been rigorous, professional, at arm's length, and frankly very

18   complex.

19          I want to the negotiators for Knauf, the primary

20   negotiators, Kerry Miller and Greg Wallins for their

21   professionalism and the fact that they have met with us on numerous

22   occasions in New York, Philadelphia, Florida and New Orleans,

23   face-to-face and in addition to that status conferences and

24   updates.

25          We want to thank the CPSC, the Consumer Products Safety

1    Commission, and it's fair to say that Exhibit D to the agreement

2    which gives the general scope of work conforms with the judge's,

3    Judge Fallon's rulings in the *Hernandez v. Knauf* case and the

4    reasons for his judgment as well as the CPSC recommendations for

5    remediation contained in its April release.

6            Lastly, I should have indicated that you need to really

7    look at Exhibit D as to replacement and testing of appliances and

8    that all copper plumbing will be required to be replaced.

9            Your Honor, I thank you for the opportunity to address

10   this.  Kerry Miller, my counterpart, has a statement to make, and I

11   think both of us are available for any questions your Honor might

12   have.

13           THE COURT:  All right, fine.  Judge Farina, I know you

14   have to run.  Can you listen to the defendants or do you have to

15   sign off?

16           JUDGE FARINA:  No, Judge, I am able to listen to

17   Mr. Miller and then I need to be back in my court at 10:30.

18           THE COURT:  Okay.  Fine.

19           JUDGE FARINA:  Thank you so much, and then if I can have

20   a brief thank you opportunity as well.

21           MR. MILLER:  Thank you, Judge Fallon and Judge Farina, I

22   will be quite brief.

23           Mr. Herman's outline presentation is a good summary of

24   the demonstration project that we're going to offer to the court

25   and importantly to homeowners in Louisiana, Mississippi, Alabama

1  and Florida.

2       I would like to start off on behalf of myself and my

3  co-counsel Greg Wallins and also thanking the professionalism shown

4  by Mr. Herman, Arnold Levin, Fred Longer, Lenny Davis and Chris

5  Seeger.  Top notch lawyers, your Honor, a pleasure to deal with

6  them.

7       I would also like to thank, your Honor, from my

8  perspective a pivotal contribution made to this pilot program

9  settlement by Interior Exterior Supply, Louisiana Building Supply

10  Company here in New Orleans.  As the court is aware from the

11  history of the negotiations on this settlement, we initially looked

12  at homes in Louisiana and Mississippi primarily because of the fact

13  that there's a lot more KPT product here than in Florida.  Florida

14  unfortunately presents a quagmire of a lot of mixed homes and real

15  difficulty.

16       But Interior Exterior was a supplier of the KPT board

17  here out of New Orleans and they really stepped up and participated

18  with us in the mediation and is contributing to the settlement of

19  these homes, they've inspected a lot of homes, provided us with a

20  lot of information on those homes, so we want to thank that company

21  and their counsel Mr. Rick Duplantier.

22       Your Honor, other contributing parties to the pilot

23  program include State Farm insurance, QBE Insurance Company Group

24  and Louisiana Builders Indemnity Trust.  Again, they really stepped

25  up, came to mediation, put differences aside and contributed on

1    behalf of their insured builders to this pilot program in Louisiana

2    and Mississippi.

3          Your Honor, to go back to where Mr. Herman started.

4    There's a lot of hope and expectation here.  And the hope and

5    expectation is that this program is going to be expanded and it's

6    going to be expanded through the cooperation that we have with the

7    lawyers for the homeowners and that we've had with Mr. Duplantier

8    and Exterior Interior Supply, that we will have with other

9    suppliers and other home builders.  I can tell you since the word

10   has gotten out about the settlement, I've had a tremendous response

11   from lawyers representing various defendants and insurers that want

12   to participate in this program, that want meet and discuss that

13   participation, so that's very encouraging.

14         Certainly I encourage them to contact us, work with us,

15   we'll have mediations, we'll have meetings.  It's our goal to get

16   as many participants in the program as it involves.  Obviously the

17   issue is we're just dealing with Knauf TMG board, so those are

18   really the only eligibility requirements that Mr. Herman talked

19   about, dealing Knauf Plasterboard Tianjin, and we also need to have

20   a situation where you have a particular home or groups of homes,

21   everyone who was involved in the supply and the building of that

22   home sitting down and talking about dealing with it.  Once we have

23   that in place, your Honor, we think this program can really grow

24   and the foundation is already in place right now.

