# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** <br> **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** <br> **ALL CASES AND** | **JUDGE FALLON** <br> **MAG. JUDGE WILKINSON** |

*Payton, et al. v. Knauf Gips, KG, et al.*
Case No. 2:09-cv-07628 (E.D. La.)

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*
Case No. 2:10-cv-00361 (E.D. La.)

*Gross, et al. v. Knauf Gips, KG, et al.*
Case No. 2:09-cv-06690 (E.D. La.)

*Rogers, et al. v. Knauf Gips, KG, et al.*
Case No. 2:10-cv-00362 (E.D. La.)

*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
Case No. 2:11-cv-00252 (E.D. La.)

*Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
Case No. 11-cv-1363 (E.D. La.)

*Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
Case No. 11-cv-2349 (E.D. La.)

*Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
Case No. 11-cv-3023 (E.D. La.)

*Vickers, et al. v. Knauf Gips KG, et al.*
Case No. 2:09-cv-04117 (E.D. La.)

*Silva, et al. v. Interior Exterior Building Supply, LP, et al.*
Case No. 09-08030 (E.D. La.)

*Silva, et al. v. Arch Insurance Company, et al.*
Case No. 09-08034 (E.D. La.)

*Amato, et al. v. Liberty Mutual Ins. Co.*
Case No. 2:10-cv-00932 (E.D. La.)

*Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
Case No. 2:11-080 (E.D. La)

*Hernandez, et al. v. AAA Insurance, et al.*
Case No. 2:10-cv-03070 (E.D. La.)

*Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
Case No. 2:11-cv-01077 (E.D. La.)

**ORDER AND JUDGMENT: (1) CERTIFYING THE INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENT CLASSES; AND (2) GRANTING FINAL APPROVAL TO THE INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENTS**

Upon consideration of the Motion of the Plaintiffs' Steering Committee (the "PSC") and Settlement Class Counsel for certification of five settlement classes and final approval of the class settlements with (1) Interior Exterior Building Supply, LP ("InEx") and its insurers[1] (the "InEx Settlement"); (2) the Banner entities[2] and their insurers[3] (the "Banner Settlement"); (3)

---

[1] InEx's Insurers that have entered into a class settlement with the PSC include Arch Insurance Company ("Arch") and Liberty Mutual Fire Insurance Company ("Liberty").

[2] The Banner entities include: Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC, Banner Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International, LLC, and any other entity insured under the Banner Insurance Policies (collectively, "Banner").

[3] Banner's Insurers include: Chartis Specialty Insurance Company (formerly known as "American International Specialty Lines Insurance Company"), Illinois National Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa., Commerce & Industry Insurance Co., and any other sister entities or entities related to the foregoing or to American International Group, Inc. (collectively, "Chartis"); FCCI Insurance Company, FCCI Commercial Insurance Company, National Trust Insurance Company, FCCI Mutual Insurance Holding Company, FCCI Group, Inc., FCCI Insurance Group, Inc., Monroe Guaranty Insurance Company, FCCI Services, Inc., FCCI Advantage Insurance Company, Brierfield Insurance Company, FCCI Agency, Inc. (collectively, "FCCI"); Hanover American Insurance Company and Hanover Insurance Group, Inc. (collectively, "Hanover"); and Maryland Casualty

L&W Supply Corporation ("L&W") and USG Corporation (the "L&W Settlement"); (4) the Knauf Defendants[4] (the "Knauf Settlement"); and (5) more than 700 additional Participating Builders, Suppliers, and Installers ("Participating Defendants"),[5] and their Participating Insurers ("Participating Insurers")[6] (together the "Global Settlement"), it is hereby,

ORDERED, ADJUDGED AND DECREED that:

1.  Capitalized terms used in this Order and Judgment shall have the same meaning as those defined in the Amended InEx Settlement Agreement [Rec. Doc. No. 12258-3], the Amended Banner Settlement Agreement [Rec. Doc. No. 10033-3], the Amended Knauf Settlement Agreement [Rec. Doc. No. 15742-2], the L&W Settlement Agreement [Rec. Doc. No. 13913-3], and the Amended Global Settlement Agreement [Rec. Doc. No. 15695-2], which have been filed of record in this case.

2.  The Motion of the PSC and Settlement Class Counsel for Final Approval of the InEx, Banner, Knauf, L&W, and Global Settlements and Certification of the InEx, Banner, Knauf, L&W, and Global Settlement Classes is GRANTED.

3.  Unless otherwise specified, the InEx, Banner, Knauf, L&W, and Global Settlements will be governed by the laws of Louisiana.

