**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CIVIL ACTION NO. 09-2047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | JUDGE FALLON |
| _____ | ) | |
| This Document Relates to: | | MAGISTRATE WILKINSON |
| ALL CASES | | |

**MEMORANDUM IN SUPPORT OF INTERIOR EXTERIOR'S FIFTH MOTION *IN LIMINE* REGARDING ROSEMARY COATES**

MAY IT PLEASE THE COURT:

Defendants, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("Interior Exterior") moves this Court for an order *in limine* prohibiting the plaintiffs from presenting any opinion testimony from Rosemary Coates on the grounds that (1) she is not qualified to render any such opinions by her knowledge, skill, experience, training, or education; (2) she relies on unverified opinions of another expert; and (3) her opinions are not reliable pursuant to the doctrines set forth in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**BACKGROUND**

As the Court is keenly aware, plaintiffs have asserted a redhibition claim against Interior Exterior arising out of the sale by Interior Exterior of Chinese-manufactured drywall ("CDW"). The relevant inquiry for this trial is whether Interior Exterior knew, or in the exercise of reasonable care in light of known facts, should have known of the off-gassing of sulphur defect in the CDW.

The PSC intends to introduce the testimony of Rosemary Coates to try and establish that Interior Exterior should have known of the defect in the drywall because they should have done additional due diligence prior to its purchase of Chinese drywall, including taking the following actions:

1.   Evaluating the manufacturing site in China;

2.   Requiring additional testing (of an indeterminate kind) at the manufacturing site;

3.   Visiting the gypsum mine in China.

Essentially, what Ms. Coates opines is that Interior Exterior should have taken extreme measures prior to the distribution of CDW; in the form of visiting the Chinese manufacturing site and conducting tests  at gypsum mine in China and/or conducting some form of destructive testing on the CDW.

Moreover, relying exclusively on the testimony of a non-testifying expert, Lydia Luckevich, Ms. Coates intends to testify that allegations that the Chinese drywall were heavier and more brittle than domestic drywall should have suggested to Interior Exterior that further testing was warranted.  The problem, however, is that Ms. Coates is totally unqualified to of offer these opinions, and furthermore she relies on material that is either inaccurate or not verified by admissible evidence.


**LEGAL STANDARD**

The standards are well established for the admission or exclusion of expert testimony pursuant to the United States Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Under Rule 702 of the Federal Rules of Evidence, an expert qualified by "knowledge, skill, experience, training, or education" is allowed to give testimony where his or her "scientific, technical, or other specialized knowledge will assist the

trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589. In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [should be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

In order to be admissible, the testimony offered must rise above the level of "subjective belief" or "speculation," which means that the reasoning or methodology underlying the testimony must be scientifically valid (i.e., "reliable"). *See Sorensen*, 31 F.3d at 649; *see also Daubert*, 509 U.S. at 590. Rule 702 requires that expert opinion testimony be rendered by a qualified expert, based upon reliable data and methodology. *Hathaway v. Bazany*, 507 F.3d 312, 317 (5th Cir. 2007); *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 514 (E.D. La. 2002). The trial court has the responsibility of determining, under Rule 104(a), whether the expert's proposed testimony is reliable and helpful under Rule 702. *Daubert*, 509 U.S. at 589.

> When evaluating expert testimony, the overarching concern is whether or not it is relevant and reliable. A party seeking to introduce expert testimony must show "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting Fed. R. Evid. 702) (citation omitted). The court should "make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). When conducting its review, the court must also consider whether the facts and data relied on by the expert are those facts "of a type reasonably relied on by experts in the particular field" under Rule 703. *Id.* at 589-90. Finally, while opinions formed for litigation are not automatically unreliable, courts recognize that research conducted

independently of litigation is less easily tailored to serve a party's interests. *Robinson*, 923 S.W.2d at 559; *see also Daubert*, 43 F.3d at 1317.

The burden is on the proponent of the evidence to demonstrate that the expert is qualified and his/her testimony is based upon a reliable foundation. *See e.g., Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The focus of the court's inquiry is on the reasoning and methodology of the expert, and not simply his or her final conclusion. *Daubert*, 509 U.S. at 595. However, conclusions and methodology are not entirely distinct from each other. *General Electric Co. v. Joiner*, 118 S. Ct. 512, 519 (1997); *see Lust*, 89 F.3d at 598. Nothing in the Rules or the *Daubert* decision requires a district court to admit evidence that is connected to the existing data only by the subjective claim of the expert. *Joiner*, 118 S. Ct. at 519. Where the data or studies relied on by an expert simply do not support the ultimate opinion offered or are so dissimilar to the actual facts that the expert could not have relied on them, the expert's testimony is properly excluded. *Id.* Further, where the assumptions made by an expert are not supported by the record, the expert's methodology is subject to a rate of error that is too high to be allowed before the jury. *See Sorensen*, 31 F.3d at 649.

