UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CIVIL ACTION NO. 09-2047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | JUDGE FALLON |
| _____ | ) | |
| This Document Relates to: | | MAGISTRATE WILKINSON |
| ALL CASES | | |

MEMORANDUM IN SUPPORT OF INTERIOR EXTERIOR'S
THIRD MOTION *IN LIMINE* REGARDING DEAN RUTILA

MAY IT PLEASE THE COURT:

Defendants, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("Interior Exterior") move this Court for an order *in limine* prohibiting Plaintiffs from presenting any opinion testimony by Dean Rutila as to whether Interior Exterior should have performed testing on the Chinese-manufactured drywall because it was allegedly mislabeled according to ASTM standards and any opinion identified in his rebuttal report on the grounds that (1) he is not qualified to render any such opinions by his knowledge, skill, experience, training, or education; (2) his opinions are not reliable pursuant to the doctrines set forth in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and (3) pursuant to Federal Rule of Evidence Rule 703, he cannot adopt as his own opinion, without independent testing and confirmation, the opinion of another witness who has not been allowed to testified.

## BACKGROUND

The relevant inquiry for this trial is whether Interior Exterior knew, or in the exercise of reasonable care in light of known facts, should have known of the off-gassing of sulfur defect in the Chinese-manufactured drywall. Plaintiffs have presented Dean Rutila as an expert, who has proffered the following opinions:

(1) That because the Chinese-manufactured drywall was not properly labeled, Interior Exterior should have further tested the drywall;

(2) That because of the mislabeling coupled with the drywall being manufactured in China, Interior Exterior should have questioned the suitability of the drywall and should have done further testing of the product;

(3) That because Interior Exterior received "cautionary" advice about the quality of the Chinese-manufactured drywall; they should have done further testing of the product;

(4) That because the test reports certifying the drywall met ASTM standards did not allegedly match the drywall's labeling, Interior Exterior should have done further testing of the product.

Dean Rutila is a professional engineer and Senior Principle with a Simpson Gumpertz & Heger an engineering firm. As a professional engineer, his expertise is in building-envelope systems.[1] Within the last four years his deposition testimony has been limited to defects and issues involving: roof leakage; water leakage and brick veneer construction; water leakage; roofing shingles; construction of exterior walls; roofing shingles; structural defect, mechanical defect, exterior envelope defect; and exterior envelope leakage; roofing, deck waterproofing, exterior assembly performance.[2]  His stated expertise is as follows:

> I, Dean A. Rutila, Senior Principal with Simpson Gumpertz & Heger Inc. (SGH), have a B.S. and M.S. in Civil Engineering from the University of Michigan (1979). I have over 30 yrs experience in the design and construction of buildings including wood framed homes, and in the investigation and repair of deteriorated buildings with complex causes and multiple system failures. These failures include moisture and chemical related corrosion of iron and copper components, contaminated gypsum wallboard, soil and airborne chemical contaminants. Examples include copper roofing deterioration due to nearby combustion of high sulfur fuel, and phenolic acid induced corrosion of steel, corrosion of galvanized and resin-coated structural connectors and copper electrical components (routine

---

[1] See Exhibit A, Dean Rutila's CV.
[2] See Exhibit B, Deposition of Dean Rutila, pages 22-26.

requirement at leaking buildings), removal and replacement of gypsum wallboard with fungal contamination (e.g. Polk County Courthouse), and contaminated soil, and liquid and gas deterioration of membranes and building materials (common consideration for below-grade waterproofing and moisture vapor resisting systems). My experience includes organizing and directing multi-disciplinary teams of SGH staff scientists and engineers, and other consultants to investigate complex building failures, design repairs, and evaluate repair options for cost effective solutions. I have investigated many homes with problem Chinese drywall.

Consistent with the above statement, Mr. Rutila has been admitted as an expert in the Chinese drywall litigation as to the effect that some Chinese-manufactured drywall off-gassed sulfur gases which corroded numerous building components and must be replaced. Mr. Rutila, however, now oversteps the gradient from opining that the Chinese-manufactured drywall off-gasses sulfur gases to opining that Interior Exterior should have investigated and tested the product before selling it.

Specifically, Mr. Rutila intends to offer the following opinion:

INEX failed to adequately respond when it received advice of quality issues and when it received drywall that did not match test reports and that did not meet required standards. INEX should have further investigated and resolved these problems. Having not done so, INEX passed by an opportunity to avoid importing defective materials. As a result, INEX let pass an early opportunity to identify the problems with Chinese manufactured drywall.

