**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| =============================== | x | ============================= |
| | x | |
| IN RE: CHINESE-MANUFACTURED | x | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | x | SECTION: L |
| LITIGATION | x | JUDGE FALLON |
| | x | MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO ALL | x | |
| CASES | | |
| =============================== | x | ============================= |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DR. TIMOTHY TONYAN

Counsel for Plaintiff's Steering Committee ("PSC") and the Plaintiffs in the upcoming trial against Interior Exterior Building Supply, L.P. ("INEX") and North River Insurance Company ("North River") hereby files this Memorandum in Support of the Motion to Exclude the Expert Report and Testimony of Dr. Timothy Tonyan. Dr. Tonyan offers two opinions: 1. "INEX exercised a reasonable standard of care with respect to the importation of Chinese-manufactured drywall;" and 2. "INEX was not aware and had no reasonable means of being aware that the drywall was defective in any way." Report of Dr. Timothy D. Tonyan ("Report"), Exhibit "A". However, he has no expertise in matters relating to distribution and importation of any products, let alone drywall. Rather, he has expertise in irrelevant scientific research of the "mechanical behavior of cementitious foam" and the development of other building products, particularly cement-based products. Finally, his *ipse dixit* opinion is not meaningfully based on any facts outside of claims and testimony made by INEX in this litigation.[1]

---

[1] As a mere re-capitulation of the claims and testimony made by INEX, his testimony is cumulative and should be also be excluded under Fed.R.Civ.P 403 as unduly prejudicial and confusing.

LEGAL STANDARD

As an initial matter, a witness offered to testify as an expert must be sufficiently qualified in the relevant field or scientific discipline to offer the opinion. *United States v. Wilson*, 408 Fed.Appx. 798, 781 (5th Cir. 2010) ("Before a district court allows a witness to testify as an expert, it must be assured the proffered witness is qualified by virtue of his " 'knowledge, skill, experience, training or education.'") (*citing United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009)); *Barrett v. Atlantic Richfield Co.,* 95 F.3d 375,382 (5th Cir. 1996) (excluding the expert, an ecologist, because the expert was not qualified to speak authoritatively about the correlation between chromosomal damage in rats and chemical exposure levels in humans).  "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." Cooks, 589 F.3d at 179 (*citing Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir.1999)).

If an expert is qualified to speak about a relevant field or subject, the opinion of the expert must be assessed to determine "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579,592-93 (1993); *Seaman* v. *Seacor Marine, L.L.c., 326* Fed. Appx. 721, 724 (5th Cir. 2009) ("charge[s] trial judges with the responsibility of acting as gatekeepers to exclude unreliable testimony"). The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. 1972 Comments to Proposed Rule 702.  In *Seaman,* the Fifth Circuit emphasized that expert testimony must be reliable at each and every step or else it is inadmissible:

> The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion[.] Where an expert's opinion is based on insufficient information, the analysis is unreliable. *Id.*

Four factors set forth in *Daubert* bear on the court's initial inquiry into whether an expert's theory is reliable. *Id.* at 725. The court may consider whether the expert's theory: 1) has been subjected to peer review; 2) can be or has been tested; 3) is generally accepted; 4) has a known or potential rate of error. *Id. (quoting Daubert,* 509 U.S. at 593-94). An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist. *See Watkins v. Telsmith, Inc*., 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique."). The *Daubert* list is not exhaustive, and the Court has the flexibility to assess the particular circumstances of the testimony as issue. *Tanner v. Westbrook,* 174 F.3d 542, 547 (5th Cir. 1999).

Even when an expert is extrapolating from personal experience as a practitioner rather than from reviewing research undertaken by others, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *LeBlanc ex rel. Estate of LeBlanc v. Chevron USA, Inc*., 396 Fed.Appx. 94, 100 (5th. Cir. 2010) (*quoting General Elec. Co. v. Joiner*, 522 U.S. 136, 146(1997)). In other words, even Dr. Tonyan's opinion that INEX satisfied a standard of care by failing to inspect the board must have some demonstrable and reliable basis in underlying facts.

Defendant carries the burden as the proponent of the expert testimony to establish Dr. Tonyan's expertise and prove reliability by a preponderance of the evidence. *Moore v. Ashland*

*Oil Inc.,* 151 F.3d 269, 276 (5th Cir. 1998). The Court should exclude Dr. Tonyan's testimony because, as shown below, Plaintiffs fail to satisfy this burden.

