itIN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | x<br>x<br>x MDL NO. 2047<br>x SECTION: L<br>x JUDGE FALLON<br>x MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO ALL CASES | x |

## PLAINTIFFS' OPPOSITION TO THE MOTION OF NORTH RIVER INSURANCE COMPANY TO LIMIT THE TESTIMONY OF DEAN RUTILA

Counsel for Plaintiff's Steering Committee ("PSC") and the Plaintiffs in the upcoming trial against North River Insurance Company ("North River" or "Defendant")) hereby files this in response to the Motion to Limit the Testimony of Dean Rutila ("Mr. Rutila") filed by North River on November 9, 2012.

### INTRODUCTION

North River has moved to exclude Plaintiffs' expert witness Mr. Rutila's opinions contained in his Rebuttal Report dated October 17, 2012 ("Rebuttal Report") (Exhibit 1). Mr. Rutila, is a Senior Project Manager with Simpson Gumpertz & Heger ("SGH"), a well respected multidisciplinary engineering and material failure firm. Defendant does not object to the opinions contained in his initial report by stating "North River does not doubt that Mr. Rutila is qualified to talk about the limited issues set forth in his initial report." Rather, they seek to preclude him from testifying about whether Mr. Rutila can offer testimony on INEX's failure to perform any testing on the Chines manufactured drywall by asserting that these rebuttal opinions "go far beyond his expertise." Despite North River's protestations, Mr. Rutila's opinions regarding these issues should not be excluded because Mr. Rutila, as well as SGH, has extensive

experience in testing materials that are provided by "known suppliers" before the materials are "manufactured or installed (e.g., building stone and aggregate)." Rebuttal Report at 5. Accordingly, as described in more detail herein, Mr. Rutila is well-qualified to offer the opinions contained in his Rebuttal Report and Defendant's Motion should be denied in its entirety.[1]

## ARGUMENT

Federal law governs the admissibility of expert testimony. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). "District courts enjoy wide latitude" in determining first whether a witness is qualified to provide an expert opinion and then in deciding the scope of the expert's testimony. *See Watkins v. Telsmith Inc.*, 121 F.3d 984, 988 (5th Cir. 1997). Rule 702 of the Federal Rules of Evidence expressly contemplates that experts may testify "in the form of an opinion" based on their "knowledge, skill, experience, training, or education." FRE 702. The Supreme Court has held that "[u]nlike an ordinary witness,...***an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.***" *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993 (emphasis added). Thus, experts may reliably base their opinions on relevant peer-reviewed literature and studies, as well as "the knowledge and experience" of their discipline. *Id*. It goes without saying that experts may also testify as to their own personal observations based on their expertise. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (finding expert's testimony

---

[1] Defendant also contends that INEX, as an importer/distributor of the drywall that it had no duty to inspect the drywall prior to its sale. Plaintiffs response to this argument is addressed in more detail in the pending motions *in limine* which have already been filed with this Court. See Docs. 16155 and 16156.

reliable under *Daubert* where opinion was "based mainly on his personal observations, professional experience, education and training"); *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (where "naturally occurring circumstances ... preclude ideal experimental conditions and controls[,] ... other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations."). Courts have admitted testimony from all types of experts having education, training and/or experience in their particular fields.

It is in the judge's discretion to admit or exclude expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 139 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136, 138–139 (1999). The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). "[A] trial court has wide discretion in determining whether a witness is qualified to testify as an expert." *People v. Cepeda*, 851 F.2d 1564, 1566 (9th Cir. 1988) (internal citations omitted). *See also Joiner*, 522 U.S. at 142 ("[T]he Federal Rules of Evidence allow district courts to admit a somewhat broader range of scientific testimony than would have been admissible under *Frye* ...."); *U.S. v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("The district court did not abuse its discretion in declining to qualify Steele as an expert."). "While the Federal Rules of Evidence call upon the courts to serve as gatekeepers who independently evaluate the admissibility of expert opinion testimony, they rely upon the discretion of the trial courts - not the discretion of the courts of appeals." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, fn. 3 (3d Cir. 2003).

