**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| =============================== | x | ============================== |
| | x | |
| IN RE: CHINESE-MANUFACTURED | x | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | x | SECTION: L |
| LITIGATION | x | JUDGE FALLON |
| | x | MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO ALL | x | |
| CASES | x | |
| =============================== | x | ============================== |

## PLAINTIFFS' OPPOSITION TO THE MOTION OF INEX TO EXCLUDE OR LIMIT THE TESTIMONY OF LORI STREIT

Counsel for Plaintiff's Steering Committee ("PSC") and the Plaintiffs in the upcoming trial against Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("INEX" or "Defendant") hereby file this in response to the Motion to Exclude or Limit the Testimony of Lori Streit ("Dr. Streit") filed by INEX on November 12, 2012.

### INTRODUCTION

INEX has moved to exclude Plaintiffs' expert witness Dr. Streit's opinions contained in her Rebuttal Report dated October 17, 2012 ("Rebuttal Report"). *See* Exhibit 1. Dr. Streit is a well respected scientist with Unified Engineering Inc. Defendant does not object to the opinions contained in her initial report. Instead, it seeks to preclude her from testifying about whether Dr. Streit can offer testimony that if INEX or its agents had visited various facilities in the production of the Chinese-manufactured drywall imported by INEX, then they should have been aware of the sulphur odor that was emanating from the raw gypsum and manufactured wallboard. Defendant seeks to preclude Dr. Streit's testimony because they are irrelevant, misleading, are not expert opinions, are unreliable, are based upon vague and unknown standards, and she improperly relies upon the opinions of Lydia Luckevich ("Ms. Luckevich").

Despite INEX's protestations, Dr. Streit's opinions regarding these issues should not be excluded because Dr. Streit is a Ph.D. "forensic" chemist with a wide array of experience, including involvement in the investigation of problematic Chinese drywall since the inception. She has personally investigated and tested the drywall on numerous homes in several States, and is one of the foremost experts in the country regarding problematic Chinese drywall.  Indeed, she has consulted with government agencies, municipalities and individuals ever since the problem clearly surfaced.  In the course of such work, Ms. Streit had worked with Ms. Luckevich, and did so again in preparing her rebuttal report.  Ultimately, her opinion is merely the scientific statement of what happens when off-gassing raw material – smells and all – is brought from a contaminated mine to a production line. Accordingly, as described in more detail herein, Dr. Streit is well-qualified to offer the opinions contained in her Rebuttal Report and Defendant's Motion should be denied in its entirety[1].

## ARGUMENT

Federal law governs the admissibility of expert testimony. *Mather v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). "District courts enjoy wide latitude" in determining first whether a witness is qualified to provide an expert opinion and then in deciding the scope of the expert's testimony. *See Watkins v. Telsmith Inc.*, 121 F.3d 984, 988 (5th Cir. 1997). Rule 702 of the Federal Rules of Evidence expressly contemplates that experts may testify "in the form of an opinion" based on their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Supreme Court has held that "[u]nlike an ordinary witness,...***an expert is permitted wide***

---

[1] Defendant also contends that INEX, as an importer/distributor of the drywall that it had no duty to inspect  the drywall prior to its sale.  Plaintiffs response to this argument is addressed in more detail in the pending motions *in limine* which have already been filed with this Court.  *See* Docs. 16155 and 16156.

*latitude to offer opinions, including those that are not based on firsthand knowledge or observation."* Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993) (emphasis added).  It is in the judge's discretion to admit or exclude expert testimony.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 139 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136, 138–139 (1999).  The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597.  Thus, experts may reliably base their opinions on relevant peer-reviewed literature and studies, as well as "the knowledge and experience" of their discipline. *Id*. It goes without saying that experts may also testify as to their own personal observations based on their expertise. *Kumho,* 526 U.S. at 156 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (finding expert's testimony reliable under *Daubert* where opinion was "based mainly on her personal observations, professional experience, education and training"); *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (where "naturally occurring circumstances ... preclude ideal experimental conditions and controls[,] ... other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations."). Courts have admitted testimony from all types of experts having education, training and/or experience in their particular fields.

