**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                                  **MDL NO. 2047**
                                                            **SECTION: L**

                                                            **JUDGE FALLON**
                                                            **MAG. JUDGE WILKINSON**

THIS DOCUMENT RELATES TO:
*CASES SET FOR TRIAL INVOLVING INTERIOR/*
*EXTERIOR AND NORTH RIVER*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>**PLAINTIFF-INTERVENORS' MEMORANDUM IN OPPOSITION**</u>
<u>**TO NORTH RIVER MOTION TO EXCLUDE/LIMIT**</u>
<u>**TESTIMONY OF ROSEMARY COATES**</u>

**MAY IT PLEASE THE COURT:**

Ms. Rosemary Coates is a global supply chain management consultant with over twenty-five years of experience in this field. Her work specifically emphasizes consulting and strategizing with American businesses which decide to source Chinese-manufactured products; and as a consultant in this regard she routinely addresses, among other things, the processes of quality control, testing and assurance which are advisable when businesses choose to sell Chinese-manufactured products in the United States.

Ms. Coates has an MBA with a study focus in Finance and Operations Management. She is a licensed U.S. Customs Broker. She has taught college courses on International Business and Export/Import Management for over ten years. She is the author of the best-selling book "42 Rules for Sourcing and Manufacturing in China." Her articles on doing business in China, and specifically on global supply chain activity and sourcing foreign-made products, have been widely published in peer-reviewed literature and are also the subject of papers presented at professional conferences.

It remains unclear to plaintiffs' counsel after reading the instant motion by defendant North River whether the insurer challenges Ms. Coates' methodology under *Daubert*, her qualifications under FRE 702, or a combination of the two.  But, however construed, the motion lacks merit both factually and legally.  Ms. Coates is well-qualified to testify before the jury in the November 26 trial, and all of the opinions she will express are both methodologically-sound and clearly within the relevant areas of her expertise.

The first of the five aspects of the opinion testimony of Ms. Coates addressed by North River are her views about the duty of an "importer."  The insurer argues these views are "irrelevant to the redhibition claims" of plaintiffs, since INEX is a "seller" as to these claims.  This purported distinction between INEX as an "importer" and INEX as a "seller," however, places title before substance, and reduces to a factual distinction which is of little moment in this liability trial.  INEX undertook to source, select, import and sell Chinese-manufactured drywall, and the jury question whether it exercised appropriate due diligence as a seller for purposes of redhibition, can be answered only in the factual context applicable to this case.  What INEX <u>as a seller</u> knew or should have known about the defectiveness of Chinese drywall, in other words, is to be determined by what INEX knew or should have known based upon its decision to source, select, import and sell Chinese drywall.

Neither does the purported distinction between "importer" and "seller" matter in terms of the due diligence standard of care applicable herein.  Defendant's own expert James Tompkins has acknowledged as much in his trial testimony deposition:

> Q.    Let me ask the question a different way.  Whether you put
>        on INEX the hat of importer and distributor or just
>        distributor, whatever the titles are, you agree that INEX still

had a responsibility to vet these manufacturers, correct?

A.      Yes sir.

Q.      And that vetting responsibility doesn't change because
        you're calling them different things, either
        importer/distributor or just distributor?

A.      That's correct.

*See* excerpts from James Tompkins deposition of 11/7/2012 at pp. 62-63.

Every defendant in redhibition brings to the moment of sale a level of knowledge, or lack of knowledge, as to the quality of what it is selling.  What INEX failed to do in the process of sourcing and selecting this drywall, is relevant to what it failed to know at the time of sale; and this is within the purview of Ms. Coates to address as an expert in her field.

The second opinion challenged in the motion is Ms. Coates' conclusions regarding the failure of INEX to properly investigate and inspect these manufacturing plants and these building products for quality control and assurance purposes.  North River argues that "Louisiana law is absolutely clear and consistent that a seller has no duty to inspect or test a product for <u>latent or hidden</u> defects."  *See* North River Memorandum at p. 4 [emphasis added].

Of course, the way North River's counsel frames this assertion shapes the legal analysis at issue.  Plaintiffs adamantly oppose the insurer's position that the defectiveness of this drywall was hidden from, and not discoverable by, INEX.  On the contrary, plaintiffs will present evidence that the defectiveness of this drywall's gypsum could, and should, have been discovered through the type of audit and investigation reasonably to be expected of the seller of a Chinese-made building product.  In any fair audit or inspection, it is more probable than not that the strong odor of sulfur

would have been detectable to the observer; and it is nothing short of remarkable that, after making preliminary arrangements to do so, INEX did not bother to send even one representative to the manufacturing facility of either Knauf or Taishan.  Moreover, even after receiving the product, INEX ignored indications that the gypsum component of Chinese drywall was not of the same quality a that of domestic drywall.

