UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) | CIVIL ACTION NO. 09-2047 <br><br> JUDGE FALLON |
| This Document Relates to: ALL CASES | ) | MAGISTRATE WILKINSON |

INTERIOR EXTERIOR'S OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF DR. TIMOTHY TONYAN

MAY IT PLEASE THE COURT:

Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("Interior Exterior") respectfully opposes Plaintiffs' Motion to Exclude the Expert Testimony of Dr. Timothy Tonyan because he is more than qualified to render his opinions in this matter and through his experience his opinions are reliable.

**A. Dr. Tonyan is the only expert in this matter who is qualified to opine on matters of manufacturing, distribution and testing of gypsum wallboard products.**

Dr. Timothy Tonyan may be one of the only expert in this matter that has the expertise to offer any testimony and opinions that Interior Exterior was prudent and met the standard of care as a distributor of residential drywall. Under Rule 702 of the Federal Rules of Evidence, an expert qualified by "knowledge, skill, experience, training, or education" is allowed to give testimony where his or her "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589. In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [should be] based mainly on his personal

observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

Dr. Tonyan has more than 30 years of professional experience in the building construction industry.[1] Dr. Tonyan has the knowledge, skill, experience and training in gypsum based building materials that will assist the trier of fact in its ultimate determination of whether Interior Exterior knew that the Chinese manufacturer drywall contained a latent defect - that is the drywall off-gassed sulfurous compounds.  Although, Dr. Timothy Tonyan has more than ten (10) years of experience with one of the country's foremost manufacturer's of wallboard, working in and managing its research and testing laboratory facilities and communication with its distributions, the Plaintiffs allege that Dr. Tonyan does not have the requisite experience to opine that: (1) Interior Exterior exercised a reasonable standard of care with respect to the importation of Chinese manufactured drywall; and (2) Interior Exterior was not aware and had no reasonable means of being aware that the drywall was defective.

Plaintiffs' allegations that Dr. Tonyan does not have the requisite experience, is simply not accurate.  In his current position as Vice-President of CTL Group he consults and researches on numerous building materials, but specifically on cementitious and *gypsum* based composite materials.[2]  But prior to his position within CTL Group, Dr. Tonyan worked with United States Gypsum ("USG') for 10 years.  In those 10 years, his responsibilities included the testing of residential drywall and new wallboard products per ASTM standards.[3]  ASTM testing enables certain physical characteristics of the board to be measured in a consistent way.[4]  Part of this

---

[1] *See* Exhibit C of Plaintiffs' Motion to Exclude the Expert Report and Testimony of Dr. Timothy Tonyan, deposition of Dr. Timothy Tonyan p. 45:13-17.
[2] *See* Exhibit B of Plaintiffs' Motion to Exclude the Expert Report and Testimony of Dr. Timothy Tonyan, CV of Dr. Timothy Tonyan.
[3] Deposition of Dr. Timothy Tonyan at 24:9-18.
[4] Deposition of Dr. Tonyan at 33:3-5.

process necessarily required that he apply the tests outlined in ASTM for physical characteristics and properties. That is he took both residential drywall and new products, tested both products to determine if they met ASTM standards, and then compared both products to each other in furtherance of product development and research.

While in his tenure at USG, he managed the Architectural System Lab at USG Research.[5] While at the Architectural Systems Lab, he worked on sheetrock product projects in product development, research and development, and with customer complaints.[6] Part of his responsibilities as a manager of Architectural System Lab was to review all technical literature and information that was provided to distributors for accuracy. He is intimately involved with ASTM testing of wallboard products, including drywall, in part to compare the new products against regular drywall.[7] Dr. Tonyan also played a significant role in USG's quality control, monitoring and establishing procedures and *certifications* for *gypsum* products.[8]

Moreover, it is through his personal experience working as a manager with Architectural System Lab at USG that Dr. Tonyan learned that distributors completely rely on the information that manufacturers provide to them.[9] He is thoroughly aware of the reliance of certificates from manufacturers of wallboard within the industry.[10] He is acutely aware of this because he had regular interactions with distributors of products.[11] Moreover, from his extensive personal experience within in the industry and his interactions with distributors, he learned that

---

[5] Deposition of Dr. Tonyan at 37:23-24.
[6] Deposition of Dr. Tonyan at 67:8-20.
[7] Deposition of Dr. Tonyan at 27:4-8.
[8] Deposition of Dr. Tonyan at 27:9-18.
[9] Deposition of Dr. Tonyan at 39:2-6.
[10] Deposition of Dr. Tonyan at 34:14-21.
[11] Deposition of Dr. Tonyan at 35:19-36:2; 37:7-38:10; 39:2-6.

distributors would not further test the products.[12] Rather, distributors customarily rely of the manufacturers' certification of their products.

Notwithstanding his lengthy experience at USG, Dr. Tonyan also worked with Davis Consulting Company, a company involved in project management and construction scheduling consultantation.[13] While working with Davis Consulting Company he worked with contractors, owners, regulatory officials in complex development projects in Chicago and Arizona.[14] Through this work with Davis Consulting Company Dr. Tonyan worked extensively with distributors of building materials and distributors' reliance on manufacturers' certifications of product performance.

But if his experience at USG and with Davis Consulting was not enough, Dr. Tonyan holds seventeen (17) patents in various wallboard products.[15] Contrary to plaintiffs' assertion, some of the patents held by Dr. Tonyan deal specifically with gypsum based panels and used in residential construction.[16] The application of these patents required extensive knowledge of regular gypsum wallboard. Moreover, the development, research and testing for the patent products required extensive testing in accordance with ASTM standards.

