## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047
SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*CASES SET FOR TRIAL INVOLVING INTERIOR/*
*EXTERIOR AND NORTH RIVER*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFFS' MEMORANDUM IN OPPOSITION
### TO INTERIOR EXTERIOR'S MOTION IN LIMINE
### REGARDING ROSEMARY COATES

**MAY IT PLEASE THE COURT:**

The instant motion *in limine* by INEX raises several arguments which, though expressions of advocacy, do not establish a basis in law or in fact for the requested relief of "prohibiting the Plaintiffs from presenting any opinion testimony from Rosemary Coates...." The arguments of defendant will be rebutted in the order presented.

### (1) The qualifications of Rosemary Coates

In challenging Ms. Coates' qualifications, defendant makes a number of misstatements about the nature and scope of her proposed testimony at trial. It is important at the outset, therefore, to clarify the following:

In her original report, Ms. Coates set forth the following summary of her opinions:

> Interior/Exterior Building Supply, LLP (INEX), did not adhere to the standard of care for the building materials industry and for importers of Chinese goods. INEX was not diligent in its assessment of its suppliers or the suppliers' products and the related procurement of the Chinese manufactured drywall products during 2005-2006. INEX failed to act as a reasonably prudent buyer and importer and as a result, defective Chinese drywall was

allowed to enter the US market, and to be distributed for installation in private homes. Even though INEX had the opportunity to check the quality of the Chinese drywall, it failed to do so. In addition, during 2005-2006, there was ample public information about defective Chinese products in the public domain such as newspaper and magazine articles and news stories, such that INEX would have been aware of quality issues with Chinese imports. Like many companies buying from China, INEX should have engaged SGS, or other quality assurance and lab testing companies, to test the product quality before the drywall left China. But INEX did not perform any supplier reviews, quality checks nor did they engage an outside firm to do any quality testing. INEX did not check references of the Knauf or Taishan manufacturing sites, they did not visit the Knauf or Taishan Chinese operations, they did not request to review drywall samples nor did they ask for proof of lab testing of any materials. INEX did not engage inspection services, consultants or sourcing services to validate the production process nor validate the quality and content of raw materials. They took no steps to have the products either inspected during the manufacturing process or tested for quality after delivery to the US. INEX was not a first-time importer. The company had experience in importing drywall as far back as 1999, and based on this experience should have been alert to potential quality problems with imported drywall in 2005-2006.

¶15, Coates Report of 9/21/12.

In her rebuttal expert report, Ms. Coates elaborated as follows:

(1)     INEX failed to exercise the appropriate level of due diligence as the importer and seller of Chinese drywall, because it failed to conduct a rigorous audit of the manufacturers' drywall process, including a request for relevant documentation related to both written certifications of standard compliance, and the procurement and processing of raw materials;

(2)     INEX breached the applicable standard of due diligence by failing to properly "vet" the drywall manufacturers in this case as reliable sources for the product;

(3)     INEX failed to positively validate the certification of ASTM standards, despite

questions raised about the ASTM certification of the Taishan plant, and despite

knowledge that there were customer concerns about the quality of the gypsum of

the imported Chinese drywall (specifically, that it was heavy and brittle);

(4)     there was ample information and literature in the public domain about the

problem with defective or substandard Chinese-made products during in the 2005-

2006 time frame, none of which appears to have been taken into account by INEX

as the prospective seller of Chinese drywall; and

(5)     based upon the information from Ms. Lydia Luckevich, it appears that a visit to an

audit of, the manufacturing sites in this case likely would have uncovered

evidence that the Chinese drywall being purchased did not comply with US

standards of quality.

Each and every one of the above opinions, not all of which defendants' counsel chose to

question Ms. Coates about in her deposition, fall well within her qualifications and expertise.  In

fact, not cited by counsel in its memorandum, was Ms. Coates' testimony during her deposition

that she is a manufacturing process expert, and in her work is called upon to visit plants and audit

the manufacturing process.  She professionally observes, investigates, and evaluates such

processes for clients, and is fully capable of conducting a "factory audit."  She specifically has

been to raw material sites in this connection.  *See* 10/30/12 deposition of Rosemary Coates

[attached as Exhibit 1 to defendant memorandum, Doc. 16196-2] at pp. 23-24.

