# EXHIBIT A

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA
CASE NO.:
**CLASS REPRESENTATION**
**JURY TRIAL DEMANDED**

IN RE: CHINESE DRYWALL LITIGATION

DARIO ORLANDO; STEPHEN SINES;
DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI;
OCEANPARK ESTATES ASSOCIATION,
INC; and DOCKSIDE LOFTS CONDOMINIUM
ASSOCIATION, INC., individually and
as representatives of others similarly situated,

10  28090

12

*Plaintiffs,*

vs.

BANNER SUPPLY CO.., a Florida corporation,

*Defendant.*



A TRUE COPY

JUL. 0 9 2010

HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

## CLASS ACTION COMPLAINT

Plaintiffs, DARIO ORLANDO, STEPHEN SINES, DAVID AND JOAN GLICKMAN;
THOMAS WOJCIECHOWSKI; OCEANPARK ESTATES ASSOCIATION, INC; and
DOCKSIDE LOFTS CONDOMINIUM ASSOCIATION, INC.,, ("Plaintiffs"), individually and
on behalf of all others similarly situated, file this Class Action Complaint against defendant
BANNER SUPPLY CO. ("BANNER" or "Defendant"), and allege as follows:

### INTRODUCTION

1.      This is a class action suit brought on behalf of Plaintiffs and others similarly
situated who own homes in the State of Florida that contain defective drywall supplied by
BANNER, caused to be installed in homes. On behalf of themselves and the proposed class,

Plaintiffs assert three counts: (a) a strict products liability claim; (b) a negligence claim; and (c) violation of Florida Deceptive and Unfair Trade Practice Act; (d) Private Nuisance and (e) Equitable and Injunctive Relief. These claims arise out of the Defendant's supply of defective drywall in homes and structures, <u>all</u> within the State of Florida, to Plaintiffs and members of the proposed class, more than two-thirds of whom are residents of the State of Florida.

2.      Drywall is a common manufactured building material used globally for the finish construction of interior walls and ceilings. On information and belief, a substantial quantity of defective drywall was supplied by BANNER in the State of Florida to construct and sell a substantial number of homes in the State of Florida, each of which likely contains defective drywall.

**JURISDICTION AND VENUE**

3.      This action is brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure. More than two-thirds of the members of the proposed class, as defined below, are residents and citizens of Florida.

4.      The damages suffered and sought to be recovered herein total, in the aggregate, in excess of One-Hundred and Fifty Thousand Dollars ($150,000.00), exclusive of interest, costs and attorney's fees.

5.      This Court has subject matter jurisdiction pursuant to § 26.012, Fla. Stat. This Court also has jurisdiction pursuant to § 48.193, Fla. Stat., because the Defendant, conducted business in Florida, committed tortious acts within Florida, own, use or possess real property in Florida, and/or caused injury to persons and property within Florida arising from acts committed in Florida. Defendant is further subject to the jurisdiction of this Court because, at or about the time of the injuries alleged herein, products and materials supplied by Defendant were used within the State of Florida in the ordinary course of commerce, trade or use.

6.      Venue is proper pursuant to Chapter 47 of Florida Statutes, including §47.011, §47.025 and §47.051, Fla. Stat., because the transactions, acts and occurrences that give rise to this action occurred and/or accrued, among other places, in Broward County, Florida, and Defendant's wrongful conduct occurred in, among other places, Broward County, Florida.

## SUBSTANTIVE ALLEGATIONS

### Factual Allegations Related to Defendants

7.      Defendant BANNER, in the course of engaging in a for-profit business, procured drywall for supply in the State of Florida.

8.      Defendant BANNER delivered, supplied, inspected, marketed and/or sold defective drywall with the knowledge the drywall would be installed in homes.

9.      The drywall procured by BANNER for supply in construction in the State of Florida was and is defective because it contains and emits toxins, including sulphur and sulphur compounds such as carbon disulfide, carbonyl sulfide and hydrogen sulfide, which damage homes, fixtures attached thereto, and personal property contained therein, in many ways, including, but not limited to: (a) eroding, corroding and/or tarnishing various metals within residences, including plumbing and interior electrical wiring; (b) disrupting and/or interfering with the operation of electric and electronic equipment and appliances within said residences, including but not limited to microwaves, computers, air conditioning and refrigerator coils; and (c) creating a noxious rotten egg-like odor that renders the homes uninhabitable. The defect in the drywall was latent and existed at the time of manufacture, supply, installation and sale of the defective drywall. The defect exists irrespective of the manner in which the drywall was installed, maintained, or painted. The defect cannot be repaired.

