UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CIVIL ACTION NO. 09-2047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | JUDGE FALLON |
| _____ | ) | |
| This Document Relates to: | | MAGISTRATE WILKINSON |
| ALL CASES | | |

JOINT PRE-TRIAL ORDER

1.     The Pre-Trial Conference for this matter is set on November 19, 2012.

2.     **APPEARANCE OF COUNSEL**

**Counsel for Trial Plaintiffs:**

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
& Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Scott Alan George
Seeger Weiss LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Anthony Irpino
Irpino Law Firm
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

**Counsel for Defendant, Interior Exterior Building Supply, L.P.:**

Richard G. Duplantier, Jr.
Benjamin R. Grau
Carlina C. Eiselen
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802 / Fax:   (504) 525-2456
Email:  rduplantier@gjtbs.com
          jhassinger@gjtbs.com
          bgrau@gjtbs.com
          ceiselen@gjtbs.com

**Counsel for Defendant, The North River Insurance Company:**

THOMPSON, COE, COUSINS & IRONS, L.L.P.

Brian S. Martin, Esq.
bmartin@thompsoncoe.com
Kevin Risley, Esq.
krisley@thompsoncoe.com
Rodrigo "Diego" Garcia, Jr., Esq.
dgarcia@thompsoncoe.com
Suzanne M. Patrick
spatrick@thompsoncoe.com
One Riverway, Suite 1600
Houston, Texas 77056
Phone: (713) 403-8206
Fax:  (713) 403-8299


LOBMAN CARNAHAN BATT ANGELLE
& NADER

Sidney J. Angelle, Esq.
sja@lcba-law.com
Eric B. Berger, Esq.
ebb@lcba-law.com

400 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
Phone: (504) 586-9292
Fax:   (504) 586-1290
sja@lcba-law.com

3.      **DESCRIPTION OF PARTIES**

A.  Plaintiffs Major Eddy Beckendorf and Susan Beckendorf are homeowners at 304 Brown Thrasher Loop South, Madisonville, LA 70447.

B.  Plaintiff New Orleans Area Habitat for Humanity is a charitable, non-profit entity with headquarters at 7100 St. Charles Ave, New Orleans, LA 70118.

C.  Plaintiff Beryl Mundee is a homeowner at 4321 S. Liberty Street, New Orleans, LA.

D.  Plaintiffs David and Cheryl Gross are homeowners at 400 Hay Place, New Orleans, LA .

E.  Interior Exterior Building Supply, L.P. ("Interior Exterior") is a defendant in this bellwether trial.  It is also a cross-claimant and/or third-party claimant although those claims are not being tried before the Court at this time.  It is a Louisiana limited partnership with its principal place of business in Louisiana

F.  The North River Insurance Company is an insurer of defendant Interior Exterior Building Supply Company, L.P.

4.      **JURISDICTION**

Trial Plaintiffs submit that he Court has subject matter jurisdiction pursuant to the jurisdictional provisions of the Class Action Fairness Act, as set forth in 28 U.S.C. §1332 (d)(1).

Interior Exterior objects to the Court's jurisdiction under the Class Action Fairness Act, as set forth in 28 U.S.C. §1332 (d)(1) insofar as (1) this is not a trial of class claims but a trial of the claims of individual plaintiffs; (2) the PSC has designated a Louisiana Class, of which the Trial Plaintiffs are members, which is comprised entirely of Louisiana citizens and Interior Exterior and its insurer North River (for purposes diversity jurisdiction) are citizens of Louisiana

3

so there is no minimal diversity; and (3) even if minimal diversity exists, the Court must decline

jurisdiction because at least 2/3 of the members of the class are citizens of the same State as

Interior Exterior and all of the alleged damage occurred in Louisiana.

**5.   PENDING MOTIONS**

**Plaintiffs' Motions:**

1.  5567 – Plaintiffs' Motion for Class Certification of a Louisiana Homeowner's Class

2.  8309 – Trial Plaintiffs and the PSC's Motion for Partial Summary Judgment concerning Plaintiffs' Redhibition Claims

3.  14603 -  Plaintiffs' Motion to Intervene

4.  15990 - Plaintiff-Intervenors' Motion In Limine to Exclude Defendants' Expert Opinion or Other Evidence to the Effect That a Manufacturer Was At Fault

5.  16069  - Motion in Limine to Exclude Certain Testimony Regarding New Orleans Area Habitat for Humanity

6.  16202 - Plaintiffs' Motion to Exclude the Expert Report and Testimony of Dr. Timothy Tonyan

**Interior Exterior's Motions:**

1.  Motion for Partial Summary Judgment (# 8478)

2.  Motion to Quash and for Protective Order (#16009);

3.  Motion to Strike Plaintiffs' Exhibit List for the Bellwether Trial Scheduled for November 26, 2012 (# 16140);

4.  First Motion *in Limine* regarding the Standard in Redhibition (# 16077);

5.  Second Motion *in Limine* regarding Irrelevant and/or Prejudicial Evidence (#16084);

6.  Third Motion *in Limine* regarding Dean Rutila (# 16199);

7.  Fourth Motion *in Limine* regarding Lori Streit (# 16198);

8.  Fifth Motion *in Limine* regarding Rosemary Coates (# 16196); and

9.  Sixth Motion *in Limine* regarding Johnny Odom (# 16200).

**North River's Motions**:

1. North River's General Motion *in Limine*

2. North River's Motion *in Limine* Concerning the Good Faith Seller' Knowledge

3. North River's Motion to Exclude Testimony of Rosemary Coates

4. North River's Motion to Exclude Testimony of Dean Rutila

5. North River's Motion to Exclude Testimony of Lori Streit

6. Unopposed Motion to Continue

## 6.   MATERIAL FACTS

### A.  Trial Plaintiffs

The November trial against Interior Exterior is focused solely on whether Interior Exterior is a good or bad faith seller in redhibition of Chinese Drywall. The drywall at issue in this trial was purchased and imported by Interior Exterior from two different sources: Knauf Plasterboard Tianjin ("KPT") and Taian Taishan Plasterboard ("TTP"). For the TTP purchases, Interior Exterior utilized a broker, Metro Resources Corporation ("MRC"). Interior Exterior purchased and imported the Chinese drywall for distribution in the United States in 2005 and 2006, and sold the drywall in 2006 and into 2007.

Interior Exterior selected these sources for drywall without performing necessary and appropriate investigation or inspection, particularly given the fact that it had never dealt with any of these entities before. It chose not to have samples sent by KPT tested or inspected. It chose not to have the manufacturing facilities inspected, although it had ready and available means to do so. Simple inspection of the manufacturing facilities would have established that there was a problem  likely inherent in the Chinese drywall; the facilities would have smelled of reduced sulfur gases, and related corrosion would have been noted. Indeed, Interior Exterior had

imported drywall on one prior occasion, during a shortage in 1999 and 2000, and had reason to know that imported drywall is likely to be problematic and inappropriate for the United Staets market.  The Thailand "Elephant Board" drywall had been largely rejected by its customers in 1999 and 2000 because of its qualities, including heaviness and brittleness.  Notwithstanding, in 2005 and 2006, Interior Exterior merely had the Chinese drywall inspected by its agent dock-side for gross damage and to ensure proper packing and loading for shipment.

In addition to its experience with the Thai "Elephant Board", Interior Exterior received several warnings that additional diligence was appropriate and required even before the Chinese drywall ended up in the United States.  Yet, it took no further measures.  For example, it was notified that TTP was not ASTM compliant and that it produced a board inferior to other sources in China.  Moreover, when Interior Exterior received purported ASTM testing results on TTP board, these results were riddled with incomplete information, contained dates that did not relate to the future shipments and included a facsimile header date from 2004.  Moreover, the broker Interior Exterior used for the TTP transaction admitted that it had no experience with building products, but rather specialized in recycled carpeting.  Moreover, as regards both the TTP and KPT board, both failed to comply with fundamental ASTM labeling requirements, including disclosure of the manufacturer of the board.

After the Chinese drywall was received in the United States and distributed by Interior Exterior to its customers, it received several additional warnings that should have lead to action by Interior Exterior, including further investigation, inspection and/or testing.  Its customers repeatedly complained about the quality of the Chinese drywall, particularly as regards its heaviness and brittleness.  However, Interior Exterior had no quality control procedures or policies.  It conducted no investigation, inspection or testing, but instead continued selling the

Chinese drywall.  Many of its customers put in standing orders or requests that "No KNauf" board be delivered, or that "Domestic Only" board be sent.  Not only did Interior Exterior not investigate the reasons for these standing order and requests, but it delivered Chinese Drywall in contravention of these orders and requests.  Finally, in November 2006, it received a trade journal with an article about Phosphogypsum contamination of certain Chinese drywall.  Again, Interior Exterior took no action.  However, once the Chinese Drywall had been distributed and installed, undoing the problem took on a significant more complex complexion.

