UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENTS RELATES TO: ALL CASES AND | JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |
| *Payton, et. al. v. Knauf Gips, KG, et. al.*<br>Case No. 2:09-cv-07628 (E.D. La.) | |
| *Wiltz, et. al. v. Beijing New Building Materials Public Limited Co., et. al.*<br>Case No. 1:09-cv-00361 (E.D. La.) | |
| *Gross, et. al. v. Knauf Gips, KG, et. al.*<br>Case No. 2:09-cv-06690 (E.D. La.) | |
| *Rogers, et. al. v. Knauf Gips, KG, et. al.*<br>Case No. 2:10-cv-00362 (E.D. La.) | |
| *Amato, et. al. v. Liberty Mutual Ins. Co., et. al.*<br>Case No. 2:10-cv-00932 | |
| *Hernandez, et. al. v. AAA Insurance, et. al.*<br>Case No. 2:10-cv-3070 (E.D. La.) | |
| *Abel, et. al. v. Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*<br>Case No. 2:11-cv-00080 (E.D. La.) | |
| *Abreu, et. al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et. al.*<br>Case No. 2:110cv000252 (E.D. La.) | |
| *Haya, et. al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*<br>Case No. 2:11-cv-01077 (E.D. La.) | |
| *Vikers, et. al. v. Knauf Gips KG, et. al.*<br>Case No. 2:09-cv-04117 (E.D. La.) | |

**OBJECTORS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SANCTIONS AGAINST CLASS ACTION COUNSEL**

Objectors Saul Soto, SHS Construction, Ronnie Garcia, and Bay Area Contracting & Construction, Inc. file this their Memorandum in Support of their Motion for Sanctions against Class Action Counsel.

**I.**

**PRELIMINARY STATEMENT**

This is a motion for sanctions against Class Counsel arising from the continued depositions of Saul Soto and Ronnie Garcia on November 8, 2012 in Corpus Christi, Texas and Class Counsel's impermissibly harassing conduct during those depositions, which Objectors contend is sanctionable.

It is no secret that the class action bar does not like objectors of any kind, whether represented by experienced objector's counsel or not. Of course, they have every right to dislike objectors, their lawyers even, and every right to argue against any concerns that objectors raise. However, they do not have the right to use depositions as a platform to harass Objectors for bringing objectively valid and appropriate objections, nor to intimidate Objectors in an effort to engineer the dismissal of valid objections before their merits can be reached.

Regrettably, Class Counsel's conduct in connection with the Soto and Garcia objections requires sanctions. If the Court fails to sanction Class Counsel for this conduct, these and other serial class action lawyers will be emboldened to employ the same or worse tactics against objectors in future cases, frustrating an essential protection for class members envisioned by Rule 23.

## II.

## EVIDENCE IN SUPPORT OF OBJECTORS' MOTION FOR SANCTIONS

Objectors' motion is supported by the following evidence, which is attached hereto and incorporated herein by reference:

a. Uncertified Copy of Deposition of Saul Soto (Vol. 2) dated November 8, 2012, a true and correct copy of which is attached hereto as Exhibit 1 ("Soto Depo.");

b. Uncertified Copy of Deposition of Ronnie Garcia (Vol. 2) dated November 8, 2012, a true and correct copy of which is attached hereto as Exhibit 2 ("Garcia Depo.");

c. Notice of Continuation of Ronnie Garcia Deposition dated November 5, 2012 (Doc. 16094), a true and correct copy of which is attached hereto as Exhibit 3 ("Garcia Cont. Depo. Notice");

d. Notice of Continuation of Saul Soto Deposition dated November 5, 2012 (Doc. 16092), a true and correct copy of which is attached hereto as Exhibit 4 ("Soto Cont. Depo. Notice");

e. Court Order dated November 1, 2012, regarding the scope of discovery directed toward Objectors (Doc. 16056), a true and correct copy of which is attached hereto as Exhibit 5 ("11-1-12 Order"); and

f. Declaration of Theodore H. Frank dated October 31, 2012 (Doc. 16045-1), a true and correct copy of which is attached hereto as Exhibit 6 ("Frank Decl.").

This motion is also supported by Objectors' latest pleadings, and the other pleadings, discovery, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing or submission date, and the same are incorporated herein by reference.

