NOVO812RVDEP.txt

1

```
 1                 R O U G H  C O P Y
 2                (Thursday, November 8, 2012.
 3                VIDEOGRAPHER:  This is the video
 4       taped deposition of Saul Soto taken on
 5       November 8, 2012, time is 3:29 p.m. in the
 6       matter of Chinese manufactured drywall
 7       products liability litigation will counsel
 8       please identify themselves.
 9                MR. GAUGHAN:  Matthew gone for
10       class counsel.
11                MR. HUSEMAN:  Van Huseman on behalf
12       of Mr. Soto.
13                SPEAKER2:  And Paul Dodson as
14       women.
15                VIDEOGRAPHER:  Will the kort err
16       please swear in the witness.
17                THE WITNESS:  Saul
18       Soto.(SWORN.ecl).
19  BY MR. GAUGHAN:
20       Q    (By Mr. Huseman)
21                MR. HUSEMAN:  Before we get started
22       I want to say something here which is sort of
23       inviting you to agree with me on something on
24       this, it's my understanding from what my
25       sense what the judge ordered is he doesn't
```

♀

2

Exhibit 1

NOVO812RVDEP.txt
R O U G H   C O P Y

1        want us instructing witnesses not to answer

2        save except on privilege claims.

3                MR. GAUGHAN:  That's correct,

4        that's my understanding.

5                MR. HUSEMAN:  We have objection z

6        as you're probably aware and we don't

7        necessarily or not entirely happy of the

8        judge's ruling as you might expect but we do

9        have objections relating to privilege, work

10       product particularly with regard to the notes

11       that the judge produced, also have claims

12       about harassment which we've discussed sort

13       of informally in the past and I was wondering

14       if you would be so kind to allow us to have

15       running objection on this so we don't have to

16       be on our toast quite so much and you don't

17       have your deposition interrupted so much, can

18       we do that, what you're.

19               MR. GAUGHAN:  What you're asking me

20       for is a.

21               MR. HUSEMAN:  Running objecting.

22               MR. GAUGHAN:  You're objecting to

23       any question pertaining to his notes.

24               MR. HUSEMAN:  Any harassment type

25       things as opposed to your getting him

♀

3

R O U G H   C O P Y

1        answering all this and aim braking in saying

NOVO812RVDEP.txt

```
 2        that's harassing etc., can we have a pass on
 3        that in terms of having to make those
 4        objections here.
 5             MR. GAUGHAN:  We'll agree that your
 6        objection will be understood, running
 7        objection.
 8             MR. HUSEMAN:  And I think it's
 9        easier on both of us that means I can sit
10        over here sleep through it and you don't get
11        interrupted.
12             MR. GAUGHAN:  That sounds
13        excellent.
14             MR. GAUGHAN:  Before we get started
15        as well aid just like to put on the record
16        that last night we received a letter from Mr.
17        Bandas with a series of documents I think for
18        Mr. Soto's deposition total of 6856 documents
19        and immediately prior to today's deposition
20        we minutes ago really received a letter from
21        the Bandas law firm supposedly showing us
22        more limited set of documents that were
23        relevant to today's deposition.  Three page
24        document with just Bates numbers on it.  I
25        think it's not realistic that we're going --
```

o

4

R O U G H   C O P Y

```
 1        that I'm going to have an opportunity even if
 2        we printed up all these documents to review
 3        them and to ask the witness questions about
```

Page 3

NOVO812RVDEP.txt

4      those documents, so I just like to put that
5      on the record that we're intending to seek
6      sanctions and we will request that in that
7      motion request the witness appear in New
8      Orleans to be deposed further but I'm going
9      to put that on the record before we get
10     started and of course we'll seek costs and
11     attorneys fees and everything else.
12            MR. HUSEMAN:  Sure, the point of it
13     is on that and I think I'm a little bit out
14     of my area here, but my understanding of this
15     is that all of us deciding what's relevant
16     and what isn't is that when they're doing
17     remodeling a huge amount involves drywall
18     errs connected with it etc. and trying to siv
19     that out trying to strain that out there was
20     people talking about doing all night errs
21     trying to do this to get things sorted out.
22     I understand what your point is but it has
23     not been from what I've heard without a lot
24     of effort on our side as well.
25            MR. GAUGHAN:  What I'm trying to

⚲

                                                   5
                  R O U G H   C O P Y
1      say is I think this is a pretty lengthy list
2      of documents and I will actually mark it in a
3      minute for the record, but I don't think it's
4      realistic for us to for me to have been able
5      to actually review these documents since it

NOVO812RVDEP.txt

6    got produced to me at 3:00 and it's now 3:30.

7              MR. HUSEMAN:  Well you mean the

8    refined version of it.

9              MR. GAUGHAN:  The refined version.

10              MR. HUSEMAN:  Sure and if you need

11    to we'll give you all the time you need on

12    that if you need doing that type of thing.

13              MR. GAUGHAN:  I guess it was my

14    understanding before that the documents or at

15    least this sort of list would be produced on

16    a rolling basis so we would have it in time

17    to review and that office live didn't happen.

18              MR. HUSEMAN:  I don't know who is

19    doing what on that.  That isn't my niche.

20              MR. GAUGHAN:  I understand.  We'll

21    visit that matter with the court so I just

22    want to put that on the record before we get

23    started though and I will have the court

24    reporter mark this as exhibit 33 which is

25    just a letter that I received immediately

♀

6

R O U G H   C O P Y

1    before this deposition.

2              (Exhibit 33 marked.)

3              MR. GAUGHAN:  The other thing I'd

4    like to put on the record before we get

5    started is I think I know the answer to this

6    question --

7              MR. HUSEMAN:  You only get to put

NOVO812RVDEP.txt

8       one thing on the record, you've done it.
9                MR. GAUGHAN:  I wish that were the
10      rule, but it's my understanding Ms. Petris
11      has not been served yet and she's not
12      appearing at all and I'd like to verify you
13      guys don't have any different understanding.
14               MR. HUSEMAN:  I have eaf never
15      talked to her about this thing so I don't
16      know what sthees's doing.
17               MR. GAUGHAN:  And your a he not
18      representing her.
19               MR. HUSEMAN:  At this point I'm
20      not.
21               MR. GAUGHAN:  The same with Mr. Vi
22      tell a and e and e construction it's my
23      understanding he's not going to appear he
24      hasn't been served yet.
25               MR. HUSEMAN:  That's what the rumor

                                                    7
                      R O U G H   C O P Y
1       on street is I never talked to either one of
2       them about this matter so I don't know.
3                MR. GAUGHAN:  And you don't
4       represent him or e and e construction.
5                MR. HUSEMAN:  Not at this point it
6       may be that task falls to us in the future
7       but that bridge hasn't been crossed yet.
8                MR. GAUGHAN:  I think we can get
9       started.
                      Page 6

NOVO812RVDEP.txt

10    BY MR. GAUGHAN:

11    Q.    Good afternoon Mr. Soto thank you for your

12    patience in listening to this lengthy lawyer speak

13    and I want to thank you for appearing today.

14    Before we get started I'm assuming he's appearing

15    and I think this is kind of agreed to for himself

16    and for shs construction?

17              MR. HUSEMAN:   That's correct.

18    A.    Yes, sir.

19              MR. HUSEMAN:   I think aits a sole

20        proprietorship.

21    A.    Yes it's doing business as.

22              MR. GAUGHAN:   I understand ip

23        wanted to put that on the record that was my

24        appreciation last time and I want to make

25        sure it's the understanding going into

♀

                                              8

                    R O U G H   C O P Y

 1        today's deposition.

 2    A.    Yes, sir.

 3    BY MR. GAUGHAN:

 4    Q.    And I take it Mr. Bandas is not appearing

 5    again?

 6              MR. HUSEMAN:   Well he's got a

 7        hearing in the morning from the judge he's

 8        already -- I talked to him while ago but he

 9        was at the airport getting ready to fly to

10        New Orleans so I guess he's not going to be

11        here.

