NOVO812RVDEP.txt

♀

64

R O U G H   C O P Y

1    to recall subject to a motion, of course
2    which court may or may not grant.  Okay.
3              THE WITNESS:  Okay.
4              VIDEOGRAPHER:  Off the record at
5    5:12.
6              Starting second witness.  Ronnie
7    Garcia.
8              VIDEOGRAPHER:  This is the video
9    taped deposition of Ronnie Garcia taken on
10    November 8, 2012, time is 5:25 p.m. will
11    counsel please identify themselves for the
12    record.
13              MR. GAUGHAN:  Matthew gone for
14    class counsel.
15              MR. HUSEMAN:  Van Huseman and Paul
16    Dodson on behalf of Mr. Gar stee I can't.
17              VIDEOGRAPHER:  Will the court
18    reporter please swear m the witness.
19              THE WITNESS:  My name is Ronnie
20    Garcia.(SWORN.ecl).
21  BY MR. GAUGHAN:
22    Q    (By Mr. Huseman)
23              MR. HUSEMAN:  We have the same
24    agreement we had on Mr. Soto's about the
25    running objection.

♀

65

EXHIBIT 2

NOVO812RVDEP.txt
R O U G H   C O P Y

1           MR. GAUGHAN:   Yeah about the
2      questions you object to earlier as
3      harassment.
4               MR. HUSEMAN:   Harassment and other
5      things you would otherwise be giving trouble
6      about.
7               MR. GAUGHAN:   Yes I allow you
8      running objection on the harassment type
9      questions and I do want to put on the record
10     that last night liaison counsel received a
11     disk of some 9250 documents with respect to
12     Mr. Garcia and bay area contracting and
13     construction's objection in this matter and
14     right now I just received what I've marked as
15     exhibit 39 which is a letter from Mr. Bandas
16     dated November 8, 2012 which I just received
17     immediately before we began this deposition
18     that lists maybe 50 to a hundred documents
19     that are more limited range documents
20     obviously it being almost 5:30 right now well
21     at the end of the business day there's
22     insufficient time to review these documents
23     and we may very well file a motion for
24     sanctions and request that Mr. Garcia appear
25     in New Orleans, that we be awarded our costs

♀

66

R O U G H   C O P Y

1      for appearing today and that we also receive

Page 61

NOVO812RVDEP.txt

```
 2        attorneys fees for appearing today for this
 3        deposition and I just want to put that on the
 4        record before we get going, okay.
 5                MR. HUSEMAN:  We're here at your
 6        pleasure.
 7                MR. GAUGHAN:  Of course.
 8  BY MR. GAUGHAN:
 9  Q.    I guess Mr. Garcia or actually I should ask
10  counsel really?
11                MR. GAUGHAN:  He's appearing today
12        for himself as well as his company, correct.
13                MR. HUSEMAN:  Your understanding is
14        correct.
15                MR. HUSEMAN:  He speaks for both.
16                MR. GAUGHAN:  Okay.
17  BY MR. GAUGHAN:
18  Q.    And I guess one of the things we talked about
19  last week when I deposed you, I think it was
20  Thursday was about the scope of your lawyer's
21  representation of you and I was trying to ask you
22  if it was your understanding whether Mr. Bandas
23  was representing you solely with respect to your
24  objection and any appeal that may follow out of
25  that objection if the court over rules your
```

                                                67
                    R O U G H   C O P Y

```
 1  objection and do you remember that?
 2  A.    I don't remember.
 3  Q.    You don't remember.  And I guess at that time
```

NOVO812RVDEP.txt

4    it was your understanding that Mr. Bandas was

5    representing you more broadly than just in terms

6    of this objection and any appeal that may follow,

7    do you remember that?

8    A.   I don't remember at that time.  I don't

9    remember what I said at that time.

10   Q.   Okay well if you don't remember what you said

11   I'll just ask you again.  Do you understand that

12   Mr. Bandas is representing you?

13   A.   I know he's representing me right now.

14   Q.   And that's not just limited to this objection

15   that you're pursuing any appeal that might follow?

16   A.   I'm not sure I understand.  I would have to

17   talk to counsel on that.

18   Q.   Okay.  Well I understand that but maybe

19   you're noft understanding what I'm asking you but

20   let me just ask again.  Your objecting to the

21   settlement, correct?

22   A.   Yes, sir.

23   Q.   And but you might have you might actually

24   have claims against -- assuming you're correct

25   that you distributed Chinese drywall you might

♀

68

R O U G H   C O P Y

1    have claims against say did you buy drywall at Mc

2    kois?

3    A.   Yes, sir.

4    Q.   So it's possible you have a claim against Mc

5    kois eve than though they're not a party or

Page 63

NOVO812RVDEP.txt

 6    participant in this settlement.  Now do you

 7    appreciate that Mr. Ban as would be representing

 8    you if you decided to bring a claim against

 9    McCoy's for instance?

10    A.   I'd have to talk to counsel, I'd have to talk

11    to Mr. Bandas on that.

12    Q.   But that's not your understanding?

13    A.   At this time, no.

14    Q.   You'd have to talk to him?

15    A.   Yes, sir.

16    Q.   How is your eye doing, by the way?

17    A.   Red as ever.

18    Q.   What's that?

19    A.   They're red.

20    Q.   And your sinuses are you still having

21    problems with your sinuses?

22    A.   Comes and goes.

23    Q.   And have you seen a doctor between now and

24    when I deposed you?

25    A.   I haven't, I'm thinking about needing to go

♀

                                                  69

                        R O U G H   C O P Y

 1    check you know go get but I just haven't had time.

 2    Q.   And who is the doctor originally how went to

 3    see about your you said you had seen a doctor

 4    about your eyes and your sinuses, who was that

 5    doctor?

 6    A.   Doctor Perez.

 7    Q.   Who.

NOV0812RVDEP.txt

8    A.    Elizabeth Perez.

9    Q.    Where does she practice?

10   A.    Here in Corpus.

11   Q.    Do you have a name?

12   A.    Bay area vision.

13   Q.    So you just saw her for your eyes?

14   A.    Yes.

15   Q.    Did you see anyone with respect to your sinus

16   problems?

17   A.    Doctor villa.

18   Q.    And where is doctor villa practice?

19   A.    He's off of Morgan somewhere.

20   Q.    Do you know the name of his practice?

21   A.    Villa I know him as doctor villa I know his

22   first that I am is Robert villa.  I think it's

23   called villas.

24   Q.    Does the name villa appear in the title of

25   his practice?

♀

70

R O U G H   C O P Y

1    A.    Yeah, pretty sure.

2    Q.    And when was the last time you saw doctor

3    villa?

4    A.    I'm thinking around February.

5    Q.    Back in February?

6    A.    Yes.

7    Q.    And I take it you haven't told either of

8    these two doctors we just mentioned that you think

9    your symptoms might be related to Chinese drywall

Page 65

NOVO812RVDEP.txt

```
10    exposure?
11    A.    No, sir.
12    Q.    That something you intend to discuss with
13    either of these two doctors?
14    A.    Well, if it gets any worst I probably will.
15    Q.    And --
16    A.    I don't know if they --
17    Q.    How long have your eyes been bothering you?
18    A.    It's been a couple years.
19    Q.    Can you may be pinpoint more accurately when
20    you think it started?
21    A.    Like I said I couple years maybe two, three
22    years ago.
23    Q.    You don't have a real solid date on that?
24    A.    No, sir.
25    Q.    And did you see a doctor at that time?
```

♀

71

R O U G H   C O P Y

```
 1    A.    Yes.
 2    Q.    So you saw a doctor right away when your eyes
 3    started bothering you?
 4    A.    Yes, ma'am.
 5    Q.    And can you describe to me what it feels
 6    like, is it just dry or what is it?
 7    A.    It's a burning sensation.
 8    Q.    Burning.  How about the problem with your
 9    sinuses how would you describe that?
10    A.    It's like I said comes and goes.
11    Q.    But what does it feel like when it comes, I
```

NOVO812RVDEP.txt

12    guess?

13    A.    The dry sensation too, itching, burning.

14    Q.    But it's not constant?

15    A.    No, sir.

16    Q.    And how about your problem with your eyes, is

17    that a constant thing?

18    A.    Yeah it's a daily thing.

19    Q.    So that's been bothering you couple years?

20    A.    Yes.

21    Q.    What has your doctor told you about why

22    you're experiencing that problem if anything?

