# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | CIVIL ACTION NO. 09-2047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | JUDGE FALLON |
| _____ | ) | |
| This Document Relates to: | | MAGISTRATE WILKINSON |
| ALL CASES | | |

**REPLY MEMORANDUM ON BEHALF OF INTERIOR EXTERIOR IN RESPSONSE
TO PLAINTIFF-INTERVENORS' MEMORANDUM IN OPPOSITIONTO MOTIONS
IN LIMINE BY DEFENDANTS ON STANDARD
OF PROOF FOR REDHIBITION LIABILITY OF
SELLER WITH KNOWLEDGE**

**MAY IT PLEASE THE COURT:**

Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, L.L.C. ("Interior Exterior") respectfully submit this Reply Memorandum in support of their First Motion *in Limine* seeking an order *in limine* prohibiting Plaintiffs from presenting argument and evidence intended to impute knowledge to Interior Exterior of the sulfur off-gassing defect in drywall imported from China.

The Plaintiffs continue to obfuscate the legal principles under Louisiana redhibition law, as well as the basis of the Motion in Limine filed by Interior Exterior. The Motion was filed to directly address the legal standard that will be imposed by this Court and the practical application of that standard to this case. As explained in our Motion in Limine, the Plaintiffs intend to assert that Interior Exterior should have taken an array of actions – beyond visual inspection – prior to their sale of the drywall. Fundamental to the Plaintiffs' argument, and the proffered testimony of their experts, is an assertion that Interior Exterior had a responsibility to

go to China and inspect the manufacturing facilities of Knauf and Taishan. The experts even take it to the extreme and suggest, and will try to tell the jury, that Interior Exterior should have gone all the way to the Luneng gypsum mine in China and conducted an assessment of that operation.

This is not mere hyperbole by Interior Exterior. The Plaintiffs explain in the Memorandum in Opposition the duty they seek to impose on Interior Exterior, explaining that: "The evidence will show that INEX also had a duty as a reasonable and prudent buyer/distributor of Chinese drywall, to audit the manufacturing process in China, verify the factory test reports for quality of the product, and generally take precautions as to quality assurance and control which any reasonable distributor would take in dealing with Chinese manufactured building materials."[1]

It is these very claims that necessitated the filing of the Motion in Limine. The Plaintiffs seek to impose an entirely new standard on Interior Exterior, one which goes far beyond any duty placed on a seller under the Louisiana redhibition scheme.

---

[1] Sometimes, one has to wonder what fiction novel is the source of the PSC's evidence in this case. In their Opposition the PSC goes so far as to state the following:

"There will be specific evidence that, had INEX taken these actions [meaning auditing the Chinese manufacturing site and/or verifying the factory test reports] the odor and/or physical indications of sulfur off-gassing from the gypsum would have been readily discoverable in China." The PSC then further asserts that "the sulfur contamination of raw gypsum is not a unique or unheard-of phenomenon."

The past three years of litigation and discovery has revealed just the opposite. In fact, at the Fairness hearing on Tuesday November 13, 2012, both Mr. Herman, on behalf of the PSC, as well as counsel for Knauf made statements in direct contradiction of this assertion. The latent sulfur defect was not discoverable by simple observation, and no tests were being conducted in 2005 to 2006 to look for this condition. Moreover, the parties went to great lengths to explain to this Court that this sulfur defect was a rare and unique condition, unknowable even to the manufacturer. In fact, counsel for Knauf claimed that the rarity of this defect was one of the reasons this Court should approve the Class settlement.

## THE CONSTRUCTIVE NOTICE STANDARD
## HAS LIMITED APPLICATION

Interior Exterior has never taken the position that constructive notice standard does not exist. Instead, Interior Exterior has argued, and will continue to assert, that this concept has no application to the facts of this case.   Based on the actual and unambiguous language of Louisiana Civil Code, Article 2531, a seller who knew not of the vices of the thing is bound only to restore the purchase price and "reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing." *Coleman Oldsmobile, Inc. v. Newman and Associates, Inc., et al,* 477 So.2d 1155 (La.App. 1st Cir.1985) writ denied 481 So.2d 1334 (La.1986).

The imputation of knowledge to a seller via constructive notice was a jurisprudential creation, and the Courts have continually recognized the limited application of this standard. Generally, "seller-dealers have been charged with constructive knowledge of defects … in cases where the seller installs, assembles, or repairs a particular part and that particular part is defective.  The court found the sellers in these cases had placed themselves in the same posture as a manufacturer upon installing, repairing, or assembling the defective object." *Cernigliaro v. Marquis Marine, Inc.*, 381 So. 2d 886, 888-89 (La. Ct. App. 1980).

When the defect is "of such a nature as not to be observable by ordinary inspection without actually taking the unit apart and inspecting each individual component," the seller is not one in bad faith.  *Riche v. Krestview Mobile Homes, Inc.*, 375 So.2d 133 (La. App. 3 Cir. 1979), *re'hrng denied*.  This is because **a non-manufacturing seller is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects**. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993) *cert. denied*, 510 U.S. 1043, 114 S. Ct. 688, 126 L. Ed. 2d 656 (1994).

