UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) | CIVIL ACTION NO. 09-2047<br><br>JUDGE FALLON |
| _____<br>This Document Relates to:<br>ALL CASES | ) ) | MAGISTRATE WILKINSON |

**MEMORANDUM IN SUPPORT OF INTERIOR EXTERIOR'S**
***SECOND* MOTION TO STRIKE PLAINTIFFS' EXHIBITS**

MAY IT PLEASE THE COURT:

As this Court is unfortunately already well aware, Plaintiffs have refused to comply with the Court's clear directive to provide Interior Exterior with a reasonable list of exhibits, to timely exchange those exhibits, and to meaningfully meet and confer on the introduction of exhibits for trial. The Court has made repeatedly made clear that Plaintiffs' must desist from any further dilatory and obstructionist tactics; yet, Plaintiffs have done just the opposite. Trial is a mere 5 days away – which includes the Thanksgiving holiday and weekend – and Plaintiffs still have not provided a reasonable list of exhibits and have not meaningfully met and conferred on the introduction of exhibits.

The exchange of exhibits was to originally occur on October 30, 2012, but the parties agreed to exchange exhibits lists by Friday, November 2, 2012 and agreed to exchange all exhibits by Monday, November 5, 2012. Plaintiffs, however, failed to provide their exhibit list until the evening of November 5, 2012, and the trial exhibit list at that time contained approximately **1,300** documents and over 200 learned treatises   Moreover, Plaintiffs did not provide their actual trial exhibits to Interior Exterior until an electronic disc was delivered to

-1-

counsel on the evening of November 13, 2012. We immediately sent the disc out for copying, which took 2 business days, and which resulted in 4 bankers boxes of paper.

The initial list of documents contained voluminous exhibits relating to the defect in the drywall and the damages caused by the drywall, as well as numerous obvious hearsay or other inadmissible documents, not the least of which is an Affidavit from Russ Herman! It was clear that the list was nothing more than a dump of documents and exhibits used in previous drywall trials and submitted to the Court on various motions. The list had not been culled or refined in any meaningful way.

Nevertheless, following the exchange of this initial list, Plaintiffs' counsel repeatedly assured defense counsel and the Court that this list of 1300 exhibits would be paired down. By the time of the pre-trial conference, at 3:30 pm on November 19th, though, Plaintiffs still had not provided the paired down list. At the pre-trial conference, Plaintiffs' counsel again advised that paired down list would be provided, and that the parties were scheduled to meet at 9 am the following morning to "meet and confer" on objections to the exhibits. Later in the day on the 19th, we wrote to Plaintiffs' counsel again asking for the paired-down list and advising that the meeting would be extremely long if we did not have the paired-down list. No response came from Plaintiffs' counsel, however. That is until 8:56 am, *4 minutes before the exhibit conference was to begin*, when Plaintiffs' counsel wrote to advise that they were still working on the paired-down list and unilaterally moving the meeting to 11 am.

Because we already had critical trial preparation meetings scheduled for later in the morning and into the afternoon on the 20th, we refused to move the meeting. Mr. Irpino, one of the dozen or so lawyers representing the Plaintiffs, appeared at 9:30 am with the long awaited paired-down list. Only, the list was not fully paired-down yet. Rather, Plaintiffs had shortened

the list from 1300 exhibits to 542 exhibits by coalescing 500+ invoices into one exhibit and removing some other exhibits. He also advised that he had "notes" on which others Plaintiffs might remove.

Mr. Irpino also advised that he was not prepared to discuss any objections to Defendant's exhibits. Eventually, Mr. Munier arrived at 11 am, but he too was unable to meet and confer on Defendant's exhibits because he had not reviewed them. He stated that he would review them at his office later in the day and would get back to us with any objections. As of late in the evening on the 20th, we still had not received any objections to any of Defendant's exhibits.[1]

Despite Plaintiffs' inability to meet and confer on Defendants' exhibits, we did attempt to "work through" Plaintiffs exhibits with Mr. Irpino. This process consisted of prodding exhibit by exhibit though Plaintiffs' list of 1300 exhibits (50+ pages in all), with Mr. Irpinio advising if the exhibit was still on the list or had been removed. If the exhibit remained on the list, we then lodged any objections we had. However, for most objectionable exhibits, Mr. Irpino was not in a position to meaningfully address Interior Exterior's objections. Instead, he indicated that he noted the objection and would have to talk it over with the rest of his team. There were only a handful of exhibits that Mr. Irpino was able to agree were irrelevant or inadmissible and which were removed from the list, some of which were later added back to the list.

