UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : : | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO ALL CASES.**

## ORDER & REASONS

Before the Court are four related Motions arising from claims by Plaintiffs-Intervenors against Defendant Interior Exterior ("INEX") and its excess insurer, Defendant North River Insurance Company ("North River"). INEX and North River each filed a Motion in Limine concerning the appropriate standard for determining the liability of a seller of a defective product.[1] Each defendant also filed a Motion in Limine to exclude evidence or argument relating to various listed topics.[2] The Court received and reviewed briefing from the parties and heard oral arguments from counsel. The Court has considered these arguments in light of the applicable law and relevant facts and now issues this Order and Reasons.

**I.   Background**

The North River Insurance Company is a defendant in two omnibus class action

---

[1] These Motions are styled as: (1) North River's Motion in Limine Concerning Standard for Good Faith Seller's Knowledge (R. Doc. 16074); and (2) INEX's First Motion in Limine Regarding the Standard in Redhibition (R. Doc. 16077).

[2] These Motions are styled as: (1) Motion in Limine of the North River Insurance Company (R. Doc. 16075); and (2) INEX's Second Motion in Limine Regarding Irrelevant and/or Prejudicial Evidence (R. Doc. 16084).

-1-

complaints in MDL 2047: *Silva v. Arch Insurance Co.,* Case No. 09-8034, and *Amato v. Liberty Mutual Insurance Co.,* Case No. 10-923.  The claims against North River arise from its role as an excess insurer for Interior Exterior Building Supply, L.P. and Interior Exterior Enterprises, LLC (collectively "Interior Exterior" or "INEX"), co-defendants and suppliers of Chinese drywall, during the time period in question when Chinese drywall was sold, distributed, and installed into homes in Louisiana and other states.[3]  These claims are based on the redhibition articles of the Louisiana Civil Code, which provide a remedy for buyers of defective products.[4]

In the spring of 2011, after a period of discovery, Interior Exterior and its primary insurers, Arch Insurance Co. and Liberty Mutual Insurance Co., entered into a class action settlement agreement.  *See* (R. Doc. 8628-3).  The Interior Exterior Class Settlement Agreement provides class members access to compensation from a fund representing the full policy limits of Arch and Liberty, as well as an assignment to pursue North River for $72,000,000 under its excess policies.  *See id.*  On May 13, 2011, the Court preliminarily approved the Settlement Agreement and entered a stay on the litigation of claims against the settling defendants, pending final approval of the Settlement Agreement.  *See* (R. Doc. 8818).  The final fairness hearing on the Settlement Agreement began on November 13, 2012.  *See* (R. Doc. 14560-2).

North River declined to participate in the Interior Exterior Settlement Agreement, arguing that Interior Exterior is either: (1) not liable for the damages caused by the Chinese drywall; or (2) liable only as a good-faith seller.  In either case, North River argues that its

---

[3] See *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2012 WL 92498, at *1-2 (E.D. La. Jan. 10, 2012), for a more complete history of this matter.

[4] The import, background, and application of the redhibition articles receive extensive treatment below in Section II.B.

excess policy would not be reached.

Following the Interior Exterior Settlement Agreement, the Knauf Defendants, manufacturers of the majority of Chinese drywall with which Interior Exterior was involved, entered into a class settlement agreement with the Plaintiffs' Steering Committee ("PSC"). *See* (R. Doc. 12061-5). On January 10, 2012, the Court preliminarily approved the Knauf Settlement Agreement and stayed litigation against the Knauf Defendants pending final approval of the Agreement. *See* (R. Doc. 12138). The finalization of the Knauf Settlement Agreement is conditioned upon the participation and contribution of homebuilders, installers, suppliers, and these entities' insurers, including North River. *See* Prospective Insurer Agreement, (R. Doc. 12061-5). North River stands by its defenses and has chosen not to participate in the Interior Exterior Settlement Agreement or the Prospective Insurer Agreement.

On March 19, 2012, the Court lifted the stay on litigation against North River to allow discovery and to schedule several mediations and an ultimate trial against North River. (R. Doc. 13024). On May 15, 2012, a Rule 30(b)(6) deposition of North River's corporate representative took place in New Jersey. Then, on May 31, 2012, a mediation of the claims against North River occurred in Chambers. After approximately five hours of attempted mediation, it became apparent that a resolution would not be reached. *See* (R. Doc. 14558).

