**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| IN RE:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | DOCKET NO. 2:12-mc-00573 MDL NO. 2047 (Eastern District of Louisiana) |

**RESPONSE IN OPPOSITION TO MOTION TO QUASH**

## I.  INTRODUCTION

Respondent's, Class Counsel in MDL No. 2047, submit this Response in opposition to Non-Party Witness Ernest Vitela's Motion to Quash or Modify Subpoena under Rule 45.    Mr. Vitela is still an objector to a class action settlement pending before the Honorable Eldon E. Fallon in the Eastern District of Louisiana.   Over Mr. Vitella's objection, Judge Fallon previously ordered that "all noticed depositions for which valid service has been effected shall proceed." After evading service for several weeks, Mr. Vitella was recently, validly served with a subpoena for his long-ago noticed deposition.   As the deposition of Mr. Vitela has already been authorized by the MDL court, Class Counsel should be permitted to conduct his deposition.  Mr. Vitela's motion should be denied.

## II.  BACKGROUND FACTS

On September 4, 2012, the Plaintiffs' Steering Committee in MDL 2047 and Settlement Class Counsel filed a motion ("Final Approval Motion") seeking final approval of five separate, but inter-related, class settlements with (1) Interior Exterior Building Supply, LP (the "InEx Settlement"); (2) the Banner entities (the "Banner Settlement"); (3) L&W Supply Corporation and USG Corporation (the "L&W Settlement"); (4) the Knauf Defendants (the "Knauf Settlement");

1

and (5) more than 700 additional Participating Builders, Suppliers, Installers, and their Participating Insurers (the "Global Settlement"). If approved, these settlements will provide much-needed relief to thousands of homeowners, commercial building owners and tenants who were afflicted by drywall imported from China ("Chinese Drywall") following Hurricanes Katrina and Rita in 2005. Far too many victims of Chinese Drywall have been waiting far too long to have their properties repaired and to be compensated for their other losses. In combination, these five inter-related class settlements will make available an estimated $1.1 billion in remediation and cash benefits to Chinese Drywall claimants, which is an excellent result under the circumstances.

On September 28, 2012, the last day of the opt-out/objection period, seven objectors, including Mr. Vitela and his company, E&E Construction Co., suddenly decided to retain counsel and file boiler-plate objections to the Global Settlement. These objectors are all represented by Christopher A. Bandas, Esq., a well-known serial, "professional" objector to class action settlements.[1] These individuals and their alias companies have no Chinese Drywall claims

---

[1] *See* Class Counsel's Omnibus Response to the Bandas Objectors' Motion to Dismiss Objection at 3-7 (citing cases) [MDL Rec. Doc. No. 15981]. Therein, Class Counsel provided the Court with several orders from courts around the country, which were severely critical of Mr. Bandas. For example, in *Brown v. Wal-Mart Stores, Inc.*, No. 01 L 85, Order Denying Objections to the Settlement and Fees and the Motion to Intervene and for Pro Hac Vice Admission at 2 (Ill. Cir. Ct. 14th Cir. Oct. 29, 2009), the court ruled that:

> The Bandas Objection ... is a generic boilerplate objection prepared and filed by attorneys working for their own personal benefit and not for the benefit of this Class or for those lawyers' clients. The record before the Court demonstrates that Bandas is a professional objector who is improperly attempting to "hijack" the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified "legal fees."

*Id.* (emphasis added) [MDL Rec. Doc. No. 15981-2]. *See also Kevin Embry v. ACER America Corp.*, No. C 09-01808 JW, Order Granting Plaintiff's Motion for Reconsideration; Requiring Appellate Bond (N.D. Cal. July 31, 2012) (The court required Bandas to post an appeal bond of $70,650. In so ruling the court observed that, "the Court finds that the merits of the Objector's appeal weigh heavily in favor of requiring a bond, insofar as his objections to the settlement are lacking in merit. Objector Bandas makes no objection to the terms of the settlement itself, but

objects only to attorney fees on the grounds that the documents provided in support of class counsel's request for fees were insufficient, and his contention that the quick-pay provision of the settlement agreement created a conflict between class counsel and members of the class. However, the Court carefully considered each of these objections and overruled them prior to approving the settlement."); *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, Master File No. CV-07-5944-SC, Order Granting Final Approval of Settlement with Chunghwa Picture Tubes, Ltd. at ¶7 (N.D.Cal. March 22, 2012)(overruling the objection of Mr. Bandas' objector, Sean Hull, for having "failed to submit proof or otherwise establish that he is a member of the Class, and therefore lacks standing to challenge the Settlement."); *In Re: Wal-Mart Wage and Hour Employment Practices Litig.*, MDL No. 1735 (D.Nev. March 8, 2010)(Order denying imposition of sanctions but imposing a bond of $500,000 per objector based upon the court's finding "that the objections are not supported by law or the facts and are indeed meritless" . . . "The Court will not adopt the pejorative characterization of counsel for Objectors advanced by Plaintiffs' co-lead class counsel, but does find on the basis of the briefs submitted that Objectors' counsel have a documented history of filing notices of appeal from orders approving other class actions, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class."); *Mussman v. Wal-Mart Stores, Inc.*, No. LACV-27486, Order Regarding Terry Healy's Objection and Motion to Intervene (Iowa Dist. Ct., Clinton Cty. Oct. 13, 2009)("The Court has considered all of the materials and pleadings filed of record in this case, as well as related judicial rulings. As a result, the Court concludes that attorney Christopher A. Bandas is a professional objector. The Court is concerned that attorney Bandas is seeking to wrongfully use the class action and objection process for personal gain, and without any corresponding benefit to any individual objector or the settlement class as a whole."); *Ouellette v. Wal-Mart Stores, Inc.*, No. 67-01-CA-326, Order and Final Judgment Approving Settlement Between Class Plaintiffs and Wal-Mart Stores, Inc. (Fla. Cir. Ct., Washington Cty. Aug. 21, 2009)("The Court finds that a lack of involvement and participation of the objectors and their counsel who were not present and a lack of involvement and participation of the attorneys that were present combined with their attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the class and/or class counsel. The court struck the objections of ... Kevin Dimla (represented by Christopher Bandas and Stephen P. Santiago) ... for failure of proof, failure to demonstrate participation in the class action on behalf of the class, and failure to appear at the fairness hearing. Further, the Court finds that all of the objections ... have no substantive merit and the court overrules all of the objections on that additional ground."); *Carter v. Wal-Mart Stores, Inc.*, No. 06-CP-I5-839, Order Denying Objections to Settlement Between Class Plaintiffs and Wal-Mart (S.C. Ct. Com Pleas, Colleton Cty. June 3, 2009) ("...in spite of the fact that Mr. Bandas is a serial professional objector, I have reviewed and considered the Bandas objection on its merits. The Court finds that, for a plethora of reasons, the Bandas objection lacks substantive merit."); *Conroy v. 3M Corporation*, 2006 U.S. Dist. Lexis 96169, *11 (N.D. Cal. Aug. 10, 2006)(The Court found the objections of Mr. Bandas' clients to be "patently frivolous . . . [and] bore no particular relationship to the circumstances of the settlement" and imposed a $431,167 appeal bond requirement. Mr. Bandas abandoned his appeal thereafter.).

      Only recently, Mr. Bandas has again appeared in the Eastern District of Louisiana to file boilerplate objections. This time he has filed Objections to the Economic and Property Damages Settlement Agreement in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,*

existing in any state court or the MDL.   Yet, they are making the same type of meritless objections that Mr. Bandas has employed in his history as a professional objector to class action settlements.

Immediately recognizing that these objectors and their objections were suspect, Class Counsel sought to discover the *bona fides* of the objections.   On October 4, 2012, Class Counsel served upon all of the Bandas Objectors Notices of Depositions and a First Set of Interrogatories and Requests for Production of Documents.   The Bandas Objectors objected to this discovery and answered on October 18, 2012.   Whereupon, Class counsel sought to subpoena each of the objectors to insure their attendance at the noticed depositions.

On October 24, 2012, after Class Counsel's agent sought to serve him with a subpoena,[2] Mr. Vitela moved to dismiss his objections for "personal reasons".[3]   Mr. Vitela's company, E&E Construction Co., later moved on October 30, 2012, to dismiss its objections also, quixotically, for "personal reasons."[4]   To date, neither motion has been granted by the MDL court, although motions to dismiss the objections of other objectors have been granted.   *See* Order dated November 13, 2012 [MDL Rec. Doc. No. 16229].

Class Counsel filed an Omnibus Response to the motions to dismiss objections and also moved for sanctions.[5]   These motions were heard by the Court on October 31, 2012.[6]   By Order dated November 1, 2012, the MDL court ruled that "the scope of discovery in this matter is limited

Case No. 2:10-cv-07777-CJB-SS (E.D. La. Aug. 31, 2012) [Rec. Doc. No. 101].

