Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2
 3   IN RE: CHINESE-MANUFACTURED:
     DRYWALL PRODUCTS LIABILITY : MDL NO. 2047
 4   LITIGATION                 : SECTION: L
     _____:
 5
     THIS DOCUMENT RELATES TO ALL CASES AND:
 6
 7   Payton, et al. v. Knauf Gips, KG, et al.
     Case No.2:09-cv-07628 (E.D.La.)
 8
     Gross, et al. v. Knauf Gips, KG, et al.
 9   Case No.2:09-cv-06690 (E.D.La.)
10   Rogers, et al. v. Knauf Gips, KG, et al.
     Case No.2:10-cv-00362 (E.D.La.)
11
     Amato, et al. v. Liberty Mutual Ins. Co.
12   Case No.2:10-cv-00932 (E.D.La.)
13   Abreu, et al. v. Gebrueder Knauf
     Verwaltungsgesellschaft, KG, et al.
14   Case No.2:11-cv-00252 (E.D.La.)
15   Block, et al. v. Gebrueder Knauf
     Verwaltungsgesellschaft, KG, et al.
16   Case No.11-cv-1363 (E.D.La.)
17   Arndt, et al. v. Gebrueder Knauf
     Verwaltungsgesellschaft, KG, et al.
18   Case No.11-cv-2349 (E.D.La.)
19   Cassidy, et al. v. Gebrueder Knauf
     Verwaltungsgesellschaft, KG, et al.
20   Case No. 11-cv-3023 (E.D.La.)
21   Vickers, et al. v. Knauf Gips KG, et al.
     Case No.2:09-cv-04117 (E.D.La.)
22   _____
23
24
25
```

1    ****************************************************

2              CONFIDENTIAL - SUBJECT TO FURTHER

3                   CONFIDENTIALITY REVIEW

4        ORAL AND VIDEOTAPED DEPOSITION OF RONNIE GARCIA

                         (Volume 2)

5                     NOVEMBER 8, 2012

6    ****************************************************

7

8              Deposition testimony of Ronnie

9    Garcia, produced as a witness at the instance of

10   the Plaintiffs, and duly sworn, was taken in the

11   above-styled and numbered cause on the eighth day

12   of November, 2012, from 5:25 p.m. to 6:27 p.m.,

13   before Angela M. Hailey-Howard, Certified Shorthand

14   Reporter in and for the State of Texas, reported by

15   machine shorthand, at the offices of Huseman Dodson

16   Hummell Law Firm, 615 North Upper Broadway, Suite

17   2000, Corpus Christi, Texas  78401, pursuant to the

18   Federal Rules of Civil Procedure and the provisions

19   stated on the record or attached hereto.

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1              A P P E A R A N C E S
 2

    FOR THE PLAINTIFFS:
 3

    MATTHEW C. GAUGHAN, ESQUIRE
 4  LEVIN, FISHBEIN, SEDRAN & BERMAN
    510 Walnut Street, Suite 500
 5  Philadelphia, PA  19106
    (215)592-1500
 6  mgaughan@lfsblaw.com
 7  FOR THE WITNESS:
 8  VAN HUSEMAN, ESQUIRE
    PAUL DODSON, ESQUIRE
 9  HUSEMAN DODSON HUMMELL, PLLC
    615 N. Upper Broadway, Suite 2000
10  Corpus Christi, TX 78401
    (361)883-3563
11  vhuseman@hdhlawfirm.com
    pdodson@hdhlawfirm.com
12
13  THE VIDEOGRAPHER:
    Hank Wisrodt
14  Complete Litigation Support
    Austin, TX
15
16                      * * * * * *
17
18
19
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

1                    I N D E X

2

                                                    PAGE

3

   Appearances ............................... 150

4

   RONNIE GARCIA

5

   Examination by Mr. Gaughan ............... 155

6

7

8

9

10                 E X H I B I T S

11                                                 PAGE

   NO.              DESCRIPTION

12

13 Exhibit 39      Nov. 8, 2012 letter
                   from Mr. Bandas ........... 154
14 Exhibit 40      Notice of Deposition ....... 175
15 Exhibit 41      Notice of Deposition ....... 175
16

17

18

19

20

21

22

23

24

25

```
 1                    (Thursday, November 8, 2012.

 2         Videotaped Deposition Proceeding.)

 3                    VIDEOGRAPHER:  This is the

 4         videotaped deposition of Ronnie Garcia, taken

 5         on November 8, 2012, time is 5:25 p.m.  Will

 6         counsel please identify themselves for the

 7         record.

 8                    MR. GAUGHAN:  Matthew Gaughan for

 9         class counsel.

10                    MR. HUSEMAN:  Van Huseman and Paul

11         Dodson on behalf of Mr. Garcia.

12                    VIDEOGRAPHER:  Will the court

13         reporter please swear in the witness.

14                    THE WITNESS:  My name is Ronnie

15         Garcia.

16                         *   *   *

17                    RONNIE GARCIA, after having been

18         duly sworn, was examined and testified as

19         follows:

20                    MR. HUSEMAN:  I think we have the

21         same agreement we had on Mr. Soto's about

22         the running objection.

23                    MR. GAUGHAN:  Yeah, about the

24         questions you object to earlier as

25         harassment.
```

Confidential - Subject to Further Confidentiality Review

```
 1              MR. HUSEMAN:  Harassment and all
 2        the other things you would otherwise be
 3        giving trouble about.
 4              MR. GAUGHAN:  Yes, I allow you
 5        running objection on the harassment type
 6        questions and I do want to put on the record
 7        that last night liaison counsel received a
 8        disk of some 9,250 documents with respect to
 9        Mr. Garcia and Bay Area Contracting and
10        Construction's objection in this matter and
11        right now I just received what I've marked as
12        Exhibit 39, which is a letter from Mr.
13        Bandas, dated November 8, 2012 which I just
14        received immediately before we began this
15        deposition that lists maybe 50 to a hundred
16        documents that are more limited range
17        documents.  Obviously it being almost 5:30
18        right now, well at the end of the business
19        day, there's insufficient time to review
20        these documents and we may very well file a
21        motion for sanctions and request that
22        Mr. Garcia appear in New Orleans, that we be
23        awarded our costs for appearing today and
24        that we also receive attorneys fees for
25        appearing today for this deposition and I
```

Confidential - Subject to Further Confidentiality Review

```
 1          just want to put that on the record before we

 2          get going, okay.

 3                    MR. HUSEMAN:  We're here at your

 4          pleasure.

 5                    MR. GAUGHAN:  Of course.  I guess,

 6          Mr. Garcia, or I should ask counsel really.

 7          He's appearing today for himself as well as

 8          his company, correct?

 9                    MR. HUSEMAN:  Your understanding is

10          correct.  He speaks for both.

11                    MR. GAUGHAN:  Okay.

12                        EXAMINATION

13     BY MR. GAUGHAN:

14     Q.   And I guess one of the things we talked about

15     last week when I deposed you, I think it was

16     Thursday was about the scope of your lawyer's

17     representation of you and I was trying to ask you

18     if it was your understanding whether Mr. Bandas

19     was representing you solely with respect to your

20     objection and any appeal that may follow out of

21     that objection if the court overrules your

22     objection and do you remember that?

23     A.   I don't remember.

24     Q.   You don't remember.  And I guess at that time

25     it was your understanding that Mr. Bandas was
```

Confidential - Subject to Further Confidentiality Review

```
 1   representing you more broadly than just in terms

 2   of this objection and any appeal that may follow,

 3   do you remember that?

 4   A.   I don't remember at that time.  I don't

 5   remember what I said at that time.

 6   Q.   Okay.  Well, if you don't remember what you

 7   said, I'll just ask you again.  Do you understand

 8   that Mr. Bandas is representing you?

 9   A.   I know he's representing me right now.

10   Q.   And that that's not just limited to this

11   objection that you're pursuing any appeal that

12   might follow?

13   A.   I'm not sure I understand.  I would have to

14   talk to counsel on that.

15   Q.   Okay.  Well, I understand that, but maybe

16   you're not understanding what I'm asking you, but

17   let me just ask again.  You're objecting to the

18   settlement, correct?

19   A.   Yes, sir.

20   Q.   And but you might have -- you might actually

21   have claims against -- assuming you're correct

22   that you distributed Chinese drywall, you might

23   have claims against, say, did you buy drywall at

24   McCoy's?

25   A.   Yes, sir.
```

Confidential - Subject to Further Confidentiality Review

```
 1    Q.    So it's possible you have a claim against

 2    McCoy's even though they're not a party or

 3    participant in this settlement.  Now, do you

 4    appreciate that Mr. Bandas would be representing

 5    you if you decided to bring a claim against

 6    McCoy's, for instance?

 7    A.    I'd have to talk to counsel, I'd have to talk

 8    to Mr. Bandas on that.

 9    Q.    But that's not your understanding?

10    A.    At this time, no.

11    Q.    You'd have to talk to him?

12    A.    Yes, sir.

13    Q.    How is your eye doing, by the way?

14    A.    Red as ever.

15    Q.    What's that?

16    A.    They're red.

17    Q.    And your sinuses, are you still having

18    problems with your sinuses?

