Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
 2
 3   IN RE: CHINESE-MANUFACTURED:
     DRYWALL PRODUCTS LIABILITY : MDL NO. 2047
 4   LITIGATION                 : SECTION: L
     _____:
 5
     THIS DOCUMENT RELATES TO ALL CASES AND:
 6
 7   Payton, et al. v. Knauf Gips, KG, et al.
     Case No.2:09-cv-07628 (E.D.La.)
 8
     Gross, et al. v. Knauf Gips, KG, et al.
 9   Case No.2:09-cv-06690 (E.D.La.)
10   Rogers, et al. v. Knauf Gips, KG, et al.
     Case No.2:10-cv-00362 (E.D.La.)
11
     Amato, et al. v. Liberty Mutual Ins. Co.
12   Case No.2:10-cv-00932 (E.D.La.)
13   Abreu, et al. v. Gebrueder Knauf
     Verwaltungsgesellschaft, KG, et al.
14   Case No.2:11-cv-00252 (E.D.La.)
15   Block, et al. v. Gebrueder Knauf
     Verwaltungsgesellschaft, KG, et al.
16   Case No.11-cv-1363 (E.D.La.)
17   Arndt, et al. v. Gebrueder Knauf
     Verwaltungsgesellschaft, KG, et al.
18   Case No.11-cv-2349 (E.D.La.)
19   Cassidy, et al. v. Gebrueder Knauf
     Verwaltungsgesellschaft, KG, et al.
20   Case No. 11-cv-3023 (E.D.La.)
21   Vickers, et al. v. Knauf Gips KG, et al.
     Case No.2:09-cv-04117 (E.D.La.)
22   _____
23
24
25
```

1    **************************************************

2              CONFIDENTIAL - SUBJECT TO FURTHER

3                  CONFIDENTIALITY REVIEW


4         ORAL AND VIDEOTAPED DEPOSITION OF SAUL SOTO

                        (Volume 2)

5                    NOVEMBER 8, 2012


6

7    **************************************************

8                  Deposition testimony of Saul Soto,

9    produced as a witness at the instance of the

10   Plaintiffs, and duly sworn, was taken in the

11   above-styled and numbered cause on the eighth day

12   of November, 2012, from 3:29 p.m. to 5:12 p.m.,

13   before Angela M. Hailey-Howard, Certified Shorthand

14   Reporter in and for the State of Texas, reported by

15   machine shorthand, at the offices of Huseman Dodson

16   Hummell Law Firm, 615 North Upper Broadway, Suite

17   2000, Corpus Christi, Texas  78401, pursuant to the

18   Federal Rules of Civil Procedure and the provisions

19   stated on the record or attached hereto.

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1                 A P P E A R A N C E S
 2
    FOR THE PLAINTIFFS:
 3
    MATTHEW C. GAUGHAN, ESQUIRE
 4  LEVIN, FISHBEIN, SEDRAN & BERMAN
    510 Walnut Street, Suite 500
 5  Philadelphia, PA  19106
    (215)592-1500
 6  mgaughan@lfsblaw.com
 7  FOR THE WITNESS:
 8  VAN HUSEMAN, ESQUIRE
    PAUL DODSON, ESQUIRE
 9  HUSEMAN DODSON HUMMELL, PLLC
    615 N. Upper Broadway, Suite 2000
10  Corpus Christi, TX 78401
    (361)883-3563
11  vhuseman@hdhlawfirm.com
    pdodson@hdhlawfirm.com
12
13  THE VIDEOGRAPHER:
    Hank Wisrodt
14  Complete Litigation Support
    Austin, TX
15
16  ALSO PRESENT:
    Ronnie Garcia
17
                     * * * * * *
18
19
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

1                    I N D E X
2
                                                    PAGE
3
    Appearances ..............................    122
4
    SAUL SOTO
5
    Examination by Mr. Gaughan ...............    124
6
7
8
9
10                 E X H I B I T S
11                                                 PAGE
    NO.                DESCRIPTION
12
    Exhibit 33    Nov. 8, 2012 letter .........    129
13
    Exhibit 34    Notice of Deposition ........    143
14
    Exhibit 35    Notice of Deposition for
15                 SHS Construction ............    143
    Exhibit 36    Copy of Judge Fallon's order
16                 and Mr. Soto's notes ........    144
    Exhibit 37    Copy of class counsel's
17                 motion for sanctions ........    153
    Exhibit 38    Class counsel's response and
18                 motion .....................    156
19
20
21
22
23
24
25

Confidential - Subject to Further Confidentiality Review

```
 1                    (Thursday, November 8, 2012.

 2         Videotaped Deposition Proceeding.)

 3                    VIDEOGRAPHER:  This is the

 4         videotaped deposition of Saul Soto, taken on

 5         November 8, 2012, time is 3:29 p.m. in the

 6         matter of Chinese-manufactured drywall

 7         products liability litigation.  Will counsel

 8         please identify themselves for the record.

 9                    MR. GAUGHAN:  Matthew Gaughan for

10         class counsel.

11                    MR. HUSEMAN:  This is Van Huseman

12         on behalf of Mr. Soto.

13                    MR. DODSON:  And Paul Dodson as

14         well.

15                    VIDEOGRAPHER:  Will the court

16         reporter please swear in the witness.

17                    THE WITNESS:  Saul H. Soto.

18                         *   *   *

19                    SAUL SOTO, after having been duly

20         sworn, was examined and testified as follows:

21                    MR. HUSEMAN:  Before we get

22         started, I want to say something here which

23         is sort of inviting you to agree with me on

24         something on this.  It's my understanding

25         from what my sense what the judge ordered is
```

Confidential - Subject to Further Confidentiality Review

```
 1        he doesn't want us instructing witnesses not

 2        to answer save except on privilege claims.

 3                MR. GAUGHAN:  That's correct,

 4        that's my understanding.

 5                MR. HUSEMAN:  Now, we have object-

 6        ions as you're probably aware and we don't

 7        necessarily or not entirely happy with the

 8        judge's ruling as you might expect, but we do

 9        have objections relating to privilege, work

10        product, particularly with regard to the

11        notes that the judge produced, also have

12        claims about harassment which we've discussed

13        sort of informally in the past and I was

14        wondering if you would be so kind to allow us

15        to have a running objection on this, which

16        means we don't have to be on our toes quite

17        so much and you don't have your deposition

18        interrupted so much, can we do that?

19                MR. GAUGHAN:  What you're asking me

20        for is a --

21                MR. HUSEMAN:  Running objection.

22                MR. GAUGHAN:  Basically you're ob-

23        jecting any question pertaining to his notes.

24                MR. HUSEMAN:  Any harassment type

25        things as opposed to your getting him
```

```
 1        answering all this and I'm breaking in saying

 2        that's harassing, etc., can we just have a

 3        pass on that in terms of having to make those

 4        objections here.

 5              MR. GAUGHAN:  We'll agree that your

 6        objection will be understood, running

 7        objection.

 8              MR. HUSEMAN:  And I think it's

 9        easier on both of us.  That means I can sit

10        over here and sleep through it and you don't

11        get interrupted.

12              MR. GAUGHAN:  That sounds

13        excellent.  Before we get started as well,

14        I'd just like to put on the record that last

15        night we received a letter from Mr. Bandas

16        with a series of documents I think for

17        Mr. Soto's deposition, total of 6,856

18        documents and immediately prior to today's

19        deposition we minutes ago really received a

20        letter from the Bandas Law Firm, you know,

21        supposedly showing us a more limited set of

22        documents that were relevant to today's

23        deposition, three-page document with just

24        Bates numbers on it.  I think it's not

25        realistic that we're going to have -- that
```

```
 1        I'm going to have an opportunity even if we
 2        printed up all these documents to review them
 3        and to ask the witness questions about those
 4        documents, so I just like to put that on the
 5        record that we're intending to seek sanctions
 6        and we'll request that in that motion request
 7        the witness appear in New Orleans to be de-
 8        posed further, but I'm going to put that on
 9        the record before we get started.  And of
10        course we'll seek costs and attorneys fees
11        and everything else.
12                MR. HUSEMAN:  Sure, the whole nine
13        yards, but the point of it is on that and I
14        think -- I'm a little bit out of my area
15        here, but my understanding of this is that
16        all of us deciding what's relevant and what
17        isn't is that when they're doing remodeling
18        stuff, a huge amount of the stuff involves
19        drywallers connected with it, etc., and
20        trying to siv that out, trying to strain that
21        out, there was people talking about doing
22        all-nighters trying to do this to get things
23        sorted out.  I understand what your point is,
24        but it has not been from what I've heard
25        without a lot of effort on our side as well.
```

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. GAUGHAN:  What I'm trying to

 2           say is I think this is a pretty lengthy list

 3           of documents and I will actually mark it in a

 4           minute for the record, but I don't think it's

 5           realistic for us to -- for me to have been

 6           able to actually review these documents since

 7           it got produced to me at 3:00 and it's now

 8           3:30.

 9                    MR. HUSEMAN:  Well, you mean the

10           refined version of it?

11                    MR. GAUGHAN:  The refined version.

12                    MR. HUSEMAN:  Sure, and if you need

13           to, we'll give you all the time you need on

14           that if you need doing that type of thing.

15                    MR. GAUGHAN:  I guess it was my

16           understanding before that the documents or at

17           least this sort of list would be produced on

18           a rolling basis so we would have it in time

19           to review and that obviously didn't happen.

20                    MR. HUSEMAN:  I don't know who is

21           doing what on that.  That isn't my niche.

22                    MR. GAUGHAN:  I understand.  We'll

23           visit that matter with the court, so I just

24           want to put that on the record before we get

25           started, though.  And I will have the court
```

```
 1        reporter mark this as Exhibit 33, which is

 2        just a letter that I received immediately

 3        before this deposition.

 4                  (Exhibit 33 marked for

 5        identification.)

 6                  MR. GAUGHAN:  The other thing I'd

 7        like to put on the record before we get

 8        started is I think I know the answer to this

 9        question --

10                  MR. HUSEMAN:  You only get to put

11        one thing on the record, you've done it.

12                  MR. GAUGHAN:  I wish that were the

13        rule, but it's my understanding Ms. Petrus

14        hasn't been served yet and she's not appear-

15        ing at all and I'd just like to verify you

16        guys don't have any different understanding.

17                  MR. HUSEMAN:  I've never talked to

18        her about this thing, so I don't know what

19        she's doing.

20                  MR. GAUGHAN:  And you're not

21        representing her.

22                  MR. HUSEMAN:  At least this point

23        I'm not.

24                  MR. GAUGHAN:  The same with

25        Mr. Vitela and E and E Construction, it's my
```

