# Exhibit A-1

```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3

 4

 5   IN RE:  CHINESE-MANUFACTURED   *      Docket 09-MD-2047
             DRYWALL PRODUCTS       *
 6           LIABILITY LITIGATION   *      Section L
                                    *
 7                                  *      New Orleans, Louisiana
                                    *
 8   Relates to:  All Cases         *      November 13, 2012
     * * * * * * * * * * * * * * * *
 9

10
                       MONTHLY STATUS CONFERENCE
11                     AND FAIRNESS HEARING BEFORE
                     THE HONORABLE ELDON E. FALLON
12                    UNITED STATES DISTRICT JUDGE

13

14   Appearances:

15
     For the Plaintiffs:           Herman Herman & Katz, LLC
16                                 BY:  RUSS M. HERMAN, ESQ.
                                   820 O'Keefe Avenue
17                                 New Orleans, Louisiana 70113

18
     For the Plaintiffs:           Levin Fishbein Sedran & Berman
19                                 BY:  ARNOLD LEVIN, ESQ.
                                   510 Walnut Street, Suite 500
20                                 Philadelphia, Pennsylvania 19106

21
     For the Defendants:           Frilot, LLC
22                                 BY:  KERRY J. MILLER, ESQ.
                                   1100 Poydras Street, Suite 3700
23                                 New Orleans, Louisiana 70163

24

25
```

```
 1   For the Plaintiffs:          Rhine Law Firm, PC
                                  BY:  JOEL R. RHINE, ESQ.
 2                                314 Walnut Street, Suite 1000
                                  Wilmington, North Carolina 28401
 3

 4   For the Knauf Entities:      Kaye Scholer, LLP
                                  BY:  JAY P. MAYESH, ESQ.
 5                                     STEVEN GLICKSTEIN, ESQ.
                                  425 Park Avenue
 6                                New York, New York 10022

 7
     For Interior Exterior        Galloway Johnson Tompkins
 8   Building Supply, LP:           Burr & Smith
                                  BY:  RICHARD DUPLANTIER JR., ESQ.
 9                                701 Poydras Street, 40th Floor
                                  New Orleans, Louisiana 70139
10

11   For Interior Exterior:       Carver Darden Koretzky Tessier
     Building Supply, LP:           Finn Blossman & Areaux, LLC
12                                BY:  PHILIP D. NIZIALEK, ESQ.
                                  1100 Poydras Street, Suite 3100
13                                New Orleans, Louisiana 70163

14
     For Liberty Mutual:          Choate Hall & Stewart, LLP
15                                BY:  A. HUGH SCOTT, ESQ.
                                  Two International Place
16                                Boston, Massachusetts 02110

17
     For L&W Supply and           Haynsworth Sinkler Boyd, PA
18   USG Corporation:             BY:  W. DAVID CONNER, ESQ.
                                  75 Beattie Place, 11th Floor
19                                Greenville, South Carolina 29601

20
     For the Banner Entities:     Weinberg Wheeler Hudgins
21                                  Gunn & Dial, LLC
                                  BY:  NICHOLAS PANAYOTOPOULOS, ESQ.
22                                3344 Peachtree Road, NE
                                  Suite 2400
23                                Atlanta, Georgia 30326

24

25
```

| | | |
|---|---|---|
| 1 | For the Banner Entities: | Peterson & Espino<br>BY:  MICHAEL P. PETERSON, ESQ.<br>10631 SW 88 Street, Suite 220<br>Miami, Florida 33176 |
| 4 | For Chartis: | Quinn Emanuel Urquhart<br>  & Sullivan, LLP<br>BY:  RENITA N. SHARMA, ESQ.<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010 |
| 7 | For the Global Defendants: | Barrasso Usdin Kupperman<br>  Freeman & Sarver, LLC<br>BY:  H. MINOR PIPES III, ESQ.<br>909 Poydras Street, 24th Floor<br>New Orleans, Louisiana 70112 |
| 11 | For the Home Builders: | Greenberg Traurig, LLP<br>BY:  HILARIE BASS, ESQ.<br>333 SE 2nd Avenue, Suite 4400<br>Miami, Florida 33131 |
| 14 | For Landmark American<br>Insurance Company: | Deutsch Kerrigan & Stiles, LLP<br>BY:  MELISSA M. LESSELL, ESQ.<br>755 Magazine Street<br>New Orleans, Louisiana 70130 |
| 17 | For The North River<br>Insurance Company: | Thompson Coe Cousins & Irons, LLP<br>BY:  KEVIN F. RISLEY, ESQ.<br>One Riverway, Suite 1600<br>Houston, Texas 77056 |
| 20 | For Wayne Kaplan: | Milstein Adelman, LLP<br>BY:  MARK A. MILSTEIN, ESQ.<br>2800 Donald Douglas Loop North<br>Santa Monica, California 90405 |
| 23 | For Wayne Kaplan: | Roberts & Durkee, PA<br>BY:  C. DAVID DURKEE, ESQ.<br>121 Alhambra Plaza, Suite 1603<br>Coral Gables, Florida 33134 |

```
 1   Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
                                   500 Poydras Street, HB-406
 2                                 New Orleans, Louisiana 70130
                                   (504) 589-7778
 3                                 Toni_Tusa@laed.uscourts.gov

 4

 5
     Proceedings recorded by mechanical stenography using
 6   computer-aided transcription software.
