1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  CHINESE-MANUFACTURED   *        Docket 09-MD-2047
            DRYWALL PRODUCTS        *
6           LIABILITY LITIGATION    *        Section L
                                    *
7                                   *        New Orleans, Louisiana
                                    *
8   Relates to:  All Cases          *        November 13, 2012
    * * * * * * * * * * * * * * * *

9

10

                       MONTHLY STATUS CONFERENCE
11                 AND FAIRNESS HEARING BEFORE
                   THE HONORABLE ELDON E. FALLON
12                 UNITED STATES DISTRICT JUDGE

13

14  Appearances:

15

    For the Plaintiffs:          Herman Herman & Katz, LLC
16                               BY:  RUSS M. HERMAN, ESQ.
                                 820 O'Keefe Avenue
17                               New Orleans, Louisiana 70113

18

    For the Plaintiffs:          Levin Fishbein Sedran & Berman
19                               BY:  ARNOLD LEVIN, ESQ.
                                 510 Walnut Street, Suite 500
20                               Philadelphia, Pennsylvania 19106

21

    For the Defendants:          Frilot, LLC
22                               BY:  KERRY J. MILLER, ESQ.
                                 1100 Poydras Street, Suite 3700
23                               New Orleans, Louisiana 70163

24

25

```
1    For the Plaintiffs:          Rhine Law Firm, PC
                                  BY:   JOEL R. RHINE, ESQ.
2                                 314 Walnut Street, Suite 1000
                                  Wilmington, North Carolina 28401
3

4    For the Knauf Entities:      Kaye Scholer, LLP
                                  BY:   JAY P. MAYESH, ESQ.
5                                       STEVEN GLICKSTEIN, ESQ.
                                  425 Park Avenue
6                                 New York, New York 10022

7

     For Interior Exterior        Galloway Johnson Tompkins
8    Building Supply, LP:            Burr & Smith
                                  BY:  RICHARD DUPLANTIER JR., ESQ.
9                                 701 Poydras Street, 40th Floor
                                  New Orleans, Louisiana 70139
10

11   For Interior Exterior:       Carver Darden Koretzky Tessier
     Building Supply, LP:            Finn Blossman & Areaux, LLC
12                                BY:   PHILIP D. NIZIALEK, ESQ.
                                  1100 Poydras Street, Suite 3100
13                                New Orleans, Louisiana 70163

14

     For Liberty Mutual:          Choate Hall & Stewart, LLP
15                                BY:   A. HUGH SCOTT, ESQ.
                                  Two International Place
16                                Boston, Massachusetts 02110

17

     For L&W Supply and           Haynsworth Sinkler Boyd, PA
18   USG Corporation:             BY:   W. DAVID CONNER, ESQ.
                                  75 Beattie Place, 11th Floor
19                                Greenville, South Carolina 29601

20

     For the Banner Entities:     Weinberg Wheeler Hudgins
21                                   Gunn & Dial, LLC
                                  BY:   NICHOLAS PANAYOTOPOULOS, ESQ.
22                                3344 Peachtree Road, NE
                                  Suite 2400
23                                Atlanta, Georgia 30326

24

25
```

```
 1   For the Banner Entities:      Peterson & Espino
                                   BY:  MICHAEL P. PETERSON, ESQ.
 2                                 10631 SW 88 Street, Suite 220
                                   Miami, Florida 33176
 3

 4   For Chartis:                  Quinn Emanuel Urquhart
                                     & Sullivan, LLP
 5                                 BY:  RENITA N. SHARMA, ESQ.
                                   51 Madison Avenue, 22nd Floor
 6                                 New York, New York 10010

 7

 8   For the Global Defendants:    Barrasso Usdin Kupperman
                                     Freeman & Sarver, LLC
 9                                 BY:  H. MINOR PIPES III, ESQ.
                                   909 Poydras Street, 24th Floor
10                                 New Orleans, Louisiana 70112

11   For the Home Builders:        Greenberg Traurig, LLP
                                   BY:  HILARIE BASS, ESQ.
12                                 333 SE 2nd Avenue, Suite 4400
                                   Miami, Florida 33131
13

14   For Landmark American         Deutsch Kerrigan & Stiles, LLP
     Insurance Company:            BY:  MELISSA M. LESSELL, ESQ.
15                                 755 Magazine Street
                                   New Orleans, Louisiana 70130
16

17   For The North River          Thompson Coe Cousins & Irons, LLP
     Insurance Company:           BY:  KEVIN F. RISLEY, ESQ.
18                                One Riverway, Suite 1600
                                  Houston, Texas 77056
19

20   For Wayne Kaplan:            Milstein Adelman, LLP
                                  BY:  MARK A. MILSTEIN, ESQ.
21                                2800 Donald Douglas Loop North
                                  Santa Monica, California 90405
22

23   For Wayne Kaplan:            Roberts & Durkee, PA
                                  BY:  C. DAVID DURKEE, ESQ.
24                                121 Alhambra Plaza, Suite 1603
                                  Coral Gables, Florida 33134
25
```

1    Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                     500 Poydras Street, HB-406
2                                    New Orleans, Louisiana 70130
                                     (504) 589-7778
3                                    Toni_Tusa@laed.uscourts.gov

4

5
     Proceedings recorded by mechanical stenography using
6    computer-aided transcription software.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>I N D E X</u>

|  | PAGE |
|---|---|
| Monthly Status Conference | 6 |
| Fairness Hearing | |
| Arnold Levin, Esq. | 21 |
| Russ M. Herman, Esq. | 37 |
| Kerry J. Miller, Esq. | 50 |
| Jay P. Mayesh, Esq. | 58 |
| Steven Glickstein, Esq. | 68 |
| Richard Duplantier Jr., Esq. | 75 |
| Philip D. Nizialek, Esq. | 79 |
| A. Hugh Scott, Esq. | 81 |
| W. David Conner, Esq. | 87 |
| Nicholas P. Panayotopoulos, Esq. | 90 |
| Michael P. Peterson, Esq. | 95 |
| Renita N. Sharma, Esq. | 98 |
| H. Minor Pipes III, Esq. | 98 |
| Hilarie Bass, Esq. | 113 |
| Russ M. Herman, Esq. | 114 |
| Melissa M. Lessell, Esq. | 117 |
| Kevin F. Risley, Esq. | 117 |
| Mark A. Milstein, Esq. | 124 |
| Russ M. Herman, Esq. | 127 |
| Steven Glickstein, Esq. | 129 |

|   |   |
|---|---|
| 08:24:04 | 1 |
| 08:24:04 | 2 |
| 08:28:08 | 3 |
| 08:29:54 | 4 |
| 08:33:55 | 5 |
| 08:33:55 | 6 |
| 08:33:57 | 7 |
| 08:33:58 | 8 |
| 08:34:03 | 9 |
| 08:34:05 | 10 |
| 08:34:08 | 11 |
| 08:34:12 | 12 |
| 08:34:14 | 13 |
| 08:34:15 | 14 |
| 08:34:17 | 15 |
| 08:34:19 | 16 |
| 08:34:23 | 17 |
| 08:34:26 | 18 |
| 08:34:30 | 19 |
| 08:34:36 | 20 |
| 08:34:43 | 21 |
| 08:34:47 | 22 |
| 08:34:51 | 23 |
| 08:34:51 | 24 |
| 08:34:55 | 25 |

## MORNING SESSION

### (November 13, 2012)

(The following proceedings were held in open court.)

THE COURT:  Be seated, please.  Good morning, ladies and gentlemen.

Call the case, please.

THE DEPUTY CLERK:  MDL 2047 In Re: Chinese-Manufactured Drywall Products Liability Litigation.

THE COURT:  Liaison and counsel, make their appearance for the record, please.

MR. HERMAN:  Good morning, Judge Fallon.  Russ Herman for the plaintiffs.

MR. MILLER:  Good morning, Your Honor.  Kerry Miller for the defense steering committee.

THE COURT:  We are here today for two reasons.  One is the monthly status conference.  I have a full courtroom and several hundred people on the phone, so please use the microphones when you address the Court.

In addition, we have a class cert and final fairness hearing following this.  I suspect the initial status conference will only be about 15 or 20 minutes, maybe half an hour at the most, and then we will go into the other aspect of the case.

Before we start, I do want to take the opportunity to mention that in cases of this sort, particularly

08:35:00  1   the MDLs, we are seeing throughout the country that in addition
08:35:06  2   to the federal MDLs, we have a lot of cases that are in state
08:35:13  3   court and remain in various state courts.  It's necessary, I
08:35:21  4   think essential, that the federal court work closely with the
08:35:25  5   state courts.
08:35:26  6             I've been very fortunate in this particular case
08:35:30  7   to have some super state judges work with me and give me great
08:35:39  8   comfort in their interpretation of the law and in their
08:35:42  9   experience in handling this.
08:35:43  10            One of the first that I reached out to, and he
08:35:51  11  has been working with me for many years now, is Judge Joe
08:35:55  12  Farina.  I am happy that he has ended his career on the bench
08:36:04  13  after many, many years and now has moved into the professional
08:36:11  14  private sector.  He was a great help to me and hopefully will
08:36:16  15  continue to be a great help to me.  Judge Farina is in the
08:36:20  16  courtroom today, and I do want to take the opportunity to
08:36:22  17  mention him.
08:36:24  18            He is succeeded by Judge Bailey.  Judge Bailey
08:36:28  19  and I have also established a good working relationship, and
08:36:32  20  I'll be working closely with her.
08:36:35  21            Judge Hall, out of Virginia, has also been
08:36:40  22  helpful, and Judge Richards in Florida has lent a great hand.
08:36:45  23            Because of this collaborative effort, I think we
08:36:48  24  have been able to at least bring to bear various interests in
08:36:53  25  this case and we have been able to work together.

08:36:58  1          Let's start with first the status conference.
08:37:02  2  Any reports on that?
08:37:04  3          I met with counsel a moment ago, lead and
08:37:06  4  liaison, to discuss with them the proposed agenda.  We have a
08:37:11  5  number of items on the agenda that will not be necessary to go
08:37:15  6  into, but there are three or four items that we should address.
08:37:20  7          MR. HERMAN:  May it please the Court.  Judge Fallon,
08:37:23  8  Judge Farina, every lawyer in this courtroom has followed you
08:37:27  9  now for three or four years and the excellent way you handle
08:37:33  10  your docket and the lawyers.  We are not an easy group.  We
08:37:39  11  appreciate you and we are glad to have you here.
08:37:44  12          Your Honor, Joint Report 38 has been filed.
08:37:49  13  It's of record.  It's posted on your Web site for anyone that
08:37:53  14  wants to refer to it.
08:37:58  15          This morning we have a fairness hearing on the
08:38:02  16  Knauf settlement, the InEx settlement, the Banner settlement,
08:38:06  17  the L&W settlement of builders, installers, and insurers, which
08:38:12  18  generically we have called "global."
08:38:17  19          We mention in connection with the status report
08:38:21  20  that Taishan has taken an appeal to the United States
08:38:25  21  Fifth Circuit Court of Appeals on jurisdiction issues.
08:38:28  22          I'm going to call on lead counsel, Arnold Levin,
08:38:32  23  to discuss with Your Honor a couple of settlements that have
08:38:36  24  been made.  He will handle that.
08:38:42  25          MR. LEVIN:  Good morning, Your Honor.  Today I have

08:38:45  1   the tale of a major settlement.  We worked in Virginia with all

08:38:53  2   Taishan products to obtain relief for the Virginia residents

08:38:59  3   from the builders, suppliers, etc.  I'm happy to present for

08:39:07  4   preliminary approval a settlement today, which the yeoman's

08:39:12  5   work was done by Messrs. Serpe, Lewis, and Breit in connection

08:39:17  6   with.  I get the glory of presenting it to you.  They did the

08:39:22  7   hard work of putting it together.

08:39:25  8              I would ask preliminary approval and to certify

08:39:28  9   a settlement class, but I would ask you to defer filling in the

08:39:35  10  dates for notice, etc.  It's mostly a Virginia class, but it

08:39:39  11  will be publication.  The reason I do that is they have done

08:39:43  12  such good work that they have another settlement they are going

08:39:46  13  to fold into this particular settlement.

08:39:49  14             Does Your Honor have any questions?

08:39:52  15       **THE COURT:**  No.  With these matters, Virginia has

08:39:54  16  been one of the first states that this situation developed in.

08:40:00  17  Florida and Virginia were probably at the lead in that area.

08:40:06  18             The Virginia cases present a particular issue.

08:40:13  19  I've been through the Virginia cases.  We have tried several of

08:40:17  20  them now.  They were very helpful.  The trials were very

08:40:22  21  helpful in allowing the Court to formulate a protocol for the

08:40:29  22  re-establishment of the homes, and that protocol has been a

08:40:35  23  particular critical part in this whole package.  I'm happy that

08:40:39  24  Virginia is going to get some relief.  Judge Hall has been

08:40:45  25  pushing those cases, and he's done a great job.

| | |
|---|---|
| 08:40:49 | 1 |
| 08:40:49 | 2 |
| 08:40:54 | 3 |
| 08:41:00 | 4 |
| 08:41:01 | 5 |
| 08:41:05 | 6 |
| 08:41:11 | 7 |
| 08:41:22 | 8 |
| 08:41:30 | 9 |
| 08:41:34 | 10 |
| 08:41:38 | 11 |
| 08:41:39 | 12 |
| 08:41:43 | 13 |
| 08:41:48 | 14 |
| 08:41:52 | 15 |
| 08:41:58 | 16 |
| 08:41:59 | 17 |
| 08:42:04 | 18 |
| 08:42:09 | 19 |
| 08:42:13 | 20 |
| 08:42:16 | 21 |
| 08:42:20 | 22 |
| 08:42:24 | 23 |
| 08:42:29 | 24 |
| 08:42:32 | 25 |

By and large, they're in state courts.  There are some in federal courts.  The federal cases have been sent here, largely.  I have been working with Judge Hall in the state cases.

As I mentioned on prior occasions, preliminary approval simply allows the Court to issue notices and allows the parties to opt out, so it's a necessary cog in the wheel. It's just preliminary.  It makes no final expression of the Court's attitude towards the settlement, so I will do that.  I will grant preliminary approval and keep the matter open.

MR. LEVIN:  Thank you, Your Honor.

There's one additional item on the agenda for the status conference.  It's RCR Holdings.  I would ask counsel for the plaintiffs in that litigation to approach.

THE COURT:  Okay.

MR. RHINE:  Thank you, Your Honor.  Joel Rhine for the plaintiffs.  It's good to see you.

As you are aware, we have got 328 units in the Boynton Beach condominium project, and we have been checking it away.  We have been settling with the various defendants.  We have one defendant that is left.

The settlement that is before you is the RCR settlement.  It's between the plaintiffs and the developer. Materials were submitted.  The package went out.  Notice was issued.  It was put on the Court's Web site.  We had individual

08:42:37   1   notice.  There have been no objections.  There have been no

08:42:41   2   opt-outs.  We are pleased that this money has already been

08:42:46   3   placed into escrow.  It's going to be held in the settlement

08:42:49   4   fund until we can resolve the entire matter either hopefully by

08:42:54   5   trial of -- you have got some scheduling orders that have been

08:42:58   6   proposed to you from both sides.  At the end of the day, we

08:43:03   7   hope to either be able to provide the owners with a remediation

08:43:08   8   and compensation or some combination thereof.

08:43:12   9            THE COURT:  What do you need from me, Joel?

08:43:15   10           MR. RHINE:  Just the signing of the final settlement.

08:43:18   11   The order is with it.  Thank you, Your Honor.

08:43:22   12           THE COURT:  Thank you very much.

08:43:26   13           MR. HERMAN:  Judge Fallon, I want to acknowledge that

08:43:32   14   Bob Johnston, whom you appointed to handle *pro ses*, is in the

08:43:38   15   courtroom.  He has done a terrific job throughout the

08:43:41   16   litigation.  We are going to dispense, with Your Honor's

08:43:45   17   approval and his approval, with the report.

08:43:47   18           I also want to acknowledge Dawn Barrios, who has

08:43:49   19   been communicator liaison with the state courts, who has done

08:43:57   20   an excellent job throughout.  With Your Honor's approval, we

08:44:00   21   will dispense with that report today.

08:44:03   22           I do want to acknowledge that there are more

08:44:10   23   than 60 counsel that we have been working either for or against

08:44:15   24   or with now for almost four years.  They have acted

08:44:18   25   professionally.  As the plaintiffs' steering committee that you

08:44:27  1   appointed, we appreciate their professionalism and their

08:44:31  2   cooperation.

08:44:32  3          Your Honor, the only other matter is a matter

08:44:36  4   that's now been continued until November 16 relating to the

08:44:44  5   Interior Exterior upcoming trial.

08:44:48  6          That concludes remarks, may it please the Court,

08:44:51  7   with reference to the status report.  I'll see if Mr. Miller

08:45:00  8   has anything he wants to add to it.  Thank you, Judge.

08:45:03  9          **MR. MILLER:**  Your Honor, nothing further with respect

08:45:04  10  to the status report.

08:45:06  11         **THE COURT:**  The comment about counsel, I should

08:45:09  12  respond to that.  These cases are monumental.  In this case

08:45:15  13  there's a dozen or two dozen states involved.  There are

08:45:19  14  thousands of claims.  There are the problems or issues

08:45:30  15  involving different laws, issues involving different insurance

08:45:34  16  policies.  Oftentimes in these cases we have a number of

08:45:40  17  plaintiffs, 50,000, 60,000, but we have a limited number of

08:45:45  18  defendants, one or two or three.

08:45:48  19         This case posed a challenge because there's

08:45:50  20  about 1,000 defendants in this case.  We have about 20,000 or

08:45:54  21  30,000 plaintiffs and about 1,000 defendants in this particular

08:45:58  22  case.  There are 1,400 lawyers in the case.  Just to get a

08:46:02  23  handle on those matters and to deal with them in some

08:46:06  24  professional way is challenging.  The reason it's able to be

08:46:12  25  done is because of the high quality of the lawyers who are

08:46:15  1  attracted to these cases on both sides.

08:46:18  2           The lawyers generally are very experienced.

08:46:22  3  They know how to deal with these issues.  They establish a

08:46:29  4  relationship, hopefully, with each side.  They fight very hard

08:46:33  5  for their clients, but they recognize that they have

08:46:38  6  professional responsibilities to each other and to the Court.

08:46:41  7  Because of the high quality of representation, these cases are

08:46:46  8  really able to be resolved or at least worked on in some way.

08:46:50  9  So I do recognize the importance of the lawyers and the

08:46:54  10  valuable services they contribute in these cases.

08:47:00  11           The next conference will be on Wednesday,

08:47:04  12  January 23.  I'll meet with liaison and lead counsel at 8:30

08:47:11  13  and meet with everyone else at 9:00.

08:47:16  14           Let's now move into the next phase of our

08:47:20  15  hearing.  Let me make some preliminary comments first about the

08:47:25  16  hearing so we are all on the same page just by way of

08:47:29  17  background.

08:47:31  18           The present litigation arises from alleged

08:47:36  19  property damage sustained as the result of the presence of

08:47:38  20  Chinese-manufactured drywall in homes and other buildings in a

08:47:43  21  number of states.  During about 2005 and 2006 or 2007 or 2008,

08:47:53  22  hundreds of millions of square feet of gypsum wallboard

08:47:58  23  manufactured in China were exported to the United States,

08:48:05  24  primarily along the East Coast and the Gulf states, as a result

08:48:13  25  of the exceptionally high demand of building supplies in the

08:48:17  1   aftermath of hurricanes Katrina and Rita, as well as the
08:48:21  2   general construction boom particularly in the Florida area.
08:48:27  3          The Chinese drywall was then installed in newly
08:48:30  4   constructed or reconstructed buildings.  After installation of
08:48:35  5   the drywall, owners and occupants of the properties began
08:48:40  6   noticing some unusual odors, a blackening of silver and copper
08:48:46  7   items and components, and the failure of various appliances,
08:48:51  8   including microwaves, refrigerators, air-conditioning units,
08:48:55  9   and the like.  Some also complained of health issues such as
08:49:00 10   skin and eye irritation and transitory respiratory issues and
08:49:07 11   headaches.
08:49:09 12          As a result, these property owners began filing
08:49:13 13   suit in both state and federal court against the involved
08:49:20 14   Chinese drywall manufacturers and installers.  These included
08:49:23 15   the installers, the home builders, suppliers, importers,
08:49:30 16   exporters, manufacturers, as well as insurers and various
08:49:36 17   sureties.  That's where we get the number of defendants that
08:49:42 18   are in this case.
08:49:45 19          On June 15, 2009, this Court was designated as a
08:49:50 20   transferee court for all of the federal cases involving
08:49:56 21   Chinese-manufactured drywall, creating Multidistrict
08:50:00 22   Litigation 2047.  Since the inception of the MDL, over three
08:50:06 23   years now, hundreds of lawsuits involving thousands of
08:50:11 24   individual plaintiffs and defendants have been filed, and the
08:50:17 25   cases have been consolidated before this Court.

08:50:22  1          This Court has worked to oversee this complex

08:50:25  2   litigation, including presiding over numerous regularly

08:50:30  3   scheduled hearings, monthly status conferences which were

08:50:34  4   attended by hundreds of counsel either in person or over the

08:50:39  5   phone, vetting and appointing counsel for the steering

08:50:43  6   committee, mediators, special masters, *pro se* curators,

08:50:51  7   communication and coordination with state and federal judges

08:50:54  8   who presided over related Chinese drywall litigation both from

08:50:58  9   the standpoint of the factual issues involved as well as the

08:51:03  10  motions as well as the insurance issues, including dozens of

08:51:08  11  pretrial orders which governed the procedure of the MDL as well

08:51:12  12  as, I should say, countless orders and minute entries.

08:51:18  13          We maintained a public Web site.  I really am a

08:51:21  14  believer in that.  I think one problem that we face as courts

08:51:25  15  and the judicial system in general is a feeling that there's

08:51:29  16  not as much transparency in these cases.  When people file a

08:51:36  17  suit in Virginia, it's transferred to Louisiana and they don't

08:51:39  18  hear about it any longer, or it takes them years before they

08:51:43  19  hear something.  I try to create a Web site and put everything

08:51:46  20  on the Web site.  It's accessible to everyone.  They have

08:51:51  21  transcripts of these hearings.  They have all of the pleadings,

08:51:58  22  all of the motions, all of the Court's rulings they are able to

08:52:02  23  keep in touch and read.  They also can respond to it.  I listen

08:52:06  24  to them, I hear from them, and we deal with any issues that

08:52:10  25  they raise.

08:52:12  1          I have supervised depositions that took place
08:52:16  2    either in this country or in Hong Kong, presided over at least
08:52:21  3    10 bellwether trials and proceedings as well as issued detailed
08:52:26  4    findings of fact and conclusions of law, facilitated numerous
08:52:32  5    settlement negotiations and mediations, monitored a pilot
08:52:37  6    program, a remediation process.
08:52:43  7          After the trials were finished, we were able to
08:52:46  8    develop a protocol, and then the protocol was actually placed
08:52:50  9    in pilot programs so that you could see whether or not this
08:52:54  10   protocol, which was theoretically and soundly based, was
08:53:00  11   actually practically doable.  So it was put on in practice,
08:53:08  12   that was able to be done, and then the parties were encouraged
08:53:11  13   to see if they could monetize these protocols, and that led to
08:53:22  14   at least proposed settlements.
08:53:24  15         There were really two groups.  The litigation
08:53:28  16   focused on two groups and their downstream entities, two
08:53:31  17   manufacturing groups and all of their downstream entities.  The
08:53:36  18   two groups were as follows:
08:53:39  19         The Taishan group, this group of manufacturer
08:53:44  20   defendants included really Chinese-based Taishan entities;
08:53:46  21   namely, Taishan Gypsum, which we call TG in this litigation,
08:53:52  22   and its wholly owned subsidiary Tai'an Taishan Plasterboard
08:53:56  23   (TTP), collectively known as the Taishan entities.
08:54:01  24         On September 4 of this year, the Court issued an
08:54:05  25   order and reasons denying Taishan's personal jurisdiction

08:54:10  1   challenges and its request to vacate various default judgments.
08:54:18  2   That is now, as mentioned in the status conference, before the
08:54:21  3   Fifth Circuit Court of Appeal.
08:54:23  4           The other group is the Knauf entities.  The
08:54:26  5   Knauf entities are German-based international manufacturers of
08:54:32  6   building products, including drywall, whose Chinese subsidiary,
08:54:37  7   Knauf Plasterboard Tianjin (KPT), manufactured and sold its
08:54:45  8   Chinese drywall in the United States.  The Knauf entities are
08:54:49  9   named defendants in numerous cases consolidated with this MDL
08:54:54 10   litigation and litigation in various state courts.
08:54:58 11           The Knauf entities first entered their
08:55:02 12   appearance in the MDL litigation on July 2, 2009.  On
08:55:09 13   November 2, in Pretrial Order 17, KPT agreed to a limited
08:55:15 14   waiver of service.  On March 15 and 19, 2010, the Court
08:55:21 15   presided over a bellwether trial in the *Hernandez* case
08:55:26 16   involving a homeowner's claims against KPT for defective
08:55:32 17   drywall.  For purposes of the trial, KPT stipulated that its
08:55:36 18   Chinese drywall emits certain reduced sulfur gases and drywall
08:55:42 19   emits an odor.
08:55:44 20           The Court, after the hearing, found in favor of
08:55:48 21   the plaintiffs' family in *Hernandez*, issued detailed findings
08:55:54 22   of fact and conclusions of law, and entered a judgment of over
08:55:59 23   $164,000 for that particular case.
08:56:06 24           As I mentioned earlier, a detailed remediation
08:56:10 25   protocol was fashioned based on the evidence adduced during

| | | |
|---|---|---|
| 08:56:13 | 1 | this trial.  Thereafter, on October 14, 2010, the Knauf |
| 08:56:16 | 2 | entities entered into a pilot remediation program with the |
| 08:56:21 | 3 | plaintiffs' steering committee in this MDL.  The program was |
| 08:56:25 | 4 | largely based on the remediation protocol formulated by the |
| 08:56:29 | 5 | Court in the *Hernandez* case. |
| 08:56:31 | 6 | The Knauf pilot remediation program is ongoing |
| 08:56:37 | 7 | and is in the process of remediating over 2,000 homes as we |
| 08:56:41 | 8 | speak now.  I think that's also critical in a case of this sort |
| 08:56:46 | 9 | if, while the claims are being litigated, we can come up with |
| 08:56:51 | 10 | some method of allowing the remediation process to continue so |
| 08:56:57 | 11 | that people don't have to wait for years before they get their |
| 08:57:03 | 12 | homes remediated and they get back to some semblance of |
| 08:57:10 | 13 | normalcy.  I think that was able to be done in this case. |
| 08:57:16 | 14 | At the Court's urging, the parties began working |
| 08:57:19 | 15 | together to monetize the program and make it available to a |
| 08:57:22 | 16 | broader class of plaintiffs. |
| 08:57:26 | 17 | On December 20, 2011, the Knauf and PSC entities |
| 08:57:31 | 18 | entered into a class settlement agreement which is designed to |
| 08:57:38 | 19 | resolve all KPT-related Chinese drywall claims.  This agreement |
| 08:57:45 | 20 | was the most significant, up to that point, movement toward a |
| 08:57:52 | 21 | global resolution of all of the Chinese drywall claims. |
| 08:57:57 | 22 | In addition to the Knauf settlement, numerous |
| 08:58:00 | 23 | defendants in the chain of commerce with the Knauf entities |
| 08:58:04 | 24 | have entered into class settlement agreements, the effect of |
| 08:58:10 | 25 | which settles almost all of the Knauf entities in the chain of |

08:58:12   1   homeowners litigation.
08:58:17   2               These additional class action settlement
08:58:19   3   agreements involve the following defendants and in most cases
08:58:23   4   their insurers:  Interior Exterior Building Supply (InEx), the
08:58:30   5   Banner entities, L&W Supply Corporation, USG Corporation, and a
08:58:37   6   group of numerous home builders, installers, and suppliers.
08:58:42   7               The Court, after setting a hearing, granted
08:58:51   8   preliminary approval to all of the settlement agreements and
08:58:57   9   set a final hearing today.  This hearing has been duly noticed.
08:59:03   10  It's been promptly set.  The purpose of this hearing is to deal
08:59:09   11  with the class certification issues and to determine whether
08:59:14   12  the proposed settlement is fair, reasonable, and adequate.
08:59:21   13              As I indicated in my scheduling order that set
08:59:25   14  this hearing, I do not intend to take live testimony, but I
08:59:31   15  will allow oral presentations of counsel and reference to any
08:59:38   16  exhibits.
08:59:39   17              I received extensive briefing in the course of
08:59:42   18  this process.  I have read all of the briefs.  I am making them
08:59:47   19  a part of the record.  Don't feel like you have to speak.  Your
08:59:53   20  comments have been taken into consideration and will be taken
08:59:56   21  into consideration, and they will form a part of the record.  I
09:00:03   22  met last week with the interested parties after I noticed and
09:00:07   23  expressed an intent to meet so we could put some structure into
09:00:12   24  this process.
09:00:12   25              I'll hear first from the proponents of the

| | |
|---|---|
| 09:00:15 | 1 |
| 09:00:21 | 2 |
| 09:00:31 | 3 |
| 09:00:31 | 4 |
| 09:00:37 | 5 |
| 09:00:40 | 6 |
| 09:00:43 | 7 |
| 09:00:46 | 8 |
| 09:00:52 | 9 |
| 09:00:53 | 10 |
| 09:00:54 | 11 |
| 09:00:57 | 12 |
| 09:01:00 | 13 |
| 09:01:03 | 14 |
| 09:01:10 | 15 |
| 09:01:15 | 16 |
| 09:01:25 | 17 |
| 09:01:27 | 18 |
| 09:01:29 | 19 |
| 09:01:31 | 20 |
| 09:01:34 | 21 |
| 09:01:39 | 22 |
| 09:01:40 | 23 |
| 09:51:42 | 24 |
| 09:51:43 | 25 |

1  proposed settlement and then from any objectors, if there be

2  any, and any rebuttal thereafter.

3          One moment.  The Associated Press, do we have a

4  place for him?

5          MR. HERMAN:  Your Honor, may it please the Court.  We

6  have made room, and the gentleman is in the courtroom.

7          THE COURT:  I thought we had some reserved seating

8  for the press.  I know we have folks here from Germany.

9          THE DEPUTY MARSHAL:  They are setting up another

10  courtroom.

11          THE COURT:  We have a number of people.  The

12  Associated Press ought to be in the courtroom.  If they are

13  not, we should make room for them and also the German press and

14  any other members of the press.  I try to accommodate them.  We

15  are setting up another courtroom.  We'll pipe in the sound and

16  pipe in the video.

17          MR. HERMAN:  May it please the Court.  There are two

18  chairs right here.

19          THE COURT:  I'm going to have to take a 10-minute

20  break and meet with the marshals.  Something has come up.

21  10 minutes.  I'll be right back.

22          THE DEPUTY CLERK:  All rise.

23          (Recess.)

24          THE COURT:  Be seated, please.

25          I apologize for any inconvenience.  We didn't

| | |
|---|---|
| 09:51:46 | 1 |
| 09:51:49 | 2 |
| 09:51:53 | 3 |
| 09:52:00 | 4 |
| 09:52:04 | 5 |
| 09:52:09 | 6 |
| 09:52:11 | 7 |
| 09:52:14 | 8 |
| 09:52:18 | 9 |
| 09:52:23 | 10 |
| 09:52:27 | 11 |
| 09:52:33 | 12 |
| 09:52:39 | 13 |
| 09:52:44 | 14 |
| 09:52:48 | 15 |
| 09:52:51 | 16 |
| 09:52:55 | 17 |
| 09:52:59 | 18 |
| 09:53:03 | 19 |
| 09:53:07 | 20 |
| 09:53:09 | 21 |
| 09:53:15 | 22 |
| 09:53:20 | 23 |
| 09:53:27 | 24 |
| 09:53:34 | 25 |

expect as many people here.  We are still trying to work on another courtroom to get you better conditions.

What I have done, I brought us up to this point, I gave you some background information, and now I will hear from the PSC.

**MR. LEVIN:**  Good morning, Your Honor.  Having heard your comments, I would like to incorporate them as part of the record.  It will eliminate much of what I had planned to do.  I could have slept a little longer this morning.  Thank you, sir.

Today, class counsel and the plaintiffs' steering committee and all the attorneys around this country who have handled these cases are happy to report to you five settlements.  It couldn't have been done without this Court. It couldn't have been done without Judge Farina, who allowed Mr. Glickstein and myself to be present in his courtroom despite the fact that I am not a member of the Florida bar. And it couldn't have been done without your law clerks Lexy Butler and Sam Brandao, your secretary Ruth Laird, and your deputy clerk Dean Oser.

But that's not all that it couldn't have been done without.  It couldn't have been done without counsel for the defendants and the various carriers who were extremely cooperative in putting this settlement together.  That is Russ Herman, myself, his staff, particularly Len Davis; my staff, Fred Longer and Sandy Duggan, and most of all, Lillian Fleming,

09:53:41 1  who was responsible for getting on the ECF and delivering
09:53:46 2  packages to you at 12:00 at night, sir.
09:53:49 3         The defendants were ably represented by Kerry
09:53:53 4  Miller, Steve Glickstein, Jay Mayesh; Banner by Mike Papantonio
09:53:57 5  [*sic*]; Jane Byrne for Chartis; Phil Nizialek, Rick Duplantier
09:54:06 6  for InEx; L&W, Dave Conner; a host of InEx carriers, Hugh Scott
09:54:13 7  and Russ Holwadel; and, most of all, the global settlement that
09:54:18 8  wrapped everything together and tied it in a nice bow, Minor
09:54:24 9  Pipes, Warren Lutz, and Joe Hinkhouse.
09:54:28 10        Your Honor, I would like to make part of this
09:54:33 11 record the 70 exhibits that we filed with the Court yesterday.
09:54:50 12 Actually, it's 78.  Exhibit 75 is a list of the exhibits that I
09:54:59 13 believe will be helpful for the Court.
09:55:01 14        There is an exhibit that is intentionally
09:55:08 15 omitted.  Mr. Herman has found an exhibit that he wants to
09:55:13 16 insert there.  He will be speaking to the Court and he will
09:55:16 17 tell you about that exhibit.
09:55:20 18        We also included as exhibits for purposes of
09:55:24 19 this hearing our brief and reply brief in support of the
09:55:28 20 settlement, which has factual averments; and having
09:55:32 21 incorporated them by reference, it eliminates much of what has
09:55:36 22 to be said at this hearing.
09:55:39 23        Your Honor, we have also given you a final
09:55:41 24 judgment order, the cleanest copy I will hand to your law clerk
09:55:48 25 now, and ask that you consider that at the close of the

09:55:52   1   hearing.

09:55:57   2          I would report to the Court that as of the

09:56:01   3   November 9 filing, in the five settlements, there were

09:56:06   4   388 opt-outs.  294 currently exist, "currently" being

09:56:18   5   November 9, because of rescissions.  That will be updated

09:56:22   6   because the opt-outs keep coming in.

09:56:27   7          The remaining objections are those of -- and

09:56:31   8   I'll do it by law firm categories -- Messrs. Durkee and

09:56:37   9   Milstein, Christopher Bandas, and North River.  I will and

09:56:46  10   Mr. Herman will handle the Durkee and Milstein and Bandas

09:56:51  11   objections.  Phil Nizialek will direct himself and the Court to

09:56:55  12   North River.

09:56:58  13          I want to state up front, as to Durkee and

09:57:02  14   Milstein and Bandas, that Durkee and Milstein have bona fide

09:57:10  15   clients in this litigation.  We may feel that their objections

09:57:16  16   are misguided, are not legally sound, but their clients are

09:57:24  17   real, just like all the other clients in this case.

09:57:28  18          There are people who have been evicted from

09:57:30  19   homes as a result of the Chinese drywall.  In Louisiana there

09:57:38  20   are victims who suffered hurricane damages in Katrina and Rita

09:57:42  21   and then were put into FEMA trailers and then were blessed or

09:57:47  22   unblessed or nonblessed with Chinese drywall.

09:57:52  23          Mr. Bandas, whose clients are somewhat

09:57:57  24   different, we'll deal with at another part of this

09:58:00  25   presentation.  They are not legitimate class members.

09:58:07    1          Last night, Mr. Bandas filed another paper
09:58:13    2    saying that if you allege Chinese drywall -- even if you allege
09:58:19    3    it and you have no proof of Chinese drywall in your home or, in
09:58:24    4    that case, having touched his chisels or hammers, his tools --
09:58:29    5    that's enough to be a class member.  Alleging something in
09:58:34    6    violation of Rule 11 does not make you a class member no more
09:58:40    7    than my alleging that I am 6-foot-5 puts me on the 76ers.  It
09:58:46    8    just doesn't work that way.  There has to be some sound basis
09:58:49    9    for it.
09:58:50   10          Now, the five settlements that are before you
09:59:00   11    are the Knauf settlement -- which is the major settlement in
09:59:11   12    the case.  The Knauf settlement and the German company that
09:59:18   13    owns their Chinese subsidiaries came to the table and did the
09:59:26   14    right thing.  They recognized that there was a problem.  They
09:59:32   15    owned up to it.  With the help of the Court, who told us in the
09:59:36   16    very beginning that this case has to settle with people getting
09:59:41   17    back into their homes, they provided us with the ability to get
09:59:47   18    people back into their homes and enjoy the lives that all of us
09:59:54   19    want.  We still have Taishan to consider.
10:00:01   20          There was a condition of the Knauf settlement,
10:00:04   21    and Mr. Miller explained it in the very beginning to us.  I
10:00:16   22    didn't fully grasp it, but I learned to grasp it:  We'll do all
10:00:21   23    of this and get your clients back into their homes, but you,
10:00:26   24    plaintiffs' steering committee, have the obligation on your own
10:00:33   25    to pursue what was then designated as the low-hanging fruit of

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
| 10:00:38 | 1  | this settlement.                                          |
| 10:00:43 | 2  | So we went after Banner, we went after InEx, we           |
| 10:00:48 | 3  | went after L&W, and we went after some 1,000 builders and |
| 10:00:56 | 4  | insurance companies to obtain this low-hanging fruit for  |
| 10:01:04 | 5  | Knauf's benefit so that they could remediate a home.      |
| 10:01:07 | 6  | They went one step further.  As to the Knauf              |
| 10:01:15 | 7  | settlement, after the relief was in place and in accordance |
| 10:01:21 | 8  | with the Third Circuit case *Prandini v. A&P*, we then negotiated |
| 10:01:27 | 9  | a counsel fee of $160 million, which included costs and was not |
| 10:01:35 | 10 | a class counsel fee, was not a common benefit counsel fee.  It |
| 10:01:39 | 11 | also included the retainer agreements of some 1,400 lawyers who |
| 10:01:46 | 12 | had Chinese drywall cases.                                |
| 10:01:49 | 13 | These 1,400 lawyers worked.  They are the ones            |
| 10:01:53 | 14 | that went out and determined whether there was Chinese drywall |
| 10:01:59 | 15 | in a property, who the manufacturer was, and they held the |
| 10:02:05 | 16 | hands of real clients for these three or four years.  This is |
| 10:02:09 | 17 | not a coupon settlement.  This is not a windfall to the   |
| 10:02:13 | 18 | litigants.  This is real, and it took a lot of work to get |
| 10:02:20 | 19 | there.                                                    |
| 10:02:21 | 20 | **THE COURT:**  What's your estimate of the value of the  |
| 10:02:24 | 21 | settlement?                                               |
| 10:02:25 | 22 | **MR. LEVIN:**  The estimate of the value of the          |
| 10:02:27 | 23 | settlement, sir, is $1.1 billion inclusive of Knauf's     |
| 10:02:36 | 24 | contribution, Banner's contribution, InEx's contribution, L&W, |
| 10:02:42 | 25 | and the global.  It's not all Knauf money.                |

| | | |
|---|---|---|
| 10:02:47 | 1 | When we negotiated the $160 million fee, we had |
| 10:02:53 | 2 | in place the Banner settlement and the InEx settlement, and we |
| 10:02:59 | 3 | knew L&W was in place because that money was all Knauf money |
| 10:03:03 | 4 | and it was passed through at seven-fifty a square foot to |
| 10:03:07 | 5 | Knauf. |
| 10:03:07 | 6 | We knew the global settlement was to be |
| 10:03:10 | 7 | negotiated.  We pursued the global settlement, pursuing |
| 10:03:17 | 8 | pollution exclusion clauses in various insurance policies and |
| 10:03:23 | 9 | losing, and obtained that settlement.  Most of the builders |
| 10:03:27 | 10 | didn't have the money to withstand the verdicts.  We are very |
| 10:03:33 | 11 | proud of that settlement and very proud of what we did to |
| 10:03:40 | 12 | achieve that settlement. |
| 10:03:42 | 13 | Now, in those settlements we chose a benchmark, |
| 10:03:47 | 14 | which was at least your benchmark in the *Vioxx* case, that was |
| 10:03:53 | 15 | 32 percent.  Your Honor, we don't have to say any more about |
| 10:03:59 | 16 | 32 percent or any percentage because, as we know, that decision |
| 10:04:06 | 17 | will be up to you at a later date when there is a fee petition |
| 10:04:12 | 18 | filed. |
| 10:04:13 | 19 | When we negotiated for the $160 million, Knauf |
| 10:04:19 | 20 | knew, acknowledged, and took the position that the reason |
| 10:04:23 | 21 | why -- and we accepted that position -- that we took |
| 10:04:27 | 22 | $160 million was so that we can get additional fees in the |
| 10:04:32 | 23 | other cases for which our labors brought that money to Knauf. |
| 10:04:37 | 24 | That decision, how it works out, will be entirely up to you, |
| 10:04:41 | 25 | Your Honor. |

10:04:42   1       **THE COURT:**  To be clear on it, I want the lawyers to

10:04:45   2   focus on their clients and to getting their clients the money

10:04:50   3   that they need to get back into their homes.  Later on at an

10:04:56   4   appropriate time, I will deal with any fees that are requested.

10:05:00   5   I will give everybody an opportunity to either oppose, object,

10:05:04   6   suggest, whatever it is, and then I will make a decision.  The

10:05:08   7   lawyers do not make a decision on fees; the Court does.  That's

10:05:12   8   what I will do.

10:05:14   9       **MR. LEVIN:**  That's what we accept, sir.

10:05:17  10           Your Honor, let me put into the record the

10:05:21  11   out-of-pocket costs that have been spent to date to get us

10:05:27  12   where we are.  They have been put up by the plaintiffs'

10:05:31  13   steering committee through assessments.  As Your Honor knows,

10:05:36  14   there are shared costs and held costs.  The shared costs are,

10:05:41  15   as of July 31, $11,285,000.  The held costs are $4,746,000.

10:05:53  16   That's about $16 million in costs my colleagues put up here to

10:05:58  17   get us where we are.  We had no help from anybody else.

10:06:07  18           In addition, in order to get the Banner

10:06:09  19   settlement -- where we thought it was a good settlement because

10:06:15  20   we picked up $53 million worth of insurance from Banner.  Had

10:06:19  21   we gone against Banner, we would have lost the insurance and

10:06:23  22   chased a judgment against Banner through bankruptcy.

10:06:26  23           Banner refused to pay the cost of notice.  My

10:06:30  24   colleagues put up $400,000 to notice the case for Banner.  In

10:06:37  25   InEx, InEx put up $100,000 and we put up $99,000.  Knauf's

| | |
|---|---|
| 10:06:47 | 1 |
| 10:06:51 | 2 |
| 10:06:57 | 3 |
| 10:07:03 | 4 |
| 10:07:07 | 5 |
| 10:07:15 | 6 |
| 10:07:21 | 7 |
| 10:07:24 | 8 |
| 10:07:32 | 9 |
| 10:07:37 | 10 |
| 10:07:45 | 11 |
| 10:07:50 | 12 |
| 10:07:55 | 13 |
| 10:08:00 | 14 |
| 10:08:08 | 15 |
| 10:08:13 | 16 |
| 10:08:16 | 17 |
| 10:08:19 | 18 |
| 10:08:23 | 19 |
| 10:08:29 | 20 |
| 10:08:36 | 21 |
| 10:08:42 | 22 |
| 10:08:46 | 23 |
| 10:08:52 | 24 |
| 10:08:57 | 25 |

funding was relatively less because there was no publication involved because the class was active litigants.  In global, our colleagues on the other side advanced $2.9 million to see this settlement through.

In order to get where we are, sir, we had our 39th status conference today.  We took 234 depositions in Hong Kong, Germany, London, New York, Virginia, Louisiana, Florida, and other locations.  5,200 plaintiffs allege KPT drywall.  There's over 10,000 homes that we believe, in the entire combined Knauf, Taishan, and other Chinese manufacturers, are in the gross complaint.

We filed the *Germano* complaint in Virginia and went through a hearing, listed seven plaintiffs, and tried that case.  We established, as Your Honor told us today, the pilot program.  Then we have our settlements that I just told you about.

As to the CPSC, Mr. Herman is going to discuss that, and I believe Mr. Minor Pipes will discuss that because that is important with regard to the personal injury aspects of this case.

The settlements themselves, Your Honor -- and I'm not going to go through each and every settlement.  They are set forth in the briefs as to the nitty-gritty, but it establishes complete relief here.  Not only do we get our clients into their homes, not only do we get them into a safe

10:09:01   1   atmosphere in their homes, but we also obtained for them

10:09:08   2   move-in/move-out expenses.

10:09:13   3          That fund is an uncapped fund.  No matter how

10:09:18   4   many clients come in, Knauf has agreed to do the remediation.

10:09:24   5   There's self-remediation, there's a cash payout, or there's

10:09:27   6   complete remediation.  The counsel fees are capped.

10:09:32   7          There's another capped fund here.  It's

10:09:34   8   $30 million that Knauf has contributed as an Other Loss Fund to

10:09:38   9   cover if one can prove personal injury, and others that will

10:09:46   10   make presentations today will talk to the personal injury

10:09:50   11   aspects of the case.  I have something to say, but it's only on

10:09:56   12   the legalistic side, not factually as to the personal injury.

10:10:01   13          It also includes damages for foreclosure, short

10:10:05   14   sales, and various damages that are just not picked up by the

10:10:10   15   remediation.  Some 50 percent of the global passes through to

10:10:20   16   that fund too.  That was negotiated so that not only does Knauf

10:10:24   17   fund that aspect of the case, but the global also funds the

10:10:27   18   aspects of the case.

10:10:28   19          **THE COURT:**  Let's be a little bit more specific.

10:10:30   20   I've read the briefs from the people here.  The homeowner has

10:10:38   21   his or her choice.  They can, number one, get complete

10:10:42   22   remediation done by the builder who has been doing this for

10:10:48   23   several thousand homes.  They can instead take money, a lump

10:10:57   24   sum, discounted lump sum, if they wish to.  They can also,

10:11:02   25   third, do it themselves and get reimbursed.

| | | |
|---|---|---|
| 10:11:05 | 1 | **MR. LEVIN:**  That's correct. |
| 10:11:06 | 2 | **THE COURT:**  In addition to the reimbursing of the |
| 10:11:07 | 3 | homes or restoring the homes, they get additional expenses, |
| 10:11:12 | 4 | some move-in/move-out and other expenses if they suffered |
| 10:11:19 | 5 | foreclosures and that aspect of it.  That's open-ended in the |
| 10:11:29 | 6 | sense that however many qualify or come in for the homes, they |
| 10:11:35 | 7 | get their homes taken care of. |
| 10:11:37 | 8 | Lastly, there's a cap amount that is set aside |
| 10:11:44 | 9 | for other damages. |
| 10:11:47 | 10 | **MR. LEVIN:**  Yes.  In that -- I didn't mean to |
| 10:11:51 | 11 | interrupt, Your Honor. |
| 10:11:52 | 12 | **THE COURT:**  No, that's it. |
| 10:11:54 | 13 | **MR. LEVIN:**  In that Other Loss Fund, the tenants can |
| 10:12:02 | 14 | make claims for their loss of items that were damaged as a |
| 10:12:07 | 15 | result of the drywall. |
| 10:12:21 | 16 | **THE COURT:**  According to your report, that's free and |
| 10:12:23 | 17 | clear of any attorneys' fees.  In addition to that, the |
| 10:12:26 | 18 | attorneys get paid -- |
| 10:12:28 | 19 | **MR. LEVIN:**  As to anything that Knauf contributes to |
| 10:12:31 | 20 | this, that $160 million covers the attorneys' fees, other than |
| 10:12:39 | 21 | if a personal injury case is made as to the Other Loss Fund. |
| 10:12:42 | 22 | Because of the necessity of the individual attorneys going |
| 10:12:47 | 23 | through *Daubert* proceedings, they can charge attorneys' fees, |
| 10:12:50 | 24 | subject to Court approval, with regard to the personal injury |
| 10:12:54 | 25 | because, see, the *Daubert* situation will be prolix and costly. |

10:13:02  1    We believe that we met the constitutional
10:13:05  2  requirements of due process on notice.  We have given
10:13:10  3  Your Honor affidavits of our experts as to the scope of the
10:13:16  4  notice and the reach of the notice, and it was substantial.  We
10:13:25  5  know we did the right thing.
10:13:27  6    We still have an obligation here under the
10:13:31  7  agreement.  There are four or five lawyers, or more actually,
10:13:36  8  but four or five out-front lawyers on our plaintiffs' steering
10:13:39  9  committee that are pursuing North River for InEx for an
10:13:42  10  additional up to $72 million.  Your Honor knows how prolix that
10:13:48  11  is because you're dealing with motions and meetings and
10:13:51  12  conferences all the time.
10:13:54  13    In addition, there's a walk-away clause, as in
10:13:59  14  any class settlement.  Hopefully Knauf will not walk away, but
10:14:06  15  there are challenges here that can cause Knauf to walk away.
10:14:12  16    As to Durkee and Milstein, absolutely they have
10:14:19  17  real clients.  I have heard of belts and suspenders, but they
10:14:28  18  have left clients in that had Knauf property; they have opted
10:14:33  19  clients out that had Taishan property; and they have objected
10:14:37  20  to the settlement with an objector, Kaplan.  Well, there's an
10:14:45  21  inherent conflict there.  If they succeed with their opt-outs
10:14:52  22  with Taishan, their Knauf clients lose the remediation.  Now, I
10:14:58  23  understand it's a very complicated thing, but lawyers have to
10:15:01  24  make decisions, and I think they made the wrong decision here.
10:15:09  25    Now, as to the other objector, like Mary

| | |
|---|---|
| 10:15:18 | 1 |
| 10:15:26 | 2 |
| 10:15:36 | 3 |
| 10:15:43 | 4 |
| 10:15:52 | 5 |
| 10:16:04 | 6 |
| 10:16:09 | 7 |
| 10:16:16 | 8 |
| 10:16:19 | 9 |
| 10:16:23 | 10 |
| 10:16:32 | 11 |
| 10:16:38 | 12 |
| 10:16:46 | 13 |
| 10:16:51 | 14 |
| 10:16:56 | 15 |
| 10:16:59 | 16 |
| 10:17:06 | 17 |
| 10:17:09 | 18 |
| 10:17:14 | 19 |
| 10:17:21 | 20 |
| 10:17:24 | 21 |
| 10:17:31 | 22 |
| 10:17:36 | 23 |
| 10:17:39 | 24 |
| 10:17:46 | 25 |

Poppins, he received retainers the day before the opt-out
period and he filed objections.  Now, he is not new,
Mr. Bandas, to objecting.  Down the hall with BP he is
objecting.  It's a cottage industry.  Justice Scalia recognized
it in the *Devlin* opinion.  In the Third Circuit, one of our
jurists just recently wrote a *Law Review* on professional
objectors.  It's becoming a real problem in Rule 23
jurisprudence.

          After counsel do all that they do to create a
settlement, they come along and attempt to throw a monkey
wrench into the process.  They can't argue here that there was
fraud or collusion on our part.  They can't argue here, in
accordance with the *Reed* factors of the Fifth Circuit, that the
complexity, expense, and likely duration of the litigation do
not weigh in favor of approval of the settlement.

          This is certainly a mature tort.  They can't
argue that it's inadequate.  They can't argue that the stage of
the proceedings is not a proper time.  They can't argue that
the range of possible recovery is not proper.  They certainly
can't question our bona fides.

          They can't question the requirements of Rule 23
for a settlement class, and I would incorporate with regard to
that aspect of my presentation that which was done at
preliminary approval.  It hasn't changed.  All of the 23(a) and
23(b)(3) factors have been met and the 23(e) factor has been

10:17:51  1    met with regard to the settlement.

10:17:56  2                    So what does Mr. Bandas do to become a player in

10:18:01  3    this litigation?  Well, he looks at the settlement and he looks

10:18:07  4    at Knauf and he says, I don't have a suit.  There's no absent

10:18:15  5    class members.

10:18:18  6                    He looks at Banner and he said, Well, that's in

10:18:22  7    Florida.  My guys are in Texas.

10:18:27  8                    He looks at InEx.  It's basically Louisiana,

10:18:30  9    Alabama, and Mississippi.

10:18:33  10                   L&W is up in Tampa, Florida.

10:18:37  11                   But the global is global, so I will object to

10:18:44  12   the global.

10:18:48  13                   How does he do that?  He has a lawyer that works

10:18:52  14   with him.  His name is Mr. Batman.  Mr. Batman has a paralegal

10:19:01  15   or an investigator.  They go out and attempt to get and find

10:19:08  16   somebody to stand up and lodge an objection.  They have a

10:19:18  17   retainer agreement, and they give an incentive to an objector.

10:19:21  18   They say, We want to get you $5,000 if you'll be my stalking

10:19:26  19   horse, because a private attorney can't do anything in our

10:19:28  20   system of jurisprudence without having a client.  So they buy a

10:19:33  21   client.

10:19:37  22                   Mr. Bandas has an office manager, Jan Petrus.

10:19:45  23   She says, Well, I got this at Lowe's.  I got my drywall.

10:19:53  24                   Well, he didn't look at the participating

10:19:56  25   defendants, because if he had, he would have found out Lowe's

|         |    |                                                                  |
|---------|----|------------------------------------------------------------------|
| 10:19:59 | 1  | was not a participating defendant.  He should have remembered    |
| 10:20:09 | 2  | that Ms. Petrus was an objector in the Lowe's settlement in      |
| 10:20:17 | 3  | Georgia and that he got paid off, Bandas, in a confidential      |
| 10:20:23 | 4  | agreement, which maybe he will disclose what he got, and he      |
| 10:20:26 | 5  | went away.  So all of that having come to our vision, she has    |
| 10:20:34 | 6  | pending before you a motion to withdraw.  We have attempted to   |
| 10:20:41 | 7  | serve her with a subpoena.  She can't be found.  He would not    |
| 10:20:48 | 8  | produce her, and we had to subpoena her.                         |
| 10:20:51 | 9  | He had Ernest Vitela, who has been running all                   |
| 10:20:55 | 10 | over Corpus Christi avoiding subpoena.  It reminds me of the     |
| 10:20:59 | 11 | Mafia taking to the mattresses.                                  |
| 10:21:01 | 12 | He is left with Garcia and Soto.  What is their                  |
| 10:21:09 | 13 | claim?  Well, his original objections didn't say anything about  |
| 10:21:13 | 14 | personal injury, but now he discovered *Amchem*, so he has a     |
| 10:21:18 | 15 | personal injury component to his objection.  There's no          |
| 10:21:24 | 16 | treatment.  One guy has sniffles, and he was treated in Mexico   |
| 10:21:28 | 17 | several years ago.  The other one doesn't.  They now have fear   |
| 10:21:31 | 18 | of something happening in the future, which they never had      |
| 10:21:33 | 19 | before they talked to their lawyers.  This is all in the         |
| 10:21:36 | 20 | record.  We took their deposition.  You can't believe it.  It's  |
| 10:21:41 | 21 | so absurd.                                                       |
| 10:21:44 | 22 | What is their damages?  Well, the drywall                        |
| 10:21:48 | 23 | affected their tools, which they have thrown away.               |
| 10:21:54 | 24 | So they have manufactured objections, and                        |
| 10:21:56 | 25 | Mr. Bandas has manufactured objections in this case that he has  |

10:22:03   1    done before.  We have listed a host of his cases.  Mr. Herman
10:22:09   2    is going to speak to them after me, a little bit more about
10:22:13   3    Mr. Bandas.
10:22:19   4              With regard to the PI aspects of the case,
10:22:21   5    because complaints alleged personal injury -- not that they
10:22:30   6    could prove personal injury -- there is a PI component so that
10:22:35   7    the defendants who put up all this money can have complete
10:22:39   8    relief and not worry about being dragged into court in another
10:22:44   9    case, especially where there's no evidence to show any PI
10:22:50  10    component in this litigation.  Mr. Herman will address that.
10:22:56  11              I will address *Amchem*.  This is not *Amchem*.
10:23:00  12    *Amchem* was a pure personal injury case where asbestos exposure
10:23:09  13    did have a future component of injuries.  There was no question
10:23:14  14    about that.  The lawyers that handled the case for the class
10:23:22  15    also got paid up front for the opt-outs and then attempted to
10:23:27  16    give the defendants complete relief by wrapping everybody else
10:23:32  17    that had clients into a class that got less money than they got
10:23:36  18    for the opt-out.  The court, surprisingly, didn't say that was
10:23:40  19    okay.  It said that was wrong.  You just couldn't discharge it.
10:23:51  20              But this is not a pure personal injury case.  I
10:23:54  21    would suggest, Your Honor, respectfully, that this case comes
10:23:56  22    closer to your *Murphy* decision.  This is a property damage
10:24:00  23    case.
10:24:03  24              I started practicing law 46 years ago.  I'm
10:24:06  25    standing before you with drywall, but 46 years ago it was blue

| | |
|---|---|
| 10:24:10 | 1 |
| 10:24:16 | 2 |
| 10:24:21 | 3 |
| 10:24:28 | 4 |
| 10:24:32 | 5 |
| 10:24:37 | 6 |
| 10:24:40 | 7 |
| 10:24:44 | 8 |
| 10:24:48 | 9 |
| 10:24:54 | 10 |
| 10:24:57 | 11 |
| 10:25:00 | 12 |
| 10:25:07 | 13 |
| 10:25:12 | 14 |
| 10:25:17 | 15 |
| 10:25:22 | 16 |
| 10:25:28 | 17 |
| 10:25:33 | 18 |
| 10:25:37 | 19 |
| 10:25:40 | 20 |
| 10:25:42 | 21 |
| 10:25:45 | 22 |
| 10:25:47 | 23 |
| 10:25:51 | 24 |
| 10:25:53 | 25 |

car versus red car.  In blue car versus red car, if the fender was damaged or the grille was damaged, you got a general release.  The general release included personal injury.  It was primary property damage, and the defendant wanted complete peace and got it.  This is that kind of a case.  This is what distinguishes it from *Amchem*.

There are 1,400 lawyers here, most of them plaintiffs' lawyers that are handling cases for families that they represent.  Not one of these lawyers has questioned the PI component of this settlement.  The only lawyer that has questioned the PI component of the settlement is Mr. Bandas, who doesn't have a real client and doesn't really care that by waging -- well, I won't call it what I called it in high school.  But by waging this particular objection, he could conceivably hold up the residents of Louisiana from getting back into their homes after Katrina and Rita.

We know what he wants, although he has now said, I'm not going to take a payoff.  I'm not going to wait for a payoff.  This time it's different than every other time I have been involved, in this litigation.

Well, with his track record, I don't believe that and I don't accept that.

THE COURT:  Let's move on from Mr. Bandas.

MR. LEVIN:  Your Honor, I have moved on to the point where I'm going to introduce Mr. Herman to you.

| | | |
|---|---|---|
| 10:25:56 | 1 | Mr. Herman. |
| 10:26:06 | 2 | **MR. HERMAN:**  Thank you, Arnie. |
| 10:26:07 | 3 | May it please the Court.  Judge Fallon, Judge |
| 10:26:10 | 4 | Farina, I have several important statements to make before I |
| 10:26:18 | 5 | get into the Bandas objection. |
| 10:26:24 | 6 | First, the fee in Knauf is $160 million, and |
| 10:26:27 | 7 | none of it will come out of one plaintiff's recovery.  It was |
| 10:26:34 | 8 | negotiated on top after the original settlement was negotiated. |
| 10:26:39 | 9 | Second, Arnie indicated that opt-outs keep |
| 10:26:43 | 10 | coming in.  Well, it's the rescissions of opt-outs that keep |
| 10:26:47 | 11 | coming in, not additional opt-outs. |
| 10:26:54 | 12 | There are more than 1,200 defendants in this |
| 10:26:55 | 13 | case.  Ordinarily a plaintiff attorney, may it please the |
| 10:27:00 | 14 | Court, would say, Gee, that's a property case.  This is going |
| 10:27:05 | 15 | to be easy. |
| 10:27:06 | 16 | I've been practicing 46 years.  It's the most |
| 10:27:09 | 17 | difficult case I have ever been in.  It's taken a yeoman's job |
| 10:27:13 | 18 | for the 1,400 lawyers that have clients to make inspections, |
| 10:27:18 | 19 | marshal evidence, discuss with their clients, file claims, file |
| 10:27:25 | 20 | plaintiff profile forms. |
| 10:27:30 | 21 | Now, Your Honor, I do want to offer and |
| 10:27:34 | 22 | introduce into the record Exhibits 1 through 78.  Exhibit 26 |
| 10:27:48 | 23 | was reserved.  These are the receipts for, quote, something |
| 10:27:58 | 24 | Mr. Bandas's clients purchased from either Home Depot or |
| 10:28:06 | 25 | Lowe's, except you can't read them, and there's not a single |

| | |
|---|---|
| 10:28:11 | 1 |
| 10:28:19 | 2 |
| 10:28:32 | 3 |
| 10:28:51 | 4 |
| 10:28:57 | 5 |
| 10:29:12 | 6 |
| 10:29:16 | 7 |
| 10:29:22 | 8 |
| 10:29:28 | 9 |
| 10:29:33 | 10 |
| 10:29:39 | 11 |
| 10:29:47 | 12 |
| 10:29:53 | 13 |
| 10:30:00 | 14 |
| 10:30:10 | 15 |
| 10:30:15 | 16 |
| 10:30:20 | 17 |
| 10:30:27 | 18 |
| 10:30:31 | 19 |
| 10:30:33 | 20 |
| 10:30:38 | 21 |
| 10:30:44 | 22 |
| 10:30:48 | 23 |
| 10:30:51 | 24 |
| 10:31:00 | 25 |

receipt that indicates the purchase of Chinese drywall.

Your Honor, I have a couple of more statements I want to make before I get into objections.  On September 15, 2011, the government, through the Consumer Product Safety Commission, issued final studies.  "In February 2011, the CDC indicated that the best scientific evidence available at this time did not support undertaking long-term health study."  So for a period from 2006, for five years, with intense investigation by the Consumer Product Safety Commission, by the EPA, by the Centers for Disease Control and other authorities, they found no long-term health risks.  That's record document 16188-1.

Earlier that year, on January 23, 2011, in record document 16188-3, the Consumer Product Safety Commission, the National Center for Environmental Health, and the National Centers for Disease Control and Prevention indicated that they had intensely investigated 11 claimed deaths and could not find that drywall was a contributing factor in any of them.

Now, I'm familiar with various e-mails over the Internet and hearsay and sword rattling by folks saying, oh, their injuries, their injuries, their injuries.  Indeed, the only evidence of anything is that some people suffered on occasion sniffles, some eye irritation, which was not supported causally, but what was supported was if they moved out of the

10:31:05  1    environment those symptoms were temporary.

10:31:10  2            Now, the last document in the record I want to

10:31:13  3    refer Your Honor to before I go forward is record

10:31:20  4    document 16188-2.  I consider this one of the most important

10:31:30  5    documents in the entire litigation.  Document 16188-2, it is a

10:31:39  6    remediation guidance issued after five years by the Consumer

10:31:45  7    Product Safety Commission on September 15, 2011.

10:31:53  8            Your Honor may recall that originally the

10:31:54  9    Consumer Product Safety Commission wouldn't even meet with the

10:31:59 10    plaintiffs' steering committee.  They were meeting with

10:32:01 11    manufacturers.  The Consumer Product Safety Commission went to

10:32:09 12    China, and originally they could not inspect the Luneng mine,

10:32:11 13    which was the source of this drywall.  It was only after

10:32:18 14    Your Honor intervened and directed through the U.S. attorney

10:32:21 15    that the Consumer Product Safety Commission meet with us

10:32:25 16    face-to-face, which we did, that we began an exchange of

10:32:29 17    information and discourse with the Consumer Product Safety

10:32:32 18    Commission, which is charged with the watchdog authority of

10:32:40 19    health in this country regarding any products that are

10:32:44 20    manufactured.

10:32:48 21            That remediation guidance issued on

10:32:51 22    September 15, 2011, by the Consumer Product Safety Commission

10:32:56 23    and HUD was the final remediation protocol.  I am proud to say

10:33:06 24    that the PSC and 1,400 lawyers with clients who are not

10:33:12 25    protesting have agreed to not only a pilot program but also a

settlement which calls for more and greater remedy than the
Consumer Product Safety Commission called for in remediation.

Now, I would like to ask Regina if she would put
up my slides again.

Your Honor, 37 out of 39 status conferences --
we had 38 marked this morning, but there actually were 39.  No
protester showed up at 37 of those status conferences, neither
by phone nor in person.

I was privileged to take the first depositions
in the case in Virginia directed at installers and suppliers
who had Taishan and other drywall.  I also took the first
depositions in New York with regard to Knauf.  Now, in those
234 depositions, no one representing Mr. Soto or Mr. Garcia
showed up or asked a single question.

Go to the next line, please.  Go to the next
line.

Now, Tatum and Charlene Hernandez were clients
of our firm, and they went through a full trial from March 5 to
March 19.  Your Honor issued findings of fact and a judgment.
No objector or lawyer for an objector showed up at that trial,
nor did they show up at the previous *Germano* trial.

Your Honor directed Knauf and the plaintiffs'
steering committee at the time the first *Germano* trial was
tried and before to begin meeting to discuss resolution with
this injunction from the Court:  You must settle this case if

41

|   |   |   |
|---|---|---|
| 10:35:49 | 1 | it can be settled.  We have homeless people in the Gulf states |
| 10:35:55 | 2 | who are innocent victims, and you must find a way to have these |
| 10:36:01 | 3 | homes remediated and get people back in them. |
| 10:36:06 | 4 | There were literally discussions in person, over |
| 10:36:09 | 5 | the phone, every single day.  I can remember the first |
| 10:36:12 | 6 | discussions we also had with Chartis in New York with Jane |
| 10:36:18 | 7 | Byrne and her colleagues.  So the pilot program -- actually, we |
| 10:36:23 | 8 | had two weeks of daily discussions in New York to get to a |
| 10:36:30 | 9 | pilot program.  This was after months and months of |
| 10:36:34 | 10 | negotiation.  The pilot program was based upon the crucible of |
| 10:36:38 | 11 | justice, experts, facts, who took the stand, who were |
| 10:36:45 | 12 | cross-examined, that the judge, Your Honor, had the ability to |
| 10:36:50 | 13 | view, and so we entered a pilot program. |
| 10:36:57 | 14 | May I have the next slide, please. |
| 10:37:00 | 15 | All of those, including a pilot program which |
| 10:37:03 | 16 | lasted for a couple of years, a pilot program also which |
| 10:37:07 | 17 | promised greater remediation than did the CPSC protocol, |
| 10:37:12 | 18 | resulted in the five settlements that we are here today about. |
| 10:37:22 | 19 | Ordinarily, I confess, Your Honor that I would |
| 10:37:33 | 20 | stand before Your Honor and I would be happy today.  Fairness |
| 10:37:37 | 21 | hearings are a happy time.  They are happy for lawyers that |
| 10:37:40 | 22 | have labored in the vineyard, who have acted professionally on |
| 10:37:45 | 23 | all sides, but we can't lose sight of the clients on both |
| 10:37:54 | 24 | sides.  On our side we are worried about 5,200 clients. |
| 10:38:03 | 25 | So I want to get to the Bandas objection.  I |

10:38:07  1    know Arnold spoke about it.  But, Your Honor, we asked for an
10:38:13  2    hour and 15 minutes, of which a half hour or so is gone.  I
10:38:17  3    wouldn't take the rest of that time, but I do want to make this
10:38:21  4    record clear.
10:38:24  5              First of all, as to the Durkee and Milstein
10:38:27  6    clients, I have nothing really to say.  I don't understand how
10:38:32  7    you can put clients in a settlement, you have other clients you
10:38:38  8    take out, and then you object; it's to the detriment of some
10:38:43  9    and not the others.  But that's really not for me to say
10:38:46  10   because they have clients.  They have been in the litigation
10:38:50  11   for some time.  They are not new to it.
10:38:54  12             Now, the question is whether Mr. Soto and
10:38:58  13   Mr. Garcia, from all of the circumstances in the case, have
10:39:03  14   standing under 23(e)(5).  Your Honor, they do not.
10:39:16  15             Mr. Bandas says that we have falsely accused him
10:39:19  16   of extortion and phony objections.  And he says, Well, since
10:39:31  17   the class definition has the word *allegation* in it, all we have
10:39:35  18   to do is allege something to have standing.
10:39:38  19             However, he has never read completely the
10:39:43  20   settlements because if he had, he would have understood you
10:39:46  21   can't recover anything unless you have got indicia, which is
10:39:52  22   spelled out, in order to enter.
10:39:58  23             Now, in the *Worrall* case in Travis County Texas,
10:40:03  24   at page 3, the court found that Mr. Bandas's filing was forum
10:40:09  25   shopping to circumvent and violate a settlement agreement and

| | |
|---|---|
| 10:40:15 | 1 |
| 10:40:19 | 2 |
| 10:40:20 | 3 |
| 10:40:25 | 4 |
| 10:40:32 | 5 |
| 10:40:37 | 6 |
| 10:40:44 | 7 |
| 10:40:49 | 8 |
| 10:40:57 | 9 |
| 10:41:01 | 10 |
| 10:41:06 | 11 |
| 10:41:10 | 12 |
| 10:41:15 | 13 |
| 10:41:21 | 14 |
| 10:41:25 | 15 |
| 10:41:31 | 16 |
| 10:41:36 | 17 |
| 10:41:36 | 18 |
| 10:41:39 | 19 |
| 10:41:46 | 20 |
| 10:41:51 | 21 |
| 10:42:04 | 22 |
| 10:42:10 | 23 |
| 10:42:16 | 24 |
| 10:42:20 | 25 |

1  that he should know about standing and fee sharing with a
2  nonlawyer.
3        In *Kitech* in the district court in Dallas,
4  Bandas objected, pleading the Fifth Circuit.
5        In *Cathode Ray Tube* in California, Christopher
6  Bandas was found to be a "professional or serial objector."
7  Hull lived in Denver, but the papers and objections were filed
8  from Corpus Christi, where Mr. Bandas has his office.
9        Then in *Brown v. Walmart* in Illinois -- I want
10 to quote the court.  These are not my words.  Quote:  Bandas is
11 a Texas lawyer well known for his practice of routinely filing
12 objections in class action settlements across the country.
13        Quote:  Improperly attempting to hijack the
14 settlement from deserving class members and dedicated,
15 hard-working counsel, Bandas has filed virtually identical
16 frivolous objections in South Carolina, Iowa, Missouri, and
17 Florida.
18        In Iowa, Mr. Bandas was clearly, with his
19 co-counsel, identified as soliciting an objector.
20        In Florida, the court said that he was guilty of
21 collusion to extort, also that he did not investigate.
22        In Missouri, again Mr. Bandas -- I'm sorry.  In
23 Iowa, Mr. Bandas again was found to have been soliciting
24 objectors.
25        In *Oubliette* in Florida, he had no participation

|          |    |
|----------|----|
| 10:42:26 | 1  | in the case whatsoever until he filed an objection, and he |
| 10:42:30 | 2  | couldn't demonstrate that he had any participation. |
| 10:42:36 | 3  | In South Carolina, he never reviewed the |
| 10:42:39 | 4  | pleadings or the record.  In *Embry* he was required to put up a |
| 10:42:48 | 5  | bond, as he was in another case. |
| 10:42:54 | 6  | Your Honor, there's a contingent fee contract |
| 10:42:57 | 7  | produced in Mr. Soto's deposition.  Item 2.2 requires an |
| 10:43:04 | 8  | objector affidavit warranting that they're benefiting from the |
| 10:43:11 | 9  | benefit, that they are entitled to standing.  In 3.2 he offers |
| 10:43:24 | 10 | $5,000 upon his recommendation to the court to an objector and |
| 10:43:31 | 11 | has his clients in 4 waive in advance any conflicts of interest |
| 10:43:37 | 12 | on his part. |
| 10:43:46 | 13 | Now, was there a lack of investigation? |
| 10:43:50 | 14 | Mr. Bandas, in a motion for discovery filed the day after or |
| 10:43:58 | 15 | within a week after his objection on behalf of his clients, |
| 10:44:03 | 16 | challenges a 40 percent contingent fee.  I don't know where |
| 10:44:09 | 17 | that came from.  It's not in this case.  He challenges a |
| 10:44:12 | 18 | 1 percent fee to class reps, a Ms. Hill.  Ms. Hill isn't in the |
| 10:44:18 | 19 | case, and there's no fee recommended to class reps.  Then he |
| 10:44:22 | 20 | says there's a $40,000 settlement fund which was reached with |
| 10:44:26 | 21 | Marathon. |
| 10:44:28 | 22 | I would like to know, if you investigate |
| 10:44:31 | 23 | something, is it still the rule, Your Honor, in this district |
| 10:44:34 | 24 | court, in the Eastern District, and the courts of our state, in |
| 10:44:38 | 25 | the federal courts, that an attorney is charged with making a |

|   |   |
|---|---|
| 10:44:41 | 1 |
| 10:44:46 | 2 |
| 10:44:52 | 3 |
| 10:44:57 | 4 |
| 10:45:02 | 5 |
| 10:45:05 | 6 |
| 10:45:09 | 7 |
| 10:45:15 | 8 |
| 10:45:22 | 9 |
| 10:45:27 | 10 |
| 10:45:30 | 11 |
| 10:45:38 | 12 |
| 10:45:42 | 13 |
| 10:45:45 | 14 |
| 10:45:47 | 15 |
| 10:45:52 | 16 |
| 10:45:57 | 17 |
| 10:46:03 | 18 |
| 10:46:07 | 19 |
| 10:46:10 | 20 |
| 10:46:12 | 21 |
| 10:46:15 | 22 |
| 10:46:19 | 23 |
| 10:46:23 | 24 |
| 10:46:28 | 25 |

representation in a pleading?  And how in a matter this serious can you even deign to quote some matter that has nothing to do with anything?  No wonder the objectors that he talked to originally thought that the attorneys' fee was too great.  He was giving them information that didn't exist.

Now, I know -- and I'm going to try and wind up in 10 minutes, Your Honor.  The Garcia deposition of November 1 is record 16150-3.  The only time you heard about the settlement was when Batman got him.  Batman is a lawyer that shares offices with Mr. Bandas.  The first time he heard about a CDW settlement was when Robin, Batman's guy Chapa, comes to him and says, Oh, there's a settlement.  Come see Batman.  And Batman says, Come see Mr. Bandas.

We used to call that in Louisiana solicitation. My father told me when I started practicing 46 years ago if his sons ever were guilty of solicitation, he would drum us out of the firm after he used a shark skin belt on us.  I thought solicitation was unethical.  I find out, no, it's not if you are going to challenge a class action settlement.

He knew nothing about the settlement.  He didn't know the value before the deposition.  He never read the settlement.  He never went to Your Honor's Web site.  He didn't know if he purchased drywall from any participating defendant. He couldn't contest Home Depot's statement that it never sold CDW, even though that's who he alleges he got the CDW from.  He

| | |
|---|---|
| 10:46:34 | 1 |
| 10:46:37 | 2 |
| 10:46:38 | 3 |
| 10:46:41 | 4 |
| 10:46:45 | 5 |
| 10:46:51 | 6 |
| 10:46:55 | 7 |
| 10:46:57 | 8 |
| 10:47:00 | 9 |
| 10:47:04 | 10 |
| 10:47:07 | 11 |
| 10:47:14 | 12 |
| 10:47:21 | 13 |
| 10:47:29 | 14 |
| 10:47:35 | 15 |
| 10:47:40 | 16 |
| 10:47:44 | 17 |
| 10:47:50 | 18 |
| 10:47:55 | 19 |
| 10:48:00 | 20 |
| 10:48:01 | 21 |
| 10:48:04 | 22 |
| 10:48:08 | 23 |
| 10:48:12 | 24 |
| 10:48:15 | 25 |

had no corrosion and no egg smell.  He has no physical problems.

His saw blades got corroded.  Well, if you knew anything about this case for the last years, you would know that only silver and copper get corroded from sulfur; saw blades don't.  That's what they allege their physical property damage is.  It's absurd.

He started worrying about his health after the lawyers told him he might have a health problem.  He has no damage to his business reputation, although he originally claimed it, and he only objected after he talked with Mr. Bandas.  And then seven days later, in record 16157-1 -- 16157-1 -- after a week he has made no inspection of any properties, including his own.  He can't attest that there's any drywall anywhere.  He produces receipts that Your Honor ordered the production of, and not one of them shows any purchase of drywall from Home Depot.  Home Depot, in its defense profile form, says it never sold, stocked, distributed any Chinese drywall in Texas or anywhere else, and he can't refute that.

What is the deal?  You have a client, you have him object to 5,200 people receiving their day in court, and you don't even send your client to make an inspection in the intervening week?

Then there's Mr. Soto, record 16150-2.  His

|           |    |                                                              |
|-----------|----|--------------------------------------------------------------|
| 10:48:20  | 1  | deposition is taken.  He met Bandas through Batman.  They work |
| 10:48:25  | 2  | in the same office.  Batman told him about Chinese drywall.  He |
| 10:48:29  | 3  | didn't see the settlement or the Web site.  He had no concerns |
| 10:48:31  | 4  | from his customers. |
| 10:48:33  | 5  | He met Mr. Bandas in Bandas's home.  Bandas |
| 10:48:37  | 6  | showed him photos of CDW.  In other words, he didn't show |
| 10:48:41  | 7  | evidence of CDW to Mr. Bandas.  Mr. Bandas took photos of |
| 10:48:49  | 8  | Chinese drywall -- we don't know where he got them from, |
| 10:48:50  | 9  | probably off the Web site when he looked at it for the first |
| 10:48:54  | 10 | time -- and said, Hey, this is what Chinese drywall looks like. |
| 10:48:59  | 11 | He has no distinct memory of buying Chinese |
| 10:49:02  | 12 | drywall from Home Depot.  And I remind the Court Home Depot is |
| 10:49:07  | 13 | the only -- is the only -- participating defendant or potential |
| 10:49:13  | 14 | defendant in the global settlement to which he objects. |
| 10:49:19  | 15 | How did he meet Batman to get to Bandas?  He met |
| 10:49:23  | 16 | Burt, who works for Batman.  He has no receipts.  He doesn't |
| 10:49:28  | 17 | know if he installed drywall.  He has no smell or corrosion. |
| 10:49:37  | 18 | He had no concerns until he talked to Batman.  He is not going |
| 10:49:42  | 19 | to file any action for any health matter.  He doesn't have the |
| 10:49:46  | 20 | receipts for the drills he says were corroded.  His clients |
| 10:49:50  | 21 | never complained.  He hasn't seen a doctor for emotions.  But |
| 10:49:53  | 22 | when he had some congestion in Mexico, he once went to a |
| 10:49:57  | 23 | doctor. |
| 10:49:59  | 24 | Now, he was deposed again, in record 16157-1, |
| 10:50:07  | 25 | six or seven days later.  Made no inspection.  Got no samples. |

| | |
|---|---|
| 10:50:12 | 1 |
| 10:50:16 | 2 |
| 10:50:21 | 3 |
| 10:50:26 | 4 |
| 10:50:33 | 5 |
| 10:50:36 | 6 |
| 10:50:43 | 7 |
| 10:50:49 | 8 |
| 10:50:51 | 9 |
| 10:50:57 | 10 |
| 10:51:02 | 11 |
| 10:51:08 | 12 |
| 10:51:12 | 13 |
| 10:51:15 | 14 |
| 10:51:16 | 15 |
| 10:51:19 | 16 |
| 10:51:24 | 17 |
| 10:51:30 | 18 |
| 10:51:32 | 19 |
| 10:51:33 | 20 |
| 10:51:37 | 21 |
| 10:51:40 | 22 |
| 10:51:41 | 23 |
| 10:51:43 | 24 |
| 10:51:48 | 25 |

1 What is this when you file an objection which threatens over
2 5,000 legitimate suffering people and you don't have your
3 proposed client at least make an inspection like these other
4 1,400 lawyers were required to do?
5          So his notes which Your Honor had produced after
6 a hearing say, Yeah, object to the class; don't agree on what
7 the lawyers are getting.  Here's a copy of objections; some you
8 will know, some you won't know.
9          Now, Your Honor, I know that I'm upset about
10 this.  When I was a child, a lot of people liked Superman and
11 Batman.  I liked Captain Marvel.  Captain Marvel?  Tear off his
12 shirt and say *shazam*, which was the first letter of the Greek
13 heroes, and he become a superhero.  You know, he was
14 Captain Marvel.
15          Mr. Bandas's history is he gets up in the
16 morning and he yells*, Amchem*.  I'm super marvelous.  *Amchem.*
17 *Amchem*.  I'll just cadger you guys.  You pay me money or I'm
18 going to go to the Fifth Circuit or some other circuit with
19 *Amchem*.
20          Well, this isn't an *Amchem* case.  We are not
21 going to pay blood money.  Our clients are not going to pay
22 blood money.
23          I'm going to close because if I didn't do this,
24 Dawn would be upset.  It's sort of like -- and I have to say
25 this.  The thing that disappoints me most is Mr. Bandas is a

| | | |
|---|---|---|
| 10:51:51 | 1 | very talented, bright lawyer, and he is eloquent, but it's like |
| 10:51:56 | 2 | the *Emperor's New Clothes*.  He has all this eloquent stuff, |
| 10:52:00 | 3 | This is serious.  This is serious.  When you look at the naked |
| 10:52:04 | 4 | truth, he doesn't have a legitimate standing. |
| 10:52:07 | 5 | Shakespeare said that oratory sometimes is |
| 10:52:15 | 6 | deceiving when it seems most just.  Mercutio, in *Romeo and* |
| 10:52:21 | 7 | *Juliet*, says about a woman characterized as deceitful -- I'm |
| 10:52:33 | 8 | glad the women in this case are not deceitful -- she appears in |
| 10:52:41 | 9 | dreams through lawyers' fingers who dream of their fees.  In |
| 10:52:51 | 10 | that state she gallops night by night through their dreams. |
| 10:52:57 | 11 | Lawyers' fees are not the issue in this case. |
| 10:53:00 | 12 | They are not the issue for the PSC.  They are not the issue for |
| 10:53:04 | 13 | 1,400 lawyers and their clients who have endorsed this |
| 10:53:10 | 14 | settlement.  What is important is the remedy, the relief, and |
| 10:53:13 | 15 | the justice that these people are entitled to. |
| 10:53:19 | 16 | Most respectfully, Your Honor, I thank you for |
| 10:53:21 | 17 | giving me time to set out this argument. |
| 10:53:27 | 18 | THE COURT:  Okay.  With Shakespeare we will stop here |
| 10:53:30 | 19 | and take a 10-minute break and come back.  Judge Lemmon's |
| 10:53:39 | 20 | courtroom is now available. |
| 10:53:42 | 21 | (Recess.) |
| 11:10:45 | 22 | THE COURT:  Be seated.  As I mentioned, we have |
| 11:10:47 | 23 | streaming video and sound across the hall if you would like to |
| 11:10:51 | 24 | sit down and don't have the space. |
| 11:10:54 | 25 | MR. HERMAN:  Judge Fallon, I have one request.  The |

| | | |
|---|---|---|
| 11:10:57 | 1 | depositions, as Your Honor knows, have been taken in the last |
| 11:10:59 | 2 | two weeks.  If Your Honor will hold the record open for the |
| 11:11:03 | 3 | reading and signing, we will substitute with the same record |
| 11:11:06 | 4 | numbers.  Thank you, Your Honor. |
| 11:11:09 | 5 | **THE COURT:**  Let me hear now from Knauf. |
| 11:11:15 | 6 | **MR. MILLER:**  Good morning, Your Honor.  Kerry Miller |
| 11:11:16 | 7 | on behalf of KPT and the other Knauf defendants.  First off, we |
| 11:11:21 | 8 | would like to thank the Court and Judge Farina's court and your |
| 11:11:25 | 9 | staffs for all of the great patience and support you have shown |
| 11:11:29 | 10 | us over the last three years. |
| 11:11:32 | 11 | I would like to spend just a few minutes |
| 11:11:35 | 12 | focusing on both the process and the outcome of the settlement, |
| 11:11:38 | 13 | both of which I think are just great from the perspective of |
| 11:11:42 | 14 | the system. |
| 11:11:46 | 15 | I'm very happy to be a proponent of what I think |
| 11:11:49 | 16 | is a very fair, reasonable, and adequate settlement produced by |
| 11:11:53 | 17 | tough but professional arms-length, noncollusive negotiations |
| 11:11:58 | 18 | between my client, my colleagues who will speak after me, and |
| 11:12:03 | 19 | the plaintiffs' steering committee headed by Mr. Levin and |
| 11:12:06 | 20 | Mr. Herman. |
| 11:12:07 | 21 | Your Honor, in the summer of 2009, this case was |
| 11:12:11 | 22 | MDL'd before you.  In the fall of 2009, this Court focused on |
| 11:12:16 | 23 | several pretrial orders that were very important building |
| 11:12:19 | 24 | blocks to the settlements we have today.  Those pretrial orders |
| 11:12:22 | 25 | include the pretrial orders on inspections, the pretrial orders |

| | | |
|---|---|---|
| 11:12:25 | 1 | on evidence preservation, and the pretrial orders on party |
| 11:12:30 | 2 | profile forms. |
| 11:12:32 | 3 | As Your Honor has mentioned several times, one |
| 11:12:35 | 4 | unique aspect of this case is the number of defendants that it |
| 11:12:39 | 5 | involves.  Quite frankly, when this case got MDL'd here in the |
| 11:12:43 | 6 | summer of 2009, very few people had heard of Chinese drywall. |
| 11:12:46 | 7 | There was a huge mystery as to how it got here and who was |
| 11:12:51 | 8 | involved in the chain of distribution. |
| 11:12:53 | 9 | So the profile forms, both on the plaintiff and |
| 11:12:55 | 10 | defense side, were important building blocks to, as Your Honor |
| 11:12:59 | 11 | calls it, figuring out the inventory, figuring out what we are |
| 11:13:03 | 12 | dealing with.  There were some initial projections which |
| 11:13:06 | 13 | indicated there were many more homes impacted than there are. |
| 11:13:10 | 14 | Thank God they're not more than they are because this is a |
| 11:13:14 | 15 | difficult situation. |
| 11:13:15 | 16 | This is a case, luckily for a lot of Rule 23 |
| 11:13:18 | 17 | aspects, that it is not a latent defect case.  It is a patent |
| 11:13:24 | 18 | defect case by all allegations and by those of us who have |
| 11:13:29 | 19 | conducted inspections and looked at the effects of Chinese |
| 11:13:32 | 20 | drywall. |
| 11:13:32 | 21 | After entering the very important pretrial |
| 11:13:35 | 22 | orders, as has been pointed out by the Court and by the |
| 11:13:38 | 23 | plaintiffs, Your Honor conducted bellwether trials at the |
| 11:13:40 | 24 | beginning of 2010.  Also at the beginning of 2010, as |
| 11:13:45 | 25 | foreshadowed by Mr. Herman, you gave the parties instructions |

| | | |
|---|---|---|
| 11:13:48 | 1 | to start sitting down and seeing if the case could be resolved. |
| 11:13:53 | 2 | Early on, as confirmed later on by the CPSC, it |
| 11:13:57 | 3 | was not a personal injury case; it was a property damage case. |
| 11:14:00 | 4 | But it was very important, we all understood, to begin the |
| 11:14:04 | 5 | process of getting people back into their homes and restoring |
| 11:14:07 | 6 | some normalcy to their lives. |
| 11:14:10 | 7 | So I can recall our first settlement meeting |
| 11:14:12 | 8 | actually occurred in Miami the week of the Super Bowl.  That's |
| 11:14:15 | 9 | when the Saints played down in Miami.  We had John Perry, who |
| 11:14:20 | 10 | helped us out initially and did a great job in setting some |
| 11:14:24 | 11 | basic settlement structure between the Knauf defendants and the |
| 11:14:27 | 12 | plaintiffs' steering committee. |
| 11:14:29 | 13 | We had a number of meetings, as Mr. Herman |
| 11:14:31 | 14 | pointed out.  Those meetings culminated in a pilot program in |
| 11:14:37 | 15 | the fall of 2010, and that leads to another unique aspect of |
| 11:14:41 | 16 | this settlement.  As we sit here at the fairness hearing and |
| 11:14:45 | 17 | consider objections and other matters, what you have is you |
| 11:14:48 | 18 | have pudding with proof in it.  As we sit here today, over |
| 11:14:53 | 19 | 1,000 homes, pursuant to the pilot program and to this Knauf |
| 11:14:59 | 20 | settlement that was introduced one year later, last fall, the |
| 11:15:01 | 21 | fall of 2007, have either been remediated or are in the process |
| 11:15:06 | 22 | of being remediated.  The trials that Your Honor entertained in |
| 11:15:10 | 23 | 2010 were focused on the scope of repair. |
| 11:15:15 | 24 | So the tires have been kicked.  Due diligence |
| 11:15:18 | 25 | has been done.  The relief and the recovery that's afforded to |

| | |
|---|---|
| 11:15:21 | 1 |
| 11:15:28 | 2 |
| 11:15:30 | 3 |
| 11:15:34 | 4 |
| 11:15:38 | 5 |

1   the class is prudent.  It is fair and reasonable and adequate.

2   The folks that are offered the repairs that are set forth

3   initially in the pilot program and now into the settlement, the

4   response is almost unanimous.  People want it.  People like it.

5            There are some issues over the last couple of

6   years that we have tweaked, and there will be more issues to

7   tweak as we move forward.  Our clients have been committed to

8   this settlement and hope to obtain final approval from the

9   Court, hope for the resolution of the objections and other

10  issues so that relief can be afforded to the remainder of the

11  members of the class; that is, the Knauf class.

12           Your Honor, there are a couple of aspects of the

13  Knauf settlement that I think, again, are unique.  Number one,

14  in order to qualify, you have to have an inspection.  Mr. Levin

15  pointed out that this is not a coupon settlement or anything

16  close to that ilk.  This is a settlement that offers real,

17  tangible relief.  It is bricks and mortar; it is sticks and

18  bricks.  What it does is it takes the bad drywall out, puts

19  good drywall back in, and restores a home to a new condition.

20           So first off is a home would have to pass an

21  inspection, a Court-approved inspection, to make sure it has my

22  client's drywall in it that's reactive.  That drywall is then

23  removed pursuant to a Court-approved remediation protocol.

24  Once the drywall is removed and all dust is removed from the

25  scene -- that was a big aspect of Your Honor's trials, making

11:16:58   1   sure all the contaminants are removed -- the homeowner receives
11:17:02   2   a certificate which says this home is free of Chinese drywall
11:17:05   3   and all impacts of Chinese drywall.  After that certificate is
11:17:08   4   entered, the home is clean, it's ready to go, it's put back
11:17:13   5   together, then the new drywall comes in, the new electrical
11:17:16   6   comes in, and the home is refinished out, and the folks are
11:17:20   7   allowed to reoccupy the home.
11:17:23   8             Your Honor, in terms of the various options, all
11:17:27   9   of which are real under this settlement, under the remediation
11:17:30   10  option, the first suboption, if you will, on the remediation is
11:17:33   11  remediation done by the Moss Construction group.  Like I said,
11:17:37   12  they have now remediated over 1,000 homes.  They will begin the
11:17:42   13  process for remediating some multiunit complexes, and they have
11:17:46   14  capacity to do 150 to 200 homes a month.  We are kind of
11:17:51   15  operating at that capacity now after a pretty long run-up time.
11:17:54   16            Your Honor, by the time we are here next year,
11:17:56   17  we will probably be close to wrapping up all of the homes,
11:17:59   18  which will be a great thing, provided we get final approval and
11:18:04   19  are able to move on.
11:18:06   20            The next aspect of the remediation program is
11:18:08   21  what's called self-remediation.  Same process:  You have to
11:18:11   22  have an inspection.  You have to prove that you are going to
11:18:15   23  get the drywall out.
11:18:16   24            No one wanted, my client didn't want -- and we
11:18:19   25  were able to negotiate with the plaintiffs and obtain

11:18:21  1   preliminary approval from the Court -- a settlement by which
11:18:24  2   the drywall would remain in the homes.  That's not what society
11:18:29  3   wanted, that was not good for justice, and that was not good
11:18:31  4   for the homeowners.  Really what the homeowners wanted in this
11:18:35  5   case, they didn't want a check, they didn't want cash; they
11:18:35  6   wanted their homes restored.  That's what they are getting.
11:18:40  7        So I do think the system is well served and you
11:18:43  8   couldn't have a better settlement under Rule 23 than one that
11:18:46  9   provides recovery that is necessary.  It gets the bad drywall
11:18:51  10  out.  It puts good drywall in.  Folks are restored hopefully
11:18:55  11  with a minimal amount of disruption and inconvenience.
11:18:58  12       **THE COURT:**  They get their attorneys' fees paid.
11:19:00  13       **MR. MILLER:**  There is no deduction for attorneys'
11:19:03  14  fees.  The agreement that my client reached with the plaintiffs
11:19:05  15  and I think the agreement that the other settlements have in
11:19:06  16  place is that attorneys' fees are paid on top of the benefits
11:19:10  17  they get by getting their home repaired.  There are no
11:19:15  18  deductions made.  They don't even know that that occurs.  There
11:19:16  19  is no impact or cost.  Our fee is deducted from what they have.
11:19:20  20       What they do is they meet with the contractors.
11:19:22  21  The contractors go in, they identify the scope of the repair.
11:19:26  22  The contractor and the homeowner signs off on it so that a
11:19:30  23  contract is effected.  The homeowner then gets his
11:19:34  24  move-in/move-out expenses, arranges for alternative living.
11:19:39  25       The contractor comes in, does the work, provides

11:19:41  1   the environmental certificate, finishes the repair.  The
11:19:44  2   homeowner gets back into the home and is never bothered with
11:19:48  3   things such as court costs or attorneys' fees.  It's a turnkey
11:19:52  4   operation for the homeowner, which we think is very important.
11:19:55  5              I know the Court has posted in the public record
11:19:59  6   comments, some negative, but I think the overwhelming majority
11:20:04  7   of the people who have gone through the program have been
11:20:07  8   positive both to Your Honor, to Judge Farina, and to the
11:20:11  9   various parties in interest in this Court.
11:20:15  10             Your Honor, a couple of different aspects of the
11:20:16  11  settlement because it was meant to capture all different kinds
11:20:20  12  of claims, there's a subcategory that we refer to as already
11:20:23  13  remediated homes.  I mentioned the Knauf class action
11:20:25  14  settlement was announced about a year ago, fall of 2011.  It
11:20:31  15  was important that as of that time that homes that had not been
11:20:36  16  remediated by the homeowner flowed into the settlement program,
11:20:41  17  given the Court approvals and the structure we had in place
11:20:44  18  there.
11:20:45  19             Some folks who had the means or the ability
11:20:48  20  themselves to repair their home between 2009 and 2011 had done
11:20:52  21  so.  So about 300 to 350 people who purportedly have KPT
11:21:00  22  drywall in their home had remediated or begun remediation of
11:21:03  23  their home prior to last fall.  In those cases the pretrial
11:21:08  24  order on evidence preservation applies.  As we sit here today,
11:21:13  25  we have settled more than 50 of those homes.

| | |
|---|---|
| 11:21:16 | 1 |
| 11:21:18 | 2 |
| 11:21:23 | 3 |
| 11:21:27 | 4 |
| 11:21:32 | 5 |
| 11:21:35 | 6 |
| 11:21:40 | 7 |
| 11:21:44 | 8 |
| 11:21:49 | 9 |
| 11:21:52 | 10 |
| 11:21:56 | 11 |
| 11:21:59 | 12 |
| 11:22:04 | 13 |
| 11:22:09 | 14 |
| 11:22:12 | 15 |
| 11:22:15 | 16 |
| 11:22:17 | 17 |
| 11:22:22 | 18 |
| 11:22:24 | 19 |
| 11:22:27 | 20 |
| 11:22:32 | 21 |
| 11:22:34 | 22 |
| 11:22:38 | 23 |
| 11:22:43 | 24 |
| 11:22:48 | 25 |

We now have a process in place with Mr. Herman's office, with participation from the PSC and other plaintiff lawyers, where information is shared.  It's provided to a Web site, it's accessed.  We are now having meetings every second Monday where we attempt to resolve 10 or 15 more.  So that's well on its way.  I think in a number of months hopefully that program will have satisfied most of those claims.

Your Honor, I will mention that with respect to already remediated homes, there is integration between the Knauf settlement and the Banner, InEx, and L&W settlements. Knauf was the manufacturer.  Banner, InEx, and L&W were the main suppliers.  So those settlements interlink insofar as, again, the homeowner is not bothered here.  It's basically a credit arrangement where those defendants who are responsible for those particular homes work to fund those remediations. It's been great working with the lawyers from InEx, L&W, and Banner to try and satisfy the claims of all the class members, of all the customers.

The last aspect I want to touch upon of the Knauf settlement, which again I think makes it more than fair, reasonable, and adequate under Rule 23, is the Other Loss Fund. The Other Loss Fund basically covers economic losses, short sales, foreclosures; in commercial settings, lost income; and also personal injury claims.  Knauf has reached an agreement with the PSC as part of its settlement to contribute

| | | |
|---|---|---|
| 11:22:51 | 1 | $15 million towards that fund.  The global settlement involving |
| 11:22:54 | 2 | the builders and installers also contributes some of those |
| 11:22:57 | 3 | funds into the Other Loss Fund.  That fund is going to be |
| 11:23:01 | 4 | created and, from that, John Perry's office is going to |
| 11:23:05 | 5 | function as the special master and will make recommendations on |
| 11:23:08 | 6 | awards for people who qualify under the Other Loss Fund.  I |
| 11:23:12 | 7 | expect 2013 will be filled with that activity. |
| 11:23:15 | 8 | The Court ultimately is the arbiter of any |
| 11:23:18 | 9 | appeals from remediation, already remediated homes, and the |
| 11:23:21 | 10 | Other Loss Fund, but so far we have been pretty successful at |
| 11:23:25 | 11 | working together without burdening the Court of having to |
| 11:23:27 | 12 | become the arbiter of those things. |
| 11:23:29 | 13 | As we develop even more of a track record moving |
| 11:23:33 | 14 | forward, I expect the same.  There has been great cooperation |
| 11:23:36 | 15 | amongst counsel from all quarters.  Again, Your Honor, I think |
| 11:23:39 | 16 | this is an extremely good settlement for both the defendants |
| 11:23:41 | 17 | and the plaintiffs.  It should be a hallmark, written about |
| 11:23:45 | 18 | Rule 23 example about how the system can work for the |
| 11:23:49 | 19 | litigants.  I'm very proud to be involved in it.  Thank you, |
| 11:23:53 | 20 | Your Honor. |
| 11:23:54 | 21 | Mr. Glickstein will speak on some other aspects |
| 11:23:57 | 22 | of the settlement -- actually Mr. Mayesh first. |
| 11:24:05 | 23 | **MR. MAYESH:**  May it please the Court.  Your Honor, |
| 11:24:05 | 24 | Jay Mayesh on behalf of the Knauf defendants.  I would like to |
| 11:24:09 | 25 | offer into evidence the exhibits which are a part of our brief. |

I have for Your Honor and for Mr. Brandao listed those
90 exhibits, two CDs, one of which contains all of the
exhibits, the other of which contains those which are just
under seal still.  We are trying to get the seal lifted.

           **THE COURT:**  All right.  Thank you.

           **MR. MAYESH:**  Your Honor has often said that a fair
settlement has to take into account the strengths of the other
side in the case and that until you prepare a case for trial,
you really don't know your case and you don't know your
adversary's case.  I think in this situation, though, having
taken as much evidence as we have taken on these various
continents and having gone through the number of documents in
the millions that we have done, we know the case pretty well.

           I would like to take a moment of Your Honor's
time and the time of those here to talk frankly about the
strength of the defense case here, which is remarkable given
the fact that this is a concededly defective product.  People
might not understand, in the situation where the product is
admittedly defective, what are these defenses that the Knauf
defendants can have.

           First of all, I would like to say this is a case
of pure no fault.  This is not a negligence case.  This is not
a bad conduct case.  This is not a failure-to-warn case.  This
is one of those cases where nobody did anything wrong or could
have foreseen what happened.  But under the law of product

| | | |
|---|---|---|
| 11:26:13 | 1 | liability, which is strict liability, it remains to KPT, the |
| 11:26:18 | 2 | manufacturer of the products, to make those products good. |
| 11:26:24 | 3 | The evidence indicates that the manufacturer, |
| 11:26:28 | 4 | KPT, took all due care in the manufacturing of the product. |
| 11:26:34 | 5 | The product met all of the existing industry standards for |
| 11:26:40 | 6 | testing before it was delivered.  The cause was the unknown |
| 11:26:47 | 7 | inclusion of sulfur-bearing rock in the raw material gypsum ore |
| 11:26:56 | 8 | which came out of a mine particularly in Northern China.  In a |
| 11:27:06 | 9 | sense, this was a latent defect, meaning latent in that it was |
| 11:27:13 | 10 | undiscoverable and, in fact, did not even manifest itself until |
| 11:27:19 | 11 | this sheetrock made its way into the Gulf states of the |
| 11:27:24 | 12 | Southeastern United States and met with the high humidity that |
| 11:27:30 | 13 | we have here. |
| 11:27:33 | 14 | I want to emphasize that the same product |
| 11:27:34 | 15 | manufactured in China and used in Northern China, which was the |
| 11:27:41 | 16 | natural market for my client KPT, did not smell and did not |
| 11:27:49 | 17 | result in corrosion of copper wiring.  Inspections were made to |
| 11:27:54 | 18 | see if that occurred in other areas.  It's a drier climate. |
| 11:27:58 | 19 | It's a different climate. |
| 11:28:04 | 20 | So not only was this problem of odor and |
| 11:28:09 | 21 | off-gassing not foreseeable to anyone, as a matter of fact, |
| 11:28:12 | 22 | gypsum drywall has been known in the past to be an absorber of |
| 11:28:20 | 23 | odors.  In the formaldehyde cases, for instance, one of the |
| 11:28:29 | 24 | proposed fixes was to cover the formaldehyde-exuding plywood |
| 11:28:34 | 25 | with gypsum board, which, like when you put baking soda in a |

| | |
|---|---|
| 11:28:39 | 1 |
| 11:28:46 | 2 |
| 11:28:49 | 3 |
| 11:28:57 | 4 |
| 11:29:00 | 5 |
| 11:29:08 | 6 |
| 11:29:14 | 7 |
| 11:29:22 | 8 |
| 11:29:28 | 9 |
| 11:29:33 | 10 |
| 11:29:36 | 11 |
| 11:29:39 | 12 |
| 11:29:46 | 13 |
| 11:29:51 | 14 |
| 11:29:57 | 15 |
| 11:30:03 | 16 |
| 11:30:14 | 17 |
| 11:30:18 | 18 |
| 11:30:26 | 19 |
| 11:30:32 | 20 |
| 11:30:37 | 21 |
| 11:30:42 | 22 |
| 11:30:48 | 23 |
| 11:30:52 | 24 |
| 11:30:56 | 25 |

refrigerator or talc in shoes, absorbs the odor.

So it's a simple and straightforward case of no one's fault.  It would have been ordinarily very uncomplicated because whoever ended up with the product would have sued right up the line to the Chinese mine, and it would have been an easy property damage case.  But, frankly, it became the most complicated Rule 23 case that any of us have ever been involved in.  You heard that, I think, from my colleague Mr. Herman.  I can tell you the same for me and the same for Mr. Glickstein and Mr. Miller.  It was enormously complicated.

Why?  I was thinking about it this morning. It's kind of an anomaly left over, an anachronism of the Cold War.  Here one of our greatest trading partners is China, but because of what happened in the Cold War, we don't have a treaty for judgment recognition in China, and that creates -- it really knocks our entire system of jurisdiction and redress in commercial relations into a cocked hat.  It was that cocked hat that we had to deal with in this case.

KPT, a Chinese manufacturer, had no recourse against the Luneng mine owned by the Chinese government.  That doesn't happen in China.  Consequently the folks who bought from KPT, they look to the Chinese manufacturer for their redress and they don't have any recourse.

So what does the law do with that?  Well, in fact, I think ultimately the homeowners in this case faced

|          |    |                                                                           |
|----------|----|---------------------------------------------------------------------------|
| 11:31:00 | 1  | absolutely impossible hurdles in actually recovering money from           |
| 11:31:06 | 2  | KPT, and that set off a frenzy looking for deep pockets in this           |
| 11:31:13 | 3  | case.                                                                     |
| 11:31:18 | 4  | The plaintiffs' first analysis was, if we cannot                          |
| 11:31:24 | 5  | recover from the Chinese Knauf company, then let us pierce the            |
| 11:31:34 | 6  | corporate veils between this group of companies such that those          |
| 11:31:39 | 7  | in Germany would be responsible for the debts of the company or          |
| 11:31:45 | 8  | companies in China.  As any lawyer would, given the ostensible           |
| 11:31:52 | 9  | facts of there being a Knauf group of companies, those                    |
| 11:31:56 | 10 | companies under common and private ownership, that certainly             |
| 11:32:05 | 11 | seemed to be a dog that would hunt in this case.                          |
| 11:32:08 | 12 | There was a problem, however.  The law of every                           |
| 11:32:13 | 13 | jurisdiction which has touched this case requires that to                 |
| 11:32:19 | 14 | pierce the corporate veil there must be an abuse of the                   |
| 11:32:25 | 15 | corporate form, and that abuse must deprive the judgment                  |
| 11:32:32 | 16 | creditors or the creditors of the corporation of the assets of           |
| 11:32:36 | 17 | those corporations.  So as an element in piercing the corporate          |
| 11:32:41 | 18 | veil, you must prove some degree of corporate flimflam, some             |
| 11:32:46 | 19 | kind of Three-card Monte game where you hide the assets of one           |
| 11:32:51 | 20 | corporation with the other.  That is the road that the PSC               |
| 11:32:56 | 21 | started down, and that was what we had to defend.                         |
| 11:33:03 | 22 | Fortunately for the defense, rather than                                  |
| 11:33:07 | 23 | corporate flimflam or Three-card Monte, we found through                  |
| 11:33:13 | 24 | 200-and-some depositions and all of these documents that just            |
| 11:33:19 | 25 | the opposite had been true; that the Knauf group ran its                  |

| | | |
|---|---|---|
| 11:33:23 | 1 | companies as separately as any commonly owned group of |
| 11:33:31 | 2 | companies which has at its top a holding company could run. |
| 11:33:40 | 3 | The facts just wouldn't prove out for the PSC. |
| 11:33:45 | 4 | First of all, Knauf, the group bought an |
| 11:33:48 | 5 | existing company in China that was owned by somebody else and |
| 11:33:52 | 6 | then put capital into that company.  Into that company.  Built |
| 11:33:58 | 7 | that company.  The intercompany transactions between the |
| 11:34:06 | 8 | Chinese company and the rest of the Knauf group of companies |
| 11:34:09 | 9 | around the world were as clean as a Swiss watch.  It had |
| 11:34:15 | 10 | certified financial statements by PWC.  There were no cash |
| 11:34:24 | 11 | transactions which were not run through Chinese banks which |
| 11:34:33 | 12 | monitored those transactions as loans. |
| 11:34:39 | 13 | The company KPT is what the Chinese call a WFOE, |
| 11:34:45 | 14 | a wholly foreign-owned enterprise.  The Chinese government |
| 11:34:53 | 15 | watches these companies like a hawk because the Chinese |
| 11:34:56 | 16 | government demands that the profits stay in those companies in |
| 11:35:02 | 17 | order to be taxed.  If in China you mess around with those |
| 11:35:10 | 18 | laws, it's not like the United States where somebody sues you |
| 11:35:13 | 19 | in a class action.  You go to jail, and people have gone to |
| 11:35:18 | 20 | jail.  So there is no finagling of assets in wholly owned |
| 11:35:25 | 21 | foreign enterprises in China. |
| 11:35:28 | 22 | Finally, the biggest reason, one which frankly |
| 11:35:31 | 23 | shocked even the defense lawyers, is that the owners of KPT, |
| 11:35:37 | 24 | the upper-level Knauf holding companies, have never taken a |
| 11:35:45 | 25 | nickel out of that company by way of dividend, by way of |

repayment.  Nothing has ever come out; not a dollar, not a shekel, not a yuan, not an RMB.  Faced with that kind of a record, no plaintiff would ever be able to say that the corporate veil should be pierced from KPT to its parental companies.

Now, there is an interesting decision in this case which comes out of the European Court of Justice which I think has been averred to from time to time.  Under the antitrust/anticompetitive acts in the European Court of Justice, there was a finding that certain of the Knauf companies, those which operated in Western Europe -- about four countries, I think, in Western Europe -- were termed a single economic unit.  However, that had nothing to do with corporate veil piercing.  The moniker of *single economic unit* is only for the purpose, under the European antitrust laws, of assessing the size of a penalty which the defendants would have to pay.

The activity that resulted in this finding took place from 1992 to 1998 in Western Europe.  The Knauf group did not even acquire KPT until 1999, and the manufacturing activities that are at issue here did not occur until 2005.  So not only was the European Court of Justice -- and we put in an affidavit of a European antitrust expert in the record, uncontroverted, this had nothing to do with veil piercing.

The plaintiffs then turned to the issue of, well, was one of the other companies the agent of KPT in

| | | |
|---|---|---|
| 11:38:32 | 1 | connection with these sales?  It turns out that the Knauf group |
| 11:38:40 | 2 | does own a company in the United States, in Indiana.  It is an |
| 11:38:44 | 3 | insulation company, fiberglass batting insulation.  That looked |
| 11:38:49 | 4 | like an attractive candidate to the plaintiffs because there |
| 11:38:54 | 5 | the assets were in the United States.  There would be no |
| 11:38:56 | 6 | problem with seeking to enforce anything in China. |
| 11:39:07 | 7 | Fortunately for the plaintiffs' position, there |
| 11:39:09 | 8 | was a small connection between the Knauf Insulation company and |
| 11:39:13 | 9 | certain of the purchases of drywall made in the United States. |
| 11:39:20 | 10 | Now, that had to do with the InEx channel of distribution. |
| 11:39:24 | 11 | InEx was a customer of Knauf Insulation for its insulation. |
| 11:39:33 | 12 | When all building supplies post-Katrina and |
| 11:39:39 | 13 | Irene were in short supply in the United States, InEx came to |
| 11:39:44 | 14 | the people it knew at Knauf Insulation and said, You guys are |
| 11:39:51 | 15 | affiliated, we know, with the Knauf companies that make |
| 11:39:53 | 16 | drywall.  Can you help us out?  Can you get us an allocation? |
| 11:39:57 | 17 | The salespeople at the Knauf Insulation company |
| 11:40:04 | 18 | located in Indiana said, We will make a call. |
| 11:40:07 | 19 | And they did, and they put together the InEx |
| 11:40:10 | 20 | buyers with the Chinese KPT manufacturer/sellers and then bowed |
| 11:40:17 | 21 | out.  That does not make for agency liability under the law, |
| 11:40:25 | 22 | again, of any jurisdiction which touches this case.  It was |
| 11:40:28 | 23 | clearly a situation where there was a disclosed principal and |
| 11:40:38 | 24 | where the activities of the Indiana company, Knauf Insulation, |
| 11:40:41 | 25 | was merely doing a favor to industry customers who were in a |

| | |
|---|---|
| 11:40:51 | 1 |
| 11:40:54 | 2 |
| 11:40:57 | 3 |
| 11:41:00 | 4 |
| 11:41:05 | 5 |
| 11:41:11 | 6 |
| 11:41:16 | 7 |
| 11:41:23 | 8 |
| 11:41:28 | 9 |
| 11:41:35 | 10 |
| 11:41:41 | 11 |
| 11:41:49 | 12 |
| 11:41:54 | 13 |
| 11:42:01 | 14 |
| 11:42:10 | 15 |
| 11:42:14 | 16 |
| 11:42:18 | 17 |
| 11:42:24 | 18 |
| 11:42:27 | 19 |
| 11:42:30 | 20 |
| 11:42:38 | 21 |
| 11:42:45 | 22 |
| 11:42:53 | 23 |
| 11:42:56 | 24 |
| 11:43:04 | 25 |

bad way for getting drywall, which, of course, as Your Honor knows, that's how drywall could have been competitively priced, shipped all the way from China into the United States in the first place.  This is something that only happens when there's an anomaly in the market and a shortage like this.

Finally, if those were not enough defenses for the Knauf companies other than KPT, there are jurisdictional defenses.  Your Honor knows and everyone in this courtroom knows how the Taishan group has utilized the jurisdictional defenses all the way to the point of Your Honor's ruling and now their appeal to the Fifth Circuit.

KPT did not choose to assert jurisdictional defenses, and that is because it wished to stand behind its product.  So all of the *Sturm und Drang*, if I can use a German phrase, that we have with chasing the Taishan entities or that the plaintiffs have in chasing the Chinese entities did not exist with KPT.

The other Knauf companies were not the manufacturer of the KPT drywall, and they have perfectly legitimate jurisdictional defenses.  If a plaintiff were to achieve a judgment against, say, a German Knauf company which did not manufacture the product, which does not do business in any state of the United States, which never sold drywall into the United States, never marketed in the United States -- if a plaintiff were to get a judgment against one of the German

companies, that's just round one.  Even a final judgment after
appeals is round one because that judgment would have to be
taken to Germany, and not the way we take a judgment from one
state to the other, fill out an affidavit and docket the
judgment.  That is not what happens under the law of Germany.

Assuming a judgment under those circumstances, a
plaintiff would then have to begin an independent action in
Germany, and the first thing they would have to prove is that
the jurisdiction of the United States court was proper
jurisdiction as determined not by the law of the United States
but by the law of Germany.  So there is a trial *de novo* to
determine whether under German jurisdictional principles the
United States court had proper jurisdiction.

Well, as Your Honor knows, the jurisdiction is
based upon the same acts and practices that are necessary to
prove for piercing the corporate veil.  All of these defenses
would come back.  They would come back in a German court.  In
order to bring that action in a German court, the U.S. judgment
holder must post a bond.  That's because under the law of
Germany if you lose the action, you pay the other side's fees.
The loser pays in that country.  So this class would have to
come up with a necessary bond to pursue what I'm sure at that
point would be a multimillion-dollar judgment in Germany.
That's why I say that the defenses that the Knauf group could
have erected in these cases would have been almost

11:45:29   1   impenetrable, practically impenetrable.

11:45:36   2           I am a great reader of the Prussian philosopher

11:45:39   3   Karl von Clausewitz, who says, Entrench yourself behind strong

11:45:45   4   fortifications and force your enemy to seek a solution

11:45:49   5   elsewhere.

11:45:50   6           My client could have done that.  But rather than

11:45:55   7   do that and rather than stand on all of the defenses that this

11:45:59   8   peculiar situation offered it, it decided to do the right

11:46:12   9   thing.  At least from my point of view, this settlement is

11:46:15  10   exceedingly generous to this class.

11:46:18  11           Thank you, Your Honor.

11:46:19  12           **MR. GLICKSTEIN:**  Good morning, Your Honor.  Steve

11:46:31  13   Glickstein for Kaye Scholer on behalf of the Knauf defendants.

11:46:36  14   Mr. Miller and Mr. Mayesh put me last because they know I'm the

11:46:41  15   weakest hitter, so I'm batting ninth here.

11:46:47  16           Arnie generously thanked Kerry and myself and

11:46:53  17   Jay.  I just also wanted to mention my partner Greg Wallance,

11:46:57  18   who I think Your Honor knows was the architect of the pilot

11:47:02  19   program and saw it through its implementation for a long period

11:47:05  20   of time.  There were many others at Frilot and Kaye Scholer and

11:47:10  21   some in this courtroom.

11:47:12  22           **MR. LEVIN:**  Give him my regards and thanks.

11:47:19  23           **MR. GLICKSTEIN:**  My job, Your Honor, is to go through

11:47:24  24   the *Reed* factors and also to go through some of the objections,

11:47:27  25   but many times at a fairness hearing you tend to focus on the

|  |  |
|---|---|
| 11:47:35 | 1 |
| 11:47:40 | 2 |

objections instead of focusing on why the settlement is a good
settlement.

Russ's hero was Captain Marvel.  My hero
actually was my mom and dad.  My mom and dad always said focus
on the positive, and the positive really is what really a
decent and good settlement this is for the homeowners.

One and probably the most important *Reed* factor
is how does the recovery in the settlement compare to what
might be achieved in litigation?  We all know that settlements
are compromises, so you don't achieve everything through a
settlement that you could in litigation because there are risks
to litigation.  There are costs to litigation.

This is a settlement where because, as
Mr. Miller said and as Mr. Mayesh said, our clients wanted to
stand behind their product and do the right thing, the
homeowners got almost everything -- I would venture to say
everything that they are reasonably entitled to as a result of
this difficult situation.

The settlement provides that Knauf will pay to
fix the home and restore it to a new condition.  That is a
payment of 100 cents on the dollar of their property damage
claim.  And because, as Your Honor noted several times today,
the attorneys' fees come on top and not off the remediation
costs -- that means that the settlement class members, the
homeowners, don't have to pay their own costs, they don't have

| | | |
|---|---|---|
| 11:49:43 | 1 | to pay their lawyers -- every dollar that's going to |
| 11:49:47 | 2 | remediation is going to fix their home and it's going to be |
| 11:49:51 | 3 | restored.  So that is a fabulous result, I think, and it's a |
| 11:50:00 | 4 | result that our clients are proud of, that we stand behind.  We |
| 11:50:06 | 5 | want the homeowners to have their homes repaired.  We want them |
| 11:50:10 | 6 | to be able to move on with their lives. |
| 11:50:16 | 7 | In addition, as Mr. Miller said, there's the |
| 11:50:19 | 8 | Other Loss Fund to take care of economic loss.  That's actually |
| 11:50:29 | 9 | a $30 million contribution by Knauf.  On top of that |
| 11:50:36 | 10 | $30 million, there will be an allocation of the money that is |
| 11:50:42 | 11 | attributable to KPT drywall, 50 percent, from the global |
| 11:50:46 | 12 | settlement involving installers, builders, suppliers, and their |
| 11:50:50 | 13 | insurers.  That is going to be on top of the $30 million going |
| 11:50:54 | 14 | into the Other Loss Fund. |
| 11:50:56 | 15 | We have recently reached an agreement with InEx |
| 11:51:01 | 16 | and the PSC that an additional portion of money, depending on |
| 11:51:06 | 17 | the trial results that are upcoming, could come into the |
| 11:51:11 | 18 | Other Loss Fund from the InEx settlement.  That will be |
| 11:51:16 | 19 | available to address economic losses on top of the property |
| 11:51:24 | 20 | damage, which is already 100 percent paid for. |
| 11:51:33 | 21 | Much has been said about personal injury, and I |
| 11:51:37 | 22 | think other lawyers will talk much more about personal injury |
| 11:51:41 | 23 | than I will in terms of what the evidence is.  The bottom line |
| 11:51:47 | 24 | is while we don't believe and the government agencies -- |
| 11:51:56 | 25 | whether it be the CPSC or the EPA or the Centers for Disease |

| | |
|---|---|
| 11:51:59 | 1 |
| 11:52:04 | 2 |
| 11:52:08 | 3 |
| 11:52:13 | 4 |
| 11:52:16 | 5 |
| 11:52:23 | 6 |
| 11:52:27 | 7 |
| 11:52:30 | 8 |

1  Control or the Florida Department of Health or the Virginia
2  Department of Health -- don't believe that there is any
3  evidence of personal injury here, the Other Loss Fund does
4  provide a mechanism for folks who believe that they might have
5  a claim to try and prove it.  They have to prove it.  Their
6  experts would be subject to challenge, but it provides that
7  mechanism.  It's an outlet for them to try and prove that
8  claim.

9           So weighed against the defenses that Mr. Mayesh
10  talked about, this really is providing class members with full
11  and complete relief.  We know, of course, that the plaintiffs
12  and certainly Mr. Herman or Mr. Levin or anyone else on this
13  side of the table are not going to agree with everything that
14  Mr. Mayesh said.  They are not going to agree that it was
15  unforeseeable.  They are not going to agree that veils can't be
16  pierced.  They are not going to agree that they can't enforce
17  judgments.  But I think they will acknowledge that these are,
18  in fact, legitimate litigable defenses and that the plaintiffs
19  would face serious obstacles in attempting to overcome them and
20  that, in light of that, it was appropriate to reach reasonable
21  compromise instead of litigating it to the end, particularly in
22  light of the relief that is provided.

23           The other *Reed* factors, I think, are fairly
24  self-evident.  God knows, the length and duration and
25  difficulty of the negotiations, they were certainly

11:54:07  1    arm's-length.  I can't count how many times when, despite all
11:54:15  2    of the professionalism in the room, we were at loggerheads
11:54:19  3    because we reached impasses, but we went back at it and back at
11:54:23  4    it and back at it.
11:54:25  5                Nobody will argue about the complexity, expense,
11:54:26  6    and likely duration of this litigation.  It is something that
11:54:33  7    Your Honor noted at the outset, the extraordinary complexity
11:54:36  8    here due to the number of parties, the difficulty of the
11:54:40  9    issues, the fact that we have foreign defendants as well as
11:54:43  10   domestic defendants.
11:54:46  11               Nobody can argue seriously that this case was
11:54:51  12   not settled at an appropriate stage of the proceedings.  We are
11:54:57  13   not here with a settlement that was reached at the outset of
11:55:01  14   the case.  We are not here with a settlement that was reached
11:55:07  15   without inquiry, without discovery.  Some of the slides that
11:55:15  16   Arnie and Russ put up for Your Honor tell the story: the
11:55:19  17   hundreds of depositions; the *Germano* trial; the *Hernandez*
11:55:25  18   trial; the countless motions that were before Your Honor.  This
11:55:33  19   is a very hard-fought, toughly litigated case, and it was only
11:55:40  20   after all of the facts were discovered and reviewed and
11:55:43  21   analyzed by the parties that settlement was entered into.
11:55:50  22               I think the last *Reed* factor is what does the
11:55:58  23   class think about this.  I think this is where you get to
11:56:01  24   talking about opt-outs and objections.  The number of opt-outs
11:56:12  25   compared to the potential number of claims is very small.  We

are getting rescissions of opt-outs all the time as the
settlement is being explained perhaps to counsel and to the
homeowners.

To the Knauf settlement there were only
initially 11 objections, which is far less than a percent.
Three of those objections were resolved before we had to file
our response, so they are not addressed in our papers.  The
Amerson objection, the Hopper objection, and the Ladner
objection were withdrawn before our papers were due.  Since
that time two other objections have been withdrawn:  the Willis
objection and the Perricone objection.

In none of these objections were the homeowners
or their counsel paid off.  In some cases there were either
some ambiguities in the settlement or some questions that were
raised that required some additional language in the agreement.
I think that when we get through this process, Your Honor, in a
week or two we will file a supplemental agreement that contains
these changes, all of which are for the benefit of the class,
all of which are for the benefit of everyone, not for a
particular objector.  Then we will have the final agreement
ready for your approval.

So that leaves six objectors.  One of those six
is North River.  We didn't in our brief address North River's
objections specifically.  We adopt what the PSC and InEx have
said about them.  I believe, as Mr. Levin said, Mr. Nizialek

| | |
|---|---|
| 11:58:48 | 1 |
| 11:58:54 | 2 |
| 11:58:59 | 3 |
| 11:59:08 | 4 |
| 11:59:14 | 5 |
| 11:59:20 | 6 |
| 11:59:27 | 7 |
| 11:59:34 | 8 |
| 11:59:39 | 9 |
| 11:59:46 | 10 |
| 11:59:49 | 11 |
| 11:59:51 | 12 |
| 11:59:56 | 13 |
| 12:00:01 | 14 |
| 12:00:08 | 15 |
| 12:00:14 | 16 |
| 12:00:20 | 17 |
| 12:00:22 | 18 |
| 12:00:24 | 19 |
| 12:00:28 | 20 |
| 12:00:31 | 21 |
| 12:00:38 | 22 |
| 12:00:43 | 23 |
| 12:00:48 | 24 |
| 12:00:53 | 25 |

and Mr. Scott on behalf of InEx and Liberty Mutual will be discussing those objections.  I won't go any further with respect to that unless it's necessary on rebuttal.

The other five objections were mostly by individual homeowners who would have preferred to tweak one provision or another provision of the settlement.  None of them go to the heart of the fairness of the settlement here.  I would ask those homeowners to recognize, as we ask the Court to recognize, that at the end of the day, a settlement is a compromise.

While I believe it's fair to say that we have given, on the remediation claim, a hundred percent of what any homeowner could want and on other claims almost everything that any homeowner could want, there is some give-and-take in the process; and the Court should recognize that in order to get, sometimes the party also has to give.  The case law, of course, recognizes that.

We briefed all of those five.  I don't think it's necessary to repeat them here.  If Your Honor has any questions about them, I will.

So in conclusion, I will end with where I started.  Compared to the relief that could be obtained in litigation, this is a great result.  We at Knauf are very proud of what we have done, and we look forward to the day when all of these homeowners are back in brand-new homes and the problem

12:01:00  1    is completely fixed.  Thank you.

12:01:02  2               **THE COURT:**  Thank you.

12:01:06  3          InEx is the next person.

12:01:16  4          **MR. DUPLANTIER:**  Good morning, Your Honor.  Richard

12:01:18  5    Duplantier on behalf of Interior Exterior.  I assure you that I

12:01:21  6    am going to be a lot more brief than counsel that came before

12:01:25  7    me.

12:01:27  8          As the Court is aware, InEx is a Louisiana

12:01:31  9    company who is merely a distributor of the drywall of Knauf and

12:01:35 10    distributed some of the Taishan drywall that was found to be

12:01:39 11    defective years after they distributed the drywall.  I am not

12:01:43 12    going to discuss in detail, but I will say that I think

12:01:46 13    Mr. Mayesh very eloquently explained that this defect in this

12:01:51 14    drywall is a condition that could not have been discovered by

12:01:54 15    Interior Exterior nor should have been discovered by

12:01:57 16    Interior Exterior at the time that it was sold by the company.

12:02:01 17          We have continued to maintain significant

12:02:04 18    defenses to Interior Exterior's liability in this litigation;

12:02:09 19    but despite that, we have been part of the solution and are

12:02:13 20    proud to be a part of the solution.

12:02:15 21          From a timing perspective, I think there needs

12:02:18 22    to be some memories refreshed this morning.  The Court will

12:02:21 23    recall that Interior Exterior was an active participant in the

12:02:26 24    pilot remediation program.  Without our participation and the

12:02:30 25    participation of Banner in that pilot remediation program, that

| | | |
|---|---|---|
| 12:02:33 | 1 | program would not have begun and it would not have led to the |
| 12:02:37 | 2 | settlement. |
| 12:02:39 | 3 | More importantly, what the Court needs to recall |
| 12:02:41 | 4 | and I think counsel all need to recall was that Interior |
| 12:02:45 | 5 | Exterior was the first defendant to enter into a global |
| 12:02:48 | 6 | settlement on behalf of the customers who had bought drywall |
| 12:02:52 | 7 | through Interior Exterior.  That first settlement is what |
| 12:02:58 | 8 | allowed the entire process of settlement to begin and allowed |
| 12:03:01 | 9 | these homeowners to achieve the results of the settlement that |
| 12:03:05 | 10 | is ongoing right now.  The InEx settlement is now part of the |
| 12:03:11 | 11 | integral, overall resolution process which allows recovery by |
| 12:03:16 | 12 | these homeowners.  This is fair and reasonable settlement. |
| 12:03:25 | 13 | I'm not going to go into great detail on the |
| 12:03:28 | 14 | *Reed* factors, but I want to briefly touch on the six *Reed* |
| 12:03:30 | 15 | factors, one being the existence of fraud and collusion.  This |
| 12:03:33 | 16 | has been clearly an arm's-length negotiation. |
| 12:03:38 | 17 | The second factor being the complexity and the |
| 12:03:41 | 18 | duration of this litigation, clearly this has been a difficult, |
| 12:03:45 | 19 | complex, international litigation that has involved many |
| 12:03:50 | 20 | lawyers, many law firms, and many parties who have been |
| 12:03:53 | 21 | spending a significant amount of time around the world |
| 12:03:57 | 22 | conducting discovery. |
| 12:03:59 | 23 | That leads us to the next *Reed* factor, and |
| 12:04:01 | 24 | that's the stage of the litigation.  This has been a complex |
| 12:04:05 | 25 | adversarial process, and it's important for the Court to |

| | |
|---|---|
| 12:04:09 | 1 |
| 12:04:12 | 2 |
| 12:04:19 | 3 |
| 12:04:22 | 4 |
| 12:04:24 | 5 |
| 12:04:29 | 6 |
| 12:04:31 | 7 |
| 12:04:35 | 8 |
| 12:04:38 | 9 |
| 12:04:42 | 10 |
| 12:04:42 | 11 |
| 12:04:45 | 12 |
| 12:04:48 | 13 |
| 12:04:51 | 14 |
| 12:04:55 | 15 |
| 12:05:01 | 16 |
| 12:05:05 | 17 |
| 12:05:08 | 18 |
| 12:05:13 | 19 |
| 12:05:20 | 20 |
| 12:05:21 | 21 |
| 12:05:24 | 22 |
| 12:05:29 | 23 |
| 12:05:33 | 24 |
| 12:05:33 | 25 |

understand that discovery has been exhaustive in that regard. We are here today after having reviewed thousands of pages of records and conducted hundreds of depositions.

The probability of success, that's an important factor, and I think Mr. Glickstein and Mr. Mayesh did a very good job of explaining why there are limitations to the recovery by these homeowners. As it relates to Interior Exterior, the laws in Louisiana and the other states in which we conduct business provide Interior Exterior significant defenses.

Under the redhibition law, if they are unable to establish that Interior Exterior knew of the defect in this drywall, the recovery of the homeowners would be significantly limited. I think the Knauf defendants have done a great job of explaining why this defect was likely not discoverable by Interior Exterior at the time that it was sold.

Despite those obstacles to recovery, Interior Exterior entered into and assigned significant policy limits insurance to the PSC and to the homeowners for the settlement process.

The range of possible recovery, the fifth factor under the *Reed* case, I think Mr. Glickstein did a good job of explaining why these homeowners are getting almost full recovery.

As to the sixth factor, the opinions of the

| | | |
|---|---|---|
| 12:05:37 | 1 | absent class members, I think that the lack of objections to |
| 12:05:41 | 2 | this settlement significantly should lead this Court to the |
| 12:05:45 | 3 | conclusion that there are not a significant number of |
| 12:05:49 | 4 | objections to this or relevant objections to this particular |
| 12:05:53 | 5 | settlement.  In fact, the InEx settlement has only really one |
| 12:05:57 | 6 | objection, and that's by North River Insurance Company.  I want |
| 12:06:01 | 7 | to address that particular objection and some other issues very |
| 12:06:05 | 8 | briefly, Your Honor. |
| 12:06:06 | 9 | As the Court is aware, subsequent to entering |
| 12:06:09 | 10 | into the settlement in April of 2011, Interior Exterior has |
| 12:06:14 | 11 | entered into two amendments to our settlement agreement.  The |
| 12:06:17 | 12 | first amendment dealt with some procedural issues, but the |
| 12:06:19 | 13 | second amendment was more significant.  We felt that the second |
| 12:06:23 | 14 | amendment was necessary in order to preserve the InEx |
| 12:06:27 | 15 | settlement; that is, the tendering of certain excess policy |
| 12:06:33 | 16 | limits to Knauf depending on the result of the upcoming trial. |
| 12:06:37 | 17 | We are not seeking an order today that the |
| 12:06:41 | 18 | second amendment is binding against North River Insurance |
| 12:06:43 | 19 | Company.  We have not sought that as part of the process.  What |
| 12:06:47 | 20 | we seek is an order from the Court and a ruling from the Court |
| 12:06:51 | 21 | that the second amendment is simply fair under Rule 23, as we |
| 12:06:58 | 22 | have explained in our brief on that issue.  We believe that the |
| 12:07:00 | 23 | second amendment is appropriate to preserve this settlement and |
| 12:07:05 | 24 | to eliminate the potential that this entire process could be |
| 12:07:10 | 25 | terminated by Knauf at the time that the termination rights can |

| | | |
|---|---|---|
| 12:07:13 | 1 | be exercised.  We felt that it was appropriate, and we have |
| 12:07:16 | 2 | explained in our brief why that second amendment was |
| 12:07:19 | 3 | appropriate. |
| 12:07:22 | 4 | The PSC, our memorandum, and the Knauf |
| 12:07:25 | 5 | memorandum have set out completely why the second amendment and |
| 12:07:29 | 6 | the entire settlement process in general are reasonable.  There |
| 12:07:33 | 7 | was a real threat of termination by the Knauf defendants if we |
| 12:07:37 | 8 | did not enter into that second amendment. |
| 12:07:40 | 9 | Now, as to the North River objections, we have |
| 12:07:42 | 10 | two points.  Number one, we have not sought to make the second |
| 12:07:49 | 11 | amendment first.  We have not sought to make the second |
| 12:07:53 | 12 | amendment binding on North River, and they can continue to |
| 12:07:55 | 13 | maintain their rights under the terms of their policy. |
| 12:07:59 | 14 | Secondly and more importantly, Your Honor, |
| 12:08:02 | 15 | North River is not a class member in the Interior Exterior |
| 12:08:08 | 16 | settlement agreement.  As a result of their not being a class |
| 12:08:13 | 17 | member, they have no standing to object to our settlement |
| 12:08:17 | 18 | process. |
| 12:08:18 | 19 | So we are asking the Court to approve the second |
| 12:08:23 | 20 | amendment and to find that the entire settlement process is |
| 12:08:28 | 21 | fair and reasonable under the circumstances.  Thank you. |
| 12:08:31 | 22 | **THE COURT:**  Thank you very much. |
| 12:08:33 | 23 | Banner. |
| 12:08:36 | 24 | **MR. NIZIALEK:**  Your Honor, if I may add to that. |
| 12:08:39 | 25 | **THE COURT:**  Yes.  You are speaking for InEx? |

| | | |
|---|---|---|
| 12:08:40 | 1 | **MR. NIZIALEK:**  I am, Your Honor.  Good afternoon, |
| 12:08:44 | 2 | Your Honor.  Phil Nizialek for InEx.  I just want to add one |
| 12:08:48 | 3 | bit to Mr. Duplantier's argument, and that is I want to address |
| 12:08:53 | 4 | one of the objections North River has made to the InEx |
| 12:08:56 | 5 | settlement. |
| 12:08:57 | 6 | As you recall, the InEx settlement involved the |
| 12:08:59 | 7 | tender by our primary insurers, Arch and Liberty, of their |
| 12:09:01 | 8 | policy limits over four policy years and the assignment of |
| 12:09:05 | 9 | rights to certain policy limits of four North River policies |
| 12:09:09 | 10 | over those same policy years.  North River has raised an |
| 12:09:12 | 11 | objection that that assignment is not valid under the insurance |
| 12:09:17 | 12 | policy because of the anti-assignment clause in the North River |
| 12:09:21 | 13 | excess policies. |
| 12:09:22 | 14 | We would point the Court to our briefing on this |
| 12:09:25 | 15 | issue where it is clear that the Louisiana Supreme Court very |
| 12:09:27 | 16 | recently, in the *In Re*: *Katrina Breaches* cases, has held that |
| 12:09:32 | 17 | post-loss assignments of policy proceeds such as were done in |
| 12:09:37 | 18 | this settlement are indeed valid in the face of an |
| 12:09:41 | 19 | anti-assignment clause so long as that clause does not contain |
| 12:09:45 | 20 | an express and unambiguous prohibition of that assignment. |
| 12:09:50 | 21 | This is a post-loss assignment.  The North River |
| 12:09:53 | 22 | clause, which is quoted extensively in our briefing, does not |
| 12:09:57 | 23 | contain such an anti-assignment clause as would prohibit this |
| 12:10:02 | 24 | assignment.  We ask that the Court approve that settlement |
| 12:10:06 | 25 | notwithstanding that objection of North River.  Thank you. |

| | | |
|---|---|---|
| 12:10:09 | 1 | **THE COURT:**  Thank you very much for your input. |
| 12:10:14 | 2 | Banner. |
| 12:10:16 | 3 | **MR. SCOTT:**  Your Honor, may I be heard on the North |
| 12:10:18 | 4 | River objections to the InEx? |
| 12:10:19 | 5 | **THE COURT:**  You are speaking for? |
| 12:10:19 | 6 | **MR. SCOTT:**  Hugh Scott for Liberty Mutual.  I want to |
| 12:10:22 | 7 | address the exhaustion, if I may, briefly. |
| 12:10:24 | 8 | **THE COURT:**  Yes. |
| 12:10:33 | 9 | **MR. SCOTT:**  As Your Honor knows, the InEx settlement |
| 12:10:38 | 10 | agreement provides that as part of the order we ask Your Honor |
| 12:10:43 | 11 | to enter that there be a finding that the primary insurance |
| 12:10:46 | 12 | policies -- the Liberty Mutual policies and the Arch policies, |
| 12:10:49 | 13 | that Your Honor find those policies are exhausted.  We are |
| 12:10:52 | 14 | asking for that because we are paying our entire limits.  We |
| 12:10:55 | 15 | need that protection going forward to protect the primary |
| 12:11:01 | 16 | carriers from any future claims by the class members and by |
| 12:11:05 | 17 | InEx. |
| 12:11:08 | 18 | For example, if next year, God forbid, InEx were |
| 12:11:11 | 19 | to have some kind of calamity that caused an accident and they |
| 12:11:14 | 20 | were to seek insurance coverage, we need to have it clear from |
| 12:11:19 | 21 | the primary's point of view that our policies are exhausted |
| 12:11:22 | 22 | vis-à-vis InEx. |
| 12:11:24 | 23 | That's very important to us.  We have bargained |
| 12:11:26 | 24 | for that, and that's a key part of the arrangement.  Our |
| 12:11:30 | 25 | ability to withdraw from the settlement is contingent upon our |

| | |
|---|---|
| 12:11:35 | 1 |
| 12:11:39 | 2 |
| 12:11:42 | 3 |
| 12:11:45 | 4 |
| 12:11:47 | 5 |
| 12:11:51 | 6 |
| 12:11:56 | 7 |
| 12:12:02 | 8 |
| 12:12:07 | 9 |
| 12:12:10 | 10 |
| 12:12:15 | 11 |
| 12:12:18 | 12 |
| 12:12:23 | 13 |
| 12:12:25 | 14 |
| 12:12:28 | 15 |
| 12:12:32 | 16 |
| 12:12:34 | 17 |
| 12:12:38 | 18 |
| 12:12:42 | 19 |
| 12:12:46 | 20 |
| 12:12:50 | 21 |
| 12:12:51 | 22 |
| 12:12:54 | 23 |
| 12:13:00 | 24 |
| 12:13:04 | 25 |

getting that piece of the order and finding that the primary
coverage is exhausted.

THE COURT:  Is there any dispute of that?

MR. SCOTT:  Yes, unfortunately there is, Your Honor,
or I wouldn't be standing here.  I regret to have to stand
here.  North River did file an objection.  One of the grounds
of the objection was that North River says the primary policies
are not exhausted for two reasons.  One reason they say is that
we are paying the money into escrow, and that doesn't count as
a settlement which should count toward exhaustion because we
are just paying into escrow.  The second thing they say is that
we are paying money for so-called noncovered under the
insurance policy claims.

I note that North River makes those objections
notwithstanding the fact that North River is not a party to any
of the settlement agreements at all in this case and, I think,
lacks standing.  But since those objections are in the record
and they are crucial to the primary's continued participation
and we want this settlement very much to go forward, I wanted
to take just a minute to address those objections with the
Court.

The first objection, which is we are paying into
escrow so it's not a settlement, is disposed of very easily by
the recent -- not so recent, several decades old but
nevertheless good law -- Supreme Court ruling in the *Paretti*

|   | |
|---|---|
| 12:13:09 | 1 |
| 12:13:13 | 2 |
| 12:13:17 | 3 |
| 12:13:19 | 4 |
| 12:13:21 | 5 |
| 12:13:25 | 6 |
| 12:13:30 | 7 |
| 12:13:34 | 8 |
| 12:13:36 | 9 |
| 12:13:41 | 10 |
| 12:13:44 | 11 |
| 12:13:50 | 12 |
| 12:13:54 | 13 |
| 12:13:58 | 14 |
| 12:14:03 | 15 |
| 12:14:05 | 16 |
| 12:14:08 | 17 |
| 12:14:12 | 18 |
| 12:14:15 | 19 |
| 12:14:16 | 20 |
| 12:14:19 | 21 |
| 12:14:23 | 22 |
| 12:14:27 | 23 |
| 12:14:32 | 24 |
| 12:14:36 | 25 |

1  case where the Louisiana Supreme Court said that a primary

2  policy exhausts when the full limits are paid to settle a claim

3  that's been made against the insured.

4           It couldn't be clearer that that's what the

5  Supreme Court of Louisiana meant because they said, quote, It

6  is self-evident that an insurer which has settled for its

7  policy limits has exhausted, quote/unquote, its limit of

8  liability under the policy.

9           I agree with the question you tendered about

10 what's the issue here.  We don't see that there's an issue, but

11 there's Supreme Court of Louisiana precedent squarely in place,

12 and that has been upheld and enforced or followed and enforced

13 by at least three intermediate appellate court decisions since

14 the *Paretti case*.  They are all cited in our brief.  I'm not

15 going to burden you with the citations.

16           The point simply is it's not as if the insurers

17 here, the primaries here are simply taking our policy limits

18 and putting them in a bucket and saying, Here, you go do

19 something with it.

20           That's not the situation that the *Paretti case*

21 contemplated in saying exhaustion pertains.  There's exhaustion

22 here because not only have we paid the policy limits, but we

23 have obtained a full release for our policyholder.  That is

24 what the policy is supposed to do, to protect the policyholder.

25 We have obtained those releases, and under *Paretti* we are

12:14:40  1  exhausted.

12:14:41  2          The fact is that we are paying into something

12:14:45  3  called an escrow account.  That doesn't change the substance of

12:14:49  4  what's happening here.  We are paying contested claims.  This

12:14:52  5  is the way it's done.  It's the only way it can be done in

12:14:56  6  these kinds of complex cases.  Your Honor is familiar that in

12:14:59  7  the *Vioxx* case there was an escrow fund.

12:15:03  8          When we pay the money into the escrow fund, if

12:15:06  9  Your Honor approves this settlement, we, the insurers, will

12:15:10  10  have lost all control over it.  It will be under the Court's

12:15:14  11  jurisdiction.  You will decide who gets the money and how it

12:15:17  12  gets paid out.  This is not a situation where we have simply

12:15:21  13  gone to somebody else and said, Hey, here's some money in

12:15:24  14  escrow.  We are taking a walk.  That's absolutely not what we

12:15:28  15  have done here.

12:15:29  16          The second point briefly, Your Honor, the notion

12:15:30  17  that we are paying noncovered claims and so we shouldn't have

12:15:34  18  exhaustion here is refuted by the text of the provision in the

12:15:41  19  InEx settlement agreement.  Section 1.16 makes clear that what

12:15:48  20  the settlement proceeds, the full policy limits are going

12:15:51  21  towards, if they are going towards the payment of claims and in

12:15:55  22  settlement, one of the things we can do under policies is -- we

12:15:57  23  can do two things.  We can handle a claim and make payments for

12:16:02  24  covered costs or we can settle a claim.  If the settlement is

12:16:06  25  reasonable, fair, and appropriate, as we ask Your Honor to find

12:16:09    1    here, then that settlement discharges the obligation to pay
12:16:16    2    primary limits just in the same way, a different kind of
12:16:20    3    payment though.  We are paying to settle contested claims, and
12:16:24    4    all of the payments are going to settle contested claims.
12:16:29    5             One point about that is that in the provision,
12:16:30    6    Section 1.16, the settlement agreement allows the primary
12:16:40    7    carriers to take a credit toward their payment of the full
12:16:44    8    policy limits, a credit to reimburse themselves for the
12:16:48    9    $100,000 that the primary carriers advanced towards notice
12:16:52   10    costs in the case.  We think those expenses would appropriately
12:16:57   11    count toward exhaustion.
12:17:00   12             To get that issue off the table and simplify the
12:17:03   13    matter, in our brief Arch and Liberty Mutual have waived their
12:17:07   14    right to recoup the advancement they made towards notice costs.
12:17:13   15    In effect, essentially we are tossing another $100,000 into the
12:17:18   16    settlement pot so it's absolutely clear under Section 1.16 that
12:17:22   17    every dime that we are paying is going towards settlement of a
12:17:25   18    contested claim.
12:17:27   19             Now, to the extent that North River is saying,
12:17:32   20    Well, maybe the people that get this money are going to take
12:17:38   21    the money and they are going to use it to replace the drywall,
12:17:42   22    and under the insurance policies replacement costs of the
12:17:46   23    product itself may not be covered -- in other words, to the
12:17:50   24    extent North River raises technical objections to what this is
12:17:53   25    being paid for, those have nothing to do with what's happening

| | |
|---|---|
| 12:17:56 | 1 |
| 12:18:02 | 2 |
| 12:18:05 | 3 |
| 12:18:09 | 4 |
| 12:18:14 | 5 |
| 12:18:21 | 6 |
| 12:18:23 | 7 |
| 12:18:26 | 8 |
| 12:18:31 | 9 |
| 12:18:36 | 10 |
| 12:18:40 | 11 |
| 12:18:44 | 12 |
| 12:18:47 | 13 |
| 12:18:51 | 14 |
| 12:18:54 | 15 |
| 12:18:58 | 16 |
| 12:19:01 | 17 |
| 12:19:05 | 18 |
| 12:19:10 | 19 |
| 12:19:13 | 20 |
| 12:19:17 | 21 |
| 12:19:21 | 22 |
| 12:19:26 | 23 |
| 12:19:30 | 24 |
| 12:19:31 | 25 |

here because we are not handling claims and paying expenses as
the invoices come in.  We are making a settlement of a
contested claim, and every penny of the primary policies are
going towards that.  So we think that it is absolutely clear
that the full amount should be credited towards exhaustion of
the policies.

Your Honor, you have to take a step back here, I
think, and look at what's going on in the big picture, not just
the InEx settlement.  The InEx settlement is one part of a
complex, interwoven set of settlements that are all
interdependent here.  North River Insurance Company is a party
to not one of those settlements.  North River, however, has
come in here with a three-page objection in which they are
saying that the InEx settlement should not be approved because
the primary carriers haven't exhausted their coverage, and they
are seeking a finding that we have exhausted our coverage.

I suggest to the Court that on the merits that
objection is absolutely baseless, and we ask the Court to deny
that objection and not allow it because to allow that objection
would in effect be to destroy the promise of relief for all of
the victims here.  We think that North River has no standing to
be making that kind of an objection, and we ask the Court to
not let that kind of result happen here.

THE COURT:  Thank you very much.

Let's take L&W at this point, and then we will

| | | |
|---|---|---|
| 12:19:36 | 1 | break for lunch and come back and do Banner and global. |
| 12:19:38 | 2 | **MR. HERMAN:**  May I approach, Your Honor, with |
| 12:19:40 | 3 | counsel? |
| 12:19:56 | 4 | **THE COURT:**  Do you want this on the record? |
| 12:19:59 | 5 | **MR. HERMAN:**  It can be.  It has no substance.  It's a |
| 12:20:03 | 6 | procedural matter. |
| 12:20:04 | 7 | **THE COURT:**  It's logistics. |
| 12:20:05 | 8 | (Bench conference off the record.) |
| 12:20:35 | 9 | **THE COURT:**  L&W, anything? |
| 12:20:36 | 10 | **MR. CONNER:**  May it please the Court.  Your Honor, |
| 12:20:36 | 11 | David Conner for L&W Supply and USG Corporation.  I will be |
| 12:20:41 | 12 | very brief.  Thank you for the opportunity of addressing the |
| 12:20:44 | 13 | Court this morning. |
| 12:20:45 | 14 | On March 19, 2012, the PSC, USG Corporation, |
| 12:20:48 | 15 | L&W, and the Knauf defendants entered a settlement agreement |
| 12:20:54 | 16 | with respect to KPT drywall that was sold or supplied by L&W. |
| 12:20:59 | 17 | Although the number of homes with KPT drywall supplied by L&W |
| 12:21:05 | 18 | is relatively small, L&W is very proud to be a part of this |
| 12:21:09 | 19 | resolution. |
| 12:21:11 | 20 | The L&W settlement is an integral part of the |
| 12:21:15 | 21 | Knauf settlement, and that settlement has already been |
| 12:21:17 | 22 | adequately described to you by Mr. Levin, Mr. Miller, and |
| 12:21:19 | 23 | Mr. Glickstein. |
| 12:21:21 | 24 | Under the L&W settlement, the homeowner who has |
| 12:21:25 | 25 | KPT drywall supplied by L&W has their home remediated or |

| | |
|---|---|
| 12:21:30 | 1 |
| 12:21:34 | 2 |
| 12:21:39 | 3 |
| 12:21:44 | 4 |
| 12:21:48 | 5 |
| 12:21:51 | 6 |
| 12:21:52 | 7 |
| 12:21:54 | 8 |
| 12:21:58 | 9 |
| 12:21:59 | 10 |
| 12:22:03 | 11 |
| 12:22:05 | 12 |
| 12:22:10 | 13 |
| 12:22:14 | 14 |
| 12:22:18 | 15 |
| 12:22:22 | 16 |
| 12:22:26 | 17 |
| 12:22:30 | 18 |
| 12:22:34 | 19 |
| 12:22:39 | 20 |
| 12:22:41 | 21 |
| 12:22:45 | 22 |
| 12:22:48 | 23 |
| 12:22:51 | 24 |
| 12:22:52 | 25 |

qualifies for the Knauf settlement; and then under the L&W settlement, L&W makes a contribution toward those costs.  It's really just that simple.  The L&W homeowners' homes will be resolved according to the Knauf agreement, and L&W makes its contribution toward the settlement or the resolution of the affected property.

I respectfully submit, Your Honor, that the Rule 23 and *Reed* factors are met.  Those have been adequately discussed by other counsel.

With respect to the L&W settlement, I think the proof is in the result: the homeowners' homes will be remediated, their expenses paid, their attorneys' fees paid.

On June 11, 2012, this Court granted preliminary approval to the L&W settlement.  No objections were filed before that hearing.  More immediate and important today, no objections were filed to the L&W settlement before the hearing today, and there are only seven purported opt-outs, one of which has purportedly already tried to opt back in.

Therefore, Your Honor, we respectfully request that this Court find the L&W settlement fair, reasonable, and adequate, that it was entered into in good faith, without collusion, and that this Court approve the settlement pursuant to Federal Rule 23(e).

Thank you, Your Honor.

**THE COURT:**  I know we have got some plane issues.

| | | |
|---|---|---|
| 12:22:56 | 1 | What's the situation with Banner? |
| 12:23:04 | 2 | **MR. PANAYOTOPOULOS:**  Whatever the Court prefers is |
| 12:23:09 | 3 | fine with us, Your Honor. |
| 12:23:11 | 4 | **THE COURT:**  The Court will come back in an hour.  We |
| 12:23:13 | 5 | will stand in recess until 1:30. |
| 12:23:15 | 6 | (Lunch recess.) |
| 12:23:15 | 7 | * * * |
| 12:23:16 | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 12:23:16 | 1  | **AFTERNOON SESSION** |
| 12:23:16 | 2  | **(November 13, 2012)** |
| 13:28:08 | 3  | (The following proceedings were held in open court.) |
| 13:33:02 | 4  | **THE COURT:**  Be seated, please.  Good afternoon, |
| 13:33:02 | 5  | ladies and gentlemen.  We have two more supporters of the |
| 13:33:05 | 6  | program. |
| 13:33:06 | 7  | Banner. |
| 13:33:10 | 8  | **MR. PANAYOTOPOULOS:**  Good afternoon, Your Honor. |
| 13:33:13 | 9  | Nick Panayotopoulos, also known as "Mike Papantonio." |
| 13:33:21 | 10 | **MR. LEVIN:**  I was in another courtroom, Your Honor. |
| 13:33:26 | 11 | **MR. PANAYOTOPOULOS:**  Apparently Mr. Levin can't tell |
| 13:33:29 | 12 | Greek lawyers apart.  It's not like we have been litigating |
| 13:33:35 | 13 | against each other for a couple years, right? |
| 13:33:37 | 14 | Your Honor, I'm here on behalf of Banner Supply |
| 13:33:43 | 15 | and certain other Banner entities.  Mr. Peterson here is on |
| 13:33:48 | 16 | behalf of Banner Supply, Port St. Lucie, and Scott Gehring came |
| 13:33:55 | 17 | up for the hearing on behalf of the company today. |
| 13:33:57 | 18 | The Court obviously knows the laws and has been |
| 13:34:00 | 19 | involved in the litigation involving Banner for a long time. |
| 13:34:05 | 20 | Banner has gone to trial.  Banner has been in depositions, has |
| 13:34:12 | 21 | progressed in this litigation for a long time.  We are |
| 13:34:16 | 22 | advocating that the Court approve the settlement agreement that |
| 13:34:21 | 23 | was reached with the PSC on the grounds that it's the best |
| 13:34:25 | 24 | available alternative for the Banner-related homeowners as well |
| 13:34:29 | 25 | as every other entity that was involved in the Banner Supply |

| | | |
|---|---|---|
| 13:34:32 | 1 | chain.  The settlement avoids the delays that are involved with |
| 13:34:40 | 2 | litigation, and people can wrap it up and move on. |
| 13:34:45 | 3 | The expenses involved in the litigation, |
| 13:34:47 | 4 | obviously, the Court is familiar with.  I'm going to quickly go |
| 13:34:50 | 5 | on since everybody has heard a lot of this related to other |
| 13:34:54 | 6 | entities that are independent, Your Honor, but obviously a lot |
| 13:34:56 | 7 | of factors, a lot of the same issues come up, and so the Court |
| 13:35:00 | 8 | has already heard about the arguments. |
| 13:35:02 | 9 | Under the *Reed* case, for the six factors, |
| 13:35:05 | 10 | obviously there's no fraud or collusion.  We fought pretty hard |
| 13:35:09 | 11 | with our adversaries and came to what we believed was in the |
| 13:35:13 | 12 | best interest of our clients. |
| 13:35:15 | 13 | The complexity, expense, and duration of the |
| 13:35:19 | 14 | litigation, other counsel has already spoken about it.  It |
| 13:35:21 | 15 | equally applies to Banner.  I'm not going to take up the |
| 13:35:25 | 16 | Court's time with that. |
| 13:35:26 | 17 | Stage of the proceedings and amount of discovery |
| 13:35:29 | 18 | completed, again, we have discussed it. |
| 13:35:31 | 19 | Probability of success on the merits, I want to |
| 13:35:33 | 20 | touch on that a little bit because it's a compromise.  As |
| 13:35:38 | 21 | Mr. Glickstein mentioned earlier, there's pluses and minuses |
| 13:35:41 | 22 | that go into the process of deciding whether a settlement is |
| 13:35:44 | 23 | best.  In this case, unlike some of the other defendants that |
| 13:35:49 | 24 | have come to the settlement table, Banner and in particular |
| 13:35:52 | 25 | Mr. Peterson here fought very hard to get Banner's insurers to |

13:35:57   1    the table.  In spite of the numerous defenses that everyone
13:36:00   2    knows about that have been involved and the various courts
13:36:03   3    finding that there is no coverage, Banner was able to negotiate
13:36:07   4    with the insurers and the PSC to bring them to the settlement
13:36:11   5    table.
13:36:12   6            If the settlement doesn't work out -- and
13:36:14   7    there's still the potential for our settlement, regardless of
13:36:17   8    what happens with the Court's opinion about approving or not
13:36:20   9    approving, because of certain opt-outs that have not yet opted
13:36:24   10   in, that our settlement could still go south.  We believe it's
13:36:27   11   the best available remedy to the homeowners and everybody
13:36:32   12   involved in the process.
13:36:34   13           The alternative for Banner, after tendering all
13:36:37   14   its insurance assets for this settlement, is unfortunately
13:36:41   15   likely going to be bankruptcy.  If this deal goes south,
13:36:46   16   there's going to be a lot less money available for the people
13:36:50   17   that are claiming against Banner.  It is, I think, to a degree
13:36:56   18   of certainty that's very, very high that if we go with the
13:37:01   19   other option, it's not going to be as favorable for the
13:37:04   20   plaintiff homeowners or the other plaintiffs against Banner.
13:37:08   21           In addition to the expenses and the additional
13:37:10   22   costs of litigation, there's the potential that something
13:37:14   23   happens with the insurance money.  Chartis counsel, one of the
13:37:19   24   insurers, is here, and she can speak on behalf of Chartis.  But
13:37:24   25   as far as Banner is concerned, the plaintiffs get a big benefit

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
| 13:37:27 | 1 | out of what Banner did to bring the insurers to the negotiating |
| 13:37:30 | 2 | table. |
| 13:37:34 | 3 | We have got about 88 homeowner opt-outs right |
| 13:37:39 | 4 | now, Your Honor.  A number of people have opted back in. |
| 13:37:41 | 5 | There's thousands of claimants against Banner, and out of those |
| 13:37:45 | 6 | we have got only one objection that's remaining.  That one |
| 13:37:49 | 7 | objection by Haseltine is not even truly an objection; it's |
| 13:37:53 | 8 | more like a complaint.  It's in the nature of a complaint that |
| 13:37:57 | 9 | it's insufficient money:  We would like to get more money. |
| 13:38:00 | 10 | I would like to do a lot of things, Your Honor. |
| 13:38:01 | 11 | Unfortunately, in the situation that we are in, the pot has |
| 13:38:06 | 12 | been maximized.  It's up to the Court now to decide how to |
| 13:38:10 | 13 | divide those funds amongst the different people that are |
| 13:38:13 | 14 | claiming.  We believe that having this Court to go through that |
| 13:38:17 | 15 | process is a lot fairer and a lot more equitable than having |
| 13:38:23 | 16 | willy-nilly trials happen and one plaintiff goes first, another |
| 13:38:26 | 17 | plaintiff goes next, and some people recover and some do not, |
| 13:38:29 | 18 | or through the bankruptcy option that is obviously going to be |
| 13:38:32 | 19 | the more expensive. |
| 13:38:37 | 20 | There remains a possible recovery.  I believe |
| 13:38:39 | 21 | Mr. Peterson will cover this as well.  Litigation carries a lot |
| 13:38:44 | 22 | of risks.  They may succeed.  They may not.  This is a |
| 13:38:49 | 23 | compromise.  The opinion of class counsel and class |
| 13:38:57 | 24 | representatives, obviously, the folks that are involved, the |
| 13:39:03 | 25 | vast majority has opined that this is in the best interest of |

| | | |
|---|---|---|
| 13:39:05 | 1 | the plaintiffs and all involved.  Again, there's only one |
| 13:39:08 | 2 | objection.  I don't think, frankly, it even qualifies as an |
| 13:39:12 | 3 | objection. |
| 13:39:12 | 4 | The opt-outs have also spoken.  If they don't |
| 13:39:15 | 5 | quickly move to opt back in, they are putting the entire deal |
| 13:39:20 | 6 | at risk.  I think it's time for their attorneys and the |
| 13:39:23 | 7 | opt-outs to think very hard about what they are putting at risk |
| 13:39:27 | 8 | in the Banner settlement for both the homeowners and everybody |
| 13:39:30 | 9 | else involved. |
| 13:39:33 | 10 | That's all I have, Your Honor.  The deal is |
| 13:39:38 | 11 | supported by class counsel and the vast majority of the folks |
| 13:39:42 | 12 | for a reason:  It's a good deal, and it makes sense for folks. |
| 13:39:44 | 13 | The alternative is a pretty dire one, and we hope not to go |
| 13:39:48 | 14 | there.  We would appreciate it if the Court would approve the |
| 13:39:50 | 15 | settlement. |
| 13:39:50 | 16 | THE COURT:  As I mentioned in the past, this case is |
| 13:39:53 | 17 | unique in the sense that there are so many defendants, but I do |
| 13:39:56 | 18 | recognize that a lot of the defendants are small suppliers and |
| 13:40:00 | 19 | mom-and-pop installers, somebody who's hanging sheetrock. |
| 13:40:07 | 20 | While that might be somebody who is a target, in actual |
| 13:40:10 | 21 | practice the problem is other than potential insurance |
| 13:40:14 | 22 | proceeds, there's nothing there behind it, which is |
| 13:40:16 | 23 | particularly true with the installers.  I've seen some of these |
| 13:40:20 | 24 | installers.  They don't work for anybody.  They install |
| 13:40:24 | 25 | sheetrock in their spare time or as a job or as a profession. |

| | | |
|---|---|---|
| 13:40:31 | 1 | They really are just people who install sheetrock. |
| 13:40:35 | 2 | MR. PANAYOTOPOULOS:  As the Court knows, the insurers |
| 13:40:39 | 3 | have been very successful in the litigation.  Right now they |
| 13:40:42 | 4 | are in the compromise mode, but if that changes, I assume they |
| 13:40:45 | 5 | are going to take a different position. |
| 13:40:47 | 6 | Thank you, Your Honor. |
| 13:40:48 | 7 | MR. PETERSON:  Good afternoon, Your Honor.  Mike |
| 13:40:49 | 8 | Peterson on behalf of the Banner entities or, as Mr. Levin |
| 13:40:52 | 9 | refers to me, "Mike Papantonio." |
| 13:40:55 | 10 | MR. LEVIN:  I didn't call you that. |
| 13:40:55 | 11 | MR. PETERSON:  I would have thought after $53 million |
| 13:40:57 | 12 | he would know my name.  Anyway, Your Honor -- |
| 13:41:02 | 13 | MR. HERMAN:  You didn't pay enough. |
| 13:41:04 | 14 | MR. PETERSON:  I'm beginning to realize that. |
| 13:41:08 | 15 | Judge, one of the things that's become |
| 13:41:10 | 16 | abundantly clear in the litigation is that Banner has no |
| 13:41:12 | 17 | assets, but don't take our word for it.  The Court is very well |
| 13:41:17 | 18 | aware that the PSC has basically conducted extensive due |
| 13:41:21 | 19 | diligence in connection with Banner's assets, and they reached |
| 13:41:24 | 20 | the inescapable conclusion that we just don't have anything. |
| 13:41:28 | 21 | This Court has said many times in open court, in front of all |
| 13:41:31 | 22 | the folks that are in this room and those that are on the |
| 13:41:34 | 23 | phone, that you can't squeeze blood from a stone.  That's |
| 13:41:37 | 24 | precisely where we are at. |
| 13:41:39 | 25 | You know the fights we have had with our |

13:41:41  1   carriers to be able to amass and come to the table with all of
13:41:45  2   our insurance money.  We did that.  That's what we have.
13:41:48  3          Judge, I would also like to point out that the
13:41:51  4   plaintiffs who remain in the Banner MDL settlement will never
13:41:54  5   recover more than they will under the auspices of this Court.
13:41:59  6   It's through a lot of hard work and diligence amongst all the
13:42:03  7   parties here that we have been able to formulate a settlement
13:42:06  8   agreement that provides the maximum that we can provide,
13:42:09  9   meaning the Banner entities, to these folks.  I hope that they
13:42:13  10  realize that.
13:42:14  11         Judge, one final point.  If you ask any of the
13:42:17  12  trial lawyers -- and there are great ones in this room -- they
13:42:23  13  will tell you there's an extreme risk in trial and in taking a
13:42:26  14  case to trial and trying a case to verdict.  A good example of
13:42:29  15  this within the context of the Chinese drywall cases is a case
13:42:34  16  that was actually tried to verdict in Fort Myers this last week
13:42:38  17  called the *Honus* case.  In that case -- it was against a
13:42:41  18  supplier similar to Banner -- the plaintiff alleged damages
13:42:44  19  associated with Chinese drywall as well as personal injury.
13:42:47  20  The jury came back with a verdict of $6,000 in total damages
13:42:53  21  awardable to the plaintiffs and awarded them nothing on the
13:42:56  22  personal injury claims.
13:42:59  23         As a result of certain monies that were
13:43:01  24  contributed by other defendants that acted as a setoff to the
13:43:04  25  verdict and an offer of judgment that was actually served, it

13:43:07  1  may be likely that the plaintiffs will actually pay the

13:43:09  2  defendants' attorneys' fees and costs.

13:43:12  3         Mr. Panayotopoulos discussed briefly the

13:43:18  4  situation with our opt-outs.  I would suggest very strongly to

13:43:24  5  our opt-outs that they consider and evaluate what has been put

13:43:26  6  on the table very seriously because, as we sit here today, this

13:43:30  7  may be their best day insofar as their potential recovery for

13:43:34  8  Chinese drywall-related claims.

13:43:36  9         Thank you, Your Honor.

13:43:36  10         **THE COURT:**  I might mention too, just so that

13:43:39  11  everybody at least has all the facts and can consider things,

13:43:45  12  one thing that the MDL panel did was to assign the cases to

13:43:52  13  this Court for resolution, but they also decided not to assign

13:44:02  14  the coverage cases to the Court.  So the coverage cases are

13:44:08  15  spread throughout maybe 26 states.

13:44:11  16         The difficulty to some extent -- or an

13:44:16  17  advantage, let me put it that way, of having one court look at

13:44:20  18  the matter is that you have some uniformity of result.  Whether

13:44:24  19  you like it or dislike it, at least you know that is the

13:44:28  20  result.

13:44:29  21         The problem with multiple courts dealing with

13:44:34  22  coverage is oftentimes you get a difference of opinions

13:44:39  23  throughout the court system.  That in itself presents problems

13:44:46  24  from the lawyers' standpoint.  There are the advantages and

13:44:50  25  disadvantages, but it presents the uncertainty there, and that

| | | |
|---|---|---|
| 13:44:54 | 1 | oftentimes slows matters, if not defeats matters, because you |
| 13:45:00 | 2 | look at the cases that are favorable to you and your opponent |
| 13:45:04 | 3 | looks at the cases that are favorable to them and nothing |
| 13:45:08 | 4 | happens.  That's at least something that has to be plugged into |
| 13:45:14 | 5 | your thought process. |
| 13:45:19 | 6 | We are finished with Banner. |
| 13:45:22 | 7 | **MS. SHARMA:**  Your Honor, Renita Sharma on behalf of |
| 13:45:27 | 8 | Chartis.  I'll be extremely brief. |
| 13:45:29 | 9 | As both Mr. Peterson and Mr. Panayotopoulos |
| 13:45:31 | 10 | mentioned, Chartis has tendered its available limits in support |
| 13:45:35 | 11 | of this settlement in spite of the defenses available to it. |
| 13:45:35 | 12 | Therefore, the complexity of litigation avoided by this |
| 13:45:40 | 13 | settlement is not just the complexity of litigation between the |
| 13:45:42 | 14 | plaintiffs and Banner, but additionally the complexities of |
| 13:45:47 | 15 | risks inherent in any litigation regarding Banner's insurance |
| 13:45:51 | 16 | assets.  For that reason and with the support of the other *Reed* |
| 13:45:54 | 17 | factors that Mr. Panayotopoulos discussed, Chartis joins Banner |
| 13:45:59 | 18 | and the PSC in seeking final approval. |
| 13:46:03 | 19 | **THE COURT:**  Thank you very much. |
| 13:46:05 | 20 | Global.  First tell us, for the record, who the |
| 13:46:11 | 21 | global is. |
| 13:46:14 | 22 | **MR. PIPES:**  Your Honor, Minor Pipes on behalf of the |
| 13:46:15 | 23 | participating defendants and participating insurers in the |
| 13:46:19 | 24 | global settlement reached with the PSC. |
| 13:46:21 | 25 | The global settlement is a compilation of over |

|          |    |                                                                        |
|----------|----|------------------------------------------------------------------------|
| 13:46:25 | 1  | 700 defendants.  It is made up of builders, installers, and            |
| 13:46:27 | 2  | suppliers around the country as well as over a hundred of their        |
| 13:46:32 | 3  | insurers.  So what it is is a compilation of, as they call it,         |
| 13:46:36 | 4  | everybody else.                                                        |
| 13:46:39 | 5  | You have heard from all of the suppliers who                           |
| 13:46:41 | 6  | have stepped up here and told you about their rank.  These are         |
| 13:46:44 | 7  | all companies that directly dealt with either the manufacturer,       |
| 13:46:48 | 8  | Knauf or Taishan, or someone who dealt with those companies to         |
| 13:46:53 | 9  | bring the product into this country and then to sell that              |
| 13:46:56 | 10 | product.                                                               |
| 13:46:57 | 11 | The people in my deal are for the most part                            |
| 13:47:00 | 12 | suppliers but lower on the chain.  They are not any of what I          |
| 13:47:04 | 13 | call the big four -- L&W, InEx, Venture, Banner -- which each          |
| 13:47:10 | 14 | have their own deals, who had extensive dealings with the              |
| 13:47:14 | 15 | Chinese companies, but instead they are usually subsuppliers or        |
| 13:47:18 | 16 | somebody who somehow ended up with a much smaller amount of            |
| 13:47:21 | 17 | drywall.                                                               |
| 13:47:21 | 18 | Builders around the country, a large portion of                        |
| 13:47:25 | 19 | the large builders -- we call them remediating builders --             |
| 13:47:27 | 20 | chose to remediate houses.  So they have a few houses they were        |
| 13:47:31 | 21 | unable to remediate and participate in, but for the most part          |
| 13:47:34 | 22 | those large blocks of homes that are in the builder camp are           |
| 13:47:38 | 23 | not included in this, and then there's the installers that are         |
| 13:47:41 | 24 | not released in the entities.                                          |
| 13:47:45 | 25 | So I wanted to start by again thanking                                 |

13:47:47  1  Your Honor as well as all of the other state court and federal
13:47:50  2  court judges around the country.  I would say that out of the
13:47:53  3  defendant participating installer group, we are probably the
13:47:57  4  most likely to have been litigating around the country in all
13:48:00  5  of those forums that were gracious enough to work with
13:48:03  6  Your Honor on these issues.
13:48:05  7      Obviously, liaison counsel on all sides have
13:48:08  8  been extremely professional and courteous and even the
13:48:11  9  objectors themselves.  We appreciate that work.
13:48:14  10     In looking at the *Reed* factors, I don't think
13:48:17  11  there's any question there's no fraud or collusion here.  The
13:48:21  12  builder and installer settlement, or global as it's called,
13:48:25  13  started with Your Honor ordering all of the parties to get
13:48:29  14  together and talk.  That happened in March 2010.  Your Honor
13:48:33  15  was gracious enough to allow us to meet with the
13:48:36  16  Court-appointed mediator at John Perry's office and to come up
13:48:41  17  with a proposal on how to have that conversation.
13:48:43  18     Those conversations began.  It ultimately
13:48:47  19  resulted in what was a confidential mediation program where
13:48:52  20  there was an agreement reached with the PSC on what number it
13:48:56  21  would take to resolve those portions of the liability and then
13:48:59  22  to see how many of the 1,000 defendants involved were
13:49:03  23  interested in participating in that process.
13:49:05  24     It was a long, laborious process.  You heard the
13:49:09  25  expense; it was $2.9 million when we were all through, between

| | |
|---|---|
| 13:49:12 | 1 |
| 13:49:16 | 2 |
| 13:49:20 | 3 |
| 13:49:23 | 4 |
| 13:49:27 | 5 |
| 13:49:31 | 6 |
| 13:49:34 | 7 |
| 13:49:38 | 8 |
| 13:49:42 | 9 |
| 13:49:45 | 10 |
| 13:49:49 | 11 |
| 13:49:53 | 12 |
| 13:49:57 | 13 |
| 13:50:01 | 14 |
| 13:50:05 | 15 |
| 13:50:06 | 16 |
| 13:50:08 | 17 |
| 13:50:12 | 18 |
| 13:50:16 | 19 |
| 13:50:20 | 20 |
| 13:50:23 | 21 |
| 13:50:26 | 22 |
| 13:50:29 | 23 |
| 13:50:31 | 24 |
| 13:50:34 | 25 |

the mediation and the notice costs.  But I'm very proud to say that over 700 defendants stepped up, went all in, and decided to proceed with the settlement.

Your Honor, we talk about the complexity of this case.  You have hit on the fact that there's over 10,000 claimants.  You're talking about homeowners, tenants, landlords, even remediating builders.  They go from residential to commercial, from individuals to businesses.  There's over 1,000 defendants made up of all different groups, from builders, developers, installers, suppliers, importers, and manufacturers.  Importantly, these aren't like a normal MDL where they are all aligned.  In this case they are all suing each over.  Everybody was pointing the finger at somebody else.  Ultimately, they all pointed their fingers at the insurers.

There's over 200 insurers in this litigation that have policies that touched different defendants.  Many of those are involved in over 60 coverage litigations around the country, many of which are not in this forum.  As I'm sure you are well aware, over 20 decisions have been issued in those cases finding that there is no coverage underneath those policies.  There's over 15 decisions in Florida alone finding no coverage because of the pollution exclusion.

Virginia, the Supreme Court has found there's no coverage, because of the pollution exclusion, for Chinese drywall.  In addition, many, if not all of those insurers have

13:50:39  1   extensive other coverage positions that they have chosen to put

13:50:43  2   aside to try and put this to bed.

13:50:50  3           In addition to all of that, those 700 parties

13:50:53  4   decided to stand up and after two years of negotiations put

13:50:59  5   together the global settlement which allowed them to

13:51:02  6   participate at a level very similar to what has been

13:51:04  7   participated in by other people of similar rank.

13:51:09  8           The next *Reed* factor is the stage of litigation.

13:51:11  9   I don't think there's any question that this litigation, after

13:51:14  10  all of the bellwether trials, after all of the coverage

13:51:17  11  litigation, is ripe for settlement.

13:51:22  12          Probability of success.  If you look at what

13:51:23  13  happened in the insurance world, you look at the very difficult

13:51:28  14  time that the PSC and its brethren had in finding insurance

13:51:32  15  coverage, the fact that there are any number of participating

13:51:35  16  defendants who are both in bankruptcy and/or out of business in

13:51:39  17  and of themselves, the probability of success was clearly

13:51:42  18  questionable, not to mention the problem of most homeowners

13:51:46  19  being unable to match up with suppliers or installers.

13:51:50  20          They might know who their builder was, and in

13:51:53  21  many cases those builders either (1) fixed the home or (2) were

13:51:56  22  out of business, but they couldn't go beyond that because they

13:51:59  23  either didn't have contractual rights, didn't have tort

13:52:02  24  liability, didn't have time, they had lots of prescription

13:52:05  25  issues or statute of limitation issues, or in some cases simply

13:52:09  1   couldn't identify them.

13:52:11  2          Range of possible recovery.  I think it's

13:52:14  3   important to note that in almost every jurisdiction that is

13:52:17  4   touched by Chinese drywall, there's serious allocation

13:52:21  5   questions and serious comparative fault issues.  We saw that in

13:52:25  6   Florida in the *Siefert* case.  Although there was a pretty big,

13:52:29  7   newsworthy judgment that was issued, ultimately you had to come

13:52:34  8   out and decide the percentage of fault.

13:52:35  9          When you are talking about, as they call them,

13:52:37  10  the low-lying fruit, people who didn't contract to bring it in,

13:52:41  11  didn't necessarily have any idea there was a problem with this

13:52:47  12  drywall, their chance of comparative fault was extreme, and the

13:52:47  13  chances were very good that even if you got a verdict, it would

13:52:50  14  be a very small verdict.

13:52:52  15         Ultimately, the range of possible recovery, we

13:52:57  16  believe the numbers are extremely significant considering the

13:53:00  17  circumstances; especially the number of insurers who won

13:53:05  18  summary judgments, finding they had no coverage, and chose to

13:53:09  19  participate anyway.

13:53:11  20         Finally, response by the class.  As stated this

13:53:12  21  morning, there were 388 objections.  294 are left, which means

13:53:17  22  approximately 25 percent of them have rescinded those opt-outs.

13:53:24  23  Of those opt-outs, we believe a number more are still likely to

13:53:28  24  change their minds and come back into the agreement.  We are

13:53:31  25  quite proud of that fact.

13:53:33  1          As part of the global settlement, this is not
13:53:35  2  only a settlement for the class members, but it's also a
13:53:39  3  release amongst the defendants.  So all of that litigation
13:53:44  4  that's going on trying to point the fingers between carriers
13:53:46  5  and their insureds or between suppliers and installers, that's
13:53:50  6  all being resolved as part of this.  Obviously, as we all know,
13:53:54  7  sometimes the liability trial is the first step, and you
13:53:57  8  ultimately end up in indemnity trials for years to come.  Those
13:54:00  9  are all wrapped up together.  So people pay their money and go
13:54:05 10  home, and hopefully we can get more houses fixed.
13:54:11 11          As a result of all of this work, there were
13:54:14 12  eight people who stepped forward and said they objected to the
13:54:18 13  global settlement.  Now, five of those as of last night have
13:54:22 14  now withdrawn those objections.  We believe there are three
13:54:25 15  that are left.  One of them was an individual who had very
13:54:29 16  specific issues that he raised with Your Honor that are
13:54:33 17  somewhat covered by Mr. Bandas, and I'll deal with his in a
13:54:36 18  second.
13:54:36 19          The second one is Mr. Bandas, who has been
13:54:39 20  attacked wildly for his position.  I am going to deal with his
13:54:43 21  issues as they relate to bodily injury because I do believe
13:54:47 22  that is an issue this Court is interested in, and I do believe
13:54:51 23  it is an issue we should address.
13:54:53 24          The last one is to Mr. Durkee and Mr. Milstein,
13:54:54 25  who will stand up and tell you how they are in their situation.

13:54:58  1   As you know, we have been working through their issues.  I

13:55:01  2   believe their issues are well covered by the briefs, so we will

13:55:04  3   defer to the briefs on those issues.

13:55:07  4          The big issue that Mr. Bandas raised, we

13:55:10  5   believe, is the personal injury claims.  I believe that if

13:55:14  6   Your Honor looks at it, there are four very significant reasons

13:55:17  7   why those are not fatal to this settlement.  First of all, it

13:55:21  8   should be noted that there is simply no known long-term health

13:55:27  9   effects that have been scientifically linked to Chinese

13:55:31  10  drywall.

13:55:32  11          I will tell you it's not for not trying.  As

13:55:37  12  Mr. Herman told you earlier, the CPSC studied this issue for

13:55:42  13  five years.  The CPSC told you, in filing this in front of you,

13:55:47  14  that their investigation of problem drywall has been driven by

13:55:53  15  sound science and has involved HUD, the U.S. Centers for

13:55:55  16  Disease Control and Prevention, and the U.S. Environmental

13:55:57  17  Protection Agency as members of the Federal Interagency Task

13:56:03  18  Force on Problem Drywall.

13:56:04  19          So they didn't just study issues related to

13:56:07  20  health; they specifically studied it as related to drywall.

13:56:11  21  After these years of study, the Centers for Disease Control,

13:56:12  22  which is the most important federal agency in dealing with how

13:56:20  23  to stop there from being long-term health problems, said, The

13:56:25  24  problems here are not even sufficient enough that we would

13:56:27  25  conduct a long-term study.  We believe that is an extremely

13:56:30  1   strong position in support of this Court supporting this

13:56:34  2   settlement.

13:56:35  3            In addition to that finding, though, you have

13:56:38  4   findings that we have cited to you in our brief from the

13:56:42  5   National Center for Environmental Health, the Center for

13:56:45  6   Toxicology and Environmental Health, the American Industrial

13:56:48  7   Hygiene Association, the Florida and Virginia departments of

13:56:53  8   health, and numerous other very important organizations in both

13:56:59  9   state and federal agencies.

13:57:01  10            Second of all, Your Honor, the litigation here

13:57:05  11   has been ongoing for over three years, and in many cases the

13:57:10  12   drywall was installed five to seven years ago.  Yet despite

13:57:14  13   that, not a single case of long-term illness has been

13:57:18  14   identified.  Not a single court -- including this one, that has

13:57:23  15   tried numerous cases, and other courts that have tried cases,

13:57:25  16   including the one as recently as last week that Banner pointed

13:57:30  17   out to you -- has found that there were any issues related to

13:57:33  18   the effects of Chinese drywall on people's health.

13:57:35  19            In fact, Judge Farina, who was here this

13:57:39  20   morning -- I believe he is still here -- in denying an

13:57:43  21   objection on this very same issue in the Chinese drywall

13:57:53  22   *Harrell* settlement in South Florida, he found in the case of

13:57:56  23   future injuries there's no foundation in the scientific or

13:57:58  24   medical literature to support it.

13:58:00  25            Third, Your Honor, I would say that despite the

| | | |
|---|---|---|
| 13:58:03 | 1 | absolute rejection of these claims by the scientific community, |
| 13:58:07 | 2 | the defendants in the global settlement as well as Banner have |
| 13:58:11 | 3 | set aside a portion of their funds in their allocation plans so |
| 13:58:16 | 4 | that in the event somebody wants to come forward and say, Wait |
| 13:58:20 | 5 | up, I think I'm the guy, I've got the injury, then there is |
| 13:58:23 | 6 | money set aside.  He can come forward.  And if he can prove |
| 13:58:26 | 7 | causation, then he is protected by this settlement.  It's |
| 13:58:29 | 8 | important that Knauf has given similar rights in their |
| 13:58:35 | 9 | Other Loss Fund.  So this means that despite the absolute lack |
| 13:58:38 | 10 | of scientific evidence to support the existence of such claims, |
| 13:58:41 | 11 | they are protected through the settlement. |
| 13:58:45 | 12 | Finally, Your Honor, I would say that unlike the |
| 13:58:47 | 13 | cases cited by the objectors in this case, where those |
| 13:58:50 | 14 | settlements dealt solely with personal injury claims, these |
| 13:58:55 | 15 | claims that are being settled here in their essence are |
| 13:58:58 | 16 | property damage claims.  They are actual claims that people |
| 13:59:01 | 17 | have today; they are not merely future claims.  Those people |
| 13:59:05 | 18 | are settling their claims.  They're getting their houses fixed. |
| 13:59:08 | 19 | They're getting their loss-of-use damages paid.  They are |
| 13:59:11 | 20 | getting their personal property claims paid.  And to the extent |
| 13:59:16 | 21 | they have any personal injuries, they are being dealt with as |
| 13:59:18 | 22 | well. |
| 13:59:19 | 23 | So based upon the existence of claims being |
| 13:59:21 | 24 | settled, we do not believe the fact that the settlement |
| 13:59:24 | 25 | includes future injuries is a reason to not approve these |

13:59:27   1   settlements.  In fact, I believe, as Mr. Levin started off
13:59:33   2   with, this is no different than any settlement where you have
13:59:36   3   got property damage and you get a release for everything when
13:59:39   4   you settle a case.  That is consistent with the *PPA* case, the
13:59:45   5   *Serzone Products Liability* case, and the *Diet Drugs* case which
13:59:48   6   we cited to Your Honor, all of which found the complete lack of
13:59:54   7   scientific evidence of latent injuries weighs in favor of class
13:59:59   8   approval.  So again, as Judge Farina found, we believe that
14:00:01   9   it's appropriate to approve these Chinese drywall settlements
14:00:06  10   despite the fact that they include a release of personal
14:00:08  11   injuries.
14:00:09  12        In conclusion, we believe the settlement
14:00:11  13   addresses all of the *Reed* factors.  We believe that it is fair,
14:00:17  14   it is reasonable, it is adequate, and it should be approved by
14:00:21  15   Your Honor.  I'm happy to answer any questions you have about
14:00:24  16   our settlement.
14:00:25  17        **THE COURT:**  Just one thing while I have you.  We are
14:00:30  18   all familiar with class actions.  In a typical class action,
14:00:35  19   the plaintiffs file a class action.  The Court entertains it,
14:00:43  20   appoints the committees, allows limited discovery on the
14:00:47  21   question of whether or not it's a class action, then sets it
14:00:53  22   for certification.  Either testimony is given or documents are
14:01:00  23   filed.  The Court rules on certification, tees up a bellwether
14:01:06  24   or other case dealing with the merits.  Either after that or
14:01:11  25   before that, the parties enter into settlement discussions,

| | | |
|---|---|---|
| 14:01:16 | 1 | settlement is announced, then the settlement hearing goes |
| 14:01:19 | 2 | forward. |
| 14:01:21 | 3 | This case is different in that its genesis is an |
| 14:01:26 | 4 | MDL.  MDLs include all claims, individual claims as well as any |
| 14:01:35 | 5 | class actions.  It's all bundled together and put under the MDL |
| 14:01:43 | 6 | banner and you move forward.  This case has proceeded, as |
| 14:01:48 | 7 | everyone recognizes, through extensive discovery, numbers of |
| 14:01:54 | 8 | trials, pilot programs, negotiations, and a settlement is |
| 14:02:02 | 9 | announced. |
| 14:02:03 | 10 | So at this stage in the game, we don't have the |
| 14:02:11 | 11 | traditional class action.  It's a little different than a |
| 14:02:14 | 12 | traditional class action in several ways.  One, it's under the |
| 14:02:19 | 13 | umbrella of an MDL; and secondly, the question of the |
| 14:02:28 | 14 | settlement, 23(e), we are here today to deal with certification |
| 14:02:35 | 15 | as well as settlement.  It's a *two-fer*, so to speak, this |
| 14:02:45 | 16 | hearing is, because we know that 23(e) provides that claims, |
| 14:02:48 | 17 | issues, or defenses of a certified class may be settled.  A |
| 14:02:52 | 18 | certified class.  So the class hasn't been certified, we are |
| 14:02:56 | 19 | talking settlement, and the thrust of the arguments has been |
| 14:03:00 | 20 | settlement oriented. |
| 14:03:02 | 21 | Where are you with the certification aspect? |
| 14:03:07 | 22 | What's your position on that?  Is it national certification? |
| 14:03:13 | 23 | State certification?  You might speak on that. |
| 14:03:18 | 24 | **MR. PIPES:**  Your Honor, it's national certification, |
| 14:03:19 | 25 | and I believe that the brief filed by the PSC addresses all of |

14:03:25  1    those issues.  We can go through any of them you like.  I think
14:03:28  2    clearly, in each category that's required for certification of
14:03:31  3    a class, we meet those issues.
14:03:33  4              What you have here is across the board you have
14:03:36  5    people who have Chinese drywall in their homes that is acting
14:03:41  6    very similar in every home.  You have numerosity.  You have
14:03:45  7    over 10,000.  You have issues with those homes all reacting in
14:03:49  8    the same way.
14:03:51  9              Part of the problem that we have here in an MDL
14:03:53  10   proceeding is clearly that we have got some state court cases,
14:03:56  11   you have MDL cases, you have class action cases.  We believe
14:03:59  12   that the national class action is the only way that you can put
14:04:03  13   this to bed.  There is a huge number of participating
14:04:07  14   defendants here as well as, I think, parties in at least three,
14:04:11  15   if not the other four settlements -- I'm just not sure about
14:04:14  16   L&W -- that cross state lines.  So it becomes a problem if you
14:04:19  17   try to limit it to a state.
14:04:20  18              I think that all of those issues are before you.
14:04:23  19   We are happy to address any specific one you like, we are happy
14:04:26  20   to provide you additional briefing if you would like, but I
14:04:29  21   think that nobody has challenged that we meet what's needed to
14:04:34  22   have a class.
14:04:35  23              Obviously, what they have challenged is whether
14:04:38  24   or not there are parts of the settlement we should include, so
14:04:41  25   that that's what we focused on here today to try to avoid

| | |
|---|---|
| 14:04:44 | 1 | wasting our time, but I'm happy to address one of the specific |
| 14:04:48 | 2 | ones if you like. |
| 14:04:49 | 3 | THE COURT: The courts don't concern themselves with |
| 14:04:52 | 4 | manageability at this stage. There's a settlement aspect to |
| 14:04:58 | 5 | it, so manageability is not the issue you usually have in the |
| 14:05:02 | 6 | typical class action. |
| 14:05:04 | 7 | I might also say that the courts are seeing more |
| 14:05:08 | 8 | of these joint motions. The courts expressed early on some |
| 14:05:16 | 9 | concern about the joint motions, but it's clear that those |
| 14:05:21 | 10 | cases were concerned about it because of the timing. Class |
| 14:05:27 | 11 | actions were filed and then a week later there was a settlement |
| 14:05:30 | 12 | announced and a week later there was a joint motion filed. |
| 14:05:35 | 13 | That's not the situation here. I'm not saying there was |
| 14:05:44 | 14 | collusion in that aspect of the case either, but it was an |
| 14:05:50 | 15 | early stage. |
| 14:05:50 | 16 | Here we have been three years and thousands and |
| 14:05:53 | 17 | thousands of documents, millions of documents here, in effect, |
| 14:05:55 | 18 | and a lot of water under the bridge, so to speak, and so it's a |
| 14:05:59 | 19 | little different in this particular case. |
| 14:06:02 | 20 | MR. PIPES: Your Honor, I think you are actually |
| 14:06:05 | 21 | correct. The *Amchem* case took the manageability issue off the |
| 14:06:07 | 22 | table. |
| 14:06:07 | 23 | THE COURT: Right. |
| 14:06:07 | 24 | MR. PIPES: I think the other part we need to keep in |
| 14:06:10 | 25 | mind -- and I think you're absolutely correct, this is a |

14:06:11  1   different kind of class action, probably the most complex that

14:06:14  2   anybody has ever worked on, especially in this case.

14:06:19  3       In a normal class action, you have one big

14:06:21  4   defendant, maybe two or three.  Everybody knows who they are in

14:06:24  5   the lineup.  You decide whether or not the plaintiffs have a

14:06:26  6   claim against that defendant.  Here they are all suing each

14:06:29  7   other, so it's a little bit different in working through all of

14:06:33  8   those issues before you could certify a class.  We have now

14:06:36  9   finally figured out a way to do it.  That's why we are asking

14:06:41  10  to do them all together.

14:06:42  11      **THE COURT:**  One thing I was concerned about when we

14:06:44  12  first started the case was the average homeowner, the person

14:06:47  13  who has bought a house and then finds out this is a problem or

14:06:51  14  has rehabilitated their house following storms and finds out

14:06:59  15  it's a problem.  Oftentimes they have limited, if any,

14:07:03  16  resources because they spent it all, in some instances taking

14:07:07  17  it from their pension, to hurry up and get ready to repair

14:07:10  18  their house only to find it's Chinese drywall.

14:07:14  19      My concern was for those individuals to go it

14:07:18  20  alone, so to speak, and file claims against their builder and

14:07:24  21  find out that it's kind of like a great bequest in a pauper's

14:07:32  22  will; they win the case but have nothing because the builder

14:07:35  23  has no assets or the supplier has no assets.

14:07:38  24      These cases are not necessarily complex, but

14:07:42  25  expensive.  I tried a number of them.  It generally costs

| | |
|---|---|
| 14:07:47 | 1 | something like a million dollars to try a case.  Now, if you |
| 14:07:53 | 2 | spent $200,000 to repair your house, it doesn't make a lot of |
| 14:07:58 | 3 | sense to spend a million dollars to win the case. |
| 14:08:02 | 4 | These cases tend to be expert driven, and it's |
| 14:08:06 | 5 | problematic.  So even though it's a problem and complex, the |
| 14:08:17 | 6 | format of having it in one jurisdiction I think is helpful to |
| 14:08:22 | 7 | all of the litigants. |
| 14:08:26 | 8 | MR. PIPES:  Your Honor, I think by definition class |
| 14:08:27 | 9 | actions were created to take care of a situation where it's |
| 14:08:30 | 10 | more expensive to try the case than what you would get out of |
| 14:08:34 | 11 | it.  I think you are absolutely correct that's part of the |
| 14:08:36 | 12 | problem.  And especially with the allocation issue, those |
| 14:08:39 | 13 | numbers could be significantly lower because you wouldn't be |
| 14:08:42 | 14 | able to recover the full amount from each defendant.  So I do |
| 14:08:44 | 15 | think that's why it's appropriate.  If you would like some |
| 14:08:47 | 16 | briefing on that, we are happy to provide you more. |
| 14:08:49 | 17 | THE COURT:  Let me hear from the home builders. |
| 14:08:54 | 18 | MR. HERMAN:  Your Honor, may I address just one |
| 14:08:56 | 19 | question about class action issues? |
| 14:08:59 | 20 | THE COURT:  Let me hear from the home builders first, |
| 14:09:01 | 21 | and then I'll give you a chance. |
| 14:09:02 | 22 | MS. BASS:  Thank you, Your Honor.  Hilarie Bass on |
| 14:09:05 | 23 | behalf of the home builders' steering committee. |
| 14:09:07 | 24 | Obviously, Your Honor, many of the home builders |
| 14:09:09 | 25 | have unique sets of facts as far as those that are remediating, |

14:09:12   1   those that are not, but I believe that as a group the home

14:09:16   2   builders are in favor of this settlement and believe it's an

14:09:19   3   appropriate compromise.

14:09:20   4          Obviously, your concern from the beginning has

14:09:24   5   been those homes that don't fit within the Knauf settlement --

14:09:27   6   obviously, they are the Taishan homes -- and whether or not

14:09:30   7   there will prove to be enough money available for those

14:09:33   8   homeowners with Taishan board or less than 90 percent Knauf

14:09:38   9   board, whether there will be enough money from the various

14:09:41   10   settlement pots to enable them to repair the homes, and I think

14:09:44   11   it's still unclear whether or not that is the case.

14:09:48   12          Despite that concern, the home builders are, at

14:09:52   13   least for the most part, supportive of the concept that moving

14:09:58   14   forward with these five settlements is at least the best thing

14:10:00   15   that's possible right now to magnify the pot of available

14:10:06   16   proceeds for those homeowners.

14:10:08   17         **THE COURT:**  Okay.  Fine.  I did inject the question

14:10:10   18   of class action.

14:10:12   19         **MR. HERMAN:**  May it please the Court.  I will be very

14:10:14   20   brief.  Your Honor is quite correct.  I think the judgment,

14:10:16   21   finally, in *Hernandez* after trial was in the neighborhood of

14:10:20   22   $165,000, and I affirm to Your Honor as an officer of the Court

14:10:27   23   that that case cost in excess of a million dollars for that

14:10:32   24   plaintiff family to prevail.

14:10:33   25          As Mr. Pipes said originally, class actions were

14:10:36  1    to prevent consumers from the hardship of no recovery

14:10:41  2    whatsoever in cases where their claims were disproportionate to

14:10:48  3    what it would cost.

14:10:50  4            I believe Mr. Pipes has handled predominance,

14:10:54  5    manageability, numerosity, but there is something that hasn't

14:10:59  6    been said.  Originally, lead counsel Arnold Levin and I

14:11:03  7    struggled with how we were going to do this because it costs

14:11:06  8    $100,000 just to serve under the Hague Convention.  That hasn't

14:11:11  9    been said yet, but that was a real impediment to consumers, any

14:11:17  10   consumer.  How do you put up $100,000 to get service in a

14:11:21  11   $200,000 case?

14:11:22  12           We came up with the idea of an omnibus complaint

14:11:28  13   so that as a defendant was served under the Hague Convention,

14:11:32  14   you can intervene thousands of cases.  We appreciate the fact

14:11:36  15   that the Court recognized and allowed this mechanism to give

14:11:42  16   substantial justice, but I think it's important on the record

14:11:46  17   of this case that the record indicate the extraordinary

14:11:51  18   difficulty on consumers, where there are foreign nationals

14:11:57  19   involved, of having to spend $100,000 just to effect service.

14:12:03  20   I thought at this point, in terms of the question you asked

14:12:07  21   about class actions, that would be an important factor to have

14:12:11  22   on the record.

14:12:14  23           **THE COURT:**  That is really a complicating factor.  I

14:12:17  24   just mentioned that not necessarily only in this case, but it

14:12:21  25   troubles me that -- and we all know and hear about the world

| | |
|---|---|
| 14:12:25 | 1 |
| 14:12:29 | 2 |
| 14:12:33 | 3 |
| 14:12:37 | 4 |
| 14:12:44 | 5 |
| 14:12:47 | 6 |
| 14:12:53 | 7 |
| 14:12:56 | 8 |
| 14:13:02 | 9 |
| 14:13:05 | 10 |
| 14:13:09 | 11 |
| 14:13:14 | 12 |
| 14:13:20 | 13 |
| 14:13:23 | 14 |
| 14:13:27 | 15 |
| 14:13:35 | 16 |
| 14:13:40 | 17 |
| 14:13:50 | 18 |
| 14:13:53 | 19 |
| 14:13:58 | 20 |
| 14:14:04 | 21 |
| 14:14:12 | 22 |
| 14:14:17 | 23 |
| 14:14:21 | 24 |
| 14:14:27 | 25 |

being flat these days.  We are all aware of the fact that we
are citizens of the world now and we shop in the world.

But the problem is when something happens and we
have a foreign product involved, even if there are treaties
involved and there are responsible parties, occasionally
reaching those parties is rather expensive, service under the
Hague.  It's particularly problematic for Chinese and Japanese
companies because of the translation difficulties and the
expense involved therein.  Each party has to then serve them,
and so it's a problem.  We had to come up with something called
an omnibus complaint, which you don't find in the Federal Rules
anyplace.  It's a vehicle to get around this expensive method
of suit.

If we have 10,000 claimants here, at least, if
not 20,000 or 30,000, and everybody has to spend $100,000 or
$200,000 to serve the party, it's a problem.  Somewhere along
the line, either legislation or something, we have to take
another look at this.  We don't mind being citizens of the
world, but we want to be treated like citizens.

This completes the supporters of the settlement.
I have received, as I say, a lot of paper, a lot of pleadings,
a lot of briefs, all of which were well done.  I have had an
opportunity to read them.  I make them part of the record.  If
anyone from the objectors -- North River I have as the first
one.  If you would like to speak, I would certainly be happy to

14:14:35   1   listen.

14:14:36   2            MS. LESSELL:  Your Honor, before you get to the

14:14:37   3   objectors, do you mind if I just clarify a position on the

14:14:41   4   record?

14:14:41   5            THE COURT:  Sure.  Okay.

14:14:46   6            MS. LESSELL:  Melissa Lessell on behalf of Landmark

14:14:48   7   American Insurance Company.  Like I said, this is more of a

14:14:51   8   housekeeping matter and not an objection.

14:14:53   9            We have previously requested confirmation from

14:14:55   10  the settling parties that Landmark's status remains unchanged

14:15:00   11  after the two InEx amendments.  We tried to work it out, as you

14:15:03   12  directed, on Friday, November 9, but I think just in the

14:15:07   13  busyness of preparing for this hearing, we didn't get it.  So I

14:15:11   14  just wanted to confirm on the record that it remains unchanged.

14:15:12   15           MR. LEVIN:  We want no money from you and your

14:15:14   16  client.

14:15:15   17           MS. LESSELL:  Thank you, Your Honor.

14:15:15   18           THE COURT:  Thank you.

14:15:23   19           MR. RISLEY:  Good afternoon, Your Honor.  Kevin

14:15:24   20  Risley on behalf of The North River Insurance Company.

14:15:27   21           You have heard at least two people say today

14:15:29   22  that North River does not want the Court to approve these

14:15:32   23  classwide settlements.  That's not true.  We have taken no

14:15:37   24  position on whether the settlements are fair and reasonable to

14:15:41   25  anybody other than North River.  We have objected only to the

InEx and Knauf settlements because they are the only ones that impact us, but on those settlements we do object to the extent they impair our rights.

Now, you have also heard from at least two people that North River has no standing. It's true that we are not a class member or a settling defendant. I wish it were true that we had no standing because that would mean our rights were not being affected, but they are in at least three ways:

(1) In the assignment of $72 million of insurance proceeds, a right to recover proceeds under four different policies, they are being assigned not once but some of them twice;

(2) On the fact there's a request that the Court declare that the coverage underlying the North River policies is exhausted, which will trigger certain obligations if that's binding against North River;

(3) And now today, without advance notice or pleadings to support it, it's set for hearing today, there's a request to liquidate all of the damages that are being sought against North River without the benefit of a trial or any chance to do discovery on them.

That's how we have standing, because of the three issues that impact us. I think, however, there is a way for the Court to resolve this, to take away standing from us, as it were, and approve the settlements as they otherwise

| | |
|---|---|
| 14:16:58 | 1 |
| 14:17:02 | 2 |
| 14:17:06 | 3 |
| 14:17:06 | 4 |
| 14:17:06 | 5 |
| 14:17:11 | 6 |
| 14:17:12 | 7 |
| 14:17:16 | 8 |
| 14:17:20 | 9 |
| 14:17:24 | 10 |
| 14:17:27 | 11 |
| 14:17:32 | 12 |
| 14:17:35 | 13 |
| 14:17:39 | 14 |
| 14:17:41 | 15 |
| 14:17:42 | 16 |
| 14:17:48 | 17 |
| 14:17:53 | 18 |
| 14:17:59 | 19 |
| 14:18:03 | 20 |
| 14:18:08 | 21 |
| 14:18:12 | 22 |
| 14:18:12 | 23 |
| 14:18:14 | 24 |
| 14:18:18 | 25 |

exist.

Now, I am going to briefly talk about four issues, three that we raised in our written submissions, our written objections, and one of which I think has become moot, and then an issue that has been raised today.

In the written objections, the first issue we raised was the question of assignment from InEx to the plaintiffs and then from the plaintiffs to Knauf. We do not consent to that assignment. If the Court merely approves the fact that it is being assigned without finding whether it's binding against us or not, then I agree we can reserve that fight 'til later. But if the Court wants to make a finding that it is binding against us now, then we do object to that for the reasons set forth in our brief.

On the question of exhaustion that you have heard about, one additional reason we believe there is not, in fact, exhaustion is under the InEx settlement Chinese drywall is defined to include board that does not react; for example, the Knauf Wuhu board. People who have that in their home which have no smell, no corrosion, no problems are being paid under the settlement as defined. We don't believe there is exhaustion unless there is payment of covered claims under the policies. That's one of our main objections.

THE COURT: Don't they argue that's it's going to happen? If drywall is manufactured or comes from the same mine

| | |
|---|---|
| 14:18:28 | 1 |

and all of the other sheets in the room smell and this sheet
doesn't, is it their position that this sheet is just a little
bit behind the time?

        **MR. RISLEY:**  I don't think it is because the Knauf
Wuhu board gypsum comes from another mine.  It has been tested
and found not to have a high sulfur content and not to be
reactive.  If those claimants would go to trial, they would
have to prove that their homes have been damaged, and there's
no evidence, other than the KPT and the Taishan board, that any
Chinese board does cause problems.  So they are paying claims
that on their face don't meet a definition of *occurrence* under
the policies.

            Again, we relied on the briefing for that.  I
think what the Court can do if Knauf -- or excuse me.  If InEx
and their primary carriers want to agree between the two of
them that there's exhaustion, again, that's not our issue.  I
do think what's driving that issue is the primary carriers want
to be relieved of their defense obligation.  They are willing
to tender what they say are their limits.  They want to stop
having to pay defense costs.  That's between the two of them.
If that's their agreement, so be it, but you don't need to make
a finding that the exhaustion is binding against us to put that
agreement in place.

            The third written objection we made was one that
when the original Knauf settlement was put before the Court,

14:19:46  1  there was some unclarity in the language about releases, which
14:19:50  2  made it sound like North River's potential claims against Knauf
14:19:54  3  were being released.  My understanding from several
14:19:57  4  conversations is under the current version, that's not correct,
14:19:59  5  we reserve those rights.  As long as the Court or Knauf would
14:20:03  6  confirm that, we will withdraw that objection.
14:20:06  7          THE COURT:  That's the way I understood the last
14:20:08  8  draft.
14:20:08  9          MR. RISLEY:  I did too.  I just wanted to make sure
14:20:11  10  that's on the record so we're all in agreement on that.
14:20:12  11          That leaves one more issue, the proposed second
14:20:17  12  amendment to the InEx settlement.  Now, the Court earlier this
14:20:20  13  morning, when it was talking in general, said that all of the
14:20:24  14  proposed settlements had been noticed and due process had been
14:20:27  15  fully satisfied.  If the Court takes up the second amended
14:20:32  16  settlement, due process goes out the window, under the bus,
14:20:35  17  into the trash, wherever you want to send it, but it doesn't
14:20:38  18  stay in the courtroom.
14:20:40  19          That proposed amendment was filed two or three
14:20:42  20  weeks ago with a request for expedited hearing.  The reason
14:20:48  21  they wanted an expedited hearing was InEx said it was afraid
14:20:51  22  that Knauf was going to walk from the settlement, and they
14:20:54  23  needed this to prevent Knauf from walking out.  The Court did
14:20:58  24  not grant an expedited hearing.  We were not given notice it
14:21:00  25  was set for submission or hearing today.  It is not on this

| | | |
|---|---|---|
| 14:21:01 | 1 | Court's docket today. |
| 14:21:04 | 2 | Now, their attempt to get around it is to say, |
| 14:21:06 | 3 | Well, we don't want it to be binding against North River right |
| 14:21:09 | 4 | now.  I'm not sure Rule 23 allows you to dissect agreements |
| 14:21:11 | 5 | like that and say, I'm approving it for some purposes but not |
| 14:21:21 | 6 | for others. |
| 14:21:21 | 7 | I don't think the Court can do that under |
| 14:21:22 | 8 | Rule 23.  Even if it could, however, there's still the question |
| 14:21:26 | 9 | of notice to the class members.  The way the proposed second |
| 14:21:28 | 10 | amendment is set up, depending on what happens to the |
| 14:21:32 | 11 | bellwether trial, the class members could get a $72 million |
| 14:21:35 | 12 | claim or a $36 million claim or zero. |
| 14:21:41 | 13 | Now, the Fifth Circuit decided one of the |
| 14:21:44 | 14 | *Katrina Breach* cases a couple years ago which involved notice |
| 14:21:47 | 15 | of a class settlement, and that was reversed because the notice |
| 14:21:50 | 16 | did not make it clear to the class members they might be |
| 14:21:53 | 17 | getting zero under the settlement.  Notice was given but not |
| 14:21:57 | 18 | clearly given that zero was a possibility.  Here you are being |
| 14:22:00 | 19 | asked to approve a settlement that might result in zero dollars |
| 14:22:03 | 20 | to class members without telling them that. |
| 14:22:08 | 21 | So as a basic matter of Rule 23, you have to |
| 14:22:10 | 22 | give notice of any settlement of this type, and the fact that |
| 14:22:12 | 23 | it's late in the game doesn't excuse the obligation to give |
| 14:22:16 | 24 | notice. |
| 14:22:17 | 25 | **THE COURT:**  If Knauf agrees not to walk away, is the |

14:22:30   1   second mooted?

14:22:32   2           **MR. RISLEY:**  I think so, especially if it's not

14:22:34   3   intended to be binding against us.  The Court heard from very

14:22:38   4   good and reputable lawyers on behalf of Knauf today.  All three

14:22:41   5   of them asked you to approve the settlement.  None of them even

14:22:44   6   hinted that they might be willing to exercise their opt-out

14:22:47   7   right by Friday because of our situation.  I would expect them

14:22:50   8   to raise that possibility with the Court if it were a

14:22:52   9   possibility.

14:22:53   10          So I think their request at this point that the

14:22:56   11  settlements be approved pretty well moots the need for that,

14:22:59   12  but it certainly takes away any claim that time is of the

14:23:03   13  essence.  That was definitely the reason for the expedited

14:23:05   14  request, because they were afraid Knauf might walk.  If Knauf

14:23:09   15  doesn't walk, time is not a factor at all, then.

14:23:12   16          I do think though, I want to point out that

14:23:14   17  while they say they don't want it to be binding against us, it

14:23:17   18  really serves no purpose if it's not binding against us because

14:23:21   19  with or without the second amended, InEx is going to be fully

14:23:25   20  released.  They will never pay one penny of any of those

14:23:31   21  liquidated damages.  That's Monopoly money to InEx at this

14:23:34   22  point.  It only has value if it can be binding against

14:23:38   23  North River.

14:23:39   24          That brings up the question of what will that do

14:23:42   25  to the bellwether trial.  We have a trial set in less than two

14:23:47   1   weeks we have been preparing for, and the Court has made it
14:23:50   2   very clear it's a bellwether trial to give us information about
14:23:53   3   InEx and its conduct as a seller.  That's what we have been
14:23:56   4   preparing for.  It's not to assess liability against InEx.
14:23:59   5   It's not to determine damages.
14:24:02   6                But what will happen is, if the second amended
14:24:05   7   is considered and approved by the Court, if there's an adverse
14:24:09   8   ruling on us at that trial, then -- I'll be Knauf, and since I
14:24:15   9   will own the claims at that time will say, All right.  Now we
14:24:18   10  get $72 million or $36 million.
14:24:20   11               So you have taken what is supposed to be a
14:24:24   12  bellwether trial and turned it into a class damages trial.
14:24:26   13  That is a very strange way to do it by throwing in an amendment
14:24:30   14  to a settlement that's not noticed, not set for hearing, and
14:24:32   15  using that as a vehicle to create class damages.
14:24:35   16               I will say we have been working on a written
14:24:38   17  objection.  If the Court is going to go forward with that, we
14:24:41   18  would like a chance to complete that -- we need to revise it
14:24:45   19  based on some things today -- and submit it to the Court if the
14:24:50   20  Court is going to consider the second amendment.
14:24:51   21               **THE COURT:**  Thank you very much.
14:24:55   22               Anyone else for North River?
14:24:59   23               How about Wayne Kaplan?
14:25:17   24               **MR. MILSTEIN:**  Good afternoon, Your Honor.  Mark
14:25:23   25  Milstein of Milstein Adelman.

14:25:24   1          **MR. DURKEE:**  David Durkee, Your Honor, on behalf of
14:25:27   2    Roberts & Durkee.
14:25:29   3          **MR. MILSTEIN:**  Your Honor, as the Court is aware, we
14:25:30   4    have filed an objection on behalf of Mr. Kaplan.  Mr. Kaplan is
14:25:33   5    a resident of West Palm Beach County in Florida.  Our objection
14:25:37   6    is as to the global settlement only.  We have set forth the
14:25:41   7    substance of the objection in the written document that we have
14:25:44   8    provided, and I don't see any reason to really go through those
14:25:47   9    issues again today.
14:25:48   10          We do want to emphasize that we are working with
14:25:51   11   various individuals in an effort to try to resolve Mr. Kaplan's
14:25:54   12   concerns.  Mr. Kaplan gave very eloquent and sincere deposition
14:25:59   13   testimony where he discussed his issues.  We think the parties
14:26:02   14   are taking those seriously, and we are going to do our best
14:26:05   15   over the coming days to try to work through those.
14:26:07   16          I did want to briefly comment.  I think lead
14:26:11   17   counsel for the PSC raised the issue of potential conflict with
14:26:14   18   both my office and Mr. Durkee's office.  We have researched
14:26:17   19   that extensively, Your Honor, and we don't believe the
14:26:20   20   authorities support that.  We didn't create this conflict.  If
14:26:24   21   there is a conflict here -- and I'm not sure there is -- it
14:26:28   22   really was created and belongs to others.  If given the
14:26:31   23   opportunity, Your Honor, we would be more than happy to brief
14:26:32   24   that for the Court.
14:26:33   25          **THE COURT:**  I'm not going to deal with that at this

14:26:35  1    time.  I don't see that as an issue.

14:26:38  2         **MR. DURKEE:**  Very good, Your Honor.  We just want to

14:26:39  3    reiterate that everything we have done on behalf of our victims

14:26:41  4    has been in their best interest, in good faith, and for the

14:26:45  5    purpose of bringing this to an orderly conclusion just like

14:26:48  6    this Court has.

14:26:50  7         **THE COURT:**  I hope that situation is able to be

14:26:54  8    worked out.  Maybe it's just a question of understanding it or

14:27:01  9    a little bit more specificity in the language.  If I can get

14:27:05  10   involved in it, let me know.

14:27:08  11        **MR. DURKEE:**  Thank you, Your Honor.

14:27:09  12        **MR. MILSTEIN:**  Thank you for your time, Your Honor,

14:27:10  13   and for your time and tenacity throughout the many years of

14:27:13  14   this litigation.  We appreciate it.

14:27:17  15        **THE COURT:**  Thank you.

14:27:17  16             The last objection is Mr. Bandas in Soto and

14:27:20  17   Garcia.  I received extensive briefing from Mr. Bandas.  As I

14:27:25  18   said, I'm going to make that a part of the record.  If you wish

14:27:29  19   to say anything, I certainly will listen to you.

14:27:32  20        **MR. BANDAS:**  No, Your Honor.  With the Court's

14:27:33  21   comments, we stand on our pleadings.

14:27:35  22        **THE COURT:**  Fine.  Thank you very much.

14:27:38  23             Those are the objectors that have written and

14:27:41  24   provided something.

14:27:42  25             Any rebuttal from any of the supporters?

| | | |
|---|---|---|
| 14:27:50 | 1 | **MR. HERMAN:**  May it please the Court.  We have no |
| 14:27:53 | 2 | rebuttal. |
| 14:27:56 | 3 | As Mr. Glickstein pointed out, we definitely do |
| 14:27:59 | 4 | not agree with learned counsel Mayesh's ideas about exposure or |
| 14:28:05 | 5 | liability, but he was very eloquent in expressing the |
| 14:28:10 | 6 | difficulties that plaintiffs would have. |
| 14:28:12 | 7 | We do want to indicate for the Court that we |
| 14:28:15 | 8 | have a hard copy and a CD of our exhibits in chambers.  We have |
| 14:28:22 | 9 | previously submitted it through the exhibit list, but we |
| 14:28:24 | 10 | formally submit those without objection. |
| 14:28:27 | 11 | **THE COURT:**  I'll keep the record open for, say, two |
| 14:28:30 | 12 | weeks to give parties an opportunity to respond in writing or |
| 14:28:34 | 13 | give me any additional briefing if you to feel you need |
| 14:28:44 | 14 | additional briefing from some of the remarks made here today. |
| 14:28:48 | 15 | Kevin, I have a date, I thought, in February to |
| 14:28:51 | 16 | deal with that motion, but -- not February.  When is it? |
| 14:28:56 | 17 | **MR. MILLER:**  Friday. |
| 14:28:59 | 18 | **THE COURT:**  Friday.  I'll deal with that.  Maybe I |
| 14:28:59 | 19 | should see you all after this hearing. |
| 14:29:02 | 20 | **MR. RISLEY:**  Friday is the deadline for motions in |
| 14:29:04 | 21 | limine, but I wasn't aware it was for anything else, but we can |
| 14:29:08 | 22 | visit. |
| 14:29:08 | 23 | **THE COURT:**  Let me visit with you all when we are |
| 14:29:12 | 24 | finished here. |
| 14:29:14 | 25 | **MR. RISLEY:**  We were given a copy of the plaintiffs' |

14:29:16   1   exhibit list a minute ago.  The second amended motion is on
14:29:20   2   there as Exhibit 68.  We certainly don't object to the Court
14:29:24   3   taking judicial notice of the filing.  We do object if it's
14:29:28   4   offered as substantive evidence.  It's not even on the list
14:29:28   5   today.  To the extent it's on any other list, we also object to
14:29:28   6   it for the same reason.
14:29:34   7        MR. MILLER:  Your Honor, just a question and a
14:29:35   8   request for clarification on a point you just made.  You said
14:29:38   9   you were going to keep the record open for a couple weeks to
14:29:41  10   allow for supplemental briefing.  Your Honor, would that
14:29:43  11   include keeping the record open for Knauf to exercise its
14:29:47  12   withdrawal rights from the settlement?
14:29:49  13        THE COURT:  For whatever reasons necessary.  The
14:29:51  14   point is that the record will remain open.  I'm not going to
14:29:56  15   continue the hearing because hopefully everybody has said
14:30:01  16   everything they need to say, but it's the same.  So the answer
14:30:04  17   is yes to your specific question.
14:30:06  18        MR. MILLER:  Thank you, Your Honor.
14:30:08  19        MR. HERMAN:  May it please the Court.  Judge Fallon,
14:30:09  20   as you know, Chris Seeger had some Hurricane Sandy problems.
14:30:17  21   Jerry Meunier, who is captain of our trial team at this
14:30:25  22   juncture, I believe is in the other courtroom listening.  We
14:30:29  23   would like to get him here so he can meet in chambers on the
14:30:33  24   issue you have asked.
14:30:35  25        THE COURT:  Fine.

| | |
|---|---|
| 14:30:36 | 1 |
| 14:30:43 | 2 |
| 14:30:44 | 3 |
| 14:30:51 | 4 |
| 14:30:54 | 5 |
| 14:31:02 | 6 |
| 14:31:07 | 7 |
| 14:31:17 | 8 |
| 14:31:23 | 9 |
| 14:31:26 | 10 |
| 14:31:31 | 11 |
| 14:31:36 | 12 |
| 14:31:41 | 13 |
| 14:31:45 | 14 |
| 14:31:48 | 15 |
| 14:31:53 | 16 |
| 14:31:57 | 17 |
| 14:32:02 | 18 |
| 14:32:05 | 19 |
| 14:32:08 | 20 |
| 14:32:15 | 21 |
| 14:32:20 | 22 |
| 14:32:28 | 23 |
| 14:32:33 | 24 |
| 14:32:40 | 25 |

1    Anything further?  Steve.

2    MR. GLICKSTEIN:  Steve Glickstein on behalf of the

3    Knauf defendants.  I wanted to address first the question

4    Your Honor asked about class certification.

5    I would just point Your Honor and Mr. Brandao to

6    the PSC's brief in response to objections -- I think it's

7    record 16119-2, pages 42 to 51 -- and also Mr. Pipes's brief on

8    behalf of the global settlement, the entirety of which I think

9    is addressed to the class certification issue and particularly

10    to some of the issues that Your Honor has raised.  That brief

11    is record 16117.  I would just point you in that direction

12    because I think it addresses frontally the class action issues

13    that Your Honor raised.

14    THE COURT:  The PSC also addressed it in their brief.

15    I did see all of the written materials on it, but I did want

16    you all to at least have an opportunity to address it verbally

17    because some individuals in the courtroom maybe hadn't had the

18    opportunity to read all the briefs.  They are quite extensive.

19    MR. GLICKSTEIN:  I would like to address some

20    questions concerning the second amendment because it was raised

21    by Mr. Risley.

22    First, I think Mr. Risley misunderstands what

23    the second amendment does and what the second amendment doesn't

24    do.  As Your Honor knows and as we said in both of our briefs

25    in support of the settlement and as we said numerous times on

|           |    |                                                                      |
|-----------|----|----------------------------------------------------------------------|
| 14:32:45  | 1  | the record beforehand, all of these settlements stand together       |
| 14:32:55  | 2  | or fall together.  It has always been incumbent, we thought, on      |
| 14:33:05  | 3  | all of the major defendants and all of their insurers to             |
| 14:33:09  | 4  | participate in this process so that we could bring relief to         |
| 14:33:14  | 5  | homeowners.  We had made crystal clear to all parties that that      |
| 14:33:23  | 6  | included North River's excess insurer.                               |
| 14:33:30  | 7  | North River's primary insurers, Liberty Mutual                       |
| 14:33:34  | 8  | and Arch, have put in their policy limits towards settling           |
| 14:33:39  | 9  | these claims and North River has not.  So that raised a              |
| 14:33:50  | 10 | conundrum for the parties because our clients were adamant that      |
| 14:33:55  | 11 | they were not going to go forward with the settlement if there       |
| 14:34:01  | 12 | was not participation by North River.  We so notified the            |
| 14:34:07  | 13 | Court.  We so notified the PSC.  We so notified InEx.                |
| 14:34:16  | 14 | Our first goal was to see if we could reach an                       |
| 14:34:20  | 15 | agreement with North River.  The Court scheduled a mediation on      |
| 14:34:23  | 16 | May 31.  That mediation failed.  So after May 31, beginning in       |
| 14:34:31  | 17 | June, the parties began to discuss whether there was another         |
| 14:34:36  | 18 | way of reaching a resolution that could be achieved without          |
| 14:34:52  | 19 | North River's participation.                                         |
| 14:34:53  | 20 | What we did is we researched the law.  There is                      |
| 14:35:01  | 21 | a series of cases under Louisiana law that permits an insured,       |
| 14:35:08  | 22 | here InEx, to settle a case without the consent of the insurer       |
| 14:35:15  | 23 | where time is of the essence, meaning there will be immediate        |
| 14:35:21  | 24 | damage to the insured if they don't settle, where the insurer        |
| 14:35:26  | 25 | unjustifiably declines to settle the case and settlement is          |

| | |
|---|---|
| 14:35:35 | 1 |
| 14:35:51 | 2 |
| 14:35:59 | 3 |

reasonable.  So we -- Arch, Liberty, the PSC, and InEx -- under the authority of that case law, reached a high-low settlement. What that settlement did was:

(1)  It preserves North River's ability to say that its insured InEx has no liability at all, and that will be tested in the upcoming trial on November 26;

(2)  It reserves to North River all of its coverage defenses;

(3)  It reserves its right, if any -- and I emphasize *if any* because that's a legal issue that Your Honor will have to determine -- to seek indemnity from other parties.

The nature of the high-low settlement is as follows:

If InEx and North River are successful in the bellwether trials and InEx is found not to be liable, then Knauf at that point will waive its right to terminate the settlement because InEx has been found not to be liable.

On the other hand, if InEx is found to be liable as a bad faith seller and, in addition to that, the Court following trial determines the issue of solidary liability in favor of the PSC, then that means in that case that InEx and, subject to coverage, its insurer North River must pay the entirety of the damage and be left with its right to seek indemnification if it can get it.

In that instance the insured, under the *Babst*

14:38:05    1    case, has agreed that there's really no reasonable prospect

14:38:10    2    that the damages, given the number of people and the cost, can

14:38:13    3    be less than the $72 million in available coverage, and so in

14:38:18    4    that case there is a $72 million settlement.

14:38:23    5            If there is an intermediate result such as a win

14:38:26    6    against some plaintiffs and not others, or if there's a win

14:38:30    7    against all plaintiffs but there's not a determination of

14:38:35    8    solidary liability, instead it's only several liability, then

14:38:38    9    there's an intermediate result of $36 million.

14:38:45    10           But what is at issue before the Court today and

14:38:52    11   what isn't at issue?  Mr. Duplantier said this, but it may be

14:38:59    12   worth slowing down what we are talking about here.  The issue

14:39:05    13   is whether the second amendment is fair to the class, because

14:39:12    14   what the second amendment does is it gets Knauf to agree not to

14:39:23    15   withdraw from its settlement based on North River's

14:39:29    16   nonparticipation.  That is obviously a huge benefit to the

14:39:34    17   class.

14:39:39    18           If ultimately it is found to be enforceable,

14:39:45    19   then it liquidates the damages because it was a good faith

14:39:48    20   settlement by the insured under circumstances which we think

14:39:53    21   enable the insured to bind its carrier because time is of the

14:39:58    22   essence and there was unjustifiable delay on the carrier's

14:40:03    23   part.  That's a benefit to the class.

14:40:11    24           So all the Court has to do now is determine

14:40:16    25   whether the second amendment is fair to the class.  As to

14:40:23  1    whether additional notice needs to be provided to the class,
14:40:27  2    the joint briefs submitted by the PSC, Knauf, and InEx on
14:40:34  3    October 23 -- unfortunately, I don't have the record number,
14:40:37  4    but pages 15 to 17 address the notice issues.  When you have an
14:40:47  5    amendment that is unilaterally beneficial to the class --
14:40:51  6    North River doesn't say there's any impairment of the class's
14:40:56  7    ability under the settlement -- there doesn't need to be a
14:40:59  8    second notice that says you have got even more benefits than
14:41:02  9    what you thought you had in the first place.
14:41:07 10             What's not at issue today?  What's not at issue
14:41:12 11    is whether or not this second amendment is binding upon
14:41:20 12    North River.  That's a coverage issue.  The agreement preserves
14:41:27 13    North River's coverage defenses.
14:41:30 14             So, yes, there is a risk, but it's a risk to
14:41:35 15    Knauf and a risk to InEx -- actually a risk to InEx and a risk
14:41:42 16    to the PSC that at the appropriate time, when the issue of
14:41:48 17    whether or not the second amendment is binding on North River,
14:41:54 18    that if the appropriate findings aren't made, that the
14:41:59 19    agreement will not be enforceable.  That's possible.
14:42:03 20             We think and we feel very confident that we will
14:42:06 21    be able to meet the test that's in the case law and that it
14:42:11 22    will be enforceable.  I guess we are putting our money where
14:42:14 23    our mouth is because we waived at least that termination right
14:42:22 24    on a bet that the facts and the law will support us in that
14:42:26 25    regard.

14:42:30
14:42:37
14:42:42
14:42:44
14:42:50
14:42:56
14:43:02
14:43:09
14:43:12
14:43:14
14:43:19
14:43:25
14:43:28
14:43:32
14:43:37
14:43:40
14:43:45
14:43:48
14:43:54
14:43:59
14:44:02
14:44:12
14:44:15
14:44:22
14:44:30

1        There are other contingencies in the settlement

2  that go beyond the North River contingencies because, as we

3  said, all the settlements stand or fall together.  I think

4  you've heard Mr. Panayotopoulos say that if certain claims,

5  particularly on the Taishan side, are not resolved, that they

6  will have too much exposure to go forward and that might cause

7  them to go into bankruptcy, which would or could result in

8  everything unraveling.

9        So, yeah, we still have some work ahead of us.

10  The fact that we presented this settlement to you today doesn't

11  diminish our determination to go forward.  We are and continue

12  to be working very hard because we think this is in the

13  interest of the homeowners.  We think this is in the interest

14  of the settling defendants.  We want it to succeed, and we will

15  work very hard for it to succeed.  We presented it to you

16  because we believe it's fair, but there are contingencies.  We

17  haven't waived them.  I think Your Honor just stated that

18  you'll provide us with an ample amount of time.  To assure that

19  those contingencies are fulfilled, the termination dates are

20  being extended.

21        I think what I heard Mr. Risley say is that if

22  North River's rights are not impaired, they agree that they

23  don't have standing.  I think that is, in fact, where we are

24  because their coverage defenses are preserved.  The InEx and

25  PSC members can say whether they disagree, but I think that

14:44:36  1    applies to all three issues that he addressed.

14:44:43  2              First, there's one assignment, not two

14:44:44  3    assignments.  There's an assignment of the policy under the

14:44:50  4    InEx settlement with the PSC.  I think the second assignment

14:44:55  5    that Mr. Risley referred to is not an assignment of any policy

14:44:59  6    rights but an assignment of any recovery that they obtain,

14:45:05  7    which is different.  It's an assignment not of a claim but of a

14:45:11  8    recovery.

14:45:14  9              Then there's the exhaustion issue.  The Court

14:45:16  10   has to determine whether the policy is exhausted for the

14:45:20  11   purpose of whether it's fair to the class.  And there's the

14:45:22  12   second amendment, is the second amendment fair to the class.

14:45:29  13             North River will have the opportunity -- nobody

14:45:30  14   is attempting to deny it due process -- to assert its coverage

14:45:35  15   position.  And if, in fact, at the appropriate time their

14:45:42  16   coverage positions are sustained in whole or in part, then

14:45:46  17   their coverage positions are what their coverage positions are.

14:45:50  18   They are not waived by the second amendment or anything else in

14:45:53  19   these settlements.

14:45:54  20             So at the bottom, they really don't have

14:45:59  21   standing.  What we have done is put in place a mechanism that

14:46:05  22   we think ultimately will bind North River, but today is not the

14:46:09  23   forum.  Today is not the opportunity for the Court to rule

14:46:14  24   about whether it is or isn't binding.

14:46:20  25             **THE COURT:**  What we need to do, I think you and

14:46:23   1   North River need to at least talk, and then let me know whether

14:46:33   2   there are any issues I need to resolve and what the issue or

14:46:35   3   issues are.  Then I will set something convenient with your

14:46:43   4   schedule, and we will deal with it that way.

14:46:45   5              I'm hearing some things that may moot some

14:46:49   6   things and some things that may not moot some things.  Until

14:46:53   7   you sit down and talk about what your problems are and what

14:46:56   8   their solutions are -- some of the conversation, I think I

14:47:06   9   understand it, but you may feel it's too vague and you might

14:47:09  10   want some specifics, and he may feel it's too vague and he may

14:47:14  11   need some specifics.  So I think you all ought to get together

14:47:19  12   and see where you are and let me hear from you as to whether

14:47:23  13   there is an issue or issues you need me on.

14:47:25  14              **MR. RISLEY:**  I just want to make it clear our

14:47:26  15   position is that that second amendment to the settlement is not

14:47:29  16   before the Court today.  I raised it only because InEx did in

14:47:32  17   their presentation, in responding to it, but certainly the

14:47:34  18   response is it's not even set for hearing today.

14:47:37  19              **THE COURT:**  I think he agrees with you and he feels

14:47:39  20   that may never be before the Court.  It may be something that

14:47:42  21   you have no complaint over.

14:47:44  22              **MR. RISLEY:**  Fair enough, Your Honor.

14:47:46  23              **THE COURT:**  Thank you very much.

14:47:47  24              **MR. MILLER:**  Your Honor, one thing real quick, just a

14:47:49  25   point of clarification.  The extension to the withdrawal

14:47:51  1    rights, counsel for Banner and InEx tapped me on the shoulder.

14:47:53  2    It applies to those two parties as well?  Global too?

14:47:59  3              THE COURT:  Yes.

14:48:00  4                   All right.  Court will stand in recess.

14:48:02  5              THE DEPUTY CLERK:  All rise.

14:52:56  6              (Proceedings adjourned.)

14:53:01  7                              *  *  *

          8                          **CERTIFICATE**

          9         I, Toni Doyle Tusa, CCR, FCRR, Official Court

         10    Reporter for the United States District Court, Eastern District

         11    of Louisiana, do hereby certify that the foregoing is a true

         12    and correct transcript, to the best of my ability and

         13    understanding, from the record of the proceedings in the

         14    above-entitled matter.

         15

         16

         17                                 *s/ Toni Doyle Tusa*
                                            Toni Doyle Tusa, CCR, FCRR
         18                                 Official Court Reporter

         19

         20

         21

         22

         23

         24

         25

**$**

$1.1 [1] 25/23
$1.1 billion [1] 25/23
$100,000 [7] 27/25 85/9 85/15 115/8
115/10 115/19 116/15
$11,285,000 [1] 27/15
$15 [1] 58/1
$15 million [1] 58/1
$16 [1] 27/16
$16 million [1] 27/16
$160 [6] 25/9 26/1 26/19 26/22 30/20
37/6
$160 million [6] 25/9 26/1 26/19 26/22
30/20 37/6
$164,000 [1] 17/23
$165,000 [1] 114/22
$2.9 [2] 28/3 100/25
$2.9 million [2] 28/3 100/25
$200,000 [3] 113/2 115/11 116/16
$30 [4] 29/8 70/9 70/10 70/13
$30 million [4] 29/8 70/9 70/10 70/13
$36 [3] 122/12 124/10 132/9
$36 million [3] 122/12 124/10 132/9
$4,746,000 [1] 27/15
$40,000 [1] 44/20
$400,000 [1] 27/24
$5,000 [2] 33/18 44/10
$53 [2] 27/20 95/11
$53 million [2] 27/20 95/11
$6,000 [1] 96/20
$72 [6] 31/10 118/9 122/11 124/10 132/3
132/4
$72 million [6] 31/10 118/9 122/11
124/10 132/3 132/4
$99,000 [1] 27/25

**'**

'til [1] 119/12

**0**

02110 [1] 2/16
09-MD-2047 [1] 1/5

**1**

1 percent [1] 44/18
1,000 [7] 12/20 12/21 25/3 52/19 54/12
100/22 101/9
1,200 [1] 37/12
1,400 [8] 12/22 25/11 25/13 36/7 37/18
39/24 48/4 49/13
1.16 [3] 84/19 85/6 85/16
10 [3] 16/3 45/7 57/5
10 minutes [1] 20/21
10,000 [4] 28/9 101/5 110/7 116/14
10-minute [2] 20/19 49/19
100 [1] 69/21
100 percent [1] 70/20
1000 [1] 2/2
10010 [1] 3/6
10022 [1] 2/6
10631 [1] 3/2
11 [4] 24/6 38/17 73/5 88/13
1100 [2] 1/22 2/12
11th [1] 2/18
121 [1] 3/24
127 [1] 5/23
129 [1] 5/24
12:00 at [1] 22/2
13 [3] 1/8 6/2 90/2
14 [1] 18/1
15 [10] 6/21 14/19 17/14 38/3 39/7 39/22
42/2 57/5 101/21 133/4

150 [1] 54/14
16 [1] 133/1
1600 [1] 3/18
1603 [1] 3/24
16117 [1] 129/11
16119-2 [1] 129/7
16150-2 [1] 46/25
16150-3 [1] 45/8
16157-1 [3] 46/12 46/13 47/24
16188-1 [1] 38/12
16188-2 [1] 39/5
16188-3 [1] 38/14
17 [2] 17/13 133/4
19 [3] 17/14 40/19 87/14
19106 [1] 1/20
1992 [1] 64/18
1998 [1] 64/18
1999 [1] 64/19
1:30 [1] 89/5

**2**

2,000 [1] 18/7
2.2 [1] 44/7
20 [3] 6/21 18/17 101/19
20,000 [2] 12/20 116/15
200 [2] 54/14 101/15
200-and-some [1] 62/24
2005 [2] 13/21 64/20
2006 [2] 13/21 38/8
2007 [2] 13/21 52/21
2008 [1] 13/21
2009 [6] 14/19 17/12 50/21 50/22 51/6
56/20
2010 [7] 17/14 18/1 51/24 51/24 52/15
52/23 100/14
2011 [9] 18/17 38/4 38/5 38/13 39/7
39/22 56/14 56/20 78/10
2012 [5] 1/8 6/2 87/14 88/13 90/2
2013 [1] 58/7
2047 [3] 1/5 6/7 14/22
220 [1] 3/2
22nd [1] 3/5
23 [22] 13/12 32/7 32/21 32/24 32/25
32/25 38/13 42/14 51/16 55/8 57/21
58/18 61/7 78/21 88/8 88/23 109/14
109/16 122/4 122/8 122/21 133/3
234 [2] 28/6 40/13
2400 [1] 2/22
24th [1] 3/9
25 percent [1] 103/22
26 [3] 37/22 97/15 131/6
2800 [1] 3/21
28401 [1] 2/2
294 [2] 23/4 103/21
29601 [1] 2/19
2nd [1] 3/12

**3**

3.2 [1] 44/9
30,000 [2] 12/21 116/15
300 [1] 56/21
30326 [1] 2/23
31 [3] 27/15 130/16 130/16
3100 [1] 2/2
314 [1] 2/2
32 percent [2] 26/15 26/16
328 [1] 10/18
33131 [1] 3/12
33134 [1] 3/24
33176 [1] 3/2
333 [1] 3/12
3344 [1] 2/22
350 [1] 56/21

37 [2] 40/5 40/7
38 [2] 8/12 40/6
388 [1] 103/21
388 opt-outs [1] 23/4
39 [2] 40/5 40/6
39th [1] 28/6

**4**

40 percent [1] 44/16
406 [1] 4/1
40th [1] 2/9
42 [1] 129/7
425 [1] 2/5
4400 [1] 3/12
46 [4] 35/24 35/25 37/16 45/15

**5**

5,000 [1] 48/2
5,200 [3] 28/8 41/24 46/22
50 [1] 56/25
50 percent [2] 29/15 70/11
50,000 [1] 12/17
500 [2] 1/19 4/1
504 [1] 4/2
51 [2] 3/5 129/7
510 [1] 1/19
589-7778 [1] 4/2

**6**

6-foot-5 [1] 24/7
60 [2] 11/23 101/17
60,000 [1] 12/17
68 [1] 128/2

**7**

70 [1] 22/11
700 [3] 99/1 101/2 102/3
701 [1] 2/9
70112 [1] 3/9
70113 [1] 1/17
70130 [2] 3/15 4/2
70139 [1] 2/9
70163 [2] 1/23 2/13
75 [2] 2/18 22/12
755 [1] 3/15
76ers [1] 24/7
77056 [1] 3/18
7778 [1] 4/2
78 [2] 22/12 37/22

**8**

820 [1] 1/16
88 [2] 3/2 93/3
8:30 [1] 13/12

**9**

90 exhibits [1] 59/2
90 percent [1] 114/8
90405 [1] 3/21
909 [1] 3/9
9:00 [1] 13/13

**A**

ability [7] 24/17 41/12 56/19 81/25 131/4
133/7 137/12
able [19] 7/24 7/25 11/7 12/24 13/8
15/22 16/7 16/12 18/13 54/19 54/25 64/3
70/6 92/3 96/1 96/7 113/14 126/7 133/21
ably [1] 22/3
about [73] 6/21 12/11 12/20 12/20 12/21
13/15 13/21 15/18 22/17 26/15 27/16
28/16 34/13 35/2 35/8 35/14 41/18 41/24
42/1 43/1 45/8 45/10 45/20 46/4 46/8

**A**

about... [48] 47/2 48/9 49/7 56/14 56/21 58/17 58/18 59/15 61/11 64/11 70/21 70/22 71/10 72/5 72/23 72/24 73/25 74/20 83/9 85/5 91/8 91/14 92/2 92/8 93/3 94/7 99/6 101/4 101/6 103/9 108/15 110/15 111/9 111/10 112/11 113/19 115/21 115/25 119/2 119/16 121/1 124/2 124/23 127/4 129/4 132/12 135/24 136/7
above [1] 137/14
above-entitled [1] 137/14
absent [2] 33/4 78/1
absolute [2] 107/1 107/9
absolutely [8] 31/16 62/1 84/14 85/16 86/4 86/18 111/25 113/11
absorber [1] 60/22
absorbs [1] 61/1
absurd [2] 34/21 46/7
abundantly [1] 95/16
abuse [2] 62/14 62/15
accept [2] 27/9 36/22
accepted [1] 26/21
accessed [1] 57/4
accessible [1] 15/20
accident [1] 81/19
accommodate [1] 20/14
accordance [2] 25/7 32/13
according [2] 30/16 88/4
account [2] 59/7 84/3
accused [1] 42/15
achieve [4] 26/12 66/21 69/10 76/9
achieved [2] 69/9 130/18
acknowledge [4] 11/13 11/18 11/22 71/17
acknowledged [1] 26/20
acquire [1] 64/19
across [3] 43/12 49/23 110/4
acted [3] 11/24 41/22 96/24
acting [1] 110/5
action [22] 19/2 43/12 45/19 47/19 56/13 63/19 67/7 67/18 67/20 108/18 108/19 108/21 109/11 109/12 110/11 110/12 111/6 112/1 112/3 113/19 114/18 129/12
actions [6] 108/18 109/5 111/11 113/9 114/25 115/21
active [2] 28/2 75/23
activities [2] 64/20 65/24
activity [2] 58/7 64/17
acts [2] 64/9 67/15
actual [2] 94/20 107/16
actually [16] 16/8 16/11 22/12 31/7 40/6 41/7 52/8 58/22 62/1 69/4 70/8 96/16 96/25 97/1 111/20 133/15
adamant [1] 130/10
add [3] 12/8 79/24 80/2
addition [3] 6/19 7/1 18/22 27/18 30/2 30/17 31/13 70/7 92/21 101/25 102/3 106/3 131/19
additional [14] 10/12 19/2 26/22 30/3 31/10 37/11 70/16 73/15 92/21 110/20 119/16 127/13 127/14 133/1
additionally [1] 98/14
address [18] 6/18 8/6 35/10 35/11 70/19 73/23 78/7 80/3 81/7 82/20 104/23 110/19 111/1 113/18 129/3 129/16 129/19 133/4
addressed [4] 73/7 129/9 129/14 135/1
addresses [3] 108/13 109/25 129/12
addressing [1] 87/12
adduced [1] 17/25
Adelman [2] 3/20 124/25
adequate [6] 19/12 50/16 53/1 57/21

88/21 108/14
adjourned [1] 137/6
admittedly [1] 59/19
adopt [1] 73/24
advance [2] 44/11 118/17
advanced [2] 28/3 85/9
advancement [1] 85/14
advantage [1] 97/17
advantages [1] 97/24
adversarial [1] 76/25
adversaries [1] 91/11
adversary's [1] 59/10
adverse [1] 124/7
advocating [1] 90/22
affected [3] 34/23 88/6 118/8
affidavit [3] 44/8 64/22 67/4
affidavits [1] 31/3
affiliated [1] 65/15
affirm [1] 114/22
afforded [2] 52/25 53/10
afraid [2] 121/21 123/14
after [44] 7/13 14/4 16/7 17/20 19/7 19/22 25/2 25/25 25/3 25/3 25/7 32/9 35/2 36/16 37/8 39/6 39/13 41/9 44/14 44/15 45/17 46/8 46/11 46/13 48/5 50/18 51/21 54/3 54/15 67/1 72/20 75/11 77/2 92/13 95/11 102/4 102/9 102/10 105/21 108/24 114/21 117/11 127/19 130/16
aftermath [1] 14/1
afternoon [7] 80/1 90/1 90/4 90/8 95/7 117/19 124/24
again [10] 40/4 43/22 43/23 47/24 53/13 57/13 57/20 58/15 65/22 91/8 94/1 99/25 108/8 120/13 120/16 125/9
against [32] 11/23 14/13 17/16 27/21 27/22 61/20 66/21 66/25 71/9 77/8 83/3 90/13 92/17 92/20 93/5 96/17 112/6 112/20 118/16 118/20 119/11 119/13 120/22 121/2 122/3 123/3 123/17 123/18 123/22 124/4 132/6 132/7
agencies [2] 70/24 106/9
agency [3] 65/21 105/17 105/22
agenda [3] 8/4 8/5 10/12
agent [4] 64/25
ago [10] 8/3 34/17 35/24 35/25 45/15 56/14 106/12 121/20 122/14 128/1
agree [11] 48/6 71/13 71/14 71/15 71/16 83/9 119/11 120/15 127/4 132/14 134/22
agreed [4] 17/13 29/4 39/25 132/1
agreement [30] 18/18 18/19 31/7 33/17 34/4 42/25 55/14 55/15 57/24 70/15 73/15 73/17 73/20 78/11 79/16 81/10 84/19 85/6 87/15 88/4 90/22 96/8 100/20 103/24 120/21 120/23 121/10 130/15 133/12 133/19
agreements [6] 18/24 19/3 19/8 25/11 82/16 122/4
agrees [2] 122/25 136/19
ahead [1] 134/9
aided [1] 4/6
air [1] 14/8
air-conditioning [1] 14/8
Alabama [1] 33/9
Alhambra [1] 3/24
aligned [1] 101/12
all [147]
allegation [1] 42/17
allegations [1] 51/18
allege [5] 24/2 24/2 28/8 42/18 46/6
alleged [3] 13/18 35/5 96/18
alleges [1] 45/25
alleging [2] 24/5 24/7

allocation [5] 65/16 70/10 103/4 107/3
allow [5] 19/15 86/19 86/19 100/15 128/10
allowed [6] 21/14 54/7 76/8 76/8 102/5 115/15
allowing [2] 9/21 18/10
allows [6] 10/6 10/6 76/11 85/6 108/20 122/4
almost [8] 11/24 18/25 53/4 67/25 69/16 74/13 77/23 103/3
alone [2] 101/21 112/20
along [3] 13/24 32/10 116/16
already [9] 11/2 56/12 57/9 58/9 70/20 87/21 88/18 91/8 91/14
also [36] 7/19 7/21 11/18 14/9 15/23 18/8 20/13 22/18 22/23 25/11 29/1 29/13 29/17 29/24 35/15 39/25 40/11 41/6 41/16 43/21 51/24 57/24 58/2 68/17 68/24 74/16 90/9 94/4 96/3 97/13 104/2 111/7 118/4 128/5 129/7 129/14
alternative [4] 55/24 90/24 92/13 94/13
although [4] 36/17 46/10 87/17 103/6
always [2] 69/4 130/2
am [12] 7/12 15/13 19/18 21/16 24/7 39/23 68/2 75/6 75/11 80/1 104/20 119/2
amass [1] 96/1
ambiguities [1] 73/14
Amchem [11] 34/14 35/11 35/11 35/12 36/6 48/16 48/16 48/17 48/19 48/20 111/21
amended [4] 121/15 123/19 124/6 128/1
amendment [30] 78/12 78/13 78/14 78/18 78/21 78/23 79/2 79/5 79/8 79/11 79/12 79/20 121/12 121/19 122/10 124/13 124/20 129/20 129/23 129/23 132/13 132/14 132/25 133/5 133/11 133/17 135/12 135/25 135/18 136/15
amendments [2] 78/11 117/11
American [3] 3/14 106/6 117/7
Amerson [1] 73/8
amongst [4] 58/15 93/13 96/6 104/3
amount [8] 30/8 55/11 76/21 86/5 91/17 99/16 113/14 134/18
ample [1] 134/18
anachronism [1] 61/12
analysis [1] 62/4
analyzed [1] 72/21
and/or [1] 102/16
announced [4] 56/14 109/1 109/9 111/12
anomaly [1] 61/12 66/5
another [17] 9/12 20/9 20/15 21/2 23/24 24/1 29/7 35/8 44/5 52/15 74/6 85/15 90/10 93/16 116/18 120/5 130/17
answer [2] 108/15 128/16
anti [3] 80/12 80/19 80/23
anti-assignment [3] 80/12 80/19 80/23
anticompetitive [1] 64/9
antitrust [3] 64/9 64/15 64/22
antitrust/anticompetitive [1] 64/9
any [74] 8/2 9/14 15/18 15/24 19/15 20/1 20/2 20/2 20/14 20/25 26/15 26/16 27/4 30/17 31/14 35/9 38/19 39/19 44/2 44/11 45/23 46/13 46/15 46/16 46/19 47/19 47/19 58/8 61/7 61/23 62/8 63/1 65/22 66/23 71/2 74/2 74/12 74/14 74/19 81/16 82/3 82/15 96/11 98/15 99/12 100/11 102/9 102/15 103/11 106/17 107/21 108/2 108/15 109/4 110/1 110/19 112/15 115/9 118/20 120/9 122/22 123/12 123/20 125/8 126/25 126/25 127/13 128/5 131/9 131/10 133/6 135/5 135/6 136/2

**A**

anybody [4]  27/17 94/24 112/2 117/25
anyone [5]  8/13 60/21 71/12 116/24 124/22
anyplace [1]  116/12
anything [17]  12/8 30/19 33/19 34/13 38/23 42/21 45/3 46/4 53/15 59/24 65/6 87/9 95/20 126/19 127/21 129/1 135/18
anyway [2]  95/12 103/19
anywhere [2]  46/15 46/19
apart [1]  90/12
apologize [1]  20/25
Apparently [1]  90/11
appeal [3]  8/20 17/3 66/11
appeals [3]  8/21 58/9 67/2
appearance [2]  6/10 17/12
Appearances [1]  1/14
appears [1]  49/8
appellate [1]  83/13
appliances [1]  14/7
applies [4]  56/24 91/15 135/1 137/2
appointed [3]  11/14 12/1 100/16
appointing [1]  15/5
appoints [1]  108/20
appreciate [6]  8/11 12/1 94/14 100/9 115/14 126/14
approach [2]  10/14 87/2
appropriate [13]  27/4 71/20 72/12 78/23 79/1 79/3 84/25 108/9 113/15 114/3 133/16 133/18 135/15
appropriately [1]  85/10
approval [18]  9/4 9/18 10/6 10/10 11/17 11/17 11/20 19/8 30/24 32/15 32/24 53/8 54/18 55/1 73/21 88/14 98/18 108/8
approvals [1]  56/17
approve [11]  79/19 80/24 88/22 90/22 94/14 107/25 108/9 117/22 118/25 122/19 123/5
approved [6]  53/21 53/23 86/14 108/14 123/11 124/7
approves [2]  84/9 119/9
approving [3]  92/8 92/9 122/5
approximately [1]  103/22
April [1]  78/10
arbiter [2]  58/8 58/12
Arch [5]  80/7 81/12 85/13 130/8 131/1
architect [1]  68/18
are [304]
area [2]  9/17 14/2
areas [1]  60/18
Areaux [1]  2/11
aren't [2]  101/11 133/18
argue [8]  32/11 32/12 32/17 32/17 32/18 72/5 72/11 119/24
argument [2]  49/17 80/3
arguments [2]  91/8 109/19
arises [1]  13/18
arm's [2]  72/1 76/16
arm's-length [2]  72/1 76/16
arms [1]  50/17
arms-length [1]  50/17
Arnie [4]  37/2 37/9 68/16 72/16
ARNOLD [4]  1/19 8/22 42/1 115/6
around [11]  21/11 63/9 63/17 76/21 99/2 99/18 100/2 100/4 101/17 116/12 122/2
arrangement [2]  57/14 81/24
arranges [1]  55/24
as [205]
asbestos [1]  35/12
aside [4]  30/8 102/2 107/3 107/6
ask [13]  9/8 9/9 10/13 22/25 40/3 74/8 74/8 80/24 81/10 84/25 86/18 86/22

96/11
asked [7]  11/11 26/22 21 14 119/
123/5 128/24 129/4
asking [3]  79/19 81/14 112/9
aspect [12]  6/22 29/17 30/5 32/23 51/4 52/15 53/25 54/20 57/19 109/21 111/4 111/14
aspects [8]  28/19 29/11 29/18 35/4 51/17 53/12 56/10 58/21
assert [2]  66/12 135/14
assess [1]  124/4
assessing [1]  64/15
assessments [1]  27/13
assets [10]  62/16 62/19 63/20 65/5 92/14 95/17 95/19 98/16 112/23 112/23
assign [2]  97/12 97/13
assigned [3]  77/18 118/11 119/10
assignment [17]  80/8 80/11 80/12 80/19 80/20 80/21 80/23 80/24 118/9 119/7 119/9 135/2 135/3 135/4 135/5 135/6 135/7
assignments [2]  80/17 135/3
associated [3]  20/3 20/12 96/19
Association [1]  106/7
assume [1]  95/4
Assuming [1]  67/6
assure [2]  75/5 134/18
at [113]  6/22 7/24 9/17 11/6 13/8 13/12 13/13 16/2 16/14 18/14 22/2 22/2 22/22 22/25 23/24 24/6 24/14 26/17 27/3 32/23 33/3 33/4 33/6 33/8 33/23 33/24 38/6 40/7 40/10 40/20 40/21 40/23 42/24 47/9 48/3 49/3 51/19 51/23 51/24 52/16 54/15 58/10 63/2 64/20 65/14 65/17 67/22 68/9 68/20 68/25 72/2 72/3 72/3 72/4 72/7 72/12 72/13 74/9 74/23 75/16 77/16 78/25 82/16 83/13 86/8 86/25 94/6 94/7 95/24 97/11 97/17 97/19 98/2 98/3 98/4 100/10 100/16 101/13 101/14 102/6 102/12 102/13 105/6 109/10 110/14 111/4 114/12 114/14 115/20 116/14 116/18 117/21 118/4 118/8 123/10 123/15 123/21 124/8 124/9 125/25 128/21 129/16 131/5 131/16 132/10 132/11 133/10 133/10 133/16 133/23 135/15 135/20 136/1
Atlanta [1]  2/23
atmosphere [1]  29/1
attacked [1]  104/20
attempt [4]  32/10 33/15 57/5 122/2
attempted [2]  34/6 35/15
attempting [3]  43/13 71/19 135/14
attended [1]  15/4
attest [1]  46/14
attitude [1]  10/9
attorney [4]  33/19 37/13 39/14 44/25
attorneys [4]  21/11 30/18 30/22 94/6
attorneys' [11]  30/17 30/20 30/23 45/4 55/12 55/13 55/16 56/3 69/23 88/12 97/2
attracted [1]  13/1
attractive [1]  65/4
attributable [1]  70/11
auspices [1]  96/5
authorities [2]  38/10 125/20
authority [2]  39/18 131/2
available [12]  18/15 38/6 49/20 70/19 90/24 92/11 92/16 98/10 98/11 114/7 114/15 132/3
Avenue [4]  1/16 2/5 3/5 3/12
average [1]  112/12
averments [1]  22/20
averred [1]  64/8
avoid [1]  110/25

avoided [1]  98/12
avoiding [2]  110/21 111/1
avoids [1]  91/1
awardable [1]  96/21
awarded [1]  96/21
awards [1]  58/6
aware [8]  10/18 75/8 78/9 95/18 101/19 116/1 125/3 127/21
away [9]  10/20 31/13 31/14 31/15 34/5 34/23 118/24 122/25 123/12

**B**

Babst [1]  131/25
back [27]  18/12 20/21 24/17 24/18 24/23 27/3 36/16 41/3 49/19 52/5 53/19 54/4 56/2 67/17 67/17 72/3 72/3 72/4 74/25 86/7 87/1 88/18 89/4 93/4 94/5 96/20 103/24
background [2]  13/17 21/4
bad [5]  53/18 55/9 59/23 66/1 131/19
Bailey [2]  7/18 7/18
baking [1]  60/25
Bandas [40]  23/9 23/10 23/14 23/23 24/1 32/3 33/2 33/22 34/3 34/25 35/3 36/11 36/23 37/5 41/25 42/15 43/4 43/6 43/8 43/10 43/15 43/18 43/22 43/23 44/14 45/10 45/13 46/12 47/1 47/5 47/5 47/7 47/7 47/15 48/25 104/17 104/19 105/4 126/16 126/17
Bandas's [4]  37/24 42/24 47/5 48/15
bankruptcy [5]  27/22 92/15 93/18 102/16 134/7
banks [1]  63/11
banner [54]  2/20 3/1 8/16 19/5 22/4 25/2 26/2 27/18 27/20 27/21 27/22 27/23 27/24 33/6 57/10 57/11 57/17 75/25 79/23 81/2 87/1 89/1 90/7 90/14 90/15 90/16 90/19 90/20 90/20 90/24 90/25 91/15 91/24 92/3 92/13 92/17 92/20 92/25 93/1 93/5 94/8 95/8 95/16 96/4 96/9 96/18 98/6 98/14 98/17 99/13 106/16 107/2 109/6 137/1
Banner's [4]  25/24 91/25 95/19 98/15
Banner-related [1]  90/24
bar [1]  21/16
bargained [1]  81/23
Barrasso [1]  3/7
Barrios [1]  11/18
based [10]  16/10 16/20 17/5 17/25 18/4 41/10 67/15 107/23 124/19 132/15
baseless [1]  86/18
basic [2]  52/11 122/21
basically [4]  33/8 57/13 57/22 95/18
basis [1]  24/8
BASS [2]  3/11 113/22
Batman [12]  33/14 33/14 45/9 45/9 45/12 45/13 47/1 47/2 47/16 47/18 48/11
Batman's [1]  45/11
batting [2]  65/3 68/15
be [150]
Beach [2]  10/19 125/5
bear [1]  7/24
bearing [1]  60/7
Beattie [1]  2/18
became [1]  61/6
because [82]  7/23 12/19 12/25 13/7 23/5 23/6 26/3 26/16 27/19 28/1 28/2 28/18 30/22 30/25 31/11 33/19 33/25 35/5 42/10 42/20 48/23 51/14 56/11 61/4 61/14 63/15 65/4 66/13 67/2 67/19 68/14 69/11 69/13 69/22 72/3 80/12 81/14 82/10 83/5 83/22 86/1 86/14 86/19 91/20 92/9 97/6 98/1 101/22 101/24 102/22

**B**

because... [32]  104/21 109/16 111/10
112/16 112/22 113/13 115/7 116/8 118/1
118/7 118/22 120/4 122/15 123/7 123/14
123/18 128/15 129/12 129/17 129/20
130/10 131/10 131/17 132/13 132/19
132/21 133/23 134/2 134/12 134/16
134/24 136/16
become [5]  33/2 48/13 58/12 95/15
119/4
becomes [1]  110/16
becoming [1]  32/7
bed [2]  102/2 110/13
been [112]  7/6 7/11 7/21 7/24 7/25 8/12
8/24 9/16 9/19 9/22 9/24 10/2 10/3 10/19
10/20 11/1 11/1 11/2 11/5 11/19 11/23
12/4 14/24 14/25 19/9 19/10 19/20 21/13
21/14 21/17 21/20 21/21 23/18 27/11
27/12 29/22 32/25 32/25 34/9 36/20
37/16 37/17 42/10 43/23 50/1 51/22
52/21 52/24 52/25 53/7 56/7 56/15 57/16
58/10 58/14 60/22 61/3 61/5 61/7 62/25
64/8 66/2 67/25 70/21 73/10 75/14 75/15
75/19 76/16 76/18 76/20 76/24 77/1 83/3
83/12 87/21 88/8 90/12 90/18 90/20 92/2
93/12 95/3 96/7 97/5 100/4 100/8 101/19
102/6 104/19 105/1 105/9 105/14 106/11
106/13 109/18 109/19 111/16 114/5
115/6 115/9 119/5 120/5 120/8 121/14
121/14 124/1 124/3 124/16 126/4 130/2
131/17
before [35]  1/11 6/24 10/22 14/25 15/18
17/2 18/11 24/10 32/1 34/6 34/19 35/1
35/25 37/4 38/3 39/3 40/24 41/20 45/21
50/22 60/6 72/18 73/6 73/9 75/6 88/15
88/16 108/25 110/18 112/8 117/2 120/25
132/10 136/16 136/20
beforehand [1]  130/1
began [6]  14/5 14/12 18/14 39/16 100/18
130/17
begin [5]  40/24 52/4 54/12 67/7 76/8
beginning [7]  24/16 24/21 51/24 51/24
95/14 114/4 130/16
begun [1]  56/22 76/1
behalf [23]  44/15 50/7 58/24 68/13 74/1
75/5 76/6 90/14 90/16 90/17 92/24 95/8
98/7 98/22 113/23 117/6 117/20 123/4
125/1 125/4 126/3 129/2 129/8
behind [6]  66/13 68/3 69/15 70/4 94/22
120/3
being [26]  18/9 23/4 35/8 52/22 62/9
73/2 76/15 76/17 79/16 85/25 102/19
104/6 105/23 107/15 107/21 107/23
116/1 116/18 118/8 118/11 118/19
119/10 119/20 121/3 122/18 134/20
believe [40]  22/13 28/9 28/18 31/1 34/20
36/21 70/24 71/2 71/4 73/25 74/11 78/22
92/10 93/14 93/20 103/16 103/23 104/14
104/21 104/22 105/2 105/5 105/5 105/25
106/20 107/24 108/1 108/8 108/12
108/13 109/25 110/11 114/1 114/2 115/4
119/16 119/21 125/19 128/22 134/16
believed [1]  91/11
believer [1]  15/14
bellwether [10]  16/3 17/15 51/23 102/10
108/23 122/11 123/25 124/2 124/12
131/15
belongs [1]  125/22
belt [1]  45/17
belts [1]  31/17
bench [2]  7/12 87/8
benchmark [2]  26/13 26/14

beneficial [1]  133/5
benefit [15]  21/6 27/13 78/3 91/13 92/2
92/25 118/20 132/16 132/23
benefiting [1]  44/8
benefits [2]  55/16 133/8
bequest [1]  112/5
Berman [1]  1/18
best [11]  38/6 90/23 91/12 91/23 92/11
93/25 97/7 114/14 125/14 126/4 137/12
bet [1]  133/24
better [2]  21/2 55/8
between [14]  10/23 50/18 52/11 56/20
57/9 62/6 63/7 65/8 98/13 100/25 104/4
104/5 120/15 120/20
beyond [2]  102/22 134/2
big [7]  53/25 86/8 92/25 99/13 103/6
105/4 112/3
biggest [1]  63/22
billion [1]  25/23
bind [2]  123/21 135/22
binding [14]  78/18 79/12 118/16 119/11
119/13 120/22 122/3 123/3 123/17
123/18 123/22 133/11 133/17 135/24
bit [7]  29/19 35/2 80/3 91/20 112/7 120/3
126/9
blackening [1]  14/6
blades [2]  46/3 46/6
blessed [1]  23/21
blocks [3]  50/24 51/10 99/22
blood [3]  48/21 48/22 95/23
Blossman [1]  2/11
blue [2]  35/25 36/1
board [9]  60/25 110/4 114/8 114/9
119/18 119/19 120/5 120/9 120/10
Bob [1]  11/14
bodily [1]  104/21
bona [2]  23/14 32/20
bond [3]  44/5 67/19 67/22
boom [1]  14/2
Boston [1]  2/16
both [16]  11/6 13/1 14/13 15/8 41/23
50/12 50/13 51/9 56/8 58/16 94/8 98/9
102/16 106/8 125/18 129/24
bothered [2]  56/2 57/13
bottom [2]  70/23 135/20
bought [4]  61/21 63/4 76/6 112/13
bow [1]  22/8
bowed [1]  65/20
Bowl [1]  52/8
Boyd [1]  2/17
Boynton [1]  10/19
Boynton Beach [1]  10/19
BP [1]  32/3
brand [1]  74/25
brand-new [1]  74/25
Brandao [3]  21/18 59/1 129/5
Breach [1]  122/14
Breaches [1]  80/16
break [3]  20/20 49/19 87/1
Breit [1]  9/5
brethren [1]  102/14
bricks [3]  53/17 53/18
bridge [1]  111/18
brief [20]  22/19 22/19 58/25 73/23 75/6
78/22 79/2 83/14 85/13 87/12 98/8 106/4
109/25 114/20 119/14 125/23 129/6
129/7 129/10 129/14
briefed [1]  74/18
briefing [10]  19/17 80/14 80/22 110/20
113/16 120/13 126/17 127/13 127/14
128/10
briefly [7]  76/14 78/8 81/7 84/16 97/3
119/2 125/16

briefs [9]  19/18 28/23 29/20 105/2 105/3
106/1 122/15
bright [1]  49/1
bring [7]  7/24 67/18 92/4 93/1 99/9
103/10 130/4
bringing [1]  126/5
brings [1]  123/24
broader [1]  18/16
brought [2]  21/3 26/23
Brown [1]  43/9
bucket [1]  83/18
builder [6]  29/22 99/22 100/12 102/20
112/20 112/22
builders [21]  3/11 8/17 9/3 14/15 19/6
25/3 26/9 58/2 70/12 99/1 99/18 99/19
99/19 101/7 101/10 102/21 113/17
113/20 113/24 114/2 114/12
builders' [1]  113/23
building [8]  2/8 2/11 13/25 17/6 19/4
50/23 51/10 65/12
buildings [2]  13/20 14/4
Built [1]  63/6
bundled [1]  109/5
burden [1]  83/15
burdening [1]  58/11
Burr [1]  2/8
Burt [1]  47/16
bus [1]  121/16
business [5]  46/10 66/22 77/9 102/16
102/22
businesses [1]  101/8
busyness [1]  117/13
but [111]  8/6 9/9 9/10 12/17 13/5 19/14
21/20 23/16 24/22 24/23 28/23 29/1
29/11 29/17 31/8 31/14 31/17 31/23
33/11 34/14 35/20 35/25 36/14 38/25
39/25 40/6 41/23 42/1 42/3 42/9 43/7
47/21 49/1 50/17 52/4 56/6 58/10 59/25
61/6 61/14 67/11 68/6 68/25 71/6 71/17
72/3 75/12 75/19 76/14 78/12 82/17
82/24 83/10 83/22 91/6 92/24 94/17 95/4
95/17 97/13 97/25 98/14 99/12 99/15
99/21 101/1 102/22 104/2 110/20 111/1
111/9 111/14 112/22 112/24 114/1 115/5
115/9 115/16 115/24 116/3 116/19
117/12 118/2 118/8 118/11 119/12
120/21 121/17 122/5 122/17 123/12
124/6 127/5 127/9 127/16 127/21 127/21
128/16 129/15 132/7 132/10 132/11
133/4 133/14 134/16 134/25 135/6 135/7
135/22 136/9 136/17
Butler [1]  21/18
buy [1]  33/20
buyers [1]  65/20
buying [1]  47/11
Byrne [2]  22/5 41/7

**C**

cadger [1]  48/17
calamity [1]  81/19
California [2]  3/21 43/5
call [12]  6/6 8/22 16/21 36/13 45/14
63/13 65/18 95/10 99/3 99/13 99/19
103/9
called [9]  8/18 36/13 40/2 54/21 82/12
84/3 96/17 100/12 116/10
calls [2]  40/1 51/11
came [9]  24/13 44/17 60/8 65/13 75/6
90/16 91/11 96/20 115/12
camp [1]  99/22
can [53]  11/4 15/23 18/9 26/22 29/9
29/21 29/23 29/24 30/13 30/23 31/15
35/7 41/1 41/5 42/7 45/2 52/7 53/10

C

can... [35]  58/18 59/20 61/9 65/16 65/16 66/14 72/11 78/25 79/12 84/5 84/22 84/23 84/23 84/24 87/5 91/2 92/24 96/8 97/11 104/10 107/6 107/6 110/1 110/12 115/14 119/11 120/14 122/7 123/22 126/9 127/21 128/23 131/24 132/2 134/25
can't [20]  32/11 32/12 32/16 37/12 32/18 32/20 32/21 33/19 34/7 34/20 37/25 41/23 42/21 46/14 46/19 71/15 71/16 72/1 90/11 95/23
candidate [1]  65/4
cannot [1]  62/4
cap [1]  30/8
capacity [2]  54/14 54/15
capital [1]  63/6
capped [2]  29/6 29/7
captain [5]  48/11 48/11 48/14 69/3 128/21
Captain Marvel [4]  48/11 48/11 48/14 69/3
capture [1]  56/11
car [4]  36/1 36/1 36/1 36/1
card [2]  62/19 62/23
care [5]  30/7 36/12 60/4 70/8 113/9
career [1]  7/12
Carolina [4]  2/2 2/19 43/16 44/3
carrier [1]  132/21
carrier's [1]  132/22
carriers [10]  21/22 22/6 81/16 85/7 85/9 86/15 96/1 104/4 120/15 120/17
carries [1]  93/21
Carver [1]  2/11
case [135]  6/6 6/23 7/6 7/25 12/12 12/19 12/20 12/22 12/22 14/18 17/15 17/23 18/5 18/8 18/13 23/17 24/4 24/12 24/16 25/8 26/14 27/24 28/14 28/20 29/11 29/17 29/18 30/21 34/25 35/4 35/9 35/12 35/14 35/20 35/21 35/23 36/5 37/13 37/14 37/17 40/10 40/25 42/13 42/23 44/1 44/5 44/17 44/19 46/4 48/20 49/8 49/11 50/21 51/4 51/5 51/16 51/17 51/18 52/1 52/3 52/3 55/5 59/8 59/8 59/9 59/10 59/13 59/16 59/21 59/22 59/23 59/23 61/2 61/6 61/7 61/18 61/25 62/3 62/11 62/13 64/7 65/22 72/11 72/14 72/19 74/16 77/22 82/16 83/1 83/14 83/20 84/7 85/10 91/9 91/23 94/16 96/14 96/14 96/15 96/17 96/17 101/5 101/12 103/6 106/13 106/22 107/13 108/4 108/4 108/5 108/5 108/24 109/3 109/6 111/14 111/19 111/21 112/2 112/12 112/22 113/1 113/3 113/10 114/11 114/23 115/11 115/17 115/24 130/22 130/25 131/2 131/21 132/1 132/4 133/21
cases [53]  1/8 6/25 7/2 9/18 9/19 9/25 10/2 10/4 12/12 12/16 13/1 13/7 13/10 14/20 14/25 15/16 17/9 19/3 21/12 25/12 26/23 35/1 36/8 56/23 59/24 60/23 67/25 73/13 80/16 84/6 96/15 97/12 97/14 97/14 98/2 98/3 101/20 102/21 102/25 106/11 106/15 106/16 107/13 110/10 110/11 110/11 111/10 112/24 113/4 115/2 115/14 122/14 133/21
cash [3]  29/5 55/5 63/10
categories [1]  23/8
category [1]  110/2
Cathode [1]  43/5
causally [1]  38/25
causation [1]  107/7
cause [4]  31/15 60/6 120/10 134/6

caused [1]  81/19
CC [1]  127/15
CD [1]  127/8
CDC [1]  38/5
CDs [1]  59/2
CDW [5]  45/11 45/25 45/25 47/6 47/7
Center [3]  38/15 106/5 106/5
Centers [5]  38/10 38/16 70/25 105/15 105/21
cents [1]  69/21
cert [1]  6/19
certain [10]  17/18 64/10 65/9 78/15 80/9 90/15 92/9 96/23 118/15 134/4
certainly [10]  32/16 32/19 62/10 71/12 71/25 116/25 123/12 126/19 128/2 136/17
certainty [1]  92/18
certificate [4]  54/2 54/3 56/1 137/8
certification [11]  19/11 108/22 108/23 109/14 109/21 109/22 109/23 109/24 110/2 129/4 129/9
certified [4]  63/10 109/17 109/18 109/18
certify [3]  9/8 112/8 137/11
chain [5]  18/23 18/25 51/8 91/1 99/12
chairs [1]  20/18
challenge [1]  12/19 45/19 71/6
challenged [2]  110/21 110/23
challenges [4]  1/7 31/15 44/16 44/17
challenging [1]  12/24
chambers [2]  127/8 128/23
chance [4]  103/12 113/21 118/21 124/18
chances [1]  103/13
change [2]  84/3 103/24
changed [1]  32/24
changes [2]  73/18 95/4
channel [1]  65/10
Chapa [1]  45/11
characterized [1]  49/7
charge [1]  30/23
charged [2]  39/18 44/25
Charlene [1]  40/17
Chartis [8]  3/4 22/5 41/6 92/23 92/24 98/8 98/10 98/17
chased [1]  37/17
chasing [2]  66/15 66/16
check [1]  55/5
checking [1]  10/19
child [1]  84/18
China [14]  13/23 39/12 60/8 60/15 60/15 61/13 61/15 61/21 62/8 63/5 63/17 63/21 65/6 66/3
CHINESE [58]  1/5 6/7 13/20 14/3 14/14 14/21 15/8 16/20 17/6 17/8 17/18 18/19 18/21 23/19 23/22 24/2 24/3 24/13 25/12 25/14 28/10 38/1 46/19 47/2 47/8 47/10 47/11 51/6 51/19 54/2 54/3 61/5 61/19 61/20 61/22 62/5 63/8 63/11 63/13 63/14 63/15 65/20 66/16 96/15 96/19 97/8 99/15 101/24 103/9 106/18 106/21 108/9 110/5 112/18 116/7 119/17 120/10 133/6
Chinese-based [1]  16/20
CHINESE-MANUFACTURED [3]  1/5 13/20 14/21
chisels [1]  24/14
Choate [1]  2/14
choice [1]  29/21
choose [1]  66/12
chose [3]  26/13 99/20 103/18
chosen [1]  102/1
Chris [1]  128/20
Christi [2]  34/10 43/8
Christopher [2]  23/9 43/5
circuit [10]  8/21 17/3 25/8 32/5 32/13

43/4 48/18 48/18 66/11 122/13
circumstances [2]  112/23 97/14/21
103/17 132/20
circumvent [1]  42/25
citations [1]  83/15
cited [4]  83/14 106/4 107/13 108/6
citizens [3]  116/2 116/18 116/19
claim [15]  34/13 69/22 71/5 71/8 74/12 83/2 84/23 84/24 85/18 86/3 112/6 122/12 122/12 123/12 135/7
claimants [4]  93/5 101/6 116/14 120/7
claimed [2]  38/17 46/11
claiming [2]  92/17 93/14
claims [45]  12/14 17/16 18/9 18/19 18/21 30/14 37/19 56/12 57/7 57/17 57/24 72/25 74/13 81/16 82/13 84/4 84/17 84/21 85/3 85/4 86/4 96/22 97/8 105/5 107/17 107/10 107/14 107/15 107/16 107/16 107/17 107/18 107/20 107/23 109/4 109/4 109/16 112/20 115/2 119/22 120/10 121/2 124/9 130/9 134/4
clarification [2]  128/8 136/25
clarify [1]  117/3
class [91]  6/19 9/9 9/10 18/16 18/18 18/24 19/2 19/11 21/10 23/25 24/5 24/6 25/10 28/2 31/14 32/22 33/5 35/14 35/17 42/17 43/12 43/14 44/18 44/19 45/19 48/6 53/1 53/11 53/11 56/13 57/17 63/19 67/21 68/10 69/24 71/10 72/23 73/18 78/1 79/15 79/16 81/16 93/23 93/23 94/11 103/20 104/2 108/7 108/18 108/18 108/19 108/21 109/5 109/11 109/12 109/17 109/18 109/18 110/3 110/11 110/12 110/22 111/6 111/10 112/1 112/3 112/8 113/8 113/19 114/18 114/25 115/21 118/6 122/9 122/11 122/15 122/16 122/20 124/12 124/15 129/4 129/9 129/12 132/13 132/17 132/23 132/25 133/1 133/5 135/11 135/12
class's [1]  133/6
classwide [1]  117/23
clause [6]  31/13 80/12 80/19 80/19 80/22 80/23
clauses [1]  26/8
Clausewitz [1]  68/3
clean [2]  54/4 63/9
cleanest [1]  22/24
clear [14]  27/1 30/17 42/4 80/15 81/20 84/19 85/16 86/4 95/16 111/9 122/16 124/2 130/5 136/14
clearer [1]  83/4
clearly [8]  43/18 65/23 76/16 76/18 102/17 110/2 110/10 122/18
clerk [2]  21/19 22/24
clerks [1]  21/17
client [12]  33/20 33/21 36/12 46/21 46/23 48/3 50/18 54/24 55/14 60/16 68/6 117/16
client's [1]  53/22
clients [37]  13/5 23/15 23/16 23/17 23/23 24/23 25/16 27/2 27/2 28/25 29/4 31/17 31/18 31/19 31/22 35/17 37/18 37/19 37/24 39/24 40/17 41/23 41/24 42/6 42/7 42/7 42/10 44/11 44/15 47/20 48/21 49/13 53/7 69/14 70/4 91/12 130/10
climate [2]  60/18 60/19
close [4]  22/25 48/23 53/16 54/17
closely [2]  7/4 7/20
closer [1]  35/22
Clothes [1]  49/2
co [1]  43/19
co-counsel [1]  43/19
Coast [1]  13/24

C

cocked [2] 61/17 61/17
Coe [1] 3/17
cog [1] 10/7
Cold [2] 61/13 61/14
Cold War [1] 61/13
collaborative [1] 7/23
colleague [1] 61/8
colleagues [5] 27/16 27/24 28/3 41/7 50/18
collectively [1] 16/23
collusion [7] 32/12 43/21 76/15 88/22 91/10 100/11 111/14
combination [1] 11/8
combined [1] 28/10
come [30] 18/9 20/20 29/4 30/6 32/10 34/5 37/7 45/12 45/13 49/19 64/1 67/17 67/17 67/22 69/23 70/17 86/2 86/13 87/1 89/4 91/7 91/24 96/1 100/16 103/7 103/24 104/8 107/4 107/6 116/10
comes [8] 35/21 45/11 54/5 54/6 55/25 64/7 119/25 120/5
comfort [1] 7/8
comment [2] 12/11 125/16
comments [5] 13/15 19/20 21/7 56/6 126/21
commerce [1] 18/23
commercial [3] 57/23 61/17 101/8
Commission [10] 38/5 38/9 38/15 39/7 39/9 39/11 39/15 39/18 39/22 40/2
committed [1] 53/7
committee [13] 6/14 11/25 15/6 18/3 21/11 24/24 27/13 31/9 39/10 40/23 50/19 52/12 113/23
committees [1] 108/20
common [2] 25/10 62/10
commonly [1] 63/1
communication [1] 15/7
communicator [1] 11/19
community [1] 107/1
companies [22] 25/4 62/6 62/8 62/9 62/10 63/1 63/2 63/8 63/15 63/16 63/24 64/5 64/11 64/25 65/15 66/7 66/18 67/1 99/7 99/8 99/15 116/8
company [27] 3/14 3/17 24/12 62/5 62/7 63/2 63/5 63/6 63/6 63/7 63/8 63/13 63/25 65/2 65/3 65/8 65/17 65/24 66/21 75/9 75/16 78/6 78/19 86/11 90/17 117/7 117/20
comparative [2] 103/5 103/12
compare [1] 69/8
compared [2] 72/25 74/22
compensation [1] 11/8
competitively [1] 66/2
compilation [2] 98/25 99/3
complained [1] 14/9 47/21
complaint [7] 28/11 28/12 93/8 93/8 115/12 116/11 136/21
complaints [1] 35/5
complete [9] 28/24 29/6 29/21 35/7 35/16 36/4 71/11 108/6 124/18
completed [1] 91/18
completely [3] 42/19 75/1 79/5
completes [1] 116/20
complex [8] 15/1 76/19 76/24 84/6 86/10 112/1 112/24 113/5
complexes [1] 54/13
complexities [1] 98/14
complexity [8] 32/14 72/5 72/7 76/17 91/13 98/12 98/13 101/4
complicated [3] 31/23 61/7 61/10

complicating [1] 115/23
complication [4] 36/3 36/5 36/8 36/8 36/10 36/11
components [1] 14/7
compromise [6] 71/21 74/10 91/20 93/23 95/4 114/3
compromises [1] 69/10
computer [1] 4/6
computer-aided [1] 4/6
concededly [1] 59/17
conceivably [1] 36/15
concept [1] 114/13
concern [5] 111/3 111/9 112/19 114/4 114/12
concerned [3] 92/25 111/10 112/11
concerning [1] 129/20
concerns [3] 47/3 47/18 125/12
concludes [1] 12/6
conclusion [5] 74/21 78/3 95/20 108/12 126/5
conclusions [2] 16/4 17/22
condition [4] 24/20 53/19 69/20 75/14
conditioning [1] 14/8
conditions [1] 21/2
condominium [1] 10/19
conduct [4] 59/23 77/9 105/25 124/3
conducted [4] 51/19 51/23 77/3 95/18
conducting [1] 76/22
conference [9] 1/10 6/16 6/21 8/1 10/13 13/11 17/2 28/6 87/8
conferences [4] 15/3 31/12 40/5 40/7
confess [1] 41/19
confident [1] 133/20
confidential [2] 34/3 100/19
confirm [2] 117/14 121/6
confirmation [1] 117/9
confirmed [1] 52/2
conflict [4] 31/21 125/17 125/20 125/21
conflicts [1] 44/11
congestion [1] 47/22
connection [5] 8/19 9/5 65/1 65/8 95/19
CONNER [3] 2/18 22/6 87/11
consent [2] 119/9 130/22
Consequently [1] 61/21
consider [7] 22/25 24/19 39/4 52/17 97/5 97/11 124/20
consideration [2] 19/20 19/21
considered [1] 124/7
considering [1] 103/16
consistent [1] 108/4
consolidated [2] 14/25 17/9
constitutional [1] 31/1
constructed [1] 14/4
construction [1] 14/2 54/11
consumer [11] 38/4 38/9 38/14 39/6 39/9 39/11 39/15 39/17 39/22 40/2 115/10
consumers [3] 115/1 115/9 115/18
contain [2] 80/19 80/23
contains [3] 59/2 59/3 73/17
contaminants [1] 54/1
contemplated [1] 83/21
content [1] 120/6
contest [1] 45/24
contested [5] 84/4 85/3 85/4 85/18 86/3
context [1] 96/15
continents [1] 59/12
contingencies [4] 134/1 134/2 134/16 134/19
contingent [3] 44/6 44/16 81/25
continue [5] 7/15 18/10 79/12 128/15 134/11
continued [1] 12/4 75/17 82/18
contract [3] 44/6 55/23 103/10

contractor [2] 55/22 55/25
contractual [1] 102/23
contribute [2] 13/10 57/25
contributed [2] 29/8 96/24
contributes [2] 30/19 58/2
contributing [1] 38/18
contribution [6] 25/24 25/24 25/24 70/9 88/2 88/5
control [6] 38/10 38/16 71/1 84/10 105/16 105/21
conundrum [1] 130/10
convenient [1] 136/3
Convention [2] 115/8 115/13
conversation [2] 100/17 136/8
conversations [2] 100/18 121/4
cooperation [2] 12/2 58/14
cooperative [1] 21/23
coordination [1] 15/7
copper [3] 14/6 46/5 60/17
copy [4] 22/24 48/7 127/8 127/25
Coral [1] 3/24
corporate [9] 62/6 62/14 62/15 62/17 62/18 62/23 64/4 64/13 67/16
corporation [7] 2/18 19/5 19/5 62/16 62/20 87/11 87/14
corporations [1] 62/17
Corpus [2] 34/10 43/8
Corpus Christi [2] 34/10 43/8
correct [30] 30/1 111/21 111/25 113/11 114/20 121/4 137/12
corroded [3] 46/3 46/5 47/20
corrosion [4] 46/1 47/17 60/17 119/20
cost [5] 27/23 55/19 114/23 115/3 132/2
costly [1] 30/25
costs [22] 25/9 27/11 27/14 27/14 27/15 27/16 56/3 69/12 69/24 69/25 84/24 85/10 85/14 85/22 88/2 92/22 97/2 101/1 112/25 115/7 120/20
cottage [1] 32/4
could [31] 16/9 16/13 19/23 21/9 25/5 35/6 36/14 38/18 39/12 52/1 59/24 63/2 66/2 67/24 68/6 69/11 70/17 74/13 74/14 74/22 75/14 78/24 92/10 112/8 113/13 122/8 122/11 130/4 130/14 130/18 134/7
couldn't [12] 21/13 21/14 21/17 21/20 21/21 35/19 44/2 45/24 55/8 83/4 102/22 103/1
counsel [35] 6/9 8/3 8/22 10/13 11/23 12/11 13/12 15/4 15/5 19/1 21/10 21/21 25/9 25/10 25/10 29/6 32/9 43/15 43/19 58/15 73/2 73/13 75/6 76/4 87/3 88/9 91/14 92/23 93/23 94/11 100/7 115/6 125/17 127/4 137/1
count [24] 72/1 82/9 82/10 85/11
countless [2] 15/12 72/18
countries [1] 64/12
country [12] 7/1 16/2 21/11 39/19 43/12 67/21 99/2 99/9 99/18 100/2 100/4 101/18
County [2] 42/23 125/5
couple [9] 8/23 38/2 41/16 53/5 53/12 56/10 90/13 122/14 128/9
coupon [2] 25/17 53/15
course [4] 19/17 66/1 71/11 74/16
court [168]
Court's [9] 10/9 10/25 15/22 18/14 84/10 91/16 92/8 122/1 126/20
Court-appointed [1] 100/16
Court-approved [2] 53/21 53/23
courteous [1] 100/8
courtroom [17] 6/16 7/16 8/8 11/15 20/6 20/10 20/12 20/15 21/2 21/15 49/20 66/8

**C**

courtroom... [5] 68/21 90/10 121/18 128/22 129/17
courts [15] 7/3 7/5 10/1 10/2 11/19 15/14 17/10 44/24 44/25 92/2 97/21 106/15 111/3 111/7 111/8
Cousins [1] 3/17
cover [3] 29/6 60/24 93/21
coverage [27] 81/20 82/2 86/15 86/16 92/3 97/14 97/14 97/22 101/17 101/20 101/22 101/24 102/1 102/10 102/15 103/18 118/14 131/8 131/22 132/3 133/12 133/13 134/24 135/14 135/16 135/17 135/17
covered [5] 84/24 85/23 104/17 105/2 119/22
covers [2] 30/20 57/22
CPSC [6] 28/17 41/17 52/2 70/25 105/12 105/13
create [4] 15/19 32/9 124/15 125/20
created [2] 58/4 113/9 125/22
creates [1] 61/15
creating [1] 14/21
credit [3] 57/14 85/7 85/8
credited [1] 86/5
creditors [2] 62/16 62/16
critical [2] 9/23 18/8
cross [2] 41/12 110/16
cross-examined [1] 41/12
crucial [1] 82/18
crucible [1] 41/10
crystal [1] 130/5
culminated [1] 52/14
curators [1] 15/6
current [1] 121/4
currently [2] 23/4 23/4
customer [1] 65/11
customers [4] 47/4 57/18 65/25 76/6

**D**

dad [2] 69/4 69/4
daily [1] 41/8
Dallas [1] 43/3
damage [13] 13/19 35/22 36/4 46/7 46/10 52/3 61/6 69/21 70/20 107/16 108/3 130/24 131/23
damaged [4] 30/14 36/2 36/2 120/8
damages [15] 23/20 29/13 29/14 30/9 34/22 96/18 96/20 107/19 118/19 123/21 124/5 124/12 124/15 132/2 132/19
Darden [1] 2/11
date [3] 26/17 27/11 127/15
dates [2] 9/10 134/19
Daubert [1] 30/23 30/25
Dave [1] 22/6
DAVID [4] 2/18 3/23 87/11 125/1
Davis [1] 21/24
Dawn [2] 11/18 48/24
day [8] 11/6 32/1 41/5 44/14 46/22 74/9 74/24 97/7
days [4] 46/12 47/25 116/1 125/15
de [1] 67/11
de novo [1] 67/11
deadline [1] 127/20
deal [20] 12/23 13/3 15/24 19/10 23/24 27/4 46/21 61/18 92/15 94/5 94/10 94/12 99/11 104/17 104/20 109/14 125/25 127/16 127/18 136/4
dealing [5] 31/11 51/12 97/21 105/22 108/24
dealings [1] 99/14
deals [1] 99/14
dealt [5] 78/12 99/7 99/8 107/14 107/21
deaths [1] 38/18
debts [1] 62/7
decades [1] 82/24
deceitful [2] 49/7 49/8
deceiving [1] 49/6
December [1] 18/17
December 20 [1] 18/17
decent [1] 69/6
decide [4] 84/11 93/12 103/8 112/5
decided [5] 68/8 97/13 101/2 102/4 122/13
deciding [1] 91/22
decision [7] 26/16 26/24 27/6 27/7 31/24 35/22 64/6
decisions [4] 31/24 83/13 101/19 101/21
declare [1] 118/14
declines [1] 130/25
dedicated [1] 43/14
deducted [1] 55/19
deduction [1] 55/13
deductions [1] 55/18
deep [1] 62/2
default [1] 17/1
defeats [1] 98/9
defect [6] 51/17 51/18 60/9 75/13 77/12 77/15
defective [4] 17/16 59/17 59/19 75/11
defend [1] 62/21
defendant [13] 10/21 34/1 36/4 45/23 47/13 47/14 76/5 100/3 112/4 112/6 113/14 115/13 118/6
defendants [49] 1/21 3/7 10/20 12/18 12/20 12/21 14/17 14/24 16/20 17/9 18/23 19/3 21/22 22/3 33/25 35/7 35/16 37/12 50/7 51/4 52/11 57/14 58/16 58/24 59/20 64/16 68/13 72/9 72/10 77/14 79/7 87/15 91/23 94/17 94/18 96/24 98/23 99/1 100/22 101/2 101/9 101/16 102/16 104/3 107/2 110/14 129/3 130/3 134/14
defendants' [1] 97/2
defense [8] 6/14 46/18 51/10 59/16 62/22 63/23 120/18 120/20
defenses [19] 59/19 66/6 66/8 66/10 66/13 66/20 67/16 67/24 68/7 71/9 71/18 75/18 77/10 92/1 98/11 109/17 131/8 133/13 134/24
defer [2] 9/9 105/3
defined [2] 119/18 119/21
definitely [2] 123/13 127/3
definition [3] 42/17 113/8 120/11
degree [2] 62/18 92/17
deign [1] 45/2
delay [1] 132/22
delays [1] 91/1
delivered [1] 60/6
delivering [1] 22/1
demand [1] 13/25
demands [1] 63/16
demonstrate [1] 44/2
Denver [1] 43/7
deny [2] 86/18 135/14
denying [2] 16/25 106/20
Department [2] 71/1 71/2
departments [1] 106/7
depending [3] 70/16 78/16 122/10
deposed [1] 47/24
deposition [6] 34/20 44/7 45/7 45/21 47/1 125/12
depositions [10] 16/1 28/6 40/9 40/12 40/13 50/1 62/24 72/17 77/3 90/20
Depot [5] 37/24 46/17 46/17 47/12 47/12
Depot's [1] 45/24
deputy [1] 21/19
described [1] 87/22
deserving [1] 43/14
designated [2] 14/19 24/25
designed [1] 18/18
despite [9] 21/16 72/1 75/19 77/17 106/12 106/25 107/9 108/10 114/12
destroy [1] 86/20
detail [2] 75/12 76/13
detailed [3] 16/3 17/21 17/24
determination [2] 132/7 134/11
determine [6] 19/11 67/12 124/5 131/11 132/24 135/10
determined [2] 25/14 67/10
determines [1] 131/20
detriment [1] 42/8
Deutsch [1] 3/14
develop [2] 16/8 58/13
developed [1] 9/16
developer [1] 10/23
developers [1] 101/10
Devlin [1] 32/5
Dial [1] 2/21
did [39] 9/6 24/13 26/11 31/5 35/13 38/7 39/16 40/21 41/17 43/21 47/15 52/10 59/24 60/10 60/16 60/16 64/18 64/20 65/19 66/12 66/16 66/22 77/5 77/22 79/8 82/6 93/1 96/2 97/12 114/17 121/9 121/23 122/16 125/16 129/15 129/15 130/20 131/3 136/16
didn't [27] 20/25 24/22 26/10 30/10 33/24 34/1 35/18 45/5 45/20 45/22 47/3 47/6 48/23 54/24 55/5 55/5 73/23 95/10 95/13 102/23 102/23 102/24 103/10 103/11 105/19 117/13 125/20
Diet [1] 108/5
Diet Drugs [1] 108/5
difference [1] 97/22
different [20] 12/15 12/15 23/24 36/19 56/10 56/11 60/19 85/2 93/13 95/5 101/9 101/16 108/2 109/3 109/11 111/19 112/1 112/7 118/11 135/7
difficult [5] 37/17 51/15 69/18 76/18 102/13
difficulties [2] 116/8 127/6
difficulty [4] 71/25 72/8 97/16 115/18
diligence [3] 52/24 95/19 96/6
dime [1] 85/17
diminish [1] 134/11
dire [1] 94/13
direct [1] 23/11
directed [4] 39/14 40/10 40/22 117/12
direction [1] 129/11
directly [1] 99/7
disadvantages [1] 97/25
disagree [1] 134/25
disappoints [1] 48/25
discharge [1] 35/19
discharges [1] 85/1
disclose [1] 34/4
disclosed [1] 65/23
discounted [1] 29/24
discourse [1] 39/17
discoverable [1] 77/15
discovered [4] 34/14 72/20 75/14 75/15
discovery [8] 44/14 72/15 76/22 77/1 91/17 108/20 109/7 118/21
discuss [8] 8/4 8/23 28/17 28/18 37/19 40/24 75/12 130/17
discussed [5] 88/9 91/18 97/3 98/7 125/13

**D**

discussing [1] 74/2
discussions [4] 41/4 41/6 41/8 108/25
105/21
Disease [5] 38/10 38/16 70/25 105/16
105/21
dislike [1] 97/19
dispense [2] 11/16 11/21
disposed [1] 82/23
disproportionate [1] 115/2
dispute [1] 82/3
disruption [1] 55/11
dissect [1] 122/4
distinct [1] 47/11
distinguishes [1] 36/6
distributed [3] 46/18 75/10 75/11
distribution [2] 51/8 65/10
distributor [1] 75/9
district [8] 1/1 1/2 1/12 43/3 44/23 44/24
137/10 137/10
divide [1] 93/13
dividend [1] 63/25
do [80] 6/24 7/16 9/11 10/9 11/9 11/22
13/9 19/14 20/3 21/8 23/8 24/22 27/7
27/8 28/24 28/25 29/4 29/25 32/9 32/9
32/14 33/2 33/13 33/19 37/21 42/3 42/14
42/18 45/2 48/4 48/23 54/14 55/7 55/20
61/24 64/13 64/23 65/10 66/22 66/7 68/8
69/15 83/18 83/24 84/22 84/23 85/25
87/1 87/4 93/10 93/17 94/17 104/21
104/22 107/24 112/9 112/10 113/14
115/7 115/10 117/3 118/2 118/21 119/8
119/13 120/14 120/17 122/7 123/16
123/24 124/13 125/10 125/14 127/3
127/7 128/3 129/24 132/24 135/25
137/11
doable [1] 16/11
docket [4] 1/5 8/10 67/4 122/1
doctor [2] 47/21 47/23
document [6] 38/11 38/14 39/2 39/4 39/5
125/7
document 16188-2 [1] 39/4
documents [6] 39/5 59/12 62/24 108/22
111/17 111/17
does [22] 9/14 24/6 27/7 29/16 33/2
33/13 53/18 55/25 61/24 65/2 65/21
66/22 69/8 71/3 72/22 80/19 80/22
117/22 119/18 120/10 129/23 132/14
doesn't [20] 24/8 34/17 36/12 36/12
47/16 47/19 49/4 61/21 82/9 84/3 92/6
113/2 120/2 121/17 122/23 123/15
129/23 133/6 133/7 134/10
dog [1] 62/11
doing [2] 29/22 65/25
dollar [1] 64/1 67/23 69/21 70/1
dollars [4] 113/1 113/3 114/23 122/19
domestic [1] 72/10
don't [55] 15/17 18/11 19/19 26/15 33/4
36/21 36/22 42/6 44/16 46/6 46/23 47/8
48/2 48/6 49/24 55/18 59/9 59/9 61/14
61/23 69/10 69/25 69/25 70/24 71/2
74/18 83/10 94/2 94/4 94/24 95/17 95/20
100/10 102/9 109/10 111/3 114/5 116/11
116/18 119/21 119/24 120/4 120/11
120/21 122/3 122/7 123/17 125/8 125/19
126/1 128/2 130/24 133/3 134/23 135/20
Donald [1] 3/21
done [31] 9/5 9/11 9/25 11/15 11/19
12/25 16/12 18/13 21/3 21/13 21/14
21/17 21/21 21/21 29/22 32/23 35/1
52/25 54/11 56/20 59/13 68/6 74/24
77/14 80/17 84/5 84/5 84/15 116/22
126/3 135/21

Douglas [1] 3/21
douglas [1] 139/25
132/12 136/7
downstream [2] 16/16 16/17
Doyle [4] 4/1 139/9 137/17 137/17
dozen [2] 12/13 12/13
dozens [1] 15/10
draft [1] 121/8
dragged [1] 35/8
Drang [1] 66/14
dream [1] 49/9
dreams [2] 49/9 49/10
drier [1] 60/18
drills [1] 47/20
driven [2] 105/14 113/4
driving [1] 120/17
Drugs [1] 108/5
drum [1] 45/16
drywall [91] 1/5 6/8 13/20 14/3 14/5
14/14 14/21 15/8 17/6 17/8 17/17 17/18
17/18 18/19 18/21 23/19 23/22 24/2 24/3
25/12 25/14 28/9 30/15 33/23 34/22
35/25 38/1 38/18 39/13 40/11 45/23
46/15 46/17 46/19 47/2 47/8 47/10 47/12
47/17 51/6 51/20 53/18 53/19 53/22
53/22 53/24 54/2 54/3 54/5 54/23 55/2
55/9 55/10 56/22 60/22 65/9 65/16 66/1
66/2 66/19 66/23 70/11 75/9 75/10 75/11
75/14 76/6 77/13 85/21 87/16 87/17
87/25 96/15 96/19 97/8 99/17 101/25
103/4 103/12 105/10 105/14 105/18
105/20 106/12 106/18 106/21 108/9
110/5 112/18 119/17 119/25
drywall-related [1] 97/8
due [9] 31/2 52/24 60/4 72/8 73/9 95/18
121/14 121/16 135/14
Duggan [1] 21/25
duly [1] 19/9
DUPLANTIER [4] 2/8 22/5 75/5 132/11
Duplantier's [1] 80/3
duration [5] 32/14 71/24 72/6 76/18
91/13
during [2] 13/21 17/25
Durkee [11] 3/23 3/23 23/8 23/10 23/13
23/14 31/16 42/5 104/24 125/1 125/2
Durkee's [1] 125/18
dust [1] 53/24

**E**

e-mails [1] 38/20
each [10] 13/4 13/6 28/22 90/13 99/13
101/13 110/2 112/6 113/14 116/9
earlier [1] 17/24 38/13 91/21 105/12
121/12
early [4] 52/2 111/8 111/15
easily [1] 82/23
East [1] 13/24
EASTERN [3] 1/2 44/24 137/10
easy [3] 8/10 37/15 61/5
ECF [1] 22/1
economic [5] 57/22 64/13 64/14 70/8
70/19
effect [5] 18/24 85/15 86/20 111/17
115/19
effected [1] 55/23
effects [5] 51/19 105/9 106/18
effort [2] 7/23 125/11
egg [1] 46/1
eight [1] 104/12
either [16] 11/4 11/7 11/23 15/4 16/2
27/5 37/24 52/21 73/13 99/7 102/21
102/23 108/22 108/24 111/14 116/17
ELDON [1] 1/11

electrical [1] 54/5
eliminate [2] 21/8 78/24
eliminates [1] 22/21
eloquent [4] 49/1 49/2 125/12 127/5
eloquently [1] 75/13
else [13] 13/13 27/17 35/16 46/19 63/5
71/12 84/13 94/9 99/4 101/13 124/22
127/21 135/18
elsewhere [1] 68/5
Emanuel [1] 3/4
Embry [1] 44/4
emits [2] 17/18 17/19
emotions [1] 47/21
Emperor's [1] 49/2
emphasize [3] 60/14 125/10 131/10
enable [2] 114/10 132/21
encouraged [1] 16/12
end [5] 11/6 71/21 74/9 74/21 104/8
ended [4] 7/12 30/5 61/4 99/16
endorsed [1] 49/13
enemy [1] 68/4
enforce [2] 65/6 71/16
enforceable [3] 132/18 133/19 133/22
enforced [2] 83/12 83/12
enjoy [1] 24/18
enormously [1] 61/10
enough [9] 24/5 66/6 95/13 100/5 100/15
105/24 114/7 114/9 136/22
enter [5] 42/22 76/5 79/8 81/11 108/25
entered [12] 17/11 17/22 18/2 18/18
18/24 41/13 54/4 72/21 77/18 78/11
87/15 88/21
entering [2] 51/21 78/9
enterprise [1] 63/14
enterprises [1] 63/21
entertained [1] 52/22
entertains [1] 108/19
entire [10] 11/4 28/10 39/5 61/16 76/8
78/24 79/6 79/20 81/14 94/5
entirely [1] 26/24
entirety [2] 129/8 131/23
entities [23] 2/4 2/20 3/1 16/16 16/17
16/20 16/23 17/4 17/5 17/8 17/11 18/2
18/17 18/23 18/25 19/5 66/15 66/16
90/15 91/6 95/8 96/9 99/24
entitled [4] 44/9 49/15 69/17 137/14
entity [1] 90/25
Entrench [1] 68/3
entries [1] 15/12
environment [1] 39/1
environmental [5] 38/15 56/1 105/16
106/5 106/6
EPA [2] 38/10 70/25
equally [1] 91/15
equitable [1] 93/15
erected [1] 67/25
Ernest [1] 34/9
escrow [8] 11/3 82/9 82/11 82/23 84/3
84/7 84/8 84/14
especially [5] 35/9 103/17 112/2 113/12
123/2
Espino [1] 3/1
ESQ [21] 1/16 1/19 1/22 2/1 2/4 2/5 2/8
2/12 2/15 2/18 2/21 3/1 3/5 3/8 3/11 3/14
3/17 3/20 3/23 5/23 5/24
essence [4] 107/15 123/13 130/23
132/22
essential [1] 7/4
essentially [1] 85/15
establish [2] 13/3 77/12
established [2] 7/19 28/14
establishes [1] 28/24

E
establishment [1] 9/22
estimate [2] 25/20 25/22
etc [2] 9/3 9/10
Europe [1] 64/12 64/18
European [5] 64/7 64/9 64/15 64/21 64/22
evaluate [1] 97/5
even [24] 24/2 39/9 45/2 45/25 46/23 55/18 58/13 60/10 63/23 64/19 67/1 93/7 94/2 100/8 101/7 103/13 105/24 113/5 116/4 122/8 123/5 128/4 133/8 136/18
event [1] 107/4
ever [6] 37/17 45/16 61/7 64/1 64/3 112/2
every [12] 8/8 28/22 36/19 41/5 57/4 62/12 70/1 85/17 86/3 90/25 103/3 110/6
everybody [11] 27/5 35/16 91/5 92/11 94/8 97/11 99/4 101/13 112/4 116/15 128/15
everyone [6] 13/13 15/20 66/8 73/19 92/1 109/7
everything [11] 15/19 22/8 69/10 69/16 69/17 71/13 74/13 108/3 126/3 128/16 134/8
evicted [1] 23/18
evidence [17] 17/25 35/9 37/19 38/6 38/23 47/7 51/1 56/24 58/25 59/11 60/3 70/23 71/3 107/10 108/7 120/9 128/4
evident [2] 71/24 83/6
examined [1] 41/12
example [4] 58/18 81/18 96/14 119/18
exceedingly [1] 68/10
excellent [2] 8/9 11/20
except [1] 37/25
exceptionally [1] 13/25
excess [4] 78/15 80/13 114/23 130/6
exchange [1] 39/16
exclusion [3] 26/8 101/22 101/24
excuse [2] 120/14 122/23
exercise [2] 123/6 128/11
exercised [1] 79/1
exhausted [10] 81/13 81/21 82/2 82/8 83/7 84/1 86/15 86/16 118/15 135/10
exhaustion [13] 81/7 82/10 83/21 83/21 84/18 85/11 86/5 119/15 119/17 119/22 120/16 120/22 135/9
exhaustive [1] 77/1
exhausts [1] 83/2
exhibit [8] 22/12 22/14 22/15 22/17 37/22 127/9 128/1 128/2
Exhibit 26 [1] 37/22
Exhibit 75 [1] 22/12
exhibits [9] 19/16 22/11 22/12 22/18 37/22 58/25 59/2 59/3 127/8
exist [4] 23/4 45/5 66/17 119/1
existence [3] 76/15 107/10 107/23
existing [2] 60/5 63/5
expect [4] 21/1 58/7 58/14 123/7
expedited [4] 121/20 121/21 121/24 123/13
expense [5] 32/14 72/5 91/13 100/25 116/9
expenses [9] 29/2 30/3 30/4 55/24 85/10 86/1 88/12 91/3 92/21
expensive [5] 93/19 112/25 113/10 116/6 116/12
experience [1] 7/9
experienced [1] 13/2
expert [2] 64/22 113/4
experts [1] 31/3 41/11 71/6
explained [5] 24/21 73/2 75/13 78/22

79/2
exporting [3] 13/23 127/23
exported [1] 13/23
exporters [1] 14/16
exposure [3] 35/12 127/4 134/6
express [1] 80/20
expressed [1] 19/23 111/8
expressing [1] 127/5
expression [1] 10/8
extended [1] 134/20
extension [1] 136/25
extensive [7] 19/17 95/18 99/14 102/1 109/7 126/17 129/18
extensively [2] 80/22 125/19
extent [6] 85/19 85/24 97/16 107/20 118/2 128/5
Exterior [17] 2/7 2/11 12/5 19/4 75/5 75/15 75/16 75/23 76/5 76/7 77/8 77/9 77/12 77/16 77/18 78/10 79/15
Exterior's [1] 75/18
extort [1] 43/21
extortion [1] 42/16
extraordinary [2] 72/7 115/17
extreme [2] 96/13 103/12
extremely [6] 21/22 58/16 98/8 100/8 103/16 105/25
exuding [1] 60/24
eye [2] 14/10 38/24

F
fabulous [1] 70/3
face [6] 15/14 39/16 39/16 71/19 80/18 120/11
face-to-face [1] 39/16
faced [2] 61/25 64/2
facilitated [1] 16/4
fact [29] 16/4 17/22 21/16 40/19 59/17 60/10 60/21 61/25 71/18 72/9 78/5 82/15 84/2 101/5 102/15 103/25 106/19 107/24 108/1 108/10 115/14 116/1 118/13 119/10 119/17 122/22 134/10 134/23 135/15
factor [13] 32/25 38/19 69/7 72/22 76/17 76/23 77/5 77/21 77/25 102/8 115/21 115/23 123/15
factors [12] 32/13 32/25 68/24 71/23 76/14 76/15 88/8 91/7 91/9 98/17 100/10 108/13
facts [7] 41/11 62/9 63/3 72/20 97/11 113/25 133/24
factual [2] 15/9 22/20
factually [1] 29/12
failed [1] 130/16
failure [2] 14/7 59/23
failure-to-warn [1] 59/23
fair [19] 19/12 50/16 53/1 57/20 59/6 74/11 76/12 78/21 79/21 84/25 88/20 108/13 117/24 132/13 132/25 134/16 135/11 135/12 136/22
fairer [1] 93/15
fairly [1] 71/23
fairness [7] 1/11 6/20 8/15 41/20 52/16 68/25 74/7
faith [4] 88/21 126/4 131/19 132/19
fall [8] 50/22 52/15 52/20 52/21 56/14 56/23 130/2 134/3
FALLON [7] 1/11 6/11 8/7 11/13 37/3 49/25 128/19
falsely [1] 42/15
familiar [4] 38/20 84/6 91/4 108/18
families [1] 36/8
family [2] 17/21 114/24
far [4] 58/10 73/5 92/25 113/25

Farina [8] 7/12 7/15 8/8 21/14 37/4 56/8
Farina's [1] 50/8
fashioned [1] 17/25
fatal [1] 105/7
father [1] 45/15
fault [5] 59/22 61/3 103/5 103/8 103/12
favor [1] 17/20 32/15 65/25 108/7 114/2 131/21
favorable [3] 92/19 98/2 98/3
FCRR [3] 4/1 137/9 137/17
fear [1] 34/17
February [3] 38/5 127/15 127/16
February 2011 [1] 38/5
federal [14] 7/2 7/4 10/2 10/2 14/13 14/20 15/7 44/25 88/23 100/1 105/17 105/22 106/9 116/11
fee [13] 25/9 25/10 25/10 26/1 26/17 37/6 43/1 44/6 44/16 44/18 44/19 45/4 55/19
feel [6] 19/19 23/15 127/13 133/20 136/9 136/10
feeling [1] 15/15
feels [1] 136/19
fees [17] 26/22 27/4 27/7 29/6 30/17 30/20 30/23 49/9 49/11 55/12 55/14 55/16 56/3 67/20 69/23 88/12 97/2
feet [1] 13/22
felt [2] 78/13 79/1
FEMA [1] 23/21
fender [1] 36/1
fer [1] 109/15
few [3] 50/11 51/6 99/20
fiberglass [1] 65/3
fide [1] 23/14
fides [1] 32/20
fifth [8] 8/21 17/3 32/13 43/4 48/18 66/11 77/21 122/13
Fifth Circuit [7] 8/21 17/3 32/13 43/4 48/18 66/11 122/13
fifty [1] 26/4
fight [2] 13/4 119/12
fights [1] 95/25
figured [1] 112/9
figuring [2] 51/11 51/11
file [10] 15/16 37/19 37/19 47/19 48/1 73/6 73/17 82/6 108/19 112/20
filed [19] 8/12 14/24 22/1 24/1 26/18 28/12 32/2 32/2 43/7 43/15 44/1 44/14 88/14 88/16 108/23 109/25 111/11 111/12 121/19 125/4
filing [6] 14/12 23/3 42/24 43/11 105/13 128/3
fill [1] 67/4
filled [1] 58/7
filling [1] 9/9
finagling [1] 63/20
final [13] 6/19 10/8 11/10 19/9 22/23 38/5 39/23 53/8 54/18 67/1 73/20 96/11 98/18
finally [6] 63/22 66/6 103/20 107/12 112/9 114/21
financial [1] 63/10
find [11] 33/15 38/18 41/2 45/18 79/20 81/13 84/25 88/20 112/18 112/21 116/11
finding [14] 64/10 64/17 81/11 82/1 86/16 92/3 101/20 101/21 102/14 103/18 106/3 119/10 119/12 133/18
findings [5] 16/4 17/21 40/19 106/4 133/18
finds [2] 112/13 112/14
fine [4] 89/3 114/17 126/22 128/25
finger [1] 101/13

## F

fingers [3]  49/9 101/14 104/4
finished [3]  16/7 98/6 127/24
finishes [1]  56/1
Finn [1]  2/11
firm [4]  2/1 23/8 40/18 45/17
firms [1]  76/20
first [43]  7/10 8/1 9/16 13/15 17/11 19/25
37/6 40/9 40/11 40/23 41/5 42/5 45/10
47/9 48/12 50/7 52/7 53/20 54/10 58/22
59/21 62/4 63/4 66/4 67/8 76/5 76/7
78/12 79/11 82/22 93/16 98/20 104/7
105/7 112/12 113/20 116/24 119/6 129/3
129/22 130/14 133/9 135/2
Fishbein [1]  1/18
fit [1]  114/5
five [14]  21/12 23/3 24/10 31/7 31/8 38/8
39/6 41/18 74/4 74/18 104/13 105/13
106/12 114/14
fix [2]  69/20 70/2
fixed [4]  75/1 102/21 104/10 107/18
fixes [1]  60/24
flat [1]  116/1
Fleming [1]  21/25
flimflam [2]  62/18 62/23
Floor [2]  2/9 2/18 3/5 3/9
Florida [19]  3/2 3/12 3/24 7/22 9/17 14/2
21/16 28/8 33/7 33/10 43/17 43/20 43/25
71/1 101/21 103/6 106/7 106/22 125/5
flowed [1]  56/16
focus [3]  27/2 68/25 69/4
focused [6]  16/16 50/22 52/23 110/25
focusing [2]  50/12 69/1
fold [1]  9/13
folks [13]  20/8 38/21 53/2 54/6 55/10
56/19 61/21 71/4 93/24 94/11 94/12
95/2 96/9
followed [2]  8/8 83/12
following [6]  6/3 6/20 19/3 90/3 112/14
131/20
follows [2]  16/18 131/13
foot [2]  24/7 26/4
forbid [1]  81/18
force [2]  68/4 105/18
foreclosure [1]  29/13
foreclosures [2]  30/5 57/23
foregoing [1]  137/11
foreign [5]  63/14 63/21 72/9 115/18
116/4
foreign-owned [1]  63/14
foreseeable [1]  60/21
foreseen [1]  59/25
foreshadowed [1]  51/25
form [3]  19/21 46/18 62/15
formaldehyde [2]  60/23 60/24
formaldehyde-exuding [1]  60/24
formally [1]  127/10
format [1]  113/6
forms [3]  37/20 51/2 51/9
formulate [2]  9/21 96/7
formulated [1]  18/4
Fort [1]  96/16
Fort Myers [1]  96/16
forth [4]  28/23 53/2 119/14 125/6
fortifications [1]  68/4
fortunate [1]  7/6
Fortunately [2]  62/22 65/7
forum [3]  42/24 101/18 135/23
forums [1]  100/5
forward [16]  39/3 53/7 58/14 74/24 81/15
82/19 104/12 107/4 107/6 109/2 109/6
114/14 124/17 130/11 134/6 134/11

fought [3]  72/19 91/10 91/25
four [33]  12/8 23/23 33/19 41/19 42/19
42/24 43/6 43/23 62/23 75/10 101/23
106/17 106/22 108/6 108/8 120/6 131/15
131/17 131/18 132/18
foundation [1]  106/23
four [14]  8/6 8/9 11/24 25/16 31/7 31/8
64/11 80/8 80/9 99/13 105/6 110/15
118/10 119/2
frankly [5]  59/15 61/6 63/22 94/2
fraud [4]  32/12 76/15 91/10 100/11
Fred [1]  21/25
free [2]  30/16 54/2
Freeman [1]  3/8
frenzy [1]  62/2
Friday [5]  117/12 123/7 127/17 127/18
127/20
Frilot [2]  1/21 68/20
frivolous [1]  43/16
front [5]  23/13 31/8 35/15 95/21 105/13
frontally [1]  129/12
fruit [3]  24/25 25/4 103/10
fulfilled [1]  134/19
full [10]  6/16 40/18 71/10 77/23 83/2
83/23 84/20 85/7 86/5 113/14
fully [3]  24/22 121/15 123/19
function [1]  58/5
fund [25]  11/4 29/3 29/3 29/7 29/8 29/16
29/17 30/13 30/21 44/20 57/15 57/21
57/22 58/1 58/3 58/3 58/6 58/10 70/8
70/14 70/18 71/3 84/7 84/8 107/9
funding [1]  28/1
funds [4]  29/17 58/3 93/13 107/3
further [4]  12/9 25/6 74/2 129/1
future [6]  34/18 35/13 81/16 106/23
107/17 107/25

## G

Gables [1]  3/24
gallops [1]  49/10
Galloway [1]  2/7
game [3]  62/19 109/10 122/23
Garcia [5]  34/12 40/13 42/13 45/7
126/17
gases [1]  17/18
gassing [1]  60/21
gave [3]  21/4 51/25 125/12
Gee [1]  37/14
Gehring [1]  90/16
general [6]  14/2 15/15 36/2 36/3 79/6
121/13
generally [2]  13/2 112/25
generically [1]  8/18
generous [1]  68/10
generously [1]  68/16
genesis [1]  109/3
gentleman [1]  20/6
gentlemen [2]  6/5 90/5
Georgia [2]  2/23 34/3
German [9]  17/5 20/13 24/12 66/14
66/21 66/25 67/12 67/17 67/18
German-based [1]  17/5
Germano [4]  28/12 40/21 40/23 72/17
Germany [9]  20/8 28/7 62/7 67/3 67/5
67/8 67/11 67/20 67/23
get [64]  9/5 9/24 12/22 14/17 18/11
18/12 21/2 24/17 24/23 25/18 26/22 27/3
27/11 27/17 27/18 28/5 28/24 28/25
29/21 29/25 30/3 30/7 30/18 33/15 33/18
37/5 38/3 41/3 41/8 41/25 46/5 47/15
54/18 54/23 55/12 55/17 58/14 59/4 65/16
66/25 72/23 73/16 74/15 85/12 85/20
91/25 92/25 93/9 97/22 100/13 104/10

108/3 112/17 113/10 115/10 116/12
116/22 120/8 124/22 124/24 125/10 126/9
128/23 131/24 136/11
gets [27]  48/15 55/9 55/23 56/2 84/11
84/12 132/14
getting [16]  22/1 24/16 27/2 36/15 48/7
52/5 55/6 55/17 66/1 73/1 77/23 82/1
107/18 107/19 107/20 122/17
give [14]  7/7 27/5 33/17 35/16 68/22
74/14 74/16 113/21 115/15 122/22
122/23 124/2 127/12 127/13
give-and-take [1]  74/14
given [14]  22/3 31/2 56/17 59/16 62/8
74/12 107/8 108/22 121/24 122/17
122/18 125/22 127/25 132/2
giving [2]  45/5 49/17
glad [2]  8/11 49/8
GLICKSTEIN [13]  2/5 5/24 21/15 22/4
58/21 61/9 68/13 77/5 77/22 87/23 91/21
127/3 129/2
global [30]  3/7 8/18 18/21 22/7 25/25
26/6 26/7 28/2 29/15 29/17 33/11 33/11
33/12 47/14 58/1 70/11 76/5 87/1 98/20
98/21 98/24 98/25 100/12 102/5 104/1
104/13 107/2 125/6 129/8 137/2
glory [1]  9/6
go [37]  6/22 8/5 28/22 33/15 39/3 40/15
40/15 48/18 54/4 55/21 63/19 68/23
68/24 74/2 74/7 76/13 82/19 83/18 91/4
91/22 92/10 92/18 93/14 94/13 101/7
102/22 104/9 110/1 112/19 120/7 124/17
125/8 130/11 134/2 134/6 134/7 134/11
goal [1]  130/14
God [3]  51/14 71/24 81/18
goes [5]  92/15 93/16 93/17 109/1 121/16
going [68]  8/22 9/12 9/24 11/3 11/16
20/19 28/17 28/22 30/22 35/2 36/18
36/18 36/25 37/14 45/6 45/19 47/18
48/18 48/21 48/21 48/23 54/22 58/3 58/4
70/1 70/2 70/2 70/13 70/13 71/13 71/14
71/15 71/16 75/6 75/12 76/13 81/15
83/15 84/20 84/21 85/4 85/17 85/20
85/21 86/4 86/8 91/4 91/15 92/15 92/16
92/19 93/18 95/5 104/4 104/20 115/7
119/2 119/24 121/22 123/19 124/17
124/20 125/14 125/25 126/18 128/9
128/14 130/11
gone [2]  27/21 42/2 56/7 59/12 63/19
84/13 90/20
good [37]  6/4 6/11 6/13 7/19 8/25 9/12
10/17 21/6 27/19 50/6 53/19 55/3 55/3
55/10 58/16 60/2 68/12 69/1 69/6 75/4
77/6 77/22 80/1 82/25 88/21 90/4 90/8
94/12 95/7 96/14 103/13 117/19 123/4
124/24 126/2 126/4 132/19
got [28]  10/18 11/5 33/23 33/23 34/3
34/4 35/15 35/17 35/17 36/2 36/5 42/21
45/9 45/25 46/3 47/8 47/25 51/5 51/7
69/16 88/25 93/3 93/6 103/13 107/5
108/3 110/10 133/8
governed [1]  15/11
government [5]  38/4 61/20 63/14 63/16
70/24
gracious [2]  100/5 100/15
grant [2]  10/10 121/24
granted [2]  19/7 88/13
grasp [2]  24/22 24/22
great [18]  7/7 7/14 7/15 7/22 9/25 45/4
50/9 50/13 52/10 54/18 57/16 58/14 68/2
74/23 76/13 77/14 96/12 112/21
greater [2]  40/1 41/17
greatest [1]  61/13
Greek [2]  48/12 90/12

## G

Greenberg [1] 3/11
Greenville [2] 2/19
Greg [1] 68/17
grille [1] 36/2
gritty [1] 28/23
gross [1] 28/11
grounds [2] 82/6 90/23
group [18] 8/10 16/19 16/19 17/4 19/6
54/11 62/6 62/9 62/25 63/1 63/4 63/8
64/18 65/1 66/9 67/24 100/3 114/1
groups [5] 16/15 16/16 16/17 16/18
101/9
guess [1] 133/22
guidance [2] 39/6 39/21
guilty [2] 43/20 45/16
Gulf [3] 13/24 41/1 60/11
Gunn [1] 2/21
guy [3] 34/16 45/11 107/5
guys [3] 33/7 48/17 65/14
gypsum [6] 13/22 16/21 60/7 60/22
60/25 120/5

## H

had [64] 10/25 20/7 21/8 25/12 26/1
27/17 27/20 28/5 31/18 31/19 33/25 34/8
34/9 34/18 35/17 38/17 40/6 40/11 41/6
41/8 41/12 42/20 43/25 44/2 46/1 47/3
47/18 47/22 48/5 51/6 52/9 52/13 56/15
56/17 56/19 56/20 56/22 61/18 61/19
62/21 62/25 63/9 64/13 64/23 65/10
67/13 73/6 76/6 95/25 99/14 102/14
102/24 103/7 103/18 104/15 116/10
116/22 118/7 121/14 121/14 128/20
129/17 130/5 133/9
hadn't [1] 129/17
Hague [3] 115/8 115/13 116/7
half [2] 6/21 42/2
hall [6] 2/14 7/21 9/24 10/3 32/3 49/23
hallmark [1] 58/17
hammers [1] 24/4
hand [3] 7/22 22/24 131/18
handle [6] 8/9 8/24 11/14 12/23 23/10
84/23
handled [3] 21/12 35/14 115/4
handling [3] 7/9 36/8 86/1
hands [1] 25/16
hanging [3] 24/25 25/4 94/19
happen [5] 61/21 86/23 93/16 119/25
124/6
happened [4] 59/25 61/14 100/14 102/13
happening [3] 34/18 84/4 85/25
happens [7] 66/4 67/5 92/8 92/23 98/4
116/3 122/10
happy [15] 7/12 9/3 9/23 21/12 41/20
41/21 41/21 50/15 108/15 110/19 110/19
111/1 113/16 116/25 125/23
hard [11] 9/7 13/4 43/15 72/19 91/10
91/25 94/7 96/6 127/8 134/12 134/15
hard-fought [1] 72/19
hard-working [1] 43/15
hardship [1] 115/1
Harrell [1] 106/22
has [147]
Haseltine [1] 93/7
hasn't [5] 32/24 47/21 109/18 115/5
115/8
hat [2] 61/17 61/18
have [342]
haven't [2] 86/15 134/17
having [16] 21/6 22/20 24/4 33/20 34/5
57/4 58/11 59/10 59/12 77/2 93/14 93/15

97/17 113/6 115/19 120/20
having [con't]
Haynsworth [1] 2/17
HB [1] 4/1
HB-406 [1] 4/1
he [129] 7/10 7/12 7/14 7/18 8/24 11/15
12/8 22/15 22/16 22/16 32/1 32/2 32/2
32/3 33/3 33/3 33/4 33/6 33/6 33/8 33/13
33/13 33/24 33/25 33/25 34/1 34/3 34/4
34/4 34/4 34/7 34/9 34/12 34/14 34/14
34/16 34/25 36/14 36/17 36/17 42/16
42/19 42/20 42/20 43/1 43/20 43/21
43/25 44/1 44/1 44/2 44/3 44/4 44/5 44/9
44/17 44/19 45/3 45/4 45/10 45/16 45/17
45/20 45/20 45/21 45/22 45/22 45/23
45/24 45/25 45/25 45/25 46/1 46/8 46/9
46/9 46/10 46/11 46/11 46/13 46/14
46/15 46/19 47/1 47/2 47/3 47/5 47/6
47/8 47/9 47/11 47/14 47/15 47/15 47/16
47/16 47/17 47/17 47/18 47/18 47/18
47/19 47/20 47/21 47/22 47/22 47/24
48/13 48/13 48/15 48/16 49/1 49/2 49/4
95/12 104/16 106/20 106/22 107/6 107/6
107/7 125/13 127/5 128/23 135/1 136/10
136/10 136/19 136/19
he's [1] 9/25
headaches [1] 14/11
headed [1] 50/19
health [17] 14/9 38/7 38/11 38/15 39/19
46/8 46/9 47/19 71/1 71/2 105/8 105/20
105/23 106/5 106/6 106/8 106/18
hear [10] 15/18 15/19 15/24 19/25 21/4
50/5 113/17 113/20 115/25 136/12
heard [17] 21/6 31/17 45/8 45/10 51/6
61/8 81/3 91/5 91/8 99/5 100/24 117/21
118/4 119/16 123/3 134/4 134/21
hearing [34] 1/11 6/20 8/15 13/15 13/16
17/20 19/7 19/9 19/9 19/10 19/14 22/19
22/22 23/1 28/13 48/6 52/16 68/25 88/15
88/16 90/17 109/1 109/16 117/13 118/18
121/20 121/21 121/24 121/25 124/14
127/19 128/15 136/5 136/18
hearings [3] 15/3 15/21 41/21
hearsay [1] 38/21
heart [1] 74/7
held [7] 6/3 11/3 25/15 27/14 27/15
80/16 90/3
help [5] 7/14 7/15 24/15 27/17 65/16
helped [1] 52/10
helpful [5] 7/22 9/20 9/21 22/13 113/6
her [6] 7/20 29/21 34/7 34/8 34/8 41/7
here [85] 6/15 8/11 10/3 20/8 20/18 21/1
27/16 28/24 29/7 29/20 31/6 31/15 31/24
32/11 32/12 36/7 41/18 49/18 51/5 51/7
52/16 52/18 54/16 56/24 57/13 59/15
59/16 60/13 61/13 64/20 68/15 71/3 72/8
72/13 72/14 74/7 74/19 77/2 82/5 82/6
83/10 83/17 83/17 83/18 83/22 84/4
84/15 84/18 85/1 86/1 86/7 86/11 86/13
86/21 86/23 90/14 90/15 91/25 92/24
96/7 97/6 99/6 100/11 105/24 106/10
106/19 106/20 107/15 109/14 110/4
110/9 110/14 110/25 111/13 111/16
111/17 112/6 116/14 122/18 125/21
127/14 127/24 128/23 130/22 132/12
here's [2] 48/7 84/13
hereby [1] 137/11
Herman [19] 1/15 1/15 1/16 5/23 6/11
21/24 22/15 23/10 28/17 35/1 35/10
36/25 37/1 50/20 51/25 52/13 61/8 71/12
105/12
Herman's [1] 57/1
Hernandez [6] 17/15 17/21 18/5 40/17

72/17 114/21
hero [2] 67/23 67/23
heroes [1] 48/13
Hey [2] 47/10 84/13
hide [1] 62/19
high [9] 12/25 13/7 13/25 36/13 60/12
92/18 120/6 131/2 131/12
high-low [2] 131/2 131/12
hijack [1] 43/13
HILARIE [2] 3/11 113/22
Hill [2] 44/18 44/18
him [12] 7/17 20/4 33/14 42/15 45/9
45/12 46/9 46/22 47/2 47/6 68/22 128/23
himself [1] 23/11
Hinkhouse [1] 22/9
hinted [1] 123/6
his [35] 7/12 11/17 21/15 21/24 24/4
24/4 29/21 33/14 34/13 34/15 35/1 36/21
43/8 43/11 43/18 44/10 44/11 44/12
44/15 44/15 45/15 46/3 46/8 46/10 46/14
46/25 47/4 47/20 48/5 48/11 55/23
104/17 104/20 104/20 125/13
history [1] 48/15
hit [1] 101/5
hitter [1] 68/15
hold [2] 36/15 50/2
holder [1] 67/19
holding [2] 63/2 63/24
Holdings [1] 10/13
Holwadel [1] 22/7
home [36] 3/11 14/15 19/6 24/3 25/5
37/24 45/24 46/17 46/17 47/5 47/12
47/12 53/19 53/20 54/2 54/4 54/6 54/7
55/17 56/2 56/20 56/22 56/23 69/20 70/2
87/25 102/21 104/10 110/6 113/17
113/20 113/23 113/24 114/1 114/12
119/19
Home Depot [5] 37/24 46/17 46/17 47/12
47/12
Home Depot's [1] 45/24
homeless [1] 41/1
homeowner [13] 29/20 54/1 55/22 55/23
56/2 56/4 56/16 57/13 74/13 74/14 87/24
93/3 112/12
homeowner's [1] 17/16
homeowners [29] 19/1 55/4 55/4 61/25
69/6 69/16 69/25 70/5 73/3 73/12 74/5
74/8 74/25 76/9 76/12 77/7 77/13 77/19
77/23 90/24 92/11 92/20 94/8 101/6
102/18 114/8 114/16 130/5 134/13
homeowners' [2] 88/3 88/11
homes [45] 9/22 13/20 18/7 18/12 23/19
24/17 24/18 24/23 27/3 28/9 28/25 29/1
29/23 30/3 30/3 30/6 30/7 36/16 41/3
51/13 52/5 52/19 54/12 54/14 54/17 55/2
55/6 56/13 56/15 56/25 57/9 57/15 58/9
70/5 74/25 87/17 88/3 88/11 99/22 110/5
110/7 114/5 114/6 114/10 120/8
Hong [2] 16/2 28/7
Hong Kong [2] 16/2 28/7
Honor [157]
Honor's [6] 11/16 11/20 45/22 53/25
59/14 66/10
HONORABLE [1] 1/11
Honus [1] 96/17
hope [6] 11/7 53/8 53/9 94/13 96/9 126/7
hopefully [8] 7/14 11/4 13/4 31/14 55/10
57/6 104/10 128/15
Hopper [1] 73/8
horse [1] 33/19
host [2] 22/6 35/1
hour [4] 6/22 42/2 42/2 89/4
house [4] 112/13 112/14 112/18 113/2

H

housekeeping [1] 117/8
houses [4] 99/20 99/20 104/10 107/18
Houston [1] 3/18
how [24] 13/3 26/24 29/3 31/10 33/13
42/6 45/1 47/15 51/7 58/18 66/2 66/9
69/8 72/1 84/11 93/12 100/17 100/22
104/25 105/22 115/7 115/10 118/22
124/23
however [7] 30/6 42/19 62/12 64/13
86/12 118/23 122/8
HUD [2] 39/23 105/15
Hudgins [1] 2/20
huge [3] 51/7 110/13 132/16
HUGH [3] 2/15 22/6 81/6
Hull [1] 43/7
humidity [1] 60/12
hundred [3] 6/17 74/12 99/2
hundreds [5] 13/22 14/23 15/4 72/17
77/3
hunt [1] 62/11
hurdles [1] 62/1
hurricane [2] 23/20 128/20
hurricanes [1] 14/1
hurry [1] 112/17
Hygiene [1] 106/7

I

I'll [13] 7/20 12/7 13/12 19/25 20/21 23/8
48/17 98/8 104/17 113/21 124/8 127/11
127/18
I'm [42] 8/22 9/3 9/23 20/19 28/22 35/24
36/18 36/18 36/25 38/20 43/22 45/6 48/9
48/16 48/17 48/23 49/7 50/15 58/19
67/22 68/14 68/15 76/13 83/14 90/14
91/4 91/15 95/14 101/1 101/18 107/5
108/15 110/15 111/1 111/13 122/4 122/5
125/21 125/25 126/18 128/14 136/5
I've [6] 7/6 9/19 29/20 37/16 94/23 107/5
idea [1] 103/11 115/12
ideas [1] 127/4
identical [1] 43/15
identified [2] 43/19 106/14
identify [2] 55/21 103/1
if [115] 12/7 16/13 18/9 20/1 20/12 24/2
24/2 29/9 29/24 30/4 30/21 31/21 33/18
33/25 36/1 38/25 40/3 40/25 42/20 44/22
45/15 45/18 45/23 46/3 47/17 48/23
49/23 50/2 52/1 54/10 60/18 62/4 63/17
66/6 66/14 66/20 66/24 67/20 74/19
77/11 79/7 79/24 81/7 81/18 83/16 84/8
84/21 84/24 92/6 92/15 92/18 94/4 94/14
95/4 96/11 98/1 101/25 102/12 103/13
105/5 107/6 110/15 110/16 110/20 111/2
112/15 113/1 113/15 116/4 116/14
116/14 116/23 116/25 117/3 118/16
119/9 119/12 119/25 120/7 120/14
120/14 120/21 121/15 122/8 122/25
123/2 123/8 123/14 123/18 123/22 124/6
124/7 124/17 124/19 125/20 125/22
126/9 126/18 127/13 128/23 130/11
130/14 130/24 131/9 131/10 131/14
131/18 131/24 132/5 132/6 132/18
133/18 134/4 134/21 135/15
III [1] 3/8
ilk [1] 53/16
Illinois [1] 43/9
illness [1] 106/13
immediate [2] 88/15 130/23
impact [3] 55/19 118/2 118/23
impacted [1] 51/13
impacts [1] 54/3

impair [1] 118/3
impairment [1] 133/6
impasses [1] 72/3
impediment [1] 115/9
impenetrable [2] 68/1 68/1
implementation [1] 68/19
importance [1] 13/9
important [21] 28/19 37/4 39/4 49/14
50/23 51/10 51/21 52/4 56/4 56/15 69/7
76/25 77/4 81/23 88/15 103/3 105/22
106/8 107/8 115/16 115/21
importantly [3] 76/3 79/14 101/11
importers [2] 14/15 101/10
impossible [1] 62/1
Improperly [1] 43/13
in [618]
In Re [1] 80/16
inadequate [1] 32/17
incentive [1] 33/17
inception [1] 14/22
include [6] 50/25 108/10 109/4 110/24
119/18 128/11
included [8] 14/14 16/20 22/18 25/9
25/11 36/3 99/23 130/6
includes [2] 29/13 107/25
including [8] 14/8 15/2 15/10 17/6 41/15
46/14 106/14 106/16
inclusion [1] 60/7
inclusive [1] 25/23
income [1] 57/23
inconvenience [2] 20/25 55/11
incorporate [1] 21/7 32/22
incorporated [1] 22/21
incumbent [1] 130/2
indeed [2] 38/22 80/18
indemnification [1] 131/24
indemnity [2] 104/8 131/11
independent [1] 67/7 91/6
Indiana [3] 65/2 65/18 65/24
indicate [2] 115/17 127/7
indicated [5] 19/13 37/9 38/6 38/17 51/13
indicates [2] 38/1 60/3
indicia [1] 42/21
individual [6] 10/25 14/24 30/22 74/5
104/15 109/4
individuals [4] 101/8 112/19 125/11
129/17
Industrial [1] 106/6
industry [3] 32/4 60/5 65/25
inescapable [1] 95/20
InEx [67] 8/16 19/4 22/6 22/6 25/2 26/2
27/25 27/25 31/9 33/8 57/10 57/11 57/16
65/10 65/11 65/13 65/19 70/15 70/18
73/24 74/1 75/3 75/8 76/10 78/5 78/14
79/25 80/2 80/4 80/6 81/4 81/9 81/17
81/18 81/22 84/19 86/9 86/9 86/14 99/13
117/11 118/1 119/7 119/17 120/14
121/12 121/21 123/19 123/21 124/3
124/4 130/13 130/22 131/1 131/5 131/14
131/15 131/17 131/18 131/21 133/2
133/15 133/15 134/24 135/4 136/16
137/1
InEx's [1] 25/24
information [5] 21/4 39/17 45/5 57/3
124/2
inherent [2] 31/21 98/15
initial [2] 6/20 51/12
initially [3] 52/10 53/3 73/5
inject [1] 114/17
injunction [1] 40/25
injuries [9] 35/13 38/22 38/22 38/22
106/23 107/21 107/25 108/7 108/11

injury [24] 28/19 29/9 29/10 29/12 30/21
30/22 34/7 36/9 45/3 45/9 55/15 35/18
36/3 52/3 57/24 70/21 70/22 71/3 96/19
96/22 104/21 105/5 107/5 107/14
innocent [1] 41/2
input [1] 81/1
inquiry [1] 72/15
insert [1] 22/16
insofar [1] 57/12 97/7
inspect [1] 39/12
inspection [8] 46/13 46/23 47/25 48/3
53/14 53/21 53/21 54/22
inspections [4] 37/18 50/25 51/19 60/17
install [2] 94/24 95/1
installation [1] 14/4
installed [3] 14/3 47/17 106/12
installer [2] 100/3 100/12
installers [15] 8/17 14/14 14/15 19/6
40/10 58/2 70/12 94/19 94/23 94/24 99/1
99/23 101/10 102/19 104/5
instance [2] 60/23 131/25
instances [1] 112/16
instead [5] 29/23 69/1 71/21 99/15 132/8
instructions [1] 51/25
insufficient [1] 93/9
insulation [8] 65/3 65/3 65/8 65/11 65/11
65/14 65/17 65/24
insurance [27] 3/14 3/17 12/15 15/10
25/4 26/8 27/20 27/21 77/19 78/6 78/18
80/11 81/11 81/20 82/13 85/22 86/11
92/14 92/23 94/21 96/2 98/15 102/13
102/14 117/7 117/20 118/10
insured [7] 83/3 130/21 130/24 131/5
131/25 132/20 132/21
insureds [1] 104/5
insurer [5] 83/6 130/6 130/22 130/24
131/22
insurers [20] 8/17 14/16 19/4 70/13 80/7
83/16 84/9 91/25 92/4 92/24 93/1 95/2
98/23 99/3 101/14 101/15 101/25 103/17
130/3 130/7
integral [2] 76/11 87/20
integration [1] 57/9
intend [1] 19/14
intended [1] 123/3
intense [1] 38/8
intensely [1] 38/17
intent [1] 19/23
intentionally [1] 22/14
Interagency [1] 105/17
intercompany [1] 63/7
interdependent [1] 86/11
interest [7] 44/11 56/9 91/12 93/25 126/4
134/13 134/13
interested [3] 19/22 100/23 104/22
interesting [1] 64/6
interests [1] 7/24
Interior [12] 2/7 2/11 12/5 19/4 75/5
75/15 75/16 75/18 75/23 76/4 76/7 77/7
77/9 77/12 77/16 77/17 78/10 79/15
Interior Exterior [1] 75/16
interlink [1] 57/12
intermediate [3] 83/13 132/5 132/9
international [2] 2/15 17/5 76/19
Internet [1] 38/21
interpretation [1] 7/8
interrupt [1] 30/11
intervene [1] 115/14
intervened [1] 39/14
intervening [1] 46/24
interwoven [1] 86/10
into [64] 6/22 7/13 8/6 9/13 11/3 13/14
18/2 18/18 18/24 19/20 19/21 19/23

**I**

into... [52]  23/21 24/17 24/18 24/23 27/3
27/10 28/25 28/25 32/11 35/8 35/17
36/16 37/5 37/22 38/3 52/5 53/3 56/2
56/16 58/3 58/25 59/7 60/11 61/17 63/6
63/6 66/3 66/23 70/14 70/17 72/21 76/5
76/13 77/18 78/10 78/11 79/8 82/9 82/11
82/22 84/2 84/8 85/15 88/21 91/22 98/4
99/9 103/24 108/25 121/17 124/12 134/7
introduce [2]  36/25 37/22
introduced [1]  52/20
inventory [1]  51/11
investigate [2]  43/21 44/22
investigated [1]  38/17
investigation [3]  38/9 44/13 105/14
investigator [1]  33/15
invoices [1]  86/2
involve [1]  19/3
involved [28]  12/13 14/13 15/9 28/2
36/20 51/8 58/19 61/7 76/19 80/6 90/19
90/25 91/1 91/3 92/2 92/12 93/24 94/1
94/9 100/22 101/17 105/15 115/19 116/4
116/5 116/9 122/14 126/10
involves [1]  51/5
involving [8]  12/15 12/15 14/20 14/23
17/16 58/1 70/12 90/19
Iowa [3]  43/16 43/18 43/23
Irene [1]  65/13
Irons [1]  3/17
irritation [2]  14/10 38/24
is [413]
isn't [4]  44/18 48/20 132/11 135/24
issue [41]  9/18 10/6 49/11 49/12 49/12
64/20 64/24 78/22 80/15 83/10 83/10
85/12 104/22 104/23 105/4 105/12
106/21 111/5 111/21 113/12 119/5 119/6
120/16 120/17 121/11 125/17 126/1
128/24 129/9 131/10 131/20 132/10
132/11 132/12 133/10 133/10 133/12
133/16 135/9 136/2 136/13
issued [10]  10/25 16/3 16/24 17/21 38/5
39/6 39/21 40/19 101/19 103/7
issues [47]  8/21 12/14 12/15 13/3 14/9
14/10 15/9 15/10 15/24 19/11 53/5 53/6
53/10 72/9 78/7 78/12 88/25 91/7 100/6
102/25 102/25 103/5 104/16 104/21
105/1 105/2 105/3 105/19 106/17 109/17
110/1 110/3 110/7 110/18 112/8 113/19
118/23 119/3 125/13 125/13 129/10
129/12 133/4 135/1 136/2 136/3 136/13
it [284]
it's [126]  7/3 8/13 8/13 9/10 10/7 10/8
10/13 10/17 10/23 11/3 12/24 15/17
15/20 19/10 22/12 25/25 29/7 29/11
31/23 32/4 32/7 32/17 33/8 34/20 36/19
37/10 37/16 37/17 42/8 44/17 45/18 46/7
48/24 49/1 54/4 54/4 56/3 57/3 57/4
57/13 57/16 60/18 60/19 61/2 61/12
63/18 70/2 70/3 71/7 74/3 74/11 74/19
76/25 82/23 83/16 84/5 84/5 85/16 87/5
87/7 88/2 90/12 90/23 91/24 92/10 92/19
93/7 93/8 93/9 93/12 94/6 94/12 96/6
100/12 103/2 104/2 105/11 107/7 108/9
108/21 109/5 109/11 109/12 109/15
109/24 111/9 111/18 112/7 112/15
112/18 112/21 113/4 113/5 113/9 113/15
114/2 114/11 115/16 116/7 116/10
116/12 116/16 118/5 118/18 119/10
119/24 122/23 123/2 123/18 124/2 124/4
124/5 126/8 128/3 128/4 128/5 128/16
129/6 132/8 133/14 134/16 135/7 135/11
136/9 136/10 136/18

item [2]  10/12 44/7
iterated [1]  135/9
its [32]  16/22 17/1 17/7 17/17 46/17 57/6
57/25 60/11 62/25 63/2 64/4 65/11 66/13
68/19 83/6 83/7 88/4 92/14 98/10 102/14
109/3 124/3 128/11 131/5 131/7 131/9
131/16 131/22 131/23 132/15 132/21
135/14
itself [3]  60/10 85/23 97/23

**J**

jail [2]  63/19 63/20
Jan [1]  33/22
Jane [2]  22/5 41/6
January [2]  13/12 38/13
January 23 [2]  13/12 38/13
Japanese [1]  116/7
JAY [4]  2/4 22/4 58/24 68/17
Jerry [1]  128/21
job [10]  9/25 11/15 11/20 37/17 52/10
68/23 77/6 77/14 77/22 94/25
Joe [2]  7/11 22/9
JOEL [3]  2/1 10/16 11/9
John [3]  52/9 58/4 100/16
Johnson [1]  2/7
Johnston [1]  11/14
joins [1]  98/17
joint [5]  8/12 111/8 111/9 111/12 133/2
JR [1]  2/8
judge [28]  1/12 6/11 7/11 7/15 7/18 7/18
7/21 7/22 8/7 8/8 9/24 10/3 11/13 12/8
21/14 37/3 37/3 41/12 49/19 49/25 50/8
56/8 95/15 96/3 96/11 106/19 108/8
128/19
Judge Fallon [6]  6/11 8/7 11/13 37/3
49/25 128/19
Judge Farina [2]  7/15 8/8 21/14
Judge Hall [1]  10/3
Judge Lemmon's [1]  49/19
judges [3]  7/7 15/7 100/2
judgment [18]  17/22 22/24 27/22 40/19
61/15 62/15 66/21 66/25 67/1 67/2 67/3
67/5 67/6 67/18 67/23 96/25 103/7
114/20
judgments [3]  17/1 71/17 103/18
judicial [2]  15/15 128/3
Juliet [1]  49/7
July [2]  17/12 27/15
July 2 [1]  17/12
July 31 [2]  27/15
juncture [1]  128/22
June [3]  14/19 88/13 130/17
June 11 [1]  88/13
June 15 [1]  14/19
jurisdiction [12]  8/21 16/25 61/16 62/13
65/22 67/9 67/10 67/13 67/14 84/11
103/3 113/6
jurisdictional [5]  66/7 66/9 66/12 66/20
67/12
jurisprudence [2]  32/8 33/20
jurists [1]  32/6
jury [1]  96/20
just [51]  10/8 11/10 12/22 13/16 23/17
24/8 28/15 29/14 32/6 35/19 48/17 49/6
50/11 50/13 59/3 62/24 63/3 67/1 68/17
80/2 82/11 82/20 85/2 86/8 88/3 95/1
95/20 97/10 98/13 105/19 108/17 110/15
113/18 115/8 115/19 115/24 117/3
117/12 117/14 120/2 121/9 126/2 126/5
126/8 128/7 128/8 129/5 129/11 134/17
136/14 136/9

justice [8]  32/4 41/11 49/15 55/3 64/7
64/10 64/21 115/16

Justice Scalia [1]  32/4

**K**

Kaplan [7]  3/20 3/23 31/20 124/23 125/4
125/4 125/12
Kaplan's [1]  125/11
Karl [1]  68/3
Katrina [6]  14/1 23/20 36/16 65/12 80/16
122/14
Katz [1]  1/15
Kaye [3]  2/4 68/13 68/20
keep [8]  10/10 15/23 23/6 37/9 37/10
111/24 127/11 128/9
keeping [1]  128/11
Kerrigan [1]  3/14
KERRY [5]  1/22 6/13 22/3 50/6 68/16
KEVIN [3]  3/17 117/19 127/15
key [1]  81/24
kicked [1]  52/24
kind [11]  36/5 54/14 61/12 62/19 64/2
81/19 85/2 86/22 86/23 112/1 112/21
kinds [2]  56/11 84/6
Kitech [1]  43/3
Knauf [107]  2/4 8/16 17/4 17/5 17/7 17/8
17/11 18/1 18/6 18/17 18/22 18/23 18/25
24/11 24/12 24/20 25/6 25/25 26/3 26/5
26/19 26/23 28/10 29/4 29/8 29/16 30/19
31/14 31/15 31/18 31/22 33/4 37/6 40/12
40/22 50/5 50/7 52/11 52/19 53/11 53/13
56/13 57/10 57/11 57/20 57/24 58/24
59/19 62/5 62/9 62/25 63/4 63/8 63/24
64/10 64/18 65/1 65/8 65/11 65/14 65/15
65/17 65/24 66/7 66/18 66/21 67/24
68/13 69/19 70/9 73/4 74/23 75/9 77/14
78/16 78/25 79/4 79/7 87/15 87/21 88/1
88/4 99/8 107/8 114/5 114/8 118/1 119/8
119/19 120/4 120/14 120/25 121/2 121/5
121/22 121/23 122/25 123/4 123/14
123/14 124/8 128/11 129/3 131/16
132/14 133/2 133/15
Knauf's [3]  25/5 25/23 27/25
knew [7]  26/3 26/6 26/20 45/20 46/3
65/14 77/12
knocks [1]  61/16
know [40]  13/3 20/8 26/16 31/5 36/17
42/1 43/1 44/16 44/22 45/6 45/21 45/23
46/4 47/8 47/17 48/8 48/8 48/9 48/13
55/18 56/5 59/9 59/9 59/13 65/15 68/14
69/9 71/11 88/25 95/12 95/25 97/19
102/20 104/6 105/1 109/16 115/25
126/10 128/20 136/1
known [5]  16/23 43/11 60/22 90/9 105/8
knows [15]  27/13 31/10 50/1 66/2 66/8
66/9 67/14 68/18 71/24 81/9 90/18 92/2
95/2 112/4 129/24
Kong [1]  16/2 28/7
Koretzky [1]  2/11
KPT [29]  17/7 17/13 17/16 17/17 18/19
28/8 50/7 56/21 60/1 60/4 60/16 61/19
61/22 62/2 63/13 63/23 64/4 64/19 64/25
65/20 66/7 66/12 66/17 66/19 70/11
87/16 87/17 87/25 120/9
KPT-related [1]  18/19
Kupperman [1]  3/7

**L**

labored [1]  41/22
laborious [1]  100/24
labors [1]  26/23
lack [4]  44/13 78/1 107/9 108/6
lacks [1]  82/17
ladies [2]  6/4 90/5
Ladner [1]  73/8

**L**

laed.uscourts.gov [1] 4/3
Laird [1] 21/18
landlords [1] 101/7
Landmark [2] 3/14 117/6
Landmark's [1] 117/10
language [3] 73/15 121/1 126/9
large [4] 10/1 99/18 99/19 99/22
largely [2] 10/3 18/4
last [18] 19/22 24/1 39/2 46/4 50/1 50/10
52/20 53/5 56/23 57/19 68/14 72/22
96/16 104/13 104/24 106/16 121/7
126/16
lasted [1] 41/16
Lastly [1] 30/8
late [1] 122/23
latent [4] 51/17 60/9 60/9 108/7
later [9] 26/17 27/3 46/12 47/25 52/2
52/20 111/11 111/12 119/12
law [26] 2/1 7/8 16/4 17/22 21/17 22/24
23/8 32/6 35/24 59/25 61/24 62/12 65/21
67/5 67/10 67/11 67/19 74/16 76/20
77/11 82/25 130/20 130/21 131/2 133/21
133/24
laws [5] 12/15 63/18 64/15 77/8 90/18
lawsuits [1] 14/23
lawyer [8] 8/8 33/13 36/10 40/20 43/11
45/9 49/1 62/8
lawyers [33] 8/10 12/22 12/25 13/2 13/9
25/11 25/13 27/1 27/7 31/7 31/8 31/23
34/19 35/14 36/7 36/8 36/9 37/18 39/24
41/21 46/9 48/4 48/7 49/13 57/3 57/16
63/23 70/1 70/22 76/20 90/12 96/12
123/4
lawyers' [3] 49/9 49/11 97/24
lead [7] 8/3 8/22 9/17 13/12 78/2 115/6
125/16
leads [2] 52/15 76/23
learned [2] 24/22 127/4
least [21] 7/24 13/8 16/2 16/14 26/14
48/3 68/9 83/13 97/11 97/19 98/4 110/14
114/13 114/14 116/14 117/21 118/4
118/8 129/16 133/23 136/1
leaves [2] 73/22 121/11
led [2] 16/13 76/1
left [7] 10/21 31/18 34/12 61/12 103/21
104/15 131/23
legal [1] 131/10
legalistic [1] 29/12
legally [1] 23/16
legislation [1] 116/17
legitimate [5] 23/25 48/2 49/4 66/20
71/18
Lemmon's [1] 49/19
Len [1] 21/24
length [4] 50/17 71/24 72/1 76/16
lent [1] 7/22
less [7] 28/1 35/17 73/5 92/16 114/8
123/25 132/3
LESSELL [2] 3/14 117/6
let [12] 13/15 27/10 50/5 62/5 86/23
97/17 113/17 113/20 126/10 127/23
136/1 136/12
Let's [5] 8/1 13/14 29/19 36/23 86/25
letter [1] 48/12
level [2] 63/24 102/6
Levin [12] 1/18 1/19 8/22 50/19 53/14
71/12 73/25 87/22 90/11 95/8 108/1
115/6
Lewis [1] 9/5
Lexy [1] 21/17
liability [17] 1/6 6/8 60/1 60/1 65/21
75/18 83/8 100/21 102/24 104/7 108/5
126/2 128/11 128/13 128/16 131/6 136/7
liable [3] 131/15 131/17 131/18
liaison [5] 6/9 8/4 11/19 13/12 100/7
Liberty [8] 2/14 74/1 80/7 81/6 81/12
85/13 130/7 131/1
lifted [1] 59/4
light [2] 71/20 71/22
like [48] 14/9 19/19 21/7 22/10 23/17
31/25 40/3 44/22 47/10 48/3 48/24 49/1
49/23 50/8 50/11 53/4 54/11 58/24 59/14
59/21 60/25 63/15 63/18 65/4 66/5 90/12
93/8 93/9 93/10 96/3 97/19 101/11 110/1
110/19 110/20 111/2 112/21 113/1
113/15 116/19 116/25 117/7 121/2 122/5
124/18 126/5 128/23 129/19
liked [2] 48/10 48/11
likely [7] 32/14 72/6 77/15 92/15 97/1
100/4 103/23
Lillian [1] 21/25
limine [1] 127/21
limit [2] 83/7 110/17
limitation [1] 102/25
limitations [1] 77/6
limited [5] 12/17 17/13 77/14 108/20
112/15
limits [15] 77/18 78/16 80/8 80/9 81/14
83/2 83/7 83/17 83/22 84/20 85/2 85/8
98/10 120/19 130/8
line [5] 40/15 40/16 61/5 70/23 116/17
lines [1] 110/16
lineup [1] 112/5
linked [1] 105/9
liquidate [1] 118/19
liquidated [1] 123/21
liquidates [1] 132/19
list [5] 22/12 127/9 128/1 128/4 128/5
listed [3] 28/13 35/1 59/1
listen [3] 15/23 117/1 126/19
listening [1] 128/22
literally [1] 41/4
literature [1] 106/24
litigable [1] 71/18
litigants [4] 25/18 28/2 58/19 113/7
litigated [2] 18/9 72/19
litigating [3] 71/21 90/12 100/4
litigation [50] 1/6 6/8 10/14 11/16 13/18
14/22 15/2 15/8 16/15 16/21 17/10 17/10
17/12 19/1 23/15 32/14 33/3 35/10 36/20
39/5 42/10 69/9 69/11 69/12 69/12 72/6
74/23 75/18 76/18 76/19 76/24 90/19
90/21 91/2 91/3 91/14 92/22 93/21 95/3
95/16 98/12 98/13 98/15 101/15 102/8
102/9 102/11 104/3 106/10 126/14
Litigation 2047 [1] 14/22
litigations [1] 101/17
little [9] 21/9 29/19 35/2 91/20 109/11
111/19 112/7 120/2 126/9
live [1] 19/14
lived [1] 43/7
lives [3] 24/18 52/6 70/6
living [1] 55/24
LLC [5] 1/15 1/21 2/11 2/21 3/8
LLP [7] 2/4 2/14 3/4 3/11 3/14 3/17 3/20
loans [1] 63/12
located [1] 65/18
locations [1] 28/8
lodge [1] 33/16
loggerheads [1] 72/2
logistics [1] 87/7
London [1] 28/7
long [13] 38/7 38/11 54/15 68/19 80/19
90/19 90/21 100/24 105/8 105/23 105/25
106/13 121/5
106/13 121/5
longer [3] 15/18 21/9 21/25
look [10] 33/24 49/3 61/22 74/24 86/8
97/17 98/2 102/12 102/13 116/18
looked [3] 47/9 51/19 65/3
looking [2] 62/2 100/10
looks [7] 33/3 33/3 33/6 33/8 47/10 98/3
105/6
Loop [1] 3/21
lose [3] 31/22 41/23 67/20
loser [1] 67/21
losing [1] 26/9
loss [18] 29/8 30/13 30/14 30/21 57/21
57/22 58/3 58/6 58/10 70/8 70/8 70/14
70/18 71/3 80/17 80/21 107/9 107/19
loss-of-use [1] 107/19
losses [2] 57/22 70/19
lost [3] 27/21 57/23 84/10
lot [20] 7/2 25/18 48/10 51/16 75/6 91/5
91/6 91/7 92/16 93/10 93/15 93/15 93/21
94/18 96/6 111/18 113/2 116/21 116/21
116/22
lots [1] 102/24
LOUISIANA [23] 1/2 1/7 1/17 1/23 2/9
2/13 3/9 3/15 4/2 15/17 23/19 28/7 33/8
36/15 45/14 75/8 77/8 80/15 83/1 83/5
83/11 130/21 137/11
low [54] 24/25 25/4 103/10 131/2 131/12
low-hanging [2] 24/25 25/4
low-lying [1] 103/10
Lowe's [4] 33/23 33/25 34/2 37/25
lower [2] 99/12 113/13
LP [2] 2/8 2/11
Lucie [1] 90/16
luckily [1] 51/16
lump [2] 29/23 29/24
lunch [2] 87/1 89/6
Luneng [2] 39/12 61/20
Lutz [1] 22/9
lying [1] 103/10

**M**

made [22] 8/24 20/6 30/21 31/24 46/13
47/25 55/18 60/11 60/17 65/9 80/4 83/3
85/14 99/1 101/9 120/24 121/2 124/1
127/14 128/8 130/5 133/18
Madison [1] 3/5
Mafia [1] 34/11
Magazine [1] 3/15
magnify [1] 114/15
mails [1] 38/20
main [2] 57/12 119/23
maintain [2] 75/17 79/13
maintained [1] 15/13
major [3] 9/1 24/11 130/3
majority [3] 56/6 93/25 94/11
make [34] 6/9 13/15 18/15 20/13 22/10
24/6 27/6 27/7 29/10 30/14 31/24 37/4
37/18 38/3 42/3 46/23 48/3 53/21 58/5
60/2 65/15 65/18 65/21 79/10 79/11
84/23 113/2 116/23 119/12 120/21 121/9
122/16 126/18 136/14
makes [7] 10/8 57/20 82/14 84/19 88/2
88/4 94/12
making [5] 19/18 44/25 53/25 86/2 86/22
manageability [4] 111/4 111/5 111/21
115/5
manager [1] 33/22
manifest [1] 60/10
manufacture [1] 66/22
manufactured [11] 1/5 6/8 13/20 13/23

M

manufactured... [7] 14/21 17/7 34/24 34/25 39/20 60/15 119/25
manufacturer [10] 16/19 25/15 57/11 60/2 60/3 61/19 61/22 65/20 66/19 99/7
manufacturer/sellers [1] 65/20
manufacturers [6] 14/14 14/16 17/5 28/11 39/11 101/11
manufacturing [3] 16/17 60/4 64/19
many [23] 7/11 7/13 7/13 21/1 29/4 30/6 51/13 68/20 68/25 72/1 76/19 76/20 76/20 94/17 95/21 100/22 101/16 101/18 101/25 102/21 106/11 113/24 126/13
Marathon [1] 44/21
March [5] 17/14 40/18 40/19 87/14 100/14
March 15 [1] 17/14
March 19 [2] 40/19 87/14
March 2010 [1] 100/14
March 5 [1] 40/18
MARK [2] 3/20 124/24
marked [1] 40/6
market [2] 60/16 66/5
marketed [1] 66/24
marshal [1] 37/19
marshals [1] 20/20
Marvel [4] 48/11 48/11 48/14 69/3
marvelous [1] 48/16
Mary [1] 31/25
Massachusetts [1] 2/16
master [1] 58/5
masters [1] 15/6
match [1] 102/19
material [1] 60/7
materials [2] 10/24 129/15
matter [15] 10/10 11/4 12/3 12/3 29/3 45/1 45/2 47/19 60/21 85/13 87/6 97/18 117/8 122/21 137/14
matters [5] 9/15 12/23 52/17 98/1 98/1
mattresses [1] 34/11
mature [1] 32/16
maximized [1] 93/12
maximum [1] 96/8
may [35] 8/7 12/6 20/5 20/17 23/15 37/3 37/13 39/8 41/14 58/23 79/24 81/3 81/7 85/23 87/2 87/10 93/22 93/22 97/1 97/7 109/17 113/18 114/19 127/1 128/19 130/16 130/16 132/11 136/5 136/6 136/9 136/10 136/10 136/20 136/20
May 31 [1] 130/16
maybe [8] 6/21 34/4 85/20 97/15 112/4 126/8 127/18 129/17
MAYESH [10] 2/4 22/4 58/22 58/24 68/14 69/14 71/9 71/14 75/13 77/5
Mayesh's [1] 127/4
MD [1] 1/5
MDL [14] 6/7 14/22 15/11 17/9 17/12 18/3 96/4 97/12 101/11 109/4 109/5 109/13 110/9 110/11
MDL'd [2] 50/22 51/5
MDLs [3] 7/1 7/2 109/4
me [34] 7/7 7/7 7/11 7/14 7/15 11/9 13/15 24/7 27/10 34/10 35/2 42/9 45/15 48/17 48/25 49/17 50/5 50/18 61/9 68/14 75/7 95/9 97/17 113/17 113/20 115/25 120/14 126/10 127/13 127/23 136/1 136/12 136/13 137/1
mean [2] 30/10 118/7
meaning [3] 60/9 96/9 130/23
means [5] 56/19 69/24 103/21 107/9 131/21
meant [2] 56/11 83/5

mechanical [1] 4/5
mechanism [1] 76/12
mediation [4] 100/19 101/1 130/15 130/16
mediations [1] 16/5
mediator [1] 100/16
mediators [1] 15/6
medical [1] 106/24
meet [14] 13/12 13/13 19/23 20/20 39/9 39/15 47/15 55/20 100/15 110/3 110/21 120/11 128/23 133/21
meeting [3] 39/10 40/24 52/7
meetings [4] 31/11 52/13 52/14 57/4
MELISSA [3] 3/14 117/6
member [6] 21/16 24/5 24/6 79/15 79/17 118/6
members [17] 20/14 23/25 33/5 43/14 53/11 57/17 69/24 71/10 78/1 81/16 104/2 105/17 122/9 122/11 122/16 122/20 134/25
memorandum [2] 79/4 79/5
memories [1] 75/22
memory [1] 47/11
mention [5] 6/25 7/17 8/19 57/8 68/17 97/10 102/18
mentioned [10] 10/5 17/2 17/24 49/22 51/3 56/13 91/21 94/16 98/10 115/24
Mercutio [1] 49/6
merely [4] 65/25 75/9 107/17 119/9
merits [3] 86/17 91/19 108/24
mess [1] 63/17
Messrs [1] 23/8
Messrs. [1] 9/5
Messrs. Serpe [1] 9/5
met [11] 8/3 19/22 31/1 32/25 33/1 47/1 47/5 47/15 60/5 60/12 88/8
method [2] 18/10 116/12
Meunier [1] 128/21
Mexico [2] 34/16 47/22
Miami [4] 3/2 3/12 52/8 52/9
MICHAEL [1] 3/1
microphones [1] 6/18
microwaves [1] 14/8
might [15] 46/9 59/18 69/9 71/4 94/20 97/10 102/20 109/23 111/7 122/16 122/19 123/6 123/14 134/6 136/9
Mike [4] 22/4 90/9 95/7 95/9
MILLER [11] 1/22 6/13 12/7 22/4 24/21 50/6 61/10 68/14 69/14 70/7 87/22
million [28] 25/9 26/1 26/19 26/22 27/16 27/20 28/3 29/8 30/1 31/10 37/6 58/1 70/9 70/10 70/13 95/11 100/25 113/1 113/3 114/23 118/9 122/11 122/12 124/10 124/10 132/3 132/4 132/9
millions [3] 13/22 59/13 111/17
Milstein [11] 3/20 3/20 23/9 23/10 23/14 23/14 31/16 42/5 104/24 124/25 124/25
mind [3] 111/25 116/18 117/3
minds [1] 103/24
mine [6] 39/12 60/8 61/5 61/20 119/25 120/5
minimal [1] 55/11
MINOR [4] 3/8 22/8 28/18 98/22
minuses [1] 91/21
minute [5] 15/12 20/19 49/19 82/20 128/1
minutes [5] 6/21 20/21 42/2 45/7 50/11
misguided [1] 23/16
Mississippi [1] 33/9
Missouri [2] 43/16 43/22
misunderstands [1] 129/22
mode [1] 95/4
mom [3] 69/4 69/4 94/19

mom-and-pop [1] 94/19
Monday [1] 57/5
monetize [2] 16/13 18/15
money [35] 11/2 25/25 26/3 26/3 26/10 26/23 27/2 29/23 35/7 35/17 48/17 48/21 48/22 62/1 70/10 70/16 82/9 82/12 84/8 84/11 84/13 85/20 85/21 92/16 92/23 93/9 93/9 96/2 104/9 107/6 114/7 114/9 117/15 123/21 133/22
Monica [1] 3/21
monies [1] 96/23
moniker [1] 64/14
monitored [2] 16/5 63/12
monkey [1] 32/10
Monopoly [1] 123/21
Monte [2] 62/19 62/23
month [1] 54/14
monthly [3] 1/10 6/16 15/3
months [3] 41/9 41/9 57/6
monumental [1] 12/12
moot [3] 119/4 136/5 136/6
mooted [1] 123/1
moots [1] 123/11
more [38] 11/22 24/6 26/15 29/19 31/7 35/2 37/12 38/2 40/1 51/13 51/14 53/6 56/25 57/5 57/20 58/13 70/22 75/6 76/3 78/13 79/14 88/15 90/5 93/8 93/9 93/15 93/19 96/5 103/23 104/10 111/7 113/10 113/16 117/7 121/11 125/23 126/9 133/20
morning [19] 6/1 6/4 6/11 6/13 8/15 8/25 21/6 21/9 40/6 48/16 50/6 61/11 68/12 75/4 75/22 87/13 103/21 106/20 121/13
mortar [1] 53/17
Moss [1] 54/11
most [22] 6/22 18/20 19/3 21/25 22/7 26/9 36/7 37/16 39/4 48/25 49/6 49/16 57/7 61/6 69/7 99/11 99/21 100/4 102/18 105/22 112/1 114/13
mostly [2] 9/10 74/4
motion [5] 34/6 44/14 111/12 127/16 128/1
motions [7] 15/10 15/22 31/11 72/18 111/8 111/9 127/20
mouth [1] 133/23
move [14] 13/14 29/2 29/2 30/4 30/4 36/23 53/7 54/19 55/24 55/24 70/6 91/2 94/5 109/6
move-in/move-out [3] 29/2 30/4 55/24
moved [3] 7/13 36/24 38/25
movement [1] 18/20
moving [2] 58/13 114/13
Mr [2] 40/13 46/25
Mr. [109] 12/7 21/15 22/15 23/10 23/23 24/1 24/21 28/17 28/18 32/3 33/2 33/14 33/14 33/22 34/25 35/1 35/3 35/10 36/11 36/23 36/25 37/1 37/24 40/13 42/12 42/13 42/15 42/24 43/8 43/18 43/22 43/23 44/7 44/14 45/10 45/13 46/12 47/5 47/7 47/7 48/15 48/25 50/19 50/20 51/25 52/13 53/14 57/1 58/21 58/22 59/1 61/8 61/9 61/10 68/14 68/14 69/14 69/14 70/7 71/9 71/12 71/12 71/14 73/25 73/25 74/1 75/13 77/5 77/5 77/22 80/3 87/22 87/22 87/23 90/11 90/15 91/21 91/25 93/21 95/8 97/3 98/9 98/19 98/17 104/17 104/19 104/24 104/24 105/4 105/12 108/1 114/25 115/4 115/24 122/12 125/18 126/16 126/17 127/3 129/5 129/7 129/21 129/22 132/11 134/4 134/21 135/5
Mr. Bandas [27] 23/23 24/1 32/3 33/2 33/22 34/25 35/3 36/11 36/23 42/15 43/8

## M

Mr. Bandas... [16] 43/18 43/22 43/23 44/14 45/10 45/13 46/12 47/5 47/7 47/7 48/25 104/17 104/19 105/4 126/16 126/17
Mr. Bandas's [3] 37/24 42/24 48/15
Mr. Batman [2] 33/14 33/14
Mr. Brandao [2] 59/1 129/5
Mr. Duplantier [1] 132/11
Mr. Duplantier's [1] 80/3
Mr. Durkee [1] 104/24
Mr. Durkee's [1] 125/18
Mr. Garcia [2] 40/13 42/13
Mr. Glickstein [8] 21/15 58/21 61/9 77/5 77/22 87/23 91/21 127/3
Mr. Herman [13] 22/15 23/10 28/17 35/1 35/10 36/25 37/1 50/20 51/25 52/13 61/8 71/12 105/12
Mr. Herman's [1] 57/1
Mr. Kaplan [3] 125/4 125/4 125/12
Mr. Kaplan's [1] 125/11
Mr. Levin [8] 50/19 53/14 71/12 73/25 87/22 90/11 95/8 108/1
Mr. Mayesh [7] 58/22 68/14 69/14 71/9 71/14 75/13 77/5
Mr. Miller [7] 12/7 24/21 61/10 68/14 69/14 70/7 87/22
Mr. Milstein [1] 104/24
Mr. Minor [1] 28/18
Mr. Nizialek [1] 73/25
Mr. Panayotopoulos [4] 97/3 98/9 98/17 134/4
Mr. Peterson [4] 90/15 91/25 93/21 98/9
Mr. Pipes [2] 114/25 115/4
Mr. Pipes's [1] 129/7
Mr. Risley [4] 129/21 129/22 134/21 135/5
Mr. Scott [1] 74/1
Mr. Soto [1] 42/12
Mr. Soto's [1] 44/7
Ms [1] 44/18
Ms. [2] 34/2 44/18
Ms. Hill [1] 44/18
Ms. Petrus [1] 34/2
much [17] 11/12 15/16 21/8 22/21 59/11 70/21 70/22 79/22 81/1 82/19 86/24 98/19 99/16 122/21 126/22 134/6 136/23
Multidistrict [1] 14/21
multimillion [1] 67/23
multimillion-dollar [1] 67/23
multiple [1] 97/21
multiunit [1] 54/13
Murphy [1] 35/22
must [7] 40/25 41/2 62/14 62/15 62/18 67/19 131/22
Mutual [6] 2/14 74/1 81/6 81/12 85/13 130/7
my [33] 19/13 21/24 24/7 27/16 27/23 32/23 33/7 33/18 33/23 40/4 43/10 45/15 50/18 50/18 53/21 54/24 55/14 60/16 61/8 68/6 68/9 68/17 68/22 68/23 69/3 69/4 69/4 95/12 99/11 112/19 121/3 125/18 137/12
Myers [1] 96/16
myself [3] 21/15 21/24 68/16
mystery [1] 51/7

## N

naked [1] 49/3
name [2] 33/14 95/12
named [1] 17/9
namely [1] 16/21
national [6] 38/15 38/16 106/5 109/22 109/24
nationals [1] 115/18
natural [1] 60/16
nature [2] 93/8 131/12
NE [1] 2/22
necessarily [3] 103/11 112/24 115/24
necessary [10] 7/3 8/5 10/7 55/9 67/15 67/22 74/3 74/19 78/14 128/13
necessity [1] 30/22
need [17] 11/9 27/3 76/4 81/15 81/20 111/24 120/21 123/11 124/18 127/13 128/16 133/7 135/25 136/1 136/2 136/11 136/13
needed [2] 110/21 121/23
needs [3] 75/21 76/3 133/1
negative [1] 56/6
negligence [1] 59/22
negotiate [2] 54/25 92/3
negotiated [7] 25/8 26/1 26/7 26/19 29/16 37/8 37/8
negotiating [1] 93/1
negotiation [2] 41/10 76/16
negotiations [5] 16/5 50/17 71/25 102/4 109/8
neighborhood [1] 114/21
neither [1] 40/7
never [15] 34/18 42/19 44/3 45/21 45/22 45/24 46/18 47/21 56/2 63/24 66/23 66/24 96/14 123/20 136/20
nevertheless [1] 82/25
new [24] 1/7 1/17 1/23 2/6 2/6 2/9 2/13 3/6 3/6 3/9 3/15 4/2 28/7 32/2 40/17 41/6 41/8 42/11 49/2 53/19 54/5 54/5 69/20 74/25
New York [4] 28/7 40/12 41/6 41/8
newly [1] 14/3
newsworthy [1] 103/7
next [12] 13/11 13/14 40/15 40/15 41/14 54/16 54/20 75/3 76/23 81/18 93/17 102/8
nice [1] 22/8
NICHOLAS [1] 2/21
Nick [1] 90/9
nickel [1] 63/25
night [5] 22/2 24/1 49/10 49/10 104/13
nilly [1] 93/16
ninth [1] 68/15
nitty [1] 28/23
nitty-gritty [1] 28/23
NIZIALEK [5] 2/12 22/5 23/11 73/25 80/2
no [78] 9/15 10/8 11/1 11/1 24/3 24/6 27/17 28/1 29/3 30/12 33/4 34/15 35/9 35/13 38/11 40/6 40/13 40/20 43/25 44/19 45/3 45/18 46/1 46/1 46/1 46/9 46/13 47/3 47/11 47/16 47/17 47/18 47/25 47/25 54/17 55/19 59/22 61/2 61/19 63/10 63/20 64/3 65/5 79/17 86/21 87/5 88/14 88/15 91/10 92/3 95/16 100/11 101/20 101/22 101/23 103/18 105/8 106/23 108/2 112/23 112/23 115/1 117/15 117/23 118/5 118/7 119/20 119/20 120/9 123/18 126/20 127/1 131/5 132/1 136/21
nobody [5] 59/24 72/5 72/11 110/21 135/13
nonblessed [1] 23/22
noncollusive [1] 50/17
noncovered [2] 82/12 84/17
none [4] 37/7 73/12 74/6 123/5
nonlawyer [1] 43/2
nonparticipation [1] 132/16
nor [3] 40/8 40/21 75/15
normal [2] 101/11 112/3
normally [2] 101/12 101/12
North [61] 2/2 3/17 3/21 23/9 23/12 31/9 73/23 73/23 78/6 78/18 79/9 79/12 79/15 80/4 80/9 80/10 80/12 80/21 80/25 81/3 82/6 82/7 82/14 82/15 85/19 85/24 86/11 86/12 86/21 116/24 117/20 117/22 117/25 118/5 118/14 118/16 118/20 121/2 122/3 123/23 124/22 130/6 130/7 130/9 130/12 130/15 130/19 131/4 131/7 131/14 131/22 132/15 133/6 133/12 133/13 133/17 134/2 134/22 135/13 135/22 136/1
North River [45] 23/9 23/12 31/9 73/23 78/6 78/18 79/9 79/15 80/4 80/9 80/10 80/12 80/21 80/25 82/6 82/7 82/14 82/15 85/19 85/24 86/11 86/12 86/21 116/24 117/20 117/22 117/25 118/5 118/14 118/20 123/23 124/22 130/9 130/12 130/15 131/7 131/14 131/22 133/6 133/12 133/17 134/2 135/13 135/22 136/1
North River's [9] 73/23 121/2 130/6 130/7 130/19 131/4 132/15 133/13 134/22
Northern [2] 60/8 60/15
not [243]
note [2] 82/14 103/3
noted [3] 69/22 72/7 105/8
notes [1] 48/5
nothing [12] 12/9 42/6 45/2 45/20 64/1 64/13 64/23 85/25 94/22 96/21 98/3 112/22
notice [23] 9/10 10/24 11/1 27/23 27/24 31/2 31/4 31/4 85/9 85/14 101/1 118/17 121/24 122/9 122/14 122/15 122/17 122/22 122/24 128/3 133/1 133/4 133/8
noticed [4] 19/9 19/22 121/14 124/14
notices [1] 10/6
noticing [1] 14/6
notified [3] 130/12 130/13 130/13
notion [1] 84/16
notwithstanding [2] 80/25 82/15
November [10] 1/8 6/2 12/4 17/13 23/3 23/5 45/7 90/2 117/12 131/6
November 1 [1] 45/7
November 16 [1] 12/4
November 2 [1] 17/13
November 26 [1] 131/6
November 9 [3] 23/3 23/5 117/12
novo [1] 67/11
now [65] 7/11 7/13 8/9 9/20 11/24 12/4 13/14 14/23 17/2 18/8 21/4 22/25 24/10 26/13 31/22 31/25 32/2 34/14 34/17 36/17 37/21 38/20 39/2 40/3 40/12 40/17 42/12 42/23 44/13 45/6 47/24 48/9 49/20 50/5 53/3 54/12 54/15 57/1 57/4 64/6 65/10 66/11 76/10 76/10 79/9 85/19 93/4 93/12 95/3 104/13 104/14 112/8 113/1 114/15 116/2 118/4 118/17 119/2 119/13 121/12 122/2 122/4 122/13 124/9 132/24
number [27] 8/5 12/16 12/17 13/21 14/17 20/11 29/21 51/4 52/13 53/13 57/6 59/12 72/8 72/24 72/25 78/3 79/10 87/17 93/4 100/20 102/15 103/17 103/23 110/13 112/25 132/2 133/3
numbers [4] 50/4 103/16 109/7 113/13
numerosity [2] 110/6 115/5
numerous [9] 15/2 16/4 17/9 18/22 19/6 92/1 106/8 106/15 129/25

## O

O'Keefe [1] 1/16

# O

object [11] 27/5 33/11 42/8 46/22 48/6
79/17 118/2 119/13 128/2 128/3 128/5
127/25
objected [5] 31/19 43/4 46/11 104/12
117/25
objecting [2] 32/3 32/4
objection [40] 33/16 34/15 36/14 37/5
41/25 44/1 44/15 48/1 73/8 73/8 73/9
73/11 73/11 78/6 78/7 80/11 80/25 82/6
82/7 82/22 86/13 86/18 86/19 86/19
86/22 93/6 93/7 93/7 94/2 94/3 106/21
117/8 120/24 121/6 124/17 125/4 125/5
125/7 126/16 127/10
objections [44] 11/1 23/7 23/11 23/15
32/2 34/13 34/24 34/25 38/3 42/16 43/7
43/12 43/16 48/7 52/17 53/9 68/24 69/1
72/24 73/5 73/6 73/10 73/12 73/24 74/2
74/4 78/1 78/4 78/4 79/9 80/4 81/4 82/14
82/17 82/20 85/24 88/14 88/16 103/21
104/14 119/4 119/6 119/23 129/6
objector [11] 31/20 31/25 33/17 34/2
40/20 40/20 43/6 43/19 44/8 44/10 73/20
objectors [10] 20/1 32/7 43/24 45/3
73/22 100/9 107/13 116/24 117/3 126/23
objects [1] 47/14
obligation [5] 24/24 31/6 85/1 120/18
122/23
obligations [1] 118/15
obstacles [2] 71/19 77/17
obtain [5] 9/2 25/4 53/8 54/25 135/6
obtained [5] 26/9 29/1 74/22 83/23 83/25
obviously [9] 90/18 91/4 91/6 91/10
93/18 93/24 100/7 104/6 110/23 113/24
114/4 114/6 132/16
occasion [1] 38/24
occasionally [1] 116/5
occasions [1] 10/5
occupants [1] 14/5
occur [1] 64/20
occurred [2] 52/8 60/18
occurrence [1] 120/11
occurs [1] 55/18
October [2] 18/1 133/3
October 14 [1] 18/1
October 23 [1] 133/3
odor [3] 17/19 60/20 61/1
odors [2] 14/6 60/23
off [14] 34/3 47/9 48/11 50/7 53/20 55/22
60/21 62/2 69/23 73/13 85/12 87/8 108/1
111/21
off-gassing [1] 60/21
offer [3] 37/21 58/25 96/25
offered [3] 53/2 68/8 128/4
offers [2] 44/9 53/16
office [8] 33/22 43/8 47/2 57/2 58/4
100/16 125/18 125/18
officer [1] 114/22
offices [1] 45/10
Official [3] 4/1 137/9 137/18
often [1] 59/6
oftentimes [4] 12/16 97/22 98/1 112/15
oh [2] 38/21 45/12
okay [5] 10/15 35/19 49/18 114/17 117/5
old [1] 82/24
omitted [1] 22/15
omnibus [2] 115/12 116/11
on [191]
once [3] 47/22 53/24 118/11
one [85] 3/18 6/15 7/10 9/16 10/12 10/21
12/18 15/14 20/3 25/6 29/9 29/21 32/5
34/16 34/17 36/9 37/7 39/4 40/13 46/16
49/25 51/3 52/20 53/13 54/24 55/8 59/2
59/24 60/23 61/13 62/19 63/22 64/25
66/16 66/17 67/3 72/13 74/10 74/22 76/9
76/15 78/5 79/10 80/2 80/4 82/6 82/8
84/22 85/5 86/9 86/12 88/17 92/23 93/6
93/6 93/16 94/1 94/1 95/15 96/11 97/12
97/17 104/15 104/19 104/24 106/14
106/16 108/17 109/12 110/19 111/1
112/3 112/11 113/6 113/18 116/25 119/4
119/16 119/23 120/24 121/11 122/13
123/20 135/2 136/24
one's [1] 61/3
ones [4] 25/13 96/12 111/2 118/1
ongoing [3] 18/6 76/10 106/11
only [37] 6/21 12/3 28/24 28/25 29/11
29/16 36/10 38/23 39/13 39/25 45/8 46/5
46/11 47/13 47/13 60/20 64/14 64/21
66/4 72/19 73/4 78/5 83/22 84/5 88/17
93/6 94/1 104/2 110/12 112/18 115/24
117/25 118/1 123/22 125/6 132/8 136/16
open [10] 6/3 10/10 30/5 50/2 90/3 95/21
127/11 128/9 128/11 128/14
open-ended [1] 30/5
operated [1] 64/11
operating [1] 54/15
operation [1] 56/4
opined [1] 93/25
opinion [3] 32/5 92/8 93/23
opinions [2] 77/25 97/22
opponent [1] 98/2
opportunity [11] 6/25 7/16 27/5 87/12
116/23 125/23 127/12 129/16 129/18
135/13 135/23
oppose [1] 27/5
opposite [1] 62/25
opt [26] 10/7 11/2 23/4 23/6 31/21 32/1
35/15 35/18 37/9 37/10 37/11 72/24
72/24 73/1 88/17 88/18 92/9 93/3 94/4
94/5 94/7 97/4 97/5 103/22 103/23 123/6
opt-out [3] 32/1 35/18 123/6
opt-outs [19] 11/2 23/6 31/21 35/15 37/9
37/10 37/11 72/24 72/24 73/1 88/17 92/9
93/3 94/4 94/7 97/4 97/5 103/22 103/23
opted [3] 31/18 92/9 93/4
option [3] 54/10 92/19 93/18
options [1] 54/8
or [144]
oral [1] 19/15
oratory [1] 49/5
order [18] 11/11 16/25 17/13 19/13 22/24
27/18 28/5 42/22 53/14 56/24 63/17
67/18 74/15 78/14 78/17 78/20 81/10
82/1
ordered [1] 46/16
ordering [1] 100/13
orderly [1] 126/5
orders [9] 11/5 15/11 15/12 50/23 50/24
50/25 50/25 51/1 51/22
ordinarily [3] 37/13 41/19 61/3
ore [1] 60/7
organizations [1] 106/8
oriented [1] 109/20
original [3] 34/13 37/8 120/25
originally [6] 39/8 39/12 45/4 46/10
114/25 115/6
Orleans [8] 1/7 1/17 1/23 2/9 2/13 3/9
3/15 4/2
Oser [1] 21/19
ostensible [1] 62/8
other [88] 6/22 12/3 13/6 13/20 17/4
20/14 23/17 26/23 28/3 28/8 28/10 29/8
30/4 30/9 33/13 30/20 30/21 34/1 34/17
36/19 38/10 40/11 42/7 47/6 48/3 48/18
50/7 52/17 53/9 55/15 57/2 57/21 57/22
58/3 58/6 58/10 58/21 59/3 59/7 60/18
60/2 64/9 65/18 69/22 70/8
70/14 70/18 70/22 71/3 71/23 73/10 74/4
74/13 77/8 78/7 85/23 88/9 90/13 90/15
90/25 91/5 91/14 91/23 92/19 92/20
94/21 96/24 98/16 100/1 102/1 102/7
106/8 106/15 107/9 108/24 110/15
111/24 112/7 117/25 120/1 120/9 128/5
128/22 131/11 131/18 134/1
Other Loss [2] 70/18 107/9
others [6] 29/9 42/9 50/20 122/6 125/22
132/6
otherwise [1] 118/25
Oubliette [1] 43/25
ought [2] 20/12 136/11
our [81] 13/14 22/19 26/23 28/3 28/5
28/15 28/24 31/3 31/8 32/3 32/12 32/20
33/19 34/5 40/18 41/24 44/24 48/21 52/7
53/7 55/19 58/25 61/13 61/16 69/14 70/4
73/7 73/7 73/9 73/23 75/24 78/11 78/22
79/2 79/4 79/17 80/7 80/14 80/22 81/14
81/21 81/24 81/25 83/14 83/17 83/23
85/13 86/16 91/11 91/12 92/7 92/10
95/17 95/25 96/2 97/4 97/5 106/4 108/16
111/1 118/3 118/7 119/3 119/3 119/14
119/23 120/16 123/7 125/5 125/14 126/3
126/21 127/8 128/21 129/24 130/10
130/14 133/22 133/23 134/11 136/14
out [66] 7/10 7/21 10/7 10/24 25/14
26/24 27/11 29/2 30/14 31/8 31/19 32/1
33/15 33/25 35/18 37/7 38/25 40/5 42/8
42/22 45/16 45/18 49/17 51/11 51/11
51/22 52/10 52/14 53/15 53/18 54/6
54/23 55/10 55/24 60/8 63/3 63/25 64/1
64/7 65/1 65/16 65/21 67/4 79/5 84/12
92/6 93/1 93/5 96/3 100/2 102/16 102/22
103/8 106/17 112/9 112/13 112/14
112/21 113/10 117/11 121/16 121/23
123/6 123/16 126/8 127/3
out-front [1] 31/8
out-of-pocket [1] 27/11
outcome [1] 50/12
outlet [1] 71/7
outs [20] 11/2 23/4 23/6 31/21 35/15
37/9 37/10 37/11 72/24 72/24 73/1 88/17
92/9 93/3 94/4 94/7 97/4 97/5 103/22
103/23
outset [2] 72/7 72/13
over [35] 14/22 15/2 15/4 15/8 16/2
17/15 17/22 18/7 28/9 34/10 38/20 41/4
48/1 50/10 52/18 53/5 54/12 61/12 80/8
80/10 84/10 98/25 99/2 101/2 101/5
101/8 101/13 101/15 101/17 101/19
101/21 106/11 110/7 125/15 136/21
overall [1] 76/11
overcome [1] 71/19
oversee [1] 15/1
overwhelming [1] 56/6
own [6] 24/24 46/14 65/2 69/25 99/14
124/9
owned [7] 16/22 24/15 61/20 63/1 63/5
63/14 63/20
owners [4] 11/7 14/5 14/12 63/23
ownership [1] 62/10
owns [1] 24/13

# P

PA [2] 2/17 3/23
package [2] 9/23 10/24
packages [1] 22/2
page [4] 5/2 13/16 42/24 86/13
page 3 [1] 42/24
pages [3] 77/2 129/7 133/4

P

paid [16] 30/18 34/3 35/15 55/12 55/16 70/20 73/13 83/2 83/22 84/12 85/25 88/12 88/12 107/19 107/20 119/20
Palm [1] 125/5
PANAYOTOPOULOS [6] 2/21 90/9 97/3 98/9 98/17 134/4
panel [1] 97/12
Papantonio [3] 22/4 90/9 95/9
paper [2] 24/1 116/21
papers [3] 43/7 73/7 73/9
paralegal [1] 33/14
parental [1] 64/4
Paretti [4] 82/25 83/14 83/20 83/25
Park [1] 2/5
part [31] 9/23 19/19 19/21 21/7 22/10 23/24 32/12 44/12 57/25 58/25 75/19 75/20 76/10 78/19 81/10 81/24 86/9 87/18 87/20 99/11 99/21 104/1 104/6 110/9 111/24 113/11 114/13 116/23 126/18 132/23 135/16
participant [1] 75/23
participate [4] 99/21 102/6 103/19 130/4
participated [1] 102/7
participating [10] 33/24 34/1 45/23 47/13 98/23 98/23 100/3 102/24 102/15 110/13
participation [8] 43/25 44/2 57/2 75/24 75/25 82/18 130/12 130/19
particular [13] 7/6 9/13 9/18 9/23 12/21 17/23 36/14 57/15 73/20 78/4 78/7 91/24 111/19
particularly [9] 6/25 14/2 21/24 60/8 71/21 94/23 116/7 129/9 134/5
parties [24] 10/7 16/12 18/14 19/22 51/25 56/9 72/8 72/21 76/20 96/7 100/13 102/3 108/25 110/14 116/5 116/6 117/10 125/13 127/12 130/5 130/10 130/17 131/11 137/2
partner [1] 68/17
partners [1] 61/13
parts [1] 110/24
party [6] 51/1 74/16 82/15 86/11 116/9 116/16
pass [1] 53/20
passed [1] 26/4
passes [1] 29/15
past [2] 60/22 94/16
patent [1] 51/17
patience [1] 50/9
pauper's [1] 112/21
pay [17] 27/23 48/17 48/21 48/21 64/16 67/20 69/19 69/25 70/1 84/8 85/1 95/13 97/1 104/9 120/20 123/20 131/22
paying [12] 81/14 82/9 82/11 82/12 82/22 84/2 84/4 84/17 85/3 85/17 86/1 120/10
payment [5] 69/21 84/21 85/3 85/7 119/22
payments [2] 84/23 85/4
payoff [1] 36/18 36/19
payout [1] 29/5
pays [1] 67/21
PC [1] 1/7
peace [1] 36/5
Peachtree [1] 2/22
peculiar [1] 68/8
penalty [1] 64/16
pending [1] 34/6
Pennsylvania [1] 1/20
penny [2] 86/3 123/20
pension [1] 112/17
people [45] 6/17 15/16 18/11 20/11 21/1 23/18 24/16 24/18 29/20 38/23 41/1 41/3 46/21 48/10 48/12 50/5 51/24 51/25 53/4 56/7 56/21 58/6 59/17 63/19 65/14 85/20 91/2 92/16 93/4 93/13 93/17 95/1 99/11 102/7 103/10 104/9 104/12 107/16 107/17 110/5 117/21 118/5 119/19 132/2
people's [1] 106/18
percent [11] 26/15 26/16 29/15 44/16 44/18 70/11 70/20 73/5 74/12 103/22 114/8
percentage [2] 26/16 103/8
perfectly [1] 66/19
perhaps [1] 73/2
period [3] 32/2 38/8 68/19
permits [1] 130/21
Perricone [1] 73/11
Perry [1] 52/9
Perry's [2] 58/4 100/16
person [5] 15/4 40/8 41/4 75/3 112/12
personal [26] 16/25 28/19 29/9 29/10 29/12 30/21 30/24 34/14 34/15 35/5 35/6 35/12 35/20 36/3 52/3 57/24 70/21 70/22 71/3 96/19 96/22 105/5 107/14 107/20 107/21 108/10
perspective [2] 50/13 75/21
pertains [1] 83/21
Peterson [7] 3/1 3/1 90/15 91/25 93/21 95/8 98/9
petition [1] 26/17
Petrus [2] 33/22 34/2
phase [1] 13/14
Phil [3] 22/5 23/11 80/2
Philadelphia [1] 1/20
PHILIP [1] 2/12
philosopher [1] 68/2
phone [5] 6/17 15/5 40/8 41/5 95/23
phony [1] 42/16
photos [2] 47/6 47/7
phrase [1] 66/15
physical [2] 46/1 46/6
PI [5] 35/4 35/6 35/9 36/9 36/11
picked [2] 27/20 29/14
picture [1] 86/8
piece [1] 82/1
pierce [2] 62/5 62/14
pierced [2] 64/4 71/16
piercing [4] 62/17 64/14 64/23 67/16
pilot [19] 16/5 16/9 18/2 18/6 28/14 39/25 41/7 41/9 41/10 41/13 41/15 41/16 52/14 52/19 53/3 68/18 75/24 75/25 109/8
pipe [2] 20/15 20/16
PIPES [6] 3/8 22/9 28/18 98/22 114/25 115/4
Pipes's [1] 129/7
place [16] 2/15 2/18 16/1 20/4 25/7 26/2 26/3 55/16 56/17 57/1 64/18 66/4 83/11 120/23 133/9 135/21
placed [1] 11/3 16/8
plaintiff [13] 37/13 37/20 51/9 57/2 64/3 66/20 66/25 67/7 92/20 93/16 93/17 96/18 114/24
plaintiff's [1] 37/7
plaintiffs [36] 1/15 1/18 2/1 6/12 10/14 10/17 10/23 12/17 12/21 14/24 18/16 28/8 28/13 52/3 54/25 55/14 58/17 64/24 65/4 66/16 71/11 71/18 92/20 92/25 94/1 96/4 96/21 97/1 98/14 108/19 112/5 119/8 119/8 127/6 132/6 132/7
plaintiffs' [15] 11/25 17/21 18/3 21/10 24/24 27/12 31/8 36/8 39/10 40/22 50/19 52/12 62/4 65/7 127/25
plane [1] 88/25

planned [1] 21/8
Plasterboard [2] 16/22 17/7
played [1] 52/9
player [1] 33/2
Plaza [1] 3/24
pleading [2] 43/4 45/1
pleadings [5] 15/21 44/4 116/21 118/18 126/21
please [19] 6/4 6/6 6/10 6/17 8/7 12/6 20/5 20/17 20/24 37/3 37/13 40/15 41/4 58/23 87/10 90/4 114/19 127/1 128/19
pleased [1] 11/2
plugged [1] 98/4
pluses [1] 91/21
plywood [1] 60/24
pocket [1] 27/11
pockets [1] 62/2
point [25] 18/20 21/3 36/24 66/10 67/23 68/9 80/14 81/21 83/16 84/16 85/5 86/25 96/3 96/11 104/4 115/20 123/10 123/16 123/22 128/8 128/14 129/5 129/11 131/16 136/25
pointed [6] 51/22 52/14 53/15 101/14 106/16 127/3
pointing [1] 101/13
points [1] 79/10
policies [20] 12/16 26/8 80/9 80/13 81/12 81/12 81/12 81/13 81/21 82/7 84/22 85/22 86/3 86/6 101/16 101/21 118/11 118/15 119/23 120/12
policy [22] 77/18 78/15 79/13 80/8 80/8 80/9 80/10 80/12 80/17 82/13 83/2 83/7 83/8 83/17 83/22 83/24 84/20 85/8 130/8 135/3 135/5 135/10
policyholder [2] 83/23 83/24
pollution [3] 26/8 101/22 101/24
pop [1] 94/19
Poppins [1] 32/1
Port [1] 90/16
portion [3] 70/16 99/18 107/3
portions [1] 100/21
posed [1] 12/19
position [12] 26/20 26/21 65/7 95/5 104/20 106/1 109/22 117/3 117/24 120/2 135/15 136/15
positions [4] 102/1 135/16 135/17 135/17
positive [3] 56/8 69/5 69/5
possibility [3] 122/18 123/8 123/9
possible [7] 32/19 77/21 93/20 103/2 103/15 114/15 133/19
post [4] 65/12 67/19 80/17 80/21
post-Katrina [1] 65/12
post-loss [2] 80/17 80/21
posted [2] 8/13 56/5
pot [3] 85/16 93/11 114/15
potential [9] 47/13 72/25 78/24 92/7 92/22 94/21 97/7 121/2 125/17
pots [1] 114/10
Poydras [5] 1/22 2/9 2/12 3/9 4/1
PPA [1] 108/4
practically [2] 16/11 68/1
practice [3] 16/11 43/11 94/21
practices [1] 67/15
practicing [3] 35/24 37/16 45/15
Prandini [1] 25/8
precedent [1] 83/11
precisely [1] 95/24
predominance [1] 115/4
preferred [1] 74/5
prefers [1] 89/2
preliminary [10] 9/4 9/8 10/5 10/8 10/10 13/15 19/8 32/24 55/1 88/13

## P

prepare [1]  59/8
preparing [3]  117/13 124/1 124/4
prescription [1]  102/24
presence [1]  13/19
present [4]  9/3 9/18 13/18 21/15
presentation [3]  23/25 32/23 136/17
presentations [2]  19/15 29/10
presented [2]  134/10 134/15
presenting [1]  9/6
presents [2]  97/23 97/25
preservation [2]  51/1 56/24
preserve [2]  78/14 78/23
preserved [1]  134/24
preserves [1]  131/4 133/12
presided [3]  15/8 16/2 17/15
presiding [1]  15/2
press [5]  20/3 20/8 20/12 20/13 20/14
20/25 50/25 51/1 51/21 56/23
pretrial [9]  15/11 17/13 50/23 50/24
50/25 50/25 51/1 51/21 56/23
pretty [7]  54/15 58/10 59/13 91/10 94/13
103/6 123/11
prevail [1]  114/24
prevent [1]  115/1 121/23
Prevention [2]  38/16 105/16
previous [1]  40/21
previously [2]  117/9 127/9
priced [1]  66/2
primaries [1]  83/17
primarily [1]  13/24
primary [15]  36/4 80/7 81/11 81/15 82/1
82/7 83/1 85/2 85/6 85/9 86/3 86/15
120/15 120/17 130/7
primary's [2]  81/21 82/18
principal [1]  65/23
principles [1]  67/12
prior [2]  10/5 56/23
private [3]  7/14 33/19 62/10
privileged [1]  40/9
pro [2]  11/14 15/6
pro se [1]  15/6
pro ses [1]  11/14
probability [4]  77/4 91/19 102/12 102/17
probably [6]  9/17 47/9 54/17 69/7 100/3
112/1
problem [23]  15/14 24/14 32/7 46/9
60/20 62/12 65/6 74/25 94/21 97/21
102/18 103/11 105/14 105/18 110/9
110/16 112/13 112/15 113/5 113/12
116/3 116/10 116/16
problematic [2]  113/5 116/7
problems [9]  12/14 46/2 97/23 105/23
105/24 119/20 120/10 128/20 136/7
procedural [2]  78/12 87/6
procedure [1]  15/11
proceed [1]  101/3
proceeded [1]  109/6
proceeding [1]  110/10
proceedings [10]  4/5 6/3 16/3 30/23
32/18 72/12 90/3 91/17 137/6 137/13
proceeds [6]  80/17 84/20 94/22 114/16
118/10 118/10
process [34]  16/6 18/7 18/10 19/18
19/24 31/2 32/11 50/12 52/5 52/21 54/13
54/21 57/1 73/16 74/15 76/8 76/11 76/25
77/20 78/19 78/24 79/6 79/18 79/20
91/22 92/12 93/15 98/5 100/23 100/24
121/14 121/16 130/4 135/14
produce [1]  34/8
produced [3]  44/7 48/5 50/16
produces [1]  46/15
product [24]  38/4 38/9 38/14 39/7 39/9
39/11 39/15 39/17 39/22 40/2 59/17
59/20 60/11 60/15 62/21 65/25 66/1
66/22 69/15 85/23 99/9 99/10 116/4
production [1]  46/16
products [8]  1/5 6/8 9/2 17/6 39/19 60/2
60/2 108/5
profession [1]  94/25
professional [7]  7/13 12/24 13/6 32/6
43/6 50/17 100/8
professionalism [2]  12/1 72/2
professionally [1]  11/25 41/22
profile [4]  37/20 46/18 51/2 51/9
profits [1]  63/16
program [26]  16/6 18/2 18/3 18/6 18/15
28/15 39/25 41/7 41/9 41/10 41/13 41/15
41/16 52/14 52/19 53/3 54/20 56/7 56/16
57/7 68/19 75/24 75/25 76/1 90/6 100/19
programs [2]  16/9 109/8
progressed [1]  90/21
prohibit [1]  80/23
prohibition [1]  80/20
project [1]  10/19
projections [1]  51/12
prolix [2]  30/25 31/10
promise [1]  86/20
promised [1]  41/17
promptly [1]  19/10
proof [3]  24/3 52/18 88/11
proper [4]  32/18 32/19 67/9 67/13
properties [2]  14/5 46/14
property [17]  13/19 14/12 25/15 31/18
31/19 35/22 36/4 37/14 46/6 52/3 61/6
69/21 70/19 88/6 107/16 107/20 108/3
proponent [1]  50/15
proponents [1]  19/25
proposal [1]  100/17
proposed [11]  8/4 11/6 16/14 19/12 20/1
48/3 60/24 121/11 121/14 121/19 122/9
prospect [1]  132/1
protect [2]  81/15 83/24
protected [2]  107/7 107/11
protection [2]  81/15 105/17
protester [1]  40/7
protesting [1]  39/25
protocol [10]  9/21 9/22 16/8 16/8 16/10
17/25 18/4 39/23 41/17 53/23
protocols [1]  16/13
proud [10]  26/11 26/17 39/23 58/19 70/4
74/23 75/20 87/18 101/1 103/25
prove [13]  29/9 35/6 54/22 62/18 63/3
67/8 67/16 71/5 71/5 71/7 107/6 114/7
120/8
provide [7]  11/7 71/4 77/9 96/8 110/20
113/16 134/18
provided [7]  24/17 54/18 57/3 71/22
125/8 126/24 133/1
provides [7]  55/9 55/25 69/19 71/6 81/10
96/8 109/16
providing [1]  71/10
provision [4]  74/6 74/6 84/18 85/5
prudent [1]  53/1
Prussian [1]  68/2
PSC [30]  18/17 21/5 39/24 49/12 57/2
57/25 62/20 63/3 70/16 73/24 77/19 79/4
87/14 90/23 92/4 95/18 98/18 98/24
100/20 102/14 105/25 125/17 129/14
130/13 131/1 131/21 133/2 133/16
134/25 135/4
PSC's [1]  129/6
public [2]  15/13 56/5
publication [2]  9/11 28/1
pudding [1]  52/18
purchase [2]  38/1 46/17
purchased [2]  37/24 45/23
pure [3]  35/12 35/20 59/22
purported [1]  88/17
purportedly [2]  56/21 88/18
purpose [5]  19/10 64/15 123/18 126/5
135/11
purposes [3]  17/17 22/18 122/5
pursuant [3]  52/19 53/23 88/22
pursue [2]  24/25 67/22
pursued [1]  26/7
pursuing [2]  26/7 31/9
pushing [1]  9/25
put [34]  10/25 15/19 16/11 19/23 23/21
27/10 27/12 27/16 27/24 27/25 27/25
35/7 40/3 42/7 44/4 54/4 60/25 63/6
64/21 65/19 68/14 72/16 97/5 97/17
102/1 102/2 102/4 109/5 110/12 115/10
120/22 120/25 130/8 135/21
puts [3]  24/7 53/18 55/10
putting [6]  9/7 21/23 83/18 94/5 94/7
133/22
PWC [1]  63/10

## Q

qualifies [2]  88/1 94/2
qualify [3]  30/6 53/14 58/6
quality [2]  12/25 13/7
quarters [1]  58/15
question [21]  32/20 32/21 35/13 40/14
42/12 83/9 100/11 102/9 108/21 109/13
113/19 114/17 115/20 119/7 119/15
122/8 123/24 126/8 128/7 128/17 129/3
questionable [1]  102/18
questioned [2]  36/9 36/11
questions [6]  9/14 73/14 74/20 103/5
108/15 129/20
quick [1]  136/24
quickly [2]  91/4 94/5
Quinn [1]  3/4
quite [4]  51/5 103/25 114/20 129/18
quote [7]  37/23 43/10 43/10 43/13 45/2
83/5 83/7
quote/unquote [1]  83/7
quoted [1]  80/22

## R

raise [2]  15/25 123/8
raised [13]  73/15 80/10 104/16 105/4
119/3 119/5 119/7 125/17 129/10 129/13
129/20 130/9 136/16
raises [1]  85/24
ran [1]  62/25
range [4]  32/19 77/21 103/2 103/15
rank [2]  99/6 102/7
rather [4]  62/22 68/6 68/7 116/6
rattling [1]  38/21
raw [1]  60/7
Ray [1]  43/5
RCR [2]  10/13 10/22
re [4]  1/5 6/7 9/22 80/16
re-establishment [1]  9/22
reach [3]  31/4 71/20 130/14
reached [13]  7/10 44/20 55/14 57/24
70/15 72/3 72/13 72/14 90/3 95/19
98/24 100/20 131/2
reaching [2]  116/6 130/18
react [1]  119/18
reacting [1]  110/7
reactive [2]  53/22 120/7
read [18]  15/23 19/18 29/20 37/25 42/19
45/21 116/23 129/18
reader [1]  68/2

reading [1] 50/3
ready [3] 54/4 73/21 112/17
real [11] 23/17 25/16 25/18 31/17 32/7
36/12 53/16 54/9 79/7 115/9 136/24
realize [2] 95/14 96/10
really [22] 13/8 15/13 16/15 16/20 36/12
42/6 42/9 55/4 59/9 61/16 69/5 69/5
71/10 78/5 88/3 95/1 115/23 123/18
125/8 125/22 132/1 135/20
reason [13] 9/11 12/24 26/20 63/22 82/8
94/12 98/16 107/25 119/16 121/20
123/13 125/8 128/6
reasonable [14] 19/12 50/16 53/1 57/21
71/20 76/12 79/6 79/21 84/25 88/20
108/14 117/24 131/1 132/1
reasonably [1] 69/17
reasons [6] 6/15 16/25 82/8 105/6
119/14 128/13
rebuttal [4] 20/2 74/3 126/25 127/2
recall [6] 39/8 52/7 75/23 76/3 76/4 80/6
receipt [1] 38/1
receipts [4] 37/23 46/15 47/16 47/20
received [4] 19/17 32/1 116/21 126/17
receives [1] 54/1
receiving [1] 46/22
recent [2] 82/24 82/24
recently [2] 32/6 70/15 80/16 106/16
recess [5] 20/23 49/21 89/5 89/6 137/4
recognition [1] 61/15
recognize [6] 13/5 13/9 74/8 74/9 74/15
94/18
recognized [3] 24/14 32/4 115/15
recognizes [2] 74/17 109/7
recommendation [1] 44/10
recommendations [1] 58/5
recommended [1] 44/19
reconstructed [1] 14/4
record [47] 6/10 8/13 19/19 19/21 21/8
22/11 27/10 34/20 36/21 37/22 38/11
38/14 39/2 39/3 42/4 44/4 45/8 46/12
46/25 47/24 50/2 50/3 56/5 58/13 64/3
64/22 82/17 87/4 87/8 98/20 115/16
115/17 115/22 116/23 117/4 117/14
121/10 126/18 127/11 128/9 128/11
128/14 129/7 129/11 130/1 133/3 137/13
recorded [1] 4/5
records [1] 77/3
recoup [1] 85/14
recourse [2] 61/19 61/23
recover [6] 42/21 62/5 93/17 96/5 113/14
118/10
recovering [1] 62/1
recovery [18] 32/19 37/7 52/25 55/9 69/8
76/11 77/7 77/13 77/17 77/21 77/24
93/20 97/7 103/2 103/15 115/1 135/6
135/8
red [2] 36/1 36/1
redhibition [1] 77/11
redress [2] 61/16 61/23
reduced [1] 17/18
Reed [15] 32/13 68/24 69/7 71/23 72/22
76/14 76/14 76/23 77/22 88/8 91/9 98/16
100/10 102/8 108/13
refer [3] 13/4 39/3 56/12
reference [3] 12/7 19/15 22/21
referred [1] 135/5
refers [1] 95/9
refinished [1] 54/6
refreshed [1] 75/22
refrigerator [1] 61/1
refrigerators [1] 14/8

refused [1] 27/23
refusing [1] 14/23
refuted [1] 84/18
regard [8] 28/19 30/24 32/22 33/1 35/4
40/12 77/1 133/25
regarding [2] 39/19 98/15
regardless [1] 92/7
regards [1] 68/22
Regina [1] 40/3
regret [1] 82/5
regularly [1] 15/2
rehabilitated [1] 112/14
reimburse [1] 85/8
reimbursed [1] 29/25
reimbursing [1] 30/2
reiterate [1] 126/3
rejection [1] 78/4
relate [1] 104/21
related [8] 15/8 18/19 90/24 91/5 97/8
105/19 105/20 106/17
relates [2] 1/8 77/7
relating [1] 12/4
relations [1] 61/17
relationship [2] 7/19 13/4
relatively [2] 28/1 87/18
release [6] 36/3 36/3 83/23 104/3 108/3
108/10
released [3] 99/24 121/3 123/20
releases [2] 83/25 121/1
relevant [1] 78/4
relied [1] 120/13
relief [15] 9/2 9/24 25/7 28/24 35/8 35/16
49/14 52/25 53/10 53/17 71/11 71/22
74/22 86/20 130/4
relieved [1] 112/8
remain [4] 7/3 55/2 96/4 128/14
remainder [1] 53/10
remaining [2] 23/7 93/6
remains [4] 60/1 93/20 117/10 117/14
remarkable [1] 59/16
remarks [2] 12/6 127/14
remediate [3] 25/5 99/20 99/21
remediated [12] 18/12 41/3 52/21 52/22
54/12 56/13 56/16 56/22 57/9 58/9 87/25
88/12
remediating [5] 18/7 54/13 99/19 101/7
113/25
remediation [31] 11/7 16/6 17/24 18/2
18/4 18/6 18/10 29/4 29/5 29/6 29/15
29/22 31/22 39/6 39/21 39/23 40/2 41/17
53/23 54/9 54/10 54/11 54/20 54/21
56/22 58/9 69/23 70/2 74/12 75/24 75/25
remediations [1] 57/15
remedy [3] 40/1 49/14 92/11
remember [1] 41/5
remembered [1] 34/1
remind [1] 47/12
reminds [1] 34/10
removed [4] 53/23 53/24 53/24 54/1
RENITA [2] 3/5 98/7
reoccupy [1] 54/7
repair [7] 52/23 55/21 56/1 56/20 112/17
113/2 114/10
repaired [2] 55/17 70/5
repairs [1] 53/2
repayment [1] 64/1
repeat [1] 74/19
replace [1] 85/21
replacement [1] 85/22
reply [1] 22/19
report [9] 8/12 8/19 11/17 11/21 12/7
12/10 21/12 23/2 30/16
Report 38 [1] 8/12

Reporter [3] 4/1 137/10 137/18
represent [1] 36/9
representation [2] 13/7 45/1
representatives [1] 93/24
represented [1] 22/3
representing [1] 40/13
reps [2] 44/18 44/19
reputable [1] 123/4
reputation [1] 46/10
request [9] 17/1 49/25 88/19 118/13
118/19 121/20 123/10 123/14 128/8
requested [2] 27/4 117/9
required [4] 44/4 48/4 73/15 110/2
requirements [2] 31/2 32/21
requires [2] 44/7 62/13
rescinded [1] 103/22
rescissions [3] 23/5 37/10 73/1
researched [2] 125/18 130/20
reserve [2] 119/11 121/5
reserved [2] 20/7 37/23
reserves [2] 131/7 131/9
resident [1] 125/5
residential [1] 101/7
residents [2] 9/2 36/15
resolution [8] 18/21 40/24 53/9 76/11
87/19 88/5 97/13 130/18
resolve [7] 11/4 18/19 57/5 100/21
118/24 125/11 136/2
resolved [6] 13/8 52/1 73/6 88/4 104/6
134/5
resources [1] 112/16
respect [5] 12/9 57/8 74/3 87/16 88/10
respectfully [4] 35/21 49/16 88/7 88/19
respiratory [1] 14/10
respond [3] 12/12 15/23 127/12
responding [1] 136/17
response [5] 53/4 73/7 103/20 129/6
136/18
responsibilities [1] 13/6
responsible [4] 22/1 57/14 62/7 116/5
rest [2] 42/3 63/8
restore [1] 69/20
restored [3] 55/6 55/10 70/3
restores [1] 53/19
restoring [2] 30/3 52/5
result [22] 13/19 13/24 14/12 23/19
30/15 60/17 69/17 70/3 70/4 74/23 78/16
79/16 86/23 88/11 96/23 97/18 97/20
104/11 122/19 132/5 132/9 134/7
resulted [3] 41/18 64/17 100/19
results [2] 70/17 76/9
retainer [2] 25/11 33/17
retainers [1] 32/1
reversed [1] 122/15
Review [1] 32/6
reviewed [3] 44/3 72/20 77/2
revise [1] 124/18
Rhine [3] 2/1 2/1 10/16
RICHARD [2] 2/8 75/4
Richards [1] 7/22
Rick [1] 22/5
right [24] 20/18 20/21 24/14 31/5 59/5
61/4 68/8 69/15 76/10 85/14 90/13 93/3
95/3 111/23 114/15 118/10 122/3 123/7
124/9 131/9 131/16 131/23 133/23 137/4
rights [12] 78/25 79/13 80/9 102/23
107/8 118/3 118/7 121/5 128/12 134/22
135/6 137/1
ripe [1] 102/11
rise [2] 20/22 137/5
risk [8] 94/6 94/7 96/13 133/14 133/14
133/15 133/15 133/15

R

risks [4] 38/11 69/11 93/22 98/15
RISLEY [6] 3/17 117/20 129/21 129/22 134/21 135/5
Rita [3] 14/1 23/20 36/16
River [50] 3/17 23/9 23/12 31/9 73/23 78/6 78/18 79/9 79/12 79/15 80/4 80/9 80/10 80/12 80/21 80/25 81/4 82/6 82/7 82/14 82/15 85/19 85/24 86/11 86/12 86/21 116/24 117/20 117/22 117/25 118/5 118/14 118/16 118/20 122/3 123/23 124/22 130/9 130/12 130/15 131/7 131/14 131/22 133/6 133/12 133/17 134/2 135/13 135/22 136/1
River's [9] 73/23 121/2 130/6 130/7 130/19 131/4 132/15 133/13 134/22
Riverway [1] 3/18
RMB [1] 64/2
road [2] 2/22 62/20
Roberts [2] 3/23 125/2
Robin [1] 45/11
rock [1] 60/7
Romeo [1] 49/6
room [6] 20/6 20/13 72/2 95/22 96/1 120/1
round [2] 67/1 67/2
routinely [1] 43/11
rule [16] 24/6 32/7 32/21 44/23 51/16 55/8 57/21 58/18 61/7 78/21 88/8 88/23 122/4 122/8 122/21 135/23
Rule 11 [1] 24/6
Rule 23 [10] 32/7 32/21 51/16 55/8 58/18 61/7 78/21 88/8 122/8 122/21
rules [2] 108/23 116/11
ruling [4] 66/10 78/20 82/25 124/8
rulings [1] 15/22
run [3] 54/15 63/2 63/11
run-up [1] 54/15
running [1] 34/9
RUSS [6] 1/16 5/23 6/11 21/23 22/7 72/16
Russ's [1] 69/3
Ruth [1] 21/18

S

safe [1] 28/25
Safety [10] 38/4 38/9 38/14 39/7 39/9 39/11 39/15 39/17 39/22 40/2
said [38] 22/22 33/6 35/19 36/17 43/20 47/10 49/5 54/11 59/6 65/14 65/18 69/4 69/11 69/14 70/7 70/21 71/14 73/25 73/25 83/1 83/5 84/13 95/21 104/12 105/23 114/25 115/6 115/9 117/7 121/13 121/21 126/18 128/8 128/15 129/24 129/25 132/11 134/3
Saints [1] 12/3
sales [3] 29/14 57/23 65/1
salespeople [1] 65/17
Sam [1] 21/18
same [17] 13/16 47/2 50/3 54/21 58/14 60/14 61/9 61/9 67/15 74/10 85/2 91/7 106/21 110/8 119/25 128/6 128/16
samples [1] 47/25
Sandy [2] 21/25 128/20
Santa [1] 3/21
Sarver [1] 3/8
satisfied [2] 57/7 121/15
satisfy [1] 57/17
saw [4] 46/3 46/5 68/19 103/5
say [44] 15/12 26/15 29/11 33/18 34/13 35/18 37/14 39/23 42/6 42/9 48/6 48/12 48/24 59/21 64/3 66/21 67/24 69/16

74/11 75/12 82/8 82/11 100/2 101/1 100/12 102/14 106/23 116/17 116/23 117/21 120/19 122/2 122/5 123/17 124/9 124/16 126/19 127/11 128/16 131/4 133/6 134/4 134/21 134/25
saying [7] 24/2 38/21 83/18 83/21 85/19 86/14 111/13
says [14] 34/3 33/23 42/15 42/16 44/20 45/12 45/13 46/18 47/20 49/7 54/2 68/3 82/7 133/8
Scalia [1] 32/4
scene [1] 53/25
schedule [1] 136/4
scheduled [2] 15/3 130/15
scheduling [2] 11/5 19/13
Scholer [3] 2/4 68/13 68/20
school [1] 36/14
science [1] 105/15
scientific [5] 38/6 106/23 107/1 107/10 108/7
scientifically [1] 105/9
scope [3] 31/3 52/23 55/21
SCOTT [5] 2/15 22/6 74/1 81/6 90/16
se [2] 3/12 15/6
seal [2] 59/4 59/4
seated [4] 6/4 20/24 49/22 90/4
seating [1] 20/7
second [41] 37/9 57/4 76/17 78/13 78/13 78/18 78/21 78/23 79/2 79/5 79/8 79/10 79/11 79/19 82/11 84/16 104/18 104/19 106/10 121/11 121/15 122/9 123/1 123/19 124/6 124/20 128/1 129/20 129/23 129/23 132/13 132/14 132/25 133/8 133/11 133/17 135/4 135/12 135/15 135/18 136/15
secondly [2] 79/14 109/13
secretary [1] 21/18
Section [4] 1/6 84/19 85/6 85/16
Section 1.16 [3] 84/19 85/6 85/16
sector [1] 7/14
Sedran [1] 1/18
see [18] 10/17 12/7 16/9 16/13 28/3 30/25 45/12 45/13 47/3 60/18 83/10 100/22 125/8 126/1 127/19 129/15 130/14 136/12
Seeger [1] 128/20
seeing [3] 7/1 52/1 111/7
seek [5] 68/4 78/20 81/20 131/11 131/23
seeking [4] 65/6 78/17 86/16 98/18
seemed [1] 62/11
seems [1] 49/6
seen [2] 47/21 94/23
self [4] 29/5 54/21 71/24 83/6
self-evident [1] 71/24 83/6
self-remediation [2] 29/5 54/21
sell [1] 99/9
seller [2] 124/3 131/19
sellers [1] 65/20
semblance [1] 18/12
send [2] 46/23 121/17
sense [5] 30/6 60/9 94/12 94/17 113/3
sent [1] 10/2
separately [1] 63/1
September [4] 16/24 38/3 39/7 39/22
September 15 [3] 38/3 39/7 39/22
September 4 [1] 16/24
serial [1] 43/6
series [1] 130/21
serious [6] 45/1 49/3 49/3 71/19 103/4 103/5
seriously [3] 72/11 97/6 125/14
Serpe [1] 9/5
serve [4] 34/7 115/8 116/9 116/16

served [3] 55/7 96/25 115/13
service [4] 17/14 115/10 115/19 116/6
services [1] 13/10
Serzone [1] 108/5
ses [1] 11/14
SESSION [2] 6/1 90/1
set [21] 19/9 19/10 19/13 28/23 30/8 49/17 53/2 62/2 79/5 86/10 107/3 107/6 118/18 119/14 121/25 122/10 123/25 124/14 125/6 136/3 136/18
setoff [1] 96/24
sets [2] 108/21 113/25
setting [4] 19/7 20/9 20/15 52/10
settings [1] 57/23
settle [10] 24/16 40/25 83/2 84/24 85/3 85/4 108/4 130/22 130/24 130/25
settled [7] 41/1 56/25 72/12 83/6 107/15 107/24 109/17
settlement [248]
settlements [33] 8/23 16/14 21/13 23/3 24/10 26/13 28/15 28/21 41/18 42/20 43/12 50/24 55/15 57/10 57/12 69/9 86/10 86/12 107/14 108/1 108/9 110/15 114/14 117/23 117/24 118/1 118/2 118/25 121/14 123/11 130/1 134/3 135/19
settles [1] 18/25
settling [6] 10/20 107/18 117/10 118/6 130/8 134/14
seven [6] 26/4 28/13 46/12 47/25 88/17 106/12
seven-fifty [1] 26/4
several [12] 6/17 9/19 29/23 34/17 37/4 50/23 51/3 69/22 82/24 109/12 121/3 132/8
Shakespeare [2] 49/5 49/18
shared [3] 27/14 27/14 57/3
shares [1] 45/10
sharing [1] 43/1
shark [1] 45/17
SHARMA [2] 3/5 98/7
shazam [1] 48/12
she [7] 33/23 34/5 34/7 40/3 49/8 49/10 92/24
sheet [2] 120/1 120/2
sheetrock [4] 60/11 94/19 94/25 95/1
sheets [1] 120/1
shekel [1] 64/2
shipped [1] 66/3
shirt [1] 48/12
shocked [1] 63/23
shoes [1] 61/1
shop [1] 116/2
shopping [1] 42/25
short [3] 29/13 57/22 65/13
shortage [1] 66/5
should [19] 8/6 12/11 15/12 20/13 34/1 43/1 58/17 64/4 74/15 75/15 78/2 82/10 86/5 86/14 104/23 105/8 108/14 110/24 127/19
shoulder [1] 137/1
shouldn't [1] 84/17
show [3] 35/9 40/21 47/6
showed [4] 40/7 40/14 40/20 47/6
shown [1] 50/9
shows [1] 46/16
sic [1] 22/5
side [8] 13/4 28/3 29/12 41/24 51/10 59/8 71/13 134/5
side's [1] 67/20
sides [5] 11/6 13/1 41/23 41/24 100/7
Siefert [1] 103/6

sight [1] 41/23
significant [9] 18/20 75/17 76/21 77/9
77/18 78/3 78/13 103/16 105/6
significantly [3] 77/13 78/2 113/13
signing [1] 11/10 50/3
signs [1] 55/22
silver [2] 14/6 46/5
similar [5] 96/18 102/6 102/7 107/8 110/6
simple [2] 61/2 88/3
simplify [1] 85/12
simply [7] 10/6 78/21 83/16 83/17 84/12
102/25 105/8
since [7] 14/22 42/16 73/9 82/17 83/13
91/5 124/8
sincere [1] 125/12
single [7] 37/25 40/14 41/5 64/12 64/14
106/13 106/14
Sinkler [1] 2/17
sir [5] 21/9 22/2 25/23 27/9 28/5
sit [6] 49/24 52/16 52/18 56/24 97/6
136/7
site [9] 8/13 10/25 15/13 15/19 15/20
45/22 47/3 47/9 57/4
sitting [1] 52/1
situation [18] 9/16 30/25 51/15 59/10
59/18 65/23 68/8 69/18 83/20 84/12 89/1
93/11 97/4 104/25 111/13 113/9 123/7
126/7
six [5] 47/25 73/22 73/22 76/14 91/9
sixth [1] 77/25
size [1] 64/16
skin [2] 14/10 45/17
slept [1] 21/9
slide [1] 41/14
slides [2] 40/4 72/15
slowing [1] 132/12
slows [1] 98/1
small [5] 65/8 72/25 87/18 94/18 103/14
smaller [1] 99/16
smell [5] 46/1 47/17 60/16 119/20 120/1
Smith [1] 2/8
sniffles [2] 34/16 38/24
so [115] 6/17 10/7 10/9 13/9 13/16 16/9
16/11 18/10 19/23 25/2 25/5 26/22 29/16
33/2 33/11 33/20 34/5 34/14 34/21 34/24
35/6 38/7 41/7 41/13 41/25 42/2 48/5
51/9 52/7 52/24 53/10 53/20 55/7 55/22
56/21 56/21 57/5 57/12 58/10 60/20 61/2
61/24 62/17 63/20 64/20 66/14 67/11
67/21 68/15 69/10 70/3 71/9 73/7 73/22
74/21 79/19 80/19 82/12 82/23 82/24
84/17 85/16 86/4 91/7 94/17 97/10 97/14
99/3 99/20 99/25 104/3 104/9 105/2
105/19 107/3 107/9 107/23 108/8 109/10
109/15 109/18 110/16 110/24 111/5
111/18 111/18 112/7 112/20 113/5
113/14 115/13 116/10 117/13 120/10
120/21 121/10 122/21 123/2 123/10
124/11 128/16 128/23 130/4 130/9
130/12 130/13 130/13 130/16 131/1
132/3 132/24 133/14 134/9 135/20
136/11
so-called [1] 82/12
society [1] 55/2
soda [1] 60/25
software [1] 4/6
sold [7] 17/7 45/24 46/18 66/23 75/16
77/16 87/16
solely [1] 107/14
solicitation [3] 45/14 45/16 45/18
soliciting [2] 43/19 43/23

solidary [2] 131/20 132/8
solidary [1] 131/21
solutions [1] 136/8
some [85] 7/7 9/24 10/2 11/5 11/8 12/23
13/8 13/15 14/6 14/9 18/10 18/12 19/23
20/7 21/4 24/8 25/3 25/11 29/15 30/4
38/23 38/24 42/8 42/11 45/2 47/22 48/7
48/8 48/18 51/12 52/6 52/10 53/5 54/13
56/6 56/19 58/2 58/21 62/18 62/18 62/24
68/21 68/24 72/15 73/13 73/14 73/14
73/15 74/14 75/10 75/22 78/7 78/12
81/19 84/13 88/25 91/23 93/17 93/17
94/23 97/16 97/18 102/25 110/10 111/8
112/16 113/15 118/11 121/1 122/5
124/19 127/14 128/20 129/10 129/17
129/19 132/6 134/9 136/5 136/5 136/6
136/6 136/8 136/10 136/11
somebody [9] 33/16 63/5 63/18 84/13
94/19 94/20 99/16 101/13 107/4
somehow [1] 99/16
someone [1] 99/8
something [22] 15/19 20/20 24/5 29/11
34/18 37/23 42/18 44/23 66/4 72/6 83/19
84/2 92/22 98/4 113/1 115/5 116/3
116/10 116/17 126/24 136/3 136/20
sometimes [3] 49/5 74/16 104/7
somewhat [2] 23/23 104/17
Somewhere [1] 116/16
sons [1] 45/16
sorry [1] 43/22
sort [3] 6/25 18/8 48/24
Soto [5] 34/12 40/13 42/12 46/25 126/16
Soto's [1] 44/7
sought [4] 78/19 79/10 79/11 118/19
sound [6] 20/15 23/16 24/8 49/23 105/15
121/2
soundly [1] 16/10
source [1] 39/13
south [6] 2/19 43/16 44/3 92/10 92/15
106/22
South Carolina [2] 43/16 44/3
Southeastern [1] 60/12
space [1] 49/24
spare [1] 94/25
speak [11] 18/8 19/19 35/2 50/18 58/21
92/24 109/15 109/23 111/18 112/20
116/25
speaking [3] 22/16 79/25 81/5
special [2] 15/6 58/5
specific [5] 29/19 104/16 110/19 111/1
128/17
specifically [2] 73/24 105/20
specificity [1] 126/9
specifics [2] 136/10 136/11
spelled [1] 42/22
spend [4] 50/11 113/3 115/19 116/15
spending [1] 76/21
spent [3] 27/11 112/16 113/2
spite [2] 92/1 98/11
spoke [1] 42/1
spoken [2] 91/14 94/4
spread [1] 67/15
square [2] 13/22 26/4
squarely [1] 83/11
squeeze [1] 95/23
St. [1] 90/16
St. Lucie [1] 90/16
staff [2] 21/24 21/24
staffs [1] 50/9
stage [8] 32/17 72/12 76/24 91/17 102/8
109/10 111/4 111/15
stalking [1] 33/18
stand [15] 33/16 41/11 41/20 66/13 68/7

69/15 70/4 82/5 89/5 102/4 104/25
104/25
standards [1] 60/5
standing [16] 35/25 42/14 42/18 43/1
44/9 49/4 79/17 82/5 82/17 86/21 118/5
118/7 118/22 118/24 134/23 135/21
standpoint [2] 15/9 97/24
start [4] 6/24 8/1 52/1 99/25
started [8] 35/24 45/15 46/8 62/21 74/22
100/13 108/1 112/12
state [21] 7/2 7/3 7/5 7/7 10/1 10/4 11/19
14/13 15/7 17/10 23/13 44/24 49/10
66/23 67/4 100/1 106/9 109/23 110/10
110/16 110/17
stated [2] 103/20 134/17
statement [1] 45/24
statements [3] 37/4 38/2 63/10
states [27] 1/1 1/12 8/20 9/16 12/13
13/21 13/23 13/24 17/8 41/1 60/11 60/12
63/18 65/2 65/5 65/9 65/13 66/3 66/3
66/24 66/24 67/9 67/10 67/13 77/8 97/15
137/10
status [14] 1/10 6/16 6/20 8/1 8/19 10/13
12/7 12/10 15/3 17/2 28/6 40/5 40/7
117/10
statute [1] 102/25
stay [2] 63/16 121/18
steering [13] 6/14 11/25 15/5 18/3 21/11
24/24 27/13 31/8 39/10 40/23 50/19
52/12 113/23
stenography [1] 4/5
step [3] 25/6 86/7 104/7
stepped [3] 99/6 101/2 104/12
Steve [4] 22/4 68/12 129/1 129/2
STEVEN [2] 2/5 5/24
Stewart [1] 2/14
sticks [1] 53/17
Stiles [1] 3/14
still [12] 21/1 24/19 31/6 44/23 59/4 92/7
92/10 103/23 106/20 114/11 122/8 134/9
stipulated [1] 17/17
stocked [1] 46/18
stone [1] 95/23
stop [3] 49/18 105/23 120/19
storms [1] 112/14
story: [1] 72/16
story: the [1] 72/16
straightforward [1] 61/2
strange [1] 124/13
streaming [1] 49/23
Street [9] 1/19 1/22 2/2 2/9 2/12 3/2 3/9
3/15 4/1
strength [1] 59/16
strengths [1] 59/7
strict [1] 60/1
strong [2] 68/3 106/1
strongly [1] 97/4
structure [3] 19/23 52/11 56/17
struggled [1] 115/7
studied [2] 105/12 105/20
studies [1] 38/5
study [4] 38/7 105/19 105/21 105/25
stuff [1] 49/2
Sturm [1] 66/14
subcategory [1] 56/12
subject [3] 30/24 71/6 131/22
submission [1] 121/25
submissions [1] 119/3
submit [3] 88/7 124/19 127/10
submitted [3] 10/24 127/9 133/2
suboption [1] 54/10
subpoena [3] 34/7 34/8 34/10
subsequent [1] 78/9

**S**

subsidiaries [1] 24/13
subsidiary [2] 16/22 17/6
substance [3] 84/3 87/5 125/7
substantial [2] 31/4 115/16
substantive [1] 128/4
substitute [1] 50/3
subsuppliers [1] 99/15
succeed [4] 31/21 93/22 134/14 134/15
succeeded [1] 7/18
success [4] 77/4 91/19 102/12 102/17
successful [3] 58/10 95/3 131/14
such [8] 9/12 14/9 56/3 62/6 80/17 80/23
 107/10 132/5
sued [1] 61/4
sues [1] 63/18
suffered [3] 23/20 30/4 38/23
suffering [1] 48/2
sufficient [1] 105/24
suggest [4] 27/6 35/21 86/17 97/4
suing [2] 101/12 112/6
suit [4] 14/13 15/17 33/4 116/13
Suite [9] 1/19 1/22 2/2 2/12 2/22 3/2 3/12
 3/18 3/24
sulfur [4] 17/18 46/5 60/7 120/6
sulfur-bearing [1] 60/7
Sullivan [1] 3/4
sum [2] 29/24 29/24
summary [1] 103/18
summer [2] 50/21 51/6
super [3] 7/7 48/16 52/8
superhero [1] 48/13
Superman [1] 48/10
supervised [1] 16/1
supplemental [2] 73/17 128/10
supplied [3] 87/16 87/17 87/25
supplier [2] 96/18 112/23
suppliers [13] 9/3 14/15 19/6 40/10 57/12
 70/12 94/18 99/2 99/5 99/12 101/10
 102/19 104/5
supplies [2] 13/25 65/12
supply [10] 2/8 2/11 2/17 19/4 19/5 65/13
 87/11 90/14 90/16 90/25
support [12] 22/19 38/7 50/9 98/10 98/16
 106/1 106/24 107/10 118/18 125/20
 129/25 133/24
supported [3] 38/24 38/25 94/11
supporters [3] 90/5 116/20 126/25
supporting [1] 106/1
supportive [1] 114/13
supposed [2] 83/24 124/11
Supreme [6] 80/15 82/25 83/1 83/5
 83/11 101/23
Supreme Court [6] 80/15 82/25 83/1 83/5
 83/11 101/23
sure [9] 53/21 54/1 67/22 101/18 110/15
 117/5 121/9 122/4 125/21
sureties [1] 14/17
surprisingly [1] 35/18
suspect [1] 6/20
suspenders [1] 31/17
sustained [2] 13/19 135/16
SW [1] 3/2
Swiss [1] 63/9
sword [1] 38/21
symptoms [1] 39/1
system [7] 15/15 33/20 50/14 55/7 58/18
 61/16 97/23

**T**

table [10] 24/13 71/13 85/12 91/24 92/1
 92/5 93/2 96/1 97/6 111/22

Tai'an [1] 16/22
Tai'an [1] 16/22
Taishan [11] 15/22 16/2 16/7 16/12 16/14
 16/22 16/23 24/19 28/10 31/19 31/22
 40/11 66/9 66/15 75/10 99/8 114/6 114/8
 120/9 134/5
Taishan's [1] 16/25
take [27] 6/24 7/16 19/14 20/19 29/23
 36/18 40/9 42/3 42/8 49/19 59/7 59/14
 67/3 70/8 74/14 82/20 85/7 85/20 86/7
 86/25 91/15 95/5 95/17 100/21 113/9
 116/17 118/24
taken [13] 8/20 19/20 19/20 30/7 37/17
 47/1 50/1 59/11 59/11 63/24 67/3 117/23
 124/11
takes [4] 15/18 53/18 121/15 123/12
taking [7] 34/11 83/17 84/14 96/13
 112/16 125/14 128/3
talc [1] 61/1
tale [1] 9/1
talented [1] 49/1
talk [8] 29/10 59/15 70/22 100/14 101/4
 119/2 136/1 136/7
talked [5] 34/19 45/3 46/11 47/18 71/10
talking [6] 72/24 101/6 103/9 109/19
 121/13 132/12
Tampa [1] 33/10
tangible [1] 53/17
tapped [1] 137/1
target [1] 94/20
Task [1] 105/17
Tatum [1] 40/17
taxed [1] 63/17
team [1] 128/21
Tear [1] 48/11
technical [1] 85/24
tees [1] 108/23
tell [8] 22/17 61/9 72/16 90/11 96/13
 98/20 104/25 105/11
telling [1] 122/20
temporary [1] 39/1
tenacity [1] 126/13
tenants [2] 30/13 101/6
tend [2] 68/25 113/4
tender [2] 80/7 120/19
tendered [2] 83/9 98/10
tendering [2] 78/15 92/13
term [6] 38/7 38/11 105/8 105/23 105/25
 106/13
termed [1] 64/12
terminate [1] 131/16
terminated [1] 78/25
termination [4] 78/25 79/7 133/23 134/19
terms [4] 54/8 70/23 79/13 115/20
terrific [1] 11/15
Tessier [1] 2/11
test [1] 133/21
tested [2] 120/5 131/6
testimony [3] 19/14 108/22 125/13
testing [1] 60/6
Texas [5] 3/18 33/7 42/23 43/11 46/19
text [1] 84/18
TG [1] 16/21
than [33] 11/23 24/7 30/20 35/17 36/19
 37/12 40/1 41/17 51/13 51/14 55/8 56/25
 57/20 62/22 66/7 68/6 68/7 70/23 73/5
 75/6 93/15 94/21 96/5 108/2 109/1
 113/10 114/8 117/25 120/9 123/25
 125/23 132/3 133/8
thank [36] 10/11 10/16 11/11 11/12 12/8
 21/9 37/2 49/16 50/4 50/8 51/14 58/19
 59/5 68/11 75/1 75/2 79/21 79/22 80/25
 81/1 86/24 87/12 88/24 95/6 97/9 98/19
 113/22 117/17 117/18 124/21 126/11

126/12 126/15 126/22 128/18 136/23
 136/23
thanking [1] 99/25
thanks [1] 68/22
that [766]
that's [74] 12/4 14/17 18/8 21/20 24/5
 27/7 27/9 27/16 30/1 30/5 30/12 30/16
 33/6 37/14 38/11 42/9 45/25 46/6 52/8
 52/25 53/22 55/2 55/6 57/5 66/2 67/1
 67/19 67/24 70/1 70/8 76/24 77/4 78/6
 81/23 81/24 83/3 83/4 83/20 84/4 92/18
 93/6 94/10 95/15 95/23 96/2 98/4 104/4
 104/5 110/2 110/25 111/3 112/9 113/11
 113/15 114/15 117/23 118/16 118/22
 119/23 119/24 120/16 120/20 120/21
 121/4 121/7 121/10 123/21 124/3 124/14
 131/10 132/23 133/12 133/19 133/21
their [123] 6/9 7/8 7/8 12/1 12/1 13/5
 16/16 16/17 17/11 18/11 19/4 23/15
 23/16 24/13 24/17 24/18 24/23 27/2 27/2
 27/3 28/25 29/1 30/7 30/14 31/21 31/22
 34/12 34/19 34/20 34/22 34/23 36/16
 37/19 38/22 38/22 38/22 46/6 46/22 49/9
 49/10 49/13 52/5 52/6 55/6 55/12 55/17
 56/20 56/22 56/23 61/22 66/11 69/15
 69/21 69/25 70/1 70/2 70/5 70/6 70/12
 71/5 73/13 79/13 79/13 79/16 80/7 85/7
 85/13 86/15 87/25 88/12 88/12 94/6
 94/25 97/7 97/7 99/2 99/6 99/14 101/14
 102/20 103/12 103/24 104/5 104/9
 104/25 105/1 105/2 105/14 107/3 107/3
 107/8 107/15 107/18 107/18 107/19
 107/20 110/5 112/14 112/17 112/18
 112/20 115/2 119/19 120/2 120/8 120/11
 120/15 120/18 120/19 120/21 122/2
 123/6 123/10 126/4 129/14 130/3 130/8
 134/24 135/15 135/17 135/17 136/8
 136/17
them [55] 8/4 9/20 12/23 15/18 15/24
 15/24 19/18 20/13 20/14 21/7 22/21
 28/25 29/1 35/2 36/7 37/25 38/19 41/3
 45/5 46/16 47/8 70/5 71/7 71/19 73/25
 74/6 74/19 74/20 83/18 92/4 96/21 98/3
 99/19 102/5 103/1 103/9 103/22 104/15
 110/1 112/10 112/25 114/10 116/9
 116/23 116/23 118/12 118/21 120/16
 120/20 122/20 123/5 123/5 123/7 134/7
 134/17
themselves [7] 28/21 29/25 56/20 85/8
 100/9 102/17 111/3
then [54] 6/22 14/3 16/8 16/12 20/1
 23/21 23/21 24/25 25/8 27/6 28/15 35/15
 42/8 43/9 44/19 46/12 46/25 53/22 54/5
 55/23 62/5 63/6 64/24 65/20 67/7 73/20
 85/1 86/25 88/1 99/9 99/23 100/21 107/5
 107/7 108/21 109/1 111/11 112/13
 113/21 116/9 119/5 119/8 119/11 119/13
 123/15 124/8 131/15 131/21 132/8
 132/19 135/9 135/16 136/1 136/3
theoretically [1] 16/10
there [131] 8/6 10/1 11/1 11/1 11/22
 12/13 12/14 12/22 16/15 20/1 20/17
 22/14 22/16 23/3 23/18 23/19 24/8 24/14
 24/20 25/14 25/19 26/17 27/14 28/1 31/7
 31/15 31/21 32/11 35/6 35/13 36/7 37/12
 40/6 41/4 44/13 51/7 51/12 51/13 51/13
 53/5 53/6 53/12 55/13 55/17 55/18 56/18
 57/9 58/14 62/9 62/12 62/14 63/10 63/20
 64/6 64/10 65/4 65/5 65/7 65/23 66/7
 67/11 68/20 69/11 69/12 70/10 71/2 73/4
 73/13 74/14 75/21 77/6 78/3 79/6 81/11
 82/3 82/4 84/7 88/17 92/3 93/20 94/14
 94/17 94/22 96/12 97/24 97/25 100/20

# T

there... [44] 101/20 102/15 103/6 103/11
103/21 104/11 104/14 105/6 105/8
105/23 106/17 107/5 110/13 110/24
111/11 111/12 111/13 114/7 114/9 115/5
115/18 116/4 116/5 118/23 119/16
119/21 119/22 121/1 125/21 125/21
128/2 130/11 130/17 130/20 130/23
132/4 132/5 132/22 133/7 133/14 134/1
134/16 136/2 136/13
there's [64] 10/12 12/13 12/19 15/15
28/9 29/5 29/5 29/5 29/7 30/8 31/13
31/20 33/4 34/15 35/9 37/25 44/6 44/19
44/20 45/12 46/14 46/25 56/12 66/4 70/7
83/10 83/11 83/21 91/10 91/21 92/7
92/16 92/22 93/5 94/1 94/22 96/13 99/23
100/11 100/11 101/5 101/8 101/15
101/21 101/23 102/9 103/4 106/23 111/4
118/13 118/18 120/8 120/16 122/8 124/7
132/1 132/6 132/7 132/9 133/6 135/2
135/3 135/9 135/11
thereafter [2] 18/1 20/2
Therefore [2] 88/19 98/12
therein [1] 116/9
thereof [1] 11/8
these [57] 9/15 12/12 12/16 13/1 13/3
13/7 13/10 14/12 14/14 15/16 15/21
16/13 19/2 21/12 25/13 25/16 36/9 37/23
41/2 43/10 48/3 49/15 59/11 59/19 62/24
63/15 65/1 67/16 67/25 71/17 73/12
73/18 74/25 76/9 76/12 77/7 77/23 84/6
94/23 96/9 96/9 100/6 101/11 105/21
107/1 107/14 107/25 108/9 111/8 112/24
113/4 114/14 116/1 117/22 130/1 130/9
135/19
they [219]
they're [5] 10/1 44/8 51/14 107/18
107/19
thing [14] 24/14 31/5 31/23 48/25 54/18
67/8 68/9 69/15 82/11 97/12 108/17
112/11 114/14 136/24
things [12] 56/3 58/12 84/22 84/23 93/10
95/15 97/11 124/19 136/5 136/6 136/6
136/6
think [97] 7/4 7/23 15/14 18/8 18/13
31/24 50/13 50/15 53/13 55/7 55/15 56/4
56/6 57/6 57/20 58/15 59/10 61/8 61/25
64/8 64/12 68/18 70/3 70/22 71/17 71/23
72/22 72/23 72/23 73/16 74/18 75/12
75/21 76/4 77/5 77/14 77/22 78/1 82/16
85/10 86/4 86/8 86/21 88/10 92/17 94/2
94/6 94/7 100/10 102/9 103/2 107/5
110/1 110/14 110/18 110/21 111/20
111/24 111/25 113/6 113/8 113/11
113/15 114/10 114/20 115/16 117/12
118/23 119/4 120/4 120/14 120/17 122/7
123/2 123/10 123/16 125/13 125/16
129/6 129/8 129/12 129/22 132/20
133/20 134/3 134/12 134/13 134/17
134/21 134/23 134/25 135/4 135/22
135/25 136/8 136/11 136/19
thinking [1] 61/11
third [5] 25/8 29/25 32/5 106/25 120/24
Third Circuit [2] 25/8 32/5
this [285]
Thompson [1] 3/17
those [99] 9/25 12/23 23/7 26/13 39/1
40/7 40/12 41/15 50/24 51/18 52/14
56/23 56/25 57/7 57/12 57/14 57/15
57/15 58/2 58/12 59/1 59/3 59/15 59/24
60/2 62/6 62/9 62/17 63/12 63/16 63/17
64/11 66/6 67/6 73/6 73/22 74/2 74/8

74/18 77/17 80/10 81/13 82/14 82/17
82/20 88/5 89/21 90/12 91/21 91/22
93/5 93/13 95/22 99/8 99/22 100/5
100/18 100/21 101/17 101/19 101/20
101/25 102/3 102/21 103/22 103/23
104/8 104/13 104/14 105/3 105/7 107/13
107/17 110/1 110/3 110/7 110/18 111/9
112/8 112/19 113/12 113/25 114/1 114/5
114/7 114/16 116/6 118/2 120/7 121/5
123/20 125/8 125/14 125/15 126/23
127/10 134/19 137/2
though [6] 45/25 59/10 85/3 106/3 113/5
123/16
thought [10] 20/7 27/19 45/4 45/17 95/11
98/5 115/20 127/15 130/2 133/9
thousand [1] 29/23
thousands [7] 12/14 14/23 77/2 93/5
111/16 111/17 115/14
threat [1] 79/7
threatens [1] 48/1
three [22] 8/6 8/9 12/18 14/22 25/16
50/10 62/19 62/23 73/6 83/13 86/13
104/14 106/11 110/14 111/16 112/4
118/8 118/23 119/12 121/4 123/4 135/1
Three-card [2] 62/19 62/23
three-page [1] 86/13
through [38] 9/19 26/4 27/13 27/22 28/4
28/13 28/22 29/15 30/23 37/22 38/4
39/14 40/18 47/1 49/9 49/10 56/7 59/12
62/23 63/11 68/19 68/23 68/24 69/10
73/16 76/7 93/14 93/18 96/6 100/25
105/1 107/11 109/7 110/1 112/7 125/8
125/15 127/9
throughout [6] 7/1 11/15 11/20 97/15
97/23 126/13
throw [1] 32/10
throwing [1] 124/13
thrown [1] 34/23
thrust [1] 109/19
Tianjin [1] 17/7
tied [1] 22/8
time [48] 27/4 31/12 32/18 36/19 36/19
38/7 40/23 41/21 42/3 42/11 45/8 45/10
47/3 49/17 54/15 54/16 56/15 59/15
59/15 64/8 64/8 68/20 73/1 73/10 75/16
76/21 77/16 78/25 90/19 90/21 91/16
94/6 94/25 102/14 102/24 111/1 120/3
123/12 123/15 124/9 126/1 126/12
126/13 130/23 132/21 133/16 134/18
135/15
times [6] 51/3 68/25 69/22 72/1 95/21
129/25
timing [2] 75/21 111/10
tires [1] 52/24
today [43] 6/15 7/16 8/25 9/4 11/21 19/9
21/10 28/6 28/14 29/10 41/18 41/20
50/24 52/18 56/24 69/22 77/2 78/17
88/15 88/17 90/17 97/6 107/17 109/14
110/25 117/21 118/17 118/18 119/5
121/25 122/1 123/4 124/19 125/9 127/14
128/5 132/10 133/10 134/10 135/22
135/23 136/16 136/18
together [17] 7/25 9/7 18/15 21/23 22/8
54/5 58/11 65/19 100/14 102/5 104/9
109/5 112/10 130/1 130/2 134/3 136/11
told [9] 24/15 28/14 28/15 45/15 46/9
47/2 99/6 105/12 105/13
Tompkins [1] 2/7
Toni [5] 4/1 4/3 137/9 137/17 137/17
too [8] 29/16 45/4 97/10 121/9 134/6
136/9 136/10 137/2
took [12] 16/1 25/18 26/20 26/21 28/6
34/20 40/11 41/11 47/7 60/4 64/17

111/21
111/24
top [7] 37/8 55/16 63/2 69/23 70/9 70/13
70/19
tort [2] 32/16 102/23
tossing [1] 85/15
total [1] 96/20
touch [4] 15/23 57/19 76/14 91/20
touched [4] 24/4 62/13 101/16 103/4
touches [1] 65/22
tough [1] 50/17
toughly [1] 72/19
toward [6] 18/20 82/10 85/7 85/11 88/2
88/5
towards [10] 10/9 58/1 84/21 84/21 85/9
85/14 85/17 86/4 86/5 130/8
Toxicology [1] 106/6
track [2] 36/21 58/13
trading [1] 61/13
traditional [2] 109/11 109/12
trailers [1] 23/21
transactions [3] 63/7 63/11 63/12
transcript [1] 137/12
transcription [1] 4/6
transcripts [1] 15/21
transferee [1] 14/20
transferred [1] 15/17
transitory [1] 14/10
translation [1] 116/8
transparency [1] 15/16
trash [1] 121/17
Traurig [1] 3/11
Travis [1] 42/23
treated [2] 34/16 116/19
treaties [1] 116/4
treatment [1] 34/16
treaty [1] 61/15
trial [33] 11/5 12/5 17/15 17/17 18/1
40/18 40/20 40/21 40/23 59/8 67/11
70/17 72/17 72/18 78/16 90/20 96/12
96/13 96/14 104/7 114/21 118/20 120/7
122/11 123/25 123/25 124/2 124/8
124/12 124/12 128/21 131/6 131/20
trials [11] 9/20 16/3 16/7 51/23 52/22
53/25 93/16 102/10 104/8 109/8 131/15
tried [9] 9/19 28/13 40/24 88/18 96/16
106/15 106/15 112/25 117/11
trigger [1] 118/15
troubles [1] 115/25
true [6] 62/25 94/23 117/23 118/5 118/7
137/11
truly [1] 93/7
truth [1] 49/4
try [13] 15/19 20/14 45/6 57/17 71/5 71/7
102/2 110/17 110/25 113/1 113/10
125/11 125/15
trying [5] 21/1 59/4 96/14 104/4 105/11
TTP [1] 16/23
Tube [1] 43/5
turned [2] 64/24 124/12
turnkey [1] 56/3
turns [1] 65/1
Tusa [5] 4/1 4/3 137/9 137/17 137/17
tweak [2] 53/7 74/5
tweaked [1] 53/6
twice [1] 118/12
two [32] 2/15 6/15 12/13 12/18 16/15
16/16 16/16 16/18 20/17 41/8 50/2 59/2
73/10 73/17 78/11 79/10 82/8 84/23 90/5
102/4 109/15 112/4 117/11 117/21 118/4
120/15 120/20 121/19 123/25 127/11
135/2 137/2
two-fer [1] 109/15

**T**

type [1] 122/22
typical [2] 108/18 111/6

**U**

U.S [3] 67/18 105/15 105/16
U.S. [1] 39/14
U.S. attorney [1] 39/14
ultimately [9] 58/8 61/25 100/18 101/14
103/7 103/15 104/8 132/18 135/22
umbrella [1] 109/13
unable [3] 77/11 99/21 102/19
unambiguous [1] 80/20
unanimous [1] 53/4
unblessed [1] 23/22
uncapped [1] 29/3
uncertainty [1] 97/25
unchanged [2] 117/10 117/14
unclarity [1] 121/1
unclear [1] 114/11
uncomplicated [1] 61/3
uncontroverted [1] 64/23
und [1] 66/14
under [55] 31/6 42/14 54/9 54/9 55/8
57/21 58/6 59/4 59/25 62/10 64/8 64/15
65/21 67/5 67/6 67/12 67/19 77/11 77/22
78/21 79/13 79/21 80/11 82/12 83/8
83/25 84/10 84/22 85/16 85/22 87/24
88/1 91/9 96/5 109/5 109/12 111/18
115/8 115/13 116/6 118/10 119/17
119/20 119/22 120/17 121/4 121/16
122/7 122/17 130/21 131/1 131/25
132/20 133/7 135/3
underlying [1] 118/14
underneath [1] 101/20
understand [5] 31/23 42/6 59/18 77/1
136/9
understanding [3] 121/3 126/8 137/13
understood [3] 42/20 52/4 121/7
undertaking [1] 38/7
undiscoverable [1] 60/10
unethical [1] 45/18
unforeseeable [1] 71/15
unfortunately [4] 82/4 92/14 93/11 133/3
uniformity [1] 97/18
unilaterally [1] 133/5
unique [5] 51/4 52/15 53/13 94/17
113/25
unit [2] 64/13 64/14
UNITED [19] 1/1 1/12 8/20 13/23 17/8
60/12 63/18 65/2 65/5 65/9 65/13 66/3
66/23 66/24 66/24 67/9 67/10 67/13
137/10
United States [16] 8/20 13/23 17/8 60/12
63/18 65/2 65/5 65/9 65/13 66/3 66/23
66/24 66/24 67/9 67/10 67/13
units [2] 10/18 14/8
unjustifiable [1] 132/22
unjustifiably [1] 130/25
unknown [1] 60/6
unless [3] 42/21 74/3 119/22
unlike [2] 91/23 107/12
unquote [1] 83/7
unraveling [1] 134/8
until [10] 11/4 12/4 44/1 47/18 59/8
60/10 64/19 64/20 89/5 136/6
unusual [1] 14/6
up [62] 18/9 18/20 20/9 20/15 20/20 21/3
23/13 24/15 26/17 26/24 27/12 27/16
27/20 27/24 27/25 27/25 29/14 31/10
33/10 33/16 35/7 35/15 36/15 40/4 40/7
40/14 40/20 40/21 44/4 45/6 48/15 54/15

54/17 61/4 61/5 67/22 72/16 90/17 91/2
91/2 91/11 92/19 99/21 99/7 100/19
101/2 101/9 102/4 102/19 104/8 104/9
104/25 107/5 108/23 112/17 115/10
115/12 116/10 121/15 122/10 123/24
upcoming [4] 12/5 70/17 78/16 131/6
updated [1] 23/5
upheld [1] 83/12
upon [7] 41/10 44/10 57/19 67/15 81/25
107/23 133/11
upper [1] 63/24
upper-level [1] 63/24
upset [2] 48/9 48/24
urging [1] 18/14
Urquhart [1] 3/4
us [37] 21/3 24/15 24/17 24/18 24/21
27/11 27/17 28/14 39/15 45/16 45/17
50/10 51/18 52/10 61/7 62/5 65/16 65/16
76/23 81/23 89/3 98/20 100/15 118/2
118/23 118/24 119/11 119/13 120/22
123/3 123/17 123/18 124/2 124/8 133/24
134/9 134/18
Usdin [1] 3/7
use [4] 6/17 66/14 85/21 107/19
used [3] 45/14 45/17 60/15
USG [4] 2/18 19/5 87/11 87/14
USG Corporation [2] 19/5 87/14
using [2] 4/5 124/15
usually [2] 99/15 111/5
utilized [1] 66/9

**V**

vacate [1] 17/1
vague [2] 136/9 136/10
valid [2] 80/11 80/18
valuable [1] 13/10
value [4] 25/20 25/22 45/21 123/22
various [17] 7/3 7/24 10/20 14/7 14/16
17/1 17/10 21/22 26/8 29/14 38/20 54/8
56/9 59/11 92/2 114/9 125/11
vast [2] 93/25 94/11
vehicle [2] 116/12 124/15
veil [6] 62/14 62/18 64/4 64/14 64/23
67/16
veils [2] 62/6 71/15
venture [2] 69/16 99/13
verbally [1] 129/16
verdict [6] 96/14 96/16 96/20 96/25
103/13 103/14
verdicts [1] 26/10
version [1] 121/4
versus [2] 36/1 36/1
very [68] 7/6 9/20 9/20 11/12 13/2 13/4
24/16 24/21 26/11 31/23 49/1 50/15
50/16 50/23 51/6 51/21 52/4 56/4 58/19
61/3 72/19 72/25 74/23 75/13 77/5 77/8
78/7 79/22 80/15 81/1 81/23 82/19 82/23
86/24 87/12 87/18 91/25 92/18 92/18
94/7 95/3 95/17 97/4 97/6 98/19 101/1
102/6 102/13 103/13 103/14 104/15
105/6 106/8 106/21 110/6 114/19 123/3
124/2 124/14 124/21 125/12 126/2
126/22 127/5 133/20 134/12 134/15
136/23
vetting [1] 15/5
victims [4] 23/20 41/2 86/21 126/3
video [2] 20/16 49/23
view [3] 41/13 68/9 81/21
vineyard [1] 41/22
violate [1] 42/25
violation [1] 24/6
Vioxx [2] 26/14 84/7
Virginia [16] 7/21 9/1 9/2 9/10 9/15 9/17

9/18 9/19 9/24 9/25 14/25 28/7 28/12 40/10
virtually [1] 43/15
vis [2] 81/22 81/22
vis-à-vis [1] 81/22
vision [1] 34/5
visit [2] 127/22 127/23
Vitela [1] 34/9
von [1] 68/3
von Clausewitz [1] 68/3

**W**

waging [2] 36/13 36/14
wait [3] 18/11 36/18 107/4
waive [2] 44/11 131/16
waived [4] 85/13 133/23 134/17 135/18
waiver [1] 17/14
walk [8] 31/13 31/14 31/15 84/14 121/22
122/25 123/14 123/15
walk-away [1] 31/13
walking [1] 121/23
Wallance [1] 68/17
wallboard [1] 13/22
Walmart [1] 43/9
Walnut [2] 1/19 2/2
want [51] 6/24 7/16 11/13 11/18 11/22
23/13 24/19 27/1 33/18 37/21 38/3 39/2
41/25 42/3 43/9 53/4 54/24 55/5 55/5
57/19 60/14 70/5 70/5 74/13 74/14 76/14
78/6 80/2 80/3 81/6 82/19 87/4 91/19
116/19 117/15 117/22 120/15 120/17
120/19 121/17 122/3 123/16 123/17
125/10 125/16 126/2 127/7 129/15
134/14 136/10 136/14
wanted [13] 36/4 54/24 55/3 55/4 55/6
68/17 69/14 82/19 99/25 117/14 121/9
121/21 129/3
wants [6] 8/14 12/8 22/15 36/17 107/4
119/12
War [2] 61/13 61/14
warn [1] 59/23
warranting [1] 44/8
Warren [1] 22/9
was [203]
wasn't [1] 127/21
wasting [1] 111/1
watch [1] 63/9
watchdog [1] 39/18
watches [1] 63/15
water [1] 111/18
way [27] 8/9 12/24 13/8 13/16 24/8 41/2
57/6 60/11 63/25 63/25 66/1 66/3 66/10
67/3 84/5 84/5 85/2 97/17 110/8 110/12
112/9 118/23 121/7 122/9 124/13 130/18
136/4
Wayne [3] 3/20 3/23 124/23
ways [2] 109/12 118/8
we [431]
we'll [3] 20/15 23/24 24/22
we're [1] 121/10
weakest [1] 68/15
Web [9] 8/13 10/25 15/13 15/19 15/20
45/22 47/3 47/9 57/3
Wednesday [1] 13/11
week [10] 19/22 44/15 46/13 46/24 52/8
73/17 96/16 106/16 111/11 111/12
weeks [6] 41/8 50/2 121/20 124/1 127/12
128/9
weigh [1] 32/15
weighed [1] 71/9
weighs [1] 108/7
Weinberg [1] 2/20
well [45] 14/1 14/16 15/9 15/10 15/11

# W

well... [40]  16/3 31/20 33/3 33/6 33/23
33/24 34/13 34/22 36/13 36/21 37/10
42/16 43/11 46/3 48/20 55/7 57/6 59/13
61/24 64/25 67/14 72/9 85/20 90/24
93/21 95/17 96/19 99/2 100/1 101/19
105/2 107/2 107/22 109/4 109/15 110/14
116/22 122/3 123/11 137/2
went [15]  10/24 25/2 25/2 25/3 25/3 25/6
25/14 28/13 34/5 39/11 40/18 45/22
47/22 72/3 101/2
were [94]  6/3 9/17 9/20 9/20 10/24 13/23
15/3 16/7 16/7 16/12 16/15 16/18 21/22
22/3 23/3 23/21 23/21 30/14 39/1 39/10
40/6 40/17 41/4 41/11 43/7 45/16 47/20
48/4 50/23 51/10 51/12 51/13 52/23
54/25 57/11 60/17 63/9 63/10 63/11
64/12 65/5 65/13 65/25 66/6 66/18 66/20
66/25 68/20 71/25 72/2 72/18 72/20 73/4
73/6 73/9 73/9 73/12 73/13 73/14 74/4
80/17 81/18 81/20 88/14 88/16 90/3
96/23 99/20 100/5 100/22 100/25 102/21
103/13 103/21 104/11 106/17 111/10
111/11 113/9 114/25 115/2 115/7 116/22
118/6 118/8 118/25 121/3 121/24 123/8
123/14 127/25 128/9 130/10 130/11
West [1]  125/5
Western [3]  64/11 64/12 64/18
WFOE [1]  63/13
what [94]  11/9 21/3 21/8 22/21 24/25
26/11 27/8 27/9 33/2 34/4 34/12 34/22
36/5 36/13 36/17 38/25 46/6 46/21 47/10
48/1 48/6 49/14 50/15 51/11 52/17 53/18
55/2 55/4 55/6 55/19 55/20 59/19 59/25
61/14 61/24 62/21 63/13 67/5 67/22 69/5
69/8 70/23 72/22 73/24 74/12 74/24 76/3
76/7 78/19 83/4 83/24 84/14 84/19 85/24
91/11 92/8 93/1 94/7 96/2 97/5 99/3
99/12 100/19 100/20 102/6 102/12 110/4
110/23 110/25 113/10 115/3 120/14
120/19 122/10 123/24 124/3 124/6
124/11 129/22 129/23 130/20 131/3
132/10 132/11 132/12 132/14 133/9
134/21 135/17 135/21 135/25 136/2
136/7 136/7
what's [12]  25/20 54/21 83/10 84/4 85/25
86/8 89/1 109/22 110/21 120/17 133/10
133/10
whatever [3]  27/6 89/2 128/13
whatsoever [2]  44/1 115/2
wheel [1]  10/7
Wheeler [1]  2/20
when [35]  6/18 15/16 26/1 26/17 26/19
45/9 45/11 45/15 47/9 47/22 48/1 48/10
49/3 49/6 51/5 52/9 60/25 65/12 66/4
72/1 73/16 74/24 83/2 84/8 100/25 103/9
108/3 112/11 116/3 120/25 121/13
127/16 127/23 133/4 133/16
where [41]  14/17 27/12 27/17 27/19 28/5
35/9 35/12 36/25 43/8 44/16 47/8 57/3
57/5 57/14 59/18 59/24 62/19 63/18
65/23 65/24 69/13 72/23 74/21 80/15
83/1 84/12 95/24 100/19 101/12 107/13
108/2 109/21 113/9 115/2 115/18 125/13
130/23 130/24 133/22 134/23 136/12
wherever [1]  121/17
whether [28]  16/9 19/11 25/14 42/12
67/12 70/25 91/22 97/18 108/21 110/23
112/5 114/6 114/9 114/11 117/24 119/10
130/17 132/13 132/25 133/1 133/11
133/17 134/25 135/10 135/11 135/24
136/1 136/12

which [93]  8/17 9/4 15/3 15/11 16/10
16/23 16/24 18/22 21/24 21/25 25/17
26/14 26/23 32/23 34/4 34/18 34/23
38/24 39/13 39/16 39/18 40/1 41/15
41/16 42/2 42/21 44/20 47/14 48/1 48/5
48/12 50/13 51/12 54/2 54/9 54/18 55/1
56/4 57/20 58/25 59/2 59/3 59/3 59/16
60/1 60/8 60/15 60/25 62/13 63/2 63/11
63/11 63/22 64/7 64/7 64/11 64/16 65/22
66/1 66/21 66/22 66/23 70/20 73/5 73/18
73/19 76/11 77/8 80/22 82/10 82/22 83/6
86/13 88/18 94/22 99/13 101/18 102/5
103/21 105/22 108/5 108/6 116/11
116/22 118/15 119/4 119/19 121/1
122/14 129/8 132/20 134/7 135/7
while [6]  18/9 70/24 74/11 94/20 108/17
123/17
who [69]  11/18 11/19 12/25 15/8 21/12
21/14 21/22 22/1 23/18 23/20 24/25
25/11 25/15 29/22 34/9 35/7 36/12 39/24
40/11 41/2 41/11 41/11 41/22 45/25
47/16 49/9 49/13 50/18 51/7 51/18 52/9
56/7 56/19 56/21 57/14 58/6 61/21 65/25
68/3 68/18 71/4 74/5 76/6 76/20
84/11 87/24 94/20 95/1 96/4 98/20 99/5
99/8 99/14 99/16 102/16 102/20 103/10
103/17 104/12 104/15 104/19 104/25
106/19 110/5 112/4 112/13 119/19
128/21
who's [1]  94/19
whoever [1]  61/4
whole [2]  9/23 135/16
wholly [3]  16/22 63/14 63/20
whom [1]  11/14
whose [2]  17/6 23/23
why [12]  26/21 61/11 67/24 69/1 77/6
77/15 77/23 79/2 79/5 105/7 112/9
113/15
wildly [1]  104/20
will [115]  6/21 6/22 7/14 8/5 8/24 9/11
10/9 10/10 11/21 13/11 19/15 19/20
19/21 21/4 21/8 22/13 22/16 22/16 22/24
23/5 23/9 23/10 23/11 26/17 26/24 27/4
27/5 27/6 27/8 28/18 29/9 29/10 30/25
31/14 33/11 34/4 35/10 35/11 37/7 48/8
49/18 50/2 50/3 50/18 53/6 54/10 54/12
54/17 54/18 57/7 57/8 58/5 58/7 58/21
65/18 69/19 70/10 70/18 70/22 70/23
71/17 72/5 73/17 73/20 74/1 74/20 74/21
75/12 75/22 84/9 84/10 84/11 86/25
87/11 88/3 88/11 89/4 89/5 93/21 96/4
96/5 96/13 97/1 104/25 105/2 105/11
112/22 114/7 114/9 114/19 118/15 121/6
123/20 123/24 124/6 124/9 124/9 124/16
126/19 128/14 130/23 131/5 131/11
131/16 133/19 133/20 133/22 133/24
134/6 134/14 135/13 135/22 136/3 136/4
137/4
willing [2]  120/18 123/6
Willis [1]  73/10
willy [1]  93/16
willy-nilly [1]  93/16
Wilmington [1]  2/2
win [4]  112/22 113/3 132/5 132/6
wind [1]  45/6
windfall [1]  25/17
window [1]  121/16
wiring [1]  60/17
wish [3]  29/24 118/6 126/18
wished [1]  66/13
withdraw [4]  34/6 81/25 121/6 132/15
withdrawal [2]  128/12 136/25
withdrawn [3]  73/9 73/10 104/14

within [93]  44/15 96/15 114/5
110/12 119/2 120/3 121/21
21/21 33/20 58/11 72/15 72/15 75/24
88/21 118/17 118/20 119/10 122/20
123/19 127/10 130/18 130/22
withstand [1]  26/10
woman [1]  49/7
women [1]  49/3
won [1]  103/17
won't [3]  36/13 48/8 74/2
wonder [1]  45/3
word [2]  42/17 95/17
words [3]  43/10 47/6 85/23
work [23]  7/4 7/7 7/25 9/5 9/7 9/12 21/1
24/8 25/18 47/1 55/25 57/15 58/18 92/6
94/24 96/6 100/5 100/9 104/11 117/11
125/15 134/9 134/15
worked [6]  9/1 13/8 15/1 25/13 112/2
126/8
working [14]  7/11 7/19 7/20 10/3 11/23
18/14 43/15 57/16 58/11 105/1 112/7
124/16 125/10 134/12
works [3]  26/24 33/13 47/16
world [7]  63/9 76/21 102/13 115/25
116/2 116/2 116/19
Worrall [1]  42/23
worried [1]  41/24
worry [1]  35/8
worrying [1]  46/8
worth [2]  27/20 132/12
would [93]  9/8 9/9 10/13 21/7 22/10 23/2
27/21 32/22 33/25 34/7 35/21 37/14 40/3
40/3 41/19 41/20 42/20 44/22 45/16 46/4
48/24 49/23 50/8 50/11 53/20 55/2 58/24
59/14 59/21 61/3 61/4 61/5 62/7 62/8
62/11 64/3 64/16 65/5 67/2 67/7 67/8
67/17 67/17 67/21 67/23 67/25 69/16
71/6 71/19 74/5 74/8 76/1 76/1 77/13
80/14 80/23 85/10 86/20 93/9 93/10
94/14 94/14 95/11 95/12 96/3 97/4 100/2
100/21 103/13 105/24 106/25 107/12
110/20 113/10 113/15 115/3 115/21
116/25 116/25 118/7 120/7 120/7 121/5
123/7 124/18 125/23 127/6 128/10
128/23 129/5 129/11 129/19 134/7
wouldn't [5]  39/9 42/3 63/3 82/5 113/13
wrap [1]  91/2
wrapped [2]  22/8 104/9
wrapping [2]  35/16 54/17
wrench [1]  32/11
writing [1]  127/12
written [9]  58/17 119/3 119/4 119/6
120/24 124/16 125/7 126/23 129/15
wrong [3]  31/24 35/19 59/24
wrote [1]  32/6
Wuhu [2]  119/19 120/5

# Y

yeah [2]  48/6 134/9
year [6]  16/24 38/13 52/20 54/16 56/14
81/18
years [32]  7/11 7/13 8/9 11/24 14/23
15/18 18/11 25/16 34/17 35/24 35/25
37/16 38/8 39/6 41/16 45/15 46/4 50/10
53/6 75/11 80/8 80/10 90/13 102/4 104/8
105/13 105/21 106/11 106/12 111/16
122/14 126/13
yells [1]  60/17
yeoman's [2]  9/4 37/17
yes [7]  30/10 79/25 81/8 82/4 128/17
133/14 137/3
yesterday [1]  22/11
yet [3]  92/9 106/12 115/9

## Y

York [8]  2/6 2/6 3/6 3/6 28/7 40/12 41/6
 41/8
you [258]
you'll [2]  33/18 134/18
you're [3]  31/11 101/6 111/25
you've [1]  134/4
your [197]
Your Honor [142]
Your Honor's [6]  11/16 11/20 45/22
 53/25 59/14 66/10
yourself [1]  68/3
yuan [1]  64/2

## Z

zero [4]  122/12 122/17 122/18 122/19