1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  CHINESE-MANUFACTURED   *        Docket 09-MD-2047
            DRYWALL PRODUCTS        *
6           LIABILITY LITIGATION    *        Section L
                                    *
7                                   *        New Orleans, Louisiana
                                    *
8   Relates to:  All Cases          *        November 13, 2012
    * * * * * * * * * * * * * * *

9

10

11                  MONTHLY STATUS CONFERENCE
              AND FAIRNESS HEARING BEFORE
              THE HONORABLE ELDON E. FALLON
12              UNITED STATES DISTRICT JUDGE

13

14  Appearances:

15

16  For the Plaintiffs:         Herman Herman & Katz, LLC
                                BY:  RUSS M. HERMAN, ESQ.
                                820 O'Keefe Avenue
17                              New Orleans, Louisiana 70113

18

19  For the Plaintiffs:         Levin Fishbein Sedran & Berman
                                BY:  ARNOLD LEVIN, ESQ.
                                510 Walnut Street, Suite 500
20                              Philadelphia, Pennsylvania 19106

21

22  For the Defendants:         Frilot, LLC
                                BY:  KERRY J. MILLER, ESQ.
                                1100 Poydras Street, Suite 3700
23                              New Orleans, Louisiana 70163

24

25

```
 1   For the Plaintiffs:          Rhine Law Firm, PC
                                  BY:  JOEL R. RHINE, ESQ.
 2                                314 Walnut Street, Suite 1000
                                  Wilmington, North Carolina 28401
 3

 4   For the Knauf Entities:      Kaye Scholer, LLP
                                  BY:  JAY P. MAYESH, ESQ.
 5                                     STEVEN GLICKSTEIN, ESQ.
                                  425 Park Avenue
 6                                New York, New York 10022

 7
     For Interior Exterior        Galloway Johnson Tompkins
 8   Building Supply, LP:            Burr & Smith
                                  BY:  RICHARD DUPLANTIER JR., ESQ.
 9                                701 Poydras Street, 40th Floor
                                  New Orleans, Louisiana 70139
10

11   For Interior Exterior:       Carver Darden Koretzky Tessier
     Building Supply, LP:            Finn Blossman & Areaux, LLC
12                                BY:  PHILIP D. NIZIALEK, ESQ.
                                  1100 Poydras Street, Suite 3100
13                                New Orleans, Louisiana 70163

14
     For Liberty Mutual:          Choate Hall & Stewart, LLP
15                                BY:  A. HUGH SCOTT, ESQ.
                                  Two International Place
16                                Boston, Massachusetts 02110

17
     For L&W Supply and           Haynsworth Sinkler Boyd, PA
18   USG Corporation:             BY:  W. DAVID CONNER, ESQ.
                                  75 Beattie Place, 11th Floor
19                                Greenville, South Carolina 29601

20
     For the Banner Entities:     Weinberg Wheeler Hudgins
21                                   Gunn & Dial, LLC
                                  BY:  NICHOLAS PANAYOTOPOULOS, ESQ.
22                                3344 Peachtree Road, NE
                                  Suite 2400
23                                Atlanta, Georgia 30326

24

25
```

```
 1   For the Banner Entities:        Peterson & Espino
                                     BY:  MICHAEL P. PETERSON, ESQ.
 2                                   10631 SW 88 Street, Suite 220
                                     Miami, Florida 33176
 3

 4   For Chartis:                    Quinn Emanuel Urquhart
                                       & Sullivan, LLP
 5                                   BY:  RENITA N. SHARMA, ESQ.
                                     51 Madison Avenue, 22nd Floor
 6                                   New York, New York 10010

 7
     For the Global Defendants:      Barrasso Usdin Kupperman
 8                                     Freeman & Sarver, LLC
                                     BY:  H. MINOR PIPES III, ESQ.
 9                                   909 Poydras Street, 24th Floor
                                     New Orleans, Louisiana 70112
10

11   For the Home Builders:          Greenberg Traurig, LLP
                                     BY:  HILARIE BASS, ESQ.
12                                   333 SE 2nd Avenue, Suite 4400
                                     Miami, Florida 33131
13

14   For Landmark American           Deutsch Kerrigan & Stiles, LLP
     Insurance Company:              BY:  MELISSA M. LESSELL, ESQ.
15                                   755 Magazine Street
                                     New Orleans, Louisiana 70130
16

17   For The North River            Thompson Coe Cousins & Irons, LLP
     Insurance Company:              BY:  KEVIN F. RISLEY, ESQ.
18                                   One Riverway, Suite 1600
                                     Houston, Texas 77056
19

20   For Wayne Kaplan:               Milstein Adelman, LLP
                                     BY:  MARK A. MILSTEIN, ESQ.
21                                   2800 Donald Douglas Loop North
                                     Santa Monica, California 90405
22

23   For Wayne Kaplan:               Roberts & Durkee, PA
                                     BY:  C. DAVID DURKEE, ESQ.
24                                   121 Alhambra Plaza, Suite 1603
                                     Coral Gables, Florida 33134
25
```

```
1    Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
                                   500 Poydras Street, HB-406
2                                  New Orleans, Louisiana 70130
                                   (504) 589-7778
3                                  Toni_Tusa@laed.uscourts.gov

4

5
     Proceedings recorded by mechanical stenography using
6    computer-aided transcription software.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                      I N D E X

2                                              PAGE

3    Monthly Status Conference                  6

4    Fairness Hearing

5          Arnold Levin, Esq.                    21

6          Russ M. Herman, Esq.                  37

7          Kerry J. Miller, Esq.                 50

8          Jay P. Mayesh, Esq.                   58

9          Steven Glickstein, Esq.               68

10         Richard Duplantier Jr., Esq.          75

11         Philip D. Nizialek, Esq.              79

12         A. Hugh Scott, Esq.                   81

13         W. David Conner, Esq.                 87

14         Nicholas P. Panayotopoulos, Esq.      90

15         Michael P. Peterson, Esq.             95

16         Renita N. Sharma, Esq.                98

17         H. Minor Pipes III, Esq.              98

18         Hilarie Bass, Esq.                   113

19         Russ M. Herman, Esq.                 114

20         Melissa M. Lessell, Esq.             117

21         Kevin F. Risley, Esq.                117

22         Mark A. Milstein, Esq.               124

23         Russ M. Herman, Esq.                 127

24         Steven Glickstein, Esq.              129

25

**<u>MORNING SESSION</u>**

**(November 13, 2012)**

08:24:04  1

08:24:04  2

08:28:08  3    (The following proceedings were held in open court.)

08:29:54  4    **THE COURT:**  Be seated, please.  Good morning, ladies

08:33:55  5  and gentlemen.

08:33:55  6    Call the case, please.

08:33:57  7    **THE DEPUTY CLERK:**  MDL 2047 In Re: Chinese-

08:33:58  8  Manufactured Drywall Products Liability Litigation.

08:34:03  9    **THE COURT:**  Liaison and counsel, make their

08:34:05  10  appearance for the record, please.

08:34:08  11    **MR. HERMAN:**  Good morning, Judge Fallon.  Russ Herman

08:34:12  12  for the plaintiffs.

08:34:14  13    **MR. MILLER:**  Good morning, Your Honor.  Kerry Miller

08:34:15  14  for the defense steering committee.

08:34:17  15    **THE COURT:**  We are here today for two reasons.  One

08:34:19  16  is the monthly status conference.  I have a full courtroom and

08:34:23  17  several hundred people on the phone, so please use the

08:34:26  18  microphones when you address the Court.

08:34:30  19    In addition, we have a class cert and final

08:34:36  20  fairness hearing following this.  I suspect the initial status

08:34:43  21  conference will only be about 15 or 20 minutes, maybe half an

08:34:47  22  hour at the most, and then we will go into the other aspect of

08:34:51  23  the case.

08:34:51  24    Before we start, I do want to take the

08:34:55  25  opportunity to mention that in cases of this sort, particularly

08:35:00  1    the MDLs, we are seeing throughout the country that in addition

08:35:06  2    to the federal MDLs, we have a lot of cases that are in state

08:35:13  3    court and remain in various state courts.  It's necessary, I

08:35:21  4    think essential, that the federal court work closely with the

08:35:25  5    state courts.

08:35:26  6            I've been very fortunate in this particular case

08:35:30  7    to have some super state judges work with me and give me great

08:35:39  8    comfort in their interpretation of the law and in their

08:35:42  9    experience in handling this.

08:35:43  10           One of the first that I reached out to, and he

08:35:51  11   has been working with me for many years now, is Judge Joe

08:35:55  12   Farina.  I am happy that he has ended his career on the bench

08:36:04  13   after many, many years and now has moved into the professional

08:36:11  14   private sector.  He was a great help to me and hopefully will

08:36:16  15   continue to be a great help to me.  Judge Farina is in the

08:36:20  16   courtroom today, and I do want to take the opportunity to

08:36:22  17   mention him.

08:36:24  18           He is succeeded by Judge Bailey.  Judge Bailey

08:36:28  19   and I have also established a good working relationship, and

08:36:32  20   I'll be working closely with her.

08:36:35  21           Judge Hall, out of Virginia, has also been

08:36:40  22   helpful, and Judge Richards in Florida has lent a great hand.

08:36:45  23           Because of this collaborative effort, I think we

08:36:48  24   have been able to at least bring to bear various interests in

08:36:53  25   this case and we have been able to work together.

08:36:58  1            Let's start with first the status conference.
08:37:02  2   Any reports on that?
08:37:04  3            I met with counsel a moment ago, lead and
08:37:06  4   liaison, to discuss with them the proposed agenda.  We have a
08:37:11  5   number of items on the agenda that will not be necessary to go
08:37:15  6   into, but there are three or four items that we should address.
08:37:20  7            MR. HERMAN:  May it please the Court.  Judge Fallon,
08:37:23  8   Judge Farina, every lawyer in this courtroom has followed you
08:37:27  9   now for three or four years and the excellent way you handle
08:37:33  10  your docket and the lawyers.  We are not an easy group.  We
08:37:39  11  appreciate you and we are glad to have you here.
08:37:44  12            Your Honor, Joint Report 38 has been filed.
08:37:49  13  It's of record.  It's posted on your Web site for anyone that
08:37:53  14  wants to refer to it.
08:37:58  15            This morning we have a fairness hearing on the
08:38:02  16  Knauf settlement, the InEx settlement, the Banner settlement,
08:38:06  17  the L&W settlement of builders, installers, and insurers, which
08:38:12  18  generically we have called "global."
08:38:17  19            We mention in connection with the status report
08:38:21  20  that Taishan has taken an appeal to the United States
08:38:25  21  Fifth Circuit Court of Appeals on jurisdiction issues.
08:38:28  22            I'm going to call on lead counsel, Arnold Levin,
08:38:32  23  to discuss with Your Honor a couple of settlements that have
08:38:36  24  been made.  He will handle that.
08:38:42  25            MR. LEVIN:  Good morning, Your Honor.  Today I have

08:38:45    1    the tale of a major settlement.  We worked in Virginia with all
08:38:53    2    Taishan products to obtain relief for the Virginia residents
08:38:59    3    from the builders, suppliers, etc.  I'm happy to present for
08:39:07    4    preliminary approval a settlement today, which the yeoman's
08:39:12    5    work was done by Messrs. Serpe, Lewis, and Breit in connection
08:39:17    6    with.  I get the glory of presenting it to you.  They did the
08:39:22    7    hard work of putting it together.
08:39:25    8            I would ask preliminary approval and to certify
08:39:28    9    a settlement class, but I would ask you to defer filling in the
08:39:35   10    dates for notice, etc.  It's mostly a Virginia class, but it
08:39:39   11    will be publication.  The reason I do that is they have done
08:39:43   12    such good work that they have another settlement they are going
08:39:46   13    to fold into this particular settlement.
08:39:49   14            Does Your Honor have any questions?
08:39:52   15    **THE COURT:**  No.  With these matters, Virginia has
08:39:54   16    been one of the first states that this situation developed in.
08:40:00   17    Florida and Virginia were probably at the lead in that area.
08:40:06   18            The Virginia cases present a particular issue.
08:40:13   19    I've been through the Virginia cases.  We have tried several of
08:40:17   20    them now.  They were very helpful.  The trials were very
08:40:22   21    helpful in allowing the Court to formulate a protocol for the
08:40:29   22    re-establishment of the homes, and that protocol has been a
08:40:35   23    particular critical part in this whole package.  I'm happy that
08:40:39   24    Virginia is going to get some relief.  Judge Hall has been
08:40:45   25    pushing those cases, and he's done a great job.

08:40:49  1          By and large, they're in state courts.  There
08:40:49  2  are some in federal courts.  The federal cases have been sent
08:40:54  3  here, largely.  I have been working with Judge Hall in the
08:41:00  4  state cases.
08:41:01  5          As I mentioned on prior occasions, preliminary
08:41:05  6  approval simply allows the Court to issue notices and allows
08:41:11  7  the parties to opt out, so it's a necessary cog in the wheel.
08:41:22  8  It's just preliminary.  It makes no final expression of the
08:41:30  9  Court's attitude towards the settlement, so I will do that.  I
08:41:34  10  will grant preliminary approval and keep the matter open.
08:41:38  11          MR. LEVIN:  Thank you, Your Honor.
08:41:39  12          There's one additional item on the agenda for
08:41:43  13  the status conference.  It's RCR Holdings.  I would ask counsel
08:41:48  14  for the plaintiffs in that litigation to approach.
08:41:52  15          THE COURT:  Okay.
08:41:58  16          MR. RHINE:  Thank you, Your Honor.  Joel Rhine for
08:41:59  17  the plaintiffs.  It's good to see you.
08:42:04  18          As you are aware, we have got 328 units in the
08:42:09  19  Boynton Beach condominium project, and we have been checking it
08:42:13  20  away.  We have been settling with the various defendants.  We
08:42:16  21  have one defendant that is left.
08:42:20  22          The settlement that is before you is the RCR
08:42:24  23  settlement.  It's between the plaintiffs and the developer.
08:42:29  24  Materials were submitted.  The package went out.  Notice was
08:42:32  25  issued.  It was put on the Court's Web site.  We had individual

08:42:37  1   notice.  There have been no objections.  There have been no
08:42:41  2   opt-outs.  We are pleased that this money has already been
08:42:46  3   placed into escrow.  It's going to be held in the settlement
08:42:49  4   fund until we can resolve the entire matter either hopefully by
08:42:54  5   trial of -- you have got some scheduling orders that have been
08:42:58  6   proposed to you from both sides.  At the end of the day, we
08:43:03  7   hope to either be able to provide the owners with a remediation
08:43:08  8   and compensation or some combination thereof.
08:43:12  9           THE COURT:  What do you need from me, Joel?
08:43:15  10          MR. RHINE:  Just the signing of the final settlement.
08:43:18  11  The order is with it.  Thank you, Your Honor.
08:43:22  12          THE COURT:  Thank you very much.
08:43:26  13          MR. HERMAN:  Judge Fallon, I want to acknowledge that
08:43:32  14  Bob Johnston, whom you appointed to handle *pro ses*, is in the
08:43:38  15  courtroom.  He has done a terrific job throughout the
08:43:41  16  litigation.  We are going to dispense, with Your Honor's
08:43:45  17  approval and his approval, with the report.
08:43:47  18          I also want to acknowledge Dawn Barrios, who has
08:43:49  19  been communicator liaison with the state courts, who has done
08:43:57  20  an excellent job throughout.  With Your Honor's approval, we
08:44:00  21  will dispense with that report today.
08:44:03  22          I do want to acknowledge that there are more
08:44:10  23  than 60 counsel that we have been working either for or against
08:44:15  24  or with now for almost four years.  They have acted
08:44:18  25  professionally.  As the plaintiffs' steering committee that you

08:44:27  1    appointed, we appreciate their professionalism and their

08:44:31  2    cooperation.

08:44:32  3              Your Honor, the only other matter is a matter

08:44:36  4    that's now been continued until November 16 relating to the

08:44:44  5    Interior Exterior upcoming trial.

08:44:48  6              That concludes remarks, may it please the Court,

08:44:51  7    with reference to the status report.  I'll see if Mr. Miller

08:45:00  8    has anything he wants to add to it.  Thank you, Judge.

08:45:03  9              MR. MILLER:  Your Honor, nothing further with respect

08:45:04  10   to the status report.

08:45:06  11             THE COURT:  The comment about counsel, I should

08:45:09  12   respond to that.  These cases are monumental.  In this case

08:45:15  13   there's a dozen or two dozen states involved.  There are

08:45:19  14   thousands of claims.  There are the problems or issues

08:45:30  15   involving different laws, issues involving different insurance

08:45:34  16   policies.  Oftentimes in these cases we have a number of

08:45:40  17   plaintiffs, 50,000, 60,000, but we have a limited number of

08:45:45  18   defendants, one or two or three.

08:45:48  19             This case posed a challenge because there's

08:45:50  20   about 1,000 defendants in this case.  We have about 20,000 or

08:45:54  21   30,000 plaintiffs and about 1,000 defendants in this particular

08:45:58  22   case.  There are 1,400 lawyers in the case.  Just to get a

08:46:02  23   handle on those matters and to deal with them in some

08:46:06  24   professional way is challenging.  The reason it's able to be

08:46:12  25   done is because of the high quality of the lawyers who are

08:46:15  1    attracted to these cases on both sides.

08:46:18  2             The lawyers generally are very experienced.

08:46:22  3    They know how to deal with these issues.  They establish a

08:46:29  4    relationship, hopefully, with each side.  They fight very hard

08:46:33  5    for their clients, but they recognize that they have

08:46:38  6    professional responsibilities to each other and to the Court.

08:46:41  7    Because of the high quality of representation, these cases are

08:46:46  8    really able to be resolved or at least worked on in some way.

08:46:50  9    So I do recognize the importance of the lawyers and the

08:46:54 10    valuable services they contribute in these cases.

08:47:00 11             The next conference will be on Wednesday,

08:47:04 12    January 23.  I'll meet with liaison and lead counsel at 8:30

08:47:11 13    and meet with everyone else at 9:00.

08:47:16 14             Let's now move into the next phase of our

08:47:20 15    hearing.  Let me make some preliminary comments first about the

08:47:25 16    hearing so we are all on the same page just by way of

08:47:29 17    background.

08:47:31 18             The present litigation arises from alleged

08:47:36 19    property damage sustained as the result of the presence of

08:47:38 20    Chinese-manufactured drywall in homes and other buildings in a

08:47:43 21    number of states.  During about 2005 and 2006 or 2007 or 2008,

08:47:53 22    hundreds of millions of square feet of gypsum wallboard

08:47:58 23    manufactured in China were exported to the United States,

08:48:05 24    primarily along the East Coast and the Gulf states, as a result

08:48:13 25    of the exceptionally high demand of building supplies in the

08:48:17  1  aftermath of hurricanes Katrina and Rita, as well as the
08:48:21  2  general construction boom particularly in the Florida area.
08:48:27  3          The Chinese drywall was then installed in newly
08:48:30  4  constructed or reconstructed buildings.  After installation of
08:48:35  5  the drywall, owners and occupants of the properties began
08:48:40  6  noticing some unusual odors, a blackening of silver and copper
08:48:46  7  items and components, and the failure of various appliances,
08:48:51  8  including microwaves, refrigerators, air-conditioning units,
08:48:55  9  and the like.  Some also complained of health issues such as
08:49:00  10 skin and eye irritation and transitory respiratory issues and
08:49:07  11 headaches.
08:49:09  12         As a result, these property owners began filing
08:49:13  13 suit in both state and federal court against the involved
08:49:20  14 Chinese drywall manufacturers and installers.  These included
08:49:23  15 the installers, the home builders, suppliers, importers,
08:49:30  16 exporters, manufacturers, as well as insurers and various
08:49:36  17 sureties.  That's where we get the number of defendants that
08:49:42  18 are in this case.
08:49:45  19         On June 15, 2009, this Court was designated as a
08:49:50  20 transferee court for all of the federal cases involving
08:49:56  21 Chinese-manufactured drywall, creating Multidistrict
08:50:00  22 Litigation 2047.  Since the inception of the MDL, over three
08:50:06  23 years now, hundreds of lawsuits involving thousands of
08:50:11  24 individual plaintiffs and defendants have been filed, and the
08:50:17  25 cases have been consolidated before this Court.

08:50:22   1          This Court has worked to oversee this complex
08:50:25   2   litigation, including presiding over numerous regularly
08:50:30   3   scheduled hearings, monthly status conferences which were
08:50:34   4   attended by hundreds of counsel either in person or over the
08:50:39   5   phone, vetting and appointing counsel for the steering
08:50:43   6   committee, mediators, special masters, *pro se* curators,
08:50:51   7   communication and coordination with state and federal judges
08:50:54   8   who presided over related Chinese drywall litigation both from
08:50:58   9   the standpoint of the factual issues involved as well as the
08:51:03  10   motions as well as the insurance issues, including dozens of
08:51:08  11   pretrial orders which governed the procedure of the MDL as well
08:51:12  12   as, I should say, countless orders and minute entries.
08:51:18  13          We maintained a public Web site.  I really am a
08:51:21  14   believer in that.  I think one problem that we face as courts
08:51:25  15   and the judicial system in general is a feeling that there's
08:51:29  16   not as much transparency in these cases.  When people file a
08:51:36  17   suit in Virginia, it's transferred to Louisiana and they don't
08:51:39  18   hear about it any longer, or it takes them years before they
08:51:43  19   hear something.  I try to create a Web site and put everything
08:51:46  20   on the Web site.  It's accessible to everyone.  They have
08:51:51  21   transcripts of these hearings.  They have all of the pleadings,
08:51:58  22   all of the motions, all of the Court's rulings they are able to
08:52:02  23   keep in touch and read.  They also can respond to it.  I listen
08:52:06  24   to them, I hear from them, and we deal with any issues that
08:52:10  25   they raise.

08:52:12   1         I have supervised depositions that took place
08:52:16   2   either in this country or in Hong Kong, presided over at least
08:52:21   3   10 bellwether trials and proceedings as well as issued detailed
08:52:26   4   findings of fact and conclusions of law, facilitated numerous
08:52:32   5   settlement negotiations and mediations, monitored a pilot
08:52:37   6   program, a remediation process.
08:52:43   7         After the trials were finished, we were able to
08:52:46   8   develop a protocol, and then the protocol was actually placed
08:52:50   9   in pilot programs so that you could see whether or not this
08:52:54  10   protocol, which was theoretically and soundly based, was
08:53:00  11   actually practically doable.  So it was put on in practice,
08:53:08  12   that was able to be done, and then the parties were encouraged
08:53:11  13   to see if they could monetize these protocols, and that led to
08:53:22  14   at least proposed settlements.
08:53:24  15         There were really two groups.  The litigation
08:53:28  16   focused on two groups and their downstream entities, two
08:53:31  17   manufacturing groups and all of their downstream entities.  The
08:53:36  18   two groups were as follows:
08:53:39  19         The Taishan group, this group of manufacturer
08:53:44  20   defendants included really Chinese-based Taishan entities;
08:53:46  21   namely, Taishan Gypsum, which we call TG in this litigation,
08:53:52  22   and its wholly owned subsidiary Tai'an Taishan Plasterboard
08:53:56  23   (TTP), collectively known as the Taishan entities.
08:54:01  24         On September 4 of this year, the Court issued an
08:54:05  25   order and reasons denying Taishan's personal jurisdiction

challenges and its request to vacate various default judgments.
That is now, as mentioned in the status conference, before the
Fifth Circuit Court of Appeal.

The other group is the Knauf entities.  The
Knauf entities are German-based international manufacturers of
building products, including drywall, whose Chinese subsidiary,
Knauf Plasterboard Tianjin (KPT), manufactured and sold its
Chinese drywall in the United States.  The Knauf entities are
named defendants in numerous cases consolidated with this MDL
litigation and litigation in various state courts.

The Knauf entities first entered their
appearance in the MDL litigation on July 2, 2009.  On
November 2, in Pretrial Order 17, KPT agreed to a limited
waiver of service.  On March 15 and 19, 2010, the Court
presided over a bellwether trial in the *Hernandez* case
involving a homeowner's claims against KPT for defective
drywall.  For purposes of the trial, KPT stipulated that its
Chinese drywall emits certain reduced sulfur gases and drywall
emits an odor.

The Court, after the hearing, found in favor of
the plaintiffs' family in *Hernandez*, issued detailed findings
of fact and conclusions of law, and entered a judgment of over
$164,000 for that particular case.

As I mentioned earlier, a detailed remediation
protocol was fashioned based on the evidence adduced during

08:56:13  1   this trial.  Thereafter, on October 14, 2010, the Knauf
08:56:16  2   entities entered into a pilot remediation program with the
08:56:21  3   plaintiffs' steering committee in this MDL.  The program was
08:56:25  4   largely based on the remediation protocol formulated by the
08:56:29  5   Court in the *Hernandez* case.
08:56:31  6          The Knauf pilot remediation program is ongoing
08:56:37  7   and is in the process of remediating over 2,000 homes as we
08:56:41  8   speak now.  I think that's also critical in a case of this sort
08:56:46  9   if, while the claims are being litigated, we can come up with
08:56:51  10  some method of allowing the remediation process to continue so
08:56:57  11  that people don't have to wait for years before they get their
08:57:03  12  homes remediated and they get back to some semblance of
08:57:10  13  normalcy.  I think that was able to be done in this case.
08:57:16  14         At the Court's urging, the parties began working
08:57:19  15  together to monetize the program and make it available to a
08:57:22  16  broader class of plaintiffs.
08:57:26  17         On December 20, 2011, the Knauf and PSC entities
08:57:31  18  entered into a class settlement agreement which is designed to
08:57:38  19  resolve all KPT-related Chinese drywall claims.  This agreement
08:57:45  20  was the most significant, up to that point, movement toward a
08:57:52  21  global resolution of all of the Chinese drywall claims.
08:57:57  22         In addition to the Knauf settlement, numerous
08:58:00  23  defendants in the chain of commerce with the Knauf entities
08:58:04  24  have entered into class settlement agreements, the effect of
08:58:10  25  which settles almost all of the Knauf entities in the chain of

08:58:12   1   homeowners litigation.

08:58:17   2          These additional class action settlement

08:58:19   3   agreements involve the following defendants and in most cases

08:58:23   4   their insurers:  Interior Exterior Building Supply (InEx), the

08:58:30   5   Banner entities, L&W Supply Corporation, USG Corporation, and a

08:58:37   6   group of numerous home builders, installers, and suppliers.

08:58:42   7          The Court, after setting a hearing, granted

08:58:51   8   preliminary approval to all of the settlement agreements and

08:58:57   9   set a final hearing today.  This hearing has been duly noticed.

08:59:03   10  It's been promptly set.  The purpose of this hearing is to deal

08:59:09   11  with the class certification issues and to determine whether

08:59:14   12  the proposed settlement is fair, reasonable, and adequate.

08:59:21   13         As I indicated in my scheduling order that set

08:59:25   14  this hearing, I do not intend to take live testimony, but I

08:59:31   15  will allow oral presentations of counsel and reference to any

08:59:38   16  exhibits.

08:59:39   17         I received extensive briefing in the course of

08:59:42   18  this process.  I have read all of the briefs.  I am making them

08:59:47   19  a part of the record.  Don't feel like you have to speak.  Your

08:59:53   20  comments have been taken into consideration and will be taken

08:59:56   21  into consideration, and they will form a part of the record.  I

09:00:03   22  met last week with the interested parties after I noticed and

09:00:07   23  expressed an intent to meet so we could put some structure into

09:00:12   24  this process.

09:00:12   25         I'll hear first from the proponents of the

09:00:15  1   proposed settlement and then from any objectors, if there be

09:00:21  2   any, and any rebuttal thereafter.

09:00:31  3            One moment.  The Associated Press, do we have a

09:00:31  4   place for him?

09:00:37  5            MR. HERMAN:  Your Honor, may it please the Court.  We

09:00:40  6   have made room, and the gentleman is in the courtroom.

09:00:43  7            THE COURT:  I thought we had some reserved seating

09:00:46  8   for the press.  I know we have folks here from Germany.

09:00:52  9            THE DEPUTY MARSHAL:  They are setting up another

09:00:53 10   courtroom.

09:00:54 11            THE COURT:  We have a number of people.  The

09:00:57 12   Associated Press ought to be in the courtroom.  If they are

09:01:00 13   not, we should make room for them and also the German press and

09:01:03 14   any other members of the press.  I try to accommodate them.  We

09:01:10 15   are setting up another courtroom.  We'll pipe in the sound and

09:01:15 16   pipe in the video.

09:01:25 17            MR. HERMAN:  May it please the Court.  There are two

09:01:27 18   chairs right here.

09:01:29 19            THE COURT:  I'm going to have to take a 10-minute

09:01:31 20   break and meet with the marshals.  Something has come up.

09:01:34 21   10 minutes.  I'll be right back.

09:01:39 22            THE DEPUTY CLERK:  All rise.

09:01:40 23            (Recess.)

09:51:42 24            THE COURT:  Be seated, please.

09:51:43 25            I apologize for any inconvenience.  We didn't

1   expect as many people here.  We are still trying to work on

2   another courtroom to get you better conditions.

3           What I have done, I brought us up to this point,

4   I gave you some background information, and now I will hear

5   from the PSC.

6           **MR. LEVIN:**  Good morning, Your Honor.  Having heard

7   your comments, I would like to incorporate them as part of the

8   record.  It will eliminate much of what I had planned to do.  I

9   could have slept a little longer this morning.  Thank you, sir.

10          Today, class counsel and the plaintiffs'

11  steering committee and all the attorneys around this country

12  who have handled these cases are happy to report to you five

13  settlements.  It couldn't have been done without this Court.

14  It couldn't have been done without Judge Farina, who allowed

15  Mr. Glickstein and myself to be present in his courtroom

16  despite the fact that I am not a member of the Florida bar.

17  And it couldn't have been done without your law clerks Lexy

18  Butler and Sam Brandao, your secretary Ruth Laird, and your

19  deputy clerk Dean Oser.

20          But that's not all that it couldn't have been

21  done without.  It couldn't have been done without counsel for

22  the defendants and the various carriers who were extremely

23  cooperative in putting this settlement together.  That is Russ

24  Herman, myself, his staff, particularly Len Davis; my staff,

25  Fred Longer and Sandy Duggan, and most of all, Lillian Fleming,

09:53:41  1   who was responsible for getting on the ECF and delivering
09:53:46  2   packages to you at 12:00 at night, sir.
09:53:49  3          The defendants were ably represented by Kerry
09:53:53  4   Miller, Steve Glickstein, Jay Mayesh; Banner by Mike Papantonio
09:53:57  5   [*sic*]; Jane Byrne for Chartis; Phil Nizialek, Rick Duplantier
09:54:06  6   for InEx; L&W, Dave Conner; a host of InEx carriers, Hugh Scott
09:54:13  7   and Russ Holwadel; and, most of all, the global settlement that
09:54:18  8   wrapped everything together and tied it in a nice bow, Minor
09:54:24  9   Pipes, Warren Lutz, and Joe Hinkhouse.
09:54:28  10          Your Honor, I would like to make part of this
09:54:33  11   record the 70 exhibits that we filed with the Court yesterday.
09:54:50  12   Actually, it's 78.  Exhibit 75 is a list of the exhibits that I
09:54:59  13   believe will be helpful for the Court.
09:55:01  14          There is an exhibit that is intentionally
09:55:08  15   omitted.  Mr. Herman has found an exhibit that he wants to
09:55:13  16   insert there.  He will be speaking to the Court and he will
09:55:16  17   tell you about that exhibit.
09:55:20  18          We also included as exhibits for purposes of
09:55:24  19   this hearing our brief and reply brief in support of the
09:55:28  20   settlement, which has factual averments; and having
09:55:32  21   incorporated them by reference, it eliminates much of what has
09:55:36  22   to be said at this hearing.
09:55:39  23          Your Honor, we have also given you a final
09:55:41  24   judgment order, the cleanest copy I will hand to your law clerk
09:55:48  25   now, and ask that you consider that at the close of the

hearing.

I would report to the Court that as of the November 9 filing, in the five settlements, there were 388 opt-outs.  294 currently exist, "currently" being November 9, because of rescissions.  That will be updated because the opt-outs keep coming in.

The remaining objections are those of -- and I'll do it by law firm categories -- Messrs. Durkee and Milstein, Christopher Bandas, and North River.  I will and Mr. Herman will handle the Durkee and Milstein and Bandas objections.  Phil Nizialek will direct himself and the Court to North River.

I want to state up front, as to Durkee and Milstein and Bandas, that Durkee and Milstein have bona fide clients in this litigation.  We may feel that their objections are misguided, are not legally sound, but their clients are real, just like all the other clients in this case.

There are people who have been evicted from homes as a result of the Chinese drywall.  In Louisiana there are victims who suffered hurricane damages in Katrina and Rita and then were put into FEMA trailers and then were blessed or unblessed or nonblessed with Chinese drywall.

Mr. Bandas, whose clients are somewhat different, we'll deal with at another part of this presentation.  They are not legitimate class members.

09:58:07   1          Last night, Mr. Bandas filed another paper
09:58:13   2   saying that if you allege Chinese drywall -- even if you allege
09:58:19   3   it and you have no proof of Chinese drywall in your home or, in
09:58:24   4   that case, having touched his chisels or hammers, his tools --
09:58:29   5   that's enough to be a class member.  Alleging something in
09:58:34   6   violation of Rule 11 does not make you a class member no more
09:58:40   7   than my alleging that I am 6-foot-5 puts me on the 76ers.  It
09:58:46   8   just doesn't work that way.  There has to be some sound basis
09:58:49   9   for it.
09:58:50   10          Now, the five settlements that are before you
09:59:00   11   are the Knauf settlement -- which is the major settlement in
09:59:11   12   the case.  The Knauf settlement and the German company that
09:59:18   13   owns their Chinese subsidiaries came to the table and did the
09:59:26   14   right thing.  They recognized that there was a problem.  They
09:59:32   15   owned up to it.  With the help of the Court, who told us in the
09:59:36   16   very beginning that this case has to settle with people getting
09:59:41   17   back into their homes, they provided us with the ability to get
09:59:47   18   people back into their homes and enjoy the lives that all of us
09:59:54   19   want.  We still have Taishan to consider.
10:00:01   20          There was a condition of the Knauf settlement,
10:00:04   21   and Mr. Miller explained it in the very beginning to us.  I
10:00:16   22   didn't fully grasp it, but I learned to grasp it:  We'll do all
10:00:21   23   of this and get your clients back into their homes, but you,
10:00:26   24   plaintiffs' steering committee, have the obligation on your own
10:00:33   25   to pursue what was then designated as the low-hanging fruit of

10:00:38  1    this settlement.

10:00:43  2           So we went after Banner, we went after InEx, we

10:00:48  3    went after L&W, and we went after some 1,000 builders and

10:00:56  4    insurance companies to obtain this low-hanging fruit for

10:01:04  5    Knauf's benefit so that they could remediate a home.

10:01:07  6           They went one step further.  As to the Knauf

10:01:15  7    settlement, after the relief was in place and in accordance

10:01:21  8    with the Third Circuit case *Prandini v. A&P*, we then negotiated

10:01:27  9    a counsel fee of $160 million, which included costs and was not

10:01:35  10   a class counsel fee, was not a common benefit counsel fee.  It

10:01:39  11   also included the retainer agreements of some 1,400 lawyers who

10:01:46  12   had Chinese drywall cases.

10:01:49  13          These 1,400 lawyers worked.  They are the ones

10:01:53  14   that went out and determined whether there was Chinese drywall

10:01:59  15   in a property, who the manufacturer was, and they held the

10:02:05  16   hands of real clients for these three or four years.  This is

10:02:09  17   not a coupon settlement.  This is not a windfall to the

10:02:13  18   litigants.  This is real, and it took a lot of work to get

10:02:20  19   there.

10:02:21  20          THE COURT:  What's your estimate of the value of the

10:02:24  21   settlement?

10:02:25  22          MR. LEVIN:  The estimate of the value of the

10:02:27  23   settlement, sir, is $1.1 billion inclusive of Knauf's

10:02:36  24   contribution, Banner's contribution, InEx's contribution, L&W,

10:02:42  25   and the global.  It's not all Knauf money.

When we negotiated the $160 million fee, we had in place the Banner settlement and the InEx settlement, and we knew L&W was in place because that money was all Knauf money and it was passed through at seven-fifty a square foot to Knauf.

We knew the global settlement was to be negotiated.  We pursued the global settlement, pursuing pollution exclusion clauses in various insurance policies and losing, and obtained that settlement.  Most of the builders didn't have the money to withstand the verdicts.  We are very proud of that settlement and very proud of what we did to achieve that settlement.

Now, in those settlements we chose a benchmark, which was at least your benchmark in the *Vioxx* case, that was 32 percent.  Your Honor, we don't have to say any more about 32 percent or any percentage because, as we know, that decision will be up to you at a later date when there is a fee petition filed.

When we negotiated for the $160 million, Knauf knew, acknowledged, and took the position that the reason why -- and we accepted that position -- that we took $160 million was so that we can get additional fees in the other cases for which our labors brought that money to Knauf. That decision, how it works out, will be entirely up to you, Your Honor.

**THE COURT:**  To be clear on it, I want the lawyers to focus on their clients and to getting their clients the money that they need to get back into their homes.  Later on at an appropriate time, I will deal with any fees that are requested. I will give everybody an opportunity to either oppose, object, suggest, whatever it is, and then I will make a decision.  The lawyers do not make a decision on fees; the Court does.  That's what I will do.

**MR. LEVIN:**  That's what we accept, sir.

Your Honor, let me put into the record the out-of-pocket costs that have been spent to date to get us where we are.  They have been put up by the plaintiffs' steering committee through assessments.  As Your Honor knows, there are shared costs and held costs.  The shared costs are, as of July 31, $11,285,000.  The held costs are $4,746,000. That's about $16 million in costs my colleagues put up here to get us where we are.  We had no help from anybody else.

In addition, in order to get the Banner settlement -- where we thought it was a good settlement because we picked up $53 million worth of insurance from Banner.  Had we gone against Banner, we would have lost the insurance and chased a judgment against Banner through bankruptcy.

Banner refused to pay the cost of notice.  My colleagues put up $400,000 to notice the case for Banner.  In InEx, InEx put up $100,000 and we put up $99,000.  Knauf's

10:06:47
10:06:51
10:06:57
10:07:03
10:07:07
10:07:15
10:07:21
10:07:24
10:07:32
10:07:37
10:07:45
10:07:50
10:07:55
10:08:00
10:08:08
10:08:13
10:08:16
10:08:19
10:08:23
10:08:29
10:08:36
10:08:42
10:08:46
10:08:52
10:08:57

1    funding was relatively less because there was no publication

2    involved because the class was active litigants.  In global,

3    our colleagues on the other side advanced $2.9 million to see

4    this settlement through.

5              In order to get where we are, sir, we had our

6    39th status conference today.  We took 234 depositions in

7    Hong Kong, Germany, London, New York, Virginia, Louisiana,

8    Florida, and other locations.  5,200 plaintiffs allege KPT

9    drywall.  There's over 10,000 homes that we believe, in the

10   entire combined Knauf, Taishan, and other Chinese

11   manufacturers, are in the gross complaint.

12             We filed the *Germano* complaint in Virginia and

13   went through a hearing, listed seven plaintiffs, and tried that

14   case.  We established, as Your Honor told us today, the pilot

15   program.  Then we have our settlements that I just told you

16   about.

17             As to the CPSC, Mr. Herman is going to discuss

18   that, and I believe Mr. Minor Pipes will discuss that because

19   that is important with regard to the personal injury aspects of

20   this case.

21             The settlements themselves, Your Honor -- and

22   I'm not going to go through each and every settlement.  They

23   are set forth in the briefs as to the nitty-gritty, but it

24   establishes complete relief here.  Not only do we get our

25   clients into their homes, not only do we get them into a safe

atmosphere in their homes, but we also obtained for them
move-in/move-out expenses.

That fund is an uncapped fund.  No matter how
many clients come in, Knauf has agreed to do the remediation.
There's self-remediation, there's a cash payout, or there's
complete remediation.  The counsel fees are capped.

There's another capped fund here.  It's
$30 million that Knauf has contributed as an Other Loss Fund to
cover if one can prove personal injury, and others that will
make presentations today will talk to the personal injury
aspects of the case.  I have something to say, but it's only on
the legalistic side, not factually as to the personal injury.

It also includes damages for foreclosure, short
sales, and various damages that are just not picked up by the
remediation.  Some 50 percent of the global passes through to
that fund too.  That was negotiated so that not only does Knauf
fund that aspect of the case, but the global also funds the
aspects of the case.

THE COURT:  Let's be a little bit more specific.
I've read the briefs from the people here.  The homeowner has
his or her choice.  They can, number one, get complete
remediation done by the builder who has been doing this for
several thousand homes.  They can instead take money, a lump
sum, discounted lump sum, if they wish to.  They can also,
third, do it themselves and get reimbursed.

10:11:05  1          **MR. LEVIN:**  That's correct.

10:11:06  2          **THE COURT:**  In addition to the reimbursing of the

10:11:07  3   homes or restoring the homes, they get additional expenses,

10:11:12  4   some move-in/move-out and other expenses if they suffered

10:11:19  5   foreclosures and that aspect of it.  That's open-ended in the

10:11:29  6   sense that however many qualify or come in for the homes, they

10:11:35  7   get their homes taken care of.

10:11:37  8                     Lastly, there's a cap amount that is set aside

10:11:44  9   for other damages.

10:11:47  10         **MR. LEVIN:**  Yes.  In that -- I didn't mean to

10:11:51  11  interrupt, Your Honor.

10:11:52  12         **THE COURT:**  No, that's it.

10:11:54  13         **MR. LEVIN:**  In that Other Loss Fund, the tenants can

10:12:02  14  make claims for their loss of items that were damaged as a

10:12:07  15  result of the drywall.

10:12:21  16         **THE COURT:**  According to your report, that's free and

10:12:23  17  clear of any attorneys' fees.  In addition to that, the

10:12:26  18  attorneys get paid --

10:12:28  19         **MR. LEVIN:**  As to anything that Knauf contributes to

10:12:31  20  this, that $160 million covers the attorneys' fees, other than

10:12:39  21  if a personal injury case is made as to the Other Loss Fund.

10:12:42  22  Because of the necessity of the individual attorneys going

10:12:47  23  through *Daubert* proceedings, they can charge attorneys' fees,

10:12:50  24  subject to Court approval, with regard to the personal injury

10:12:54  25  because, see, the *Daubert* situation will be prolix and costly.

10:13:02  1      We believe that we met the constitutional

10:13:05  2  requirements of due process on notice.  We have given

10:13:10  3  Your Honor affidavits of our experts as to the scope of the

10:13:16  4  notice and the reach of the notice, and it was substantial.  We

10:13:25  5  know we did the right thing.

10:13:27  6      We still have an obligation here under the

10:13:31  7  agreement.  There are four or five lawyers, or more actually,

10:13:36  8  but four or five out-front lawyers on our plaintiffs' steering

10:13:39  9  committee that are pursuing North River for InEx for an

10:13:42  10  additional up to $72 million.  Your Honor knows how prolix that

10:13:48  11  is because you're dealing with motions and meetings and

10:13:51  12  conferences all the time.

10:13:54  13      In addition, there's a walk-away clause, as in

10:13:59  14  any class settlement.  Hopefully Knauf will not walk away, but

10:14:06  15  there are challenges here that can cause Knauf to walk away.

10:14:12  16      As to Durkee and Milstein, absolutely they have

10:14:19  17  real clients.  I have heard of belts and suspenders, but they

10:14:28  18  have left clients in that had Knauf property; they have opted

10:14:33  19  clients out that had Taishan property; and they have objected

10:14:37  20  to the settlement with an objector, Kaplan.  Well, there's an

10:14:45  21  inherent conflict there.  If they succeed with their opt-outs

10:14:52  22  with Taishan, their Knauf clients lose the remediation.  Now, I

10:14:58  23  understand it's a very complicated thing, but lawyers have to

10:15:01  24  make decisions, and I think they made the wrong decision here.

10:15:09  25      Now, as to the other objector, like Mary

| | |
|---|---|
| 10:15:18 | 1 |
| 10:15:26 | 2 |
| 10:15:36 | 3 |
| 10:15:43 | 4 |
| 10:15:52 | 5 |
| 10:16:04 | 6 |
| 10:16:09 | 7 |
| 10:16:16 | 8 |
| 10:16:19 | 9 |
| 10:16:23 | 10 |
| 10:16:32 | 11 |
| 10:16:38 | 12 |
| 10:16:46 | 13 |
| 10:16:51 | 14 |
| 10:16:56 | 15 |
| 10:16:59 | 16 |
| 10:17:06 | 17 |
| 10:17:09 | 18 |
| 10:17:14 | 19 |
| 10:17:21 | 20 |
| 10:17:24 | 21 |
| 10:17:31 | 22 |
| 10:17:36 | 23 |
| 10:17:39 | 24 |
| 10:17:46 | 25 |

Poppins, he received retainers the day before the opt-out
period and he filed objections.  Now, he is not new,
Mr. Bandas, to objecting.  Down the hall with BP he is
objecting.  It's a cottage industry.  Justice Scalia recognized
it in the *Devlin* opinion.  In the Third Circuit, one of our
jurists just recently wrote a *Law Review* on professional
objectors.  It's becoming a real problem in Rule 23
jurisprudence.

After counsel do all that they do to create a
settlement, they come along and attempt to throw a monkey
wrench into the process.  They can't argue here that there was
fraud or collusion on our part.  They can't argue here, in
accordance with the *Reed* factors of the Fifth Circuit, that the
complexity, expense, and likely duration of the litigation do
not weigh in favor of approval of the settlement.

This is certainly a mature tort.  They can't
argue that it's inadequate.  They can't argue that the stage of
the proceedings is not a proper time.  They can't argue that
the range of possible recovery is not proper.  They certainly
can't question our bona fides.

They can't question the requirements of Rule 23
for a settlement class, and I would incorporate with regard to
that aspect of my presentation that which was done at
preliminary approval.  It hasn't changed.  All of the 23(a) and
23(b)(3) factors have been met and the 23(e) factor has been

10:17:51  1    met with regard to the settlement.

10:17:56  2                So what does Mr. Bandas do to become a player in

10:18:01  3    this litigation?  Well, he looks at the settlement and he looks

10:18:07  4    at Knauf and he says, I don't have a suit.  There's no absent

10:18:15  5    class members.

10:18:18  6                He looks at Banner and he said, Well, that's in

10:18:22  7    Florida.  My guys are in Texas.

10:18:27  8                He looks at InEx.  It's basically Louisiana,

10:18:30  9    Alabama, and Mississippi.

10:18:33  10               L&W is up in Tampa, Florida.

10:18:37  11               But the global is global, so I will object to

10:18:44  12   the global.

10:18:48  13               How does he do that?  He has a lawyer that works

10:18:52  14   with him.  His name is Mr. Batman.  Mr. Batman has a paralegal

10:19:01  15   or an investigator.  They go out and attempt to get and find

10:19:08  16   somebody to stand up and lodge an objection.  They have a

10:19:18  17   retainer agreement, and they give an incentive to an objector.

10:19:21  18   They say, We want to get you $5,000 if you'll be my stalking

10:19:26  19   horse, because a private attorney can't do anything in our

10:19:28  20   system of jurisprudence without having a client.  So they buy a

10:19:33  21   client.

10:19:37  22               Mr. Bandas has an office manager, Jan Petrus.

10:19:45  23   She says, Well, I got this at Lowe's.  I got my drywall.

10:19:53  24               Well, he didn't look at the participating

10:19:56  25   defendants, because if he had, he would have found out Lowe's

10:19:59    1    was not a participating defendant.  He should have remembered
10:20:09    2    that Ms. Petrus was an objector in the Lowe's settlement in
10:20:17    3    Georgia and that he got paid off, Bandas, in a confidential
10:20:23    4    agreement, which maybe he will disclose what he got, and he
10:20:26    5    went away.  So all of that having come to our vision, she has
10:20:34    6    pending before you a motion to withdraw.  We have attempted to
10:20:41    7    serve her with a subpoena.  She can't be found.  He would not
10:20:48    8    produce her, and we had to subpoena her.

10:20:51    9                He had Ernest Vitela, who has been running all
10:20:55   10    over Corpus Christi avoiding subpoena.  It reminds me of the
10:20:59   11    Mafia taking to the mattresses.

10:21:01   12                He is left with Garcia and Soto.  What is their
10:21:09   13    claim?  Well, his original objections didn't say anything about
10:21:13   14    personal injury, but now he discovered *Amchem*, so he has a
10:21:18   15    personal injury component to his objection.  There's no
10:21:24   16    treatment.  One guy has sniffles, and he was treated in Mexico
10:21:28   17    several years ago.  The other one doesn't.  They now have fear
10:21:31   18    of something happening in the future, which they never had
10:21:33   19    before they talked to their lawyers.  This is all in the
10:21:36   20    record.  We took their deposition.  You can't believe it.  It's
10:21:41   21    so absurd.

10:21:44   22                What is their damages?  Well, the drywall
10:21:48   23    affected their tools, which they have thrown away.

10:21:54   24                So they have manufactured objections, and
10:21:56   25    Mr. Bandas has manufactured objections in this case that he has

10:22:03  1    done before.  We have listed a host of his cases.  Mr. Herman
10:22:09  2    is going to speak to them after me, a little bit more about
10:22:13  3    Mr. Bandas.
10:22:19  4              With regard to the PI aspects of the case,
10:22:21  5    because complaints alleged personal injury -- not that they
10:22:30  6    could prove personal injury -- there is a PI component so that
10:22:35  7    the defendants who put up all this money can have complete
10:22:39  8    relief and not worry about being dragged into court in another
10:22:44  9    case, especially where there's no evidence to show any PI
10:22:50  10   component in this litigation.  Mr. Herman will address that.
10:22:56  11             I will address *Amchem*.  This is not *Amchem*.
10:23:00  12   *Amchem* was a pure personal injury case where asbestos exposure
10:23:09  13   did have a future component of injuries.  There was no question
10:23:14  14   about that.  The lawyers that handled the case for the class
10:23:22  15   also got paid up front for the opt-outs and then attempted to
10:23:27  16   give the defendants complete relief by wrapping everybody else
10:23:32  17   that had clients into a class that got less money than they got
10:23:36  18   for the opt-out.  The court, surprisingly, didn't say that was
10:23:40  19   okay.  It said that was wrong.  You just couldn't discharge it.
10:23:51  20             But this is not a pure personal injury case.  I
10:23:54  21   would suggest, Your Honor, respectfully, that this case comes
10:23:56  22   closer to your *Murphy* decision.  This is a property damage
10:24:00  23   case.
10:24:03  24             I started practicing law 46 years ago.  I'm
10:24:06  25   standing before you with drywall, but 46 years ago it was blue

|   |   |
|---|---|
| 10:24:10 | 1 |
| 10:24:16 | 2 |
| 10:24:21 | 3 |
| 10:24:28 | 4 |
| 10:24:32 | 5 |
| 10:24:37 | 6 |
| 10:24:40 | 7 |
| 10:24:44 | 8 |
| 10:24:48 | 9 |
| 10:24:54 | 10 |
| 10:24:57 | 11 |
| 10:25:00 | 12 |
| 10:25:07 | 13 |
| 10:25:12 | 14 |
| 10:25:17 | 15 |
| 10:25:22 | 16 |
| 10:25:28 | 17 |
| 10:25:33 | 18 |
| 10:25:37 | 19 |
| 10:25:40 | 20 |
| 10:25:42 | 21 |
| 10:25:45 | 22 |
| 10:25:47 | 23 |
| 10:25:51 | 24 |
| 10:25:53 | 25 |

car versus red car.  In blue car versus red car, if the fender was damaged or the grille was damaged, you got a general release.  The general release included personal injury.  It was primary property damage, and the defendant wanted complete peace and got it.  This is that kind of a case.  This is what distinguishes it from *Amchem*.

There are 1,400 lawyers here, most of them plaintiffs' lawyers that are handling cases for families that they represent.  Not one of these lawyers has questioned the PI component of this settlement.  The only lawyer that has questioned the PI component of the settlement is Mr. Bandas, who doesn't have a real client and doesn't really care that by waging -- well, I won't call it what I called it in high school.  But by waging this particular objection, he could conceivably hold up the residents of Louisiana from getting back into their homes after Katrina and Rita.

We know what he wants, although he has now said, I'm not going to take a payoff.  I'm not going to wait for a payoff.  This time it's different than every other time I have been involved, in this litigation.

Well, with his track record, I don't believe that and I don't accept that.

THE COURT:  Let's move on from Mr. Bandas.

MR. LEVIN:  Your Honor, I have moved on to the point where I'm going to introduce Mr. Herman to you.

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
| 10:25:56 | 1  | Mr. Herman.                                                               |
| 10:26:06 | 2  | **MR. HERMAN:**  Thank you, Arnie.                                        |
| 10:26:07 | 3  | May it please the Court.  Judge Fallon, Judge                            |
| 10:26:10 | 4  | Farina, I have several important statements to make before I             |
| 10:26:18 | 5  | get into the Bandas objection.                                           |
| 10:26:24 | 6  | First, the fee in Knauf is $160 million, and                             |
| 10:26:27 | 7  | none of it will come out of one plaintiff's recovery.  It was            |
| 10:26:34 | 8  | negotiated on top after the original settlement was negotiated.          |
| 10:26:39 | 9  | Second, Arnie indicated that opt-outs keep                               |
| 10:26:43 | 10 | coming in.  Well, it's the rescissions of opt-outs that keep             |
| 10:26:47 | 11 | coming in, not additional opt-outs.                                      |
| 10:26:54 | 12 | There are more than 1,200 defendants in this                             |
| 10:26:55 | 13 | case.  Ordinarily a plaintiff attorney, may it please the                |
| 10:27:00 | 14 | Court, would say, Gee, that's a property case.  This is going            |
| 10:27:05 | 15 | to be easy.                                                              |
| 10:27:06 | 16 | I've been practicing 46 years.  It's the most                            |
| 10:27:09 | 17 | difficult case I have ever been in.  It's taken a yeoman's job           |
| 10:27:13 | 18 | for the 1,400 lawyers that have clients to make inspections,             |
| 10:27:18 | 19 | marshal evidence, discuss with their clients, file claims, file          |
| 10:27:25 | 20 | plaintiff profile forms.                                                 |
| 10:27:30 | 21 | Now, Your Honor, I do want to offer and                                  |
| 10:27:34 | 22 | introduce into the record Exhibits 1 through 78.  Exhibit 26             |
| 10:27:48 | 23 | was reserved.  These are the receipts for, quote, something              |
| 10:27:58 | 24 | Mr. Bandas's clients purchased from either Home Depot or                 |
| 10:28:06 | 25 | Lowe's, except you can't read them, and there's not a single             |

10:28:11   1    receipt that indicates the purchase of Chinese drywall.

10:28:19   2                    Your Honor, I have a couple of more statements I

10:28:32   3    want to make before I get into objections.  On September 15,

10:28:51   4    2011, the government, through the Consumer Product Safety

10:28:57   5    Commission, issued final studies.  "In February 2011, the CDC

10:29:12   6    indicated that the best scientific evidence available at this

10:29:16   7    time did not support undertaking long-term health study."  So

10:29:22   8    for a period from 2006, for five years, with intense

10:29:28   9    investigation by the Consumer Product Safety Commission, by the

10:29:33  10    EPA, by the Centers for Disease Control and other authorities,

10:29:39  11    they found no long-term health risks.  That's record document

10:29:47  12    16188-1.

10:29:53  13                    Earlier that year, on January 23, 2011, in

10:30:00  14    record document 16188-3, the Consumer Product Safety

10:30:10  15    Commission, the National Center for Environmental Health, and

10:30:15  16    the National Centers for Disease Control and Prevention

10:30:20  17    indicated that they had intensely investigated 11 claimed

10:30:27  18    deaths and could not find that drywall was a contributing

10:30:31  19    factor in any of them.

10:30:33  20                    Now, I'm familiar with various e-mails over the

10:30:38  21    Internet and hearsay and sword rattling by folks saying, oh,

10:30:44  22    their injuries, their injuries, their injuries.  Indeed, the

10:30:48  23    only evidence of anything is that some people suffered on

10:30:51  24    occasion sniffles, some eye irritation, which was not supported

10:31:00  25    causally, but what was supported was if they moved out of the

10:31:05  1   environment those symptoms were temporary.

10:31:10  2               Now, the last document in the record I want to

10:31:13  3   refer Your Honor to before I go forward is record

10:31:20  4   document 16188-2.  I consider this one of the most important

10:31:30  5   documents in the entire litigation.  Document 16188-2, it is a

10:31:39  6   remediation guidance issued after five years by the Consumer

10:31:45  7   Product Safety Commission on September 15, 2011.

10:31:53  8               Your Honor may recall that originally the

10:31:54  9   Consumer Product Safety Commission wouldn't even meet with the

10:31:59  10  plaintiffs' steering committee.  They were meeting with

10:32:01  11  manufacturers.  The Consumer Product Safety Commission went to

10:32:09  12  China, and originally they could not inspect the Luneng mine,

10:32:11  13  which was the source of this drywall.  It was only after

10:32:18  14  Your Honor intervened and directed through the U.S. attorney

10:32:21  15  that the Consumer Product Safety Commission meet with us

10:32:25  16  face-to-face, which we did, that we began an exchange of

10:32:29  17  information and discourse with the Consumer Product Safety

10:32:32  18  Commission, which is charged with the watchdog authority of

10:32:40  19  health in this country regarding any products that are

10:32:44  20  manufactured.

10:32:48  21              That remediation guidance issued on

10:32:51  22  September 15, 2011, by the Consumer Product Safety Commission

10:32:56  23  and HUD was the final remediation protocol.  I am proud to say

10:33:06  24  that the PSC and 1,400 lawyers with clients who are not

10:33:12  25  protesting have agreed to not only a pilot program but also a

settlement which calls for more and greater remedy than the Consumer Product Safety Commission called for in remediation.

Now, I would like to ask Regina if she would put up my slides again.

Your Honor, 37 out of 39 status conferences -- we had 38 marked this morning, but there actually were 39.  No protester showed up at 37 of those status conferences, neither by phone nor in person.

I was privileged to take the first depositions in the case in Virginia directed at installers and suppliers who had Taishan and other drywall.  I also took the first depositions in New York with regard to Knauf.  Now, in those 234 depositions, no one representing Mr. Soto or Mr. Garcia showed up or asked a single question.

Go to the next line, please.  Go to the next line.

Now, Tatum and Charlene Hernandez were clients of our firm, and they went through a full trial from March 5 to March 19.  Your Honor issued findings of fact and a judgment. No objector or lawyer for an objector showed up at that trial, nor did they show up at the previous *Germano* trial.

Your Honor directed Knauf and the plaintiffs' steering committee at the time the first *Germano* trial was tried and before to begin meeting to discuss resolution with this injunction from the Court:  You must settle this case if

10:35:49    1    it can be settled.  We have homeless people in the Gulf states
10:35:55    2    who are innocent victims, and you must find a way to have these
10:36:01    3    homes remediated and get people back in them.
10:36:06    4            There were literally discussions in person, over
10:36:09    5    the phone, every single day.  I can remember the first
10:36:12    6    discussions we also had with Chartis in New York with Jane
10:36:18    7    Byrne and her colleagues.  So the pilot program -- actually, we
10:36:23    8    had two weeks of daily discussions in New York to get to a
10:36:30    9    pilot program.  This was after months and months of
10:36:34   10    negotiation.  The pilot program was based upon the crucible of
10:36:38   11    justice, experts, facts, who took the stand, who were
10:36:45   12    cross-examined, that the judge, Your Honor, had the ability to
10:36:50   13    view, and so we entered a pilot program.
10:36:57   14            May I have the next slide, please.
10:37:00   15            All of those, including a pilot program which
10:37:03   16    lasted for a couple of years, a pilot program also which
10:37:07   17    promised greater remediation than did the CPSC protocol,
10:37:12   18    resulted in the five settlements that we are here today about.
10:37:22   19            Ordinarily, I confess, Your Honor that I would
10:37:33   20    stand before Your Honor and I would be happy today.  Fairness
10:37:37   21    hearings are a happy time.  They are happy for lawyers that
10:37:40   22    have labored in the vineyard, who have acted professionally on
10:37:45   23    all sides, but we can't lose sight of the clients on both
10:37:54   24    sides.  On our side we are worried about 5,200 clients.
10:38:03   25            So I want to get to the Bandas objection.  I

know Arnold spoke about it.  But, Your Honor, we asked for an hour and 15 minutes, of which a half hour or so is gone.  I wouldn't take the rest of that time, but I do want to make this record clear.

First of all, as to the Durkee and Milstein clients, I have nothing really to say.  I don't understand how you can put clients in a settlement, you have other clients you take out, and then you object; it's to the detriment of some and not the others.  But that's really not for me to say because they have clients.  They have been in the litigation for some time.  They are not new to it.

Now, the question is whether Mr. Soto and Mr. Garcia, from all of the circumstances in the case, have standing under 23(e)(5).  Your Honor, they do not.

Mr. Bandas says that we have falsely accused him of extortion and phony objections.  And he says, Well, since the class definition has the word *allegation* in it, all we have to do is allege something to have standing.

However, he has never read completely the settlements because if he had, he would have understood you can't recover anything unless you have got indicia, which is spelled out, in order to enter.

Now, in the *Worrall* case in Travis County Texas, at page 3, the court found that Mr. Bandas's filing was forum shopping to circumvent and violate a settlement agreement and

10:40:15  1   that he should know about standing and fee sharing with a
10:40:19  2   nonlawyer.
10:40:20  3          In *Kitech* in the district court in Dallas,
10:40:25  4   Bandas objected, pleading the Fifth Circuit.
10:40:32  5          In *Cathode Ray Tube* in California, Christopher
10:40:37  6   Bandas was found to be a "professional or serial objector."
10:40:44  7   Hull lived in Denver, but the papers and objections were filed
10:40:49  8   from Corpus Christi, where Mr. Bandas has his office.
10:40:57  9          Then in *Brown v. Walmart* in Illinois -- I want
10:41:01  10  to quote the court.  These are not my words.  Quote:  Bandas is
10:41:06  11  a Texas lawyer well known for his practice of routinely filing
10:41:10  12  objections in class action settlements across the country.
10:41:15  13         Quote:  Improperly attempting to hijack the
10:41:21  14  settlement from deserving class members and dedicated,
10:41:25  15  hard-working counsel, Bandas has filed virtually identical
10:41:31  16  frivolous objections in South Carolina, Iowa, Missouri, and
10:41:36  17  Florida.
10:41:36  18         In Iowa, Mr. Bandas was clearly, with his
10:41:39  19  co-counsel, identified as soliciting an objector.
10:41:46  20         In Florida, the court said that he was guilty of
10:41:51  21  collusion to extort, also that he did not investigate.
10:42:04  22         In Missouri, again Mr. Bandas -- I'm sorry.  In
10:42:10  23  Iowa, Mr. Bandas again was found to have been soliciting
10:42:16  24  objectors.
10:42:20  25         In *Oubliette* in Florida, he had no participation

10:42:26  1   in the case whatsoever until he filed an objection, and he
10:42:30  2   couldn't demonstrate that he had any participation.
10:42:36  3                In South Carolina, he never reviewed the
10:42:39  4   pleadings or the record.  In *Embry* he was required to put up a
10:42:48  5   bond, as he was in another case.
10:42:54  6                Your Honor, there's a contingent fee contract
10:42:57  7   produced in Mr. Soto's deposition.  Item 2.2 requires an
10:43:04  8   objector affidavit warranting that they're benefiting from the
10:43:11  9   benefit, that they are entitled to standing.  In 3.2 he offers
10:43:24  10  $5,000 upon his recommendation to the court to an objector and
10:43:31  11  has his clients in 4 waive in advance any conflicts of interest
10:43:37  12  on his part.
10:43:46  13               Now, was there a lack of investigation?
10:43:50  14  Mr. Bandas, in a motion for discovery filed the day after or
10:43:58  15  within a week after his objection on behalf of his clients,
10:44:03  16  challenges a 40 percent contingent fee.  I don't know where
10:44:09  17  that came from.  It's not in this case.  He challenges a
10:44:12  18  1 percent fee to class reps, a Ms. Hill.  Ms. Hill isn't in the
10:44:18  19  case, and there's no fee recommended to class reps.  Then he
10:44:22  20  says there's a $40,000 settlement fund which was reached with
10:44:26  21  Marathon.
10:44:28  22               I would like to know, if you investigate
10:44:31  23  something, is it still the rule, Your Honor, in this district
10:44:34  24  court, in the Eastern District, and the courts of our state, in
10:44:38  25  the federal courts, that an attorney is charged with making a

representation in a pleading?  And how in a matter this serious can you even deign to quote some matter that has nothing to do with anything?  No wonder the objectors that he talked to originally thought that the attorneys' fee was too great.  He was giving them information that didn't exist.

Now, I know -- and I'm going to try and wind up in 10 minutes, Your Honor.  The Garcia deposition of November 1 is record 16150-3.  The only time you heard about the settlement was when Batman got him.  Batman is a lawyer that shares offices with Mr. Bandas.  The first time he heard about a CDW settlement was when Robin, Batman's guy Chapa, comes to him and says, Oh, there's a settlement.  Come see Batman.  And Batman says, Come see Mr. Bandas.

We used to call that in Louisiana solicitation.  My father told me when I started practicing 46 years ago if his sons ever were guilty of solicitation, he would drum us out of the firm after he used a shark skin belt on us.  I thought solicitation was unethical.  I find out, no, it's not if you are going to challenge a class action settlement.

He knew nothing about the settlement.  He didn't know the value before the deposition.  He never read the settlement.  He never went to Your Honor's Web site.  He didn't know if he purchased drywall from any participating defendant.  He couldn't contest Home Depot's statement that it never sold CDW, even though that's who he alleges he got the CDW from.  He

had no corrosion and no egg smell.  He has no physical
problems.

His saw blades got corroded.  Well, if you knew
anything about this case for the last years, you would know
that only silver and copper get corroded from sulfur; saw
blades don't.  That's what they allege their physical property
damage is.  It's absurd.

He started worrying about his health after the
lawyers told him he might have a health problem.  He has no
damage to his business reputation, although he originally
claimed it, and he only objected after he talked with
Mr. Bandas.  And then seven days later, in record 16157-1 --
16157-1 -- after a week he has made no inspection of any
properties, including his own.  He can't attest that there's
any drywall anywhere.  He produces receipts that Your Honor
ordered the production of, and not one of them shows any
purchase of drywall from Home Depot.  Home Depot, in its
defense profile form, says it never sold, stocked, distributed
any Chinese drywall in Texas or anywhere else, and he can't
refute that.

What is the deal?  You have a client, you have
him object to 5,200 people receiving their day in court, and
you don't even send your client to make an inspection in the
intervening week?

Then there's Mr. Soto, record 16150-2.  His

10:48:20  1   deposition is taken.  He met Bandas through Batman.  They work

10:48:25  2   in the same office.  Batman told him about Chinese drywall.  He

10:48:29  3   didn't see the settlement or the Web site.  He had no concerns

10:48:31  4   from his customers.

10:48:33  5              He met Mr. Bandas in Bandas's home.  Bandas

10:48:37  6   showed him photos of CDW.  In other words, he didn't show

10:48:41  7   evidence of CDW to Mr. Bandas.  Mr. Bandas took photos of

10:48:49  8   Chinese drywall -- we don't know where he got them from,

10:48:50  9   probably off the Web site when he looked at it for the first

10:48:54  10  time -- and said, Hey, this is what Chinese drywall looks like.

10:48:59  11             He has no distinct memory of buying Chinese

10:49:02  12  drywall from Home Depot.  And I remind the Court Home Depot is

10:49:07  13  the only -- is the only -- participating defendant or potential

10:49:13  14  defendant in the global settlement to which he objects.

10:49:19  15             How did he meet Batman to get to Bandas?  He met

10:49:23  16  Burt, who works for Batman.  He has no receipts.  He doesn't

10:49:28  17  know if he installed drywall.  He has no smell or corrosion.

10:49:37  18  He had no concerns until he talked to Batman.  He is not going

10:49:42  19  to file any action for any health matter.  He doesn't have the

10:49:46  20  receipts for the drills he says were corroded.  His clients

10:49:50  21  never complained.  He hasn't seen a doctor for emotions.  But

10:49:53  22  when he had some congestion in Mexico, he once went to a

10:49:57  23  doctor.

10:49:59  24             Now, he was deposed again, in record 16157-1,

10:50:07  25  six or seven days later.  Made no inspection.  Got no samples.

| | |
|---|---|
| 10:50:12 | 1 |
| 10:50:16 | 2 |
| 10:50:21 | 3 |
| 10:50:26 | 4 |
| 10:50:33 | 5 |
| 10:50:36 | 6 |
| 10:50:43 | 7 |
| 10:50:49 | 8 |
| 10:50:51 | 9 |
| 10:50:57 | 10 |
| 10:51:02 | 11 |
| 10:51:08 | 12 |
| 10:51:12 | 13 |
| 10:51:15 | 14 |
| 10:51:16 | 15 |
| 10:51:19 | 16 |
| 10:51:24 | 17 |
| 10:51:30 | 18 |
| 10:51:32 | 19 |
| 10:51:33 | 20 |
| 10:51:37 | 21 |
| 10:51:40 | 22 |
| 10:51:41 | 23 |
| 10:51:43 | 24 |
| 10:51:48 | 25 |

What is this when you file an objection which threatens over 5,000 legitimate suffering people and you don't have your proposed client at least make an inspection like these other 1,400 lawyers were required to do?

So his notes which Your Honor had produced after a hearing say, Yeah, object to the class; don't agree on what the lawyers are getting.  Here's a copy of objections; some you will know, some you won't know.

Now, Your Honor, I know that I'm upset about this.  When I was a child, a lot of people liked Superman and Batman.  I liked Captain Marvel.  Captain Marvel?  Tear off his shirt and say *shazam*, which was the first letter of the Greek heroes, and he become a superhero.  You know, he was Captain Marvel.

Mr. Bandas's history is he gets up in the morning and he yells*, Amchem*.  I'm super marvelous.  *Amchem. Amchem*.  I'll just cadger you guys.  You pay me money or I'm going to go to the Fifth Circuit or some other circuit with *Amchem*.

Well, this isn't an *Amchem* case.  We are not going to pay blood money.  Our clients are not going to pay blood money.

I'm going to close because if I didn't do this, Dawn would be upset.  It's sort of like -- and I have to say this.  The thing that disappoints me most is Mr. Bandas is a

10:51:51  1    very talented, bright lawyer, and he is eloquent, but it's like

10:51:56  2    the *Emperor's New Clothes*.  He has all this eloquent stuff,

10:52:00  3    This is serious.  This is serious.  When you look at the naked

10:52:04  4    truth, he doesn't have a legitimate standing.

10:52:07  5                Shakespeare said that oratory sometimes is

10:52:15  6    deceiving when it seems most just.  Mercutio, in *Romeo and*

10:52:21  7    *Juliet*, says about a woman characterized as deceitful -- I'm

10:52:33  8    glad the women in this case are not deceitful -- she appears in

10:52:41  9    dreams through lawyers' fingers who dream of their fees.  In

10:52:51  10   that state she gallops night by night through their dreams.

10:52:57  11               Lawyers' fees are not the issue in this case.

10:53:00  12   They are not the issue for the PSC.  They are not the issue for

10:53:04  13   1,400 lawyers and their clients who have endorsed this

10:53:10  14   settlement.  What is important is the remedy, the relief, and

10:53:13  15   the justice that these people are entitled to.

10:53:19  16               Most respectfully, Your Honor, I thank you for

10:53:21  17   giving me time to set out this argument.

10:53:27  18         THE COURT:  Okay.  With Shakespeare we will stop here

10:53:30  19   and take a 10-minute break and come back.  Judge Lemmon's

10:53:39  20   courtroom is now available.

10:53:42  21         (Recess.)

11:10:45  22         THE COURT:  Be seated.  As I mentioned, we have

11:10:47  23   streaming video and sound across the hall if you would like to

11:10:51  24   sit down and don't have the space.

11:10:54  25         MR. HERMAN:  Judge Fallon, I have one request.  The

| | |
|---|---|
| 11:10:57 | 1 |
| 11:10:59 | 2 |
| 11:11:03 | 3 |
| 11:11:06 | 4 |
| 11:11:09 | 5 |
| 11:11:15 | 6 |
| 11:11:16 | 7 |
| 11:11:21 | 8 |
| 11:11:25 | 9 |
| 11:11:29 | 10 |
| 11:11:32 | 11 |
| 11:11:35 | 12 |
| 11:11:38 | 13 |
| 11:11:42 | 14 |
| 11:11:46 | 15 |
| 11:11:49 | 16 |
| 11:11:53 | 17 |
| 11:11:58 | 18 |
| 11:12:03 | 19 |
| 11:12:06 | 20 |
| 11:12:07 | 21 |
| 11:12:11 | 22 |
| 11:12:16 | 23 |
| 11:12:19 | 24 |
| 11:12:22 | 25 |

depositions, as Your Honor knows, have been taken in the last
two weeks.  If Your Honor will hold the record open for the
reading and signing, we will substitute with the same record
numbers.  Thank you, Your Honor.

           **THE COURT:**  Let me hear now from Knauf.

           **MR. MILLER:**  Good morning, Your Honor.  Kerry Miller
on behalf of KPT and the other Knauf defendants.  First off, we
would like to thank the Court and Judge Farina's court and your
staffs for all of the great patience and support you have shown
us over the last three years.

           I would like to spend just a few minutes
focusing on both the process and the outcome of the settlement,
both of which I think are just great from the perspective of
the system.

           I'm very happy to be a proponent of what I think
is a very fair, reasonable, and adequate settlement produced by
tough but professional arms-length, noncollusive negotiations
between my client, my colleagues who will speak after me, and
the plaintiffs' steering committee headed by Mr. Levin and
Mr. Herman.

           Your Honor, in the summer of 2009, this case was
MDL'd before you.  In the fall of 2009, this Court focused on
several pretrial orders that were very important building
blocks to the settlements we have today.  Those pretrial orders
include the pretrial orders on inspections, the pretrial orders

11:12:25   1   on evidence preservation, and the pretrial orders on party

11:12:30   2   profile forms.

11:12:32   3            As Your Honor has mentioned several times, one

11:12:35   4   unique aspect of this case is the number of defendants that it

11:12:39   5   involves.  Quite frankly, when this case got MDL'd here in the

11:12:43   6   summer of 2009, very few people had heard of Chinese drywall.

11:12:46   7   There was a huge mystery as to how it got here and who was

11:12:51   8   involved in the chain of distribution.

11:12:53   9            So the profile forms, both on the plaintiff and

11:12:55   10  defense side, were important building blocks to, as Your Honor

11:12:59   11  calls it, figuring out the inventory, figuring out what we are

11:13:03   12  dealing with.  There were some initial projections which

11:13:06   13  indicated there were many more homes impacted than there are.

11:13:10   14  Thank God they're not more than they are because this is a

11:13:14   15  difficult situation.

11:13:15   16            This is a case, luckily for a lot of Rule 23

11:13:18   17  aspects, that it is not a latent defect case.  It is a patent

11:13:24   18  defect case by all allegations and by those of us who have

11:13:29   19  conducted inspections and looked at the effects of Chinese

11:13:32   20  drywall.

11:13:32   21            After entering the very important pretrial

11:13:35   22  orders, as has been pointed out by the Court and by the

11:13:38   23  plaintiffs, Your Honor conducted bellwether trials at the

11:13:40   24  beginning of 2010.  Also at the beginning of 2010, as

11:13:45   25  foreshadowed by Mr. Herman, you gave the parties instructions

11:13:48  1  to start sitting down and seeing if the case could be resolved.

11:13:53  2          Early on, as confirmed later on by the CPSC, it

11:13:57  3  was not a personal injury case; it was a property damage case.

11:14:00  4  But it was very important, we all understood, to begin the

11:14:04  5  process of getting people back into their homes and restoring

11:14:07  6  some normalcy to their lives.

11:14:10  7          So I can recall our first settlement meeting

11:14:12  8  actually occurred in Miami the week of the Super Bowl.  That's

11:14:15  9  when the Saints played down in Miami.  We had John Perry, who

11:14:20  10  helped us out initially and did a great job in setting some

11:14:24  11  basic settlement structure between the Knauf defendants and the

11:14:27  12  plaintiffs' steering committee.

11:14:29  13          We had a number of meetings, as Mr. Herman

11:14:31  14  pointed out.  Those meetings culminated in a pilot program in

11:14:37  15  the fall of 2010, and that leads to another unique aspect of

11:14:41  16  this settlement.  As we sit here at the fairness hearing and

11:14:45  17  consider objections and other matters, what you have is you

11:14:48  18  have pudding with proof in it.  As we sit here today, over

11:14:53  19  1,000 homes, pursuant to the pilot program and to this Knauf

11:14:59  20  settlement that was introduced one year later, last fall, the

11:15:01  21  fall of 2007, have either been remediated or are in the process

11:15:06  22  of being remediated.  The trials that Your Honor entertained in

11:15:10  23  2010 were focused on the scope of repair.

11:15:15  24          So the tires have been kicked.  Due diligence

11:15:18  25  has been done.  The relief and the recovery that's afforded to

1   the class is prudent.  It is fair and reasonable and adequate.

2   The folks that are offered the repairs that are set forth

3   initially in the pilot program and now into the settlement, the

4   response is almost unanimous.  People want it.  People like it.

5            There are some issues over the last couple of

6   years that we have tweaked, and there will be more issues to

7   tweak as we move forward.  Our clients have been committed to

8   this settlement and hope to obtain final approval from the

9   Court, hope for the resolution of the objections and other

10  issues so that relief can be afforded to the remainder of the

11  members of the class; that is, the Knauf class.

12           Your Honor, there are a couple of aspects of the

13  Knauf settlement that I think, again, are unique.  Number one,

14  in order to qualify, you have to have an inspection.  Mr. Levin

15  pointed out that this is not a coupon settlement or anything

16  close to that ilk.  This is a settlement that offers real,

17  tangible relief.  It is bricks and mortar; it is sticks and

18  bricks.  What it does is it takes the bad drywall out, puts

19  good drywall back in, and restores a home to a new condition.

20           So first off is a home would have to pass an

21  inspection, a Court-approved inspection, to make sure it has my

22  client's drywall in it that's reactive.  That drywall is then

23  removed pursuant to a Court-approved remediation protocol.

24  Once the drywall is removed and all dust is removed from the

25  scene -- that was a big aspect of Your Honor's trials, making

11:16:58    1    sure all the contaminants are removed -- the homeowner receives
11:17:02    2    a certificate which says this home is free of Chinese drywall
11:17:05    3    and all impacts of Chinese drywall.  After that certificate is
11:17:08    4    entered, the home is clean, it's ready to go, it's put back
11:17:13    5    together, then the new drywall comes in, the new electrical
11:17:16    6    comes in, and the home is refinished out, and the folks are
11:17:20    7    allowed to reoccupy the home.
11:17:23    8            Your Honor, in terms of the various options, all
11:17:27    9    of which are real under this settlement, under the remediation
11:17:30   10    option, the first suboption, if you will, on the remediation is
11:17:33   11    remediation done by the Moss Construction group.  Like I said,
11:17:37   12    they have now remediated over 1,000 homes.  They will begin the
11:17:42   13    process for remediating some multiunit complexes, and they have
11:17:46   14    capacity to do 150 to 200 homes a month.  We are kind of
11:17:51   15    operating at that capacity now after a pretty long run-up time.
11:17:54   16            Your Honor, by the time we are here next year,
11:17:56   17    we will probably be close to wrapping up all of the homes,
11:17:59   18    which will be a great thing, provided we get final approval and
11:18:04   19    are able to move on.
11:18:06   20            The next aspect of the remediation program is
11:18:08   21    what's called self-remediation.  Same process:  You have to
11:18:11   22    have an inspection.  You have to prove that you are going to
11:18:15   23    get the drywall out.
11:18:16   24            No one wanted, my client didn't want -- and we
11:18:19   25    were able to negotiate with the plaintiffs and obtain

11:18:21   1   preliminary approval from the Court -- a settlement by which

11:18:24   2   the drywall would remain in the homes.  That's not what society

11:18:29   3   wanted, that was not good for justice, and that was not good

11:18:31   4   for the homeowners.  Really what the homeowners wanted in this

11:18:35   5   case, they didn't want a check, they didn't want cash; they

11:18:35   6   wanted their homes restored.  That's what they are getting.

11:18:40   7          So I do think the system is well served and you

11:18:43   8   couldn't have a better settlement under Rule 23 than one that

11:18:46   9   provides recovery that is necessary.  It gets the bad drywall

11:18:51   10   out.  It puts good drywall in.  Folks are restored hopefully

11:18:55   11   with a minimal amount of disruption and inconvenience.

11:18:58   12          **THE COURT:**  They get their attorneys' fees paid.

11:19:00   13          **MR. MILLER:**  There is no deduction for attorneys'

11:19:03   14   fees.  The agreement that my client reached with the plaintiffs

11:19:05   15   and I think the agreement that the other settlements have in

11:19:06   16   place is that attorneys' fees are paid on top of the benefits

11:19:10   17   they get by getting their home repaired.  There are no

11:19:15   18   deductions made.  They don't even know that that occurs.  There

11:19:16   19   is no impact or cost.  Our fee is deducted from what they have.

11:19:20   20          What they do is they meet with the contractors.

11:19:22   21   The contractors go in, they identify the scope of the repair.

11:19:26   22   The contractor and the homeowner signs off on it so that a

11:19:30   23   contract is effected.  The homeowner then gets his

11:19:34   24   move-in/move-out expenses, arranges for alternative living.

11:19:39   25          The contractor comes in, does the work, provides

11:19:41
11:19:44
11:19:48
11:19:52
11:19:55
11:19:59
11:20:04
11:20:07
11:20:11
11:20:15
11:20:16
11:20:20
11:20:23
11:20:25
11:20:31
11:20:36
11:20:41
11:20:44
11:20:45
11:20:48
11:20:52
11:21:00
11:21:03
11:21:08
11:21:13

1   the environmental certificate, finishes the repair.  The
2   homeowner gets back into the home and is never bothered with
3   things such as court costs or attorneys' fees.  It's a turnkey
4   operation for the homeowner, which we think is very important.
5             I know the Court has posted in the public record
6   comments, some negative, but I think the overwhelming majority
7   of the people who have gone through the program have been
8   positive both to Your Honor, to Judge Farina, and to the
9   various parties in interest in this Court.
10            Your Honor, a couple of different aspects of the
11  settlement because it was meant to capture all different kinds
12  of claims, there's a subcategory that we refer to as already
13  remediated homes.  I mentioned the Knauf class action
14  settlement was announced about a year ago, fall of 2011.  It
15  was important that as of that time that homes that had not been
16  remediated by the homeowner flowed into the settlement program,
17  given the Court approvals and the structure we had in place
18  there.
19            Some folks who had the means or the ability
20  themselves to repair their home between 2009 and 2011 had done
21  so.  So about 300 to 350 people who purportedly have KPT
22  drywall in their home had remediated or begun remediation of
23  their home prior to last fall.  In those cases the pretrial
24  order on evidence preservation applies.  As we sit here today,
25  we have settled more than 50 of those homes.

11:21:16    1          We now have a process in place with Mr. Herman's
11:21:18    2    office, with participation from the PSC and other plaintiff
11:21:23    3    lawyers, where information is shared.  It's provided to a Web
11:21:27    4    site, it's accessed.  We are now having meetings every second
11:21:32    5    Monday where we attempt to resolve 10 or 15 more.  So that's
11:21:35    6    well on its way.  I think in a number of months hopefully that
11:21:40    7    program will have satisfied most of those claims.
11:21:44    8          Your Honor, I will mention that with respect to
11:21:49    9    already remediated homes, there is integration between the
11:21:52   10    Knauf settlement and the Banner, InEx, and L&W settlements.
11:21:56   11    Knauf was the manufacturer.  Banner, InEx, and L&W were the
11:21:59   12    main suppliers.  So those settlements interlink insofar as,
11:22:04   13    again, the homeowner is not bothered here.  It's basically a
11:22:09   14    credit arrangement where those defendants who are responsible
11:22:12   15    for those particular homes work to fund those remediations.
11:22:15   16    It's been great working with the lawyers from InEx, L&W, and
11:22:17   17    Banner to try and satisfy the claims of all the class members,
11:22:22   18    of all the customers.
11:22:24   19          The last aspect I want to touch upon of the
11:22:27   20    Knauf settlement, which again I think makes it more than fair,
11:22:32   21    reasonable, and adequate under Rule 23, is the Other Loss Fund.
11:22:34   22    The Other Loss Fund basically covers economic losses, short
11:22:38   23    sales, foreclosures; in commercial settings, lost income; and
11:22:43   24    also personal injury claims.  Knauf has reached an agreement
11:22:48   25    with the PSC as part of its settlement to contribute

11:22:51  1    $15 million towards that fund.  The global settlement involving
11:22:54  2    the builders and installers also contributes some of those
11:22:57  3    funds into the Other Loss Fund.  That fund is going to be
11:23:01  4    created and, from that, John Perry's office is going to
11:23:05  5    function as the special master and will make recommendations on
11:23:08  6    awards for people who qualify under the Other Loss Fund.  I
11:23:12  7    expect 2013 will be filled with that activity.
11:23:15  8              The Court ultimately is the arbiter of any
11:23:18  9    appeals from remediation, already remediated homes, and the
11:23:21  10   Other Loss Fund, but so far we have been pretty successful at
11:23:25  11   working together without burdening the Court of having to
11:23:27  12   become the arbiter of those things.
11:23:29  13             As we develop even more of a track record moving
11:23:33  14   forward, I expect the same.  There has been great cooperation
11:23:36  15   amongst counsel from all quarters.  Again, Your Honor, I think
11:23:39  16   this is an extremely good settlement for both the defendants
11:23:41  17   and the plaintiffs.  It should be a hallmark, written about
11:23:45  18   Rule 23 example about how the system can work for the
11:23:49  19   litigants.  I'm very proud to be involved in it.  Thank you,
11:23:53  20   Your Honor.
11:23:54  21             Mr. Glickstein will speak on some other aspects
11:23:57  22   of the settlement -- actually Mr. Mayesh first.
11:24:05  23        **MR. MAYESH:**  May it please the Court.  Your Honor,
11:24:05  24   Jay Mayesh on behalf of the Knauf defendants.  I would like to
11:24:09  25   offer into evidence the exhibits which are a part of our brief.

I have for Your Honor and for Mr. Brandao listed those
90 exhibits, two CDs, one of which contains all of the
exhibits, the other of which contains those which are just
under seal still.  We are trying to get the seal lifted.

          THE COURT:  All right.  Thank you.

          MR. MAYESH:  Your Honor has often said that a fair
settlement has to take into account the strengths of the other
side in the case and that until you prepare a case for trial,
you really don't know your case and you don't know your
adversary's case.  I think in this situation, though, having
taken as much evidence as we have taken on these various
continents and having gone through the number of documents in
the millions that we have done, we know the case pretty well.

          I would like to take a moment of Your Honor's
time and the time of those here to talk frankly about the
strength of the defense case here, which is remarkable given
the fact that this is a concededly defective product.  People
might not understand, in the situation where the product is
admittedly defective, what are these defenses that the Knauf
defendants can have.

          First of all, I would like to say this is a case
of pure no fault.  This is not a negligence case.  This is not
a bad conduct case.  This is not a failure-to-warn case.  This
is one of those cases where nobody did anything wrong or could
have foreseen what happened.  But under the law of product

liability, which is strict liability, it remains to KPT, the manufacturer of the products, to make those products good.

The evidence indicates that the manufacturer, KPT, took all due care in the manufacturing of the product. The product met all of the existing industry standards for testing before it was delivered.  The cause was the unknown inclusion of sulfur-bearing rock in the raw material gypsum ore which came out of a mine particularly in Northern China.  In a sense, this was a latent defect, meaning latent in that it was undiscoverable and, in fact, did not even manifest itself until this sheetrock made its way into the Gulf states of the Southeastern United States and met with the high humidity that we have here.

I want to emphasize that the same product manufactured in China and used in Northern China, which was the natural market for my client KPT, did not smell and did not result in corrosion of copper wiring.  Inspections were made to see if that occurred in other areas.  It's a drier climate. It's a different climate.

So not only was this problem of odor and off-gassing not foreseeable to anyone, as a matter of fact, gypsum drywall has been known in the past to be an absorber of odors.  In the formaldehyde cases, for instance, one of the proposed fixes was to cover the formaldehyde-exuding plywood with gypsum board, which, like when you put baking soda in a

11:28:39  1   refrigerator or talc in shoes, absorbs the odor.

11:28:46  2              So it's a simple and straightforward case of no

11:28:49  3   one's fault.  It would have been ordinarily very uncomplicated

11:28:57  4   because whoever ended up with the product would have sued right

11:29:00  5   up the line to the Chinese mine, and it would have been an easy

11:29:08  6   property damage case.  But, frankly, it became the most

11:29:14  7   complicated Rule 23 case that any of us have ever been involved

11:29:22  8   in.  You heard that, I think, from my colleague Mr. Herman.  I

11:29:28  9   can tell you the same for me and the same for Mr. Glickstein

11:29:33  10  and Mr. Miller.  It was enormously complicated.

11:29:36  11             Why?  I was thinking about it this morning.

11:29:39  12  It's kind of an anomaly left over, an anachronism of the

11:29:46  13  Cold War.  Here one of our greatest trading partners is China,

11:29:51  14  but because of what happened in the Cold War, we don't have a

11:29:57  15  treaty for judgment recognition in China, and that creates --

11:30:03  16  it really knocks our entire system of jurisdiction and redress

11:30:14  17  in commercial relations into a cocked hat.  It was that cocked

11:30:18  18  hat that we had to deal with in this case.

11:30:26  19             KPT, a Chinese manufacturer, had no recourse

11:30:32  20  against the Luneng mine owned by the Chinese government.  That

11:30:37  21  doesn't happen in China.  Consequently the folks who bought

11:30:42  22  from KPT, they look to the Chinese manufacturer for their

11:30:48  23  redress and they don't have any recourse.

11:30:52  24             So what does the law do with that?  Well, in

11:30:56  25  fact, I think ultimately the homeowners in this case faced

11:31:00   1   absolutely impossible hurdles in actually recovering money from

11:31:06   2   KPT, and that set off a frenzy looking for deep pockets in this

11:31:13   3   case.

11:31:18   4           The plaintiffs' first analysis was, if we cannot

11:31:24   5   recover from the Chinese Knauf company, then let us pierce the

11:31:34   6   corporate veils between this group of companies such that those

11:31:39   7   in Germany would be responsible for the debts of the company or

11:31:45   8   companies in China.  As any lawyer would, given the ostensible

11:31:52   9   facts of there being a Knauf group of companies, those

11:31:56   10  companies under common and private ownership, that certainly

11:32:05   11  seemed to be a dog that would hunt in this case.

11:32:08   12          There was a problem, however.  The law of every

11:32:13   13  jurisdiction which has touched this case requires that to

11:32:19   14  pierce the corporate veil there must be an abuse of the

11:32:25   15  corporate form, and that abuse must deprive the judgment

11:32:32   16  creditors or the creditors of the corporation of the assets of

11:32:36   17  those corporations.  So as an element in piercing the corporate

11:32:41   18  veil, you must prove some degree of corporate flimflam, some

11:32:46   19  kind of Three-card Monte game where you hide the assets of one

11:32:51   20  corporation with the other.  That is the road that the PSC

11:32:56   21  started down, and that was what we had to defend.

11:33:03   22          Fortunately for the defense, rather than

11:33:07   23  corporate flimflam or Three-card Monte, we found through

11:33:13   24  200-and-some depositions and all of these documents that just

11:33:19   25  the opposite had been true; that the Knauf group ran its

companies as separately as any commonly owned group of
companies which has at its top a holding company could run.
The facts just wouldn't prove out for the PSC.

First of all, Knauf, the group bought an
existing company in China that was owned by somebody else and
then put capital into that company.  Into that company.  Built
that company.  The intercompany transactions between the
Chinese company and the rest of the Knauf group of companies
around the world were as clean as a Swiss watch.  It had
certified financial statements by PWC.  There were no cash
transactions which were not run through Chinese banks which
monitored those transactions as loans.

The company KPT is what the Chinese call a WFOE,
a wholly foreign-owned enterprise.  The Chinese government
watches these companies like a hawk because the Chinese
government demands that the profits stay in those companies in
order to be taxed.  If in China you mess around with those
laws, it's not like the United States where somebody sues you
in a class action.  You go to jail, and people have gone to
jail.  So there is no finagling of assets in wholly owned
foreign enterprises in China.

Finally, the biggest reason, one which frankly
shocked even the defense lawyers, is that the owners of KPT,
the upper-level Knauf holding companies, have never taken a
nickel out of that company by way of dividend, by way of

11:35:50   1    repayment.  Nothing has ever come out; not a dollar, not a

11:35:54   2    shekel, not a yuan, not an RMB.  Faced with that kind of a

11:36:01   3    record, no plaintiff would ever be able to say that the

11:36:07   4    corporate veil should be pierced from KPT to its parental

11:36:15   5    companies.

11:36:16   6                Now, there is an interesting decision in this

11:36:18   7    case which comes out of the European Court of Justice which I

11:36:24   8    think has been averred to from time to time.  Under the

11:36:30   9    antitrust/anticompetitive acts in the European Court of

11:36:34   10   Justice, there was a finding that certain of the Knauf

11:36:43   11   companies, those which operated in Western Europe -- about four

11:36:48   12   countries, I think, in Western Europe -- were termed a single

11:36:55   13   economic unit.  However, that had nothing to do with corporate

11:37:02   14   veil piercing.  The moniker of *single economic unit* is only for

11:37:10   15   the purpose, under the European antitrust laws, of assessing

11:37:17   16   the size of a penalty which the defendants would have to pay.

11:37:26   17               The activity that resulted in this finding took

11:37:31   18   place from 1992 to 1998 in Western Europe.  The Knauf group did

11:37:41   19   not even acquire KPT until 1999, and the manufacturing

11:37:53   20   activities that are at issue here did not occur until 2005.  So

11:38:00   21   not only was the European Court of Justice -- and we put in an

11:38:04   22   affidavit of a European antitrust expert in the record,

11:38:11   23   uncontroverted, this had nothing to do with veil piercing.

11:38:22   24               The plaintiffs then turned to the issue of,

11:38:27   25   well, was one of the other companies the agent of KPT in

11:38:32   1   connection with these sales?  It turns out that the Knauf group

11:38:40   2   does own a company in the United States, in Indiana.  It is an

11:38:44   3   insulation company, fiberglass batting insulation.  That looked

11:38:49   4   like an attractive candidate to the plaintiffs because there

11:38:54   5   the assets were in the United States.  There would be no

11:38:56   6   problem with seeking to enforce anything in China.

11:39:07   7           Fortunately for the plaintiffs' position, there

11:39:09   8   was a small connection between the Knauf Insulation company and

11:39:13   9   certain of the purchases of drywall made in the United States.

11:39:20   10   Now, that had to do with the InEx channel of distribution.

11:39:24   11   InEx was a customer of Knauf Insulation for its insulation.

11:39:33   12           When all building supplies post-Katrina and

11:39:39   13   Irene were in short supply in the United States, InEx came to

11:39:44   14   the people it knew at Knauf Insulation and said, You guys are

11:39:51   15   affiliated, we know, with the Knauf companies that make

11:39:53   16   drywall.  Can you help us out?  Can you get us an allocation?

11:39:57   17           The salespeople at the Knauf Insulation company

11:40:04   18   located in Indiana said, We will make a call.

11:40:07   19           And they did, and they put together the InEx

11:40:10   20   buyers with the Chinese KPT manufacturer/sellers and then bowed

11:40:17   21   out.  That does not make for agency liability under the law,

11:40:25   22   again, of any jurisdiction which touches this case.  It was

11:40:28   23   clearly a situation where there was a disclosed principal and

11:40:38   24   where the activities of the Indiana company, Knauf Insulation,

11:40:41   25   was merely doing a favor to industry customers who were in a

11:40:51  1    bad way for getting drywall, which, of course, as Your Honor
11:40:54  2    knows, that's how drywall could have been competitively priced,
11:40:57  3    shipped all the way from China into the United States in the
11:41:00  4    first place.  This is something that only happens when there's
11:41:05  5    an anomaly in the market and a shortage like this.
11:41:11  6              Finally, if those were not enough defenses for
11:41:16  7    the Knauf companies other than KPT, there are jurisdictional
11:41:23  8    defenses.  Your Honor knows and everyone in this courtroom
11:41:28  9    knows how the Taishan group has utilized the jurisdictional
11:41:35  10   defenses all the way to the point of Your Honor's ruling and
11:41:41  11   now their appeal to the Fifth Circuit.
11:41:49  12             KPT did not choose to assert jurisdictional
11:41:54  13   defenses, and that is because it wished to stand behind its
11:42:01  14   product.  So all of the *Sturm und Drang*, if I can use a German
11:42:10  15   phrase, that we have with chasing the Taishan entities or that
11:42:14  16   the plaintiffs have in chasing the Chinese entities did not
11:42:18  17   exist with KPT.
11:42:24  18             The other Knauf companies were not the
11:42:27  19   manufacturer of the KPT drywall, and they have perfectly
11:42:30  20   legitimate jurisdictional defenses.  If a plaintiff were to
11:42:38  21   achieve a judgment against, say, a German Knauf company which
11:42:45  22   did not manufacture the product, which does not do business in
11:42:53  23   any state of the United States, which never sold drywall into
11:42:56  24   the United States, never marketed in the United States -- if a
11:43:04  25   plaintiff were to get a judgment against one of the German

companies, that's just round one.  Even a final judgment after appeals is round one because that judgment would have to be taken to Germany, and not the way we take a judgment from one state to the other, fill out an affidavit and docket the judgment.  That is not what happens under the law of Germany.

Assuming a judgment under those circumstances, a plaintiff would then have to begin an independent action in Germany, and the first thing they would have to prove is that the jurisdiction of the United States court was proper jurisdiction as determined not by the law of the United States but by the law of Germany.  So there is a trial *de novo* to determine whether under German jurisdictional principles the United States court had proper jurisdiction.

Well, as Your Honor knows, the jurisdiction is based upon the same acts and practices that are necessary to prove for piercing the corporate veil.  All of these defenses would come back.  They would come back in a German court.  In order to bring that action in a German court, the U.S. judgment holder must post a bond.  That's because under the law of Germany if you lose the action, you pay the other side's fees. The loser pays in that country.  So this class would have to come up with a necessary bond to pursue what I'm sure at that point would be a multimillion-dollar judgment in Germany. That's why I say that the defenses that the Knauf group could have erected in these cases would have been almost

| | | |
|---|---|---|
| 11:45:29 | 1 | impenetrable, practically impenetrable. |
| 11:45:36 | 2 | I am a great reader of the Prussian philosopher |
| 11:45:39 | 3 | Karl von Clausewitz, who says, Entrench yourself behind strong |
| 11:45:45 | 4 | fortifications and force your enemy to seek a solution |
| 11:45:49 | 5 | elsewhere. |
| 11:45:50 | 6 | My client could have done that.  But rather than |
| 11:45:55 | 7 | do that and rather than stand on all of the defenses that this |
| 11:45:59 | 8 | peculiar situation offered it, it decided to do the right |
| 11:46:12 | 9 | thing.  At least from my point of view, this settlement is |
| 11:46:15 | 10 | exceedingly generous to this class. |
| 11:46:18 | 11 | Thank you, Your Honor. |
| 11:46:19 | 12 | **MR. GLICKSTEIN:**  Good morning, Your Honor.  Steve |
| 11:46:31 | 13 | Glickstein for Kaye Scholer on behalf of the Knauf defendants. |
| 11:46:36 | 14 | Mr. Miller and Mr. Mayesh put me last because they know I'm the |
| 11:46:41 | 15 | weakest hitter, so I'm batting ninth here. |
| 11:46:47 | 16 | Arnie generously thanked Kerry and myself and |
| 11:46:53 | 17 | Jay.  I just also wanted to mention my partner Greg Wallance, |
| 11:46:57 | 18 | who I think Your Honor knows was the architect of the pilot |
| 11:47:02 | 19 | program and saw it through its implementation for a long period |
| 11:47:05 | 20 | of time.  There were many others at Frilot and Kaye Scholer and |
| 11:47:10 | 21 | some in this courtroom. |
| 11:47:12 | 22 | **MR. LEVIN:**  Give him my regards and thanks. |
| 11:47:19 | 23 | **MR. GLICKSTEIN:**  My job, Your Honor, is to go through |
| 11:47:24 | 24 | the *Reed* factors and also to go through some of the objections, |
| 11:47:27 | 25 | but many times at a fairness hearing you tend to focus on the |

objections instead of focusing on why the settlement is a good settlement.

Russ's hero was Captain Marvel.  My hero actually was my mom and dad.  My mom and dad always said focus on the positive, and the positive really is what really a decent and good settlement this is for the homeowners.

One and probably the most important *Reed* factor is how does the recovery in the settlement compare to what might be achieved in litigation?  We all know that settlements are compromises, so you don't achieve everything through a settlement that you could in litigation because there are risks to litigation.  There are costs to litigation.

This is a settlement where because, as Mr. Miller said and as Mr. Mayesh said, our clients wanted to stand behind their product and do the right thing, the homeowners got almost everything -- I would venture to say everything that they are reasonably entitled to as a result of this difficult situation.

The settlement provides that Knauf will pay to fix the home and restore it to a new condition.  That is a payment of 100 cents on the dollar of their property damage claim.  And because, as Your Honor noted several times today, the attorneys' fees come on top and not off the remediation costs -- that means that the settlement class members, the homeowners, don't have to pay their own costs, they don't have

11:49:43  1    to pay their lawyers -- every dollar that's going to
11:49:47  2    remediation is going to fix their home and it's going to be
11:49:51  3    restored.  So that is a fabulous result, I think, and it's a
11:50:00  4    result that our clients are proud of, that we stand behind.  We
11:50:06  5    want the homeowners to have their homes repaired.  We want them
11:50:10  6    to be able to move on with their lives.
11:50:16  7                In addition, as Mr. Miller said, there's the
11:50:19  8    Other Loss Fund to take care of economic loss.  That's actually
11:50:29  9    a $30 million contribution by Knauf.  On top of that
11:50:36  10   $30 million, there will be an allocation of the money that is
11:50:42  11   attributable to KPT drywall, 50 percent, from the global
11:50:46  12   settlement involving installers, builders, suppliers, and their
11:50:50  13   insurers.  That is going to be on top of the $30 million going
11:50:54  14   into the Other Loss Fund.
11:50:56  15               We have recently reached an agreement with InEx
11:51:01  16   and the PSC that an additional portion of money, depending on
11:51:06  17   the trial results that are upcoming, could come into the
11:51:11  18   Other Loss Fund from the InEx settlement.  That will be
11:51:16  19   available to address economic losses on top of the property
11:51:24  20   damage, which is already 100 percent paid for.
11:51:33  21               Much has been said about personal injury, and I
11:51:37  22   think other lawyers will talk much more about personal injury
11:51:41  23   than I will in terms of what the evidence is.  The bottom line
11:51:47  24   is while we don't believe and the government agencies --
11:51:56  25   whether it be the CPSC or the EPA or the Centers for Disease

| | |
|---|---|
| 11:51:59 | 1 |
| 11:52:04 | 2 |
| 11:52:08 | 3 |
| 11:52:13 | 4 |
| 11:52:16 | 5 |
| 11:52:23 | 6 |
| 11:52:27 | 7 |
| 11:52:30 | 8 |

Control or the Florida Department of Health or the Virginia
Department of Health -- don't believe that there is any
evidence of personal injury here, the Other Loss Fund does
provide a mechanism for folks who believe that they might have
a claim to try and prove it.  They have to prove it.  Their
experts would be subject to challenge, but it provides that
mechanism.  It's an outlet for them to try and prove that
claim.

So weighed against the defenses that Mr. Mayesh
talked about, this really is providing class members with full
and complete relief.  We know, of course, that the plaintiffs
and certainly Mr. Herman or Mr. Levin or anyone else on this
side of the table are not going to agree with everything that
Mr. Mayesh said.  They are not going to agree that it was
unforeseeable.  They are not going to agree that veils can't be
pierced.  They are not going to agree that they can't enforce
judgments.  But I think they will acknowledge that these are,
in fact, legitimate litigable defenses and that the plaintiffs
would face serious obstacles in attempting to overcome them and
that, in light of that, it was appropriate to reach reasonable
compromise instead of litigating it to the end, particularly in
light of the relief that is provided.

The other *Reed* factors, I think, are fairly
self-evident.  God knows, the length and duration and
difficulty of the negotiations, they were certainly

11:54:07  1    arm's-length.  I can't count how many times when, despite all
11:54:15  2    of the professionalism in the room, we were at loggerheads
11:54:19  3    because we reached impasses, but we went back at it and back at
11:54:23  4    it and back at it.
11:54:25  5            Nobody will argue about the complexity, expense,
11:54:26  6    and likely duration of this litigation.  It is something that
11:54:33  7    Your Honor noted at the outset, the extraordinary complexity
11:54:36  8    here due to the number of parties, the difficulty of the
11:54:40  9    issues, the fact that we have foreign defendants as well as
11:54:43  10   domestic defendants.
11:54:46  11           Nobody can argue seriously that this case was
11:54:51  12   not settled at an appropriate stage of the proceedings.  We are
11:54:57  13   not here with a settlement that was reached at the outset of
11:55:01  14   the case.  We are not here with a settlement that was reached
11:55:07  15   without inquiry, without discovery.  Some of the slides that
11:55:15  16   Arnie and Russ put up for Your Honor tell the story: the
11:55:19  17   hundreds of depositions; the *Germano* trial; the *Hernandez*
11:55:25  18   trial; the countless motions that were before Your Honor.  This
11:55:33  19   is a very hard-fought, toughly litigated case, and it was only
11:55:40  20   after all of the facts were discovered and reviewed and
11:55:43  21   analyzed by the parties that settlement was entered into.
11:55:50  22           I think the last *Reed* factor is what does the
11:55:58  23   class think about this.  I think this is where you get to
11:56:01  24   talking about opt-outs and objections.  The number of opt-outs
11:56:12  25   compared to the potential number of claims is very small.  We

11:56:21  1   are getting rescissions of opt-outs all the time as the

11:56:27  2   settlement is being explained perhaps to counsel and to the

11:56:36  3   homeowners.

11:56:36  4              To the Knauf settlement there were only

11:56:41  5   initially 11 objections, which is far less than a percent.

11:56:51  6   Three of those objections were resolved before we had to file

11:56:58  7   our response, so they are not addressed in our papers.  The

11:57:02  8   Amerson objection, the Hopper objection, and the Ladner

11:57:07  9   objection were withdrawn before our papers were due.  Since

11:57:15  10  that time two other objections have been withdrawn:  the Willis

11:57:19  11  objection and the Perricone objection.

11:57:32  12             In none of these objections were the homeowners

11:57:36  13  or their counsel paid off.  In some cases there were either

11:57:42  14  some ambiguities in the settlement or some questions that were

11:57:46  15  raised that required some additional language in the agreement.

11:57:51  16  I think that when we get through this process, Your Honor, in a

11:57:54  17  week or two we will file a supplemental agreement that contains

11:58:01  18  these changes, all of which are for the benefit of the class,

11:58:05  19  all of which are for the benefit of everyone, not for a

11:58:09  20  particular objector.  Then we will have the final agreement

11:58:14  21  ready for your approval.

11:58:19  22             So that leaves six objectors.  One of those six

11:58:29  23  is North River.  We didn't in our brief address North River's

11:58:36  24  objections specifically.  We adopt what the PSC and InEx have

11:58:41  25  said about them.  I believe, as Mr. Levin said, Mr. Nizialek

11:58:48  1   and Mr. Scott on behalf of InEx and Liberty Mutual will be

11:58:54  2   discussing those objections.  I won't go any further with

11:58:59  3   respect to that unless it's necessary on rebuttal.

11:59:08  4           The other five objections were mostly by

11:59:14  5   individual homeowners who would have preferred to tweak one

11:59:20  6   provision or another provision of the settlement.  None of them

11:59:27  7   go to the heart of the fairness of the settlement here.  I

11:59:34  8   would ask those homeowners to recognize, as we ask the Court to

11:59:39  9   recognize, that at the end of the day, a settlement is a

11:59:46  10  compromise.

11:59:49  11          While I believe it's fair to say that we have

11:59:51  12  given, on the remediation claim, a hundred percent of what any

11:59:56  13  homeowner could want and on other claims almost everything that

12:00:01  14  any homeowner could want, there is some give-and-take in the

12:00:08  15  process; and the Court should recognize that in order to get,

12:00:14  16  sometimes the party also has to give.  The case law, of course,

12:00:20  17  recognizes that.

12:00:22  18          We briefed all of those five.  I don't think

12:00:24  19  it's necessary to repeat them here.  If Your Honor has any

12:00:28  20  questions about them, I will.

12:00:31  21          So in conclusion, I will end with where I

12:00:38  22  started.  Compared to the relief that could be obtained in

12:00:43  23  litigation, this is a great result.  We at Knauf are very proud

12:00:48  24  of what we have done, and we look forward to the day when all

12:00:53  25  of these homeowners are back in brand-new homes and the problem

| | | |
|---|---|---|
| 12:01:00 | 1 | is completely fixed.  Thank you. |
| 12:01:02 | 2 | **THE COURT:**  Thank you. |
| 12:01:06 | 3 | InEx is the next person. |
| 12:01:16 | 4 | **MR. DUPLANTIER:**  Good morning, Your Honor.  Richard |
| 12:01:18 | 5 | Duplantier on behalf of Interior Exterior.  I assure you that I |
| 12:01:21 | 6 | am going to be a lot more brief than counsel that came before |
| 12:01:25 | 7 | me. |
| 12:01:27 | 8 | As the Court is aware, InEx is a Louisiana |
| 12:01:31 | 9 | company who is merely a distributor of the drywall of Knauf and |
| 12:01:35 | 10 | distributed some of the Taishan drywall that was found to be |
| 12:01:39 | 11 | defective years after they distributed the drywall.  I am not |
| 12:01:43 | 12 | going to discuss in detail, but I will say that I think |
| 12:01:46 | 13 | Mr. Mayesh very eloquently explained that this defect in this |
| 12:01:51 | 14 | drywall is a condition that could not have been discovered by |
| 12:01:54 | 15 | Interior Exterior nor should have been discovered by |
| 12:01:57 | 16 | Interior Exterior at the time that it was sold by the company. |
| 12:02:01 | 17 | We have continued to maintain significant |
| 12:02:04 | 18 | defenses to Interior Exterior's liability in this litigation; |
| 12:02:09 | 19 | but despite that, we have been part of the solution and are |
| 12:02:13 | 20 | proud to be a part of the solution. |
| 12:02:15 | 21 | From a timing perspective, I think there needs |
| 12:02:18 | 22 | to be some memories refreshed this morning.  The Court will |
| 12:02:21 | 23 | recall that Interior Exterior was an active participant in the |
| 12:02:26 | 24 | pilot remediation program.  Without our participation and the |
| 12:02:30 | 25 | participation of Banner in that pilot remediation program, that |

| | | |
|---|---|---|
| 12:02:33 | 1 | program would not have begun and it would not have led to the |
| 12:02:37 | 2 | settlement. |
| 12:02:39 | 3 | More importantly, what the Court needs to recall |
| 12:02:41 | 4 | and I think counsel all need to recall was that Interior |
| 12:02:45 | 5 | Exterior was the first defendant to enter into a global |
| 12:02:48 | 6 | settlement on behalf of the customers who had bought drywall |
| 12:02:52 | 7 | through Interior Exterior.  That first settlement is what |
| 12:02:58 | 8 | allowed the entire process of settlement to begin and allowed |
| 12:03:01 | 9 | these homeowners to achieve the results of the settlement that |
| 12:03:05 | 10 | is ongoing right now.  The InEx settlement is now part of the |
| 12:03:11 | 11 | integral, overall resolution process which allows recovery by |
| 12:03:16 | 12 | these homeowners.  This is fair and reasonable settlement. |
| 12:03:25 | 13 | I'm not going to go into great detail on the |
| 12:03:28 | 14 | *Reed* factors, but I want to briefly touch on the six *Reed* |
| 12:03:30 | 15 | factors, one being the existence of fraud and collusion.  This |
| 12:03:33 | 16 | has been clearly an arm's-length negotiation. |
| 12:03:38 | 17 | The second factor being the complexity and the |
| 12:03:41 | 18 | duration of this litigation, clearly this has been a difficult, |
| 12:03:45 | 19 | complex, international litigation that has involved many |
| 12:03:50 | 20 | lawyers, many law firms, and many parties who have been |
| 12:03:53 | 21 | spending a significant amount of time around the world |
| 12:03:57 | 22 | conducting discovery. |
| 12:03:59 | 23 | That leads us to the next *Reed* factor, and |
| 12:04:01 | 24 | that's the stage of the litigation.  This has been a complex |
| 12:04:05 | 25 | adversarial process, and it's important for the Court to |

| | |
|---|---|
| 12:04:09 | 1 |
| 12:04:12 | 2 |
| 12:04:19 | 3 |
| 12:04:22 | 4 |
| 12:04:24 | 5 |
| 12:04:29 | 6 |
| 12:04:31 | 7 |
| 12:04:35 | 8 |
| 12:04:38 | 9 |
| 12:04:42 | 10 |
| 12:04:42 | 11 |
| 12:04:45 | 12 |
| 12:04:48 | 13 |
| 12:04:51 | 14 |
| 12:04:55 | 15 |
| 12:05:01 | 16 |
| 12:05:05 | 17 |
| 12:05:08 | 18 |
| 12:05:13 | 19 |
| 12:05:20 | 20 |
| 12:05:21 | 21 |
| 12:05:24 | 22 |
| 12:05:29 | 23 |
| 12:05:33 | 24 |
| 12:05:33 | 25 |

understand that discovery has been exhaustive in that regard. We are here today after having reviewed thousands of pages of records and conducted hundreds of depositions.

The probability of success, that's an important factor, and I think Mr. Glickstein and Mr. Mayesh did a very good job of explaining why there are limitations to the recovery by these homeowners. As it relates to Interior Exterior, the laws in Louisiana and the other states in which we conduct business provide Interior Exterior significant defenses.

Under the redhibition law, if they are unable to establish that Interior Exterior knew of the defect in this drywall, the recovery of the homeowners would be significantly limited. I think the Knauf defendants have done a great job of explaining why this defect was likely not discoverable by Interior Exterior at the time that it was sold.

Despite those obstacles to recovery, Interior Exterior entered into and assigned significant policy limits insurance to the PSC and to the homeowners for the settlement process.

The range of possible recovery, the fifth factor under the *Reed* case, I think Mr. Glickstein did a good job of explaining why these homeowners are getting almost full recovery.

As to the sixth factor, the opinions of the

absent class members, I think that the lack of objections to this settlement significantly should lead this Court to the conclusion that there are not a significant number of objections to this or relevant objections to this particular settlement.  In fact, the InEx settlement has only really one objection, and that's by North River Insurance Company.  I want to address that particular objection and some other issues very briefly, Your Honor.

As the Court is aware, subsequent to entering into the settlement in April of 2011, Interior Exterior has entered into two amendments to our settlement agreement.  The first amendment dealt with some procedural issues, but the second amendment was more significant.  We felt that the second amendment was necessary in order to preserve the InEx settlement; that is, the tendering of certain excess policy limits to Knauf depending on the result of the upcoming trial.

We are not seeking an order today that the second amendment is binding against North River Insurance Company.  We have not sought that as part of the process.  What we seek is an order from the Court and a ruling from the Court that the second amendment is simply fair under Rule 23, as we have explained in our brief on that issue.  We believe that the second amendment is appropriate to preserve this settlement and to eliminate the potential that this entire process could be terminated by Knauf at the time that the termination rights can

|          |    |                                                                                  |
|----------|----|----------------------------------------------------------------------------------|
| 12:07:13 | 1  | be exercised.  We felt that it was appropriate, and we have                       |
| 12:07:16 | 2  | explained in our brief why that second amendment was                             |
| 12:07:19 | 3  | appropriate.                                                                      |
| 12:07:22 | 4  | The PSC, our memorandum, and the Knauf                                            |
| 12:07:25 | 5  | memorandum have set out completely why the second amendment and                  |
| 12:07:29 | 6  | the entire settlement process in general are reasonable.  There                  |
| 12:07:33 | 7  | was a real threat of termination by the Knauf defendants if we                   |
| 12:07:37 | 8  | did not enter into that second amendment.                                        |
| 12:07:40 | 9  | Now, as to the North River objections, we have                                   |
| 12:07:42 | 10 | two points.  Number one, we have not sought to make the second                   |
| 12:07:49 | 11 | amendment first.  We have not sought to make the second                          |
| 12:07:53 | 12 | amendment binding on North River, and they can continue to                       |
| 12:07:55 | 13 | maintain their rights under the terms of their policy.                           |
| 12:07:59 | 14 | Secondly and more importantly, Your Honor,                                        |
| 12:08:02 | 15 | North River is not a class member in the Interior Exterior                       |
| 12:08:08 | 16 | settlement agreement.  As a result of their not being a class                    |
| 12:08:13 | 17 | member, they have no standing to object to our settlement                        |
| 12:08:17 | 18 | process.                                                                          |
| 12:08:18 | 19 | So we are asking the Court to approve the second                                 |
| 12:08:23 | 20 | amendment and to find that the entire settlement process is                      |
| 12:08:28 | 21 | fair and reasonable under the circumstances.  Thank you.                         |
| 12:08:31 | 22 | THE COURT:  Thank you very much.                                                  |
| 12:08:33 | 23 | Banner.                                                                           |
| 12:08:36 | 24 | MR. NIZIALEK:  Your Honor, if I may add to that.                                  |
| 12:08:39 | 25 | THE COURT:  Yes.  You are speaking for InEx?                                      |

|  |  |  |
|---|---|---|
| 12:08:40 | 1 | **MR. NIZIALEK:**  I am, Your Honor.  Good afternoon, |
| 12:08:44 | 2 | Your Honor.  Phil Nizialek for InEx.  I just want to add one |
| 12:08:48 | 3 | bit to Mr. Duplantier's argument, and that is I want to address |
| 12:08:53 | 4 | one of the objections North River has made to the InEx |
| 12:08:56 | 5 | settlement. |
| 12:08:57 | 6 | As you recall, the InEx settlement involved the |
| 12:08:59 | 7 | tender by our primary insurers, Arch and Liberty, of their |
| 12:09:01 | 8 | policy limits over four policy years and the assignment of |
| 12:09:05 | 9 | rights to certain policy limits of four North River policies |
| 12:09:09 | 10 | over those same policy years.  North River has raised an |
| 12:09:12 | 11 | objection that that assignment is not valid under the insurance |
| 12:09:17 | 12 | policy because of the anti-assignment clause in the North River |
| 12:09:21 | 13 | excess policies. |
| 12:09:22 | 14 | We would point the Court to our briefing on this |
| 12:09:25 | 15 | issue where it is clear that the Louisiana Supreme Court very |
| 12:09:27 | 16 | recently, in the *In Re*: *Katrina Breaches* cases, has held that |
| 12:09:32 | 17 | post-loss assignments of policy proceeds such as were done in |
| 12:09:37 | 18 | this settlement are indeed valid in the face of an |
| 12:09:41 | 19 | anti-assignment clause so long as that clause does not contain |
| 12:09:45 | 20 | an express and unambiguous prohibition of that assignment. |
| 12:09:50 | 21 | This is a post-loss assignment.  The North River |
| 12:09:53 | 22 | clause, which is quoted extensively in our briefing, does not |
| 12:09:57 | 23 | contain such an anti-assignment clause as would prohibit this |
| 12:10:02 | 24 | assignment.  We ask that the Court approve that settlement |
| 12:10:06 | 25 | notwithstanding that objection of North River.  Thank you. |

| | | |
|---|---|---|
| 12:10:09 | 1 | **THE COURT:**  Thank you very much for your input. |
| 12:10:14 | 2 | Banner. |
| 12:10:16 | 3 | **MR. SCOTT:**  Your Honor, may I be heard on the North |
| 12:10:18 | 4 | River objections to the InEx? |
| 12:10:19 | 5 | **THE COURT:**  You are speaking for? |
| 12:10:19 | 6 | **MR. SCOTT:**  Hugh Scott for Liberty Mutual.  I want to |
| 12:10:22 | 7 | address the exhaustion, if I may, briefly. |
| 12:10:24 | 8 | **THE COURT:**  Yes. |
| 12:10:33 | 9 | **MR. SCOTT:**  As Your Honor knows, the InEx settlement |
| 12:10:38 | 10 | agreement provides that as part of the order we ask Your Honor |
| 12:10:43 | 11 | to enter that there be a finding that the primary insurance |
| 12:10:46 | 12 | policies -- the Liberty Mutual policies and the Arch policies, |
| 12:10:49 | 13 | that Your Honor find those policies are exhausted.  We are |
| 12:10:52 | 14 | asking for that because we are paying our entire limits.  We |
| 12:10:55 | 15 | need that protection going forward to protect the primary |
| 12:11:01 | 16 | carriers from any future claims by the class members and by |
| 12:11:05 | 17 | InEx. |
| 12:11:08 | 18 | For example, if next year, God forbid, InEx were |
| 12:11:11 | 19 | to have some kind of calamity that caused an accident and they |
| 12:11:14 | 20 | were to seek insurance coverage, we need to have it clear from |
| 12:11:19 | 21 | the primary's point of view that our policies are exhausted |
| 12:11:22 | 22 | vis-à-vis InEx. |
| 12:11:24 | 23 | That's very important to us.  We have bargained |
| 12:11:26 | 24 | for that, and that's a key part of the arrangement.  Our |
| 12:11:30 | 25 | ability to withdraw from the settlement is contingent upon our |

12:11:35   1   getting that piece of the order and finding that the primary

12:11:39   2   coverage is exhausted.

12:11:42   3            THE COURT:  Is there any dispute of that?

12:11:45   4            MR. SCOTT:  Yes, unfortunately there is, Your Honor,

12:11:47   5   or I wouldn't be standing here.  I regret to have to stand

12:11:51   6   here.  North River did file an objection.  One of the grounds

12:11:56   7   of the objection was that North River says the primary policies

12:12:02   8   are not exhausted for two reasons.  One reason they say is that

12:12:07   9   we are paying the money into escrow, and that doesn't count as

12:12:10   10  a settlement which should count toward exhaustion because we

12:12:15   11  are just paying into escrow.  The second thing they say is that

12:12:18   12  we are paying money for so-called noncovered under the

12:12:23   13  insurance policy claims.

12:12:25   14            I note that North River makes those objections

12:12:28   15  notwithstanding the fact that North River is not a party to any

12:12:32   16  of the settlement agreements at all in this case and, I think,

12:12:34   17  lacks standing.  But since those objections are in the record

12:12:38   18  and they are crucial to the primary's continued participation

12:12:42   19  and we want this settlement very much to go forward, I wanted

12:12:46   20  to take just a minute to address those objections with the

12:12:50   21  Court.

12:12:51   22            The first objection, which is we are paying into

12:12:54   23  escrow so it's not a settlement, is disposed of very easily by

12:13:00   24  the recent -- not so recent, several decades old but

12:13:04   25  nevertheless good law -- Supreme Court ruling in the *Paretti*

| | |
|---|---|
| 12:13:09 | 1 |
| 12:13:13 | 2 |
| 12:13:17 | 3 |
| 12:13:19 | 4 |
| 12:13:21 | 5 |
| 12:13:25 | 6 |
| 12:13:30 | 7 |
| 12:13:34 | 8 |
| 12:13:36 | 9 |
| 12:13:41 | 10 |
| 12:13:44 | 11 |
| 12:13:50 | 12 |
| 12:13:54 | 13 |
| 12:13:58 | 14 |
| 12:14:03 | 15 |
| 12:14:05 | 16 |
| 12:14:08 | 17 |
| 12:14:12 | 18 |
| 12:14:15 | 19 |
| 12:14:16 | 20 |
| 12:14:19 | 21 |
| 12:14:23 | 22 |
| 12:14:27 | 23 |
| 12:14:32 | 24 |
| 12:14:36 | 25 |

1  case where the Louisiana Supreme Court said that a primary

2  policy exhausts when the full limits are paid to settle a claim

3  that's been made against the insured.

4        It couldn't be clearer that that's what the

5  Supreme Court of Louisiana meant because they said, quote, It

6  is self-evident that an insurer which has settled for its

7  policy limits has exhausted, quote/unquote, its limit of

8  liability under the policy.

9        I agree with the question you tendered about

10  what's the issue here.  We don't see that there's an issue, but

11  there's Supreme Court of Louisiana precedent squarely in place,

12  and that has been upheld and enforced or followed and enforced

13  by at least three intermediate appellate court decisions since

14  the *Paretti case*.  They are all cited in our brief.  I'm not

15  going to burden you with the citations.

16        The point simply is it's not as if the insurers

17  here, the primaries here are simply taking our policy limits

18  and putting them in a bucket and saying, Here, you go do

19  something with it.

20        That's not the situation that the *Paretti case*

21  contemplated in saying exhaustion pertains.  There's exhaustion

22  here because not only have we paid the policy limits, but we

23  have obtained a full release for our policyholder.  That is

24  what the policy is supposed to do, to protect the policyholder.

25  We have obtained those releases, and under *Paretti* we are

exhausted.

The fact is that we are paying into something called an escrow account.  That doesn't change the substance of what's happening here.  We are paying contested claims.  This is the way it's done.  It's the only way it can be done in these kinds of complex cases.  Your Honor is familiar that in the *Vioxx* case there was an escrow fund.

When we pay the money into the escrow fund, if Your Honor approves this settlement, we, the insurers, will have lost all control over it.  It will be under the Court's jurisdiction.  You will decide who gets the money and how it gets paid out.  This is not a situation where we have simply gone to somebody else and said, Hey, here's some money in escrow.  We are taking a walk.  That's absolutely not what we have done here.

The second point briefly, Your Honor, the notion that we are paying noncovered claims and so we shouldn't have exhaustion here is refuted by the text of the provision in the InEx settlement agreement.  Section 1.16 makes clear that what the settlement proceeds, the full policy limits are going towards, if they are going towards the payment of claims and in settlement, one of the things we can do under policies is -- we can do two things.  We can handle a claim and make payments for covered costs or we can settle a claim.  If the settlement is reasonable, fair, and appropriate, as we ask Your Honor to find

12:16:09
12:16:16
12:16:20
12:16:24
12:16:29
12:16:30
12:16:40
12:16:44
12:16:48
12:16:52
12:16:57
12:17:00
12:17:03
12:17:07
12:17:13
12:17:18
12:17:22
12:17:25
12:17:27
12:17:32
12:17:38
12:17:42
12:17:46
12:17:50
12:17:53

1    here, then that settlement discharges the obligation to pay

2    primary limits just in the same way, a different kind of

3    payment though.  We are paying to settle contested claims, and

4    all of the payments are going to settle contested claims.

5              One point about that is that in the provision,

6    Section 1.16, the settlement agreement allows the primary

7    carriers to take a credit toward their payment of the full

8    policy limits, a credit to reimburse themselves for the

9    $100,000 that the primary carriers advanced towards notice

10   costs in the case.  We think those expenses would appropriately

11   count toward exhaustion.

12             To get that issue off the table and simplify the

13   matter, in our brief Arch and Liberty Mutual have waived their

14   right to recoup the advancement they made towards notice costs.

15   In effect, essentially we are tossing another $100,000 into the

16   settlement pot so it's absolutely clear under Section 1.16 that

17   every dime that we are paying is going towards settlement of a

18   contested claim.

19             Now, to the extent that North River is saying,

20   Well, maybe the people that get this money are going to take

21   the money and they are going to use it to replace the drywall,

22   and under the insurance policies replacement costs of the

23   product itself may not be covered -- in other words, to the

24   extent North River raises technical objections to what this is

25   being paid for, those have nothing to do with what's happening

here because we are not handling claims and paying expenses as the invoices come in.  We are making a settlement of a contested claim, and every penny of the primary policies are going towards that.  So we think that it is absolutely clear that the full amount should be credited towards exhaustion of the policies.

Your Honor, you have to take a step back here, I think, and look at what's going on in the big picture, not just the InEx settlement.  The InEx settlement is one part of a complex, interwoven set of settlements that are all interdependent here.  North River Insurance Company is a party to not one of those settlements.  North River, however, has come in here with a three-page objection in which they are saying that the InEx settlement should not be approved because the primary carriers haven't exhausted their coverage, and they are seeking a finding that we have exhausted our coverage.

I suggest to the Court that on the merits that objection is absolutely baseless, and we ask the Court to deny that objection and not allow it because to allow that objection would in effect be to destroy the promise of relief for all of the victims here.  We think that North River has no standing to be making that kind of an objection, and we ask the Court to not let that kind of result happen here.

THE COURT:  Thank you very much.

Let's take L&W at this point, and then we will

| | | |
|---|---|---|
| 12:19:36 | 1 | break for lunch and come back and do Banner and global. |
| 12:19:38 | 2 | **MR. HERMAN:**  May I approach, Your Honor, with |
| 12:19:40 | 3 | counsel? |
| 12:19:56 | 4 | **THE COURT:**  Do you want this on the record? |
| 12:19:59 | 5 | **MR. HERMAN:**  It can be.  It has no substance.  It's a |
| 12:20:03 | 6 | procedural matter. |
| 12:20:04 | 7 | **THE COURT:**  It's logistics. |
| 12:20:05 | 8 | (Bench conference off the record.) |
| 12:20:35 | 9 | **THE COURT:**  L&W, anything? |
| 12:20:36 | 10 | **MR. CONNER:**  May it please the Court.  Your Honor, |
| 12:20:36 | 11 | David Conner for L&W Supply and USG Corporation.  I will be |
| 12:20:41 | 12 | very brief.  Thank you for the opportunity of addressing the |
| 12:20:44 | 13 | Court this morning. |
| 12:20:45 | 14 | On March 19, 2012, the PSC, USG Corporation, |
| 12:20:48 | 15 | L&W, and the Knauf defendants entered a settlement agreement |
| 12:20:54 | 16 | with respect to KPT drywall that was sold or supplied by L&W. |
| 12:20:59 | 17 | Although the number of homes with KPT drywall supplied by L&W |
| 12:21:05 | 18 | is relatively small, L&W is very proud to be a part of this |
| 12:21:09 | 19 | resolution. |
| 12:21:11 | 20 | The L&W settlement is an integral part of the |
| 12:21:15 | 21 | Knauf settlement, and that settlement has already been |
| 12:21:17 | 22 | adequately described to you by Mr. Levin, Mr. Miller, and |
| 12:21:19 | 23 | Mr. Glickstein. |
| 12:21:21 | 24 | Under the L&W settlement, the homeowner who has |
| 12:21:25 | 25 | KPT drywall supplied by L&W has their home remediated or |

qualifies for the Knauf settlement; and then under the L&W
settlement, L&W makes a contribution toward those costs.  It's
really just that simple.  The L&W homeowners' homes will be
resolved according to the Knauf agreement, and L&W makes its
contribution toward the settlement or the resolution of the
affected property.

I respectfully submit, Your Honor, that the
Rule 23 and *Reed* factors are met.  Those have been adequately
discussed by other counsel.

With respect to the L&W settlement, I think the
proof is in the result: the homeowners' homes will be
remediated, their expenses paid, their attorneys' fees paid.

On June 11, 2012, this Court granted preliminary
approval to the L&W settlement.  No objections were filed
before that hearing.  More immediate and important today, no
objections were filed to the L&W settlement before the hearing
today, and there are only seven purported opt-outs, one of
which has purportedly already tried to opt back in.

Therefore, Your Honor, we respectfully request
that this Court find the L&W settlement fair, reasonable, and
adequate, that it was entered into in good faith, without
collusion, and that this Court approve the settlement pursuant
to Federal Rule 23(e).

Thank you, Your Honor.

**THE COURT:**  I know we have got some plane issues.

12:22:56   1          What's the situation with Banner?

12:23:04   2              MR. PANAYOTOPOULOS:   Whatever the Court prefers is

12:23:09   3   fine with us, Your Honor.

12:23:11   4              THE COURT:   The Court will come back in an hour.   We

12:23:13   5   will stand in recess until 1:30.

12:23:15   6              (Lunch recess.)

12:23:15   7                               * * *

12:23:16   8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

**AFTERNOON SESSION**

**(November 13, 2012)**

(The following proceedings were held in open court.)

**THE COURT:**  Be seated, please.  Good afternoon, ladies and gentlemen.  We have two more supporters of the program.

Banner.

**MR. PANAYOTOPOULOS:**  Good afternoon, Your Honor.  Nick Panayotopoulos, also known as "Mike Papantonio."

**MR. LEVIN:**  I was in another courtroom, Your Honor.

**MR. PANAYOTOPOULOS:**  Apparently Mr. Levin can't tell Greek lawyers apart.  It's not like we have been litigating against each other for a couple years, right?

Your Honor, I'm here on behalf of Banner Supply and certain other Banner entities.  Mr. Peterson here is on behalf of Banner Supply, Port St. Lucie, and Scott Gehring came up for the hearing on behalf of the company today.

The Court obviously knows the laws and has been involved in the litigation involving Banner for a long time.  Banner has gone to trial.  Banner has been in depositions, has progressed in this litigation for a long time.  We are advocating that the Court approve the settlement agreement that was reached with the PSC on the grounds that it's the best available alternative for the Banner-related homeowners as well as every other entity that was involved in the Banner Supply

| | | |
|---|---|---|
| 13:34:32 | 1 | chain.  The settlement avoids the delays that are involved with |
| 13:34:40 | 2 | litigation, and people can wrap it up and move on. |
| 13:34:45 | 3 | The expenses involved in the litigation, |
| 13:34:47 | 4 | obviously, the Court is familiar with.  I'm going to quickly go |
| 13:34:50 | 5 | on since everybody has heard a lot of this related to other |
| 13:34:54 | 6 | entities that are independent, Your Honor, but obviously a lot |
| 13:34:56 | 7 | of factors, a lot of the same issues come up, and so the Court |
| 13:35:00 | 8 | has already heard about the arguments. |
| 13:35:02 | 9 | Under the *Reed* case, for the six factors, |
| 13:35:05 | 10 | obviously there's no fraud or collusion.  We fought pretty hard |
| 13:35:09 | 11 | with our adversaries and came to what we believed was in the |
| 13:35:13 | 12 | best interest of our clients. |
| 13:35:15 | 13 | The complexity, expense, and duration of the |
| 13:35:19 | 14 | litigation, other counsel has already spoken about it.  It |
| 13:35:21 | 15 | equally applies to Banner.  I'm not going to take up the |
| 13:35:25 | 16 | Court's time with that. |
| 13:35:26 | 17 | Stage of the proceedings and amount of discovery |
| 13:35:29 | 18 | completed, again, we have discussed it. |
| 13:35:31 | 19 | Probability of success on the merits, I want to |
| 13:35:33 | 20 | touch on that a little bit because it's a compromise.  As |
| 13:35:38 | 21 | Mr. Glickstein mentioned earlier, there's pluses and minuses |
| 13:35:41 | 22 | that go into the process of deciding whether a settlement is |
| 13:35:44 | 23 | best.  In this case, unlike some of the other defendants that |
| 13:35:49 | 24 | have come to the settlement table, Banner and in particular |
| 13:35:52 | 25 | Mr. Peterson here fought very hard to get Banner's insurers to |

13:35:57  1   the table.  In spite of the numerous defenses that everyone
13:36:00  2   knows about that have been involved and the various courts
13:36:03  3   finding that there is no coverage, Banner was able to negotiate
13:36:07  4   with the insurers and the PSC to bring them to the settlement
13:36:11  5   table.
13:36:12  6          If the settlement doesn't work out -- and
13:36:14  7   there's still the potential for our settlement, regardless of
13:36:17  8   what happens with the Court's opinion about approving or not
13:36:20  9   approving, because of certain opt-outs that have not yet opted
13:36:24  10  in, that our settlement could still go south.  We believe it's
13:36:27  11  the best available remedy to the homeowners and everybody
13:36:32  12  involved in the process.
13:36:34  13         The alternative for Banner, after tendering all
13:36:37  14  its insurance assets for this settlement, is unfortunately
13:36:41  15  likely going to be bankruptcy.  If this deal goes south,
13:36:46  16  there's going to be a lot less money available for the people
13:36:50  17  that are claiming against Banner.  It is, I think, to a degree
13:36:56  18  of certainty that's very, very high that if we go with the
13:37:01  19  other option, it's not going to be as favorable for the
13:37:04  20  plaintiff homeowners or the other plaintiffs against Banner.
13:37:08  21         In addition to the expenses and the additional
13:37:10  22  costs of litigation, there's the potential that something
13:37:14  23  happens with the insurance money.  Chartis counsel, one of the
13:37:19  24  insurers, is here, and she can speak on behalf of Chartis.  But
13:37:24  25  as far as Banner is concerned, the plaintiffs get a big benefit

13:37:27  1   out of what Banner did to bring the insurers to the negotiating

13:37:30  2   table.

13:37:34  3          We have got about 88 homeowner opt-outs right

13:37:39  4   now, Your Honor.  A number of people have opted back in.

13:37:41  5   There's thousands of claimants against Banner, and out of those

13:37:45  6   we have got only one objection that's remaining.  That one

13:37:49  7   objection by Haseltine is not even truly an objection; it's

13:37:53  8   more like a complaint.  It's in the nature of a complaint that

13:37:57  9   it's insufficient money:  We would like to get more money.

13:38:00  10         I would like to do a lot of things, Your Honor.

13:38:01  11  Unfortunately, in the situation that we are in, the pot has

13:38:06  12  been maximized.  It's up to the Court now to decide how to

13:38:10  13  divide those funds amongst the different people that are

13:38:13  14  claiming.  We believe that having this Court to go through that

13:38:17  15  process is a lot fairer and a lot more equitable than having

13:38:23  16  willy-nilly trials happen and one plaintiff goes first, another

13:38:26  17  plaintiff goes next, and some people recover and some do not,

13:38:29  18  or through the bankruptcy option that is obviously going to be

13:38:32  19  the more expensive.

13:38:37  20         There remains a possible recovery.  I believe

13:38:39  21  Mr. Peterson will cover this as well.  Litigation carries a lot

13:38:44  22  of risks.  They may succeed.  They may not.  This is a

13:38:49  23  compromise.  The opinion of class counsel and class

13:38:57  24  representatives, obviously, the folks that are involved, the

13:39:03  25  vast majority has opined that this is in the best interest of

13:39:05  1    the plaintiffs and all involved.  Again, there's only one
13:39:08  2    objection.  I don't think, frankly, it even qualifies as an
13:39:12  3    objection.
13:39:12  4              The opt-outs have also spoken.  If they don't
13:39:15  5    quickly move to opt back in, they are putting the entire deal
13:39:20  6    at risk.  I think it's time for their attorneys and the
13:39:23  7    opt-outs to think very hard about what they are putting at risk
13:39:27  8    in the Banner settlement for both the homeowners and everybody
13:39:30  9    else involved.
13:39:33  10             That's all I have, Your Honor.  The deal is
13:39:38  11   supported by class counsel and the vast majority of the folks
13:39:42  12   for a reason:  It's a good deal, and it makes sense for folks.
13:39:44  13   The alternative is a pretty dire one, and we hope not to go
13:39:48  14   there.  We would appreciate it if the Court would approve the
13:39:50  15   settlement.
13:39:50  16             **THE COURT:**  As I mentioned in the past, this case is
13:39:53  17   unique in the sense that there are so many defendants, but I do
13:39:56  18   recognize that a lot of the defendants are small suppliers and
13:40:00  19   mom-and-pop installers, somebody who's hanging sheetrock.
13:40:07  20   While that might be somebody who is a target, in actual
13:40:10  21   practice the problem is other than potential insurance
13:40:14  22   proceeds, there's nothing there behind it, which is
13:40:16  23   particularly true with the installers.  I've seen some of these
13:40:20  24   installers.  They don't work for anybody.  They install
13:40:24  25   sheetrock in their spare time or as a job or as a profession.

13:40:31   1   They really are just people who install sheetrock.

13:40:35   2           MR. PANAYOTOPOULOS:  As the Court knows, the insurers

13:40:39   3   have been very successful in the litigation.  Right now they

13:40:42   4   are in the compromise mode, but if that changes, I assume they

13:40:45   5   are going to take a different position.

13:40:47   6           Thank you, Your Honor.

13:40:48   7           MR. PETERSON:  Good afternoon, Your Honor.  Mike

13:40:49   8   Peterson on behalf of the Banner entities or, as Mr. Levin

13:40:52   9   refers to me, "Mike Papantonio."

13:40:55   10          MR. LEVIN:  I didn't call you that.

13:40:55   11          MR. PETERSON:  I would have thought after $53 million

13:40:57   12   he would know my name.  Anyway, Your Honor --

13:41:02   13          MR. HERMAN:  You didn't pay enough.

13:41:04   14          MR. PETERSON:  I'm beginning to realize that.

13:41:08   15          Judge, one of the things that's become

13:41:10   16   abundantly clear in the litigation is that Banner has no

13:41:12   17   assets, but don't take our word for it.  The Court is very well

13:41:17   18   aware that the PSC has basically conducted extensive due

13:41:21   19   diligence in connection with Banner's assets, and they reached

13:41:24   20   the inescapable conclusion that we just don't have anything.

13:41:28   21   This Court has said many times in open court, in front of all

13:41:31   22   the folks that are in this room and those that are on the

13:41:34   23   phone, that you can't squeeze blood from a stone.  That's

13:41:37   24   precisely where we are at.

13:41:39   25          You know the fights we have had with our

13:41:41  1    carriers to be able to amass and come to the table with all of
13:41:45  2    our insurance money.  We did that.  That's what we have.
13:41:48  3               Judge, I would also like to point out that the
13:41:51  4    plaintiffs who remain in the Banner MDL settlement will never
13:41:54  5    recover more than they will under the auspices of this Court.
13:41:59  6    It's through a lot of hard work and diligence amongst all the
13:42:03  7    parties here that we have been able to formulate a settlement
13:42:06  8    agreement that provides the maximum that we can provide,
13:42:09  9    meaning the Banner entities, to these folks.  I hope that they
13:42:13  10   realize that.
13:42:14  11              Judge, one final point.  If you ask any of the
13:42:17  12   trial lawyers -- and there are great ones in this room -- they
13:42:23  13   will tell you there's an extreme risk in trial and in taking a
13:42:26  14   case to trial and trying a case to verdict.  A good example of
13:42:29  15   this within the context of the Chinese drywall cases is a case
13:42:34  16   that was actually tried to verdict in Fort Myers this last week
13:42:38  17   called the *Honus* case.  In that case -- it was against a
13:42:41  18   supplier similar to Banner -- the plaintiff alleged damages
13:42:44  19   associated with Chinese drywall as well as personal injury.
13:42:47  20   The jury came back with a verdict of $6,000 in total damages
13:42:53  21   awardable to the plaintiffs and awarded them nothing on the
13:42:56  22   personal injury claims.
13:42:59  23              As a result of certain monies that were
13:43:01  24   contributed by other defendants that acted as a setoff to the
13:43:04  25   verdict and an offer of judgment that was actually served, it

| | | |
|---|---|---|
| 13:43:07 | 1 | may be likely that the plaintiffs will actually pay the |
| 13:43:09 | 2 | defendants' attorneys' fees and costs. |
| 13:43:12 | 3 | Mr. Panayotopoulos discussed briefly the |
| 13:43:18 | 4 | situation with our opt-outs.  I would suggest very strongly to |
| 13:43:24 | 5 | our opt-outs that they consider and evaluate what has been put |
| 13:43:26 | 6 | on the table very seriously because, as we sit here today, this |
| 13:43:30 | 7 | may be their best day insofar as their potential recovery for |
| 13:43:34 | 8 | Chinese drywall-related claims. |
| 13:43:36 | 9 | Thank you, Your Honor. |
| 13:43:36 | 10 | **THE COURT:**  I might mention too, just so that |
| 13:43:39 | 11 | everybody at least has all the facts and can consider things, |
| 13:43:45 | 12 | one thing that the MDL panel did was to assign the cases to |
| 13:43:52 | 13 | this Court for resolution, but they also decided not to assign |
| 13:44:02 | 14 | the coverage cases to the Court.  So the coverage cases are |
| 13:44:08 | 15 | spread throughout maybe 26 states. |
| 13:44:11 | 16 | The difficulty to some extent -- or an |
| 13:44:16 | 17 | advantage, let me put it that way, of having one court look at |
| 13:44:20 | 18 | the matter is that you have some uniformity of result.  Whether |
| 13:44:24 | 19 | you like it or dislike it, at least you know that is the |
| 13:44:28 | 20 | result. |
| 13:44:29 | 21 | The problem with multiple courts dealing with |
| 13:44:34 | 22 | coverage is oftentimes you get a difference of opinions |
| 13:44:39 | 23 | throughout the court system.  That in itself presents problems |
| 13:44:46 | 24 | from the lawyers' standpoint.  There are the advantages and |
| 13:44:50 | 25 | disadvantages, but it presents the uncertainty there, and that |

| | | |
|---|---|---|
| 13:44:54 | 1 | oftentimes slows matters, if not defeats matters, because you |
| 13:45:00 | 2 | look at the cases that are favorable to you and your opponent |
| 13:45:04 | 3 | looks at the cases that are favorable to them and nothing |
| 13:45:08 | 4 | happens.  That's at least something that has to be plugged into |
| 13:45:14 | 5 | your thought process. |
| 13:45:19 | 6 | We are finished with Banner. |
| 13:45:22 | 7 | **MS. SHARMA:**  Your Honor, Renita Sharma on behalf of |
| 13:45:27 | 8 | Chartis.  I'll be extremely brief. |
| 13:45:29 | 9 | As both Mr. Peterson and Mr. Panayotopoulos |
| 13:45:31 | 10 | mentioned, Chartis has tendered its available limits in support |
| 13:45:35 | 11 | of this settlement in spite of the defenses available to it. |
| 13:45:35 | 12 | Therefore, the complexity of litigation avoided by this |
| 13:45:40 | 13 | settlement is not just the complexity of litigation between the |
| 13:45:42 | 14 | plaintiffs and Banner, but additionally the complexities of |
| 13:45:47 | 15 | risks inherent in any litigation regarding Banner's insurance |
| 13:45:51 | 16 | assets.  For that reason and with the support of the other *Reed* |
| 13:45:54 | 17 | factors that Mr. Panayotopoulos discussed, Chartis joins Banner |
| 13:45:59 | 18 | and the PSC in seeking final approval. |
| 13:46:03 | 19 | **THE COURT:**  Thank you very much. |
| 13:46:05 | 20 | Global.  First tell us, for the record, who the |
| 13:46:11 | 21 | global is. |
| 13:46:14 | 22 | **MR. PIPES:**  Your Honor, Minor Pipes on behalf of the |
| 13:46:15 | 23 | participating defendants and participating insurers in the |
| 13:46:19 | 24 | global settlement reached with the PSC. |
| 13:46:21 | 25 | The global settlement is a compilation of over |

13:46:25 1  700 defendants.  It is made up of builders, installers, and

13:46:27 2  suppliers around the country as well as over a hundred of their

13:46:32 3  insurers.  So what it is is a compilation of, as they call it,

13:46:36 4  everybody else.

13:46:39 5        You have heard from all of the suppliers who

13:46:41 6  have stepped up here and told you about their rank.  These are

13:46:44 7  all companies that directly dealt with either the manufacturer,

13:46:48 8  Knauf or Taishan, or someone who dealt with those companies to

13:46:53 9  bring the product into this country and then to sell that

13:46:56 10  product.

13:46:57 11        The people in my deal are for the most part

13:47:00 12  suppliers but lower on the chain.  They are not any of what I

13:47:04 13  call the big four -- L&W, InEx, Venture, Banner -- which each

13:47:10 14  have their own deals, who had extensive dealings with the

13:47:14 15  Chinese companies, but instead they are usually subsuppliers or

13:47:18 16  somebody who somehow ended up with a much smaller amount of

13:47:21 17  drywall.

13:47:21 18        Builders around the country, a large portion of

13:47:25 19  the large builders -- we call them remediating builders --

13:47:27 20  chose to remediate houses.  So they have a few houses they were

13:47:31 21  unable to remediate and participate in, but for the most part

13:47:34 22  those large blocks of homes that are in the builder camp are

13:47:38 23  not included in this, and then there's the installers that are

13:47:41 24  not released in the entities.

13:47:45 25        So I wanted to start by again thanking

13:47:47 1  Your Honor as well as all of the other state court and federal

13:47:50 2  court judges around the country.  I would say that out of the

13:47:53 3  defendant participating installer group, we are probably the

13:47:57 4  most likely to have been litigating around the country in all

13:48:00 5  of those forums that were gracious enough to work with

13:48:03 6  Your Honor on these issues.

13:48:05 7          Obviously, liaison counsel on all sides have

13:48:08 8  been extremely professional and courteous and even the

13:48:11 9  objectors themselves.  We appreciate that work.

13:48:14 10          In looking at the *Reed* factors, I don't think

13:48:17 11 there's any question there's no fraud or collusion here.  The

13:48:21 12 builder and installer settlement, or global as it's called,

13:48:25 13 started with Your Honor ordering all of the parties to get

13:48:29 14 together and talk.  That happened in March 2010.  Your Honor

13:48:33 15 was gracious enough to allow us to meet with the

13:48:36 16 Court-appointed mediator at John Perry's office and to come up

13:48:41 17 with a proposal on how to have that conversation.

13:48:43 18          Those conversations began.  It ultimately

13:48:47 19 resulted in what was a confidential mediation program where

13:48:52 20 there was an agreement reached with the PSC on what number it

13:48:56 21 would take to resolve those portions of the liability and then

13:48:59 22 to see how many of the 1,000 defendants involved were

13:49:03 23 interested in participating in that process.

13:49:05 24          It was a long, laborious process.  You heard the

13:49:09 25 expense; it was $2.9 million when we were all through, between

13:49:12  1   the mediation and the notice costs.  But I'm very proud to say

13:49:16  2   that over 700 defendants stepped up, went all in, and decided

13:49:20  3   to proceed with the settlement.

13:49:23  4            Your Honor, we talk about the complexity of this

13:49:27  5   case.  You have hit on the fact that there's over 10,000

13:49:31  6   claimants.  You're talking about homeowners, tenants,

13:49:34  7   landlords, even remediating builders.  They go from residential

13:49:38  8   to commercial, from individuals to businesses.  There's over

13:49:42  9   1,000 defendants made up of all different groups, from

13:49:45  10  builders, developers, installers, suppliers, importers, and

13:49:49  11  manufacturers.  Importantly, these aren't like a normal MDL

13:49:53  12  where they are all aligned.  In this case they are all suing

13:49:57  13  each over.  Everybody was pointing the finger at somebody else.

13:50:01  14  Ultimately, they all pointed their fingers at the insurers.

13:50:05  15            There's over 200 insurers in this litigation

13:50:06  16  that have policies that touched different defendants.  Many of

13:50:08  17  those are involved in over 60 coverage litigations around the

13:50:12  18  country, many of which are not in this forum.  As I'm sure you

13:50:16  19  are well aware, over 20 decisions have been issued in those

13:50:20  20  cases finding that there is no coverage underneath those

13:50:23  21  policies.  There's over 15 decisions in Florida alone finding

13:50:26  22  no coverage because of the pollution exclusion.

13:50:29  23            Virginia, the Supreme Court has found there's no

13:50:31  24  coverage, because of the pollution exclusion, for Chinese

13:50:34  25  drywall.  In addition, many, if not all of those insurers have

13:50:39  1   extensive other coverage positions that they have chosen to put
13:50:43  2   aside to try and put this to bed.
13:50:50  3           In addition to all of that, those 700 parties
13:50:53  4   decided to stand up and after two years of negotiations put
13:50:59  5   together the global settlement which allowed them to
13:51:02  6   participate at a level very similar to what has been
13:51:04  7   participated in by other people of similar rank.
13:51:09  8           The next *Reed* factor is the stage of litigation.
13:51:11  9   I don't think there's any question that this litigation, after
13:51:14  10  all of the bellwether trials, after all of the coverage
13:51:17  11  litigation, is ripe for settlement.
13:51:22  12          Probability of success.  If you look at what
13:51:23  13  happened in the insurance world, you look at the very difficult
13:51:28  14  time that the PSC and its brethren had in finding insurance
13:51:32  15  coverage, the fact that there are any number of participating
13:51:35  16  defendants who are both in bankruptcy and/or out of business in
13:51:39  17  and of themselves, the probability of success was clearly
13:51:42  18  questionable, not to mention the problem of most homeowners
13:51:46  19  being unable to match up with suppliers or installers.
13:51:50  20          They might know who their builder was, and in
13:51:53  21  many cases those builders either (1) fixed the home or (2) were
13:51:56  22  out of business, but they couldn't go beyond that because they
13:51:59  23  either didn't have contractual rights, didn't have tort
13:52:02  24  liability, didn't have time, they had lots of prescription
13:52:05  25  issues or statute of limitation issues, or in some cases simply

13:52:09 1    couldn't identify them.

13:52:11 2              Range of possible recovery.  I think it's

13:52:14 3    important to note that in almost every jurisdiction that is

13:52:17 4    touched by Chinese drywall, there's serious allocation

13:52:21 5    questions and serious comparative fault issues.  We saw that in

13:52:25 6    Florida in the *Siefert* case.  Although there was a pretty big,

13:52:29 7    newsworthy judgment that was issued, ultimately you had to come

13:52:34 8    out and decide the percentage of fault.

13:52:35 9              When you are talking about, as they call them,

13:52:37 10   the low-lying fruit, people who didn't contract to bring it in,

13:52:41 11   didn't necessarily have any idea there was a problem with this

13:52:47 12   drywall, their chance of comparative fault was extreme, and the

13:52:47 13   chances were very good that even if you got a verdict, it would

13:52:50 14   be a very small verdict.

13:52:52 15             Ultimately, the range of possible recovery, we

13:52:57 16   believe the numbers are extremely significant considering the

13:53:00 17   circumstances; especially the number of insurers who won

13:53:05 18   summary judgments, finding they had no coverage, and chose to

13:53:09 19   participate anyway.

13:53:11 20             Finally, response by the class.  As stated this

13:53:12 21   morning, there were 388 objections.  294 are left, which means

13:53:17 22   approximately 25 percent of them have rescinded those opt-outs.

13:53:24 23   Of those opt-outs, we believe a number more are still likely to

13:53:28 24   change their minds and come back into the agreement.  We are

13:53:31 25   quite proud of that fact.

13:53:33   1          As part of the global settlement, this is not
13:53:35   2   only a settlement for the class members, but it's also a
13:53:39   3   release amongst the defendants.  So all of that litigation
13:53:44   4   that's going on trying to point the fingers between carriers
13:53:46   5   and their insureds or between suppliers and installers, that's
13:53:50   6   all being resolved as part of this.  Obviously, as we all know,
13:53:54   7   sometimes the liability trial is the first step, and you
13:53:57   8   ultimately end up in indemnity trials for years to come.  Those
13:54:00   9   are all wrapped up together.  So people pay their money and go
13:54:05  10   home, and hopefully we can get more houses fixed.
13:54:11  11          As a result of all of this work, there were
13:54:14  12   eight people who stepped forward and said they objected to the
13:54:18  13   global settlement.  Now, five of those as of last night have
13:54:22  14   now withdrawn those objections.  We believe there are three
13:54:25  15   that are left.  One of them was an individual who had very
13:54:29  16   specific issues that he raised with Your Honor that are
13:54:33  17   somewhat covered by Mr. Bandas, and I'll deal with his in a
13:54:36  18   second.
13:54:36  19          The second one is Mr. Bandas, who has been
13:54:39  20   attacked wildly for his position.  I am going to deal with his
13:54:43  21   issues as they relate to bodily injury because I do believe
13:54:47  22   that is an issue this Court is interested in, and I do believe
13:54:51  23   it is an issue we should address.
13:54:53  24          The last one is to Mr. Durkee and Mr. Milstein,
13:54:54  25   who will stand up and tell you how they are in their situation.

13:54:58  1   As you know, we have been working through their issues.  I

13:55:01  2   believe their issues are well covered by the briefs, so we will

13:55:04  3   defer to the briefs on those issues.

13:55:07  4           The big issue that Mr. Bandas raised, we

13:55:10  5   believe, is the personal injury claims.  I believe that if

13:55:14  6   Your Honor looks at it, there are four very significant reasons

13:55:17  7   why those are not fatal to this settlement.  First of all, it

13:55:21  8   should be noted that there is simply no known long-term health

13:55:27  9   effects that have been scientifically linked to Chinese

13:55:31  10  drywall.

13:55:32  11          I will tell you it's not for not trying.  As

13:55:37  12  Mr. Herman told you earlier, the CPSC studied this issue for

13:55:42  13  five years.  The CPSC told you, in filing this in front of you,

13:55:47  14  that their investigation of problem drywall has been driven by

13:55:53  15  sound science and has involved HUD, the U.S. Centers for

13:55:55  16  Disease Control and Prevention, and the U.S. Environmental

13:55:57  17  Protection Agency as members of the Federal Interagency Task

13:56:03  18  Force on Problem Drywall.

13:56:04  19          So they didn't just study issues related to

13:56:07  20  health; they specifically studied it as related to drywall.

13:56:11  21  After these years of study, the Centers for Disease Control,

13:56:12  22  which is the most important federal agency in dealing with how

13:56:20  23  to stop there from being long-term health problems, said, The

13:56:25  24  problems here are not even sufficient enough that we would

13:56:27  25  conduct a long-term study.  We believe that is an extremely

13:56:30  1  strong position in support of this Court supporting this

13:56:34  2  settlement.

13:56:35  3          In addition to that finding, though, you have

13:56:38  4  findings that we have cited to you in our brief from the

13:56:42  5  National Center for Environmental Health, the Center for

13:56:45  6  Toxicology and Environmental Health, the American Industrial

13:56:48  7  Hygiene Association, the Florida and Virginia departments of

13:56:53  8  health, and numerous other very important organizations in both

13:56:59  9  state and federal agencies.

13:57:01  10          Second of all, Your Honor, the litigation here

13:57:05  11  has been ongoing for over three years, and in many cases the

13:57:10  12  drywall was installed five to seven years ago.  Yet despite

13:57:14  13  that, not a single case of long-term illness has been

13:57:18  14  identified.  Not a single court -- including this one, that has

13:57:23  15  tried numerous cases, and other courts that have tried cases,

13:57:25  16  including the one as recently as last week that Banner pointed

13:57:30  17  out to you -- has found that there were any issues related to

13:57:33  18  the effects of Chinese drywall on people's health.

13:57:35  19          In fact, Judge Farina, who was here this

13:57:39  20  morning -- I believe he is still here -- in denying an

13:57:43  21  objection on this very same issue in the Chinese drywall

13:57:53  22  *Harrell* settlement in South Florida, he found in the case of

13:57:56  23  future injuries there's no foundation in the scientific or

13:57:58  24  medical literature to support it.

13:58:00  25          Third, Your Honor, I would say that despite the

13:58:03  1    absolute rejection of these claims by the scientific community,

13:58:07  2    the defendants in the global settlement as well as Banner have

13:58:11  3    set aside a portion of their funds in their allocation plans so

13:58:16  4    that in the event somebody wants to come forward and say, Wait

13:58:20  5    up, I think I'm the guy, I've got the injury, then there is

13:58:23  6    money set aside.  He can come forward.  And if he can prove

13:58:26  7    causation, then he is protected by this settlement.  It's

13:58:29  8    important that Knauf has given similar rights in their

13:58:35  9    Other Loss Fund.  So this means that despite the absolute lack

13:58:38  10   of scientific evidence to support the existence of such claims,

13:58:41  11   they are protected through the settlement.

13:58:45  12        Finally, Your Honor, I would say that unlike the

13:58:47  13   cases cited by the objectors in this case, where those

13:58:50  14   settlements dealt solely with personal injury claims, these

13:58:55  15   claims that are being settled here in their essence are

13:58:58  16   property damage claims.  They are actual claims that people

13:59:01  17   have today; they are not merely future claims.  Those people

13:59:05  18   are settling their claims.  They're getting their houses fixed.

13:59:08  19   They're getting their loss-of-use damages paid.  They are

13:59:11  20   getting their personal property claims paid.  And to the extent

13:59:16  21   they have any personal injuries, they are being dealt with as

13:59:18  22   well.

13:59:19  23        So based upon the existence of claims being

13:59:21  24   settled, we do not believe the fact that the settlement

13:59:24  25   includes future injuries is a reason to not approve these

settlements.  In fact, I believe, as Mr. Levin started off with, this is no different than any settlement where you have got property damage and you get a release for everything when you settle a case.  That is consistent with the *PPA* case, the *Serzone Products Liability* case, and the *Diet Drugs* case which we cited to Your Honor, all of which found the complete lack of scientific evidence of latent injuries weighs in favor of class approval.  So again, as Judge Farina found, we believe that it's appropriate to approve these Chinese drywall settlements despite the fact that they include a release of personal injuries.

In conclusion, we believe the settlement addresses all of the *Reed* factors.  We believe that it is fair, it is reasonable, it is adequate, and it should be approved by Your Honor.  I'm happy to answer any questions you have about our settlement.

THE COURT:  Just one thing while I have you.  We are all familiar with class actions.  In a typical class action, the plaintiffs file a class action.  The Court entertains it, appoints the committees, allows limited discovery on the question of whether or not it's a class action, then sets it for certification.  Either testimony is given or documents are filed.  The Court rules on certification, tees up a bellwether or other case dealing with the merits.  Either after that or before that, the parties enter into settlement discussions,

14:01:16  1   settlement is announced, then the settlement hearing goes
14:01:19  2   forward.
14:01:21  3              This case is different in that its genesis is an
14:01:26  4   MDL.  MDLs include all claims, individual claims as well as any
14:01:35  5   class actions.  It's all bundled together and put under the MDL
14:01:43  6   banner and you move forward.  This case has proceeded, as
14:01:48  7   everyone recognizes, through extensive discovery, numbers of
14:01:54  8   trials, pilot programs, negotiations, and a settlement is
14:02:02  9   announced.
14:02:03  10             So at this stage in the game, we don't have the
14:02:11  11  traditional class action.  It's a little different than a
14:02:14  12  traditional class action in several ways.  One, it's under the
14:02:19  13  umbrella of an MDL; and secondly, the question of the
14:02:28  14  settlement, 23(e), we are here today to deal with certification
14:02:35  15  as well as settlement.  It's a *two-fer*, so to speak, this
14:02:45  16  hearing is, because we know that 23(e) provides that claims,
14:02:48  17  issues, or defenses of a certified class may be settled.  A
14:02:52  18  certified class.  So the class hasn't been certified, we are
14:02:56  19  talking settlement, and the thrust of the arguments has been
14:03:00  20  settlement oriented.
14:03:02  21             Where are you with the certification aspect?
14:03:07  22  What's your position on that?  Is it national certification?
14:03:13  23  State certification?  You might speak on that.
14:03:18  24       **MR. PIPES:**  Your Honor, it's national certification,
14:03:19  25  and I believe that the brief filed by the PSC addresses all of

14:03:25   1   those issues.  We can go through any of them you like.  I think

14:03:28   2   clearly, in each category that's required for certification of

14:03:31   3   a class, we meet those issues.

14:03:33   4              What you have here is across the board you have

14:03:36   5   people who have Chinese drywall in their homes that is acting

14:03:41   6   very similar in every home.  You have numerosity.  You have

14:03:45   7   over 10,000.  You have issues with those homes all reacting in

14:03:49   8   the same way.

14:03:51   9              Part of the problem that we have here in an MDL

14:03:53  10   proceeding is clearly that we have got some state court cases,

14:03:56  11   you have MDL cases, you have class action cases.  We believe

14:03:59  12   that the national class action is the only way that you can put

14:04:03  13   this to bed.  There is a huge number of participating

14:04:07  14   defendants here as well as, I think, parties in at least three,

14:04:11  15   if not the other four settlements -- I'm just not sure about

14:04:14  16   L&W -- that cross state lines.  So it becomes a problem if you

14:04:19  17   try to limit it to a state.

14:04:20  18              I think that all of those issues are before you.

14:04:23  19   We are happy to address any specific one you like, we are happy

14:04:26  20   to provide you additional briefing if you would like, but I

14:04:29  21   think that nobody has challenged that we meet what's needed to

14:04:34  22   have a class.

14:04:35  23              Obviously, what they have challenged is whether

14:04:38  24   or not there are parts of the settlement we should include, so

14:04:41  25   that that's what we focused on here today to try to avoid

14:04:44  1  wasting our time, but I'm happy to address one of the specific
14:04:48  2  ones if you like.
14:04:49  3      THE COURT:  The courts don't concern themselves with
14:04:52  4  manageability at this stage.  There's a settlement aspect to
14:04:58  5  it, so manageability is not the issue you usually have in the
14:05:02  6  typical class action.
14:05:04  7          I might also say that the courts are seeing more
14:05:08  8  of these joint motions.  The courts expressed early on some
14:05:16  9  concern about the joint motions, but it's clear that those
14:05:21  10  cases were concerned about it because of the timing.  Class
14:05:27  11  actions were filed and then a week later there was a settlement
14:05:30  12  announced and a week later there was a joint motion filed.
14:05:35  13  That's not the situation here.  I'm not saying there was
14:05:44  14  collusion in that aspect of the case either, but it was an
14:05:50  15  early stage.
14:05:50  16          Here we have been three years and thousands and
14:05:53  17  thousands of documents, millions of documents here, in effect,
14:05:55  18  and a lot of water under the bridge, so to speak, and so it's a
14:05:59  19  little different in this particular case.
14:06:02  20      MR. PIPES:  Your Honor, I think you are actually
14:06:05  21  correct.  The *Amchem* case took the manageability issue off the
14:06:07  22  table.
14:06:07  23      THE COURT:  Right.
14:06:07  24      MR. PIPES:  I think the other part we need to keep in
14:06:10  25  mind -- and I think you're absolutely correct, this is a

different kind of class action, probably the most complex that anybody has ever worked on, especially in this case.

In a normal class action, you have one big defendant, maybe two or three. Everybody knows who they are in the lineup. You decide whether or not the plaintiffs have a claim against that defendant. Here they are all suing each other, so it's a little bit different in working through all of those issues before you could certify a class. We have now finally figured out a way to do it. That's why we are asking to do them all together.

THE COURT: One thing I was concerned about when we first started the case was the average homeowner, the person who has bought a house and then finds out this is a problem or has rehabilitated their house following storms and finds out it's a problem. Oftentimes they have limited, if any, resources because they spent it all, in some instances taking it from their pension, to hurry up and get ready to repair their house only to find it's Chinese drywall.

My concern was for those individuals to go it alone, so to speak, and file claims against their builder and find out that it's kind of like a great bequest in a pauper's will; they win the case but have nothing because the builder has no assets or the supplier has no assets.

These cases are not necessarily complex, but expensive. I tried a number of them. It generally costs

14:07:47   1    something like a million dollars to try a case.  Now, if you

14:07:53   2    spent $200,000 to repair your house, it doesn't make a lot of

14:07:58   3    sense to spend a million dollars to win the case.

14:08:02   4            These cases tend to be expert driven, and it's

14:08:06   5    problematic.  So even though it's a problem and complex, the

14:08:17   6    format of having it in one jurisdiction I think is helpful to

14:08:22   7    all of the litigants.

14:08:26   8           **MR. PIPES:**  Your Honor, I think by definition class

14:08:27   9    actions were created to take care of a situation where it's

14:08:30  10    more expensive to try the case than what you would get out of

14:08:34  11    it.  I think you are absolutely correct that's part of the

14:08:36  12    problem.  And especially with the allocation issue, those

14:08:39  13    numbers could be significantly lower because you wouldn't be

14:08:42  14    able to recover the full amount from each defendant.  So I do

14:08:44  15    think that's why it's appropriate.  If you would like some

14:08:47  16    briefing on that, we are happy to provide you more.

14:08:49  17           **THE COURT:**  Let me hear from the home builders.

14:08:54  18           **MR. HERMAN:**  Your Honor, may I address just one

14:08:56  19    question about class action issues?

14:08:59  20           **THE COURT:**  Let me hear from the home builders first,

14:09:01  21    and then I'll give you a chance.

14:09:02  22           **MS. BASS:**  Thank you, Your Honor.  Hilarie Bass on

14:09:05  23    behalf of the home builders' steering committee.

14:09:07  24           Obviously, Your Honor, many of the home builders

14:09:09  25    have unique sets of facts as far as those that are remediating,

14:09:12  1   those that are not, but I believe that as a group the home

14:09:16  2   builders are in favor of this settlement and believe it's an

14:09:19  3   appropriate compromise.

14:09:20  4          Obviously, your concern from the beginning has

14:09:24  5   been those homes that don't fit within the Knauf settlement --

14:09:27  6   obviously, they are the Taishan homes -- and whether or not

14:09:30  7   there will prove to be enough money available for those

14:09:33  8   homeowners with Taishan board or less than 90 percent Knauf

14:09:38  9   board, whether there will be enough money from the various

14:09:41  10  settlement pots to enable them to repair the homes, and I think

14:09:44  11  it's still unclear whether or not that is the case.

14:09:48  12         Despite that concern, the home builders are, at

14:09:52  13  least for the most part, supportive of the concept that moving

14:09:58  14  forward with these five settlements is at least the best thing

14:10:00  15  that's possible right now to magnify the pot of available

14:10:06  16  proceeds for those homeowners.

14:10:08  17         **THE COURT:**  Okay.  Fine.  I did inject the question

14:10:10  18  of class action.

14:10:12  19         **MR. HERMAN:**  May it please the Court.  I will be very

14:10:14  20  brief.  Your Honor is quite correct.  I think the judgment,

14:10:16  21  finally, in *Hernandez* after trial was in the neighborhood of

14:10:20  22  $165,000, and I affirm to Your Honor as an officer of the Court

14:10:27  23  that that case cost in excess of a million dollars for that

14:10:32  24  plaintiff family to prevail.

14:10:33  25         As Mr. Pipes said originally, class actions were

14:10:36  1   to prevent consumers from the hardship of no recovery

14:10:41  2   whatsoever in cases where their claims were disproportionate to

14:10:48  3   what it would cost.

14:10:50  4            I believe Mr. Pipes has handled predominance,

14:10:54  5   manageability, numerosity, but there is something that hasn't

14:10:59  6   been said.  Originally, lead counsel Arnold Levin and I

14:11:03  7   struggled with how we were going to do this because it costs

14:11:06  8   $100,000 just to serve under the Hague Convention.  That hasn't

14:11:11  9   been said yet, but that was a real impediment to consumers, any

14:11:17  10  consumer.  How do you put up $100,000 to get service in a

14:11:21  11  $200,000 case?

14:11:22  12           We came up with the idea of an omnibus complaint

14:11:28  13  so that as a defendant was served under the Hague Convention,

14:11:32  14  you can intervene thousands of cases.  We appreciate the fact

14:11:36  15  that the Court recognized and allowed this mechanism to give

14:11:42  16  substantial justice, but I think it's important on the record

14:11:46  17  of this case that the record indicate the extraordinary

14:11:51  18  difficulty on consumers, where there are foreign nationals

14:11:57  19  involved, of having to spend $100,000 just to effect service.

14:12:03  20  I thought at this point, in terms of the question you asked

14:12:07  21  about class actions, that would be an important factor to have

14:12:11  22  on the record.

14:12:14  23           THE COURT:  That is really a complicating factor.  I

14:12:17  24  just mentioned that not necessarily only in this case, but it

14:12:21  25  troubles me that -- and we all know and hear about the world

being flat these days.  We are all aware of the fact that we
are citizens of the world now and we shop in the world.

          But the problem is when something happens and we
have a foreign product involved, even if there are treaties
involved and there are responsible parties, occasionally
reaching those parties is rather expensive, service under the
Hague.  It's particularly problematic for Chinese and Japanese
companies because of the translation difficulties and the
expense involved therein.  Each party has to then serve them,
and so it's a problem.  We had to come up with something called
an omnibus complaint, which you don't find in the Federal Rules
anyplace.  It's a vehicle to get around this expensive method
of suit.

          If we have 10,000 claimants here, at least, if
not 20,000 or 30,000, and everybody has to spend $100,000 or
$200,000 to serve the party, it's a problem.  Somewhere along
the line, either legislation or something, we have to take
another look at this.  We don't mind being citizens of the
world, but we want to be treated like citizens.

          This completes the supporters of the settlement.
I have received, as I say, a lot of paper, a lot of pleadings,
a lot of briefs, all of which were well done.  I have had an
opportunity to read them.  I make them part of the record.  If
anyone from the objectors -- North River I have as the first
one.  If you would like to speak, I would certainly be happy to

14:14:35　1　listen.

14:14:36　2　　　　　MS. LESSELL:  Your Honor, before you get to the

14:14:37　3　objectors, do you mind if I just clarify a position on the

14:14:41　4　record?

14:14:41　5　　　　　THE COURT:  Sure.  Okay.

14:14:46　6　　　　　MS. LESSELL:  Melissa Lessell on behalf of Landmark

14:14:48　7　American Insurance Company.  Like I said, this is more of a

14:14:51　8　housekeeping matter and not an objection.

14:14:53　9　　　　　We have previously requested confirmation from

14:14:55　10　the settling parties that Landmark's status remains unchanged

14:15:00　11　after the two InEx amendments.  We tried to work it out, as you

14:15:03　12　directed, on Friday, November 9, but I think just in the

14:15:07　13　busyness of preparing for this hearing, we didn't get it.  So I

14:15:11　14　just wanted to confirm on the record that it remains unchanged.

14:15:12　15　　　　　MR. LEVIN:  We want no money from you and your

14:15:14　16　client.

14:15:15　17　　　　　MS. LESSELL:  Thank you, Your Honor.

14:15:15　18　　　　　THE COURT:  Thank you.

14:15:23　19　　　　　MR. RISLEY:  Good afternoon, Your Honor.  Kevin

14:15:24　20　Risley on behalf of The North River Insurance Company.

14:15:27　21　　　　　You have heard at least two people say today

14:15:29　22　that North River does not want the Court to approve these

14:15:32　23　classwide settlements.  That's not true.  We have taken no

14:15:37　24　position on whether the settlements are fair and reasonable to

14:15:41　25　anybody other than North River.  We have objected only to the

InEx and Knauf settlements because they are the only ones that impact us, but on those settlements we do object to the extent they impair our rights.

Now, you have also heard from at least two people that North River has no standing. It's true that we are not a class member or a settling defendant. I wish it were true that we had no standing because that would mean our rights were not being affected, but they are in at least three ways:

(1) In the assignment of $72 million of insurance proceeds, a right to recover proceeds under four different policies, they are being assigned not once but some of them twice;

(2) On the fact there's a request that the Court declare that the coverage underlying the North River policies is exhausted, which will trigger certain obligations if that's binding against North River;

(3) And now today, without advance notice or pleadings to support it, it's set for hearing today, there's a request to liquidate all of the damages that are being sought against North River without the benefit of a trial or any chance to do discovery on them.

That's how we have standing, because of the three issues that impact us. I think, however, there is a way for the Court to resolve this, to take away standing from us, as it were, and approve the settlements as they otherwise

14:16:58   1    exist.

14:17:02   2            Now, I am going to briefly talk about four

14:17:06   3    issues, three that we raised in our written submissions, our

14:17:06   4    written objections, and one of which I think has become moot,

14:17:06   5    and then an issue that has been raised today.

14:17:11   6            In the written objections, the first issue we

14:17:12   7    raised was the question of assignment from InEx to the

14:17:16   8    plaintiffs and then from the plaintiffs to Knauf.  We do not

14:17:20   9    consent to that assignment.  If the Court merely approves the

14:17:24   10   fact that it is being assigned without finding whether it's

14:17:27   11   binding against us or not, then I agree we can reserve that

14:17:32   12   fight 'til later.  But if the Court wants to make a finding

14:17:35   13   that it is binding against us now, then we do object to that

14:17:39   14   for the reasons set forth in our brief.

14:17:41   15           On the question of exhaustion that you have

14:17:42   16   heard about, one additional reason we believe there is not, in

14:17:48   17   fact, exhaustion is under the InEx settlement Chinese drywall

14:17:53   18   is defined to include board that does not react; for example,

14:17:59   19   the Knauf Wuhu board.  People who have that in their home which

14:18:03   20   have no smell, no corrosion, no problems are being paid under

14:18:08   21   the settlement as defined.  We don't believe there is

14:18:12   22   exhaustion unless there is payment of covered claims under the

14:18:12   23   policies.  That's one of our main objections.

14:18:14   24           **THE COURT:**  Don't they argue that's it's going to

14:18:18   25   happen?  If drywall is manufactured or comes from the same mine

14:18:28  1   and all of the other sheets in the room smell and this sheet

14:18:32  2   doesn't, is it their position that this sheet is just a little

14:18:39  3   bit behind the time?

14:18:40  4         **MR. RISLEY:**  I don't think it is because the Knauf

14:18:42  5   Wuhu board gypsum comes from another mine.  It has been tested

14:18:47  6   and found not to have a high sulfur content and not to be

14:18:47  7   reactive.  If those claimants would go to trial, they would

14:18:51  8   have to prove that their homes have been damaged, and there's

14:18:54  9   no evidence, other than the KPT and the Taishan board, that any

14:18:59  10  Chinese board does cause problems.  So they are paying claims

14:19:03  11  that on their face don't meet a definition of *occurrence* under

14:19:06  12  the policies.

14:19:07  13        Again, we relied on the briefing for that.  I

14:19:09  14  think what the Court can do if Knauf -- or excuse me.  If InEx

14:19:13  15  and their primary carriers want to agree between the two of

14:19:16  16  them that there's exhaustion, again, that's not our issue.  I

14:19:20  17  do think what's driving that issue is the primary carriers want

14:19:22  18  to be relieved of their defense obligation.  They are willing

14:19:24  19  to tender what they say are their limits.  They want to stop

14:19:28  20  having to pay defense costs.  That's between the two of them.

14:19:30  21  If that's their agreement, so be it, but you don't need to make

14:19:35  22  a finding that the exhaustion is binding against us to put that

14:19:39  23  agreement in place.

14:19:41  24        The third written objection we made was one that

14:19:44  25  when the original Knauf settlement was put before the Court,

14:19:46  1   there was some unclarity in the language about releases, which

14:19:50  2   made it sound like North River's potential claims against Knauf

14:19:54  3   were being released.  My understanding from several

14:19:57  4   conversations is under the current version, that's not correct,

14:19:59  5   we reserve those rights.  As long as the Court or Knauf would

14:20:03  6   confirm that, we will withdraw that objection.

14:20:06  7        THE COURT:  That's the way I understood the last

14:20:08  8   draft.

14:20:08  9        MR. RISLEY:  I did too.  I just wanted to make sure

14:20:11  10  that's on the record so we're all in agreement on that.

14:20:12  11        That leaves one more issue, the proposed second

14:20:17  12  amendment to the InEx settlement.  Now, the Court earlier this

14:20:20  13  morning, when it was talking in general, said that all of the

14:20:24  14  proposed settlements had been noticed and due process had been

14:20:27  15  fully satisfied.  If the Court takes up the second amended

14:20:32  16  settlement, due process goes out the window, under the bus,

14:20:35  17  into the trash, wherever you want to send it, but it doesn't

14:20:38  18  stay in the courtroom.

14:20:40  19        That proposed amendment was filed two or three

14:20:42  20  weeks ago with a request for expedited hearing.  The reason

14:20:48  21  they wanted an expedited hearing was InEx said it was afraid

14:20:51  22  that Knauf was going to walk from the settlement, and they

14:20:54  23  needed this to prevent Knauf from walking out.  The Court did

14:20:58  24  not grant an expedited hearing.  We were not given notice it

14:21:00  25  was set for submission or hearing today.  It is not on this

14:21:01  1    Court's docket today.

14:21:04  2              Now, their attempt to get around it is to say,

14:21:06  3    Well, we don't want it to be binding against North River right

14:21:09  4    now.  I'm not sure Rule 23 allows you to dissect agreements

14:21:11  5    like that and say, I'm approving it for some purposes but not

14:21:21  6    for others.

14:21:21  7              I don't think the Court can do that under

14:21:22  8    Rule 23.  Even if it could, however, there's still the question

14:21:26  9    of notice to the class members.  The way the proposed second

14:21:28  10   amendment is set up, depending on what happens to the

14:21:32  11   bellwether trial, the class members could get a $72 million

14:21:35  12   claim or a $36 million claim or zero.

14:21:41  13             Now, the Fifth Circuit decided one of the

14:21:44  14   *Katrina Breach* cases a couple years ago which involved notice

14:21:47  15   of a class settlement, and that was reversed because the notice

14:21:50  16   did not make it clear to the class members they might be

14:21:53  17   getting zero under the settlement.  Notice was given but not

14:21:57  18   clearly given that zero was a possibility.  Here you are being

14:22:00  19   asked to approve a settlement that might result in zero dollars

14:22:03  20   to class members without telling them that.

14:22:08  21             So as a basic matter of Rule 23, you have to

14:22:10  22   give notice of any settlement of this type, and the fact that

14:22:12  23   it's late in the game doesn't excuse the obligation to give

14:22:16  24   notice.

14:22:17  25             **THE COURT:**  If Knauf agrees not to walk away, is the

14:22:30   1   second mooted?

14:22:32   2          **MR. RISLEY:**  I think so, especially if it's not

14:22:34   3   intended to be binding against us.  The Court heard from very

14:22:38   4   good and reputable lawyers on behalf of Knauf today.  All three

14:22:41   5   of them asked you to approve the settlement.  None of them even

14:22:44   6   hinted that they might be willing to exercise their opt-out

14:22:47   7   right by Friday because of our situation.  I would expect them

14:22:50   8   to raise that possibility with the Court if it were a

14:22:52   9   possibility.

14:22:53   10          So I think their request at this point that the

14:22:56   11   settlements be approved pretty well moots the need for that,

14:22:59   12   but it certainly takes away any claim that time is of the

14:23:03   13   essence.  That was definitely the reason for the expedited

14:23:05   14   request, because they were afraid Knauf might walk.  If Knauf

14:23:09   15   doesn't walk, time is not a factor at all, then.

14:23:12   16          I do think though, I want to point out that

14:23:14   17   while they say they don't want it to be binding against us, it

14:23:17   18   really serves no purpose if it's not binding against us because

14:23:21   19   with or without the second amended, InEx is going to be fully

14:23:25   20   released.  They will never pay one penny of any of those

14:23:31   21   liquidated damages.  That's Monopoly money to InEx at this

14:23:34   22   point.  It only has value if it can be binding against

14:23:38   23   North River.

14:23:39   24          That brings up the question of what will that do

14:23:42   25   to the bellwether trial.  We have a trial set in less than two

14:23:47  1   weeks we have been preparing for, and the Court has made it
14:23:50  2   very clear it's a bellwether trial to give us information about
14:23:53  3   InEx and its conduct as a seller.  That's what we have been
14:23:56  4   preparing for.  It's not to assess liability against InEx.
14:23:59  5   It's not to determine damages.
14:24:02  6            But what will happen is, if the second amended
14:24:05  7   is considered and approved by the Court, if there's an adverse
14:24:09  8   ruling on us at that trial, then -- I'll be Knauf, and since I
14:24:15  9   will own the claims at that time will say, All right.  Now we
14:24:18  10  get $72 million or $36 million.
14:24:20  11           So you have taken what is supposed to be a
14:24:24  12  bellwether trial and turned it into a class damages trial.
14:24:26  13  That is a very strange way to do it by throwing in an amendment
14:24:30  14  to a settlement that's not noticed, not set for hearing, and
14:24:32  15  using that as a vehicle to create class damages.
14:24:35  16           I will say we have been working on a written
14:24:38  17  objection.  If the Court is going to go forward with that, we
14:24:41  18  would like a chance to complete that -- we need to revise it
14:24:45  19  based on some things today -- and submit it to the Court if the
14:24:50  20  Court is going to consider the second amendment.
14:24:51  21           **THE COURT:**  Thank you very much.
14:24:55  22           Anyone else for North River?
14:24:59  23           How about Wayne Kaplan?
14:25:17  24           **MR. MILSTEIN:**  Good afternoon, Your Honor.  Mark
14:25:23  25  Milstein of Milstein Adelman.

14:25:24   1          **MR. DURKEE:**  David Durkee, Your Honor, on behalf of

14:25:27   2     Roberts & Durkee.

14:25:29   3          **MR. MILSTEIN:**  Your Honor, as the Court is aware, we

14:25:30   4     have filed an objection on behalf of Mr. Kaplan.  Mr. Kaplan is

14:25:33   5     a resident of West Palm Beach County in Florida.  Our objection

14:25:37   6     is as to the global settlement only.  We have set forth the

14:25:41   7     substance of the objection in the written document that we have

14:25:44   8     provided, and I don't see any reason to really go through those

14:25:47   9     issues again today.

14:25:48   10          We do want to emphasize that we are working with

14:25:51   11     various individuals in an effort to try to resolve Mr. Kaplan's

14:25:54   12     concerns.  Mr. Kaplan gave very eloquent and sincere deposition

14:25:59   13     testimony where he discussed his issues.  We think the parties

14:26:02   14     are taking those seriously, and we are going to do our best

14:26:05   15     over the coming days to try to work through those.

14:26:07   16          I did want to briefly comment.  I think lead

14:26:11   17     counsel for the PSC raised the issue of potential conflict with

14:26:14   18     both my office and Mr. Durkee's office.  We have researched

14:26:17   19     that extensively, Your Honor, and we don't believe the

14:26:20   20     authorities support that.  We didn't create this conflict.  If

14:26:24   21     there is a conflict here -- and I'm not sure there is -- it

14:26:28   22     really was created and belongs to others.  If given the

14:26:31   23     opportunity, Your Honor, we would be more than happy to brief

14:26:32   24     that for the Court.

14:26:33   25          **THE COURT:**  I'm not going to deal with that at this

14:26:35  1  time.  I don't see that as an issue.

14:26:38  2          MR. DURKEE:  Very good, Your Honor.  We just want to

14:26:39  3  reiterate that everything we have done on behalf of our victims

14:26:41  4  has been in their best interest, in good faith, and for the

14:26:45  5  purpose of bringing this to an orderly conclusion just like

14:26:48  6  this Court has.

14:26:50  7          THE COURT:  I hope that situation is able to be

14:26:54  8  worked out.  Maybe it's just a question of understanding it or

14:27:01  9  a little bit more specificity in the language.  If I can get

14:27:05  10  involved in it, let me know.

14:27:08  11          MR. DURKEE:  Thank you, Your Honor.

14:27:09  12          MR. MILSTEIN:  Thank you for your time, Your Honor,

14:27:10  13  and for your time and tenacity throughout the many years of

14:27:13  14  this litigation.  We appreciate it.

14:27:17  15          THE COURT:  Thank you.

14:27:17  16          The last objection is Mr. Bandas in Soto and

14:27:20  17  Garcia.  I received extensive briefing from Mr. Bandas.  As I

14:27:25  18  said, I'm going to make that a part of the record.  If you wish

14:27:29  19  to say anything, I certainly will listen to you.

14:27:32  20          MR. BANDAS:  No, Your Honor.  With the Court's

14:27:33  21  comments, we stand on our pleadings.

14:27:35  22          THE COURT:  Fine.  Thank you very much.

14:27:38  23          Those are the objectors that have written and

14:27:41  24  provided something.

14:27:42  25          Any rebuttal from any of the supporters?

14:27:50  1      **MR. HERMAN:**  May it please the Court.  We have no

14:27:53  2  rebuttal.

14:27:56  3           As Mr. Glickstein pointed out, we definitely do

14:27:59  4  not agree with learned counsel Mayesh's ideas about exposure or

14:28:05  5  liability, but he was very eloquent in expressing the

14:28:10  6  difficulties that plaintiffs would have.

14:28:12  7           We do want to indicate for the Court that we

14:28:15  8  have a hard copy and a CD of our exhibits in chambers.  We have

14:28:22  9  previously submitted it through the exhibit list, but we

14:28:24  10  formally submit those without objection.

14:28:27  11      **THE COURT:**  I'll keep the record open for, say, two

14:28:30  12  weeks to give parties an opportunity to respond in writing or

14:28:34  13  give me any additional briefing if you to feel you need

14:28:44  14  additional briefing from some of the remarks made here today.

14:28:48  15           Kevin, I have a date, I thought, in February to

14:28:51  16  deal with that motion, but -- not February.  When is it?

14:28:56  17      **MR. MILLER:**  Friday.

14:28:59  18      **THE COURT:**  Friday.  I'll deal with that.  Maybe I

14:28:59  19  should see you all after this hearing.

14:29:02  20      **MR. RISLEY:**  Friday is the deadline for motions in

14:29:04  21  limine, but I wasn't aware it was for anything else, but we can

14:29:08  22  visit.

14:29:08  23      **THE COURT:**  Let me visit with you all when we are

14:29:12  24  finished here.

14:29:14  25      **MR. RISLEY:**  We were given a copy of the plaintiffs'

14:29:16    1    exhibit list a minute ago.  The second amended motion is on
14:29:20    2    there as Exhibit 68.  We certainly don't object to the Court
14:29:24    3    taking judicial notice of the filing.  We do object if it's
14:29:28    4    offered as substantive evidence.  It's not even on the list
14:29:28    5    today.  To the extent it's on any other list, we also object to
14:29:28    6    it for the same reason.
14:29:34    7           MR. MILLER:  Your Honor, just a question and a
14:29:35    8    request for clarification on a point you just made.  You said
14:29:38    9    you were going to keep the record open for a couple weeks to
14:29:41   10    allow for supplemental briefing.  Your Honor, would that
14:29:43   11    include keeping the record open for Knauf to exercise its
14:29:47   12    withdrawal rights from the settlement?
14:29:49   13           THE COURT:  For whatever reasons necessary.  The
14:29:51   14    point is that the record will remain open.  I'm not going to
14:29:56   15    continue the hearing because hopefully everybody has said
14:30:01   16    everything they need to say, but it's the same.  So the answer
14:30:04   17    is yes to your specific question.
14:30:06   18           MR. MILLER:  Thank you, Your Honor.
14:30:08   19           MR. HERMAN:  May it please the Court.  Judge Fallon,
14:30:09   20    as you know, Chris Seeger had some Hurricane Sandy problems.
14:30:17   21    Jerry Meunier, who is captain of our trial team at this
14:30:25   22    juncture, I believe is in the other courtroom listening.  We
14:30:29   23    would like to get him here so he can meet in chambers on the
14:30:33   24    issue you have asked.
14:30:35   25           THE COURT:  Fine.

|    |    |
|----|----|
| 14:30:36 | 1 |
| 14:30:43 | 2 |
| 14:30:44 | 3 |
| 14:30:51 | 4 |
| 14:30:54 | 5 |
| 14:31:02 | 6 |
| 14:31:07 | 7 |
| 14:31:17 | 8 |
| 14:31:23 | 9 |
| 14:31:26 | 10 |
| 14:31:31 | 11 |
| 14:31:36 | 12 |
| 14:31:41 | 13 |
| 14:31:45 | 14 |
| 14:31:48 | 15 |
| 14:31:53 | 16 |
| 14:31:57 | 17 |
| 14:32:02 | 18 |
| 14:32:05 | 19 |
| 14:32:08 | 20 |
| 14:32:15 | 21 |
| 14:32:20 | 22 |
| 14:32:28 | 23 |
| 14:32:33 | 24 |
| 14:32:40 | 25 |

1    Anything further?  Steve.

2    **MR. GLICKSTEIN:**  Steve Glickstein on behalf of the

3 Knauf defendants.  I wanted to address first the question

4 Your Honor asked about class certification.

5    I would just point Your Honor and Mr. Brandao to

6 the PSC's brief in response to objections -- I think it's

7 record 16119-2, pages 42 to 51 -- and also Mr. Pipes's brief on

8 behalf of the global settlement, the entirety of which I think

9 is addressed to the class certification issue and particularly

10 to some of the issues that Your Honor has raised.  That brief

11 is record 16117.  I would just point you in that direction

12 because I think it addresses frontally the class action issues

13 that Your Honor raised.

14    **THE COURT:**  The PSC also addressed it in their brief.

15 I did see all of the written materials on it, but I did want

16 you all to at least have an opportunity to address it verbally

17 because some individuals in the courtroom maybe hadn't had the

18 opportunity to read all the briefs.  They are quite extensive.

19    **MR. GLICKSTEIN:**  I would like to address some

20 questions concerning the second amendment because it was raised

21 by Mr. Risley.

22    First, I think Mr. Risley misunderstands what

23 the second amendment does and what the second amendment doesn't

24 do.  As Your Honor knows and as we said in both of our briefs

25 in support of the settlement and as we said numerous times on

14:32:45  1   the record beforehand, all of these settlements stand together

14:32:55  2   or fall together.  It has always been incumbent, we thought, on

14:33:05  3   all of the major defendants and all of their insurers to

14:33:09  4   participate in this process so that we could bring relief to

14:33:14  5   homeowners.  We had made crystal clear to all parties that that

14:33:23  6   included North River's excess insurer.

14:33:30  7           North River's primary insurers, Liberty Mutual

14:33:34  8   and Arch, have put in their policy limits towards settling

14:33:39  9   these claims and North River has not.  So that raised a

14:33:50  10  conundrum for the parties because our clients were adamant that

14:33:55  11  they were not going to go forward with the settlement if there

14:34:01  12  was not participation by North River.  We so notified the

14:34:07  13  Court.  We so notified the PSC.  We so notified InEx.

14:34:16  14          Our first goal was to see if we could reach an

14:34:20  15  agreement with North River.  The Court scheduled a mediation on

14:34:23  16  May 31.  That mediation failed.  So after May 31, beginning in

14:34:31  17  June, the parties began to discuss whether there was another

14:34:36  18  way of reaching a resolution that could be achieved without

14:34:52  19  North River's participation.

14:34:53  20          What we did is we researched the law.  There is

14:35:01  21  a series of cases under Louisiana law that permits an insured,

14:35:08  22  here InEx, to settle a case without the consent of the insurer

14:35:15  23  where time is of the essence, meaning there will be immediate

14:35:21  24  damage to the insured if they don't settle, where the insurer

14:35:26  25  unjustifiably declines to settle the case and settlement is

reasonable.  So we -- Arch, Liberty, the PSC, and InEx -- under the authority of that case law, reached a high-low settlement. What that settlement did was:

(1)  It preserves North River's ability to say that its insured InEx has no liability at all, and that will be tested in the upcoming trial on November 26;

(2)  It reserves to North River all of its coverage defenses;

(3)  It reserves its right, if any -- and I emphasize *if any* because that's a legal issue that Your Honor will have to determine -- to seek indemnity from other parties.

The nature of the high-low settlement is as follows:

If InEx and North River are successful in the bellwether trials and InEx is found not to be liable, then Knauf at that point will waive its right to terminate the settlement because InEx has been found not to be liable.

On the other hand, if InEx is found to be liable as a bad faith seller and, in addition to that, the Court following trial determines the issue of solidary liability in favor of the PSC, then that means in that case that InEx and, subject to coverage, its insurer North River must pay the entirety of the damage and be left with its right to seek indemnification if it can get it.

In that instance the insured, under the *Babst*

| | |
|---|---|
| 14:38:05 | 1 |
| 14:38:10 | 2 |
| 14:38:13 | 3 |
| 14:38:18 | 4 |
| 14:38:23 | 5 |
| 14:38:26 | 6 |
| 14:38:30 | 7 |
| 14:38:35 | 8 |
| 14:38:38 | 9 |
| 14:38:45 | 10 |
| 14:38:52 | 11 |
| 14:38:59 | 12 |
| 14:39:05 | 13 |
| 14:39:12 | 14 |
| 14:39:23 | 15 |
| 14:39:29 | 16 |
| 14:39:34 | 17 |
| 14:39:39 | 18 |
| 14:39:45 | 19 |
| 14:39:48 | 20 |
| 14:39:53 | 21 |
| 14:39:58 | 22 |
| 14:40:03 | 23 |
| 14:40:11 | 24 |
| 14:40:16 | 25 |

1  case, has agreed that there's really no reasonable prospect

2  that the damages, given the number of people and the cost, can

3  be less than the $72 million in available coverage, and so in

4  that case there is a $72 million settlement.

5  If there is an intermediate result such as a win

6  against some plaintiffs and not others, or if there's a win

7  against all plaintiffs but there's not a determination of

8  solidary liability, instead it's only several liability, then

9  there's an intermediate result of $36 million.

10  But what is at issue before the Court today and

11  what isn't at issue?  Mr. Duplantier said this, but it may be

12  worth slowing down what we are talking about here.  The issue

13  is whether the second amendment is fair to the class, because

14  what the second amendment does is it gets Knauf to agree not to

15  withdraw from its settlement based on North River's

16  nonparticipation.  That is obviously a huge benefit to the

17  class.

18  If ultimately it is found to be enforceable,

19  then it liquidates the damages because it was a good faith

20  settlement by the insured under circumstances which we think

21  enable the insured to bind its carrier because time is of the

22  essence and there was unjustifiable delay on the carrier's

23  part.  That's a benefit to the class.

24  So all the Court has to do now is determine

25  whether the second amendment is fair to the class.  As to

14:40:23  1   whether additional notice needs to be provided to the class,

14:40:27  2   the joint briefs submitted by the PSC, Knauf, and InEx on

14:40:34  3   October 23 -- unfortunately, I don't have the record number,

14:40:37  4   but pages 15 to 17 address the notice issues.  When you have an

14:40:47  5   amendment that is unilaterally beneficial to the class --

14:40:51  6   North River doesn't say there's any impairment of the class's

14:40:56  7   ability under the settlement -- there doesn't need to be a

14:40:59  8   second notice that says you have got even more benefits than

14:41:02  9   what you thought you had in the first place.

14:41:07  10         What's not at issue today?  What's not at issue

14:41:12  11  is whether or not this second amendment is binding upon

14:41:20  12  North River.  That's a coverage issue.  The agreement preserves

14:41:27  13  North River's coverage defenses.

14:41:30  14         So, yes, there is a risk, but it's a risk to

14:41:35  15  Knauf and a risk to InEx -- actually a risk to InEx and a risk

14:41:42  16  to the PSC that at the appropriate time, when the issue of

14:41:48  17  whether or not the second amendment is binding on North River,

14:41:54  18  that if the appropriate findings aren't made, that the

14:41:59  19  agreement will not be enforceable.  That's possible.

14:42:03  20         We think and we feel very confident that we will

14:42:06  21  be able to meet the test that's in the case law and that it

14:42:11  22  will be enforceable.  I guess we are putting our money where

14:42:14  23  our mouth is because we waived at least that termination right

14:42:22  24  on a bet that the facts and the law will support us in that

14:42:26  25  regard.

14:42:30  1          There are other contingencies in the settlement
14:42:37  2   that go beyond the North River contingencies because, as we
14:42:42  3   said, all the settlements stand or fall together.  I think
14:42:44  4   you've heard Mr. Panayotopoulos say that if certain claims,
14:42:50  5   particularly on the Taishan side, are not resolved, that they
14:42:56  6   will have too much exposure to go forward and that might cause
14:43:02  7   them to go into bankruptcy, which would or could result in
14:43:09  8   everything unraveling.
14:43:12  9          So, yeah, we still have some work ahead of us.
14:43:14  10  The fact that we presented this settlement to you today doesn't
14:43:19  11  diminish our determination to go forward.  We are and continue
14:43:25  12  to be working very hard because we think this is in the
14:43:28  13  interest of the homeowners.  We think this is in the interest
14:43:32  14  of the settling defendants.  We want it to succeed, and we will
14:43:37  15  work very hard for it to succeed.  We presented it to you
14:43:40  16  because we believe it's fair, but there are contingencies.  We
14:43:45  17  haven't waived them.  I think Your Honor just stated that
14:43:48  18  you'll provide us with an ample amount of time.  To assure that
14:43:54  19  those contingencies are fulfilled, the termination dates are
14:43:59  20  being extended.
14:44:02  21          I think what I heard Mr. Risley say is that if
14:44:12  22  North River's rights are not impaired, they agree that they
14:44:15  23  don't have standing.  I think that is, in fact, where we are
14:44:22  24  because their coverage defenses are preserved.  The InEx and
14:44:30  25  PSC members can say whether they disagree, but I think that

| | |
|---|---|
| 14:44:36 | 1 |
| 14:44:43 | 2 |
| 14:44:44 | 3 |
| 14:44:50 | 4 |
| 14:44:55 | 5 |
| 14:44:59 | 6 |
| 14:45:05 | 7 |
| 14:45:11 | 8 |
| 14:45:14 | 9 |
| 14:45:16 | 10 |
| 14:45:20 | 11 |
| 14:45:22 | 12 |
| 14:45:29 | 13 |
| 14:45:30 | 14 |
| 14:45:35 | 15 |
| 14:45:42 | 16 |
| 14:45:46 | 17 |
| 14:45:50 | 18 |
| 14:45:53 | 19 |
| 14:45:54 | 20 |
| 14:45:59 | 21 |
| 14:46:05 | 22 |
| 14:46:09 | 23 |
| 14:46:14 | 24 |
| 14:46:20 | 25 |

applies to all three issues that he addressed.

First, there's one assignment, not two assignments.  There's an assignment of the policy under the InEx settlement with the PSC.  I think the second assignment that Mr. Risley referred to is not an assignment of any policy rights but an assignment of any recovery that they obtain, which is different.  It's an assignment not of a claim but of a recovery.

Then there's the exhaustion issue.  The Court has to determine whether the policy is exhausted for the purpose of whether it's fair to the class.  And there's the second amendment, is the second amendment fair to the class.

North River will have the opportunity -- nobody is attempting to deny it due process -- to assert its coverage position.  And if, in fact, at the appropriate time their coverage positions are sustained in whole or in part, then their coverage positions are what their coverage positions are.  They are not waived by the second amendment or anything else in these settlements.

So at the bottom, they really don't have standing.  What we have done is put in place a mechanism that we think ultimately will bind North River, but today is not the forum.  Today is not the opportunity for the Court to rule about whether it is or isn't binding.

THE COURT:  What we need to do, I think you and

14:46:23   1   North River need to at least talk, and then let me know whether
14:46:33   2   there are any issues I need to resolve and what the issue or
14:46:35   3   issues are.  Then I will set something convenient with your
14:46:43   4   schedule, and we will deal with it that way.
14:46:45   5            I'm hearing some things that may moot some
14:46:49   6   things and some things that may not moot some things.  Until
14:46:53   7   you sit down and talk about what your problems are and what
14:46:56   8   their solutions are -- some of the conversation, I think I
14:47:06   9   understand it, but you may feel it's too vague and you might
14:47:09   10  want some specifics, and he may feel it's too vague and he may
14:47:14   11  need some specifics.  So I think you all ought to get together
14:47:19   12  and see where you are and let me hear from you as to whether
14:47:23   13  there is an issue or issues you need me on.
14:47:25   14           MR. RISLEY:  I just want to make it clear our
14:47:26   15  position is that that second amendment to the settlement is not
14:47:29   16  before the Court today.  I raised it only because InEx did in
14:47:32   17  their presentation, in responding to it, but certainly the
14:47:34   18  response is it's not even set for hearing today.
14:47:37   19           THE COURT:  I think he agrees with you and he feels
14:47:39   20  that may never be before the Court.  It may be something that
14:47:42   21  you have no complaint over.
14:47:44   22           MR. RISLEY:  Fair enough, Your Honor.
14:47:46   23           THE COURT:  Thank you very much.
14:47:47   24           MR. MILLER:  Your Honor, one thing real quick, just a
14:47:49   25  point of clarification.  The extension to the withdrawal

14:47:51  1    rights, counsel for Banner and InEx tapped me on the shoulder.

14:47:53  2    It applies to those two parties as well?  Global too?

14:47:59  3              THE COURT:  Yes.

14:48:00  4              All right.  Court will stand in recess.

14:48:02  5              THE DEPUTY CLERK:  All rise.

14:52:56  6              (Proceedings adjourned.)

14:53:01  7                              * * *

          8                          **CERTIFICATE**

          9              I, Toni Doyle Tusa, CCR, FCRR, Official Court

         10    Reporter for the United States District Court, Eastern District

         11    of Louisiana, do hereby certify that the foregoing is a true

         12    and correct transcript, to the best of my ability and

         13    understanding, from the record of the proceedings in the

         14    above-entitled matter.

         15

         16

         17                              *s/ Toni Doyle Tusa*
                                         Toni Doyle Tusa, CCR, FCRR
         18                              Official Court Reporter

         19

         20

         21

         22

         23

         24

         25

**$**

$1.1 [1] 25/23
$1.1 billion [1] 25/23
$100,000 [7] 27/25 85/9 85/15 115/8
 115/10 115/19 116/15
$11,285,000 [1] 27/15
$15 [1] 58/1
$15 million [1] 58/1
$16 [1] 27/16
$16 million [1] 27/16
$160 [6] 25/9 26/1 26/19 26/22 30/20
 37/6
$160 million [6] 25/9 26/1 26/19 26/22
 30/20 37/6
$164,000 [1] 17/23
$165,000 [1] 114/22
$2.9 [2] 28/3 100/25
$2.9 million [2] 28/3 100/25
$200,000 [3] 113/2 115/11 116/16
$30 [4] 29/8 70/9 70/10 70/13
$30 million [4] 29/8 70/9 70/10 70/13
$36 [3] 122/12 124/10 132/9
$36 million [3] 122/12 124/10 132/9
$4,746,000 [1] 27/15
$40,000 [1] 44/20
$400,000 [1] 27/24
$5,000 [2] 33/18 44/10
$53 [2] 27/20 95/11
$53 million [2] 27/20 95/11
$6,000 [1] 96/20
$72 [6] 31/10 118/9 122/11 124/10 132/3
 132/4
$72 million [6] 31/10 118/9 122/11
 124/10 132/3 132/4
$99,000 [1] 27/25

**'**

'til [1] 119/12

**0**

02110 [1] 2/16
09-MD-2047 [1] 1/5

**1**

1 percent [1] 44/18
1,000 [7] 12/20 12/21 25/3 52/19 54/12
 100/22 101/9
1,200 [1] 37/12
1,400 [8] 12/22 25/11 25/13 36/7 37/18
 39/24 48/4 49/13
1.16 [3] 84/19 85/6 85/16
10 [3] 16/3 45/7 57/5
10 minutes [1] 20/21
10,000 [4] 28/9 101/5 110/7 116/14
10-minute [2] 20/19 49/19
100 [1] 69/21
100 percent [1] 70/20
1000 [1] 2/2
10010 [1] 3/6
10022 [1] 2/6
10631 [1] 3/2
11 [4] 24/6 38/17 73/5 88/13
1100 [1] 1/22 2/12
11th [1] 2/18
121 [1] 3/24
127 [1] 5/23
129 [1] 5/24
12:00 at [1] 22/2
13 [3] 1/8 6/2 90/2
14 [1] 18/1
15 [10] 6/21 14/19 17/14 38/3 39/7 39/22
 42/2 57/5 101/21 133/4

150 [1] 54/14
1600 [3] 3/18
1603 [1] 3/24
16117 [1] 129/11
16119-2 [1] 129/7
16150-2 [1] 46/25
16150-3 [1] 45/8
16157-1 [3] 46/12 46/13 47/24
16188-1 [1] 38/12
16188-2 [1] 39/5
16188-3 [1] 38/14
17 [2] 17/13 133/4
19 [3] 17/14 40/19 87/14
19106 [1] 1/20
1992 [1] 64/18
1998 [1] 64/18
1999 [1] 64/19
1:30 [1] 89/5

**2**

2,000 [1] 18/7
2.2 [1] 44/7
20 [3] 6/21 18/17 101/19
20,000 [2] 12/20 116/15
200 [2] 54/14 101/15
200-and-some [1] 62/24
2005 [2] 13/21 64/20
2006 [2] 13/21 38/8
2007 [2] 13/21 52/21
2008 [1] 13/21
2009 [6] 14/19 17/12 50/21 50/22 51/6
 56/20
2010 [7] 17/14 18/1 51/24 51/24 52/15
 52/23 100/14
2011 [9] 18/17 38/4 38/5 38/13 39/7
 39/22 56/14 56/20 78/10
2012 [5] 1/8 6/2 87/14 88/13 90/2
2013 [1] 58/7
2047 [3] 1/5 6/7 14/22
220 [1] 3/2
22nd [1] 3/5
23 [22] 13/12 32/7 32/21 32/24 32/25
 32/25 38/13 42/14 51/16 55/8 57/21
 58/18 61/7 78/21 88/8 88/23 109/14
 109/16 122/4 122/8 122/21 133/3
234 [2] 28/6 40/13
2400 [1] 2/22
24th [1] 3/9
25 percent [1] 103/22
26 [3] 37/22 97/15 131/6
2800 [1] 3/21
28401 [1] 2/2
294 [2] 23/4 103/21
29601 [1] 2/19
2nd [1] 3/12

**3**

3.2 [1] 44/9
30,000 [2] 12/21 116/15
300 [1] 56/21
30326 [1] 2/23
31 [3] 27/15 130/16 130/16
3100 [1] 2/12
314 [1] 2/2
32 percent [2] 26/15 26/16
328 [1] 10/18
33131 [1] 3/12
33134 [1] 3/24
33176 [1] 3/2
333 [1] 3/12
3344 [1] 2/22
350 [1] 56/21

37 [2] 40/5 40/7
38 [2] 8/12 40/6
388 [1] 103/21
388 opt-outs [1] 23/4
39 [2] 40/5 40/6
39th [1] 28/6

**4**

40 percent [1] 44/16
406 [1] 4/1
40th [1] 2/9
42 [1] 129/7
425 [1] 2/5
4400 [1] 3/12
46 [4] 35/24 35/25 37/16 45/15

**5**

5,000 [1] 48/2
5,200 [3] 28/8 41/24 46/22
50 [1] 56/25
50 percent [2] 29/15 70/11
50,000 [1] 12/17
500 [2] 1/19 4/1
504 [1] 4/2
51 [2] 3/5 129/7
510 [1] 1/19
589-7778 [1] 4/2

**6**

6-foot-5 [1] 24/7
60 [2] 11/23 101/17
60,000 [1] 12/17
68 [1] 128/2

**7**

70 [1] 22/11
700 [3] 99/1 101/2 102/3
701 [1] 2/9
70112 [1] 3/9
70113 [1] 1/17
70130 [2] 3/15 4/2
70139 [1] 2/9
70163 [2] 1/23 2/13
75 [2] 2/18 22/12
755 [1] 3/15
76ers [1] 24/7
77056 [1] 3/18
7778 [1] 4/2
78 [2] 22/12 37/22

**8**

820 [1] 1/16
88 [2] 3/2 93/3
8:30 [1] 13/12

**9**

90 exhibits [1] 59/2
90 percent [1] 114/8
90405 [1] 3/21
909 [1] 3/9
9:00 [1] 13/13

**A**

ability [7] 24/17 41/12 56/19 81/25 131/4
 133/7 137/12
able [19] 7/24 7/25 11/7 12/24 13/8
 15/22 16/7 16/12 18/13 54/19 54/25 64/3
 70/6 92/3 96/1 96/7 113/14 126/7 133/21
ably [1] 22/3
about [73] 6/21 12/11 12/20 12/20 12/21
 13/15 13/21 15/18 22/17 26/15 27/16
 28/16 34/13 35/2 35/8 35/14 41/18 41/24
 42/1 43/1 45/8 45/10 45/20 46/4 46/8

A

about... [48] 47/2 48/9 49/7 56/14 56/21 58/17 58/18 59/15 61/11 64/11 70/21 70/22 71/10 72/5 72/23 72/24 73/25 74/20 83/9 85/5 91/8 91/14 92/2 92/8 93/3 94/7 99/6 101/4 101/6 103/9 108/15 110/15 111/9 111/10 112/11 113/19 115/21 115/25 119/2 119/16 121/1 124/2 124/23 127/4 129/4 132/12 135/24 136/7
above [1] 137/14
above-entitled [1] 137/14
absent [2] 33/4 78/1
absolute [2] 107/1 107/9
absolutely [8] 31/16 62/1 84/14 85/16 86/4 86/18 111/25 113/11
absorber [1] 60/22
absorbs [1] 61/1
absurd [2] 34/21 46/7
abundantly [1] 95/16
abuse [2] 62/14 62/15
accept [2] 27/9 36/22
accepted [1] 26/21
accessed [1] 57/4
accessible [1] 15/20
accident [1] 81/19
accommodate [1] 20/14
accordance [2] 25/7 32/13
according [2] 30/16 88/4
account [2] 59/7 84/3
accused [1] 42/15
achieve [4] 26/12 66/21 69/10 76/9
achieved [2] 69/9 130/18
acknowledge [4] 11/13 11/18 11/22 71/17
acknowledged [1] 26/20
acquire [1] 64/19
across [3] 43/12 49/23 110/4
acted [3] 11/24 41/22 96/24
acting [1] 110/5
action [22] 19/2 43/12 45/19 47/19 56/13 63/19 67/7 67/18 67/20 108/18 108/19 108/21 109/11 109/12 110/11 110/12 111/6 112/1 112/3 113/19 114/18 129/12
actions [6] 108/18 109/5 111/11 113/9 114/25 115/21
active [2] 28/2 75/23
activities [2] 64/20 65/24
activity [2] 58/7 64/17
acts [2] 64/9 67/15
actual [2] 94/20 107/16
actually [16] 16/8 16/11 22/12 31/7 40/6 41/7 52/8 58/22 62/1 69/4 70/8 96/16 96/25 97/1 111/20 133/15
adamant [1] 130/10
add [3] 12/8 79/24 80/2
addition [13] 6/19 7/1 18/22 27/18 30/2 30/17 31/13 70/7 92/21 101/25 102/3 106/3 131/19
additional [14] 10/12 19/2 26/22 30/3 31/10 37/11 70/16 73/15 92/21 110/20 119/16 127/13 127/14 133/1
additionally [1] 98/14
address [18] 6/18 8/6 35/10 35/11 70/19 73/23 78/7 80/3 81/7 82/20 104/23 110/19 111/1 113/18 129/3 129/16 129/19 133/4
addressed [4] 73/7 129/9 129/14 135/1
addresses [3] 108/13 109/25 129/12
addressing [1] 87/12
adduced [1] 17/25
Adelman [2] 3/20 124/25
adequate [6] 19/12 50/16 53/1 57/21

88/21 108/14
adequately [1] 128/23
adjourned [1] 137/6
admittedly [1] 59/19
adopt [1] 73/24
advance [2] 44/11 118/17
advanced [2] 28/3 85/9
advancement [1] 85/14
advantage [1] 97/17
advantages [1] 97/24
adversarial [1] 76/25
adversaries [1] 91/11
adversary's [1] 59/10
adverse [1] 124/7
advocating [1] 90/22
affected [3] 34/23 88/6 118/8
affidavit [3] 44/8 64/22 67/4
affidavits [1] 31/3
affiliated [1] 66/15
affirm [1] 114/22
afforded [2] 52/25 53/10
afraid [2] 121/21 123/14
after [44] 7/13 14/4 16/7 17/20 19/7 19/22 25/2 25/2 25/3 25/3 25/7 32/9 35/2 36/16 37/8 39/6 39/13 41/9 44/14 44/15 45/17 46/8 46/11 46/13 48/5 50/18 51/21 54/3 54/15 67/1 72/20 75/11 77/2 92/13 95/11 102/4 109/22 102/10 105/21 108/24 114/21 117/11 127/19 130/16
aftermath [1] 14/1
afternoon [7] 80/1 90/1 90/4 90/8 95/7 117/19 124/24
again [52] 40/4 43/22 43/23 47/24 53/13 57/13 57/20 58/15 65/22 91/18 94/1 99/25 108/8 120/13 120/16 125/9
against [32] 11/23 14/13 17/16 27/21 27/22 61/20 66/21 66/25 71/9 78/18 83/3 90/13 92/17 92/20 93/5 96/17 112/6 112/20 118/16 118/20 119/11 119/13 120/22 121/2 122/3 123/3 123/17 123/18 123/22 124/4 132/6 132/7
agencies [2] 70/24 106/9
agency [3] 65/21 105/17 105/22
agenda [3] 4/8 4/8 5/10 5/12
agent [1] 64/25
ago [10] 8/3 34/17 35/24 35/25 45/15 56/14 106/12 121/20 122/14 128/1
agree [11] 48/6 71/13 71/14 71/15 71/16 83/9 119/11 120/15 127/4 132/14 134/22
agreed [4] 17/13 29/4 39/25 132/1
agreement [30] 18/18 18/19 31/7 33/17 34/4 42/25 55/14 55/15 57/24 70/15 73/15 73/17 73/20 78/11 79/16 81/10 84/19 85/6 87/15 88/4 90/22 96/8 100/20 103/24 120/21 120/23 121/10 130/15 133/12 133/19
agreements [6] 18/24 19/3 19/8 25/11 82/16 122/4
agrees [2] 122/25 136/19
ahead [1] 134/9
aided [1] 4/6
air [1] 14/8
air-conditioning [1] 14/8
Alabama [1] 33/9
Alhambra [1] 3/24
aligned [1] 101/12
all [147]
allegation [1] 42/17
allegations [1] 51/18
allege [5] 24/2 24/2 28/8 42/18 46/6
alleged [3] 13/18 35/5 96/18
alleges [1] 45/25
alleging [2] 24/5 24/7

allocation [5] 65/16 70/10 103/4 107/3
allow [5] 19/15 86/19 86/19 100/15 128/10
allowed [6] 21/14 54/7 76/8 76/8 102/5 115/15
allowing [2] 9/21 18/10
allows [6] 10/6 10/6 76/11 85/6 108/20 122/4
almost [8] 11/24 18/25 53/4 67/25 69/16 74/13 77/23 103/3
alone [2] 101/21 112/20
along [3] 13/24 32/10 116/16
already [9] 11/2 56/12 57/9 58/9 70/20 87/21 88/18 91/8 91/14
also [36] 7/19 7/21 11/18 14/9 15/23 18/8 20/13 22/18 22/23 25/11 29/1 29/13 29/17 29/24 35/15 39/25 40/11 41/6 41/16 43/21 51/24 57/24 58/2 68/17 68/24 74/16 90/9 94/4 96/3 97/13 104/2 111/7 118/4 128/5 129/7 129/14
alternative [4] 55/24 90/24 92/13 94/13
although [4] 36/17 46/10 87/17 103/6
always [2] 69/4 130/2
am [12] 7/12 15/13 19/18 21/16 24/7 39/23 68/2 75/6 75/11 80/1 104/20 119/2
amass [1] 96/1
ambiguities [1] 73/14
Amchem [11] 34/14 35/11 35/11 35/12 36/6 48/16 48/16 48/17 48/19 48/20 111/21
amended [4] 121/15 123/19 124/6 128/1
amendment [30] 78/12 78/13 78/14 78/18 78/21 78/23 79/2 79/5 79/8 79/11 79/12 79/20 121/12 121/19 122/10 124/13 124/20 129/20 129/23 129/23 132/13 132/14 132/25 133/5 133/11 133/17 135/12 135/12 135/18 136/15
amendments [2] 78/11 117/11
American [3] 3/14 106/6 117/7
Amerson [1] 73/8
amongst [4] 58/15 93/13 96/6 104/3
amount [8] 30/8 55/11 76/21 86/5 91/17 99/16 113/14 134/18
ample [1] 134/18
anachronism [1] 61/12
analysis [1] 62/4
analyzed [1] 72/21
and/or [1] 102/16
announced [4] 56/14 109/1 109/9 111/12
anomaly [2] 61/12 66/5
another [17] 9/12 20/9 20/15 21/2 23/24 24/1 29/7 35/8 44/5 52/15 74/6 85/15 90/10 93/16 116/18 120/5 130/17
answer [2] 108/15 128/16
anti [3] 80/12 80/19 80/23
anti-assignment [3] 80/12 80/19 80/23
anticompetitive [1] 64/9
antitrust [3] 64/9 64/15 64/22
antitrust/anticompetitive [1] 64/9
any [74] 8/2 9/14 15/18 15/24 19/15 20/1 20/2 20/2 20/14 20/25 26/15 26/16 27/4 30/17 31/14 35/9 38/19 39/19 44/2 44/11 45/23 46/13 46/15 46/16 46/19 47/19 47/19 58/8 61/7 61/23 62/8 63/1 65/22 66/23 71/2 74/2 74/12 74/14 74/19 81/16 82/3 82/15 96/11 98/15 99/12 100/11 102/9 102/15 103/11 106/17 107/21 108/2 108/15 109/4 110/1 110/19 112/15 115/9 118/20 120/9 122/22 123/12 123/20 125/8 126/25 126/25 127/13 128/5 131/9 131/10 133/6 135/5 135/6 136/2

**A**

anybody [4]  27/17 94/24 112/2 117/25
anyone [5]  8/13 60/21 71/12 116/24 124/22
anyplace [1]  116/12
anything [17]  12/8 30/19 33/19 34/13 38/23 42/21 45/3 46/4 53/15 59/24 65/6 87/9 95/20 126/19 127/21 129/1 135/18
anyway [2]  95/12 103/19
anywhere [2]  46/15 46/19
apart [1]  90/12
apologize [1]  20/25
Apparently [1]  90/11
appeal [3]  8/20 17/3 66/11
appeals [3]  8/21 58/9 67/2
appearance [2]  6/10 17/12
Appearances [1]  1/14
appears [1]  49/8
appellate [1]  83/13
appliances [1]  14/7
applies [4]  56/24 91/15 135/1 137/2
appointed [3]  11/14 12/1 100/16
appointing [1]  15/5
appoints [1]  108/20
appreciate [6]  8/11 12/1 94/14 100/9 115/14 126/14
approach [2]  10/14 87/2
appropriate [13]  27/4 71/20 72/12 78/23 79/1 79/3 84/25 108/9 113/15 114/3 133/16 133/18 135/15
appropriately [1]  85/10
approval [18]  9/4 9/8 10/6 10/10 11/17 11/17 11/20 19/8 30/24 32/15 32/24 53/8 54/18 55/1 73/21 88/14 98/18 108/8
approvals [1]  56/17
approve [11]  79/19 80/24 88/22 90/22 94/14 107/25 108/9 117/22 118/25 122/19 123/5
approved [6]  53/21 53/23 86/14 108/14 123/11 124/7
approves [2]  84/9 119/9
approving [3]  92/8 92/9 122/5
approximately [1]  103/22
April [1]  78/10
arbiter [2]  58/8 58/12
Arch [5]  80/7 81/12 85/13 130/8 131/1
architect [1]  68/18
are [304]
area [2]  9/17 14/2
areas [1]  60/18
Areaux [1]  2/11
aren't [2]  101/11 133/18
argue [8]  32/11 32/12 32/17 32/17 32/18 72/5 72/11 119/24
argument [2]  49/17 80/3
arguments [2]  91/8 109/19
arises [1]  13/18
arm's [2]  72/1 76/16
arm's-length [2]  72/1 76/16
arms [1]  50/17
arms-length [1]  50/17
Arnie [4]  37/2 37/9 68/16 72/16
ARNOLD [4]  1/19 8/22 42/1 115/6
around [11]  21/11 63/9 63/17 76/21 99/2 99/18 100/2 100/4 101/17 116/12 122/2
arrangement [2]  57/14 81/24
arranges [1]  55/24
as [205]
asbestos [1]  35/12
aside [4]  30/8 102/2 107/3 107/6
ask [13]  9/8 9/9 10/13 22/25 40/3 74/8 74/8 80/24 81/10 84/25 86/18 86/22

96/11
asked [10]  40/11 61/15 96/23 122/8 123/5 128/24 129/4
asking [3]  79/19 81/14 112/9
aspect [12]  6/22 29/17 30/5 32/23 51/4 52/15 53/25 54/20 57/19 109/21 111/4 111/14
aspects [8]  28/19 29/11 29/18 35/4 51/17 53/12 56/10 58/21
assert [2]  66/12 135/14
assess [1]  124/4
assessing [1]  64/15
assessments [1]  27/13
assets [10]  62/16 62/19 63/20 65/5 92/14 95/17 95/19 98/16 112/23 112/23
assign [2]  97/12 97/13
assigned [3]  77/18 118/11 119/10
assignment [17]  80/8 80/11 80/12 80/19 80/20 80/21 80/23 80/24 118/9 119/7 119/9 135/2 135/3 135/4 135/5 135/6 135/7
assignments [2]  80/17 135/3
associated [3]  20/3 20/12 96/19
Association [1]  106/7
assume [1]  95/4
Assuming [1]  67/6
assure [2]  75/5 134/18
at [113]  6/22 7/24 9/17 11/6 13/8 13/12 13/13 16/2 16/14 18/14 22/2 22/2 22/22 22/25 23/24 24/6 26/14 26/17 27/3 32/23 33/3 33/4 33/6 33/8 33/23 33/24 38/6 40/7 40/10 40/20 40/21 40/23 42/24 47/9 48/3 49/3 51/19 51/23 51/24 52/16 58/10 63/2 64/20 65/14 65/17 67/22 68/9 68/20 68/25 72/2 72/3 72/3 72/4 72/7 72/12 72/13 74/9 74/23 75/16 77/16 78/25 82/16 83/13 86/8 86/25 94/6 94/7 95/24 97/11 97/17 97/19 98/2 98/3 98/4 100/10 100/16 101/13 101/14 102/6 102/12 102/13 105/6 109/10 110/14 111/4 114/12 114/14 115/20 116/14 116/18 117/21 118/4 118/8 123/10 123/15 123/21 124/8 124/9 125/25 128/21 129/16 131/16 132/10 132/11 133/10 133/10 133/16 133/23 135/15 135/20 136/1
Atlanta [1]  2/23
atmosphere [1]  29/1
attacked [1]  104/20
attempt [4]  32/10 33/15 57/5 122/2
attempted [2]  34/6 35/15
attempting [3]  43/13 71/19 135/14
attended [1]  15/4
attest [1]  46/14
attitude [1]  10/9
attorney [4]  33/19 37/13 39/14 44/25
attorneys [4]  21/11 30/18 30/22 94/6
attorneys' [11]  30/17 30/20 30/23 45/4 55/12 55/13 55/16 56/3 69/23 88/12 97/2
attracted [1]  13/1
attractive [1]  65/4
attributable [1]  70/11
auspices [1]  96/5
authorities [2]  38/10 125/20
authority [2]  39/18 131/2
available [12]  18/15 38/6 49/20 70/19 90/24 92/11 92/16 98/10 98/11 114/7 114/15 132/3
Avenue [4]  1/16 2/5 3/5 3/12
average [1]  112/12
averments [1]  22/20
averred [1]  64/8
avoid [1]  110/25

avoided [1]  98/12
avoiding [1]  98/10
avoids [1]  91/1
awardable [1]  96/21
awarded [1]  96/21
awards [1]  58/6
aware [8]  10/18 75/8 78/9 95/18 101/19 116/1 125/3 127/21
away [9]  10/20 31/13 31/14 31/15 34/5 34/23 118/24 122/25 123/12

**B**

Babst [1]  131/25
back [27]  18/12 20/21 24/17 24/18 24/23 27/3 36/16 41/3 49/19 52/5 53/19 54/4 56/2 67/17 67/17 72/3 72/3 72/4 74/25 86/7 87/1 88/18 89/4 93/4 94/5 96/20 103/24
background [2]  13/17 21/4
bad [5]  53/18 55/9 59/23 66/1 131/19
Bailey [2]  7/18 7/18
baking [1]  60/25
Bandas [40]  23/9 23/10 23/14 23/23 24/1 32/3 33/2 33/22 34/3 34/25 35/3 36/11 36/23 37/5 41/25 42/15 43/4 43/6 43/8 43/10 43/15 43/18 43/22 43/23 44/14 45/10 45/13 46/12 47/1 47/5 47/5 47/7 47/7 47/15 48/25 104/17 104/19 105/4 126/16 126/17
Bandas's [4]  37/24 42/24 47/5 48/15
bankruptcy [5]  27/22 92/15 93/18 102/16 134/7
banks [1]  63/11
banner [54]  2/20 3/1 8/16 19/5 22/4 25/2 26/2 27/18 27/20 27/21 27/22 27/23 27/24 33/6 57/10 57/11 57/17 75/25 79/23 81/2 87/1 89/1 90/7 90/14 90/15 90/16 90/19 90/20 90/20 90/24 90/25 91/15 91/24 92/3 92/13 92/17 92/20 92/25 93/1 93/5 94/8 95/8 95/16 96/4 96/9 96/18 98/6 98/14 98/17 99/13 106/16 107/2 109/6 137/1
Banner's [4]  25/24 91/25 95/19 98/15
Banner-related [1]  90/24
bar [1]  21/16
bargained [1]  81/23
Barrasso [1]  3/7
Barrios [1]  11/18
based [10]  16/10 16/20 17/5 17/25 18/4 41/10 67/15 107/23 124/19 132/15
baseless [1]  86/18
basic [2]  52/11 122/21
basically [4]  33/8 57/13 57/22 95/18
basis [1]  24/8
BASS [2]  3/11 113/22
Batman [12]  33/14 33/14 45/9 45/9 45/12 45/13 47/1 47/2 47/16 47/16 48/11 48/11
Batman's [1]  45/11
batting [2]  65/3 68/15
be [150]
Beach [2]  10/19 125/5
bear [1]  7/24
bearing [1]  60/7
Beattie [1]  2/18
became [1]  61/6
because [82]  7/23 12/19 12/25 13/7 23/5 23/6 26/3 26/16 27/19 28/1 28/2 28/18 30/22 30/25 31/11 33/19 33/25 35/5 42/10 42/20 48/23 51/14 56/11 61/4 61/14 63/15 65/4 66/13 67/2 67/19 68/14 69/11 69/13 69/22 72/3 80/12 81/14 82/10 83/5 83/22 86/1 86/14 86/19 91/20 92/9 97/6 98/1 101/22 101/24 102/22

B

because... [32]  104/21 109/16 111/10
112/16 112/22 113/13 115/7 116/8 118/1
118/7 118/22 120/4 122/15 123/7 123/14
123/18 128/15 129/12 129/17 129/20
130/10 131/10 131/17 132/13 132/19
132/21 133/23 134/2 134/12 134/16
134/24 136/16
become [5]  33/2 48/13 58/12 95/15
119/4
becomes [1]  110/16
becoming [1]  32/7
bed [2]  102/2 110/13
been [112]  7/6 7/11 7/21 7/24 7/25 8/12
8/24 9/16 9/19 9/22 9/24 10/2 10/3 10/19
10/20 11/1 11/1 11/2 11/5 11/9 11/23
12/4 14/24 14/25 19/9 19/10 19/20 21/13
21/14 21/17 21/20 21/21 23/18 27/11
27/12 29/22 32/25 32/25 34/9 36/20
37/16 37/17 42/10 43/23 50/1 51/22
52/21 52/24 52/25 53/7 56/7 56/15 57/16
58/10 58/14 60/22 61/3 61/5 61/7 62/25
64/8 66/2 67/25 70/21 73/10 75/14 75/15
75/19 76/16 76/18 76/20 76/24 77/1 83/3
83/12 87/21 88/8 90/12 90/18 90/20 92/2
93/12 95/3 96/7 97/5 100/4 100/8 101/19
102/6 104/19 105/1 105/9 105/14 106/11
106/13 109/18 109/19 111/16 114/5
115/6 115/9 119/5 120/5 120/8 121/14
121/14 124/1 124/3 124/16 126/4 130/2
131/17
before [35]  1/11 6/24 10/22 14/25 15/18
17/2 18/11 24/10 32/1 34/6 34/19 35/1
35/25 37/4 38/3 39/3 40/24 41/20 45/21
50/22 60/6 72/18 73/6 73/9 75/6 88/15
88/16 108/25 110/18 112/8 117/2 120/25
132/10 136/16 136/20
beforehand [1]  130/1
began [6]  14/5 14/12 18/14 39/16 100/18
130/17
begin [5]  40/24 52/4 54/12 67/7 76/8
beginning [7]  24/16 24/21 51/24 51/24
95/14 114/4 130/16
begun [2]  56/22 76/1
behalf [23]  44/15 50/7 58/24 68/13 74/1
75/5 76/6 90/14 90/16 90/17 92/24 95/8
98/7 98/22 113/23 117/6 117/20 123/4
125/1 125/4 126/3 129/2 129/8
behind [6]  66/13 68/3 69/15 70/4 94/22
120/3
being [26]  18/9 23/4 35/8 52/22 62/9
73/2 76/15 76/17 79/16 85/25 102/19
104/6 105/23 107/15 107/21 107/23
116/1 116/18 118/8 118/11 118/19
119/10 119/20 121/3 122/18 134/20
believe [40]  22/13 28/9 28/18 31/1 34/20
36/21 70/24 71/2 71/4 73/25 74/11 78/22
92/10 93/14 93/20 103/16 103/23 104/14
104/21 104/22 105/2 105/5 105/5 105/25
106/20 107/24 108/1 108/8 108/12
108/13 109/25 110/11 114/1 114/2 115/4
119/16 119/21 125/19 128/22 134/16
believed [1]  91/11
believer [1]  15/14
bellwether [10]  16/3 17/15 51/23 102/10
108/23 122/11 123/25 124/2 124/12
131/15
belongs [1]  125/22
belt [1]  45/17
belts [1]  31/17
bench [2]  7/12 87/8
benchmark [2]  26/13 26/14

beneficial [1]  133/5
benefit [25]  21/25 49/73 73/73 91/21
92/25 118/20 132/16 132/23
benefiting [1]  44/8
benefits [2]  55/16 133/8
bequest [1]  112/21
Berman [1]  1/18
best [21]  38/6 90/23 91/12 91/23 92/11
93/25 97/7 114/14 125/14 126/4 137/12
bet [1]  133/24
better [2]  21/2 55/8
between [14]  10/23 50/18 52/11 56/20
57/9 62/6 63/7 65/8 98/13 100/25 104/4
104/5 120/15 120/20
beyond [2]  102/22 134/2
big [7]  53/25 86/8 92/25 99/13 103/6
105/4 112/3
biggest [1]  63/22
billion [1]  25/23
bind [2]  132/21 135/22
binding [14]  78/18 79/12 118/16 119/11
119/13 120/22 122/3 123/3 123/17
123/18 123/22 133/11 133/17 135/24
bit [7]  29/19 35/2 80/3 91/20 112/7 120/3
126/9
blackening [1]  14/6
blades [2]  46/3 46/6
blessed [1]  23/21
blocks [3]  50/24 51/10 99/22
blood [3]  48/21 48/22 95/23
Blossman [1]  2/11
blue [2]  35/25 36/1
board [9]  60/25 110/4 114/8 114/9
119/18 119/19 120/5 120/9 120/10
Bob [1]  11/14
bodily [1]  104/21
bona [2]  23/14 32/20
bond [3]  44/5 67/19 67/22
boom [1]  14/2
Boston [1]  2/16
both [16]  11/6 13/1 14/13 15/8 41/23
50/12 50/13 51/9 56/8 58/16 94/8 98/9
102/16 106/8 125/18 129/24
bothered [2]  56/2 57/13
bottom [2]  70/23 135/20
bought [4]  61/21 63/4 76/6 112/13
bow [1]  22/8
bowed [1]  65/20
Bowl [1]  52/8
Boyd [1]  2/17
Boynton [1]  10/19
Boynton Beach [1]  10/19
BP [1]  32/3
brand [1]  74/25
brand-new [1]  74/25
Brandao [3]  21/18 59/1 129/5
Breach [1]  122/14
Breaches [1]  80/16
break [3]  20/20 49/19 87/1
Breit [1]  9/5
brethren [1]  102/14
bricks [2]  53/17 53/18
bridge [1]  111/18
brief [20]  22/19 22/19 58/25 73/23 75/6
78/22 79/2 83/14 85/13 87/12 98/8 106/4
109/25 114/20 119/14 125/23 129/6
129/7 129/10 129/14
briefed [1]  74/18
briefing [10]  19/17 80/14 80/22 110/20
113/16 120/13 126/17 127/13 127/14
128/10
briefly [7]  76/14 78/8 81/7 84/16 97/3
119/2 125/16

briefs [9]  19/18 28/23 29/20 105/2 105/3
105/4 131/24 137/14
bright [1]  49/1
bring [7]  7/24 67/18 92/4 93/1 99/9
103/10 130/4
bringing [1]  126/5
brings [1]  123/24
broader [1]  18/16
brought [2]  21/3 26/23
Brown [1]  43/9
bucket [1]  83/18
builder [6]  29/22 99/22 100/12 102/20
112/20 112/22
builders [3]  3/11 8/17 9/3 14/15 19/6
25/3 26/9 58/2 70/12 99/1 99/18 99/19
99/19 101/7 101/10 102/21 113/17
113/20 113/24 114/2 114/12
builders' [1]  113/23
building [8]  2/8 2/11 13/25 17/6 19/4
50/23 51/10 65/12
buildings [2]  13/20 14/4
Built [1]  63/6
bundled [1]  109/5
burden [1]  83/15
burdening [1]  58/11
Burr [1]  2/8
Burt [1]  47/16
bus [1]  121/16
business [5]  46/10 66/22 77/9 102/16
102/22
businesses [1]  101/8
busyness [1]  117/13
but [111]  8/6 9/9 9/10 12/17 13/5 19/14
21/20 23/16 24/22 24/23 28/23 29/1
29/11 29/17 31/8 31/14 31/17 31/23
33/11 34/14 35/20 35/25 36/14 38/25
39/25 40/6 41/23 42/1 42/3 42/9 43/7
47/21 49/1 50/17 52/4 56/6 58/10 59/25
61/6 61/14 67/11 68/6 68/25 71/6 71/17
72/3 75/12 75/19 76/14 78/12 82/17
82/24 83/10 83/22 91/6 92/24 94/17 95/4
95/17 97/13 97/25 98/14 99/12 99/15
99/21 101/1 102/22 104/2 110/20 111/1
111/9 111/14 112/22 112/24 114/1 115/5
115/9 115/16 115/24 116/3 116/19
117/12 118/2 118/8 118/11 119/12
120/21 121/17 122/5 122/17 123/12
124/6 127/5 127/9 127/16 127/21 127/21
128/16 129/15 132/7 132/10 132/11
133/4 133/14 134/16 134/25 135/6 135/7
135/22 136/9 136/17
Butler [1]  21/18
buy [1]  33/20
buyers [1]  65/20
buying [1]  47/11
Byrne [2]  22/5 41/7

C

cadger [1]  48/17
calamity [1]  81/19
California [2]  3/21 43/5
call [12]  6/6 8/22 16/21 36/13 45/14
63/13 65/18 95/10 99/3 99/13 99/19
103/9
called [9]  8/18 36/13 40/2 54/21 82/12
84/3 96/17 100/12 116/10
calls [2]  40/1 51/11
came [9]  24/13 44/17 60/8 65/13 75/6
90/16 91/11 96/20 115/12
camp [1]  99/22
can [53]  11/4 15/23 18/9 26/22 29/9
29/21 29/23 29/24 30/13 30/23 31/15
35/7 41/1 41/5 42/7 45/2 52/7 53/10

C

can... [35] 58/18 59/20 61/9 65/16 65/16 66/14 72/11 78/25 79/12 84/5 84/22 84/23 84/23 84/24 87/5 91/2 92/24 96/8 97/11 104/10 107/6 107/6 110/1 110/12 115/14 119/11 120/14 122/7 123/22 126/9 127/21 128/23 131/24 132/2 134/25
can't [20] 32/11 32/12 32/16 32/17 32/18 32/20 32/21 33/19 34/7 34/20 37/25 41/23 42/21 46/14 46/19 71/15 71/16 72/1 90/11 95/23
candidate [1] 65/4
cannot [1] 62/4
cap [1] 30/8
capacity [2] 54/14 54/15
capital [1] 63/6
capped [2] 29/6 29/7
captain [5] 48/11 48/11 48/14 69/3 128/21
Captain Marvel [3] 48/11 48/11 48/14 69/3
capture [1] 56/11
car [4] 36/1 36/1 36/1 36/1
card [2] 62/19 62/23
care [5] 30/7 36/12 60/4 70/8 113/9
career [1] 7/12
Carolina [4] 2/2 2/19 43/16 44/3
carrier [1] 132/21
carrier's [1] 132/22
carriers [10] 21/22 22/6 81/16 85/7 85/9 86/15 96/1 104/4 120/15 120/17
carries [1] 93/21
Carver [1] 2/11
case [135] 6/6 6/23 7/6 7/25 12/12 12/19 12/20 12/22 12/22 14/18 17/15 17/23 18/5 18/8 18/13 23/17 24/4 24/12 24/16 25/8 26/14 27/24 28/14 28/20 29/11 29/17 29/18 30/21 34/25 35/4 35/9 35/12 35/14 35/20 35/21 35/23 36/5 37/13 37/14 37/17 40/10 40/25 42/13 42/23 44/1 44/5 44/17 44/19 46/4 48/20 49/8 49/11 50/21 51/4 51/5 51/16 51/17 51/18 52/1 52/3 52/3 55/5 59/8 59/8 59/9 59/10 59/13 59/16 59/21 59/22 59/23 59/23 61/2 61/6 61/7 61/18 61/25 62/3 62/11 62/13 64/7 65/22 72/11 72/14 72/19 74/16 77/22 82/16 83/1 83/14 83/20 84/7 85/10 91/9 91/23 94/16 96/14 96/14 96/15 96/17 96/17 101/5 101/12 103/6 106/13 106/22 107/13 108/4 108/4 108/5 108/5 108/24 109/3 109/6 111/14 111/19 111/21 112/2 112/12 112/22 113/1 113/3 113/10 114/11 114/23 115/11 115/17 115/24 130/22 130/25 131/2 131/21 132/1 132/4 133/21
cases [53] 1/8 6/25 7/2 9/18 9/19 9/25 10/2 10/4 12/12 12/16 13/1 13/7 13/10 14/20 14/25 15/16 17/9 19/3 21/12 25/12 26/23 35/1 36/8 56/23 59/24 60/23 67/25 73/13 80/16 84/6 96/15 97/12 97/14 97/14 98/2 98/3 101/20 102/21 102/25 106/11 106/15 106/15 107/13 110/10 110/11 110/11 111/10 112/24 113/4 115/2 115/14 122/14 130/21
cash [3] 29/5 55/5 63/10
categories [1] 23/8
category [1] 110/2
Cathode [1] 43/5
causally [1] 38/25
causation [1] 107/7
cause [4] 31/15 60/6 120/10 134/6

caused [1] 81/19
CD [3] 127/8 138/3
CD [1] 127/8
CDC [1] 38/5
CDs [1] 59/2
CDW [5] 45/11 45/25 45/25 47/6 47/7
Center [3] 38/15 106/5 106/5
Centers [3] 38/10 38/16 70/25 105/15 105/21
cents [1] 69/21
cert [1] 6/19
certain [10] 17/18 64/10 65/9 78/15 80/9 90/15 92/9 96/23 118/15 134/4
certainly [10] 32/16 32/19 62/10 71/12 71/25 116/25 123/12 126/19 128/2 136/17
certainty [1] 92/18
certificate [4] 54/2 54/3 56/1 137/8
certification [11] 19/11 108/22 108/23 109/14 109/21 109/22 109/23 109/24 110/2 129/9 129/12
certified [4] 63/10 109/17 109/18 109/18
certify [3] 9/8 112/8 137/11
chain [5] 18/23 18/25 51/8 91/1 99/12
chairs [1] 20/18
challenge [3] 12/19 45/19 71/6
challenged [2] 110/21 110/23
challenges [4] 17/1 31/15 44/16 44/17
challenging [1] 12/24
chambers [2] 127/8 128/23
chance [4] 103/12 113/21 118/21 124/18
chances [1] 103/13
change [2] 84/3 103/24
changed [1] 32/24
changes [2] 77/18 95/4
channel [1] 65/10
Chapa [1] 45/11
characterized [1] 49/7
charge [1] 30/23
charged [2] 39/18 44/25
Charlene [1] 40/17
Chartis [8] 3/4 22/5 41/6 92/23 92/24 98/8 98/10 98/17
chased [1] 30/4
chasing [2] 66/15 66/16
check [1] 55/5
checking [1] 10/19
child [1] 40/17
China [14] 13/23 39/12 60/8 60/15 60/15 61/13 61/15 61/21 62/8 63/5 63/17 63/21 65/6 66/3
CHINESE [58] 1/5 6/7 13/20 14/3 14/14 14/21 15/8 16/20 17/6 17/8 17/18 18/19 18/21 23/19 23/22 24/2 24/3 24/13 25/12 25/14 28/10 38/1 46/19 47/2 47/8 47/10 47/11 51/6 51/19 54/2 54/3 61/5 61/19 61/20 61/22 62/5 63/8 63/11 63/13 63/14 63/15 65/20 66/16 96/15 96/19 97/8 99/15 101/24 103/9 106/18 106/21 108/9 110/5 112/18 116/7 119/17 120/10 Chinese-based [1] 16/20
CHINESE-MANUFACTURED [3] 1/5 13/20 14/21
chisels [1] 24/4
Choate [1] 2/14
choice [1] 29/21
choose [1] 66/12
chose [3] 26/13 99/20 103/18
chosen [1] 102/1
Chris [1] 128/20
Christi [2] 34/10 43/8
Christopher [2] 23/9 43/5
circuit [10] 8/21 17/3 25/8 32/5 32/13

43/4 48/18 48/18 66/11 122/13
circumstances [1] 121/22
circumstantial [5] 42/16 61/6 79/21 103/17 132/20
circumvent [1] 42/25
citations [1] 83/15
cited [4] 83/14 106/4 107/13 108/6
citizens [3] 116/2 116/18 116/19
claim [35] 34/13 69/22 71/5 71/8 74/12 83/2 84/23 84/24 85/18 86/3 112/6 122/12 122/12 122/12 135/7
claimants [4] 93/5 101/6 116/14 120/7
claimed [2] 38/17 46/11
claiming [2] 92/17 93/14
claims [45] 12/14 17/16 18/9 18/19 18/21 30/14 37/19 56/12 57/7 57/17 57/24 72/25 74/13 81/16 82/13 84/4 84/17 84/21 85/3 85/4 86/1 96/22 97/8 105/5 107/17 107/10 107/14 107/16 107/16 107/17 107/18 107/20 107/23 109/4 109/4 109/16 112/20 115/2 119/22 120/10 121/2 124/9 130/9 134/4
clarification [2] 128/8 136/25
clarify [1] 117/3
class [91] 6/19 9/9 9/10 18/16 18/18 18/24 19/2 19/11 21/10 23/25 24/5 24/6 25/10 28/2 31/14 32/22 33/5 35/14 35/17 42/17 43/12 43/14 44/18 44/19 45/19 48/6 53/1 53/11 53/11 56/13 57/17 63/19 67/21 68/10 69/24 71/10 72/23 73/18 78/1 79/15 79/16 81/16 93/23 93/23 94/11 103/20 104/2 108/7 108/18 108/18 109/18 108/21 109/5 109/11 109/12 109/17 109/18 109/18 110/3 110/11 110/12 110/22 111/6 111/10 112/1 112/3 112/8 113/8 113/19 114/18 114/25 115/21 118/6 122/9 122/11 122/15 122/16 122/20 124/12 124/15 129/4 129/9 129/12 132/13 132/17 132/23 132/25 133/1 133/5 135/11 135/12
class's [1] 133/6
classwide [1] 117/23
clause [6] 31/13 80/12 80/19 80/19 80/22 80/23
clauses [1] 26/8
Clausewitz [1] 68/3
clean [2] 54/4 63/9
cleanest [1] 22/24
clear [14] 27/1 30/17 42/4 80/15 81/20 84/19 85/16 86/4 95/16 111/9 122/16 124/2 130/5 136/14
clearer [1] 83/4
clearly [8] 43/18 65/23 76/16 76/18 102/17 110/2 110/10 122/18
clerk [2] 21/19 22/24
clerks [1] 21/17
client [12] 33/20 33/21 36/12 46/21 46/23 48/3 50/18 54/24 55/14 60/16 68/6 117/16
client's [1] 53/22
clients [37] 13/5 23/15 23/16 23/17 23/23 24/23 25/16 27/2 27/2 28/25 29/4 31/17 31/18 31/19 31/22 35/17 37/18 37/19 37/24 39/24 40/17 41/23 41/24 42/6 42/7 42/7 42/10 44/11 44/15 47/20 48/21 49/13 53/7 69/14 70/4 91/12 130/10
climate [2] 60/18 60/19
close [4] 22/25 48/23 53/16 54/17
closely [2] 7/4 7/20
closer [1] 35/22
Clothes [1] 49/2
co [1] 43/19
co-counsel [1] 43/19
Coast [1] 13/24

C

cocked [2] 61/17 61/17
Coe [1] 3/17
cog [1] 10/7
Cold [2] 61/13 61/14
Cold War [1] 61/13
collaborative [1] 7/23
colleague [1] 61/8
colleagues [5] 27/16 27/24 28/3 41/7 50/18
collectively [1] 16/23
collusion [7] 32/12 43/21 76/15 88/22 91/10 100/11 111/14
combination [1] 11/8
combined [1] 28/10
come [30] 18/9 20/20 29/4 30/6 32/10 34/5 37/7 45/12 45/13 49/19 64/1 67/17 67/17 67/22 69/23 70/17 86/2 86/13 87/1 89/4 91/7 91/24 96/1 100/16 103/7 103/24 104/8 107/4 107/6 116/10
comes [8] 35/21 45/11 54/5 54/6 55/25 64/7 119/25 120/5
comfort [1] 7/8
coming [4] 23/6 37/10 37/11 125/15
comment [2] 12/11 125/16
comments [5] 13/15 19/20 21/7 56/6 126/21
commerce [1] 18/23
commercial [3] 57/21 61/17 101/8
Commission [10] 38/5 38/9 38/15 39/7 39/9 39/11 39/15 39/18 39/22 40/2
committed [1] 53/7
committee [13] 6/14 11/25 15/6 18/3 21/11 24/24 27/13 31/9 39/10 40/23 50/19 52/12 113/23
committees [1] 108/20
common [2] 25/10 62/10
commonly [1] 63/1
communication [1] 15/7
communicator [1] 11/19
community [1] 107/1
companies [22] 25/4 62/6 62/8 62/9 62/10 63/1 63/2 63/8 63/15 63/16 63/24 64/5 64/11 64/25 65/15 66/7 66/18 67/1 99/7 99/8 99/15 116/8
company [27] 3/14 3/17 24/12 62/5 62/7 63/2 63/5 63/6 63/6 63/7 63/8 63/13 63/25 65/2 65/3 65/8 65/17 65/24 66/21 75/9 75/16 78/6 78/19 86/11 90/17 117/7 117/20
comparative [2] 103/5 103/12
compare [1] 69/8
compared [2] 72/25 74/22
compensation [1] 11/8
competitively [1] 66/2
compilation [2] 98/25 99/3
complained [2] 14/9 47/21
complaint [7] 28/11 28/12 93/8 93/8 115/12 116/11 136/21
complaints [1] 35/5
complete [9] 28/24 29/6 29/21 35/7 35/16 36/4 71/11 108/6 124/18
completed [1] 91/18
completely [3] 42/19 75/1 79/5
completes [1] 116/20
complex [8] 15/1 76/19 76/24 84/6 86/10 112/1 112/24 113/5
complexes [1] 54/13
complexities [1] 98/14
complexity [8] 32/14 72/5 72/7 76/17 91/13 98/12 98/13 101/4
complicated [3] 31/23 61/7 61/10

complicating [1] 115/23
component [4] 35/24 35/19 36/1 36/9 36/10 36/11
components [1] 14/7
compromise [6] 71/21 74/10 91/20 93/23 95/4 114/3
compromises [1] 69/10
computer [1] 4/6
computer-aided [1] 4/6
concededly [1] 59/17
conceivably [1] 36/15
concept [1] 114/13
concern [5] 111/3 111/9 112/19 114/4 114/12
concerned [3] 92/25 111/10 112/11
concerning [1] 129/20
concerns [3] 47/3 47/18 125/12
concludes [1] 12/6
conclusion [5] 74/21 78/3 95/20 108/12 126/5
conclusions [2] 16/4 17/22
condition [4] 24/20 53/19 69/20 75/14
conditioning [1] 14/8
conditions [1] 21/2
condominium [1] 10/19
conduct [4] 59/23 77/9 105/25 124/3
conducted [4] 51/19 51/23 77/3 95/18
conducting [1] 76/22
conference [9] 1/10 6/16 6/21 8/1 10/13 13/11 17/2 28/6 87/8
conferences [4] 15/3 31/12 40/5 40/7
confess [1] 41/19
confident [1] 133/20
confidential [2] 34/3 100/19
confirm [2] 117/14 121/6
confirmation [1] 117/9
confirmed [1] 52/2
conflict [4] 31/21 125/17 125/20 125/21
conflicts [1] 44/11
congestion [1] 47/22
connection [5] 8/19 9/5 65/1 65/8 95/19
CONNER [3] 2/18 22/6 87/11
consent [2] 119/9 130/22
Consequently [1] 61/21
consider [7] 22/25 24/19 39/4 52/17 97/5 97/11 124/20
consideration [2] 19/20 19/21
considered [1] 124/7
considering [1] 103/16
consistent [1] 108/4
consolidated [2] 14/25 17/9
constitutional [1] 31/1
constructed [1] 14/4
construction [1] 14/2 54/11
consumer [11] 38/4 38/9 38/14 39/6 39/9 39/11 39/15 39/17 39/22 40/2 115/10
consumers [3] 115/1 115/9 115/18
contain [2] 80/19 80/23
contains [3] 59/2 59/3 73/17
contaminants [1] 54/1
contemplated [1] 83/21
content [1] 120/6
contest [1] 45/24
contested [5] 84/4 85/3 85/4 85/18 86/3
context [1] 96/15
continents [1] 59/12
contingencies [4] 134/1 134/2 134/16 134/19
contingent [3] 44/6 44/16 81/25
continue [5] 7/15 18/10 79/12 128/15 134/11
continued [1] 12/4 75/17 82/18
contract [3] 44/6 55/23 103/10

contractor [2] 55/22 55/25
contractors [2] 55/20 55/22
contractual [1] 102/23
contracture [2] 13/10 57/25
contributed [2] 29/8 96/24
contributes [2] 30/19 58/2
contributing [1] 38/18
contribution [6] 25/24 25/24 25/24 70/9 88/2 88/5
control [6] 38/10 38/16 71/1 84/10 105/16 105/21
conundrum [1] 130/10
convenient [1] 136/3
Convention [2] 115/8 115/13
conversation [2] 100/17 136/8
conversations [2] 100/18 121/4
cooperation [2] 12/2 58/14
cooperative [1] 21/23
coordination [1] 15/7
copper [3] 14/6 46/5 60/17
copy [4] 22/24 48/7 127/8 127/25
Coral [1] 3/24
corporate [9] 62/6 62/14 62/15 62/17 62/18 62/23 64/4 64/13 67/16
corporation [7] 2/18 19/5 19/5 62/16 62/20 87/11 87/14
corporations [1] 62/17
Corpus [2] 34/10 43/8
Corpus Christi [2] 34/10 43/8
correct [7] 30/1 111/21 111/25 113/11 114/20 121/4 137/12
corroded [3] 46/3 46/5 47/20
corrosion [4] 46/1 47/17 60/17 119/20
cost [5] 27/23 55/19 114/23 115/3 132/2
costly [1] 30/25
costs [22] 25/9 27/11 27/14 27/14 27/15 27/16 56/3 69/12 69/24 69/25 84/24 85/10 85/14 85/22 88/2 92/22 97/2 101/1 112/25 115/7 120/20
cottage [1] 32/4
could [31] 16/9 16/13 19/23 21/9 25/5 35/6 36/14 38/18 39/12 52/1 59/24 63/2 66/2 67/24 68/6 69/11 70/17 74/13 74/14 74/22 75/14 78/24 92/10 112/8 113/13 122/8 122/11 130/4 130/14 130/18 134/7
couldn't [12] 21/13 21/14 21/17 21/20 21/21 35/19 44/2 45/24 55/8 83/4 102/22 103/1
counsel [35] 6/9 8/3 8/22 10/13 11/23 12/11 13/12 15/14 15/15 21/10 21/21 25/9 25/10 25/10 29/6 32/9 43/15 43/19 58/15 73/2 73/13 75/6 76/4 87/3 88/9 91/14 92/23 93/23 94/11 100/7 115/6 125/17 127/4 137/1
count [4] 72/1 82/9 82/10 85/11
countless [2] 15/12 72/18
countries [1] 64/12
country [12] 7/1 16/2 21/11 39/19 43/12 67/21 99/2 99/9 99/18 100/2 100/4 101/18
County [2] 42/23 125/5
couple [9] 8/23 38/2 41/16 53/5 53/12 56/10 90/13 122/14 128/9
coupon [2] 25/17 53/15
course [4] 19/17 66/1 71/11 74/16
court [168]
Court's [9] 10/9 10/25 15/22 18/14 84/10 91/16 92/8 122/1 126/20
Court-appointed [1] 100/16
Court-approved [2] 53/21 53/23
courteous [1] 100/8
courtroom [17] 6/16 7/16 8/8 11/15 20/6 20/10 20/12 20/15 21/2 21/15 49/20 66/8

**C**

courtroom... [5] 68/21 90/10 121/18
128/22 129/17
courts [15] 7/3 7/5 10/1 10/2 11/19 15/14
17/10 44/24 44/25 92/2 97/21 106/15
111/3 111/7 111/8
Cousins [1] 3/17
cover [3] 29/6 60/24 93/21
coverage [27] 81/20 82/2 86/15 86/16
92/3 97/14 97/14 97/22 101/17 101/20
101/22 101/24 102/1 102/10 102/15
103/18 118/14 131/8 131/22 132/3
133/12 133/13 134/24 135/14 135/16
135/17 135/17
covered [5] 84/24 85/23 104/17 105/2
119/22
covers [2] 30/20 57/22
CPSC [6] 28/17 41/17 52/2 70/25 105/12
105/13
create [4] 15/19 32/9 124/15 125/20
created [2] 58/4 113/9 125/22
creates [1] 61/15
creating [1] 14/21
credit [3] 57/14 85/7 85/8
credited [1] 86/5
creditors [2] 62/16 62/16
critical [2] 9/23 18/8
cross [2] 41/12 110/16
cross-examined [1] 41/12
crucial [1] 82/18
crucible [1] 41/10
crystal [1] 130/5
culminated [1] 52/14
curators [1] 15/6
current [1] 121/4
currently [2] 23/4 23/4
customer [1] 65/11
customers [4] 47/4 57/18 65/25 76/6

**D**

dad [2] 69/4 69/4
daily [1] 41/8
Dallas [1] 43/3
damage [13] 13/19 35/22 36/4 46/7
46/10 52/3 61/6 69/21 70/20 107/16
108/3 130/24 131/23
damaged [4] 34/6 36/2 36/2 120/8
damages [15] 23/20 29/13 29/14 30/9
34/22 96/18 96/20 107/19 118/19 123/21
124/5 124/12 124/15 132/2 132/19
Darden [1] 2/11
date [3] 26/17 27/11 127/15
dates [2] 9/10 134/19
Daubert [2] 30/23 30/25
Dave [1] 22/6
DAVID [4] 2/18 3/23 87/11 125/1
Davis [1] 21/24
Dawn [2] 11/18 48/24
day [8] 11/6 32/1 41/5 44/14 46/22 74/9
74/24 97/7
days [4] 46/12 47/25 116/1 125/15
de [1] 67/11
de novo [1] 67/11
deadline [1] 127/20
deal [20] 12/23 13/3 15/24 19/10 23/24
27/4 46/21 61/18 92/15 94/5 94/10 94/12
99/11 104/17 104/20 109/14 125/25
127/16 127/18 136/4
dealing [5] 31/11 51/12 97/21 105/22
108/24
dealings [1] 99/14
deals [1] 99/14

dealt [5] 78/12 99/7 99/8 107/14 107/21
107/23
deaths [1] 38/18
debts [1] 62/7
decades [1] 82/24
deceitful [2] 49/7 49/8
deceiving [1] 49/6
December [1] 18/17
December 20 [1] 18/17
decent [1] 69/6
decide [4] 84/11 93/12 103/8 112/5
decided [5] 68/8 97/13 101/2 102/4
122/13
deciding [1] 91/22
decision [7] 26/16 26/24 27/6 27/7 31/24
35/22 64/6
decisions [4] 31/24 83/13 101/19 101/21
declare [1] 118/14
declines [1] 130/25
dedicated [1] 43/14
deducted [1] 55/19
deduction [1] 55/13
deductions [1] 55/18
deep [1] 62/2
default [1] 17/1
defeats [1] 98/4
defect [6] 51/17 51/18 60/9 75/13 77/12
77/15
defective [4] 17/16 59/17 59/19 75/11
defend [1] 62/21
defendant [13] 10/21 34/1 36/4 45/23
47/13 47/14 76/5 100/3 112/4 112/6
113/14 115/13 118/6
defendants [49] 1/21 3/7 10/20 12/18
12/20 12/21 14/17 14/24 16/20 17/9
18/23 19/3 21/22 22/3 33/25 35/7 35/16
37/12 50/7 51/4 52/11 57/14 58/16 58/24
59/20 64/16 68/13 72/9 72/10 77/14 79/7
87/15 91/23 94/17 94/18 96/24 98/23
99/1 100/22 101/2 101/9 101/16 102/16
104/3 107/2 110/14 129/3 130/3 134/14
defendants' [1] 97/2
defense [8] 6/14 46/18 51/10 59/16
62/22 63/23 120/18 120/20
defenses [19] 59/19 66/6 66/8 66/10
66/13 66/20 67/16 67/24 68/7 71/9 71/18
75/18 77/10 92/1 98/11 109/17 131/8
133/13 134/24
defer [2] 9/9 105/3
defined [2] 119/18 119/21
definitely [2] 123/13 127/3
definition [3] 42/17 113/8 120/11
degree [2] 62/18 92/17
deign [1] 45/2
delay [1] 132/22
delays [1] 91/1
delivered [1] 60/6
delivering [1] 22/1
demand [1] 13/25
demands [1] 63/16
demonstrate [1] 44/2
Denver [1] 43/7
deny [2] 86/18 135/14
denying [1] 16/25 106/20
Department [2] 71/1 71/2
departments [1] 106/7
depending [3] 70/16 78/16 122/10
deposed [1] 47/24
deposition [6] 34/20 44/7 45/7 45/21 47/1
125/12
depositions [10] 16/1 28/6 40/9 40/12
40/13 50/1 62/24 72/17 77/3 90/20
Depot [5] 37/24 46/17 46/17 47/12 47/12

Depot's [1] 45/24
deputy [1] 21/19
described [1] 87/22
deserving [1] 43/14
designated [2] 14/19 24/25
designed [1] 18/18
despite [9] 21/16 72/1 75/19 77/17
106/12 106/25 107/9 108/10 114/12
destroy [1] 86/20
detail [2] 75/12 76/13
detailed [3] 16/3 17/21 17/24
determination [2] 132/7 134/11
determine [6] 19/11 67/12 124/5 131/11
132/24 135/10
determined [2] 25/14 67/10
determines [1] 131/20
detriment [1] 42/8
Deutsch [1] 3/14
develop [2] 16/8 58/13
developed [1] 9/16
developer [1] 10/23
developers [1] 101/10
Devlin [1] 32/5
Dial [1] 2/21
did [39] 9/6 24/13 26/11 31/5 35/13 38/7
39/16 40/21 41/17 43/21 47/15 52/10
59/24 60/10 60/16 60/16 64/18 64/20
65/19 66/12 66/16 66/22 77/5 77/22 79/8
82/6 93/1 96/2 97/12 114/17 121/9
121/23 122/16 125/16 129/15 129/15
130/20 131/3 136/16
didn't [27] 20/25 24/22 26/10 30/10
33/24 34/13 35/18 45/5 45/20 45/22 47/3
47/6 48/23 54/24 55/5 55/5 73/23 95/10
95/13 102/23 102/23 102/24 103/10
103/11 105/19 117/13 125/20
Diet [1] 108/5
Diet Drugs [1] 108/5
difference [1] 97/22
different [20] 12/15 12/15 23/24 36/19
56/10 56/11 60/19 85/2 93/13 95/5 101/9
101/16 108/2 109/3 109/11 111/19 112/1
112/7 118/11 135/7
difficult [5] 37/17 51/15 69/18 76/18
102/13
difficulties [2] 116/8 127/6
difficulty [4] 71/25 72/8 97/16 115/18
diligence [3] 52/24 95/19 96/6
dime [1] 85/17
diminish [1] 134/11
dire [1] 94/13
direct [1] 23/11
directed [4] 39/14 40/10 40/22 117/12
direction [1] 129/11
directly [1] 99/7
disadvantages [1] 97/25
disagree [1] 134/25
disappoints [1] 48/25
discharge [1] 35/19
discharges [1] 85/1
disclose [1] 34/4
disclosed [1] 65/23
discounted [1] 29/24
discourse [1] 39/17
discoverable [1] 77/15
discovered [4] 34/14 72/20 75/14 75/15
discovery [8] 44/14 72/15 76/22 77/1
91/17 108/20 109/7 118/21
discuss [8] 8/4 8/23 28/17 28/18 37/19
40/24 75/12 130/17
discussed [5] 88/9 91/18 97/3 98/17
125/13

**D**

discussing [1] 74/2
discussions [4] 41/4 41/6 41/8 108/25
105/21
Disease [5] 38/10 38/16 70/25 105/16
105/21
dislike [1] 97/19
dispense [2] 11/16 11/21
disposed [1] 82/23
disproportionate [1] 115/2
dispute [1] 82/3
disruption [1] 55/11
dissect [1] 122/4
distinct [1] 47/11
distinguishes [1] 36/6
distributed [3] 46/18 75/10 75/11
distribution [2] 51/8 65/10
distributor [1] 75/9
district [8] 1/1 1/2 1/12 43/3 44/23 44/24
137/10 137/10
divide [1] 93/13
dividend [1] 63/25
do [80] 6/24 7/16 9/11 10/9 11/9 11/22
13/9 19/14 20/3 21/8 23/8 24/22 27/7
27/8 28/24 28/25 29/4 29/25 32/9 32/9
32/14 33/2 33/13 33/19 37/21 42/3 42/14
42/18 45/2 48/4 48/23 54/14 55/7 55/20
61/24 64/13 64/23 65/10 66/22 68/7 68/8
69/15 83/18 83/24 84/22 84/23 85/25
87/1 87/4 93/10 93/17 94/17 104/21
104/22 107/24 112/9 112/10 113/14
115/7 115/10 117/3 118/2 118/21 119/8
119/13 120/14 120/17 122/7 123/16
123/24 124/13 125/10 125/14 127/3
127/7 128/3 129/24 132/24 135/25
137/11
doable [1] 16/11
docket [4] 1/5 8/10 67/4 122/1
doctor [2] 47/21 47/23
document [6] 38/11 38/14 39/2 39/4 39/5
125/7
document 16188-2 [1] 39/4
documents [6] 39/5 59/12 62/24 108/22
111/17 111/17
does [22] 9/14 24/6 27/7 29/16 33/2
33/13 53/18 55/25 61/24 65/21 65/21
66/22 69/8 71/3 72/22 80/19 80/22
117/22 119/18 120/10 129/23 132/14
doesn't [20] 24/8 34/17 36/12 36/12
47/16 47/19 49/4 61/21 82/9 84/3 92/6
113/2 120/2 121/17 122/23 123/15
129/23 133/6 133/7 134/10
dog [1] 62/11
doing [2] 29/22 65/25
dollar [1] 64/1 67/23 69/21 70/1
dollars [4] 113/1 113/3 114/23 122/19
domestic [1] 72/10
don't [55] 15/17 18/11 19/19 26/15 33/4
36/21 36/22 42/6 44/16 46/6 46/23 47/8
48/2 48/6 49/24 55/18 59/9 59/9 61/14
61/23 69/10 69/25 69/25 70/24 71/2
74/18 83/10 94/2 94/4 94/24 95/17 95/20
100/10 102/9 109/10 111/3 114/5 116/11
116/18 119/21 119/24 120/4 120/11
120/21 122/3 122/7 123/17 125/8 125/19
126/1 128/2 130/24 133/3 134/23 135/20
Donald [1] 3/21
done [31] 9/5 9/11 9/25 11/15 11/19
12/25 16/12 18/13 21/3 21/13 21/14
21/17 21/21 21/21 29/22 32/23 35/1
52/25 54/11 56/20 59/13 68/6 74/24
77/14 80/17 84/5 84/5 84/15 116/22
126/3 135/21

Douglas [1] 3/21
down [3] 63/12 65/3 96/2
132/12 136/7
downstream [2] 16/16 16/17
Doyle [4] 4/1 137/9 137/17 137/17
dozen [2] 12/13 12/13
dozens [1] 15/10
draft [1] 121/8
dragged [1] 35/8
Drang [1] 66/14
dream [1] 49/9
dreams [2] 49/9 49/10
drier [1] 60/18
drills [1] 47/20
driven [2] 105/14 113/4
driving [1] 120/17
Drugs [1] 108/5
drum [1] 45/16
drywall [91] 1/5 6/8 13/20 14/3 14/5
14/14 14/21 15/8 17/6 17/8 17/17 17/18
17/18 18/19 18/21 23/19 23/22 24/2 24/3
25/12 25/14 28/9 30/15 33/23 34/22
35/25 38/1 38/18 39/13 40/11 45/23
46/15 46/17 46/19 47/2 47/8 47/10 47/12
47/17 51/6 51/20 53/18 53/19 53/22
53/22 53/24 54/2 54/3 54/5 54/23 55/2
55/9 55/10 56/22 60/22 65/9 65/16 66/1
66/2 66/19 66/23 70/11 75/9 75/10 75/11
75/14 76/6 77/13 85/21 87/16 87/17
87/25 96/15 96/19 97/8 99/17 101/25
103/4 103/12 105/10 105/14 105/18
105/20 106/12 106/18 106/21 108/9
110/5 112/18 119/17 119/25
drywall-related [1] 97/8
due [9] 31/2 52/24 60/4 72/8 73/9 95/18
121/14 121/16 135/14
Duggan [1] 21/25
duly [1] 19/9
DUPLANTIER [4] 2/8 22/5 75/5 132/11
Duplantier's [1] 80/3
duration [5] 32/14 71/24 72/6 76/18
91/13
during [2] 13/21 17/25
Durkee [11] 3/23 3/23 23/8 23/10 23/13
23/14 31/16 42/5 104/24 125/1 125/2
Durkee's [1] 125/18
dust [1] 53/24

**E**

e-mails [1] 38/20
each [10] 13/4 13/6 28/22 90/13 99/13
101/13 110/2 112/6 113/14 116/9
earlier [1] 17/24 38/13 91/21 105/12
121/12
early [3] 52/2 111/8 111/15
easily [1] 82/23
East [1] 13/24
EASTERN [3] 1/2 44/24 137/10
easy [3] 8/10 37/15 61/5
ECF [1] 22/1
economic [5] 57/22 64/13 64/14 70/8
70/19
effect [5] 18/24 85/15 86/20 111/17
115/19
effected [1] 55/23
effects [5] 51/19 105/9 106/18
effort [2] 7/23 125/11
egg [1] 46/1
eight [1] 104/12
either [16] 11/4 11/7 11/23 15/4 16/2
27/5 37/24 52/21 73/13 99/7 102/21
102/23 108/22 108/24 111/14 116/17
ELDON [1] 1/11

electrical [1] 54/5
eliminate [2] 21/8 78/24
eliminates [1] 22/21
eloquent [4] 49/1 49/2 125/12 127/5
eloquently [1] 75/13
else [13] 13/13 27/17 35/16 46/19 63/5
71/12 84/13 94/9 99/4 101/13 124/22
127/21 135/18
elsewhere [1] 68/5
Emanuel [1] 3/4
Embry [1] 44/4
emits [2] 17/18 17/19
emotions [1] 47/21
Emperor's [1] 49/2
emphasize [3] 60/14 125/10 131/10
enable [2] 114/10 132/21
encouraged [1] 16/12
end [5] 11/6 71/21 74/9 74/21 104/8
ended [4] 7/12 30/5 61/4 99/16
endorsed [1] 49/13
enemy [1] 68/4
enforce [2] 65/6 71/16
enforceable [3] 132/18 133/19 133/22
enforced [2] 83/12 83/12
enjoy [1] 24/18
enormously [1] 61/10
enough [9] 24/5 66/6 95/13 100/5 100/15
105/24 114/7 114/9 136/22
enter [5] 42/22 76/5 79/8 81/11 108/25
entered [12] 17/11 17/22 18/2 18/18
18/24 41/13 54/4 72/21 77/18 78/11
87/15 88/21
entering [2] 51/21 78/9
enterprise [1] 63/14
enterprises [1] 63/21
entertained [1] 52/22
entertains [1] 108/19
entire [10] 11/4 28/10 39/5 61/16 76/8
78/24 79/6 79/20 81/14 94/5
entirely [1] 26/24
entirety [2] 129/8 131/23
entities [23] 2/4 2/20 3/1 16/16 16/17
16/20 16/23 17/4 17/5 17/8 17/11 18/2
18/17 18/23 18/25 19/5 66/15 66/16
90/15 91/6 95/8 96/9 99/24
entitled [4] 44/9 49/15 69/17 137/14
entity [1] 90/25
Entrench [1] 68/3
entries [1] 15/12
environment [1] 39/1
environmental [5] 38/15 56/1 105/16
106/5 106/6
EPA [2] 38/10 70/25
equally [1] 91/15
equitable [1] 93/15
erected [1] 67/25
Ernest [1] 34/9
escrow [8] 11/3 82/9 82/11 82/23 84/3
84/7 84/8 84/14
especially [5] 35/9 103/17 112/2 113/12
123/2
Espino [1] 3/1
ESQ [21] 1/16 1/19 1/22 2/1 2/4 2/5 2/8
2/12 2/15 2/18 2/21 3/1 3/5 3/8 3/11 3/14
3/17 3/20 3/23 5/23 5/24
essence [4] 107/15 123/13 130/23
132/22
essential [1] 7/4
essentially [1] 85/15
establish [2] 13/3 77/12
established [2] 7/19 28/14
establishes [1] 28/24

**E**

establishment [1] 9/22
estimate [2] 25/20 25/22
etc [2] 9/3 9/10
Europe [3] 64/11 64/12 64/18
European [5] 64/7 64/9 64/15 64/21
64/22
evaluate [1] 97/5
even [24] 24/2 39/9 45/2 45/25 46/23
55/18 58/13 60/10 63/23 64/19 67/1 93/7
94/2 100/8 101/7 103/13 105/24 113/5
116/4 122/8 123/5 128/4 133/8 136/18
event [1] 107/4
ever [6] 37/17 45/16 61/7 64/1 64/3
112/2
every [12] 8/8 28/22 36/19 41/5 57/4
62/12 70/1 85/17 86/3 90/25 103/3 110/6
everybody [11] 27/5 35/16 91/5 92/11
94/8 97/11 99/4 101/13 112/4 116/15
128/15
everyone [6] 13/13 15/20 66/8 73/19
92/1 109/7
everything [11] 15/19 22/8 69/10 69/16
69/17 71/13 74/13 108/3 126/3 128/16
134/8
evicted [1] 23/18
evidence [17] 17/25 35/9 37/19 38/6
38/23 47/7 51/1 56/24 58/25 59/11 60/3
70/23 71/3 107/10 108/7 120/9 128/4
evident [2] 71/24 83/6
examined [1] 41/12
example [4] 58/18 81/18 96/14 119/18
exceedingly [1] 68/10
excellent [2] 8/9 11/20
except [1] 37/25
exceptionally [1] 13/25
excess [4] 78/15 80/13 114/23 130/6
exchange [1] 39/16
exclusion [3] 26/8 101/22 101/24
excuse [2] 120/14 122/23
exercise [2] 123/6 128/11
exercised [1] 79/1
exhausted [10] 81/13 81/21 82/2 82/8
83/7 84/1 86/15 86/16 118/15 135/10
exhaustion [13] 81/7 82/10 83/21 83/21
84/18 85/11 86/5 119/15 119/17 119/22
120/16 120/22 135/9
exhaustive [1] 77/1
exhausts [1] 83/2
exhibit [8] 22/12 22/14 22/15 22/17 37/22
127/9 128/1 128/2
Exhibit 26 [1] 37/22
Exhibit 75 [1] 22/12
exhibits [9] 19/16 22/11 22/12 22/18
37/22 58/25 59/2 59/3 127/8
exist [4] 23/4 45/5 66/17 119/1
existence [3] 76/15 107/10 107/23
existing [2] 60/5 63/5
expect [4] 21/1 58/7 58/14 123/7
expedited [4] 121/20 121/21 121/24
123/13
expense [5] 32/14 72/5 91/13 100/25
116/9
expenses [9] 29/2 30/3 30/4 55/24 85/10
86/1 88/12 91/3 92/21
expensive [5] 93/19 112/25 113/10 116/6
116/12
experience [1] 7/9
experienced [1] 13/2
expert [2] 64/22 113/4
experts [1] 31/3 41/11 71/6
explained [5] 24/21 73/2 75/13 78/22

79/2
exploring [1] 127/21
export [1] 16/6 16/9 16/7 24/1
exported [1] 13/23
exporters [1] 14/16
exposure [3] 35/12 127/4 134/6
express [1] 80/20
expressed [2] 19/23 111/8
expressing [1] 127/5
expression [1] 10/8
extended [1] 134/20
extension [1] 136/25
extensive [7] 19/17 95/18 99/14 102/1
109/7 126/17 129/18
extensively [2] 80/22 125/19
extent [6] 85/19 85/24 97/16 107/20
118/2 128/5
Exterior [17] 2/7 2/11 12/5 19/4 75/5
75/15 75/16 75/23 76/5 76/7 77/8 77/9
77/12 77/16 77/18 78/10 79/15
Exterior's [1] 75/18
extort [1] 43/21
extortion [1] 42/16
extraordinary [2] 72/7 115/17
extreme [2] 96/13 103/12
extremely [6] 21/22 58/16 98/8 100/8
103/16 105/25
exuding [1] 60/24
eye [2] 14/10 38/24

**F**

fabulous [1] 70/3
face [6] 15/14 39/16 39/16 71/19 80/18
120/11
face-to-face [1] 39/16
faced [2] 61/25 64/2
facilitated [1] 16/4
fact [29] 16/4 17/22 21/16 40/19 59/17
60/10 60/21 61/25 71/18 72/9 78/5 82/15
84/2 101/5 102/15 103/25 106/19 107/24
108/1 108/10 115/14 116/1 118/13
119/10 119/17 122/22 134/10 134/23
135/15
factor [13] 32/25 38/19 69/7 72/22 76/17
76/23 77/5 77/21 77/25 102/8 115/21
115/23 123/15
factors [12] 32/13 32/25 68/24 71/23
76/14 76/15 88/8 91/7 91/9 98/17 100/10
108/13
facts [7] 41/11 62/9 63/3 72/20 97/11
113/25 133/24
factual [2] 15/9 22/20
factually [1] 29/12
failed [1] 130/16
failure [2] 14/7 59/23
failure-to-warn [1] 59/23
fair [19] 9/12 50/16 53/1 57/20 59/6
74/11 76/12 78/21 79/21 84/25 88/20
108/13 117/24 132/13 132/25 134/16
135/11 135/12 136/22
fairer [1] 93/15
fairly [1] 71/23
fairness [7] 1/11 6/20 8/15 41/20 52/16
68/25 74/7
faith [4] 88/21 126/4 131/19 132/19
fall [8] 50/22 52/15 52/20 52/21 56/14
56/23 130/2 134/3
FALLON [7] 1/11 6/11 8/7 11/13 37/3
49/25 128/19
falsely [1] 42/15
familiar [4] 38/20 84/6 91/4 108/18
families [1] 36/8
family [2] 17/21 114/24
far [4] 58/10 73/5 92/25 113/25

Farina [8] 7/12 7/15 8/8 21/14 37/4 56/8
71/2 71/9
Farina's [1] 50/8
fashioned [1] 17/25
fatal [1] 105/7
father [1] 45/15
fault [5] 59/22 61/3 103/5 103/8 103/12
favor [7] 17/20 32/15 65/25 108/7 114/2
131/21
favorable [3] 92/19 98/2 98/3
FCRR [3] 4/1 137/9 137/17
fear [1] 34/17
February [1] 38/5 127/15 127/16
February 2011 [1] 38/5
federal [14] 7/2 7/4 10/2 10/2 14/13
14/20 15/7 44/25 88/23 100/1 105/17
105/22 106/9 116/11
fee [13] 25/9 25/10 25/10 26/1 26/17
37/6 43/1 44/6 44/16 44/18 44/19 45/4
55/19
feel [6] 19/19 23/15 127/13 133/20 136/9
136/10
feeling [1] 15/15
feels [1] 136/19
fees [17] 26/22 27/4 27/7 29/6 30/17
30/20 30/23 49/9 49/11 55/12 55/14
55/16 56/3 67/20 69/23 88/12 97/2
feet [1] 13/22
felt [2] 78/13 79/1
FEMA [1] 23/21
fender [1] 36/1
fer [1] 109/15
few [3] 50/11 51/6 99/20
fiberglass [1] 65/3
fide [1] 23/14
fides [1] 32/20
fifth [8] 8/21 17/3 32/13 43/4 48/18 66/11
77/21 122/13
Fifth Circuit [7] 8/21 17/3 32/13 43/4
48/18 66/11 122/13
fifty [1] 26/4
fight [2] 13/4 119/12
fights [1] 95/25
figured [1] 112/9
figuring [2] 51/11 51/11
file [10] 15/16 37/19 37/19 47/19 48/1
73/6 73/17 82/6 108/19 112/20
filed [19] 8/12 14/24 22/1 24/1 26/18
28/12 32/2 43/7 43/15 44/1 44/14 88/14
88/16 108/23 109/25 111/11 111/12
121/19 125/4
filing [6] 14/12 23/3 42/24 43/11 105/13
128/3
fill [1] 67/4
filled [1] 58/7
filling [1] 9/9
finagling [1] 63/20
final [13] 6/19 10/8 11/10 19/9 22/23
38/5 39/23 53/8 54/18 67/1 73/20 96/11
98/18
finally [6] 63/22 66/6 103/20 107/12
112/9 114/21
financial [1] 63/10
find [11] 33/15 38/18 41/2 45/18 79/20
81/13 84/25 88/20 112/18 112/21 116/11
finding [14] 64/10 64/17 81/11 82/1
86/16 92/3 101/20 101/21 102/14 103/18
106/3 119/10 119/12 120/22
findings [5] 16/4 17/21 40/19 106/4
133/18
finds [2] 112/13 112/14
fine [4] 89/3 114/17 126/22 128/25
finger [1] 101/13

**F**

fingers [3] 49/9 101/14 104/4
finished [3] 16/7 98/6 127/24
finishes [1] 56/1
Finn [1] 2/11
firm [4] 2/1 23/8 40/18 45/17
firms [1] 76/20
first [43] 7/10 8/1 9/16 13/15 17/11 19/25
37/6 40/9 40/11 40/23 41/5 42/5 45/10
47/9 48/12 50/7 52/7 53/20 54/10 58/22
59/21 62/4 63/4 66/4 67/8 76/5 76/7
78/12 79/11 82/22 93/16 98/20 104/7
105/7 112/12 113/20 116/24 119/6 129/3
129/22 130/14 133/9 135/2
Fishbein [1] 1/18
fit [1] 114/5
five [14] 21/12 23/3 24/10 31/7 31/8 38/8
39/6 41/18 74/4 74/18 104/13 105/13
106/12 114/14
fix [2] 69/20 70/2
fixed [4] 75/1 102/21 104/10 107/18
fixes [1] 60/24
flat [1] 116/1
Fleming [1] 21/25
flimflam [2] 62/18 62/23
Floor [2] 2/9 2/18 3/5 3/9
Florida [19] 3/2 3/12 3/24 7/22 9/17 14/2
21/16 28/8 33/7 33/10 43/17 43/20 43/25
71/1 101/21 103/6 106/7 106/22 125/5
flowed [1] 56/16
focus [3] 27/2 68/25 69/4
focused [4] 16/16 50/22 52/23 110/25
focusing [2] 50/12 69/1
fold [1] 9/13
folks [13] 20/8 38/21 53/2 54/6 55/10
56/19 61/21 71/4 93/24 94/11 94/12
95/2 96/9
followed [2] 8/8 83/12
following [6] 6/3 6/20 19/3 90/3 112/14
131/20
follows [2] 16/18 131/13
foot [2] 24/7 26/4
forbid [1] 81/18
force [2] 68/4 105/18
foreclosure [1] 20/13
foreclosures [2] 30/5 57/23
foregoing [1] 137/11
foreign [5] 63/14 63/21 72/9 115/18
116/4
foreign-owned [1] 63/14
foreseeable [1] 60/21
foreseen [1] 59/25
foreshadowed [1] 51/25
form [3] 19/21 46/18 62/15
formaldehyde [2] 60/23 60/24
formaldehyde-exuding [1] 60/24
formally [1] 127/10
format [1] 113/6
forms [3] 37/20 51/2 51/9
formulate [2] 9/21 96/7
formulated [1] 18/4
Fort [1] 96/16
Fort Myers [1] 96/16
forth [4] 28/23 53/2 119/14 125/6
fortifications [1] 68/4
fortunate [1] 7/6
Fortunately [2] 22/22 65/7
forum [3] 42/24 101/18 135/23
forums [1] 100/5
forward [16] 39/3 53/7 58/14 74/24 81/15
82/19 104/12 107/4 107/6 109/2 109/6
114/14 124/17 130/11 134/6 134/11

fought [3] 72/19 91/10 91/25
found [21] 22/16 22/23 34/6 38/12 40/13
42/24 43/6 43/23 62/23 75/10 101/23
106/17 106/22 108/6 108/8 120/6 131/15
131/17 131/18 132/18
foundation [1] 106/23
four [43] 8/6 8/9 11/24 25/16 31/7 31/8
64/11 80/8 80/9 99/13 105/6 110/15
118/10 119/2
frankly [5] 51/5 59/15 61/6 63/22 94/2
fraud [4] 32/12 76/15 91/10 100/11
Fred [1] 21/25
free [2] 30/16 54/2
Freeman [1] 3/8
frenzy [1] 62/4
Friday [5] 117/12 123/7 127/17 127/18
127/20
Frilot [2] 1/21 68/20
frivolous [1] 43/16
front [5] 23/13 31/8 35/15 95/21 105/13
frontally [1] 129/12
fruit [3] 24/25 25/4 103/10
fulfilled [1] 134/19
full [10] 6/16 40/18 71/10 77/23 83/2
83/23 84/20 85/7 86/5 113/14
fully [3] 24/22 121/15 123/19
function [1] 58/5
fund [25] 11/4 29/23 29/24 29/7 29/8 29/16
29/17 30/13 30/21 44/20 57/15 57/21
57/22 58/1 58/3 58/3 58/6 58/10 70/8
70/14 70/18 71/3 84/7 84/8 107/9
funding [1] 28/1
funds [4] 29/17 58/3 93/13 107/3
further [4] 12/9 25/6 74/2 129/1
future [6] 34/18 35/13 81/16 106/23
107/17 107/25

**G**

Gables [1] 3/24
gallops [1] 49/10
Galloway [1] 2/7
game [3] 62/19 109/10 122/23
Garcia [5] 34/12 40/13 42/13 45/7
126/17
gases [1] 17/18
gassing [1] 60/21
gave [3] 21/4 51/25 125/12
Gee [1] 37/14
Gehring [1] 90/16
general [6] 14/2 15/15 36/2 36/3 79/6
121/13
generally [2] 13/2 112/25
generically [1] 8/18
generous [1] 68/10
generously [1] 68/16
genesis [1] 109/3
gentleman [1] 20/6
gentlemen [2] 6/5 90/5
Georgia [2] 2/23 34/3
German [9] 17/5 20/13 24/12 66/14
66/21 66/25 67/12 67/17 67/18
German-based [1] 17/5
Germano [4] 28/12 40/21 40/23 72/17
Germany [9] 20/8 28/7 62/7 67/3 67/5
67/8 67/11 67/20 67/23
get [64] 9/6 9/24 12/22 14/17 18/11
18/12 21/2 24/17 24/23 25/18 26/22 27/3
27/11 27/17 27/18 28/5 28/24 28/25
29/21 29/25 30/3 30/7 30/18 33/15 33/18
37/5 38/3 41/3 41/8 41/25 46/5 47/15
54/18 54/23 55/12 55/17 59/4 65/16
66/25 72/23 73/16 74/15 85/12 85/20
91/25 92/25 93/9 97/22 100/13 104/10

108/3 112/17 113/10 115/10 116/12
128/23 131/24 136/11
gets [7] 48/15 55/9 55/23 56/2 84/11
84/12 132/14
getting [16] 22/1 24/16 27/2 36/15 48/7
52/5 55/6 55/17 66/1 73/1 77/23 82/1
107/18 107/19 107/20 122/17
give [14] 7/7 27/5 33/17 35/16 68/22
74/14 74/16 113/21 115/15 122/22
122/23 124/2 127/12 127/13
give-and-take [1] 74/14
given [14] 22/23 31/2 56/17 59/16 62/8
74/12 107/8 108/22 121/24 122/17
122/18 125/22 127/25 132/2
giving [2] 45/5 49/17
glad [2] 8/11 49/8
GLICKSTEIN [13] 2/5 5/24 21/15 22/4
58/21 61/9 68/13 77/5 77/22 87/23 91/21
127/3 129/2
global [30] 3/7 8/18 18/21 22/7 25/25
26/6 26/7 28/2 29/15 29/17 33/11 33/11
33/12 47/14 58/1 70/11 76/5 87/1 98/20
98/21 98/24 98/25 100/12 102/5 104/1
104/13 107/2 125/6 129/8 137/2
glory [1] 9/6
go [37] 6/22 8/5 28/22 33/15 39/3 40/15
40/15 48/18 54/4 55/21 63/19 68/23
68/24 74/2 74/7 76/13 82/19 83/18 91/4
91/22 92/10 92/18 93/14 94/13 101/7
102/22 104/9 110/1 112/19 120/7 124/17
125/8 130/11 134/2 134/6 134/7 134/11
goal [1] 130/14
God [3] 51/14 71/24 81/18
goes [5] 92/15 93/16 93/17 109/1 121/16
going [68] 8/22 9/12 9/24 11/3 11/16
20/19 28/17 28/22 30/22 35/2 36/18
36/18 36/25 37/14 45/6 45/19 47/18
48/18 48/21 48/21 48/23 54/22 58/3 58/4
70/1 70/2 70/2 70/13 70/13 71/13 71/14
71/15 71/16 75/6 75/12 76/13 81/15
83/15 84/20 84/21 85/4 85/17 85/20
85/21 86/4 86/8 91/4 91/15 92/15 92/16
92/19 93/18 95/5 104/4 104/20 115/7
119/2 119/24 121/22 123/19 124/17
124/20 125/14 125/25 126/18 128/9
128/14 130/11
gone [1] 27/21 42/2 56/7 59/12 63/19
84/13 90/20
good [37] 6/4 6/11 6/13 7/19 8/25 9/12
10/17 21/6 27/19 50/6 53/19 55/3 55/3
55/10 58/16 60/2 68/12 69/1 69/6 75/4
77/6 77/22 80/1 82/25 88/21 90/4 90/8
94/12 95/7 96/14 103/13 117/19 123/4
124/24 126/2 126/4 132/19
got [28] 10/18 11/5 33/23 33/23 34/3
34/4 35/15 35/17 35/17 36/2 36/5 42/21
45/9 45/25 46/3 47/8 47/25 51/5 51/7
69/16 88/25 93/3 93/6 103/13 107/5
108/3 110/10 133/8
governed [1] 15/11
government [5] 38/4 61/20 63/14 63/16
70/24
gracious [2] 100/5 100/15
grant [2] 10/10 121/24
granted [2] 19/7 88/13
grasp [2] 24/22 24/22
great [18] 7/7 7/14 7/15 7/22 9/25 45/4
50/9 50/13 52/10 54/18 57/16 58/14 68/2
74/23 76/13 77/14 96/12 112/21
greater [2] 40/1 41/17
greatest [1] 61/13
Greek [2] 48/12 90/12

**G**

Greenberg [1] 3/11
Greenville [1] 2/19
Greg [1] 68/17
grille [1] 36/2
gritty [1] 28/23
gross [1] 28/11
grounds [2] 82/6 90/23
group [18] 8/10 16/19 16/19 17/4 19/6
54/11 62/6 62/9 62/25 63/1 63/4 63/8
64/18 65/1 66/9 67/24 100/3 114/1
groups [5] 16/15 16/16 16/17 16/18
101/9
guess [1] 133/22
guidance [2] 39/6 39/21
guilty [2] 43/20 45/16
Gulf [3] 13/24 41/1 60/11
Gunn [1] 2/21
guy [3] 34/16 45/11 107/5
guys [3] 33/7 48/17 65/14
gypsum [6] 13/22 16/21 60/7 60/22
60/25 120/5

**H**

had [64] 10/25 20/7 21/8 25/12 26/1
27/17 27/20 28/5 31/18 31/19 33/25 34/8
34/9 34/18 35/17 38/17 40/6 40/11 41/6
41/8 41/12 42/20 43/25 44/2 46/1 47/3
47/18 47/22 48/5 51/6 52/9 52/13 56/15
56/17 56/19 56/20 56/22 61/18 61/19
62/21 62/25 63/9 64/13 64/23 65/10
67/13 73/6 76/6 95/25 99/14 102/14
102/24 103/7 103/18 104/15 116/10
116/22 118/7 121/14 121/14 128/20
129/17 130/5 133/9
hadn't [1] 129/17
Hague [3] 115/8 115/13 116/7
half [2] 6/21 42/2
hall [6] 2/14 7/21 9/24 10/3 32/3 49/23
hallmark [1] 58/17
hammers [1] 24/4
hand [3] 7/22 22/24 131/18
handle [6] 8/9 8/24 11/14 12/23 23/10
84/23
handled [3] 21/12 35/14 115/4
handling [3] 7/9 36/8 86/1
hands [1] 25/16
hanging [3] 24/25 25/4 94/19
happen [5] 61/21 86/23 93/16 119/25
124/6
happened [4] 59/25 61/14 100/14 102/13
happening [3] 34/18 84/4 85/25
happens [7] 66/4 67/5 92/8 92/23 98/4
116/3 122/10
happy [15] 7/12 9/3 9/23 21/12 41/20
41/21 41/21 50/15 108/15 110/19 110/19
111/1 113/16 116/25 125/23
hard [11] 9/7 13/4 43/15 72/19 91/10
91/25 94/7 96/6 127/8 134/12 134/15
hard-fought [1] 72/19
hard-working [1] 43/15
hardship [1] 115/1
Harrell [1] 106/22
has [147]
Haseltine [1] 93/7
hasn't [5] 32/24 47/21 109/18 115/5
115/8
hat [2] 61/17 61/18
have [342]
haven't [2] 86/15 134/17
having [16] 21/6 22/20 24/4 33/20 34/5
57/4 58/11 59/10 59/12 77/2 93/14 93/15
97/17 113/6 115/19 120/20
Haynsworth [1] 2/17
HB [1] 4/1
HB-406 [1] 4/1
he [129] 7/10 7/12 7/14 7/18 8/24 11/15
12/8 22/15 22/16 22/16 32/1 32/2 32/2
32/3 33/3 33/3 33/4 33/6 33/6 33/8 33/13
33/13 33/24 33/25 33/25 34/1 34/3 34/4
34/4 34/4 34/7 34/9 34/12 34/14 34/14
34/16 34/25 36/14 36/17 36/17 42/16
42/19 42/20 42/20 43/1 43/20 43/21
43/25 44/1 44/1 44/2 44/3 44/4 44/5 44/9
44/17 44/19 45/3 45/4 45/10 45/16 45/17
45/20 45/20 45/21 45/22 45/22 45/23
45/24 45/25 45/25 45/25 46/1 46/8 46/9
46/9 46/10 46/11 46/11 46/13 46/14
46/15 46/19 47/1 47/2 47/3 47/5 47/6
47/8 47/9 47/11 47/14 47/15 47/15 47/16
47/16 47/17 47/17 47/18 47/18 47/18
47/19 47/20 47/21 47/22 47/22 47/24
48/13 48/13 48/15 48/16 49/1 49/2 49/4
95/12 104/16 106/20 106/22 107/6 107/6
107/7 125/13 127/5 128/23 135/1 136/10
136/10 136/19 136/19
he's [1] 9/25
headaches [1] 14/11
headed [1] 50/19
health [17] 14/9 38/7 38/11 38/15 39/19
46/8 46/9 47/19 71/1 71/2 105/8 105/20
105/23 106/5 106/6 106/8 106/18
hear [10] 15/18 15/19 15/24 19/25 21/4
50/5 113/17 113/20 115/25 136/12
heard [17] 21/6 31/17 45/8 45/10 51/6
61/8 81/3 91/5 91/8 99/5 100/24 117/21
118/4 119/16 123/3 134/4 134/21
hearing [34] 1/11 6/20 8/15 13/15 13/16
17/20 19/7 19/9 19/9 19/10 19/14 22/19
22/22 23/1 28/13 48/6 52/16 68/25 88/15
88/16 90/17 109/1 109/16 117/13 118/18
121/20 121/21 121/24 121/25 124/14
127/19 128/15 136/5 136/18
hearings [3] 15/3 15/21 41/21
hearsay [1] 38/21
heart [1] 74/7
held [7] 6/3 11/3 25/15 27/14 27/15
80/16 90/3
help [5] 7/14 7/15 24/15 27/17 65/16
helped [1] 52/10
helpful [5] 7/22 9/20 9/21 22/13 113/6
her [6] 7/20 29/21 34/7 34/8 34/8 41/7
here [85] 6/15 8/11 10/3 20/8 20/18 21/1
27/16 28/24 29/7 29/20 31/6 31/15 31/24
32/11 32/12 36/7 41/18 49/18 51/5 51/7
52/16 52/18 54/16 56/24 57/13 59/15
59/16 60/13 61/13 64/20 68/15 71/3 72/8
72/13 72/14 74/7 74/19 77/2 82/5 82/6
83/10 83/17 83/17 83/18 83/22 84/4
84/15 84/18 85/1 86/1 86/7 86/11 86/13
86/21 86/23 90/14 90/15 91/25 92/24
96/7 97/6 99/6 100/11 105/24 106/10
106/19 106/20 107/15 109/14 110/4
110/9 110/14 110/25 111/13 111/16
111/17 112/6 116/14 122/18 125/21
127/14 127/24 128/23 130/22 132/12
here's [2] 48/7 84/13
hereby [1] 137/11
Herman [19] 1/15 1/15 1/16 5/23 6/11
21/24 22/15 23/10 28/17 35/1 35/10
36/25 37/1 50/20 51/25 52/13 61/8 71/12
105/12
Herman's [1] 57/1
Hernandez [6] 17/15 17/21 18/5 40/17
72/17 114/21
newcomer [1] 68/25
heroes [1] 48/13
Hey [2] 47/10 84/13
hide [1] 62/19
high [9] 12/25 13/7 13/25 36/13 60/12
92/18 120/6 131/2 131/12
high-low [2] 131/2 131/12
hijack [1] 43/13
HILARIE [2] 3/11 113/22
Hill [2] 44/18 44/18
him [12] 7/17 20/4 33/14 42/15 45/9
45/12 46/9 46/22 47/2 47/6 68/22 128/23
himself [1] 23/11
Hinkhouse [1] 22/9
hinted [1] 123/6
his [35] 7/12 11/17 21/15 21/24 24/4
24/4 29/21 33/14 34/13 34/15 35/1 36/21
43/8 43/11 43/18 44/10 44/11 44/12
44/15 44/15 45/15 46/3 46/8 46/10 46/14
46/25 47/4 47/20 48/5 48/11 55/23
104/17 104/20 104/20 125/13
history [1] 48/15
hit [1] 101/5
hitter [1] 68/15
hold [2] 36/15 50/2
holder [1] 67/19
holding [2] 63/2 63/24
Holdings [1] 10/13
Holwadel [1] 22/7
home [36] 3/11 14/15 19/6 24/3 25/5
37/24 45/24 46/17 46/17 47/5 47/12
53/7 53/19 53/20 54/2 54/4 54/6 54/7
55/17 56/2 56/20 56/22 56/23 69/20 70/2
87/25 102/21 104/10 110/6 113/17
113/20 113/23 113/24 114/1 114/12
119/19
Home Depot [5] 37/24 46/17 46/17 47/12
47/12
Home Depot's [1] 45/24
homeless [1] 41/1
homeowner [13] 29/20 54/1 55/22 55/23
56/2 56/4 56/16 57/13 74/13 74/14 87/24
93/3 112/12
homeowner's [1] 17/16
homeowners [29] 19/1 55/4 55/4 61/25
69/6 69/16 69/25 70/5 73/3 73/12 74/5
74/8 74/25 76/9 76/12 77/7 77/13 77/19
77/23 90/24 92/11 92/20 94/8 101/6
102/18 114/8 114/16 130/5 134/13
homeowners' [2] 88/3 88/11
homes [45] 9/22 13/20 18/7 18/12 23/19
24/17 24/18 24/23 27/3 28/9 28/25 29/1
29/23 30/3 30/3 30/6 30/7 36/16 41/3
51/13 52/5 52/19 54/12 54/14 54/17 55/2
55/6 56/13 56/15 56/25 57/9 57/15 58/9
70/5 74/25 87/17 88/3 88/11 99/22 110/5
110/7 114/5 114/6 114/10 120/8
Hong [2] 16/2 28/7
Hong Kong [2] 16/2 28/7
Honor [157]
Honor's [6] 11/16 11/20 45/22 53/25
59/14 66/10
HONORABLE [1] 1/11
Honus [1] 96/17
hope [61] 1/7 53/8 53/9 94/13 96/9 126/7
hopefully [8] 7/14 11/4 13/4 31/14 55/10
57/6 104/10 128/15
Hopper [1] 73/8
horse [1] 33/19
host [2] 22/6 35/1
hour [4] 6/22 42/2 42/2 89/4
house [4] 112/13 112/14 112/18 113/2

**H**

housekeeping [1]  117/8
houses [4]  99/20 99/20 104/10 107/18
Houston [1]  3/18
how [24]  13/3 26/24 29/3 31/10 33/13
42/6 45/1 47/15 51/7 58/18 66/2 66/9
69/8 72/1 84/11 93/12 100/17 100/22
104/25 105/22 115/7 115/10 118/22
124/23
however [7]  30/6 42/19 62/12 64/13
86/12 118/23 122/8
HUD [2]  39/23 105/15
Hudgins [1]  2/20
huge [3]  51/7 110/13 132/16
HUGH [3]  2/15 22/6 81/6
Hull [1]  43/7
humidity [1]  60/12
hundred [3]  6/17 74/12 99/2
hundreds [5]  13/22 14/23 15/4 72/17
77/3
hunt [1]  62/11
hurdles [1]  62/1
hurricane [2]  23/20 128/20
hurricanes [1]  14/1
hurry [1]  112/17
Hygiene [1]  106/7

**I**

I'll [13]  7/20 12/7 13/12 19/25 20/21 23/8
48/17 98/8 104/17 113/21 124/8 127/11
127/18
I'm [42]  8/22 9/3 9/23 20/19 28/22 35/24
36/18 36/18 36/25 38/20 43/22 45/6 48/9
48/16 48/17 48/23 49/7 50/15 58/19
67/22 68/14 68/15 76/13 83/14 90/14
91/4 91/15 95/14 101/1 101/18 107/5
108/15 110/15 111/1 111/13 122/4 122/5
125/21 125/25 126/18 128/14 136/5
I've [6]  7/6 9/19 29/20 37/16 94/23 107/5
idea [1]  103/11 115/12
ideas [1]  127/4
identical [1]  43/15
identified [2]  43/19 106/14
identify [2]  55/21 103/1
if [115]  12/7 16/13 18/9 20/1 20/12 24/2
24/2 29/9 29/24 30/4 30/21 31/21 33/18
33/25 36/1 38/25 40/3 40/25 42/20 44/22
45/15 45/18 45/23 46/3 47/17 48/23
49/23 50/2 52/1 54/10 60/18 62/4 63/17
66/6 66/14 66/20 66/24 67/20 74/19
77/11 79/7 79/24 81/7 81/18 83/16 84/8
84/21 84/24 92/6 92/15 92/18 94/4 94/14
95/4 96/11 98/1 101/25 102/12 103/13
105/5 107/6 110/15 110/16 110/20 111/2
112/15 113/1 113/15 116/4 116/14
116/14 116/23 116/25 117/3 118/16
119/9 119/12 119/25 120/7 120/14
120/14 120/21 121/15 122/8 122/25
123/2 123/8 123/14 123/18 123/22 124/6
124/7 124/17 124/19 125/20 125/22
126/9 126/18 127/13 128/3 130/11
130/14 130/24 131/9 131/10 131/14
131/18 131/24 132/5 132/6 132/18
133/18 134/4 134/21 135/15
III [1]  3/8
ilk [1]  53/16
Illinois [1]  43/9
illness [1]  106/13
immediate [2]  88/15 130/23
impact [3]  55/19 118/2 118/23
impacted [1]  51/13
impacts [1]  54/3

impair [1]  118/3
impairment [1]  133/6
impairment [1]  133/6
impasses [1]  72/3
impediment [1]  115/9
impenetrable [2]  68/1 68/1
implementation [1]  68/19
importance [1]  13/9
important [21]  28/19 37/4 39/4 49/14
50/23 51/10 51/21 52/4 56/4 56/15 69/7
76/25 77/4 81/23 88/15 103/3 105/22
106/8 107/8 115/16 115/21
importantly [3]  76/3 79/14 101/11
importers [2]  14/15 101/10
impossible [1]  43/13
Improperly [1]  43/13
in [618]
In Re [1]  80/16
inadequate [1]  32/17
incentive [1]  33/17
inception [1]  14/22
include [6]  50/25 108/10 109/4 110/24
119/18 128/11
included [8]  14/14 16/20 22/18 25/9
25/11 36/3 99/23 130/6
includes [2]  29/13 107/25
including [8]  14/8 15/2 15/10 17/6 41/15
46/14 106/14 106/16
inclusion [1]  60/7
inclusive [1]  25/23
income [1]  57/23
inconvenience [2]  20/25 55/11
incorporate [2]  21/7 32/22
incorporated [1]  22/21
incumbent [1]  130/2
indeed [2]  38/22 80/18
indemnification [1]  131/24
indemnity [2]  104/8 131/11
independent [2]  67/7 91/6
Indiana [3]  65/2 65/18 65/24
indicate [2]  115/17 127/7
indicated [5]  19/13 37/9 38/6 38/17 51/13
indicates [2]  38/1 60/3
indicia [1]  42/21
individual [6]  10/25 14/24 30/22 74/5
104/15 109/4
individuals [4]  101/8 112/19 125/11
129/17
Industrial [1]  106/6
industry [3]  32/4 60/5 65/25
inescapable [1]  95/20
InEx [67]  8/16 19/4 22/6 22/6 25/2 26/2
27/25 27/25 31/9 33/8 57/10 57/11 57/16
65/10 65/11 65/13 65/19 70/15 70/18
73/24 74/1 75/3 75/8 76/10 78/5 78/14
79/25 80/2 80/4 80/6 81/4 81/9 81/17
81/18 81/22 84/19 86/9 86/9 86/14 99/13
117/11 118/1 119/7 119/17 120/14
121/12 121/21 123/19 123/21 124/3
124/4 130/13 130/22 131/1 131/5 131/14
131/15 131/17 131/18 131/21 133/2
133/15 133/15 134/24 135/4 136/16
137/1
InEx's [1]  25/24
information [5]  21/4 39/17 45/5 57/3
124/2
inherent [2]  31/21 98/15
initial [2]  6/20 51/12
initially [3]  52/10 53/3 73/5
inject [1]  114/17
injunction [1]  40/25
injuries [9]  35/13 38/22 38/22 38/22
106/23 107/21 107/25 108/7 108/11

injury [24]  28/19 29/9 29/10 29/12 30/21
30/22 34/6 35/5 35/9 35/12 35/20
36/3 52/3 57/24 70/21 70/22 71/3 96/19
96/22 104/21 105/5 107/5 107/14
innocent [1]  41/2
input [1]  81/1
inquiry [1]  72/15
insert [1]  22/16
insofar [2]  57/12 97/7
inspect [1]  39/12
inspection [8]  46/13 46/23 47/25 48/3
53/14 53/21 53/21 54/22
inspections [4]  37/18 50/25 51/19 60/17
install [2]  94/24 95/1
installation [1]  14/4
installed [3]  14/3 47/17 106/12
installer [2]  100/3 100/12
installers [15]  8/17 14/14 14/15 19/6
40/10 58/2 70/12 94/19 94/23 94/24 99/1
99/23 101/10 102/19 104/5
instance [2]  60/23 131/25
instances [1]  112/16
instead [5]  29/23 69/1 71/21 99/15 132/8
instructions [1]  51/25
insufficient [1]  93/9
insulation [8]  65/3 65/3 65/8 65/11 65/11
65/14 65/17 65/24
insurance [27]  3/14 3/17 12/15 15/10
25/4 26/8 27/20 27/21 77/19 78/6 78/18
80/11 81/11 81/20 82/13 85/22 86/11
92/14 92/23 94/21 96/2 98/15 102/13
102/14 117/7 117/20 118/10
insured [7]  83/3 130/21 130/24 131/5
131/25 132/20 132/21
insureds [1]  104/5
insurer [5]  83/6 130/6 130/22 130/24
131/22
insurers [20]  8/17 14/16 19/4 70/13 80/7
83/16 84/9 91/25 92/4 92/24 93/1 95/2
98/23 99/3 101/14 101/15 101/25 103/17
130/3 130/7
integral [2]  76/11 87/20
integration [1]  57/9
intend [1]  19/14
intended [1]  123/3
intense [1]  38/8
intensely [1]  38/17
intent [1]  19/23
intentionally [1]  22/14
Interagency [1]  105/17
intercompany [1]  63/7
interdependent [1]  86/11
interest [7]  44/11 56/9 91/12 93/25 126/4
134/13 134/13
interested [3]  19/22 100/23 104/22
interesting [1]  64/6
interests [1]  7/24
Interior [18]  2/7 2/11 12/5 19/4 75/5
75/15 75/16 75/18 75/23 76/4 76/7 77/7
77/9 77/12 77/16 77/17 78/10 79/15
Interior Exterior [1]  75/16
interlink [1]  57/12
intermediate [3]  83/13 132/5 132/9
international [2]  2/15 17/5 76/19
Internet [1]  38/21
interpretation [1]  7/8
interrupt [1]  30/11
intervene [1]  115/14
intervened [1]  39/14
intervening [1]  46/24
interwoven [1]  86/10
into [64]  6/22 7/13 8/6 9/13 11/3 13/14
18/2 18/18 18/24 19/20 19/21 19/23

**I**

into... [52]  23/21 24/17 24/18 24/23 27/3
27/10 28/25 28/25 32/11 35/8 35/17
36/16 37/5 37/22 38/3 52/5 53/3 56/2
56/16 58/3 58/25 59/7 60/11 61/17 63/6
63/6 66/3 66/23 70/14 70/17 72/21 76/5
76/13 77/18 78/10 78/11 79/8 82/9 82/11
82/22 84/2 84/8 85/15 88/21 91/22 98/4
99/9 103/24 108/25 121/17 124/12 134/7
introduce [2]  36/25 37/22
introduced [1]  52/20
inventory [1]  51/11
investigate [2]  43/21 44/22
investigated [1]  38/17
investigation [3]  38/9 44/13 105/14
investigator [1]  33/15
invoices [1]  86/2
involve [1]  19/3
involved [28]  12/13 14/13 15/9 28/2
36/20 51/8 58/19 61/7 76/19 80/6 90/19
90/25 91/1 91/3 92/2 92/12 93/24 94/1
94/9 100/22 101/17 105/15 115/19 116/4
116/5 116/9 122/14 126/10
involves [1]  51/5
involving [8]  12/15 12/15 14/20 14/23
17/16 58/1 70/12 90/19
Iowa [3]  43/16 43/18 43/23
Irene [1]  65/13
Irons [1]  3/17
irritation [2]  14/10 38/24
is [413]
isn't [4]  44/18 48/20 132/11 135/24
issue [41]  9/18 10/6 49/11 49/12 49/12
64/20 64/24 78/22 80/15 83/10 83/10
85/12 104/22 104/23 105/4 105/12
106/21 111/5 111/21 113/12 119/5 119/6
120/16 120/17 121/11 125/17 126/1
128/24 129/9 131/10 131/20 132/10
132/11 132/12 133/10 133/10 133/12
133/16 135/9 136/2 136/13
issued [10]  10/25 16/3 16/24 17/21 38/5
39/6 39/21 40/19 101/19 103/7
issues [47]  8/21 12/14 12/15 13/3 14/9
14/10 15/9 15/10 15/24 19/11 53/5 53/6
53/10 72/9 78/7 78/12 88/25 91/7 100/6
102/25 102/25 103/5 104/16 104/21
105/1 105/2 105/3 105/19 106/17 109/17
110/1 110/3 110/7 110/18 112/8 113/19
118/23 119/3 125/13 129/10
129/12 133/4 135/1 136/2 136/3 136/13
it [284]
it's [126]  7/3 8/13 8/13 9/10 10/7 10/8
10/13 10/17 10/23 11/3 12/24 15/17
15/20 19/10 22/12 25/25 29/7 29/11
31/23 32/4 32/7 32/17 33/8 34/20 36/19
37/10 37/16 37/17 42/8 44/17 45/18 46/7
48/24 49/1 54/4 54/4 56/3 57/3 57/4
57/13 57/16 60/18 60/19 61/2 61/12
63/18 70/2 70/3 71/7 74/3 74/11 74/19
76/25 82/23 83/16 84/5 84/5 85/16 87/5
87/7 88/2 90/12 90/23 91/22 92/10 92/19
93/7 93/8 93/9 93/12 94/6 94/12 96/6
100/12 103/2 104/2 105/11 107/7 108/9
108/21 109/5 109/11 109/12 109/15
109/24 111/9 111/18 112/7 112/15
112/18 112/21 113/4 113/5 113/9 113/15
114/2 114/11 115/16 116/7 116/10
116/12 116/16 118/5 118/18 119/10
119/24 122/23 123/2 123/18 124/2 124/4
124/5 126/8 128/23 128/4 128/5 128/16
129/6 132/8 133/14 134/16 135/7 135/11
136/9 136/10 136/18

item [2]  10/12 44/7
item... [4]  10/16 43/9/4
its [32]  16/22 17/1 17/7 17/17 46/17 57/6
57/25 60/11 62/25 63/2 64/4 65/11 66/13
68/19 83/6 83/7 88/4 92/14 98/10 102/14
109/3 124/3 128/11 131/5 131/7 131/9
131/16 131/22 131/23 132/15 132/21
135/14
itself [3]  60/10 85/23 97/23

**J**

jail [2]  63/19 63/20
Jan [1]  33/22
Jane [2]  22/5 41/6
January [2]  13/12 38/13
January 23 [2]  13/12 38/13
Japanese [1]  116/7
JAY [4]  2/4 22/4 58/24 68/17
Jerry [1]  128/21
job [10]  9/25 11/15 11/20 37/17 52/10
68/23 77/6 77/14 77/22 94/25
Joe [2]  7/11 22/9
JOEL [3]  2/1 10/16 11/9
John [3]  52/9 58/4 100/16
Johnson [1]  2/7
Johnston [1]  11/14
joins [1]  98/17
joint [5]  8/12 111/8 111/9 111/12 133/2
JR [1]  2/8
judge [28]  1/12 6/11 7/11 7/15 7/18 7/18
7/21 7/22 8/7 8/8 9/24 10/3 11/13 12/8
21/14 37/3 37/3 41/12 49/19 49/25 50/8
56/8 95/15 96/3 96/11 106/19 108/8
128/19
Judge Fallon [6]  6/11 8/7 11/13 37/3
49/25 128/19
Judge Farina [2]  7/15 8/8 21/14
Judge Hall [1]  10/3
Judge Lemmon's [1]  49/19
judges [3]  7/7 15/7 100/2
judgment [18]  17/22 22/24 27/22 40/19
61/15 62/15 66/21 66/25 67/1 67/2 67/3
67/5 67/6 67/18 67/23 96/25 103/7
114/20
judgments [3]  17/1 71/17 103/18
judicial [2]  15/15 128/3
Juliet [1]  49/7
July [2]  17/12 27/15
July 2 [1]  17/12
July 31 [1]  27/15
juncture [1]  128/22
June [3]  14/19 88/13 130/17
June 11 [1]  88/13
June 15 [1]  14/19
jurisdiction [12]  8/21 16/25 61/16 62/13
65/22 67/9 67/10 67/13 67/14 84/11
103/3 113/6
jurisdictional [5]  66/7 66/9 66/12 66/20
67/12
jurisprudence [2]  32/8 33/20
jurists [1]  32/6
jury [1]  96/20
just [51]  10/8 11/10 12/22 13/16 23/17
24/8 28/15 29/14 32/6 35/19 48/17 49/6
50/11 50/13 59/3 62/24 63/3 67/1 68/17
80/2 82/11 82/20 85/2 86/8 88/3 95/1
95/20 97/10 98/13 105/19 108/17 110/15
113/18 115/8 115/19 115/24 117/3
117/12 117/14 120/2 121/9 126/2 126/5
126/8 128/7 128/8 129/5 129/11 134/17
136/14 136/24
justice [8]  32/4 41/11 49/15 55/3 64/7
64/10 64/21 115/16

Justice Scalia [1]  32/4

**K**

Kaplan [3]  3/20 3/23 31/20 124/23 125/4
125/4 125/12
Kaplan's [1]  125/11
Karl [1]  68/3
Katrina [6]  14/1 23/20 36/16 65/12 80/16
122/14
Katz [1]  1/15
Kaye [3]  2/4 68/13 68/20
keep [8]  10/10 15/23 23/6 37/9 37/10
111/24 127/11 128/9
keeping [1]  128/11
Kerrigan [1]  3/14
KERRY [5]  1/22 6/13 22/3 50/6 68/16
KEVIN [3]  3/17 117/19 127/15
key [1]  81/24
kicked [1]  52/24
kind [11]  36/5 54/14 61/12 62/19 64/2
81/19 85/2 86/22 86/23 112/1 112/21
kinds [2]  56/11 84/6
Kitech [1]  43/3
Knauf [107]  2/4 8/16 17/4 17/5 17/7 17/8
17/11 18/1 18/6 18/17 18/22 18/23 18/25
24/11 24/12 24/20 25/6 25/25 26/3 26/5
26/19 26/23 28/10 29/4 29/8 29/16 30/19
31/14 31/15 31/18 31/22 33/4 37/6 40/12
40/22 50/5 50/7 52/11 52/19 53/11 53/13
56/13 57/10 57/11 57/20 57/24 58/24
59/19 62/5 62/9 62/25 63/4 63/8 63/24
64/10 64/18 65/1 65/8 65/11 65/14 65/15
65/17 65/24 66/7 66/18 66/21 67/24
68/13 69/19 70/9 73/4 74/23 75/9 77/14
78/16 78/25 79/4 79/7 87/15 87/21 88/1
88/4 99/8 107/8 114/5 114/8 118/1 119/8
119/19 120/4 120/14 120/25 121/2 121/5
121/22 121/23 122/25 123/4 123/14
123/14 124/8 124/18 129/3 131/16
132/14 133/2 133/15
Knauf's [3]  25/5 25/23 27/25
knew [7]  26/3 26/6 26/20 45/20 46/3
65/14 77/12
knocks [1]  61/16
know [40]  13/3 20/8 26/16 31/5 36/17
42/1 43/1 44/16 44/22 45/6 45/21 45/23
46/4 47/8 47/17 48/8 48/8 48/9 48/13
55/18 56/5 59/9 59/9 59/13 65/15 68/14
69/9 71/11 88/25 95/12 95/25 97/19
102/20 104/6 105/1 109/16 115/25
126/10 128/20 136/1
known [5]  16/23 43/11 60/22 90/9 105/8
knows [15]  27/13 31/10 50/1 66/2 66/8
66/9 67/14 68/18 71/24 81/9 90/18 92/2
95/2 112/4 129/24
Kong [1]  16/2 28/7
Koretzky [1]  2/11
KPT [29]  17/7 17/13 17/16 17/17 18/19
28/8 50/7 56/21 60/1 60/4 60/16 61/19
61/22 62/2 63/13 63/23 64/4 64/19 64/25
65/20 66/7 66/12 66/17 66/19 70/11
87/16 87/17 87/25 120/9
KPT-related [1]  18/19
Kupperman [1]  3/7

**L**

labored [1]  41/22
laborious [1]  100/24
labors [1]  26/23
lack [4]  44/13 78/1 107/9 108/6
lacks [1]  82/17
ladies [2]  6/4 90/5
Ladner [1]  73/8

L

laed.uscourts.gov [1] 4/3
Laird [1] 21/18
landlords [1] 101/7
Landmark [2] 3/14 117/6
Landmark's [1] 117/10
language [3] 73/15 121/1 126/9
large [4] 10/1 99/18 99/19 99/22
largely [2] 10/3 18/4
last [18] 19/22 24/1 39/2 46/4 50/1 50/10
52/20 53/5 56/23 57/19 68/14 72/22
96/16 104/13 104/24 106/16 121/7
126/16
lasted [1] 41/16
Lastly [1] 30/8
late [1] 122/23
latent [4] 51/17 60/9 60/9 108/7
later [9] 26/17 27/3 46/12 47/25 52/2
52/20 111/11 111/12 119/12
law [26] 2/1 7/8 16/4 17/22 21/17 22/24
23/8 32/6 35/24 59/25 61/24 62/12 65/21
67/5 67/10 67/11 67/19 74/16 76/20
77/11 82/25 130/20 131/24 131/2 133/21
133/24
laws [5] 12/15 63/18 64/15 77/8 90/18
lawsuits [1] 14/23
lawyer [8] 8/8 33/13 36/10 40/20 43/11
45/9 49/1 62/8
lawyers [33] 8/10 12/22 12/25 13/2 13/9
25/11 25/13 27/1 27/7 31/7 31/8 31/23
34/19 35/14 36/7 36/8 36/9 37/18 39/24
41/21 46/9 48/4 48/7 49/13 57/3 57/16
63/23 70/1 70/22 76/20 90/12 96/12
123/4
lawyers' [3] 49/9 49/11 97/24
lead [7] 8/3 8/22 9/17 13/12 78/2 115/6
125/16
leads [2] 52/15 76/23
learned [2] 24/22 127/4
least [21] 7/24 13/8 16/2 16/14 26/14
48/3 68/9 83/13 97/11 97/19 98/4 110/14
114/13 114/14 116/14 117/21 118/4
118/8 129/16 133/23 136/1
leaves [2] 73/22 121/11
led [2] 16/13 76/1
left [7] 10/21 31/18 34/12 61/12 103/21
104/15 131/23
legal [1] 131/10
legalistic [1] 29/12
legally [1] 23/16
legislation [1] 116/17
legitimate [5] 23/25 48/2 49/4 66/20
71/18
Lemmon's [1] 49/19
Len [1] 21/24
length [4] 50/17 71/24 72/1 76/16
lent [1] 7/22
less [7] 28/1 35/17 73/5 92/16 114/8
123/25 132/3
LESSELL [2] 3/14 117/6
let [12] 13/15 27/10 50/5 62/5 86/23
97/17 113/17 113/20 126/10 127/23
136/1 136/12
Let's [5] 8/1 13/14 29/19 36/23 86/25
letter [1] 48/12
level [2] 63/24 102/6
Levin [12] 1/18 1/19 8/22 50/19 53/14
71/12 73/25 87/22 90/11 95/8 108/1
115/6
Lewis [1] 9/5
Lexy [1] 21/17
liability [17] 1/6 6/8 60/1 60/1 65/21

75/18 83/8 100/21 102/24 104/7 108/5
130/10 130/24 133/13 134/22 134/23
135/2
liable [3] 131/15 131/17 131/18
liaison [5] 6/9 8/4 11/19 13/12 100/7
Liberty [8] 2/14 74/1 80/7 81/6 81/12
85/13 130/7 131/1
lifted [1] 59/4
light [2] 71/20 71/22
like [48] 14/9 19/19 21/7 22/10 23/17
31/25 40/3 44/22 47/10 48/3 48/24 49/1
49/23 50/8 50/11 53/4 54/11 58/24 59/14
59/21 60/25 63/15 63/18 65/4 66/5 90/12
93/8 93/9 93/10 96/3 97/19 101/11 110/1
110/19 110/20 111/2 112/21 113/1
113/15 116/19 116/25 117/7 121/2 122/5
124/18 126/5 128/23 129/19
liked [2] 48/10 48/11
likely [7] 32/14 72/6 77/15 92/15 97/1
100/4 103/23
Lillian [1] 21/25
limine [1] 127/21
limit [2] 83/7 110/17
limitation [1] 102/25
limitations [1] 77/6
limited [5] 12/17 17/13 77/14 108/20
112/15
limits [15] 77/18 78/16 80/8 80/9 81/14
83/2 83/7 83/17 83/22 84/20 85/2 85/8
98/10 120/19 130/8
line [5] 40/15 40/16 61/5 70/23 116/17
lines [1] 110/16
lineup [1] 112/5
linked [1] 105/9
liquidate [1] 118/19
liquidated [1] 123/21
liquidates [1] 132/19
list [5] 22/12 127/9 128/1 128/4 128/5
listed [3] 28/13 35/1 59/1
listen [3] 15/23 117/1 126/19
listening [1] 128/22
literally [1] 41/4
literature [1] 106/24
litigable [1] 71/18
litigants [4] 25/18 28/2 58/19 113/7
litigated [2] 18/9 72/19
litigating [3] 71/21 90/12 100/4
litigation [50] 1/6 6/8 10/14 11/16 13/18
14/22 15/2 15/8 16/15 16/21 17/10 17/10
17/12 19/1 23/15 32/14 33/3 35/10 36/20
39/5 42/10 69/9 69/11 69/12 69/12 72/6
74/23 75/18 76/18 76/19 76/24 90/19
90/21 91/2 91/3 91/14 92/22 93/21 95/3
95/16 98/12 98/18 98/15 101/15 102/8
102/9 102/11 104/3 106/10 126/14
Litigation 2047 [1] 14/22
litigations [1] 101/17
little [9] 21/9 29/19 35/2 91/20 109/11
111/19 112/7 120/2 126/9
live [1] 19/14
lived [1] 43/7
lives [3] 24/18 52/6 70/6
living [1] 55/24
LLC [5] 1/15 1/21 2/11 2/21 3/8
LLP [7] 2/4 2/14 3/4 3/11 3/14 3/17 3/20
loans [1] 63/12
located [1] 65/18
locations [1] 28/8
lodge [1] 33/16
loggerheads [1] 72/2
logistics [1] 87/7
London [1] 28/7
long [13] 38/7 38/11 54/15 68/19 80/19
90/19 90/21 100/24 105/8 105/23 105/25

106/13 121/5
108/1 131/1 136/8
longer [3] 15/18 21/9 21/25
look [10] 33/24 49/3 61/22 74/24 86/8
97/17 98/2 102/12 102/13 116/18
looked [3] 47/9 51/19 65/3
looking [2] 62/2 100/10
looks [7] 33/3 33/3 33/6 33/8 47/10 98/3
105/6
Loop [1] 3/21
lose [3] 31/22 41/23 67/20
loser [1] 67/21
losing [1] 26/9
loss [18] 29/8 30/13 30/14 30/21 57/21
57/22 58/3 58/6 58/10 70/8 70/8 70/14
70/18 71/3 80/17 80/21 107/9 107/19
loss-of-use [1] 107/19
losses [2] 57/22 70/19
lost [3] 27/21 57/23 84/10
lot [20] 7/2 25/18 48/10 51/16 75/6 91/5
91/6 91/7 92/16 93/10 93/15 93/15 93/21
94/18 96/6 111/18 113/2 116/21 116/21
116/22
lots [1] 102/24
LOUISIANA [23] 1/2 1/7 1/17 1/23 2/9
2/13 3/9 3/15 4/2 15/17 23/19 28/7 33/8
36/15 45/14 75/8 77/8 80/15 83/1 83/5
83/11 130/21 137/11
low [5] 24/25 25/4 103/10 131/2 131/12
low-hanging [2] 24/25 25/4
low-lying [1] 103/10
Lowe's [4] 33/23 33/25 34/2 37/25
lower [2] 99/12 113/13
LP [2] 2/8 2/11
Lucie [1] 90/16
luckily [1] 51/16
lump [2] 29/23 29/24
lunch [2] 87/1 89/6
Luneng [2] 39/12 61/20
Lutz [1] 22/9
lying [1] 103/10

M

made [22] 8/24 20/6 30/21 31/24 46/13
47/25 55/18 60/11 60/17 65/9 80/4 83/3
85/14 99/1 101/9 120/24 121/2 124/1
127/14 128/8 130/5 133/18
Madison [1] 3/5
Mafia [1] 34/11
Magazine [1] 3/15
magnify [1] 114/15
mails [1] 38/20
main [2] 57/12 119/23
maintain [2] 75/17 79/13
maintained [1] 15/13
major [3] 9/1 24/11 130/3
majority [3] 56/6 93/25 94/11
make [34] 6/9 13/15 18/15 20/13 22/10
24/6 27/6 27/7 29/10 30/14 31/24 37/4
37/18 38/3 42/3 46/23 48/3 53/21 58/5
60/2 65/15 65/18 65/24 72/9 76/10 79/11
84/23 113/2 116/23 119/12 120/21 121/9
122/16 126/18 136/14
makes [7] 10/8 57/20 82/14 84/19 88/2
88/4 94/12
making [5] 19/18 44/25 53/25 86/2 86/22
manageability [4] 111/4 111/5 111/21
115/5
manager [1] 33/22
manifest [1] 60/10
manufacture [1] 66/22
manufactured [11] 1/5 6/8 13/20 13/23

M

manufactured... [7] 14/21 17/7 34/24 34/25 39/20 60/15 119/25
manufacturer [10] 16/19 25/15 57/11 60/2 60/3 61/19 61/22 65/20 66/19 99/7
manufacturer/sellers [1] 65/20
manufacturers [6] 14/14 14/16 17/5 28/11 39/11 101/11
manufacturing [3] 16/17 60/4 64/19
many [23] 7/11 7/13 7/13 21/1 29/4 30/6 51/13 68/20 68/25 72/1 76/19 76/20 76/20 94/17 95/21 100/22 101/16 101/18 101/25 102/21 106/11 113/24 126/13
Marathon [1] 44/21
March [5] 17/14 40/18 40/19 87/14 100/14
March 15 [1] 17/14
March 19 [2] 40/19 87/14
March 2010 [1] 100/14
March 5 [1] 40/18
MARK [2] 3/20 124/24
marked [1] 40/6
market [2] 60/16 66/5
marketed [1] 66/24
marshal [1] 37/19
marshals [1] 20/20
Marvel [4] 48/11 48/11 48/14 69/3
marvelous [1] 48/16
Mary [1] 31/25
Massachusetts [1] 2/16
master [1] 58/5
masters [1] 15/6
match [1] 102/19
material [1] 60/7
materials [2] 10/24 129/15
matter [15] 10/10 11/4 12/3 12/3 29/3 45/1 45/2 47/19 60/21 85/13 87/6 97/18 117/8 122/21 137/14
matters [5] 9/15 12/23 52/17 98/1 98/1
mattresses [1] 34/11
mature [1] 32/16
maximized [1] 93/12
maximum [1] 96/8
may [35] 8/7 12/6 20/5 20/17 23/15 37/3 37/13 39/8 41/14 58/23 79/24 81/3 81/7 85/23 87/2 87/10 93/22 93/22 97/1 97/7 109/17 113/18 114/19 127/1 128/19 130/16 130/16 132/11 136/5 136/6 136/9 136/10 136/10 136/20 136/20
May 31 [1] 130/16
maybe [8] 6/21 34/4 85/20 97/15 112/4 126/8 127/18 129/17
MAYESH [10] 2/4 22/4 58/22 58/24 68/14 69/14 71/9 71/14 75/13 77/5
Mayesh's [1] 127/4
MD [1] 1/5
MDL [14] 6/14 14/22 15/11 17/9 17/12 18/3 96/4 97/12 101/11 109/4 109/5 109/13 110/9 110/11
MDL'd [2] 50/22 51/5
MDLs [3] 7/1 7/2 109/4
me [34] 7/7 7/7 7/11 7/14 7/15 11/9 13/15 24/7 27/10 34/10 35/2 42/9 45/15 48/17 48/25 49/17 50/5 50/18 61/9 68/14 75/7 95/9 97/17 113/17 113/20 115/25 120/14 126/10 127/13 127/23 136/1 136/12 136/13 137/8
mean [2] 30/10 118/7
meaning [3] 60/9 96/9 130/23
means [5] 56/19 69/24 103/21 107/9 131/21
meant [2] 56/11 83/5

mechanical [1] 4/5
mechanism [1] 135/18
mediation [4] 100/19 101/1 130/15 130/16
mediations [1] 16/5
mediator [1] 100/16
mediators [1] 15/6
medical [1] 106/24
meet [14] 13/12 13/13 19/23 20/20 39/9 39/15 47/15 55/20 100/15 110/3 110/21 120/11 128/23 133/21
meeting [3] 39/10 40/24 52/7
meetings [4] 31/11 52/13 52/14 57/4
MELISSA [2] 3/14 117/6
member [6] 21/16 24/5 24/6 79/15 79/17 118/6
members [17] 20/14 23/25 33/5 43/14 53/11 57/17 69/24 71/10 78/1 81/16 104/2 105/17 122/9 122/11 122/16 122/20 134/25
memorandum [2] 79/4 79/5
memories [1] 75/22
memory [1] 47/11
mention [6] 6/25 7/17 8/19 57/8 68/17 97/10 102/18
mentioned [10] 10/5 17/2 17/24 49/22 51/3 56/13 91/21 94/16 98/10 115/24
Mercutio [1] 49/6
merely [4] 65/25 75/9 107/17 119/9
merits [3] 86/17 91/19 108/24
mess [1] 63/17
Messrs [1] 23/8
Messrs. [1] 9/5
Messrs. Serpe [1] 9/5
met [11] 8/3 19/22 31/1 32/25 33/1 47/1 47/5 47/15 60/5 60/12 88/8
method [2] 18/10 116/12
Meunier [1] 128/21
Mexico [2] 34/16 47/22
Miami [4] 3/2 3/12 52/8 52/9
MICHAEL [1] 3/1
microphones [1] 6/18
microwaves [1] 14/8
might [16] 46/9 59/18 69/9 71/4 94/20 97/10 102/20 109/23 111/7 122/16 122/19 123/6 123/14 134/6 136/9
Mike [4] 22/4 90/9 95/7 95/9
MILLER [11] 1/22 6/13 12/7 22/4 24/21 50/6 61/10 68/14 69/14 70/7 87/22
million [28] 25/9 26/1 26/19 26/22 27/16 27/20 28/3 29/8 30/20 31/10 37/6 58/1 70/9 70/10 70/13 95/11 100/25 113/1 113/3 114/23 118/9 122/11 122/12 124/10 124/10 132/3 132/4 132/9
millions [3] 13/22 59/13 111/17
Milstein [11] 3/20 3/20 23/9 23/10 23/14 23/14 31/16 42/5 104/24 124/25 124/25
mind [3] 111/25 116/18 117/3
minds [1] 103/24
mine [6] 39/12 60/8 61/5 61/20 119/25 120/5
minimal [1] 55/11
MINOR [4] 3/8 22/8 28/18 98/22
minuses [1] 91/21
minute [5] 15/12 20/19 49/19 82/20 128/1
minutes [5] 6/21 20/21 42/2 45/7 50/11
misguided [1] 23/16
Mississippi [1] 33/9
Missouri [2] 43/16 43/22
misunderstands [1] 129/22
mode [1] 95/4
mom [3] 69/4 69/4 94/19

mom-and-pop [1] 94/19
Monday [1] 57/5
monetize [2] 16/13 18/15
money [35] 11/2 25/25 26/3 26/3 26/10 26/23 27/2 29/23 35/7 35/17 48/17 48/21 48/22 62/1 70/10 70/16 82/9 82/12 84/8 84/11 84/13 85/20 85/21 92/16 92/23 93/9 93/9 96/2 104/9 107/6 114/7 114/9 117/15 123/21 133/22
Monica [1] 3/21
monies [1] 96/23
moniker [1] 64/14
monitored [2] 16/5 63/12
monkey [1] 32/10
Monopoly [1] 123/21
Monte [2] 62/19 62/23
month [1] 54/14
monthly [3] 1/10 6/16 15/3
months [3] 41/9 41/9 57/6
monumental [1] 12/12
moot [3] 119/4 136/5 136/6
mooted [1] 123/1
moots [1] 123/11
more [38] 11/22 24/6 26/15 29/19 31/7 35/2 37/12 38/2 40/1 51/13 51/14 53/6 56/25 57/5 57/20 58/13 70/22 75/6 76/3 78/13 79/14 88/15 90/5 93/8 93/9 93/15 93/19 96/5 103/23 104/10 111/7 113/10 113/16 117/7 121/11 125/23 126/19 133/1
morning [19] 6/1 6/4 6/11 6/13 8/15 8/25 21/6 21/9 40/6 48/16 50/6 61/11 68/12 75/4 75/22 87/13 103/21 106/20 121/13
mortar [1] 53/17
Moss [1] 54/11
most [22] 6/22 18/20 19/3 21/25 22/7 26/9 36/7 37/16 39/4 48/25 49/6 49/16 57/7 61/6 69/7 99/11 99/21 100/4 102/18 105/22 112/1 114/13
mostly [2] 9/10 74/4
motion [5] 34/6 44/14 111/12 127/16 128/1
motions [7] 15/10 15/22 31/11 72/18 111/8 111/9 127/20
mouth [1] 133/23
move [14] 13/14 29/2 29/2 30/4 30/4 36/23 53/7 54/19 55/24 55/24 70/6 91/2 94/5 109/6
move-in/move-out [3] 29/2 30/4 55/24
moved [3] 7/13 36/24 38/25
movement [1] 18/20
moving [2] 58/13 114/13
Mr [2] 40/13 46/25
Mr. [109] 12/7 21/15 22/15 23/10 23/23 24/1 24/21 28/17 28/18 32/3 33/2 33/14 33/14 33/22 34/25 35/1 35/3 35/10 36/11 36/23 36/25 37/1 37/24 40/13 42/12 42/13 42/15 42/24 43/8 43/18 43/22 43/23 44/7 44/14 45/10 45/13 46/12 47/5 47/7 47/7 48/15 48/25 50/19 50/20 51/25 52/13 53/14 57/1 58/21 58/22 59/1 61/8 61/9 61/10 68/14 68/14 69/14 69/14 70/7 71/9 71/12 71/12 71/14 73/25 73/25 74/1 75/13 77/5 77/5 77/22 80/3 87/22 87/22 87/23 90/11 90/15 91/21 91/25 93/21 95/8 97/3 98/9 98/9 98/17 104/17 104/19 104/24 104/24 105/4 105/12 108/1 114/25 115/4 125/24 125/11 125/12 125/18 126/16 126/17 127/3 129/5 129/7 129/21 129/22 132/11 134/4 134/21 135/5
Mr. Bandas [27] 23/23 24/1 32/3 33/2 33/22 34/25 35/3 36/11 36/23 42/15 43/8

# M

Mr. Bandas... [16]  43/18 43/22 43/23
44/14 45/10 45/13 46/12 47/5 47/7 47/7
48/25 104/17 104/19 105/4 126/16
126/17
Mr. Bandas's [3]  37/24 42/24 48/15
Mr. Batman [2]  33/14 33/14
Mr. Brandao [2]  59/1 129/5
Mr. Duplantier [1]  132/11
Mr. Duplantier's [1]  80/3
Mr. Durkee [1]  104/24
Mr. Durkee's [1]  125/18
Mr. Garcia [2]  40/13 42/13
Mr. Glickstein [8]  21/15 58/21 61/9 77/5
77/22 87/23 91/21 127/3
Mr. Herman [13]  22/15 23/10 28/17 35/1
35/10 36/25 37/1 50/20 51/25 52/13 61/8
71/12 105/12
Mr. Herman's [1]  57/1
Mr. Kaplan [3]  125/4 125/12
Mr. Kaplan's [1]  125/11
Mr. Levin [8]  50/19 53/14 71/12 73/25
87/22 90/11 95/8 108/1
Mr. Mayesh [7]  58/22 68/14 69/14 71/9
71/14 75/13 77/5
Mr. Miller [7]  12/7 24/21 61/10 68/14
69/14 70/7 87/22
Mr. Milstein [1]  104/24
Mr. Minor [1]  28/18
Mr. Nizialek [1]  73/25
Mr. Panayotopoulos [4]  97/3 98/9 98/17
134/4
Mr. Peterson [4]  90/15 91/25 93/21 98/9
Mr. Pipes [2]  114/25 115/4
Mr. Pipes's [1]  129/7
Mr. Risley [4]  129/21 129/22 134/21
135/5
Mr. Scott [1]  74/1
Mr. Soto [1]  42/12
Mr. Soto's [1]  44/7
Ms [1]  44/18
Ms. [2]  34/2 44/18
Ms. Hill [1]  44/18
Ms. Petrus [1]  34/2
much [17]  11/12 15/16 21/8 22/21 59/11
70/21 70/22 79/22 81/1 82/19 86/24
98/19 99/16 122/21 126/22 134/6 136/23
Multidistrict [1]  14/21
multimillion [1]  67/23
multimillion-dollar [1]  67/23
multiple [1]  97/21
multiunit [1]  54/13
Murphy [1]  35/22
must [7]  40/25 41/2 62/14 62/15 62/18
67/19 131/22
Mutual [6]  2/14 74/1 81/6 81/12 85/13
130/7
my [33]  19/13 21/24 24/7 27/16 27/23
32/23 33/7 33/18 33/23 40/4 43/10 45/15
50/18 50/18 53/21 54/24 55/14 60/16
61/8 68/6 68/9 68/17 68/22 68/23 69/3
69/4 69/4 95/12 99/11 112/19 121/3
125/18 137/12
Myers [1]  96/16
myself [3]  21/15 21/24 68/16
mystery [1]  51/7

# N

naked [1]  49/3
name [2]  33/14 95/12
named [1]  17/9
namely [1]  16/21

national [6]  38/13 38/16 106/5 109/22
nationals [1]  115/18
natural [1]  60/16
nature [2]  93/8 131/12
NE [1]  2/22
necessarily [3]  103/11 112/24 115/24
necessary [10]  7/3 8/5 10/7 55/9 67/15
67/22 74/3 74/19 78/14 128/13
necessity [1]  30/22
need [17]  11/9 27/3 76/4 81/15 81/20
111/24 120/21 123/11 124/18 127/13
128/16 133/7 135/25 136/1 136/2 136/11
136/13
needed [2]  110/21 121/23
needs [3]  75/21 76/3 133/1
negative [1]  56/6
negligence [1]  59/22
negotiate [2]  54/25 92/3
negotiated [7]  25/8 26/1 26/7 26/19
29/16 37/8 37/8
negotiating [1]  93/1
negotiation [2]  41/10 76/16
negotiations [5]  16/5 50/17 71/25 102/4
109/8
neighborhood [1]  114/21
neither [1]  40/7
never [15]  34/18 42/19 44/3 45/21 45/22
45/24 46/18 47/21 56/2 63/24 66/23
66/24 96/4 123/20 136/20
nevertheless [1]  82/25
new [24]  1/7 1/17 1/23 2/6 2/6 2/9 2/13
3/6 3/6 3/9 3/15 4/2 28/7 32/2 40/17 41/6
41/8 42/11 49/2 53/19 54/5 54/5 69/20
74/25
New York [4]  28/7 40/12 41/6 41/8
newly [1]  14/3
newsworthy [1]  103/7
next [12]  13/11 13/14 40/15 40/15 41/14
54/16 54/20 75/3 76/23 81/18 93/17
102/8
nice [1]  22/8
NICHOLAS [1]  2/21
Nick [1]  90/9
nickel [1]  63/25
night [5]  22/2 24/1 49/10 49/10 104/13
nilly [1]  93/16
ninth [1]  68/15
nitty [1]  28/23
nitty-gritty [1]  28/23
NIZIALEK [5]  2/12 22/5 23/11 73/25 80/2
no [78]  9/15 10/8 11/1 11/1 24/3 24/6
27/17 28/1 29/3 30/12 33/4 34/15 35/9
35/13 38/11 40/6 40/13 40/20 43/25
44/19 45/3 45/18 46/1 46/1 46/1 46/9
46/13 47/3 47/11 47/16 47/17 47/18
47/25 47/25 54/24 55/13 55/17 57/5 59/9
59/22 61/2 61/19 63/10 63/20 64/3 65/5
79/17 86/21 87/5 88/14 88/15 91/10 92/3
95/16 100/11 101/20 101/22 101/23
103/18 105/8 106/23 108/2 112/23
112/23 115/1 117/15 117/23 118/5 118/7
119/20 119/20 119/20 120/9 123/18
126/20 127/1 131/5 132/1 136/21
nobody [5]  59/24 72/5 72/11 110/21
135/13
nonblessed [1]  23/22
noncollusive [1]  50/17
noncovered [2]  82/12 84/17
none [4]  37/7 73/12 74/6 123/5
nonlawyer [1]  43/2
nonparticipation [1]  132/16
nor [3]  40/8 40/21 75/15

normal [2]  101/11 112/3
normalcy [1]  113/8
North [61]  2/2 3/17 3/21 23/9 23/12 31/9
73/23 73/23 78/6 78/18 79/9 79/12 79/15
80/4 80/9 80/10 80/12 80/21 80/25 81/3
82/6 82/7 82/14 82/15 85/19 85/24 86/11
86/12 86/21 116/24 117/20 117/22
117/25 118/5 118/14 118/16 118/20
121/2 122/3 123/23 124/22 130/6 130/7
130/9 130/12 130/15 130/19 131/4 131/7
131/14 131/22 132/15 133/6 133/12
133/13 133/17 134/2 134/22 135/13
135/22 136/1
North River [45]  23/9 23/12 31/9 73/23
78/6 78/18 79/9 79/15 80/4 80/9 80/10
80/12 80/21 80/25 82/6 82/7 82/14 82/15
85/19 85/24 86/11 86/12 86/21 116/24
117/20 117/22 117/25 118/5 118/14
118/20 123/23 124/22 130/9 130/12
130/15 131/7 131/14 131/22 133/6
133/12 133/17 134/2 134/13 135/22
136/1
North River's [9]  73/23 121/2 130/6
130/7 130/19 131/4 132/15 133/13
134/22
Northern [2]  60/8 60/15
not [243]
note [2]  82/14 103/3
noted [3]  69/22 72/7 105/8
notes [1]  48/5
nothing [12]  12/9 42/6 45/2 45/20 64/1
64/13 64/23 85/25 94/22 96/21 98/3
112/22
notice [23]  9/10 10/24 11/1 27/23 27/24
31/2 31/4 31/4 85/9 85/14 101/1 118/17
121/24 122/9 122/14 122/15 122/17
122/22 122/24 128/3 133/1 133/4 133/8
noticed [4]  19/9 19/22 121/14 124/14
notices [1]  10/6
noticing [1]  14/6
notified [3]  130/12 130/13 130/13
notion [1]  84/16
notwithstanding [2]  80/25 82/15
November [10]  1/8 6/2 12/4 17/13 23/3
23/5 45/7 90/2 117/12 131/6
November 1 [1]  45/7
November 16 [1]  12/4
November 2 [1]  17/13
November 26 [1]  131/6
November 9 [3]  23/3 23/5 117/12
novo [1]  67/11
now [65]  7/11 7/13 8/9 9/20 11/24 12/4
13/14 14/23 17/2 18/8 21/4 22/25 24/10
26/13 31/22 31/25 32/2 34/14 34/17
36/17 37/21 38/20 39/2 40/3 40/12 40/17
42/12 42/23 44/13 45/6 47/24 48/9 49/20
50/5 53/3 54/12 54/15 57/1 57/4 64/6
65/10 66/11 76/10 76/10 79/9 85/19 93/4
93/12 95/3 104/13 104/14 112/8 113/1
114/15 116/2 118/4 118/17 119/2 119/13
121/12 122/2 122/4 122/13 124/9 132/24
number [27]  8/5 12/16 12/17 13/21 14/17
20/11 29/21 51/4 52/13 53/13 57/6 59/12
72/8 72/24 72/25 79/8 79/10 87/17 93/4
100/20 102/15 103/17 103/23 110/13
112/25 132/2 133/3
numbers [4]  50/4 103/16 109/7 113/13
numerosity [2]  110/6 115/5
numerous [9]  15/2 16/4 17/9 18/22 19/6
92/1 106/8 106/15 129/25

# O

O'Keefe [1]  1/16

**Q**

object [11]  27/5 33/11 42/8 46/22 48/6
  79/17 118/2 119/13 128/2 128/3 128/5
objected [5]  31/19 43/4 46/11 104/12
  117/25
objecting [2]  32/3 32/4
objection [40]  33/16 34/15 36/14 37/5
  41/25 44/1 44/15 48/1 73/8 73/8 73/9
  73/11 73/11 78/6 78/7 80/11 80/25 82/6
  82/7 82/22 86/13 86/18 86/19 86/19
  86/22 93/6 93/7 93/7 94/2 94/3 106/21
  117/8 120/24 121/6 124/17 125/4 125/5
  125/7 126/16 127/10
objections [44]  11/1 23/7 23/11 23/15
  32/2 34/13 34/24 34/25 38/3 42/16 43/7
  43/12 43/16 48/7 52/17 53/9 68/24 69/1
  72/24 73/5 73/6 73/10 73/12 73/24 74/2
  74/4 78/1 78/4 78/4 79/9 80/4 81/4 82/14
  82/17 82/20 85/24 88/14 88/16 103/21
  104/14 119/4 119/6 119/23 129/6
objector [11]  31/20 31/25 33/17 34/2
  40/20 40/20 43/6 43/19 44/8 44/10 73/20
objectors [10]  20/1 32/7 43/24 45/3
  73/22 100/9 107/13 116/24 117/3 126/23
objects [1]  47/14
obligation [5]  24/24 31/6 85/1 120/18
  122/23
obligations [1]  118/15
obstacles [2]  71/19 77/17
obtain [5]  9/2 25/4 53/8 54/25 135/6
obtained [5]  26/9 29/1 74/22 83/23 83/25
obviously [9]  90/18 91/4 91/6 91/10
  93/18 93/24 100/7 104/6 110/23 113/24
  114/4 114/6 132/16
occasion [1]  38/24
occasionally [1]  116/5
occasions [1]  10/5
occupants [1]  14/5
occur [1]  64/20
occurred [2]  52/8 60/18
occurrence [1]  120/11
occurs [1]  55/18
October [2]  18/1 133/3
October 14 [1]  18/1
October 23 [1]  133/3
odor [3]  17/19 60/20 61/1
odors [2]  14/6 60/23
off [14]  34/3 47/9 48/11 50/7 53/20 55/22
  60/21 62/2 69/23 73/13 85/12 87/8 108/1
  111/21
off-gassing [1]  60/21
offer [3]  37/21 58/25 96/25
offered [3]  53/2 68/8 128/4
offers [2]  44/9 53/16
office [8]  33/22 43/8 47/2 57/2 58/4
  100/16 125/18 125/18
officer [1]  114/22
offices [1]  45/10
Official [3]  4/1 137/9 137/18
often [1]  59/6
oftentimes [4]  12/16 97/22 98/1 112/15
oh [2]  38/21 45/12
okay [5]  10/15 35/19 49/18 114/17 117/5
old [1]  82/24
omitted [1]  22/15
omnibus [2]  115/12 116/11
on [191]
once [1]  47/22 53/24 118/11
one [85]  3/18 6/15 7/10 9/16 10/12 10/21
  12/18 15/14 20/3 25/6 29/9 29/21 32/5
  34/16 34/17 36/9 37/7 39/4 40/13 46/16
  49/25 51/3 52/20 53/13 54/24 55/8 59/2

  59/24 60/23 61/13 62/19 63/22 64/25
  66/3 66/11 66/13 66/23 73/21 74/24 75/5
  76/15 78/5 79/10 80/2 80/4 82/6 82/8
  84/22 85/5 86/9 86/12 88/17 92/23 93/8
  93/6 93/16 94/1 94/13 95/15 96/11 97/12
  97/17 104/15 104/19 104/24 106/14
  106/16 108/17 109/12 110/19 111/1
  112/3 112/11 113/6 113/18 116/25 119/4
  119/16 119/23 120/24 121/11 122/13
  125/22 135/2 136/24
one's [1]  61/3
ones [4]  25/13 96/12 111/2 118/1
ongoing [3]  18/6 76/10 106/11
only [37]  6/21 12/3 28/24 28/25 29/11
  29/16 36/10 38/23 39/13 39/25 45/8 46/5
  46/11 47/13 47/13 60/20 64/14 64/21
  66/4 72/19 73/4 78/5 83/22 84/5 88/17
  93/6 94/1 104/2 110/12 112/18 115/24
  117/25 118/1 123/22 125/6 132/8 136/16
open [10]  6/3 10/10 30/5 50/2 90/3 95/21
  127/11 128/9 128/11 128/14
open-ended [1]  30/5
operated [1]  64/11
operating [1]  54/15
operation [1]  56/4
opined [1]  93/25
opinion [3]  32/5 92/8 93/23
opinions [2]  77/25 97/22
opponent [1]  98/2
opportunity [11]  6/25 7/16 27/5 87/12
  116/23 125/23 127/12 129/16 129/18
  135/13 135/23
oppose [1]  27/5
opposite [1]  62/25
opt [26]  10/7 11/2 23/4 23/6 31/21 32/1
  35/15 35/18 37/9 37/10 37/11 72/24
  72/24 73/1 88/17 88/18 92/9 93/3 94/4
  94/5 94/7 97/4 97/5 103/22 103/23 123/6
opt-out [3]  32/1 35/18 123/6
opt-outs [19]  11/2 23/6 31/21 35/15 37/9
  37/10 37/11 72/24 72/24 73/1 88/17 92/9
  93/3 94/4 94/7 97/4 97/5 103/22 103/23
opted [3]  31/18 92/9 93/4
option [3]  54/10 92/19 93/18
options [1]  54/8
or [144]
oral [1]  19/15
oratory [1]  14/6
order [18]  11/11 16/25 17/13 19/13 22/24
  27/18 28/5 42/22 53/14 56/24 63/17
  67/18 74/15 78/14 78/17 78/20 81/10
  82/1
ordered [1]  46/16
ordering [1]  100/13
orderly [1]  126/5
orders [9]  11/5 15/11 15/12 50/23 50/24
  50/25 50/25 51/1 51/22
ordinarily [3]  37/13 41/19 61/3
ore [1]  60/7
organizations [1]  106/8
oriented [1]  109/20
original [3]  34/13 37/8 120/25
originally [6]  39/8 39/12 45/4 46/10
  114/25 115/6
Orleans [8]  1/7 1/17 1/23 2/9 2/13 3/9
  3/15 4/2
Oser [1]  21/19
ostensible [1]  62/8
other [88]  6/22 12/3 13/6 13/20 17/4
  20/14 23/17 26/23 28/3 28/8 28/10 29/8
  30/4 30/9 30/13 30/20 30/21 31/25 34/17
  36/19 38/10 40/11 42/7 47/6 48/3 48/18
  50/7 52/17 53/9 55/15 57/2 57/21 57/22

  58/3 58/6 58/10 58/21 59/3 59/7 60/18
  62/20 64/25 66/4 66/16 67/4 67/20 70/8
  70/14 70/18 70/22 71/3 71/23 73/10 74/4
  74/13 77/8 78/7 85/23 88/9 90/13 90/15
  90/25 91/5 91/14 91/23 92/19 92/20
  94/21 96/24 98/16 100/1 102/1 102/7
  106/8 106/15 107/9 108/24 110/15
  111/24 112/7 117/25 120/1 120/9 128/5
  128/22 131/1 131/18 134/1
Other Loss [2]  70/18 107/9
others [6]  29/9 42/9 68/20 122/6 125/22
  132/6
otherwise [1]  118/25
Oubliette [1]  43/25
ought [2]  20/12 136/11
our [81]  13/14 22/19 26/23 28/3 28/5
  28/15 28/24 31/3 31/8 32/3 32/12 32/20
  33/19 34/5 40/18 41/24 44/24 48/21 52/7
  53/7 55/19 58/25 61/13 61/16 69/14 70/4
  73/7 73/7 73/9 73/23 75/24 78/11 78/22
  79/2 79/4 79/17 80/7 80/14 80/22 81/14
  81/21 81/24 81/25 83/14 83/17 83/23
  85/13 86/16 91/11 91/12 92/7 92/10
  95/17 95/25 96/2 97/4 97/5 106/4 108/16
  111/1 118/3 118/7 119/3 119/3 119/14
  119/23 120/16 123/7 125/5 125/14 126/3
  126/21 127/8 128/21 129/24 130/10
  130/14 133/22 133/23 134/11 136/14
out [66]  7/10 7/21 10/7 10/24 25/14
  26/24 27/11 29/2 30/14 31/8 31/19 32/1
  33/15 33/25 35/18 37/7 38/25 40/5 42/8
  42/22 45/16 45/18 49/17 51/11 51/11
  51/22 52/10 52/14 53/15 53/18 54/6
  54/23 55/10 55/24 60/8 63/3 63/25 64/1
  64/7 65/1 65/16 65/21 67/4 79/5 84/12
  92/6 93/1 93/5 96/3 100/2 102/16 102/22
  103/8 106/17 112/9 112/13 112/14
  112/21 113/10 117/11 121/16 121/23
  123/6 123/16 126/8 127/3
out-front [1]  31/8
out-of-pocket [1]  27/11
outcome [1]  50/12
outlet [1]  71/7
outs [20]  11/2 23/4 23/6 31/21 35/15
  37/9 37/10 37/11 72/24 72/24 73/1 88/17
  92/9 93/3 94/4 94/7 97/4 97/5 103/22
  103/23
outset [2]  72/7 72/13
over [35]  14/22 15/2 15/4 15/8 16/2
  17/15 17/22 18/7 28/9 34/10 38/20 41/4
  48/1 50/10 52/18 53/5 54/12 61/12 80/8
  80/10 84/10 98/25 99/2 101/2 101/5
  101/8 101/13 101/15 101/17 101/19
  101/21 106/11 110/7 125/15 136/21
overall [1]  76/11
overcome [1]  71/19
oversee [1]  15/1
overwhelming [1]  56/6
own [6]  24/24 46/14 65/2 69/25 99/14
  124/9
owned [7]  16/22 24/15 61/20 63/1 63/5
  63/14 63/20
owners [4]  11/7 14/5 14/12 63/23
ownership [1]  62/10
owns [1]  24/13

**P**

PA [2]  2/17 3/23
package [2]  9/23 10/24
packages [1]  22/2
page [4]  5/2 13/16 42/24 86/13
page 3 [1]  42/24
pages [3]  77/2 129/7 133/4

paid [16]  30/18 34/3 35/15 55/12 55/16
70/20 73/13 83/2 83/22 84/12 85/25
88/12 88/12 107/19 107/20 119/20
Palm [1]  125/5
PANAYOTOPOULOS [6]  2/21 90/9 97/3
98/9 98/17 134/4
panel [1]  97/12
Papantonio [3]  22/4 90/9 95/9
paper [2]  24/1 116/21
papers [3]  43/7 73/7 73/9
paralegal [1]  33/14
parental [1]  64/4
Paretti [4]  82/25 83/14 83/20 83/25
Park [1]  2/5
part [31]  9/23 19/19 19/21 21/7 22/10
23/24 32/12 44/12 57/25 58/25 75/19
75/20 76/10 78/19 81/10 81/24 86/9
87/18 87/20 99/11 99/21 104/1 104/6
110/9 111/24 113/11 114/13 116/23
126/18 132/23 135/16
participant [1]  75/23
participate [4]  99/21 102/6 103/19 130/4
participated [1]  102/7
participating [10]  33/24 34/1 45/23 47/13
98/23 98/23 100/3 100/23 102/15 110/13
participation [8]  43/25 44/2 57/2 75/24
75/25 82/18 130/12 130/19
particular [13]  7/6 9/13 9/18 9/23 12/21
17/23 36/14 57/15 73/20 78/4 78/7 91/24
111/19
particularly [9]  6/25 14/2 21/24 60/8
71/21 94/23 116/7 129/9 134/5
parties [24]  10/7 16/12 18/14 19/22
51/25 56/9 72/8 72/21 76/20 96/7 100/13
102/3 108/25 110/14 116/5 116/6 117/10
125/13 127/12 130/5 130/10 130/17
131/11 137/2
partner [1]  68/17
partners [1]  61/13
parts [1]  110/24
party [6]  51/1 74/16 82/15 86/11 116/9
116/16
pass [1]  53/20
passed [1]  26/4
passes [1]  29/15
past [2]  60/22 94/16
patent [1]  51/17
patience [1]  50/9
pauper's [1]  112/21
pay [17]  27/23 48/17 48/21 48/21 64/16
67/20 69/19 69/25 70/1 84/8 85/1 95/13
97/1 104/9 120/20 123/20 131/22
paying [12]  81/14 82/9 82/11 82/12
82/22 84/2 84/4 84/17 85/3 85/17 86/1
120/10
payment [5]  69/21 84/21 85/3 85/7
119/22
payments [2]  84/23 85/4
payoff [1]  36/18 36/19
payout [1]  29/5
pays [1]  67/21
PC [1]  2/1
peace [1]  36/5
Peachtree [1]  2/22
peculiar [1]  68/8
penalty [1]  64/16
pending [1]  34/6
Pennsylvania [1]  1/20
penny [2]  86/3 123/20
pension [1]  112/17
people [45]  6/17 15/16 18/11 20/11 21/1

23/18 24/16 24/18 29/20 38/23 41/1 41/3
46/12 48/11 49/3 49/6 52/5 52/12 53/1
53/4 56/7 56/21 58/6 59/17 63/19 65/14
85/20 91/2 92/16 93/4 93/13 93/17 95/1
99/11 102/7 103/10 104/9 104/12 107/16
107/17 110/5 117/21 118/5 119/19 132/2
people's [1]  106/18
percent [11]  26/15 26/16 29/15 44/16
44/18 70/11 70/20 73/5 74/12 103/22
114/8
percentage [2]  26/16 103/8
perfectly [1]  66/19
perhaps [1]  73/2
period [3]  32/2 38/8 68/19
permits [1]  130/21
Perricone [1]  73/11
Perry [1]  52/9
Perry's [2]  58/4 100/16
person [5]  15/4 40/8 41/4 75/3 112/12
personal [26]  16/25 28/19 29/9 29/10
29/12 30/21 30/24 34/14 34/15 35/5 35/6
35/12 35/20 36/3 52/3 57/24 70/21 70/22
71/3 96/19 96/22 105/5 107/14 107/20
107/21 108/10
perspective [2]  50/13 75/21
pertains [1]  83/21
Peterson [7]  3/1 3/1 90/15 91/25 93/21
95/8 98/9
petition [1]  26/17
Petrus [2]  33/22 34/2
phase [1]  13/14
Phil [3]  22/5 23/11 80/2
Philadelphia [1]  1/20
PHILIP [1]  2/12
philosopher [1]  68/2
phone [5]  6/17 15/5 40/8 41/5 95/23
phony [1]  42/16
photos [2]  47/6 47/7
phrase [1]  66/15
physical [2]  46/1 46/6
PI [5]  35/4 35/6 35/9 36/9 36/11
picked [2]  27/20 29/14
picture [1]  86/8
piece [1]  82/1
pierce [2]  62/5 62/14
pierced [2]  64/4 71/16
piercing [4]  62/17 64/14 64/23 67/16
pilot [19]  16/5 16/9 18/2 18/6 28/14
39/25 41/7 41/9 41/10 41/13 41/15 41/16
52/14 52/19 53/3 68/18 75/24 75/25
109/8
pipe [2]  20/15 20/16
PIPES [6]  3/8 22/9 28/18 98/22 114/25
115/4
Pipes's [1]  129/7
place [16]  2/15 2/18 16/1 20/4 25/7 26/2
26/3 55/16 56/17 57/1 64/18 66/4 83/11
120/23 133/9 135/21
placed [1]  11/3 16/8
plaintiff [13]  37/13 37/20 51/9 57/2 64/3
66/20 66/25 67/7 92/20 93/16 93/17
96/18 114/24
plaintiff's [1]  37/7
plaintiffs [36]  1/15 1/18 2/1 6/12 10/14
10/17 10/23 12/17 12/21 14/24 18/16
28/8 28/13 51/23 54/25 55/14 58/17
64/24 65/4 66/16 71/11 71/18 92/20
92/25 94/1 96/4 96/21 97/7 98/14 108/19
112/5 119/8 119/8 127/6 132/6 132/7
plaintiffs' [11]  11/25 17/21 18/3 21/10
24/24 27/12 31/8 36/8 39/10 40/22 50/19
52/12 62/4 65/7 127/25
plane [1]  88/25

planned [1]  21/8
Plasterboard [2]  16/22 17/7
played [1]  52/9
player [1]  33/2
Plaza [1]  3/24
pleading [2]  43/4 45/1
pleadings [5]  15/21 44/4 116/21 118/18
126/21
please [19]  6/4 6/6 6/10 6/17 8/7 12/6
20/5 20/17 20/24 37/3 37/13 40/15 41/14
58/23 87/10 90/4 114/19 127/1 128/19
pleased [1]  11/2
plugged [1]  98/4
pluses [1]  91/21
plywood [1]  60/24
pocket [1]  27/11
pockets [1]  62/2
point [25]  18/20 21/3 36/24 66/10 67/23
68/9 80/14 81/21 83/16 84/16 85/5 86/25
96/3 96/11 104/4 115/20 123/10 123/16
123/22 128/8 128/14 129/5 129/11
131/16 136/25
pointed [6]  51/22 52/14 53/15 101/14
106/16 127/3
pointing [1]  101/13
points [1]  79/10
policies [20]  12/16 26/8 80/9 80/13 81/12
81/12 81/12 81/13 81/21 82/7 84/22
85/22 86/3 86/6 101/16 101/21 118/11
118/15 119/23 120/12
policy [22]  77/18 78/15 79/13 80/8 80/8
80/9 80/10 80/12 80/17 82/13 83/2 83/7
83/8 83/17 83/22 83/24 84/20 85/8 130/8
135/3 135/5 135/10
policyholder [2]  83/23 83/24
pollution [3]  26/8 101/22 101/24
pop [1]  94/19
Poppins [1]  32/1
Port [1]  90/16
portion [3]  70/16 99/18 107/3
portions [1]  100/21
posed [1]  12/19
position [12]  26/20 26/21 65/7 95/5
104/20 106/1 109/22 117/3 117/24 120/2
135/15 136/15
positions [4]  102/1 135/16 135/17 135/17
positive [3]  56/8 69/5 69/5
possibility [3]  122/18 123/8 123/9
possible [7]  32/19 77/21 93/20 103/2
103/15 114/15 133/19
post [4]  65/12 67/19 80/17 80/21
post-Katrina [1]  65/12
post-loss [2]  80/17 80/21
posted [2]  8/13 56/5
pot [3]  85/16 93/11 114/15
potential [9]  47/13 72/25 78/24 92/7
92/22 94/2 94/7 97/7 121/2 125/17
pots [1]  114/10
Poydras [5]  1/22 2/9 2/12 3/9 4/1
PPA [1]  108/4
practically [2]  16/11 68/1
practice [3]  16/11 43/11 94/21
practices [1]  67/15
practicing [3]  35/24 37/16 45/15
Prandini [1]  25/8
precedent [1]  83/11
precisely [1]  95/24
predominance [1]  115/4
preferred [1]  74/5
prefers [1]  89/2
preliminary [10]  9/4 9/8 10/5 10/8 10/10
13/15 19/8 32/24 55/1 88/13

**P**

prepare [1] 59/8
preparing [3] 117/13 124/1 124/4
prescription [1] 102/24
presence [1] 13/19
present [4] 9/3 9/18 13/18 21/15
presentation [3] 23/25 32/23 136/17
presentations [2] 19/15 29/10
presented [2] 134/10 134/15
presenting [1] 9/6
presents [2] 97/23 97/25
preservation [2] 51/1 56/24
preserve [2] 78/14 78/23
preserved [1] 134/24
preserves [1] 131/4 133/12
presided [3] 15/8 16/2 17/15
presiding [1] 15/2
press [5] 20/3 20/8 20/12 20/13 20/14
pretrial [9] 15/11 17/13 50/23 50/24
50/25 50/25 51/1 51/21 56/23
pretty [7] 54/15 58/10 59/13 91/10 94/13
103/6 123/11
prevail [1] 114/24
prevent [1] 115/1 121/23
Prevention [2] 38/16 105/16
previous [1] 40/21
previously [2] 117/9 127/9
priced [1] 66/2
primaries [1] 83/17
primarily [1] 13/24
primary [15] 44/4 80/7 81/11 81/15 82/1
82/7 83/1 85/2 85/6 85/9 86/3 86/15
120/15 120/17 130/7
primary's [2] 81/21 82/18
principal [1] 65/23
principles [1] 67/12
prior [2] 10/5 56/23
private [3] 7/14 33/19 62/10
privileged [1] 40/9
pro [2] 11/14 15/6
pro se [1] 15/6
pro ses [1] 11/14
probability [4] 77/4 91/19 102/12 102/17
probably [6] 9/17 47/9 54/17 69/7 100/3
112/1
problem [23] 15/14 24/14 32/7 46/9
60/20 62/12 65/6 74/25 94/21 97/21
102/18 103/11 105/14 105/14 110/9
110/16 112/13 112/15 113/5 113/12
116/3 116/10 116/16
problematic [2] 113/5 116/7
problems [9] 12/14 46/2 97/23 105/23
105/24 119/20 120/10 128/20 136/7
procedural [2] 78/12 87/6
procedure [1] 15/11
proceed [1] 101/3
proceeded [1] 109/6
proceeding [1] 110/10
proceedings [10] 4/5 6/3 16/3 30/23
32/18 72/12 90/3 91/17 137/6 137/13
proceeds [6] 80/17 84/20 94/22 114/16
118/10 118/10
process [34] 16/6 18/7 18/10 19/18
19/24 31/2 32/11 50/12 52/5 52/21 54/13
54/21 57/1 73/16 74/15 76/8 76/11 76/25
77/20 78/19 78/24 79/6 79/18 79/20
91/22 92/12 93/15 98/5 100/23 100/24
121/14 121/16 130/4 135/14
produce [1] 34/8
produced [3] 44/7 48/5 50/16
produces [1] 46/15
product [24] 38/4 38/9 38/14 39/7 39/9

39/11 39/15 39/17 39/22 40/2 59/17
59/19 62/16 65/25 66/4 66/12 66/17
66/22 69/15 85/23 99/9 99/10 116/4
production [1] 46/16
products [8] 1/5 6/8 9/2 17/6 39/19 60/2
60/2 108/5
profession [1] 94/25
professional [7] 7/13 12/24 13/6 32/6
43/6 50/17 100/8
professionalism [2] 11/25 41/22
profile [4] 37/20 46/18 51/2 51/9
profits [1] 63/16
program [26] 16/6 18/2 18/3 18/6 18/15
28/15 39/25 41/7 41/9 41/10 41/13 41/15
41/16 52/14 52/19 53/3 54/20 56/7 56/16
57/7 68/19 75/24 75/25 76/1 90/6 100/19
programs [2] 16/9 109/8
progressed [1] 90/21
prohibit [1] 80/23
prohibition [1] 80/20
project [1] 10/19
projections [1] 51/12
prolix [2] 30/25 31/10
promise [1] 86/20
promised [1] 41/17
promptly [1] 19/10
proof [3] 24/3 52/18 88/11
proper [4] 32/18 32/19 67/9 67/13
properties [2] 14/5 46/14
property [17] 13/19 14/12 25/15 31/18
31/19 35/22 36/4 37/14 46/6 52/3 61/6
69/21 70/19 88/6 107/16 107/20 108/3
proponent [1] 50/15
proponents [1] 19/25
proposal [1] 100/17
proposed [11] 8/4 11/6 16/14 19/12 20/1
48/3 60/24 121/11 121/14 121/19 122/9
prospect [1] 132/1
protect [2] 81/15 83/24
protected [2] 107/7 107/11
protection [2] 81/15 105/17
protester [1] 40/7
protesting [1] 39/25
protocol [10] 9/21 9/22 16/8 16/8 16/10
17/25 18/4 39/23 41/17 53/23
protocols [1] 16/13
proud [10] 26/11 26/11 39/23 58/19 70/4
74/23 75/20 87/18 101/1 103/25
prove [3] 29/9 35/6 54/22 62/18 63/3
67/8 67/16 71/5 71/5 71/7 107/6 114/7
120/8
provide [7] 11/7 71/4 77/9 96/8 110/20
113/16 134/18
provided [7] 24/17 54/18 57/3 71/22
125/8 126/24 133/1
provides [7] 55/9 55/25 69/19 71/6 81/10
96/8 109/16
providing [1] 71/10
provision [4] 74/6 74/6 84/18 85/5
prudent [1] 53/1
Prussian [1] 68/2
PSC [30] 18/17 21/5 39/24 49/12 57/2
57/25 62/20 63/3 70/16 73/2 77/19 79/4
87/14 90/23 92/4 95/18 98/18 98/24
100/20 102/14 109/25 125/17 129/14
130/13 131/1 131/21 133/2 133/16
134/25 135/4
PSC's [1] 129/6
public [2] 15/13 56/5
publication [2] 9/11 28/1
pudding [1] 52/18
purchase [2] 38/1 46/17

purchased [2] 37/24 45/23
pure [3] 35/12 35/20 59/22
purported [1] 88/17
purportedly [2] 56/21 88/18
purpose [5] 19/10 64/15 123/18 126/5
135/11
purposes [3] 17/17 22/18 122/5
pursuant [3] 52/19 53/23 88/22
pursue [2] 24/25 67/22
pursued [1] 26/7
pursuing [2] 26/7 31/9
pushing [1] 9/25
put [34] 10/25 15/19 16/11 19/23 23/21
27/10 27/12 27/16 27/24 27/25 27/25
35/7 40/3 42/7 44/4 54/4 60/25 63/6
64/21 65/19 68/14 72/16 97/5 97/17
102/1 102/2 102/4 109/5 110/12 115/10
120/22 120/25 130/8 135/21
puts [3] 24/7 53/18 55/10
putting [6] 9/7 21/23 83/18 94/5 94/7
133/22
PWC [1] 63/10

**Q**

qualifies [2] 88/1 94/2
qualify [3] 30/6 53/14 58/6
quality [2] 12/25 13/7
quarters [1] 58/15
question [21] 32/20 32/21 35/13 40/14
42/12 83/9 100/11 102/9 108/21 109/13
113/19 114/17 115/20 119/7 119/15
122/8 123/24 126/8 128/7 128/17 129/3
questionable [1] 102/18
questioned [2] 36/9 36/11
questions [6] 9/14 73/14 74/20 103/5
108/15 129/20
quick [1] 136/24
quickly [2] 91/4 94/5
Quinn [1] 3/4
quite [4] 51/5 103/25 114/20 129/18
quote [7] 37/23 43/10 43/13 45/2
83/5 83/7
quote/unquote [1] 83/7
quoted [1] 80/22

**R**

raise [2] 15/25 123/8
raised [13] 73/15 80/10 104/16 105/4
119/3 119/5 119/7 125/17 129/10 129/13
129/20 130/9 136/16
raises [1] 85/24
ran [1] 62/25
range [4] 32/19 77/21 103/2 103/15
rank [2] 99/6 102/7
rather [4] 62/22 68/6 68/7 116/6
rattling [1] 38/21
raw [1] 60/7
Ray [1] 43/5
RCR [2] 10/13 10/22
re [4] 1/5 6/7 9/22 80/16
re-establishment [1] 9/22
reach [3] 31/4 71/20 130/14
reached [13] 7/10 44/20 55/14 57/24
70/15 72/3 72/13 72/14 90/23 95/19
98/24 100/20 131/2
reaching [2] 116/6 130/18
react [1] 119/18
reacting [1] 110/7
reactive [2] 53/22 120/7
read [8] 15/23 19/18 29/20 37/25 42/19
45/21 116/23 129/18
reader [1] 68/2

reading [1]  50/3
ready [3]  54/4 73/21 112/17
real [11]  23/17 25/16 25/18 31/17 32/7
  36/12 53/16 54/9 79/7 115/9 136/24
realize [2]  95/14 96/10
really [22]  13/8 15/13 16/15 16/20 36/12
  42/6 42/9 55/4 59/9 61/16 69/5 69/5
  71/10 78/5 88/3 95/1 115/23 123/18
  125/8 125/22 132/1 135/20
reason [13]  9/11 12/24 26/20 63/22 82/8
  94/12 98/16 107/25 119/16 121/20
  123/13 125/8 128/6
reasonable [14]  19/12 50/16 53/1 57/21
  71/20 76/12 79/6 79/21 84/25 88/20
  108/14 117/24 131/1 132/1
reasonably [1]  69/17
reasons [6]  6/15 16/25 82/8 105/6
  119/14 128/13
rebuttal [4]  20/2 74/3 126/25 127/2
recall [6]  39/8 52/7 75/23 76/3 76/4 80/6
receipt [1]  38/1
receipts [4]  37/23 46/15 47/16 47/20
received [4]  19/17 32/1 116/21 126/17
receives [1]  54/1
receiving [1]  46/22
recent [2]  82/24 82/24
recently [4]  32/6 70/15 80/16 106/16
recess [5]  20/23 49/21 89/5 89/6 137/4
recognition [1]  61/15
recognize [6]  13/5 13/9 74/8 74/9 74/15
  94/18
recognized [3]  24/14 32/4 115/15
recognizes [2]  74/17 109/7
recommendation [1]  44/10
recommendations [1]  58/5
recommended [1]  44/19
reconstructed [1]  14/4
record [47]  6/10 8/13 19/19 19/21 21/8
  22/11 27/10 34/20 36/21 37/22 38/11
  38/14 39/2 39/3 42/4 44/4 45/8 46/12
  46/25 47/24 50/2 50/3 56/5 58/13 64/3
  64/22 82/17 87/4 87/8 98/20 115/16
  115/17 115/22 116/23 117/4 117/14
  121/10 126/18 127/11 128/9 128/11
  128/14 129/7 129/11 130/1 133/3 137/13
recorded [1]  4/5
records [1]  77/3
recoup [1]  85/14
recourse [2]  61/19 61/23
recover [6]  42/21 62/5 93/17 96/5 113/14
  118/10
recovering [1]  62/1
recovery [18]  32/19 37/7 52/25 55/9 69/8
  76/11 77/7 77/13 77/17 77/21 77/24
  93/20 97/7 103/2 103/15 115/1 135/6
  135/8
red [2]  36/1 36/11
redhibition [1]  77/11
redress [2]  61/16 61/23
reduced [1]  17/18
Reed [15]  32/13 68/24 69/7 71/23 72/22
  76/14 76/14 76/23 77/22 88/8 91/9 98/16
  100/10 102/8 108/13
refer [3]  8/14 39/3 56/12
reference [3]  12/7 19/15 22/21
referred [1]  135/5
refers [1]  95/9
refinished [1]  54/6
refreshed [1]  75/22
refrigerator [1]  61/1
refrigerators [1]  14/8

refused [1]  27/23
refuted [3]  84/18 84/18
refuted [1]  84/18
regard [8]  28/19 30/24 32/22 33/1 35/4
  40/12 77/1 133/25
regarding [2]  39/19 98/15
regardless [1]  92/7
regards [1]  68/22
Regina [1]  40/3
regret [1]  82/5
regularly [1]  15/2
rehabilitated [1]  112/14
reimburse [1]  85/8
reimbursed [1]  29/25
reimbursing [1]  30/2
reiterate [1]  126/3
rejection [1]  78/4
relate [1]  104/21
related [8]  15/8 18/19 90/24 91/5 97/8
  105/19 105/20 106/17
relates [2]  1/8 77/7
relating [1]  12/4
relations [1]  61/17
relationship [2]  7/19 13/4
relatively [2]  28/1 87/18
release [6]  36/3 36/3 83/23 104/3 108/3
  108/10
released [3]  99/24 121/3 123/20
releases [2]  83/25 121/1
relevant [1]  78/4
relied [1]  120/13
relief [15]  9/2 9/24 25/7 28/24 35/8 35/16
  49/14 52/25 53/10 53/17 71/11 71/22
  74/22 86/20 130/4
relieved [1]  120/18
remain [4]  7/3 55/2 96/4 128/14
remainder [1]  53/10
remaining [2]  23/7 93/6
remains [4]  60/1 93/20 117/10 117/14
remarkable [1]  59/16
remarks [2]  12/6 127/14
remediate [3]  25/5 99/20 99/21
remediated [12]  18/12 41/3 52/21 52/22
  54/12 56/13 56/16 56/22 57/9 58/9 87/25
  88/12
remediating [5]  18/7 54/13 99/19 101/7
  113/25
remediation [31]  11/7 16/6 17/24 18/2
  18/4 18/6 18/10 29/4 29/5 29/6 29/15
  29/22 31/22 39/6 39/21 39/23 40/2 41/17
  53/23 54/9 54/10 54/11 54/20 54/21
  56/22 58/9 69/23 70/2 74/12 75/24 75/25
remediations [1]  57/15
remedy [3]  40/1 49/14 92/11
remember [1]  41/5
remembered [1]  34/1
remind [1]  47/12
reminds [1]  34/10
removed [4]  53/23 53/24 53/24 54/1
RENITA [2]  3/5 98/7
reoccupy [1]  54/7
repair [7]  52/23 55/21 56/1 56/20 112/17
  113/2 114/10
repaired [2]  55/17 70/5
repairs [1]  53/2
repayment [1]  64/1
repeat [1]  74/19
replace [1]  85/21
replacement [1]  85/22
reply [1]  22/19
report [9]  8/12 8/19 11/17 11/21 12/7
  12/10 21/12 23/2 30/16
Report 38 [1]  8/12

Reporter [1]  27/23
refuted [1]  84/18
represent [1]  36/9
representation [2]  13/7 45/1
representatives [1]  93/24
represented [1]  22/3
representing [1]  40/13
reps [2]  44/18 44/19
reputable [1]  123/4
reputation [1]  46/10
request [9]  17/1 49/25 88/19 118/13
  118/19 121/20 123/10 123/14 128/8
requested [2]  27/4 117/9
required [4]  44/4 48/4 73/15 110/2
requirements [2]  31/2 32/21
requires [2]  44/7 62/13
rescinded [1]  103/22
rescissions [3]  23/5 37/10 73/1
researched [2]  125/18 130/20
reserve [2]  119/11 121/5
reserved [2]  20/7 37/23
reserves [2]  131/7 131/9
resident [1]  125/5
residential [1]  101/7
residents [2]  9/2 36/15
resolution [8]  18/21 40/24 53/9 76/11
  87/19 88/5 97/13 130/18
resolve [7]  11/4 18/19 57/5 100/21
  118/24 125/11 136/2
resolved [6]  13/8 52/1 73/6 88/4 104/6
  134/5
resources [1]  112/16
respect [5]  12/9 57/8 74/3 87/16 88/10
respectfully [4]  35/21 49/16 88/7 88/19
respiratory [1]  14/10
respond [3]  12/12 15/23 127/12
responding [1]  136/17
response [5]  53/4 73/7 103/20 129/6
  136/18
responsibilities [1]  13/6
responsible [4]  22/1 57/14 62/7 116/5
rest [2]  42/3 63/8
restore [1]  69/20
restored [3]  55/6 55/10 70/3
restores [1]  53/19
restoring [2]  30/3 52/5
result [22]  13/19 13/24 14/12 23/19
  30/15 60/17 69/17 70/3 70/4 74/23 78/16
  79/16 86/23 88/11 96/23 97/18 97/20
  104/11 122/19 132/5 132/9 134/7
resulted [3]  41/18 64/17 100/19
results [2]  70/17 76/9
retainer [2]  25/11 33/17
retainers [1]  32/1
reversed [1]  122/15
Review [1]  32/6
reviewed [3]  44/3 72/20 77/2
revise [1]  124/18
Rhine [3]  2/1 2/1 10/16
RICHARD [2]  2/8 75/4
Richards [1]  7/22
Rick [1]  22/5
right [24]  20/18 20/21 24/14 31/5 59/5
  61/4 68/8 69/15 76/10 85/14 90/13 93/3
  95/3 111/23 114/15 118/10 122/3 123/7
  124/9 131/9 131/16 131/23 133/23 137/4
rights [12]  78/25 79/13 80/9 102/23
  107/8 118/3 118/7 121/5 128/12 134/22
  135/6 137/1
ripe [1]  102/11
rise [2]  20/22 137/5
risk [8]  94/6 94/7 96/13 133/14 133/14
  133/15 133/15 133/15

**R**

risks [4] 38/11 69/11 93/22 98/15
RISLEY [6] 3/17 117/20 129/21 129/22 134/21 135/5
Rita [3] 14/1 23/20 36/16
River [50] 3/17 23/9 23/12 31/9 73/23 78/6 78/18 79/9 79/12 79/15 80/4 80/9 80/10 80/12 80/21 80/25 81/4 82/6 82/7 82/14 82/15 85/19 85/24 86/11 86/12 86/21 116/24 117/20 117/22 117/25 118/5 118/14 118/16 118/20 122/3 123/23 124/22 130/9 130/12 130/15 131/7 131/14 131/22 133/6 133/12 133/17 134/2 135/13 135/22 136/1
River's [9] 73/23 121/2 130/6 130/7 130/19 131/4 132/15 133/13 134/22
Riverway [1] 3/18
RMB [1] 64/2
road [2] 2/22 62/20
Roberts [2] 3/23 125/2
Robin [1] 45/11
rock [1] 60/7
Romeo [1] 49/6
room [6] 20/6 20/13 72/2 95/22 96/12 120/1
round [2] 67/1 67/2
routinely [1] 43/11
rule [16] 24/6 32/7 32/21 44/23 51/16 55/8 57/21 58/18 61/7 78/21 88/8 88/23 122/4 122/8 122/21 135/23
Rule 11 [1] 24/6
Rule 23 [10] 32/7 32/21 51/16 55/8 58/18 61/7 78/21 88/8 122/8 122/21
rules [2] 108/23 116/11
ruling [4] 66/10 78/20 82/25 124/8
rulings [1] 15/22
run [3] 54/15 63/2 63/11
run-up [1] 54/15
running [1] 34/9
RUSS [6] 1/16 5/23 6/11 21/23 22/7 72/16
Russ's [1] 69/3
Ruth [1] 21/18

**S**

safe [1] 28/25
Safety [10] 38/4 38/9 38/14 39/7 39/9 39/11 39/15 39/17 39/22 40/2
said [38] 22/22 33/6 35/19 36/17 43/20 47/10 49/5 54/11 59/6 65/14 65/18 69/4 69/14 69/14 70/7 70/21 71/14 73/25 73/25 83/1 83/5 84/13 95/21 104/12 105/23 114/25 115/6 115/9 117/7 121/13 121/21 126/18 128/8 128/15 129/24 129/25 132/11 134/3
Saints [1] 124/3
sales [3] 29/14 57/23 65/1
salespeople [1] 65/17
Sam [1] 21/18
same [17] 13/16 47/2 50/3 54/21 58/14 60/14 61/9 61/9 67/15 80/10 85/2 91/7 106/21 110/8 119/25 128/6 128/16
samples [1] 47/25
Sandy [2] 21/25 128/20
Santa [1] 3/21
Sarver [1] 3/8
satisfied [2] 57/7 121/15
satisfy [1] 57/17
saw [4] 46/3 46/5 68/19 103/5
say [44] 15/12 26/15 29/11 33/18 34/13 35/18 37/14 39/23 42/6 42/9 48/6 48/12 48/24 59/21 64/3 66/21 67/24 69/16

74/11 75/12 82/8 82/11 100/2 101/1 106/25 107/17 116/9 117/12 117/21 120/19 122/2 122/5 123/17 124/9 124/16 126/19 127/11 128/16 131/4 133/6 134/4 134/21 134/25
saying [7] 24/2 38/21 83/18 83/21 85/19 86/14 111/13
says [14] 20/13 42/23 42/15 42/16 44/20 45/12 45/13 46/18 47/20 49/7 54/2 68/3 82/7 133/8
Scalia [1] 32/4
scene [1] 53/25
schedule [1] 136/4
scheduled [2] 15/3 130/15
scheduling [2] 11/5 19/13
Scholer [3] 2/4 68/13 68/20
school [1] 36/14
science [1] 105/15
scientific [5] 38/6 106/23 107/1 107/10 108/7
scientifically [1] 105/9
scope [3] 31/3 52/23 55/21
SCOTT [5] 2/15 22/6 74/1 81/6 90/16
se [2] 3/12 15/6
seal [2] 59/4 59/4
seated [4] 6/4 20/24 49/22 90/4
seating [1] 20/7
second [41] 37/9 57/4 76/17 78/13 78/13 78/18 78/21 78/23 79/2 79/5 79/8 79/10 79/11 79/19 82/11 84/16 104/18 104/19 106/10 121/11 121/15 122/9 123/1 123/19 124/6 124/20 128/1 129/20 129/23 129/23 132/13 132/14 132/25 133/8 133/11 133/17 135/4 135/12 135/12 135/18 136/15
secondly [2] 79/14 109/13
secretary [1] 21/18
Section [4] 1/6 84/19 85/6 85/16
Section 1.16 [3] 84/19 85/6 85/16
sector [1] 7/14
Sedran [1] 1/17
see [18] 10/17 12/7 16/9 16/13 28/3 30/25 45/12 45/13 47/3 60/18 83/10 100/22 125/8 126/1 127/19 129/15 130/14 136/12
Seeger [1] 128/20
seeing [3] 7/1 52/1 111/7
seek [5] 68/4 78/20 81/20 131/11 131/23
seeking [4] 65/6 78/17 86/16 98/18
seemed [1] 62/11
seems [1] 49/6
seen [2] 47/21 94/23
self [4] 29/5 54/21 71/24 83/6
self-evident [2] 71/24 83/6
self-remediation [2] 29/5 54/21
sell [1] 99/9
seller [2] 124/3 131/19
sellers [1] 65/20
semblance [1] 18/12
send [2] 46/23 121/17
sense [5] 30/6 60/9 94/12 94/17 113/3
sent [1] 10/2
separately [1] 63/1
September [4] 16/24 38/3 39/7 39/22
September 15 [3] 38/3 39/7 39/22
September 4 [1] 16/24
serial [1] 43/6
series [1] 130/21
serious [6] 45/1 49/3 49/3 71/19 103/4 103/5
seriously [3] 72/11 97/6 125/14
Serpe [1] 9/5
serve [4] 34/7 115/8 116/9 116/16

served [3] 55/7 96/25 115/13
service [4] 17/14 115/10 115/19 116/6
services [1] 13/10
Serzone [1] 108/5
ses [1] 11/14
SESSION [2] 6/1 90/1
set [21] 19/9 19/10 19/13 28/23 30/8 49/17 53/2 62/2 79/5 86/10 107/3 107/6 118/18 119/14 121/25 122/10 123/25 124/14 125/6 136/3 136/18
setoff [1] 96/24
sets [2] 108/21 113/25
setting [4] 19/7 20/9 20/15 52/10
settings [1] 57/23
settle [10] 24/16 40/25 83/2 84/24 85/3 85/4 108/4 130/22 130/24 130/25
settled [7] 41/1 56/25 72/12 83/6 107/15 107/24 109/17
settlement [248]
settlements [33] 8/23 16/14 21/13 23/3 24/10 26/13 28/15 28/21 41/18 42/20 43/12 50/24 55/15 57/10 57/12 69/9 86/10 86/12 107/14 108/1 108/9 110/15 114/14 117/23 117/24 118/1 118/2 118/25 121/14 123/11 130/1 134/3 135/19
settles [1] 18/25
settling [6] 10/20 107/18 117/10 118/6 130/8 134/14
seven [6] 26/4 28/13 46/12 47/25 88/17 106/12
seven-fifty [1] 26/4
several [12] 6/17 9/19 29/23 34/17 37/4 50/23 51/3 69/22 82/24 109/12 121/3 132/8
Shakespeare [2] 49/5 49/18
shared [3] 27/14 27/14 57/3
shares [1] 45/10
sharing [1] 43/1
shark [1] 45/17
SHARMA [2] 3/5 98/7
shazam [1] 48/12
she [7] 33/23 34/5 34/7 40/3 49/8 49/10 92/24
sheet [2] 120/1 120/2
sheetrock [4] 60/11 94/19 94/25 95/1
sheets [1] 120/1
shekel [1] 64/2
shipped [1] 66/3
shirt [1] 48/12
shocked [1] 63/23
shoes [1] 61/1
shop [1] 116/2
shopping [1] 42/25
short [3] 29/13 57/22 65/13
shortage [1] 66/5
should [19] 8/6 12/11 15/12 20/13 34/1 43/1 58/17 64/4 74/15 75/15 78/2 82/10 86/5 86/14 104/23 105/8 108/14 110/24 127/19
shoulder [1] 137/1
shouldn't [1] 84/17
show [3] 35/9 40/21 47/6
showed [4] 40/7 40/14 40/20 47/6
shown [1] 50/9
shows [1] 46/16
sic [1] 22/5
side [8] 13/4 28/3 29/12 41/24 51/10 59/8 71/13 134/5
side's [1] 67/20
sides [5] 11/6 13/1 41/23 41/24 100/7
Siefert [1] 103/6

S

sight [1] 41/23
significant [9] 18/20 75/17 76/21 77/9 77/18 78/3 78/13 103/16 105/6
significantly [3] 77/13 78/2 113/13
signing [1] 11/10 50/3
signs [1] 55/22
silver [2] 14/6 46/5
similar [5] 96/18 102/6 102/7 107/8 110/6
simple [2] 61/2 88/3
simplify [1] 85/12
simply [1] 10/6 78/21 83/16 83/17 84/12 102/25 105/8
since [7] 14/22 42/16 73/9 82/17 83/13 91/5 124/8
sincere [1] 125/12
single [7] 37/25 40/14 41/5 64/12 64/14 106/13 106/14
Sinkler [1] 2/17
sir [5] 21/9 22/2 25/23 27/9 28/5
sit [6] 49/24 52/16 52/18 56/24 97/6 136/7
site [9] 8/13 10/25 15/13 15/19 15/20 45/22 47/3 47/9 57/4
sitting [1] 52/1
situation [18] 9/16 30/25 51/15 59/10 59/18 65/23 68/8 69/18 83/20 84/12 89/1 93/11 97/4 104/25 111/13 113/9 123/7 126/7
six [5] 47/25 73/22 73/22 76/14 91/9
sixth [1] 77/25
size [1] 64/16
skin [2] 14/10 45/17
slept [1] 21/9
slide [1] 41/14
slides [2] 40/4 72/15
slowing [1] 132/12
slows [1] 98/1
small [5] 65/8 72/25 87/18 94/18 103/14
smaller [1] 99/16
smell [5] 46/1 47/17 60/16 119/20 120/1
Smith [1] 2/8
sniffles [2] 34/16 38/24
so [115] 6/17 10/7 10/9 13/9 13/16 16/9 16/11 18/10 19/23 25/2 25/5 26/22 29/16 33/2 33/11 33/20 34/5 34/14 34/21 34/24 35/6 38/7 41/7 41/13 41/25 42/2 48/5 51/9 52/7 52/24 53/10 53/20 55/7 55/22 56/21 56/21 57/5 57/12 58/10 60/20 61/2 61/24 62/17 63/20 64/20 66/14 67/11 67/21 68/15 69/10 70/3 71/9 73/7 73/22 74/21 79/19 80/19 82/12 82/23 82/24 84/17 85/16 86/4 91/7 94/17 97/10 97/14 99/3 99/20 99/25 104/3 104/9 105/2 105/19 107/3 107/9 107/23 108/8 109/10 109/15 109/18 110/16 110/24 111/5 111/18 111/18 112/7 112/20 113/5 113/14 115/13 116/10 117/13 120/10 120/21 121/10 122/21 123/2 123/10 124/11 128/16 128/23 130/4 130/9 130/12 130/13 130/13 130/16 131/1 132/3 132/24 133/14 134/9 135/20 136/11
so-called [1] 82/12
society [1] 55/2
soda [1] 60/25
software [1] 4/6
sold [7] 17/7 45/24 46/18 66/23 75/16 77/16 87/16
solely [1] 107/14
solicitation [3] 45/14 45/16 45/18
soliciting [2] 43/19 43/23

solidary [2] 131/20 132/8
solidity [1] 85/23
solutions [1] 136/8
some [85] 7/7 9/24 10/2 11/5 11/8 12/23 13/8 13/15 14/6 14/9 18/10 18/12 19/23 20/7 21/4 24/8 25/3 25/11 29/15 30/4 38/23 38/24 42/8 42/11 45/2 47/22 48/7 48/8 48/18 51/12 52/6 52/10 53/5 54/13 56/6 56/19 58/2 58/21 62/18 62/18 62/24 68/21 68/24 72/15 73/13 73/14 73/14 73/15 74/14 75/10 75/22 78/7 78/12 81/19 84/13 88/25 91/23 93/17 93/17 94/23 97/16 97/18 102/25 110/10 111/8 112/16 113/15 118/11 121/1 122/5 124/19 127/14 128/20 129/10 129/17 129/19 132/6 134/9 136/5 136/5 136/6 136/6 136/8 136/10 136/16
somebody [9] 33/16 63/5 63/18 84/13 94/19 94/20 99/16 101/13 107/4
somehow [1] 99/16
someone [1] 99/8
something [22] 15/19 20/20 24/5 29/11 34/18 37/23 42/18 44/23 66/4 72/6 83/19 84/2 92/22 98/4 113/1 115/5 116/3 116/10 116/17 126/24 136/3 136/20
sometimes [3] 49/5 74/16 104/7
somewhat [2] 23/23 104/17
Somewhere [1] 116/16
sons [1] 45/16
sorry [1] 43/22
sort [3] 6/25 18/8 48/24
Soto [5] 34/12 40/13 42/12 46/25 126/16
Soto's [1] 44/7
sought [4] 78/19 79/10 79/11 118/19
sound [6] 20/15 23/16 24/8 49/23 105/15 121/2
soundly [1] 16/10
source [1] 39/13
south [6] 2/19 43/16 44/3 92/10 92/15 106/22
South Carolina [2] 43/16 44/3
Southeastern [1] 60/12
space [1] 49/24
spare [1] 94/25
speak [11] 18/8 19/19 35/2 50/18 58/21 92/24 109/15 109/23 111/18 112/20 116/25
speaking [3] 42/16 79/25 81/5
special [2] 15/6 58/5
specific [5] 29/19 104/16 110/19 111/1 128/17
specifically [2] 73/24 105/20
specificity [1] 126/9
specifics [1] 136/10 136/11
spelled [1] 42/22
spend [4] 50/11 113/3 115/19 116/15
spending [1] 76/21
spent [3] 27/11 112/16 113/2
spite [2] 92/1 98/11
spoke [1] 42/1
spoken [2] 91/14 94/4
spread [1] 97/12
square [2] 13/22 26/4
squarely [1] 83/11
squeeze [1] 95/23
St. [1] 90/16
St. Lucie [1] 90/16
staff [2] 21/24 21/24
staffs [1] 50/9
stage [8] 32/17 72/12 76/24 91/17 102/8 109/10 111/4 111/15
stalking [1] 33/18
stand [15] 33/16 41/11 41/20 66/13 68/7

69/15 70/4 82/5 89/5 102/4 104/25
standards [1] 60/5
standing [16] 35/25 42/14 42/18 43/1 44/9 49/4 79/17 82/5 82/17 86/21 118/5 118/7 118/22 118/24 134/23 135/21
standpoint [2] 15/9 97/24
start [4] 6/24 8/1 52/1 99/25
started [8] 35/24 45/15 46/8 62/21 74/22 100/13 108/1 112/12
state [21] 7/2 7/3 7/5 7/7 10/1 10/4 11/19 14/13 15/7 17/10 23/13 44/24 49/10 66/23 67/4 100/1 106/9 109/23 110/10 110/16 110/17
stated [2] 103/20 134/17
statement [1] 45/24
statements [3] 37/4 38/2 63/10
states [27] 1/1 1/12 8/20 9/16 12/13 13/21 13/23 13/24 17/8 41/1 60/11 60/12 63/18 65/2 65/5 65/9 65/13 66/3 66/23 66/24 66/24 67/9 67/10 67/13 77/8 97/15 137/10
status [14] 1/10 6/16 6/20 8/1 8/19 10/13 12/7 12/10 15/3 17/2 28/6 40/5 40/7 117/10
statute [1] 102/25
stay [2] 63/16 121/18
steering [13] 6/14 11/25 15/5 18/3 21/11 24/24 27/13 31/8 39/10 40/23 50/19 52/12 113/23
stenography [1] 4/5
step [3] 25/6 86/7 104/7
stepped [3] 99/6 101/2 104/12
Steve [4] 22/4 68/12 129/1 129/2
STEVEN [2] 2/5 5/24
Stewart [1] 2/14
sticks [1] 53/17
Stiles [1] 3/14
still [12] 21/1 24/19 31/6 44/23 59/4 92/7 92/10 103/23 106/20 114/11 122/8 134/9
stipulated [1] 17/17
stocked [1] 46/18
stone [1] 95/23
stop [3] 49/18 105/23 120/19
storms [1] 112/14
story: [1] 72/16
story: the [1] 72/16
straightforward [1] 61/2
strange [1] 124/13
streaming [1] 49/23
Street [9] 1/19 1/22 2/2 2/9 2/12 3/2 3/9 3/15 4/1
strength [1] 59/16
strengths [1] 59/7
strict [1] 60/1
strong [2] 68/3 106/1
strongly [1] 97/4
structure [3] 19/23 52/11 56/17
struggled [1] 115/7
studied [2] 105/12 105/20
studies [1] 38/5
study [4] 38/7 105/19 105/21 105/25
stuff [1] 49/2
Sturm [1] 66/14
subcategory [1] 56/12
subject [3] 30/24 71/6 131/22
submission [1] 121/25
submissions [1] 119/3
submit [3] 88/7 124/19 127/10
submitted [3] 10/24 127/9 133/2
suboption [1] 54/10
subpoena [3] 34/7 34/8 34/10
subsequent [1] 78/9

Case 2:09-md-02047-EEF-MBN    Document 16339    Filed 12/11/12    Page 160 of 164

subsidiaries [1]  24/13
subsidiary [2]  16/22 17/6
substance [3]  84/3 87/5 125/7
substantial [2]  31/4 115/16
substantive [1]  128/4
substitute [1]  50/3
subsuppliers [1]  99/15
succeed [4]  31/21 93/22 134/14 134/15
succeeded [1]  7/18
success [4]  77/4 91/19 102/12 102/17
successful [3]  58/10 95/3 131/14
such [8]  9/12 14/9 56/3 62/6 80/17 80/23
 107/10 132/5
sued [1]  61/4
sues [1]  63/18
suffered [3]  23/20 30/4 38/23
suffering [1]  48/2
sufficient [1]  105/24
suggest [4]  27/6 35/21 86/17 97/4
suing [2]  101/12 112/6
suit [4]  14/13 15/17 33/4 116/13
Suite [9]  1/19 1/22 2/2 2/12 2/22 3/2 3/12
 3/18 3/24
sulfur [4]  17/18 46/5 60/7 120/6
sulfur-bearing [1]  60/7
Sullivan [1]  3/4
sum [2]  29/24 29/24
summary [1]  103/18
summer [2]  50/21 51/6
super [3]  7/7 48/16 52/8
superhero [1]  48/13
Superman [1]  48/10
supervised [1]  16/1
supplemental [2]  73/17 128/10
supplied [3]  87/16 87/17 87/25
supplier [2]  96/18 112/23
suppliers [13]  9/3 14/15 19/6 40/10 57/12
 70/12 94/18 99/2 99/5 99/12 101/10
 102/19 104/5
supplies [2]  13/25 65/12
supply [10]  2/8 2/11 2/17 19/4 19/5 65/13
 87/11 90/14 90/16 90/25
support [12]  22/19 38/7 50/9 98/10 98/16
 106/1 106/24 107/10 118/18 125/20
 129/25 133/24
supported [3]  38/24 38/25 94/11
supporters [3]  90/5 116/20 126/25
supporting [1]  106/1
supportive [1]  114/13
supposed [2]  83/24 124/11
Supreme [6]  80/15 82/25 83/1 83/5
 83/11 101/23
Supreme Court [6]  80/15 82/25 83/1 83/5
 83/11 101/23
sure [9]  53/21 54/1 67/22 101/18 110/15
 117/5 121/9 122/4 125/21
sureties [1]  14/17
surprisingly [1]  35/18
suspect [1]  6/20
suspenders [1]  31/17
sustained [2]  13/19 135/16
SW [1]  3/2
Swiss [1]  63/9
sword [1]  38/21
symptoms [1]  39/1
system [7]  15/15 33/20 50/14 55/7 58/18
 61/16 97/23

table [10]  24/13 71/13 85/12 91/24 92/1
 92/5 93/2 96/1 97/6 111/22

Tai'an [1]  16/22
Taishan [20]  8/20 9/6 16/21 16/22 16/23
 16/22 16/23 24/19 28/10 31/19 31/22
 40/11 66/9 66/15 75/10 99/8 114/6 114/8
 120/9 134/5
Taishan's [1]  16/25
take [27]  6/24 7/16 19/14 20/19 29/23
 36/18 40/9 42/3 42/8 49/19 59/7 59/14
 67/3 70/8 74/14 82/20 85/7 85/20 86/7
 86/25 91/15 95/5 95/17 100/21 113/9
 116/17 118/24
taken [13]  8/20 19/20 19/20 30/7 37/17
 47/1 50/1 59/11 59/11 63/24 67/3 117/23
 124/11
takes [4]  15/18 53/18 121/15 123/12
taking [7]  34/11 83/17 84/14 96/13
 112/16 125/14 128/3
talc [1]  61/1
tale [1]  9/1
talented [1]  49/1
talk [8]  29/10 59/15 70/22 100/14 101/4
 119/2 136/1 136/7
talked [5]  34/19 45/3 46/11 47/18 71/10
talking [6]  72/24 101/6 103/9 109/19
 121/13 132/12
Tampa [1]  33/10
tangible [1]  53/17
tapped [1]  137/1
target [1]  94/20
Task [1]  105/17
Tatum [1]  40/17
taxed [1]  63/17
team [1]  128/21
Tear [1]  48/11
technical [1]  85/24
tees [1]  108/23
tell [8]  22/17 61/9 72/16 90/11 96/13
 98/20 104/25 105/11
telling [1]  122/20
temporary [1]  39/1
tenacity [1]  126/13
tenants [2]  30/13 101/6
tend [2]  68/25 113/4
tender [2]  80/7 120/19
tendered [2]  83/9 98/10
tendering [2]  78/15 92/13
term [6]  38/7 38/11 105/8 105/23 105/25
 106/13
termed [1]  64/12
terminate [1]  131/16
terminated [1]  78/25
termination [4]  78/25 79/7 133/23 134/19
terms [4]  54/8 70/23 79/13 115/20
terrific [1]  11/15
Tessier [1]  2/11
test [1]  133/21
tested [2]  120/5 131/6
testimony [3]  19/14 108/22 125/13
testing [1]  60/6
Texas [5]  3/18 33/7 42/23 43/11 46/19
text [1]  84/18
TG [1]  16/21
than [33]  11/23 24/7 30/20 35/17 36/19
 37/12 40/1 41/17 51/13 51/14 55/8 56/25
 57/20 62/22 66/7 68/6 68/7 70/23 73/5
 75/6 93/15 94/21 96/5 108/2 109/1
 113/10 114/8 117/25 120/9 123/25
 125/23 132/3 133/8
thank [36]  10/11 10/16 11/11 11/12 12/8
 21/9 37/2 49/16 50/4 50/8 51/14 58/19
 59/5 68/11 75/1 75/2 79/21 79/22 80/25
 81/1 86/24 87/12 88/24 95/6 97/9 98/19
 113/22 117/17 117/18 124/21 126/11

126/12 126/15 126/22 128/18 136/23
thanking [1]  99/25
thanks [1]  68/22
that [766]
that's [74]  12/4 14/17 18/8 21/20 24/5
 27/7 27/9 27/16 30/1 30/5 30/12 30/16
 33/6 37/14 38/11 42/9 45/25 46/6 52/8
 52/25 53/22 55/2 55/6 57/5 66/2 67/1
 67/19 67/24 70/1 70/8 76/24 77/4 78/6
 81/23 81/24 83/3 83/4 83/20 84/14 92/18
 93/6 94/10 95/15 95/23 96/2 98/4 104/4
 104/5 110/2 110/25 111/3 112/9 113/11
 113/15 114/15 117/23 118/16 118/22
 119/23 119/24 120/16 120/20 120/21
 121/4 121/7 121/10 123/21 124/3 124/14
 131/10 132/23 133/12 133/19 133/22
 their [123]  6/9 7/8 7/8 12/1 12/1 13/5
 16/16 16/17 17/11 18/11 19/4 23/15
 23/16 24/13 24/17 24/18 24/23 27/2 27/2
 27/3 28/25 29/1 30/7 30/14 31/21 31/22
 34/12 34/19 34/20 34/22 34/23 36/16
 37/19 38/22 38/22 38/22 46/6 46/22 49/9
 49/10 49/13 52/5 52/6 55/6 55/12 55/17
 56/20 56/22 56/23 61/22 66/11 69/15
 69/21 69/25 70/1 70/2 70/5 70/6 70/12
 71/5 73/13 79/13 79/13 79/16 80/7 85/7
 85/13 86/15 87/25 88/12 88/12 94/6
 94/25 97/7 97/7 99/2 99/6 99/14 101/14
 102/20 103/12 103/24 104/5 104/9
 104/25 105/1 105/2 105/14 107/3 107/3
 107/8 107/15 107/18 107/18 107/19
 107/21 112/10 112/11 112/17 112/18
 112/20 115/2 119/19 120/2 120/8 120/11
 120/15 120/18 120/19 120/21 122/2
 123/6 123/10 126/4 129/14 130/3 130/8
 134/24 135/15 135/17 135/17 136/8
 136/17
them [55]  8/4 9/20 12/23 15/18 15/24
 15/24 19/18 20/13 20/14 21/7 22/21
 28/25 29/1 35/2 36/7 37/25 38/19 41/3
 45/5 46/16 47/8 70/5 71/7 71/19 73/25
 74/6 74/19 74/20 83/18 92/4 96/21 98/3
 99/19 102/5 103/1 103/9 103/22 104/15
 110/1 112/10 112/25 114/10 116/9
 116/23 116/23 118/12 118/21 120/16
 120/20 122/20 123/5 123/5 123/7 134/7
 134/17
themselves [7]  28/21 29/25 56/20 85/8
 100/9 102/17 111/3
then [54]  6/22 14/3 16/8 16/12 20/1
 23/21 23/21 24/25 25/8 27/6 28/15 35/15
 42/8 43/9 44/19 46/12 46/25 53/22 54/5
 55/23 62/5 63/6 64/24 65/20 67/7 73/20
 85/1 86/25 88/1 99/9 99/23 100/21 107/5
 107/7 108/21 109/1 111/11 112/13
 113/21 116/9 119/5 119/8 119/11 119/13
 123/15 124/8 131/15 131/21 132/8
 132/19 135/9 135/16 136/1 136/3
theoretically [1]  16/10
there [131]  8/6 10/1 11/1 11/1 11/22
 12/13 12/14 12/22 16/15 20/1 20/17
 22/14 22/16 23/3 23/18 23/19 24/8 24/14
 24/20 25/14 25/19 26/17 27/14 28/1 31/7
 31/15 31/21 32/11 35/6 35/13 36/7 37/12
 40/6 41/4 44/13 51/7 51/12 51/13 51/13
 53/5 53/6 53/12 55/13 55/17 55/18 56/18
 57/9 58/14 62/9 62/12 62/14 63/10 63/20
 64/6 64/10 65/4 65/5 65/7 65/23 66/7
 67/11 68/20 69/11 69/12 70/10 71/2 73/4
 73/13 74/14 75/21 77/6 78/3 79/6 81/18
 82/3 82/4 84/7 88/17 92/3 93/20 94/14
 94/17 94/22 96/12 97/24 97/25 100/20

there... [44] 101/20 102/15 103/6 103/11
103/21 104/11 104/14 105/6 105/8
105/23 106/17 107/5 110/13 110/24
111/11 111/12 111/13 114/7 114/9 115/5
115/18 116/4 116/5 118/23 119/16
119/21 119/22 121/1 125/21 125/21
128/2 130/11 130/17 130/20 130/23
132/4 132/5 132/22 133/7 133/14 134/1
134/16 136/2 136/13
there's [64] 10/12 12/12 12/19 15/15
28/9 29/5 29/5 29/5 29/7 30/8 31/13
31/20 33/4 34/15 35/9 37/25 44/6 44/19
44/20 45/12 46/14 46/25 56/12 66/4 70/7
83/10 83/11 83/21 91/10 91/21 92/7
92/16 92/22 93/5 94/1 94/22 96/13 99/23
100/11 100/11 101/5 101/8 101/15
101/21 101/23 102/9 103/4 106/23 111/4
118/13 118/18 120/8 120/16 122/8 124/7
132/1 132/6 132/7 132/9 133/6 135/2
135/3 135/9 135/11
thereafter [2] 18/1 20/2
Therefore [2] 88/19 98/12
therein [1] 116/9
thereof [1] 11/8
these [57] 9/15 12/12 12/16 13/1 13/3
13/7 13/10 14/12 14/14 15/16 15/21
16/13 19/2 21/12 25/13 25/16 36/9 37/23
41/2 43/10 48/3 49/15 59/11 59/19 62/24
63/15 65/1 67/16 67/25 71/17 73/12
73/18 74/25 76/9 76/12 77/7 77/23 84/6
94/23 96/9 99/6 100/6 101/11 105/21
107/1 107/14 107/25 108/9 111/8 112/24
113/4 114/14 116/1 117/22 130/1 130/9
135/19
they [219]
they're [5] 10/1 44/8 51/14 107/18
107/19
thing [14] 24/14 31/5 31/23 48/25 54/18
67/8 68/9 69/15 82/11 97/12 108/17
112/11 114/14 136/24
things [12] 56/3 58/12 84/22 84/23 93/10
95/15 97/11 124/19 136/5 136/6 136/6
136/6
think [97] 7/4 7/23 15/14 18/8 18/13
31/24 50/13 50/15 53/13 55/7 55/15 56/4
56/6 57/6 57/20 58/15 59/10 61/8 61/25
64/8 64/12 68/18 70/3 70/22 71/17 71/23
72/22 72/23 72/23 73/16 74/18 75/12
75/21 76/4 77/5 77/14 77/22 78/1 82/16
85/10 86/4 86/8 86/21 88/10 92/17 94/2
94/6 94/7 100/10 102/9 103/2 107/5
110/1 110/14 110/18 110/21 111/20
111/24 111/25 113/6 113/8 113/11
113/15 114/10 114/20 115/16 117/12
118/23 119/4 120/4 120/14 120/17 122/7
123/2 123/10 123/16 125/13 125/16
129/6 129/8 129/12 129/22 132/20
133/20 134/3 134/12 134/13 134/17
134/21 134/23 134/25 135/4 135/22
135/25 136/8 136/11 136/19
thinking [1] 61/11
third [5] 25/8 29/25 32/5 106/25 120/24
Third Circuit [2] 25/8 32/5
this [285]
Thompson [1] 3/17
those [99] 9/25 12/23 23/7 26/13 39/1
40/7 40/12 41/15 50/24 51/18 52/14
56/23 56/25 57/7 57/12 57/14 57/15
57/15 58/2 58/12 59/1 59/3 59/15 59/24
60/2 62/6 62/9 62/17 63/12 63/16 63/17
64/11 66/6 67/6 73/6 73/22 74/2 74/8

74/18 77/17 80/10 81/13 82/14 82/17
82/19 83/15 110 84/3 89/7 93/4 93/5
93/5 93/13 95/22 99/8 99/22 100/5
100/18 100/21 101/17 101/19 101/20
101/25 102/3 102/21 103/22 103/23
104/8 104/13 104/14 105/3 105/7 107/13
107/17 110/1 110/3 110/7 110/18 111/9
112/8 112/19 113/12 113/25 114/1 114/5
114/7 114/16 116/6 118/2 120/7 121/5
123/20 125/8 125/14 125/15 126/23
127/10 134/19 137/2
though [6] 45/25 59/10 85/3 106/3 113/5
123/16
thought [10] 20/7 27/19 45/4 45/17 95/11
98/5 115/20 127/15 130/2 133/9
thousand [1] 29/23
thousands [7] 12/14 14/23 77/2 93/5
111/16 111/17 115/14
threat [1] 79/7
threatens [1] 48/1
three [22] 8/6 8/9 12/18 14/22 25/16
50/10 62/19 62/23 73/6 83/13 86/13
104/14 106/11 110/14 111/16 112/4
118/8 118/23 119/12 119/21 123/4 135/1
Three-card [2] 62/19 62/23
three-page [1] 86/13
through [38] 9/19 26/4 27/13 27/22 28/4
28/13 28/22 29/15 30/23 37/22 38/4
39/14 40/18 47/1 49/9 49/10 56/7 59/12
62/23 63/11 68/19 68/23 68/24 69/10
73/16 76/7 93/14 93/18 96/6 100/25
105/1 107/11 109/7 110/1 112/7 125/8
125/15 127/9
throughout [6] 7/1 11/15 11/20 97/15
97/23 126/13
throw [1] 32/10
throwing [1] 124/13
thrown [1] 34/23
thrust [1] 109/19
Tianjin [1] 17/7
tied [1] 22/8
time [48] 27/4 31/12 32/18 36/19 36/19
38/7 40/23 41/21 42/3 42/11 45/8 45/10
47/10 49/17 54/15 54/16 56/15 59/15
59/15 64/8 64/8 68/20 73/1 73/10 75/16
76/21 77/16 78/25 90/19 90/21 91/16
94/6 94/25 102/14 102/24 111/1 120/3
123/12 123/15 124/9 126/1 126/12
126/13 130/23 132/21 133/16 134/18
135/15
times [6] 51/3 68/25 69/22 72/1 95/21
129/25
timing [2] 75/21 111/10
tires [1] 52/24
today [43] 6/15 7/16 8/25 9/4 11/21 19/9
21/10 28/6 28/14 29/10 41/18 41/20
50/24 52/18 56/24 69/22 77/2 78/17
88/15 88/17 90/17 97/6 107/17 109/14
110/25 117/21 118/17 118/18 119/5
121/25 122/1 123/4 124/19 125/9 127/14
128/5 132/10 133/10 134/10 135/22
135/23 136/16 136/18
together [17] 7/25 9/7 18/15 21/23 22/8
54/5 58/11 65/19 100/14 102/5 104/9
109/5 112/10 130/1 130/2 134/3 136/11
told [9] 24/15 28/14 28/15 45/15 46/9
47/2 99/6 105/12 105/13
Tompkins [1] 2/7
Toni [5] 4/1 4/3 137/9 137/17 137/17
too [8] 29/16 45/4 97/10 121/9 134/6
136/9 136/10 137/2
took [12] 16/1 25/18 26/20 26/21 28/6
34/20 40/11 41/11 47/7 60/4 64/17

111/21
top [7] 37/8 55/16 63/2 69/23 70/9 70/13
70/19
tort [2] 32/16 102/23
tossing [1] 85/15
total [1] 96/20
touch [4] 15/23 57/19 76/14 91/20
touched [4] 24/4 62/13 101/16 103/4
touches [1] 65/22
tough [1] 50/17
toughly [1] 72/19
toward [4] 18/20 82/10 85/7 85/11 88/2
88/5
towards [10] 10/9 58/1 84/21 84/21 85/9
85/14 85/17 86/4 86/5 130/8
Toxicology [1] 106/6
track [2] 36/21 58/13
trading [1] 85/15
traditional [2] 109/11 109/12
trailers [1] 23/21
transactions [3] 63/7 63/11 63/12
transcript [1] 137/12
transcription [1] 4/6
transcripts [1] 15/21
transferee [1] 14/20
transferred [1] 15/17
transitory [1] 14/10
translation [1] 116/8
transparency [1] 15/16
trash [1] 121/17
Traurig [1] 3/11
Travis [1] 42/23
treated [2] 34/16 116/19
treaties [1] 116/4
treatment [1] 34/16
treaty [1] 61/15
trial [33] 11/5 12/5 17/15 17/17 18/1
40/18 40/20 40/21 40/23 59/8 67/11
70/17 72/17 72/18 78/16 90/20 96/12
96/13 96/14 104/7 114/21 118/20 120/7
122/11 123/25 123/25 124/2 124/8
124/12 124/12 128/21 131/6 131/20
trials [11] 9/20 16/3 16/7 51/23 52/22
53/25 93/16 102/10 104/8 109/8 131/15
tried [9] 9/19 28/13 40/24 88/18 96/16
106/15 106/15 112/25 117/11
trigger [1] 118/15
troubles [1] 115/25
true [6] 62/25 94/23 117/23 118/5 118/7
137/11
truly [1] 93/7
truth [1] 49/4
try [13] 15/19 20/14 45/6 57/17 71/5 71/7
102/2 110/17 110/25 113/1 113/10
125/11 125/15
trying [5] 21/1 59/4 96/14 104/4 105/11
TTP [1] 16/23
Tube [1] 43/5
turned [2] 64/24 124/12
turnkey [1] 56/3
turns [1] 65/1
Tusa [5] 4/1 4/3 137/9 137/17 137/17
tweak [2] 53/7 74/5
tweaked [1] 53/6
twice [1] 118/12
two [32] 2/15 6/15 12/13 12/18 16/15
16/16 16/16 16/18 20/17 41/8 50/2 59/2
73/10 73/17 78/11 79/10 82/8 84/23 90/5
102/4 109/15 112/4 117/11 117/21 118/4
120/15 120/20 121/19 123/25 127/11
135/2 137/2
two-fer [1] 109/15

**T**

type [1]  122/22
typical [2]  108/18 111/6

**U**

U.S [3]  67/18 105/15 105/16
U.S. [1]  39/14
U.S. attorney [1]  39/14
ultimately [9]  58/8 61/25 100/18 101/14
103/7 103/15 104/8 132/18 135/22
umbrella [1]  109/13
unable [3]  77/11 99/21 102/19
unambiguous [1]  80/20
unanimous [1]  53/4
unblessed [1]  23/22
uncapped [1]  29/3
uncertainty [1]  97/25
unchanged [2]  117/10 117/14
unclarity [1]  121/1
unclear [1]  114/11
uncomplicated [1]  61/3
uncontroverted [1]  64/23
und [1]  66/14
under [55]  31/6 42/14 54/9 54/9 55/8
57/21 58/6 59/4 59/25 62/10 64/8 64/15
65/21 67/5 67/6 67/12 67/19 77/11 77/22
78/21 79/13 79/21 80/11 82/12 83/8
83/25 84/10 84/22 85/16 85/22 87/24
88/1 91/9 96/5 109/5 109/12 111/18
115/8 115/13 116/6 118/10 119/17
119/20 119/22 120/17 121/4 121/16
122/7 122/17 130/21 131/1 131/25
132/20 133/7 135/3
underlying [1]  118/14
underneath [1]  101/20
understand [5]  31/23 42/6 59/18 77/1
136/9
understanding [3]  121/3 126/8 137/13
understood [3]  42/20 52/4 121/7
undertaking [1]  38/7
undiscoverable [1]  60/10
unethical [1]  45/18
unforeseeable [1]  71/15
unfortunately [4]  82/4 92/14 93/11 133/3
uniformity [1]  97/18
unilaterally [1]  133/5
unique [5]  51/4 52/15 53/13 94/17
113/25
unit [2]  64/13 64/14
UNITED [19]  1/1 1/12 8/20 13/23 17/8
60/12 63/18 65/2 65/5 65/9 65/13 66/3
66/23 66/24 66/24 67/9 67/10 67/13
137/10
United States [16]  8/20 13/23 17/8 60/12
63/18 65/2 65/5 65/9 65/13 66/3 66/23
66/24 66/24 67/9 67/10 67/13
units [2]  10/18 14/8
unjustifiable [1]  132/22
unjustifiably [1]  130/25
unknown [1]  60/6
unless [3]  42/21 74/3 119/22
unlike [2]  91/23 107/12
unquote [1]  83/7
unraveling [1]  134/8
until [10]  11/4 12/4 44/1 47/18 59/8
60/10 64/19 64/20 89/5 136/6
unusual [1]  14/6
up [62]  18/9 18/20 20/9 20/15 20/20 21/3
23/13 24/15 26/17 26/24 27/12 27/16
27/20 27/24 27/25 27/25 29/14 31/10
33/10 33/16 35/7 35/15 36/15 40/4 40/7
40/14 40/20 40/21 44/4 45/6 48/15 54/15

**V**

vacate [1]  17/1
vague [2]  136/9 136/10
valid [2]  80/11 80/18
valuable [1]  13/10
value [4]  25/20 25/22 45/21 123/22
various [17]  7/3 7/24 10/20 14/7 14/16
17/1 17/10 21/22 26/8 29/14 38/20 54/8
56/9 59/11 92/2 114/9 125/11
vast [2]  93/25 94/11
vehicle [2]  116/12 124/15
veil [6]  62/14 62/18 64/4 64/14 64/23
67/16
veils [2]  62/6 71/15
venture [2]  69/16 99/13
verbally [1]  129/16
verdict [6]  96/14 96/16 96/20 96/25
103/13 103/14
verdicts [1]  26/10
version [1]  121/4
versus [2]  36/1 36/1
very [68]  7/6 9/20 9/20 11/12 13/2 13/4
24/16 24/21 26/10 26/11 31/23 49/1
50/15 50/16 50/23 51/6 51/22 54/6 54/6
58/19 61/3 72/19 72/25 74/23 75/13 77/5
78/7 79/22 80/15 81/1 81/23 82/19 82/23
86/24 87/12 87/18 91/25 92/18 92/18
94/7 95/3 95/17 97/4 97/6 98/19 101/1
102/6 102/13 103/13 103/14 104/15
105/6 106/8 106/21 110/6 114/19 123/3
124/2 124/13 124/21 125/12 126/2
126/22 127/5 133/20 134/12 134/15
136/23
vetting [1]  15/5
victims [4]  23/20 41/2 86/21 126/3
video [2]  20/16 49/23
view [3]  41/13 68/9 81/21
vineyard [1]  41/22
violate [1]  42/25
violation [1]  24/6
Vioxx [2]  26/14 84/7
Virginia [16]  7/21 9/1 9/2 9/10 9/15 9/17

54/17 61/4 61/5 67/22 72/16 90/17 91/2
91/7 91/16 91/19 93/6 99/4 100/12 101/1
101/2 101/9 102/4 102/19 104/8 104/9
104/25 107/5 108/23 112/17 115/10
115/12 116/10 121/15 122/10 123/24
upcoming [4]  12/5 70/17 78/16 131/6
updated [1]  23/5
upheld [1]  83/12
upon [7]  41/10 44/10 57/19 67/15 81/25
107/23 133/11
upper [1]  63/24
upper-level [1]  63/24
upset [2]  48/9 48/24
urging [1]  18/14
Urquhart [1]  3/4
us [37]  21/3 24/15 24/17 24/18 24/21
27/11 27/17 28/14 39/15 45/16 45/17
50/10 51/18 52/10 61/7 62/5 65/16 65/16
76/23 81/23 89/3 98/20 100/15 118/2
118/23 118/24 119/11 119/13 120/22
123/3 123/17 123/18 124/2 124/8 133/24
134/9 134/18
Usdin [1]  3/7
use [4]  6/17 66/14 85/21 107/19
used [3]  45/14 45/17 60/15
USG [4]  2/18 19/5 87/11 87/14
USG Corporation [2]  19/5 87/14
using [2]  4/5 124/15
usually [2]  99/15 111/5
utilized [1]  66/9

**W**

waging [2]  36/13 36/14
wait [3]  18/11 36/18 107/4
waive [2]  44/11 131/16
waived [4]  85/13 133/23 134/17 135/18
waiver [1]  17/14
walk [8]  31/13 31/14 31/15 84/14 121/22
122/25 123/14 123/15
walk-away [1]  31/13
walking [1]  121/23
Wallance [1]  68/17
wallboard [1]  13/22
Walmart [1]  43/9
Walnut [2]  1/19 2/2
want [51]  6/24 7/16 11/13 11/18 11/22
23/13 24/19 27/1 33/18 37/21 38/3 39/2
41/25 42/3 43/9 53/4 54/24 55/5 55/5
57/19 60/14 70/5 70/5 74/13 74/14 76/14
78/6 80/2 80/3 81/6 82/19 87/4 91/19
116/19 117/15 117/22 120/15 120/17
120/19 121/17 122/3 123/16 123/17
125/10 125/16 126/2 127/7 129/15
134/14 136/10 136/14
wanted [13]  36/4 54/24 55/3 55/4 55/6
68/17 69/14 82/19 99/25 117/14 121/9
121/21 129/3
wants [6]  8/14 12/8 22/15 36/17 107/4
119/12
War [2]  61/13 61/14
warn [1]  59/23
warranting [1]  44/8
Warren [1]  22/9
was [203]
wasn't [1]  127/21
wasting [1]  111/1
watch [1]  63/9
watchdog [1]  39/18
watches [1]  63/15
water [1]  111/18
way [27]  8/9 12/24 13/8 13/16 24/8 41/2
57/6 60/11 63/25 63/25 66/1 66/3 66/10
67/3 84/5 84/5 85/2 97/17 110/8 110/12
112/9 118/23 121/7 122/9 124/13 130/18
136/4
Wayne [3]  3/20 3/23 124/23
ways [2]  109/12 118/8
we [431]
we'll [3]  20/15 23/24 24/22
we're [1]  121/10
weakest [1]  68/15
Web [9]  8/13 10/25 15/13 15/19 15/20
45/22 47/3 47/9 57/3
Wednesday [1]  13/11
week [10]  19/22 44/15 46/13 46/24 52/8
73/17 96/16 106/16 111/11 111/12
weeks [6]  41/8 50/2 123/16 124/1 127/12
128/9
weigh [1]  32/15
weighed [1]  71/9
weighs [1]  108/7
Weinberg [1]  2/20
well [45]  14/1 14/16 15/9 15/10 15/11

9/18 9/19 9/24 15/17 28/7 28/12 40/10
virtually [1]  43/15
vis [2]  81/22 81/22
vis-à-vis [1]  81/22
vision [1]  34/5
visit [2]  127/22 127/23
Vitela [1]  34/9
von [1]  68/3
von Clausewitz [1]  68/3

Case 2:09-md-02047-EEF-MBN Document 18323 Filed 12/11/14 Page 163 of 164

well... [40]  16/3 31/20 33/3 33/6 33/23
33/24 34/13 34/22 36/13 36/21 37/10
42/16 43/11 46/3 48/20 55/7 57/6 59/13
61/24 64/25 67/14 72/9 85/20 90/24
93/21 95/17 96/19 99/2 100/1 101/19
105/2 107/2 107/22 109/4 109/15 110/14
116/22 122/3 123/11 137/2
went [15]  10/24 25/2 25/2 25/3 25/3 25/6
25/14 28/13 34/5 39/11 40/18 45/22
47/22 72/3 101/2
were [94]  6/3 9/17 9/20 9/20 10/24 13/23
15/3 16/7 16/7 16/12 16/15 16/18 21/22
22/3 23/3 23/21 23/21 30/14 39/1 39/10
40/6 40/17 41/4 41/11 43/7 45/16 47/20
48/4 50/23 51/10 51/12 51/13 52/23
54/25 57/11 60/17 63/9 63/10 63/11
64/12 65/5 65/13 65/25 66/6 66/18 66/20
66/25 68/20 71/25 72/2 72/18 72/20 73/4
73/6 73/9 73/9 73/12 73/13 73/14 74/4
80/17 81/18 81/20 88/14 88/16 90/3
96/23 99/20 100/5 100/22 100/25 102/21
103/13 103/21 104/11 106/17 111/10
111/11 113/9 114/25 115/2 115/7 116/22
118/6 118/8 118/25 121/3 121/24 123/8
123/14 127/25 128/9 130/10 130/11
West [1]  125/5
Western [3]  64/11 64/12 64/18
WFOE [1]  63/13
what [94]  11/9 21/3 21/8 22/21 24/25
26/11 27/8 27/9 33/2 34/4 34/12 34/22
36/5 36/13 36/17 38/25 46/6 46/21 47/10
48/1 48/6 49/14 50/15 51/1 52/17 53/18
55/2 55/4 55/6 55/19 55/20 59/19 59/25
61/14 61/24 62/21 63/13 67/5 67/22 69/5
69/8 70/23 72/22 73/24 74/12 74/24 76/3
76/7 78/19 83/4 83/24 84/14 84/19 85/24
91/11 92/8 93/1 94/7 96/2 97/5 99/3
99/12 100/19 100/20 102/6 102/12 110/4
110/23 110/25 113/10 115/3 120/14
120/19 122/10 123/24 124/3 124/6
124/11 129/22 129/23 130/20 131/3
132/10 132/11 132/12 132/14 133/9
134/21 135/17 135/21 135/25 136/2
136/7 136/7
what's [12]  25/20 54/21 83/10 84/4 85/25
86/8 89/1 109/22 110/21 120/17 133/10
133/10
whatever [3]  27/6 89/2 128/13
whatsoever [2]  44/1 115/2
wheel [1]  10/7
Wheeler [1]  2/20
when [35]  6/18 15/16 26/1 26/17 26/19
45/9 45/11 45/15 47/9 47/22 48/1 48/10
49/3 49/6 51/5 52/9 60/25 65/12 66/4
72/1 73/16 74/24 83/2 84/8 100/25 103/9
108/3 112/11 116/3 120/25 121/13
127/16 127/23 133/4 133/16
where [41]  14/17 27/12 27/17 27/19 28/5
35/9 35/12 36/25 43/8 44/16 47/8 57/3
57/5 57/14 59/18 59/24 62/19 63/18
65/23 65/24 69/13 72/23 74/21 80/15
83/1 84/12 95/24 100/19 101/12 107/13
108/2 109/21 113/9 115/2 115/18 125/13
130/23 130/24 133/22 134/23 136/12
wherever [1]  121/17
whether [28]  16/9 19/11 25/14 42/12
67/12 70/25 91/22 97/18 108/21 110/23
112/5 114/6 114/9 114/11 117/24 119/10
130/17 132/13 132/25 133/1 133/11
133/17 134/25 135/10 135/11 135/24
136/1 136/12
which [93]  8/17 9/4 15/3 15/11 16/10
16/7 20/1 21/25 23/24 24/1 25/20 26/3
26/14 26/23 32/23 34/4 34/18 34/23
38/24 39/13 39/16 39/18 40/1 41/15
41/16 42/2 42/21 44/20 47/14 48/1 48/5
48/12 50/13 51/12 54/2 54/9 54/18 55/1
56/4 57/20 58/25 59/2 59/3 59/3 59/16
60/1 60/8 60/15 60/25 62/13 63/2 63/11
63/11 63/22 64/7 64/7 64/11 64/16 65/22
66/1 66/21 66/22 66/23 70/20 73/5 73/18
73/19 76/11 77/8 80/22 82/10 82/22 83/6
86/13 88/18 94/22 99/13 101/18 102/5
103/21 105/22 108/5 108/6 116/11
116/22 118/15 119/4 119/19 121/1
122/14 129/8 132/20 134/7 135/7
while [6]  18/9 70/24 74/11 94/20 108/17
123/17
who [69]  11/18 11/19 12/25 15/8 21/12
21/14 21/22 22/1 23/18 23/20 24/15
25/11 25/15 29/22 34/9 35/7 36/12 39/24
40/11 41/2 41/11 41/11 41/22 45/25
47/16 49/9 49/13 50/18 51/7 51/18 52/9
56/7 56/19 56/21 57/14 58/6 61/21 65/25
68/3 68/18 71/4 74/5 75/9 76/6 76/20
84/11 87/24 94/20 95/1 96/4 98/20 99/5
99/8 99/14 99/16 102/16 102/20 103/10
103/17 104/12 104/15 104/19 104/25
106/19 110/5 112/4 112/13 119/19
128/21
who's [1]  94/19
whoever [1]  61/4
whole [2]  9/23 135/16
wholly [3]  16/22 63/14 63/20
whom [1]  11/14
whose [2]  17/6 23/23
why [12]  26/21 61/11 67/24 69/1 77/6
77/15 77/23 79/2 79/5 105/7 112/9
113/15
wildly [1]  104/20
will [115]  6/21 6/22 7/14 8/5 8/24 9/11
10/9 10/10 11/21 13/11 19/15 19/20
19/21 21/4 21/8 22/13 22/16 22/16 22/24
23/5 23/9 23/10 23/11 26/17 26/24 27/4
27/5 27/6 27/8 28/18 29/9 29/10 30/25
31/14 33/11 34/4 35/10 35/11 37/7 48/8
49/18 50/2 50/3 50/18 53/6 54/10 54/12
54/17 54/18 57/7 57/8 58/5 58/7 58/21
65/18 69/19 70/10 70/18 70/22 70/23
71/17 72/5 73/17 73/20 74/1 74/20 74/21
75/12 75/22 84/9 84/10 84/11 86/25
87/11 88/3 88/11 89/4 89/5 93/21 96/4
96/5 96/13 97/1 104/25 105/2 105/11
112/22 114/7 114/9 114/19 118/15 121/6
123/20 123/24 124/6 124/9 124/9 124/16
126/19 128/14 130/23 131/5 131/11
131/16 133/19 133/20 133/22 133/24
134/6 134/14 135/13 135/22 136/3 136/4
137/4
willing [2]  120/18 123/6
Willis [1]  73/10
willy [1]  93/16
willy-nilly [1]  93/16
Wilmington [1]  2/2
win [4]  112/22 113/3 132/5 132/6
wind [1]  45/6
windfall [1]  25/17
window [1]  121/16
wiring [1]  60/17
wish [3]  29/24 118/6 126/18
wished [1]  66/13
withdraw [4]  34/6 81/25 121/6 132/15
withdrawal [2]  128/12 136/25
withdrawn [3]  73/9 73/10 104/14
within [93]  44/15 96/15 114/5
within [1]  84/2
without [17]  16/3 21/21 21/21
21/21 33/20 58/11 72/15 72/15 75/24
88/21 118/17 118/20 119/10 122/20
123/19 127/10 130/18 130/22
withstand [1]  26/10
woman [1]  49/7
women [1]  49/8
won [1]  103/17
won't [3]  36/13 48/8 74/2
wonder [1]  45/3
word [2]  42/17 95/17
words [3]  43/10 47/6 85/23
work [23]  7/4 7/7 7/25 9/5 9/7 9/12 21/1
24/8 25/18 47/1 55/25 57/15 58/18 92/6
94/24 96/6 100/5 100/9 104/11 117/11
125/15 134/9 134/15
worked [6]  9/1 13/8 15/1 25/13 112/2
126/8
working [14]  7/11 7/19 7/20 10/3 11/23
18/14 43/15 57/16 58/11 105/1 112/7
124/16 125/10 134/12
works [3]  26/24 33/13 47/16
world [7]  63/9 76/21 102/13 115/25
116/2 116/2 116/19
Worrall [1]  42/23
worried [1]  41/24
worry [1]  35/8
worth [2]  27/20 132/12
would [93]  9/8 9/9 10/13 21/7 22/10 23/2
27/21 32/22 33/25 34/7 35/21 37/14 40/3
40/3 41/19 41/20 42/20 44/22 45/16 46/4
48/24 49/23 50/8 50/11 53/20 55/2 58/24
59/14 59/21 61/3 61/4 61/5 62/7 62/8
62/11 64/3 64/16 65/5 67/2 67/7 67/8
67/17 67/17 67/21 67/23 67/25 69/16
71/6 71/19 74/5 74/8 76/1 76/1 77/13
80/14 80/23 85/10 86/20 93/9 93/10
94/14 94/14 95/11 95/12 96/3 97/4 100/2
100/21 103/13 105/24 106/25 107/12
110/20 113/10 113/15 115/3 115/21
116/25 116/25 118/7 120/7 120/7 121/5
123/7 124/18 125/23 125/23 127/6 128/10
128/23 129/5 129/11 129/19 134/7
wouldn't [5]  39/9 42/3 63/3 82/5 113/13
wrap [1]  91/2
wrapped [2]  22/8 104/9
wrapping [2]  35/16 54/17
wrench [1]  32/11
writing [1]  127/12
written [9]  58/17 119/3 119/4 119/6
120/24 124/16 125/7 126/23 129/15
wrong [3]  31/24 35/19 59/24
wrote [1]  32/6
Wuhu [2]  119/19 120/5

yeah [2]  48/6 134/9
year [6]  16/24 38/13 52/20 54/16 56/14
81/18
years [32]  7/11 7/13 8/9 11/24 14/23
15/18 18/11 25/16 34/17 35/24 35/25
37/16 38/8 39/6 41/16 45/15 46/4 50/10
53/6 75/11 80/8 80/10 90/13 102/4 104/8
105/15 105/21 106/11 106/12 111/16
122/14 126/13
yells [1]  40/17
yeoman's [2]  9/4 37/17
yes [7]  30/10 79/25 81/8 82/4 128/17
133/14 137/3
yesterday [1]  22/11
yet [3]  92/9 106/12 115/9

## Y

York [8]  2/6 2/6 3/6 3/6 28/7 40/12 41/6
 41/8
you [258]
you'll [2]  33/18 134/18
you're [3]  31/11 101/6 111/25
you've [1]  134/4
your [197]
Your Honor [142]
Your Honor's [6]  11/16 11/20 45/22
 53/25 59/14 66/10
yourself [1]  68/3
yuan [1]  64/2

## Z

zero [4]  122/12 122/17 122/18 122/19