UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED          MDL NO. 2047
DRYWALL PRODUCTS LIABILITY           SECTION L
LITIGATION                           JUDGE FALLON
                                     MAG. JUDGE WILINSON

THIS DOCUMENT RELATES TO:

*Payton, et al. v. Knauf Gips KG, et al.,*
*Case No.: 09-7628 (E.D.La.)*
_____/

## MOTION TO WITHDRAW AS COUNSEL WITHOUT SUBSTITUTION

COMES NOW, Gregory S. Weiss, Esquire and the firm of Leopold Law, P.A., formerly known as Leopold~Kuvin, P.A., counsel of record for Plaintiffs, DANIELLE SKORA and GREGORY SKORA, pursuant to 83.2.11 of the Local Civil Rules of the United States District Court for the Eastern District of Louisiana, and prays this Court to enter an Order granting leave to withdraw as counsel for the Plaintiffs.  Written notice of the proposed withdrawal has been served on Plaintiffs (Exhibit A).  Furthermore, Plaintiffs are able to access any pertinent information regarding their claims and the status of their pending lawsuit on the following website: www.laed.uscourts.gov/drywall.

WHEREFORE, the undersigned respectfully requests that the Court grant the Motion to Withdrawal as Counsel for Plaintiffs, Danielle Skora and Gregory Skora, in the above referenced case.

Dated: December 14, 2012

Respectfully submitted,

/s/ Gregory S. Weiss
Gregory S. Weiss, Esq.
(Florida Bar No.: 163430)
LEOPOLD LAW, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401
gweiss@leopold-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and forgoing has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and email or hand delivery and email, and upon all parties by electronically uploading same to Lexis Nexis File and Serve in accordance with Pre-Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with procedures established in MDL 2047, and via certified mail to Danielle Skora, 441 N.E. 20th Avenue, Apt. 203, Deerfield Beach, FL 33441 and Gregory Skora, 9390 Boca River Circle, Boca Raton, FL 33434 on this 14th day of December, 2012.

s/GREGORY S. WEISS
GREGORY S. WEISS
(Florida Bar No.: 163430)
LEOPOLD LAW, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401
gweiss@leopold-law.com



## LEOPOLD LAW P.A.

Leopold  Weiss  Kroeger  Thomas  Sobel

June 8, 2012

Gregory and Danielle Skora
2074 SE Fern Park Drive
Port St. Lucie, FL 34952

**Re:    Skora v. Knauf, et al.**

Dear Gregory and Danielle:

Thank you for contacting our Firm regarding your potential claim for defectively-manufactured drywall for your property located at 2074 SE Fern Park Drive, Port St. Lucie, Florida 34952. As you know, you currently have a claim pending in In Re: Chinese-Manufactured Drywall Products Liability Litigation, United States District Court, Eastern District of Louisiana ("MDL 2047"). On February 13, 2012, an inspection of your above-referenced property was conducted by Chinese Drywall Screening, LLC, and we herewith enclose a copy of their inspection report. Chinese-manufactured drywall was not found in your home. Accordingly, we will no longer be able to represent you in this matter. Our Motion to Withdraw in MDL 2047 will be forthcoming. We herewith return all documents and photographs you had previously provided to us, for our review.

We suggest you seek another attorney to obtain another opinion of this matter. Please be aware that any matters not already filed in MDL 2047 may be subject to one or more statutes of limitation. In other words, the lawsuit must be filed within a certain period of time or be forever barred. It is important that you consult with another attorney immediately if you wish to preserve the right to sue.

Thank you for giving us the opportunity to represent you in this matter. Since we are not undertaking representation in some matters and withdrawing from others, we are closing our file and will not be contacting you further, save regarding the Motion to Withdraw.

Very truly yours,

GREGORY S. WEISS

GSW/pms
enclosures

**Exhibit A**



Inspections and documentation from leading experts

February 27, 2012

Attorney Gregory Weiss
Leopold-Kuvin, P.A.
2925 PGA Blvd., Ste. 200
Palm Beach Gardens, FL 33410

RE: Chinese Drywall Screening Report: FL05-0334
Community: East Lake Village
    Skora, Danielle
    2074 SE Fern Park Drive
    Port St. Lucie, FL 34952

Mr. Weiss,

At your request, an investigation of the above referenced property was performed on **February 13, 2012**. Chinese Drywall Screening, LLC (CDS) is providing the summary below for your use. This is a professional opinion based on a visual inspection of the accessible materials and not an exhaustive technical evaluation.

CDS performed an investigation in the above referenced property. Suspect blackening was observed on the copper AC evaporator coils and electrical wiring. However, further investigation found no evidence of reactive drywall. Lafarge drywall was observed in in the Guest Bedroom Two, Master Bathroom and second floor interior ceiling from the Laundry attic access. Samples of the drywall were taken and preliminary corrosion testing was performed by CDS, with negative results. Therefore, other factors that could contribute to blackening copper, such as chlorides, sulfurous water supply or other environmental conditions, should be considered. (Markings associated with No. 33 – Unknown (Palatka, FL) were observed but these are also Lafarge markings. XRF testing showed no elevated levels of strontium throughout the home. (Elevated levels of strontium are common in Chinese drywall.)

Pursuant to your agreement with Chinese Drywall Screening, LLC, we cannot guarantee the presence or absence of reactive drywall or the levels in which it may be present without extensive testing and/or laboratory analysis.

Please feel free to contact us should you have any questions regarding our findings or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., SCDP, LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



Inspections and documentation from leading experts

# Certification

## Certification of the Inspector

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.
- The statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions that we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:
    - ▪ Low strontium, corrosive drywall that is domestic and non-homogeneous.
    - ▪ Limited amounts of corrosive drywall installed in a way that would seclude it from available receptacles and switches.
    - ▪ Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.
- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- The information in this report is based on the existing conditions of the structure's materials, documents, and information (written or verbal) supplied by contractor, the owner or their representatives, and our observations during the inspection.
- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.
- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, they shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses or expenses that may occur as a result of its use.
- Our report is based on information made available to us at this time. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of additional information.
- The provided services and documentation been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, PE, LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Chinese Drywall Screening, LLC
501 SE Port St Lucie Blvd Suite 101, Port St Lucie, FL 34984
PH: 855-CDW-Help ◊ FX: 772-409-5948
www.chinesedrywallscreening.com



# PHOTO EXHIBIT FOR

## DANIELLE SKORA





# PHOTO EXHIBIT FOR

## DANIELLE SKORA





# PHOTO EXHIBIT FOR

## DANIELLE SKORA



Chinese Drywall Screening, LLC
PH: 772-224-8660 ◊ FX: 772-409-5948
www.chinesedrywallscreening.com



# PHOTO EXHIBIT FOR

## DANIELLE SKORA





# PHOTO EXHIBIT FOR

# DANIELLE SKORA



Chinese Drywall Screening, LLC
PH: 772-224-8660 ◊ FX: 772-409-5948
www.chinesedrywallscreening.com



# PHOTO EXHIBIT FOR

## DANIELLE SKORA





# PHOTO EXHIBIT FOR

# DANIELLE SKORA



Chinese Drywall Screening, LLC
PH: 772-224-8660 ◊ FX: 772-409-5948
www.chinesedrywallscreening.com



# PHOTO EXHIBIT FOR

## DANIELLE SKORA





**PHOTO EXHIBIT FOR**

**DANIELLE SKORA**





# PHOTO EXHIBIT FOR

# DANIELLE SKORA



Chinese Drywall Screening, LLC
PH: 772-224-8660 ◊ FX: 772-409-5948
www.chinesedrywallscreening.com



# PHOTO EXHIBIT FOR

## DANIELLE SKORA



Chinese Drywall Screening, LLC
PH: 772-224-8660 ◊ FX: 772-409-5948
www.chinesedrywallscreening.com



# PHOTO EXHIBIT FOR

## DANIELLE SKORA








09/02/2009  10:05   15618520265          OFFICEMAX 0165              PAGE  01

Plaintiff Profile Form - Residential Properties

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

**For Internal Use Only**

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

## Section I. Property Information

Name Property Owner: Gregory + Danielle Skora

Address of Affected Property: 2074 SE Fern Park Dr.
Port St. Lucie, FL 34952

Is this Property: (Residential)   Commercial   Governmental

Name of Person Completing this Form: Gregory Skora

Is above your primary residence?   Yes   No

Mailing Address (if different): 9390 Boca River cir.
Boca Raton, FL 33434

Phone: (561) 376-6644

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one:   Owner-Occupant   Owner Only   Renter-Occupant

Represented By: Leopold Kuvin

Address: 2925 PGA Blvd. Ste. 200
Palm Beach Gardens, FL 33410

Phone: (561) 515-1400

Case No./Docket Info: 09-4141 Civ-(Graham) Lynch

## Section II. Insurance Information

Homeowner/Renter Insurer: Universal Ins. Co. of North America

Policy #: UICH005262
Agent: Herbach Agency Inc.

