# Exhibit 1

# Index of Objections

| Objector(s) | Objection | Page No. and FN |
|---|---|---|
| Berretta, James | "I am typing this letter in objection to part of the global settlement that I feel very strongly about. My objection is [to] the distribution percentage of claims funds which is 95% to remediation and only 5% to personal injury..."<br>"[W]ith the time I spent going from doctor to doctor, the financial burden and especially the lower quality of life experienced, I without a doubt object to a 5% personal injury allocation." | pp.8-10 & n.24 |
| Bolden, Thomas A. and Smith, Monica | "We would submit to the Court that it would be appropriate to include pre-remediation repair expenses (such as HVAC, Appliances etc) in the Other Loss Fund (Section 4.7.4.) so that they could submit copies of their receipts and be properly compensated for the losses they have incurred as a result of the drywall." (¶5)<br>"Section 4.7 allows property owners and tenants to receive its pro rate share of the other loss fund as determined by certain procedures. This section allows for the recovery of pre-remediation alternative living expenses, however it excludes personal property damage. It is our belief that the personal property damage was meant to cover the losses of peoples coffee pots, televisions, computers and other small appliances, which individually would not amount to a significant sum of money. In this case, someone's air conditioning unit is a necessity in order to occupy the home, especially in the southern summer months." (¶6)<br>"An air condition unit and its components should be treated in much the same way alternative living expenses since if the unit was not fixed, the Panneton's would have had to find another place to live. However, given their duty to mitigate their damages, they chose, what they believed to be the more inexpensive solution and repair their air conditioning unit instead." (¶7)<br>"Claimants would submit to the Court that it would be simple to include a section on the Other Loss claim form to include losses such as the one stated above and that claimants should not be punished and not made whole because they chose to repair their unit instead of relocating." (¶8) | pp.8-10 & n.22 |
| | "Second, Claimants object in that the warranty period should be longer than one year. The one year starts to run as of substantial completion to the home, however, punch list items have taken longer to finish and by the time they are complete, the warranty period has already been in affect for several months. Claimants ask that either the warranty period be extended or that warranty provision does not start to run until the punch list items for the house are complete." (¶9) | pp.9-10 & n.26 |

| Objector(s) | Objection | Page No. and FN |
|---|---|---|
| | "Third, claimants object to the arbitrary decision to pay additional move-out costs when a home is larger than 3500 sq.ft. Section 4.3.1.1 of Settlement Agreement dictates that a home under 3500 sq.ft. is paid a sum of $8.50 per 'under air' square footage while a home greater than 3500 sq.ft. is paid $10.00 per 'under air' square footage. Claimant suggest to this court that all participants in this settlement should be paid $10.00 per 'under air' square foot." (¶10) | pp.8-10 & n.22 |
| Friedlander, Gregory | "Comes now Gregory Friedlander, pro se, and files this limited objection based on fairness alleging there are interpretations, not changes, required in fairness which should be made to the settlement which cause no harm, no additional work, no additional cost and no significant modification of other provisions in the agreement. ... The interpretation or change is to allow the self remediation payment to go (1) First to removal of the Sheetrock and affected materials and (2) then the balance under a contractor's estimate to a bank to pay off the debt on the properties in question or to the owner." (¶¶1, 1(1)) | pp. 9-10 & n.27 |
| Haseltine, James E. and Joanne E. | "We will get nothing from the Taishan Gypsum Company ... So it is conceivable that, if the Banner settlement is accepted, $17,100 may be all we get in return for well over $100,000 in remedial expenses."<br>"Recently, Knauf Gips, KG, has come to a preliminary settlement with the Court. Thus, some plaintiffs covered by the Banner settlement will be compensated by both settlement agreements. However, plaintiffs in our scenario are stuck with only a single source for recovery. That being said we are requesting that we are given consideration for our limited source of recovery and be allotted a sum commensurate with out remediation costs which is roughly $121,000.00. Absent additional recovery in the Banner settlement my wife and I will be stuck in a situation where we will never be compensated for our great loss..."<br>"At this point we state for the record that we oppose the Banner settlement to the extent that the sums available are too low. However, given the course of this litigation and limited probability of additional recover [sic] it appears we have no other choice but to accept the Banner terms and ask that we are given special consideration for additional recovery as mentioned above." | pp.8-10 & n.23 |

