ELECTRONICALLY FILED
6/25/2009 10:04 AM
CV-2009-901153.00

IN THE CIRCUIT COURT OF MOBILE COUNTY,

| | |
|---|---|
| DIGES E. LITTLE, et al. | * |
| Plaintiffs, | * |
| vs. | * Civil Action Case Number: |
| | * |
| THE MITCHELL COMPANY, INC., et al. | * CV-2009-901153 |
| Defendants. | * |
| | * |

## FIRST AMENDED COMPLAINT

The Plaintiffs in the above styled action hereby amend the Original Complaint filed on or about June 25, 2009 for purposes of adding additional party Plaintiffs to the action. The added Plaintiffs are similarly situated, and share common claims and circumstances such that it would serve the interests of judicial economy to litigate and resolve the issues raised in a single action. All of the defendants are common to all plaintiffs. All claims arise from the construction, sale and use of the Plaintiffs' homes. All Plaintiffs purchased or resided in homes in the same subdivision, and purchased the homes within a two and one half year time frame. All of the homes were built, sold, serviced and warranted by the same parties.

None of the Defendants have filed responsive pleadings, and this matter has not been set for trial. No party will be prejudiced by the amendment. Upon amendment, the style and body of the Complaint will now read as follows:

1

# EXHIBIT A

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

**DIGES E. LITTLE,** individually and as mother and next friend of **DESIREE L. PERRY, DEVONTE D. WILLIAMS** and **DORYAN M. WILLIAMS,** minors;

       *

       *

**FELICIA A. ALLBRITTON,** individually and as mother and next friend of **EDWARD J. STEVENSON,** a minor, and **BETTY ALLBRITTON,** individually;

       *

       * **Civil Action Case Number:**

**JEROME LELAND,** individually, and **AUDRA WASHINGTON,** individually and as mother and next friend of **JERMESIA WASHINGTON, TIMOTHY WASHINGTON, LEKENNO WASHINGTON** and **JALEXIS WASHINGTON,** minors;

       *

        **CV-2009-901153**

       *

       *

**GENNIES M. HILLARY,** individually and as mother and next friend of **CORINTHIA HILLERY,** a minor;

       *

       *

**DEBORAH R. PORCHER,** individually and as mother and next friend of **KHRYSHAUNDA S. LETT** and **CHRISTOPHER D. LETT,** minors; and **TIFFANY K. PORCHER,** individually and as mother and next friend of **DELANTONIO PORCHER,** a minor;

       *

       *

       *

**CHARLES R. PUGH,** individually, **JESSICA M. PUGH,** individually and as mother and next friend of **JAKENDRICK D. HOLMES,** a minor;

       *

       *

**LETITIA G. WASHINGTON,** individually and as mother and next friend of **MALASIA K. WASHINGTON, TORIANNA C. WASHINGTON** and **MAKAYLA S. WASHINGTON,** minors;

       *

       *

    **Plaintiffs,**

**vs.**

       *

**THE MITCHELL COMPANY, INC.;  THE HOUSING AUTHORITY OF THE CITY OF PRICHARD, ALABAMA;  THE PRICHARD HOUSING BOARD; INTERIOR & EXTERIOR BUILDING SUPPLY COMPANY, L.P.;  RIGHTWAY DRYWALL, INC; SMOKEY MOUNTAIN MATERIALS, INC.;  JUST-RIGHT SUPPLY COMPANY, INC.;  ESTES HEATING & AIR, INC.;** Fictitious Defendants A; B; C; D and/or E, whether singular or plural, being those persons, firms, or

       *

       *

       *

       *

2

other legal entities that contracted to construct, sell or
lease a residential home to the Plaintiffs; **Fictitious**
**Defendants F; G; H; I and/or J,** whether singular or
plural, being those persons, firms, or other legal entities
that manufactured, formulated, designed and/or
processed distributed, delivered, imported, supplied,
inspected, tested, marketed, sold, warranted, advertised,
used, installed, serviced, applied and/or failed to warn
concerning the defective drywall at issue and/or the
inadequate and defective HVAC system at issue;
**Fictitious Defendants K; L; M; N** and/or **O,** whether
singular or plural, being those persons, firms, or other
legal entities that misrepresented the condition, content
and fitness of the defective drywall at issue and/or the
defective HVAC system at issue, or who acted or
conspired to act to suppress, misrepresent, conceal,
cover up and hide the defects and prevent discovery;
**Defendants P; Q; R; S** and/or **T,** whether singular or
plural, being those persons, firms, or other legal entities
that breached the sales contract and/or violated
Alabama's Deceptive Trade Practices Act; all whose true
and correct identities are unknown to the Plaintiffs at this
time, but will be added by amendment, jointly and
individually when ascertained,

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

**Defendants.**

## COMPLAINT

The Plaintiffs in the above styled action allege the following against the
Defendants, including all Fictitious Defendants, separately and severally:

1.     The Plaintiffs bring this action seeking actual damages, equitable relief
(including restitution and disgorgement of profits), and all other relief available under the
laws of the State of Alabama.

2.     The claims set forth below arise out of the construction and sale of the
Plaintiffs' residential homes, and the manufacture, formulation, design, processing,
distribution, delivery, importation, supplying, inspection, testing, marketing, sale,

3

warranting, advertising, use, installation, application, servicing and or failure to warn concerning Chinese drywall and/or the HVAC system which the Defendants knew or should have known was defective and fundamentally unsuitable for its intended purpose.

