# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br>ALL CASES AND | JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| *Payton, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:09-cv-07628 (E.D. La.) | |
| *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*<br>Case No. 2:10-cv-00361 (E.D. La.) | |
| *Gross, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:09-cv-06690 (E.D. La.) | |
| *Rogers, et al. v. Knauf Gips, KG, et al.*<br>Case No. 2:10-cv-00362 (E.D. La.) | |
| *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 2:11-cv-00252 (E.D. La.) | |
| *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-1363 (E.D. La.) | |
| *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-2349 (E.D. La.) | |
| *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>Case No. 11-cv-3023 (E.D. La.) | |
| *Vickers, et al. v. Knauf Gips KG, et al.*<br>Case No. 2:09-cv-04117 (E.D. La.) | |
| *Silva, et al. v. Interior Exterior Building Supply, LP, et al.*<br>Case No. 09-08030 (E.D. La.) | |
| *Silva, et al. v. Arch Insurance Company, et al.*<br>Case No. 09-08034 (E.D. La.) | |

*Amato, et al. v. Liberty Mutual Ins. Co.*
Case No. 2:10-cv-00932 (E.D. La.)

*Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
Case No. 2:11-080 (E.D. La)

*Hernandez, et al. v. AAA Insurance, et al.*
Case No. 2:10-cv-03070 (E.D. La.)

*Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
Case No. 2:11-cv-01077 (E.D. La.)

**ORDER AND JUDGMENT: (1) CERTIFYING THE INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENT CLASSES; AND (2) GRANTING FINAL APPROVAL TO THE INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENTS**

Upon consideration of the Motion of the Plaintiffs' Steering Committee (the "PSC") and Settlement Class Counsel for certification of five settlement classes and final approval of the class settlements with (1) Interior Exterior Building Supply, LP ("InEx") and its insurers[1] (the "InEx Settlement"); (2) the Banner entities[2] and their insurers[3] (the "Banner Settlement"); (3)

---

[1] InEx's Insurers that have entered into a class settlement with the PSC include Arch Insurance Company ("Arch") and Liberty Mutual Fire Insurance Company ("Liberty").

[2] The Banner entities include: Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC, Banner Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International, LLC, and any other entity insured under the Banner Insurance Policies (collectively, "Banner").

[3] Banner's Insurers include: Chartis Specialty Insurance Company (formerly known as "American International Specialty Lines Insurance Company"), Illinois National Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa., Commerce & Industry Insurance Co., and any other sister entities or entities related to the foregoing or to American International Group, Inc. (collectively, "Chartis"); FCCI Insurance Company, FCCI Commercial Insurance Company, National Trust Insurance Company, FCCI Mutual Insurance Holding Company, FCCI Group, Inc., FCCI Insurance Group, Inc., Monroe Guaranty Insurance Company, FCCI Services, Inc., FCCI Advantage Insurance Company, Brierfield Insurance Company, FCCI Agency, Inc. (collectively, "FCCI"); Hanover American Insurance Company and Hanover Insurance Group, Inc. (collectively, "Hanover"); and Maryland Casualty

L&W Supply Corporation ("L&W") and USG Corporation (the "L&W Settlement"); (4) the Knauf Defendants[4] (the "Knauf Settlement"); and (5) more than 700 additional Participating Builders, Suppliers, and Installers ("Participating Defendants"),[5] and their Participating Insurers ("Participating Insurers")[6] (together the "Global Settlement"), it is hereby,

ORDERED, ADJUDGED AND DECREED that:

1. Capitalized terms used in this Order and Judgment shall have the same meaning as those defined in the Amended InEx Settlement Agreement [Rec. Doc. No. 12258-3], the Amended Banner Settlement Agreement [Rec. Doc. No. 10033-3], the Second Amended InEx Settlement Agreement and the Second Amended Knauf Settlement Agreement [Rec. Doc. No. 15948-2], the Third Amended Knauf Settlement Agreement [Rec. Doc. No. 16407-3], the L&W Settlement Agreement [Rec. Doc. No. 13913-3], and the Amended Global Settlement Agreement [Rec. Doc. No. 15695-2], which have been filed of record in this case.

2. The Court granted preliminary approval to the InEx Settlement on May 13, 2011 [Rec. Doc. No. 8818] and to amendments to that agreement on February 23, 2012 [Rec. Doc. No. 12587].

3. The Court granted preliminary approval to the Banner Settlement on July 14, 2011

---

Company, and all companies in the Zurich North America group of insurance companies (collectively, "Maryland Casualty").

[4] The Knauf Defendants include: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[5] The list of Participating Defendants is attached hereto as Exhibit 1.

