# Jeremy Scott Epstein

| | |
|---|---|
| **From:** | Jeremy Scott Epstein |
| **Sent:** | Friday, November 09, 2012 4:29 PM |
| **To:** | 'Thalgott, Garrett' |
| **Cc:** | 'Miller, Kerry J.'; 'Spaulding, Kyle'; Lenny Davis; Vickie Lory; Drywall Client |
| **Subject:** | RE: Reece - Response Letter |
| **Attachments:** | EX C - REECE PTO 26 RESP LETTER RE B2L.pdf; EX D - REECE PTO 26 RESP LETTER RE PLUMBING GAS.pdf; EX E - REECE PTO 26 RESP SHORING.pdf; REECE - PTO26 RESP LTR 11-9-12.pdf; EX A - REECE PTO 26 RESP LETTER RE GILL.pdf; EX B - REECE PTO 26 RESP LETTER RE OTHER.pdf |
| **Importance:** | High |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | 'Thalgott, Garrett' | | |
| | 'Miller, Kerry J.' | | |
| | 'Spaulding, Kyle' | | |
| | Lenny Davis | Delivered: 11/9/2012 4:29 PM | Read: 11/9/2012 4:52 PM |
| | Vickie Lory | Delivered: 11/9/2012 4:29 PM | |
| | Drywall Client | Delivered: 11/9/2012 4:29 PM | |
| | 'Ryan Reece' | | |

Dear Garrett:

Please find attached our response to your email regarding the Reece remediation. We look forward to hearing from you.

Sincerely,

Jeremy S. Epstein
Attorney
**Herman, Herman & Katz, L.L.C.**
**Herman Gerel, LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
504-581-4892
504-561-6024 (Fax)
Email: jepstein@hhklawfirm.com
www.hhklawfirm.com

**PLEASE NOTE THAT MY E-MAIL ADDRESS HAS CHANGED. PLEASE UPDATE YOUR CONTACT INFORMATION ACCORDINGLY.**

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

CONFIDENTIAL ATTORNEY WORK PRODUCT

**From:** Thalgott, Garrett [mailto:GThalgott@frilot.com]
**Sent:** Thursday, November 01, 2012 3:54 PM
**To:** Jeremy Scott Epstein


EXHIBIT B

1

**Cc:** Miller, Kerry J.; Spaulding, Kyle; Lenny Davis; Vickie Lory; Drywall Client
**Subject:** RE: Reece

Sounds good. Thanks.

**From:** Jeremy Scott Epstein [mailto:jepstein@hhklawfirm.com]
**Sent:** Thursday, November 01, 2012 3:53 PM
**To:** Thalgott, Garrett
**Cc:** Miller, Kerry J.; Spaulding, Kyle; Lenny Davis; Vickie Lory; Drywall Client
**Subject:** RE: Reece

We are working on a reply to your email. There are numerous issues with the email. We will have something for you soon. Thank you.

Jeremy S. Epstein
Attorney
**Herman, Herman & Katz, L.L.C.**
**Herman Gerel, LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
504-581-4892
504-561-6024 (Fax)
Email: jepstein@hhklawfirm.com
www.hhklawfirm.com

**PLEASE NOTE THAT MY E-MAIL ADDRESS HAS CHANGED. PLEASE UPDATE YOUR CONTACT INFORMATION ACCORDINGLY.**

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*
CONFIDENTIAL ATTORNEY WORK PRODUCT

**From:** Thalgott, Garrett [mailto:GThalgott@frilot.com]
**Sent:** Thursday, November 01, 2012 3:51 PM
**To:** Jeremy Scott Epstein
**Cc:** Miller, Kerry J.; Spaulding, Kyle; Lenny Davis
**Subject:** RE: Reece

Jeremy-

Kerry asked me to follow up on this file. Have you been able to gather any of the information that I mentioned below?

By the way, it is my understanding that Reece is an attorney himself. We can deal with him directly if you would like us to.

