UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
                            NEW ORLEANS


IN RE:  CHINESE MANUFACTURED        CIVIL ACTION
        DRYWALL PRODUCTS
        LIABILITY LITIGATION        NO. 09-MD-2047

This Document Relates to All Cases  NEW ORLEANS, LOUISIANA

                                    THURSDAY, AUGUST 12, 2010

                                    9:16 A.M.

            STATUS CONFERENCE AND VARIOUS MOTIONS
          BEFORE THE HONORABLE ELDON E.FALLON
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLC:                HERMAN, HERMAN KATZ & COTLAR, LLP
                            BY:  RUSS M. HERMAN
                                 LEONARD A. DAVIS
                            820 O'Keefe Avenue
                            New Orleans, Louisiana  70113
                            Telephone:  (504) 581-4892

FOR THE DLC:                FRILOT, LLC
                            BY:  KERRY J. MILLER
                            1100 Poydras Street, Suite 3700
                            New Orleans, Louisiana 70163
                            Telephone:  (504) 599-8000

FOR STATE LIAISON
COMMITTEE:                  BARRIOS, KINGSDORF & CASTEIX
                            BY:  DAWN BARRIOS
                            701 Poydras Street
                            New Orleans, Louisiana  70130
                            Telephone:  (504) 524-3300

FOR THE INSURER STEERING    BARRASSO, USDIN, KUPPERMAN,
COMMITTEE:                  FREEMAN & SARVER
                            BY:  JUDY W. BARRASSO
                            909 Poydras Street
                            New Orleans, Louisiana  70112
                            Telephone:  (504) 589-9700

```
 1                        (APPEARANCES CONTINUED)
 2
    FOR KNAUF:                   KAYE SCHOLER
 3                               STEVE GLICKSTEIN
                                 425 Park Avenue
 4                               New York, New York  10022
                                 Telephone:  (212) 836-8000
 5
    FOR PLAINTIFFS' STEERING
 6  COMMITTEE:                   ARNOLD LEVIN
                                 510 Walnut Street
 7                               Philadelphia, PA  19106
                                 Telephone:  (215) 592-1500
 8
    FOR HOMEBUILDERS:            SIVYER BARLOW & WATSON
 9                               BY:  _NEAL SIVYER
                                 401 E. Jackson Street, Suite 2225
10                               Tampa, Florida  33602
                                 Telephone:  (813) 221-4242
11
    FOR THE HOMEBUILDERS         STONE, PIGMAN, WALTHER
12  STEERING COMMITTEE:          & WHITTMANN
                                 BY:  Phillip WHITTMANN
13                               546 Carondelet Street
                                 New Orleans, Louisiana  70130
14                               Telephone:  (504) 581-3200

15  FOR THE MITCHELL COMPANY:    CUNNINGHAM BOUNDS, LLC
                                 BY:  _STEVE NICHOLAS
16                               1601 Dauphin Street
                                 Mobile, Alabama  36604
17                               Telephone:  (251) 471-6191

18  FOR STANDARD FIRE INSURANCE: LUGENBUHL, WHEATON, PECK
                                 BY:  RALPH HUBBARD
19                               4313 Bluebonnet Boulevard
                                 Suite B
20                               Baton Rouge, Louisiana  70809
                                 Telephone:  (504) 568-1990
21
    FOR AIS LLOYDS:              CHOPIN, WAGAR, RICHARD & KUTCHER
22                               BY:  JASON FOOTE
                                 3850 N. Causeway Boulevard
23                               Suite 900
                                 Metairie, Louisiana  70002
24                               Telephone:  (504) 830-3838

25
```

```
1   REPORTED BY:                    David A. Zarek
                                    Hale Boggs Building
2                                   500 Poydras Street, Room 406
                                    New Orleans, Louisiana 70130
3                                   Telephone:  (504) 523-6062

4   Proceedings recorded by mechanical stenography.
    Transcript produced by computer-aided transcription.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2                     MORNING SESSION

 3                 (THURSDAY, AUGUST 12, 2010)

 4                (COURT CONVENED AT 9:16 A.M.)

 5          THE COURT:  Be seated.  Good morning, ladies and

 6   gentlemen.  Call the case.

 7          DEPUTY LAMBERT:  MDL No. 2047, In Re:  Chinese

 8   Drywall.

 9          THE COURT:  Counsel, make your appearances for the

10   record, please.

11          MR. HERMAN:  May it please the Court, good morning,

12   Judge Fallon.  Russ Herman for plaintiffs.

13          MR. MILLER:  And Kerry Miller on behalf of the

14   defense here this morning.

15          MR. WHITMAN:  Phillip Whittmann, on behalf of the

16   Homebuilders Steering Committee.

17          THE COURT:  We are here today for our monthly status

18   conference.  Those who are speaking please use the microphone.

19   In addition to the full house, we have several hundred people

20   on the phone, and I am trying to coordinate with them.

21          Let me make a couple of announcements.  As you know,

22   we have tried or we have disposed of over ten cases in this

23   matter.  We have had two trials in Louisiana.  The plaintiffs

24   picked the first cases to be tried, and then the defendant,

25   Knauf, picked the next cases to be tried.  I told the
```

1    homebuilders that they would be third up.  So now we move into

2    the homebuilders.  I will be meeting with the homebuilders and

3    Bather Supply and Interior/Exterior to pick some dates.

4    Hopefully we can have trials in those cases in the fall

5    sometime, October or thereabouts.

6           My hope is that we are able to pick representative

7    cases.  We are at the point now where I can try five or six at

8    the same time, and we can move on the cases.  It would be

9    helpful, I think, to have a jury's input in those cases.  And I

10   hope to get that moving.

11          I have also encouraged the plaintiffs with regard to

12   the defendants against whom they have tried cases to get

13   together and see whether or not the information that they are

14   receiving from those trials are helpful to them in achieving

15   some formal resolution.  They have a mediation set in a couple

16   of weeks, and it looks to me like the discussions have reached

17   a point that hopefully mediation can be very meaningful, and we

18   can go into the end game at least for some of these defendants.

19   So I am anxious to see whether we can proceed in that way.

20          Okay, I have received from the parties a proposed

21   agenda.  I met with the lead counsel and liaison counsel to go

22   over it with them.  I have some 16 motions filed in this

23   meeting.  I won't need oral argument on all of them.  I have

24   gotten very good briefing from the individuals involved, and I

25   will be ready to rule on a number of motions.  I will need oral

1    argument on some that I haven't reached a conclusion on yet,

2    but we will do that after the meeting.  Pretrial order,

3    anything?

4             MR. HERMAN:  No, Your Honor.

5             THE COURT:  How about property inspections, the

6    second item?

7             MR. HERMAN:  Jim Reeves, on behalf of the PCF and the

8    defendants inspected properties at the Habitat for Humanity in

9    New Orleans yesterday.  Other than that, no property inspection

10   issues.

