**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES AND | JUDGE FALLON MAG. JUDGE WILKINSON |

*Payton, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-07628 (E.D. La.)**

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*
**Case No. 2:10-cv-00361 (E.D. La.)**

*Gross, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:09-cv-06690 (E.D. La.)**

*Rogers, et al. v. Knauf Gips, KG, et al.*
**Case No. 2:10-cv-00362 (E.D. La.)**

*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 2:11-cv-00252 (E.D. La.)**

*Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-1363 (E.D. La.)**

*Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-2349 (E.D. La.)**

*Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*
**Case No. 11-cv-3023 (E.D. La.)**

*Vickers, et al. v. Knauf Gips KG, et al.*
**Case No. 2:09-cv-04117 (E.D. La.)**

*Silva, et al. v. Interior Exterior Building Supply, LP, et al.*
**Case No. 09-08030 (E.D. La.)**

*Silva, et al. v. Arch Insurance Company, et al.*
**Case No. 09-08034 (E.D. La.)**

*Amato, et al. v. Liberty Mutual Ins. Co.*
**Case No. 2:10-cv-00932 (E.D. La.)**

*Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd.,*
*f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-080 (E.D. La)**

*Hernandez, et al. v. AAA Insurance, et al.*
**Case No. 2:10-cv-03070 (E.D. La.)**

*Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a*
*Shandong Taihe Dongxin Co., Ltd., et al.*
**Case No. 2:11-cv-01077 (E.D. La.)**

## ORDER AND JUDGMENT: (1) CERTIFYING THE INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENT CLASSES; AND (2) GRANTING FINAL APPROVAL TO THE INEX, BANNER, KNAUF, L&W, AND GLOBAL SETTLEMENTS

Before the Court is a Motion of the Plaintiffs' Steering Committee (the "PSC") and

Settlement Class Counsel (hereinafter collectively "Movants" or "Settlement Proponents") for

certification of five settlement classes and final approval of the class settlements with (1) Interior

Exterior Building Supply, LP ("InEx") and its insurers[1] (the "InEx Settlement"); (2) the Banner

entities[2] and their insurers[3] (the "Banner Settlement"); (3) L&W Supply Corporation ("L&W")

---

[1]  InEx's Insurers that have entered into a class settlement with the PSC include Arch Insurance Company ("Arch") and Liberty Mutual Fire Insurance Company ("Liberty").

[2]  The Banner entities include:  Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC, Banner Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International, LLC, and any other entity insured under the Banner Insurance Policies (collectively, "Banner").

[3]  Banner's Insurers include:  Chartis Specialty Insurance Company (formerly known as "American International Specialty Lines Insurance Company"), Illinois National Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa., Commerce & Industry Insurance Co., and any other sister entities or entities related to the foregoing or to American International Group, Inc. (collectively, "Chartis"); FCCI Insurance Company, FCCI Commercial Insurance Company, National Trust Insurance Company, FCCI Mutual Insurance Holding Company, FCCI Group, Inc., FCCI Insurance Group, Inc., Monroe Guaranty Insurance Company, FCCI Services, Inc., FCCI Advantage Insurance Company,

1

and USG Corporation (the "L&W Settlement"); (4) the Knauf Defendants[4] (the "Knauf Settlement"); and (5) more than 700 additional Participating Builders, Suppliers, and Installers ("Participating Defendants"),[5] and their Participating Insurers ("Participating Insurers")[6] (together the "Global Settlement").  (R. Doc. 15764).  The Court heard oral arguments from counsel at a final Fairness Hearing beginning on November 13, 2012 and, having considered those arguments and the parties' submissions, now issues this Order and Judgment.

## I.    BACKGROUND

The present litigation arises from alleged property damage and personal injuries caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia. Sometime after the installation

---

Brierfield Insurance Company, FCCI Agency, Inc. (collectively, "FCCI"); Hanover American Insurance Company and Hanover Insurance Group, Inc. (collectively, "Hanover"); and Maryland Casualty Company, and all companies in the Zurich North America group of insurance companies (collectively, "Maryland Casualty").

[4] The Knauf Defendants include:  Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[5] The list of Participating Defendants is attached hereto as Exhibit 1.

[6] The list of Participating Insurers is attached hereto as Exhibit 2.

2

of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of law suits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to this Court, the U.S. District for the Eastern District of Louisiana, for coordinated and consolidated proceedings. *See* (R. Doc. 1).

Since the inception of MDL 2047, approximately three years ago, numerous cases have been consolidated, containing thousands of claims; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials; it has issued

numerous opinions, pretrial orders, and minute entries; the Court has facilitated several mediations; and over 16,000 record documents have been filed. When discovery disputes threatened to cause unreasonable delay, the Court traveled to China in order to supervise depositions. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.

The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[7] and the Taishan entities[8]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing. Shortly thereafter, the Court held its first bellwether, bench trial involving one of the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol. The Taishan entity finally entered the action by filing an appeal of the judgment entered against it with the United States Court of Appeals for the Fifth Circuit, arguing that this Court lacked personal jurisdiction. The Fifth Circuit remanded the case to this Court to allow for jurisdictional discovery. After ample time for discovery, the Court issued an Order and Reasons holding that the Taishan entities are subject to the Court's jurisdiction. The Taishan entities' appeal of this ruling is currently pending before the Fifth Circuit.

---

[7] The term "Knauf entities" includes:  Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia

[8] The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

In the interim the Court has focused its attention on the Knauf entities, leaving the Taishan-related claims for a later date.  It now appears that this work has not proven fruitless. With regard to the Knauf entities, the path that has led to the settlement currently before the Court was marked by several notable breakthroughs.

The first notable breakthrough towards resolving the MDL litigation claims against Knauf came in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. In addition to the Knauf entities, a number of defendants in the chain-of-commerce contributed funds to the program. The pilot program has since been implemented, with homes being added to and completed on a regular basis since early spring 2011. To date, contractors have completed remediation of over one thousand homes through this program.

