## SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST INTERIOR-EXTERIOR IN MDL NO. 2047
### (Subject to Court Approval)

This Settlement Agreement is entered into by and between the Plaintiffs' Steering Committee in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, and Interior/Exterior Building Supply, L.P., Arch Insurance Company, and Liberty Mutual Fire Insurance Company as of the latest date of a Party's signature below.

**WHEREAS**, the Plaintiffs' Steering Committee has made a demand on Interior/Exterior Building Supply, L.P. ("InEx") to settle class Chinese Drywall claims against InEx for an amount exceeding InEx's primary insurance coverage limits;

**WHEREAS**, InEx has been named as a defendant in MDL No. 2047 and is alleged to be liable for supplying defective Chinese Drywall that was installed in Affected Property;

**WHEREAS**, InEx has denied liability for the sale of such Chinese Drywall;

**WHEREAS**, InEx and its primary insurers, Arch Insurance Company and Liberty Mutual Fire Insurance Company, agree that there is a risk of a judgment against InEx that exceeds the limits of InEx's primary insurance coverage; and

**WHEREAS**, the Parties wish to avoid the effort, expense and risk of continued litigation,

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and intending to be legally bound, the Parties agree as follows:

## 1. Definitions

1.1.    **Parties.** "Parties" shall mean InEx, the Insurers, and the Class:

1.1.1.    **InEx.** "InEx" shall mean all InEx entities, including, but not limited to, Interior/Exterior Building Supply, L.P. and all of their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, Insurers, and all predecessors and successors, assigns, or legal representatives.

1.1.2.    **Insurers.** "Insurers" shall mean Arch and Liberty.

of its present and former offices, directors, shareholders, members, agents, employees, representatives, attorneys, predecessors in interest, successors in interest, and assigns.

1.12.   **Excess Policies.** "Excess Policies" shall mean the four excess liability policies issued by the Excess Carrier to InEx as follows:

| Policy Period | Policy No. | Aggregate Limits |
|---|---|---|
| 01/01/06-01/01/07 | 553-088195-1 | $15 million excess $2 million |
| 01/01/07-01/01/08 | 553-089469-5 | $15 million excess $2 million |
| 01/01/08-01/01/09 | 553-090750-2 | $25 million excess $2 million |
| 01/01/09-01/01/10 | 553-091952-6 | $25 million excess $2 million |

1.13.   **Execution Date.** "Execution Date" shall mean the last date on which any of the Parties signs this Settlement Agreement, as shown by their signatures below.

1.14.   **General Contractor.** "General Contractor" shall mean any general contractor which (i) took part in the building, remodeling or restoration of any property with Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx, and (ii) did so working under contract with, and/or under the direction of a Builder.

1.15.   **Installer.** "Installer" shall mean any person or entity involved in the installation, hanging, taping, and floating in any property of Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx.

1.16.   **Insurance Proceeds.** "Insurance Proceeds" shall mean (a) four million dollars ($4,000,000) for Arch (less the dollar amount paid by Arch of (i) the Prior Settlements and (ii) the Notice Costs), and (b) as to Liberty shall mean four million dollars ($4,000,000) (less the dollar amount paid by Liberty of (i) the Prior Settlements and (ii) the Notice Costs). Each insurer will only be responsible for its own payment of proceeds.

1.17.   **Liberty Policies.** "Liberty Policies" shall mean the two general liability policies issued by Liberty to InEx designated as follows:  (i) Policy No. TB2-191-448006-

5

1.20.7. Finds that the Assignment of Insurance by InEx to the Non-Louisiana Subclass is valid, binding, and enforceable;

1.20.8. Finds that the indemnity, defense and judgment reduction provisions in Section 4.3 are valid, binding, and enforceable; and

1.20.9. Finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

1.21.    **Pending Settlements.** "Pending Settlements" shall mean settlements of Chinese Drywall claims against InEx that have been (i) agreed to but not paid prior to the Execution Date of this Settlement Agreement and (ii) listed on Exhibit 1.21. No further settlements will be made between the Execution Date and the earlier of (i) the termination of this Settlement pursuant to Section 13 or (ii) the Effective Date, without approval of the Court. If the Court approves any further settlements, those settlements will be included as Pending Settlements, and Exhibit 1.21 will be deemed to be amended to include these settlements.

