# EXHIBIT A

**PROPOSED ALLOCATION PLAN - INEX MDL SETTLEMENT**
(March 13, 2013)

Allocation Committee (the "Committee"):

| | |
|---|---|
| Arnold Levin | Dorothy Wimberly |
| Russ Herman | Hilarie Bass |
| Gerald Meunier | |

The Committee recommends the following allocation protocol for the InEx Settlement:

**1. Eligibility.** To be eligible for an allocation of Settlement Funds, an Affected Property of an InEx Class Member must contain or have contained defective Chinese-manufactured drywall ("CDW") supplied by InEx. Any person or entity that previously has settled with InEx for an Affected Property is not eligible to receive an allocation of settlement funds for that same Affected Property.

**2. Gross Settlement Amount.** The Settlement Funds available for allocation and distribution is $8,000,000.00 ("Gross Settlement Amount").

**3. Set Aside for Attorneys' Fees and Costs.** The parties recognize that the final determination of entitlement to attorneys' fees and costs, and the amount of any such award, shall be made by Judge Eldon E. Fallon. Pending a determination of the entitlement to and amount of any awards of attorneys' fees and costs, the parties agree to set aside a portion of the Gross Settlement Amount to satisfy any such awards. Thirty-two percent (32%) of the Gross Settlement Amount, or $2,560,000.00, shall initially be set aside for an award of attorneys' fees ("Attorneys' Fees Set Aside"). An additional fund in an amount to be determined shall be set aside for an award for the reimbursement of reasonable expenses, including the cost of notice advanced by the Plaintiffs' Steering Committee and the cost of administering the allocation of Settlement Funds ("Cost Set Aside"). Collectively, these two set asides shall be referred to as the "Attorneys' Fees and Cost Set Aside."

**4. Deduction for Payment of Prior and Pending Settlements.** The amount of $2,720,183.00 shall be deducted from the remaining funds of the Gross Settlement Amount to account for payment of Prior Settlements as set forth on Exhibit 1.23 of the InEx Settlement and Pending Settlements as set forth on Exhibit 1.21 of the InEx Settlement. The remaining funds of the Gross Settlement Amount after the Attorneys' Fees and Costs Set Aside and the Deduction for Payment of Prior and Pending Settlements shall be referred to as the "Initial Monies Available for Distribution.

**5. Repair and Relocation Damage Set Aside.** Ninety-five percent (95%) of the Initial Monies Available for Distribution shall be set aside to compensate or reimburse InEx Class

Members for "Repair and Relocation Damages"[1] ("Repair and Relocation Damage Set Aside"). Repair and Relocation Damages shall only be recoverable once per Affected Property, and shall be paid to the person or entity that retains the right to recover for such claims against InEx for CDW claims. This shall include sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer and retained, in writing, the exclusive right, as opposed to the buyer, to pursue InEx for the CDW claims.

**6. Bodily Injury and Other Loss Set Aside.** Five percent (5%) of the Initial Monies Available for Distribution shall be set aside to compensate or reimburse InEx Class Members for alleged bodily injury ("Bodily Injury Set Aside") and "Other Losses"[2] ("Other Loss Set Aside"). The amount of the Bodily Injury Set Aside shall not exceed two and one half percent of the Initial Monies Available for Distribution and the amount of the Other Loss Set Aside shall not exceed two and one half percent of the Initial Monies Available for Distribution.

**7. Affected Property Allocation Per Square Foot.** In order to allocate the Repair and Relocation Damage Set Aside among the InEx Class Members, the Special Master or Claims Administrator shall first compile claims information from the InEx Class Members by a date certain to determine: (i) the total number of InEx-supplied Affected Properties that are entitled to an allocation of InEx Settlement Funds; and (ii) the total combined square footage under air of all such Affected Properties. The Special Master or Claims Administrator shall then divide the total amount of Repair and Relocation Damage Set Aside by the total combined square footage under air of all InEx-supplied Affected Properties to determine the amount per square foot under air to allocate to each Affected Property ("Affected Property Allocation Per Square Foot"). (For example, assume that the Repair and Relocation Damage Set Aside is $4,500,000.00 and the total combined square footage under air equals 450,000 square feet. The Affected Property Allocation Per Square Foot will be $10.00 per square

