# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED )
      DRYWALL PRODUCTS )    MDL NO. 2047
      LIABILITY LITIGATION )
 )
THIS DOCUMENT RELATES TO: )    SECTION: L
 )
*Hobbie, et al. v.* )
*RCR Holdings II, LLC, et al.,* )    JUDGE FALLON
Case No. 10-1113 (E.D. La.) )
 )
*Payton , et al. v. Knauf Gips, KG, et al.,* )    MAG. JUDGE WILKINSON
Case No. 09-07628 (E.D. La.) )
 )
*Wiltz, et al. v. Beijing New Building Materials* )
*Public Limited Co., et al.* )
Case No. 2:10-cv-00361 (E.D. La.) )
 )
*Rogers, et al. v. Knauf Gips KG et al.* )
Case No. 2:10-cv-00362 (E.D. La.) )
 )
*Block et al. v. Gebrueder Knauf* )
*Verwaltungsgesellschaft KG, et al.* )
Case No. 2:11-cv-2349 (E.D. La.) )
 )
*Almeroth, et al. v. Taishan Gypsum Co., LTD.* )
*f/k/a Shandong Taihe Dongxin Col, LTD., et al.* )
Case No. 2:12-cv-0498 (E.D. La.) )
 )
*RCR Holdings II, LLC. v. Arch Insurance* )
*Company and Coastal Construction of South* )
*Florida, Inc. d/b/a/ Coastal Condominiums* )
Case No. 502010CA015377XXXXMBAI )
(15th JDC Palm Beach County, Florida) )
 )
*Coastal Construction Group of South Florida, Inc.* )
*v. Precision Drywall, Inc. and Mid-Continent* )
*Casualty Company* )
Case No. 11-07387 CA 04 )
(11th JDC Miami-Dade County, Fla.) )
 )
*Coastal Construction of South Florida, Inc. and* )
*Arch Insurance Company v. Everest National* )
*Insurance Company, et al.* )
Case No. 12-80380-CIV-MARRA (S.D. Fla.) )

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR AN ORDER (1) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST COASTAL CONSTRUCTION OF SOUTH FLORIDA, INC. RELATED TO VILLA LAGO AT RENAISSANCE COMMONS IN MDL 2047; (2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS; (3) APPROVING THE FORM OF NOTICE AND AUTHORIZING THE DISSEMINATION OF THE NOTICE; (4) SCHEDULING A FAIRNESS HEARING; AND (5) STAYING THE LITIGATION AGAINST COASTAL CONSTRUCTION OF SOUTH FLORIDA, INC.**

This memorandum of law[1] is submitted by Proposed Class Counsel on behalf of Proposed Class Representative, Plaintiff Wendy Lee Hobbie, on behalf of herself, the 181 named Plaintiffs on the Second Amended Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al*., No. 10-1113 (E.D. La.) (Fallon, J.) (the "*Hobbie*" matter), the other owners of 67 condominium Residences in Villa Lago at Renaissance Commons not owned by RCR Holdings II, LLC ("RCR"); on behalf RCR Holdings II, LLC, as owner of 130 condominium Residences in Villa Lago at Renaissance Commons; and Coastal Construction Company of South Florida, Inc. ("Coastal"), in support of their Joint Motion for an Order (1) Preliminarily Approving Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa lago at Renaissance Commons in MDL 2047; (2) Conditionally Certifying a Settlement Class; (3) Approving the Form of Notice and Authorizing the Dissemination of the Notice; (4) Scheduling a Fairness Hearing; and (5) Staying the Litigation Against Coastal Construction of South Florida, Inc.

The parties to this putative class action, Class Members and Coastal, have reached a Settlement Agreement, a copy of which is attached hereto as EXHIBIT "1," resolving all claims asserted in the Litigation.  Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), the

---

[1] Capitalized terms used in this memorandum of law shall have the same meaning as those defined in the Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL No. 2047, dated March 28, 2013 (the "Settlement" or "Settlement Agreement"), attached hereto as EXHIBIT "1."

Settling Parties seek an order[2] from this Court (i) preliminarily approving the proposed Class Action Settlement with Coastal, (ii) conditionally certifying the Settlement Class and appointing Class Representative and Settlement Class Counsel; (iii) approving the form and content of the Notice to the Class and authorizing the dissemination of the Notice; (iv) finding that the proposed plan for distributing Class Notice provides the best notice practicable, satisfies the notice requirements of Rule 23(e) and satisfies all other legal and due process requirements; (v) setting dates and procedures for the Fairness Hearing, including deadlines for Class Members to file objections to the proposed Settlement or request that they be excluded from the Settlement; and (vi) staying the Litigation involving Coastal.

