# EXHIBIT "1"

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL NO. 2047 |
|  | ) |  |
| THIS DOCUMENT RELATES TO: | ) | SECTION: L |
|  | ) |  |
| *Hobbie, et al. v.* *RCR Holdings II, LLC, et al.,* | ) ) | JUDGE FALLON |
|  | ) |  |
| No. 10-1113 | ) ) | MAG. JUDGE WILKINSON |

## SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST COASTAL CONSTRUCTON OF SOUTH FLORIDA, INC. RELATED TO VILLA LAGO AT RENAISSANCE COMMONS IN MDL NO. 2047

This settlement is entered into by and between Plaintiff, Wendy Lee Hobbie, on behalf of herself, the 181 named plaintiffs joined in the Second Amended Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 (E.D. La.) (Fallon, J.), (the "*Hobbie* Plaintiffs"), the other owners of 67 condominiums located in the Villa Lago at Renaissance Commons not owned by RCR Holdings II, LLC, (the "Absent Class Members") and RCR Holdings II, LLC (collectively "Plaintiffs"); the Villa Lago Condominium Association at Renaissance Commons, Inc.; and the following Defendants and Insurers: Coastal Construction Company of Palm Beach, Inc., Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, and Coastal Construction Group of South Florida, Inc.; Arch Insurance Company, as issuer of a surety bond with Coastal as Principal with regard to the Villa Lago project; Precision Drywall and its related insurers (including, but not limited to Mid-Continent Casualty Company and Old Dominion Insurance Company to the extent of policies issued to Precision) and Precision's surety bond on

this project; Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC, Banner Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International, LLC, and any other entity insured under the Banner Insurance Policies; Knauf Plasterboard (Tianjin) Co. Ltd.; Knauf Plasterboard (Wuhu) Co., Ltd.; Guangdong Knauf New Building Material Products Co., Ltd; Knauf Gips KG; Gebr. Knauf Verwaltungsgesellschaft KG; Knauf International GmbH; Knauf Insulation GmbH; Knauf UK GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltd.; and PT Knauf Gypsum Indonesia; and the following insurers to the extent of policies issued to Coastal: Arch Insurance Company, as issuer of a CGL policy to Coastal, Everest National Insurance Company, Allied World Assurance Company (U.S.) Inc. and Lexington Insurance Company.

WHEREAS, on or about June 24, 2005, Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums and RCR executed an AIA Document A111-1997, Standard Form of Agreement Between Owner and Contractor, pursuant to which Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums agreed to construct for RCR the Villa Lago at Renaissance Commons, a 328 unit condominium development located in Boynton Beach, Florida, consisting of two (2) residential towers, an enclosed parking lot and common areas; and

WHEREAS, on or about February 1, 2006 Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums and Precision Drywall, Inc. executed a Contract Agreement and General Conditions Between Contractor and Subcontractor Contract No. 5581-19, pursuant to which Precision Drywall, Inc. agreed to purchase and install drywall at Villa Lago; and

WHEREAS, between June 24, 2005, and March 18, 2007, Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums built Villa Lago; and

2

WHEREAS, between January 2006 and November 2006, one or more of the Banner entities purchased from La Suprema Enterprise, Inc. and/or La Suprema Trading, Inc. drywall that was manufactured in China by one or more of the Knauf entities and by other non-Knauf manufacturers; and

WHEREAS, between June 2006 and January 1, 2007, one or more of the Banner entities distributed and sold drywall to Precision for installation at Villa Lago; and

WHEREAS, between June 2006 and April 2007 Precision installed at Villa Lago the drywall it purchased from one or more of the Banner entities; and

WHEREAS, RCR, as owner and developer of Villa Lago, sold and/or leased residences to the Hobbie Plaintiffs and to the absent Class Members, and retained 130 condominium units as RCR rental units; and

WHEREAS, in or about 2009, Plaintiffs and RCR allegedly detected sulfur odors in the residences and the RCR Rental Units, and allegedly observed corrosion of pipes, wiring, metal finishes and fixtures, including the HVAC systems and fire sprinklers, and allegedly experienced failures of electronic products, including televisions and computers; and

WHEREAS, the Plaintiffs and RCR have made a demand on the Defendants and Insurers for damages as a result of the alleged installation of Chinese manufactured drywall in the Residences, the RCR Rental Units and in the common areas at Villa Lago; and

WHEREAS, some, but not all of the Defendants have been joined as defendants in the *Hobbie* matter, and/or in one or more Class Action Omnibus Complaints filed in the United States District Court for the Eastern District of Louisiana MDL No. 2047 ("Omni Complaints"), including but not limited to *Payton, et al v. Knauf Gips KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-

3

00361 (E.D. La.); *Rogers, et al. v. Knauf Gips KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.); *Block et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al.*, Case No. 2:11-cv-2349 (E.D. La.); and *Almeroth, et al. v. Taishan Gypsum Co., LTD. f/k/a Shandong Taihe Dongxin Co., LTD., et al.*, Case No. 2:12-cv-0498 (E.D. La.), and are alleged to be liable for damages caused by the manufacture, sale, distribution, use or installation of Chinese Drywall at Villa Lago; and

WHEREAS, RCR Holdings II, LLC has filed two lawsuits against Coastal and its Surety, including, but not limited to those claims asserted in those matters styled: *RCR Holdings II, LLC. V. Arch Insurance Company and Coastal Construction of South Florida, Inc. d/b/a/ Coastal Condominiums*, Case No. 502010CA015377XXXXMBAI (15th Judicial Circuit in and for Palm Beach County, Florida); and a third party complaint within the *Hobbie* litigation styled *RCR Holdings II, LLC v. Arch Insurance Company*, Case No. 10-1113; and

WHEREAS, certain Defendants and Insurers have filed claims against each other arising out of the alleged installation of Chinese Drywall at Villa Lago, including, but not limited to claims asserted in the matters styled: *Coastal Construction Group of South Florida, Inc. v. Precision Drywall, Inc. and Mid-Continent Casualty Company*, Case No. 11-07387 CA 04 (11th JDC Miami-Dade County, Fla.); and *Coastal Construction of South Florida, Inc. and Arch Insurance Company v. Everest National Insurance Company, et al.*, Case No. 12-80380-CIV-MARRA (S.D. Fla.); and

WHEREAS, the Defendants and Insurers have denied liability for the manufacture, sale, distribution, use and installation of Chinese Drywall at Villa Lago; and

WHEREAS, to avoid the effort, expense, uncertainties and risk of continued litigation, Plaintiffs, Class Members, the COA, and the Defendants and Insurers now wish to amicably settle and adjust their differences on the basis hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound, Plaintiffs and Participating Class Members, the COA and the Defendants and Insurers agree as follows:

1.   **Definitions**

1.1.   "**Actions**" shall mean the *Hobbie* action, all Class Action Omnibus Complaints filed in MDL No. 2047 in which any of the Plaintiffs and Participating Class Members or RCR brought claims against any of the Defendants or Insurers relating to the manufacture, sale, distribution, use and installation of Chinese Drywall at Villa Lago in Boynton Beach, Florida, including but not limited to: *Payton, et al v. Knauf Gips KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.); *Rogers, et al. v. Knauf Gips KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.); *Block et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al.*, Case No. 2:11-cv-2349 (E.D. La.); and *Almeroth, et al. v. Taishan Gypsum Co., LTD. f/k/a Shandong Taihe Dongxin Co., LTD.*, et al. Case No. 2:12-cv-0498 (E.D. La.), related claims filed by RCR, including the matter styled *RCR Holdings II, LLC. V. Arch Insurance Company and Coastal Construction of South Florida, Inc. d/b/a/ Coastal Condominiums*, Case No. 502010CA015377XXXXMBAI (15th Judicial Circuit in and for Palm Beach County, Florida); and a third party complaint filed within the *Hobbie* litigation styled *RCR Holdings II, LLC v. Arch*

5

*Insurance Company*, Case No. 10-1113; and related claims filed by and between some Defendants and Insurers, including those claims asserted in the matters styled: *Coastal Construction Group of South Florida, Inc. v. Precision Drywall, Inc. and Mid-Continent Casualty Company*, Case No. 11-07387 CA 04 (11th JDC Miami-Dade County, Fla.); and *Coastal Construction of South Florida, Inc. and Arch Insurance Company v. Everest National Insurance Company, et al.*, Case No. 12-80380-CIV-MARRA (S.D. Fla.).

1.2.   "**Administrative Expenses**" shall mean expenses associated with notice to the Class Members and administering the Settlement and shall include, but not be limited to, the expenses of the notice providers, if any.

1.3.   "**Affected Property**" shall mean all 267 units at Villa Lago containing Chinese Drywall that are identified on a spreadsheet, attached hereto as EXHIBIT "B," to be remediated pursuant to this agreement.

1.4.   "**Allied World**" shall mean Allied World Assurance Company (U.S.) Inc. to the extent of insurance policies issued to Coastal and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, divisions, reinsurers, and all predecessors and successors, assigns, or legal representatives.

1.5.   "**Arch**" shall mean Arch Insurance Company, as issuer of a CGL policy to Coastal, and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents,

6

attorneys, employees, parents, associates, divisions, reinsurers, and all predecessors and successors, assigns, or legal representatives.

1.6. "**Arch Surety**" shall mean Arch Insurance Company, as issuer of a surety bond (the "Bond") with Coastal as Principal with regard to the Villa Lago project, and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, divisions, reinsurers, and all predecessors and successors, assigns, or legal representatives.

1.7. "**Banner**" shall mean Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC, Banner Supply Co. Fort Myers, LLC, Banner Supply Co. - Tampa, LLC, and Banner Supply International, LLC and all of their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers, and all predecessors and successors, assigns, or legal representatives.

1.8. "**Banner Settlement**" shall mean a proposed class action settlement between the Plaintiffs' Steering Committee in MDL 2047, Banner and Banner's insurers that was approved by the Court on February 7, 2013.

1.9. "**Class**," "**Settlement Class**," "**Class Members**" shall mean all persons and entities who owned, leased or occupied a condominium located at Villa Lago at Renaissance Commons in Boynton Beach, Florida, the COA, and all persons and entities who sustained or claim to have sustained damages of any nature or kind as a result of the alleged manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago at Renaissance Commons.

7

Excluded from the Settlement Class are any person, firm, trust, corporation, or other entity related or affiliated with the Participating Defendants and Participating Insurers including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants and Insurers.

1.10. "**Class Representative**" shall mean Wendy Lee Hobbie.

1.11. "**COA**" shall mean the Villa Lago Condominium Association at Renaissance Commons, Inc.

1.12. "**Coastal**" shall mean Coastal Construction Company of Palm Beach, Inc., Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, Coastal Construction Group of South Florida, Inc. and any and all affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, insurers, and all predecessors and successors, assigns, or legal representatives.

1.13. "**Coastal Group**" means Coastal, Precision, Arch Surety and the Insurers.

1.14. "**Coastal Group Settlement Contribution**" shall mean that sum set forth in Section 2.1 below.

1.15. "**Court**" shall mean the United States District Court for the Eastern District of Louisiana and the Honorable Eldon E. Fallon, who presides over *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047.

1.16. "**Defendants**" shall mean Coastal, Precision, Banner and Knauf.

1.17. "**Defendants and Insurers**" shall mean Coastal, Precision, Old Dominion, Mid-Continent Casualty Company, Banner, Knauf, Arch, Arch Surety, Everest, Allied

8

World and Lexington, and any and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, insurers, reinsurers, and all predecessors and successors, assigns, or legal representatives.

1.18.   **"Effective Date"** shall have the meaning set forth in Section 3 below.

1.19.   **"Escrow Account"** shall have the meaning set forth in Section 11 below.

1.20.   **"Everest"** shall mean Everest National Insurance Company to the extent of insurance policies issued to Coastal, and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, divisions, reinsurers, and all predecessors and successors, assigns, or legal representatives.

1.21.    **"Execution Date"** shall mean the date this Settlement Agreement is signed by all Parties.

1.22.   **"Final Order and Judgment"** shall mean an order and judgment entered by the Court as set forth in Sections 3.1.2 and 4.3 below.

1.23.   **"Global Settlement"** shall mean the class action settlement between the Plaintiffs' Steering Committee in MDL 2047, and participating Suppliers, Builders and Installers and Participating Insurers in MDL 2047 that was approved by the Court on February 7, 2013.

1.24.   **"Global Settlement with Precision"** shall mean the class action settlement between the Plaintiffs' Steering Committee in MDL 2047, and participating

9

Suppliers, Builders and Installers and Participating Insurers in MDL 2047 in which Precision is participating and that was approved by the Court on February 7, 2013.

1.25. "*Hobbie* **action**" or "*Hobbie* **matter**" shall mean the Second Amended Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 (E.D. La.) (Fallon, J), originally filed in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida that was subsequently removed by Banner on February 26, 2010 to the United States District Court for the Southern District of Florida and thereafter transferred to the United States District Court for the Eastern District of Louisiana and consolidated with MDL 2047.

1.26. "**Insurers**" shall mean Arch, Everest, Old Dominion, Mid-Continent Casualty Company, Allied World and Lexington.

1.27. "**Knauf**" and "**Knauf Defendants**" shall mean all Knauf entities that are signatories to the Knauf Settlement, including, but not limited to: Knauf Plasterboard (Tianjin) Co. Ltd. ("KPT"); Knauf Plasterboard (Wuhu) Co., Ltd.; Guangdong Knauf New Building Material Products Co., Ltd; Knauf Gips KG; Gebr. Knauf Verwaltungsgesellschaft KG; Knauf International GmbH; Knauf Insulation GmbH; Knauf UK GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltd.; and PT Knauf Gypsum Indonesia.

