UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL
       PRODUCTS LIABILITY LITIGATION

MDL NO. 2047

THIS DOCUMENT RELATES TO:
ALL CASES AND

SECTION: L

Payton, et al. v. Knauf Gips, KG, et al
Case No. 2:09-cv-07628 (E.D. La.)

JUDGE FALLON

MAG. JUDGE WILKINSON

**MOTION FOR MEDIATION
OR IN THE ALTERNATIVE TO SET THE CASE FOR TRIAL**

    Comes now Gregory Friedlander, pro se, and files this Motion to have the cases to which he is a party set for mediation and in the absence of mediation or in the event mediation is not successful to set this matter for trial in this court and in support thereof would allege and show as follows:

**BACKGROUND**

1. Your petitioner is joined in this action in case 09-7628. Your petitioner believed the types of damages set out in the Class action settlement were appropriate as a settlement, but the settlement was not structured to allow for a certain remedy without clarification.

2. Your petitioner attempted to clarify this and failed to obtain a response.

3. Your petitioner has attempted on numerous occasions to get clarification from the defendants who repeatedly failed respond prior to the deadline to opt out.

4. The choice was taking an uncertain and potentially insufficient settlement or opting out.

5. Your petitioner felt compelled to opt out. Without knowing what is available under the settlement, your petitioner cannot opt back in. **The deadline is 5/10/13 for this and may well be past before any clarification could be had.**

6. To resolve this claim, your petitioner has made several settlement proposals to the defendants. Each of these offers has monetary terms consistent with the settlement offers before the court for the class action and terminates the liability of the defendants. The defendants have asked that their response not be given. They did not provide clarification

of how the settlement would apply to the petitioner. It took many months to receive a response.

7. While it is frustrating, there are a multitude of reasons to believe that the counsel for the Defendant has not been indifferent. Notwithstanding the diligence or lack thereof, this matter involves ongoing harm which might be serious. This harm extends past the parties to this case. Requesting the matter be brought to a rapid conclusion seems to be suggested, since people are living in two rental units with Chinese drywall. The three other units still owned by the plaintiff are in the process of demolition, stopped for lack of funding and are empty.

8. Defense counsel agrees that a mediation might be appropriate to move this case forward.

9. In addition to this potential danger to third parties, this matter costs your petitioner around $50,000 every year it is unresolved. A settlement which does not assure the petitioner that he will be made whole for these losses is not practical.

## REMEDY SOUGHT

10. Your petitioner only asked in advance of mediation for the same relief in principle that is offered in the class action settlement so mediation might be appropriate to this case. If this case is not mediated or if the mediation turns out to be unsuccessful your petitioner would request that the court set this matter for trial so that it may be tried and a final resolution obtained.

## STIPULATIONS

11. The parties can stipulate to the presence of Knauf Drywall in the units as that testing has already been done (copies of the reports are held by both parties).

12. The parties should also be able to stipulate to the cost of remediation, the lost rents claimed and the interest expenses incurred and other damages claimed by the plaintiff.

13. The only issues which might be in question are (1) the diminution of value of the units; (2) the damages appropriate for the harm this cost the petitioner's credit rating (3) the mental suffering of the plaintiff (4) whatever set-offs the defendants would allege to the amounts given by the plaintiff and (5) punitive damages if appropriate.

14. Trial should be possible based on a stipulated written record without a Jury or it may be tried before a jury or the court at the defendant's option.

15. The determination of the presence of drywall is shown by evidence developed by the Defendant's own testing company.  These reports on the units are available to both parties and are not attached since that would serve no purpose at this stage.  The ongoing damage caused by the drywall is shown on those same reports and that evidence is completely developed in this case.
16. The damages have been set out above and the plaintiff in this case can testify as to the amounts and provide whatever support the court wants without a trial on the merits.  An adjusters report is being developed to support the costs but this does nothing more than support the costs already developed in the settlement and in other cases.
17. The damages are ascertainable in amount other than those that are associated with the indirect damages such as the effect of this on your petitioner's credit and the terrible stress and aggravation caused by the defective product and whether the defendant should be punished for bringing a product with known potential hazards in from China.
18. That being said, the court can make whatever determinations it feels appropriate with or without a jury and the petitioner can at least get this matter reduced to a judgment.

