# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON MAG. JUDGE WILKINSON |
| *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al* Case No. 11-cv-080 (E.D. La.) | |
| *Almeroth, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al* Case No. 12-cv-0498 (E.D. La.) | |
| *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D.La.) | |
| *Germano et al. v. Taishan Gypsum Co., Ltd. et al.* Case No. 2:09-cv-06687 (E.D. La.) | |
| *Gross, et al. v. Knauf Gips, KG, et al* Case No. 09-cv-6690 (E.D. La.) | |
| *Haya, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd, et al* Case No. 11-cv-1077 (E.D. La.) | |
| *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al* Case No. 10-cv-361 (E.D. La.) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SETTLEMENT CLASS COUNSEL FOR AN ORDER: (1) CERTIFYING EACH OF FOUR CHINESE DRYWALL CLASS SETTLEMENTS (NATIONWIDE INSUREDS SETTLEMENT AGREEMENT, PORTER-BLAINE/VENTURE SUPPLY SETTLEMENT AGREEMENT, TOBIN TRADING AND INSTALLERS SETTLEMENT AGREEMENT, AND BUILDERS MUTUAL INSUREDS SETTLEMENT AGREEMENT) RELATING TO VIRGINIA AND CERTAIN OTHER REMAINING CLAIMS; (2) GRANTING FINAL APPROVAL TO THE FOUR CHINESE DRYWALL CLASS SETTLEMENTS; AND (3) APPROVING AN ALLOCATION PLAN FOR THE FOUR CLASS SETTLEMENTS**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 2

II.    STATEMENT OF FACTS ......................................................................... 3

    A.    The Chinese Drywall Litigation.................................................... 3

    B.    The Four Virginia-based Class Settlements................................ 11

        1.    The Nationwide Insureds Settlement ............................... 12

        2.    Porter Blaine/Venture Supply Settlement ....................... 13

        3.    Tobin Trading & Installers Settlement ............................. 14

        4.    Builders Mutual Insureds Settlement ............................... 16

    C.    Allocation Plan........................................................................... 17

        1.    Introduction...................................................................... 17

        2.    Fees and Costs.................................................................. 17

        3.    Real Property Payments ................................................... 18

        4.    Other Loss Fund............................................................... 19

        5.    Order of Allocation.......................................................... 20

        6.    Miscellaneous Provisions................................................ 21

        7.    Special Master.................................................................. 21

    D.    Class Notice ............................................................................... 22

        1.    Individual Notice by First-Class Mail to Known Class Members........... 22

        2.    Notice by Publication....................................................... 22

    E.    Opt-Outs and Objections............................................................ 24

    F.    Fairness Hearing ........................................................................ 25

    G.    Claims Not Covered by the Class Settlements and Remaining in the Litigation . 26

III.    ARGUMENT ........................................................................................... 26

A.      Pretrial Settlements of Complex Class Actions Are Favored. ............................. 26

B.      Standards for Approval of Class Settlements. ...................................................... 27

C.      The Settlements Are in the Best Interest of Class Members. ............................... 30

        1.      There is No Existence of Fraud or Collusion Behind
                the Chinese Drywall Settlements. ............................................................. 31

        2.      The Complexity, Expense, and Likely Duration of the
                Litigation Weigh in Favor of Approval of the Settlements ...................... 32

        3.      The Stage of the Proceedings and the Amount of
                Discovery Completed Support Approval of the Settlements ................... 34

        4.      The Probability of Plaintiffs' Success on the Merits ............................... 34

        5.      The Range of Possible Recovery ............................................................. 37

        6.      The Opinions of Class Counsel and Class Representatives
                Support Approval of the Settlements ....................................................... 38

D.      The Requirements of Rule 23(a) and Rule 23(b)(3) Have Been
        Met For Certification of the Four Virginia-based Settlement Classes. .............. 39

        1.      Numerosity ................................................................................................. 40

        2.      Commonality ............................................................................................. 41

        3.      Typicality ................................................................................................. 42

        4.      Adequacy of Representation ..................................................................... 43

        5.      Questions of Law and Fact Predominate ................................................. 44

E.      The Class Settlement Notices Complied with this Court's Orders
        and Due Process. ................................................................................................. 45

IV.    CONCLUSION .............................................................................................................. 46

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*,
 Case No. 2:11-cv-00252 (E.D. La.) .............................................................6

*Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*,
 630 F.2d 1164 (7th Cir. 1980) ..................................................................27

*Amato, et al. v. Liberty Mutual Insurance Company*,
 Case No. 2:10-cv-00932 (E.D. La.) ............................................................6

*Amchem Products, Inc. v. Windsor*,
 521 U.S. 591 (1997)........................................................................... passim

*Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*,
 Case No. 11-cv-2349 (E.D. La.)..................................................................6

*Benoit, et al. v. Lafarge S.A., et al.*,
 Case No. 11-cv-1893 (E.D. La.)..................................................................6

*Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*,
 Case No. 11-cv-1363 (E.D. La.)..................................................................6

*Braud v. Transport Service Co. of Illinois*,
 2010 WL 3283398 (E.D. La. Aug. 17, 2010) .........................................26

*Brown v. Ticor Title Ins.*,
 982 F.2d 386 (9th Cir. 1992) ...................................................................44

*Builders Mut. Ins. Co. v. Parallel Design & Development, LLC*,
 2010 WL 6573365 (E.D. Va. Oct. 5, 2010)..............................................36

*Califano v. Yamasaki*,
 442 U.S. 682 (1979)..................................................................................41

*Camp v. The Progressive Group*,
 2004 WL 2149079 (E.D. La. Sept. 23, 2004).............................29, 31, 32

*Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*,
 Case No. 11-cv-3023 (E.D. La.) .................................................................6

*Clement v. KPT, et al.*,
 Case No. 2:09-cv-7628 (E.D. La.) .............................................................. 8

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) ........................................................ passim

*DeHoyos v. Allstate Corp.*,
   **240 F.R.D. 269 (W.D. Tex. 2007)** .............................................................34, 35, 37

*Dragas Management Corp. v. Hanover Ins. Co.*,
   798 F. Supp. 2d 766 (E.D. Va. 2011) ....................................................................36

*Eisen v. Carlisle & Jacqueline*,
   417 U.S. 156 (1974)...............................................................................................46

*Evans v. Jeff D.*,
   475 U.S. 717 (1986)...............................................................................................26

*Evanston Ins. Co. v. Harbor Walk Development, LLC*,
   814 F. Supp. 2d 635 (E.D. Va. 2011) ....................................................................36

*General Telephone Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982)...............................................................................................42

*Georgevich v. Strauss*,
   96 F.R.D. 192 (M.D. Pa. 1982).............................................................................28

*Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*,
   Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010)....................................... passim

*Gross, et al. v. Knauf Gips, KG, et al.*,
   Case No. 2:09-cv-06690 (E.D. La.) ...................................................................6, 33

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................................42

*Hernandez, et al. v. AAA Ins., et al.*,
   Case No. 2:10-cv-03070 (E.D. La.) .................................................6, 33, 34, 41

*Hernandez v. Knauf Gips, KG, et al.*,
   Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) .................................................8

*In re Beef Indus. Antitrust Litig.*,
   607 F.2d 167 (5th Cir. 1979) .................................................................................27

*In re Chevron U.S.A., Inc.*,
   109 F.3d 1016 (5th Cir. 1997) .................................................................................8

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) .................................................................................28

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   626 F. Supp. 2d 1346 (J.P.M.L. 2009)....................................................................5

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997)........................................................................29

*In re Corrugated Container Antitrust Litigation*,
  643 F.2d 195 (5th Cir. 1981) ..........................................................................28, 30

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  2008 WL 5423488 (E.D. La. Dec. 29, 2008) ...................................................40, 41

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*,
  1995 WL 222177 (E.D. La. Mar. 15, 1995) .............................................................31

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) ................................................................................46

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993)...............................................................................39

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ..........................................................................27, 28

*In re Vioxx Prods. Liab. Litig.*,
  239 F.R.D. 450 (E.D. La. 2006)....................................................................40, 41, 44

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir.), cert. denied, 546 U.S. 822 (2005) ...................................29

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002) ........................39

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ..........................................................................26, 28, 30

*Miller v. Republic Nat'l Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977) ..................................................................................28

*Nationwide Mutual Ins. Co. v. Overlook, LLC*,
  785 F. Supp. 2d 502 (E.D. Va. 2011) .....................................................................36

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) ..................................................................................25

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982)........................................................................25, 28, 30

*Payton, et al. v. Knauf Gips, KG, et al.*,
  Case No. 2:09-cv-07628 (E.D. La.) ......................................................................6, 7

*Pettway v. American Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115 (1979)..........................28, 31, 38

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..........................................................................................................46

*Purdie v. ACE Cash Express, Inc.*,
    2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ...............................................................39

*QBE Ins. Corp. v. Estes Heating & Air Conditioning, Inc.*,
    2012 WL 413968 (S.D. Ala. Feb. 8, 2012)........................................................................36

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) .............................................................................28, 30, 34, 38

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ............................................................................................28

*Rogers, et al. v. Knauf Gips, KG, et al.*,
    Case No. 2:10-cv-00362 (E.D. La.) ...................................................................................6

*Scholes v. Stone, McGuire & Benjamin*,
    143 F.R.D. 181 (N.D. Ill. 1992)........................................................................................43

*Smith v. Crystian*,
    91 Fed. Appx. 952 (5th Cir. 2004)....................................................................................26

*Sullivan v. Chase Inv. Servs., Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978)........................................................................................41

*The Mitchell Co., Inc. v. Knauf Gips KG, et al.*,
    Case No. 09-4115 (E.D. La.) ........................................................................................... 33

*The Theory of Fee Regulation in Class Action Settlements*, 46...................................................32

*TravCo Ins. Co. v. Ward*,
    120347, 2012 WL 5358705 (Va. Nov. 1, 2012) ...............................................................35

*Travco Ins. Co. v. Ward*,
    715 F. Supp. 2d 699 (E.D. Va. 2010) ...............................................................................35

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) (Fallon, J.)........................................................ passim

*Union Asset Management Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ............................................................................................34

*United States v. Tex. Educ. Agency*,
    679 F.2d 1104 (5th Cir. 1982) .....................................................................................29, 30

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*,
    Case No. 2:10-cv-00361 (E.D. La.) ..............................................................6, 33

