# EXHIBIT 2

**REVISED PROPOSED ALLOCATION PLAN – FOUR VIRGINIA-BASED SETTLEMENTS**
**(Version May 8, 2013)**

> Deleted: April 5

1. **Eligibility**. To be eligible for an allocation of Settlement Funds, a Class Member must own, have owned, reside in, or have resided in an Affected Property containing defective Chinese drywall ("CDW"), and the Affected Property's builder, installer, supplier, distributor, developer, and/or other entity must have participated in one of the Four Settlements *Relating to Virginia and Certain Other Remaining Claims*.

2. **Settlement Amounts**. The Settlement Funds available for allocation and distribution shall be: $10,000,000 for the Nationwide Insureds Settlement ("Nationwide Fund"); $1,700,000 for the Builders Mutual Insureds Settlement ("Builders Mutual Fund"); $3,000,000 for the Porter-Blaine/Venture Settlement ("Porter-Blaine/Venture Fund"); and $2,700,000 for the Tobin Trading, Inc., Builders Plaster & Drywall, LLC, JMM Drywall Co. LLC, and Participating Insurers Settlement.[1] These funds shall be referred to collectively as the "Settlement Funds."

3. **Set Aside for Attorney's Fees and Costs**. The Parties recognize that the final determination of entitlement to attorneys' fees and costs, and the amount of any such award shall be made by Judge Eldon E. Fallon. Pending a determination of the entitlement to and amount of any awards of attorneys' fees and costs, the Parties agree to set aside a portion of the Settlement Amounts from each of the Settlement Funds to satisfy any such awards. Thirty-two percent (32%) of each of the Settlement Funds shall initially be set aside for an award of attorneys' fees ("Attorneys' Fees Set Aside").

   For all Affected Properties, the maximum allowable award of attorneys' fees from the Attorneys' Fees Set Aside shall be thirty-two percent (32%). No more than 15% of each Settlement Amount shall be allocated to common benefit fees and costs. All parties reserve their rights to object to or oppose any motions or petitions seeking an award of attorneys' fees, common benefit fees, and/or costs for any Affected Property.

   Following the submission of all claims forms, and motions or petitions seeking an award of fees and/or costs, along with any objections thereto, the Court will determine the appropriate amount of attorneys' fees and/or common benefit fees awarded for each Affected Property from the Attorneys' Fees Set Aside. At that time, the Court will also establish a procedure for the return of any "Applicable Overages," *i.e.,* the difference between the thirty-two percent set aside and the amount of attorneys' fees and/or common benefit fees awarded for each Affected Property.

   All costs of administering the allocation of the Settlement Funds and the cost of notice to Class Members will be paid out of the Settlement Amounts.

---

[1] The funds from the $2,700,000 Tobin Trading, Inc., Builders Plaster & Drywall, LLC, JMM Drywall Co. LLC, and Participating Insurers Settlement will be divided into two funds: $1,700,000 on behalf of installers ("Installers Fund") and $1,000,000 on behalf of Tobin Trading Inc. and Phillip Perry ("Tobin Trading Fund").

1

4. **Class Representatives' Enhancement Awards**. The Lead Plaintiffs in each of the Class Settlements, including the Germano intervenors, may receive an enhancement of up to $10,000.00 from their respective funds for serving as Class Representatives. Lead Plaintiffs devoted significant additional time and effort to secure these Settlements for all Claimants.

5. **Real Property Payments.** Eighty percent (80%) of the Funds Available for Distribution[2] in each of the Settlement Funds shall be set aside to compensate or reimburse Class Members for "Real Property Damages"[3] ("Real Property Payments"). Class Members shall be entitled to recover Real Property Payments from each Settlement in which their respective builders, installers, suppliers, distributors, developers, and/or other entities participated. Real Property Payments shall only be recoverable once per Affected Property, and shall be paid to the person or entity that retains the right to recover for such claims against the Participating Defendant(s). A buyer who purchased Affected Property after the seller disclosed the existence of CDW shall not be entitled to recover a Real Property Payment. Real Property Damages will be distributed to Class Members in proportion to the square footage of their Affected Properties, outlined herein at Section 8.

