# EXHIBIT 2

Judge Eldon Fallon
United State District court
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130


RE:     MDL No. 2047
        Chinese – Manufactured Drywall Products Liability Litigation

Class Members:      Richard D. Ilich
                    3107 Melrose Court
                    Suffolk, VA 23434
                    757-449-6439

                    Affected Property address:
                    4023 Appaloosa Court
                    Suffolk, VA 23434

Judge Fallon ,

On behalf of our family, we request that the court accept this as an objection to the Virginia Settlements including Builders Mutual, Nationwide, Porter-Blaine/Venture Supply and Tobin Trading/Builders Plaster & Drywall/JMM Drywall/Insurers.   This is an objection to the proposed settlement while we are not opting out at this point.


**Objections**:

1.  <u>Proposed Settlement Fund is insufficient</u> - The Virginia Settlement is not fair, reasonable or adequate considering the losses incurred by these families both for the destruction and ultimate loss of their home, the equipment repairs and losses over the years, the financial implications of maintaining two properties, loss of use and enjoyment and for many extreme medical expenses.

2.  I strongly object to Section 6h, <u>qualifying procedures</u> as it unjustly eliminates members with similar losses because it does not include bankruptcies. **Bankruptcy victims should not be excluded from the Real Property Payments funds.**  A bankruptcy, does not necessarily excuse you from the debt or obligations from the house.  Even though I filed for bankruptcy, as of today and the unforeseeable future I am still the legal owner of the house.  Further a victim who filed for bankruptcy, may still be required to make payments thru a trustee to the mortgage lender just as a foreclosed property owner may, they may still be responsible for insurance for the home, may still be responsible for upkeep or they could violate city laws (as I have

incidentally done), and other things as well.  The house obviously has diminished value.  The mortgage lender may not have accepted a short sale, Foreclosure or Deed-in-Lieu leaving the victim with no other alternative.  In my case maintaining two households with destroyed credit, in a slumping economy, high medical costs, other legal costs and no possible means to finance a remediation as the legal battle draws out was not possible for me or many of the victims.  The Real Property Payments should allow victims who declared bankruptcy.  During the course of ownership they too incurred Real Property Damages.  Many of the victims who foreclosed, short sale, or even still owning never remediated and possibly will never remediate even given a settlement.  A foreclosed or short sale victim is given preferential treatment over a bankruptcy victim who may have incurred the same if not more of the same costs.  The language in this document does not dictate that a non-remediated home must use the entitled funds to remediate.  They may very well be awarded a settlement far beyond what real property losses they incurred, while another victim (short sale, bankruptcy, or foreclose) is not compensated for their real property losses.  Furthermore, just because someone filed bankruptcy, they may still be the legal owner of the property and therefore subject to further losses.  **As a bankruptcy victim** whose mortgage lender will not file the paperwork to take the house from me, nor allow a short sale or foreclosure, **I still have the option to keep the house and given a settlement to compensate me for the losses**, I would strongly consider it.  Also, just allowing bankruptcy victims to claim under the "Other losses" provision excludes them to a great deal of money to which, they may have had just as valid real property losses as the other victims.  Lastly I believe it would be unfair that I be excluded from the Real Property Payments as the settlement from the defendants was in some part based on my home and losses.

3. <u>Allocation Plan</u> – Section 8b – The individual recovery for the Virginia families that have already lost their homes to short sale, bankruptcy, or foreclosure should not be based on a square footage calculation but on a calculation that involves down payment on the Chinese Drywall home.  The square footage calculation is unfair and unjust. Two homeowners purchased identical homes that were each 2000 square feet.  While one homeowner paid cash for their house the other put down $5000 upon purchase. Both of these homeowners were forced to let their homes go either by short sale, bankruptcy or foreclosure in order to mitigate their losses. The way this allocation plan is drafted both of these homeowners stand to receive the same amount in settlement.  If remediation was the goal this could possibly be a solution but we are no longer talking remediation for most Virginia homeowners, we are talking about recovery of lost funds.  **We feel this is unfair and this calculation should involve down payment upon purchase of the Chinese Drywall.**  Distribution of the settlement proceeds is arbitrary and capricious, resulting in unwarranted inequitable treatment of class members.  Lost down payments can only be recovered from 20% of

the potential money and for some victims, the lost down payment could very well be a greater cost than any remediation losses.

