# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:**<br><br>*Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al*<br>Case No. 11-cv-080 (E.D. La.)<br><br>*Almeroth, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al*<br>Case No. 12-cv-0498 (E.D. La.)<br><br>*Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D. La.)<br><br>*Germano et al. v. Taishan Gypsum Co., Ltd. et al.*<br>Case No. 2:09-cv-06687 (E.D. La.)<br><br>*Gross, et al. v. Knauf Gips, KG, et al*<br>Case No. 09-cv-6690 (E.D. La.)<br><br>*Haya, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd, et al*<br>Case No. 11-cv-1077 (E.D. La.)<br><br>*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al*<br>Case No. 10-cv-361 (E.D. La.) | **JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

## THE NATIONWIDE DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF APPROVAL OF THE NATIONWIDE VIRGINIA CLASS SETTLEMENT

Defendants Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company and Nationwide Property and Casualty Insurance Company (collectively, "Nationwide") hereby reply in support of Settlement Class Counsel's pending motions for settlement class certification and for approval of the Virginia "Settlement Agreement in MDL No. 2047 Regarding Chinese Drywall Claims Against Non-Manufacturing Defendants Insured

by Nationwide" ("Nationwide Virginia Settlement," "NVS," or "Nationwide Settlement") (Rec. Doc. 15969-5).

As set forth in Settlement Class Counsel's Memorandum of Law in Support of approval (Rec. Doc. 16800-4) and Settlement Class Counsel's Reply Memorandum of Law in Further Support (to be filed May 20, 2013), the Nationwide Virginia Settlement is a fair, adequate and reasonable resolution of contentious, vigorously-litigated claims. The Nationwide Settlement was achieved after years of costly litigation and months of robust, arm's-length negotiations. If approved, the Nationwide Settlement will provide meaningful cash relief to class members who in the absence of a settlement will otherwise face years of further litigation in an effort to prove uncertain liability claims against defendants who generally have little or no ability to satisfy judgments—either directly or through insurance.

For the reasons set forth in Settlement Class Counsel's Reply Memorandum and for the additional reasons set forth below, the objections received from (1) Tuan and Colleen Nguyen ("Nguyen Objection"); (2) Richard Ilich ("Ilich Objection"); (3) Candi Roberts (f/k/a Candi Darst) ("Roberts/Darst Objection") and (4) Thomas and Jill Roskowski ("Roskowski Objection") (Rec. Docs. 16817-1 to -4) lack merit and provide no basis to disapprove a settlement that will provide real recovery for hundreds of affected class members. Accordingly, the Nationwide Virginia Settlement should be approved.

## FACTUAL BACKGROUND

### A.   The Nationwide Virginia Settlement.

At $10 million, the Nationwide Virginia Settlement supplies the lion's share of the funds supporting the four Virginia settlements being presented to the Court. *See* NVS, ¶4.1. The exact number of homes and potential claimants is unknown and cannot be known unless the settlement

is approved and the claim process moves forward. However, based on its claim files, Nationwide anticipates there may be claims with respect to approximately 150 properties involving the settling Nationwide Participating Defendants.[1] Affidavit of Julie Sjullie-Drmolka Aff., ¶ 2 (May 20, 2013) (filed herewith) ("Sjullie Aff.").

In return for Nationwide's payment of $10,000,000, class members will release claims against Nationwide and, to the extent of Nationwide insurance, against more than two dozen small Virginia businesses—drywall installers, finishers, builders, contractors, developers and a realtor (the Nationwide Participating Defendants)—who are themselves victims of the Chinese Drywall nightmare. *See* Sjullie Aff., ¶ 3.

The Nationwide Settlement provides substantial compensation to affected class members. For example, assuming approximately 150 affected properties, the Nationwide settlement alone equates loosely to $66,667 per property. Of course, the precise amount that may be awarded to each successful claimant depends on the number of successful claims and the allocation methodology and attorneys fees ultimately approved by this Court. However, as this rough calculation demonstrates, payment under the Nationwide Virginia Settlement may alone go a considerable distance to "making" class members "whole" from the perspective of potentially recoverable damages.

