*TAB C*

VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

TUAN NGUYEN and
COLLEEN NGUYEN,

      Plaintiffs,

      v.                              Case No. CL-09003105-00

VENTURE SUPPLY, INC.
and
TOBIN TRADING, INC.
and
THE PORTER-BLAINE CORP.
and
CURB APPEAL HOME BUILDERS, INC.
and
ABSOLUTE DRYWALL & TEXTURING, INC.
      SERVE:     Carl W. Rowe, Registered Agent
                   1240 Swallow Drive
                   Virginia Beach, VA 23453
and
SCOTT HODGSON
      SERVE:     3840 Foxglove Court
                   Virginia Beach, VA 23453
and
LORENZO I. GARCIA
      SERVE:     718 Garfield Avenue
                   Virginia Beach, VA 23452
and
JOHN RANDALL
      SERVE:     517 Piney Branch Drive, #210
                   Virginia Beach, VA 23451
and
CARL ROWE
      SERVE:     1240 Swallow Drive
                   Virginia Beach, VA 23453

      Defendants.

## SECOND AMENDED COMPLAINT

NOW COME Tuan Nguyen and Colleen Nguyen (the "Nguyens"), by counsel, who file their

1

Second Amended Complaint against Venture Supply, Inc. ("Venture"), Tobin Trading, Inc. "Tobin"),

The Porter-Blaine Corp. ("Por1er-Blaine"), Curb Appeal Home Builders, Inc. ("Curb Appeal"),

Absolute Drywall & Texturing, Inc. ("Absolute Drywall"), Scott Hodgson, Lorenzo I. Garcia, John

Randall, and Carl Rowe, and respectfully state as follows:

## INTRODUCTION

1.      The Nguyens bring this action because their family home was built by Curb Appeal

with defective drywall supplied, distributed, delivered, inspected, marketed, brokered, imported,

exported, sold, and/or installed by Porter-Blaine, Tobin, Venture, Absolute Drywall, Scott Hodgson,

Lorenzo I. Garcia, John Randall, and Carl Rowe.

2.      Defendants' drywall, used in the Nguyens' family home, is inherently defective

because it emits various sulfide gases and/or other toxic chemicals through "off-gassing" that create

noxious, "rotten-egg-like" odors, and cause damage and corrosion (the "Defect") to the structural,

mechanical and plumbing systems of the Nguyens' home such as the framing, heating, air-

conditioning and ventilation ("HVAC") units, refrigeration coils, copper tubing, faucets, metal

surfaces, electrical wiring, and computer wiring, as well as personal and Other Property such as

microwaves, utensils, electronic appliances, jewelry, and other household and personal property

items ("Other Property").

3.      The compounds emitted by the drywall at issue are also capable of, among other

things, harming the health of individuals subjected to prolonged exposure. These chemical

compounds cause and have caused dangerous health consequences including, among other things,

allergic reactions, respiratory afflictions, sinus and bronchial problems requiring medical attention,

including headaches suffered by the Nguyens.

4.      Published reports acknowledge this Defect was well known in the industry as early as 2006. The Defendants knew or should have known the corrosive and damaging effect of the defective drywall installed in the Nguyens' family home.

5.      The Defect existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted and continues without interruption to this date and will continue beyond this date. There is no repair (other than complete removal and replacement of all affected structures) that will correct the Defect.

6.      As a result of the Defendants' conduct as alleged herein, the Nguyens have suffered damage because their home contains inherently defective drywall that has caused damage to their home, Other Property, and their health.

7.      The Nguyens have incurred or will incur substantial damages including, but not limited to: Repair or replacement of their family home, repair or replacement of Other Property, repair or replacement of any other material contaminated or corroded by the drywall as a result of "off-gassing," cost of medical care, costs of relocation during repairs, storage costs, and other incidental and consequential damages.

8.      Further, as a result of the Defendants' conduct as alleged herein, the Nguyens have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical care and monitoring. All conditions precedent to the relief requested herein have occurred, been performed or have been waived.

**PARTIES**

9.      Plaintiffs, Tuan and Colleen Nguyen (husband and wife), are residents of Virginia

3

who own a home located at 1100 Michaelwood Drive, Virginia Beach, Virginia, 23452.

