# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al*<br>Case No. 11-cv-080 (E.D. La.)<br><br>*Almeroth, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al*<br>Case No. 12-cv-0498 (E.D. La.)<br><br>*Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D.La.)<br><br>*Germano et al. v. Taishan Gypsum Co., Ltd. et al.*<br>Case No. 2:09-cv-06687 (E.D. La.)<br><br>*Gross, et al. v. Knauf Gips, KG, et al*<br>Case No. 09-cv-6690 (E.D. La.)<br><br>*Haya, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd, et al*<br>Case No. 11-cv-1077 (E.D. La.)<br><br>*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al*<br>Case No. 10-cv-361 (E.D. La.) | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SETTLEMENT CLASS COUNSEL FOR AN ORDER: (1) CERTIFYING EACH OF FOUR CHINESE DRYWALL CLASS SETTLEMENTS (NATIONWIDE INSUREDS SETTLEMENT AGREEMENT, PORTER-BLAINE/VENTURE SUPPLY SETTLEMENT AGREEMENT, TOBIN TRADING AND INSTALLERS SETTLEMENT AGREEMENT, AND BUILDERS MUTUAL INSUREDS SETTLEMENT AGREEMENT) RELATING TO VIRGINIA AND CERTAIN OTHER REMAINING CLAIMS; (2) GRANTING FINAL APPROVAL TO THE FOUR CHINESE DRYWALL CLASS SETTLEMENTS; AND (3) APPROVING AN ALLOCATION PLAN FOR THE FOUR CLASS SETTLEMENTS**

# TABLE OF CONTENTS

I.    **INTRODUCTION** .................................................................................................. 1

II.   **STATEMENT OF FACTS** ................................................................................ 2

      A.  Opt-Outs .................................................................................................. 3

      B.  Objections ................................................................................................ 3

III.  **ARGUMENT** .................................................................................................... 3

      A.  There Is Overwhelming Support From the Class Representatives and Absent Class Members For Approval of the Class Settlements. ....................................... 3

      B.  The Objections to the Four Class Settlements Before the Court Lack Merit and Should Be Overruled. ................................................................................ 5

          1.  Each of the Settlement Funds is Fair, Reasonable and Adequate ........................ 9

          2.  Settlement Benefits Are Adequately Disclosed and Specific Individual Awards Cannot be Determined at This Time. .................................................. 12

          3.  Clarification Regarding Section 4.3 of the Settlement Agreement ...................... 14

          4.  Objections to Attorneys' Fees Lack Legal and Factual Merit............................. 16

          5.  Miscellaneous Objections................................................................... 17

          6.  The Proposed Allocation Plan is Reasonable, Fair and Adequate ...................... 18

IV.  **CONCLUSION** .............................................................................................. 21

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*,
    630 F.2d 1164 (7th Cir. 1980) ............................................................................11

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ...............................................................................6

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3rd Cir. 1993).................................................................................6

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) .......................................................................6, 10

*Braud v. Transport Service Co. of Illinois*,
    2010 WL 3283398 (E.D. La. Aug. 17, 2010) ......................................................10

*Bryan v. Pittsburgh Plate Glass Co.*,
    494 F.2d 799 (3d Cir. 1974) .................................................................................7

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................................7

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ..................................................................... passim

*DeBoer v. Mellon Mortgage Co.*,
    64 F.3d 1171 (8th Cir. 1995) ...............................................................................6

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ...............................................................5, 6, 13

*Fla. Trailer & Equip. Co. v. Deal*,
    284 F.2d 567 (5th Cir. 1960) ..............................................................................11

*Hassinger v. JP Morgan Chase & Co.*,
    2009 U.S. Dist. LEXIS 27290 (E.D. La. Apr. 1, 2009) ........................................17

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................7

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ....................................................................4, 5, 6, 10

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*,
    447 F. Supp. 2d 612 (E.D. La. 2006) ....................................................................11

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*,
    1995 WL 222177 (E.D. La. Mar. 15, 1995) ...........................................................16

*In re Holocaust Victim Assets Litig.*,
    Case No. CV-96-4849, 2000 WL 33241660 (E.D.N.Y. Nov. 22, 2000), *aff'd,* 413
    F.3d 183 (2d Cir. 2005) ............................................................................................7

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999) ............................................................................13

*In re Prudential-Bache Energy Income Partnerships Sec. Litig.*,
    815 F. Supp. 177 (E.D. La. 1993) ...........................................................................14

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006) .....................................................................13

*In re WorldCom, Inc. Sec. Litig.*,
    2004 U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004) .......................................14

*Johnson v. Johnson Chevrolet, Inc.*,
    633 F.2d 716 (5th Cir. 1980) ..................................................................................17

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................................7, 10

*Klier v. Elf Atochem N. Am.*,
    658 F.3d 468 (5th Cir. 2011) ..................................................................................14

*Lazy Oil Co. v. Witco Corp.*,
    95 F. Supp.2d 290 (W.D. Pa. 1997) ..........................................................................7

*Luevano v. Campbell*,
    93 F.R.D. 68 (D.D.C. 1981) ......................................................................................5

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ..................................................................................10

*Nat'l Treasury Employees Union v. United States*,
    54 Fed. Cl. 791 (2002) ............................................................................................13

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ..............................................................................4, 7

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ..................................................................6

*Pettway v. American Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978), cert. denied, 439 U.S. 1115 (1979) ..............................4, 5, 7

*Raines v. Florida*,
    987 F. Supp. 1416 (N.D. Fla. 1997).........................................................11

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ....................................................................4

*Salinas v. Roadway Express, Inc.*,
    802 F.2d 787 (5th Cir. 1986) ...................................................................10

*Smith v. Crystian*,
    91 Fed. Appx. 952 (5th Cir. 2004) ...........................................................10

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3rd Cir. 1990).....................................................................6

