# EXHIBIT 1

Judge Eldon Fallon
United State District court
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

May 16, 2013

RE:   MDL No. 2047
      Chinese – Manufactured Drywall Products Liability Litigation

Class Members:   Colleen and Tuan Nguyen
                 4409 Sheffield Drive
                 Virginia Beach, VA 23455
                 757 340 1060

                 Affected Property Address:
                 1100 Michaelwood Drive
                 Virginia Beach, VA 23455

Judge Fallon,

On behalf of our family, we request that the court accept this as an objection to the Virginia Settlements including Builders Mutual, Nationwide, Porter-Blaine/Venture Supply and Tobin Trading/Builders Plaster & Drywall/JMM Drywall/Insurers. This is an objection to the proposed settlement while we are not opting out at this point.

**Objections:**

1. Proposed Settlement Fund is insufficient - The Virginia Settlement is not fair, reasonable or adequate considering the losses incurred by these families both for the destruction and ultimate loss of their home, the equipment repairs and losses over the years, the financial implications of maintaining two properties, loss of use and enjoyment and for many extreme medical expenses.

2. Allocation Plan – Section 8b - The individual recovery for the Virginia families that have already lost their homes to short sale or foreclosure should not be based on a square footage calculation but on a calculation that involves down payment on the Chinese Drywall home. The square footage calculation is unfair and unjust. Two homeowners purchased identical homes that were each 2000 square feet. While one homeowner paid cash for their house the other put down $5000 upon purchase. Both of these homeowners were forced to let their homes go either by short sale or foreclosure in order to mitigate their losses. The way this allocation plan is drafted both of these homeowners stand to receive the same amount in settlement. If remediation

remediation for most Virginia homeowners, we are talking about recovery of lost funds. We feel this is unfair and this calculation should involve down payment upon purchase of the Chinese Drywall. Distribution of the settlement proceeds is arbitrary and capricious, resulting in unwarranted inequitable treatment of class members.

3. <u>Allocation Plan</u> – Section 7.a.i - The allocation plan allows for alternative living costs for a homeowner that remediated their home, at their own expense, but does not address this issue for the other Chinese Drywall families that incurred the same expenses. The alternative living expense costs should be allowed for all families. My family spent 10 months paying both mortgage and rent/mortgage on another property. That was almost $35,000 (no less moving and many other expenses incurred during the last 4 years) that we will never have a chance to recover under this allocation plan as it reads.

4. <u>Section 4.3</u> - Acceptance of the Tobin, Builders Mutual and Nationwide settlements pushes liability onto the homeowners. While many will suggest that this would be a rare occurrence it STILL would mean that it is incumbent upon us to hire an attorney and pay out thousands of dollars (possibly even more then we stand to recover from this Virginia Settlement) in order to defend ourselves against this frivolous claim. We request that this section be removed from all three of these settlements just as it is not part of the Venture/Porter Blain settlement. These families do not deserve to have this hanging over their heads forever.

5. Attorney fees. The simultaneous negotiation of class relief and attorney fees creates a potential conflict. Less then half of settlement actually goes to the plaintiffs/victims.

6. <u>Section 4.1.1</u> - If the defendants can calculate how much they are NOT liable for were a plaintiff to opt out of this settlement then we, the plaintiffs, deserve the same courtesy in knowing how much we will acquire from this settlement before we have to make a decision to opt in or opt out. "the payment of the Settlement Funds for the Affected Properties associated with any opt-outs shall be reduced pro-rata (Settlement Amount/number of claimants + the number of opt-outs), and these amounts will be credited against the settlement Amount due from affected Participating Insurers". If this is the case then how can they decide on the dollar amount for those that have chosen to opt out and not be able to tell those who are opting in what will be their settlement amount? If a dollar amount CAN be calculated for the defendants then why can a settlement amount NOT be calculated for the plaintiffs before they must decide to opt in or out of settlement? This does not seem "FAIR".

7. <u>Section 4.2 (Tobin)</u> - Class provides no indication, not even in a general range, as to what the individual recovery for Class Members will be. That in itself is enough of an argument but is more enforced in Section 4.2 of Tobin document as they are able to provide a formula as to how much the insurers payment will be reduced by is a plaintiff were to opt out of the settlement.

8. <u>Section 10.1.3</u> - "The objection must be signed by the Class Member and his, her or its counsel; an objection signed by counsel alone shall not be sufficient." Can an objection be filed by a plaintiff without counsel's signature? This statement says that an attorney is necessary in order to file an objection. Our attorney has been certified as class counsel and cannot object on behalf of any of the Virginia homeowners. Does the court put more weight to an objection that is filed by an attorney who would be able to site other cases in support of the objections?

9. I disagree with the Virginia Settlement when it states that the defendants "have not committed any violation of law". The discoveries from Sam Porter, Venture Supply, show that he told the Chinese manufacturer not to worry that the drywall did not meet United States ASTM standards. This same product that did not meet federal standards was imported into our country, destroyed tens of thousands of American homes, sent these same families into financial ruin, created seen and unforeseen health complications for all that lived in these homes and greatly impacted the American housing market and mortgage system.

10. Not understanding the long term health implications before the close of this settlement, as we await a health study by the government, is a frightening concept for most families to accept. Future issues may arrive, similar to asbestos, where we might not know for years and yet we are being asked to sign all of our health rights away. We will have to bear all of these health costs after an already insufficient settlement. We already have homeowners with kidney, liver, neurological and autoimmune ramifications from having lived in these toxic homes for years. A fund should be established for past and future health costs.

I intend to appear and speak at the fairness hearing on May 21, 2013 in Judge Hall's court in Norfolk, VA.

Tuan and Colleen Nguyen