# EXHIBIT A



LAW OFFICES OF
RICHARD J. SERPE, P.C.

May 29, 2013

**VIA HAND DELIVERY**

George E. Schaefer, Clerk
Norfolk City Circuit Court
100 St. Paul's Boulevard
Norfolk, VA 23510

   RE: CL10-8202; CL12-0287; CL11-2729; CL09-6726; CL12-1875; CL10-1930;
      CL09-6328; CL09-7322; CL10-8196; CL12-5992; CL09-6328

Dear Mr. Schaefer:

  In connection with the above referenced litigation, enclosed please find a Motion to Establish a Qualified Settlement Fund and Appoint a Fund Administrator.

  If you have any questions, please do not hesitate to contact my office.

          Sincerely yours,

          LAW OFFICES OF RICHARD J. SERPE, P.C.

          Richard J. Serpe

RJS/ric
Enclosure
ecc: Richard K. Bennett, Esq.
cc: Hon. Mary Jane Hall, Judge

VIRGINIA:   IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

CRAIG BOLLENBERG and )
ANGELA BOLLENBERG, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs, )
v. ) Case No: CL10-8202
　　　　　　　　　　　　　　　　　　　　　　)
VENTURE SUPPLY, INC., et al., )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants. )

GENE R. CABURIAN and, )
GENALIN N. CABURIAN, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs, )
v. ) Case No: CL12-0287
　　　　　　　　　　　　　　　　　　　　　　)
DEAS CONSTRUCTION COMPANY, )
INC., et al., )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants. )

ROBERT E. DAWSON, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff, )
v. ) Case No: CL11-2729
　　　　　　　　　　　　　　　　　　　　　　)
ATLANTIC HOMES, LLC, et al., )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants. )

VIDA DILLARD, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff, )
v. ) Case No: CL09-6726
　　　　　　　　　　　　　　　　　　　　　　)
HHJV, LLC, et al., )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants. )

| | | |
|---|---|---|
| BRIAN DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: CL12-1875 |
| | ) | |
| TOTAL HOME RENOVATION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| PENNY LANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: CL10-1930 |
| | ) | |
| VENTURE SUPPLY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JOSEPH MATULENAS and ELIZABETH MATULENAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No: CL09-6328 |
| | ) | |
| VENTURE SUPPLY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ROBERT POPOVITCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: CL09-7322 |
| | ) | |
| HHJV, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| KAREN REILLY and<br>PAUL REILLY, | )<br>)<br>) | |
| Plaintiffs,<br>v. | )<br>)<br>) | Case No: CL10-8196 |
| THE CLASSIC GROUP, INC. D/B/A<br>CASE HANDYMAN SERVICES, et al., | )<br>)<br>) | |
| Defendants. | ) | |
| CARTER SAVAGE and<br>BARBARA SAVAGE, | )<br>)<br>) | |
| Plaintiff,<br>v. | )<br>)<br>) | Case No: CL12-5992 |
| TECH BUILDING CORP., et al., | )<br>) | |
| Defendants. | ) | |
| CYNTHIA TALBOT, | )<br>) | |
| Plaintiff,<br>v. | )<br>)<br>) | Case No: CL09-6328 |
| OXFORDSHIRE, LLC, et al., | )<br>) | |
| Defendants. | ) | |

## MOTION TO ESTABLISH QUALIFIED SETTLEMENT FUND
## AND APPOINT FUND ADMINISTRATOR

Plaintiffs, by and through counsel for Plaintiffs ("Counsel"), move this Court for an Order (1) to establish a fund, which shall be called the Ramirez Chinese Drywall Qualified Settlement Trust (the "Fund") and (2) to appoint an administrator of the Fund. In support of this Motion, Plaintiffs respectfully state as follows:

3

1.      Eleven Plaintiffs filed actions against Defendant Carlos Ramirez ("Ramirez") in the Circuit Court for the City of Norfolk between 2009 and 2012 alleging damages relating to Ramirez's installation of Chinese Drywall in their homes. Bellwether trials against Ramirez were set to commence on April 22, 2013 before this Court.  The parties engaged in discovery, and the Honorable Mary Jane Hall issued rulings on multiple pre-trial motions.  After arms-length negotiations with the assistance of a mediator, on April 16, 2013, Defendant Ramirez, insurer Auto-Owners Insurance of Michigan, and Plaintiffs agreed to settle their claims.  Plaintiffs' counsel submits that the settlement agreement is a fair and reasonable result for Plaintiffs considering Plaintiffs' likelihood of success against Ramirez on the merits, the modest size of Ramirez's installation business, and the commercial liability coverage limits under Ramirez's policy with Auto-Owners Insurance of Michigan.

