## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:**<br><br>***Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Case No.: 2:11-cv-1395 (E.D.La.)** | |

### <u>NOTICE OF FILING</u>

PLEASE TAKE NOTICE that the Plaintiffs' Steering Committee (PSC) hereby submits and files of record the attached Answer to Complaint by Defendant Shandong Oriental International Trading Corp., Ltd.

Respectfully submitted,

Dated: June 25, 2013

/s/ Russ M. Herman_____
Russ M. Herman, Esquire (LA Bar No. 6819)
Leonard A. Davis, Esquire (LA Bar No. 14190)
Stephen J. Herman, Esquire (LA Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
The Steckler Law Firm
12700 Park Central Drive, Ste 1900
Dallas, TX 75251
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
 Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 25th day of June, 2013.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*Co-counsel for Plaintiffs*

# 民　事　答　辩　状

路易斯安那州东部地区美国地方法院　民事诉讼案号码：11-1395 部门 L

答辩人（被告）：山东省东方国际贸易股份有限公司（以下简称"东方公司"）

　　住所地：中国山东省青岛市太平路 51 号山东国贸大厦 19 楼 1902 房间

　　法定代表人：赵广敏　　职务：董事長

被答辩人（原告）：爱德华多.艾莫林和卡门.艾莫林等人


　　因上述原告等人诉称由于"中国制造"的纸面石膏板的质量问题所导致的相关侵权责任，答辩人作为被告之一，被诉至路易斯安那州东部地区美国地方法院。2013 年 4 月 22 日收到贵院民事诉讼传票，现答辩人根据起诉书中所列明的事实及原告的诉讼请求，答辩如下：

　　**一、答辩人只是从事外贸代理的公司，不参与石膏板的生产制作过程，不应对原告所称的石膏板质量问题承担任何责任。**

　　2006 年 2 月 8 日，美国 HLP/GAC INTERNATIONAL, INC 公司（以下简称"HLP 公司"）与答辩人东方公司签署了一份买卖合同（附件一），委托东方公司代理出口 20 万张石膏板。HLP 公司是替美国零售商 BULLDERS GYPSUM SUPPLY 采购的。经过 HLP 公司派出代表到中国市场考察，最终指定泰安市泰山纸面石膏板有限公司（以下简称"泰山石膏板公司"）生产该批石膏板。为此，HLP 公司委托东方公司与泰山石膏板公司签订了《订货合同》（附件二），按照 HLP 公司要求，在双方合同中明确了该石膏板的质量要以美国 ASTM C36 和 C1396 为生产标准。

　　2006 年 2 月 16 日，中国国家建筑材料工业装饰装修建筑材料质量监督

检验测试中心出具了《检验报告》（附件三），认定该批石膏板符合 ASTM C1396/C 1396M-04 的标准。3 月 8 日，在该批货物装船之前，HLP 公司又委托全球最权威的检验公司 SGS-CSTC Standard Technical Services Co.，Ltd 公司（以下简称"SGS 公司"）对该批石膏板做了货物装船前的检测，SGS 公司对该批货物检测后出具了《检验合格证书》（附件四），对该批石膏板的质量予以认可。2006 年 7 月 12 日，该批货物到达合同指定的美国休斯顿港口。

首先，从以上石膏板的购买、生产过程来看，答辩人不是 20 万张石膏板的制造商，也不是该批石膏板的实际质量控制人，只是受 HLP 公司委托办理 20 万张石膏板的代理出口事宜。答辩人东方公司没有自定生产厂家，也从未参与石膏板的生产制造，答辩人从未对石膏板的质量和品质进行任何形式的改变和影响，而答辩人东方公司作为出口代理商，事实上也根本不可能对货物的质量和品质产生任何影响。

其次，根据答辩人东方公司和生产厂家泰山石膏板公司之间《订货合同》第八条的约定"交货后如因货物数量短缺、生产质量问题，造成外商索赔、退货等事宜，一切损失由供方承担"。也即是说，正如《中华人民共和国产品质量法》的规定，双方在《订货合同》中严格按照《中华人民共和国产品质量法》的法律规定，约定了在石膏板产品质量造成损失的情况下，由生产厂家承担一切赔偿责任。该工厂已被列为被告之一。

因此，答辩人既不是 20 万张石膏板的生产制造商，也不是该批货物的质量控制人，不应当承担由于货物质量问题所导致的法律责任，相关货物质量问题的法律责任应当由货物的生产制造商全部承担。原告将答辩人东方公司列为被告之一，并请求法院判令答辩人承担相应的货物质量责任，没有任何

事实依据和法律根据。

二、答辩人只是受美国 HLP 公司的委托和指定办理该批石膏板的出口事宜，并不参与其购买的石膏板的指定出售，不应承担原告所诉"购买或出售泰山公司石膏板"的相关责任。而应该承担购买或出售该批石膏板责任的应该是美国 HLP 公司和零售商 BULLDERS GYPSUM SUPPLY，该公司没有成为该诉讼案件的被告。

按照 HLP 公司的指示，答辩人将 20 万张石膏板联系承运事宜，由于种种原因，货物抵达美国目的港的时间比预计晚了约 30 余天。同时，HLP 公司发现该批石膏板破损超过 30%，查明原因是：一是船方积载不当，货物积载层数和高度超过了租船合同的规定，造成部分货物积压受损；二是船方在货物装运后，在该批货物的上方装载过其它重物，造成货物受压破碎；三是船方在货物装船加固后，船方为了装载其它货物，在运输过程中又对该批货物重新倒过仓，造成船舱内大部分货物的外包装破损。为此，HLP 公司以货物抵达目的港逾期和货物受损严重等理由，拒绝接收货物。后答辩人与 HLP 公司多次交涉未果，至今未支付给答辩人任何货款。

2006 年 10 月， WACHOVIA BANK,N.A 银行将 HLP 公司起诉至美国德克萨斯州 55 区法院（见证据五），在没有通知答辩人东方公司的情况下，并与 HLP 公司达成和解，将上述石膏板由 HLP 公司进行销售（见证据六），所得货款部分用于偿还银行费用。

从以上过程来看，答辩人东方公司只是相关货物的出口代理商，事实上该批货物开始由 HLP 公司指定生产厂家，最终又由 HLP 公司进行出售。答辩人没有指定货物的销售方向，更没有权力对货物进行出售。因此诉状中提到

的答辩人东方公司"购买或出售带有英文标记、为在美国出售或再售而设计的泰山公司墙板产品"没有任何事实依据和法律根据。

**三、答辩人作为一个外贸出口代理商，已完成了合同约定的义务，并尽到了足够的谨慎注意的义务，保证了该批石膏板质量完全符合合同约定和出口的标准。**

答辩人东方公司按照与 HLP 公司的合同约定，该批石膏板严格按照美国 ASTM C36 和 C1396 标准生产的，并由中国最权威的国家建筑材料工业装饰装修建筑材料质量监督检验测试中心进行了严格检验，并取得了该批石膏板的产品质量检验合格证书。

按照合同约定，在货物装船以前，HLP 公司又申请全球最权威的检验公司 SGS 公司对货物进行进一步的检验。最终，由 SGS 公司作出的货物质量检验合格证书，已完全证明上述纸面石膏板货物的质量没有任何问题。

另外，为了稳妥起见，在货物出口前，答辩人东方公司又和 HLP 公司签署了一份关于货物质量的补充协议（附件七），HLP 公司通过 SGS 的检测报告，非常清晰的知悉货物的质量，并且完全接受上述货物，上述货物是完全按照双方买卖合同的约定所生产的货物，买方不会以任何理由而拒绝支付货款。

由此看来，答辩人东方公司作为一个外贸代理商，不但在签订合同时，而且在货物生产出来以后及装船之前的实际检验过程中，均尽到了履约义务，确保了货物质量符合美国关于纸面石膏板的严格标准的要求和进出口贸易标准。不知原告等人所提出的石膏板"质量问题"从何而来？

综上所述，答辩人作为 20 万张石膏板货物的出口代理商，已尽到对石膏板货物质量全部的、足够的谨慎注意义务。退一步讲，即使该票货物存在质

量问题，原告等人也应当直接向该批货物制造商主张侵权责任，而不应当向作为出口代理商的答辩人东方公司主张任何权利。原告等人向答辩人主张对象错误，原告等人应当将全部有关纸面石膏板的设计、制造、销售、批发、零售、检测等法律主体列为本案被告，否则对于答辩人来讲，既不符合情理，也是非常不公平的。答辩人东方公司只是一家经营纺织品的外贸公司，只是在朋友的介绍下，帮助 HLP 公司在中国采购了一批石膏板，在这笔业务之前和该业务之后，再从未从事过石膏板业务。

