## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON MAG. JUDGE WILKINSON |
| *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al* Case No. 11-cv-080 (E.D. La.) | |
| *Almeroth, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al* Case No. 12-cv-0498 (E.D. La.) | |
| *Amato, et al. v. Liberty Mutual Insurance Company*, Case No. 2:10-cv-00932 (E.D.La.) | |
| *Germano et al. v. Taishan Gypsum Co., Ltd. et al.* Case No. 2:09-cv-06687 (E.D. La.) | |
| *Gross, et al. v. Knauf Gips, KG, et al* Case No. 09-6690 (E.D. La.) | |
| *Haya, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd, et al* Case No. 11-cv-1077 (E.D. La.) | |
| *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al* Case No. 10-cv-361 (E.D. La.) | |

**ORDER AND JUDGMENT: (1) CERTIFYING EACH OF FOUR CHINESE DRYWALL CLASS SETTLEMENTS (NATIONWIDE INSUREDS SETTLEMENT AGREEMENT, PORTER-BLAINE/VENTURE SUPPLY SETTLEMENT AGREEMENT, TOBIN TRADING AND INSTALLERS SETTLEMENT AGREEMENT, AND BUILDERS MUTUAL INSUREDS SETTLEMENT AGREEMENT) RELATING TO VIRGINIA AND CERTAIN OTHER REMAINING CLAIMS; (2) GRANTING FINAL APPROVAL TO THE FOUR CHINESE DRYWALL CLASS SETTLEMENTS; AND (3) APPROVING AN ALLOCATION PLAN FOR THE FOUR CLASS SETTLEMENTS**

Before the Court is a Motion of Settlement Class Counsel for certification of four settlement classes: (1) Nationwide Insureds Settlement Class; (2) Porter-Blaine/Venture Supply Settlement Class; (3) Tobin Trading & Installers Settlement Class; and (4) Builders Mutual Insureds Settlement Class; and seeking final approval of the four related settlements and the related allocation plan.  (R. Doc. 16806).  The Court heard oral arguments from counsel and pro se objectors at a final Fairness Hearing on May 21, 2013, and, having considered those arguments and the parties' submissions, now issues this Order and Judgment.

## I.       BACKGROUND

The present litigation arises from alleged property damage and personal injuries caused by the presence of Chinese drywall in homes and other buildings.  Hurricanes Katrina and Rita devastated the Gulf Coast in 2005.  These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States.  Responding to this shortage, Chinese-manufactured drywall entered the United States market from approximately 2005 to 2008, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems.  In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of law suits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these properties.  Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties.  Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation.  On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to this Court, the United States District for the Eastern District of Louisiana, for coordinated and consolidated proceedings.  (R. Doc. 1).

Since the inception of MDL 2047, approximately four years ago, numerous cases have been consolidated, containing thousands of claims; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials; it has issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated several mediations; and over 16,000 record documents have been filed.  When discovery disputes threatened to cause unreasonable delay, the Court traveled to China in order to supervise depositions.  Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.

The discovery revealed that the manufacturers of the drywall in question generally fell

into two groups: the Knauf entities[1] and the Taishan entities[2].  After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing. Shortly thereafter, the Court held its first bellwether, bench trial involving one of the Knauf entities.  With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of corrosive gasses, requiring remediation of properties containing this drywall.  The Court also issued a remediation protocol.  One of the Taishan entities finally entered the action by filing an appeal of the judgment entered against it with the United States Court of Appeals for the Fifth Circuit, arguing that this Court lacked personal jurisdiction.  The Fifth Circuit remanded the case to this Court to allow for jurisdictional discovery.  After ample time for discovery, the Court issued an Order and Reasons holding that the Taishan entities are subject to the Court's jurisdiction.  The Taishan entities' appeal of this ruling is currently pending before the Fifth Circuit.

Meanwhile, the parties finalized, and the Court granted final approval of, settlements of the claims against the Knauf entities after a series of breakthroughs.  The first notable breakthrough towards resolving the MDL litigation claims against Knauf came in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf.  In addition to the Knauf entities, a number of defendants in the chain-of-commerce contributed funds to the program.

---

[1]  The term "Knauf entities" includes:  Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

The pilot program has since been implemented, with homes being added to and completed on a regular basis since early spring 2011.  To date, contractors have completed remediation of over one thousand five hundred homes through this program.

The second notable breakthrough occurred in the spring of 2011, when Interior Exterior Building Supply ("InEx"), a major supplier of Chinese drywall in the gulf coast, entered into a class action settlement agreement.  This agreement provides for the tendering of all of InEx's primary insurance proceeds, in the amount of approximately $8 million, for the benefit of a national class with claims against InEx involving Chinese drywall.

The third notable breakthrough occurred in the summer of 2011, when the Banner entities, also major suppliers of Chinese drywall in the gulf coast, entered into a class action settlement agreement.  The Banner settlement agreement provides that Banner and its insurers will provide over $50 million for the benefit of a nationwide class consisting of all persons or entities with claims against Banner arising from or otherwise related to Chinese drywall.

The fourth, and most notable breakthrough, occurred in December 2011, when the Knauf entities entered into a class action settlement agreement with plaintiffs.  The Court granted preliminary approval of this settlement agreement in January of 2012.

