## TERM SHEET

1. All terms are contingent on a complete Agreement.

2. This is a package deal.

3. FINANCIAL REPORTING:

    a. Knauf to provide monthly reports setting forth complete and full expenditures for each remediated property, setting forth items such as number of remediated homes, property address/description, name of owner, and total amount spent on property. Reports will also detail any amounts expended by settlement category to each claimant. To be consistent with the discussions that have been ongoing since negotiation of the initial Knauf Settlement Agreement. Knauf to work with the PSC cooperatively in getting this information on an ongoing basis.

    b. Knauf to provide monthly bank statements and updates on all financial accounts.

    c. Knauf to work with BrownGreer to provide routine reporting to Judge Fallon on an ongoing basis.

4. NEW HOMES:

    a. Short time frame to provide indicia and inspection of all properties, including those in Omni XVIII.

    b. Benefits in Knauf Settlement II are to replicate or mirror those in Knauf Settlement. However, there should be no already remediated homes (unless construction commenced between December 9, 2011 and July 31, 2013) and no Other Loss Benefits.

    c. Attorney's fees to be paid based upon the ratio method with the number of confirmed by inspection, participating new homes post-settlement as numerator and 4255 homes as the denominator. That ratio will then be applied to $160 million. (Determination based on Alexander's analysis of Existing Inventory.) For example, if 213 homes are confirmed by inspection to have KPT drywall and participate, then the amount of fees will equal $8 million (213/4255 = 5%.; $160 million x 5% = $8 million.)

    d. Knauf will support the PSC Fee Application.

    e. This will be an inventory settlement with the named plaintiffs in the Omni XVIII complaint. Knauf will accept service of the Omni XVIII complaint and will consent to jurisdiction for purpose of enforcement on condition that plaintiffs who do not qualify for the new home settlement or who qualify but elect not to participate will dismiss their claim without prejudice to bringing their own action;

Page | 1

if the claimant files the new action within 120 days of the dismissal without prejudice, the refiled action will be deemed filed as of the claimant's joinder to the Omni XVIII complaint for statute of limitations purposes. Omni XVIII plaintiffs who qualify and participate will release all claims against Knauf and all other persons and entities relating to KPT drywall.

f. Only Omni XVIII plaintiffs are eligible. However, Omni XVIII plaintiffs who are class members because they filed litigation prior to December 9, 2011 or whose homes are being remediated under the Pilot Program already are participating in the class settlement and will dismiss their Omni XVIII claims without prejudice to their participation in the class settlement. No additional plaintiffs will be covered without Knauf's consent. Settlements with claimants not in Omni XVIII will not be affected.

5. KNAUF, INEX, BANNER, L&W AND GLOBAL SETTLEMENTS:

   a. Knauf will expressly support the PSC Fee Application for all amounts set forth in each settlement.

   b. Knauf shall remit to the PSC $160 million in attorney's fees, less any advances already paid, within fifteen (15) days after approval by Judge Fallon following acceptance of this Term Sheet.

   c. If any attorney's fees are due the PSC from the INEX, Banner, L&W and Global Settlements, such attorney's fees shall be remitted by those Funds in accordance with the Court approved allocation plans. Knauf will support the Funds' payment of the allocation plan holdbacks to the PSC.

6. NORTH RIVER:

   a. Knauf will remit to the PSC an additional fee and cost payment of $2,400,000.00, to be paid to class counsel fifteen (15) days after approval by Judge Fallon following acceptance of this Term Sheet. These funds are to be segregated at Esquire Bank from other fee payments due to the PSC.

7. ADMINISTRATIVE TIME AND COST:

   a. The PSC is to record and account for additional time and costs of ongoing administrative matters. The additional time spent in handling the administrative matters, including the implementation of the five inter-related settlements will be reported to Phil Garrett who will keep track of such information separately from PTO 9 reporting obligations.

   b. Out of all fees paid by Knauf, 2% will be held back and not paid as common benefit fees, subject to Judge Fallon's approval. Rather, this holdback will be paid for post-settlement and administrative matters to counsel who perform work

related to administering the Settlements. This provision will not result in any increased payments by Knauf.

8. ADMINISTRATIVE COSTS:

   a. Knauf will pay 100% of the Administrative Cost for Knauf, Banner, INEX, L&W and Global Settlements, which includes, among other items, BrownGreer, Special Master, Ombudsman, website billing and financial institution. If there is a future settlement with Taishan, Knauf will not pay for that administration and reserves it right to seek reimbursement from Taishan for a portion of administrative payments.

9. RESCISSION DEADLINE:

   a. The rescission deadline extension will be extended to July 31, 2013 and for Pisaris-Henderson, to a reasonable time thereafter if the mediation is still ongoing at that time.

10. BANNER WAREHOUSE:

    a. The PSC does not oppose the termination of the Lease of the Banner Warehouse and disposal of all Knauf drywall in the warehouse.

11. SECURITY:

    a. Amount of Initial Deposit – as discussed in New York, Knauf advises that the Escrow Account currently has a balance of $60 million. An initial amount of $60 million will be the initial deposit and Knauf agrees that each time the balance is depleted to $25 million, that Knauf will replenish the account by contributing an additional $25 million. Knauf will provide to the PSC the reports discussed at the New York meeting in order for the PSC to perform due diligence. Consistent with Section 4.2.2 of the class settlement, the parties may agree or Judge Fallon may order lesser replenishment upon a showing that the remaining obligations are likely to be less than $50 million or no replenishment upon a showing that the remaining obligations are likely to be less than $25 million.

    b. Amount of Security – Knauf shall have a letter of credit issued by a bank acceptable to the PSC in favor of the PSC for benefit of the Settlement Class in an amount equal to $200 million. The Letter of Credit will remain in place until June 30, 2015, provided that the parties will meet on or before December 31, 2013, June 30, 2014 and December 31, 2014, to discuss whether the remaining obligations justify a reduction or termination of the security, with Judge Fallon to resolve any disputes, and will meet on or before June 30, 2015 to discuss whether any security is required beyond that date and, if so, in what amount, with Judge Fallon to resolve any disputes. This provision replaces paragraph 17.1.5 of the Class Settlement.

c. The reduction in the amount of security is contingent upon Knauf timely paying any attorneys' fees and costs approved by Judge Fallon pursuant to Section 5 of this Term Sheet.

12. SETTLEMENT FUND AGREEMENTS:

    a. QSF Agreements to be finalized along the lines as the protocol Banner QSF with Esquire Bank, as discussed in New York.

    b. Finalize revision to U.S. Trust Agreement to transfer from Pilot Program to Knauf Settlement, as discussed in New York.

13. ADDITIONAL AGREEMENTS:

    a. The Centerline, Castle Rock and Housing Authority of Alabama/Pritchard Agreements need to be reviewed. These remediations were pursuant to the Major Builder Settlement program and as such are included in the $160 million fee pursuant to Section 14.3(iv) of the class settlement.