**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | ) | |
|     DRYWALL PRODUCTS | ) | MDL NO. 2047 |
|     LIABILITY LITIGATION | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | SECTION: L |
| | ) | |
| *Hobbie, et al.  v.* | ) | JUDGE FALLON |
| *RCR Holdings II, LLC, et al.*, | ) | |
| | ) | |
| No. 10-1113 | ) | |
| | ) | MAG. JUDGE WILKINSON |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR AN ORDER (1)
GRANTING FINAL APPROVAL OF THE SETTLEMENT AGREEMENT
REGARDING CLAIMS AGAINST COASTAL CONSTRUCTION OF
SOUTH FLORIDA, INC. RELATED TO VILLA LAGO AT RENAISSANCE
COMMONS IN MDL 2047; (2) CERTIFYING THE SETTLEMENT CLASS;
AND (3) APPOINTING CLASS COUNSEL**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................2

II.     THE COASTAL SETTLEMENT ...........................................................3

     A. The Coastal Settlement Class.............................................................3
     B. Settlement Benefits ...........................................................................4
     C. Payment of Administrative and Attorney's Fees, Costs and Expenses..............7

III.    BACKGROUND ...................................................................................11

     A. The Chinese Drywall Litigation.........................................................11
     B. The Hobbie Action ...........................................................................12
     C. Reasons for the Settlement ...............................................................13

IV.    ARGUMENT .........................................................................................14

     A. Pretrial Settlements of Complex Class Actions Are Favored ...........14
     B. Standards for Approval of Class Settlements.....................................15
     C. The Coastal Settlement is Fair, Reasonable, Adequate, and in the Best
        Interest of Class Members ................................................................18
        1.  There is no Existence of Fraud or Collusion Behind the Settlement..........19
        2.  The Complexity, Expense, and Likely Duration of the Litigation Weigh
            In Favor of Approval of the Settlement ......................................19
        3.  The Stage of the Proceedings and the Amount of Discovery Completed
            Support Approval of the Settlement ...........................................19
        4.  The Probability of Plaintiffs' Success on the Merits ...................20
        5.  The Range of Possible Recovery ................................................22
        6.  The Opinions of Class Counsel, Class Representatives, and Absent Class
            Members Support Approval of the Settlement ...........................24
     D. The Requirements of Rule 23(a) and Rule 23(b)(3) Have Been Met for
        Certification of the Coastal Settlement Class ..................................26
        1.  Numerosity..................................................................................27
        2.  Commonality...............................................................................28
        3.  Typicality....................................................................................29
        4.  Adequacy of Representation .......................................................30
        5.  Commons Questions of Law and Fact Predominate....................31
     E. The Class Settlement Notices Complied with this Court's Orders and Due
        Process ............................................................................................32

V.      CONCLUSION.....................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Air Line Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*,
 630 F.2d 1164 (7th Cir. 1980) ........................................................................14

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ......................................... *passim*

*Braud v. Transport Serv. Co. of Ill.*, 2010 WL 3283398 (E.D. La. Aug. 17, 2010)..........14

*Brown v. Ticor Title Ins.*, 982 F.2d 386 (9th Cir. 1992) ....................................30

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ....................................................28

*Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. Sept. 23, 2004) ...............16, 18

*CDC Builders, Inc. v. Amerisure Mut. Ins. Co.*, 2011 WL 4454937
 (S.D. Fla. Aug. 16, 2011)..............................................................................21

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974)......................................17

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)........................................................ *passim*

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ..................................20, 22

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974)........................................................34

*Evans v. Jeff D.*, 475 U.S. 717 (1986)..............................................................14

*FCCI Advantage Ins. Co. v. Gulfcoast Eng'g, LLC*, 10-CA-2862
 (20th Jud. Cir. Ct. Lee Cty., Fla. Aug. 8, 2011)................................................21

*FCCI Commercial Ins. Co. v. Al Brothers, Inc.*, 10-CA-2840
 (20th Jud. Cir. Ct., Lee Cty., Fla. Apr. 19, 2011) ............................................21

*FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall*, 10-CA-7389
 (12th Jud. Cir. Ct., Sarasota Cty., Fla. Jul. 6, 2011)............................................21

*FCCI Commercial Ins. Co. v. Ocean Construction, Inc.*, 10-CA-2841
 (20th Jud. Cir. Ct., Lee Cty., Fla. Jun. 6, 2011)................................................21

*FCCI Commercial Ins. Co. v. Residential Drywall, Inc.*, 10-23495
 (13th Jud. Cir. Ct. Hillsborough Cty., Fla. Sept. 7, 2011................................21

*FCCI Commercial Ins. Co. v. S.D. & Assoc., Inc.*, 10-29152-18
 (17th Jud. Cir. Ct. Broward Cty., Fla. Jul. 20, 2011)................................21

*FCCI Commercial Ins. Co. v. Shirley Constr. & Drywall, Inc*., 102979-CA
 (20th Jud. Cir. Ct. Charlotte Cty., Fla. Aug. 1, 2011).......................................................21

*FCCI Ins. Co. v. Swedberg Enter., Inc. d/b/a Florida Drywall*, 51 2010 CA 005680
 (6th Jud. Cir. Ct. Pasco Cty., Fla. Oct. 7, 2011) ................................................................21

*FCCI Ins. Co. v. S3 Enter., Inc*., 10-CA-2850
 (20th Jud. Cir. Ct. Lee Cty., Fla. Sept. 16, 2011) .............................................................21

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .......................................................29

*Georgevich v. Strauss,* 96 F.R.D. 192 (M.D. Pa. 1982) ....................................................16

*Granite State Ins. Co. v. Am. Building Materials, Inc.*, 2011 WL 6025655
 (M.D. Fla. Dec. 5, 2011)........................................................................................................21

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)....................................17

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)............................................29

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998) ................................................29

*In re Beef Indus. Antitrust Litig*., 607 F.2d 167 (5th Cir. 1979) ......................................15

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228 (5th Cir. 1982).......................15

*In re Chinese Manufactured Drywall Prods. Liab. Litig. (Germano),* 706 F. Supp. 2d 655
 (E.D. La. 2010) .....................................................................................................................11

*In re Chinese Manufactured Drywall Prods. Liab. Litig. (Hernandez)*,
 2010 WL 1710434 (E.D. La. Apr. 27, 2010)............................................................11, 28

*In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 626 F. Supp. 2d 1346
 (J.P.M.L. 2009) .....................................................................................................................12

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) ...........................................16

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ...............15, 18

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig*., 2008 WL 5423488
 (E.D. La. Dec. 29, 2008)........................................................................................................27

*In re Lease Oil Antitrust Litig*., 186 F.R.D. 403 (S.D. Tex. 1999) ...................................27

*In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088 (5th Cir. 1977) .......................34

*In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................26

*In re Shell Oil Refinery,* 155 F.R.D. 552 (E.D. La. 1993) .................................................26

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992).............................................15

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir.) ...................16

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) .....................................................26

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) .........................................14, 15, 17

*Marshall v. Holiday Magic, Inc*., 550 F.2d 1173 (9th Cir. 1977)......................................25

*Miller v. Republic Nat'l Life Ins. Co*., 559 F.2d 426 (5th Cir. 1977) ...............................15

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999)..............................28

*Murillo v. Pac. Gas & Elec. Co*., 2010 WL 2889728 (E.D. Cal. July 21, 2010)..............25

*Officers of Justice v. Civil Serv. Comm'n of City and County of San Francisco,*
 688 F.2d 615 (9th Cir. 1982) ........................................................................................22

*Oppenlander v. Standard Oil Co*., 64 F.R.D. 597 (D. Colo. 1974) ...................................26

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) .............................................15, 18, 20

*Pearson v. Ecological Sci. Corp*., 559 F.2d 171 (5th Cir. 1975)......................................15

*Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157 (5th Cir. 1978) .....................15, 18, 24

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .....................................................34

*Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003)..........26

*Reed v. General Motors Corp*., 703 F.2d 170 (5th Cir. 1983).................................. *passim*

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ....................................16

*Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992).......................29

*Smith v. Crystian*, 91 Fed. Appx. 952 (5th Cir. 2004) ......................................................14

*Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830 (E.D. La. 2007).................... *passim*

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) .................20

*United States v. Tex. Educ. Agency*, 679 F.2d 1104 (5th Cir. 1982) ...........................16, 17

*Vintage Properties, Inc. v. Mid-Continent Cas. Co.*, 10-cv-80836

(S.D. Fla. Aug. 23, 2011) ............................................................................................21

*Weinberger v. Thornton*, 114 F.R.D. 599 (S.D. Cal. 1986) ..............................................29

*White v. Imperial Adjustment Corp.*, 2002 WL 1809084  (E.D. La. Aug. 6, 2002) ..........33

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ............................................................15, 17

## **OTHER AUTHORITIES**

Manual for Complex Litigation, § 21.61 (Fourth) .............................................................16

Manual for Complex Litigation, § 21.632 (Fourth) ..........................................................27

Newberg on Class Actions, § 1:3 (4th ed.) .......................................................................16

Newberg on Class Actions, § 3.1 (4th ed.) .......................................................................29

Newberg on Class Actions, § 3:3 (4th ed.) .......................................................................28

Newberg on Class Actions, § 3:13 (4th ed.) ................................................................29, 30

Newberg on Class Actions, § 3:21 (4th ed.) .....................................................................30

Newberg on Class Actions, § 4:25 (4th ed.) .....................................................................31

Newberg on Class Actions, § 11.41 (4th ed.) ..............................................................14, 16

Newberg on Class Actions, § 11.47 (4th ed.) ...................................................................24

Newberg on Class Actions, § 11.50 (4th ed.) ...................................................................19

Pursuant to this Court's Order dated April 24, 2013 (Doc. # 16777), Settlement Class Counsel and Coastal Construction Company of South Florida, Inc.,[1] submit this memorandum of law in support of their motion for an Order and Judgment, the terms of which include:

(1)     Finally approving the Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL No. 2047 dated March 28, 2013 as fair, reasonable and adequate;

(2)     Certifying the Settlement Class under Rule 23(a) and Rule 23(b)(3), appointing Gary E. Mason and Daniel R. Bryson of Whitfield Bryson & Mason LLP, Joel R. Rhine of The Rhine Law Firm, P.C., Adam Linkhorst of Linkhorst & Hockin P.A., and Gregory S. Weiss of Leopold Law, P.A. as Settlement Class Counsel;

(3)     Finding that the notice given constituted due, adequate and sufficient notice, and met the requirements of due process, the Federal Rules of Civil Procedure, and any applicable state laws;

(4)     Finding that Settlement Class Counsel has served upon the appropriate State official of each State in which a Class Member resides, and the appropriate Federal official, a copy of the complaint and the amended complaint in this Action, notice of the hearing on the motion for preliminary approval of the Settlement, Class Notice, the Settlement Agreement, the names of the class members who reside in each state, if known, and a reasonable estimate of the number of class members residing in each state that complies with the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711-1715;

---

[1] Capitalized terms used in this Joint Memorandum shall have the same meaning as those defined in the Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL No. 2047 dated March 28, 2013, (the "Coastal Settlement") (Doc. # 16741-2), attached as Exhibit 1 to the Memorandum in Support of the Joint Motion for an Order (1) Preliminarily Approving Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL 2047; (2) Conditionally Certifying a Settlement Class; (3) Approving the Form of Notice and Authorizing the Dissemination of the Notice; (4) Scheduling a Fairness Hearing; and (5) Staying the Litigation Against Coastal Construction of South Florida, Inc. (Doc. # 16741) ("Prel. App. Memo.").

(5)     Approving the Class Release provided in Section 5.2 of the Settlement Agreement and ordering that, as of the Effective Date, the Released Claims will be released as to Coastal and all Released Parties;

(6)     Dismissing all of the Class Members' claims in the Litigation against Coastal Construction of South Florida, Inc. with prejudice;

(7)     Dismissing all of RCR Holdings II, LLC's claims in its Third Party Complaint against Arch Insurance Company;[2]

(8)     Enjoining and forever barring any and all Participating Class Members, any individual or entity who has not properly opted out, Knauf, and its affiliated companies and/or any of the Other *Hobbie* Defendants from commencing and/or maintaining any action, legal or otherwise, or any and all claims which could have been brought against Coastal Construction of South Florida, Inc. and any other Released Party arising from or relating to, Chinese Drywall; and

(9)     Finding that, pursuant to Federal Rule of Civil Procedure 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

## I.   __INTRODUCTION__

The Coastal Settlement is the last piece of a complicated puzzle that, when complete, will enable the entirety of the condominium project knows as Villa Lago at Renaissance Commons, to be remediated.  The other pieces of the puzzle are now firmly in place.  The $4.8 million settlement with RCR Holdings II, LLC ("RCR") has been granted final approval and the funds are presently available.  In addition, the necessary funds available from the Knauf, Global and Banner settlements are or will soon be available.  Indeed, at this juncture the parties are prepared to proceed with the remediation of Knauf units at Villa Lago in advance of final approval of the Coastal Settlement and have begun the pre-construction administration process.  Remediation of

---

[2] *See* Defendant/Third Party Plaintiff, RCR Holdings II, LLC's Third Party Complaint Against Third Party Defendant, Arch Insurance Company, Mar. 7, 2011, Exhibit 1 hereto.

the first units may begin as early as October, 2013.  Upon final approval of this settlement, and the securing of funding from the Banner and Global settlements, the start of remediation of non-KPT units will follow shortly thereafter.

The Coastal settlement itself represents a substantial portion of the total funds needed to reach a settlement and for the remediation of Villa Lago on terms consistent with the Knauf settlement. Getting to this point took several years of negotiations and numerous mediations with all parties, as well as Moss, the remediation contractor.  In the end, the parties were able to secure a total settlement package with sufficient funds to pay Moss for the remediation, provide all affected unit owners, KPT and non-KPT alike, with benefits available from, or consistent with, the Knauf settlement, and allow for an award of reasonable attorney fees and reimbursement of costs.

## II.    THE COASTAL SETTLEMENT

### A.    The Coastal Settlement Class

After more than three years of litigation and numerous mediations, Class Members, RCR, Coastal and the other Settling Defendants and Insurers have agreed on a settlement resolving all class and individual claims against Coastal and the other Settling Defendants and Insurers in the Litigation.  The proposed Settlement now before the Court for final approval is intended to resolve all claims that arise out of Chinese Drywall manufactured, sold, distributed to, used or installed in the Residences at Villa Lago, a 328 unit condominium development located in Boynton Beach, Florida.  The Coastal Group Settlement Contribution, along with funds from the Knauf Settlement, the RCR Settlement, the Banner Settlement, and the Global Settlement with Precision Drywall, Inc. ("Precision"), which installed drywall in Villa Lago, will be used to completely remediate all Residences at Villa Lago containing Chinese Drywall and certify the Residences as free of Chinese Drywall, regardless of who manufactured the Chinese Drywall.

The Settlement Agreement establishes a Settlement Fund for the benefit of the Settlement

Class, which is defined as: "all persons and entities who owned, leased or occupied a condominium located at Villa Lago at Renaissance Commons in Boynton Beach, Florida, the COA, and all persons and entities who sustained or claim to have sustained damages of any nature or kind as a result of the alleged manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago at Renaissance Commons." Excluded from the Settlement Class are any person, firm, trust, corporation, or other entity related or affiliated with the Participating Defendants and Participating Insurers including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants and Insurers."

