# EXHIBIT 1



36318107

Mar 7 2011
2:36PM

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LITIGATION | MDL No.: 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: Hobbie v. RCR Holdings II, LLC, et al. No. 10-1113 | |

### DEFENDANT/THIRD PARTY PLAINTIFF, RCR HOLDINGS II, LLC's, THIRD PARTY COMPLAINT AGAINST THIRD PARTY DEFENDANT, ARCH INSURANCE COMPANY

COMES NOW, Third Party Plaintiff, RCR HOLDINGS II, LLC ("RCR"), and files this Third Party Complaint against Third Party Defendant, ARCH INSURANCE COMPANY ("SURETY"), and states as follows:

1.     Owner: Third Party Plaintiff, RCR, is a Defendant in the underlying *Hobbie* lawsuit, and the developer and owner of that certain project known as Villa Lago at Renaissance Commons Condominium, located in Palm Beach County, Florida.

2.     Surety: Third Party Defendant, SURETY, is a foreign corporation, duly licensed to conduct surety business in the State of Florida. At all times material hereto, SURETY was engaged in the business of furnishing performance bonds in Palm Beach County, Florida.

3.     Jurisdiction/Venue:  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.  This is an action against a performance bond surety for damages in excess of $75,000.00, exclusive of interest and costs, related to the underlying *Hobbie* action.  Venue is proper in this Court pursuant to the Transfer Order from the U.S. Judicial Panel on Multidistrict

Litigation establishing MDL 2047 (*In re Chinese-manufactured Drywall Products Liability Litigation*).

4.   Performance Bond: On or about August 16, 2005, SURETY, as surety, together with *Hobbie* Defendant, Coastal Construction of South Florida, Inc. ("Coastal"), as principal, furnished Performance Bond No. SU1013827 in favor of RCR conditioned upon Coastal's proper performance of the Construction Contract dated June 24, 2005. A true, correct, and complete copy of the Performance Bond is attached hereto as Exhibit "A". A true, correct and complete copy of the Construction Contract is attached hereto as Exhibit "B".

5.   Breach: Coastal breached the Construction Contract by failing to properly perform the Construction Contract, *inter alia*, by selecting, providing, installing, failing to detect and/or overseeing the installation of: (1) drywall other than the type approved by RCR's architect as contained in Coastal's submittals; (2) drywall other than the quality approved by RCR's architect as contained in Coastal's submittals; (3) defective Chinese-manufactured drywall; (4) drywall at variance with the building code; and, (5) materials not of "good quality".

6.   Default: RCR declared Coastal in Default both to Coastal and to SURETY. A true and correct copy of the Notification of Default to SURETY (without voluminous exhibits equally available to the parties) is attached hereto as Exhibit "C".

7.   Damages: As a direct and proximate result of such material breaches by Coastal, and by the separate breaches of SURETY in failing to discharge the obligations under the subject Performance Bond, RCR has suffered damages, including without limitation, costs to correct defective work by Coastal or its subtrades, and costs required to cure Coastal's default, expert and engineers' costs incurred in investigation of the breach and loss, resulting and consequential

losses and damages to other property, significant loss of use, attorneys and expert fees, court costs, and interest.

8.     Attorneys' Fees: RCR has retained the undersigned law firm to prosecute this claim and is obligated to pay a reasonable fee for services rendered. SURETY is liable to RCR for all attorneys' fees pursuant to §§627.756 and 627.428, Fla. Stat.

9.     Conditions Precedent: At times material hereto, RCR complied with and performed in accordance with the terms, obligations, and all conditions precedent set forth in the attached Performance Bond, including the required notices or declarations, or such compliance or performance was waived by SURETY.

WHEREFORE, RCR HOLDINGS II, LLC demands judgment against ARCH INSURANCE COMPANY for compensatory damages, attorneys' fees, interest, and costs, in excess of $75,000, and such other relief as this Court deems appropriate.

### DEMAND FOR JURY TRIAL

RCR hereby demands a jury trial of all issues so triable.

Respectfully submitted,

GREGORY S. WEISS (Florida Bar No.: 163430)
Email: gweiss@leopoldkuvin.com
LEOPOLD~KUVIN, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
*Attorneys for Third Party Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing has been served upon Plaintiffs'
Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by US. Mail and
e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same
to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was
electronically filed with the Clerk of Court of the United States District Court for the Eastern
District of Louisiana, by using the CM/ECF System, which will send a notice of electronic filing
in accordance with the procedures established in MDL 2047, on this ____4th____ day of March, 2011.


GREGORY S. WEISS (Florida Bar No.: 163430)


*Leopold~Kuvin, P.A.*
*2925 PGA Boulevard, Suite 200*
*Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*



36318107

Mar 7 2011
2:36PM

# THE AMERICAN INSTITUTE OF ARCHITECTS



AIA Document A311

**Bond No. SU1013927**

# Performance Bond

**KNOW ALL MEN BY THESE PRESENTS:** that

*Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, 790 NW 107 Ave., #308, Miami, FL  33172*

as Principal, hereinafter called Contractor, and,      (Here insert full name and address or legal title of Surety)

*Arch Insurance Company, 5601 Mariner Street, Suite 220, Tampa, FL  33609*

as Surety, hereinafter called Surety, are held and firmly bound unto      (Here insert full name and address or legal title of Owner)

*RCR 1 Holdings, LLC, 980 North Federal Highway, Suite 200, Boca Raton, FL  33432*

as Obligee, hereinafter called Owner, in the amount of --
*Forty Six Million Nine Hundred Eighty Eight Thousand And No/100* **      Dollars ($  46,988,000.00   ),**

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

**WHEREAS,**

Contractor has by written agreement dated  *June 24, 2005* , entered into a contract with Owner for
(Here insert full name, address and description of project)

*VILLA LAGO AT RENAISSANCE COMMONS*

in accordance with Drawings and Specifications prepared by      *Mouriz, Salazar & Associates, Inc.*
(Here insert full name and address or legal title of Architect)

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

AIA DOCUMENT A311 • PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND • AIA •
FEBRUARY 1970 ED • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006      1

C:\DOCUME~1\KMESSE~1.000\LOCALS~1\Temp\94112079.doc

# EXHIBIT "A"



EXHIBIT

A

# PERFORM...

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall rem___ n full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligation thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or

2) Obtain a bid or bids for completing the Contract in accordance with its term and conditions, and upon determination by Surety of the lowest responsible bidder, or if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as work progresses (even though there should be a default or a succession of defaults

under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of the Owner.

The Warranty Obligations of the Surety under this Bond is Limited to One (1) after Issuance of the Certificate of Occupancy.

Signed and sealed this    16    day of    August    2008

_____ (Witness)

Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums (Principal)
_____ (Title) (Seal)

_____ (Witness)

Arch Insurance Company (Surety)
_____ (Title) (Seal)

AIA DOCUMENT A311 • PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND • AIA •
FEBRUARY 1970 ED • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE, N.W., WASHINGTON, D.C. 2006

"CUME"1\KMESSE"1,000\LOCALS"1\Temp\94112078.doc

EXHIBIT "A"



**ARCH Insurance Company**

**ARCH Surety**

## NOTICE -- DISCLOSURE OF TERRORISM PREMIUM

In accordance with the Terrorism Risk Insurance Act of 2002, we are providing this disclosure notice for bonds on which Arch Insurance Company is the surety.

### DISCLOSURE OF PREMIUM

The portion of the premium attributable to coverage for terrorist acts certified under the Act is Zero Dollars ($0.00).

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States will pay ninety percent (90%) of covered terrorism losses exceeding the applicable insurer deductible.

# EXHIBIT "A"

# POWER OF ATTORNEY

Know All Men By These Presents:

That the Arch Insurance Company, a corporation organized and existing under the laws of the State of Missouri, having its principal office in Kansas City, Missouri (hereinafter referred to as the "Company") does hereby appoint

Mary C. Aceves, Warren M. Alter, Charles D. Nielson, Charles J. Nielson and Laura Clymer of Miami Lakes, FL (EACH)

its true and lawful Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as its act and deed:

Any and all bonds and undertakings

EXCEPTION:  NO AUTHORITY is granted to make, execute, seal and deliver bonds or undertakings that guarantee the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

The Company may revoke this appointment at any time.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal office in Kansas City, Missouri.

