UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                      MDL DOCKET: 2047

CHINESE MANUFACTURED DRYWALL             SECTION: L
PRODUCTS LIABILITY LITIGATION

                                         JUDGE FALLON
                                         MAG. JUDGE WILKINSON

_____/

**AFFIDAVIT OF NEAL A. SIVYER IN OPPOSITION TO THE
MOTION TO OPT-OUT OF SETTLEMENT AGREEMENTS
REGARDING CLAIMS IN MDL NO. 2047 BY INDIVIDUAL CLASS
MEMBERS, RAYMOND P. FARLEY AND AMELIA J. FARLEY**

BEFORE ME, the undersigned authority, personally appeared NEAL A. SIVYER, who,

being first duly sworn, deposes and states as follows:

1.      My name is NEAL A. SIVYER.  I am over the age of eighteen (18) years and

make this Affidavit based upon my personal knowledge of the facts alleged herein.

2.      I represent Taylor Morrison in this action and in the pending Manatee County

Circuit Court action filed by the Farleys.

3.      I have read the Affidavit of David Maglich filed herein on August 27, 2013, in

support of the Farleys' Motion to Opt-Out of the Settlement Agreements.   Several of his

statements are false.

4.      Paragraph 6 of the Affidavit of David Maglich states that the Farleys did not

pursue the litigation against Taylor Morrison because of "the stay imposed by the MDL."   In

fact, the Farleys filed their lawsuit two years after the MDL case was opened (the Complaint,

without exhibits, is attached hereto as Exhibit "A").  A state court hearing was conducted several

months thereafter.  The MDL case did not act as a stay on any state court litigation, absent a

specific order.

6.      In addition to filing the lawsuit, motions and hearings took place on the issue of whether the Manatee County Circuit Court action should be sent to arbitration.  However, the Farleys have yet to file an arbitration against Taylor Morrison, two years after being ordered to do so by the Manatee County Circuit Court Judge (Exhibit "B" attached hereto is a true and correct copy).

7.      Paragraph 11 of the Maglich Affidavit inaccurately states that Taylor Morrison refused to remediate the Farleys' home.  In a letter dated December 3, 2009, Taylor Morrison, in response to a Chapter 558 notice from the Farleys, repeated its offer to repair the Farleys' residence, and also offered to pay the Farleys a per diem relocation and storage allowance (Exhibit "C" attached hereto is a true and correct copy).  The Farleys never accepted the offers to repair and never repaired the residence themselves.

8.      In a letter dated November 23, 2010, Taylor Morrison responded to a letter from the Farleys' and requested that the Farleys provide access to Taylor Morrison **to determine the type of drywall in their home.**  The letter went on to state that the Farleys **"might be eligible to participate in the Knauf pilot program"** if the drywall was manufactured by Knauf. Obviously the letter states that counsel is not sure what type of drywall is in the home, let alone the volume or type of Knauf drywall.  This letter was omitted from the affidavit of the Farleys' counsel.  This letter repeats the offer of Taylor Morrison to make repairs to the Farleys' home (Exhibit "D" attached hereto).

9.      In a letter dated March 15, 2011, Taylor Morrison repeated its offer to repair the Farleys' residence and requested that the Farleys allow destructive testing to be performed by Environ International Corp. on March 25, 2011 (Exhibit "E" attached hereto).   No such permission was given.  Such testing could have identified which drywall was corrosive.

2

10.     On September 6, 2013, Taylor Morrison repeated its offer to repair the Farleys' residence or pay them the same sum as Knauf's portion of the global settlement (Exhibit "F" attached hereto).

11.     Finally, the Maglich Affidavit states that he relied upon my representations as to "corrosive drywall" of Knauf.  However, the emails attached to the Farleys' motion (and the Benchmark report provided by Knauf) indicate that multiple types of drywall were present in the Farleys' home, and Knauf drywall was present; however, the type or quantity of Knauf drywall was never represented by me.

12.     I never stated, nor would I know, whether Knauf KPT drywall was present, let alone a sufficient amount of KPT drywall to allow the Farleys to qualify under the Knauf pilot program or Knauf settlement (*see* Exhibit "G" attached hereto).

FURTHER AFFIANT SAYETH NAUGHT.

