## AMENDED AND RESTATED ESCROW AGREEMENT

among

**MDL Plaintiffs' Steering Committee in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047**

and

**Knauf Gips KG, as Representative for the Knauf Entities (as defined herin) ("Knauf")**

and

**Whitney Bank, as Escrow Agent**



EXHIBIT

A

**AMENDED AND RESTATED ESCROW AGREEMENT**
("Agreement"), dated as of October 22, 2013, by and among MDL Plaintiffs' Steering
Committee (the "PSC") in *In re: Chinese Manufactured Drywall Products Liability
Litigation*, MDL No. 2047 (the "MDL"); Knauf Gips KG ("Knauf"), as representative for
the Knauf Entities, as that term is defined in the Settlement Agreement for the
Demonstration Remediation of Homes with KPT Drywall ("Demonstration Remediation
Agreement" attached hereto as Exhibit 1); and Whitney Bank ("Whitney') and acting
through its trust department and solely in its capacity as escrow agent under the
Agreement, and any successors appointed pursuant to the terms hereof (Whitney in such
capacity, the "Escrow Agent"). The PSC and Knauf are sometimes collectively referred
to herein as the "Interested Parties".

> **WHEREAS,** pursuant to the Demonstration Remediation Agreement, the
PSC and the Knauf Entities have agreed to establish an escrow arrangement for the
purposes set forth therein;

> **WHEREAS,** terms used herein, but not defined herein, shall have the
meaning set forth in the Demonstration Remediation Agreement;

> **WHEREAS,** the Demonstration Remediation Agreement creates a
program by which the Knauf Entities will remediate up to 300 homes (the "Program");

> **WHEREAS,** Moss & Associates, LLC ("Moss"), as the Assigned
Contractor under the Demonstration Remediation Agreement, or any Substitute
Contractor, as that term is defined in Section 1(e) below, will provide, in advance of the
remediation of any particular home, a "Cost Estimate," as that term is defined in Section
1(d),which reflects a detailed estimate of the cost to do the Remediation Work in the
Remediation Home;

> **WHEREAS,** the Knauf Entities have agreed to pay the costs of the
homeowner's alternative living expenses during the remediation, personal property
damage, maintenance of the house during the Remediation Work, including, but not
limited to, payment of all utility bills, insurance property taxes and maintenance of
landscaping, and moving and storage expenses in an amount (the "Lump Sum Payment")
set forth in Paragraph III (B) (1) of the Demonstration Remediation Agreement;

> **WHEREAS,** the Demonstration Remediation Agreement calls for the
creation of a "Remediation Fund" to be established and held in escrow for purposes of
funding the remediation and Lump Sum Payment;

> **WHEREAS,** the Remediation Fund is intended to qualify as a "qualified
settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury
Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as
amended ("IRC");

> **WHEREAS,** the Remediation Fund will be referred to as the Drywall
Qualified Settlement Fund ("Drywall QSF");

**WHEREAS,** Knauf has appointed BrownGreer, PLC ("Brown Greer") as administrator of the Drywall QSF pursuant to Treasury Regulation Section 1.468B-2, and as its agent solely for the purposes provided in the agreement entered into between Knauf and Brown Greer (the "Knauf-Brown Greer Agreement"); and

**WHEREAS,** the Interested Parties wish to appoint Whitney Bank as Escrow Agent and Whitney Bank is willing to accept such appointment and to act as Escrow Agent, in each case upon the terms and conditions hereof;

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which is hereby irrevocably acknowledged, the parties hereto agree as follows:

1.    <u>Definitions</u>.

a.    <u>Cost Estimate</u>. A Cost Estimate is a detailed estimate, provided by Moss, or any Substitute Contractor, of the cost to do the Remediation Work in the Remediation Home.

b.    <u>Delay Period Payment</u>. The Delay Period Payment is a payment, in an amount set forth in Paragraph III (B) (2) of the Demonstration Remediation Agreement, from the Knauf Entities to the homeowner of a Remediation Home that is made in the event that the Remediation Work is not substantially complete at the end of the three-month period commencing with the move-out date that Moss, or any Substitute Contractor, provide to the homeowner.

c.    <u>Excess Amount</u>. The Excess Amount is 10% of the Cost Estimate.

d.    <u>Remediation Home</u>. A Remediation Home is a home that is remediated under the Program.

e.    <u>Substitute Contractor</u>. Substitute Contractors are those contractors listed on Exhibit E to the Demonstration Remediation Agreement, who, after finalization of such list, the Knauf Entities may assigned to perform and/or oversee the Remediation Work in particular Remediation Homes for any reason, including, but not limited to, circumstances in which Moss is unable to perform and/or oversee the performance of the Remediation Work in a particular Remediation Home. See Demonstration Remediation Agreement at Paragraph IV (C).

