UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED ) | |
|       DRYWALL PRODUCTS ) | MDL NO. 2047 |
|       LIABILITY LITIGATION ) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | SECTION: L |
| ) | |
| *Hobbie, et al. v.* ) | |
| *RCR Holdings II, LLC, et al.,* ) | JUDGE FALLON |
| ) | |
| No. 10-1113 ) | |
| ) | MAG. JUDGE WILKINSON |
| ) | |

**VILLA LAGO PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL AWARD OF ATTORNEYS' FEES AND PARTIAL REIMBURSEMENT OF COSTS**

      COMES NOW Coastal Settlement Class Counsel ("Class Counsel") and hereby submit the following Motion and Incorporated Memorandum of Law in Support for Partial Award of Attorneys' Fees and Partial Reimbursement of Costs. In brief, Settlement Class Counsel at this time seek approval of the Court to disburse from the Villa Lago Settlement Qualified Settlement Fund ("QSF"), the amount of **$1,709,605.58** as a partial payment of attorneys fees and the amount of **$380,946** as a partial payment of certain costs the Parties agreed to reimburse from the Villa Lago Qualified Settlement Fund per line items in the underlying Settlement Agreement approved by this Court. These amounts are be found in Exhibit A to the Coastal Settlement Agreement, and have been approved for payment by the Plaintiffs' Steering Committee and by Phil Garrett. Further, Settlement Class Counsel will comply with D.E. 8545 and make a voluntary deposit of greater than half of the partial payment of attorneys' fees into the registry of the Court. Accordingly, Settlement Class Counsel respectfully request the Court grant this Motion.

1

**I.     BACKGROUND**

As the Court is familiar with the procedural background of this litigation, Settlement Class Counsel provides a short summary and incorporates by reference the underlying Motions for Preliminary and Final Approval of the Coastal Settlement Agreement. [D.E. 16741 and D.E. 16964]

The *Hobbie* action was filed on September 21, 2009, in the Circuit Court for Palm Beach County, Florida against RCR Holdings II, LLC ("RCR"), Coastal Construction of South Florida, Inc., d/b/a/ Coastal Condominiums ("Coastal"), Precision Drywall, Inc. ("Precision"), La Suprema Enterprise, Inc., La Suprema Trading, Inc., and Banner Supply Company, Inc. ("Banner").[1]  It involved two multi-unit, six-story, residential buildings located in Boynton Beach, Florida ("Villa Lago").  Villa Lago was built during 2005 through 2007 by Coastal, consisting of 328 residential condominium units, and is part of a mixed use development project owned by RCR, known as Renaissance Commons.[2]  The *Hobbie* action was removed to federal court by Banner on February 26, 2010, then transferred to this Court pursuant to MDL procedures.  The majority of the Class Members in this action have also been named on Class Action Omnibus complaints filed in this Court by the Plaintiffs' Steering Committee in MDL No. 2047.

On March 28, 2013 the parties reached a settlement in this matter.  This Court granted preliminary approval of the Settlement Agreement on April 24, 2013.  [D.E. 16777]  The settlement created the Villa Lago Settlement Fund in order to facilitate the funding of the remediation of all units at Villa Lago at Renaissance Commons containing Chinese Drywall,

---

[1] Banner Supply Company, Inc. consists of Banner Supply Company, Banner Supply Company of Pompano, LLC, Banner Supply Company of Fort Myers, LLC, and Banner Supply Company of Tampa, LLC.
[2] RCR owns 130 of these units.

regardless of the manufacturer of the Chinese Drywall. The proposed Settlement, therefore, together with the Banner, Knauf, RCR and Global settlements with suppliers, builders, installers and their insurers, resolved all claims arising out of the manufacture, sale, distribution, use, installation or remediation of the allegedly defective Chinese Drywall at Villa Lago. Settlement Class Counsel disseminated class notice via first-class mail on May 9, 2013 and also caused notice of the settlement to be published in media outlets. The notice, *inter alia*, apprised class members of class counsel's anticipation of filing the instant motion for fees and costs, stating:

> At a later date, Class Counsel will ask the Court for attorneys' fees based on their work on this litigation. Pursuant to the Settlement Agreement, the parties have agreed to attorneys' fees of $2,670,960.62 and costs of $380,946.00 for a total of $3,051,906.63. Class Counsel may seek additional attorneys' fees from any other settlement or recovery obtained. Any payment to the attorneys will be subject to Court approval and the Court may award less than the requested amount. The fees, costs, expenses and awards that the Court orders, plus the costs to administer the Settlement, will come out of the Settlement Fund.

