UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED<br>DRYWALL PRODUCTS<br>LIABILITY LITIGATION | )<br>)   MDL NO. 2047<br>)<br>) |
| THIS DOCUMENT RELATES TO: | )   SECTION: L<br>) |
| *Hobbie, et al. v.*<br>*RCR Holdings II, LLC, et al.,* | )   JUDGE FALLON<br>)<br>) |
| No. 10-1113 | )<br>)<br>)   MAG. JUDGE WILKINSON<br>) |

**DECLARATION OF JOEL R. RHINE IN SUPPORT OF
PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES TO SETTLEMENT CLASS COUNSEL**

Joel R. Rhine, pursuant to 28 U.S.C. § 1746, based upon his personal knowledge, information, and belief, attests to the following:

1. I, Joel R. Rhine, serve as Plaintiffs' Counsel for the Plaintiffs in the above-captioned action. I am a Partner and Founder of Rhine Martin Law Firm, P.C. in Wilmington, North Carolina[1].

2. I am submitting this affidavit in support of my Firm's application for an award of attorneys' fees in connection with services rendered to the Plaintiffs and the Class and the reimbursement of expenses incurred by my Firm to date in the course of this litigation.

---

[1] During the course of this litigation, my litigation team has practiced law under several names. During the investigation and earliest stages of this dispute, my litigation team practiced with Lea, Rhine, Rosbrugh & Chleborowicz, PLLC, which changed its name to Lea, Rhine & Rosbrugh, PLLC. I was a partner and co-founder of that firm. In March 2011, our litigation team severed itself from the old firm, and worked under the name, Rhine Law Firm, P.C., whose name was changed to Rhine Martin, Law Firm, P.C. in August 2013. I shall refer to all of the same as "my Firm."

3.     My Firm has been involved in all aspects of this litigation. Paragraph 3 of <u>Declaration of Gary E. Mason In Support of Plaintiffs' Motion For An Award of Attorney's Feed and Reimbursements of Expenses to Settlement Class Counsel</u> contains a description of some, but not all activities in which my litigation team has been involved. I desire to add the following, which again fails to fully identify our efforts. We spent many days personally viewing and inspecting the Villa Lago complex. We spent months identifying, locating and interviewing numerous potential witnesses and potential expert witnesses. This process continued throughout the litigation. Unlike other Chinese Drywall cases in the MDL, written discovery, as well as informal discovery was conducted by the parties. The number of documents associated with this large condominium project is immense and we personally reviewed, selected, categorized and summarized the same. Our experience in construction and defective building product litigation assisted us greatly in this task. From this document review, discovery and our interviews, we prepared lengthy trial outlines, conducted a 30(b)(6) deposition, prepared Motions and Briefs and pushed our case along despite inherent constraints associated with an MDL. Because we were not allowed to continue with our formal discovery, we again resorted to informal discovery. Witnesses were located, interviewed and outlines and memorandum were prepared with the anticipation that the case would be tried. We had frequent conversations with opposing counsel and their clients, governmental officials, and others who would be involved in litigation or any "in kind" settlement where the project would be remediated. Our experts poured over the project gathering data. Some of these experts were used by the Plaintiff Steering Committee as trial experts, after we introduced the experts to the PSC. This expert data, client data, discovery responses, documentary evidence, and information gained from witnesses was used to create graphic renditions and other exhibits in an effort to find patterns to assist identifying the drywall

installed in the units. This data and our research, was also used to create evidentiary arguments related to our bond claim, contest insurance defenses and meet the elements for our various claims for relief. In addition, because our clients continued to face financial hardships and were losing units to foreclosure, we helped assist the class members in their efforts to remain owners. Because our clients were suffering from the stigma associated with owning units in a Chinese drywall condominium, we were required to take extraordinary efforts to protect the project. For example, upon learning that KPT agreed to accept service, our offices obtained emergency relief from the State Court and attempted to contact every owner, in writing as well as over the phone or in person, to gain permission to join the Omni complaints and obtain data to support their claims. None of this work and other work is being recognized as common benefit. In short, my litigation team has devoted our practice to this case. I am extremely proud of our work.

4. The chart attached hereto as Exhibit A is a summary of time spent by the attorneys of my Firm on this litigation, and the lodestar calculation based on my Firm's current billing rates. The chart includes the name of each attorney and paralegal who has worked on the matter, the hourly billing rate and the hours expended by each attorney and paralegal. The chart was prepared from contemporaneous time records prepared by my Firm, which are available for submission to this Court at its request.

