# EXHIBIT "A"

# Chinese Drywall   MDL  2047
# Qualified Settlement Funds

| | |
|---|---|
| 1 | Contents page |
| 2 | Overall Summary page |
| 3 | Listing of QSF's and amounts |
| 4 - 7 | Banner Attorney Fee Settlement Fund |
| 8 - 20 | Global  Bodily injury |
| 21 - 23 | Interior/Exterior Repair and Relocation |
| 24 - 28 | Knauf  Attorney fund |
| 29 - 31 | USG and L&W  Settlement Fund |
| 32 - 35 | Virginia - 4 different settlements |
| 36 - 47 | Villa Lago Settlement Fund   (RCR) & (Coastal et al) |

Chinese Drywall QSF's for Settlement
MDL 2047

| # | pages | Settlor | Attorney Fee QSF — Attorney Fees | Set aside for Costs | Repair & Relocation QSF — Repair | Bodily Injury and Other Loss QSF — Bodily Injury and Other losses | Other Loss QSF — Other Losses | Total to be Funded |
|---|---|---|---|---|---|---|---|---|
| 1 | 3 - 6 | Banner | $ 16,986,103.14 | $ 2,000,000.00 | $ 32,390,695.70 | $ 1,704,773.46 | | $ 53,081,572.30 |
| 2 | 7 - 19 | Global | $ 23,473,280.00 | $ 2,046,065.68 | $ 41,723,184.00 | $ 2,244,036.00 | | $ 69,486,565.68 |
| 3 | 20 - 22 | Interior/Exterior | $ 2,560,000.00 | $ 400,000.00 | $ 2,067,817.00 a | $ 252,000.00 | | $ 5,279,817.00 |
| 4 | 23 - 27 | Knauf | $ 142,565,000.00 b | | | | $ 30,000,000.00 | $ 172,565,000.00 |
| 5 | 28 - 30 | USG and L&W  Settlement Fund | $7.00 per sq ft | | | | | |
| 6 | 31 - 34 | Virginia - Builders Mutual  Settlement Fund | $ 544,000.00 | $ 85,000.00 | $ 856,800.00 c | | $ 214,200.00 c | $ 1,700,000.00 |
| 7 | 31 - 34 | Virginia - Nationwide Settlement Fund | $ 3,200,000.00 | $ 450,000.00 | $ 5,040,000.00 c | | $ 1,260,000.00 c | $ 9,950,000.00 |
| 8 | 31 - 34 | Virginia - The Porter-Blaine/Venture Supply Settleme | $ 960,000.00 | $ 100,000.00 | $ 1,512,000.00 c | | $ 378,000.00 c | $ 2,950,000.00 |
| 9 | 31 - 34 | Virginia - The Tobin Trading  Settlement Fund | $ 864,000.00 | $ 85,000.00 | $ 1,360,800.00 c | | $ 340,200.00 c | $ 2,650,000.00 |
| 10 | 35 - 46 | Villa Lago Settlement Fund   (RCR) | $ 1,709,605.51 d | $ 380,946.00 | $ 1,529,189.80 d | | $ 1,180,258.69 d | $ 4,800,000.00 |
| | 35 - 46 | Villa Lago Settlement Fund (Coastal et al) | | | $ 7,200,000.00 d | | | $ 7,200,000.00 |
| | | | | | | | | |
| | | | $ 192,861,988.65 | $ 5,547,011.68 | $ 93,680,486.50 | $ 4,200,809.46 | $ 33,372,658.69 | $ 329,662,954.98 |

a    This amount is net of prior settlements of $2,720,183.00
b    This amount is net of prior payments to the PSC of $17,435,000.00
c    Virginia QSF's were set up as "Attorney QSF" and "Settlement QSF" so the funds will be kept in 1 QSF for both Repair and Other Losses
d    All funds for Villa Lago are to be deposited into 1 QSF.
\#    Should be 22 QSF's   3 for Banner,Global & INEX            9
                2 for Knauf,USG,and 4 Virginia settlors   12
                1 for Villa Lago            1
                                            22

# Chinese Drywall  MDL  2047
# Qualified Settlement Funds
# Listing of Qualified Settlement Funds

| | Description | Doc # | Amount | |
|---|---|---|---|---|
| 1 | Banner Attorney Fund | 17064 | $ 18,986,103.14 | |
| 2 | Banner Repair & Remediation Fund | 17065 | $ 32,390,695.70 | |
| 3 | Banner Other Loss Fund | 17066 | $ 1,704,773.46 | $ 53,081,572.30 |
| 4 | Global Attorney Fund | 17069 | $ 25,519,345.68 | |
| 5 | Global Repair & Remediation Fund | 17068 | $ 41,723,184.00 | |
| 6 | Global Other Loss Fund | 17067 | $ 2,244,036.00 | $ 69,486,565.68 |
| 7 | INEX Attorney Fund | 17072 | $ 2,960,000.00 | |
| 8 | INEX Repair & Remediation Fund | 17070 | $ 2,067,817.00 | |
| 9 | INEX Other Loss Fund | 17071 | $ 252,000.00 | $ 5,279,817.00 |
| 10 | Knauf Attorney Fund | 17073 | $ 142,565,000.00 | |
| 11 | Knauf Other Loss Fund | 17074 | $ 30,000,000.00 | $ 172,565,000.00 |
| 12 | USC & L&W - Attorney Fund | 17076 | $ - | |
| 13 | USC & L&W - Settlement Fund | 17075 | $ - | |
| 14 | VA. Builders - Attorney  Fund | 17078 | $ 629,000.00 | |
| 15 | VA. Builders - Settlement Fund | 17077 | $ 1,071,000.00 | $ 1,700,000.00 |
| 16 | VA. Nationwide - Attorney  Fund | 17080 | $ 3,650,000.00 | |
| 17 | VA. Nationwide - Settlement Fund | 17079 | $ 6,300,000.00 | $ 9,950,000.00 |
| 18 | VA. Porter-Blaine - Attorney  Fund | 17082 | $ 1,060,000.00 | |
| 19 | VA. Porter-Blaine  - Settlement Fund | 17081 | $ 1,890,000.00 | $ 2,950,000.00 |
| 20 | VA. Tobin Trading - Attorney  Fund | 17084 | $ 949,000.00 | |
| 21 | VA. Tobin Trading - Settlement Fund | 17083 | $ 1,701,000.00 | $ 2,650,000.00 |
| 22 | Villa Lago Settlement | 17210 | $ 12,000,000.00 | $ 12,000,000.00 |
| | | | $ 329,662,954.98 | $ 329,662,954.98 |

# Banner MDL Settlement

| paragraph | **Proposed Allocation Plan - Banner MDL Settlement (1-16-2013)(Doc #16527-1)** | | |
|---|---|---|---|
| # 2 | Gross Settlement | $ 53,081,572.30 | |
| #3 | Attorney fees  32% | $ 16,986,103.14 | |
| #3 | Set aside for costs | $  2,000,000.00 | Of this amount $385,063.20 has been paid |
| #3 | **Initial monies available for distribution** | $ 34,095,469.16 | |
| #4 | Repair and Relocation Damage Set Aside 95% | $ 32,390,695.70 | |
| #5 | Bodily Injury and Other Loss Set Aside 5% | $  1,704,773.46 | |

Funding Summary

| | | |
|---|---|---|
| Attorney Fees | $ 16,986,103.14 | |
| Set aside for Costs | $  2,000,000.00 | |
| Repair and Relocation Damage Set Aside | $ 32,390,695.70 | |
| Bodily Injury and Other Loss Set Aside | $  1,704,773.46 | |
| | $ 53,081,572.30 | |

<u>PROPOSED ALLOCATION PLAN - BANNER MDL SETTLEMENT</u>
(Second Amended Version - January 16, 2013)

Allocation Committee (the "Committee"):

Arnold Levin          Hilarie Bass
Russ Herman           Neal Sivyer
Ervin A. Gonzalez     Dorothy Wimberly
Michael Ryan          Charlie Long
Bruce Steckler        Vanessa Serrano

Other Participants:

Kerry Miller             Mark Salky
Steven Glickstein        Minor Pipes
Nicholas Panayotopolous
Michael Sexton
Michael Peterson

The Committee and Other Participants recommend the following allocation protocol:

**1. Eligibility.** To be eligible for an allocation of Settlement Funds, an Affected Property of a Banner Class Member must contain or have contained defective Chinese-manufactured drywall ("CDW") supplied by one or more of the Banner entities. Any person or entity that previously has settled with Banner for an Affected Property is not eligible to receive an allocation of settlement funds for that same Affected Property.

**2. Gross Settlement Amount.** The Settlement Funds available for allocation and distribution is $53,081,572.30 ("Gross Settlement Amount").

**3. Set Aside for Attorneys' Fees and Costs.** The parties recognize that the final determination of entitlement to attorneys' fees and costs, and the amount of any such award, shall be made by Judge Eldon E. Fallon. Pending a determination of the entitlement to and amount of any awards of attorneys' fees and costs, the parties agree to set aside a portion of the Gross Settlement Amount to satisfy any such awards. Thirty-two percent (32%) of the Gross Settlement Amount, or $16,986,103.14, shall initially be set aside for an award of attorneys' fees ("Attorneys' Fees Set Aside"). An additional fund in the amount of $2,000,000 shall be set aside for an award for the reimbursement of reasonable expenses, including the cost of notice advanced by the Plaintiffs' Steering Committee and the cost of administering the allocation of Settlement Funds ("Cost Set Aside"). Collectively, these two set asides shall be referred to as the "Attorneys' Fees and Cost Set Aside". The remaining funds of the Gross Settlement Amount, or $34,095,469.16, shall be referred to as the "Initial Monies Available for Distribution."

For those Affected Properties that have been repaired by builders that have actively pursued this litigation seeking recovery from the Gross Settlement Amount, the maximum allowable

award of attorneys' fees from the Attorneys' Fees Set Aside shall be ten percent (10%) ("Ten Percent Properties") pursuant to Paragraph 14.7 of the Banner Settlement Agreement. For all other Affected Properties, the maximum allowable award of attorneys' fees from the Attorneys' Fees Set Aside shall be thirty-two percent (32%) ("Thirty-Two Percent Properties"). All parties reserve their rights to object to or oppose any motions or petition seeking an award of attorneys' fees and costs for any Affected Property.[1]

Following the submission of all claims forms, a determination will be made of the Affected Properties that comprise the Ten Percent Properties and those that comprise the Thirty-Two Percent Properties. For the Ten Percent Properties, there will be a procedure for a return of the twenty-two percent overage (which amount reflects the difference between the thirty-two percent set aside and the ten percent maximum allowable award of attorneys' fees for those properties) for distribution only to those Ten Percent Properties. A similar procedure shall be established for the return of the difference between the Attorneys' Fees and Costs Set Aside and the amount ultimately awarded as attorneys' fees and costs on the Ten Percent Properties and the Thirty-Two Percent Properties. The differences to be returned pursuant to this paragraph shall be referred to herein as the "Applicable Overages." These procedures shall ensure that any Class Members subject to lower fees will get a larger distribution than Class Members subject to higher fees, so that each Class Member will receive the precise net distribution to which that Class Member is entitled after deducting the applicable award of attorneys' fees and costs attributable to each Affected Property for that Class Member.

