UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

## Final Order

Pending before this Court is an appeal of the Special Master's judgment in the Drywall litigation involving a dispute between William and Katherine Couturier ("the Couturiers"), and Knauf as to the appropriate lump sum payment for the Couturiers' home at 26039 Pecan Road, Pass Christian, Mississippi. Knauf contends that pursuant to the terms of the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 ("Class Settlement Agreement"), the Couturiers are entitled to $17,017.00, which Knauf has already paid. The Couturiers dispute the submitted lump sum and argue that they are entitled to an additional $23,023.00, for a total of $40,040.00. The Special Master found in favor of the Couturiers, awarding them the additional $23,023.00. Knauf timely appealed the Special Master's judgment, pursuant to paragraph 4.2.8 of the Class Settlement Agreement. The Court has reviewed the record, the Special Master's judgment, and the applicable law, and it now issues this order. In doing so, this "Court's decision on any objections [are] final, with no further appeals permitted." (Rec. Doc. 16407, Section 4.2.9).

### I. BACKGROUND

The Couturiers' home, a two-story structure with the living area located on the second floor, was found to contain defective KPT drywall manufactured by Knauf. In response to the

damage caused to the home from the KPT drywall, the Couturiers entered into the Class Settlement Agreement with Knauf that "provides property owners whose properties contain KPT Chinese Drywall with the option to remediate their properties, or in lieu of remediation, [to accept] a cash payment." (Exhibit E). The Couturiers selected the Program Contract Remediation option set forth in Section 4.3.1 of the Class Settlement Agreement. This option requires Knauf to pay the Lead Contractor to remediate the property and to pay the residential property owner a lump sum for other covered expenses, which is calculated pursuant to Sections 4.3.1.1-4.3.1.3 of the Class Settlement Agreement. (Exhibit I). In particular, the relevant terms controlling over this dispute provide that Knauf will pay residential owners:

> 43.1.1 **Lump Sum Payment**
> 4.3.1.1.1 For KPT Properties that are less than or equal to 3,500 square feet "under air," as determined by the Lead Contractor or Other Approved Contractor and as set forth in the Sample Contractor-KPT Property Owner Agreement attached as an exhibit to the Remediation Protocol ("Under Air Area"), a single payment ("Lump Sum Payment") of $8.50 per square foot of the Under Air Area.
> 4.3.1.1.2 For KPT Properties that have an Under Air Area greater than 3,500 square feet, a Lump Sum Payment of $10.00 per square foot of the Under Air Area.
> 4.3.1.2.2 For KPT Properties that have an Under Air Area greater than 3,500 square feet, a single, one time Delay Period Payment of $1.50 per square foot of Under Air Area. (*Id.*)

Pursuant to the Class Settlement Agreement, on March 13, 2012, the Lead Contractor, Moss and Associates ("Moss"), inspected the Couturiers' property and subsequently issued a "Bid Scope" reflecting its approximation of the home's "under air" square footage, which Moss determined to be 4,004 square feet. (*See* Exhibit F). On July 26, 2012, the Couturiers, Moss, and Knauf signed a Work Authorization Agreement identifying the work necessary to remediate the

2

4,004 square feet of the Couturiers' home deemed under air.[1] Accordingly, Moss's under air square footage calculation set forth in the Work Authorization Agreement triggered the application of Section 4.3.1.1.2 of the Class Settlement Agreement, entitling the Couturiers to a lump sum of $10.00 per square foot of under air area, totaling $40,040.00. (*See* Exhibit I). However, after the parties entered into the Work Authorization Agreement, Knauf discovered that Moss mistakenly included the first floor of the Couturiers' home in its calculations of the home's total under air square footage. Knauf therefore adjusted Moss's original under air square footage calculation of 4,004 square feet to represent what it considered to be the more accurate under air square footage calculation of 2,002 square feet. Subsequently, Knauf submitted to the Couturiers a lump sum payment of $17,017, at $8.50 per square foot under air, as calculated pursuant to Section 4.3.1.1.1 of the Class Settlement Agreement. (*See* Exhibit I).

