Mr. & Mrs. Wilfred J. Duplessis Jr.
4727 Press Drive
New Orleans, LA 70126-4709
January 5, 2014

Joseph Bruno, Attorney
Bruno & Bruno
855 Baronne St.
New Orleans, LA 70113



RECEIVED
JAN 08 2014
CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON

Subject: Remediation of Residence
Address: 4727 Press Drive, N. O. LA

Dear Attorney Bruno:

We write to you today as victims, not only of Chinese Drywall, but also as victims of the Demonstration Remediation Agreement. We signed a Work Authorization Agreement estimating a Move-Out-Date (i.e. February 7, 2013) and an estimated Substantial Completion Date of 3 months from the Move-Out-Date. Instead of the estimated 3 months, 90 days, it has been approximately 11+ months, 330 days. As a culmination, just tonight, the neighbors alerted us that someone was in the house after dark with the lights on; and, all we could do was call the police because we still do not have access to our own home.

Please see attached documentation outlining the egregious manner in which we have been treated. We do not feel that this prolonged and demeaning remediation process was the intent of the court.

As our attorney, we are requesting your assistance in reaching resolution and expediting the return to our home of 40+ years.

Sincerely,

Wilfred J. Duplessis, Jr.                                    Hedy H. Duplessis

Attachments

cc: Honorable Eldon E. Fallon, U.S. District Judge ✓
    Chief Magistrate Judge Joseph C. Wilkinson Jr.
    Brown Greer, Chinese Drywall Settlement Administrator
    Sondleta Johnson, Legal Assistant
    Monsignor Douglass Doussan, Pastor

Status Hearing Issues
Originally submitted to Bruno&Bruno 11-14-2013

**FIREPLACE**

Removal of handcrafted natural stone mosaic fireplace (See Attachment 1). It is irreplaceable. Requested in writing on February 7th the 1st day of the remediation soft demo that the fireplace not be taken down. Signed off by the contractor Shawn McComber and Gary Ayser, MOSS that the fireplace would remain intact as it had been there for over 30 years (See Attachment 2). Requested again, in writing in a letter dated March 20, 2013 (See Attachment 3); yet the face of the fireplace was torn out. No one gave validity to our (the owners) argument that the subject drywall could have been accessed through the exterior wall. A plumber, Colton Maultner, Baton Rouge Plumbing) in an email stated that the fireplace would have to come down to access a copper gas line. There was no copper gas line; it was galvanized pipe. There was no drywall affixed to the back of the natural stone as stated by Shawn McComber. There was no need for the fireplace to be torn out. **The heart of our home was taken out that day. The fireplace was built by my uncle who was a master brick and masonry artisan. Again, it is irreplaceable and should never have been touched.**

**SUNROOM**

**Bricks** - Originally the sunroom was not in the Scope of Work. (i.e. brick/wood/mortar/no drywall). However, after the demo was completed "someone" determined that a brick wall and the beautifully/skillfully done tongue and groove wood ceiling installed by Mr. Wilfred J. Duplessis, Jr., owner, had to be torn out as well. The bricks that were over 25 years old could not be matched to the remaining (3) walls. Yet. They were installed anyway. We expressed in an email dated 11-4-2013 that we would not want the remaining walls to be torn out until we saw/approved the replacement. Because, at the time the brick mason was replacing the 1st wall of bricks that had been torn out, he indicated that they were the last of that run (i.e. 400 left). However, to do the remaining (3) walls would require 2400 bricks. Notwithstanding our request in the subject email, Moss, through their brick mason, arrived on our property very early (i.e. before 7:00 am) on a Saturday morning to tear out the remaining (3) brick walls; thereby, defying the owners request not to do so. We communicated to the tear out crew not to touch the bricks.

**Tongue and Groove Wood Ceiling** - The replacement ceiling (i.e.tongue and groove wood) is apparently paint grade instead of stain grade tongue and groove. The wood has excessive notches and color variations as compared to the original and is unacceptable. The center vertical board is noticeably thicker than the original which was flush with the V boards. (See Attachment 4 & 5)

**FAMILY ROOM CEILING**

Failure to restore ceiling in the family room as it was before the tear out. Requested repeatedly in weekly status reports, that the crown be installed level and then float the ceilings to meet the crown due to imperfections in the ceiling. This is what had to be done at the time of original construction and after the Hurricane Katrina rebuild. Yet Savoie Construction, through Todd Corwin, stated that Moss instructed them to "follow the ceiling" (i.e. just the opposite).

