(Slip Opinion)        OCTOBER TERM, 2013        1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MISSISSIPPI EX REL. HOOD, ATTORNEY GENERAL *v.* AU OPTRONICS CORP. ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 12–1036.    Argued November 6, 2013—Decided January 14, 2014

Congress enacted the Class Action Fairness Act of 2005 (CAFA) to lower diversity jurisdiction requirements in class actions and, as relevant here, in mass actions, *i.e.*, civil actions "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," 28 U. S. C. §1332(d)(11)(B)(i). Petitioner Mississippi sued respondent liquid crystal display (LCD) manufacturers in state court, alleging violations of state law and seeking, *inter alia*, restitution for LCD purchases made by itself and its citizens. Respondents sought to remove the case to federal court. The District Court held that the suit qualified as a mass action under §1332(d)(11)(B)(i), but remanded the suit to state court on the ground that it fell within CAFA's "general public" exception, §1332(d)(11)(B)(ii)(III). The Fifth Circuit reversed, agreeing with the District Court that the suit was a mass action but finding the general public exception inapplicable.

*Held*: Because Mississippi is the only named plaintiff, this suit does not constitute a mass action under CAFA. Pp. 5–14.

   (a) Contrary to respondents' argument, CAFA's "100 or more persons" phrase does not encompass unnamed persons who are real parties in interest to claims brought by named plaintiffs. Congress knew how to draft language to that effect when it intended such a meaning, see, *e.g.*, §§1332(d)(5)(B), 1332(d)(1)(D). That it did not do so in the mass action provision indicates that Congress did not want the provision's numerosity requirement to be satisfied by counting unnamed individuals who possess an interest in the suit.

   Respondents' understanding also cannot be reconciled with the fact that the "100 or more persons" are not unspecified individuals with

2  MISSISSIPPI EX REL. HOOD *v.* AU OPTRONICS CORP.

Syllabus

no participation in the suit but are the "plaintiffs" subsequently referred to in the provision, *i.e.*, the very parties proposing to join their claims in a single trial. This is evident in two key ways. First, CAFA uses "persons" and "plaintiffs" the same way they are used in Federal Rule of Civil Procedure 20, which refers to "persons" as individuals who are proposing to join as "plaintiffs" in a single action. Second, it is difficult to imagine how the "claims of 100 or more" unnamed individuals could be "proposed to be tried jointly on the ground that the . . . claims" of some completely different group of named plaintiffs "involve common questions of law or fact."

 Construing "plaintiffs" to include both named and unnamed real parties in interest would stretch the meaning of "plaintiff" beyond recognition. A "plaintiff" is commonly understood to be a party who brings a civil suit in a court of law, not anyone, named or unnamed, whom a suit may benefit. Moreover, respondents' definition would also have to apply to the mass action provision's subsequent reference to "plaintiffs" in the phrase "jurisdiction shall exist only over those plaintiffs whose claims [exceed $75,000]," §1332(d)(11)(B)(i). See *Brown* v. *Gardner*, 513 U. S. 115, 118. This would result in an administrative nightmare that Congress could not possibly have intended, see *Griffin* v. *Oceanic Contractors, Inc.*, 458 U. S. 564, 575, where district courts would have to identify hundreds (or in this case, hundreds of thousands) of unnamed parties whose claims are for less than $75,000 and then decide how to dispose of their claims. Pp. 5–10.

 (b) Statutory context reinforces this Court's reading of the mass action provision. CAFA provides that once removal occurs, a case shall not be transferred to another court "unless a majority of the plaintiffs in the action request transfer." §1332(d)(11)(C)(i). If "plaintiffs" included unnamed parties, it would be surpassingly difficult for a court to poll the enormous number of real parties in interest to decide whether an action may be transferred. Moreover, respondents' position that the action here should be removed because it is similar to a class action fails to recognize that the mass action provision functions largely as a backstop to ensure that CAFA's relaxed class action jurisdictional rules cannot be evaded by a suit that names a host of plaintiffs rather than using the class device. Had Congress wanted CAFA to authorize removal of representative actions brought by States as sole plaintiffs on respondents' theory, it would have done so through the class action provision, not the mass action provision. Pp. 10–11.

