# BARRASSO·USDIN·KUPPERMAN
# FREEMAN & SARVER, L.L.C.
### - COUNSELLORS AT LAW -

H. Minor Pipes, III
Direct Dial: (504) 589-9726
Direct Fax: (504: 589-9926
mpipes@barrassousdin.com

Our File Number
0945-0001

February 27, 2014

**Certified Mail – Return Receipt Requested**

Raymond and Rogina Rizk
120 N. Swinton Ave.
Delray Beach, Florida 33444-2634

      Re:    Chinese Drywall Remediation of Unit located at:
                 1690 Renaissance Commons Blvd., #1426
                 Boynton Beach, FL 33426

Dear Mr. and Mrs. Rizk:

      I have been appointed as the Receiver in *In Re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, regarding the Class Action Settlement for the remediation of Chinese Drywall within Renaissance Commons. A copy of this Oder is attached. In this role, and as a result of the lack of response by you to numerous correspondence requesting execution of the Work Authorization to remediate your unit, I executed the Work Authorization for your unit. As a result, please make sure this Unit is vacated as it will be remediated within 45 days of today's date and must be vacated prior to this remediation. Please telephone me at 504/589-9726 should you have any questions.

                                Sincerely,

                                H. Minor Pipes, III

HMP/sh
Enclosures



Case 2:09-md-02047-EEF-JCW Document 17370 Filed 12/20/13 Page 1 of 2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO: | ) ) | SECTION: L |
| *Hobbie, et al. v.* *RCR Holdings II, LLC, et al.,* | ) ) ) ) | JUDGE FALLON |
| No. 10-1113 | ) ) | MAG. JUDGE WILKINSON |

## ORDER

Considering the Motion for the Appointment of Receiver by Class Counsel, Class Representative, RCR Holdings II, LLC, and the Villa Lago Condominium Association at Renaissance Commons, Inc., pursuant to Section 718.111(3), Florida Statutes, 28 U.S.C. Section 1407, and the Final Order and Judgment Certifying the Coastal Settlement Class, Appointing Class Counsel, and Granting Final Approval of the Settlement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL 2047 [DE-17177] ("Final Order"),

IT IS ORDERED THAT:

1. H. Minor Pipes, Esq. is hereby appointed to act as the Receiver in this matter to execute and deliver certain required written authorizations and releases on behalf of non-responsive unit owners at various times before, during, and after completion of the remediation and to arrange for the delivery of such units in the condition required by the contract for remediation and the Settlement Agreement.

2. H. Minor Pipes, Esq., as Receiver, shall file a monthly report on each unit within the Condominium for which the Receiver has taken any action, with a final report filed within 60 days after completion of the remediation of the Condominium.

3. Mr. Pipes shall compensated at the rate of $500 per unit, not to exceed in the aggregate $25,000. He shall issue fee application(s) to the Court and upon approval of the same, shall be paid from the Villa Lago Settlement Qualified Settlement Fund.

IT IS SO ORDERED, this  19th  of     December    , 2013.

*[signature]*
Eldon E. Fallon
United States District Court Judge

## Work Authorization Agreement

# THIS DOCUMENT HAS LEGAL CONSEQUENCES. PLEASE READ THIS DOCUMENT CAREFULLY AND CONSULT WITH YOUR ATTORNEY AS YOU DEEM NECESSARY BEFORE SIGNING.

This Agreement between Contractor and Unit Owner ("Work Authorization") defines the specific work necessary to complete remediation of the Unit indicated below, and authorizes the Contractor to perform this work. The terms below are subject to the Coastal Settlement Agreement (as defined herein), which the Unit Owner ("Unit Owner") should carefully review with counsel prior to signing.

The Unit Owner and the Contractor agree as follows:

**Unit Owner:**
Name: Raymond & Rogina Rizk
Address: 1690 Renaissance Commons Blvd., #1426, Boynton Beach, FL 33426

**Contractor:**
Name: Moss and Associates, LLC
Address: 2101 N. Andrews Ave., Suite 300, Fort Lauderdale, FL 33311

**Project:**
Remediation of Unit located at:
Street: 1690 Renaissance Commons Blvd., #1426
City: Boynton Beach, FL 33426

**Estimated Move-Out Date:**
**Estimated Substantial Completion Date:**

**Under Air Square Footage of Home: 1246**

The Unit Owner, and Contractor have reviewed the work necessary to accomplish the remediation of Chinese drywall, as described in the Remediation Protocol attached to this Work Authorization, and have agreed that this work consists of the following items, which are attached:

