UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**PRICHARD HOUSING AUTHORITY'S
MOTION FOR PAYMENT OF ATTORNEY FEES AND EXPENSES**

COMES NOW, the Prichard Housing Authority (PHA) and moves the Court to enter an Order for the payment of attorney fees and expenses. This motion is based upon a stand-alone settlement agreement entered into between PHA and Knauf Plasterboard Tiajin before the class action settlement in these consolidated proceedings. In support of this motion, PHA states as follows:

1. PHA contracted with The Mitchell Company, a general contractor, to build 36 HUD homes under the Federal Hope VI program in Mobile, Alabama in 2006. PHA initially owned all 36 homes in the Bessemer Subdivision; however, 7 of the homes were sold by PHA, leaving PHA with the 29 homes.

2. In late-2008, Knauf KPT Chinese-Drywall was discovered in all 29 of the PHA-owned homes. Most, if not all of the homes, were under a "rent-to-own" program aiding low-income families in their quest to gain home-ownership. The houses were quickly vacated after PHA discovered the Chinese Drywall. As a result, PHA sustained substantial damages, including lost rents and reduction in property values due to vandalism.

3. PHA retained the Taylor Martino law firm in early 2009 to pursue all remedies available to PHA.

4. On June 17, 2009, Taylor Martino, filed a lawsuit against The Mitchell Company only in the Circuit Court of Mobile County, Alabama bearing civil action number CV-2009-9011118. A filed copy of the Complaint is attached hereto as **Exhibit "A"**.

5. The Mitchell Company in turn filed third-party complaints against Interior Exterior, Creola Ace Hardware (local supplier) and George's Drywall (the installer). Knauf USA was named as a defendant in the lawsuit, but the parties never obtained service or jurisdiction over Knauf Plasterboard Tiajin (KPT), the manufacturer.

6. A separate law firm represented the 7 homeowners who purchased homes in the Bessemer Subdivision. The homeowners filed lawsuits and named PHA as a Defendant. The state-court judge consolidated the cases.

7. The merged-cases were litigated extensively by the parties in state court, including taking and defending numerous depositions, preparing, filing and defending various motions – including Motions for Summary Judgment – extensive document production, and a complicated pleading practice. A copy of the Mobile County Docket Sheet is attached hereto as **Exhibit "B".**

8. After several meetings and phone calls with PSC members regarding the benefits of joining the MDL proceedings, PHA joined the MDL litigation on December 9, 2009. It was included in MDL Omnibus I Complaint as Plaintiff 1117. That is, PHA had the same cause of action filed in two separate courts, but no parties objected to the dual path. The 7 homeowners consolidated in the PHA's state-court action did not join the MDL. Thus the state-court action continued to move forward and PHA continued to

litigate extensively in the state-court action after it became involved in the MDL proceedings.

9. Steve Usdin with the New Orleans law firm of Barrasso, Usdin, MDL counsel for the Mitchell Company, arranged a mediation with all of Mobile County parties, but arranged for KPT to attend as well. The first mediation was held October 18, 2010, in New Orleans. A verbal settlement agreement was reached at the end of October 2010 mediation; however, a written agreement could not be agreed upon. Knauf filed a motion with this Court to enforce the verbal settlement agreement and PHA joined Knauf in the motion. The Court, after hearing the arguments, ordered all parties to a second mediation, which occurred in New Orleans on June 24, 2011, eight months after the first failed mediation.

10. The attorneys for PHA had to prepare for and mediate the new issue of vandalism that occurred to the PHA properties during the eight months. Counsel for PHA was successful in obtaining an additional $125,000.00 for the PHA and the case was finally settled in the fall of 2011. The defendants agreed to pay PHA $597,500 cash, but Taylor Martino did not take its one-third attorney fee from the cash settlement. In a private contract, Knauf agreed at mediation to pay the attorney fees and expenses. A copy of the term sheet executed at the mediation is attached (**Exhibit "C"**). A copy of the formal executed settlement agreement is also attached (**Exhibit "D"**). The private agreement between PHA and Knauf was reached before any class action settlement. It was also reached outside the "Pilot Program."

11. The attorneys for PHA entered into a private contingency fee agreement with PHA for one-third of any recovery, in addition to payment of expenses. A copy of the Contingency Fee Contract is attached hereto as (**Exhibit "E")**.

12. The parties agreed as set forth in the settlement agreement that Section X. of the Settlement Agreement for the Demonstration Remediation of Homes (DRA) with KPT Drywall would provide for payment of attorney fees and expenses in "accordance with paragraphs 9 and 10 of the DRA."

13. Paragraph X. of the Remediation Agreement basically states that the Knauf entities and the Plaintiff's Steering Committee (PSC) will determine the amount of the attorney fees due and owing "the counsel for the homeowners" within six months of execution of the Remediation Agreement. The Court's website indicates that the Remediation Agreement was posted on October 14, 2010. Based upon information or belief, Knauf and the PSC have not reached an agreement concerning attorney fees and expenses. Thus, the Court order states that "the dispute will be submitted to the MDL Court for resolution."

