UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to:  *All Cases* | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION
TO CONSTRUE SETTLEMENT AGREEMENT**

Defendants Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia ("Knauf Defendants") move this Court to construe the "Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047" ("Settlement Agreement") to deny lump sum payments to Option 1, 2, and 3 claimants and Mixed Property Owners selecting Options 2 or 3 whose affected property at all relevant times has been vacant, a secondary residence, or a vacation property. In the alternative, the Knauf Defendants move this Court to construe the Settlement Agreement to provide for 70% of the normal lump sum payment to Option 1 and 2 claimants and 70% of the lump sum payment provided to Mixed Property Owners selecting Options 2 or 3 whose affected property has been at all relevant times vacant, a secondary residence, or a vacation property.

The Settlement Agreement provides for a lump sum payment to claimants who are "Residential Owners." To be a Residential Owner, a claimant's affected property must be his or her permanent home and the claimant must dwell permanently or continuously at the affected

property. Therefore, Option 1, 2, and 3 claimants and Mixed Property Owners selecting Options 2 or 3 whose affected property at all relevant times has been vacant, a secondary residence, or a vacation property are not Residential Owners under the Settlement Agreement and should not be entitled to a lump sum payment.

Alternatively, Option 1 and 2 claimants and Mixed Property Owners selecting Options 2 or 3 whose affected property has been at all relevant times vacant, a secondary residence, or a vacation property should not be entitled to the complete lump sum payment. The lump sum payment includes, among other things, compensation for alternative living expenses during the remediation of the affected property. However, if the affected property is not the claimant's primary residence, then the claimant does not incur any alternative living expenses and should not be entitled to the portion of the lump sum payment designed to compensate claimants for those expenses.

## I. Background

Option 1 of the Settlement Agreement (Program Contractor Remediation Option/Property Not Yet Remediated) provides for remediation of the claimant's property "plus, for Residential Owners, the applicable Other Covered Expenses . . . ." Rec. Doc. No. 16407-3, at p. 14. Residential Owners are defined as "[a]ll members of the Class who are owners of and reside or have resided in Affected Property." *Id*. at p. 2. "Other Covered Expenses" includes:

> **reimbursement for all alternative living expenses**, personal property damage, maintenance of the KPT Property during remediation, including, but not limited to, payment of all utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses, incurred as a result of the remediation of the KPT Property, pursuant to Section 4.3.1.1 through 4.3.1.3.

*Id*. at p. 8 (emphasis added).

Similar to Option 1, Option 2 of the Settlement Agreement (Self-Remediation Option) provides for remediation of the claimant's property plus "for Residential Owners" the applicable Other Covered Expenses. Options 1 and 2 claimants with properties 3,500 square feet or less (under air) receive a lump sum payment of $8.50 per square foot, and those with greater than 3,500 square feet receive a lump sum payment of $10.00 per square foot. *Id*. at pp. 14 & 16. Option 1 claimants also generally receive a delay period payment of $1.50 per square foot per month the claimant is displaced beginning three months after remediation begins if the remediation is not substantially completed by that time. *Id*. at p. 15.

Option 3 of the Settlement Agreement (Cash-Out Option) provides for Residential Owners to receive, among other things, "a reduced Lump Sum Payment of $3.50 per square foot" because the claimant "will not incur alternative living expenses." *Id*. at p. 18. The reduced lump sum payment of $3.50 per square foot is 41% of the normal lump sum payment for properties less than or equal to 3,500 square feet and 35% of the normal lump sum payment for properties greater than 3,500 square feet.

Mixed Property Owners are defined under the Settlement Agreement as "an Owner of a Mixed Property," and a Mixed Property is defined as "Affected Properties in which the KPT Drywall Percentage is less than or equal to 90%." *Id*. at p. 6. Mixed Property Owners may only select Options 2 or 3 of the Settlement Agreement. *Id*. at p. 18. If the Mixed Property Owner selects Options 2 or 3, the Remediation Fund will pay, among other things, the normal lump sum payment "multiplied by the KPT Drywall Percentage." *Id*. at pp. 18-19.

