UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 09-2047<br><br>SECTION: L |
| This Document Relates to:<br><br>*Little et al., v. Taishan Gypsum Co., Ltd., et al.*<br>Case No. 14-587 | DISTRICT JUDGE FALLON<br>MAGISTRATE JUDGE WILKINSON |

**MEMORANDUM OF LAW IN SUPPORT OF LAFARGE NORTH AMERICA INC.'S MOTION FOR RULE TO SHOW CAUSE WHY THE LAFARGE ENTITIES SHOULD NOT BE DISMISSED**

For the reasons stated in open court at the status conference on April 17, 2014, defendant Lafarge North America Inc. ("LNA") seeks an order requiring the plaintiffs in the above-captioned action to appear and show why their claims against LNA and certain other entities should not be dismissed. Such an order is consistent with the procedure adopted by the Court in the *Benoit* action (Omni XI), which resulted in the dismissal with prejudice of identical claims based upon the same allegedly-defective wallboard at issue in this case. As in *Benoit*, the claims in this action have no factual support, and should be dismissed with prejudice unless the plaintiffs can demonstrate such support to the Court's satisfaction.

A.  **The *Benoit* Action**

Lafarge North America Inc. ("LNA") was originally named as a defendant in the *Benoit v. Lafarge S.A.* (Omni XI) matter in this MDL, along with Lafarge S.A. and Lafarge Onoda Gypsum in Shanghai (collectively, the "Lafarge Entities"), and others.

The *Benoit* complaint alleged that the Lafarge Entities, along with certain other manufacturer defendants, were responsible for manufacturing, distributing, or selling the problematic drywall in the *Benoit* plaintiffs' homes.

After entering an appearance in the *Benoit* matter, counsel for LNA, along with counsel for certain other defendants, began corresponding with the Plaintiffs' Steering Committee ("PSC") regarding the basis for the claims asserted against the Lafarge Entities and the other manufacturing defendants (collectively, the "Benoit Manufacturing Defendants"). The Benoit Manufacturing Defendants suggested that they had been sued in error, and that in truth there was no connection between the Benoit Manufacturing Defendants and the problematic drywall in the *Benoit* plaintiffs' homes. The PSC immediately agreed that if the evidence showed that the Benoit Manufacturing Defendants had no connection to the problematic drywall in plaintiffs' homes, then those defendants should be dismissed. At the request of the Court, in the interests of efficiently bringing the true facts of the matter to light, the PSC undertook an informal and cooperative investigatory process, with the PSC gathering and sharing information with the Benoit Manufacturing Defendants regarding the markings and origin of the problematic drywall in the plaintiffs' homes, and the Benoit Manufacturing Defendants gathering and sharing information with the PSC regarding the markings, manufacturing, and sales of any drywall manufactured by the Benoit Manufacturing Defendants or affiliated companies in China. All parties engaged in this joint investigation with good faith and cooperation, and the process produced significant and probative evidence on the issue in question. That evidence established that there was, in fact, no connection

whatsoever between the Benoit Manufacturing Defendants and the problematic drywall in the plaintiffs' homes.

Specifically, the evidence showed that the drywall at issue in the *Benoit* plaintiffs' claims consisted of board bearing a single set of markings. Namely:

**Manufactured to Conform to ASTM Standard C36**
**4 x 12 x 1/2           Made   in   China**

The markings are in purple ink, the text is in a serif font, and large dots sometimes appear at the ends of the phrase "Made in China." A representative photograph is attached as Exhibit A. None of the Lafarge Entities or other Benoit Manufacturing Defendants is identified in any of the markings. Diligent efforts by both the PSC and the Benoit Manufacturing Defendants found no evidence connecting the Lafarge Entities or any of the other Benoit Manufacturing Defendants to this "purple markings" drywall, either through labels, end tape, sales and shipping records, or otherwise. Moreover, the Lafarge Entities and the other Benoit Manufacturing Defendants provided affidavits confirming they have never used the "purple markings" described above on any drywall they or their affiliates manufactured in China, and that LNA has never imported Chinese-manufactured drywall into the United States.

Accordingly, at the close of the joint investigation, the PSC agreed to seek the dismissal of the Benoit Manufacturing Defendants. In response to a motion by the PSC, this Court set the matter for hearing on September 17, 2013, and ordered that all plaintiffs who opposed dismissal appear at the hearing and show cause why the Benoit Manufacturing Defendants should not be dismissed. Doc. 17059. No one appeared at the hearing to contest dismissal. Accordingly, this Court dismissed the Benoit

Manufacturing Defendants with prejudice, and, pursuant to Fed. R. Civ. P. 54(b), entered final judgment in their favor on November 1, 2013.  Doc. 17218.

