UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 2047 SECTION "L" |
| THIS DOCUMENT RELATES TO: | ) ) ) | JUDGE FALLON |
| | ) ) | MAG. JUDGE WILKINSON |
| *All cases* | ) ) ) | |

### JESSE DAVIS AND KATIE DAVIS'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL THE KNAUF DEFENDANTS CASH-OUT OPTION PAYMENT

Plaintiff Jesse Davis and Katie Davis (hereinafter "Claimants" or "Davises"), by and through undersigned counsel, hereby file their Memorandum of Law in Support of Their Motion to Compel Cash-Out Option Payment. As grounds, Claimants state as follows:

### SUMMARY OF ARGUMENT

This Motion requests that the Knauf Defendants fulfill their promise to pay Claimants' Cash-Out claim that they agreed to pay, in writing, on three separate occasions. The Knauf Defendants agreed to pay the Davises' Cash-Out payment twice in July 2013 and for a third time in August 2013, but now refuse to honor their agreement. The Davises justifiably relied to their detriment on the Knauf Defendants' promises to pay the Cash-Out payment. The doctrines of promissory estoppel, the inherent equitable powers of this Court and/or the Court's ability to interpret the Knauf Settlement[1] prevent the Knauf Defendants from reneging on their promise to pay the Davises' Cash-Out claim.

### FACTUAL SUMMARY

Claimants owned a home containing defective KPT drywall and are Class Member in the Knauf Settlement. Claimants chose the "Cash-Out" option under the Knauf Settlement. See Ex. 1,

---

[1] Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047. [Doc. 16407-3].

Property Information Sheet. Due to health concerns from the Knauf Defendants' drywall being in their home, the Davises needed to move out of their home. The Davises could not afford to pay for a rental home and the mortgage on their affected home with Knauf drywall at the same time. As a result, the Davises became late on their mortgage payments on the affected home and a foreclosure suit was brought by the Davises' Mortgagee, U.S. Bank National Association (hereinafter, "Mortgagee").

The Davises personal counsel negotiated a settlement with the Davises' Mortgagee. The settlement between the Davises and the Mortgagee required a consent judgment between the Mortgagee and the Davises. Ex. 2, Consent Judgment at $2^2$. The Davises were required to relinquish title to the affected home and assign a portion of their Cash-Out payment from the Knauf Settlement to the Mortgagee in exchange for the Mortgagee releasing the Knauf Defendants. *Id.* The terms of the Davises' settlement with the Mortgagee called for the Davises to provide $50,000 of the their Cash-Out payment of $88,811.65 to the Mortgagee. Exs. 1-3$^3$.

The Mortgagee was fully aware of the terms of the Knauf Settlement, acknowledged reviewing it and relied upon its own counsel's analysis of the Knauf Settlement. Ex. 3 at 2,4. The Davises settlement with the Mortgagee contained a full release to the Knauf Defendants with the same language as the Lienholder Release required by the Knauf Defendants in the Knauf Settlement. Ex. 3. The Knauf Defendants accepted the form of the Lienholder Release. Ex. 4.

*Most importantly, on July 18 and July 25, 2013 and again on August 9, 2013, the Knauf Defendants agreed they would pay the Davises' Cash-Out claim.* Ex. 5 at 2-3 and Ex. 6. At the time the Knauf Defendants agreed to pay the Davises' Cash-Out claim the Mortgagee owned the home. As set forth herein, the Mortgagee's ownership of the home was a condition precedent of the Knauf Defendants paying the Cash-Out claim. At the time the Knauf Defendants agreed to pay the Cash-

---

[2] The Consent Judgment references a "Mold Class Action Case," however it is clear it is the instant Payton case that is the subject matter of the Consent Judgment.
[3] Ex. 3 is executed Lienholder Release from the Mortgagee that was approved by the Knauf Defendants as set forth herein.

Out on July 18 and July 25, 2013, the Mortgagee owned the home. Thus, the Knauf Defendant's condition precedent to payment of the Cash-Out was met.

