UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to All Cases | * | |
| | * | MAGISTRATE JUDGE WILKINSON |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## PLAINTIFFS' COUNSEL, KRUPNICK CAMPBELL MALONE'S, MEMORANDUM IN OPPOSITION TO KNAUF DEFENDANTS' MOTION TO CONSTRUE SETTLEMENT AGREEMENT

COMES NOW, KRUPNICK CAMPBELL MALONE, counsel for numerous plaintiffs in this litigation, and respectfully files this Opposition to Knauf Defendants' Motion to Construe Settlement Agreement and requests this Court deny the Knauf Defendants' prayer for relief. As grounds therefore, undersigned counsel states as follows in support:

The Knauf Defendants caption the motion as a motion seeking the Court's assistance in construing or interpreting the settlement agreement.[1] However, more accurately, the Knauf Defendants invite this Court, after a lengthy negotiation and Court approval process and the closure of the time period for objections and to opt-out, to undertake the unprecedented task of rewriting the settlement agreement to add entirely new terms to a long-negotiated settlement agreement which is otherwise clear and unambiguous.

Noticeably missing from the Knauf Defendants papers are the definitions of the class. At the outset of the Third Amended Settlement Agreement (hereinafter "Settlement

---

[1] The Knauf Defendants do not identify any specific claimant to whom this motion would apply. Therefore, no particular claimant has but put on notice of Knauf's efforts to rewrite the Settlement Agreement.

Agreement"), there were only two owner classes: a Residential Owner Subclass and a Commercial Owner Sub class.

The Residential Owner Subclass is defined in Section 1.1.2.1 of the Settlement Agreement as those "who are owners or and reside *or have resided* in Affected Property…". (emphasis added). The Commercial Owner Subclass is defined in Section 1.1.2.2 as those "who are owners of Affected Property for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business *and* who do not reside in the Affected Property…". (emphasis added). There was no other subclass or limiting definition of the owner subclasses. The definitions of the subclass were clear and unambiguous.

Thereafter, the Court-approved Settlement Agreement sets forth the options provided to owners for "Remediation Fund Benefits". *See* Section 4.3.[2]

Section 4.3.1.1. *et seq.* sets forth the entitlement to and calculation of a "Lump Sum Payment" to owners of property with KPT drywall. There is no restriction on the type of residential use or any suggestion a residential owner must inhabit the home over some pre-determined period or increment of time in order to be entitled to the "lump sum payment." No such term or limitation appears or is even intimated in the Court-approved settlement.

In fact, a word search of the Settlement Agreement established the following: the word "vacation" was never utilized at all in the Settlement Agreement; the word "vacant" was never utilized at all in the Settlement Agreement; and the word "second" was utilized only in other contexts and never in the context of a "second home". Defendants request this Court, for the

---

[2] While there is a reference to "KPT Property Owner Subclass", there was no such subclass; instead, there were only three (3) subclasses: the Residential Owner Subclass (Section 1.1.2.1); the Commercial Owner Subclass (Section 1.1.2.2) and the Tenant Subclass (Section 1.1.2.4). Clearly, Section 4.3 refers to owners of KPT irrespective of whether residential or commercial owners.

first time, to implant terms never utilized the Settlement Agreement in an effort to alter the agreement entirely for owners who agreed to participate in this settlement.

Attached to Defendants' papers as exhibits are selected exemplars of a "Lump Sum Payment Eligibility Form" filed by unidentified claimants. However, these forms, while identifying additional uses in Question 8 including "vacation" and "secondary", were not the form utilized from the outset by the Settlement Administrator. In fact, for over one hundred of undersigned's claimants, there was no such form required. Further, those questions were neither asked nor was that level of information sought on any of the other claim forms. While it may be interesting to understand why the a "Lump Sum Payment Eligibility Form" was introduced to the process at such a late date, the fact that these forms were not required for many of the claimants establishes that no one, not even the settlement administrator constructing forms predicated upon the terms of the Settlement Agreement, contemplated the need for that type of information. A claimant was either a "Residential" or a "Commercial" owner consistent with the subclass definitions without reference to the characterization of use by the residential owner.[3] Presumably, the forms used were approved by the Knauf Defendants; it is only years into the settlement process that the Knauf Defendants seek to further limit recovery by owners.[4]

---

[3] The undersigned requested Knauf's counsel provide a list of claimants to whom the pending Motion would apply so that proper notice could be provided to the claimants. *See* Exhibit A. To date, the undersigned has not received a list of potentially impacted claimants. In all likelihood that is because the information does not exist in an easily identifiable form since the information had not been sought as part of the claims process for the undersigned's claimants.

[4] Should the Court be inclined to grant Defendants' motion, the undersigned would seek to undertake discovery aimed at the specific relief sought in this matter, including requests for production of documents from the Defendants and their counsel, as well as depositions of those involved in the negotiation of this Settlement Agreement on behalf of the Defendants. Additionally, Plaintiffs would seek evidence related to the addition of the "Lump Sum Payment Eligibility Form".

