UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2047 ) ) |
| | ) SECTION: L ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| ALL CASES | ) JUDGE FALLON ) MAG. JUDGE WILKINSON ) ) |

## INDIVIDUAL PLAINTIFFS' OPPOSITION TO THE KNAUF DEFENDANTS' MOTION TO CONSTRUE SETTLEMENT AGREEMENT

Individual Plaintiffs hereby file this brief for the limited purpose of opposing Defendants Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdone Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia's ("Knauf Defendnats" or "Knauf") Motion to Construe the "Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047" ("Settlement Agreement"). Individual Plaintiffs hereby and respectfully reserve all jurisdictional and substantive defenses and arguments.

## I.    INTRODUCTION

After the Settlement Agreement was approved by the Court, notice was given to class members and they were given the opportunity to object or "opt out". During the time the class members were evaluating whether to participate in the settlement, class members evaluated the benefits they would receive as a member of the class under the terms of the Settlement Agreement.

Individual class members whose facts indicated they fall in to the well-defined subclass called the *"Commercial Owner Subclass,"* were informed they would _not_ receive the "lump sum payment" as provided for in Section 4.3.1.1, *et seq.* In order to be a part of the *"Commercial Owner Subclass,"* the owner would have had to use the affected property "for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business and who did not reside in the Affected Property." However, all other class members that did not fall in the well defined *"Commercial Owner Subclass"*, were advised their claims fall in to the *"Residential Owner Subclass."* This was the logical and fair reading of the Settlement Agreement based on its express, non-ambiguous terms. Class members falling into the *"Residential Owner Subclass,"* were informed they receive the "lump sum payment" as provided for in Section 4.3.1.1, *et seq.*

The lump sum payment is a significant material benefit to this subclass. For any home with less than 3,500 square feet, the property owner receives a lump sum payment of $8.50 per square foot; and for any home with 3,500 square feet or more, the class member receives a lump sum payment of $10.00 per square foot. (For example, a claimant with a 2,000 square foot home receives a lump sum payment in the amount of

2

$17,000.00). Based on this reading of the agreement, the vast majority of class members did not object or opt-out, and instead chose to participate in the settlement.

To date, hundreds, if not thousands, of claims have been processed consistent with the aforementioned reading of the Settlement Agreement. Specifically, claims for "Option 1, 2 or 3 claimants" with homes considered vacant, a secondary residence, or a vacation property, and claims for "Mixed Property Owners" who selected Option 2 or 3 with homes considered vacant, a secondary residence, or a vacation property, have already been paid the lump sum payment. Until now, these claimants received the lump sum payment.[1]

Knauf, however, now requests the Court rewrite the Settlement Agreement. At this eleventh hour, Knauf seeks a more narrow definition of "Residential Owner" in attempt to save money. In its Motion, Knauf Defendants state "[t]*o be a Residential Owner, a claimant's affected property must be his or her permanent home and the claimant must dwell permanently or continuously at the affected property.*" See Knauf Defendants' Motion to Construe Settlement Agreement at p. 2. This language is completely new and was not part of the negotiated and Court approved Settlement Agreement. Not only does Knauf seek to change the definition of the Residential Owner Subclass, it seeks to draft language creating a new subclass for property it now classifies as "vacant, secondary homes or vacation property".

For the reasons stated herein, the Settlement Agreement should not be rewritten as it is clear and unambiguous. Further, if this Court chooses to interpret or "construe" this clear and unambiguous agreement, Plaintiffs request the Court do so such that benefits

---

[1] Counsel can provide examples of its clients fitting this definition and who have already been paid the lump sum payment under Section 4.3.1.1, *et seq.* While Counsel does not provide specific individual claimant information in this general pleading, Counsel will do so at the Court's request.

3

are received by this new "subclass", rather than denied. Finally, if the Court does create this new subclass and the benefits are denied, then this new subclass should be allowed to opt-out or object to the change in terms, based on this elimination and/or reduction of benefits.

## II. LEGAL ANALYSIS

"The district judge must abide the provisions of the settlement agreement, reading it to effectuate the goals of the litigation." *Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468, 455-456 (2011). The goal of this litigation is to provide recovery for victims with property containing defective, Chinese drywall. Knauf's new, proposed, reading of the Settlement Agreement cuts directly against the goal of this litigation, and as such, should be denied. Moreover, because the agreement is clear and unambiguous, there is simply no need for the Court to "construe" its terms.

Here, the terms of the Settlement Agreement Knauf seeks to bring at issue are in fact clear and unambiguous. Moreover, up until now, Knauf administered claims utilizing the language of the Settlement Agreement without confusion or court intervention. <u>Until this time, Knauf paid the "lump sum payment" to those claimants that fit the category it now seeks to block from receiving the lump sum payment</u>. Clearly, the Settlement Agreement is workable as written, and has been working without any change or alteration of its terms. While the settlement agreement must gain approval of the district judge, once approved its terms must be followed by the court and the parties alike. *Id.* at 455. As a result, the terms of the settlement agreement are to be given controlling effect. *See Klier supra* at 455.

Obviously, withholding the lump sum payment to the claimants at issue would reduce a significant benefit to this "new" subclass of owners. Should the Court grant Knauf's Motion, there would be a number of negative procedural impacts.

### A. Knauf's New Construction of the Settlement Agreement Would Treat Claimants Inconsistently

Applying Knauf's proposed construction of the Settlement Agreement would have the effect of treating claimants who have essentially the same circumstances or facts differently simply based on *when* their claim was processed. This is because up until now, Knauf has provided the lump sum payment to claimants it now seeks to block from this recovery. One essential underlying principle of a class action is treating similarly situated claimants equally. If, however, the Court allows this change at this late time in the settlement process, some class members of this "new subclass" will have already received the lump sum payment, and some members of this "new subclass" will be denied the lump sum payment. Clearly, this would be an unfair and unjust result.

### B. Knauf's New Construction of the Settlement Agreement Would Require New Notice to Class Members

If claimants are going to have less benefits than was originally provided in the Settlement Agreement, then these claimants should be formally notified of this change and given the opportunity to object or opt-out of the class. "Notice of an amendment to a class settlement and an opportunity to object may be required when the amendment will effectuate a material change in the settlement terms." See *Gardner v. LaFarge Corp.* 2007 WL 1695609, at 2 (2007) (Providing class with notice of amendment to class settlement and an opportunity to object thereto).

5

## III. CONCLUSION

Based on the foregoing, it is hereby respectfully requested that the Court deny Knauf Defendants' Motion to Construe Settlement Agreement.

Respectfully submitted,

Dated: May 12, 2014          /s/ C. David Durkee, Esq.
                             ROBERTS & DURKEE, P.A.
                             Alhambra Towers
                             Penthouse 1 – Suite 1603
                             121 Alhambra Plaza
                             Coral Gables, FL  33134
                             Phone: (305) 442-1700
                             Fax: (305) 442-2559
                             durkee@rdlawnet.com
                             *Counsel for Individual Plaintiffs*

                             Mark Milstein, Esq.
                             Allison R. Willett, Esq.
                             MILSTEIN ADELMAN, LLP
                             2800 Donald Douglas Loop North
                             Santa Monica, CA  90405
                             Phone: (310) 396-9600
                             Fax: (310) 396-9635
                             *Counsel for Individual Plaintiffs*