UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | SECTION "L" |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | JUDGE FALLON |
| | ) | |
| | ) | MAG. JUDGE WILKINSON |
| All Cases | ) | |
| | ) | |
| _____ | ) | |

## SHAKIRA AND NOAH SILVERMAN'S RESPONSE[1] IN OPPOSITION TO KNAUF'S MOTION TO CONSTRUE SETTLEMENT AGREEMENT

Plaintiffs Shakira Silverman and Noah Silverman, (hereinafter "Claimants" or "Silvermans"), by and through undersigned counsel, hereby file their Response in Opposition to the Knauf Defendants' Motion to Construe Settlement Agreement. As grounds, Claimants state as follows:

## INTRODUCTION & SUMMARY OF ARGUMENT

The Knauf Defendant argue two points in an attempt to deny the Silvermans their Lump Sum Payment. First, the Knauf Defendants argue that the Silvermans never "resided" in the affected property. Second, the Knauf Defendants argue that the Silvermans are not entitled to the Lump Sum Payment because the Silvermans did not incur alternative living expenses. The Knauf Defendants are wrong because the Knauf Defendants fail to take into account the unique circumstances of the Silvermans' claim.

The Silvermans always intended the home they purchased that had Chinese drywall to be their primary residence. Ex. A, Doc. 17593-3 at 2. On the sworn Lump Sum Payment Eligibility Payment Form, the Silvermans state "We purchased the home as our primary residence." *Id.* In fact, the Silvermans had been renting a home when they purchased the affected home. See Ex. B, Initial Lease Agreement. It was only just before the Silvermans went to move into their new home

---

[1] The Silvermans also incorporate by reference the Response In Opposition to the Knauf Defendants Motion to Construe Settlement Agreement at Doc. no. 17658.

that a second inspection of their home revealed the presence of Chinese drywall. The discovery of Chinese drywall was made all the more painful for the Silvermans because an initial inspection for the purchase of the home did not reveal any Chinese drywall in it. Ex. C. It was only at a later inspection, just before the Silvermans were going to move into the home, that Chinese drywall was found in the home. Ex. D. When the Silvermans found they had Chinese drywall in their newly purchased home, they extended the lease on the property they had been renting and did not move into the affected home. Exs. E-F.

Knauf's first argument, that the Silvermans do not get a lump sum payment because they never "resided" in the home rings false. First, the Silvermans had been renting a home until the time they purchased the affected home and always intended it to be their primary residence. Exs. A-B. Second, under the Knauf Defendants' analysis, would the Knauf Defendants have the Silvermans move into the affected home after they discovered Chinese drywall in it, only to have to move out due to health effects and/or remediation, or be exposed to the Chinese drywall, and have their personal property exposed to the harmful Chinese drywall? The Knauf Defendants cannot take that position. It is nonsensical and economic waste. The Silvermans present a unique factual situation: they discovered the Chinese drywall in their home they always intended to be their primary residence after purchasing it and before moving in. Moving in and residing in the affected home would only create economic waste. Requiring the Silvermans to move into the affected home to obtain the Lump Sum payment defies common sense.

Contrary to the Knauf Defendants' argument, the Silvermans did incur alternative living expenses. In fact, the alternative living expenses, based on the Silvermans having to twice extend the rental agreement on the home they had been renting exceeds the Lump Sum Payment. Exs. E-F. The Silvermans were forced to extend their rental agreement on the home they had been living in twice. The first extension of their rental agreement occurred when the Silvermans discovered they had Chinese drywall and did not want to move into the affected home. Ex. E. The second extension of the rental agreement occurred when Knauf confirmed it would remediate the Silvermans' home, but it would take several months. Ex. F.

Accordingly, the two reasons the Knauf Defendants argue for the Silvermans not to get a Lump Sum Payment do not apply: a) the Silvermans intended their affected home to be their primary residence but could not move in due to Chinese drywall; and b) the Silvermans incurred alternative living expenses. Consequently, the Knauf Defendants' Motion to Construe Settlement Agreement should be denied and the Knauf Defendants should pay the Silvermans' Lump Sum Payment of $19,184.50. Ex. G.

## STATEMENT OF UNDISPUTED FACTS

1. The Silvermans rented a home beginning on or about September 1, 2011, located at 7900 Harbor Island Dr., Miami, FL. Ex. B.

2. On June 7, 2013, the Silvermans signed a contract to purchase their home they intended to be their primary residence located at 3133 Jackson Ave., Coconut Grove, FL, on June 7, 2013. Ex. H.

3. On June 10, 2013, the Silvermans executed an addendum allowing the sellers of the property to remain in the home at 3133 Jackson Ave. until August 31, 2013. Ex. I.

4. On June 13, 2013, the Silvermans home at 3133 Jackson Ave. was inspected in connection with its purchase. No Chinese drywall was found. Ex. C.

5. Prior to August 30, 2013, the Silvermans learned that their neighbor in the home located at 3133 Jackson Ave. had Chinese drywall in their home.

6. As a result of their neighbor telling the Silvermans about Chinese drywall in the adjacent home, on August 30, 2013, the Silvermans had their home at 3133 Jackson Ave. inspected a second time by Dade Mold Inspectors. Ex. D.

7. On September 5, 2013, Dade Mold Inspectors produced their report confirming the presence of Chinese drywall in the home located at 3133 Jackson Ave. *Id.*

8. On October 7, 2013, as a result of finding Chinese drywall in the home located at 3133 Jackson Ave., Noah Silverman extended the lease on the rental home located at 7900 Harbor Island Dr. for an additional 6 months, until February 28, 2014 at the rate of $2,100 per month. Ex. E.