25         So we're here, ready, willing and able to work with

 1    folks.  John Perry has been a great mediator.  He sat with a number

 2    of us on several occasions over the last six weeks, produced some

 3    good outcomes.  Our mediation sessions have been long, tough, but

 4    they've been productive.  We welcome more sessions.  In fact, we

 5    have one on Monday involving 29 additional homes in the state of

 6    Alabama, so the idea would be after Monday we may be offering

 7    additional Alabama homes into some settlement context and we're

 8    very optimistic about that.

 9            Your Honor, with that I would like to close.  If there

10    are any questions from the bench.  Any bench, either the bench here

11    or the benches that are on the phone, we would be happy to address

12    those questions.

13            THE COURT:  Fine.  From my standpoint I thank counsel.  I

14    know that it's taken a lot of effort to do this, and hopefully this

15    will be a program that as both sides said will be rapidly expanded

16    to include all of Knauf.  Then that'll give the judges an

17    opportunity then to focus on the remaining producer of the drywall

18    Taishan and we'll move forward with their claims and try to

19    expedite those remaining claims.

20            I do again reinforce the concept that this is a joint

21    effort.  I appreciate and am grateful to Judge Farina for all of

22    his work and counsel over this period of time and feel I couldn't

23    have done it without his cooperation and help.  And I look forward

24    to working with Judge Vowell in the future.

25            Judge Farina, would you like to say anything?

```
 1          JUDGE FARINA:  Yes, Judge Fallon, thank you so much.
 2   This is Joe Farina.  I want to echo Judge Fallon's remarks as well
 3   as the lead plaintiff and Defense Steering Committee counsel.
 4   Listen, I am fortunate to be working with and guided by Judge
 5   Fallon throughout these proceedings, and I believe we're all
 6   blessed with his leadership.  A special thanks, if you don't mind,
 7   Judge Fallon, to Victor Diaz who represented the Florida plaintiffs
 8   in the Harrell case; Mr. Todd Erinright, who was involved with
 9   Banner Supply, and I did personally deal with Mr. Kerry Miller and
10   Mr. Greg Wallins and Mr. Don Hayden representing Knauf through some
11   discussions.
12          Again, a special thanks to the Plaintiff and the
13   Defendant Steering Committees on both the federal and the Florida
14   level, as well as my appreciation to the national and local counsel
15   on behalf of Banner, Knauf entities and the insurance companies,
16   and we couldn't do it without John Perry and his extraordinary
17   efforts, and I'm glad he is going to continue to be on board.
18          So I am appreciative, I look forward to this being the
19   beginning of many more successes.  To paraphrase an old saying,
20   success has many parents, and so I am hopeful that we can continue
21   to expand and continue to be successful.
22          Judge Fallon, it has been an honor and a pleasure.
23   Folks, I have to dash off to my trial, but thank you for making all
24   of this possible, each and every one of you.
25          THE COURT:  Thank you, Judge.  Anything from Judge
```

1    Vowell?

2         JUDGE VOWELL:  No, I just appreciate very much being

3    included.  And from a case management viewpoint, I will be in touch

4    with you to see how our state court cases in Alabama can be tied in

5    to this great effort.

6         THE COURT:  Great.  Well, thank you very much Judge

7    Vowell and thank you Judge Farina, I appreciate all of the help

8    that both of you have given to us.

9         JUDGE FARINA:  Our pleasure.

10        JUDGE VOWELL:  Thank you, sir.

11        THE COURT:  Now, we will go into the other aspects of the

12   conference.  I know the judges have other things to do.

13        JUDGE VOWELL:  All right.  Thank you, Judge.

14        THE COURT:  You bet.  Thank you, Judge Vowell.

15        Okay.  We'll take it in the proposed agenda in the order

16   given to me.

17        Pre-trial Orders discussion.

18        MR. HERMAN:  May it please the court, good morning, your

19   Honor, under Pre-trial Orders, your Honor will be presented order

20   1H which has been agreed to by the parties, and that will be

21   submitted to your Honor for consideration later today.  Other than

22   that, all of the pre-trial orders, of which there are 24 and some

23   subparts, are listed on your Honor's web site.