---

Company, and all companies in the Zurich North America group of insurance companies (collectively, "Maryland Casualty").

[4] The Knauf Defendants include: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[5] The list of Participating Defendants is attached hereto as Exhibit 1.

[6] The list of Participating Insurers is attached hereto as Exhibit 2.

2

4. The InEx Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

5. The Court finds that the InEx Settlement is fair, reasonable, and adequate, that the InEx Settlement was entered into in good faith and without collusion, and that the InEx Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

6. The Class Release provided in Section 4.3 of the InEx Settlement is approved.

7. As of the Effective Date of the InEx Settlement, the Released Claims as defined in Section 4.1 of the InEx Settlement will be released as to the InEx Settling Defendants.

8. Any and all InEx Class Members, including, but not limited to, those who have not properly opted out of the InEx Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the InEx Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

9. The Court finds that, upon transfer of the Insurance Proceeds to the Escrow Account by Arch and Liberty pursuant to Section 12 of the InEx Settlement, the aggregate limits of the Arch Policies and the Liberty Policies are exhausted.

10. The Court finds that the Assignment of Insurance by InEx to the Non-Louisiana Subclass is valid, binding, and enforceable.

11. The Court finds that the indemnity, defense and judgment reduction provisions in Section 4.3 of the InEx Settlement are valid, binding, and enforceable.

12. Notwithstanding any other provision of the InEx Settlement or of any other document (including any other provision that purports to be governing or controlling over other

provisions), the InEx Settlement does not release any claims or defenses whatsoever that any InEx Class Member who opted out from this Settlement may have. In the event an InEx Class Member opted out from the InEx Settlement, all parties reserve all claims, defenses, and coverage positions against that InEx Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out InEx Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that InEx Class Member.

13. The Banner Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

14. The Court finds that the Banner Settlement is fair, reasonable, and adequate, that the Banner Settlement was entered into in good faith and without collusion, and that the Banner Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

15. The releases attached in Exhibits D, E(1), E(2), E(3), F and G of the Banner Settlement are approved.

16. Any and all Banner Class Members, including, but not limited to, those who have not properly opted out of the Banner Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the Banner Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

17.     Other than to enforce any term of the Banner Settlement, no person or entity may use or refer to any aspect of the Banner Settlement in any litigation in which any Banner Insurer is a party.

18.     The Banner Settlement shall not constitute a waiver of any coverage defense or position taken by any Banner Insurer related to Chinese Drywall and no Banner Insurer shall be estopped from raising any coverage issue or defense by reason of the Banner Settlement.

19.     Florida law shall govern the interpretation of all Banner Insurers' policies issued to Banner.  The Court finds that by entering the Banner Settlement, each Banner Insurer has acted in good faith and fairly, reasonably, and honestly towards Banner and any actual and/or potential Banner Class Members and with due regard for Banner and any potential Banner Class Members' interests regarding Chinese Drywall.

20.     The Banner Settlement by the Banner Insurers, being in good faith, upon the Settlement becoming Final, precludes Banner and any actual and/or potential Banner Class Member from asserting a bad faith claim against any Banner Insurer.

21.     Notwithstanding any other provision of the Banner Settlement or of any other document (including any other provision that purports to be governing or controlling over other provisions), the Banner Settlement does not release any claims or defenses whatsoever that any Banner Class Member who opted out from this Settlement may have.  In the event a Banner Class Member opted out from the Banner Settlement, all parties reserve all claims, defenses, and coverage positions against that Banner Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out Banner Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that

person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that Banner Class Member.

22. The Knauf Settlement Class and Subclasses are certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

23. The Court finds that the Knauf Settlement is fair, reasonable, and adequate, that the Knauf Settlement was entered into in good faith and without collusion, and that the Knauf Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

24. The Class Release provided in Section 5.2 of the Knauf Settlement is approved.

25. As of the Effective Date of the Knauf Settlement, the Released Claims as defined in Section 5.1 of the Knauf Settlement will be released as to the Knauf Defendants and Other Releasees.

26. Any and all Participating Class Members in the Knauf Settlement are enjoined and forever barred from commencing and/or maintaining any action, legal or otherwise, against the Knauf Defendants and Other Releasees arising out of, or otherwise relating to, KPT Chinese Drywall.

27. The Court finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4, 5.2.5 and 5.2.6 of the Knauf Settlement are valid, binding, and enforceable; and therefore, the Court bars the assertion by any entity or person against the Knauf Defendants and Other Releasees of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning (i) the KPT Chinese Drywall claims against the Knauf Defendants and Other Releasees or (ii) this Settlement.