## ARGUMENT

**1.     Rosemary Coates is not qualified to render the opinions proffered.**

Ms. Coates is not qualified to render the opinions set forth in her report or in her deposition by her knowledge, skill, experience, training, or education. Ms. Coates admits as much in her deposition. Ms. Coates purports to offer testimony on the intended use of a product (drywall), and the actions that should be taken by a building products distributor (Interior Exterior) at the time the product was sold. Yet, she admits she has no education, training, or

experience in manufacturing this type of product, or even in similar products. Also, she has no education, training, or experience in the construction or engineering fields.

Ms. Coates education, training, and experience are solely related to supply chain management. However, She has no education and/or experience as a distributor, instead her experience relates to the development of "supply chain strategy." (Deposition of Rosemary Coates, October 30, 2012, page 11, lines 12 to 13, attached hereto in globo as Exhibit 1). While in the right situation Ms. Coates may be qualified to render an opinion on the ***logistics***[1] of supply chain, these are not those circumstances. Ms Coates has no experience with the manufacturing of drywall, as detailed by her own testimony:

Q. But you have no experience with the gypsum manufacturing process at all; is that right?
A. Only manufacturing process, not – not particularly gypsum; yes.
Q. You have never observed the gypsum manufacturing process in the United States?
A. No, I have not.
Q. Have you done any analysis of the differences in the gypsum manufacturing process from domestic manufacturers versus Chinese manufacturers?
A. No. That's not this focus of what I was asked to do in this case.
(Deposition of Rosemary Coates, October 30, 2012, page 127, lines 18 to 25 and page 128, lines 1 to 4, attached hereto in globo as Exhibit 1).

Ms. Coates has never been retained to assess the cause of a building product defect, as that falls out of her expertise:

Q. Have you ever been paid to assess why a building product was defective?

---

[1] Ms. Coates is typically hired to consult about the distribution "process" and not on quality control of the actual manufacturing process and the resulting defects. Those issues are better left to an expert in the actual product.

Q. You cannot make a determination about whether a product is defective or not, can you?
A. I rely on experts for that.
Q. You rely on others for that?
A. Yes.
Q. You just talk about the process?
A. Yes.
Q. Is that correct?
A. Yes.
(Deposition of Rosemary Coates, October 30, 2012, page 76, lines 5 to 13 and, attached hereto as Exhibit 1).

A.   No.  This is the first time.
(Deposition of Rosemary Coates, October 30, 2012, page 40, lines 12 to 14, attached hereto in globo as Exhibit 1).

Ms. Coates lack of substantive qualifications as an expert in distribution in the United States, which is the specific business of Interior Exterior and the issues which are the subject of this trial, was highlighted by her lack of any published research on the issue:

Q.  How about distribution once the product has been imported?  Have you written any articles in that regard?
A.   Into the U.S.?
Q.  Yes.
A.  No.
                                        * * *
Q.  Have you ever written any articles about the distribution of Chinese products in the United States?
A.   No.
(Deposition of Rosemary Coates, October 30, 2012, page 44, lines 3 to 9 and lines 16 to 19, attached hereto in globo as Exhibit 1).

While she has been retained by companies that perform some distribution function, she has never worked for a company that is a classic distributor such as Interior Exterior. Moreover, the one experience she could point to from the distribution perspective related to Lumber Liquidators[2], which occurred in early 2012, and therefore cannot form the basis of her opinions about what may have transpired in 2005 as it relates to Interior Exterior.

Simply put, Ms. Coates  is not qualified to render any opinions relevant to whether the product is defective, whether Interior Exterior had sufficient information about the product or whether additional testing should have been done by Interior Exterior. Any experience she has is based solely on unreliable and unsubstantiated knowledge passed on to her without a proper understanding of the design, mechanics, or technical details of the product.   This is a technical case, and she admits that he does not have the technical expertise.