Mr. Rutila, however, is not an expert in distribution and sales of building materials and should not be allowed to testify as to those standards. He has never worked for a building material supplier, distributor, or manufacturer. He has not studied and is not learned on the roles and responsibilities of a building material supplier, distributor, or manufacturer. He has no expertise to render any opinions on the standard of care applicable to Interior Exterior in this case.

## **LEGAL STANDARD**

The standards are well established for the admission or exclusion of expert testimony pursuant to the United States Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under Rule 702 of the Federal Rules of Evidence, an expert qualified by "knowledge, skill, experience, training, or education" is allowed to give testimony where his or her "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589. In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [should be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

In order to be admissible, the testimony offered must rise above the level of "subjective belief" or "speculation," which means that the reasoning or methodology underlying the testimony must be scientifically valid (i.e., "reliable"). *See Sorensen*, 31 F.3d at 649; *see also Daubert*, 509 U.S. at 590. Rule 702 requires that expert opinion testimony be rendered by a qualified expert, based upon reliable data and methodology. *Hathaway v. Bazany*, 507 F.3d 312, 317 (5th Cir. 2007); *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 514 (E.D. La. 2002). The trial court has the responsibility of determining, under Rule 104(a), whether the expert's proposed testimony is reliable and helpful under Rule 702. *Daubert*, 509 U.S. at 589.

> When evaluating expert testimony, the overarching concern is whether or not it is relevant and reliable. A party seeking to introduce expert testimony must show "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting Fed. R. Evid. 702) (citation omitted). The court should "make certain that an expert, whether basing testimony

upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  When conducting its review, the court must also consider whether the facts and data relied on by the expert are those facts "of a type reasonably relied on by experts in the particular field" under Rule 703. *Id.* at 589-90. Finally, while opinions formed for litigation are not automatically unreliable, courts recognize that research conducted independently of litigation is less easily tailored to serve a party's interests.  *Robinson*, 923 S.W.2d at 559; *see also Daubert*, 43 F.3d at 1317.

The burden is on the proponent of the evidence to demonstrate that the expert is qualified and his/her testimony is based upon a reliable foundation. *See e.g., Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).  The focus of the court's inquiry is on the reasoning and methodology of the expert, and not simply his or her final conclusion. *Daubert*, 509 U.S. at 595.  However, conclusions and methodology are not entirely distinct from each other.  *General Electric Co. v. Joiner*, 118 S. Ct. 512, 519 (1997); *see Lust*, 89 F.3d at 598. Nothing in the Rules or the *Daubert* decision requires a district court to admit evidence that is connected to the existing data only by the subjective claim of the expert.  *Joiner*, 118 S. Ct. at 519.  Where the data or studies relied on by an expert simply do not support the ultimate opinion offered or are so dissimilar to the actual facts that the expert could not have relied on them, the expert's testimony is properly excluded.  *Id.*  Further, where the assumptions made by an expert are not supported by the record, the expert's methodology is subject to a rate of error that is too high to be allowed before the jury.  *See Sorensen*, 31 F.3d at 649.

Moreover, Federal Rule of Evidence Rule 703 may exclude expert opinions where the expert failed to conduct any independent research to determine the reliability of his assumptions.

*See JRL Enterprises, Inc. v. Procorp Associates, Inc.*, No. Civ. A. 01-2893, 2003 WL21284020 (E.D. La. June 2, 2003).

## <u>ARGUMENT</u>

**1.      Dean Rutila is not qualified to render his opinions.**

Although, Mr. Rutila is an engineer and he has previously been admitted as an expert in Chinese drywall litigation to opine that some Chinese drywall off-gases sulfur gases, which subsequently corrodes building components, and must be removed and replaced, he has no specialized knowledge, skill, experience, training, or education that would assist the trier of fact in determining whether or not Interior Exterior should have known of the latent defect at the time it re-sold the drywall to customers.  The ultimate inquiry for the upcoming trial is in redhibition, but specifically - whether or not Interior Exterior knew of the defect at the time it re-sold the drywall to Plaintiffs.  Plaintiffs rely on Mr. Rutila for the opinion that Interior Exterior should have investigated and tested the drywall before sale, and having not done so, Interior Exterior missed an opportunity to not import a defective product into the United States.  Besides not being relevant to the specific inquiry at issue in this trial, Plaintiffs cannot establish that Mr. Rutila is an expert in the standard of care applicable Interior Exterior in regards to investigating and testing building materials that it sells.  These are opinions for distribution and import experts not an engineer with experience in the design and construction of buildings and in the investigation and repair of deteriorated buildings.