## DR. TONYAN HAS NO RELEVANT EXPERTISE

Whether from education or experience, Dr. Tonyan cannot be seen as an expert to offer testimony about INEX's standard of care as an importer or distributor of regular residential drywall. His education focused on cement products and culminated in a Ph.D. on "cementious foam."[2] Curriculul Vita of Dr. Timothy D. Tonyan ("CV"), Exhibit "B"; Deposition of Timothy D. Tonyan ("Tonyan Depo."), Exhibit "C". He had no courses on the import or distribution of building products or duties related to import and distribution. Tonyan Depo, p. 63:17-63:20. Rather, the only business courses he took related to building project management, estimation and construction law. Tonyan Depo., pp. 63:21-64:8. His publications and patents are, appropriately, focused primarily on cement technologies, which sometimes involve gypsum in the cement mixtures, but never related to residential drywall and never covered matters related to the duties of importers or distributors of residential drywall or any building supplies. Tonyan Depo, pp. 62:12-63:3; CV.

His professional experience provides no additional expertise for his opinion in this trial. While he worked for USG Corporation for ten years, he never ran a residential drywall manufacturing facility, and he worked only 80-100 hours related to the production of regular residential sheetrock. Toyan Depo., pp. 16:7-16:10, 22:4-22:12. His work at USG was primarily in the research and development of new products and technologies, including Durock (a cement-based board) and a novel "structural cementitious panel product" he had patented. Tonyan Depo,

---

[2] Dr. Tonyan's Master Thesis was on automated inspection of structural components of buildings on United States Army bases and his undergraduate degree was in building construction.

pp. 66:12-71:17. Accordingly, he has served on ASTM committees related to concrete, but none related to drywall.[3] Tonyan Depo., pp. 101:6-101:16.

Dr. Tonyan's employment outside of USG provides no additional, relevant experience. Dr. Tonyan worked as a project management and construction scheduling consultant with the Davis Consulting Group, ensuring that large construction projects proceeded on schedule. Tonyan Depo. Pp. 71:22--73:11. For the last three years has worked for CTL Group in the development of new products such as a mesh-based concrete that can be rolled out and sprayed with water, a polymer-based foam roofing material, and "novel products that are carbon neutral or supposedly absorb $CO_2$." Tonyan Depo., pp. 74:7-77:22. While his scientific expertise may be impressive, it is not relevant to this litigation. He has no experience with importing or procurement and never worked for or with a foreign manufacturer. Tonyan Depo., pp. 39:22-39:25; 40:24-41:4; 55:5-55:7. He has no experience in dealing with Chinese manufacturers. Tonyan Depo., pp. 96:18-96:22. He has no experience with sulfur contamination of products. Tonyan Depo., pp. 64:9-64:15. Finally, in his only prior service as an expert witness, he did testify as to a "standard of care", but only as to the intended use of a road patch material that USG had developed. Tonyan Depo., pp. 9:25-10:16, 13:20-14:14. He has never testified about the duties of an importer or distributor to test products and has never served as a consultant on such matters. Tonyan Depo., pp. 14:15-14:23.

Despite the true nature of his education and expertise, Dr. Tonyan offers opinions about the standard of care in "gypsum board industry", what importers of drywall can disregard when

---

[3] Additionally, a search of the CTL Group website on November 12, 2012, for the name "Tonyan" shows that the projects on which Dr. Tonyan played a noted role related primarily to cement, including a runway at JFK Airport and the exterior wall of a national retailer. Interestingly, a search for projects related to gypsum turn up on project related to a gypsum based flooring, a project on which Dr. Tonyan played no credited role. www.ctlgroup.com

importing drywall from untested sources, and what a distributor of imported drywall should and should not worry about when receiving customer complaints. On the whole, the testimony and report of Dr. Tonyan is offered by a person who is not qualified as an expert on the subjects about which is purports to speak.

## THE OPINONS OF DR. TONYAN ARE NOT RELIABLE

Dr. Tonyan offers two opinions: 1. "INEX exercised a reasonable standard of care with respect to the importation of Chinese-manufactured drywall;" and 2. "INEX was not aware and had no reasonable means of being aware that the drywall was defective in any way." However, neither opinion is supported by any of the rigor or facts that are required of expert opinions. Rather, Dr. Tonyan merely reiterates the self-serving testimony of INEX.

*1. INEX Exercised a Reasonable Standard of Care*

Dr. Tonyan builds his opinion that INEX satisfied its duties as an importer on pillars: the reputation of the manufacturers and the broker INEX used for the Taishan purchase, and the certifications provided by these entities that the drywall was acceptable to the United States market. However, neither pillar has the kind of foundation required for expert opinions. As regards the reputations of the manufacturers, Dr. Tonyan admitted that the established reputation of a supplier is an important consideration. 98:3-93:8. However, Dr. Tonyan had no knowledge of the facilities, history or processes of the manufacturers aside from what Clay and James Geary have testified to.[4] 88:12-89:7. Indeed, the bulk of Dr. Tonyan's opinions about INEX's standard of care are based on the depositions of the Geary brothers and other INEX employees. Tonyan Depo. Pp. 88:2-88:7, 88:12-88:19, 106:8-108L2, 108:15-109:1, 109:15-109:18. Accordingly, it