Although, "Rule 702 requires the [expert] witness to have 'specialized knowledge' regarding the area of [his or her proffered] testimony," courts have interpreted this requirement

"liberally." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3rd Cir. 1998); *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) ("As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function."). The basis of an expert's specialized knowledge "can be practical experience as well as academic training and credentials." *American Tech. Resources v. United States*, 893 F.2d 651, 656 (3rd Cir. 1990); *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 653 (3rd Cir. 1982) ("[U]nder Rule 702, an individual need possess no special academic credentials to serve as an expert witness.... '[P]ractical experience as well as academic training and credentials may be the basis of qualification (as an expert witness).'") (citation omitted); *Waldorf*, 142 F.3d at 626 "ordinarily an otherwise qualified witness is not disqualified merely because of a lack of academic training.").

Accordingly, courts have determined in many cases that witnesses may be qualified to provide expert testimony based on practical work experience or training in their field, even though they do not have a specific degree in the subject of their testimony. For example, in *Huss*, 571 F.3d at 452, the Fifth Circuit Court of Appeals reversed a lower court decision that had excluded a defense expert from testifying about the cause of plaintiff's cardiomyopathy on the grounds that the proffered doctor "was neither a cardiologist nor a toxicologist." *Id*. at 454.

The Fifth Circuit held that the expert "did not need to be board-certified in cardiology or toxicology to explain that the studies relied on by the [plaintiffs] do not prove a causative relationship – especially given the very small number of patients in th[e] studies [relied upon by plaintiffs]." *Id*. The Court reasoned that [the doctor's] training and experience as a medical professional qualify him to tell the jury why the literature does not establish a causal link." *Id*.

4

Likewise, qualified experts are permitted latitude to testify as to matters that are not technically within their specific category of expertise or within their actual life experience but are nevertheless sufficiently related to their general area of expertise, industry or profession, provided the testimony is otherwise reliable and relevant. See *Methyl Tertiary Butyl Ether* ("MTBE") Prods. Liab. Litig., 643 F. Supp. 2d 471, 478 (S.D.N.Y. 2009) ("courts allow experts to testify to matters within their general expertise when such experts lack qualifications as to specific technical matters within their field.")[2].

---

[2] See also, e.g., *Hammond*, 691 F.2d at 653 (witness qualified to testify as an expert regarding rollover protective structure on a tractor even though he did not have a formal degree in engineering or physics, where witness worked selling automotive and mechanical equipment, including agricultural equipment, and he taught automobile repair and maintenance at a high school); *Waldorf*, 142 F.3d at 627 (upholding qualification of witness as an expert in the area of vocational rehabilitation even though he "did not possess formal academic training ..., [but] he did have experience in the field through his employment ... in attempting to provide jobs for disabled individuals."); *Davis v. United States*, 865 F.2d 164, 168 (8th Cir. 1988) (practical experience qualified public health investigator to testify regarding probabilities of transmitting gonorrhea despite his lack of medical training); *Circle J Dairy, Inc. v. A.O. Smith Harvestore Prod., Inc.*, 790 F.2d 694, 700 (8th Cir. 1986) (practical experience qualified witness to testify as an expert regarding feed-related health problems of dairy cattle despite a lack of academic qualifications); *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588-89 (7th Cir. 2000) ("an electrical engineer who ha[d] extensive experience in the field of electrical safety" allowed to testify as an expert in suit alleging damages from lightening bolt "on the basis of his work for a power company, where he was responsible for ensuring the safety of its facilities from lightning."); *United States v. Anderson*, 61 F.3d 1290, 1297-98 (7th Cir. 1995) ("group supervisor of the DEA's Clandestine Lab Enforcement Team with specialized training in clandestine laboratory operations and twenty-five years of experience, was qualified to provide expert testimony" in case alleging that defendant possessed a precursor chemical for phencyclidine (PCP), as well as other chemicals and equipment which had no use other than to make PCP). Fed.Appx. 442, 2009 WL 1833906 (5th Cir. 2009), for example, the Fifth Circuit Panel upheld the District Court's determination that a mechanical engineer with "a master's degree in mechanical engineering, [who] taught mechanical engineering for over 14 years, and ... served as a consultant in design work for over 35 years" "was qualified to testify regarding his observations of the [subject] lawnmower, the various photographs taken of it, and the component parts, constructions, and mechanics of the steering-wheel assembly [at issue]." The motion to exclude this expert argued that he "had never worked in the design of lawnmowers; and, he was not a metallurgist, so he could not speak with authority [on the subject of marks and rust on the steering wheel]." The District Court rejected this argument concluding that the expert "had sufficient expertise as a mechanical engineer to testify regarding lawnmower splines and shafts," and this decision was upheld on appeal. *See also St. Martin v. Mobil Exploration & Producing US Inc.*, 224 F.3d 402, 405-06 (5th Cir. 2000) (where "Defendants suggest[ed] that only a qualified hydrologist could have testified as to whether canal water intrusion occurred at sufficient levels and speeds to erode the vegetative mat," the Fifth Circuit ruled that "expertise in marshland ecology and in the erosion of vegetative mats in particular, along with ... personal observation of the ... [subject] property, sufficiently qualified him to testify as an expert."); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042-43 (2nd Cir. 1995) (industrial engineer's testimony that plaintiff was within "breathing zone" of hot-glue fumes "easily qualifie[d] for admission under *Daubert*," despite his lack of education on fume dispersal patterns, knowledge regarding the fumes' chemical constituents or the glue vapor's concentration level, or experience performing or interpreting air quality studies); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3rd Cir. 1979) (generalized knowledge of engineer who designed