Although, "Rule 702 requires the [expert] witness to have 'specialized knowledge' regarding the area of [her or her proffered] testimony," courts have interpreted this requirement "liberally." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3rd Cir. 1998); *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) ("As long as some reasonable indication of

qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function."). The basis of an expert's specialized knowledge "can be practical experience as well as academic training and credentials." *American Tech. Resources v. United States*, 893 F.2d 651, 656 (3rd Cir. 1990); *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 653 (3rd Cir. 1982) ("[U]nder Rule 702, an individual need possess no special academic credentials to serve as an expert witness.... '[P]ractical experience as well as academic training and credentials may be the basis of qualification (as an expert witness).'") (citation omitted); *Waldorf*, 142 F.3d at 626 ("ordinarily an otherwise qualified witness is not disqualified merely because of a lack of academic training.").

Accordingly, courts have determined in many cases that witnesses may be qualified to provide expert testimony based on practical work experience or training in their field, even though they do not have a specific degree in the subject of their testimony. For example, in *Huss v. Gayden*, 571 F.3d 442 (5th Cir. 2009), the Fifth Circuit Court of Appeals reversed a lower court decision that  had excluded a defense expert from testifying about the cause of plaintiff's cardiomyopathy on the grounds that the proffered doctor "was neither a cardiologist nor a toxicologist." *Id*. at 454. The Fifth Circuit held that the expert "did not need to be board-certified in cardiology or  toxicology to explain that the studies relied on by the [plaintiffs] do not prove a causative  relationship – especially given the very small number of patients in th[e] studies [relied upon by  plaintiffs]." *Id*. The Court reasoned that [the doctor's] training and experience as a medical professional qualify her to tell the jury why the literature does not establish a causal link." *Id*.

Likewise, qualified experts are permitted latitude to testify as to matters that are not technically within their specific category of expertise or within their actual life experience but

are nevertheless sufficiently related to their general area of expertise, industry or profession, provided the testimony is otherwise reliable and relevant. *See Methyl Tertiary Butyl Ether* ("MTBE") *Prods. Liab. Litig*., 643 F. Supp. 2d 471, 478 (S.D.N.Y. 2009) ("courts allow experts to testify to matters within their general expertise when such experts lack qualifications as to specific technical matters within their field.")[2].

_____

[2]*See also, e.g.*, *Hammond*, 691 F.2d at 653 (witness qualified to testify as an expert regarding rollover protective structure on a tractor even though he did not have a formal degree in engineering or physics, where witness worked selling automotive and mechanical equipment, including agricultural equipment, and he taught automobile repair and maintenance at a high school); *Waldorf*, 142 F.3d at 627 (upholding qualification of witness as an expert in the area of vocational rehabilitation even though he "did not possess formal academic training ..., [but] he did have experience in the field through her employment ... in attempting to provide jobs for disabled individuals."); *Davis v. United States*, 865 F.2d 164, 168 (8th Cir. 1988) (practical experience qualified public health investigator to testify regarding probabilities of transmitting gonorrhea despite her lack of medical training); *Circle J Dairy, Inc. v. A.O. Smith Harvestore Prod., Inc.*, 790 F.2d 694, 700 (8th Cir. 1986) (practical experience qualified witness to testify as an expert regarding feed-related health problems of dairy cattle despite a lack of academic qualifications); *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588-89 (7th Cir. 2000) ("an electrical engineer who ha[d] extensive experience in the field of electrical safety" allowed to testify as an expert in suit alleging damages from lightening bolt "on the basis of her work for a power company, where he was responsible for ensuring the safety of its facilities from lightning."); *United States v. Anderson*, 61 F.3d 1290, 1297-98 (7th Cir. 1995) ("group supervisor of the DEA's Clandestine Lab Enforcement Teamwith specialized training in clandestine laboratory operations and twenty-five years of experience, was qualified to provide expert testimony" in case alleging that defendant possessed a precursor chemical for phencyclidine (PCP), as well as other chemicals and equipment which had no use other than to make PCP). Fed.Appx. 442, 2009 WL 1833906 (5th Cir. 2009), for example, the Fifth Circuit Panel upheld the District Court's determination that a mechanical engineer with "a master's degree in mechanical engineering, [who] taught mechanical engineering for over 14 years, and ... served as a consultant in design work for over 35 years" "was qualified to testify regarding her observations of the [subject] lawnmower, the various photographs taken of it, and the component parts, constructions, and mechanics of the steering-wheel assembly [at issue]." The motion to exclude ther expert argued that he "had never worked in the design of lawnmowers; and, he was not a metallurgist, so he could not speak with authority [on the subject of marks and rust on the steering wheel]." The District Court rejected ther argument concluding that the expert "had sufficient expertise as a mechanical engineer to testify regarding lawnmower splines and shafts," and ther decision was upheld on appeal. *See also St. Martin v. Mobil Exploration & Producing US Inc.*, 224 F.3d 402, 405-06 (5th Cir. 2000) (where "Defendants suggest[ed] that only a qualified hydrologist could have testified as to whether canal water intrusion occurred at sufficient levels and speeds to erode the vegetative mat," the Fifth Circuit ruled that "expertise in marshland ecology and in the erosion of vegetative mats in particular, along with ... personal observation of the ... [subject] property, sufficiently qualified herto testify as an expert."); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042-43 (2nd Cir. 1995) (industrial engineer's testimony that plaintiff was within "breathing zone" of hot-glue fumes "easily qualifie[d] for admission under *Daubert*," despite her lack of education on fume dispersal patterns, knowledge regarding the fumes' chemical constituents or the glue vapor's concentration level, or experience performing or interpreting air quality studies); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3rd Cir. 1979) (generalized knowledge of engineer who designed safety equipment qualified her to testify as to whether unguarded elevator control buttons constituted a design defect, even though he had no experience with such devices on elevators); *Fisher v. Walsh Parts & Service Company, Inc.*, 277 F. Supp. 2d 496, 505 (E.D. Pa. 2003) (licensed engineer "with over 40 years of experience in mechanical engineering" qualified to testify as an expert in case alleging damages from a power press, even though he had "never been trained in the repair of power presses, designed a power press or worked for a company that