The defendant insurer's contention that Louisiana redhibition case law has abrogated the seller's duty to inspect its product, already has been challenged and discussed by plaintiffs in opposing the pending motions *in limine* on the appropriate standard of proof for the redhibition liability of a seller "with knowledge."  The cited authority and arguments therein are respectfully incorporated and repeated for present purposes.  *See* Plaintiffs' Memo in Opposition to Motions on Standard of Proof (Doc. 16147).

Interestingly, one of the key decisions discussed by plaintiffs in this prior briefing (at pp. 9-10) is not cited or mentioned in the North River memorandum in support of this motion:  In *Boos v. Benson Jeep-Eagle Co., Inc.*, 717 So.2d 651 (La. App. 4th Cir. 1998), *writ den'd*, 728 So.2d 387 (La. S.Ct. 1998), plaintiff brought redhibition claims against an automobile dealership based upon previous, undisclosed flood damage to a purchased vehicle.  Plaintiff argued that the dealer, as seller, should have inspected the vehicle and discovered this prior damage.  The Court reasoned that the duty of prior inspection, although not extended in the case of every seller and every sales transaction and although not required to uncover every possible defect, nonetheless is a duty which may arise from the position of the seller and the reasonable expectations of the purchaser.  The language of this holding remains authoritative, the Louisiana Supreme Court having declined to review or change it:

-4-

> [W]e do not mean to imply that it is reasonable to expect...an inspection [by the seller] to uncover every defect no matter how subtle.  However, <u>where it is reasonable to expect that an inspection was made by the [seller], the burden is on the [seller] to show that a reasonable inspection was made and no defects were discovered, or that no inspection was made but the defect was of the nature that, more probably than not, it would not have been discovered by such an inspection</u>.

717 So.2d at 656 [emphasis added].

In this case, defendants own liability expert Jim Tompkins has given trial testimony by deposition that the distributor/seller of Chinese-manufactured products has a duty of not just ordinary due diligence, but is bound by the "rule of 4 Ds," i.e., due diligence, due diligence:

> Q.    Did you coin the phrase, the six D's?
>
> A.    Actually, my partner, Steve Ganster, came up with that.  I stole that from him.
>
> Q.    Due diligence, due diligence, due diligence, right?
>
> A.    Yes.
>
> Q.    Do you agree that a company sourcing a product from China should observe the 6D rule and exercise due diligence, due diligence, due diligence?
>
> A.    I think Rich Morrison should because he is in a five-step supply chain, and that's actually critical that that take place.
>
> Q.    Do you think that the 6D rule has any applicability in the four-step supply chain that you've defined?
>
> A.    To a lesser degree, but sure.
>
> Q.    So where do we go, from 6 to 5Ds?
>
> A.    I was thinking 4.
>
> Q.    6 to 4.  Good enough.  So for the four-step process that

> INEX was involved in, it's not just due diligence, but it's
> due diligence, due diligence, --

A.    Yes.

Q.    –the rule of 4Ds?

A.    Yes.

*See* excerpts from James Tompkins deposition of 11/7/2012 at pp. 80-81.

INEX was aware of the domestic drywall shortage during post-Katrina rebuilding in this community, and specifically undertook to sell to those in need of drywall because of the disaster of that storm.  Plaintiffs submit that, in these circumstances, it surely was reasonable for plaintiffs to assume that the very entity which was solely responsible for bringing Chinese-manufactured drywall into this community would have conducted at least a minimum inspection or investigation to determine whether the drywall was defective.  INEX instead failed to vet these Chinese manufacturers, conduct a single audit of their processes, or obtain any verification of one written test report from a government-owned Chinese plant which reflected supposed testing by a Chinese government agency.  To say that INEX chose to overlook profound and publicized differences in Chinese business culture which account for differences in quality assurances and control, is an understatement; to say that INEX failed to conduct even a minimal quality inspection of the drywall despite the reasonable expectations of customers, is obvious.

The third challenge to Ms. Coates does not address methodology or qualifications, but merely restates the argument that, since the sulfur contamination of raw gypsum is "unheard of" and would not have been foreseen by anyone in the industry, Ms. Coates' opinions about the need to test and inspect are "meaningless."  Of course plaintiffs disagree, and intend to show at trial that

defendants' view of the nature and foreseeability of this sulfur contamination is inconsistent with industry practices and protocol at all times pertinent.  The need to separate sulfur form raw gypsum is a basic necessity in drywall manufacturing.  Nonetheless, questions about foreseeability and discoverability are for the jury to resolve; and barring Ms. Coates' testimony so as to preempt such jury consideration is both unnecessary and inappropriate.