Accordingly, through Dr. Timothy Tonyan's extensive experience, he is acutely qualified to opine on the manufacturing process of drywall; that the testing of physical characteristics of Chinese manufactured drywall per ASTM standards would not have uncovered that the board off-gassed sulfurous compounds; and Interior Exterior was reasonable in relying on manufacturers' certifications that the wallboard met ASTM standards.

---

[12] Deposition of Dr. Tonyan at 40:20-24.
[13] Deposition of Dr. Tonyan at 71:25-72:14.
[14] Deposition of Dr. Tonyan at 71:25-72:25.
[15] Deposition of Dr. Tonyan at 60:1-61:25; See also Exhibit B.
[16] Deposition of Dr. Tonyan at 60:1-61:25.

**B. Dr. Tonyan's opinions are reliable because of his personal experience and extensive knowledge with wallboard distributors.**

Plaintiffs also allege that Dr. Tonyan's opinions are not reliable. Again, Dr. Tonyan's professional experience relating to distributor reliance on manufacturing certificates is profound. Through his management of USG's Architectural System Lab and his extensive work with the Davis Consulting Company he worked closely with and learned the industry standard of relying on manufacturing certificates. While at Architectural System Lab he routinely worked with distributors concerning product performance and product defects. Thereafter, his work with Davis Consulting Company reaffirmed his knowledge that distributors and customers rely on manufacturers' certifications that certain products meet ASTM standards; and that distributors do not further test the products.

Dr. Tonyan's has 30 years of experience within the construction industry, in part with development of new wallboard products with a major manufacturer of drywall and with his direct dealings with contractors and distributors in complex master community projects in Chicago and Arizona. This long history of working within the building materials industry serves as a formidable foundation of which Dr. Tonyan's opinion as to Interior Exterior's reliance on the manufacturers' certifications were standard within the industry.

Additionally, Dr. Tonyan's experience within the manufacturing process, the development of new wallboard materials, and extensive testing of wallboard pursuant to ASTM standards places Dr. Tonyan in an unique position to opine as to the types of testing done by a wallboard manufacturer and to further opine as to what the results of those testing would show. Dr. Tonyan is simply the one expert that can logically state, without speculation, that the testing of the Chinese manufactured for physical characteristics and properties pursuant to ASTM standards would not have revealed the latent defect that the board emits sulfurous compounds.

Dr. Tonyan can state this opinion because in his professional experience as a researcher and developer of new wallboard products, he tests and re-tests wallboard, including residential gypsum drywall, against ASTM standards and other products – he has done this throughout his professional career which spans thirty-some years.

Dr. Tonyan's formidable experience forms, and is the basis of, his reliable opinions. Dr. Tonyan has extensive experience working with a drywall manufacturer. Specifically, he knows the types of research and testing a drywall manufacturer performs on its products to meet internal and industry standards and the documents relied upon by a distribution. He has reviewed and analyzed evidence and certifications that show that the Chinese drywall product met ASTM standards, with which he is intimately familiar. Accordingly, his opinion that Interior Exterior did not deviate from the standard of care as a distributor in that they relied on a manufacturer's certificates that the products met certain standard, are based on his experience working with a drywall manufacturer and as a consultant for a development projects and his review of the evidence that will be presented at trial.

Dr. Tonyan's opinion that Interior Exterior could not have known or had no reasonable means to being aware of the latent defect, is also reliable and based upon his specialized experience of working in the research and new product development areas for a drywall manufacturer. Dr. Tonyan is aware of the standard battery of testing done on drywall, having personally performed and overseen this exact testing, and knows that this testing would not have revealed the sulfur off-gassing defect at his. He has also reviewed the tests results done by USG of the Knauf board, which was purchased by USG from Interior Exterior[17]. He has analyzed the results of those tests and from his own experience of working in a similar, if not identical type

---

[17] Contrary to Plaintiffs' assertions, purchase records establish that the Knauf drywall tested by USG was, in fact, defective KPT drywall and not non-reactive Knauf Wuhu drywall.

lab with USG, he knows the types of testing the Knauf board was put through and what the results of those testing would indicate. Thus, in his extensive experience in working and researching different types of wallboard with a drywall manufacturer, his reliably concludes that Interior Exterior would not have a reasonable means of being aware of the latent defect. That is – the tests conducted to determine if the drywall board met ASTM standards, would not have led Interior Exterior to conduct further destructive chemical analysis of the problem drywall to determine if the drywall was off-gassing sulfurous elements.

Lastly, to the extent that Plaintiffs arguments have any merit, they go to the weight to be given to Dr. Tonyan's opinions but not the admissibility of those opinions.

### C. Conclusion

Accordingly, Interior Exterior respectfully prays that plaintiffs' Motion to Exclude the Expert Testimony of Dr. Timothy Tonyan be denied.

Respectfully submitted,

*Richard G. Duplantier, Jr.   /s/*
Richard G. Duplantier, Jr. (# 18874)
Lambert J. Hassinger, Jr. (# 21683)
Benjamin R. Grau (#26307)
Carlina C. Eiselen, (# 28524)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone: (504) 525-6802 / Fax: (504) 525-2456
rduplantier@gjtbs.com /jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com
*Counsel for Defendant, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, LLC*

**Certificate of Service**

The undersigned certifies that this document has been served on Plaintiffs' Liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 12th day of November, 2012.

*Richard G. Duplantier, Jr.  /s/*
RICHARD G. DUPLANTIER, JR.