The fact that this expert has no prior experience with the manufacturing of drywall as a

product (which is the same that can be said of defendant's opposing expert Jim Tompkins), goes

-3-

to the weight and not admissibility of her testimony.  Ms. Coates has extensive experience advising distributors of Chinese-made products about how to audit the Chinese manufacturing process and assure that the product meets quality standards.  Whether or not she previously has done so for the sale of Chinese-manufactured drywall, she has the credentials to explain the jury the principles, industry standards, and actions which apply when she advises a company like INEX about the level of due diligence it should achieve in deciding to source and sell a Chinese-manufactured product.

In terms of background and qualifications, it also should be noted that Rosemary Coates has unquestionable credentials.  She is a global supply chain management consultant with over twenty-five years of experience in this field.  Her work specifically emphasizes consulting and strategizing with American businesses which decide to source Chinese-manufactured products; and as a consultant in this regard she routinely addresses, among other things, the processes of quality control, testing and assurance which are advisable when businesses choose to sell Chinese-manufactured products in the United States.

Ms. Coates has an MBA with a study focus in Finance and Operations Management.  She is a licensed U.S. Customs Broker.  She has taught college courses on International Business and Export/Import Management for over ten years.  She is the author of the best-selling book "42 Rules for Sourcing and Manufacturing in China."  Her articles on doing business in China, and specifically on global supply chain activity and sourcing foreign-made products, have been widely published in peer-reviewed literature and are also the subject of papers presented at professional conferences.

### (2) The reliability of the opinions of Rosemary Coates

Because defendants chose in the deposition of Ms. Coates not to ask her questions about her core opinions, but rather to focus upon her specific experience with ASTM standards, drywall in particular as a product, and her reliance on information from Lydia Luckevich about the discoverability of gypsum problems during a plant audit, much of the balance of the INEX memo in support of this motion does not truly address the reliability of the above-stated opinion testimony which <u>plaintiffs</u> will seek to elicit from Rosemary Coates at trial.  Nonetheless, in response to the "unreliability" arguments raised, it generally appears that weight-of-the-evidence arguments, not authority for inadmissibility, are the subject of this motion.

First, as already discussed, whether or not Rosemary Coates has prior experience with drywall products and the manufacturing of drywall is not an admissibility question.  If it were, the jury would hear from neither Dr. Tompkins (defendant's supply chain expert) nor Ms. Coates.  The lack of specific drywall manufacturing experience or knowledge prior to this case, may well be a matter for the jury to consider in weighing their respective opinions.  It is not a basis for excluding the opinions from evidence.

Although ASTM standards on product labeling are referenced by Ms. Coates in her reports, plaintiffs at trial chiefly will rely upon the expert testimony of Dean Rutila and/or Lori Streit with respect to the specific ASTM standards at issue in this case.  If the Court has doubt about the credentials and qualifications of Rosemary Coates to discuss ASTM standards, it is asked to await the time when she actually testifies, since her testimony about specific labeling requirements in the ASTM may not even be presented or become necessary, given the expected testimony of other plaintiff experts.  Plaintiffs acknowledge the need to avoid duplicative opinion

testimony in this trial.

Defendant's further argument that Ms. Coates' opinions are unreliable because she did not fully or properly understand the fact testimony of certain witnesses (e.g., Ray Stoltz), again goes to weight, not admissibility.  Plaintiffs submit, however, that Mr. Stoltz did testify in a way that is correctly summarized and relied upon by Rosemary Coates.  As a former customer of INEX, this gentleman requested in 1999 that the company not sell him imported drywall, because installers and handlers had walked off the job using imported drywall due to it being heavy and brittle.  Nonetheless, Mr. Stoltz and his employer in 2005-6, Louisiana Lumber, received Chinese drywall from INEX, and INEX did not even inform Louisiana Lumber/Mr. Stoltz that this had occurred.  It was only after complaints were received by homeowners that Mr. Stoltz and Louisiana Lumber discovered that not only had INEX sold them imported drywall again despite their longstanding request to the contrary, but also had charged them the same (higher) price for Chinese drywall that INEX was charging for domestic drywall.