3

10.     BANNER supplied defective drywall to the building industry, who caused the defective drywall to be installed in houses in developments throughout Florida.

11.     Upon information and belief, on October 27, 2006, a drywall installer informed representatives of BANNER that it would no longer accept non-domestic gypsum board.

12.     Upon information and belief, on October 27, 2006, Defendant BANNER's representatives documented the problem with Knauf manufactured/stamped drywall including the results of testing which showed the Knauf drywall had a smell twenty (20) times stronger than other drywall. Defendant BANNER has also discussed the main builder impacted at the time, includes WCI.

13.     Upon information and belief, on November 2, 2006, Defendant BANNER employees informed Knauf representatives that WCI had identified drywall that was preventing them from closing on homes. Additionally, Defendant BANNER employees informed their Knauf representatives that WCI was threatening to remove and replace drywall in WCI homes in which Knauf drywall had been installed.

14.     On November 3, 2006 Defendant BANNER was informed by an installer that they were concerned about the findings of an "oily odor" from drywall installed in a WCI home and the sale of which was scheduled to close ten (10) days later.

15.     Upon information and belief, on November 7, 2006, BANNER was provided information derived from Knauf China the manufacturer of the defective gypsum, that had known about the "smelly board" since July, 2005 and predicted the impact could be thousands of homes.

16.     Upon information and belief, by April 2007, Defendant BANNER was entering negotiations with Knauf related companies for return of Knauf board then in possession of Defendant BANNER.

4

17.     To date, Defendant BANNER has not informed any homeowners of the existence of defective drywall in their homes.

## FACTUAL ALLEGATIONS RELATED TO PLAINTIFFS

### The "Homeowner" Plaintiff

18.     At all times material to the allegations set forth herein, Plaintiff DARIO ORLANDO was and is a resident of Broward, Florida, who, within the applicable statute of limitations period(s), purchased a home with defective drywall that was supplied by Defendant BANNER.

19.     Plaintiff DARIO ORLANDO is the owner of a detached home located at 6641 NW 63 Court, Parkland, FL.

20.     Upon information and believe, Defendant BANNER supplied the defective drywall installed in Plaintiff's Parkland home.

21.     On or about June 2007, Plaintiff, DARIO ORLANDO, purchased a residence from Caliber Construction. Plaintiff agreed to pay and/or its assigns $1,700,000.00 for his new residence.

22.     On or about June 2007, Plaintiff DARIO ORLANDO closed on his new residence. On or about June 2007, Plaintiff moved into his new home, which -- unbeknownst to him -- was built with defective drywall that was supplied by BANNER in the State of Florida and used by Caliber Construction in the construction of Plaintiff's newly purchased home.

23.     The defective drywall supplied by BANNER and installed by Caliber Construction in the home sold to Plaintiff by Caliber Construction caused damages to Plaintiff and putative class members because they have experienced damage to their homes, fixtures attached thereto, and personal property contained therein as a direct result of the sulphuric toxins emitted by the defective drywall.

Consequently, the homes of Plaintiffs and members of the putative class in which defective drywall has been installed are in need of costly remediation.

24.    Plaintiff STEPHEN SINES is an owner of a detached home located at 3781 SW Canoe Creek Terrace, Palm City, FL 34990 and is a resident of Martin County, Florida.

25.    Plaintiff STEPHEN SINES purchased drywall directly from Defendant BANNER on October 26, 2006.

26.    The drywall purchased by Plaintiff STEPHEN SINES directly from Defendant BANNER was installed in Plaintiff STEPHEN SINES' home.

27.    The drywall purchased directly from Defendant BANNER and installed in Plaintiff STEPHEN SINES' home is defective drywall.

28.    On or about May 2007, Plaintiffs, STEPHEN SINES, built the residence himself. Plaintiff agreed to pay and/or its assigns $570,000.00 for his new residence.

29.    On or about May 2007, Plaintiff STEPHEN SINES closed on his new residence. On or about May 2007 Plaintiff moved into his new home, which -- unbeknownst to him -- was built with defective drywall that was supplied by BANNER in the State of Florida and used by STEPHEN SINES in the construction of Plaintiff's newly purchased home.