It is from this point that Interior Exterior builds its defense.  Having failed in its duties through receiving customer complaints, it now claims that it was as ignorant and helpless as the Trial Plaintiffs and other homeowners whose homes were renovated or built with Interior Exterior's Chinese Drywall.  However, the case is simpler, and Interior Exterior's liability is built on it conduct up to and including its sale of the Chinese Drywall, not events in 2009 when the problem it had brought to the United States could not be denied.

### B.  Interior Exterior

The November trial against Interior Exterior is focused solely on whether Interior Exterior is a good faith seller in redhibition of Chinese-manufactured drywall. The drywall at issue in this trial was manufactured by two different manufacturers, Knauf Plasterboard (Tianjin) ("Knauf" or "KPT") and Tai'an Taishan Plasterboard ("TTP").  Interior Exterior purchased the Tianjin drywall from Knauf and the TTP drywall from Metro Resources in 2005 and 2006; and sold the drywall from China in 2006 and early 2007.  Notably, Interior Exterior did not re-brand the drywall from China, nor did it hold itself out as the manufacturer in any way.  It merely sold the drywall.

Interior Exterior relied on an established, trustworthy, and successful business operation with Knauf to source over 500,000 sheets of KPT drywall.  Interior Exterior informed Knauf that it wanted drywall that complied with the applicable ASTM standards; Interior Exterior obtained certifications and warranties from Knauf that the drywall complied with those ASTM standards and was also otherwise free from defects; and Interior Exterior received drywall from Knauf that was labeled that it complied with the ASTM standards.

After Knauf could no longer provide drywall to it, Interior Exterior contacted Metro Resources Co. ("MRC") in an attempt to source an additional 30,000 sheets of drywall.  Interior Exterior vetted MRC and the manufacturer from whom MRC offered drywall, Taishan.  Interior Exterior informed MRC that it required drywall that complied with the applicable ASTM standards; Interior Exterior obtained a sample test report from MRC evidencing the ASTM testing performed on the Taishan drywall; Interior Exterior obtained certifications and warranties from Taishan and MRC that the drywall complied with those ASTM standards and was otherwise free from defects; and Interior Exterior received drywall from MRC that was labeled that it complied with the ASTM standards.

Plaintiffs allege that the drywall manufactured in China off-gasses sulfur compounds rendering it defective.  The parties have stipulated that this sulfur off-gassing is a redhibitory defect, which existed in the drywall at the time Interior Exterior sold it.  Although Plaintiffs refused to stipulate that Interior Exterior did not have actual knowledge of the sulfur defect at the time of the sale of the drywall, there has been no evidence developed to establish actual knowledge by Interior Exterior.

Interior Exterior did not perform any independent testing of the KPT or TTP drywall. Interior Exterior did not notice or receive any complaints about and "smells" associated with the

KPT or TTP drywall prior to its sale to Plaintiffs.  Interior Exterior did not notice or receive any complaints about corrosion of metals prior to the sale of the drywall to Plaintiffs.  Interior Exterior did not receive any reports from Knauf, Taishan, MRC, the media, or any other sources about off-gassing of sulfur compounds or corrosion prior to the sale of the drywall to Plaintiffs. Interior Exterior had no knowledge of the defect prior to the sale of drywall to Plaintiffs.

Rather than present evidence of actual knowledge, Plaintiffs intend to present argument that Interior Exterior had constructive knowledge of the sulfur defect because had it acted as a "reasonable" distributor and independently investigated and tested the drywall before sale it might have discovered the defect.  Plaintiffs specifically intend to argue the following:

1. Interior Exterior should have investigated the manufacturers' facilities, including the raw material mine, manufacturing plant, and testing facilities;

2. Interior Exterior should have engaged independent investigation services, consultants, sourcing professionals, surveyors, and testing facilities to validate the production process, the quality and content of raw materials, and quality control testing;

3. Interior Exterior should have independently performed ASTM testing, instead of relying on the manufacturers' testing;

4. Interior Exterior should have been suspicious of the drywall simply because it was manufactured in China and, therefore, Interior Exterior should have investigated and tested the drywall;

5. Interior Exterior should have been suspicious of the TTP drywall because it allegedly did not have the dimensions of the board noted on it and, therefore, Interior Exterior should have investigated and tested the drywall;

6. Interior Exterior knew that there were some complaints about heaviness and iihardness of drywall that it had imported from Thailand for a short period of time in 1999/2000 (but which did not contain any sulfur composition defect), and, therefore, Interior Exterior should have been suspicious of all imported drywall and, therefore, Interior Exterior should have investigated and tested the KPT and TTP drywall; and

7. Interior Exterior received limited complaints from customers using the Chinese drywall that the product was heavier and/or more brittle than domestic drywall, and, therefore, Interior Exterior should have investigated and tested the drywall.

The legal standard for a bad faith seller in redhibition, as set forth in Louisiana Civil Code article 2545 and well-settled jurisprudence, is: (a) whether the seller knew that the specific defect existed in the product at the time of the sale; or (b) in limited circumstances, the seller should have known that the specific defect existed in the product at the time of the sale.  There are two circumstances in which sellers have been held to be in bad faith based on a constructive knowledge standard.  First, "seller-dealers have been charged with constructive knowledge of defects …in cases *where the seller installs, assembles, or repairs a particular part and that particular part is defective*."  *Cernigliaro v. Marquis Marine, Inc.*, 381 So. 2d 886, 888-89 (La. App. 2d Cir. 1980).  Second, sellers have been charged with constructive knowledge of defects in cases where the defect is "*obvious to anyone with experience and the [seller] inspected the [product] … closely prior to the sale*."  *Meche v. Harvey, Inc.*, 95-848 (La. App. 3 Cir. 1995), 664 So.2d 855.  When the defect is not observable by simple visual inspection, the seller cannot be held in bad faith.  *See*, *Martin v. Henderson*, 505 So. 2d 192, 195 (La. App. 3d Cir. 1987) and *Riche v. Krestview Mobile Homes, Inc.*, 375 So.2d 133 (La. App. 3d Cir. 1979).  This is because a non-manufacturing seller is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects.  *Id.  See also, Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993) *cert. denied*, 510 U.S. 1043, 114 S. Ct. 688, 126 L. Ed. 2d 656 (1994).

The facts of this case show that Interior Exterior does not fit within either of these two limited categories of constructive knowledge.  First, Interior Exterior did not install, assemble, or repair any part of the Chinese-manufactured drywall.  Further, Interior Exterior did not independently test or investigate the Chinese-manufactured drywall in such a way that would have revealed the defect.  Second, the sulfur defect was not obvious to anyone with experience or

observable by ordinary inspection. The defect was only discoverable through extensive destructive testing to discover the elemental, chemical components of the gypsum core of the drywall.

In an attempt to establish constructive knowledge, Plaintiffs will attempt to put forward evidence that Interior Exterior knew the following: (1) Chinese products in general are suspect; (2) the Knauf and TTP drywall was not properly labeled in accordance with ASTM standards; (3) the ASTM test reports received by Interior Exterior from Taishan were suspect; and (4) some customers complained that the Knauf and TTP drywall was heavier or more brittle than domestic drywall. Plaintiffs will not present any evidence that any of this events or conditions, even if true, relate in any way to the sulfur off-gassing defect in the Chinese-manufactured drywall. None of these facts are evidence of the redhibitory defect. Rather, at the most, Plaintiff argues that these facts should have led Interior Exterior to perform its own testing that then may have led to discovery of the defect. The non-manufacturer seller, however, is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects. *Harris v. Atlanta Stove Works, Inc.,* supra; *Ratliff v. Porter Cable Co. of New York,* 210 F.Supp. 957 (E.D.La.1962). When simple visual inspection would not have disclosed the defect, the seller cannot be charged with constructive knowledge. *Martin*, 505 So. 2d at 195.

It is undisputed that no visual inspection would have revealed the defect in the chemical composition of the Chinese-manufactured drywall. Simply put, this is not a case of constructive knowledge. The only standard to which Interior Exterior should be held is actual knowledge, for which there is no evidence.

Moreover, Plaintiffs intend to put forward evidence that the standard of care applicable to the distributor of a Chinese-manufactured product requires that the distributor perform site

inspections and independent testing.  Again, this purported standard is contrary to established Louisiana law that a non-manufacturing seller has no duty to inspect a product prior to sale to determine the possibility of inherent vices or defects. Furthermore, to the extent the Court deems appropriate evidence of the applicable standard of care, Interior Exterior will present evidence that the applicable standards of care for a distributor of drywall and a distributor of foreign manufactured standard building products does not require independent testing or investigation of the mining, manufacturing, or testing procedures.  Rather, it is incumbent upon the distributor to specify the standards to which it wants the product to comply and obtain certifications or representations from the manufacturer/seller that the product complies with those standards. This is exactly what Interior Exterior did when distributing the Chinese-manufactured drywall at issue in this case.