## III.

## RELEVANT FACTS

Prior to the taking of any depositions in this case, the parties had a discovery hearing that

addressed, among other subjects, the proper scope of discovery in this case. The result was "<u>that the scope of discovery in this matter is *limited* to two overarching issues, namely the standing of each objector and the basis of each objection, and the related issues of each objector's arrangement(s) or agreement(s) with counsel</u>." (11-1-12 Order, Ex. 5) (emphasis added).

Class Counsel took the continued depositions of Saul Soto and Ronnie Garcia on November 8, 2012. The following questions and comments were made by Class Counsel at those depositions:

    **1.**    **Deposition of Saul Soto**

        a.    Class Counsel asked whether the witness was "troubled" by the fact that Bandas was not present defending his deposition (Soto Depo., 137:8-14, Ex. 1);

        b.    Class Counsel repeatedly asked the witness if he was aware that class counsel is seeking sanctions against the witness and his counsel (for a discovery motion that had long before been withdrawn by Objectors' counsel) (*id*. at 153:8-23, 155:2-6, 155:18-22, 159:8-14, 165:8-13, 171:20 – 172:8);

        c.    Class Counsel threatened the witness that class counsel was seeking to bring the witness before the Judge in New Orleans (even though counsel should have known there is no subpoena power to compel the witness or that the Court had already told the parties that witnesses would not be compelled to appear in New Orleans) (*id*. at 155:7-17);

        d.    Class Counsel asked the witness if he was willing to drop his objection in light of Class Counsels' threat of sanctions (*id*. at 155:23 – 156:8, 165:14-16);

        e.    Class Counsel told the witness that the only reason his objection was filed in this case was because Objectors' counsel was attempting to coerce a fee (although Objectors' counsel has not made a demand, and has stipulated to the Court that no settlement would be made at the trial or appellate level without Court approval if Class Counsel sought such an injunction) (*id*. at 167:7-24, 169:16-21, 170:12-20);

        f.    Class Counsel suggested to the witness that he would have to post a bond of $431,167 and then later a "$70,000 plus bond" (even though no such bond has been requested and those bond amounts had no relationship to

        any facts of this case) (*id*. at 175:14 – 176:4, 178:3-18); and

    g.    Class Counsel told the witness that Objectors' counsel might "abandon" him and "leave him hanging" (*id*. at 183:15 – 184:1).

## 2. Deposition of Ronnie Garcia

    a.    Class Counsel suggested that the witness was in violation of the Court's preservation order with respect to physical evidence long since discarded according to the witness's testimony (Garcia Depo., 166:5-17, Ex. 2);

    b.    Class Counsel asked witness was "troubled" by the fact that counsel was not present defending his deposition (*id*. at 170:2-6);

    c.    Class Counsel repeatedly asked the witness if he was aware that class counsel is seeking sanctions against the witness and his counsel (for a discovery motion that had long before been withdrawn by Objectors' counsel) (*id*. at 176:21 – 179:11, 182:7-14, 184:25 – 185:14, 185:20-23);

    d.    Class Counsel threatened the witness that class counsel was seeking to bring the witness before the Judge in New Orleans (even though counsel should have known there is no subpoena power to compel the witness or that the Court had already told the parties that witnesses would not be compelled to appear in New Orleans) (*id*. at 179:21 – 180:7, 181:17-21);

    e.    Class Counsel attacked Objectors' counsel and told that witness that his lawyer was "not doing a great job" of representing him (*id*. at 184:15-18);

    f.    Class Counsel told the witness that the only reason his objection was filed in this case was because Objectors' counsel was attempting to "high-jack the settlement" and get a fee (although Objectors' counsel has not made a demand and stipulated to the Court that no settlement would be made without Court approval if Class Counsel sought such an injunction) (*id*. at 195:5-9);

    g.    Class Counsel told the witness that his objection was meritless and that he would get sanctioned (*id*. at 193:14-17, 197:19 – 198:2);

    h.    Class Counsel told the witness that he might have to "come up" with over $431,000 and then later said over $70,000 if his objection was overruled (*id*. at 201:15 – 202:25, 203:7-20, 206:16-21); and

    i.    Class Counsel told the witness that every objection filed by Objectors' counsel for other clients was frivolous and that Objectors' counsel was engaged in extortion (*id*. at 208:19 – 209:16).