NOVO812RVDEP.txt

```
12                   MR. GAUGHAN:  In front of judge
13      fallen.
14                   MR. HUSEMAN:  In the morning.
15                   MR. GAUGHAN:  That would certainly
16      explain why he's not here.
17  BY MR. GAUGHAN:
18      Q.   All right.  Just I guess since you were last
19      deposed I just want to make sure a couple of
20      circumstances have not changed, you haven't been
21      sued by any sort of homeowners that claim that you
22      installed Chinese drywall in their home, have you?
23      A.   I have not been sued by anyone.
24      Q.   Have you received any complaints from any
25      homeowners that they think you installed Chinese
```

♀

                                                          9

                            R O U G H   C O P Y

```
 1  drywall in their home?
 2      A.   Not at this point.
 3      Q.   It's my understanding that during last week's
 4      deposition that you did not recall any homes that
 5      you think you installed Chinese drywall in?
 6      A.   Not any specific homes, correct.
 7      Q.   And that hasn't changed?
 8      A.   No, sir.
 9      Q.   As you sit here today.  And I guess one of
10      the things that was asked of you last week was
11      whether you had discussed your obligation to
12      disclose that you may have installed Chinese
13      drywall in someone's home in a customer's home
```

NOVO812RVDEP.txt

14   with counsel and I wanted to ask did you discuss

15   that in the time between last week's deposition

16   and this week's deposition?

17            MR. HUSEMAN:  Okay that's one of

18       the ones I'm going to have to tell him not to

19       answer because aits discussions with counsel

20       and that of course we assert the privilege

21       and work product exemptions on that.

22            MR. GAUGHAN:  Okay.

23   BY MR. GAUGHAN:

24   Q.   Can you tell me this do you have an

25   understanding of whether you're required to make a

                                              10

                    R O U G H   C O P Y

1   disclosure to any of these customers that you

2   think you might have possibly installed Chinese

3   drywall?

4   A.   I don't know, sir.

5   Q.   And one of the things we talked about last

6   week as well was whether you understood that by

7   filing your objection to the settlement there was

8   a possibility that that objection could result in

9   the settlement either being disapproved or tanked

10   in some way I guess is the term we used, do you

11   remember that testimony?

12   A.   I remember we spoke about it.  I don't

13   remember the specific thing we said at that point.

14   Q.   Okay.  Now understanding that that's a

15   possibility that this settlement could be tanked

NOVO812RVDEP.txt

16    in the time that's elapsed since your deposition,

17    has that changed your desire in any way to go

18    forward with your objection?

19    A.    Well I mean I feel that if things change and

20    the lawyers get paid less and the class gets more

21    it would be a good favorable thing for the class.

22    Q.    And what's your understanding of what

23    percentage class counsel should be awarded or your

24    opinion I guess of how much class counsel should

25    be awarded with respect to this settlement?


♀

                                                    11

                    R O U G H   C O P Y

1    A.    My opinion is ten percent or less, that's my

2    opinion.   That I can't change.

3    Q.    And do you have an understanding of what

4    percentage the settlement April greement actually

5    contemplates for class counsel?

6    A.    You probably have to remind me on that.

7    Q.    15 percent, does that sound familiar?

8    A.    I don't think so.

9    Q.    And that's for what's called common benefit

10    counsel which would be where class counsel fits,

11    so I guess based on that, my understanding is you

12    think it should be ten percent or less, right, is

13    that correct in terms of --

14    A.    That's what I feel it should be.

15    Q.    And I guess would you agree that ten percent

16    versus 15 percent isn't that much of a difference

17    especially considering that the court, judge

NOVO812RVDEP.txt

18   fallen will have to approve any award of fees to

19   class counsel?

20   A.    Can you rephrase that for me just one more

21   time.  I'm sorry sir.

22   Q.    All right I guess my question is do you

23   understand that judge fallen is actually going to

24   approve the award to class counsel, that has to be

25   approved by the court?


♀

                                                    12

                      R O U G H   C O P Y

1    A.    That, I understand.

2    Q.    And I guess based on that understanding,

3    would you agree that there's not that much of a

4    difference between ten and 15 percent, you know

5    because judge fallen could decide to say award

6    8 percent?

7    A.    Okay, I don't agree that it's the little bit

8    if that's what you're asking me.

9    Q.    I am asking you that.

10   A.    I don't agree.

11   Q.    You don't agree.  You think even with the

12   court taking on a supervisory role where the court

13   will actually approve fees for class counsel you

14   think that's still a big golf I guess between the

15   ten and 15 percent?

16   A.    I think that's a big amount.

17   Q.    Okay.  And I guess another question I have

18   for you is can you tell me if you followed judge

19   fallen's preservation order that's in place with

                      Page 11

NOVO812RVDEP.txt
20  respect to maintaining evidence of Chinese drywall

21  claims?

22  A.    I don't know anything about that.

23  Q.    You don't know about the preservation order?

24  A.    I don't, sir.

25  Q.    Okay.  So you can't say one way or the other,

♀

                                                        13
                    R O U G H   C O P Y

1   did you retain any sort of samples of Chinese

2   drywall or I guess -- it wasn't saw blades, was it

3   drills and drill bits?

4   A.    Drills, correct.

5   Q.    You didn't retain those items?

6   A.    No, sir, I don't have those things with me.

7   Q.    So so far as Judge Fallon's preservation

8   order would require to you keep those items, you

9   did not do that, is that correct?

10  A.    I don't have those things with me.

11  Q.    And have you seen any doctors since last

12  week's deposition to screen you for any sort of

13  personal injuries that you think might be related

14  to your exposure to Chinese drywall?

15  A.    I have not seen a doctor.

16  Q.    How about have you seen any healthcare

17  professionals to treat you for the emotional

18  distress that you claim you're under going with

19  respect to your fear of developing an illness in

20  the future?

21  A.    I have not sir.

NOVO812RVDEP.txt

22    Q.    And how is your health today?

23    A.    Right now I'm okay.

24    Q.    And I guess Mr. Bandas is not present again

25    during today's deposition, how do you feel about

ᕹ

                                                        14

                        R O U G H   C O P Y

1     that, you think he should be here?

2     A.    I'm sure he's attending important matters.

3     Q.    So you're not troubled by the fact that Mr.

4     Bandas is not here defending your deposition?

5     A.    I am not sir, I feel really comfortable.

6     Q.    And that he didn't defend your deposition

7     last week you're not uncomfortable with that at

8     all?

9     A.    I'm fine with my representation.

10                   MR. HUSEMAN:   That's the right

11         answer.

12    BY MR. GAUGHAN:

13    Q.    And I guess since last week's deposition did

14    you approach any of your customers who to advise

15    them that you may have installed Chinese drywall

16    in their properties?

17    A.    I have not sir.

18    Q.    Do you intend to do so?

19    A.    I have the intention, yes, sir.

20    Q.    When is it you think you're actually going to

21    do that?

22    A.    I'm not sure.

23    Q.    And do you have any sense of the number of

                        Page 13

NOVO812RVDEP.txt

24    homes that you might have worked on that where you

25    installed drywall during let's say 2006 to 2009,

♀

                                                          15

                    R O U G H   C O P Y

1     do you have a sense of the number of homes?

2     A.    No, it's a lot.

3     Q.    And I guess by the way, did you discuss last

4     week's deposition with anyone that's not in the

5     room right now and I'll extend that to Mr. Bandas

6     as well?

7     A.    Anyone that's -- I did, yes, sir.

8     Q.    And who is that?

9     A.    With my wife.

10    Q.    And what did you tell her about the

11    deposition?

12    A.    She just asked me how it went and I told her

13    the questions that were asked of me and stuff like

14    that.

15    Q.    And how did you tell her it went?

16    A.    I just told her it was exhausting.

17    Q.    Did you talk about any particular questions

18    that you were asked?

19    A.    I mean we talked about different questions

20    that were asked, that's pretty much it and told

21    her what y'all asked me.

22    Q.    You told her what we asked you, is that what

23    you said?

24    A.    Yes.

25    Q.    And what specific questions do you recall

NOVO812RVDEP.txt

♀

R O U G H   C O P Y

1    discussing with your wife?

2    A.    Okay, give me a second here.

3          I remember y'all asking me you know do I

4    remember specific home or customer that we had

5    installed and stuff like that which I didn't,

6    that's one of them.  I guess it was more in

7    general I guess, I don't remember the specific

8    questions, I guess.

9    Q.    Did you discuss your testimony about whether

10   you might be entitled to an incentive fee with

11   your wife?

12   A.    No, we didn't talk about that.

13   Q.    Did you discuss your understanding about the

14   actual terms of the settlement agreement with your

15   wife?

16   A.    No, I didn't talk about that.

17   Q.    And did you discuss last week's deposition

18   with anyone else, for instance I believe you had

19   testified that Mr. Batman had was the individual

20   you initially spoke with?

21   A.    Correct, I haven't spoken to him since he

22   referred me.

23   Q.    And you didn't talk to anyone from his

24   office, I don't know if you know Mr. Chapa or not?

25   A.    No I haven't.

♀

NOVO812RVDEP.txt

R O U G H   C O P Y

1   Q.   Did you discuss any of your concerns about

2   possible personal injuries that you might

3   experience in the future with your wife?