23    A.    Well, they gave me some antibiotics for.

24    Q.    So did it clear it up at all?

25    A.    It helped but I haven't gone back.  Us guys

♀

                                                                72

                          R O U G H   C O P Y

1    we just we don't want to see doctors.

2    Q.    And what's your understanding of whether

3    antibiotics are an effective treatment as to

4    Chinese drywall exposure?

5    A.    I do not know.  I can't tell you that.

6    Q.    And since your last deposition you haven't

7    been sued by any homeowners who claim you

8    installed Chinese drywall in their home, have you?

9    A.    No, sir.

10    Q.    Has anyone complained to you that they think

11    that you installed Chinese drywall in their home?

12    A.    No, sir.

13    Q.    And do you intend to disclose to your former

                          Page 67

NOVO812RVDEP.txt

14    customers that you think you might have installed

15    Chinese drywall in their homes?

16    A.    I don't -- you know, if it comes up.

17    Q.    So you're not going to go out and start

18    knocking on doors or anything?

19    A.    No, sir.

20    Q.    And have you discussed that whether you're

21    obligated or not to notify people that you might

22    have installed Chinese drywall with your counsel

23    or anyone?

24    A.    Not too sure, I don't think we talked about

25    that unless we -- it gets to a point I guess.

♀

                                                    73

                    R O U G H   C O P Y

1                   MR. HUSEMAN:   Let's not talk about

2           what you said with your lawyer.

3                   THE WITNESS:   Okay.

4    BY MR. GAUGHAN:

5    Q.    And since your last deposition, at that time

6    you couldn't recall any houses that you thought

7    you actually installed Chinese drywall in.   Have

8    you since changed -- has that changed I guess so

9    now you think you could identify a particular

10   property where you had installed Chinese drywall?

11   A.    No, sir.

12   Q.    And one of the things we discussed last week

13   was the fact that you having filed an objection to

14   this settlement created a possibility that the

15   settlement could be disapproved or I think we used

                    Page 68

NOVO812RVDEP.txt

16    the term tanked, just completely wiped out based
17    on your objection, do you recall discussing that
18    last week?
19    A.    Yes, sir.
20    Q.    In the time that has elapsed since your
21    deposition, have you given any second thought to
22    whether you want to pursue your objection in light
23    of that possibility that you might tank the
24    settlement?
25    A.    I haven't really thought about it.

                                                    74
                    R O U G H   C O P Y
1     Q.    You don't have any concern that your
2     objection might deprive deserving individuals of
3     benefits under the settlement?
4     A.    I'd have to talk to counsel on that.
5     Q.    But you're not concerned about it.
6     Q.    As you sit here today?
7     A.    I haven't had time it's been a couple days
8     and I've been out of town so I haven't thought
9     about it.
10    Q.    So as you sit here today it's not something
11    that's bothering you or keeping you up at night or
12    anything like that?
13    A.    It's not bothering me at this time.
14    Q.    And you think that's a risk that you're
15    willing to take that your objection might deprive
16    all these people of benefits that you're willing
17    to take that risk?
                    Page 69

NOVO812RVDEP.txt
```
18   A.    It's up to counsel on that.  I mean that's
19   why I hired a lawyer.
20   Q.    That's your understanding, it's up to counsel
21   whether to object or not?
22   A.    What's that?
23   Q.    I'm trying to figure out it's your
24   understanding it's up to counsel?
25   A.    Well I haven't really thought about
```

                                                                  75

                              R O U G H   C O P Y
```
 1   everything we talked about since Thursday, so.
 2   Q.    But earlier you said it was up to counsel I'm
 3   trying to figure out what you meant by that?
 4   A.    Can you repeat what you said?
 5   Q.    It wasn't what I said it was what you said
 6   you said it was up to counsel?
 7   A.    Well you said something about -- I don't even
 8   know what you said.
 9   Q.    Okay?
10   A.    I would have to talk to my attorneys.
11   Q.    I guess so it doesn't bother you at all that
12   you could wipe out a benefit to deserving class
13   members?
14   A.    Like I said I have never really had the time
15   to think about it.
16   Q.    Is that something you're going to think
17   about?
18   A.    If it gets to the point.
19   Q.    What do you mean by that?
```

NOVO812RVDEP.txt
20    A.    What's that?

21    Q.    If it gets to the point, what do you mean by

22    that?

23    A.    If it tanks, you know, the settlement.

24    Q.    Well I'll tell you the court scheduled a

25    fairness hearing for next week so we're kind of at


♀


                                                76
                    R O U G H   C O P Y

1    that point.  If the court might not approve the

2    settlement, the court might (Strike if.) or I

3    should say some of the settling defendants might

4    pull out of the settlement and there might be --

5    either the whole settlement could fall apart or

6    substantially less benefits might be available to

7    the class, so I'll represent to you we're at that

8    point.

9         Now knowing that, are you still willing to go

10    forward with your objection?

11    A.    Yes, sir.

12    Q.    Okay.  And you feel that your objection to

13    attorneys fees under the settlement is worth

14    possibly tanking the settlement?

15    A.    Can you repeat that again?

16    Q.    And you feel that your objection as I

17    appreciated which is that you oppose the

18    15 percent attorneys fees provision and you think

19    ten percent is more appropriate, you feel that

20    objection is worth possibly tanking a 83

21    million-dollar settlement?

NOVO812RVDEP.txt
22    A.    Ten percent, I don't know.

23    Q.    You don't know?

24    A.    I don't know about that.

25    Q.    Is that something you're going to think

†

77
R O U G H   C O P Y

1    about?

2    A.    What's that?

3    Q.    Is that something you're going to think

4    about.  The 14th is six days from now.  Is that

5    something you're going to think about for the

6    fairness hearing?

7    A.    I probably won't have time to think about it.

8    Q.    So you're going to go forward with your

9    objection?

10    A.    I'm going to go forward with the objection.

11    Q.    Whether or not it ends up tanking the

12    settlement, that's just the cost of doing

13    business?

14    A.    Yes, sir.

15    Q.    And I think we talked a little bit last week

16    about was it saw blades you had problems with, saw

17    blades when you were --

18    A.    It was route errs.

19    Q.    Route errs?

20    A.    Yes, sir.

21    Q.    And we talked about you didn't retain any of

22    those you didn't retain any drywall samples or

23    anything like that, is that correct?

NOVO812RVDEP.txt

24    A.    That's true.

25    Q.    And you mentioned that you did some work on a

♀

78

R O U G H   C O P Y

1    property where you removed drywall and the owner

2    said that they thought it was Chinese drywall?

3    A.    No, we did an insurance rehab on it.

4    Q.    Did you repair and replace drywall during

5    that or is it something else?

6    A.    Yeah we went in there and replaced the

7    drywall, did some repairs.

8    Q.    You didn't keep any of that drywall you took

9    out?

10    A.    It's been 20 years.

11    Q.    So to your knowledge you didn't comply with

12    judge fall P en's preservation order that requires

13    people to hold on to those sort of things (Judge

14    Fallon's)?

15    A.    No, sir, I don't understand what you mean,

16    it's been three or four years ago.  We don't -- we

17    usually get rid of all debris.

18    Q.    Well you didn't hold on to it, to the extent

19    that it's violative of Judge Fallon's order you

20    didn't hold on to it?

21    A.    No, sir.

22    Q.    And you mentioned that you hadn't seen any

23    doctors since your deposition?

24    A.    No, sir.

25    Q.    Are you planning to follow up with any of

Page 73

NOVO812RVDEP.txt

♀

R O U G H   C O P Y

1    those doctors?

2    A.    Yes, sir.

3    Q.    You have -- do you currently have an

4    appointment?

5    A.    No I was going to make an appointment but I

6    like I said I've been out of town and got into

7    town Tuesday as I was trying to catch up.

8    Q.    Which doctor was it?

9    A.    What's that?

10   Q.    Which doctor were you planning to see, the

11   one that treated you?

12   A.    Doctor Perez, Elizabeth Perez.

13   Q.    How long you been out of town for?

14   A.    Since Saturday.

15   Q.    Were your eyes bothering during that time?

16   A.    Yes, sir.

17   Q.    There was no improvement from when you left

18   town to today -- strike that.

19        Was there any improvement from when you left

20   town on Saturday to when you came back in your

21   condition?