- 3 -

The decision cited by the Plaintffs, *Boos v. Benson Jeep-Eagle Co., Inc.*, 98-1424 (La. App. 4th Cir. 6/24/98); 717 So. 2d 661, is less straightforward, but still instructive on the issue. In that case, at issue was the sale of a used car, and a waiver of the warranty in redhibition by the buyer, that had been flooded, a condition that was not disclosed to the buyer. The court held that fraud may vitiate an otherwise valid waiver of warranty, and stated that "constructive knowledge "on the part of a seller could be sufficient for that purpose" under Civil Code Article 2548. *Id.* This decision, however, was rendered in the narrow context of used-car sales, where the courts found there was a "presumption" that the seller has knowledge of **observable** defects based on the assumption that a used car dealer will likely perform of the car before it sells it.   The court noted, "The nature of the alleged defects appear to be such as would become apparent pursuant to the type of inspection someone in relator's business would be presumed to make …. In view of the fact that any reasonable purchaser would expect that relator would have made such an inspection and would have disclosed any significant defects discovered in the course of such an inspection, relator cannot avoid responsibility by proving merely that it, in fact, made no such inspection." *Id.* at 665-66.

This "used-car" exception, created under the 1870 version of Article 2548, is clearly a jurisprudential creation that has not been applied outside the context of automobile dealers.  It is clear that the *Boos* court intended the presumption to be narrowly limited. The court found, "Placing the burden of proof on the vendor in these circumstances will discourage fraud and consumer abuse in an area of commerce that is particularly vulnerable to such possibilities, not to mention the fact that proof of the existence and results of any such inspections is completely within the control of the vendors of used vehicles." *Id.* at 666.

As to the alleged inspection requirement discussed in *Boos*, **the Court made a point of explaining the limits of such, and stated**: "we do not mean to imply that it is reasonable to expect such an inspection to uncover every defect no matter how subtle. However, where it is reasonable to expect that an inspection was made by the used car dealer, the burden is on the vendor of used cars to show that a reasonable inspection was made and no defects were discovered, or that no inspection was made but the defect was of a nature that, more probably than not, it would not have been discovered by such an inspection." *Id.* at 667.  The defect at issue in this case, however, certainly would not have been discovered by an inspection by Interior Exterior, and instead it required destructive, chemical analysis to ascertain.

One of the primary cases cited by Plaintiffs in the Opposition to Interior Exterior's Motion in Limine was *Martin v. Henderson*, 505 So. 2d 192, 195 (La. Ct. App. 1987). The holding on that case, which involved a similar defect in the chemical composition of the product sold, supports the relief sought by Interior Exterior in this Motion. In that case the court explained as follows:

> A non-manufacturer seller is responsible for damages only if he knew or should have known that the product sold was defective and failed to declare it. *Harris v. Atlanta Stove Works, Inc.*, 428 So.2d 1040 (La.App. 1st Cir.1983) writ denied 434 So.2d 1106 (La.1983); *Hudgens v. Interstate Battery Systems of America, Inc., et al*, supra; *Reeves v. Great Atlantic & Pacific Tea Company, Inc., et al*, 370 So.2d 202 (La.App. 3rd Cir.1979) writ denied 371 So.2d. 835 (La.1979). The good faith seller, i.e., the seller who had neither actual nor constructive knowledge of the defect and who is not presumed, in the capacity of manufacturer, to have had knowledge of the defect is bound only to return the purchase price together with the expenses of the sale. La.C.C. Article 2531.

> The record in this case is devoid of any evidence indicating that the appellant had actual knowledge of the presence of water in the diesel fuel sold by him. The non-manufacturer seller is not required to inspect a product prior to sale to determine the possibility of inherent vices or defects. *Harris v. Atlanta Stove Works, Inc.,* supra; *Ratliff v. Porter Cable Co. of New York,* 210 F.Supp. 957

(E.D.La.1962). Simple visual inspection would not have disclosed the presence of water in the diesel fuel anyway. We therefore hold that the defect was latent and that constructive knowledge of the defect should not be charged to appellant.

505 So.2d at 195.

What is absent from every case cited by Plaintiffs under the redhibition statute is the imposition of any obligation beyond inspection of the actual product. Visual inspection of this drywall is not the issue. The Plaintiffs now seek to have this Court send sellers in Louisiana down an entirely new path, a path that requires a seller to become a de facto manufacturer and discover and a latent defect no matter what means are required.

Under the theory suggested by Plaintiffs, a seller in Louisiana would not have a duty to just inspect the actual product.  Instead the Plaintiffs will argue that Interior Exterior and all non-manufacturing sellers in Louisiana have an expansive obligation to evaluate a product to search for hidden defects, including inspection of the manufacturing facility, and further conduct analysis of the raw material used in the production of a product.  There is not one single case that supports the absurd conclusions of the Plaintiffs, because the law in Louisiana simply does not extend that far.

The purpose of this Motion in Limine is to preclude any evidence or testimony as to the seller's non-existent duty to conduct extensive quality control analysis. The Plaintiffs should be precluded from introducing any expert testimony or other evidence that is supportive of this fictional duty to perform destructive testing of the drywall, and the alleged duty to evaluate the manufacturing facilities at issue. Accordingly, testimony from the experts will largely, if not completely, be unnecessary and inadmissible.

Respectfully submitted,

/s/ Richard G. Duplantier, Jr.

_____

Richard G. Duplantier, Jr. #18874
Lambert J. Hassinger, Jr. #21683
Benjamin R. Grau #26307
Carlina C. Eiselen, #28524
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, Suite 4040 One Shell Square
New Orleans, LA 70139
504 525 6802 / 504 525 2456 Fax
rduplantier@gjtbs.com
jhassinger@gjtbs.com
bgrau@gjtbs.com
ceiselen@gjtbs.com
*Counsel for Interior Exterior Building Supply, L.P.*

**Certificate of Service**

The undersigned certifies that this document has been served on Plaintiffs' liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 15th day of November, 2012.

/s/ Richard G. Duplantier, Jr.
RICHARD G. DUPLANTIER, JR.