In the end, Plaintiffs "paired down" their original list of 1300 exhibits to 404 exhibits. This process took from 9:30 am to 2:30 pm on the last full business day before the Thanksgiving

---

[1] Mr. Irpino did send an email at 8:56 pm on the 20th providing objections to Defendants' exhibits. Interestingly, many of Interior Exterior's exhibits to which Plaintiffs object are actually included on Plaintiffs own exhibit list. Obviously, no meaningful meet and confer occurred on any of these objections. Ironically, Plaintiffs also actually objected to one of Interior Exterior's 80 exhibits on the grounds that the facts could be stipulated without "unnecessary and voluminous cluttering of record." The same certainly could certainly be said of at least 350 of Plaintiffs' now 400+ exhibits. Finally, Mr. Irpino also stated in his email that we would meet at 9 am on the 21st to discuss remaining objections to the exhibits. This, however, was not the agreement of the parties. The agreement was to meet and confer on the 20th, which we were prepared to do but which the Plaintiffs were not. We have already spent nearly an entire day dealing with exhibits, and now we are asked to devote more time when we simply do not have any more time at this stage of trial preparation.

holiday and the start of trial. The meeting had to stop on several occasions so that Mr. Irpino could call other members of the trial team to discuss exhibits because he was the only one present for the bulk of the meeting. Besides consolidating the invoices into one exhibit, Plaintiffs removed approximately 400 other exhibits, but still have over 400 exhibits remaining.

Some of the exhibits that remained on Plaintiffs' paired down list at the start of the meeting included several documents (100's of pages) relating to inspections of the Harrell and other residences in South Florida. Of course, when we called these to counsel's attention, he agreed to remove them, but the fact that they remained on the "paired-down" list is clear evidence as to the lack of effort put into preparing the list in the first place and then pairing it down. Counsel for Interior Exterior wasted valuable time and expense in printing, reviewing and then meeting to discuss documents that in good faith should have never been put on a witness list in the first place. This is just one example of the many irrelevant documents that appeared on the original list.

Of the remaining exhibits Plaintiffs still plan to introduce, however, there are still numerous irrelevant or inadmissible documents. These include, just naming a few:

- The aforementioned Affidavit of Mr. Herman;
- A letter from counsel for Tiashan to counsel for Plaintiffs (P-NR/INEX 0965);
- Numerous other hearsay communications from persons who are not witnesses at the trial relating to purchases not made by INEX (P-NR/INEX 0196-0226; 0237-0239; 0275; 0308-0309; 0313; 0342-0349; 0364-0368; 0858);
- The Code of Ordinances and Building Regulations from the City of Baton Rouge (P-NR/INEX 0917-0918);
- Numerous city, state, and international building codes (P-NR/INEX 0914-0921);
- ASTM standards for testing for corrosion and HVAC tubes (P-NR/INEX 0978 and 0986);

- ASTM standards for testing raw gypsum (P-NR/INEX 1004);

- The 2011 INEX Employee handbook (P-NR/INEX 0872);

- The INEX Vehicle safety rules (P-NR/INEX 0873);

- INEX TV commercial (P-NR/INEX 0876);

- Plaintiffs' experts entire book (P-NR/INEX 0933);

- The expert report of Lydia Luckevich, whom the Court ruled could not testify (P-NR/INEX 0935);

- Various news articles, including one entitled "Army Recalling China-Made Black Berets" (P-NR/INEX 0936)

- Taishan "corporate structure" documents, which include deposition excerpts and for which there will be no witness to authenticate or introduce (P-NR/INEX 0937-0939);

- Timelines prepared by Plaintiffs' counsel (P-NR/INEX 0943-0944);

- Distributor (INEX) and Manufacturer Profile Forms (TG and TTP) (P-NR/INEX 0963-0966);

- 8 separate reports from the CPSC on identification of, and remediation of, corrosive drywall (P-NR/INEX 1020, 1022, 1025, 1027, 1029, 1030, 1039, 1042)

- Hundreds of pages of website printouts of CPSC recall notices from 2005 to 2006 (P-NR/INEX 1050-1054);

- CPSC report on strengthening relationship with China (2007) (P-NR/INEX 1055)

- A PowerPoint presentation from a company called Environ, who is not involved in this trial, entitled: "Proposed Mechanism for the Release of Reduced Sulfur Compounds from Corrosive Imported Drywall" (P-NR/INEX 1059);

- Reports from the EPA and Florida Department of Health on corrosive drywall (P-NR/INEX 1060-1061);