In June of 2012, the Court held status conferences to discuss the North River-related claims and determined that a bellwether trial would help inform the parties regarding both the liability of Interior Exterior, as the insured of North River, and also Interior Exterior's good or bad faith. The Court scheduled the bellwether trial on these issues to commence on November 26, 2012. The issue of damages will be resolved at a later date, if necessary. *See* (R. Docs.

14686, 15229). On July 10, 2012, the Court met with counsel and directed each side to select six cases. The parties conducted discovery on these cases and selected the cases for the bellwether trial from this pool. The parties, having completed trial case selection, filed the instant Motions in preparation for the bellwether trial. The Court held a hearing and heard counsel's oral arguments on these and several other Motions on November 16, 2012.

## II. Defendants' Motions Regarding the Standard of Knowledge for Determining the Liability of a Seller of a Defective Product

As noted above, on November 2, 2012, North River and INEX filed Motions seeking to establish a narrow standard for determining the liability of a seller of a defective product. The nature and extent of such a seller's liability is based on the seller's knowledge of the defect, as explained further below. In essence, if the seller lacks the requisite knowledge of the defect, the seller is in good faith and liable only to refund the purchase price and interest. If however the seller has the requisite knowledge, the seller is in bad faith and responsible for full damages. The instant Motions urge that the Court require the Plaintiffs-Intervenors to demonstrate actual knowledge, or another high standard of knowledge, before finding that INEX was a bad-faith seller. Because these Motions raise substantially similar arguments, the Court will describe them individually and proceed to analyze them together.

### A. Present Motions

#### 1. North River

North River filed the present Motion seeking to exclude all testimony, documentary evidence, or argument based on any standard of knowledge for the determination of a seller's good faith that is less than actual knowledge. According to North River, the failure of the Court to enter such an instruction will result in a confused and misled jury and an inevitable retrial.

North River raises the following arguments in support of its Motion.  First, North River argues that the applicable articles of the Louisiana Civil Code refer only to knowledge and that judicial interpretation of that standard to include constructive knowledge is improper.

Second, North River notes several examples of statutes in other areas of the law in which the Louisiana legislature has employed the phrase "knew or should have known" in defining a liability standard.  Because the legislature did not use those words or a similar phrase here, North River argues, the Legislature must have intended a higher standard for determination of good faith vel non in redhibition.

Third, North River argues that Louisiana's law of redhibition comprises two principles that are incompatible with a standard that includes constructive knowledge.  First, the Code distinguishes between manufacturers, who are charged with knowledge of all defects in products they manufacture, and sellers, who are not so charged in general. Second, according to North River's argument, sellers have no duty to inspect products for redhibitory defects prior to sale. North River argues that, when a seller cannot be presumed to know of a defect and has no duty to inspect, only proof of actual knowledge will prove the seller's bad faith.

Fourth, North River argues that, although many Louisiana appellate courts and federal courts have applied a "knew or should have known" standard, these courts committed one of several serious errors of law.  Alternatively, North River argues that the majority of these courts' opinions have been abrogated by a subsequent decision of the Louisiana Supreme Court or can be distinguished from the present case.

Fifth, North River takes note of an apparently conflicting line of jurisprudence, in which courts have held sellers liable in redhibition for defects that were obvious to the seller (but not to

the buyer) at the time of sale and refused to allow sellers to escape liability when they have turned a blind eye to such defects. North River argues that these cases do not represent an abrogation of the actual knowledge standard, and that they have only a narrow field of application.

        2.    *INEX*

INEX's First Motion in Limine Regarding the Standard in Redhibition was filed on the same day as North River's Motion discussed above. (R. Doc. 16077). As compared with North River's Motion, INEX's Motion represents a somewhat different approach to the argument for a narrower standard.