[2]   *See* Affidavit of Attempts regarding service of deposition subpoena on Ernest Vitela [MDL Rec. Doc. No. 16070] (ATTACHED HERETO AS EXHIBIT "A").

[3]   MDL Rec. Doc. No. 15979.

[4]   MDL Rec. Doc. No. 16040.

[5]   MDL Rec. Doc. No. 15982.

[6]   *See* Minute Entry of October 31, 2012 [Rec. Doc. No. 16055].

4

to two overarching issues, namely the standing of each objector and the basis of each objection, and the related issue of each objector's arrangement(s) or agreement(s) with counsel."[7] Whereupon, depositions of two other objectors represented by Mr. Bandas occurred. During these depositions it was discovered that Mr. Bandas solicited persons without standing to object to the Global Settlement.[8] The solicitation was boosted by proposing in his retainer agreements a $5,000 bounty as incentive to encourage them to object.

But these two depositions generated even more discovery disputes, including the ability of Class Counsel to depose the other objectors and Mr. Bandas himself.[9] The entire panoply of issues were heard by Judge Fallon on November 5, 2012. At that hearing the MDL court reiterated his findings on the scope of discovery from all of the objectors with their "professional objector counsel":

> At the last hearing I dealt with discovery disputes, I heard from the parties and I issued a ruling. Essentially, in the ruling, I defined the

---

[7] MDL Rec. Doc. No. 16056.

[8] *See* Motion for Leave of Court to File Class Counsel's Reply to the Objectors' Reckless Allegation of Barratry at Fairness Hearing [MDL Rec. Doc. No. 16289-2]

[9] One of the other objectors is Mr. Bandas' office manager, Jan Petrus. Mr. Bandas previously employed Ms. Petrus to object to the class settlement in *Vereen v. Lowe's Home Centers, Inc.*, SU-10-CV-2267B (Ga. Super. Ct., Muscogee Cty. Jan. 12, 2012)(a class action involving Chinese Drywall sold by Lowe's). Upon information and belief, Mr. Bandas and Ms. Petrus entered into a confidential settlement involving a payment of attorneys' fees to Mr. Bandas in exchange for abandoning his client's objection. *See* MDL Rec. Doc. Nos. 15981-12 & 15981-13. Not only is such legal blackmail improper, but procuring an employee to pursue objections to a class action is rife with conflicts of interest and ethical trespasses. *See also Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1092 (3rd Cir. 1976) ("an appearance of impropriety, at a minimum, ensues when an attorney class representative also serves as counsel for a class that may benefit from an equitable fund"). Moreover, the abandonment of Ms. Petrus' objection resulted in the judgment in the *Vereen* action becoming final. As a consequence, her asserting an objection to the Global Settlement in MDL 2047 because of her claim related to drywall she obtained from Lowe's, which claim was barred because of the *Vereen* settlement, was frivolous. Her objection was even more baseless since Lowe's was not even a party to the Global Settlement. Uncovering the lack of standing and solicitation to be an objector is the sort of information sought to be discovered by Class Counsel of Ms. Petrus and Mr. Vitela.

discovery first from the objectors.   The scope of the discovery that I mentioned at that time was as follows:

The information could be proceeded and processed regarding: One, the alleged standing as a settlement class member to assert objections; two, the underlying basis for the objections; and three, the objector's relationship with the professional objector counsel that the plaintiffs believe instigated this objection to the settlement.
                              * * *
I ordered the depositions to proceed with the understanding that the interrogatories would be answered and the various items of production produced prior to the depositions.

*In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, Transcript of Motion Hearing before the Honorable Eldon E. Fallon at 5-6 (E.D.La. Nov. 5, 2012)[Attached hereto as Exhibit "B"].

Mr. Bandas argued to preclude the depositions of Ms. Petrus and Mr. Vitela because they had filed motions to withdraw their objections.  *Id.* at 9-11.  But Judge Fallon rejected this motion:

With regard to the depositions of Petrus and Vitela, those are the two people who had objected and withdrew their objections?
MR. BANDAS:   That is correct, Your Honor.
THE COURT:   All right.   With regard to those individuals, it's not appropriate to serve them through counsel because he's no longer their counsel.
However, they may have some relevant information.   I really don't know at this point.   It may not be admissible, but it may be relevant. So if its valid service, I expect the people to show up. * * * But they should, and must, appear at depositions that they have received valid service in.

*Id.* at 32-33 (emphasis added).

On November 7, 2012, the court memorialized his ruling with an order stating:  "IT IS FURTHER ORDERED that all noticed depositions for which valid service has been effected shall proceed, and all validly served deponents shall appear."  *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, Order at 1-2 (E.D.La. Nov. 7, 2012)(MDL Rec. Doc.

No. 16122) [Attached as Exhibit "C"]. Not surprisingly, neither the transcript, nor the order of Judge Fallon were addressed in Mr. Vitela's motion. Nor is the fact that Mr. Bandas sought mandamus review of one of Judge Fallon's rulings regarding discovery before the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit denied this petition. *See In re Saul Soto*, No. 12-31133 (5th Cir. Nov. 8, 2012).

Following these rulings the MDL Court held its Fairness Hearing on the five inter-related settlements on Tuesday, November 13, 2012. At the conclusion of the Fairness Hearing, the Court ruled that the record would remain open for a least two weeks to allow matters such as the transcripts of the remaining objectors, etc., to be added. Whereupon, on November 19, 2012, Class Counsel perfected service of their subpoena upon Mr. Vitela for a deposition to be taken prior to the close of the Fairness Hearing record, on November 26, 2012, in Corpus Christi, Texas. *See* Subpoena and Return of Service [MDL Rec.Doc. 16268].

Having lost his bid to prevent the deposition of Mr. Vitela, Mr. Bandas is now forum-shopping for a more favorable ruling. This Court should reject the motion for the reasons set forth by Judge Fallon. as well as those set forth below.

## III. ARGUMENT

The MDL court ruled that information related to the i) standing, ii) basis for objection, and iii) the objector's relationship with the professional objector counsel are all proper subjects of inquiry to each of the objectors, including Mr. Vitela. *See* MDL Order dated Nov. 1, 2012 [MDL Rec. Doc. No. 16056]. Because the objection of Mr. Vitela and his company, E&E Construction, have yet to be dismissed, and are still the subject of a motion for sanctions in the MDL which has held open the record of the Fairness Hearing *inter alia* for this purpose, it is hardly improper, nor

harassing for Class counsel to seek to obtain discovery from a client of a "professional objector counsel." Indeed, the MDL court has ordered that this deposition may go forward. Rather than seek reconsideration of the MDL court's order, Mr. Vitela prays for an alternative result by seeking to quash the subpoena before this court. No different result is justified.

As discovery has proven that Mr. Bandas obtained his clients through solicitation by proposing that they could obtain as much as $5,000 for merely objecting to the class action settlement, both client and counsel's *bona fides* are at issue. Mr. Vitela and his counsel have willingly appeared before the MDL court which has ruled that this area of inquiry - the relationship between objector and their counsel – is an appropriate subject of discovery. Comity counsels that this ruling should be honored. *See National Union Fire Insurance Co. v. Porter Hayden Co.*, 2011 WL 6026291, *6 n. 4 (D.Nev. Dec. 2, 2011)("The court appreciates that a particular claimant may choose to style its objection to the subpoena solely as a Rule 45 motion to quash or modify the subpoena . . .. In the event the court were faced with this situation, it intends to honor the principle of uniform treatment of discovery, and would give great deference to the rulings on similar claimant objections issued by the District of Maryland."); *Association of American Physicians & Surgeons, Inc. v.Texas Medical Board,* 2008 WL 2944671, *3 (E.D.Tex. July 25, 2008)(denying motions to quash or for protective order and deferring to issuing court on the grounds that "only the issuing court has the power to act on its subpoenas.").

## III. CONCLUSION

Class Counsel have no intention of harassing Mr. Vitela. His deposition testimony is intended to determine his standing, the basis for his objection and his relationship with objector's counsel. Each of these areas of inquiry have been found to be appropriate areas of inquiry. No

prior restraint or protective order is necessary to limit the areas of inquiry to these subjects. As in the past, any improper inquiry may be immediately brought to the MDL Court who has readily made himself available to address any discovery dispute involving these matters.

WHEREFORE, Mr. Vitela's motion to Quash or Modify should be denied.

Respectfully submitted,

Dated:   November 25, 2012

/s/ Bruce W. Steckler
Bruce W. Steckler
Texas State Bar No. 00785039
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

*Attorney for Class Counsel*
*Member of MDL 2047 PSC*

Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel in MDL 2047*
*InEx, Banner, Knauf, L&W, and Global Settlement*
*Class Counsel*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

*Plaintiffs' Lead Counsel in MDL 2047*
*InEx, Banner, Knauf, L&W and Global Settlement*
*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Counsel for

Ernest Vitela and E and E Construction Co., Christopher A. Bandas and R. Joshua Koch, Jr., on

this 25th day of November, 2012.