19    A.    Comes and goes.

20    Q.    And have you seen a doctor between now and

21    when I deposed you?

22    A.    I haven't, I'm thinking about needing to go

23    check, you know, go get it, but I just haven't had

24    time.

25    Q.    And who is the doctor originally who you went
```

Confidential - Subject to Further Confidentiality Review

```
 1   to see about your -- you said you had seen a

 2   doctor about your eyes and your sinuses, who was

 3   that doctor?

 4   A.   Dr. Perez.

 5   Q.   What was the name?

 6   A.   Elizabeth Perez.  Dr. Elizabeth Perez.

 7   Q.   Where does she practice out of?

 8   A.   Here in Corpus.

 9   Q.   Do you have an address or name of the

10   practice?

11   A.   It's Bay Area Vision.

12   Q.   So you just saw her for your eyes?

13   A.   Yes.

14   Q.   Did you see anyone with respect to your sinus

15   problems?

16   A.   Dr. Villa.

17   Q.   And where does Dr. Villa practice?

18   A.   He's off of Morgan somewhere.

19   Q.   Do you know the name of his practice?

20   A.   Villa -- I know him as Dr. Villa.  I know his

21   first name is Robert Villa.  I think it's called

22   Villa's.

23   Q.   Does the name Villa appear in the title of

24   his practice?

25   A.   Yeah, pretty sure.
```

Confidential - Subject to Further Confidentiality Review

1   Q.   And when was the last time you saw Dr. Villa?

2   A.   I'm thinking around February.

3   Q.   Back in February?

4   A.   Yes.

5   Q.   And I take it you haven't told either of

6   these two doctors that we just mentioned that you

7   think your symptoms might be related to Chinese

8   drywall exposure?

9   A.   No, sir.

10  Q.   Is that something you intend to discuss with

11  either of these two doctors?

12  A.   Well, if it gets any worse I probably will.

13  Q.   And --

14  A.   I don't know if they --

15  Q.   How long have your eyes been bothering you?

16  A.   It's been a couple years.

17  Q.   Can you may be pinpoint more accurately when

18  you think it started?

19  A.   Like I said, a couple years, maybe two, three

20  years ago.

21  Q.   You don't have a real solid date on that?

22  A.   No, sir.

23  Q.   And did you see a doctor at that time?

24  A.   Yes.

25  Q.   So you saw a doctor right away when your eyes

Confidential - Subject to Further Confidentiality Review

1  started bothering you?

2  A.   Yes, ma'am.

3  Q.   And can you describe to me what it feels

4  like, is it just dry or what is it?

5  A.   It's a burning sensation.

6  Q.   Burning.  How about the problem with your

7  sinuses, how would you describe that?

8  A.   It's like I said, comes and goes.

9  Q.   But what does it feel like when it comes, I

10  guess?

11  A.   The dry sensation too, itching, burning.

12  Q.   But it's not constant?

13  A.   No, sir.

14  Q.   And how about your problem with your eyes, is

15  that a constant thing?

16  A.   Yeah, it's a daily thing.

17  Q.   So that's been bothering you a couple years?

18  A.   Yes.

19  Q.   What has your doctor told you about why

20  you're experiencing that problem, if anything?

21  A.   Well, they gave me some antibiotics for it.

22  Q.   So did it clear it up at all or no?

23  A.   It helped, but I haven't gone back.  Us guys

24  we just -- we don't want to see doctors.

25  Q.   And what's your understanding of whether

Confidential - Subject to Further Confidentiality Review

```
 1   antibiotics are an effective treatment as to

 2   Chinese drywall, I guess, exposure?

 3   A.   I do not know.  I can't tell you that.

 4   Q.   And since your last deposition, you haven't

 5   been sued by any homeowners who claim you

 6   installed Chinese drywall in their home, have you?

 7   A.   No, sir.

 8   Q.   Has anyone complained to you that they think

 9   that you installed Chinese drywall in their home?

10   A.   No, sir.

11   Q.   And do you intend to disclose to your former

12   customers that you think you might have installed

13   Chinese drywall in their homes?

14   A.   I don't -- you know, unless it comes up.

15   Q.   So you're not going to go out and start

16   knocking on doors or anything?

17   A.   No, sir.

18   Q.   And have you discussed that whether you're

19   obligated or not to notify people that you might

20   have installed Chinese drywall with your counsel

21   or anyone?

22   A.   Not too sure, I don't think we talked about

23   that yet unless it gets to a point, I guess.

24             MR. HUSEMAN:  Let's not talk about

25        what you said with your lawyer.
```

Confidential - Subject to Further Confidentiality Review

```
 1              THE WITNESS:  Okay.

 2  BY MR. GAUGHAN:

 3  Q.   And since your last deposition, at that time

 4  you couldn't recall any houses that you thought

 5  you actually installed Chinese drywall in.  Have

 6  you since changed -- has that changed, I guess, so

 7  now you think you could identify a particular

 8  property where you had installed Chinese drywall?

 9  A.   No, sir.

10  Q.   And one of the things we discussed last week

11  was the fact that you having filed an objection to

12  this settlement created a possibility that the

13  settlement could be disapproved or I think we used

14  the term tanked, just completely wiped out based

15  on your objection, do you recall discussing that

16  last week?

17  A.   Yes, sir.

18  Q.   In the time that has elapsed since your

19  deposition, have you given any second thought to

20  whether you want to pursue your objection in light

21  of that possibility that you might tank the

22  settlement?

23  A.   I haven't really thought about it.

24  Q.   You don't have any concern that your

25  objection might deprive deserving individuals of
```

Confidential - Subject to Further Confidentiality Review

```
 1   benefits under the settlement?

 2   A.   I'd have to talk to counsel on that.

 3   Q.   But you're not concerned about it as you sit

 4   here today?

 5   A.   I haven't had time, it's been a couple days

 6   and I've been out of town, so I haven't really

 7   thought about anything like that.

 8   Q.   So as you sit here today, it's not something

 9   that's bothering you or keeping you up at night or

10   anything like that?

11   A.   It's not bothering me at this time.

12   Q.   And you think that's a risk that you're

13   willing to take, that your objection might deprive

14   all these people of benefits that you're willing

15   to take that risk?

16   A.   It's up to counsel on that.  I mean that's

17   why I hired a lawyer.

18   Q.   That's your understanding, it's up to counsel

19   whether to object or not?

20   A.   What's that?

21   Q.   I'm just trying to figure out it's your un-

22   derstanding it's up to counsel whether you object?

23   A.   Well, I haven't really thought about

24   everything we talked about since Thursday, so --

25   Q.   But earlier you said it was up to counsel.
```

1    I'm trying to figure out what you meant by that.

2    A.    Can you repeat what you said?

3    Q.    It wasn't what I said, it was what you said.

4    You said it was up to counsel?

5    A.    Well, you said something about -- I don't

6    even know what you said.

7    Q.    Okay.

8    A.    I would have to talk to my attorneys.

9    Q.    I guess so it doesn't bother you at all that

10   you could wipe out a benefit to deserving class

11   members?

12   A.    Like I said, I have never really had the time

13   to think about it.

14   Q.    Is that something you're going to think

15   about?

16   A.    If it gets to that point.

17   Q.    What do you mean by that?

18   A.    What's that?

19   Q.    If it gets to that point, what do you mean by

20   that?

21   A.    If it tanks, you know, the settlement.

22   Q.    Well, I'll tell you the court scheduled a

23   fairness hearing for next week, so we're kind of

24   at that point.  The court might not approve the

25   settlement.  The court might -- or I should say

Confidential - Subject to Further Confidentiality Review

```
 1    some of the settling defendants might pull out of

 2    the settlement and there might be -- either the

 3    whole settlement could fall apart or substantially

 4    less benefits might be available to the class, so

 5    I'll represent to you we're at that point.

 6         Now knowing that, are you still willing to go

 7    forward with your objection?

 8    A.   Yes, sir.

 9    Q.   Okay.  And you feel that your objection to

10    attorneys' fees under the settlement is worth

11    possibly tanking the settlement?

12    A.   Can you repeat that again?

13    Q.   And you feel that your objection as I

14    appreciated which is that you oppose the

15    15 percent attorneys' fee provision and you think

16    ten percent is more appropriate, you feel that

17    objection is worth possibly tanking a 83

18    million-dollar settlement?

19    A.   Ten percent, I don't know.

20    Q.   You don't know?

21    A.   I don't know about that.

22    Q.   Is that something you're going to think

23    about?

24    A.   What's that?

25    Q.   Is that something you're going to think
```

Confidential - Subject to Further Confidentiality Review

```
 1    about?  We have limited time.  When's the 14th,

 2    that's six days from now.  Is that something you

 3    are going to think about for the fairness hearing?

 4    A.    I probably won't have time to think about it.

 5    Q.    So you're going to go forward with your

 6    objection?

 7    A.    I'm going to go forward with the objection.

 8    Q.    Whether or not it ends up tanking the

 9    settlement, that's just the cost of doing

10    business?