Confidential - Subject to Further Confidentiality Review

```
 1        understanding he's not going to appear, he

 2        hasn't been served yet.

 3                  MR. HUSEMAN:  That's what the rumor

 4        on street is.  I've never talked to either

 5        one of them about this matter, I don't know.

 6                  MR. GAUGHAN:  And you don't

 7        represent him or E and E Construction.

 8                  MR. HUSEMAN:  Not at this point.

 9        It may be that that task falls to us in the

10        future, but that bridge hasn't been crossed

11        yet.

12                  MR. GAUGHAN:  I think we can get

13        started.

14                       EXAMINATION

15   BY MR. GAUGHAN:

16   Q.   Good afternoon, Mr. Soto.  Thank you for your

17   patience in listening to this lengthy lawyer speak

18   and I want to thank you for appearing today.

19   Before we get started, I'm assuming he's appearing

20   and I think this is kind of agreed to for himself

21   and for SHS Construction?

22                  MR. HUSEMAN:  That's correct.

23   A.   Yes, sir.

24                  MR. HUSEMAN:  I think it's a sole

25        proprietorship.  He is it.
```

Confidential - Subject to Further Confidentiality Review

```
 1                    THE WITNESS:  Yes, it's doing
 2          business as.
 3                    MR. GAUGHAN:  I understand.  I just
 4          wanted to put that on the record.  That was
 5          my appreciation last time and I just want to
 6          make sure it's the understanding going into
 7          today's deposition.
 8                    THE WITNESS:  Yes, sir.
 9                    MR. GAUGHAN:  And I take it Mr.
10          Bandas is not appearing again?
11                    MR. HUSEMAN:  Well, he's got a
12          hearing in the morning in front of the judge,
13          he's already -- I talked to him a while ago,
14          he was at the airport getting ready to fly to
15          New Orleans, so I guess he's not going to be
16          here.
17                    MR. GAUGHAN:  In front of Judge
18          Fallon?
19                    MR. HUSEMAN:  In the morning.
20                    MR. GAUGHAN:  That would certainly
21          explain why he's not here.
22     BY MR. GAUGHAN:
23     Q.   All right.  Just I guess since you were last
24     deposed I just want to make sure a couple of
25     circumstances have not changed, you haven't been
```

Confidential - Subject to Further Confidentiality Review

1    sued by any sort of homeowners that claim that you

2    installed Chinese drywall in their home, have you?

3    A.    I have not been sued by anyone.

4    Q.    Have you received any complaints from any

5    homeowners that they think you installed Chinese

6    drywall in their home?

7    A.    Not at this point.

8    Q.    It's my understanding that during last week's

9    deposition that you did not recall any homes that

10   you think you installed Chinese drywall in?

11   A.    Not any specific homes, correct.

12   Q.    And that hasn't changed --

13   A.    No, sir.

14   Q.    -- as you sit here today.  And I guess one of

15   the things that was asked of you last week was

16   whether you had discussed your obligation to

17   disclose that you may have installed Chinese

18   drywall in someone's home in a customer's home

19   with counsel and I wanted to ask did you discuss

20   that in the time between last week's deposition

21   and this week's deposition?

22              MR. HUSEMAN:  Okay.  That's one of

23        the ones I'm going to have to tell him not to

24        answer because it's discussions with counsel

25        and that, of course, we assert the privilege

```
 1          and work product exceptions on that.
 2                  MR. GAUGHAN:  Okay.
 3     BY MR. GAUGHAN:
 4     Q.   Can you tell me this, do you have an
 5     understanding of whether you're required to make a
 6     disclosure to any of these customers that you
 7     think you might have possibly installed Chinese
 8     drywall?
 9     A.   I don't know, sir.
10     Q.   And one of the things we talked about last
11     week as well was whether you understood that by
12     filing your objection to the settlement there was
13     a possibility that that objection could result in
14     the settlement either being disapproved or tanked
15     in some way, I guess is the term we used.  Do you
16     remember that testimony?
17     A.   I remember we spoke about it.  I don't
18     remember the specific thing we said at that point.
19     Q.   Okay.  Now, understanding that that's a
20     possibility, that this settlement could be tanked
21     in the time that's elapsed since your deposition,
22     has that changed your desire in any way to go
23     forward with your objection?
24     A.   Well, I mean I feel that if things change and
25     the lawyers get paid less and the class gets more,
```

Confidential - Subject to Further Confidentiality Review

```
 1    it would be a good favorable thing for the class.

 2    Q.   And what's your understanding of what

 3    percentage class counsel should be awarded, or

 4    your opinion, I guess, of how much class counsel

 5    should be awarded with respect to this settlement?

 6    A.   My opinion is ten percent or less, that's my

 7    opinion.  That I can't change.

 8    Q.   And do you have an understanding of what

 9    percentage the settlement agreement actually

10    contemplates for class counsel?

11    A.   You probably have to remind me on that.

12    Q.   15 percent, does that sound familiar?

13    A.   I don't think so.

14    Q.   And that's for what's called "common benefit

15    counsel" which would be where class counsel fits,

16    so I guess based on that, my understanding is you

17    think it should be ten percent or less, right, is

18    that correct in terms of --

19    A.   That's what I feel it should be.

20    Q.   And I guess would you agree that ten percent

21    versus 15 percent isn't that much of a difference,

22    especially considering that the court, Judge

23    Fallon, will have to approve any award of fees to

24    class counsel?

25    A.   Can you rephrase that for me just one more
```

Confidential - Subject to Further Confidentiality Review

1    time?  I'm sorry, sir.

2    Q.   All right.  I guess my question is do you

3    understand that Judge Fallon is actually going to

4    approve the award to class counsel, that has to be

5    approved by the court?

6    A.   That, I understand.

7    Q.   And I guess based on that understanding,

8    would you agree that there's not that much of a

9    difference between ten and 15 percent, you know,

10   because Judge Fallon could decide to, say, award

11   8 percent?

12   A.   Okay, I don't agree that it's the little bit,

13   if that's what you're asking me.

14   Q.   I am asking you that.

15   A.   I don't agree with it.

16   Q.   You don't agree.  You think even with the

17   court taking on a supervisory role where the court

18   will actually approve fees for class counsel, you

19   think that's still a big gulf, I guess, between

20   the, you know, ten and 15 percent?

21   A.   I think that's a big amount.

22   Q.   Okay.  And I guess another question I have

23   for you is can you tell me if you followed Judge

24   Fallon's preservation order that's in place with

25   respect to maintaining evidence of Chinese drywall

```
 1   claims?

 2   A.   I don't know anything about that.

 3   Q.   You don't know about the preservation order?

 4   A.   I don't, sir.

 5   Q.   Okay.  So you can't say one way or the other.

 6   Did you retain any sort of samples of Chinese

 7   drywall or I guess -- it wasn't saw blades.  What

 8   was it drill bits -- drill and drill bits?

 9   A.   Drills.  Drills, correct.

10   Q.   You didn't retain those items?

11   A.   No, sir, I don't have those things with me.

12   Q.   So so far as Judge Fallon's preservation

13   order would require you to keep those items, you

14   did not do that, is that correct?

15   A.   I don't have those things with me.

16   Q.   And have you seen any doctors since last

17   week's deposition to screen you for any sort of

18   personal injuries that you think might be related

19   to your exposure to Chinese drywall?

20   A.   I have not seen a doctor, sir.

21   Q.   How about have you seen any healthcare

22   professionals to treat you for the emotional

23   distress that you claim you're undergoing with

24   respect to your fear of developing an illness in

25   the future?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.   I have not, sir.

 2   Q.   And how is your health today?

 3   A.   Right now I'm okay.

 4   Q.   And I guess Mr. Bandas is not present again

 5   during today's deposition, how do you feel about

 6   that, you think he should be here?

 7   A.   I'm sure he's attending important matters.

 8   Q.   So you're not troubled by the fact that Mr.

 9   Bandas is not here defending your deposition?

10   A.   I am not, sir, I feel really comfortable.

11   Q.   And that he didn't defend your deposition

12   last week, you're not uncomfortable about that at

13   all?

14   A.   I'm fine with my representation.

15              MR. HUSEMAN:  That's the right

16       answer.

17   BY MR. GAUGHAN:

18   Q.   And I guess since last week's deposition, did

19   you approach any of your customers to advise them

20   that you may have installed Chinese drywall in

21   their properties?

22   A.   I have not, sir.

23   Q.   Do you intend to do so?

24   A.   I have the intention, yes, sir.

25   Q.   When is it you think you're actually going to
```

Confidential - Subject to Further Confidentiality Review

1  do that?