```

|   |   |
|---|---|
| 14:29:16 | 1 | exhibit list a minute ago.  The second amended motion is on
| 14:29:20 | 2 | there as Exhibit 68.  We certainly don't object to the Court
| 14:29:24 | 3 | taking judicial notice of the filing.  We do object if it's
| 14:29:28 | 4 | offered as substantive evidence.  It's not even on the list
| 14:29:28 | 5 | today.  To the extent it's on any other list, we also object to
| 14:29:28 | 6 | it for the same reason.
| 14:29:34 | 7 | **MR. MILLER:**  Your Honor, just a question and a
| 14:29:35 | 8 | request for clarification on a point you just made.  You said
| 14:29:38 | 9 | you were going to keep the record open for a couple weeks to
| 14:29:41 | 10 | allow for supplemental briefing.  Your Honor, would that
| 14:29:43 | 11 | include keeping the record open for Knauf to exercise its
| 14:29:47 | 12 | withdrawal rights from the settlement?
| 14:29:49 | 13 | **THE COURT:**  For whatever reasons necessary.  The
| 14:29:51 | 14 | point is that the record will remain open.  I'm not going to
| 14:29:56 | 15 | continue the hearing because hopefully everybody has said
| 14:30:01 | 16 | everything they need to say, but it's the same.  So the answer
| 14:30:04 | 17 | is yes to your specific question.
| 14:30:06 | 18 | **MR. MILLER:**  Thank you, Your Honor.
| 14:30:08 | 19 | **MR. HERMAN:**  May it please the Court.  Judge Fallon,
| 14:30:09 | 20 | as you know, Chris Seeger had some Hurricane Sandy problems.
| 14:30:17 | 21 | Jerry Meunier, who is captain of our trial team at this
| 14:30:25 | 22 | juncture, I believe is in the other courtroom listening.  We
| 14:30:29 | 23 | would like to get him here so he can meet in chambers on the
| 14:30:33 | 24 | issue you have asked.
| 14:30:35 | 25 | **THE COURT:**  Fine.