Address: 3119 SW Martin Downs Blvd.
Palm City, FL 34990

Phone: (772) 220-3399

* Attach Copy of Insurance Declaration Page

## Section III. Claimant Information

| Name of Claimant | Dates Occupied Move-in | Leave | Gender | Date of Birth | Are you claiming personal injuries?* Circle One | Identify Claimant Status as an Owner Occupant, an Owner Only, an Occupant or Renter Only. |
|---|---|---|---|---|---|---|
| Greg Skora | 7/06 | 6/08 | (M)/F | / / | Yes /(No) | |
| Danielle Skora | 7/06 | 6/08 | M/(F) | / / | (Yes)/No | |
| | / / | / / | M/F | / / | Yes / No | |
| | / / | / / | M/F | / / | Yes / No | |
| | / / | / / | M/F | / / | Yes / No | |
| | / / | / / | M/F | / / | Yes / No | |
| | / / | / / | M/F | / / | Yes / No | |
| | / / | / / | M/F | / / | Yes / No | |
| | / / | / / | M/F | / / | Yes / No | |

* Personal injuries include claims for mental anguish and medical monitoring.

Page 1

09/02/2009  10:05    15618520265          OFFICEMAX 0165              PAGE  02

Plaintiff Profile Form - Residential Properties

**Section IV. Inspection Information**

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?    (Yes)   No

   1.1. If "Yes" to Question 1.0 Section IV, Who conducted the inspection?    BEN J. TEAGUE W/ RIMKUS consulting.

      1.2. When did the inspection take place?    4 21 09

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?    (Yes)   No

   2.1. If "Yes" to Question 2.0 Section IV, Who made the determination?

      2.2. When was this determination made?    4  21 09

**Section V. Drywall Information**

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Section VI. Home Information**

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 1501 |  |  |  |
| Estimated Sq. Ft. of Drywall | | Occupied | ✓ | |
| Height of Interior Walls | | Year-round | ✓ | |
| Number of Bedrooms: | 3 | Summer | ✓ | |
| Number of Bathrooms: | 2 1/2 | Winter | ✓ | |

**Plumbing System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | | |
| Copper Piping | | | |
| Copper Fixtures | | | |
| Other Fixtures | | | |
| Were repairs made to the plumbing system? | | | |
| Dates: | | | |

**Electrical System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | | | |
| Switches | | | |
| Main Panel | | | |
| 2nd Panel | | | |
| Exposed Copper Wires | | | |
| Were repairs made to the electrical system? | | | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

**Section VII. Construction/Renovation Information**

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move in Date: | / / | Date Acquired Home | / / |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move in Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

**Section VIII. Homebuilder/ General Contractor/ Developer Information**

Homebuilder/ General Contractor/ Developer's Name:

E.H. Building Group

Address: 4227 Northlake Blvd.

West Palm Beach, FL

33410-6251

Phone: (561) 626-4121

+ Attach Copy of Construction/Renovation Contract

+ Attach Copy of New Home Warranty Declaration

**Section IX. Drywall Installer**

Drywall Installer's Name:

Address:

Phone: (     )

**Section X. Drywall Supplier**

Drywall Supplier's Name:

Address:

Phone: (     )

Page 2

09/02/2009  10:05    15618520265                 OFFICEMAX 0165                        PAGE   03

Plaintiff Profile Form - Residential Properties

| Section XI. Verification of Plaintiff Profile Form |

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| --- | --- | --- | --- |
|  | 8/26/09 |  |  |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
|  | 8/26/09 |  |  |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

Issued: 05/28/2008

**UNIVERSAL INSURANCE COMPANY**
*of North America*

P.O. Box 901036
Fort Worth, TX 76101-2036

**Homeowners**
**Renewal Declarations Page**
DECLARATION EFFECTIVE: 07/26/2008
DIRECT BILL

If payment is not received by 07/26/2008, coverage is not in effect.

| Policy Number | From | Policy Period | To | | Agent Code |
|---|---|---|---|---|---|
| UICH0065262-2 | 07/26/08 | | 07/26/09 12:01 AM STANDARD TIME | | 80078 |

**NAMED INSURED AND ADDRESS:**      **AGENT:** (772) 220-3399

GREG SKORA            HERBACH AGENCY, INC
DANIELLE SKORA       3119 SW MARTIN DOWNS BLVD
2074 SE FERN PARK DRIVE   PALM CITY FL 34990
PORT ST LUCIE FL 34952

**PREMIUM SUMMARY**

| Basic Coverages Premium | Attached Endorsements Premium | Scheduled Property Premium | Policy Fee and Surcharges | TOTAL Policy Premium |
|---|---|---|---|---|
| $1,921.00 | -$888.00 | $.00 | $75.00 | $1,108.00 |

**LOCATION**

| FORM | CONST | YEAR | USE | NUM FAM | OCCUP | PROT CLASS | TERRITORY | BCEG |
|---|---|---|---|---|---|---|---|---|
| HO-3 | M | 2006 | Primary | 1 | Owner | 03 | 562 | 04 |

| COUNTY | FIRE CODE | POLICE CODE | PERSONAL PROPERTY REPLACEMENT COST | PROOF OF PRIOR INSURANCE |
|---|---|---|---|---|
| Saint Lucie | | | | Y |

Coverage is provided where premium and limit of liability is shown.
Flood coverage is not provided by the Company and is not part of this policy.

**COVERAGES – SECTION I**                     **LIMITS**       **PREMIUMS**

Coverage A. Dwelling Liability          $174,000       $1,891
Coverage B. Other Structures         $17,400       INCL
Coverage C. Personal Property        $87,000       INCL
Coverage D. Loss of Use               $34,800       INCL

Premium Charged For Hurricane Exposure: $ 511

**SECTION I COVERAGES ARE SUBJECT TO A $1000 NON-HURRICANE DEDUCTIBLE PER LOSS, AND A 2% = $3480 HURRICANE DEDUCTIBLE.**

**COVERAGES – SECTION II**                 **LIMITS**       **PREMIUMS**

Coverage E. Personal Liability         $300,000       $30
Coverage F. Medical Payments        $5,000       INCL

**LOCATION(S) OF PROPERTY INSURED**
2074 SE FERN PARK DRIVE, PORT ST LUCIE FL 34952

Countersignature *Dora S. Rees*

UIC REN 07 06
**Insured Copy**           Continued on Next Page...        PAGE 1

OCT-29-2009 08:43 From:GSM ER IMAGING     5618353390     To:15615151401     P.2

Revised 12·10·09

09/02/2009 10:05   156188202 5     OFFICEMAX 0166     PAGE 01

For Internal Use Only

Plaintiff Profile Form - Residential Properties

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION
THIS DOCUMENT RELATES TO: ALL CASES

MDL NO. 2047
SECTION: L
JUDGE FALLON
MAG. JUDGE WILKINSON

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly reserve "unknown" in the space provided when and known. You must supplement your response if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privilege. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to the protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

### Section I. Property Information

Name of Property Owner: Gregory + Danielle Skora

Address of Affected Property: 2074 SE Fern Park Dr.
Port St Lucie, FL 34953

Is this Property*: Residential   Commercial   Governmental

Name of Person Completing the Form: Gregory Skora

Is where your primary residence? Yes  No

Mailing Address (if different): 9390 Rock River cir,
Boca Raton, FL 33434

Phone: (561) 376-6044

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Check One: Owner-Occupied   Owner Only   Renter Occupied

Represented By: Gerald Keith

Address: 3525 PGA Blvd., Ste. 200
Palm Beach Gardens, FL 34410

Phone: (561) 618-1400

Case No./Docket Info: 09 7628

### Section II. Insurance Information

Homeowner/Renter Insurer: Universal Ins. Co. of North America

Policy #: UIC H0005.2623

Agent: Heabach Agency Inc.

Address: 3119 SW Martin Downs Blvd.
Palm City, FL 34990

Phone: (772) 220-3399

+ Attach Copy of Insurance Declaration Page ✓

### Section III. Claimant Information

| Name of Claimant | Dates Occupied Moved In | Dates Occupied Leave | Gender | Date of Birth | Are you claiming personal injuries? Check One | Identify Claimant Status as an Owner Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| Greg Skora | 7/06/07 | | M / F | / / | Yes  No | |
| Danielle Skora | 7/06/07 | | M / F | 4/12/82 | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |

* Personal injuries include claims for mental anguish and medical monitoring.