3

| Objector(s) | Objection | Page No. and FN |
|---|---|---|
| Kinler, Gerard | "The Kinlers' concern in [sic] that by just taking into account the 'under air' square footage of their home will not properly compensate them for all the moving expenses they experienced in moving the family back to Prairieville, Louisiana.  In addition to having moving expenses, Mr. Kinler, a school teacher, had to secure a new job as he could not live in Louisiana and teach in Florida.  As a result of the cuts in their household income, the Kinlers eventually lost their dream home to foreclosure.  In addition to losing their home, as a result of having to move back to Louisiana, Mr. Kinler lost his retirement that he had been accumulating since 2005 because he did not have enough time in the Florida School System to be vested."<br>"The Kinlers would ask this Court to allow claimants with extraordinary moving expenses or other expenses related to drywall, to apply the Other Loss Claim seciton of the settlement for additional compensation under section 4.7 of the settlement." (¶¶ 6-7) | pp.8-10 & n.22 |
| | "In addition, the Kinlers object to having to decide to stay in or opt out with-out fully being informed of what they would receive for their lost equity in their home.  The home was purchased for $350,000, however prior to the foreclosure, the Kinlers upgraded many aspects of their home including landscaping, private drives, and crown molding, etc.  What time frame is going to be considered for the value of the home to determine equity?  As more and more Florida homes were found to have drywall, including entire subdivisions like the Kinlers, the home values plummeted." (¶ 8) | pp.10-11 & n.33 |

| Objector(s) | Objection | Page No. and FN |
|---|---|---|
| Panneton, Ovila C. and Ruth | "Claimant has incurred an estimated $5488.00 (Exhibit A) just in repairs to his air conditioning unit in his home. If this expense is taken from his Lump Sum Payment, claimant may not be fully compensated for his expenses related to alternative living expenses and moving costs. The lump sum payment would also go toward compensating Mr. and Mrs. Panneton for their destroyed electronics. Mr. and Mrs. Panneton have replaced their condenser coils seven times as well as replace the outside compressor and air handlers." (¶5)<br>"We would submit to the Court that it would be appropriate to include these types of expenses in the Other Loss Fund (Section 4.7.4) so that they could submit copies of their receipts and be properly compensated for the losses they have incurred as a result of the drywall." (¶6)<br>"Section 4.7 allows property owners and tenants to receive its pro rate share of the other loss fund as determined by certain procedures. This section allows for the recovery of pre-remediation alternative living expenses, however it excludes personal property damage. It is our belief that the personal property damage was meant to cover the losses of peoples coffee pots, televisions, computers and other small appliances, which individually would not amount to a significant sum of money. In this case, someone's air conditioning unit is a necessity in order to occupy the home, especially in the southern summer months." (¶7)<br>"An air condition unit and its components should be treated in much the same way alternative living expenses since if the unit is not fixed, the Panneton's would have had to find another place to live. However, given their duty to mitigate their damages, they chose, what they believed to be the more inexpensive solution and repair their air conditioning unit instead." (¶8)<br>"Claimants would submit to the Court that it would be simple to include a section on the Other Loss claim form to include losses such as the one state above and that claimants such as the Pannetons should not be punished and not made whole because they chose to repair their unit instead of relocating." (¶10) | pp.8-10 & n.22 |
| Sekellick, Therese | "There were three tests performed in our building in 2009 and 2011 I was told the result for my condo were 'inconclusive. Then after Jan 10 the remediation committee did a new inspection and decided I do not have it. Two out of three tests were inconclusive. But now I am told I will not be compensated for anything since I don't have CDW. How can I be assured that if my A/C broke it is not because of the CDW." (¶1) | pp.9-10 & n.25 |

| Objector(s) | Objection | Page No. and FN |
|---|---|---|
|  | "I bought my condo as an investment to be rented.  (I have an exchange 1031 drawn out for the settlement).  I bought it for $347,000 now it is assessed for $67,000. I rented it the first year from May 2008 to May 2009.  Then we found out about the CDW and was unable also afraid to rent it.  (After finding out about the CDW, the previous renter, called to say he will seek legal advice since his son was visiting on weekend).  I have a lot of lost rent that will not be compensated by the resolution."  (¶2) | pp.9-10 & n.25 |
|  | "The Banner settlement assign [sic] the defendants benefits to the Knauf Defendants and the proceeds will be deposited into the Remediation Fund.  Since I am not getting any of the Remediation Fund.  Why is it that I still have to pay legal fees for Banner.  I was told by the association in our building that I still have to pay my share of the legal fees even if I opt out."  (¶3) | pp.11-12 & n.38 |