3.     As a direct and proximate result of the Defendants' conduct, both individually and in concert or conspiracy with one another, defective, unfit and unsuitable Chinese drywall was installed in the Plaintiffs' homes, and has and continues to injure and damage the Plaintiffs and their property.   Moreover, an inadequate, defective and miss-sized HVAC system was installed which exacerbated the drywall condition, and otherwise damaged the Plaintiffs herein.

## PARTIES, JURISDICTION AND VENUE

4.     The Plaintiffs in the above Action are over 19 years of age unless otherwise identified as a minor suing through a designated representative, and are residents of the State of Alabama.  Between 2006 and the present, they all purchased or lived in homes purchased from Defendant THE HOUSING AUTHORITY OF THE CITY OF PRICHARD, ALABAMA.  The homes are all located in the HOPE IV Family Sales Subdivision, sometimes referred to as the "Bessemer Subdivision", in Mobile County, Alabama.  The Plaintiffs and the homes at issue are specifically identified as follows:

a.     DIGES E. LITTLE, individually and as mother and next friend of DESIREE L. PERRY, DEVONTE D. WILLIAMS and DORYAN M. WILLIAMS, minors, purchased and lived in the home located on lot # 28.  The street address is 816 McCrory Avenue, Prichard, Alabama.  The purchase occurred on or about July 6, 2007.

4

b.   FELICIA A. ALLBRITTON, individually and as mother and next friend of EDWARD J. STEVENSON, a minor, and BETTY ALLBRITTON, individually, purchased and lived in the home located on lot # 5. The street address is 701 Hinson Avenue, Prichard, Alabama. The purchase occurred on or about February 29, 2008.

c.   JEROME LELAND, individually, and AUDRA WASHINGTON, individually and as mother and next friend of JERMESIA WASHINGTON, TIMOTHY WASHINGTON, LEKENNO WASHINGTON and JALEXIS WASHINGTON, minors, purchased and lived in the home located on lot # 22. The street address is 828 McCrory Avenue, Prichard, Alabama. The purchase occurred on or about March 19, 2007.

d.   GENNIES M. HILLARY, individually and as mother and next friend of CORINTHIA HILLERY, a minor, purchased and lived in the home located on lot # 35. The street address is 802 McCrory Avenue, Prichard, Alabama. The purchase occurred on or about November 2, 2007.

e.   DEBORAH R. PORCHER, individually and as mother and next friend of KHRYSHAUNDA S. LETT and CHRISTOPHER D. LETT, minors; and TIFFANY K. PORCHER, individually and as mother and next friend of DELANTONIO PORCHER, a minor, purchased and lived in the home located on lot # 11. The street address is 510 Riel Street, Prichard, Alabama.. The purchase occurred on or about April 25, 2007.

f.   CHARLES R. PUGH, individually, JESSICA M. PUGH, individually and as mother and next friend of JAKENDRICK D. HOLMES, a minor, purchased and lived in the home located on lot # 25. The street address is 822 McCrory Avenue, Prichard, Alabama. The purchase occurred on or about July 26, 2007.

g.   LETITIA G. WASHINGTON, individually and as mother and next friend of MALASIA K. WASHINGTON, TORIANNA C. WASHINGTON and MAKAYLA S. WASHINGTON, minors, purchased and lived in the home located on lot # 21. The street address is 827 McCrory Avenue, Prichard, Alabama. The purchase occurred on or about August 15, 2007.

5.   The Defendant, **THE MITCHELL COMPANY, INC.,** is an Alabama Corporation with its principle place of business in Mobile County, Alabama. The Defendant, **THE MITCHELL COMPANY, INC.,** is a construction company and has built homes and/or apartments in several states, including Alabama. The Defendant, **THE**

5

**MITCHELL COMPANY, INC.,** built the Plaintiffs' homes.

6.     The Defendant, **THE HOUSING AUTHORITY OF THE CITY OF PRICHARD, ALABAMA**, is a non-profit governmental entity which, in the regular course of its business, provides administrative services toward housing programs in and for the City of Prichard, Alabama.  This action is filed within six (6) months of the discovery and accrual of the actions set forth herein, and thus complies with the presentment of claim requirements of §11-47-23 *Ala. Code* (1975). See *Diemert v. City of Mobile*, 474 So.2d 663, 666 (Ala. 1985).

7.     The Defendant, **THE PRICHARD HOUSING BOARD**, is a non-profit governmental entity which, in the regular course of its business, provides administrative services toward housing programs in and for the City of Prichard, Alabama.  This action is filed within six (6) months of the discovery and accrual of the actions set forth herein, and thus complies with the presentment of claim requirements of §11-47-23 *Ala. Code* (1975). See *Diemert v. City of Mobile*, 474 So.2d 663, 666 (Ala. 1985).

8.     The   Defendant   **INTERIOR   &   EXTERIOR   BUILDING   SUPPLY COMPANY, L.P.** is a limited partnership with its principal place of business in Louisiana.  Defendant **INTERIOR & EXTERIOR BUILDING SUPPLY COMPANY, L.P.** is a building supply company with offices in four states, and has shipped and/or supplied building products into the State of Alabama such that it is doing business in this State.