[6] The list of Participating Insurers is attached hereto as Exhibit 2.

and to amendments to that agreement on August 11, 2011 [Rec. Doc. No. 9839; Rec. Doc. No. 10064].

4.   The Court granted preliminary approval to the Knauf Settlement on January 10, 2012 [Rec. Doc. No. 12138] and to amendments to that agreement on September 4, 2012 [Rec. Doc. No. 15786] and on December 12, 2012 [Rec. Doc. No. 16420].

5.   The Court granted preliminary approval to the L&W Settlement on April 26, 2012 [Rec. Doc. No. 14583].

6.   The Court granted preliminary approval to the Global Settlement on May 31, 2012 [Rec. Doc. No. 14562] and to amendments to that agreement on August 22, 2012 [Rec. Doc. No. 15734].

7.   The Court granted preliminary approval to the Second Amendment to the InEx Settlement Agreement and the Knauf Settlement Agreement on November 19, 2012 [Rec. Doc. No. 16266].

8.   The Motion of the PSC and Settlement Class Counsel for Final Approval of the InEx, Banner, Knauf, L&W, and Global Settlements and Certification of the InEx, Banner, Knauf, L&W, and Global Settlement Classes is GRANTED.

9.   Unless otherwise specified, the InEx, Banner, Knauf, L&W, and Global Settlements will be governed by the substantive laws of Louisiana.

10.   The InEx Settlement Class consists of: "All persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx."

11.   The InEx Settlement Class shall consist of two Subclasses:

3

      a.      The "Louisiana Subclass," which includes: "All members of the Class with claims arising from, or otherwise related to Affected Properties that are located in Louisiana"; and

      b.      The "Non-Louisiana Subclass," which includes: "All members of the Class with claims arising from, or otherwise related to Affected Properties that are located in any state other than Louisiana."

12.    The InEx Settlement Class and Subclasses are certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

13.    The Court finds that the InEx Settlement is fair, reasonable, and adequate, that the InEx Settlement was entered into in good faith and without collusion, and that the InEx Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

14.    The Court finds that Notice was disseminated to the InEx Class pursuant to this Court's Order dated May 13, 2011 [Rec. Doc. No. 8818]. All InEx Class Members who did not opt out of the InEx Settlement in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

15.    Comprehensive lists of opt-outs and rescissions of opt-outs from the InEx Settlement as of November 9, 2012, were filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-5. Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements. *See* Rec. Doc. No. 16191-8. Additional lists of subsequent rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492.

16.    The Class Release provided in Section 4.3 of the InEx Settlement is approved.

17.    As of the Effective Date of the InEx Settlement, the Released Claims as defined in

Section 4.1 of the InEx Settlement will be released as to the InEx Settling Defendants.

18. Any and all InEx Class Members, including, but not limited to, those who have not properly opted out of the InEx Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the InEx Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

19. The Court finds that, upon transfer of the Insurance Proceeds to the Escrow Account by Arch and Liberty pursuant to Section 12 of the InEx Settlement, the aggregate limits of the Arch Policies and the Liberty Policies are exhausted.

20. The Court finds that the Assignment of Insurance by InEx to the Non-Louisiana Subclass is valid, binding, and enforceable.

21. The Second Amendment to the InEx and Knauf Class Settlements is approved as fair, reasonable and adequate as to the InEx and Knauf Classes and binding on Settlement Class Members and the signatories.  The Court does not address issues related to whether the Second Amendment is enforceable against The North River Insurance Company, including but not limited to whether:  (a) the Second Amendment constitutes a reasonable settlement of a disputed claim for insurance coverage purposes; and (b) time was of the essence and there was no justifiable reason for delay in entering the Second Amendment.  As to those issues, all of the parties' positions are preserved and all of North River's defenses are preserved.  Nor does the Court address whether its findings in the context of approval of the settlements regarding assignment and exhaustion are binding on North River (which is not party to the settlements), and all of North River's defenses regarding such matters are preserved.

22. The Court finds that the indemnity, defense and judgment reduction provisions in

5

Section 4.3 of the InEx Settlement are valid, binding, and enforceable.

23. Notwithstanding any other provision of the InEx Settlement or of any other document (including any other provision that purports to be governing or controlling over other provisions), the InEx Settlement does not release any claims or defenses whatsoever that any InEx Class Member who opted out from this Settlement may have. In the event an InEx Class Member opted out from the InEx Settlement, all parties reserve all claims, defenses, and coverage positions against that InEx Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out InEx Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that InEx Class Member.