Garrett

**From:** Thalgott, Garrett
**Sent:** Thursday, September 20, 2012 2:50 PM
**To:** Jeremy Scott Epstein (jepstein@hhklawfirm.com)
**Subject:** Reece

2

Jeremy-

We need more information on the Reece file before it can be evaluated. We need post-demo photos to compare before and after. There was no contract or scope provided by the contractor, and we need one, as it looks like the work included shoring work, which is obviously non-protocol. Also, there were a number of non-protocol items submitted for reimbursement, including an air filtration system, replacement of the hot water heater and non-copper pipe, cabinet replacement and cabinet hardware, replacement of the bathtub, bathroom vanities, toilets, light fixtures, blinds, etc.

At this point, Moss can't evaluate the file because they can't weed out all of the soft costs/non-protocol items from the remediation expenses.

Feel free to give me a call to discuss if need be.

Garrett W. Thalgott
Frilot LLC
1100 Poydras St. Suite 3700
New Orleans, LA 70163
Direct – 504.599.8247
Fax – 504.619.4984

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee.  Please do not read, copy, or disseminate it unless
you are the addressee.  If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender.  Also, we would appreciate your forwarding the message back to us and
deleting it from your system.  Thank you.



HERMAN
HERMAN & KATZ
ATTORNEYS AT LAW
Est. 1942

820 O'Keefe Avenue
New Orleans, Louisiana
70113-1116

p: (504) 581-4892
f: (504) 561-6024
e: info@hhklawfirm.com

hhklawfirm.com

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Steven J. Lane
Leonard A. Davis*
James C. Klick[1]
Stephen J. Herman
Brian D. Katz
Soren E. Gisleson
Joseph E. Cain

Jennifer J. Greene[2]
John S. Creevy
Jeremy S. Epstein[1]
Aaron Z. Ahlquist[3]
Craig M. Robinson
Carl A. Woods
Adam H. Weintraub[4]
Mikalia M. Kott[5]

Of Counsel:
Herbert A. Cade
Morton H. Katz*
Joseph A. Kott, MD, JD

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP

* A Professional Law Corporation
[1] Also Admitted in Texas
[2] Also Admitted in Arkansas
[3] Also Admitted in Tennessee
[4] Also Admitted in New Jersey & Pennsylvania
[5] Also Admitted in Colorado

November 9, 2012

## *VIA ELECTRONIC MAIL*

Garrett Thalgott, Esq.
**Frilot, Partridge, Kohnke & Clements, LLC**
Suite 3600
1100 Poydras Street
New Orleans, LA 70163
gthalgott@frilot.com

      Re:    *In re: Chinese-Manufactured Drywall Products Liability Litigation*
              **MDL 2047**

Dear Garrett:

      Our clients, Ryan and Ashlin Reece, have reviewed your e-mail of September 20, 2012 and they have raised a number of issues and concerns. In an effort to expedite this process, each major issue is addressed below.

## **TOTAL REMEDIATION CLAIM**

      The total cost of remediation for the property was $152,606.89. The home is 2,250 square feet. The lump sum payment for a 2,250 square foot property is $19,125.00. Thus, the total remediation and lump sum claim for the Reece property is $171,731.89.

      **A.**      **Remediation Contractor and Electrician, Steve Gill**

1)      $95,728.71 was paid to the general contractor, Steve Gill. This sum includes gutting the home, replacement of all electrical, drywall, tile and trim and other finish work. Mr. Gill functioned in the same manner as the sub-contractor does to Moss and the electrical sub-contractor in the Knauf Pilot Program. The following check and invoice numbers correspond to these costs, and are attached together herein as Exhibit A.