11            THE COURT:  Anything from the defense?

12            MR. MILLER:  May I mention on these first a couple of

13   issues.  The only thing I need to mention is that some

14   requested changes on the defense steering committee, some

15   motions have been filed taking some off, adding some people on.

16   So we have some new membership there.

17            THE COURT:  Okay.  How about plaintiff and defendant

18   profile forms?

19            MR. HERMAN:  Your Honor, just for the record I want

20   to indicate PTO's 14, 21, 23, Document 31, 58, all relate to

21   plaintiff and defendant responsibilities for profile forms.

22   Plaintiffs have 40 days from the filing of a complaint to file

23   profile forms.  The defendants have 40 days following service

24   to file profile forms.

25            MR. MILLER:  Yes, Your Honor.  On the issue of

1    profile forms, there has been a pretty extensive analysis, at

2    least on behalf of my client, of some of the profile forms that

3    Mr. Herman and Mr. Levin are maintaining and very strenuously

4    opening up their office in the back of documentation.  So we

5    thank them for that.  We are going to get back with them

6    tomorrow in a letter identifying some of the issues that we

7    have seen in these profile forms.  So there will be some

8    activity analyzing these claims, seeing if some belong in the

9    litigation and some don't belong in the litigation and so

10   forth.

11          THE COURT:  Okay, I think profile forms in general

12   are very helpful.  It is a way of expediting discovery.  In

13   this particular case it is even more helpful than usual,

14   because we are at the point where disclosure of issues can help

15   resolve the case in an efficient and effective manner.  So I do

16   urge counsel to focus on the profile form.  I know we have a

17   number of defendants, different defendants.  So we have to

18   tweak the profile form for those defendants sometimes, because

19   some aspects of the profile form that builders, that

20   manufacturers have to answer are not relevant to installers or

21   others.  But I am willing to do that.  But I am a believer in

22   the significance of the profile form.  Preservation order,

23   anything on that?

24          MR. HERMAN:  May it please Your Honor, there is

25   nothing new as to a preservation order.  Separate federal

1    courts -- Dawn Barrios is here, and while she is coming

2    forward, I do want to mention again the website, the Court's

3    website in which pretrial orders and transcripts of the status

4    conferences are posted:   www.laed.uscourts.gov.   And that can

5    be linked directly to "Drywall MDL".

6          MS. BARRIOS:   Thank you.   Good morning, Dawn Barrios

7    for State Liaison Committee.   I'm going to present Lexy Butler

8    and the Court as well as the parties with a new CD that shows

9    all the cases transferred, particularly the jurors'

10   information, contact information.   We have been updating that.

11   There have been no new cases transferred here.   There are two

12   new remanded motions, and I wanted to report that.   Mr. Davis

13   and Mr. Duplantier have been working together very diligently

14   on coordinating the discovery depositions from Alabama State

15   Court on Interior/Exterior.

16          THE COURT:   Okay, I talked to the Judge from

17   Virginia, and she has set some trials in the fall.

18          MS. BARRIOS:   Yes, Your Honor.

19          MR. HERMAN:   Your Honor, with regard to trial

20   settings which Your Honor has spoken to which are listed at VI,

21   page 5 of the status conference report, I just want to indicate

22   verbally that Harrell v. Banner, before the Honorable Farina in

23   Miami was set for September 14, 2010.   I understand now that

24   there is a probability it will be moved to October 2010 in

25   Norfolk.   Honorable Judge Cass has set trials to begin -- I'm

1    sorry, Honorable Judge Hall has set trials to begin, 19 of

2    them, beginning January 8, 2011.

3              THE COURT:  Judge Hall and Judge Farina and I and

4    several other Judges, and there may be some on the phone,

5    because I have invited them to monitor the conversation, we

6    have been sensitive to the trial dates of each of us, and each

7    have been trying to not have them conflict.  So when Judge

8    Farina sets a case for trial, then I stay away from those

9    dates.  And the same way with Judge Hall, I don't want to

10   interfere with her trials.  And we use a lot of the same

11   exhibits, and we are in touch with each other on how

12   efficiently to do this.  I am very happy and very appreciative

13   of all of the help that I have gotten from these two

14   outstanding Judges.

15             MR. HERMAN:  Your Honor, the next matter are motions

16   in the MDL.  As liaison for all parties and lead for all

17   parties, I understand Your Honor has some rulings regarding

18   motions.  And there will be a motion number listed in the

19   pretrial order, Motion No. 12 in the pretrial order, and I

20   believe some insurance motions.  Your Honor has directed that

21   those be argued following the status conference but on the

22   record.

23             THE COURT:  Right.

24             MR. HERMAN:  With regard to our discovery issues,

25   Your Honor, discovery for Knauf Gips 30(B)(6) deposition is set

1    at Kay Scholer's New York City office, and there is a notice

2    that has been filed.  Arrangements have been made for folks to

3    call in.  These are set in New York this month, on August 18th

4    and 19th.  And additional dates, September 20th and September

5    21st, have been scheduled.

6            With regard to Knauf USA, those depositions will be

7    set in New Orleans at liaison Kerry Miller's office on

8    September 27th and 28th.

9            THE COURT:  It is important for the depositions, and

10   that's one of the things that I have worked with the state

11   court so that you can coordinate those depositions.  If

12   anybody, when you take the depositions, let's take them for

13   this proceeding, but also allow that they be used or can be

14   used in state court so that we don't have to re-take those

15   depositions when my colleagues get ready to try their cases in

16   state court.  So let's keep that in mind.  And Dawn, you keep a

17   handle on this.

18           MS. BARRIOS:  Yes, Your Honor.

19           THE COURT:  Freedom of Information Act, any public

20   records?

21           MR. HERMAN:  Nothing new, Your Honor.

22           THE COURT:  Okay, trial setting.  As I mentioned, I

23   am going to be meeting with Banner and Interior/Exterior and

24   the builders and take some cases and hopefully try them

25   sometime in October, if not sooner.

1          Filings in the MDL, anything on that?

2          MR. HERMAN:  With regard to the trial settings, Your

3  Honor, I'd like to make reference here that the <u>Hernandez</u>

4  motions are being deferred, and I believe Your Honor has

5  already determined the Taishan Bond issue.

6          THE COURT:  Notices of appearance and default

7  judgments, anything there?

8          MR. HERMAN:  No issue on that, Your Honor.

9          THE COURT:  Anything on insurance issues?

10         MR. HERMAN:  Attorney Judy Barrasso, who is lead for

11  Insurers' types of motions, it regards homeowners' motions or

12  other motions regarding CGL insurance, Hugh Lambert will argue

13  for plaintiffs, as well as one of its partners.

14         THE COURT:  Okay, are these motions that are set for

15  today?

16         MS. BARRASSO:  The motions that Mr. Herman is

17  referring to are actually set for September 2nd.  The

18  Homeowners' motions to dismiss are set for September 2nd, and

19  the CGL motions regarding jurisdiction is set for November 3rd.

20  Today's motions that are set are two motions by the plaintiffs

21  to dismiss.