The second notable breakthrough occurred in the spring of 2011, when Interior Exterior Building Supply ("InEx"), a major supplier of Chinese drywall in the gulf coast, entered into a class action settlement agreement and the Court preliminarily approved this agreement. This agreement provides for the tendering of all of InEx's primary insurance proceeds, in the amount of $8,000,000, for the benefit of a national class with claims against InEx involving Chinese drywall.

The third notable breakthrough occurred in the summer of 2011, when the Banner entities, also major suppliers of Chinese drywall in the gulf coast, entered into a class action settlement agreement and the Court preliminarily approved this agreement. The Banner settlement agreement provides that Banner and its insurers will provide $54,475,558.30 for the benefit of a nationwide class consisting of all persons or entities with claims against Banner arising from or otherwise related to Chinese drywall.

The fourth, and most notable breakthrough, occurred in December 2011, when the Knauf entities entered into a class action settlement agreement with plaintiffs. This proposed global, class settlement agreement is intended to resolve claims made in filed actions which arose out of KPT Chinese drywall installed in properties in the United States. The Court granted preliminary approval of this settlement agreement on January 10, 2012. (R. Doc. 12138).

The fifth breakthrough in the litigation came in March 2012 when L&W, a third major Chinese drywall supplier, entered into a class action settlement agreement. The L&W Settlement is a component of the plan for global resolution of the Knauf/KPT supply chain in this litigation. The Court granted preliminary approval of the L&W settlement agreement on April 26, 2012. (R. Doc. 14033).

The sixth and final breakthrough in this litigation involved various builders, suppliers, and installers, and these parties' insurers, who have entered into a class action settlement agreement (the "Global Settlement") with the plaintiffs. The Global Settlement was entered into by the Plaintiffs' Steering Committee on behalf of claimants, except those with affected properties in Virginia, and certain Builders, Installers, and Suppliers. This Court granted preliminary approval of the Global Settlement on June 4, 2012. (R. Doc. 14562). The Global Settlement provides for a total payment of $70,570,000.00 for class members regardless of the type or brand of Chinese drywall in their properties and regardless of whether they filed their claims in the MDL or another forum.

These settlements are all interrelated and interdependent.  They resolve all claims, counterclaims, and third-party claims among the settling parties.

Upon being advised of each of the five interrelated settlements and after reviewing the parties' motions seeking preliminary approval, the Court in each case held a hearing for the

purpose of evaluating whether each proposed settlement appeared to merit the expense of notice, and therefore merited preliminary approval. As noted above, the Court granted preliminary approval of each of the five settlements. The parties issued notice in accordance with the Court's Orders. The Court held a final Fairness Hearing beginning on November 13, 2012, during which the Court heard the arguments of counsel representing both the settlements' proponents and certain objectors. The Court extended the Fairness Hearing for the purpose of receiving additional submissions from the parties. The Court granted several requests for extensions of deadlines associated with the Fairness Hearing in order to allow the parties to communicate with the entities which had filed objections or opted out of one or more of the settlements and, in some cases, to negotiate the rescission of an opt-out or withdrawal of an objection. The Court, having been advised that these communications and negotiations have concluded, finds that it is now appropriate to consider the instant Motion.

## II.    PRESENT MOTION

### A. Movants' Position

The Settlement Proponents seek certification of five settlement classes and final approval of the class settlements with (1) Interior Exterior Building Supply, LP ("InEx") and its insurers (the "InEx Settlement"); (2) the Banner entities and their insurers (the "Banner Settlement"); (3) L&W Supply Corporation ("L&W") and USG Corporation (the "L&W Settlement"); (4) the Knauf Defendants (the "Knauf Settlement"); and (5) more than 700 additional Participating Builders, Suppliers, and Installers ("Participating Defendants"), and their Participating Insurers ("Participating Insurers") (together the "Global Settlement").

In support of their Motion, the Movants argue that the settlements will provide substantial benefits to the Class Members and together constitute a significant recovery for the

Class Members, especially when considered in light of the procedural posture of the litigation, the range of estimates of damages, the financial condition of the Participating Defendants, the risks and uncertainty regarding apportionment of liability to the Participating Defendants, and the information revealed during discovery and settlement negotiations. Movants note the serious obstacles to establishing both liability and damages against the Participating Defendants, evidenced by the fact that several Participating Defendants have prevailed on coverage actions.

The Movants argue that these interrelated settlements, taken together, will effect the remediation of all structures containing a significant amount of Knauf-manufactured Chinese drywall. The Knauf Settlement further provides for a separate fund for attorney fees, thus ensuring that any attorney fees approved by this Court will not diminish any plaintiff's recovery or cause a structure to receive only partial remediation. The settlements further provide for a so-called "other loss fund" to cover miscellaneous expenses including moving costs. As an initial matter, Knauf will provide all of the funding for the settlements. Knauf will then receive, as a credit against its initial outlay, any funds recovered from downstream entities in the chain of commerce or from their insurers. The Movants estimate that the total value of these settlements will exceed one billion dollars, although the true value will depend primarily on the actual costs of remediation, the funding for which is uncapped.

### B. Objections to the Motion

Class counsel initially received and filed into the record a total of twenty-six objections to the settlements, distributed as follows: to the Banner Settlement, two objections; to the Global Settlement, eight objections; to the InEx Settlement, five objections; to the Knauf Settlement, eleven objections. There were no objections to the L&W Settlement. (R. Doc. 15881). As noted above, several objectors have since sought this Court's leave to withdraw their objections. The

Court has granted some such motions; others, including those filed on behalf of four objectors represented by Christopher A. Bandas, remain pending.