1.22.    **Plaintiffs' Steering Committee; PSC.** "Plaintiffs' Steering Committee" or "PSC" shall mean the group of plaintiffs' counsel appointed by the Honorable Eldon E. Fallon to manage and administer the affairs of all plaintiffs in MDL No. 2047 and to assist the Court in administering its docket. The PSC, as currently constituted, is described by Pretrial Order No. 8A (Rec. Doc. No. 6960).

1.22.1. "Settlement Class Counsel" shall mean Russ Herman and Arnold Levin.

1.23.    **Prior Settlements.** "Prior Settlements" shall mean the dollar amounts (i) paid by Arch and/or Liberty for the settlement of Chinese Drywall claims against InEx prior to the Execution Date and (ii) listed on Exhibit 1.23, which schedule shall show the amount paid by Arch and/or the amount paid by Liberty for each claim. No further payment of settlements will be made by Arch or Liberty between the Execution Date and the earlier of (i) the termination of this Settlement pursuant to Section 13 or (ii) the Effective Date, without approval of the Court. If the Court approves any further payments, those payments will be included as Prior Settlements, and Exhibit 1.23 will be deemed to be amended to include these payments.

7

## SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST INTERIOR-EXTERIOR IN MDL NO. 2047

# EXHIBIT 1.21  -  LIST OF PENDING SETTLEMENTS

# 1.21.    Pending Settlements

1. **Pilot Remediation Program Settlement:**  Pursuant to (i) the September 23, 2010 Term Sheet between Knauf and InEx and (ii) the subsequent "Settlement Agreement For the Demonstration Remediation Of Homes With KPT Drywall" between the Plaintiffs' Steering Committee and Knauf, InEx has agreed to pay $18,750 per house towards the remediation of up to 120 homes, for a total of up to $2,225,000.

- Prior to the Execution Date of the Settlement Agreement, InEx has funded (i.e. actually paid) its agreed $18,750 for 39 of the homes, as described in "Exhibit 1.23 – List of Prior Settlements," for a total paid of $731,250.

- As of the Execution Date of the Settlement Agreement, InEx has agreed to pay, but not yet paid, its $18,750 per home for up to 81 additional homes, for a total of up to $1,518,750, which amount constitutes Pending Settlements.

2. **Pritchard Housing Authority Settlement:**  As part of a settlement of the Pritchard Housing Authority claim regarding 29 homes in Alabama, InEx has agreed to contribute $250,000, but has not paid that amount as of the Execution Date.  That settlement has, however, been put on hold because one of the participants, The Mitchell Company, has refused to release its claims against other of the participants.  There is the possibility that a motion to enforce the settlement may be filed in court.  If that settlement goes forward for whatever reason, InEx has agreed to pay $250,000 towards the total settlement amount, which constitutes a Pending Settlement.

3. **801 Rue Burgundy, No. 113, Metairie, Louisiana 70005:**  Pursuant to an oral agreement between InEx and the owner of the referenced property, Evelyn Svendson, InEx has agreed to remediate the referenced property as set forth in the United States Risk Management, LLC Report Project No. 15090132-39.  The settlement will include remediation of the referenced property for a cost not to exceed $100,000.00, and this cost constitutes a Pending Settlement.

**Total Amount of Pending Settlements:**

| | |
|---|---|
| Pilot Remediation Program | $1,518,750 |
| Pritchard Housing Authority | 250,000 |
| Svendson | 100,000 |
| Total | $1,868,750 |