---

[1] The term "Repair and Relocation Damages" shall mean costs and expenses associated with the following: (i) the removal of the CDW from the Affected Property and repairing or replacing affected building materials and fixtures in the Affected Property (the "repair work"); (ii) the relocation of the property owners' belongings (*i.e.*, moving expenses and storage-related expenses) during the repair work; and (iii) if necessary, obtaining comparable alternative living arrangements for the homeowners during the repair work. Notwithstanding the foregoing, sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer and retained, in writing, the exclusive right to assert all claims associated therewith against InEx shall be entitled to make a claim for their damages under the distribution terms of this "Repair and Relocation Damage Set Aside" section.

[2] The term "Other Losses" shall mean any alleged damages claimed by any Class Member that is not for Repair and Relocation Damages or Bodily Injury.

foot under air.)[3]  In addition to any other requirements under the InEx Settlement Agreement, the InEx Class Members must submit proof satisfactory to the Special Master or Claims Administrator: (a) that the Affected Property contains CDW supplied by InEx; and (b) of the square footage under air of the Affected Property.  Any InEx Class Member who is also a Participating Class Member in the Knauf Class Settlement must comply with the qualifying procedures in Section 4.4 of the Knauf Class Settlement.  All InEx Class Members whether they are owners of unrepaired properties, owners who have repaired their own properties or assignees (legal or equitable) of owner's claims for repaired properties (*e.g.*, builders that have repaired the properties), shall be treated equally and shall be entitled to the same Affected Property Allocation Per Square Foot.

**8. Determination of Net Repair and Relocation Damages Distribution for Affected Property.**  After the Affected Property Allocation Per Square Foot is determined, the Special Master or Claims Administrator shall determine the net monies available for distribution in connection with each Affected Property by multiplying the number of square feet in the Affected Property by the Affected Property Allocation Per Square Foot (the "Net Repair and Relocation Damages Distribution").  (A 2,000 square foot house would be allocated $20,000 of Repair and Relocation Damages in the example discussed above.)

**9. Beneficiary of Net Repair and Relocation Damages Distribution.**  The Net Repair and Relocation Damages Distribution shall be distributed to the owner of each Affected Property unless: (i) the Affected Property has been repaired by a builder, in which case the builder that has repaired that Affected Property shall receive the entire Net Repair and Relocation Damages Distribution (under no circumstances shall a remediating builder be obligated to share any portion of their distribution with Knauf); (ii) the owner is a present or former KPT Property Owner (as that term is defined in Paragraph 1.28 of the Knauf Settlement) obligated to assign the entire Net Repair and Relocation Damages Distribution for that Affected Property pursuant to Paragraph 4.8.2 of the Knauf Settlement; or (iii), the owner is a present or former Mixed Property Owner (as that term is defined in Paragraph 1.35 of the Knauf Settlement) obligated to assign some portion of the Net Repair and Relocation Damages Distribution for that Affected Property pursuant to Paragraph 4.8.2 of the Knauf Settlement.  In the event (i) applies, the Net Repair and Relocation Damages Distribution for that Affected Property shall be transferred to the remediating builder which will not be obligated to assign any of that amount to the Remediation Fund created by the Knauf Settlement.  In the event (ii) applies, the Net Repair and Relocation Damages Distribution for that Affected Property shall be transferred to the Remediation Fund created by the Knauf Settlement (or if the Knauf Settlement is not finally approved, to the Escrow Fund established by the Pilot Program for those assignments that were made through participation in the Pilot Program).  In the event (iii) applies, the Net Repair and Relocation Damages Distribution for that Affected Property multiplied by the KPT Drywall Percentage (as defined in Paragraph 1.26 of the Knauf Settlement) shall be transferred to the Remediation Fund created by the Knauf

---

[3]  This example is designed only to show the mathematics of the formula; it is not an estimate of the amount of the combined square footage or of the Affected Property Allocation Per Square Foot.