## I.    INTRODUCTION

After over three years of litigation and numerous mediations, Class Members, RCR Holdings II, LLC ("RCR"), Coastal and the other Settling Defendants and Insurers have agreed on a settlement resolving all class and individual claims against Coastal and the other Settling Defendants and Insurers in the Litigation.   This Settlement – arrived at following serious, informed and numerous arm's-length negotiations – requires the Coastal Group to pay the Settlement Amount of $7,200,000 in exchange for a full, complete and final settlement of the Litigation, including a release of claims and barring the initiation, assertion or prosecution of claims against Coastal and the other Settling Defendants and Insurers.

### A.    The Settlement Class

The proposed Settlement now before the Court for preliminary approval is intended to resolve all claims that arise out of Chinese Drywall manufactured, sold, distributed to, used or installed in the Residences at Villa Lago, a 328 unit condominium development located in Boynton Beach, Florida.  The Coastal Group Settlement Contribution, along with funds from the

---

[2] The proposed Preliminary Approval Order is attached hereto as EXHIBIT "2."

Knauf Settlement, the RCR Settlement, the Banner Settlement, and the Global Settlement with Precision Drywall, Inc. ("Precision"), which installed drywall in Villa Lago, will be used to completely remediate all Residences at Villa Lago containing Chinese Drywall and certify the Residences as free of Chinese Drywall, regardless of who manufactured the Chinese Drywall.

The Settlement Agreement establishes a Settlement Fund for the benefit of the Settlement Class, which is defined as: "all persons and entities who owned, leased or occupied a condominium located at Villa Lago at Renaissance Commons in Boynton Beach, Florida, the COA, and all persons and entities who sustained or claim to have sustained damages of any nature or kind as a result of the alleged manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago at Renaissance Commons. Excluded from the Settlement Class are any person, firm, trust, corporation, or other entity related or affiliated with the Participating Defendants and Participating Insurers including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants and Insurers."

**B.**     **The Settlement Benefits**

The proposed Settlement provides for the creation of the Villa Lago Settlement Fund in order to facilitate the funding of the remediation of all units at Villa Lago at Renaissance Commons containing Chinese Drywall, regardless of the manufacturer of the Chinese Drywall. The proposed Settlement, therefore, together with the Banner, Knauf, RCR and global settlements with suppliers, builders, installers and their insurers, resolves all claims arising out of the manufacture, sale, distribution, use, installation or remediation of alleged defective Chinese Drywall at Villa Lago.

The Coastal Group Settlement Contribution in the amount of $7,200,000, which will be paid within fifteen days of the Effective Date of the Settlement, will be combined with funds allocated to the Villa Lago development in the Global Settlement with Precision, in the global

Banner Settlement, and with funds from the RCR Settlement to create the Villa Lago Settlement Fund. The entire Coastal Group Settlement Contribution, all amounts allocated to Villa Lago in the Global Settlement with Precision, all amounts allocated to Villa Lago in the global Banner Settlement, and all amounts the *Hobbie* Plaintiffs received from the RCR Settlement will be deposited into the Villa Lago Settlement Fund.

The Villa Lago Settlement Fund, as shown on EXHIBIT "A" to the Settlement Agreement, shall be distributed as follows: the entire Coastal Group Settlement Contribution, all amounts allocated to Villa Lago in the Global Settlement with Precision, all amounts allocated to Villa Lago in the global Banner Settlement, and the sum of $1,529,189.80 from the *Hobbie* Plaintiffs RCR Settlement shall be deposited into the Remediation Fund, which is the escrow account administered by US Bank in the Knauf Settlement.  In order to fund the remediation of all Residences at Villa Lago containing Chinese Drywall, the Villa Lago Settlement Fund contributions deposited into the Remediation Fund shall be distributed from the Remediation Fund to Moss & Associates, LLC ("Moss"), the lead remediation contractor in the Knauf Settlement, which will remediate the Residences at Villa Lago containing Chinese Drywall, and such payments shall be consistent with the progress payments made to Moss in the Knauf Settlement, or as otherwise agreed to by the Villa Lago Condominium Association at Renaissance Commons, Inc. ("COA") and Moss.

Class Members will use the Villa Lago Settlement Fund along with funds obtained from the Knauf Settlement to, *inter alia*, fund the remediation of all 267 Affected Units identified on a spreadsheet of units to be remediated, attached to the Settlement Agreement as EXHIBIT "B." Pursuant to EXHIBIT "A" to the Settlement Agreement, the cost to remediate all 267 Affected Units at Villa Lago is $24,331,750.00.  Knauf agrees to be responsible for any shortfall on the Precision and/or Banner remediation payments as set forth in EXHIBIT "A" to the Settlement

Agreement, and Knauf will receive the benefit of any overpayments on the Precision and/or Banner allocations. Class Members shall look solely to the Villa Lago Settlement Fund for settlement and satisfaction against the Released Parties of all Released Claims, and shall have no other recovery of costs, fees, attorneys' fees, damages, or any other relief against the Released Parties.