1.28. "**Knauf Settlement**" shall mean the class action settlement between the Plaintiffs' Steering Committee in MDL 2047, and the Knauf Defendants that was approved by the Court on February 7, 2013.

10

1.29. "**Lexington**" shall mean Lexington Insurance Company to the extent of insurance policies issued to Coastal, and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, divisions, reinsurers, and all predecessors and successors, assigns, or legal representatives.

1.30. "**Litigation**" shall mean all Actions as they relate to the claims against the Defendants, the Defendants and Insurers, and all actions filed by or against any of the Defendants or Insurers arising out of the manufacture, sale, distribution, use, or installation of Chinese Drywall at Villa Lago and all Actions relating to insurance coverage for Chinese Drywall relating to Villa Lago.

1.31. "**Mid-Continent**" shall mean Mid-Continent Casualty Company to the extent of insurance policies issued to Precision and to the extent Coastal is an additional insured under the policies issued to Precision, and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, divisions, reinsurers, and all predecessors and successors, assigns, or legal representatives.

1.32. "**Moss**" shall mean Moss & Associates, LLC. the lead contractor in the Knauf Settlement.

1.33. "**Non-Knauf Units**" shall mean Residences and RCR Rental Units containing Chinese Drywall manufactured by someone other than Knauf.

1.34. "**Old Dominion**" shall mean Old Dominion Insurance Company to the extent of insurance policies issued to Precision and to the extent Coastal is an additional

insured under the policies issued to Precision, and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, divisions, reinsurers, and all predecessors and successors, assigns, or legal representatives.

1.35.  **"Participating Class Member"** shall mean all Class Members who do not opt out of this class action settlement as provided in Section 8.

1.36.  **"Participating Defendants"** shall mean Coastal, Precision, Banner and Knauf.

1.37.  **"Participating Insurers"** shall mean Arch, Arch Surety, Everest, Allied World, and Lexington, to the extent of insurance policies issued to Coastal, and Mid-Continent and Old Dominion, to the extent of insurance policies issued to Precision, and Banner's insurers.

1.38.  **"Plaintiffs"** shall mean the 181 named plaintiffs joined in the *Hobbie* Matter, the other owners and occupants of 67 condominiums located at the Villa Lago at Renaissance Commons not owned by RCR, and RCR.

1.39.  **"Precision"** shall mean Precision Drywall, Inc. and Precision's surety bond on this project, and all of their affiliated, related, parent, and subsidiary companies, their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, divisions, and all predecessors and successors, assigns, or legal representatives.

1.40.  **"Preliminary Approval Order"** shall mean an order of this Court preliminarily approving the Settlement.

1.41.   "**RCR**" shall mean RCR Holdings II, LLC, and all its insurance carriers except any carriers that issued a Builder's Risk Policy.

1.42.   "**RCR Rental Units**" shall mean all residential condominium units in the development Villa Lago at Renaissance Commons located in Boynton Beach, Florida, owned or retained by RCR as rental units.

1.43.   "**RCR Settlement**" shall mean the class action settlement between the Hobbie Plaintiffs and RCR that was approved by the Court on November 19, 2012.

1.44.   "**Released Claims**" shall have the meaning set forth in Section 5.

1.45.   "**Released Parties**" shall mean Coastal, Mid Continent, Old Dominion, Arch Surety, Precision, Banner, Knauf, Arch, Everest, Allied World, and Lexington, and their respective parents, subsidiaries, affiliates, divisions, predecessors, successors, heirs, legal representatives, legatees, assigns, insurers, reinsurers, and all past, present and future officers, directors, board members, shareholders, members, presidents, managers, partners, employees, agents, servants, representatives, consultants, and in-house or outside attorneys.

1.46.   "**Remediation**" shall mean all work performed or anticipated within the Scope of Work as described by Moss on January 15 and 21, 2013, attached hereto as EXHIBIT "C."

1.47.    "**Remediation Fund**" shall mean the escrow account administered by US Bank in the Knauf Settlement and into which those sums identified in Section 2.1 below will be deposited in order to fund remediation of the Villa Lago development.

1.48.   "**Residence[s]**" shall mean the residential condominiums in a development called Villa Lago at Renaissance Commons located in Boynton Beach, Florida.

1.49.   "**Settlement**" or "**Settlement Agreement**" shall mean this Settlement Agreement, and the settlement for which it provides, resolving all claims brought against the Defendants and Insurers, and the Released Parties, as well as all exhibits attached hereto or incorporated herein by reference

1.50.   "**Settlement Class Counsel**" means Gary E. Mason and Daniel R. Bryson of Whitfield Bryson & Mason LLP, Joel R. Rhine of The Rhine Law Firm, P.C., Adam Linkhorst of Linkhorst & Hockin P.A., and Gregory S. Weiss of Leopold Law, P.A.

1.51.   "**Settlement Amount**" means seven million two hundred thousand dollars and NO/100 ($7,200,000.00) DOLLARS.

1.52.   "**Settlement Fund**" shall mean the Settlement Amount, plus any accrued interest on said deposits once in escrow as set forth in Section 11, below.

1.53.   "**Settling Defendants and Insurers**" shall mean Coastal, Arch Surety, Precision, Banner, Knauf, and the following insurers to the extent of policies issued to Coastal and/or Precision: Arch, as issuer of a CGL policy to Coastal, Everest, Allied World and Lexington, Old Dominion and Mid-Continent (as insurers of Precision and for any and all claims by Coastal that it is an additional insured under any of those policies) and their respective parents, subsidiaries, affiliates, divisions, predecessors, successors, heirs, legal representatives, legatees, assigns, insurers, reinsurers, and all past, present and future officers, directors, board members, shareholders, members, presidents, managers, partners, employees, agents, servants, representatives, consultants, and in-house or outside attorneys.

14

1.54.  "**Settling Parties**" shall mean Plaintiff, Wendy Lee Hobbie, on behalf of herself, the 181 named plaintiffs joined in the Second Amended Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 (E.D. La.) (Fallon, J.), the other owners and occupants of 67 Residences located in the Villa Lago at Renaissance Commons, not owned by RCR, all current and prior owners and tenants of Residences or RCR Rental Units at Villa Lago at Renaissance Commons; Participating Class Members; RCR; the COA; Coastal, Arch Surety, Precision, Banner, Knauf and the Participating Insurers.

1.55.  "**Villa Lago**" shall mean the condominium development called Villa Lago at Renaissance Commons located in Boynton Beach, Florida

1.56.  "**Villa Lago Settlement Fund**" shall include the Coastal Group Settlement Contribution and funds allocated to the Villa Lago development in the Global Settlement with Precision, in the global Banner Settlement, and with funds from the RCR Settlement, as indicated in Section 2.1 below.

2.  **Settlement Fund**

2.1  Subject to the provisions herein, and in full, complete and final settlement of the *Hobbie* action, the Actions, and the Litigation as provided herein, the Coastal Group agrees to pay Plaintiffs the sum of $7,200,000.00 ("the Coastal Group Settlement Contribution") in full and final settlement of any and all claims arising out of the installation of Chinese Drywall at Villa Lago. The Coastal Group Settlement Contribution shall be funded as follows:

| | |
|---|---|
| Coastal | $500,000 |
| Arch, solely as the CGL carrier | $2,000,000 |

| | |
|---|---|
| Everest | $2,500,000 |
| Allied World | $650,000 |
| Lexington | $1,500,000 |
| Precision | $50,000 (outside of the Global Settlement with Precision) |

The Coastal Group Settlement Contribution will be combined with funds allocated to the Villa Lago development in the Global Settlement with Precision, in the global Banner Settlement, and with funds from the RCR Settlement to create the Villa Lago Settlement Fund, as follows:

Into the Villa Lago Settlement Fund:

a. All of the Coastal Group Settlement Contribution;

b. All amounts allocated to Villa Lago in the Global Settlement with Precision;

c. All amounts allocated to Villa Lago in the global Banner Settlement; and

d. All of the RCR Settlement.

The Villa Lago Settlement Fund will be distributed as shown on the spreadsheet attached hereto as EXHIBIT "A," as follows:

1. From the Villa Lago Settlement Fund to the Remediation Fund:

a. All of the Coastal Group Settlement Contribution;

b. All amounts allocated to Villa Lago in the Global Settlement with Precision;

        c.  All amounts allocated to Villa Lago in the global Banner Settlement; and

        d. The sum of $1,529,189.80.

2.2    Coastal, Arch, Everest, Allied World, Lexington and Precision shall pay into the Villa Lago Settlement Fund the Coastal Group Settlement Contribution in full within 15 days of the Effective Date of this settlement.  All funds contributed to the Remediation Fund shall be distributed from the Remediation Fund to Moss consistent with the progress payments made to Moss in the Knauf Settlement, or as otherwise agreed to by the COA and Moss.

2.3    Class Members agree they will use the Villa Lago Settlement Fund along with funds obtained from the Knauf Settlement to, *inter alia*, fund the remediation of all 267 Affected Units identified on a spreadsheet of units to be remediated, attached hereto as EXHIBIT "B." Knauf agrees to be responsible for any shortfall on the Precision and/or Banner remediation payments as set forth in EXHIBIT "A," and Knauf will receive the benefit of any overpayments on the Precision and/or Banner allocations.  Class Members further agree they shall look solely to the Villa Lago Settlement Fund for settlement and satisfaction against the Released Parties of all Released Claims, and shall have no other recovery of costs, fees, attorneys' fees, damages, or any other relief against the Released Parties.

2.4    As part of the remediation of all 267 units identified on EXHIBIT "B," Knauf will arrange for GFA International to provide Environmental Certificates in the form attached as Exhibit B to the Knauf Settlement Agreement for all units in Villa Lago, including ones not being remediated.  The Environmental Certificates for

17

units not being remediated shall be modified in an appropriate manner. The cost for these inspections is between $250 per unit (3 or more inspections the same day) and $350 per unit (1-2 inspections per day), and a portion of the Villa Lago Settlement Fund will fund this cost for the Non-Knauf units as shown on EXHIBIT "A."

2.5   The total amount of $709,468.62 shall be paid from the Villa Lago Settlement Fund in accordance with EXHIBIT "A." to compensate owners and former owners of units containing Chinese Drywall that was not manufactured by Knauf. It is agreed that these payments shall not impair any of the Plaintiffs or any tenant at Villa Lago from seeking to recover their economic losses or damages for bodily injury from the Knauf Settlement's Other Loss Fund, or to make any claim or receive any benefit for which they are eligible in the Knauf Settlement, the Banner Settlement, or the Global Settlement. The Released Parties, however, shall have no further liability to compensate current or former owners and tenants of units containing Chinese Drywall that was not manufactured by Knauf.

2.6   Remediation under this Settlement Agreement will be coordinated with Knauf and Moss, in accordance with the scope of work ("Scope of Work"). Scope of Work shall mean (1) the work described by Moss at meetings with Class Counsel on January 15, 2013 and January 21, 2013, (2) the work described in the Moss Remediation Protocol attached hereto as EXHIBIT "C", and (3) such modifications and amendments that Moss and Class Counsel may agree to including, without limitation, provisions relating to warranting Moss's work, dispute resolution and special conditions. To ensure adequate funding, the

Plaintiffs and Moss agree to the following scope of work changes solely for the foreclosed units that require remediation: detach and reset fixtures using the best fixtures available from those removed from both buildings, and detach and reset washers, dryers and dishwashers (and not replace).  All payments to Moss for work performed shall come solely from the Remediation Fund.

2.7    The sum of $75,000.00 to be contributed by Knauf as shown on EXHIBIT "A" and included in the Villa Lago Settlement Fund, shall be placed in an account managed by the Plaintiffs and at the discretion of Class Counsel shall be used for the benefit  of  owners and occupants of unaffected units. The fund shall be capped at $150,000.00, inclusive of the contribution by Knauf, and the Released Parties shall have no further liability to those who live in unaffected units. Plaintiffs shall have full and exclusive control to distribute these funds as they see fit.

2.8    In no circumstances shall this Agreement be construed to require the Released Parties to pay more than the settlement contributions identified in Section 2.1.

3.    **Effective Date**

3.1.    The Settlement shall become effective on the Effective Date. The Effective Date shall be the date after which each of the following have occurred:

3.1.1.    Final approval by the Court of the Settlement Agreement, following notice to the Settlement Class and a Fairness Hearing, in accordance with Rule 23 of the Federal Rules of Civil Procedure;

3.1.2. Entry by the Court of a Final Order and Judgment in all material respects in the form set forth in EXHIBIT "D," attached hereto (with only such changes in form as may be agreed to by Settling Parties); and

3.1.3. The expiration of any time for appeal, review or alteration of such Final Order and Judgment, or, if any appeal is filed and not dismissed, after such Final Order and Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal by writ of certiorari, or alteration in any respect.

4. **Approval of this Agreement and Dismissal of All Claims**

4.1. Settlement Class Counsel and the Settling Parties shall recommend approval of this Settlement by the Court. The Settling Parties shall use their best efforts to effectuate this Settlement, including cooperating in seeking judicial approval for the establishment of procedures (including the filing of class notice under Federal Rules of Civil Procedure 23(c)) to secure the prompt, complete, and final dismissals with prejudice of the Litigation as to the Settling Defendants and Insurers.