## DAMAGES

19. LOST VALUE: $890,000.00-The units in question are condominium units.  Before problems with dry-wall surfaced these were selling for over 150,000/unit.  The plaintiff has always had his units for sale and expected sales.  Unfortunately, they have now lost 130,000 in value each and just based on the losses in value, your petitioner has lost $890,000 in value.  3 units were sold for 70,000 (240,000 lost value after the drywall problems surfaced but before it was determined that the cause was the drywall) and the remaining 5 lost 650,000 in value.  This lost value is not covered in the settlement, but because negotiations have so far failed, it is appropriate to claim this as damages in a trial on the merits.
20. After the a/c units began to fail, law suits (Sales Lawsuits) were filed early in 1987 against the developer, and these lawsuits named your petitioner.  The units could no longer be sold as a result of this litigation but even the hostile parties alleged the units were worth 130,000.00 at that time.  The debts owed as a result of borrowing to fund the building were unpaid.  Prices quickly dropped to 75,000 for 2 bedroom units; essentially dropping the

value in half and because of the notice requirements. The units were no longer saleable even at that price except to high risk investors.

21. LOST DEVELOPMENT INCOME (650,000) Prices have now fallen to less than 20,000 per unit. At the time of the Sales Lawsuits , wild speculation in the lawsuits suggested defective design, air conditioners, electrical wiring and the like. Later the wide speculation was determined to be unfounded and the damage the result of the drywall. This litigation essentially ended the development company that had successfully developed several projects and the Plaintiff had made 650,000 in 2006 from this company and it is appropriate that some compensation be paid and an appropriate number is one year's net income or $650,000.00.

22. LOST INTEREST (POTENTIALLY INCLUDED IN THE SETTLEMENT):$240,000- The developers, including your petitioner, had loans to the developing corporation which were in turn secured with other properties and from 9/1/2006 (the date of the last loan) to the present these loans have borne varying interest. At the present time, your petitioner can show his losses for interest accrued are over $240,000 which continues today. Note that the same losses are reflected because of lost interest on monies which would have been realized from the sale of the units. Depending on how the settlement is determined, this might or might not be covered.

23. These loans could not be retired because the units could not be sold due to litigation which, inter alia, alleged the air conditioning units were wrong for the units because they were failing. Each month, more than 2000.00 is paid on outstanding balances for these loans.

24. REPAIR COSTS (INCLUDED IN THE SETTLEMENT) $352,857- A repair estimate of 61.90/sq foot has been submitted to Knauff. This is entirely consistent with the settlement. Payment of 61.90/square foot to owner for each of his 5 units would run ($352,857).

25. LOST RENTS/REPAIRS (POTENTIALLY INCLUDED IN THE SETTLEMENT): 124,997.00- The settlement also provides (unclearly) for lost rents and repairs and the accounting shows the lost rents. These units cannot be rented at the present except to a limited audience and the testing requested by Knauff has left many of the units unsuitable

(without repairs) to rent. When the initial offers were made to Knauff the lost rents were 124,997.

26. TAXES PAID: $35,000-Taxes provided for in the settlement were approximately 1200/year for 6 years for each unit or $7200 per unit for the 5 remaining units.

27. The petitioner has already started demolition on 3 of 5 units but was forced to stop before removing the drywall from vacant units because it was feared the court would want additional evidence other than the reports on the units.  Hence a quick resolution is solicited.

28. As a part of any settlement, the petitioner would agree to remove the drywall, so that is not an impediment.

29. TOTAL SPECIAL DAMAGES: $2,292,854.67.  Any redundancy (for example it might be said that lost value is offset in part by the cost of repairs) can be resolved by the court. Even if the lost value was ignored, the damages would be $1,402,854.67 with no compensation for the other losses suffered by plaintiff as of the date of the preparation of this petition with additional losses each month.

30. Your petition would suggest a like amount for the damage to his credit and the pain and suffering caused by the defendant's conduct and a similar amount to punish the defendants if this matter is not settled.

31. If the defendants could assure Plaintiff it would be at least $750,000 (1/3 of the special damages and perhaps 20% of what can be claimed at trial) this matter would be settled. For this reason it is believed that mediation might resolve this matter. If the defendants were to allege otherwise, the matter could be set for trial.

Wherefore, your petitioner requests the case be sent to mediation or set for trial to state based on the stated damages above with whatever stipulations can be entered by the parties to reduce the cost and time spent resolving this matter and for such other relief as may be appropriate the premises considered.

Respectfully Submitted,

s/Gregory Friedlander_____
GREGORY M. FRIEDLANDER

CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2013, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of electronic filing to the following: (List Names of persons electronically noticed below). I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:   (None).

s/ Gregory Friedlander
Gregory Friedlander
01888 Bar Number
Attorney for (Plaintiff/Pro Se)
Gregory M. Friedlander & Associates, P.C.
11 S. Florida St.
Mobile, Al 36606-1934
251-4700303
888-441-2123
Attorney's E-Mail Address: Isee3@aol.com

Service List
Arnold Levin
Levin, Fishbein, Sedran &Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Russ M. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113

Kerry Miller
Frilot L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Phone:(504)599-8194 Fax: (504) 599-8145

                                                                                s/Gregory Friedlander_____
                                                                                GREGORY M. FRIEDLANDER