*Young v. Katz*,
    447 F.2d 431 (5th Cir. 1971) ......................................................................28, 29

STATUTES

28 U.S.C. § 1407 .................................................................................................5

OTHER AUTHORITIES

Bristol Herald .....................................................................................................22

Courier, Charlottesville Daily Progress, Culpeper Star-Exponent, Daily News Leader ..............22

Danville Register & Bee, Fredericksburg Free Lance-Star .........................................22

"Exhibit 4" at ¶ 5 ................................................................................................3

Fed. R. Civ. P. 23(a), (b)(3) and (e) ....................................................................46

FED. R. CIV. P. 23(b)(3)(A)-(D) ..........................................................................45

Fed. R. Civ. P. 54(b) .........................................................................................2

Federal Rule of Civil Procedure 23(e) .................................................................26

FEDERAL RULES OF CIVIL PROCEDURE 23(a), 23(b)(3) and 23(e) ..................................1

Four Chinese Drywall Class Settlements *Relating to Virginia and Certain Other
    Remaining Claims* ("Four Virginia-based Settlements")...........................................1

Harrisonburg Daily News-Record, Martinsville Bulletin, Navy Times, Newport News
    Daily Press ..................................................................................................22

Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82..............8

http://web.archive.org/web/20101216021748/http://gypsum.org/pdf/Gypsum_Associatio
    n_Comments_on_Chinese_Wallboard_Issue.pdf....................................................4

http://www.laed.uscourts.gov/Drywall/Drywall.htm.................................................24

http://www.laed.uscourts.gov/drywall/Settlements.htm ........................................23, 46

https://chinesedrywallclass-va.com ..................................................................23, 24

Order No. 18 ......................................................................................................7

Order No. 19 ...................................................................................................................7

Order No. 20 ...................................................................................................................7

Order No. 3 .....................................................................................................................6

Order No. 4 .....................................................................................................................6

Order No. 7 .....................................................................................................................6

Order No. 7B ...................................................................................................................6

Order No. 8 .....................................................................................................................6

Order No. 8A ...................................................................................................................7

Order No. 8B ...................................................................................................................7

Richmond Times-Dispatch ............................................................................................23

Roanoke Times ..............................................................................................................23

Rule 23(a).............................................................................................................39, 40, 41

Rule 23(a)(1) .................................................................................................................41

Rule 23(a)(2) .................................................................................................................41

Rule 23(a)(3) .................................................................................................................42

Rule 23(a)(4) .................................................................................................................43

Rule 23(a) and Rule 23(b)(3)....................................................................................2, 39

Rule 23(b) .....................................................................................................................39

Rule 23(b)(3)...................................................................................................11, 40, 44, 45

Rule 23(b)(3)'s ..............................................................................................................44

Section 11 "Order of Allocation" ............................................................................20, 21

Section 11, "Order of Allocation." ...............................................................................17

Suffolk News-Herald, Virginian Pilot, Virginian Pilot-Sunday, Washington Post......................23

"Tobin Trading, Inc." ("Tobin")...........................................................................9, 10, 11

www.cpsc.gov/info/drywall/Remediation091511.pdf.....................................................5

Pursuant to this Court's Order dated January 17, 2013 [Rec. Doc. 16516], Settlement Class Counsel for the Four Chinese Drywall Class Settlements *Relating to Virginia and Certain Other Remaining Claims* ("Four Virginia-based Settlements") submit this Memorandum of Law[1] in support of their Motion for an Order and Judgment:

(1)     Approving the Nationwide Insureds Settlement, Porter-Blaine/Venture Supply Settlement, Tobin Trading and Installers Settlement, and Builders Mutual Insureds Settlement;

(2)     Certifying the Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading and Installers, and Builders Mutual Insureds Settlement Classes pursuant to FEDERAL RULES OF CIVIL PROCEDURE 23(a), 23(b)(3) and 23(e);

(3)     Approving the Class Releases in the Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading and Installers, and Builders Mutual Insureds Settlements;

(4)     Enjoining and barring any and all Participating Class Members from commencing and/or maintaining any action, legal or otherwise, against the Settling Defendants arising out of, or otherwise relating to, Chinese Drywall;

(5)     Barring the assertion by any entity or person against the Settling Defendants of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning Chinese Drywall; and

(6)     Approving the Revised Proposed Allocation Plan for the Four Virginia-based Settlements.

---

[1] Capitalized terms used in this Memorandum of Law shall have the same meaning as those defined in the Nationwide Insureds Settlement [Rec. Doc. No. 15969-5 ]; Porter-Blaine/Venture Settlement [Rec. Doc. No. 15969-6]; Tobin Trading and Installers Settlement [Rec. Doc. No. 15969-7]; Builders Mutual Insureds Settlement [Rec. Doc. No. 16478-3], which have been filed of record in this case.

Settlement Class Counsel seek the entry of an Order and Judgment[2] finding that: (1) the Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading and Installers, and Builders Mutual Insureds Settlements are fair, reasonable and adequate; (2) the requirements for certifying the Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading and Installers, and Builders Mutual Insureds Settlement Classes under Rule 23(a) and Rule 23(b)(3) have been met; (3) the indemnity, defense and judgment reduction provisions in the Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading and Installers, and Builders Mutual Insureds Settlements are valid, binding, and enforceable; and (4) pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

## I.   <u>INTRODUCTION</u>

The Four Virginia-based Settlement Agreements are the byproduct of months of negotiations and are designed to compensate persons and entities in the United States, but primarily in Virginia, for claims arising from or related to Chinese Drywall ("CDW") purchased from or supplied, marketed, distributed, installed, used, sold, delivered by or in any way alleged to be within the legal responsibility of any Participating Defendants.  The total amount of settlement funds from the four Virginia-based settlement agreements is $17.4 million ($17,400,000) which will provide compensation for real property damage, remediation, and other losses arising from Chinese Drywall, including alternative living expenses, personal property damage, moving and storage expenses, losses resulting from lost use, sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries.[3]

The Class Settlements before the Court were negotiated by Settlement Class Counsel and members of the Court-appointed PSC, who are skilled attorneys with extensive and vast

---

[2] The proposed "Order and Judgment" is attached hereto as "Exhibit 1."

[3] *See* Revised Proposed Allocation Plan, attached hereto as "Exhibits 2 &3."

experience in class action and multidistrict litigation. Class Counsel and the PSC made tremendous efforts over the past few years to achieve these Settlements. Included in the negotiations was a mediation on Tuesday, March 13, 2012 in Norfolk, Virginia, involving the parties to the settlements, that occurred under the auspices of Judge Fallon and in which mediator, Richard Kingrea, presided.[4] Following the mediation, Class Counsel and counsel for the Defendants continued to negotiate. As a result of these protracted and arm's-length negotiations with builder, installer, supplier and manufacturer Defendants and their insurers,[5] Settlement Class Counsel reached four class settlements with: (1) insurer Nationwide Insurance Company and its insureds ("Nationwide Insureds Settlement"); (2) insurer Citizens Hanover Insurance Company and its insureds ("Porter-Blaine/Venture Supply Settlement"); (3) insurer State Farm Insurance Company and its insureds ("Tobin Trading and Installers Settlement") and; (4) insurer Builders Mutual Insurance company and its insureds ("Builders Mutual Insureds Settlement").[6] If approved, these settlements will provide necessary remediation and monetary relief to hundreds of claimants impacted by Chinese Drywall, many of whom have been displaced from their homes, lost their properties due to foreclosure or sales in mitigation, and suffered loss of personal property.

## II.  STATEMENT OF FACTS

### A.  The Chinese Drywall Litigation

The Chinese Drywall Litigation arose out of thousands of individual and class action lawsuits filed in state and federal courts throughout the country on behalf of Plaintiffs seeking compensation for property damage and personal injuries allegedly caused by Chinese Drywall.

---

[4] *See* Declaration of Russ M. Herman, Arnold Levin, and Richard Serpe dated May 7, 2013 ("Herman-Levin-Serpe Decl."), attached hereto as "Exhibit 4" at ¶ 5.

[5] *Id.*

[6] *Id.*

Chinese Drywall was installed in tens of thousands of homes, commercial buildings and other structures in the United States following the devastation caused by Hurricanes Katrina and Rita at the end of the summer of 2005. In the aftermath of these disasters and in conjunction with a housing boom, there was a critical shortage of drywall in this country, which led to the importation of millions of square feet of Chinese Drywall beginning in the fall of 2005 through 2008.[7]

Having entered the stream of commerce in the U.S., Chinese Drywall changed hands from its manufacturers to importers, distributors, suppliers, developers, builders, and/or installers, and was ultimately installed in thousands of properties, primarily in Florida, Louisiana, Virginia, Alabama, Mississippi, Texas, and California. Once installed, residents and owners began to notice unpleasant odors and corrosion to anything made of metal.[8] Plaintiffs have alleged that Chinese Drywall emits sulfur gases that are corrosive to metals, particularly copper and silver.[9] This causes damage to the structural, mechanical, and plumbing systems, such as the framing, heating, air-conditioning and ventilation ("HVAC") units, refrigeration coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and other property, such as microwaves, utensils, electronic appliances, jewelry, and other household and personal property items.[10] Some

---

[7] The Gypsum Association reported that 320 million square feet of Chinese Drywall were imported to the United States between 2005-2007.  See Gypsum Association Comments, archived at http://web.archive.org/web/20101216021748/http://gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.

[8] *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 706 F. Supp. 2d 655, 663 (E.D. La. 2010) (Findings of Fact and Conclusions of Law).

[9] *Id.* at 664.

[10] *See id.* at 664-66.

4

individuals also have alleged that they suffered physical ailments, such as nose bleeds, skin irritation, and respiratory problems, as a result of exposure to Chinese Drywall.[11]

In response to these complaints, certain governmental agencies opened investigations in order to closely examine this issue and conduct testing of Chinese Drywall. The Consumer Product Safety Commission ("CPSC") and the Department of Housing and Urban Development ("HUD") found "a strong association between the presence of problem drywall and corrosion of metal in homes."[12] They have recommended that all possible problem drywall be removed from the property, along with smoke alarms and carbon monoxide alarms, electrical distribution components (including receptacles, switches, and circuit breakers, but not necessarily wiring), and fusible-type fire sprinkler heads.[13] The CPSC and the Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence, however, that exposure to Chinese Drywall causes any ill health effects.