6. **Real Property Funds Qualifying Procedures**. In order to qualify for benefits of the Real Property Funds, a Class Member must submit:

    a. Physical proof, such as photographic evidence, sales or delivery records, inspection reports, or other proof satisfactory to the Special Master that the property has CDW. The Special Master shall be trained on the identification of CDW;
    b. Proof that CDW was installed, supplied, distributed, or otherwise within the legal responsibility of all Participating Defendants from whom the Class Member seeks to recover;
    c. Proof of corrosion or other evidence that the CDW was reactive;
    d. A floor plan of the Affected Property with dimensions;

---

[2] "Funds Available for Distribution" refers to the amount remaining in each Settlement Fund after attorneys' fees and costs, administration costs, and Class Representatives' Enhancement Awards.

[3] Class Members who may recover from the Real Property Funds include: (1) owners of Affected Property, for costs and expenses associated with remediation (including the removal of the CDW from the Affected Property and repairing or replacing affected building materials and fixtures in the Affected Property, the relocation of the property owners' belongings during the repair work, and, if necessary, obtaining comparable alternative living arrangements for the homeowners during the repair work); (2) sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer; and (3) former owners of Affected Properties who lost those properties in foreclosure but who continue to owe mortgage payments for amounts in excess of the auction value of their Affected Properties. A buyer who purchased an Affected Property after the seller disclosed the existence of CDW shall not be entitled to recover Real Property Damages.

2

  e. An owner affidavit which includes a certification that the evidence provided comprises all of the available documentation to demonstrate that the property contained or contains CDW;
  f. If the Affected Property has already been remediated, proof of actual remediation expenses, including clearance/environmental testing;
  g. If applicable, proof, such as pleadings or other court documents, that the Class Member filed his or her claims within the Applicable Statute of Limitations;[4]
  h. For former owners of Affected Properties who lost those properties through (a) sales at diminished value or (b) foreclosure, who continue to owe mortgage payments for amounts in excess of the auction value of those properties, any documents required under Section 7(a)(ii) and 7(a)(iii) as applicable;
  i. Any additional information as may be required by the claim form or Special Master; and
  j. Claims to the Special Master by a date to be established by the Court. Untimely submitted claims shall be rejected unless the Court extends the deadline for good cause shown.

7. **Other Loss Funds**. Twenty percent (20%) of the Funds Available for Distribution in each of the Settlement Funds shall be set aside to compensate or reimburse Class Members for Other Losses. Class Members shall be eligible to recover from the Other Loss Funds in each Settlement in which one or more of their respective builders, installers, suppliers, distributors, developers, and/or other entities participated.

   a. The Other Loss Funds will be used to provide the following benefits:

      i. **Pre-Remediation Alternative Living Expenses**. For Class Members, alternative living expenses arising from the need to vacate the Affected Property incurred prior to remediation as a result of property damage caused by CDW. Other Loss shall not include alternative living expenses during remediation, as that is reimbursed by the Real Property Fund.
         1. To obtain benefits under this Section, a Class Member must establish that the pre-remediation alternative living expenses were substantially caused by CDW.
         2. To obtain benefits under this Section, the Class Member must submit the following:
            a. Physical proof such as photographic evidence or inspection reports satisfactory to the Special Master that the Affected Property has CDW, proof of corrosion, or proof that the CDW was reactive prior to the Class Member vacating the Affected Property;
            b. Proof that CDW was installed, supplied, distributed, or otherwise within the legal responsibility of all Participating Defendants from whom the Class Member seeks to recover;

---

[4] The Applicable Statute of Limitations refers to the time within which a Class Member had to file and serve his or her claims arising from CDW under the laws of the state in which his or her Affected Property is located.

3

   c. All verified and authenticated documents regarding alternative living expenses, including, but not limited to, a lease and utility bills;
   d. To the extent applicable, all loan closing documents, including but not limited to, a HUD-1 Settlement Statement, recorded deed, note, payment letter and mortgage;
   e. To the extent applicable, all documents relating to monthly mortgage or lease payments, including but not limited to, cancelled checks, online bill payment confirmations and past due notices; and
   f. Affidavits from the Class Member in support of the claim with supporting documentation.