4. <u>Allocation Plan</u> – Section 7.a.i - The allocation plan allows for alternative living costs for a homeowner that remediated their home, at their own expense, but does not address this issue for the other Chinese Drywall families that incurred the same expenses.  The alternative living expense and or storage costs should be allowed for all families.

5. <u>Section 4.3</u> - Acceptance of the Tobin, Builders Mutual and Nationwide settlements pushes liability onto the homeowners.  While many will suggest that this would be a rare occurrence it STILL would mean that it is incumbent upon us to hire an attorney and pay out thousands of dollars (possibly even more then we stand to recover from this Virginia Settlement) in order to defend ourselves against this frivolous claim.  We request that this section be removed from all three of these settlements just as it is not part of the Venture/Porter Blain settlement.  These families do not deserve to have this hanging over their heads forever.

6. Attorney fees.  The simultaneous negotiation of class relief and attorney fees creates a potential conflict. Less then half of settlement actually goes to the plaintiffs/victims.

7. <u>Section 4.1.1</u> - If the defendants can calculate how much they are NOT liable for were a plaintiff to opt out of this settlement then we, **<u>the plaintiffs, deserve the same courtesy in knowing how much we will acquire from this settlement before we have to make a decision to opt in or opt out.</u>** "the payment of the Settlement Funds for the Affected Properties associated with any opt-outs shall be reduced pro-rata (Settlement Amount/number of claimants + the number of opt-outs), and these amounts will be credited against the settlement Amount due from affected Participating Insurers".  If this is the case then how can they decide on the dollar amount for those that have chosen to opt out and not be able to tell those who are opting in what will be their settlement amount?  If a dollar amount CAN be calculated for the defendants then why can a settlement amount NOT be calculated for the plaintiffs before they must decide to opt in or out of settlement?  This does not seem "FAIR".

8. <u>Section 4.2 (Tobin)</u> - Class provides no indication, not even in a general range, as to what the individual recovery for Class Members will be.  That in itself is enough of an argument but is more enforced in Section 4.2 of Tobin document as they are able to provide a formula as to how much the insurers payment will be reduced by is a plaintiff were to opt out of the settlement.

9. <u>Section 10.1.3 -</u> "The objection must be signed by the Class Member and his, her or its counsel; an objection signed by counsel alone shall not be

sufficient."  Can an objection be filed by a plaintiff without counsel's signature?  This statement says that an attorney is necessary in order to file an objection.  Our attorney has been certified as class counsel and cannot object on behalf of any of the Virginia homeowners. Does the court put more weight to an objection that is filed by an attorney who would be able to site other cases in support of the objections?

10. I disagree with the Virginia Settlement when it states that the defendants "have not committed any violation of law".  The discoveries from Sam Porter, Venture Supply, show that he told the Chinese manufacturer not to worry that the drywall did not meet United States ASTM standards. This same product that did not meet federal standards was imported into our country, destroyed tens of thousands of American homes, sent these same families into financial ruin, created seen and unforeseen health complications for all that lived in these homes and greatly impacted the American housing market and mortgage system.

11. Not understanding the long term health implications before the close of this settlement, as we await a health study by the government, is a frightening concept for most families to accept.  Future issues may arrive, similar to asbestos, where we might not know for years and yet we are being asked to sign all of our health rights away. We will have to bear all of these health costs after an already insufficient settlement. We already have homeowners with kidney, liver, neurological and autoimmune ramifications from having lived in these toxic homes for years.   A fund should be established for past and future health costs.

I intend to appear and speak at the fairness hearing on May 21, 2013 in Judge Hall's court in Norfolk, VA.

Richard D. Ilich