By way of example, one of the settling Nationwide insureds is The Overlook, LLC, which developed a townhouse complex in Richmond, Virginia. The Overlook has remediated a dozen townhouses affected by Chinese Drywall, and in separate litigation with Nationwide,

---

[1]   Because most or all of the properties affect multiple individuals, the number of class members is in the hundreds.

   Where not otherwise defined in this Reply Memorandum, capitalized terms refer to and have the same meaning as capitalized terms in the Nationwide Virginia Settlement agreement.

Overlook provided Rule 26 discovery disclosures setting forth costs incurred with respect to each remediated property. *See* Affidavit of Catherine M. Colinvaux, ¶ 12 and Tab A (May 20, 2013) (filed herewith) ("Colinvaux Aff."). Only one of the twelve remediated properties involved "Repair Costs" greater than $66,000, with the range of remediation costs being from $36,985.43 to $76,513.81. *Id.*

As substantial as it is, the Nationwide Virginia Settlement is not the class members' only potential source of recovery. The Nationwide Virginia Settlement class members also have claims against Taishan,[2] the manufacturer of the defective drywall at issue, and typically against multiple other parties in the chain of supply. *See, e.g.,* Colinvaux Aff., ¶ 13 and Tabs B-E. The Nationwide Virginia Settlement does not release claims against non-Nationwide-related parties, and accordingly class members retain their ability to recover against other drywall installers, finishers, builders, contractors, developers and realtors who are not Nationwide insureds. *See* NVS, ¶¶ 5.5.1, 5.5.3. Indeed, as additional consideration under the Nationwide Virginia Settlement, Nationwide and the Nationwide Participating Defendants assign to the class members all of their rights, including subrogation rights, to proceed against Taishan and other non-participating parties. NVS, ¶ 6.1.[3]

Finally, as additional sources of recovery, the Nationwide Virginia Settlement class members are all also members of other class settlements proposed for final approval at the same time as the Nationwide Virginia Settlement. To the extent that the Nationwide Virginia

---

[2] Claims against Taishan and related companies are asserted through *Wiltz, et al. v. Beijing New Buildings Materials Public Limited Co., et al.*, Case No 10361 (Omni II) (Rec. Doc. 1747) ("*Wiltz*").

[3] The assignment provision does not apply to two settling defendants—The Overlook and CG Stony Point. NVS, ¶6.1.1. These two defendants are remediating builders which had previously entered into written agreements with certain affected property owners. No one has objected to this exception.

4

Settlement class members are not made whole by the Nationwide Settlement, the other settlements collectively provide an additional $7.4 million in settlement funds. *See, e.g.,* Revised Proposed Allocation Plan — Four Virginia Settlements, ¶ 11 (Rec. Doc. 16800-6) ("Proposed Allocation Plan").

Testifying to the value provided by the Nationwide Virginia Settlement, not a single class member has opted out. Colinvaux Aff., ¶10. Indeed, of the more than 200 properties thought to be involved in the combined settlements, only 4 objections have been received, representing fewer than 2% of affected properties. *Id.,* ¶11.

B. **Negotiations for the Nationwide Settlement.**

The Nationwide settlement was negotiated for more than six months, including an initial full-day settlement meeting in Virginia (assisted by a mediator appointed by this Court) in March 2012 and subsequent in-person negotiating sessions in Washington, D.C. and Philadelphia during May and June 2012. *Id.*, ¶3. The parties reached an agreement in principle—including the settlement amount—in June 2012, but negotiations over the full terms continued for four more months. *Id.* More than six lawyers representing the plaintiffs participated in different aspects of the negotiations in addition to counsel for Nationwide and senior Nationwide representatives and later, at least six additional lawyers representing different Nationwide insureds. *Id.,* ¶4. The negotiations were professional, but robust, with each side advocating its positions vigorously. *Id.,* ¶5. At no time were attorneys fees ever a subject of negotiations, except that, after the other key terms had been agreed, Nationwide and the Nationwide Participating Defendants agreed not to object to fee requests within a certain range and not to appeal this Court's determination of fees. *Id.,* ¶6; *see also* NVS, ¶17.8.