10.     The Nguyens' home was custom built by Curb Appeal in 2006. In early 2007, the Nguyens moved into the home. Around July 2007, when the humidity rose and the air conditioning units were used, they started to notice a "burnt" smell.

11.     The Nguyens also began to have headaches, which went away when they were away from the home. Mrs. Nguyen and her daughter have frequent sore throats and her daughter often complains about itchy eyes as a result of the emissions from the defective Chinese drywall.

12.     The Nguyens have checked electrical boxes in their home which show the ground wire corroded -- another problem caused by the defective Chinese drywall in their home.

13.     The Nguyens also received a letter from Venture indicating that they have defective Chinese drywall in their home.

14.     Defendant Venture is a Virginia corporation with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

15.     Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders, such as Curb Appeal, that was supplied to and damaged the Plaintiffs.

16.     Defendant Tobin is a Virginia corporation with its principal place of business located at 5008 Gatehouse Way, Virginia Beach, Virginia, 23455.

17.     Tobin brokered and/or negotiated the transaction(s) responsible for the ultimate distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this case.

18.     Defendant Porter-Blaine is a Virginia corporation and is located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

19.     Porter-Blaine, which shares an address with Venture, is one of Venture's drywall

installation contractors. Upon information and belief, Porter-Blaine installed the defective Chinese

drywall in Plaintiffs' home, which has resulted in harm and damages to Plaintiffs as described herein.

20.     Defendant Absolute Drywall is a Virginia corporation with its principal place of

business located at 1240 Swallow Drive, Virginia Beach, Virginia, 23453.

21.     Upon information and belief, Absolute Drywall installed the defective Chinese

drywall in Plaintiffs' home, which has resulted in harm and damages to Plaintiffs as described herein.

22.     Defendant Scott Hodgson is a citizen of Virginia with a principal address located at

3840 Foxglove Court, Virginia Beach, Virginia, 23453.

23.     Upon information and belief, Scott Hodgson installed the defective Chinese drywall

in Plaintiffs' home, which has resulted in harm and damages to Plaintiffs as described herein.

24.     Defendant Lorenzo I. Garcia is a citizen of Virginia with a principal address located at

718 Garfield Avenue, Virginia Beach, Virginia, 23452.

25.     Upon information and belief, Lorenzo I. Garcia installed the defective Chinese

drywall in Plaintiffs' home, which has resulted in harm and damages to Plaintiffs as described herein.

26.     Defendant John Randall is a citizen of Virginia with a principal address located at 517

Piney Branch Drive, # 210, Virginia Beach, Virginia, 23451.

27.     Upon information and belief, John Randall installed the defective Chinese drywall in

Plaintiffs' home, which has resulted in harm and damages to Plaintiffs as described herein.

28.     Defendant Carl Rowe is a citizen of Virginia with a principal address located at 1240

Swallow Drive, Virginia Beach, Virginia, 23453.

29.     Upon information and belief, Carl Rowe installed the defective Chinese drywall in

Plaintiffs' home, which has resulted in harm and damages to Plaintiffs as described herein.

5

30.     At all times herein mentioned, each of the Defendants was acting in concert with one another and was the agent, servant, partner, aider and abettor, coconspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs.

<u>COUNT I</u>

**BREACH OF CONTRACT**
**(Against Curb Appeal)**

31.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

32.     The Nguyens offered, and Curb Appeal accepted, sums of money in exchange for an agreement to build a home pursuant to the terms of the Contract.

33.     Upon information and belief, the Contract entered into by the Nguyens for construction of their family home impliedly and expressly warranted that the home would be free from Defects.

34.     The presence of defective drywall, which "off-gasses" sulfur and other toxic chemicals is a material breach of the duties Curb Appeal owed to the Nguyens pursuant to the Contract.

35.     As a direct consequence of the material breaches of the Contract described above, the Nguyens have sustained substantial damages, including, but not limited to: The removal and replacement of the defective drywall and/or the family home, replacement of any and all mechanical and structural systems damaged in the home, replacement of personal and other property damaged,

costs of moving to alternative housing while repairs are made, costs of comparable alternative housing, loss of use and enjoyment of their home and compensation for the reduced value of their home as a result of the perception of the home as tainted by the defective drywall.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (Against Curb Appeal)

36.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

37.     Curb Appeal warranted that the Property and all its fixtures were free from structural defects, constructed in a workmanlike manner and fit for habitation.