*Taifa v. Bayh*,
    846 F. Supp. 723 (N.D. Ind. 1994) ..........................................................7

*TBK Partners, Ltd. v. Western Union Corp.*,
    675 F.2d 456 (2d Cir. 1982) ....................................................................7

*The Theory of Fee Regulation in Class Action Settlements*, 46...................................17

*TravCo Ins. Co. v. Ward*,
    120347, 2012 WL 5358705 (Va. Nov. 1, 2012) .....................................8, 12

*Travco Ins. Co. v. Ward*,
    2013 U.S. App. LEXIS 1066 (4th Cir. Va. Jan. 15, 2013) ................................8, 12

*Travco Ins. Co. v. Ward*,
    715 F. Supp. 2d 699 (E.D. Va. 2010) ......................................................8, 12

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) (Fallon, J.)........................................passim

*Villegas v. Pep Boys Manny Moe & Jack*,
    551 F. Supp. 2d 982 (C.D. Cal. 2008) .....................................................18

*Whitford v. First Nationwide Bank*,
    147 F.R.D. 135 (W.D. Ky. 1992)..............................................................5

**OTHER AUTHORITIES**

Consumer Product Safety Commission, Frequently Asked Questions, *available at*
http://www.cpsc.gov/Safety-Education/Safety-Education-
Centers/Drywall/Topics/Other-frequently-asked-questions-FAQs/ .......................................21

Fed. R. Civ. P. 23(a), (b)(3) and (e) ...........................................................................................21

Rule 23(e) of the Federal Rules of Civil Procedure .......................................................................5

Four Chinese Drywall Class Settlements *Relating to Virginia and Certain Other
Remaining Claims* ("Four Virginia-based Settlements") ............................................................1

Rule 23 .............................................................................................................................................2

U.S. Consumer Product Safety Commission, January 28, 2010, *available at*
http://www.cpsc.gov/PageFiles/124600/51homeFinal.pdf. .....................................................21

Pursuant to this Court's Order dated January 17, 2013 [Rec. Doc. 16516], Settlement Class Counsel for the Four Chinese Drywall Class Settlements *Relating to Virginia and Certain Other Remaining Claims* ("Four Virginia-based Settlements") submit this Reply Memorandum[1] in support of their Motion for an Order (1) Certifying each of Four Chinese Drywall Class Settlements (Nationwide Insureds Settlement Agreement, Porter-Blaine/Venture Supply Settlement Agreement, Tobin Trading and Installers Settlement Agreement, and Builders Mutual Insureds Settlement Agreement) *Relating to Virginia and Certain Other Remaining Claims*; (2) Granting Final Approval to the Four Chinese Drywall Class Settlements; and (3) Approving an Allocation Plan for the Four Class Settlements.

## I.        INTRODUCTION

On May 8, 2013, Settlement Class Counsel filed a motion ("Final Approval Motion") seeking final approval of four class settlements with: (1) insurer Nationwide Insurance Company and its insureds ("Nationwide Insureds Settlement"); (2) insurer Citizens Hanover Insurance Company and its insureds ("Porter-Blaine/Venture Supply Settlement"); (3) insurer State Farm Insurance Company and its insureds ("Tobin Trading and Installers Settlement") and; (4) insurer Builders Mutual Insurance company and its insureds ("Builders Mutual Insureds Settlement").  If approved, these settlements will provide necessary remediation and monetary relief to hundreds of claimants impacted by Chinese Drywall, many of whom have been displaced from their homes, lost their properties due to foreclosure or sales in mitigation, and suffered loss of personal property. The total amount of settlement funds from the Four Virginia-based Settlements is $17.4 million, which will provide compensation for real property damage,

---

[1] Capitalized terms used in this Memorandum of Law shall have the same meaning as those defined in the Nationwide Insureds Settlement [Rec. Doc. No. 15969-5 ]; Porter-Blaine/Venture Settlement [Rec. Doc. No. 15969-6]; Tobin Trading and Installers Settlement [Rec. Doc. No. 15969-7]; Builders Mutual Insureds Settlement [Rec. Doc. No. 16478-3], which have been filed of record in this case.

remediation, and other losses arising from Chinese Drywall, including alternative living expenses, personal property damage, moving and storage expenses, losses resulting from lost use, sales and rentals, sales in mitigation or foreclosures, and/or bodily injuries.

## II.        STATEMENT OF FACTS

On January 17, 2013, the Court preliminarily approved the Four Virginia-based Settlements as fair, reasonable, and adequate, and conditionally certified four settlement classes.[2] Notice of these settlements was disseminated via first-class mail to all known Class Members for each of the settlements.[3]  Notice of each settlement was also posted on the Court's official Chinese Drywall website and announced in press releases.[4]  Notice was also published in various on-line and print media.[5]  A website was established and a call center was set up so that Class Members could obtain additional information about the settlements and register to receive further announcements from the Court regarding claims procedures to be implemented.[6] This website had over 900 visitors and registered more than 180 Class Members.

Each class notice informed Class Members of their right to opt out of or object to the settlement in accordance with Rule 23.[7] The Court established an opt-out/objection period from February 4, 2013 through May 16, 2013, allowing Class Members adequate opportunity to consider all of the settlements together before deciding whether to opt out of or object to any or

---

[2] Rec. Doc. No. 16516.

[3] Rec. Doc. No. 16806-6.

[4] Rec. Doc. No. 16806-7.

[5] Rec. Doc. No. 16806-8.

[6] Rec. Doc. No. 16806-7.

[7] Rec. Doc. 16806-6.

all of the settlements.[8]

### A.    Opt-Outs

As of the date of this filing, Settlement Class Counsel have not received any requests from Class Members to opt-out of any of the Four Virginia-based Class Settlements.