2. Counsel moves this Court to approve and manage a Qualified Settlement Fund ("QSF") under Internal Revenue Code § 468B for distribution of the Ramirez settlement payment. Defendant Ramirez will make the settlement payment to the QSF in exchange for a release from Plaintiffs' claims. Counsel further requests that Judge Hall oversee distribution of the Settlement Fund to Plaintiffs. The QSF will allow the Court to ensure compliance with settlement terms while protecting settlement funds and will give the Court the ability to ensure that the funds are disbursed to the appropriate Plaintiffs in accordance with a fair allocation plan.

3.      The Fund shall be a QSF as described in Treas. Reg. Section 1.468B-1, established by order of this Court, and the Fund shall remain subject to the continuing jurisdiction of this Court.

4.      This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states, in relevant part, that a QSF "is established pursuant to an order of, or is

approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

5. Except as otherwise provided for below, the Fund shall fully settle claims arising from the Litigation by entering into subsequent QSF Agreements and Releases (the "Fund Agreements") with persons or entities asserting those claims. The Fund Agreements shall only be subject to court approval upon request by this Court. Until such time that Plaintiffs are entitled to receive compensation under a Settlement Agreement, no settlement proceeds shall be set apart for Plaintiffs or otherwise made available so that they may draw upon or otherwise control settlement proceeds.

6. Pursuant to the terms of the settlement among Plaintiffs, Defendant Ramirez, and Auto-Owners Insurance of Michigan, Auto-Owners Insurance of Michigan shall promptly pay the agreed upon settlement proceeds into the Fund.

7. Plaintiffs request that the Court appoint The Garretson Firm Resolution Group, Inc. d/b/a Garretson Resolution Group ("GRG"), whose address is 7775 Cooper Rd., Cincinnati, OH 45242, as the Fund Administrator and Trustee, to administer the fund allocation plan pursuant to the terms, conditions and restrictions of this Motion (collectively the "Fund Administrator"). GRG's extensive experience in administering and serving as trustee of settlement funds extends to approximately 2,000 different cases, including *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on April 20, 2010, MDL Docket No. 2179 (E.D. La.); *In re Avandia Marketing, Sales, Practices, and Products Liability Litigation*, MDL Docket No. 1871 (E.D. Pa.); *In re World Trade Center Disaster Site Litigation*, 21 MC 100

5

(AKH) (S.D.N.Y.); and *In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La.). GRG shall submit personally to the jurisdiction of this Court.

8.      The Total Settlement Proceeds are the sole property of the Fund. No portion of the Total Settlement Proceeds shall be made available to Plaintiffs in any fashion, except as specifically set forth in a Fund Agreement entered into by Plaintiffs and the Fund Administrator. Until such Fund Agreement is reached between Plaintiffs and the Fund Administrator, Plaintiffs shall not possess any rights to demand or receive any portion of the Total Settlement Proceeds or the escrowed funds or to mortgage, pledge, or encumber the same in any manner. To the extent possible, this Motion shall be construed so as to prevent Plaintiffs from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the Fund prior to the time the Plaintiffs and the Fund Administrator enter into a Fund Agreement.

9. The Fund Administrator shall be indemnified and held harmless by the Plaintiffs from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund. Should the Fund Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator having served in any capacity on behalf of the Fund, the Fund Administrator shall be indemnified and held harmless by the Plaintiffs against reasonable expenses, costs and fees (including attorneys' fees), judgments, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally

determined by this Court that the Fund Administrator was grossly negligent or acted with willful misconduct in connection with the administration of this Fund.

10. The Plaintiffs request that no bond be required, provided that all monies received by the Fund, which include all principal and interest earned thereon, shall be deposited in an investment agency account held in custody at Old Point National Bank, 580 East Main Street, Norfolk, VA 23510 for the benefit of and titled in the legal name of the Fund and shall be invested in instruments/securities comprised of (1) United States Agency, Government Sponsored Enterprises or Treasury securities or obligations (or a mutual fund invested solely in such instruments); (2) cash equivalent securities including SEC registered money market funds and collateralized money market accounts; and/or (c) deposit and similar interest-bearing, or non-interest bearing accounts subject to Federal Deposit Insurance Corporation protections as available. The Bank shall be responsible for any and all investment-related decisions, following the instructions of the Fund Administrator and/or its investment advisor pursuant to these terms and conditions, such that the following investment policy is implemented: (1) safety of principal, (2) zero bank balance exposure; and the use of zero sweep disbursement accounts to ensure funds remain in custodial or fully insured accounts to avoid an impermissible risk of loss should the financial institution holding the funds fail. Notwithstanding the foregoing, the Bank shall not be allowed to distribute any income or principal from the Fund without an order of this Court. The Fund Administrator retains the right to remove the Bank with or without cause, in its sole and absolute discretion, subject to approval of this Court. The Fund Administrator may designate a replacement bank upon the written consent of the Plaintiffs and Counsel. In the event of such replacement, the terms and conditions of this paragraph, including without

limitation, those addressing bond requirements, investments, and distributions from the Fund, shall apply to any such replacement bank.