因此，请求路易斯安那州东部地区美国地方法院驳回原告等人对答辩人东方公司的全部诉讼请求。

此致
路易斯安那州东部地区美国地方法院


答辩人：山东省东方国际贸易股份有限公司
2013 年 6 月 3 日

# 证据目录

证据一：山东省东方国际贸易股份有限公司和美国 HLP/GAC INTERNATIONAL，INC 公司之间的《买卖合同》

证据二：山东省东方国际贸易股份有限公司和泰安市泰山纸面石膏板有限公司之间的《订货合同》2 份

证据三：中国国家建筑材料工业装饰装修建筑材料质量监督检验测试中心出具的《检验报告》（No.062019）

证据四：SGS-CSTC Standard Technical Services Co.，Ltd 公司出具的《检验报告》

证据五：WACHOVIA BANK,N.A 银行与美国 HLP/GAC INTERNATIONAL，INC 公司案件诉讼判决书

证据六：美国 HLP/GAC INTERNATIONAL，INC 公司出售石膏板销售协议

证据七：山东省东方国际贸易股份有限公司和美国 HLP/GAC INTERNATIONAL，INC 公司之间的《补充协议》

证据提交人：山东省东方国际贸易股份有限公司

2013 年 6 月 3 日

# CIVIL BILL OF DEFENSE

UNITED STATES DISTRICT COURT FOR EASTERN DISTRICT OF LOUISIANA

Civil case No.: 11-1395 Department: L

Respondent (Defender): Shandong Oriental International Trading Corp. Ltd. (hereinafter "Oriental")

Address: Room 1902, 19th Floor, Shandong International Trade Building

51 Taiping road, Qingdao City, Shandong Province, China

Legal representative: Zhao Guangmin, Position: Chairman of the Board of Directors

Responding to (Plaintiff): Edward Amerlin and Kamen Amerlin, etc.

Whereas, the plaintiffs above complain the tort liability caused by the quality problems in the Chinese-manufactured paper surface gypsum board. The Respondent, as one of the defenders, was sued in the United State District Court for the Eastern District of Louisiana. The Respondent received the Bill of Summons for Civil Litigation of your Court on April 22, 2013, hereby defends as follows upon facts listed in the complaint and the plaintiffs' claims:

**I  The Respondent is only a foreign trade agent, does not involve the production or manufacture of gypsum boards, and should not bear any liability of quality problems claimed by the plaintiffs.**

On February 8, 2006, HLP/GAC INTERNATIONAL, INC（hereinafter as "HLP" for short）in the United States signed a SALES CONTRACT (Annex 1) with the Respondent Shandong Oriental International Trading Corp. Ltd. acted as the agent for export of 200,000 gypsum boards. HLP purchased the gypsum

1

boards for BULLDERS GYPSUM SUPPLY, a retailer in the United States. HLP sent representatives to investigate the Chinese market, and finally appointed Taian Taishan Plasterboard Co., Ltd. (hereinafter as "Taishan Plasterboard" ) to produce the gypsum boards. Hence, HLP entrusted Oriental to sign Order Contract (Annex 2) with Taishan Plasterboard. According to the requirements of HLP, it is stipulated in the Contract that the production standard on the quality of the gypsum board shall be ASTM C36 and C1396.

On February 16, 2006, the Quality Supervision Inspection and Test Center of China National Building Materials Industry Decoration and Fitting-Up Building Materials issued an Inspection Report (Annex 3), which determined that the gypsum boards were in compliance with the standard of ASTM C1396/C 1396M-04. On March 8, before loading the goods on ship, HLP engaged SGS-CSTC Standard Technical Services Co., Ltd. (hereinafter as "SGS" in short) which is the most authoritative inspection company in the world to make pre-shipment inspection on the gypsum boards. SGS inspected the goods and issued an Inspection Acceptance Certificate (Annex 4), attesting the acceptable quality of the gypsum boards. On July 12, 2006, the goods arrived to the Port of Houston in the United States stipulated in the Contract.

First, from the process of sales and production of the gypsum boards, the Respondent is not the manufacturer or the actual quality controller of the 200,000 gypsum boards, only an agent entrusted by HLP to export the 200,000 gypsum boards. The Respondent did not determine the manufacturer and has never taken part in the production or manufacture of gypsum boards. The

2

Respondent has never made any change or influence on the quality of the gypsum boards. Actually, as an export agent, it is impossible for the Respondent to make any influence.

Moreover, according to the Article 8 in the Order Contract between the Respondent and the manufacturer, "After the delivery, if the foreign customer claims or returns the goods due to shortage of goods or quality problem in production, the Supplier shall bear all the loss." The two parties signed the Order Contract strictly according to the Product Quality Law of the People's Republic of China, it is agreed that if there is loss due to the quality of the gypsum boards, the production factory shall hold all the compensation liabilities. The production factory has been listed as one of the defendants.

Therefore, the Respondent is neither the manufacturer nor the actual quality controller of the 200,000 gypsum boards, should not bear any legal responsibilities for the quality problems in the goods, the production factory shall hold all the compensation liabilities. Now the Plaintiff listed the Respondent as one the defendants and asks the Court to decide that the Respondent bear relevant responsibilities for the quality problems in the goods, there is not any factual basis or legal basis.

**II  The Respondent only handled export affairs of the gypsum boards entrusted by HLP in the United States, does not involve the appointed sales of the gypsum boards, and should not bear any liability related with "purchase and sales of gypsum boards of Taishan Company" claimed by the plaintiffs. HLP and the retailer BULLDERS GYPSUM SUPPLY should**

3

**bear the liability related with purchase and sales of gypsum boards, but the companies have not become the defendants of the case.**

According to the order of HLP, the Respondent contacted with the carriage of the 200,000 gypsum boards. When the goods arrived at the destination port in the United States, it was about 30 days later than estimated time of arrival due to various reasons. In the mean time, HLP found that over 30% of the goods were damaged. The reasons found out are: 1) improper stowage. The layers and height of stowage exceeded those required in the charter contract, resulting in a part of the goods being squeezed and damaged; 2) the carrier had stowed other heavy goods on top of the gypsum boards, resulting in squeezing and breaking of the gypsum boards; and 3) the carrier had moved the goods during the shipment after the goods had been shipped on board and fastened, in order to make room for other goods to be stowed, causing damage to outer package of most of the gypsum boards. As a result, the consignee refused to take delivery of the goods at the port of destination on the ground of late delivery and severe damages suffered by the goods. After that, the Respondent negotiated several times with HLP but the two parties cannot agree with each other. Not a cent has been paid to the Respondent for the goods up to now.

In October 2006, WACHOVIAQ BANK, N.A sued HLP in the 55 District Court of Texas, U.S.A.(See Evidence No. 5), and reached reconciliation with HLP without notice to the Respondent Oriental. Then the gypsum boards were sold by HLP (See Evidence No. 6), and part of the payment from the goods was paid to the Bank.

4

From the process above, the Respondent Oriental is only an export agent for the goods. In fact, HLP appointed the production factory for goods at the beginning and sold the goods in the end. The Respondent did not appoint the sales of the goods and has no power to sell the goods. Thus, there is not any factual basis or legal basis for those mentioned in the Complaint: the Respondent Oriental "purchased or sold the products of Taishan Company's Boards that have English marking and were designed for sale or re-sale in the United States".

**III. As an export agent, the Respondent has performed the obligations agreed in the contract, and has taken the obligations of enough care, so that the quality of the gypsum boards was controlled to be in accordance with the contract and the export standards.**

According to the Sales Contract between HLP and the Respondent, the gypsum boards were produced strictly according to the ASTM C36 and C1396 standards in the United States, were inspected strictly by the most authoritative State Quality Control, Inspection and Testing Center for Building Material Industrial Decoration Materials, and the quality certificate for the gypsum boards above was issued.

According to the contract, HLP engaged SGS, the most authoritative inspection company in the world, to make further inspection on the gypsum boards. SGS finally issued a Quality Inspection Acceptance Certificate, attesting that there is no quality problem in the gypsum boards.

Moreover, in order to be safer, the Respondent signed a supplementary agreement (Annex 7) for quality of goods before export with HLP. Through the

SGS Inspection Report, the HLP has clearly known about the quality of the goods, accepts the goods above completely, the goods above were produced completely according to the contract signed by the two parties, and the buyer will not refuse the payment of goods with any reason.

Hence, as a foreign trade agent, the Respondent performed the obligations in the agreements, not only at time of signing the contract, but also in the actual inspection after production and before shipment of the goods, so that the quality of goods has met the requirements in the strict standards for gypsum boards in the United States as well as the standards of import and export. Where does the "quality problem" claimed by the plaintiff come from?

All in all, the Respondent, as the export agent of the 200,000 gypsum boards, has performed all the obligations of enough care for the quality of gypsum boards. Even if there is quality problem in the shipment of goods, the plaintiff should claim the tort liability directly upon the manufacturer of goods instead of the Respondent who acted as the export agent. The plaintiff claiming upon Respondent is mistaken in subject. The plaintiff should list as defendants all the legal subjects in design, manufacture, sales, whole sale, retail and inspection, otherwise it will be neither reasonable nor fair to the Respondent. The Respondent Oriental is only a foreign trading company managing textiles, helped HLP to purchase the gypsum boards in China with introduction of friends. It never did business in gypsum boards before or after the business involved in this case.