The fifth breakthrough in the litigation came in March 2012 when L&W, a third major Chinese drywall supplier, entered into a class action settlement agreement.  The L&W Settlement is a component of the plan for global resolution of the Knauf/KPT supply chain in this litigation.

The sixth breakthrough in this litigation involved various builders, suppliers, and installers, and these parties' insurers, who have entered into a class action settlement agreement (the "Global Settlement") with the plaintiffs.  The Global Settlement was entered into by the

Plaintiffs' Steering Committee on behalf of claimants, except those with affected properties in Virginia, and certain Builders, Installers, and Suppliers. The Global Settlement provides for a total payment of over $70 million for class members regardless of the type or brand of Chinese drywall in their properties and regardless of whether they filed their claims in the MDL or another forum.

After a Fairness Hearing in November of 2012, the Court granted final approval of the five interrelated and interdependent settlements in February of 2013. (R. Doc. 16570). They resolve all claims, counterclaims, and third-party claims among the settling parties.

The present Motion seeks final approval of four additional settlements, the "Virginia settlements," involving hundreds of claimants, the vast majority of whom reside in Virginia. (R. Doc. 16806). The total value of the settlement funds in the Virginia settlements exceeds $17 million. The participating Defendants include several downstream entities in the Taishan chain of commerce and their insurers.

Upon being advised of the four Virginia settlements and after reviewing the parties' Motions seeking preliminary approval, the Court held a hearing for the purpose of evaluating whether each proposed settlement appeared to merit the expense of notice, and therefore merited preliminary approval. The Court granted preliminary approval of these settlements on January 17, 2013. (R. Doc. 16516). The parties issued notice in accordance with the Court's Order. The Court held a final Fairness Hearing on May 21, 2013, during which the Court heard the arguments of counsel representing both the settlements' proponents and certain objectors.

## II.    PRESENT MOTION

### A. Movants' Position

The Settlement Proponents seek certification of four settlement classes and final approval

of the class settlements resolving claims against (1) Nationwide-related insurance companies[3] and over thirty entities[4] to whom they issued liability insurance policies (the "Nationwide Insureds Settlement"); (2) Venture Supply, Porter-Blaine Corporation, and their insurers, the Hanover-related insurance companies[5] (the "Porter-Blaine/Venture Supply Settlement"); (3) Tobin Trading, Inc., Builders Plaster & Drywall, LLC, JMM Drywall Co., LLC, and State Farm-related insurance companies[6] (the "Tobin Trading and Installers Settlement"); and (4) Builders Mutual Insurance Company and nineteen entities[7] to whom it issued liability insurance policies (the "Builders Mutual Insureds Settlement").  They also seek approval of the revised allocation plan.

In support of their Motion, the Movants argue that the settlements will provide substantial benefits to the Class Members and together constitute a significant recovery for the Class Members, especially when considered in light of the procedural posture of the litigation, the range of estimates of damages, the financial condition of the Participating Defendants, the risks and uncertainty regarding apportionment of liability to the Participating Defendants, and the information revealed during discovery and settlement negotiations.  Movants note the serious obstacles to establishing both liability and damages against the Participating Defendants, evidenced by the fact that several Participating Defendants have prevailed on coverage actions

---

[3]  Nationwide Mutual Insurance Co., Nationwide Mutual Fire Insurance Co., and Nationwide Property & Casualty Insurance Co. (collectively "Nationwide").

[4]  *See* (R. Doc. 15969-5) (listing participating Defendants insured by Nationwide).

[5]  Citizens Insurance Co. of America and Hanover Insurance Company (collectively "Hanover").

[6]  State Farm Florida Insurance Company and State Farm Fire and Casualty Company (collectively "State Farm").

[7]  *See* (R. Doc. 16463-5) (listing participating Defendants insured by Builders Mutual).

involving pollution exclusion clauses.  Movants further note that, in the absence of the Virginia settlements, many of the Participating Defendants could be expected to file bankruptcy proceedings.

### B. Objections to the Motion

Four pro se objections to the Virginia settlements were filed by Class Members; no Class Members asked to opt-out of any settlement.  The Court received and reviewed objections from: (1) Colleen and Tuan Nguyen; (2) Richard D. Illich; (3) Candi C. Roberts; and (4) Thomas and Jill Roskowski.  The Court also heard oral arguments from Colleen Nguyen at the Fairness Hearing.  With the exception of the Roskowski objection, the language of which is identical to the Nguyen objection, the Court will discuss each objection separately.

#### 1. Objection by Colleen and Tuan Nguyen  and Objection of Thomas and Jill Roskowski

Colleen and Tuan Nguyen contacted the Court via a letter of May 20, 2013 and expressed concerns relating to all four settlements, which the Court will interpret as an objection thereto. (R. Doc. 16823-1).  Colleen Nguyen also spoke at the Fairness Hearing.  The Nguyens' concerns include the following: (1) their belief that the Virginia settlements do not adequately compensate claimants; (2) their belief that, under Section 4.3 of the Nationwide Insureds Settlement, the Tobin Trading and Installers Settlement, and the Builders Mutual Insureds Settlement, class members will be liable under certain circumstances; (3) their concern with the fairness of the simultaneous negotiation of attorney fees; (4) their inability to calculate the precise value of the settlements to each claimant; (5) a question as to the validity of objections lodged without the assistance of counsel; (6) their disagreement with language indicating that the participating Defendants deny liability; and (7) several concerns related to the proposed allocation plan.