**B.**     **Settlement Benefits**

The proposed Settlement provides for the creation of the Villa Lago Settlement Fund in order to facilitate the funding of the remediation of all units at Villa Lago at Renaissance Commons containing Chinese Drywall, regardless of the manufacturer of the Chinese Drywall. The proposed Settlement, therefore, together with the Banner, Knauf, RCR and global settlements with suppliers, builders, installers and their insurers, resolves all claims arising out of the manufacture, sale, distribution, use, installation or remediation of alleged defective Chinese Drywall at Villa Lago.

The Coastal Group Settlement Contribution in the amount of $7,200,000, which will be paid within fifteen days of the Effective Date of the Settlement, will be combined with funds allocated to the Villa Lago development in the Global Settlement with Precision, the global Banner Settlement, and with funds from the RCR Settlement to create the Villa Lago Settlement Fund. The entire Coastal Group Settlement Contribution, all amounts allocated to Villa Lago in the Global Settlement with Precision, all amounts allocated to Villa Lago in the global Banner Settlement, and all amounts the *Hobbie* Plaintiffs received from the RCR Settlement will be

4

deposited into the Villa Lago Settlement Fund.

The Villa Lago Settlement Fund, as shown on Exhibit A to the Coastal Settlement Agreement, shall be distributed as follows: the entire Coastal Group Settlement Contribution, all amounts allocated to Villa Lago in the Global Settlement with Precision, all amounts allocated to Villa Lago in the global Banner Settlement, and the sum of $1,529,189.80 from the *Hobbie* Plaintiffs RCR Settlement shall be deposited into the Remediation Fund, which is the escrow account administered by US Bank in the Knauf Settlement. In order to fund the remediation of all Residences at Villa Lago containing Chinese Drywall, the Villa Lago Settlement Fund contributions deposited into the Remediation Fund shall be distributed from the Remediation Fund to Moss & Associates, LLC ("Moss"), the lead remediation contractor in the Knauf Settlement, which will remediate the Residences at Villa Lago containing Chinese Drywall, and such payments shall be consistent with the progress payments made to Moss in the Knauf Settlement, or as otherwise agreed to by the Villa Lago Condominium Association at Renaissance Commons, Inc. ("COA") and Moss.

Class Members will use the Villa Lago Settlement Fund along with funds obtained from the Knauf Settlement to, *inter alia*, fund the remediation of all 267 Affected Units identified on a spreadsheet of units to be remediated, attached to the Coastal Settlement Agreement as Exhibit B. Pursuant to Exhibit A to the Coastal Settlement Agreement, the cost to remediate all 267 Affected Units at Villa Lago is $24,331,750.00. Knauf agrees to be responsible for any shortfall on the Precision and/or Banner remediation payments as set forth in Exhibit A to the Coastal Settlement Agreement, and Knauf will receive the benefit of any overpayments on the Precision and/or Banner allocations. Class Members shall look solely to the Villa Lago Settlement Fund for settlement and satisfaction against the Released Parties of all Released Claims, and shall have no other recovery of costs, fees, attorneys' fees, damages, or

any other relief against the Released Parties.

As part of the remediation of all 267 Affected Units identified on Exhibit B to the Coastal Settlement Agreement, Knauf will arrange for GFA International to provide Environmental Certificates in the form attached as Exhibit B to the Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047, September 12, 2012, Doc. # 15787, for all units in Villa Lago, including ones not being remediated. The Environmental Certificates for units not being remediated shall be modified in an appropriate manner. The cost for these inspections is between $250 per unit (3 or more inspections the same day) and $350 per unit (1-2 inspections per day), and a portion of the Villa Lago Settlement Fund will fund this cost for the non-Knauf units as shown on Exhibit A.

The total amount of $709,468.62 shall be made available from the Villa Lago Settlement Fund in accordance with Exhibit A to the Settlement Agreement to compensate owners and former owners of units containing Chinese Drywall that was not manufactured by Knauf for economic losses consistent with the Knauf settlement. These payments, however, shall not impair any Class Members from also seeking to recover their economic losses or damages for bodily injury from the Knauf Settlement's Other Loss Fund, or to make any claim or receive any benefit for which they are eligible in the Knauf Settlement, the Banner Settlement, or the Global Settlement. The Released Parties, however, shall have no further liability to compensate Class Members of units containing Chinese Drywall that was not manufactured by Knauf.

Remediation under this Coastal Settlement Agreement will be coordinated with Knauf and Moss, in accordance with the Scope of Work, which includes: (1) the work described by Moss at meetings with Class Counsel on January 15, 2013 and January 21, 2013, (2) the work described in the Moss Remediation Protocol attached to the Coastal Settlement Agreement as Exhibit C, and (3) such modifications and amendments that Moss and Class Counsel may agree

to including, without limitation, provisions relating to warranting Moss's work, dispute resolution and special conditions. To ensure adequate funding, the Plaintiffs and Moss agree to the following scope of work changes solely for the foreclosed units that require remediation: detach and reset fixtures using the best fixtures available from those removed from both buildings, and detach and reset washers, dryers and dishwashers (and not replace). All payments to Moss for work performed shall come solely from the Remediation Fund.

The sum of $75,000.00 to be contributed by Knauf as shown on Exhibit A and included in the Villa Lago Settlement Fund, shall be placed in an account managed by the Plaintiffs, and at the discretion of Class Counsel, shall be used for the benefit of owners and occupants of unaffected units. The fund shall be capped at $150,000.00, inclusive of the contribution by Knauf, and the Released Parties shall have no further liability to those who live in unaffected units. Settlement Class Counsel shall have full and exclusive control to distribute these funds as they see fit. In no circumstances, however, shall the Settlement Agreement be construed to require the Released Parties to pay more than the settlement contributions identified in Section 2.1 of the Settlement Agreement.

C.     **Payment of Administrative and Attorney's Fees, Costs and Expenses**

The cost of notice to the Class Members and related administration, and claims processing costs ("Administrative Expenses") shall be paid by Settlement Class Counsel from the Villa Lago Settlement Fund. If Settlement Class Counsel enter into any other settlements on behalf of the Class Members before notice of this Settlement Agreement is given to the Class Members, Settlement Class Counsel shall use their best efforts to provide a single notice to Class Members of all of the settlements.  Should Settlement Class Counsel determine a single notice to Class Members is appropriate, should settlement with another party occur, and settlement in the this matter does not become final, any money from the Settlement Fund used to pay for notice or

7

administration costs shall be returned to those entities who funded the Coastal Group Settlement Contribution as set forth in Section 2.1 of the Settlement Agreement in proportion to their individual contributions.

Settlement Class Counsel shall be awarded such fees and reimbursed such costs and expenses from the Villa Lago Settlement Fund as are approved by the Court. However, subject to Court approval, the parties have agreed to attorneys' fees of $2,670,960.62 and costs of $380,946 for a total of $3,051,906.63 as shown on Exhibit A, which amount includes, but is not limited by the projected award of attorney's fees and costs Settlement Class Counsel may receive from the Banner Settlement and the Global Settlement and that may be paid to the Villa Lago Settlement Fund consistent with any fee applications that Settlement Class Counsel may submit to the Court in the Banner Settlement and the Global Settlement.[3]

Settlement Class Counsel may submit an application to the Court for distributions from the Villa Lago Settlement Fund, and the Settling Defendants and Insurers shall not oppose or object to Settlement Class Counsel's application for an award of attorneys' fees and costs as set forth in Section 13 of the Settlement Agreement ("the Fee and Expense Award").  Any attorneys' fees or costs sought by Settlement Class Counsel shall be solely borne by the Villa Lago Settlement Fund, and the Settling Defendants and Insurers and the Released Parties shall not have any responsibility for the payment of attorneys' fees, costs or expenses to Settlement Class Counsel.

That portion of the Fee and Expense Award, as approved by the Court, that relates to attorneys' fees only shall be paid from the Villa Lago Settlement Fund to any of the Settlement Class Counsel seeking such payment within five (5) court days after the Court has entered an

---

[3] It is expressly agreed and understood, however, that while Knauf anticipates Settlement Class Counsel will seek a fee application pursuant to the Knauf Settlement Agreement, Knauf has no obligation to pay attorneys' fees or costs under this Settlement Agreement as set forth in the Knauf Term Sheet dated September 25, 2012.

order awarding Settlement Class Counsel its fees.