This Power of Attorney is executed by authority of resolutions adopted by unanimous consent of the Board of Directors of the Company on March 3, 2003, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the unanimous consent of the Board of Directors of the Company on March 3, 2003:

VOTED, That the signature of the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to the resolution adopted by the Board of Directors on March 3, 2003, and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company.

00ML0013 00 03 03

Printed in U.S.A.

# EXHIBIT "A"

In Testimony Whereof, the Company has caused this instrument to be signed and its corporate seal to be affixed by their authorized officers, this 24th day of November 20 03.

Arch Insurance Company

Attested and Certified

Joseph S. Labell, Corporate Secretary

Thomas P. Luckstone, Vice President

STATE OF CONNECTICUT SS

COUNTY OF FAIRFIELD SS

I Melissa B. Gilligan, a Notary Public, do hereby certify that Thomas P. Luckstone and Joseph S. Labell personally known to me to be the same persons whose names are respectively as Vice President and Corporate Secretary of the Arch Insurance Company, a Corporation organized and existing under the laws of the State of Missouri, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seal and delivered the said instrument as the free and voluntary act of said corporation and as their own free and voluntary acts for the uses and purposes therein set forth.

OFFICIAL SEAL
MELISSA B. GILLIGAN, Notary Public
State of Connecticut
My Commission Expires February 28, 2005

Melissa B. Gilligan, Notary Public
My commission expires 2-28-05

CERTIFICATION

I, Joseph S. Labell, Corporate Secretary of the Arch Insurance Company, do hereby certify that the attached Power of Attorney dated November 24, 2003 on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate and I do further certify that the said Thomas P. Luckstone, who executed the Power of Attorney as Vice President, was on the date of execution of the attached Power of Attorney the duly elected Vice President of the Arch Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Arch Insurance Company on this 16th day of August 20 03.

Joseph S. Labell, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

Home Office Kansas City, MO

00ML0013 00 03 03

Printed in U.S.A.

# EXHIBIT "A"



# THE AMERICAN INSTITUTE OF ARCHITECTS

AIA Document A311 Bond No: SU1013827

# Labor and Material Payment Bond

THIS BOND IS ISSUED SIMULTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE
OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

KNOW ALL MEN BY THESE PRESENTS; that

*(Here insert full name and address or legal title of contractor)*

*Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, 790 NW 107 Ave. #305, Miami, FL 33172*

as Principal, hereinafter called Contractor, and,

*(Here insert full name and address or legal title of Surety)*

*Arch Insurance Company, 5501 Mariner Street, Suite 220, Tampa, FL 33609*

as Surety, hereinafter called Surety, are held and firmly bound unto   *(Here insert full name and address or legal title of Owner)*

*RCR 1 Holdings, LLC, 980 North Federal Highway; Suite 200, Boca Raton, FL 33432*

as Obligee, hereinafter called Owner, in the amount of
*Forty Six Million Nine Hundred Eighty Eight Thousand And No/100**   (* 46,988,000.00 ),

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,

Contractor has by written agreement dated *June 24, 2005,* entered into a contract with Owner for
*(Here insert full name, address and description of project)*

*VILLA LAGO A7 RENAISSANCE COMMONS*

In accordance with Drawings and Specifications prepared by   *Moura, Cabeza & Associates, Inc.*
*(Here insert full name and address or legal title of Architect)*

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

AIA DOCUMENT A311 • PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND • AIA ®
FEBRUARY 1970 ED • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE. N.W., WASHINGTON, D.C. 20006

3

## EXHIBIT "A"

THIS BOND HEREBY IS AMENDED SO THAT THE PROVISIONS AND
LIMITATIONS OF SECTION 255.05 C ... SCTION 713.23
FLORIDA STATUTES, WHICHEVER I... APPLICABLE ARE
INCORPORATED HEREIN BY REFERENCE

# LABOR AND MATERIAL PAYMENT BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. Claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on the bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3. No suit or action shall be commenced hereunder by any claimant:

a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial

accuracy the amount claimed and the name of the party to whom the materials were furnished, o for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b) After the expiration of one (1) year following the date ... [illegible] ... [illegible] ... [illegible] ... [illegible] ... [illegible] ... [illegible] is prohibited by any law governing the construction thereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, and not elsewhere.

4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanic's liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

Signed and sealed this    16th    day of    August    2005.



Coastal Construction of South Florida, Inc.
d/b/a Coastal Condominiums
(Principal)

DONE B. WILLIAMS VICE-PRESIDENT    (Seal)

Amer...surety Company    (Surety)

AIA DOCUMENT A311 • PERFORMANCE BOND AND LABOR AND MATERIAL PAYMENT BOND • AIA •
FEBRUARY 1970 ED • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 N.Y. AVE., N.W., WASHINGTON, D.C. 20006

4

C:\DOCUME~1\KHESSE~1.000\LOCALS~1\Temp\941I2079.doc

# EXHIBIT "A"



**ARCH Insurance Company**                                    **ARCH Surety**

---

### NOTICE – DISCLOSURE OF TERRORISM PREMIUM

In accordance with the Terrorism Risk Insurance Act of 2002, we are providing this disclosure notice for bonds on which Arch Insurance Company is the surety.

### DISCLOSURE OF PREMIUM

The portion of the premium attributable to coverage for terrorist acts certified under the Act is Zero Dollars ($0.00).

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States will pay ninety percent (90%) of covered terrorism losses exceeding the applicable insurer deductible.

# EXHIBIT "A"

# POWER OF ATTORNEY

Know All Men By These Presents:

That the Arch Insurance Company, a corporation organized and existing under the laws of the State of Missouri, having its principal office in Kansas City, Missouri (hereinafter referred to as the "Company") does hereby appoint

Mary C. Aceves, Warren M. Alter, Charles D. Nielson, Charles J. Nielson and Laura Clymer of Miami Lakes, FL (EACH)

its true and lawful Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as its act and deed:

Any and all bonds and undertakings.

EXCEPTION: NO AUTHORITY is granted to make, execute, seal and deliver bonds or undertakings that guarantee the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

The Company may revoke this appointment at any time.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal office in Kansas City, Missouri.

This Power of Attorney is executed by authority of resolutions adopted by unanimous consent of the Board of Directors of the Company on March 3, 2003, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect.

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the unanimous consent of the Board of Directors of the Company on March 3, 2003:

VOTED, That the signature of the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to the resolution adopted by the Board of Directors on March 3, 2003, and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company.

00ML0013 00 03 03                         Page 1 of 2                         Printed in U.S.A.



EXHIBIT "A"

In Testimony Whereof, the Company has caused this instrument to be signed and its corporate seal to be affixed by their authorized officers, this __24th__ day of __November__, 20 __03__.

Arch Insurance Company

Attested and Certified

Joseph S. Labell, Corporate Secretary

Thomas P. Luckstone, Vice President

STATE OF CONNECTICUT   SS

COUNTY OF FAIRFIELD      SS

I Melissa B. Gilligan, a Notary Public, do hereby certify that Thomas P. Luckstone and Joseph S. Labell personally known to me to be the same persons whose names are respectively as Vice President and Corporate Secretary of the Arch Insurance Company, a Corporation organized and existing under the laws of the State of Missouri, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seal and delivered the said instrument as the free and voluntary act of said corporation and as their own free and voluntary acts for the uses and purposes therein set forth.

```
OFFICIAL SEAL
MELISSA B. GILLIGAN, Notary Public
State of Connecticut
My Commission Expires February 28, 2005
```

Melissa B. Gilligan, Notary Public
My commission expires 2-28-05

CERTIFICATION

I, Joseph S. Labell, Corporate Secretary of the Arch Insurance Company, do hereby certify that the attached Power of Attorney dated __November 24, 2003__ on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said Thomas P. Luckstone, who executed the Power of Attorney as Vice President, was on the date of execution of the attached Power of Attorney the duly elected Vice President of the Arch Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Arch Insurance Company on this __16th__ day of __August__, 20 __05__.

Joseph S. Labell, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

Home Office: Kansas City, MO

00ML0013 00 03 03

Printed in U.S.A.