_____

NEAL A. SIVYER

STATE OF FLORIDA          )
                          ) ss:
COUNTY OF HILLSBOROUGH    )

SWORN TO AND SUBSCRIBED before me this _9th_ day of September, 2013, by NEAL A. SIVYER, who is personally known to me and who executed the foregoing affidavit and acknowledged and attested that the contents thereof are true and correct.

_____
Notary Public
Print name:_Delores C. Dyer_
My Commission Expires:

DELORES C. DYER
MY COMMISSION # EE 169485
EXPIRES: March 23, 2016
Bonded Thru Notary Public Underwriters

3

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR MANATEE COUNTY, FLORIDA

RAYMOND P. FARLEY and AMELIA
J. FARLEY,

      Plaintiffs,

vs.                        CASE NO.   11 CA 02543

TAYLOR WOODROW HOMES-CENTRAL
FLORIDA DIVISION, LLC,

      Defendant.

_____ /

## COMPLAINT

    Plaintiffs, RAYMOND P. FARLEY and AMELIA J. FARLEY ("FARLEYS") sue Defendant, TAYLOR WOODROW HOMES-CENTRAL FLORIDA DIVISION, LLC ("TAYLOR"), and allege as follows:

    1.    Plaintiffs, FARLEYS, are individuals residing in Manatee County, Florida.

    2.    Defendant, TAYLOR, is a Florida corporation doing business in Manatee County, Florida.

    3.    Venue is proper in Manatee County, Florida, as the contract between the parties was executed, and the subject residence is located in, Manatee County, Florida.

    4.    All conditions precedent to this action have occurred or have been waived by the parties.

## BACKGROUND

    5.    In 2006, Plaintiffs, FARLEYS, and Defendant, TAYLOR, entered in a Purchase and Sale Agreement in the amount of $366,000.00 for the purchase and construction of a residence located at 3756 Summerwind Circle within the community of Palma Sola Trace in Bradenton, Florida. A copy of the Purchase and Sale Agreement is attached hereto as Exhibit "A."

    6.    As partial consideration for Plaintiffs' performance under the Purchase and Sale Agreement, Defendant, TAYLOR, guaranteed to Plaintiffs certain warranties as enumerated in the "Solid Gold 2-10 Year Limited Warranty" which is attached hereto as Exhibit "B."

    7.    Thereafter, Defendant, TAYLOR, constructed the residence pursuant to the Purchase and



Sale Agreement.

8.      On December 27, 2006, Plaintiffs, FARLEYS, executed and delivered a Note and Mortgage in favor of WF/TW Mortgage Venture, LLC d/b/a Taylor Woodrow Mortgage in the amount of $292,800.00, which funds were paid to Defendant, TAYLOR, at closing.   Plaintiffs, FARLEYS, then took title and possession of the property at that time.

9.      After moving in, Plaintiffs, FARLEYS, began to notice unusual odors and observed corrosion of the wall outlets, copper piping, copper wiring, and air conditioning units within the home.

10.     In March 2009, Plaintiffs, FARLEYS, received a letter from Defendant, TAYLOR, advising that defective Chinese drywall had been discovered in the Palma Sola Trace community and requesting permission to conduct an inspection of Plaintiffs' home.

11.     On April 9, 2009, Defendant, TAYLOR, conducted a thorough inspection of Plaintiffs' home and confirmed the presence of defective Chinese drywall.

12.     Defendant, TAYLOR, then requested an additional inspection by ENVIRON International Corporation to occur on April 23, 2009.  Upon completion of the second inspection, ENVIRON International Corporation further confirmed the presence of defective Chinese drywall.

13.     Plaintiff, AMELIA J. FARLEY, began to experience significant breathing and health problems as a result of the Chinese drywall emissions. As a result, Plaintiffs, FARLEYS, were required to move into replacement housing.

14.     To date, Plaintiffs, FARLEYS, have been unable to return to their residence and have incurred significant expenses including rental and relocation costs, loss of use of their home, continued mortgage payments, home maintenance costs, association dues, and medical expenses as a result of the toxic drywall.

15.     In addition, Plaintiffs have suffered damages to their home which include, but are not limited to, a sulfur-based smell which makes the home uninhabitable and a breakdown and corrosion of major systems in the home including electrical systems, plumbing systems, air-conditioning systems and all other components of the home which are metal based.