2.    <u>Deposit of Escrow Funds or Property</u>.

For each Remediation Home, pursuant to Paragraph V (B) of the Demonstration Remediation Agreement, the Knauf Entities will deposit with the Escrow Agent, in advance of the remediation, an amount equal to (i) the Cost Estimate plus the Excess Amount and (ii) the Lump Sum Payment. In addition, if necessary, pursuant to Paragraph III (B) (2) of the Demonstration Remediation Agreement, for any Remediation Home that is not substantially complete at the end of the three-month period commencing with the move-out date, the Knauf Entities will deposit with the Escrow Agent the Delay

Period Payment. Additionally, pursuant to Paragraph II (F) of the Demonstration Remediation Agreement, the Other Participating Companies will also deposit funds with the Escrow Agent. The deposits made by the Knauf Entities and Other Participating Companies are collectively referred to as the "Escrow Deposit," and, together with any investment income or proceeds received by the Escrow Agent from the investment thereof from time to time pursuant to Section 4 below, collectively, the "Escrow Property". The Escrow Agent agrees to hold the Escrow Property in an account established with the Escrow Agent ("Escrow Account"), such that the Escrow Property will be segregated from other assets of the Knauf Entities and Other Participating Companies pursuant to the qualified settlement fund requirements in Treasury Regulation Section 1.468B-1 of the IRC. The Escrow Agent also agrees to administer the Escrow Property in accordance with the terms of this Agreement.

**3.     Claims and Payment; Release from Escrow.**

a.     The Escrow Property is to be used only in the following manner and for the following purposes, and no other:

(1)     Upon receipt of written notification from Brown Greer, (upon which the Escrow Agent shall be entitled to conclusively rely without any investigation whatsoever) who may only provide such notification upon approval by Knauf, the Escrow Agent will issue payment from the Escrow Property as follows, by the end of the business day following receipt of notice to make such payment:

(i)     Payment to the homeowner of the Lump Sum Payment, as set forth in Paragraph III (B) (1) of the Demonstration Remediation Agreement, within 5 business days after the homeowner of a Remediation Home and the Knauf Entities receive notice from Moss, or any Substitute Contractor, in the event a Substitute Contractor is used in lieu of Moss, of the actual move-out date as defined in the Demonstration Remediation Agreement;

(ii)     Payment to the homeowner of the Delay Period Payment, if necessary, on a monthly basis, as set forth in Paragraph III (B) (2) of the Demonstration Remediation Agreement;

(iii)     Twice monthly payments to Moss for Phase 2 work, pursuant to Article 12.1.3 of the Knauf Entities-Contractor Agreement (the "Contractor Agreement" attached hereto as Exhibit 2), or payments to any Substitute Contractor for similar work according to the payment schedule that shall be set forth in any agreement between the Knauf Entities and any Substitute Contractor.

(2)     Upon notification in writing, by the PSC and the Knauf Entities, to the Escrow Agent of the satisfaction of the conditions set forth in Paragraph VI (D) of the Demonstration Remediation Agreement, the Escrow Agent shall refund to

Knauf any funds remaining in the Escrow Account, including any accrued income from the investment of the Escrow Deposit pursuant to Section 4 below.