*See* Long-Form Notice, p. 7, April 8, 2013. [D.E. 16741-5] The deadline to opt out of or object to the Settlement was July 8, 2013. No requests for exclusion from the Settlement were received from any Class Member. Class Counsel received one objection from an owner of an unaffected unit, which will not be remediated because it was unaffected. This Court entered an Order granting final approval on October 22, 2013. [D.E. 17177]

On October 25, 2013, the Court entered an order establishing the Villa Lago Qualified Settlement Fund ("QSF"). [D.E. 17210] Pursuant to the Coastal Settlement agreement, on or before December 6, 2013, the Coastal Defendants deposited into the QSF amounts aggregating $7,200,000. In addition, a motion to transfer the $4,800,000 million RCR Settlement Fund is pending. Thus, a total of $12,000,000 will be deposited in the QSF.

Pursuant to the Coastal Settlement, $7,200,000 will immediately be transferred from the QSF to the Knauf Remediation Fund. Upon the QSF's receipt of the $4,800,000,

3

$1,529,189.80 shall be transferred to the Knauf Remediation Fund, leaving a balance of $3,270,810.20 available to pay "soft costs" to owners of Knauf and non-Knauf units ($1,180,258.62), partial attorneys' fees ($1,709,605.58),[3] and certain expenses ($380,946), as set forth in Exhibit A.[4]

## II.   Class Counsel's Request for Fees Should Be Approved.

On October 22, 2013, this Court granted final approval to the class action settlement between the Plaintiff, on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), and Defendant Coastal Construction Company of South Florida, Inc. ("Defendant"). Pursuant to Fed. R. Civ. P. 23(h), Plaintiffs are required to petition the Court for an award of attorneys' fees and costs.

At this time, given the limited amounts available in the Villa Lago Settlement Fund and consistent with terms of the Agreement, Class Counsel seek a partial award of $1,709,605.58 in attorneys' fees for their efforts in this class action proceeding. In the Parties' Joint Motion for Final Approval of Class Settlement, Defendants agreed not to oppose this amount. *See* Joint Motion for an Order (1) Granting Final Approval of the Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL 2047; (2) Certifying the Settlement Class; and (3) Appoint Class Counsel, p. 8, July 30, 2013. [D.E. 16964]

The requested fee award is eminently fair and reasonable, especially considering the three years of vigorous litigation, numerous mediations between the parties and on-going oversight

---

[3] Seventeen thirty-seconds (17/32) of the partial fee award, or $908,227.96, shall be paid to the Court pursuant to the Voluntary Payment Order. The remainder of the partial fee award, $801,377.62, will be paid to Coastal Class Counsel.

[4] Payments of these amounts will fully deplete the balance of the Villa Lago Settlement Fund. ($1,180,258.62 + $1,709,605.58 + $380,946 = $3,270,810.20.

4

and intervention in the remediation process. The settlement created a fund that will completely remediate all Residences in this 328-unit, two building condominium development, containing reactive Chinese Drywall, regardless of the manufacturer of the Chinese Drywall.  Further, the amount of attorneys' fees sought represents only 14% of the gross settlement fund, which under the Fifth Circuit's blended approach for approval of class action fund settlements, is indisputably reasonable.[5]

### A.     Legal Standard

The use of a common fund to pay attorneys' fees in class action settlements has a long lineage.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The method of calculating the fees in common fund cases, however, is unsettled in the Fifth Circuit as it is the only circuit to not have expressly adopted the percentage method in which the court assigns an appropriate percentage of the overall recovery award as a reasonable attorneys' fee.  *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 651 (E.D. La. 2010) (citing Manual for Complex Litigation (Fourth) § 14.121 (2004)).  District courts in the Fifth Circuit instead commonly use the "'blended' percentage method."  *See, e.g., Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 860 (E.D. La. 2007).  Under this approach, the court first establishes a benchmark fee by referencing the percentage method and adjust this amount upward or downward based on factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *See In re Vioxx Prods. Liab. Litig.*, MDL 1657, 2013 WL 5295707, at * 3 (E.D. La. Sept. 18, 2013).  The court next conducts a rough lodestar analysis to "cross-check" the reasonableness of the fee award.  *Id.*; *Turner*, 472 F. Supp. 2d at 861.