5. The total number of hours spent on this litigation against Defendants by my Firm from the inception of the case through the present is 4,581.80 hours. The total lodestar for attorney and paralegal time based on my Firm's current rates is $1,284,980.00. The hourly rates in the chart, Exhibit A, are commensurate with the hourly fees of associate counsel and staff with the same amount of experience and who performed the same legal activities.

6.     The chart attached hereto as Exhibit B is a detailed summary of the expenses spent by my Firm on this litigation. The total amount for these expenses is $30,207.13.

7.     I declare under penalty of perjury and the laws of this Court that the foregoing is true and correct.

Date: December 9th, 2013

By: _____
    Joel R. Rhine

*Hobbie, et al., v. RCR Holdings, II, LLC*

Rhine Martin Law Firm, P.C.

EXHIBIT A

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Joel R. Rhine | Partner | 2040.25 | $500.00 | $1,020,125.00 |
| Jean S. Martin | Partner | 23.50 | $500.00 | $11,750.00 |
| Katie Lesica | Associate | 3.25 | $500.00 | $1,625.00 |
| Shannon Kelley | Paralegal | 1949.40 | $100.00 | $194,940.00 |
| Holly Austin | Paralegal | 555.40 | $100.00 | $55,540.00 |
| Cassia Folkers | Paralegal | 8.75 | $100.00 | $875.00 |
| Cristi Schomp | Paralegal | 1.25 | $100.00 | $125.00 |
| **TOTAL** | | **4581.80** | | **$1,284,980.00** |

Hobbie, et. al., v. RCR Holdings, II, LLC

Rhine Martin Law Firm, P.C.

Exhibit B

### Filing Fees

| Case | Date | Description | Amount |
|---|---|---|---|
| Renaissance | 10/22/2009 | FL Bar Association - Fee for Joel Rhine PHV | 250.00 |
| Renaissance | 10/27/2009 | Clerk of Court - Filing Fees for Joel Rhine PHV | 100.00 |
| | | Total | 350.00 |

### Conference Calls

| Case | Date | Description | Amount |
|---|---|---|---|
| Renaissance | 7/29/2009 | Premiere Global Conferencing | 75.92 |
| | | Total | 75.92 |

### Misc. Advanced Expenses

| Case | Date | Description | Amount |
|---|---|---|---|
| Renaissance | 6/1/2012 | Office Supplies (Class Settlement) | 12.83 |
| Renaissance | 11/5/2012 | Coastal Document Production (Services on-Site) | 983.66 |
| Renaissance | 12/1/2012 | Mintzer Sarowitz Seris (50%- document production) | 64.66 |
| | | Total | 1,061.15 |

### Research

| Case | Date | Description | Amount |
|---|---|---|---|
| Renaissance | 11/1/2009 | Westlaw (November 2009) | 462.72 |
| Renaissance | 1/1/2010 | Westlaw (January 2010) | 3.66 |
| Renaissance | 4/1/2010 | Pacer (April 2010) | 2.56 |
| Renaissance | 5/1/2010 | Pacer (May 2010) | 2.40 |
| Renaissance | 8/1/2010 | Westlaw (August 2010) | 62.06 |
| Renaissance | 8/1/2010 | Pacer (August 2010) | 10.40 |
| Renaissance | 11/1/2010 | Pacer (November 2010) | 2.72 |
| Renaissance | 12/1/2010 | Westlaw (December 2010) | 7.47 |
| Renaissance | 1/1/2011 | Westlaw (January 2011) | 3.36 |
| Renaissance | 2/1/2011 | Westlaw (February 2011) | 3.28 |
| Renaissance | 3/1/2011 | Pacer (March 2011) | 5.12 |
| Renaissance | 3/1/2011 | Westlaw (March 2011) | 2.95 |
| Renaissance | 4/1/2011 | Pacer (April 2011) | 2.40 |
| Renaissance | 8/1/2011 | Pacer (August 2011) | 8.96 |
| Renaissance | 11/1/2011 | Pacer (November 2011) | 2.48 |
| Renaissance | 12/1/2011 | LexixNexis File & Serve (December 2011) | 51.36 |
| Renaissance | 2/11/2012 | Westlaw (February 2012) | 29.04 |
| Renaissance | 3/1/2012 | Westlaw (March 2012) | 24.99 |
| Renaissance | 9/25/2012 | Westlaw (September 2012) | 5.49 |
| Renaissance | 10/16/2012 | Westlaw (October 2012) | 1.53 |
| Renaissance | 12/1/2012 | Westlaw (December 2012) | 2.65 |
| | | Total | 697.60 |