**4. Repair and Relocation Damage Set Aside.** Ninety-five percent (95%) of the Initial Monies Available for Distribution shall be set aside to compensate or reimburse Banner Class Members for "Repair and Relocation Damages"[2] ("Repair and Relocation Damage Set

---

[1]    There remains a dispute as to whether ten percent (10%) or thirty-two percent (32%) should ultimately be set aside for Affected Homes that were repaired by a homebuilder that did not actively pursue litigation. The parties agree to submit this for resolution by Judge Fallon as soon as possible if and when the Banner settlement receives final approval.

[2]    The term "Repair and Relocation Damages" shall mean costs and expenses associated with the following: (i) the removal of the CDW from the Affected Property and repairing or replacing affected building materials and fixtures in the Affected Property (the "repair work"); (ii) the relocation of the property owners' belongings (*i.e.*, moving expenses and storage-related expenses) during the repair work; and (iii) if necessary, obtaining comparable alternative living arrangements for the homeowners during the repair work. Notwithstanding the foregoing, sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer and retained, in writing, the exclusive right to assert all claims associated therewith against Banner shall be entitled to make a claim for their damages under the distribution terms of this "Repair and Relocation Damage Set Aside" section. All other sellers of Affected Properties who sold Affected Properties at a diminished value, including but not limited to sellers of Affected Properties that were later remediated by a repairing builder, shall be entitled to make a claim for their damages exclusively from the "Other Loss Set
(continued...)

Aside"). The Special Master shall make appropriate distributions of the Applicable Overages as additional or supplemental compensation for Repair and Relocation Damages in such a manner to implement the intent described in the third paragraph of section 3 above. Repair and Relocation Damages shall only be recoverable once per Affected Property, and shall be paid to the person or entity that retains the right to recover for such claims against Banner for CDW claims. This shall include sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer and retained, in writing, the exclusive right, as opposed to the buyer, to pursue Banner for the CDW claims.

**5. Bodily Injury and Other Loss Set Aside.** Five percent (5%) of the Initial Monies Available for Distribution shall be set aside to compensate or reimburse Banner Class Members for alleged bodily injury ("Bodily Injury Set Aside") and "Other Losses"[3] ("Other Loss Set Aside"). The amount of the Bodily Injury Set Aside shall not exceed two and one half percent of the Initial Monies Available for Distribution and the amount of the Other Loss Set Aside shall not exceed two and one half percent of the Initial Monies Available for Distribution. The Special Master shall make appropriate distributions of the Applicable Overages as additional or supplemental compensation for Bodily Injury and Other Losses in such a manner to implement the intent described in the third paragraph of section 3 above.

**6. Affected Property Allocation Per Square Foot.** In order to allocate the Repair and Relocation Damage Set Aside among the Banner Class Members, the Special Master or Claims Administrator shall first compile claims information from the Banner Class Members by a date certain to determine:  (i) the total number of Banner-supplied Affected Properties that are entitled to an allocation of Banner Settlement Funds; and (ii) the total combined square footage under air of all such Affected Properties. The Special Master or Claims Administrator shall then divide the total amount of Repair and Relocation Damage Set Aside by the total combined square footage under air of all Banner-supplied Affected Properties to determine the amount per square foot under air to allocate to each Affected Property ("Affected Property Allocation Per Square Foot"). (For example, assume that the Repair and Relocation Damage Set Aside is $35,000,000.00 and the total combined square footage under air equals 3,500,000 square feet. The Affected Property Allocation Per Square Foot will be $10.00 per square foot under air.)[4] In addition to any other requirements under the Banner Settlement Agreement, the Banner Class Members must submit proof satisfactory to the

---

Aside," as defined below, and, in that situation, the builder that repaired the Affected Property shall have the exclusive right to make a claim for "Repair and Relocation Damages" under this section.

[3]   The term " Other Losses" shall mean any alleged damages claimed by any Class Member that is not for Repair and Relocation Damages or Bodily Injury.

[4]   This example is designed only to show the mathematics of the formula; it is not an estimate of the amount of the combined square footage or of the Affected Property Allocation Per Square Foot.

**Second Amended Settlement Allocation Plan (doc # 16528-1)**

| | | |
|---|---|---|
| Settlement Funds | $ 82,784,000.00 | # 2 of Allocation Plan |

**Settlement Agreement in MDL 2047 Regarding Claims Involving Builders, Installers,Suppliers and Participating Insurers (doc # 15695-2)**

Credits

| | | |
|---|---|---|
| 4.2.1.1 of Settelement Agree | $ 1,284,000.00 | Castle Rock |
| 4.2.1.2 of Settelement Agree | $ 3,936,000.00 | Coastal Constr |
| 4.2.1.3 of Settelement Agree | $ 756,000.00 | Devon Gulf Coast Sthelter |
| 4.2.1.4 of Settelement Agree | $ 720,000.00 | Gulf Coast Shelter |
| 4.2.1.5 of Settelement Agree | $ 2,376,000.00 | RCR Holdings |
| 4.2.1.6 of Settelement Agree | $ 358,000.00 | Shoma Homes |
| | $ 9,430,000.00 | |

| | | |
|---|---|---|
| Gross Settlement Amount | $ 73,354,000.00 | #2 of Allocation Plan |

| | | |
|---|---|---|
| Attorney Fee | 32% | #4 of Allocation Plan |
| | $ 23,473,280.00 | |

| | | |
|---|---|---|
| Reserve for reasonable expenses including cost of notice | $ 5,000,000.00 | #4 of Allocation Plan |

**Costs per filing to fund rec doc 17152-1 on 10-21-2013**

| | | |
|---|---|---|
| Ct Order 9-25-13 - Mediation fees to John Perry | $ 236,403.01 | |
| Ct Order 9-25-13 - Kinsella | $ 2,695,000.00 | |
| Ct Order 9-25-13 - Edward Dunlap | $ 22,531.31 | |
| Ct Order 9-25-13 - Reimb of PSC cost | $ 530,939.53 | |
| | $ (530,939.53) | |
| notice cost | $ 2,953,934.32 | |

| | | |
|---|---|---|
| $73,354,000- $23,473,280- $5,000,000 | $ 44,880,720.00 | |

Summary

| | | |
|---|---|---|
| Settlement Funds | $ 82,784,000.00 | |
| Prior Settlements | $ (9,430,000.00) | |
| Attorney fees | $ (23,473,280.00) | |
| Notice costs reserve | $ (5,000,000.00) | |
| **Funds available for Distribution** | $ 44,880,720.00 | #4of Allocation Plan p2 of 7 |

| | | |
|---|---|---|
| Repair & restoration  95% of 44,880,720 | $ 42,636,684.00 | #5 of Allocation plan |
| **Credits   Ct Order 9-25-13** | $ (913,500.00) | |
| | $ 41,723,184.00 | |

| | | |
|---|---|---|
| Bodily Injury  5% of 44,880,720 | $ 2,244,036.00 | # 6 of Allocation plan |

Funded amount

| | |
|---|---|
| $ | 82,784,000.00 |
| $ | (9,430,000.00) |
| | |
| $ | (2,953,934.32) |
| | |
| | |
| $ | (913,500.00) |
| $ | 69,486,565.68 |

| | | |
|---|---|---|
| $ | 41,723,184.00 | **Repair & Restoration QSF** |
| $ | 23,473,280.00 | **Attorney fee QSF** |
| $ | 2,046,065.68 | **Reserve for Notice costs (5,000,000-2,953,934)** |
| $ | 2,244,036.00 | **Bodily Injury** |
| $ | 69,486,565.68 | |

NEED REVISED COURT ORDER
 (Per Order to fund rec doc 17152-1 attys fees were cited as $22,528,021 which would be The Gross Settlement less expenses paid the
   calculation was 73,354,000-2,953,9345=70,400,066 x 32% =22,528,021 - I believe setion 4 sets up additional funding for expenses.
   Calcualtions for the Repair and Relocation fund and Other Loss fund are also calculated after expenses incorrectly.)

*G/o bAl*
*Allocation*
*PLn*

## SECOND AMENDED SETTLEMENT ALLOCATION PLAN FOR SETTLEMENT INVOLVING BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS

The Settlement Funds shall be distributed pursuant to the following allocation protocol:

1. **Eligibility.** To be eligible for an allocation of Settlement Funds, a Class Member must own, have owned, reside in, or have resided in, or in the case of a defendant Class Member must have repaired, an Affected Property containing defective Chinese Drywall ("CDW"), and the Affected Property's builder, installer, and/or supplier must have participated in this Settlement by contributing to the Settlement Funds.

2. **Gross Settlement Amount.** The Settlement Funds available for allocation and distribution shall be $73,354,000, or $82,784,000 less credits as provided in Section 4.2.1 of the Settlement ("Gross Settlement Amount"). ✓

3. **Participating Defendant Funds.** The Gross Settlement Amount was created from settlement contributions from various Participating Defendants, which include participating builders, installers, and suppliers, along with their respective Participating Insurers. Settlement contributions from participating builders and any of their Participating Insurers shall be referred to as the "Participating Builders Fund." Settlement contributions from participating installers and any of their Participating Insurers shall be referred to as the "Participating Installers Fund." Settlement contributions from participating suppliers and any of their Participating Insurers shall be referred to as the "Participating Suppliers Fund." The Participating Builders Fund, the Participating Installers Fund, and the Participating Suppliers Fund shall be collectively referred to as the "Participating Defendant Funds."

  3.1 **Distributions to Participating Defendant Funds.** The Participating Defendant Funds are expected to be funded roughly as follows: (a) Participating Builders Fund – 40% of the Gross Settlement Amount; (b) Participating Suppliers Fund – 40% of the Gross Settlement Amount; and (c) Participating Installers Fund – 20% of the Gross Settlement Amount.

4. **Set Aside for Attorneys' Fees and Costs.** The Parties recognize that the final determination of entitlement to attorneys' fees and costs, and the amount of any such award, shall be made by Judge Eldon E. Fallon. Pending a determination of the entitlement to and amount of any awards of attorneys' fees and costs, the Parties agree to set aside a portion of the Gross Settlement Amount from each of the Participating Defendant Funds to satisfy any such awards. Thirty-two percent (32%) of the Gross Settlement Amount shall initially be set aside from each of the Participating Defendant Funds for an award of attorneys' fees ("Attorneys' Fees Set Aside"). An additional fund in the amount of $5,000,000 shall be created (by setting aside this amount from the Gross Settlement Amount) for the reimbursement of reasonable expenses, including the cost of notice advanced from the Settlement Funds, the cost of the mediator and the cost of administering the allocation of Settlement Funds ("Cost Set Aside"). Collectively, these two set asides shall be referred to as the "Attorneys' Fees and Cost Set Aside." The remaining

funds of the Gross Settlement Amount, shall be referred to as the "Funds Available for Distribution."