On August 15, 2013, the parties submitted the matter for binding mediation. The Special Master found that the Couturiers were entitled to the larger lump sum payment as stipulated in the Work Authorization Agreement and thus, ordered Knauf to issue an additional $23,023.00 for a total of $40,040.00. Knauf appealed the Special Master's Order. (*See* Mediator's Opinion, Judgment, and Decree).

## II. PRESENT APPEAL

Knauf objects to the Special Master's ruling entitling the Couturiers to the higher lump sum payment. In particular, Knauf sets forth two theories justifying reformation of the Work Authorization Agreement. First, Knauf requests that this Court allow for reformation of the Work Authorization Agreement as it pertains to the under air square footage estimate on the theory of mutual mistake. (Exhibit 3). Alternatively, Knauf argues that the theory of unilateral mistake

---

[1] The first page of the Work Authorization Agreement provided the following statement, in bold face type: "Under Air Square Footage of Home: 4004." (Exhibit F).

3

supports reformation of the contract because the Couturiers knew of the mistake and failed to rectify it. (*Id.*) As such, Knauf seeks to have this Court overturn the Special Master's judgment and allow it to modify the contract terms to reflect what it believes to be the accurate representation of the under air square footage of the Couturiers' home.

Mississippi law controls this contractual matter, pursuant to Section XII.K. of the Demonstration Remediation Agreement. (*See* Exhibit H). A mistake in an agreement's terms will justify contract reformation when there is a mutual mistake, or when there is a "unilateral mistake in combination with fraud or inequitable conduct on the part of the benefitting party." *McCoy v. McCoy*, 611 So. 2d 957, 961 (Miss. 1992). Reformation is designed to "grant to each of the parties exactly what they intended when their agreement was made." *U.S. Fid. & Guar. Co. v. Gough*, 289 So. 2d 925, 927 (Miss. 1974). In determining whether reformation is the appropriate remedy, this Court evaluates both theories in turn.

First, this Court considers whether Knauf is entitled to contract reformation due to mutual mistake. A mutual mistake exists when "the agreement in its written form does not express what was really intended by the parties." *In re Estate of Summerlin*, 989 So. 2d 466, 481 (Miss. Ct. App. 2008) (citation omitted). The mistake "must be in the drafting of the instrument, not in the making of the contract." *Johnson v. Consol. Am. Life Ins. Co.*, 244 So. 2d 400, 402 (Miss. 1971). A court will grant the equitable remedy of reformation upon a finding of mutual mistake. *Bert Allen Toyota, Inc. v. Grasz*, 909 So. 2d 763, 768 (Miss. Ct. App. 2005) (citing *Townsend v. Townsend*, 859 So. 2d 370, 376 (Miss. 2003)). A party seeking reformation of an erroneous provision in a contract on the grounds of mutual mistake must establish "to the court's satisfaction that both parties intended something other than what is reflected in the instrument in question." *Brown v. Chapman*, 809 So. 2d 772, 774 (Miss. Ct. App. 2002). In particular, the party seeking relief must

4

prove the existence of mutual mistake beyond a reasonable doubt.[2] *Hartford Fire Ins. Co. v. Assocs. Capital Corp.*, 313 So. 2d 404, 409 (Miss. 1975).

For example, the Mississippi Court of Appeals in *Bert Allen Toyota, Inc. v. Grasz* refused to reform an agreement containing a computational error between a car dealership and a customer for the sale of a late model vehicle because the car dealer failed to prove mutual mistake. 909 So. 2d at 769. The car dealer argued that mutual mistake existed because both the dealership and customer relied on the miscalculation provided by the dealership's computer in drafting the agreement for the sale of the vehicle, resulting in a purchase price that was lower than originally negotiated by the parties. *Id.* at 769. In rejecting this reasoning, the court held that the buyer, relying on the "bottom line" purchase price reflected in the written agreement, was not responsible for a computational error that the dealership could have detected by using reasonable care. *Id.*