Status Hearing Issues
Originally submitted to Bruno&Bruno 11-14-2013

**DINING ROOM FOYER AND BATHROOM #2**

Failure to restore corner walls in both of these rooms to their original square position.

For Family Room; Dining Room; and Bathroom #1, we requested through Bruno & Bruno in an email that if Moss refused to rectify these issues that they be corrected through Knauf. This request was never responded to; neither were the issues corrected.

**DETACHED UNIT (not part of the original submission to Bruno & Bruno)**

During a Punch List walk-thru on December 19, 2013, we addressed why the Man Cave (i.e. detached unit) was not remediated inasmuch as the visible copper pipes from the main residence to the Man Cave are contiguous? We were previously told that all of the plumbing copper pipes had to come out including on our second level even though the second level did not flood and the drywall was not changed after Katrina. So, we ask the question, "why didn't this apply to the Man Cave, that did flood, that did have contiguous copper plumbing lines coming from the main residence, and that did have drywall replaced after Katrina?"

**WEEKLY WALK-THRUs**

Cancellation of agreed upon weekly walk-thrus with no explanation of WHY? Banned from entering our own property. Locked out. On a teleconference, MOSS agreed to weekly walk-thrus every Wednesday at 9:00 am. Through an email, Bruno and Bruno notified us of the cancelled weekly walk-thrus without being given a reason why.

**Financial liabilities (Documentation previously submitted to Bruno & Bruno) created by Chinese Drywall and project exceeding 90 days:**

1. Approximately $10,000 of HVAC Repairs/replacement; computer repair; flooring repair due to frozen Air Condition Coil; and Security System. These out-of-pocket expenses were incurred prior to Chinese Drywall revelation.
2. Cancellation of Homeowners Insurance Policy. Required to purchase/maintain a Builder's Risk Policy incurring an $850.00 increase in policy premium.
3. Storage costs exceeded the projected 90 days. (i.e. $327.00 x 10mos and continuing)
4. Entergy costs to maintain at (2) properties (i.e. contaminated home and temporary residence).
5. Sewerage and Water Board costs to maintain at (2) properties (i.e. contaminated home and temporary residence.
6. Alarm Monitoring for (2) properties (i.e. contaminated home and temporary residence).
7. Grass maintenance for (2) properties (i.e. contaminated home and temporary residence).
8. Structural repairs required by MOSS, $6,000, out of pocket expenses. (i.e. legacy roof tear out for duct work; windows, attic stairs, roof jack tear out and replacement; re-wiring of TV and Stereo system.
9. Loss of rent @$1800 per month since September 2012. Forced to live in subject rental property that we own.

Status Hearing Issues
Originally submitted to Bruno&Bruno 11-14-2013

10. Not compensated for having moved out of contaminated property prior to start of remediation process. Moved out of our contaminated home on September 8, 2012 due to exacerbation of husband's heart and lung condition.
11. Did not receive Additional Living Expenses until November 4, 2013; even though it had been repeatedly requested through Bruno & Bruno since May 2013. This created an undue hardship, financially.

Therefore, we are seeking reimbursement for these expenses; because if it were not for Chinese Drywall we would not have incurred any of them.

We are also requesting that whatever money is still on the table for the **Fireplace and Sunroom**, that the money be given to us to complete ourselves and with the Contractor/Brick/Stone Mason of our choice.

We are requesting compensation for the harassment, humiliation, and mistreatment we have had to endure for the past 12 months at the hands of MOSS and its sub-contractors. This is, but not limited to, being locked out of our home of 40 years; initially requiring us to travel over 100 miles to shop on the Northshore for Flooring, Electrical, Tile, Cultured Marble, etc. when we live on the Southshore; innumerable hours/gasoline expended to find like for like replacements for everything; and the construction monitoring that we had to do to improve the expected outcome.

We have not been treated as aggrieved individuals. Rather we have been treated as persons who have committed a crime. This ordeal has been a travesty of justice and has affected our health and well-being. No one who remediated their home using Chinese Drywall should ever be treated this way. The usage of a Contractor from out of state brings with it a level of insensitivity. Going forward, the plaintiffs in Chinese Drywall cases should not be <u>required</u>, as we were, to use out of town contractors (i.e. MOSS and their subs) who do not have a vested interest in this community.

_Wilfred J. Duplessis, Jr._
Wilfred J. Duplessis, Jr.

_Hedy H. Duplessis_
Hedy H. Duplessis

Date: 11-14-2013