 (c) This Court has interpreted the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity

jurisdiction, see, *e.g.*, *Wecker* v. *National Enameling & Stamping Co.*, 204 U. S. 176, 185–186, but Congress did not intend this background inquiry to apply to the mass action provision. First, it could make sense to incorporate the background inquiry into the mass action provision if the inquiry had previously been applied in a similar manner. That is not the case here, however, and so any presumption that Congress wanted to incorporate the inquiry, if it exists at all, would be comparatively weak. Second, even if the background principle had previously been applied in this manner, Congress expressly indicated that it did not want the principle to apply to the mass action provision both through the textual indicators described above and by prohibiting defendants from joining unnamed individuals to a lawsuit in order to turn it into a mass action, §1332(d)(11)(B)(ii)(II). Requiring district courts to identify unnamed persons interested in the suit would run afoul of that intent. Pp. 11–13.

701 F. 3d 796, reversed and remanded.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

Cite as: 571 U. S. ____ (2014)  1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–1036

MISSISSIPPI EX REL. JIM HOOD, ATTORNEY GENERAL, PETITIONER *v.* AU OPTRONICS CORPORATION ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[January 14, 2014]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Under the Class Action Fairness Act of 2005 (CAFA or Act), defendants in civil suits may remove "mass actions" from state to federal court. CAFA defines a "mass action" as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U. S. C. §1332(d)(11)(B)(i). The question presented is whether a suit filed by a State as the sole plaintiff constitutes a "mass action" under CAFA where it includes a claim for restitution based on injuries suffered by the State's citizens. We hold that it does not. According to CAFA's plain text, a "mass action" must involve monetary claims brought by 100 or more persons who propose to try those claims jointly as named plaintiffs. Because the State of Mississippi is the only named plaintiff in the instant action, the case must be remanded to state court.

2       MISSISSIPPI EX REL. HOOD *v.* AU OPTRONICS CORP.

Opinion of the Court

## I

### A

Congress enacted CAFA in order to "amend the procedures that apply to consideration of interstate class actions." 119 Stat. 4. In doing so, Congress recognized that "[c]lass action lawsuits are an important and valuable part of the legal system." CAFA §2. It was concerned, however, that certain requirements of federal diversity jurisdiction, 28 U. S. C. §1332, had functioned to "kee[p] cases of national importance" in state courts rather than federal courts. CAFA §2.

CAFA accordingly loosened the requirements for diversity jurisdiction for two types of cases—"class actions" and "mass actions." The Act defines "class action" to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U. S. C. §1332(d)(1)(B). And it defines "mass action" to mean "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." §1332(d)(11)(B)(i).

For class and mass actions, CAFA expanded diversity jurisdiction in two key ways. First, it replaced the ordinary requirement of complete diversity of citizenship among all plaintiffs and defendants, see *State Farm Fire & Casualty Co.* v. *Tashire*, 386 U. S. 523, 530–531 (1967), with a requirement of minimal diversity. Under that requirement, a federal court may exercise jurisdiction over a class action if "any member of a class of plaintiffs is a citizen of a State different from any defendant." §1332(d)(2)(A). The same rule applies to mass actions. See §1332(d)(11)(A) ("[A] mass action shall be deemed . . . removable under [§§1332(d)(2) through (d)(10)]"). Second, whereas §1332(a) ordinarily requires each plaintiff's claim to exceed the sum or value of $75,000, see *Exxon Mobil*

Cite as: 571 U. S. ____ (2014) 3

Opinion of the Court

*Corp.* v. *Allapattah Services, Inc.*, 545 U. S. 546, 554–555 (2005), CAFA grants federal jurisdiction over class and mass actions in which the aggregate amount in controversy exceeds $5 million. §§1332(d)(2), (d)(6), (d)(11)(A). Class and mass actions filed in state court that satisfy CAFA's requirements may be removed to federal court, 28 U. S. C. §1453, but federal jurisdiction in a mass action, unlike a class action, "shall exist only over those plaintiffs" whose claims individually satisfy the $75,000 amount in controversy requirement, §1332(d)(11)(B)(i).[1]

B

Respondents manufacture liquid crystal displays, or LCDs. In March 2011, the State of Mississippi sued them in state court, alleging that they had formed an international cartel to restrict competition and raise prices in the LCD market. The State claimed that these actions violated two Mississippi statutes: the Mississippi Antitrust Act, Miss. Code Ann. §75–21–1 *et seq.* (2009), and the Mississippi Consumer Protection Act, §75–24–1 *et seq.* (2009 and Cum. Supp. 2013). The State sought injunctive relief and civil penalties under both statutes, along with punitive damages, costs, and attorney's fees. It also sought restitution for its own purchases "of LCD products and the purchases of its citizens." App. to Brief in Opposition 65a; §75–24–11.

Respondents filed a notice to remove the case from state to federal court, arguing that the case was removable under CAFA as either a "class action" or a "mass action." The District Court ruled that the suit did not qualify as a "class action" because it was "not brought pursuant to Federal Rule of Civil Procedure 23 or a 'similar State statute or rule of judicial procedure.'" 876 F. Supp. 2d

——————

[1] CAFA provides certain exceptions for class actions that involve matters of principally local or state concern. See 28 U. S. C. §§1332(d)(3)–(5). None of them are at issue in this case.

758, 769 (SD Miss. 2012). But it held that the suit did qualify as a "mass action," because "[i]t is a civil action 'in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact.'" *Id.*, at 771. The District Court reached that conclusion on the basis of Fifth Circuit precedent in *Louisiana ex rel. Caldwell* v. *Allstate Ins. Co.*, 536 F. 3d 418 (CA5 2008), which it understood to "stan[d] for the proposition that the words 'persons' and 'plaintiffs' in [the mass action definition] are to be defined as 'real parties in interest.'" 876 F. Supp. 2d, at 771. Applying that rule, the court found that 100 or more unidentified Mississippi consumers had purchased LCD screens and were therefore real parties in interest to the State's restitution claim. *Ibid.* The court noted the "possibility that a 'mass action' should be thought of as a 'mass joinder,'"—that is*,* as a suit involving 100 or more "named plaintiffs." *Ibid.*, n. 9. But it deemed that interpretation to be foreclosed by *Caldwell.*

The District Court nonetheless remanded the case to state court on the basis of CAFA's "general public exception," which excludes from the "mass action" definition "any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U. S. C. §1332(d)(11)(B)(ii)(III).

The Court of Appeals reversed. 701 F. 3d 796 (CA5 2012). It agreed with the District Court's determination that Mississippi's suit is not a "class action" under CAFA.[2] *Id.*, at 799. It also agreed that, under *Caldwell*, the suit qualifies as a "mass action" because "[t]he real parties in interest in Mississippi's suit are those more than 100 . . . individual citizens who purchased the [LCD] products

---

[2] Respondents do not challenge this ruling before this Court.

Cite as: 571 U. S. ____ (2014)           5

Opinion of the Court

within Mississippi." 701 F. 3d, at 800. It disagreed, however, with the District Court's ruling that the suit falls within the general public exception. *Id.,* at 802–803.[3] Judge Elrod concurred in the judgment, noting that after the Fifth Circuit's decision in *Caldwell*, three Courts of Appeals had deemed similar lawsuits not to be mass actions removable under CAFA.[4] We granted certiorari to resolve this split of authority, 569 U. S. ___ (2013), and now reverse.

## II
### A

Our analysis begins with the statutory text. *Sebelius* v. *Cloer*, 569 U. S. ___, ___ (2013) (slip op., at 6). The statute provides:

> "[T]he term mass action means any civil action (except a [class action]) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." §1332(d)(11)(B)(i).

The parties do not dispute that this provision encompasses suits that are brought jointly by 100 or more named plaintiffs who propose to try their claims together. The question is whether the provision also includes suits

―――――――
[3] The Court of Appeals did so on the rationale that because individual Mississippi consumers are real parties in interest to the State's restitution claim, the general public exception's requirement that "all of the claims" must be "asserted on behalf of the general public (and not on behalf of individual claimants)" was not satisfied. 28 U. S. C. §1332(d)(11)(B)(ii)(III).

[4] See *AU Optronics Corp.* v. *South Carolina*, 699 F. 3d 385 (CA4 2012); *Nevada* v. *Bank of Am. Corp.*, 672 F. 3d 661 (CA9 2012); *LG Display Co.* v. *Madigan*, 665 F. 3d 768 (CA7 2011).

brought by fewer than 100 named plaintiffs on the theory that there may be 100 or more unnamed persons who are real parties in interest as beneficiaries to any of the plaintiffs' claims. Respondents argue that the provision covers such suits because "claims of 100 or more persons" refers to "the *persons* to whom the claim belongs, *i.e.,* the real parties in interest *to the claims*," regardless of whether those persons are named or unnamed. Brief for Respondents 19 (emphasis in original). We disagree.

To start, the statute says "100 or more persons," not "100 or more named or unnamed real parties in interest." Had Congress intended the latter, it easily could have drafted language to that effect. Indeed, when Congress wanted a numerosity requirement in CAFA to be satisfied by counting unnamed parties in interest in addition to named plaintiffs, it explicitly said so: CAFA provides that in order for a class action to be removable, "the number of members of all proposed plaintiff classes" must be 100 or greater, §1332(d)(5)(B), and it defines "class members" to mean "the persons (named or unnamed) who fall within the definition of the proposed or certified class," §1332(d)(1)(D). Congress chose not to use the phrase "named or unnamed" in CAFA's mass action provision, a decision we understand to be intentional. See *Dean* v. *United States*, 556 U. S. 568, 573 (2009) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'").

More fundamentally, respondents' interpretation cannot be reconciled with the fact that the "100 or more persons" referred to in the statute are not unspecified individuals who have no actual participation in the suit, but instead the very "plaintiffs" referred to later in the sentence—the parties who are proposing to join their claims in a single trial. Congress made this understanding evident in two

key ways.

First, we presume that "'Congress is aware of existing law when it passes legislation.'" *Hall* v. *United States*, 566 U. S. ___, ___ (2012) (slip op., at 9). Here, Congress used the terms "persons" and "plaintiffs" just as they are used in Federal Rule of Civil Procedure 20, governing party joinder. Where §1332(d)(11)(B)(i) requires that the "claims of 100 or more persons [must be] proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," Rule 20 provides that "[p]ersons may join in one action as plaintiffs if they assert any right to relief jointly . . . and any question of law or fact common to all plaintiffs will arise in the action." Thus, just as it is used in Rule 20, the term "persons" in §1332(d)(11)(B)(i) refers to the individuals who are proposing to join as plaintiffs in a single action.

Second, respondents' interpretation of "persons" cannot square with the statute's requirement that the claims of the "100 or more persons" must be proposed for joint trial "on the ground that the plaintiffs' claims involve common questions of law or fact." §1332(d)(11)(B)(i). It is difficult to imagine how the claims of one set of unnamed individuals could be proposed for joint trial on the ground that the claims of some completely different group of named plaintiffs share common questions. The better understanding is that Congress meant for the "100 or more persons" and the proposed "plaintiffs" to be one and the same.

Recognizing that the statute's use of the term "persons" could be a reference to proposed plaintiffs, respondents assert that "plaintiffs," like "persons," should be construed to "includ[e] both named and unnamed real parties in interest." Brief for Respondents 24. But that stretches the meaning of "plaintiff" beyond recognition. The term "plaintiff" is among the most commonly understood of legal terms of art: It means a "party who brings a civil suit in a court of law." Black's Law Dictionary 1267 (9th ed.

8        MISSISSIPPI EX REL. HOOD *v.* AU OPTRONICS CORP.

Opinion of the Court

2009); see also Webster's Third New International Dictionary 1729 (1961) (defining "plaintiff" to mean "one who commences a personal action or lawsuit," or "the complaining party in any litigation"). It certainly does not mean "anyone, named or unnamed, whom a suit may benefit," as respondents suggest.[5]

Moreover, Congress used the term "plaintiffs" twice in the mass action provision. The provision encompasses actions in which monetary "claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions," and it then provides that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requiremen[t]" of $75,000. §1332(d)(11)(B)(i). If respondents are correct that "plaintiffs" means unnamed parties in interest where it is used the first time, then so too the second. After all, the "presumption that a given term is used to mean the same thing throughout a statute" is "at its most vigorous when a term is repeated within a given sentence." *Brown* v. *Gardner*, 513 U. S. 115, 118 (1994).

Yet if the term "plaintiffs" is stretched to include all unnamed individuals with an interest in the suit, then §1332(d)(11)(B)(i)'s requirement that "jurisdiction shall exist only over those plaintiffs whose claims [exceed $75,000]" becomes an administrative nightmare that Congress could not possibly have intended, see *Griffin* v. *Oceanic Contractors, Inc.*, 458 U. S. 564, 575 (1982). How is a district court to identify the unnamed parties whose claims in a given case are for less than $75,000? Would the court in this case, for instance, have to hold an evidentiary hearing to determine the identity of each of the

---

[5] Congress could of course require a real party in interest inquiry in a statute that uses the term "plaintiff" simply by saying so. But it has not done that here.

Cite as: 571 U. S. ____ (2014) 9

Opinion of the Court

hundreds of thousands of unnamed Mississippi citizens who purchased one of respondents' LCD products between 1996 and 2006 (the period alleged in the complaint)? Even if it could identify every such person, how would it ascertain the amount in controversy for each individual claim? Respondents suggest that "[i]n some circumstances, defendants may be able to identify from their payment records any persons who may have claims for overpayments," but they stop notably short of claiming to possess such decades-old records themselves. Brief for Respondents 25.

Furthermore, what would happen with individuals whose claims were valued at less than $75,000? The District Court in this case suggested that if the suit were deemed a mass action, it would sever the claim for "restitution for losses incurred by individuals claiming less than or equal to $75,000 each" and remand that claim back to state court, while allowing the other claims (including the restitution claims exceeding $75,000) to proceed in federal court. 876 F. Supp. 2d, at 775. Even respondents do not defend that outcome, presumably because it would mean that much of the State's lawsuit could proceed in state court after all, simultaneously with the newly severed parallel federal action.[6]

We think it unlikely that Congress intended that federal district courts engage in these unwieldy inquiries. By contrast, interpreting "plaintiffs" in accordance with its usual meaning—to refer to the actual named parties who

---

[6] Respondents suggest that a district court might be able to exercise supplemental jurisdiction over the claims that fall beneath $75,000, thereby avoiding the problem of identifying and remanding such claims to the state court. We need not decide the issue here, but we note that at least one Court of Appeals has rejected that view. See *Lowery* v. *Alabama Power Co.*, 483 F. 3d 1184, 1206, n. 51 (CA11 2007) (holding that because supplemental jurisdiction does not apply where a federal statute "'expressly provide[s] otherwise,'" 28 U. S. C. §1367(a), the mass action provision's explicit exclusion of jurisdiction over claims beneath $75,000 negates supplemental jurisdiction over such claims).

10  MISSISSIPPI EX REL. HOOD *v.* AU OPTRONICS CORP.

Opinion of the Court

bring an action—leads to a straightforward, easy to administer rule under which a court would examine whether the plaintiffs have pleaded in good faith the requisite amount. See *Horton* v. *Liberty Mut. Ins. Co.*, 367 U. S. 348, 353 (1961). Our decision thus comports with the commonsense observation that "when judges must decide jurisdictional matters, simplicity is a virtue." See *Standard Fire Ins. Co.* v. *Knowles*, 568 U. S. ___, ___ (2013) (slip op., at 6).

B

Our reading of the mass action provision's text is reinforced by the statutory context. See *Mohamad* v. *Palestinian Authority*, 566 U. S. ___, ___ (2012) (slip op., at 5–6).

First, the provision of CAFA governing transfer motions confirms our view that the term "plaintiffs" refers to actual named parties as opposed to unnamed real parties in interest. That provision, §1332(d)(11)(C)(i), provides that once a mass action has been removed to federal court, it "shall not thereafter be transferred to any other court . . . unless a majority of the plaintiffs in the action request transfer." If respondents are correct that "plaintiffs" means "unnamed parties in interest," it will be surpassingly difficult for a court to decide in a case like this one whether an action may be transferred. The District Court itself acknowledged this problem, noting that it would have to identify and communicate with "hundreds of thousands if not millions of real parties in interest" to "pol[l] [them] about their preferred forum" if respondents' interpretation were correct. 876 F. Supp. 2d, at 777.

The context in which the mass action provision was enacted lends further support to our conclusion. Congress' overriding concern in enacting CAFA was with class actions. See Preamble, 119 Stat. 4 (describing CAFA as an "[a]ct to amend the procedures that apply to consideration of interstate class actions"); CAFA §2 (Congress' findings

with respect to class actions). The mass action provision thus functions largely as a backstop to ensure that CAFA's relaxed jurisdictional rules for class actions cannot be evaded by a suit that names a host of plaintiffs rather than using the class device. Respondents' argument fails to recognize this key distinction. Their position is ultimately that "[t]his action is similar to a class action," such that it should be removed. Brief for Respondents 27. But if Congress had wanted representative actions brought by States as sole plaintiffs to be removable under CAFA on the theory that they are in substance no different from class actions, it would have done so through the class action provision, not the one governing mass actions.[7]

### III

Rather than relying on the text of CAFA as the source of its real party in interest inquiry, the Court of Appeals appeared to find such an inquiry necessary on the basis of what it understood to be a background principle: that "federal courts look to the substance of the action and not only at the labels that the parties may attach." *Caldwell*, 536 F. 3d, at 424. This was error.

We have interpreted the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction. We have held, for example, that a plaintiff may not keep a case out of federal court by fraudulently naming a nondiverse defendant. *Wecker* v. *National Enameling & Stamping Co.*, 204 U. S. 176, 185–186 (1907). Nor may a plaintiff create diversity by collusively assigning his interest in an action. *Kramer* v. *Caribbean Mills, Inc.*, 394 U. S. 823, 825–830 (1969);

---

[7] The parties both point to the "general public exception," §1332(d)(11)(B)(ii)(III), in support of their respective positions. But because the foregoing arguments resolve this case, we need not construe that provision here.

see also 28 U. S. C. §1359. And in cases involving a State or state official, we have inquired into the real party in interest because a State's presence as a party will destroy complete diversity. *Missouri, K. & T. R. Co.* v. *Missouri Railroad and Warehouse Comm'rs*, 183 U. S. 53, 58–59 (1901).

But the question in this case is not simply whether there exists some background principle of analyzing the real parties in interest to a suit; the question is whether Congress intended that courts engage in that analysis when deciding whether a suit is a mass action. Recognizing this fact, respondents do not argue that the real party in interest inquiry employed in the above cases somehow supersedes the text of CAFA; they instead argue that we should read CAFA in light of those cases because "'Congress expects its statutes to be read in conformity with this Court's precedents.'" Brief for Respondents 19 (quoting *United States* v. *Wells*, 519 U. S. 482, 495 (1997)). For two reasons, however, we conclude that Congress did not intend the background inquiry to apply to the mass action provision.

First, it makes sense to infer Congress' intent to incorporate a background principle into a new statute where the principle has previously been applied in a similar manner. But that is not the case here. The background real party in interest inquiry identifies what party's (or parties') citizenship should be considered in determining diversity. The inquiry that respondents urge is quite different: It is an attempt to count up additional unnamed parties in order to satisfy the mass action provision's numerosity requirement. Respondents offer no reason to believe that Congress intended to extend the real party inquiry to this new circumstance, and so any presumption that Congress wanted to incorporate the inquiry, if it exists in this case at all, would be comparatively weak. Cf. *Meyer* v. *Holley*, 537 U. S. 280, 286 (2003) ("Congress'

Cite as: 571 U. S. ____ (2014)           13

Opinion of the Court

silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules").[8]

Second, even if the background principle had previously been applied in the manner sought by respondents, Congress provided express indications that it did not want the principle to apply to the mass action provision. It specified that "the term 'mass action' shall not include any civil action in which . . . the claims are joined upon motion of a defendant." §1332(d)(11)(B)(ii)(II). By prohibiting defendants from joining unnamed individuals to a lawsuit in order to turn it into a mass action, Congress demonstrated its focus on the persons who are actually proposing to join together as named plaintiffs in the suit. Requiring district courts to pierce the pleadings to identify unnamed persons interested in the suit would run afoul of that intent. Moreover, as already discussed, Congress repeatedly used the word "plaintiffs" to describe the 100 or more persons whose claims must be proposed for a joint trial. That word refers to actual, named parties—a concept inherently at odds with the background inquiry into unnamed real parties in interest, who by definition are never plaintiffs. Congress thus clearly displaced a background real party in interest inquiry, even assuming one might otherwise apply. Cf. *Barnhart* v. *Sigmon Coal Co.*, 534 U. S. 438, 459, n. 16 (2002).

---

[8] We have also applied a real party in interest inquiry in contexts other than that of determining citizenship for purposes of diversity jurisdiction. See *North Dakota* v. *Minnesota*, 263 U. S. 365, 374–376 (1923) (state sovereign immunity); *Oklahoma ex rel. Johnson* v. *Cook*, 304 U. S. 387, 392–393 (1938) (original jurisdiction). But even if we were to indulge in a presumption that Congress somehow intended to import the inquiry applied in those particular contexts into the mass action provision's distinct numerosity requirement, we would find any such presumption overridden by CAFA's text.

14 MISSISSIPPI EX REL. HOOD *v.* AU OPTRONICS CORP.

Opinion of the Court

\* \* \*

For the foregoing reasons, the judgment of the United States Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*