1. Terms and Conditions of the Work Authorization Agreement
    a. Appliance, Fixture, Equipment and Fire System Schedule
    b. Room Finish Schedule
2. Remediation Protocol (attached hereto as Exhibit 1)
3. Requirements for Move-Out/Move-In (attached as Exhibit 2)
4. Contractor Insurance Certificates (attached as Exhibit 3)
5. Contractor Certification (attached as Exhibit 4)
6. Unit Owner Release of Contractor (attached as Exhibit 5)
7. American National Standard for Single Family Residential Building, Method for Calculating Square Footage (attached as Exhibit 6)

Photographic and/or videographic documentation of the existing interior of the Unit, including, but not limited to, fixtures and finishes will be included as a reference. In addition, if this box is checked [ ], the following original construction drawings and specifications are included and attached as Exhibit 7 for reference purposes:

[list construction drawings and specifications]

Unit Owner and Contractor agree that these are an accurate and correct representation of the construction quality and finishes as existed prior to the start of the Repair Work.

Unit Owner represents that he (she) is the owner of the Unit to be remediated and that he (she) is fully authorized to enter into this agreement and bind himself (herself), all dependents who live in the Unit, and any other guests or residents who reside in the Unit.

Effective the ___ day of ____, 201__ ("Effective Date")

_N. Hit_  _Received & Appointed by the MDL Court_  _2/25/14_
Unit Owner  Raymond and Rogina Rizk    Date

_____
Contractor                                                                 Date

## Terms and Conditions of the Work Authorization Agreement

I. **REPAIR WORK**

1. The repair (*i.e.*, remediation) work at the Unit is described generally in the Remediation Protocol and specifically attached to this Work Authorization ("Repair Work"). In conducting the Repair Work and in resolving any disputes pursuant to the dispute resolution process described the Remediation Protocol, the Unit Owner and Contractor agree that the objective of the Repair Work is to remove on a cost effective basis all drywall and Chinese drywall-related odors and contamination, including, but not limited to, corrosion, tarnishing, and pitting ("Contamination"), and to leave the Unit with the same construction quality and finishes, including remediating any damage to such quality and finishes that was caused by the drywall, as existed prior to the start of the Repair Work.

2. For clarification, the Remediation Protocol describes the overall remediation work agreed to by the Parties. **By executing this Work Authorization, which incorporates and follows the Scope of Work, Unit Owner agrees that this is the complete Repair Work to which Unit Owner is entitled under this Work Authorization.**

3. All materials, systems and equipment that are removed during the course of remediation work will either be reinstalled or replaced in accordance with the Remediation Protocol and, where replaced, replaced with new materials that are of the same construction, quality and finishes as those removed.

4. All Repair Work will be performed in accordance with applicable codes and regulations as these codes and regulations exist as of the last date that all required building and construction permits have been filed. The Contractor is not responsible for the failure of the Unit to comply with building codes and regulations where such failure is unrelated to the Repair Work.  Except where such failures are corrected as a consequence of the Repair Work, the Unit Owner will be responsible for correcting such failures and any delays in the Repair Work resulting from such corrective work.  If correction of such a failure is not accomplished during the Repair Work, but is required by governmental or other authority with jurisdiction, then the Unit Owner is responsible for such correction.  For example, Repair Work includes replacement of the electrical system so that any existing non-compliant electrical work will be corrected during the normal course of the Repair Work. But non-compliant roof construction is unaffected by the Repair Work and therefore would remain the responsibility of the Unit Owner. If the authority with jurisdiction requires correction of non-compliant roof

construction in order to secure a certificate of occupancy, such correction would, thus, be the responsibility of the Unit Owner. In addition, if such corrective work will interfere with the Repair Work, the Contractor will cease the Repair Work until such time as the corrective work is completed, and the estimated Construction Duration (defined below) will be extended without penalty to the Contractor.

5. In accordance with the Remediation Protocol, materials, systems and equipment that are retained, but damaged by the Repair Work, will be restored to the condition that existed prior to the start of Repair Work, and where necessary replaced with new materials, systems and/or equipment.

6. Where necessary, new work will be integrated into existing work so that, to the extent reasonably feasible, one cannot reasonably be distinguished from the other. Transitions between new and existing work will, wherever possible, occur at a transition such as a corner or other break point.

7. All electrical work will be performed by a licensed electrician and will be in accordance with requirements of the National Electrical Code (NEC) and any applicable local building codes as these codes and regulations exist as of the last date that all required building and construction permits have been filed. Electrical work will be inspected by the electrical inspector of the local Authority having jurisdiction. In addition, all other trades, including plumbing, will be performed by licensed subcontractors, to the extent required by applicable law, regulation or building code.

8. The Repair Work is set forth in the attached Remediation Protocol establishes specific components of the Unit that are to be either removed and replaced, or removed and reinstalled. Building materials, building systems and fixtures will be retained in place and protected during the work.

9. Unit-Owner Requested Work. The Unit Owner may request additional work by the Contractor or others that is not included in the Repair Work ("Unit-Owner Requested Work"). At its sole discretion, the Contractor may decline to perform Unit-Owner Requested Work. In addition, the Contractor may only accept such work, which shall be under a separate agreement with the Unit Owner, if such work does not impede the progress of the Repair Work. Such Unit-Owner Requested Work will be paid for in advance by the Unit Owner to the Contractor.

II. **SCHEDULE**

1. The Construction Duration shall be measured from the actual Move-Out Date to the actual Substantial Completion date as defined below. By executing this Work Authorization, the Unit Owner acknowledges (1) the estimated Move-Out Date, and (2) the Estimated Substantial Completion date provided on the first page of this document, as may be adjusted in accordance with these terms and conditions. These dates are merely estimates and the actual Move-Out Date and actual Substantial Completion date will likely vary.

2. The Move-Out Date is the date upon which the Contractor will commence Repair Work. Unit Owner agrees to complete move out of all personal property, to remove and properly dispose of all trash, and to leave the premises by the Move-Out Date so that the home is fully, and without impediment, available to the Contractor to begin Repair Work. The Unit Owner agrees that the move-out requirements contained in Exhibit 2 (Requirements for Move-Out/Move-In) will be completed to the reasonable satisfaction of the Contractor and that such completion is a precondition to the start of Repair Work.

3. On at least twenty business days notice, the Contractor will schedule the Move-Out Date with the Unit Owner. This date will not be scheduled until all preconditions to the start of Repair Work set forth in the Requirements for Move-Out/Move-In (Exhibit 2) have been satisfied, including but not limited to, receipt of required permits and scheduling and/or delivery of materials with long-delivery times.

4. Contractor shall have complete control of the Unit at all times during the Construction Duration, and to the extent the Unit Owner needs to enter the Unit, he shall do so with advance notice to the Contractor and in such a manner so as not to interfere with the Repair Work. Separate contractors of Unit Owner shall not enter the Unit during the Construction Period unless accompanied by Contractor's authorized representative and only after they have executed a visitor waiver in which they assume all risks, and waive all claims, in connection with entering the Unit during the construction period.

5. Unit Owner, at his (her) own expense, shall be responsible for ordinary exterior maintenance of the Unit including maintenance of landscaping, pools, exterior finishes, roof, etc. and payment of all utility bills, property taxes and other similar expenses during the Construction Duration. The Contractor will be responsible for maintaining the areas inside and outside of the Unit affected by its work.

6. To the extent the Unit Owner has property insurance on the Unit, he (she) shall provide proof of such insurance to the Contractor prior to the Move-Out Date and will maintain such property insurance during the Construction Duration. **If the Unit Owner does not have**

**property insurance or cannot obtain such insurance, Unit Owner acknowledges that he (she), not the Contractor, will be liable for damage to the Unit, other than that caused by the Repair Work.**

7. Drywall Removal and Cleanup. The initial phase of the Repair Work involves demolition, including the removal of all drywall, as set forth in the Remediation Protocol, drywall debris and visible dust, and elimination of all Chinese-drywall associated odors and Contamination. After completion of demolition, the Contractor will perform a careful cleaning of the Unit to remove all remaining drywall debris and visible dust as provided for in the Remediation Protocol.

8. Contractor Certification. Throughout the cleanup, the Unit will be "aired out" by leaving all windows and doors open. Such "air-out" period will be no less than 24 hours. Contractor will continue to clean all surfaces in the Unit, including, by vacuuming using, drywall bags and/or, where appropriate or necessary, HEPA (high efficiency particulate air) filters, until a visual inspection by the Contractor verifies that all surfaces in the work area and any adjacent areas (including, but not limited to, floor, walls, ceiling, wall cavities, trusses, joists, studs, pipes, beams, ledges, and framing) are free of visible dust, debris or residue and that no detectable odor of Chinese drywall remains. Evaluation of odor is to be performed at first entry to the Unit after it has been vacant and with all windows and doors closed for a period of at least 8 hours. Contractor shall certify completion of the drywall and Contamination removal and cleanup work by executing the Contractor Certification attached as Exhibit 5 and providing such Certification to the Court Approved Settlement Administrator, Unit Owner and Unit Owner's attorney. After completion of the Contractor Certification, the Contractor will notify the Environmental Inspector that the Unit is ready for inspection.

9. Environmental Certification. Following the Contractor Certification, and notice that the Unit is ready for environmental inspection, the Environmental Inspector will perform an independent inspection to verify the Contractor's certification that all drywall has been removed in accordance with the Remediation Protocol, including all debris and visible dust, and that there is no detectable odor of Chinese drywall in the Unit. If the Environmental Inspector concludes that the Unit is not free of any and all Chinese drywall-associated odors and Contamination, the Contractor will perform remediation work as required to complete the remediation as judged by the Environmental Inspector's visual inspection and odor evaluation of the Unit. Once the Environmental Inspector concludes that the Unit is free of any and all Chinese drywall-associated odors and Contamination and that the atmosphere in the Unit is representative of the atmosphere in homes built without Chinese drywall, he (she) will execute the Environmental

Certification attached as Exhibit 8, and provide such Certification to the Settlement Administrator, Unit Owner and Unit Owner's attorney.

10. Substantial Completion shall be defined as the date that the Repair Work is sufficiently completed, as determined by the Contractor, to allow the Unit Owner to occupy or utilize the Unit for its intended use. Substantial Completion occurs only after all government inspections required for the Unit Owner to occupy or utilize the Unit are complete and any corresponding certificates (for example, a Certificate of Occupancy, if applicable) are issued by the authority with jurisdiction over the project. For the purposes of this definition, remaining punch list items or warranty work commonly associated with residential construction, including minor finish work, touch ups, or correction of defects or warranty items, shall not preclude substantial completion so long as such work may be safely performed without unreasonable disruption while the Unit Owner occupies or utilizes the Unit.

11. So as to minimize the risk of damage and/or theft, certain appliances that are not required for a Certificate of Occupancy may be delivered and installed on the day the Unit Owner moves back in and assumes responsibility for the Unit.

12. Punch List: If at the time of Substantial Completion there are any items that do not affect occupancy of the Unit, but do require finishing or correcting, the Contractor shall prepare, with input from, and the agreement of, the Unit Owner, a comprehensive Punch List of such items that are to be completed or corrected prior to final payment. Failure to include an item on the Punch List does not alter the responsibility of the Contractor to complete all Repair Work.

### III. WARRANTY

1. Contractor warrants that materials and equipment furnished as part of the Repair Work shall be of good quality and new unless otherwise agreed to by the parties to the Settlement Agreement Regarding Claims Against Coastal Construction of South Florida, Inc. Related to Villa Lago at Renaissance Commons in MDL No. 2047 ("Coastal Settlement Agreement"). Contractor's warranty includes damage or defects in the Repair Work caused by Contractor or those for whom Contractor is responsible. Damage caused by anyone beyond Contractor's control is not warranted by Contractor. If required by the Unit Owner, Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

2. As to items within the Unit that were purchased and installed by Contractor but that were not manufactured by Contractor, including, but not limited to, any HVAC equipment, appliances, other equipment

or "consumer products", Contractor provides no warranty on such items (other than as to proper installation), but shall transfer to Unit Owner the manufacturer's warranty. However, Contractor warranty does extend to the installation of such items. All items, appliances, or equipment reinstalled or replaced shall be tested-in-place prior to, or at, the Move-In Date. Contractor will assign to the Unit Owner all third party warranties pertaining to the Repair Work, and the materials and equipment incorporated therein, including without limitation, warranties of all subcontractors and suppliers. Upon Substantial Completion of the Repair Work, and as a condition to final payment, Contractor shall deliver to the Unit Owner all such warranty documents. Contractor shall perform the Repair Work in such manner so as to preserve all such warranties.

3. **Contractor is not responsible for, and accepts no liability for, any defects or deficiencies in work that was not replaced or reinstalled by Contractor.**

4. If, within one year or other time frame required by applicable law or regulation, whichever is longer (the "Warranty Period") after the date of Substantial Completion of the Repair Work, any of the Repair Work is found to be not in accordance with the requirements of the Work Authorization, the Unit Owner shall promptly notify the Contractor, in writing, of the condition, and the Contractor shall correct such condition promptly. If the Unit Owner fails to notify the Contractor during the Warranty Period and fails to give the Contractor an opportunity to make the correction, the Unit Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty.

IV. **MISCELLANEOUS**

1. The Contract Sum, excluding any Unit-Owner Requested Work, will be paid by the parties to the Coastal Settlement Agreement. The Unit Owner is not responsible for paying the Contractor any of the costs associated with its work, except to the extent the Contractor undertakes any Unit-Owner Requested Work.

2. Upon Substantial Completion and the submission by the Contractor to the Unit Owner of a final release of lien or liens, or such other sufficient evidence, demonstrating that any actual or potential liens filed in related to the Repair Work have been either released or bonded off such that the Unit Owner's title is clear of all liens related to the Repair Work ("All Clear Lien Certificate") prior to moving back into the home, the Unit Owner shall sign an additional release in favor of the Contractor in the form attached as Exhibit 5.

3. The Contractor has determined the square footage of the home using the American National Standard for Single-Family Residential Building's methodology attached as Exhibit 6. The square footage is listed on the first page of this document.

4. If concealed or unknown physical conditions at the site differ materially from those indicated in the Work Authorization or from those conditions ordinarily found to exist or in the event of a Force Majeure (as defined in this paragraph), the Contract Sum and estimated Construction Duration (as measured from the estimated Move-Out Date to the estimated Substantial Completion date provided on the first page of this document) shall be subject to equitable adjustment. "Force Majeure" means any of the following acts or events that prevents the affected Party from performing its obligations in accordance with this Work Authorization, if such act or event is beyond the reasonable control of and not the result of the fault or negligence of the affected Party and such Party has been unable to overcome such act or event by the exercise of due diligence or taking reasonable alternative measures: (a) unusually severe storms of extended duration or impact, other than heavy storms or climatic conditions which could generally be anticipated by the Contractor or subcontractors, as well as floods, droughts, tidal waves, fires, hurricanes, earthquakes, landslides, or other catastrophes; (b) wars, acts of terrorism, civil disturbances, riots, insurrections and sabotage; (c) transportation disasters, whether by sea, rail, air or land; (d) any industry-wide labor boycotts, strikes, picketing or similar situations, (e) actions of a Governmental Authority that were not voluntarily induced or promoted by the affected Party, or brought about by the breach of its obligations under this Work Authorization, including any change in Laws. It is expressly understood and agreed that Force Majeure shall not include any of the following events: (1) economic hardship; (2) changes in market conditions; (3) late delivery of materials, except to the extent such late delivery is itself caused by an event of Force Majeure; (4) any strike, work-to-rule action, go-slow or similar labor difficulty that is limited to the Contractor's and/or subcontractor's employees; or (5) jurisdictional disputes or labor actions affecting a single or small group of contractors or suppliers.

5. In the event that a dispute arises between the Unit Owner and Contractor, this dispute will be resolved in accordance with the dispute resolution process set forth in the Remediation Protocol.

6. If the Contractor encounters any materials that it believes may be hazardous, excluding Chinese drywall, materials made hazardous by Chinese drywall, and other materials routinely found in residential construction (collectively, "Excluded Items"), the Contractor will immediately stop work and notify the Settlement Administrator, Unit

Owner, and the Unit Owner's attorney. Contractor shall not resume work until Unit Owner removes the hazardous material. To the fullest extent permitted by law, the Unit Owner shall indemnify and hold harmless the Contractor and its subcontractors from claims, damages, losses, delays, and expenses, including but not limited to attorneys' fees and costs, arising out of or resulting from the hazardous materials less Excluded Items. The Unit Owner shall not be responsible for materials and substances brought to the site by the Contractor or for the drywall being remediated.

7. Before starting work, Contractor shall provide proof of the following insurance coverage:

TBD

8. Unit Owner does not waive claims against the Contractor for bodily injury or property damage caused by the Work Authorization and/or the Repair Work, except the Unit Owner waives claims for such injury and/or damage that seek recovery of emotional distress (except for such emotional distress claims related to a bodily injury claim), loss of profits, loss of use, and/or diminution of property value damages. "Loss of Use" does not include loss of use during the Construction Duration.

9. By entering into this Work Authorization, Unit Owner affirmatively represents that it is not aware of any code violations, concealed conditions materially affecting the Unit, leaks, or Defects unrelated to the drywall. "Defects" means a condition, other than the presence of Chinese drywall and anything that may have been contaminated by Chinese drywall, that would either (a) have a significant adverse effect on the value of the Unit, (b) significantly impair the health or safety of occupants or of the workers, or (c) that if not repaired, removed or replaced, shorten or adversely affect the expected normal life of the Unit. Unit Owner acknowledges that he (she) has had the opportunity to review the Work Authorization with counsel of his (her) choice and is encouraged to do so.

This Work Authorization entered into as of the Effective Date first written above.

| | |
|---|---|
| _____ | _____ |
| **UNIT OWNER** *(Signature)* | **CONTRACTOR** *(Signature)* |
| Raymond and Rogina Rizk / Owner | |
| *(Printed name and title)* | *(Printed name and title)* |

H. Minor Pipes, III

Receiver Appointed by the MDL Court

### Appliance, Fixture, Equipment and Fire System Schedule

All Appliances shall mean refrigerators, freezers, dishwashers, washers, dryers, garbage disposals, wine coolers, ice machines, microwaves, cooktops, ovens, ranges, and warming drawers (subject to the reuse of certain items from other units in the foreclosed non-KPT units as set forth in the Remediation Protocol). Nothing in this schedule is intended to limit or modify the Remediation Protocol.

| Fixture/ Appliance | Manufacturer | Model No | Quantity |
|---|---|---|---|
| Refrigerator | | | |
| Range | | | |
| Cook Top | | | |
| Oven | | | |
| Microwave | | | |
| Range Hood | | | |
| Dishwasher | | | |
| Freezer | | | |
| Washer | | | |
| Dryer | | | |
| Garbage Disposal | | | |

In accordance with the Remediation Protocol, in the event that fixtures need replacement, the replacement will be with new equipment, fixtures and not with reconditioned ones (subject to the reuse of certain items from other units in the foreclosed non-KPT units as set forth in the Remediation Protocol). Nothing in this schedule is intended to limit or modify the Remediation Protocol.

| Fixture/ Appliance | Manufacturer | Model No | Quantity |
|---|---|---|---|
| Ceiling Fan | | | |
| Chandelier | | | |
| Light Fixture | | | |
| Hot Water Heater | | | |
| Cabinets | | | |
| Countertop | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

In accordance with the Remediation Protocol, the following fire and security systems will be replaced regardless of condition. Nothing in this schedule is intended to limit or modify the Remediation Protocol.

| Fixture/ Appliance | Manufacturer | Model No | Quantity |
|---|---|---|---|
| Smoke Detectors | | | |
| Security Alarms | | | |
| Intercoms | | | |
| Smoke Detectors | | | |
| Fire-Suppression Sprinkler Systems | | | |
| Carbon Monoxide Alarms | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Room Finish Schedule**

In accordance with the Remediation Protocol, existing finishes and trim that are removed during the remediation will be replaced with new finishes and trim of like kind and quality. The following is a schedule of finishes and trim found in the Unit prior to remediation. Nothing in this schedule is intended to limit or modify the Scope of Work.

| Room Name | Wall Color/Finish | Ceiling Color /Finish | Floor Type/Color | Trim Color |
|---|---|---|---|---|
| Living Room | | | | |
| Dining Room | | | | |
| Kitchen | | | | |
| Hallway | | | | |
| Stairs | | | | |
| Den | | | | |
| Family Room | | | | |
| Bathroom | | | | |
| Master Bed Room | | | | |
| Master BR Closet | | | | |
| Master Bath | | | | |
| Bed Room 1 | | | | |
| Bed Room 2 | | | | |
| Bed Room 3 | | | | |
| Bathroom | | | | |
| | | | | |
| | | | | |

Add Photos for Multi Colored Walls