14. Paragraph X. of the Remediation Agreement is silent concerning: when attorneys for homeowners will be paid, the amount homeowner attorneys will be paid; or the amount the PSC may deduct from the fee of homeowner attorneys. Paragraph X does not address attorney fees for the state court cases where the parties have engaged in substantial litigation.

15. More importantly, the Settlement Agreement between PHA and Knauf states: "In accordance with Section X of the Remediation Agreement—and in addition to the other monetary payments provided herein—KNAUF agrees to pay the costs and

reasonable attorneys' fees in accordance with paragraphs 9 and 10 of the Remediation Agreement. Prichard shall not move the Court for payment of attorneys' fees until at least thirty (30) days after remediation pursuant to section 1.3 is complete."

16. Remediation of the PHA's homes was finalized on July 25, 2012. Therefore, more than thirty (30) days has expired following the completion of the mediation. Plaintiffs' counsel sent a letter to Knauf's counsel in an effort to initiate and receive payment of the attorney fees and expenses (**Exhibits "F" & "G"**). Counsel for Knauf responded to the offer to negotiate stating that "it is premature at this time to prioritize for attorney fee purposes in any one set of claims over any of the additional claims." (**Exhibit "H"**). Obviously, PHA and Knauf have not and cannot reach an agreement on the amount of the fees or the timing of the fees. Again, PHA takes the position that it reached a private settlement agreement with Knauf prior to any class action settlement. PHA seeks to enforce the private settlement agreement reached with Knauf.

17. The PHA attorneys expressed their attorney fee concerns with Arnold Levine at the first mediation. Mr. Levine stated that the PSC would allow all of the time spent by PHA attorneys litigating the state court action would be considered "common time" in the MDL thus allowing the PHA attorneys to receive a portion of the fee paid to the PSC at the conclusion of the MDL. (See letter to Mr. Levine confirming this attached as **Exhibit "I".**) However, based on subsequent communications with the PSC and based on a review of this Court's order concerning benefit fee and expenses, counsel for PHA is uncertain and concerned.

18.     The Taylor Martino firm is a small law firm which cannot wait indefinitely for payment of an unknown attorney fee after an unknown deduction by the PSC sometime in the future.  The Taylor Martino firm has spent approximately 532 hours pursuing this case in state and federal court (as well as time spent for various other common benefit items requested by members of the PSC).   Further, PHA's attorneys have incurred expenses of approximately $53,660.21 which represents a substantial investment for this small law firm.  The expenses are attached hereto as **Exhibit "J".** The expenses were reimbursed from the settlement, thus PHA is now due repayment.

19.     The undersigned attorney for PHA contacted PSC member Arnold Levin with the concerns about the attorney fee and expense issues.  PHA counsel received a letter dated February 1, 2011 (**Exhibit "K"**).  Again, it appears that PHA's private attorney fee and expenses agreement with Knauf is being ignored and PHA's fees and expenses will be treated the same as other fees and expenses without regard to the volume of work performed. This would be an injustice.

20.     Further, counsel for PHA stands in a unique position when compared to a majority of the plaintiffs in the MDL class action. PHA's counsel spent a considerable time and expense litigating this case independent of the MDL.  PHA certainly benefitted from the work of the PSC and does not dispute this fact. It was the MDL that "brought Knauf to the table." However, counsel for PHA, unlike the majority of other plaintiff lawyers did not "ride the coattails of the PSC", instead PHA counsel did much more. Thus, Taylor Martino does not want its claim for attorney's fees to get lost in the MDL settlement and the litigation for the 29 homes get treated equally as 29 homes who

"rode coattails." Taylor Martino simply wants to be heard and simply seeks just and fair compensation.

21. Lastly, PHA's case is unique in that this case was not settled under the terms of the class action settlement. The PHA settlement was a private stand alone settlement reached before the class settlement. Further, PHA takes the position this case was not settled pursuant to Demonstration Remediation of Homes ("DRA") settlement because the DRA was designed for Residential homes, not commercial business.

22. Counsel for PHA is being damaged and will continue to be damaged as long as the Knauf entities and the PSC withhold attorney fees and expenses and PHA and counsel for PHA respectfully request that this matter be set for hearing so that these matters can be addressed.

WHEREFORE, the above premises considered the PHA and its attorneys respectfully move the Court to set a hearing date and enter an Order concerning the payment of attorney fees.

Respectfully Submitted,

Attorneys for Plaintiff, Prichard Housing Authority

 /s/ Richard H. Taylor
RICHARD H. TAYLOR
TAYLOR MARTINO, P.C.
51 St. Joseph Street
Mobile, Alabama 36602
T: (251) 433-3131
F: (251) 433-4207
richardtaylor@taylormartino.com