Claimants participating in the settlement submit a "Lump Sum Payment Eligibility Form" to the Settlement Administrator. On the form, the claimant lists, among other things, his or her dates of occupancy, the current use of the property, and the prior use of the property. For the

3

current use of the property, the claimant answers the question, "How is the affected property currently used by the owner?" by selecting one of the following choices: Primary Residence, Secondary Residence, Vacation Property, Rental Property, Investment Property, Business, Vacant, Other. For the prior use of the property, the claimant answers the question, "How was the property used by the owner prior to the discovery of Chinese Drywall?" by selecting one of the choices noted above. By signing the form, the claimant and/or his or her counsel "represent and warrant . . . that all information provided on this form is true and correct to the best of my knowledge."

Multiple claimants have submitted Lump Sum Payment Eligibility Forms and for both of the preceding questions the claimants have designated their property as vacant, a secondary residence, or a vacation property. *See, e.g.*, Exhibit A (redacted Lump Sum Payment Eligibility Form listing a property as vacant); Exhibit B (redacted Form listing a property as a secondary residence); Exhibit C (redacted Form listing a property as a vacation property). The Knauf Defendants and some of these claimants dispute whether these claimants are entitled to a lump sum payment or, in the alternative, a reduced lump sum payment to account for the fact that these claimants have not and will not incur alternative living expenses in connection with the remediation of their properties.

**II.    Law and Analysis**

    **A.    Construction of Settlement Agreements**

Section 15 of the Settlement Agreement provides that "the Court shall retain (a) continuing jurisdiction over the Litigation, the Class, the Participating Class Members, the Knauf Defendants and the Settlement for the purposes of administering, supervising, construing and enforcing the settlement; and (b) continuing and exclusive jurisdiction over (i) the Settlement

Funds and (ii) the distribution of same to Participating Class Members." Rec. Doc. No. 16407-3, at p. 66. The Settlement Agreement further provides that it should be "construed and enforced in accordance with[] the substantive laws of the State of Louisiana." *Id*. at p. 74.

In turn, Louisiana law provides that a settlement agreement is governed by the same general rules of construction that are applicable to contracts. *Delesdernier v. Delesdernier*, 12-38 (La. App. 5 Cir. 5/31/12), 95 So. 3d 588, 599-600. Regarding the interpretation of contracts, Louisiana law provides that the "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE art. 2045. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." LA. CIV. CODE. art. 2048. Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art. 2050. "In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation." LA. CIV. CODE art. 2057. It should be noted that the Settlement Agreement at issue was negotiated at arms-length between parties with equal bargaining power and should be construed accordingly.

### B. Vacant Property, Secondary Residence, and Vacation Property Option 1, 2, and 3 Claimants and Mixed Property Owners Selecting Options 2 or 3 Are Not Residential Owners and Are Not Entitled to the Lump Sum Payment

The Settlement Agreement provides that claimants who are "Residential Owners" and select Options 1, 2, or 3 (or Mixed Property Owners selecting Options 2 or 3) are entitled to a lump sum payment in order to compensate them for Other Covered Expenses including alternative living expenses. To be a Residential Owner, a claimant must "reside or have resided" in the affected property.

5

Oxford's dictionary defines "reside" as to "[h]ave one's permanent home in a particular place."  *Oxford University Press Online English Dictionary, available at*, http://oxforddictionaries.com/definition/english/reside.  Similarly, Merriam-Webster's dictionary defines "reside" as "to dwell permanently or continuously."  *Merriam-Webster Online English Dictionary, available at,* http://www.merriam-webster.com/dictionary/reside.  By definition, vacant properties, secondary residences, and vacation properties are not "permanent home[s]" and claimants do not "dwell permanently or continuously" on those types of properties.  Therefore, Option 1, 2, and 3 claimants (and Mixed Property Owners selecting Options 2 or 3) of those properties are not "Residential Owners" pursuant to the Settlement Agreement and should not be entitled to lump sum payments.

    **C.**    **Alternatively, Vacant Property, Secondary Residence, and Vacation Property Option 1 and 2 Claimants and Mixed Property Owners Selecting Options 2 or 3 Should Not be Compensated for Alternative Living Expenses**

In the alternative, assuming the Court finds that vacant property, secondary residence, and vacation property Option 1, 2, and 3 claimants and Mixed Property Owners selecting Options 2 or 3 are "Residential Owners" under the Settlement Agreement, those claimants (except for Nonmixed Property Owners who choose Option 3) should nevertheless have their lump sum payments reduced to 70% of the normal lump sum payment (or 70% of the lump sum payment provided to Mixed Property Owners who select Options 2 or 3) to account for the fact that those claimants do not incur alternative living expenses.

As noted by the Settlement Agreement, the lump sum payment compensates the claimant for "Other Covered Expenses."  These Other Covered Expenses include, among other things, "reimbursement for all alternative living expenses."  This compensation for alternative living expenses is an acknowledgment that parties will incur alternative living expenses while their

6

property is being remediated. However, Option 1 and 2 claimants and Mixed Property Owners selecting Options 2 or 3 will not incur alternative living expenses if the property that is being remediated is not their primary residence. That is, claimants whose affected property is vacant, a secondary residence, or a vacation property have the ability to live in their primary residence while their affected property is being remediated without incurring alternative living expenses. By receiving alternative living expenses as part of the lump sum payment, these claimants receive a windfall over other residential class members who constitute the vast majority of the class and reside in their homes before and/or after remediation and incur alternative living expenses during the remediation.

In this alternative argument, Knauf proposes a 30% reduction of the normal lump sum payment (or a 30% reduction in the lump sum payment calculation that is made to Mixed Property Owners) be made to compensate the claimant for their alternative living expenses. This 30% reduction is both fair and equitable to claimants when compared to Option 3 of the Settlement Agreement which already reduces the lump sum payment by 59-65% to account for the fact that Option 3 claimants do not incur alternative living expenses.[1] Therefore, Option 1 and 2 claimants and Mixed Property Owners whose affected property has been at all relative times vacant, a secondary residence, or a vacation property should have their lump sum payments reduced to 70% of the normal lump sum payment (or a 30% reduction in the lump sum payment made to Mixed Property Owners) to account for the fact that those claimants do not incur alternative living expenses.

III. Conclusion

---

[1] Unlike Nonmixed Property Owners, Mixed Property Owners who select Option 3 are not currently subjected to this 59-65% reduction in the lump sum payment.

For the foregoing reasons, the Court should construe the Settlement Agreement to deny lump sum payments to Option 1, 2, and 3 claimants and Mixed Property Owners selecting Options 2 or 3 whose affected property at all relevant times has been vacant, a secondary residence, or a vacation property.  In the alternative, the court should construe the Settlement Agreement to provide for 70% of the normal lump sum payment (or a 30% reduction in the lump sum payment made to Mixed Property Owners) to Option 1 and 2 claimants and Mixed Property Owners selecting Options 2 or 3 whose affected property has been at all relevant times vacant, a secondary residence, or a vacation property.

>Respectfully submitted,
>
>BY:  /s/ Kerry J. Miller
>KERRY J. MILLER (#24562)
>KYLE A. SPAULDING (#29000)
>**FRILOT L.L.C.**
>1100 Poydras Street
>Suite 3700
>New Orleans, LA 70163
>Telephone: (504)599-8194
>Facsimile: (504)599-8145
>Email: kmiller@frilot.com

## **CERTIFICATE**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 4th day of April, 2014.

>/s/ Kerry J. Miller