    B.   The *Little* Action

On December 31, 2013, attorney James V. Doyle, Jr., filed an action in the United States District Court for the Southern District of Alabama against the Lafarge Entities and others on behalf of a group of homeowners, styled *Little, et al. v. Taishan Gypsum Co. Ltd., et al*.  The action has since been transferred to this Court by order of the Judicial Panel on Multidistrict Litigation, and it has been given docket number 14-587.

An exhibit to the *Little* complaint details the plaintiffs' claims, identifying the defendants that each of the fifty-one (51) plaintiffs asserts claims against.  Only nine (9) of the plaintiffs assert claims against the Lafarge Entities.  Of these, eight (8) are homeowners who had completed profile forms or provided other materials that were shared as part of the joint investigation in *Benoit* (although none were named as plaintiffs in the *Benoit* complaint).  The evidence shows that the problematic drywall in these plaintiffs' homes is the same "purple markings" drywall that was at issue in *Benoit*.  However, because these plaintiffs were not named in the *Benoit* complaint, their claims were not resolved by the Court's dismissal in that action.

Upon service of the *Little* complaint, undersigned counsel for LNA immediately sought to engage with Mr. Doyle to secure a prompt dismissal of the claims against LNA and the other Lafarge Entities, based on the results of the extensive joint investigation undertaken with the help of the PSC in the context of *Benoit*.  Undersigned counsel explained the history and outcome of the joint investigation, and provided Mr. Doyle with copies of the PSC's memorandum of law in support of the motion for a rule to show

cause, this Court's order granting the motion, and the final judgment in favor of the Lafarge Entities and the other Benoit Manufacturing Defendants in *Benoit*.

In response, Mr. Doyle claimed that he had evidence of a connection to the Lafarge Entities, and provided undersigned counsel with a lien filed by Lafarge Building Materials Inc. (an entity not named as a defendant in the *Benoit* or *Little* cases and which does not manufacture or sell drywall). The lien was filed against a home that is not owned by any of the plaintiffs in the *Little* case (or the *Benoit* case), and did not involve the purchase or sale of drywall. Thus, for multiple reasons, the document supplied by Mr. Doyle did not evidence or suggest any connection between any of the Lafarge Entities and the problematic drywall in any of the plaintiffs' homes.

Undersigned counsel responded with a letter explaining why the lien provides no evidence of a connection between the drywall in the *Little* plaintiffs' homes and any of the Lafarge Entities. Enclosed with that letter were copies of correspondence exchanged in the joint investigation in the *Benoit* case, which explained in detail the lack of any evidentiary connection to the Lafarge Entities (as outlined above) and included the affidavits attesting that the Lafarge Entities have never used the "purple markings" that appear on the drywall in the *Little* plaintiffs' homes.

Since that time, Mr. Doyle has offered no other evidence to justify the claims against the Lafarge Entities, and has rebuffed repeated requests for dismissal. Indeed, Mr. Doyle will no longer return phone calls nor respond to written communications from undersigned counsel.

**ARGUMENT**

Plaintiffs have no factual support for their claims against LNA and the other Lafarge Entities. To the contrary, the evidence establishes that the Lafarge Entities are

5

not in any way responsible for the problematic drywall in the *Little* plaintiffs' homes. Yet, their counsel refuses to dismiss the Lafarge Entities or offer any reason why the *Little* plaintiffs' claims should proceed against them.

In these circumstances, a Rule to Show Cause should issue for anyone challenging why the Court should not dismiss, discontinue, and end claims with prejudice for all those plaintiffs identified in the *Little* complaint against all of the Lafarge Entities. At the status conference on April 17, 2014, following discussions with the PSC, the Court suggested that a "Rule to Show Cause" process was appropriate.

Accordingly, LNA seeks an order that would require the *Little* plaintiffs to show cause why their claims should not be dismissed with prejudice, each party to bear its own costs. A proposed form of order is attached.

Respectfully submitted,

Dated: April 29, 2014

/s/ *Mark S. Raffman* _
Mark S. Raffman, (T.A.) (DC Bar #414578)
mraffman@goodwinprocter.com
Andrew S. Hudson (DC Bar #996294)
ahudson@goodwinprocter.com
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
Fax: (202) 346-4444

*Attorneys for Defendant Lafarge North America Inc.*