The Davises also provided all the required documents under the Knauf Settlement to receive the Cash-Out payment, including recording the fact that the home contained Chinese drywall in the local Clerk's office. Ex. 7. The only issue the parties could not agree upon was a drafting issue on the Homeowner Release. Because the Davises no longer owned the home, having transferred title to the Mortgagee, the Davises could not certify that they were the "owners" of the home. Despite Undersigned Counsel's best efforts over many months extending into 2014, the parties exchanged multiple releases, none of which were acceptable to the Knauf Defendants. Finally, in March 2014, the parties reached an agreement as to the form of the Davises' Homeowner Release. The Knauf Defendants required the Davises to recite in the Homeowner Release the chronology of events that led to the settlement with the Mortgagee and the current ownership of the home. Undersigned Counsel included in the chronology the fact that the Mortgagee sold the property on July 26, 2013. Ex. 8, proposed Release for the Davises. *Undersigned Counsel, the Davises, nor the Davises personal counsel knew of the sale of the home by the Mortgagee until March 2013 when inquired of by the Knauf Defendants. Undersigned Counsel, the Davises, nor the Davises personal counsel had control of what the Mortgagee did with the home, nor did the Mortgagee ever consult with the Davises or their counsel when the home was sold.*

When the Knauf Defendants learned from Undersigned Counsel in March 2014 that the home was sold by the Mortgagee, the Knauf Defendants refused to pay the Davises' Cash-Out claim. The Knauf Defendants refused to pay the Cash-Out claim despite the fact that the Knauf Defendants' alleged condition precedent to payment, the Mortgagee's ownership of the home, was met on July 18 and 25, 2013 when the Knauf Defendants promised to pay the Cash-Out.

## FACTUAL CHRONOLOGY

1. March 15, 2012—Moss Walk Thru occurs of the affected home.

2. June 21, 2012 – Property Information Sheet detailing Cash-Out amount is provided to Mr. Davis. Ex. 1

3. January 9, 2013 – Consent to Final Judgment signed by Davises' personal counsel as part of the Davises settlement with the Mortgagee. Ex. 2.

4. January 24, 2013 – Mr. Davis records an Affidavit of Chinese Drywall Contamination with the Clerk's Office of Indian River County, Florida. Ex. 7.

5. March 9, 2013 – Certificate of Title for the affected home issued to Mortgagee is entered by the Clerk. Ex. 9.

6. April 1, 2013—Undersigned Counsel advises the Knauf Defendants that the Davises want to proceed with the Cash-Out option. Undersigned Counsel provides the Knauf Defendants with the proposed form of the Lienholder Release. Ex. 10.

7. April 23, 2013 – The Knauf Defendants agree to the form of the Lienholder Release/Cash-Out Release. Ex. 4.

8. June 3, 2013—Mortgagee signs the Knauf Defendants' approved and modified Lienholder Release. Ex. 3.

9. June 6, 2013—Undersigned Counsel summarizes the issues in the Davises' claim in an email to the Knauf Defendants' counsel. The email provides the signed Lienholder Release. The email focuses on the fact that the home's ownership was transferred from Mr. Davis to the Mortgagee by consent judgment on January 9, 2013. "We think the issue is best framed as, at what point does the requirement of being a property owner for the cash out portion of the settlement cutoff?" Ex. 11. The Knauf Defendants were advised of the terms of the agreement between the Davises and the Mortgagee.

10. June 10, 2013 – Undersigned Counsel provides the Lienholder Release, the Property Owner Affidavit Regarding Recording of Presence of Reactive Chinese Drywall in Property and Homeowner Wire Transfer Instructions to Settlement Administrator. Ex. 12.

11. June 11, 2013 – At the request of Knauf's counsel, Mr. Glickstein, the Davises' situation is presented to another of Knauf's counsel, Mr. Spaulding. Undersigned Counsel's letter to Mr. Spaulding advises the Knauf Defendants, again, that the home was sold at a judicial sale pursuant to a consent judgment between the Davises and the Mortgagee. The letter again provides the executed Lienholder Release from the Mortgagee. Moreover, the letter advises that the Davises cannot truthfully sign the Homeowner Release stating he is the "owner" of the home because he no longer owned the home. The Knauf Defendants are fully aware of the status of the ownership of the affected home. Ex. 13.

12. July 16, 2013 – Undersigned Counsel's email following up the June 6 and 11, 2013 emails to the Knauf Defendants states:

> It's been several weeks and two unreturned phone calls to you about the Jesse Davis claim. This is the case where the bank took the home back as part of a consent judgment but signed off on the cash-out. Please, please let us know what position your client is going to take. Will they fund the cash-out?

Ex. 5, at 3-4.

13. July 18, 2013 at 10:19 a.m. – *The Knauf Defendants agree to pay the Cash-Out provided the bank (Mortgagee) owns the affected home, which it did at the time: "We're ok with how you proposed to pay the Davis claim. We just need to confirm that the bank still owns the home." Id.* at 3.

14. July 18, 2013 at 7:26 p.m. – Undersigned Counsel attaches the Mortgagee's current proof of ownership of the affected home to the Knauf Defendants and asks to reconfirm that Knauf will pay the cash out amount. *Id.*

5

15. July 25, 2013 – *Knauf's counsel again agrees to pay the Cash-Out: "I can confirm that Knauf will pay the cash out amount. I've not actually determined the amount payable to Davis/US Bank. I'll let Knauf and Brown Greer handle that*." *Id.* at 2. In fact the amount was calculated at least a year and a half before in early 2012 as set forth in the Property Information Sheet. Ex. 1.

16. July 26, 2013 – The Mortgagee sells the affected home. The Mortgagee's sale of the affected home was unbeknownst to the Davises, the Davises' personal counsel and Undersigned Counsel until March 11, 2014. See Ex. 14 at 1 and Ex. 15.

17. August 7, 2013 – Undersigned Counsel inquires when the Knauf Defendants will fund the promised Cash-Out payment. Ex. 5 at 1.

18. August 9, 2013—Knauf Defendants' counsel confirms *again* the Knauf Defendants will pay the cash out amount. Ex. 6.

19. August 14, 2013 – Undersigned Counsel advises the Knauf Defendants' counsel that it requested funding from Brown Greer, but Brown Greer requested the Homeowner Affidavit be signed. Undersigned Counsel inquired if the Knauf Defendants wanted the Mortgagee or Mr. Davis to sign. The Knauf Defendants requested that both the Mortgagee and the Davises sign the Homeowner affidavit. Ex. 16. Despite attempts by Undersigned Counsel, the Mortgagee refuses to sign. The Mortgagee's counsel did not advise Undersigned Counsel of the sale of the affected home.

20. January 15, 2014 – The claims submission deadline expired. The Davises did not submit a claim in reliance upon the Knauf Defendants' promises to pay the Cash-Out claim.[4]

---

[4] Undersigned Counsel notes that the Knauf Defendants have agreed to permit an Other Loss Fund foreclosure/short sale claim to be uploaded to the Brown Greer portal as a placeholder

6

21. February 4, 2014 – A further edited version of a proposed release is provided to the Knauf Defendants by Undersigned Counsel. Ex. 17.

22. February 18, 2014 at 10:50 a.m. – Knauf Defendants reply to Undersigned Counsel with comments regarding the proposed "Former Owner" release requiring a "foreclosure history" for the property. Ex. 18 at 2.

23. February 18, 2014 at 1:14 p.m. – The Knauf Defendants reply to an email from Undersigned Counsel earlier the same day and for the first time agree to have Mr. Davis sign as the former owner of the affected home. Ex. 18 at 1-2.[5] Had the Knauf Defendants agreed to the Davises signing as "former owners" before July 26, 2013 then under the Knauf Defendants' logic they would have paid the Cash-Out claim because the Mortgagee still owned the property at that time. Ex. 18 at 1, paragraph 5.Instead, the Knauf Defendants promised payment of the Cash-Out, delayed seven months on a decision allowing the Davises to sign as the "former owners" when the Knauf Defendants knew since June 6, 2013 that the Davises no longer owned the property. Ex. 11.

24. March 11, 2014 – The Release complying with the Knauf Defendants' additional requests from February 18, 2014 is provided by Undersigned Counsel. Ex. 18.

25. March 14, 2014 at 12:13 p.m. – The Knauf Defendants state that because the bank/Mortgagee sold the property the bank/Mortgagee is no longer entitled to any remediation option and the only option is the Other Loss Fund. Ex. 19.

---

claim pending the Court's determination on this motion. The Claim Form was submitted, in an abundance of caution to Brown Greer and appeared on the portal on April 3, 2014.

[5] The Knauf Defendants replied to Undersigned Counsel's email by answering in red-colored type. Because the CM/ECF system does not recognize color, Undersigned Counsel has bracketed the Knauf Defendants' reply.

26. March 14, 2014 at 2:09 p.m. – Undersigned Counsel again attempts to resolve the issue of the Release for the Davises. Ex. 20.

27. March 17, 2014 -- The Knauf Defendants confirm that they would break their promises and refuse to pay the Davises' Cash-Out claim.

28. March 25, 2014 – The parties agree to the Davises filing a "placeholder" Other Loss Fund claim because the Knauf Defendants will not pay the Cash-Out Claim. Ex. 21.

## MEMORANDUM OF LAW

The Court has the equitable power to enforce the Knauf Defendants' promises to pay the Davises' Cash-Out claim. The equities favor the Davises. The Court is well aware of the quandary that owning a home with Chinese drywall creates for a homeowners. The Davises did not have the financial ability to simultaneously pay their mortgage on their affected home and rent a property. The Davises, for health reasons, moved out of their Chinese drywall infected home. They fell behind on their mortgage payments. In order to make the best recovery possible, the Davises negotiated with their Mortgagee and reached a deal to pay the Mortgagee $50,000.00 of the $88, 811.65 Cash-Out claim.

The Davises complied with the Knauf Settlement Agreement's requirements. The Davises secured promises from the Knauf Defendants they would pay the Cash-Out claim. Due to circumstances beyond their control, the bank sold the home. The bank's sale of the home does not obviate the fact that the Knauf Defendants' condition precedent to paying the Davises' Cash-Out claim, the bank owning the home, was met. For this reason alone, the Court should require the Knauf Defendants to pay the Cash-Out claim.

Upon information and belief, the Knauf Defendants have reserved the Davises' Cash-Out claim money. The Property Information Sheet providing the values of the Davises various potential

claims was available at least by June 21, 2012. Instead, the Knauf Defendants seek to renege on their promises and force the Davises claim into the Other Loss Fund where the Knauf Defendants have capped their exposure. Quite simply, the Knauf Defendants seek to benefit from their delay in approving the Davises' Cash-Out claim and not pay anything further to the Davises by forcing them into the Other Loss Fund. Such a result is unfair and inequitable. It only encourages the Knauf Defendants to continue delay claims so they may rely on innocent Class Members like the Davises, holding onto their affected homes indefinitely. Moreover, allowing the Knauf Defendants to benefit from their delay only encourages economic waste by having the Mortgagee continue to hold onto an affected home that is tainted with corrosive Chinese drywall.

    **A. The Davises met the one condition precedent the Knauf Defendants predicated their promise to pay the Cash-Out claim: the Mortgagee owned the affected home when the Knauf Defendants made their promises. The Knauf Defendants should not benefit from their own delay in approving the form of the Davises' Homeowner Release.**

The sole condition precedent the Knauf Defendants rely upon to avoid their promises to pay the Cash-Out claim is that the Mortgagee no longer owns the affected home. The Knauf Defendants stated on July 18, 2013: "We're ok with how you proposed to pay the Davis claim. We just need to confirm that the bank still owns the home." Ex. 5 at 3. That same day, Undersigned Counsel provided proof the bank/Mortgagee still owned the home. *Id.* One week later on July 25, 2013, *Knauf's counsel again agrees to pay the Cash-Out: "I can confirm that Knauf will pay the cash out amount. I've not actually determined the amount payable to Davis/US Bank. I'll let Knauf and Brown Greer handle that." Id.* at 2. In fact the amount was calculated at least a year and a half before in early 2012 as set forth in the Property Information Sheet. Ex. 1. In short, the Knauf Defendants' condition precedent for payment of the Cash-Out option was met on July 25, 2013, because when the Knauf Defendants promised to pay the Cash-Out claim the Mortgagee/bank

9

owned the property. The Knauf Defendants should be made to live up to their promise to pay the Cash-Out claim. Any other result is unfair and inequitable because: 1) the Davises justifiably relied on the Knauf Defendants' promises; 2) the Knauf Defendants' condition precedent when it made its promises, the bank owning the affected home, was met; 3) if the Court does not compel the Knauf Defendants to pay the Davises' Cash-Out claim, the Knauf Defendants will have received a full release from the bank/Mortgagee for nothing; 4) the Davises who justifiably relied on the Knauf Defendants' promises will not have the funds to pay the bank/Mortgagee its portion under the Consent Judgment it reached with the bank/Mortgagee; and 5) the Knauf Defendants' should not be permitted to delay payments under the settlement over two and a half years since it was signed -- how long does a homeowner have to continue to hold onto an affected home to recover under the Knauf Settlement Agreement?

      The Knauf Defendants may assert that the form of the Davises' Homeowner Release could not be agreed upon and for that reason all the paperwork was not in order to effectuate the payment. That argument has no merit. The Knauf Defendants unilaterally controlled what they would accept. The ownership of the home is public record and was always available to the Knauf Defendants. The Davises only issue with the Homeowner Release was that they could not sign as the "owner." From the very beginning of this process, the Davises were ready, willing and able to sign a release to Knauf stating they were the "former owner." The Knauf Defendants finally acquiesced to this point on February 18, 2014. Had the Knauf Defendants reached the same conclusion in June and July 2013, the Cash-Out claim would have been paid. The Knauf Defendants should not be permitted to allow their delay to a point they eventually agreed with to prevent the Davises from making their Cash-Out recovery.

> **B. The doctrines of detrimental reliance, promissory estoppel and equitable estoppel permit the Court to enforce the Knauf Defendants' promises to pay the Davises' Cash-Out claim.**

The doctrines of detrimental reliance, promissory estoppel and equitable estoppel require the Knauf Defendants to fulfill their promises to pay the Davises' Cash-Out Claim. As explained under Louisiana law:

> The Roman maxim *venire contra factum proprium non valet,* which means 'no one can contradict his own act' or 'no one is allowed to go against the consequences of his own act' was founded on the notion that 'it is not licit to enforce a right in contradiction to one's previous conduct, when that conduct, interpreted in good faith, would justify the conclusion that the right does not exist or will not be enforced.' This civilian maxim is similar to that of equitable estoppel and has been applied in Louisiana jurisprudence. The civilian doctrine of *culpa in contrahendo*, which means "fault in contracting," performs a function similar to that of promissory estoppel and has also been applied in Louisiana jurisprudence. This civilian maxim is similar to that of equitable estoppel and has been applied in Louisiana jurisprudence. The civilian doctrine of *culpa in contrahendo*, which means "fault in contracting," performs a function similar to that of promissory estoppel and has also been applied in Louisiana jurisprudence.

*Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 969 So. 2d 646, 650 (La.App. 4th Cir. 2007) (internal citations omitted).

Detrimental reliance is a legal theory that is a general part of Louisiana's Civil Law and "springs forth from the idea that in a civil society people should keep their word." *Id.* The elements of detrimental reliance are: (1) a representation by word or conduct; (2) justifiable/reasonable reliance; and (3) a change in position to one's detriment because of the reliance. *Id.* "Detrimental reliance," also known as "equitable estoppel," prevents a party from reneging or taking a position contrary to his prior acts, admissions, representations, or silence. *Moroux v. Toce*, 943 So.2d 1263 (La.App.3d Cir.2006). A cause of action for detrimental reliance does not depend upon existence of valid, enforceable contract; rather existence of

11

promise and reasonable reliance on that promise to one's detriment are the only requirements. *Percy J. Matherne Contractor, Inc. v. Grinnell Fire Protection Systems Co.*, 915 F.Supp. 818 (M.D.La.1995). Detrimental reliance has also been codified under Louisiana Civil Code Art. 1967.[6] All elements of detrimental reliance have been met in order for the Court to enforce the Knauf Defendants' promises to pay the Davises' Cash-Out claim.

### i. The Knauf Defendants made a representation by word or conduct they would pay the Davises Cash-Out claim.

"A representation by word" was made by the Knauf Defendants on July 18, 25 and August 9, 2013 that they would pay the Cash-Out claim. Specifically, on July 25, 2013, Knauf's counsel wrote to Undersigned Counsel:

> *"I can confirm that Knauf will pay the cash out amount. I've not actually determined the amount payable to Davis/US Bank. I'll let Knauf and Brown Greer handle that."*

Ex. 5 at 2. The week before on July 18, 2013, Undersigned Counsel again confirmed for the Knauf Defendants that the bank/Mortgagee still owned the affected home. Even so, on July 25, 2013 when the Knauf Defendants made the representation they would pay the Cash-Out claim, the Mortgagee still owned the affected home. Accordingly, the Davises meet the first element of detrimental reliance because of the Knauf Defendants' representation by word they would pay the Cash-Out claim.

---

[6] Louisiana Civil Code Art. 1967 provides as follows:

Cause is the reason why a party obligates himself.

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

      **ii. The Davises' reliance on the Knauf Defendants' promises was justifiable/reasonable because: 1) the Davises made the Knauf Defendants fully aware that the Davises had relinquished ownership of the home and promised a portion of their Cash-Out recovery to the Mortgagee; 2) the Mortgagee had provided a full release to the Knauf Defendants; and 3) at the time the Knauf Defendants made the promise to pay the Cash-Out claim, the Mortgagee owned the home.**

The Davises' reliance on the Knauf Defendants' promises to pay the Cash-Out claim were justifiable/reasonable. Courts generally look to whether reliance was reasonable under the circumstances by examining the factual circumstances; including the negotiations and/or documents the party relied upon. See *Water Craft Management, L.L.C. v. Mercury Marine,* 361 F.Supp.2d 518 (M.D.La.2004). The Davises gave full disclosure to the Knauf Defendants on April 1, 2013, that they no longer owned the home and elected the Cash-Out option. By June 6, 2013, again on June 11, 2013 and on multiple occasions thereafter, Undersigned Counsel advised the Knauf Defendants that the Davises no longer owned the affected home and that the Mortgagee owned the affected home. Yet the Knauf Defendants still promised to pay the Cash-Out claim. The Knauf Defendants were also aware that the Davises promised a portion of their Cash-Out claim to the Mortgagee. It was reasonable for the Davises to rely upon the Knauf Defendants' promises. Moreover, it was reasonable for the Davises to rely upon the Knauf Defendants' promises when the Davises obtained a full release from the Mortgagee on the Knauf Defendants required Lienholder Release form. The Knauf Defendants agreed to the Lienholder Release form before it was signed by the Mortgagee. Ex. 4. Finally, on July 18 and 25, 2013 when the Knauf Defendants promised to pay the Davises' Cash-Out claim, the Mortgagee owned the affected home, fulfilling the Knauf Defendants' condition precedent. In summary, the Davises justifiably and reasonably relied upon the Knauf Defendants' promises to pay the Cash-Out claim because: 1) the Davises made the Knauf Defendants fully aware that the Davises had relinquished ownership

of the home and promised a portion of their Cash-Out recovery to the Mortgagee; 2) the Knauf Defendants agreed to the form of the Lienholder Release before the Mortgagee signed it; 3) the Mortgagee provided a full release to the Knauf Defendants; and 4) at the time the Knauf Defendants made the promise to pay the Cash-Out claim, the Mortgagee owned the home.

### iii. The Davises detrimentally changed their position relying upon the Knauf Defendants' promises to pay the Cash-Out claim.

The Davises all along relied upon the Knauf Settlement Agreement as the basis for the Cash-Out claim. In an abundance of caution, when the Davises lost ownership of the home, they advised the Knauf Defendants on April 1, 2013, via the proposed Lienholder Release, to confirm the Knauf Defendants would pay the Cash-Out claim. The Knauf Defendants approved the proposed Lienholder Release and further committed to paying the Davises' Cash-Out claim after the Davises provided the Lienholder Release to the Knauf Defendants. Exs. 4-6. The Davises relinquished ownership of their home and assigned a portion of their Cash-Out claim payment to the Mortgagee based on the Knauf Settlement Agreement. The Knauf Defendants knew the exact amount the Davises promised to pay the Mortgagee. Ex. 1.  The Davises changed their position in reliance on the Knauf Settlement Agreement from owning their home, to relinquishing ownership of their home and offering a portion of their Cash-Out claim recovery, $50,000.00, as consideration for the Mortgagee's signing the Lienholder Release and releasing the Knauf Defendants. The Davises also changed their position in reliance on the July 2013 and August 2013 promises by the Knauf Defendants because they did not make an Other Loss Fund claim in the settlement as foreclosure/short sale claim due to the Knauf Defendants' promises. Recognizing this fact, the Knauf Defendants have agreed to let the Davises file a "placeholder" claim in the Knauf Settlement with Brown Greer pending the outcome of this motion. In summary, the Davises changed their position in reliance on the Knauf Defendants promises

14

contained in the Knauf Settlement Agreement of the Cash-Out option and further promises in July and August 2013 to pay the Cash-Out claim, even when the Davises lost ownership of the affected home. All three elements of detrimental reliance, equitable estoppel and the promissory estoppel doctrines have been met under Louisiana law requiring payment of the Knauf Defendants of the Davises' Cash-Out claim.

## CONCLUSION

The Knauf Defendants should be made to live up to their promises and not benefit from their delay in approving the Davises' Cash-Out claim. The Court has the equitable power to require the Knauf Defendants to pay the Davises" Cash-Out claim. The equities favor the Davises. The only condition precedent the Knauf Defendants made to paying the Cash-Out claim, the Mortgagee's ownership of the affected home was complied with on July 25, 2013 when the Knauf Defendants promised to pay the Davises' Cash-Out claim. Moreover, the legal doctrines of detrimental reliance, promissory estoppel and equitable estoppel were met by the Davises so that the Court should require the Knauf Defendants to live up to their promises.

WHEREFORE, for the above reasons, Claimants respectfully request this Honorable Court enter an Order: a) requiring the Knauf Defendants to pay the Davises' Cash-Out claim in the amount of $88,811.65 to the Davises; and b) approving the form of the Release attached hereto as Ex. 8 and requiring the Knauf Defendants to accept it and the Davises to execute it. In the alternative, if the Court denies the instant motion, the Davises request that the Court enter an order allowing the Davises' currently filed Other Loss Fund Claim to be included in the Other Loss Fund and processed by Brown Greer as timely filed.

Respectfully Submitted,

/s/ Patrick S. Montoya

ERVIN A. GONZALEZ, ESQ. (#500720)
PATRICK S. MONTOYA, ESQ. (#524441)
COLSON HICKS EIDSON
COLSON MATTHEWS MARTINEZ
GONZALEZ KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax:     (305) 476-7444
*Counsel for Claimants*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail, or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 29th day of April, 2014.

/s/ Patrick S. Montoya