Importantly, the only restriction on the amount of a "Lump Sum Payment" to be paid to a residential property owner is set forth in Section 4.3.4.2. This restriction, however, involves only a "Mixed Property Owner" who elects to exercise the "Cash-Out Option" pursuant to section 4.3.3. In that circumstance, the "Lump Sum Payment" is calculated by multiplying the full amount otherwise awardable from the Remediation Fund under Section 4.3.1.1 by the percentage of KPT board found in the home. There is no restriction predicated upon the use or occupancy of the home by the Residential Owner.

Further undermining the relief sought by the Knauf Defendants, the "Lump Sum Payment" is a compromised recovery not predicated upon the actual damages sustained by the owner beyond remediation. Instead, Section 1.47 outlines that "Other Covered Expenses" to include:

> …reimbursement for all alternative living expenses, personal property damage, maintenance of the KPT property during remediation, including, but not limited to, payment of all utility bills, insurance, property taxes and maintenance of landscaping and moving storage expenses, incurred as a result of the remediation of the KPT property, pursuant to Section 4.3.1.1 through 4.2.1.3.

This definition operates as an effort by the Knauf Defendants to release all the potential costs and losses sustained by owners irrespective as to whether or not they actually incurred the expenses or what level of expenses were incurred, even if the losses to the Residential Owner were even greater than the "Lump Sum Payment". In fact, the Knauf Defendants can neither claim nor adduce evidence that, for example, vacation or second home owners would not sustain all of the losses covered by section 1.47, which the "Lump Sum Payment" was intended to cover.

Perhaps the least persuasive effort by the Knauf Defendants is the invitation to not only add new terms and conditions to the Settlement Agreement related to the characterized use the property, but to alternatively reduced the entitlement to an arbitrary amount of seventy percent

(70%).  There is absolutely no evidence adduced to support this claim and no manner in which the Court could "construe" the Settlement Agreement to include such a diminished recovery.

In support of the relief sought, the Knauf Defendants fail to cite a single case justifying the invitation to rewrite the Settlement Agreement.  General citations to rules of construction are not supportive of the Knauf Defendant's efforts to utilize definitions outside the four-corners of this unambiguous Settlement Agreement.

Instead, implanting new restrictions on the type of residential use, which Knauf was certainly capable of proposing at some point during the lengthy negotiations and the multiple amendments to the Settlement Agreement, would be unprecedented, particularly where the definitions are unambiguous.  To rewrite the Settlement Agreement now, after years of negotiations, a lengthy Court approval process, the closure of the period of time to object to terms of the settlement and the expiration of the opt-out period, would jeopardize this entire settlement. *See*, *e,g.*, *Chisolm v. Greenstein*, 876 F. Supp. 2d 709, 716 (citing, *United States v. Armour & Co.*, 402 U.S. 673, 681– 82, 91 S.Ct. 1752, 29 L.Ed. 2d 256 ( 1971); *United States v. Int'l Brotherhood of Teamsters*, 998 F.2d 1101, 1107 (2d Cir.1993) ("A court may not replace the terms of a consent decree with its own, no matter how much of an improvement it would make in effectuating the decree's goals."); *Harris v. City of Philadelphia*, 137 F.3d 209, 212 (3d Cir.1998) (noting that a court "must not strain the decree's precise terms or impose other terms in an attempt to reconcile the decree with our own conception of its purpose.")).  As the *Chisolm* Court concluded, "Courts charged with enforcing a consent decree should preserve these bargained-for positions, rather than rewriting them." *Chisolm*, 876 F. Supp.2d at 716. (citations omitted).

For the reasons set forth above, the undersigned respectfully requests this Court decline to rewrite the settlement agreement at this late stage and deny Defendants' Motion to "Construe".

                                                              Respectfully Submitted,

                                                              */s/ Michael J. Ryan*
                                                              Michael J. Ryan
                                                             Florida Bar No. 975990
                                                             Krupnick Campbell Malone
                                                             Buser Slama Hancock Liberman, P.A.
                                                             Attorneys for Plaintiffs
                                                             12 S.E. 7 Street, Suite 801
                                                             Ft. Lauderdale, FL  33301
                                                             (954) 763-8181
                                                             FAX (954) 763-8292
                                                             mryan@krupnicklaw.com
                                                             pleadings-mjr@krupnicklaw.com

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a copy of the foregoing Memorandum in Opposition to Knauf Defendants' Motion to Construe Settlement Agreement has been served by and email to Russ Herman, Esquire, Plaintiffs' Liaison Counsel, and Kerry Miller, Esquire, Defendants' Liaison Counsel, and upon all parties by electronically uploading the same to File and ServeXpress f/k/a Lexis Nexis File and Serve in Accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of May, 2014.

            */s/ Michael J. Ryan*
            Michael J. Ryan
            Florida Bar No. 975990
            Krupnick Campbell Malone
            Buser Slama Hancock Liberman, P.A.
            Attorneys for Plaintiffs
            12 S.E. 7 Street, Suite 801
            Ft. Lauderdale, FL  33301
            (954) 763-8181
            FAX (954) 763-8292
            mryan@krupnicklaw.com
            pleadings-mjr@krupnicklaw.com