3

9. September 2012-December 2013, Undersigned Counsel negotiates with the Knauf Defendants for the Silvermans' inclusion in the Knauf settlement and for the Knauf Defendants to fix the home.

10. On January 21, 2014, Noah Silverman extended the lease for the rental home located at 7900 Harbor Island Dr. for an additional 4 months, until May 31, 2014, so that the Knauf Defendant's remediation of the home located at 3133 Jackson Ave. could be finished. Ex. F. The rental rate is $2,100 per month. The Silvermans are advised the typical remediation takes 3 months for Moss to complete.

11. February 20, 2014, Moss provides a Move-out notice for construction to begin on the affected property on February 26, 2014 and to be completed on May 26, 2014. Ex. J.

12. On May 31, 2014, the Silvermans' lease extension at 7900 Harbor Island Dr. will terminate. Ex. F.

13. It is unknown at this time if Moss will complete remediation as promised by May 26, 2014, so that the Silvermans will not incur any further alternative living expenses.

## ANALYSIS

As set forth above, the two arguments the Knauf Defendants make in their Motion to prevent Lump Sum Payments do not apply to the Silvermans. The Silvermans always intended the affected home to be their primary residence, having only rented the apartment at 7900 Harbor Island Dr. until the time they purchased the affected home containing Chinese drywall. While the Silvermans did not "reside" in the affected home, given the factual circumstances there was no reason for the Silvermans to move into a home that they only learned after purchasing it had Chinese drywall. If the Silvermans had moved into the affected home just to obtain the Lump Sum payment, they would have incurred moving expenses both in and out of the home, exposed themselves to Chinese drywall and their personal property at an unknown cost, and possibly had to obtain more expensive housing than the apartment they had been renting. In short, the Silvermans mitigated their damages by not moving into the affected home and should not be penalized for making a common sense decision not to move into the affected home.

Contrary to the Knauf Defendants' argument, the Silvermans did incur alternative living expenses. The Silvermans twice extended their lease for the apartment at 7900 Harbor Island Dr. The Silvermans learned on September 5, 2013 that the home they just purchased contained Chinese drywall. Because of Chinese drywall, the Silvermans executed an extension on their lease from October 7, 2013 until February 28, 2014. The rental rate was $2,100 for 6 months, or $12,600. When the Silvermans received their Move-Out Notice from Knauf with a completion date of remediation on May 26, 2014, they extended their lease a week past Moss's completion date, incurring an additional 4 months of rent, or $8,400. For rent alone, the Silvermans will be out-of-pocket $21,000. The Lump Sum Payment due to the Silvermans is $19,184.50. Ex. A.  The Lump Sum Payment does not even cover the Silvermans' out-of-pocket alternative living expenses, despite them having mitigated their losses by not having moved into the home. The Lump Sum Payment is not a windfall to the Silvermans, but it will help soften the blow of having to continue to rent an apartment for another 10 months, after having purchased their dream home that contained the Knauf Defendants' Chinese drywall.

## CONCLUSION

The Silvermans are uniquely situated. The Knauf Defendants attempt to broadly sweep the Silvermans into their Motion to Construe Settlement Agreement should not be permitted. The Knauf Defendants' two arguments made in their Motion fail when applied to the Silvermans. They always intended for the affected home to be their primary residence, but did not move in when they found the home had Chinese drywall. Instead, the Silvermans mitigated their damages by not moving into the affected home.  The second prong of the Knauf Defendants' argument also fails. The Silvermans did incur alternative living expenses. The Silvermans alternative living expenses exceed their Lump Sum Payment. Given the equities of the Silvermans' claim: a) that they intended the affected home to be their primary residence and would have moved into it but for the presence

5

of Chinese drywall; b) their common sense decision not to move into the affected home they knew

contained Chinese drywall; c) their mitigation of damages by not moving into the affected home

and incurring moving expenses twice, among other expenses and exposure to Chinese drywall; and

d) that the alternative living expenses exceed the Lump Sum Payment and it is unknown if the

Silvermans' affected home will be remediated in time for them to move back into it on May 31,

2014; the Knauf Defendants Motion to Construe Settlement Agreement Should be Denied.

WHEREFORE, the Knauf Defendants' Motion to Construe Settlement should be de denied. The

Silvermans request that the Court enter an order denying the Knauf Defendants' Motion and

requiring the the Knauf Defendants to pay the Lump Sum Payment amount of $19,184.50. In the

alternative, if the Court is inclined to agree with Knauf that 70% of the Lump Sum Payment is

appropriate, then the Silvermans request that the Court split the difference and that the Silvermans

be paid 85% of the Lump Sum Payment.

## REQUEST FOR ORAL ARGUMENT

Pursuant to the Local Rule 78.1, Claimants request Oral Argument in this matter.

Respectfully Submitted,

/s/ Patrick S. Montoya
ERVIN A. GONZALEZ, ESQ. (#500720)
PATRICK S. MONTOYA, ESQ. (#524441)
COLSON HICKS EIDSON
COLSON MATTHEWS MARTINEZ
GONZALEZ KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax:    (305) 476-7444
*Counsel for Claimants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail, or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 12th day of May, 2014.

<u>/s/ Patrick S. Montoya</u>