24        With regard to Property Inspections, there's nothing new

25   other than the fact that the other eligible homes can be qualified

```
 1    through inspections under the agreement reached in the pilot

 2    program.

 3              Under Plaintiff and Defendant Profile Forms, there's

 4    nothing new, other than we have been advised that I'll say

 5    generically Taishan, quote end quote, will be providing the

 6    Defendants Manufacturers Profile Form and filing it today.

 7              Under your Honor's Preservation Order, there's nothing

 8    new.

 9              Under State/Federal Coordination, as far as we're

10    advised, there's nothing new.  There are state court cases --

11              THE COURT:  Dawn, do you have anything on that?

12              MS. BARRIOS:  Yes, your Honor, I do, thank you.  Thank

13    you, Judge Fallon, Dawn Barrios for the State Steering Committee.

14    We have for you our usual discs that will lay out all state cases

15    of which we are aware of the contact information and pending

16    motions in the various cases.

17              I would like to use this opportunity to ask all counsel

18    who are listening to this conference to please alert either the

19    defense or the plaintiff state steering committee dealing with

20    state cases.  If you know of anything, please alert either one of

21    us so that we can provide the information to Judge Fallon.  Our

22    contact information is on the web site.

23              Through PTO No. 19 we have all remands that are current,

24    there have been no CTOs filed since the last status conference.  We

25    have received notice from Mr. Gonzales that Judge Farina has
```

1   ordered a case set for trial on January 10th, 2011, the *Alvarez v.*

2   *Banner Supply* in Miami Dade, and I have a copy that I will give to

3   Lexy of the order setting it for trial.

4           I'd like to thank both Galloway Johnson and Minor Pipes

5   for assisting me in putting all of these CD's together.

6           THE COURT:  Dawn, Judge, get with Judge Vowell and I told

7   him you would be talking to him about making sure that he has some

8   representative on your committee so that you can keep him advised

9   because he is going to be moving fast in the case.

10          MS. BARRIOS:  Certainly, your Honor.  And Judge Vowell, I

11  will be happy to contact you today.

12          MR. HERMAN:  I want to apologize to Dawn, I also want to

13  indicate, your Honor, that we had some notice yesterday that

14  Taishan had filed a jurisdictional motion for hearing, which was to

15  be heard today in Alabama.  We'd appreciate in the future since

16  Taishan is before your Honor that they provide us in advance with

17  any motions that they're going to file and have heard in state

18  court.

19          THE COURT:  I talked to Judge Vowell about that and

20  hopefully we'll get those motions, and he is going to be in touch

21  with the judge before whom that matter was set and see if we can

22  coordinate it.

23          MR. HERMAN:  Your Honor, with regard to State Court Trial

24  Settings, the *Harrell* trial is scheduled to commence December 1st,

25  2010.  The Virginia cases are now set, were set in January,

1    February and now are off the calendar.  However, they are listed,

2    these particular cases are listed at page 6 of your Honor's

3    pre-trial order.

4           With regard to Trials, I think it's fair to say that

5    without your lightening docket and the fact that *Germano* was tried

6    and the *Hernandez* case was tried, your Honor set two other cases

7    for trial, we would not be where we are today.

8           Motions committee has communicated with the court's

9    directive regarding Pre-Trial Order 1G and the potential for

10   amendment to that order, and they're being addressed by the motions

11   committee.

12          With respect to Discovery Issues.  It should be clear,

13   may it please the court, to everyone who is listening to these

14   proceedings that discovery and litigation against Knauf continues

15   and will continue till this ultimate resolution.  To that end, the

16   Stuermer continuation deposition is tomorrow in New York City.

17   Professor Hummel, the research and science director for Knauf, his

18   deposition is October 19th and October 20th in New York.  The

19   Norris deposition is November 11th and November 12th in Hong Kong.

20   The Robson deposition is November 17th and 18th in London.  The

21   Isabel Knauf deposition is December 7th and December 8th in

22   Germany.  And Director Grundke's deposition is set for December

23   15th and December 16th in Germany.

24           Both of those depositions will occur in Frankfurt at the

25   Frankfurt office of Kaye Scholer, the London deposition will be the

1   at London office of Kaye Scholer, and the deposition notices

2   reflect dates, times, et cetera.  And I believe that we have not

3   posted them on your Honor's web site but we shall so that everyone

4   will have notice.

5         Your Honor, the Taishan Gypsum depositions are a matter

6   of discussion and potential argument before your Honor.

7         THE COURT:  Okay.

8         MR. HERMAN:  At this time I would like to present, as

9   briefly as I can, the PSC's position as to why these depositions

10  must go forward and why written discovery must go forward.

11        Taishan was served in *Germano* cases.  That service cost

12  $100,000 a pop.  To say that the Haig Convention is a horse and

13  buggy and we're in an international economy is an understatement.

14  Every time Taishan has been served it's been 100,000 a pop.  We had

15  a very expensive trial, expensive for the court, the court's time,

16  expensive for the attorneys that were involved.  Your Honor had

17  seven cases before your Honor, those cases cost about $1 million to

18  try, Taishan never appeared, even though they were served.

19        A legitimate default in our view was taken, your Honor

20  rendered a legitimate government.  Taishan has now appeared.  We're

21  very pleased that they're here, we welcome Taishan's counsel, they

22  are excellent attorneys.  They contest jurisdiction and by

23  inference alter ego, and we have claimed that the People's Republic

24  of China actually and BNBM which we understand was served

25  yesterday, and CNBM are actually the puppets of an alter ego.

1    We want discovery.  We think we're entitled to discovery.

2    They may contest jurisdiction, but we're certainly entitled to

3    discovery on jurisdiction and alter ego, and we ask that it go

4    forward and that it be accelerated under your Honor's aegis as the

5    MDL judge designate.

6    I believe that failing puts our issues in a context, and

7    either Mr. Stanley, local counsel, or Mr. Cyr are present, I'm sure

8    that --

9    THE COURT:  This is a motion to lift the stay on the

10   class certification in *Germano*, and I'll hear from the other side.

11   Let's make your appearance and tell us who you represent.

12   MR. CYR:  Thank you, your Honor.  My name is Joe Cyr and

13   I am with Hogan Lovells, and we represent Taishan.  Thank you very

14   much, your Honor, it's a privilege to be before you.  I will try to

15   address the couple of issues that are before you with respect to

16   Taishan as briefly as I can.

17   I think it is important though for the record and for

18   others to appreciate that we appeared on behalf of Taishan within a

19   few months after the default judgment was entered.  You and I and

20   Mr. Stanley had an opportunity to confer.  You made it very clear

21   to me that you expected Taishan to proceed expeditiously, even

22   though you did show some sensitivity to the position that we were

23   in and that our client does not have any representatives that speak

24   English and that we were new to the case and that it would be a

25   real challenge.  And I promised you that we would do everything we

 1    could to get up to speed on the case as soon as possible.

 2             We've had two groups of lawyers go to China already

 3    investigating the facts, as well as educating our client through

 4    interpreters with respect to the U.S. judicial system and

 5    everything that's going on here.  And as I mentioned to you in a

 6    call, there was a likelihood that we were going to attempt to move

 7    to vacate the default judgment in *Germano*, which was one of the few

 8    cases in which Taishan Gypsum has been served.

 9             And after our investigation we decided to do two things:

10    One, we appealed to the Fifth Circuit and that divested this court

11    of jurisdiction.  But at the same time, we moved to vacate the

12    default judgment.

13             And as your Honor knows, that does provide this court

14    limited jurisdiction to do one of three things under 62.1:  The

15    first to defer the motion to vacate the default judgment.  To grant

16    the default judgment -- I'm sorry, the second is to deny; and then

17    the third is to grant or indicate to the Fifth Circuit that there

18    is a substantial issue.  And if the court does indicate to the

19    Fifth Circuit that there's a substantial issue, then the Fifth

20    Circuit can remand for the purpose of allowing the court to

21    continue to address the default judgment.

22             And so under those circumstances, Judge, respectfully,

23    we're just all dealt with the very real fact that this court's

24    jurisdiction is limited.  And you recognize that when you denied

25    our motion to actually have our brief, excess pages, you said you

1    lacked jurisdiction to do that and you were right about that.

2          And so point number one, and I have other points that I

3    want to make briefly, is that the court actually doesn't have

4    jurisdiction to order the discovery requested.  Nor does it have

5    jurisdiction to entertain the motion for class certification while

6    this case is on appeal.  It can only do the things that I've

7    mentioned under Rule 62.1.

8          But I would rather in addition to that just offer this,

9    your Honor, the one thing -- and please, I don't mean to preach to

10   anybody in this courtroom -- but representing a Chinese company I

11   am very sensitive to the international comedy issues and the

12   expectations that they have that we go by the rules.  And one of

13   the rules, of course, is that you do proceed under the Haig

14   Convention.

15         And by the way, just for the record, the default judgment

16   was based on the second amended complaint in *Germano* which was

17   never served on Taishan, nor was the motion to intervene on behalf

18   of the intervening plaintiffs that obtained that default judgment

19   rather than the named plaintiffs.

20         Our company asked the court that we go by the rules and

21   the rules require us that it's not an accident what 62.1 does.  The

22   rules require that we go step by step.  Now, we've moved based on

23   the facts that we've investigated, Judge, for vacation of the

24   default judgment in this case as well as in *Mitchell* because we

25   believe that the appropriate, that the relevant courts lack

1    personal jurisdiction and we filed all of the papers in that

2    regard.

3            And by the way, I apologize for not notifying the PSC

4    with respect to the motion before the Alabama court, and we will

5    make a serious effort to always coordinate any activities we have

6    going on in the state.

7            But again, just for the record, is that Taishan Gypsum

8    manufactured some drywall in 2006 and 2007 and all of that drywall

9    was sold in China to distributors that were covered by arbitration

10   agreements.  And they have no expectation whatsoever that they were

11   going to purposely avail themselves of the state markets of any

12   particular state in the United States.  And I, also, I know this is

13   a very positive day for a lot of people that are involved with all

14   of the Knauf negotiations for the past year, but since I have these

15   brief moments, I have to say, your Honor, is that based on our

16   investigation and our discussions with the client, they absolutely

17   do not understand why their high quality drywall allegedly emitted

18   excessive amounts of hydrogen sulfide.  They don't understand the

19   causation issues.  We are not right behind Knauf in any kind of

20   settlement negotiations, even if the court finds that it has

21   personal jurisdiction.  I wanted to be upfront with you about that.

22           THE COURT:  Sure, okay.  I understand.

23           MR. CYR:  I have just a couple of other things to say,

24   your Honor.  One is that, as I mentioned to you in the phone call

25   in June, and I am not trying to be critical because I know how

these things happen, but in the gross class action the PSC named I

think approximately 20 subsidiaries who have been served,

subsidiaries of Taishan.  Now, our investigation, as I told you,

revealed that these subsidiaries are spread throughout this very

huge country of China and that they have nothing to do at all with

the drywall that was manufactured in China that apparently was

distributed to some extent in the United States and found its way

into some homes.  And we see no good faith basis for including

those subsidiaries in the gross complaint.

I suspect that they were added because somebody went on

Google, did a web site, saw a whole bunch of subsidiaries and threw

them in the complaint.  Again, I am not trying to be preaching,

your Honor, but we are not the only country that thinks you should

have a good faith basis for suing somebody before you sue them.

And then the second point of that is:  It's very unfair

then to then require those subsidiaries to subject themselves to

discovery, offer declarations, declaring their innocence unless the

first step is taken and that is that the PSC demonstrates the

answer to this question:  What was the good faith basis for suing

those companies?  We've tried to have this discussion with them

because we join your Honor in wanting to narrow the issues.  We

know what the companies are that manufacturer drywall that

eventually was distributed into the United States by others, we

want to address the personal jurisdiction issue, and if the court

finds that Taishan is subject to personal jurisdiction and Taishan

```
 1   is in the lawsuit, that's the first step and then we go to the next
 2   step.
 3            Thanks for your time.
 4            THE COURT:  Thank you very much for your time.
 5            MR. HERMAN:  Your Honor, just a brief response statement,
 6   and Mr. Levin has a brief statement.
 7            While learned counsel was sending lawyers to China who
 8   couldn't speak Chinese, his client was on a web site in English
 9   that said that it did business in the United States of America.  We
10   think that there should be no delay in going forward with
11   jurisdiction and alter ego discovery.
12            In terms of good faith, we're not subject to
13   cross-examination at this time, but we believe that we've acted in
14   very good faith given the non-appearance of Taishan after they were
15   served.
16            THE COURT:  Okay.  Thank you very much.
17            MR. LEVIN:  Does your Honor want to hear a response?
18            THE COURT:  I really don't need to.  I understand the
19   issue.
20            MR. LEVIN:  I wanted to give one but I didn't think you
21   wanted to hear one.
22            THE COURT:  I understand the issues.  I make no decision
23   on jurisdiction, that's another issue.  But both sides ought to
24   have a right to at least look into this matter.  I think counsel
25   for Taishan makes a point about he's interested in why some of his
```

1    individual companies or why the individual "subsidiaries" are

2    brought into the litigation, I think he has a right to discover

3    that and pursue that with the plaintiffs.  He should know why.

4         But likewise, I think the plaintiffs ought to have a

5    right to discover whether or not they have jurisdiction over it.

6    To the extent of lifting the stay to permit discovery, particularly

7    on jurisdiction, I am going to do so for those reasons.

8         Let's move onto the next.  I have in addition several

9    motions before me, the motions to enjoin the state court in Georgia

10   from proceeding further.  The case has taken a different turn now.

11   Under the law that's developed, until there is some *** rees or

12   program, settlement program, it's very difficult for federal courts

13   to enjoin any state court from proceeding.

14        The situation has changed now, I am involved in a rees,

15   it is a settlement program, a pilot program, but it is a settlement

16   program.  And so I am very conscious of protecting that particular

17   program.  So I really do now have to take a look at whether or not

18   it is appropriate for the federal court to act on that to protect

19   its jurisdiction and protect its program.

20        So I am going to set the motion within ten days to

21   determine whether or not to enjoin the state court in Muskogee

22   County.  I'll take briefs on that particular.  I'll check my

23   calendar and set it sometime within the next ten days alerting all

24   of the parties.

25        The other motions for class certification of the Florida

1    homeowners class for claims against Banner and claims against other

2    Florida homeowners against Knauf, it seems to me that both of those

3    should be delayed.  I am going to delay moving on those for at

4    least 30 days and I will talk with you all about that at the next

5    conference.

6             I really want everybody to put their attention and all of

7    their resources into making this pilot program work.  I think

8    everybody is looking at this pilot program.  If it works then this

9    may be an avenue to resolve this whole matter globally, and it's

10   going to take a lot of effort to get this matter off the ground and

11   I don't want to distract the parties with other matters.

12            There's a motion for leave to amend third-party complaint

13   in the Vickers.  I am going to grant that motion, I think that it's

14   essential for me to get all of the people before me.  That doesn't

15   mean they're going to stay there, but I want them present so that

16   they can at least speak for their respective interests, so they can

17   participate to the extent they wish to participate.  If they're not

18   a party, they can't, they're a spectator.  When they're a party,

19   they're a participant and they can actively advocate for their

20   client.  Again, doesn't mean that they're going to stay in it, they

21   may well get out and they may get out quickly, but at least they

22   ought to be given an opportunity to participate and I see that by

23   allowing an amendment not third-party complaint, so I am going to

24   grant that.

25            Are there any motions that I haven't dealt with?  Lowe's

 1   Home Centers opposition to plaintiff's motion intervening *Gross*.

 2             MR. HERMAN:  No further motions.  I do want --

 3             MR. LEVIN:  I do.  Excuse me, your Honor, I seldom push

 4   Russ aside, he's pretty difficult to push aside.  We filed

 5   intervention claims and you granted them, and there's another set

 6   that's pending that we haven't moved for, we just filed.  Lowe's

 7   objected to being named in that intervention complaint because of

 8   the All Writs Act that was pending.  You did not grant the Lowe's

 9   intervention at that time.  So it's hanging there and I guess it

10   should hang there until we deal with the all writs.

11             THE COURT:  Yes.  And by all writs that means enjoining a

12   particular state court.  It's an All Risk Act and that's what we're

13   talking about.

14             MR. HERMAN:  He pushed so hard I'm bruised.  Your Honor,

15   two things on discovery:  We're continuing to negotiate various

16   discovery issues with Knauf; secondly, following this conference

17   there is an issue that involves a Banner Supply subpoena.

18             Your Honor, it's listed at page 12, there is no Freedom

19   of Information Act pending.

20             The Trial Settings under 10, your Honor has already

21   stated and it's in the status report.

22             Nothing new in terms of Filings in the MDL.

23             Nothing new on the notices of appearance and default

24   judgment.

25             That brings us to 13 insurance issues.  There is an issue

1   brought by Robert Pate as trustee for the Chinese Drywall Trust,

2   motion to compel.  Mr. Steckler has been handling those issues, he

3   is in court, and I suggest your Honor may want to hear that after

4   this conference.

5           THE COURT:  Sure, I'll do that afterwards.

6           MR. HERMAN:  Nothing new on Service of Pleadings

7   Electronically.

8           Nothing new under item 15, Master Complaint.

9           Mr. Levin has already addressed class action complaints

10  and indeterminate defendants, and it is spelled out; as well as in

11  No. 17 along with a class action complaints to be posted on your

12  web site, there really is nothing new to really discuss there.

13          Nothing new under article 18 regarding special master.

14  As far as the court appointed mediator, again we want to

15  acknowledge John Perry and his good offices in helping us reach a

16  pilot program.  The Knauf Gips KG, personal jurisdiction matter was

17  already addressed at page 8.

18          Section 8, nothing new under item 20.  Database

19  management.

20          Nothing new under frequently asked questions that have

21  again been posted at www.laed.uscourts.gov/drywall/faq.htm.  Knauf

22  attorneys Mr. Wallins and Kerry Miller and Arnold and myself and

23  Chris will attempt to have some additional Q and A's regarding the

24  pilot program to submit to your Honor for potential posting on the

25  web site.

1          Your Honor has under item 22 detailed the various motions

2     and determinations as to those motions.

3          Under item 23 motion to establish a Plaintiff's

4     Litigation Expense Fund that's deferred.

5          Your Honor has under consideration the re-appointment

6     and/or appointment of members of the Plaintiff's Steering

7     Committee.

8          There is under item 25 a mediation schedule in Alabama,

9     as Mr. Miller, Kerry Miller originally indicated it's October 18th

10    in New Orleans and it is in regard to a significant number of

11    Alabama properties.

12         THE COURT:  Kerry, keep me advised of that.  If you need

13    me in any event, give me a call and I'll get to it.

14         MR. HERMAN:  I believe that Mr. Levin for the PSC is

15    going to attend that mediation.

16         Regarding class certification motions, they're pending.

17    And really there has been no determination of when those matters

18    have been set.  And as I understand it, it's the court's directive

19    that they be continued for at least 30 days.

20         THE COURT:  Right.

21         MR. HERMAN:  With regard to the Lowe's settlement, your

22    Honor has addressed that issue, that's at page 25, it's item 27.

23         And, your Honor, the next status conference is what

24    remains.  I don't know if Mr. Miller --

25         THE COURT:  The next status conference is December the

```
 1    2nd, and I'll meet with the parties again, lead counsel at 8:30 and

 2    the open court at nine o'clock.

 3            Does Knauf have anything to anything to add to any of

 4    this, Kerry?

 5            MR. MILLER:  No, your Honor, I think that's it for today.

 6    We thank the court.

 7            THE COURT:  Okay.  All right.  The other matter that we

 8    have talked about or that's listed is in the Harrell matter and the

 9    parties will discuss that.  It's the court's urging that that

10    matter be resolved so that we can integrate it into the program and

11    give everybody an opportunity to be equally treated.

12            MR. MILLER:  Your Honor, since we ended a little bit

13    earlier today, we're prepared to discuss that matter right now in

14    your Honor's courtroom.

15            THE COURT:  That's fine.  So I'll ask counsel for Harrell

16    to meet with the parties here, get me involved in it if you need

17    me.  I know that Judge Farina's also interested in having this

18    matter resolved, and I am confident that I would like somebody from

19    the PSC to participate in those conferences.

20            MR. HERMAN:  We'll participate, your Honor.  I want to

21    point out that PSC and Knauf are in New York beginning tomorrow for

22    virtually a week and it may be an opportunity if those matters

23    aren't resolved that perhaps John Perry could be notified and in

24    the event it's okay with Victor's schedule maybe we could resume

25    there.
```

1          THE COURT:  I hope it's not necessary to resume, I hope

2     that you all before you leave today will resolve it, that's my

3     strong hope.

4          All right.  Folks, thank you very much.

5          MR. HERMAN:  Thank you, your Honor.

6          THE COURT:  The court will stand in recess.

7          THE DEPUTY CLERK:  Everyone rise.

8        (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

9

10                    *  *  *  *  *  *

11

12                    REPORTER'S CERTIFICATE

13

14       I, Karen A. Ibos, CCR, Official Court Reporter, United States

15     District Court, Eastern District of Louisiana, do hereby certify

16     that the foregoing is a true and correct transcript, to the best of

17     my ability and understanding, from the record of the proceedings in

18     the above-entitled and numbered matter.

19

20

21                    _____

22                    Karen A. Ibos, CCR, RPR, CRR

23                    Official Court Reporter

24

25