28. Non-Knauf Class Members and Knauf Class Members who opt out under Section 8 of the Knauf Settlement are enjoined from seeking or obtaining any recovery against or from, or seeking to execute or otherwise exercise remedies against the Pledged Assets, the Mortgaged Property, the Knauf Investment Assets, and the Replacement Security, and any proceeds thereof, which asset(s) have been procured by the Knauf Defendants in furtherance of the Knauf Settlement for the benefit of the Knauf Settlement Class.

29. The L&W Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

30. The Court finds that the L&W Settlement is fair, reasonable, and adequate, that the L&W Settlement was entered into in good faith and without collusion, and that the L&W Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

31. The Class Release provided in Section 5.1 of the L&W Settlement is approved.

32. As of the Effective Date of the L&W Settlement, the Released Claims as defined in Section 5.1 of the Knauf Settlement will be released as to L&W and USG.

33. Any and all Participating L&W Class Members are enjoined and forever barred from commencing and/or maintaining any action, legal or otherwise, against USG and L&W arising out of, or otherwise relating to, L&W Supplied KPT Chinese Drywall or any drywall manufactured by KPT.

34. The Court finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4 and 5.2.5 of the L&W Settlement are valid, binding, and enforceable; and therefore, the Court bars the assertion by any entity or person against USG and L&W of any contribution, indemnification, subrogation, or other claims arising out of (i) the Participating L&W Class Members' L&W Supplied KPT Chinese Drywall Claims or (ii) this Settlement.

35.     Notwithstanding any other provision of the L&W Settlement or of any other document (including any other provision that purports to be governing or controlling over other provisions), the L&W Settlement does not release any claims or defenses whatsoever that any L&W Class Member who opted out from this Settlement may have.  In the event an L&W Class Member opted out from the L&W Settlement, all parties reserve all claims, defenses, and coverage positions against that L&W Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out L&W Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that L&W Class Member.

36.     The Global Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

37.     The Court finds that the Global Settlement is fair, reasonable, and adequate, that the Global Settlement was entered into in good faith and without collusion, and that the Global Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

38.     The Court finds that the indemnity, defense and judgment reduction provisions in Sections 4.3 and 5.2.6 of the Global Settlement are valid, binding, and enforceable; and therefore, bars the assertion by any Global Settlement Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims.

39. Any and all Global Settlement Class Members, including, but not limited to, those who have not properly opted out of the Global Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

40. Other than as it relates to Reserved Claims or Assigned Claims in the Global Settlement, or to enforce any term of the Global Settlement, or as to insurance matters concerning depletion or exhaustion of one or more policies of insurance, or prior compensation for a claimed loss or set-off, no person or entity may use or refer to any aspect of the Global Settlement in any litigation in which any Participating Defendant or Participating Insurer is a party.

41. The Global Settlement shall not constitute a waiver of any coverage defense or position taken by any Participating Defendant and/or its insurers, whether a Participating Insurer or not, related to Chinese Drywall and no insurer, whether a Participating Insurer or not, shall be estopped from raising any coverage issue or defense by reason of the Global Settlement. In addition, any payment by a Participating Insurer as set forth in Section 4 of the Global Settlement, shall not be considered a confession of judgment or trigger any obligation to pay attorney's fees under Florida Stat. 627.428 or any other fee shifting statute in any state.

42. Except for any Reserved Claims referenced in Section 5.6.3 of the Global Settlement, the Court finds that by entering this Settlement, each Participating Insurer has acted in good faith and fairly, reasonably, and honestly towards its insured Participating Defendant, and any actual and/or potential Global Settlement Class Members and with due regard for the

9

Participating Insurer's Participating Defendant, and any potential Global Settlement Class Members' interests regarding Chinese Drywall.

43. Except for any Reserved Claims referenced in Section 5.6.3 of the Global Settlement, the Court finds that the actions and positions of the Participating Insurers, being in good faith, upon the Global Settlement becoming Final, precludes any Participating Defendant and any actual and/or potential Global Settlement Class Member from asserting, maintaining or assigning any statutory and/or common law bad faith claim against any Participating Insurer.

44. The Global Settlement shall not constitute a waiver or release by any Participating Defendant or Participating Insurer of any claims or defenses related to any actual or alleged obligations under a policy of insurance that such Participating Defendant or Participating Insurer may have against any person or entity, including another Participating Insurer, in any manner related to or connected in any way with the Chinese Drywall claims of Global Settlement Class Members who opt-out of the Global Settlement.

45. The Court finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

This _____ day of _____, 2012, at New Orleans, Louisiana

_____
ELDON E. FALLON
United States District Court Judge