---

[2] Lumber Liquidators is also not an appropriate comparison as they were doing MANUFACTURING in China, and then distribution of its own products. They were not buying already manufactured products and re-selling them similar to a classic distributor

2.      **Rosemary Coates's opinions are not reliable.**

Ms. Coates's testimony fails all three prongs of the test for reliability:  (1) her testimony

is not based on sufficient facts or data, (2) her testimony is not the product of reliable principles

or methods, and (3) she has not applied the principles and methods reliably to the facts of this

case.

### a. *The sufficiency of the facts or data.*

Ms. Coates actually has no data to support he opinions, as she has no experience with

drywall of any kind. More importantly, she has never actually even seen the drywall in person.

> Q.  Have you ever actually seen the Chinese drywall?
> A.  I've seen photographs of it.
> Q.  Have you ever seen a piece of drywall – of Chinese drywall in person?
> A.  Not that I know of.
> Q.  Have you asked?
> A.  No.

(Deposition of Rosemary Coates, October 30, 2012, page 134, lines 12 to 19, attached hereto in globo as Exhibit 1).

Indeed, she readily admits that she has no idea if there is any difference between the

manufacturing of drywall in the  United States versus China:

> Q.  Can you tell me whether drywall manufactured in the United States by U.S. Gypsum is different than drywall manufactured by National Gypsum in the United States?
> A.  No.

(Deposition of Rosemary Coates, October 30, 2012, page 53, lines 24 to 25, page 54, lines 1 to 3 attached hereto in globo as Exhibit 1).

### b. *Reliable principles or methods.*

The lack of reliable methods utilized by Ms. Coates is marked by one very important and

incorrect statement she made, which forms the very basis of her opinions in this case. Her

opinions are based in large part on complaints that were raised that the CDW was heavy. Ms.

Coates asserts that the relevant ASTM standards for the manufacturing of drywall contain a

weight range. She testified as follows:

Q.   Well, do you know if there's an ASTM standard for weight of drywall?
A.    I think there are ranges for weights.
Q.   You think there's a range?
A.   I believe so.
(Deposition of Rosemary Coates, October 30, 2012, page 161, lines 11 to 15, attached hereto in globo as Exhibit 1).

Ms. Coates is wrong. And this Court does not have to take our word for it. Even the PSC's own expert, Dean Rutila, begrudgingly admits that there are no ASTM standards that have a maximum weight allowance for drywall.[3]  Thus, she has no reliable basis for her opinion that complaints about the weight of the drywall should have led Interior Exterior to perform investigation and testing of the board's compliance to ASTM.

But her opinions lack support and reliable data for other reasons. Ms. Coates was unable to provide ASTM Standards that were applicable in 2005 and 2006, the time period relevant to this litigation. Instead she was relying on standards that were published in 2009, years after Interior Exterior ceased even selling the drywall. (See Exhibit 2, ASTM standards relied upon by Rosemary Coates). Her testimony on this issue is highly illustrative:

Q.   Do you know if you actually reviewed the ASTM standards that were applicable to the manufacturing of drywall in 2006 or from a year ago?
A.   I don't know.  I just don't know.  It was a long time ago when I – when I bought that off the website, so I'm not sure.
(Deposition of Rosemary Coates, October 30, 2012, page 58, lines 4 to 9, attached hereto in globo as Exhibit 1).

Q.   I want to make sure that you know that you are actually referring to the correct standards.
A.   Okay.
Q.   And so do you know if you actually reviewed the standards that were applicable to the manufacturing of drywall in 2006?
A.   I don't know.
(Deposition of Rosemary Coates, October 30, 2012, page 59, lines 11 to 17, attached hereto in globo as Exhibit 1).

---

[3] Deposition of Dean Rutila.

This Court should not allow an expert to testify when the expert is unable to even tell us if the standards she relies upon applies to the defendant in this case at the time of sale. This lack of reliable data is exactly the reason *Daubert* was established.

### c. *Application of the principles or methods to the facts of the case.*

Ms. Coates has no understanding of the legal standards that apply to this case. She has readily acknowledged that she is unfamiliar with Louisiana law as it applies to Interior Exterior, and such analysis would be outside of her expertise.

> Q.  But your opinions are based upon what someone importing goods from China should be doing from your perspective, correct?
> A.  Correct.
> Q.  Okay, And as far as what Louisiana Law may or may not require, that's outside of your expertise, correct?
> A.  That's outside of my expertise, correct.
> (Deposition of Rosemary Coates, October 30, 2012, page 174, lines 2 to 9, attached hereto in globo as Exhibit 1).

> Q.  Do you know what the law is applicable to this case?
> A.  The law with respect to what, distribution, respect to --
> Q.  The liability of my client, Interior/Exterior Building Supply?
> A.  I have a very cursory understanding.
> Q.  You have not studied the law as it relates to my client?
> A.  I have not, no.
> Q.  You do not know what the law is as it relates to my client, do you?
> A.  Well, that's a big question.  The law as it relates – you mean in this case for --
> Q.  Correct.
> A.  – what the case is base on?
> Q.  Correct.
> A.  No.  I couldn't articulate that.

(Deposition of Rosemary Coates, October 30, 2012, pages 94-95, lines 14 to 6, attached hereto in globo as Exhibit 1).

To make matters worse, when Ms. Coates attempts to use her limited knowledge and apply it to this case, she either does not know about relevant evidence or refers to evidence that simply does not exist. For example, Ms. Coates is unaware that ASTM tests were actually run on some of the CDW sold by Interior Exterior. On two occasions, representatives of U. S Gypsum,

without informing Interior Exterior, purchased CDW from the company. U.S. Gypsum then had

the CDW tested for compliance with the applicable ASTM standards, and it passed. (see Exhibit

3). Ms. Coates either forgot this information, or more likely was never provided a copy of these

tests by the PSC because they directly contradict the very foundation of her opinions.

> Q.  Were you aware that this drywall was, in fact, tested?
> A.  I don't believe it was tested.
> Q.  You don't believe it was tested?
> A.  I don't think so.
> Q.  You haven't seen any test reports, then, with regard to the drywall that was imported
form China?
> A.  I think they gave some certificates, but I don't know that there was any test results
form those certificates.

(Deposition of Rosemary Coates, October 30, 2012, page 113, lines 24 to 25, page 114, lines 1 –
9,  attached hereto in globo as Exhibit 1).

Ms. Coates also tries to claim that the heaviness of the drywall was a sign of the sulphur

defect. In support of her opinions, she refers to the deposition testimony of two different

witnesses – Ray Stoltz and Ben Diano.

> Q.  Well, what information do you have that the Chinese drywall was heavier than
certain brands of domestically-manufactured drywall?
> A.  Oh, the testimony from a number of people in this case, the depositions.
> Q.  Who has said that it was heavier than all domestically-manufactured drywall?
> A.  Well, Ray Stoltz comes to mind.  He was one person.  I'd have to – let me see.  I'll –
can I refer to my report/  Do you mind?
> Q.  Sure.
> A.  Because there were a number of people who worked in the warehouse who said it
was heavier and more difficult to handle.  Ben Diano.  Let's see.  It was one other guy.  Mark
Peterson referred to it as having different physical differences.  So several people in their
depositions reported that the drywall was heavier and caused problems in delivery to customer
sites, as well as handling within the warehouse.

(Deposition of Rosemary Coates, October 30, 2012, page 87, lines 20 to 25, page 86, lines 1 to
14, attached hereto in globo as Exhibit 1).

The problem with her reliance of this testimony is that it does NOT exist. Mr. Stoltz did not

testify about the use of CDW, instead the subject of his testimony was solely on the issue of

elephant board, not CDW. Mr. Stoltz simply had no experience with CDW. (See exhibit 4,

Deposition excerpts of Ray Stoltz). Her reliance on Mr. Diano's testimony is even more incredulous since Mr. Diano died several years ago, without ever having been deposed.

An expert who does not have full access to the evidence, and an refers this Court to both inaccurate and non-existent evidence should be rejected.

> ### d.   Rosemary Coates 's opinions parroting the opinions of Lydia Luckevich are not reliable or admissible.

Lastly, Ms. Coates entire supplemental report and most of her opinions are based on the report of Lydia Luckevich. Ms. Coates admitted that she relied on Luckevich's report to support the fundamental basis of her opinions that the complaints that the drywall was heavy and brittle should have led Interior Exterior to conduct further analysis and testing of the CDW. Under Federal Rule of Evidence 703, an expert may base an opinion on inadmissible evidence if the facts or data are of the kind reasonably relied upon by experts in the field. However, an opinion based on such facts or data may only be disclosed to the jury if their probative value outweighs any prejudicial effect they may have.   Fed. R. Evid. 703. If the underlying information is admitted under this balancing test, but is otherwise inadmissible, the trial judge must give a limiting instruction upon request.   *See Sinclair v. State Farm and Cas. Co.*, No. 09-447, 2010 WL 81506778, p. *4 (E.D.La. Feb. 10, 2010).

With regard to the reliability inquiry, Rule 703 of the Federal Rules of Evidence permits experts to rely on information that otherwise would not be admissible, including hearsay evidence so long as the information is of the type reasonably relied on by experts in his field. Fed. R. Evid. 703; *Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 94 (2d. Cir.2000) ("[A]n expert may rely on data that [he] did not personally collect."); *Bryan v. John Bean Division FMC Corp.,* 566 F.2d 541, 545 (5th Cir.1978) ("The modern view in evidence law recognizes that experts often rely on facts and data supplied by third parties."). **Nevertheless, Rule 703 does**

not allow "the wholesale adoption of another expert's opinions without attempting to assess the validity of the opinions relied on." *Lightfoot v. Hartford Fire Ins. Co.*, CIV.A. 07-4833, 2011 WL 39010 (E.D. La. Jan. 4, 2011).  *See also, Threet v. Correctional Health Care Mgmt of Okla., Inc.,* No. 07–843–HE, 2009 WL 3335596, at *5 (W.D.Okla. Oct. 15, 2009).

In *Threet v. Correctional Health Care Management of Oklahoma, Inc.,* the court excluded the plaintiff's expert from testifying because the expert did not conduct any independent investigation and relied solely on a DOJ Report as the basis for some of his opinions. *Threet,* 2009 WL 3335596, at *5–6. Notwithstanding the expert's impressive credentials, the court concluded that the expert's opinions were inadmissible under *Daubert* because the expert lacked a reliable basis for his opinions. *Id.; see also TK–7 Corp. v. Estate of Barbouti,* 993 F .2d 722, 732 (10th Cir.1993) ("[T]he fact that [the expert] relied upon the report did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report.").

Likewise, in *JRL Enterprises v. Procorp Associates, Inc.,* Your Honor precluded the plaintiff's expert from testifying because the expert failed to conduct any independent research to determine the reliability of his assumptions, and merely adopted figures calculated by another expert. 2003 WL 21284020, at *8. This Court reasoned that the expert's testimony was inadmissible because the expert failed to demonstrate that the other expert's opinions and figures were reliable. *Id.* at *7–8.  Similarly, in *Bracco Diagnostics, Inc. v. Amersham Health Inc.,* Judge Wolfson of the District Court of New Jersey held that two of the proffered experts were not allowed to testify because they failed to conduct any independent investigation to refute the opinions offered by the plaintiff's experts. 627 F.Supp.2d 384, 449–50 (D.N.J.2009).

In addition to reliability, reliance on the opinions of others must pass the standards set forth in *Daubert.  Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 691 (5th Cir. 1997)*; see also,*

*Sinclair v. State Farm and Cas. Co.*, No. 09-447, 2010 WL 81506778, p. *4 (E.D.La. Feb. 10, 2010).   "Just as *Daubert* rejected the general acceptance standard as too narrow for Rule 702, Rule 703 should not be reduced to the similarly narrow inquiry of whether experts in the field customarily rely on data of the general type in question."   *Id.*   Courts have identified several "objective earmarks of reasonable reliability" for evaluating the bases of expert opinions under FRE 703.   *Id.*   Some of the factors used in this determination are:

1) Was the basis published or documented in some other form?[4]
2) Was the basis subjected to peer review?
3) Was the expert's basis derived from sources that were impartial?[5]
4) Was the basis complete and logically sufficient?
5) Was the basis disclosed to the adverse party before trial?
6) Was the opinion more than just a summary of another expert's opinion?[6]
7) Was the opinion more than just a summary of inadmissible evidence?[7]
8) Do most experts in the field rely on data of the type in question?

This approach of refusing to allow an expert to simply wholesale adopt the opinions of another expert has been endorsed across the Federal circuits.   In *In re TMI Litigation*, 93 F.3d 613, 715-16 (3rd Cir. 1999),  the United States Court of Appeal for the Third Circuit found that "the expert's methodology was flawed when he relied entirely on another expert's report."   Similarly, in *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993), the United States Tenth Circuit held that an expert's lack of familiarity with the methods and the reasons underlying the projections of another individual upon which the expert based his own opinion "virtually precluded any assessment of the validity of the projections through cross-examination…" The expert's testimony that was based on those projections was therefore

---

[4] *See Soden v. Freightliner Corp.*, 714 F.2d 498, 503 (5th Cir. 1983).
[5] *See Soden*, supra; *U.S. v. Marine Shale Processors*, 81 F.3d 1361, 1370 (5th Cir. 1996); and *U.S. v. Trang Trong*, 18 F.3d 1132, 1143-44 (4th Cir. 1994)(opinions based on reports specifically prepared for litigation are not necessarily of a type reasonably relied upon); *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987)(expert's testimony was "no more than [plaintiff's] testimony dressed up and sanctified as the opinion of an expert.").
[6] *Id. See TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993)(expert damages testimony excluded when expert was unable to show that opinion upon which his opinion was based was reliable).
[7] *Id.*

excluded. The court cited a United States Seventh Circuit case, *In re: James Wilson Associates*, 965 F.2d 160, 173 (7th Cir. 1992), for the admonition that "[t]he judge must make sure that the expert isn't being used as a vehicle for circumventing the rule against hearsay." *TK-7*, 993 F.2d at 732-33.  FRE 703 "implicitly requires that the information be viewed as reliable by some independent, objective standard beyond the opinion of the individual witness." *Id.*

Ms. Coates is clearly in violation of the standards discussed above. She simply adopts the report of Luckevich without verification and is not capable of providing any independent oversight of Luckevich's opinions. It is clear that in this matter she simply adopted the opinions of another, Lydia Luckevich, who is not allowed to testify, as her own.

Q.  You're not a chemist, are you?
A.  I am not.
Q.  You don't have any training in chemistry or chemical engineering, do you?
A.  I do not.
Q.  You do not hold yourself out as an expert in the field of chemistry or chemical analysis or any product, do you?
A.  I do not.  I rely on other experts for that information.
Q.  You cannot - - you're not qualified to asses the accuracy of the opinions of a chemist, are you?
A.  The accuracy.  Well, once an expert has established themselves as an expert in that area, I rely on their reports.
Q.  All right.  But you can't make an assessment of the validity of their report, can you?
A.  No.
Q.  You're not qualified or trained to do -  - to perform any type of chemical testing, are you?
A.  No.
Q.  You can't actually perform any chemical testing, can you?
A.  No.
Q.  Or any testing of the makeup of a product; is that correct?
A.  Correct.
Q.  You - - so if an expert is incorrect about something that you're relying upon, you cannot tell us whether - - what they're incorrect - - strike that.
If an expert that you're relying upon in the field of chemistry, for example, is - - makes an inaccurate statement, you don't  -- you can't tell whether it's correct or not; is that right?
A.  That's correct.
Q.  You have to simply rely upon the expert completely in their opinions?
A.  Yes.
(Deposition of Rosemary Coates, October 30, 2012, page 48, lines 3 to 25, page 49, lines 1  to 18, attached hereto in globo as Exhibit 1).

Federal Rule of Evidence 703 prohibits the parroting of another's opinion as one's one without the independent analysis and determination.  While she suggests that her opinions were through independent analysis, it is clear that she simply copied Ms. Luckevich's inadmissible report and relies on it without even attempting to verify the accuracy or reliability of her opinions. She should not be allowed to testify concerning those opinions.

To the extent Mr. Coates testimony is nothing more than a summary of Ms. Luckevich's uncorroborated testimony, FRE 703 requires that he be prohibited from offering such opinions.

## CONCLUSION

Because Rosemary Coates is not qualified and her opinions are not reliable, she should not be allowed to offer any expert opinions in this matter.  For this reason, Interior Exterior requests that this Court issue an order *in limine* prohibiting the defendants from presenting any opinion testimony of Rosemary Coates.

Respectfully submitted,

**_Richard G. Duplantier, Jr.   /s/_**
Richard G. Duplantier, Jr. (# 18874)
Lambert J. Hassinger, Jr. (# 21683)
Benjamin R. Grau (#26307)
Carlina C. Eiselen, (# 28524)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802 / Fax:  (504) 525-2456
rduplantier@gjtbs.com /jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com
*Counsel for Defendant, Interior Exterior Building Supply,*
*L.P. and Interior Exterior Enterprises, LLC*

**<u>Certificate of Service</u>**

The undersigned certifies that this document has been served on Plaintiffs' Liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 12th day of November, 2012.

<u>*Richard G. Duplantier, Jr.   /s/*</u>
RICHARD G. DUPLANTIER, JR.