Mr. Rutila has issued two reports for this trial.  The first was issued on September 21, 2012 and is largely identical to his previous reports issued in other Chinese drywall matters, in that he opines that the Chinese-manufactured drywall corrodes certain building components.  These opinions, however, have been rendered moot by the parties' stipulations and/or are not germane to the trial.  But his September report goes further to present an opinion that because the

Chinese drywall was allegedly mislabeled and was from China, Interior Exterior should have done further testing. Additionally, his second report dated October 17, 2012 was issued as a rebuttal report only after Interior Exterior submitted its expert reports, and deviates further from Mr. Rutila's specialty to provide further bases for why Interior Exterior should have performed testing and investigation of the Chinese-manufactured drywall.

Mr. Rutila's experience and specialty is in building curtain wall windows cladding, waterproofing, and roofing, but not distribution and product importation. Mr. Rutila is a professional engineer, but he has no experience in working for a distributor or gypsum manufacturer.[3] His career is concentrated on building-envelope systems.[4]

The opinions for which he was originally tendered and presumably qualified to render – the corrosive effect of Chinese-manufactured drywall – are no longer relevant in this case. However, when Plaintiffs discovered that they were not properly prepared to address the expert opinions of Interior Exterior's experts, Dr. Tonyan, an expert in the ASTM testing of drywall and the standard of care for drywall distributors, and Dr. Tompkins, an expert in the standard of care for a distributor of foreign manufactured products, Plaintiffs scrambled to bootstrap Mr. Rutila into an expert that he is not. Simply put, Mr. Rutila has no "personal observations, professional experience, education and training" to qualify him as an expert on the what a building material distributor should or should not do to investigate or test a product that it sells. *See Pipitone*, 288 F.3d at 247.

2.      **Dean Rutila's opinions are not reliable or admissible.**

Dean Rutila's testimony fails all three prongs of the test for reliability: (1) his testimony is not based on sufficient facts or data, (2) his testimony is not the product of reliable principles

---

[3] Deposition at 36:15-20.
[4] Exhibit A.

or methods, and (3) he has not applied the principles and methods reliably to the facts of this case.

His opinions that Interior Exterior should have done further testing of the Chinese-manufactured board is flawed and rests on presumptions and speculations.  Mr. Rutila first leap is that the Chinese-manufactured drywall is not labeled correctly.   Although Mr. Rutila performed some tests on Chinese-manufactured drywall, which were only a few square inches, he admits, however, that he has not tested the Chinese-manufactured drywall to determine if they would pass any of the tests enumerated in the applicable ASTM standards.[5]  The testing he performed was testing to determine the corrosive effect of the drywall and are not standard test performed as part of the ASTM certification process.  Moreover, he has not personally seen full panels of Chinese-manufactured drywall, yet he somehow concludes that the panels were not properly marked.  Without having seen entire sheets of the Chinese-manufactured drywall, he has no reliable basis to conclude that drywall sold by Interior Exterior was not properly labeled.  Further, relying on the word of others and a review of some photographs is not a reliable methodology from which one can conclude that the actual drywall sold to Plaintiffs in this case was not properly labeled.

Additionally, Mr. Rutila opines that even though there were certifications from the manufacturers and the broker, because the board was mislabeled, Interior Exterior should have done further testing of the board.  However, he has no data from which to conclude that when faced with a mislabeled product, the appropriate standard of care is to perform independent testing.

Mr. Rutila's second leap is that because Interior Exterior received "cautionary advice" about the weight and brittleness of the Chinese-manufactured drywall, Interior Exterior should

---

[5] Deposition at 87:3-88:23.

have done further testing of the product.  It is Mr. Rutila's opinion that because the Chinese-manufactured board was heavier than domestically made drywall, Interior Exterior should have done further testing of the board.  But Mr. Rutila begrudgingly admits that there are no ASTM standards that have a maximum weight allowance for drywall.[6]  Thus, he has no reliable basis for his opinion that complaints about the weight of the drywall should have led Interior Exterior to perform investigation and testing of the board's compliance to ASTM.  Any opinions that Mr. Rutila can reliably offer must be limited to the ASTM standards and what those standards call for with respect to further testing by a distributor of the product.

Unlike his scientific analysis and testing contained in his other reports issued in previous Chinese drywall litigation, Mr. Rutila has not provided any reliable principles or methods that support his biased opinions that Interior Exterior should have tested the board and should have discovered the board was off-gassing sulfur gases.  His "opinions" are nothing more then rank speculation about what a distributor should do when faced with allegedly non-conforming products.  Mr. Rutila is not qualified to render these opinions and has no reliable basis for his conclusion.

### 3. Dean Rutila's opinions parroting the opinions of Lydia Luckevich are not reliable or admissible.

Lastly, Mr. Rutial indicates in his rebuttal report that reviewed the report of Lydia Luckevich and admitted that he relied on her report to the extent it was supportive of his.  Under Federal Rule of Evidence 703, an expert may base an opinion on inadmissible evidence if the facts or data are of the kind reasonably relied upon by experts in the field. However, an opinion based on such facts or data may only be disclosed to the jury if their probative value outweighs any prejudicial effect they may have.   Fed. R. Evid. 703.  If the underlying information is

---

[6] Deposition at 72:22-73:1.

admitted under this balancing test, but is otherwise inadmissible, the trial judge must give a limiting instruction upon request. *See Sinclair v. State Farm and Cas. Co.*, No. 09-447, 2010 WL 81506778, p. *4 (E.D.La. Feb. 10, 2010).

With regard to the reliability inquiry, Rule 703 of the Federal Rules of Evidence permits experts to rely on information that otherwise would not be admissible, including hearsay evidence so long as the information is of the type reasonably relied on by experts in his field. Fed. R. Evid. 703; *Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 94 (2d. Cir.2000) ("[A]n expert may rely on data that [he] did not personally collect."); *Bryan v. John Bean Division FMC Corp.,* 566 F.2d 541, 545 (5th Cir.1978) ("The modern view in evidence law recognizes that experts often rely on facts and data supplied by third parties."). **Nevertheless, Rule 703 does not allow "the wholesale adoption of another expert's opinions without attempting to assess the validity of the opinions relied on."** *Lightfoot v. Hartford Fire Ins. Co.*, CIV.A. 07-4833, 2011 WL 39010 (E.D. La. Jan. 4, 2011). *See also, Threet v. Correctional Health Care Mgmt of Okla., Inc.,* No. 07–843–HE, 2009 WL 3335596, at *5 (W.D.Okla. Oct. 15, 2009).

In *Threet v. Correctional Health Care Management of Oklahoma, Inc.,* the court excluded the plaintiff's expert from testifying because the expert did not conduct any independent investigation and relied solely on a DOJ Report as the basis for some of his opinions. *Threet,* 2009 WL 3335596, at *5–6. Notwithstanding the expert's impressive credentials, the court concluded that the expert's opinions were inadmissible under *Daubert* because the expert lacked a reliable basis for his opinions. *Id.; see also TK–7 Corp. v. Estate of Barbouti,* 993 F .2d 722, 732 (10th Cir.1993) ("[T]he fact that [the expert] relied upon the report did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report.").

Likewise, in *JRL Enterprises v. Procorp Associates, Inc.,* Your Honor precluded the plaintiff's expert from testifying because the expert failed to conduct any independent research to determine the reliability of his assumptions, and merely adopted figures calculated by another expert. 2003 WL 21284020, at *8. This Court reasoned that the expert's testimony was inadmissible because the expert failed to demonstrate that the other expert's opinions and figures were reliable. *Id.* at *7–8. Similarly, in *Bracco Diagnostics, Inc. v. Amersham Health Inc.,* Judge Wolfson of the District Court of New Jersey held that two of the proffered experts were not allowed to testify because they failed to conduct any independent investigation to refute the opinions offered by the plaintiff's experts. 627 F.Supp.2d 384, 449–50 (D.N.J.2009).

In addition to reliability, reliance on the opinions of others must pass the standards set forth in *Daubert. Moore v. Ashland Chemical, Inc.*, 126 F.3d 679, 691 (5th Cir. 1997)*; see also, Sinclair v. State Farm and Cas. Co.*, No. 09-447, 2010 WL 81506778, p. *4 (E.D.La. Feb. 10, 2010).   "Just as *Daubert* rejected the general acceptance standard as too narrow for Rule 702, Rule 703 should not be reduced to the similarly narrow inquiry of whether experts in the field customarily rely on data of the general type in question."   *Id.*   Courts have identified several "objective earmarks of reasonable reliability" for evaluating the bases of expert opinions under FRE 703. *Id.*   Some of the factors used in this determination are:

   1)  Was the basis published or documented in some other form?[7]
   2)  Was the basis subjected to peer review?
   3)  Was the expert's basis derived from sources that were impartial?[8]
   4)  Was the basis complete and logically sufficient?
   5)  Was the basis disclosed to the adverse party before trial?
   6)  Was the opinion more than just a summary of another expert's opinion?[9]

---

[7] *See Soden v. Freightliner Corp.*, 714 F.2d 498, 503 (5th Cir. 1983).
[8] *See Soden, supra; U.S. v. Marine Shale Processors*, 81 F.3d 1361, 1370 (5th Cir. 1996); and *U.S. v. Trang Trong*, 18 F.3d 1132, 1143-44 (4th Cir. 1994)(opinions based on reports specifically prepared for litigation are not necessarily of a type reasonably relied upon); *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987)(expert's testimony was "no more than [plaintiff's] testimony dressed up and sanctified as the opinion of an expert.").

7)  Was the opinion more than just a summary of inadmissible evidence?[10]

8)  Do most experts in the field rely on data of the type in question?

This approach of refusing to allow an expert to simply wholesale adopt the opinions of another expert has been endorsed across the Federal circuits.  In *In re TMI Litigation*, 93 F.3d 613, 715-16 (3rd Cir. 1999),  the United States Court of Appeal for the Third Circuit found that "the expert's methodology was flawed when he relied entirely on another expert's report." Similarly, in *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993), the United States Tenth Circuit held that an expert's lack of familiarity with the methods and the reasons underlying the projections of another individual upon which the expert based his own opinion "virtually precluded any assessment of the validity of the projections through cross-examination…" The expert's testimony that was based on those projections was therefore excluded. The court cited a United States Seventh Circuit case, *In re: James Wilson Associates*, 965 F.2d 160, 173 (7th Cir. 1992), for the admonition that "[t]he judge must make sure that the expert isn't being used as a vehicle for circumventing the rule against hearsay." *TK-7*, 993 F.2d at 732-33.  FRE 703 "implicitly requires that the information be viewed as reliable by some independent, objective standard beyond the opinion of the individual witness." *Id.*

Regarding Mr. Rutila, unlike his previously issued reports where he did independent testing of samples, it is clear that in this matter he simply adopted the opinions of another, Lydia Luckevich, whom is not allowed to testify, as his own.  Federal Rule of Evidence 703 prohibits the parroting of another's opinion as one's own without the independent analysis and determination.  While he suggests that his opinions were through independent analysis, it is clear that he simply paired down Ms. Luckevich's inadmissible report as a guise to call it his own; and he should not be allowed to testify concerning those opinions.

---

[9] *Id. See TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993)(expert damages testimony excluded when expert was unable to show that opinion upon which his opinion was based was reliable).

[10] *Id.*

Mr. Rutila did not perform any independent verification of the opinions offered by Mr. Luckevich.   Moreover, Ms. Luckevich's opinions were not published, peer reviewed, or impartial.  Her opinions, upon which Mr. Rutila badly relies, rather were specifically prepared for this litigation at Plaintiffs' counsel's requests.  Mr. Luckevich's opinions have not been viewed as reliable by some independent, objective standard beyond the opinion of Mr. Rutila and Plaintiff's other retained experts.  To the extent Mr. Rutila's testimony is nothing more than a summary of Mr. Luckevich's uncorroborated testimony, FRE 703 requires that he be prohibited from offering such opinions.

## **CONCLUSION**

Because Mr. Rutila is not qualified and his opinions are not reliable, he should be allowed to offer any expert opinions in this matter.  For this reason, Interior Exterior requests that this Court issue an order *in limine* prohibiting the defendants from presenting any opinion testimony of Mr. Rutila.

Respectfully submitted,

***Richard G. Duplantier, Jr.   /s/***
Richard G. Duplantier, Jr. (# 18874)
Lambert J. Hassinger, Jr. (# 21683)
Benjamin R. Grau (#26307)
Carlina C. Eiselen, (# 28524)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802 / Fax:  (504) 525-2456
rduplantier@gjtbs.com /jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com
*Counsel for Defendant, Interior Exterior Building Supply,*
*L.P. and Interior Exterior Enterprises, LLC*

## Certificate of Service

The undersigned certifies that this document has been served on Plaintiffs' Liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 12th day of November, 2012.

*Richard G. Duplantier, Jr.   /s/*
RICHARD G. DUPLANTIER, JR.