---

[4] Indeed, Taishan (or TTP) is conspicuously absent from his discussion of "Gypsum Board Sources." Report, p. 4.

could not and did not matter to Dr. Tonyan that INEX had no prior dealings with or knowledge of either KPT or TTP. *Cf.* Tonyan Depo., pp. 51:18-52:7 (discussing Metro Resources). Independently, Dr. Tonyan did not consider the actual quality controls or process of the manufacturers in his opinion nor did he consider the difference between the duties of an importer or a distributor in reaching his opinion. 94:5-95:21. Indeed, he did not even review the depositions of the Taishan/TTP employees that have been taken in this litigation. 93:16-94:4.

As regards the reputation of Metro Resources, the broker who identified Taishan as a replacement for KPT, it is clear that Dr. Tonyan is not looking at facts, but mere appearances. As with the manufacturers, Dr. Tonyan had no independent knowledge about Metro Resources and it did not matter that INEX had never dealt with them before. 89:8-89:14. Yet, the fact that Metro Resources had no experience in building materials was irrelevant in Dr. Tonyan's "analysis"; rather it was sufficient merely that Metro Resources "gave the appearance of being a reputable and reliable source." 90:2-90:19.[5]

Turing to the certification by Metro Resources that the TTP drywall was ASTM compliant, Dr. Tonyan ignores the actual "appearances" of the actual certifications in reaching his opinion. He stated that Taishan had certified that the boards INEX was importing were ASTM complaint. Tonyan Depo., pp. 48:11-49:11.[6] However, Taishan did no such thing. Rather, it was Metro Resources that provided some certifications, but these were only regarding the proper palletization, wrapping and sealing for shipment of the drywall, with end tape and that each board was *labeled* "Meet or Exceed ASTMC1396-04 Standard". *See e.g.* Exhibit "E"

---

[5] Metro Resources admitted in its early communications with INEX that it had no experience with building materials. Exhibit "D" (INT/EXT 05897).

[6] The only other document he claims to rely on were purported results from an ASTM certification testing of a single board, dated four months before any INEX shipment, missing crucial information, and with a fax header dated from 2004. Tonyan Depo. 50:2-50:8

(INT/EXT00966). No certification was provided that such labeling for the shipments of INEX board was actually true, only that they were labeled that way by an untested manufacturer. With KPT, on the other hand, he never saw any ASTM testing. Tonyan Depo., p. 83:23-84:2.

*2. INEX Was Not Aware and Had No Reasonable Means of Being Aware of Defects*

As regards the remaining opinion about the physical characteristics of the Chinese-manufactured drywall being indistinguishable from domestic drywall, his opinion is similarly deficient in basis and rigor. He conducted no independent tests and had only limited exposure to samples of the drywall. Tonyan Depo., pp. 44:19-45:8, 47:20-47:24. Indeed, his reliance on tests USG had conducted on samples of Knauf drywall in 2006 evinces the infirmity of his analysis. In 2006, as part of its on-going practice of testing other drywall that was on the market, USG tested two samples of Knauf drywall.[7] However, INEX never saw these tests and never conducted its own inspection or testing. Tonyan Depo., p. 47:4-47:7. Moreover, the test results do not make clear if the Knauf board USG tested was Knauf Tianjin drywall (as opposed to drywall from another Knauf plant, such as Wuhu), and note that the Knauf drywall failed basic ASTM standards. Exhibits "F" and "G". In contrast, and based on such facts, Dr. Tonyan goes on to testify that the tests would have confirmed the fine quality of the KPT board for any distributor or contractor. Tonyan Depo., p. 47:4-47:10.

Finally, while he admitted that the contaminated drywall could be degraded, he refused to consider the degraded performance of the Knauf drywall in these tests and discounted outright the complaints from INEX customers about the Chinese-manufactured drywall. Tonyan Depo., pp. 109:2-109:18, 116:9-116:12. Indeed, Dr. Tonyan again relies only on the testimony of INEX about its customer complaints. 109:2-109:18.

---

[7]  Dr. Tonyan played no role in this testing. These test results are attached hereto as Exhibits "F" and "G".

CONCLUSION

For all of the above reasons, the PSC submits that the testimony and report of Dr. Timothy D. Tonyan be excluded from the trial.

                    Respectfully submitted,

Dated: November 12, 2012        /s/ Russ M. Herman_____
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
Daniel@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
119 Washington Avenue
Suite 402
Miami Beach, FL 33139
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony Irpino
Irpino Law Firm
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 12th day of November, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*