1.       **Mr. Rutila Has Extensive Experience In Testing Of Materials, Inspections And Reviewing Test Reports Of Materials For Inconsistencies In What Was Provided Versus What Should Have Been Delivered**

Mr. Rutila is an expert in building damage repairs, is a Senior Principal with SGH, and has a B.S. and M.S. degrees in Civil Engineering from the University of Michigan. And, he has worked for more than 30 years "in the design and construction of buildings including wood framed homes, and in the investigation and repair of deteriorated buildings with complex causes and multiple system failures." Rebuttal Report at 1. Mr. Rutila has specialized experience in putting together and supervising multi-disciplinary teams of scientists, engineers, and other consultants "to investigate complex building failures, design repairs, and evaluate repair options for cost effective solutions." *Id*. See also Exhibit 2 (2/12/10 Order of this Court) (holding that Mr. Rutila was the supervisor of the PSC's team of experts).

This case involves a multi-disciplinary problem resulting from the fact that INEX failed to adequately test or inspect the drywall it received prior to selling it to builders and the general public. In rendering his opinions in his Rebuttal Report, Rutila based his opinions on his own experience in testing and reviewing test results as a Senior Principal with SGH as well as reviewing the Analysis provided by Lydia Luckevich ("Ms. Luckevich")[3] on October 17, 2012.

---

safety equipment qualified him to testify as to whether unguarded elevator control buttons constituted a design defect, even though he had no experience with such devices on elevators); *Fisher v. Walsh Parts & Service Company, Inc.*, 277 F. Supp. 2d 496, 505 (E.D. Pa. 2003) (licensed engineer "with over 40 years of experience in mechanical engineering" qualified to testify as an expert in case alleging damages from a power press, even though he had "never been trained in the repair of power presses, designed a power press or worked for a company that designed or serviced a power press"; expert's "review[] [of] historical documents on power presses, power press regulations and power press standards and ... [his] review[] [of] the design of a number of other power presses" deemed sufficient).

[3] The qualifications of Ms. Luckevich are discussed in more detail in Plaintiffs' Opposition to the Motion to Exclude or Limit the Testimony of Ms. Streit which is being filed contemporaneously herewith.

As part of his regular professional responsibilities as stated in his Rebuttal Report, Mr. Rutila reviews tests reports and labels to determine if there are any inconsistencies in the test reports or data in the selection of different materials/material sources. Rebuttal Report at 4. This practice is common in the industry and something that could have been performed by INEX. In addition, due to his experience, he knows that, "even with known suppliers, it is common to test many 'raw' or 'bulk' building materials for each project before they are further manufactured or installed (e.g., building stone and aggregate)." Rebuttal Report at 4-5. Further, Mr. Rutila rebuts the assertions by Defendant's expert Dr. James A. Tompkins who opines, without any basis, that "USG . . . tested [the Chinese manufactured drywall] per industry standards" and Dr. Timothy D. Tonyan who concludes that "results from the USG testing gave no indication of a gypsum board defect related to odor or sulfurous gas emission." These opinions are not conclusive because, as stated by Mr. Rutila, "no similar testing was conducted on the board manufactured by Taishan, and the purported ASTM testing done on behalf of Taishan omits these items." Rebuttal Report at 5. Mr. Rutila also opines that, since INEX accepted delivery and distributed drywall labeled with a manufacturer's/suppliers's name different from the manufacturer's name, INEX did not ensure that the drywall it received and distributed complied with "any standard." Rebuttal Report at 3. Accordingly, Mr. Rutila has a sufficient basis to render his conclusions that it received drywall that did not meet the required standards and it did not adequately prevent the distribution of Chinese manufactured drywall to the general public when it had ample opportunities to do so. Therefore, Mr. Rutila's opinions are relevant, informative and he has provided a reliable methodology for his opinions.

Indeed, despite Mr. Rutila being qualified as an engineer with knowledge about the testing and inspections that should have been performed by INEX, Defendant asserts that Mr.

Rutila's "willingness to talk about a duty to test or inspect a product what a particular individual may or may not have discovered during testing is not based upon engineering training and experience. Nothing in his report (or at his subsequent deposition) establishes a reliable methodology used by Mr. Rutila in reaching his rebuttal opinions" (Memo at 10).

However, Defendant is merely asserting that the weight of Mr. Rutila's testimony should not be given much credence at trial, and they have provided no basis on which to exclude his opinions which are outlined in his Rebuttal Report. Generally, disputes over an expert's qualifications go to the weight of the testimony rather than its admissibility. *Huss v. Gayden*, 571 F.3d 442 (5th Cir.), rehearing denied, 585 F.3d 823 (5th Cir. 2009), certiorari pending, No. 09-842 (U.S. Jan 18, 2010) ("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility"); *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3rd Cir. 1996) ("arguments about an expert's qualifications relate more to the weight to be given the expert's testimony than to its admissibility"). *Daubert* standards are considered to be flexible as opposed to hyper-technical, and "the most important question is not whether one party's expert is more qualified than the other's, but rather, whether an expert's testimony is reliable." *Huss*, 571 F.3d at 455.

> **2. Contrary To Defendant's Argument, Mr. Rutila Is Not Serving As A Surrogate For Lydia Luckevich, But He Is Permitted To Base His Opinion On Information Provided By Ms. Luckevich**

The judiciary and the Federal Rules of Evidence have acknowledged the modern-day life of professionals and the reality that these experts do not operate in isolation but often work in teams with other experts in the every-day course of their jobs. Experts regularly make decisions based on information provided by others as a part of their profession. Rule 703 of the Federal Rules of Evidence provides in part:

8

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The Federal Rules of Evidence plainly allow an expert to rely on scientific, technical or other specialized knowledge of other experts. *See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 9 (1st Cir. 2001) ("[W]hen an expert relies on the opinion of another, such reliance goes to the weight, not the admissibility of the expert's opinion."); *U.S. v. Bonds*, 12 F.3d 540, 566 (6th Cir. 1993) ("Rule 703 permits experts to testify without personal knowledge of the underlying facts or data and permits them to testify on the basis of hearsay or unadmitted evidence, as long as the evidence is of a kind 'reasonably relied upon by experts in the particular field.' "); *Calva-Cerqueira v. United States*, 281 F. Supp. 2d 279, 299-300 (D.D.C. 2003) ("An expert economist may rely on the opinions of other experts." (emphasis added)); *Ash Grove Cement Co. v. Employers Ins. Of Wausau*, 246 F.R.D. 656, 661 (D. Kan. 2007) ("[O]rdinarily, an expert may rely on the opinions of another expert if they inform or contribute to his own independent opinions."); *see also Walker v. United Healthcare of Hardin, Inc.,* 2010 WL 3092648, *2 (W.D. Ky., Aug. 6, 2010) [Mrazik Decl., Ex. 24] (noting that the Advisory Committee Notes to Rule 703 "recognize that experts may rely upon the opinions of other experts).

It is perfectly reasonable for Mr. Rutila to rely on the opinions of Ms. Luckevich under Rule 703. See also Exhibit 2 (2/17/10 Order of this Court) (stating "In this role, the Court concludes that Mr. Rutila is entitled to rely upon the opinions of other experts under Rule 702 of the Federal Rules of Evidence in rendering his own informed opinion.") Pursuant to Federal Rule

9

of Evidence 703, experts may rely on a broad range of information, facts, and data in forming their expert conclusion. As long as the facts or data considered by the expert are "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," an expert's reliance on those facts or data is proper. Fed. R. Evid. 703; *Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir. 1980) ("The pertinent inquiry under Rule 703 is whether the facts are of a type reasonably relied on by experts in the particular field.")

This rule extends to an expert's reliance on opinions of others, including the opinions of other experts. For example, a physician offered as an expert witness may rely on specialized knowledge gathered from, among other sources, "opinions from nurses, technicians and other doctors, hospital records, and X rays" in rendering opinions, and this "validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes." *Id.* The key consideration is whether the information at issue - in this case, Ms. Luckevich's opinion that, if INEX has performed reasonable testing and inspections of the facilities where the Chinese drywall was manufactured, then INEX would have discovered that there was a defect in the drywall.. This opinion is of the type that may be reasonably relied on by experts. *See Bauman*, 611 F.2d at 1120; *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) ("Federal Rule of Evidence 703 permits an expert to base an opinion on facts or data not admissible in evidence if it is of a type reasonably relied upon by experts in that particular field."). On that point, Defendants do not (and cannot) offer any objection.

Consistent with the rule that experts may rely on varied sources of information, facts, and data in forming their expert opinions, federal courts routinely allow experts to rely on the opinions of other experts in forming their opinions. S*ee, e.g., Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 9 (1st Cir. 2001) (expert offering opinion concerning cause of fire

properly relied on another expert's opinion in forming his conclusion); *Walker v. Soo Line R.R Co.*, 208 F.3d 581, 588 (7th Cir. 2000) ("[C]ourts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable"); *United States v. 1,014.16 Acres of Land*, 558 F. Supp. 1238, 1242 (W.D. Mo. 1983) ("[I]t is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion"). Thus, for example, a damages expert charged with calculating the present economic value of lost earnings may rely on another expert's opinions concerning the subject's diminished earning capacity to arrive at a damages calculation. *See Gess v. United States*, 991 F. Supp. 1332, 1350 (M.D. Ala. 1997). Even where a question of the reasonableness of an expert's reliance arises, "when an expert relies on the opinion of another, such reliance goes to the weight, not to the admissibility of the expert's opinion." *Ferrara,* 240 F.3d at 9. *See Walker v. Soo Line R.R.*, 208 F.3d 581, 588-89 (7th Cir. 2000); *United States v. 1,104.16 Acres of Land,* 558 F. Supp. 1238, 1242 (W.D. Mo. 1983); 4 Weinstein's Federal Evidence § 703.04[3] at 703-19 (2d ed. 2011) (collecting cases). As one court has explained, "[a]n expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion." *1,14.16 Acres of Land*, 558 F. Supp. at 1242.

      Further, it is standard practice for an expert witness who is brought into a case to read firsthand accounts of the factual issues that will form the basis for his opinions, and well established that experts may rely on data and other information supplied by third parties. *Dura Automotive Systems*, 285 F.3d 609, 609 (7th Cir. 2002) ("An expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify."). Additionally, analyzing data assembled by others is neither illicit nor unusual, even if the data

11

were prepared for litigation by an interested party. *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-cv-260-Oc-GRJ, 2008 WL 3819752, at *2 (M.D. Fla., August 12, 2008).

The proponent of the expert testimony need not prove that it is correct, but he or she must prove, by a preponderance of the evidence, that the testimony is reliable. *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276, (5th Cir. 1998), *cert. denied,* 526 U.S. 1064, 119 S.Ct. 1454 (1999).  Although an expert opinion must be based upon facts which enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation, absolute certainty is not required. *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir. 1995).

Defendant's argument to the contrary relies upon *Lightfoot v. Hartford Fire. Ins. Co.*, No. 07-4833, 2011 WL 39010, at *4 (E.D. La. Jan. 4, 2011). *Lightfoot*, however, is inapposite here. The expert opinion in that case was excluded because there was no evidence that the opinion upon which he relied was of a type upon which experts in his field normally would reasonably rely and because the expert did nothing to verify the facts which formed the basis of the opinion upon which he relied. *Id.* at *6. No such infirmities characterize Mr. Rutila's opinions contained in his Rebuttal Report.  Moreover, instead of solely relying on the report of a third party, as did the expert in *Lightfoo*t, as discussed herein, Mr. Rutila relied on his own bases and experience for offering his opinions and applied his own knowledge of Chinese drywall to the case and the fact that, as a distributor, INEX should have inspected the drywall and confirmed that it met the applicable standards.  Rebuttal Report at 5.

Likewise, Defendant's reliance on *JRL Enterprises v. Procorp Associates, Inc.,* No. Civ. A 01-2893, 2003 WL 21284020 (E.D. La. June 3, 2003) is misplaced.  *JRL Enterprises* does not

12

support the Defendant's theory that an expert cannot rely on the projections of a third party. Rather, "Judge Fallon's ruling [in *JRL Enterprises*] holds that an expert should not blindly rely on the projections of a third party when that third party disavows the reliability of those projections himself." *Legier and Matherne, Apac v. Great Plains Software, Inc*., No. Civ. A. 03-278, 2004 WL 1488597 (E.D. La. June 30, 2004). The reported facts of *JRL Enterprises* are that a sales manager who had no experience in business projections, created a report upon which an accounting expert relied. The court was concerned that reasonable accountants would not "simply and blindly accept such numbers." *JRL Enterprises v. Procorp Associates, Inc.,* No. Civ. A 01-2893, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003). These facts are completely different than those facing this Court. In *JRL*, the projects were made by a sales manager with no experience in business projects. *Id*. Ms. Luckevich, on the other hand, is a leading expert in Chinese Drywall who has been a consultant to manufacturers for 20 years and is a recognized expert in the field. Furthermore, she has extensive experience in this field of business. Unlike in *JRL*, she has not based her opinion on uncertain projections or similar information. Therefore, any opinions Mr. Rutila offers which are based on opinions of Ms. Luckevicah possess an element of credibility and reliability lacking in the *JRL Enterprises* situation, and cannot be excluded.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant's Motion.

Respectfully submitted,

Dated: November 14, 2012  /s/ Leonard A. Davis_____
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

14

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
Daniel@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
119 Washington Avenue
Suite 402
Miami Beach, FL 33139
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony Irpino
Irpino Law Firm
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 14th day of November, 2012.

      /s/ Leonard A. Davis
      Leonard A. Davis, Esquire
      Herman, Herman & Katz, L.L.C.
      820 O'Keefe Avenue
      New Orleans, Louisiana 70113
      Phone: (504) 581-4892
      Fax: (504) 561-6024
      Ldavis@hhklawfirm.com
      Plaintiffs' Liaison Counsel
      MDL 2047

      *Co-counsel for Plaintiffs*