1.      **Dr. Streit's Testimony Is Relevant, Reliable And Her Testimony Should Not Be Excluded.**

As stated *supra*, Dr. Streit is a Ph.D. chemist who specializes as a forensic investigator and has expertise  in the areas of surface analysis, microanalysis, materials characterization, chemistry, chemical analysis, materials analysis, and chemical safety.  *See* Exhibit 2.  Dr. Streit has experience in the analysis and characterization of many substances including plastic, rubber, glass, ceramics, polymers, paper, textiles, minerals, composites, soot, soil, water and air.  *Id*.

Defendant's motion misses the mark regarding Dr. Streit in numerous respects. Dr. Streit is one of the preeminent experts throughout the Country regarding the investigations of problematic Chinese drywall.[3] Dr. Streit has personally investigated and tested drywall on numerous homes throughout the South. Due to her extensive investigations and testing, Dr. Streit is well familiar with the smell associated with the sulfur gas emissions from Chinese manufactured drywall and how the smell compares to non-Chinese manufactured drywall.  Dr. Streit has testified at length about her observations in this regard, and she has discussed the smell associated with Chinese manufactured drywall in numerous reports.  Accordingly, due to her extensive testing, investigations, reports and previous testimony, Dr. Streit is well-qualified and has a well formed basis to offer the opinions contained in her Rebuttal Report. This is not a complex or abstract matter.  It is well established that the raw gypsum ore smelled.  This is the chemistry. Dr. Streit explains what this chemistry would mean – smell and all – going from the mine and into the production line and factory laboratory.  Again, Dr. Streit is well qualified to

---

designed or serviced a power press"; expert's "review[] [of] hertorical documents on power presses, power press regulations and power press standards and ... [her] review[] [of] the design of a number of other power presses" deemed sufficient).

[3] Indeed, Dr. Streit was one of the first experts retained by the State of Florida to perform an analysis of Chinese manufactured drywall when problems were first discovered in Florida.

offer opinions that, *inter alia*, due to the sulfur odor present in Chinese manufactured drywall, INEX or its agents should have been aware that there was a defect in the Chinese manufactured drywall.

Even still, the smell from the raw gypsum ore was so strong from the beginning of the manufacturing process that it would have been evident to *anyone* that it was contaminated, thus making Ms. Streit's opinion even more reliable. These contaminations remained within the drywall at every stage - from manufacturing to shipping to installation in Plaintiffs' homes. Therefore, even though the smell was strongest during manufacturing, because of the high concentration of sulfur in one area, there is no reason to think that anyone could not have detected the sulfurous smell coming from the mined gypsum.

In its memorandum, despite the fact that Dr. Streit has investigated or performed testing on hundreds of homes, Defendant is asserting that Dr. Streit is not qualified to offer the opinions that she provides, and her opinions are not reliable.  Again, Defendant is merely asserting that the weight of Dr. Streit's testimony should not be given much credence at trial, and Defendant has provided no basis on which to exclude her opinions which are outlined in her Rebuttal Report. Generally, disputes over an expert's qualifications go to the weight of the testimony rather than its admissibility.  *Huss v. Gayden*, 571 F.3d 442 (5th Cir. 2009), rehearing denied, 585 F.3d 823 (5th Cir. 2009), certiorari pending, No. 09-842 (U.S. Jan 18, 2010) ("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility"); *Holbrook v. Lykes Bros. S.S. Co., Inc*., 80 F.3d 777, 782 (3rd Cir. 1996) ("arguments about an expert's qualifications relate more to the weight to be given the expert's testimony than to its admissibility"). *Daubert* standards are considered to be flexible as opposed to hyper-technical, and "the most important question is not whether one party's expert is more

qualified than the other's, but rather, whether an expert's testimony is reliable." *Huss*, 571 F.3d at 455. Therefore, Defendant's Motion should be dismissed because Defendant is merely asserting that the fact finder should not give her opinions much weight.

> **2.  Contrary To Defendant's Argument, Dr. Streit Is Not Serving As A Surrogate For Lydia Luckevich, But She Is Permitted To Base Her Opinion On Information Provided By Ms. Luckevich.**

The judiciary and the Federal Rules of Evidence have acknowledged the modern-day life of professionals and the reality that these experts do not operate in isolation but often work in teams with other experts in the every-day course of their jobs. Experts regularly make decisions based on information provided by others as a part of their profession. Rule 703 of the Federal Rules of Evidence provides in part:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The Federal Rules of Evidence plainly allow an expert to rely on scientific, technical or other specialized knowledge of other experts.  *See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co*., 240 F.3d 1, 9 (1st Cir. 2001) ("[W]hen an expert relies on the opinion of another, such reliance goes to the weight, not the admissibility of the expert's opinion."); *U.S. v. Bonds*, 12 F.3d 540, 566 (6th Cir. 1993) ("Rule 703 permits experts to testify without personal knowledge of the underlying facts or data and permits them to testify on the basis of hearsay or unadmitted evidence, as long as the evidence is of a kind 'reasonably relied upon by experts in the particular field.'"); *Calva-Cerqueira v. United States*, 281 F. Supp. 2d 279, 299-300 (D.D.C. 2003) ("An expert economist may rely on the opinions of other experts.") (emphasis added); *Ash Grove*

8

*Cement Co. v. Employers Ins. Of Wausau*, 246 F.R.D. 656, 661 (D. Kan. 2007) ("[O]rdinarily, an expert may rely on the opinions of another expert if they inform or contribute to her own independent opinions."); *see also Walker v. United Healthcare of Hardin, Inc.,* 2010 WL 3092648, at *2 (W.D. Ky., Aug. 6, 2010) (noting that the Advisory Committee Notes to Rule 703 "recognize that experts may rely upon the opinions of other experts").

It is perfectly reasonable for Dr. Streit to rely on the opinions of Ms. Luckevich  under Rule 703.  Pursuant to Federal Rule of Evidence 703, experts may rely on a broad range of information, facts, and data in forming their expert conclusion. As long as the facts or data considered by the expert are "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," an expert's reliance on those facts or data is proper. Fed. R. Evid. 703; *Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir. 1980) ("The pertinent inquiry under Rule 703 is whether the facts are of a type reasonably relied on by experts in the particular field.")

The rule extends to an expert's reliance on opinions of others, including the opinions of other experts. For example, a physician offered as an expert witness may rely on specialized knowledge gathered from, among other sources, "opinions from nurses, technicians and other doctors, hospital records, and X rays" in rendering opinions, and their "validation, expertlyperformed and subject to cross-examination, ought to suffice for judicial purposes." *Id.* The key consideration is whether the information at issue - in her case, Ms. Luckevich's opinion that, if INEX had performed reasonable testing and inspections of the facilities where the Chinese drywall was manufactured, then INEX would have discovered that there was a defect in the drywall – is of the type that may be reasonably relied on by experts.  *See Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir. 1980); *In re Polypropylene Carpet Antitrust Litig.*, 93 F.

9

Supp. 2d 1348, 1357 (N.D. Ga. 2000) ("Federal Rule of Evidence 703 permits an expert to base an opinion on facts or data not admissible in evidence if it is of a type reasonably relied upon by experts in that particular field."). On that point, Defendant does not (and cannot) offer any objection.

Consistent with the rule that experts may rely on varied sources of information, facts, and data in forming their expert opinions, federal courts routinely allow experts to rely on the opinions of other experts in forming their opinions. S*ee, e.g., Ferrara & DiMercurio v. St. Paul Mercury Ins. Co*., 240 F.3d 1, 9 (1st Cir. 2001) (expert offering opinion concerning cause of fire properly relied on another expert's opinion in forming her conclusion); *Walker v. Soo Line R.R Co*., 208 F.3d 581, 588 (7th Cir. 2000) ("[C]ourts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable"); *United States v. 1,014.16 Acres of Land*, 558 F. Supp. 1238, 1242 (W.D. Mo. 1983) ("[I]t is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion"). Thus, for example, a damages expert charged with calculating the present economic value of lost earnings may rely on another expert's opinions concerning the subject's diminished earning capacity to arrive at a damages calculation. *See Gess v. United States*, 991 F. Supp. 1332, 1350 (M.D. Ala. 1997). Even where a question of the reasonableness of an expert's reliance arises, "when an expert relies on the opinion of another, such reliance goes to the weight, not to the admissibility of the expert's opinion." *Ferrara,* 240 F.3d at 9. *See Walker v. Soo Line R.R*., 208 F.3d 581, 588-89 (7th Cir. 2000); *United States v. 1,104.16 Acres of Land,* 558 F. Supp. 1238, 1242 (W.D. Mo. 1983); 4 Weinstein's Federal Evidence § 703.04[3] at 703-19 (2d ed. 2011) (collecting cases). As one court has explained, "[a]n expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other

fields as background material for arriving at an opinion." *1,14.16 Acres of Land*, 558 F. Supp. at 1242.

Further, it is standard practice for an expert witness who is brought into a case to read firsthand accounts of the factual issues that will form the basis for her opinions, and well established that experts may rely on data and other information supplied by third parties. *Dura Automotive Systems*, 285 F.3d 609, 609 (7th Cir. 2002) ("An expert witness is permitted to use assistants in formulating her expert opinion, and normally they need not themselves testify."). Additionally, analyzing data assembled by others is neither illicit nor unusual, even if the data were prepared for litigation by an interested party. *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-cv-260-Oc-GRJ, 2008 WL 3819752, at *2 (M.D. Fla., August 12, 2008).

In this matter, Dr. Streit has worked with Ms. Luckevich on Chinese manufactured drywall matters since 2009, and they have inspected houses together. *See* Exhibit 3, Streit Dep. pp. 90-91 98:20-99:4. Ms. Luckevich is a fellow chemist and respected expert on gypsum and the manufacturing process of gypsum. *See* Exhibit 4 (December 30, 2009 Case Report by Luckevich p. 1). Contrary to Defendant's assertions, Dr. Streit is not simply parroting the opinions of Ms. Luckevich. Pursuant to Rule 703 and in connection to this case, Dr. Streit consulted at length with Ms. Luckevich and reviewed the analysis prepared by Ms. Luckevich with regard to this case. Similarly to Dr. Streit, Ms. Luckevich is of the opinion that the Chinese manufactured drywall would have emitted a strong sulfur smell during the manufacturing process based upon her understanding of the chemical reaction associated with the manufacture of gypsum wallboard. Dr. Streit considered these opinions, and, when compared to her experience with the chemistry associated with off gassing of Chinese manufactured drywall, Dr.

11

Streit agreed with Ms. Luckevich's factual analysis and opinions and adopted them as part of her opinions in this matter.  Therefore, in accordance with Rule 703, Dr. Streit is permitted to testify as to the factual analysis and opinions she relied upon in forming her opinions.

Defendant's argument to the contrary relies upon *Lightfoot v. Hartford Fire. Ins. Co.*, No. 07-4833, 2011 WL 39010, at *4 (E.D. La. Jan. 4, 2011).  *Lightfoot*, however, is inapposite here. The expert opinion in that case was excluded because there was no evidence that the opinion upon which he relied was of a type upon which experts in her field normally would reasonably rely and because the expert did nothing to verify the facts which formed the basis of the opinion upon which he relied.  *Id.* at *6. No such infirmities characterize Dr. Streit's opinions contained in her Rebuttal Report.  Moreover, instead of solely relying on the report of a third party, as did the expert in *Lightfoo*t, as discussed herein, Dr. Streit relied on her own bases and experience for offering her opinions and applied her own knowledge of Chinese drywall to the case to come to the opinion that, as a distributor, INEX should have inspected the drywall and confirmed that it met the applicable standards.

In any event, reliability under *Daubert* and the Federal Rules of Evidence does not rest on whether an expert has conducted independent research or analysis in a particular field. 509 U.S. at 592 (experts may offer opinions "not based on firsthand knowledge of observations"); *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000) (testimony properly admitted from expert who did not conduct own tests but relied on data provided by third party).There is no requirement that an expert publish an article on the narrow topic that is raised by any particular case in order to provide reliable opinions, and Defendant cites to none.  *See also Ramirez v. Debs-Elias*, 407 F.3d 444, 449-50 (1st Cir. 2005) (expert properly relied on another doctor's published studies in arriving at his conclusions); *Kehm v. Procter & Gamble*

*Co.*, 724 F.2d 613, 617 (8th Cir. 1983) (affirming admissibility of expert testimony based on epidemiological studies where such studies were of type reasonably relied upon by experts in field); *Paddack v. Dave Christensen*, 745 F.2d 1254, 1262 (9th Cir. 1984) (expert properly relied on reports prepared by others); *1014.16 Acres of Land*, 558 F. Supp. at 1242 (expert allowed to rely on opinions of other experts); *Doe v. Cutter*, 971 F.2d 375, 386 (9th Cir. 1992) ("The fact that their expertise may have been acquired through the study of medical literature is not a bar to admissibility.").

Likewise, Defendant's reliance on *Threet v. Corr. Health Care Mgmt. of Okla., Inc.,* 2009 WL 3335596 (W.D. Okla. Oct. 15, 2009) is misplaced.  The *Threet* court rejected opinions when the expert did not "make any meaningful effort to identify particular principles" of science and apply them to issues of case.  *Id.* at 4, 5.  Here, Ms. Streit frequently testified as to the principles or standards relied on by her in forming her opinion. She testified that she was "looking at the manufacturing process from a chemical perspective" based upon her own background qualifications as a chemist.  Streit Dep. p. 45:5-18.  She also testified that she has an expertise in reviewing ASTM testing protocols and in looking at test data as they pertain to the standards.  *Id.* p. 37:18-22.   Ms. Streit relied on her own chemical understanding of what happens in the manufacturing process of drywall, and did not wholly rely on Ms. Luckevich's opinions as the basis for her opinion without further inquiry on her own, unlike the expert in *Threet*.  *Threet*, 2009 WL 3335596, at *6.

Nor does *JRL Enterprises v. Procorp Associates, Inc.,* No. Civ. A 01-2893, 2003 WL 21284020 (E.D. La. June 3, 2003) support Defendant's theory that an expert cannot rely on the projections of a third party.  Rather, "Judge Fallon's ruling [in *JRL Enterprises*] holds that an expert should not blindly rely on the projections of a third party when that third party disavows

the reliability of those projections himself." *Legier and Matherne, Apac v. Great Plains Software, Inc*., No. Civ. A. 03-278, 2004 WL 1488597 (E.D. La. June 30, 2004). The reported facts of *JRL Enterprises* are that a sales manager who had no experience in business projections, created a report upon which an accounting expert relied. The court was concerned that reasonable accountants would not "simply and blindly accept such numbers." *JRL Enterprises*, 2003 WL 21284020, at *8. These facts are completely different than those facing this Court. In *JRL*, the projects were made by a sales manager with no experience in business projects. *Id*. Ms. Luckevich, on the other hand, is a leading expert in Chinese Drywall who has been a consultant to manufacturers for 20 years and is a recognized expert in the field. Streit Dep. pp. 89: 18-25; 92:4-12; 97:4-5. Furthermore, she has extensive experience in this field of business. *Id*. Indeed, Ms. Streit has demonstrated that Ms. Luckevich's analysis is accurate and reliable. Initially, she met and worked alongside Dr. Streit early in the Chinese drywall litigation. Streit Dep. p. 90:7-20; 91:1-3. Ms. Streit testified that Ms. Luckevich is "the person that USG and National and Temple and other people go to as an independent consultant." Streit Dep. pp 91:8-23. Unlike in *JRL*, she has not based her opinion on uncertain projections or similar information, but rather has consulted a trusted and established source for information. Therefore, any opinions Dr. Streit offers which are based on opinions of Ms. Luckevich possess an element of credibility and reliability lacking in the *JRL Enterprises* situation, and cannot be excluded.

      Accordingly, Defendant's Motion should be denied.

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant's Motion.

Respectfully submitted,

Dated: November 14, 2012

/s/ Leonard A. Davis
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
& Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
Daniel@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
119 Washington Avenue
Suite 402
Miami Beach, FL 33139
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony Irpino
Irpino Law Firm
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this14th day of November, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*