Defendant North River next argues that Ms. Coates should not be allowed to rely upon the findings of Ms. Lydia Luckevich, as she (Ms. Coates) does in her rebuttal report.[1]  As the Court will recall, this reliance grows directly out of the inability of plaintiffs, based on defendants' objection, to engage Ms. Luckevich directly as an expert in rebuttal to the opinions of defendant expert Tonyan that only sophisticated scientific testing could uncover the "latent" defect of sulfur off-gassing in Chinese drywall.

Defendants' main argument appears to be that Ms. Luckevich is not necessarily a reliable source within the meaning of FRE 703, since Ms. Coates did not independently investigate her and find her to be reliable.  Yet the language in FRE 703 is purposefully broad:

---

[1]The capitalized and bold-printed heading in North River's memorandum to the effect that Rosemary Coates has offered "mindless repetition" of Ms. Lukevich's opinions, is both offensive and professionally uncalled for in this matter.  No doubt due to her credentials and the fact she is not a "professional expert" witness, Rosemary Coates has been the subject of criticism and attack which is unbecoming of the legal system into which she has been invited to participate.  These attacks begin with the expert report of Dr. Tompkins himself, who labled Ms. Coates' opinions as "reckless" and "hypocritical," and suggested that in stating her views she was "perhaps...liable for neglect."

Only because Dr. Tompkins chose not to repeat these attacks in his trial testimony by deposition, has there been no motion by plaintiff to strike.  But the undersigned takes offense at these "*ad hominem*" attacks on plaintiffs' expert, and will look to the Court to admonish defendants' counsel at trial to find a way to disagree with, without being disrespectful toward, Rosemary Coates as an opposing witness.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonable rely on those kinds of facts or data informing an opinion on the subject, they need not be admissible for the opinion to be admitted.

Rule 703, FRE.  Nowhere in the rule is it stated that the testifying expert must conduct an independent investigation as to the reliability of facts or data from a consulted expert, especially where, as here, other evidence at trial (the testimony of other plaintiffs' experts) will establish the credentials and qualifications of Ms. Luckevich before Ms. Coates takes the stand.

Finally, North River challenges Ms. Coates' opinions about the relationship between the heaviness and brittleness of drywall and its "sulfur content," and suggests that this may be a matter of common sense, but it is not the proper subject of expert testimony.

Plaintiffs would agree that the relationship between the heaviness or brittleness of drywall and the gypsum of the drywall is a matter of common sense.  Indeed, to suggest that foreign-produced drywall was known by INEX to be heavier and more brittle dating back as far as 1999, is precisely to suggest that INEX was aware long before it sold Chinese drywall that the raw gypsum of foreign-made drywall was of a quality different than the raw gypsum of domestic drywall.  More fundamentally, plaintiffs also agree that the relationship between heaviness/brittleness and gypsum, as opposed to heaviness or brittleness being explained by paper, and tape, etc., is a matter of common sense.  Indeed, INEX owner Clay Geary has testified in his discovery deposition that the heaviness or brittleness of drywall does relate to the "product itself," meaning the gypsum itself.

Yet, despite these self-evident facts, it was counsel for defendants who chose to challenge Ms. Coates in her deposition as to how she relates complaints of heaviness and brittleness to

gypsum.  She resorted to common sense, which, again, is the basis for the relationship.

North River now attempts to extend this common-sense issue by casting Ms. Coates'
opinion as slightly different, i.e., that she opined there is an automatic relationship between
heaviness/brittleness and high sulfur content in gypsum.  Such a relationship may exist; but Ms.
Coates did not testify, and will not testify, that it does exist.  She rather opined that heaviness and
brittleness, like high sulfur, all relate to the same raw material in the drywall, i.e., gypsum.  The
point is that there were indications to provoke a reasonable and prudent investigation into the
quality of the gypsum in Chinese drywall, which in turn would have, more likely than not, lead to
the discoverable defect of high sulfur content.

Perhaps INEX and North River should stipulate that heaviness and brittleness are, like
sulfur contamination, related to the gypsum in drywall.  If so, any testimony or evidence on the
matter becomes moot.

For all these reasons, it is respectfully suggested that the instant motion is without merit
and should be denied.  The motion fails to present a cogent basis for excluding or limiting the
testimony of Rosemary Coates as an expert, either under the *Daubert* analysis or under the
language and jurisprudence of FRE 702.  It instead contains arguments as to merits and the weight
of the evidence to be assigned by the jury.  There is no need for this Court to limit or exclude, in
advance of trial, the expected expert testimony of Rosemary Coates.

Respectfully submitted,

Dated: November 9, 2012

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

-10-

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
Daniel@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
119 Washington Avenue
Suite 402
Miami Beach, FL 33139
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 14th day of November, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*

-13-