INEX further challenges Ms. Coates' testimony that the reported heaviness and brittleness of Chinese drywall made it defective; but she testified to no such thing.  What Ms. Coates stated in her deposition was that the heaviness of drywall <u>may</u> make the product unfit for construction, just as the brittleness may do so.  *See id.* at 95-96.  She did not state that the drywall needed to be removed from homes solely due to brittleness, and she herself did not testify that the high sulfur content of the drywall is what makes it heavy and brittle.  *See id.* at 97, 100-01, 107.

Ultimately, what Ms. Coates concludes is in accord with the "common sense" view that high sulfur, heaviness and brittleness all relate to drywall's <u>gypsum</u>.  *See id.* at 129.  She therefore believes the heaviness and brittleness were "red flags" about the quality of the

gypsum/drywall.  *See id.* at 161.

Finally, INEX argues that Ms. Coates' opinions are unreliable to the extent they are based upon information received from Lydia Luckevich.  Because Ms. Coates admittedly did not conduct an independent verification of the background or qualifications of Ms. Luckevich, INEX argues that she is precluded from offering any opinion based upon what Ms. Luckevich says.

In the first place, it is important to note that other plaintiff experts, in particular Lori Streit, have worked with Lydia Luckevich in this litigation for several years; they can and will (at trial) attest to the qualifications and credentials of Ms. Lukevich.  When Rosemary Coates was given the opinions of Ms. Luckevich upon which to rely for a limited purpose of rebutting expert testimony by defendants regarding the "undiscoverability" of the sulfur problem with drywall, it was reasonable for her not to feel obliged to conduct her own independent analysis and investigation of Ms. Luckevich's background.  Other plaintiff experts already had established a working relationship with Ms. Luckevich.  Ms. Coates accepted her as qualified on this basis.

The underlying purpose for this Court to address the reliability of experts in advance of trial, is not served by defendant's challenge to Ms. Coates' failure to conduct her own evaluation of Lydia Luckevich.  It is anticipated that Ms. Coates will take the stand only after the testimony of other plaintiff experts regarding the background and qualifications of Lydia Luckevich.  To the extent Ms. Coates herself is asked to comment on what a factory audit may have uncovered in terms of sulfur contamination (which plaintiffs may not even be required to ask her, depending on the testimony from other experts), it is respectfully submitted that this issue of Ms. Coates' reliance on Ms. Luckevich is one which need not be resolved at this time.  Depending on developments at trial, the issue may be moot.  At the very least, the Court at trial will have heard

the testimony of other plaintiff experts regarding the background and credentials of Lydia
Luckevich.

                                      Respectfully submitted,

Dated: November 9, 2012               /s/ Russ M. Herman
                                      Russ M. Herman, Esquire (Bar No. 6819)
                                      Leonard A. Davis, Esquire (Bar No. 14190)
                                      Stephen J. Herman, Esquire (Bar No. 23129)
                                      HERMAN, HERMAN & KATZ, L.L.C.
                                      820 O'Keefe Avenue
                                      New Orleans, Louisiana 70113
                                      Phone: (504) 581-4892
                                      Fax: (504) 561-6024
                                      LDavis@hhklawfirm.com
                                      *Plaintiffs' Liaison Counsel*
                                      *MDL 2047*

                                      Arnold Levin
                                      Fred S. Longer
                                      Matthew C. Gaughan
                                      Levin, Fishbein, Sedran & Berman
                                      510 Walnut Street, Suite 500
                                      Philadelphia, PA 19106
                                      215-592-1500 (phone)
                                      215-592-4663 (fax)
                                      Alevin@lfsblaw.com
                                      *Plaintiffs' Lead Counsel*
                                      *MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
Daniel@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

Victor M. Diaz, Jr.
119 Washington Avenue
Suite 402
Miami Beach, FL 33139
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 14th day of November, 2012.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*