30.    The defective drywall supplied by BANNER and installed by STEPHEN SINES in the home built by Plaintiff caused damages to Plaintiff and putative class members because he has experienced damage to his homes, fixtures attached thereto, and personal property contained therein as a direct result of the sulphuric toxins emitted by the defective drywall. Consequently, the homes of Plaintiffs and members of the putative class in which defective drywall has been installed are in need of costly remediation.

### The "Townhome" Plaintiffs

31.     Plaintiff DAVID AND JOAN GLICKMAN are residents of Broward County, Florida and own a townhome located at 3236 N.E. 4 Street, Pompano Beach, Florida   33062 constructed with defective drywall.

32.     Upon information and believe, Defendant BANNER supplied the defective drywall to be installed in Plaintiffs' Pompano Beach home.

33.     On or about September 2007, Plaintiffs, DAVID AND JOAN GLICKMAN, purchased the residence. Plaintiffs agreed to pay and/or its assigns $690,000.00 for their new residence.

34.     On or about September 2007, Plaintiffs DAVID AND JOAN GLICKMAN closed on their new residence. On or about September 2007, Plaintiffs moved into their new home, which -- unbeknownst to them -- was built with defective drywall that was supplied by BANNER in the State of Florida and used by the builder in the construction of Plaintiffs' newly purchased home.

35.     The defective drywall supplied by BANNER and installed by the builder in the home sold to Plaintiffs caused damages to Plaintiffs and putative class members because they have experienced damage to their homes, fixtures attached thereto, and personal property contained therein as a direct result of the sulphuric toxins emitted by the defective drywall. Consequently, the homes of Plaintiffs and members of the putative class in which defective drywall has been installed are in need of costly remediation.

### The "Condominium Unit Owner" Plaintiffs

36.     Plaintiff THOMAS WOJCIECHOWSKI, owns a condominium unit located at 1490 SE 15th Street, #202, Fort Lauderdale, Florida 33316 and is a resident of Broward County,

Florida.

37.     Upon information and belief, Defendant BANNER supplied the defective drywall installed in Plaintiff THOMAS WOJCIECHOWSKI 's condominium unit.

38.     On or about April 14, 2009, Plaintiff, THOMAS WOJCIECHOWSKI, purchased the residence. Plaintiff agreed to pay and/or its assigns $335,000.00 for his new residence.

39.     On or about April 14, 2009, Plaintiff THOMAS WOJCIECHOWSKI closed on his new residence. On or about April 14, 2009, Plaintiff moved into his new home, which -- unbeknownst to him -- was built with defective drywall that was supplied by BANNER in the State of Florida and used by the builder in the construction of Plaintiff's newly purchased home.

40.     The defective drywall supplied by BANNER and installed by the builder in the home sold to Plaintiff caused damages to Plaintiff and putative class members because he has experienced damage to his homes, fixtures attached thereto, and personal property contained therein as a direct result of the sulphuric toxins emitted by the defective drywall. Consequently, the homes of Plaintiffs and members of the putative class in which defective drywall has been installed are in need of costly remediation.

### The "Association" Plaintiffs

41.     Plaintiff DOCKSIDE LOFTS CONDOMINIUM ASSOCIATION, INC. is and was at all relevant times an Association incorporated under Florida Chapter 720 and is located at 1490 SE 15 Street, #202, Fort Lauderdale, FL 33316.

42.     Plaintiff DOCKSIDE LOFTS CONDOMINIUM ASSOCIATION, INC. has eight (8) units within the Association.

43.     Plaintiff DOCKSIDE LOFTS CONDOMINIUM ASSOCIATION, INC. pursuant to the Association documents owns the interior walls in the individual units.

44.     Upon information and belief, Defendant BANNER supplied the defective drywall installer in the units within the Association.

45.     Plaintiff OCEANPARK ESTATES ASSOCIATION, INC. is and was at all relevant times an Association incorporated under Florida Chapter 720 and is located at 3208 NE 4th Street, Pompano Beach, FL 33062.

46.     Plaintiff OCEANPARK ESTATES ASSOCIATION, INC. has eleven (11) units within the Association.

47.     Plaintiff OCEANPARK ESTATES ASSOCIATION, INC. pursuant to the Association documents, does not own the interior walls within the individual units.

48.     Upon information and belief, Defendant BANNER supplied defective drywall installed in the units within the Association.

49.     Plaintiffs' home was supposed to be habitable and free from defects but, in reality, it fails to meet ordinary, normal standards that are reasonably to be expected of living quarters of comparable kind because of the defective drywall installed therein.

50.     Pursuant to § 558.003, Fla. Stat., and like notice provisions in contracts signed in connection with the purchase of their home, Plaintiffs have provided to BANNER and/or its assigns written notices of the defects relating to their home in letters dated February 3 and 4, 2009. BANNER, its assigns have so far failed to repair these defects and replace the property damaged thereby.

## CLASS REPRESENTATION ALLEGATIONS

51.     Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure. The class Plaintiffs propose to represent is defined as follows: "All natural persons and business entities residing in the State of Florida who purchased homes between January 2004 and the present and whose homes contain the defective drywall"

supplied by BANNER (the "Class"). Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, their directors and officers, and members of their immediate families. Also excluded from the Class are the Court, the Court's spouse or partner, if applicable, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons. Also excluded are those Plaintiffs covered by an existing certified claim against BANNER SUPPLY CO.

52.     The prerequisites to class representation pursuant to Rule 1.220(a) are present in this action as follows:

A. **Numerosity.** The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe and therefore aver that there are hundreds if not thousands of Class members in the State of Florida because, upon information and belief, hundreds of people have purchased homes some or all of which <u>contain</u> the defective drywall.

B. **Commonality:** There are questions of fact and law common to the claims of the <u>Plaintiffs</u> and the members of the Class that predominate over any questions affecting any individual members including, among others, the following questions:

    i. Whether the drywall was defective;

    ii. Whether the defective drywall was supplied by BANNER;

    iii. Whether the defective drywall was negligently supplied by BANNER.;

    iv. Whether the defective drywall was installed in homes of Plaintiffs and members of the putative class;

    v. Whether BANNER  breached its duties of care to Plaintiffs and members of the class by supplying defective drywall that was in violation of applicable

laws, codes, regulations and standards applicable to its industry and intended to protect Plaintiffs and members of the putative class;

vi.   Whether defendant failed to disclose that the drywall was defective; and

vii.  Whether the defective drywall caused damages to the homes, fixtures attached thereto, and personal property contained therein belonging to Plaintiffs and members of the Class.

C. **Typicality.** Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs allege a common course of conduct by Defendants towards members of the Class. Plaintiffs, like other members of the respective Class, have purchased homes containing defective drywall that was supplied by BANNER and installed in their home. Plaintiffs and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiffs' claims and those of the Class.

D. **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiffs have retained competent counsel experienced in litigation of this nature.

53.   Plaintiffs bring this action under Rule 1.220(b)(3) of the Florida Rules of Civil Procedure because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class. Indeed, the predominant issues in this action are whether Defendant is violating and has violated the law by supplying defective drywall in the State of Florida. In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court

system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by this Court. Certification under Rule 1.220 of the Florida Rules of Civil Procedure is therefore appropriate because a class action is superior to the other' available methods for the fair and efficient adjudication of this action, and Plaintiffs envision no unusual difficulty in the management of this action as a class action.

## EQUITABLE TOLLING

54.    The running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, by failing to disclose a known defect to Plaintiffs and the Class, and failing to disclose the defective nature of their product, concealed from Plaintiffs and the Class the risks associated with drywall.

55.    As a result of Defendants' actions, Plaintiffs and the Class could not reasonably know or have learned of the defect in the drywall through the exercise of reasonable diligence.

56.    Defendants must be estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of the drywall installed in the homes of Plaintiffs and the Class.

57.    Plaintiffs and the Class had no knowledge that Defendants were engaged in wrongdoing and, because of Defendants' concealment thereof, any applicable statute of limitations must be tolled.

## COUNT I
## PRODUCTS LIABILITY

### Strict Liability (Defective Product)

58.    Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 57 as if fully set forth herein.

59. This Count addresses the unlawful practice of placing a defective product -- defective drywall -- into the stream of commerce through the supply by BANNER of defective drywall in the State of Florida.

60. BANNER is in the for-profit business of supplying drywall in the State of Florida and placed defective drywall into the stream of commerce in the State of Florida by supplying defective drywall to the building industry, an expected consumer and/or handler of drywall. The drywall was defective at the time BANNER supplied it to the building industry.

61. At all material times, the defective drywall and homes or structures containing defective drywall were used for their intended purposes and the defective drywall was installed in the normal course of construction without any known changes or alterations to its condition.

62. The defective drywall was incorporated into the homes and structures sold to Plaintiffs and the Class before the damages to Plaintiffs and the Class were caused.

63. Unknown to and hidden from Plaintiffs and the Class, the drywall installed in their homes was defective because it contained toxins like sulphur and sulphuric compounds that damaged homes, fixtures attached thereto, and personal property contained therein, in many ways, including, but not limited to: (a) eroding, corroding and/or tarnishing various metals within residences, including plumbing and interior electrical wiring; (b) disrupting and/or interfering with the operation of electric and electronic equipment and appliances within said residences, including but not limited to microwaves, computers, air conditioning and refrigerator coils; and (c) creating a noxious rotten egg-like odor that renders the homes uninhabitable. The drywall also did not conform to applicable building standards, guidelines and/or codes intended to protect Plaintiffs and the Class.

64. As a result of the supply of defective drywall in the State of Florida, and expected installation of defective drywall in homes and structures in the State of Florida, Plaintiffs and

13

members of the Class suffered damages, including, but not <u>limited</u> to, property damage to their homes, fixtures attached thereto and property contained therein.

65.    If Defendant had exercised that degree of care that a prudent or reasonably cautious person acting under the same circumstances would exert, the Defendant could have foreseen that the drywall was defective and that damages to Plaintiffs and the Class would reasonably be expected to ensue as a result of the supply and installation of defective drywall and the marketing and sale of homes containing defective drywall.

66.    As a result of the foregoing acts and omissions of the Defendant, the homes of Plaintiffs and the Class have required, require or will require extensive reconstruction and repairs and will incur inspection, repair and replacement costs to repair their homes, fixtures attached thereto, and personal property contained therein.

67.    Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of all actual and consequential damages from Defendants. Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of conferring a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

**COUNT II**
**<u>NEGLIGENCE</u>**

68.    Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 57 as if fully set forth herein.

69.    Plaintiffs bring this claim for the unlawful practice of breaching a duty to supply materials that are free from defects and in compliance with applicable laws, codes, regulations and standards applicable to its industry.

70.    At all material times, BANNER owed duties of care to Plaintiffs and the Class to supply materials that were free from defects and in compliance with applicable laws, codes, regulations and standards applicable to the industry. At <u>all</u> materials times, BANNER was also under duties to

disclose any defects in the materials supplied. These duties were independent of any duty to perform under any written contract or warranty.

71.     At the time BANNER  supplied the drywall in the State of Florida, the drywall was defective and not in compliance with applicable laws, codes, regulations and standards applicable to BANNER 's industry and intended to protect Plaintiffs and the Class.

72.     BANNER breached its duty of care to Plaintiffs and the Class by one or more of the following means:

A. Acquiring, procuring, marketing, distributing, wholesaling and/or selling defective drywall that was likely to cause property and other damage to the intended user through exposure to sulphur and sulphur-compounds;

B. Failing to exercise reasonable care in overseeing, managing, controlling, inspecting, investigating and/or auditing the manufacturers or distributor of the drywall it supplied in the State of Florida;

C. Failing to exercise reasonable care in the inspection and testing of the drywall it supplied in the State of Florida;

D. Failing to comply with applicable laws, codes, regulations and stand2rds applicable to its industry and intended to protect Plaintiffs and the Class;

E. Failing to adequately warn foreseeable users of the defective nature of the drywall it supplied in the State of Florida;

F. Supplying defective drywall in the State of Florida and/or failing to disclose its defects; and

G. Failing to initiate a timely recall of the defective drywall it supplied in the State of Florida.

15

73.     If BANNER had exercised that degree of care that a prudent or reasonably cautious person acting under the same circumstances would exert, BANNER could have foreseen that the drywall was defective: and that damage to Plaintiffs and the Class would reasonably be expected to ensue as a result of the supply and installation of defective drywall.

74.     Plaintiffs and the Class were damaged by BANNER's breaches of its duties of care, which caused property damage to Plaintiffs' homes, to fixtures attached thereto and to property contained therein.

75.     The damages suffered by Plaintiffs and the Class, which are separate and apart from those damages resulting from any breach of contract or warranty, were directly and proximately caused by BANNER.

76.     As a result of the foregoing acts and omissions of BANNER, the homes of Plaintiffs and the Class require or will require extensive reconstruction and repairs and will incur inspection repair and replacement costs to repair their homes, fixtures attached thereto, and personal property contained therein.

77.     Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of all actual and consequential damages recoverable from BANNER. Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of conferring of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

**COUNT III**
**VIOLATION OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**

78.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 57 as if fully set forth herein.

79.     This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The

Florida Deceptive and Unfair Trade Practices Act).

80.    Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiffs are "Consumers" within the meaning of §501.203(7), Florida Statutes Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

81.    The advertising, soliciting, providing, offering, or distributing of drywall by Defendant to Plaintiffs is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

82.    Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendant's acts and omissions as well as its failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to section 501.204, Florida Statutes.

83.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiffs have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

84.    Plaintiffs are entitled to recover their reasonable attorneys' fees pursuant to section

501.2105, Florida Statutes upon prevailing in this matter.

85.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their home; the removal and replacement of all of the drywall contained in their home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

86.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs have incurred or will incur incidental and consequential damages for the costs of moving while their home is being repaired/replaced; renting of comparable housing during the duration of the repairs or until the home is replaced; the cost of repair of replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs demand:

   A.  compensatory damages;

   B.  post-judgment interest;

   C.  an award of attorneys' fees and taxable costs; and,

   D.  any and all such further relief as this Court deems just and proper.

## COUNT IV
## PRIVATE NUISANCE

87.     Plaintiffs adopt and restate paragraphs 1 through 57 as if fully set forth herein.

88.   The Defendant's tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into the home which has unreasonably interfered, and continues to interfere, with the use and enjoyment of the property and caused potential health problems.

89.   Defendant's interference has impaired the rights of the Plaintiffs and their health, comfort, safety, free use of the property, and/or peaceful enjoyment of their property.

90.   Defendant's invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

91.   The interference with the use of the property caused by Defendant is substantial and is ongoing.

92.   Defendant's private nuisance was the direct, proximate, and foreseeable cause of damages, injuries, harm, economic loss, and increased risk of harm, which Plaintiffs suffered and will continue to suffer.

93.   As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of the home; the removal and replacement of all of the drywall contained in the home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

94.   As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs have incurred or will incur incidental and consequential damages for the costs of moving while the home is being repaired; renting of comparable housing during the duration of the repairs; the loss

19

of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

## COUNT V
## EQUITABLE AND INJUNCTIVE RELIEF

95.     Plaintiffs adopt and restate paragraphs 1 through 57 as if fully set forth herein.

96.     Plaintiffs are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

97.     Plaintiffs will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if Defendant is not ordered to recall, buy back, and/or repair the Plaintiffs' home.

98.     Plaintiffs demand injunctive and equitable relief and further, that defendant be ordered to: (1) remedy, repair and/or replace the drywall in Plaintiffs' home, (2) cease and desist from misrepresenting to Plaintiffs and the general public that there is no defect in, or danger associated with, the drywall, and (3) institute, at their own cost, a public awareness campaign to alert the general public of the defect, or dangers associated with the drywall.

WHEREFORE Plaintiffs demand:

A.   An order clarifying the Class under the appropriate provisions of Rule 1.220 and appointing Plaintiffs and their legal counsel to represent the Class;

B.   remedy, repair and/or replace the drywall in Plaintiffs' home;

C.   cease and desist from misrepresenting to Plaintiffs and the general public that there is no defect in, or danger associated with the drywall;

D.   institute, at their own cost, a public awareness campaign to alert the general public of the defect, or dangers associated with the drywall;

E. an award of attorneys' fees and taxable costs; and,

F. any and all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

DATED:     July 9th, 2010

> KRUPNICK, CAMPBELL, MALONE,
> BUSER, SLAMA, HANCOCK,
> LIBERMAN & McKEE, P.A.
> Attorneys for Plaintiffs
> Suite #801 – Legacy Bank Building
> 12 Southeast Seventh Street
> Fort Lauderdale, Florida 33301
> Ph: 954-763-8181
> Fax: 954-763-8292
>
>
> BY: _____
>     MICHAEL J. RYAN, ESQUIRE
>     Florida Bar No.: 975990
>
>     Ervin Gonzalez, Esq.
>     Florida Bar No.: 500720
>     Patrick Montoya, Esq.
>     Florida Bar No.: 52441
>     COLSON HICKS EIDSON
>     Attorneys for Plaintiffs
>     255 Alhambra Circle, Penthouse
>     Coral Gables, FL 33134
>     Ph: 305-476-7400
>     Fax: 305-476-7444