### C.  North River

North River generally adopts the statement of material facts outlined by Inex, except to the extent it mentions "should of known" standard under the applicable Louisiana Redhibition Statutes.

## 7.     UNCONTESTED MATERIAL FACTS

1) The drywall manufactured in China by Knauf/KPT, sold and distributed by INEX, and installed in certain homes, emits sulfur gases which can and, in the homes of some individuals did, corrode some copper and silver.

2) The drywall manufactured in China by Taian Taishan Plasterboard Company, Ltd., sold and distributed by INEX, and installed in the homes of the Trial Plaintiffs, emits sulfur gases which can, and in the homes of the Trial Plaintiffs did, corrode some copper and silver.

3) Some drywall manufactured in China by Taian Taishan Plasterboard Company, Ltd., was purchased from INEX on or about November 7, 2006, and installed in the property owned by Trial Plaintiff Beryl Mundee and located at 4321 South Liberty Street, New Orleans, Louisiana

4) The Mundee home has not been fully remediated from Chinese Drywall.

5) Some drywall manufactured in China by Taian Taishan Plasterboard Company, Ltd., was purchased from INEX on or about September 15, 2006, and installed in the property owned by Trial Plaintiff David and Cheryl Gross and located at 400 Hay Place, New Orleans, LA.

6) The Gross home has not been fully remediated from Chinese Drywall.

7) Some drywall manufactured in China by Knauf Plasterboard (Tianjin) Company, was purchased from INEX on or about July 26, 2006 by Trial Plaintiff New Orleans Area Habitat for Humanity, Inc., and installed in the property owned by Casey Leblanc and located at 1909 Alvar Street, New Orleans, LA.

8) New Orleans Area Habitat for Humanity, Inc. facilitates the construction and purchase of homes for low income individuals.

9) The Leblanc home has been remediated form Chinese Drywall.

10) Some drywall manufactured in China by Knauf Plasterboard (Tianjin) Company, was purchased from INEX on or about November 8, 2006, and installed in the property owned by Trial Plaintiff Edward and Susan Beckendorf and located at 304 Brown Thrasher Loop, Madisonville, LA.

11) The Beckendorf home has not been fully remediated from Chinese Drywall.

12) It was not known to any Trial Plaintiffs at the time Chinese Drywall was delivered to and

installed in their homes, that this drywall emitted sulfur gases which can corrode copper and silver.

13) The Chinese Drywall installed in the homes of all Trial Plaintiffs was not fit for its ordinary or intended purpose, and none of the Trial Plaintiffs would have purchased the Chinese Drywall had they known about the defective nature of the Chinese Drywall at the time it was purchased.

14) The International Residential Code [IRC] has been adopted by the State of Louisiana as a residential building code.

15) Interior Exterior did not manufacture any of the Chinese Drywall sold to any Trial Plaintiffs.

16) Interior Exterior did not modify, assemble, or repair any of the Chinese Drywall sold to any Trial Plaintiffs.

17) Interior Exterior did not test any of the Chinese Drywall sold to any Trial Plaintiffs.

**8.    CONTESTED ISSUES OF FACT**

1) Whether Interior Exterior knew at the time the Chinese Drywall was sold to, delivered to, and installed in the homes of any Trial Plaintiffs that this drywall emitted sulfur gases which can corrode copper and silver.

2) Whether Interior Exterior should have known at the time the Chinese Drywall was sold to, delivered to, and installed in the homes of any Trial Plaintiffs that this drywall emitted sulfur gases which can corrode copper and silver.

3) Whether the Chinese Drywall sold to any Trial Plaintiff was properly marked in accordance ASTM standards.

4) Whether the Chinese Drywall sold by Interior Exterior otherwise complied with the

applicable ASTM standards.

5) Whether the Chinese Drywall sold by Interior Exterior otherwise complied with other standards or expectations of the United States market.

6) Whether the alleged improper marking on the Chinese Drywall sold to any Trial Plaintiff evidenced that the drywall emitted sulfur gases which can corrode copper and silver.

7) Whether the Chinese Drywall sold to any Trial Plaintiff was heavier than domestic manufactured drywall.

8) Whether the alleged weight of the Chinese Drywall sold to any Trial Plaintiff evidenced that the drywall emitted sulfur gases which can corrode copper and silver.

9) Whether the Chinese Drywall sold to any Trial Plaintiff was more brittle than domestic manufactured drywall.

10) Whether the alleged brittleness of the Chinese Drywall sold to any Trial Plaintiff evidenced that the drywall emitted sulfur gases which can corrode copper and silver.

11) Whether prior to the sale of the Chinese Drywall sold to any Trial Plaintiff, Interior Exterior was aware of any smells associated with the drywall.

12) Whether prior to the sale of the Chinese Drywall sold to any Trial Plaintiff, Interior Exterior had reason to question the quality of the Drywall warranting further consideration, investigation, inspection or testing.

13) Whether Interior Exterior's search for and vetting of potential sources for imported drywall were adequate.

14) Whether any alleged smells of the Chinese Drywall sold to any Trial Plaintiff evidenced that the drywall emitted sulfur gases which can corrode copper and silver.

15) What the applicable versions of ASTM Standards regarding drywall.

16) Whether it was readily apparent that the Chinese Drywall emitted sulfur gases which can corrode copper and silver.

17) Whether visual inspection of the Chinese Drywall would reveal that the Chinese Drywall emitted gases which can corrode copper and silver.

18) Whether, prior to the time that the Chinese Drywall was sold to, delivered to, and installed in the homes of any Trial Plaintiffs, there had been any reports of drywall that emitted sulfur gases which can corrode silver and cooper.

19) Whether the drywall manufactured in China by Knauf Wuhu and sold and distributed by INEX in 2006 and 2007 emitted sulfur gases which can corrode some copper and silver.

20) Whether Trial Plaintiff New Orleans Area Habitat for Humanity, Inc. purchased, sold, and distributed drywall manufactured by Taian Taishan Plasterboard Company, Ltd. that emitted sulfur gases which can corrode some copper and silver.

21) Whether Trial Plaintiff New Orleans Area Habitat for Humanity, Inc. obtained any certifications or warranties concerning defects in the drywall manufactured by Taian Taishan Plasterboard Company, Ltd. that it purchased, sold, and distributed.

22) Whether Trial Plaintiff New Orleans Area Habitat for Humanity, Inc. investigated or tested the drywall manufactured by Taian Taishan Plasterboard Company, Ltd. that it purchased, sold, and distributed.

23) Whether Trial Plaintiff New Orleans Area Habitat for Humanity, Inc. was aware at the time that it sold and distributed certain of the drywall manufactured by Taian Taishan Plasterboard Company, Ltd. that it reportedly emitted sulfur gasses which can corrode some copper and silver.

24) Whether Trial Plaintiff New Orleans Area Habitat for Humanity, Inc. smelled any odors

associated with the drywall manufactured by Taian Taishan Plasterboard Company, Ltd. prior to the time at which it sold and distributed the drywall.

25) Whether Trial Plaintiff New Orleans Area Habitat for Humanity, Inc. knew or should have known at the time that it sold and distributed certain of the drywall manufactured by Taian Taishan Plasterboard Company, Ltd. that it emitted sulfur gasses which can corrode some copper and silver.

26) To the extent it is relevant, what is the standard of care for a non-manufacturing distributor of drywall concerning the quality of that drywall.

27) To the extent it is relevant, what is the standard of care for a non-manufacturing distributor of a foreign manufactured standard building material.

28) Whether Knauf Plasterboard (Tianjin) Company is at fault for manufacturing drywall that emitted sulfur gas which can, and in the homes of the Trial Plaintiffs did, corrode some copper and silver.

29) Whether Taian Taishan Plasterboard Company, Ltd.  is at fault for manufacturing drywall that emitted sulfur gas which can, and in the homes of the Trial Plaintiffs did, corrode some copper and silver.

30) The percentage of fault of Knauf Plasterboard (Tianjin) Company.

31) The percentage of fault of Taian Taishan Plasterboard Company, Ltd.

32) Whether INEX knew when it purchased drywall manufactured by KPT and TTP that it off-gassed sulfur.

33) Whether Interior Exterior had opportunity to, but did not inspect any of the Chinese manufacturing facilities it was considering as sources for drywall, including those from which it purchased and imported drywall for distribution in the United States.

34) Whether Interior Exterior imported and distributed Chinese drywall sold to the Trial Plaintiffs.

35) Whether Interior Exterior received complaints about the Chinese Drywall, including complaints about its heaviness and brittleness.

36) Whether Interior Exterior received many standing orders and requests directing that no import board be delivered, that only domestic board be delivered, or requesting that particular brands of board either be delivered or not be delivered.

37) Whether Interior Exterior had no formal quality control procedures or policies and had not formal procedures or policies for investigating or responding to customer complaints.

38) Whether Interior Exterior had no dealings with KPT, TTP, or MRC prior to its importation of Chinese Drywall.

39) Any issue of fact implicit in any of the above contested issues of fact.

40) Any issue of fact implicit in the statements of material facts above.

41) Any issue of fact implicit in any contested issue of law.

## 9.  CONTESTED ISSUES OF LAW

1)  Whether Interior Exterior is liable as a bad faith seller under Civil Code Article 2545.

2)  Whether a non-manufacturer seller can be liable in bad faith under Civil Code Article 2545 based only on constructive knowledge of a defect.

3)  What are the duties of a seller in redhibition.

4)  Whether a non-manufacturer seller is required to inspect a product prior to sale to determine the possibility of inherent vices or defects.

5)  Whether liability under redhibition is solidary.

6)  Whether comparative fault applies to Trial Plaintiffs redhibition claims against Interior

Exterior.

7) Whether Knauf Plasterboard (Tianjin) Company is liable as a bad faith seller under Civil Code Article 2545.

8) Whether Taian Taishan Plasterboard Company, Ltd is liable as a bad faith seller under Civil Code Article 2545.

9) Whether the applicable standard under La. Stat. Rev. 2531 and 2545 is an "actual knowledge" or "known or should have known" standard. (INEX and North River have each filed Motions in Limine regarding this issue, which is scheduled to be heard on November 16, 2012.)

10) What were the duties of Interior Exterior in redhibition.

11) Whether liability of Knauf Plasterboard (Tianjin) Company or Taian Taishan Plasterboard Company, Ltd is relevant to this phase of the proceedings.

12) Whether comparative fault applies to this phase of the proceedings.

13) Any issue of fact implicit in any of the above contested issues of fact.

14) Any issue of law implicit in the statements of material facts above

15) Any issue of law implicit in any uncontested or contested issue of fact above.

## 10.   EXHIBITS

### A.  Trial Plaintiffs

The Exhibit List of Plaintiffs is appended hereto as Exhibits A-C.  The parties have agreed to meet and confer regarding consolidation of certain of these exhibits as well as possible elimination of certain exhibits if the Stipulation of certain facts is finally signed by the Defendants.  Plaintiffs will be submitting amended exhibits after the meet and confer.

Interior Exterior objects to the entirety of Trial Plaintiffs' exhibits for the reasons set forth in its Motion to Strike.  Moreover, despite Interior Exterior's timely exchange of its exhibits, Trial Plaintiffs did not timely provide a listing of their exhibits and did not timely exchange those exhibits with Interior Exterior.  An electronic link to Trial Plaintiffs' exhibits was finally provided on Friday, November 9, 2012, but downloading the over 1200 exhibits proved onerous and, as of the end of business on Monday, November 12, 2012, Interior Exterior was only able to download approximately 100 of those exhibits.  Finally, at 6:00 p.m. on Tuesday, November 13, 2012 (a mere 22.5 hours before this Pre-Trial was due), Interior Exterior was provided with a disc containing all 1209 of Trial Plaintiffs' exhibits.  As a consequence of the delays in providing the exhibits and the overwhelming scope of the exhibits, Interior Exterior has not been able to meaningfully review those exhibits and confirm authenticity and identify objections.  Interior Exterior, therefore, continues to object to the breadth of the exhibits and the relevancy of many of those exhibits.

North River objects to the entirety of Trial Plaintiffs' exhibits for the reasons set forth in its Interior Exterior's Motion to Strike.  Moreover, despite North River and Interior Exterior's timely exchange of its exhibits, Trial Plaintiffs did not timely provide a listing of their exhibits and did not timely exchange those exhibits with North River.  An electronic link to Trial Plaintiffs' exhibits was finally provided, after the close of business and well into the evening, on Friday, November 9, 2012, but downloading the over 1200 exhibits proved onerous.  While it is North River's understanding that the Trial Plaintiffs provided a CD containing its trial exhibits to Interior Exterior on at 6:00 p.m. on Tuesday, November 13, 2012 (a mere 22.5 hours before this Pre-Trial was due), Trial Plaintiffs have not provided any such CD to North River, who is also a defendant in this action. As a consequence of the delays in providing the exhibits and the

overwhelming scope of the exhibits, North River has not been able to meaningfully review those exhibits and confirm authenticity and identify objections.  North River, therefore, continues its object to the breadth of the exhibits and the relevancy of many of those exhibits.

Plaintiffs disagree with the position of Interior Exterior and North River, which are not prejudiced.  The majority of the exhibits earlier identified by Plaintiffs are documents originally produced by Interior Exterior, produced by the Plaintiffs earlier in discovery, or otherwise marked, produced and or identified in this litigation.

### B.  Interior Exterior

| Exhibit No.: | Bates Label: | Description: |
| --- | --- | --- |
| 1 | | Sample – Knauf Tianjin Drywall |
| 2 | | Sample – Taishan Drywall |
| 3 | | Sample – U.S. Gypsum Drywall |
| 4 | | Sample – National Gypsum Drywall |
| 5 | INT/EXT 6038 | Color photograph of Taishan Drywall |
| 6 | INT/EXT 2439 | Color photograph of Knauf Drywall |
| 7 | In Globo Exhibit: INT/EXT 558-564; 511; 504-508; 513-519; 221-231; 210-220. | Commercial Invoice and Certificates of Warranties for Knauf Tianjin purchases |
| 8 | In Globo Exhibit: INT/EXT 957; 959-994; 1025-1054; 995-1024; 1077-1024; 1055-1126. | Sales Contract, Letter of Credit, Certificates, Commercial Invoices for Taishan Drywall from Metro Resources |
| 9a | | ASTM C1396 (06); ASTM C1396 (04) |
| 9b | | ASTM C 36 (99) |
| 9c | | ASTM C1264 (99) |

| 9d | | ASTM C1264 (05) |
|----|----|----|
| 9e | | ASTM C 473 (03) |
| 10 | INT/EXT 59-61 | Knauf Tianjin's  Material Safety Data Sheet |
| 11 | INT/EXT 5907;1180-1182 | Email concerning Taishan's C1396 compliance |
| 12 | INT/EXT 35572-37077 | INEX Purchase Orders for sale of 4x12x1/2 drywall |
| 13 | INT/EXT 17424-33426 | INEX Invoices |
| 14 | INT/EXT 695 | Davis Construction Supply, LLC's Flyer for drywall. |
| 15 | INT/EXT 696 | PABCO Gypsum Physical Sheet for sale of drywall |
| 16 | INT/EXT 692-694 | Clay Geary's records and notes concerning possible imported board. |
| 17 | INT/EXT 887-939 | World Trade Brokers document |
| 18 | INT/EXT 2374 | Email from & to Clay Geary re: Imported Board |
| 19 | INT/EXT 707 | COMEX International drywall advertisement |
| 20 | INT/EXT 942-943; 946 | UNI-PAC, LTD drywall advertisement |
| 21 | INT/EXT 2285 | Email from Robert McCay to Clay Geary re: cheap sheetrock. |
| 22 | INT/EXT 940 | DestinAsia Material, LLC's gypsum board price sheet. |
| 23 | INT/EXT 2293-2294 | Email from Jim Geary to Clay Geary re: Sheetrock; Crescent City Gypsum. |
| 24 | KI 8-9 | Email from Jeff Brisely to Kurt Heider re: Wallboard requirements for Knauf USA Customers. |
| 25 | INT/EXT 954-956 | Email from Jeff Brisley to Kurt Heider re: Knauf Wallboard Costs INEX. |

| 26 | INT/EXT 678-679 | Email from John Davis to Clay Geary re: Plasterboard to New Orleans. |
| 27 | INT/EXT 635-62937 | Email from John Davis to Clay Geary re: "made in china". |
| 28 | INT/EXT 623 | Email from John Davis to Clay Geary re: USA Wallboard. |
| 29 | INT/EXT 632 | Email from John Davis to Clay Geary re: New Contact. |
| 30 | INT/EXT 609 | Email from Cecilia Wang to Clay Geary re: Knauf Contract and L/C confirmation. |
| 31 | INT/EXT 527-549 | Letter of Credit for Knauf Tainjin board |
| 32 | KI 12 | Email from Clay Geary to Jeff Brisley re: Knauf Drywall. |
| 33 | INT/EXT 608; 293-294; 278-282 | Clay Geary's notes concerning drywall |
| 34 | INT/EXT 661 | Fax from William App to INEX re: wallboard |
| 35 | INT/EXT 605-606 | Email from Cecilia Wang to Clay Geary re: Additional Gypsum Board. |
| 36 | INT/EXT 604 | Standing Order from INEX to Knauf Tianjin |
| 37 | INT/EXT 602 | Fax from Knauf Tianjin to INEX re: order |
| 38 | INT/EXT 4064 | Email from William App to Clay Geary re: order |
| 39 | INT/EXT 594 | Email from William App to Clay Geary re: Wallboard Business – Continuation |
| 40 | INT/EXT 2393-2394 | Email from Russell Wahl to Clay Geary re: gypsum board in container |
| 41 | INT/EXT 1275 -1281 | Fax from William App to INEX re: 3898 MT Wallboard |
| 42 | INT/EXT 589-593 | Email from Jerry Becnel to Clay Geary re: Customs POA, Terms & Conditions |

| 43 | INT/EXT 6011-6012 | Email from Rudy Remont to William App re: Knauf Tianjin photos |
| 44 | INT/EXT 5959-5962 | Email from William App to Jim Geary re: MV Mystras |
| 45 | INT/EXT 489-491 | Fixture Note |
| 46 | INT/EXT    6007;    6005; 6002; 5965 | Emails from Susan Li re: loading pictures |
| 47 | INT/EXT 4021 | Email from Jerry Becnel to Clay Geary re: Mystras Customs Clearance. |
| 48 | INT/EXT 4020 | Email from William App to Victor Wei re: MV Mystras |
| 49 | INT/EXT 555-556 | J.W. Allen & Company's Invoice re: Mystras |
| 50 | INT/EXT 79 | Prime Maritime Agency's Arrival Notice |
| 51 | INT/EXT 91-97 | Survey Order – MV Alexander Gracht |
| 52 | INT/EXT 38-41 | Email from William App to Jesse Weisman re: pallet weights- imported board |
| 53 | INT/EXT 180; 126; 127; 124; 121; 77-78; 80-81; 83-89 | Contract and Certificates of Warranties with Knauf Wuhu |
| 54 | INT/EXT 879-881 | Email from William App to Clay Geary re: IEBS Container Business Ex Knauf  Wuhu |
| 55 | INT/EXT 882 | Email from William App to Clay Geary re: Change in Terms of Sale from FAS Shanghai o FOB Wuhu |
| 56 | INT/EXT 2379 | Email from Rudy Redmont to Clay Geary re: Sheetrock |
| 57 | INT/EXT 1150-1152 | Email from David Zhang to Jim Geary re: Draft Contract |
| 58 | INT/EXT 5908-5909 | Email from David Zhang to Jim Geary re: letter of credit |

| 59 | INT/EXT 1192-1194 | Email from David Zhang to Jim Geary re: letter of credit |
| 60 | INT/EXT 1176-1179 | Dun and Bradstreet Report on Metro Resources Corp. |
| 61 | INT/EXT 5897 | Email from David Zhang to Jim Geary re: Dun & Bradstreet |
| 62 | INT/EXT 5868-5869 | Email from David Zhang to Jim Geary re: drywall |
| 63 | INT/EXT 1157 | Email from David Zhang to Lydia Alvarez re: L/C CM52182 |
| 64 | INT/EXT 1127-1138 | Letter of Credit re: Metro Resources |
| 65 | INT/EXT 30647; 30648; L&W-MDL 031015-031017; 031012-031014 | USG's purchase of Knauf Tianjin drywall from INEX and test results thereof. |
| 66 | In Globo Exhibit; INEX 1551-1979 | J. W. Allen's Delivery Tickets |
| 67 | KPT 74169-74173 | Correspondence from Knauf Tianjin to Salomon Adabi re: test results from CTEH. |
| 68 | KNAUFGIPS 892-896 | Visit report to Luneng Gypsum Mine |
| 69 | INT/EXT 8691-8692 | Wall Street Journal Article entitled "Chinese Drywall Cited in Building Woes." |
| 70 | INT/EXT 37078-37084 | Sample INEX Invoices evidencing customer preferences prior to purchase of Chinese drywall |
| 71 | INT/EXT 6168; 5059; 5087 | Photographs of loading of Knauf Tianjin board |
| 72 | NOAHH 15547-15557 | Columbia Analytical Services Lab Result |
| 73 | NOAHH 14676-14684 | EASI's Lab Results |
| 74 | | CPSC Press Statement Regarding Drywall and Phosphogypsum |
| 75 | | USCPSC's Summary of Contractor's Indoor Air Quality Assessment of Homes Containing Chinese |

| | | Drywall |
|---|---|---|
| 76 | NOAHH 15461-15462 | Email from Jim Pate to Frank Vardeman re: Chinese Drywall Issue |
| 77 | NOAHH 2849-2855 | NOAHH Sales from 7/1/2006-9/30/2009 |
| 78 | NOAHH 9004-9005 | Fly System, Inc. correspondence to NOAHH |
| 79 | NOAHH 3435 | NOAHH Drywall Timeline (July 14, 2010) |
| 80 | NOAHH 15468 | Email from Jim Pate to Bob Mayre re: Sheetrock |
| 81 | NOAHH 2282 | Email from Jim Pate to dkoehler re: Chinese drywall |
| 82 | NOAHH 14571-14573 | NOAHH Memorandum |
| 83 | NOAHH 7723-7724 | Email from Jim Pate to Bill Wright |
| 84 | KNAUFGIPS 927-928 | Knauf's memo concerning odor issue from drywall |
| 85 | | James A. Tompkins, Ph.D.'s CV |
| 86 | | Dr. Timothy D. Tonyan's CV |

### C. North River

North River may introduce as exhibits into evidence the same exhibits identified by Interior Exterior above.

## 11.    DEPOSITION TESTIMONY

### A. Trial Plaintiffs

Trial Plaintiffs will/may offer the following deposition testimony into evidence at trial:

1) Glenn Lemm – INEX Customer

2) John Bush – INEX Customer

3) Jim Tompkins – Defense Expert (will offer perpetuation testimony under cross)

4) Hans Ulrich Hummel – Knauf Employee (subject to Plaintiffs' objections to the testimony of foreign Knauf witnesses)

5) Martin Halbach – Knauf Employee (will offer, subject to Plaintiffs' objections to the testimony of foreign Knauf witnesses)

6) Scott Shewmake- INEX Customer

## B. Interior Exterior

Interior Exterior may offer the following deposition testimony into evidence at trial:

1) Jeffery R. Brisley

2) Mark Patrick Norris

3) John Mezzenga

4) Isabel Corinna Knauf

5) Richard Kostal

6) John Bush

7) Glen Lemm

8) Scott Shewmaker

9) James Tompkins (perpetuation transcript)

## C. North River

North River may offer the following deposition testimony into evidence at trial:

1) Jeffery R. Brisley

2) Mark Patrick Norris

3) John Mezzenga

4) Isabel Corinna Knauf

5) Richard Kostal

6) John Bush

7) Glen Lemm

8) Scott Shewmake

9) Hans Hummel

10) James Tompkins (perpetuation transcript)

## 12. DEMONSTRATIVE EXHIBITS

### A. Trial Plaintiffs

The Trial Plaintiffs may use the following demonstrative exhibits:

1) Presentation Board for New Orleans Habitat for Humanity;

2) PowerPoint or other outline or materials for opening presentation and/or closing argument

3) Sample drywall;

4) Timeline of events;

5) Blow-ups of exhibits.

### B. Interior Exterior

Interior Exterior may use the following demonstrative exhibits:

1) Sample drywall;

2) PowerPoint or other outline for opening presentation or closing argument;

3) Timeline of event;

4) Blow-ups of exhibits.

### C. North River

North River may use the following demonstrative exhibits:

1) Sample drywall;

2)  PowerPoint or other outline for opening presentation or closing argument;

3)  Timeline of events

## 13.  WITNESSES

### A.  Trial Plaintiffs

a.  *The Trial Plaintiffs will call the following witnesses to testify at the trial:*

1.  Clay Geary (under cross)

    Individually and as Corporate Representative of Interior Exterior Building Supply,
    L.P.
    727 South Cortez Street
    New Orleans, LA 70119

    Mr. Geary will testify to Interior Exterior's purchase, import and sale of drywall
    (including imported drywall), as well as the facts and decisions surrounding same.
    Mr. Geary may also testify about INEX's sales, invoicing quality control, customer
    complaint, product tracking and other experiences, practices and/or policies involving
    INEX products (including drywall and imported drywall) at the New Orleans  branch,
    as well as the properties, appearance and/or problems of Chinese drywall, including
    customer complaints and documentation regarding same, and other matters addressed
    in his depositions.

2.  Jim Geary (under cross)

    Individually and as Corporate Representative of Interior Exterior Building Supply,
    L.P.
    727 South Cortez Street
    New Orleans, LA 70119

    Mr. Geary will testify to Interior Exterior's purchase, import and sale of drywall
    (including imported drywall), as well as the facts and decisions surrounding same.
    Mr. Geary may also testify about INEX's sales, invoicing quality control, customer
    complaint, product tracking and other experiences, practices and/or policies involving
    INEX products (including drywall and imported drywall) at the New Orleans  branch,
    as well as the properties, appearance and/or problems of Chinese drywall, including
    customer complaints and documentation regarding same, and other matters addressed
    in his deposition.

3.  William App

    Representative of J.W. Allen and / or J.W. Allen and Co., Inc.

J.W. Allen
200 Crofton Road, Box 34
Kenner, LA 70062

Mr. App will testify to Interior Exteriors' transactions with Chinese manufacturers, including the decisions regarding import and inspection of the drywall

4. Ray Stoltz
   351 Pleasant Lane
   Slidell, LA, 70458

   Mr. Stolz will testify about his experience with imported drywall, his standing order with Interior Exterior, and his experience with Chinese Drywall

5. Joseph Guerra (under cross)
   504 Moore Blvd., Covington, LA 70433

   Mr. Guerra is an INEX employee - Assistant Warehouse Manager at the New Orleans branch. Mr. Guerra will testify about INEX's unloading, storage, stocking, shipping, documentation, quality control and other experiences, practices and/or policies involving INEX products (including drywall and imported drywall) at the New Orleans branch, as well as the properties, appearance and/or problems of Chinese drywall, and other matters addressed in his deposition.

6. Gary Meade (under cross)
   325 Westminster Drive, Slidell, LA 70460

   Mr. Meade is an INEX employee - Warehouse Manager at the Mandeville branch. Mr. Meade will testify about INEX's unloading, storage, stocking, shipping, invoicing, documentation, quality control and other experiences, practices and/or policies involving INEX products (including drywall and imported drywall) at the Mandeville branch, as well as the properties, appearance and/or problems of Chinese drywall, and other matters addressed in his deposition.

7. Casey LeBlanc
   1909 Alvar St., New Orleans, LA

   Ms. LeBlanc will testify about the Chinese Drywall installed in her home.

8. Plaintiff New Orleans Habitat for Humanity, James Pate
   7100 St. Charles Avenue
   New Orleans, LA 70118

   Mr. Pate will testify about the activities of New Orleans Habitat for Humanity in constructing properties and the purchase and use of Interior Exterior's Chinese Drywall, including in the property of Ms. LeBlanc.

9.  Plaintiff Cheryl Gross
    400 Hay Place
    New Orleans, LA 70124

    Ms. Gross will testify about the Chinese Drywall installed in her home.

10. Plaintiff Beryl Mundee
    4321 S. Liberty Street
    New Orleans, LA 70115

    Ms. Mundee will testify about the Chinese Drywall installed in her home.

11. Plaintiff Edward Beckendorf
    304 Brown Thrasher Loop South
    Madisonville, LA 70447

    Mr. Beckendorf will testify about the Chinese Drywall installed in his home.

12. Dr. Lori Streit
    3056 Weber Drive, Aurora, IL
    Dr. Streit will testify that had Interior Exterior visited the manufacturing facility, it
    would have noted elevated levels or monitoring of Hydrogen sulfide gas or noted a
    smell, and that Interior Exterior did not review ASTM C1396 or ASTM 473 test data
    on the CDW for compliance with the standard, consistent with her expert report
    and/or deposition

13. Dean Rutila
    41 Seyon Street, Waltham, MA

    Mr. Rutila will testify that Interior Exterior failed to adequately investigate the CDW
    prior to distribution. Interior Exterior relied upon inadequate and unsubstantiated
    testing reports, failed to properly investigate the  potential manufacturers or test the
    drywall, and sold drywall that was not in compliance with applicable standards,
    consistent with his expert report and/or deposition.

14. Rosemary Coates
    P.O. Box 760, Los Gatos, CA 95031

    Ms. Coates will testify that Interior Exterior failed to fulfill its duties as an importer
    and distributor of Chinese Drywall, consistent with her expert report and/or
    deposition

b. *The Trial Plaintiffs may call the following witnesses to testify at the trial:*

1) William Garcia
   3820 Civic Street
   Metairie, LA 70001

   Mr. Garcia was the contactor for Ms. Mundee and will testify about Interior Exterior, the work on Ms. Mundee's home and Chinese Drywall.

2) Don Joseph (under cross)
   9807 East Rockton Circle, New Orleans, LA 70127

   Mr. Joseph is an INEX employee - Warehouse Manager at the New Orleans branch. Mr. Joseph may testify about INEX's unloading, storage, stocking, shipping, invoicing, documentation, quality control and other experiences, practices and/or policies involving INEX products (including drywall and imported drywall) at the New Orleans branch, as well as the properties, appearance and/or problems of Chinese drywall, and other matters addressed in his deposition.

3) Robert McCay (under cross)
   120 Maryland Drive, New Orleans, LA 70124

   Mr. McCay is an INEX employee - Branch Manager at the New Orleans branch. Mr. McCay may testify about INEX's ordering, research, unloading, storage, stocking, shipping, sales, invoicing, documentation, quality control, customer complaint, product tracking and other experiences, practices and/or policies involving INEX products (including drywall and imported drywall) at the New Orleans branch, as well as the properties, appearance and/or problems of Chinese drywall, including customer complaints and invoices regarding same, and other matters addressed in his deposition.

4) Kelly Burke (under cross)
   6778 Colbert Street, New Orleans, LA 70124

   Mr. Burke is an INEX employee – Salesperson at the New Orleans branch. Mr. Burke may testify about INEX's sales, invoicing, documentation, quality control, customer complaint, product tracking and other experiences, practices and/or policies involving INEX products (including drywall and Chinese drywall) at the New Orleans branch, as well as the properties, appearance and/or problems of Chinese drywall, including customer complaints and documentation regarding same, and other matters addressed in his deposition.

5) April Chauffe Casey (under cross)
   1200 Peggy Ave., Metairie, LA 70003

32

Ms. Casey is an INEX employee – Salesperson at the New Orleans branch.  Ms. Casey may testify about INEX's sales, invoicing, quality control, customer complaint, product tracking and other experiences, practices and/or policies involving INEX products (including drywall and Chinese drywall) at the New Orleans  branch, as well as the properties, appearance and/or problems of Chinese drywall, including customer complaints and documentation regarding same, and other matters addressed in her deposition.

6)  Rebecca Galleon (under cross)
    730 S. Scott Street, New Orleans, LA 70119

    Ms. Galleon is an INEX employee – Salesperson at the New Orleans branch.  Ms. Galleon may testify about INEX's sales, invoicing, quality control, customer complaint, product tracking and other experiences, practices and/or policies involving INEX products (including drywall and Chinese drywall) at the New Orleans  branch, as well as the properties, appearance and/or problems of Chinese drywall, including customer complaints and documentation regarding same, and other matters addressed in her deposition.

7)  Johnny Odom

    City of New Orleans
    Office of Safety and Permits
    1300 Perdido St.
    Room 7E05
    New Orleans, LA 70112

    Mr. Odom will testify to the role of ASTM requirements, including drywall labeling, to local building code

8)  Debra Acker

    Viewpoint Development and Construction
    1056 E. Worthey Rd., Ste. E.
    Gonzales, LA 70737

    Ms. Acker may testify to her standing order regarding drywall and matters related to Chinese Drywall.

9)  Kurt Heider
    38 Pine Court, Hammond, LA

    Mr. Heider is an employee of Knauf Insulation.  Mr. Heider may testify to the nature of Knauf Insulations business, and its role in providing Interior Exterior contact with a drywall manufacturing source in China.

33

10) Keith Fournier

   USG
   5701 Lewis Road
   New Orleans, LA 70126

   Mr. Fournier may testify to the purchase of drywall from Interior Exterior, the
   subsequent testing thereof and matters related to the manufacture and testing of
   drywall.

11) Mark Peterson (under cross)
   552 Jefferson Park Avenue, Jefferson, LA 70121

   Mr. Peterson is an INEX employee – Warehouse worker at the New Orleans branch.
   Mr. Peterson may testify about INEX's receipt, shipping, loading, stocking, handling,
   quality control, customer complaint, product tracking and other experiences, practices
   and/or policies involving INEX products (including drywall and Chinese drywall) at
   the New Orleans  branch, as well as the properties, appearance and/or problems of
   Chinese drywall, including customer complaints and documentation regarding same,
   and other matters addressed in his deposition.

12) Veda Redman (under cross)
   206 Edgewood, Slidell, LA 70460

   Ms. Redman is an INEX employee – Salesperson, Office Manager and/or Co-
   Manager at the Mandeville branch.  Ms. Redman may testify about INEX's sales,
   invoicing, quality control, customer complaint, product tracking and other
   experiences, practices and/or policies involving INEX products (including drywall
   and Chinese drywall) at the Mandeville branch, as well as the properties, appearance
   and/or problems of Chinese drywall, including customer complaints and
   documentation regarding same, and other matters addressed in her deposition.

13) Brandyn Smith (under cross)
   177 West Cherrywood Lane, Pearl River, LA 70452

   Mr. Smith is an INEX employee – Salesperson at the Mandeville branch.  Mr. Smith
   may testify about INEX's sales, invoicing, quality control, customer complaint,
   product tracking and other experiences, practices and/or policies involving INEX
   products (including drywall and Chinese drywall) at the Mandeville branch, as well
   as the properties, appearance and/or problems of Chinese drywall, including customer
   complaints and documentation regarding same, and other matters addressed in his
   deposition.

c.  Trial Plaintiffs' witness list was filed in accordance with the Federal Rules of Civil Procedure and this Courts' August 2, 2012 Scheduling Order.  In addition, Trial Plaintiffs have exchanged expert reports of its experts.

**B.  Interior Exterior**

a. *Interior Exterior will call the following witnesses to testify at the trial:*

1.  Timothy D. Tonyan
    CTL Group
    5400 Old Orchard Road
    Skokie, Illinois 60077

    Dr. Timothy D. Tonyan will testify as to gypsum manufacturing, ASTM standards applicable to gypsum board and testing thereof.

2.  James Geary
    Corporate Representative of Interior Exterior Building Supply, L.P.
    727 South Cortez Street
    New Orleans, LA 70119

    Mr. Geary will testify to Interior Exterior Building Supply, L.P.'s purchase and sale of Chinese manufactured drywall.

3.  Clayton Geary
    Corporate Representative of Interior Exterior Building Supply, L.P.
    727 South Cortez Street
    New Orleans, LA 70119

    Mr. Geary will testify to Interior Exterior Building Supply, L.P.'s purchase and sale of Chinese manufactured drywall.

4.  Jim Pate
    Corporate Representative of New Orleans Area Habitat for Humanity
    7100 St. Charles Avenue
    New Orleans, LA 70118

    Mr. Pate will testify to New Orleans Area Habitat for Humanity's purchase and sale of Chinese manufactured drywall; and New Orleans Area Habitat for Humanity's purchase of Chinese manufactured drywall from Interior Exterior Building Supply, L.P.

5. Kurt Heider
   Knauf Insulation

   Mr. Heider will testify to the manufacturing, sale and sale and testing of Knauf's gypsum board or drywall which was sold to Interior Exterior Building Supply, L.P.

6. Keith Fournier
   5701 Lewis Road
   New Orleans, LA 70126

   Mr. Fournier will testify to the purchase of drywall from Interior Building Supply, L.P. and the subsequent testing thereof.

7. William App

   Mr. App may testify concerning shipment of Chinese drywall to Interior Exterior Building Supply, L.P.

b. *Interior Exterior may call the following witnesses to testify at the trial*:

1. Casey LeBlanc
   1909 Alvar Street
   New Orleans, LA 70117

   Ms. LeBlanc may testify as to the purchase and installation of Chinese manufactured drywall in her home.

2. David Gross
   400 Hay Place
   New Orleans, LA 70124

   Mr. Gross may testify as to the purchase and installation of Chinese manufactured drywall in his home.

3. Cheryl Gross
   400 Hay Place
   New Orleans, LA 70124

   Ms. Gross may testify as to the purchase and installation of Chinese manufactured drywall in her home.

4. Edward Beckendorf

   Mr. Beckendorf may testify as to the purchase and installation of Chinese manufactured drywall in his home.

5. Susan Beckendorf

   Ms. Beckendorf may testify as to the purchase and installation of Chinese manufactured drywall in her home.

6. Beryl F. Mundee
   4321 S. Liberty Street
   New Orleans, LA 70115

   Ms. Mundee may testify as to the purchase and installation of Chinese manufactured drywall in her home.

7. William Garcia
   3820 Civic Street
   Metairie, LA 70001

   Mr. Garcia may testify to the purchase and installation of Chinese manufactured drywall in Beryl Mundee's home.

8. Vincent Gonzales

   Mr. Gonzales may testify to the purchase and installation of Chinese manufactured drywall in Beryl Mundee's home.

9. Roman Gonzales or
   3232 Sugarmill Road
   Kenner, LA 700065

   Mr. Gonzalez may testify to the purchase and installation of Chinese manufactured drywall in Cheryl and David Gross's home.

10. Rebecca Galleon
    Interior Exterior Building Supply, L.P.'s employee

    Ms. Galleon may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

11. Mark S. Peterson
    Interior Exterior Building Supply, L.P.'s employee

    Mr. Peterson may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

12. Gary Meade
    Interior Exterior Building Supply, L.P.'s employee

    Mr. Meade may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

13. Brandyn Smith
Interior Exterior Building Supply, L.P.'s employee

Mr. Smith may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

14. Aprille Casey
Interior Exterior Building Supply, L.P.'s employee

Ms. Casey may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

15. Kelly Burke
Interior Exterior Building Supply, L.P.'s employee

Mr. Burke may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

16. Vera Redman
Interior Exterior Building Supply, L.P.'s employee

Ms. Redman may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

17. Melissa Smith
Interior Exterior Building Supply, L.P.'s employee

Ms. Smith may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

18. Don Joseph
Interior Exterior Building Supply, L.P.'s employee

Ms. Joseph may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

19. Robert McCay
Interior Exterior Building Supply, L.P.'s employee

Mr. McCay may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

20. Brandon Carlisle
Interior Exterior Building Supply, L.P.'s employee

Mr. Carlisle may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall; and the installation of Chinese manufactured drywall in his home.

21. Christian Gambel
Interior Exterior Building Supply, L.P.'s employee

Mr. Gambel may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

22. Chip Williams
    Interior Exterior Building Supply, L.P.'s employee

    Mr. Williams may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

23. Russell Wahl
    133 Oakleaf Drive
    Slidell, LA 70461

    Mr. Wahl may testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

24. Donald B. Petagna
    2619 Octavia St.
    New Orleans, LA 70115

    Mr. Petagna may testify as to the purchase and installation of Chinese manufactured drywall in is home.

25. Bob Mayre
    (Former New Orleans Area Habitat for Humanity employee)

    Mr. Mayre may testify to the purchase of drywall on behalf of New Orleans Area Habitat for Humanity from Interior Building Supply, L.P.

26. David Zhang or

    Mr. Zhang may testify to the Interior Exterior Building Supply, L.P.'s purchase of Chinese manufactured drywall.

27. Richard Kostal

    Mr. Kostal may testify concerning purchases from Interior Exterior Building Supply, L.P.

28. Jimmy Montruelle
    Metairie, LA

    Mr. Montruelle may testify concerning purchases from Interior Exterior Building Supply, L.P.

29. Jonathan S. Shewmaker
    177 West Cherrywood Lane
    Pearl River, LA 70452

    Mr. Shewmaker may testify concerning purchases from Interior Exterior Building Supply, L.P.

c.   Interior Exterior's witness list was filed in accordance with the Federal Rules of Civil Procedure and this Courts' August 2, 2012 Scheduling Order, on September 28, 2012.   In addition, Interior Exterior has exchanged expert reports of its two designated experts:   James Tompkins and Timothy Tonyan, on October 5, 2012, as required by this Court's August 2, 2012 Scheduling Order.

**C.  North River**

a.  *North River intends to call the following witnesses:*

1.  Timothy D. Tonyan
    CTL Group
    5400 Old Orchard Road
    Skokie, Illinois 60077

    Dr. Timothy D. Tonyan will testify as to gypsum manufacturing, ASTM standards applicable to gypsum board and testing thereof.

2.  James Geary
    Corporate Representative of Interior Exterior Building Supply, L.P.
    727 South Cortez Street
    New Orleans, LA 70119

    Mr. Geary will testify to Interior Exterior Building Supply, L.P.'s purchase and sale of Chinese manufactured drywall.

3.  Clayton Geary
    Corporate Representative of Interior Exterior Building Supply, L.P.
    727 South Cortez Street
    New Orleans, LA 70119

    Mr. Geary will testify to Interior Exterior Building Supply, L.P.'s purchase and sale of Chinese manufactured drywall.

4.  Jim Pate
    Corporate Representative of New Orleans Area Habitat for Humanity
    7100 St. Charles Avenue
    New Orleans, LA 70118

Mr. Pate will testify to New Orleans Area Habitat for Humanity's purchase and sale of Chinese manufactured drywall; and New Orleans Area Habitat for Humanity's purchase of Chinese manufactured drywall from Interior Exterior Building Supply, L.P.

5.  Kurt Heider
    Knauf Insulation

    Mr. Heider will testify to the manufacturing, sale and sale and testing of Knauf's gypsum board or drywall which was sold to Interior Exterior Building Supply, L.P.

6.  Keith Fournier
    5701 Lewis Road
    New Orleans, LA 70126

    Mr. Fournier will testify to the purchase of drywall from Interior Building Supply, L.P. and the subsequent testing thereof.

b.  *North River may call the following witnesses at trial:*

1.  Casey LeBlanc
    1909 Alvar Street
    New Orleans, LA 70117

    Ms. LeBlanc will testify as to the purchase and installation of Chinese manufactured drywall in her home.

2.  David Gross
    400 Hay Place
    New Orleans, LA 70124

    Mr. Gross will testify as to the purchase and installation of Chinese manufactured drywall in his home.

3.  Cheryl Gross
    400 Hay Place
    New Orleans, LA 70124

    Ms. Gross will testify as to the purchase and installation of Chinese manufactured drywall in her home.

4.  Edward Beckendorf
    304 Brown Thrasher Loop South
    Madisonville, LA   70447

    Mr. Beckendorf will testify as to the purchase and installation of Chinese manufactured drywall in his home.

5. Susan Beckendorf
   304 Brown Thrasher Loop South
   Madisonville, LA   70447

   Ms. Beckendorf will testify as to the purchase and installation of Chinese manufactured
   drywall in her home.

6. Beryl F. Mundee
   4321 S. Liberty Street
   New Orleans, LA 70115

   Ms. Mundee will testify as to the purchase and installation of Chinese manufactured
   drywall in her home.

7. William Garcia or
   Representative of G&G Contractors, LLC
   3820 Civic Street
   Metairie, LA 70001

   Mr. Garcia will testify to the purchase and installation of Chinese manufactured drywall
   in Beryl Mundee's home.

8. Roman Gonzales or
   3232 Sugarmill Road
   Kenner, LA 700065

   Mr. Gonzalez will testify to the purchase and installation of Chinese manufactured
   drywall in Cheryl and David Gross's home.

9. Dwayne Gref or
   1107 Perrin Drive
   Arabi, LA 70032

   Mr. Gref will testify to the purchase and installation of Chinese manufactured drywall.

10. William Wellmeier or
    1812 Richland Avenue
    Metairie, LA 70001

    Mr. Wellmeier will testify to the purchase and installation of Chinese manufactured
    drywall.

11. Bob Mayre

   Mr. Mayre will testify to the purchase of drywall on behalf of New Orleans Area Habitat for Humanity from Interior Building Supply, L.P.

12. Rebecca Galleon
   Interior Exterior Building Supply, L.P.'s employee

   Ms. Galleon will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

13. Mark S. Peterson
   Interior Exterior Building Supply, L.P.'s employee

   Mr. Peterson will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

14. Gary Meade
   Interior Exterior Building Supply, L.P.'s employee

   Mr. Meade will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

15. Brandyn Smith
   Interior Exterior Building Supply, L.P.'s employee

   Mr. Smith will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

16. Aprille Casey
   Interior Exterior Building Supply, L.P.'s employee

   Ms. Casey will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

17. Kelly Burke
   Interior Exterior Building Supply, L.P.'s employee

   Mr. Burke will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

18. Vera Redman
   Interior Exterior Building Supply, L.P.'s employee

   Ms. Redman will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

19. Melissa Smith
   Interior Exterior Building Supply, L.P.'s employee

   Ms. Smith will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

20. Don Joseph

Interior Exterior Building Supply, L.P.'s employee

Ms. Joseph will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

21. Robert McCay
    Interior Exterior Building Supply, L.P.'s employee

    Mr. McCay will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

22. Brandon Carlisle
    Interior Exterior Building Supply, L.P.'s employee

    Mr. Carlisle will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall; and the installation of Chinese manufactured drywall in his home.

23. Christian Gambel
    Interior Exterior Building Supply, L.P.'s employee

    Mr. Gambel will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

24. Chip Williams
    Interior Exterior Building Supply, L.P.'s employee

    Mr. Williams will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

25. Russell Wahl
    133 Oakleaf Drive
    Slidell, LA 70461

    Mr. Wahl will testify as to Interior Exterior Building Supply, L.P.'s sale of drywall.

26. Donald B. Petagna
    2619 Octavia St.
    New Orleans, LA 70115

    Mr. Petagna will testify as to the purchase and installation of Chinese manufactured drywall in is home.

27. Robert Hammell
    1400 Gause Boulevard, Suite B
    Slidell, LA   70458

    Mr. Hammmel will testify concerning purchases from Interior Exterior Building Supply, L.P.

28. Jimmy Montruelle
23121 P J Tooley Rd.
Bush, LA 70431-2541

Mr. Montruelle will testify concerning purchases from Interior Exterior Building Supply, L.P.

c.  North River's witness list was filed in accordance with the Federal Rules of Civil Procedure and this Courts' August 2, 2012 Scheduling Order, on September 28, 2012.  In addition, North River has exchanged expert reports of its two designated experts:  James Tompkins and Timothy Tonyan, on October 5, 2012, as required by this Court's August 2, 2012 Scheduling Order.

**14.   JURY TRIAL STATEMENT**

This is a jury trial, and only the issue of Interior Exterior's liability in redhibition will be tired by the jury at this time.  Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voire dire shall be delivered to the Court and opposing counsel no later than **five (5)** working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

**15.   STATEMENT REGARDING DAMAGES**

The issue of liability will be tried separately from that of quantum.

**16.   STATEMENT REGARDING OTHER MATTERS**

None at this time.

**17.   STATEMENT REGARDING TRIAL**

Trial shall commence on November 26, 2012, at 8:30 a.m. and is estimated to last seven to ten days.

18.     **STATEMENT REGARDING PRE-TRIAL ORDER**

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.     **STATEMENT REGARDING SETTLEMENT**

Possibility of settlement of this case was considered.

Respectfully submitted this 15th day of November, 2012,

**For Trial Plaintiffs:**

 */s/ Christopher Seeger*_____
CHRISTOPHER SEEGER
Seeger Weiss, LLP
One William Street
New York, New York 10004
Telephone: 212/584-0700
Facsimile:      212/584-0799
E-mail:cseeger@seegerweiss.com
*Counsel for Plaintiffs*

 */s/ Gerald E. Meunier*_____
GERALD E. MEUNIER
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:      504/522-2304
Facsimile:      504/528-9973
E-mail:gmeunier@gainsben.com
*Counsel for Plaintiffs*

**For Defendant, Interior Exterior:**

__/s/ Richard G. Duplantier, Jr._____ _____
Richard G. Duplantier, Jr. (# 18874)
Lambert J. Hassinger, Jr. (# 21683)
Benjamin R. Grau (#26307)
Carlina C. Eiselen, (# 28524)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802 / Fax:   (504) 525-2456
rduplantier@gjtbs.com /jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com
*Counsel for Defendant, Interior Exterior Building Supply, L.P. and Interior Exterior*
 *Enterprises, LLC*

**For Defendant, North River:**

THOMPSON COE COUSINS  & IRONS LLP

 _/s/ Brian S. Martin_                     
BRIAN S. MARTIN, ESQ.
bmartin@thompsoncoe.com
KEVIN RISLEY, ESQ.
krisley@thompsoncoe.com
RODRIGO "DIEGO" GARCIA, JR., ESQ.
dgarcia@thompsoncoe.com
SUZANNE M. PATRICK, ESQ.
spatrick@thompsoncoe.com
One Riverway, Suite 1600
Houston, Texas 77056
Phone: (713) 403-8206
Fax:  (713) 403-8299


LOBMAN CARNAHAN BATT ANGELLE & NADER

SIDNEY J. ANGELLE, ESQ. (La. Bar No. 1002)
sja@lcba-law.com
ERIC B. BERGER, ESQ. (La. Bar No. 26196)
ebb@lcba-law.com
400 Poydras Street, Suite 2300
New Orleans, Louisiana 70130
Phone: (504) 586-9292
Fax:   (504) 586-1290
Counsel for Defendant, The North River Insurance Company