The aggressive, over-the-top tone of the questions is even more shocking than summarized here. Objectors respectfully request the Court read the question and answers at the referenced citations in the attached depositions to better understand the unprofessional, inappropriate harassment directed at the Objectors by Class Counsel in these depositions.

## IV.

## ARGUMENTS AND AUTHORITIES

### A. Class Counsel Rely on the Aggregation of Small Claims to Maximize Their Recovery and Minimize Input from Unnamed Class Members.

The collective nature of class actions is used to aggregate small claims and the desire to address the divergent interests of claimants and class counsel. When each plaintiff's stake in the outcome of litigation is small,[1] no plaintiff has an appreciable incentive to monitor the conduct of class counsel.[2] Class counsel have an incentive to seek a settlement that maximizes attorneys' fees at the expense of class compensation, and defendants have an incentive to accept such a settlement to end the litigation. *See, e.g., In re Pet Foods Prods. Liab. Litig.*, 629 F.3d 333, 359 (3d Cir. 2010) (Weis, J., concurring in part and dissenting in part) (noting that the court has "observed on a number of occasions" that class action defendants are "interested primarily in 'buying peace'.")[3]; *see generally John C. Coffee, Jr., Class Action Accountability: Reconciling*

---

[1] In this case, the claims process has not even been defined, much less approved by the Court. *See* https://chinesedrywallclass.com/english/FrequentlyAskedQuestions.aspx (as of November 11, 2012) ("The Court has not yet approved a plan to distribute funds among Class Members. The Court will make that decision and approve a claims process at a later date."). Accordingly, no class member currently has any sense whether their claims are small, large, or worth anything at all.

[2] *See, e.g., In Re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 812 (3d Cir. 1995) (explaining that the stakes of individual class member to object to a class action are usually too small to bother without pro bono representation).

[3] Evidence of the Defendants' interest in simply buying peace in this case in response to Class Counsel's leveraging a settlement from uncertain claims abounds, as does Class Counsel's desire to simply sell them a release at the expense of class members. First, no class member has any idea what their individual recovery might be in this case (see *supra* note 1). Second, the settlement purports to waive personal injury claims. (Doc No. 15695-2

*Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370 (2000) [hereinafter Coffee, Class Action Accountability]; *John C. Coffee, Jr., The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action*, 54 U. Chi. L. Rev. 877 (1987). This well-known dynamic has prompted Congress and the Supreme Court to design procedural measures intended to protect the class from overreaching by its

---

("Settlement") ¶ 5.1.1.) It is simply impermissible to certify a class of personal injury claims in a litigation class because individual issues will always predominate over class-wide issues. *E.g.*, *Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 557 (5th Cir. 2011) (no predominance in dust exposure action because "even among the named class representatives, significant disparities exist, in terms of exposure, location, and whether mitigative steps were taken"); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) (no predominance in a single accident case when each plaintiff "must meet his or her own burden of medical causation"); *Brandner v. Abbott Laboratories, Inc.*, 2012 U.S. Dist. LEXIS 7017 (E.D. La. Jan. 23, 2012); *Haggard v. Endogastric Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89767 (W.D. Pa. June 28, 2012). As this Court has previously held, to prove specific causation requires a determination of:

> "an individual's family and medical history; age; gender; diet; . . . the timing of [exposure to] the product; . . . whether that individual suffered an injury, when the injury occurred, the type of injury suffered, and the number of occurrences of injury; the likelihood of injury; and/or the foundation as to whether a justifiable fear of injury exists."

*In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006) (Fallon, J.) (*citing In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 631-32 (W.D. Wash. 2002)). Thus "individualized factual issues" necessarily predominate. *Id.* To certify a settlement class that waives these individualized claims is not permissible when, as here, many of the alleged injuries are allegedly latent in nature and have not yet been discovered, but the settlement provides no compensation or representation for the future injured; this creates both Rule 23(e)(2) fairness problems and precludes a finding of Rule 23(a)(4) adequacy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Third, the class definition is unintelligible and impermissibly ambiguous. A threshold requirement in any potential Rule 23 certification is that the named plaintiffs constitute an identifiable, unambiguous class. *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 U.S. Dist. LEXIS 94223, at *14–15 (E.D. Tenn. Sept. 7, 2010) (citing *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir.1989)). This means that every class definition should include at least: (1) a specification of a particular group at a particular time frame and location who were harmed in a particular way; and (2) a method of definition that allows the court to ascertain its membership. *De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (class "must be adequately defined and clearly ascertainable"); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004); *Manual for Complex Litigation (Fourth)* § 21.222 (2004). Here, the class is insufficiently definite to ascertain class membership, and that precludes certification. *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012) (unidentified class members precludes certification). This Court has recognized this problem in other contexts. *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2012 U.S. Dist. LEXIS 78954 (E.D. La. June 6, 2012) (Fallon, J.). Fourth, Class Counsel represents, on the one hand, that some of the settling defendants (e.g., Home Depot) never sold Chinese- manufactured drywall anywhere, including Texas, yet, on the other hand, that same Class Counsel has alleged in this case that Home Depot has sold and in this settlement will be released from selling Chinese Drywall (*see* Objectors' Response to Class Counsel' Motion to Dismiss at 11) (Doc. 16192). How Class Counsel squares those two opposing contentions speaks directly to Rule 11 and their intent in this case, not only relative to monetizing their leverage *vis-a-vis* defendants, but also informs their view of their own clients in this case (*i.e.*, a tool for earning fees). Of course, there is more evidence in this case that indicates Defendants' desire to buy peace and Class Counsel's desire to simply earn fees at the expense of their purported clients.

lawyers. That procedural regime intended to protect the due process rights of unnamed class members includes Rule 23.

**B.      Objectors Serve an Important, Albeit Unpopular, Role In Class Action Settlements and Should Not be Vilified for Bringing Meritorious Objections.**

Objectors play a vital role in the review of class action settlements. "[C]lass action lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class; and given the role of such interlopers in preventing cozy deals that favor class lawyers and defendants at the expense of class members, their requests for fees must not be slighted." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.). "Objectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012). Objectors' objections in this case are objectively meritorious and brought in good faith (Frank Decl., Ex. 6, at 12).

Yet Class Counsel seeks to frame the objection process as an inquiry not on the merits of the objection, but instead as an inquisition into the objectors' attorney. <u>That objector's counsel has represented objectors in other class actions "has no greater bearing on the merits of the objection raised than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings</u>." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010) (emphasis added). "Merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010); *In re*

*Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (JG)(VVP) (E.D.N.Y. Mar. 22, 2010).

Other courts have explicitly held that the motive of objectors or their counsel is simply not relevant to the merits of an objection. *See, e.g., Corpac v. Rubin & Rothman, LLC*, 2012 WL 2923514, at *2-*3 (E.D.N.Y. July 19, 1012)("[t]he Court 'fail[s] to see how motives of [Objector], other than the obvious financial once of maximizing [his] recovery, would make any fact of consequence to the determination of reasonable fees, the amount of damages or the restriction on pursuing future claims] more or less probable.'") (citing *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984)). *See also supra* note 2 (noting that there is typically no incentive for any class member to object unless their counsel is *pro bono*). It is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when those outcomes are mixed.[4] The merits of Objectors' objections are, of course, the focus of the Court's attention, and the issue on which Class Counsel should have focused.

C.  **There Is a Proper, Limited Scope of Discovery from Unnamed Class Members.**

Every request for discovery, including the most recent deposition notices for Messrs. Soto and Garcia (Exs. 3 and 4), constitute a certification under Rule 26 that the purposes and limitations of the rule will be observed and respected and, just as importantly, should also certify that the discovery sought is in keeping with the 11-1-12 Order (Ex. 5).

Of course, "[n]o one expects that the deposition of a key witness in a hotly contested case to be a non-stop exchange of pleasantries." *Freeman v. Schointuck*, 192 F.R.D. 187, 189 (D. Md. 2000). But as the United States District Court for the Southern District of Ohio observed:

---

[4] For example, Bandas recently won an appeal for an objector to a class action settlement in the Ninth Circuit. *Dennis v. Kellogg Co.*, --- F.3d ---, 2012 WL 3800230 (9th Cir. Sept. 4, 2012). *See also* Frank Decl., Ex 6, at 10-11.

> As officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition…. <u>A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint.</u>

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995) (emphasis added) (cited in *Landers v. Kevin Gros Offshore, L.L.C.*, Civ. No. 08-1293-MVL-SS, 2009 WL 2046587, at *1 (E.D. La July 13, 2009) (finding that imposing a sanction for improper deposition questioning is "otherwise congruent with FED. R. CIV. P. 26(g).")). Moreover, "accusations of wrongdoing against witnesses and attorneys have no place in a deposition." *Ethicon Endo-Surgery*, 160 F.R.D. at 99.

To be sure, a deposition conducted in an "unproductive and harassing manner" is undoubtedly sanctionable." *In re Rimstat, Ltd.*, 212 F.3d 1039, 1047 (7th Cir. 2000); *see also Morse v. S. Pac. Transp. Co.*, 42 F.3d 1401 (Table), 1994 WL 650047, at *1 (9th Cir. 1994) (finding attorney's behavior "clearly sanctionable" under FED. R. CIV. P. 26(c) where he was argumentative and "badger[ed] the witness through dozens or pages of transcript"); *Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992) (affirming order of sanctions under FED. R. CIV. P. 11 and 28 U.S.C. § 1927, where attorney's conduct included "incredibly harassing depositions" and "abusive questioning" of defendants); *Heinrichs v. Marshal & Stevens Inc.*, 921 F.2d 418, 420 (2d Cir. 1990) (affirming award of sanctions under FED. R. CIV. P. 37(a)(4) and 26(c) where counsel's questioning of witnesses "was often improperly argumentative and confrontational"); *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 293-94 (5th Cir. 1997) (sanctions imposed based on abusive conduct during deposition); *Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030, 1033 (5th Cir.1990) (finding entirely appropriate the court's expectations of a heightened standard of conduct by a litigant who is also an attorney).

The Fifth Circuit "adheres to the well established doctrine that '[a]n attorney, after being admitted to practice, becomes an officer of the court, exercising a privilege or franchise.'" *Howell v. State Bar of Texas,* 843 F.2d 205, 207 (5th Cir. 1988) (quoting *Harkins v. Murphy & Bolanz,* 112 S.W. 136 (Tex. Civ. App. 1908, writ dism'd)). "As officers of the court, attorneys owe a duty to the court that far exceeds that of lay citizens." *Id.* It is not acceptable for a party—particularly a party who is also an attorney—"to attempt to use the judicial system ... to harass an opponent in order to gain an unfair advantage in litigation." *Coane,* 898 F.2d at 1033.

**D.     This Court Should Sanction Class Counsel**

Objectors do not argue with this Court's ruling that certain discovery of Objectors may be appropriate or its Order "<u>that the scope of discovery in this matter [should be] *limited* to two overarching issues, namely the standing of each objector and the basis of each objection, and the related issues of each objector's arrangement(s) or agreement(s) with counsel</u>." (11-1-12 Order, Ex. 5) (emphasis added); *cf., Corpac v. Rubin & Rothman, LLC*, 2012 WL 2923514, at *2-*3 (E.D.N.Y. July 19, 1012) (disallowing deposition of objector because class counsel failed to make a "strong showing" of the need to take that deposition where objector made the basis of his objection clear in his filings with the Court). Rather, the issue is simply about Class Counsel's conduct at these depositions that simply went well beyond the pale.

**1.     Sanctions are Authorized by This Court's Inherent Power.**

Courts may use the judiciary's inherent power—those powers vested in the courts upon their creation, and not derived from any statute—to regulate the conduct of the members of the bar. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). It is well-settled Fifth Circuit law that "[t]he inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanction upon errant lawyers practicing before it." *Flaksa*

*v. Little River Marine Constr.,* 389 F.2d 885, 888–89 (5th Cir. 1968); *see also Carroll*, 110 F.3d at 293; *In re Katrina Canal Breaches Consol. Litig.*, Civ. Act. No. 05-4182, 2008 WL 4401970, at \*\* 9-10 (E.D. La. Sept. 22, 2008) (Wilkinson, M.J.). "[T]he threshold for the use of inherent power sanctions is high ... and must be exercised with restraint and discretion." *Elliot v. Tilton,* 64 F.3d 213, 217 (5th Cir. 1995) (internal quotations and citations omitted). There must be a finding of bad faith; the Court's mere displeasure is not enough.

Class Counsel's conduct during the Soto and Garcia depositions was improper and in bad faith. Depositions should not be used to threaten the witness with sanctions, badmouth the witness's counsel, or relentlessly badger the witness in an effort to make him abandon the litigation. There can be no question that Class Counsel's tactics are intentional and part of a calculated strategy to attack Objectors and their counsel at every turn, including through misrepresentations to the Court.[5]

A federal judge in Washington recently sanctioned class counsel in another class action $100,000 for sending overbroad, invasive subpoenas to objectors' counsel in what amounted to "bullying by class counsel" intended "to burden an entity that had the temerity to object to class counsel's settlement." *In re Classmates.com Consol. Litig*., 2012 WL 3854501, Master Case No. C09-45RAJ (W.D. Wash. June 15, 2012).

2.  **Sanctions are Authorized by 28 U.S.C. § 1927.**

Objectors also seek sanctions pursuant to 28 U.S.C. § 1927. Section 1927 provides: "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonable and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

---

[5] See for example Class Counsel's false representation to the Court that Bandas promised Soto and Garcia $5,000 to object. (Doc. 16192, at 3 n.1.)

reasonably incurred because of such conduct." Before imposing sanctions, the Court must determine that the offending attorney's multiplication of the proceedings was both "unreasonable" and "vexatious." *See Travelers Ins. Co. v. St. Jude Hosp. of Kenner,* 38 F.3d 1414, 1416 (5th Cir.1994). The latter requirement is met by evidence of recklessness, bad faith, or improper motive. *See id*. This standard is easily satisfied in this case. Class Counsel's bad faith and vexatious intent cannot be denied from the questions and the manner in which they were asked. Class Counsel's strategy of attacking Objectors and their attorney on issues entirely irrelevant to the merits of their objections has unreasonably multiplied the proceedings in this case and increased the expenses, costs, and attorneys' fees.

### 3. Sanctions are Mandatory Pursuant to Rule 26(g).

FED. R. CIV. P. 26 reads, in relevant part, as follows:

(g) Signing Disclosures and Discovery Requests, Responses, and Objections.

(1) *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and *every discovery request*, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a *discovery request*, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) *not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation*; and

> (iii) *neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action*.
>
> (2) *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.
>
> (3) *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, *must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or bot*h. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

(Emphasis added).

Class Counsel certified under Rule 26(g) that the Garcia Cont. Depo. Notice (Ex. 3) and the Soto Cont. Depo. Notice (Ex. 4) were not "interposed for any improper purpose, such as to harass," and were "neither unreasonable nor unduly burdensome." This certification was false: Class Counsel intended to, and did, use the depositions to harass and unreasonably intimidate Garcia and Soto as described above, well outside the scope of discovery allowed by the Court. 11-1-12 Order, Ex. 5. Accordingly, an appropriate sanction is mandatory under Rule 26(g).

WHEREFORE, PREMISES CONSIDERED, Objectors respectfully pray for the following relief:

a. That this Court issue an order to show cause why Class Counsel should not be sanctioned;

b. An order admonishing Class Counsel;

c. An order enjoining Class Counsel from asking any harassing questions, serving an harassing discovery, or otherwise behaving unprofessionally;

d. Any additional appropriate sanction as determined by the Court; and

e. For such other and further relief to which Objectors may show themselves justly entitled.

Dated: November ___, 2012

                                                Respectfully submitted,

By:   /s/ Christopher A. Bandas
       Christopher A. Bandas
       State Bar No. 00787637
       Southern District Bar No. 17509
       BANDAS LAW FIRM, P.C.
       500 North Shoreline Blvd., Suite 1020
       Corpus Christi, Texas 78401-0353
       T: (361) 698-5200
       F: (361) 698-5222

       R. Joshua Koch, Jr.
       State Bar No. 2492
       Koch & Schmidt, LLC
       650 Poydras St., Suite 2415
       New Orleans, LA 70130
       T: (504) 208-9040
       F: (504) 208-9041

*Counsel for Objectors Saul Soto, SHS Construction, Ronnie Garcia, and Bay Area Contracting & Construction, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of November, 2012 a true and correct copy of the above and foregoing was served on the following as indicated below as well as all counsel of record via the Court's CM/ECF system.

Arnold Levin
Levin, Fishein, Sedran & Berman
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Plaintiffs' Lead Counsel

Leonard A. Davis
Russ M. Herman
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, LA 70013
Defendants' Counsel

/s/ Christopher A. Bandas
Christopher A. Bandas