4   A.   Personal injuries?  Like what, I'm sorry.

5   Q.   Well, I guess it was my appreciation that one

6   of the things that you're contending in your

7   objection is that you're concerned in the future

8   you might suffer some sort of personal injuries

9   from having been exposed to Chinese drywall, is

10  that correct?

11  A.   Yes, yes.

12  Q.   Did you discuss that subject with your wife?

13  A.   I don't remember if we went over that, to be

14  honest with you at that point.

15  Q.   Did you work in any homes this week that you

16  think were possible homes where you might have

17  instawltd Chinese drywall in the past?

18  A.   No these customers are pretty knew actually.

19  Q.   And let me ask you what did you do for prep

20  today?  Did you do any additional prep?  I know I

21  walked by and I saw you in the meeting with your

22  counsel here, in the kitchen, so was that --

23  A.   I prepped before I got here I mean I prayed

24  just to make sure that I'm calm and able to

25  answer.

♀

R O U G H   C O P Y

NOVO812RVDEP.txt

1   Q.    And apart from I guess praying which you're a

2   better man than I, it's been a while since I've

3   done any prepare but did you do any other sort of

4   prep for today, did you meet with counsel or

5   anything like that?

6   A.    I met with counsel.

7   Q.    Can you tell me the length of that meeting

8   and who was present?

9   A.    The length, I could tell you that, maybe 30

10  minutes, if that.  I wasn't here that long before

11  you got here.

12  Q.    I think you got in around the same time as

13  me?

14  A.    Yeah, probably something like that otherwise

15  I was trying to get a little something to snack on

16  because I hadn't eaten lunch.

17  Q.    Hopefully I'll get you out of here soon?

18             MR. HUSEMAN:   Take that banana with

19       him.

20             THE WITNESS:   Yeah.

21  BY MR. GAUGHAN:

22  Q.    Was that the extent you didn't have any sort

23  of phone calls with counsel?

24  A.    No, sir.

25  Q.    And you didn't meet or talk to Mr. Bandas or

♀

                                          19

              R O U G H   C O P Y

1   anyone else from his office?

2   A.    I talked to Mr. Bandas I think it was

NOVO812RVDEP.txt

3   yesterday or today, I can't remember.

4   Q.   Was that to prepare you for today's

5   deposition?

6   A.   To confirm the time.

7   Q.   And of course I don't want to talk about

8   anything that you might have discussed with Mr.

9   Bandas but can you tell me the approximate

10  duration of that conversation, was it pretty quick

11  or are we talking about something more

12  substantial?

13  A.   I believe I talked to him twice.  First time

14  was probably like maybe about ten minutes, the

15  most and the second time probably maybe about a

16  minute.

17  Q.   And so this was about scheduling, the

18  conversation, it wasn't about prep or any of the

19  substantive -- any substantive matters?

20  A.   Really wasn't prep, to be honest with you.

21  Q.   Okay.  And so when did those conversations

22  occur?  I kind of forgot that piece?

23  A.   Today and yesterday.

24  Q.   And I guess for today he was telling you we

25  had agreed to 3:00?

♀

20

R O U G H   C O P Y

1   A.   Correct, because I wasn't going to be in town

2   tomorrow and that's when I was supposed to come,

3   tomorrow.

4   Q.   That's when it was initially noticed?

Page 18

NOVO812RVDEP.txt

```
 5    A.    So y'all were able to fit me in so a preesht
 6    that.
 7    Q.    Sure.  Glad to do it.
 8          (Exhibit 34 marked.)
 9    BY MR. GAUGHAN:
10    Q.    This is a copy of the notice of deposition
11    that we served on you.  As your understanding
12    you're appearing today pursuant to this deposition
13    notice?
14    A.    Yes, sir.
15    Q.    And obviously we have eal changed the time
16    but it's you're appearing to --
17    A.    For this.
18    Q.    For this deposition.  I also have this.
19          (Exhibit 35 marked.)
20    BY MR. GAUGHAN:
21    Q.    And this is the notice for the shs
22    construction and we also served this document on
23    you as well and is it your understanding you're
24    appearing pursuant to this deposition notice today
25    to provide the testimony that we're seeking in
```

♀

                                                    21

                        R O U G H   C O P Y

```
 1    this notice?
 2    A.    For shs construction, yes.
 3    Q.    And you can put those aside.
 4                MR. GAUGHAN:  Next exhibit 36 this
 5         is a copy of judge.
 6    BY MR. GAUGHAN:
```

NOVO812RVDEP.txt

```
 7   Q.    This is just a copy of Judge Fallon's order
 8   along with Mr. Soto's notes.   And Mr. Soto I'm
 9   showing you what's been marked as exhibit 36 which
10   is a copy of Judge Fallon's order dated
11   November 7, 2012 which is document 16127 on the
12   court's docket and I'd like you to flip a few
13   pages to what are really your notes from your prep
14   with your counsel?
15   A.    Okay.
16   Q.    And I guess we marked it as exhibit a to your
17   deposition from last week?
18   A.    Okay.
19   Q.    And Judge Fallon has ordered that this that
20   these notes be produced to us and I'm going to ask
21   you a few questions about your actual notes.   I
22   guess looking at that first page I see something
23   that says how to respond and then to the right of
24   that I see I don't know and I can't quite make out
25   what that is underneath there?
```

♀

R O U G H   C O P Y

```
 1   A.    You know what I saw that earlier and I don't
 2   know what it is either.   Right underneath I don't
 3   know, is that what you're asking me?
 4   Q.    Yeah, can you read that?
 5   A.    I can't.   I know it says it but the other
 6   word I don't.
 7   Q.    And so I guess my question for you is how to
 8   respond it says I don't know, was that -- what I'm
```

NOVO812RVDEP.txt

9     going to ask, when we were taking your deposition

10    last week, was that something that you were --

11    something that was shaping your answer to the

12    question that you should say I don't know to

13    certain questions?

14    A.    No, sir, no, sir.  That is to help me

15    understand if that way if I don't know about

16    something, I don't know, that's pretty much it.  I

17    can't say something that I don't know and growing

18    up you try to say more than you know.

19    Q.    Interesting.  And then it says ask question

20    and then we see reword the question, don't say

21    yes.  What does that mean?

22    A.    It's pretty much what it says there.  If I

23    don't understand it, to reword it, don't answer

24    yes right away.

25    Q.    Is that if you don't understand the question

♀

23

R O U G H   C O P Y

1     or if we ask you a question that you don't like.

2     It's only if you don't understand the question?

3     A.    Correct.

4     Q.    I see game plan dot dot dot, don't let him

5     force you, what is a that say after that?

6     A.    Out of it.

7     Q.    What does that mean?

8     A.    That's you know helps me understand to you

9     know not answer you know let's say for example,

10    you're asking me a lot of yes questions and for me

NOVO812RVDEP.txt

11    not to say yes because you're asking me a lot of

12    questions that say yes, that's what I understood.

13    Q.    What do you mean by that I guess?

14    A.    Just to you know help me I mean that's what I

15    wrote on there to help me understand the question

16    and just to not say yes right away and make sure

17    that I have everything.

18    Q.    What is the don't let him force you out of it

19    mean though?

20    A.    Just don't let me force me out of where I'm

21    going.

22    Q.    You mean if I'm trying owe tow if we were

23    trying to make you change an earlier answer, is

24    that what you mean by it, don't let you force you

25    out of it?

º

24

R O U G H   C O P Y

1    A.    Pretty much, to stay on point, the same

2    point.

3    Q.    But it's yes or no question, to say on point

4    I'm having trouble understanding?

5    A.    To stay on point, yes.

6    Q.    But if it's a yes or no question I guess you

7    would just say yes or no depending on what the

8    answer is, right?

9    A.    Just answer what I do know.

10    Q.    Okay but how would that take you off point if

11    the answer is yes for instance to a question?

12    A.    Well it just helps me take every question as

NOVO812RVDEP.txt

13    it comes and not be quick to say yes.

14    Q.    Understood.   How about this, little bit below

15    that we see answer question and shut up, do you

16    see that?

17    A.    Uh-huh.

18    Q.    And then to the right of that in parentheses

19    it says heard us learn about us and waste time I

20    believe?

21    A.    Yes, that's what it says.

22    Q.    Does that answer question shut up, does that

23    all of that to the right of there hurt us learn

24    about us and waste time does that all apply to

25    that first answer, that first answer question and

♀

25

R O U G H   C O P Y

1    shut up part?

2    A.    I think it applies to a lot of that stuff.

3    Q.    I guess what do you mean by hurt us, learn

4    about us and waste time?

5    A.    That's what I got out of the -- that's what I

6    understood out of that, and that's what I wrote

7    down at that point.

8    Q.    Was it your objective to waste time?

9    A.    No, the objective is to not ways time.

10    Q.    And I get the part about not a social

11    conversation as I tell my own witnesses similar

12    stuff?

13    A.    That's true.

14    Q.    What is below that where it says think like a

Page 23

NOVO812RVDEP.txt

15    dad mean?

16    A.    When I say that and I remember this is that

17    my dad is a man of little words and he just tells

18    you the fact.  If he knows it if he doesn't know

19    he'll tell you he doesn't know and that's the way

20    my dad is.

21    Q.    I guess if you look down towards the bottom

22    of the page under what says 30 minute then break

23    it says courteous nice slash not hostile, so I

24    take it your intention going in the deposition was

25    to not appear hostile, is that --

♀

                                                26

                      R O U G H   C O P Y

1     A.    Correct.

2     Q.    Is there something I need to be afraid of?

3     A.    No, sir.

4     Q.    And then below that I see no need to argue or

5     explain and I guess can you tell me what that

6     means in terms -- to you, I guess?

7     A.    That I don't need to like if maybe you're

8     being confrontational with me that I don't need to

9     be arguing with you and just state the answer to

10    the question you're asking me.

11    Q.    Okay.  How about right below there it says

12    yes objection of class, what does that mean.

13    Q.    At least that's what I see?

14    A.    Yeah, that's what it says.  It's just yes as

15    far as objection of it, that's what it says on

16    there.

                      Page 24

NOVO812RVDEP.txt

17    Q.    That means just yes I'm objecting to the
18    class settlement is that what that means?
19    A.    Yeah, because you know it's all these lengthy
20    lawyer words you got to try to understand them and
21    that's just what I wrote.
22    Q.    And if you go to the next page, to the right
23    there under written objection says don't agree how
24    much lawyers are getting paid on a class that I am
25    a part of.  What does that mean?

♀

                                                        27

                    R O U G H   C O P Y

1    A.    That's what I felt and that's what I wrote.
2    Q.    And these are your opinions?
3    A.    Those are my opinions.
4    Q.    How did you come up with that -- this was
5    during the prep that you came wup this?
6    A.    Actually it was kind of more towards the end
7    of it I was just writing things that were coming
8    to mine.
9    Q.    And those are your words not your counsel's
10    words?
11    A.    Those are my words.  Those are my words.
12    Q.    Then we see a little bit further down had to
13    talk to lawyer?
14    A.    Uh-huh.
15    Q.    What does that mean?
16    A.    It means that you know I couldn't have
17    written all these things out here by myself, I
18    needed to talk to a lawyer to be able to have an

NOVO812RVDEP.txt

19    objection.

20    Q.    And you came up with that on your own as

21    well?

22    A.    That I wrote down, yes.

23    Q.    And then we see completed sticky, is that

24    what that says, sticky, tricky?

25    A.    Complicated and tricky.

♀

                                                   28

                    R O U G H   C O P Y

1     Q.    And what does that mean?

2     A.    Just lawyer stuff that's complicated and

3     tricky.

4     Q.    And I guess based on all these notes, is it

5     your testimony that these are all your own

6     thoughts and not things that your counsel was

7     telling to you say?

8     A.    The back part really is more of my own

9     thoughts and the back -- the front is more of

10    things we talked about.

11    Q.    So I guess so far as some of these things

12    appear to be substantive, I don't agree how much

13    lawyers are getting paid, that's your own thought?

14    A.    That's my own thought in the back, yes, sir.

15    Q.    And you understand you're under oath and

16    everything?

17    A.    I understand that, yes.

18    Q.    Can you tell me if you look to the left is

19    this represent -- these calculations here does

20    that represent the incentive fee that you think

NOVO812RVDEP.txt

21    you're going to get?

22    A.    No, sir.

23    Q.    What does it represent?

24    A.    That represents my checking account that I

25    needed to make a deposit.  I needed to pay $600

♀

                                                    29

                    R O U G H   C O P Y

1     out pay $500 pay $400 pay 90 and I was left with

2     $1,600 from there I had to pay a couple other

3     things then I remember I had to make a deposit on

4     the right so that was the end of my balance, 1160.

5     As you can see it wasn't like written down nice

6     and neatly because I just needed a paper to write

7     it down.

8                    MR. HUSEMAN:   Nice try Matthew.

9                    MR. GAUGHAN:   Didn't necessarily

10            add up to me either in terms of what we

11            thought would be the 5,000, but I figured I

12            would ask anyway.

13    A.    Those are checks I had to pay.

14    Q.    So you're balancing your checkbook here more

15    or less?

16    A.    Pretty much.  I could probably pull the

17    checks on those to show you.

18    Q.    I think that's it for that document?

19    A.    Okay, sir.

20                    MR. GAUGHAN:   We'll mark this as

21            37.  I'll give you a copy to your counsel.

22    BY MR. GAUGHAN:

                    Page 27

NOVO812RVDEP.txt

23    Q.    And I'm showing you what's been marked as

24    exhibit 37 to your deposition or to this

25    continuing depositions, I guess and what this is

♀

                                                    30

                        R O U G H   C O P Y

 1    is a copy of class counsel's motion for sanctions

 2    and we filed this or when I say we I mean class

 3    counsel filed this motion on ten/ 24/ 12, it's now

 4    on file and pending before Judge Fallon and I

 5    believe we discussed this a little bit at your

 6    deposition last week?

 7    A.    Yeah, I think so.

 8    Q.    ==And I guess do you understand that class==

 9    ==counsel has moved for sanctions and is seeking not==

10    ==only to sanction Mr. Bandas but also to sanction==

11    ==yourself with respect to a motion that Mr. Bandas==

12    ==filed with the court==?

13    ==A.    That's what I see==.

14    Q.    Okay.  And when did you first become aware of

15    this motion?

16    A.    After October 24th.  I don't remember, to be

17    honest with you.  I know we talked about it last

18    week.

19    Q.    Yeah and that's what I was going to ask you

20    because it was my appreciation based on your

21    testimony that you weren't aware of this motion

22    before your deposition, is that fair to say?

23    A.    Before last week's, yes.

24    Q.    So you first became aware of this motion last

NOVO812RVDEP.txt

25     week?

♀

31

R O U G H   C O P Y

1    A.    Yes.

2    Q.    Is that correct?

3    A.    Yes, sir.

4    Q.    Now is this something that you think that Mr.

5    Bandas should have told you about, and by

6    something I mean that class counsel was moving for

7    sanctions because Mr. Bandas had filed a frivolous

8    motion with the court?

9    A.    The question again, I'm sorry?

10   Q.    Is this something, this motion that you're

11   looking at as exhibit 37 motion for sanctions that

12   requests that you be sanctioned in addition to

13   your counsel, is this something that you would

14   have expected Mr. Bandas to tell you about?

15   A.    Well I feel if it's something that we need to

16   talk about he would have called me on it.

17   Q.    So you're not concerned at all that Mr.

18   Bandas didn't tell you that class counsel was

19   asking that you be sanctioned in connection with

20   the motion that Mr. Bandas filed?

21   A.    Not really, not right now, no.

22   Q.    Good for you.  Are you willing to appear

23   before Judge Fallon if he orders you to appear?

24   A.    Of course if he orders me to appear I'll be

25   there.

NOVO812RVDEP.txt

♀

32

R O U G H   C O P Y

1    Q.    And what is your expectation of who would
2    have to pay that cost?
3    A.    I don't know sir.
4    Q.    And would you be willing to pay those costs
5    if you were required to do so, to travel to New
6    Orleans and stay in a hotel, etc.?
7    A.    Depends what the judge says for me to do.
8    Q.    And how about if the court sanctions you, are
9    you prepared to pay sanctions?
10    A.    I mean I can't object to a court.  If they
11    tell me I got to do something, I got to do
12    something.
13    Q.    Is that something that as you sit here today
14    you want to go forward with your objection even
15    though there's a possibility you might be
16    sanctioned?
17    A.    I mean if I feel unfair about something I'm
18    going to try to see it through and if it comes out
19    to that the court orders me to do something, well
20    I'll have to comply.
21    Q.    And you're willing to risk that you might be
22    sanctioned in order to continue your objection?
23    A.    Yes, sir.
24    Q.    Okay.
25          (Exhibit 38 marked for identification.)

♀

NOVO812RVDEP.txt

33

R O U G H   C O P Y

1    BY MR. GAUGHAN:

2    Q.    I'm showing you what's been marked as Exhibit

3    38 which is a motion that was also filed on ten/

4    24/ 12 by class counsel and this motion is license

5    and response in motion class counsel omnibus

6    response to the Bandas objectors motion to dismiss

7    objection and response to motion for leave to

8    conduct discovery regarding the fairness of

9    proposed class action settlement?

10   A.    Where are we reading.

11   Q.    I'm reading from right here (Mark).  I guess

12   were you aware that we, by we I mean class counsel

13   had made this filing with Judge Fallon?

14   A.    You made me aware of that last week.

15   Q.    The first time you became aware of this was

16   last week?

17   A.    Yes, sir.

18   Q.    And are you aware that this motion was filed

19   in response to Ms. Petris who works for Mr.

20   Bandas's motion to dismiss her objection?

21   A.    I don't know anything about her what --

22   Q.    Let me back up.  Do you appreciate that Mr.

23   Bandas filed an objection to this settlement that

24   involved not only yourself but several other

25   individuals?

♀

34

R O U G H   C O P Y

NOVO812RVDEP.txt
1     A.    Do I what?  Sorry.

2     Q.    Are you aware that when Mr. Bandas filed this

3     objection to the settlement on behalf of yourself

4     and shs construction?

5     A.    Yes.

6     Q.    That he also included other individuals?

7     A.    I know there was other people, I didn't know

8     who.

9     Q.    Okay.  So but you know that Mr. Garcia is one

10    of those individuals, correct?

11    A.    That I have met him before.

12    Q.    And you also know that his company is also

13    objecting, do you know that?

14    A.    I believe so.

15    Q.    Okay and did you know that a Mr. Vatello was

16    also objecting?

17    A.    I don't know him.

18    Q.    And you don't know Jan Petris?

19    A.    I don't know her .

20    Q.    So those are the objectors in addition to

21    yourself and your company?

22    A.    Okay.

23    Q.    And I guess class -- Ms. petrous moved to

24    dismiss her objection and we filed this motion

25    class counsel filed this motion in response to

⚬

                                                    35
                      R O U G H   C O P Y
1     that filing?

2     A.    Okay.

NOVO812RVDEP.txt

3    Q.   And another thing that Mr. Bandas did was he

4    filed a motion to conduct discovery regarding the

5    fairness of the proposed class action settlement,

6    are you aware of that fact?

7    A.   I don't know anything about that sir.

8    Q.   He didn't show you that motion or bring it to

9    your attention that he was going to be filing that

10    motion before it was filed with the court?

11    A.   I honestly can't remember anything about

12    that.

13    Q.   Did he show you any motions that he was

14    proposing to file other than the objection?

15    A.   The objections, yes.

16    Q.   So that was it, just the objections?

17    A.   That's all I remember.

18    Q.   Okay.  Is that something you would have liked

19    Mr. Bandas to have brought to your attention?

20    A.   Again I feel if it's something that needed to

21    be brought to my attention, he would have.

22    Q.   And this is something that resulted in our

23    motion for sanctions, his filing of that motion,

24    would you have liked to have known that you might

25    be subject to a motion for sanctions before he

♀

                                     36

R O U G H   C O P Y

1    filed his motion to conduct discovery?

2    A.   I mean it didn't happen so I can't say

3    anything about that, you know.

4    Q.   What didn't happen, he didn't tell you?

NOVO812RVDEP.txt

5   A.   I didn't know about the you know somebody

6   else, what they did as far as jan pe trust or

7   something like that.

8   Q.   I'm not asking about jan pe trust I'm asking

9   about Mr. Bandas filed a motion seeking discovery

10  regarding fairness of the class settlement?

11  A.   Okay.

12  Q.   Isn't that something you'd expect him to tell

13  you about?

14  A.   No.

15  A.   I would have hoped he would have told me if

16  it's something I needed to know about.

17  Q.   So you don't expect him to keep you up to

18  date on what he's filing with the court?

19  A.   I expect him to let me know that if he feels

20  it's important that he let me know.

21  Q.   So I take it as a no you don't expect him to

22  tell you about filings that he's making in

23  connection with your objection?

24  A.   Again if it's important I'm sure he would

25  have called me.

♀

37

R O U G H   C O P Y

1   Q.   Okay.  Now has he called you in -- other than

2   scheduling your deposition has he called you about

3   any other matters, strategy matters I should say?

4   A.   Not that I can think of.

5   Q.   Okay so other than scheduling your deposition

6   and filing your objection, those are the things --

Page 34

NOVO812RVDEP.txt

7    those are the only things you talked about I
8    guess?
9    A.    I can't discuss that.
10                MR. HUSEMAN:  That's right.  That
11        hungs on attorney/client privilege please
12        don't answer that.
13    A.    Yeah I won't.
14   BY MR. GAUGHAN:
15    Q.    But he didn't discuss this particular motion,
16   the motion to seeking discovery?
17                MR. HUSEMAN:  Once again that
18        involves attorney/client communications,
19        privilege and please don't answer that
20        Mr. Soto.
21   BY MR. GAUGHAN:
22    Q.    You weren't aware he was going to make
23   this -- he was going to file this motion for leave
24   to conduct discovery?
25    A.    No, I didn't know anything about that.

♀

                                          38
                 R O U G H   C O P Y
1    Q.    And you're okay with that?
2    A.    I'm fine with that right now.
3    Q.    And I take it you didn't actually ever see
4   the motion that Mr. Bandas filed seeking discovery
5   regarding the fairness of the class settlement,
6   did you?
7    A.    Is that what you're just talking about?
8    Q.    Yes.

NOVO812RVDEP.txt

9   A.   No I haven't seen it.

10   Q.   Okay.  And would it trouble you at all that

11   that motion included information about another

12   settlement that didn't involve Chinese drywall at

13   all?

14   A.   I don't know anything about that.

15   Q.   Does that concern you that your counsel he's

16   filing a motion seeking discovery in the Chinese

17   drywall litigation and his motion is actually

18   talking about a completely different settlement

19   involving Hill marathon.

20   A.   I don't know anything about that, sir.

21   Q.   Would you expect your lawyer to file motions

22   that -- in the proper case?

23   A.   You might need to rephrase that for me.  I

24   don't understand.

25   Q.   Well you're pursuing objection?

♀

                                    39

              R O U G H   C O P Y

1   A.   Correct.

2   Q.   Of one of our Chinese drywall settlements,

3   correct?

4   A.   Yes, sir.

5   Q.   Now I'm trying to figure out when you retain

6   attorney do you expect them to actually proofread

7   and review motions that they file?

8   A.   Oh, like if somebody made a mistake, is that

9   what you're saying?

10   Q.   Yeah, for instance the motion that Mr. Bandas

NOVO812RVDEP.txt

11     filed seeking discovery in this case talk about a

12     40 percent contingency fee and from my

13     understanding of your objection, you're objecting

14     because of a 32 percent fee provision, is that

15     correct?

16     A.    I think that's what I remember.

17     Q.    So he's talking about a completely different

18     case, does that trouble you at all?

19     A.    I'm sure we all make mistakes.

20     Q.    He's also talking about a 16 million-dollar

21     settlement and you're aware, correct, that this

22     Chinese drywall settlement you're opposing to

23     involves $83 million, correct?

24     A.    I remember the 80 million.

25     Q.    And then he talks about a class

                                                              40

                        R O U G H   C O P Y

1      representative by the name of Mrs. Ellis Hill in

2      his papers and I'll represent to you that there's

3      no Mrs. Hill is in any way involved in our Chinese

4      drywall litigation so I guess based on that it was

5      my understanding that this was a cookie cutter

6      motion where he neglected to take out information

7      about some other motion he filed in a different

8      case and what I'm asking you is are you troubled

9      by the fact that your counsel hasn't taken the

10     time to proofread his motion and make sure he's

11     filing it in the right case?

12     A.    I'm sure we all make mistakes.

                        Page 37

NOVO812RVDEP.txt

13    Q.    That's okay with you?

14    A.    We're not all perfect.

15    Q.    We strive to be, but of course so I guess the

16    long short of it is that doesn't bother you at

17    all?

18    A.    No.

19    Q.    That your counsel -- doesn't have his facts

20    straight when he's filing a motion?

21    A.    I know I've messed up too, so.

22    Q.    And I guess I'm going to ask you a few

23    questions about your understanding of Mr. Bandas

24    and his practice.  Now before you actually met

25    with Mr. Bandas, did Mr. Batman or anyone else

♀

                                                    41

R O U G H    C O P Y

1    ever tell you that several courts had sanctioned

2    Mr. Bandas for his objections to class settlements

3    in other cases?

4    A.    I don't know anything about that, sir.

5    Q.    Okay now if you had known that, would that

6    have impacted your decision on whether or not to

7    retain Mr. Bandas for purposes of seeking your

8    objection in this case?

9    A.    Well, I mean I don't know any of that to be

10    true, so I mean unless I know for sure then I

11    would make a decision after that.

12    Q.    If you knew for sure that Mr. Bandas had

13    filed in excess of 23 objections to different

14    class settlements around the country, would that

                        Page 38

NOVO812RVDEP.txt

15  have impacted your decision to retain him as

16  counsel for purposes of objecting to this Chinese

17  drywall settlement?

18  A.    Well he was referred to me, so I take a

19  referral quite a bit seriously, so usually if

20  somebody refers me to somebody it's because they

21  know the person and that's what I based it off of.

22  Q.    And because Mr. Bandas has been sanctioned in

23  the past for similar conduct, do you at all

24  concerned that you yourself might be sanctioned?

25  A.    Well I mean it could concern me but I don't

꜀

                                                    42

                    R O U G H   C O P Y

1  know anything about what he has or hasn't done as

2  far as that.

3  Q.    And you still want to go forward with your

4  objection?

5  A.    Yes, sir.

6  Q.    How about if I told you that the honorable

7  mark vand a wheel vandewiele in brown versus

8  Wal-Mart stores Inc. which is a case in Illinois

9  circuit court observed in that case that the

10  Bandas objection filed on behalf of Mrs. Carl son

11  is a generic boiler plate objection prepared and

12  filed by attorneys working for their own personal

13  benefit and not for the benefit of this class or

14  for those lawyers clients.  Directly before the

15  court demonstrates that Bandas is a professional

16  object err who has been properly attempting to

                        Page 39

NOVO812RVDEP.txt

17    high jack the settlement of this case from

18    deserving class members and dedicated, hard

19    working counsel, solely to coerce I will gotten in

20    appropriate and unspecified legal fees.

21         If I told you that judge vand a wheel had

22    suppressed those opinions in a -- not a published

23    opinion but in one of his opinions, would that --

24    does that trouble you at all that this is the

25    lawyer you've retained in this case?

⚬

                                                      43

                  R O U G H   C O P Y

1    A.   I mean I don't know anything about that, so I

2    can't have an opinion on something that I don't

3    know anything about.

4    Q.   If you had known about this particular

5    opinion by judge vand a wheel before you had

6    retained Mr. Bandas as counsel, would that have

7    impacted your decision on whether or not to retain

8    Mr. Bandas for purposes of objecting to the

9    drywall settlement?

10   A.   I can't honestly say, honestly, I mean.

11   We're talking about ifs, I don't know what would

12   have happened.

13   Q.   That doesn't affect your opinion as you sit

14   here today that you know this judge wrote a pretty

15   harsh opinion where he chastised Mr. Bandas, it

16   does than bother you at all?

17   A.   I can't change anything that's been said.

18   Q.   That doesn't cause you any sort of concern

NOVO812RVDEP.txt

19    that maybe you shouldn't have retained Mr. Bandas?

20    A.    I'm happy with my counsel.

21    Q.    You're happy with him being a professional

22    object err?

23    A.    I'm just happy with my counsel.

24    Q.    Who objects to all different class

25    settlements just so he can coerce a fee, you like

♀

44

R O U G H   C O P Y

1    that?

2    A.    That's your opinion.   I can't say anything

3    about that.

4    Q.    That he is judge vand a wheel's opinion?

5    A.    Okay.

6    Q.    That doesn't bother you at all?

7    A.    I'm happy with my representation.

8    Q.    Okay.   You're happy that Mr. Bandas has

9    attempted to high jack settlements to -- from

10    deserving class members so that he can coerce a

11    legal fee, you think that's something you're happy

12    with?

13    A.    I don't know anything about that.   I can't

14    say something that I don't know.

15    Q.    But you're willing to participate in an

16    objection where he could be doing the same thing,

17    right?

18    A.    I mean I don't know about that.   I really

19    don't.

20    Q.    So far as he gets you your 5,000-dollar

NOVO812RVDEP.txt

21    incentive fee, right?

22    A.    We haven't had an arrangement or anything

23    like that so I don't know anything about that.

24    Q.    But we did look at your retainer agreement

25    which talks about a 5,000-dollar incentive fee,

♀

                                                        45

                    R O U G H   C O P Y

1    correct?

2    A.    Well that's what the paper said.

3    Q.    So so far as you getting that 5,000-dollar

4    incentive fee you're willing to go along for the

5    ride, is that correct?

6    A.    That's only if something happens in we're

7    come to something but I'm not expecting I'm going

8    to make a whole bunch of money I'm not expecting

9    that I'm just happy with the fact that the lawyers

10   are getting a big chunk of money and I feel the

11   class should have more.

12   Q.    So your attorney can actually get some of

13   that money, is that part of your understanding?

14   A.    I mean we're all here because it's benefits

15   us in some way.

16   Q.    Who is we?

17   A.    You, everybody, you know we're all going to

18   probably benefit from the class in a sense that

19   you know being part of the class you know I was

20   affected so you know I don't know if that's going

21   to happen or not.

22   Q.    So long as you get your $5,000 you're happy?

                    Page 42

NOVO812RVDEP.txt
```
23   A.   I didn't say that.
24   Q.   I'm asking you?
25   A.   I'm not even answering that because that
```

⚲

              46

R O U G H   C O P Y

```
1    doesn't make sense.
2    Q.   You have to answer the question?
3    A.   Getting $5,000 is not going to make me happy.
4    Q.   So you are willing to go forward with the
5    objection even though your counsel has been called
6    out by various courts as a professional object err
7    who's highjacking settlements for a fee?
8    A.   I am willing to go forward with the
9    settlement.
10   Q.   Even though you know at least judge vand a
11   wheel expressed the opinion that Mr. Bandas was
12   not working -- he was working for his own personal
13   benefit not for the benefit of the class, that
14   doesn't trouble you at all?
15   A.   I can't change what was written.
16   Q.   If that's an opinion of learned judge, does
17   that who's actually participated in a case where
18   Mr. Bandas was objecting, you don't lend any sort
19   of credibility to that observation?
20   A.   I don't know the facts about that so I can't
21   say much about what I don't know.
22   Q.   Are you going to research this particular
23   case after today's deposition?
24   A.   I don't know.
```

NOVO812RVDEP.txt

25   Q.   So you're willing to go forward with an

♀

47

R O U G H   C O P Y

1   objection even though your counsel has been called

2   out as a professional object err who high jacks

3   settlements for his own personal benefit, not for

4   the benefit of the class, you're still willing to

5   go forward with the objection under those

6   circumstances?

7   A.   I'm still willing to go forward with the

8   objection.

9   Q.   Okay.  How about in were you aware that the

10   honorable David h-S-I-V-R-I-G-H-T junior in must

11   man M u s smanv Wal-Mart stores Inc. observed that

12   and stated in October 13, 2009 opinion the court

13   has considered all the materials and pleadings

14   filed of record in this case as well as related

15   judicial rulings.  As a result, the court

16   concludes that attorney Christopher a Bandas is a

17   professional object err.  The court is concerned

18   that attorney Bandas is seeking to wrongfully use

19   the class action and objection process for

20   personal gain, and without any corresponding

21   benefit to any individual object error the

22   settlement class as a whole.

23       Were you aware that judge sif right had made

24   this observation as to your counsel before you

25   retained him?

Page 44

NOVO812RVDEP.txt

♀

48

R O U G H   C O P Y

1    A.    No, sir.

2    Q.    And will I'll ask the same questions if Mr.

3    Batman had told you when he was referring you to

4    Mr. Bandas that you know judge sif right had made

5    these observations about Mr. Bandas, would you

6    have still retained him?

7    A.    My answer is the same.

8    Q.    So you're happy with Mr. Bandas even though

9    several courts have accused him of being a

10    professional object err?

11    A.    I'm happy with my representation.

12    Q.    Even though you might get sanctioned?

13    A.    If the court is the one that decides that, so

14    if the court decides that I need to do something,

15    well, then I will.

16    Q.    Okay.   You're willing to go forward, you

17    don't care if you get sanctioned?

18    A.    I'm willing to go forward with my objection.

19    Q.    Even if it means you're going to get

20    sanctioned?

21    A.    I'm willing to go forward with my objection.

22    Q.    Okay.  How about if I told you that the

23    honorable coal b peel in owe lay,

24    O-U-E-L-L-E-T-T-E versus Wal-Mart stores Inc.

25    observed that the court finds that a lack of

♀

49

NOVO812RVDEP.txt

R O U G H   C O P Y

1    involvement and participation of the objectors and
2    their counsel who are not present and a lack of
3    involvement and participation of the attorneys
4    that were present combined with their attempt to
5    inject themselves at the last minute into an eight
6    year litigation constitutes an effort to extort
7    money from the class and or class counsel.
8         Would that bother you that -- does that
9    bother you at all that this court made that
10   observation about your counsel?
11   A.    I mean don't know anything about that.
12   Q.    So far we've got three judges all expressing
13   harsh opinions about your counsel that doesn't
14   bother you at all?
15   A.    I'm happy with my representation.
16   Q.    Even though we have another court observing
17   that your counsel is trying to extort money from
18   the class and or class counsel and that's based --
19   A.    I'm happy with my representation.
20   Q.    Kind of just del may care at teut?
21   A.    Rp ee with my representation.
22   Q.    As long as you get the 5,000?
23   A.    As long as the class gets more and the
24   lawyers get less.
25   Q.    Does that apply to your counsel that he gets

♀

R O U G H   C O P Y

1    less?

NOVO812RVDEP.txt

2    A.    As long as the class gets more that's what

3    I'll be happy with.

4    Q.    To your knowledge has Mr. Bandas produced any

5    sort of benefit for the class other than filing a

6    base less objection?

7    A.    I don't know.

8    Q.    You don't know?

9    A.    No, sir.

10   Q.    So you think he'd be entitled to a fee?

11   A.    Probably.

12   Q.    More or less than your 5,000-dollar

13   incentive?

14   A.    I don't know.

15   Q.    How about would it trouble you at all if the

16   honorable Perry m Buckner observed in Carter vers

17   Wal-Mart stores Inc. that Mr. Bandas is a serial

18   professional object err.  Again this is the fourth

19   judge.  Does that trouble you at all?

20   A.    I'm happy with my representation.

21   Q.    And you would still if you had known that

22   these four judges had made these sort of

23   observations about Mr. Bandas, you still would

24   have gone forward in retaining him to make your

25   objection in this case, is that correct?

⚲

                                                   51
                    R O U G H   C O P Y

1    A.    I'm happy with my representation, I don't

2    know what would happen if again what we're talking

3    about ifs, I don't know.

NOVO812RVDEP.txt

4   Q.   Well I'm saying assuming you did know?

5   A.   I don't know.

6   Q.   What's that?

7   A.   I don't know.

8   Q.   You know now?

9   A.   Okay.

10   Q.   Does that affect your willingness to go

11   forward with your objection?

12   A.   I mean the objection is for the class to get

13   more, so I'm willing to go forward with the

14   objection.

15   Q.   So long as you get the $5,000 and your lawyer

16   gets his fee?

17   A.   As long as the class gets more.

18   Q.   And would you be willing -- say your

19   objection is overruled by Judge Fallon?

20   A.   Okay.

21   Q.   Would you be willing to post a bond if you're

22   to pursue an appeal of Judge Fallon's ruling?

23   A.   I don't know much about how that works so I

24   don't even know how to answer that.

25   Q.   How about if I told that you in convoys v3m

♀

52

R O U G H   C O P Y

1   corporation a case out in California, judge

2   Claudia will kin determined that Mr. Bandas's

3   appeal was pat en li frivolous and bore no

4   particular relationship to the circumstances of

5   the settlement and then imposed a 431,167-dollar

Page 48

NOVO812RVDEP.txt

```
 6    appeal bond, would that be something that you'd be

 7    willing to pay to pursue your objection in this

 8    case?

 9    A.    I don't know how that works, I don't know

10    anything about that.

11    Q.    Would you be willing to post a 431167 appeal

12    bond?

13    A.    I don't have that type of money.

14    Q.    So I'll take that as a no?

15    A.    Yeah, no.

16    Q.    And how do you feel about judge will kin

17    observing that Mr. Bandas's objection in that case

18    was patently frivolous and that it bore no

19    particular relationship to the circumstances of

20    the settlement.  Again no impact on you?

21    A.    I don't know anything about that.

22    Q.    And if you had known that these three judges

23    had -- I mean five judges, scratch that, if you

24    had known that these five judges had expressed

25    such opinions of Mr. Bandas's frivolous objection
```

♀

53

R O U G H   C O P Y

```
 1    z that that wouldn't have impacted your decision

 2    to retain Mr. Bandas?

 3    A.    I needed a lawyer so I retained a person who

 4    would help me with this objection.

 5    Q.    Even if that's a professional object err who

 6    has a history of filing frivolous objections?

 7    A.    I don't know anything about that.
```

NOVO812RVDEP.txt

8    Q.    You do know so I guess I'm asking, that does

9    than trouble you, you still would have retained

10   him?

11   A.    Can't do anything about that.

12   A.    Sir do you mind if we take a break.

13              MR. GAUGHAN:   Sure go ahead.

14              VIDEOGRAPHER:   Off the record at

15      4:35.

16              VIDEOGRAPHER:   We're back on the

17      record at 4:47 this is the beginning of tape

18      two.

19              MR. HUSEMAN:   Mr. Rodney Garcia

20      will be here in a minute just for your record

21      purposes.   Paul went to get him.

22              MR. GAUGHAN:   Get him prepped.

23              MR. HUSEMAN:   You're going to help

24      us prep him.

25              MR. GAUGHAN:   I don't want him in

♀

                                              54
                    R O U G H   C O P Y

1       here.

2               MR. HUSEMAN:   He's a party he's

3       entitled to be here, why would he not be.

4               MR. GAUGHAN:   I guess that's true.

5    BY MR. GAUGHAN:

6    Q.    Now we left off before we just took a break

7    we were talking about you know some cases where

8    judges had made particular observations, rulings

9    that sort of thing that pertained to your counsel

NOVO812RVDEP.txt

10      and your objection and I guess what I do want to

11      ask you next is I got some more for you -- how you

12      doing Mr. Garcia.

13          If I told you in Embrey verse Acer American

14      Corp.  Judge h James wear had required Mr. Bandas

15      to post a $70,000.650 bond in order to participate

16      or to pursue an appeal where the court found that

17      the merits of the objectors appeal weighed heavy

18      heavily in favor of requiring bond insofar as the

19      objections to the settlement are lacking in merit,

20      would that impact if you had known about this

21      would thf impacted your decision to retain

22      Mr. Bandas on your objection?

23      A.   I don't know anything about that.

24      Q.   And I'll ask the same question, would you be

25      willing to post a 70,000-dollar plus --

♀

                                                          55

                          R O U G H   C O P Y

1       A.   I wouldn't be able to do that.

2       Q.   You wouldn't be able to afford that?

3       A.   No, sir.

4       Q.   And would it influence your decision at all

5       if this meritless appeal in Embrey verse Acer

6       involved an issue where attorneys fees were the

7       only issue that was being objected to, would

8       that -- where you're objecting to attorneys fees,

9       would that impact your decision to pursue an

10      appeal?

11      A.   No.

                          Page 51

NOVO812RVDEP.txt

12    Q.    How about in if I told you in in RE: a trust
13    litigation judge h Samuel Conte overruled
14    Mr. Bandas's objection where his client failed to
15    submit proof to establish they were a class
16    member, kind of like yourself and found that that
17    object err lacked standing, would that impact your
18    decision to -- would that have impacted your
19    decision to retain Mr. Bandas if you had known
20    that before you filed an objection?
21    A.    I don't know anything about that, no.
22    Q.    I take it you would agree that you haven't
23    produced much in terms of evidence that you
24    actually have standing to object to this
25    settlement?

♀

                                                   56
                      R O U G H   C O P Y
1     A.    I produced a lot.
2     Q.    You haven't produced any actual evidence that
3     you purchased Chinese drywall as opposed to
4     American drywall?
5     A.    I produced everything that I had.
6     Q.    And do you know of any receipts that you show
7     that you purchased Chinese drywall?
8     A.    If you can show me what that looks like I'll
9     look for it.
10    Q.    So I'll take that as a no?
11    A.    No.
12    Q.    You don't know what it looks like you're the
13    one that have the receipts?

NOVO812RVDEP.txt

14  A.    I produced all that I could and that I had.

15  Q.    And how about if I told you in in re Wal-Mart

16  wage and hour employment practices litigation

17  judge Philip m pro, P-R-O, I am poalsd a

18  500,000-dollar bond requirement for Mr. Bandas one

19  of Mr. Bandas's clients to pursue an appeal in

20  that case.   Would that -- if you had known that

21  before you filed this objection, would that fact

22  have influenced your decision to retain

23  Mr. Bandas?

24  A.    Again, I don't know anything about that so

25  no.

57

R O U G H   C O P Y

1  Q.    Again where the court found that Mr. Bandas's

2  clients objection lacked any merit and imposed a

3  500,000-dollar bond, that wouldn't if you had

4  known that before, now we have eight judges in

5  eight different cases observing that Mr. Bandas is

6  pursuing objection where there's no merits and

7  another case where bond is being imposed that does

8  than trouble you at all that you would still

9  retain Mr. Bandas?

10  A.    Again I don't know anything about that, so

11  no.

12  Q.    And you're willing to risk that you might

13  have to pay sanctions?

14  A.    I mean if the court orders me to do

15  something, I have to abide by that.

Page 53

NOVO812RVDEP.txt

16    Q.    And you're willing to take that risk?

17    A.    As long as the class gets more.

18    Q.    And you understand that there's a current

19    motion for sanctions pending and that we'll be

20    filing another motion for sanctions based on the

21    documents that were produced at the last minute

22    today you're still okay with going forward with

23    your objection under all these circumstances?

24    A.    Yes.

25    Q.    Even though we have eight plus judges

♀

                                                    58
                    R O U G H   C O P Y

 1    different judges that we just discussed who have

 2    observed that Mr. Bandas's objections are

 3    meritless?

 4    A.    Yes.

 5    Q.    That doesn't trouble you that your objection

 6    is meritless as well?

 7    A.    If the court finds that, we'll go with that.

 8    Q.    And you're willing to pay any sort of

 9    sanctions?

10    A.    I can't not do what the court tells me so I

11    have to do something.

12    Q.    But that's not changing your opinion today?

13    A.    As long as the class gets more.

14    Q.    And you're not concerned that Mr. Bandas has

15    filed in excess of 23 objections, 23 that I found

16    to different class settlements that this is a

17    business practice for him more or less?

NOVO812RVDEP.txt

18   A.    I mean he's pretty good at being able to file

19   an objection.

20   Q.    Frivolous -- you don't mind if they're

21   frivolous objections?

22   A.    Well, I don't know anything about that.

23   Q.    Well, I just read you several opinions of

24   different judges eight plus and eight of those 23

25   where Mr. Bandas has pursued objections the court

♀

                                                    59

                    R O U G H   C O P Y

1    ruled that they were frivolous and you know were

2    filed solely for the benefit of counsel and not

3    for the benefit of class members, that doesn't

4    trouble you at all?

5    A.    I don't know anything about that.

6    Q.    You're still willing to pursue your objection

7    in this case?

8    A.    Yes.

9    Q.    And are you troubled by the fact that Mr.

10   Bandas has frequently used his office manager to

11   object to various different settlements?

12   A.    I don't know anything about that sir.

13   Q.    If I told you that he's used his office

14   manager to object to at least two settlements in

15   two different cases that wouldn't trouble you at

16   all?

17   A.    Maybe she's upset about something.

18   Q.    And if I told you he's got other individuals

19   Kervin M. Walsh for one and Lolita Wells who have

NOVO812RVDEP.txt

20    similarly filed multiple objections at the behest

21    of Mr. Bandas, that doesn't trouble you at all?

22    A.    No.

23    Q.    Now are you aware that Mr. Bandas has in the

24    past abandoned his client's objections?

25    A.    I don't know anything about that, sir.

⚲

60

R O U G H   C O P Y

1    Q.    And if I told you that he has in the past

2    abandoned his clients objections, would you still

3    be willing to go forward with your objection in

4    this case?

5    A.    I'm still willing to go forward.

6    Q.    Even though it's possible that he might just

7    walk away and not pursue the objection and leave

8    you hanging?

9    A.    I don't know anything about that.

10    Q.    Does that trouble you at all?

11    A.    I'm still willing to go forward with my

12    objection.

13    Q.    Can I ask you if Mr. Batman, is that his

14    birth name or did he change his last name to bat

15    man?

16    A.    I don't know, sir.

17    Q.    You don't know?

18    A.    No.  I think I had that same question when I

19    me him.

20    Q.    Did he answer your question?

21    A.    I didn't ask him I just thought it in my

Page 56

NOVO812RVDEP.txt

22    head.

23    Q.    Okay.   Now are you aware that Mr. Batman has

24    also filed several objections in other cases?

25    A.    No, sir.

♀

                                              61

                      R O U G H   C O P Y

1    Q.    In at least four different cases?

2    A.    I don't know anything about that.

3    Q.    Does that trouble you at all that your friend

4    is using these objections to try to make money?

5    A.    I don't know anything about that.

6    Q.    And that doesn't change anything about your

7    decision to go forward with your appeal?

8    A.    I'm still willing to go forward.

9    Q.    Not your appeal but your objection?

10    A.    My objection, yes.

11    Q.    And you're again you're tolling risk that you

12    might be sanctioned by court?

13    A.    I'm willing to go forward with my objection.

14    Q.    And we have one sanction motion pending and

15    another one that's going to be filed shortly?

16    A.    Uh-huh.

17    Q.    You're still willing to go forward?

18    A.    I'm still willing to go forward with my

19    objection.

20                MR. GAUGHAN:   I guess we'll go off

21         the record I think I'm probably done.

22                THE WITNESS:   We're done.

23                VIDEOGRAPHER:   Off the record at

NOVO812RVDEP.txt

24          4:59.

25                    (Break.)


♀

                                          62

                    R O U G H   C O P Y

1    BY MR. GAUGHAN:

2          Q     (By Videographer)

3                    VIDEOGRAPHER:   We're back on the

4          record at 5:10 p.m.

5    BY MR. GAUGHAN:

6    Q.   I guess we're concluding your deposition.

7    Thank you Mr. Soto I appreciate you coming in

8    again on short notice.   Thank you.

9                    THE WITNESS:   Thank you for

10         changing it for me.

11                   MR. GAUGHAN:   No problem.

12                   MR. GAUGHAN:   But I would again I'm

13         not going to conclude the deposition per se

14         I'm going to reserve my right to continue

15         since documents were produced to us at the

16         last minute.   I didn't have an opportunity to

17         review them.   I had some 6800 plus documents

18         produced to the liaison counsel last night.

19         I obviously didn't receive these documents

20         because I was here in Corpus Christi, liaison

21         counsel is in Louisiana.   Also today when I

22         think I put on the record before the

23         deposition that I received a letter from Mr.

24         Bandas purporting to provide a more limited

25         range of documents that were relevant to

                    Page 58

NOVO812RVDEP.txt

♀

63

R O U G H   C O P Y

```
1    Mr. Soto's objection.  Obviously since I
2    received that at 3:00 before a deposition
3    that was scheduled for 3:00 and there were
4    several hundred documents perhaps upwards of
5    three, 400 documents listed, I did not have
6    ample time to review those documents to ask
7    you questions and I have put on the record
8    that we're going to be filing or intend to
9    file a motion for sanctions and request that
10   we receive costs, attorneys fees and that
11   your deposition be scheduled in Louisiana and
12   that you be required to travel there and
13   that's it and I have no other -- nothing else
14   at this point in time.
15        SPEAKER2:  I'm letting you know
16   that we have documents here you're welcomed
17   to examine them.  We're not asking you to
18   stop.
19        MR. GAUGHAN:  I don't think that's
20   a full set, I don't think that's all the
21   documents and I don't think that I could
22   possibly review all the documents that are in
23   set forth in the letter without us spending
24   the whole night here, so I'm going to
25   conclude the deposition and reserve the right
```

NOVO812RVDEP.txt

♀

64

R O U G H   C O P Y

1        to recall subject to a motion, of course
2        which court may or may not grant.   Okay.
3                    THE WITNESS:   Okay.
4                    VIDEOGRAPHER:   Off the record at
5        5:12.
6                    Starting second witness.   Ronnie
7        Garcia.
8                    VIDEOGRAPHER:   This is the video
9        taped deposition of Ronnie Garcia taken on
10        November 8, 2012, time is 5:25 p.m. will
11        counsel please identify themselves for the
12        record.
13                    MR. GAUGHAN:   Matthew gone for
14        class counsel.
15                    MR. HUSEMAN:   Van Huseman and Paul
16        Dodson on behalf of Mr. Gar stee I can't.
17                    VIDEOGRAPHER:   Will the court
18        reporter please swear m the witness.
19                    THE WITNESS:   My name is Ronnie
20        Garcia.(SWORN.ecl).
21   BY MR. GAUGHAN:
22        Q    (By Mr. Huseman)
23                    MR. HUSEMAN:   We have the same
24        agreement we had on Mr. Soto's about the
25        running objection.

♀

65