22   A.    No, sir.

23   Q.    And if I told that you most people that live

24   in homes with Chinese manufactured drywall who are

25   experiencing some sort of physical problems that

♀

Page 74

NOVO812RVDEP.txt

80

R O U G H   C O P Y

1   are related to the exposure, that they generally

2   see improvement when they are away from their

3   home, would that lead you to believe that your eye

4   problem is caused from something else and not from

5   drywall exposure?

6   A.   I didn't know about it just like I said I'm

7   not an expert about that so I don't know.

8   Q.   You're not a doctor?

9   A.   I'm not a doctor.

10   Q.   You don't know what's causing your eyes to be

11   irritated?

12   A.   No, sir.

13   Q.   And have you seen anyone to treat you for any

14   sort of emotional distress since we had the

15   deposition last week, you had mentioned that you

16   had some anxiety or emotional distress because of

17   your fear that you might develop future injuries

18   based on your exposure to Chinese drywall?

19   A.   I did say that?

20   Q.   Did you not say that?

21   A.   I don't remember.

22   Q.   Is that what you're saying?

23   A.   Fear of what, chien ee drywall, in my condo

24   or what?

25   Q.   I think we talked a little bit about there

♀

81

R O U G H   C O P Y
Page 75

NOVO812RVDEP.txt

```
 1    was an affidavit that you prepared that was

 2    attached to your objection, do you remember

 3    looking at that last week?

 4    A.    I looked at it a little bit.

 5    Q.    Maybe the way I asked this is do you have any

 6    sort of emotional distress that you think you're

 7    going to have some sort of injury in the future

 8    based on your exposure to Chinese drywall?

 9    A.    It's always in the back of my mind.

10    Q.    You haven't seen treatment for this emotional

11    distress, have you, from a doctor?

12    A.    Well I've got -- take stress pills for it.  I

13    don't know if that's part of it.

14    Q.    Stress pills for what?

15    A.    Hu?

16    Q.    You take stress pills is that what you said?

17    A.    Well it's like a relaxer.

18    Q.    For what?

19    A.    For stress.

20    Q.    When did you get that prescribed?

21    A.    About a year and a half ago.

22    Q.    And that was before it even came to your

23    attention that you might have Chinese drywall in

24    your house?

25    A.    Yes, sir.
```

R O U G H   C O P Y

```
 1    Q.    And I take it you haven't seen any sort of

 2    medical professionals to treat you for any sort of
```

NOVO812RVDEP.txt

3    emotional distress related to Chinese drywall

4    exposure since our last deposition?

5    A.    No, sir.

6    Q.    And Mr. Bandas is not here today, he wasn't

7    at your deposition last week, you retained him to

8    represent you with respect to your objection, are

9    you at all troubled that he's not here today?

10   A.    No, sir.

11   Q.    And you don't think that he should have to

12   appear at this deposition to defend you with

13   respect to your objection?

14   A.    I don't know nothing about that much of law,

15   if he should be here or shouldn't be here.

16   Q.    And I apologize if I already asked you this

17   question but I had just concluded a deposition

18   that I asked some of these same questions, but so

19   since last week when I deposed you you haven't

20   approached any of your customers to let them know

21   that you think you might have installed Chinese

22   drywall in their house?

23   A.    No, sir.

24   Q.    And you have no intention of doing so, do

25   you?

                                                    83

              R O U G H   C O P Y

1    A.    No, sir.

2    Q.    And by the way did you talk about your

3    earlier deposition from last week with anyone?

4    A.    My deposition, no, sir.  Like I said I was

NOVO812RVDEP.txt

```
 5    out of town.
 6    Q.    You didn't discuss it with -- are you married
 7    by the way?
 8    A.    No, sir.
 9    Q.    You didn't talk to any of your friends about
10    it or anyone that works for you with you?
11    A.    Oh, yeah I talked -- I just talked to him the
12    day I went to the deposition on Thursday.
13    Q.    And did you talk about any of the questions
14    that I asked you?
15    A.    No, sir.
16    Q.    What did you talk about?
17    A.    What's that?
18    Q.    What?
19    A.    I just told him that I had a deposition on
20    Chinese drywall and that's pretty much about it.
21    Q.    And who was this individual?
22    A.    One of my partners up in Dallas.
23    Q.    What's the name?
24    A.    What's that?
25    Q.    What's his name?
```

♀

                                              84
                        R O U G H   C O P Y

```
 1    A.    Peter Gomez.
 2    Q.    And you just told him your deposition, was
 3    there anything else about it did you tell him
 4    anything about the deposition?
 5    A.    No, sir.
 6    Q.    Did you tell him you're objecting to a class
```

NOVO812RVDEP.txt

7    action settlement?

8    A.    I don't recall, I don't think so, no.

9    Q.    Did he ask you why you were deposed?

10   A.    What's that?

11   Q.    Did he ask you why you were being --

12   A.    No, he didn't, he's just a friend, we just

13   talked.

14   Q.    And you didn't discuss any of the questions I

15   asked you or any of the things that came up during

16   the deposition with this individual?

17   A.    No, sir.

18   Q.    Was there anyone else you spoke to about the

19   deposition?

20   A.    No, that's it.  Just brief like that.

21   Q.    And what did you do to prepare for today's

22   deposition?

23   A.    Didn't.

24   Q.    You didn't.  Did you meet with counsel at

25   all?

♀

                                                85
                       R O U G H   C O P Y

1    A.    I talked to Paul a little while that's it.

2    Q.    Just today?

3    A.    Well I called him yesterday because when I

4    got served I called him what's going on.

5    Q.    How long did you guys talk?

6    A.    I didn't time it, maybe minute, two minutes.

7    Q.    It was minutes as opposed to?

8    A.    Hours, yeah.

                       Page 79

NOVO812RVDEP.txt

9    Q.    Thirty minutes?

10   A.    Just minutes.

11   Q.    Under 30 minutes would you say?

12   A.    Yes.

13   Q.    Under ten minutes maybe five, ten minutes?

14   A.    Ten minutes, brief.

15   Q.    And did you talk to anyone else about today's

16   deposition before appearing today on the phone?

17   A.    I called the band as law office.

18   Q.    And did you talk to Mr. Bandas?

19   A.    I left a message he called me in the morning

20   I think it was this morning because we were

21   supposed to meet on Friday and I told him I really

22   don't -- I'm going to be busy on Friday he said

23   let me check into it so aim here on Thursday.

24   Q.    And did you guys -- did he prepare you for

25   the deposition?

♀

                                                    86
                        R O U G H   C O P Y

1    A.    No, sir.

2    Q.    Scheduling, was that the extent of it?

3    A.    I think just the scheduling part of it.

4    Q.    And how long did that call last?

5    A.    Ten minutes, the most maybe.

6    Q.    Just the two calls or was there any other

7    phone calls?

8    A.    Just two calls.

9    Q.    Then did you meet with anyone to help prepare

10   you other than Paul?

NOVO812RVDEP.txt

11   A.    Went to band as office dropped off a copy,

12   they wanted a copy of the what's it called when I

13   got served?

14   Q.    The subpoena?

15   A.    Yes.   So I went to his office he was than

16   there just made a copy, walked out.

17   A.    Secretary's name is marg owe, I don't know

18   her last name.

19   Q.    What was her name?

20   A.    Mar go.

21   Q.    And you met with Paul today you said?

22   A.    Just right now when I walked in.

23   Q.    How long was that five, ten minutes longer?

24   A.    Just, you know, five, ten minutes.

25   Q.    And did you guys talk.   He did some prep of

꞊

R O U G H   C O P Y

1   you for the deposition?

2              MR. HUSEMAN:   Let's not talk about

3       what you talked with the lawyer about.

4              MR. GAUGHAN:   I'm not asking -- I'm

5       trying to figure out if it was friendly or if

6       it was.

7   A.    Always friendly I saw he went to school at

8   University of Texas.

9   Q.    But did you actually do prep, I guess?

10   A.    No sir.

11   Q.    And does that pretty much cover everything

12   you did in relation to today's deposition, the two

NOVO812RVDEP.txt

13    phone calls and you met with Paul briefly?

14    A.    Yes, sir.

15    Q.    Did you discuss with anyone else that you

16    were going to be deposed today?

17    A.    No, sir.  I think Mr. When I talked to him

18    for a little while I said hi, how is it going he

19    wanted me to come in.

20    Q.    This was when you came in, I guess?

21    A.    Yes, sir.

22          (Exhibit 40 marked for identification.)

23    BY MR. GAUGHAN:

24    Q.    (Exhibit 41 marked for identification.)

25    BY MR. GAUGHAN:

♀

                                          88

                        R O U G H   C O P Y

1     Q.    And I'm showing you what's been marked as

2     exhibits 40 and 41.   Do you have those in front of

3     you Mr. Garcia?

4     A.    Yes, sir.

5     Q.    And these are the what we call notices of

6     deposition and these would have been presented to

7     you in connection with the subpoena that was

8     served on you, do you recall receiving these

9     materials?

10    A.    Yes.

11    Q.    Is it --

12    A.    Well they look different but I think they're

13    the same.

14    Q.    They look different?

                        Page 82

NOVO812RVDEP.txt

15    A.    Yeah.

16    Q.    Let me ask you this way, do you understand

17    that you're appearing today pursuant to these

18    notices to provide testimony?

19    A.    Yes, sir.

20    Q.    On behalf of yourself as well as your

21    company?

22    A.    Yes, sir.

23    Q.    Which is bay area contracting and

24    construction, Inc., is that a yes?

25    A.    Yes, sir.

♀

                                                      89

R O U G H   C O P Y

1     Q.    You can put those aside, by the way.  I'm

2     going to show you what's been previously marked as

3     exhibit 37.

4           Now, this is I'll represent to you a motion

5     that was filed by class counsel on October 24,

6     2012, it was filed in eastern district of

7     Louisiana with Judge Fallon it's now pending

8     before Judge Fallon and I'll represent to you that

9     this motion in this motion we're requesting that

10    Mr. Bandas and yourself as a client of Mr. Bandas

11    be sanctioned in connection with a motion that Mr.

12    Bandas filed seeking discovery related to the

13    settlement you're objecting to and ask you is that

14    something that you are aware of that class counsel

15    had moved to sanction you as well as your counsel

16    in connection with a discovery motion that your

NOVO812RVDEP.txt

17   lawyer filed?

18   A.    What do you mean about sanction?

19   Q.    Okay.  Are you aware that sometimes courts

20   will issue orders where someone files a frivolous

21   motion, that sort of thing and they'll require

22   that if they oppose the sanctions that the person

23   being sanctioned pay over money based on the

24   filing of a frivolous motion?

25   A.    No, sir.

♀

90

R O U G H   C O P Y

1    Q.    Okay.  And I'll elaborate a little bit.  So

2    basically one of the things that courts have an

3    inherent authority to do is if they deem that a

4    party has filed something that's frivolous or

5    vexatious, that sort of thing, filed with bad

6    intention courts will sometimes impose sanctions

7    because if you file a motion that's meritless that

8    sort of thing, the other side still has to respond

9    to the motion and certain circumstances a ways of

10   time for the court, for the parties and under

11   those circumstances sometimes a court will impose

12   sanctions and those sanctions might be things like

13   costs or attorneys fees in imposing the motion,

14   does that clarify what a sanction is to you?

15   A.    Just if I have to testify?

16   Q.    No basically a sanction would be imposed in a

17   situation where you file a frivolous motion, point

18   less motion that's meritless, court says it's

NOVO812RVDEP.txt

19   meritless why are you filing this you're just

20   doing it to harass the other party, something like

21   that, so if a court makes a determination that

22   that's going on, sometimes the court will order

23   the party that filed the motion pay money and that

24   might be for costs that the other side incurred to

25   defend against the motion, it could be attorneys

♀

91

R O U G H   C O P Y

1    fees, does that help you understand what a motion

2    for sanctions is?

3    A.    If we're at fault then we have to pay

4    attorneys fees.

5    Q.    Yes, so basically in this particular instant

6    exhibit 37 your lawyer Mr. Bandas filed a motion

7    seeking discovery we believe that motion was

8    frivolous and meritless and filed just to cause

9    problems and we requested that the court impose

10   sanctions upon Mr. Bandas as well as yourself

11   since you're an object err?

12   A.    Okay.

13   Q.    Did you have an appreciation that we had

14   requested sanctions from yourself?

15   A.    I didn't know this was filed.

16   Q.    Is that something you would have expected

17   your lawyer to tell you about?

18   A.    When was this filed?

19   Q.    On the 24th of October?

20   A.    I don't know if we talked about it, but yeah

NOVO812RVDEP.txt

21    I think he would have told me about it.

22    Q.    You would have liked him to tell you about

23    that?

24    A.    Yes.

25    Q.    And do you have an understanding that we're

♀

92

R O U G H   C O P Y

1    also requesting that the court order you to appear

2    in New Orleans to defend against this motion?

3    A.    When is that again.

4    Q.    Well, I'm not sure the court has scheduled a

5    hearing date yet for this motion, but do you

6    understand that that's something that we're asking

7    the court to do to order that you appear?

8    A.    Okay, well then I have to appear.

9    Q.    Okay.  Well if it orders you to appear but

10    were you aware that we requested?

11    A.    You requested for us to appear?

12    Q.    Yeah were you aware that we were doing that?

13    A.    No, sir.

14    Q.    Again is that something that you would have

15    liked your lawyer to tell you about?

16    A.    Well I mean when it happens I guess he will

17    tell me.

18    Q.    Okay, well is that something you would have

19    liked to have known about before he filed the

20    motion seeking discovery?

21    A.    I'll leave it up to Mr. Bandas.

22    Q.    Did he tell you that he was going to file a

NOVO812RVDEP.txt

23      motion seeking discovery?

24                  MR. HUSEMAN:  Don't answer that

25          question we're on asserting attorney/client

♀

                                                   93

                        R O U G H   C O P Y

 1          privilege on that.

 2                  MR. GAUGHAN:  What was the

 3          question.

 4                  MR. HUSEMAN:  Did he tell you, did

 5          the lawyer tell the client something.

 6                  MR. GAUGHAN:  I understand.  I

 7          thought what I asked him is that something

 8          that you would have wanted your lawyer to

 9          tell you about.

10      A.   I guess like I said we only met a couple

11      times, so I don't --

12      A.   I leave it up to him he is eap an attorney.

13      Q.   Was it your understanding that Mr. Bandas was

14      filing a motion seeking discovery from class

15      counsel?

16      A.   Well I just know we objected, that's all I've

17      known.

18      Q.   So he hasn't told you anything after the

19      objection?

20      A.   No, sir.

21      Q.   And again would you want to know that he was

22      doing something that might cause you to be

23      sanctioned and have to appear before a judge in

24      New Orleans?

NOVO812RVDEP.txt

25      A.    He's just my attorney, that's all I know.

♀

                                                                    94

                          R O U G H   C O P Y

1      Q.    I'm asking would you want him to tell you

2      that hey I'm filing this motion?

3      A.    If it's important I guess he will tell me.

4      Q.    So you don't think it's important that you

5      might be sanctioned and ordered to appear in New

6      Orleans?

7      A.    If I have to appear I'll appear.

8      Q.    But that's not something you'd want to know

9      about?

10     A.    Sir?

11     Q.    Would you P want to know that he was filing a

12     motion that may result in you being sanctioned and

13     ordered to appear in New Orleans?

14     A.    I guess as an attorney if he wants me to know

15     about it he'll let me know.

16     Q.    I'm asking that I'm asking would you please

17     want to know before he filed the motion?

18     A.    I'll leave it up to him.

19     Q.    So your a he a hundred percent relying upon

20     Mr. Bandas to do what is correct?

21     A.    Yes, sir.

22     Q.    And I'm going to ask that you look at that

23     big document there with the binder clip on it

24     which is marked as exhibit 38 and this is also

25     dated ten/ 24/ 12 and I take it you haven't seen

NOVO812RVDEP.txt

♀

R O U G H   C O P Y

1    this motion before, have you?

2    A.    No, sir.

3    Q.    And all just represent to you that we filed

4    this motion and we being class counsel in response

5    to certain of the band as objectors motion to

6    dismiss their objections and also in response to

7    your counsel's motion for leave to than could duck

8    discovery regarding the fairness of the proposed

9    class action settlement and that was the motion we

10   just talked about the discovery motion that

11   resulted in our motion for sanctions, okay?

12   A.    Yes, sir.

13   Q.    Let me just ask you real quick one of the

14   things that prompted us to file or one of the

15   facts that we highlighted in this motion was that

16   your counsel Mr. Bandas when he filed the

17   discovery motion he included certain facts that

18   are completely incorrect about the settlement that

19   you're objecting to and they appeared to come from

20   another case where he filed an objection.  For

21   instance he said the contingency fee provision was

22   40 percent and here you've actually objected

23   because you think the fee provision is 32 percent

24   he also listed amount of settlement is 16 million

25   whereas the settlement here is 83 million and he

♀

NOVO812RVDEP.txt

R O U G H   C O P Y

1   also identified a purported class representative

2   by the name of Mrs. Alice hill who is not a party

3   to the Chinese drywall litigation at all so I

4   guess my question for you is does that cause any

5   sort of concern for you that you have hired a

6   lawyer who can't even get the facts right when he

7   files an objection or files excuse me a motion

8   that's related to your objection in this case?

9   A.   I don't know what attorneys do.  That's their

10  job, I don't know what the attorneys -- behind

11  that.

12  Q.   Do you expect them to get the facts right?

13  A.   I would hope they get the facts right.

14  Q.   Would it trouble you that Mr. Bandas got the

15  facts completely wrong?

16  A.   Doesn't trouble me because I am a he not an

17  attorney.

18  Q.   Well he's representing you and not doing a

19  great job of it is I guess what I'm trying to say

20  does that trouble you at all?

21  A.   No, sir.

22  Q.   Would you expect him to look over any sort of

23  filing he made with the court to make sure the

24  facts are right?

25  A.   Als a business owner I try to cover myself,

R O U G H   C O P Y

NOVO812RVDEP.txt
1   so you know I can't tell him how to do his job, he
2   can't tell me how to do my job.
3   Q.   This is one of the reasons why we're moving
4   for sanctions is because it's obvious he just
5   filed this motion without even bothering to get
6   his facts straight and this is one of the reasons
7   you might actually be sanctioned because your
8   lawyer just through together this motion without
9   investigating the facts or getting them correct
10  and does that bother you that you might
11  potentially be sanctioned or ordered to appear in
12  New Orleans because your lawyer didn't do his job?
13  A.   It doesn't bother me right now but if I have
14  to appear it will bother me.
15  Q.   And if you get sanctioned I guess it will
16  bother you as well?
17  A.   Yes, sir.
18  Q.   So at minimum I take it you expect your
19  lawyer to do a job that won't result in you being
20  sanctioned or required to appear in another state
21  to -- before a judge?
22  A.   Yes, sir.
23  Q.   And we don't know if that's going to happen
24  or not.   You might be ordered to appear before
25  Judge Fallon, you might be sanctioned?

º

98
R O U G H   C O P Y
1   A.   I don't know that.
2   Q.   You're willing to still go forward with your
Page 91

NOVO812RVDEP.txt

3    objection with the understanding that you might be

4    sanctioned and forced to appear in Louisiana?

5    A.    Yes, sir.

6    Q.    Okay.  Now I guess one of the things that I

7    kind of briefly got into last deposition, your

8    counsel objected, but and Judge Fallon actually

9    ruled on it, so we got into some of the issues

10   where I was asking you about your lawyer's history

11   as a professional object err, do you remember

12   talking about that at all?

13   A.    I didn't do the talking you were talking a

14   lot.

15   Q.    I do a lot of talking, yes?

16   A.    I just listened.

17   Q.    Do you remember listening to me?

18   A.    Yes, sir.

19   Q.    How do you feel about that, that -- I

20   shouldn't say how do you feel about it, I should

21   say if I told you that at least eight courts have

22   spoken very harshly about your lawyer's history of

23   objecting to settlements that are not having any

24   real basis for the objection frivolous objections

25   that are being pursued solely to recover attorneys

♀

                                                        99

                    R O U G H   C O P Y

1    fees, would that in any way disuade you from

2    continuing with your objection to this settlement?

3    A.    No, sir.

4    Q.    And if you had known that your lawyer had a

                    Page 92

NOVO812RVDEP.txt

```
 5   long history of being professional object err who

 6   was seeking to lawyers fees or legal fees and not

 7   seeking anything positive for the class, would

 8   that have disuade had you from pursuing objection

 9   in this case?

10   A.   I don't know what his job is but at that time

11   I guess if I known what I know now or whatever you

12   might want to say I don't know.

13   Q.   Well that's what I'm asking you. And there's

14   a possibility you're going to be sanctioned, you

15   understand that based on some of your lawyer's

16   conduct before the court and what I'm trying to

17   say is I've got eight different judges who have

18   made various rulings pertaining to your lawyer's

19   objections that have been very harsh of your

20   lawyer and say that he's highjacking settlements,

21   they say that he's only in it to get legal fees,

22   he's not doing anything for the actual people that

23   are injured, the class members, it's will all

24   about legal fees.

25   A.   I'm still moving on with this case.
```

♀

100

R O U G H   C O P Y

```
 1   Q.   You're still moving on even though your

 2   lawyer is seeking objections solely to recover

 3   legal fees?

 4   A.   Yes, sir.

 5   Q.   That doesn't bother you?

 6   A.   Not at this time.
```

Page 93

NOVO812RVDEP.txt

```
 7    Q.    Even though you might be sanctioned?
 8    A.    No, sir.
 9    Q.    Is it worth it just for the 5,000-dollar
10    incentive fee?
11    A.    What's that?
12    Q.    Is it worth it just for a 5,000-dollar
13    incentive fee?
14    A.    No it's not, I don't know what the fee is I
15    don't know where you came up with that.  Is that
16    on the paperwork?
17    Q.    Yeah, it was actually remember last week you
18    looked at your retainer agreement?
19    A.    Haven't really looked at it at all totally.
20    Q.    It's in front of you it's marked exhibit 28
21    if you could take a look at that really quick.
22          (Exhibit 28.)
23    BY MR. GAUGHAN:
24    Q.    You don't remember talking about exhibit 28
25    last week?
```

⚥

                                                          101
                    R O U G H   C O P Y

```
 1    A.    Did we go over it?
 2    Q.    Yes.
 3    A.    3.3.
 4    Q.    Well 3.2 and 3.3, do you remember going over
 5    these provisions last week?
 6    A.    Yeah, I do.
 7    Q.    So you remember that part of your retainer
 8    agreement with counsel dealt with the prospect of
```

                          Page 94

NOVO812RVDEP.txt

9    you getting an incentive fee of $5,000?

10   A.    I remember now, I think.  Didn't really think

11   about it.

12   Q.    Well what I'm trying to ask is do you think

13   with the prospect of you might be sanctioned, you

14   might be required to appear before Judge Fallon,

15   does 5,000-dollar incentive fee really worth it?

16   A.    No, sir.

17   Q.    Then are you reconsidering your decision to

18   object to the settlement?

19   A.    No, sir.

20   Q.    Why not?

21   A.    Because I leave it up to Mr. Bandas see where

22   we get to move forward on this.

23   Q.    What are you hoping that Mr. Bandas is going

24   to accomplish aside from getting a legal fee and

25   maybe a 5,000-dollar incentive fee for you?

♀

                                                    102

                R O U G H   C O P Y

1    A.    What's that?

2    Q.    What are you hoping he's going to accomplish

3    besides getting a legal fee for himself and maybe

4    a 5,000-dollar incentive fee for you?

5    A.    I don't know what he's going to accomplish.

6    Hopefully it will be fair.

7    Q.    And are you aware that Mr. Bandas has a long

8    history of filing objections --

9    A.    No, sir.

10   Q.    And with drawing those objections after he

                    Page 95

NOVO812RVDEP.txt

11    gets paid off without any change to the settlement

12    agreement?

13    A.    No, sir.

14    Q.    If I told you that, would that -- if I told

15    that you fact, would that change your mind about

16    pursuing objection that he's really not going to

17    accomplish in the change to the settlement other

18    than to get a fee?

19    A.    No, sir.

20    Q.    That doesn't change your mind?

21    A.    No, sir.

22    Q.    So at the end of the day you might just end

23    up with $5,000, Mr. Ban as gets a fee, settlement

24    doesn't change at all, that doesn't trouble you at

25    all?

♀

103

R O U G H   C O P Y

1    A.    I'll leave it up to Mr. Bandas.

2    Q.    Are you looking at something sir?

3    A.    Just reading this stuff.

4    Q.    Were you looking at something?

5    A.    I was just looking at --

6    Q.    I'd like to have you turn back to exhibit 38

7    for a minute and just go through some of the

8    things that different courts have said about your

9    lawyer in brown v Wal-Mart you can follow along on

10    page five, brown v Wal-Mart stores Inc., the

11    honorable mark V-A-N-D-E-W-I-E-L-E, said the band

12    as objection filed on behalf of Ms. Carl son is a

NOVO812RVDEP.txt

13     generic boiler plate objection prepared and filed

14     by attorneys working for their own personal

15     benefit and not for the benefit of this class or

16     for those lawyers clients.

17          So essentially the court observed that Mr.

18     Bandas filed a boiler plate objection that was

19     solely for his own benefit and not for the benefit

20     of anyone else, not even his own client, does that

21     trouble you that that's what your lawyer is doing?

22     A.   It does trouble me, but.

23     Q.   Well if you had known that fact before you

24     actually pursued your objection, do you think you

25     would have retained Mr. Bandas?

♀

104

R O U G H   C O P Y

1     A.   Before the fact, yeah, probably.

2     Q.   You would have retained him anyway?

3     A.   What's that?

4     Q.   You would have still hired Mr. Bandas?

5     A.   If I knew the facts.

6     Q.   If you knew what this judge had said about

7     Mr. Bandas, essentially he's filing objection

8     boiler plate objection that's solely for his own

9     benefit not even for the benefit of his own

10     client, that doesn't trouble you at all?

11     A.   Not at this time.

12     Q.   So if you knew that fact before you filed

13     your objection, you still would have filed an

14     objection?

Page 97

NOVO812RVDEP.txt

15    A.    Because this is totally different from my

16    objection.   We're talking about Chinese drywall,

17    we're talking about Wal-Mart store.

18    Q.    We're talking about the same concept,

19    objecting to a settlement meritless objection

20    that's done solely for legal fees.  I'll continue

21    on -- ment (Interruption.)

22        I'm going to continue reading what judge vand

23    wheel said about Mr. Ban as in the same case, he

24    also continued on to say the record before the

25    court demonstrates that band as is a professional

⅌

                                                    105

                   R O U G H   C O P Y

1    object err who is improperly attempting to high

2    jack the settlement of this case from deserving

3    class members and dedicated, hard working counsel,

4    solely to coerce I will gotten, inappropriate and

5    unspecified legal fees.

6        Do you see that?

7    A.    Yes, sir.

8    Q.    I'm just going to ask the same question, you

9    really want to go forward with an attorney who's

10   trying to high jack a settlement to coerce a legal

11   fee?

12   A.    At this time, yes.

13   Q.    Even though he's not pursuing an objection

14   for your benefit, it's for his own been it, you

15   still want to go forward with that?

16   A.    Well I've hired Mr. Bandas for that, so.

                      Page 98

NOVO812RVDEP.txt
17    Q.    I'm going to say it again there's a
18    possibility you're going to get sanctioned, that
19    doesn't trouble you at all?
20    A.    I'll be troubled if I get sanctioned.
21    Q.    You're going to wait and see?
22    A.    Yes, sir.
23    Q.    And I'll continue on the next one.  Must man
24    v Wal-Mart stores Inc. honorable David h sif right
25    stated the court has considered all the materials

♀

106

R O U G H   C O P Y
1     and pleadings filed of record in this case.  As
2     well as related judicial rulings.  As a result,
3     the court concludes that attorney Christopher a
4     band as is a professional object err.  The court
5     is concerned that attorney band as is seek to go
6     wrongfully use the class action and objection
7     process for general -- excuse me for personal gain
8     and without any corresponding benefit to any
9     individual object error the settlement class as a
10    whole.
11          Do you see that?
12    A.    Yes, sir.
13    Q.    And this is another judge more or less saying
14    the same thing, that Mr. Bandas is a professional
15    object err and he's trying to use the class action
16    process for his own personal gain, he's objecting
17    for his own personal gain and he's not trying to
18    produce any benefit for his own client or for the

Page 99

NOVO812RVDEP.txt
```
19   settlement class.  I'll ask you, is that really --
20   you really want to hire someone that's just trying
21   to extort a fee?
22   A.   He must be good at what he does.
23   Q.   Extorting fees?
24   A.   He's an attorney, I don't know the facts of
25   this stuff.
```

♀

107

R O U G H   C O P Y
```
 1   Q.   But you're okay with hiring a lawyer that
 2   judges think is just trying to extort a fee?
 3   A.   I'm still going to move forward with this
 4   case.
 5   Q.   And how about the next case, owe lay v
 6   Wal-Mart stores Inc. honorable coal b peel
 7   observed the court finds a lack of involvement and
 8   participation of the objectors and their counsel
 9   who are not present and lack involvement and
10   participation of the attorneys that were present
11   combined with their attempt to inject themselves
12   in the last minute into this eight year litigation
13   constitutes an effort to extort money from the
14   class and or class counsel.
15       Do you see that?
16   A.   Yes, sir.
17   Q.   This is another court, a third court
18   observing that your lawyer, Mr. Ban as is again a
19   professional object err trying to extort a fee and
20   again you're okay with this?
```

NOVO812RVDEP.txt

21    A.   Well I don't even know if this is facts or
22    what, you just copied it from somewhere.
23    Q.   If you want to look these are all attached
24    and if that makes you feel better if you look at
25    exhibit d to this motion you'll find a copy of the

♀

108

R O U G H   C O P Y

1    judge's opinion.   These are facts these are
2    rulings by a court, rulings that say that your
3    lawyer is a professional object err and trying to
4    extort money.
5    A.   Where is that at?
6    Q.   Do you want to see it?  Is that what you
7    want?
8    A.   Might as well look at it.
9    Q.   Which one do you want to look at?  Do you
10    want to look at the top one?
11    A.   It says attached exhibit d.
12    Q.   Up find exhibit d?
13    A.   No I found b.
14    Q.   If you want to look sir, it's about here?
15    A.   Here it is.
16    Q.   Okay.  I'll tell you right where you want to
17    find it.  It's going to be on page five of that
18    document, see the bottom there, three, four, five?
19    A.   Uh-huh.
20    Q.   And at paragraph 20?
21    A.   Yes.
22    Q.   That's where he says this?

NOVO812RVDEP.txt

23    A.    This says filed ten/ 24/ 2012.

24    Q.    That's when we filed and I guess you -- when

25    you file something in federal court it's all

♀

109

R O U G H   C O P Y

1    electronic nowadays so what you're seeing there at

2    the top is actually relates to the motion itself?

3    A.    Oh okay because this is like in 20 --

4    Q.    Yeah it's just the way the court flags the

5    documents on its record so it knows where they

6    are.    But if you turn to page number -- if you go

7    back to exhibit d and you look at page ten of

8    exhibit d you see that's the date of judge peel's

9    opinion done and ordered in circuit court in the

10   Washington County chip Lee Florida on this 21st

11   day of August, 2009, do you see that?

12   A.    Yes, sir.

13   Q.    So this opinion is from August 2009 and if

14   you look at that paragraph 20 on page five, that

15   says what I just quoted to you, okay, so this is

16   an actual judge, not me who has made this

17   determination that your lawyer is a professional

18   object err and what I'm trying fo figure out, does

19   that trouble you at all?

20   A.    It troubles me.

21   Q.    But you still want to go forward with your

22   objection?

23   A.    Yes, sir.

24   Q.    Even with the understanding that you might be

NOVO812RVDEP.txt
25      sanctioned?

♀

110

R O U G H   C O P Y

1    A.    Yes, sir.
2    Q.    Because some meritless objection?
3    A.    Well I dealt with -- I've seen Chinese
4    drywall in my time.
5    Q.    But you have no understanding of where or if
6    you eve than installed it in someone's home?
7    A.    I don't know where, like I said we have eap
8    installed a bunch of different types of drywall.
9    Q.    And you don't know if it relates to your
10   company, bay area contracting, we talked about you
11   had at least one other company that you were
12   involved in where you might have installed this
13   drywall, assuming you did install Chinese drywall,
14   so you know that other company didn't object it's
15   only bay area contracting that objected?
16   A.    Yes, sir.
17   Q.    So you have no way of knowing as you sit here
18   whether you actually, you or your company bay area
19   contracting ever installed Chinese drywall, you
20   might have seen it on a different job site that
21   related to another company?
22   A.    Like I said, I think it was in Dallas Fort
23   Worth or Houston area.
24   Q.    Of course none of your customers have come
25   forward and complained that they think you

Page 103

NOVO812RVDEP.txt

♀

111

R O U G H   C O P Y

1    installed Chinese drywall on their properties?

2    A.    Which would be good, that's good.

3    Q.    It is good but it also suggests to me that

4    you didn't install any Chinese drywall in their

5    homes?

6    A.    Some of it was commercial too.

7    Q.    What do you mean by commercial?

8    A.    Commercial buildings.

9    Q.    But commercial clients also complain don't

10   they if there's a problem, so no one has

11   complained so you don't know?

12   A.    Uh-huh.

13   Q.    If you want to go to page six of this motion

14   I'll show you yet a fourth instance where a court

15   has disparaged your lawyer.  The honorable perry m

16   Buckner in Carter v Wal-Mart stores Inc., in his

17   opinion stated in spite of the fact that Mr.

18   Bandas is a serial professional object err I

19   reviewed the objection on its merits.  The court

20   finds that for a plethora of reasons the band as

21   objection lacks substantive merit.

22        Again this is another court saying your

23   lawyer is a professional object err pursuing an

24   objection that lacks substantive merit and again

25   you're okay with this?

♀

112

NOVO812RVDEP.txt

R O U G H   C O P Y

1     A.    I don't know what he does -- I guess that's

2     what he does for a living.

3     Q.    He pursues meritless objection z?

4     A.    That's what it sounds like you're saying

5     right there.

6     Q.    So you're willing to hire someone as your

7     lawyer who pursues meritless objections?

8     A.    I guess so because he's my attorney.

9     Q.    Are you concerned ump might be sanctioned?

10    A.    You already said that a couple times.

11    Q.    I just want to make sure you're concern?

12    A.    I guess so.

13    Q.    You're dealing with someone who's gt a

14    history, the court Judge Fallon who's presiding

15    over the Chinese drywall P litigation has been

16    advised of this history, there's a motion pending

17    that details this history you're looking at it,

18    you know, are you at all concerned that you might

19    get sanctioned here?

20    A.    Yes, sir.

21    Q.    Okay.   And again that doesn't disuade you in

22    any way from going forward with your objection?

23    A.    Not at this time.

24    Q.    And how about if we look at the next case,

25    the fifth case?

♀

R O U G H   C O P Y

1     A.    Seems like we got a bunch of cases we're

NOVO812RVDEP.txt

2    going to look at.

3    Q.    Yeah we're going to look at them all.   In

4    convoys v3m corporation on page six honorable

5    Claudia will kin found that Mr. Bandas found that

6    the objections of the O of Mr. Bandas clients to

7    be patently frivolous and bore no particular

8    relationship to the circumstance of the

9    settlement.   Kind of like in this case.   Then

10    imposed 431,167-dollar appeal bond requirement.

11    And that's a lot have money 431,000, ==is that money==

12    ==that you would have handy in case you had to post==

13    ==a bond?==

14    ==A.    No, sir.==

15    Q.    Okay I'll explain real quickly what's

16    happening there.   This is an instance where what

17    your lawyer does he files objections, the courts

18    overrule the objections and then he'll file an

19    appeal and the purpose of that is to try to hold

20    up and delay the settlement in the hopes that the

21    lawyers will pay him off to go away and so what

22    this court did was in order to prevent Mr. Ban as

23    from doing that it imposed a 431,000-dollar bond

24    requirement.   Does that trouble you at all that

25    the court would say the appeal is frivolous, the

114

R O U G H   C O P Y

1    objections are frivolous I'm going to impose a

2    431,000-dollar bond requirement?

3    A.    What's a requirement on that.
                    Page 106

NOVO812RVDEP.txt

4    Q.    You have to come forward with $431,000?

5    A.    Not for a bond there's a percentage.

6    Q.    Well usually you go to a company but yeah?

7    A.    It's like a 3 percent, 5 percent.

8    Q.    But would you actually to have pay the money

9    if the court -- if at the end of the appeal the

10   court determines the appeal is frivolous you have

11   to come forward with the $431,000?

12   A.    But a bond -- that's just the total amount of

13   the bond.

14   Q.    Well in this instance they have to actually

15   pay over cash I don't know if you understand that

16   with an appeal bond you have to pay cash you don't

17   pay 3 percent, you pay cash?

18   A.    Yeah.

19   Q.    It usually goes into like an escrow account

20   sits fl collects interest are you willing to pay

21   $431,000 to pursue an appeal if Judge Fallon

22   strikes down your objection?

23   A.    Yes, sir.

24   Q.    Okay you have that money?

25   A.    No, sir.

♀

                                                        115

                    R O U G H   C O P Y

1    Q.    Okay how are you going to pay ipt then?

2    A.    Hopefully Mr. Bandas come up with the money.

3    Q.    You yourself don't have the money?

4    A.    No, sir.

5    Q.    And aren't going to pay it forward?

NOVO812RVDEP.txt

 6    A.    No, sir.

 7    Q.    How about the next case Kevin Acer American

 8    Corp. and in this case the Honorable H. James wear

 9    required that band as post an appeal bond of

10    $70,650 and imposing that bond the court found

11    that the merits of the object err's appeal weigh

12    heavily in favor of requiring a bond insofar as

13    his objections to the set many ment are lacking in

14    merit.  Object err band as makes no objection to

15    the terms of the settlement its but objects only

16    to attorney fees.  Continues on but I'll leave it

17    off there.

18          Again do you have $70,000 to put up as a

19    bond?

20    A.    No, sir.

21    Q.    Are you willing to do so if you're required

22    to?

23    A.    If required to.

24    Q.    And again are you -- this is the sixth court

25    that's observed that Mr. Bandas is pursuing an

                                                  116

                    R O U G H   C O P Y

 1    appeal or an objection that lacks merit, are you

 2    troubled by that and do you still want to go

 3    forward with band as as your counsel under those

 4    circumstances?

 5    A.    I'll still go forward with it we're already

 6    this far.  Can I take a break I need to get some

 7    more water and go to the bathroom.

                    Page 108

NOVO812RVDEP.txt

8            VIDEOGRAPHER:  Off the record it's

9        6:31.  This concludes tape one.

10           VIDEOGRAPHER:  We're back on the

11        record at 6:44 this is the beginning of tape

12        two.

13    BY MR. GAUGHAN:

14    Q.    Mr. Garcia picking up where we left off, I'm

15    going to ask you continuing on that same line of

16    questions and start by asking if I told you then

17    in Embrey v Acer American Corp. the honorable h

18    James wear had required Mr. Bandas to post a

19    70,650-dollar bond in light of a meritless

20    objection that Mr. Ban as was pursuing in a

21    subsequent appeal, would that cause you to in any

22    way change your current course of conduct with

23    Mr. Ban as as your counsel?

24    A.    Not at this time.

25    Q.    Okay.  And in that case Mr. Bandas was also

                                                    117

                    R O U G H   C O P Y

1    opposing attorneys fees and as I appreciate it

2    that's what your opposing is the attorney fee

3    provision, correct?

4    A.    Yes, sir.

5    Q.    And you're still willing to go forward with

6    that objection to attorneys fees even though we're

7    seeing instance where another court ruled that Mr.

8    Bandas's objection to attorneys fees were

9    meritless?

                    Page 109

NOVO812RVDEP.txt

10    A.    Yes, sir.

11    Q.    ==And again the court imposed a 70,650-dollar==

12    ==bond and that's not something that you would be==

13    ==able to afford to post, if it came to it, could==

14    ==you?==

15    ==A.    No, sir.==

16    Q.    And the next case which is in re cat owe ray

17    to crt anti trust litigation which is a case in

18    the new district of California appearing before h

19    Samuel Conti, that court recently on March 22,

20    2012 overruled the objection of Mr. Ban as's

21    client since they failed to submit proof of

22    otherwise establishing that he was a member of the

23    class and therefore that individual lacked

24    standing to challenge a settle now this is

25    something that we feel we have here as well that

R O U G H   C O P Y

1    you don't have standing to attack the settlement

2    because you know there's really no real evidence

3    that you installed Chinese drywall in anyone's

4    home and there's really no evidence that you have

5    incurred any sort of personal injuries or anything

6    like that so you're still willing to go forward

7    with your settlement even though court could rule

8    that you don't have any standing to object?

9    A.    Yes, sir.

10    Q.    ==And you understand that you could be==

11    ==sanctioned==?

NOVO812RVDEP.txt

12    A.    Yes, sir.

13    Q.    And that the court could require you to post

14    substantial bond possibly 400,000, 70,000,

15    whatever it might be, you understand that and?

16    A.    I hope not.

17    Q.    What is it?

18    A.    I hope not.

19    Q.    But it has no impact on your decision to

20    continue your objection?

21    A.    No, sir.

22    Q.    And possible appeal?

23    A.    No, sir.

24    Q.    And the next case I want to show you is on

25    the next page in ray Wal-Mart wage an hour

♀

119

R O U G H   C O P Y

1    employment practices litigation which was a case

2    in the United States District Court for the

3    district of Nevada in which Philip m pro actually

4    impose an even larger bond requirement of $500,000

5    per object err since the objections were not

6    supported by the law or the facts and are indeed

7    meritless.   Again this is a case where your

8    counsel objected to a settlement, the court

9    observed that objectors counsel have enough

10   documented history -- there after dismissing said

11   appeals when they and their clients were

12   compensated by the settling class or counsel for

13   the settling class (Mark).

Page 111

NOVO812RVDEP.txt

14        And I guess this is what we were talking

15    about before that your lawyer has a history of

16    pursuing objections and then when those objections

17    are overruled by the court, he'll file an appeal

18    to try to slow things down and could cause a delay

19    of up to a year or possibly longer by pursuing an

20    appeal in order -- and what he's looking for is

21    fees to go away and again this doesn't trouble you

22    in any way?

23    A.    Not at this time.

24    Q.    And you're still willing to go forward with

25    your appeal?

♀

                                                    120

                    R O U G H   C O P Y

1     A.    Yes, sir.

2     Q.    And you understand that you could have be

3     required to post a bond could be $500,000 could be

4     more?

5     A.    And get sanctioned.

6     Q.    And you understand that we have eaf gone

7     through now eight different courts that have

8     criticized your counsel for his pattern of

9     pursuing frivolous appeals and objections?

10    A.    Yes, sir.

11    Q.    And you're still willing to go forward and

12    understand that you could be sanctioned by the

13    court?

14    A.    Yes, sir.

15    Q.    How about the fact if I told that you Mr.

                    Page 112

NOVO812RVDEP.txt

16    Bandas has at least objected to 23 settlement
17    class settlements that I'm aware of, does that
18    trouble you that he's opposed that many objected
19    to that many settlements, 23 class settlements?
20    A.   I'm not aware of that.
21    Q.   I'm asking you, does that bother you assuming
22    that's true and I'll represent to you that it is
23    that he's opposed more than 23 class settlements,
24    I mean that's problematic and troubling, isn't it?
25    A.   I don't know what the answer for that is.

♀

121
R O U G H   C O P Y
1    He's an attorney, I'm not.
2    Q.   So he's making a living extorting fees based
3    on frivolous objections, does that have --
4    A.   I think that's what you're saying.
5    Q.   I am saying that?
6    A.   That's what I said I think that's what you're
7    saying.
8    Q.   Of course?
9    A.   Okay.
10   Q.   Because it's true.
11   A.   I don't know if it's true.
12   Q.   We just read through eight different opinions
13   or sections of eight different opinions where
14   courts have observed that Mr. Bandas is a?
15   A.   Professional object err.
16   Q.   Professional object err, and that he's trying
17   to extort fees and went through -- it's my opinion
                        Page 113

NOVO812RVDEP.txt

18    it's courts have found this, different judges have

19    found him to be a professional object err who's

20    only after fees.  So it's not just my observation.

21    I'm telling you that I found more than 23 cases

22    where Mr. Bandas has pursued objections and

23    appeals and or appeals I should say to class

24    settlements.  And that's problematic in my opinion

25    I'm asking you what's your opinion, filing

♀

122

R O U G H   C O P Y

1    objections to extort fees?

2    A.    Are you trying to -- I need to say something

3    or you need -- what are you trying me to tell you,

4    that if it bothers me?

5    Q.    You want that person representing you?

6    A.    Well he's representing me now.

7    Q.    You want him to represent you?

8    A.    Yes, sir.

9    Q.    You're happy with that?

10    A.    Yes, sir.

11    Q.    And obviously you understand you can be

12    sanctioned?

13    A.    You told me that already.

14    Q.    Telling you again just to make sure it sings

15    in?

16    A.    Sanctioned and bonded and, okay.

17    Q.    I don't know about the bonded part but there

18    could be a bond requirement.  How about if I told

19    you that Mr. Ban as has frequently used members of

Page 114

NOVO812RVDEP.txt

20    his -- or employees of his office to pursue

21    objections do you find that problematic in any

22    way?

23    A.    Yes, sir.

24    Q.    Filing the same person in more than one case

25    filing?

♀

123

R O U G H   C O P Y

1    A.    Like I said I don't know what he does.

2    Q.    He's used the son of his office manager to

3    object to another settlement, is that troubling?

4    A.    What's office manager's name again.

5    Q.    Jan pet trust?

6    A.    Don't know her.

7    Q.    She objected to this settlement along with

8    yourselves?

9    A.    Really.

10    Q.    When originally filed, she also objected to

11    Chinese drywall settlement involving lowes and she

12    also objected to a case involving Bank of America

13    and her son objected to that same case involving

14    Bank of America and also objected in a case called

15    Sullivan vdb investments Inc. so he's using people

16    that work in his office or their family members to

17    oppose settlements so that he can earn more legal

18    fees, extort more legal fees, sorry and this is

19    who you want representing you?

20    A.    At this time, yes, sir.

21    Q.    And you're willing to go forward with him?

Page 115

NOVO812RVDEP.txt

22    A.    Yes, sir.

23    Q.    If I told you he's got other people who he's

24    used other individuals, Lolita wells who's

25    objected to more than one settlement with Mr.

♀

124

R O U G H   C O P Y

1    Bandas as counsel and a Mr. Ker VIN m wawsh who's

2    objected to two settlements with Mr. Ban as as

3    counsel, that doesn't bother you?

4    A.    I don't know who these people are.

5    Q.    I guess my point is he's using people to --

6    the same people to oppose multiple different

7    settlements in some cases, people that are after

8    these 5,000-dollar incentive fees so that he can

9    get paid, the client gets paid like you're going

10   to get paid your 5,000-dollar incentive fee and

11   what I'm trying to figure out is you really want

12   to go forward with someone under those

13   circumstances and oppose a settlement?

14   A.    Yes, sir.

15   Q.    And if I told that you Mr. Batman has opposed

16   at least four settlements that we're aware of and

17   he's the individual, I guess his investigator

18   brought you in, but he's doing the same thing,

19   he's opposing settlements, he's extorting fees?

20   A.    Who is that bat man?

21   Q.    Bat man, Mr. Batman, excuse me.  You sure you

22   want to get mixed up with these people?

23   A.    I'm still moving forward with this.
                    Page 116

NOVO812RVDEP.txt

24    Q.    What I'd like to finish off with is we have

25    moved for sanctions against you with respect to

♀

                                                    125

R O U G H   C O P Y

1    Mr. Bandas's motion seeking discovery and so if

2    the court orders you to appear in New Orleans, you

3    will do so?

4    A.    Yes, sir.

5    Q.    And if the court sanctions you, you'll pay

6    the sanction?

7    A.    Yes, sir.

8    Q.    Okay.  And we've already gone on record at

9    least in the beginning of this deposition saying

10    that in light of the late production of documents

11    and at this depo owe before this deposition last

12    night as well as immediately before this

13    deposition we're going to be seeking sanctions or

14    costs in appearing today, attorneys fees and

15    asking that you appear for a deposition in New

16    Orleans to after these documents have been

17    reviewed.  That's where we stand and if that

18    happens you'll pay any sort of sanctions that the

19    court imposes and you'll appear in New Orleans?

20    A.    If I have to.

21    Q.    Okay.

22              MR. GAUGHAN:  That's it.

23              MR. HUSEMAN:  Aren't you glad I

24    wasn't making objections.

25              VIDEOGRAPHER:  Off the record at

                    Page 117

NOVO812RVDEP.txt

                                                              126
                        R O U G H   C O P Y
    1          6:57.   P.m.
    2
    3
    4
    5
    6
    7
    8
    9
   10
   11
   12
   13
   14
   15
   16
   17
   18
   19
   20
   21
   22
   23
   24
   25

NOVO812RVDEP.txt

♀