- A report from the National Institute of Standards and Technology entitled: "Performance of Physical Structures in Hurricane Katrina and Hurricane Rita: A Reconnaissance Report" (P-NR/INEX 1071);

- A bulletin from Powell Electrical Group, who is not involved in this trial, entitled: "Technical Brief # 80: Switchgear in a Sulfur Rich Environment (P-NR/INEX 1072);

- 7 articles from Underwriters Laboratories, Inc. on various technical matters relating to sheathed cables, plugs and receptacles, electrical safety, counterfeit UL marks, and (our favorite) "Warns of Counterfeit Extension Cords" (P-NR/INEX 1073-1079;

- NASA photographs of "Silver Whiskers" and technical information (P-NR/INEX 1081);

- Hundreds of close-up photographs of outlets, electrical wiring, and HVAC coils in various homes (P-NR/INEX 1088-93);

- Field notes from inspections of unknown persons (P-NR/INEX 1095-1099);

- Field notes from inspections of Plaintiffs' counsel (Cayce Peterson) (P-NR/INEX 1100-1104);

- A drywall analysis report from the Graynar house in Florida (P-NR/INEX 1287); and

- Chinese Drywall Removal Guidance prepared by a group calling themselves The Florida Professional Coalition of Chinese (reactive) Drywall (P-NR/INEX 1288).

And these are the ones that are still listed on Plaintiffs' exhibit list! Numerous other irrelevant, inadmissible exhibits were still on the list until they were removed during the course of the meeting.

And then, last evening at 10:51 pm, we were informed by Mr. Irpino that Plaintiffs intend to use even more new exhibits. Plaintiffs had originally used the improper "catch-all" designation of "Any exhibit to any deposition taken in this matter." Plaintiffs now plan to use the exhibits from three different depositions, that have NOT EVEN been specifically listed on

Plaintiffs' list. Mr. Irpino admonishes in the email for Interior Exterior to review those new designations and let us know if Interior Exterior objects.[2]

The prejudice to Interior Exterior is manifest. Interior Exterior has incurred thousands of dollars in copying cost alone for the thousands of pages of irrelevant exhibits that Plaintiffs originally included on their list but have since remove. More importantly, however, counsel has literally spent days reviewing these exhibits, discussing these exhibits, and meeting in an attempt to resolve disputes as to these exhibits. This time has been at the expense of trial preparation. On the 20th alone, counsel for Interior Exterior and North River combined spent over 12 hours attempting to meet, and then meeting, on Plaintiffs' patently overbroad list of exhibits. Trial preparation meetings had to be postponed and delayed, and a day that was planned to be devoted to preparing opening statements and witness outlines was instead spent "meeting and conferring" on exhibits.

Only no meaningful "meet and confer" actually occurred. That supposedly may take place before the Court's 3 pm deadline on the 21st (today) for objections to exhibits to be submitted to the Court. Simply put, it is unfair for Interior Exterior to have to try a case by ambush and obstructionist tactics, which at this point we can only assume are an intentional effort by Plaintiffs to prevent meaningful trial preparations.

In light of the prejudice caused by Plaintiffs' actions, Interior Exterior moves for an order striking Plaintiffs' exhibits referenced above. Additionally, for the same reason and because Plaintiffs' counsel were not prepared to meet and confer at the agreed time on any objections to its exhibits, Interior Exterior moves for an order striking Plaintiffs' objections to Interior Exterior's exhibits.

---

[2] Please see a copy of Anthony Irpino email of November 20, 2012, attached as exhibit "A" – which was essentially sent ONE BUSINESS DAY BEFROE THE START OF TRIAL. Please note that this is a formal objection to the continued efforts by the Plaintiffs to conduct a trial by ambush.

Respectfully submitted,

*Richard G. Duplantier, Jr.   /s/*
Richard G. Duplantier, Jr. (# 18874)
Lambert J. Hassinger, Jr. (# 21683)
Benjamin R. Grau (#26307)
Carlina C. Eiselen, (# 28524)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802 / Fax:   (504) 525-2456
rduplantier@gjtbs.com /jhassinger@gjtbs.com
bgrau@gjtbs.com / ceiselen@gjtbs.com
*Counsel for Defendant, Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, LLC*

**Certificate of Service**

The undersigned certifies that this document has been served on Plaintiffs' Liaison counsel Russ Herman and Defendants' Liaison Counsel Kerry Miller, by email and United States Mail, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accord with the procedures established in MDL 2047, on the 21st day of November, 2012.

*Richard G. Duplantier, Jr.   /s/*
RICHARD G. DUPLANTIER, JR.