First, INEX acknowledges that "well-settled jurisprudence" applies a broader standard than actual knowledge in redhibition claims. INEX argues however that these decisions represent an exception to the actual knowledge standard, and a narrow exception at that, rather than a broadening of the standard. According to INEX, the "constructive knowledge exception" applies only where: (a) a seller conducts an inspection; and (b) any reasonable inspector would have discovered the defect during that inspection. Left unsaid, but implicit in INEX's argument, is that the "constructive knowledge exception" does not apply here because INEX did not conduct an inspection, or, if it did conduct an inspection, its failure to discover the defect was not the result of a failure to exercise ordinary care in performing that inspection.

Second, INEX explicitly argues that no authority exists for imposing liability in redhibition on a seller that overlooks a suspicious condition that would have led a reasonable inspector to perform further testing, which would in turn have revealed the defect, when the relationship between the suspicious condition and the defect is unknown or a matter of dispute.

Third, INEX argues, as did North River, that a seller has no duty to inspect goods for latent or hidden defects. INEX urges the Court to prohibit Plaintiffs from presenting argument and evidence intended to impute knowledge of the defectiveness of the imported drywall based on what INEX should have known as a prudent importer or should have discovered based on reasonable inspection practices.

### 3. *Plaintiffs-Intervenors' Opposition*

The Plaintiffs-Intervenors (hereafter "Plaintiffs") filed a single Memorandum in Opposition to both North River's and INEX's Motions. (R. Doc. 16147). The Plaintiffs first argue that the restrictive interpretation of the knowledge standard advanced by INEX and North River ignores, and would frustrate, the underlying purpose of the redhibition action, namely protection of innocent consumers from latent or hidden defects.

Second, Plaintiffs argue that a long line of decisions, including decisions from the Louisiana Supreme Court, articulates and applies a standard that includes both actual and constructive knowledge, often employing the phrase "knew or should have known," in distinguishing between good-faith and bad-faith sellers.

Third, Plaintiffs argue that these decisions, in addressing a variety of factual circumstances, have effectively expanded the standard to include constructive knowledge, rather than carving out a limited and narrowly applied exception as Defendants suggest.

Fourth, Plaintiffs argue that the line of cases establishing seller liability for obvious or discoverable defects cannot be set aside as a matter of law in response to a motion in limine. Plaintiffs argue that the question of whether a particular defect is obvious or discoverable, and whether a seller acted reasonably under the circumstances, are necessarily questions of fact to be

determined at trial.

Fifth, Plaintiffs argue that INEX's assertion that liability attaches only when a seller first conducts an inspection is belied by examples of decisions that attach liability based only on what a reasonable seller would have discovered, without addressing whether or not the seller performed any inspection.

Sixth, Plaintiffs dispute Defendants' assertion that sellers owe no duty to inspect for defects under any circumstances. Plaintiffs point to the decision of an intermediate appellate court in Louisiana which identifies a burden-shifting approach, according to which, if a plaintiff first establishes that a reasonable consumer would expect a seller to conduct an inspection, the burden then falls on the seller to show either that a reasonable inspection was made or that no reasonable inspection would have revealed the defect.

    *4. INEX's Reply*

INEX filed a Reply Memorandum in response to the PSC's opposition. (R. Doc. 16260). INEX reiterates its argument for a narrow conception of a seller's duty to inspect. INEX characterizes those decisions finding such a duty as creating a "used-car exception." INEX also argues that, by allowing testimony and argument as to the nature of a seller's duty, this Court will "send sellers in Louisiana down an entirely new path, a path that requires a seller to become a de facto manufacturer and discover . . . a latent defect no matter what means are required."

  **B. Law & Analysis**

The parties agree that the substantive law applicable to the present bellwether cases is the law of Louisiana. As noted above, the upcoming bellwether trial will address only Plaintiffs' claims in redhibition. Redhibition is codified in Louisiana Civil Code article 2520, which

provides that "[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold." This article then defines a redhibitory defect as follows:

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price. La. Civ. Code art. 2520.

Redhibition also requires that "[t]he thing sold . . . be reasonably fit for its ordinary use." La. Civ. Code art. 2524.

The scope of a non-manufacturer seller's damages under redhibition is based upon the seller's knowledge of the redhibitory defect. Commonly, a seller with the requisite knowledge is described as a bad-faith seller and a seller without the requisite knowledge a good-faith seller. The bad-faith seller rule is codified in article 2545 which provides, in relevant part, as follows:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees.

Article 2531 governs liability for a good-faith seller is Article 2531, and provides, in relevant part, as follows:

> A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails to do so, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.

As is apparent from the above description of the parties' Motions, the parties dispute

what level or kind of knowledge a plaintiff must prove in order to establish that a seller was in bad faith at the time of the sale of a product with a redhibitory defect. This Court's assessment of the state of Louisiana law on this point appropriately begins with the Louisiana Supreme Court's most recent in-depth explanation of the roots of the civilian concept of redhibition, which can be found in the Court's 1992 opinion in *Young v. Ford Motor Co., Inc.*, and from which an extensive quotation is warranted:

> The action of redhibition originated in Roman law to protect buyers of slaves and animals from corrupt dealers. This important aspect of our current law on sales (i.e., this system of implied warranty against latent defects and vices) was fully incorporated into Louisiana law.
> In Roman times, this doctrine originally applied primarily regarding the sale of slaves and animals, for latent defects such as diseases, tendency of the slave to run away, [and] an animal's propensity for kicking or being difficult to ride. The basic purpose of the remedy was to return the parties to their original positions: to restore the status quo. The vendor had to return the price of the goods, plus interest, and any costs that the vendee sustained in preserving the goods.
> In Louisiana Civil Code of 1808, Article 66 stated:
>
> The seller is bound to declare to the buyer the defects of the thing sold, as far as they are known to him, and if he does not do it, the sale shall be cancelled or the price shall be diminished according to the kind of defects, and the seller shall be liable to damages towards the buyer by the following rules.
>
> Article 71 of the 1808 Code stated:
>
> If the seller was acquainted with the defects of the thing, he is liable to all damages towards the buyer, besides the restitution of the price he may have received.
>
> Thus, in Louisiana the vendee was protected against vices that were not apparent at the time of the sale. The seller in good faith had only to restore the price paid and any expenses incurred, while the seller in bad faith was also liable in damages. The purpose of the redhibition action in Louisiana, as was the case in Roman law, has been to restore the status quo.
> It was in the early years of this century that this court first imputed knowledge of a product's defect to a manufacturer-vendor. This jurisprudential rule has been considered "settled" since at least 1953.

> In contrast with the Roman and civilian principles, the English doctrine of caveat emptor, foreign to the civil law, long prevailed in the common law, affording little protection at all to vendees. Gradually, the concept of "reliance" surfaced in order to enable a vendee to seek redress in a breach of warranty situation, but often only in the case of an express warranty. It was only in the 19th century that an implied warranty of merchantability found its way into the common law.
> Thus, from a historical perspective, the civil law has always recognized and sought to remedy the problem of latent defects in goods by restoring plaintiffs to the same position they would have occupied had the redhibitory defect not caused the failed performance.

*Young v. Ford Motor Co., Inc.*, 595 So. 2d 1123, 1127-28 (La. 1992) (internal citations, quotation marks, and footnotes omitted).

This Court, in making its *Eerie* calculation of the state of Louisiana law, notes that the Louisiana Supreme Court has not yet definitively characterized the knowledge standard that would apply in this case, but neither has it left the question entirely open. The Court has not yet used the phrase "knew or should have known" in an opinion that also applied that standard, but it has used the phrase. *See, e.g.*, *Spillers v. Montgomery Ward & Co.*, 294 So. 2d 803, 807 (La. 1974). Furthermore, the Louisiana Supreme Court has on several occasions denied writs or affirmed appellate courts that have both articulated and applied a "knew or should have known" standard. *See, e.g.*, *Picolo v. Flex-A-Bed, Inc.*, 466 So. 2d 652, 654 (La. App. 5 Cir. 1985) *writ denied*, 467 So. 2d 1134 (1985) ("A non-manufacturer vendor of a defective product is liable for damages . . . only if he knew or should have known that the product was defective and he failed to declare the defect to the vendee."); *Coleman Oldsmobile, Inc. v. Newman & Associates, Inc.*, 477 So. 2d 1155, 1158 (La. 1985) *writ denied*, 481 So.2d 1334 (1986) (affirming trial court's finding that proof of repairs to an engine did not suffice to demonstrate that the seller "should have been aware of the alleged redhibitory defects at the time of sale"); *Harris v. Atlanta Stove*

*Works, Inc.*, 428 So. 2d 1040, 1043 (La. App. 1 Cir. 1983) *writ denied,* 434 So. 2d 1106 (1983) ("A non-manufacturer seller of a defective product is responsible for damages . . . only if he knew or should have known that the product sold was defective, and failed to declare it."); *Lacey v. Baywood Truck & Machinery*, 381 So. 2d 863, 866 (La. App. 1 Cir. 1980), *aff'd sub nom. Capital Bank and Trust Co. v. Lacey*, 393 So. 2d 668 (1981) (affirming trial court's award of attorney's fees even though the plaintiff did not prove actual knowledge because the seller conducted an extensive overhaul of the truck prior to sale).[5]

      This Court therefore conforms to the great weight of authority in declaring that a "knew or should have known" standard will govern this bellwether trial.  As to the subsidiary disputes over the existence and extent of a seller's duty to inspect goods manufactured by another, a reasonableness standard governs.  Reviewing courts are unanimous that sellers owe no general duty to inspect for hidden defects, but the absence of a general rule does not indicate that sellers never owe a duty to inspect under any circumstances.  *See, e.g.*, *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993); *Harris*, 428 So. 2d at 1043.  To the contrary, courts have held sellers liable when the circumstances dictated that a reasonable seller would have

---

[5] The United States Court of Appeals for the Fifth Circuit has not had occasion to articulate the appropriate knowledge standard, but several courts within this Circuit have reviewed Louisiana jurisprudence and employed a "knew or should have known" standard.  *See, e.g.*, *Jackson v. Pneumatic Production Corp.*, Civ. A. 00-3615, 2001 WL 1327656 (E.D. La. Oct. 26, 2001); *Zehner v. Nordskog Indus., Inc.*, Civ. A. 92-2508, 1992 WL 233984 (E.D. La. Sept. 2, 1992); *Williams v. Toyota of Jefferson, Inc.*, 655 F. Supp. 1081, 1086 (E.D. La. 1987); *but see Morris N. Palmer Ranch Co. v. Campesi*, 647 F.2d 608, 613-14 (5th Cir. 1981) (affirming the district court's dismissal of a claim in the absence of evidence of actual knowledge and where the "only shred of evidence [of constructive knowledge] was an admission by [the seller] that he knew that parentage problems had occurred in some of the regions of Quebec from which he occasionally purchased cattle.  This falls short of proof that Palmer knew that some of the cattle he sold to Campesi had such problems.").

discovered the defect, whether because the defect was obvious or apparent, or because a reasonable seller would have conducted an inspection or otherwise acted in a way that would have revealed the defect. *See Boos v. Benson Jeep-Eagle Co.*, 98-1424 (La. App. 4 Cir. 6/24/98), 717 So. 2d 661, 666 *writ denied sub nom. Boos v. Benson Jeep Eagle Co.*, 98-2008 La. 10/30/98, 728 So. 2d 387 ("[W]here it is reasonable to expect that an inspection was made by the [seller], the burden is on the [seller] to show that a reasonable inspection was made and no defects were discovered, or that no inspection was made but the defect was of a nature that, more probably than not, it would not have been discovered by such an inspection."); *Meche v. Harvey, Inc.*, 95-848 (La. App. 3 Cir. 12/6/95), 664 So. 2d 855, 859 *writ denied,* 96-0084 La. 3/8/96, 669 So. 2d 402 (affirming the trial court's decision to award attorney's fees where telltale signs of body repair on the vehicle would have immediately been discovered by anyone with minimal experience); *Lacey*, 381 So. 2d at 867; *Williamson v. Strange*, 323 So. 2d 875, 879 (La. App. 2 Cir. 1975) ("There was no constructive knowledge of the imperfections since these could not be reasonably discovered by defendant in the exercise of ordinary care.").

In conclusion, the Court holds that the standard of knowledge applicable to the determination of INEX's good or bad faith is as follows: INEX was in good faith if, at the time of the sale, it did not know, and a reasonable seller in its position would not have known, of the defect in the drywall. If at the time of the sale INEX actually knew of the defect, should have known of the defect based on actions it in fact took, or committed an unreasonable act or omission without which the defect would have been revealed, INEX was in bad faith. The parties' remaining disputes, including whether the defect in the drywall sold by INEX was "apparent" or "hidden," and including whether INEX committed unreasonable acts or omissions

that allowed the defect to remain undiscovered, are issues of fact to be resolved by the jury.

**III.    Defendants' Motions Urging Exclusion of Evidence and Argument on Listed Topics**

These Motions filed on behalf of Defendants seek to exclude certain evidence from the upcoming bellwether trial.  (R. Docs. 16075, 16084).  Plaintiffs filed an opposition to each motion.  (R. Docs. 16155, 16156).  For the sake of simplicity and brevity, the Court will address each topic individually by describing the Defendants' argument for exclusion, the describing the Plaintiffs' counter-argument, if any, and discussing the Court's ruling.

**A.    Present Motions**

*1.    North River*

North River filed its second Motion in Limine seeking exclusion of testimony and evidence related to various listed topics.  (R. Doc. 16075).  Many of the topics, though not all, relate to the knowledge standard either directly or indirectly.

North River first argues that, as a matter of law, INEX had no duty to inspect the drywall it sold.  The Court has resolved this question by articulating the governing knowledge standard. The Court will not exclude evidence or argument relating to INEX's duty to inspect.

Second, North River argues that INEX's quality control procedures are irrelevant because the defect is not observable.  The Court has resolved this question by articulating the governing knowledge standard.  The Court will not exclude evidence or argument relating to INEX's quality control procedures or lack thereof.

Third, North River argues that a "should have known" standard is inappropriate.  The Court has resolved this question by articulating the governing knowledge standard.

Fourth, North River argues that evidence indicating that INEX sold drywall that was

heavier or more brittle than domestic drywall should be excluded.  The Court has resolved this question by articulating the governing knowledge standard.  The Court will not exclude evidence or argument relating to the characteristics of the drywall INEX sold.

Fifth, North River argues that evidence indicating that certain individuals expressed to INEX a preference for domestic drywall should be excluded.  The Court has resolved this question by articulating the governing knowledge standard.  The Court will not exclude evidence or argument relating to preferences expressed by INEX's customers.

Sixth, North River argues that evidence indicating that some of the drywall INEX sold failed to comply with certain labeling standards should be excluded.  The Court has resolved this question by articulating the governing knowledge standard.  The Court will not exclude evidence or argument relating to the drywall's compliance with labeling standards.

Seventh, North River argues that the testimony of Johnny Odom should be excluded. The Court has previously granted North River's separately filed Motion in limine on this issue. (R. Doc. 16255).

Eighth, North River argues that evidence of any act or omission by INEX after it stopped selling defective drywall should be excluded.  Plaintiffs argue that INEX's post-sale conduct is relevant because its failure to warn its customers tends to show that INEX was willfully blind to the defect even before it stopped selling the defective drywall.  The Court has resolved this question by articulating the governing knowledge standard.  The Court will not exclude evidence or argument relating to INEX's post-sale conduct.

Ninth, North River argues that evidence indicating that INEX had no formal complaint department should be excluded.  Plaintiffs argue that INEX's lack of a complaint department is

relevant to its good or bad faith.  The Court has resolved this question by articulating the governing knowledge standard.  The Court will not exclude evidence or argument relating to INEX's complaint procedures or lack of a complaint department.

Tenth, North River argues that reference to or discussion of articles that appeared in trade journals after INEX stopped selling defective drywall should be excluded.  Plaintiffs argue that such articles reflect facts that were known or knowable at the time INEX sold the defective drywall. The Court has resolved this question by articulating the governing knowledge standard.  The Court will not exclude evidence or argument relating to articles appearing in trade journals after INEX stopped selling defective drywall.

Eleventh, North River argues that reference to or discussion of phosphogypsum should be excluded.  Plaintiffs argue that phosphogypsum is relevant because it also represents a problem with imported drywall and because articles and news reports about phosphogypsum appeared while INEX was selling defective drywall.  The Court declines to exclude in limine all references to phosphogypsum but will rule on appropriate objections at trial if necessary.

Twelfth, North River argues that reference to or discussion of the scope or cost of remediation of a home contaminated by defective drywall should be excluded.  Plaintiffs argue that such discussion is relevant to show the scope of the risk disregarded by INEX.  The Court agrees that the evidence is relevant under Rule 401 of the Federal Rules of Evidence, but finds that the probative value of the evidence is outweighed by other factors including the risk of unfair prejudice.  Therefore, the Court will exclude evidence of the scope or cost of remediation of a home contaminated by defective drywall pursuant to Rule 403 of the Federal Rules of Evidence.

Thirteenth, North River argues that reference to or discussion of alleged bodily injuries attributable to defective drywall should be excluded. Plaintiffs argue that such discussion is relevant to show the scope of the risk disregarded by INEX. The Court agrees that the evidence may be relevant under Rule 401 of the Federal Rules of Evidence, but finds that the probative value of the evidence is outweighed by other factors including the risk of unfair prejudice. Therefore, the Court will exclude evidence of alleged bodily injuries pursuant to Rule 403 of the Federal Rules of Evidence.

Fourteenth, North River argues that reference to or discussion of any party's settlement or settlement negotiation should be excluded. Plaintiffs do not oppose this argument. The Court will therefore exclude any reference to any party's settlement or settlement negotiation.

Fifteenth, North River argues that reference to or discussion of any party's failure to settle should be excluded. Plaintiffs do not oppose this argument. The Court will therefore exclude any reference to any party's failure to settle pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

Sixteenth, North River argues that reference to or discussion of Knauf's or Banner Supply's knowledge of the presence of sulphur in drywall should be excluded. Plaintiffs argue that such evidence is relevant. The Court has resolved this question by articulating the governing knowledge standard. The Court will not exclude evidence or argument relating to what other manufacturers and distributors of defective drywall knew.

Seventeenth, North River argues that reference to or discussion of this Court's jurisdictional rulings should be excluded. At a hearing on November 16, 2012, the Court accepted a stipulation from the parties to omit such discussion. This paragraph is thus denied as

moot.

North River's eighteenth, nineteenth, and twentieth arguments seek to exclude reference to or discussion of this Court's pretrial rulings and the parties' pretrial filings. Plaintiffs oppose a general exclusion of such references because of the possibility that these topics could become relevant. The Court will exclude evidence of the Court's pretrial rulings and parties' pretrial filings.

        2.     *Interior Exterior*

Interior Exterior's second Motion also lists several topics regarding which it seeks to exclude evidence and testimony. (R. Doc. 16084). As with North River's Motion, many but not all of the topics relate to the appropriate knowledge standard discussed above. The Court's description of INEX's Motion will omit those paragraphs that duplicate arguments made by North River.

INEX argues first that any evidence of, or argument relating to, INEX as an "importer" should be excluded. Plaintiffs argue that INEX's role as an importer establishes its place in the redhibition liability scheme. The Court has resolved this question by articulating the governing knowledge standard. The Court will not exclude evidence or argument relating to INEX's status as an importer.

Second, INEX argues that any evidence of, or argument relating to, reports of problems with other products manufactured in China, including lead-based paint in toys, should be excluded. The Court agrees that the evidence is relevant under Rule 401 of the Federal Rules of Evidence, but finds that the probative value of the evidence is outweighed by other factors including the risk of unfair prejudice. Therefore, the Court will exclude evidence of reports of

problems with other products manufactured in China pursuant to Rule 403 of the Federal Rules of Evidence.

### IV.   Conclusion

For the foregoing reasons, **IT IS ORDERED** that: (1) North River's Motion in Limine Concerning Standard for Good Faith Seller's Knowledge (R. Doc. 16074) is **DENIED**; (2) INEX's First Motion in Limine Regarding the Standard in Redhibition (R. Doc. 16077) is **DENIED**; (3) the second Motion in Limine filed on behalf of North River (R. Doc. 16075) is **GRANTED IN PART AND DENIED IN PART**; and (4) INEX's Second Motion in Limine Regarding Irrelevant and/or Prejudicial Evidence (R. Doc. 16084) is **GRANTED IN PART AND DENIED IN PART**.

New Orleans, Louisiana this 21st day of November, 2012.

_____
Eldon E. Fallon
United States District Judge