/s/ Bruce W. Steckler
Bruce W. Steckler

# EXHIBIT  A

**Civil Action Number: MDL 2047**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF TEXAS
IN RE: CHINESE-MANUFACTURED DRYWALL PROD.LIAB. LIT.

# AFFIDAVIT OF ATTEMPTS

This is to affirm that Civil Process was attempted to __ERNEST VITELA__, person/individual named to receive service.  This service was attempted at __1404 Madrid Circle, Portland, Texas 78374__ on the date(s) & time(s) listed below. After due search by __Billy D. Deel__, process server for Texas Civil Process, Inc., 1650 S. Brownlee Blvd., Corpus Christi, Texas 78404 who performed careful inquiry and diligent attempts at the address(s) listed above and has been unable to effect process upon the person being served because of the following reasons:

October 24, 2012 @ 8:20 pm: Checked address, 1404 Madrid Circle.  Found no one at home.
October 25, 2012 @ 5:30 pm: Talked with wife who has not been home for a couple of days and she did not know when he would return.  Left my business and asked her to tell him to call me.
October 26, 2012 @ 11:00 am: Arrived at address, van was present.  Talked with his son, Eric who said his dad was not home.  He did not know when he would return.  Left business card with him to ask his dad to call.
October 26, 2012 @ 11:30 am: Received a call from Ernest Vitela who informed me he had talked with Margo with Bandas Law Firm and they had decided to dismiss him as a witness from the case as he knew nothing about faulty materials or anything about the case.

_Billy D. Deel_

**Billy D. Deel (SCH408)**
**Expiration Date: July 31, 2014**

**State of Texas**
**County of Nueces**

Before me, personally appeared the above named process server, who being first duly sworn, stated the above stated facts are true and correct, and subscribed before me on this 1st day of November, 2012.

_Rosanne Ayala_
Notary Public Signature

ROSANNE AYALA
MY COMMISSION EXPIRES
July 19, 2015

# EXHIBIT  B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  CHINESE MANUFACTURED        *   Docket 09-MD-2047
        DRYWALL PRODUCTS            *
        LIABILITY LITIGATION        *   November 5, 2012
                                    *
This Document Relates to All Cases  *   9:00 a.m.
* * * * * * * * * * * * * * * * * *


MOTION HEARING BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:


For the Plaintiffs:          Herman Herman Katz & Cotlar
                             BY:  RUSS M.HERMAN, ESQ.
                             BY:  LEONARD A. DAVIS, ESQ.
                             820 O'Keefe Avenue
                             New Orleans, Louisiana 70113



For Plaintiffs:              Levin, Fishbein, Sedran & Berman
                             BY:  ARNOLD LEVIN, ESQ.
                             510 Walnut Street, Suite 500
                             Philadelphia, Pennsylvania 19106



For Objectors:               Bandas Law Firm, P.C.
                             BY:  CHRISTOPHER A. BANDAS, ESQ.
                             500 North Shoreline
                             Suite 78401
                             Corpus Christi, Texas  78401

Case 2:09-md-02047-EEF-MBN Document 16294-1 Filed 11/25/12 Page 15 of 54
Case 2:12-mc-00375 Document 2-2 Filed in TXSD on 11/26/12 Page 31 of 99

2

APPEARANCES CONTINUED:

For Objectors:                    Koch & Schmidt, LLC
                                  BY:  R. JOSHUA KOCH, JR., ESQ.
                                  650 Poydras Street
                                  Suite 2415
                                  New Orleans, Louisiana  70130


For Objectors:                    Huseman Dodson Hummel Law
                                    Firm, PLLC
                                  BY:  PAUL DODSON, ESQ.
                                  615 N. Upper Broadway
                                  Suite 2000
                                  Corpus Christi, Texas 78401


For Knauf Entities:               Kaye Scholer
                                  BY: JAY MAYESH, ESQ.
                                  425 Park Avenue
                                  New York, New York 10022-3598


Official Court Reporter:          Jodi Simcox, RMR, FCRR
                                  500 Poydras Street
                                  Room B-406
                                  New Orleans, Louisiana 70130
                                  (504) 589-7780


Proceedings recorded by mechanical stenography, transcript

produced by computer.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:09-md-02047-EEF-MBN Document 16294-1 Filed 11/25/12 Page 17 of 54
Case 2:12-mc-00375 Document 2-2 Filed in TXSD on 11/26/12 Page 51 of 99

4

1                              **PROCEEDINGS**

2                          **(November 5, 2012)**

3                                  ******

4        (OPEN COURT)

5        **THE COURT:**  Be seated, please.  Good morning, ladies

6   and gentlemen.

7               Let's call the case, please.

8        **THE DEPUTY CLERK:**  MDL-2047, *In re:*

9   *Chinese-Manufactured Drywall Products Liability Litigation.*

10       **THE COURT:**  Counsel, make their appearance for the

11  record, please.

12       **MR. BANDAS:**  Good morning, Your Honor, Chris Bandas

13  and Josh Koch for the movants/objectors.

14       **MR. HERMAN:**  May it please the Court, Russ Herman for

15  the Plaintiff's Steering Committee.  I understand Mr. Mayesh

16  and Mr. Levin are on the phone and we represent the folks that

17  have brought the motion before Your Honor.

18       **THE COURT:**  Okay.

19       **MR. LEVIN:**  Good morning, Your Honor.  This is Levin.

20       **THE COURT:**  Okay.

21       **MR. MAYESH:**  Jay Mayesh here, Your Honor.

22       **THE COURT:**  All right.  Let me just say by way of

23  background -- I'm sorry, who's that?

24       **MR. DODSON:**  Paul Dodson on behalf of the objectors.

25       **THE COURT:**  All right.

Case 2:09-md-02047-EEF-MBN Document 16294-1 Filed 11/25/12 Page 18 of 54
Case 2:12-mc-00575 Document 2-2 Filed in TXSD on 11/26/12 Page 6 of 39

5

1          We're here today for two discovery motions which

2   are set on an expedited basis.  Let me make a comment or two

3   about the background of this matter.

4          The last hearing in this case was on October the

5   31st, less than one week ago.  I explained the background that

6   got us there in detail and I adopt it at this point.

7          At the last hearing I dealt with discovery

8   disputes, I heard from the parties and I issued a ruling.

9   Essentially, in the ruling, I defined the discovery first from

10  the objectors.  The scope of the discovery that I mentioned at

11  that time was as follows:

12          The information could be proceeded and processed

13  regarding:  One, the alleged standing as a settlement class

14  member to assert objections; two, the underlying basis for the

15  objections; and three, the objector's relationship with the

16  professional objector counsel that the plaintiffs believe

17  instigated this objection to the settlement.

18          So that was the limit of the scope of the

19  discovery.  I ruled on certain interrogatories, I excluded

20  some, allowed others.  I ruled on certain production, I

21  excluded some and allowed others.  I also indicated that I had

22  quashed the deposition of Mr. Bandas.  I felt that he was an

23  attorney and I didn't feel like the attorneys, at this stage,

24  ought to be required to give information, neither the attorneys

25  for the plaintiffs or the attorney for the objectors.

Case 2:12-md-02407-EEF-MBN Document 1629-1 Filed 11/25/12 Page 19 of 54
Case 2:12-cv-00578-EEF-MBN Document 22-2 Filed in TXSD on 11/26/12 Page 7 of 35

6

1          I ordered the depositions to proceed with the

2    understanding that the interrogatories would be answered and

3    the various items of production produced prior to the

4    depositions.  I understand that the depositions did proceed,

5    but there was some issues in the depositions and that brings us

6    to today's motions.

7          I have two motions before me today.  One filed

8    by Mr. Bandas and one filed by the class counsel.  I'll hear

9    from the parties at this time.

10          **MR. BANDAS:**  Your Honor, may it please the Court.

11          Your Honor, we had the same understanding that

12    the Court just laid out about what the scope of discovery was

13    and what the Court ruled on at our last hearing.

14          We went forward, in keeping with the Court's

15    order, with the depositions of Mr. Soto and Mr. Garcia.  We got

16    into the depositions, Your Honor, and what we came up against,

17    we thought, were the boundaries of where the Court had limited

18    the inquiry from the previous hearing we had before Your Honor.

19          Specifically, counsel, for example, in the

20    deposition of Mr. Soto started asking feelings, and the set-up

21    to the question was:  "Are you aware that Mr. Bandas has had

22    courts say negative things about him?"  He, of course, didn't

23    talk about the cases that we've won on appeal or overturned

24    cases, he just focused on the negative ones.

25          And then the follow-up question was:  "Mr. Soto,

1   how do you feel about having an attorney like that?"

2          That was a specific question in response to

3   which Mr. Dodson and his partner, Van Huseman, who were

4   retained to present the clients at deposition, Your Honor,

5   said, we think in good faith and keeping with the Court's

6   previous order said, "With all due respect, counsel, you're now

7   getting into an area where you're essentially trying to end run

8   the limitations of the Court's order by trying to get into a

9   conversation with the objector about his own personal feelings

10   about what counsel in the deposition may have been

11   representing," colored, of course, by their perspective in this

12   case about what I perhaps have done in other cases.

13          So we objected to that, being mindful, of

14   course, that counsel came to Corpus Christi; and wanting to

15   bring it to the Court's attention in the event that Your Honor

16   thought that the proceedings should go past that particular

17   boundary, we wanted to get the Court's attention and ask the

18   Court for an expedited consideration of the matter so people

19   wouldn't be inconvenienced coming back, et cetera.

20          We're here, Your Honor, just to point out what I

21   think are pretty simple and pretty clear issues that we bumped

22   up against in these depositions.  And it's our view, Your

23   Honor, that where they were trying to go was specifically into

24   the areas that the Court said you cannot go.

25          Everything else, Your Honor, we addressed.  We

1   addressed the standing issues.  I think counsel for the

2   plaintiffs had an opportunity to ask him as much detail as they

3   were satisfied with.  One of the depositions went off late into

4   the evening.

5         So I don't think there's any issues, Your Honor,

6   that they didn't have an opportunity to go sufficiently into

7   standing or the basis for the objection.  The only place that

8   we ran into trouble in the questioning was those types of

9   issues, and there weren't very many of those.

10         The second thing that we wanted to bring to the

11   Court's attention is Mr. Soto, one of the objectors, when he

12   was meeting with counsel, Mr. Dodson and Mr. Huseman, in

13   preparation for the deposition, he took some personal notes in

14   preparation of the deposition or to prepare for the deposition.

15         He had those notes with him at the deposition.

16   Counsel asked for their production.  We said -- we took the

17   position that those would be privileged because they were

18   prepared as the direct result of meeting with counsel and

19   preparing for deposition.  And so we resisted their request for

20   that, Your Honor.

21         Then the third issue is our clients produced in

22   the order in which the documents were kept in the ordinary

23   course of business, Your Honor, all of their business

24   documents.  Class counsel called it a *document dump*.  Given the

25   short time period, it was all we could do to gather the

Case 2:12-md-02373-EEF-MBN  Document 1629-1  Filed 12/25/12  Page 22 of 54
Case 2:12-mc-00573-EEF  Document 2-2  Filed in TXSD on 11/05/12  Page 26 of 35

9

1   documents and produce them.

2           We think 100 percent of all possible relevant

3   documents that the Court ordered to produce have been produced

4   in that document production; but the complaint is, "Well, they

5   should have been segregated.  They should have been labeled.

6   They should have been better organized for the deposition."

7           I understand counsel's frustration with not

8   having them, perhaps, better organized; but out of an abundance

9   of caution, Your Honor, we did not want to take the risk, given

10  the short time period and the Court's ruling, of holding

11  anything back.  And so I think the complaint with respect to

12  that was there was an over-inclusion of information.

13          The final point, Your Honor, is we had

14  understood the Court to order the depositions of Mr. Soto and

15  Mr. Garcia.  As I told the Court in our last hearing,

16  Ms. Petrus and Mr. Vitela have withdrawn their objections.

17  Class counsel has not opposed that.

18          The withdrawal, Your Honor -- and this is cited

19  in the pleadings that we filed with the court this morning in

20  response to counsel's motion for sanctions -- we understand the

21  trial judge's role under Rule 23 with respect to the withdrawal

22  of an objection in the trial court to be limited to, "Is there

23  a side deal between objector's counsel and class counsel that

24  might impact the terms of the class action settlement for all?"

25          There is no such deal in this case.  And to

1  reiterate the point that I made to Your Honor in our last

2  hearing:  I will stipulate, if class counsel moves, that I

3  would never resolve this case at any point in the litigation,

4  be it the trial court or the Court of Appeals or the U.S.

5  Supreme Court, without coming back to Your Honor and applying

6  the standards of Rule 23 to all aspects of this proceeding.

7         Nevertheless, Your Honor, the *Manual for Complex*

8  *Litigation* specifically says that the court is limited simply

9  into looking into whether or not there's a side deal that could

10  affect the outcome of the case, Your Honor.  There is no such

11  side deal.  Having exercised what we think is an election that

12  these previous objectors had to remove themselves, class

13  counsel has nevertheless sought their deposition.

14         There's nothing about those objections and

15  nothing about the terms under which they were withdrawn, which

16  is just a flat-out withdrawal, Your Honor, that could possibly

17  speak to the standing issues, which is really the main issue

18  before this Court with respect to Mr. Soto and Mr. Garcia.

19         There's no relevant information they could

20  possibly have, Your Honor, that address the fundamental and

21  very serious *Amchem* issues in this case with respect to the

22  settlement of wrongful death lawsuits that the symptoms of

23  which may not even arise until the future.

24         There's absolutely nothing in the very, very

25  broad realm of relevancy that could possibly be learned about

1  this case or the issues in this case from deposing two

2  individuals who had previously objected and are now out of the

3  case.  It's no different, in effect, Your Honor, than class

4  counsel saying, "Let's just go randomly notice the depositions

5  of unnamed class members, hoping that somehow that will inform

6  the Court's analysis about standing or the terms of the deal or

7  those issues."

8            Your Honor, over the weekend we found a case

9  that we think may be instructive to the Court.  And if I may

10  approach, and I have copies for opposing counsel.

11            **THE COURT:**  Thank you.

12            **MR. BANDAS:**  This case, Your Honor, is from last July

13  in the Eastern District of New York.  It's July 18th, 2012.

14  The issue in that case, Your Honor, was an objector who had

15  objected in a case; class counsel, similar to this case, wanted

16  to take the objector's deposition.

17            Part of the issue -- or part of the rhetoric

18  that came up in that case, similar to this case, was, "Well,

19  Your Honor, don't focus on the merits, focus on the messenger,

20  focus on the fact that objector's counsel in that case had

21  filed objections in other cases."

22            And so what class counsel sought in that

23  particular case was leave to depose the objector on the basis

24  of the objection factually standing, but also get off into the

25  issues with respect to the relationship with counsel and

Case 2:09-md-02047-EEF-MBN Document 16294-1 Filed 12/25/12 Page 25 of 54
Case 2:12-mc-00573-EEF Document 22 Filed in TXSD on 11/15/12 Page 35 of 35

12

1   counsel's other experience in objection work.

2               And, again, like this case, they focus on

3   results that are not flattering as opposed to the many

4   victories we have had, Your Honor, doing this kind of work.

5               But, nevertheless, what the court ruled in this

6   case was that the factual discovery, the deposition, wasn't

7   even relevant because there was nothing that the client could

8   say, aside from what was already in their papers and sworn

9   testimony, about their standing that could possibly impact

10  whether or not the settlement proposed in that case was legally

11  sufficient under the standards of the Second Circuit.

12              And those are similar issues that we have here

13  with respect to the standing, releases, claims, who's in the

14  case, who's not in the case.

15              And so this is a case, Your Honor, that even

16  cuts it shorter than what Your Honor ruled and that the court

17  ruled in that case, that depositions of the objector were not

18  appropriate in the first instance.

19              Nevertheless, Your Honor, we didn't contest the

20  request.  We didn't contest, obviously, the Court's ruling, we

21  went forward.  But, nevertheless, we wanted to point out, Your

22  Honor, that there are other courts that see it the same way as

23  Your Honor did, which is getting off into discovery about the

24  lawyers, A, isn't relevant; and, B, again, I've made the

25  proposed stipulation to this Court that should take that out of

1  the equation altogether.

2           Does the Court have any questions, Your Honor?

3       **THE COURT:**  No, I don't.  Thank you.

4       **MR. BANDAS:**  Thank you.

5       **THE COURT:**  Let me hear from opposing counsel.

6       **MR. HERMAN:**  Good morning, Judge Fallon, and learned

7  counsel opposite.

8           As Your Honor has already indicated, the

9  legitimate inquiry is to objector's arrangements, standing and

10  bases for the objection.

11           Jan Petrus, Paul Soto, Ronnie Garcia and Ernest

12  Vitela filed as objectors.  What did they object to?  They did

13  not object to the Knauf settlement, they did not object to the

14  Banner settlement, they did not object to the other settlements

15  of suppliers or distributors, but only as to the global

16  settlement.

17           And what did they object to?  And as I

18  understand it, the Federal Rules require that an attorney

19  certify that a pleading is accurate, particularly in a matter

20  that involves 5,000 potential claimants, depositions in foreign

21  countries, in six states over several years, and trials and

22  millions of documents that have been produced and reviewed,

23  none of which are knowledgeable by the objectors nor were they

24  participated in by their attorneys.

25           But what do they plead?  They plead that a

Case 2:99-md-02573-EEF-MBN Document 22 Filed 4/24/12 Page 27 of 54
Case 2:12-mc-00573-EEF-MBN Document 22 Filed 4/24/12 Page 27 of 54

14

1  40 percent contingency fee is unreasonable; that a class rep by

2  the name of "Hill," it's unreasonable for her to get 1 percent,

3  and the *Marathon Oil* case, obviously, is what they're referring

4  to.

5             And even though it's been posted on the Court's

6  Web site and published for months, they elected, without any

7  investigation, to file these objections at the last moment,

8  which is why we had to bring these discovery motions.

9             Now, before I get to the first issue raised by

10 counsel, which seems to be, as he indicates, rubbing against

11 the Court's order as to what can be inquired here, I'd like to

12 review this case.

13            It is our opinion that it is of paramount

14 importance, not just in this case, but in every master

15 settlement by agreement or class action which will be brought

16 in this district -- or may be brought in this district and in

17 the Fifth Circuit, and, essentially, the question is whether

18 this is emperor's new clothes; that is, whether the sophistry

19 and rhetoric of learned counsel, which is of high order, are

20 really clothing for a naked truth.

21            And what is the truth here?  Jan Petrus is an

22 employee of Mr. Bandas.  She was served by ECF and e-mail,

23 which is sufficient, and we cite to the Court 270, Federal

24 Rules Decisions 259, Article 5(b)1, 5(b)(2)(E).  Also,

25 electronic means under LexisNexis File & Serve were used, and

Case 2:09-md-02047-EEF-MBN Document 16294-1 Filed 12/05/12 Page 28 of 54
Case 2:12-mc-00573-EEF-MBN Document 22 Filed 11/13/12 Page 16 of 35

15

1    at the time Ms. Petrus was a party to the litigation by reason

2    of filing an objection.

3                On October 9th, 2012, learned counsel opposite

4    said that he would produce, quote, all objectors.  That is an

5    exhibit attached to our pleading.  Notwithstanding, Mr. Bandas'

6    multiple class action objections, in what we term a *cottage*

7    *industry* developing in this country, there was a Lowe's drywall

8    objection and a secret settlement.

9                And for learned counsel to stand before the

10   Court and say that side deals are not issues, we know that in

11   at least one drywall case there was a side deal or it would not

12   have been placed by both parties under secrecy.

13               In addition to that, Aaron Petrus, the son of

14   Jan Petrus, in two class actions, the *Milliron versus T Mobile*

15   and in the *Closson* case -- and that may be *Closson*, I'm sorry.

16   I can't read my own handwriting -- *versus Bank of America* was

17   also the objector.

18               Under those circumstances, are we not allowed to

19   inquire as to the objector's arrangements, standing and basis

20   for the objection because of the pattern of conduct which, of

21   course, bears on the other.  Objectors who have not withdrawn.

22               And what is Mr. Bandas' statement for

23   withdrawing Petrus?  He says she's being harassed.  And that's

24   the sole reason.  Well, who harassed her?  It certainly wasn't

25   the Plaintiffs' Steering Committee.  It certainly isn't this

 1   court.

 2            Now, Your Honor, we get to Mr. Vitela.  His

 3   deposition was refused, even though he was validly served.

 4   There had been an agreement originally to produce him.  And I

 5   have the transcript before Your Honor and nowhere in that

 6   transcript was there an order, an inclination or any sort of

 7   inference that their depositions would not be taken.

 8            So now we get to the deposition of Mr. Soto and

 9   the deposition of Mr. Garcia.  And I'll deal with the hand note

10   issue as it comes up.  But I think it's instructive, Your

11   Honor, since the same day this matter was argued, attorneys

12   representing the PSC were dispatched and already in Houston to

13   take these four depositions.

14            And Mr. Soto's deposition, a current objector,

15   whom we now determined has absolutely no standing to object,

16   there was never an investigation sufficient to file such a

17   scurrilous claim.

18            At page 9, he met two times with lawyers for

19   approximately eight hours, had handwritten notes, which he

20   referred to refresh his recollection.  Page 11, he met

21   Mr. Bandas through a lawyer named Chris Batman.  Chris Batman

22   is in the same offices or office building as Mr. Bandas.  We

23   don't know yet what their relationship is.

24            Batman, who recruited him -- and if Your Honor

25   will remember, we've already had a pretentious witness earlier

Case 2:09-md-02047-EEF-MBN Document 16294-3 Filed 12/05/12 Page 80 of 154
Case 2:12-mc-00573-EEF Document 2-2 Filed 11/14/XSD Filed 11/05/12 Page 80 of 35

17

1  in this case by the name of Spiderman, who was an expert in

2  drywall.  Now, we have Mr. Batman, a lawyer in Mr. Bandas'

3  office, who tells this fella, "Look, go see Mr. Bandas about

4  drywall."  That's at page 13.

5  At page 15, he didn't see the settlement

6  agreement, was not given access, nor did he reach the Web site

7  of the Court.  At page 16, he had no clients concerned about

8  Chinese Drywall.  19, he met at Mr. Bandas' house and

9  Mr. Bandas showed him pictures of drywall.  He didn't show

10  Mr. Bandas pictures of drywall; Mr. Bandas showed him pictures

11  of drywall.

12  He then at some point, at page 25, scanned the

13  Web site.  29, did not know and did not look at who the

14  participating defendants were that he was objecting to.  34,

15  understood that Bandas would negotiate or could negotiate a

16  settlement of the Bandas objection or the Soto objection.

17  35, did not know Bandas' history of objections.

18  At page 42, was objecting because attorneys get obscene fees

19  and on that basis the settlement's unfair.  At 47, did not see

20  the objections before filing.

21  At page 52, most of the 60/65 percent of the

22  drywall he ordered came from Lowe's.  He did not know that

23  Lowe's settled previously, and there is a release already -- a

24  general release of all class members in Lowe's, which we're not

25  a party to.  At page 59, he never purchased anything from Home

1  Depot.  He cannot attribute any of the photos of drywall to
2  Home Depot.
3          His friend -- or his acquaintance, Mr. Garcia,
4  the other objector, became an objector after meeting with
5  Batman.  At page 74, there were no receipts for installed
6  drywall in his home.  Doesn't know if he installed drywall, at
7  page 75.  76, there was no foul smell, no corrosion, no
8  discoloration.
9          Page 79, he had no concern until he was
10 solicited by Batman.  82, no concern about his health to take
11 any action about it.  86, what he's worried about is his drills
12 were covered by a one-year warranty and he thinks that they're
13 corroded, at page 86.  And I'll point out that, as far as I
14 know, there are no drills made of copper or silver and it shows
15 a complete absence of any knowledge of sulfur off-gassing in
16 this case.
17         At page 90, he had no client complaints, no
18 doctor visit, never three years before attributed, when he did
19 have a doctor's appointment, any problem to drywall.  He
20 objected, at page 105/106, only after talking to Mr. Bandas.
21         Now, we get to Mr. Garcia, who's deposition was
22 taken the next day.  Page 3 to 5, he cannot confirm if his
23 invoices -- his big boxes of invoices -- were for CDW.  Page 11
24 to 12, he saw some Chinese Drywall at some job sites.  Page 21,
25 he was told about the Chinese Drywall settlement by Batman --

1   I'm sorry, by Mr. Chapa.

2            Now, who is Mr. Chapa?  Mr. Chapa is

3   Mr. Batman's investigator.  So it's clear what happened, at

4   least with Garcia, that Mr. Batman sends his investigator to

5   solicit Mr. Garcia and then sends him along up the trail, Chapa

6   to the lawyer Batman to the lawyer Bandas.

7            Batman, again, at page 36, and Mr. Chapa are

8   located in the same building.  Pages 41 and 126, he knows

9   little or nothing about the settlement or its value.  At page

10  43 to page 50, he objects because there's a 32 percent attorney

11  fee.  43, never read the settlement agreement.  44, never

12  visited the Web site.  44, doesn't know who the participating

13  defendants are, doesn't know if he purchased drywall from a

14  defendant.

15           Page 63, no evidence to dispute Home Depot's

16  statement and affirmation that they never bought or sold

17  Chinese Drywall.  Yet, the basis of his objection is that Home

18  Depot is a participating defendant in a global settlement.  He

19  has no recollection of seeing Chinese Drywall in Home Depot or

20  any markings.

21           Page 74 to 76, the three properties he owns

22  don't have rotten egg odors, at page 74 to 76.  At page 77,

23  don't have any corrosion of wiring or metal surfaces.  Page 78,

24  he has no PI problems from CDW.  Page 79 to -- 89 to 90, he

25  replaced his saw blades with router bits for $100.  He didn't

Case 2:09-md-02047-EEF-MBN Document 16294-3 Filed 12/05/12 Page 33 of 54
Case 2:12-mc-00573-EEF Document 2-2 Filed 4/14/XX SDFL Page 2 of 35

20

 1   test any of them.

 2           Again, if there are saw blades or router bits

 3   made of silver or copper, I'd like -- I don't believe that

 4   there are.  And, again, it demonstrates a complete lack of

 5   knowledge of what this case is about.

 6           At page 123, he had no concerns whatsoever

 7   before the runner, Mr. Chapa, talked to him and sent him along

 8   up the line, at page 123.  Page 85 and 87, his only fear now is

 9   that some doctor in the future may say he has a problem caused

10   by drywall.

11           Page 91 to 92, contrary to stating that he has a

12   business reputation suffering as a result, he says now he has

13   no business reputation suffering.  Page 100, he does not intend

14   to file a lawsuit.  105, is not aware that his objection might

15   damage or void the settlement.  At page 128, only after

16   discussion with Mr. Bandas did he object.

17           Now, given that testimony, Your Honor, we

18   believe it is absolutely required of the PSC, in order to

19   protect the 5,000 folks, less approximately 200 who opted out

20   and less than 20 objectors, to protect this settlement, and to

21   protect it under these circumstances.

22           And, therefore, since Your Honor did not rule

23   that we could not take the deposition of Jan Petrus, and since

24   Your Honor did not rule that we could not take the deposition

25   of Ernest Vitela, we asked to take those depositions.  They

```
1   were parties to this.  There's been no order of dismissal that
2   I know of that's been issued.  We're not accepting a
3   stipulation here.  And we believe that they have relevant
4   information.
5                   And just as whether they've entered this lawsuit
6   in bad faith or are being misled really isn't the question at
7   this point.  The question is:  What did they know?  When did
8   they know?  And what have they got to say?  Because these
9   objections, we believe, are not only ill researched, ill stated
10  and ill founded, but are calculated for no good judicious or
11  legal reason whatsoever.
12                  And I'm sorry that I raised my voice, Your
13  Honor.  I'm a little too loud about my concerns here.
14  Although, the depth with which I feel those concerns, I cannot,
15  and will not, understate.
16                  Now, let me get to the issue of whether these
17  folks knew what Mr. Bandas' history of objections were.  "Had
18  they known, what would their conduct have been?" I think was a
19  perfectly legitimate inquiry.
20                  Secondly, Your Honor, I had always understood
21  that where a witness had his notes at depositions, whether he
22  was a party or not, and they were his own handwritten notes and
23  they were used for recollection, they had to be produced, and
24  they had to be produced during the deposition.
25                  So, Your Honor, in summary:  Number one, I
```

1    believe they've got to produce the handwritten notes which were

2    denied during the deposition; number two, Mr. Petrus, Mr. Soto,

3    who at page 10, lines 6 to 23 doesn't produce his notes, and

4    Mr. Vitela should be ordered to come to this court rather than

5    us having to go to Houston to take their depositions.

6              Secondly, Your Honor -- first, the notes need to

7    be produced.  Secondly, Petrus, Soto and Vitela should be

8    ordered to come to Louisiana.  We should be inquired, thirdly,

9    to inquire into the entire nature of the relationship between a

10   runner or investigator, if we want to clothe it in some magic

11   language, an intervening lawyer who then sends a case up to

12   Mr. Bandas who is an acknowledged perpetual objector.  We think

13   we're entitled to discover that.

14             And, Your Honor, we intend, and I'm saying to

15   the Court now, to issue service -- expedited service for

16   Mr. Batman's deposition and -- his name is Chris Batman and --

17   I started to say *Robin* -- but his investigator is Mr. Chapa.

18             So, Your Honor, we do not abandon, under these

19   circumstances, our request for sanctions.  And I understand

20   that Mr. Levin has a -- would like to address the Court

21   briefly.

22             **MR. LEVIN:**  May I, Your Honor?

23             **THE COURT:**  Yes, go ahead, Mr. Levin.

24             **MR. LEVIN:**  We have, within the last couple minutes,

25   filed a motion to dismiss based on standing, and I will not

1    argue that.  But when you sit back and look at how this entire

2    issue came to this court, it is, indeed, shocking and bizarre.

3              Mr. Bandas was in search of a vehicle to insert

4    himself in this court.  He couldn't do it with the Knauf

5    settlement, because you had -- to be a member of the class in

6    Knauf, you had to have filed a complaint.  He couldn't do it in

7    the Banner settlement because that was a Florida supplier.

8              He couldn't do it in the InEX settlement because

9    that was a Gulf state supplier, mostly in Louisiana, Alabama

10   and Mississippi.  And he couldn't do it in the L&W settlement

11   because that was in Tampa, Florida.

12             So he happened to come upon the global

13   settlement, which is a true class action, but he neglected to

14   understand that that settlement only applied to participating

15   defendants.  Lowe's was not a participating defendant there,

16   and that's where Petrus comes in.  Because Petrus already

17   settled her Lowe's case in a confidential settlement that Billy

18   Gaudet, a few blocks away from this courtroom, has and will

19   produce upon order to produce it.

20             Mr. Bandas forgot that he was already in drywall

21   litigation and had settled the claim with Lowe's.  So now

22   there's a manufacturing of a Home Depot, which is a

23   participating defendant.  Except for one thing, the Court will

24   find out Home Depot never had Chinese Drywall in Texas.

25             Now, how do you get Garcia and Soto and Petrus

1  and Vitela to come into this picture and do what Mr. Bandas,

2  Mr. Batman and their local counsel now want them to do?  You

3  give them a retainer agreement that promises them that you will

4  seek $5,000 as an incentive fee for their services, not for the

5  litigation, but for Mr. Bandas' own self-promotion, and we have

6  that retainer agreement and you will see it, Your Honor.

7              This is a made-up objection, a made-up standing

8  issue, and there's only one person that wants to benefit by

9  this and it's Mr. Bandas, at the expense of 5,000 homes in

10  Florida and in Louisiana who have been destroyed as a result of

11  these Chinese Drywall, and he inserts himself in this with this

12  bizarre claim.

13              And I believe it's violative of Rule 11 because

14  not only did his clients not investigate, it's obvious that he

15  didn't investigate, and that's why we find half the talk in his

16  pleadings about the *Marathon* litigation.

17              Your Honor, he produced a lot of documents in

18  banker's boxes full of documents.  We're asking him to send

19  them immediately to Mr. Herman's office.  We will pay for the

20  copying, we will pay for the Federal Express.  And when we get

21  it, we'll look at it and then we'll seek costs against

22  Mr. Bandas for this document dump that he did last Thursday and

23  Friday.

24              Thank you, Your Honor.

25              Does Your Honor have any questions?

1   **THE COURT:** No, I don't.

2      Anyone else on the phone wish to speak?

3      Let me hear from Mr. Bandas in rebuttal.

4   **MR. BANDAS:** Thank you, Your Honor.

5      I certainly can't speak any louder than what we

6 just heard from counsel, Your Honor, but I think it's important

7 to clarify a couple of points.

8      This issue keeps coming up about Lowe's, and the

9 Lowe's objection Ms. Petrus did object to. The Lowe's

10 settlement agreement, which is a matter of public record, it

11 releases only Lowe's as the retailer, it does not release

12 manufacturers, including Chinese manufacturers.

13      And any representations to this Court that a

14 resolution in Lowe's, either for Ms. Petrus or for anybody

15 else, abridges their rights as class members vis-à-vis the

16 manufacturers in this particular case is legally incorrect, and

17 I think was offered to this Court more as a point of rhetoric

18 rather than any sound legal analysis.

19      Our position here, Your Honor -- and I

20 understand where counsel is coming from. They've settled a

21 case for $80 million, they're looking at 32 percent fees. They

22 want to get the case done. And I understand their larger

23 frustration, I suppose, with Rule 23. But what happened in

24 this case, Your Honor, is exactly what is contemplated by

25 Rule 23.

Case 2:99-md-02573-EEF-MBN Document 2291 Filed 11/25/12 Page 39 of 54
Case 2:12-mc-00573-EEF Document 22 Filed 11/TXSD Filed 11/25/12 Page 23 of 39

26

 1          There is a due process requirement that's

 2     afforded to absent class members whose interests are affected

 3     by a proposed settlement.  Those individuals are entitled to

 4     hire counsel, they're entitled to rely on their counsel and

 5     they're entitled to investigate and pursue their claims through

 6     counsel.

 7          We heard an attack on that process.  Congress,

 8     the Rules Committee, that's who framed Rule 23, Your Honor.  We

 9     stand 100 percent by all of our legal arguments.  The issue in

10     this case, Your Honor, is an *Amchem* issue.  It keeps coming

11     back to that.

12          We have not heard at any point in this

13     litigation, we haven't heard it today, we haven't heard it in

14     any of the previous filings, there has not been a single case

15     cited, or one word of argument presented by class counsel, that

16     defends what is so patently indefensible in the Fifth Circuit,

17     as it is every other circuit, the release of personal

18     injury/wrongful death claims in a class action settlement.  It

19     cannot be done.  It cannot be done in this case; it cannot be

20     done in any other case.

21          And I think it's telling, Your Honor, that

22     counsel will not dedicate any part of their effort in

23     addressing those defects in the proposed settlement.  Rather,

24     they want to make it about me.  They want to make it about

25     other cases.

1                    Again, we're not talking about, for example,

2      *Dennis versus Kellogg*, which is a Ninth Circuit case, Your

3      Honor, where my clients and their objections were vindicated in

4      the Ninth Circuit.

5                    And we have fundamentally changed, in the course

6      of the last six months, the entirety of how cy pres settlements

7      get done in the Ninth Circuit, because that was an incredibly

8      important issue that offered many opportunities for class

9      lawyers to abuse the system, abuse their clients, and in the

10     interest of fees and getting a deal done, cutting around the

11     issues that are important with respect to due process.  Okay?

12                   We're not here to defend a motion to dismiss

13     based on lack of standing.  But, ultimately, what the Court's

14     going to hear from us, because it came up in counsel's

15     argument, is in the Fifth Circuit who has standing is

16     absolutely defined by the four corners of the class notice.

17                   On the one hand, after taking these depositions,

18     they trivialize, if not openly make fun of, the claims that my

19     clients have about fear of future injury.  They worked around

20     Chinese Drywall.  They testified to that, and they were

21     absolutely positive about their experience with it.  That is

22     precisely the kind of claim that is being released in this

23     proposed class action settlement, Your Honor.

24                   The pleadings that class counsel has made and

25     the testimony they've offered in this case is exactly that,

Case 2:09-md-02047-EEF-MBN Document 16294 Filed 11/25/12 Page 41 of 54
Case 2:12-mc-00573-EEF-MBN Document 2-2 Filed 11/7/13 Page 29 of 35

28

1    exposure to Chinese Drywall can, and does, and can potentially,

2    cause very serious health concerns that may not manifest

3    themselves right now, but may manifest themselves in the

4    future.  And they have put that in pleadings, they have made

5    the argument and they have framed their entire case, or at

6    least a significant portion of their case, around that

7    possibility.

8              So on the one hand, they have a piece of

9    litigation that depends on that theory, that advances that

10   theory; but, yet, when one of their own clients, a class

11   member, who is impacted by the work they've done says, "That's

12   me, too, and I'm concerned about the give-away, and if I do

13   develop some serious illness, as you say is possible in this

14   litigation," and I think is a basis for the settlement.

15             On the other hand, they're saying, "Oh, no, no,

16   no, that's a trivial injury," and they layer on top of it lots

17   of other motives to, I think, detract the Court from a

18   fundamental problem in this case, which is *Amchem*, and it keeps

19   coming back to that, Your Honor.

20             It's an inescapable problem.  I think it's an

21   incredibly important issue, and it's important to my clients.

22             Thank you, Your Honor.

23        **THE COURT:**  Thank you very much.

24             Anything, Josh?

25        **MR. LEVIN:**  May I reply first?

1       **THE COURT:**  No, no, let me hear from --

2       **MR. LEVIN:**  Russ?

3       **THE COURT:**  One moment.  Go ahead.

4       **MR. KOCH:**  Good morning, Your Honor.

5              Your Honor, I just would like to address the

6   fact that this hearing today was for the purpose of addressing

7   certain discovery issues.  And for all of the discussion that's

8   gone on this morning, very little of that seems to have been

9   addressed to that issue.

10             When Your Honor started this morning, you said

11  that there were three issues that were addressed by Your Honor

12  at the last hearing.  And that was, one, alleged standing to

13  assert this claim, the basis for the objection, and objector's

14  relationship with counsel.

15             Now, Mr. Herman got up before Your Honor and

16  went through the two depositions that were taken.  Those two

17  depositions were of the two objectors that were identified at

18  the hearing last week.

19             At that hearing last week, Your Honor was told

20  by Mr. Bandas that the two other objectors, Mr. Vitela and

21  Ms. Petrus, had withdrawn their objections.  There was no

22  response, no objection by class counsel to that withdrawal.

23             So, in accordance with Your Honor's

24  instructions, and the transcript specifically states that, the

25  depositions of the objectors will go forward.  There were two

Case 2:12-md-02373-EEF-MBN Document 229 Filed 11/25/12 Page 43 of 54
Case 2:12-md-02373-EEF-MBN Document 22 Filed 11/25/12 Page 43 of 54

30

 1  objections -- two objectors, those depositions went forward.
 2  And from everything that I've heard, every one of the issues
 3  that Your Honor said were fair game were addressed, and sounded
 4  like they were addressed in great length.
 5          So I'm not sure what exactly the issue is with
 6  respect to discovery that is being objected to by class counsel
 7  today, which, again, I would remind the Court is the only issue
 8  before the Court today.
 9          You know, this issue of standing, we now
10  understand that there's a motion to dismiss for standing that's
11  being brought.  That is not before the Court today.
12          THE COURT:  Thank you very much.
13          MR. KOCH:  Thank you.
14          THE COURT:  I'm ready to consider this matter.  I
15  agree with the last counsel, the issues really before me today
16  are discovery and not admissibility and not the substance of
17  the objectors.  I'm not here to determine or rule upon whether
18  or not the objectors have a valid objection.  That will come
19  later.
20          I'm here today to deal with the discovery issues
21  and I've heard from both sides a lot about the validity or
22  invalidity of the objections.  Now, they have some relevance
23  because that is the basis of the discovery.  A question's been
24  raised in this case as to the basis of the objections, the
25  validity of the objections, and that bears, to some extent, on

Case 2:12-md-02323-EEF-MBN Document 1629-1 Filed 11/25/12 Page 44 of 54
Case 2:12-md-00573-EEF-JCW Document 22 Filed 04/19/12 Page 32 of 35

31

 1   the relationship of the objectors with counsel.

 2              Now, I'm also aware of the fact that the

 3   objection appeared at the last moment, these objectors appeared

 4   at the last moment and it's urged, with due respect, by an

 5   attorney who has a long history of urging objections which

 6   previous courts have held questionable and have also expressed

 7   some disappointment in his failings to conduct or comply with

 8   discovery orders.  That may have some relevance in discovery.

 9              So let me deal with the issues as I see them.

10              First, with regard to personal notes.  All

11   counsel have a duty, if not a right, to object when they feel

12   matters are privileged.  I assume that counsel for the

13   objectors made an objection based on privilege.

14              The way that that has to be dealt with is that I

15   instruct counsel to forward to me immediately, no later than

16   6:00 today, the notes that we're talking about.  Only to me.

17   I'll look at them in camera.  That's how you deal with

18   privilege.  If they're privileged, you'll get them back

19   immediately or I'll destroy what I have; if they're not

20   privileged, then they're not privileged and they're producible.

21              So that's my ruling on the personal notes:  Give

22   them to me no later than 6:00 today, fax them to me, and I will

23   take them in camera and review them.

24              With regard to the documents, it seems to me

25   that the documents have been produced.  The objection is that

Case 2:09-md-02047-EEF-MBN Document 16294-1 Filed 12/05/12 Page 45 of 54
Case 2:12-mc-00573-EEF-MBN Document 2-2 Filed 04/19/12 Page 33 of 39

32

1   they're in a disheveled and voluminous manner and not

2   organized.

3               The way that that is dealt with is to instruct

4   the people who have received the documents, and if you haven't,

5   then you should get them, go through them, organize them, make

6   a list of the documents in the order that you wish them to be

7   in, keep time for organizing them.  And I will look at that

8   time and determine whether or not it should be reimbursed in

9   economic fashion by the person who has delivered the documents.

10              With regard to the questions to the witnesses

11  that attorneys have instructed them not to answer, the civil

12  rules doesn't allow that.  The only time that you can instruct

13  somebody not to answer is on privilege, not relevance.

14              Again, I remind all counsel, we're dealing with

15  discovery at this point, not in terms of admissibility, but

16  relevance in discovery is very broad.  Almost everything that

17  touches on an issue or a defense or an assertion, allegation is

18  relevant.  It may not be admissible.  Much of it may not be

19  admissible, but it's discoverable.

20              So either side, don't instruct witnesses not to

21  answer unless it's a privileged communication and you instruct

22  them not to answer and you assert the privilege.

23              With regard to the depositions of Petrus and

24  Vitela, those are the two people who had objected and withdrew

25  their objections?

Case 2:09-md-02047-EEF-MBN Document 16294 Filed 12/25/12 Page 46 of 54
Case 2:12-mc-00573-EEF-MBN Document 2-2 Filed 11/14/XSD Doc 1 12/3/12 Page 34 of 35

33

 1          **MR. BANDAS:**  That is correct, Your Honor.

 2          **THE COURT:**  All right.  With regard to those

 3     individuals, it's not appropriate to serve them through counsel

 4     because he's no longer their counsel.

 5               However, they may have some relevant

 6     information.  I really don't know at this point.  It may not be

 7     admissible, but it may be relevant.  So if it's valid service,

 8     I expect the people to show up.  I don't think it's appropriate

 9     for them to come to New Orleans, however, and incur expenses.

10               Although, there is a potential that I may have

11     the authority, as an MDL judge, to require witnesses to come

12     for trials -- and I have done that and I've gone on the record

13     and explained my reason for that and my justification as well

14     as my authority as I see it -- but I don't think that I have

15     the appropriate authority to make witnesses come from another

16     state for discovery purposes.  But they should, and must,

17     appear at depositions that they have received valid service in.

18               With regard to sanctions, finally.  I'm going to

19     take that under advisement.  We've done this very quickly.

20     There's always a possibility that counsel, both sides, in their

21     enthusiasm to represent their respective clients, may have

22     misinterpreted or understood some of the comments that I had

23     made from the bench the last time.

24               So I always give counsel the benefit of the

25     doubt and applaud their enthusiasm and do not wish to quelch

Case 2:09-md-02047-EEF-MBN Document 16294 Filed 12/25/12 Page 47 of 54
Case 2:12-mc-00573-EEF Document 2-2 Filed in TXSD on 1/23/12 Page 35 of 35

34

1   it.  But I do remind counsel that they have a duty to respond
2   to the Court's orders, to produce witnesses that they have
3   responsibility to produce, that they're not to interfere with
4   witnesses that they do not represent and to produce documents
5   that the Court has ordered production of.
6               I should speak also because counsel, both sides,
7   mentioned 32 percent.  The 32 percent is not the attorney's
8   fees for class counsel.  Nobody is going to receive, for class
9   counsel, 32 percent.  What I had in mind with 32 percent is
10  that that is the counsel of the individuals, the individual
11  counsel.
12              I've found in these cases that oftentimes
13  counsel represent individuals, they sign them up to fees from
14  32 percent to 50 percent in various states.  Some states allow
15  50 percent fees.  When they get the case, they sign the
16  individual up, then they send it to class counsel.  Class
17  counsel does the work, they get 50 percent of the fee.
18              It seems to me that it's not fair for the
19  litigants to not reap the benefit of an MDL.  It seems to me
20  that everybody reaps the benefit of an MDL, the lawyers just
21  have to do the work one time, the litigants only have to do the
22  work one time, the courts only have to do the work one time;
23  but the litigants, depending upon where they live, have to pay
24  different fees.  That doesn't make any sense to me.
25              So I try to, in these cases, limit the fees of

1    counsel.  I'm not talking about class counsel, I'm talking
2    about all counsel.  So that if somebody has a fee contract with
3    their clients for 50 percent, I don't want to see that.  I want
4    it to be 32 percent max.  It may be shorter than that, but it's
5    not going to be more than that.
6              And any fee that I give to class counsel or an
7    MDL liaison counsel or lead counsel or a plaintiff counsel is
8    going to come out of that amount, not be in addition to that
9    amount.  So I want everybody to know at the outset, that don't
10   make these contracts of 50 percent, 40 percent and do
11   absolutely no work.
12             I'm not saying anybody in this room feels that
13   way or has those contracts.  I'm just talking about those out
14   there who I have seen over the period.  It just seems to me to
15   be an abuse of the system, whether intended or not intended.
16             So that was the basis of my 32 percent, but
17   that's just a max.  It may be less than that that I wind up
18   giving to attorneys or instructing attorneys to charge their
19   individual clients.  But in no way, shape or form does the
20   32 percent have any relevance to any class counsel fees or MDL
21   counsel fees.  Whatever I give them will come out of whatever I
22   allow other counsel to receive in the case.
23             So with that, I thank the parties for bringing
24   that to my attention.
25             With regard to those depositions, I want the

 1   depositions to be taken during the day and I want to be advised
 2   of it.  If objections or something comes up during the
 3   deposition, I expect either or both counsel to get me on the
 4   phone and I'll rule on it immediately.
 5                   I would go to Houston for the depositions, but
 6   I've got some other issues here, because this is not my only
 7   case.  I do have a couple of other cases I have to deal with.
 8                   MR. LEVIN:  Your Honor, this is Levin.
 9                   THE COURT:  Yes.
10                   MR. LEVIN:  May we inquire of Mr. Bandas when we will
11   have the documents in Louisiana?
12                   THE COURT:  I thought you already had the documents.
13                   MR. LEVIN:  No.
14                   THE COURT:  You don't have them?
15                   Okay.
16                   MR. LEVIN:  They're in banker's boxes in Houston.
17   Has he made arrangements to get them to us?
18                   THE COURT:  Wait, wait.  Just a moment.
19                   MR. BANDAS:  Your Honor --
20                   MR. DODSON:  This is Paul Dodson in Corpus --
21                   THE COURT:  Wait, wait.  Let me just listen to
22   Mr. Bandas first.  He's standing up.
23                   MR. BANDAS:  I'm sorry, Your Honor.
24                   THE COURT:  Yes.
25                   MR. BANDAS:  I was going to ask Mr. Dodson, who is

Case 2:09-md-02047-EEF-MBN Document 12294-1 Filed 12/25/12 Page 50 of 54
Case 2:12-mc-00573-EEF-MBN Document 2-2 Filed 04/4X SD Filed 1/25/12 Page 38 of 35

37

 1   weighing in now, to speak to that because his office handled

 2   the document production.

 3            **THE COURT:**  Fine.  Good, good.  Thank you.

 4            Mr. Dodson, you can weigh in, sir.

 5            **MR. DODSON:**  My understanding is that the copying

 6   company here has been working diligently over the weekend, in

 7   fact, to make copies.  I understand at some point we're going

 8   to ask them, if they haven't already, in the process to go

 9   ahead and get them scanned and Bates stamped.

10            And one of the things that was discussed with

11   counsel while we're here, and actually it's, I think, reflected

12   in the deposition of Mr. Garcia, we've already made an

13   agreement that we're going to try to cull these things and

14   direct them toward the things that looked to us most responsive

15   to his questions.

16            **THE COURT:**  All right.  Mr. Dodson, let's do it on a

17   basis as they come due.  Don't wait for the last document so

18   that they have an opportunity at least to receive them.  So

19   when can they begin, if not totally, receive the documents from

20   you, sir?

21            **MR. DODSON:**  I'd have to run down the hallway to ask

22   somebody who knows or can get that specific information.

23            **THE COURT:**  Why don't you do that and let me know

24   within an hour.

25            **MR. DODSON:**  Very good, Judge.

1   **THE COURT:** Thank you very much for participating on

2 the phone.

3   **MR. DODSON:** Thank you, Your Honor.

4   **THE COURT:** Thank you, counsel.

5    Court will stand in recess.

6   (WHEREUPON, the proceedings were concluded.)

7        *****

8       <u>**CERTIFICATE**</u>

9   I, Jodi Simcox, RMR, FCRR, Official Court Reporter

10 for the United States District Court, Eastern District of

11 Louisiana, do hereby certify that the foregoing is a true and

12 correct transcript, to the best of my ability and

13 understanding, from the record of the proceedings in the

14 above-entitled and numbered matter.

15

16

17     <u>*s/Jodi Simcox, RMR, FCRR*</u>
       Jodi Simcox, RMR, FCRR

18       Official Court Reporter

19

20

21

22

23

24

25

# EXHIBIT  C

LEXISNEXIS® FILE & SERVE
47604700
E-SERVICE
Nov 07 2012
01:08PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
|  | : | MDL NO. 2047 |
| IN RE: CHINESE MANUFACTURED DRYWALL | : |  |
|     PRODUCTS LIABILITY LITIGATION | : | SECTION:  L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE WILKINSON |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | : |  |

**THIS DOCUMENT RELATES TO ALL CASES.**

## ORDER

This matter came on for hearing regarding a discovery dispute between certain objectors to the pending settlements and the Plaintiffs' Steering Committee.  This discovery dispute is related to Class Counsel's Motion for Sanctions (R. Doc. 15982).  The parties briefed the issue, and on October 31, 2012 the Court conducted a hearing.  The Court then issued an Order defining the proper scope of discovery in this matter.  (R. Doc. 16056).  After the parties advised the Court of continuing discovery disputes, the Court reviewed further Motions and submissions and conducted a second hearing.  For reasons stated orally at the hearing, the Court now issues the following Order.

**IT IS ORDERED** that Class Counsel organize and review all produced documents while maintaining a record of their time and expenses.

**IT IS FURTHER ORDERED** that counsel for all parties refrain from instructing deponents not to answer a question based on objections to the relevance of the question.  In accordance with the relevant discovery rules, counsel may instruct a deponent not to answer only when counsel asserts the existence of a privilege.

**IT IS FURTHER ORDERED** that all noticed depositions for which valid service has

been effected shall proceed, and all validly served deponents shall appear.

New Orleans, Louisiana this 7th day of November, 2012.

_____

UNITED STATES DISTRICT JUDGE