11    A.    Yes, sir.

12    Q.    And I think we talked a little bit last week

13    about was it saw blades you had problems with, saw

14    blades when you were --

15    A.    It was routers.

16    Q.    Routers?

17    A.    Yes, sir.

18    Q.    And we talked about you didn't retain any of

19    those, you didn't retain any drywall samples or

20    anything like that, is that correct?

21    A.    That's true.

22    Q.    And you mentioned that you did some work on a

23    property where you removed drywall and the owner

24    said that they thought it was Chinese drywall?

25    A.    No, we did an insurance rehab on it.
```

Confidential - Subject to Further Confidentiality Review

1  Q.  Did you repair and replace drywall during

2  that or is it something else?

3  A.  Yeah, we went in there and replaced the

4  drywall, did some repairs.

5  Q.  You didn't keep any of that drywall you took

6  out?

7  A.  It's been too many years.

8  Q.  So to your knowledge you didn't comply with

9  Judge Fallon's preservation order that requires

10  people to hold on to those sort of things?

11  A.  No, sir, I don't understand what you mean,

12  it's been three or four years ago.  We don't -- we

13  usually get rid of all debris.

14  Q.  Well, you didn't hold on to it, to the extent

15  that it's violative of Judge Fallon's order you

16  didn't hold on to it?

17  A.  No, sir.

18  Q.  And you mentioned that you hadn't seen any

19  doctors since your deposition?

20  A.  No, sir.

21  Q.  Are you planning to follow up with any of

22  those doctors?

23  A.  Yes, sir.

24  Q.  Do you currently have an appointment?

25  A.  No, I was going to make an appointment, but

Confidential - Subject to Further Confidentiality Review

1    I, like I said, I've been out of town and got into

2    town Tuesday as I was trying to catch up.

3    Q.    Which doctor was it?

4    A.    What's that?

5    Q.    Which doctor were you planning to see, the

6    one that treated you?

7    A.    Elizabeth Perez, Dr. Perez.

8    Q.    You just mentioned that you've been out of

9          town.  How long have you been out of town?

10   A.    Since Saturday.

11   Q.    Were your eyes bothering you during that

12   time?

13   A.    Yes, sir.

14   Q.    There was no improvement from when you

15   left town to today -- strike that.  Was there

16   any improvement from when you left town on

17   Saturday to when you came back in your condition?

18   A.    No, sir.

19   Q.    And if I told you that most people that live

20   in homes with Chinese-manufactured drywall who are

21   experiencing some sort of physical problems that

22   are related to the exposure, that they generally

23   see improvement when they are away from their

24   home, would that lead you to believe that your eye

25   problem is caused from something else and not from

Confidential - Subject to Further Confidentiality Review

```
 1   drywall exposure?

 2   A.   I didn't know about it, just like I said, I'm

 3   not an expert about that, so I don't know.

 4   Q.   You're not a doctor?

 5   A.   I'm not a doctor.

 6   Q.   You don't know what's causing your eyes to be

 7   irritated?

 8   A.   No, sir.

 9   Q.   And have you seen anyone to treat you for any

10   sort of emotional distress since we had the

11   deposition last week?  You had mentioned that you

12   had some anxiety or emotional distress because of

13   your fear that you might develop future injuries

14   based on your exposure to Chinese drywall?

15   A.   I did say that?

16   Q.   Did you not say that?

17   A.   I don't remember.

18   Q.   Is that what you're saying?

19   A.   Fear of what, Chinese drywall, in my condo or

20   what?

21   Q.   I think we talked a little bit about there

22   was an affidavit that you prepared that was

23   attached to your objection, do you remember

24   looking at that last week?

25   A.   I looked at it a little bit.
```

Confidential - Subject to Further Confidentiality Review

1    Q.    Maybe the way I asked this is do you have any

2    sort of emotional distress that you think you're

3    going to have some sort of injury in the future

4    based on your exposure to Chinese drywall?

5    A.    It's always in the back of my mind.

6    Q.    You haven't seen treatment for this emotional

7    distress, have you, from a doctor?

8    A.    Well, I've got to take stress pills for it.

9    I don't know if that's part of it.

10   Q.    Stress pills for what?

11   A.    Huh?

12   Q.    You take stress pills, is that what you said?

13   A.    Well, it's like a relaxer.

14   Q.    For what?

15   A.    What's that?  For stress, yes.

16   Q.    When did you get that prescribed?

17   A.    About a year and a half ago.

18   Q.    And that was before it even came to your

19   attention that you might have Chinese drywall in

20   your house?

21   A.    Yes, sir.

22   Q.    Okay.  And I take it you haven't seen any

23   sort of medical professionals to treat you for any

24   sort of emotional distress related to Chinese

25   drywall exposure since our last deposition?

Confidential - Subject to Further Confidentiality Review

1    A.    No, sir.

2    Q.    And Mr. Bandas is not here today, he wasn't

3    at your deposition last week, you retained him to

4    represent you with respect to your objection, are

5    you at all troubled that he's not here today?

6    A.    No, sir.

7    Q.    And you don't think that he should have to

8    appear at this deposition to defend you with

9    respect to your objection?

10   A.    I don't know nothing about that much of law,

11   if he should be here or shouldn't be here.

12   Q.    And I apologize if I already asked you this

13   question, but I had just concluded a deposition

14   that I asked some of these same questions, but so

15   since last week when I deposed you, you haven't

16   approached any of your customers to let them know

17   that you think you might have installed Chinese

18   drywall in their house?

19   A.    No, sir.

20   Q.    And you have no intention of doing so, do

21   you?

22   A.    No, sir.

23   Q.    And by the way, did you talk about your

24   earlier deposition from last week with anyone?

25   A.    My deposition, no, sir.  Like I said, I was

Confidential - Subject to Further Confidentiality Review

```
 1   out of town.

 2   Q.   You didn't discuss it with -- are you

 3   married, by the way?

 4   A.   No, sir.

 5   Q.   You didn't talk to any of your friends about

 6   it or anyone that works for you with you?

 7   A.   Oh, yeah, I talked to -- I just talked to him

 8   the day I went to the deposition on Thursday.

 9   Q.   And did you talk about any of the questions

10   that I asked you?

11   A.   No, sir.

12   Q.   What did you talk about?

13   A.   What's that?

14   Q.   What did you --

15   A.   I just told him that I had a deposition on

16   Chinese drywall and that's pretty much about it.

17   Q.   And who was this individual?

18   A.   One of my partners up in Dallas.

19   Q.   What's the name?

20   A.   What's that?

21   Q.   What's his name?

22   A.   Peter Gomez.

23   Q.   And you just told him your deposition, was

24   there anything else about it, did you tell him

25   anything about the deposition?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.   No, sir.

 2   Q.   Did you tell him you're objecting to a class

 3   action settlement?

 4   A.   I don't recall, I don't think so, no.

 5   Q.   Did he ask you why you were deposed?

 6   A.   What's that?

 7   Q.   Did he ask you why you were being --

 8   A.   No, he didn't.  He's just a friend, we just

 9   talked.

10   Q.   And you didn't discuss any of the questions I

11   asked you or any of the things that came up during

12   the deposition with this individual?

13   A.   No, sir.

14   Q.   Was there anyone else you spoke to about the

15   deposition?

16   A.   No, that's it.  Just brief like that.

17   Q.   And what did you do to prepare for today's

18   deposition?

19   A.   Didn't.

20   Q.   You didn't.  Did you meet with counsel at

21   all?

22   A.   I talked to Paul a little while, that's it.

23   Q.   Just today?

24   A.   Well, I called him yesterday because when I

25        I got served I called him, what's going on.
```

Confidential - Subject to Further Confidentiality Review

1  Q.  How long did you guys talk?

2  A.  I didn't time it, maybe minute, two minutes.

3  Q.  It was minutes as opposed to --

4  A.  Hours, yeah.

5  Q.  -- thirty minutes?

6  A.  Just minutes.

7  Q.  Under 30 minutes, would you say?

8  A.  Yes.

9  Q.  Under ten minutes, maybe five, ten minutes?

10  A.  Ten minutes, brief.

11  Q.  And did you talk to anyone else about today's

12  deposition before appearing today on the phone?

13  A.  I called the Bandas Law Office.

14  Q.  And did you talk to Mr. Bandas?

15  A.  I left a message.  He called me in the

16  morning.  I think it was this morning because we

17  were supposed to meet on Friday and I told him I

18  really don't -- I'm going to be busy on Friday.

19  He said let me check into it, so I'm here on

20  Thursday.

21  Q.  And did you guys -- did he prepare you for

22  the deposition?

23  A.  No, sir.

24  Q.  Scheduling, was that the extent of it?

25  A.  I think just the scheduling part of it.

Confidential - Subject to Further Confidentiality Review

```
 1   Q.   And how long did that call last?

 2   A.   Ten minutes, the most maybe.

 3   Q.   Just the two calls or was there any other

 4   phone calls?

 5   A.   Just two calls.

 6   Q.   Then did you meet with anyone to help prepare

 7   you other than Paul?

 8   A.   Went to Bandas office, dropped off a copy,

 9   they wanted a copy of the -- what's it called what

10   I got served?

11   Q.   The subpoena?

12   A.   Yes.  So I went to his office, he wasn't

13   there, just made a copy, walked out.  Secretary's

14   name is Margo, I don't know her last name.

15   Q.   What was her name?

16   A.   Margo.

17   Q.   And you met with Paul today, you said?

18   A.   Just right now when I walked in.

19   Q.   How long was that five, ten minutes longer?

20   A.   Just, you know, five, ten minutes.

21   Q.   And did you guys talk.  He did some prep of

22   you for the deposition?

23              MR. HUSEMAN:  Let's not talk about

24        what you talked with the lawyer about.

25              MR. GAUGHAN:  I'm not asking -- I'm
```

Confidential - Subject to Further Confidentiality Review

```
 1        trying to figure out if it was friendly or if

 2        it was --

 3   A.   Always friendly.  I saw he went to school at

 4   University of Texas.

 5   Q.   But did you actually do prep, I guess?

 6   A.   No sir.

 7   Q.   And does that pretty much cover everything

 8   you did in relation to today's deposition, the two

 9   phone calls and you met with Paul briefly?

10   A.   Yes, sir.

11   Q.   Did you discuss with anyone else that you

12   were going to be deposed today?

13   A.   No, sir.  I think Mr. -- when I talked to him

14   for a little while.  I said hi, how is it going.

15   He wanted me to come in.

16   Q.   This was when you came in, I guess?

17   A.   Yes, sir.

18                  (Exhibit 40 and 41 marked for

19        identification.)

20   BY MR. GAUGHAN:

21   Q.   And I'm showing you what's been marked as

22   Exhibits 40 and 41.  Do you have those in front of

23   you, Mr. Garcia?

24   A.   Yes, sir.

25   Q.   And these are the what we call notices of
```

Confidential - Subject to Further Confidentiality Review

```
 1   deposition and these would have been presented to

 2   you in connection with the subpoena that was

 3   served on you, do you recall receiving these

 4   materials?

 5   A.   Yes.

 6   Q.   Is it --

 7   A.   Well, they look a little different, but I

 8   think they're the same.

 9   Q.   They look different?

10   A.   Yeah.

11   Q.   Let me ask you this way, do you understand

12   that you're appearing today pursuant to these

13   notices to provide testimony?

14   A.   Yes, sir.

15   Q.   On behalf of yourself as well as your

16   company?

17   A.   Yes, sir.

18   Q.   Which is Bay Area Contracting and

19   Construction, Inc., is that a yes?

20   A.   Yes, sir.

21   Q.   You can put those aside, by the way.  I'm

22   going to show you what's been previously marked as

23   Exhibit 37.  Do you have that over there with you,

24   sir?   Now, this is I'll represent to you a motion

25   that was filed by class counsel on October 24th,
```

Confidential - Subject to Further Confidentiality Review

1    2012, it was filed in the Eastern District of

2    Louisiana with Judge Fallon.  It's now pending

3    before Judge Fallon and I'll represent to you that

4    this motion -- in this motion we're requesting

5    that Mr. Bandas and yourself as a client of Mr.

6    Bandas be sanctioned in connection with a motion

7    that Mr. Bandas filed seeking discovery related to

8    the settlement you're objecting to and ask you is

9    that something that you are aware of that class

10   counsel had moved to sanction you as well as your

11   counsel in connection with a discovery motion that

12   your lawyer had filed?

13   A.   What do you mean about sanction?

14   Q.   Okay.  Are you aware that sometimes courts

15   will issue orders where someone files a frivolous

16   motion, that sort of thing, and they'll require

17   that if they oppose the sanctions that the person

18   being sanctioned pay over money based on the

19   filing of a frivolous motion?

20   A.   No, sir.

21   Q.   Okay.  And I'll just elaborate a little bit.

22   So basically one of the things that courts have an

23   inherent authority to do is if they deem that a

24   party has filed something that's frivolous or

25   vexatious, that sort of thing, filed with bad

Confidential - Subject to Further Confidentiality Review

1    intention, courts will sometimes impose sanctions

2    because if you file a motion that's meritless,

3    that sort of thing, the other side still has to

4    respond to the motion and certain circumstances a

5    waste of time for the court, for the parties and

6    under those circumstances sometimes a court will

7    impose sanctions and those sanctions might be

8    things like costs or attorneys' fees in imposing

9    the motion, does that clarify what a sanction is

10   to you?

11   A.    Just if I have to testify?

12   Q.    No, basically a sanction would be imposed in

13   a situation where you file a frivolous motion, a

14   pointless motion that's meritless, the court says

15   it's meritless why are you filing this, you're

16   just doing it to harass the other party, something

17   like that, so if a court makes a determination

18   that that's going on, sometimes the court will

19   order the party that filed the motion pay money

20   and that might be for costs that the other side

21   incurred to defend against the motion, it could be

22   attorneys' fees.  Does that help you understand

23   what a motion for sanctions is?

24   A.    If we're at fault, then we have to pay

25   attorneys' fees?

Confidential - Subject to Further Confidentiality Review

```
 1   Q.   Yes, so basically in this particular

 2   instance, Exhibit 37, your lawyer Mr. Bandas filed

 3   a motion seeking discovery.  We believe that

 4   motion was frivolous and meritless and filed just

 5   to cause problems and we requested that the court

 6   impose sanctions upon Mr. Bandas as well as

 7   yourself since you're an objector?

 8   A.   Okay.

 9   Q.   Did you have an appreciation that we had

10   requested sanctions from yourself?

11   A.   I didn't know this was filed.

12   Q.   Is that something that you would've expected

13   your lawyer to tell you about?

14   A.   When was this filed?

15   Q.   On the 24th of October?

16   A.   I don't know if we talked about it, but yeah,

17   I think he would have told me about it.

18   Q.   You would have liked him to tell you about

19   that?

20   A.   Yes.

21   Q.   And do you have an understanding that we're

22   also requesting that the court order you to appear

23   in New Orleans to defend against this motion?

24   A.   When is that again?

25   Q.   Well, I'm not sure the court has scheduled a
```

Confidential - Subject to Further Confidentiality Review

```
 1   hearing date yet for this motion, but do you

 2   understand that that's something that we're asking

 3   the court to do to order that you appear?

 4   A.   Okay, well, then I have to appear.

 5   Q.   Okay.  Well, if the court, it orders you to

 6   appear, but were you aware that we requested?

 7   A.   You requested for us to appear?

 8   Q.   Yeah, were you aware that we were doing that?

 9   A.   No, sir.

10   Q.   Again is that something that you would have

11   liked your lawyer to tell you about?

12   A.   Well, I mean when it happens I guess he will

13   tell me.

14   Q.   Okay.  Well, is that something you would have

15   liked to have known about before he filed the

16   motion seeking discovery?

17   A.   I'll leave it up to Mr. Bandas.

18   Q.   Did he tell you that he was going to file a

19   motion seeking discovery?

20              MR. HUSEMAN:  Don't answer that

21        question.  We're on asserting attorney/client

22        privilege on that.

23              MR. GAUGHAN:  What was the

24        question?

25              MR. HUSEMAN:  Did he tell you, did
```

Confidential - Subject to Further Confidentiality Review

```
 1          the lawyer tell the client something.

 2               MR. GAUGHAN:  I understand.  I

 3          thought what I asked him is that something

 4          that you would have wanted your lawyer to

 5          tell you about.

 6   A.   I guess, like I said, we only met a couple

 7   times, so I don't -- I leave it up to him, he's an

 8   attorney.

 9   Q.   Was it your understanding that Mr. Bandas was

10   filing a motion seeking discovery from class

11   counsel?

12   A.   Well, I just know we objected, that's all

13   I've known.

14   Q.   So he hasn't told you anything after the

15   objection?

16   A.   No, sir.

17   Q.   And again would you want to know that he was

18   doing something that might cause you to be

19   sanctioned and have to appear before a judge in

20   New Orleans?

21   A.   He's just my attorney, that's all I know.

22   Q.   I'm asking would you want him to tell you

23   that, hey, I'm filing this motion?

24   A.   If it's important, I guess he will tell me.

25   Q.   So you don't think it's important that you
```

Confidential - Subject to Further Confidentiality Review

```
 1   might be sanctioned and ordered to appear in New

 2   Orleans?

 3   A.   If I have to appear, I'll appear.

 4   Q.   But that's not something you'd want to know

 5   about?

 6   A.   Sir?

 7   Q.   Would you want to know that he was filing a

 8   motion that may result in you being sanctioned and

 9   ordered to appear in New Orleans?

10   A.   I guess as an attorney if he wants me to know

11   about it, he'll let me know.

12   Q.   I'm not asking you that.  I'm asking would

13   you want to know before he filed the motion?

14   A.   I'll leave it up to him.

15   Q.   So you're a hundred percent relying upon

16   Mr. Bandas to do what is correct?

17   A.   Yes, sir.  Yes.

18   Q.   And I'm going to ask that you look at that

19   big document there with the binder clip on it

20   which is marked as Exhibit 38 and this is also

21   dated 10/24/12 and I take it you haven't seen this

22   motion before, have you?

23   A.   No, sir.

24   Q.   And I'll just represent to you that we filed

25   this motion and we, being class counsel, in
```

Confidential - Subject to Further Confidentiality Review

 1    response to certain of the Bandas objectors motion

 2    to dismiss their objections and also in response

 3    to your counsel's motion for leave to conduct

 4    discovery regarding the fairness of the proposed

 5    class action settlement, okay, and that was the

 6    motion we just talked about, the discovery motion

 7    that resulted in our motion for sanctions, okay?

 8    A.    Yes, sir.

 9    Q.    Let me just ask you real quick, one of the

10    things that prompted us to file or one of the

11    facts that we highlighted in this motion was that

12    your counsel, Mr. Bandas, when he filed the

13    discovery motion he included certain facts that

14    are completely incorrect about the settlement that

15    you're objecting to and they appeared to come from

16    another case where he filed an objection.

17         For instance, he said the contingency fee

18    provision was 40 percent and here you've actually

19    objected because you think the fee provision is

20    32 percent.  He also listed the amount of the

21    settlement is 16 million whereas the settlement

22    here is actually 83 million.  He also identified a

23    purported class representative by the name of

24    Mrs. Alice Hill who is not a party to the Chinese

25    drywall litigation at all.  So I guess my question

Confidential - Subject to Further Confidentiality Review

1   for you is does that cause any sort of concern for

2   you that you have hired a lawyer who can't even

3   get the facts right when he files an objection or

4   files, excuse me, a motion that's related to your

5   objection in this case?

6   A.   I don't know what attorneys do.  That's their

7   job, I don't know what the attorneys -- behind

8   that.

9   Q.   Do you expect them to get the facts right?

10  A.   I would hope they get the facts right.

11  Q.   Does it trouble you that Mr. Bandas got the

12  facts completely wrong?

13  A.   Doesn't trouble me because I'm not an

14  attorney.

15  Q.   Well, he's representing you and not doing a

16  great job of it is I guess what I'm trying to say.

17  Does that trouble you at all?

18  A.   No, sir.

19  Q.   Would you expect him to look over any sort of

20  filing he made with the court to make sure the

21  facts are right?

22  A.   As a business owner I try to cover myself,

23  so, you know, I can't tell him how to do his job,

24  he can't tell me how to do my job.

25  Q.   This is one of the reasons why we're moving

Confidential - Subject to Further Confidentiality Review

1  for sanctions is because it's obvious he just

2  filed this motion without even bothering to get

3  his facts straight and this is one of the reasons

4  you might actually be sanctioned because your

5  lawyer just threw together this motion without

6  investigating the facts or getting them correct

7  and does that bother you that you might

8  potentially be sanctioned or ordered to appear in

9  New Orleans because your lawyer didn't do his job?

10  A.   It doesn't bother me right now, but if I have

11  to appear, then it's going to bother me.

12  Q.   And if you get sanctioned, obviously it will

13  bother you as well?

14  A.   Yes, sir.

15  Q.   So at minimum I take it you expect your

16  lawyer to do a job that won't result in you being

17  sanctioned or required to appear in another state

18  to -- before a judge?

19  A.   Yes, sir.

20  Q.   And we don't know if that's going to happen

21  or not.  You might be ordered to appear before

22  Judge Fallon, you might be sanctioned?

23  A.   I don't know that.

24  Q.   You're willing to still go forward with your

25  objection with the understanding that you might be

Confidential - Subject to Further Confidentiality Review

```
 1   sanctioned and forced to appear in Louisiana?

 2   A.   Yes, sir.

 3   Q.   Okay.  Now, I guess one of the things that I

 4   kind of briefly got into last deposition, your

 5   counsel objected, but -- and Judge Fallon actually

 6   ruled on it, so we got into some of the issues

 7   where I was asking you about your lawyer's history

 8   as a professional objector.  Do you remember

 9   talking about that at all?

10   A.   I didn't do the talking, you were talking

11   about it.

12   Q.   I do a lot of talking, yes?

13   A.   I just listened.

14   Q.   Do you remember listening to me?

15   A.   Yes, sir.

16   Q.   How do you feel about that, that -- I

17   shouldn't say how do you feel about it, I should

18   say if I told you that at least eight courts have

19   spoken very harshly about your lawyer's history of

20   objecting to settlements that are not having any

21   real basis for the objection, frivolous objections

22   that are being pursued solely to recover attorneys

23   fees, would that in any way dissuade you from

24   continuing with your objection to this settlement?

25   A.   No, sir.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q.   And if you had known that your lawyer had a

 2   long history of being a professional objector who

 3   was seeking lawyers fees or legal fees and not

 4   seeking anything positive for the class, would

 5   that have dissuaded you from pursuing objection in

 6   this case?

 7   A.   I don't know what his job is, but at that

 8   time I guess if I known what I know now or

 9   whatever, you might want to say I don't know.

10   Q.   Well, that's what I'm asking you.  And

11   there's a possibility you're going to be

12   sanctioned, you understand that based on some of

13   your lawyer's conduct before the court and what

14   I'm trying to say is I've got eight different

15   judges who have made various rulings pertaining to

16   your lawyer's objections that have been very harsh

17   of your lawyer and say that he's highjacking

18   settlements, they say that he's only in it to get

19   legal fees, he's not doing anything for the actual

20   people that are injured, the class members, it's

21   all about legal fees.

22   A.   I'm still moving on with this case.

23   Q.   You're still moving on even though your

24   lawyer is seeking objections solely to recover

25   legal fees?
```

Confidential - Subject to Further Confidentiality Review

```
 1    A.    Yes, sir.

 2    Q.    That doesn't bother you?

 3    A.    Not at this time.

 4    Q.    Even though you might be sanctioned?

 5    A.    No, sir.

 6    Q.    Is it worth it just for the 5,000-dollar

 7    incentive fee?

 8    A.    What's that?

 9    Q.    Is it worth it just for a 5,000-dollar

10    incentive fee?

11    A.    No, it's not, I don't know what the fee is.

12    I don't know where you came up with that.  Is that

13    on the paperwork?

14    Q.    Yeah, it was actually remember last week you

15    looked at your retainer agreement?

16    A.    Haven't really looked at it at all totally.

17    Q.    It's in front of you.  It's marked Exhibit

18    28, if you could take a look at that really quick.

19          You don't remember talking about Exhibit 28

20    last week?

21    A.    Did we go over it?

22    Q.    Yes.

23    A.    Oh, 3.3?

24    Q.    Well, 3.2 and 3.3.  Do you remember going

25    over these provisions last week?
```

```
 1   A.   Yeah, I do.

 2   Q.   So you remember that part of your retainer

 3   agreement with counsel dealt with the prospect of

 4   you getting an incentive fee of $5,000?

 5   A.   I remember now, I think.  Didn't really think

 6   about it.

 7   Q.   Well, what I'm trying to ask is do you think

 8   with the prospect of you might be sanctioned, you

 9   might be required to appear before Judge Fallon,

10   does 5,000-dollar incentive fee really worth it?

11   A.   No, sir.

12   Q.   Then are you reconsidering your decision to

13   object to the settlement?

14   A.   No, sir.

15   Q.   Why not?

16   A.   Because I leave it up to Mr. Bandas, see

17   where we got to move forward on this.

18   Q.   What are you hoping that Mr. Bandas is going

19   to accomplish aside from getting a legal fee and

20   maybe a 5,000-dollar incentive fee for you?

21   A.   What's that?

22   Q.   What are you hoping he's going to accomplish

23   besides getting a legal fee for himself and maybe

24   a 5,000-dollar incentive fee for you?

25   A.   I don't know what he's going to accomplish.
```

1    Hopefully it will be fair.

2    Q.   And are you aware that Mr. Bandas has a long

3    history of filing objections --

4    A.   No, sir.

5    Q.   And withdrawing those objections after he

6    gets paid off without any change to the settlement

7    agreement?

8    A.   No, sir.

9    Q.   If I told you that, would that -- if I told

10   that fact, would that change your mind about

11   pursuing objection that he's really not going to

12   accomplish any change to the settlement other than

13   to get a fee?

14   A.   No, sir.

15   Q.   That doesn't change your mind?

16   A.   No, sir.

17   Q.   So at the end of the day you might just end

18   up with $5,000, Mr. Bandas gets a fee, settlement

19   doesn't change at all, that doesn't trouble you at

20   all?

21   A.   I'll leave it up to Mr. Bandas.

22   Q.   Are you looking at something, sir?

23   A.   Just reading this stuff.

24   Q.   Were you looking at something?

25   A.   I was just looking at --

Confidential - Subject to Further Confidentiality Review

1    Q.    I'd like to have you turn back to Exhibit 38

2    for a minute and just go through some of the

3    things that different courts have said about your

4    lawyer in Brown v. Wal-Mart, you can follow along

5    on page five if you want, Brown v. Wal-Mart

6    Stores, Inc., the Honorable Mark Vandewiele,

7    V-a-n-d-e-w-i-e-l-e, said the Bandas objection

8    filed on behalf of Ms. Carlson is a generic boiler

9    plate objection prepared and filed by attorneys

10   working for their own personal benefit and not for

11   the benefit of this class or for those lawyers'

12   clients.

13        So essentially the court observed that Mr.

14   Bandas filed a boiler plate objection that was

15   solely for his own benefit and not for the benefit

16   of anyone else, not even his own client.  Does

17   that trouble you that that's what your lawyer is

18   doing?

19   A.    It does trouble me, but --

20   Q.    Well, if you had known that fact before you

21   actually pursued your objection, do you think you

22   would have retained Mr. Bandas?

23   A.    Before the fact, yeah, probably.

24   Q.    You would have retained him anyway?

25   A.    What's that?

Confidential - Subject to Further Confidentiality Review

1  Q.   You would have still hired Mr. Bandas?

2  A.   If I knew the facts or what?

3  Q.   If you knew what this judge had said about

4  Mr. Bandas, essentially he's filing objection,

5  boiler plate objection that's solely for his own

6  benefit, not even for the benefit of his own

7  client.  That doesn't trouble you at all?

8  A.   Not at this time.

9  Q.   So if you knew that fact before you filed

10  your objection, you still would have filed an

11  objection?

12  A.   Because this is totally different from my

13  objection.  We're talking about Chinese drywall,

14  we're talking about Wal-Mart Store.

15  Q.   We're talking about the same concept,

16  objecting to a settlement, meritless objection

17  that's done solely for legal fees.  I'll continue

18  on -- (Phone interruption.)

19       I'm going to continue reading what Judge

20  Vandewiele said about Mr. Bandas in the same case,

21  he also continued on to say the record before the

22  court demonstrates that Bandas is a professional

23  objector who is improperly attempting to highjack

24  the settlement of this case from deserving class

25  members and dedicated, hardworking counsel,

Confidential - Subject to Further Confidentiality Review

```
 1   solely to coerce ill-gotten, inappropriate and
 2   unspecified legal fees.
 3        Do you see that?
 4   A.   Yes, sir.
 5   Q.   I'm just going to ask the same question, you
 6   really want to go forward with an attorney who's
 7   trying to highjack a settlement to coerce a legal
 8   fee?
 9   A.   At this time, yes.
10   Q.   Even though he's not pursuing an objection
11   for your benefit, it's for his own benefit, you
12   still want to go forward with that?
13   A.   Well, I've hired Mr. Bandas for that, so --
14   Q.   I'm going to say it again, there's a
15   possibility you're going to get sanctioned.  That
16   doesn't trouble you at all?
17   A.   I'll be troubled if I get sanctioned.
18   Q.   You're just going to wait and see?
19   A.   Yes, sir.
20   Q.   And I'll continue on the next one.  Mussmann
21   v. Wal-Mart Stores, Inc. Honorable David H.
22   Sivright stated the court has considered all the
23   materials and pleadings filed of record in this
24   case.  As well as related judicial rulings.  As a
25   result, the court concludes that attorney
```

Confidential - Subject to Further Confidentiality Review

```
 1   Christopher A. Bandas is a professional objector.

 2   The court is concerned that attorney Bandas is

 3   seeking to wrongfully use the class action and

 4   objection process for general -- excuse me, for

 5   personal gain and without any corresponding

 6   benefit to any individual objector or the

 7   settlement class as a whole.

 8       Do you see that?

 9   A.   Yes, sir.

10   Q.   And this is another judge more or less saying

11   the same thing, that Mr. Bandas is a professional

12   objector and he's trying to use the class action

13   process for his own personal gain.  He's objecting

14   for his own personal gain and he's not trying to

15   produce any benefit for his own client or for the

16   settlement class.  I'll just ask you, is that

17   really --  you really want to hire someone that's

18   just trying to extort a fee?

19   A.   He must be good at what he does.

20   Q.   Extorting fees?

21   A.   He's an attorney, I don't know the facts on

22   this stuff.

23   Q.   But you're okay with hiring a lawyer that

24   judges think is just trying to extort a fee?

25   A.   I'm still going to move forward with this
```

1   case.

2   Q.   And how about the next case, Ouellette v.

3   Wal-Mart Stores, Inc.  The Honorable Cole B. Peel

4   observed the court finds a lack of involvement and

5   participation of the objectors and their counsel

6   who are not present and lack involvement and

7   participation of the attorneys that were present

8   combined with their attempt to inject themselves

9   in the last minute into this eight-year litigation

10  constitutes an effort to extort money from the

11  class and/or class counsel.

12       Do you see that?

13  A.   Yes, sir.

14  Q.   This is another court, a third court

15  observing that your lawyer, Mr. Bandas is again a

16  professional objector trying to extort a fee and

17  again you're okay with this?

18  A.   Well, I don't even know if this is facts or

19  what.  You just copied it from somewhere, right?

20  Q.   If you want to look these are all attached

21  and if that makes you feel better if you look at

22  Exhibit D to this motion, you'll find a copy of

23  the judge's opinion.  These are facts.  These are

24  rulings by a court, rulings that say that your

25  lawyer is a professional objector who's trying to

Confidential - Subject to Further Confidentiality Review

```
 1   extort money.

 2   A.    Where is that at?

 3   Q.    Do you want to see it?  Is that what you

 4   want?

 5   A.    I just want to look at it.

 6   Q.    Which one do you want to look at?  Do you

 7   want to look at the top one or the other ones?

 8   A.    It says attached Exhibit D.

 9   Q.    You find Exhibit D?

10   A.    No, I found B.

11   Q.    If you want to look, sir, it's about here?

12   A.    There it is.

13   Q.    Okay.  I'll tell you right where you want to

14   find it.  It's going to be on page five of that

15   document, see the bottom there, three, four, five?

16   A.    Uh-huh.

17   Q.    And at paragraph 20.

18   A.    Yes.

19   Q.    That's where he says this.

20   A.    This says filed 10/24/2012.

21   Q.    That's when we filed and I guess you -- when

22   you file something in federal court, it's all

23   electronic nowadays, so what you're seeing there

24   at the top is actually relates to the motion

25   itself?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.   Oh, okay, because this is like in 20 --

 2   Q.   Yeah, it's just the way the court flags the

 3   documents on its record so it knows where they

 4   are.  But if you turn to page number -- if you go

 5   back to Exhibit D and you look at page ten of

 6   Exhibit D, you see that's the date of Judge Peel's

 7   opinion, done and ordered in Circuit Court in the

 8   Washington County, Chipley, Florida on this 21st

 9   day of August, 2009, do you see that?

10   A.   Yes, sir.

11   Q.   So this opinion is from August, 2009, and if

12   you look at that paragraph 20 on page five, that

13   says what I just quoted to you, okay.  So this is

14   an actual judge, not me, who has made this

15   determination that your lawyer is a professional

16   objector.  And what I'm trying to figure out, does

17   that trouble you at all?

18   A.   It troubles me.

19   Q.   But you still want to go forward with your

20   objection?

21   A.   Yes, sir.

22   Q.   Even with the understanding that you might be

23   sanctioned?

24   A.   Yes, sir.

25   Q.   Because some meritless objection?
```

Confidential - Subject to Further Confidentiality Review

```
1   A.   Well, I dealt with -- I've seen Chinese

2   drywall in my time.

3   Q.   But you have no understanding of where or if

4   you even installed it in someone's home?

5   A.   I don't know where, like I said, we've

6   installed a bunch of different types of drywall.

7   Q.   And you don't know if it relates to your

8   company, Bay Area Contracting.  We talked about

9   you had at least one other company that you were

10  involved in where you might have installed this

11  drywall, assuming you did install Chinese drywall,

12  so, you know, that other company didn't object,

13  it's only Bay Area Contracting that objected?

14  A.   Yes, sir.

15  Q.   So you have no way of knowing as you sit here

16  whether you actually, you or your company Bay Area

17  Contracting ever installed Chinese drywall, you

18  might have seen it on a different job site that

19  related to another company?

20  A.   Like I said, I think it was in Dallas, Fort

21  Worth or Houston area.

22  Q.   Of course none of your customers have come

23  forward and complained that they think you

24  installed Chinese drywall on their properties,

25  have they?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.    Which would be good, that's good.

 2   Q.    That is good, but it also to me suggests that

 3   you didn't install any Chinese drywall in their

 4   homes?

 5   A.    Some of it was commercial too.

 6   Q.    What do you mean by commercial?

 7   A.    Commercial buildings.

 8   Q.    But commercial clients also complain, don't

 9   they, if there's a problem?  So, I'm just saying

10   no one has complained, so you don't really know.

11   A.    Uh-huh.

12   Q.    So if you want to go to page six of this

13   motion, I'll show you yet a fourth instance where

14   a court has disparaged your lawyer.  The Honorable

15   Perry M. Buckner in Carter v. Wal-Mart Stores,

16   Inc., in his opinion stated in spite of the fact

17   that Mr. Bandas is a serial professional objector,

18   I've reviewed and considered the Bandas objection

19   on its merits.  The court finds that for a

20   plethora of reasons the Bandas objection lacks

21   substantive merit.

22         Again this is another court saying your

23   lawyer is a professional objector pursuing an

24   objection that lacks substantive merit.  And again

25   you're okay with this?
```

Confidential - Subject to Further Confidentiality Review

```
 1    A.    I don't know what he does -- I guess that's

 2    what he does for a living.

 3    Q.    He pursues meritless objections?

 4    A.    That's what it sounds like you're saying

 5    right there.

 6    Q.    So you're willing to hire someone as your

 7    lawyer who pursues meritless objections?

 8    A.    I guess so because he's my attorney.

 9    Q.    Are you concerned you might be sanctioned?

10    A.    You already said that a couple times.

11    Q.    I'm just making sure you're concerned?

12    A.    Yes, sir.

13    Q.    You're dealing with someone that's got a

14    history, the court, Judge Fallon, who's presiding

15    over the Chinese drywall litigation has been

16    advised of this history, there's a motion pending

17    that details this history, you're looking at it,

18    you know, are you at all concerned that you might

19    get sanctioned here?

20    A.    Yes, sir.

21    Q.    Okay.  And again that doesn't dissuade you in

22    any way from going forward with your objection?

23    A.    Not at this time.

24    Q.    And how about if we look at the next case,

25    the fifth case?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.   Seems like we got a bunch of cases we're

 2   going to look at.

 3   Q.   Yeah, we're going to look at them all.  In

 4   Conroy v 3M Corporation on page six, the Honorable

 5   Claudia Wilken found that Mr. Bandas found that

 6   the objections of Mr. Bandas' clients to be

 7   patently frivolous and bore no particular

 8   relationship to the circumstance of the

 9   settlement.  Kind of like in this case.  Then

10   imposed a 431,167-dollar appeal bond requirement.

11        And that's a lot of money, right, 431,000, is

12   that money that you would have handy in case you

13   had to post a bond?

14   A.   No, sir.

15   Q.   Okay.  I'll explain real quickly what's

16   happening there.  This is an instance where what

17   your lawyer does, he files objections, the courts

18   overrule the objections and then he'll file an

19   appeal and the purpose of that is to try to hold

20   up and delay the settlement in the hopes that the

21   lawyers will pay him off to go away and so what

22   this court did was in order to prevent Mr. Bandas

23   from doing that, it imposed a 431,000-dollar bond

24   requirement.  Does that trouble you at all that

25   the court would say the appeal is frivolous, the
```

```
 1   objections are frivolous, I'm going to impose a

 2   431,000-dollar bond requirement?

 3   A.   What's a requirement on that?

 4   Q.   You have to come forward with $431,000?

 5   A.   Not for a bond, there's a percentage.

 6   Q.   Well, usually you go to a company, but yeah?

 7   A.   It's like a 3 percent, 5 percent.

 8   Q.   But you would actually have to pay the money

 9   if the court -- if at the end of the appeal the

10   court determines the appeal is frivolous, you have

11   to come forward with the $431,000?

12   A.   But a bond -- that's just the total amount of

13   the bond.

14   Q.   Well, in this instance they have to actually

15   pay over cash.  I don't know if you understand

16   that with an appeal bond you have to actually pay

17   cash.  You don't pay 3 percent, you pay cash.

18   A.   Yeah.

19   Q.   It usually goes into like an escrow account,

20   sits there collects interest.  Are you willing to

21   pay $431,000 to pursue an appeal if Judge Fallon

22   strikes down your objection?

23   A.   Yes, sir.

24   Q.   Okay.  You have that money?

25   A.   No, sir.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q.   Okay.  How are you going to pay it then?

 2   A.   Hopefully Mr. Bandas come up with the money.

 3   Q.   You yourself don't have the money?

 4   A.   No, sir.

 5   Q.   And aren't going to put it forward?

 6   A.   No, sir.

 7   Q.   How about the next case there, Kevin Embry v.

 8   Acer American Corp. and in this case the Honorable

 9   H. James Ware required that Bandas post an appeal

10   bond of $70,650 and so imposing that bond the

11   court found that the merits of the objector's

12   appeal weigh heavily in favor of requiring a bond

13   insofar as his objections to the settlement are

14   lacking in merit.  Objector Bandas makes no

15   objection to the terms of the settlement itself,

16   but objects only to attorney fees.  Continues on,

17   but I'll leave it off there.

18        Again do you have $70,000 to put up as a

19   bond?

20   A.   No, sir.

21   Q.   Are you willing to do so if you're required

22   to?

23   A.   If required to.

24   Q.   And again are you -- this is the sixth court

25   that's observed that Mr. Bandas is pursuing an
```

Confidential - Subject to Further Confidentiality Review

```
 1    appeal or an objection that lacks merit, are you

 2    troubled by that and do you still want to go

 3    forward with Bandas as your counsel under those

 4    circumstances?

 5    A.   I'll still go forward with it.  We're already

 6    this far.  Can I take a break.  I need some more

 7    water and go to the bathroom.

 8              VIDEOGRAPHER:  Off the record.

 9         It's 6:31, this concludes tape one.

10                   *   *   *

11              VIDEOGRAPHER:  We're back on the

12         record at 6:44.  This is the beginning of

13         tape two.

14    BY MR. GAUGHAN:

15    Q.   Mr. Garcia, picking up where we left off, I'm

16    going to ask you continuing on that same line of

17    questions and start by asking if I told you then

18    in Embry v. Acer American Corp. the Honorable H.

19    James Ware had required Mr. Band as to post a

20    70,650-dollar bond in light of a meritless

21    objection that Mr. Bandas was pursuing in a

22    subsequent appeal, would that cause you to in any

23    way change your current course of conduct with

24    Mr. Bandas as your counsel?

25    A.   Not at this time.
```

```
 1   Q.    Okay.  And in that case, Mr. Bandas was also

 2   opposing attorneys' fees and as I appreciate it,

 3   that's what your opposing is the attorney fee

 4   provision, correct?

 5   A.    Yes, sir.

 6   Q.    And you're still willing to go forward with

 7   that objection to attorneys' fees even though

 8   we're seeing an instance where another court ruled

 9   that Mr. Bandas's objection to attorneys' fees

10   were meritless?

11   A.    Yes, sir.

12   Q.    And again the court imposed a 70,650-dollar

13   bond and that's not something that you would be

14   able to afford to post, if it came to it, could

15   you?

16   A.    No, sir.

17   Q.    And the next case which is In Re: Cathode Ray

18   Tube CRT Antitrust Litigation, which is a case in

19   the Northern District of California appearing

20   before H. Samuel Conti, that court recently on

21   March 22nd, 2012 overruled the objection of

22   Mr. Bandas's client since they failed to submit

23   proof of otherwise establishing that he was a

24   member of the class and, therefore, that

25   individual lacked standing to challenge a
```

1    settlement.

2        Now this is something that we feel we have

3    here as well, that you don't have standing to

4    attack the settlement because, you know, there's

5    really no real evidence that you installed Chinese

6    drywall in anyone's home and there's really no

7    evidence that you have incurred any sort of

8    personal injuries or anything like that, so you're

9    still willing to go forward with your settlement

10   even though the court could rule that you don't

11   have any standing to object?

12   A.   Yes, sir.

13   Q.   And you understand that you could be

14   sanctioned?

15   A.   Yes, sir.

16   Q.   And that the court could require you to post

17   a substantial bond possibly 400,000, 70,000,

18   whatever it might be, you understand that and --

19   A.   I hope not.

20   Q.   What's that?

21   A.   I hope not.

22   Q.   But it has no impact on your decision to

23   continue your objection?

24   A.   No, sir.

25   Q.   And possible appeal?

Confidential - Subject to Further Confidentiality Review

```
 1   A.   No, sir.

 2   Q.   And the next case I want to show you is on

 3   the next page In Re: Wal-Mart Wage and Hour

 4   Employment Practices Litigation, which was a case

 5   in the United States District Court for the

 6   District of Nevada in which Philip M. Pro actually

 7   imposed an even larger bond requirement of

 8   $500,000 per objector since the objections were

 9   not supported by the law or the facts and are

10   indeed meritless.  Again this is a case where your

11   counsel objected to a settlement, the court

12   observed that objector's counsel having a

13   documented history of filing notices of appeal

14   from orders approving other class actions and

15   thereafter dismissing said appeals when they and

16   their clients were compensated by the settling

17   class or counsel for the settling class.

18        And I guess this is what we were talking

19   about before that your lawyer has a history of

20   pursuing objections and then when those objections

21   are overruled by the court, he'll file an appeal

22   to try to slow things down and could cause a delay

23   of up to a year or possibly longer by pursuing an

24   appeal in order -- and what he's looking for is

25   fees to go away.  And again this doesn't trouble
```

Confidential - Subject to Further Confidentiality Review

1   you in any way?

2   A.   Not at this time.

3   Q.   And you're still willing to go forward with

4   your appeal?

5   A.   Yes, sir.

6   Q.   And you understand that you could have be

7   required to post a bond, could be $500,000, could

8   be more?

9   A.   And get sanctioned.

10  Q.   And you understand that we've gone through

11  now eight different courts that have criticized

12  your counsel for his pattern of pursuing frivolous

13  appeals and objections?

14  A.   Yes, sir.

15  Q.   And you're still willing to go forward and

16  understand that you could be sanctioned by the

17  court?

18  A.   Yes, sir.

19  Q.   How about the fact if I told you that Mr.

20  Bandas has at least objected to 23 class

21  settlements that I'm aware of, does that trouble

22  you that he's opposed that many -- objected to

23  that many settlements, 23 class settlements?

24  A.   I'm not aware of that.

25  Q.   I'm asking you, does that bother you,

```
 1   assuming that's true and I'll represent to you

 2   that it is that he's opposed more than 23 class

 3   settlements, I mean that's problematic and

 4   troubling, isn't it?

 5   A.   I don't know what the answer for that is.

 6   He's an attorney, I'm not.

 7   Q.   So he's making a living extorting fees based

 8   on frivolous objections, does that have --

 9   A.   I think that's what you're saying.

10   Q.   I am saying that.

11   A.   That's what I said, I think that's what

12   you're saying.

13   Q.   Of course.

14   A.   Okay.

15   Q.   Because it's true.

16   A.   I don't know if it's true.

17   Q.   We just read through eight different opinions

18   or sections of eight different opinions where

19   courts have observed that Mr. Bandas is a --

20   A.   Professional objector.

21   Q.   -- professional objector and that he's trying

22   to extort fees and went through several opinions.

23   It's not just my representation, it's courts have

24   found this, different judges have found him to be

25   a professional objector who's only after fees.  So
```

Confidential - Subject to Further Confidentiality Review

```
 1   it's not just my observation.  I'm telling you

 2   that I found more than 23 cases where Mr. Bandas

 3   has pursued objections and appeals and/or appeals

 4   I should say to class settlements.  And that's

 5   problematic, in my opinion, I'm asking you what's

 6   your opinion, filing objections to extort fees?

 7   A.   Are you trying to -- I need to say something

 8   or you need -- what are you trying me to tell you,

 9   that if it bothers me?

10   Q.   You want that person representing you?

11   A.   Well, he's representing me now.

12   Q.   You want him to represent you?

13   A.   Yes, sir.

14   Q.   You're happy with that?

15   A.   Yes, sir.

16   Q.   And obviously you understand you can be

17   sanctioned?

18   A.   You told me that already.

19   Q.   Telling you again just to make sure it sinks

20   in?

21   A.   Sanctioned and bonded and -- okay.

22   Q.   I don't know about the bonded part, but there

23   could be a bond requirement.  How about if I told

24   you that Mr. Bandas has frequently used members of

25   his -- or employees of his office to pursue
```

Confidential - Subject to Further Confidentiality Review

 1    objections.  Do you find that problematic in any

 2    way?

 3    A.    Yes, sir.

 4    Q.    Filing the same person in more than one case

 5    filing?

 6    A.    Like I said, I don't know what he does.

 7    Q.    He's used the son of his office manager to

 8    object to another settlement, is that troubling?

 9    A.    What's the office manager's name again?

10    Q.    Jan Petrus?

11    A.    Don't know her.

12    Q.    She objected to this settlement along with

13    yourself?

14    A.    Really.

15    Q.    When originally filed, she also objected to

16    Chinese drywall settlement involving Lowe's and

17    she also objected to a case involving Bank of

18    America and her son objected to that same case

19    involving Bank of America and also objected in a

20    case called Sullivan v DB Investments, Inc., so

21    he's using people that work in his office or their

22    family members to oppose settlements so that he

23    can earn more legal fees, extort more legal fees,

24    I'm sorry and this is who you want representing

25    you?

Confidential - Subject to Further Confidentiality Review

```
 1   A.   At this time, yes, sir.

 2   Q.   And you're willing to go forward with him?

 3   A.   Yes, sir.

 4   Q.   If I told you he's got other people who he's

 5   used, other individuals, Lolita Wells who's

 6   objected to more than one settlement with Mr.

 7   Bandas as counsel and a Mr. Kervin M. Walsh who's

 8   objected to two settlements with Mr. Bandas as

 9   counsel, that doesn't bother you?

10   A.   I don't know who these people are.

11   Q.   I guess my point is he's using people to --

12   the same people to oppose multiple different

13   settlements in some cases, people that are after

14   these 5,000-dollar incentive fees so that he can

15   get paid, the client gets paid like you're going

16   to get paid your 5,000-dollar incentive fee and

17   what I'm trying to figure out is you really want

18   to go forward with someone under those

19   circumstances and oppose a settlement?

20   A.   Yes, sir.

21   Q.   And if I told you that Mr. Batman has opposed

22   at least four settlements that we're aware of and

23   he's the individual -- I guess his investigator

24   brought you in, but he's doing the same thing,

25   he's opposing settlements, he's extorting fees?
```

```
 1   A.    Who is that, Batman?

 2   Q.    Batman, Mr. Batman, excuse me.  You sure you

 3   want to get mixed up with these people?

 4   A.    I'm still moving forward with this.

 5   Q.    What I'd like to finish off with is we have

 6   moved for sanctions against you with respect to

 7   Mr. Bandas's motion seeking discovery and so if

 8   the court orders you to appear in New Orleans, you

 9   will do so?

10   A.    Yes, sir.

11   Q.    And if the court sanctions you, you'll pay

12   the sanction?

13   A.    Yes, sir.

14   Q.    Okay.  And we've already gone on record at

15   least in the beginning of this deposition saying

16   that in light of the late production of documents

17   and at this deposition, before this deposition

18   last night as well as immediately before this

19   deposition we're going to be seeking sanctions or

20   costs in appearing today, attorneys' fees and

21   asking that you appear for a deposition in New

22   Orleans to -- after these documents have been

23   reviewed.  That's where we stand and if that

24   happens, you'll pay any sort of sanctions that the

25   court imposes and you'll appear in New Orleans?
```

Confidential - Subject to Further Confidentiality Review

```
 1    A.    If I have to.

 2    Q.    Okay.

 3                  MR. GAUGHAN:  That's it.

 4                  MR. HUSEMAN:  Aren't you glad I

 5          wasn't making objections.

 6                  VIDEOGRAPHER:  Off the record at

 7          6:57.

 8                            *   *   *

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1
 2                   CERTIFICATE
 3
 4
 5          I HEREBY CERTIFY that the
     witness was duly sworn by me and that the
 6   deposition is a true record of the
     testimony given by the witness.
 7
            It was requested before
 8   completion of the deposition that the
     witness, RONNIE GARCIA, have the
 9   opportunity to read and sign the
     deposition transcript.
10
11
            _____
12          ANGELA M. HOWARD, Texas CSR 8775
            Expiration Date:  12/31/12
12          Certified Reporter
13          Notary Public
            Dated:  November 13, 2012
14
15
16          (The foregoing certification
17   of this transcript does not apply to any
18   reproduction of the same by any means,
19   unless under the direct control and/or
20   supervision of the certifying reporter.)
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                INSTRUCTIONS TO WITNESS

 2

 3                    Please read your deposition

 4    over carefully and make any necessary

 5    corrections.  You should state the reason

 6    in the appropriate space on the errata

 7    sheet for any corrections that are made.

 8                    After doing so, please sign

 9    the errata sheet and date it.

10                    You are signing same subject

11    to the changes you have noted on the

12    errata sheet, which will be attached to

13    your deposition.

14                    It is imperative that you

15    return the original errata sheet to the

16    deposing attorney within thirty (30) days

17    of receipt of the deposition transcript

18    by you.  If you fail to do so, the

19    deposition transcript may be deemed to be

20    accurate and may be used in court.

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

1                        -    -    -    -    -    -

                         E   R   R   A   T   A

2                        -    -    -    -    -    -

3

4     PAGE    LINE    CHANGE

5     _____  _____  _____

6         REASON: _____

7     _____  _____  _____

8         REASON: _____

9     _____  _____  _____

10        REASON: _____

11    _____  _____  _____

12        REASON: _____

13    _____  _____  _____

14        REASON: _____

15    _____  _____  _____

16        REASON: _____

17    _____  _____  _____

18        REASON: _____

19    _____  _____  _____

20        REASON: _____

21    _____  _____  _____

22        REASON: _____

23    _____  _____  _____

24        REASON: _____

25

Confidential - Subject to Further Confidentiality Review

```
 1

 2          ACKNOWLEDGMENT OF DEPONENT

 3

 4              I,_____, do

 5    hereby certify that I have read the

 6    foregoing pages, and that the same is

 7    a correct transcription of the answers

 8    given by me to the questions therein

 9    propounded, except for the corrections or

10    changes in form or substance, if any,

11    noted in the attached Errata Sheet.

12

13

14    _____

15    RONNIE GARCIA                    DATE

16

17

18    Subscribed and sworn

      to before me this

19    _____ day of _____, 20_____.

20    My commission expires:_____

21

      _____

22    Notary Public

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    LAWYER'S NOTES

 2    PAGE  LINE

 3    _____  _____  _____

 4    _____  _____  _____

 5    _____  _____  _____

 6    _____  _____  _____

 7    _____  _____  _____

 8    _____  _____  _____

 9    _____  _____  _____

10    _____  _____  _____

11    _____  _____  _____

12    _____  _____  _____

13    _____  _____  _____

14    _____  _____  _____

15    _____  _____  _____

16    _____  _____  _____

17    _____  _____  _____

18    _____  _____  _____

19    _____  _____  _____

20    _____  _____  _____

21    _____  _____  _____

22    _____  _____  _____

23    _____  _____  _____

24    _____  _____  _____

25    _____  _____  _____
```