2  A.    I'm not sure.

3  Q.    And do you have any sense of the number of

4  homes that you might have worked on that where you

5  installed drywall during let's say 2006 to 2009,

6  do you have a sense of the number of homes?

7  A.    No, it's a lot.

8  Q.    And I guess, by the way, did you discuss last

9  week's deposition with anyone that's not in the

10  room right now and I'll extend that to Mr. Bandas

11  as well?

12  A.    Anyone that's -- I did, yes, sir.

13  Q.    And who is that?

14  A.    With my wife.

15  Q.    And what did you tell her about the

16  deposition?

17  A.    She just asked me how it went and I told her

18  the questions that were asked of me and stuff like

19  that.

20  Q.    And how did you tell her it went?

21  A.    I just told her it was exhausting.

22  Q.    Did you talk about any particular questions

23  that you were asked?

24  A.    I mean we talked about different questions

25  that were asked, that's pretty much it and told

```
 1   her what y'all asked me.

 2   Q.   You told her what we asked you, is that what

 3   you said?

 4   A.   Yes.

 5   Q.   And what specific questions do you recall

 6   discussing with your wife?

 7   A.   Okay, give me a second here.  I'll remember

 8   this.  I remember y'all asking me, you know, do I

 9   remember specific home or customer that we had

10   installed and stuff like that which I didn't,

11   that's one of them.  I guess it was more in

12   general, I guess, I don't remember the specific

13   questions, I guess.

14   Q.   Did you discuss your testimony about whether

15   you might be entitled to an incentive fee with

16   your wife?

17   A.   No, we didn't talk about that.

18   Q.   Did you discuss your understanding about the

19   actual terms of the settlement agreement with your

20   wife?

21   A.   No, we didn't talk about that.

22   Q.   And did you discuss last week's deposition

23   with anyone else, for instance I believe you had

24   testified that Mr. Batman was the individual you

25   initially spoke with?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.   Correct, I haven't spoken to him since he

 2   referred me.

 3   Q.   And you didn't talk to anyone from his

 4   office, I don't know if you know Mr. Chapa or not?

 5   A.   No, I haven't.

 6   Q.   Did you discuss any of your concerns about

 7   possible personal injuries that you might

 8   experience in the future with your wife?

 9   A.   Personal injuries?  Like what, I'm sorry.

10   Q.   Well, I guess it was my appreciation that one

11   of the things that you're contending in your

12   objection is that you're concerned in the future

13   you might suffer some sort of personal injuries

14   from having been exposed to Chinese drywall, is

15   that correct?

16   A.   Yes, yes.

17   Q.   Did you discuss that subject with your wife?

18   A.   I don't remember if we went over that, to be

19   honest with you at that point.

20   Q.   Did you work at any homes this week that you

21   think were possible homes where you might have

22   installed Chinese drywall in the past?

23   A.   No, these customers are pretty new actually.

24   Q.   And let me ask you what did you do for prep

25   today?  Did you do any additional prep?  I know I
```

```
 1   walked by and I saw you in the meeting with your

 2   counsel here, in the kitchen, so was that --

 3   A.   I prepped before I got here.  I mean I prayed

 4   just to make sure that I'm calm and being able to

 5   answer what I can.

 6   Q.   And apart from, I guess, praying which you're

 7   a better man than I, it's been a while since I've

 8   done any prayer, but did you do any other sort of

 9   prep for today, did you meet with counsel or

10   anything like that?

11   A.   I met with counsel, yes.

12   Q.   Can you tell me the length of that meeting

13   and who was present?

14   A.   The length?  I could tell you that, maybe 30

15   minutes, if that.  I wasn't here that long before

16   you got here.

17   Q.   I think you got in around the same time as

18   me?

19   A.   Yeah, probably something like that, otherwise

20   I was trying to get a little something to snack on

21   because I hadn't eaten lunch.

22   Q.   Hopefully I'll get you out of here soon.

23             MR. HUSEMAN:  Better take that

24        banana away from him.

25             THE WITNESS:  Yeah.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. GAUGHAN:

 2   Q.   Was that the extent, you didn't have any sort

 3   of phone calls with counsel?

 4   A.   No, sir.

 5   Q.   And you didn't meet or talk to Mr. Bandas or

 6   anyone else from his office?

 7   A.   I talked to Mr. Bandas I think it was

 8   yesterday or today, I can't remember.

 9   Q.   Was that to prepare you for today's

10   deposition?

11   A.   It was to confirm the time.

12   Q.   And of course I don't want to talk about

13   anything that you might have discussed with Mr.

14   Bandas, but can you tell me the approximate

15   duration of that conversation, was it pretty quick

16   or are we talking about something more

17   substantial?

18   A.   I believe I talked to him twice.  First time

19   was probably like maybe about ten minutes the most

20   and the second time probably maybe about a minute.

21   Q.   And so this was about scheduling, the

22   conversation, it wasn't about prep or any of the

23   substantive -- any substantive matters?

24   A.   Really wasn't prep, to be honest with you.

25   Q.   Okay.  And so when did those conversations
```

Confidential - Subject to Further Confidentiality Review

```
 1    occur?  I kind of forgot that piece?

 2    A.    Today and yesterday.

 3    Q.    And I guess for today he was telling you we

 4    had agreed to 3:00?

 5    A.    Correct, because I wasn't going to be in town

 6    tomorrow and that's when I was supposed to come,

 7    tomorrow.

 8    Q.    That's when it was initially noticed?

 9    A.    So y'all were able to fit me in so I

10    appreciate that.

11    Q.    Sure.  Glad to do it.

12                   (Exhibit 34 marked for

13           identification.)

14    BY MR. GAUGHAN:

15    Q.    This is a copy of the notice of deposition

16    that we served on you.  As your understanding

17    you're appearing today pursuant to this deposition

18    notice?

19    A.    Yes, sir.

20    Q.    And obviously we've changed the time, but

21    it's you're appearing to --

22    A.    For this.

23    Q.    For this deposition.  I also have this.

24                   (Exhibit 35 marked for

25           identification.)
```

Confidential - Subject to Further Confidentiality Review

1    BY MR. GAUGHAN:

2    Q.   And this is the notice for the SHS

3    Construction and we also served this document on

4    you as well and is it your understanding you're

5    appearing pursuant to this deposition notice today

6    to provide the testimony that we're seeking in

7    this notice?

8    A.   For SHS Construction, yes.

9    Q.   And you can put those aside.

10                  MR. GAUGHAN:  Next Exhibit 36.

11                  (Exhibit 36 marked for

12        identification.)

13   BY MR. GAUGHAN:

14   Q.   This is just a copy of Judge Fallon's order

15   along with Mr. Soto's notes.  And Mr. Soto, I'm

16   showing you what's been marked as Exhibit 36 which

17   is a copy of Judge Fallon's order dated

18   November 7, 2012 which is document 16127 on the

19   court's docket and I'd like you to flip a few

20   pages to what are really your notes from your prep

21   with your counsel?

22   A.   Okay.

23   Q.   And I guess we marked it as Exhibit A to your

24   deposition from last week.

25   A.   Okay.

1   Q.   And Judge Fallon has ordered that these notes

2   be produced to us and I'm just going to ask you a

3   few questions about your actual notes.  I guess

4   looking at that first page I see something that

5   says "How to respond" and then to the right of

6   that I see "I don't know" and I can't quite make

7   out what that is underneath there?

8   A.   You know what, I saw that earlier and I don't

9   know what it is either.  Right underneath "I don't

10  know", is that what you're asking me?

11  Q.   Yeah, can you read that?

12  A.   I can't.  I know it says "it", but the other

13  word I don't.

14  Q.   And so I guess my question for you is how to

15  respond, it says, "I don't know", what I'm going

16  to ask, when we were taking your deposition last

17  week, was that something that you were --

18  something that was shaping your answer to the

19  question that you should say I don't know to

20  certain questions?

21  A.   No, sir, no, sir.  That is to help me

22  understand it.  That way if I don't know about

23  something, I don't know, that's pretty much it.  I

24  can't say something that I don't know and growing

25  up you try to say more than you know.

Confidential - Subject to Further Confidentiality Review

```
 1   Q.   Interesting.  And then it says ask question

 2   and then we see, "Reword the question, don't say

 3   yes."  What does that mean?

 4   A.   It's pretty much what it says there.  If I

 5   don't understand it, to reword, don't answer yes

 6   right away.

 7   Q.   Is that if you don't understand the question

 8   or if we ask you a question that you don't like.

 9   It's only if you didn't understand the question?

10   A.   Correct.

11   Q.   I see Game plan dot dot dot, don't let him

12   force you, what does that say after that?

13   A.   "Out of it."

14   Q.   What does that mean?

15   A.   That's, you know, helps me understand to, you

16   know, not answer, you know -- let's say for

17   example, you're asking me a lot of yes questions

18   and for me not to say yes because you're asking me

19   a lot of questions that say yes, that's what I

20   understood.

21   Q.   What do you mean by that, I guess?

22   A.   Just to, you know, help me.  I mean that's

23   what I wrote on there, to help me understand the

24   question and just to not say yes right away and

25   make sure that I have everything.
```

```
 1   Q.   What is the "Don't let him force you out of

 2   it" mean, though?

 3   A.   Just don't let me force me out of where I'm

 4   going.

 5   Q.   You mean if I'm trying -- if we were trying

 6   to make you change an earlier answer, is that what

 7   you mean by it, don't let you force you out of it?

 8   A.   Pretty much, to stay on point, the same

 9   point.

10   Q.   But it's yes or no question, to say on point,

11   I'm having trouble understanding.

12   A.   To stay on point, yes.

13   Q.   But if it's a yes or no question, I guess you

14   would just say yes or no depending on what the

15   answer is, right?

16   A.   Just answer what I do know.

17   Q.   Okay, but how would that take you off point

18   if the answer is yes, for instance, to a question?

19   A.   Well, it just helps me take every question as

20   it comes and not be quick to say yes.

21   Q.   Understood.  How about this, little bit below

22   that, we see "Answer question and shut up", do you

23   see that?

24   A.   Uh-huh.

25   Q.   And then to the right of that in parentheses
```

Confidential - Subject to Further Confidentiality Review

1    it says, "Hurt us, learn about us and waste time"

2    I believe?

3    A.   Yes, that's what it says.

4    Q.   Does that "Answer question shut up", does all

5    of that to the right of there, "Hurt us, learn

6    about us and waste time", does that all apply to

7    that first answer, that first answer question and

8    shut up part?

9    A.   I think it applies to a lot of that stuff.

10   Q.   I guess what do you mean by "hurt us, learn

11   about us and waste time"?

12   A.   That's what I got out of the -- that's what I

13   understood out of that, and that's what I wrote

14   down at that point.

15   Q.   Was it your objective to waste time?

16   A.   No, the objective is to not waste time.

17   Q.   And I get the part about not a social

18   conversation as I tell my own witnesses similar

19   stuff.

20   A.   That's true.

21   Q.   What is below that where it says "Think like

22   a dad" mean?

23   A.   When I say that and I remember this is that

24   my dad is a man of little words and he just tells

25   you the fact.  If he knows it, if he doesn't know,

Confidential - Subject to Further Confidentiality Review

```
 1    he'll tell you he doesn't know and that's the way

 2    my dad is.

 3    Q.   I guess if you look down towards the bottom

 4    of the page under what says "30-minute then

 5    break", it says "courteous nice/not hostile", so I

 6    take it your intention going in the deposition was

 7    to not appear hostile, is that --

 8    A.   Correct.

 9    Q.   Is there something I need to be afraid of?

10    A.   No, sir.

11    Q.   And then below that I see "No need to argue

12    or explain" and I guess can you tell me what that

13    means in terms -- to you, I guess?

14    A.   That I don't need to, like, if maybe you're

15    being confrontational with me, that I don't need

16    to be arguing with you and just state the answer

17    to the question you're asking me.

18    Q.   Okay.  How about right below there it says

19    "Yes objection of class", what does that mean?  At

20    least that's what I see?

21    A.   Yeah, that's what it says.  It's just yes as

22    far as objection of it, that's what it says on

23    there.

24    Q.   That means just yes I'm objecting to the

25    class settlement, is that what that means?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.   Yeah, because, you know, it's all these

 2   lengthy lawyer words you got to try to understand

 3   them and that's just what I wrote.

 4   Q.   And if you go to the next page, to the right

 5   there under written objection says, "Don't agree

 6   how much lawyers are getting paid on a class that

 7   I am a part of."  What does that mean?

 8   A.   That's what I felt and that's what I wrote.

 9   Q.   And these are your opinions?

10   A.   Those are mine, yes.

11   Q.   How did you come up with that -- this was

12   during the prep that you came up with this?

13   A.   Actually it was kind of more towards the end

14   of it.  I just was writing things that were coming

15   to mind at that point.

16   Q.   And those are your words, not your counsel's

17   words?

18   A.   Those are my words.  Those are my words.

19   Q.   Then we see a little bit further down "Had to

20   talk to lawyer"?

21   A.   Uh-huh.

22   Q.   What does that mean?

23   A.   It means that, you know, I couldn't have

24   written all these things out here by myself, I

25   needed to talk to a lawyer to be able to have an
```

Confidential - Subject to Further Confidentiality Review

```
 1    objection.

 2    Q.   And you came up with that on your own as

 3    well?

 4    A.   That I wrote down, yes, on my own.

 5    Q.   And then we see completed sticky, is that

 6    what that says, sticky, tricky?

 7    A.   "Complicated and tricky."

 8    Q.   And what does that mean?

 9    A.   Just lawyer stuff that's complicated and

10    tricky.

11    Q.   And I guess based on all these notes, is it

12    your testimony that these are all your own

13    thoughts and not things that your counsel was

14    telling to you say?

15    A.   The back part really is more of my own

16    thoughts and the back -- or the front is more of

17    things we talked about.

18    Q.   So I guess so far as some of these things

19    appear to be substantive, like "don't agree how

20    much lawyers are getting paid", that's your own

21    thought?

22    A.   That's my own thought in the back, yes, sir.

23    Q.   And you understand you're under oath and

24    everything?  You understand that?

25    A.   I understand that, yes, sir.
```

Confidential - Subject to Further Confidentiality Review

1    Q.   Can you tell me if you look to the left, does

2    this represent -- these calculations here, does

3    that represent the incentive fee that you think

4    you're going to get?

5    A.   No, sir.

6    Q.   What does it represent?

7    A.   That represents my checking account that I

8    needed to make a deposit.  I needed to pay $600

9    out, need to pay $500 out, pay $400 out, pay 90

10   and I was left with $1,600 and from there I had

11   to pay a couple other things, then I remember I

12   had to make a deposit on the right, so that was

13   the end of my balance, 1160.  As you can see, it

14   wasn't like written down nice and neatly because

15   I just needed a paper to write it down.

16              MR. HUSEMAN:  Nice try, Matthew.

17              MR. GAUGHAN:  Didn't necessarily

18        add up to me either in terms of what we

19        thought would be the 5,000, but I figured I

20        would ask anyway.

21   A.   Those are checks I had to pay.

22   Q.   So you're balancing your checkbook here, more

23   or less?

24   A.   Pretty much, yes, sir.  I could probably pull

25   the checks on those to show you.

Confidential - Subject to Further Confidentiality Review

```
 1   Q.    I think that's it for that document.

 2   A.    Okay, sir.

 3                MR. GAUGHAN:  We'll mark this as

 4         37.  I'll give you a copy to your counsel.

 5                (Exhibit 37 marked for

 6         identification.)

 7   BY MR. GAUGHAN:

 8   Q.    And I'm showing you what's been marked as

 9   Exhibit 37 to your deposition or to this

10   continuing depositions, I guess, and what this is

11   is a copy of class counsel's motion for sanctions

12   and we filed this or when I say "we", I mean class

13   counsel filed this motion on 10/24/12, it's now on

14   file and pending before Judge Fallon and I believe

15   we discussed this a little bit at your deposition

16   last week?

17   A.    Yeah, I think so.

18   Q.    And I guess do you understand that class

19   counsel has moved for sanctions and is seeking not

20   only to sanction Mr. Bandas but also to sanction

21   yourself with respect to a motion that Mr. Bandas

22   filed with the court?

23   A.    That's what I see.

24   Q.    Okay.  And when did you first become aware of

25   this motion?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.    After October 24th.  I don't remember, to be

 2   honest with you.  I know we talked about it last

 3   week.

 4   Q.    Yeah, and that's what I was going to ask you

 5   because it was my appreciation based on your

 6   testimony that you weren't aware of this motion

 7   before your deposition, is that fair to say?

 8   A.    Before last week's, yes.

 9   Q.    So you first became aware of this motion last

10   week?

11   A.    Yes.

12   Q.    Is that correct?

13   A.    Yes, sir.

14   Q.    Now, is this something that you think that

15   Mr. Bandas should have told you about, and by

16   something I mean that class counsel was moving for

17   sanctions because Mr. Bandas had filed a frivolous

18   motion with the court?

19   A.    The question again, I'm sorry?

20   Q.    Is this something, this motion that you're

21   looking at as Exhibit 37, motion for sanctions

22   that requests that you be sanctioned in addition

23   to your counsel, is this something that you would

24   have expected Mr. Bandas to tell you about?

25   A.    Well, I feel if it's something that we need
```

Confidential - Subject to Further Confidentiality Review

```
 1   to talk about, he would have called me on it.
 2   Q.   So you're not concerned at all that Mr.
 3   Bandas didn't tell you that class counsel was
 4   asking that you be sanctioned in connection with
 5   the motion that Mr. Bandas filed?
 6   A.   Not really, not right now, no.
 7   Q.   Good for you.  Are you willing to appear
 8   before Judge Fallon if he orders you to appear?
 9   A.   Of course if he orders me to appear, I'll be
10   there.
11   Q.   And what is your expectation of who would
12   have to pay that cost?
13   A.   I don't know, sir.
14   Q.   And would you be willing to pay those costs
15   if you were required to do so, to travel to New
16   Orleans and stay in a hotel, etc.?
17   A.   Depends what the judge says for me to do.
18   Q.   And how about if the court sanctions you, are
19   you prepared to pay sanctions?
20   A.   I mean I can't object to a court.  If they
21   tell me I got to do something, I got to do
22   something.
23   Q.   Is that something that as you sit here today,
24   you want to go forward with your objection even
25   though there's a possibility you might be
```

1    sanctioned?

2    A.   I mean if I feel unfair about something, I'm

3    going to try to see it through and if it comes out

4    to that the court orders me to do something, well,

5    I'll have to comply.

6    Q.   And you're willing to risk that you might be

7    sanctioned in order to continue your objection?

8    A.   Yes, sir.

9    Q.   Okay.

10                    (Exhibit 38 marked for

11          identification.)

12   BY MR. GAUGHAN:

13   Q.   I'm showing you what's been marked as Exhibit

14   38 which is a motion that was also filed on

15   10/24/12 by class counsel and this motion is --

16   response and motion, class counsel's omnibus

17   response to the Bandas objectors' motion to

18   dismiss objection and response to motion for leave

19   to conduct discovery regarding the fairness of

20   proposed class action settlement.

21   A.   Where are we looking?  I'm sorry.

22   Q.   I'm reading from right here.  I guess were

23   you aware that we, by "we" I mean class counsel

24   had made this filing with Judge Fallon?

25   A.   You made me aware of that last week.

```
 1    Q.   The first time you became aware of this was

 2    last week?

 3    A.   Yes, sir.

 4    Q.   And are you aware that this motion was filed

 5    in response to Ms. Petrus who works for Mr.

 6    Bandas's motion to dismiss her objection?

 7    A.   I don't know anything about her or what --

 8    Q.   Let me back up.  Do you appreciate that Mr.

 9    Bandas filed an objection to this settlement that

10    involved not only yourself, but several other

11    individuals?

12    A.   Do I what?  I'm sorry.

13    Q.   Are you aware that when Mr. Bandas filed this

14    objection to the settlement on behalf of yourself

15    and SHS Construction --

16    A.   Yes.

17    Q.   -- that he also included other individuals?

18    A.   I know there was other people, I didn't know

19    who.

20    Q.   Okay.  So but you know that Mr. Garcia is one

21    of those individuals, correct?

22    A.   That I have met him before.

23    Q.   And you also know that his company is also

24    objecting, do you know that?

25    A.   I believe so.
```

Confidential - Subject to Further Confidentiality Review

1    Q.    Okay.  And did you know that a Mr. Vitela was

2    also objecting?

3    A.    That, I don't know him.

4    Q.    And you don't know Jan Petrus?

5    A.    I don't know her.

6    Q.    So those are the objectors in addition to

7    yourself and your company?

8    A.    Okay.

9    Q.    And I guess class -- Ms. Petrus moved to

10   dismiss her objection and we filed this motion,

11   class counsel filed this motion in response to

12   that filing?

13   A.    Okay.

14   Q.    And another thing that Mr. Bandas did was he

15   filed a motion to conduct discovery regarding the

16   fairness of the proposed class action settlement,

17   are you aware of that fact?

18   A.    I don't know anything about that, sir.

19   Q.    He didn't show you that motion or bring it to

20   your attention that he was going to be filing that

21   motion before it was filed with the court?

22   A.    I honestly can't remember anything about

23   that.

24   Q.    Did he show you any motions that he was

25   proposing to file other than the objection?

Confidential - Subject to Further Confidentiality Review

```
 1   A.   The objections, yes.

 2   Q.   So that was it, just the objections?

 3   A.   That's all I remember.

 4   Q.   Okay.  Is that something you would have liked

 5   Mr. Bandas to have brought to your attention?

 6   A.   Again I feel if it's something that needed to

 7   be brought to my attention, he would have.

 8   Q.   And this is something that resulted in our

 9   motion for sanctions, his filing of that motion.

10   Would you have liked to have known that you might

11   be subject to a motion for sanctions before he

12   filed his motion to conduct discovery?

13   A.   I mean it didn't happen, so I can't say

14   anything about that, you know.

15   Q.   What didn't happen, he didn't tell you?

16   A.   I didn't know about the, you know, somebody

17   else, what they did as far as Jan Petrus or

18   something like that.

19   Q.   I'm not asking about Jan Petrus.  I'm asking

20   about Mr. Bandas filed a motion seeking discovery

21   regarding the fairness of the class settlement?

22   A.   Okay.

23   Q.   Isn't that something you'd expect him to tell

24   you about?

25   A.   No.  I would have hoped he would have told me
```

Confidential - Subject to Further Confidentiality Review

```
 1   if it's something I needed to know about.

 2   Q.   So you don't expect him to keep you

 3   up-to-date on what he's filing with the court?

 4   A.   I expect him to let me know if it's something

 5   that he feels is important that I need to know.

 6   Q.   So I take it as a no, you don't expect him to

 7   tell you about filings that he's making in

 8   connection with your objection?

 9   A.   Again if it's important, I'm sure he would

10   have called me.

11   Q.   Okay.  Now, has he called you in -- other

12   than scheduling your deposition, has he called you

13   about any other matters, strategy matters I should

14   say?

15   A.   No, I mean, not that I can think of.

16   Q.   Okay.  So other than scheduling your

17   deposition and filing your objection, those are

18   the things -- those are the only things you talked

19   about, I guess?

20   A.   I can't discuss that.

21              MR. HUSEMAN:  That's right.  That

22        hinges on attorney/client privilege.  Please

23        don't answer that.

24              THE WITNESS:  Yeah, I won't.

25   BY MR. GAUGHAN:
```

```
 1   Q.   But he didn't discuss this particular motion,

 2   the motion to seeking discovery?

 3              MR. HUSEMAN:  Once again that

 4        involves attorney/client communications,

 5        privilege and please don't answer that,

 6        Mr. Soto.

 7   BY MR. GAUGHAN:

 8   Q.   You weren't aware he was going to make

 9   this -- he was going to file this motion for leave

10   to conduct discovery?

11   A.   No, I didn't know anything about that.

12   Q.   And you're okay with that?

13   A.   I'm fine with that right now.

14   Q.   And I take it you didn't actually ever see

15   the motion that Mr. Bandas filed seeking discovery

16   regarding the fairness of the class settlement,

17   did you?

18   A.   Is that what you're just talking about?

19   Q.   Yes.

20   A.   No, I haven't seen it.

21   Q.   Okay.  And would it trouble you at all that

22   that motion included information about another

23   settlement that didn't involve Chinese drywall at

24   all?

25   A.   I don't know anything about that, sir.
```

```
 1   Q.   Does that concern you that your counsel --

 2   he's filing a motion seeking discovery in the

 3   Chinese drywall litigation and his motion is

 4   actually talking about a completely different

 5   settlement involving Hill Marathon.

 6   A.   I don't know anything about that, sir.

 7   Q.   Would you expect your lawyer to file motions

 8   that -- in the proper case?

 9   A.   You might need to rephrase that for me.  I

10   don't understand.

11   Q.   Well, you're pursuing objection?

12   A.   Correct.

13   Q.   Of one of our Chinese drywall settlements,

14   correct?

15   A.   Yes, sir.

16   Q.   Now, I'm trying to figure out when you retain

17   an attorney, do you expect them to actually

18   proofread and review motions that they file?

19   A.   Oh, like if somebody made a mistake, is that

20   what you're saying?

21   Q.   Yeah, for instance, the motion that Mr.

22   Bandas filed seeking discovery in this case talk

23   about a 40 percent contingency fee and from my

24   understanding of your objection, you're objecting

25   because of a 32 percent fee provision, is that
```

Confidential - Subject to Further Confidentiality Review

```
 1   correct?

 2   A.   I think that's what I remember.

 3   Q.   So he's talking about a completely different

 4   case, does that trouble you at all?

 5   A.   I'm sure we all make mistakes.

 6   Q.   He's also talking about a 16 million-dollar

 7   settlement and you're aware, correct, that this

 8   Chinese drywall settlement you're opposing to

 9   involves $83 million, correct?

10   A.   I remember the 80 million.

11   Q.   And then he talks about a class

12   representative by the name of Mrs. Alice Hill in

13   his papers and I'll represent to you that there's

14   no Mrs. Alice Hill in any way involved in our

15   Chinese drywall litigation, so I guess based on

16   that, it was my understanding that this was a

17   cookie-cutter motion where he neglected to take

18   out information about some other motion he filed

19   in a different case and what I'm asking you is are

20   you troubled by the fact that your counsel hasn't

21   even taken the time to proofread his own motion

22   and make sure he's filing it in the right case?

23   A.   I mean, I'm sure we all make mistakes.

24   Q.   That's okay with you?

25   A.   We're not all perfect.
```

```
 1   Q.   We strive to be, but of course -- so I guess

 2   the long short of it is that doesn't bother you at

 3   all?

 4   A.   No.

 5   Q.   That your counsel -- doesn't have his facts

 6   straight when he's filing a motion?

 7   A.   I know I've messed up too, so --

 8   Q.   And I guess I'm going to ask you a few

 9   questions about your understanding of Mr. Bandas

10   and his practice.  Now, before you actually met

11   with Mr. Bandas, did Mr. Batman or anyone else

12   ever tell you that several courts had sanctioned

13   Mr. Bandas for his objections to class settlements

14   in other cases?

15   A.   I don't know anything about that, sir.

16   Q.   Okay.  Now if you had known that, would that

17   have impacted your decision on whether or not to

18   retain Mr. Bandas for purposes of seeking your

19   objection in this case?

20   A.   Well, I mean I don't know any of that to be

21   true, so I mean unless I know for sure, then, you

22   know, I would make a decision after that.

23   Q.   If you knew for sure that Mr. Bandas had

24   filed in excess of 23 objections to different

25   class settlements around the country, would that
```

Confidential - Subject to Further Confidentiality Review

```
 1   have impacted your decision to retain him as

 2   counsel for purposes of objecting to this Chinese

 3   drywall settlement?

 4   A.   Well, he was referred to me, so I take a

 5   referral quite a bit seriously, so usually if

 6   somebody refers me to somebody, it's because they

 7   know the person and that's what I based it off of.

 8   Q.   And because Mr. Bandas has been sanctioned in

 9   the past for similar conduct, do you at all

10   concerned that you yourself might be sanctioned?

11   A.   Well, I mean it could concern me, but I don't

12   know anything about what he has or hasn't done as

13   far as that.

14   Q.   And you still want to go forward with your

15   objection?

16   A.   Yes, sir.

17   Q.   How about if I told you that the Honorable

18   Mark Vandewiele, V-a-n-d-e-w-i-e-l-e, in Brown

19   versus Wal-Mart Stores, Inc. which is a case in

20   Illinois Circuit Court, observed in that case that

21   the Bandas objection filed on behalf of

22   Mrs. Carlson is a generic boiler plate objection

23   prepared and filed by attorneys working for their

24   own personal benefit and not for the benefit of

25   this class or for those lawyers clients.  Directly
```

Confidential - Subject to Further Confidentiality Review

```
 1    before the court demonstrates that Bandas is a

 2    professional objector who has improperly attempted

 3    to highjack the settlement of this case from

 4    deserving class members and dedicated,

 5    hardworking counsel, solely to coerce ill-gotten,

 6    inappropriate and unspecified legal fees.

 7         If I told you that Judge Vandewiele had

 8    expressed those opinions in a -- not a published

 9    opinion, but in one of his opinions, would that --

10    does that trouble you at all that this is the

11    lawyer you've retained in this case?

12    A.   I mean I don't know anything about that, so I

13    can't have an opinion on something that I don't

14    know anything about.

15    Q.   If you had known about this particular

16    opinion by Judge Vandewiele before you had

17    retained Mr. Bandas as counsel, would that have

18    impacted your decision on whether or not to retain

19    Mr. Bandas for purposes of objecting to the

20    drywall settlement?

21    A.   I can't honestly say, honestly, I mean.

22    We're talking about ifs, I don't know what would

23    have happened.

24    Q.   That doesn't affect your opinion as you sit

25    here today that, you know, this judge wrote a
```

Confidential - Subject to Further Confidentiality Review

```
 1    pretty harsh opinion where he chastised Mr.

 2    Bandas, it doesn't bother you at all?

 3    A.   I can't change anything that's been said.

 4    Q.   That doesn't cause you any sort of concern

 5    that maybe you shouldn't have retained Mr. Bandas?

 6    A.   I'm happy with my counsel.

 7    Q.   You're happy with him being a professional

 8    objector?

 9    A.   I'm just happy with my counsel.

10    Q.   Who objects to all different class

11    settlements just so he can coerce a fee, you like

12    that?

13    A.   That's your opinion.  I can't say anything

14    about that.

15    Q.   That's Judge Vandewiele's opinion?

16    A.   Okay.

17    Q.   That doesn't bother you at all?

18    A.   I'm happy with my representation.

19    Q.   Okay.  You're happy that Mr. Bandas has

20    attempted to highjack settlements from deserving

21    class members so that he can coerce a legal fee,

22    you think that's something you're happy with?

23    A.   I don't know anything about that.  I can't

24    say something that I don't know.

25    Q.   But you're willing to participate in an
```

Confidential - Subject to Further Confidentiality Review

```
 1   objection where he could be doing the same thing,

 2   right?

 3   A.   I mean I don't know anything about that.  I

 4   really don't.

 5   Q.   So far as he gets you your 5,000-dollar

 6   incentive fee, right?

 7   A.   We haven't had an arrangement or anything

 8   like that, so I don't know anything about that.

 9   Q.   But we did look at your retainer agreement

10   which talks about a 5,000-dollar incentive fee,

11   correct?

12   A.   Well, that's what the paper said.

13   Q.   So so far as you getting that 5,000-dollar

14   incentive fee, you're willing to go along for the

15   ride, is that correct?

16   A.   That's only if something happens and we're

17   come to something, but I'm not expecting that I'm

18   going to make a whole bunch of money.  I'm not

19   expecting anything like that.  I'm just unhappy

20   with the fact that the lawyers are getting a big

21   chunk of money, you know, and I feel the class

22   should have more.

23   Q.   So your attorney can actually get some of

24   that money, is that part of your understanding?

25   A.   I mean we're all here because it benefits us
```

Confidential - Subject to Further Confidentiality Review

```
 1    in some way.

 2    Q.   Who is we?

 3    A.   You, everybody, you know, we're all going to

 4    probably benefit from the class in a sense that,

 5    you know, being part of the class, you know, I was

 6    affected so, you know, I don't know if that's

 7    going to happen or not.

 8    Q.   So long as you get your $5,000 you're happy?

 9    A.   I didn't say that.

10    Q.   I'm asking you?

11    A.   I'm not even answering that because that

12    doesn't make any sense.

13    Q.   You have to answer the question is that you

14    are saying yes or no to my question.

15    A.   Getting $5,000 is not going to make me happy.

16    Q.   So you are willing to go forward with the

17    objection even though your counsel has been called

18    out by various courts as a professional objector

19    who's highjacking settlements for a fee?

20    A.   I am willing to go forward with the

21    settlement.

22    Q.   Even though, you know, at least Judge

23    Vandewiele expressed the opinion that Mr. Bandas

24    was not working -- he was working for his own

25    personal benefit not for the benefit of the class,
```

Confidential - Subject to Further Confidentiality Review

```
 1   that doesn't trouble you at all?

 2   A.   I can't change what was written.

 3   Q.   If that's an opinion of a learned judge, that

 4   who's actually participated in a case where Mr.

 5   Bandas was objecting, you don't lend any sort of

 6   credibility to that observation?

 7   A.   I don't know all the facts about that, so I

 8   can't say much about what I don't know.

 9   Q.   Are you going to research this particular

10   case after today's deposition?

11   A.   I don't know.

12   Q.   So you're willing to go forward with an

13   objection even though your counsel has been called

14   out as a professional objector who highjacks

15   settlements for his own personal benefit, not for

16   the benefit of the class, you're still willing to

17   go forward with the objection under those

18   circumstances?

19   A.   I'm still willing to go forward with the

20   objection.

21   Q.   Okay.  How about in -- were you aware that

22   the Honorable David H. Sivright, S-i-v-r-i-g-h-t,

23   Junior in Mussmann, vs. Wal-Mart Stores, Inc.

24   observed that and stated in October 13, 2009

25   opinion, the court has considered all the
```

Confidential - Subject to Further Confidentiality Review

```
 1    materials and pleadings filed of record in this

 2    case as well as related judicial rulings.  As a

 3    result, the court concludes that attorney

 4    Christopher A. Bandas is a professional objector.

 5    The court is concerned that attorney Bandas is

 6    seeking to wrongfully use the class action and

 7    objection process for personal gain, and without

 8    any corresponding benefit to any individual

 9    objector or the settlement class as a whole.

10         Were you aware that Judge Sivright had made

11    this observation as to your counsel before you

12    retained him?

13    A.   No, sir.

14    Q.   And I'll just ask the same questions, if Mr.

15    Batman had told you when he was referring you to

16    Mr. Bandas that, you know, Judge Sivright had made

17    these observations about Mr. Bandas, would you

18    have still retained him?

19    A.   My answer is the same.

20    Q.   So you're happy with Mr. Bandas even though

21    several courts have accused him of being a

22    professional objector?

23    A.   I'm happy with my representation.

24    Q.   Even though you might get sanctioned?

25    A.   If the court is the one that decides that, so
```

```
 1    if the court decides that I need to do something,

 2    well, then I will.

 3    Q.    Okay.  You're willing to go forward, you

 4    don't care if you get sanctioned?

 5    A.    I'm willing to go forward with my objection.

 6    Q.    Even if it means you're going to get

 7    sanctioned?

 8    A.    I'm willing to go forward with my objection.

 9    Q.    Okay.  How about if I told you that the

10    Honorable Cole B. Peel in Ouellette,

11    O-u-e-l-l-e-t-t-e, v. Wal-Mart Stores, Inc.

12    observed that the court finds that a lack of

13    involvement and participation of the objectors and

14    their counsel who are not present and a lack of

15    involvement and participation of the attorneys

16    that were present combined with their attempt to

17    inject themselves at the last minute into an

18    eight-year litigation constitutes an effort to

19    extort money from the class and/or class counsel.

20         Would that bother you that -- does that

21    bother you at all that this court made this

22    observation about your counsel?

23    A.    I mean I don't know anything about that.

24    Q.    So far we've got three judges all expressing

25    harsh opinions about your counsel.  That doesn't
```

Confidential - Subject to Further Confidentiality Review

```
 1   trouble you at all?

 2   A.   I'm happy with my representation.

 3   Q.   Even though we have another court observing

 4   that your counsel is trying to extort money from

 5   the class and/or class counsel and that's based --

 6   A.   I'm happy with my representation.

 7   Q.   Sorry?

 8   A.   I'm happy with my representation.

 9   Q.   Kind of just a devil-may-care attitude?

10   A.   I'm just happy with my representation.

11   Q.   As long as you get the 5,000?

12   A.   As long as the class gets more and the

13   lawyers get less.

14   Q.   Does that apply to your counsel that he gets

15   less?

16   A.   As long as the class gets more, that's what

17   I'll be happy with.

18   Q.   To your knowledge, has Mr. Bandas produced

19   any sort of benefit for the class other than

20   filing a baseless objection?

21   A.   I don't know.

22   Q.   You don't know?

23   A.   No, sir.

24   Q.   So you think he'd be entitled to a fee?

25   A.   Probably.
```

```
 1   Q.   More or less than your 5,000-dollar

 2   incentive?

 3   A.   I don't know.

 4   Q.   How about would it trouble you at all if the

 5   Honorable Perry M. Buckner observed in Carter v.

 6   Wal-Mart Stores, Inc. that Mr. Bandas is a serial

 7   professional objector.  Again this is the fourth

 8   judge.  Does that trouble you at all?

 9   A.   I'm happy with my representation.

10   Q.   And you would still if you had known that

11   these four judges had made these sort of

12   observations about Mr. Bandas, you still would

13   have gone forward in retaining him to make your

14   objection in this case, is that correct?

15   A.   I'm happy with my representation, I don't

16   know what would happen if again what we're talking

17   about ifs, I don't know.

18   Q.   Well, I'm saying assuming you did know?

19   A.   I don't know.

20   Q.   What's that?

21   A.   I don't know.

22   Q.   You know now.

23   A.   Okay.

24   Q.   Does that affect your willingness to go

25   forward with your objection?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.   I mean the objection is for the class to get

 2   more, so I'm willing to go forward with the

 3   objection.

 4   Q.   So long as you get the $5,000 and your lawyer

 5   gets his fee?

 6   A.   As long as the class gets more.

 7   Q.   And would you be willing -- say your

 8   objection is overruled by Judge Fallon?

 9   A.   Okay.

10   Q.   Would you be willing to post a bond if you're

11   to pursue an appeal of Judge Fallon's ruling?

12   A.   I don't know much about how that works, so I

13   don't even know how to answer that.

14   Q.   How about if I told that you in Conroy v. 3M

15   Corporation, a case out in Northern District of

16   California, Judge Claudia Wilken determined that

17   Mr. Bandas's appeal was patently frivolous and

18   bore no particular relationship to the

19   circumstances of the settlement and then imposed a

20   431,167-dollar appeal bond, would that be

21   something that you'd be willing to pay to pursue

22   your objection in this case?

23   A.   I don't know how that works, I don't know

24   anything about that.

25   Q.   Would you be willing to post a 431,167 appeal
```

Confidential - Subject to Further Confidentiality Review

1   bond?

2   A.   I don't have that type of money.

3   Q.   So I'll take that as a no?

4   A.   Yeah, no.

5   Q.   And how do you feel about Judge Wilken

6   observing that Mr. Bandas's objection in that case

7   was patently frivolous and that it bore no

8   particular relationship to the circumstances of

9   the settlement.  Again no impact on you?

10  A.   I don't know anything about that.

11  Q.   And if you had known that these three judges

12  had -- I meant five judges, scratch that, if you

13  had known that these five judges had expressed

14  such opinions of Mr. Bandas's frivolous

15  objections, that that wouldn't have impacted your

16  decision to retain Mr. Bandas?

17  A.   I needed a lawyer, so I retained a person who

18  would help me with this objection.

19  Q.   Even if that's a professional objector who

20  has a history of filing frivolous objections?

21  A.   I don't know anything about that.

22  Q.   You do now, so I guess I'm asking you, that

23  doesn't trouble you, you still would have retained

24  him?

25  A.   Can't do anything about that.  Sir, do you

Confidential - Subject to Further Confidentiality Review

```
 1   mind if we take a break?

 2                 MR. GAUGHAN:  Sure, go ahead.

 3                 VIDEOGRAPHER:  Off the record at

 4        4:35.

 5                         *   *   *

 6                 VIDEOGRAPHER:  We're back on the

 7        record at 4:47.  This is the beginning of

 8        tape two.

 9                 MR. HUSEMAN:  Mr. Ronnie Garcia

10        will be here in a minute just for your record

11        purposes.  Paul went to get him.

12                 MR. GAUGHAN:  Get him prepped.

13                 MR. HUSEMAN:  Well, this is part of

14        it.  You're going to help us prep him.

15                 MR. GAUGHAN:  I don't want him in

16        here.

17                 MR. HUSEMAN:  He's a party, he's

18        entitled to be here.  Why would he not be?

19                 MR. GAUGHAN:  I guess that's true.

20   BY MR. GAUGHAN:

21   Q.   Now, we left off before we just took a break

22   we were talking about, you know, some cases where

23   judges had made particular observations, rulings,

24   that sort of thing that pertained to your counsel

25   and your objection and I guess what I do want to
```

```
 1   ask you next is I got some more for you.  How you

 2   doing, Mr. Garcia?

 3       If I told you in Embry v. Acer American Corp.

 4   Judge H. James Ware had required Mr. Bandas to

 5   post a $70,650.00 bond in order to participate or

 6   to pursue an appeal where the court found that the

 7   merits of the objectors' appeal weighed heavily in

 8   favor of requiring bond insofar as the objections

 9   to the settlement are lacking in merit, would that

10   impact if you had known about this, would this

11   have impacted your decision to retain Mr. Bandas

12   on your objection?

13   A.   I don't know anything about that.

14   Q.   And I'll ask the same question, would you be

15   willing to post a 70,000-dollar plus --

16   A.   I wouldn't be able to do that.

17   Q.   You wouldn't be able to afford that?

18   A.   No, sir.

19   Q.   And would it influence your decision at all

20   if this meritless appeal in Embry v. Acer involved

21   an issue where attorneys fees were the only issue

22   that was being objected to, would that -- where

23   you're objecting to attorneys fees, would that

24   impact your decision to pursue an appeal?

25   A.   No.
```

```
 1    Q.    How about in if I told you in In re: Cathode

 2    Ray Tube Antitrust litigation, Judge H. Samuel

 3    Conti overruled Mr. Bandas's objection where his

 4    client failed to submit proof to establish they

 5    were a class member, kind of like yourself and

 6    found that that objector lacked standing, would

 7    that impact your decision to -- would that have

 8    impacted your decision to retain Mr. Bandas if you

 9    had known that before you filed an objection?

10    A.    I don't know anything about that, so no.

11    Q.    I take it you would agree that you haven't

12    produced much in terms of evidence that you

13    actually have standing to object to this

14    settlement?

15    A.    I produced a lot.

16    Q.    You haven't produced any actual evidence that

17    you purchased Chinese drywall as opposed to

18    American drywall?

19    A.    I produced everything that I had.

20    Q.    And do you know of any receipts that show

21    that you purchased Chinese drywall?

22    A.    If you can show me what that looks like, I'll

23    look for it.

24    Q.    So I'll take that as a no?

25    A.    No.
```

Confidential - Subject to Further Confidentiality Review

1    Q.   You don't know what it looks like, you're the

2    one that had the receipts so?

3    A.   I produced all that I could and that I had.

4    Q.   And how about if I told you in In re:

5    Wal-Mart Wage and Hour Employment Practices

6    Litigation, Judge Philip M. Pro, P-r-o, imposed a

7    500,000-dollar bond requirement for Mr. Bandas,

8    one of Mr. Bandas's clients to pursue an appeal in

9    that case.  Would that -- if you had known that

10   before you filed this objection, would that fact

11   have influenced your decision to retain

12   Mr. Bandas?

13   A.   Again, I don't know anything about that, so

14   no.

15   Q.   Again where the court found that Mr. Bandas's

16   client's objection lacked any merit and imposed a

17   500,000-dollar bond, that wouldn't -- if you had

18   known that before, now we have eight judges in

19   eight different cases observing that Mr. Bandas is

20   pursuing objection where there's no merits and

21   another case where bond is being imposed, that

22   doesn't trouble you at all that you would still

23   retain Mr. Bandas?

24   A.   Again I don't know anything about that, so

25   no.

1    Q.    And you're willing to risk that you might

2    have to pay sanctions?

3    A.    I mean if the court orders me to do

4    something, I have to abide by that.

5    Q.    And you're willing to take that risk?

6    A.    As long as the class gets more.

7    Q.    And you understand that there's a current

8    motion for sanctions pending and that we'll be

9    filing another motion for sanctions based on the

10   documents that were produced at the last minute

11   today, you're still okay with going forward with

12   your objection under all these circumstances?

13   A.    Yes.

14   Q.    Even though we have eight plus judges,

15   different judges that we just discussed who have

16   observed that Mr. Bandas's objections are

17   meritless?

18   A.    Yes, sir.

19   Q.    That doesn't trouble you that your objection

20   is meritless as well?

21   A.    If the court finds that, we'll go with that.

22   Q.    And you're willing to pay any sort of

23   sanctions?

24   A.    I can't not do what the court tells me, so I

25   have to do something.

Confidential - Subject to Further Confidentiality Review

```
1   Q.   But that's not changing your opinion today?

2   A.   As long as the class gets more.

3   Q.   And you're not concerned that Mr. Bandas has

4   filed in excess of 23 objections, 23 that I found

5   to different class settlements, that this is a

6   business practice for him, more or less?

7   A.   I mean he's pretty good at being able to file

8   an objection.

9   Q.   Frivolous -- you don't mind if they're

10  frivolous objections?

11  A.   Well, I don't know anything about that.

12  Q.   Well, I just read you several opinions of

13  different judges, eight plus and eight of those 23

14  where Mr. Bandas has pursued objections the court

15  ruled that they were frivolous and, you know, were

16  filed solely for the benefit of counsel and not

17  for the benefit of class members, that doesn't

18  trouble you at all?

19  A.   I don't know anything about that.

20  Q.   You're still willing to pursue your objection

21  in this case?

22  A.   Yes, sir.

23  Q.   And are you troubled by the fact that Mr.

24  Bandas has frequently used his office manager to

25  object to various different settlements?
```

Confidential - Subject to Further Confidentiality Review

```
 1    A.    I don't know anything about that, sir.

 2    Q.    If I told you that he's used his office

 3    manager to object to at least two settlements in

 4    two different cases, that wouldn't trouble you at

 5    all?

 6    A.    Maybe she's upset about something.

 7    Q.    And if I told you he's got other individuals

 8    Kervin M. Walsh for one and Lolita Wells who have

 9    similarly filed multiple objections at the behest

10    of Mr. Bandas, that doesn't trouble you at all?

11    A.    No.

12    Q.    Now are you aware that Mr. Bandas has in the

13    past abandoned his client's objections?

14    A.    I don't know anything about that, sir.

15    Q.    And if I told you that he has in the past

16    abandoned his client's objections, would you still

17    be willing to go forward with your objection in

18    this case?

19    A.    I'm still willing to go forward.

20    Q.    Even though it's possible that he might just

21    walk away and not pursue the objection and leave

22    you hanging?

23    A.    I don't know anything about that.

24    Q.    Does that trouble you at all?

25    A.    I'm still willing to go forward with my
```

Confidential - Subject to Further Confidentiality Review

```
 1   objection.

 2   Q.   Can I ask you if Mr. Batman, is that his

 3   birth name or did he change his last name to

 4   Batman?

 5   A.   I don't know, sir.

 6   Q.   You don't know?

 7   A.   No.  I think I had that same question when I

 8   met him.

 9   Q.   Did he answer your question?

10   A.   I didn't ask him.  I just thought it in my

11   head.

12   Q.   Okay.  Now, are you aware that Mr. Batman has

13   also filed several objections in other cases?

14   A.   No, sir.

15   Q.   In at least four different cases?

16   A.   I don't know anything about that.

17   Q.   Does that trouble you at all that your friend

18   is using these objections to try to make money?

19   A.   I don't know anything about that.

20   Q.   And that doesn't change anything about your

21   decision to go forward with your appeal?

22   A.   I'm still willing to go forward.

23   Q.   Not your appeal, but your objection?

24   A.   My objection, yes.

25   Q.   And you're -- again you're willing to risk
```

Confidential - Subject to Further Confidentiality Review

1    that you might be sanctioned by court?

2    A.   I'm willing to go forward with my objection.

3    Q.   And we have one sanction motion pending and

4    another one that's going to be filed shortly?

5    A.   Uh-huh.

6    Q.   You're still willing to go forward?

7    A.   I'm still willing to go forward with my

8    objection.

9              MR. GAUGHAN:  I guess we'll go off

10   the record.  I think I'm probably done.

11             VIDEOGRAPHER:  Off the record at

12   4:59.

13                   *   *   *

14             VIDEOGRAPHER:  We're back on the

15   record at 5:10 p.m.

16             MR. GAUGHAN:  I guess we're

17   concluding your deposition.  Thank you

18   Mr. Soto.  I appreciate you coming in again

19   on short notice.  Thank you.

20             THE WITNESS:  Thank you for

21   changing it for me.

22             MR. GAUGHAN:  No problem, but I

23   would again -- I'm not going to conclude the

24   deposition, per se, I'm going to reserve my

25   right to continue since documents were

Confidential - Subject to Further Confidentiality Review

```
1        produced to us at the last minute.  I didn't
2        have an opportunity to review them.  I had
3        some 6800 plus documents produced to the
4        liaison counsel last night.  I obviously
5        didn't receive these documents because I was
6        here in Corpus Christi, liaison counsel is in
7        Louisiana.  Also today when I think I put on
8        the record before the deposition that I
9        received a letter from Mr. Bandas purporting
10       to provide a more limited range of documents
11       that were relevant to Mr. Soto's objection.
12       Obviously since I received that at 3:00
13       before a deposition that was scheduled for
14       3:00 and there were several hundred documents
15       perhaps upwards of three, 400 documents
16       listed, I did not have ample time to review
17       those documents to ask you questions and I
18       have put on the record that we're going to be
19       filing or intend to file a motion for
20       sanctions and request that we receive costs,
21       attorneys fees and that your deposition be
22       scheduled in Louisiana and that you be
23       required to travel there.  And that's it and
24       I have no other -- nothing else at this point
25       in time.
```

Confidential - Subject to Further Confidentiality Review

```
1              MR. DODSON:  I'm letting you know
2         that we have documents here, you're welcomed
3         to examine them.  We're not asking you to
4         stop.
5              MR. GAUGHAN:  I don't think that's
6         a full set, I don't think that's all the
7         documents and I don't think that I could
8         possibly review all the documents that are
9         set forth in the letter without us spending
10        the whole night here, so I'm going to
11        conclude the deposition and reserve the right
12        to recall subject to a motion, of course,
13        which the court may or may not grant.  Okay.
14             THE WITNESS:  Okay.
15             VIDEOGRAPHER:  Off the record at
16        5:12.
17                       *   *   *
18
19
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1

 2                   CERTIFICATE

 3

 4

 5            I HEREBY CERTIFY that the
      witness was duly sworn by me and that the
 6    deposition is a true record of the
      testimony given by the witness.
 7
              It was requested before
 8    completion of the deposition that the
      witness, SAUL SOTO, have the
 9    opportunity to read and sign the
      deposition transcript.
10

11
              _____
12            ANGELA M. HOWARD, Texas CSR 8775
              Expiration Date:  12/31/12
12            Certified Reporter
13            Notary Public
              Dated:  November 13, 2012
14

15

16            (The foregoing certification
17    of this transcript does not apply to any
18    reproduction of the same by any means,
19    unless under the direct control and/or
20    supervision of the certifying reporter.)
21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1              INSTRUCTIONS TO WITNESS

 2

 3              Please read your deposition

 4   over carefully and make any necessary

 5   corrections.  You should state the reason

 6   in the appropriate space on the errata

 7   sheet for any corrections that are made.

 8              After doing so, please sign

 9   the errata sheet and date it.

10              You are signing same subject

11   to the changes you have noted on the

12   errata sheet, which will be attached to

13   your deposition.

14              It is imperative that you

15   return the original errata sheet to the

16   deposing attorney within thirty (30) days

17   of receipt of the deposition transcript

18   by you.  If you fail to do so, the

19   deposition transcript may be deemed to be

20   accurate and may be used in court.

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                - - - - - -

             E R R A T A

 2                - - - - - -

 3

 4    PAGE  LINE  CHANGE

 5    ____  ____  _____

 6        REASON: _____

 7    ____  ____  _____

 8        REASON: _____

 9    ____  ____  _____

10        REASON: _____

11    ____  ____  _____

12        REASON: _____

13    ____  ____  _____

14        REASON: _____

15    ____  ____  _____

16        REASON: _____

17    ____  ____  _____

18        REASON: _____

19    ____  ____  _____

20        REASON: _____

21    ____  ____  _____

22        REASON: _____

23    ____  ____  _____

24        REASON: _____

25
```

Confidential - Subject to Further Confidentiality Review

```
 1

 2            ACKNOWLEDGMENT OF DEPONENT

 3

 4            I,_____, do

 5    hereby certify that I have read the

 6    foregoing pages, and that the same is

 7    a correct transcription of the answers

 8    given by me to the questions therein

 9    propounded, except for the corrections or

10    changes in form or substance, if any,

11    noted in the attached Errata Sheet.

12

13

14    _____

15    SAUL SOTO                        DATE

16

17

18    Subscribed and sworn

      to before me this

19    _____ day of _____, 20____.

20    My commission expires:_____

21

      _____

22    Notary Public

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    LAWYER'S NOTES

 2     PAGE   LINE

 3     _____  _____  _____

 4     _____  _____  _____

 5     _____  _____  _____

 6     _____  _____  _____

 7     _____  _____  _____

 8     _____  _____  _____

 9     _____  _____  _____

10     _____  _____  _____

11     _____  _____  _____

12     _____  _____  _____

13     _____  _____  _____

14     _____  _____  _____

15     _____  _____  _____

16     _____  _____  _____

17     _____  _____  _____

18     _____  _____  _____

19     _____  _____  _____

20     _____  _____  _____

21     _____  _____  _____

22     _____  _____  _____

23     _____  _____  _____

24     _____  _____  _____

25     _____  _____  _____
```