| | | |
|---|---|---|
| 14:30:36 | 1 | Anything further?  Steve. |
| 14:30:43 | 2 | **MR. GLICKSTEIN:**  Steve Glickstein on behalf of the |
| 14:30:44 | 3 | Knauf defendants.  I wanted to address first the question |
| 14:30:51 | 4 | Your Honor asked about class certification. |
| 14:30:54 | 5 | I would just point Your Honor and Mr. Brandao to |
| 14:31:02 | 6 | the PSC's brief in response to objections -- I think it's |
| 14:31:07 | 7 | record 16119-2, pages 42 to 51 -- and also Mr. Pipes's brief on |
| 14:31:17 | 8 | behalf of the global settlement, the entirety of which I think |
| 14:31:23 | 9 | is addressed to the class certification issue and particularly |
| 14:31:26 | 10 | to some of the issues that Your Honor has raised.  That brief |
| 14:31:31 | 11 | is record 16117.  I would just point you in that direction |
| 14:31:36 | 12 | because I think it addresses frontally the class action issues |
| 14:31:41 | 13 | that Your Honor raised. |
| 14:31:45 | 14 | **THE COURT:**  The PSC also addressed it in their brief. |
| 14:31:48 | 15 | I did see all of the written materials on it, but I did want |
| 14:31:53 | 16 | you all to at least have an opportunity to address it verbally |
| 14:31:57 | 17 | because some individuals in the courtroom maybe hadn't had the |
| 14:32:02 | 18 | opportunity to read all the briefs.  They are quite extensive. |
| 14:32:05 | 19 | **MR. GLICKSTEIN:**  I would like to address some |
| 14:32:08 | 20 | questions concerning the second amendment because it was raised |
| 14:32:15 | 21 | by Mr. Risley. |
| 14:32:20 | 22 | First, I think Mr. Risley misunderstands what |
| 14:32:28 | 23 | the second amendment does and what the second amendment doesn't |
| 14:32:33 | 24 | do.  As Your Honor knows and as we said in both of our briefs |
| 14:32:40 | 25 | in support of the settlement and as we said numerous times on |

```
14:32:45   1   the record beforehand, all of these settlements stand together
14:32:55   2   or fall together.  It has always been incumbent, we thought, on
14:33:05   3   all of the major defendants and all of their insurers to
14:33:09   4   participate in this process so that we could bring relief to
14:33:14   5   homeowners.  We had made crystal clear to all parties that that
14:33:23   6   included North River's excess insurer.
14:33:30   7            North River's primary insurers, Liberty Mutual
14:33:34   8   and Arch, have put in their policy limits towards settling
14:33:39   9   these claims and North River has not.  So that raised a
14:33:50  10   conundrum for the parties because our clients were adamant that
14:33:55  11   they were not going to go forward with the settlement if there
14:34:01  12   was not participation by North River.  We so notified the
14:34:07  13   Court.  We so notified the PSC.  We so notified InEx.
14:34:16  14            Our first goal was to see if we could reach an
14:34:20  15   agreement with North River.  The Court scheduled a mediation on
14:34:23  16   May 31.  That mediation failed.  So after May 31, beginning in
14:34:31  17   June, the parties began to discuss whether there was another
14:34:36  18   way of reaching a resolution that could be achieved without
14:34:52  19   North River's participation.
14:34:53  20            What we did is we researched the law.  There is
14:35:01  21   a series of cases under Louisiana law that permits an insured,
14:35:08  22   here InEx, to settle a case without the consent of the insurer
14:35:15  23   where time is of the essence, meaning there will be immediate
14:35:21  24   damage to the insured if they don't settle, where the insurer
14:35:26  25   unjustifiably declines to settle the case and settlement is
```

```
14:35:35   1    reasonable.  So we -- Arch, Liberty, the PSC, and InEx -- under
14:35:51   2    the authority of that case law, reached a high-low settlement.
14:35:59   3    What that settlement did was:
14:36:01   4             (1)  It preserves North River's ability to say
14:36:10   5    that its insured InEx has no liability at all, and that will be
14:36:17   6    tested in the upcoming trial on November 26;
14:36:21   7             (2)  It reserves to North River all of its
14:36:26   8    coverage defenses;
14:36:29   9             (3)  It reserves its right, if any -- and I
14:36:35  10    emphasize *if any* because that's a legal issue that Your Honor
14:36:37  11    will have to determine -- to seek indemnity from other parties.
14:36:47  12             The nature of the high-low settlement is as
14:36:50  13    follows:
14:36:54  14             If InEx and North River are successful in the
14:36:59  15    bellwether trials and InEx is found not to be liable, then
14:37:05  16    Knauf at that point will waive its right to terminate the
14:37:11  17    settlement because InEx has been found not to be liable.
14:37:16  18             On the other hand, if InEx is found to be liable
14:37:22  19    as a bad faith seller and, in addition to that, the Court
14:37:29  20    following trial determines the issue of solidary liability in
14:37:36  21    favor of the PSC, then that means in that case that InEx and,
14:37:48  22    subject to coverage, its insurer North River must pay the
14:37:52  23    entirety of the damage and be left with its right to seek
14:37:57  24    indemnification if it can get it.
14:38:01  25             In that instance the insured, under the *Babst*
```

14:38:05   1   case, has agreed that there's really no reasonable prospect
14:38:10   2   that the damages, given the number of people and the cost, can
14:38:13   3   be less than the $72 million in available coverage, and so in
14:38:18   4   that case there is a $72 million settlement.
14:38:23   5               If there is an intermediate result such as a win
14:38:26   6   against some plaintiffs and not others, or if there's a win
14:38:30   7   against all plaintiffs but there's not a determination of
14:38:35   8   solidary liability, instead it's only several liability, then
14:38:38   9   there's an intermediate result of $36 million.
14:38:45  10               But what is at issue before the Court today and
14:38:52  11   what isn't at issue?  Mr. Duplantier said this, but it may be
14:38:59  12   worth slowing down what we are talking about here.  The issue
14:39:05  13   is whether the second amendment is fair to the class, because
14:39:12  14   what the second amendment does is it gets Knauf to agree not to
14:39:23  15   withdraw from its settlement based on North River's
14:39:29  16   nonparticipation.  That is obviously a huge benefit to the
14:39:34  17   class.
14:39:39  18               If ultimately it is found to be enforceable,
14:39:45  19   then it liquidates the damages because it was a good faith
14:39:48  20   settlement by the insured under circumstances which we think
14:39:53  21   enable the insured to bind its carrier because time is of the
14:39:58  22   essence and there was unjustifiable delay on the carrier's
14:40:03  23   part.  That's a benefit to the class.
14:40:11  24               So all the Court has to do now is determine
14:40:16  25   whether the second amendment is fair to the class.  As to

14:40:23  1  whether additional notice needs to be provided to the class,
14:40:27  2  the joint briefs submitted by the PSC, Knauf, and InEx on
14:40:34  3  October 23 -- unfortunately, I don't have the record number,
14:40:37  4  but pages 15 to 17 address the notice issues.  When you have an
14:40:47  5  amendment that is unilaterally beneficial to the class --
14:40:51  6  North River doesn't say there's any impairment of the class's
14:40:56  7  ability under the settlement -- there doesn't need to be a
14:40:59  8  second notice that says you have got even more benefits than
14:41:02  9  what you thought you had in the first place.
14:41:07  10              What's not at issue today?  What's not at issue
14:41:12  11  is whether or not this second amendment is binding upon
14:41:20  12  North River.  That's a coverage issue.  The agreement preserves
14:41:27  13  North River's coverage defenses.
14:41:30  14              So, yes, there is a risk, but it's a risk to
14:41:35  15  Knauf and a risk to InEx -- actually a risk to InEx and a risk
14:41:42  16  to the PSC that at the appropriate time, when the issue of
14:41:48  17  whether or not the second amendment is binding on North River,
14:41:54  18  that if the appropriate findings aren't made, that the
14:41:59  19  agreement will not be enforceable.  That's possible.
14:42:03  20              We think and we feel very confident that we will
14:42:06  21  be able to meet the test that's in the case law and that it
14:42:11  22  will be enforceable.  I guess we are putting our money where
14:42:14  23  our mouth is because we waived at least that termination right
14:42:22  24  on a bet that the facts and the law will support us in that
14:42:26  25  regard.

14:42:30  1   There are other contingencies in the settlement
14:42:37  2   that go beyond the North River contingencies because, as we
14:42:42  3   said, all the settlements stand or fall together. I think
14:42:44  4   you've heard Mr. Panayotopoulos say that if certain claims,
14:42:50  5   particularly on the Taishan side, are not resolved, that they
14:42:56  6   will have too much exposure to go forward and that might cause
14:43:02  7   them to go into bankruptcy, which would or could result in
14:43:09  8   everything unraveling.
14:43:12  9   So, yeah, we still have some work ahead of us.
14:43:14 10   The fact that we presented this settlement to you today doesn't
14:43:19 11   diminish our determination to go forward. We are and continue
14:43:25 12   to be working very hard because we think this is in the
14:43:28 13   interest of the homeowners. We think this is in the interest
14:43:32 14   of the settling defendants. We want it to succeed, and we will
14:43:37 15   work very hard for it to succeed. We presented it to you
14:43:40 16   because we believe it's fair, but there are contingencies. We
14:43:45 17   haven't waived them. I think Your Honor just stated that
14:43:48 18   you'll provide us with an ample amount of time. To assure that
14:43:54 19   those contingencies are fulfilled, the termination dates are
14:43:59 20   being extended.
14:44:02 21   I think what I heard Mr. Risley say is that if
14:44:12 22   North River's rights are not impaired, they agree that they
14:44:15 23   don't have standing. I think that is, in fact, where we are
14:44:22 24   because their coverage defenses are preserved. The InEx and
14:44:30 25   PSC members can say whether they disagree, but I think that

```
14:44:36   1    applies to all three issues that he addressed.
14:44:43   2                First, there's one assignment, not two
14:44:44   3    assignments.  There's an assignment of the policy under the
14:44:50   4    InEx settlement with the PSC.  I think the second assignment
14:44:55   5    that Mr. Risley referred to is not an assignment of any policy
14:44:59   6    rights but an assignment of any recovery that they obtain,
14:45:05   7    which is different.  It's an assignment not of a claim but of a
14:45:11   8    recovery.
14:45:14   9                Then there's the exhaustion issue.  The Court
14:45:16  10    has to determine whether the policy is exhausted for the
14:45:20  11    purpose of whether it's fair to the class.  And there's the
14:45:22  12    second amendment, is the second amendment fair to the class.
14:45:29  13                North River will have the opportunity -- nobody
14:45:30  14    is attempting to deny it due process -- to assert its coverage
14:45:35  15    position.  And if, in fact, at the appropriate time their
14:45:42  16    coverage positions are sustained in whole or in part, then
14:45:46  17    their coverage positions are what their coverage positions are.
14:45:50  18    They are not waived by the second amendment or anything else in
14:45:53  19    these settlements.
14:45:54  20                So at the bottom, they really don't have
14:45:59  21    standing.  What we have done is put in place a mechanism that
14:46:05  22    we think ultimately will bind North River, but today is not the
14:46:09  23    forum.  Today is not the opportunity for the Court to rule
14:46:14  24    about whether it is or isn't binding.
14:46:20  25                **THE COURT:**  What we need to do, I think you and
```

```
14:46:23   1   North River need to at least talk, and then let me know whether
14:46:33   2   there are any issues I need to resolve and what the issue or
14:46:35   3   issues are.  Then I will set something convenient with your
14:46:43   4   schedule, and we will deal with it that way.
14:46:45   5              I'm hearing some things that may moot some
14:46:49   6   things and some things that may not moot some things.  Until
14:46:53   7   you sit down and talk about what your problems are and what
14:46:56   8   their solutions are -- some of the conversation, I think I
14:47:06   9   understand it, but you may feel it's too vague and you might
14:47:09  10   want some specifics, and he may feel it's too vague and he may
14:47:14  11   need some specifics.  So I think you all ought to get together
14:47:19  12   and see where you are and let me hear from you as to whether
14:47:23  13   there is an issue or issues you need me on.
14:47:25  14              **MR. RISLEY:**  I just want to make it clear our
14:47:26  15   position is that that second amendment to the settlement is not
14:47:29  16   before the Court today.  I raised it only because InEx did in
14:47:32  17   their presentation, in responding to it, but certainly the
14:47:34  18   response is it's not even set for hearing today.
14:47:37  19              **THE COURT:**  I think he agrees with you and he feels
14:47:39  20   that may never be before the Court.  It may be something that
14:47:42  21   you have no complaint over.
14:47:44  22              **MR. RISLEY:**  Fair enough, Your Honor.
14:47:46  23              **THE COURT:**  Thank you very much.
14:47:47  24              **MR. MILLER:**  Your Honor, one thing real quick, just a
14:47:49  25   point of clarification.  The extension to the withdrawal
```

```
14:47:51   1   rights, counsel for Banner and InEx tapped me on the shoulder.
14:47:53   2   It applies to those two parties as well?  Global too?
14:47:59   3           THE COURT:  Yes.
14:48:00   4              All right.  Court will stand in recess.
14:48:02   5           THE DEPUTY CLERK:  All rise.
14:52:56   6           (Proceedings adjourned.)
14:53:01   7                        *  *  *
           8                       CERTIFICATE
           9       I, Toni Doyle Tusa, CCR, FCRR, Official Court
          10   Reporter for the United States District Court, Eastern District
          11   of Louisiana, do hereby certify that the foregoing is a true
          12   and correct transcript, to the best of my ability and
          13   understanding, from the record of the proceedings in the
          14   above-entitled matter.
          15
          16
          17                        s/ Toni Doyle Tusa
                                    Toni Doyle Tusa, CCR, FCRR
          18                        Official Court Reporter
```