Skora000001

OCT-29-2009 08:43 From:GSM ER IMAGING        5618353390            To:15615151401        P.3

09/02/2009  10:05   15618520255              OFFICEMAX 0155                          PAGE  02

Plaintiff Profile Form - Residential Properties

**Section IV. Inspection Information**

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?    Yes  No

1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Gypsum Construction and Consulting

1.2. When did the inspection take place?   4 21/09

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?    Yes  No

2.1. If "Yes" to Question 2.0, Section IV. Who made this determination?   Gypsum Construction and Consulting

2.2. When was this determination made?   4 21/09

**Section V. Drywall Information**

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| | | |
| | | |
| | | |

**Section VI. Home Information**

| Approx. Sq. Ft. of House: | 1521 | | Yes | No |
|---|---|---|---|---|
| Estimated Sq. Ft. of Drywall | 4875 | Occupied | ✓ | |
| Height of Interior Walls | | Year-round | ✓ | |
| Number of Bedrooms | 3 | Summer | ✓ | |
| Number of Bathrooms | 3 ½ | Winter | ✓ | |

**Plumbing System**

| | | Blackening or Corrosion? | | |
|---|---|---|---|---|
| | | Yes | No | N/A |
| PVC CPVC Plastic Piping | | | ✓ | |
| Copper Piping | | | | ✓ |
| Copper Fixtures | | | | ✓ |
| Other Fixtures | | | ✓ | |
| Were repairs made to the plumbing system? | | | ✓ | |
| Dates: | | | | |

**Electrical System**

| | | Blackening or Corrosion? | | |
|---|---|---|---|---|
| | | Yes | No | N/A |
| Receptacles | | | ✓ | |
| Switches | | | ✓ | |
| Main Panel | | | | ✓ |
| 2nd Panel | | | | ✓ |
| Exposed Copper Wire | | | ✓ | |
| Were repairs made to the electrical system? | | | ✓ | |
| Dates: | | | | |

* Attach Copy of Floor Plan on 8 1/2" X 11" paper ✓

**Section VII. Construction/Renovation Information**

| Date Range for New Home Construction: (Month/Day/Year) | | | |
|---|---|---|---|
| Start Date: | / / | Completion Date | / |
| Move in Date: | 7 / 06 | Date Acquired Home | / 05 |

| Date Range for Renovations: (Month/Day/Year) | | | |
|---|---|---|---|
| Start Date: | / / | Completion Date | / |
| Move in Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

**Section VIII. Homebuilder/General Contractor/Developer Information**

Homebuilder/General Contractor/Developer's Name:
E.H. Building Group

Address:  9237 Northlake Blvd
West Palm Beach FL
33410-4251

Phone:  (561) 620-4121

* Attach Copy of Construction/Renovation Contract ✓
* Attach Copy of New Home Warranty Declaration

**Section IX. Drywall Installer**

Drywall Installer's Name:

Address:

Phone:

**Section X. Drywall Supplier**

Drywall Supplier's Name:

Address:

Phone:

Skora000002

09/02/2009  10:05    15618520255            OFFICEMAX 0165                    PAGE  03

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| Claimant's Signature | Date Signed 8/26/09 | Claimant's Signature | Date Signed |
| --- | --- | --- | --- |
| Claimant's Signature | Date Signed 8/26/09 | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

Skora000003
Page 3

OCT-29-2009 08:43 From:GSM ER IMAGING       5618353390           To:15615151401           P.5

Issued: 05/28/2008

**UNIVERSAL INSURANCE COMPANY**
*of North America*

P.O. Box 901038
Fort Worth, TX 76101-2038

Homeowners
Renewal Declarations Page
**DECLARATION EFFECTIVE**       07/26/2008
**DIRECT BILL**

If payment is not received by 07/26/2008, coverage is not in effect.

| Policy Number | | Policy Period | | | Agent Code |
|---|---|---|---|---|---|
| | From | | To | | |
| UICH0065262-2 | 07/26/08 | | 07/26/09 12:01 AM STANDARD TIME | | 80078 |

| NAMED INSURED AND ADDRESS: | AGENT: (772) 220-3399 |
|---|---|
| GREG SKORA | HERBACH AGENCY, INC |
| DANIELLE SKORA | 3119 SW MARTIN DOWNS BLVD |
| 2074 SE FERN PARK DRIVE | PALM CITY FL 34990 |
| PORT ST LUCIE FL 34952 | |

### PREMIUM SUMMARY

| Basic Coverages Premium | Attached Endorsements Premium | Scheduled Property Premium | Policy Fee and Surcharges | TOTAL Policy Premium |
|---|---|---|---|---|
| $1,921.00 | -$888.00 | $.00 | $75.00 | $1,108.00 |

### LOCATION

| FORM | CONST | YEAR | USE | NUM FAM | OCCUP | PROT CLASS | TERRITORY | BCEG |
|---|---|---|---|---|---|---|---|---|
| HO-3 | M | 2008 | Primary | 1 | Owner | 03 | 562 | 04 |

| COUNTY | | | | | | PROOF OF PRIOR INSURANCE |
|---|---|---|---|---|---|---|
| Saint Lucie | | | | | | Y |

Coverage is provided where premium and limit of liability is shown.
Flood coverage is not provided by the company and is not part of this policy.

| COVERAGES – SECTION I | LIMITS | PREMIUMS |
|---|---|---|
| Coverage A. Dwelling Liability | $174,000 | $1,891 |
| Coverage B. Other Structures | $17,400 | INCL |
| Coverage C. Personal Property | $87,000 | INCL |
| Coverage D. Loss of Use | $34,800 | INCL |

Premium Charged For Hurricane Exposure: $511

**SECTION I COVERAGES ARE SUBJECT TO A $1000 NON-HURRICANE DEDUCTIBLE PER LOSS, AND A 2% = $3480 HURRICANE DEDUCTIBLE.**

| COVERAGES – SECTION II | LIMITS | PREMIUMS |
|---|---|---|
| Coverage E. Personal Liability | $300,000 | $30 |
| Coverage F. Medical Payments | $5,000 | INCL |

**LOCATION(S) OF PROPERTY INSURED**
2074 SE FERN PARK DRIVE, PORT ST LUCIE FL 34952

Countersignature       *Slora S. Rees*

Skora000004

UIC REN 07 06

Bruce A. Harris Appraisers, Inc.                                                    Case No. None Provided   File No. 0506SL14   Page #10

## SKETCH

| | |
|---|---|
| Borrower/Client | SKORA, Danielle |
| Address | 2074 SE Fern Park Drive |
| City Port St Lucie | County St. Lucie | State FL | Unit No. N/A   Zip Code 34952 |
| Lender/Client | Cutala Mortgage Group, Inc. |



FIRST FLOOR                          SECOND FLOOR

Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 620.00 | 620.00 |
| GLA2 | Second Floor | 882.00 | 882.00 |
| GAR | 2 Car Garage | 440.00 | 440.00 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 2.0 x 6.0 | | 12.00 |
| 0.5 x 4.0 x 2.0 | | 4.00 |
| 0.5 x 4.0 x 2.0 | | 4.00 |
| 20.0 x 30.0 | | 600.00 |
| Second Floor | | |
| 10.0 x 43.1 | | 431.00 |
| 0.5 x 4.0 x 2.0 | | 4.00 |
| 2.0 x 6.0 | | 12.00 |
| 6.0 x 43.1 | | 258.60 |
| 0.5 x 2.0 x 4.0 | | 4.00 |
| 4.0 x 43.1 | | 172.40 |

| | |
|---|---|
| TOTAL LIVABLE    (rounded) | 1502 |
| 10 Calculations Total (rounded) | 1502 |

Designed by United Systems Software Company (800) 969-8727

Skora000005

## PURCHASE AND SALE AGREEMENT F... HOMES OF EAST LAKE VILLAGE, LLC

Check One:_____ Cash _X_ CONV _____ FHA. _____ VA
Check One: _✓_ Owner Occupied _____ Second Home _____ Investment

THIS AGREEMENT is made by and between HOMES OF EAST LAKE VILLAGE, LLC., a Florida limited liability company and/or assigns ("Seller"), with an address of 4227 Northlake Boulevard, Palm Beach Gardens, Florida 33410, fax number 561-626-2150, and the buyer(s) named below ("Buyer" or "Purchaser") as of this date: (mm/dd/yy) _____

BUYER(S): Danielle M. Imbriale & Gregory F. Skora    Residence Address: 9350 Boca River Cir.

City: Boca Raton    State: FL    County: PB    Zip Code: 33434

Home Telephone: 561-483-7218    Office Telephone: _____    Cell Phone: 561-703-7282

Email Address: D52Angel@AOL.com    Fax No. 561-883-8115

Estimated Date of Completion: 6/1/05    (See Paragraph 3(B) hereof)    CALL FIRST

NAME, ADDRESS AND TELEPHONE NUMBER WHERE ALL BUYER'S NOTICES ARE TO BE MAILED OR PHONED, IF DIFFERENT FROM ABOVE:

Name (c/o): N/A    Telephone _____
Street Address: _____

1. **PURCHASE AND SALE:** The total purchase price ("Total Purchase Price") for the "Property" (as hereinafter defined), being purchased hereunder, exclusive of any closing costs as described in Paragraph 7, will be as follows:

Base Purchase Price .................................................................$ 171,900

Lot Premium .................................................................$ 0

Options or Extras Total, if any (as per attached "Selections Form", Exhibit "A"
which may be attached at later date)........................................$ TBD

Seller Paid Closing Costs .................................................................$ 6,000

**TOTAL PURCHASE PRICE** .................................................................$ 177,900

**Buyer shall make the following payments:**

| Payment | Due Date | Amount Due |
|---|---|---|
| Initial Deposit upon Buyer's execution of Contract | | $ 8895 |
| Additional Deposit, if any, due: (see Attached Exhibit "B" if any) Due 6/1/04 | | $ 8895 |
| Mortgage Amount (per executed attached Financing Contingency Addendum) | | $ 160,010 |
| Balance Due | | $ TBD |
| **TOTAL:** | | $ 177,900 |

Buyer agrees to buy and Seller agrees to sell to Buyer in accordance with the terms and conditions set forth herein, the following-described property, together with the improvements (the "Home" or "Residence") to be constructed thereon in substantial accordance with the Floor Plans and Specifications, as said term is hereinafter defined, together with all appurtenances thereto:

Model Type: York

Proposed Lot 2, Block 31, according to that certain approved Site Plan of Phase 1 of East Lake Village P.U.D., dated _____, (the "Site Plan"), consisting of a portion of Lots 145 and _____ of Plat _____ of East Lake Village, according to the Plat thereof as recorded in Plat Book ____, Page _____, Public Records of St. Lucie County, Florida (the "Phase _____ Plat"), which Lots are intended to be replatted by Seller pursuant to Paragraph 10.W. hereinbelow, (the "Lot").

The above-described Lot and improvements to be constructed thereon are collectively referred to in this Agreement as the "Property". The Property is located in Phase 1 of EAST LAKE VILLAGE in St. Lucie, Florida, which Phase 1 is hereinafter referred to in this Agreement as the "Development".

The Balance Due at Closing shall be paid by either a local cashier's check drawn upon a financial institution located in Palm Beach County, Florida or St. Lucie County, Florida or by wire transfer. All payments must be made in U.S. funds drawn upon a bank located in the United States.

2. **FINANCING CONTINGENCY:** The obligations of Buyer under this Agreement are not contingent upon Buyer qualifying for

Buyer(s) Initials: _____

1

financing or obtaining a written loan commitment, unless a fully executed and completed "Financing Contingency Addendum" is attached to this Agreement, in which event the terms of the Financing Contingency Addendum shall control.

3. **CONSTRUCTION AND COMPLETION:**

A. Seller shall construct a residence ("Residence") upon the Lot in accordance with that certain floor plan and specifications for said Model Type noted above, ("Floor Plans and Specifications"), copies of which have been made available to the Buyer and are attached hereto. Seller agrees that all construction shall be done using new materials, and that all such materials shall be in accordance with applicable governmental rules and regulations and building codes, and the Floor Plans and Specifications.

B. Seller further agrees that all construction work shall be done in a good and workmanlike manner. In the event construction has not commenced as of the Effective Date of this Contract, Seller shall commence said work as soon as it is reasonably possible following issuance of the building permit for the Home and shall proceed diligently therewith throughout the term of construction and until completion of the Home. In the event construction of the Home has not commenced as of the date of this Agreement, it is estimated that construction will commence on or about December 15, 2004 (the "Commencement Date"). Construction is estimated to be completed on or about May 15, 2005 (the "Completion Date"); in any event, however, the Home shall be completed and the closing shall occur no later than two (2) years after the Effective Date, plus any extension as set forth below, as required by Federal law.

C. The Completion Date may be extended by Seller for reason of force majeure, circumstances beyond Seller's control, or any act or failure to act by Buyer or Buyer's employees, subcontractors, agents or representatives. In the event Seller deems it necessary, in Seller's sole judgment, to so extend the Completion Date, Seller shall provide Buyer with written notice of same, including the reason for the delay, and the date Seller anticipates that construction shall be completed. The period of any such extension shall be equal to the period of the delay or delays in completing the construction and the Completion Date shall be deemed extended for that period.

D. At closing, Seller shall either guarantee in writing to Buyer all deficiencies in labor and materials for a period of one (1) year following the issuance of a Certificate of Occupancy for the Home by appropriate governmental authority, pursuant to Contractor's standard limited warranty (a copy of which is available through Seller), or to issue to Buyer at closing a "H.O.W.", "Bonded Builder's Program", or substantially similar residential homeowner's warranty on the Home. For the purpose of completing the construction of the infrastructure and easements for the Development, and servicing of the Home, Seller hereby reserves for itself an easement for ingress and egress for Seller, its successors and assigns, its agents, employees, materialmen and subcontractors, over, under and upon the Property. This easement shall terminate upon completion of such construction or one (1) year after closing, whichever shall be sooner.

E. Buyer acknowledges that Buyer has either been shown a model similar to the Home being purchased pursuant to this Agreement or, in the alternative Buyer has reviewed and approved the preliminary Floor Plans and Specifications, which are approximate and subject to change by Seller; however, said change shall not materially or substantially alter from the approved Floor Plans and Specifications. Buyer understands that any existing model may contain items or special features which are not included in this transaction, such as furnishings and decorations, accessories, window treatments, upgraded carpet and flooring, wallpaper and other special wall treatments, upgraded fixtures and special lighting effects, mirrors, intercoms and appliances. Seller shall use its best efforts to complete construction of the Home substantially in conformance with the Floor Plans and Specifications approved by Buyer. Seller reserves the right without liability to Buyer to make any modifications, changes or omissions to the Home as long as they do not substantially and adversely affect the value of the Home or if they are required by any governmental authority, and to substitute materials, equipment, cabinets, fixtures, appliances, and/or floor coverings with items of similar or greater quality, utility, value, and/or color. Buyer understands that the location of telephone, electric, cable TV and other utility outlets, doors, windows, air conditioning components, lighting fixtures, equipment and fixtures are subject to change and Buyer understands that materials such as brick, wood, wood grain, carpeting, paint, cabinets, cultured marble, tile, mica and the like are subject to shading and gradation and may vary from samples, models or color charts, and from piece to piece, and Seller shall not be liable for such variations. All change orders shall be agreed upon and priced and payment shall be due Seller at the time the changes are ordered. If Seller shall fail to include any extras which have been ordered and paid for by Buyer, Seller's sole liability shall be to deduct the cost of any such extra from the total cost of the Property.

F. The Property is being sold unfurnished, but shall include those options or extras, if any enumerated in the attached Exhibits. Buyer acknowledges that all furnishings, wall coverings, fixtures, and other decorative improvements appearing in any model are not included in the Home, except where otherwise designated.

G. Insulation is, or shall be, installed in those areas of the Home set forth below. The insulation shall be of the thickness, and shall yield the R-value, indicated below:

| INSULATION LOCATION | INSULATION TYPE | THICKNESS | R-VALUE |
|---|---|---|---|
| Ceiling | Blown | 6" | 19 |
| Frame- 6" studs | Batt | 4" | 11 |
| Home to Garage | Batt | 4" | 11 |
| Block | Foil | n/a | 4.2 |

Buyer(s) Initials: _____     2

Buyer acknowle... ...es that the above stated R-Value informatic... ...s based solely upon information supplied by the manufacturer and/or installer and Seller does not represent or warrant the accuracy of this information. Buyer also acknowledges that the R-Value may vary based on normal construction, variances in insulation thickness and opening in walls.  R-Values for all ceilings will be R-19.

H.   Prior to closing of title, Buyer shall be given a reasonable opportunity to examine the Home with Seller's representative. At that time, Buyer shall present to Seller an Inspection Statement, signed by Buyer and Seller's representative, setting forth any defects in workmanship or materials.  As to any items therein described, and where there are true defects in workmanship and materials (based upon the construction standards prevalent in St. Lucie County, Florida, for similar property), Seller shall be obligated to correct same at Seller's cost within a reasonable period of time.  Any defect, or alleged defect(s), not so specified on the Inspection Statement at that time shall be deemed to have occurred after said date and while the Home was in the possession of Buyer.  Failure of Buyer to make such inspection shall not delay the closing and shall be deemed a waiver of Buyer's right of inspection and correction of deficiencies.  The fact that Seller has to complete the work set forth on the Inspection Statement, or the installation of landscaping, or other items normally completed after occupancy shall not delay or postpone the closing or Buyer's obligation to close and pay the balance of the Purchase Price, or be grounds for a reduction of or credit against the Purchase Price or be grounds for placing a portion of the Purchase Price in escrow pending completion of such items. The provisions of this Paragraph H shall survive the closing.

I.   For reasons of safety, and to comply with insurance requirements imposed on Seller, neither Buyer nor any agent or invitee of Buyer shall, until after the closing of this transaction, be permitted to enter upon the Property unless accompanied by a representative of Seller.  A violation of this provision shall be deemed an incurable default by Buyer under this Contract.

J.   Buyer shall be permitted to make, as is reasonably possible and where Buyer has a choice, selections of color, feature, style and material for the Home within ten (10) days after the effective date of this Contract.  If these selections are not made within such time, Buyer hereby authorizes Seller to make such selections for the Property as Seller deems advisable.  In the event Buyer makes selections, requests, changes or orders "extras" which result in a net increase in cost (excess of charges over credits), the additional cost shall be paid in full and in cash by Buyer to Seller at the time such selections or requests are made, and such selections or requests shall not be deemed to have been made unless and until payment therefor is received by Seller.  If Buyer defaults or in any way terminates this Agreement, including the invocation of any statutory right to do so, such payments are not and shall not be refundable, whether or not the subject selections or changes are wholly or partially executed, and any such payments so retained by Seller shall be separate from and in addition to liquidated damages, if any, as defined elsewhere in this Agreement.  If selections or requests made by Buyer result in a net credit (excess of credits over charges), such credits shall be applied to reduce the balance due from Buyer at closing.

4.  DEVELOPMENT DOCUMENTS:

A.   Buyer acknowledges that the Property is a part of a planned residential community known as East Lake Village. As such, the Property is subject to that certain Declaration of Covenants and Restrictions for East Lake Village Community Association, ____ dated _____ and recorded in Official Records Book _____, Page _____, (the "Declaration"), the Articles of Incorporation ("Articles") and Bylaws ("Bylaws") of the East Lake Village Community Association, Inc. (the "Association"), all as may from time to time be amended.  In addition, the Property shall be part of that certain sub-association known as _____ ("Sub-Association"). As such, the Property is or will be also subject to that certain Declaration Of Covenants And Restrictions for _____ ("Sub-Association Declaration"), to be recorded , the Articles Of Incorporation ("Sub-Association Articles"), and By-laws ("Sub-Association By-laws") for for _____ (the "Sub-Association").   The Declaration, Articles, Bylaws Sub-Association Declaration, Sub-Articles and Sub-Association Bylaws and other related governing documentation are hereinafter collectively referred to as the "Development Documents." The terms and conditions of each of the Development Documents are hereby incorporated by reference into this Agreement, and Buyer's rights under this Agreement are subject and subordinate to the Development Documents.  Buyer agrees to abide by and be bound by all of the terms and conditions contained in the Development Documents and any amendments and supplements thereto.

B.   Buyer acknowledges that, in accordance with the terms and conditions contained in the Development Documents Buyer may be responsible for the payment of certain assessments to be levied against the Property by the Association. Buyer understands that any estimated operating budget received at the time of purchase is only an estimate of what it will cost to run the Association.  Changes to the budget may be made at any time to cover increases or decreases in expenses or estimates in the budget.  Without limiting the generality of this Paragraph, those changes will not give Buyer any right to cancel this Agreement unless Seller also materially changes any guaranteed assessments stated in the Development Documents in a manner which is inconsistent with the terms of the Seller's guarantees, if any.

C.   As provided in the Development Documents, Buyer shall become a member of the Association immediately upon the conveyance of title to the Property.  As a member of the Association, Buyer shall have all rights and duties associated with said membership.  Buyer acknowledges that Buyer is required to complete an Initial Application, which is to be submitted to the Association.  Furthermore, the Buyer acknowledges that Buyer may be required to complete an interview with the Association and provide a certificate of approval prior to closing.

Buyer(s) Initials: _DCO_, _FS_                     3

Skora000008

D.     Seller, as successor-Declarant under the Development Documents, reserves the right to make changes in any of the Development Documents as Seller, governmental authorities having jurisdiction over the Property, title insurance companies, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Federal Housing Administration/Veterans Administration, or mortgage lenders require or deem necessary, providing the changes do not materially alter the size of the Property or otherwise materially and adversely affect Buyer's rights, and Buyer hereby authorizes any such changes.

E.     Seller and Buyer acknowledge that the construction of the Residence may be subject to approval by the Association's Architectural Review Board and/or a similar board established by the Development Documents, unless exempted by the terms of the Development Documents. In the event any changes in the Floor Plans and Specifications for the Home are required by said Board(s), Seller and Buyer agree that they shall work together to make such changes attempting to accommodate the said Board in accordance with the terms of the Development Documents.

F.     The Association documents shall be provided to Buyer approximately ninety (90) days following execution of this Agreement.

5.   TITLE INSURANCE AND CONVEYANCE:

A.     Within five (5) days prior to Closing, Seller shall cause a reputable title insurer or an agent thereof, which title insurer or agent thereof shall be designated by Seller, to issue to Buyer a standard form of commitment for an ALTA Form B Owner's Title Insurance Policy ("Title Policy") at Seller's sole cost and expense. Seller shall convey insurable title to the Property to Buyer by Special Warranty Deed subject to: (a) the mortgage in favor of Buyer's lender, if applicable; (b) easements, restrictions, conditions and limitations and other matters of record that do not render title unmarketable; (c) zoning regulations and ordinances; (d) real estate taxes and drainage taxes for year of closing; (e) all covenants, conditions, restrictions and easements as set forth in the Development Documents; and (f) the Standard printed exceptions contained in an Owner's Policy of Title Insurance, unless properly removed or insured over by the Title Agent. In addition to the other mentioned items, it is understood that, at the time of closing, title to the Property may be subject to other liens, encumbrances or exceptions

B.     If Seller is unable to deliver title as provided herein, Seller shall not be obligated to cure any objections or defects, but shall be afforded a reasonable time to do so if Seller so elects. If not cured within such a period, or if Seller elects not to so cure Buyer may accept title in its then existing condition (but without any reduction in the Purchase Price) or terminate this Agreement and receive a refund of all deposits, and, upon being made, Seller shall be released of all liability to Buyer and this Agreement shall be thereafter null and void.

C.     The delivery of the foregoing title insurance commitment shall be deemed conclusive evidence as to Seller's compliance with Paragraph 5 above. Seller shall not supply abstracts of title. An owner's title insurance policy shall be forwarded to Buyer within approximately three (3) months from the date of closing. Buyer may elect to decline the title insurance commitment provided by Seller, however, Buyer shall not be entitled to any credits towards or reimbursement of the cost of title insurance where Buyer elects to decline the title insurance or where Buyer elects to obtain its own title insurance policy. In the event Buyer elects to decline the title insurance offered by Seller, Seller's Designated Title Agent shall continue to be the "closing agent" and shall provide the necessary closing documentation required to be signed by both Seller and Buyer.

6.   CLOSING OF TITLE:

A.     Closing of title shall be held at the office of Seller's Designated Closing Agent or at such place in Palm Beach County, Florida, and on such day and hour as Seller may designate to Buyer on not less than ten (10) days prior notice. Seller may postpone the closing on notice to Buyer, which notice shall fix a new date and time for closing. In the event Buyer fails to close on the date and at the time specified by Seller, Buyer shall pay to Seller **$75.00 per day** (including Saturday, Sunday and holidays) calculated from the date of closing scheduled by Seller to the date of actual closing; provided, however, that such payment shall not be construed as a limitation upon Seller's remedies in the event of Buyer's failure to close on the designated date.

B.     Closing of title to the Property shall take place only after the issuance of a Certificate of Occupancy for the Home by the appropriate governmental entity. Buyer shall not move personal items into or take occupancy of the Home until said Certificate of Occupancy is obtained and payment is made in full under the terms of this Agreement.

C.     At closing, Seller will deliver to Buyer a recordable Special Warranty Deed and a No Lien Affidavit; Buyer shall pay all sums due to Seller, Buyer's lender, if any, the Seller's title insurance agent and shall execute and deliver all instruments required by Seller, the lender and, the Seller's title insurance agent for the closing of title and the closing of any mortgage loan to encumber the Property.

7.   CLOSING CHARGES AND ADJUSTMENTS:

A.     Unless otherwise provided in an attached fully executed and completed "Financing Contingency Addendum", at the closing Buyer shall pay the following sums:

(1)     Buyer's prorata share of the maintenance assessments charged by the Association, if any, for the assessment period in which the closing occurs.

(2)     There shall be added to the Total Purchase Price and the Buyer shall pay in cash at the time of

Buyer(s) Initials: _____

4

Skora000009

closing an amount equal to one and three-quarters (1.75%) percent of the aggregate Purchase Price (including all extras and change orders) (the "Closing Fee").  Said Closing Fee shall be utilized by Seller to pay for the following: (1) escrow agent fees, (2) recording special warranty deed and corrective instruments, (3) Seller's out of pocket expenses, (4) Seller's administrative expenses, and (5) Seller's miscellaneous expenses.

(3)    Title Insurance premium and related charges for the Owner's Policy.

(4)    Buyer shall pay the cost of documentary stamps to be affixed to the Deed.

(5)    Buyer shall pay for all costs associated with the issuance of a lender's title insurance commitment and policy.  Said title insurance commitment shall be prepared and issued by a title insurer designated by the Seller.

(6)    The cost of a courier to take the documents to and from the recording department.

(7)    The cost of recording the partial release of any mortgage and the termination of Notice of Commencement placed on the Property by Seller.

(8)    Any interim service fee, the cost of impact fees (including but not limited to school impact fees), etc.

(9)    Any utility meter setting charges, security deposits or other utility charges which may be advanced by Seller.

(10)   Reimbursement of survey charges paid by Seller for the Development, up to $350.00 per unit.

(11)   A proration of real estate taxes for the year of closing.

(12)   Loan fees, closing costs, escrows, appraisals, credit fees, lender's title insurance premiums, prepayments and all other expenses charged by any lender giving Buyer a mortgage, if applicable.  Additionally, if Buyer obtains a loan and elects to have Seller's closing agent act as "loan" closing agent as well, Buyer agrees to pay, in addition to any other sums described in this Agreement, such closing agent an aggregate sum equal to $350.00 plus reimbursement of applicable costs, for the agent's title examination, title searching, simultaneous issue of the loan policy (assuming the amount of the loan policy does not exceed the amount of the owner's policy), excluding, however, any endorsement to the lender's title insurance policy which will be charged at promulgated rates, and closing services related to acting as "loan" closing agent.  The amount of all lender's charges is now unknown.  Furthermore, Seller reserves the right to collect from Buyer at closing, in addition to the other sums described in this Agreement, the sum of $250.00 to reimburse Seller for the additional costs it will incur in connection with Seller's coordination of closing with Buyer's lender.  Notwithstanding any of the references in this paragraph to coordinating closing with any lender that Buyer may elect to obtain, nothing herein shall be deemed to make this Agreement, or Buyer's obligations under this Agreement, conditional or contingent in any manner on Buyer obtaining a loan to finance any portion of the Purchase Price, unless a Financing Contingency Addendum has been signed by both Buyer and Seller and attached to this Agreement, in which event the terms and conditions contained in said Financing Contingency Addendum shall control.

B.    Buyer and Seller agree that the law firm of **Cohen, Norris, Scherer, Weinberger & Wolmer** is the Seller's Designated Title Agent for this transaction and said entity shall issue the title insurance policies at the expense of the party hereinabove specified in this Agreement.  Seller reserves the right to change the Designated Title Agent at any time without Buyer's consent.

## 8. DEFAULT:

A.    In the event that the Buyer defaults in the performance of the Buyer's obligations pursuant to this Contract, then all sums previously deposited by the Buyer shall immediately become the sole and exclusive property of the Seller as liquidated and agreed-upon damages, and this Contract shall be terminated, and both parties shall be relieved from further liability hereunder.

B.    The Buyer agrees that the following conducts constitutes default, but is not limited or restricted by the following provisions.  Any event of default will entitle the Seller to the liquidated and agreed-upon damages specified in the previous paragraph.

1.    Failure to pay balance of deposit within ten (10) days of signing this agreed upon Contract.

2.    Misrepresentation by Buyer of Buyer's financial information to either Seller or to lending institution.

3.    Failure to accept the mortgage loan commitment offered by the lender.

4.    Failure to pay the balance of any other sums due under this Contract.

5.    Failure to close this transaction at the closing date determined pursuant to this Contract.

6.    Failure to adhere to the Financing Contingency Addendum terms and requirements.

7.    Failure to promptly comply with Buyer's agreement of this Contract.

8.    Electing to terminate the contract after the financing approval has been obtained.

Buyer's Initials

C.    If the liquidated damages clause found in Article 8, Paragraph A of this Contract should be declared by a court of law to be invalid for any reason, the Buyer hereby agrees that the measure of damages shall be the actual damages incurred by the Seller, including but not limited to: any loss in the fair market value of the Improved Residential Lot; any real estate taxes incurred; any other taxes incurred; lawn maintenance; pest control service; closing costs incurred to induce the sale of the Property; and an overhead charge of fifteen

Buyer(s) Initials:

5

Skora000010

(15%) percent of the total contract Purchase Price for such items as interest, sales and accounting. The Buyer agrees that the damages period shall run from the closing date determined under this Contract until the Property is transferred to a third party buyer (or until the litigation trial date).

D.  If the Seller defaults in the performance of its obligations hereunder, then the Buyer's remedy, at Buyer's option, shall be (i) to seek specific performance of the conveyance of the Property by the Seller; or (ii) affirm the Contract and seek actual damages incurred; or (iii) as an alternative to the rights reserved to Buyer as to specific performance or a suit for damages, Buyer shall have the remedy to terminate and demand return of all deposits made. The Buyer hereby specifically waives any other rights and remedies, both legal and equitable (other than the rights reserved hereinabove) that the Buyer may have against the Seller upon any such default.

E.  Buyer expressly waives any right to claim consequential damages of any sort. Buyer expressly waives any right to claim the payment of interest on the Buyer's deposit.

## 9. REAL ESTATE BROKER:

A.  Seller is responsible for payment of Seller's Sales Representative pursuant to a separate written agreement. Buyer and Seller represent and warrant that except for Seller's Sales Representative there is no other Agent or Sales Person in connection with this sale. Buyer agrees to hold the Seller harmless from and to indemnify the Seller from any claim or lien made by any other Broker, salesperson or other party if such claim is based on any alleged activity or statements of the Buyer. This provision shall survive the closing.

## 10. MISCELLANEOUS:

A.  Assignability.  Buyer may not assign this Agreement without the prior written approval of Seller, which approval may be withheld for any reason or for no reason at all. Seller may freely assign this Agreement and its rights and obligations hereunder without the Buyer's prior consent. Seller shall notify Buyer in writing in the event of such an assignment.

B.  Time is of the Essence.  Except as otherwise provided herein, time shall be of the essence with respect to each provision of this Agreement, which requires performance by either Seller or Buyer within a specified time period or upon a specified date.

C.  Modification.  This Agreement constitutes the entire understanding between Seller and Buyer, and may not be modified, changed or amended except by written agreement executed by both Seller and Buyer. Should any part, term, sentence, clause, or provision of this Agreement be declared invalid or unenforceable, such invalidity or unenforceability shall not affect the remainder of this Agreement.

D.  Notices.  All notices, requests and other communications under this Contract shall be in writing and sent by U.S. registered or certified mail, postage prepaid and return receipt requested, or overnight courier service, or via facsimile transmission (with confirmation sent via overnight delivery service) addressed or telefaxed to the parties at the addresses and fax numbers provided on the first page of this Contract, or as may hereafter be designated by either party to the other in writing. Delivery of all documents called for under this Contract to either parties' attorney shall be deemed delivery to that party. Notice shall be deemed received three (3) days after mailing or one (1) day after delivery to an overnight courier service, or on that date upon which a facsimile transmission is received by the party to whom it is addressed, provided confirmation of delivery is sent as is hereinabove provided.

E.  Attorney's Fees.  In the event of any litigation arising out of this Agreement, regardless of whether such litigation is brought by or against Seller, the prevailing party shall be entitled to recover all costs incurred including its reasonable attorneys' fees at all trial and appellate court levels. The venue of any such litigation shall be in St. Lucie County, Florida.

F.  Recording.  Buyer agrees not to record this Agreement or any notice of memorandum hereof in the Public Records of St. Lucie County, Florida, or in any other public records. Any such recording by Buyer or anyone acting by, through or under Buyer shall constitute a default by Buyer of this Agreement entitling Seller to invoke the default provisions hereof.

G.  Rights Prior to Conveyance.  Buyer acknowledges that Buyer acquires no right, title, interest or lien rights in the Property prior to the conveyance of the title to the Property and Buyer agrees not to file a Lis Pendens or Claim of Lien concerning any dispute with Seller relative to the subject matter of this Agreement.

H.  Loss or Damage.  If a casualty occurs to the Property prior to closing wherein in Seller's judgment the Property sustains damage at a value less than twenty-five percent (25%) of the Purchase Price of the Property in damages, Seller shall rebuild the improvements to the Property as soon as reasonably possible, in which event this Agreement shall be in full force and effect, and the Completion Date herein set forth shall be extended for the amount of time lost by such casualty, as Seller may determine in Seller's discretion.

If a casualty occurs to the Property prior to closing wherein in Seller's judgment the Property sustains damage at a value greater than twenty-five percent (25%) of the Purchase Price of the Property, then Seller May, at its sole option:

(a)  cancel this Agreement and return all monies paid without interest to Buyer (unless Buyer's deposit or a portion thereof has been held in an interest bearing trust account in which event Buyer shall receive such

Buyer(s) Initials: _____                    6

Skora000011

interest as has accr.......J), in which event this Agreement shall become void and of no effect; or

(b)   rebuild the improvements to the Property as soon as reasonably possible, in which event this Agreement shall be in full force and effect, and the Completion Date herein set forth shall be extended for the amount of time lost by such casualty, as Seller may determine in Seller's discretion.

I.      **Acceptance of Deed.**  The acceptance of a deed by Buyer and the closing of the transaction shall be Buyer's acknowledgment of the full performance by Seller of all of its agreements, obligations and responsibilities under this Agreement, other than its obligation to correct those items stated on the Inspection Statement, and no performance of any agreements, obligations or representations of Seller shall survive the closing of this transaction except as specifically stated to the contrary in a writing signed by Seller and the warranties contained in the deed and provided by law.  All warranties, covenants and acknowledgments by Buyer shall survive the closing.

J.      **Number and Gender.**  All pronouns and variations thereof shall be construed so as to refer to the masculine, feminine, neuter, singular or plural form thereof, as the identity of the person or persons, or the situation may require.

K.      **Headings.**  The headings of the various paragraphs of this Agreement are for convenience and reference only and in no way define, limit, affect or describe the scope or intent of the paragraph.

L.      **No Reliance on Representations.**  Buyer represents that Buyer has not relied upon any statement, verbal or written, published by or under the authority of Seller in any advertising and promotional matter including, but not limited to, brochures, newspapers, radio or television advertisements, but has based Buyer's decision to purchase on personal investigation, observation and the materials provided herewith.  Changes or amendments to the Home, including but not limited to the Floor Plans and Specifications, equipment and the legal description of the Lot, may be made from time to time which do not materially affect the rights of Buyer or the value of the Property, without the approval of Buyer.  Such changes or amendments which do not materially affect the rights and liabilities of the parties under this Agreement shall not be a cause or reason for termination or rescission of this Agreement by any party.

M.      **No Interference.**  Buyer agrees that Buyer shall not restrict, interrupt, harass, or in any manner interfere with the improvement of the Property, except as specifically otherwise provided herein.  So doing shall constitute, on the part of Buyer, a breach of this Agreement and a failure to perform, and Seller shall be entitled to the remedies set forth herein in the event of a default on the part of Buyer.

N.      **Subordination.**  This Agreement is subordinate and subject to any mortgage Seller may obtain, but Seller shall cause such mortgage or mortgages to be satisfied or released as to the Property prior to or simultaneously with the closing of this transaction unless Buyer is to assume same.  The provisions hereof shall be self-operative. Notwithstanding the preceding sentence, Buyer agrees upon request of Seller to execute any documents of subordination as reasonably requested by Seller or any permitted mortgage lender.

O.      **Limitation of Warranties.**  Buyer acknowledges that at the time of execution of this Agreement, Seller has no reason to know of any particular purpose Buyer has in purchasing the Property and items of personal property located therein, if any, other than normal residential use. Buyer understands that Seller makes no warranties, express or implied with respect to fitness, merchantability, habitability, intended use, workmanship, construction or physical condition of the Property or Residence, any fixtures or items of personal property sold pursuant to this Agreement or any other real or personal property whatsoever conveyed hereby, and that at closing Seller shall provide Buyer with only those warranties that are described in Paragraph  3.D. hereof (the "Sole Warranty").

THE SOLE WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED, OR IMPLIED.   EXCEPT FOR THE SOLE WARRANTY, SELLER DISCLAIMS ANY AND ALL IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS AS TO THE PROPERTY AND ALL FIXTURES OR ITEMS OF PERSONAL PROPERTY SOLD PURSUANT TO THIS AGREEMENT OR ANY OTHER REAL OR PERSONAL PROPERTY WHATSOEVER CONVEYED HEREBY, WHETHER ARISING FROM CUSTOM, USAGE OR TRADE, COURSE OR DEALING, CASE LAW OR OTHERWISE.

P.      **Radon Gas.**  Florida Statute 404.056(8), effective January 1, 1989, requires the inclusion of the following language into this Agreement:

"Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida.  Additional information regard radon and radon testing may be obtained from your County public health unit."

Q.      **Effective Date.**  The "Effective Date" of this Agreement shall be the date when the last one of Seller and Buyer has signed this Agreement.

R.      **ADDENDA AND EXHIBITS.**  Buyer and Seller acknowledge that the Addenda and Exhibits referenced below

**Buyer(s) Initials:** _AU_, _JB_                7

Skora000012

are attached hereto ⌐ ⌐ made part of this Agreement, unless othe....se indicated:

    (i)     Options/Extras Addendum to the Purchase and Sale Agreement
    (ii)    Financing Contingency Addendum (if applicable)
    (iii)   Business Arrangement Disclosure (if applicable)
    (iv)    Closing Cost Reimbursement Addendum (if applicable)

S.    Construction Industry Recovery Fund Notice Under Chapter 489, Florida Statutes.    Notice to Buyer regarding construction industry recovery fund, pursuant to Chapter 489, Florida Statutes. Payment may be available from the construction industries recovery fund if you lose money on a project performed under contract, where the loss results from specified violations of Florida law by a state-licensed contractor. For information about the recovery fund and filing a claim, contact the Florida Construction Industry Licensing Board at the following telephone number and address: Florida Construction Industry Licensing Board, 7960 Arlington Expressway, Suite 300, Jacksonville, Florida 32211-7467; Telephone 904-489-1425.

T.    Energy Rating.    Pursuant to Florida Statutes Section 553.996, Buyer may request that Seller cause a State Certified Energy Rater to perform an energy efficiency rating on the Home being purchased.  Buyer hereby releases Seller from any responsibility or liability for the accuracy or level of the rating and Buyer understands and agrees that this Agreement is not contingent upon Buyer approving the rating, that the rating is solely for Buyer's own information and that Buyer will pay the total cost of the rating. Buyer hereby acknowledges the receipt of the Department of Community Affairs brochure regarding the Florida Energy Efficiency Rating System.

U.    Counterparts and Telefaxed Signatures   This Agreement shall be validly executed when signed in counterparts.  The effective time of the Agreement is the date and time when the last of the parties to sign executes this Agreement.  Signatures may be given via telefax transmission and shall be deemed given as of the date and time of the transmission of the Agreement by telefax to the other party.

V.    Notice.    State law requires that the following statement be disclosed to purchasers of residential homes:

THE BUYER OF A ONE-FAMILY OR TWO-FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10% OF THE PURCHASE PRICE) DEPOSITED IN AN ESCROW ACCOUNT. THIS RIGHT MAY BE WAIVED, IN WRITING, BY BUYER.

WAIVER:   **Buyer's Initials** ( ~~ ) ( ~~ )
I/We hereby waive my/our rights under Section 501.1375 of the Florida Statutes to have all deposit funds, up to 10% of the Total Purchase Price, deposited into an escrow account.

W.    Seller's Acquisition and Replatting of the Development.    Seller hereby discloses to Buyer and Buyer acknowledges that as of the effective date of this Contract Seller may not yet own the Development; however the Development is subject to a purchase agreement under which Seller is the contract vendee with the fee simple owner of said Development. Buyer further acknowledges and agrees that it is a condition precedent to Seller's obligation to close hereunder that: (i) Seller acquire fee simple title to the Development, and (ii) Seller causes to be approved and recorded in the Public Records of St. Lucie County, Florida.  If Seller is unable to obtain fee simple title to the Development or replat the Development as herein provided for any reason, Seller shall so notify Buyer in writing, whereupon Buyer's sole remedy shall be to receive back its deposit (with accrued interest, if any) whereupon this Contract shall be cancelled and neither Seller nor Buyer shall have any further obligations hereunder.  Upon completion of such available for Buyer.

X.    Special Assessment District.  Buyer acknowledges that it is the Seller's intention to cause to be created a Special Assessment District ("SAD" or "District") the boundaries of which are intended to include the Property and other portions of the East Lake Village P.U.D.  The SAD shall be established and existing pursuant to Chapter 166, Florida Statutes.  The SAD shall be established to finance, fund, plan, establish, acquire, construct or reconstruct, enlarge or expand, equip, operate and maintain certain community infrastructure systems, facilities and services for storm water management and drainage, a sewage collection system, landscaping sound buffers, and other such systems, facilities and services as are allowed by Chapter 166, Florida Statutes ("District Improvements"). Buyer agrees and acknowledges that  the City of Port St. Lucie ("City") may impose and levy  special taxes or assessments on the Property and Buyer consents to any such assessment. These taxes and assessments pay the portion of the debt, operation, and maintenance costs of certain public facilities and services of the District and are set annually by the City. These annual non-ad valorem assessments may be reflected as a line item on the Buyer's annual County Tax Collector's Real Property Tax Statement and collected by the County Tax Collector in the same manner as all other taxes and assessments reflected therein. THESE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND OTHER LOCAL GOVERNMENT TAXES AND ASSESSMENTS AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED BY LAW.  The annual non-ad valorem assessments on the Property may fluctuate from year to year and, in fact be increased or decreased due to a number of reasons, including without limitation, increased costs of operation or maintenance of the City.

**THE CITY MAY IMPOSE AND LEVY TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY.   THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION, AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT AND ARE SET ANNUALLY BY THE CITY.  THE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY LAW.**

**Buyer(s) Initials:** ~~ / ~~                    8

Skora000013

Y.    Statement of Corporate Entity.  Seller as defined on the front preprinted page of this Contract is a Florida Limited Liability Company which owns or intends to own the real property being purchased and sold according to the terms of this Contract.  Purchaser agrees that Purchaser is dealing only with Seller in connection with this Contract and the purchase of the Home, notwithstanding any advertising (newspaper, radio, television, internet or otherwise), billboards, signs, promotional materials or other items produced, displayed or published by any of Seller's affiliates, and that Purchaser has dealt only with Seller and not with any of Seller's affiliates in connection with this Contract or the purchase of the Home.  In that regard, PURCHASER ACKNOWLEDGES AND AGREES THAT IN ANY CLAIM, DISPUTE AND/OR CONTROVERSY BASED UPON, ARISING OUT OF OR IN CONNECTION WITH, OR IN ANY WAY RELATING TO:  (A) THIS CONTRACT OR ANY DOCUMENT EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS CONTRACT, (B) THE TRANSACTION CONTEMPLATED BY THIS CONTRACT, (C) THE HOME, ITS DESIGN AND/OR THE CONSTRUCTION THEREOF, (D) ANY COURSE OF CONDUCT, COURSE OF DEALING, AND/OR STATEMENTS (VERBAL OR WRITTEN) OF THE PARTIES TO THE DISPUTE, AND/OR (E) ANY ACTIONS AND/OR INACTIONS OF THE PARTIES TO THE DISPUTE, PURCHASER'S REMEDY(IES), IF ANY, SHALL ONLY BE SOUGHT FROM SELLER AND NOT FROM ANY OF SELLER'S PARTNERS, OWNERS, AFFILIATES, EMPLOYEES AND/OR AGENTS.  PURCHASER HEREBY AGREES TO INDEMNIFY AND HOLD ALL OF SUCH PARTNERS, AFFILIATES, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY AND ALL SUCH CLAIMS AND DISPUTES.  THE FOREGOING SHALL APPLY TO ALL DISPUTES WHETHER BASED IN CONTRACT, TORT, NEGLIGENCE, STATUTE OR OTHERWISE, AND REGARDLESS OF THE NATURE OF THE INJURY ALLEGED (INCLUDING PROPERTY DAMAGE, PERSONAL INJURY OR DEATH), AND EVEN IF THE ASSERTED CLAIM IS BASED UPON A THEORY NOT RECOGNIZED AT THE TIME OF EXECUTION OF THIS CONTRACT.  The provisions of this paragraph shall survive closing and any termination of this Contract prior to closing

IN WITNESS WHEREOF, this Agreement has been executed by the parties on the respective dates set forth below.  This Agreement shall become effective on the date it is executed by the later of Seller or Buyer.

SELLER:                                                                                    BUYER(S):

Homes of East Lake Village, LLC, a Florida
Limited Liability Company

                                                                                                 Signature
                                                                                                 Print Name  Gregory Skora

BY:
Print Name:  RICHARD F. ARANA                                    Signature
Title:                                                                                       Print Name  Danielle Imbriale
Dated:   4/3/04                                                                    Dated:   4-3-04


[CORPORATE SEAL]


Buyer(s) Initials: _____ / _____                          9

## FINANCING CONTINGENCY ADDENDUM

THIS FINANCING CONTINGENCY ADDENDUM ("Addendum") is attached to and made a part of that certain Purchase and Sale Agreement ("AGREEMENT") of even date herewith by and between Homes of East Lake Village, LLC., a Florida limited liability company ("SELLER") and _____, ("BUYER"), under which Buyer agrees to buy and Seller agrees to sell that certain Property more particularly described in said AGREEMENT ("PROPERTY"). The Agreement and this Addendum are sometimes collectively hereinafter referred to as the "Contract".

1.    In the event of any conflict between the terms and conditions of this Addendum and the terms and conditions of the Agreement, the terms and conditions of this Addendum shall control.

2.    Buyer hereby advises Seller that Buyer intends to pay for a portion of the total purchase price for the Property, pursuant to the Contract, by obtaining mortgage financing ("LOAN") in a principal amount of not less than $ _1/60,010_ from Seller's Designated Lender **WELLS FARGO HOME MORTGAGE**, ("LENDER") at interest rates, points and costs prevailing at the time of closing. In connection therewith, Buyer agrees to:  (a) make immediate application for the Loan (within five [5] days), (b) use Buyer's best efforts to obtain the Loan in good faith, (c) promptly provide (and, if necessary, execute) any and all documents and information required by Lender, (d) pay all costs, charges and expenses of whatsoever nature or kind in connection with the Loan, (e) cause Buyer's spouse, if Buyer is married, to execute the mortgage and any and all documents as may be required by the Lender, (f) not to incur any indebtedness subsequent to the date hereof which might jeopardize approval of the Loan or disqualify Buyer from a previously granted approval, and (g) promptly and fully comply with all requests of the Lender to obtain and/or close the Loan.

3.    Lender's mortgage and/or note may contain provisions for adjustments in the interest rate and/or monthly payment amount during the term of the mortgage (sometimes called the "variable interest rates", "renegotiable interest rate", "call options", etc.). Buyer acknowledges that neither the interest rate nor the method of calculating or adjusting same is in Seller's control.

4.    If the Buyer, after a good faith effort in strict compliance with Lender's instructions, including, but not limited to, complying with all of Buyer's obligations in a timely fashion as provided in paragraph 2 hereof, fails to obtain a firm written loan commitment evidencing Buyer's final Loan Approval within **twenty one (21) days** from the effective date of this Contract (the "Approved Deadline Date"), then Seller shall have the option in its sole and unfettered discretion, to either: (i) allow Buyer additional time to obtain final Loan approval during which additional time Buyer shall continue to diligently and in good faith attempt to obtain the Loan (at the end of which time Seller shall, again, have the options provided for herein in the event Buyer is unable to obtain approval for the Loan within any such additional time), or (ii) terminate the Contract and refund the Buyer's deposit whereupon Seller and Buyer will be released and relieved of all further obligations in connection with the Contract and the transaction contemplated by the Contract, and Buyer shall have no further rights with respect to the Property or under the Contract.  Buyer must promptly notify Seller in writing within five (5) days after the Approved Deadline Date of Buyer's ability or inability to have timely obtained the approvals set forth herein.  Buyer's failure to so notify Seller shall constitute Buyer's waiver of this financing contingency and Buyer shall thereafter not be entitled to cancel the Contract and receive back his deposit as a result of not qualifying for a Loan, but rather be obligated to proceed to closing on an all cash basis.

5.    Buyer agrees to deliver to Seller immediately upon receipt thereof any of the approvals called for in paragraph 4 ("Approvals") for the Loan from the Lender (whether or not such Approval has any conditions).  **Notwithstanding anything contained herein to the contrary, however, once the Approvals from a Lender is offered to Buyer, the deposit monies paid by Buyer shall no longer be refundable unless the Seller defaults in its obligations under the Contract, notwithstanding that Buyer may later be disqualified by the Lender, or Buyer may fail to satisfy any condition set forth in the Approvals.**  In the event Buyer receives the Approvals of the application for the Loan, it will be Buyer's responsibility to satisfy the enumerated conditions prior to closing under the Contract.  If the conditions are not satisfied within such period, Buyer shall not be entitled to cancel the Contract and receive back his deposit, but rather this transaction shall be closed on an "all cash" basis.

6.    In the event that Buyer complies with all of the terms, conditions and requirements set forth herein, the Seller will credit to Buyer at closing the amount assessed to Buyer for documentary stamps affixed to the Deed and the related charges for the Owner's Title Policy.  Notwithstanding the foregoing, said Closing Fee is based upon the assumption that Florida documentary stamps on the deed will be, at closing, at the rate of $.70 for each $100.00 of the Total Purchase Price and that no surtax is applicable to the subject transaction.  In the event of changes in the foregoing, the imposition of any surtax or any new governmental tax or charges on deed, appropriate additional charges (in the case of increases) or credit (in the case of decreases) shall be paid by or credited to Buyer at closing.

BUYER RECOGNIZES, ACKNOWLEDGES AND AGREES THAT ALL THE DATES AND TIME PERIODS SET FORTH HEREIN ARE STRICTLY OF THE ESSENCE AND A MATERIAL CONSIDERATION TO SELLER TO MAKE THE AGREEMENT SUBJECT TO BUYER OBTAINING A LOAN PURSUANT TO THE PROVISIONS OF THIS ADDENDUM.  ACCORDINGLY, THE FAILURE OF BUYER TO TIMELY PERFORM ANY OF BUYER'S OBLIGATIONS CONTAINED IN THIS ADDENDUM SHALL BE CONSIDERED A DEFAULT BY BUYER IN THE CONTRACT AND SELLER SHALL HAVE ALL THE RIGHTS AND REMEDIES OF SELLER WITH RESPECT TO BUYER'S DEFAULT INCLUDING, BUT NOT LIMITED TO, RETAINING ALL DEPOSITS AND OTHER MONIES PAID BY BUYER IN CONNECTION WITH THE CONTRACT.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this _3_ day of _April_, 2004.

BUYER: _Danielle Imbriale_       SELLER:

Homes of East Lake Village, LLC., a Florida limited liability company

BY: _____

Dated: _4/3/04_       Print Name: _Michael Aranda_
                      Title: _____
Dated: _4/3/04_       Date: _4/3/04_

**CREDIT CHECK CONSENT**
I/We, the undersigned Buyer(s), direct Wells Fargo Home Mortgage, Inc., to obtain a copy of my/our credit report(s).  This consent shall automatically expire thirty (30) days from the date of my signature below.

Buyer (1):
Signature: _Danielle Imbriale_              Buyer (2): Signature: _____
Print Name: _Danielle Imbriale_            Print Name: _Gregory Skora_
Social Security No.: _593 - 32 - 0197_     Social Security No.: _029 - 60 - 8266_

**NOTE:  This form is to be used to obtain consent from a husband and wife when ordering a joint credit report.  If individual credit reports are being ordered, use a separate form for each Buyer.**

Skora000015