9.     The Defendant **RIGHTWAY DRYWALL, INC.** is a corporation organized in Georgia, with its principal place of business in Georgia.  Defendant, **RIGHTWAY DRYWALL, INC.,** is a building supply company with offices in Georgia and Alabama,

6

and has shipped and/or supplied building products into the State of Alabama such that it is doing business in this State.

10.     The Defendant **SMOKEY MOUNTAIN MATERIALS, INC.** is a building supply company with offices in Knoxville, Tennessee and Pensacola, Florida, and has shipped and/or supplied building products in the State of Alabama such that it is doing business in this State.

11.     The Defendant **JUST-RIGHT SUPPLY COMPANY, INC.** is a corporation organized in Mississippi, with its principal place of business in Mississippi. Defendant **JUST-RIGHT SUPPLY COMPANY, INC.** is a building supply company with offices in Mississippi, and has shipped and/or supplied building products in the State of Alabama such that it is doing business in this State.

12.     The Defendant **ESTES HEATING & AIR, INC.** is an Alabama Corporation with its principle place of business in Mobile County, Alabama. Defendant **ESTES HEATING & AIR, INC** supplied, installed and serviced the HVAC system in the Plaintiffs' home.

13.     Fictitious Defendants A through T are the persons, firms, or other legal entities that contracted to construct, sell or lease a residential home to the Plaintiffs herein; that manufactured, formulated, designed and/or processed distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied and/or failed to warn concerning the defective drywall at issue and the inadequate HVAC system at issue; that misrepresented the condition, content and fitness of the defective drywall at issue and the HVAC system, who acted or conspired to act to suppress, misrepresent, conceal, cover up and hide the defects and

their discovery; and/or that breached the sales contract and/or violated Alabama's Deceptive Trade Practices Act; all whose true and correct identities are unknown to the Plaintiffs at this time, but will be added by amendment, jointly and individually, when ascertained, or who are presently non-US entities suspected of wrongdoing, but who are unavailable for practical and affordable service due to treaties or conventions.

14.     This Court has personal jurisdiction over Defendants because they are engaged in substantial and not insolated activity within this state.      Additionally, Plaintiff's causes of action arise from Defendants personally, or through their agents, causing injury to real and personal property within the State of Alabama and at the time of the injury, products, materials, or things manufactured, distributed and supplied by the defendants were used and consumed within the state of Alabama in the ordinary course of commerce, trade, or use.  Said products were distributed, installed and serviced by Defendants **THE MITCHELL COMPANY, INC., THE HOUSING AUTHORITY OF THE CITY OF PRICHARD, ALABAMA; THE PRICHARD HOUSING BOARD; INTERIOR & EXTERIOR BUILDING SUPPLY COMPANY, L.P., RIGHTWAY DRYWALL, INC., SMOKEY MOUNTAIN MATERIALS, INC.; JUST-RIGHT SUPPLY COMPANY, INC.** and **ESTES HEATING & AIR, INC.** in the ordinary course of commerce, trade or use and shipped into the state of Alabama.

15.     Venue and jurisdiction are proper in this Court.

## FACTS

16.     Plaintiffs are all homeowners or reside with homeowners in a subdivision commonly known as the HOPE IV Family Sales Subdivision, sometimes referred to as

8

the "Bessemer Subdivision", located in Prichard, Alabama.

17.    Between 2003 and 2008, Defendant MITCHELL COMPANY, INC (hereinafter "MITCHELL COMPANY") and/or Fictitious Defendants A through T, constructed, warranted and sold homes in this subdivision pursuant to an agreement with the City of Prichard and/or the Prichard Housing Authority.

18.    In the course of constructing these homes, Defendant MITCHELL COMPANY distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied and/or failed to warn concerning the drywall materials purchased from suppliers, including but not necessarily limited to, Defendants INTERIOR & EXTERIOR BUILDING SUPPLY COMPANY, L.P. (hereinafter "INTERIOR & EXTERIOR"), RIGHTWAY DRYWALL, INC. (hereinafter "RIGHTWAY"), SMOKEY MOUNTAIN MATERIALS, INC., (hereinafter "SMOKEY MOUNTAIN" ; JUST-RIGHT SUPPLY COMPANY, INC. (hereinafter "JUST-RIGHT"), and/or Fictitious Defendants A through T.

19.    INTERIOR & EXTERIOR, RIGHTWAY, SMOKEY MOUNTAIN, JUST-RIGHT and/or Fictitious Defendants A through T had purchased these drywall materials, directly or indirectly, from German and/or Chinese entities and/or Fictitious Defendants A through T.

20.    The drywall materials in question were manufactured in China by Defendants or by Defendants' principals.

21.    The Defendants improperly manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied, serviced and/or failed to warn

9

concerning the defective drywall materials.

22.    Said drywall materials were and are uniformly and inherently defective when used for their intended purposes. The drywall materials were made from waste material – also known as "fly ash" – collected from scrubbers at coal-fired power plants located in China, or alternatively were made with gypsum mined from one or more locations in China where the natural gypsum contained high levels of sulfur.

23.    The defective drywall materials emit a combination of sulfide gases which produce a distinctive chemical odor, and cause corrosion to copper and other metal materials such as those used in HVAC systems, electrical systems, gas fuel systems and many appliances, electronics, equipment and other items commonly located in residential dwellings.

24.    Hydrogen Sulfide ("H2S"), one of the gases emitted by the defective Chinese drywall materials, is a broad spectrum poison which affects multiple systems in the human body. It can form a complex bond with the body's enzymes which can block the binding properties of oxygen, thereby interfering with respiration.

25.    Lower level exposures, especially over an extended time, can result in irritated and itchy eyes and skin, difficulty in breathing, sore throat, persistent cough, nausea, bloody noses, runny noses, recurrent headaches, fatigue, loss of appetite, impaired memory function, sinus infection, allergic reactions and asthma attacks. Prolonged exposure has also been implicated in reproductive health issues.

26.    Additionally, Defendants manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied, serviced and/or failed to warn concerning an

10

inadequate, defective and miss-sized HVAC system in the Plaintiffs' home. As a direct and proximate result of the defective HVAC system, the off-gassing properties of the defective Chinese drywall was exacerbated and worsened. The defective HVAC system further directly and proximately caused Plaintiff's increased costs and expenses.

27. The Defendants knew of the defective nature of the Chinese drywall materials and the defective HVAC system at the time they improperly manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied, serviced and/or failed to warn concerning same. Alternatively, the Defendants should reasonably have known or discovered the defective nature of the Chinese drywall materials and HVAC system prior to its use in the Plaintiffs' home.

28. The Defendants suppressed, misrepresented, concealed, covered up and hid the defective nature of the Chinese drywall materials and HVAC system from the general public, including the Plaintiffs. The Plaintiffs could not reasonably have discovered the existence of the defect in the Chinese drywall material until December 2008 when initial press reports were issued, and in fact did not have actual notice of the said defect, and actual notice of the presence of defective Chinese drywall materials in their home, until May, 2009. Further, Plaintiffs could not reasonably have discovered the defective nature of the HVAC system until investigation of the Chinese drywall defect after May 2009.

29. As a direct and proximate result of the gas emissions from the defective Chinese drywall materials used in the construction of their home, as well as a direct and proximate result of the conduct, breaches, acts and omissions of the defendants, each

11

of the Plaintiffs has suffered the following damages:

a. Personal injuries in the form of one or more of the above identified signs, symptoms and conditions associated with exposure to the sulfide gases emitted by the defective Chinese drywall;

b. Permanent injuries, or alternatively the permanent aggravation of pre-existing conditions;

c. Pain and suffering;

d. Mental anguish;

e. Loss of enjoyment of their home;

f. Increased utility and servicing costs;

g. Past and future medical expenses; including the cost of medical monitoring;

h. Past and future lost earnings;

i. Property damage to their home;

j. Costs of extensive remedial measures, tear-out, disposal and re-construction to correct the defective drywall and affected construction

k. Property damage to the HVAC system, electrical systems, and gas fuel systems in their home;

l. Property damage to appliances, electronics, equipment and other items located in their home;

m. The diminished value of their home occasioned by the damage caused by and the stigma associated with Chinese drywall construction;

n. Loss of or impaired marketability of their home;

o. Relocation expenses and costs;

p. Cleaning expenses and costs;

q. The loss of the financial and time investment in their home;

r. The loss of funds paid in the form of loan interest, and the loss of

12

equity in their home;

s. Such severe, regular and systematic failures of the HVAC systems, electrical systems, gas fuel systems and other residential home systems/components so as to render their home unreliable, unsafe, uninhabitable and unfit for human occupation and use;

30.    Said damages were also directly and proximately caused, exacerbated and worsened by the HVAC system which was improperly manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied, and/or serviced, and which was so provided with inadequate warnings.

31.    Plaintiffs were at all times intended third party beneficiaries of the multiple contracts, agreements and trade practices between and among the various defendants and others since the clear and manifest intent of the defendants was to primarily, directly and ultimately benefit the Plaintiffs. Each of the defendants at all relevant and material times knew, appreciated and understood this fact.

32.    At all times relevant and material to the allegations contained herein, each of the defendants acted directly, or alternatively acted as the actual and/or apparent agent of one or more of the other defendants named herein, including Fictitious Defendants. The acts and omissions alleged herein were committed within the line and scope of one or more of such actual or apparent agency relationships, and/or were thereafter ratified by the principal with consequential benefit.

33.    The defendants knew or had reason to know of the defective nature of the Chinese drywall and/or the HVAC system, or alternatively discovered the defect prior to the Plaintiffs. The defendants knew or had reason to know that the Plaintiffs could not

13

and would not discover the defective nature of the Chinese drywall and/or the HVAC system, or even the existence and presence of the Chinese drywall and the defective HVAC system in their home, due to Plaintiffs lack of knowledge and understanding of the origins and composition of the materials used in the construction of the home and its interaction with the HVAC system. Defendants thereafter suppressed, concealed, hid and failed to warn and advise the Plaintiffs of the dangers and risks associated with the defective Chinese drywall and defective HVAC system until after widespread and intense national media coverage of the nature of the defect and the accompanying signs of Chinese drywall presence.

## FIRST CAUSE OF ACTION
### (Negligence / Wantonness)

34.    The Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

35.    Defendants, including Fictitious Defendants A through T, owed a duty to Plaintiffs to exercise reasonable and ordinary care in the manufacture, formulation, design, processing, distribution, delivery, importation, supplying, inspection, testing, marketing, sale, warranting, advertising, use, installation, application, servicing and/or warnings concerning the Chinese drywall and the HVAC system.

36.    Defendants negligently and/or wantonly breached their duty to Plaintiffs by formulating, inadequately testing, designing, manufacturing, marketing, advertising, selling, installing, using, applying, servicing or otherwise placing into the stream of commerce the defective Chinese drywall and HVAC system that is unsafe, unsuitable

14

and unfit for its intended purpose.       Defendants did so with the understanding, appreciation and/or knowledge that it would ultimately be installed into the homes of ordinary consumers like the Plaintiffs.  Defendants further failed to warn the Plaintiffs and others of the defective nature of the Chinese drywall and HVAC system and the risks created by its presence in a home.  Defendants further failed to promptly remove or recall the drywall and HVAC system from the marketplace or take other appropriate remedial action.

37.    Defendants knew or reasonably should have known that the Chinese drywall and/or the HVAC system was defective, unreasonably dangerous, posed health risks, would cause other building components and property to fail prematurely, was not suitable for its intended use in construction and otherwise was not as warranted and represented by the Defendants.

38.    Defendants possessed superior knowledge about the composition and defective nature of the drywall and HVAC system, and also knew or reasonably should have known that the said defect would cause physical injury or damage to Plaintiffs, damage to Plaintiffs' home and property; would require medical care; would require additional monitoring; would require repair and/or replacement of damaged property; and would otherwise inflict significant damage on the Plaintiffs and their home.

39.    As a direct and proximate result of the Defendants' negligence and/or wantonness, defective design, and/or manufacture of the drywall and HVAC system, and Defendants' sale, installation and/or use of the drywall and HVAC system, and the defendants placement of same into the stream of commerce, Plaintiffs have suffered or are substantially certain to suffer personal injuries or damages, including damage to

15

property, and have incurred, or are substantially certain to incur, the costs of testing, repairing and replacing defective Chinese drywall, HVAC system and other components, remediation of consequential and resulting property damage, personal injury, permanent injury, loss of earnings, loss of the use and enjoyment of their home, diminished value of their home, loss of the investment in their home, interest paid, pain, suffering and emotional distress, and other damages as alleged herein.

40.     Defendants' employees also engaged in this wrongful conduct with the active and knowing participation of Defendants' officers, directors or managers.

41.     Defendants' conduct also constituted wantonness in that it was so willful, wanton, reckless, or wanting in care that it constituted a conscious disregard or indifference to the health, safety and rights of Plaintiffs.

42.     As a direct and proximate result of the Defendants' negligence and/or wantonness, the Plaintiff's suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## SECOND CAUSE OF ACTION
### (Strict Products Liability)

43.     The Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

16

44.     At all relevant times, Defendants, including Fictitious Defendants A through T, were engaged in the business of designing, manufacturing, marketing, advertising, and/or selling into the stream of commerce the Chinese drywall and/or HVAC system that is the subject of this action.

45.     The Chinese drywall and/or HVAC system installed in the Plaintiffs' home was and is defective and unfit for its intended use.

46.     Defendants knew and expected that the Chinese drywall would reach, and it did reach, the Plaintiffs without any substantial change in its condition.  The HVAC system was designed and installed in the Plaintiffs' home.

47.     Under normal use, as alleged above, the Chinese drywall fails to perform in accordance with the reasonable expectations of Plaintiffs and ordinary consumers. The HVAC system, also under normal use, fails to perform as reasonably expected.

48.     The risks of harm posed by the failure of the Chinese drywall and HVAC system outweigh the benefits of its design.

49.     The Defendants, in exercising reasonable care, should have produced and used properly-designed drywall and a properly designed and sized HVAC system. Had they done so, this would have prevented or reduced the injury and damages suffered by Plaintiffs.

50.     As a direct and proximate cause of the Defendants' defective design, and/or manufacture of the drywall and HVAC system, and Defendants' sale, installation and/or use of the drywall and HVAC system, and the defendants placement of same into the stream of commerce. Plaintiffs have suffered or are substantially certain to suffer personal injuries and damages, including damage to property, and have incurred,

17

or are substantially certain to incur, the costs of testing, repairing and replacing defective Chinese drywall and other components, remediation of consequential and resulting property damage, personal injury, permanent injury, loss of earnings, loss of the use and enjoyment of their home, diminished value of their home, loss of the investment in their home, interest paid, pain, suffering and emotional distress, and other damages as alleged herein.

51.     Defendants knew or should have known of the risks posed by the Chinese drywall and HVAC system, and the risks of damage posed to those who purchased homes in which Defendants installed the Chinese drywall and HVAC system, but failed to provide adequate warnings of the known or foreseeable risks. Defendants had a duty not to put on the market products that posed a serious danger without first testing it and/or issuing warnings to the Plaintiffs and other consumers.

52.     Defendants breached their duty to warn by unreasonably failing to provide warnings concerning any of the facts alleged herein to the Plaintiffs and other consumers.

53.     Defendants' failure to warn as alleged herein, proximately caused reasonably foreseeable injuries to Plaintiffs. The Plaintiffs would have heeded legally adequate warnings, and not purchased the home containing the defective drywall and HVAC system, but would have purchased another home. The absence of warnings by the Defendants was the proximate cause of present and future damages sustained by Plaintiffs.

54.     Defendants' wrongful conduct, alleged in the foregoing paragraphs, was intentional and or reckless, in that Defendants' managing agents, primary owners,

18

and/or other officers or directors acted with actual or constructive knowledge of the wrongfulness of their conduct and of the high probability that injury or damage to the Plaintiffs would result and, despite that knowledge, intentionally or recklessly sold Chinese drywall and/or an inadequate, defective and miss-sized HVAC system without proper testing, concealed the defect, and failed to warn purchaser's of the defective Chinese drywall and HVAC system.

55.    Defendants' employees also engaged in this wrongful conduct with the active and knowing participation of Defendant entities and/or the knowing endorsement, ratification, and consent of Defendants' officers, directors, or managers.

56.    Defendants' conduct also constituted wantonness, in that it was so willful, wanton, reckless, or wanting in care that it constituted a conscious disregard or indifference to the health, safety, and rights of Plaintiffs.

57.    As a direct and proximate result of the Defendants' conduct, the Plaintiff's suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

58.    The Plaintiffs incorporate by reference the allegations contained in the

19

preceding paragraphs of this Complaint.

59.    Defendants, including Fictitious Defendants A through T, have been unjustly enriched in that they have wrongfully acquired a benefit, i.e., funds and profits, by their wrongful behavior described above.

60.    Defendants have continued to acquire funds and profits despite their knowledge of the defectiveness of, and risks posed by, the defective Chinese drywall and HVAC system.

61.    The circumstances under which Defendants profited from the sale of the drywall and HVAC system make it inequitable for them to retain those funds and profits.

62.    Plaintiffs, demand that Defendants be ordered to disgorge, for the benefit of the Plaintiffs, all or part of their ill-gotten profits received from the sale of the defective drywall and HVAC system, and/or make full restitution to Plaintiffs for the injuries or damages as set forth herein.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## FOURTH CAUSE OF ACTION
### (Implied Warranty of Habitability)

63.    The Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

20

64.     Each of Defendants, including Fictitious Defendants A through T, are merchants, suppliers, distributors or installers of gypsum drywall and/or residential HVAC systems.

65.     Under the law of Alabama, Defendants impliedly warranted directly to Plaintiffs or to their predecessors in title, that the residential home containing the defective Chinese drywall and HVAC system was habitable and reasonably fit for human occupancy.

66.     Plaintiffs are known, identified and/or intended third party beneficiaries of the warranties given by Defendants, and the clear and manifest intent of the Defendants sales contracts, agreements and trade practices was to primarily, directly and ultimately benefit the Plaintiffs.

67.     At the time the defendants manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied, serviced and/or failed to warn concerning the defective drywall materials and HVAC system, the said defendants knew or had reason to know that the Chinese drywall and HVAC system was being acquired for installation in the Plaintiffs' home, and that the Plaintiffs were relying upon the Defendants superior skill, judgment and experience to select and furnish materials and systems suitable and fit for construction of a habitable structure.

68.     Defendants breached the implied warranty of habitability by selling certain Chinese drywall and HVAC system that was defective, unsafe, unsuitable and unfit for the ordinary purpose for which drywall and HVAC systems are used, and their presence in the Plaintiffs' home makes the said home uninhabitable and unfit for human

21

occupancy.

69.     Specifically, certain of the drywall supplied by Defendants and installed in the Plaintiffs' home is defective because it has caused damage to Plaintiffs or Plaintiffs' Property as alleged herein. Moreover, the HVAC system was not adequate, properly sized and appropriate for the Plaintiffs' home, and thereby caused damage or exacerbated and worsened the defective drywall condition.

70.     Defendants received actual notice of the defective Chinese drywall and the HVAC system, but have failed to repair or replace the defective Chinese drywall and/or HVAC system, or otherwise take remedial measures.

71.     As a direct and proximate result of the Defendants' breach of the warranty of habitability, the Plaintiffs suffered damages as set forth above

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## FIFTH CAUSE OF ACTION
### (Implied Warranty of Fitness for a Particular Purpose)

72.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

73.     Each of Defendants, including Fictitious Defendants A through T, are merchants, suppliers, distributors or installers of gypsum drywall and/or residential

22

HVAC systems..

74.     Under the law of Alabama, Defendants impliedly warranted directly to Plaintiffs or to their predecessors in title, that the drywall and HVAC system were reasonably fit for the ordinary purposes for which they are used.

75.     Plaintiffs are known, identified and/or intended third party beneficiaries of the warranties given by Defendants, and the clear and manifest intent of the Defendants sales contracts, agreements and trade practices was to primarily, directly and ultimately benefit the Plaintiffs.

76.     At the time the defendants manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied and/or failed to warn concerning the defective drywall materials and/or HVAC system, the said defendants knew or had reason to know that the Chinese drywall and/or HVAC system was being acquired for the particular purpose of installation in the Plaintiffs' home, and that the Plaintiffs were relying upon the Defendants superior skill, judgment and experience to select and furnish materials suitable and fit for this particular purpose.

77.     Defendants breached the implied warranty of fitness for a particular purpose by selling certain Chinese drywall and/or HVAC system that was defective and not reasonably fit for the ordinary purpose for which they are used.

78.     Specifically, certain of the drywall supplied by Defendants and installed in the Plaintiffs' home is defective because it has caused damage to Plaintiffs or Plaintiffs' Property as alleged herein. Moreover, the HVAC system was not adequate, properly sized and appropriate for the Plaintiffs' home, and thereby caused damage or

23

exacerbated and worsened the defective drywall condition.

79. Defendants received actual notice of the defective Chinese drywall and the HVAC system, but have failed to repair or replace the defective Chinese drywall and/or HVAC system, or otherwise take remedial measures.

80. As a direct and proximate result of the Defendants' breach of the warranty of fitness for a particular purpose, the Plaintiff's suffered damages as set forth above

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## SIXTH CAUSE OF ACTION
### (Implied Warranty of Merchantability)

81. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

82. Each of Defendants, including Fictitious Defendants A through T, are merchants, suppliers, distributors or installers of gypsum drywall and/or residential HVAC systems..

83. Under the law of Alabama, Defendants impliedly warranted directly to Plaintiffs or to their predecessors in title, that the drywall and HVAC system were merchantable and reasonably fit for the ordinary purposes for which they are used.

84. Plaintiffs are known, identified and/or intended third party beneficiaries of

24

the warranties given by Defendants, and the clear and manifest intent of the Defendants sales contracts, agreements and trade practices was to primarily, directly and ultimately benefit the Plaintiffs.

85.    At the time the defendants manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, installed, applied and/or failed to warn concerning the defective drywall materials and/or the HVAC system, the said defendants knew or had reason to know that the Chinese drywall was being acquired for the purpose of installation in the Plaintiffs' home, and that the Plaintiffs were relying upon the Defendants superior skill, judgment and experience to select and furnish materials suitable, fit and merchantable for use in this manner.

86.    Defendants breached the implied warranty of merchantability by selling certain Chinese drywall and HVAC system that were defective and not reasonably fit for the ordinary purposes for which they are used.

87.    Specifically, certain of the drywall supplied by Defendants and installed in the Plaintiffs' home is defective because it has caused damage to Plaintiffs or Plaintiffs' Property as alleged herein. Moreover, the HVAC system was not adequate, properly sized and appropriate for the Plaintiffs' home, and thereby caused damage or exacerbated and worsened the defective drywall condition.

88.    Defendants received actual notice of the defective Chinese drywall and the HVAC system, but have failed to repair or replace the defective Chinese drywall or otherwise take remedial measures.

89.    As a direct and proximate result of the Defendants' breach of the warranty

25

of merchantability, the Plaintiff's suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## SEVENTH CAUSE OF ACTION
### (Express Warranty)

90.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

91.     Defendants, including Fictitious Defendants A through T, provided express written warranties with the sale of the Plaintiffs' home.

92.     Defendants, including Fictitious Defendants A through T, also expressly affirmed that the product they were selling and installing in Plaintiffs' home was gypsum drywall.  By trade custom and practice, said warranty included an affirmation that the product was essentially gypsum, a paper backing, and nothing else. That affirmation constitutes an express warranty under the laws of Alabama.  Plaintiffs relied on said express warranty in accepting the subject drywall.

93.     Defendants further warranted that the HVAC system was adequate, properly sized and appropriate for the Plaintiffs' home.

94.     Defendants breached said express warranties by selling a product that did not conform to said affirmations, namely that the product was contaminated with a

26

compound containing high sulfur content such that it is not essentially gypsum.

95.     Defendants further breached said express warranties by installing, selling and supplying an HVAC system that was not adequate, properly sized and appropriate for the Plaintiffs' home

96.     Specifically, certain of the drywall supplied by Defendants and installed in the Plaintiffs' home is defective because it has caused damage to Plaintiffs or Plaintiffs' Property as alleged herein. Moreover, the HVAC system was not adequate, properly sized and appropriate for the Plaintiffs' home, and thereby caused damage or exacerbated and worsened the defective drywall condition.

97.     Defendants received actual notice of the defective Chinese drywall and the HVAC system, but have failed to repair or replace the defective Chinese drywall or otherwise take remedial measures.

98.     As a direct and proximate result of the Defendants' breach of express warranties, the Plaintiffs suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## EIGHTH CAUSE OF ACTION
### (Violation of Alabama's Deceptive and Unfair Trade Practices Act)

99.     Plaintiffs incorporate by reference the allegations contained in the

27

preceding paragraphs of this Complaint.

100.   This action is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

101.   Plaintiffs are "consumers" and the subject transactions are "trade or commerce" as defined by Alabama law.

102.   Defendants', including Fictitious Defendants A through T's, actions and/or omissions as described herein violate the applicable Alabama Statues that were enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

103.   Specifically, defendants misrepresented and omitted material information regarding the Chinese drywall and/or HVAC system by failing to disclose known risks.

104.   Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of the Chinese drywall and HVAC system in violation of applicable Alabama laws.

105.   Defendants violated the applicable Alabama laws by knowingly and falsely representing that Defendants' Chinese drywall and/or HVAC system was fit to be used for their intended purposes, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and untested, and further by other acts alleged herein.

106.   Defendants engaged in the deceptive acts and practices alleged herein in

order to sell the Chinese drywall and/or an HVAC system to the public, including Plaintiffs.

107.   Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to the applicable laws of the State of Alabama.

108.   As a direct and proximate result of Defendants violations of Alabama Statutes, and applicable laws.  Plaintiffs have suffered damages as set forth above. Plaintiffs are entitled to compensatory damages, enhanced statutory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, enhances statutory damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## NINTH CAUSE OF ACTION
### (Breach of Contract)

109.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

110.   The Defendants, including Fictitious Defendants A through T, entered into an express and/or implied agreement with the Plaintiffs directly, and/or with the Plaintiffs as intended third party beneficiaries, to deliver, sell, convey, grant and provide a residential home suitable for human habitation, built within accepted construction

standards and guidelines, and otherwise built in accordance with the contractual obligations undertaken.

111. The Defendants breached their contract with the Plaintiffs by failing to deliver, sell, convey, grant and provide a residential home suitable for human habitation, built within accepted construction standards and guidelines, and otherwise built in accordance with the contractual obligations undertaken.

112. As a direct and proximate result of the Defendants' said breach, the Plaintiff's suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## TENTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)

113. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

114. Defendants, including Fictitious Defendants A through T, falsely and fraudulently represented to Plaintiff, the Plaintiff Class Members and/or the consuming public in general that Defendants" Chinese drywall had been tested and was found to be safe and/or effective for use.

115. Defendants, including Fictitious Defendants A through T, further falsely

30

represented that the HVAC system was adequate, properly sized and appropriate for the Plaintiffs' home.

116. The representations made by Defendants were, in fact, false.

117. When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

118. These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs and/or the consuming public, all of which evidence reckless, willful, indifference to the health, safety and welfare of the Plaintiffs.

119. At the time the aforesaid representations were made by the Defendants the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

120. In reliance upon said representations, the Plaintiff's homes were built using Defendants' Chinese drywall, thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future. Further, the Plaintiffs' home was supplied with the defective HVAC system, thereby causing or exacerbating the Plaintiffs' damages.

121. Said Defendants knew and were aware, or should have been aware, that Defendants' Chinese drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings. Said defendants further knew or should have been aware that the HVAC system was inadequate, misssized and inappropriate, and/or lacked sufficient warnings.

122. Defendants knew, or should have known, that Defendants' Chinese

31

drywall and HVAC system had a potential to, could, and would cause severe damage and injury to Plaintiffs and other consumers.

123. Defendants brought Defendants' Chinese drywall and the HVAC system to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs.

124. As a direct and proximate result of the Defendants' said fraudulent misrepresentations, the Plaintiff's suffered damages as set forth above

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

## ELEVENTH CAUSE OF ACTION
### (Fraudulent Concealment/Suppression)

125. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

126. Defendants, including Fictitious Defendants A through T, fraudulently concealed, and/or intentionally omitted, the fact that Defendants' Chinese drywall used and installed in Plaintiffs' homes caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, bad smells, and other health concerns. Defendants further fraudulently concealed that the HVAC system was inadequate, miss-

32

sized and inappropriate for the Plaintiffs' home.

127. Defendants were under a duty to disclose to Plaintiffs the aforementioned as it pertains to Defendants' Chinese drywall and the HVAC system.

128. Defendants' concealment and omissions of material facts concerning the harmful nature of the Chinese drywall and HVAC system was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' product and system, and did in fact so mislead the Plaintiff's into such reliance and continued use.

129. Defendants knew that Plaintiffs and/or the consuming public had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall and HVAC system as alleged herein.

130. As a direct and proximate result of the Defendants' said fraudulent concealment/suppression, the Plaintiff's suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiffs demand judgment against the Defendants, including Fictitious Defendants A through T, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this court.

Respectfully submitted,

HOLSTON ◊ VAUGHAN ◊ ANDRESS, LLC
Attorneys for the Plaintiffs

/s/ Richard H. Holston
RICHARD H. HOLSTON (HOL-052)

GREGORY E. VAUGHAN (VAU-013)
P.O. Box 195
Mobile, AL 36601
(251) 432-8883

rhhlaw@bellsouth.net
gevlaw@bellsouth.net

**Of Counsel:**
WINDOM & TOBIAS, LLC
DESMOND V. TOBIAS (TOB-002)
P.O. Box 2626
Mobile, AL 36652

desi@windomtobias.com


**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY STRUCK JURY.**

By:   s/ Gregory E. Vaughan                .
GREGORY E. VAUGHAN (VAU-013)


### CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing document on all Parties to this proceeding listed below, by depositing a copy of same in the United States mail, first class postage prepaid and properly addressed as follows on this the 24th day of June, 2009.

By:   s/ Gregory E. Vaughan                .
GREGORY E. VAUGHAN (VAU-013)

THE MITCHELL COMPANY, INC.
Paul Charles Wesch
41 W Interstate 65 Service Rd N
Colonial Bank Centre, 3rd Floor
Mobile, Alabama 36608-1201

PRICHARD HOUSING AUTHORITY
Post Office Box 1037
Prichard, Alabama 36610

PRICHARD HOUSING BOARD
Post Office Box 1037
Prichard, Alabama 36610

34

INTERIOR & EXTERIOR BUILDING SUPPLY, L. P.
727 South Cortez Street
New Orleans, Louisiana 70119

RIGHTWAY DRYWALL, INC.
c/o Michael S. Jenkins, Registered Agent
102 Samantha Drive
Bonaire, Georgia 31005

SMOKEY MOUNTAIN MATERIALS, INC.
5218 South National Drive
Knoxville, TN 37914

JUST-RITE SUPPLY, INC.
c/o Corporation Service Company
506 South President Street
Jackson, Mississippi 39201

ESTES HEATING & AIR, INC.
c/o Richard Glenn Estes
3308D DAUPHIN ISLAND PKWY
MOBILE, AL 36605

35