24. The Banner Settlement Class consists of: "All persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner."

25. The Banner Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

26. The Court finds that the Banner Settlement is fair, reasonable, and adequate, that the Banner Settlement was entered into in good faith and without collusion, and that the Banner

Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

27.	The Court finds that Notice was disseminated to the Banner Class pursuant to this Court's Order dated August 11, 2011 [Rec. Doc. No. 10064]. All Banner Class Members who did not opt out of the Banner Settlement in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

28.	Comprehensive lists of opt-outs and rescissions of opt-outs from the Banner Settlement as of November 9, 2012, were filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-4. *See also* Rec. Doc. No. 16499 (Conditional Opt-Outs of Gregg Neiberg, Inc. and Triple "E" Corp.). Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements. *See* Rec. Doc. No. 16191-8. Additional lists of subsequent rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492.

29.	The releases attached in Exhibits D, E(1), E(2), E(3), F and G of the Banner Settlement are approved.

30.	Any and all Banner Class Members, including, but not limited to, those who have not properly opted out of the Banner Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the Banner Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

31.	Other than to enforce any term of the Banner Settlement, no person or entity may use or refer to any aspect of the Banner Settlement in any litigation in which any Banner Insurer is a party.

32. The Banner Settlement shall not constitute a waiver of any coverage defense or position taken by any Banner Insurer related to Chinese Drywall and no Banner Insurer shall be estopped from raising any coverage issue or defense by reason of the Banner Settlement.

33. The substantive laws of Florida shall govern the interpretation of all Banner Insurers' policies issued to Banner. The Court finds that by entering the Banner Settlement, each Banner Insurer has acted in good faith and fairly, reasonably, and honestly towards Banner and any actual and/or potential Banner Class Members and with due regard for Banner and any potential Banner Class Members' interests regarding Chinese Drywall.

34. The Banner Settlement by the Banner Insurers, being in good faith, upon the Settlement becoming Final, precludes Banner and any actual and/or potential Banner Class Member from asserting a bad faith claim against any Banner Insurer.

35. The Court finds that FCCI's principal place of business is in Florida, that FCCI's policies were delivered to Banner in Florida, and that Banner only supplied Chinese Drywall for use in homes and buildings in Florida. The Court further finds that the only FCCI policy issued to Banner that is triggered by claims related in any way to Chinese Drywall is the 2006-2007 policy, policy numbers GL0004593-1 and UMB0004524-1.

36. By participation in this Settlement, FCCI and Hanover have not consented to general or specific personal jurisdiction in Louisiana and are not precluded from challenging general or specific personal jurisdiction over them in Louisiana in any cases currently pending or that may be filed in the future, including, but not limited to, cases currently pending in, or that may be assigned to, filed in, or transferred to this Court.

37. The Court finds that the only Maryland Casualty policy issued to Banner that is

triggered by claims related in any way to Chinese Drywall is the 2005-2006 policy, policy number PPS 42534587- 02.

39. The Court finds that the only Chartis policies issued to Banner that are triggered by claims related in any way to Chinese Drywall are the policies BE 9300273, BE 8688025, BE 5543482, and 7606364.

39. Notwithstanding any other provision of the Banner Settlement or of any other document (including any other provision that purports to be governing or controlling over other provisions), the Banner Settlement does not release any claims or defenses whatsoever that any Banner Class Member who opted out from this Settlement may have.  In the event a Banner Class Member opted out from the Banner Settlement, all parties reserve all claims, defenses, and coverage positions against that Banner Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out Banner Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that Banner Class Member.

40. Under the Banner Settlement, Banner may exercise its right to terminate the Banner Settlement no later than ten (10) business days, excluding weekends and holidays, after the entry of this Order and Judgment.  In order to terminate the Banner Settlement, Banner must provide notice to Liaison and Lead Counsel for the PSC by facsimile, email or hand delivery so

that it is received on or before 4 p.m. Central Time on the date specified in the Banner Settlement.  If Banner terminates the Banner Settlement, all other Settling Defendants, Participating Defendants and Participating Insurers shall have three (3) business days from the date of Banner's notice to terminate their respective Settlements by providing a termination notice to Liaison and Lead Counsel for the PSC by facsimile, email or hand delivery so that it is received on or before 4 p.m. Central Time on the due date.

41. The Knauf Settlement Class consists of:  "All persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (i.e., not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit."

42. The Knauf Class shall consist of three Subclasses:

    a. The Residential Owner Subclass, which includes:  "All members of the Knauf Class who are owners of and reside or have resided in Affected Property" ("Residential Owners").  The Residential Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall and/or Non-KPT Chinese Drywall.  The Residential Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties to mitigate losses.

    b. The Commercial Owner Subclass, which includes:  "All members of the Knauf Class who are owners of Affected Property for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business and who do not reside in the Affected Property" ("Commercial Owners").  The Commercial Owner Subclass shall not

include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall and/or Non-KPT Chinese Drywall. The Commercial Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties to mitigate losses.

      i.      The Residential Owner Subclass and the Commercial Owner Subclass shall be referred to collectively as the "Owner Subclasses" or "Owners."

    c.    The Tenant Subclass, which includes: "All members of the Knauf Class who rent Affected Property."

      i.      Members of the Tenant Subclass also are referred to as "Tenants." Non-owner residents will be treated as Tenants even if they do not pay rent.

43. The Knauf Settlement Class and Subclasses are certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

44. The Court finds that the Knauf Settlement is fair, reasonable, and adequate, that the Knauf Settlement was entered into in good faith and without collusion, and that the Knauf Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

45. The Court finds that Notice was disseminated to the Knauf Class pursuant to this Court's Order dated January 10, 2012 [Rec. Doc. No. 12138]. All Knauf Class Members who did not opt out of the Knauf Settlement in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

46. Comprehensive lists of opt-outs and rescissions of opt-outs from the Knauf Settlement as of November 9, 2012, were filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-6. Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements. *See* Rec. Doc. No. 16191-8. Additional lists of subsequent rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492.

47. The Class Release provided in Section 5.2 of the Knauf Settlement is approved.

48. As of the Effective Date of the Knauf Settlement, the Released Claims as defined in Section 5.1 of the Knauf Settlement will be released as to the Knauf Defendants and Other Releasees.

49. Any and all Participating Class Members in the Knauf Settlement are enjoined and forever barred from commencing and/or maintaining any action, legal or otherwise, against the Knauf Defendants and Other Releasees arising out of, or otherwise relating to, KPT Chinese Drywall.

50. The Court finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4, 5.2.5 and 5.2.6 of the Knauf Settlement are valid, binding, and enforceable; and therefore, the Court bars the assertion by any entity or person against the Knauf Defendants and Other Releasees of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning (i) the KPT Chinese Drywall claims against the Knauf Defendants and Other Releasees or (ii) this Settlement.

51. Non-Knauf Class Members and Knauf Class Members who opt out under Section 8 of the Knauf Settlement are enjoined from seeking or obtaining any recovery against or from,

or seeking to execute or otherwise exercise remedies against the Pledged Assets, the Mortgaged Property, the Knauf Investment Assets, and the Replacement Security, and any proceeds thereof, which asset(s) have been procured by the Knauf Defendants in furtherance of the Knauf Settlement for the benefit of the Knauf Settlement Class.

52. The L&W Settlement Class consists of: "All persons or entities who are Participating Class Members in the Knauf Class Settlement and who (a) as of December 9, 2011, is a named plaintiff in the Litigation (i.e., not an absent class member) asserting claims arising from, or otherwise related to L&W Supplied KPT Chinese Drywall, whether or not L&W and/or USG are named parties to the lawsuit, and (b) own Affected Property."

53. The L&W Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

54. The Court finds that the L&W Settlement is fair, reasonable, and adequate, that the L&W Settlement was entered into in good faith and without collusion, and that the L&W Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

55. The Court finds that Notice was disseminated to the L&W Class pursuant to this Court's Order dated June 11, 2012 [Rec. Doc. No. 14583]. All L&W Class Members who did not opt out of the L&W Settlement in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

56. Comprehensive lists of opt-outs and rescissions of opt-outs from the L&W Settlement as of November 9, 2012, were filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-7. Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements. *See* Rec. Doc. No. 16191-8. Additional lists of subsequent

rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492.

57. The Class Release provided in Section 5.1 of the L&W Settlement is approved.

58. As of the Effective Date of the L&W Settlement, the Released Claims as defined in Section 5.1 of the Knauf Settlement will be released as to L&W and USG.

59. Any and all Participating L&W Class Members are enjoined and forever barred from commencing and/or maintaining any action, legal or otherwise, against USG and L&W arising out of, or otherwise relating to, L&W Supplied KPT Chinese Drywall or any drywall manufactured by KPT.

60. The Court finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4 and 5.2.5 of the L&W Settlement are valid, binding, and enforceable; and therefore, the Court bars the assertion by any entity or person against USG and L&W of any contribution, indemnification, subrogation, or other claims arising out of (i) the Participating L&W Class Members' L&W Supplied KPT Chinese Drywall Claims or (ii) this Settlement.

61. Notwithstanding any other provision of the L&W Settlement or of any other document (including any other provision that purports to be governing or controlling over other provisions), the L&W Settlement does not release any claims or defenses whatsoever that any L&W Class Member who opted out from this Settlement may have. In the event an L&W Class Member opted out from the L&W Settlement, all parties reserve all claims, defenses, and coverage positions against that L&W Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out L&W Class Member (including, without limitation, builders, developers, installers,

suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that L&W Class Member.

62.     The Global Settlement Class consists of: "All persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant.  A Participating Defendant shall also be a Global Class Member to the extent the Participating Defendant has remediated the Chinese Drywall in one or more Affected Properties or repurchased an Affected Property.  Participating Insurers are not Global Class Members.  Global Class Members do not include persons or entities with claims involving an Affected Property in the Commonwealth of Virginia."

63.     The Global Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

64.     The Court finds that the Global Settlement is fair, reasonable, and adequate, that the Global Settlement was entered into in good faith and without collusion, and that the Global Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

65.     The Court finds that Notice was disseminated to the Global Settlement Class pursuant to this Court's Order dated May 31, 2012 [Rec. Doc. No. 14562].  All Global

15

Settlement Class Members who did not opt out of the Global Settlement in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

66. Comprehensive lists of opt-outs and rescissions of opt-outs from the Global Settlement as of November 9, 2012, were filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-3. Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements. *See* Rec. Doc. No. 16191-8. Additional lists of subsequent rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492.

67. The Court finds that the indemnity, defense and judgment reduction provisions in Sections 4.3 and 5.2.6 of the Global Settlement are valid, binding, and enforceable; and therefore, bar the assertion by any Global Settlement Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims.

68. The Court approves the reservations set forth in Exhibit 3 to the Global Settlement Agreement.[7]

69. The Court approves the assignments set forth in Exhibit 4 to the Global Settlement.[8]

70. Any and all Global Settlement Class Members, including, but not limited to, those who have not properly opted out of the Global Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related

---

[7] The list of Reservations is attached hereto as Exhibit 3.

[8] The list of Assignments is attached hereto as Exhibit 4.

16

Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

71.     Other than as it relates to Reserved Claims or Assigned Claims in the Global Settlement, or to enforce any term of the Global Settlement, or as to insurance matters concerning depletion or exhaustion of one or more policies of insurance, or prior compensation for a claimed loss or set-off, no person or entity may use or refer to any aspect of the Global Settlement in any litigation in which any Participating Defendant or Participating Insurer is a party.

72.     The Global Settlement shall not constitute a waiver of any coverage defense or position taken by any Participating Defendant and/or its insurers, whether a Participating Insurer or not, related to Chinese Drywall and no insurer, whether a Participating Insurer or not, shall be estopped from raising any coverage issue or defense by reason of the Global Settlement.  In addition, any payment by a Participating Insurer as set forth in Section 4 of the Global Settlement, shall not be considered a confession of judgment or trigger any obligation to pay attorney's fees under Florida Stat. 627.428 or any other fee shifting statute in any state.

73.     Except for any Reserved Claims referenced in Section 5.6.3 of the Global Settlement, the Court finds that by entering this Settlement, each Participating Insurer has acted in good faith and fairly, reasonably, and honestly towards its insured Participating Defendant, and any actual and/or potential Global Settlement Class Members and with due regard for the Participating Insurer's Participating Defendant, and any potential Global Settlement Class Members' interests regarding Chinese Drywall.

74. Except for any Reserved Claims referenced in Section 5.6.3 of the Global Settlement, the Court finds that the actions and positions of the Participating Insurers, being in good faith, upon the Global Settlement becoming Final, preclude any Participating Defendant and any actual and/or potential Global Settlement Class Member from asserting, maintaining or assigning any statutory and/or common law bad faith claim against any Participating Insurer.

75. The Global Settlement shall not constitute a waiver or release by any Participating Defendant or Participating Insurer of any claims or defenses related to any actual or alleged obligations under a policy of insurance that such Participating Defendant or Participating Insurer may have against any person or entity, including another Participating Insurer, in any manner related to or connected in any way with the Chinese Drywall claims of Global Settlement Class Members who opt-out of the Global Settlement.

76. The Court hereby appoints John W. Perry, Jr., Daniel J. Balhoff, and Randi S. Ellis to serve as Special Masters for purposes of the InEx Settlement, the Banner Settlement, the Knauf Settlement, the L&W Settlement, and the Global Settlement. The Special Masters may, at their discretion, act jointly or independently in discharging their duties, including but not limited to the making of reports and recommendations to the Court.

77. The Court finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

        This \_\_\_\_\_ day of _____, 2013, at New Orleans, Louisiana

        _____
        ELDON E. FALLON
        United States District Court Judge