November 9, 2012
PAGE 2

| | | |
|---|---|---|
| 1. | Check 710, 4/16/10 | $2,000.00 (The check is for $3,000.00 but only $2,000.00 of the work is compensable) |
| 2. | Check 717, 4/20/10 | $2,000.02 |
| 3. | Check 719, 4/26/10 | $3,000.04 |
| 4. | Check 720, 4/27/10 | $4,000.03 |
| 5. | Check 721, 4/28/10 | $4,000.05 |
| 6. | Check 725, 4/29/10 | $2,000.06 |
| 7. | Check 726, 4/30/10 | $4,000.07 |
| 8. | Check 727, 5/2/10 | $4,000.07 |
| 9. | Check 728, 5/2/10 | $4,000.08 |
| 10. | Check 729, 5/4/10 | $2,000.08 |
| 11. | Check 730, 5/4/10 | $2,000.09 |
| 12. | Check 767, 6/14/10 | $3,000.16 |
| 13. | Check 771, 6/19/10 | $4,000.17 |
| 14. | Check 783, 7/1/10 | $2,000.18 |
| 15. | Check 788, 7/7/10 | $3,000.19 |
| 16. | Check 789, 7/7/10 | $1,233.71 |
| 17. | Check 2383, 8/27/10 | $4,000.28 |
| 18. | Check 832, 8/10/10 | $3,000.21 |
| 19. | Check 833, 8/10/10 | $4,000.22 |
| 20. | Check 834, 8/12/10 | $3,000.23 |
| 21. | Check 851, 9/1/10 | $4,000.29 |
| 22. | Check 2353, 9/8/10 | $1,600.00 |
| 23. | Check 801, 9/8/10 | $2,500.01 |
| 24. | Check 869, 9/29/10 | $741.09 |
| 25. | Check 878, 10/2/10 | $1,200.00 |
| 26. | Check 880, 10/4/10 | $1,100.00 |
| 27. | Check 886, 10/9/10 | $1,800.00 |
| 28. | Check 887, 10/10/10 | $600.00 |
| 29. | Check 886, 10/9/10 | $1,800.00 |
| 30. | Check 878, 10/2/10 | $1,200.00 |
| 31. | Check 755, 6/7/10 | $1,000.11 |
| 32. | Check 750, 6/3/10 | $3,000.12 |
| 33. | Check 752, 6/4/10 | $2,000.13 |
| 34. | Check 754, 6/8/10 | $2,000.14 |
| 35. | Check 756, 6/9/10 | $3,000.15 |
| 36. | Check 815, 7/30/10 | $3,000.20 |
| 37. | Check 842, 8/21/10 | $2,000.26 |
| 38. | Check 843, 8/2/10 | $2,000.27 |
| 39. | House Plan Invoice (cash) | $950.00 |

November 9, 2012
PAGE 3

       **TOTAL TO STEVE GILL**      **$95,728.71**

**B.**    **Other Expenses Paid In Connection With The Remediation**

The following additional remediation expenses were incurred in addition to those expenses incurred by Steve Gill in connection with the remediation process. Payments for these additional expenses were made directly to vendors, instead of through Steve Gill. These additional items are compensable as remediation expenses incurred by the Reeces. These sums are documented by the following checks and invoices, and attached together herein as Exhibit B. Additional explanation is provided where necessary.

1. **Construction Permits**

    1. Jefferson Parish Permits and Inspection    **$442.00**

2. **Appliances**

    | | | |
    |---|---|---|
    | 1. | Sears Receipt delivery date 9/13/10 | $2,836.58 |
    | 2. | Sears Receipt delivery date 9/21/10 | $195.62 |
    | 3. | Lowes Receipt dated 10/17/10 | $602.58 |
    | | **TOTAL** | **$3,634.78** |

3. **Items from Floor Tile and Decor**

    | | | |
    |---|---|---|
    | 1. | Check 884, 10/9/10 | $56.46 |
    | 2. | Receipt dated 10/1/10 | $219.37 |
    | 3. | Receipt dated 9/22/10 | $241.09 |
    | 4. | Receipt | $2,355.90 |
    | | **TOTAL** | **$2,872.82** |

4. **Items from Lowes for replacement of lighting fixtures and construction items necessary to remediation**

    | | | |
    |---|---|---|
    | 1. | Receipt dated 10-17-10 | $123.28 |
    | 2. | Receipt dated 10-15-10 | $93.27 |
    | 3. | Receipt dated 10-15-10 | $131.03 |
    | 4. | Receipt dated 10-10-10 | $18.49 |
    | 5. | Receipt dated 10-14-10 | $1623.07 |
    | 6. | Receipt dated 09-02-10 | $581.48 |
    | 7. | Receipt dated 09-02-10 | $444.81 |
    | | **TOTAL** | **$3,015.43** |

November 9, 2012
PAGE 4

5. **Items from Home Depot for construction items necessary for remediation**

| | | |
|---|---|---|
| 1. | Receipt dated 10/23/10 | $118.01 |
| 2. | Receipt dated 10/9/10 | $43.66 |
| 3. | Receipt dated 10/5/10 | $54.35 |
| 4. | Receipt dated 9/30/10 | $375.31 |
| 5. | Receipt dated 9/29/10 | $86.96 |
| 6. | Receipt dated 9/19/10 | $276.18 (removed water) |
| 7. | Receipt dated 9/30/10 | $213.15 |
| 8. | Receipt dated 9/2/10 | $533.83 |
| 9. | Credit dated 10/1/10 | $(86.08) |
| 10. | Receipt dated 9/18/10 | $612.08 |
| 11. | Receipt dated 10/1/10 | $71.44 (removed water) |
| 12. | Invoice and receipt dated 7/23/10 | $437.14 |
| 13. | Invoice & receipt dated 10/5/10 | $431.76 |
| 14. | Invoice and receipt dated 8/7/10 | $1598.49 |
| 15. | Invoice dated 8/21/09 (carpet blower) | $31.10 |
| | **TOTAL** | **$4,797.38** |

6. **Cabinets and Vanities**

| | | |
|---|---|---|
| 1. | Check 859, 9/15/10 (Armstrong) | $3,511.99 |
| 2. | Invoice showing payment (Armstrong) | $3,400.00 |
| | TOTAL ARMSTRONG | $6,911.99 |
| 4. | Glass (doors) payment (Binswinger) | $59.99 |
| | TOTAL BINSWINGER | $59.99 |
| 5. | Check 864, 9/21/10 (Kings Marble) | $2,950.00 |
| 6. | Invoice 0385 payments (Kings Marble) | $2,300.00 |
| | TOTAL KINGS MARBLE | $5,250.00 |
| 7. | Receipt, 8/17/10 (Ikea handles) | $112.34 |
| | TOTAL IKEA | $112.34 |
| | **TOTAL CABINETS AND VANITIES** | **$12,334.32** |

Replacement cabinets were required in this remediation because the cabinets were damaged upon removal. Furthermore, Section IV(E), Page 32, of the *Hernandez* decision states, "As a practical matter, everything in front of the drywall in the Hernandez home, such as cabinets, trim, fixtures and bathroom porcelain, needs to be removed prior to removal of the drywall .... Removal of these items can damage even those items deemed worth salvaging ... **It is not worth the cost to attempt to remove, store, fixtures and replace these items, when it is likely that they will be damaged and when one considers the relatively low cost of these items.** Knauf's own proposed

November 9, 2012
PAGE 5

remediation protocol calls for the replacement of items damaged during remediation .... **Accordingly, these items must also be replaced.**" The Reeces began remediation in 2010, before any established protocol was published. Knauf did not participate in the Reece's remediation of their home. Knauf did not provide any guidance to the Reeces. The only guidance at that time was provided by Judge Fallon in the *Hernandez* opinion. The Reece's choice was more than reasonable and followed *Hernandez*.

7. **Doors (Renaissance Doors)**

| | |
|---|---|
| 1. Visa Receipt dated 8/12/10 | $1,000.00 |
| 2. Visa Receipt dated 9/1/10 | $808.92 |
| **TOTAL** | **$1,808.92** |

8. **Speaker Equipment**

| | | |
|---|---|---|
| 1. | High Tech Receipt dated 9/14/10 | **$625.31** |

The speaker equipment wiring was corroded and damaged as a result of the Chinese Drywall. Judge Fallon's *Hernandez* decision provides some guidance with respect to electrical devices. Section IV(D), at Pages 31-32 of the opinion, states "Mechanical, electrical and electronic failures in the Hernandez home have been shown to occur prematurely, and are predicted to continue to do so, due to the severe corrosive environment created by the Chinese drywall in the home .... The corrosion on these items which increases resistance, can lead to fires or other life safety problems ...The circuit boards in appliance and electrical devices would suffer from the corrosion cannot be practically cleaned of the corrosion .... Even if there existed a method of cleaning circuit boards of corrosion, the damage already caused by the corrosion remains a problem .... **Accordingly, Plaintiffs' appliances and consumer electronics damaged by Chinese drywall must be disposed of and replaced.**" Based upon Judge Fallon's guidance in *Hernandez*, this is a reimbursable cost.

C. **HVAC Sub-Contractor, B2L Experts**

The following expenses were incurred for the HVAC system as part of the remediation process. These sums are documented by the following checks and invoices, and are attached together herein as Exhibit C:

| | | |
|---|---|---|
| 1. | Check 757, 6/10/10 | $3,000.00 |
| 2. | Check 829, 8/6/10 | $9,000.00 |
| 3. | Invoice showing additional payment | $500.00 |
| 3. | Invoice for air filtration system | $3,000.00 |
| | **TOTAL** | **$15,500.00** |

November 9, 2012
PAGE 6

The entire HVAC system was replaced. This is replaced in the KPT Pilot Program, and is also supported in the *Hernandez* decision. Section IV©, at Page 30, of the *Hernandez* decision states, in pertinent part, "Because the HVAC system in the Hernandez home relies heavily upon copper and silver components, it has been compromised by Chinese drywall in the home **** The entire air-handling unit must be removed and replaced **** Replacement of the outside condenser is necessary to ensure the efficiency of the HVAC system with the new air-handling unit." The entire HVAC was replaced, and this expenditure is compensable.

Your email indicates that the air filtration feature is a non-protocol item. We disagree. The KPT Pilot Program remediation protocol calls for the replacement of "like for like" items. The air filtration system was purchased in March, 2010, as an effort to mitigate the problems that the Reece family was experiencing in the home. Of primary concern, the Reece's daughter, Vivian, suffered from asthma and the air filtration system was added in an attempt to stay in the home prior to remediation. The additional system failed to prevent the problems. This air filtration system was installed prior to remediation, necessitated by the presence of the KPT Chinese Drywall. "Like for like" replacement includes the air filtration system and the $3,000 cost is therefore compensable as part of the HVAC system under *Hernandez*.

### D.     Plumbing and Gas Sub-Contractor, Joe LeBlanc and Coburns

The following remediation expenses were incurred for the plumbing and gas system as part of the remediation process. These sums are documented by the following checks and invoices, and are attached together herein as Exhibit D:

**PAYMENTS MADE TO JOE LEBLANC:**

| | | |
|---|---|---|
| 1. | Check 777, 6/25/10 | $1,818.47 |
| 2. | Check 787, 7/2/10 | $2,500.00 |
| 3. | Check 793, 8/24/10 | $2,788.00 |
| | **TOTAL PAYMENTS TO JOE LEBLANC** | **$7,106.47** |

**PAYMENTS MADE DIRECTLY TO COBURNS:**

| | | |
|---|---|---|
| 1. | Coburns, Phone Order Visa Receipts Dated 8/18/10 | $2,142.07 |
| 2. | 10/25/10 | $1,187.58 |
| 3. | 10/22/10 | $622.92 |
| 4. | 7/30/10 | $307.01 |
| 5. | 8/23/10 | $68.76 |
| 6. | 8/23/10 | $66.53 |
| 7. | 8/23/10 | $345.88 |

November 9, 2012
PAGE 7

| | |
|---|---|
| **TOTAL PAYMENTS CASH TO COBURNS** | **$4,740.75** |
| **TOTAL PAYMENTS FOR PLUMBING** | **$11,847.22** |

Your email notes that non-copper pipe was replaced. *Hernandez* clearly calls for the replacement of all copper plumbing in the property, as does the KPT Pilot Program remediation protocol. The plumbing sub-contractor replaced all copper pipe in the house and installed all associated fixtures. There was no non-copper pipe in the property. We do not understand why your email notes otherwise. The full amount of $11,847.22 is compensable.

## SHORING WORK

Your email indicates that Moss feels that shoring work is included in the work done by the general contractor, Steve Gill. This is not correct. The shoring work was done by Cable Lock, a local company which specializes in shoring work, for a cost of $31,200.00. Please see the attached invoice and certificate of completion, attached as Exhibit E. This is not included in the cost of remediation and Knauf is not expected to reimburse the Reece family for this item.

## CONCLUSION

The Reeces have provided all relevant and necessary documentation to resolve this matter. The Reeces would like to get this matter concluded and get it behind them, which includes signing a settlement and release. **Based upon this, the total amount due to the Reeces should be $171,731.89.**

I am happy to discuss these matters with you, and hopefully we can resolve this matter promptly.

Sincerely,

JEREMY S. EPSTEIN, ESQ.

cc: Leonard A. Davis, Esq.
    Ryan and Ashlin Reece

Attachments