22         THE COURT:  Right, right.  And I will take those at

23  the end of the conference.  Service of pleadings electronically

24  is the next item.  Anything on that?

25         MR. HERMAN:  No, Your Honor.

1          THE COURT:  How about the master complaint?

2          MR. HERMAN:  Deferring on that.  We are working on

3     it.

4          THE COURT:  All right, class action complaint,

5     anything?

6          MR. HERMAN:  Arnold Levin, lead counsel for

7     plaintiff.

8          MR. LEVIN:  There is one set at the last conference,

9     and Your Honor, we do have a motion to intervene pending.  You

10    have ruled on one with regard to Wiltz.  We have deferred the

11    motions to intervene with regard to Knauf, which are three.

12         THE COURT:  Okay, and omnibus class while you are up.

13         MR. LEVIN:  Keeps rolling along, Your Honor.  And the

14    biggest problem is service.

15         THE COURT:  Yes.

16         MR. LEVIN:  When you get to the journey, it gets, it

17    is like a pinball machine.  It tilts.  If there is a period

18    missing from a defendant's name, it is rejected, and you start

19    all over again.  And you have to translate these complaints,

20    and it is a horrendous problem.  And it is very costly.  And

21    the Plaintiffs Steering Committee is prepared to pay whatever

22    costs it takes to effectuate service for every plaintiff in

23    this litigation.

24         THE COURT:  Yes, that's something that we have got to

25    focus on one time, because you have announced the time.  But

1   everybody ought to recognize that the service is and will be

2   made.  It is just going to increase the cost, and the cost is

3   eventually shifted to the person who loses the case or wants to

4   settle the case.  So the plaintiffs are spending six figures

5   trying to get service.  That's money that could be used to

6   resolve the case.  But requiring the plaintiffs to put that

7   money up is counter productive, it is not helpful.  We ought to

8   talk about the money.  It is in excess of $660,000.00 to date.

9   And look at what I have on the docket.  It is probably another

10  $2,000,000.00 to effectuate this service.  My feeling is, that

11  kind of money can better be utilized.  We are not at the end of

12  the game yet, but we are rapidly approaching it.  And I think

13  that that ought to be taken into consideration at this time.

14  We have gotten enough trials that can give everybody an

15  opportunity to see what's happening.

16          MR. HERMAN:  May it please the Court, sometimes I

17  have to interpret for my brother from Philadelphia in New

18  Orleans language.  In the words of the song, me and you, we

19  sweat and strain, but the Mississippi just keeps rolling along.

20          MR. LEVIN:  I won't quote Rocky Balboa at this time.

21  I have got several quotes.

22          THE COURT:  How about Special Master, anything?

23          MR. HERMAN:  We have nothing new to report.  It might

24  be appropriate for Your Honor to at this juncture to bring us

25  up-to-date on the scheduled mediation.

1          THE COURT:  Yes, as I mentioned at the outset, I have

2     encouraged the parties to look at that matter globally.  And

3     Knauf and the plaintiffs' committee have done so, and they have

4     scheduled after a number of meetings, they have scheduled

5     mediation in the near future and hopefully, that can get some

6     resolution to this matter.

7          MR. MILLER:  We have a mediation scheduled on August

8     24th.  I am going to host at my house John Kerry to proceed as a

9     mediator, who has done some work in this case before.  And it

10    is a 5- or 6-way mediation.  The PLC is going to be there, my

11    client, Knauf's entities are going to be there.  We are going

12    to have some suppliers.  We are going to have builders.  We are

13    going to have some insurers.  I think all of the defense

14    participants need to, at least have agreed to come.  John Kerry

15    has made it clear that everyone needs to come with their client

16    rep, and they need to come with authority so this is not a get-

17    to-know you kind of mediation session.  It is supposed to be

18    real mediation with a real mediator to work until midnight

19    under the order so that we have setup --

20         THE COURT:  The important thing from the Court's

21    standpoint is that -- I have been monitoring this action, and I

22    have been participating in these matters, and I am very hopeful

23    that there will be a successful mediation.  But everyone has to

24    recognize that I want it done in an organized fashion.  And I

25    don't expect plaintiffs to try to do a side and end run to get

 1    their case resolved.  We are going to go through the mediation,

 2    going through the group effort.  That's where everybody is

 3    going to profit, by going through the group effort and not

 4    individual effort.  That's the advantage of trying to argue

 5    something like that.  You are stronger as a group and that's a

 6    significant message that I want to impart to you.  I would hope

 7    that the defendants would recognize that and not try to talk to

 8    individuals.  Let's talk to the group.

 9            MR. MILLER:  And again, Your Honor, it is supposed to

10    be a serious session.  We had met with John I think a week ago

11    today.  He came in my office, and Mr. Levin and Mr. Duplantier

12    and others were there, and this is serious -- not a session

13    let's sit and gather facts or evidence.  We got to have the

14    client rep, and you got to have authority.  So, no, this is a

15    serious session.

16            THE COURT:  Great, okay.  Thank you very much.  And

17    thanks to both of you all.  Knauf Gips personal jurisdiction

18    matter, anything on that?

19            MR. HERMAN:  Yes, Your Honor.  I have already, I

20    think an earlier section on discovery given the dates Knauf

21    Gips discovery in New York and in Knauf USA in New Orleans.

22            THE COURT:  706 database?

23            MR. HERMAN:  I believe, Your Honor, in terms of

24    insurance we have updated the database, and I believe it has

25    been provided to the Court or jointly.

1      With regard to a couple of discovery issues, Your

2  Honor, I just might mention that some agreement for extension

3  of production of documents and requests for admissions have

4  been granted.

5      With respect to Item 21, again, the Court's website

6  has placed a list of the frequent asked questions and answers

7  can be found at

8  www.laed.uscourts.gov/drywall.gov/drywall/faq.htm.  I will say

9  again, www.laed.uscourts.gov/drywall/faq.htm.

10      THE COURT:  And the easy thing to do is to go into

11  the Court's website and then click on drywall, or the drywall

12  page comes up, the page comes up.  You can see on the top the

13  various topics, and one of them is frequently asked questions.

14  Click on that and you get directly asked questions.

15      MR. HERMAN:  Your Honor, the next matter on Your

16  Honor's docket, matters set for hearing will follow the status

17  conference.

18      THE COURT:  Right.

19      The next status conference in this matter will be on

20  September the 16th, September the 16th at 9:00.  I will meet

21  with the parties as I have traditionally done at 8:30.

22      Warehouse inspections, anything on that?

23      MR. HERMAN:  Yes.  As I indicated yesterday, Habitat

24  for Humanity's house in the City of New Orleans which were

25  built following Katrina were inspected yesterday.  The PLC

1    representative was Jim Reeves.

2            THE COURT:  Okay.

3            MR. HERMAN:  Your Honor, there is one matter not on

4    here, and it relates to a Lowe's, Lowe's potential settlement

5    in Georgia.  I haven't had a chance to speak with Mr. Gaudet.

6    I believe he is in Court.

7                        (GENTLEMAN STANDS)

8            THE COURT:  We will talk following the status

9    conference.

10           MR. HERMAN:  Okay.  Mr. Penley is also here.  I think

11   I saw Mr. Penley.

12           THE COURT:  I am particularly interested in whether

13   or not any settlement by a state court interferes in any way

14   with the MDL.  If it does, then I am going to have to take a

15   close look at whether or not it is important and necessary to

16   issue an injunction to stop matters from interfering with the

17   MDL.  So I am very conscious of that, and I will do so.

18           I have before me, and I will take a break before we

19   orally argue it, but I have before me some 16 motions.  The

20   plaintiffs and the defendants and the interested parties in

21   those motions have supplied me with excellent briefs, and I

22   have been able to resolve some of the motions without oral

23   argument.

24           The first motion is the PSC's Motion Restricting

25   Communications with Putative Class Members.  I will hear oral

1    argument on that when I come back.

2              The Motion to Intervene as Plaintiffs in the Payton

3    case.  That's record document number 4346.  The parties wish me

4    to pass that motion, so I will pass it at this time.

5              Motion to Intervene as Plaintiff in Wiltz, record

6    document number 4347.  I am asked to pass that matter.  I will

7    pass it.

8              MR. LEVIN:  Your Honor, that's a non-Knauf unopposed

9    motion.

10             THE COURT:  That is an unopposed motion.  Any

11   opposition on that one, their motion to intervene?

12             MR. GLICKSTEIN:  Yes, Judge, but we wanted to clear

13   that one.  The stays have been lifted as to that motion.

14             THE COURT:  You asked me to pass it because you wish

15   to have an opportunity to speak on that?  I will pass this at

16   this point, at this time.  I will set it for the next time.

17             Motion to Intervene as Plaintiffs in Rogers, record

18   document number 4349.  That one I have been asked to pass also,

19   is that right?

20             MR. LEVIN:  Yes, sir.

21             THE COURT:  So I will pass it.

22             Motion to Intervene as Plaintiffs in Gross, record

23   document number 4350.

24             MR. LEVIN:  That can be passed, Your Honor.

25             THE COURT:  Okay, I will pass that one.

1          The sixth matter, Germano, plaintiff's Motion to

2    Impose Bond Requirement on Taishan, record document number

3    4356, Taishan has entered the matter.  Now I have issued a

4    judgment against them for several million dollars.  On the last

5    day they have appealed that ruling, so it is presently at the

6    Fifth Circuit.  The plaintiffs wish to have a cost bond.  They

7    take the position that Taishan is a foreign entity.  They have

8    had some difficulty getting their attention, and they are

9    concerned that they will be left, the plaintiffs will be left

10   with some substantial costs in the appeal bond, and they feel

11   that the appeal bond is in order.  They wish $25,000.00 to be

12   set as a bond.

13         Taishan takes the position that they are serious --

14   they will be here, and they like New Orleans, and will be here

15   for a while.  And they have -- no bond is necessary.  I feel

16   that a bond is necessary.  I will grant the plaintiffs' motion

17   to set the bond at $5,000.00.

18         VII, Rule 6(b), Motion for Extension of Time for

19   Service of Process Under Rule 4(m) in Wiltz, record document

20   number 4385.  I am going to grant that motion.  The plaintiffs

21   are attempting to serve under the Hague.  They have to

22   translate a long pleading with a lot of attachments into

23   Chinese and other languages, and this takes time.  They need

24   more time.  I think it is reasonable, and I will grant them

25   time.

1        Record document PSC's Rule 6(b), Motion for Extension

2  of Time for Service of Process under Rule 4(m) in Rogers,

3  record document number 4387.   Likewise, they need more time for

4  the same reason.   I will grant them more time.   The defendants

5  oppose that motion as citing pretrial order number 17.

6  Pretrial order number 17, as I see it, is restricted to the

7  Payton case, and should not bleed over into other cases.   So I

8  will grant the motion for an extension of time.

9        The next motion, plaintiff's Rule 6(b), Motion for

10  Extension of Time for Service of Process in Gross, record

11  document number 4388, also seeks an extension of time.   For the

12  same reasons the Court grants it.

13        Plaintiffs' Steering Committee's Rule 6(b), Motion

14  for Extension of Time for Service of Process in the Amato,

15  record document 4443 also requesting an extension of time.   For

16  the same reason the Court grants it.

17        There is a motion to Establish Plaintiffs' Litigation

18  Expense Fund to Compensate and Reimburse Attorneys for Services

19  Performed and Expenses Incurred for the MDL Administration and

20  Common Benefits, record document 4603.   This is a matter that

21  we see in cases of this sort.   Work has to be done.

22  Considerable expense has to be incurred, and somebody has to do

23  it, and somebody has to put up the money.   I establish

24  committees for that purpose.   I expect them to do the work in a

25  professional manner, and I expect them to put up the money.

1   And that's needed to resolve the case.  So at the appropriate

2   time I consider what is fair for their common benefit work,

3   because they do do work that is of benefit to everyone.  And I

4   take that into consideration.  But this motion at this time I

5   will pass at the request of counsel.

6           Next is Plaintiffs' Motion for Sanction and to Compel

7   Production of Knauf Defendant Documents, record document 4754.

8   And we need some oral argument on this when I return.  I read

9   the briefs, and this is two ships passing in the night.  One

10  person says, one brief says, you didn't give it to me; the

11  other brief says, yes, we did.  And so I want to hear a little

12  more discussion on that.

13          The next motion is Plaintiffs' Motion to Lift the

14  Stay as to Various Pending Motions.  It is record document

15  4946.  I will talk to you all about that when I return.  I just

16  want to understand what issues we are dealing with and what

17  motions we are dealing with.

18          The Mitchell Company's Motion to Lift Stay as to the

19  Pending Class Certification Actions, I will also talk with you

20  about that one.

21          Plaintiffs' Motion to Dismiss Defendant ASI Lloyds

22  Without Prejudice, and Plaintiffs' Motion to Dismiss Defendant

23  Standard Fire Insurance Company Without Prejudice, that's

24  opposed.  The insurance companies agree that they should be

25  dismissed.  They just want to be dismissed with prejudice and

 1   not without prejudice.  And they want the issue tied up now.

 2   There have been some cases that the insurance companies like

 3   what was said in those cases and feel that now is the

 4   appropriate time for this Court to focus on it.

 5          The plaintiffs take the opposite view, but I will

 6   hear from the parties as they express themselves a little

 7   better.

 8          I will take a 10-minute break at this time and return

 9   and deal with those motions.  Court will stand in recess.

10               (THE COURT RECESSED AT 9:50 A.M.,

11            AND THEN THE COURT RECONVENED AT 10:02 A.M.)

12          THE COURT:  Be seated, please.  I am taking motions

13   up for oral argument.  The first motion is the motion

14   Restricting Communications with Putative Class Members, record

15   document 4338.  The moving party?

16          MR. LEVIN:  Arnold Levin from the Steering Committee.

17   We have been through this before.  The Court has been through

18   it in Murphy Oil, and the terrain is always changing.  Right

19   now we have contact with absent class members.  There is no

20   certified class dealing with settlement.  And we seek only in

21   our proposed notice that those that contact them advise them of

22   the Germano and Hernandez verdicts, Your Honor's findings so

23   that the poor souls have the information that this Court and

24   everybody in this room has, and it is not being withheld from

25   them.  We have invested a lot of time to achieve those results,

1   and the Court has invested a lot of time even in the default

2   judgment to evaluate the case and evaluate what it costs to

3   remediate.  And for that reason we feel at the present time

4   that it is necessary to exercise Rule 23(b) and have a

5   prophylactic order entered, scout's honor, that those who speak

6   to the homeowners give them the Court order.  And then they can

7   do what they want to do.  We are not restricting settlements in

8   this case.  All we are doing is creating an even playing field.

9        This is not unusual.  In Murphy Oil, a motion was

10  brought, and the plaintiffs said, stop, as I understand it,

11  stop them from settling with our clients.  And I think Your

12  Honor was negative on that.  But Your Honor did say they have

13  to tell them certain things, like you can get an attorney, you

14  can do this, you can do that.

15       In this particular case, we want them to be told of

16  the verdicts, what the costs are involved, what a Court has

17  found, the Court who has invested a lot of time and effort has

18  found, what the Court has found to be the proper science, the

19  proper approach to remediation, having ruled on Daubert

20  motions.  And that's simply all that we want.

21       And the fact that the class is not certified does not

22  restrict the Court's supervisory power to effectuate a notice.

23  It has been done in the Kliner case.  That's the grand case of

24  it all in the Third Circuit.  We had it done in the School

25  Direction asbestos.  It has been done in the Pyrus Paint.  It

1   has been done over, and over, and over again, and the kinds of

2   mischief that occurs out there is all you have to do is look at

3   the Georgia settlement, and that's just another effort that if

4   the market place of homeowners who have been impacted by

5   Chinese Drywall does not have the knowledge, they can end up

6   with a smart card for $50.00.

7        THE COURT:  They take the position, though, that

8   under the prior Court orders, the homeowners are directed to

9   the Court's website, and that all of this information is on the

10   Court's website.  How do you respond to that?

11        MR. LEVIN:  It is not enough.  I mean, the homeowner

12   could be me with the website.  They should be given the

13   information, because at this point in time the website is not

14   enough.  Because people do not take the time and effort to get

15   it from the website.  And if it is on the website and available

16   to the homeowner, then the defendants who have objected to this

17   should not have any problem with the same thing being handed to

18   the homeowner, a piece of paper and a Court notice.  The fact

19   that they don't want that to happen is proof positive that they

20   know that most homeowners will not go to the website.

21        Now, at this point in time it is different than the

22   last point in time, as I said.  And I will sit down if the

23   Court has no questions, because now we have findings of this

24   Court that are relevant and that the homeowners should know.

25        THE COURT:  Okay, let me hear from your opponent.

1          MR. SIVYER:  Good morning.  Neal Sivyer for the

2    homebuilders.  As the Court has pointed out in its questioning,

3    we have done exactly what you ordered us to do, and we have

4    done exactly what the prior Federal Judges who have considered

5    similar motions have required us to do.  Your Honor, there has

6    to be for you to enter an order precluding our communications,

7    which is actually what they have asked for in their motion,

8    their motion is much broader than the relief that has been

9    requested this morning.  And what they have asked for is to

10   restrict communications with homeowners before a class is

11   certified, which is contrary to the Gulf Oil ruling in U.S.

12   District Court, contrary to Rule 23 and contrary to your local

13   rule.

14          Your Honor, the object here in this case is to get

15   homes repaired.  Lots of people out there want to get their

16   homes fixed.  They get paid for their relocation expenses.

17   They get paid for their personal property, and the homes are

18   fixed.  They really want to do it that way, rather than to go

19   through a group of lawyers and a trial.  In Florida, we have a

20   procedure, Chapter 558, which mandates that, and we have

21   followed that.  And, Your Honor, in order for you to enter an

22   order precluding or restricting communications, there has to be

23   specific statutory findings and there has to be evidence in the

24   record.  Your Honor, no evidence has been presented here today

25   at all.  Two (2) newspaper articles were attached to their

1   motion.  Newspaper articles are not evidence.  That's all that

2   has been filed when you denied their motion previously.

3         While requiring us to refer to the website, you

4   invited them to bring forward specific instances of misconduct

5   or misleading communications.  We are one year since that

6   hearing, and there are none identified.  Curative notice has

7   been proposed.  What are we curing?  There is nothing that has

8   been done improperly.  Curative notice mentions the damage

9   awards.  Suspiciously absent from the curative notice is any

10   reference that the motion for attorneys' fees was denied or

11   that the significant plaintiffs' depositions were denied, or

12   that the lost wages were denied.  And, Your Honor, if we do

13   curative notice this morning, we have our trial in October, do

14   we have to revise the curative notice again?  And what happens

15   if there is a negative result?  Do we have to address that

16   curative notice?

17         Your Honor, there is simply no evidence or finding of

18   any abuse or misleading communication.

19         And, Your Honor, with regard to our negotiating with

20   Knauf, which was the basis that I read in the motion, these are

21   not homeowners' claims.  These folks are not parties.  These

22   are repaired homes where we have releases, and the people are

23   not plaintiffs.  We are plaintiffs too, Your Honor.  We have

24   spent millions of dollars to do the right thing to fix the

25   houses.  We have not recovered a nickel.  We feel like we are

1    entitled to go and negotiate with Knauf to recover a portion of

2    our damages.

3            With respect to homes that are not part of the MDL,

4    there is nothing to prevent us from doing that.  That was the

5    sum and substance of the motion and memorandum, Your Honor.

6            THE COURT:  Well, I don't think he's asking that.

7            MR. LEVIN:  I am not asking for that.  If you want to

8    go --

9            THE COURT:  He said that in the memo, but he doesn't.

10           MR. LEVIN:  I don't want that.  You can rest assured

11   that you can be my guest with Knauf.  I have dealt with them.

12           THE COURT:  I do understand the issue.

13           MR. LEVIN:  Fair enough.

14           THE COURT:  I am ready to rule on the matter.

15           MR. SIVYER:  I will sit down and shut up since my

16   experience has been that's the prudent thing to do.

17           THE COURT:  I have read the record, and I have read

18   the briefs in this matter.  The law is clear that before the

19   Court issues such an order, it must have a clear record of

20   specific findings under Rule 23, the order must be carefully

21   drawn and be specific.  I instructed counsel before to inform

22   the plaintiffs who signed a release that they have a right to

23   counsel, that there is an existing MDL in litigation and that

24   there is a website, and give them the website.  I am going to

25   put all of this stuff on the website as it comes about, and I

1    am going to highlight it and make it clear that that's the

2    first thing that pops up.  So I am going to deny the motion.  I

3    don't think a clear record has been shown, and I think enough

4    information has been given with regard to the documents that

5    are filed.  There should not be any misunderstanding.  I am not

6    talking about the homebuilders' discussions with Knauf, or what

7    they are doing with Knauf, or whether they are doing anything

8    or not.  That's between the homebuilders and Knauf, and not the

9    plaintiffs.

10              With regard to the plaintiff claimants, the

11   homeowners, I want them to continue to highlight the website

12   and to advise them of their right to counsel, and advise them

13   that an MDL proceeding is in order.  That's the best we can do,

14   folks.  If somebody is not interested in pursuing it, they are

15   not interested in looking at the website, then that's their

16   problem and not the Court's problem.  I can only tell them to

17   look at the website, and tell them they have a right to

18   counsel, and they have to then do something for themselves.  I

19   do not feel badly about that.

20              The next motion for argument is the motion for

21   sanctions, motion for sanctions and to compel production of

22   Knauf documents, record document number 4754.  Anything on

23   that?

24              MR. DAVIS:  Leonard Davis, good morning.

25              THE COURT:  Len, as I said before, you and Kerry see

1   this apparently differently.  You say something, and he says

2   something else.  So where are we?

3          MR. DAVIS:  I'm going to hone that down and explain

4   to you where we are, Your Honor.  This is about the fifth time

5   we have come before the Court on discovery matters, and we

6   recognize, and quite frankly, the PSC appreciates the

7   involvement now and his Honor's attention to addressing

8   discovery.  Knauf, as the PSC has filed, has failed to timely

9   and properly make, and we are working through many of the

10  issues -- we have had a number of meetings and conferences, and

11  we have resolved several of the issues.  For instance, with

12  respect to confidentiality log, we have agreed that we will get

13  logs from the various conditions and reasons and assertions for

14  confidentiality to look into the redactions.  And we provided

15  copies of the examples, and we will get information regarding

16  confidentiality or redactions.  So that's been done.

17          With respect to the time frame of production, we have

18  addressed that first, and it is clear that there is an order

19  agreement out there that we will get matters from 2005 to 2010

20  without prejudice to the PSC.  With respect to prior, we will

21  be getting that, and we resolved that issue.  And I hope to

22  address, Your Honor, what is remaining.  And I will address

23  that, and I will provide a few items to the Court.  And I have

24  given your staff some documents that I plan on showing.

25          What is really left are a couple of issues, and that

1  is producing witnesses for depositions and producing their

2  documents.  Those are really the issues that remain that we

3  need to address.  And I know the Court is familiar with our

4  brief, and I won't go through a recitation of the law, because

5  it is all in the brief.  But with respect to --

6           THE COURT:  Who are the witnesses?

7           MR. DAVIS:  The witnesses are Isabel Knauf, Hans

8  Hummel, Mark Norris, Tony Robson, Martin Grunkee (phonetic

9  spelling).  Now, I will hone that down a little further.

10 Yesterday Knauf agreed and provided a date for Hans Hummel, and

11 we are working through that deposition.  So we have four

12 additional ones, and we just need to get those sooner rather

13 than later.  But in addition --

14          THE COURT:  What is the problem with producing those

15 individuals?

16          MR. GLICKSTEIN:  Your Honor, Steve Glickstein for

17 Knauf.  The problem is not producing the individuals.  The

18 problem is the timing.  And if I can pick up Your Honor's

19 comments concerning two ships passing in the night, Your Honor

20 knows that we became lead counsel in May.  I began to come up

21 to speed and became engaged in the document production and

22 deposition issues in the middle of June.  Baker McKinsty, which

23 is still involved and is assisting in the discovery, we are

24 having discussions with Mr. Davis and others from the PSC.

25          In the middle of June I participated for the first

1    time in some of those discussions.  And the conclusion that I

2    came to frankly, Your Honor, is the same one that you have come

3    to, is that it was two ships passing in the night.  And because

4    I was new counsel, I undertook to be very proactive with Mr.

5    Davis to try and resolve the outstanding issues.  There were

6    issues concerning the time frame of production.  Mr. Davis

7    correctly states that that issue has been resolved.  Actually,

8    the cut-off date is September 30, 2009.

9           There were issues concerning some of the terms,

10   because although there were agreements on the Chinese search

11   terms, there was not agreement at that time in the terms of

12   agreement on the germane search terms.  There were issues with

13   respect to servers and custodial filings would be searched.

14   Those largely have been resolved, and that resulted in the

15   scheduling order which Your Honor entered at the beginning of

16   July, which ordered the parties by consent to agree on certain

17   terms and custodians, and those search terms and custodians

18   were agreed to on July 16th.  So within a month's time the basic

19   issues between the parties have been resolved.

20          Then came the issue --

21          THE COURT:  That's largely because of your good work,

22   and I appreciate that.

23          MR. GLICKSTEIN:  So then came the issue, how quickly

24   can we get that done?  And how quickly can we produce

25   witnesses?  Because as Your Honor can appreciate, we don't want

1    to be in a situation where our witnesses are deposed on

2    multiple occasions.

3            THE COURT:  Right.

4            MR. GLICKSTEIN:  So the compromise that I was

5    proposing with the plaintiffs, and I still think is the fairest

6    resolution of this, is that for 30(b)(6) witnesses, and there

7    are four of them, we will produce them right away and take the

8    risk that even though they are being produced before document

9    production is complete, for good cause shown they may have to

10   come a second time.

11           Four (4) witnesses that are not 30(b)(6) witnesses,

12   we think we should get through their expanded production that

13   we first agreed to on July 16th, so that the witnesses will not

14   be deposed on multiple occasions.  So the issue is now,

15   obviously these witnesses will be deposed.  They will be

16   offered for deposition.  We are talking about the timing as to

17   whether it is before the completion of document production or

18   afterwards.  That is probably going to take, and I will have a

19   clearer idea I think in a week or two, because exactly how long

20   it takes, the estimate I gave Mr. Davis, which he found

21   unsatisfactory, was four to five months.  But keep in mind,

22   that what we are having to do is, going back to Germany.  We

23   have to go back to the electronic discovery experts, go back to

24   Germany.  They go back to China.  They run searches on the

25   expanded custodians and expanded time frames to the pre-

 1    existing custodian.  Germany and China both have strict laws in

 2    terms of how you must review these documents to comply with

 3    local standards.  China has a state secret law; Germany has a

 4    privacy law.  Those need to be complied with.  Lots of

 5    documents are in foreign languages, either Chinese or German.

 6    That takes a little bit more time.  So we are trying very hard.

 7    And maybe that in a week or two, when I have a better idea of

 8    the volume of the hits that are in response to these new

 9    requests, I can refine that estimate better for Mr. Davis.

10         THE COURT:  Okay, let's do it this way:  I will do

11    that.  Let's take ten days to do that.  But my understanding is

12    that the witnesses will be produced, and that you will be able

13    to figure out how long you need to get the documents to those

14    particular witnesses.

15         MR. GLICKSTEIN:  Right.

16         THE COURT:  Then I will talk with you all.  You get

17    me on the phone.

18         MR. DAVIS:  We will do that.  I have a couple of

19    questions so that I am clear.  That's with respect to those

20    five individuals.  Now, we have been told by Mr. Glickstein

21    that Knauf, and I will use the word Knauf -- I look at it as

22    the economic court did, as one of economics.  We look at it as

23    one unit as the OU looked at it.  That is our contention.

24         What Knauf has determined in their own way is that

25    they will not produce documents except for a defendant who is

1    named in the litigation.   And I have cases throughout our brief

2    dealing with that issue.   And quite frankly, I don't think that

3    that issue was really contested so much in defendant's brief.

4    However, what we have got are a number of individuals whose

5    documents have not been produced, and they are under the care,

6    custody and control of what I will say is Germany.   What I want

7    and what we are looking for is the same thing that the Knauf

8    people wanted.

9            THE COURT:   Steve, do you know about these documents?

10           MR. GLICKSTEIN:   He showed them.

11           THE COURT:   Do you have any problems with producing

12   them?

13           MR. GLICKSTEIN:   These documents?

14           THE COURT:   Yes.

15           MR. GLICKSTEIN:   He has them, plus there is not a

16   dispute over these documents.   This is just the e-mails that we

17   have found.

18           THE COURT:   What do you want from him?

19           MR. DAVIS:   What we want are documents that are in

20   the care, custody and control, which includes documents

21   relating to Robson, Isabel Knauf, Theus Knauf, Barry Topel,

22   those types of folks.

23           THE COURT:   What's the answer to that, Steve?

24           MR. GLICKSTEIN:   This is a matter, Your Honor, of

25   actually, of preserving an argument concerning the necessity of

1   taking discovery to the Hague Convention.  As I explained to

2   Mr. Davis, and he said he understood why we are --

3                THE COURT:  Are you able to produce those documents?

4                MR. GLICKSTEIN:  We are not, we are not.  I'm not

5   telling you, Your Honor, that it is impossible for us to get

6   the documents.

7                THE COURT:  Okay.

8                MR. GLICKSTEIN:  If I can just --

9                THE COURT:  Well, I have got the issue.  And you are

10  right, you should not be prejudiced by producing documents in

11  the sense that you are giving up your rights to urge the Hague

12  Convention and urge the Hague rules on discovery unless you are

13  under Court order to do so.  So I am going to issue a Court

14  order ordering you to do so with the understanding that all

15  rights are reserved.  And with that, that you are kicking and

16  screaming to use the Hague Convention and very articulately, as

17  I understand your position, and the Court understands and

18  recognizes that you forcefully presented a case for using the

19  Hague Convention.  I am going to overrule that and instruct you

20  to produce those documents under my Court order.

21               MR. GLICKSTEIN:  Can we have the plaintiff then,

22  resubmit a settled, in other words, in regards to --

23               THE COURT:  Yes.  What I would like you to do is to

24  meet with Lenny and look at the documents.  If you have any

25  particular problem with a document, get me on the phone and I

1    will talk to you about that.

2            MR. GLICKSTEIN:  Okay, thank you, Your Honor.

3            MR. DAVIS:  Thank you.

4            MR. HERMAN:  May it please the Court, Russ Herman.

5    We are going to withdraw our request for sanctions.  There is

6    no reason for Your Honor to consider it.

7            THE COURT:  Okay.  The next motion is Mitchell

8    Company's motion to lift a stay as to pending class

9    certification, Docket No. 5010.

10           MR. NICHOLAS:  Good morning, Your Honor.  Steve

11   Nicholas for the Mitchell Company.  Your Honor, what we were

12   trying, what we were really trying to do is track the PSC's

13   Motion for Class Certification as it related to Taishan.  They

14   filed a motion to lift the stay there because many or most of

15   the Rule 23 issues were overlapping.  It seems to make sense to

16   keep us on the same track as the plaintiff.  So that's the only

17   purpose for our motion to lift the stay.  So basically, we just

18   are asking for the same treatment.

19           THE COURT:  Okay, sure.

20           MR. LEVIN:  We have a motion pending to lift the stay

21   in Germano's class action.

22           THE COURT:  Okay, I have got it.  The plaintiffs'

23   Motion to Dismiss Defendant ASI Lloyds Without Prejudice, and

24   also to dismiss Standard Fire Insurance Company Without

25   Prejudice.

1          MR. HERMAN:  Casey Peterson will argue for the PSC.

2          MR. PETERSON:  Casey Peterson on behalf of the PSC.

3   Good morning, Your Honor.  Initially, Your Honor, ten motions

4   for Rule 23 were filed by home insurance carriers, the

5   carriers' ten motions altogether.  The Plaintiffs' Steering

6   Committee has opposed eight of those.  And in two of the cases,

7   have filed motions to dismiss without prejudice, which are an

8   exception to this motion here.  Your Honor, the two cases in

9   which plaintiffs have moved to dismiss without prejudice are

10  Catalanotto, which insurance carrier is Standard Fire Insurance

11  Company, and Kessler, which involves ASI Lloyds.

12          Plaintiffs have filed pursuant to Federal Rule of

13  Civil Procedure 41(a), which allows for dismissal before an

14  answer has been filed, ASI Lloyds already filed an answer --

15  Standard Fire has not.  Rule 41 also allows a dismissal without

16  prejudice by consent of the parties or by order of the Court.

17  This is an insurance matter.  The defendants, Standard Fire,

18  received plaintiffs' motion to dismiss without prejudice three

19  minutes prior to filing their own answer and counter-claim.

20  Your Honor, due to the delay in the LexisNexus searching,

21  defendant was served with plaintiffs' motion to dismiss

22  approximately nine minutes after the answer and counter-claim.

23  Now, Your Honor, in lieu of arguing over minutes as to which

24  was first, we can leave it to the sound discretion of this

25  Honorable Court as to which one was first.  In the case of

 1  Standard Fire, regardless, the ASI Lloyds, it already filed an

 2  answer, and it is uncontested.  And, therefore, we are seeking

 3  dismissal without prejudice by order of the Court.

 4          The defendants' main argument here, Your Honor, is

 5  that the issue presented in motions to dismiss will not be

 6  squarely before the Court if we are allowed to dismiss these

 7  claims without prejudice.  Your Honor, of the ten motions to

 8  dismiss, of those nine carriers, three of those carriers use

 9  what is called ISO policies.  Those are policies that are

10  drafted by the insurance services office for use in the same

11  manner.  In fact, Standard Fire and AIS Lloyds both use ISO

12  policies in addition to one of the other insurance carriers,

13  Home Site, who has used ISO policies, who the Plaintiffs'

14  Steering Committee has about their motion to dismiss.  And,

15  therefore, those issues regarding whether or not these coverage

16  issues are going to stand past the Rule 12 motions are squarely

17  before this Court already in the Home Site motion to dismiss,

18  which plaintiffs have opposed.

19          Additionally, Your Honor, Standard Fire's ISO policy

20  is the exact same one that Home Site used, the 1990 ISO policy.

21  And so, Your Honor, these issues are squarely before the Court

22  on the other case.  And if the defendants would like, we will

23  more than be happy to allow them to brief those issues in an

24  amicus and to participate in oral argument if that will clear

25  their prejudice.

1          Your Honor, the reason for filing these motions to

2    dismiss without prejudice admittedly, is due to the

3    unfaithfulness of the allegations pled.  The allegations are

4    included with the redhibition claim; in other words, Your

5    Honor, as opposed to simply having a claim in contract over an

6    insurance contract.  That claim is included with the other

7    claims for redhibition against the liability defendants.

8          Your Honor, these complaints were pled in boilerplate

9    language that normally applied to a company's redhibition, such

10   as not fit for the intended use or redhibitory defect, and

11   things like that.  Your Honor, the Plaintiffs' Steering

12   Committee is fully committed to facing that issue head on when

13   it comes to distinguishing between redhibitory defect and

14   something that falls into the nature of these insurance

15   policies.  However, Your Honor, in order to do that we require

16   significant discovery regarding underwriting policies and

17   principles, doing research and the intended drafters that

18   actually hid that policy and what they have admitted by these

19   terms.  We don't have that yet.  So in order to oppose these

20   motions to dismiss on their face, we would be required to give

21   you what we do have, which would be affidavits of experts which

22   are concerted to rule on the motions in summary formation,

23   given that plaintiffs have not been afforded the opportunity to

24   go through that discovery.  But for that reason, Your Honor, we

25   would like to dismiss these now without prejudice, because they

1    bring forward this complication.  And, Your Honor, it also puts

2    this Court in a precarious situation of ruling on a Home Site

3    insurance policy that is identical to the Standard Fire policy

4    and comes to two different conclusions on the same policy, the

5    ISO 1990 policy.  Your Honor, that's the reason we would like

6    to dismiss these without prejudice.  There is no prejudice to

7    defendant.  We will allow them to brief and have their day in

8    Court and be heard with regard to the Home Site motion, which

9    is extremely similar and identical to their motion.  So that on

10   those reasons, Your Honor, there is no prejudice to defendants,

11   and our reasons are legitimate and justified.  And I would

12   respectfully move this Court to dismiss plaintiffs without

13   prejudice.

14        THE COURT:  Two (2) things:  What about amending what

15   your pleadings say; and secondly, what about bringing all of

16   those cases up for oral argument?

17        MR. PETERSON:  The other ones that I say the Court

18   has before it, we have no objection to bringing those up on

19   oral argument.

20        THE COURT:  Okay.

21        MR. LEVIN:  And with regard to amending, Your Honor,

22   we would suggest in the alternative to going forward with the

23   Rule 12 motions to allow us an opportunity to amend.  Your

24   Honor, it is equivalent to pleading, a need to include a

25   redhibition claim with a homeowner's claim.  And we would

1   respectfully request to bring those claims separately.  And

2   admittedly, it should have been done in the first place.

3          THE COURT:  Okay, let me hear from defendants.

4          MR. HUBBARD:  May it please the Court, I'm Ralph

5   Hubbard, representing Standard Fire.  Mr. Foote will speak for

6   AIS Lloyds.  I may have misunderstood the very end of Mr.

7   Peterson's discussion, but I thought I heard him say that he

8   didn't have an objection to bringing these cases forward and

9   have them, us, appear in oral argument.

10          THE COURT:  Yes.  As I understand it, a number of

11   them before me now for motions, rather than just focus on one,

12   if it is the same policy, what's the reason for not teaming

13   them all at once?

14          MR. HUBBARD:  The reason is, they admitted they don't

15   like the way they pleaded the case against us.  We filed a

16   12(b) motion, a 12(b)(6) motion to dismiss.  We are entitled to

17   have our day in Court.  That's precisely what Rule 41 is all

18   about.  Under Rule 41(a) you can go -- you don't have the right

19   kind of pleading in the record already, you can file a notice

20   of dismissal.  You don't even go to Court.  They don't do that.

21   If he filed a motion for leave of Court to dismiss without

22   prejudice -- and we are not suggesting that they should be

23   dismissed with prejudice -- we are suggesting that you should

24   deny that motion.  And the Fifth Circuit says if it is unfair

25   to us, that's the word they used, unfair or prejudicial so

1  Standard Fire and AIS Lloyds to dismiss this case at this

2  particular point in time, that you should deny the motion.

3         And also it says, that never to have to rule in the

4  Fifth Circuit under the LD or even since the Sintacos cases.

5  They say that they have to have an adequate reason.  Well, in

6  their motion they have no reason whatsoever.  Today we learned

7  that they don't like the way our case is set up for a motion.

8  And so they are cherry picking off ten people, ten different

9  conditions that file.  And I think that runs afoul of the

10  spirit of MDL, Judge.  I mean, we have been plugging away and

11  were advised months ago that we needed to get on the train

12  because the train was leaving the station.  We have spent a lot

13  of time, a lot of money, and we are ready to bring our motion

14  on.  And to suggest that we should not be allowed to

15  participate because our language is similar to other company's

16  language is, I think, they're reaching the wrong results.

17  Based on those facts, that's all the more reason why we should

18  be allowed to participate.  That's the way you handle it.  That

19  is what MDL is all about.  This is the most important decision

20  to be made for insurers, I would suggest, in the course of

21  these proceedings.  And every case out of Louisiana comes

22  through this Judge that is going to speak on this.  We have

23  claims all over that are dealing with multiple Traveler

24  companies that this is going to affect, and I think they have

25  the right to be here.

1          THE COURT:  Okay, I understand the issue.  I really

2    understand both sides, I mean, both matters.  I am going to

3    deny the motion to dismiss without prejudice.  Thank you,

4    gentlemen.

5          MR. FOOTE:  If I can just make an appearance on

6    behalf of ASI Lloyds, Jason Foote from the Chopin firm.

7          THE COURT:  Thank you very much.  Good argument,

8    persuasive.  All right, any other motions that I have not dealt

9    with?

10                     (NO RESPONSE FROM COUNSEL)

11         THE COURT:  Thank you very much.  Court will stand in

12    recess.

13

14         (HEARING ON THE MOTIONS CONCLUDED AT 10:37 A.M.)

15

16

17

18

19

20

21

22

23

24

25

1

<u>REPORTER'S CERTIFICATE</u>

2       The undersigned certifies, in his capacity as

3 Official Court Reporter, United States District Court, Eastern

4 District of Louisiana, the foregoing to be a true and accurate

5 transcription of his stenograph notes taken on the 12th day of

6 August, 2010.

7       New Orleans, Louisiana, this 18th day of August,

8 2010.

9

10                              /s/  DAVID A. ZAREK
                                DAVID A. ZAREK
11                              OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25