The Court finds it appropriate to grant the pending motions to withdraw objections.[9] Certain other objections that have not been withdrawn were filed by entities that had previously opted out of the settlements to which they sought to object; these entities, having opted out, lack standing to object, and their objections are ineffective. Therefore, only three pro se objections remain: James and Joanne Haseltine's objection to the Banner Settlement; James Berretta's objection to the Global Settlement; and Therese Sekellick's objection to the Knauf Settlement. The Court will discuss each objection separately.

### 1. Objection by James and Joanne Haseltine to the Banner Settlement

James E. and Joanne E. Haseltine contacted the Court via a letter of January 8, 2012 and expressed concerns relating to the Banner settlement, which the Court will interpret as an objection thereto. (R. Doc. 15881-1). The Haseltines' concerns include their belief that the Banner Settlement provides insufficient funds to consumers who, like the Haseltines, have been affected by wallboard manufactured by the Taishan entities rather than the Knauf entities.

### 2. James Berretta's objection to the Global Settlement

James Berretta contacted the court via electronic mail on September 28, 2012 and expressed concerns relating to the Global settlement, which the Court will interpret as an objection thereto. (R. Doc. 15881-2, p.42). Mr. Berretta's concerns include his belief that the Global settlement allocates an insufficient amount of settlement funds for compensation of

---

[9] Insofar as the pending motions seek to withdraw objections to the settlements, they will be granted; the Court will discuss these Motions more fully in a separate Order and Reasons.

personal injury claims.

### 3. Therese Sekellick's objection to the Knauf Settlement

Therese Sekellick contacted the Court via a letter of April 5, 2012 addressed to Plaintiffs' Lead Counsel and expressed concerns relating to the Knauf settlement, which the Court will interpret as an objection thereto.  (R. Doc. 15881-4, p.74).  Ms. Sekellick's concerns include: her belief that Chinese drywall may have damaged her air conditioning system, although an inspection indicates that she does not have Chinese drywall; her belief that the specter of Chinese drywall has hampered her ability to rent out her condominium and has depressed its assessed value; and her belief that Knauf will derive the benefit of the Banner Settlement.

## IV. LAW & ANALYSIS

### A. Final Fairness Evaluation

Pursuant to Federal Rule of Civil Procedure 23, governing class actions, "[r]eview of a proposed class action settlement generally involves two hearings," the first of which is a "preliminary fairness evaluation" made by the Court. Manual for Complex Litigation (Fourth) § 21.632 (2004). Indeed, within the Fifth Circuit it is routine to conduct a preliminary fairness evaluation prior to the issuance of notice. *See, e.g.*, *Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2011); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1997); *see also* Manual for Complex Litigation § 21.6 (4th ed. 2004) ("The two-step process for evaluation of proposed settlements has been widely embraced by the trial and appellate courts."). During this evaluation, the Court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id.* Additionally, the Court "must make a preliminary determination on the fairness, reasonableness,

and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* After having granted preliminary approval and allowed the notice process to move forward, the Court conducts a more thorough and rigorous analysis of the same factors in order to determine the appropriateness of granting final approval.  Manual for Complex Litigation § 21.6; *see also In re OCA, Inc. Securities & Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008). "Counsel for the class and the other settling parties bear the burden of persuasion that the proposed settlement is fair, reasonable, and adequate." Manual for Complex Litigation (Fourth) § 21.631 (2004); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006).

### B. Class Action Settlement Prior to Class Certification

"Before an initial class ruling, a proposed class settlement may be effectuated by stipulation of the parties agreeing to a temporary settlement class for purposes of settlement only." William B. Rubinstein, Alba Conte, and Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2010). "[A]pproval of a classwide settlement invokes the requirements of Rule 23(e)." *Id.* Rule 23(e) provides that "[t]he claims . . . of a certified class may be settled . . . or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). "Settlement classes--cases certified as class actions solely for settlement--can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits." Manual for Complex Litigation (Fourth) § 21.612 (2004). However, "[c]ourts have held that approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process." *Id.*

Although "[s]ettlement is relevant to a class certification," as mentioned above, the criteria of Rule 23, particularly that found in subsections (a) and (b), must still be satisfied. *Amchem*, 521 U.S. at 619-20. "Together subsection (a) and (b) requirements insure that a proposed class has 'sufficient unity so that the absent class members can fairly be bound by decisions of the class representatives.'" *In re FEMA Trailer*, 2008 WL 5423488, at *3 (quoting *Amchem*, 521 U.S. 591 (1997)). All of the requirements of Rule 23(a) must be met:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

As this Court has previously recognized,

> The first two requirements focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed 'to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests.' *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008) (*quoting In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Additionally, for class certification, at least one of the subsections of Rule 23(b) must be met. To satisfy this requirement, the Movants urge the Court to find subsection (b)(3) is satisfied by the pending settlements. This subsection provides,

> A class action may be maintained if Rule 23(a) is satisfied and if:
> - - - - - - - - - - -
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

12

(A) the class members' interests in individually controlling the prosecution or defense or separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

"To succeed under Rule 23(b)(3), Plaintiffs must sufficiently demonstrate both predominance of common class issues and that the class action mechanism is the superior method of adjudicating the case." *In re FEMA Trailer*, 2008 WL 5423488, at *3 (*citing Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623-24 (5th Cir. 1999)).

### C. Rule 23 Criteria

Notably, none of the responses to the Motion raise any objections to the Rule 23 criteria. The Court will nevertheless review the applicable law on Rule 23 for each criteria and consider the Movants' arguments under each criteria.

### 1. Numerosity

As cited above, Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To demonstrate numerosity, the [Movants] must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006) (*quoting Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)). Rule 23 does not provide a clear formula for determining whether the numerosity requirement has been met; thus, Courts evaluate numerosity based upon the facts, circumstances, and context of the case. 1 Newberg on Class Actions § 3:3 (4th ed. 2010). Indeed, "[t]here is enormous disparity among the decisions as to the threshold size of the class that will satisfy the Rule 23(a)(1) prerequisites." *Id.* Although the plaintiff bears the burden

of showing joinder is impracticable, "a good-faith estimate should be sufficient when the number of class members is not readily ascertainable," and the numerosity requirement "ordinarily receives only summary treatment . . . and has often gone uncontested." *Id.*

The Movants argue that these settlement classes satsify the numerosity requirement because of the thousands of plaintiffs who have filed suit against the Participating Defendants and Participating Insurers, which number in the hundreds. The Court agrees that the numerosity requirement is satisfied in this case.

### 2. Commonality

The commonality requirement under Rule 23(a)(2) requires for maintenance of a class action that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not require that all questions of law or fact raised in the litigation be common. The test or standard . . . is qualitative rather than quantitative." Rubinstein, 1 Newberg on Class Actions § 3:10; *see also In re FEMA Trailer*, 2008 WL 5423488, at *6. Indeed, "[t]he commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members." *In re Vioxx*, 239 F.R.D. at 459 (*citing James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001)). The Rule 23(a)(2) commonality "requirement is easily met in most cases." *Id.*

Movants argue that these settlements easily satisfy the commonality requirement because the Judicial Panel on Multidistrict Litigation ordered the subject cases consolidated in the MDL based upon commonality of facts, and because the factual and legal issues arising from Chinese drywall, including damages, fault, and apportionment of fault, are common to all claimants. The Court agrees that these settlements satisfy the commonality requirement.

### 3. Typicality

14

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." Rubinstein, 1 Newberg on Class Actions § 3:13. "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims or other claims members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims. However, this is not a foregone conclusion." *Id.*

Movants argue that these settlements satisfy the typicality requirement because each of the potential Class Members is seeking money from the settling defendants for the costs of remediation and other damages, and the proposed Class representatives have claims against the settling defendant which are typical of all plaintiffs. The Court agrees that these settlements satisfy the typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires for maintenance of a class action that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The purpose of this requirement is to protect the legal rights of absent class members. First, the representatives must not possess interests which are antagonistic to the interests of the class. Second, the representatives' counsel must be qualified, experienced, and generally able to conduct the litigation." Rubinstein, 1 Newberg on Class Actions § 3:21; *see also Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("[T]he adequacy of representation

15

requirement . . . also raises concerns about the competency of class counsel and conflicts of interest."). With regard to the former, a court is to "look at the circumstances of the plaintiff individually to determine if the plaintiff has any conflict with class members." Rubinstein, 1 Newberg on Class Actions § 3:23. "Only those material conflicts pertaining to the issues common to the class will bar a class action." *Id.* As to the latter requirement, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* at § 24.

Movants argue that these settlements satisfy the adequacy of representation requirement because the named representatives do not possess interests antagonistic to class members, and because the proposed Settlement Class Counsel are members of the Plaintiffs' Steering Committee, whom the Court selected based upon their expertise and experience. The Court agrees that these settlements amply satisfy the adequacy of representation requirement.

### 5. Common Questions of Law & Fact Predominate

Rule 23(b)(3) provides that a class action is maintainable if all the prerequisites of subsection (a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Factors for the Court to consider in its determination include:

> (A) the class members' interests in individually controlling the prosecution or defense or separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

There is "considerable overlap" between commonality and the predominance of common questions of law and fact, resulting in many courts handling both issues together. Rubinstein, et al., 2 Newberg on Class Actions § 4:22. However, "the predominance test is 'far more demanding' than the commonality test." *In re FEMA Trailer*, 2008 WL 5423488, at *12 (*quoting Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005)). "To predominate, common issues must form a significant part of individual cases." *In re Vioxx*, 239 F.R.D. 450, 460 (E.D. La. 2006) (*citing Mullen*, 186 F.3d at 626). "Judicial economy factors and advantages over other methods for handling the litigation as a practical matter underlie the predominance and superiority requirements for class actions certified under Rule 23(b)(3)." Rubinstein, et al., 2 Newberg on Class Actions § 4:24.

Movants argue that common questions of law and fact predominate because: it makes good sense to resolve the claims against the participating defendants through the class action device; the issues of the participating defendants' liability predominate over any individual issues involving the plaintiffs; a class settlement will insure that funds are available to remediate the plaintiffs' properties and provide compensation; and, in light of the suits pending in various forums, final approval of the Settlement Agreements benefit all parties. Finally, the claims are largely property damage claims, all of which lend themselves to an evaluation based upon square footage and type of structure. The Court finds that common questions of law and fact predominate.

### 6. Fairness, Reasonableness, & Adequacy

The Court is also required to render a determination on the fairness, reasonableness, and adequacy of the Settlement Agreement. The settling parties argue approval of these settlements is appropriate because they were reached after arm's length negotiations, by parties possessed of

adequate information on the strengths and weaknesses of the litigation, after extensive discovery and briefing on motions, represented by counsel who are competent and have many years of experience.  Furthermore, the litigation is complex, expensive, uncertain, and has the potential for lengthy duration.

Though the objections to the Motion do not directly invoke Rule 23 requirements, the Court will interpret the non-Rule 23 objections as objections to the fairness, reasonableness, and adequacy of the interrelated settlements.  As noted above, only three objections, entered by pro se objectors, remain; all objectors represented by counsel have withdrawn their objections.

### a. Objection by James and Joanne Haseltine to the Banner Settlement

The Haseltines' concerns include their belief that the Banner Settlement provides insufficient funds to consumers who, like the Haseltines, have been affected by wallboard manufactured by the Taishan entities rather than the Knauf entities.  The Court acknowledges that the Taishan entities are not settling parties and that their potential liability to plaintiffs like the Haseltines has not been resolved by this Court and is not addressed by the Banner Settlement or any of the other pending settlements.  The Court further notes that the PSC continues to pursue vigorously the claims of thousands of plaintiffs like the Haseltines who allege damage resulting from drywall manufactured by the Taishan entities.  These facts do not indicate, however, that the Banner Settlement and other settlements involving Knauf-manufactured drywall are less than fair, reasonable, and adequate in their disposition of the rights and obligations among the settling parties, a group that does not include the Taishan entities.

### b. James Berretta's objection to the Global Settlement

James Berretta's concerns include his belief that the Global settlement allocates an

insufficient amount of settlement funds for compensation of personal injury claims.  The Court

acknowledges that many plaintiffs have alleged personal injuries related to the presence of

Chinese drywall in their homes.  The Court disagrees, however, that the compensation funds

provided in the settlements, taken together, are insufficient.  After considering all available

scientific evidence, the Court finds that the Global Settlement and other pending settlements

provide for personal injuries in a manner that is fair, reasonable, and adequate.

### c. Therese Sekellick's objection to the Knauf Settlement

Therese Sekellick's concerns include: her belief that Chinese drywall may have damaged

her air conditioning system, although an inspection indicates that she does not have Chinese

drywall; her belief that the specter of Chinese drywall has hampered her ability to rent out her

condominium and has depressed its assessed value; and her belief that Knauf will derive the

benefit of the Banner Settlement.  The Court acknowledges that many individual property

owners, including Ms. Sekellick, have likely been adversely affected by the phenomenon of

Chinese drywall even though these individuals' properties do not, and did not ever, contain

Chinese drywall.  However, the Court finds that the pending settlements provide for

compensation of other losses, including potential claims for lost rent and depressed value, in a

manner that is fair, reasonable, and adequate, especially in light of the difficulties inherent in

successfully litigating such claims.  The Court further finds that the funding provisions of these

settlements, namely Knauf's initial funding of the entire cost followed by its receipt of any

downstream compensation, including from the Banner Settlement, are fair, reasonable, and

adequate, and furthermore are likely to provide the most expeditious possible resolution of

Knauf-related claims.

After considering the documents presented, the arguments of counsel, and the law applicable to this matter, the Court agrees with the settlement proponents.  The Court finds that approval is especially appropriate in light of the fact that these agreements, when combined, will globally resolve plaintiffs' claims.  Accordingly, the Court finds that the five proposed settlements in their entirety are fair, reasonable, and adequate.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the present Motion is **GRANTED**.  **IT IS FURTHER ORDERED** that the Consent Motion to Withdraw Objections filed by attorney Christopher A. Bandas on behalf of Ronnie Garcia, Jan Petrus, Saul Soto, and Ernest Vitela (R. Doc. 16357) is hereby **GRANTED IN PART** insofar as to allow the withdrawal of the objections therein and **TAKEN UNDER SUBMISSION IN PART** insofar as other relief requested therein shall be addressed in a separate Order and Reasons.  **IT IS FURTHER ORDERED** that:

1. Capitalized terms used in this Order and Judgment shall have the same meaning as those defined in the Amended InEx Settlement Agreement [Rec. Doc. No. 12258-3], the Amended Banner Settlement Agreement [Rec. Doc. No. 10033-3], the Second Amended InEx Settlement Agreement and the Second Amended Knauf Settlement Agreement [Rec. Doc. No. 15948-2], the Third Amended Knauf Settlement Agreement [Rec. Doc. No. 16407-3], the L&W Settlement Agreement [Rec. Doc. No. 13913-3], and the Amended Global Settlement Agreement [Rec. Doc. No. 15695-2], which have been filed of record in this case.

2. The Court granted preliminary approval to the InEx Settlement on May 13, 2011 [Rec. Doc. No. 8818] and to amendments to that agreement on February 23, 2012 [Rec. Doc. No.

12587].

3. The Court granted preliminary approval to the Banner Settlement on July 14, 2011 and to amendments to that agreement on August 11, 2011 [Rec. Doc. No. 9839; Rec. Doc. No. 10064].

4. The Court granted preliminary approval to the Knauf Settlement on January 10, 2012 [Rec. Doc. No. 12138] and to amendments to that agreement on September 4, 2012 [Rec. Doc. No. 15786] and on December 12, 2012 [Rec. Doc. No. 16420].

5. The Court granted preliminary approval to the L&W Settlement on April 26, 2012 [Rec. Doc. No. 14583].

6. The Court granted preliminary approval to the Global Settlement on May 31, 2012 [Rec. Doc. No. 14562] and to amendments to that agreement on August 22, 2012 [Rec. Doc. No. 15734].

7. The Court granted preliminary approval to the Second Amendment to the InEx Settlement Agreement and the Knauf Settlement Agreement on November 19, 2012 [Rec. Doc. No. 16266].

8. The Motion of the PSC and Settlement Class Counsel for Final Approval of the InEx, Banner, Knauf, L&W, and Global Settlements and Certification of the InEx, Banner, Knauf, L&W, and Global Settlement Classes is GRANTED.

9. Unless otherwise specified, the InEx, Knauf, L&W, and Global Settlements will be governed by the substantive laws of Louisiana.

10. The Banner Settlement will be governed by the substantive laws of Florida.

11. The InEx Settlement Class consists of: "All persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to

21

Chinese Drywall sold, marketed, distributed, and/or supplied by InEx."

12. The InEx Settlement Class shall consist of two Subclasses:

1. The "Louisiana Subclass," which includes:  "All members of the Class with claims arising from, or otherwise related to Affected Properties that are located in Louisiana"; and

2. The "Non-Louisiana Subclass," which includes:  "All members of the Class with claims arising from, or otherwise related to Affected Properties that are located in any state other than Louisiana."

13. The InEx Settlement Class and Subclasses are certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

14. The Court finds that the InEx Settlement is fair, reasonable, and adequate, that the InEx Settlement was entered into in good faith and without collusion, and that the InEx Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

15. The Court finds that Notice was disseminated to the InEx Class pursuant to this Court's Order dated May 13, 2011 [Rec. Doc. No. 8818].  All InEx Class Members who did not opt out of the InEx Settlement, or who rescinded their opt-out from the InEx Settlement, in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

16. Comprehensive lists of opt-outs and rescissions of opt-outs from the InEx Settlement as of November 9, 2012, were filed on the docket by Class Counsel.  *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-5.  Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements.  *See* Rec. Doc. No. 16191-8.  Additional lists of subsequent rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class

Counsel.  *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492, 16520, 16549.

17. The Class Release provided in Section 4.3 of the InEx Settlement is approved.

18. As of the Effective Date of the InEx Settlement, the Released Claims as defined in Section 4.1 of the InEx Settlement will be released as to the InEx Settling Defendants.

19. Any and all InEx Class Members, including, but not limited to, those who have not properly opted out of the InEx Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the InEx Settling Defendants that arises from, concerns, or otherwise relates, directly or  indirectly, to Chinese Drywall.

20. The Court finds that, upon transfer of the Insurance Proceeds to the Escrow Account by Arch and Liberty pursuant to Section 12 of the InEx Settlement, the aggregate limits of the Arch Policies and the Liberty Policies are exhausted.

21. The Court finds that the Assignment of Insurance by InEx to the Non-Louisiana Subclass is valid, binding, and enforceable.

22. The Second Amendment to the InEx and Knauf Class Settlements is approved as fair, reasonable and adequate as to the InEx and Knauf Classes and binding on Settlement Class Members and the signatories.  The Court does not address issues related to whether the Second Amendment is enforceable against The North River Insurance Company, including but not limited to whether:  (a) the Second Amendment constitutes a reasonable settlement of a disputed claim for insurance coverage purposes; and (b) time was of the essence and there was no justifiable reason for delay in entering the Second Amendment.  As to those issues, all of the parties' positions are preserved and all of North River's defenses are preserved.  Nor does the Court address whether its findings in the context of approval of the settlements regarding

assignment and exhaustion are binding on North River (which is not party to the settlements), and all of North River's defenses regarding such matters are preserved.

23. The Court finds that the indemnity, defense and judgment reduction provisions in Section 4.3 of the InEx Settlement are valid, binding, and enforceable.

24. Notwithstanding any other provision of the InEx Settlement or of any other document (including any other provision that purports to be governing or controlling over other provisions), the InEx Settlement does not release any claims or defenses whatsoever that any InEx Class Member who opted out from this Settlement may have.  In the event an InEx Class Member opted out from the InEx Settlement, all parties reserve all claims, defenses, and coverage positions against that InEx Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out InEx Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that InEx Class Member.

25. The Banner Settlement Class consists of:  "All persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner."

26. The Banner Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

27. The Court finds that the Banner Settlement is fair, reasonable, and adequate, that the Banner Settlement was entered into in good faith and without collusion, and that the Banner Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

28. The Court finds that Notice was disseminated to the Banner Class pursuant to this Court's Order dated August 11, 2011 [Rec. Doc. No. 10064].  All Banner Class Members who did not opt out of the Banner Settlement, or who rescinded their opt-out from the Banner Settlement, in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

29. Comprehensive lists of opt-outs and rescissions of opt-outs from the Banner Settlement as of November 9, 2012, were filed on the docket by Class Counsel.  *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-4.  *See also* Rec. Doc. No. 16499 (Conditional Opt-Outs of Gregg Neiberg, Inc. and Triple "E" Corp.).  Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements.  *See* Rec. Doc. No. 16191-8.  Additional lists of subsequent rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class Counsel.  *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492, 16520, 16549.

30. The releases attached in Exhibits D, E(1), E(2), E(3), F and G of the Banner Settlement are approved.

31. Any and all Banner Class Members, including, but not limited to, those who have not properly opted out of the Banner Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the Banner Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

32. Other than to enforce any term of the Banner Settlement, no person or entity may use or refer to any aspect of the Banner Settlement in any litigation in which any Banner Insurer is a party.

33. The Banner Settlement shall not constitute a waiver of any coverage defense or position taken by any Banner Insurer related to Chinese Drywall and no Banner Insurer shall be estopped from raising any coverage issue or defense by reason of the Banner Settlement.

34. The substantive laws of Florida shall govern the interpretation of all Banner Insurers' policies issued to Banner.  The Court finds that by entering the Banner Settlement, each Banner Insurer has acted in good faith and fairly, reasonably, and honestly towards Banner and any actual and/or potential Banner Class Members and with due regard for Banner and any potential Banner Class Members' interests regarding Chinese Drywall.

35. The Banner Settlement by the Banner Insurers, being in good faith, upon the Settlement becoming Final, precludes Banner and any actual and/or potential Banner Class Member from asserting a bad faith claim against any Banner Insurer.

36. The Court finds that FCCI's principal place of business is in Florida, that FCCI's policies were delivered to Banner in Florida, and that Banner only supplied Chinese Drywall for use in homes and buildings in Florida.  The Court further finds that the only FCCI policy issued to Banner that is triggered by claims related in any way to Chinese Drywall is the 2006-2007 policy, policy numbers GL0004593-1 and UMB0004524-1.

37. By participation in this Settlement, FCCI and Hanover have not consented to general or specific personal jurisdiction in Louisiana and are not precluded from challenging general or specific personal jurisdiction over them in Louisiana in any cases currently pending or that may be filed in the future, including, but not limited to, cases currently pending in, or that may be

26

assigned to, filed in, or transferred to this Court.

38. The Court finds that the only Maryland Casualty policy issued to Banner that is triggered by claims related in any way to Chinese Drywall is the 2005-2006 policy, policy number PPS 42534587- 02.

39. The Court finds that the only Chartis policies issued to Banner that are triggered by claims related in any way to Chinese Drywall are the policies BE 9300273, BE 8688025, BE 5543482, and 7606364.

40. Notwithstanding any other provision of the Banner Settlement or of any other document (including any other provision that purports to be governing or controlling over other provisions), the Banner Settlement does not release any claims or defenses whatsoever that any Banner Class Member who opted out from this Settlement may have.  In the event a Banner Class Member opted out from the Banner Settlement, all parties reserve all claims, defenses, and coverage positions against that Banner Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out Banner Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that Banner Class Member.

41. The Knauf Settlement Class consists of:  "All persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (i.e., not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether

27

or not the Knauf Defendants are named parties to the lawsuit."

42. The Knauf Class shall consist of three Subclasses:

1. The Residential Owner Subclass, which includes:  "All members of the Knauf Class who are owners of and reside or have resided in Affected Property" ("Residential Owners").  The Residential Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall and/or Non-KPT Chinese Drywall.  The Residential Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties to mitigate losses.

2. The Commercial Owner Subclass, which includes:  "All members of the Knauf Class who are owners of Affected Property for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business and who do not reside in the Affected Property" ("Commercial Owners").  The Commercial Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall and/or Non-KPT Chinese Drywall.  The Commercial Owner Subclass also shall not include Owners who sold or otherwise disposed of Affected Properties except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties to mitigate losses.

1. The Residential Owner Subclass and the Commercial Owner Subclass shall be referred to collectively as the "Owner Subclasses" or

28

"Owners."

3. The Tenant Subclass, which includes:  "All members of the Knauf

Class who rent Affected Property."

1. Members of the Tenant Subclass also are referred to as

"Tenants."  Non-owner residents will be treated as Tenants even if they do

not pay rent.

43. The Knauf Settlement Class and Subclasses are certified pursuant to Fed. R. Civ. P.

23(a), (b)(3) & (e).

44. The Court finds that the Knauf Settlement is fair, reasonable, and adequate, that the

Knauf Settlement was entered into in good faith and without collusion, and that the Knauf

Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

45. The Court finds that Notice was disseminated to the Knauf Class pursuant to this

Court's Order dated January 10, 2012 [Rec. Doc. No. 12138].  All Knauf Class Members who

did not opt out of the Knauf Settlement, or who rescinded their opt-out from the Knauf

Settlement, in accordance with this Court's previous orders on or before the date of this Order

shall be bound by this Judgment.

46. Comprehensive lists of opt-outs and rescissions of opt-outs from the Knauf

Settlement as of November 9, 2012, were filed on the docket by Class Counsel.  *See* Rec. Doc.

Nos. 16191-1, 16191-2 & 16191-6.  Class Counsel also filed a list of untimely opt-outs from one

or more of the Class Settlements.  *See* Rec. Doc. No. 16191-8.  Additional lists of subsequent

rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket

by Class Counsel.  *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492, 16520, 16549.

47. The Class Release provided in Section 5.2 of the Knauf Settlement is approved.

29

48. As of the Effective Date of the Knauf Settlement, the Released Claims as defined in Section 5.1 of the Knauf Settlement will be released as to the Knauf Defendants and Other Releasees.

49. Any and all Participating Class Members in the Knauf Settlement are enjoined and forever barred from commencing and/or maintaining any action, legal or otherwise, against the Knauf Defendants and Other Releasees arising out of, or otherwise relating to, KPT Chinese Drywall.

50. The Court finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4, 5.2.5 and 5.2.6 of the Knauf Settlement are valid, binding, and enforceable; and therefore, the Court bars the assertion by any entity or person against the Knauf Defendants and Other Releasees of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning (i) the KPT Chinese Drywall claims against the Knauf Defendants and Other Releasees or (ii) this Settlement.

51. Non-Knauf Class Members and Knauf Class Members who opt out under Section 8 of the Knauf Settlement are enjoined from seeking or obtaining any recovery against or from, or seeking to execute or otherwise exercise remedies against the Pledged Assets, the Mortgaged Property, the Knauf Investment Assets, and the Replacement Security, and any proceeds thereof, which asset(s) have been procured by the Knauf Defendants in furtherance of the Knauf Settlement for the benefit of the Knauf Settlement Class.

52. The L&W Settlement Class consists of: "All persons or entities who are Participating Class Members in the Knauf Class Settlement and who (a) as of December 9, 2011, is a named plaintiff in the Litigation (i.e., not an absent class member) asserting claims arising from, or otherwise related to L&W Supplied KPT Chinese Drywall, whether or not L&W and/or USG are

named parties to the lawsuit, and (b) own Affected Property."

53. The L&W Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

54. The Court finds that the L&W Settlement is fair, reasonable, and adequate, that the L&W Settlement was entered into in good faith and without collusion, and that the L&W Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

55. The Court finds that Notice was disseminated to the L&W Class pursuant to this Court's Order dated June 11, 2012 [Rec. Doc. No. 14583]. All L&W Class Members who did not opt out of the L&W Settlement, or who rescinded their opt-out from the L&W Settlement, in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

56. Comprehensive lists of opt-outs and rescissions of opt-outs from the L&W Settlement as of November 9, 2012, were filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-7. Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements. *See* Rec. Doc. No. 16191-8. Additional lists of subsequent rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class Counsel. *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492, 16520, 16549.

57. The Class Release provided in Section 5.1 of the L&W Settlement is approved.

58. As of the Effective Date of the L&W Settlement, the Released Claims as defined in Section 5.1 of the Knauf Settlement will be released as to L&W and USG.

59. Any and all Participating L&W Class Members are enjoined and forever barred from commencing and/or maintaining any action, legal or otherwise, against USG and L&W arising out of, or otherwise relating to, L&W Supplied KPT Chinese Drywall or any drywall manufactured by KPT.

60. The Court finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4 and 5.2.5 of the L&W Settlement are valid, binding, and enforceable; and therefore, the Court bars the assertion by any entity or person against USG and L&W of any contribution, indemnification, subrogation, or other claims arising out of (i) the Participating L&W Class Members' L&W Supplied KPT Chinese Drywall Claims or (ii) this Settlement.

61. Notwithstanding any other provision of the L&W Settlement or of any other document (including any other provision that purports to be governing or controlling over other provisions), the L&W Settlement does not release any claims or defenses whatsoever that any L&W Class Member who opted out from this Settlement may have.  In the event an L&W Class Member opted out from the L&W Settlement, all parties reserve all claims, defenses, and coverage positions against that L&W Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that Opt-Out L&W Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which any person or entity claims to be an additional insured), whether or not that person or entity might also be a Settling Defendant, but only to the extent the claims arise out of the Affected Property opted-out by that L&W Class Member.

62. The Global Settlement Class consists of:  "All persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal

responsibility of any Participating Defendant.  A Participating Defendant shall also be a Global Class Member to the extent the Participating Defendant has remediated the Chinese Drywall in one or more Affected Properties or repurchased an Affected Property.  Participating Insurers are not Global Class Members.  Global Class Members do not include persons or entities with claims involving an Affected Property in the Commonwealth of Virginia."

63. The Global Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

64. The Court finds that the Global Settlement is fair, reasonable, and adequate, that the Global Settlement was entered into in good faith and without collusion, and that the Global Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

65. The Court finds that Notice was disseminated to the Global Settlement Class pursuant to this Court's Order dated May 31, 2012 [Rec. Doc. No. 14562].  All Global Settlement Class Members who did not opt out of the Global Settlement, or who rescinded their opt-out from the Global Settlement, in accordance with this Court's previous orders on or before the date of this Order shall be bound by this Judgment.

66. Comprehensive lists of opt-outs and rescissions of opt-outs from the Global Settlement as of November 9, 2012, were filed on the docket by Class Counsel.  *See* Rec. Doc. Nos. 16191-1, 16191-2 & 16191-3.  Class Counsel also filed a list of untimely opt-outs from one or more of the Class Settlements.  *See* Rec. Doc. No. 16191-8.  Additional lists of subsequent rescissions of opt-outs from one or more of the Class Settlements have been filed on the docket by Class Counsel.  *See* Rec. Doc. Nos. 16280, 16373, 16440, 16458, 16492, 16520, 16549.

67. The Court finds that the indemnity, defense and judgment reduction provisions in Sections 4.3 and 5.2.6 of the Global Settlement are valid, binding, and enforceable; and

therefore, bar the assertion by any Global Settlement Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims.

68. The Court approves the reservations set forth in Exhibit 3 to the Global Settlement Agreement.[10]

69. The Court approves the assignments set forth in Exhibit 4 to the Global Settlement.[11]

70. Any and all Global Settlement Class Members, including, but not limited to, those who have not properly opted out of the Global Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

71. Other than as it relates to Reserved Claims or Assigned Claims in the Global Settlement, or to enforce any term of the Global Settlement, or as to insurance matters concerning depletion or exhaustion of one or more policies of insurance, or prior compensation for a claimed loss or set-off, no person or entity may use or refer to any aspect of the Global Settlement in any litigation in which any Participating Defendant or Participating Insurer is a party.

72. The Global Settlement shall not constitute a waiver of any coverage defense or position taken by any Participating Defendant and/or its insurers, whether a Participating Insurer or not, related to Chinese Drywall and no insurer, whether a Participating Insurer or not, shall be

---

[10]  The list of Reservations is attached hereto as Exhibit 3.

[11]  The list of Assignments is attached hereto as Exhibit 4.

34

estopped from raising any coverage issue or defense by reason of the Global Settlement.  In

addition, any payment by a Participating Insurer as set forth in Section 4 of the Global

Settlement, shall not be considered a confession of judgment or trigger any obligation to pay

attorney's fees under Florida Stat. 627.428 or any other fee shifting statute in any state.

73. Except for any Reserved Claims referenced in Section 5.6.3 of the Global Settlement,

the Court finds that by entering this Settlement, each Participating Insurer has acted in good faith

and fairly, reasonably, and honestly towards its insured Participating Defendant, and any actual

and/or potential Global Settlement Class Members and with due regard for the Participating

Insurer's Participating Defendant, and any potential Global Settlement Class Members' interests

regarding Chinese Drywall.

74. Except for any Reserved Claims referenced in Section 5.6.3 of the Global Settlement,

the Court finds that the actions and positions of the Participating Insurers, being in good faith,

upon the Global Settlement becoming Final, preclude any Participating Defendant and any actual

and/or potential Global Settlement Class Member from asserting, maintaining or assigning any

statutory and/or common law bad faith claim against any Participating Insurer.

75. The Global Settlement shall not constitute a waiver or release by any Participating

Defendant or Participating Insurer of any claims or defenses related to any actual or alleged

obligations under a policy of insurance that such Participating Defendant or Participating Insurer

may have against any person or entity, including another Participating Insurer, in any manner

related to or connected in any way with the Chinese Drywall claims of Global Settlement Class

Members who opt-out of the Global Settlement.

76. The Court hereby appoints John W. Perry, Jr. of Perry Atkinson Balhoff Mengis &

Burns, LLC to serve as Special Master for purposes of the InEx Settlement, the Banner

35

Settlement, the Knauf Settlement, the L&W Settlement, and the Global Settlement.  The Court hereby appoints Patrick A. Juneau of the Juneau Firm to serve as an additional Special Master in the event that Mr. Perry is unable to perform all the duties assigned.

77.     The Court finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

This 7th day of February, 2013, at New Orleans, Louisiana.

ELDON E. FALLON
United States District Court Judge