Settlement and the remainder shall be transferred to the owner of that Affected Property. Under no circumstances shall any Class Member (property owner or its assignee or any other Class Member) receive a Net Repair and Relocation Distribution for Repair and Relocation Related Expenses beyond their reasonable, actual out-of-pocket (or estimated, in the case of unrepaired properties), Repair and Relocation Related Expenses. To the extent that an assignee of a Class Member has already received full compensation or reimbursement from others in the chain of distribution of the CDW for Repair and Relocation Related Expenses for an Affected Property (pursuant to another settlement or otherwise), that assignee may not receive an additional allocation under this settlement for Repair and Relocation Related Expenses for that same Affected Property.

**10. Recovery Out of Bodily Injury or Other Loss Set Aside.** All Class Members submitting claims for bodily injury from the Bodily Injury Set Aside or Other Losses from the Other Loss Set Aside, including claims addressing Multiple Unit Properties as set forth in Paragraphs 4.3.6.1, 4.7.1 and 4.7.2 of the Knauf Settlement, shall comply with a claims process similar to the process set forth in Paragraph 4.7 of the Knauf Settlement, whether or not that Class Member has claims arising out of KPT Drywall. All Class Members with Affected Properties containing KPT Chinese Drywall (as that term is defined in Paragraph 1.25 of the Knauf Agreement) must, prior to seeking a distribution from the Bodily Injury Set Aside, first seek to recover such benefits from the Knauf Other Loss Fund described in Paragraph 4.6 of the Knauf Settlement. All Class Members who participate in the Knauf Settlement and receive the Lump Sum Payment defined in Paragraph 4.3.1.1. of the Knauf Settlement shall be precluded from receiving any distribution for Other Losses from the Other Loss Set Aside. If a Class Member with an Affected Property containing KPT Chinese Drywall has a claim for bodily injury that is rejected by the Special Master overseeing the Knauf Settlement's Other Loss Fund Claims Procedures, that Class Member shall be precluded from recovering from the Bodily Injury Set Aside. If, on the other hand, a Class Member with an Affected Property containing KPT Chinese Drywall is able to recover some but not all of his/her alleged bodily injury damages from the Knauf Other Loss Fund, that Class Member shall then be entitled to an allocation from the Bodily Injury Set Aside.

**11. Distribution of Bodily Injury or Other Loss Set Aside.** The Special Master or Claims Administrator shall determine the amount of approved bodily injury claims according to the standards set forth in Paragraph 4.7 of the Knauf Settlement. If the amount of approved claims for bodily injury is less than the Bodily Injury Set Aside, the Special Master or Claims Administrator shall award each Class Member with an approved claim the full amount of their approved bodily injury claim. If, on the other hand, the total amount of approved claims for bodily injury exceeds the total amount of the Bodily Injury Set Aside, the Special Master or Claims Administrator shall decrease the amount of each Class Members' approved claim for bodily injury on a pro-rata basis, and award each Class Member with an approved claim their pro-rata share. The Other Loss Set Aside is available to InEx Class Members who do not receive compensation for Other Losses under the Pilot Program or the Knauf Settlement and who did not already release their claim against InEx for Other Losses. If the amount of approved claims for Other Losses is less than the Other Loss Set Aside, the Special Master or Claims Administrator shall award each Class Member with an approved claim the full amount of their approved Other Losses claim. If, on the other hand, the total amount of approved claims for Other Losses exceeds the total amount of the Other Loss Set

Aside, the Special Master or Claims Administrator shall decrease the amount of each Class Members' approved claim for Other Losses on a pro-rata basis, and award each Class Member with an approved claim their pro-rata share.  Under no circumstances shall any Class Member receive a distribution for bodily injury or Other Losses beyond their actual losses.

**12.  Distribution of Unused Bodily Injury or Other Loss Set Aside.**  Any funds from the Bodily Injury Set Aside or Other Loss Set Aside that are not used to compensate an InEx Class Member for bodily injury or Other Losses shall be transferred into a "Supplemental Repair and Relocation Distribution Fund" and distributed on a pro-rata, per square foot basis to all owners of Affected Properties or their assignees in the same manner as provided for in section 6 through 8 above.