As part of the remediation of all 267 Affected Units identified on EXHIBIT "B" to the Settlement Agreement, Knauf will arrange for GFA International to provide Environmental Certificates in the form attached as Exhibit B to the Knauf Settlement Agreement for all units in Villa Lago, including ones not being remediated. The Environmental Certificates for units not being remediated shall be modified in an appropriate manner. The cost for these inspections is between $250 per unit (3 or more inspections the same day) and $350 per unit (1-2 inspections per day), and a portion of the Villa Lago Settlement Fund will fund this cost for the non-Knauf units as shown on EXHIBIT "A."

The total amount of $709,468.62 shall be made available from the Villa Lago Settlement Fund in accordance with EXHIBIT "A" to the Settlement Agreement to compensate owners and former owners of units containing Chinese Drywall that was not manufactured by Knauf for economic losses consistent with the Knauf settlement. These payments, however, shall not impair any Class Members from also seeking to recover their economic losses or damages for bodily injury from the Knauf Settlement's Other Loss Fund, or to make any claim or receive any benefit for which they are eligible in the Knauf Settlement, the Banner Settlement, or the Global Settlement. The Released Parties, however, shall have no further liability to compensate Class Members of units containing Chinese Drywall that was not manufactured by Knauf.

Remediation under this Settlement Agreement will be coordinated with Knauf and Moss, in accordance with the Scope of Work, which includes: (1) the work described by Moss at

meetings with Class Counsel on January 15, 2013 and January 21, 2013, (2) the work described in the Moss Remediation Protocol attached to the Settlement Agreement as EXHIBIT "C", and (3) such modifications and amendments that Moss and Class Counsel may agree to including, without limitation, provisions relating to warranting Moss's work, dispute resolution and special conditions.  To ensure adequate funding, the Plaintiffs and Moss agree to the following scope of work changes solely for the foreclosed units that require remediation: detach and reset fixtures using the best fixtures available from those removed from both buildings, and detach and reset washers, dryers and dishwashers (and not replace).  All payments to Moss for work performed shall come solely from the Remediation Fund.

The sum of $75,000.00 to be contributed by Knauf as shown on EXHIBIT "A" and included in the Villa Lago Settlement Fund, shall be placed in an account managed by the Plaintiffs, and at the discretion of Class Counsel, shall be used for the benefit of owners and occupants of unaffected units. The fund shall be capped at $150,000.00, inclusive of the contribution by Knauf, and the Released Parties shall have no further liability to those who live in unaffected units.  Settlement Class Counsel shall have full and exclusive control to distribute these funds as they see fit.  In no circumstances, however, shall the Settlement Agreement be construed to require the Released Parties to pay more than the settlement contributions identified in Section 2.1 of the Settlement Agreement.

### C.  <u>Payment of Administrative and Attorney's Fees, Costs and Expenses</u>

The cost of notice to the Class Members and related administration, and claims processing costs ("Administrative Expenses") shall be paid by Settlement Class Counsel from the Villa Lago Settlement Fund.  If Settlement Class Counsel enter into any other settlements on behalf of the Class Members before notice of this Settlement Agreement is given to the Class Members, Settlement Class Counsel shall use their best efforts to provide a single notice to Class

Members of all of the settlements.  Should Settlement Class Counsel determine a single notice to Class Members is appropriate, should settlement with another party occur, and settlement in the this matter does not become final, any money from the Settlement Fund used to pay for notice or administration costs shall be returned to those entities who funded the Coastal Group Settlement Contribution as set forth in Section 2.1 of the Settlement Agreement in proportion to their individual contributions.

Settlement Class Counsel shall be awarded such fees and reimbursed such costs and expenses from the Villa Lago Settlement Fund as are approved by the Court.  However, subject to Court approval, the parties have agreed to attorneys' fees of $2,670,960.62 and costs of $380,946 for a total of $3,051,906.63 as shown on EXHIBIT "A," which amount includes, but is not limited by the projected award of attorney's fees and costs Settlement Class Counsel may receive from the Banner Settlement and the Global Settlement and that may be paid to the Villa Lago Settlement Fund consistent with any fee applications that Settlement Class Counsel may submit to the Court in the Banner Settlement and the Global Settlement.  It is expressly agreed and understood, however, that while Knauf anticipates Settlement Class Counsel will seek a fee application pursuant to the Knauf Settlement Agreement, Knauf has no obligation to pay attorney's fees or costs under this Settlement Agreement as set forth in the Knauf Term Sheet dated September 25, 2012.

Settlement Class Counsel may submit an application to the Court for distributions from the Villa Lago Settlement Fund, and the Settling Defendants and Insurers shall not oppose or object to Settlement Class Counsel's application for an award of attorneys' fees and costs as set forth in Section 13 of the Settlement Agreement ("the Fee and Expense Award").   Any attorneys' fees or costs sought by Settlement Class Counsel shall be solely borne by the Villa Lago Settlement Fund, and the Settling Defendants and Insurers and the Released Parties shall

not have any responsibility for the payment of attorneys' fees, costs or expenses to Settlement Class Counsel.

That portion of the Fee and Expense Award, as approved by the Court, that relates to attorneys' fees only shall be paid from the Villa Lago Settlement Fund to any of the Settlement Class Counsel seeking such payment within five (5) court days after the Court has entered an order awarding Settlement Class Counsel its fees.

The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses to be paid out of the Villa Lago Settlement Fund, and any plan for distribution of the Villa Lago Settlement Fund to Class Members, are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application or any plan of distribution, or any appeal from any such order(s) shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving Settlement.

The Released Parties shall not have any responsibility for, or interest in, or liability whatsoever with respect to any payment of any Fee and Expense Award in the Litigation to counsel for the Plaintiffs or Class Members.  Additionally, the Released Parties shall not have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

If approved by the Court, these fees are to compensate Settlement Class Counsel for all preparation and litigation work performed on behalf of the Class and to reimburse Settlement Class Counsel for reasonable costs expended in the prosecution of this action, as well as Administrative Expenses.  Thus, individual Class Members will not be responsible for payment

9

of attorneys' fees or costs out of their recovery of benefits under the Settlement, and the payment of Administrative Expenses, attorney's fees and costs will be in addition to remediation of all Affected Units at Villa Lago containing Chinese Drywall regardless of the manufacturer of the Chinese Drywall.

*   *   *

Settlement Class Counsel believe the Settlement Agreement is fair, adequate and reasonable in view of a variety of factors, including the estimated damages suffered by the Class, the exposure of Coastal relative to the other Defendants, the complexity of and risks attendant to Class Members' demonstration that their damages were causally linked to Coastal's alleged wrongdoing, the possibility Coastal may not have insurance coverage to respond to Class Members' alleged damages, and the delays inherent in litigating hundreds of individual claims against Coastal.  Class Counsel and Coastal believe the Settlement is a reasonable settlement of disputed claims that was negotiated at arm's length.

The Settling Parties, therefore, respectfully submit the Settlement Agreement is fair, reasonable and adequate under the governing standards for evaluating preliminary approval of class action settlements in the Fifth Circuit.  Moreover, conditional certification of the Class for settlement purposes is appropriate pursuant to Fed. R. Civ. P. 23, and the proposed notice program provided in Section 7 of the Settlement Agreement specifying individual notice via first-class mail to all Class Members; publication of notice through the media identified in Section 7 of the Settlement Agreement; and posting the notice on the Court's Chinese Drywall MDL website, satisfies the requirements of due process.  As set forth below, all prerequisites for preliminary approval of the Settlement Agreement and conditional certification of the proposed Settlement Class have been met, and Settlement Class Counsel and Coastal respectfully submit their Joint Motion for Preliminary Approval of the Settlement Agreement should be granted.

## II.   BACKGROUND

### A.   The Chinese Drywall Litigation

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms. Beginning in the fall of 2005, hundreds of millions of square feet of Chinese Drywall were exported to the United States, sold to distributors and suppliers, resold to builders and installers, and installed in thousands of properties domestically, but primarily in Florida, Louisiana, Alabama, Mississippi, Texas and Virginia.[3]

Certain Governmental agencies found Chinese Drywall to be defective, allegedly causing property damage, including damage to electrical wiring, corrosion of pipes, and damage to or destruction of air-conditioners, refrigerators, HVAC systems, and other appliances.[4]   The Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC") made various recommendations for the repair of properties impacted by Chinese Drywall, including the removal of problematic drywall, fire safety alarm devices, electrical distribution components (including receptacles, switches and circuit breakers), gas service piping and fire suppression sprinkler systems.[5]

On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL

---

[3] The Gypsum Association reports that 320 million square feet of Chinese Drywall were imported from 2005-2007. *See* Gypsum Association Comments, published at
http://www.gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.

[4] *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Germano)*, 706 F. Supp. 2d 655, 664-666 (E.D. La. 2010) (Findings of Fact and Conclusions of Law); *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Hernandez)*, No. MDL 2047, 2010 WL 1710434, at * 8-9 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

[5] *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011, published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

2047, pursuant to 28 U.S.C. § 1407.[6]  The *Hobbie* action, filed on September 21, 2009 in the Circuit Court for Palm Beach County, Florida, involves a multi-unit residential building located in Boynton Beach, Florida, known as Villa Lago.  Villa Lago was built during 2005 through 2007.  It is part of a large mixed use development project known as Renaissance Commons and is composed of 328 residential condominium units.[7]  The *Hobbie* action was removed by Defendant Banner Supply Company [8] on February 26, 2010, then transferred to this Court pursuant to MDL procedures.  The majority of the Class Members in this action have also been named on Class Action Omnibus complaints filed in this Court by the Plaintiffs' Steering Committee in MDL No. 2047.

**B.**    **Reasons for the Settlement**

The Coastal Group, consisting of Coastal, its drywall installer, Precision, and Coastal's and Precision's insurers, shall pay $7,200,000 as set forth in Section 2 of the Settlement Agreement in exchange for the full, complete and final settlement of Class Members' claims against the Settling Parties in the *Hobbie* action and in the omnibus class action complaints that assert claims against Coastal involving Villa Lago.  Although Settlement Class Counsel believe in the merits of the case against Coastal and in their ability to prevail, they recognize that, even if the case against Coastal were to proceed to trial, Coastal would likely appeal any judgment favorable to the Class.  Any post-appeal enforcement proceeding would impose a significant additional delay on the payment of any recovery to individual Settlement Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.

---

[6] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

[7] RCR owns 130 of these units.

[8] Banner Supply Company consists of Banner Supply Company, Banner Supply Company of Pompano, LLC, Banner Supply Company of Fort Myers, LLC, and Banner Supply Company of Tampa, LLC.

The Settling Parties respectfully request that this motion be granted not only because, as will be set forth herein, public policy favors the settlement of complex class actions such as this, but because the Settlement Agreement is an excellent result for the Settlement Class Members. It is fair, reasonable and adequate, and was negotiated at arm's length and most importantly results in the complete remediation of all units at Villa Lago containing Chinese Drywall, regardless of who manufactured the Chinese Drywall.  In light of the foregoing, it is respectfully requested that the Court enter an Order preliminarily approving the Settlement Agreement, conditionally certifying the Settlement Class, approving the dissemination of Notice to the Class, scheduling a Fairness Hearing, and staying the Actions involving Coastal.

## III.   ARGUMENT

### A.   Standard for Preliminary Approval

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Fed. R. Civ. P. 23(e).  The first step in determining whether to grant preliminary approval to a class settlement is for "the Court [to] make a preliminary fairness evaluation of the proposed settlement."  *Cope v. Duggins*, No. 98-3599, 2001 WL 333102, at * 1 (E.D. La. Apr. 4, 2001) (Fallon, J.) (citation omitted).  The Court must "evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing."  *Id*.  Ultimately, to approve a proposed settlement, the Court must determine if it is fair, adequate and reasonable.  *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (Fallon, J.).

At this preliminary stage, the Court's review is less stringent.  *See, e.g., In re OCA, Inc. Sec. and Derivative Litig*., No. 05-2165, 2008 WL 4681369, at * 11 (E.D. La. Oct. 17, 2008) ("As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval.").  It is widely recognized that courts

should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citation and quotation marks omitted).   Where experienced counsel representing many interested parties have extensively negotiated the settlement at arm's length, a strong initial presumption is created that the compromise is fair and reasonable.  *U.S. v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).  Thus, if experienced counsel determine that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway v. American Cast Iron Pipe Co*., 576 F.2d 1157, 1216 (5th Cir. 1978); *see also In re OCA, Inc.,* 2008 WL 4681369, at * 11 (Where there is "no reason to doubt [the] fairness" of the settlement and it "appears to fall within the range of possible approval, the court should grant preliminary approval.").[9]

The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (quoting *Pearson v. Ecological Sci. Corp*., 559 F.2d 171, 176 (5th Cir. 1975)).  Thus, at this stage, so long as the settlement falls into the range of possible approval – giving deference to the result of the parties' arm's-length negotiations and the judgment of experienced counsel

---

[9] The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  *See also In re Train Derailment Near Amite La. on October 12, 2002*, No. MDL 1531, 2006 WL 644494, at * 1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement negotiated at arm's length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

following sufficient investigation and discovery – the settlement should be preliminarily approved and a final fairness hearing scheduled.[10]

**B.**   **The Proposed Settlement Is Fair, Reasonable and Adequate and is in the Range of Possible Approval.**

The proposed Settlement Agreement in this case is fair, reasonable and adequate, and clearly falls within the range of possible approval.  One indication of whether a settlement is fair and reasonable is whether it is the product of serious, arm's-length negotiations.  *Tex. Educ. Agency*, 679 F.2d at 1108.  The Settling Parties in this Litigation have tried to resolve this case through formal and informal mediation on numerous occasions.  On February 15-16, 2011, Settlement Class Counsel and Coastal participated in a mediation before Court-appointed Mediator, Richard O. Kingrea, in Miami, Florida, which by order of this Court, was continued in New Orleans, Louisiana, on March 22, 2011.  Thereafter, Coastal and Settlement Class Counsel attended an informal mediation in Miami, Florida on December 9, 2011; attended Court-ordered mediation before Court-appointed Mediator, Dan Balhoff, on August 22-23, 2012; attended Court-ordered mediation on January 15-16, 2013, and had numerous additional discussions between January 17, 2013 and January 30, 2013, which ultimately resulted in the Settling Parties reaching agreement and executing a Term Sheet dated January 29, 2013 evidencing the terms of the Settlement.

Moreover, Settlement Class Counsel are highly competent counsel, all with many years of experience litigating complex class actions and cases involving defective products. Settlement Class Counsel also possess adequate information concerning the strengths and

---

[10] In determining whether to approve a settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits.  *See, e.g., Maher v. Zapata Corp*., 714 F.2d 436, 455 (5th Cir. 1983); *Cotton*, 559 F.2d at 1331; *Turner,* 472 F. Supp. 2d at  843.  This is, in part, because of the complexity and size of class actions.  *Cotton*, 559 F.2d at 1331 (citation omitted).  The Fifth Circuit has recognized that certification of a class for settlement purposes is beneficial in resolving major class actions.  *In re Beef Indus. Antitrust Litig*., 607 F.2d 167, 173-177 (5th Cir. 1979).

weaknesses of the Litigation against Coastal after extensive document discovery and litigating this case for over three years. The Court may presume, therefore, that the proposed Settlement is fair and reasonable, as it is the result of arm's-length negotiations. *See Camp v. Progressive Corp*, No. 01-2680, 2004 WL 2149079, at * 7 (E.D. La. Sept. 23, 2004).

The Settlement Agreement also contains reasonable economic terms along with the manner and form of notice to be given to the Class and the contingencies or conditions to the Settlement's final approval. Moreover, the complexity, expense, uncertainty, and likely duration of the Litigation also militate in favor of consummating the settlement process. Settlement Class Counsel respectfully submit that the above-cited circumstances support preliminary approval of the Settlement.

### C. The Requirements of Rule 23 Have Been Met for Conditional Certification of the Settlement Class.

For purposes of conditionally certifying the Rule 23(b)(3) Settlement Class sought by the Settling Parties, the *Manual for Complex Litigation* (Fourth) § 21.632 (2004) advises:

> If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).

Further, "[i]f there is a need for subclasses, the judge must define them and appoint counsel to represent them." *Id*. This comports with the Supreme Court's holding in *Amchem* that "[s]ettlement is relevant to a class certification," but the requirements of Rule 23(a) and 23(b)(3) must still be met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id*.

16

In this case, all of the requirements of Rule 23 have been met.  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Rule 23(b)(3) also requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Settlement Class.

### 1.  <u>Numerosity</u>

Here, the class is comprised of a readily identifiable group – all persons and entities who owned, leased or occupied a condominium located at Villa Lago at Renaissance Commons in Boynton Beach, Florida, the COA, and all persons and entities who sustained or claim to have sustained damages of any nature or kind as a result of the alleged manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago at Renaissance Commons. Excluded from the Settlement Class are any person, firm, trust, corporation, or other entity related or affiliated with the Participating Defendants and Participating Insurers including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants and Insurers.

There are a total of 328 units at Renaissance Commons.  RCR owns 130 of these units. Therefore, there are 198 remaining units in the class.  Of these 198 units, 131 of them are owned by the 182 named Class Members. That leaves a total of 67 Residences that are not represented by any of the named plaintiffs.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir.

1999) (a class composed of 100 to 150 members will generally satisfy the numerosity requirement); *see* Alba Conte & Herbert B. Newberg, 1 Newberg on Class Actions, § 3:3 (4th ed. 2010) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

### 2. **Commonality**

The commonality requirement of Rule 23(a)(2) is met in this case.  The Judicial Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the commonality of facts in the various cases."[11]  Questions surrounding the effects of the Chinese Drywall on Class Members and the damages caused by the Chinese Drywall are issues common to all Class Members, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); 1 Newberg on Class Actions, § 3:1 ("Convenience, uniformity of decision, and judicial economy are achieved through the class action device by litigating common issues only once on behalf of all class members.").

### 3. **Typicality**

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 1 Newberg on Class Actions, § 3:13 (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)).  In other words, courts must determine "whether other [class] members have

---

[11] *Hernandez*, 2010 WL 1710434, at * 1 (Findings of Fact).

the same or similar injury, whether the action is based on conduct which is not unique to the named class members, and whether other class members have been injured by the same conduct." *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See*, *e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-157 (1982).  The typicality requirement has been liberally construed by the federal courts.  *See*, *e.g.*, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Class Members in this case is seeking money from Coastal for the costs of remediation of the allegedly defective Chinese Drywall and other damages allegedly caused by the Chinese Drywall. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." 1 Newberg on Class Actions, § 3:13.  The proposed Class Representative is a Plaintiff seeking to hold Coastal liable for damages resulting from Chinese Drywall installed in her Residence.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires that the named class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions, § 3:21.  Second, the named class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *Amchem*, 521 U.S. at 625-626 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted).  At this preliminary stage of the approval process, there is nothing to suggest that this requirement has not been met.  The named representative is a member of the Class she seeks to represent – she is an owner of a Residence at Villa Lago – and

does not possess any interests antagonistic to the Class with respect to their claims against Coastal.  Here, both the Class Representative and the absent Class members are equally interested in detailing to the Court and a jury the nature of Coastal's liability, and are further committed to obtaining appropriate compensation from living in the Affected Properties.

Moreover, Settlement Class Counsel conducted these class negotiations with Coastal at arm's length, and will fairly and adequately represent the Class.  *See Brown v. Ticor Title Ins*., 982 F.2d 386, 390 (9th Cir. 1992).  The Court may take judicial notice of Class Counsel's substantial experience in litigating mass tort class actions and complex product liability cases.[12]  Class Counsel have been lead counsel in numerous complex class action cases and have aggressively litigated the *Hobbie* Plaintiffs' and RCR's claims against Coastal.  Class Counsel possess adequate information concerning the strengths and weaknesses of the Litigation against Coastal after extensive document discovery and litigating this case for well over three years.  Class Counsel have negotiated the proposed Settlement from a position of knowledge and strength, and as advocates for the entirety of the Class.  They have obtained an advantageous settlement that treats all Class members fairly, and provides real value to all.  Therefore, the adequacy of representation requirement is readily satisfied for certification.

### 5.  <u>Common Questions of Law and Fact Predominate</u>

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  1 Newberg on Class Actions, § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed

---

[12] Further detailed credentials of Settlement Class Counsel are enumerated on their firm resumes, attached hereto as EXHIBIT "3.".

classes are sufficiently cohesive to warrant adjudication by representation"). In this case it makes eminent good sense to resolve the claims against Coastal in this forum through the class action device. The issues of Coastal's liability predominates over any individual issues involving the Class Members. Moreover, all Class Members are unified by common factual allegations. A class settlement will also ensure that funds are available to remediate the Class Members' Affected Properties and provide compensation for other damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication. Factors the Court may consider include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.[13] Fed. R. Civ. P. 23(b)(3)(A)-(D). Consideration of each of these factors weighs in favor of certification of the Settlement Class.

First, the interest of individuals in controlling this litigation is limited. While the damages of some Class Members may be sufficiently significant to warrant individual litigation, the damage to most individuals is slight compared to the cost of litigating a case of this complexity. As the U.S. Supreme Court reasoned in *Amchem*,

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry recoveries into something worth someone's (usually an attorney's) labor.

521 U.S at 617. Importantly, Class Members who wish to pursue their own individual

---

[13] As stated earlier, any difficulties of management of this Class need not be considered. *Amchem*, 521 U.S. at 620.

lawsuits can request exclusion from the Class if they so desire.  Moreover, given the unique nature of this Action, there are economies of scale in remediation of the entire condominium development that make individually litigating this case against Coastal undesirable.  The second factor, the nature and extent of any existing litigation, also weighs in favor of class action superiority for settlement purposes.  At the time of Settlement, all claims filed on behalf of the Plaintiffs and putative Class Members were either transferred to or originally filed in this Court.  Third, it is desirable to concentrate the litigation in this forum because this Court has presided over the ongoing massive Chinese Drywall Multidistrict Litigation since June 15, 2009.  Finally, the proposed Settlement resolves any manageability problems by creating a mechanism for reviewing the individual claims of Class Members, thereby permitting a sizable number of Class Members to achieve individual relief without burdening the judicial system.  Indeed, given the U.S. Supreme Court's holding that a court certifying a settlement class need not decide whether a class action would be manageable at trial, *id.,* at 620, the Court need not even consider the issue of manageability.   For all of the above reasons, a class action is the superior method of adjudicating this controversy.

In short, the class action mechanism offers substantial economies of time, effort, and expense for the litigants in this matter, as well as for the Court.  *See White v. Imperial Adjustment Corp*., No. 99-3804, 2002 WL 1809084, at * 6 (E.D. La. Aug. 6, 2002) ("Rule 23(b)(3) applies to cases for which a class action would achieve economies of time, effort, and expense, [and] promote uniformity of decision as to persons similarly situated.").  Given the various suits pending in federal court, approval of the Settlement and the resolution of all Chinese Drywall claims against Coastal in this forum benefits all parties.

### D.     The Proposed Form and Method of Class Notice is Adequate and Satisfies the Requirement of Rule 23.

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified by reasonable effort. Fed. R. Civ. P. 23(c)(2)(b). Further, "[t]he Due Process clause also gives unnamed class members the right to notice of the settlement of a class action." *OCA*, 2008 WL 4681369 at *15, *citing*, *Fidel v Farley*, 534 F. 3d 508, 513-14 (6th Cir. 2008); *DeJulius v. New England Health Care Employees Pension Fund*, 429 F. 3d 935, 943-44 (10th Cir. 2005). The law requires that class notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeJulius*, 429 F. 3d at 944, *quoting*, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *OCA*, 2008 WL 4681369 at *15. For all class members "whose names and addresses may be ascertained through reasonable effort, "individual notice must be sent. *Eisen v. Carlisle & Jacqueline*, 471 U.S. 156, 173 (1974); *Amchem*, 521 U.S. at 617; see also *In re Nissan Moror Corp. Antitrust Litig.*, 552 F. 2d 1088, 1097 (5th Cir. 1977).

In accordance with these legal parameters, individual notice by first-class mail shall be provided to all reasonably identifiable Class Member, and to their counsel, if any. Additionally, since the Villa Lago is located in Boynton Beach, Florida, notice of the Settlement will also be published once in the following print media: (1) the Miami Herald; (2) the West Palm Beach News; and (3) the South Florida Sun Sentinel. Finally, the Settling Parties are also requesting that the Settlement Agreement be posted on the Court's Chinese Drywall MDL website.

The Court should approve the form and content of the proposed Class Settlement notice ("Notice").[14]  The Notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1).  The Notice objectively and neutrally apprises all Class Members of the nature of the action, the definition of the Class sought to be certified for purposes of the Settlement, the Class claims and issues, that Class Members may enter an appearance before the Court at the Fairness Hearing (in accordance with the procedures set forth in the Notice), that the Court will exclude from the Class any Class Member who opts out (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).  The Notice additionally discloses the date, time and location of the Fairness Hearing and the procedures and deadlines for the submission of objections to any aspect of the Settlement.  These disclosures are complete and should be approved by the Court.  *See*, *e.g.*, *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000).

The Notice provides clear direction and instructions to Class Members regarding their options under the Settlement.  Upon notification of the Settlement, Class Members have three choices: (1) approve the Settlement and share in the settlement proceeds; (2) opt out of the Settlement, in which case they will not participate in the settlement recovery and will retain their individual claims against Coastal; or (3) object to the Settlement, in which case they will nonetheless remain Class Members.  To participate in the Settlement, Class Members need do nothing at this time.  Class Members who wish to opt out of the Settlement must submit timely notice of their intent to opt out.  Class Members who wish to object to the Settlement must file and serve a notice of their intention to appear and object.  Objectors may submit a memorandum of law in opposition, as well as any admissible evidence relevant to the issues to be heard,

---

[14] Both the long-form individual Notice and the short-form summary Notice are attached hereto as EXHIBITS "4" and "5," respectively.

provided that such Class Member has timely provided any and all papers in opposition to the Settlement upon which the objection may be based.  Objectors may also appear before the Court at the Fairness Hearing.

At the Fairness Hearing, any Class Members who have timely filed and served a notice of their intention to appear may voice any objections.  The Court can then consider the merits of the Settlement in light of any objections and determine whether to grant final approval of the Settlement.  At the Fairness Hearing, the Settling Parties will have submitted briefs and other documents in support of the final approval of the Settlement.  If the Court finds the Settlement Agreement to be fair and reasonable, the Court should enter a Final Judgment and Order of Dismissal with Prejudice, dismissing this action with prejudice as to the Released Parties and effecting a release of all claims against the Released Parties as provided for in the Settlement Agreement.

## IV.    STAY OF LITIGATION

In order to facilitate the Settlement Agreement with Coastal, the Class Members and Coastal jointly request the Court enter a stay of the Actions as they relate to Coastal until the Court is able to make a determination on the final approval of the Settlement and enter the Final Order and Judgment.

## V.    CONCLUSION

The Settling Parties respectfully request that this Court find preliminarily that the Settlement Agreement is fair, reasonable and adequate, and that notification to Class Members of the terms of the Settlement and their rights in connection with the Settlement is warranted.  The Settling Parties seek entry of an Order: (1) preliminarily approving the Settlement; (2) conditionally certifying the Settlement Class as set forth in the Preliminary Approval Order; (3)

approving the form and content of Notice to the Class and authorizing the dissemination of the

Notice; (4) scheduling a Fairness Hearing; and (5) staying the Litigation involving Coastal.

DATED: April 8, 2013                         Respectfully submitted,

/s/ Gary E. Mason
Gary E. Mason
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Suite 605
Washington, D.C.  20036
Telephone:  (202) 429-2290
Facsimile:  (202) 429-2294

Adam C. Linkhorst, Esq.
LINKHORST & HOCKIN P.A.
4495 Military Trail, Suite 106
Jupiter, Florida 33458
Telephone:   561.626.8880/954.776.5990
Facsimile:  561.626.8885

Joel R. Rhine
RHINE LAW FIRM
314 Walnut Street, Suite 1000
Wilmington  NC  28401
Telephone:  (910) 772-9960
Facsimile:   (910) 772-9062

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
Telephone: (888) 981-0939
Facsimile: (919) 981-0199

Gregory S. Weiss (Florida Bar No. 163430)
Leopold Law, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (516) 515-1401
Email: gweiss@leopold-law.com

*Proposed Class Counsel*

*/s/* Addison J. Meyers
Addison J. Meyers, Esquire
MINTZER SAROWITZ ZERIS
LEDVA & MEYERS, LLP
The Waterford at Blue Lagoon
1000 NW 57th Court, Suite 300
Miami, FL 33126
Telephone: (305) 774-9966
Fax: (305) 774-7743
Email: ameyers@defensecounsel.com

*Attorneys for Coastal Construction of South Florida, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on all counsel of record by ECF, e-mail and/or by placing same in the U. S. Mail, postage prepaid, this 8th day of April, 2013.

_____/s/ Gary E. Mason_____
Gary E. Mason