4.2. As soon as reasonably practicable, Settlement Class Counsel and Coastal shall submit to the Court a motion for: (a) preliminary approval of the Settlement; (b) certification of the Settlement Class; and (c) authorization to disseminate notice of the Settlement. The costs of notice and claims administration shall be paid from the Villa Lago Settlement Fund as set forth in Section 7. The Motion shall include a proposed order preliminarily approving this Settlement and a proposed form of, method for, and date of dissemination of notice. The text of the foregoing items

shall be agreed upon by Settlement Class Counsel and the Settling Defendants and Insurers before submission to the Court. The Motion shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice of settlement is valid, due and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23. The Motion shall also request approval of the notice and preliminary approval of the Settlement.

4.3.  The Settling Parties jointly shall seek entry of an Final Order and Judgment, the terms of which shall include:

4.3.1.  Finding that the notice given constitutes due, adequate and sufficient notice, and meets the requirements of due process, the Federal Rules of Civil Procedure, and any applicable state laws;

4.3.2.  Finding that Settlement Class Counsel has served upon the appropriate State official of each State in which a Class Member resides, and the appropriate Federal official, a notice of proposed settlement that complies with the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711-15;

4.3.3.  Certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3);

4.3.4.  Finding that the Settlement is fair, reasonable and adequate, was entered into in good faith and without collusion, and should be approved; and approves the Settlement;

4.3.5.  Approving the Class Release provided in Section 5 and orders that, as of the Effective Date, the Released Claims as defined in Section 5 will be released as to the Released Parties;

4.3.6.  Dismissing all of the Class Members' claims in the Litigation against the Released Parties with prejudice;

4.3.7.  Enjoining and forever barring any and all Participating Class Members, any individual or entity who has not properly opted out of this settlement, the Settling Defendants and Insurers, and any other person or entity from commencing and/or maintaining any action, legal or otherwise, or any and all claims, known or unknown, which have or could have been brought against the Released Parties arising from or relating to the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at the Villa Lago and all claims for insurance coverage arising out of Chinese Drywall installed at Villa Lago; and

4.3.8.  Finding that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

4.4.   Neither this Settlement Agreement, (whether or not it becomes final), nor the final judgment, or any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by the Settling Defendants and Insurers or by the Released Parties of evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed by any parties in the Litigation or the Actions.  Neither this Settlement Agreement,

22

nor any of its terms and provisions, or any of the negotiations or proceedings connected with it, by any of the Settling Parties shall be offered by the Settling Parties as evidence in any pending or future civil, criminal or administrative action or proceedings, except in a proceeding to enforce this Settlement, or defend against the assertion of Released Claims, or as otherwise required by law.  This Section shall survive any termination or rescission of the Settlement.

5.   **Releases, Discharges and Covenants Not to Sue.**

5.1.   In addition to and not in lieu of the effect of any Final Order and Judgment entered in accordance with this Agreement, upon this Settlement Agreement becoming final as set forth in Section 3 above, and in consideration of payment of the Settlement Amount and for other good and valuable consideration, the Released Parties shall be fully, finally, and forever released as follows:

5.1.1.   "Released Claims" shall mean any and all claims against any Released Party whatsoever (a) arising out of, in any manner related to, or connected in any way with the manufacture, sale, distribution, use, installation, or remediation of Chinese Drywall at  Villa Lago; insurance coverage for claims involving Chinese Drywall at Villa Lago, the collective mitigation of, response to, and/or recovery from any damage caused by the installation or remediation of Chinese Drywall at  Villa Lago and/or any act and/or failure to act related in any way to any of the foregoing, and/or (b) for any and all losses, damages and/or injuries arising from, in any manner related to, or connected in any way with all and/or any of the foregoing, including but not limited to any and all claims that a Class

23

Member has, may have, or may have had, regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, and whether asserted by petition, complaint, cross-claim, third party demand or otherwise (or any judgment or order entered on such claims), and which is based upon or alleges any act, conduct, status or obligation of any person or entity (including the Released Parties) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved.  Notwithstanding the above, the only parties released are those persons or entities defined as Released Parties herein.

5.1.2. The term "Released Claims" includes, but is not limited to, the following claims arising out of, in any manner related to, or in any way connected with the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at  Villa Lago, insurance coverage for claims involving Chinese Drywall at Villa Lago, the Litigation, all other Actions as to the Released Parties:

5.1.2.1. For personal injury, bodily injury (including death), property damage, remediation and/or clean-up of property, diminution of property value, foreclosure, groundwater contamination, economic loss, fear, fear of illness or disease, fear of developing illness or disease, fright, mental or emotional distress, pain and suffering, loss of earnings, impairment of earning capacity, loss of consortium, loss of support, love and affection, equity and

24

medical monitoring, bystander liability, wrongful death, survival actions, breach of contract, all statutory claims, punitive or exemplary damages, attorney's fees, costs or expenses, moving expenses, additional rental or mortgage payments;

5.1.2.2.  For nuisance, trespass, inconvenience, loss of use or enjoyment, negligence, private nuisance, custody of a thing containing a vice or defect, strict liability, liability for ultra-hazardous activities or conduct, absolute liability, wanton and reckless misconduct, malicious misconduct, servitude or obligation of vicinage, abuse of right, or any other liability legally asserted or assertable under any federal, state or local statute, law, directive or regulation, violation pursuant to Section 553.84 of the Florida Statutes, violations of the Florida building code or the building codes of any other state, negligent discharge of a corrosive substance, unjust enrichment, breach of implied warranty of fitness and merchantability, breach of implied warranty of habitability, violation of consumer protection laws and/or deceptive and unfair trade practices laws of any state, negligent misrepresentation, or fraud;

5.1.2.3.  For damages or alleged damages resulting in whole or in part from exposure of the Class or Class Members or property of the

25

Class Members to hazardous or allegedly hazardous, toxic, dangerous or harmful substances;

5.1.2.4.  For insurance or bond coverage for claims and damages resulting from Chinese Drywall at Villa Lago, including any and all common law and statutory bad faith or extra-contractual damage claims, as well as any claims based upon insurer misconduct under any theory whatsoever;

5.1.2.5.  For derivative or vicarious liability arising out of the conduct or fault of others for whom/which the Released Parties may be responsible;

5.1.2.6.  For any right legally assertable by the Class or any Class Member now or in the future, whether the claim is personal to each individual, derivative of a claim now or in the future, or as assignee, successor, survivor, legatee, beneficiary, subrogee, or representative of a Class Member;

5.1.2.7.  For a past, present, future, known, unknown, foreseen, unforeseen, contingent, nascent, mature claim or a claim arising at law, in equity or otherwise, including but not limited to, claims for survival and wrongful death;

5.1.2.8.  For any claim, right, or action arising out of, based on, or relating to any body of law whatsoever; and for all injuries or damages of any type, nature or character arising from, attributable to, or in any way resulting from the manufacture, sale, distribution,

26

use, installation or remediation of Chinese Drywall at   Villa Lago;

5.1.2.9. For any conduct of any of the Released Parties with respect to, arising out of or in any way resulting from the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago, insurance coverage for claims and damages resulting from Chinese Drywall at Villa Lago, the Litigation, or the Actions; however, this provision is not intended to prevent or impede the enforcement of claims or entitlements to benefits under this Settlement Agreement;

5.1.2.10. For any claim, known or unknown, for contribution, subrogation, or indemnity, contractual or otherwise, arising out of the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago or insurance coverage for Chinese Drywall at Villa Lago;

5.1.3. The term "Released Claim" or "Release Claims" also includes, but is not limited to, the following causes of action arising out of, in any manner related to, or in any way connected with the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago or insurance coverage for Chinese Drywall at Villa Lago:

5.1.3.1. Strict liability;

5.1.3.2.   Violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §501.201, *et seq.*) and any other state or federal consumer protection laws and unfair trade practices laws;

5.1.3.3.   Negligence;

5.1.3.4.   Private and public nuisance;

5.1.3.5.   Tort;

5.1.3.6.   Equity and medical monitoring;

5.1.3.7.   Breach of contract;

5.1.3.8.   Loss of use;

5.1.3.9.   Loss of enjoyment;

5.1.3.10.   All statutory claims;

5.1.3.11.   Personal injury, including death therefrom, related statutory violations, and emotional distress and mental anguish;

5.1.3.12.   Bodily injury, including death therefrom, and emotional distress and mental anguish;

5.1.3.13.   Indemnity;

5.1.3.14.   Contribution;

5.1.3.15.   Insurance or bond coverage for Chinese Drywall relating to Villa Lago, including and without limiting the foregoing, claims for common law and statutory bad faith or extra-contractual damage claims, as well as any claims based upon insurer misconduct under any theory whatsoever relating to Villa Lago;

28

5.1.3.16. Breach of express or implied warranty;

5.1.3.17. Violation of the Florida Building Code pursuant to Fla. Stat §553.84;

5.1.3.18 Negligence per se;

5.1.3.19. Negligent discharge of a corrosive substance;

5.1.3.20. Unjust enrichment;

5.1.3.21. Breach of implied warranty of fitness and merchantability;

5.1.3.22. Breach of implied warranty of habitability;

5.1.3.23. Negligent misrepresentation;

5.1.3.24. Relief by way of subrogation, contractual indemnity, common law indemnity and/or contribution against the Release Parties;

5.1.3.25. Attorney's fees and any and all costs and expenses of litigation;

5.1.3.26. Fraud; and

5.1.3.27. Any further claims and/or liabilities and/or damages of any nature or kind arising out of, or otherwise relating to the manufacture, sale, distribution, use, installation, or remediation of Chinese Drywall at Villa Lago, and any and all claims for insurance coverage for Chinese Drywall involving Villa Lago.

5.2. **Class Release**

5.2.1. Except as provided in Section 5.6, as of the Effective Date, and with the approval of the Court, all Participating Class Members, RCR, the COA, and anyone claiming by, through and/or on behalf of any of them, hereby fully, finally, and forever release, waive, discharge, surrender, forego, give

up, abandon, and cancel any and all Released Claims (as defined in Section 5) against the Released Parties, including, but not limited to those asserted, or that could have been asserted, in the Litigation or the Actions.

5.2.2.   As of the Effective Date, all Participating Class Members, RCR, the COA, and anyone claiming by, through and/or on behalf of any of them, will be forever barred and enjoined from prosecuting any action against the Released Parties or the COA asserting any and/or all of the Released Claims.

5.2.3.   The execution of this Settlement Agreement shall not be construed as a release of any claims the Participating Class Members may have against any person and/or entity other than the Released Parties as provided in Section 5.6.   All Participating Class Members reserve all claims (including, but not limited to, any and all rights and causes of action, no matter how arising, under any ordinance, code, law, statute, federal or state, pending or dismissed, know or unknown) against any person and/or entity other than the Released Parties named, or who could have been named, in the Litigation or the Actions.

5.2.4.   As of the Effective Date, to the extent of each Participating Class Member's and RCR's individual net recovery, and to the extent the claim described in this Section arising out of the claim of that Participating Class Member or RCR, each Participating Class Member and RCR shall defend, indemnify, and hold harmless each and all of the Released Parties from and against (a) any and all claims by, on behalf of, through, or deriving

30

from his, her, or its heirs, executors, representatives, attorneys, or former attorneys, successors, employers, insurers, employers' insurers, health insurers, health care providers, assignees, subrogees, predecessors in interest, successors in interest, beneficiaries or survivors; and (b) any claims for contribution; indemnity, common law or contractual; and/or subrogation, whether arising under tort, contract or otherwise, related in any way to the Released Claims of said Participating Class Member or RCR released by this Settlement.

5.2.5. It is expressly understood and agreed that the indemnity, defense, and judgment reduction obligations detailed above shall exist regardless of the legal basis for the claim, demand, cause of action, right of action, liability, lien, or judgment demand asserted by any person or entity to the extent related to the Released Claims against any of the Released Parties.  In particular, the Participating Class Members and RCR expressly bind themselves to the foregoing indemnity, defense and judgment reduction obligations regardless of whether the claim, demand, suit, liability, lien, judgment, cause of action, or right of action is based on or related to (a) the negligence of any of the Released Parties, sole or concurrent; (b) the strict liability of any of the Released Parties under any theory whatsoever; (c) the absolute liability of any of the Released Parties; (d) the wanton, reckless or willful misconduct of any of the Released Parties; (e) any actual, alleged or purported right, asserted by any of the Released Parties

31

under a contract or policy of insurance issued by one or more of the Insurers; or (f) any other basis whatsoever.

5.2.6. Class Members Release of Claims against COA.  As of the Effective Date, and with the approval of the Court, all Participating Class Members, and anyone claiming by, through and/or on behalf of any of them, hereby fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon, and cancel any and all Release/Released Claims (as defined herein) against the COA, known or unknown, including, but not limited to those asserted, or that could have been asserted, in the Litigation or the Actions, or those that could be asserted at the time of or after turnover pursuant to Fla. Stat. Ch. 718 or the COA Declaration of Condominium.

5.3.   **Defendants Releases**

5.3.1. Each Participating Defendant and any person or entity claiming by, through, and/or on behalf of a Participating Defendant hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits, and forever discharges any and all Released Claims against all Participating Class Members, all other Participating Defendants, all other Released Parties and all Insurers arising out of the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at  Villa Lago and any and all claims for insurance coverage in connection therewith.

5.3.2. Each Participating Defendant represents and warrants that it has not assigned and will not assign any claims relating to Chinese Drywall it may possess against any Insurer to any person or entity.

5.4.    **Participating Insurers' Releases**

5.4.1. Each Participating Insurer and any person or entity claiming by, through, and/or on behalf of a Participating Insurer hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits, and forever discharges any and all Released Claims against all Participating Class Members, all Participating Defendants, all Released Parties and all other Participating Insurers arising out of the manufacture, sale, distribution, use, installation, or remediation of Chinese Drywall at Villa Lago.

5.4.2. Each Participating Insurer represents and warrants that it has not assigned and will not assign any claims relating to Chinese Drywall it may possess against any Participating Defendant or Participating Insurer to any person or entity.

5.5.    **Knauf Release**

5.5.1. Knauf and/or any person or entity who or which derives any right or claim for, by and/or through Knauf hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits, and forever discharges any and all Released Claims against all

33

Participating Class Members, RCR, the COA, all other Participating Defendants, all other Released Parties and all Insurers arising out of the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at  Villa Lago and any and all claims for insurance coverage in connection therewith, and the payments for those Affected Properties under the Knauf Class Settlement by Knauf, including but not limited to those for subrogation, implied or express indemnification, contribution, the inability to seek damages from any third parties for monies paid to settle and/or resolve claims, common law and statutory bad faith and/or any other alleged misconduct, omissions, or wrongdoing of any kind, of whatever nature or source, known or unknown, that Knauf ever had, now has, could have had, may have in the future, or that it may acquire, against any Participating Defendant and/or Participating Insurer and/or any of the Released Parties.

5.6.   **Reserved Claims**

5.6.1.   This Settlement does not release any claims or defenses whatsoever that any Class Member, Participating Defendant, Participating Insurer or Settling Party may have against any non-participating party, person or entity, or with respect to any insurance policy or policies issued to a non-participating party, person or entity, even if issued by a Participating Insurer, arising out of, in any manner related to, or connected in any way with Chinese Drywall. The Parties will not interfere with any Class Member's, Participating Defendant's, or Participating Insurer's rights or

34

efforts to assert claims and obtain recoveries against any non-participating party, person or entity arising out of, in any manner related to, or connected in any way with Chinese Drywall.

5.6.2. The Settling Parties expressly reserve all claims or defenses against Class Members who opt-out from this Settlement. Further, in the event a Class Member opts out of this Settlement, Participating Defendants and Participating Insurers reserve all claims, defenses and coverage positions against that Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that opt-out Class Member, and that person's or entity's insurers (including, without limitation, under any policy under which a Participating Defendant claims to be an additional insured), whether or not that person or entity might also be a Participating Defendant or Participating Insurer, but only to the extent the claims arise out of the Affected Property opted-out by that Class Member. Notwithstanding, anything in this Settlement, it is the intent of this Settlement that the Settling Parties retain all rights and coverage positions as to opts outs that the Settling Parties possessed prior to the Effective Date of this Settlement, and the Settling Parties reserve all claims, defenses and coverage positions relating to any opt-outs.

5.6.3. Except for the release of Knauf and Banner as provided herein, the Settling Parties do not release any claims against persons or entities who are manufacturers, importers or exporters of Chinese Drywall, including,

but not limited to Beijing New Building Materials Public Ltd. Co.; CNBM; Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; The China Corporation, Ltd.; Run & Fly (Jinan) New Building Material Co., Ltd.; Baier Building Materials Co., Ltd., and any other manufacturer of Chinese Drywall.  To the extent this Agreement is terminated under Section 18, all claims against the Released Parties are also reserved.

5.6.4.   This Settlement does not release any claims Arch Surety may have against Coastal with regard to the Bond; any claims Coastal may have against Arch Surety with regard to the Bond; and both Arch Surety and Coastal reserve any and all claims and defenses they may have against each other with regard to the Bond, including, but not limited to claims or defenses regarding reimbursement by Coastal of attorney's fees and expenses Arch Surety incurred in defending claims against the Bond.

5.6.5.   This Settlement does not release any rights, claims or causes of action any Participating Insurer may have arising out of the payment of claims or settlements made to or on behalf of its or their insureds, which are not identified as a Released Party herein.

5.6.6.   This Settlement does not release any rights, claims or causes of action for reinsurance recovery that any Participating Insurer may have, including,

36

but not limited to those against any other Participating Insurer acting in its capacity as a reinsurer or retrocessionaire for any claims paid, settled or released herein.

5.6.7.  The releases set forth herein are not intended to release, nor shall they operate to release:  (a) any obligations of Knauf under the Knauf Class Settlement; (b) any obligations of Banner under the Banner Settlement; (c) any obligation of Precision under the Global Settlement; (d) any obligations of Knauf under any existing or later executed settlement agreements between Knauf and any person or entity that is not a Released Party herein; (e) any obligations of Knauf or Banner under their separate settlement agreement; (f) any responsibility of Knauf to Participating Defendants arising out of or related to claims of persons or entities who do not fall within the definition of a "Class Member" as that term is defined in either Section 1.9 of this Agreement or Section 1.1.2 of the Knauf Class Settlement; and (g) claims, defenses and coverage positions of a Participating Defendant arising out of or related to an Affected Property connected in any way with a person or entity who opts out of this Settlement as reserved in Section 5.6.2.

5.6.8.  The release contemplated herein is not intended to release, nor shall it operate to release:  (a) any obligation of any Participating Defendant or Participating Insurer under any existing or later executed settlement agreements and (b) claims and defenses a Settling Party has arising out of

or related to an Affected Property connected in any way with a person or entity who opts out of this Settlement as reserved in Section 5.6.2.

5.6.9.   The Settling Parties expressly reserve all claims or defenses against a Participating Defendant or a Participating Insurer who withdraws from this Settlement.   Further, in the event a Participating Defendant or a Participating Insurer withdraws from this Settlement, all other Participating Defendants and Participating Insurers reserve all claims, defenses and coverage positions against that withdrawing Participating Defendant or Participating Insurer, and if a Participating Defendant, that withdrawing Participating Defendant's insurers, whether a Participating Insurer or not. Notwithstanding, anything in this Settlement, it is the intent of this Settlement that the Parties retain all rights and coverage positions as to withdrawals that the Parties possessed prior to the Effective Date of this Settlement, and the Parties reserve all claims, defenses and coverage positions relating to any withdrawals.

5.7.   The Settlement shall be the sole and exclusive remedy for any and all Released Claims of all Settlement Class Members against the Released Parties.   The Released Parties shall not be subject to any other liability or expense of any kind to any Settlement Class member with respect to any Released Claims.

5.8.   Upon entry of the Final Order and Judgment pursuant to the Final Fairness Hearing,   Participating Class Members, any individual or entity who has not properly opted out, and the Released Parties shall be barred from initiating,

asserting, or prosecuting any and all claims, settled or otherwise, known or unknown, against the Released Parties collectively or against any individual or group of Released Parties, that arises from, concerns or otherwise relates, directly or indirectly, to the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago and any and all claims for insurance coverage involving Chinese Drywall at Villa Lago, except that any potential Settlement Class member who opts out shall retain whatever rights he/she/it may have against the Released Parties.

5.9.     Nothing in this Settlement Agreement shall be construed to release any of the Settling Parties' claims against any person or entity that is not a party to this Settlement Agreement or a Released Party herein.

5.10.    The Participating Class Members shall bear the risk of collecting settlement funds from the Knauf Settlement, the Banner Settlement, the RCR Settlement and the Global Settlement with Precision, and the Participating Class Members will be barred from seeking fulfillment, monetary or otherwise, from the Released Parties in relation to any other settlement agreements the Class Members reach or have reached with any other party.

5.11.    The Settling Parties shall move the Court to enjoin and forever bar any and all Participating Class Members, any individual or entity who has not properly opted out of this Settlement, the COA, and any other person or entity from maintaining, continuing, prosecuting, and/or commencing the Litigation, the Actions, or any and all claims or actions, pending or future, against the Released Parties that arises from, concerns or otherwise relates, directly or indirectly, to the

manufacture, sale, distribution, use, installation  or remediation of Chinese Drywall at Villa Lago and any and all claims for insurance coverage in connection therewith.

6. **Certification of Federal Rule of Civil Procedure 23(b)(3) Settlement Class and Related Motions**

6.1.   This Settlement shall be subject to approval of the Court.

6.2.   Within ten (10) days of the Execution Date, the Class Members and Coastal will move jointly for a Preliminary Approval Order:

6.2.1.   Preliminarily certifying the Settlement Class and preliminarily approving the Settlement;

6.2.2.   Approving the proposed form of and method for dissemination of the notice of settlement is valid, due and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23;

6.2.3.   Setting a date for the Fairness Hearing; and

6.2.4.   Staying all claims in the Litigation and the Actions as to the Released Parties.

6.3.   Class Members and Coastal will stipulate to the Court in the request for entry of the Preliminary Approval Order and at the Preliminary Approval Hearing that (i) the Class is being certified for settlement purposes only pursuant to the Settlement, (ii) the Released Parties reserve the right to object to class certification de novo in the event this Settlement is terminated for any reason, and (iii) this Settlement shall have no precedential effect with regard to certification of

a litigation class that may arise if this matter is not fully and completely resolved through this settlement effort, or otherwise.

6.4    Any one of the Settling Parties shall have the right to withdraw from this Settlement if the Court does not issue any of the requested orders, if the Class is not certified, or as provided in Section 18.

7.    **Notice to Class Members**

7.1.    Within fifteen (15) days of entry of the Preliminary Approval Order ("Notice Date") preliminarily certifying the Settlement Class as defined in Section 1.9, Settlement Class Counsel will disseminate the Class Settlement Notice ("Notice") approved by the Court as follows:

7.1.1.  By first-class mail to the last known address of the following persons and entities: (i) all persons and entities who owned, leased or occupied a condominium located at Villa Lago at Renaissance Commons in Boynton Beach, Florida, (ii) the COA; and (iii) the counsel of all the foregoing;

7.1.2.  By publication notice through the following media: (i) to be published once in the following print media: *Miami Herald – West Palm Beach News – South Florida Sun Sentinel.*

7.1.3.  By providing a copy of the Notice and requesting that it be posted on the Court's Chinese Drywall MDL website; and

7.1.4.  As the Court may direct.

7.2.    The cost of Notice shall be paid from the Villa Lago Settlement Fund as set forth in Section 12.

8.   **Opt-Outs and Withdrawals**

8.1.   **Opt-Out Period**

8.1.1. Class Members will have sixty (60) days from the Notice Date (or such different period as the Court may direct) to exclude themselves or opt out of the Settlement in accordance with Section 8.2.  If the Settlement is finally approved by the Court, all Class Members who have not opted out, pursuant to the terms set forth in Section 8.2, by the end of the 60-day period will be bound by the Settlement, and the relief provided by the Settlement will be their sole and exclusive remedy for the claims alleged against the Released Parties by the Class.

8.2.   **Opt-Out Process**

8.2.1. To properly request exclusion from or opt out of the Class, the request must be: (1)  in writing, indicating the Class Member's mailing address; (2) signed by the Class Member – any request made verbally or signed by counsel as opposed to the Class Member themselves, shall not be sufficient notice of the Class Member opting out of this Settlement with the Released Parties; (3) mailed to Settlement Class Counsel, Gary E. Mason and Daniel R. Bryson of Whitfield Bryson & Mason LLP 1625 Massachusetts Ave., NW Suite 605, Washington, DC 20036, and Coastal's counsel, Addison J. Meyers of Mintzer Sarowitz Zeris Ledva & Meyers LLP, The Waterford at Blue Lagoon, 1000 N.W. 57th Court, Suite 300, Miami, Florida 33126; and (4) postmarked within the 60-day period described in Section 8.1.1.

8.2.2.   Settlement Class Counsel shall file all opt outs with the Court at the same time they file their memorandum in support of final approval of the Settlement, which is no later than 21 days prior to the Fairness Hearing.

8.2.3.   Coastal and Class Members shall seek an order of the Court compelling mediation of opt-out claims at least 14 days before the Fairness Hearing.

9.   **Objections**

9.1.   Any Class Member who has any objection to certification of the Class, or to approval of this Settlement or any terms hereof, or to the approval process must make that objection by the following procedure:

9.1.1.   The objection must be in writing;

9.1.2.   The objection must be postmarked within the 60-day period described in Section 8.1.1;

9.1.3.   The objection must set forth all objections, explain the reasons for the objection, and include any written material on which the objection is based or on which he/she/it intends to rely;

9.1.4.   The objection must state whether the Class Member or his/her/its lawyer intends to appear at the Fairness Hearing. The objection must identify any witnesses intended to be called, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence, at the Fairness Hearing;

9.1.5.   The objection must be signed by the individual Class Member and by his/her/its counsel; an objection signed by counsel alone shall not be sufficient;

43

9.1.6.   The objection must contain the caption of the Litigation and include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the objecting Class Member;

9.1.7.   The objection and/or any notice of intent to appear at the Fairness Hearing must be mailed to the following address: Clerk of Court, United States District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, with copies to Settlement Class Counsel, Gary E. Mason and Daniel R. Bryson of Whitfield Bryson & Mason LLP 1625 Massachusetts Ave., NW Suite 605, Washington, DC 20036, and Coastal's counsel, Addison J. Meyers of Mintzer Sarowitz Zeris Ledva & Meyers LLP, The Waterford at Blue Lagoon, 1000 N.W. 57th Court, Suite 300, Miami, Florida 33126. The objection must be postmarked before the expiration of the 60-day period described in Section 8.1.1. Settlement Class Counsel shall file all objections with the Court at the same time they file their memorandum in support of final approval of the Settlement, which is no later than 21 days prior to the Fairness Hearing.

9.2.   Failure to comply timely and fully with these procedures shall result in the invalidity and dismissal of any objection.  No Class Member shall be entitled to be heard at the Fairness Hearing (whether individually or through the objector's counsel), or to object to certification of the Class or to the Settlement, and no written objections or briefs submitted by any Class Member shall be received or considered by the Court at the Fairness Hearing, unless written notice of the Class Member's objection, any brief in support of the objection, and any statement of

intention to appear at the Fairness Hearing have been served upon Settlement Class Counsel and Coastal's counsel within the 60-day period described in Section 8.1.1.

9.3.    Class Members who fail to file and serve timely written objections in accordance with Section 9.1 shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the certification of the Settlement Class or to the Settlement.

10.    **Fairness Hearing**

10.1.    The Fairness Hearing shall be scheduled no earlier than 96 days from the Notice Date described in Section 7.1.

10.2.    At the Fairness Hearing the Court shall, *inter alia*, (i) consider any properly filed objections to the Settlement, (ii) determine de novo whether the Settlement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith, and (iii) enter the Order and Judgment, including final approval of the Settlement Class and the Settlement.

11.    **Escrow Account/Remediation Fund**

11.1.    An Escrow Account also defined herein as the Remediation Fund has been established at US Bank in connection with the Knauf Settlement for the purpose of funding the remediation of properties containing Chinese Drywall, which Escrow Account is being administered under the Court's continuing supervision and control.

11.2.    As set forth in Section 2.1 above, the Coastal Group Settlement Contribution will be combined with funds allocated to Villa Lago development in the Global

Settlement with Precision, in the Banner Settlement, and with funds from the RCR Settlement to create the Villa Lago Settlement Fund. Pursuant to Section 2.1, the following funds shall be deposited into the Escrow Account established at US Bank in connection with the Knauf Settlement:

    A. All of the Coastal Group Settlement Contribution;

    B. All amounts allocated to Villa Lago in the Global Settlement with Precision;

    C. All amounts allocated to Villa Lago in the Banner Settlement; and

    D. The sum of $1,529,189.80 from the RCR Settlement.

11.3.    The Escrow Account shall be deemed to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such funds shall be distributed pursuant to this Settlement Agreement and/or further orders of the Court.

11.4.    Any accrued interest shall remain with the Escrow Account.

11.5.    The funds deposited into the Escrow Account as specified in Section 11.2 above shall be used for the remediation of all Residences, RCR Rental Units and any other areas at Villa Lago containing Chinese Drywall, including, but not limited to all 267 units identified on the spreadsheet of units to be remediated, attached hereto as EXHIBIT "B." Knauf agrees to be responsible for any shortfall on the Precision and/or Banner remediation payments as specified as set forth in EXHIBIT "A," and Knauf will receive the benefit of any overpayments on the Precision and/or Banner allocations.

11.6.  In the event any monies remain as residue in the Escrow Account following all distribution efforts approved by the Court, all such monies shall revert to Knauf as provided by the Knauf Settlement.

12.  **Payment of Administrative Expenses**

12.1.  The cost of notice to the Class Members and related administration, and claims processing costs ("Administrative Expenses") shall be paid by Settlement Class Counsel from the Villa Lago Settlement Fund.

12.2.  If Settlement Class Counsel enter into any other settlements on behalf of the Class Members before notice of this Settlement Agreement is given to the Class Members, Settlement Class Counsel shall use their best efforts to provide a single notice to Class Members of all of the settlements.  Should Settlement Class Counsel determine a single notice to Class Members is appropriate, should settlement with another party occur, and settlement in the *Hobbie* matter does not become final, any money from the Settlement Fund used to pay for notice or administration costs shall be returned to those entities who funded the Coastal Group Settlement Contribution as set forth in Section 2.1 in proportion to their individual contributions.

13.  **Fees and Reimbursement of Expenses for Settlement Class Counsel**

13.1.  Settlement Class Counsel shall be awarded such fees and reimbursed such costs and expenses from the Villa Lago Settlement Fund as are approved by the Court. However, subject to Court approval, the parties have agreed to attorneys' fees of $2,670,960.62 and costs of $380,946 for a total of $3,051,906.63 as shown on EXHIBIT "A," which amount includes, but is not limited by the projected award

of attorney's fees and costs Settlement Class Counsel may receive from the Banner Settlement and the Global Settlement and that may be paid to the Villa Lago Settlement Fund consistent with any fee applications that Settlement Class Counsel may submit to the Court in the Banner Settlement and in the Global Settlement.  It is expressly agreed and understood, however, that while Knauf anticipates Settlement Class Counsel will seek a fee application pursuant to the Knauf Settlement Agreement, Knauf has no obligation to pay attorney's fees or costs under this Settlement Agreement as set forth in the Knauf Term Sheet dated September 25, 2012.

13.2.   Settlement Class Counsel may submit an application to the Court for distributions from the Villa Lago Settlement Fund, and the Settling Defendants and Insurers shall not oppose or object to Settlement Class Counsel's application for an award of attorneys' fees and costs as set forth in Section 13.1 above ("the Fee and Expense Award").   Any attorneys' fees or costs sought by Settlement Class Counsel shall be solely borne by the Villa Lago Settlement Fund, and the Settling Defendants and Insurers and the Released Parties shall not have any responsibility for the payment of attorneys' fees, costs or expenses to Settlement Class Counsel.

13.3.   That portion of the Fee and Expense Award, as approved by the Court, that relates to attorneys' fees only shall be paid from the Villa Lago Settlement Fund to any of the Settlement Class Counsel seeking such payment within five (5) court days after the Court has entered an order awarding Settlement Class Counsel its fees.

13.4.   The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses

to be paid out of the Villa Lago Settlement Fund, and any plan for distribution of the Villa Lago Settlement Fund to Class Members, are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application or any plan of distribution, or any appeal from any such order(s) shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving Settlement.

13.5.   The Released Parties shall not have any responsibility for, or interest in, or liability whatsoever with respect to any payment of any Fee and Expense Award in the Litigation to counsel for the Plaintiffs or Class Members.

13.6.   The Released Parties shall not have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

14.   **Conduct During The Pendency Of This Settlement.**

14.1.   The Settling Parties agree to jointly seek a stay of the *Hobbie* action and all other pending Actions by, against or between any of the Settling Parties in any way relating to the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago, and any and all actions relating to insurance coverage for Coastal or any other party for Chinese Drywall at Villa Lago, during the pendency of this Settlement before the Court can enter the Final Order and Judgment.  Prior to the orders granting the joint motions to stay the *Hobbie* action

49

and all other pending actions by, against or between any of the Settling Parties, or in the event the joint motions to stay are not granted, neither the Settling Parties nor Class Members shall file motions against, or seek discovery from, the other in the Litigation or the Actions during the pendency of the Settlement.  Neither the Settling Parties, the Defendants and Insurers, nor putative Class Members need respond to formal discovery or motions from the other and shall not otherwise participate in the Litigation against one another during the pendency of this Settlement Agreement commencing upon execution of this Settlement Agreement.  In the event this Settlement Agreement is not approved by the Court or otherwise terminates, the Defendants and Insurers, the Released Parties and Class Members expressly reserve all of their rights, and agree to propose to the Court or courts a reasonable schedule by which the Defendants would rejoin the Litigation.

15.     **Dismissals**

15.1.   Within thirty (30) days of the Effective Date of this Settlement:

15.1.1. Plaintiffs and the Participating Defendants shall jointly submit to the Court a motion and a proposed order or orders dismissing with prejudice as to the Released Parties all claims of Participating Class Members in the Litigation, with all parties to bear their own respective attorney's fees and costs.

15.1.2. Counsel for the parties involved in any Actions shall jointly submit to the court motions and a proposed order or orders dismissing with prejudice

any and all Actions filed against each other, with all parties to bear their own respective attorney's fees and costs.

**16.    Board of Directors**

16.1    This Settlement shall be binding on the current RCR Board of Directors, any future Board of Directors, the current COA and all future COA members.

**17.    Bar Order**

17.1.    As part of the Order and Judgment to be issued by the Court approving this Settlement, the Court shall issue a bar order and permanent injunction against any and all pending or future claims, suits or causes actions by Participating Class Members, by any of the Settling Parties, by any of the Released Parties, and by any and all other persons or entities who are not Released Parties herein against any of the Released Parties herein arising from or otherwise relating to the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at  Villa Lago or any and all claims for insurance coverage for Chinese Drywall at Villa Lago.

17.2.    The bar order and permanent injunction shall:

17.2.1. Enjoin and forever bar any and all Participating Class Members from commencing and/or maintaining any action, legal or otherwise, against the Released Parties arising out of or otherwise relating to Chinese Drywall at Villa Lago;

17.2.2. Enjoin and forever bar any and all Participating Defendants and Participating Insurers from commencing and/or maintaining any action, legal or otherwise, against each other arising out of or otherwise relating

to Chinese Drywall at  Villa Lago or insurance coverage for claims involving Chinese Drywall at  Villa Lago;

17.2.3. Bar the assertion by any entity or person against the Released Parties of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning (i) Chinese Drywall at  Villa Lago or (ii) this Settlement.

## 18.    **Termination of this Settlement**

18.1    This settlement shall be terminated and cancelled upon any of the following events:

18.1.1. The Court declines to enter the Preliminary Approval Order;

18.1.2. The Fairness Hearing is not held by the Court;

18.1.3. The Order and Judgment approving this Settlement and certifying the Class is not entered by the Court, or is reversed by a higher court, or is inconsistent with the terms of this Settlement;

18.1.4. The Court declines to dismiss the claims of Participating Class Members against the Released Parties with prejudice;

18.1.5. The number of opt-outs is unacceptable to any of the Settling Parties;

18.1.6. The Class Settlement Notice does not comply with Section 7 or with the order of the Court concerning Notice;

18.1.7. The dismissals as provided in Section 15 do not occur as provided in Section 15;

18.1.8. The bar order and permanent injunction as provided in Section 17 are not entered by the Court as provided in Section 17; or

52

18.1.9  This Settlement is changed in any material respect, except by written consent of the Settling Parties.

18.2.   Written notice of the exercise of any such right to rescind or terminate this Settlement Agreement shall be made according to the terms of Section 19.10 below.  If either the Settling Defendants and Insurers or the Participating Class Members opt to rescind or terminate this Settlement, the Settlement Amount shall be returned to the Settling Defendants and Insurers who paid the Settlement Amount set forth in Section 2.1 above within ten (10) business days of such rescission or termination of this Settlement Agreement, with all parties to be restored to their respective positions prior to the execution of this Settlement Agreement. A modification or reversal on appeal of any amount of attorneys' fees and expenses awarded by the Court from the Settlement Fund, or of an order approving a plan of distribution, shall not be deemed a modification of all or a part of the terms of this Settlement or such final judgment.

18.3.   In the event that this Settlement Agreement does not become final or is otherwise terminated, then this Settlement Agreement shall be of no force or effect except as otherwise stated herein, and the Settling Parties expressly reserve all of their rights if this Settlement does not become final.  Further, and in any event, Participating Class Members and the Settling Defendants and Insurers agree that this Settlement Agreement, whether or not it becomes final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by the Settling Defendants and

53

Insurers (or the Released Parties), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed by any of the Settling Parties in the Litigation or the Actions, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Litigation, in the Actions, or in any other action or proceeding to the fullest extent allowed by law.

19.   **Miscellaneous**

19.1.   The Settling Defendants and Insurers do not admit or concede that they have any liability for, or owe any damages or insurance coverage whatsoever relating to the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago.

19.2.   This Settlement Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this agreement, for a complete resolution of Class Members' claims with respect to the Released Parties as provided in this Settlement Agreement.

19.3.   This Settlement Agreement does not settle or compromise any claims by Participating Class Members asserted in the Actions against any defendant, person or entity other than the Released Parties. All rights against such other defendants, persons or entities other than the Released Parties are specifically reserved by Class Members and by the Released Parties.

19.4.   This Agreement shall be governed by and interpreted according to the substantive laws of the state of Florida without regard to its choice of law or conflict of laws principles.   The United States District Court for the Eastern District of Louisiana

shall retain jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Settlement or the applicability of this Settlement that cannot be resolved by negotiation and agreement by Class Members and the Released Parties.

19.5. This Settlement Agreement constitutes the entire, complete and integrated agreement among Participating Class Members, the COA and the Released Parties pertaining to the settlement of the Litigation against the Released Parties, and supersedes all prior and contemporaneous undertakings of Participating Class Members and the Released Parties in connection herewith. Notwithstanding the foregoing, any written addendum to this Agreement that is signed on behalf of the Participating Class Members and the Settling Defendants and Insurers who are bound by that addendum shall be given the same force and effect as if it were part of this Agreement. This Agreement may not be modified or amended except in writing executed by Class Members and the Settling Defendants and Insurers, and approved by the Court.

19.6. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Participating Class Members and the Released Parties. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Class Members shall be binding upon all Participating Class Members.

19.7. This Agreement may be executed in counterparts by Class Members and the Settling Defendants and Insurers, and an electronic or facsimile signature shall be deemed an original signature for purposes of executing this Settlement.

19.8.   Neither Participating Class Members nor the Settling Defendants and Insurers shall be considered the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law or rule of interpretation or construction that would or might case any provision to be construed against the drafter of this Settlement Agreement.

19.9.   The headings in this Settlement Agreement are inserted as a matter of convenience only, and do not define, limit, or describe the scope of this Settlement Agreement or the intent of its provisions.

19.10.  Where the Settlement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by e-mail, facsimile, or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

19.11.  Each of the undersigned parties and/or attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval.

## 20.   **Federal Rule of Evidence 408**

20.1.   The Settling Parties specifically acknowledge, agree and admit that this Settlement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations and correspondence, shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any equivalent rule of evidence or procedure of any state, and shall not (i) constitute, be construed, be offered, or received into evidence as an admission of the validity

of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation, the Actions, or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Settling Party, except as permitted in Section 20.3(vi) of this Settlement or (ii) be used to establish a waiver of any defense or right, or to establish or contest jurisdiction or venue.

20.2.   The Settling Parties also agree that this Settlement, any orders, pleadings or other documents entered in furtherance of this Settlement, and any acts in the performance of this Settlement are not intended to be, nor shall they in fact be, admissible, discoverable, or relevant in any case or other proceeding against the Participating Defendants or Participating Insurers to establish grounds for certification of any class involving any Class Member, against the Participating Defendants or Participating Insurers to prove either the acceptance by any Party hereto of any particular theory of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone.

20.3    The provisions of this Settlement, and any orders, pleadings or other documents entered in furtherance of this Settlement, may be offered or received in evidence solely (i) to enforce the terms and provisions hereof or thereof, (ii) as may be specifically authorized by a court of competent jurisdiction after contradictory hearing upon application of a Party hereto, (iii) in order to establish payment, proof of depletion or exhaustion of an insurance policy, prior payment for a claimed loss, set-off or an affirmative defense of exception in a subsequent case, including *res judicata*, (iv) in connection with any motion to enjoin or stay any of the Actions, (v) to obtain Court approval of the Settlement, or (vi) to comply with Participating Insurers' reporting requirements pursuant to Section 111 of the MMSEA.

IN WITNESS HEREOF, the Parties have read and understood the terms and conditions of this Settlement, agree to be bound by all of its provisions, and have executed this Settlement on the date shown by their signatures below.

*This space intentionally left blank*

**Witnesses:**

_Beverly Samuelson_

Print Name: _BEVERLY SAMUELSON_

_____

Print Name: _Bobby D'Arezto_

**RCR Holdings II, LLC**

By: _____

Print Name: _JAMES COMPARATO_

Title: _MANAGER_

Date: _3/25/13_

59

**Witnesses:**

Beverly Samuelson

Print Name: BEVERLY SAMUELSON

Print Name: Abby D'Angelo

**Villa Lago Condominium Association**

By: _____

Print Name: JAMES COMPARATO

Title: PRESIDENT

Date: 3/25/13

60

**Witnesses:**

_(signature)_

Print Name: BEVERLY SAMUELSON

_(signature)_

Print Name: Bobby D'Angelo

**Renaissance Commons, Inc.**

By: _(signature)_

Print Name: JAMES COMPARATO

Title: PRESIDENT

Date: 3/25/13

**Witnesses:**

_Beverly Samuelson_ (signature)

Print Name: BEVERLY SAMUELSON

_(signature)_

Print Name: Bobby Wingate

**Boynton Associates II, L.L.C.**

By: _(signature)_

Print Name: JAMES COMPANATO

Title: MANAGER

Date: 3/25/13

62

**Witnesses:**

Print Name: _Julia Baugues_

_____

Print Name: _____

**Hobbie Plaintiffs and Villa Lago Unit Owners/Occupants**

By: _____

Print Name: ___Gary Mason_____

Title: _Attorney for Plaintiffs_____

Date: _March 22, 2013_____

63

Witnesses:

Coastal Construction Company of Palm Beach, Inc., Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, and Coastal Construction Group of South Florida, Inc.

Print Name: _Lynn-de Williams_

By: _____

Print Name: _DANIEL E. WHITEMAN_

Print Name: _LYNN PHILBRICK_

Title: _PRESIDENT_

Date: _3/28/13_

64

**Witnesses:**

Print Name: David Matthiessen

Print Name: Joseph Dazzo

**Everest National Insurance Company**

By: Thomas R Gervasis

Print Name: Thomas R Gervasis

Title: V. P. claims

Date: March 22, 2013

65

**Witnesses:**

_(signature)_

Print Name: MARK NIZNIK

_(signature)_ Jodi Mintz

Print Name: Jodi Mintz

**Lexington Insurance Company**

By: _(signature)_

Print Name: MICHAEL BAHLEDA

Title: VICE PRESIDENT

Date: 3/22/13

Witnesses:

Print Name: Thomas A. Thornburgh

Print Name: Josh Grasso

**Allied World Assurance Company**
(U.S.) Inc.

By: 

Print Name: Nicholas M. Satriano

Title: Senior Claims Analyst

Date: 3/25/2013

67

**Witnesses:**

Print Name: _JEFF SPIKER_

Print Name: _Dianne Lail_

**Precision Drywall, Inc.**

By: _____

Print Name: _DAVID DYKE_
A representative of Mid-Continent Casualty
Company, an insurer of Precision Drywall
Inc.

Title: _V.P. CLAIMS_

Date: _3/21/13_

68

Witnesses:

_Robert L. Castell_

Print Name: ROBERT CASTELLANO

_J Bachelet_

Print Name: Jackie Bachelet

Arch Insurance Company, as issuer of a CGL Policy to Coastal.

By: _Marc Keyes_

Print Name: MARC KEYES

Title: AVP of Claims

Date: 3-22-2013

69

Witnesses:

_W. P._

Print Name: _William Pearce_

_Joel D. B_

Print Name: _Joel D. Beach_

Arch Insurance Company, as issuer of the Bond.

By: _Kim McNaughton_

Print Name: _Kim McNaughton_

Title: _Vice President_

Date: _March. 22 - 2013_

70

**Witnesses:**

_____

Print Name: KYLE A. SPAULDING

Print Name: SUSAN CAVET

**Knauf**

By: _____

Print Name: Kerry Miller

Title: Attorney in Fact

Date: March 22, 2013

Witnesses:

Print Name: Scott K Giering

Print Name: FLORANGEL D JUANES

Banner

By:

Print Name: ARTHUR LAADEE S

Title: AS PRES. / MEMBER AS APPLICABLE

Date: 3/20/13

72

**Witnesses:**

Print Name: _JEFF SICKER_

Print Name: _PHyLL:s L. MANN_

**Mid-Continent Casualty Company**

By: _____

Print Name: _DAVID DYKE_

Title: _VP CLAIMS_

Date: _3/22/13_

73

Witnesses:

_Victoria L. Vesely_
Print Name: _Victoria L. Vesely_

_____
Print Name: _____

Old      Dominion      Insurance
Company

By: _Brian Brennan_

Print Name: _Brian S. Brennan_

Title: _Corporate claims Consultant_

Date: _3/25/2013_

# EXHIBIT "A"

# Villa Lago/ Renaissance Commons Settlement

| Item | Non-Knauf Total | |
|---|---|---|
| Units | 134 Non-Knauf and 27 mixed | |
| Remediation Funding (as agreed by Knauf and Moss) | $ 12,240,000.00 | |
| Soft Cost fund for units that are owner occupied  and entitled to $8.50/sf (12 Mixed, 43 Non-KPT) | $ 426,562.52 | |
| Soft Cost fund for units that are rental units and entitled to 3 mos. rental (15 Mixed, 91 Non- KPT) | $ 282,906.10 | |
| Soft Costs - units that are rental units for economic losses against Other Loss Funds- except for Lost Rents) | $ - | |
| Clearance Certificates | $ 50,000.00 | |
| Payments to Unaffected Units | $ 75,000.00 | |
| Sub-Total | $ 13,074,468.62 | |
| Attorney Fees (app. 20%) | $ 2,670,960.63 | |
| Legal Costs (50% of $761,892, with Knauf part paid in Knauf fee deal.) | $ 380,946.00 | |
| **Total Needed for Remediation and Payments to Plaintiffs** | $ 16,126,375.25 | |

## Funding Sources for Non-Knauf

| Item | Total |
|---|---|
| RCR Settlement | $ 4,800,000.00 |
| Projected Banner Remediation Allocation (assuming 250 units of 4500 units * 68% of $53M) | $ 2,002,220.20 |
| Projected Banner Fee Allocation (assuming 250 units of 4500 units * 17% of $53M- ignores any common benefit fee) | $ 500,555.05 |
| Projected Precision Remediation Allocation (assuming 90% of * 68% of $1.9M contribution) | $ 1,162,800.00 |
| Projected Precision Fee Allocation (assuming 2% of 23.04M in fees from Global- 17% of $53M- ignores any common benefit fee) | $ 460,800.00 |
| Sub-Total | $ 8,926,375.25 |

### Needed from Coastal          $  7,200,000.00

## Payments to Plaintiffs

| Remediation | Paid |
|---|---|
| Soft Costs to Plaintiff for Non-Knauf and Knauf Units (excludes rental income from Knauf on rented units and Other Loss fund claims against Knauf, Precision and Banner in the separate settlements) | $ 1,180,258.62 |
| Fees and Costs | $ 3,051,906.63 |
| Cash Payments Needed | $ 4,232,165.25 |
| RCR - Plaintiffs Have Plaintiff projected fee recovery from Global and Banner | $ (4,800,000.00) |
| | $ (961,355.05) |

**To be Contributed from RCR Settlement to Remediation**   $   (1,529,189.80)

## Funding for Remediation

| | | |
|---|---|---|
| **Total Needed** | $ | 24,240,000.00 |
| Cost of Certificates for all Units | $ | 91,750.00 |
| Knauf Remediation | $ | (12,000,000.00) |
| Knauf Soft Costs | $ | (395,790.00) |
| KPT Certificates | $ | (41,750.00) |
| Banner Remediation (assuming 250 units of 4500 units * 68% of $53M) | $ | (2,002,220.20) |
| Precision Remediation (assuming 90% of * 68% of $1.9M contribution) | $ | (1,162,800.00) |
| Paid by RCR Settlement | $ | (1,529,189.80) |
| **Total Paid by Coastal towards Remediation** | **$** | **7,200,000.00** |

# EXHIBIT "B"

| |
|---|
| 1101 |
| 1102 |
| 1103 |
| 1104 |
| 1105 |
| 1106 |
| 1107 |
| 1108 |
| 1109 |
| 1110 |
| 1111 |
| 1112 |
| 1123 |
| 1124 |
| 1125 |
| 1126 |
| 1127 |
| 1128 |
| 1129 |
| 1201 |
| 1202 |
| 1203 |
| 1204 |
| 1205 |
| 1206 |
| 1207 |
| 1208 |
| 1209 |
| 1210 |
| 1211 |
| 1212 |
| 1214 |
| 1215 |
| 1216 |
| 1217 |
| 1218 |
| 1219 |
| 1220 |
| 1221 |
| 1222 |
| 1223 |
| 1224 |
| 1225 |
| 1226 |
| 1227 |
| 1228 |

| |
|---|
| 1229 |
| 1301 |
| 1302 |
| 1303 |
| 1304 |
| 1305 |
| 1306 |
| 1307 |
| 1308 |
| 1309 |
| 1310 |
| 1311 |
| 1312 |
| 1314 |
| 1315 |
| 1316 |
| 1317 |
| 1318 |
| 1319 |
| 1320 |
| 1321 |
| 1322 |
| 1323 |
| 1324 |
| 1325 |
| 1326 |
| 1327 |
| 1328 |
| 1329 |
| 1401 |
| 1402 |
| 1403 |
| 1405 |
| 1406 |
| 1407 |
| 1408 |
| 1409 |
| 1410 |
| 1411 |
| 1412 |
| 1414 |
| 1415 |
| 1416 |
| 1417 |
| 1418 |
| 1419 |

| |
|---|
| 1420 |
| 1421 |
| 1422 |
| 1423 |
| 1424 |
| 1425 |
| 1426 |
| 1427 |
| 1428 |
| 1429 |
| 1501 |
| 1502 |
| 1503 |
| 1504 |
| 1505 |
| 1506 |
| 1507 |
| 1508 |
| 1515 |
| 1516 |
| 1517 |
| 1518 |
| 1519 |
| 1520 |
| 1521 |
| 1522 |
| 1527 |
| 1528 |
| 1529 |
| 1612 |
| 1614 |
| 1615 |
| 1617 |
| 1618 |
| 1620 |
| 1621 |
| 1622 |
| 1625 |
| 1626 |
| 2101 |
| 2102 |
| 2103 |
| 2104 |
| 2105 |
| 2106 |
| 2107 |

| |
|---|
| 2108 |
| 2109 |
| 2110 |
| 2111 |
| 2112 |
| 2114 |
| 2117 |
| 2118 |
| 2119 |
| 2120 |
| 2122 |
| 2123 |
| 2125 |
| 2126 |
| 2128 |
| 2203 |
| 2204 |
| 2205 |
| 2206 |
| 2207 |
| 2208 |
| 2209 |
| 2210 |
| 2211 |
| 2215 |
| 2216 |
| 2218 |
| 2221 |
| 2222 |
| 2223 |
| 2224 |
| 2225 |
| 2226 |
| 2227 |
| 2230 |
| 2302 |
| 2305 |
| 2306 |
| 2307 |
| 2308 |
| 2309 |
| 2310 |
| 2311 |
| 2314 |
| 2315 |
| 2316 |
| 2317 |

| |
|---|
| 2319 |
| 2320 |
| 2321 |
| 2322 |
| 2323 |
| 2324 |
| 2325 |
| 2326 |
| 2327 |
| 2328 |
| 2329 |
| 2330 |
| 2401 |
| 2402 |
| 2405 |
| 2406 |
| 2408 |
| 2409 |
| 2410 |
| 2411 |
| 2412 |
| 2414 |
| 2415 |
| 2416 |
| 2417 |
| 2418 |
| 2419 |
| 2420 |
| 2421 |
| 2422 |
| 2423 |
| 2424 |
| 2425 |
| 2426 |
| 2427 |
| 2428 |
| 2429 |
| 2430 |
| 2501 |
| 2502 |
| 2503 |
| 2505 |
| 2506 |
| 2507 |
| 2508 |
| 2510 |

| |
|---|
| 2511 |
| 2512 |
| 2515 |
| 2516 |
| 2517 |
| 2518 |
| 2519 |
| 2520 |
| 2521 |
| 2522 |
| 2523 |
| 2525 |
| 2526 |
| 2527 |
| 2528 |
| 2529 |
| 2530 |
| 2602 |
| 2603 |
| 2606 |
| 2607 |
| 2608 |
| 2611 |
| 2614 |
| 2616 |
| 2618 |
| 2621 |
| 2622 |
| 2623 |
| 2624 |
| 2625 |
| 2626 |
| 2627 |
| 2628 |
| 2629 |
| 2630 |

# EXHIBIT "C"

# REMEDIATION PROTOCOL

I.   **Scope of Work**

The remediation work to be performed in a unit is described generally below.  In conducting the remediation work, the unit owner and Moss & Associates, LLC ("Moss") agree that the objective of the remediation work is to remove on a cost effective basis all drywall, problem drywall-related odors, and contamination, including, but not limited to, corrosion, tarnishing and pitting ("Contamination"); and to leave the unit with the same construction quality and finishes, including remediating any damage to such quality and finishes that was caused by the drywall, as existed prior to the start of the remediation work.

A.   **Drywall Removal**.  Removing and replacing all drywall in the home, including ceilings, with the exception of the following materials unless removal of such materials is required in order to complete the remediation work pursuant to this Scope of Work:

1.   Type X fire rated board

2.   Thicknesses other than ½"

3.   Moisture Resistant Drywall ("Green board")

4.   Sag Resistant Gypsum Board

5.   Tile Backer Board

B.   **Electrical Wiring**.  Remove and replace all electrical wiring (including low-voltage wiring), switches, service panels, circuit breakers, receptacles, and all Contaminated circuit boards.

C.   **Fire Safety and Home Security Equipment**.  Remove and replace all fire safety equipment, including security alarms, intercoms, smoke detectors, fire suppression sprinkler systems, and carbon monoxide alarms.

D.   **Copper gas lines.**  Replace all copper gas lines and fittings.  All other gas lines and fittings will be inspected for Contamination and replaced if Contamination is found.

E.   **Fixtures.**  Remove, store and reinstall the following to the extent such fixtures interfere with the removal of the drywall as described in Paragraph A.  Otherwise, such fixtures will remain in place with suitable protection.  In the event of any

Contamination to such fixtures caused by the possible problem drywall or damage from the drywall removal and replacement, such fixtures will be replaced.[1]

1.    Hot water heaters

2.    Cabinets

3.    Countertops

4.    Doors

5.    Moldings and trim as required to remove drywall as described in Paragraph A

6.    Sinks

7.    Toilets

8.    Bathtubs, shower enclosures

9.    Mirrors

10.   Lighting fixtures - Pursuant to section 2.6 of the Agreement, the best fixtures available from those removed from both buildings will be detached and reset in the foreclosed units that require remediation.

11.   Ceiling fans

12.   Plumbing fixtures - Pursuant to section 2.6 of the Agreement, the best fixtures available from those removed from both buildings will be detached and reset in the foreclosed units that require remediation.

13.   Exhaust Grills and Diffusers

14.   Marble, granite and other natural-stone pieces

15.   Doors and attached door hardware

F.    **Dust Control and Removal**.  Remove the drywall using methods for dust control routinely used in drywall renovation projects.

1.    These control methods typically include installation of drop cloths and walk-off mats, negative pressurization of work area with exhaust fans, and cleanup of dust and debris.

2.    Following the removal of all drywall as described in Paragraph A, sweep all bulk debris and remove from site.

---

[1]    In the event that equipment, appliances or fixtures need replacement, the replacement will be with new equipment, appliances or fixtures and not with reconditioned ones.

      3.    Following the sweeping, vacuum all surfaces including wall cavities using vacuums equipped with drywall bags and/or, where appropriate or necessary, HEPA (high efficiency particulate air) filters, to remove drywall dust.

      4.    Damp wipe all surfaces with water.

      5.    As a final step, use Odorox® hydroxyl generators to resolve any residual indoor air problems.

G.    **HVAC**.  The following HVAC repairs will be performed by a manufacturer-qualified firm, but if such firm is not available, by a licensed HVAC technician.

      1.    Remove and replace all air handler units, including the coils.

      2.    Remove and replace all outside compressor units.

      3.    Remove and replace all line sets.

      4.    Replace thermostats in affected areas and control boards in affected air handling units; and otherwise clean and/or replace as needed the air handler.

      5.    Replace over limit controls on electric heating coils in affected units.

      6.    Remove and replace the flexible duct work.

      7.    Inspect and clean the metal duct work.

      8.    Remove and replace all other damaged HVAC system components.

H.    **Insulation.**  Remove and replace porous insulation and repair or replace as necessary non-porous insulation in direct contact with the drywall to be removed.

      1.    Porous Insulation

          a)    Fiber glass insulation

          b)    Cellulose insulation

          c)    Open cell foam insulation

      2.    Non-Porous Insulation

          a)    Closed cell foam insulation

          b)    Reflective insulation

I.    **Carpet and Flooring.**  Remove and replace all carpet, carpet padding, laminate flooring and laminate padding.  All other flooring will remain in place and be protected during the remediation work.

J. **Plumbing**.

    1.    Remove and replace all affected plumbing components that either show discoloring or pitting on exposed components such as faucets, and handles.

    2.    All other piping, fittings and components to be inspected, cleaned of any Contamination, and, if functionally unaffected, remain in place.

K. **Appliances**.  Appliances shall mean refrigerators, freezers, dishwashers, washers, dryers, garbage disposals, wine coolers, ice machines, microwaves, cooktops, ovens, ranges and warming drawers.

    1.    For units that are less than or equal to 3,500 square feet "under air," as determined by Moss ("Under Air Area"), remove and replace refrigerators and freezers located in the kitchen, wine coolers, ice machines, microwaves, cooktops and ovens.  All other Appliances, including, secondary and auxiliary refrigerators and freezers, shall be removed and replaced where the performance or appearance is compromised, for example, where there is Contamination, except that in the foreclosed units that require remediation, all washers, dryers and dishwashers will be deatached and reset (and not replaced).

    2.    For units that have an Under Air Area greater than 3,500 square feet, all Appliances shall be removed and replaced where the performance or appearance is compromised.

L. **Items not Replaced**.  Building materials, building systems, fixtures and Appliances that will be removed and reinstalled shall be placed in storage.  Building materials, building systems, fixtures and Appliances that will be retained in place will be protected during the remediation work.  Any Building materials, building systems, fixtures or Appliances that are retained, but damaged during the remediation work, will be restored to the condition that existed prior to the start of the remediation work, and where necessary, replaced.

M. **Finishing**.  Finish and paint all new drywall using a primer and two coats of paint of the same color and finish (*e.g.* flat, eggshell, satin, semi-gloss, and glossy).

N. **Final Cleaning**.  Clean the unit to pre-repair condition, which will be documented prior to the start of the remediation work.

O. **Documentation and Preservation**.  In the course of remediation, the contractor will fully document the remediation work using photographic and other documentation methods, including but not limited to identification of the manufacturer and condition of the possible problem drywall on a room by room, wall by wall and board by board basis.  At the option and sole expense of Knauf, all possible problem drywall and fixtures, wiring, fire safety equipment, plumbing, wiring, carpets, and appliances or other items removed from the unit will be maintained for scientific analysis.

P.   **Government Agency Access.**  Relevant government agencies, including but not limited to the Consumer Product Safety Commission, will be allowed to observe the remediation work and given access to the documentation materials and items described in Paragraph I (O).

II.   **Contractor and Environmental Certification**

A.   Pursuant to section 2.4 of the Settlement Agreement, inspections for the units not being remediated shall occur as soon as possible.  The Environmental Certificates for units not being remediated shall be modified in an appropriate manner.

B.   After completion of the Drywall Removal and Dust Control and Removal pursuant to Paragraphs I (A) and (F) above for the Affected Properties as defined in section 1.3 of the Settlement Agreement, Moss will provide the Settlement Administrator and unit owner with a Contractor Certification substantially in the form of Exhibit 1 hereto.

C.   After receiving the Contractor Certification, the Settlement Administrator will assign an environmental inspector to certify the absence in the unit of any remaining problem drywall-associated odors and contamination, including, but not limited to, corrosion, tarnishing, and pitting.

   1.   If the environmental inspector concludes the unit is free of any and all KPT Chinese Drywall and Non KPT Chinese Drywall ("Problem Drywall") associated odors and contamination, the environmental inspector will provide an Environmental Certificate (in the form attached as Exhibit 2 hereto) to the Settlement Administrator and the unit owner certifying that the home is free of any and all problem drywall-associated odors and contamination.

   2.   If the environmental inspector concludes the unit is not free of any and all Problem-Drywall associated odors and contamination, Moss will continue to remediate any issues identified by the environmental inspector until such time that the environmental inspector concludes the unit is free of any and all Problem-Drywall associated odors and contamination, in which case the environmental inspector will provide the Environmental Certificate as specified in the above subparagraph II (B) (1).

D.   The unit owner and/or his counsel, upon sufficient notice, shall have the right to be present, but not to interfere with, any environmental inspection by the environmental inspector, and to videotape, or otherwise make a record of, such inspection.  The costs of the environmental inspector will be paid pursuant to the Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL No. 2047.

III.   **Warranty**. Moss warrants that materials and equipment furnished as part of the remediation work shall be of good quality and new unless otherwise agreed to by the parties to

the Settlement Agreement. Moss's warranty includes damage or defects in the remediation work caused by Moss or those for whom Moss is responsible. Damage caused by anyone beyond Moss's control is not warranted by Moss. If required by the unit owners, Moss shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

As to items within Villa Lago that were purchased and installed by Moss but that were not manufactured by Moss, including, but not limited to, any HVAC equipment, appliances, other equipment or "consumer products", Moss provides no warranty on such items (other than as to proper installation), but shall transfer to the unit owners the manufacturer's warranty. However, Moss's warranty does extend to the installation of such items. All items, appliances, or equipment reinstalled or replaced shall be tested-in-place prior to, or at, the Move-In Date (as defined in the MDL Settlement Agreement). Moss will assign to the unit owners all third party warranties pertaining to the remediation work and the materials and equipment incorporated therein, including without limitation, warranties of all subcontractors and suppliers. Upon Substantial Completion of the Work, and as a condition to final payment, Moss shall deliver to the unit owners all such warranty documents. Moss shall perform the remediation work in such manner so as to preserve all such warranties.

**IV.     Punch list and Dispute Resolution**: Moss shall implement and Class Members shall comply with the same punch list protocol as is used for Knauf Units. In the event a dispute arises between Moss and a Non-Knauf Unit owner, then Moss and the Unit Owner shall first endeavor to resolve the dispute. Failing such effort, the parties shall mutually agree to a neutral third party (the "Decision Maker") or, if no such person can be agreed to, then Perry Dampf Dispute Solutions, 721 Government Street, Suite 102 Baton Rouge, LA 70802, or their designee, is appointed as the Decision Maker. The Decision Maker is authorized to establish the parameters for resolving the dispute and is empowered to render a binding decision thereon. The cost of the engagement of the Decision Maker shall be borne equally by the Unit Owner and Moss.

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | ) | |
| DRYWALL PRODUCTS | ) | MDL NO. 2047 |
| LIABILITY LITIGATION | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | SECTION: L |
| | ) | |
| *Hobbie, et al. v.* | ) | |
| *RCR Holdings II, LLC, et al.,* | ) | JUDGE FALLON |
| Case No. 10-1113 (E.D. La.) | ) | |
| | ) | |
| *Payton , et al. v. Knauf Gips, KG, et al.,* | ) | MAG. JUDGE WILKINSON |
| Case No. 09-07628 (E.D. La.) | ) | |
| | ) | |
| *Wiltz, et al. v. Beijing New Building Materials* | ) | |
| *Public Limited Co., et al.* | ) | |
| Case No. 2:10-cv-00361 (E.D. La.) | ) | |
| | ) | |
| *Rogers, et al. v. Knauf Gips KG, et al.* | ) | |
| Case No. 2:10-cv-00362 (E.D. La.) | ) | |
| | ) | |
| *Block et al. v. Gebrueder Knauf* | ) | |
| *Verwaltungsgesellschaft KG, et al.* | ) | |
| Case No. 2:11-cv-2349 (E.D. La.) | ) | |
| | ) | |
| *Almeroth, et al. v. Taishan Gypsum Co., LTD.* | ) | |
| *f/k/a Shandong Taihe Dongxin Col, LTD., et al.* | ) | |
| Case No. 2:12-cv-0498 (E.D. La.) | ) | |
| | ) | |
| *RCR Holdings II, LLC. v. Arch Insurance* | ) | |
| *Company and Coastal Construction of South* | ) | |
| *Florida, Inc. d/b/a/ Coastal Condominiums* | ) | |
| Case No. 502010CA015377XXXXMBAI | ) | |
| (15th JDC Palm Beach County, Florida) | ) | |
| | ) | |
| *Coastal Construction Group of South Florida, Inc.* | ) | |
| *v. Precision Drywall, Inc. and Mid-Continent* | ) | |
| *Casualty Company* | ) | |
| Case No. 11-07387 CA 04 | ) | |
| (11th JDC Miami-Dade County, Fla.) | ) | |
| | ) | |
| *Coastal Construction of South Florida, Inc. and* | ) | |
| *Arch Insurance Company v. Everest National* | ) | |
| *Insurance Company, et al.* | ) | |
| Case No. 12-80380-CIV-MARRA (S.D. Fla.) | ) | |

**[PROPOSED] FINAL ORDER AND JUDGMENT CERTIFYING THE COASTAL SETTLEMENT CLASS AND GRANTING FINAL APPROVAL OF THE CLASS SETTLEMENT REGARDING CLAIMS AGAINST COASTAL CONSTRUCTION OF SOUTH FLORIDA, INC. RELATED TO VILLA LAGO AT RENAISSANCE COMMONS IN MDL NO. 2047**

This matter has come before the Court to determine whether there is any cause why this Court should not approve the settlement regarding claims against Coastal Construction of South Florida, Inc. related to the Villa Lago at Renaissance Commons condominium development located in Boynton Beach, Florida set forth in the Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL No. 2047, dated March 28, 2013, relating to the captioned litigation. The Court, having granted preliminary approval of the Settlement Agreement on April __, 2013 and after carefully considering all papers filed and proceedings held herein and otherwise being fully informed in the premises, has determined (1) that the Settlement should be approved, and (2) that there is no just reason for delay of the entry of this Final Order and Judgment approving the Settlement.

Accordingly, the Court directs entry of this Final Order and Judgment which shall constitute a final adjudication of this case on the merits as to the parties to the Settlement. Good cause appearing therefore, it is:

ORDERED, ADJUGED AND DECREED that:

1.      **Jurisdiction of the Court**.   The Court has personal jurisdiction over all Settlement Class Members because adequate notice has been provided to them and because they have been provided the opportunity to exclude themselves from the Litigation. The Court has subject matter jurisdiction over this Litigation, including, without limitation, jurisdiction to approve the Settlement Agreement and to dismiss the Litigation on the merits and with prejudice.

2. **Incorporation of Documents**. This Final Order and Judgment incorporates herein and makes a part hereof (i) the Settlement Agreement (a copy of which, without exhibits, is appended hereto as Exhibit 1; (ii) the Class Notice and Class Publication Notice (copies of which are appended hereto as Exhibit 2); and (iii) the CAFA service list (appended hereto as Exhibit 3). The capitalization and definitions of terms set forth in the Settlement Agreement are incorporated hereby as though fully set forth in this Judgment.

3. **Final Certification of the Class for Settlement Purposes**. A class for settlement purposes is hereby finally certified consisting of all persons and entities who owned, leased or occupied a condominium located at Villa Lago at Renaissance Commons in Boynton Beach, Florida, the Villa Lago Condominium Association at Renaissance Commons, Inc., and all persons and entities who sustained or claim to have sustained damages of any nature or kind as a result of the alleged manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago at Renaissance Commons. Excluded from the Settlement Class are any person, firm, trust, corporation, or other entity related or affiliated with the Participating Defendants and Participating Insurers including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants and Insurers. A list of those persons who have timely and validly excluded themselves from the Settlement Class, and who are therefore not bound by this Final Order and Judgment, has been filed jointly by the Settling Parties with the Court and is incorporated herein and made a part hereof. Those Settlement Class Members who have not been excluded from the Settlement Class are bound by this Final Order and Judgment and the terms of the Settlement Agreement.

4. **Class Findings**. For the purposes of this litigation (without an adjudication on the merits), the requirements of due process and the Federal Rules of Civil Procedure and the Rules of the Court have been met in that:

3

The members of the Settlement Class are so numerous that it is impracticable to bring all members of the Settlement Class before the Court.

There is a well-defined community of interests among members of the Settlement Class in certain questions of law or fact that are common to the Settlement Class, are substantially similar, and predominate over any individual questions of fact or law. The Plaintiffs allege, *inter alia*, that Coastal Construction of South Florida, Inc. constructed the Residences and common areas at Villa Lago at Renaissance Commons with Chinese Drywall when it knew, but failed to disclose, any information about unsafe materials used in the construction of the Residences and common areas at Villa Lago. Thus, common questions include whether: (i) Coastal constructed the Residences and common areas at Villa Lago with Chinese Drywall; (ii) Coastal had knowledge that Chinese Drywall was used to construct the Residences and common areas at Villa Lago; and (iii) Coastal's conduct fell below the duty of care owed by Coastal to the Settlement Class. These common questions are central to each Settlement Class Member's claim and predominate over questions affecting only individual members of the Settlement Class.

The claims of the Class Representative, Wendy Lee Hobbie, are typical of the claims of the Settlement Class, and the Class Representatives will fairly and adequately protect the interests of the Class, in that: (i) the interests of the Class Representative and the nature of her alleged claims are consistent with those of the Settlement Class; (ii) there are no conflicts between or among the Class Representative and Settlement Class Members; (iii) the Class Representative has been and is capable of continuing to be an active participant in both the prosecution of, and the settlement negotiations of, the Litigation; and (iv) the Class Representative and the Settlement Class Members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the *Hobbie* action and in the Class Action Omnibus Complaints filed

4

in MDL 2047 in which any of the Settlement Class Members brought claims against the settling Defendants and Insurers relating to the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago at Renaissance Commons.

A resolution of the Litigation in the manner proposed by the Settlement Agreement is superior to other available methods for a fair and efficient adjudication of the Litigation. In making these findings, the Court has considered, among other factors: (i) the interest of Settlement Class Members in individually controlling the prosecution or defense of separate actions; (ii) the impracticability or inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation concerning these claims already commenced; and (iv) the desirability of concentrating the litigation of the claims in a particular forum.

5.   **Satisfaction of Due Process**.   The Court finds that the mailing of the Class Notice and the publishing summary Notice as provided for by, and undertaken pursuant to, the Preliminary Approval Order (i) constituted the best practicable notice to members of the Settlement Class under the circumstances; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Litigation and of the terms of the Settlement Agreement and their rights thereunder, including their rights to object to those terms or to exclude themselves from the proposed Settlement and to appear at the Fairness Hearing; (iii) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and (iv) fully complied with the requirements of the United States Constitution, the Federal Rules of Civil Procedure and the Rules of the Court.

6.   **CAFA Notice**.   The Court finds that service of the Settlement Agreement together with the materials specified in 28 U.S.C. Sec. 1715(b), upon the entities and individuals listed in Exhibit 3 hereto on _____, constituted sufficient and adequate notice to the

5

appropriate federal and state officials as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. Sec. 1715.

7.   **Adequate Representation.**   Settlement Class Counsel and the Class Representative have adequately represented the Settlement Class throughout this Litigation. Therefore, the Court finds that Gary E. Mason and Daniel R. Bryson of Whitfield Bryson & Mason LLP, Joel R. Rhine of Rhine Law Firm, P.C., Adam Linkhorst of Linkhorst & Hockin P.A. and Gregory S. Weiss of Leopold Law, P.A. shall be appointed as Settlement Class Counsel and Wendy Lee Hobbie shall be appointed Settlement Class Representative.

8.   **Final Approval**.   The terms and provisions of the Settlement Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, both the Settling Defendants and Insurers and the Participating Class Members and in full compliance with all applicable requirements of law, including constitutional due process.   The Settling Defendants and Insurers and Participating Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

9.   **Claims Released**.   The Releases, Discharges and Covenants Not to Sue set forth in Section 5 of the Settlement Agreement are expressly incorporated in this Final Order and Judgment in all respects) and are effective as of the date of this Final Order and Judgment, such the Released Parties are forever discharged from the claims or liabilities that are the subject of the Release; the Villa Lago Condominium Association at Renaissance Commons, Inc. is forever discharged from the claims or liabilities that are the subject of the Release; each Participating Defendant and any person or entity claiming by, through, and/or on behalf of a Participating Defendant is forever discharged from the claims or liabilities that are the subject of the Release;

6

and each Participating Insurer is forever discharged from the claims or liabilities that are the subject of the Release.

The Class Release and indemnity obligations provided in Section 5.2 of the Settlement Agreement are hereby approved and incorporated in this Final Order and Judgment in all respects.

The Defendants' Releases provided in Section 5.3 of the Settlement Agreement are hereby approved and incorporated in this Final Order and Judgment in all respects.

The Participating Insurers' Releases provided in Section 5.4 of the Settlement Agreement are hereby approved and incorporated in this final Order and Judgment in all respects.

The Knauf Release provided in Section 5.5 of the Settlement Agreement is hereby approved and incorporated in this final Order and Judgment in all respects.

The Reserved Claims provided in Section 5.6 of the Settlement Agreement is hereby approved and incorporated in this final Order and Judgment in all respects.

10.   **Permanent Injunction**.   All Participating Class Members, any individual or entity who has not properly opted out of this settlement, the Settling Defendants and Insurers, the Participating Insurers, and any other person or entity are hereby permanently and forever barred and enjoined from commencing and/or maintaining the Litigation, the Related Actions, or any other action, legal or otherwise, or asserting any and all claims, known or unknown, which have or could have been brought against the Released Parties arising from or relating to the manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at the Villa Lago and all claims for insurance coverage arising out of Chinese Drywall installed at Villa Lago.

7

The Court finds that entry of this permanent injunction is necessary and appropriate to aid the Court's jurisdiction over the Litigation and to protect and effectuate the Settlement Agreement and this Final Order and Judgment.

11.     **Binding Effect**.   The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on the Class Representative, Participating Class Members, and the Released Parties, as well as their heirs, executors and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings that assert claims that are encompassed within the Released Claims set forth in Section 5 of the Settlement Agreement.

12.     **No Admissions**.   Neither this Final Order and Judgment nor the Settlement Agreement (nor any document referred to herein or any action taken to carry out this Final Order and Judgment) is, may be construed as, or may be used as any evidence, admission or concession by or against the Released Parties of the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever.  Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related thereto shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials or defenses by any of the Released Parties and shall not be offered or received in evidence in any action or proceeding against any of them in any court, administrative agency or other tribunal for any purpose whatsoever other than as evidence of the settlement or to enforce the provisions of this Final Order and Judgment and the Settlement Agreement; provided, however, that this Final Order and Judgment and the Settlement Agreement may be filed in any action against or by any of the Released Parties to support a defense of *res judicata*, collateral estoppel, release, waiver, good faith settlement, covenant not to sue, accord and satisfaction, judgment bar or reduction, full faith

8

and credit, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     **Enforcement of Settlement Agreement**.   Nothing in this Final Order and Judgment shall preclude any action to enforce its terms or the terms of the Settlement Agreement, including, without limitation, the releases and permanent injunction.

14.     **Severability of Attorneys' Fees and Expenses Award**.   Notwithstanding anything herein to the contrary, this Final Order and Judgment shall be entirely severable from, and not subject to appeal on the basis of, any award of attorneys' fees and expenses or costs to be made to Settlement Class Counsel and any such award of attorneys' fees and expenses or costs shall have no effect on the finality or effectiveness of this Final Order and Judgment.

15.     **Retention of Jurisdiction**.   The Court has jurisdiction to enter this Final Order and Judgment.   Without affecting the finality of this Judgment in any way, this Court hereby retains continuing and exclusive jurisdiction over: (a) implementation of this Settlement and any distribution to Class Members pursuant to further orders of this Court; (b) disposition of the Settlement Fund pursuant to further orders of this Court; (c) hearing and determining an application for attorneys' fees, costs, expenses and interest; (d) the Settling Parties until the final judgment contemplated herein has become effective and each and every act agreed to be performed by the Settling Parties all have been performed pursuant to the Settlement Agreement; (e) hearing and ruling on any matters relating to the plan of distribution of Settlement proceeds; and (f) all parties, including the Participating Class Members, for the purpose of enforcing and administering the Settlement Agreement and Exhibits thereto and the mutual releases and other documents contemplated by, or executed in connection with, the Settlement Agreement.

16.     **Plan of Distribution**.   Settlement Class Counsel shall submit a proposed Plan of Distribution to the Court at the completion of this case so that funds receive in this case, whether

9

through settlements or judgment following trial, can be distributed together at one time.   The plan of distribution shall provide for redress of all claims filed by the Class Members which may include remediation, cash compensation or a combination thereof.  In no event shall the Released Parties have any responsibility, financial obligation, or liability whatsoever with respect to the investment, allocation, preservation, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

17.   **Dismissal with Prejudice**.   This Litigation, including all claims and counterclaims asserted in it and/or resolved herein, is hereby dismissed on the merits and with prejudice against the Class Representative and all other Settlement Class Members (with respect to the claims they have asserted) and the Released Parties (with respect to claims made against them, and/or any counterclaims, cross-claims or third-party demand they may have asserted as a Defendant), without fees or costs to any party except as otherwise provided in this Final Order and Judgment or any separate order concerning attorneys' fees and expenses.

This _____ day of _____, 2013, at New Orleans, Louisiana.


_____
ELDON E. FALLON
United States District Judge

10