On June 15, 2009, the Judicial Panel for Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the Eastern District of Louisiana for coordinated discovery and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 626 F. Supp. 2d 1346 (J.P.M.L. 2009).[14] Almost 2,000 Defendants have been brought into this Litigation,

---

[11] Rec. Doc. 505 at 1.

[12] See CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of September 15, 2011, published at www.cpsc.gov/info/drywall/Remediation091511.pdf.

[13] *Id*.  This Court has further held that <u>all</u> electrical wiring must be removed as well in order to properly remediate property impacted by Chinese Drywall.  *See* Germano Findings of Fact; Findings of Fact and Conclusions of Law in In re Chinese-Manufactured Drywall Prods. Liab. Litig. (Hernandez), 2010 WL 1710434, *8-*9 (E.D. La. Apr. 27, 2010); Transcript of Proceedings, 3/23/2011, at 18:4-19:14.

[14] Rec. Doc. No. 1.

including the foreign manufacturers of Chinese Drywall, their related entities, homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors of Chinese Drywall, as well as their insurers and the insurers of homeowners. Discovery has revealed that most of the Affected Properties that are the subject of this Litigation contain or contained drywall manufactured by Taishan.

Since the formation of this MDL more than three years ago, thousands of claimants have participated in one or more of the PSC's Omnibus class action complaints.[15] The Court has held regular monthly status conferences attended by hundreds of counsel, and it has entered numerous pretrial orders, orders, and minute entries.[16] To date, more than 16,000 entries have been recorded on the docket in this case. In overseeing this MDL, the Court has appointed numerous steering committees and liaison counsel for Plaintiffs, homebuilders, insurers, installers, and manufacturers.[17] The Court also appointed a curator for *pro se*

---

[15] *See, e.g., Payton, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-07628 (E.D. La.) (Omnibus I, I(A), I(B), I(C)) (involving claims against the Knauf Defendants; *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 2:10-cv-00361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)) (involving claims against non-Knauf manufacturers such as Taishan and BNBM); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06690 (E.D. La.) (original complaint, Omnibus III, III(A)) (asserting alternative liability theory against all known manufacturers for drywall that cannot be traced to a particular manufacturer); *Rogers, et al. v. Knauf Gips, KG, et al.*, Case No. 2:10-cv-00362 (E.D. La.) (Omnibus IV, IV(A), IV(B), IV(C)) (involving claims against the Knauf Defendants); *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.) (Omnibus V); *Hernandez, et al. v. AAA Ins., et al.*, Case No. 2:10-cv-03070 (E.D. La.) (Omnibus VI) (dismissed); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, et al., Case No. 2:11-cv-00080 (E.D. La) (Omnibus VII); *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 2:11-cv-00252 (E.D. La.) (Omnibus VIII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01077 (E.D. La.) (Omnibus IX); *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-1363 (E.D. La.) (Omnibus X); *Benoit, et al. v. Lafarge S.A., et al.*, Case No. 11-cv-1893 (E.D. La.) (Omnibus XI); *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-2349 (E.D. La.) (Omnibus XII); *Almeroth v. Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 12-cv-0498 (E.D. La.) (Omnibus XIII); *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, Case No. 11-cv-3023 (E.D. La.) (Omnibus XIV).

[16] *E.g.,* Minute Entry, Dec. 2, 2010 [Rec. Doc. No. 6525].

[17] *See* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman) [Rec. Doc. No. 21]; Pretrial Order No. 4 (appointing Defendants' Liaison Counsel) [Rec. Doc. No. 22]; Amended Pretrial Order No. 7 (appointing Defendants' Steering Committee) [Rec. Doc. No. 152]; Pretrial Order No. 7B (Defendants' Steering Committee) [Rec. Doc. No. 180]; Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs,

litigants.[18]  Additionally, the Court has corresponded and coordinated with a number of state

and federal court jurists who also preside over related Chinese Drywall cases.[19]

In furtherance of its Court-appointed duties, the PSC has orchestrated and coordinated

the prosecution of Chinese Drywall claims on behalf of thousands of Plaintiffs in the MDL,

which has included: (i) translation and service of process of more than a dozen Omnibus

Complaints under the Hague Convention on scores of foreign manufacturing Defendants and

their related entities; (ii) pretrial discovery of hundreds of entities in the Chinese Drywall

supply chain, including depositions in Frankfurt, London, and Hong Kong, as well as in cities

throughout the United States, often requiring the use of multiple interpreters; (iii) establishing

a document depository that has logged in more than 400,000 pages of documents received

pursuant to production requests, many of which required translation into English; (iv) testing

and preserving the drywall in Plaintiffs' homes; (v) preparing and serving requests upon the

CPSC under the Freedom of Information Act; (vi) retaining experts in metallurgy, electrical

engineering, and failure analysis; (vii) filing motions for class certification in *Germano*,

*Payton (Knauf)*, and *Payton/Vickers*; (viii) filing motions for Florida and Louisiana

Homeowners classes for damages and/or declaratory relief[20]; (ix) filing numerous motions to

intervene, motions to compel, motions for default judgment, motions for summary judgment,

---

Arnold Levin) [Rec. Doc. No. 144-2]; Pretrial Order No. 8A (reappointing PSC Members) [Rec. Doc. No. 6960];
Pretrial Order No. 8B (reappointing PSC Members) [Rec. Doc. No. 13084]; Pretrial Order No. 18 (appointing
Homebuilders and Installers Liaison Counsel) [Rec. Doc. No. 414]; Pretrial Order No. 19 (appointing a Plaintiffs'
State/Federal Coordination Committee and a Defendants' State/Federal Committee) [Rec. Doc. No. 1871]; Pretrial
Order No. 20 (appointing Insurer Steering Committee and Co-Lead Counsel for the First-Party Insurer
Subcommittee) [Rec. Doc. No. 2369].

[18] Rec. Doc. No. 11327.

[19] E.g., Transcript of Status Conference at 2:17-3:17, Oct. 14, 2010 (comments of J. Fallon praising "the
help of state court judges:" "I've counted on their wisdom, on their suggestions in trying to gather all of the cases
and move them forward."); Transcript of Status Conference at 7:5-17, Mar. 23, 2011.

[20] Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva*), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195
(*Vickers/Payton*), 8197 (*Payton*).

and a motion to establish a Plaintiffs' litigation expense fund; (x) responding to motions to dismiss for lack of personal jurisdiction; and (xi) attendance at every MDL 2047 status conference and hearing held before the Court.[21]

In addition, in the spring of 2010, the PSC prepared ten bellwether cases involving Virginia and Louisiana for trial.[22] After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the appropriate scope of remediation.  The Court found that Chinese drywall "has to be remediated."[23] These bellwether trials have served as a useful tool for all litigants involved in the Chinese Drywall Litigation, as well as the Court.[24] The discovery efforts of the PSC, along with the bellwether trials and several mediations facilitated by the Court, have proved fruitful. The PSC has succeeded in reaching five global class settlements with more than 700 Chinese Drywall Defendants. These Settlements, however, did not include persons or entities with claims

---

[21] *See* 12/2/2010 Minute Entry at 23-25.

[22] *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case).  Two additional bellwether cases, Campbell v. KPT, et al., Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[23] *Germano*, 706 F. Supp. 2d at 671.

[24] *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (June 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.... The reasons for acceptance by bench and bar are apparent.  If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

involving Affected Properties in the Commonwealth of Virginia.[25] These Four Virginia-based Settlements will provide compensation to persons and entities in the United States, but primarily in Virginia, who were previously unable to recover against Defendants due to the interpretation of Total Pollution Exclusions involving insurance policies under Virginia law.

The Chinese Drywall in the present cases is believed to have been primarily, if not exclusively, manufactured by Shandong Taihe Dongxin Co., Ltd. which, on Sept. 10, 2007, changed its name to Taishan Gypsum Co., Ltd. ("Taishan").[26] In the fall of 2005, Defendant Venture Supply sought to secure a source of foreign drywall. Venture Supply entered into a contract with Phillip Perry, who was in the business of importing and exporting supplies under the corporate name "Tobin Trading, Inc." ("Tobin"). Defendant Tobin traveled to China and, in November 2005, began negotiations with Taishan for the terms of a large shipment to Venture in Norfolk. Tobin was directly involved in the inspection of the drywall in the Taishan factory and had extensive meetings, phone calls and emails with Taishan to arrange a shipment. On Nov. 9, 2005, Venture Supply provided an original letter of credit in the amount of $429,600.00 to the order of Shandong Taihe Dongxin for 120,000 sheets of drywall to meet all USA ASTM ratings and fire rating standards.[27]  On Nov. 14, 2005, Frank Clem, manager of Venture Supply, was advised that the manufacturer was not clear on U.S. ASTM ratings. However, Taishan insisted that Venture Supply remove U.S. ASTM requirements from the letter of credit and rely solely upon Chinese ratings.[28] Venture Supply then contracted with Taishan to purchase drywall.[29]

---

[25] *See* Preliminary Settlement Approval Order, *In Re: Chinese Manufactured Drywall Products Liability Litigation,* at 23, MDL No. 2047 (filed June 4, 2010)

[26] Findings of Fact & Conclusions of Law, *In Re: Chinese Manufactured Drywall Products Liability Litigation,* at 8, MDL No. 2047 (filed April 8, 2010)

[27] *Id.*

[28] *Id.*

Accordingly, on Nov. 15, 2005, Venture Supply directed its bank to remove the U.S. ASTM requirement from the letter of credit to Taishan.[30] Venture compensated Tobin for expenses incurred in negotiating this contract and Tobin received a percentage of the purchase price of all drywall sold between Taishan and Venture.

Pursuant to contract, on Dec. 25, 2005, Taishan had 2,000 pallets of drywall shipped to Virginia, which arrived in February 2006.[31]  A second shipment of 53,912 sheets on 586 pallets was shipped and off-loaded in Camden, New Jersey.[32] Tobin signed the two purchase agreements as an agent for Venture, which allowed over 150,000 total sheets of Chinese Drywall to enter the United States.

Defendant Porter-Blaine Corporation, a company related to Venture Supply, purchased Taishan drywall from Venture Supply. Venture Supply shipped Taishan drywall to Class Plaintiff's homes and the drywall was installed by Porter-Blaine.[33]

The drywall product from China was never tested pursuant to the U.S. ASTM standard.[34] Venture Supply relied on a representation that Chinese testing was equivalent to the U.S. testing standards.[35] However, the Chinese tests were administered by a government agency and not by an independent testing laboratory.[36] The Certificates of Quality were issued by a government

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 10.
[35] *Id.*

[36] *Id.*

agency and the Quality Management System Certification issued predated the production of the drywall shipped to the United States by at least two years.[37]

All of the claims brought against the Participating Defendants in the Four Virginia-based Settlements are believed to concern Chinese Drywall that entered the United States as a result of the transactions described above and ultimately was purchased imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of the Participating Defendants.

B.     **The Four Virginia-based Class Settlements**

The Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading and Installers, and Builders Mutual Insureds Settlements are four separate Rule 23(b)(3) class settlements designed to provide compensation to owners and tenants of Affected Properties damaged by Chinese Drywall. On January 17, 2013, this Court preliminarily approved all four Virginia-based Settlements.[38]

There are four Settling Insurers and approximately fifty (50) Settling Defendants in the four Virginia-based settlement agreements. The four settlement classes are national in scope, but the claims are limited primarily, if not exclusively, to those involving Taishan Chinese Drywall originally imported and distributed by Tobin, Venture Supply, and Porter-Blaine.  The homes involved number in the several hundreds, the majority of which are located in Virginia.[39]  The overwhelming majority of claims exist in relation to Affected Properties in the Commonwealth of Virginia.

---

[37] *Id.*

[38] [Rec. Doc. No. 16516] Following preliminary approval, Class Counsel filed a proposed allocation plan. The Court allowed class Counsel to file the proposed allocation plan and also extended the opt-out/objection deadline on April 9, 2013. [Rec. Doc. No. 16743]

[39] *See* Findings of Facts and Conclusions of Law, In re Chinese Drywall at 8-9, 19, MDL No. 2047 (filed April 8, 2010).

1.      **The Nationwide Insureds Settlement**

Nationwide-related insurance companies[40] issued or are alleged to have issued policies of primary and excess liability insurance to over thirty Participating Defendants (hereinafter "Nationwide Participating Defendants").[41] The settlement is designed to compensate all persons and entities for claims arising from or related to any Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Nationwide Participating Defendant.[42] Nationwide Participating Defendants are construction and real estate-related entities that are alleged to have participated in the design, construction, installation of drywall, or sale of homes that Plaintiffs allege contain Chinese Drywall.

The Nationwide Insureds Settlement will provide $10,000,000 for Class Members.[43] The settlement funds will be allocated in accordance with a procedure to be established by the Court upon reviewing the recommendation of the Four Virginia-based Settlements Allocation Committee.[44] The Revised Proposed Plan of Allocation of the Four Virginia-based Settlements was prepared by the Court-appointed Allocation Committee[45] after consulting with Special Master Matthew Garretson, who was instrumental in developing the plan. The Revised Proposed Allocation Plan provides for a fair allocation of the Nationwide Insureds Settlement Fund based

---

[40] Nationwide Mutual Insurance Co., Nationwide Mutual Fire Insurance Co., Nationwide Property & Casualty Insurance Co. (collectively, "Nationwide").

[41] A list of non-manufacturing Participating Defendants insured by Nationwide is attached to Rec Doc. 15969-5 at "Exhibit 1."

[42] Rec. Doc. No. 15969-5 at §1.1.

[43] *Id.* at § 4.1.

[44] *Id.* at § 17.

[45] Rec. Doc. No. 16781.

on objective criteria, such as the square footage of the Affected Property[46] and is discussed herein at Section C.

The Nationwide Insureds Settlement requires the entry of a bar order and represents an opportunity to resolve many of the claims against Participating Defendants and their Participating Insurers.[47] There are over thirty Participating Defendants who have agreed to the settlement. This participation will bring this Chinese Drywall MDL Litigation one step closer to a final resolution.

### 2.    Porter Blaine/Venture Supply Settlement

Hanover-related insurance entities[48] provided liability insurance coverage to Participating Defendants, Venture Supply and Porter-Blaine (hereinafter "Porter-Blaine/Venture Participating Defendants").[49]  Porter-Blaine/Venture Participating Defendants are suppliers and installers of Chinese Drywall.[50] The settlement is designed to compensate all persons and entities for claims arising from or related to any Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Porter-Blaine/Venture Supply entity.[51]

The Porter-Blaine/Venture Supply Settlement will provide $3,000,000 for Class Members.[52] The settlement funds will be allocated in accordance with a procedure to be established by the Court upon reviewing the recommendation of the Four Virginia-based

---

[46] *See generally* Exhibit 3.

[47] Rec. Doc. No. 15969-5 at §11.1; 13.1.

[48] Citizens Insurance Co. of America and Hanover Insurance Company.

[49]  *See* Rec Doc. 15969-6 at "§1.1.2" (identifying Porter-Blaine/Venture Participating Defendants).

[51] *Id.* at §1.1.

[52] *Id.* at §4.1

13

Settlements Allocation Committee.[53] The Revised Proposed Plan of Allocation of the Four

Virginia-based Settlements was prepared by the Court-appointed Allocation Committee[54] after

consulting with Special Master, Matthew Garretson, who was instrumental in developing the

plan. The Revised Proposed Allocation Plan provides for a fair allocation of the Porter-

Blaine/Venture Supply Settlement Fund based on objective criteria, such as the square footage of

the Affected Property[55] and is discussed herein at Section C.

The Porter-Blaine/Venture Supply Settlement requires the entry of a bar order and

represents an opportunity to resolve claims against Participating Defendants and their

Participating Insurers.[56] This participation will bring this Chinese Drywall MDL Litigation one

step closer to a final resolution.

### 3.      Tobin Trading & Installers Settlement

State Farm-related insurance entities[57] provided liability insurance coverage to Tobin,

Builders Plaster & Drywall, LLC, and JMM Drywall Co., LLC (hereinafter "Tobin Trading and

Installers Participating Defendants"), who participated in the building of homes that were

constructed with Chinese Drywall.[58] Tobin Trading & Installer Defendants are importers,

suppliers and installers of Chinese Drywall. The settlement is designed to compensate all persons

and entities for claims arising from or related to any Chinese Drywall purchased, imported,

---

[53] *Id.* at §16.

[54] Rec. Doc. No. 16781.

[55] *See generally* Exhibit 3.

[56] Rec Doc. 15969-6 at §12; 13.

[57] State Farm Florida Insurance Company and State Farm Fire and Casualty Company

[58] Participating Defendants are identified in Rec Doc. 15969-7 at "Exhibit 1."

14

supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Tobin Trading & Installer entity.[59]

The Tobin Trading & Installers Settlement will provide $2,700,000 for Class Members. This payment comprises $1,700,000 on behalf of State Farm insured installers, Builders Plaster & Drywall, LLC and JMM Drywall Co., LLC ("Installers Settlement Payment") and $1,000,000 on behalf of Tobin Trading, Inc. and Phillip Perry ("Tobin Trading Settlement Payment").[60] The settlement funds will be allocated in accordance with a procedure to be established by the Court upon reviewing the recommendation of the Four Virginia-based Settlements Allocation Committee.[61] The Revised Proposed Plan of Allocation of the Four Virginia-based Settlements was prepared by the Court-appointed Allocation Committee[62] after consulting with Special Master, Matthew Garretson, who was instrumental in developing the plan. The Revised Proposed Allocation Plan provides for a fair allocation of the Tobin Trading & Installers Settlement Fund based on objective criteria, such as the square footage of the Affected Property[63] and is discussed herein at Section C.

The Tobin Trading & Installers Settlement requires the entry of a bar order and represents an opportunity to resolve claims against Participating Defendants and their Participating Insurers.[64] This participation will bring this Chinese Drywall MDL Litigation one step closer to a final resolution.

---

[59] *Id.* at §1.1.

[60] *Id.* at § 4.1.

[61] *Id.* at § 17.

[62] Rec. Doc. No. 16781.

[63] *See generally* Exhibit 3.

[64] Rec Doc. 15969-7 at §11.1; 13.1.

### 4. __Builders Mutual Insureds Settlement__

Builders Mutual Insurance Company issued or is alleged to have issued policies of primary and excess liability insurance to nineteen Participating Defendants (hereinafter "Builders Mutual Participating Defendants").[65] Builders Mutual Participating Defendants are construction and real estate-related entities that are alleged to have participated in the design, construction or sale of homes that Plaintiffs allege contain Chinese Drywall. The settlement is designed to compensate all persons and entities for claims arising from or related to any Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Builders Mutual insured entity.[66]

The Builders Mutual Insureds Settlement will provide $1,700,000 for Class Members.[67] The settlement funds will be allocated in accordance with a procedure to be established by the Court upon reviewing the recommendation of the Four Virginia-based Settlements Allocation Committee.[68] The Revised Proposed Plan of Allocation of the Four Virginia-based Settlements was prepared by the Court-appointed Allocation Committee[69] after consulting with Special Master, Matthew Garretson, who was instrumental in developing the plan. The Revised Proposed Allocation Plan provides for a fair allocation of the Builders Mutual Insureds Settlement Fund

---

[65] A list of Participating Defendants insured by Builders Mutual is attached to Rec Doc. 16463-5 at "Exhibit 1."

[66] *Id.* at §1.1.

[67] *Id.* at §4.1.

[68] *Id.* at §17.

[69] Rec. Doc. No. 16781.

based on objective criteria, such as the square footage of the Affected Property[70] and is discussed herein at Section C.

The Builders Mutual Insureds Settlement requires the entry of a bar order and represents an opportunity to resolve claims against many Participating Defendants and their Participating Insurers.[71] This participation will bring this Chinese Drywall MDL Litigation one step closer to a final resolution.

      **C.**    **Allocation Plan**

         **1.**    **Introduction**

A Proposed Plan of Allocation of the Four Virginia-based Settlements, which was prepared by the Court-appointed Allocation Committee[72], after consulting with Special Master Matthew Garretson, who was instrumental in developing the plan, was posted on the Court's Chinese Drywall website on April 10, 2013, pursuant to this Court's April 9, 2013 Order.[73] The revised Proposed Allocation Plan is attached in redline as Exhibit 2 and clean as Exhibit 3.  It also includes a minor clarification to the manner in which the Real Property Payments will be allocated under Section 11, "Order of Allocation."

         **2.**    **Fees and Costs**

Under each of the Four Virginia-based Settlement Agreements, the PSC, Class Counsel, common benefit attorneys, and privately retained attorneys are entitled to petition the Court for attorneys' fees, including common benefit fees. All attorneys' fees will be capped at 32% (private retainer attorneys may petition the Court for up to 20% of the Settlement Funds for

---

[70] *See generally* Exhibit 3.

[71] Rec Doc. 16463-5 at §11.1; 13.1.

[72] Rec. Doc. 16781.

[73] Rec. Doc. 16743.

fees; common benefit attorneys may petition the Court for up to 12% of the Settlement Funds for fees). No more than 15% of the Settlement funds may be reserved for common benefit fees and reimbursement of reasonable expenses, excluding the costs of notice (12% common benefit fees, 3% for common benefit costs).[74] Additionally, all costs of administering the allocation of the Settlement Funds will be paid out of the Settlement Amount.

### 3.    Real Property Payments

Under the proposed allocation plan, eighty percent (80%) of the funds available for distribution will be distributed to members of the Settlement Classes as compensation for damage to real property. Real Property Payments shall only be recoverable once per Affected Property and shall be paid to the person or entity that retains the right to recover for such claims against the Participating Defendant(s).[75]  Class members who may recover Real Property Payments include: (1) owners of Affected Property, for costs and expenses associated with remediation (including the removal of the CDW from the Affected Property and repairing or replacing affected building materials and fixtures in the Affected Property, the relocation of the property owners' belongings during the repair work, and, if necessary, obtaining comparable alternative living arrangements for the homeowners during the repair work); (2) sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer; and (3) former owners of Affected Properties who lost those properties in foreclosure but who continue to owe mortgage payments for amounts in excess of the auction value of their Affected Properties.[76] A buyer who purchased an

---

[74] Exhibit 3, at Section 3.

[75] Exhibit 3, at Section 5.

[76] *Id.* at FN 3.

Affected Property after the seller disclosed the existence of CDW shall not be entitled to recover Real Property Damages. Real Property payments will be distributed to Class Members based on the square footage of their homes.[77] The Special Master will divide the total amount of Real Property Payments for each Settlement Fund by the Total Square Footage (under air)[78] to determine the amount per square foot to allocate to each Affected Property for each Settlement Fund ("Square Footage Allocation"). The Special Master will then multiply the number of square feet under air in each Affected Property by the Square Footage Allocation to determine the payment for each Affected Property.[79]

### 4.   Other Loss Fund

Under the Proposed Allocation Plan, twenty percent (20%) of the Funds available for distribution will be set aside to compensate class members for other Losses.[80] Other losses include pre-remediation alternative living expenses, foreclosures, sales in mitigation, tenant losses, bodily injury, and personal property damages. Other losses do not include damage or loss for stigma, injury to reputation, loss of enjoyment of home, psychological or emotional injury, medical monitoring, injury to reputation, credit rating loss, legal and accounting expenses, and loss of investment opportunity.[81] The Special Master may, in his discretion, consider additional

---

[77] *Id.* at Section 8; *but see id.* at FN 5. If an Affected Property only contains discrete and insular quantities of CDW (*i.e.*, if the CDW is only present in one room of the house), however, the Special Master shall have discretion to make appropriate adjustments to the damage award for that Affected Property.

[78] The Total Square Footage shall be determined by combining the square footage under air of all Affected Properties for each Settlement Fund.

[79] *Id.* at Section 8.

[80] Exhibit 3, at Section 7.

[81] *Id.* at Section 7(b).

claims for other losses not specifically designated. The Other Loss Funds will be distributed to Class Members *pro rata* based on the amount of each class member's claim.[82]

### 5.   Order of Allocation

Some, but not all, claimants will be members of multiple Settlement Classes. In order to ensure availability of funds for members of each Settlement Class, the Special Master shall consider claims for payments from the Funds in the following order:[83]

i.     Nationwide Settlement Fund
ii.    Builders Mutual Settlement Fund
iii.   Installers Fund
iv.    Porter-Blaine/Venture Fund
v.     Tobin Trading Fund

Once the Special Master has made a determination regarding allocation from the Nationwide Settlement Fund, he will then consider claims to the Builders Mutual Settlement Fund, the Installers Fund, the Porter-Blaine/Venture Fund, and finally, the Tobin Trading Fund. If the Special Master has allocated a payment to a claimant from an earlier fund, and that claimant is also eligible for payment from another fund, the claim for contribution from a later fund will be proportionately reduced by the amount allocated from the earlier Fund.[84]

The Revised Proposed Allocation Plan includes a revision to Section 11 "Order of Allocation" to clarify how a Real Property Payment will be distributed if a claimant is eligible for a Real Property Payment from a subsequent fund after having already received a Real Property Payment from an earlier fund. The Special Master will use a benchmark amount per square foot[85] to assess the Remaining Real Property Value of the claim (the difference between

---

[82] *Id.* at Section 9.

[83] *Id.* at Section 11.

[84] *Id.*

[85] The Special Master will have discretion to set a benchmark amount per square foot.

the Full Real Property Value of the claim and the Real Property Payment made from an earlier

fund). The Special Master will then use the Remaining Real Property Value to determine the

Remaining Square Footage that he should consider when making a Real Property Payment from

the subsequent fund. The Revised Proposed Allocation Plan includes an example of how this

calculation will operate in practice.[86]

### 6.   Miscellaneous Provisions

The Allocation criteria include a provision for Class Members who failed to file and

serve their Claims within the Applicable Statute of Limitations. Class Members who failed to file

and serve their Claims within the Applicable Statute of Limitations, but who meet the other proof

requirements, may recover a proportional share of both the Real Property Funds and Other Loss

Funds reduced by sixty percent (60%).[87]  Additionally, pursuant to applicable bankruptcy law

and applicable decisions in individual bankruptcy matters, Class Members who declared

bankruptcy may be entitled to recover under this Settlement if they have retained their rights to

recover for CDW damage.[88]

### 7.   Special Master

On April 25, 2013, this Court appointed Matthew Garretson, of the Garretson Group to

assist in the allocation process.  The Special Master shall be responsible for apportioning funds

to each Affected Property by applying the objective criteria set forth in a Court-approved

---

[86] *Id.* at Section 11.

[87] *Id.* at Section 10.

[88] *Id.* at Section 13.

allocation plan.[89] The Court will oversee the Allocation of Settlement Funds and the Special

Master will make regular reports to the Court to facilitate the Court's oversight.

     **D.**     **Class Notice**

          **1.**     **Individual Notice by First-Class Mail to Known Class Members**

Individual Notices of the Four Virginia-based Settlements have been disseminated via

first-class mail, postage prepaid, to all known Class Members and their Counsel.[90] Individual

notice was mailed to all Plaintiffs and their counsel who filed claims against these Defendants or

the Participating Defendants and/or the Participating Insurers in Omnibus actions or individual

actions in the MDL and Related Actions in state court.[91]  Further, Notice was mailed to all Class

Members identifiable through Plaintiff Profile Forms and other available records, and their

counsel.[92]

          **2.**     **Notice by Publication**

Summary notices of the Four Virginia-based Settlements have been published in a variety

of national and local newspapers, periodicals and magazines, on the internet, in press releases, in

social media and/or on television.[93] The Summary Notice of the Four Virginia-based Settlements

was published in the following print media: Bristol Herald Courier, Charlottesville Daily

Progress, Culpeper Star-Exponent, Daily News Leader (Staunton, Va.), Danville Register & Bee,

Fredericksburg Free Lance-Star, Harrisonburg Daily News-Record, Martinsville Bulletin, Navy

Times, Newport News Daily Press, Newport News Daily Press-Sunday, Norfolk Flagship,

---

[89] Rec. Doc. 16790

[90] *See* Affidavit of Mailing of Smith-Edwards-Dunlap Printing Company In Connection with Notice By Mailing ("Exhibit 5").

[91] *Id.*; *see also* Affidavit of Kristen M. Ward at ¶ 4 ("Exhibit 6").

[92] *Id.*

[93] *See generally* Decl. of Belinda Macauley ("Exhibit 7").

Norfolk Jet Observer, Northern Virginia Daily, Progress-Index (Petersburg, Va.), Richmond

Times-Dispatch, Roanoke Times, Suffolk News-Herald, Virginian Pilot, Virginian Pilot-Sunday,

Washington Post, and Winchester Star.[94] Summary notice was also published in banner

advertisements on the Internet across a variety of sites. On February 8, 2013, a Press Release was

distributed on PR Newswire's US1 Newsline, reaching more than 5,500 print and broadcast

outlets and more than 5,400 websites and online databases.[95] Further, a television advertisement

announcing the Four Virginia-based Settlements appeared on local market television in the

Norfolk-Portsmouth-Newport News area.[96]

  A website has been established at https://chinesedrywallclass-va.com, and a Call Center

with a dedicated toll-free number (1-877-418-8087) was set up for Class Members to obtain

information about their rights under the Four Virginia-based Settlements and to register to

receive further information and updates about the settlements and any claims procedure approved

by the Court.[97] The website allows users to download the Settlement Agreements, the Court's

preliminary approval order, and the long-form notice that was mailed to known Class

Members.[98]

  All class notices have been posted on this Court's Chinese Drywall website at

http://www.laed.uscourts.gov/drywall/Settlements.htm, and Settlement Class Counsel have

requested that the notices be published on additional court and government websites as ordered

---

[94] *Id.* at 10.

[95] *Id.* at ¶ 11.

[96] *Id.* at ¶ 9.

[97] *See* Ward Aff., Exhibit 6 at 5.

[98] *Id.*

by the Court.[99]  For example, Settlement Class Counsel made requests to the clerks of the following courts that Notice be posted on their websites: United States District Court for the Eastern District of Virginia, United States District Court for the Eastern District of North Carolina, Virginia Beach Cir. Court, Norfolk Cir. Court, Williamsburg/James City Cir. Court, Suffolk Cir. Court, York County Cir. Court, Portsmouth Cir. Court, and Richmond Cir. Court.[100] Additionally, Settlement Class Counsel requested that Class Notice be posted on the websites of the U.S. Consumer Product Safety Commission and the Virginia Department of Health.[101]

Pursuant to this Court's April 9, 2013 Order,[102] a Proposed Plan of Allocation of the Four Virginia-based Settlements was posted on the Court's Chinese Drywall website (http://www.laed.uscourts.gov/Drywall/Drywall.htm) on April 10, 2013. Additionally the Proposed Allocation Plan was posted to the https://chinesedrywallclass-va.com website.[103]

### E.   Opt-Outs and Objections

Initially, the Court set a deadline of April 28, 2013 for opt-outs and objections.[104]  The Four Virginia-based Settlements Allocation Committee submitted a proposed allocation plan on April 8, 2013 and Settlement Class Counsel requested that the Court extend the deadline to opt-out and object in order to give Class Members adequate time to review the proposed plan.[105]

---

[99] *Id.* at 2.

[100] *Id.* at 3.

[101] *Id.* at 2.

[102] Rec. Doc. 16743.

[103] *See* Ward Aff., Exhibit 6 at 6.

[104] [Rec. Doc. No. 16516]

[105] [Rec. Doc. No. 16743]

Accordingly, the Court extended all opt-out and objection deadlines to May 16, 2013.[106] The Court further ordered that any Class Member who previously opted out of a class settlement will have the right to withdraw that opt-out and opt back into the settlement.[107]

As of the date of this filing, Settlement Class Counsel have not received any requests from Class Members to opt-out and have not received any objections.[108] Given the ongoing opt-out/opt-back-in/objection period through May 16, 2013, the moving parties reserve comment on opt-outs and objections until the reply brief.

**F.     Fairness Hearing**

When presented with a motion for final approval of a class settlement, "the Court must conduct a fairness hearing at which the parties proposing the settlement must present evidence that the settlement is 'fair, reasonable, and adequate.'" *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 842 (E.D. La. 2007) (Fallon, J.), *citing* Fed. R. Civ. P. 23(e)(1)(C); *see also Newby v. Enron Corp*., 394 F.3d 296, 300-01 (5th Cir. 2004); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). This Court has scheduled a Fairness Hearing for May 21, 2013, to adjudicate final approval of the class settlements before the Court. Prior to the hearing, Settlement Class Counsel will file a reply brief in support of final approval.[109] Since the opt-out/objection period does not close until May 16, 2013, the moving parties will address opt-outs and respond to any and all objections to the class settlements in their reply brief in support of final approval. Any Class Member that has properly requested an opportunity to appear at the hearing will be permitted to be heard.

---

[106] *Id.*

[107] *Id.*

[108] Levin-Herman-Serpe Aff., Exhibit 4, at 20.

[109] [Rec. Doc. No. 16743]

G.    **Claims Not Covered by the Class Settlements and Remaining in the Litigation**

The PSC is solely and vigorously pursuing claims against the Chinese manufacturer Taishan and its related entities, including its upstream entities – China National Building Material Company, Limited ("CNBM") and Beijing New Building Materials, Ltd. ("BNBM"). In the *Germano* bellwether trials, the PSC obtained a default judgment against Taishan for $2,758,356.20. Taishan has moved to vacate the default judgment and also dismiss the Germano complaint, as well as the Gross and Wiltz omnibus class actions for lack of personal jurisdiction. The PSC has briefed responses and presented oral argument in opposition to Taishan's motions and will continue to pursue Plaintiffs' claims against this Defendant in an effort to provide compensation for others who have been injured by Chinese Drywall.

III.   **ARGUMENT**

A.    **Pretrial Settlements of Complex Class Actions Are Favored.**

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). In determining whether to approve the Four Virginia-based Settlements, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See, e.g., Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Murphy Oil*, 472 F. Supp. 2d at 843; *Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398, at *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.); William B. Rubenstein, Alba

Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.).[110]  This

is, in part, because of the complexity and size of class actions:

> *Particularly in class action suits, there is an overriding public interest in favor of settlement. . . . It is common knowledge that class action suits have a well deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action. . . . In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.*

Cotton, 559 F.2d at 1331 (citation omitted); see also Murphy Oil, 472 F. Supp. 2d at 843

("The public interest favoring settlement is especially apparent in the class action context where

claims are complex and . . . could lead to years of protracted litigation and sky-rocketing

expenses.").


In addition:

> *Complex litigation - like the instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions. . . . Although class action settlements require court approval, such approval is committed to the sound discretion of the district court.*

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citations omitted). Courts

have recognized that certification of a class for settlement purposes is beneficial in resolving

major class action disputes. *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-77 (5th Cir.

1979).

### B.     Standards for Approval of Class Settlements.

---

[110] "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement.... This rule has particular force regarding class action lawsuits." *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

Determining the fairness of class settlements is left to the sound discretion of the district court, and an appellate court will not overturn the district court's decision absent a clear showing of abuse of that discretion. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982), citing, *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker*, 667 F.2d at 1209; *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 218 (5th Cir. 1981); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115 (1979); *Cotton*, 559 F.2d at 1331; *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971); *see also U.S. Oil*, 967 F.2d at 493-94. The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller*, 559 F.2d at 428, quoting *Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975). Moreover, because settlements of class actions are "particularly favored," they are not to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843.

In its role as a "fiduciary for absent class members," the district court has a responsibility to "critically examine[] the settlement's terms and implementation." *Murphy Oil*, 472 F. Supp. 2d at 843; *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002); *Georgevich v. Strauss*, 96 F.R.D. 192, 196 (M.D. Pa. 1982) ("[T]he Court must vigorously act as guardian of the rights of absentee class members."); Alba Conte and Herbert B. Newberg, 1 NEWBERG ON CLASS ACTIONS § 1:3 (4th ed. 2002); MANUAL FOR COMPLEX LITIGATION § 21.61. In so doing, the district court must "'exercise the highest degree of vigilance....'" *Murphy Oil*, 472 F. Supp. 2d at 843, quoting *Reynolds*, 288 F.3d at 279-80.[111]

---

[111] In adjudicating the motion for final approval, "[t]he Court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members, and should provide the basis for its conclusions in a

28

"[T]he proponents of the [class] settlement bear the burden of demonstrating that the settlement is fair, reasonable, and adequate." *Murphy Oil*, 472 F. Supp. 2d at 844. However, in the absence of contrary evidence, there is a presumption "in favor of the settlement's fairness." *Id*. at 843; *see also Camp v. The Progressive Group*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) ("court may presume that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations."), citing 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.); *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

Keeping this in mind, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (citation and quotation marks omitted). In other words, in weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales. *See id.* The very object of a compromise "is to avoid the determination of sharply contested and dubious issues." *Young*, 447 F.2d at 433.

Thus, a court should not engage in a trial on the merits when considering the propriety of a settlement:

> It cannot be overstated that neither the trial court in approving the settlement nor [the appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

---

reasoned opinion." *Murphy Oil*, 472 F. Supp. 2d at 842, citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 (2004); *see In re Combustion, Inc.*, 968 F. Supp. 1116, 1125 (W.D. La. 1997) (stating that a court may not give boilerplate approval to settlement, but must instead analyze the facts and law supporting its conclusion in a memorandum); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir.), cert. denied, 546 U.S. 822 (2005).

Cotton, 559 F.2d at 1330, quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 ( 8th

Cir.), cert. denied, 423 U.S. 864 (1975); City of Detroit v. Grinnell Corp., 495 F.2d 448, 456

(2nd Cir. 1974); see also Murphy Oil, 472 F. Supp. 2d at 843 ("The Court may not resolve

contested issues of fact or law, but instead is concerned with the overall fairness, reasonableness,

and adequacy of the proposed settlement as compared to the alternative of litigation.").  The trial

court is not required to decide the merits of the action or substitute a different view of the merits

for that of the parties or counsel.  Maher, 714 F.2d at 455 n.31 ("In other words, in determining

the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor

the appellate court on review, should reach ultimate conclusions on the issues of fact and law

underlying the dispute."); Tex. Educ. Agency, 679 F.2d at 1108 (in approving a class settlement

"we do not thereby reach any ultimate conclusions on the issues of fact and law which underlie

the merits of the dispute, as we recognize that normally a settlement is a process of compromise

in which, in exchange for the saving of cost and elimination of risk, the parties each give up

something they might have won had they proceeded with the litigation, ... rather than an attempt

to precisely delineate legal rights.") (internal quotations and citations omitted).

##### C.    <u>The Settlements Are in the Best Interest of Class Members.</u>

The United States Court of Appeals for the Fifth Circuit has articulated six factors or

"focal facets" for the Court to consider in evaluating the fairness of the proposed class

settlements: (1) the existence of fraud or collusion behind the settlements; (2) the complexity,

expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of

discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of

possible recovery; and (6) the opinions of the class counsel, class representatives, and the absent

class members. *See Reed*, 703 F.2d at 172 (adopting six-factor test cited in prior Fifth Circuit

decisions including *Parker*, 667 F.2d at 1209, *Corrugated Container*, 643 F.2d at 217, and

*Pettway*, 576 F.2d at 1214). An analysis of these factors overwhelmingly favors approval of the four Chinese Drywall class settlements before the Court.

1.    **There is No Existence of Fraud or Collusion Behind the Chinese Drywall Settlements.**

The law recognizes "a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Camp*, 2004 WL 2149079 at *7; *see also Murphy Oil*, 472 F. Supp. 2d at 846 ("a presumption exists that settlement negotiations were conducted properly in the absence of collusion if the terms of the proposed settlement are demonstrably fair."). The class settlements before the Court are the product of protracted arm's-length negotiations between and among counsel for Settling Defendants, their Participating Insurers and members of the PSC.[112]

Settlement Class Counsel and the PSC engaged in scores of in-person and telephonic negotiation sessions with the Settling Defendants that took place over many months, with oversight by the Court and the Court-appointed mediator. After preliminary agreements were reached, the parties negotiated the specific terms of the Settlements in detail, and all parties made concessions and won positions on difficult issues.[113]

The parties appropriately negotiated the payment of attorneys' fees from the Settlement amounts after all other material terms of the Settlements had been agreed upon, and they left the ultimate amount of those fees to the Court's discretion. *See Murphy Oil*, 472 F. Supp. 2d at 844 (noting "[i]t is common practice today for class counsel to negotiate a specific fee award after they have successfully negotiated the class's recovery."); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177, at *4 (E.D. La. Mar. 15, 1995) ("Separate negotiation of the class

---

[112] *See*, *generally*, Herman-Levin-Serpe Decl, Exhibit 4.

[113] *Id.*

settlement before an agreement on fees is generally preferable to avoid conflicts of interest between the attorneys and the class."). Courts have held that where "the amount of the fee is left entirely to the Court's discretion," "the possibility of collusion among counsel" is "exponentially decrease[d]." *Murphy Oil*, 472 F. Supp. 2d at 845.  As this Court explained in an analogous situation in *Murphy Oil*, "[b]ecause the parties have not agreed to an amount or even a range of attorneys' fees, and have placed the matter entirely into the Court's hands for determination, there is no threat of the issue explicitly tainting the fairness of settlement bargaining." *Id*. citing Bruce L. Hay, *The Theory of Fee Regulation in Class Action Settlements*, 46 AM. U. L. REV. 1429, 1432 (1997) ("[P]roper regulation of the counsel's fee is both necessary, and within limits, sufficient to mediate the tension between the goals of facilitating settlement and protecting the class against collusion.").

Given the evidence of arm's-length negotiations and no evidence of any impropriety, the Court may presume that the proposed settlements are fair and reasonable.  *See Camp*, 2004 WL 2149079 at *7.

> **2.     The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Approval of the Settlements**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See* 4 NEWBERG ON CLASS ACTIONS § 11.50 (4th ed.).  In this case, the high level of complexity, incredible expense, and likely duration of the Chinese Drywall Litigation militate in favor of consummating final approval for the Four Virginia-based Settlements.  Since June 2009, the PSC has worked around the clock to vigorously prosecute the claims of thousands of Chinese Drywall Plaintiffs in this MDL, having prepared and filed numerous class action Omnibus Complaints, each containing hundreds of named class representatives.  The PSC has represented these

Plaintiffs at every status conference and hearing held by the Court since the inception of the MDL.  Service of the Omnibus Complaints upon scores of foreign Defendants pursuant to the Hague Convention requires that the complaints first be translated into Chinese (in the case of Taishan and its related entities and other Chinese companies), German (in the case of the Knauf Defendants) and/or French (in the case of Lafarge, S.A.).  The costs of translation and service on the foreign Defendants exceeds $100,000 for each complaint in the Litigation.

Discovery in this Litigation involving almost 2,000 Defendants has taken the parties to all ends of the globe for depositions and document review, and it has required the filing of FOIA requests and appeals to the CPSC, as well as motions to compel.  The PSC has also established and maintained an extensive document depository that contains the fruits of these discovery efforts.

Further, the preparation for the bellwether trials in *Germano* and *Hernandez*, which laid the foundation for the settlements before the Court, required the retention of expensive experts by the PSC and necessitated around-the-clock efforts of dozens of attorneys and paralegals over several months to prepare and respond to *Daubert* motions and numerous motions *in limine*. To date, more than 16,000 entries have been recorded on the MDL 2047 docket.

Without these Settlements, there would be no end to this Litigation in any near future. The Settling Defendants have vigorously fought against the claims of the Plaintiffs and sought dismissal on numerous grounds, including for lack of personal jurisdiction.  The PSC recently opposed Taishan's motion to vacate the default judgment in *Germano* as well as four separate motions of Taishan to dismiss *Germano* (Virginia), *Gross* (Louisiana), *Wiltz* (Louisiana), and *Mitchell*[114] (Florida) (as *amicus*) for lack of personal jurisdiction.

---

[114] *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Case No. 09-4115 (E.D. La.).

Meanwhile, many of the Plaintiffs have been displaced from their homes, many have lost their homes due to foreclosure or sales in mitigation, and many have suffered additional damages such as loss of personal property.  These factors weigh heavily in support of approval of the settlements.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlements

This Litigation has been ongoing for more than three years. Following extensive discovery of all relevant parties, several trials of bellwether Plaintiffs were completed, after which the Court entered numerous and detailed findings of fact and conclusions of law in both *Germano* and *Hernandez*.[115]  The results of these trials played a substantial role in getting the Settling Defendants to the bargaining table, which ultimately led to the culmination of the class settlements before the Court.  "Thus, settlement was achieved in the full context of the adversarial process." *Murphy Oil*, 472 F. Supp. 2d at 846.  This factor supports final approval of the settlements. *Cf. Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (upholding approval of class settlement even though no formal discovery had been taken).

### 4. The Probability of Plaintiffs' Success on the Merits

In the absence of fraud or collusion behind the class settlements, "the probability of the plaintiffs' success on the merits has been held by the Fifth Circuit as the most important *Reed* factor."  *Murphy Oil*, 472 F. Supp. 2d at 848 citing *Parker*, 667 F.2d at 1209; *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007).  In evaluating Plaintiffs' "likelihood of success, the Court must compare the terms of the settlement with the rewards the class would

---

[115] *Germano*, 706 F. Supp. 2d 655 (Findings of Fact and Conclusions of Law); *Hernandez*, 2010 WL 1710434 (*Findings of Fact and Conclusions of Law*).

have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287, citing *Reed*, 703 F.2d at 172.

Given the advanced stage of these proceedings, in reaching the class settlements before the Court, the parties were guided by the results of the bellwether trials held in 2010.  In *Germano*, for example, the Court ruled that the average cost to remediate a home in Virginia is $86 per square foot.[116]  Although Settlement Class Counsel and the PSC believed in the merits of the case against the Settling Defendants and in their ability to prevail, they recognized that Plaintiffs would face serious obstacles to establishing both liability and damages should the cases proceed to trial.  This issue weighs in favor of settlement approval since "[c]ollectibility of a judgment is also a factor bearing on the reasonableness of a settlement in relation to the defendants' ability to withstand a greater one."  4 NEWBERG ON CLASS ACTIONS § 11.50 (4th ed.).

Moreover, all of the Settling Defendants contend that Plaintiffs cannot establish causation for bodily injury damages.  The governmental agencies investigating Chinese Drywall have not found any evidence that this product causes personal injury to residents.  In addition, all Settling Defendants argue that it would be exceedingly difficult for Plaintiffs to prove that economic losses were caused by Chinese Drywall rather than by the economic recession and collapse of the real estate market in 2008, which would materially reduce the potential range of damages.

Another obstacle to Plaintiffs' recovery is the plethora of judicial decisions denying Plaintiffs' claims under insurance policies containing pollution exclusion clauses. *See TravCo Ins. Co. v. Ward,* 120347, 2012 WL 5358705 (Va. Nov. 1, 2012); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), *question cert'd to Va. Sup. Ct*., 468 Fed. Appx. 195 (4th Cir.

---

[116] *Germano* Findings of Fact, 706 F. Supp. 2d at 687.

2012); *Evanston Ins. Co. v. Harbor Walk Development, LLC*, 814 F. Supp. 2d 635 (E.D. Va.

2011); *Dragas Management Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 766 (E.D. Va. 2011);

*Nationwide Mutual Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502 (E.D. Va. 2011); *QBE Ins.*

*Corp. v. Estes Heating & Air Conditioning, Inc.*, 2012 WL 413968 (S.D. Ala. Feb. 8, 2012);

*Builders Mut. Ins. Co. v. Parallel Design & Development, LLC*, 2010 WL 6573365 (E.D. Va.

Oct. 5, 2010). Moreover, even if the cases against the Settling Defendants were to proceed to

trial, the Defendants would likely appeal any judgment favorable to the Class.

     Finally, in the absence of the class settlements, there is the potential for a bankruptcy

filing by some Defendants, which would significantly delay for years any recovery by the

Plaintiffs and would put at risk the insurance money comprising these settlements.  Any

bankruptcies by Defendants would be detrimental for Class Members for a number of reasons.

First, the insurers contributing to the settlements waived their coverage defenses, including the

pollution exclusion defense, in connection with the settlements, thus avoiding a bad faith claim

that could arise if they did not tender their policy limits and their insured ended up in bankruptcy.

If the settlements are not approved, and a Settling Defendant files for bankruptcy, its insurers

contributing to these settlements would have less incentive to refrain from litigating their

coverage defenses in the bankruptcy proceeding, because it could not be argued that the

bankruptcy occurred due to the non-tender of their policies. All parties may have to compromise

the insurance claim to avoid the potential loss of all insurance assets due to the pollution

exclusion and other coverage defenses.

     Second, the cost of bankruptcy administration may likely consume a significant amount

of any non-insurance assets that these Defendants may have that are not already pledged to

secure creditors. And, it is unlikely, in any event, that those remaining non-insurance assets would make up for the loss of insurance assets that would be at risk in the bankruptcy.

These legal obstacles favor approval of the integrated class settlements.

### 5.      The Range of Possible Recovery

"The next factor the Court must consider is whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290.  Class Members will be eligible for significant Real Property Damages Payments based on the square footage of their homes. Additionally, they are entitled to Other Loss Benefits to compensate them for alternative living expenses, personal property damage, property maintenance costs (including utility bills, insurance, property taxes and maintenance of landscaping), moving and storage expenses, losses resulting from lost use, sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries.  Those claims will be determined by a Special Master, with oversight from the Court.  Further, Class Members will not be responsible for any attorneys' fees or costs under the Settlements because those fees and costs will be paid from the Settlement Funds.

The four class settlements before the Court provide significant remediation benefits and other relief to hundreds of Class Members who, even if successful in Court, would have to wait for years before ever seeing a dime and who would have serious difficulties collecting any judgment from the foreign manufacturers.  The range of recovery of settlement benefits for Class Members certainly outweighs the risks of continued litigation and supports final approval of the class settlements.

6.    **The Opinions of Class Counsel and Class Representatives Support Approval of the Settlements**

The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed*, 703 F.2d at 175.  Thus, if experienced counsel determine that a settlement is in the best interests of the class, "the attorney's views must be accorded great weight."  *Pettway*, 576 F.2d at 1216; 4 NEWBERG ON CLASS ACTIONS § 11.47 (4th ed.) ("the recommendation of counsel is entitled to great weight following arm's-length settlement negotiations").

In this case, the Members of the PSC were appointed by the Court to represent the interests of the Plaintiffs in the MDL based on their high level of competency and many years of experience litigating complex class action and multidistrict cases.  These attorneys possessed adequate information concerning the strengths and weaknesses of the Litigation against the Settling Defendants after extensive document discovery, bellwether trials and briefing on relevant motions.  They support the settlements and believe they are in the best interest of the class.  Further, the Class representatives also support the class settlements, which counsels in favor of their approval.

The views of absent class members will be addressed in the reply brief, as the opt-out/objection period remains open until May 16, 2013.

* * *

Settlement Class Counsel respectfully submit that all of the above-cited circumstances support final approval of the Four Virginia-based Settlements. These agreements will produce Real Property Payments to provide benefits to Class Members with properties impacted by Chinese Drywall.  Additionally, Other Loss Funds for each Settlement will be established to provide compensation to Class Members for alternative living expenses, personal property

38

damage, property maintenance costs (including utility bills, insurance, property taxes and maintenance of landscaping), moving and storage expenses, losses resulting from lost use, sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries.  These four class settlements will provide significant relief to homeowners and tenants displaced and otherwise aggrieved by Chinese Drywall.

As the court in *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) aptly pointed out:

> *The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.*

*Id.,* citing and quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (internal quotations omitted).

### D.   The Requirements of Rule 23(a) and Rule 23(b)(3) Have Been Met For Certification of the Four Virginia-based Settlement Classes.

Certification of a class action is within the discretion of the district court.  *See James v. City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002); *Purdie v. ACE Cash Express, Inc.*, 2003 WL 22976611, *3 (N.D. Tex. Dec. 11, 2003).  In the case of a settlement-only class, the Court must find that the criteria set forth in Rule 23(a) and at least one of the subsections of Rule 23(b) have been met.  Further, "[i]f there is a need for subclasses, the judge must define them and appoint counsel to represent them." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632.  The Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 619-20.

In this case, all of the requirements for Rule 23(a) have been met. Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

As this Court has previously recognized,

> The first two requirements [of Rule 23(a)] focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed "to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests.

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008) (quoting *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Settlement Classes before the Court.

### 1.   Numerosity

As this Court has previously held, "[t]o demonstrate numerosity, the [Movants] must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006), quoting *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000). In this case, hundreds of Plaintiffs have filed suit against the Settling Defendants alleging damages sustained as a result of the Settling Defendants' involvement in the manufacture, importation, marketing,

sale, distribution and/or installation of Chinese Drywall.  Under these circumstances, the

numerosity factor specified in Rule 23(a)(1) is satisfied.   *Sullivan v. Chase Inv. Servs., Inc*., 79

F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members "clearly satisfies the

numerosity requirement"); *see William B. Rubenstein*, 1 NEWBERG ON CLASS ACTIONS §

3:12 (5th ed.) (where the class "number[s] in the hundreds, thousands, and even millions ... the

impracticability of bringing all class members before one court is obvious and the Rule 23(a)(1)

requirement is easily met.").

2. **Commonality**

As this Court has previously held, "[c]ommonality 'does not require that all questions

of law or fact raised in the litigation be common.  The test or standard ... is qualitative rather

than quantitative.'"  Order Granting Preliminary Approval to Global Settlement at 16 [Rec.

Doc. No. 14562], quoting Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 3:10 (4th

ed.); *see also In re FEMA Trailer*, 2008 WL 5423488, at *6.  Thus, "[t]he commonality

requirement is satisfied if at least one issue's resolution will affect all or a significant number

of class members."  *Vioxx*, 239 F.R.D. at 459,  citing *James*, 254 F.3d at 570.  The Rule

23(a)(2) commonality "requirement is easily met in most cases."  *Id.*

The commonality requirement of Rule 23(a)(2) is met in this case.  The Judicial Panel on

Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the

commonality of facts in the various cases."[117]  Questions surrounding the effects of Chinese

Drywall on Class Members and the damages caused by Chinese Drywall are issues common to

all Plaintiffs, satisfying this element of Rule 23(a).   *See Califano v. Yamasaki*, 442 U.S. 682, 701

(1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the

---

[117] *Hernandez* Findings of Fact, 2010 WL 1710434 at *1.

class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); 1 NEWBERG ON CLASS ACTIONS § 3:18 (5th ed.) ("the [commonality] requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and is thus easily met in most cases.").

### 3.    Typicality

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  1 NEWBERG ON CLASS ACTIONS § 3:13 (4th ed.), quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986).  In other words, courts must determine "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct."  *Id.* quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."  1 NEWBERG ON CLASS ACTIONS § 3:13 (4th ed.).

The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g., General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147,

156-57 (1982).  The typicality requirement has been liberally construed by the federal courts. *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Plaintiffs in this case is seeking compensation from the Settling Defendants for the costs of remediation of Chinese Drywall and other damages allegedly caused by Chinese Drywall.  "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."  1 NEWBERG ON CLASS ACTIONS § 3:13 (4th ed.).  The Class Representatives for the Four Virginia-based Settlements are Plaintiffs seeking to hold the Settling Defendants liable for damages resulting from Chinese Drywall installed in their Affected Properties.

### 4.   Adequacy of Representation

Rule 23(a)(4) requires that the named class representatives "not possess interests which are antagonistic to the interests of the class."  1 NEWBERG ON CLASS ACTIONS § 3:21 (4th ed.). Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.; Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted).  "The purpose of this requirement is to protect the legal rights of absent class members."  1 NEWBERG ON CLASS ACTIONS § 3:21 (4th ed.).

In this case, there is nothing to suggest that this requirement has not been met.  The named representatives are members of the Class they seek to represent, and they do not possess any interests antagonistic to the Class with respect to their claims against the Settling Defendants.  Moreover, Settlement Class Counsel are members of the PSC, which was appointed by this Court after an application process to represent all Plaintiffs in the MDL, based on the

attorneys' vast experience in class actions and multidistrict litigation.  Settlement Class Counsel and the PSC conducted the class negotiations with the Settling Defendants at arm's length, and will fairly and adequately represent the Class. *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

**5.**     **Questions of Law and Fact Predominate**

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  2 NEWBERG ON CLASS ACTIONS § 4:25 (4th ed.); *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").  "To predominate, common issues must form a significant part of individual cases." *Vioxx*, 239 F.R.D. at 460, citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999). In this case it makes eminent good sense to resolve the claims against the Settling Defendants in this forum through the class action device.  The issues of the Defendants' liability for the manufacture, importation, supply, distribution and/or installation of Chinese Drywall predominate over any individual issues involving the Plaintiffs.  The class settlements will insure that funds are available to remediate the Plaintiffs' Affected Properties and provide compensation for other losses.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication.  Factors the Court may consider include:

> (A)     the interest of members of the class in individually controlling the prosecution or defense of separate actions;

44

      (B)      the extent and nature of any litigation concerning the controversy already

              commenced by or against members of the class;

      (C)      the desirability or undesirability of concentrating the litigation of the

              claims in the particular forum; and

      (D)      the difficulties likely to be encountered in the management of a class

              action.[118]

FED. R. CIV. P. 23(b)(3)(A)-(D).  "Judicial economy factors and advantages over other methods

for handling the litigation as a practical matter underlie the predominance and superiority

requirements for class actions certified under Rule 23(b)(3)."  2 NEWBERG ON CLASS

ACTIONS § 4:24 (4th ed.).

      Given the various suits pending against the Settling Defendants in federal and state

courts, approval of the Four Virginia-based Settlements and resolution of all Chinese Drywall

claims against the Settling Defendants in this forum benefits all parties and satisfies the

requirements of Rule 23(b)(3).

      **E.**      **The Class Settlement Notices Complied with this Court's Orders and Due Process.**

      In conjunction with preliminary approval of the class settlements, this Court ordered that

notice be disseminated to the Settlement Classes.  The parties have complied with the Court's

orders.[119]  The PSC and Settlement Class Counsel worked diligently with the Settling Defendants

to provide individual notice by first-class mail to all known Class Members and their counsel.[120]

The PSC also requested that the class notices be posted on the District Court's Chinese Drywall

---

[118] As stated earlier, any difficulties of management of this Class need not be considered.  *Amchem*, 521 U.S. at 620.

[119] *See* Affidavits of Mailing and Declarations Regarding Implementation of Notice Publication (Exhibits 5 -7).

[120] *Id.*

MDL website, http://www.laed.uscourts.gov/drywall/Settlements.htm, on the websites of courts overseeing Related Litigation, on governmental websites, and at such other public places as directed by the Court.  Further, as described above, the Settlements were published in numerous periodicals, newspapers, magazines and/or on television, the Internet and social media.

The notices that have been disseminated and published to the various settlement classes comply with due process and support approval of the settlements and certification of the settlement classes.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).

IV.   **CONCLUSION**

Settlement Class Counsel respectfully request that this Court find that the Settlements are fair, reasonable and adequate and in the best interests of Class Members and that the Global Settlement Classes should be certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e). Additionally, Settlement Class Counsel request that this Court approve the Revised Proposed Allocation Plan attached hereto as Exhibit 3. Settlement Class Counsel further request that the Court enter the Order and Judgment attached to this memorandum of law as Exhibit 1.

Respectfully submitted,

Dated:  May 8, 2013

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN &KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892

46

Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*And Proposed Class Counsel*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Matthew C. Gaughan
LEVIN, FISHBEIN, SEDRAN &BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*And Proposed Class Counsel*

Richard Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com
*Proposed Class Counsel*

Richard S. Lewis (On the Brief)
Kristen M. Ward (On the Brief)
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, D.C. 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing MEMORANDUM OF LAW IN SUPPORT OF

THE MOTION OF SETTLEMENT CLASS COUNSEL FOR AN ORDER: (1) CERTIFYING

EACH OF FOUR CHINESE DRYWALL CLASS SETTLEMENTS (NATIONWIDE

INSUREDS SETTLEMENT AGREEMENT, PORTER-BLAINE/VENTURE SUPPLY

SETTLEMENT AGREEMENT, TOBIN TRADING AND INSTALLERS SETTLEMENT

AGREEMENT, AND BUILDERS MUTUAL INSUREDS SETTLEMENT AGREEMENT)

RELATING TO VIRGINIA AND CERTAIN OTHER REMAINING CLAIMS; (2)

GRANTING FINAL APPROVAL TO THE FOUR CHINESE DRYWALL CLASS

SETTLEMENTS; AND (3) APPROVING AN ALLOCATION PLAN FOR THE FOUR

CLASS SETTLEMENTS, and attached Exhibits have been served on Defendants' Liaison

Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to

LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing

in accordance with the procedures established in MDL 2047 on this 8th  day of May, 2013.

> /s/ Leonard A. Davis
> Leonard A. Davis, Esquire
> Herman, Herman & Katz, LLP
> 820 O'Keefe Avenue
> New Orleans, Louisiana 70113
> Phone: (504) 581-4892
> Fax: (504) 561-6024
> Ldavis@hhklawfirm.com
> *Plaintiffs' Liaison Counsel in MDL 2047*
> *Co-counsel for Plaintiffs*