ii. **Foreclosures.** To the extent that recovery from the Real Property Funds is insufficient to compensate Class Members with Foreclosed Properties for Lost Equity, an amount to be determined by the Special Master for the remaining Lost Equity (but not lost anticipated market value) in the Foreclosed Property.
 1. To obtain benefits under this Section, a Class Member must establish that the foreclosure was substantially caused by CDW.
 2. A Class Member seeking benefits under this section must submit:
  a. Physical proof such as photography evidence or inspection reports satisfactory to the Special Master that the Affected Property has CDW, proof of corrosion prior to foreclosure, or proof that the CDW was reactive prior to foreclosure;
  b. Proof that CDW was installed, supplied, distributed, or otherwise within the legal responsibility of all Participating Defendants from whom the Class Member seeks to recover;
  c. Proof of purchase of the Affected Property;
  d. Purchase price and appraised value at purchase of the Affected Property;
  e. Sale price and tax assessed value at sale of the Affected Property;
  f. All loan documents, including but not limited to, the HUD-1 Settlement Statement, recorded deed, note, payment letter and mortgage;
  g. All documents regarding the foreclosure proceeding, including but not limited to, forbearance agreements, all court documents and correspondence between the Class Member and the bank;
  h. All documents relating to mortgage payments, including but not limited to, cancelled checks, online bill payment confirmations and past due notices;
  i. All documents regarding attempts to sell or rent the Affected Property; and

        j. Affidavits from the Class Member in support of the claim with supporting documentation.

iii. **Sales in Mitigation.** To the extent that recovery from the Real Property Funds is insufficient to compensate Class Members for Lost Equity who, due to the presence of CDW, sold Affected Properties in an attempt to mitigate their losses, an amount to be determined by the Special Master for the remaining Lost Equity in the sold property.
   1. To obtain benefits under this Section a Class Member must establish that the sale was substantially caused by CDW and was done in an attempt to mitigate losses.
   2. A Class Member who seeks benefits under this Section must submit the following:
      a. Physical proof such as photographic evidence or inspection reports satisfactory to the Special Master that the Affected Property has CDW, proof of corrosion prior to the sale, or proof that the CDW was reactive prior to sale;
      b. Proof that CDW was installed, supplied, distributed, or otherwise within the legal responsibility of all Participating Defendants from whom the Class Member seeks to recover;
      c. Proof of purchase of the Affected Property
      d. Closing documents, including but not limited to the sales price of the Affected Property, appraised value at purchase of the Affected Property, down payment on the purchase price and mortgage amount related to the purchase of the Affected Property;
      e. Sale price, appraised value at time of sale and tax assessed value at time of sale of the Affected Property;
      f. All loan documents, including but not limited to, the HUD-1 Settlement Statement, recorded deed, note, payment letter and mortgage;
      g. All documents relating to mortgage payments, including but not limited to, cancelled checks, online bill payment confirmations and past due notices;
      h. All documents regarding attempts to sell or rent the Affected Property; and
      i. Affidavits from the Class Member in support of the claim explaining that the sale was not related to factors other than attempting to mitigate losses with supporting documentation.

iv. **Tenant Losses.** For Tenants, an amount to be determined by the Special Master to compensate for moving expenses (if the Tenant is displaced by remediation) and personal property damage, such as to jewelry and Tenant-owned appliances, caused by CDW.

1. To obtain benefits under this Section, a tenant must establish that the personal property damage and moving expenses were substantially caused by Chinese Drywall.
2. A Tenant who seeks benefits under this Section must submit the following:
    a. Physical proof such as photographic evidence or inspection reports satisfactory to the Special Master that the Affected Property has CDW, proof of corrosion, or proof that the CDW was reactive;
    b. Proof that CDW was installed, supplied, distributed, or otherwise within the legal responsibility of all Participating Defendants from whom the Class Member seeks to recover;
    c. All verified and authenticated documents regarding moving expenses and personal property damage, including but not limited to, mover receipts and proof of purchase of personal property; and
    d. Affidavits from the Tenant in support of the claim with supporting documentation.

v. **Bodily Injury**. For Class Members, an amount to be determined by the Special Master to compensate for bodily injury. A Class Member seeking reimbursement from the Other Loss Funds for bodily injury caused by CDW must:
  1. Provide documentation by way of medical records and pharmacy records sufficient to establish: 1) medical treatment and care for the alleged injury and 2) that the alleged injury was caused by defective CDW.

vi. **Personal Property**. An amount to be determined by the Special Master to compensate for personal property damage, such as to jewelry and appliances, caused by CDW.
  1. To obtain benefits under this Section, a Class Member must establish that the personal property damage was substantially caused by Chinese Drywall.
  2. A Class Member who seeks benefits under this Section must submit the following:
     a. Physical proof such as photographic evidence or inspection reports satisfactory to the Special Master that the Affected Property has CDW, proof of corrosion, or proof that the CDW was reactive;
     b. Proof that CDW was installed, supplied, distributed, or otherwise within the legal responsibility of all Participating Defendants from whom the Class Member seeks to recover;
     c. Proof of the actual market value of the property that was damaged at the time of the loss (i.e. not the original purchase price);

       d. All verified and authenticated documents regarding personal property damage, including but not limited to, proof of purchase of personal property; and
       e. Affidavits from the Class Member in support of the claim with supporting documentation.

b. **Other Loss Exclusions**. Other Loss does not include damage or loss for stigma, injury to reputation, loss of enjoyment of home, psychological or emotional injury, medical monitoring, injury to reputation, credit rating loss, legal and accounting expenses, loss of investment opportunity and, any other loss or damage not covered herein.
    i. The Special Master and MDL Court may, in their discretion, consider and allow claims that are not explicitly provided for herein, so long as the claims are equitably justified and do not involve claims for the specifically enumerated Other Loss Exclusions. In considering any such additional claims, the Special Master and MDL Court may, in their discretion, adjust the amount of the claims so as to protect Other Loss funds for other Class Members.

8. **Affected Property Allocation and Recovery from Each Participating Fund.**

   a. **Claim Form Information**. In order to allocate the Real Property Payments from each Settlement Fund among the Class Members, the Special Master shall first compile claims information from the Class Members, by a date certain, to determine: (i) the total number of Affected Properties that are entitled to an allocation from the particular Settlement Fund (*i.e.*, for each affected home, the Special Master must determine whether the respective builder, installer, supplier, distributor, developer, and/or other entity participated in the particular Settlement); (ii) the total combined square footage under air of all such Affected Properties for each Settlement Fund ("Total Square Footage").

   b. **Determine Square Footage Allocation**. The Special Master shall then divide the total amount of the Real Property Payments for each Settlement Fund by the Total Square Footage for that fund to determine the amount per square foot to allocate to each Affected Property for each Settlement Fund. This shall be the "Square Footage Allocation" for each Settlement Fund.

   c. **Determine Claimants' Individual Distributions**. After the Square Footage Allocation for each Settlement Fund has been determined, the Special Master shall determine the allocated amount for each qualifying Affected Property by multiplying the number of square feet in the Affected Property by the Square

7

Footage Allocation to determine the "Net Payment for Affected Property" for the Real Property Damages Payment for that Affected Property.[5]

9. **Other Loss Funds Claims Procedures**. Each Class Member shall be entitled to receive his or her *pro rata* share of the Other Loss Fund for each Class of which he or she is a member, as determined by the following procedures:
    a. All Class Members shall submit their claims via the Proof of Claim Form and all documents required herein relating to any Other Loss claims by a date to be established by the Court. Untimely submitted claims shall be rejected unless the Court extends the deadline for good cause shown.
    b. Notwithstanding the required documents and/or information set forth herein, nothing shall prohibit the Special Master from requesting additional documents and/or information from individual claimants to the Other Loss Funds.
    c. The Special Master will evaluate all claims and may reject, accept in part, or accept in whole each claim submitted. In evaluating each Class Member's claim, the Special Master shall apply tort principles regarding causation and loss of the state where the Affected Property relating to that Class Member is located. As a result of this evaluation, the Special Master shall determine the amount of reimbursable Other Loss for each Approved Claim and the total for all Approved Claims. The Special Master may appoint accounting or other experts to assist in the evaluation of claims.
    d. If the total of Approved Claims for Other Loss Funds benefits is more than the amount deposited into the Other Loss Funds, each claim shall be *decreased pro rata* so that the distribution does not exceed the amount in the Funds less Administrative Expenses.
    e. The Special Master shall not distribute any funds from the Other Loss Funds until such time as the Special Master determines the amount of reimbursable Other Loss for each Approved Claim.
    f. If prior to the determination of the final amounts to be distributed from the Other Loss Funds, a Class Member who has an Approved Claim demonstrates unusual and compelling financial needs, the Class Member may petition the Special Master to make a partial payment.

10. **Statute of Limitations.** Class Members who failed to file and serve their Claims within the Applicable Statute of Limitations shall be entitled to partial recovery under the Settlements. Those Class Members who meet the other proof requirements may recover a proportional share of both the Real Property Funds and Other Loss Funds reduced by sixty percent (60%).

11. **Order of Allocation Among Five Settlement Funds.**
    a. Some, but not all, Claimants will be members of multiple Settlement Classes. In order to ensure availability of funds for members of each Settlement Class, the

**Deleted:** Many

---

[5] *De minimis* **CDW**. If an Affected Property only contains discrete and insular quantities of CDW (*i.e.*, if the CDW is only present in one room of the house), the Special Master shall have discretion to make appropriate adjustments to the damage award for that Affected Property.

8

Special Master shall consider claims for payments from the Funds in the following order:
  i. Nationwide Settlement Fund
  ii. Builders Mutual Settlement Fund
  iii. Installers Fund
  iv. Porter-Blaine/Venture Fund
  v. Tobin Trading Fund

b. Once the Special Master has made a determination regarding allocation from the Nationwide Settlement Fund, he will then consider eligible claims to the Builders Mutual Settlement Fund, the Installers Fund, the Porter-Blaine/Venture Fund, and finally, the Tobin Trading Fund. If the Special Master has allocated a payment to a Class Member from an earlier fund, that Class Member's claim for contribution from a later fund will be reduced by the amount allocated from the earlier Fund. For example, if a Class Member is a member of both the Nationwide Settlement Class and the Porter-Blaine/Venture Settlement Class, he is entitled to recover under both Settlements. The Special Master will first consider his claims from the Nationwide Settlement Fund and determine an appropriate allocation. Then, when the Special Master considers his claims from the Porter-Blaine/Venture Fund, the Special Master will consider the remaining value of his claim.

c. For a claimant who has already recovered from one of the Four Virginia-based Settlements and seeks recovery of a Real Property Payment from a subsequent Settlement (of which that claimant is a Class Member), the Special Master shall use a benchmark amount per square foot to assess the full value of a claimant's Real Property claim ("Full Real Property Value"). The Special Master will then subtract the Real Property Payment received from the earlier fund from the Full Real Property Value to arrive at the "Remaining Real Property Value." The Special Master will then create a fraction by dividing the Remaining Real Property Value by the Full Real Property Value ("Fraction of Square Footage"). The Special Master will then multiply the Fraction of Square Footage by the number of square feet under air in an Affected Property to arrive at the number of square feet that the Special Master will consider when making distributions from the subsequent fund ("Remaining Square Footage"). Below is an example to illustrate how this distribution will work:
  i. Tom has a 2,000 square foot Affected Property.
  ii. Tom recovers a $72,000 Real Property Payment from the Nationwide Settlement Fund.
  iii. Tom is also a Porter-Blaine/Venture Supply Class Member, and makes a claim for real property damage to the Porter-Blaine/Venture Supply Settlement Fund.
    1. The Special Master will multiply 2,000 square feet by a benchmark amount per square foot to arrive at the Full Real Property Value. For the purposes of this illustration, the benchmark will be $86.00.[6]
    2. 2,000 * $86.00 = $172,000 (Full Real Property Value)

---

[6] The Special Master shall have discretion to set a benchmark amount per square foot.

9

      iv. To calculate Tom's Remaining Real Property Value, the Special Master will then subtract the $72,000 Real Property Payment Tom received from the $172,000 Full Real Property Value to arrive at the Remaining Real Property Value.
          1. $172,000 - $72,000 = $100,000 (Remaining Real Property Value)
      v. The Special Master will then create a fraction by dividing the $100,000 Remaining Real Property Value by the $172,000 Full Real Property Value.
          1. ($100,000)/($172,000) ≈ .58 or 58/100 (Fraction of Square Footage)
      vi. To calculate Tom's Remaining Square Footage, the Special Master will then multiply the 58/100 Fraction of Square Footage by the 2,000 square feet under air in Tom's Affected Property.
          1. 2,000 * (58/100) = 1,160 (Remaining Square Footage)
      vii. Tom's claim to the Porter-Blaine/Venture Supply Settlement Fund will be based on the 1,160 Remaining Square Footage. The Special Master will multiply the Square Footage Allocation (in accordance with Section 8, above) by Tom's Remaining Square Footage to determine his Real Property Payment from the Porter-Blaine/Venture Supply Settlement Fund.

12. **Distribution of Unused Other Loss Funds**. Any funds from the Other Loss Fund for a particular Settlement Fund that are not used to compensate a Class Member for Other Losses shall be transferred to the Real Property Fund for that Settlement and distributed to Class Members in accordance with the procedures in Section 8 above.

13. **Bankruptcy**. Class Members who declared bankruptcy may be entitled to recover under this Settlement if they have retained their rights to recover for CDW damage. The Special Master and MDL Court may, in their discretion, consider and allow these claims, in accordance with applicable bankruptcy orders and Federal law.