5

C.     **The Objectors.**

The deadline for objections to the settlement was May 16, 2013 (Rec. Doc. 16743). On May 16 and May 17, 2013, Nationwide became aware of four essentially identical objections. Colinvaux Aff., ¶11. The objections were filed by Richard Ilich, Tuan and Colleen Nguyen, Candi Roberts (f/k/a Candi Darst) and Tom and Jill Roskowski (Rec. Docs. 16817-1 to -4).

The **Ilich Objector**'s claims relate to a Virginia house allegedly developed, built and sold to the objector by Residential Concepts, Ltd., a Nationwide Participating Defendant. *See* Colinvaux Aff., Tab B at ¶ 1. Objector Ilich is a plaintiff in a Virginia state court action, *id.*, and in *Wiltz*.[4] *See* Rec. Doc., ¶ 1747. In the state court action, Ilich makes claims against Residential Concepts, Ltd., as the "Builder/Developer Defendant," as well as against four other defendants, including one defendant that is not a party to any of the proposed Virginia settlements. Colinvaux Aff., Tab B at ¶¶ 1-2. Ilich's claims all flow from "[t]he drywall, used in the Plaintiffs' family home, [which] is defective and emits various compounds that create noxious odors." *Id.,* Tab B at ¶12. Through the *Wiltz* complaint, currently before this Court as part of MDL No. 2047, Ilich makes similar claims against Taishan. *See* Rec. Doc., ¶ 1747. All of the potentially applicable insurance policies that Nationwide issued to Residential Concepts include a pollution exclusion substantially similar to the Nationwide pollution exclusions at issue in *Nationwide Mut. Ins. Co. v. The Overlook, LLC,* 785 F. Supp. 2d 502 (E.D. Va. 2011) ("*Overlook*").[5] Sjullie Aff., ¶5. Based on this pollution exclusion and other significant coverage

---

[4]     On information and belief, Ilich is an unnamed class member in *Wiltz*.

[5]     The Nationwide insurance policies at issue in *Overlook* included various forms of a pollution exclusion applying to "'bodily injury'" or "'property damage'" "'arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"" *Overlook*, 785 F. Supp. 2d at 508. The Nationwide pollution exclusions define "'pollutants'" to mean "'any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.'" *Id.* at 507.

defenses, Nationwide has reserved its right to deny coverage with respect to the Ilich claims against Residential Concepts. *Id.,* ¶5.

The facts concerning the **Roskowski** and **Roberts/Darst** Objectors are similar to the Ilich facts. Both the Roskowskis and Roberts filed Virginia state court complaints against Nationwide "Builder/Developer" Participating Defendants (Area Builders of Tidewater in the Roskowskis' case; and Atlantic Homes, LLC/HHJV, LLC[6] in Roberts' case), and both filed claims against Taishan through the *Wiltz* complaint. *See* Colinvaux Aff.*,* Tab C at ¶ 1 and Tab D at ¶ 1; Rec. Docs. 1747, 6567. Like objector Ilich's state court lawsuit, the Roskowski and Darst complaints allege injury due to defective drywall which "emits various compounds that create noxious odors," Colinvaux Aff., Tab C at ¶ 10; *see also id.*, Tab D at ¶ 18 ("the drywall, used in the Plaintiffs' family home, is inherently defective because it emits various sulfide gases and/or other toxic chemicals through 'off-gassing"), and like Ilich, the Roskowskis and Roberts complaints name additional defendants. *Id.,* Tab C at ¶ 2 and Tab D at ¶¶ 2-3. The Virginia Roskowski complaint includes three additional defendants which are parties to other proposed settlements pending before this Court. *Id.,* Tab C at ¶ 2. The Darst complaint names eight additional defendants, three of which are parties to other proposed settlements. *Id.,* Tab D at ¶¶ 2-3. As with Ilich, the Nationwide policies at issue contain pollution exclusions, and Nationwide has cited these pollution exclusions and other coverage defenses in reserving its right to deny coverage for the Roskowski claims against Area Builders of Tidewater and the Roberts-Darst claims against Atlantic Homes/HHJV. Sjullie Aff., ¶5.

Finally, the Nguyen Objectors make similar claims against Nationwide insured Robert Scott Hodgson, and the Nationwide Hodgson policies similarly include pollution exclusions like

---

[6] Atlantic Homes, LLC and HHJV, LLC are related companies that are both named insureds under the same Nationwide insurance program.

7

those at issue in *Nationwide Mut. Ins. Co. v. The Overlook, LLC*. *Id.*, ¶5; *see also* Colinvaux Aff., Tab E at ¶¶ 1, 2-3, 7. In addition, the Nguyens allege that their affected property was built in 2006 and occupied in 2007. Colinvaux Aff., Tab E at ¶10. The last Nationwide insurance policy issued to Hodgson expired on October 28, 2005, Sjullie Aff., ¶6, before the Chinese Drywall at issue was negotiated, contracted for or imported into the United States. *See* Findings of Fact and Conclusions of Law, *In Re: Chinese Manufactured Drywall Prods. Liab. Litig.,* at 8 (MDL No. 2047) (filed Apr. 8, 2010). Nationwide denied coverage for the Hodgson claims in 2010, and Hodgson has not contested this coverage denial. Sjullie Aff. ¶6.

## ARGUMENT

Whether taken individually or collectively, the Nguyen, Ilich, Roberts/Darst and Roskowski Objections provide no basis to deny the pending motions for certification of a settlement class and approval of the Nationwide Virginia Settlement. Because Settlement Class Counsel's Reply Memorandum substantially and accurately responds to the objections, Nationwide addresses below only a few specific points.

**I.    The Objections Provide No Sound Basis to Reject the Nationwide Virginia Settlement.**

    **A.    The Compensation Provided By the Nationwide Virginia Settlement Is Fair, Reasonable and Adequate.**

The first paragraph of each objection alludes to the variety of plaintiffs' alleged losses and argues that, "considering" these "losses," the settlement amount is not "fair, reasonable or adequate." However, the extent of the class members' alleged losses does not provide the principal yardstick for measuring the fairness, reasonableness and adequacy of a settlement. To the contrary, the Fifth Circuit has set forth six "focal facets" which the Court must consider in evaluating the fairness and adequacy of a class settlement. *See, e.g., Reed v. General Motors Corp.*, 703 F.2d 170, 172 (1983). These "focal facets" take into account the practical realities of

8

litigation. Rather than concentrate on the plaintiffs' alleged losses, they consider "the probability of plaintiffs' success on the merits," "the range of possible recovery," and "the opinions of the class counsel, class representatives, and the absent class members."[7] *Id.* In the case of the Nationwide Virginia Settlement, these practical focal facets support approval of the settlement.

In this case, no matter the extent of the plaintiffs' losses, the unfortunate reality for the class members is that the plaintiffs do not have a strong chance of recovery if the Nationwide Virginia Settlement is not approved. *See Turner v. Murphy Oil Co.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (noting that, "[w]hen evaluating a proposed settlement, the Court must compare its terms with the rewards the class would likely receive following a trial and judgment in its favor"). In addition to genuine uncertainty concerning the plaintiffs' ability to prevail against the Nationwide Participating Defendants, *see, e.g.,* Mem. of Law of Stlmt. Class Counsel in Sup. of the Mtn. of Stlmt. Class Counsel for an Order (Rec. Doc. 16800-4) at 35-36, it is a fact, recognized by Settlement Class Counsel, *id.*, that if any of the plaintiffs do prevail, the prospects for recovering a judgment against the Nationwide Participating Defendants are dim.

Settlement Class Counsel note the prospect for bankruptcy filing by the various Nationwide Participating Defendants in the event of a judgment, *e.g., id*. at 36, and Nationwide knows of no reason to doubt the likelihood of such a scenario. In such cases, plaintiffs typically look to the defendants' insurance. Here, however, the Virginia courts have repeatedly and definitively rejected insurance coverage claims in the Chinese Drywall context.

---

[7] The six focal factors also include factors which are not directly relevant to the Objections and which Nationwide believes have been fully and accurately discussed by Settlement Class Counsel. Accordingly, Nationwide does not address them separately here.

The "pollution exclusion" provides an excellent—but by no means the only—example.[8] In 2010 and 2011, federal district judges in Virginia issued a series of opinions upholding application of insurance policy pollution exclusions, including Nationwide pollution exclusions, in the Chinese Drywall context. *See, e.g., Nationwide Mut. Ins. Co. v. Overlook, LLC,* 785 F. Supp. 2d 502, *passim* (E.D. Va. 2011), *appeal pending* (stayed pending approval or disapproval of this settlement); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), *aff'd* 2013 WL 150267 (4th Cir. Jan. 15, 2013); *Evanston Ins. Co. v. Harborwalk Dev., LLC*, 814 F. Supp. 2d 635 (E.D. Va. 2011), *aff'd sub. nom. Evanston Ins. Co. v. Germano*, 2013 WL 1141843 (4th Cir. Mar. 20, 2013). These district court decisions—and Nationwide's and other insurers' arguments—relied heavily on the Virginia Supreme Court's prior decision in *City of Chesapeake v. States Self-Insurers Risk Retention Group*, 271 Va. 574, 628 S.E.2d 539 (2006). *See, e.g., Overlook*, 785 F. Supp. 2d at 521-25, 528. But during this period, at least one district judge expressed some uncertainty whether the Virginia Supreme Court would ultimately apply the *City of Chesapeake* ruling in the Chinese Drywall context. *See id.* at 511 (noting the court's unsuccessful April 2011 request to the Virginia Supreme Court to accept certification of questions concerning application of the pollution exclusion in the Chinese Drywall context).

Appeals to the Fourth Circuit followed many of these district court decisions. The *Travco v. Ward* case was the first to reach oral argument, and on March 1, 2012, the Fourth Circuit certified to the Virginia Supreme Court a question concerning whether damage resulting from

---

[8] Nationwide relies on numerous policy defenses to coverage with respect to claims against the Nationwide Participating Defendants. As one example, the Nyugen Objectors' claims post-date the last Nationwide insurance policy at issue. Other broad-reaching exclusions also apply, S*ee, e.g., Dragas Mngmt. Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 758, 762-63 (E.D. Va. 2011) (finding that costs of repairing defective Chinese Drywall are not an "occurrence" within the meaning of liability insurance policies), but mostly have not yet been litigated because of the predominant importance of the Nationwide and other pollution exclusions.

defective Chinese Drywall resulted from "pollutants" within the meaning of insurance policy pollution exclusions. *See Travco Ins. Co. v. Ward*, 468 Fed. Appx. 195, 195-96. In support of certification, the Fourth Circuit noted that the "questions presented are pure questions of state law which have not been squarely addressed by the Supreme Court of Virginia." *Id.* at 201. "In addition," the Fourth Circuit "recognized the importance of allowing the Supreme Court of Virginia to decide questions of state law and policy with such far-reaching impact." *Id.*

On April 19, 2012, the Virginia Supreme Court accepted the certified question, and *Overlook* and other Fourth Circuit appeals were stayed pending the Virginia Supreme Court's response to the certified question. *See* Colinvaux Aff., ¶9. Ultimately, the Virginia Supreme Court sided with the insurers, affirming its prior rulings and now making them explicitly applicable in the Chinese Drywall context: "The sulfuric gases at issue in this case were a pollutant within the purview of the exclusion, and we hold that the pollution exclusion is applicable and unambiguously excludes from coverage any damage resulting from the emission of gas from the drywall". *Travco Ins. Co. v. Ward*, 284 Va. 547, 562 (2012).

The Virginia Supreme Court's decision was issued on November 1, 2012, *id.* at 547, just days ***after*** the Nationwide Virginia Settlement was tendered to this Court for preliminary approval. *See* Rec. Doc. 15969. As the time line makes clear, Nationwide, the Nationwide Participating Defendants, and Settlement Class Counsel negotiated and finalized the Nationwide Virginia Settlement during the interval of uncertainty on the application of the pollution exclusion. *See also,* Colinvaux Aff., ¶¶3, 7-9.

Since the Virginia Supreme Court's November 1, 2012 ruling, it is beyond dispute that pollution exclusions, such as the Nationwide pollution exclusions, apply to bar coverage for

11

Chinese Drywall claims. As a result, it is clear that the class members have little to no chance of recovering if the Nationwide Virginia Settlement is not approved.

Despite these strong defenses, as set forth above, the Nationwide Virginia Settlement provides substantial cash recovery which alone may suffice to make many class members whole. In this context, it is clear that the objectors' claims are not well founded. To the contrary, the absence of any opt-outs is powerful evidence that the class members themselves consider the settlement fair, reasonable and adequate in light of all of the circumstances. *See Turner v. Murphy Oil Co.,* 472 F. Supp. 2d at 852-53 (noting that high settlement participation and a low number of opt-outs merits "heavy emphasis" as a reflection of "[t]he attitude of absent class members" and citing *In re Microstrategy, Inc. Sec. Litig.* 150 F. Supp. 2d 896 (E.D. Va. 2001) for the proposition that "class reaction is perhaps the most significant factor in determining whether a settlement is adequate").

      **B**.    **The Objections Concerning Allocation Methodology Are Independent Of and Not Relevant to Approval of the Settlement and Certification of the Settlement Class.**

A plurality of the objections raised by each of the Objectors relate to the Proposed Allocation Plan filed on May 8, 2013. *See* Ilich Objection, ¶¶2-4 and ¶11; Nguyen, Roberts/Darst and Roskowski Objections, ¶¶ 2-4 and ¶ 11. Nationwide takes no position on the merits of these objections because, under the express terms of the Nationwide Virginia Settlement, Nationwide and the Nationwide Participating Defendants "shall not be involved in the claim process and allocation of benefits to the Class." NVS, ¶ 17.2. However, it is clear under the Nationwide Virginia Agreement that objections to the Proposed Allocation Plan cannot prevent approval of the Nationwide Virginia Settlement.

12

The Proposed Allocation Plan is not, itself, a part of the Settlement. The Nationwide Virginia Settlement describes a _process_ for determining the allocation, _but it does not prescribe any particular allocation._

More specifically, the Nationwide Virginia Settlement provides that: "The Court shall establish a procedure for allocation of the Settlement Funds." NVS, ¶ 17.1. The procedure is to involve an "Allocation Committee," including "representatives appointed by the Court" who are to recommend appointment of a "Special Master" and who are directed to:

> . . . make recommendations to the Court as to: (i) a fair and equitable plan of allocation of the Settlement Funds; and (ii) the evidence that Class Members will need to provide as part of their Proof of Claim to submit a valid claim, including proof of reactive Chinese Drywall.

_Id._

To the extent that class members object to aspects of a Proposed Allocation Plan, as these Objectors do, the Nationwide Virginia Settlement provides that the "Court shall entertain interventions for the purpose of determining the allocation." _Id._ Such objections "may be appealed solely to the Court," and this Court's decision on the allocation "shall be final." _Id._ Further, the Nationwide Virginia Settlement expressly provides that "any disputes as to the allocation of payments among Class Members pursuant to the allocation procedure referenced in Section 17.1 will not defeat this Settlement." NVS, ¶ 17.5.

Here, the Objectors do not object to the process for determining the allocation. Employing the express terms of the Nationwide Virginia Settlement, the Court can and should consider whether or not the objections to the Proposed Allocation Plan require adjustment in a final Allocation Plan. But the Court's decision on the allocation plan is final, unappealable, and cannot defeat this Settlement.

Accordingly, the objections set forth in paragraphs 2-4 and 11 to the Ilich Objection and paragraphs 2-3 and 10 to the Nguyen, Roberts/Darst, and Roskowski Objections provide no basis for disapproval of the settlement.

### C. The Remaining Objections Similarly Provide No Barrier to Approval of the Nationwide Virginia Settlement.

In their Reply Memorandum (filed May 20, 2013), Settlement Class Counsel address the remaining objections and set forth additional arguments in opposition to all of the objections. Nationwide relies on these arguments for further support.

In addition, Nationwide notes that the following objections do not apply to the Nationwide Virginia Settlement, and therefore, provide no basis for disapproving the Nationwide Virginia Settlement: Ilich Objection, ¶ 8 and Nguyen, Roberts/Darst and Roskowski Objections, ¶ 7 (applying to the proposed Tobin Trading settlement); and Ilich Objection, ¶ 10 and Nguyen, Roberts/Darst Objection, and Roskowski Objections, ¶ 9 (applying to Porter Blaine/Venture Supply settlement).

### II. To the Extent Additional Opposition Arguments Arise or the Court Seeks Additional Support to Approve the Settlement, Nationwide Should Be Provided an Opportunity to Supplement the Record.

Nationwide first received the Nguyen and Ilich objections on Thursday, May 16, 2013, and the Roskowski and Roberts/Darst Objections on Friday, May 17, 2013. Colinvaux Aff., ¶11. In light of the scheduling of the Final Fairness Hearing on Tuesday, May 21, 2013, and Nationwide's desire to file this response to the Objections in advance of the hearing, the time for Nationwide to review and consider the Objections and to present arguments and evidence in response was truncated. To the extent that it appears as a result of the Final Fairness Hearing that additional responsive material would be helpful to the Court, Nationwide requests leave to file appropriate supplemental materials post-hearing.

## CONCLUSION

For all of the foregoing reasons, Nationwide joins Settlement Class Counsel in seeking an Order (1) certifying the Nationwide Virginia Settlement and (2) granting final approval to the Nationwide Virginia Settlement.

NATIONWIDE MUTUAL INSURANCE COMPANY

    */s/ Catherine M. Colinvaux*
Catherine M. Colinvaux (Mass. Bar No. 557935)
Seth V. Jackson (Mass. Bar No. 658669)
Zelle Hofmann Voelbel & Mason LLP
950 Winter Street, Suite 1300
Waltham, MA 02450
Telephone: (781) 466-0700
Fax: (781) 466-0701
ccolinvaux@zelle.com
sjackson@zelle.com

Dated: May 20, 2013

**CERTIFICATE OF SERVICE**

   I hereby certify that the above and foregoing *THE NATIONWIDE DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF APPROVAL OF THE NATIONWIDE VIRGINIA CLASS SETTLEMENT* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery, on Objector, Richard Ilich, by U.S. Mail, postage prepaid, at 3107 Melrose Court, Suffolk, VA 23434, on Objectors Tuan and Colleen Nguyen, by U.S. Mail, postage prepaid, at 4409 Sheffield Drive, Virginia Beach, VA 23455, on Objector, Candi Roberts, by U.S. Mail, postage prepaid, at 21990 Landmark Lane, Waynesville, MO 65583, on Objectors Thomas and Jillann Roskowski, by U.S. Mail, postage prepaid, 701 Blackthorne Drive, Chesapeake, VA 23322, and by e-mail upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 20th day of May, 2013.

                */s/ Catherine M. Colinvaux*
                Catherine M. Colinvaux (Mass. Bar No. 557935)