38.     By distributing, delivering, supplying, inspecting, installing, marketing, and selling a defective, unsafe, and poorly manufactured drywall product, and installing it on the property, Curb Appeal has materially breached its express warranties to the Nguyens.

39.     The Nguyens provided Curb Appeal all required notices of the breach of the warranties and requested that Curb Appeal remedy the same.

40.     The Nguyens relied on these express warranties to their detriment.

41.     As a direct result of this breach of express warranties, personal injury and personal and real property damages have been, and continue to be, incurred by the Nguyens.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (Against all Defendants)

42.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

7

43.     When Defendants distributed, delivered, supplied, inspected, installed, marketed, or sold their defective drywall to the Nguyens, Defendants implicitly warranted that the product was safe, efficacious, well tested, and of high quality. In addition, by virtue of Va. Code 555-70.1, Curb Appeal is held to have warranted to the Nguyens that the Property and all its fixtures were free from structural defects, constructed in a workmanlike manner and fit for habitation. The Nguyens are beneficiaries of these warranties.

44.     By distributing, delivering, supplying, inspecting, installing marketing, and selling a defective, unsafe and poorly manufactured drywall product, and installing it on the property, Defendants have breached their implied warranties. The Nguyens provided Defendants all required notices of the breach of the warranties and requested that Defendants remedy the same.

45.     These implied warranties were relied on by the Nguyens because it is understood that the Defendants have knowledge as to the quality, safety, and efficacy of the drywall they distribute, deliver, supply, inspect, install, market and sell.

46.     As a direct result of the breach of implied warranties, personal injury and personal real property damages have been, and continue to be, incurred by the Nguyens for which the Defendants are liable.

## COUNT IV

### NEGLIGENCE
### (Against all Defendants)

47.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

48.     Defendants owed a duty to the Nguyens to exercise reasonable care in the distributing, delivering, supplying, inspecting, installation, marketing, and/or selling of the drywall, including a

duty to adequately warn of its failure to do the same and to warn the Nguyens of this Defect. Defendants' foreseeable duties include, but are not limited to the following.

    a.    using reasonable care in the distributing of the drywall to prevent it from containing the Defect as set forth herein;

    b.    using reasonable care in the delivering of the drywall to prevent it from containing the Defect as set forth herein;

    c.    using reasonable care in the supplying of the drywall to prevent it from containing the Defect as set forth herein;

    d.    using reasonable care in the inspecting of the drywall to prevent it from containing the Defect as set forth herein;

    e.    using reasonable care in the installation of the drywall to prevent it from containing the Defect as set forth herein;

    f.    using reasonable care in the marketing of the drywall to prevent it from containing the Defect as set forth herein;

    g.    using reasonable care in the selling of the drywall to prevent it from containing the Defect as set forth herein;

    h.    using reasonable care to warn of Defendants' failure to use reasonable care in any of the above circumstances;

    i.    using reasonable care to warn, give adequate warning, and/or instruct the Nguyens of all latent dangers and defects;

    j.    recalling, or otherwise notifying the Nguyens, at the earliest date that it became known that the drywall used in their family home was dangerous

and defective;

k.     recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

l.     not misrepresenting that the drywall was safe for its intended purpose, when, in fact, it was not;

m.     not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

n.     not concealing information from the Nguyens regarding reports of adverse effects associated with drywall; and/or

o.     otherwise exercising reasonable care in the distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing the Defect as set forth herein.

49.     Defendants were negligent and breached their duty to exercise reasonable care in the construction, delivery, supply, inspections, installation, marketing, and/or sale of drywall, including a failure to adequately warn of its failure to do the same and to warn of the latent Defect. Defendants negligently breached their foreseeable duties to include, but not limited to:

a.     failure to use reasonable care in the distributing of the, drywall to prevent it from containing the Defect as set forth herein;

b.     a failure to use reasonable care in the delivering of the drywall to prevent it from containing the Defect as set forth herein;

c.     a failure to use reasonable care in the supplying of the drywall to prevent it from containing the Defect as set forth herein;

d.      a failure to use reasonable care in the inspecting of the drywall to

prevent it from containing the Defect as set forth herein;

e.      a failure to use reasonable care in the installation of the drywall to

prevent it from containing the Defect as set forth herein;

f.      a failure to use reasonable care in the marketing of the drywall to

prevent it from containing the Defect as set forth herein;

g       a failure to use reasonable care in the selling of the drywall to prevent it

from containing the Defect as set forth herein;

h.      a failure to use reasonable care to warn of Defendants' failure to use

reasonable care in any of the above circumstances;

i.      a failure to use reasonable care to warn, give adequate warning, and/or

instruct the Nguyens of all latent dangers and the Defect;

j.      a failure to recall, or otherwise notify the Nguyens, at the earliest date

that it became known that the drywall used in their family home was

dangerous and defective;

k.      a failure to recommend the use of drywall with sufficient knowledge as to

its Defect and dangerous propensities;

l.      a failure to refrain from misrepresenting that the drywall was safe for its

intended purpose when, in fact, it was not;

m.      a failure to refrain from distributing, delivering, and/or supplying drywall

in a manner which was dangerous to its intended and foreseeable users;

n.      a failure to refrain from concealing information from the Nguyens

11

regarding reports of adverse effects associated with drywall; and/or

o.      a failure to otherwise exercise reasonable care in the distributing,

delivering, supplying, inspecting, marketing, and/or selling drywall to

prevent it from containing the Defect as set forth herein.

50.      As a direct and proximate cause of Defendants' foreseeable and negligent acts and

omissions, the Nguyens have incurred damages and are entitled to recover monetary damages for:

Repair or replacement of their home; removal and replacement of all of the drywall contained in their

home; the replacement of air conditioners, refrigeration coils and other heating, ventilation and air

conditioning equipment, microwaves, faucets, utensils, copper tubing, electrical wiring, computer

wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household

items; the repair and/or the replacement of the Other Property, and the repair and/or replacement of

any materials contaminated or corroded by the

drywall.

51.      As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have

incurred or will incur direct, incidental and/or consequential damages for the costs of moving while

homes are being repaired; renting of comparable housing during the duration of the repairs; the cost

of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value

of the home due to the stigma attached to having defective drywall in the home; and other related

expenses.

52.      As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have

incurred personal injuries and are experiencing, or are at risk of experiencing, serious and dangerous

health hazards including economic and non-economic damages resulting from the adverse health

12

effects.

53.     Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT V

### NEGLIGENCE PER SE
### (Against all Defendants)

54.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

55.     Defendants breached their statutory duties to the Nguyens by failing to exercise reasonable care in distributing, delivering, supplying, inspecting, installing, marketing, and selling the defective drywall used in the construction of their family home.

56.     Defendants likewise breached their duties to the Nguyens by failing to warn the Nguyens about the defective nature of the drywall, which both malfunctioned and generated untoward side-effects. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective Chinese drywall and the adverse effects that it could have on the home in which it was used and on the health of the Nguyens themselves.

57.     Given the Defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause both economic and physical damage to the Nguyens.

58.     Economic damages include, but are not limited to, substantial reconstruction and repair of the Nguyen family home, as well as medical expenses incurred as a result of Defendants' drywall, which are and may be considerable.

59.     Defendants' drywall was the proximate cause of both the personal and property damages which the Nguyens suffered.

13

60.     As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred personal injuries and are experiencing or are at risk of experiencing serious and dangerous health hazards including economic and non-economic damages from adverse health effects.

61.     Due to Defendants' negligence per se, the Nguyens will continue to suffer from their personal and real property damages.

62.     Although Defendants knew or should have known about the defective nature of their drywall products, Defendants nevertheless continued to distribute, deliver, supply, market, sell and install it.

## COUNT VI

### UNJUST ENRICHMENT
### (Against all Defendants)

63.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

64.     Each Defendant individually and collectively profited from the sale of the defective drywall to the Nguyens, receiving payment themselves or through an agent.  Defendants received payment for the defective drywall and have retained those sums to the detriment of the Nguyens.

65.     Defendants' receipt and retention of the profits gained by sale of the defective drywall to the Nguyens is unjust and inequitable.

66.     As a direct and proximate result of Defendants conduct complained of herein, the Nguyens have sustained substantial damages, including, but not limited to: The removal and replacement of the defective drywall and/or the family home, replacement of any and all mechanical and structural systems damaged in the home, replacement of personal and Other Property damaged, costs of moving to alternative housing while repairs are made, costs of comparable alternative

14

housing, loss of use and enjoyment of their home and compensation for the reduced value of their

home as a result of the perception of the home as tainted by the defective drywall.

67.    Defendants knew or should have known of the damages their defective drywall would

cause as described herein.

## COUNT VII

### PRIVATE NUISANCE
### (Against all Defendants)

68.    The Nguyens incorporate and restate all preceding paragraphs as if fully set forth

herein.

69.    The acts and/or omissions of Defendants have caused injury to the Nguyens, among

other things, depriving the Nguyens of the peaceful and quiet use and enjoyment of their properly.

70.    Defendants' acts and/or omissions are wrongful and/or tortious, jeopardizing the

health, well-being, and safety of the Nguyens. Defendants knew their acts and/or omissions were

wrongful or they should have known, and the resulting harm to the Nguyens is ongoing.

71.    As a direct consequence of Defendants' creation of a private nuisance, the Nguyens

have suffered, and continue to suffer, substantial damages to their real and personal property and

their persons as described herein.

72.    As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have

incurred personal injuries and are experiencing or are at risk of experiencing serious and dangerous

health hazards including economic and non-economic damages resulting from the adverse health

effects.

## COUNT VIII

### EQUITABLE RELIEF, INJUNCTIVE RELIEF, AND MEDICAL MONITORING

**(Against all Defendants)**

73.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

74.     Because no adequate remedy exists for the conduct of Defendants, equitable and injunctive relief is appropriate.

75.     The Nguyens will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring.

76.     The Nguyens demand that Defendants recall, repurchase, and/or repair the Nguyens' family home, and initiate and pay for a medical monitoring program.

77.     Medical monitoring is a necessary component of the relief the Court should order because some of the compounds being emitted from Defendants' defective drywall are very hazardous, some latently affecting the central nervous system and basic oxygenation on a cellular level.

78.     As a direct consequence of the wrongful and/or tortious acts and/or omissions of Defendants' conduct, the Nguyens and their children have been exposed to airborne sulfur-based chemicals in quantities sufficient to harm them, and they have been harmed.

79.     Until it has been conclusively established that all defective drywall has been removed and that the air quality is safe, Defendants should bear the expense of air and environmental monitoring in the Nguyens' home.

## COUNT IX

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(Against all Defendants)**

80.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth

herein.

81.     Defendants, directly or through agents, were in privity with the Nguyens.

82.     At the times Defendants installed, utilized, supplied, inspected and/or sold drywall for use in the Nguyens' home, Defendants knew, or it was reasonably foreseeable, that the drywall would be used in the Nguyens' home as a building material, and impliedly warranted the product to be fit for that use.

83.     Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

84.     The drywall was defective because it was not fit forth uses intended or reasonably foreseeable by the Defendants; to wit, the installation of the drywall in the Nguyens' family home for use as a building material, because it contained a Defect as set forth herein.

85.     The Defendants breached the implied warranty of merchantability because the drywall was not fit to be installed in the Nguyens' home as a building material due to the Defect set forth herein.

86.     Defendants had reasonable and adequate notice of the Nguyens' claims for breach of implied warranty of merchantability and have failed to cure.

87.     As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred economic and other damages and are entitled to recover monetary damages for. Repair or replacement of their home; removal and replacement of all of the drywall contained in their home; the replacement of Other Property (air-conditioner and refrigeration coils, microwaves, faucets,

17

utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

88.     As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred, or will incur, incidental or consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real properly; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

89.     Defendants knew or should have known that their wrongful acts and omissions would cause the Nguyens personal and property damages, personal injuries and would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT X

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(Against all Defendants)**

90.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

91.     Defendants, directly or through agents, were in privity with the Nguyens.

92.     Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and the defective drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

93.     The drywall was defective because it was not fit for the specific purpose of being installed in the Nguyens' family home as a building material, the purpose for which the Nguyens

18

bought the product in reliance on the judgment of Defendants.

94.    The Defendants breached the implied warranty of fitness for a particular purpose because the drywall was not fit to be installed in the Nguyens' home as a building material due to the Defect set forth herein.

95.    Defendants had reasonable and adequate notice of the Nguyens' claims for breach of implied warranty of fitness for a particular purpose and have failed to cure.

96.    As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred economic and other damages and are entitled to recover monetary damages for: Repair or replacement of their home; removal and replacement of all of the drywall contained in their home; the replacement of Other Property (air-conditioner and refrigeration coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

97.    As a direct and proximate cause of Defendants' acts and omissions, the Nguyens have incurred or will incur incidental or consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real properly; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

98.    Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT XI

### VIOLATION OF CONSUMER PROTECTION ACT
**(Against all Defendants)**

19

99.     The Nguyens incorporate and restate all preceding paragraphs as if fully set forth herein.

100.    This is an action for relief under Virginia Code S 59 1-196, *et seq.*, pursuant to the Virginia Consumer Protection Act.

101.    Virginia Code S 59.1-198 defines a "Consumer transaction" as "[t]he advertisement, sale, lease, license or offering for sale, lease or license of goods or services to be used primarily for personal, family or household purposes." Furthermore, "Goods" means "all real, personal or mixed property, tangible or intangible."

102.    The advertising, soliciting, providing, offering, distributing, installation and construction of drywall by the Defendants to the Nguyens constitute acts by a supplier under the Virginia Consumer Protection Act.

103.    Virginia Code S 59.1-200.4. provides that: [t]he following fraudulent acts were practices committed by a supplier in connection with a consumer transaction, and are hereby declared unlawful:

a.     Misrepresenting the source, ... of goods or services;

b.     Misrepresenting the affiliation, connection or association of the supplier, or of the goods or services, with another;

c.     Misrepresenting geographic origin in connection with goods or services;

d.     Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits;

e.     Misrepresenting that goods or services are of a particular standard quality, grade, style or model. The Defendants' acts and omissions, as

20

well as their failure to use reasonable care in this matter. as alleged in this Complaint, including, but not limited to, the knowing misrepresentation of the source, affiliation, origin, characteristics, ingredients, standards and quality of the Chinese drywall, that was mislabeled as drywall of "Venture Supply, Inc." when installed in the Nguyens' home constitutes violation of the aforementioned provisions of the Virginia Consumer Protection Act.

104.     The Nguyens have suffered actual damage as a result of the Defendants' violations of the aforementioned provisions of the Virginia Consumer Protection Act for which they are entitled to relief under Virginia Code S59.1,204,205,206 and/or 207 .

105.     As a direct and proximate cause of the Defendants' acts and omissions, the Nguyens have incurred damages and are entitled to recovery of monetary damages for: Replacement/repair of their home; the removal and replacement of all drywall contained in their home; the replacement of Other Property; the repair and/or replacement of any materials contaminated or corroded by the defective drywall; the cost of relocation and living during the rehabilitation work required by the foregoing, and such further and additional relief as is appropriate under the circumstances, including, but not limited to, incidental and consequential damages for the cost of moving while their home is being repaired, renting comparable housing during the duration of the repairs, loss of use and enjoyment of real properly; the loss and value of the home due to the stigma attached to having defective drywall in the home and other related expenses.

**DEMAND FOR TRIAL BY JURY**

The Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

WHEREFORE, the Plaintiffs request that this Honorable Court grant the following relief:

a.    judgment in their favor, jointly and severally, against the Defendants, Venture Supply, Inc., Tobin Trading, Inc., The Porter-Blaine Corp., Curb Appeal Home Builders, Inc., Absolute Drywall & Texturing, Inc., Scott Hodgson, Lorenzo I. Garcia, John Randall, and Carl Rowe, jointly and severally;

b.    an Order requiring Defendants to pay compensation in the amount of at least Two Million Dollars ($2,000,000.00) in compensatory damages;

c.    an Order for temporary and permanent injunctive relief and requiring medical monitoring;

d.    costs and expenses in this litigation including, but not limited to, expert fees, filing fees and reasonable attorneys' fees and costs and pre-judgment and post-judgment interest; and

e.    such additional and further relief as is just and appropriate under the circumstances.

                                 TUAN NGUYEN and COLLEEN NGUYEN


DATED: ___1·7·09____        BY: _____
                                 Richard J. Serpe, Esq. (VSB #33340)
                                 Law Offices of Richard J. Serpe, P.C.
                                 580 East Main Street, Suite 310
                                 Norfolk, VA 23510-2322
                                 Phone: (757) 233-0009
                                 Fax: (757) 233-0455
                                 *Counsel for Plaintiffs*