### B.    Objections

Out of the hundreds of Class Members who intend to participate in these settlements, only four objections were filed.  A review of these objections shows that each was copied from the objection of Colleen and Tuan Nguyen ("the Nguyen Objection") with two modifications. Plaintiffs respond to each of the objections below.  None present grounds to deny final approval to the settlements.

On May 16, 2013, objections were filed by Colleen and Tuan Nguyen  (Exhibit 1), Richard D. Illich (Exhibit 2), Candi C. Roberts (Exhibit 3), and Thomas and Jill Rokowski (Exhibit 4).  The Nguyens raise objections to provisions in the Settlement Agreements and provisions in the Proposed Allocation Plan.  Class counsel, Richard Serpe, did have lengthy discussions with Ms. Nguyen on several occasions prior to her filing an objection.  Counsel provided materials requested by Ms. Nguyen and attempted to respond to all questions she raised about the settlements.[9]  All the filed objections are addressed below.

### III.    ARGUMENT

### A.    There Is Overwhelming Support From the Class Representatives and Absent Class Members For Approval of the Class Settlements.

The opinions of class counsel, class representatives, and the absent class members are

---

[8] This court originally set an opt-out/objection deadline of April 25, 2013. [Rec. Doc. 16516]. The court subsequently extended the deadline to May 16, 2013 in order to allow class members time to review the Proposed Allocation Plan. [Rec. Doc. 16743].

[9] Aff. Richard Serpe, Exhibit 5.

critical factors that the Court must consider in determining whether the class settlements are fair, reasonable and adequate.  *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (adopting six-factor test cited in prior Fifth Circuit decisions including *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982), *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981), and *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978), cert. denied, 439 U.S. 1115 (1979)).  In addition to the views of Class Counsel and the class representatives, "[t]he attitude of absent class members, expressed either directly or indirectly by their failure to object after notice or high level of participation in the proposed settlement program, is an additional factor on which district courts generally place heavy emphasis."   *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (Fallon, J.), *citing In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896 (E.D. Va. 2001) (stating that class reaction is perhaps the most significant factor in determining whether a settlement is adequate).[10]

Out of hundreds of Class Members with Chinese Drywall claims against the Settling Defendants, only four Class Members objected to one or more of the settlements.  None of these objectors are Class Representatives. Under these circumstances, the Court may presume that the vast majority of potential Class Members and all Class Representatives have accepted the settlements, which "indicate[s] a pronounced response in support of the proposed settlement[s]." *Murphy Oil*, 472 F. Supp. 2d at 853.

In combination with the other factors supporting approval of the class settlements, this Court may conclude that the settlements are fair, reasonable, and adequate.

---

[10] In the opening Memorandum of Law supporting the Final Approval Motion, Settlement Class Counsel set forth the reasons why Class Counsel and the class representatives believe that these settlements are in the best interest of the classes. *See, generally*, Final Approval Memorandum of Law. [Rec. Doc. 16806] Since the opt-out/objection period had not concluded at the time the Final Approval Motion was filed, the opinions of absent Class Members were not addressed earlier.

### B.   The Objections to the Four Class Settlements Before the Court Lack Merit and Should Be Overruled.

Special protections are afforded to "class members whose interests may be compromised in the settlement process[,] ... includ[ing] notice ... and an opportunity to voice objections to the settlement." *Pettway*, 576 F.2d at 1169; *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Rule 23(e) of the Federal Rules of Civil Procedure grants any Class Member who has not opted out of a class settlement the opportunity to object to the settlement provided he or she "compl[ies] with procedural requirements stipulated in the settlement agreement, such as filing a written statement of objection with the court in advance of the hearing and giving notice of intent to appear at the fairness hearing." *Murphy Oil*, 472 F. Supp. 2d at 853; *Luevano v. Campbell*, 93 F.R.D. 68, 77 (D.D.C. 1981). The objection "must be sufficiently clear and unambiguous for court consideration, or otherwise the party will be deemed to have waived their objection." *Id.*

Thereafter, it is the responsibility of the court, as a fiduciary to the class, to carefully examine all objections to a class settlement in conjunction with its assessment of the fairness and adequacy of the settlement. *Pettway*, 576 F.2d at 1219; *Corrugated Container*, 643 F.2d at 217-18; *Murphy Oil*, 472 F. Supp. 2d at 853 ("courts must independently examine all objections to determine if they have merit and whether they raise questions regarding the fairness of [the] settlement."). It is important to keep in mind that "[o]nce the court has given preliminary approval, an agreement is presumptively reasonable, and an individual who objects has a heavy burden of demonstrating that the settlement is unreasonable." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 138-39 (W.D. Ky. 1992); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007). Therefore, generalized objections that do not have any factual or legal substantiation "do not carry weight." *DeHoyos*, 240 F.R.D. at 293; *Alba Conte and Herbert B. Newberg*, 4 NEWBERG ON CLASS ACTIONS § 11:58 (4th ed. 2002); *see also* 7B

5

FEDERAL PRACTICE & PROCEDURE § 1797.1 (providing that in class action settlement

dispute "[o]nly clearly presented objections ... will be considered"). On the other hand, even

substantive objections do not preclude approval of a class settlement. *See Ayers v. Thompson*,

358 F.3d 356, 368-73 (5th Cir. 2004) ("That several class members desire broader relief ... does

not prevent judicial approval of this settlement agreement, which promises substantial relief to

the class."); *Murphy Oil,* 472 F. Supp. 2d at 853.  Courts have recognized that "no settlement can

attain perfection precluding objections."  *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 275 (W.D.

Tex. 2007).  The essence of any settlement is compromise, which means both sides must give and

take in order to resolve the litigation without a trial.  *See Cotton*, 559 F.2d at 1330 ("compromise

is the essence of a settlement"); *see also Corrugated Container*, 659 F.2d at 1325 ("A just result

is often no more than an arbitrary point between competing notions of reasonableness."); *Bennett*

*v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong

judicial policy favoring settlement as well as by the realization that compromise is the essence of

settlement.").

   A relatively small number of objections to a class settlement helps to "indicat[e] that the

settlement is fair, reasonable, and adequate."  *See Murphy Oil*, 472 F. Supp. 2d at 853;

*Corrugated Container*, 643 F.2d at 217-18; *DeHoyos*, 240 F.R.D. at 293 ("minimal level of

opposition from absent class members weighs in favor of approving the settlement"); *Petrovic v.*

*Amoco Oil Co.,* 200 F.3d 1140, 1152 (8th Cir. 1999) (approving settlement where objectors

represented fewer than 4% of class); *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th

Cir. 1995) (determining that "[t]he fact that only a handful of class members objected to the

settlement similarly weighs in its favor"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 & n.15

(3rd Cir. 1993) (recognizing class silence can be considered consent to settlement); *Stoetzner v.*

*U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3rd Cir. 1990) (holding that objections by even 10% of class "strongly favors settlement"); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (noting silence of majority of class may be attributed to agreement to proposed settlement); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (noting small number of objections received may be viewed as indicative of adequacy of settlement); *In re Holocaust Victim Assets Litig.*, Case No. CV-96-4849, 2000 WL 33241660, at *2 (E.D.N.Y. Nov. 22, 2000) (recognizing "overwhelming majority of the Settlement Class members-more than 99 percent-did not submit any comment regarding the Proposed Plan and presumably had no objection"), *aff'd,* 413 F.3d 183 (2d Cir. 2005); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp.2d 290, 332 (W.D. Pa. 1997) (concluding silence in class action settlement context can be construed as assent); *cf. TBK Partners,  Ltd. v. Western Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of approximately 56% of class); *Parker  v. Anderson*, 667 F.2d 1204, 1207 (5th Cir. 1982) (approving approval of class action settlement over objections of all but one of eleven named plaintiffs); *Cotton*, 559 F.2d at 1333 (approving settlement over objections of counsel purporting to represent almost 50% of class); *Bryan v. Pittsburgh  Plate Glass Co.*, 494 F.2d 799, 803-04 (3d Cir. 1974) (approving class settlement even though more than 20% of class objected); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 661 (N.D. Tex. 2010) ("[A]pproval can be given even if a significant portion of the class objects.").  *But see Pettway*, 576 F.2d at 1216-17 (stating that the higher the number of objectors, the heavier the burden of proving fairness, and ruling that it was an abuse of discretion to approve a settlement opposed by the named plaintiff and 70% of class members).

In this case four objections have been filed.  There has been no suggestion that continued litigation against the Settling Defendants or their insurers – many of which contend that Plaintiffs' property and personal injury claims lack merit, and that the defendants lack insurance coverage – would be preferable to these reasonable and substantial settlements.  Continued litigation provides no guarantee of any relief whatsoever to the hundreds of Chinese Drywall claimants who have not opted out or objected, and at a minimum, such relief would be delayed. For example, the relevant insurance coverage law in Virginia has actually become less favorable to the Class between the time these settlements were negotiated and now.  *See Travco Ins. Co. v. Ward*, 2013 U.S. App. LEXIS 1066 (4th Cir. Va. Jan. 15, 2013); *TravCo Ins. Co. v. Ward,* 120347, 2012 WL 5358705 (Va. Nov. 1, 2012); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010). In the absence of settlement, Plaintiffs would face a risk of no recovery and if they obtain a recovery they would have to wait a very long time to see any compensation at all, given the Defendants' rights of appeal of any favorable verdict.

As an initial matter, each of the objectors identifies complaints about the Proposed Allocation Plan in their objections.  *See e.g.,* Nguyen objection (Exhibit 1) at #2, 3, and 10. These are not objections to the Settlement Agreements themselves.  The Settlement Agreements do not contain Allocation Plans.  Rather, pursuant to the Settlement Agreements, the Allocation Plan has been developed by the Allocation Committee and the Court-appointed Special Master, under the supervision of the Court.  The Proposed Allocation Plan is separate and distinct from the Settlement Agreements.  Pursuant to the Settlement Agreements (§17.1), the allocation by the Special Master may be appealed solely to the court, whose decision shall be final. Hypothetically, if the Settlements meet the approval criteria and are approved, any problems with the Allocation Plan could be resolved, and the Allocation Plan could ultimately be approved

by the Court.  Nevertheless, as explained herein, the criticisms of the Allocation Plan made by the objectors appear to be based on a misunderstanding of the Plan or can otherwise be shown to lack merit.

Since these are only four objections and each substantially copies the Nguyen objection, with two modifications, the description of the objections will use the Nguyen objection as the primary example.  The Nguyen objection lists 10 points, but for purposes of this reply brief they can be grouped in the following categories:

1. Sufficiency of settlement funds (Nguyen #1),

2. Lack of disclosure of dollar amounts of individual settlement awards (Nguyen  #6, 7),

3. Homeowner obligation to apply settlement funds to assist in remediation (Nguyen #4) (Sec. 4.3 of the Nationwide Insureds, Porter-Blaine/Venture Supply, and Builders Mutual Insureds Settlement Agreements),

4. Attorneys fees (Nguyen #5)

5. Miscellaneous: Sec. 10.1.3 (signature of counsel), and settlement agreement language denying liability (Nguyen #8, 9).

6. Allocation Plan Criticisms (Nguyen #2, 3, 10); (Illich #2 (Ex. 2)); and (Roberts #3 (Ex. 3)).

Each of these objections is either based on a misunderstanding of the Settlement Agreement or Allocation Plan, or otherwise lacks merit as set forth below.

## 1.      Each of the Settlement Funds is Fair, Reasonable and Adequate

The "sufficiency" objection (Nguyen #1) focuses on the fact that the Settlements will not satisfy 100% of their losses. They state, for example, that the Settlement funds may be inadequate to cover all of certain expenses, such as repair costs, or pre-remediation alternative

living expenses.  These complaints about the settlements lack merit.  It is without question that

no settlement will ever provide 100% relief.  *See Salinas v. Roadway Express, Inc.*, 802 F.2d 787,

790 (5th Cir. 1986) (recognizing that no settlement can "satisfy every class members' desires"

and affirming lower court's approval of consent decree, despite objections from "thirty-four

percent of the known class members").[11]  Indeed, the fundamental and inherent quality of any

settlement is the notion of "compromise."  *Cotton*, 559 F.2d at 1330 ("compromise is the essence

of a settlement"); *see also Corrugated Container*, 659 F.2d at 1325 ("A just result is often no

more than an arbitrary point between competing notions of reasonableness."); *Bennett v. Behring

Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong judicial

policy favoring settlement as well as by the realization that compromise is the essence of

settlement.").  What this means is that not everyone's needs will be completely met by any

particular settlement – each side must give and take. There is no requirement that Class Counsel

"obtain the largest conceivable recovery for the class."[12]  Rather, "to be worthy of approval" a

settlement "must simply be fair and adequate considering all the relevant circumstances."

This Court may be guided by the strong judicial policy favoring pretrial settlement of

complex class action lawsuits.  *See, e.g., Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir.

2004); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton*, 559 F.2d at 1331;

*Murphy Oil*, 472 F. Supp. 2d at 843; *Braud v. Transport Service Co. of Illinois*, 2010 WL

---

[11] It is important to note that for Taishan claimants, litigation against Taishan, the manufacturer of the allegedly defective Chinese Drywall, and its related entities continues.  Pending an appeal of this Court's jurisdictional rulings against Taishan [Rec. Doc. No. 15755], the PSC intends to vigorously pursue the claims of all Plaintiffs in the *Gross* and *Wiltz* actions, as well as the claims of thousands of Plaintiffs in the other Omnibus complaints, against all non- settling Defendants other than Taishan, including against CNBM and BNBM.  In addition, the PSC is prosecuting claims against these non-settling Defendants in actions filed in California, Florida, Louisiana, and Virginia. *See Amorin, et al. v. Taishan Gypsum Co. Ltd.*, 11-1395 (E.D.La.); *Abner, et al. v. Taishan Gypsum Co. Ltd.*, 11-3094 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co.*, 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd.*, 11-1673 (E.D.La.).

[12] *Klein*, 705 F. Supp. 2d at 649.

3283398, at *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.); William B. Rubenstein, Alba Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.).[13]  These settlements were achieved through extensive, hard-fought, arm's-length negotiations among highly-experienced, competent and well-informed counsel.  Class Counsel were guided by their desire to obtain the best result they could for the hundreds of Plaintiffs awaiting relief for their losses caused by Chinese Drywall.  That a very small percentage of Class Members have objected is no reason to deny final approval.  The fact that some Class Members will not be made whole or that some claims have been relinquished as part of the compromise is likewise not a sufficient basis for defeating settlement approval.  *See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 626 (E.D. La. 2006) (overruling objections containing "wildly optimistic suggestions of upper-end recoveries that, given the significant legal hurdles ahead, were at the bottom end of the probability scale"); *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (Class Counsel need only establish that "it is prudent to eliminate the risks of litigation to achieve specific certainty, though admittedly it might be considerably less (or more) than were the case fought to the bitter end."); *Raines v. Florida*,  987 F. Supp. 1416, 1419 (N.D. Fla. 1997) ("That these claims are lost in the settlement is insufficient reason to find the settlement to be unfair.  Settlement is a process of compromise.").  On the contrary, the hundreds of Class Members who have accepted the settlements are expecting an opportunity to receive settlement benefits and are deserving of final settlement approval.

The question before the Court is not whether these settlements will compensate all class members for 100% of their damages, but whether the settlements are fair and reasonable *when*

---

[13]  "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement.... This rule has particular force regarding class action lawsuits."  *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

*compared to prospects of continued litigation and the uncertainty as to recovery and the timing of recovery* that come with continued litigation.  Here, the obstacles to any recovery through continued litigation are considerable.  Many of the defendants are small businesses and "downstream" users of the allegedly defective Chinese Drywall and will be able to raise significant defenses as to their lack of knowledge of the defect.  Previous trials against such Chinese Drywall defendants[14] have shown the possibility of a defense verdict or modest awards to homeowner plaintiffs.  Equally compelling here is the distinct possibility that the insurance carriers in Virginia will escape coverage under the *Travco v. Ward* decision of the Va. Supreme Court construing the pollution exclusion language in the relevant insurance contracts.  *See TravCo Ins. Co. v. Ward,* 120347, 2012 WL 5358705 (Va. Nov. 1, 2012); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010). In the absence of insurance coverage, it is likely that several defendants would lack the assets to pay a judgment.  For example, Venture Supply and Porter-Blaine, the sole defendants in the Porter-Blaine/Venture Supply Settlement Agreement, are now insolvent and out of business.  Similarly, the owner of Tobin Trading has left the United States and its insurer, State Farm, has filed papers against Tobin alleging fraud.  Class counsel have tried several Chinese Drywall cases and are intimately familiar with the uncertainties surrounding recovery in Virginia, the potential time delays of further litigation including appeals, and the possibility that insurance coverage will not be available for the Defendants.  An analysis of these factors readily supports a reasonable compromise to obtain substantial relief now for the Classes, as these Settlements do provide.

### 2.    Settlement Benefits Are Adequately Disclosed and Specific Individual Awards Cannot be Determined at This Time.

The "lack of disclosure of individual award amounts" objection (Nguyen #6, 7) argues

---

[14]   *See e.g, Hernandez v. Knauf,* 09-cv-6050, MDL No. 2047 (March 16, 2010) (E.D. La.); *In re Chinese Drywall Products Liability Litigation* (North River), 09-MD-2047 "L" (Nov. 26, 2012) (E.D. La.).

that Class Members are not given adequate information concerning the dollar amount of their

potential recoveries. The objectors frame this as an objection to Sections 4.1.1 and 4.2 of the

Settlement Agreements, which provide for a pro-rata reduction in the Settlement Fund payment

in the event of opt-outs. The objectors argue that the pro-rata reduction for opt-outs is tantamount

to assigning a dollar amount to each Class Member's claim.

These objections do not serve as grounds for denial of Final Settlement Approval. It is

well-settled that class members' lack of knowledge regarding the *precise* amounts they will

collect under the settlement is not a valid basis on which to find the settlement unfair.[15] Indeed, it

is "not at all unusual for class members not to know the amounts they will be receiving until after

final approval."  *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006).

With hundreds of Chinese Drywall claimants and four separate settlements, it is impossible to

determine with any certitude each Class Member's individual recovery (or the pro rata credit to a

defendant for an opt out) prior to the close of the claims period.  See 3 NEWBERG ON CLASS

ACTIONS § 8:32 (4th ed.) ("ultimate recovery may often depend on the number of valid claims

filed").  However, this is not an obstacle to final settlement approval.  Courts recognize that a

"precise valuation," or even an "estimated value," of individual settlement recovery is not

required, particularly where, as here, there are multiple options for recovery to Class Members

and the number of valid claims is unresolved.  *See DeHoyos*, 240 F.R.D. at 300-01.[16]  The

settlement amounts for each settlement have been fully disclosed.  The criteria for allocation have

been fully disclosed.  This, taken together with the Proposed Allocation Plan that provides for the

---

[15] *Nat'l Treasury Employees Union v. United States*, 54 Fed. Cl. 791, 806 (2002); *see also In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 429-30 (S.D. Tex. 1999) ("Notice is adequate where the class member is notified of the formula of allocation."); 3 NEWBERG ON CLA SS ACTIONS § 8:32 (4th  ed.) ("It is unnecessary for the settlement distribution formula to specify precisely the amount that each individual class member may expect to recover.").

[16] Thus, it is not feasible to provide a precise schedule of remediation benefits before claims have been evaluated and validated.  *See* Amerson Objections, ¶ 35; Hopper Objections, ¶ 35, Ladner Objections, ¶ 35.

use of objective criteria, with oversight by the Court, to ensure a fair process for all Class Members in determining individual monetary awards is all that can be done at this time.  As set forth in the authorities noted above, this is typical in a class settlement and is routinely deemed to be fair and adequate.

Further, the opt-out reduction provision is a commonly used mechanism in class actions to reach a reasonable, fair, and adequate settlement agreement.  *See, e.g., Klier v. Elf Atochem N. Am.*, 658 F.3d 468, 471-72 (5th Cir. 2011) (reducing a settlement agreement from $55 million to $41.4 million to reflect individual settlements reached with opting-out class members); *In re WorldCom, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 22992, at *31-32 (S.D.N.Y. Nov. 12, 2004) (finding that a 2.8% reduction of the settlement agreement due to opt-outs was reasonable); *In re Prudential-Bache Energy Income Partnerships Sec. Litig.*, 815 F. Supp. 177, 179 (E.D. La. 1993) (providing for potential reductions in the defendants' payment due to opt-outs when describing the settlement agreement).

### 3.     Clarification Regarding Section 4.3 of the Settlement Agreement

The "assist in remediation" objection (Nguyen #4) expresses concern that Section 4.3 of the Nationwide Insureds, Tobin Trading and Installers, and Builders Mutual Insureds Settlement Agreements creates liability for homeowners who fail to apply settlement funds to "assist in remediation."  In response to this objection, Settlement Class Counsel (and Participating Defendants) can clarify that Section 4.3[17] does not apply to Class Members who no longer own

---

[17] Section 4.3 states:

"In consideration of the payments and other consideration made by Participating Defendants and Participating Insurers, Class Members agree, in addition to other conditions set forth in this Settlement Agreement, to apply the settlement proceeds they receive, except for funds allocated to resolve claims for bodily injury pursuant to Section 17, to assist in the remediation of their Affected Property allegedly damaged by Chinese Drywall or, in instances where a lender holds a mortgage or

14

their homes. Under Section 4.3, Class Members must use settlement proceeds to "assist in remediation" of their Affected Properties. Any Class Member who fails to comply with this requirement must indemnify, defend and hold harmless any Participating Defendant or Insurer against claims relating to the existence of Chinese Drywall in the Affected Property. The parties agree that it would be impossible for Class Members who no longer own their homes to comply with this provision because they cannot use settlement proceeds to "assist in remediation." Thus, all parties, Class Counsel and Settling Defendants, agree that this provision does not apply to former owners but only to Class Members who still own their properties at the time the Settlements receive final approval. We have attached to this reply brief as Exhibit 7 a revised proposed final approval order which includes language clarifying the meaning of Section 4.3.[18] Given this clarification, Section 4.3 does not apply to former owners of Affected Properties (a group comprising a significant number of class members). It does apply, however, to present owners of Affected Properties, but those owners are fully protected from the indemnification penalty by complying with the Settlement requirement to apply settlement proceeds to assist in remediation where possible. The goal of remediation, where possible, is consistent across CDW settlements. Thus, as described above, class members need not be saddled with this

---

deed of trust on the Affected Property, the Class Member may defer remediation by securing the release of all of the lender's claims regarding the Chinese Drywall and recording a notice in the land records office of the appropriate governmental agency of the presence of Chinese Drywall in the Class Member's property.  This provision does not apply to the extent the Class Member is a Participating Defendant who has remediated the Affected Property. Any Class Member that fails to comply with the obligations set forth in this paragraph shall indemnify, (including attorney fees and costs, both at trial court and appellate court levels), defend and hold harmless each Participating Defendant and Participating Insurer for any claim brought by any person or entity, including, without limitation, that Class Member's lender or any subsequent purchaser of that Affected Property, against the Participating Defendant or Participating Insurer relating to the existence of Chinese Drywall in the Affected Property."

[18] A redline version of the Proposed Order from the one submitted on May 8, 2013 with the Motion for Final Approval is attached hereto as Exhibit 6.

indemnification risk described in the objection, if they are former owners of Affected Properties or if they are present owners and comply with the remediation provisions.

4.      **Objections to Attorneys' Fees Lack Legal and Factual Merit**

Nguyen objection #5 comments that attorneys' fees were negotiated simultaneously with class relief and that less than half of the Settlement funds go to Class Members. Both of these objections lack legal and factual merit. First, <u>there is no fee request before the Court</u> at this time. The parties explicitly provided in their agreements that all decisions regarding attorneys' fees and costs, including a common benefit fee, will be left to the Court's discretion.  Settlement Class Counsel may petition the court for attorneys' fees constituting, in the aggregate, no more than 32% of the Settlement Funds, plus reimbursement of reasonable expenses, but the Court has the ultimate authority to grant or deny any such petitions.

Second, the parties appropriately negotiated the payment of attorneys' fees _after_ all other material terms of the Settlements had been agreed upon, and they left the ultimate amount of those fees to the Court's discretion. *See Murphy Oil*, 472 F. Supp. 2d at 844 (noting "[i]t is common practice today for class counsel to negotiate a specific fee award after they have successfully negotiated the class's recovery."); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177, at *4 (E.D. La. Mar. 15, 1995) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable to avoid conflicts of interest between the attorneys and the class.").  Courts have held that where "the amount of the fee is left entirely to the Court's discretion," "the possibility of collusion among counsel" is "exponentially decrease[d]."  *Murphy Oil,* 472 F. Supp. 2d at 845. Under these circumstances, there is no threat of any taint to the bargaining process. *Id.* ("[b]ecause the parties have not agreed to an amount or even a range of attorneys' fees, and have placed the matter entirely into the Court's hands for determination, there is no threat of the issue explicitly tainting the fairness of settlement

bargaining.").  *Id.*; Bruce L. Hay, *The Theory of Fee Regulation in Class Action Settlements*, 46

AM. U. L. REV. 1429, 1432 (1997) ("[P]roper regulation of the counsel's fee is both necessary,

and within limits, sufficient to mediate the tension between the goals of facilitating settlement

and protecting the class against collusion.").

### 5.  Miscellaneous Objections

The miscellaneous category of objections addresses denial of liability in the Porter-

Blaine/Venture Supply Settlement Agreement language, and an issue relating to signature of

counsel on objections.  (Nguyen #8, 9) The objection is made to Section 18.1 of the Porter-

Blaine/Venture Supply Settlement Agreement which states that the defendants 'have not

committed any violation of law.'" Section 18.1 of the Porter-Blaine Venture Agreement also

states that the Settlement "shall not [ ] constitute, be construed, be offered, or received into

evidence as an admission of the validity of any claim or defense…wrongdoing, fault, violation of

law, or liability of any kind…" This type of standard settlement agreement term, the assertion

denying liability and the provision that the Settlement Agreement not be used as evidence against

Settling Defendants to prove a violation of law, was negotiated along with other material terms

by the Settling Defendants in exchange for providing compensation to the Class in the

settlement. The provision does not state that the Defendants have "not committed any violation

of law." It merely clarifies that the Settlement itself does not constitute any such admission.

Further, it is a common characteristic of settlement agreements to disclaim liability of the

defendant.  *See, e.g., Johnson v. Johnson Chevrolet, Inc.*, 633 F.2d 716, 719 (5th Cir. 1980)

(noting that a defendant had disclaimed liability with plaintiff in a settlement agreement);

*Hassinger v. JP Morgan Chase & Co.*,  2009 U.S. Dist. LEXIS 27290, at *12-13 (E.D. La. Apr.

1, 2009) (noting that the settlement agreement at issue disclaimed liability on behalf of the

defendant).

The other objections categorized herein as miscellaneous raised concerns with Section 10.1.3 which reads "[t]he objection must be signed by the Class Member and his, her or its counsel; an objection signed by counsel alone shall not be sufficient." The objectors were concerned that their objections would not be considered by the court if those objections were not signed by counsel. This provision, however, merely requires that the *Class Member* sign objections – it clarifies that objections signed by counsel *alone* will not be accepted. However, a Class Member may object without the assistance of counsel.  The Court will give serious consideration to all objections signed by Class Members whether or not the objection is also signed by counsel. Indeed, federal courts are required to consider objections to a class action settlement agreement.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (holding that the court must extend to objectors leave to be heard and examine the settlement in light of the objections raised); *Villegas v. Pep Boys Manny Moe & Jack*, 551 F. Supp. 2d 982, 985 (C.D. Cal. 2008) ("A district court is required to consider class members' objections to a class action settlement.").

### 6.        The Proposed Allocation Plan is Reasonable, Fair and Adequate

The Allocation Plan objection raises five issues with the Proposed Allocation Plan (Nguyen #2, 3, 10), (Illich #2), and (Roberts #3). First, the objectors argue that the square footage calculation for Real Property Payments is unfair to homeowners who lost their homes due to CDW damage in short sale or foreclosure because not all homeowners had the same amount of equity in their homes prior to sale. The objection notes that a homeowner who owned her home in full, without any loan obligations, would be in the same position under the allocation plan as a homeowner who only put a small amount of money down at the time of purchase. This is not accurate.  Under the Settlement, a homeowner who sold her home in mitigation or lost her

home in foreclosure may recover for lost equity from the Other Loss Funds.[19] This recovery for lost equity is *in addition* to her square footage allocation from the Real Property Fund.[20]  Thus, a Class Member who lost equity would be entitled to recover more than a Class Member with the same square footage who did not lose equity.

Second, the objectors argue that the Allocation Plan does not provide alternative living costs for homeowners who sold, rather than remediated, their homes.  This is not accurate. Section 7(a)(i) of the Proposed Allocation Plan allows claims for "alternative living expenses arising from the need to vacate the Affected Property incurred prior to remediation as a result of property damage caused by CDW."  Under this section, Class Members can make claims for any alternative living expenses arising from the need to vacate the Affected Property so long as those alternative living expenses were not incurred *during* remediation.  This section does not require that a Class Member remediate her home in order to recover alternative living expenses.  The "pre-remediation" language was designed to distinguish alternative living expenses recoverable under the Other Loss Fund from expenses incurred during remediation, which are included in the square footage-based Real Property Payments.

Third, one objector (Illich #2) argues that Section 6(h) of the Proposed Allocation Plan unjustly eliminates Class Members who have declared bankruptcy.  This is also inaccurate. Section 13 of the Proposed Allocation Plan specifically provides for a special allocation procedure in the event a Class Member has declared bankruptcy. Section 13 is as follows:

> Bankruptcy: Class Members who declared bankruptcy may be entitled to recover under this Settlement if they have retained their rights to recover for CDW damage. The Special Master and MDL Court may, in their discretion, consider and allow these claims, in accordance with applicable bankruptcy orders and Federal law.[21]

---

[19] *See* Allocation Plan, Exhibit 8 at §7.

[20] *Id.* at §5.

Thus, the Proposed Allocation Plan does not exclude the claims of bankruptcy victims; instead, it makes clear that the Special Master will determine whether bankruptcy claimants are entitled to payments pursuant to their individual bankruptcy orders and other relevant federal laws.

Fourth, one objector (Roberts #3) argues that Sections 7.a.ii, 7.a.iii, and 13 of the Allocation Plan do not account for Class Members who have lost their homes through processes other than foreclosure, sales in mitigation or bankruptcy.  In fact, however, Section 7 of the Allocation Plan will allow Class Members to file claims for lost equity if they have given up their homes through deed in lieu of foreclosure or other processes in which they lost equity in their homes.  Thus, the Proposed Allocation Plan does not exclude these claims.

Fifth, the objectors request that the Allocation Plan establish a fund for past and future health costs.  (Nguyen #10)  The Proposed Allocation Plan does permit Class Members to submit claims for compensation for personal injuries which would include past related medical expenses and known future medical expenses caused by CDW.[22]  The Proposed Allocation Plan does not, however, allow for unknown future health costs.  The Allocation Plan does not provide for future unknown health costs because there is no scientific research or evidence available to indicate that there is a known risk of future long-term chronic injuries arising from exposure to Chinese drywall.  The available scientific evidence identifies a risk of short term acute and reversible effects from living in a Chinese drywall home, but fails to identify a risk of long term chronic effects from such exposures. Thus, allocation of settlement  funds to compensate Class Members for future and long term risks could only be done on the basis of speculation.  Indeed, the

---

[21] *Id.* at §13.

[22] *Id.* at §7(a)(v).

Consumer Product Safety Commission and Centers for Disease Control and Prevention have found no evidence that exposure to Chinese Drywall causes any long term or future ill health effects.[23]

### IV.        CONCLUSION

As shown above, an examination and review of the four filed objections reveals no reason to deny final approval to the settlements.  Settlement Class Counsel respectfully request that this Court deny all objections to the Four Virginia-based Settlements, and find that these settlements are fair, reasonable and adequate and in the best interests of Class Members and that the Settlement Classes should be certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e).

Respectfully submitted,

Dated:  May 20, 2013

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN &KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*And Proposed Class Counsel*

---

[23] Consumer Product Safety Commission, Frequently Asked Questions, *available at* http://www.cpsc.gov/Safety-Education/Safety-Education-Centers/Drywall/Topics/Other-frequently-asked-questions-FAQs/; Final Report on an Indoor Environmental Quality Assessment of Residences Containing Chinese Drywall, prepared for the U.S. Consumer Product Safety Commission, January 28, 2010, *available at* http://www.cpsc.gov/PageFiles/124600/51homeFinal.pdf.

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Matthew C. Gaughan
LEVIN, FISHBEIN, SEDRAN &BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*And Proposed Class Counsel*

Richard Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com
*Proposed Class Counsel*

Richard S. Lewis (On the Brief)
Kristen M. Ward (On the Brief)
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, D.C. 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing REPLY MEMORANDUM OF LAW IN

SUPPORT OF THE MOTION OF SETTLEMENT CLASS COUNSEL FOR AN ORDER: (1)

CERTIFYING EACH OF FOUR CHINESE DRYWALL CLASS SETTLEMENTS

(NATIONWIDE INSUREDS SETTLEMENT AGREEMENT, PORTER-BLAINE/VENTURE

SUPPLY SETTLEMENT AGREEMENT, TOBIN TRADING AND INSTALLERS

SETTLEMENT AGREEMENT, AND BUILDERS MUTUAL INSUREDS SETTLEMENT

AGREEMENT) RELATING TO VIRGINIA AND CERTAIN OTHER REMAINING CLAIMS;

(2) GRANTING FINAL APPROVAL TO THE FOUR CHINESE DRYWALL CLASS

SETTLEMENTS; AND (3) APPROVING AN ALLOCATION PLAN FOR THE FOUR

CLASS SETTLEMENTS, and attached Exhibits have been served on Defendants' Liaison

Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to

LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing

in accordance with the procedures established in MDL 2047 on this 20th  day of May, 2013.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*Co-counsel for Plaintiffs*