11. The Fund Administrator is permitted to distribute all excess interest accrued to the Fund, after the payment of fees, expenses and taxes, to Plaintiffs on a pro rata basis.

12. The Fund Administrator, with this Court's approval, shall be authorized to distribute all attorneys' fees and litigation expenses to Counsel, consistent with the existing contingency fee contracts, as modified by the limitations set forth herein. The PSC and common benefit counsel have been actively involved in securing the settlement with Defendants in this litigation and have made tremendous efforts over the past few years to resolve Chinese drywall litigation across the country. The PSC has orchestrated and coordinated the prosecution of Chinese Drywall claims on behalf of thousands of Plaintiffs in MDL 2047 which has included: (i) translation and service of process of more than a dozen Omnibus Complaints under the Hague Convention on scores of foreign manufacturing Defendants and their related entities; (ii) pretrial discovery of hundreds of entities in the Chinese Drywall supply chain, including depositions in Hong Kong, as well as in cities throughout the United States, often requiring the use of multiple interpreters; (iii) establishing a document depository that has logged in more than 400,000 pages of documents received pursuant to production requests, many of which required translation into English; (iv) testing and preserving the drywall in Plaintiffs' homes; (v) preparing and serving requests upon the CPSC under the Freedom of Information Act; (vi) retaining experts in a number of fields including those in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese drywall installed in Plaintiffs' homes; (vii) filing motions for class certification in *Germano*; (viii) filing motions for Florida and Louisiana Homeowners classes for damages

and/or declaratory relief[1]; (ix) filing numerous motions to intervene, motions to compel, motions for default judgment, motions for summary judgment, and a motion to establish a Plaintiffs' litigation expense fund; (x) responding to motions to dismiss for lack of personal jurisdiction; and (xi) attendance at every MDL 2047 status conference and hearing held before the Court.

13. In addition, in the spring of 2010, the PSC prepared ten bellwether cases involving Virginia and Louisiana for trial.[2] After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the appropriate scope of remediation. The Court found that Chinese drywall "has to be remediated."[3] These bellwether trials have served as a useful tool for all litigants involved in the Chinese Drywall Litigation, as well as the Court.[4] In addition, the PSC has litigated the issue of jurisdiction against the Taishan defendants in the E.D.La. and the Fifth Circuit. Further, the PSC devoted significant time and

---

[1] MDL 2047, Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva*), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195 (*Vickers/Payton*), 8197 (*Payton*).

[2] *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al.*, Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case). Two additional bellwether cases, Campbell v. KPT, et al., Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al.*, Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[3] *Germano*, 706 F. Supp. 2d at 671.

[4] *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (June 2008) (concluding that the use of a bellwether trial is "one of the most innovative and useful techniques for the resolution of complex cases"); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.... The reasons for acceptance by bench and bar are apparent. If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.").

resources to litigating Plaintiffs' claims under insurance policies containing pollution exclusion clauses.[5]

14. Counsel request that this Court authorize the Fund Administrator to distribute attorneys' fees and litigation expenses to counsel for Plaintiffs. Counsel request that the Court direct the Fund Administrator to distribute an amount equal to twelve percent (12%) of the gross settlement proceeds to the Plaintiffs Steering Committee ("PSC") and Common Benefit Counsel in MDL 2047 for common benefit fees and direct the Fund Administrator to distribute an amount equal to 20% of the gross settlement proceeds to attorneys privately retained by Plaintiffs for private attorneys' fees. The total amount of attorneys' fees to be paid by Plaintiffs shall be 32% of the gross settlement proceeds. Further, the Fund Administrator shall set aside five percent (5%) of the gross settlement proceeds which shall be used to reimburse costs as follows. First, the Fund Administrator will reimburse privately retained attorneys for their reasonable costs. Second, the Fund Administrator shall distribute the remainder of the 5% costs set aside, after reimbursement to privately retained attorneys for their reasonable costs, to the MDL common benefit costs fund which shall be used to reimburse the PSC and common benefit counsel for their common benefit costs. Richard Serpe will file an affidavit with this Court and Judge Fallon specifying the amount of private costs reimbursement made by the Fund Administrator and the amount of money remaining in the costs fund to be distributed to the MDL common benefit cost Fund. The payments to the PSC for fees and costs will comply with the Order of the Honorable

---

[5] *See TravCo Ins. Co. v. Ward,* 120347, 2012 WL 5358705 (Va. Nov. 1, 2012); *Travco Ins. Co. v. Ward,* 715 F. Supp. 2d 699 (E.D. Va. 2010), *question cert'd to Va. Sup. Ct.,* 468 Fed. Appx. 195 (4th Cir. 2012); *Evanston Ins. Co. v. Harbor Walk Development, LLC,* 814 F. Supp. 2d 635 (E.D. Va. 2011); *Dragas Management Corp. v. Hanover Ins. Co.,* 798 F. Supp. 2d 766 (E.D. Va. 2011); *Nationwide Mutual Ins. Co. v. Overlook, LLC,* 785 F. Supp. 2d 502 (E.D. Va. 2011); *QBE Ins. Corp. v. Estes Heating & Air Conditioning, Inc.,* 2012 WL 413968 (S.D. Ala. Feb. 8, 2012); *Builders Mut. Ins. Co. v. Parallel Design & Development, LLC,* 2010 WL 6573365 (E.D. Va. Oct. 5, 2010).

Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana Order dated April 13, 2011 (MDL 2047, Document 8545) creating a Court Supervised Account for Voluntary Deposit of Funds to Compensate and Reimburse Common Benefit Counsel. Distributions from the Court Supervised Account for Voluntary Deposit of Funds will be under the control of Judge Fallon and no release of those funds to counsel will occur without approval of Judge Fallon, who retains authority modify the amount to be paid to the PSC from this fund.

15. The Fund Administrator shall design and administer a fund allocation plan and distribute proceeds to Plaintiffs pursuant to the terms of that allocation plan.

16. All expenses incurred in the settlement of claims shall be allocated to the Fund, including any escrow fees and the fees of the Fund Administrator, and shall not be the responsibility of the at-fault parties. All taxes on the income of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, the expenses of tax attorneys and accountants for reasonable and ordinary services incurred in preparing and filing of the Fund's annual income taxes) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be paid as instructed by the Fund Administrator without prior order of the Court.

17. The Fund Administrator will prepare and deliver monthly Fund Statements ("Statements") to Counsel and this Court. Such Statements shall include a statement of receipts, investment earnings, and disbursements and shall be provided to the requesting party no later than ten (10) business days following the request.

18. The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the Fund Administrator to be

genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in its reasonable judgment, to be genuine and sufficient.

19. Upon completion of all Fund Agreements and final distribution of all monies to be paid into the Fund, the Fund Administrator shall take appropriate steps to wind down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

20. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the Fund upon the execution of an Order by this Court establishing the Fund.

**WHEREFORE**, Plaintiffs, by and through counsel for Plaintiffs, respectfully request that the Court consent to take continuing jurisdiction over the Fund pursuant to Treas. Reg. Section 1.468B-1(c)(1), and issue an Order that:

1. Establishes the Fund as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1;

2. Appoints the Garretson Firm Resolution Group, Inc. as Fund Administrator and Trustee to design and administer the fund allocation plan pursuant to the terms, conditions and restrictions of this Motion, thereby granting the Fund Administrator the authority to conduct any and all activities necessary to administer the Fund as described in this Motion;

3. Releases Participating Defendant Ramirez and Participating Insurer Auto-Owners Insurance of Michigan from any alleged civil liability or actual civil liability relating to Plaintiffs' claims against Ramirez under the Litigation, and dismiss these defendants with prejudice from these consolidated matters;

4. Authorizes the Fund Administrator to distribute all attorneys' fees and litigation expenses to Counsel with the Court's approval and;

5. Authorizes the Fund Administrator, upon completion of all Fund Agreements and final distribution of all monies paid into the Fund, to take appropriate steps to wind down the fund and thereafter discharges the Fund Administrator from any further responsibility with respect to the Fund.

May 29, 2013

                                              Respectfully submitted:

*[signature]*

Richard J. Serpe, Esq. - VA Bar No. 33340
LAW OFFICES OF RICHARD J. SERPE, P.C.
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510
Phone : (757) 233-0009
Facsimile : (757) 233-0455
*Counsel for Plaintiffs*

Richard S. Lewis, Esq.
Kristen M. Ward, Esq.
HAUSFELD, LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Fred S. Longer, Esq.
Arnold Levin, Esq.
Daniel Levin, Esq.
Matthew C. Gaughan, Esq.
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Facsimile: (215) 592-4663
*Co-counsel for Plaintiffs*

>Jeffrey A. Breit, Esq.
>Michael F. Imprevento, Esq.
>John W. Drescher, Esq.
>BREIT, DRESCHER, IMPREVENTO & WALKER, P.C.
>Towne Pavilion Center II
>600 22nd Street, Suite 402
>Virginia Beach, VA 23451
>Phone: (757) 622-6000
>Facsimile: (757) 670-3939
>*Co-counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2013, a true and correct copy of the foregoing motion was sent via e-mail and via U.S. mail, postage prepaid, to the following:

Richard K. Bennett, Esq.
rbennett@hccw.com
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, VA 23255
Phone: (804) 747-5200
Facsimile: (804) 747-6085
Counsel for Defendant, Carlos Ramirez

_____
Richard J. Serpe