Hence, we hereby ask the United States District Court for the Eastern District of

Louisiana to reject all the claims of the plaintiffs upon the Respondent Oriental.


Regards


United State District Court for the Eastern District of Louisiana


The Respondent: Shandong Oriental International Trading Corp. Ltd.

Date: June 3, 2013

# List of Evidence

Evidence No. 1: Purchase and Sales Contract between Shandong Oriental International Trading Corp. Ltd. and HLP/GAC INTERNATIONAL, INC

Evidence No. 2: Order Contract between Shandong Oriental International Trading Corp. Ltd. and Taian Taishan Plasterboard Co., Ltd.

Evidence No. 3: Inspection Report issued by Quality Supervision Inspection and Test Center of China National Building Materials Industry Decoration and Fitting-Up Building Materials (No. 062019)

Evidence No. 4: Inspection Report issued by SGS-CSTC Standard Technical Services Co., Ltd.

Evidence No. 5: Judgment Paper for the case between WACHOVIA BANK, N.A and HLP/GAC INTERNATIONAL, INC in U.S.A.

Evidence No. 6: Sales Agreement of HLP/GAC INTERNATIONAL, INC in U.S.A. for selling Gypsum Boards

Evidence No. 7: Supplementary Agreement between Shandong Oriental International Trading Corp. Ltd. and HLP/GAC INTERNATIONAL, INC in U.S.A.

Submitted by: Shandong Oriental International Trading Corp. Ltd.

Date: June 3, 2013

8

2-1

# SALES CONTRACT

No.06IB1001

| | | |
|---|---|---|
| **Sellers:** | SHANDONG ORIENTAL INTERNATIONAL TRADING CORP., LTD. | Date: FEB 8,2006 |
| **Address:** | 51, TAIPING ROAD, QINGDAO, CHINA | Signed At Qingdao |
| | Tel: 0086-532-82971786          Fax: 0086-532-82971778 | |

| | |
|---|---|
| **Buyers:** | HLP/GAC INTERNATIONAL, INC. |
| **Address:** | 1718 TRINITY VALLEY DRIVE, SUITE 202 |
| | CARROLLTON, TEXAS 75006 U.S.A |
| | Tel: 001-972-24616/6362          Fax: 001-214-498 1868 |

We confirm having sold to you the following goods on terms and conditions set forth below:

1. **Name of Commodity:**   GYPSUM BOARD
   **Specifications:**   1220x3660x12.4-12.7mm, each sheet shall weight less than 39.91kg, 60 mm tapered edge, the gypsum boards shall have made in China printed on the back and Non-printed white paper end tape connecting two boards on each tape.   All gypsum boards are to be manufactured in accordance to specification standards ASTM C36 and ASTM C1396, delivered to Port in China, loaded onto vessel and shipped to designated ports in the United States.

| Quantity | Unit Price | Total Price |
|---|---|---|
| 100,000 | 7.21USD/SHEET CIF HOUSTON | 721,000.00USD CIF HOUSTON |
| 100,000 | 7.21USD/SHEET CIF PENNSACOLA | 721,000.00USD CIF PENNSACOLA |

2. **Total Value of the Contract:** THE US DOLLAR IS ONE MILLION FOUR HUNDRED FOURTY TWO THOUSAND.



3. **Packing:**   The packing of each 76 sheet-1/2" pallet consisted of wrapping them with 6 pieces of rejected boards on each side to protect against damage; pallet construction shall be of wood or man-made board to allow forklift loading. Each pallet should be wrapped in two separate plastic sheets and belts to further protect against damage and moisture, and shall be marked for Handling with Care/Keep Dry/This Side Up on each pallet. Manufacturer shall document in writing:   We hereby certify that the gypsum boards (goods) were manufactured in accordance with ASTM C36 and ASTM C1396, were properly palletized, wrapped, sealed to protect them against damage in shipment the pallets are pre-slung and stacked only 5 pallets high.   All wood material used in packaging shall meet the requirements of the United States Code 7 CFR paragraph 319 for shipping wood treatment.

4. **Insurance:**   Insurance to be effected by sellers for 110% of the invoice value against All Risks and War Risks as per Ocean Marine Cargo and War Clauses of the People's Insurance Company of China dated 1/1/1981, including risk of destruction.

5. **Shipping Marks:** L/G-022006

6. **Port of Shipment:** Any port of China

7. **Port of Destination:** HOUSTON,TX and PENNSACOLA ,FL of U.S.A

8. **The Latest Date of Shipment:**   FEB   25th,2006

7-1-

**9. Terms of Payment:**

Before Feb 15th 2006, the buyer shall open an irrevocable Letter of Credit at sight cover 100% with the amount of shipped goods value, in favor of the Seller, by a first class bank in the world, acceptable by the Seller's bank, negotiable with any bank in China.   And this letter of Credit remain valild for negotiation in China within 21days after the date of shipment.

Banking information of the Seller:

      BANK:            BANK OF CHINA, SHANDONG BRANCH
      ADDRESS:         BANK OF CHINA, SHANDONG BRANCH.
                       NO 37 HONGKONG MIDDLE ROAD, QINGDAO, CHINA
      TEL: +86-532-85973065          FAX: +86-532-85754802
      SWIFT NO:      BKCHCNBJ500
      BENEFICIARY:   SHANDONG ORIENTAL INTERNATIONAL TRADING CORP., LTD.
      ACCOUNT NO.    00682008091001

**10.Shipping Documents:**

The seller shall present the following documents.

(1) Full set of original clean on board ocean Bills of Lading, made out to order of shipper, blank endorsed, notifying applicant, marked " freight prepaid", indicating that the cargo in the hatch of vessel.   The Charter Party Bill of lading are acceptable.

(2) One original and 3 copies Commercial Invoice issued and signed by the Seller, showing description of goods, quantity, value under CIF terms,

(3) Packing list showing the actual quantity of goods loaded on board issued and signed by the Seller.

(4) Certificate of Origin issued by relative authority such as China council for Promotion of International Trade or Certificate of "FORM A" issued by China Entry/Exit Inspection and Quarantine Bureau (CIQ).

(5) Certificate of quality issued by China Entry/Exit Inspection and Quarantine Bureau (CIQ).

(6) Insurance Policy covering all risks, war risk for 110% full CIF value of shipped goods on board of ocean vessel, indicating that claims are payable in the USA, and indicating the name of agent located in USA.

**11. Term of Shipment:**   The carrying vessel shall be arranged by the seller, Partial shipments not allowed and transshipments not allowed.

**12. Pre-shipment survey on quality and quantity:**   The Seller will notice the Buyer the cargo preparation condition timely including cargo deliver rate, processing status.   The Buyer may instruct their representative, on their own expense, to pre-inspect and re-inspect the cargo before shipment, or at presence for supervision when loading the cargo into vessel.   The Seller is to render all necessary assistance/cooperation to buyer's representative.   The Seller guarantees that they will deliver the goods according to the request to Buyer.

**13. Weight and quality determination**

(1) The Seller shall appoint Inspectorate or CIQ at the loading port to survey the quality of cargo at the Seller's expense.   The Buyer may appoint its representative on their own expense, to be at presence when this survey (inspection) is performing.   This kind of survey (inspection) will be final and binding on both parties for settlement on disputes.

(2) Quantity of cargo should be determined by vessel draft survey conducted by Inspectorate or CIQ.   The Buyer may appoint its representative on their own expense, to be at presence when this survey is performing.   This kind of survey will be final and binding on both parties for settlement on disputes.

**14. Claims:**   Claims for damage should be raised by the Buyers with the Sellers within 30 days after the goods arrival at destinations which must be supported by sufficient evidence for seller's reference, and must be

2-5

beyond the responsibility of insurance company or shipping company.

15. **Force Majeure:** The Seller shall not be held responsible if they owing to Force Majeure cause or causes fail to make delivery within the time stipulated in this Sales Contract or cannot deliver the goods, however the Seller shall inform the buyer immediately.

16. **Arbitration:** All disputes arising from the execution of or in connection with this Contract shall be settled amicably through friendly negotiation. In case no settlement of the dispute can be reached through negotiation within 60days after it is filed. The case shall be submitted to China International Economic and Trade Arbitration Commission, Peking for arbitration in accordance with its Arbitral Rules of Procedure of the said Commission. The decision made by the Arbitration shall be accepted as final and binding upon both parties.

17.**Automatic Application:** The following provisions including Cargoes's risk, transfer of rights as well as pending issues shall be applied to the provisions of 1990 International Rules for Interpretation of Trade Terms and Sales contract Pledge for International Cargoes of the United Nations.

18.**Remarks:**

Discharge rate:

- CQD, buyer should discharge the cargo immediately upon completion of joint inspection
- NOR to be tendered as per Gencon.

Detention: CQD applicable, should buyer cannot discharge the cargo according to the Gencon discharging cargo practice or should the customs documents not ready upon the vessel arrival, so thus causing the detention of vessel. The detention amount to be borne by buyer as per governing C/P or fixture note. The detention amount to be 11,000.00USD per day

Should the Buyer delay the production of the letter of credit and this delay results in detention cost to the Seller, the Buyer shall reimburse the Seller the actual cost of detention up to 11,000.00USD per day.

19. This contract become effective after the seller receipt the valid and acceptable Letter of Credit issued by buyer' bank..

The Seller

The Buyer

HCP/GAC
Lee Puci
VicePresident

4+

# 订货合同

供方：泰安市泰山纸面石膏板有限公司          合同编号：__06IB1001__
需方：山东省东方国际贸易股份有限公司          签订地点：_____

一、产品名称、规格、数量、金额

| 产品名称 | 规格<br>（mm） | 数量<br>（万张） | 单价<br>（元/张） | 总金额<br>（人民币：元） |
|---|---|---|---|---|
| 纸面石膏板 | 1220X3660X12.7 | 20 | 25.033 | 5,006,600.00 |
| 总金额（大写）：伍佰万零陆仟陆佰元整 | | | | |

二、质量标准：以 美国 ASTM C36 和 C1396 为生产标准，严格执行。每张石膏板板面要印有英文 "Made In China"和 "Crescent City Gypsum Incorporated, Manufactured in P.R.C.",字体内容，按照需方提供的样子制版。石膏板的两边沿各要有 40-50 毫米的楔形边（护边），每张板重量≤39.91KG,厚度公差 0—-0.4mm。

三、包装要求：每两张石膏板的（1220mm）两边需用白色无字封边纸带封装，用胶合板托盘底座，每架托盘装 76 张，每架石膏板整体需用两层塑料膜包裹严实；六个表面用石膏板包装，并用钢条捆扎。

四、货运标识：在包装板的板面需印刷需方指定的货运唛头标识。

唛头

| Shipping Marks:<br>L/G-022006 | |
|---|---|
| Goods Name:<br>GYPSUM BOARD | |
| Size: 1220x3660x12.7mm | |



五、交货地点：泰安供方仓库，供方按照需方签发的发货通知书及车牌号码、司机姓名发货，并需将发货明细（发货数量、车牌号码、司机驾照、车辆行车证）等于发货第二天传至需方。

六、交货时间：自需方支付合同预付款后三日内开始供货，并于 02 月 26 日前将全部货物生产完毕。

七、运输方式及费用承担：由需方自理运输，供方负责免费装车，需方车到供方后，供方需

1

4-2

随到随装，最迟装货时间不得超过车到后 12 小时。需方工厂验收，运输费用由需方承担。

八、验收方法及产品质量责任：供方生产的供货产品必须符合美国 ASTM C36 和 C1396 标准，并由国家建筑材料工业装饰装修建筑材料质量监督检验测试中心出具检验报告，该报告需向需方提供复印件。供方供货的产品需向需方提供由中国出入境检验检疫局出具的品质证、商检检验单等文件。交货后如因货物数量短缺、生产质量问题，造成外商索赔、退货等事宜，一切损失由供方承担。

九、结算方式及期限：合同签订后需方向供方支付 30%的预付款供方安排生产。供方每发出货值 100 万元人民币的货物，需方支付 100 万元人民币的货款，最后余款 10 万元人民币，在供方提供全额、有效的增值税发票和本合同规定的有关文件后，需方立即一次性支付剩余货款，若供方提前向需方提供本合同规定的有关文件，需方则不留余款。

十、经济责任：双方必须全面履行合同，违约方负全部经济损失。

十一、解决合同争议的方式：双方在履行合同过程中若发生争议，应通过友好协商解决，协商不成可提交青岛市或泰安市人民法院判决。

十二、供方需向需方出具的有关文件。供方在向需方供货时必须出具以下文件：
1、由国家建筑材料工业装饰装修建筑材料质量监督检验测试中心出具供方产品符合美国 ASTM C36 和 C1396 标准的检验报告（复印件）。
2、中国出入境检验检疫局出具的品质证、商检检验单等文件。
3、供方声明：我们（供方）声明本公司生产并向需方供应的石膏板货物系按照 ASTM C36 和 C1396 标准生产的，完好地装入托盘捆绑封装包装。
4、供方所在地贸易促进委员会签发的产地证明。

十三、本合同一式四份，供需双方各执两份，自签订之日起生效。




| 供方：泰安市泰山纸面石膏板有限公司 | 需方：山东省东方国际商易股份有限公司 |
|---|---|
| 法人代表： | 法人代表： |
| 地址：泰安市岱岳区大汶口后周村 | 地址：青岛市东平路 51 号 |
| 电话：0538-8811077 | 电话：0532-82897786 |
| 开户行：工行磁窑支行 | 开户行：中国银行山东省分行 |
| 账号：1604070509022160022 | 账号：006820128 |
| 税号： | 税号：370202163054927 |
| 日期：2006 年 2 月 12 日 | 日期：2006 年 2 月 12 日 |

4-8

# 订货合同

供方：泰安市泰山纸面石膏板有限公司　　　　合同编号：06IB1001-02

需方：山东金东国际贸易股份有限公司　　　　签订地点：_____

一、产品名称、规格、数量、金额：

| 产品名称 | 规格 (mm) | 数量 (张) | 单价 (元/张) | 总金额 (人民币：元) |
|---|---|---|---|---|
| 纸面石膏板 | 1220X3660X12.7 | 330 | 25.033 | 8411.01 |

（总金额（大写）：捌仟肆佰壹拾壹圆零玖分）

二、质量标准：以 美国 ASTM C36 和 C1396 为生产标准，严格执行，每张石膏板表面要用有英文 "Made in china"和 "Crescent City Gypsum Incorporated, Manufactured in P.R.C" 字样内容，按照需方提供的样子制版。石膏板的两边倒角要有 40-50 毫米的坡形边（护边），每平方板重应≤9.91KG，重误差量 0—-0.4mm。

三、包装要求：每两张石膏板的（1220mm）两边需用白色无字封边纸带封装，用胶合板托盘做底座，每架托盘装 76 张，每架石膏板整体等同两层塑料薄膜包装严密，六个表面有石膏板包装，并用钢条捆扎。

四、发运标识：在包装板的板面需印刷需方指定的货运唛头标识。

唛头

> Shipping Marks:
> L/G-022006
>
> Goods Name:
> GYPSUM BOARD
>
> Size: 1220x3660x12.7mm

五、交货地点：泰安供方仓库。供方按照需方给定的发货通知书及车牌号码、司机姓名发货，并需提供发货明细（发货数量、车牌号码、司机姓名、车辆行车证）等于发货第二天传至需方。

六、交货时间：在需方支付合同预付款后三日内开始供货，并于 02 月 26 日将全部货物生产完毕。

七、运输方式及费用承担：由需方自理运输。供方负责免费装车，需方车到供方后，供方负

4-4

目到随要，最迟装货时间不得超过到车后 12 小时。需方工厂验收，运输费用由需方承担。

八、验收方法及产品质量责任：供方生产的供货产品必须符合美国 ASTM C36 和 C1396 标准，并由国家建筑材料工业装修装饰建筑材料质量监督检验测试中心出具检验报告，该报告作情向需方提供复印件。供方供货的产品需向需方提供由中国进出境检验检疫局出具的品质证、商检检验单等文件。交货后如因货物数量短缺、生产质量问题，造成外箱装箱、退换等有官。一切损失由供方承担。

九、结算方式及期限：合同签订后需方向供方支付 30%的预付款供方安排生产。供方每发出货值 100 万元人民币的货物，需方支付 100 万元人民币的货款，最后余款 10 万元人民币，由供方提供全额、有效的增值税发票和本合同规定的有关文件后，需方立即一次性支付剩余货款，若供方提前向需方提供本合同规定的有关文件，需方则不留余款。

十、经济责任：双方必须全面履行合同，违约方负全部经济损失。

十一、解决合同争议的方式：双方在履行合同过程中若发生争议，应通过友好协商解决，协商不成可提交泰安市人民法院判决。

十二、供方需向需方出具的有关文件：供方在向需方供货时必须出具以下文件：
1. 由国家建筑材料工业装修装饰建筑材料质量监督检验测试中心出具供方产品符合美国 ASTM C36 和 C1396 标准的检验报告（复印件）。
2. 中国出入境检验检疫局出具的品质证、商检检验单等文件。
3. 供方声明：我们（供方）声明本公司生产并向需方供应的石膏板货物系按照 ASTM C36 和 C1396 标准生产的，完好地装入托盘板纸封装包装。
4. 供方所在地贸易促进委员会签发的产地证明。

十三、本合同一式贰份，供需双方各执两份，自签订之日起生效。



供方：泰安市泰山纸面石膏板有限公司　　　需方：山东省东方国际贸易股份有限公司

法人代表：　　　　　　　　　　　　　　　法人代表：

地址：泰安市岱岳区大汶口后周村　　　　　地址：青岛市香港中路 51 号
电话：0538-8811077　　　　　　　　　　　电话：0532-82971796
开户行：工行磁窑支行　　　　　　　　　　开户行：中国银行山东省分行
账号：1604070589022160022　　　　　　　 账号：006820128
税号：　　　　　　　　　　　　　　　　　税号：370202165054927
日期：2006 年 2 月 12 日　　　　　　　　　日期：2006 年 2 月 12 日

2

# PURCHASE CONTRACT

Supplier: <u>Taian Taishan Plasterboard Co., Ltd.</u>         Contract No.: <u>061B1001</u>

Purchaser: <u>Shandong Oriental International Trading Corp. Ltd.,</u>   Place of signing:_____

I Product description, size, quantity and amount of money

| Description | Size (mm) | Quantity (Ten thousand) | Unit price (*Yuan*/piece) | Total amount (RMB: *yuan*) |
|---|---|---|---|---|
| Paper surface gypsum board | 1220×3660×12.7 | 20 | 25.033 | 5,006,600.00 |
| Total amount: Say Five million six thousand six hundred only | | | | |

II Quality standard: The ASTM C36 and C1396 in the United States are used as the standard, and shall be applied strictly. The contents of "Made in China" and "Crescent City Gypsum Incorporated, Manufactured in P.R.C." in English shall be printed on the surface of each gypsum board. The boards shall be manufactured according to the sample provided by the Purchaser. There shall be 40-50mm wedge edge (for protection) on either side of a gypsum board. The weight of each board $\leq$ 39.91KG, and the tolerance of thickness shall be 0 — -0.4mm.

III Package requirements: The two sides of every two boards (1220mm) shall be sealed with wordless white edge seal paper, and the veneer pallet shall be used as seat. Seventy six boards shall be mounted on each pallet, and each integral pallet of gypsum boards shall be packed tightly with 2-layer plastic film. The six surfaces shall be packed with gypsum boards, and shall be bundled with steel cable.

IV Shipping marks: The shipping marks designated by the Purchaser shall be printed on the surface of the packing board.

Marks

| Shipping Marks L/G- 022006 | |
|---|---|
| Goods Name GYPSUM BOARD | |
| Size: 1220×3660×12.7mm | |

V Place of delivery: Supplier's warehouse in Taian. The supplier shall deliver goods according to the consignment note issued by the Purchaser, license plate number and driver's name, and shall fax the details (quantity, license plate number, driving license, vehicle travel license) of the goods delivered to the Purchaser the second day after delivery.

VI Time of delivery: The goods shall begin to be supplied within three days after the Purchaser's

1/3

prepayment according to the Contract, and the production of the goods shall be completed before February 26.

VII Mode of transport and payment of costs: The Purchaser shall be responsible for the transport, and the Supplier shall load the truck free of charge. When the Purchaser's truck arrives to the Supplier, the Supplier shall load the truck immediately, and the latest time of loading shall not exceed 12 hours after the arrival of the truck. The Purchaser shall make the acceptance in the factory and bear the cost of transport.

VIII Acceptance method and product quality responsibility: The supplied products produced by the Supplier must meet the ASTM C36 and C1396 standard in the United States. And the inspection report shall be issued by the State Quality Control, Inspection and Testing Center for Building Material Industrial Decoration Materials, and the copy of the report shall be provided to the Purchaser. The Supplier shall provide the Purchaser such documents as the quality certificate and commodity inspection bill, etc. issued by China Administration for Entry-Exit Inspection and Quarantine. After the delivery, if the foreign customer claims or returns the goods due to shortage of goods or quality problem in production, the Supplier shall bear all the loss.

I X Settlement mode and time: After signing the Contract, the Purchaser shall make 30% prepayment to the Supplier for him to arrange production. Each time when the Supplier delivers the goods worth RMB 1 million, the Purchaser shall pay RMB 1 million. For the RMB100, 000 left, when the Supplier provides the valid VAT invoice of full amount and relevant documents specified in the Contract, the Purchaser shall pay the left money immediately in one time. If the Supplier provides the relevant documents specified in the Contract to the Purchaser in advance, the Purchaser will not keep the left money.

X Economic responsibility: Both parties must implement the Contract completely, and the defaulting party shall be responsible for all the economic loss.

XI Mode of dispute settlement: If any dispute arises during carrying out the Contract, it should be settled through friendly negotiation. If it cannot be solved through negotiation, it shall be submitted to the People's Court in Qingdao or Taian City.

XII Relevant documents that shall be provided to the Purchaser by the Supplier: The Supplier must provide to the Purchaser the following documents while supplying the goods:
1. The inspection report issued by the State Quality Control, Inspection and Testing Center for Building Material Industrial Decoration Materials, certifying that the products supplied by the Supplier meet the ASTM C36 and C1396 Standards in the United States (copy).
2. The quality certificate and commodity inspection bill, etc. issued by China Administration for Entry-Exit Inspection and Quarantine.
3. Declaration of the Supplier: We (the Supplier) declare that the gypsum boards produced by us and supplied to the Purchaser were produced according to the ASTM C36 and C1396 Standards, properly palletized, wrapped, sealed and packed.
4. The certificate of origin issued by the Trade Promotion Committee in the place of the

Supplier.

XIII There are four copies of the Contract, each party holds two copies. The Contract shall come into force after signing.

| | |
|---|---|
| Suppler: Taian Taishan Plasterboard Co., Ltd. (Stamp) | Purchaser: Shandong Oriental International Trading Corp. Ltd. (Stamp) |
| Legal representative: Peng Shiliang    (signature) | Legal representative: Liu Qing (signature) |
| Address: Houzhou Village, Dawenkou, Daiyue District, Taian City | Address: 51 Taiping road, Qingdao City |
| Telephone: 0538-8811077 | Telephone: 0532-82971786 |
| Bank: Industrial & Commericial Bank of China, Ciyao Branch | Bank: Bank of China, Shandong Branch |
| Account number: 1604070509022160022 | Account number: 006820128 |
| Tax number: | Tax number: 370202163054927 |
| Date: February 12, 2006 | Date: February 12, 2006 |

# PURCHASE CONTRACT

Supplier: Taian Taishan Plasterboard Co., Ltd.            Contract No.: 06IB1001-02

Purchaser: Shandong Oriental International Trading Corp. Ltd.,      Place of signing:_____

I Product description, size, quantity and amount of money

| Description | Size (mm) | Quantity (piece) | Unit price (*Yuan*/piece) | Total amount (RMB *yuan*) |
|---|---|---|---|---|
| Paper surface gypsum board | 1220×3660×12.7 | 336 | 25.033 | 8411.09 |
| Total amount: Say Eight thousand four hundred and eleven yuan and nine fen | | | | |

II Quality standard: The ASTM C36 and C1396 in the United States are used as the standard, and shall be applied strictly. The contents of "Made in China" and "Crescent City Gypsum Incorporated, Manufactured in P.R.C." in English shall be printed on the surface of each gypsum board. The boards shall be manufactured according to the sample provided by the Purchaser. There shall be 40-50mm wedge edge (for protection) on either side of a gypsum board. The weight of each board ≤ 39.91KG, and the tolerance of thickness shall be 0—-0.4mm.

III Package requirements: The two sides of every two boards (1220mm) shall be sealed with wordless white edge seal paper, and the veneer pallet shall be used as seat. Seventy six boards shall be mounted on each pallet, and each integral pallet of gypsum boards shall be packed tightly with 2-layer plastic film. The six surfaces shall be packed with gypsum boards, and shall be bundled with steel cable.

I V Shipping marks: The shipping marks designated by the Purchaser shall be printed on the surface of the packing board.

Marks

| | |
|---|---|
| Shipping Marks<br>L/G 022006 | |
| Goods Name<br>GYPSUM BOARD | |
| Size: 1220×3660×12.7mm | |

V Place of delivery: Supplier's warehouse in Taian. The supplier shall deliver goods according to the consignment note issued by the Purchaser, license plate number and driver's name, and shall fax the details (quantity, license plate number, driving license, vehicle travel license) of the goods delivered to the Purchaser the second day after delivery.

VI Time of delivery: The goods shall begin to be supplied within three days after the Purchaser's

prepayment according to the Contract, and the production of the goods shall be completed before February 26.

VII Mode of transport and payment of costs: The Purchaser shall be responsible for the transport, and the Supplier shall load the truck free of charge. When the Purchaser's truck arrives to the Supplier, the Supplier shall load the truck immediately, and the latest time of loading shall not exceed 12 hours after the arrival of the truck. The Purchaser shall make the acceptance in the factory and bear the cost of transport.

VIII Acceptance method and product quality responsibility: The supplied products produced by the Supplier must meet the ASTM C36 and C1396 standard in the United States. And the inspection report shall be issued by the State Quality Control, Inspection and Testing Center for Building Material Industrial Decoration Materials, and the copy of the report shall be provided to the Purchaser. The Supplier shall provide the Purchaser such documents as the quality certificate and commodity inspection bill, etc. issued by China Administration for Entry-Exit Inspection and Quarantine. After the delivery, if the foreign customer claims or returns the goods due to shortage of goods or quality problem in production, the Supplier shall bear all the loss.

I X  Settlement mode and time: After signing the Contract, the Purchaser shall make 30% prepayment to the Supplier for him to arrange production. Each time when the Supplier delivers the goods worth RMB 1 million, the Purchaser shall pay RMB 1 million. For the RMB100,000 left, when the Supplier provides the valid VAT invoice of full amount and relevant documents specified in the Contract, the Purchaser shall pay the left money immediately in one time. If the Supplier provides the relevant documents specified in the Contract to the Purchaser in advance, the Purchaser will not keep the left money.

X  Economic responsibility: Both parties must implement the Contract completely, and the defaulting party shall be responsible for all the economic loss.

XI Mode of dispute settlement: If any dispute arises during carrying out the Contract, it should be settled through friendly negotiation. If it cannot be solved through negotiation, it shall be submitted to the People's Court in Qingdao or Taian City.

XII Relevant documents that shall be provided to the Purchaser by the Supplier: The Supplier must provide to the Purchaser the following documents while supplying the goods:
1.  The inspection report issued by the State Quality Control, Inspection and Testing Center for Building Material Industrial Decoration Materials, certifying that the products supplied by the Supplier meet the ASTM C36 and C1396 Standards in the United States (copy).
2.  The quality certificate and commodity inspection bill, etc. issued by China Administration for Entry-Exit Inspection and Quarantine.
3.  Declaration of the Supplier: We (the Supplier) declare that the gypsum boards produced by us and supplied to the Purchaser were produced according to the ASTM C36 and C1396 Standards, properly palletized, wrapped, sealed and packed.
4.  The certificate of origin issued by the Trade Promotion Committee in the place of the

Supplier.

XIII There are four copies of the Contract, each party holds two copies. The Contract shall come into force after signing.

| Suppler: Taian Taishan Plasterboard Co., Ltd. (Stamp) | Purchaser: Shandong Oriental International Trading Corp. Ltd.(Stamp) |
|---|---|
| Legal representative: | Legal representative: |
| Address: Houzhou Village, Dawenkou, Daiyue District, Taian City | Address: 51 Taiping road, Qingdao City |
| Telephone: 0538-8811077 | Telephone: 0532-82971786 |
| Bank: Industrial & Commericial Bank of China, Ciyao Branch | Bank: Bank of China, Shandong Branch |
| Account number: 1604070509022160022 | Account number: 006820128 |
| Tax number: | Tax number: 370202163054927 |
| Date: February 12, 2006 | Date: February 12, 2006 |

 

№.062019

# 检 验 报 告
## TEST REPORT

产品名称： 石 膏 墙 板
P R O D U C T： Gypsum Wallboard

委托单位： 泰安市泰山纸面石膏板有限公司
ENTRUSTED BY： Taian Taishan Plasterboard Co.,Ltd.

生产单位： 泰安市泰山纸面石膏板有限公司
MANUFACTURER： Taian Taishan Plasterboard Co.,Ltd.

检验类别： 委 托 检 验
TEST MODE： Delivered Sample Test

国家建筑材料工业
装饰装修建筑材料质量监督检验测试中心
QUALITY SUPERVISION AND INSPECTION CENTER OF NATIONAL BUILDING
MATERIALS INDUSTRY FOR DECORATING AND FINISHING BUILDING MATERIALS

二〇〇六年二月二十六日
Feb. 26, 2006

# 注 意 事 项

## ATTENTION

1. 报告无"检验报告专用章"或检验单位公章无效。
   The test report is invalid if there is no special seal for the test report or the seal of the Inspection Center.

2. 未经检验单位书面批准，不得复制本检验报告（完整复制除外）。
   Unless permitted by the Inspection Center, the test report is forbidden to be duplicated except for the whole test report being duplicated.

3. 报告无编制、审核、批准人签章无效。
   The test report is invalid if there are no signatures of approver, checker and drawer on it.

4. 报告涂改无效。
   The test report is invalid if altered.

5. 对检验报告若有异议，应于收到报告之日起十五日内向检验单位提出，逾期不予受理。
   The objection should be submitted with 15 days after receiving the test report if there is any objection. It will not be acceptable beyond that period of time.

6. 一般情况，委托检验仅对来样负责，抽样检验对该批样负责。
   Generally, delivered sample test only takes responsibility for the sample delivered. Sampling inspection takes responsibility for the batch of the product.

地　　址：浙江省杭州市中山北路 450 号
Address:　450 Zhongshan Road, Hangzhou, Zhejiang, People's Republic of China

邮政编码：　310003
Zip code:　310003

电　　话：　(0571) 85067586
Telephone:　0086-0571-85067586

传　　真：　(0571) 85063796
F　a　x：　0086-0571-85063796

# 国家建筑材料工业
## 装饰装修建筑材料质量监督检验测试中心
Quality Supervision and Inspection Center of National Building
Materials Industry for Decorating and Finishing Building Materials

# 检 验 报 告
## TEST   REPORT

№. 062019                                          共 2 页   第 1 页   (page 2-1)

| 产品名称<br>Product | 石膏墙板<br>Gypsum Wallboard | 型号规格<br>Type and<br>Dimension | 3660mm×1220mm×12.7mm |
| --- | --- | --- | --- |
| | | 商　标<br>Trademark | 泰山 |
| 委托单位<br>Entrusted by | 泰安市泰山纸面石膏板有限公司<br>Taian  Taishan  Plasterboard<br>Co.,Ltd. | 检验类别<br>Test Mode | 委托检验<br>Delivered Sample Test |
| 生产单位<br>Manufacturer | 泰安市泰山纸面石膏板有限公司<br>Taian  Taishan  Plasterboard<br>Co.,Ltd. | 样品等级<br>Sample Grade | 合格品<br>Qualified |
| 抽样地点<br>Sampling Site | / | 样品状态<br>Sample State | 完好，适合检验<br>Well, Suitable To Be Tested |
| 样品数量<br>Sample Quantity | 1 组<br>A Set | 送样日期<br>Delivered Date | 2006.2.12<br>Feb. 12, 2006 |
| 抽样基数<br>Cardinal Number | / | 抽样者<br>Sampling Authority | / |
| 检验依据<br>Test Based Upon | ASTM C 473-03 | 生产日期<br>Produced Date | 2006.02.09<br>Feb. 9, 2006 |
| 判定依据<br>Judgement Based Upon | ASTM C 1396/C 1396M-04 | 检验项目<br>Test Item | 全项（除火焰传播系数）<br>Overall (except flame spread index) |
| 检验结论<br>Conclusion | 按照美国标准 ASTM C 473-03《石膏板产品物理力学性能测试方法》中方法 A 对石膏墙板 (3660mm×1220mm×12.7mm) 进行委托检验，检验结果为所测指标符合 ASTM C 1396/C 1396M-04《石膏板》标准要求。<br>　　The product (3660mm×1220mm×12.7mm) of gypsum wallboard delivered by the manufacturer was tested in accordance with the method A of test methods ASTM C 473-03 *Test Methods for Physical Testing of Gypsum Panel Products*. The conclusion is that the testing datum of the product meets the ASTM C 1396/C 1396M-04 *Gypsum Board*.<br>签发日期: 2006 年 2 月 16 日<br>Signed Date: Feb. 16, 2006 | | |
| 备　注<br>Remarks | 本检验报告仅对来样负责，有效期为壹年<br>The test report is responsible only for the sample delivered by the manufacturer. The valid period of the test report will only be within one year exactly after the signed date. | | |

批　准:                    审　核:                    编　制:

Approver:                  Checker:                   Drawer:

# 国家建筑材料工业
## 装饰装修建筑材料质量监督检验测试中心
### Quality Supervision and Inspection Center of National Building
### Materials Industry for Decorating and Finishing Building Materials

# 检 验 报 告
## TEST    REPORT

№. 062019                                      共2页 第2页 （page 2-2）

| 序 号<br>No | 检 验 项 目<br>TEST ITEM | | | 单位<br>UNIT | 检验结果<br>TEST VALUE | 标准指标<br>STANDARD VALUE |
|---|---|---|---|---|---|---|
| 1 | 断裂荷载<br>Flexural Strength (Breaking Load) | 纵 向<br>Bearing Edges Perpendicular to Panel Length | 正面向上<br>Face Up | N | 561 | ≥489 |
| | | | 正面向下<br>Face Down | | 598 | |
| | | 横 向<br>Bearing Edges Parallel to Panel Length | 正面向上<br>Face Up | N | 223 | ≥178 |
| | | | 正面向下<br>Face Down | | 263 | |
| 2 | 受潮挠度 Humidified Deflection | | | mm | 5.5 | ≤32 |
| 3 | 硬 度<br>Hardness | 板 芯      Core | | N | 128 | ≥67 |
| | | 端 头      End | | | 134 | |
| | | 棱 边      Edge | | | 114 | |
| 4 | 握钉力 Nail Pull Resistance | | | N | 401 | ≥356 |
| 5 | 尺 寸<br>允许偏差<br>Dimensions and Tolerances | 厚 度<br>Thickness | 平 均<br>Average | mm | +0.1 | ±0.4 |
| | | | 最 大<br>Max. | mm | +0.2 | ±0.8 |
| | | 宽 度      Width | | mm | -2 | 0～-3 |
| | | 长 度      Length | | mm | -1 | ±6 |
| | | 楔形棱边深度<br>Tapered Edge Depth | | mm | 0.72 | 0.51～2.29 |
| | | 端头垂直度<br>End Squareness | | mm | 1 | ±3 |
| | | 棱边、端头平直度<br>Edges and Ends | | — | 平直<br>straight | 平直<br>straight |
| 6 | 外观质量      Appearance | | | — | 完好   perfect | 完好   perfect |
| 7 | 火焰传播系数 Flame Spread Index | | | — | / | ≤25 |

说 明<br>SPECIFICATION

按照美国标准 ASTM C 473-03 《石膏板产品物理力学性能测试方法》中方法 A 对该样品进行检验。
The sample was tested in accordance with the method A of test methods ASTM C 473-03 *Test Methods for Physical Testing of Gypsum Panel Products.*

批　准：<br>Approver:

审　核：<br>Checker:

编　制：<br>Drawer:

## SGS-CSTC Standards Technical Services Co., Ltd.

16F Century YuHui Mansion,
No. 73 Fucheng Road,
Beijing China
100036
Tel: (86-10) 68456699
Fax: (86-10) 68457979

中國·北京
海淀區阜成路 73 號
世紀裕惠大廈 16 層
郵編: 100036
電話: (86-10) 68456699
傳真: (86-10) 68457979

**AFFILIATE CODE: F615001**
**CERTIFICATE NO.: CTSQDC0600068**

**Page 1 of 2**

SGS Office: SGS-CSTC Qingdao Branch   Date: 08/May/2006   FILE NO.: QDS060340

## INSPECTION CERTIFICATE

| | |
|---|---|
| Shipper | : SHANDONG ORIENTAL INTERNATIONAL TRADING CORP., LTD 17-21 F SHANDONG INTERNATIONAL TRADE MANSION, 51 TAIPING RAOD, QINGDAO, CHINA PC266002 |
| Buyer | : HLP/GAC INTERNATIONAL, INC. 1718 TRINITY VALLEY CARROLLTON, TEXAS 75006 |
| Purchase Order No. | : N/A |
| Article No. | : 4'X12'X1/2" |
| Product Description | : GYPSUM BOARD, TAPERED EDGE |
| Declared Quantity | : 200,032 PCS |
| Letter of Credit No. | : 5277310 |
| Shipping Mark | : L/G-022006 |
| Packing | : 2632 PALLETS |

For and on behalf of SGS-CSTC
Standards Technical Services Co., Ltd.

Authorized Signature

(Continued)

t is issued, on the Client's behalf, by the Company under its General Conditions of Service printed overleaf.
ttention is drawn to the limitation of liability, indemnification and jurisdiction issues defined therein

er of this document is advised that information contained hereon reflects the Company's findings at the
reention only and within the limits of Client's instructions, if any. the Company's sole responsibility is to
his document does not exonerate parties to a transaction from exercising all their rights and obligations
saction documents.



SGSPAPER
04318689



SGS-CSTC Standards Technical Services Co., Ltd.

7-12

**AFFILIATE CODE: F615001**
**CERTIFICATE NO.:CTSQDC0600068**

Page 2 of 2

In accordance with the buyer's instruction, we conducted Final random inspection and Loading Supervision at the manufacturer' premises at Lianyungang, Jiangsu Province, China on Mar 31-Apr 03 & Apr 18-26, 2006.

Final random inspection according to ANSI / ASQ Z1.4-2003 has been performed on 500 pcs samples against specifications received, defined quality levels.

Loading to vessel was carried out on Apr 18-26, 2006 and the consignment was stuffed into M/V Thermopylae Sierra.

The inspection findings have been communicated by fax No. TAOWT00010640B on Apr 04 and TAOWT00011101 on Apr 27, 2006 to the buyer who in their reply of May 08, 2006 accepted this lot, i.e., authorized issuance of this inspection certificate. Consequently, this lot is considered to conform to the buyer's requirements.

This certificate does not evidence shipment. The above reflects our findings at the time and place of inspection. This certificate does not relieve sellers/suppliers from their contractual responsibilities with regard to quality/quantity of this delivery nor does it prejudice the buyer's right of claim towards his sellers/suppliers for compensation for any apparent and/or hidden defects not detected during our random inspection or occurring thereafter. Where, SGS does not thereby assume any liability whatsoever for any consequences due to subsequent interferences with the vessel and its content.

For and on behalf of SGS-CSTC
Standards Technical Services Co., Ltd.

Authorized Signature

is issued, on the Client's behalf, by the Company under its General Conditions of Service printed overleaf ...ntion is drawn to the limitation of liability, indemnification and jurisdiction issues defined therein

r of this document is advised that information contained hereon reflects the Company's findings at the ...ention only and within the limits of Client's instructions, if any. The Company's sole responsibility is to ...'s document does not exonerate parties to a transaction from exercising all their rights and obligations ...ction documents

SGSPAPER
04318690



NO. 2005-70642

| | | |
|---|---|---|
| WACHOVIA BANK, N.A. | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | |
| | § | HARRIS COUNTY, T E X A S |
| HLP/GAC INTERNATIONAL INC., | § | |
| HARRY LEE PRICE, YAN LUO | § | |
| And LI JUAN WEI | § | 55TH JUDICIAL DISTRICT |

## AGREED ORDER DISSOLVING TEMPORARY RESTRAINING ORDER AND AUTHORIZING DEPOSIT OF DOCUMENTS AND FUNDS INTO REGISTRY OF COURT

CAME ON THIS DAY Plaintiff Wachovia Bank, N.A. and Defendant HLP/GAC

International, Inc., appearing by and through the below-listed counsel of record, and

prayed that this Court enter an Agreed Order confirming the agreement of the parties

which will dissolve the temporary restraining order and allow Defendant to deposit

certain documents and funds in the registry of the Court pending the resolution of this

matter. The Court accordingly enters the following orders:

1.      ORDERED that the Temporary Restraining Order entered on November 2, 2006

in this cause is hereby withdrawn and that the 8,422.2 metric tons (2,632 pallets) of

gypsum board currently at the Woodhouse Terminal, Port of Houston, be allowed to be

sold pursuant to the Oct. 13, 2006 Purchase Order attached hereto as Exhibit "A";

2.      ORDERED that HLP/GAC International, Inc. will file, contemporaneously

herewith, *in camera* with the Court the following original documents: (1) "Third

Original" of the Bill of Lading (No. TSLG-1) for the cargo referenced in this suit; (2) two

(2) original PICC Insurance Certificates (3) the SGS Inspection Certificate; (4) the

Packing List; (5) the Certificate of Origin; (6) the Beneficiary's Certificate signed by

Shangdong Oriental International Trading Co., Ltd.; (7) the Mill Certificate signed by

Taian Taishan Plasterboard Co, Ltd.; (8) the Certificate of Warranty signed by Taian

Taishan Plasterboard Co, Ltd.; (9) the Certificate (referencing Invoice No. 06IB1001)

signed by Taian Taishan Plasterboard Co, Ltd.; and (10) the Certificate (certifying

paragraphs A through E) signed by Taian Taishan Plasterboard Co, Ltd. (true and correct

copies of the foregoing documents are attached hereto as Exhibit "B"). The Court will

hold these originals until further Order or Judgment of this Court; it is further

3.      ORDERED that Nord-Sud Shipping, Inc. is ordered to immediately file with the

Court the "First Original" and "Second Original" of the of the Bill of Lading (No. TSLG-

1) for the cargo referenced in this suit. Nord-Sud Shipping, Inc. will be given seven (7)

days from the date of this order to file any objections or motion for return of the bills of

lading; it is further

4.      ORDERED that HLP/GAC International, Inc. agrees to deposit with the Clerk of

the District Court for Harris County, Texas the outstanding balance ($248,000.00) of the

purchase price from the sale of the 8,422.2 metric tons (2,632 pallets) of gypsum board

reflected in the attached Purchase Order dated October 13, 2006, by instructing the buyer

of the goods pursuant to the Purchase Order to issue a check for the remaining

$248,000.00 payable to "Charles Bacarisse, District Clerk for Harris County, Court

Registry," with copy of the written instructions to be provided to counsel for Plaintiff

(who is authorized to confirm the receipt of the instructions by the buyer), which the

Clerk shall deposit in an interest-bearing account or invest in an interest-bearing

instrument approved by the Court. Upon completion of the sale and loading of the cargo

and after payment and settlement of any additional loading or other expenses charged to

HLP/GAC Int'l, whether due to the delay caused by the original Temporary Restraining

2

Order or not, HLP/GAC Int'l agrees to deposit into the Court Registry the remaining net proceeds from the sale, which are currently in the trust account of their attorneys Sharpe & Oliver, P.C. The Parties agree to submit any necessary further Agreed Order reflecting the exact amount to be deposited, which agreement will not be unreasonably withheld. The Clerk will keep these deposits in the registry of the Court until further Order or Judgment of this Court; it is further

5.      ORDERED that the $100,000.00 bond posted by Plaintiff be returned immediately to Plaintiff upon entry of this Agreed Order; it is further

6.      ORDERED that Wachovia Bank, N.A. shall have no liability whatsoever in connection/relation to the entry of the of the Temporary Restraining Order that is being withdrawn by this Agreed Order.

7.      This Order is entered without prejudice to any party's rights, claims, or defenses made in this lawsuit.

SIGNED this _____ day of _____, 2006.

_____
DISTRICT JUDGE PRESIDING

3



# PURCHASE ORDER:

|  | Date: | PO #: |
|---|---|---|
|  | 10/13/2006 | 06-10132 |

**Buy From:**   HLP/GAC International, Inc.
1718 Trinity Valley Dr.
Carrollton, TX 75006
Main: (972) 241-1914
Fax:   (972) 406-8191

**Location:**   Woodhouse Terminal Port of Houston, TX

**Vendor #**   TBD
**Terms:**   Loaded Truck FOB Port of Houston

**Commodity/Product**   4' X 12' X 1/2 inch ASTM 1396 Certified Gypsum Board
**Pricing:**   $2.74 per Sheet
**Quantity:**   200,000 Sheets of same
Total Amount: 2,632 Pallets 1,875 Sound (Or w/ Minor Damages) 757 Pallets
With Severe To Moderate Damage 76 Sheets per bundle Origin: China
Manufacturer: Tian Taihe
**Totals:**   $548,000 USD (please see Notes)

## PAYMENT TERMS:

1st payment of $300,000.00 to be wired to HLP/GAC's designee WTS Inc. to allow for remaining US Customs balance and any Port and Warehousing costs to be settled and to allow the release of the materials to the title of Material Advantage USA. This payment will allow Material Advantage USA to load out and take possession of 50% of the product.

The unpaid balance of $248,000.00 will be wired to HLP/GAC International or their designee prior to loading the 2nd 50% of the product. This payment shall occur no later than 14 days from the date the materials are cleared by all parties, inclusive US Customs and the Port and Warehouse, and made available for loading.

## NOTES:

This Contract shall become effective upon confirmation that the 1st payment has been transmitted to HLP/GAC's designee WTS Inc.

Buyer will have free storage for 30 days from October 9, 2006 and ends on November 8, 2006. After the end date, buyer will be responsible for storage charges and negotiate directly with the port if there are any additional storage for cargo not moved from the facility at that time. Seller reserves the right to file the insurance claim on the product for damages that occurred before this sale.

**HLP/GAC INTERNATIONAL, INC.**                    **MATERIAL ADVANTAGE USA**
Seller                                              Buyer

_____                           _____
Signature                                           Signature

Vice-President                                      MANAGING DIRECTOR
Title            **EXHIBIT**                          Title

10/13/06           **A**                            13 OCT 06
Date                                                Date

3443 Law Rd. Ste 425 • Jefferson Valley, NY 10535 • Main Office: (914) 528-0080
• Toll Free: (888) 538-5299 • Fax: (914) 531-1766

2-4

# CONTRACT ADDENDUM

CONTRACT NO.: 06IB1001-1
DATE: April 14, 2006
Signed at Qingdao

**Seller:**     Shangdong Oriental International Trading Corp., LTD.
**Address:**    17-21F Shangdong International Trade Mansion
                51 Taiping Road, Qingdao, China
                Tel: 0086-532-82971786          Fax: 0086-532-82971778


**Buyer:**      HLP/GAC International, Inc.
**Address:**    1718 Trinity Valley Drive, Suite 202
                Carrollton, Texas 75006 U.S.A.
                Tel: 001-972-2416/6362          Fax: 001-214-498-1868

The two parties have reached agreement towards the problems under contract number 06IB1001 as follows:

1.  Major and minor problems are found in the SGS report according to its report reference number: QDS060340B. The buyer is clear about the quality and well knows the SGS report. The buyer completely accepts the goods quality under 06IB1001. Buyer accepts the goods in accordance with the contract requirements. The buyer can not refuse to pay the seller out of any reason.

2.  After the buyer agrees to accept the quality, the seller agrees to accept 1520 sheets more to make up for the damaged product. Buyer agrees to pay $6,000 or $3.95 per sheet for this replacement product. This shall be paid in accordance with the contract. This will reduce the average purchase price to $7.185 per sheet.

3.  According to Lian Yungang ship agent, the ship can not carry all the goods if the goods are stacked five pallets high. 1/3 goods can not load on the ship if the ship follows the original contract. Therefore, the buyer agrees to amend "The pallets are pre-slung and are stacked only five pallets high" in the original contract to "The pallets are pre-slung and stacked seven pallets high". The goods can be stacked seven pallets high.

4.  The seller must take effective measures to reinforce and bundle the goods to reduce damage.

5.  Seller agrees to repack the damaged dunage and remove or replace damaged sheetrock in those pallets.

1

2-5

6. Before buyer agrees to load the goods, the seller must receive buyer's bank confirmation that seller will be fully paid immediately after the contractual documentation is received in accordance with the original contract requirements.

7. The buyer agrees to provide bank condition of payment for goods prior to loading. Payment shall be made in accordance with the contract.

8. This addendum is an important part of contract 06IB1001, and it has equal force. The part in the original contract which disagrees with the complementary contract blanks out.

9. The contract will be in effect after both sides sign it.

The Seller

The Buyer

Vice President
HLP / GAC INT. INC.

2



企业法人

营业执照

（副　本）

注册号

发　照　机　关

年　月　日

企　业　名　称

住　　　　所

法定代表人

注　册　资　金

经　济　性　质

经　营　方　式

经营范围主营

兼营

中华人民共和国国家工商行政管理总局制

# Business License of Enterprise

## Legal Person

(Duplicate)

Registry No. 370200018044039
File No. 370200180440 3

Please Participate in Annual Inspection from March. 1 to June. 30 every year (stamp)

### Issue Authority:

The Industrial and Commercial Administration of Qingdao (seal)

October 22th , 2009

**Company Name:** Qingdao International Cooperation Center (seal)

**Domicile:** No.16 Donghaixi Road, Shinan District, Qingdao

**Legal Representative:** Ren Zhiqiang

**Registered Capital:** RMB 1,220,000 yuan

**Type Of Enterprise:** State-owned Enterprise

**Type of Operation:**

**Scope of Business: Main Business:**

**Certified Business Items:** Labor dispatch (seamen excepted), provide service (information, legal consultation, communication, arrangement, visa application, etc ) for oversea Chinese to settle down, visit relatives or friends, inherit property ,etc (other non-public affairs); Employment service for both employers and employees, vocational instruction, management and consultation service of human resource

(Approval Document of National Authorized Unit      Date of Expiry: October 24. 2011)

(Agency Operation License of Exit & Entry Service for Private Purpose      Date of Expiry: June 14 2012)

(Operation license of Employment Service      Date of Expiry: June 12 2011)

**Common Business Items:** Purchasing service of train tickets and steamer tickets; Foreign affairs service; Consultation service for foreign affairs; Translation;

(The Certified Business Items should be operated with a certificate)

**Concurrent Business:**

**Date of Establishment: July 19th, 1989**

**Term of Operation: From July 1st, 1996 to**

# CERTIFICATE

## 证明

**This is to certify that Qingdao Municipal Translation Center, a professional translation organization, is a department of Qingdao International Cooperation Center.**

兹证明青岛市翻译中心是青岛国际交流中心的一个部门。

特此证明。

**Qingdao International Cooperation Center**

青岛国际交流中心

**2013**

**2013 年**