As noted above, Tom and Jill Roskowski filed an objection using identical language to that of the Nguyen objection.  (R. Doc. 16823-4).

### 2. Objection by Richard D. Ilich

Richard D. Ilich expresses similar concerns regarding the Virginia settlements, which the Court will interpret as an objection thereto.  (R. Doc. 16823-2).  Mr. Ilich's objections closely resemble those of the Nguyens, discussed above, with one addition: Mr. Ilich adds an objection to the qualifying procedures in the belief that the agreement would unfairly exclude bankrupt victims.

### 3. Objection by Candi C. Roberts

Candi C. Roberts also submitted a letter regarding the Virginia settlements, which the Court will interpret as an objection thereto.  (R. Doc. 16823-3).  The Roberts objections closely resemble those of the Nguyens, discussed above, with one addition: Ms. Roberts adds an objection to the allocation plan based on her belief that the plan excludes families who have deeded their homes rather than undergo foreclosure.

### 4. Objection by Thomas and Jill Roskowski

Thomas and Jill Roskowski also express concerns regarding the Virginia settlements, which the Court will interpret as an objection thereto.  (R. Doc. 16823-4).  As noted above, the language of the Roskowski objection mirrors exactly that of the Nguyen objection.

## IV. LAW & ANALYSIS

### A. Final Fairness Evaluation

Pursuant to Federal Rule of Civil Procedure 23, governing class actions, "[r]eview of a proposed class action settlement generally involves two hearings," the first of which is a

"preliminary fairness evaluation" made by the Court. Manual for Complex Litigation (Fourth) §
21.632 (2004). Indeed, within the Fifth Circuit it is routine to conduct a preliminary fairness
evaluation prior to the issuance of notice. *See, e.g.*, *Cope v. Duggins*, 2001 WL 333102, at *1
(E.D. La. Apr. 4, 2011); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1997); *see also*
Manual for Complex Litigation § 21.6 (4th ed. 2004) ("The two-step process for evaluation of
proposed settlements has been widely embraced by the trial and appellate courts."). During this
evaluation, the Court "should make a preliminary determination that the proposed class satisfies
the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Id.*
Additionally, the Court "must make a preliminary determination on the fairness, reasonableness,
and adequacy of the settlement terms and must direct the preparation of notice of the
certification, proposed settlement, and date of the final fairness hearing." *Id.* After having
granted preliminary approval and allowed the notice process to move forward, the Court
conducts a more thorough and rigorous analysis of the same factors in order to determine the
appropriateness of granting final approval.  Manual for Complex Litigation § 21.6; *see also In re
OCA, Inc. Securities & Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008).
"Counsel for the class and the other settling parties bear the burden of persuasion that the
proposed settlement is fair, reasonable, and adequate." Manual for Complex Litigation (Fourth)
§ 21.631 (2004); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006).

### B. Class Action Settlement Prior to Class Certification

"Before an initial class ruling, a proposed class settlement may be effectuated by
stipulation of the parties agreeing to a temporary settlement class for purposes of settlement
only." William B. Rubinstein, Alba Conte, and Herbert B. Newberg, 4 Newberg on Class
Actions § 11:22 (4th ed. 2010). "[A]pproval of a classwide settlement invokes the requirements

of Rule 23(e)." *Id.* Rule 23(e) provides that "[t]he claims . . . of a certified class may be

settled . . . or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). "Settlement classes--cases certified as class

actions solely for settlement--can provide significant benefits to class members and enable the

defendants to achieve final resolution of multiple suits." Manual for Complex Litigation (Fourth)

§ 21.612 (2004). However, "[c]ourts have held that approval of settlement class actions under

Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class

certification has been litigated through the adversary process." *Id.*

Although "[s]ettlement is relevant to a class certification," as mentioned above, the

criteria of Rule 23, particularly that found in subsections (a) and (b), must still be satisfied.

*Amchem*, 521 U.S. at 619-20. "Together subsection (a) and (b) requirements insure that a

proposed class has 'sufficient unity so that the absent class members can fairly be bound by

decisions of the class representatives.'" *In re FEMA Trailer*, 2008 WL 5423488, at *3 (quoting

*Amchem*, 521 U.S. 591 (1997)). All of the requirements of Rule 23(a) must be met:

> One or more members of a class may sue or be sued as representative parties on behalf of
> all members only if:

>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or
>> defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the
>> class. Fed. R. Civ. P. 23(a).

As this Court has previously recognized,

> The first two requirements focus on the characteristics of the class; the second
> two focus instead on the desired characteristics of the class representatives. The
> rule is designed 'to assure that courts will identify the common interests of class
> members and evaluate the named plaintiffs' and class counsel's ability to fairly
> and adequately protect class interests.' *In re FEMA Trailer Formaldehyde Prods.*

> *Liab. Litig.*, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008) (*quoting In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Additionally, for class certification, at least one of the subsections of Rule 23(b) must be met. To satisfy this requirement, the Movants urge the Court to find subsection (b)(3) is satisfied by the pending settlements. This subsection provides,

> A class action may be maintained if Rule 23(a) is satisfied and if:
> - - - - - - - - - - -
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense or separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

"To succeed under Rule 23(b)(3), Plaintiffs must sufficiently demonstrate both predominance of common class issues and that the class action mechanism is the superior method of adjudicating the case." *In re FEMA Trailer*, 2008 WL 5423488, at *3 (*citing Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623-24 (5th Cir. 1999)).

### C. Rule 23 Criteria

Notably, none of the responses to the Motion raise any objections to the Rule 23 criteria. The Court will nevertheless review the applicable law on Rule 23 for each criteria and consider the Movants' arguments under each criteria.

#### 1. Numerosity

As cited above, Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To demonstrate numerosity, the [Movants] must establish that joinder is impracticable through

'some evidence or reasonable estimate of the number of purported class members.'" *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006) (*quoting Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)). Rule 23 does not provide a clear formula for determining whether the numerosity requirement has been met; thus, Courts evaluate numerosity based upon the facts, circumstances, and context of the case. 1 Newberg on Class Actions § 3:3 (4th ed. 2010). Indeed, "[t]here is enormous disparity among the decisions as to the threshold size of the class that will satisfy the Rule 23(a)(1) prerequisites." *Id.* Although the plaintiff bears the burden of showing joinder is impracticable, "a good-faith estimate should be sufficient when the number of class members is not readily ascertainable," and the numerosity requirement "ordinarily receives only summary treatment . . . and has often gone uncontested." *Id.*

The Movants argue that these settlement classes satsify the numerosity requirement because of the many hundreds of plaintiffs who have filed suit against the Participating Defendants and Participating Insurers, which themselves number in the hundreds.  The Court agrees that the numerosity requirement is satisfied in this case.

### 2. Commonality

The commonality requirement under Rule 23(a)(2) requires for maintenance of a class action that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not require that all questions of law or fact raised in the litigation be common. The test or standard . . . is qualitative rather than quantitative." Rubinstein, 1 Newberg on Class Actions § 3:10; *see also In re FEMA Trailer*, 2008 WL 5423488, at *6. Indeed, "[t]he commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members." *In re Vioxx*, 239 F.R.D. at 459 (*citing James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001)). The Rule 23(a)(2) commonality "requirement is

easily met in most cases." *Id.*

Movants argue that these settlements easily satisfy the commonality requirement because the Judicial Panel on Multidistrict Litigation ordered the subject cases consolidated in the MDL based upon commonality of facts, and because the factual and legal issues arising from Chinese drywall, including damages, fault, and apportionment of fault, are common to all claimants. The Court agrees that these settlements satisfy the commonality requirement.

### 3. Typicality

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." Rubinstein, 1 Newberg on Class Actions § 3:13. "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims or other claims members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims. However, this is not a foregone conclusion." *Id.*

Movants argue that these settlements satisfy the typicality requirement because each of the potential Class Members is seeking money from the settling defendants for the costs of remediation and other damages, and the proposed Class representatives have claims against the settling defendants which are typical of all plaintiffs. The Court agrees that these settlements satisfy the typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires for maintenance of a class action that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The purpose of this requirement is to protect the legal rights of absent class members. First, the representatives must not possess interests . . . antagonistic to the interests of the class. Second, the representatives' counsel must be qualified, experienced, and generally able to conduct the litigation." Rubinstein, 1 Newberg on Class Actions § 3:21; *see also Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("[T]he adequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest."). With regard to the former, a court is to "look at the circumstances of the plaintiff individually to determine if the plaintiff has any conflict with class members." Rubinstein, 1 Newberg on Class Actions § 3:23. "Only those material conflicts pertaining to the issues common to the class will bar a class action." *Id.* As to the latter requirement, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* at § 24.

Movants argue that these settlements satisfy the adequacy of representation requirement because the named representatives do not possess interests antagonistic to class members, and because the proposed Settlement Class Counsel include members of the Plaintiffs' Steering Committee, whom the Court selected based upon their expertise and experience. The Court agrees that these settlements amply satisfy the adequacy of representation requirement.

### 5. Common Questions of Law & Fact Predominate

Rule 23(b)(3) provides that a class action is maintainable if all the prerequisites of subsection (a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Factors for the Court to consider in its determination include:

> (A) the class members' interests in individually controlling the prosecution or defense or separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b).

There is "considerable overlap" between commonality and the predominance of common questions of law and fact, resulting in many courts handling both issues together. Rubinstein, et al., 2 Newberg on Class Actions § 4:22. However, "the predominance test is 'far more demanding' than the commonality test." *In re FEMA Trailer*, 2008 WL 5423488, at *12 (*quoting Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005)). "To predominate, common issues must form a significant part of individual cases." *In re Vioxx*, 239 F.R.D. 450, 460 (E.D. La. 2006) (*citing Mullen*, 186 F.3d at 626). "Judicial economy factors and advantages over other methods for handling the litigation as a practical matter underlie the predominance and superiority requirements for class actions certified under Rule 23(b)(3)." Rubinstein, et al., 2 Newberg on Class Actions § 4:24.

Movants argue that common questions of law and fact predominate because: it makes good sense to resolve the claims against the participating defendants through the class action device; the issues of the participating defendants' liability predominate over any individual issues involving the plaintiffs; a class settlement will insure that funds are available to remediate the plaintiffs' properties and provide compensation; and, in light of the suits pending in various forums, final approval of the settlement agreements benefits all parties. The Court finds that

common questions of law and fact predominate.

### 6. Fairness, Reasonableness, & Adequacy

The Court is also required to render a determination on the fairness, reasonableness, and adequacy of the Settlement Agreement. The settling parties argue approval of these settlements is appropriate because they were reached after arm's length negotiations, by parties possessed of adequate information on the strengths and weaknesses of the litigation, represented by counsel who are competent and have many years of experience, after extensive discovery and briefing on motions.  Furthermore, the litigation is complex, expensive, uncertain, and has the potential for lengthy duration.

Though the objections to the Motion do not directly invoke Rule 23 requirements, the Court will interpret the non-Rule 23 concerns as objections to the fairness, reasonableness, and adequacy of the interrelated settlements.  As noted above, the Court has received four very similar objections, two of which are in fact identical.  The Court received and reviewed objections from: (1) Colleen and Tuan Nguyen; (2) Richard D. Illich; (3) Candi C. Roberts; and (4) Thomas and Jill Roskowski.  The Court also heard oral arguments from Colleen Nguyen at the Fairness Hearing.  With the exception of the Roskowski objection, the language of which is identical to the Nguyen objection, the Court will discuss each objection separately.

a. Objection by Colleen and Tuan Nguyen  and Objection of Thomas and Jill Roskowski

Colleen and Tuan Nguyen's first listed concern is their belief that the Virginia settlements do not adequately compensate claimants.  The settlements' proponents acknowledge that no negotiated settlement ever provides "100% relief."  It is inherent in a compromise that neither side achieves all that might have been achieved at trial.  However, in light of relevant

circumstances including the difficulties faced by Class Members in pursuing this litigation, the Court concludes that the amount of funding provided by these settlements is fair, reasonable, and adequate.

The Nguyens' second concern is their belief that, under Section 4.3 of the Nationwide Insureds Settlement, the Tobin Trading and Installers Settlement, and the Builders Mutual Insureds Settlement, class members will be liable under certain circumstances.  During oral argument at the Fairness Hearing, the settlement proponents clarified the meaning of Section 4.3 to the satisfaction of those objectors who were present.  The Court notes further that the settlement proponents have added clarifying language, which the Court adopts below.  *See* (R. Docs. 16823, 16823-7).  The Court agrees with the settlement proponents that Class Members need not shoulder liability for problematic drywall as long as they comply with the applicable remediation provisions.  Therefore the Court finds that the amended liability provisions are fair, reasonable, and adequate.

The Nguyens' third concern involves the fairness of the simultaneous negotiation of attorney fees.  The settlement proponents note that no fee request is currently pending before this Court, and that the relevant fees were negotiated after the settlement negotiations successfully concluded.  The Court agrees that the proper award of attorney fees is not currently before it. The Court further notes that the effect of the instant settlements is to limit, rather than to guarantee, the amount of attorney fees associated with these settlements.  At an appropriate time, and after hearing from all interested parties, the Court will make a determination as to appropriate attorney fees.  In light of these and other relevant facts and circumstances, the Court finds that the settlements' provisions relating to attorney fees are fair, reasonable, and adequate.

The Nguyens express concern regarding Class Members' inability to calculate the precise

value of the settlement(s) for each claimant.  The Nguyens note that a pro-rata reduction for opt-outs appears to suggest a dollar value for each claim.  The settlement proponents note that the total amounts and allocation criteria have been disclosed.  The Court observes that the value of each settlement to each Class Member will vary according to a variety of factors; in light of this fact, the provision for a pro-rata reduction is a device negotiated by the parties in order to enable planning for certain contingencies, rather than a device intended to indicate a base value for an individual Class Member's claim.  Considering the applicable precedents and the relevant facts and circumstances, the Court finds that the inability of a Class Member to calculate a precise value in advance does not render the proposed settlements unfair or unreasonable.

In their objection, the Nguyens raise a question as to the validity of objections lodged without the assistance of counsel.  As this Court's analysis makes clear, all four letters have received thorough review and have been construed as valid objections.

The Nguyens further voice their disagreement with language indicating that the participating Defendants deny liability.  The settlement proponents point out that the relevant provisions, which are commonplace in settlement agreements, merely indicate that these settlement agreements do not constitute admissions of wrongdoing by the participating Defendants.  Having considered the facts and circumstances, the Court finds that the relevant provisions are fair, reasonable, and adequate.

Finally, the Nguyens voice several concerns related to the proposed allocation plan. First, they express concern that the square-footage calculation for Real Property Payments does not fairly reflect damages due to lost equity.  The settlement proponents note that the Other Loss Funds provide separate recovery for lost equity.  Second, the Nguyens express concern that the settlements do not cover alternative living costs for homeowners who sold their homes.  The

settlement proponents point out that such claims are covered by the Other Loss Funds.  Third, the Nguyens note that the proposed allocation plan does not establish a fund for unknown possible future health costs.  The settlement proponents point out that the available scientific evidence does not indicate a known risk of future long-term chronic injuries resulting from defective drywall, and that any allocation of funds for such injuries would be speculative.  The Court notes that the allocation plan does provide a remedy for known personal injuries.  The Court, having considered the relevant scientific evidence and the facts and circumstances of this case, finds that the relevant provisions are fair, reasonable, and adequate.

As noted above, Tom and Jill Roskowski filed an objection using identical language to that of the Nguyen objection.  (R. Doc. 16823-4).

b. Objection by Richard D. Ilich

Richard D. Ilich also objects to the allocation plan insofar as he believes that Section 6(h) would exclude Class Members who have declared bankruptcy.  The settlement proponents point out that Section 13 provides specifically for a special allocation procedure for such Class Members.  The Court finds that the special allocation procedure is fair, reasonable, and adequate.

c. Objection by Candi C. Roberts

Candi C. Roberts also objects to the allocation plan based on her belief that the plan excludes families who have deeded their homes rather than undergo foreclosure.  The settlement proponents note that Section 7 of the allocation plan allows such Class Members to make claims for lost equity.  Having considered all the facts and circumstances, the Court finds that Section 7 of the allocation plan is fair, reasonable, and adequate.

After considering the documents presented, the arguments of counsel, and the law

applicable to this matter, the Court agrees with the settlement proponents.  Accordingly, the Court finds that the four proposed settlements in their entirety are fair, reasonable, and adequate.

## IV.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the present Motion is **GRANTED**.  **IT IS FURTHER ORDERED** that the Consent Motion to Withdraw Objections filed by attorney Christopher A. Bandas on behalf of Ronnie Garcia, Jan Petrus, Saul Soto, and Ernest Vitela (R. Doc. 16357) is hereby **GRANTED IN PART** insofar as to allow the withdrawal of the objections therein and **TAKEN UNDER SUBMISSION IN PART** insofar as other relief requested therein shall be addressed in a separate Order and Reasons.  **IT IS FURTHER ORDERED** that:

1.      Capitalized terms used in this Order and Judgment shall have the same meaning as those defined in the Nationwide Insureds Settlement [Rec. Doc. No. 15969-5]; Porter-Blaine/Venture Settlement [Rec. Doc. No. 15969-6]; Tobin Trading and Installers Settlement [Rec. Doc. No. 15969-7]; Builders Mutual Insureds Settlement [Rec. Doc. No. 16478-3], which have been filed of record in this case.

2.      The Motion of Settlement Class Counsel for Final Approval of the Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading & Installers, and Builders Mutual Insureds Settlement Agreements and Certification of the Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading & Installers, and Builders Mutual Insureds Settlement Classes is GRANTED.

3.      Unless otherwise specified, the Nationwide Insureds, Porter-Blaine/Venture Supply, Tobin Trading & Installers, and Builders Mutual Insureds Settlement Agreements will be governed by the laws of Virginia.

4.      The Nationwide Insureds Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

5.      The Court finds that the Nationwide Insureds Settlement is fair, reasonable, and adequate, that the Nationwide Insureds Settlement was entered into in good faith and without collusion, and that the Nationwide Insureds Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

6.      The Court finds that the indemnity, defense and judgment reduction provisions in Section 5.2.4 of the Nationwide Insureds Settlement are valid, binding, and enforceable; and therefore, bars the assertion by any Nationwide Insureds Settlement Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims.

7.      Any and all Nationwide Insureds Settlement Class Members, including, but not limited to, those who have not properly opted out of the Nationwide Insureds Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

8.      Other than as it relates to Reserved Claims or Assigned Claims in the Nationwide Insureds Settlement, or to enforce any term of the Nationwide Insureds Settlement, or as to insurance matters concerning depletion or exhaustion of one or more policies of insurance, or

prior compensation for a claimed loss or set-off, no person or entity may use or refer to any aspect of the Nationwide Insureds Settlement in any litigation in which any Participating Defendant or Participating Insurer is a party.

9.      The Nationwide Insureds Settlement shall not constitute a waiver of any coverage defense or position taken by any Participating Defendant and/or its insurers, whether a Participating Insurer or not, related to Chinese Drywall and no insurer, whether a Participating Insurer or not, shall be estopped from raising any coverage issue or defense by reason of the Nationwide Insureds Settlement.  In addition, any payment by a Participating Insurer as set forth in Section 4 of the Nationwide Insureds Settlement, shall not be considered a confession of judgment or trigger any obligation to pay attorney's fees.

10.     Except for any Reserved Claims referenced in Section 5.5 of the Nationwide Insureds Settlement, the Court finds that by entering this Settlement, each Participating Insurer has acted in good faith and fairly, reasonably, and honestly towards its insured Participating Defendant, and any actual and/or potential Nationwide Insureds Settlement Class Members and with due regard for the Participating Insurer's Participating Defendant, and any potential Nationwide Insureds Class Members' interests regarding Chinese Drywall.

11.     Except for any Reserved Claims referenced in Section 5.5 of the Nationwide Insureds Settlement, the Court finds that the actions and positions of the Participating Insurers, being in good faith, upon the Nationwide Insureds Settlement becoming Final, precludes any Participating Defendant and any actual and/or potential Nationwide Insureds Settlement Class Member from asserting, maintaining or assigning any statutory and/or common law bad faith claim against any Participating Insurer.

12.     The Nationwide Insureds Settlement shall not constitute a waiver or release by any Participating Defendant or Participating Insurer of any claims or defenses related to any actual or alleged obligations under a policy of insurance that such Participating Defendant or Participating Insurer may have against any person or entity, including another Participating Insurer, in any manner related to or connected in any way with the Chinese Drywall claims of Nationwide Insureds Settlement Class Members who opt-out of the Nationwide Insureds Settlement.

13.     The Porter-Blaine/Venture Supply Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

14.     The Court finds that the Porter-Blaine/Venture Supply Settlement is fair, reasonable, and adequate, that the Porter-Blaine/Venture Supply Settlement was entered into in good faith and without collusion, and that the Porter-Blaine/Venture Supply Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

15.     The Court finds that the indemnity, defense and judgment reduction provisions in Section 5.2.4 of the Porter-Blaine/Venture Supply Settlement are valid, binding, and enforceable; and therefore, bars the assertion by any Porter-Blaine/Venture Supply Settlement Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims.

16.     Any and all Porter-Blaine/Venture Supply Settlement Class Members, including, but not limited to, those who have not properly opted out of the Porter-Blaine/Venture Supply Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related Actions, Related Claims, or any action,

pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises

from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

17.     Other than as it relates to Reserved Claims or Assigned Claims in the

Porter-Blaine/Venture Supply Settlement, or to enforce any term of the Porter-Blaine/Venture

Supply Settlement, or as to insurance matters concerning depletion or exhaustion of one or more

policies of insurance, or prior compensation for a claimed loss or set-off, no person or entity may

use or refer to any aspect of the Porter-Blaine/Venture Supply Settlement in any litigation in

which any Participating Defendant or Participating Insurer is a party.

18.     The Porter-Blaine/Venture Supply Settlement shall not constitute a waiver of any

coverage defense or position taken by any Participating Defendant and/or its insurers, whether a

Participating Insurer or not, related to Chinese Drywall and no insurer, whether a Participating

Insurer or not, shall be estopped from raising any coverage issue or defense by reason of the

Porter-Blaine/Venture Supply Settlement.  In addition, any payment by a Participating Insurer as

set forth in Section 4 of the Porter-Blaine/Venture Supply Settlement, shall not be considered a

confession of judgment or trigger any obligation to pay attorney's fees.

19.     Except for any Reserved Claims referenced in Section 5.5 of the Porter-Blaine/Venture

Supply Settlement, the Court finds that by entering this Settlement, each Participating Insurer

has acted in good faith and fairly, reasonably, and honestly towards its insured Participating

Defendant, and any actual and/or potential Porter-Blaine/Venture Supply Settlement Class

Members and with due regard for the Participating Insurer's Participating Defendant, and any

potential Porter-Blaine/Venture Supply Class Members' interests regarding Chinese Drywall.

20.     Except for any Reserved Claims referenced in Section 5.5 of the Porter-Blaine/Venture

Supply Settlement, the Court finds that the actions and positions of the Participating Insurers,

being in good faith, upon the Porter-Blaine/Venture Supply Settlement becoming Final, precludes any Participating Defendant and any actual and/or potential Porter-Blaine/Venture Supply Settlement Class Member from asserting, maintaining or assigning any statutory and/or common law bad faith claim against any Participating Insurer.

21.     The Porter-Blaine/Venture Supply Settlement shall not constitute a waiver or release by any Participating Defendant or Participating Insurer of any claims or defenses related to any actual or alleged obligations under a policy of insurance that such Participating Defendant or Participating Insurer may have against any person or entity, including another Participating Insurer, in any manner related to or connected in any way with the Chinese Drywall claims of Porter-Blaine/Venture Supply Settlement Class Members who opt-out of the Porter-Blaine/Venture Supply Settlement.

22.     The Tobin Trading & Installers Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

23.     The Court finds that the Tobin Trading & Installers Settlement is fair, reasonable, and adequate, that the Tobin Trading & Installers Settlement was entered into in good faith and without collusion, and that the Tobin Trading & Installers Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

24.     The Court finds that the indemnity, defense and judgment reduction provisions in Section 5.2.4 of the Tobin Trading & Installers Settlement are valid, binding, and enforceable; and therefore, bars the assertion by any Tobin Trading & Installers Settlement Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims.

25.     Any and all Tobin Trading & Installers Settlement Class Members, including, but not limited to, those who have not properly opted out of the Tobin Trading & Installers Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

26.     Other than as it relates to Reserved Claims or Assigned Claims in the Tobin Trading & Installers Settlement, or to enforce any term of the Tobin Trading & Installers Settlement, or as to insurance matters concerning depletion or exhaustion of one or more policies of insurance, or prior compensation for a claimed loss or set-off, no person or entity may use or refer to any aspect of the Tobin Trading & Installers Settlement in any litigation in which any Participating Defendant or Participating Insurer is a party.

27.     The Tobin Trading & Installers Settlement shall not constitute a waiver of any coverage defense or position taken by any Participating Defendant and/or its insurers, whether a Participating Insurer or not, related to Chinese Drywall and no insurer, whether a Participating Insurer or not, shall be estopped from raising any coverage issue or defense by reason of the Tobin Trading & Installers Settlement.  In addition, any payment by a Participating Insurer as set forth in Section 4 of the Tobin Trading & Installers Settlement, shall not be considered a confession of judgment or trigger any obligation to pay attorney's fees.

28.     Except for any Reserved Claims referenced in Section 5.5 of the Tobin Trading & Installers Settlement, the Court finds that by entering this Settlement, each Participating Insurer has acted in good faith and fairly, reasonably, and honestly towards its insured Participating Defendant, and any actual and/or potential Tobin Trading & Installers Settlement Class

Members and with due regard for the Participating Insurer's Participating Defendant, and any potential Tobin Trading & Installers Class Members' interests regarding Chinese Drywall.

29.     Except for any Reserved Claims referenced in Section 5.5 of the Tobin Trading & Installers Settlement, the Court finds that the actions and positions of the Participating Insurers, being in good faith, upon the Tobin Trading & Installers Settlement becoming Final, precludes any Participating Defendant and any actual and/or potential Tobin Trading & Installers Settlement Class Member from asserting, maintaining or assigning any statutory and/or common law bad faith claim against any Participating Insurer.

30.     The Tobin Trading & Installers Settlement shall not constitute a waiver or release by any Participating Defendant or Participating Insurer of any claims or defenses related to any actual or alleged obligations under a policy of insurance that such Participating Defendant or Participating Insurer may have against any person or entity, including another Participating Insurer, in any manner related to or connected in any way with the Chinese Drywall claims of Tobin Trading & Installers Settlement Class Members who opt-out of the Tobin Trading & Installers Settlement.

31.     The Builders Mutual Insureds Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

32.     The Court finds that the Builders Mutual Insureds Settlement is fair, reasonable, and adequate, that the Builders Mutual Insureds Settlement was entered into in good faith and without collusion, and that the Builders Mutual Insureds Settlement should be approved pursuant to Fed. R. Civ. P. 23(e).

33.     The Court finds that the indemnity, defense and judgment reduction provisions in Sections 5.2.4 of the Builder Mutual Insureds Settlement are valid, binding, and enforceable; and

therefore, bars the assertion by any Builder Mutual Insureds Settlement Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims.

34.     Any and all Builder Mutual Insureds Settlement Class Members, including, but not limited to, those who have not properly opted out of the Builder Mutual Insureds Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

35.     Other than as it relates to Reserved Claims or Assigned Claims in the Builder Mutual Insureds Settlement, or to enforce any term of the Builder Mutual Insureds Settlement, or as to insurance matters concerning depletion or exhaustion of one or more policies of insurance, or prior compensation for a claimed loss or set-off, no person or entity may use or refer to any aspect of the Builder Mutual Insureds Settlement in any litigation in which any Participating Defendant or Participating Insurer is a party.

36.     The Builder Mutual Insureds Settlement shall not constitute a waiver of any coverage defense or position taken by any Participating Defendant and/or its insurers, whether a Participating Insurer or not, related to Chinese Drywall and no insurer, whether a Participating Insurer or not, shall be estopped from raising any coverage issue or defense by reason of the Builder Mutual Insureds Settlement.  In addition, any payment by a Participating Insurer as set forth in Section 4 of the Builder Mutual Insureds Settlement, shall not be considered a confession of judgment or trigger any obligation to pay attorney's fees.

37.     Except for any Reserved Claims referenced in Section 5.5 of the Builder Mutual Insureds Settlement, the Court finds that by entering this Settlement, each Participating Insurer has acted in good faith and fairly, reasonably, and honestly towards its insured Participating Defendant, and any actual and/or potential Builder Mutual Insureds Settlement Class Members and with due regard for the Participating Insurer's Participating Defendant, and any potential Builder Mutual Insureds Class Members' interests regarding Chinese Drywall.

38.     Except for any Reserved Claims referenced in Section 5.5 of the Builder Mutual Insureds Settlement, the Court finds that the actions and positions of the Participating Insurers, being in good faith, upon the Builder Mutual Insureds Settlement becoming Final, precludes any Participating Defendant and any actual and/or potential Builder Mutual Insureds Settlement Class Member from asserting, maintaining or assigning any statutory and/or common law bad faith claim against any Participating Insurer.

39.     The Builder Mutual Insureds Settlement shall not constitute a waiver or release by any Participating Defendant or Participating Insurer of any claims or defenses related to any actual or alleged obligations under a policy of insurance that such Participating Defendant or Participating Insurer may have against any person or entity, including another Participating Insurer, in any manner related to or connected in any way with the Chinese Drywall claims of Builder Mutual Insureds Settlement Class Members who opt-out of the Builder Mutual Insureds Settlement.

40.     Section 4.3 of the Nationwide Insureds, Tobin Trading & Installers, and Builders Mutual Insureds Settlements, which requires Class Members to "apply the settlement proceeds they receive…to assist in the remediation of their Affected Property," shall not apply to Class Members who no longer own their homes at the time the Settlements receive Final Approval.

41.     Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finds and concludes that due and adequate notice was directed to all persons and entities who are Class Members, advising them of the Plan of Allocation and of their right to object thereto, and a full and fair opportunity was accorded to all such persons and entities to be heard with respect to the Plan of Allocation.

42.     The Court hereby finds and concludes that the Revised Proposed Plan of Allocation, which is attached to the Memorandum in Support of Settlement Class Counsel's Motion for an Order at Exhibit 3, provides a fair and equitable basis upon which to allocate the proceeds of the Settlement Funds among the Class Members.

43.     The Court hereby finds and concludes that the Plan of Allocation is, in all respects, fair.

44.     The Court finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

New Orleans, Louisiana, this 9th day of July, 2013.

_____
UNITED STATES DISTRICT JUDGE