The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses to be paid out of the Villa Lago Settlement Fund, and any plan for distribution of the Villa Lago Settlement Fund to Class Members, are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application or any plan of distribution, or any appeal from any such order(s) shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving Settlement.

The Released Parties shall not have any responsibility for, or interest in, or liability whatsoever with respect to any payment of any Fee and Expense Award in the Litigation to counsel for the Plaintiffs or Class Members. Additionally, the Released Parties shall not have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

If approved by the Court, these fees are to compensate Settlement Class Counsel for all preparation and litigation work performed on behalf of the Class, as well as all work to be performed in connection with the administration of the Settlement and attendant remediation project, and to reimburse Settlement Class Counsel for reasonable costs expended in the prosecution of this action, as well as Administrative Expenses. Thus, individual Class Members will not be responsible for payment of attorneys' fees or costs out of their recovery of benefits under the Settlement, and the payment of Administrative Expenses, attorneys' fees and costs will be in addition to remediation of all Affected Units at Villa Lago containing Chinese Drywall regardless of the manufacturer of the Chinese Drywall.

* * *

Settlement Class Counsel believe the Settlement Agreement represents an extraordinary result. As a result of this settlement, in combination with the related CDW settlements, all affected units at Villa Lago will be remediated, including Knauf units, non-Knauf units, and mixed units, certain additional cash benefits will be available consistent with the Knauf settlement, and the class members will not have to individually pay any attorneys' fees or costs. In addition, the traditional factors to be considered by the Court demonstrate that this settlement is more than adequate and reasonable.  These factors include the estimated damages suffered by the Class, the exposure of Coastal relative to the other Defendants, the complexity of and risks attendant to Class Members' demonstration that their damages were causally linked to Coastal's alleged wrongdoing, the possibility Coastal may not have insurance coverage to respond to Class Members' alleged damages, and the delays inherent in litigating hundreds of individual claims against Coastal. Class Counsel and Coastal believe the Settlement is a reasonable settlement of disputed claims that was negotiated at arm's length.

The Settling Parties, therefore, respectfully submit the Settlement Agreement is fair, reasonable and adequate under the governing standards for evaluating final approval of class action settlements in the Fifth Circuit. Moreover, certification of the Class for settlement purposes is appropriate pursuant to Fed. R. Civ. P. 23, and the notice program, provided in Section 7 of the Settlement Agreement specifying individual notice via first-class mail to all Class Members, publication of notice through the media identified in Section 7 of the Settlement Agreement, and posting the notice on the Court's Chinese Drywall MDL website, satisfies the requirements of due process. As set forth below, all prerequisites for final approval of the Settlement Agreement and certification of the proposed Settlement Class have been met, and Settlement Class Counsel and Coastal respectfully submit their Joint Motion for Final

Approval of the Settlement Agreement should be granted.

III.    **BACKGROUND**

   A.    **The Chinese Drywall Litigation**

In the aftermath of Hurricanes Katrina and Rita in 2005, this country faced a critical shortage of drywall for the reconstruction of homes and other structures damaged by the storms. Beginning in the fall of 2005, hundreds of millions of square feet of Chinese Drywall were exported to the United States, sold to distributors and suppliers, resold to builders and installers, and installed in thousands of properties domestically, but primarily in Florida, Louisiana, Alabama, Mississippi, Texas and Virginia.[4]

Certain Governmental agencies found Chinese Drywall to be defective, allegedly causing property damage, including damage to structural, mechanical and plumbing systems, such as the framing, heating, air-conditioning and ventilation ("HVAC") units, refrigeration coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and other property, such as microwaves, utensils, electronic appliances, jewelry, and other household and personal property items.[5] The Remediation Guidance of the Department of Housing and Urban Development ("HUD") and the U.S. Consumer Product Safety Commission ("CPSC") made various recommendations for the repair of properties impacted by Chinese Drywall, including the removal of problematic drywall, fire safety alarm devices, electrical distribution components (including receptacles, switches and circuit breakers), gas service piping and fire suppression

---

[4] The Gypsum Association reports that 320 million square feet of Chinese Drywall were imported from 2005-2007. *See* Gypsum Association Comments, published at
  http://www.gypsum.org/pdf/Gypsum_Association_Comments_on_Chinese_Wallboard_Issue.pdf.

[5] *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Germano),* 706 F. Supp. 2d 655, 664-666 (E.D. La. 2010) (Findings of Fact and Conclusions of Law); *In re Chinese Manufactured Drywall Prods. Liab. Litig. (Hernandez),* No. MDL 2047, 2010 WL 1710434, at * 8-9 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

sprinkler systems.[6]  Some individuals also have alleged that they suffered physical ailments, such as nose bleeds, skin irritation, and respiratory problems, as a result of exposure to Chinese Drywall. The CPSC and Centers for Disease Control and Prevention's National Center for Environmental Health have found no evidence, however, that exposure to Chinese Drywall causes any ill health effects.

As a result, thousands of individual and class action lawsuits were filed in federal and state courts throughout the country.  On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to this Court for coordinated and consolidated pretrial proceedings in MDL 2047, pursuant to 28 U.S.C. § 1407.[7]  There are currently six other settlement agreements that have been given final approval by this Court: the RCR Settlement, L&W Settlement, Knauf Settlement, Banner Settlement, Interior Exterior Settlement, and the Global Class Settlement.[8]

### B.    The *Hobbie* Action

The *Hobbie* action was filed on September 21, 2009 in the Circuit Court for Palm Beach County, Florida against RCR Holdings II, LLC ("RCR"), Coastal Construction of South Florida, Inc., d/b/a/ Coastal Condominiums ("Coastal"), Precision Drywall, Inc. ("Precision"), La Suprema Enterprise, Inc., La Suprema Trading, Inc., and Banner Supply Company, Inc. ("Banner").[9]  It involves a multi-unit residential building located in Boynton Beach, Florida, known as Villa Lago.

---

[6]  *See* CPSC's Remediation Guidance for Homes with Corrosion from Problem Drywall as of March 18, 2011, published at http://www.cpsc.gov/info/drywall/Remediation031811.pdf.

[7]  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

[8]  This Court granted final approval to the RCR Settlement on November 19, 2012, and to the other five settlements on February 7, 2013. *See* Case No. 2:09-md-02047- EEF-JCW, Final Order Approving Class Settlement with Defendant RCR Holdings II, LLC Doc. # 16265, and Order Granting Final Approval to the Inex, Banner, Knauf, L&W, and Global Settlement, Doc. # 16570.

[9]  Banner Supply Company, Inc. consists of Banner Supply Company, Banner Supply Company of Pompano, LLC, Banner Supply Company of Fort Myers, LLC, and Banner Supply Company of Tampa, LLC.

Villa Lago was built during 2005 through 2007.  It is part of a large mixed use development project known as Renaissance Commons and is composed of 328 residential condominium units.[10]  The *Hobbie* action was removed by Banner on February 26, 2010, then transferred to this Court pursuant to MDL procedures.  The majority of the Class Members in this action have also been named on Class Action Omnibus complaints filed in this Court by the Plaintiffs' Steering Committee in MDL No. 2047.

C.      **Reasons for the Settlement**

The Coastal Group, consisting of Coastal, its drywall installer, Precision, and Coastal's and Precision's insurers, shall pay $7,200,000 as set forth in Section 2 of the Coastal Settlement Agreement in exchange for the full, complete and final settlement of Class Members' claims against the Settling Parties in the *Hobbie* action and in the omnibus class action complaints that assert claims against Coastal involving Villa Lago.  Although Settlement Class Counsel believe in the merits of the case against Coastal and in their ability to prevail, they recognize that, even if the case against Coastal were to proceed to trial, Coastal would likely appeal any judgment favorable to the Class. Any post-appeal enforcement proceeding would impose a significant additional delay on the payment of any recovery to individual Settlement Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.

The Settling Parties respectfully request that this motion be granted not only because, as will be set forth herein, public policy favors the settlement of complex class actions such as this, but because the Settlement Agreement is an excellent result for the Settlement Class Members. It is fair, reasonable and adequate, and was negotiated at arm's length and most importantly results in the complete remediation of all units at Villa Lago containing Chinese Drywall, regardless of who manufactured the Chinese Drywall. In light of the foregoing, it is respectfully

---

[10] RCR owns 130 of these units.

13

requested that the Court enter an Order granting final approval of the Settlement Agreement, certifying the Settlement Class, and appointing Settlement Class Counsel.

## IV.     ARGUMENT

### A.     Pretrial Settlements of Complex Class Actions are Favored.

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986).  In determining whether to approve the Coastal Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See*, *e.g.*, *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007); *Braud v. Transport Serv. Co. of Ill.*, No. 05-1898, 2010 WL 3283398, at * 3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.); Rubenstein, Conte and Newberg, Newberg on Class Actions, § 11.41 (4th ed.).[11]  This is, in part, because of the complexity and size of class actions:

> Particularly in class action suits, there is an overriding public interest in favor of settlement. . . . It is common knowledge that class action suits have a well deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action. . . . In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331 (citation omitted); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially apparent in the class action context where claims are complex and . . . could lead to years of protracted litigation and sky-rocketing expenses.").

In addition:

---

[11] "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement . . . . This rule has particular force regarding class action lawsuits." *Air Line Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1167 (7th Cir. 1980).

14

> Complex litigation - like the instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions. . . . Although class action settlements require court approval, such approval is committed to the sound discretion of the district court.

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citations omitted).  Courts have recognized that certification of a class for settlement purposes is beneficial in resolving major class action disputes.  *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-177 (5th Cir. 1979).

**B.      Standards for Approval of Class Settlements.**

Determining the fairness of class settlements is left to the sound discretion of the district court, and an appellate court will not overturn the district court's decision absent a clear showing of abuse of that discretion.  *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982), *citing Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 218 (5th Cir. 1981); *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *Cotton*, 559 F.2d at 1331; *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971); *see also U.S. Oil*, 967 F.2d at 493-494. The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits."  *Miller*, 559 F.2d at 428, *quoting*, *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975).   Moreover, because settlements of class actions are "particularly favored," they are not to be lightly rejected.  *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843.

In its role as a "fiduciary for absent class members," the district court has a responsibility to "critically examine[] the settlement's terms and implementation." *Murphy Oil*, 472 F. Supp. 2d at 842-843; *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-280 (7th Cir. 2002); *Georgevich v. Strauss*, 96 F.R.D. 192, 196 (M.D. Pa. 1982) ("[T]he Court must vigorously act as guardian of the rights of absentee class members."); 1 Newberg on Class Actions, § 1:3 (4th ed. 2002); Manual for Complex Litigation, § 21.61 (Fourth 2004). In so doing, the district court must "exercise the highest degree of vigilance . . . ." *Murphy Oil*, 472 F. Supp. 2d at 843, *quoting Reynolds*, 288 F.3d at 279-280.[12]

"[T]he proponents of the [class] settlement bear the burden of demonstrating that the settlement is fair, reasonable, and adequate." *Murphy Oil*, 472 F. Supp. 2d at 844. However, in the absence of contrary evidence, there is a presumption "in favor of the settlement's fairness." *Id.* at 843; *see also Camp v. Progressive Corp.*, No. 01-2680, 03-2507, 2004 WL 2149079, at * 7 (E.D. La. Sept. 23, 2004) ("court may presume that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations."), citing Newberg on Class Actions § 11.41 (4th ed.); *U.S. v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

Keeping this in mind, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (citation and quotation marks omitted). In other words, in weighing the benefits obtained by settlement against benefits dependent on the likelihood of

---

[12] In adjudicating the motion for final approval, "[t]he Court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members, and should provide the basis for its conclusions in a reasoned opinion." *Murphy Oil*, 472 F. Supp. 2d at 842, *citing* Manual for Complex Litigation, § 21.61 (2004); *see In re Combustion, Inc.*, 968 F. Supp. 1116, 1125 (W.D. La. 1997) (stating that a court may not give boilerplate approval to settlement, but must instead analyze the facts and law supporting its conclusion in a memorandum); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005).

recovery on the merits, courts are not expected to balance the scales.  *See id.*  The very object of a compromise "is to avoid the determination of sharply contested and dubious issues."  *Young*, 447 F.2d at 433.

Thus, a court should not engage in a trial on the merits when considering the propriety of a settlement:

> It cannot be overstated that neither the trial court in approving the settlement nor [the appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330, *quoting, Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2nd Cir. 1974); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation."). The trial court is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel.  *Maher*, 714 F.2d at 455, n. 31 ("In other words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute."); *Tex. Educ. Agency*, 679 F.2d at 1108 (in approving a class settlement "we do not thereby reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, as we recognize that normally a settlement is a process of compromise in which, in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation, . . . rather than an attempt to precisely delineate legal rights.") (internal quotations and citations omitted).

17

**C.** **The Coastal Settlement is Fair, Reasonable, Adequate, and in the Best Interest of Class Members.**

The United States Court of Appeals for the Fifth Circuit has articulated six factors or "focal facets" for the Court to consider in evaluating the fairness of the proposed class settlements: (1) the existence of fraud or collusion behind the settlements; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the absent class members.  *See Reed*, 703 F.2d at 172 (adopting six-factor test cited in prior Fifth Circuit decisions including *Parker*, 667 F.2d at 1209, *Corrugated Container*, 643 F.2d at 217, and *Pettway*, 576 F.2d at 1214).  An analysis of these factors overwhelmingly favors approval of the Settlement before the Court.

**1.** *There is No Existence of Fraud or Collusion Behind the Settlement.*

The law recognizes "a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."  *Camp*, 2004 WL 2149079, at * 7; *see also Murphy Oil*, 472 F. Supp. 2d at 846 ("a presumption exists that settlement negotiations were conducted properly in the absence of collusion if the terms of the proposed settlement are demonstrably fair.").  The Settlement before the Court is the product of protracted arm's-length negotiations between Settlement Class Counsel and Coastal.

The Settling Parties in this Litigation have tried to resolve this case through formal and informal mediation on numerous occasions. On February 15-16, 2011, Settlement Class Counsel and Coastal participated in a mediation before Court-appointed Mediator, Richard O. Kingrea, in Miami, Florida, which by order of this Court, was continued in New Orleans, Louisiana, on March 22, 2011. Thereafter, Coastal and Settlement Class Counsel attended an informal mediation in Miami, Florida on December 9, 2011; attended Court-ordered mediation before Court-appointed Mediator, Dan Balhoff, on August 22-23, 2012; attended Court-

ordered mediation on January 15-16, 2013, and had numerous additional discussions between January 17, 2013 and January 30, 2013, including a last minute trip to meet with Moss in Ft. Lauderdale on January 20, 2013, to identify further project cost savings, which ultimately resulted in the Settling Parties reaching agreement and executing a Term Sheet dated January 29, 2013 evidencing the terms of the Settlement. Given the evidence of arm's-length negotiations and no evidence on any impropriety, the Court may presume that the proposed settlements are fair and reasonable. *See Camp*, 2004 WL 2149079, at * 7.

### 2. *The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Approval of the Settlement.*

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See* Newberg on Class actions, § 11.50 (4th ed.). In this case, the high level of complexity, incredible expense, and likely duration of the Litigation militate in favor of consummating final approval for the Coastal Settlement. This action originated on September 21, 2009. Since then, Settlement Class Counsel has worked vigorously to prosecute the claims of the Class Members, having engaged in several failed mediations and numerous subsequent discussions and telephonic meetings. Meanwhile, many of the Plaintiffs have been displaced from their homes, many have lost their homes due to foreclosure or sales in mitigation, and many have suffered additional damages such as loss of personal property. The Settlement with Coastal <u>is</u> the final step to reach final resolution of the *Hobbie* Action. These factors weigh heavily in support of approval of the Settlement.

### 3. *The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlement.*

This Litigation has been ongoing for more than three years. Early in the case, Settlement Class Counsel reviewed thousands of documents produced by Coastal. In addition to the several failed mediations, this Court entered a Scheduling Order on July 15, 2011 in the *Hobbie* matter.

The parties engaged in further document discovery and conducted a deposition of a 30(b)(6) representative from Coastal.  Pursuant to the Scheduling Order, all parties filed briefs in January 2012.  The discovery and briefing allowed parties to be informed about their case with regards to the Settlement.  "Thus, settlement was achieved in the full context of the adversarial process." *Murphy Oil*, 472 F. Supp. 2d at 846.  Even this limited discovery and briefing at this stage of the proceedings supports final approval of the Settlement.  *Cf. Union Asset Mgmt. Holding A.G. v. Dell, Inc*., 669 F.3d 632, 639 (5th Cir. 2012) (upholding approval of class settlement even though no formal discovery had been taken).

### 4. *The Probability of Plaintiffs' Success on the Merits*

In the absence of fraud or collusion behind the class settlements, "the probability of the plaintiffs' success on the merits has been held by the Fifth Circuit as the most important *Reed* factor."  *Murphy Oil*, 472 F. Supp. 2d at 848, *citing Parker*, 667 F.2d at 1209; *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007).  In evaluating Plaintiffs' "likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial."  *Id.*, *citing Reed*, 703 F.2d at 172.

Although Settlement Class Counsel believe in the merits of the case against the Settling Defendant and in their ability to prevail, they recognized that Plaintiffs would face serious obstacles to establishing both liability and damages should the cases proceed to trial.  For instance, Coastal agues that Plaintiffs' causes of action in tort for economic damages against Coastal should be barred because Plaintiffs are in privity with Coastal and are seeking damages related to the repair or replacement of their homes for which recovery in tort is unavailable.[13] In addition, Coastal

---

[13] *See* Defendant Coastal Construction of South Florida, Inc.'s Answer and Affirmative Defenses, March 8, 2010, Case No. 50 2009CA032471 (Cir. Ct. Palm Beach County), Ex. 2, hereto.

argues that privity bars Plaintiffs' claim for breach of implied warranty of fitness and Chinese drywall is not a product upon which a strict liability claim may be based.[14]

Another obstacle to Plaintiffs' recovery are the existence of judicial decisions denying Plaintiffs' claims under insurance policies containing pollution exclusion clauses. *See Granite State Ins. Co. v. Am. Bldg. Materials, Inc.*, No. 8:10-1542, 2011 WL 6025655 (M.D. Fla. Dec. 5, 2011); *Vintage Props., Inc. v. Mid-Continent Cas. Co.*, 10-cv-80836 (S.D. Fla. Aug. 23, 2011); *CDC Builders, Inc. v. Amerisure Mut. Ins. Co.*, No. 10-21678, 2011 WL 4454937 (S.D. Fla. Aug. 16, 2011); *FCCI Ins. Co. v. Swedberg Enter., Inc. d/b/a Florida Drywall*, 51 2010 CA 005680 (6th Jud. Cir. Ct. Pasco Cty., Fla. Oct. 7, 2011); *FCCI Ins. Co. v. S3 Enter., Inc*., 10-CA-2850 (20th Jud. Cir. Ct. Lee Cty., Fla. Sept. 16, 2011); *FCCI Commercial Ins. Co. v. Residential Drywall, Inc*., 10-23495 (13th Jud. Cir. Ct. Hillsborough Cty., Fla. Sept. 7, 2011); *FCCI Advantage Ins. Co. v. Gulfcoast Eng'r, LLC*, 10-CA-2862 (20th Jud. Cir. Ct. Lee Cty., Fla. Aug. 8, 2011); *FCCI Commercial Ins. Co. v. Shirley Constr. & Drywall, Inc*., 102979-CA (20th Jud. Cir. Ct. Charlotte Cty., Fla. Aug. 1, 2011); *FCCI Commercial Ins. Co. v. S.D. & Assocs., Inc*., 10-29152-18 (17th Jud. Cir. Ct. Broward Cty., Fla. Jul. 20, 2011); *FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall*, 10-CA-7389 (12th Jud. Cir. Ct., Sarasota Cty., Fla. Jul. 6, 2011); *FCCI Commercial Ins. Co. v. Ocean Constr., Inc*., 10-CA-2841 (20th Jud. Cir. Ct., Lee Cty. Fla. Jun. 6, 2011); *FCCI Commercial Ins. Co. v. Al Brothers, Inc*., 10-CA-2840 (20th Jud. Cir. Ct., Lee Cty., Fla. Apr. 19, 2011). In this Litigation, on December 16, 2010, the Court granted certain insurers' motions to dismiss and for judgment on the pleadings, determining that Plaintiffs are not entitled to coverage for losses due to corrosion and faulty materials under their homeowners' insurance policies that contain exclusionary clauses for those losses.[15]

---

[14] *Id.*

[15] Order & Reasons, Dec. 16, 2010, Doc. #6670.

Moreover, even if the case against Coastal were to proceed to trial, Coastal would likely appeal any judgment favorable to the Class, imposing a significant additional delay on the payment of any recovery to individual Settlement Class Members, not to mention a drain on the limited resources available for any recovery to Class Members.  These legal obstacles favor approval of the Class Settlement.

     **5.**     ***The Range of Possible Recovery***

"The next factor the Court must consider is whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290.  As the Ninth Circuit has repeatedly held, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Officers of Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal citations omitted).  As the Court explained, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Id*. at 624.

The Coastal Group Settlement Contribution in the amount of $7,200,000, which will be paid within fifteen days of the Effective Date of the Settlement, will be combined with funds allocated to the Villa Lago development in the Global Settlement with Precision, in the global Banner Settlement, and with funds from the RCR Settlement to create the Villa Lago Settlement Fund. The entire Coastal Group Settlement Contribution, all amounts allocated to Villa Lago in the Global Settlement with Precision, all amounts allocated to Villa Lago in the global Banner Settlement, and all amounts the *Hobbie* Plaintiffs received from the RCR Settlement will be deposited into the Villa Lago Settlement Fund.

---

Experts for the various parties have come forward with a wide range of values for the cost of remediating class members' units, ranging from as low as approximately $14 million to as high as $22 million.[16]  It is unlikely, however, that a jury would find Coastal 100% responsible for the cost of remediation.[17]  There are five defendants in this case, some of whom had greater responsibility with respect to the manufacturing of CDW and its installation than did Coastal.[18]  Under Florida law, a jury making findings of comparative negligence is not likely to find Coastal more than 50% negligent.[19]  Therefore, the possible range of recovery from Coastal may be in the range of $7.0 million to $11.0 million.[20]  Thus, the Settlement Amount of $7.2 million represents a recovery of approximately 33-50% of the <u>total</u> recovery and potentially 65% to more than 100% of the amount for which a jury could find Coastal liable.[21]

Further, Class Members will not be responsible for any attorneys' fees or costs under the Coastal Settlement because Coastal has agreed to attorneys' fees of $2,670,960.62 and costs of $380,946 for a total of $3,051,906.63 as shown on Exhibit A, which amount includes, but is not limited by the projected award of attorney's fees and costs Settlement Class Counsel may receive from the Banner Settlement and the Global Settlement and that may be paid to the Villa Lago Settlement Fund consistent with any fee applications that Settlement Class Counsel may submit to the Court in the Banner Settlement and the Global Settlement.  This is another significant benefit for Class Members.

---

[16] *See* Declaration of Gary E. Mason, at ¶ 16, filed concurrently ("Mason Decl.").

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* These numbers do not take into account other damages that are possibly recoverable at trial, such as property damage and lost rent, etc., making these figures conservative.

[21] *Id.*

The Coastal Settlement before the Court provides significant benefits to the Class Members who, even if successful in Court, would have to wait for years before ever seeing a dime.  The range of recovery of settlement benefits for Class Members certainly outweighs the risks of continued litigation against Coastal and supports final approval of the Settlement.

> **6.**     ***The Opinions of Class Counsel, Class Representatives, and Absent Class Members Support Approval of the Settlement.***

The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed*, 703 F.2d at 175.  Thus, if experienced counsel determine that a settlement is in the best interests of the class, "the attorney's views must be accorded great weight."  *Pettway*, 576 F.2d at 1216; Newberg on Class Actions, § 11.47 (4th ed.) ("the recommendation of counsel is entitled to great weight following arm's-length settlement negotiations.")

In this case, Settlement Class Counsel are highly competent counsel, all with many years of experience litigating complex class actions and cases involving defective products, as further detailed in their firm resumes.[22] Settlement Class Counsel also possess adequate information concerning the strengths and weaknesses of the Litigation against Coastal after extensive document discovery and litigating this case for over two years.  They support the Settlement and believe it is in the best interest of the Class.   The Settlement Class representative also supports the Class Settlement, which counsels in favor of their approval.

Further, the response of the Class to the Settlement has been overwhelmingly positive.  No requests for exclusion from the Settlement were received from any Class Member.

---

[22] *See* Prel. App. Memo., Firm Resumes, Exhibit 3.

Class Counsel have received one objection to the Settlement from Class Member Annette Polovin.[23] Ms. Polovin is an owner of an Unaffected Unit and, consequently, her unit will not be remediated.   Ms. Polovin contends that the settlement is unfair since the Settlement will not remediate her unit or provide her with compensation for lost rental income. Further, post-remediation, her unit will not compare favorably with recently remediated units, most of which will have new paint, new carpet, and new appliances.

Class Counsel are not unsympathetic to Ms. Polovin's concerns and recognize that there are a total of 61 Unaffected Units in the Settlement, all of whom share Ms. Polovin's concerns.  Class Counsel negotiated hard for benefits for the owners of these units and were able to secure a total of $150,000 from the various defendants and earmarked exclusively for payment to these owners. While this number is not as large as Class Counsel (and Ms. Polovin) would like, Class Counsel's negotiation position was hampered by a significant legal obstacle: these unit owners have not suffered any injury to person and property caused by CDW, their claims fall into a category claims known as "stigma" damage, claims of this nature have been poorly received by the courts and are often, virtually always, dismissed.  Under these circumstances, Class Counsel believe the $150,000 made available for owners of Unaffected Units if fair and reasonable.  Ms. Polovin's objection should be overruled.

The lack of any significant objections or any requests to opt out of the Settlement indicate the broad, class-wide support for the Settlement and supports its approval.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  The absence of objections to a proposed class action settlement "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Murillo v. Pac. Gas & Elec. Co.*, 2:08-1974, 2010 WL

---

[23] Notice to State officials under CAFA was delayed and was not mailed until July 12, 2013.  Consequently, the Court cannot enter the final approval order earlier than October 12, 2013.  *See* 28 U.S.C. § 1715 (d).   Class Counsel does not anticipate any objections from state officials.  *See* Mason Decl., ¶ 8.

2889728, at * 9 (E.D. Cal. July 21, 2010) (citing *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)).

*   *   *

The Settling Parties respectfully submit that all of the above-cited circumstances support final approval of the Coastal Settlement.  Settlement Class Counsel believe that the Settlement Agreement is fair, adequate and reasonable in view of a variety of factors, including the estimated damages suffered by the Class, the exposure of Coastal relative to the other Defendants, the complexity of and risks attendant to Class Members' demonstration that their damages were causally linked to Coastal's alleged wrongdoing, and the delays inherent in litigating hundreds of individual claims against Coastal.  The Settling Parties believe that the Settlement is a reasonable settlement of disputed claims.

As the court in *In re Shell Oil Refinery* aptly pointed out:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

155 F.R.D. 552, 560 (E.D. La. 1993), *citing and quoting Oppenlander v. Standard Oil Co*., 64 F.R.D. 597, 624 (D. Colo. 1974) (internal quotations omitted).

**D.**     **The Requirements of Rule 23(a) and Rule 23(b)(3) Have Been Met for Certification of the Coastal Settlement Class.**

Certification of a class action is within the discretion of the district court.  *See James v. City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001); *Purdie v. Ace Cash Express, Inc.*, No. 301cv1754L, 2003 WL 22976611, at * 3 (N.D. Tex. Dec. 11, 2003).  In the case of a settlement-only class, the Court must find that the criteria set forth in Rule 23(a) and at least one of the subsections of Rule 23(b) have been met.  Further, "[i]f there is a need for subclasses, the judge must define them and

appoint counsel to represent them."  Manual for Complex Litigation (Fourth) § 21.632.  The Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 619-620.

In this case, all of the requirements for Rule 23(a) have been met.  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

As this Court has previously recognized,

> The first two requirements [of Rule 23(a)] focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives. The rule is designed "to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests."

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 71873, 2008 WL 5423488, at * 3 (E.D. La. Dec. 29, 2008) (*quoting In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Settlement Class before the Court.

## 1. **Numerosity**

Here, the class is comprised of a readily identifiable group – all persons and entities who owned, leased or occupied a condominium located at Villa Lago at Renaissance Commons in

Boynton Beach, Florida, the COA, and all persons and entities who sustained or claim to have sustained damages of any nature or kind as a result of the alleged manufacture, sale, distribution, use, installation or remediation of Chinese Drywall at Villa Lago at Renaissance Commons. Excluded from the Settlement Class are any person, firm, trust, corporation, or other entity related or affiliated with the Participating Defendants and Participating Insurers including, without limitation, persons who are officers, directors, employees, associates or partners of the Defendants and Insurers.

There are a total of 328 units at Renaissance Commons. RCR owns 130 of these units. Therefore, there are 198 remaining units in the class. Of these 198 units, 131 of them are owned by the 182 named Class Members. That leaves a total of 67 Residences that are not represented by any of the named plaintiffs.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999) (a class composed of 100 to 150 members will generally satisfy the numerosity requirement); *see* Conte & Newberg, Newberg on Class Actions, § 3:3 (4th ed. 2010) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

## 2. **Commonality**

The commonality requirement of Rule 23(a)(2) is met in this case.  The Judicial Panel on Multidistrict Litigation ordered that these actions be consolidated in this MDL based on "the Commonality of facts in the various cases."[24]   Questions surrounding the effects of the Chinese Drywall on Class Members and the damages caused by the Chinese Drywall are issues common to all Class Members, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442 U.S.

---

[24] *Hernandez*, 2010 WL 1710434, at * 1 (Findings of Fact).

682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); Newberg on Class Actions, § 3:1 ("Convenience, uniformity of decision, and judicial economy are achieved through the class action device by litigating common issues only once on behalf of all class members.").

### 3. **Typicality**

The typicality requirement of Rule 23(a)(3) "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." 1 Newberg on Class Actions, § 3:13 (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)).   In other words, courts must determine "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named class members, and whether other class members have been injured by the same conduct." 1 Newberg on Class Actions, § 3:13 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members.  *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-157 (1982). The typicality requirement has been liberally construed by the federal courts. *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Each of the Class Members in this case is seeking money from Coastal for the costs of

remediation of the allegedly defective Chinese Drywall and other damages allegedly caused by the Chinese Drywall. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class." 1 Newberg on Class Actions, § 3:13. The Class Representative is a Plaintiff seeking to hold Coastal liable for damages resulting from Chinese Drywall installed in her Residence.

### 4. **Adequacy of Representation**

Rule 23(a)(4) requires that the named class representative "not possess interests which are antagonistic to the interests of the class." Newberg on Class Actions, § 3:21. Second, the named class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625-626 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted). At this stage of the approval process, there is nothing to suggest that this requirement has not been met. The named representative is a member of the Class she seeks to represent – she is an owner of a Residence at Villa Lago – and does not possess any interests antagonistic to the Class with respect to their claims against Coastal. Here, both the Class Representative and the absent Class members are equally interested in detailing to the Court and a jury the nature of Coastal's liability, and are further committed to obtaining appropriate compensation from living in the Affected Properties.

Moreover, Settlement Class Counsel conducted these class negotiations with Coastal at arm's length, and will fairly and adequately represent the Class. *See Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992). The Court may take judicial notice of Class Counsel's substantial experience in litigating mass tort class actions and complex product liability cases. Class Counsel have been lead counsel in numerous complex class action cases and have aggressively litigated the *Hobbie* Plaintiffs' and RCR's claims against Coastal. Class Counsel

30

possess adequate information concerning the strengths and weaknesses of the Litigation against Coastal after extensive document discovery and litigating this case for well over three years. Class Counsel have negotiated the proposed Settlement from a position of knowledge and strength, and as advocates for the entirety of the Class. They have obtained an advantageous settlement that treats all Class members fairly, and provides real value to all. Therefore, the adequacy of representation requirement is readily satisfied for certification.

### 5.  Common Questions of Law and Fact Predominate

For purposes of satisfying Rule 23(b)(3)'s requirements, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  Newberg on Class Actions, § 4:25; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). In this case it makes eminent good sense to resolve the claims against Coastal in this forum through the class action device.  The issues of Coastal's liability predominates over any individual issues involving the Class Members. Moreover, all Class Members are unified by common factual allegations. A class settlement will also ensure that funds are available to remediate the Class Members' Affected Properties and provide compensation for other damages.

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication.  Factors the Court may consider include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to

be encountered in the management of a class action.[25] Fed. R. Civ. P. 23(b)(3)(A)-(D).

First, the interest of individuals in controlling this litigation is limited. While the damages of some Class Members may be sufficiently significant to warrant individual litigation, the damage to most individuals is slight compared to the cost of litigating a case of this complexity. As the U.S. Supreme Court reasoned in *Amchem*,

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry recoveries into something worth someone's (usually an attorney's) labor.

521 U.S at 617. Importantly, Class Members who wish to pursue their own individual lawsuits can request exclusion from the Class if they so desire. Moreover, given the unique nature of this Action, there are economies of scale in remediation of the entire condominium development that make individually litigating this case against Coastal undesirable. The second factor, the nature and extent of any existing litigation, also weighs in favor of class action superiority for settlement purposes. At the time of Settlement, all claims filed on behalf of the Plaintiffs and putative Class Members were either transferred to or originally filed in this Court. Third, it is desirable to concentrate the litigation in this forum because this Court has presided over the ongoing massive Chinese Drywall Multidistrict Litigation since June 15, 2009. Finally, the proposed Settlement resolves any manageability problems by creating a mechanism for reviewing the individual claims of Class Members, thereby permitting a sizable number of Class Members to achieve individual relief without burdening the judicial system. Indeed, given the U.S. Supreme Court's holding that a court certifying a settlement class need not decide whether a class action would be manageable at trial, *id*., at 620, the Court need not even consider the issue of manageability. For all of the above reasons, a class action is the superior method of

---

[25] As stated earlier, any difficulties of management of this Class need not be considered. *Amchem*, 521 U.S. at 620

adjudicating this controversy.

In short, the class action mechanism offers substantial economies of time, effort, and expense for the litigants in this matter, as well as for the Court. *See White v. Imperial Adjustment Corp*., No. 99-3804, 2002 WL 1809084, at * 6 (E.D. La. Aug. 6, 2002) ("Rule 23(b)(3) applies to cases for which a class action would achieve economies of time, effort, and expense, [and] promote uniformity of decision as to persons similarly situated."). Given the various suits pending in federal court, approval of the Settlement and the resolution of all Chinese Drywall claims against Coastal in this forum benefits all parties.

E.     **The Class Settlement Notices Complied with this Court's Orders and Due Process.**[26]

In conjunction with preliminary approval of the Settlement, this Court ordered that notice be disseminated to the Settlement Class.  The Settling Parties have complied with the Court's orders and distributed notice that complies with the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711-1715 as well as the Settlement Agreement.  Settlement Class Counsel worked diligently to provide individual notice by first-class U.S. Mail to all unit owners' residential addresses, all of the Villa Lago units, the last known addresses of all known tenants who formerly occupied the units at Villa Lago, and individual Plaintiffs' Counsel. Of the approximately 717 Class Notices that were mailed, 52 notices mailed to Class Members' mailing addresses and 97 notices mailed to Villa Lago units were returned to sender.[27] While a total of 149 notices were returned, only 46 Class Members failed to receive direct mail notice.[28] This is because Settlement Class Counsel strove to be comprehensive in their notice efforts by mailing

---

[26] As previously noted,  infra, CAFA notice was not served until July 12, 2013.  The 90-day CAFA notice period will run until October 12, 2013.

[27] Mason Decl., ¶ 14.

[28] *Id.*

the Class Notice to multiple addresses for most Class Members, including the known mailing addresses for owners, former mailing addresses for known former tenants, *and* the Villa Lago units for current tenants and owners who reside in them.

Settlement Class Counsel also caused notice of the Settlement to be published once in the following media: (1) the Miami Herald; (2) the West Palm Beach News; and (3) the South Florida Sun Sentinel. In addition, Settlement Class Counsel, through the Court, had the notice posted to the Court's Chinese Drywall MDL website, http://www.laed.uscourts.gov/drywall/Settlements.htm. The notices that have been disseminated to the Settlement Class comply with due process and support approval of the settlements and certification of the settlement class. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).

## V.    CONCLUSION

Settlement Class Counsel respectfully requests that this Court find that the Coastal Settlement is fair, reasonable and adequate and in the best interests of Class Members and that the Coastal Settlement should be certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e). Settlement Class Counsel further requests that the Court enter the Order and Judgment, submitted herewith.

DATED: July 30, 2013                         Respectfully submitted,

/s/ Gary E. Mason
Gary E. Mason
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Suite 605
Washington, D.C. 20036
Telephone:  (202) 429-2290
Facsimile:  (202) 429-2294

Adam C. Linkhorst, Esq.
LINKHORST & HOCKIN P.A.
4495 Military Trail, Suite 106

34

Jupiter, Florida 33458
Telephone:   561.626.8880/954.776.5990
Facsimile:  561.626.8885

Joel R. Rhine
RHINE LAW FIRM, PC
314 Walnut Street, Suite 1000
Wilmington  NC  28401
Telephone:  (910) 772-9960
Facsimile:   (910) 772-9062

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
1305 Navaho Drive, Suite 400
Raleigh, NC 27609-7482
Telephone: (888) 981-0939
Facsimile: (919) 981-0199

Gregory S. Weiss (Florida Bar No. 163430)
Leopold Law, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (516) 515-1401
Email: gweiss@leopold-law.com

*Attorneys for Plaintiffs*

*/s/* Addison J. Meyers
Addison J. Meyers, Esquire
MINTZER SAROWITZ ZERIS
LEDVA & MEYERS, LLP
The Waterford at Blue Lagoon
1000 NW 57th Court, Suite 300
Miami, FL 33126
Telephone: (305) 774-9966
Fax: (305) 774-7743
Email: ameyers@defensecounsel.com

*Attorneys for Coastal Construction of South Florida, Inc*

35

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and forgoing has been served upon Plaintiffs'

Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail

and email or hand delivery and email and upon all parties by electronically uploading same to

Lexis Nexis File and Serve® in accordance with Pre-Trial Order No.: 6, and that the foregoing

was electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing

in accordance with procedures established in MDL 2047 on this 30th day of July, 2013.

/s/ Gary E. Mason
Gary E. Mason