# EXHIBIT "A"



*Villa Lago P P Bond*

## DUAL OBLIGEE RIDER
### (To be attached to Bond at time of issuance)

TO BE ATTACHED TO AND FORM PART OF Bond No. SU1013827, dated concurrently with the execution of this Rider, by Arch Insurance Company, as Surety, on behalf of Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, as Principal, and in favor of RCR 1 Holdings, LLC and Wachovia Bank, N.A., as Obligees.

IT IS HEREBY UNDERSTOOD AND AGREED that the attached Bond is hereby amended to include the following:

Notwithstanding anything contained herein to the contrary, there shall be no liability on the part of the Principal or Surety under this Bond to the Obligee, or either of them, unless the Obligee, or either of them, shall make payments to the Principal, or to the Surety in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

In no event shall the liability of the Principal and the Surety to the Obligee, or either of them, in the aggregate, exceed the penal sum stated in the attached Bond.

IT IS FURTHER UNDERSTOOD AND AGREED that nothing contained in this Rider shall be held to change, alter or vary the terms of the attached Bond except as set forth hereinabove. In the event of a conflict between the Bond and this Rider, the parties agree that this Rider shall govern and control. All references to the Bond, either in the Bond or in this Rider, shall include and refer to the Bond as supplemented and amended by this Rider. Except as provided by this Rider, all other terms and conditions of the Bond remain in full force and effect.

This Rider may be executed in two or more counterparts, each of which shall be deemed an original, but which together shall constitute one and same instrument.

SIGNED, SEALED AND DATED this 16th day of August, 2005.

PRINCIPAL: Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums

Signature:

Name and Title: DANIEL G. WHITEHEAD, PRESIDENT

Agreed to and accepted by:

OBLIGEE: RCR 1 Holdings, LLC

Signature:

Name and Title: James Roberts, Manager

SURETY: Arch Insurance Company

Signature:

Charles J. Nielson, Attorney-in-fact

OBLIGEE: Wachovia Bank N.A.

Signature:

Name and Title: James D. Davis, Vice Pres.

# EXHIBIT "A"

**RCR Holdings II, LLC**
1500 Gateway Blvd., Suite # 200
Boynton Beach, FL 33426
(561) 244-6650

**Via Federal Express**

April 16, 2010

Arch Insurance Company
300 Plaza Three
Jersey City, NJ 07311

Re:   (Bond #SU1013827)
        Principals:  Coastal Construction Group of South Florida, Inc. dba Coastal Condominiums
        Alleged DOL:  2009; Completion Date:  On or about 1/26/07

Dear Sir or Madam:

I am the authorized Manager for RCR Holdings II, LLC ("RCR"), the Obligee under the above-referenced bond. As reflected in the enclosed 2nd Amended Complaint RCR has found itself involved in a lawsuit by a multitude of Unit Owners of a construction project built by your above-named Principal. The claims largely relate to the alleged installation of what is commonly described as "Chinese Drywall." The details of the claim are contained within the allegations of the Amended Complaint. We have verified that RCR previously made all payments to your Principal/Connect in accordance with the parties' Contract and the subject Bond. This correspondence serves as RCR's declaration of default by your Principal under the Contract dated June 24, 2005, as required by the Performance Bond issued by Arch Insurance Company.   RCR states that Principal is in default.

The basis of the default by your Principal is detailed in the enclosures.  Your Principal has been advised in writing of the basis for the default since approximately September 2009, but has taken no actions to cure the default or mitigate RCR's losses.

EXHIBIT "B"

We request you contact the undersigned with Arch's response as quickly as possible in order to preserve both your ability to respond and otherwise investigate the claim, including any evidence that may be subject to spoiliation.   Moreover, all requests for documents should be directed to the Principal/Contractor who was obligated by statute to maintain all the records.   We look forward to your prompt reply.

Sincerely,
RCR Holdings II, LLC

James Comparato
Manager

JC/crd

Enclosures
Cc:    Bruce G. Alexander, Esq via email-balexander@caseyciklin.com
       Michael Utley, Esq.via email-mike.utley@meunc.com
       Richard Chaves, Esq. Via email-RChaves@caseyciklin.com
       Becky Basil, via email-RBasil@caseyciklin.com

EXHIBIT "B"

Page: 1

R E C E I P T
----------------

PALM BEACH CTY. CIR CT. JUDFROO

Receipt Number:    CAMS437381
Date:: 11-JUN-2010
Cashier:    EMSMITH

Payor: CASEY CIKLIN ET AL
Addr:

| Violation/Docket | Description | Amount |
|---|---|---|
| Case: 2010CA013177 - RCR HOLDINGS II LLC | | |
| Party: RCR HOLDINGS II LLC | | |
| CAFF | | 401.00 |
| CAFF | | 10.00 |
| | CHECK RECEIVED GENERAL ACCT | -411.00 |
| | Total Fees: | 411.00 |
| | Total Payment: | 411.00 |

LEXISNEXIS' FILE & SERVE
E-SERVICE
36318107

JUN-27-2005   03:57P     From-Kata Barron Squitero & Faust, P.A.     305 285 0328     T-202 P.001   F-113

COASTAL ESTIMATING

Mar 7 2011
2:36PM



# AIA® Document A111™ – 1997

### Standard Form of Agreement Between Owner and Contractor where the basis for payment is the COST OF THE WORK PLUS A FEE with a negotiated Guaranteed Maximum Price

**AGREEMENT** made as of the Twenty Fourth (24ᵗʰ) day of June in the year Two Thousand Five (2005)
*(In words, indicate day, month and year)*

**BETWEEN** the Owner:
*(Name, address and other information)*

~~RGR-1 Holdings, LLC~~  RCR Holdings II, LLC
380 N. Federal Highway, Suite #200
Boca Raton, FL 33432

and the Contractor:
*(Name, address and other information)*

Coastal Construction of South Florida, inc.
d/b/a COASTAL CONDOMINIUMS
790 N.W. 107ᵗʰ Avenue, Suite #308
Miami, Florida 33172

The Project is:
*(Name and location)*

**VILLA LAGO AT RENAISSANCE COMMONS**
North Congress Avenue
Boynton Beach, Florida

The Architect is:
*(Name, address and other information)*

Mouriz, Salazar & Associates, Inc.
7695 S.W. 104ᵗʰ Street
Miami, Florida 33156

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201–1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by the Associated General Contractors of America.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:25:33 on 06/24/2005 under Order No.1000176332_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                                                (3838311245)

Received    27-Jun-2005  03:10pm     From-     To-Kata Barron Squitero    Page 001

JUN-27-2005  04:03PM    FAX:                  ID:                    PA

EXHIBIT
B

ARTICLE 1  THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 15. If anything in the other Contract Documents is inconsistent with this Agreement, this Agreement shall govern.

1.1 Subject to Subparagraph 1.2.3 of the General Conditions of the Contract, if there is any inconsistency, ambiguity, discrepancy or error in the Contract Documents, the Contractor shall immediately seek clarification from the Architect and notify the Owner that such clarification has been requested. The Architect's clarification shall govern if received by the Contractor within a reasonable period under the circumstances.

1.2 The order or priority of the Contract Documents is as follows:

.1  Exhibit A1 – Qualifications and Assumptions
.2  Exhibit A – GMP Summary
.3  Exhibit B - Miscellaneous Provisions
.4  Exhibit A2 – General Conditions Budget
.5  Exhibit C – Schedule of Allowances
.6  Exhibit E – Drawings / Specifications Log
.7  Exhibit G – Attachment No. 1 – Insurance Addendum
.8  Exhibit K – Contractor's Construction Schedule
.9  AIA 111 – 1997
.10 Exhibit D – General Conditions of the Contract
.11 Exhibit F – Addenda – Residence Finish Schedule
.12 Exhibit H – General Contractor's Subcontract Agreement
.13 Exhibit I – Payment and Performance Bonds (Draft)
.14 Exhibit J – Agreement of General Contractor with Wachovia Bank

In the event of discrepancy between standard Contract language and any additions, deletions and/or changes to the standard language, the acknowledged initialed addition, deletion and/or changes shall govern.

ARTICLE 2  THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

ARTICLE 3  RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

ARTICLE 4  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 4.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)

4.1.1 Construction will commence the later of July 11, 2005 or the date the Contractor receives all of the following:  1) all required permits; 2) original copy of Builder's Risk "All Risk" insurance policy; 3) original copy of the properly recorded Notice of Commencement from Owner; and, 4) proof of financing.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:39 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:

2

(4292811286)

JUN-27-2005  03:57   Katz Barron Squitero & Faust, P.A.   305 285 0329   T-282  P.002/019  F-193

4.1.2   The Date of Commencement shall be the latest date per 4.1.1.
4.1.3   Prior to the Date of Commencement, the Owner shall provide the Contractor with the following items:

   .1   An executed Owner-Contractor Agreement; and
   .2   Indication that the Owner has recorded a Notice of Commencement; and
   .3   Proper evidence of Financing in accordance with Subparagraph 2.2.1 of the General Conditions; and
   .4   Proper evidence of Builder's Risk Insurance in accordance with Paragraph 11.4 of the General Conditions.

If, prior to commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

§ 4.2 The Contract Time shall be measured from the date of commencement.

§ 4.3 The Contractor shall achieve Substantial Completion of the entire Work not later than 515 days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

*(Paragraph deleted)*

, subject to adjustments of this Contract Time as provided in the Contract Documents.

4.3.1   Owner may commence closings at TCO / Substantial Completion subject to Contractor having received final punch list on common areas and units for respective buildings.

*(Insert provisions, if any, for liquidated damages relating to failure to complete on time, or for bonus payments for early completion of the Work.)*

4.4   Liquidated Damages shall be the sole Owner remedy for Contractor delay and shall be a maximum amount of: Four Thousand Dollars ($4,000.00) for each day delay beyond the Substantial Completion Date as defined in this Agreement. Such Liquidated Damages shall not be considered to be a reimbursable expense under the GMP, but will be deducted by the Owner from funds that would have been due to the Contractor. The maximum amount of Liquidated Damages that can be assessed by the Owner in the aggregate is a total of One Hundred Thousand Dollars ($100,000.00). Contractor acknowledges and agrees that the actual delay damages which Owner will suffer in the event of a delay in achieving Substantial Completion of the Work are difficult, if not impossible to determine, and that the Liquidated Damages described above are a fair and reasonable estimate of the delay damages which the Owner is expected to suffer in the event of such delay. Owner may deduct the aforesaid Liquidated Damages from any unpaid amount then or thereafter due Contractor under the Contract Documents. Any Liquidated Damages not so deducted from any unpaid amounts due Contractor shall be immediately due and payable to Owner upon demand.

4.5   ~~The Contractor shall receive an Early Completion Bonus amount of Two Thousand Dollars ($2,000.00) for each day the Contractor improves upon the Substantial Completion Date as defined in this Agreement. This amount shall apply solely to the early achievement of the Substantial Completion Date as defined in this Agreement for the Project. An additional Two Hundred Fifty Thousand ($250,000.00) early Completion Bonus shall be paid by the Owner to Contractor if all buildings are TCO'd within Five Hundred and Fifty (550) days of the Date of Commencement. Such Early Completion Bonus shall be considered to be entirely void and rescinded if the Temporary Certificate of Occupancy ("TCO") is invalidated at any time after its issuance, and prior to the issuance of a Final Certificate of Occupancy ("CO"). The Early Completion Bonus shall be considered to be outside of the GMP and shall~~

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:28:39 on 08/24/2005 under Order No. 1000172222_1 which expires on 4/3/2006, and is not for resale.
User Notes:                                                                                                    (1022611235)

3

27-Jun-2005  04:03pm   From-Katz Barron Squitero & Faust, P.A.      305 285 0328      T-282  P.003/010  F-178
JUN-27-2005  03:05        COASTAL ESTIMATING

Replace the first three sentences of Paragraph 4.5 as follows:

The Contractor shall receive an Early Completion Bonus in the amount of One Thousand Dollars ($1,000.00) per day for each of the East and West Buildings for which the Contractor receives a Certificate of Occupancy earlier than the published schedule as set forth in Exhibit "K".

The Contractor shall receive an additional Early Completion Bonus in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) if the Contractor obtains a Certificate of Occupancy for the entire project within five hundred fifty days from the Date of Commencement, with no adjustments in time for any reason whatsoever.

not affect the calculation of "shared savings" in any manner at the time of the Final Completion of the Work.

**ARTICLE 5  BASIS FOR PAYMENT**
**§ 5.1 CONTRACT SUM**
§ 5.1.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

§ 5.1.2 The Contractor's Fee is:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee, and describe the method of adjustment of the Contractor's Fee for changes in the Work.)*

The Contractor's Fee is a lump-sum amount of Two Million Four Hundred Thirty Thousand Six Hundred Fifty Dollars ($2,430,650.00) to be paid proportionately on a monthly basis in an amount equal to the percentage of Work in place for the current billing month.  No retainage shall be withheld from the Contractor's Monthly Fee billings.  This Contractor's Fee is included within the cost identified as the Guaranteed Maximum Price.

**Contractor's Fee for Changes:**
Changes in the Work shall adjust the Contract Sum by the cost of the change as provided for in the AIA Document A-201, General Conditions, plus ten percent (10%) for Contractor's fee for additive changes and allowance overages (plus bond and insurance costs), and shall be adjusted only by the cost of the change for deductive changes and allowance underages.

All changes in the Work will include time extension when the result thereof, in the reasonable opinion of Contractor, will cause delay in the construction of the project.  All delays beyond the Contractor's control will be paid for by Owner.  For each additional day, General Conditions shall be added via change order at a minimum rate of $5,845.53 per day.

**§ 5.2 GUARANTEED MAXIMUM PRICE**
~~§ 5.2.1 The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor not to exceed ($     ), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.~~

*(Insert specific provisions if the Contractor is to participate in any savings.)*

The sum of the Cost of the Work, the General Conditions and the Contractor's Fee is guaranteed by the Contractor not to exceed Forty Six Million Nine Hundred Eighty Eight Thousand Dollars ($46,988,000.00) subject to additions and deductions by Change Order as provided in the Contract Documents.  Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum price "GMP" is subject to the Assumptions Clarification contained in Exhibit A to this Agreement.  The Contract Sum is the Contractor's Guaranteed Maximum Price for the Work.  Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.  Accordingly, in the event that the aggregate Cost of the Work exceeds the Contract Sum for any reason not otherwise provided for in this Agreement, such excess shall be the responsibility of the Contractor.

If the actual Cost of the Work plus the Contractor's Fee total less than the Guaranteed Maximum Price, then the savings will be divided as follows:  all savings on non-allowance items shall be divided fifty percent (50%) to the Owner fifty percent (50%) to the Contractor.  Any savings on allowance items will accrue to the Owner 100%. *Notwithstanding anything contained herein to the Contrary,* ~~§ 5.2.2 The Guaranteed Maximum Price is based on the following elimination, if any, which are described in the~~ *all savings on General Conditions shall accrue One Hundred Percent (100%) to* ~~Contract Documents and are hereby accepted by the Owner~~ *Owner. The Owner acknowledges that the General Conditions are not to be intended to be a Guaranteed Maximum within the GMP contract.*

AIA Documents A111™ – 1997, Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:53:33 on 06/24/2005 under Order No.1000173828_1 which expires on 4/21/2006, and is not for resale.
User Notes:

*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)*

.1  Exhibit A, including the GMP Summary, including Qualifications & Assumptions, Contractor's Fee and the General Conditions Budget; and
.2  The Owner-Contractor Agreement, including Attachment No. 1 (Exhibit G); and
.3  Allowances, as provided in Exhibit C; and
.4  Miscellaneous Provisions, as provided in Exhibit B; and
.5  General Conditions of the Contract; and
.6  Drawings, as listed in Exhibit E; and
.7  Specifications, as listed in Exhibit E.

§ 5.2.3 Unit prices, if any, are as follows:

| Description | Units | Price ($ 0.00) |
|---|---|---|
| Not Applicable | | |

§ 5.2.4 Allowances, if any, are as follows
*(Identify and state the amounts of any allowances, and state whether they include labor, materials, or both.)*

Allowances are identified in the Assumptions and Clarifications included in Exhibit A to this Agreement, and as listed in Exhibit C, Allowances.

§ 5.2.5 Assumptions, if any, on which the Guaranteed Maximum Price is based are as follows:

Assumptions, if any, on which the Guaranteed Maximum Price is based are identified in the Qualifications and Assumptions included in Exhibit A to this Agreement.

§ 5.2.6 To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.
To the extent that the Drawings and Specifications are anticipated to require further development by the Architect or other design professionals, the Contractor has included in the Guaranteed Maximum price for such further development consistent with the Contract Documents and reasonable inferable therefrom. It is the intent and understanding of Contractor in providing a GMP for this Work, that the Drawings and Specifications provide for the construction of the work by the Contractor, including all devices, fasteners, materials or other work not shown in the Drawings and Specifications but which are reasonably inferable therefrom, all of which shall be included as part of the Cost of the Work. The expression "reasonably inferable" and similar terms in the Contract Documents shall be interpreted to mean reasonably inferable by the contractor familiar with the Project and exercising the care, skill and diligence of the Contractor by the Contract Documents.

5.2.7  In the event that the Contractor is required to pay or bear the burden of any new federal, state, or local tax or impact fee, or of any rate increase of any existing tax or impact fee (except a tax on net profits), as a result of any statues, court decision, written ruling, ordinance, or regulation taking effect after the Contract date, or additional premiums for insurance, the Guaranteed Maximum Price shall be increased by the amount of the new or increased tax or impact fee.

General Liability and Worker's Compensation are included at the rate as of the date of the start of the project. Should Contractor's General Liability or Worker's Compensation rate change, this contract value will be adjusted accordingly.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                                                          (4292811238)

27-Jun-2005  04:08pm    From-Fernandez Barron Squitero & Faust, P.A.    305 285 0329    T-282  P.006/018  F-0  
JUN-27-2005  03:08    COASTAL ESTIMATING

5.2.6    This Guaranteed Maximum Price is based on reinforcing steel, concrete, metals, drywall and related finishing and component prices as of July 1, 2005.  Should these materials not be available at the prices or in a timely manner from which the Guaranteed Maximum Price is based, then the Guaranteed Maximum Price shall be subject to an increase by an amount equal to the difference between the actual cost of such, services or materials and the quoted price and time on which the Guaranteed Maximum Price was based. *This paragraph subject to Exhibit A-2, Division III (concrete)*

*item # 5*

5.3    Any savings herein referred to as "Scope Savings", may also be realized at any time from reductions in scope to be approved by the Owner in writing.  All such savings will accrue to Owner.  Contractor's Fee shall not be reduced as a result of the aforementioned Scope Savings".

ARTICLE 6  CHANGES IN THE WORK  
§ 6.1 ~~Adjustments to the Guaranteed Maximum Price or account of changes in the Work may be determined by any of the methods listed in Section 7.3.3 of AIA Document A201-1997.~~  
Adjustments to the Guaranteed Maximum Price on account of changes in the Work shall be determined in accordance with Article 7 of the General Conditions.

§ 6.2 In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of AIA Document A201-1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Section 7.3.6 of AIA Document A201-1997 shall have the meanings assigned to them in AIA Document A201-1997 and shall not be modified by Articles 5, 7 and 8 of this Agreement.  Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 6.3 In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201-1997 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the terms "fee" and "a reasonable allowance for overhead and profit" shall mean the Contractor's Fee as defined in Section 5.1.2 of this Agreement.

§ 6.4 If no specific provision is made in Section 5.1 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Section 5.1 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the basis of the Fee established for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

6.5    Increased costs for the items set forth in Article 7, which result from changes in the Work, shall become part of the Cost of the Work, and the Contractor's Fee shall be adjusted as provided in Paragraph 5.1.2.

ARTICLE 7  COSTS TO BE REIMBURSED  
§ 7.1 COST OF THE WORK  
The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7.

§ 7.2 LABOR COSTS  
§ 7.2.1 Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's approval, at off-site workshops.

§ 7.2.2 ~~Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site with the Owner's approval.~~  
Wages and salaries of the Contractor's supervisory, administrative and technical personnel and all other personnel who provide services in connection with the Work, when assigned to the Project as specifically identified within the General Conditions Budget of the GMP and at the established rates identified within the General Conditions budget of the GMP.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:25:00 on 05/04/2005 under Order No. 1000173322_3 which expires on 03/1/2006, and is not for resale.  
User Notes:                                                                                                            (4382817239)

*(If it is intended that the wages or salaries of certain personnel stationed at the Contractor's principal or other offices shall be included in the Cost of the Work, identify in Article 14 the personnel to be included and whether for all or only part of their time, and the rates at which their time will be charged to the Work.)*

**§ 7.2.3** Wages and salaries of the Contractor's supervisory or administrative personnel engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

**§ 7.2.4** ~~Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.~~ Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments, and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations, provided that such costs are based upon the wages and salaries included in the Cost of the Work under Subparagraphs 7.2.1 through 7.2.3 above. The aggregate percentage of all such benefits identified within this subparagraph shall not exceed sixty percent (60.0%) for hourly personnel and forty percent (40.0%) for salaried personnel.

## § 7.3 SUBCONTRACT COSTS
**§ 7.3.1** Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

**7.3.2** Valid and timely claims made by subcontractors may be considered to be legitimate subcontractor costs under this Article only to the extent that the entitlement and quantum of each subcontractor claim have been researched and validated in detail by the Contractor and the Contractor concurs in writing with the validated subcontractor's position in this regard.

## § 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
**§ 7.4.1** Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

## § 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS
**§ 7.5.1** Costs, including transportation and storage, installation, maintenance, storage taxes, repairs, unloading and return to point of origin, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers, that are provided by the Contractor at the site and fully consumed in the performance of the Work; and cost (less salvage value) of such items if not fully consumed, whether sold to others or retained by the Contractor. Cost for items previously used by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Contractor at the site, whether rented from the Contractor or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof, including storage, storage taxes, repairs, unloading and return to point of origin. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

**§ 7.5.3** Costs of removal of waste and debris from the site.

**§ 7.5.4** ~~Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.~~ Costs incurred in the field or in the Contractor's Home Office in connection with the Project for document reproductions, facsimile transmissions, and long-distance telephone calls, postage and parcel delivery

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 08/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes: (4292811236)

charges, telephone and computer connection services at the site, site office charges for heat, light, power, water and sanitary facilities, first aid facilities, safety communications systems, elevator services and hoisting, and reasonable petty cash expenditures and all items ancillary to the foregoing or as specifically identified within the General Conditions Budget of the GMP and at the established rates or amounts identified within the General Conditions Budget of the GMP.

§ 7.5.5 ~~That portion of the reasonable expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the Work.~~
That portion of the reasonable expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the Work, including meetings and travel to yards and fabrication plants, with prior approval of the Owner. This specifically excludes travel and any other per diem expenses for personnel working out of an out-of-town office.

§ 7.5.6 Costs of materials and equipment suitably stored off the site at a mutually acceptable location, if approved in advance by the Owner.

7.5.7 Rental and/or leasing of automobiles, including vehicle allowances provided by Contractor to those employees providing services in connection with the Work, as specifically identified within the General Conditions Budget of the GMP and at the established rates identified within the General Conditions Budget of the GMP."

§ 7.6 MISCELLANEOUS COSTS
§ 7.6.1 That portion of insurance and bond premiums that can be directly attributed to this Contract.

§ 7.6.2 Sales, use or similar taxes imposed by a governmental authority that are related to the Work.

§ 7.6.3 Fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.

§ 7.6.4 Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of AIA Document A201-1997 or other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

§ 7.6.5 Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Section 3.17.1 of AIA Document A201-1997 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

§ 7.6.6 Data processing costs related to the Work. <u>Data processing costs shall be limited to only those data processing costs that are occurred at the project site, or those associated with documents produced for the Project at the home offices of the Contractor to the extent included within the General Conditions Budget of the GMP.</u>

§ 7.6.7 Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility to the Owner as set forth in the Contract Documents.

§ 7.6.8 ~~Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor in the performance of the Work and with the Owner's prior written approval, which approval shall not be unreasonably withheld.~~
Legal and accounting support costs, costs of any independent experts hired to assist in the dispute resolution process with subcontractors, in accordance with Subparagraph 4.4.1 of the General Conditions, mediation costs, including attorney's fees other than those arising from disputes between the

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                                                                                          (4292611236)

Owner and the Contractor, reasonably incurred by the Contractor in the performance of the Work and with the Owner's prior written approval, which approval shall not be unreasonably withheld.

§ 7.6.9 Expenses incurred in accordance with the Contractor's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, if approved by the Owner.

7.6.10   Expenses incurred for compliance with and all other items relating to the requirements of safety, health, occupational, environmental and other laws, regulations, statutes or rulings of governmental agencies related to the Project, however nothing in this Agreement or the General Conditions shall transfer or diminish the actual responsibility of the Subcontractors regarding site safety.

**§ 7.7 OTHER COSTS AND EMERGENCIES**
§ 7.7.1 Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

§ 7.7.2 Costs due to emergencies incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.6 of AIA Document A201-1997.

§ 7.7.3 Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recoverable by the Contractor from insurance, sureties, Subcontractors or suppliers.

**ARTICLE 8   COSTS NOT TO BE REIMBURSED**
§ 8.1 ~~The Cost of the Work shall not include:~~ Notwithstanding any provision to the contrary in this Agreement or in the General Conditions, the Cost of the Work shall not include:

§ 8.1.1 Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Sections 7.2.2 and 7.2.3 or as may be provided in Article 14.

§ 8.1.2 ~~Expenses of the Contractor's principal office and offices other than the site office.~~   Expenses of the Contractor's principal office or offices other than the site office, except as specifically provided in Subparagraph 7.5.4 above.

§ 8.1.3 Overhead and general expenses, except as may be expressly included in Article 7.

§ 8.1.4 ~~The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.~~ The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work, except as provided in Paragraph 14.2 below.

§ 8.1.5 Rental costs of machinery and equipment, except as specifically provided in Section 7.5.2.

§ 8.1.6 Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence or failure to fulfill a specific responsibility of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

§ 8.1.7 ~~Any cost not specifically and expressly described in Article 7.~~   Any cost not specifically and expressly described in **Article 7** or the Guaranteed Maximum Price Summary or the General Conditions Budget of the GMP.

§ 8.1.8 Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

**ARTICLE 9   DISCOUNTS, REBATES AND REFUNDS**
§ 9.1 Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment and received payment therefor from the

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:58:33 on 08/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                                                                    (4292611239)

27-Jun-2005 04:04pm    From-Katz Barron Squitero & Faust, P.A.    305 285 0328    T-282   P.007/018   F-019
JUN-27-2005  03:03    COMM PKG 2521PM AND

Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be secured.

§ 9.2 Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 10  SUBCONTRACTS AND OTHER AGREEMENTS

§ 10.1 Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner may designate specific persons or entities from whom the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Architect Owner for review. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

§ 10.2 If a specific bidder among those whose bids are delivered by the Contractor to the Architect (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

§ 10.3 Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

## ARTICLE 11  ACCOUNTING RECORDS

The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to, and shall be permitted to audit and copy, the Contractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Contract, and the Contractor shall preserve them for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12  PAYMENTS
### § 12.1 PROGRESS PAYMENTS

§ 12.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents. Each Application for Payment shall use the Contractor's standard form of payment application AIA forms G702 and G703. ~~Except content of the Schedule of Values shall be subject to approval of the Owner as defined within the General Conditions.~~ *Each Application for Payment shall be accompanied by a cost to date General Conditions report.*

§ 12.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 12.1.3 ~~Provided that an Application for Payment is received by the Architect not later than the ——— day of a month, the Owner shall make payment to the Contractor not later than the ——— day of the same month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than ———(  ) days after the Architect receives the Application for Payment.~~
Provided that a draft Application for Payment is received by the Owner not later than the 25th day of the month, and a Final Application for Payment due to the Owner by the 30th day of the month, the Owner shall make payment to the Contractor not later than the 15th day of the following month. If a draft Application for Payment is received by the Owner after the draft application date fixed above (the 25th day

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:31:49 on 06/24/2005 under Order No.1000175322_1 which expires on 4/17/2006, and is not for resale.
User Notes:                                                                                                           (4080744360)

10

of a month), payment shall be made by the Owner not later than twenty (20) days after the date that the Owner received the draft Application for Payment.

§ 12.1.4 ~~With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check-vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.~~ Application for payments shall be paid on percent complete basis. All invoices and corresponding back up for such billings shall be made available to Owner at Contractor's offices at any reasonable time for audit purposes. In addition to other required items, each Application for Payment shall be accompanied by the following, all in form and substance satisfactory to the Owner and in compliance with applicable Florida statutes: (1) Duly executed waivers and release of lien forms from the Contractor, Subcontractors, Sub-subcontractors and material suppliers for the preceding month's progress payment substantiating payment, and (2) Such other information, documentation and materials as the Construction Lender may require.

§ 12.1.5 ~~Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.~~ Each Application for Payment shall be based upon (1) the applications of each of the subcontractors and suppliers in the amounts approved by the Contractor for Work completed or estimated to have been completed as of the end of the preceding month and for delivered and stored materials, less any applicable retention and other deductions (if any), and; (2) all other amounts due to the Contractor under Article 7 ; and (3) the monthly payment of Contractor's Fee due to the Contractor under Subparagraph 5.1.2 above.

§ 12.1.6 Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ 12.1.7 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

.2 add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3 add the <u>monthly</u> Contractor's Fee, ~~less retainage of ——— ( ——— ).The Contractor's Fee shall be computed upon the Cost of the Work described in the two preceding Clauses at the rate stated in Section 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work in the two preceding Clauses bears to a reasonable estimate of the probable Cost of the Work upon its completion;~~

.4 subtract the aggregate of previous payments made by the Owner;

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                                      (4292811286)

.5    subtract the shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation; and

.6    subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201-1997.

.7    Upon Substantial Completion of each building(s) , the Owner shall make full payment to the Contractor for the entire unpaid balance of the Contract Sum less One Hundred Fifty Percent (150%) of the value of incomplete work as determined by the Architect and Contractor. As each scope of incomplete work is completed, payment in the amount being held for that particular work will be paid in accordance with time period set forth in paragraph 12.1.3.

§ 12.1.8 Except with the Owner's prior approval, payments to Subcontractors shall be subject to retainage of not less than ——— ( ——— ). The Owner and the Contractor shall agree upon a mutually acceptable procedure for review and approval of payments and retention for Subcontractors.

No retainage shall be held on the Contractor's General Conditions or Contractor's Fee.

Adjustments to retainage being held on subcontractors may be made with the Owner's and lender's approval to the retainage requirements to the maximum extent that no further retainage will be withheld from the amount of a Schedule of Values line item from payments due and owing to subcontractors after fifty percent (50.0 %) of such Work is complete and satisfactory to the Owner, the lenders and the Contractor. This right to request that no further retainage be withheld for future Work shall not be retroactive to any retainage already held. The remaining retainage already withheld by the Owner shall be released to the subcontractors within thirty (30) days after satisfactory completion of the subcontractors Work as determined by the Owner and the Contractor, subject to approval of construction lender(s).

Upon Substantial Completion of each building(s), the Owner shall make full payment to the Contractor for the entire unpaid balance of the Contract Sum less One Hundred Fifty Percent (150%) of the value of incomplete work as determined by the Architect and Contractor. As each scope of incomplete work is completed, payment in the amount being held for that particular work will be paid to the Contractor in accordance with time period set forth in paragraph 12.1.3.

§ 12.1.9 In taking action on the Contractor's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 12.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections or that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

§ 12.2 FINAL PAYMENT
§ 12.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect;

.3    a final accounting for the Cost of the Work and all required supporting documentation have been submitted by the Contractor and approved by the Owner.

AIA Document A111™ –1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                          (4292811296)

.4   In addition to the documentation required for each Application for Payment set forth in this Agreement, the Contractor shall furnish the following all in form and substance satisfactory to the Owner and the Lender in compliance with the applicable Florida statutes: (1) A duly executed and acknowledged Contractor's sworn statement and final affidavit; and (2) Duly executed unconditional waiver and release by the Contractor and all major (major subcontractor or supplier is defined as one who furnished labor, material or equipment having a value of $10,000 or more) Subcontractors, Sub-subcontractors and material suppliers upon final payment; and (3) Such other information, documentation and materials as the Owner, Architect and Construction Lender may require as further set forth in the Agreement and General Conditions, and Supplementary Conditions, including but not limited to completed record drawings, final certificate of occupancy if not withheld through no fault of the Contractor by all governing authorities, duly executed and completed warranties for all material, equipment and workmanship as required by the Contract Documents.

.5   If, subsequent to Final Payment and at the Owner's request, the Contractor incurs costs described in Article 7 of this Agreement and not excluded by Article 8 of this Agreement to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price, if any. If the Contractor has participated in "Shared Savings" as provided in Paragraph 5.2.1 of the contract, the amount of such shared savings shall be recalculated and the appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

**§ 12.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

**§ 12.2.3** The Owner's accountants will review and report in writing on the Contractor's final accounting within 30 days after delivery of the final accounting to the Architect by the Contractor. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 12.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201-1997. The time periods stated in this Section 12.2.3 supersede those stated in Section 9.4.1 of the AIA Document A201-1997.

**§ 12.2.4** If the Owner's accountants report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to demand arbitration of the disputed amount without a further decision of the Architect. Such demand for arbitration shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment; failure to demand arbitration within this 30-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Contractor. Pending a final resolution by arbitration, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**§ 12.2.5** ~~If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Section 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.~~

## ARTICLE 13   TERMINATION OR SUSPENSION
**§ 13.1** This Contract may be terminated by the Contractor, or by the Owner for convenience, as provided in Article 14 of AIA Document A201-1997. However, the amount to be paid to the Contractor under Section 14.1.3 of AIA Document A201-1997 shall not exceed the amount the Contractor would be entitled to receive under Section 13.2 below, except that the Contractor's Fee shall be calculated as if the Work had been fully completed by the Contractor, including a reasonable estimate of the Cost of the Work for Work not actually completed.

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                                                        (4292811236)

§ 13.2 The Contract may be terminated by the Owner for cause as provided in Article 14 of AIA Document A201-1997. The amount, if any, to be paid to the Contractor under Section 14.2.4 of AIA Document A201-1997 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

§ 13.2.1 Take the Cost of the Work incurred by the Contractor to the date of termination;

§ 13.2.2 Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

§ 13.2.3 Subtract the aggregate of previous payments made by the Owner.

§ 13.3 The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 13.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

§ 13.4 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Section 14.3.2 of AIA Document A201-1997 except that the term "profit" shall be understood to mean the Contractor's Fee as described in Sections 5.1.2 and Section 6.4 of this Agreement.

ARTICLE 14   MISCELLANEOUS PROVISIONS
§ 14.1 Where reference is made in this Agreement to a provision AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 14.2 ~~Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.~~
~~(Insert rate of interest agreed upon, if any.)~~

Approved payments due and unpaid under the Contract shall bear interest from the date that the payment is due at the rate of one-half of one percent (0.5%) per month.

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

§ 14.3 The Owner's representative is:
*(Name, address and other information.)*

Carl Klepper
~~Sempson Associates of Boynton, LLC~~   *ACR Holdings II, LLC*
630 North Federal Highway, Suite 2800
Boca Raton, FL 33432

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:56:33 on 06/24/2005 under Order No.1030175332_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                    (0232321 1253)

14

§ 14.4 The Contractor's representative is:
*(Name, address and other information.)*

Steve May
Coastal Condominiums
3801 PGA Blvd Suite 101
Palm Beach, FL 33410

§ 14.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

§ 14.6 Other provisions:

14.6.1   This Agreement may not be amended, modified or terminated by oral communication. No written amendment or modification shall be binding upon the Owner unless signed by the Owner's authorized signatory representative. This Agreement shall bind the successors and assigns of the representative parties. No provision of the Contract Documents shall be deemed to have been waived by either party, either expressly, impliedly or by course of conduct, unless such waiver is in writing and signed by such party, which waiver shall apply only to the matter described in the writing and not to any subsequent rights of such party.

14.6.2   All understandings heretofore between the parties are merged into this Agreement and General Conditions, which fully and completely express the terms of their agreement. This Agreement shall be construed under the laws of the State of Florida, and any claims and causes of action arising under or in conjunction with this Agreement shall be brought in a court of competent jurisdiction in Palm Beach County, Florida. Neither the Agreement, nor any memorandum thereof, may be recorded in the Public Records and any such recording by Contractor shall be deemed a material default.

14.6.3   If any provision of this Agreement or the General Conditions shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the of the remaining provisions shall in no way be affected or impaired thereby, and such remaining provisions shall remain in full force and effect. The invalid, illegal or unenforceable provision shall be replaced by a mutually acceptable provision, which being valid, legal and enforceable, comes closest to the intention of the parties underlying the invalid, illegal or unenforceable provision.

14.6.4   The Contract Documents represent the entire agreement between the parties hereto and supersedes all prior negotiations, representations or agreements, whether written or oral. Contractor's relationship with Owner is solely as an independent contractor and nothing contained in the Agreement shall be construed as creating a joint venture, partnership or employer/employee relationship.

14.6.5   Other than stated in this paragraph, there are no intended or unintended third party beneficiaries of this Agreement, and no parties other than the Owner and the Contractor shall have the right to enforce this Agreement. This third party beneficiary limitation specifically excludes the Owner's Lenders, who shall be considered to be intended third-party beneficiaries to this Agreement and who shall have the right to enforce this Agreement.

14.6.6   References to the "Owner" and to "Contractor" hereunder shall be deemed to be references to the parties hereto and their respective successors and assigns. Neither party to the Agreement shall assign, sublet or transfer (by operation of law or otherwise) any interest in the Agreement without the prior written consent of the other party, nor shall Contractor assign any monies due or to become due to it under the Agreement without the prior written consent of the Owner, which consent shall not be unreasonably

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                                          (4292811236)

withheld, delayed or conditioned. Any assignment without such prior written consent shall be void. Owner shall also have the right to assign the Agreement as security to one or more of its lenders. If this Agreement is so assigned to Owner's lenders, Contractor will, on request, execute and deliver such documents and instruments as lender(s) may reasonably request, including without limitation (i) an agreement whereby contractor agrees to perform its services hereunder for lender(s) or their designee in the event that any default by Owner shall occur, so long as Contractor has been paid in full for all Work performed in accordance with this Agreement and (ii) an amendment to the Agreement containing terms and conditions reasonably requested by the lender(s), so long as such terms and conditions do not increase, other than to a minor extent, Contractor's obligations hereunder.

14.6.7   In no event shall Contractor or Owner have any recourse against the partners, officers, directors, employees, agents, and direct or indirect owners of the other party in connection with the obligations and liabilities hereunder. Contractor or Owner, its partners, and its representatives will have no personal liability with respect to any of the provisions of the Agreement. Contractor will look solely to the Owner for the satisfaction of any claims of the Contractor, including, without limitation, the collection of any judgment requiring the payment of money by the Owner in the event of any default or breach by Owner with respect to any of the terms and provisions of the Contract Documents.

14.6.8   Contractor agrees to maintain a competent, full-time staff dedicated to the Project, including a qualified project manager, project superintendent and necessary assistants, to coordinate and provide general direction of the Work and to monitor and coordinate progress of the subcontractors on the Project. The Contractor shall submit to Owner a list of all supervisory and managerial personnel to be associated with the Project. Any additional personnel required by the Contractor to perform the services identified herein shall be requested in writing by the Contractor, along with the reason for requesting such additional personnel. No additional personnel shall be assigned to the Project without the specific and prior written approval of the Owner. If additional personnel are assigned to the Project by the Contractor without receiving prior written authorization by the Owner, those additional personnel shall be considered to be non-reimbursable to the Contractor. If so requested by Owner in writing and for reasonable cause, the Contractor shall change any staff associated with the Project to another individual reasonably acceptable to Owner.

14.6.9   Notwithstanding anything to the contrary in the Construction Documents, the Contract and all of its terms and conditions are subject to approval and or modification by the Owner's construction lender.

14.6.10   Owner and contractor hereby knowingly, irrevocably, voluntarily and intentionally waive any right either may have to a trial by jury in respect of any action, proceeding or counterclaim based upon the contract documents, or arising out of, under, or in connection with the construction of the work or any course of conduct, course of dealing, statements (whether verbal or written) or actions of any party.

14.6.11   Contractor shall keep accurate books of records and accounts in accordance with sound accounting principles of all costs for work performed and all other costs incurred in connection with the Project. Without limiting the foregoing, the materials kept by Contractor shall include all construction related materials generated or obtained by Contractor in connection with the Project, all materials produced or obtained by the Contractor, original estimates, estimating work sheets, correspondence, change order documentation, permit and approved materials, all materials related to disbursements, all materials relating to inspections, observations and certifications, logs concerning construction progress and personnel on the site, all the foregoing are referred to as "Records." Records also include those records necessary to evaluate and verify direct and indirect costs, including overhead allocations as they apply to costs associated with

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:                                                                          (4292611236)

the Project, together with any other records, documentation or accounting data or information required by any of Owner's Lenders or other parties providing financing for the Project. All Records shall be maintained by Contractor for a minimum of three (3) years following Project Completion or longer if required by law.

**14.6.12** The records identified above in 14.6.11 shall be available to Owner upon request for examination and audit at a mutually convenient time within five (5) working days of such request. Such audits may require inspection and copying from time to time of the Contractor's Records. Owner's authorized representatives shall have access to the Contractor's facilities and shall be provided adequate and appropriate work space in order to conduct audits in compliance with this Section. Contractor shall require all subcontractors to comply with the provisions of Subparagraphs 14.6.11 and 14.6.12 by insertion of the requirements thereof in any written agreement between Contractor and subcontractor.

**14.6.13** The General Conditions included as a part of the Schedule of Values are to be considered in their totality as a Cost of the Work and will not be associated on an individual line item basis but rather as a part of the total as it relates to any savings below the Guaranteed Maximum Price.

**14.6.14** Contractor shall obtain final Certificate of Occupancy for the project within ninety (90) days following Substantial Completion.

**14.6.15** Salaries and related expenses of the Contractor's employees in the home office performing functions directly related to the Project, including the project executive, project manager, contract administrator, cost reporting, and accounting are to be included in the Cost of the Work to be reimbursed as General Conditions. Such personnel shall be paid only for that portion of their time required for the Work.

**14.6.16** Contractor will make changes to units at its discretion with developers approval. Alterations that will require additional time will be rejected.

**SEE ATTACHED FOR 14.6.17 and 14.6.18**

**ARTICLE 15 ENUMERATION OF CONTRACT DOCUMENTS**

§ 15.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

§ 15.1.1 The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A111-1997.

§ 15.1.2 The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

§ 15.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated , and are as follows:

| Document | Title | Pages |
|---|---|---|
| Not Applicable | | |

§ 15.1.4 The Specifications are those contained in the Project Manual dated as in Section 15.1.3, and are as follows: (Either list the Specifications here or refer to an exhibit attached to this Agreement.)
Title of Specifications exhibit: Not Applicable

§ 15.1.5 The Drawings are as follows, and are dated unless a different date is shown below: (Either list the Drawings here or refer to an exhibit attached to this Agreement.)
Title of Drawings exhibit: See Exhibit E.

§ 15.1.6 The Addenda, if any, are as follows:

AIA Document A111™ = 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:25:25 on 05/24/2005 under Order No.1000173052_1 which expires on 4/81/2006, and is not for resale.
User Notes: (3632911230)

27-Jun-2005  4:05PM   From-Katz Barron Squitero & Faust, P.A.     305 285 0323          T-282  No. 9895    P. 10

4.6.7 Notwithstanding anything contained herein to the contrary, should any provision of this contract or the exhibits require the consent of the Owner, the consent of the Owner shall be required in all instances and shall be in writing.

4.6.18
Contractor will make its best effort to deliver the parking garage in a clean, oil free, stain free condition. Contractor shall not allow any parking in the garage until turned over to the Owner.

| Number | Date | Pages |
|--------|------|-------|

*(Paragraph deleted)*

Not Applicable

**§ 15.1.7** Other Documents, if any, forming part of the Contract Documents are as follows:

*(List here any additional documents, such as a list of alternates that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

.1  Exhibit A1 – Qualifications and Assumptions
.2  Exhibit A – GMP Summary
.3  Exhibit B - Miscellaneous Provisions
.4  Exhibit A2 – General Conditions Budget
.5  Exhibit C – Schedule of Allowances
.6  Exhibit E – Drawings / Specifications Log
.7  Exhibit G – Attachment No. 1 – Insurance Addendum
.8  Exhibit K – Contractor's Construction Schedule
.9  AIA 111 – 1997
.10 Exhibit D – General Conditions of the Contract
.11 Exhibit F – Addenda – Residence Finish Schedule
.12 Exhibit H – General Contractor's Subcontract Agreement
.13 Exhibit I – Payment and Performance Bonds (Draft)
.14 Exhibit J – Agreement of General Contractor with Wachovia Bank

**ARTICLE 16  INSURANCE AND BONDS**
*(List required limits of liability for insurance and bonds. AIA Document A201-1997 gives other specific requirements for insurance and bonds.)*
Contractor's insurance requirements shall be as defined in Attachment No. 1 (Exhibit G) to AIA A111.  Contractor's Bonding requirements shall be as defined in the AIA A201 General Conditions, Article 11, paragraph 11.5.

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

_____

Coastal Construction of South Florida Inc.
d/b/a **COASTAL CONDOMINIUMS**

_____
OWNER *(Signature)*

Manager

_____
CONTRACTOR *(Signature)*

_____
Gene Gilkyson Jr.
*(Printed name and title)*
Managing

Daniel E. Whiteman, President
CG CA08060
*(Printed name and title)*

AIA Document A111™ – 1997. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:35:33 on 06/24/2005 under Order No.1000175322_1 which expires on 4/21/2006, and is not for resale.
User Notes:

(4292811236)



LEXISNEXIS® FILE & SERVE
36318107
E-SERVICE
Mar 7.2011
2:36PM

**RCR Holdings II, LLC**
1500 Gateway Blvd., Suite # 200
Boynton Beach, FL 33426
(561) 244-6650

<u>**Via Federal Express**</u>

April 16, 2010

Arch Insurance Company
300 Plaza Three
Jersey City, NJ 07311

Re:     (Bond #SU1013827)
        **Principal:** Coastal Construction Group of South Florida, Inc. dba Coastal Condominiums
        **Alleged DOL:** 2009; Completion Date: On or about 1/26/07

Dear Sir or Madam:

I am the authorized Manager for RCR Holdings II, LLC ("RCR"), the Obligee under the above-referenced bond. As reflected in the enclosed 2nd Amended Complaint RCR has found itself involved in a lawsuit by a multitude of Unit Owners of a construction project built by your above-named Principal. The claims largely relate to the alleged installation of what is commonly described as "Chinese Drywall." The details of the claim are contained within the allegations of the Amended Complaint. We have verified that RCR previously made all payments to your Principal/Contract in accordance with the parties' Contract and the subject Bond. <u>**This correspondence serves as RCR's declaration of default by your Principal under the Contract dated June 24, 2005, as required by the Performance Bond issued by Arch Insurance Company. RCR states that Principal is in default.**</u>

The basis of the default by your Principal is detailed in the enclosures. Your Principal has been advised in writing of the basis for the default since approximately September 2009, but has taken no actions to cure the default or mitigate RCR's losses.



EXHIBIT
C

We request you contact the undersigned with Arch's response as quickly as possible in order to preserve both your ability to respond and otherwise investigate the claim, including any evidence that may be subject to spoiliation. Moreover, all requests for documents should be directed to the Principal/Contractor who was obligated by statute to maintain all the records. We look forward to your prompt reply.

Sincerely,
RCR Holdings II, LLC

James Comparato
Manager

JC/crd

Enclosures
Cc:     Bruce G. Alexander, Esq via email-balexander@caseyciklin.com
        Michael Utley, Esq.via email-mike.utley@meupc.com
        Richard Chaves, Esq. Via email-RChaves@caseyciklin.com
        Becky Basil, via email-RBasil@caseyciklin.com