16.     Further, personal property in the home has been damaged and has either absorbed the smell of the sulfur or has otherwise been contaminated by the sulfuric byproducts emanating from the drywall which has caused those personal items to be damaged beyond repair.

17.     All of the drywall will have to be removed, disposed of and replaced together with other parts of the home damaged or destroyed during the removal process, together with the replacement of all damaged personal property.

18.     To date, Defendant, TAYLOR, has failed and refused to adequately address Plaintiffs' concerns and the expenses and damages incurred.

<u>COUNT I: BREACH OF CONTRACT</u>

19.     This is an action against Defendant, TAYLOR, for damages in excess of $15,000.00, based upon breach of contract.

20.     Paragraphs 1 through 18 are re-alleged.

21.     Pursuant to the terms of the Contract attached hereto as Exhibit "A" which incorporates the Solid Gold 2-10 Year Limited Warranty attached hereto as Exhibit "B", Defendant, TAYLOR, warranted Plaintiffs' home to be free from defects in materials and workmanship.

22.     Defendant, TAYLOR, has breached the aforementioned Contract by installing defective Chinese drywall in Plaintiffs' home.

23.     Despite proper notice and demand for Defendant, TAYLOR, to cure the defects, it has failed and refused to comply with the terms of the Contract.

24.     As a direct and/or proximate result of Defendant, TAYLOR, installing the defective Chinese drywall, Plaintiffs have been damaged.

25.     Plaintiffs have retained the undersigned law firm and agreed to pay a reasonable fee for its services.  Plaintiffs are entitled to recover their attorneys' fees from Defendant, TAYLOR, pursuant to the Contract.

WHEREFORE, Plaintiffs, RAYMOND P. FARLEY and AMELIA J. FARLEY, demand judgment against Defendant, TAYLOR WOODROW HOMES-CENTRAL FLORIDA DIVISION,

LLC, for damages together with costs, attorneys' fees, prejudgment interest and for such other and further relief as this Court deems just and proper.

COUNT II: BREACH OF IMPLIED WARRANTY OF HABITABILITY

26.     This is an action against Defendant, TAYLOR, for damages in excess of $15,000.00, based upon breach of implied warranty of habitability.

27.     Paragraphs 1 through 18 are re-alleged.

28.     At the time of Plaintiffs' purchase of their home, the home was new and had not been previously inhabited.

29.     Plaintiffs' home was constructed by Defendant, TAYLOR, for the purpose of sale and was delivered by Defendant to Plaintiffs in a defective condition. The defective condition involves the installation of reactive Chinese drywall.

30.     Plaintiffs notified Defendant, TAYLOR, of said defective condition and Defendant, TAYLOR, has failed and/or refused to correct same.

31.     The defective condition complained of renders the affected home uninhabitable and affects the major systems and structural components of the home.

32.     Defendant, TAYLOR, has breached the implied warranty of habitability which was extended to Plaintiffs through the sale of said property.

33.     As a direct and/or proximate result of Defendant, TAYLOR's breach of the implied warranty of habitability, Plaintiffs have been damaged and will be required to expend large sums of money for the repair and correction of the problems caused by Defendant's breach.

WHEREFORE, Plaintiffs, RAYMOND P. FARLEY and AMELIA J. FARLEY, demand judgment against Defendant, TAYLOR WOODROW HOMES-CENTRAL FLORIDA DIVISION, LLC, for damages together with costs, prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT III: BREACH OF IMPLIED WARRANTY

34.   This is an action against Defendant, TAYLOR, for damages in excess of $15,000.00, based upon breach of implied warranty.

35.   Paragraphs 1 through 18 are re-alleged.

36.   Plaintiffs are the owners of a home constructed and sold by Defendant, TAYLOR.

37.   At all times relevant to the events described in this complaint, Defendant, TAYLOR, was a professional building contractor.

38.   Plaintiffs entered into a Contract to purchase a new home from Defendant, TAYLOR.

39.   An implied term of the Contract was that Defendant would construct the home in a manner that meets ordinary standards reasonably to be expected of homes of comparable kind and quantity. Plaintiffs relied on Defendant, TAYLOR, to construct a home that met those standards of fitness.

40.   Plaintiffs have performed under the Contract and have taken delivery of their home.

41.   Subsequent to closing on Plaintiffs' home, it was discovered that Defendant, TAYLOR, had failed to construct the house in a reasonable manner in that it installed reactive Chinese drywall.

42.   Plaintiffs demanded that Defendant, TAYLOR, repair the deficiencies in construction of the house and compensate them for the expenses they have incurred subsequent to vacating the property. However, Defendant, TAYLOR, has refused to make the repairs and reimburse Plaintiffs.

43.   As a result of Defendant's failure to honor Plaintiffs' request, Plaintiffs have been damaged.

44.   Plaintiffs have suffered, or are reasonably certain to suffer in the future, additional damages for the repair of defects and health, maintenance and relocation expenses caused because of Defendant's breach of the implied warranty of fitness in failing to properly construct Plaintiffs' home. The repairs and expenses are necessary to make the house a safe and suitable place for housing Plaintiffs.

45.   Defendant should have foreseen that all of the items of damage would occur due to Defendant's failure to construct the home in a manner that meets ordinary standards reasonably to be expected of homes of comparable kind and quantity.

WHEREFORE, Plaintiffs, RAYMOND P. FARLEY and AMELIA J. FARLEY, demand

judgment against Defendant, TAYLOR WOODROW HOMES-CENTRAL FLORIDA DIVISION, LLC, for damages together with costs, prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT IV: NEGLIGENT CONSTRUCTION

46.    This is an action against Defendant, TAYLOR, for damages in excess of $15,000.00, based upon negligence.

47.    Paragraphs 1 through 18 are re-alleged.

48.    Defendant, TAYLOR, owed a duty to Plaintiffs to install materials free from defects and to comply with all industry standards for construction.

49.    Defendant, TAYLOR, breached that duty by installing defective materials into the home of Plaintiffs and failing to comply with industry standards for construction.

50.    The aforementioned breach of duty caused damages to other property that needs to be repaired and/or replaced.

51.    As a direct and/or proximate result of Defendant, TAYLOR's negligent construction practices, Plaintiffs have suffered damages separate and apart from those damages resulting from the breach of contract.

WHEREFORE, Plaintiffs, RAYMOND P. FARLEY and AMELIA J. FARLEY, demand judgment against Defendant, TAYLOR WOODROW HOMES-CENTRAL FLORIDA DIVISION, LLC, for damages together with costs, prejudgment interest and for such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated  April ____, 2011.

FERGESON, SKIPPER, SHAW, KEYSER,
 BARON & TIRABASSI, P.A.
1515 Ringling Boulevard, 10th Floor
Post Office Box 3018
Sarasota, Florida  34230-3018
Attorneys for Plaintiffs


By: _____
    DAVID S. MAGLICH
    Florida Bar No. 441708

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR MANATEE COUNTY, FLORIDA

RAYMOND P. FARLEY and AMELIA
J. FARLEY,

                                           CASE NO. 11-CA-02543

      Plaintiffs,


TAYLOR WOODROW HOMES –
CENTRAL FLORIDA DIVISION, L.L.C.

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO STAY AND COMPEL ARBITRATION

**THIS CAUSE** having come on to be heard on September 1, 2011, upon the Motion of

Taylor Woodrow Homes – Central Florida Division, LLC, to Stay Proceedings and Compel

Arbitration (the "Motion"), and the Court having reviewed the file and the Motion, heard

argument of counsel, and being fully advised in the premises, it is hereby,

     **ORDERED AND ADJUDGED** that the Motion be and is hereby GRANTED.

Plaintiffs' Complaint and all proceedings thereon are hereby stayed pending further Order ot

his Court and Plaintiffs are directed to submit their claims to arbitrator pursuant to the terms of

the Dispute Settlement provision of the Limited Warranty incorporated into The Purchase and

Sale Agreement between the parties dated December 11, 2006.

     **DONE AND ORDERED** in chambers in Bradenton, Manatee County, Florida this

_____ day of _____, 2011.


                                    _____

                                    HONORABLE DIANA MORELAND  ORIGINAL SIGNED
                                    Circuit Court Judge

Copies to:                                       NOV 29 2011
Stephen E. Walker, Esq.
David Maglich, Esq.                               DIANA L. MORELAND
                  DEC 0 1 2011                   CIRCUIT JUDGE



EXHIBIT
**B**

# Sivyer Barlow & Watson, P.A.

### ATTORNEYS AT LAW

MAHLON H. BARLOW, III

R.J. HAUGHEY, II

EDWARD J. KUCHINSKI

J. CARLTON MITCHELL

MELISSA A. GIVENS

NEAL A. SIVYER

STEPHEN E. WALKER

DAVID S. WATSON

PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:
swalker@sbwlegal.com

December 3, 2009

**VIA U.S. MAIL AND**
**VIA FACSIMILE (941) 957-1800**

David S. Maglich, Esq.
Fergeson, Skipper, Shaw, et al.
P.O. Box 3018
Sarasota, Florida 34230

      Re:    *The Farley Residence, 3756 Summerwind Circle, Bradenton, Florida*

Dear Mr. Maglich:

This firm represents Taylor Woodrow Homes – Central Florida Division, LLC ("Taylor Woodrow") and Taylor Morrison Services, Inc. ("Taylor Morrison"). We are in receipt of your October 12, 2009 and November 30, 2009 letters to Steven Kempton. I must apologize for our oversight in not responding to your October 12, 2009 letter. There was a breakdown in communication at our office that resulted in a draft of my letter not being sent to you in response to your October 12, 2009 letter. I have since emailed that draft to your assistant, and I enclose herein a signed copy.

Taylor Woodrow and Taylor Morrison remain committed to rectifying the situation caused by the installation of defective drywall in your clients' home. As you can see from my letter dated October 28, 2009, in addition to the offer set forth in the repair and relocation agreement previously provided to your clients, my client is offering to pay your clients a *per diem* retroactive to the date that they moved out of their home. We hope that this offer will be acceptable to your clients and that we can soon begin the process of repairing their home.

Please let me know if you have any questions.



David S. Maglich, Esq.
December 3, 2009
Page 2

Very truly yours,

Stephen E. Walker

SEW:
cc:    Taylor Morrison

# Sivyer Barlow & Watson, P.A.

### ATTORNEYS AT LAW

MAHLON H. BARLOW, III

R.J. HAUGHEY, II

EDWARD J. KUCHINSKI

J. CARLTON MITCHELL

MELISSA A. GIVENS

NEAL A. SIVYER

STEPHEN E. WALKER

DAVID S. WATSON

PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:

swalker@sbwlegal.com

October 28, 2009

**VIA U.S. MAIL AND**

**VIA FACSIMILE (941) 957-1800**

David S. Maglich, Esq.
Fergeson, Skipper, Shaw, et al.
P.O. Box 3018
Sarasota, Florida 34230

Re:   *The Farley Residence, 3756 Summerwind Circle, Bradenton, Florida*

Dear Mr. Maglich:

This firm represents Taylor Woodrow Homes – Central Florida Division, LLC, and Taylor Morrison Services, Inc. We are in receipt of your October 12, 2009, letter to Steven Kempton. As you have acknowledged, my client has already conducted an inspection of your clients' home and your clients have received my client's written offer to repair their home. That offer serves as a written offer as contemplated by § 558.004, Fla. Stat. This letter will serve as a request for all discoverable evidence relating to the construction defect set forth in your letter, pursuant to § 558.004(15), Fla. Stat.

Your position that a universally accepted protocol for the removal of defective Chinese drywall has not been established is inaccurate. Many major homebuilders are utilizing the same protocol as my client for removal of drywall and repair and replacement of affected components. My client is in the process of actively repairing a number of homes pursuant to this protocol. This protocol has been created and approved by independent experts and consultants. It is highly unlikely that a repair protocol will ever be approved or endorsed by the government.

I urge your clients to reconsider accepting the Repair and Relocation Agreement ("Agreement"). A number of homeowners have accepted the Agreement, made selections, and are well on their way to having their homes repaired and a new warranty in place. If it is your clients' desire to sell their home after the defective drywall has been removed and repairs have been made,

David S. Maglich, Esq.
October 28, 2009
Page 2

that is their choice.  Your letter is not clear as to whether Mrs. Farley's medical condition is related to the drywall issue.  However, because your clients have been displaced from their home, should they accept the Agreement, my client is willing to pay your clients the per diem set forth in the Agreement retroactive to the date your clients moved out of their home.  If acceptable, please provide me with documentation reflecting the date your clients vacated their home and an original Agreement signed by both Mr. and Mrs. Farley.

Taylor Woodrow Mortgage no longer owns your clients' mortgage and is unable to address your request for abatement of their mortgage.  Please bear in mind, though, that the per diem set forth in the Agreement is intended to offset the cost of housing during the repair process.

With regard to your request for insurance information, the documents responsive to this request are voluminous.  Please let me know how you would like to receive these documents.

Please let me know if you have any questions.

Very truly yours,

Stephen E. Walker

SEW:
cc:    Taylor Morrison

# SIVYER BARLOW & WATSON, P.A.
## ATTORNEYS AT LAW

MAHLON H. BARLOW, III
R.J. HAUGHEY, II
EDWARD J. KUCHINSKI
J. CARLTON MITCHELL
READ SAWCZYN
NEAL A. SIVYER
JACQUELINE A. TAYLOR
STEPHEN E. WALKER
PAUL D. WATSON

SunTrust Financial Centre
401 East Jackson Street
Suite 2225
Tampa, FL 33602
(813) 221-4242
Fax: (813) 227-8598

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:
nsivyer@sbwlegal.com

nsivyer@sbwlegal.com

November 23, 2010

David S. Maglich, Esq.
Fergeson Skipper
P.O. Box 3018
Sarasota, Florida  34230

Re:    Mr. and Mrs. Raymond P. Farley (Palma Sola Trace)

Dear Mr. Maglich:

I have reviewed a copy of your letter dated November 9, 2010 directed to Steve Walker of my office.  As you know, we represent Taylor Morrison Homes.  Your letter requests reimbursement of numerous items including, apparently, all the furnishings within your clients' home (although the math does not add up).  Your letter also indicates that a doctor has advised your client not to return to the home even if the drywall problem is rectified.  We have been involved in the MDL drywall case for some time and there is absolutely no medical evidence introduced by anyone suggesting that there are any long term health problems resulting from this drywall, let alone that it would be impossible to remediate the drywall.  Moreover, there is no evidence that furnishings must be discarded. My client has no intention of paying the out of pocket items that you suggest, nor am I even aware of the basis to do so.

Your letter fails to provide the appropriate statutory notice (Florida Statute §558) and access that my client needs to determine the type of drywall in the home.  If this is Knauf drywall, your clients might be eligible to participate in the "pilot program" being offered by that company. As you know, my client had no knowledge that this Chinese drywall was being supplied to its subcontractors.  In addition, my client has offered to remediate your clients' home and to pay relocation and storage expenses during the remediation.  Apparently your clients have refused to accept the offer.



EXHIBIT
D

David S. Maglich, Esq.
November 24, 2010
Page 2

At this point, if your clients are unwilling to allow my client to do the remediation, I see no good alternatives.   Your clients have asked Taylor Morrison to "buy back the home" on numerous occasions.  This is simply not a remedy that your clients are entitled to.  I await your response allowing further inspection.

Sincerely,

Neal A. Sivyer

NAS:km
cc:  Todd Merrill



# Sivyer Barlow & Watson, P.A.

### ATTORNEYS AT LAW

MAHLON H. BARLOW, III

R.J. HAUGHEY, II

EDWARD J. KUCHINSKI

J. CARLTON MITCHELL

C. READ SAWCZYN

NEAL A. SIVYER

JACQUELINE A. TAYLOR

STEPHEN E. WALKER

PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:

**March 15, 2011**

**VIA U.S. MAIL AND**
**VIA FACSIMILE (941) 957-1800**

David S. Maglich, Esq.
Fergeson, Skipper, Shaw, et al.
P.O. Box 3018
Sarasota, Florida 34230

Re:     *The Farley Residence, 3756 Summerwind Circle, Bradenton, Florida*

Dear Mr. Maglich:

As counsel for Taylor Woodrow Homes – Central Florida Division, LLC ("Taylor Woodrow") and Taylor Morrison Services, Inc. ("Taylor Morrison"), I am in receipt of your letters of March 15, 2011, and January 17, 2011. I have been in contact with my client and they would like to make arrangements for destructive testing to be performed by Environ International Corp. done at your clients' residence on March 25, 2011. The destructive testing is necessary to determine the nature and cause of the alleged defects and confirm the presence of Chinese drywall at your clients' property. The testing will include the removal of several discs of drywall approximately three (3) inches in diameter. The disks of drywall removed along with any debris caused by the testing will be removed from the home and the resulting holes immediately repaired. The estimated time to perform the inspection and testing is approximately three (3) hours.

Taylor Morrison previously provided your client a settlement offer along with and a repair and relocation agreement. Please advise whether this offer is now acceptable to your clients. If so, Taylor Morrison can soon begin the process of repairing their home.

With regard to your request for insurance information the documents responsive to this request are voluminous. Please let me know how you would like to receive these documents.



EXHIBIT
E

David S. Maglich, Esq.
March 15, 2011
Page 2

Please advise me at your earliest convenience, if the proposed date of March 25, 2011, is acceptable to your clients.  If so, pleases provide me with your clients' contact information and Betsy Martinez-Bruce of Taylor Morrison will contact them to make arrangements for the time for the inspection and obtaining access to the property.  If the proposed date is not convenient for your client please provide with alternative dates.

Please let me know let me know if you have any questions.

Sincerely,

Neal A. Sivyer

cc:   Betsy Martinez-Bruce
      S. Todd Merrill, Esq.



# Sivyer Barlow & Watson, P.A.

### ATTORNEYS AT LAW

MAHLON H. BARLOW, III

PAIGE A. GREENLEE

R.J. HAUGHEY, II

EDWARD J. KUCHINSKI

J. CARLTON MITCHELL

C. READ SAWCZYN

NEAL A. SIVYER

JACQUELINE A. TAYLOR

PAUL D. WATSON

SUNTRUST FINANCIAL CENTRE
401 E. JACKSON STREET
SUITE 2225
TAMPA, FL 33602
(813) 221-4242
FAX: (813) 227-8598
www.sbwlegal.com

OF COUNSEL

GAIL M. ABERCROMBIE

DAVID S. WATSON

SENDER'S EMAIL:
nsivyer@sbwlegal.com

September 6, 2013

**VIA E-MAIL AND U.S. MAIL**

David S. Maglich, Esq.
Fergeson, Skipper, Shaw, Keyser,
Baron & Tirabassi, P.A.
1515 Ringling Blvd., 10th Floor
P.O. Box 3018
Sarasota, Florida  34230-3018

    Re:   *Farley, v. Taylor Woodrow Homes-Central Florida Division, LLC*
          Case No. 11-CA-02543

Dear David:

    I am in receipt of your Motion to Opt-Out of the Settlement and your affidavit, filed on August 27, 2013, in the MDL case. I do not understand how you "relied upon" me to determine what type of drywall your clients had in their home, based upon an initial inspection which identified drywall from several manufacturers (including Knauf) but did not identify the amount of drywall in the home, or the type of drywall present from each manufacturer.  Among other things, your affidavit states that Taylor Morrison withdrew its offer to repair your clients' home. That simply is not the case.

    As we previously offered in 2009 and 2011, Taylor Morrison will remediate your clients' home at our expense (in accordance with the MDL protocol), in exchange for your clients signing a remediation agreement (which would include a complete release).  Taylor Morrison is no longer willing to pay your clients' relocation expense, since they moved out four years ago, after refusing our repair offer.

    Alternatively, my client is willing to pay your clients the same $8.50 per square foot that Knauf would have paid under the Knauf settlement fund, as if your clients had KTP board and were paid out of the global settlement.  You and your clients need to investigate what additional



EXHIBIT

F

David S. Maglich, Esq.
September 6, 2013
Page 2

amount, if any, that might be received from the Banner and global settlement funds.  Please do not rely on me with respect to that determination.

The above proposals would put your clients in exactly the same position that they would have been if Knauf had repaired your clients' home under the "pilot program," or if they had qualified to participate under the Knauf settlement plan (which was their stated intention).

We look forward to your prompt response.

Sincerely,

Neal A. Sivyer

NAS:msh
cc:     Minor Pipes, Esq.
        Todd Merrill, Esq.

**Neal Sivyer**

| | |
|---|---|
| **From:** | Neal Sivyer |
| **Sent:** | Friday, June 21, 2013 11:14 AM |
| **To:** | 'David S. Maglich' |
| **Cc:** | 'H. Minor Pipes'; 'James Poole'; 'Todd Merrill' |
| **Subject:** | Farley residence |

David,

Can we have Environ do another inspection in the home?  We need more samples and lab tests to determine whether the reactive CDW is Knauf board.

Please give us a quick time for access.

Neal A. Sivyer
Sivyer Barlow & Watson, P.A.
Suntrust Financial Center
401 E. Jackson St.
Suite 2225
Tampa, FL  33602
(p) 813-221-4242
(f)  813-227-8598

Confidentiality Notice:The information contained in this e-mail message is intended for use of the recipient listed above. The message may contain information that is protected by the attorney/client or other legal privilege.  Any unauthorized use is strictly prohibited.



1

**Neal Sivyer**

| | |
|---|---|
| **From:** | Neal Sivyer |
| **Sent:** | Monday, June 03, 2013 12:20 PM |
| **To:** | 'David S. Maglich' |
| **Cc:** | Mary Healey |
| **Subject:** | FW: Taylor Morrison/Farley |
| **Attachments:** | Farley-Phase 2-COC-041111.pdf |

Here is the report.  Jamie Poole of Environ (from the company who did the report) indicated that the markings and elemental sulfur are consistent with Knauf board.
He did not specifically say "KPT board" however.  Knauf has furnished other types of Chinese board also.

Neal A. Sivyer
Sivyer Barlow & Watson, P.A.
Suntrust Financial Center
401 E. Jackson St.
Suite 2225
Tampa, FL  33602
(p) 813-221-4242
(f)  813-227-8598

Confidentiality Notice:The information contained in this e-mail message is intended for use of the recipient listed above. The message may contain information that is protected by the attorney/client or other legal privilege.  Any unauthorized use is strictly prohibited.

## ENVIRON Phase 2: Visual Preliminary Inspection Form

**Client:** _Taylor Morrison_  **Date & Time:** _4-11-11   0900_

**Home Address:** _3456 SummerWind Circle, Bradenton, FL 34209_

**Homeowner:** _Farley_  **Occupied: Yes   No**

**ENVIRON Personnel Present:** _David Caen_

**Name and Affiliation of Other People Present:** _Owner_

---

**Characteristic CDW Odor:**  (Yes)   No

**Describe:** _Moderate Sulfur Odor Present_

**HVAC Black Surface Accumulation:**  (Yes)   No

**Comments:** _____

**Electrical Black Surface Accumulation:**  (Yes)   No

**Comments:** _Dispersed throughout home_

**Drywall Samples Collected:**   Yes   No

| Sample Number | Location |
|---|---|
| _041111 - W1_ | _West Wall in Laundry Room_ |
| _041111 - W2_ | _N. Wall - Guest Bed_ |
| _041111 - W3_ | _N. Wall Closet - Central Guest Bed_ |
| | |
| | |

**Overall Impression:**  CDW affected [✓]   No signs [ ]   Ambiguous [ ]

**Recommend alternate source evaluation** [ ]   **Comments:** _____

**Comments:** _Some dash-dot matrix lettering observed - moderate odor when cored_
_Some Poxtell Blue lettering observed_

ENVIRON

1 of 2

_JWW_

ENVIRON Phase 2: Visual Preliminary Inspection Form

**Building Address:** 3756 Summer Wind Circle, Bradenton, FL 34209

| Room | Electrical Discoloration? | Positive Sulfide Release Test? | Plumbing/Other Discoloration? | Photos/Comments |
|---|---|---|---|---|
| Living Room | North<br>+<br>x | North<br>+ | | 1) S. Wall - Rec. Black ground wire observed<br>2) |
| Dining Room | x +<br>x + | + | | 1) N. Wall Dining. dark copper w/items flaking<br>2) W. Wall Dining Rec. dist copper corr flaking Ground |
| Kitchen | x<br>+ | + | | 1) Northwall - Rec. Blackened ground wire observed<br>2) Northwall - dw. " " |
| Master Bedroom | + | + | | 1)<br>2) |
| Bedroom 2 | x<br>+ | + | | 1) N. Wall - Rec. Blackened ground wire observed<br>2) |
| Bedroom 3<br>Control | x<br>+ | + | | 1) N. Wall Rec. Black ground wire observed<br>2) |
| Bathroom 1 | + | + | | 1)<br>2) |
| Bathroom 2 | + | + | | 1)<br>2) |
| Other 1 | + | + | | 1)<br>2) |
| Other 2 | + | + | | 1)<br>2) |

**Signature of ENVIRON Evaluator:** _____     **Date:** 4-11-11

ENVIRON

2 of 2