4.     **Investment of Funds.**

(a)     The Escrow Agent is herein directed and instructed to initially invest and reinvest the Escrow Funds in the investment indicated on Schedule A hereto. With the execution of this document, the parties hereto acknowledge receipt of prospectuses and/or disclosure materials associated with the investment vehicle, either through means of hardcopy or via access to the website associated with the investment selected by the parties to this Escrow Agreement.  The parties hereto acknowledge that they have discussed the investment and are in agreement as to the selected investment. Knauf and the PSC may provide instructions changing the investment of the Escrow Funds (subject to applicable minimum investment requirements) by the furnishing of a joint written direction to the Escrow Agent; provided, however, that no investment or reinvestment may be made except in assets having an AAA credit rating by Standard & Poor's or an equivalent rating by Moody's or Fitch , or mutual funds, including money market mutual funds having a rating of AAA by Standard & Poor's or an equivalent rating by Moody's or Fitch. In connection with investments made in a mutual fund, the Escrow Agent may receive a fee from the mutual fund, its advisor or its distributor for providing various sales, administrative and/or ministerial services.

(b)     Each of the foregoing investments shall be made in the name of Escrow Agent.  No investment in individual securities shall be made in any instrument or security that has a maturity of greater than 30 days.  Notwithstanding anything to the contrary contained herein, Escrow Agent may, without notice to the Interested Parties, sell or liquidate any of the foregoing investments at any time if the proceeds thereof are required for any disbursement of Escrow Funds permitted or required hereunder.  All investment earnings shall become part of the Escrow Funds and investment losses shall be charged against the Escrow Funds.  Escrow Agent shall not be liable or responsible for loss in the value of any investment made pursuant to this Escrow Agreement, or for any loss, fee, cost, tax or penalty resulting from any investment, reinvestment, or any sale or liquidation of the Escrow Funds.  With respect to any Escrow Funds received by Escrow Agent after ten o'clock, a.m., New Orleans, Louisiana, time, Escrow Agent shall not be required to invest such funds or to effect any investment instruction until the next day upon which banks in New Orleans, Louisiana are open for business.

(c)     Statements.  The Escrow Agent shall, on a monthly basis, furnish to the Interested Parties a statement of (i) each month's deposits, listed separately, into the Escrow Account, (ii) the balance of the amounts on deposit in the Escrow Account as of the last business day of each month, and (iii) the amount of interest or income that has accrued on the Escrow Property as of such date.

(d)     IRS Circular 230 Disclosure.  Escrow Agent, its affiliates, and its employees are not in the business of providing tax or legal advice to any taxpayer outside of Escrow Agent and its affiliates.  This Agreement and any amendments or attachments are not intended or written to be used, and cannot be used or relied upon, by any such

taxpayer or for the purpose of avoiding tax penalties. Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

5.    **Tax Administration**.

(a)    The Knauf Entities agree that they shall cause Brown Greer, on behalf of the QSF (i) to timely file income tax and other returns and statements required to be filed by, or on behalf of, the QSF and to cause the Escrow Agent to timely pay all taxes required to be paid (provided that all such payments shall be made out of the Escrow Account and neither Brown Greer nor the Escrow Agent shall have individual responsibility for the payment of such taxes), (ii) to comply with all obligations of the QSF as required under the applicable provisions of the IRC and of any state or local law and the regulations promulgated thereunder, (iii) to meet without limitation all requirements necessary to qualify and maintain qualification of the Remediation Fund as a qualified settlement fund within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC, and (iv) to take no action that could cause the Remediation Fund to fail to qualify as a qualified settlement fund within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC.

(b)    The parties agree that Brown Greer may hire an unrelated party to prepare all the tax returns and statements referred to in Section 5(a) herein. In addition, the parties agree that all reasonable costs, expenses, and fees incurred by Brown Greer and such other party in preparing the tax returns and statements shall be reimbursed from the escrow account apart from any other fees to which Brown Greer or any such other party is entitled to receive under this Agreement.

6.    **Concerning the Escrow Agent**.

(a)    Escrow Agent Duties. Each Interested Party acknowledges and agrees that (i) the duties, responsibilities and obligations of the Escrow Agent shall be limited to those expressly set forth in the Agreement and no duties, responsibilities or obligations shall be inferred or implied and Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement, (ii) the Escrow Agent shall not be responsible for any of the agreements referred to or described herein, or for determining or compelling compliance therewith, and shall not otherwise be bound thereby, except to the extent specifically set forth in this Agreement, (iii) this Agreement shall constitute the entire agreement of the parties with respect to the subject matter and supersedes all prior oral or written agreements in regard thereto, (iv) the Escrow Agent shall not be required to expend or risk any of its own funds or otherwise incur any financial or other liability in the performance of any of its duties hereunder, and (v) the Escrow Agent shall not be obligated to take any legal or other action hereunder which might in its judgment involve or cause it to incur any expense or liability unless it shall have been furnished with acceptable indemnification.

(b)    Standard of Care.  The Escrow Agent shall be under no duty to afford the Escrow Property any greater degree of care than it gives its own similar property.  The Escrow Agent shall not be liable for any damage, loss or injury resulting from any action taken or omitted in the absence of gross negligence or willful misconduct.

(c)    Limitation on Liability.  Notwithstanding any other provision of the Agreement, the Escrow Agent shall not be liable (i) for any indirect, incidental, consequential, punitive or special losses or damages, including, but not limited to, lost profits, regardless of the form of action and whether or not any such losses or damages were foreseeable or contemplated, (ii) for the acts or omissions of any nominees, correspondents, designees, agents, subagents or subcustodians, or (iii) for the investment or reinvestment of any Escrow Property, or any liquidation of such investment or reinvestment, executed in accordance with the terms of the Agreement, including, without limitation, any liability for any delays in the investment or reinvestment of the Escrow Property, any loss of interest incident to any such delays, or any loss or penalty as a result of the liquidation of any investment before its stated maturity date (except those resulting from its gross negligence or willful misconduct, as adjudicated by the Court having jurisdiction ).

(d)    Reliance.  The Escrow Agent shall be entitled conclusively to rely upon any order, judgment, certification, demand, instruction, notice, instrument, certification, consent, authorization, receipt, power of attorney, e-mail, .pdf or other writing delivered to it without being required to determine the authenticity or validity thereof, or the correctness of any fact stated therein or the propriety or validity or the service thereof or the jurisdiction of the Court having jurisdiction issuing any judgment or order.  The Escrow Agent may act in reliance upon any signature believed by it to be genuine and may assume that any person purporting to make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so.

(e)    Consultation.  The Escrow Agent may consult with counsel of its selection, and the opinion or advice of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it in good faith and in accordance with the opinion and advice of such counsel to the extent allowed by applicable law.

7.    **Compensation, Expense Reimbursement and Indemnification.**

(a)    Escrow Agent's Expenses and Fees.  In consideration of its acting as the Escrow Agent under and pursuant to this Agreement, the Escrow Agent shall be entitled to reasonable fees, expenses and costs for its services performed hereunder, in accordance with Exhibit 3 attached to and incorporated into this Agreement.

(b)    Payment for Escrow Agent's Expenses and Fees:  Pursuant to Paragraph VI (B) of the Demonstration Remediation Agreement, the Knauf Entities are responsible for payment of the Escrow Agent's expenses and fees ("Escrow Expenses").  The Escrow Expenses shall be paid by Brown Greer pursuant to the procedures set forth in the Knauf-

Brown Greer Agreement.  Payment of any taxes due on any income from the investment of the Escrow Deposit pursuant to Section 4 ("Escrow Investment Income") shall be paid from the Escrow Account.  The obligations of the Knauf Entities under this section shall survive any termination of this Agreement and the resignation or removal of the Escrow Agent. Escrow Agent is authorized to hold back from any disbursement directed pursuant to Section 3 ("Claims and Payment; Release from Escrow") an amount necessary to prevent unpaid Escrow Expenses from exceeding Escrow Property.

       (c)   <u>Indemnification</u>: The Interested Parties jointly and severally agree to indemnify and hold Escrow Agent, its officers, directors, employees, and agents (collectively, "Indemnified Parties") harmless from all losses, costs, damages, expenses, liabilities, judgments, and reasonable attorneys' fees and expenses suffered or incurred by the Indemnified Parties or any of them arising out of or in connection with this Agreement, except that this indemnity obligation shall not apply in the event of the gross negligence or willful misconduct of the Indemnified Parties, or any of them.   The foregoing indemnification and agreement to hold harmless shall survive the termination of this Agreement and the resignation or removal of the Escrow Agent.

     **8.**   **<u>Dispute Resolution</u>.**

     In the event of any disagreement among any of the Interested Parties to this Agreement, or between any of them and any other person, resulting in adverse claims or demands being made with respect to the subject matter of this Agreement, or in the event that the Escrow Agent, in good faith, is in doubt as to any action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands and refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to so refuse to act and refrain from acting until (i) with respect to disputes relating to the Demonstration Remediation Agreement, the rights of all parties having or claiming an interest in the Escrow Property or the Escrow Account have been fully and finally resolved pursuant to the Dispute Resolution Process, set forth in Paragraph VIII (A) of the Demonstration Remediation Agreement, by John W. Perry, Jr. of Perry, Atkinson, Balhoff, Mengis & Burns, LLC (the "Mediator"), who as set forth in Paragraph VIII (A) has been appointed by the MDL Court, which pursuant to Paragraph XI of the Demonstration Remediation Agreement, is overseeing the implementation of the Program and the Dispute Resolution Process, as the mediator for such disputes, as certified in writing to the Escrow Agent, (ii) with respect to disputes between the Knauf Entities and Moss relating to the Contractor Agreement, the rights of both the Knauf Entities and Moss, or any Substitute Contractor, have been fully and finally resolved in accordance with the arbitration procedures set forth in Article 14 of the Contractor Agreement or to the extent a Substitute Contractor is used, the dispute resolution process established in such agreement between the Knauf Entities and such Substitute Contractor, as certified in writing to the Escrow Agent, or (iii) with respect to disputes relating specifically to the terms and obligations under this Agreement, the rights of all parties to this Agreement have been fully and finally resolved by the MDL Court in accordance with Section 11 (b)

below, as certified in writing to the Escrow Agent. The costs and expenses (including attorneys' fees and expenses) incurred by the Escrow Agent in connection with such proceedings shall be paid by, and be the joint and several obligation of, the parties to the proceedings. The rights of the Escrow Agent under this Section 7 are cumulative of all other rights which it may have by law or otherwise.

9.      **Exclusive Benefit**.

Except as specifically set forth in this Agreement, this Agreement is for the exclusive benefit of the parties to this Agreement and their respective permitted successors, and shall not be deemed to give, either expressly or implicitly, any legal or equitable right, remedy, or claim to any other entity or person whatsoever. No party may assign any of its rights or obligations under this Agreement without the prior written consent of the other parties except that the Escrow Agent may resign upon the terms described in this Agreement.

10.      **Force Majeure**.

Notwithstanding anything contained in this Agreement to the contrary, the Escrow Agent shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

11.      **Resignation and Removal**.

(a)      The Interested Parties may remove the Escrow Agent at any time by giving to the Escrow Agent thirty (30) calendar days' prior written notice of removal signed by an Authorized Person of each of the Interested Parties. The Escrow Agent may resign at any time by giving to each Interested Party thirty (30) calendar days' prior written notice of resignation.

(b)      Upon any such notice of resignation or removal, the Interested Parties shall appoint a successor escrow agent and give written notice of such successor escrow agent to the Escrow Agent. If a successor escrow agent has not accepted such appointment within a (i) 30-day period, in the case of the Escrow Agent's removal, or (ii) 30-day period, in the case of the Escrow Agent's resignation, the Escrow Agent may either (x) deliver the Escrow Property to the Knauf Entities' counsel, Frilot, LLC, at the address set forth on the signature page to this Agreement, or (y) apply, at the expense of the Interested Parties to the Court having jurisdiction for the matter for the appointment of a successor escrow agent or for other appropriate relief.

(c)      Upon receipt of written notice of the identity of the successor escrow agent, the Escrow Agent shall either deliver the Escrow Property then held hereunder to the successor escrow agent, less the Escrow Agent's fees, costs, expenses and the value of other obligations owed to the Escrow Agent hereunder, or hold such

Escrow Property (or any portion thereof) pending distribution, until all such fees, costs and expenses or the value of other obligations are paid to it.

(d)  Upon delivery of the Escrow Property to the successor escrow agent or to an Interested Party, the Escrow Agent shall have no further duties, responsibilities or obligations hereunder.

**12.  <u>Governing Law; Jurisdiction; Waivers</u>.**

(a)  The parties agree that, to the extent such laws would otherwise not apply, this Agreement (including this choice-of-law provision) and the rights and obligations of the parties to the Agreement shall be governed by, construed in accordance with, and all controversies and disputes arising under, in connection with or in relation to the Agreement shall be resolved pursuant to, the laws of the State of Louisiana applicable to contracts made and to be wholly performed in the State of Louisiana, provided, however that the rights, privileges, protections and immunities of the Escrow Agent shall be governed by the laws of the State of Louisiana, without regard to conflicts of law principles thereof.

(b)  The parties agree that the Agreement shall become effective upon the approval by the MDL Court (which approval shall be sought promptly by the parties). Solely and exclusively for purposes of the Agreement, and the obligations incurred thereunder, the parties consent to the exclusive jurisdiction of the MDL Court for any proceedings commenced regarding the Agreement, including, but not limited to, any proceeding for the appointment of a successor escrow agent that the Escrow Agent may commence pursuant to the Agreement. The parties irrevocably submit to the jurisdiction of the MDL Court for the determination of all issues in such proceedings and irrevocably waive any objection to venue or inconvenient forum for any proceeding brought in the MDL Court. All other jurisdictional defenses, arguments and rights are fully reserved by the Knauf Entities and nothing in this Agreement is intended to prejudice the assertion in any forum against any party of those jurisdictional defenses, arguments and rights.

(c)  Subject to the Knauf Entities reservations asserted in the subparagraph immediately above, the parties irrevocably and unconditionally waive, to the fullest extent permitted by law, and agree not to plead or claim, any right of immunity from legal action, suit or proceeding, from setoff or counterclaim, from the jurisdiction of any court, from service of process, from attachment upon or prior to judgment, from attachment in aid of execution or judgment, from execution of judgment, or from any other legal process or proceeding for the giving of any relief or for the enforcement of any judgment, and each consents to such relief and enforcement against it, its assets and its revenues in any jurisdiction, in each case with respect to any matter arising out of, or in connection with, this Agreement.

(d)  The parties irrevocably and unconditionally waive any right to trial by jury with respect to any proceeding relating to this Agreement.

**13.**      <u>Instructions, Verification, Communications.</u>

     (a)      All instructions required under this Agreement shall be delivered to the Escrow Agent in writing, in English (including in facsimile form) and, if so requested by the Escrow Agent, an original, executed by an Authorized Person (as hereinafter defined) of each of the Interested Parties or an entity acting on its behalf. All notices and instructions hereunder shall be effective upon actual receipt. The identity of such Authorized Persons, as well as their specimen signatures, title, telephone number and telecopy number, shall be delivered to the Escrow Agent in the list of authorized signers form as set forth on <u>Schedule B</u> and shall remain in effect until the applicable Interested Party, or an entity acting on its behalf, notifies Escrow Agent in writing of any change thereto (the person(s) so designated from time to time, the "<u>Authorized Persons</u>"). The Escrow Agent and the Interested Parties agree that the above constitutes a commercially reasonable security procedure and further agree to comply with any written direction or instruction (other than those contained herein or delivered in accordance with this Agreement) from any Interested Party.

     (b)      To help the U.S. government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When an account is opened, the Escrow Agent will ask for information that will allow the Escrow Agent to identify relevant parties. The Interested Parties hereby acknowledge such information disclosure requirements and agree to comply with all such information disclosure requests from time to time from the Escrow Agent.

     (c)      The Knauf Entities represent and warrant to the Escrow Agent that, pursuant to the Demonstration Remediation Agreement and the Contractor Agreement, they have the right, power and authority (i) to give and receive instructions and notices required by this Agreement, and (ii) to make all determinations that may be required or that they deem appropriate under this Agreement.

**14.**      <u>Notices; Wiring Instructions.</u>

     (a)      Any notice permitted or required hereunder shall be in writing in English, and shall be sent (i) by personal delivery, overnight delivery by a recognized courier or delivery service, or (ii) mailed by registered or certified mail, return receipt requested, postage prepaid, or (iii) confirmed telecopy accompanied by mailing of the original on the same day by first class mail, postage prepaid, in each case addressed to the address and person(s) designated below their respective signature hereto (or to such other address as any such party may hereafter designate by written notice to the other parties). Notices to the Escrow Agent shall only be deemed given upon actual receipt by the Escrow Agent. Whenever under the terms hereof the time for giving a notice or performing an act falls upon a Saturday, Sunday, or a banking holiday in Louisiana, such time shall be extended to the next day on which the Escrow Agent is open for business.

     (b)      Any funds to be paid to or by the Escrow Agent hereunder shall be sent by wire transfer pursuant to the following instructions (or by such method of

payment and pursuant to such instruction as may have been given in advance and in writing to or by the Escrow Agent, as the case may be, in accordance with Section 13(a) above):

     If to Knauf

          Martin Stürmer
          Knauf Gips KG
          Am Banhof 7
          97346 Iphofen, Germany
          Phone: +49 93 23 31 503

          Jörg Schanow
          Knauf Gips KG
          Am Banhof 7
          97346 Iphofen, Germany
          Phone:  +49 93 23 31 1091

     If to Plaintiffs Steering Committee

          Arnold Levin (lead counsel)
          Levin, Fishbein, Sedran & Berman
          510 Walnut Street, Suite 500
          Philadelphia, PA 19106
          Phone:  (215) 592-1500

          Russ Herman (ex-officio and liaison)
          Herman, Herman, Katz & Cotlar, LLP
          820 O'Keefe Avenue, Suite 100
          New Orleans, LA 70113
          Phone:  (504) 581-4892

     If to Moss & Associates

          Joanna Clarkson
          Scott Trethewey
          Moss & Associates, LLC
          2101 N. Andrews Ave., Suite 300
          Fort Lauderdale, FL 33311
          Phone:  (954) 524-5678

     If to the Escrow Agent:
          Whitney Bank
          ABA: 065400153
          Account Name: Trust Deposit DDA
          CREDIT A/C No.:  0000700924
          Reference: Drywall QSF

SWIFT Code: WHITUS44

### 15.    <u>Amendment</u>.

Except as specifically set forth in this Agreement, any amendment of this Agreement shall be binding only if evidenced by a writing signed by each of the parties to this Agreement.

### 16.    <u>Severability</u>.

The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision. If any provision of this Agreement is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

### 17.    <u>Termination</u>.

This Agreement shall terminate upon notice from the PSC and Knauf, subject, however, to the survival of obligations after specifically contemplated in this Agreement to so survive.

### 18.    <u>Counterparts</u>.

This Agreement may be executed simultaneously in two or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same agreement.  Facsimile signatures on counterparts of this Agreement shall be deemed original signatures with all rights accruing thereto.

### 19.    <u>Mergers and Conversions</u>.

Any corporation into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Escrow Agent will be a party, or any corporation succeeding to all or substantially all the corporate trust business of the Escrow Agent will be the successor of the Escrow Agent hereunder without the execution or filing of any paper with any party hereto or any further act on the part of any of the parties hereto except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding.

**IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be executed by a duly authorized representative as of the day and year first written above.**

**Whitney Bank,**
**as Escrow Agent**

By:_____
    Name: Chris Durio
    Title: Vice President
    Whitney Bank
    228 St. Charles Ave – 2nd Floor
    New Orleans, LA 70130
    Phone: (504) 586-3662

    Date:


**Knauf Gips KG**


By:_____
    Marrtin Stürmer
    Knauf Gips KG
    Am Banhof 7
    97346 Iphofen, Germany
    Phone: +49 93 23 31 503

    Date:

By:_____
    Jörg Schanow
    Knauf Gips KG
    Am Banhof 7
    97346 Iphofen, Germany
    Phone:  +49 93 23 31 1091

    Date:

**MDL Plaintiffs' Steering
Committee**


By:_____
    Arnold Levin (lead counsel)
    Levin, Fishbein, Sedran &
    Berman
    510 Walnut Street, Suite 500
    Philadelphia, PA 19106

    Date:


By:_____
    Russ Herman (ex-officio and
    liaison counsel)
    Herman, Herman, Katz & Cotlar,
    LLP
    New Orleans, LA 70113

    Date:

## SCHEDULE A

## LIST OF INVESTMENTS - WHITNEY BANK APPROVED

1.     Federated Prime Obligations Money Market Fund (Symbol: POIXX; Cusip #60934N203)

**SCHEDULE B**

**AUTHORIZED LIST OF SIGNERS
OR OFFICER'S CERTIFICATE**

**[ PARTY ]**

Specimen Signature

Name
Title
Phone
Facsimile

Name
Title
Phone
Facsimile

Name
Title
Phone
Facsimile