---

[5] At the appropriate time, Class Counsel intend to petition for fees from the Banner, Global and Knauf Settlements. As the figures in Exhibit A demonstrate, the estimated fee awards from the Banner and Global settlement, if available and approved, would only bring the percentage fee award up to about 20%.

### B.     The *Johnson* Factors Support the Requested Fee Award

In *Johnson*, the Fifth Circuit articulated twelve factors to ensure "a reasonable fee." 488 F.2d at 720. The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Id*. at 717-719; *Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642, n. 25 (5th Cir.2012). Although courts are to address the *Johnson* factors, "rarely are all the *Johnson* factors applicable; this is particularly so in a common fund situation." *Di Giacomo v. Plains All Am. Pipeline*, No. A.H.-99-4137 and No. A.H.-99-4212, 2001 WL 34633373, at * 9 (S.D. Tex. Dec. 19, 2001).

#### i.     Time and labor required

As the attached affirmations demonstrate, the hours and rates claimed by Plaintiffs' Counsel are reasonable and fully support the fee request. Counsel worked collaboratively on a complex case with significant discovery and motion practice. *See supra* Part II. Plaintiffs' counsel, including paralegals and law clerks, spent a total of greater than 8,500 hours on this case, which was hotly contested from the start, through the date that the settlement was reached. Hours were spent on a wide variety of necessary activities in this litigation, including discovery, research, briefing, and Court appearances. *See* Declaration of Gary E. Mason in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses to

Settlement Class Counsel, at ¶6. *See also* Declaration of Gregory S. Weiss in Support of Plaintiffs' Motion for an Award of Attorneys' Fees. Moreover, Plaintiffs' counsel exercised reasonable judgment insofar as they did not incur unnecessary time or duplicate effort. *Id.* In addition, Settlement Class Counsel remains heavily involved in the on-going remediation effort at Villa Lago.

### ii. Novelty and difficulty of the issues presented

This case was exceedingly complex, implicating wide-ranging legal issues. Although Class Counsel have always believed in the merits of the case against the Defendant and in their ability to prevail, they recognized that Plaintiffs would face serious obstacles to establishing both liability and damages should the cases proceed to trial. For instance, Coastal agued that Plaintiffs' causes of action in tort for economic damages against Coastal should be barred because Plaintiffs are in privity with Coastal and are seeking damages related to the repair or replacement of their homes for which recovery in tort is unavailable.[6] In addition, Coastal argued that privity bars Plaintiffs' claim for breach of implied warranty of fitness and Chinese drywall is not a product upon which a strict liability claim may be based.[7] Coastal also proffered complete legal defenses from the language of the contract for construction of Villa Lago.

Another obstacle to Plaintiffs' recovery was the existence of judicial decisions denying Plaintiffs' claims under insurance policies containing pollution exclusion clauses. *See* e.g. *Granite State Ins. Co. v. Am. Bldg. Materials, Inc.*, No. 8:10-1542, 2011 WL 6025655 (M.D. Fla. Dec. 5, 2011); *Vintage Props., Inc. v. Mid-Continent Cas. Co.*, 10-cv-80836 (S.D. Fla. Aug. 23, 2011); *CDC Builders, Inc. v. Amerisure Mut. Ins. Co.*, No. 10-21678, 2011 WL 4454937 (S.D.

---

[6] *See* Defendant Coastal Construction of South Florida, Inc.'s Answer and Affirmative Defenses, March 8, 2010, Case No. 50 2009CA032471 (Cir. Ct. Palm Beach County), Ex. 2, hereto.
[7] *Id.*

Fla. Aug. 16, 2011).; *FCCI Ins. Co. v. Swedberg Enter., Inc. d/b/a Florida Drywall*, 51 2010 CA 005680 (6th Jud. Cir. Ct. Pasco Cty., Fla. Oct. 7, 2011); *FCCI Ins. Co. v. S3 Enter., Inc.*, 10-CA-2850 (20th Jud. Cir. Ct. Lee Cty., Fla. Sept. 16, 2011); *FCCI Commercial Ins. Co. v. Residential Drywall, Inc.*, 10-23495 (13th Jud. Cir. Ct. Hillsborough Cty., Fla. Sept. 7, 2011); *FCCI Advantage Ins. Co. v. Gulfcoast Eng'r, LLC*, 10-CA-2862 (20th Jud. Cir. Ct. Lee Cty., Fla. Aug. 8, 2011); *FCCI Commercial Ins. Co. v. Shirley Constr. & Drywall, Inc.*, 102979-CA (20th Jud. Cir. Ct. Charlotte Cty., Fla. Aug. 1, 2011); *FCCI Commercial Ins. Co. v. S.D. & Assocs., Inc.*, 10-29152-18 (17th Jud. Cir. Ct. Broward Cty., Fla. Jul. 20, 2011); *FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall*, 10-CA-7389 (12th Jud. Cir. Ct., Sarasota Cty., Fla. Jul. 6, 2011); *FCCI Commercial Ins. Co. v. Ocean Constr., Inc.*, 10-CA-2841 (20th Jud. Cir. Ct., Lee Cty. Fla. Jun. 6, 2011); *FCCI Commercial Ins. Co. v. Al Brothers, Inc*., 10-CA-2840 (20th Jud. Cir. Ct., Lee Cty., Fla. Apr. 19, 2011). In this Litigation, on December 16, 2010, the Court granted certain insurers' motions to dismiss and for judgment on the pleadings, determining that Plaintiffs are not entitled to coverage for losses due to corrosion and faulty materials under their homeowners' insurance policies that contain exclusionary clauses for those losses.[8]

The legal obstacles that Class Counsel faced provide further justification for the modest fee award sought here.

### iii.     Skill required to perform the legal services adequately

As discussed with factor two, Class Counsel adeptly navigated the complex issues presented by this case, proffered multiple sophisticated legal theories and argued against complex and potentially complete defenses to the claims, reviewed complex and voluminous documents and conducted numerous multi-party mediations.

---

[8] Order & Reasons, Dec. 16, 2010, Doc. #6670.

### iv. Preclusion of other employment for the attorneys

Class counsel are all affiliated with small firms. Thus, they must exercise utmost discretion before taking on a matter, knowing that it will require expending significant energy and scarce resources. Here, the attention required to diligently and properly litigate issues of first impression on a class-wide basis required plaintiffs to forego profitable work over several years.

### v. The customary fee for similar work

As the Plaintiffs' Steering Committee in this litigation demonstrated in its briefs in support of a fee award in the Banner and Global Settlements, a fee of 32% is fair and reasonable for work performed in the Chinese Drywall MDL. The fee of 20% Class Counsel seeks here is significantly less than 32% and well-below the benchmark fee in the Fifth Circuit. *See In re Vioxx Products Liab. Litig.*, 2013 WL 5295707, at * 3-4 (citing Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award,* 7 J. Empirical Legal Stud. 811, 833 (2010); *Turner*, 472 F. Supp. 2d at 863.

### vi. Whether the fee is fixed or contingent

Examination of this factor is intended to "demonstrat[e] the attorney's fee expectations when he accepted the case." *Johnson*, 488 F.2d at 718. Plaintiffs took the case on a contingent-fee basis and, therefore, "understood that [they were] embarking on complex, potentially expensive and lengthy litigation. Recovery was not assured." *King v. United SA Fed. Credit Union*, No. 09-0937, 744 F. Supp. 2d 607, 615 (W.D. Tex. 2010). This factor, too, confirms that a 30% benchmark is reasonable here. *See Klein v O'Neal, Inc.*, 705 F. Supp. 2d 632, 678 (N.D. Tenn. 2010) (finding that the contingent nature of the work favored an increase in the benchmark percentage).

    **vii.**  **Time limitations**

This factor is inapplicable here.

    **viii.**  **The amount involved and the results obtained**

The United States Supreme Court and the Fifth Circuit have held that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Enron Corp. Sec., Derivatives & ERISA Litig.*, 586 F. Supp. 2d 732, 796 (S.D. Tex. 2008) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998)). The Coastal Settlement creates a Settlement fund of $12,000,000 for the benefit of the owners and tenants of 326 condominium units at Villa Lago. As a direct result of the settlement, all units with corrosive Chinese Drywall will be remediated, including both Knauf units and non-Knauf units. In addition, current and prior non-Knauf unit owners will receive the same or comparable "soft cost" benefits as current and prior Knauf unit owners. This result is exceptionally favorable to class members as illustrated by the fact that **no one** has opted-out of the settlement and the sole objection related to an Unaffected unit. *See Turner*, 472 F. Supp. 2d at 852-853 (presence of only two objectors out of 3800 potential claimants constituted "a pronounced response in support of the proposed settlement" weighing in favor of approval.

    **ix.**  **The experience, reputation, and ability of the attorneys**

As referenced in analyzing factor one, Settlement Class Counsel has successfully litigated other consumer class actions. These and other successes illustrating Plaintiffs experience and ability are enumerated in Plaintiffs resumes, attached to the Joint Motion for an Order (1) Preliminarily Approving Settlement Agreement Against Coastal Construction of South Florida, Inc, Related to Villa Lago at Renaissance Commons in MDL 2047; (2) Conditionally Certifying a Settlement Class; (3) Approving the from of Notice and Authorizing the Dissemination of the

Notice; (4) Scheduling a Fairness Hearing; and (5) Staying the Litigation Against Coastal Construction of South Florida, Inc., April 8, 2013. [D.E. 16741-4] As a matter of judicial economy that pleading is incorporated herein by reference.

### x. The undesirability of the case

"Class action cases often carry with them elevated risks, a requirement of lengthy investigation through informal discovery, and a possibility of no recovery, all of which speak to the undesirability of such a case." *In re Dell Inc.,* No. 06-726, 2010 WL 2371834, at * 19 (W.D. Tex. June 11, 2010). Here, the complexity of the class action litigation and the uncertainty of contingency-based work confirm the reasonableness of Plaintiffs' fee request.

### xi. The nature and length of the professional relationship with the client

This factor is inapplicable here.

### xii. Awards in similar cases

Above, in analyzing the benchmark fee, Plaintiffs establish that their request of 15 (ultimately 20) percent is appreciably below fees granted in similar cases.

### 3. Lodestar Cross-Check

Courts conduct a cross-check by first analyzing the request under the lodestar method of multiplying the recorded hours worked by a reasonable hourly rate. *See, e.g., See Klein*, 705 F. Supp. 2d at 679 (citing *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). Then, courts assess the reasonableness of Plaintiffs' fee request by determining the multiple required to reach plaintiffs' proposed fee and assessing whether factors unique to the case merit the multiple. *In re Enron,* 586 F. Supp. 2d at 751.

Attached as Exhibit A hereto, counsel provide records of billable hours expended on this litigation from inception to December 3, 2013. The total of all attorneys' time is greater than

8,500 hours. These hours are reasonable and commensurate with other complex class actions, many of which Settlement Class Counsel have themselves litigated. Based on precedent as well as the experience of counsel, a reasonable rate for attorneys' time for a class action of this kind is $500 per hour. *See* Affidavits attached hereto. In ascertaining the reasonable hourly rate, courts examine the reasonable hourly rate for attorneys of a similar caliber practicing in the community. *In re OCA, Inc. Secs. & Derivative Litig.,* No. 05-2165, 2009 WL 512081, at * 25 (E.D. La. March 2, 2009). The court must consider the attorneys' regular rates in assessing the reasonableness of the hourly rate claimed. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995). When an attorney requests a rate within the range of prevailing market rates and that rate is not contested, it is *prima facie* reasonable. *Id*. at 328. Here, multiplying the hourly rate by the number of hours worked results in a lodestar fee of greater than $4,250,000 (i.e. $500 per hour x (at least) 8500 total hours).

"The purpose of a lodestar cross-check of the results of a percentage fee award is to avoid windfall fees, i.e., to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *In re Enron,* 586 F. Supp. 2d at 751 (internal quotation marks omitted). In order to assess the reasonableness of the multiple, courts examine the *Johnson* factors. *See id.* at 752; *Turner*, 472 F. Supp. 2d at 869. Here, the multiplier needed to reach counsel's proposed fee is **negative** since Clas Counsel is requesting here a fee award that is less than half of lodestar. This multiple, by definition, is below the range of multiples for class action settlements in this Circuit. *See, e.g., Forbush*, 98 F.3d at 824 (affirming district court's use of multiplier of two); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 751 (E.D. Tenn. 2007) (applying a multiplier of 2.26); *Turner*, 472 F. Supp. 2d at 869 ("[T]he Court finds that a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case."); *In re*

*Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W. D. La. 1997) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."); *Garza v. Sporting Goods Props., Inc.*, No. SA-93-CA-108, 1996 WL 56247, at * 33 (W.D. Tex. Feb. 6, 1996) ("The range of multipliers in large and complicated class actions have ranged from 2.26 to 4.5."). Consequently, the Court should conclude that the partial fee award requested is eminently fair and reasonable.

### III. Class Counsels' Request for Reimbursement of Expenses Should be Approved

"The appropriate analysis to apply in determining which expenses are compensable in a class action case is whether such costs are of the variety typically billed by attorneys to clients." *Dehoyos v. Allstate Corp.,* 240 F.R.D. 269, 334 (W.D. Tex. 2007) (citations omitted).

Settlement Class Counsel requests reimbursement of expenses from the Coastal Settlement in the amount of $380,946.00. Specifically, Settlement Class Counsel have expenses of $127,000, including costs of inspection and travel. *See* Mason Dec., ¶ 5 . RCR has directly expended $482,892 for testing and $152,000 in self-remediation costs to make its units temporarily habitable, for a total of $634,892. Id. Thus, the plaintiffs have collectively incurred costs of $761,892. The Coastal Settlement Agreement expressly provides that 50% of that amount, or $380,946, is payable from the Villa Lago Settlement Fund established pursuant to the Coastal Settlement. These reasonable expenses are documented on the books of Class Counsel and on the books of RCR. These expenses are reasonable in relation to the Settlement Fund and should be awarded. *See* Mason Dec., ¶ 5; Comporato Certification at ¶5; *In re OCA, Inc.*, 2009 WL 512081, at 26 (approving reimbursement of litigation expenses); *Turner,*, 472 F. Supp. 2d at 870 (approving reimbursement of litigation expenses and noting that defendant did not oppose the costs).

## IV. Common Benefit Fee and Cost Contribution.

Settlement Class Counsel will deposit greater than half of the partial payment of attorneys' fees into the registry of the Court, to be allocated at a future date to common benefit counsel for fees and common benefit costs, as a voluntary deposit of 17% of the settlement proceeds in accordance with this Court's Order. [D.E. 8545]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Motion for Partial Award of Attorneys' Fees and Partial Reimbursement of Costs, should be granted in its entirety.

Dated: December 10, 2013     Respectfully submitted,

  */s/ Gary E. Mason*
 Gary E. Mason
 Daniel K. Bryson
 WHITFIELD BRYSON & MASON LLP
 1625 Massachusetts Ave., NW, Suite 605
 Washington, D.C. 20036
 Telephone: (202) 429-2290
 Facsimile: (202) 429-2294
 gmason@wbmllp.com
 dan@wbmllp.com

 Joel R. Rhine
 RHINE MARTIN LAW FIRM
 1612 Military Cutoff Rd
 Suite 300
 Wilmington, NC 28403
 Telephone: (910) 772-9960
 Facsimile: (910) 772-9062
 jrr@rhinelawfirm.com

 Adam C. Linkhorst, Esq.
 LINKHORST & HOCKIN, P.A.
 515 North Flagler Drive, 20th Floor
 West Palm Beach, Florida 33401

Telephone: (561) 832-5900
Facsimile: (954) 562-9199
alinkhorst@ciklinlubitz.com

*Counsel for the Settlement Class*

Gregory S. Weiss (Fla. Bar No. 163430)
Mracheck, Fitzgerald, Rose, Konopka & Dow, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
Tel.: (561) 655-2250
Fax: (561) 655-5537
gweiss@mrachek-law.com
psymons@mrachek-law.com

*Counsel for RCR Holdings II, LLC*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that the above and foregoing has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by email transmission, and upon all parties by electronically uploading the same to Lexis Nexis File and Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with procedures established in MDL 2047, on this 10th day of December, 2013.

                                                */s/ Gary E. Mason*
                                                Gary E. Mason