## Travel

| Case | Date | Description | Amount |
|---|---|---|---|
| Renaissance | 8/26/2009 | Trip from ILM to Ft. Lauderdale (Joel Rhine) (8/26/09 - 8/27/09) (Flight: 199.20; Argo Travel: 40.00; Hotel: 88.09; Meals: 55.14; Parking: 20.00) | 402.43 |
| Renaissance | 9/10/2009 | Trip from ILM to Ft. Lauderdale (Joel Rhine) (9/10/09 - 9/11/09) (Flight: 422.39; Hotel: 122.05; Meals: 21.94; Rental Car: 82.99; Gas: 23.54; Parking: 16.00) | 688.91 |
| Renaissance | 9/17/2009 | Trip from ILM to Ft. Lauderdale (Joel Rhine) (9/17/09 - 9/18/09) (Flight: 411.39; Hotel: 113.54; Meals: 57.18; Parking: 15.00) | 597.11 |
| Renaissance | 10/6/2009 | Trip from RDU to Ft. Lauderdale (Joel Rhine) (10/6/09 - 10/7/09) (Flight: 271.40; Mileage: 160.89; Rental Car: 68.06; Gas: 4.38; Hotel: 146.52; Misc: 21.25; Meals: 52.44; Parking: 20.00) | 744.94 |
| Renaissance | 10/27/2009 | Trip from Orlando to Ft. Lauderdale (Joel Rhine) (10/26/09 - 10/28/09) (Flight: 106.60; Baggage Fee: 25.00; Hotel: 129.46; Rental Car: 48.23; Gas: 8.71; Meals: 56.36) | 374.36 |
| Renaissance | 1/21/2010 | Trip from RDU to Ft. Lauderdale (Joel Rhine) (1/21/10 - 1/22/10): (Flight: 277.80; Rental Car: 162.79; Meals: 145.25; Gas: 12.25; Parking: 20.00; Hotel: 116.30; Mileage: 158.45) | 892.84 |
| Renaissance | 6/7/2010 | Trip from ILM to West Palm Beach, FL (Joel Rhine) (6/7/10 - 6/8/10): (Flight: 356.80; Hotel: 277.64; Meals: 139.16; Parking: 16.00) | 789.60 |
| Renaissance | 2/3/2011 | Trip from ILM to Washington, DC (Joel Rhine - Pre-Mediation Meeting): (Flight: 519.80; Meals: 8.64; Parking: 9.00; Cab Fare: 16.00) | 553.44 |
| Renaissance | 2/14/2011 | Trip from ILM to Miami, FL (Joel Rhine - Mediation): (Flight: 304.80; Baggage Fee: 50.00; Hotel: 842.56; Meals: 409.63; Cab Fare: 55.00; Parking: 27.00 | 1,688.99 |
| Renaissance | 3/22/2011 | Trip from RDU to New Orleans, LA (Joel Rhine - Mediation): (Flight: 404.04; Change Flight: 557.80; Hotel: 239.30; Meals: 68.22; Cab Fare: 78.00; Parking: 20.00) | 1,367.36 |
| Renaissance | 5/25/2011 | Travel from Wilmington to New Orleans, LA (Joel Rhine - Hearing): (Flight: 614.80; Cab Fare: 100.00; Meals: 111.25; Parking: 18.00; Hotel: 208.32) | 1,052.37 |
| Renaissance | 12/6/2011 | Flight from Wilmington to Ft. Lauderdale (Joel Rhine - Mediation): CANCELLED/NO REFUND | 331.29 |
| Renaissance | 12/6/2011 | Travel from Wilmington to Miami (Joel Rhine - Mediation): (Flight: 399.80; Checked Bag: 50.00; Cab Fare: 20.00; Meals: 123.93; Parking: 18.00; Hotel: 308.50) | 920.23 |
| Renaissance | 1/12/2012 | Travel from ILM to Miami (Joel Rhine - Deposition): (Flight: 317.20, Hotel: 152.71, Meals: 162.59, Parking: 18.00) | 650.50 |

| Case | Date | Description | Amount |
|---|---|---|---|
| Renaissance | 1/30/2012 | Travel from ILM to Miami (Joel Rhine - Document Review): (Flight: Refund Applied. Change Fee Only, Baggage Fee: 19.00, Meals: 195.74, Cab: 61.00, Parking: 20.00) | 545.74 |
| Renaissance | 5/29/2012 | Travel to Miami (JRR) – Flight: 227.35, Hotel: 255.25, Shuttle: 18.00, Meals: 24.64, Parking: 17.50 | 770.09 |
| Renaissance | 6/13/2012 | Travel to NOLA (JRR) – Meals: 150.94, Flight: 210.00, Hotel: 170.37, Cab: 111.00, Parking: 15.00, Baggage: 9.00 | 666.31 |
| Renaissance | 6/13/2012 | Travel to NOLA (JRR) – Meals: 153.95, Flight: 512.20, Hotel: 370.90, Cab: 73.00, Parking: 19.00 | 1,129.05 |
| Renaissance | 11/12/2012 | Travel to NOLA (JRR) – Meals: 462.56, Flight: 260.10, Hotel: 803.26, Parking: 35.00 | 1,560.92 |
| Renaissance | 1/14/12 - 1/16/12 | Travel to NOLA (JRR) - Meals: 429.14, Parking/Cabs: 176.00, 2 days bag stprage: 20.00, Hotel: 551.79, Flight: 738.60 | 1,915.53 |
| Renaissance | 1/21/13-1/22/13 | Travel to Ft. Lauderdale (JRR)- Meals: 76.48, Parking/Shuttle: 38.00, Flight: 448.60, Hotel: 209.79 | 772.87 |
| Renaissance | 3/20/13-3/21/13 | Travel to NOLA (JRR)- Flight: 662.60, Hotel: 273.20, Meals: 112.93, Cab: 88.00, Parking: 14.00 | 1,150.73 |
| Renaissance | 4/23/13- 4/24/13 | Travel to NOLA (JRR): Flight: 482.60, Hotel: 273.20, Meals: 167.16, Cab:50.00, Parking: 18.00 | 990.96 |
| Renaissance | 8/19/13-8/20/13 | Travel to NOLA (JRR): Flight: 405.00, Hotel: 170.37, Meals: 173.26, Cab: 146.20, Parking: 80.00 | 974.83 |
| Renaissance | 9/16/13-9/17/13 | Travel to NOLA (JRR): Flight: 420.60, Hotel: 222.20; Meals: 179.15; Cab: 40.00; Parking: 20.00 | 881.95 |
| Renaissance | 10/15/13-10/16/13 | Travel to Fort Lauderdale (JRR): Flight: 305.60; Hotel: 112.28; Rental Car: 79.36; Meals: 37.80 | 535.04 |
| | | Total | 22,948.39 |

## Copies/Prints (B/W = 0.15, Color = 0.25)

| Case | Date | Description | Amount |
|---|---|---|---|
| Renaissance | 9/1/2010 | In-House Copies (September 2010) | 9.00 |
| Renaissance | 10/1/2010 | In-House Copies (October 2010) | 0.75 |
| Renaissance | 1/1/2011 | In-House Copies (January 2011) | 10.00 |
| Renaissance | 2/1/2011 | In-House Copies (February 2011) | 17.25 |
| Renaissance | 3/1/2011 | In-House Copies/Prints (March 2011) | 28.70 |
| Renaissance | 4/1/2011 | In-House Copies/Prints (April 2011) | 162.40 |
| Renaissance | 5/1/2011 | In-House Copies/Prints (May 2011) | 39.55 |

| Renaissance | 6/1/2011 | In-House Copies/Prints (June 2011) | 33.75 |
|---|---|---|---|
| Renaissance | 7/1/2011 | In-House Copies/Prints (July 2011) | 82.70 |
| Renaissance | 8/1/2011 | In-House Copies/Prints (August 2011) | 41.65 |
| Renaissance | 9/1/2011 | In-House Copies/Prints (September 2011) | 154.35 |
| Renaissance | 10/1/2011 | In-House Copies/Prints (October 2011) | 174.55 |
| Renaissance | 11/1/2011 | In-House Copies/Prints (November 2011) | 296.00 |
| Renaissance | 12/1/2011 | In-House Copies/Prints (December 2011) | 509.30 |
| Renaissance | 1/1/2012 | In-House Copies/Prints (January 2012) | 510.55 |
| Renaissance | 1/12/2012 | FedEx Office (Copies/Prints) (January 2012) | 544.92 |
| Renaissance | 2/1/2012 | In-House Copies/Prints (February 2012) | 26.80 |
| Renaissance | 3/1/2012 | In-House Copies/Prints (March 2012) | 34.80 |
| Renaissance | 4/1/2012 | In-House Copies/Prints (April 2012) | 2.85 |
| Renaissance | 5/1/2012 | In-House Copies/Prints (May 2012) | 16.45 |
| Renaissance | 6/1/2012 | In-House Copies/Prints (June 2012) | 516.35 |
| Renaissance | 7/1/2012 | In-House Copies/Prints (July 2012) | 10.65 |
| Renaissance | 8/1/2012 | In-House Copies/Prints (August 2012) | 22.40 |
| Renaissance | 9/1/2012 | In-House Copies/Prints (September 2012) | 48.05 |
| Renaissance | 10/1/2012 | In-House Copies/Prints (October 2012) | 15.30 |
| Renaissance | 11/1/2012 | In-House Copies/Prints (November 2012) | 79.20 |
| Renaissance | 12/1/2012 | In-House Copies/Prints (December 2012) | 7.20 |
| Renaissance | 1/1/2013 | In-House Copies/Prints (January 2013) | 39.40 |
| Renaissance | 2/1/2013 | In-House Copies/Prints (February 2013) | 74.05 |
| Renaissance | 3/1/2013 | In-House Copies/Prints (March 2013) | 249.10 |
| Renaissance | 4/1/2013 | In-House Copies/Prints (April 2013) | 272.85 |
| Renaissance | 5/1/2013 | In-House Copies/Prints (May 2013) | 0.30 |
| Renaissance | 7/1/2013 | In-House Copies/Prints (July 2013) | 1.05 |
| Renaissance | 8/1/2013 | In-House Copies/Prints (August 2013) | 9.30 |
| Renaissance | 9/1/2013 | In-House Copies/Prints (September 2013) | 30.15 |
| Renaissance | 10/1/2013 | In-House Copies/Prints (October 2013) | 45.15 |
| | | Total | 4,116.82 |

## Postage/Faxes

| Case | Date | Description | Amount |
|---|---|---|---|
| Renaissance | 10/1/2009 | Postage (October 2009) | 5.49 |
| Renaissance | 11/1/2009 | Fax (November 2009) | 2.25 |
| Renaissance | 11/1/2009 | Postage (November 2009) | 4.44 |
| Renaissance | 4/1/2010 | Postage (April 2010) | 1.39 |
| Renaissance | 9/1/2010 | Postage (September 2010) | 8.80 |
| Renaissance | 10/1/2010 | Postage (October 2010) | 15.59 |
| Renaissance | 10/1/2010 | Fax (October 2010) | 0.50 |
| Renaissance | 11/1/2010 | Postage (November 2010) | 2.20 |
| Renaissance | 12/1/2010 | Postage (December 2010) | 2.00 |
| Renaissance | 12/1/2010 | Fax (December 2010) | 0.50 |
| Renaissance | 1/1/2011 | Postage (January 2011) | 15.90 |
| Renaissance | 1/1/2011 | Postage - Fed Ex (January 2011) | 22.40 |
| Renaissance | 2/1/2011 | Postage - Fed Ex (February 2011) | 2.20 |

| Renaissance | 6/1/2011 | Postage (June 2011) | 2.20 |
|---|---|---|---|
| Renaissance | 7/1/2011 | Postage (July 2011) | 14.08 |
| Renaissance | 9/1/2011 | Postage (September 2011) | 1.32 |
| Renaissance | 9/1/2011 | Postage - Fed Ex (September 2011) | 260.28 |
| Renaissance | 10/1/2011 | Postage (October 2011) | 27.45 |
| Renaissance | 10/1/2011 | Postage - Fed Ex (October 2011) | 26.45 |
| Renaissance | 11/1/2011 | Postage (November 2011) | 1.28 |
| Renaissance | 12/1/2011 | Postage - Fed Ex (December 2011) | 168.55 |
| Renaissance | 12/1/2011 | Postage (December 2011) | 17.92 |
| Renaissance | 1/1/2012 | Postage - Fed Ex (January 2012) | 66.78 |
| Renaissance | 2/1/2012 | Postage (February 2012) | 1.30 |
| Renaissance | 3/1/2012 | Postage (March 2012) | 4.20 |
| Renaissance | 4/1/2012 | Postage - Fed Ex (April 2012) | 13.98 |
| Renaissance | 6/1/2012 | Postage (June 2012) | 267.15 |
| Renaissance | 7/1/2012 | Postage (July 2012) | 0.65 |
| | | **Total** | **957.25** |

| | **Total Expenses** | **30,207.13** |
|---|---|---|