For all Affected Properties, the maximum allowable award of attorneys' fees from the Attorneys' Fees Set Aside shall be thirty-two percent (32%), with no more than 15% of the Gross Settlement Amount allocated to common benefit fees. All Parties reserve their rights to object to or oppose any motions or petitions seeking an award of attorneys' fees, common benefit fees, and/or costs for any Affected Property.[1]

Following the submission of all claims forms, and motions or petitions seeking an award of fees and/or costs, along with any objections thereto, the Court will determine the appropriate amount of attorneys' fees and/or common benefit fees awarded for each Affected Property from the Attorneys' Fees Set Aside. At that time, the Court will also establish a procedure for the return of any "Applicable Overages", *i.e.*, the difference between the thirty-two percent set aside and the amount of attorneys' fees and/or common benefit fees awarded for each Affected Property. These procedures shall ensure that any Class Members subject to lower attorneys' fees and/or common benefit fees will get a larger distribution than Class Members subject to higher fees, so that each Class Member will receive the precise net distribution to which that Class Member is entitled after deducting the applicable award of attorneys' fees, common benefit fees, and costs attributable to each Affected Property for that Class Member.

5.      **Repair and Relocation Payments.** Ninety-five percent (95%) of the Funds Available for Distribution in each of the Participating Defendant Funds shall be set aside to compensate or reimburse Class Members for "Repair and Relocation Damages"[2] ("Repair and Relocation

---

[1]     There remains a dispute as to what amount in fees and costs should be paid for Affected Homes that were repaired by a defendant who actively pursued this Litigation and/or whose homeowner did not actively pursue Litigation. The Parties agree to submit this dispute for resolution by Judge Fallon as soon as possible if and when this settlement receives final approval.

[2]     The term "Repair and Relocation Damages" shall mean costs and expenses associated with the following: (i) the removal of the CDW from the Affected Property and repairing or replacing affected building materials and fixtures in the Affected Property (the "repair work"); (ii) the relocation of the property owners' belongings (*i.e.*, moving expenses and storage-related expenses) during the repair work; and (iii) if necessary, obtaining comparable alternative living arrangements for the homeowners during the repair work. Notwithstanding the foregoing, sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer and retained, in writing, the exclusive right to assert all claims associated therewith against the builder, installer or supplier of the Affected Property, shall be entitled to make a claim for their damages under the distribution terms of this "Repair and Relocation Payment" section. All other sellers of Affected Properties who sold Affected Properties at a diminished value, including but not limited to sellers of Affected Properties that were later remediated by a repairing builder, shall be entitled to make a claim for their damages exclusively from the "Other Loss Set Aside," as defined below, and, in that

2

Payments"). Class Members shall be entitled to recover their Repair and Relocation Payments from only those Participating Defendant Funds to which their respective builder, installer, and/or supplier contributed. If a Class Member's builder, installer, and/or supplier does not participate in this Settlement, that Class Member shall not be entitled to a recovery of a Repair and Relocation Payment from the corresponding Participating Defendant Fund to which the applicable Non-Participating Defendant failed to contribute. In such a case, the Class Member does not release and maintains all claims against that Non-Participating Defendant. Repair and Relocation Payments shall only be recoverable once per Affected Property, and shall be paid to the person or entity that retains the right to recover for such claims against the Participating Defendant(s) for CDW claims. This shall include sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer and retained, in writing, the exclusive right, as opposed to the buyer, to pursue the builder, installer or supplier for the CDW claims.

6.     **Bodily Injury and Other Loss Set Aside.** Five percent (5%) of the Funds Available for Distribution in each of the Participating Defendant Funds shall be set aside in one separate fund to compensate or reimburse Class Members for alleged bodily injury ("Bodily Injury Set Aside") and "Other Losses"[3] ("Other Loss Set Aside"). The amount of the Bodily Injury Set Aside shall not exceed two and one-half percent (2.5%) of the Funds Available for Distribution from each of the Participating Defendant Funds and the amount of the Other Loss Set Aside shall not exceed two and one-half percent (2.5%) of the Funds Available for Distribution from each of the Participating Defendant Funds. Class Members shall be eligible to recover from the Bodily Injury Set Aside and Other Loss Set Aside if one or more of their respective builders, installers, and/or suppliers contributed to the Settlement Funds.

7.     **Affected Property Allocation and Recovery From Each Participating Fund.**

      a.     **Claim Form Information.** In order to allocate the Repair and Relocation Payments from each Participating Defendant Fund between the Class Members, the Special Master or Claims Administrator shall first compile claims information from the Class Members, by a date certain, to determine: (i) the total number of Affected Properties that are entitled to an allocation from the particular Participating Fund (*i.e.*, for each affected home, the Special Master or Claims Administrator must determine whether the respective builder, installer or supplier participated in this Settlement by contributing to the applicable Participating Defendant Fund); and (ii) the total combined square footage under air of all such Affected Properties for each Participating Defendant Fund ("Total Square Footage")

---

situation, the builder that repaired the Affected Property shall be the exclusive right to make a claim for "Repair and Relocation Damages" under this section.

[3]   The term "Other Losses" shall mean any alleged damages claimed by any Class Member that is not for Repair and Relocation Damages or Bodily Injury.

3

*Global*
*Settlement*
*Agreement*

# SETTLEMENT AGREEMENT IN MDL NO. 2047 REGARDING CLAIMS INVOLVING BUILDERS, INSTALLERS, SUPPLIERS AND PARTICIPATING INSURERS[1]

This Settlement Agreement is entered into by and among the Plaintiffs' Steering Committee on behalf of the Class Members, as defined below, in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (EDLA), including the various consolidated Omnibus Complaints and individual actions, and those Builders, Installers and Suppliers identified in Exhibit 1 (included within the definition of "Participating Defendants" as hereinafter defined), together with the Participating Defendants' Participating Insurers identified in Exhibit 2, as of the latest date of a Party's signature below.

WHEREAS, certain Participating Defendants and some of their Participating Insurers have been named as defendants in MDL No. 2047, in state or federal court litigation, and/or are otherwise alleged to be liable for the damages and/or injuries related to Chinese Drywall that was installed in various properties throughout the United States; and

WHEREAS, the Participating Defendants and Participating Insurers deny the allegations against them and dispute liability, causation and damages with respect to any and all claims relating to Chinese Drywall; and

WHEREAS, certain Participating Defendants have sought insurance coverage from the Participating Insurers with respect to the Litigation and/or other claims relating to Chinese Drywall, and certain Participating Insurers have reserved rights and/or denied insurance coverage; and

WHEREAS, without conceding the correctness of any other Party's legal position, claims and/or defenses, the Parties wish to avoid the effort, expense and risk of continued litigation,

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound, the Parties agree as follows:

1. ## Definitions

    1.1.    **Parties.** "Parties" shall mean the Class, Participating Defendants, and Participating Insurers:

        1.1.1.    **Class.** "Class," also referred to as "Settlement Class" or "Class Members," shall include all persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors

---

[1] This Settlement is referred to in the Knauf Defendants' Settlement Agreement as the "Prospective Insurance Agreement."

**4.** **Payments by Participating Defendants and Participating Insurers and Application of Proceeds**

4.1.   In consideration of the settlement of all Class Members' claims arising out of or related to Chinese Drywall in the Litigation and/or CDW-Related Actions and/or Related Claims against Participating Defendants and Participating Insurers, the Participating Defendants and Participating Insurers will pay the collective sum of EIGHTY TWO MILLION SEVEN HUNDRED EIGHTY-FOUR THOUSAND DOLLARS ($82,784,000.00) (the "Settlement Funds"), subject to the credits in Section 4.2. The credits in Section 4.2 shall not be included in the Settlement Funds subject to allocation under Section 16.1. No Participating Defendant and none of his, her or its Participating Insurers is liable to pay settlement funds committed by or on behalf of any other Participating Defendant and his, her or its Participating Insurers. Each Participating Defendant and his, her or its Participating Insurers, are obligated only to pay their individual settlement amounts, as committed in response to the MDL No. 2047 Mediator's confidential settlement proposal, and which amounts are to be paid as follows:

4.1.1.   Each Participating Defendant and/or its Participating Insurers shall deposit 5% of the total sum to be paid by such Participating Defendant and/or its Participating Insurers into the trust account for Insurance Liaison Counsel, Judy Y. Barrasso, payable to Barrasso Usdin Kupperman Freeman & Sarver, L.L.C., IOLTA Account and sent c/o H. Minor Pipes, III, 909 Poydras Street, 24th Floor, New Orleans, Louisiana 70112. This amount is to be paid within seven (7) days following the entry of the Preliminary Approval Order by the Court. These funds are to be used for the purposes of (a) paying Mediator's costs, and (b) paying the cost of class notice. To the extent any of the funds are spent on those purposes, there shall be no refund of this sum, or any portion thereof, to any Participating Defendant or Participating Insurer who withdraws from this Settlement pursuant to Sections 8.3.2 or 8.4.1. However, if any Participating Defendant or Participating Insurer properly withdraws from this settlement when a portion of these funds has not been spent on these stated purposes, it shall be entitled to a refund of the portion of its payment in the same percentage as that left unspent on the date of withdrawal. Any of these funds remaining after payment of the Mediator's costs and class notice, and not refunded to withdrawing Participating Defendants, shall be deposited in the Escrow Account for use in the allocations provided in Section 16.

4.1.2.   Each Participating Defendant and/or its Participating Insurers shall deposit into the Escrow Account the remaining 95% of the total sum to be paid by such Participating Defendant and/or its Participating Insurers within fifteen (15) days of the Effective Date of this Settlement. These funds will be allocated in accordance with Section 16 of this Settlement Agreement.

8

4.2.     The following amounts shall be applied towards satisfying the Settlement Funds in Section 4.1, but shall not be applied towards satisfying the recovery of attorneys' fees and reimbursement of costs available under Section 16.6 (because these funds will be the subject of a separate recovery from the Knauf Defendants (if used by those entities to satisfy a builders' claim, *e.g.,* CastleRock) or by a Class Member that opts-out of this settlement and pursues its claim against a Participating Defendant or Non-Participating Defendant):

    4.2.1.     Separate Settlements.   Because the following entities have either reached, or have been in negotiations for, separate full or partial settlements regarding claims involving Chinese Drywall, after the negotiations that led to this Settlement, thereby removing those claims from this Settlement, the following amounts will be credited against the Settlement Funds due in Section 4.1:

        4.2.1.1.     CastleRock Communities LP – $1,284,000.

        4.2.1.2.     Coastal Construction Group of South Florida, Inc. – $3,936,000.

        4.2.1.3.     Devon International Industries, Inc. – $756,000.

        4.2.1.4.     Gulf Coast Shelter, Inc. and Shelter Products, Inc. – $720,000.

        4.2.1.5.     RCR Holdings II, LLC – $2,376,000.

        4.2.1.6.     Shoma Homes Splendido, Inc. – $358,000.

    4.2.2.     For each of the Separate Settlements listed in Section 4.2.1., the PSC, class counsel, common benefit attorneys and privately retained attorneys for all Class Members shall be entitled to recover an award of attorneys fees equivalent to the common benefit percentage set by the Court in accordance with Section 16.6.

    4.2.3.     Opt-outs and Withdrawals.   To the extent of any opt-outs or withdrawals pursuant to Sections 8.1, 8.3 or 8.4, the payment of Settlement Funds by an individual Participating Defendant for the Affected Properties associated with any opt-outs shall be reduced pro-rata relative to the number of units comprising the Mediator's confidential settlement proposal for the number of opt-outs to the applicable Participating Defendant, or for the Participating Defendant's share if a withdrawal, and these amounts will be credited against the Settlement Funds due in Section 4.1.

4.3.     In consideration of the payments and other consideration made by Participating Defendants and Participating Insurers, Class Members agree, in addition to other conditions set forth in this Settlement Agreement, to apply the settlement

9

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED     :          MDL 2047
DRYWALL PRODUCTS LIABILITY       :          SECTION:  L
LITIGATION                       :          JUDGE FALLON
                                 :          MAG. JUDGE WILKINSON
                                 :
THIS DOCUMENT RELATES TO         :
ALL ACTIONS                      :
                                 :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : :

### CLASS COUNSEL'S AND INSURANCE LIAISON COUNSEL'S
### MEMORANDUM IN SUPPORT OF
### JOINT MOTION TO DISBURSE SETTLEMENT FUNDS

**MAY IT PLEASE THE COURT:**

Class Counsel, Russ M. Herman and Arnold Levin, and Insurance Liaison Counsel jointly submit this memorandum in support of their Joint Motion to Disburse Settlement Funds:

On February 7, 2013, the Court entered an Order and Judgment: (1) Certifying the INEX, Banner, Knauf, L&W, and Global Settlement Classes, and (2) Granting Final Approval to the INEX, Banner, Knauf, L&W, and Global Settlements [Rec. Doc. 16570]. The Order is now final. The Global Settlement Class relates to the Settlement Agreement that was entered into by and among the Plaintiffs' Steering Committee ("PSC") on behalf of the Class Members in *In re: Chinese- Manufactured Drywall Products Liability Litigation*, MDL No. 2047, Eastern District of Louisiana, including the various consolidated Omnibus Complaints and individual actions, and those Builders, Installers and Suppliers referred to as Participating Defendants, together with the Participating Insurers (the "Global Settlement").

Insurance Liaison Counsel is in possession and holding settlement funds from the Participating Defendants and Participating Insurers, and Class Counsel and Insurance Liaison Counsel seek authorization from the Court for Insurance Liaison Counsel to distribute the

1

Settlement Funds being held by Insurance Liaison Counsel in connection with the Global

Settlement in accordance with Section 4 of the Global Settlement.

The Court's Order of February 7, 2013, approved certain expenditures in connection

with the issuance of notice to Class Members and other terms of the Prospective Insurance

Agreement at the time preliminary approval was granted by the Court on May 31, 2012 [Rec.

Doc. 14562]. Class Notice was provided in accordance with the Global Settlement and as a

result of the approval of the Class Settlement, the following expenses were incurred which were

and should be approved by the Court, and request that Insurance Liaison Counsel be authorized

to distribute some of the Settlement Funds as follows:

| | | |
|---|---|---|
| a. | Mediation Fees to John Perry | $236,403.01 |
| b. | Class Notice to Kinsella | $2,695,000.00 |
| c. | Direct Mailings to Class Members by Edward Dunlap | $22,531.31 |
| d. | Reimbursements to the PSC for Costs Incurred | $530,939.53 |

Pursuant to this Court's orders dated September 10, 2013 (Rec. Docs. 17067, 17068 and

17069), Class Counsel has established QSF accounts at Esquire Bank so that the funds received

from Insurance Liaison Counsel can be deposited and used in accordance with the Global

Settlement.   Insurance Liaison Counsel should be authorized to immediately remit the amount

of $69,486,565.68 to Class Counsel as full and final funding of all amounts due under the

Global Settlement.   Movants ask for authority to have these amounts funded, consistent with

the approved Allocation Plan for this settlement (Rec. Doc. 16616), as follows:

> Builder, Installer, Supplier and Participating Insurer's Repair and
> Relocation Set-Aside Fund – (63%) - $43,438,541.38 [1]

> Builder, Installer, Supplier and Participating Insurer's Attorney
> Fee Settlement Fund – (32% ) - $22,528,021.02

---

[1] This amount is $44,352,041.38 (or 63% of the $70,400,065.68 remaining amount due under the Global Settlement)
less the Knauf credit of $913,500.00.

2

Builder, Installer, Supplier and Participating Insurer's Bodily Injury
and Other Loss Set-Aside Fund (5%) – (5%)- $3,520,003.28

In addition, due to separate settlements between certain Participating Defendants and Knauf, Knauf owes $913,500 to the Global Settlement.  Movants request authority to have Knauf not fund this amount, but instead credit it against the final $913,500 Knauf would receive under the Allocation Plan approved by this Court for the Global Settlement towards the Knauf Remediation Fund.[2]

Dated:  September 25, 2013

Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047 and
Class Counsel*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Matthew C. Gaughan
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047 and Class Counsel*

---

[2] The Knauf Defendants and Insurance Liaison Counsel have confirmed that this will not in any way impact the attorney's fee amount agreed upon due the PSC pursuant to the Global Settlement or the Knauf Settlement.

3

/s/ H. Minor Pipes, III.
**Judy Y. Barrasso, Esquire**
**H. Minor Pipes, III., Esquire**
**BARRASSO USDIN KUPPERMAN**
  **FREEMAN & SARVER, LLC**
909 Poydras Street, 24th Floor
New Orleans, LA 70112
Phone: (504) 589-9700
Fax: (504) 589-9701
jbarrasso@barrassousdin.com
mpipes@barrassousdin.com
*Insurance Liaison Counsel in MDL 2047*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Class Counsel's and Insurance Liaison Counsel's Memorandum in Support of Joint Motion to Disburse Settlement Funds and Establish Fund has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 25th day of September, 2013.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel MDL 2047*
*Co-counsel for Plaintiffs*

4

*Global*

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

### O R D E R

Considering the Joint Motion to Disburse Settlement Funds filed by Class Counsel, Russ M. Herman and Arnold Levin, and Insurance Liaison Counsel;

**IT IS ORDERED BY THE COURT** that Insurance Liaison Counsel is authorized to distribute the Settlement Funds being held by Insurance Liaison Counsel in connection with the Global Settlement in accordance with Section 4 of the Global Settlement as follows:

| | | |
|---|---|---|
| a. | Mediation Fees to John Perry | $236,403.01 |
| b. | Class Notice to Kinsella | $2,695,000.00 |
| c. | Direct Mailings to Class Members by Edward Dunlap | $22,531.31 |
| d. | Reimbursements to the PSC for Costs Incurred | $530,939.53 |

**IT IS FURTHER ORDERED BY THE COURT** that Insurance Liaison Counsel shall remit the amount of $69,486,565.68[1] to Class Counsel to be deposited in to the Builder, Installer, Supplier and Participating Insurers set-aside funds, as provided in the Allocation Plan approved by this Court at Rec. Doc. 16616, at Esquire Bank as full and final funding of all amounts due under the Global Settlement as follows:

---

[1] This amount is the remaining amount due under the Global Settlement of $70,400,065.68 less the $913,500.00 credit from Knauf.

Builder, Installer, Supplier and Participating Insurer's Repair and
Relocation Set-Aside Fund – (63%) - $43,438,541.38 [2]

Builder, Installer, Supplier and Participating Insurer's Attorney
Fee Settlement Fund – (32% ) - $22,528,021.02

Builder, Installer, Supplier and Participating Insurer's Bodily Injury
and Other Loss Set-Aside Fund (5%) – (5%)- $3,520,003.28

**IT IS FURTHER ORDERED BY THE COURT** that the $913,500 owed by Knauf to

the Global Settlement, due to separate settlements between certain Participating Defendants and

Knauf, is to be a credit against the final amount Knauf would receive under the Allocation Plan

approved by this Court for the Global Settlement towards the Knauf Remediation Fund.  This will

not in any way impact the attorney's fee amount agreed upon due the PSC pursuant to the Global

Settlement or the Knauf Settlement.

New Orleans, Louisiana, this 21st day of _____October_____, 2013.

Eldon E. Fallon
United States District Court Judge

---

[2] This amount is $44,352,041.38 (or 63% of the $70,400,065.68 remaining amount due under the Global Settlement)
less the Knauf credit of $913,500.00.

# Interior Exterior Building Supply Settlement

Allocation plan (doc # 16609-2)

|  | INEX |  |
|---|---|---|
| Gross | $    8,000,000.00 | #2 |
| rate | 32% | #3 |
| Atty fees | $    2,560,000.00 | #3 |

| Estimated administrative costs | 5% | Per Court agreement |
|---|---|---|
| Costs | $    400,000.00 |  |

|  | Repair & Relocation | Bodily Injury |
|---|---|---|
| Gross | $    8,000,000.00 |  |
| Atty fee | $    (2,560,000.00) |  |
| Adm costs  5% | $    (400,000.00) |  |
| Reasonable costs per agree |  |  |
| Notice costs already paid | $    98,995.49 |  |

| Initial Monies Available for Distribution (8,000,000-2,560,000-400,000) | $    5,040,000.00 |  |  |
|---|---|---|---|
| #5 | 95% | 5% | #6 |
|  | $    4,788,000.00 | $    252,000.00 |  |
| credits  #4 | $    (2,720,183.00) | $    - |  |
|  | $    2,067,817.00 | $    252,000.00 |  |

| Funding Summary | Total | After credits for Prior Settlements |
|---|---|---|
| Attorney Fees | $    2,560,000.00 | $  2,560,000.00 |
| Set aside for Costs | $    400,000.00 | $  400,000.00 |
| Repair and Relcoation Damage | $    4,788,000.00 | $  2,067,817.00 |
| Bodily Injury and Other Loss | $    252,000.00 | $  252,000.00 |
|  | $    8,000,000.00 | $  5,279,817.00 |

## PROPOSED ALLOCATION PLAN - INEX MDL SETTLEMENT
### (March 13, 2013)

Allocation Committee (the "Committee"):

Arnold Levin                    Dorothy Wimberly
Russ Herman                     Hilarie Bass
Gerald Meunier

The Committee recommends the following allocation protocol for the InEx Settlement:

1. **Eligibility.** To be eligible for an allocation of Settlement Funds, an Affected Property of an InEx Class Member must contain or have contained defective Chinese-manufactured drywall ("CDW") supplied by InEx. Any person or entity that previously has settled with InEx for an Affected Property is not eligible to receive an allocation of settlement funds for that same Affected Property.

2. **Gross Settlement Amount.** The Settlement Funds available for allocation and distribution is $8,000,000.00 ("Gross Settlement Amount").

3. **Set Aside for Attorneys' Fees and Costs.** The parties recognize that the final determination of entitlement to attorneys' fees and costs, and the amount of any such award, shall be made by Judge Eldon E. Fallon. Pending a determination of the entitlement to and amount of any awards of attorneys' fees and costs, the parties agree to set aside a portion of the Gross Settlement Amount to satisfy any such awards. Thirty-two percent (32%) of the Gross Settlement Amount, or $2,560,000.00, shall initially be set aside for an award of attorneys' fees ("Attorneys' Fees Set Aside"). An additional fund in an amount to be determined shall be set aside for an award for the reimbursement of reasonable expenses, including the cost of notice advanced by the Plaintiffs' Steering Committee and the cost of administering the allocation of Settlement Funds ("Cost Set Aside"). Collectively, these two set asides shall be referred to as the "Attorneys' Fees and Cost Set Aside."

4. **Deduction for Payment of Prior and Pending Settlements.** The amount of $2,720,183.00 shall be deducted from the remaining funds of the Gross Settlement Amount to account for payment of Prior Settlements as set forth on Exhibit 1.23 of the InEx Settlement and Pending Settlements as set forth on Exhibit 1.21 of the InEx Settlement. The remaining funds of the Gross Settlement Amount after the Attorneys' Fees and Costs Set Aside and the Deduction for Payment of Prior and Pending Settlements shall be referred to as the "Initial Monies Available for Distribution.

5. **Repair and Relocation Damage Set Aside.** Ninety-five percent (95%) of the Initial Monies Available for Distribution shall be set aside to compensate or reimburse InEx Class

Members for "Repair and Relocation Damages"[1] ("Repair and Relocation Damage Set
Aside").  Repair and Relocation Damages shall only be recoverable once per Affected
Property, and shall be paid to the person or entity that retains the right to recover for such
claims against InEx for CDW claims.  This shall include sellers of Affected Properties who
sold un-remediated Affected Properties at a diminished value after disclosure of the existence
of CDW to the buyer and retained, in writing, the exclusive right, as opposed to the buyer, to
pursue InEx for the CDW claims.

6.  **Bodily Injury and Other Loss Set Aside.**  Five percent (5%) of the Initial Monies
Available for Distribution shall be set aside to compensate or reimburse InEx Class Members
for alleged bodily injury ("Bodily Injury Set Aside") and "Other Losses"[2] ("Other Loss Set
Aside").  The amount of the Bodily Injury Set Aside shall not exceed two and one half
percent of the Initial Monies Available for Distribution and the amount of the Other Loss Set
Aside shall not exceed two and one half percent of the Initial Monies Available for
Distribution.

7.  **Affected Property Allocation Per Square Foot.**  In order to allocate the Repair and
Relocation Damage Set Aside among the InEx Class Members, the Special Master or Claims
Administrator shall first compile claims information from the InEx Class Members by a date
certain to determine:  (i) the total number of InEx-supplied Affected Properties that are
entitled to an allocation of InEx Settlement Funds; and (ii) the total combined square footage
under air of all such Affected Properties.  The Special Master or Claims Administrator shall
then divide the total amount of Repair and Relocation Damage Set Aside by the total
combined square footage under air of all InEx-supplied Affected Properties to determine the
amount per square foot under air to allocate to each Affected Property ("Affected Property
Allocation Per Square Foot").  (For example, assume that the Repair and Relocation Damage
Set Aside is $4,500,000.00 and the total combined square footage under air equals 450,000
square feet.  The Affected Property Allocation Per Square Foot will be $10.00 per square

---

[1]    The term "Repair and Relocation Damages" shall mean costs and expenses associated
with the following: (i) the removal of the CDW from the Affected Property and repairing
or replacing affected building materials and fixtures in the Affected Property (the "repair
work"); (ii) the relocation of the property owners' belongings (*i.e.*, moving expenses and
storage-related expenses) during the repair work; and (iii) if necessary, obtaining
comparable alternative living arrangements for the homeowners during the repair work.
Notwithstanding the foregoing, sellers of Affected Properties who sold un-remediated
Affected Properties at a diminished value after disclosure of the existence of CDW to the
buyer and retained, in writing, the exclusive right to assert all claims associated therewith
against InEx shall be entitled to make a claim for their damages under the distribution
terms of this "Repair and Relocation Damage Set Aside" section.

[2]    The term "Other Losses" shall mean any alleged damages claimed by any Class Member
that is not for Repair and Relocation Damages or Bodily Injury.

61093818.DOCX

# Knauff Settlement

|  | Remediation | Settlement Agreement Doc # 1607-3 Section 4.6.2 Other Loss Fund | | Fourth Amendment to Settlement Doc # 17165-1 Section 2 Attorney Fees | |
|---|---|---|---|---|---|
| Gross | Unlimited | $ | 30,000,000.00 | $ | 160,000,000.00 **(a)** |
| Advance payments | | | | $ | (17,435,000.00) |
| To be Funded | | $ | 30,000,000.00 | $ | 142,565,000.00 |

**(a)** Up to 2% of Attorney fees may be held back for costs of post settlement & administration

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

```
-------------------------------------------------x
IN RE:                                            :   MDL NO. 2047
                                                  :   SECTION: L
CHINESE MANUFACTURED DRYWALL                      :
PRODUCTS LIABILITY LITIGATION                     :
                                                  :   JUDGE FALLON
                                                  :
                                                  :   MAG. JUDGE WILKINSON
                                                  :
-------------------------------------------------x
THIS DOCUMENT RELATES TO:                         :
ALL CASES AND                                     :
                                                  :
Payton, et al. v. Knauf Gips KG, et al.           :
Case No. 2:09-cv-07628 (E.D. La.)                 :
                                                  :
Gross, et al. v. Knauf Gips KG, et al.            :
Case No. 2:09-cv-06690 (E.D. La.)                 :
                                                  :
Rogers, et al. v. Knauf Gips KG, et al.           :
Case No. 2:10-cv-00362 (E.D. La.)                 :
                                                  :
Abreu, et al. v. Gebrueder Knauf                  :
Verwaltungsgesellschaft KG, et al.                :
Case No. 2:11-cv-00252 (E.D. La.)                 :
                                                  :
Block, et al. v. Gebrueder Knauf                  :
Verwaltungsgesellschaft KG, et al.                :
Case No. 2:11-cv-2349 (E.D. La.)                  :
                                                  :
Arndt, et al. v. Gebrueder Knauf                  :
Verwaltungsgesellschaft KG, et al.                :
Case No. 2:11-cv-2349 (E.D. La.)                  :
                                                  :
Cassidy, et al. v. Gebrueder Knauf                :
Verwaltungsgesellschaft KG, et al.                :
Case No. 2:11-cv-3023 (E.D. La.)                  :
                                                  :
Vickers, et al. v. Knauf Gips KG, et al.          :
Case No. 2:09-cv-04117                            :
-------------------------------------------------x
```

## THIRD AMENDED SETTLEMENT AGREEMENT
## REGARDING CLAIMS AGAINST THE KNAUF DEFENDANTS IN MDL NO. 2047

4.5.1.7.3.   The Lead Contractor shall work to familiarize the Ombudsmen with each facet of the Remediation Protocol, including but not limited to the scope of work under the Remediation Protocol and the remediation process.

## 4.6.   Establishment and Administration of the Other Loss Fund

4.6.1.   The Other Loss Fund will be a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended. The escrow agreement establishing the Other Loss Fund will be in a form mutually agreed upon by the Parties and approved by the Court.

4.6.2.   The Other Loss Fund will be established through a deposit by the Knauf Defendants of $30 million paid within 30 days of the Court's Order and Judgment approving the Settlement. All funding of the Other Loss Fund shall be in US dollars.

4.6.3.   Any amounts recovered from the Insurer Class Settlement toward payment of claims related to KPT Chinese Drywall shall be deposited 50% into the Remediation Fund and 50% into the Other Loss Fund.

4.6.4.   The Knauf Defendants' contribution to the Other Loss Fund shall be fixed under Sections 4.6.2. The Knauf Defendants shall have no obligation to make further payments into the Fund and shall not be entitled to a refund of any amounts deposited.

4.6.5.   Administrative Expenses of the Other Loss Fund will be paid from interest earned on the amounts deposited. If the interest is insufficient to pay all expenses, the Remediation Fund will pay any amounts necessary to cover the shortfall.

4.6.6.   The Settlement Administrator shall provide to the Court on a monthly basis an accounting of all funds held in the Other Loss Fund. Copies of the monthly accountings shall also be provided to the Knauf Defendants and Settlement Class Counsel. Settlement Class Counsel and the Knauf Defendants shall have the right to audit the Other Loss Fund at their own expense.

4.6.7.   The Settlement Administrator shall retain the services of a certified public accountant, following appointment by the Court, to assist in overseeing and administering this Fund. All decisions by the Special Master with respect to the Other Loss Fund shall be in writing and shall be served on the parties by overnight mail to Settlement Class Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106) and Russ M. Herman (Herman, Herman, Katz & Cotlar, LLP, 820 O'Keefe Avenue, New Orleans, Louisiana 70113), and

## FOURTH AMENDMENT TO SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST THE KNAUF DEFENDANTS IN MDL NO. 2047

This Fourth Amendment to the Settlement Agreement Regarding Claims Against The Knauf Defendants in MDL No. 2047 is entered into by and between the Plaintiffs' Steering Committee in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 and the Knauf Defendants as of the latest date of a Party's signature below.

**WHEREAS,** on February 7, 2013, the Court approved the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Class Settlement");[1]

**WHEREAS,** the Parties desire to further amend the Knauf Class Settlement in ways that do not adversely affect the benefits to which any class member will be entitled; and

**WHEREAS,** in particular, the Parties wish to take account of actual experience in the Pilot Program in connection with the security provisions of the Knauf Class Settlement;

**NOW, THEREFORE,** in consideration of the mutual covenants contained in the Knauf Class Settlement and contained herein and intending to be legally bound, the Parties agree as follows:

1.   Section 4.2.2 of the Knauf Class Settlement is amended as follows:

The Remediation Fund will be established by causing the escrow agent managing the Pilot Program account to transfer all funds in that account to the Remediation Fund.  The same escrow agent as for the Pilot Program shall be used unless later replaced by mutual agreement of the Parties or removed for cause by the Court.  The Remediation Fund shall be replenished in increments of $25 million as of each time the balance of the Fund and the remainder available under the letter of credit is reduced to $25 million.  All funding of the Remediation Fund shall be in US dollars. The Parties may agree, or the Court may order, that there be a lower amount of replenishment upon a showing that the remaining liabilities of the Remediation Fund are less than $50 million, and that there be no replenishment upon a showing that the remaining liabilities of the Remediation Fund are less than $25 million.  Any contributions from other settling parties or assignments by claimants to the Knauf Defendants of their recoveries from the Banner, L&W, InEx and Insurer Class Settlements that are required to be deposited in the Remediation Fund shall be transmitted from the Banner, L&W, InEx and Global Class Settlements directly to the Remediation Fund, which funds shall be treated

---

[1]   Capitalized terms not otherwise defined have the same meaning given to them in the Knauf Class Settlement.



EXHIBIT

1

Page 27 of 47

in all respects the same as other funds contributed to the Remediation Fund.

2.    Section 14.8 shall be amended as follows:

Within 15 days of approval by the Court, the Knauf Defendants shall pay $142.565 million ($142,565,000)[2] into an account as directed by the PSC and approved by the Court to be held pending the Court's determination on any applications for attorneys' fees and costs. The PSC shall be entitled to any interest accruing in the account. The payment of that amount by the Knauf Defendants shall be in full satisfaction of their obligation for any attorneys' fees and costs that the Court might award, including for settlement administration by the PSC. The Knauf Defendants will support the PSC's fee and cost application so long as it does not exceed $160 million. The Knauf Defendants will take no position on the allocation of fees or costs among counsel, except as provided in Paragraph 3 below.

3.    Section 14.8.1 shall be added as follows:

From the amount paid pursuant to Section 14.8, subject to the Court's approval, 2% will be held back for payment for post-settlement and administrative matters to counsel who perform work related to the administering the Settlements. This provision will not result in increased payments by the Knauf Defendants. The Knauf Defendants will support the PSC's application for a 2% hold back.

4.    Section 17 shall be deleted and replaced as follows:

**17.    Security**

17.1. In furtherance of their payment obligations under this Agreement, the Knauf Defendants agree as follows:

17.1.1.    Knauf Gips guarantees performance of all obligations by the Knauf Defendants under this Settlement.

17.1.2.    To secure the obligations of the Knauf Defendants to make payments under this Agreement, the Knauf Defendants shall deliver an irrevocable standby letter of credit (the "**Letter of Credit**"), substantially in the form of Exhibit K, in the amount of $200 million,

---

[2]    The Knauf Defendants previously made two advance payments totaling $17.435 million ($17,435,000). The amount to be deposited equals $160 million less amounts previously advanced.

## L & W Settlement

Settlement areement of USG and L&W
Section 4.1.7
Maximum settlement                    $7.00   per sq ft    including all costs

## CLASS ACTION SETTLEMENT AGREEMENT REGARDING KPT DRYWALL CLAIMS AGAINST USG AND L&W IN MDL NO. 2047
(Subject to Court Approval)

This Settlement Agreement is entered into by and among the Plaintiffs' Steering Committee ("PSC") appointed in *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (E.D. La.), USG Corporation ("USG"), L&W Supply Corporation ("L&W") and the Knauf Defendants as of March 19, 2012.

## RECITALS

WHEREAS, L&W has been named as a defendant in MDL No. 2047 and in state court litigation, and is alleged to be liable for L&W Supplied KPT Chinese Drywall that was installed in Affected Properties;

WHEREAS, USG has been named as a defendant in MDL No. 2047 and in state court litigation, and is alleged to be liable for L&W Supplied KPT Chinese Drywall that was installed in Affected Properties;

WHEREAS, USG and L&W have denied any and all liability for claims arising from the marketing, distribution, supply, sale, delivery and use of L&W Supplied KPT Chinese Drywall that was installed in Affected Properties;

WHEREAS, on or about April 3, 2011, USG and L&W entered into a Settlement Agreement and Release with the Knauf Defendants that contemplated a Class Settlement of L&W Supplied KPT Chinese Drywall Claims against L&W ("Knauf/L&W Settlement");

WHEREAS, on or about December 20, 2011, the PSC and the Knauf Defendants entered into a Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 ("Knauf Class Settlement");

WHEREAS, the Parties desire to effectuate the Knauf/L&W Settlement by way of this Settlement;

WHEREAS, this Settlement is intended to facilitate the Knauf Class Settlement;

WHEREAS, the Parties intend for Participating L&W Class Members to receive the Settlement benefits provided herein, consisting of a Cash Payment toward Remediation Settlement Benefits under the Knauf Class Settlement; and

WHEREAS, the Parties wish to avoid the effort, expense and risk of continued litigation,

4.1.1 and 4.1.2 by the 10th day of each month, for all Approved Claims for which L&W has received the determination by the Lead Contractor or Other Approved Contractor of the square footage of Under Air Area of an Affected Property of a Participating L&W Class Member during the previous month. Within ten (10) days of receipt from L&W, the Knauf Defendants shall deposit an amount equal to the Net KPT Property Cash Payments and/or Net Mixed Property Cash Payments into the Remediation Fund. To qualify as an Approved Claim for which payment is required pursuant to Sections 4.1 and 15, the claimant must meet the requirements of being an L&W Class Member and, if L&W reasonably disputes that it supplied L&W Supplied KPT Chinese Drywall to the Affected Property, must submit proof that L&W delivered the L&W Supplied KPT Chinese Drywall to the Affected Property by a contemporaneous document, such as an invoice or delivery ticket, showing that L&W delivered ½" drywall to the Affected Property after May 17, 2006. A list of properties in the Litigation to which L&W does not dispute that it supplied ½" drywall after May 17, 2006 is attached as Exhibit 5.

4.1.7   The Parties understand and agree that the maximum combined contribution, including attorneys' fees and costs, of L&W and USG for any Affected Property shall be a total of $7 per square foot "Under Air Area" for the Affected Property, including any prior payments made by L&W in connection with the Affected Property. L&W and USG will have no other payment obligations with respect to this Settlement and the Knauf Class Settlement other than $7 per square foot "Under Air Area" for the Affected Properties covered by this Settlement. L&W and USG shall not be liable for any loss in value or other loss or impairment of funds after payment by L&W as required under this Settlement, including any loss incurred in or resulting from the investment or reinvestment of funds, or any costs or attorneys' fees in connection with the administration of the Settlement funds or the Settlement.

5       **Release**

5.1     **Class Release**

5.1.1   As Other Releasees, USG and L&W shall be full beneficiaries of the release provided in Section 5.2 of the Knauf Class Settlement.

5.1.2   The execution of the Settlement shall not be construed as a release of, any claims the Participating L&W Class Members may have against any

## Virginia Settlements

**Revised Proposed Allcation Plan  (Doc # 16806-4)**

|  |  | Nationwide | Builders Mutual | Porter Blaine | Tobin Trading |
|---|---|---|---|---|---|
| #2 | Gross | $ 10,000,000.00 | $ 1,700,000.00 | $ 3,000,000.00 | $ 2,700,000.00 |
| #3 | Attorney fee rate | 32% | 32% | 32% | 32% |
|  | Attorney fees | $ 3,200,000.00 | $ 544,000.00 | $ 960,000.00 | $ 864,000.00 |
|  | Adm costs  5% | $ 500,000.00 | $ 85,000.00 | $ 150,000.00 | $ 135,000.00 |
|  | Reasonable costs per agree |  |  |  |  |
|  | Notice costs | $ 100,272.23 | $ 17,046.28 | $ 30,081.67 | $ 27,073.50 |
|  | Advance payments for costs | $ (50,000.00) | $ - | $ (50,000.00) | $ (50,000.00) |
| footnote 2 of p2 | Funds available for Distribution (settlement fund less attorney fees and costs) | $ 6,300,000.00 | $ 1,071,000.00 | $ 1,890,000.00 | $ 1,701,000.00 |
| #5 | Real property damages  80% | $ 5,040,000.00 | $ 856,800.00 | $ 1,512,000.00 | $ 1,360,800.00 |
| #7 | Other Loss Fund    20% | $ 1,260,000.00 | $ 214,200.00 | $ 378,000.00 | $ 340,200.00 |
|  | **Funding Summary** |  |  |  |  |
|  | Attorney Fees | $ 3,200,000.00 | $ 544,000.00 | $ 960,000.00 | $ 864,000.00 |
|  | Set Aside for Costs | $ 500,000.00 | $ 85,000.00 | $ 150,000.00 | $ 135,000.00 |
|  | Real Property Damages | $ 5,040,000.00 | $ 856,800.00 | $ 1,512,000.00 | $ 1,360,800.00 |
|  | Other Loss Fund | $ 1,260,000.00 | $ 214,200.00 | $ 378,000.00 | $ 340,200.00 |
|  | Advance payment | $ (50,000.00) | $ - | $ (50,000.00) | $ (50,000.00) |
|  |  | $ 9,950,000.00 | $ 1,700,000.00 | $ 2,950,000.00 | $ 2,650,000.00 |

## REVISED PROPOSED ALLOCATION PLAN – FOUR VIRGINIA-BASED SETTLEMENTS
### (Version May 8, 2013)

1. **Eligibility.** To be eligible for an allocation of Settlement Funds, a Class Member must own, have owned, reside in, or have resided in an Affected Property containing defective Chinese drywall ("CDW"), and the Affected Property's builder, installer, supplier, distributor, developer, and/or other entity must have participated in one of the Four Settlements *Relating to Virginia and Certain Other Remaining Claims.*

2. **Settlement Amounts.** The Settlement Funds available for allocation and distribution shall be: $10,000,000 for the Nationwide Insureds Settlement ("Nationwide Fund"); $1,700,000 for the Builders Mutual Insureds Settlement ("Builders Mutual Fund"); $3,000,000 for the Porter-Blaine/Venture Settlement ("Porter-Blaine/Venture Fund"); and $2,700,000 for the Tobin Trading, Inc., Builders Plaster & Drywall, LLC, JMM Drywall Co. LLC, and Participating Insurers Settlement.[1] These funds shall be referred to collectively as the "Settlement Funds."

3. **Set Aside for Attorney's Fees and Costs.** The Parties recognize that the final determination of entitlement to attorneys' fees and costs, and the amount of any such award shall be made by Judge Eldon E. Fallon. Pending a determination of the entitlement to and amount of any awards of attorneys' fees and costs, the Parties agree to set aside a portion of the Settlement Amounts from each of the Settlement Funds to satisfy any such awards. Thirty-two percent (32%) of each of the Settlement Funds shall initially be set aside for an award of attorneys' fees ("Attorneys' Fees Set Aside").

    For all Affected Properties, the maximum allowable award of attorneys' fees from the Attorneys' Fees Set Aside shall be thirty-two percent (32%). No more than 15% of each Settlement Amount shall be allocated to common benefit fees and costs. All parties reserve their rights to object to or oppose any motions or petitions seeking an award of attorneys' fees, common benefit fees, and/or costs for any Affected Property.

    Following the submission of all claims forms, and motions or petitions seeking an award of fees and/or costs, along with any objections thereto, the Court will determine the appropriate amount of attorneys' fees and/or common benefit fees awarded for each Affected Property from the Attorneys' Fees Set Aside. At that time, the Court will also establish a procedure for the return of any "Applicable Overages," *i.e.,* the difference between the thirty-two percent set aside and the amount of attorneys' fees and/or common benefit fees awarded for each Affected Property.

    All costs of administering the allocation of the Settlement Funds and the cost of notice to Class Members will be paid out of the Settlement Amounts.

---

[1] The funds from the $2,700,000 Tobin Trading, Inc., Builders Plaster & Drywall, LLC, JMM Drywall Co. LLC, and Participating Insurers Settlement will be divided into two funds: $1,700,000 on behalf of installers ("Installers Fund") and $1,000,000 on behalf of Tobin Trading Inc. and Phillip Perry ("Tobin Trading Fund").

1

4. **Class Representatives' Enhancement Awards**. The Lead Plaintiffs in each of the Class Settlements, including the Germano intervenors, may receive an enhancement of up to $10,000.00 from their respective funds for serving as Class Representatives. Lead Plaintiffs devoted significant additional time and effort to secure these Settlements for all Claimants.

5. **Real Property Payments**. Eighty percent (80%) of the Funds Available for Distribution[2] in each of the Settlement Funds shall be set aside to compensate or reimburse Class Members for "Real Property Damages"[3] ("Real Property Payments"). Class Members shall be entitled to recover Real Property Payments from each Settlement in which their respective builders, installers, suppliers, distributors, developers, and/or other entities participated. Real Property Payments shall only be recoverable once per Affected Property, and shall be paid to the person or entity that retains the right to recover for such claims against the Participating Defendant(s). A buyer who purchased Affected Property after the seller disclosed the existence of CDW shall not be entitled to recover a Real Property Payment. Real Property Damages will be distributed to Class Members in proportion to the square footage of their Affected Properties, outlined herein at Section 8.

6. **Real Property Funds Qualifying Procedures**. In order to qualify for benefits of the Real Property Funds, a Class Member must submit:

   a. Physical proof, such as photographic evidence, sales or delivery records, inspection reports, or other proof satisfactory to the Special Master that the property has CDW. The Special Master shall be trained on the identification of CDW;

   b. Proof that CDW was installed, supplied, distributed, or otherwise within the legal responsibility of all Participating Defendants from whom the Class Member seeks to recover;

   c. Proof of corrosion or other evidence that the CDW was reactive;

   d. A floor plan of the Affected Property with dimensions;

---

[2] "Funds Available for Distribution" refers to the amount remaining in each Settlement Fund after attorneys' fees and costs, administration costs, and Class Representatives' Enhancement Awards.

[3] Class Members who may recover from the Real Property Funds include: (1) owners of Affected Property, for costs and expenses associated with remediation (including the removal of the CDW from the Affected Property and repairing or replacing affected building materials and fixtures in the Affected Property, the relocation of the property owners' belongings during the repair work, and, if necessary, obtaining comparable alternative living arrangements for the homeowners during the repair work); (2) sellers of Affected Properties who sold un-remediated Affected Properties at a diminished value after disclosure of the existence of CDW to the buyer; and (3) former owners of Affected Properties who lost those properties in foreclosure but who continue to owe mortgage payments for amounts in excess of the auction value of their Affected Properties. A buyer who purchased an Affected Property after the seller disclosed the existence of CDW shall not be entitled to recover Real Property Damages.

2

    e.  An owner affidavit which includes a certification that the evidence provided comprises all of the available documentation to demonstrate that the property contained or contains CDW;

    f.  If the Affected Property has already been remediated, proof of actual remediation expenses, including clearance/environmental testing;

    g.  If applicable, proof, such as pleadings or other court documents, that the Class Member filed his or her claims within the Applicable Statute of Limitations;[4]

    h.  For former owners of Affected Properties who lost those properties through (a) sales at diminished value or (b) foreclosure, who continue to owe mortgage payments for amounts in excess of the auction value of those properties, any documents required under Section 7(a)(ii) and 7(a)(iii) as applicable;

    i.  Any additional information as may be required by the claim form or Special Master; and

    j.  Claims to the Special Master by a date to be established by the Court. Untimely submitted claims shall be rejected unless the Court extends the deadline for good cause shown.

7. **Other Loss Funds.** Twenty percent (20%) of the Funds Available for Distribution in each of the Settlement Funds shall be set aside to compensate or reimburse Class Members for Other Losses. Class Members shall be eligible to recover from the Other Loss Funds in each Settlement in which one or more of their respective builders, installers, suppliers, distributors, developers, and/or other entities participated.

    a.  The Other Loss Funds will be used to provide the following benefits:

        i.  **Pre-Remediation Alternative Living Expenses.** For Class Members, alternative living expenses arising from the need to vacate the Affected Property incurred prior to remediation as a result of property damage caused by CDW. Other Loss shall not include alternative living expenses during remediation, as that is reimbursed by the Real Property Fund.

            1.  To obtain benefits under this Section, a Class Member must establish that the pre-remediation alternative living expenses were substantially caused by CDW.

            2.  To obtain benefits under this Section, the Class Member must submit the following:

                a.  Physical proof such as photographic evidence or inspection reports satisfactory to the Special Master that the Affected Property has CDW, proof of corrosion, or proof that the CDW was reactive prior to the Class Member vacating the Affected Property;

                b.  Proof that CDW was installed, supplied, distributed, or otherwise within the legal responsibility of all Participating Defendants from whom the Class Member seeks to recover;

---

[4] The Applicable Statute of Limitations refers to the time within which a Class Member had to file and serve his or her claims arising from CDW under the laws of the state in which his or her Affected Property is located.

3

Villa Lago (Coastal Construction - Renaissance Commons)
Contributions to be made

**per Settlement Agreement (doc 16741-2)  section 2.1**

| | | |
|---|---|---|
| Coastal Construction | $ | 500,000.00 |
| Arch (solely as the CGL carrier) | $ | 2,000,000.00 |
| Everest | $ | 2,500,000.00 |
| Allied World | $ | 650,000.00 |
| Lexington | $ | 1,500,000.00 |
| Precision | $ | 50,000.00 |
| | $ | 7,200,000.00  **all to be contributed to Remediation Exhibit A third page** |

| | | | |
|---|---|---|---|
| RCR Holdings II | $  4,800,000.00 | $ | 1,529,189.80  Contributed to Remediation **Exhibit A second page** |
| | | $ | 1,180,258.62  Soft costs for Plaintiffs **Exhibit A second page** |
| | | $ | 2,090,551.58  Attorney fee(2,090,551.58 with $380,946.00 for costs to condo developers) (split 17/32 or 53% of $1,709,605.51 = $908,227.96  to common benefit & 801,377.62 Other atty fees |
| | | $ | 4,800,000.00 |

| | |
|---|---|
| Grand total | $ 12,000,000.00 |

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | ) | |
| DRYWALL PRODUCTS | ) | MDL NO. 2047 |
| LIABILITY LITIGATION | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | SECTION: L |
| | ) | |
| *Hobbie, et al. v.* | ) | JUDGE FALLON |
| *RCR Holdings II, LLC, et al.*, | ) | |
| | ) | |
| No. 10-1113 | ) | |
| | ) | MAG. JUDGE WILKINSON |

### SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST COASTAL CONSTRUCTON OF SOUTH FLORIDA, INC. RELATED TO VILLA LAGO AT RENAISSANCE COMMONS IN MDL NO. 2047

This settlement is entered into by and between Plaintiff, Wendy Lee Hobbie, on behalf of herself, the 181 named plaintiffs joined in the Second Amended Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 (E.D. La.) (Fallon, J.), (the "*Hobbie* Plaintiffs"), the other owners of 67 condominiums located in the Villa Lago at Renaissance Commons not owned by RCR Holdings II, LLC, (the "Absent Class Members") and RCR Holdings II, LLC (collectively "Plaintiffs"); the Villa Lago Condominium Association at Renaissance Commons, Inc.; and the following Defendants and Insurers: Coastal Construction Company of Palm Beach, Inc., Coastal Construction of South Florida, Inc. d/b/a Coastal Condominiums, and Coastal Construction Group of South Florida, Inc.; Arch Insurance Company, as issuer of a surety bond with Coastal as Principal with regard to the Villa Lago project; Precision Drywall and its related insurers (including, but not limited to Mid-Continent Casualty Company and Old Dominion Insurance Company to the extent of policies issued to Precision) and Precision's surety bond on

1.54.   "**Settling Parties**" shall mean Plaintiff, Wendy Lee Hobbie, on behalf of herself, the 181 named plaintiffs joined in the Second Amended Complaint styled *Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 (E.D. La.) (Fallon, J.), the other owners and occupants of 67 Residences located in the Villa Lago at Renaissance Commons, not owned by RCR, all current and prior owners and tenants of Residences or RCR Rental Units at Villa Lago at Renaissance Commons; Participating Class Members; RCR; the COA; Coastal, Arch Surety, Precision, Banner, Knauf and the Participating Insurers.

1.55.   "**Villa Lago**" shall mean the condominium development called Villa Lago at Renaissance Commons located in Boynton Beach, Florida

1.56.   "**Villa Lago Settlement Fund**" shall include the Coastal Group Settlement Contribution and funds allocated to the Villa Lago development in the Global Settlement with Precision, in the global Banner Settlement, and with funds from the RCR Settlement, as indicated in Section 2.1 below.

2.   **Settlement Fund**

2.1   Subject to the provisions herein, and in full, complete and final settlement of the *Hobbie* action, the Actions, and the Litigation as provided herein, the Coastal Group agrees to pay Plaintiffs the sum of $7,200,000.00 ("the Coastal Group Settlement Contribution") in full and final settlement of any and all claims arising out of the installation of Chinese Drywall at Villa Lago. The Coastal Group Settlement Contribution shall be funded as follows:

| | |
|---|---|
| Coastal | $500,000 |
| Arch, solely as the CGL carrier | $2,000,000 |

15

| | |
|---|---|
| Everest | $2,500,000 |
| Allied World | $650,000 |
| Lexington | $1,500,000 |
| Precision | $50,000 (outside of the Global Settlement with Precision) |

The Coastal Group Settlement Contribution will be combined with funds allocated to the Villa Lago development in the Global Settlement with Precision, in the global Banner Settlement, and with funds from the RCR Settlement to create the Villa Lago Settlement Fund, as follows:

Into the Villa Lago Settlement Fund:

a.   All of the Coastal Group Settlement Contribution;

b.   All amounts allocated to Villa Lago in the Global Settlement with Precision;

c.   All amounts allocated to Villa Lago in the global Banner Settlement; and

d.   All of the RCR Settlement.

The Villa Lago Settlement Fund will be distributed as shown on the spreadsheet attached hereto as EXHIBIT "A," as follows:

1.   From the Villa Lago Settlement Fund to the Remediation Fund:

a.   All of the Coastal Group Settlement Contribution;

b.   All amounts allocated to Villa Lago in the Global Settlement with Precision;

16

# Villa Lago/ Renaissance Commons Settlement

| Item | Non-Knauf Total | |
|---|---|---|
| Units | 134 Non-Knauf and 27 mixed | |
| Remediation Funding (as agreed by Knauf and Moss) | $ 12,240,000.00 | |
| Soft Cost fund for units that are owner occupied and entitled to $8.50/sf (12 Mixed, 43 Non-KPT) | $ 426,562.52 | |
| Soft Cost fund for units that are rental units and entitled to 3 mos. rental (15 Mixed, 91 Non- KPT) | $ 282,906.10 | |
| Soft Costs - units that are rental units for economic losses against Other Loss Funds- except for Lost Rents) | $ - | |
| Clearance Certificates | $ 50,000.00 | |
| Payments to Unaffected Units | $ 75,000.00 | |
| Sub-Total | $ 13,074,468.62 | |
| Attorney Fees (app. 20%) | $ 2,670,960.63 | |
| Legal Costs (50% of $761,892, with Knauf part paid in Knauf fee deal.) | $ 380,946.00 | p41 |
| **Total Needed for Remediation and Payments to Plaintiffs** | **$ 16,126,375.25** | |

**Margin notes by
Philip Garrett**

## Funding Sources for Non-Knauf

| Item | Total |
|------|-------|
| RCR Settlement | $ 4,800,000.00 |
| Projected Banner Remediation Allocation (assuming 250 units of 4500 units * 68% of $53M) | $ 2,002,220.20 |
| Projected Banner Fee Allocation (assuming 250 units of 4500 units * 17% of $53M- ignores any common benefit fee) | $ 500,555.05 |
| Projected Precision Remediation Allocation (assuming 90% of * 68% of $1.9M contribution) | $ 1,162,800.00 |
| Projected Precision Fee Allocation (assuming 2% of 23.04M in fees from Global- 17% of $53M- ignores any common benefit fee) | $ 460,800.00 |
| Sub-Total | $ 8,926,375.25 |

### Needed from Coastal            $   7,200,000.00

```
  500,555.05
+ 460,800.00
  961,355.05  (A)
```

## Payments to Plaintiffs

| Remediation | Paid |
|-------------|------|
| Soft Costs to Plaintiff for Non-Knauf and Knauf Units (excludes rental income from Knauf on rented units and Other Loss fund claims against Knauf, Precision and Banner in the separate settlements) | $ 1,180,258.62 |
| Fees and Costs | $ 3,051,906.63 |
| Cash Payments Needed | $ 4,232,165.25 |
| RCR - Plaintiffs Have Plaintiff projected fee recovery from Global and Banner | $ (4,800,000.00) |
|  | $ (961,355.05) |
| **To be Contributed from RCR Settlement to Remediation** | $ (1,529,189.80) |

```
  3,051,906.63
-   961,355.05
  2,090,551.58   Atty fees (C)
p40 - 380,946.00  Developer costs
    908,227.96   17/32  Common Benefit Fee
    801,377.62        Attorney fee
Pd by RCR   (B)

Difference of $567,834.75 (A)

Sum of  (A) $1,529,189.80
```

| Funding for Remediation | | |
|---|---|---|
| **Total Needed** | $ | 24,240,000.00 |
| Cost of Certificates for all Units | $ | 91,750.00 |
| Knauf Remediation | $ | (12,000,000.00) |
| Knauf Soft Costs | $ | (395,790.00) |
| KPT Certificates | $ | (41,750.00) |
| Banner Remediation (assuming 250 units of 4500 units * 68% of $53M) | $ | (2,002,220.20) |
| Precision Remediation (assuming 90% of * 68% of $1.9M contribution) | $ | (1,162,800.00) |
| Paid by RCR Settlement | $ | (1,529,189.80) |

**Total Paid by Coastal towards Remediation**   $       7,200,000.00   To be paid toward Remediation


Paid by RCR Holdings
(A)   $1,529,189.80   Remediation funding
(B)   $1,180,258.62   Soft costs to plaintiffs
(C)   $2,090,551.58   Attorney fees
      $4,800,000.00

# LEVIN, FISHBEIN, SEDRAN & BERMAN
*Counsellors at Law and Proctors in Admiralty*

ARNOLD LEVIN
MICHAEL D. FISHBEIN
HOWARD J. SEDRAN
LAURENCE S. BERMAN
FRED S. LONGER ✦
DANIEL C. LEVIN
CHARLES E. SCHAFFER
AUSTIN B. COHEN ✦
MICHAEL M. WEINKOWITZ ✦ †
CHARLES C. SWEEDLER ✦
MATTHEW C. GAUGHAN ✦ †
KEITH J. VERRIER ✦
BRIAN F. FOX

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697
www.lfsblaw.com

TELEPHONE (215) 592-1500
FACSIMILE (215) 592-4663

OF COUNSEL:
SANDRA L. DUGGAN
STEWART M. WELTMAN ✦✦

✦ also admitted in New Jersey
† also admitted in New York
✦✦ admitted in Illinois only

August 22, 2013

**VIA E-MAIL**

Gary E. Mason, Esquire
Daniel Bryson, Esquire
**WHITFIELD, BRYSON & MASON, LLP**
1625 Massachusetts Ave., N.W.
Suite 605
Washington, D.C. 20036

Christopher L. Coffin, Esquire
P.O. Drawer 71
Plaquemine, Louisiana 70765

Gregory S. Weiss, Esquire
Leopold Kuvin, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410

Joel R. Rhine, Esquire
Lea, Rhine, Rosbrugh & Chleborowicz,
314 Walnut Street
Wilmington, NC 28401

RE:   **Chinese Drywall Litigation**

Gentlemen:

This will confirm the fee distribution in connection with Villa Lago. It applies to all plaintiff parties represented. Below sets forth our position which you have agreed to. Obviously, there can be no distribution of any monies until our joint MDL petition for counsel fees and costs is presented to the Court. This petition will deal with entitlement as well as the allocation amongst handling attorneys and the common benefit group of attorneys. Judge Fallon will be the sole arbiter in connection with the same. The Villa Lago attorney fee and cost fund must be allocated in the following manner:

Knauf--Fees derived from the $160 million KPT Atty Fee fund.

NON-KNAUF sources of money, you have or are expecting/projecting the following amounts:

Banner--$2,002,220.20. All funds are subject to paragraph 14.7 of Banner Settlement. Distribution to the Villa Lago remediation will be reduced by the fees and costs set forth in 14.7 of the Banner settlement.

LEVIN, FISHBEIN, SEDRAN & BERMAN

Gary E. Mason, Esquire
Daniel Bryson, Esquire
Gregory S. Weiss, Esquire
Joel R. Rhine, Esquire
Christopher L. Coffin, Esquire
August 22, 2013
Page 2

Global--$1,162,800.00.   All fees and costs awarded by the court pursuant to Paragraph 16.6 of the Global Settlement Agreement

Coastal and RCR--$12,000,000.   The Parties agreed to an attorney fee/cost reimbursement award of $2,050,551.58 of the amount based upon the opt-out portion attributable to the global settlement and the additional monies recovered from the opt-out entities.

As stated above, all fees and costs on individual retainer agreements and common benefit fees are covered by the Knauf, Banner and Global settlement agreements. They will be distributed only upon order of the Court after filing of a petition relative to the same.

The Coastal and RCR settlements on the fee/cost issue are subject to a voluntary payment of 17/32 of the fee/cost award (17% of the usual 32% in fees and costs) pursuant to the Court's Order of April 13, 2011 at Rec.Doc. 8545, for a total of $1,110,605.53. The PSC's adjustments were made to assure the preservation of the PSC's negotiated Banner settlement.

WE INTEND TO PRESENT THIS LETTER TO THE COURT IN CONNECTION WITH THE VILLA LAGO SETTLEMENT. NO DISTRIBUTION CAN BE MADE OF ANY ATTORNEYS' FEES OR REIMBURSEMENT OF COSTS IN CONNECTION WITH THE VILLA LAGO, KNAUF, BANNER, AND GLOBABL SETTLEMENTS WITHOUT COURT APPROVAL.

Sincerely

ARNOLD LEVIN

dcm

cc;   Russ M. Herman, Esquire
Leonard A. Davis, Esquire
Fred S. Longer, Esquire

## Debbie Murphy

| | |
|---|---|
| **From:** | Lenny Davis [LDAVIS@hhklawfirm.com] |
| **Sent:** | Monday, November 11, 2013 11:04 AM |
| **To:** | Arnold Levin; Monica Lord |
| **Subject:** | FW: CDW - Villa Lago |
| **Attachments:** | DOC082213.pdf |

Leonard A. Davis
Attorney at Law
Herman, Herman & Katz, L.L.C.
Herman  Gerel LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
504-581-4892
504-561-6024(fax)

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

CONFIDENTIAL ATTORNEY WORK PRODUCT

**From:** Debbie Murphy [mailto:DMurphy@lfsblaw.com]
**Sent:** Thursday, August 22, 2013 9:43 AM
**To:** 'Gary Mason'
**Cc:** Russ Herman; Lenny Davis; Daniel Bryson; Joel Rhine; Greg Weiss; ccoffin@pbclawfirm.com; Fred Longer
**Subject:** RE: CDW - Villa Lago

From Arnold Levin –

See attached letter.

Debbie Murphy
Levin, Fishbein, Sedran & Berman
Counsellors at Law and Proctors in Admiralty
510 Walnut Street - Suite 500
Philadelphia, PA 19106-3697
Tele: 215-592-1500 - Fax: 215-592-4663
www.lfsblaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Levin, Fishbein, Sedran & Berman and may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, please delete the message and understand that any dissemination, distribution or copying is strictly prohibited.

| Subject: | RE: Renaissance Commons: Villa Lago |
|---|---|
| From: | Gary Mason (GMason@wbmllp.com) |
| To: | pgarrett@garrettco.com; |
| Cc: | mpipes@barrassousdin.com; LDavis@hhkc.com; alevin@lfsblaw.com; GWeiss@mrachek-law.com; |
| Date: | Tuesday, December 3, 2013 1:13 PM |

1. The $7.2 million all goes to the Knauf Settlement Remediation Fund (p. 16 of SA).

2. Re $1,180,258,62. This is not just for tenants. Actually, it is not for tenants at all. These are soft costs to be distributed to Knauf and non-Knauf units owners consistent with the benefits offered to the Knauf unit owners. $8.50 sq foot (four different unit model with known square footage) or three months lost rent (we have estimated that for all commercial units) I initiated discussions with Jacob Woody about the distribution of these funds, but he has not followed up with me. It is very important that we have a distribution plan with Brown Greer for distribution of these funds to non-Knauf class members. We will need these funds to pay out as soon as we begin remediation of non-Knauf units. The numbers are based on estimates and due to passage of time units may have moved from owned to foreclosed, etc.. Amounts may have to be pro-rated. I would really like to meet with BrownGreer about this. Next week would be great or in connection with the 12/19 status conference.

3. $1,529,189.80 to Remediation Fund. Agree.

4. $380,946. This is an agreed amounts which can and will be substantiated. Roughly $125,000 was incurred for CDW inspections; $600,000 spent by RCR for self-remediation (painting). I am working on a petition for reimbursement of these expenses.

5. Common benefit fee. Agree.

6. Attorney Fee. Agree

---

**From:** Philip Garrett [mailto:pgarrett@garrettco.com]
**Sent:** Tuesday, December 03, 2013 1:56 PM
**To:** Gary Mason
**Cc:** Minor Pipes (mpipes@barrassousdin.com); Lenny Davis; Arnold Levin
**Subject:** Villa Lago

In reviewing the numbers for Villa Lago I want to anticipate the court's
questions and try to have answers.

The $7.2 million simply all goes to Remediation (assume it is paid to Knauf or
a fund for remediation)

Of the $4.8 million

        $1,180,258.62is for soft costs to tenants (What are the requirements
or people to receive these funds?)

        $1,529,189.80 to remediation fund (same as $7.2 million above)

Page 1 of 2

$   380,946.00 Who get these funds and do they need substantiation of costs to receive or is it an agreed amount

$   908,227.96   Common benefit attorney fee

$   801,377.62   Attorney fee

$4,800,000.00

So assuming I am correct on the remediation monies then help me out on the $1,180,25.62 and the $380,946.00.

I will be checking emails but out of pocket all day tomorrow.

Thanks

Philip A. Garrett, CPA
117 Fairgrounds Blvd

Bush, La 70431

office - 985-746-9165
 ell - 985-635-1500
pgarrett@garrettco.com

IN GOD WE TRUST