Here, Knauf has failed to meet its burden of proving that the inclusion of the under air square footage term described in the Work Authorization Agreement was the result of mutual mistake. Assuming that Moss's inclusion of the first floor in the overall under air square footage estimate constitutes a mistake, the alleged mistake occurred in the making of the contract, not the drafting of the contract. In fact, no inadvertent drafting error exists, as the square footage calculation provided in Moss's Bid Scope mirrors the estimate provided in the Work Authorization Agreement. Furthermore, like the Mississippi Court of Appeals found in *Bert Allen Toyota, Inc.*, the Couturier's and Knauf were not operating under a mutual mistake of fact because Knauf "relied upon and acted on [its own Lead Contractor's] inspection and examination of the [home] in determining its value [and the Couturiers] neither contributed to, nor induced the mistake . . . nor had any knowledge that [Knauf] was laboring under any mistake." *Terre Haute Cooperage v.*

---

[2] Mississippi Courts have also required clear and convincing evidence to reform a contract on the basis of mutual mistake. *See, eg., Bert Allen Toyota*, 909 So. 2d at 769.

5

*Branscome*, 35 So. 2d 537, 539-40 (Miss. 1948), *see also Bert Allen Toyota, Inc.*, 909 So.2d at 769. In particular, the Couturiers did not prepare the bid scope, assist in calculating the under air square footage, or draft the agreement. Any alleged mistake was due to Knauf's failure to use reasonable care in verifying its lead contractor's final estimate. The Mississippi Supreme Court has held that "no ground for equitable relief is shown by the mere fact that the party invoking the aid of the court has made an improvident contract." *Butterfield Lumber Co. v. Guy*, 46 So. 78, 79 (Miss. 1908). Thus, reformation of the contract is not appropriate in this circumstance because the alleged mistake occurred in the making of the contract and because the alleged mistake, which could have been avoided by reasonable diligence, was unilateral in nature.

Second, the Court examines whether Knauf is entitled to contract reformation because of its unilateral mistake. Mississippi law permits reformation of the contract when the unilateral mistake of one party is "accompanied by evidence of some sort of fraud, deception, or other bad faith activity by the other party that prevented or hindered the mistaken party in the timely discovery of the mistake." *Chapman*, 809 So. 2d at 774 (citing *McCoy v. McCoy*, 611 So. 2d 957, 961 (Miss. 1992)). The party seeking reformation must prove unilateral mistake coupled with fraud beyond a reasonable doubt. *Hartford Fire Ins. Co.*, 313 So. 2d at 409. In particular, even if the testimony of the party seeking reformation "is taken as true, that, standing alone, does not entitle [that party] to relief since that constitutes only a unilateral mistake." *Chapman*, 809 So. 2d at 775. Rather, the party seeking reformation has an "additional burden of presenting evidence to convince the [Court] that [the] mistake was accompanied by some bad faith dealing on the part of [the other party]." *Id.*

Here, Knauf fails to meet its burden. Knauf relies on an inspection report prepared by an outside consultant and submitted by the Couturiers at the outset of the litigation, which estimated

6

that the under air square footage of the house totaled 2,000 square feet, as evidence of the Couturiers knowledge of Moss's under air square footage calculation error. (Exhibit 3).Knauf argues that the Couturiers acted in bad faith by failing to inform Knauf of the discrepancy. (*Id.*) However, Knauf does not provide evidence that the Couturiers knew what "under air" meant in respect to calculating the total lump sum payment. Furthermore, regardless of the differences between the independent consultant's estimate and Moss's estimate, the Class Settlement Agreement only authorizes the "Lead Contractor or Other approved Contractor" to determine the under air square footage calculation. (Exhibit I). The Couturiers' lack of expertise in construction and remediation, together with the requirement that Moss's estimate provide the basis for the lump sum payment, creates a reasonable assumption that the Couturiers were merely relying on Knauf's experience in determining the accurate under air square footage of the property, and that any differences in the estimate would be resolved in favor of the Lead Contractor's determination. Thus, reformation is not appropriate in this circumstance because Knauf has not met its burden in proving inequitable conduct on the part of the Couturiers.

## III. CONCLUSION

For the foregoing reasons, this Court upholds the Special Master's judgment in favor of the Couturiers. IT IS ORDERED that Knauf reimburse the Couturiers an additional $23,023.00 for a total of $40,040.00.

New Orleans, Louisiana, this 20th day of November, 2013.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE